# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:** November 23, 2010 10:00 a.m. ET<br>**Objection Deadline:** November 1, 2010 (by stipulation) |
| | **Related to Docket Nos. 4513, 4702, 5277 and 5862** |

## DEBTORS' OBJECTION TO MOVANTS' MOTION FOR CLASS CERTIFICATION AND CLASS TREATMENT OF MOVANTS' CLASS PROOF OF CLAIM

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

# Table of Contents

Page

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................3

    (a)    The Prepetition Litigation History Demonstrates Movants' Failure to
Diligently and Properly Seek Class Certification in Prior Court Actions ..............3

    (b)    The Facts Show that Movants Were Independent Contractors of LBN
and that Tribune NY Did Not Exercise Control over Their Services....................7

ARGUMENT...............................................................................................................9

A.    Movants Are Forum Shopping to Avoid Their Failure to Meet the State Court
Deadline for Filing Class Certification...............................................................9

B.    This Court Should Exercise Its Discretion to Deny Class Certification............10

C.    Class Certification Motion Is Untimely and Prejudicial....................................13

D.    Late Filed Claims Challenge Bar Date Order and Require Proof of Excusable
Neglect ..........................................................................................................14

E.    The Debtors Have Provided Adequate Notice................................................16

F.    Movants Fail to Meet Requirements of Rule 23 ............................................19

    (a)    The Court's "Rigorous Analysis" Shows that Movants Failed to Satisfy
the Rule 23 Requirements for Class Certification ..................................19

    (b)    Movants Have Failed to Prove a Common Policy that Justifies Class
Treatment of Their Misclassification Claims .......................................22

        (i)    Tribune NY did not control the means Movants used to perform
services and accomplish Tribune NY's goals...........................24

        (ii)    Movants' purported "evidence" does not show control or
common proof of control ..........................................................28

    (c)    Movants Also Have Failed to Prove Typicality......................................32

    (d)    Movants Have Failed to Prove Predominance, Manageability and
Superiority under Rule 23(b)(3)............................................................34

CONCLUSION.........................................................................................................37

CHI 5510433v.9

CASES

*Allen v. Tribune New York Newspapers Holdings, LLC,*
    246 F.R.D. 465 (S.D.N.Y. 2007) ..................................................................4

*Am. Pub'g Co. of Michigan d/b/a The Evening News,*
    308 N.L.R.B. 563 (1992) ...........................................................................27

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................36

*Anonymous v. High School for Envtl. Studies,*
    32 A.D.3d 353-59, 820 N.Y.S.2d 573 (N.Y. App. Div. 1st Dep't 2006) ..................5

*Argento v. Wal-Mart Stores, Inc.,*
    66 A.D.3d 930, 888 N.Y.S.2d 117 (N.Y. App. Div. 2009) ...................................9

*Bailey v. Jamesway Corp. (In re Jamesway Corp.),*
    1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997)..........................................13

*Bamgbose v. Delta-T-Group, Inc.,*
    684 F. Supp. 2d 660 (E.D. Pa. 2010) ..........................................................32

*Beck v. Maximus,*
    457 F.3d 291 (3d Cir. 2006)......................................................................19

*Blank v. Jacobs,*
    2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) ...............................................20

*Bynog v. Cipriani Group, Inc.,*
    1 N.Y.3d 193, 770 N.Y.S.2d 692 (N.Y. 2003) ..........................................23, 25

*Chemetron Corp. v. Jones,*
    72 F.3d 341 (3d Cir. 1995).......................................................................18

*Clesi v. Zinc Corp.,*
    No. 01-CV-2001, 2001 WL 12234456 (N.D.N.Y. Oct. 11, 2001) .........................32

*DaSilva v. Danbury Pub. Co.,*
    39 Conn. App. 653, 666 A.2d 440 (Conn. App. Ct. 1995) .................................27

*DeSouza v. EGL Eagle Global Logistics LP,*
    596 F. Supp. 2d 456 (D. Conn. 2009)......................................................25, 31

*Edwards v. Publishers Circulation Fulfillment, Inc.,*
    268 F.R.D. 181 (S.D.N.Y. 2010) ........................................................... passim

ii

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990) ................................................................................26, 33

*Ginor v. Landsberg*,
    159 F.3d 1346, 1998 WL 514304 (2d Cir. 1998) ...............................................26

*Graves v. Lowery*,
    117 F.3d 723 (3d Cir. 1997).................................................................................23

*Hertz Corp. v. Comm'r of Labor*,
    2 N.Y.3d 733, 778 N.Y.S.2d 743 (N.Y. 2004) ...............................................30, 31

*In re Am. Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988) ...........................................................................10, 12

*In re Bally Total Fitness of Greater New York, Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009) ...............................................10, 11, 12, 16

*In re Bicoastal Corp.*,
    133 B.R. 252 (Bankr. M.D. Fla. 1991) ............................................................11, 13

*In re Circuit City Stores, Inc.*,
    2010 WL 2208014 (Bankr. E.D. Va. May 28, 2010).............................................15

*In re Computer Learning Centers, Inc.*,
    344 B.R. 79 (Bankr. E.D. Va. 2006).................................................................10, 11

*In re Ephedra Prods. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005).........................................................................11, 12, 13

*In re First Interregional Equity Corp.*,
    227 B.R. 358 (Bankr. D.N.J. 1998) .....................................................................13

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)......................................................................19, 20, 34

*In re Kaiser Group Int'l, Inc.*,
    278 B.R. 58 (Bankr. D. Del. 2002) ................................................................10, 19

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007)...................................................................16

*In re Sacred Heart Hosp. of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ............................................................. passim

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009)......................................................................19, 22, 33, 34

CH1 5510433v.9

*In re W.R. Grace & Co.*,
    398 B.R. 368 (D. Del. 2008) ...................................................................................10, 11, 14, 15

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) ....................................................11, 12, 13

*Kahler v. FIRSTPLUS Fin., Inc. (In re FIRSTPLUS Fin., Inc.)*,
    248 B.R. 60 (Bankr. N.D. Tex. 2000) ..................................................................................14

*Kendler v. Federated Dept. Stores, Inc.*,
    88 F.R.D. 688 (S.D.N.Y. 1981) ............................................................................................36

*Kings Choice Neckware v. Fedex Corp.*,
    No. 07-CV-275 (DMC), 2009 WL 689718 (D.N.J. Mar. 11, 2009) .......................................35

*Laney v. Am. Standard Cos.*,
    No. 07-3991 (PGS), 2010 WL 3810637 (D.N.J. Sept. 23, 2010) ...........................................21

*Ling Nan Zheng v. Liberty Apparel Co. Inc.*,
    617 F.3d 182 (2d Cir. 2010) ..................................................................................................24

*Mahoney-Buntzman v. Buntzman*,
    12 N.Y.3d 415, 881 N.Y.S.2d 369, 909 N.E.2d 62 (N.Y. 2009) ...........................................26

*McKernan v. United Techs Corp.*,
    120 F.R.D. 452 (D. Conn. 1998) ............................................................................................33

*Mendoza v. Case de Cambio Delgado, Inc.*,
    2008 U.S. Dist. LEXIS 61557 ...............................................................................................34

*Mentor v. Imperial Parking Sys.*,
    246 F.R.D. 178 (S.D.N.Y. 2007) ...........................................................................................20

*Meyer v. Ins. Co. of Am.*,
    No. 97 Civ. 4678(AJP), 1998 WL 709854 (S.D.N.Y. 1998) ................................................26

*Miles v. Merrill Lynch & Co.*
    (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006) ("*IPO*") .................20, 21

*Myers v. Garfield & Johnson Enterprises, Inc.*,
    679 F. Supp. 2d 598 (E.D. Pa. 2010) ....................................................................................24

*Naghavi v. New York Life Ins. Co.*,
    260 A.D.2d 252, 688 N.Y.S.2d 530 (N.Y. App. Div. 1st Dep't 1999)...................................26

*Novak v. Home Depot U.S.A., Inc.*,
    259 F.R.D. 106 (D.N.J. 2009) ...............................................................................................34

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993)..................................................................................................16

*Sanders v. Johnson & Johnson, Inc.,*
    No. 03-CV-2663, 2006 U.S. Dist. LEXIS 35881 (D.N.J. May 31, 2006)...............35

*Scoggin v. Adam Aircraft Indus., Inc.,*
    2009 WL 2100929 (Bankr. D. Colo. Mar. 20, 2009)...............................................14

*Scott v. Mass. Mut. Life Ins. Co.,*
    86 N.Y.2d 429, 633 N.Y.S.2d 754 (N.Y. 1995) ......................................................31

*Sepulveda v. Wal-Mart Stores, Inc.,*
    237 F.R.D. 229 (C.D. Cal. 2006) ..............................................................................35

*Shah v. Wilco Sys.,*
    27 A.D.3d 169, 806 N.Y.S.2d 552 (N.Y. App. Div. 2005) ........................................9

*St. Joseph News-Press,*
    345 N.L.R.B. 474 (2005) ....................................................................................27, 28

*State Ins. Fund v. Circus Man Ice Cream Corp.,*
    186 Misc.2d 907, 721 N.Y.S.2d 717 (N.Y. Sup. Ct. 2001) ......................................26

*The A. S. Abell Pub. Co.,*
    270 N.L.R.B. 1200 (1984) ........................................................................................27

*The Daily Mining Gazette, A Div. of Thomson Newspapers (Michigan), Inc.,*
    273 N.L.R.B. 350 (1984) ..........................................................................................27

*Velu v. Velocity Exp., Inc.,*
    666 F. Supp. 2d 300 (E.D.N.Y. 2009) ......................................................................26

*Walker v. Bankers Life & Cas. Co.,*
    No. CV 6906, 2008 WL 2883614 (N.D. Ill. July 28, 2008) ..................22, 32, 35, 36

*Westfall v. MII Liquidation Inc.,*
    2007 WL 2700951 (S.D. Cal. Sept. 11, 2007)....................................................13, 14

*Zemel v. Horowitz,*
    2006 WL 516796 (N.Y. Sup. Ct. 2006).................................................................25, 26

## STATUTES AND OTHER AUTHORITIES

Sections 501, 502, and 1111(a) of the Bankruptcy Code ...............................................15

C.P.L.R. § 902...............................................................................................................9, 10

C.P.L.R. § 3120................................................................................................................5

New York Labor Law ("NYLL") ....................................................................................3

Bankruptcy Rule 7023 ......................................................................................10, 13

Bankruptcy Rule 9014 ...........................................................................................10

Bankruptcy Rules 2002 and 3003(c)(3) ...................................................................15

Fed. R. Bankr. P. 7023 ...........................................................................................19

Fed. R. Bankr. P. 9014 ...........................................................................................10

Fed. R. Civ. P. 23(a)(1)-(4) .....................................................................................19

Local Rule 2002-1(e) ..............................................................................................15

Rule 23 ..................................................................................................... passim

Rule 23(a) .............................................................................................................19

Rule 23(a)(3) .........................................................................................................32

Rule 23(a)(4) .........................................................................................................34

Rule 23(a) and 23(b) ..............................................................................................19

Rule 23(a) and (b)(3) ..............................................................................................22

Rule 23(b)(3)............................................................................................. passim

CHI 5510433v.9

Tribune Company ("Tribune") and Tribune New York Newspaper Holdings, LLC

("Tribune NY" collectively the "Debtors") hereby submit their objection to the Movants' Motion

for Class Certification and Class Treatment of Movants' Class Proofs of Claim filed on or about

May 20, 2010 (D.I. 4513) ("Class Certification Motion"), by which the Movants seek to certify a

New York minimum wage class action pursuant to Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules") 7023 and 9014 and Federal Rule of Civil Procedure ("Rule") 23 on behalf

of individuals that distributed one of the Debtors' newspapers in the greater New York City

region at anytime between August 20, 2001 and December 8, 2008,[2] and seek class treatment of

Movants' class proofs of claim[3] against Debtor Tribune Company (Claim No. 4939) and Debtor

Tribune New York Newspaper Holdings, LLC (Claim No. 4938) (collectively, the "Class Proofs

of Claim").[4]

## PRELIMINARY STATEMENT

1.     The Movants' Class Certification Motion should be denied because the

Movants cannot certify a class in the underlying State Court Action and are merely forum

shopping. The Movants never requested class certification in the State Court Action prior to the

Petition Date, although they had over a year to do so, and as a procedural matter, they failed to

timely request class certification pursuant to New York Civil Practice Law and Rules. The Class

Certification Motion was also untimely and filed almost one year after the Bar Date (as defined

below). The Movants are now seeking an impermissible end run around the Bar Date without

---

[2]  Notably, *amNewYork* was first published in October 2003—more than two years after the start of Movants' proposed class period.

[3]  The Movants, and other putative class members, filed individual proofs of claim that are not addressed by this objection. The Debtors reserve all rights to object to the individual proofs of claim at a future date and pursuant to their claims objection procedures.

[4]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Class Certification Motion or the accompanying Memorandum in Support of Movants' Motion for Class Certification and Class Treatment of Movants' Class Proofs of Claim (D.I. 4513).

1

proving excusable neglect and threatening prejudice to the Debtors and creditors that timely filed individual proofs of claim by the Bar Date. The Movants have been dilatory in both the State Court Action and these chapter 11 cases, and should not be granted another bite at the apple to seek class certification.

2.      The Debtors have provided adequate notice in these cases, in accordance with the Bar Date Order (as defined below) and consistent with their burden to provide actual or constructive notice to their creditors. Actual notice of the Bar Date (as defined below) was provided to all named members of the putative class and their law firm and the independent contractor that entered into the independent contractor agreements with each Movant. In addition, constructive notice of the Bar Date was provided by publication, including *The New York Times* in the greater New York City region, and the Debtors' bankruptcy proceedings have been widely covered in the media. For these reasons, notice is sufficient for the purported class claimants.

3.      Even if the Court determines that Rule 23 should apply in this case, the Movants fail to meet the requirements of Rule 23. Given that each putative class member's status as an independent contractor and claim turns on a person-by-person analysis, the Movants cannot show commonality or typicality and are unable to prove predominance and superiority under Rule 23. Class issues do not predominate over individual interests or defenses on the issue of misclassification. The class action vehicle is inferior where individual issues predominate and require separate determination as to each individual case. Accordingly, the Movants are unable to satisfy the Rule 23 requirements for class certification.

CHI 5510433v.9

4.    In further support of this objection, the Debtors respectfully state as follows:

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

5.    Each Movant entered into an Independent Contractor Agreement ("ICA") with LBN Consulting, LLC or Morning Newspaper Delivery, LLC (collectively, "LBN")—neither of which entity is affiliated with the Debtors—to act as "hawkers" distributing *amNewYork*, a free daily morning newspaper published by the Debtor, Tribune NY, on the streets in the greater-New York City area.

6.    In their underlying lawsuit filed in New York State Supreme Court, Movants claim that they were "employees" of LBN and/or Tribune NY (i.e., they claim to have been misclassified as "independent contractors"), and are therefore entitled to a minimum wage under the New York Labor Law ("NYLL") for all time that they worked as hawkers. Movants now seek class certification of their minimum wage claims in their Complaint and class treatment for their proofs of claim.

(a)    **The Prepetition Litigation History Demonstrates Movants' Failure to Diligently and Properly Seek Class Certification in Prior Court Actions**

7.    On May 31, 2007, plaintiff James Allen filed a Complaint in the United States District Court for the Southern District of New York against Debtors, as well as Mitchell's Subscription Service LLC d/b/a LBN Consulting, LLC and Morning Newspaper Delivery, Inc. (collectively, the "LBN Defendants"), purporting to allege minimum wage claims under the Fair Labor Standards Act and the NYLL on behalf of himself and others similarly-situated. (*See* Declaration of Edward Cerasia II, Esq. ("Cerasia Decl.") ¶ 2, attached hereto as Exhibit A.) On

3

July 9, 2007, James Allen then filed an Amended Complaint in the Southern District, purporting to raise the same minimum wage claims and adding Charles Evans, Pearl Evans, Gary Grant, Loretta Grant, Bill McNair, and Sean Serrao as named plaintiffs. (*Id.* ¶ 3.) Within hours after attending an initial case conference before Southern District Judge Jed Rakoff, however, plaintiffs voluntarily withdrew their Federal Court lawsuit. (*Id.*) Debtors sought sanctions for that conduct, which Judge Rakoff entertained. (*Id.* ¶ 4.) While expressing concerns about plaintiffs' counsel's conduct—calling it "problematic" and "bear[ing] a strong resemblance to conduct that might be subject to sanctions as vexatious litigation"—Judge Rakoff denied the motion for sanctions by Memorandum Order dated November 11, 2007. *See Allen v. Tribune New York Newspapers Holdings, LLC*, 246 F.R.D. 465, 466-67 (S.D.N.Y. 2007).

8.      On August 20, 2007, Movants filed their Class Action Complaint with the Supreme Court of New York, New York County, against Debtors and the LBN Defendants. (Cerasia Decl. ¶ 5.)  The Complaint alleges that *all* Defendants violated the NYLL by failing to pay minimum wage to Movants and others purportedly similarly situated. (Compl., ¶¶ 36-45.)

9.      On September 24, 2007, Debtors served their Answer and Affirmative Defenses to the Class Action Complaint. (*See* Cerasia Decl. ¶ 6, Ex. 1.)  Debtors and LBN raised as a primary defense that Movants were "independent contractors"—and not "employees"—of LBN, and thus were not entitled to the protection of New York's minimum wage law. (Cerasia Decl. Ex. 1 ¶ 7.)  Debtors also maintained that, in the event Movants were deemed employees, they were employees of LBN and, in any event, there was no minimum wage violation. (*Id.* Ex. 1 ¶¶ 16, 36-45.)

4

10.    On October 25, 2007, the LBN Defendants served their Answer. (*See* Cerasia Decl. ¶ 7, Ex. 2.) Like the Debtors, the LBN Defendants also raised as a primary defense that Movants were "independent contractors"—and not "employees"—and thus were not subject to New York's minimum wage law. (*Id*. Ex. 2 ¶ 48.) The LBN Defendants also maintained that there was no minimum wage violation. (*Id*. Ex. 2 ¶¶ 36-45.)

11.    Thereafter, as Movants concede, the parties engaged in very limited document discovery prior to the Petition Date. (Declaration of Michael Palmer ¶ 10 ("Discovery was in the early stages at the time the case was stayed.").) On January 14, 2008, Debtors served Movants with a First Request for Production of Documents (the "Requests"). (Cerasia Decl. ¶ 8.) Pursuant to N.Y. C.P.L.R. § 3120, Movants' objections and responses were due no later than February 7, 2008. (*Id*.) On February 13, 2008—six days *after* the responses were due—counsel for Movants requested and received an extension of time to respond to the Requests. (*Id*.) On February 15, 2008, Debtors' counsel noted that, due to the untimely nature of the extension request, Movants had waived any and all objections to the Requests pursuant to well-established New York law.[5] (*Id*.)

12.    On March 13, 2008, one month after they were originally due, Movants served their responses to the Requests (the "Responses"), which were grossly deficient. (Cerasia Decl. ¶ 9.) For instance, Movants refused to produce their income tax returns. As demonstrated below, these tax returns are directly relevant to each Movant's purported "employee" status, as well as their credibility and adequacy as class representatives if they violated Federal and/or State law by failing to file income tax returns. *See infra* page 25 n.11. Debtors' counsel noted

---

[5]  *E.g., Anonymous v. High School for Envtl. Studies*, 32 A.D.3d 353-59, 820 N.Y.S.2d 573, 578 (N.Y. App. Div. 1st Dep't 2006) (failure to timely object to a discovery demand "generally limits our review to the question of privilege . . . .").

the glaring deficiencies in the Responses, and explained that Movants had failed to establish that any of the Requests were palpably improper. (*Id.* ¶ 10.) Just prior to Debtors' chapter 11 bankruptcy filing, Debtors had prepared a motion to compel Movants to produce their tax returns and other relevant documents, but that motion was never filed because of Debtors' chapter 11 filing and then the case was stayed by the State Court as a result of the bankruptcy filing. (*Id.* ¶ 11.) Thus, other than the exchange of some documents, no depositions were taken in the State Court Action. (*Id.* ¶ 12.) As Movants acknowledge in their memorandum of law, their attempt to proceed with the State Court case against the LBN Defendants only was denied because Debtors are necessary and interested parties to that litigation. (Movants' Br. at 3 n.6; *see also* Cerasia Decl. ¶ 15 & Ex. 3.) Since the Petition Date, no depositions took place and no meaningful discovery occurred in the State Court Action. (*Id.* ¶ 12.) If no chapter 11 petition had been filed, Debtors would have taken the depositions of the named plaintiffs in the State Court Action, as well as other individuals who sought to participate in the State Court Action or who have submitted Declarations to this Court. (*Id.*)

13. Curiously, Movants never sought class certification in the State Court case, including at any point up until the State Court stayed the case, nor did they seek an extension of time to serve such a motion. (Cerasia Decl. ¶¶ 13-14.) In other words, the New York State case was pending *for over a year* and Movants never sought class certification. Rather than diligently pursuing their class action in State Court, the parties had only exchanged one round of document discovery and, in Movants' case, their production was plainly insufficient. Further, Movants never sought class certification even though, under New York rules, they were required to do so within *sixty* (60) days after Debtors' answer was due to be served. Without prepetition class certification, on the basis of a paltry discovery record before

this Court, and with the prospect of joining additional necessary parties herein (i.e.,

MitchellsNY, LBN or MND, which had entered in to an ICA with each Movant), Movants'

strategy to now seek class certification of their claims in this Court is untimely and presents

jurisdictional issues.

> (b) **The Facts Show that Movants Were Independent Contractors
> of LBN and that Tribune NY Did Not Exercise Control over Their
> Services**

14.     Despite the limited discovery to date and Movants' self-serving, cookie

cutter and conclusory allegations in their Declarations, the factual record shows that Movants

were independent contractors of third-party entities such as LBN, which, standing alone,

precludes class certification because the individualized issues in this case cannot be proved

through a common policy of misclassification.

15.     On October 10, 2003, Tribune NY first published *amNewYork*, a free,

daily morning newspaper in New York City. (*Id.* ¶ 16.) During all times relevant to plaintiffs'

lawsuit, each hawker entered into an ICA with independent entities unrelated to the Debtors,

such as LBN. (Cerasia Decl. ¶ 17, Ex. 4.) Thus, at all times relevant to Movants' class claims,

the hawkers were independent contractors of third-party entities such as LBN, and not of Tribune

NY.

16.     The ICA made clear that the hawker and LBN intended that the hawker

would be an independent contractor of LBN. (*Id.* Ex. 4 ¶ 4.) The ICA even stated in bold type

just below the signature line that the hawker understands that he or she is an independent

contractor of LBN and that he or she was "afforded the opportunity to have the contract reviewed

by legal counsel." (*Id.* Ex. 4 at p.5.) The ICA also provided that hawkers were free to decide

whether to hire another person or persons to distribute their copies of *amNewYork*. (*Id.* ¶ 19, Ex.

7

4 ¶ 4(e).) In doing so, hawkers were not required to obtain permission from Tribune NY, nor did they seek or obtain permission to do so. (*Id.*) Also, consistent with the terms of the ICA, hawkers were free to perform services for other companies as long as that did not interfere with their obligations under the ICA. (*Id.* Ex. 4 ¶ 4(d).)

17.     Hawkers were compensated by LBN based on both a flat rate for their services as well as a piece rate for each bundle of *amNewYork* newspapers distributed. (*Id.* Ex. 4 ¶ 2(b).) The hawkers' compensation from LBN was reported on an IRS Form 1099. (*Id.* Ex. 4 ¶ 2(g).) Each hawker had to submit an IRS Form W-9 certifying that he or she was not subject to backup withholding taxes, and each hawker had responsibility for paying his or her own income taxes. (*Id.* ¶ 2(g).)

18.     The Movants assert in a conclusory fashion that Tribune NY dictated how the hawkers had to conduct their business. (*See* Movants' Br. at 5-7.) In truth, each of the supposed indicia of control were purely business-related and were simply to aid the hawkers in achieving the results of their services—that is, to increase the circulation of *amNewYork*. For instance, Tribune NY contracted with one or more independent and unrelated companies to have the *amNewYork* newspapers delivered during the typical "rush hour" morning commute to street corners and locations in the New York City-area. Advertisements were sold based on the fact that *amNewYork* would be delivered during the morning rush-hour commute, which meant that the newspapers were time-perishable.

CHI 5510433v.9

## ARGUMENT

### A. Movants Are Forum Shopping to Avoid Their Failure to Meet the State Court Deadline for Filing Class Certification

19. By seeking class certification before this Court, Movants obviously seek to avoid an insurmountable obstacle to obtaining class certification in the State Court Action, namely: they failed to file their class certification motion "[w]ithin sixty days after the time to serve a responsive pleading has expired for all persons named as defendants." N.Y. C.P.L.R. § 902. Unlike Rule 23, which does not contain a time limit, New York's requirement is designed "to promote an early determination of whether class action relief is appropriate." *Argento v. Wal-Mart Stores, Inc.*, 66 A.D.3d 930, 932, 888 N.Y.S.2d 117, 118 (N.Y. App. Div. 2009) (citing *O'Hara v. Del Bello*, 47 N.Y.2d 363, 368 (N.Y. 1979)).[6]

20. Here, the record demonstrates that from the time Debtors and other defendants filed their answers in the State Court on September 24, 2007, until the case was stayed on the Petition Date, Movants never filed a motion for class certification, nor have they reserved their right to do so. (Cerasia Decl. ¶¶ 13-14.) Even if Movants were to use Debtors' bankruptcy filing as an excuse, this does not explain why they let the deadline to seek class certification expire *almost a year* before the bankruptcy stay was entered. Movants failure to seek relief from the automatic stay to seek class certification in the State Court Action belies their forum shopping. Movants obviously seek refuge in this Court to avoid the procedural rule

---

[6] Although New York State courts may consider motions to extend the time for class certification upon a showing of good cause, the plaintiff must *actually seek* such an extension and otherwise engage in discovery. *See Argento*, 66 A.D.3d at 933, 888 N.Y.S.2d at 118-19 (renewal of class certification outside 60-day window should have been granted where parties misapprehended law, engaged in discovery, and discovered new pertinent facts). Where, as here, a plaintiff fails to seek an extension *before* the expiration of the 60-day period *and* has no good cause to support the court exercising its discretion to extend this deadline, class certification is untimely. *Shah v. Wilco Sys.*, 27 A.D.3d 169, 174, 806 N.Y.S.2d 552 (N.Y. App. Div. 2005) (concluding that lower court should have denied class certification as untimely because plaintiff did not allege facts to support an exercise of discretion to extend the filing deadline).

in New York State Court that they clearly did not—and cannot—meet. The Court should not countenance Movants' forum shopping, which is clearly designed to avoid their failure to file a motion for class certification within the 60-day time period of NY CPLR § 902. On this basis, the Court should exercise its discretion under Bankruptcy Rule 7023 and decline to consider Movants' motion for class certification.

### B. This Court Should Exercise Its Discretion to Deny Class Certification

21.     Bankruptcy courts typically consider two decisions before granting class certification: (1) whether discretion should be exercised to apply Bankruptcy Rule 7023 to the class proof of claim and (2) whether a class should be certified under Rule 23. *See In re Computer Learning Centers, Inc.*, 344 B.R. 79, 86 (Bankr. E.D. Va. 2006). "There is no absolute right to file a class proof of claim under the Bankruptcy Code." *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y. 2009); *In re W.R. Grace & Co.*, 398 B.R. 368, 377 (D. Del. 2008); *see also In re Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988) (observing that "[n]ot every effort to represent a class will succeed"). Instead, bankruptcy courts exercise discretion in determining whether to grant or deny class certification pursuant to Bankruptcy Rule 9014. Fed. R. Bankr. P. 9014 (providing that this Court *may* apply Bankruptcy Rule 7023); *In re Am. Reserve Corp.*, 840 F.2d at 492; *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002).

22.     The circumstances under which class certification is granted are narrowly defined. *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (cautioning that the class proof of claim should be used "most sparingly"). The best candidates for class certification are cases in which a nonbankruptcy court certified the class prepetition and

10

the class members received inadequate actual or constructive notice of the bankruptcy case and bar date. *In re Bally Total Fitness*, 402 B.R. at 620. Although bankruptcy courts appear more likely to grant certification when the class is certified prepetition, such courts continue to exercise their discretion and are in no way bound by the prepetition certification. *In re Computer Learning Centers, Inc.*, 344 B.R. at 85, 92 (concluding that prepetition certification did not bind the court, which must also consider bankruptcy procedures designed to handle numerous individual claims).

23.     Bankruptcy courts apply heightened scrutiny when a class was not certified in the prepetition litigation. *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22 (requiring rigorous examination of the Rule 23 requirements if class was not certified prepetition). Bankruptcy courts rarely grant class certification where the motion for class certification was filed for the first time postpetition and well after the Bar Date. *In re W.R. Grace & Co.*, 389 B.R. 373, 376 n.5 (Bankr. D. Del. 2008) (denying class certification motion filed over two and a half years after the bar date); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (denying class certification requested after plan submitted to creditors for vote); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) (denying class certification raised for the first time in response to debtor's post confirmation objection to claim); *In re Bicoastal Corp.*, 133 B.R. 252, 256 (Bankr. M.D. Fla. 1991) (denying class certification requested 15 months after debtor's objection to claim). The Movants' Class Certification Motion fits this disfavored pattern: they are seeking class certification for the first time postpetition and over *one year* after the Bar Date. Accordingly, this Court should deny the requested relief.

11

24.     Bankruptcy courts that deny class certification recognize that the procedural advantages of a class action in civil litigation are greatly diminished in the bankruptcy context. *See In re Am. Reserve Corp.*, 840 F.2d at 489; *In re Bally Total Fitness*, 402 B.R. at 620-21. The superiority of the class action mechanism "is lost in bankruptcy." *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 9. Bankruptcy involves an efficient claims resolution process that, prior to the Bar Date, permits creditors to participate in the claims process for the cost of a stamp, without the need to hire a lawyer and with the benefit of deemed allowance upon a timely and properly filed proof of claim. *In re Bally Total Fitness*, 402 B.R. at 621 (citing *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007)). The claims resolution process in the bankruptcy context is well suited to handle individual claims against the Debtors without the costs and burdens of a class action.

25.     The Debtors would incur substantial additional costs in defending the class action, including potential liability for the Movants' attorneys' fees in the event the Movants prevailed in their class action. *See In re Bally Total Fitness*, 402 B.R. at 621 n.4. This result lays bare the Movants' inappropriate motive behind the Class Certification Motion: to seek what cannot be had in the State Court Action at the Debtors' expense and in contravention of the claims resolution procedure approved and overseen by this Court. Numerous courts have denied postpetition class certification after finding that "[t]he only real beneficiaries of applying Rule 23 would be the lawyers representing the class" and the defense costs to the estate outweigh any potential benefits to the proposed class. *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 10; *see also In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. at 376-77 ("The only beneficiaries of class certification, therefore, are Sager's lawyers.").

12

### C. Class Certification Motion Is Untimely and Prejudicial

26. The Class Certification Motion is untimely filed. Timing of the Class Certification Motion is a significant factor weighing in favor of denying class treatment. *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 23. The Movants had a duty to file the Class Certification Motion expeditiously after commencement of these chapter 11 cases. *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. at 371; *see also In re First Interregional Equity Corp.*, 227 B.R. 358, 366 (Bankr. D.N.J. 1998) (finding that a certification motion filed at the time of filing a class proof of claim satisfies "timeliness"); *Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, 1997 WL 327105, at *6 (Bankr. S.D.N.Y. June 12, 1997) (providing that "the most propitious time for filing a motion for class recognition is before a bar date is established"). Bankruptcy Rule 7023 itself provides that the time to certify the class is "[a]t an early practicable time." This duty to promptly seek class certification reflects the extensive effort involved in class litigation and the need to file such a motion at the "earliest possible time" to ensure minimal prejudice to the Bankruptcy proceeding. *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5.

27. Despite knowledge of the Debtors' petitions for chapter 11 relief on December 8, 2008, which stayed the State Court Action, the Movants did not file the Class Certification Motion until May 20, 2010, almost *one year* after the Bar Date. *See, e.g., In re Bicoastal Corp.*, 133 B.R. at 256 (stating that an unexplained delay of 15 months to seek class certification is alone "sufficient to conclude that they are barred by the doctrine of laches to seek certification of the Claim at this late date"); *Westfall v. MII Liquidation Inc.*, 2007 WL 2700951, at *3-4 (S.D. Cal. Sept. 11, 2007) (denying class certification where class was not certified prepetition, the action suggested an "aura of forum shopping" and the class failed to follow the

13

bar date order procedures).  The untimely filing of the Class Certification Motion almost *one year* after the Bar Date prejudices the Debtors and other creditors as an inequitable end run around the Bar Date.  *Id.*, at *4 (holding that challenging the bar date notice almost one year after its publication date was untimely and inappropriate).

### D.   Late Filed Claims Challenge Bar Date Order and Require Proof of Excusable Neglect

28.    "[T]he bankruptcy court must weigh the issue of whether it is appropriate to give class members what may amount to an additional opportunity to meet an otherwise applicable bar date." *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22; *see also In re W.R. Grace & Co.*, 398 B.R. at 371 (agreeing with bankruptcy court that class certification "would effectively render the bar date useless and adversely affect claimants who filed timely proofs of claim"); *In re W.R. Grace & Co.*, 389 B.R. at 379 ("As to unfiled claims, the class action process sought by [the Movants] would operate to negate the bar date.").  Opening up the Bar Date would unjustifiably give the unnamed class claimants a second bite at the apple and treat inequitably creditors that remain bound by the Bar Date.  *See Scoggin v. Adam Aircraft Indus., Inc.*, 2009 WL 2100929, at *9 (Bankr. D. Colo. Mar. 20, 2009);  *Kahler v. FIRSTPLUS Fin., Inc. (In re FIRSTPLUS Fin., Inc.)*, 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 18.  A Bar Date provides a measure of finality and promotes fairness as to the Debtors and creditors by providing "a defined cutoff date for claims." 6 Newberg on Class Actions § 20:12 (4th ed. 2010).  Disregarding the Bar Date Order and disrupting the claim reconciliation process at this late juncture would result in inequitable treatment of the Debtors' creditors and impair the Debtors' efforts to resolve and quantify general unsecured claims under their plan of reorganization.

14

29.     The Class Proofs of Claim prejudice the Debtors and all other creditors that timely filed *individual* proofs of claim pursuant to the Order pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof entered by this Court on March 25, 2009 (the "Bar Date Order") (D.I. 813). The Movants did not object to entry of the Bar Date Order, and, by seeking class certification after the Bar Date, now impermissibly attempt a collateral attack on the Bar Date Order. Further, the Bar Date Order establishes a general bar date of 4:00 p.m. prevailing Eastern Time on June 12, 2009 (the "Bar Date") by which any person or entity asserting a claim against the Debtors must properly and timely file a proof of claim. *Id.* In the event a claimant fails to file a properly and timely proof of claim, the Bar Date Order provides that such creditor shall not receive any distributions under the confirmed plan of reorganization. Bar Date Order, at 6-7. If the unnamed class claimants gain the benefit of the Class Proofs of Claim, such claimants will nullify the procedures carefully developed by the Debtors and other constituencies and embodied by the Bar Date Order.

30.     If the relief requested is granted, the unnamed class claimants would essentially be asserting late filed claims through the Class Proofs of Claim without having to establish excusable neglect, a burden that has been enforced as to other late filed proofs of claim in these and other cases. *In re W.R. Grace & Co.*, 389 B.R. at 379 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)); *see also In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *5 (Bankr. E.D. Va. May 28, 2010) (denying class certification motion in part because it sought "authorization to file late proofs of claim without establishing excusable neglect"); Tribune Company Hr'g Tr. 38-39, September 15, 2010 (requiring Ivan J. Bates to

15

meet the *Pioneer* factors regarding his request to extend the Bar Date to accommodate his late filed claim) (attached hereto as <u>Exhibit B</u>). The Movants have not provided any evidence of excusable neglect and must meet the *Pioneer* factors to justify the late filed claims of the unnamed class claimants. They have not, and cannot, provide this Court any evidence of excusable neglect because, as set forth below, they received actual and constructive notice.

### E.     The Debtors Have Provided Adequate Notice

31.    <u>Actual Notice</u>. Bankruptcy courts consider adequacy of the notice to putative class members when deciding whether to grant class certification. *In re Bally Total Fitness*, 402 B.R. at 620; *In re Musicland Holding Corp.*, 362 B.R. at 654-55; *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22. As discussed above, the Debtors did not have a direct relationship with the putative class members who were independent contractors of LBN. The Debtors had an agreement with LBN to distribute *amNewYork* and therefore included "Morning Delivery Newspaper Delivery Inc.," an LBN entity, in their creditors matrix for noticing purposes. The LBN Defendants received actual notice of the Bar Date together with a proof of claim for filing in these cases. (Streany Aff. of Mailing dated as of April 22, 2009) (D.I. 1073). None of the LBN Defendants filed a proof of claim in the Debtors' chapter 11 cases. In light of the pending State Court Action, the Debtors also provided actual notice of the Bar Date together with a proof of claim to the Movants and their law firm, which timely filed individual proofs of claim on the Movants' behalf in addition to the Class Proofs of Claim. (Streany Aff. of Mailing dated as of April 22, 2009) (D.I. 1073). In addition, the Movants' law firm timely filed individual proofs of claim for 11 other putative class claimants.[7]  In total, the Movants' law firm

---

[7] *See* Jennifer Strange (Claim Nos. 4920, 4921); Tenisha Walcott (Claim Nos. 4918, 4919); Damion Reid (Claim Nos. 4924, 4925); Victoria McLaughlin (Claim Nos. 4928, 4929); Phil Johnson (Claim Nos. 4930, 4931); Mark Jackson (Claim Nos. 4932, 4933); John Heywood (Claim Nos. 4934, 4935); Larry Fernandez (Claim Nos. 4902,

16

filed individual proofs of claim for 18 independent contractors of LBN in addition to the Class

Proofs of Claim by the Bar Date. Without explanation, the Movants nevertheless waited until

almost *one year* after the Bar Date to file the Class Certification Motion. The Movants' delay

and failure to file their Class Certification Motion by the Bar Date is not excusable given their

ability to otherwise meet the Bar Date.

32.     <u>Constructive Notice</u>. In accordance with the Bar Date Order (as defined

below), the Debtors also provided constructive notice through publication notice that was

carefully crafted by the Debtors, published in four national edition newspapers, and approved by

this Court (Docket Nos. 813; 1280). Publication notice was provided in the national editions of

the *Wall Street Journal*, *The New York Times*, the *Los Angeles Times* and the *Chicago Tribune*

on May 12, 2009. Publication in *The New York Times*, in particular, is relevant as it is a New

York City newspaper widely distributed in the greater New York City region where the class

claimants reside and work, including their work distributing newspapers. Further, the Debtors'

bankruptcy proceedings have been extensively covered by the media and the Debtors maintain a

website that offers free access to all court documents and notices, including information on

proofs of claim and notice of the Bar Date. *See* http://dm.epiq11.com/Tribune. In any case,

given that the Movants never sought class certification in the State Court Action, the Debtors did

not have notice that class certification would be sought in their chapter 11 cases and constructive

notice is sufficient for the unnamed class claimants.

33.     On May 12, 2008, the Debtors consummated a transaction with

Cablevision Systems Corporation ("<u>Cablevision</u>") through which Cablevision acquired 97% of

---

4903); Victor Cruz (Claim Nos. 4914, 4915); Velma Barnhardt (Claim Nos. 4916, 4917); and Patrick Anderson
(Claim Nos. 4908, 4909).

17

Newsday Media Group ("Newsday") and pursuant to which the Debtors contributed the Newsday assets (including *amNewYork*). Following the prepetition contribution of the Newsday assets and the transfer of the Newsday books and records to the new entity, the Debtors ceased day-to-day oversight of *amNewYork* and other Newsday operations and experienced staff attrition familiar with arrangements with the LBN Defendants. Accordingly, the Debtors' access to the LBN Defendants' independent contractors were not "reasonably ascertainable" through a reasonably diligent review of the books and records. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346-47 (3d Cir. 1995) ("Reasonable diligence does not require impracticable and extended searches . . . in the name of due process. A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it."). Any claims by the independent contractors do not arise in the Debtors' business operations and are "conjectural" pending resolution of the State Court Action. *Id.* at 346. Accordingly, the non-Movant independent contractors that distributed *amNewYork* are unknown creditors to the Debtors. *Id.*

34.     Notice by publication is sufficient to satisfy due process requirements for unknown creditors, and such creditors are not otherwise entitled to actual notice. *See Mission Towers v. W.R. Grace*, 2007 4333817, at *6 (D. Del. Dec. 6, 2007) (citing *Chemetron Corp*, 72 F.3d at 346). Given that the putative class members have received sufficient notice of these cases and the Bar Date, this Court should deny class certification and class treatment of the Class Proofs of Claim. *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22 ("[I]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim devise appears advisable.").

CHI 5510433v.9

## F. Movants Fail to Meet Requirements of Rule 23

### (a) The Court's "Rigorous Analysis" Shows that Movants Failed to Satisfy the Rule 23 Requirements for Class Certification

35. Movants argue that they have a very low threshold under Rule 23, urging the Court to accept the allegations in their Complaint as true and give nothing more than a cursory review of the requirements under Rule 23(a) and 23(b). (Movants' Br. at 11.) Simply put, Movants are wrong; their arguments ignore Third Circuit precedent governing class certification.

36. "A class may be certified only if the court is 'satisfied, after a *rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *Beck v. Maximus*, 457 F.3d 291, 297 (3d Cir. 2006) (citing *Gen. Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 161 (1982)) (emphasis added); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595-96 (3d Cir. 2009).[8] Under Rule 23(a), Movants must show by a preponderance of the evidence that the class is so large that "joinder of all class members is impracticable" (numerosity); "there exist questions of law or fact common to the class" (commonality); the named parties' claims or defenses are "typical of the class" (typicality); *and* that the named plaintiffs and their counsel can "fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a)(1)-(4); *Schering Plough*, 589 F.3d at 596.

37. Further, a class cannot be certified unless the Court finds that the Rule 23(b)(3) requirements of predominance, manageability, and superiority are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). Specifically, Rule 23(b)(3) requires

---

[8] The Bankruptcy Rules permits class certification in adversary actions by incorporating Rule 23. *See* Fed. R. Bankr. P. 7023. "Whether to certify a class claim is within the discretion of the bankruptcy court." *In re Kaiser Group Int'l, Inc.*, 278 B.R. at 63.

CH1 5510433v.9

that Movants prove that "the questions of law or fact common to the class members predominate over any questions affecting only individual members" (predominance), "and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). *Id.*

38.     The requirements "set out in Rule 23 are not mere pleading rules." *Id.* at 316. "Unless each requirement of Rule 23 is actually met, a class cannot be certified." *Id.* at 320. As a result, "[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* at 316. In other words, courts must "delve beyond the pleadings to determine whether the requirements of class certification are satisfied," *id.*, which "may include a preliminary inquiry into the merits," *id.* at 318. Thus, Movants must offer up "enough evidence, by affidavits, documents or testimony" to establish that class treatment is appropriate. *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 42 (2d Cir. 2006) ("*IPO*"); *see also Blank v. Jacobs*, 2009 WL 3233037, at *6 (E.D.N.Y. Sept. 30, 2009) (denying class certification where plaintiffs did not produce affidavits proving typicality); *Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178, 183 (S.D.N.Y. 2007) ("To prove commonality, courts require more than self-serving affidavits and plaintiff generally must provide either statistical or anecdotal evidence."). Because "each requirement of Rule 23 must be met, a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Hydrogen Peroxide*, 552 F.3d at 320.

39.     In deciding whether or not to certify a Rule 23 class, the Court must analyze how the issues will "play out" before a trier of fact. *Id.* at 311. "The plaintiff's task is to show that the essential elements of the cause of action are capable of proof through evidence that

20

is common to the class, rather than evidence unique to each individual class member." *Laney v. Am. Standard Cos.*, No. 07-3991 (PGS), 2010 WL 3810637, at *16 (D.N.J. Sept. 23, 2010). "Thus, the Court looks for common proof." *Id.* (citing *Hydrogen Peroxide*, 552 F.3d at 311-12). Where, as here, "common proof is not available, but instead, separate mini-trials are required, courts have found that the 'staggering problems of logistics thus created' make the case unmanageable as a class action." *Id.* (quoting *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977)); *see also IPO*, 471 F.3d at 41 (courts should be careful to avoid mini-trials at the class certification stage).

40.     For purposes of the pending Class Certification Motion, Debtors do not dispute that the purported class would be numerous or that Movants' counsel would represent the class adequately. Thus, this Court must decide: (a) if the question of whether members of the purported class were misclassified as independent contractors rather than employees of LBN or related entities (including whether Tribune NY would be a "joint employer" of such employees) is common or, in other words, susceptible of proof by classwide evidence, and (b) the closely related questions of (i) whether Movants' claims are typical of those of the class as a whole and (ii) whether common issues predominate. In addition, the Court must decide whether Movants have proved by a preponderance of the evidence that they are typical of the class and adequate class representatives who are not subject to unique defenses. Finally, the Court has to decide if a class action is the superior mechanism for Movants' claims. As demonstrated below, despite the sparse discovery conducted before the State Court lawsuit was stayed, Movants' evidence does

not remotely satisfied their burden of proof under Rule 23 and controlling case law, and thus their motion for class certification should be denied in its entirety.[9]

41.     Courts generally decide Rule 23 motions after discovery. *See Schering Plough*, 589 F.3d at 595-96 (Rule 23 requires "rigorous analysis" of factual record developed in discovery); *cf. Walker v. Bankers Life & Cas. Co.*, No. CV 6906, 2008 WL 2883614, at *10 (N.D. Ill. July 28, 2008) (court decertified Rule 23 class after ruling on motion at close of discovery, because initial certification was based upon limited record). In this case, however, discovery was limited to the exchange of documents, and even then was not complete on that phase. There were no depositions of Movants or purported class members. Thus, Debtors have limited facts from which to oppose Movants' Class Certification Motion. Nonetheless, Debtors submit that the evidence before the Court shows that Movants have failed to satisfy the Rule 23(a) and (b)(3) requirements. In the event that the Court concludes that additional discovery is needed, then it should either hold an evidentiary hearing or order discovery be taken by the parties.

### (b)     Movants Have Failed to Prove a Common Policy that Justifies Class Treatment of Their Misclassification Claims

42.     Movants' memorandum makes clear that they seek to avoid an examination of each hawker's independent contractor relationship with LBN or its related entities. Indeed, they erroneously state—contrary to the Third Circuit precedent cited above and persuasive case law denying class certification in independent contractor cases such as this

---

[9] Courts generally decide Rule 23 motions after discovery. In this case, however, discovery was limited to the exchange of documents, and even then was not complete on that phase. There were no depositions of Movants or purported class members. Thus, Debtors have limited facts from which to oppose Movants' Class Certification Motion. Nonetheless, Debtors submit that the evidence before the Court shows that Movants have failed to satisfy the Rule 23(a) and (b)(3) requirements. In the event that the Court concludes that additional discovery is needed, then it should either hold an evidentiary hearing or order discovery be taken by the parties.

22

one—that, "[a]s the merits are not properly consider in a Rule 23 motion, this brief is not devoted to Movant's [sic] argument that promoters are employees under New York minimum wage law." Movants' Br. at 5 n.17. They also state, without evidentiary support, that "[t]his matter can be assessed on a class wide basis since the class members are all treated exactly the same by the Debtor." *Id.* at 13. Once again, however, Movants misstate or ignore the facts and law.

43.     In deciding this Class Certification Motion, the Court must examine whether Movants have carried their burden of proving that the purported misclassification issue is subject to common proof. *E.g., Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184, 188-89 (S.D.N.Y. 2010) (denying plaintiff-independent contractor newspaper delivery drivers' Rule 23 motion for class certification, concluding upon a review of the evidence that whether plaintiffs were misclassified involved an "individualized determination of the degree of control that PCF actually exercised over each of the putative class members" and could not be established through common proof). The starting point for this analysis is the New York case law holding that the "critical inquiry" for determining "employee" status under the NYLL is "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 694 (N.Y. 2003) (reversing determination that banquet waiters were "employees" under NYLL). This is a factually-intensive inquiry, and the factors relevant to assessing actual control include, for example, whether the worker (a) worked at his own convenience, (b) was free to engage in other employment, (c) received fringe benefits, (d) was on the purported employer's payroll, and (e) was on a fixed schedule. *Id.; see also Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997) ("[T]he precise contours of an employment relationship can only be

23

established by a careful factual inquiry."). Applying the "control" test and these and other

factors to the present case make plain that Tribune NY did not control the Movants' or purported

class of hawkers in the performance of their services under their ICA with LBN, and that there is

no common proof of same. Consequently, there is no basis for granting class certification.

> (i) **Tribune NY did not control the means Movants used to perform services and accomplish Tribune NY's goals**

44.     The following evidence shows that Tribune NY did not control the means

that Movants used to perform their services and accomplish Tribune NY's goals of increasing

circulation of *amNewYork*. At the very least, these facts show that disputes exist and the Court

may require more discovery before it decides Movants' Class Certification Motion.

45.     Movants ignore the fact that they each signed an ICA *with LBN*—and not

Tribune NY—demonstrating their intent to be an independent contractor.[10] Indeed, the ICA

specifically states:

> **4. Independent Contractor.** LBN and Contractor [hawker] each intend that the relationship created by this contract be that of service recipient and independent contractor, respectively. The parties agree that Contractor is not an employee, partner or coventurer of LBN and no provision herein shall be construed to create or infer any such employment, partnership or venture relationship. . . . As an independent contractor, Contractor has the right to operate his/her/its business as

---

[10] Given that Movants had a contractual relationship with LBN, and not Debtors, they must prove that, in addition to being employees of LBN under the NYLL, Debtors were "joint employers" with LBN. *See Ling Nan Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 184 (2d Cir. 2010) (under New York law, applying six-factor test to determine joint employer based upon: (1) whether premises and equipment were used for the plaintiffs' work; (2) whether businesses could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the businesses or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the businesses); *Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F. Supp. 2d 598, 607-08 (E.D. Pa. 2010) (noting that courts in the Third Circuit have distilled the joint employer test to three factors: (1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee discipline; and (3) control of employee records, including payroll, insurance, taxes and the like). While this is yet another factually-intensive inquiry that is not susceptible to common proof, Movants have no proof of such joint employment.

Contractor chooses. . . . LBN is interested only in the results achieved by Contractor with respect to the services Contractor shall perform pursuant to this Agreement.

(Cerasia Decl. Ex. 4 ¶ 4.)

46. The ICA go further than this recitation; it provides that the hawker need not personally perform the services but rather has the exclusive "right to employ any persons and enlist any subcontractors, at his/er/its expense, as he/she/it sees fit to assist him/her/it in the performance of any of the services clled for under [the ICA]." (*Id.* Ex. 4 ¶ 4(e).) The hawker also has the "sole and exclusive contl and supervisory authority over all such persons." (*Id.*) The hawker's right to retain or hire others supports their independent contractor status. *E.g.*, *DeSouza v. EGL Eagle Global Logistics LP*, 596 F. Supp. 2d 456, 466 (D. Conn. 2009) (freedom to hire help in assisting with newspaper route weighed in favor of independent contractor status).

47. Movants also ignore the fact that Tribune NY did not pay them for their services. (Cerasia Decl. Ex. 4 ¶ 2(b).) LBN paid each hawker, and that income was reported on an IRS Form 1099. (*Id.* ¶ 2(g).) Each hawker had responsibility for paying his or her own income taxes and did not receive fringe benefits from LBN or Tribune NY. (*Id.*) Most importantly, Movants have not submitted any evidence that the hawkers were ever on Tribune NY's payroll, and they are unable to do so because the hawkers were paid by LBN. (*Id.* ¶ 2(b).) These facts also support Movants' independent contractor status. *Bynog*, 1 N.Y.3d at 199.[11]

---

[11] During discovery in the State Court case, Movants refused to produce their tax returns (*see* Cerasia Decl. ¶ 9) which are directly relevant to—and likely dispositive of—the Court's determination of their status as independent contractors. Upon information and belief, many, if not all, of Movants either certified themselves as "self-employed" on their tax returns or did not file tax returns at all. If they filed as "self-employed," than they are judicially estopped from arguing that they were "employees" of Debtors. Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken by the same party in a prior legal proceeding." *Zemel v. Horowitz*, 2006 WL 516796, at *6 (N.Y. Sup. Ct. 2006) (judicial estoppel is intended "to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings" and to prohibit "the successive assertion of factually contradictory statements as the truth"). New York courts have consistently held that a party is estopped from adopting in a legal proceeding a position that is contrary to that previously asserted on

25

48.     Each hawker's ICA with LBN had a term of one (1) month, which at the option of the hawker or LBN could be extended for an additional one month period. (Cerasia Decl. Ex. 4 ¶ 3.) This short duration and ability to end the relationship at any time is yet another fact that supports Movants' and all other hawkers' independent contractor status. *See State Ins. Fund v. Circus Man Ice Cream Corp.*, 186 Misc.2d 907, 909, 721 N.Y.S.2d 717 (N.Y. Sup. Ct. 2001) (street vendors are independent contractors because *inter alia* the vendors could terminate their relationship with company at any time).

49.     Moreover, under the ICA, a hawker was not prevented from "performing services for others, provided that the performance of such services [did] not interfere with the performance of [the hawker's] obligations under this Agreement or adversely affect LBN's relationship with any of its actual or potential customers or the amount of sales to LBN's customers." (Cerasia Decl. Ex. 4 ¶ 4(d).) This also supports independent contractor status. *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307-08 (E.D.N.Y. 2009) (under New York law, plaintiff was an independent contractor because *inter alia* he "was free to engage in other employment," even though he "chose not to").

---

his or her tax return. *Id.* (plaintiffs estopped from asserting in a legal proceeding a position contrary to that reported on their tax returns); *Mahoney-Buntzman v. Buntzman*, 12 N.Y.3d 415, 422, 881 N.Y.S.2d 369, 909 N.E.2d 62 (N.Y. 2009) (defendant estopped from claiming that funds were not marital property where he had previously reported on his tax return that such funds were business income); *Ginor v. Landsberg*, 159 F.3d 1346, 1998 WL 514304, at *1 (2d Cir. 1998) (plaintiff estopped from arguing that a wrap note was cancelable at will when he had previously reported on his tax return that the note was a genuine debt obligation); *Meyer v. Ins. Co. of Am.*, No. 97 Civ. 4678(AJP), 1998 WL 709854 (S.D.N.Y. 1998) (plaintiff bound by her sworn representations in tax returns and was estopped from taking a position inconsistent with her representations to the IRS); *Naghavi v. New York Life Ins. Co.*, 260 A.D.2d 252, 253, 688 N.Y.S.2d 530 (N.Y. App. Div. 1st Dep't 1999) (plaintiff estopped from adopting a position different from that taken on tax returns). By unjustifiably refusing to produce their tax returns, Movants have deprived Debtors of this crucial defense, and have impeded the Court's rigorous inquiry into their class certification motion. And, if any of Movants did not file a tax return, than this creates a unique defense that prevents Movants from acting as adequate class representatives, and thus makes class certification inappropriate. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation").

50.     In nearly identical situations, the National Labor Relations Board

("NLRB") and courts have routinely held that newspaper hawkers or carriers are independent

contractors *even when* the publisher instituted performance requirements that are similar to those

alleged here. *The A. S. Abell Pub. Co.*, 270 N.L.R.B. 1200, 1202 (1984) (concluding that

"hawkers" were independent contractors); *St. Joseph News-Press*, 345 N.L.R.B. 474, 478-71

(2005) (newspaper carriers deemed independent contractor); *Am. Pub'g Co. of Michigan d/b/a*

*The Evening News*, 308 N.L.R.B. 563, 565 (1992) (same); *The Daily Mining Gazette, A Div. of*

*Thomson Newspapers (Michigan), Inc.*, 273 N.L.R.B. 350, 352 (1984) (same); *DaSilva v.*

*Danbury Pub. Co.*, 39 Conn. App. 653, 656, 666 A.2d 440 (Conn. App. Ct. 1995) (same). In *A.*

*S. Abell*, 270 N.L.R.B. at 1202, the NLRB specifically held that newspaper hawkers are

independent contractors even where the publisher sets the hawkers' territories, conducts training,

requires that the hawkers maintain cash bonds, and permits the hawkers to wear the newspaper's

insignia on their outfits. The NLRB held that the hawkers were independent contractors in part

because, with the exception of setting territorial limits, the hawkers were free to dictate their

income based upon the number of newspapers sold and the lack of direct supervision over their

activities. *Id.*

51.     *St. Joseph News-Press* is also instructive to the Court's analysis. There,

the NLRB held that newspaper carriers who delivered to customers were independent contractors

even though the publisher instituted certain contractual requirements on the carriers' activities.

Those requirements included that: newspapers must be delivered by certain times (6:00 a.m. on

weekdays and 6:30 a.m. on weekends); carriers must be bonded to cover any liability and costs if

the publisher had to take over the route; carriers were required to carry automobile insurance;

carriers were required to sell the newspapers at set prices; the publisher communicated to the

carriers via memos and occasional in-person meetings at the publisher's plant, which included relaying customer complaints; district managers occasionally trained the carrier on their new routes; and work was not "particularly skilled." 345 N.L.R.B. at 475-76. Despite these hallmarks of control, the NLRB found that other factors—including the carriers' ability to impact their own compensation, to hire replacements, to determine the terms of conditions of the work, the lack of supervision over the work, and the parties' intent that the carriers were independent contractors—were controlling. *Id.* at 470. This Court should reach the same conclusion given the facts before it.

(ii) **Movants' purported "evidence" does not show control or common proof of control**

52.     Tellingly, Movants have not presented any direct evidence of day-to-day control by Tribune NY. The reason is obvious: this evidence will show that Movants and the proposed class members were properly classified as independent contractors *of LBN* and, at the very least, this evidence refutes their contention that the classification issue is subject to common proof. Movants have merely submitted several self-serving and nearly identical, cookie-cutter declarations stating that they were required to arrive for work at certain times, distribute *amNewYork* at certain locations, distribute all newspapers that they were given (although there are significant contradictions on this point, as discussed below), and required to wear a red vest with "amNewYork" printed on it. *See* Declarations of Sean Serrao ("Serrao"), Charles Evans ("Evans"), Gary Grant ("G. Grant"), John Heywood ("Heywood"), Victoria McLaughlin ("McLaughlin"), Loretta Grant ("L. Grant"), and Damion Reid ("Reid"). Yet, none of this indisputably shows that Tribune NY controlled the means by which the hawkers performed their services under the ICA, which the Movants must show to prevail on class certification. *Edwards*, 268 F.R.D. at 186 (to prevail on class certification motion, plaintiffs must show,

28

"through common proof," that the company controlled the means they used to accomplish the company's goals). Instead, as the ICA makes clear, Tribune NY was focused on the results of the hawker's services *for LBN*—that is, to increase the circulation of *amNewYork*.

53. With respect to whether hawkers were "required" to distribute all of the *amNewYork* copies dropped off to their location each day, Movants' Declarations are noticeably conflicting. Specifically, Movants Serrao, Evans, Heywood, and Reid state in their affidavits that "AM New York *wanted* promoters to distribute all of the bundles of newspapers given to them." (Serrao Decl. ¶ 14; Evans Decl. ¶ 16; Heywood Decl. ¶ 17; Reid Decl. ¶ 17) (emphasis added). Movants G. Grant, McLaughlin, and L. Grant, however, state in their Declarations that "AM New York *required* promoters to distribute all of the bundles of newspapers given to them." (G. Grant Decl. ¶ 18; McLaughlin Decl. ¶ 15; L. Grant Decl. ¶ 16) (emphasis added). Obviously, there is a significant difference between a requirement and a desire—a difference that shows no "common" policy and prevents class treatment. For those Movants who admit, under oath, that Tribune NY "wanted" them to distribute all of their copies of *amNewYork* each day, this shows that they retained discretion over whether or not to do so. This also means that at least those Movants made decisions as to how to run their own business, and whether to hand out some or all of their copies, which obviously shows a lack of control by Tribune NY and implicates the amount of time they allegedly were "required" to work each day. Standing alone, these inconsistent Declarations show that Movants' classification as independent contractors cannot be resolved by common proof.

54. Movants' blanket assertions also demonstrate the need for further factual inquiry and discovery before ruling on the Class Certification Motion because Debtors have a good-faith basis to believe that they can prove the following through discovery:

29

- Tribune NY contracted with independent third parties to have the *amNewYork* newspapers delivered during the hours of the typical "rush hour" morning commute in the New York City-area. Advertisements were sold based on the fact that *amNewYork* would be delivered during the morning rush-hour commute, which meant that the newspapers were time-perishable.

- Hawkers were assigned to a specific location on the streets to ensure that an area was covered and that such an area was not assigned to more than one hawker (with limited exceptions for places like New York Pennsylvania Station). Doing so eliminated "competition" between hawkers of the *amNewYork* newspaper. Even then, each hawker had discretion whether to stand in front of a subway entrance/exit; to stand across the street from a subway entrance/exit, or to use a paper rack for pedestrians to take their own copies of *amNewYork*.

- Tribune NY required hawkers to wear a red vest with "amNewYork" printed on the vest so that pedestrians could identify the hawker with *amNewYork* and differentiate from individuals who distributed a competing free daily newspaper, known as *Metro*. But, wearing the vest did not make Movants employees of Tribune NY. *Hertz Corp. v. Comm'r of Labor*, 2 N.Y.3d 733, 735, 778 N.Y.S.2d 743, 744 (N.Y. 2004) (even though defendant gave saleswoman instruction and direction on what to wear, what products to promote, and how to make sales presentations, she was an independent contractor because she operated with minimal supervision).

- To comply with laws and other regulations, Tribune NY contracted with independent third-party entities to have zone leaders confirm circulation numbers each day. Zone leaders also provided extra copies of *amNewYork* to hawkers who ran out of newspapers. All of the zone leaders were independent contractors of independent companies unrelated to Debtors. As a member of the Audit Bureau of Circulation, Tribune NY had to report accurate circulation numbers, particularly given that the prices paid by advertisers in *amNewYork* were based upon the newspaper's daily circulation. (Cerasia Decl. ¶ 22.) Consequently, it was critical for Tribune NY to keep an accurate count of the number of newspapers that hawkers distributed each day. In addition, under the terms of the ICA, hawkers were paid in part based upon the number of newspapers they distributed each day. (Cerasia Decl. Ex. 4 ¶ 2(b).) Thus, zone leaders had to give an accurate report of the number of *amNewYork* newspapers that each hawker distributed per day, so that the hawkers could be compensated in according to the ICA. Tribune NY also had to keep track of the number of newspapers distributed by hawkers at each location so that it could determine if it needed to allocate more newspapers per day for that location. Tribune NY and each hawker shared the common goal of increasing the number of copies of *amNewYork*

distributed from each location on each day, because it meant more advertising revenue for Tribune NY and additional compensation for the hawker, who in addition to flat fee for services also received a piece rate for handing out a certain number of copies.

- Movants also claim to have had to wait around on the streets at times for a zone leader before leaving their designated location. (*E.g.*, Serrao Decl. ¶ 16.) Those must have been isolated incidents, if they occurred at all, because there was a system where a hawker could call a phone number if he or she ran out of newspapers before a zone leader had made it to the hawker's location to determine if he or she had finished handing out *amNewYork* newspapers or needed additional copies. In any event, Movants failed to present any evidence that Tribune NY directed any hawker during the time that he or she allegedly had to wait for a zone leader to arrive, or that the hawkers were not free to carry on any other business during that time.

55.     In the end, the fact that Movants or hawkers were given a vest to wear, required to perform their services during the morning rush hours, assigned to specific locations, and required to account for the number of copies of *amNewYork* that they distributed does not support the conclusion that Movants or the purported class members were employees of LBN— let alone Tribune NY.  Simply stated, "[t]he requirement that the work be done properly is a condition just as readily required of an independent contractor as of an employee and not conclusive as to either." *Hertz Corp.*, 2 N.Y.3d at 735; *see also Edwards*, 268 F.R.D. at 186 (denying class certification, stating:  "the fact that PCF had common goals for the deliverers would not be a sufficient basis for classifying them as employees"); *Scott v. Mass. Mut. Life Ins. Co.*, 86 N.Y.2d 429, 434, 633 N.Y.S.2d 754, 756 (N.Y. 1995) (even though the plaintiff trained agents according to defendant's guidelines, was compelled to attend company meetings, and was asked to draft a job description for her position, the plaintiff was an independent contractor because defendant only exercised minimal control over plaintiff's daily work product); *DeSouza v. EGL Eagle Global Logistics LP*, 596 F. Supp. 2d 456, 466 (D. Conn. 2009) ("Even independent contractors, although 'independent' in name, are required to keep a schedule.  The

31

fact that an independent contractor is required to be at a job or at a facility at a certain time does not eliminate his status as an independent contractor."); *Clesi v. Zinc Corp.*, No. 01-CV-2001, 2001 WL 12234456, at *3 (N.D.N.Y. Oct. 11, 2001) ("The fact that Zinc may have required Ms. Clesi or her employees to work at the mines at particular times during the day is not itself evidence that she was an employee. It is not uncommon for a company to prefer that janitorial services be undertaken at particular hours. Zinc may very well have made this decision with an eye to convenience and smooth operation of the mines."); *see also supra* paras. 44-51.

56.     Consequently, Movants' motion for class certification turns on a person-by-person analysis, which is unsuitable for class treatment. Where, as here, there is no evidence of any common policy of unlawful classification on which class members' claims can be tried in the aggregate, courts have denied class certification under Rule 23. *E.g., Edwards*, 2010 WL 2428083, at *6 (newspaper delivery plaintiffs "failed to provide any indication that the employment status of the putative class members could be proved by common evidence"); *Bankers Life*, 2008 WL 2883614, at *10 (decertifying class because analysis of independent contractor status "would require an onerous inquiry into each agent's relationship with [the company] because individual circumstances inform application of the [common law employee] multifactor test.").[12] This Court should reach the same conclusion.

(c)     **Movants Also Have Failed to Prove Typicality**

57.     Rule 23(a)(3) requires that "the claims . . . of the representative parties" must be "typical of the claims . . . of the class[.]" Fed. R. Civ. P. 23(a)(3). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which

---

[12] *See also Bamgbose v. Delta-T-Group, Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (denying certification under *FLSA 216(b)'s lenient standard*, concluding that whether healthcare workers were independent contractors was an individualized inquiry).

threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *cert. denied*, 498 U.S. 1025 (1991). Movants must therefore demonstrate that, when they "litigate[] according to their own interests, [they] will necessarily protect the interests of the entire class." *McKernan v. United Techs Corp.*, 120 F.R.D. 452, 454-55 (D. Conn. 1998).

58.     The Movants have failed to introduce any competent evidence regarding other putative class members, and simply rely on their own self-serving beliefs that others are similar situated. In a directly analogous situation, the Third Circuit held that plaintiffs seeking to certify a class on behalf of absent class members must come forward with sufficient evidence for the court to determine whether the class meets the "typicality" requirement. *Schering Plough*, 589 F.3d at 600 ("no conclusion as to [the named plaintiff's] typicality can be reached without knowing more about the composition of the class . . . ."). Given that the plaintiffs in *Schering Plough* had not introduced evidence about the contractual relationship between the absent class members and the defendant company, "additional inquiry" was required before the court could resolve the class certification motion. *Id.* In the same way, Movants have not introduced any evidence to show that they are typical of absent class members, beyond their own self-serving and conclusory belief that other unnamed and unspecified promoters were similarly situated. This showing is woefully inadequate to carry Movants' burden of proving that their circumstances are typical of a broad class that supposedly includes hundreds of other persons. *See, e.g., id.; Edwards*, 268 F.R.D. at 183 (holding that newspaper delivery drivers classified as

independent contractors failed to meet their burden under Rule 23 because they offered mere generalized proof of classwide claims).[13]

59.     Moreover, Debtors have a good-faith basis to believe that they will be able to show that at least some of the proposed class members are not typical of the class and are not adequate class representatives because they will be subject to unique defenses. On occasion, hawkers and zone leaders were caught throwing away or otherwise discarding left over copies of *amNewYork* while claiming that the newspapers had been distributed to pedestrians. When that happened, the services of the hawker and/or zone leader involved were terminated. These persons will not be typical of the class and cannot be adequate class representatives.[14] *See Mendoza v. Case de Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 61557, at *20 n.7 & *27-28 (S.D.N.Y. Aug. 12, 2008) (court concluded that a named plaintiff was not an adequate class representative in wage and hour case because he was fired for theft).

> **(d)     Movants Have Failed to Prove Predominance, Manageability and Superiority under Rule 23(b)(3)**

60.     To satisfy the more demanding "predominance" requirement of Rule 23(b)(3), Movants must "show that the essential elements of the cause of action are capable of proof through evidence common to the class, rather than evidence unique to each individual class member." *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 114 (D.N.J. 2009). If, however, "proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide*, 552 F.3d at 311. Likewise, if a

---

[13] Movant's class certification is also flawed because they define the class starting on August 20, 2001, (Movant's Br. at 9), even though *amNewYork* was first published on October 10, 2003. (Cerasia Decl. ¶ 16.)

[14] For the same reasons, the Movants cannot meet their burden under Rule 23(a)(4) to show that the parties representing the class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement aims "to uncover conflicts of interest between named parties and the class they seek to represent[.]" *Schering Plough*, 589 F.3d at 602.

defendant's defenses also require individualized inquiries, certification under Rules 23(b)(3) is not appropriate. *E.g., Sanders v. Johnson & Johnson, Inc.*, No. 03-CV-2663, 2006 U.S. Dist. LEXIS 35881, at *16 (D.N.J. May 31, 2006); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 249 (C.D. Cal. 2006). In other words, "[w]here individual inquiry is required, class certification is unsuitable." *Kings Choice Neckware v. Fedex Corp.*, No. 07-CV-275 (DMC), 2009 WL 689718, at *3 (D.N.J. Mar. 11, 2009) (citing *In re Hydrogen Peroxide*, 552 F.3d at 311).

61.     For the reasons stated above, *see supra* paras. 52-56, an individualized assessment of each hawker's relationship with third-party entities such as LBN—and also with Tribune NY—is necessary in order to determine if he or she had been misclassified as an independent contractor under the NYLL, as well as if Movants can show that Debtors were "joint employers" with LBN or any other third-party entity. Therefore, class issues do not predominate over individual issues or defenses. In reaching a similar conclusion, the court in *Edwards* aptly stated in denying class certification in a case involving newspaper deliverers:

> Plaintiffs have failed to provide any indication that the employment status of the putative class members could be proved by common evidence. In consequence, an individualized assessment of PCF's relationship with each deliverer would be necessary in order to determine whether he or she had been improperly classified and PCF's liability under the New York Labor Law. Individual issues, therefore, would predominate over common ones for each of plaintiffs' claims.

268 F.R.D. 188-89; *see also Bankers Life*, 2008 WL 2883614, at *10 (court decertified class action brought by independent contractor insurance agents, concluding that they failed to establish predominance and superiority under Rule 23(b)(3), stating: "resolving the common issue of misclassification would require an onerous inquiry into each agent's relationship with

CHI 5510433v.9

Bankers Life . . . Liability determinations would be individual and fact-intensive, rendering class certification under Rule 23(b)(3) . . . improper.").[15]

62.     Similarly, determinations of manageability require "a pragmatic evaluation of courtroom reality" for while it may be "tempting to say: why not let everyone who asserts a somewhat related grievance come into a common arena to resolve their controversy . . . on a moment's reflection, it should be apparent that the capacities of judges and juries to absorb the factual situations thus presented are finite and that courthouses are not coliseums." *Kendler v. Federated Dept. Stores, Inc.*, 88 F.R.D. 688, 694 (S.D.N.Y. 1981) (quoting *City of New York v. Int'l Pipe & Ceramic Corp.*, 410 F.2d 295, 298 (2d Cir. 1969)). Manageability is especially difficult here because this Court would be required to adjudicate the hawker's contractual relationship with multiple third parties, including the LBN Defendants, which have absolutely no relationship to the bankruptcy proceeding.

63.     Finally, "superiority" is established when a class action will achieve economies of time, effort and expense, and promote uniformity of decisions without sacrificing procedural fairness. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Where, as here, there are a greater number of individual issues to be litigated as to each hawker, the more difficult it will be for this Court to manage a class action. These difficulties outweigh any possible benefits derived from certifying a class. *Bankers Life*, 2008 WL 2883614, at *12 (concluding that class action was not superior to individual cases, given the need to address individualized issues and claims).

_____

[15] Notably, in their memorandum, Movants erroneously state that the court in *Bankers Life* "certified" a class of independent contractor agents. (Movants' Br. at 16.) That is only half of the truth: the court originally certified a class based on a limited record, but then obviously recognized its error and decertified the class after discovery was completed. 2008 WL 2883614, at *9-12. *Bankers Life* exemplifies why class certification motions should not be granted or decided until after discovery is completed.

64.     Accordingly, Movants have failed to satisfy Rule 23(b)(3), and their motion for class certification should be denied on this basis alone.

## CONCLUSION

65.     For the foregoing reasons, the relief requested in the Movants' Class Certification Motion should be denied.[16]

---

[16] The Debtors reserve any and all rights to object to the Class Proofs of Claim and the individual claims filed by the Movants on the merits, including that such claimants do not hold valid claims against the Debtors.

CH1 5510433v.9

Dated: Wilmington, Delaware
      November 1, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Candice L. Kline
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

SEYFARTH SHAW LLP
Edward Cerasia II
Aaron Warshaw
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-5000

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

CHI 5510433v.9