IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: November 23, 2010 at 10:00 a.m. ET**<br>**Objection Deadline: November 16, 2010 at 4:00 p.m. ET**<br>**Related to Docket Nos. 227 and 380** |

## APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN DAVIS WRIGHT TREMAINE LLP AS SPECIAL COUNSEL TO LOS ANGELES TIMES COMMUNICATIONS LLC FOR CERTAIN MEDIA LITIGATION MATTERS PURSUANT TO 11 U.S.C. §§ 327(E) AND 1107, *NUNC PRO TUNC* TO OCTOBER 1, 2010

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") hereby submit this Application (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Application") for entry of an order, in substantially the form attached hereto, authorizing the retention and employment of the law firm of Davis Wright Tremaine LLP ("DWT") as special counsel to Los Angeles Times Communications LLC (the "LA Times") for certain First Amendment, Internet, and telecommunications matters, pursuant to sections 327(e) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), nunc pro tunc to October 1, 2010. This Application is filed for the limited purpose of converting DWT's existing retention by LA Times under this Court's Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business (D.I. 227) (the "OCP Order") into a retention pursuant to sections 327(e) and 1107 of the Bankruptcy Code, given that DWT has exceeded the applicable monthly cap on its services under the OCP Order for multiple consecutive months, and that the Debtors expect that DWT may continue to exceed that monthly cap on a regular basis in the future. In support of the Application, the Debtors submit the Declaration of Kelli L. Sager (the "Sager Declaration"), which is filed concurrently herewith and incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.  On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (D.I. 43, 2333.)

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(e) and 1107 of the Bankruptcy Code.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

6. On January 15, 2009, this Court entered the OCP Order, approving procedures for the employment, retention, and compensation of certain professionals utilized by the Debtors in their ordinary course of business. Exhibit A to the OCP Order contained a list of Ordinary Course Professionals, as defined in the OCP Order, authorized to be retained by the Debtors, which included DWT.[3] The Debtors' Ordinary Course Professionals are authorized to provide services to the Debtors as necessary for the day-to-day operations of the Debtors' businesses on terms substantially similar to those in effect prior to the Petition Date, subject to the terms and conditions described in the OCP Order. Compensation of the Ordinary Course

---

[3] Exhibit A to the OCP Order has been subsequently supplemented by the Debtors to add additional Ordinary Course Professionals or to seek increases to the Monthly Cap applicable to existing Ordinary Course Professionals. (See D.I. 544, 877, 1086, 1756, 1826, 1887, 2283, 2412, 2865, 3222, 3861, 4214, 4607, 4614, and 5846.)

CH1 5480669v.2                                3

Professionals is limited by a Monthly Cap on the fees permitted to be paid to such Ordinary Course Professionals, per month on average over a rolling period.

7. DWT principally represents the LA Times with respect to various First Amendment, Internet, and telecommunications matters (collectively, the "Media Litigation Matters").[4] These include representing the LA Times in its efforts to obtain access to court records and proceedings, pursuing actions under the California Public Records Act, and defending against lawsuits for defamation, invasion of privacy, and other torts, as well as providing general advice on First Amendment and media law topics. At the outset of the Debtors' chapter 11 cases, given that much of the Debtors' existing litigation was stayed by operation of the automatic stay contained in 362(a) of the Bankruptcy Code, the Debtors determined that it was appropriate to have DWT retained as an Ordinary Course Professional with respect to its services, rather than pursuant to a separate section 327(e) retention. Accordingly, DWT has been retained by the Debtors as counsel in the ordinary course of the Debtors' business, with a Monthly Cap of $50,000. The OCP Order provides that the fees incurred by any Ordinary Course Professional with a Monthly Cap of $50,000 shall not exceed such Monthly Cap per month on average over any consecutive two-month period. (See OCP Order at 2.) Moreover, $50,000 represents the maximum Monthly Cap available to any Ordinary Course Professional in these chapter 11 cases.

8. In recent months, DWT has represented LA Times with respect to various Media Litigation Matters that have arisen or have resulted in unanticipated legal costs subsequent to the Petition Date. These have included a lawsuit under the California Public Records Act against the Los Angeles County Sheriff, in which LA Times initially was

---

[4] DWT may also provide services for other of the Debtors from time to time, as necessary and appropriate, that are within the scope of services described herein.

successful, but subsequently was challenged by the officer's union, resulting in substantial unanticipated fees and costs; a lawsuit involving disclosure of the identities of Pasadena police officers who exercised lethal force, in which the union's counsel initiated lengthy discovery fights; and researching and advising the LA Times concerning legal issues about a possible new business initiative. (See Sager Declaration ¶ 4.)

9.    Those representations of the LA Times by DWT, taken together with DWT's representations of the LA Times in connection with the pre-existing Media Litigation Matters, caused DWT's fees to exceed the Monthly Cap of $50,000 in each of the months from March to June 2010, inclusive.[5] Moreover, the Media Litigation Matters on which DWT now represents the LA Times are now at a level of activity that makes it likely that DWT will exceed the existing Monthly Cap on a regular basis going forward.

10.    The OCP Order provides that in the event any Ordinary Course Professional exceeds or expects to exceed the Monthly Cap on an ongoing basis, the Debtors may seek the retention of such Ordinary Course Professional by separate application pursuant to the relevant provisions of the Bankruptcy Code and applicable orders of this Court. (See OCP Order at 5.) Based upon the scope of Media Litigation Matters in which DWT currently represents the LA Times, the Debtors and DWT have determined that there is a substantial likelihood that DWT will exceed its applicable Monthly Cap on an ongoing basis, and that the LA Times' retention of DWT as special counsel for the Media Litigation Matters is both necessary and appropriate.

---

[5] Contemporaneously with the filing of this Application, DWT has filed an application seeking this Court's allowance of fees and reimbursement of expensed incurred in these months.

## RELIEF REQUESTED

11.     The Debtors seek authorization to employ and retain DWT as their special counsel for the Media Litigation Matters pursuant to section 327(e) of the Bankruptcy Code, nunc pro tunc to October 1, 2010.  The Debtors' engagement of DWT with respect to the Media Litigation Matters is for the purpose of allowing DWT to continue to represent the Debtors in the matters in which DWT represented the LA Times prior to the Petition Date and during DWT's representation of the Debtors as an Ordinary Course Professional, as well as in any new Media Litigation Matters that may subsequently arise.

12.     The Debtors understand that the partners, counsel, and associates of DWT, through DWT's representation of the Debtors prior to the Petition Date and during the pendency of these chapter 11 cases, have become very familiar with the Media Litigation Matters.  (See Sager Declaration ¶ 2.)  In light of that experience, DWT's continued representation of the Debtors will provide a substantial benefit to the Debtors and their estates.

13.     The Debtors have also employed and retained Sidley Austin LLP ("Sidley") as their general reorganization and bankruptcy counsel, Cole, Schotz, Meisel, Forman & Leonard, P.A. ("Cole Schotz") as their bankruptcy co-counsel, and several other law firms as section 327(e) counsel and/or Ordinary Course Professionals.  The Debtors recently converted the pre-existing retention of the law firm of Levine Sullivan Koch & Schultz LLP ("Levine Sullivan") from an Ordinary Course Professional to special counsel for certain media-related litigation matters.  (See D.I. 6062.)  Although the services performed by Levine Sullivan are similar to those performed by DWT, Levine Sullivan primarily represents the Debtors' East Coast media properties and Chicago Tribune Company, and does not represent the LA Times.  Thus, the services performed by each of the respective firms are not duplicative.  The Debtors'

management and law department will continually monitor all of the Debtors' professionals to ensure that they are utilized in an efficient, non-duplicative and cost-efficient manner. Sidley, Cole Schotz, and DWT, in turn, have advised the Debtors that they will make every effort to avoid duplication of their work, with Sidley being chiefly responsible for providing general bankruptcy and reorganization advice (as well as advice on related matters) to the Debtors, Cole Schotz acting as Delaware co-counsel for the Debtors, and DWT advising the LA Times on the Media Litigation Matters, each consistent with their experience and expertise. (See Sager Declaration ¶ 5.)

        14.    The Debtors and DWT have agreed that, as was the case while DWT rendered services to the Debtors as an Ordinary Course Professional and subject to the Court's approval, DWT will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered, and for reimbursement of all costs and expenses incurred in connection with these cases. (See Sager Declaration ¶ 7.) DWT has advised the Debtors that its billing rates currently range from $675.00 to $390 per hour for partners, $400 to $240 per hour for associates, and $180 to $69 per hour for para-professionals. (Sager Declaration ¶ 8.) DWT has further advised the Debtors that these hourly rates are subject to adjustment on a periodic basis. (Id.) In addition to its hourly rates, DWT has advised the Debtors that it customarily charges its clients for out-of-pocket expenses and internal charges incurred in the rendition of services, including mail and express mail charges, special and hand delivery charges, outside photocopying charges, travel expenses, transcription costs, charges and fees of outside vendors, consultants and service providers, as well as non-ordinary overhead expenses. (Id.)

15. As previously disclosed by DWT in connection with its retention by the Debtors as an Ordinary Course Professional in these cases, DWT held unallocated funds on account in the amount of $39,173.52 as of the Petition Date. (See Affidavit of Alonzo Wickers IV, filed February 13, 2009, D.I. 380, the "Wickers Affidavit"). Such funds were applied to the fees and expenses incurred during the months of January, May, July and August, 2009. (See Sager Declaration ¶ 9.) DWT is not owed any additional amount on account of prepetition services rendered to the Debtors. (Id.) DWT received approximately $378,770 from the Debtors within one year prior to the Petition Date on account of services rendered with regard to the Media Litigation Matters. (Id.)

16. In connection with DWT's retention being modified from retention as an Ordinary Course Professional to a retention not covered by the OCP Order, the Debtors have advised DWT that DWT will be required to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim Compensation Order"), as amended, and the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Application (the "Fee Examiner Order"). DWT has advised the Debtors that it will comply in all respects with the

applicable requirements for seeking compensation and reimbursement of expenses for all fees and costs incurred on or after October 1, 2010.[6] (See Sager Declaration ¶ 6.)

17. Consistent with the Wickers Affidavit, DWT has informed the Debtors that, as set forth in more detail in the concurrently filed Sager Declaration and subject to any exceptions contained therein or in the exhibits thereto, DWT does not hold or represent in these proceedings any interests adverse to the Debtors, or to their estates in matters upon which DWT continues to be engaged. All information with respect to DWT's connections with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee is set forth in the Wickers Affidavit and the Sager Declaration.

18. DWT has agreed to conduct an ongoing review of its files to ensure that it continues to neither hold nor represent in these proceedings any interests adverse to the Debtors or to their estates. In this regard, DWT will promptly amend the Sager Declaration to the extent that DWT becomes aware of material information or relationships which it determines require further disclosure.

## LEGAL AUTHORITY

19. Section 327(e) of the Bankruptcy Code provides:

> The Trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney

---

[6] As noted above, DWT has applied to this Court for the fees and costs it incurred in the months of March 2010 through June 2010, which are the months that DWT exceeded its applicable Monthly Cap. Given that such fees and costs were incurred several months prior to when the Debtors determined that it would be necessary to retain DWT as special counsel pursuant to section 327(e) of the Bankruptcy Code, DWT has requested that the Court grant a limited waiver of the otherwise-applicable requirements of the Interim Compensation Order and the Fee Examiner Order, to reduce the additional costs and delay of obtaining approval and payment of such amounts. In the alternative, DWT has requested that the Court consider DWT's fee application for the months of March 2010 through June 2010 at the next hearing scheduled for the allowance of interim fee applications following the Court's entry of an order approving this Application. DWT's fees incurred during the months of July 2010 and August 2010 did not exceed the firm's applicable Monthly Cap.

> does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). Under this section, special counsel may be appointed if: (1) the representation is in the best interest of the estate, (2) the attorney represented the debtor in the past, (3) the attorney is for a specific purpose approved by the court, other than to represent the debtor in conducting the case, (4) the attorney does not represent or hold an interest adverse to the debtor or the debtor's estate. See id.; see also In re Woodworkers Warehouse, Inc., 323 B.R. 403, 406 (D. Del. 2005); Meespierson, Inc. v. Strategic Telecom, Inc., 202 B.R. 845, 847 (D. Del. 1996).

20. When analyzing the retention of special counsel under section 327(e), the court should consider all relevant facts surrounding the debtor's case, including but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, the history and relationship between the debtor and the proposed special counsel, the expense of replacement counsel, potential conflicts of interest and the role of general counsel. See Woodworkers Warehouse, 323 B.R. at 406 (citing Matter of First Am. Health Care of Georgia, Inc., 1996 WL 33404562, *3 (Bankr. S.D. Ga. Apr. 18, 1996). In general, however, subject to the requirements of sections 327 and 1107, a debtor in possession is entitled to the counsel of their choosing. See, e.g., In re Vouzianas, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

21. In the instant case, converting DWT's existing retention on behalf of the Debtors as an Ordinary Course Professional to a non-ordinary course retention pursuant to sections 327(e) and 1107 is in the best interests of the Debtors' estates, and satisfies all other standards for retention under sections 327(e) and 1107. DWT has substantial experience in

CH1 5480669v.2                                    10

representing the LA Times with respect to the Media Litigation Matters, which experience would be lost if the Application were denied. Moreover, as postpetition, non-bankruptcy litigation matters involving the Debtors arise, DWT's experience with the LA Times will enable it to provide counsel with minimal need to incur background or other costs to learn necessary information about the LA Times's businesses. The relief requested by this Application does not add an additional professional to those providing services on behalf of the Debtors, but seeks merely to change the form of DWT's retention, as expressly contemplated by the OCP Order, based on the increased volume of matters being handled by DWT on behalf of the LA Times. Accordingly, the Debtors believe that it is necessary and in the best interests of their estates and creditors to employ and retain DWT as special counsel to the LA Times in regard to the Media Litigation Matters.

22.    The Debtors seek to effect the conversion of DWT's retention from an Ordinary Course Professional to special counsel retained pursuant to sections 327(e) and 1107 as of October 1, 2010. Although this Application is styled as requesting <u>nunc pro tunc</u> relief, the purpose of this Application is not to affect the substance of the LA Times' long-standing retention of DWT. Rather, the Application is submitted to ensure that DWT's retention complies with all applicable orders of the Bankruptcy Court, in light of the probability that DWT's representation of the LA Times may cause it to exceed the Monthly Cap on a regular basis in the future.

## <u>NOTICE</u>

23.    Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agent for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for

the Debtors' postpetition financing facility; (v) DWT; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

24.     With the exception of the Debtors' application to employ DWT as an Ordinary Course Professional, the Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the retention and employment DWT as special counsel to the LA Times concerning certain Media Litigation Matters in these chapter 11 cases pursuant to section 327(e) of the Bankruptcy Code, nunc pro tunc to October 1, 2010, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated: 11/2/10

TRIBUNE COMPANY
(for itself and on behalf of each of the Debtors)

*/s/ D. P. Zell/*

David P. Eldersveld
Senior Vice President, General Counsel and Secretary