## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Related to Docket No. ____** |

## ORDER (I) APPROVING GENERAL DISCLOSURE STATEMENT AND SPECIFIC DISCLOSURE STATEMENTS; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLANS OF REORGANIZATION; (III) APPROVING FORMS OF BALLOTS, MASTER BALLOTS AND RELATED INSTRUCTIONS; (IV) APPROVING SOLICITATION PACKAGE CONTENTS AND AUTHORIZING DISTRIBUTION OF SOLICITATION AND NOTICE MATERIALS; (V) FIXING VOTING RECORD DATE; (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION; (VII) SETTING CONFIRMATION SCHEDULE AND ESTABLISHING PARAMETERS ON CONFIRMATION-RELATED DISCOVERY; (VII) ESTABLISHING NEW DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS; (IX) AUTHORIZING EXPANSION OF BALLOTING AND

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

**TABULATION AGENT'S RETENTION AND ALLOCATION OF COSTS OF SAME;
AND (X) GRANTING RELATED RELIEF**

Upon the motion, dated November 8, 2010 (the "Motion"), of the Debtors,[2] for

entry of an order, pursuant to sections 105, 1125, 1126, 1128 and 1129 of the Bankruptcy Code,

Bankruptcy Rules 2002, 3003, 3017, 3018 and, and Local Rule 3017-1, (i) establishing

procedures for the solicitation and tabulation of votes to accept or reject the four (4) plans of

reorganization that have been proposed by the Proponents for Tribune Company and its

Subsidiaries[3] (collectively the "Plans", as such Plans may be amended or supplemented from

time to time), (ii) approving the forms of Ballots and Master Ballots, together with their related

Instructions, to be used in voting to accept or reject the Plans, (iii) approving the contents of the

solicitation packages and authorizing the distribution of solicitation and notice materials as

described in the Motion, (iv) fixing the voting record date for purposes of determining which

Holders of Claims against the Debtors are entitled to vote on the Plans, (v) establishing notice

and objection procedures in respect of the hearing to consider confirmation of the Plans, (vi)

fixing necessary dates and deadlines in connection with the confirmation process and

establishing parameters on discovery relating to the confirmation process and confirmation

hearing, (vii) establishing a renewed deadline for return of the Media Ownership Certifications,

(viii) authorizing expansion of the existing retention of the Voting Agent to include services as

balloting and tabulation agent for all of the Plans, and (ix) granting related relief, and it

appearing that adequate and sufficient notice of the Motion has been given under the

circumstances; and upon the filing by the Debtors of the General Disclosure Statement and upon

the filing by the Proponents (including the Debtors) of the Plans and the Specific Disclosure

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or, as applicable, in the particular Plan to which a particular term pertains.
[3] All references to the Plan in this Order are also references to any Prepackaged Plan(s), as such term is defined in each of the Plans.

Statements relating to the Plans; and the Court having jurisdiction over this matter; and it further appearing that adequate and sufficient notice, pursuant to Bankruptcy Rules 2002(b) and 3017, of the hearing on the Motion and of the hearing to consider approval of the General Disclosure Statement and the Specific Disclosure Statements has been given; and all objections to the Motion, the General Disclosure Statement and the Specific Disclosure Statements having been withdrawn or overruled for reasons stated on the record at the Disclosure Statement Hearing; and after due deliberation and upon the Court's determinations that the General Disclosure Statement and the Specific Disclosure Statements should be approved and that the relief requested in the Motion is in the best interests of the Debtors, their Estates, creditors, and other parties in interest, and sufficient cause appearing therefor,

**THE COURT FINDS AND DETERMINES THAT:**

A.      The General Disclosure Statement and each of the following specific disclosure statements (collectively, the "Joint Disclosure Statement") contain "adequate information" within the meaning of section 1125 of the Bankruptcy Code:

1.  [List disclosure statements approved by the Bankruptcy Court].

B.      The forms of Ballots and Master Ballots annexed to this Order as Exhibits A and B, respectively, are (i) sufficiently consistent with Official Form No. 14 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, including, without limitation, the solicitation and tabulation of votes on multiple Plans, and (iii) are appropriate for each Class of Claims entitled to vote to accept or reject the Plans.

C.      The Ballots and Master Ballots require the furnishing of sufficient information to assure that (i) duplicate Ballots and Master Ballots are not submitted and

46429/0001-7155603v1

tabulated and (ii) the Master Ballots reflect the votes of the Beneficial Owners of the Debtors'
Senior Notes and PHONES Notes.

      D.     The period, set forth below, during which the Proponents may solicit
acceptances of the Plans is a reasonable and adequate period of time for Holders of Claims in the
Voting Classes to make an informed decision to accept or reject the Plans.

      E.     The voting procedures set forth in the Motion and the voting instructions
accompanying the forms of Ballots and Master Ballots provide for a fair and equitable voting
process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

      F.     The procedures associated with the Ballots and Master Ballots with
respect to a party's right to make the elections set forth in each of the Plans, including, without
limitation, to grant the releases contained in the Debtors and Co-Proponents Plan and the Step
One Plan , are fair and reasonable.

      G.     The contents of the Solicitation Packages and other notices, as set forth in
the Motion, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice of the
Plans and the Confirmation Hearing to all interested parties.

      H.     The combination of direct and published notice of the Plans and
Confirmation Hearing, as set forth in the Motion, provides good and sufficient notice of the
Plans, the Confirmation Hearing and the opportunity to vote on and/or object to the Plans and
satisfies the requirements of due process with respect to all known and unknown creditors of the
Debtors.

      I.     The notice, solicitation, and voting procedures set forth in the Motion with
respect to Holders of Claims against and Interests in any Guarantor Non-Debtors that commence

4

Chapter 11 Cases provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

J.      Taking into account the extensive documentary and other factual record already developed in the Debtors' chapter 11 cases with respect to the LBO-Related Causes of Action (including, but not limited to, the materials provided to and developed by the Court-appointed Examiner), the discovery-related parameters proposed in the Motion are in the best interests of the Debtors' estates, are fair and reasonable under the circumstances, and will promote the efficient conduct of the Confirmation Hearing.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted, and any and all objections to the Motion are overruled.

2.      The Joint Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

3.      Record Date.  **[November 9, 2010]** is established as the Record Date for purposes of determining (i) the Holders of Claims in Voting Classes that are entitled to vote on the Plans, and (ii) the Holders of Claims and Interests that are entitled to receive Solicitation Packages or other notice materials respecting the Plans and the Confirmation Hearing, as set forth in the Motion.

4.      Solicitation Package.  The Proponents are authorized and empowered to distribute, through the Voting Agent, to Holders of Claims in the Voting Classes that have not been disallowed for voting purposes and that otherwise qualify to vote to accept or reject some or

46429/0001-7155603v1

all of the Plans in accordance with the procedures in this Order ("Voting Claims") by first-class

mail, the Solicitation Package, which shall contain copies of:

a. a CD-ROM containing the General Disclosure Statement and the Specific Disclosure Statements approved by this Court at the Disclosure Statement Hearing and the Plans related thereto, and other exhibits annexed thereto;

b. the Solicitation Order, excluding exhibits annexed thereto;

c. the Confirmation Hearing Notice;

d. an appropriate number of Ballots, together with applicable Instructions and one or more pre-paid return envelopes; and

e. the Responsive Statements.

5. The Responsive Statements shall be included in the Solicitation Packages

in four (4) hard copy booklets, with all Responsive Statements proposed by the Proponents of a

particular Plan bound together in a single booklet.

6. The Ballots and Master Ballots shall be color-coded to correspond to each

particular Plan, with Ballots and Master Ballots for the Debtors and Co-Proponents Plan being

blue, Ballots and Master Ballots for the Pre-LBO Debtholder Plan being purple, Ballots and

Master Ballots for the Bridge Plan being green, and Ballots and Master Ballots for the Step One

Plan being yellow.

7. The Proponents are authorized to distribute, through the Voting Agent, the

Joint Disclosure Statement and the Plans, and all exhibits thereto, on CD-ROM; provided,

however, that any party receiving the CD-ROM may request hard copies of the foregoing

documents, without charge, from the Voting Agent; and provided further, that the Proponents

may distribute, through the Voting Agent, hard copies of the General Disclosure Statement, the

Specific Disclosure Statements, the Plans or other exhibits annexed thereto as part of the

46429/0001-7155603v1

Solicitation Packages to the extent necessary to facilitate a timely distribution of the Solicitation Packages.

8.    To the extent that the following parties have not otherwise received a Solicitation Package, as of the commencement of the solicitation process, the Proponents shall distribute, though the Voting Agent, (a) a CD-ROM containing the Joint Disclosure Statement, together with the Plans and other exhibits annexed thereto, (b) the Solicitation Order, excluding exhibits annexed hereto, and (c) the Confirmation Hearing Notice to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for each of the Proponents; (iv) counsel to the Loan Agents for Tribune Company's pre-petition loan facilities; (v) counsel to the administrative agent for the Debtors' post-petition financing facility; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.

9.    Service on such parties of the Joint Disclosure Statement and the Plans, together with their exhibits and other materials in the Solicitation Packages, fulfills the obligations of the Proponents of the relevant Plans under Bankruptcy Rules 2002(b) and 3017(d).

10.    A transferee of a Voting Claim shall be entitled to receive a Solicitation Package on account of a transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Record Date, or (b) the transferee files, no later than the Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence such transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

11.    Where a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall be bound by any vote (and the consequences thereof) and, if

46429/0001-7155603v1

applicable, any election(s) made on the Ballot by the Holder as of the Record Date of such transferred Claim.

12.    To the extent a Claim has been temporarily disallowed for voting purposes pursuant to an order of this Court, the Holder of such Claim shall not be entitled to receive a Solicitation Package.

13.    To the extent a Class of Claims is entitled to vote under one or more of the Plans but is not entitled to vote under other Plans, the Holders of such Claims shall be provided with a full Solicitation Package.

14.    Notice to Holders of Non-Voting Claims and Interests.  The Proponents are not required to transmit Solicitation Packages to parties not entitled to vote on any of the Plans.  The Proponents shall instead mail, or cause to be mailed, to each member of the Non-Voting Classes a copy of the Confirmation Hearing Notice and this Order, excluding the exhibits annexed hereto.  If the Holder of a Claim in any of the Non-Voting Classes makes a specific request to the Voting Agent, such party shall receive a CD-ROM containing the Joint Disclosure Statement, together with the Plans and other exhibits annexed thereto.

15.    Notice to Holders of Customer Program Claims.  The Proponents are not required to provide Solicitation Packages, or any other form of notice of the Plans and/or the Confirmation Hearing, to the Holders of Customer Program Claims.

16.    Non-Delivery of Solicitation Materials to Holders of Intercompany Claims.  The Proponents are not required to distribute Solicitation Packages or other materials respecting the Plans and the Confirmation Hearing to Holders of Intercompany Claims.

17.    Notices to Holders of Claims Against and Interests in Guarantor Non-Debtors or Subsidiary Non-Debtors that Become Debtors, if Any.  The Proponents are not

46429/0001-7155603v1

required to transmit Solicitation Packages to Holders of Claims against and Interests in any

Guarantor Non-Debtor or other Subsidiary Non-Debtor in connection with the Prepackaged

Plans.

18.     <u>Non-Delivery of Solicitation Materials to Undeliverable Addresses</u>.  With

respect to addresses from which notices of the hearing to approve the Prior Disclosure Statement

were returned as undeliverable by the United States Postal Service, the Voting Agent, on behalf

of the Proponents, is excused from distributing Solicitation Packages or any other materials or

notices (including any updates, supplements, amendments or modifications thereto) to those

persons or entities listed at such addresses unless the Voting Agent has been or is provided with

an accurate address for any such entity prior to the distribution of the solicitation materials, and

failure to distribute Solicitation Packages or other materials to such persons or entities will not

constitute inadequate notice of the Confirmation Hearing or the Voting Deadline (as defined

below) or violate Bankruptcy Rule 3017(d).

19.     <u>Approving Forms of Ballots, Master Ballots and Instructions, Distribution

Thereof</u>.  The Ballots and Master Ballots, which shall be substantially in the forms annexed

hereto as <u>Exhibits A</u> and <u>B</u>, respectively, are hereby approved.

20.     The Voting Agent shall customize, to the extent possible, each Ballot to

include each Holder's name, address, and the amount (and, where applicable, the classification)

of such Holder's Claim.

21.     Wherever possible, creditors who have more than one Claim against one

or more of the Debtors shall receive only one Solicitation Package and one or more Ballots, as

necessary.

22.     With respect to Solicitation Packages to be distributed to Holders of Senior Noteholder Claims and PHONES Notes Claims, the Proponents shall distribute, or cause to be distributed, a reasonably sufficient number of Solicitation Packages, including beneficial Ballots, to Voting Nominees for distribution to the Beneficial Owners of the Claims for whom such Voting Nominee acts.  Upon written request with supporting documentation, the Voting Agent shall reimburse each Voting Nominee for its reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages.

23.     Each Voting Nominee is required to (i) forward the Solicitation Packages to Beneficial Owners, (ii) receive returned beneficial Ballots from the Beneficial Owners, (iii) tabulate the results according to the instructions set forth in the Master Ballot, return such results in a Master Ballot by the Voting Deadline, and (iv) retain the underlying beneficial Ballots received from the Beneficial Owners for inspection for a period of one (1) year following the Voting Deadline.

24.     The contents of the Solicitation Package and the manner of service of the Solicitation Package satisfy the requirements of Bankruptcy Rule 3017(d).

25.     Solicitation Commencement.  The Proponents shall use their reasonable best efforts to complete mailing of the solicitation materials within ten (10) business days following entry of this Order.

26.     Voting Deadline.  Ballots and Master Ballots must be properly executed and completed, and the originals thereof shall be delivered to the Voting Agent so as to be actually received by no later than [          ] at 4:00 p.m. (prevailing Eastern Time) by (a) first-class mail postage prepaid in the return envelope provided with the Ballot, or (b) personal

10

delivery or overnight courier, in each case to the addresses provided on the Ballots or Master Ballots, as applicable.

27.     The Voting Agent is required to file the results of its tabulation of votes to accept or reject the Plans no later than fourteen (14) days following the Voting Deadline.

28.     Ballot Tabulation Procedures.  Solely for purposes of voting to accept or reject the Plan, and not for any other purposes, and without prejudice to the rights of any party (including, without limitation, any of the Proponents) in any other context, each Holder of a Claim in a Voting Class shall be entitled to vote the amount of such Claim as set forth in the Debtors' filed Schedules (as may be amended from time to time) unless such Holder has filed a proof of claim, in which event such Holder would be entitled to vote the amount of such Claim as set forth in such proof of claim, subject to the following:

    a.  if a Claim is deemed "Allowed" in accordance with any of the Plans or an order of this Court, such Claim shall be allowed for voting purposes in the "Allowed" amount set forth in the applicable Plan or this Court's order;

    b.  if a Claim has been estimated or otherwise allowed for voting purposes by order of this Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by this Court for voting purposes only;

    c.  if no proof of claim has been timely filed and the Claim has not been disallowed, then the vote amount shall be the non-contingent, liquidated, and undisputed amount as set forth in the Schedules;

    d.  if a proof of claim has been timely filed and the Claim has not been disallowed, and the Claim is not (i) the subject of a pending objection, (ii) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), or (iii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), the vote amount is the liquidated amount as set forth on the proof of claim;

11

e.  if a proof of claim has been timely filed and the Claim has not been disallowed, and the Claim is (i) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), or (ii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), such claim shall be temporarily allowed for voting purposes only, and not for any other purposes and without prejudice to the rights of any of the Proponents in any other context, at $1.00;

f.  if (i) a proof of claim has been filed and is the subject of a pending objection, or (ii) if the Debtors have amended or supplemented the Schedules to (a) eliminate a Claim or (b) to change the nature or characterization of a Claim but the thirty (30) day period specified in the Bar Date Order for the relevant Holder of such Claim to file a proof of claim in response to such amendment has not yet passed, then such Claim shall be disallowed for voting purposes, except to the extent and in the manner as may be set forth in the relevant objection, amendment or supplement;

g.  to the extent that a Holder of Claims has filed or purchased duplicative claims that are classified in the same Class under a particular Plan, such Holder shall be provided with a single Solicitation Package and a single Ballot for voting a single Claim in such Class, regardless of whether an objection has been filed to the allowance of such duplicate Claims;

h.  where a Holder of Claims has asserted its Claims against no particular Debtor, or against all Debtors without filing separate proofs of claim against each Debtor as required by the Bar Date Order, and the Voting Agent is not able to determine which Debtor such Claims should properly be asserted against after the exercise of reasonable diligence, such Holder shall not be entitled to a vote on account of such Claims;

i.  Claims, whether scheduled or filed, for $0.00 will be disallowed for voting purposes;

j.  if a proof of claim has been filed in a liquidated amount but also purports to include other, unliquidated amounts, the vote amount shall be solely the liquidated, non-disputed amount set forth on the proof of claim; and

46429/0001-7155603v1

k.  if a proof of claim has been filed after the applicable bar date without such filing having been expressly authorized by the Court, the Holder of the Claim reflected in such proof of claim shall not be entitled to vote to accept or reject any of the Plans on account of such Claim.

29.     Notwithstanding the foregoing tabulation procedures, Holders of Senior Loan Claims, Senior Guaranty Claims (or Senior Loan Guaranty Claims, as defined in the relevant Plan), the Swap Claim, Bridge Loan Claims, Bridge Loan Guaranty Claims, Senior Noteholder Claims, and PHONES Notes Claims as of the Record Date shall be entitled to vote to accept or reject all of the Plans, regardless of whether such Claims are deemed disputed under one or more of the Plans or are the subject of a pending objection.

30.     Any Ballot that partially rejects and partially accepts the Plan will not be counted.

31.     The following types of Ballots will not be counted in determining whether the Plans have been accepted or rejected:

a.  any Ballot or Master Ballot that is otherwise properly completed, executed and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the relevant Plan, or that indicates both acceptance and rejection of the relevant Plan;

b.  any Ballot or Master Ballot received after the Voting Deadline, unless the Proponents of the relevant Plan, in their sole discretion, shall have granted in writing an extension of the Voting Deadline with respect to such Ballot or Master Ballot;

c.  any Ballot or Master Ballot containing a vote that the Bankruptcy Court determines, after notice and a hearing, was not in good faith or was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

d.  any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.  any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

13

f.    any Ballot or Master Ballot without an original signature; and any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

32.    The following voting procedures and standard assumptions shall be used in tabulating the Ballots, subject to any contrary order(s) of this Court:

a.    delivery of a completed Ballot or Master Ballot to the Voting Agent will be deemed made only when the original, executed Ballot or Master Ballot is actually received by the Voting Agent.

b.    The Proponents of a particular Plan, in their sole discretion, may waive any defect in any Ballot or Master Ballot at any time, including failure to file such Ballot or Master Ballot in a timely manner, either before or after the close of voting, and without notice.  Unless the Ballot or Master Ballot being furnished is submitted on or prior to the Voting Deadline, the Proponents of a particular Plan, in their sole discretion, may reject any defective or late-filed Ballot or Master Ballot as invalid and, therefore, decline to utilize it in connection with confirmation of the applicable Plan.

c.    After the Voting Deadline, no vote may be withdrawn without the prior consent of the Proponents of the particular Plan on which the vote has been cast, or authorization from the Bankruptcy Court.

d.    Any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Proponents of the relevant Plan (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

e.    Neither the Proponents, nor any other person or entity, will be under any duty to provide notification to Holders of Claims of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any of them incur any liabilities for failure to provide such notification.  Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

The Proponents shall provide reports of any waivers or consents granted under the foregoing subsections to the Voting Agent, and the Voting Agent shall maintain a record of any waivers or consents granted under the subsections of this paragraph.

33.    Master Ballot Tabulation.  With respect to the tabulation of Master Ballots and Beneficial Ballots for Senior Noteholder Claims and PHONES Notes Claims cast by Voting

14

Nominees and Beneficial Owners, respectively, the principal amount held by Voting Nominees

and Beneficial Owners on the Record Date, as evidenced by the record and depository listings

will be used as the amount to tabulate acceptance or rejection of the Plans (although any

principal amounts may be adjusted by the Voting Agent to account for prepetition interest). The

following additional rules shall apply to the tabulation of Master Ballots and Beneficial Ballots

cast by Voting Nominees and Beneficial Owners on each of the Plans:

  a.    Votes cast by Beneficial Owners through a Voting Nominee will be
        compared to the positions held by such Beneficial Owners in the PHONES
        Notes or the applicable tranche of Senior Notes as of the Record Date, as
        evidenced by the record and depository listings. Votes submitted by a
        Voting Nominee, pursuant to a Master Ballot, will not be counted in
        excess of the Record Amount of Senior Notes or PHONES Notes held by
        such Voting Nominee.

  b.    To the extent that conflicting votes or "overvotes" are submitted by a
        Voting Nominee, the Voting Agent, in good faith, will attempt to reconcile
        discrepancies with the Voting Nominees.

  c.    To the extent that overvotes on a Master Ballot are not reconcilable prior
        to the preparation of the vote certification, the Voting Agent will apply the
        votes to accept and to reject each Plan in the same proportion as the votes
        to accept and reject such Plan submitted on the Master Ballot that
        contained the overvote, but only to the extent of the Voting Nominee's
        position in the PHONES Notes or the applicable tranche of Senior Notes.

  d.    Where a Beneficial Owner holds its Senior Notes or PHONES Notes
        through more than one Voting Nominee, it must execute a separate
        Beneficial Ballot for each block of Senior Notes or PHONES Notes, as
        applicable. Such Beneficial Owner must vote all of its Senior Noteholder
        Claims or PHONES Notes Claims in the same manner, to either accept or
        reject each Plan. If such Beneficial Owner returns more than one
        Beneficial Ballot to more than one Voting Nominee voting different
        Senior Noteholder Claims or PHONES Notes Claims, and the Beneficial
        Ballots are not voted in the same manner, as reflected on such separate
        Master Ballots, such votes will not be counted.

  34.   In addition to the foregoing tabulation procedures, in the event a Holder of

Claims or a Voting Nominee casts multiple Ballots or Master Ballots, respectively, voting the

same Claim(s) before the Voting Deadline, the last dated and valid Ballot or Master Ballot

46429/0001-7155603v1

received before the Voting Deadline be deemed to reflect the voter's intent and supersede any prior Ballots or Master Ballots. If a Holder of Claims or a Voting Nominee casts multiple Ballots or Master Ballots received by the Voting Agent on the same day, but which are voted inconsistently, unless a supplemental Master Ballot respecting such Claims is subsequently filed, such Ballots or Master Ballots shall not be counted.

35.     A Holder of Voting Claims in more than one Voting Class under a particular Plan is required to execute a separate Ballot for its Claims in each such Class, and in the case of the Senior Notes and the PHONES Notes, each Beneficial Owner must execute a separate Beneficial Ballot for each block of securities that it holds through any Voting Nominee and must return each such Beneficial Ballot to the appropriate Voting Nominee.

36.     In the case of (i) Senior Loan Claims and Senior Guaranty Claims or Senior Loan Guaranty Claims (whether or not classified into Step One Senior Loan Claims/Step One Senior Loan Guaranty Claims and Step Two Senior Loan Claims/Step Two Senior Loan Guaranty Claims) and (ii) Bridge Loan Claims and Bridge Loan Guaranty Claims, the Holders of such Claims shall be provided with a single Ballot that will be used jointly to vote the Senior Loan Claims and Senior Guaranty Claims (or Senior Loan Guaranty Claims) and/or a single Ballot that will be used jointly to vote the relevant Bridge Loan Claims and Bridge Loan Guaranty Claims, as applicable. Such votes will also be, to the extent specified in each of the Plans, votes to accept or reject the Prepackaged Plan of any Guarantor Non-Debtor that becomes a Debtor in the relevant Classes.

37.     Each vote to accept the Debtors and Co-Proponents Plan in each of Classes 50C through 111C (Senior Guaranty Claims) will also be counted as an acceptance of the compromise and settlement set forth in section 11.2.5 of the Debtors and Co-Proponents

16

Plan. Similarly, each vote to accept the Step One Plan in Classes 50C(i) through 111C(i) and 50C(ii) through 111C(ii) will be counted as an acceptance of the compromise and settlement set forth in Section 11.3.5 of the Step One Plan.

38.    <u>Rule 3018 Motions</u>. If any Holder of a Claim wishing to have its Claim allowed for purposes of voting to accept or reject one or more of the Plans in a manner that is inconsistent with the amount or classification(s) set forth on the Ballot it received, or if any party that did not receive a Ballot wishes to have its Claim temporarily allowed for voting purposes only, such Holder must serve on the Proponents and file with this Court, on or before **[January 15, 2011]**, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "<u>3018 Motion</u>"). A 3018 Motion must set forth, with particularity, the amount and classification in which such Holder believes its Claim should be allowed for voting purposes and the evidence in support of its belief, as well as the Plan(s) as to which such Holder seeks to have its Claim allowed for voting purposes. In respect of any timely-filed 3018 Motion, the Ballot in question shall be counted against the Plans specified by the Holder of the relevant Claim (a) in the amount established by this Court in an order entered on or before the Voting Deadline, or (b) if such an order has not been entered by the Voting Deadline and unless the Proponents of the applicable Plans and the party submitting the 3018 Motion have come to an agreement as to the relief requested in the 3018 Motion, in an amount equal to (i) the liquidated, non-contingent, and non-disputed amount of such Claim as set forth in the Schedules; (ii) if a proof of claim has been timely filed in respect of such Claim, the liquidated, non-contingent, and non-disputed amount set forth in such proof of claim; or (iii) if neither (i) nor (ii) applies, such party shall not have a Ballot counted at all.

46429/0001-7155603v1

39.    [              ] at __:__ _.m. (prevailing Eastern time) is established as the date for a hearing to consider any and all 3018 Motions.

40.    Voting Agent. Epiq Bankruptcy Solutions, LLC (the "Voting Agent") shall be retained as Voting Agent for the consolidated noticing, solicitation, and tabulation process respecting the Plans, notwithstanding the terms of any other agreement between the Voting Agent and the Debtors, or any order entered with respect to the retention of the Voting Agent by the Debtors.

41.    Seventy-five percent (75%) of the Voting Agent's fees, costs and expenses in performing its duties in connection with the noticing, solicitation, and tabulation process respecting the Plans shall be allocated and paid to the Proponents of the Pre-LBO Debtholder Plan, the Bridge Plan, and the Step One Plan and paid pro rata by those Proponents (i.e., 25% shall be allocated to the Proponents of each of the Plans).

42.    Media Ownership Certification Deadline. Any Holder of a Claim or Claims that (i) is anticipated to receive New Common Stock or New Warrants under any Plan, (ii) believes that the amount of its Claims (or Claims that it intends to acquire prior to the Effective Date of a confirmed Plan) may entitle it to receive (for any reason, including, but not limited to, as a result of the distribution of New Warrants or New Class B Common Stock in lieu of New Class A Common Stock to other Holders of applicable Claims, as contemplated in section 5.4.2 of each of the Plans) five percent (5%) or more of the New Class A Common Stock under a Plan (a "Potential 5% Holder"), and (iii) wishes to remain eligible to receive 5% or more of the New Class A Common Stock, shall contact the Proponents of the applicable Plan(s) and execute and submit to such Proponents a Media Ownership Certification on or prior to **[January 15, 2011]** (the "Certification Deadline").

46429/0001-7155603v1

43.    In the event a Potential 5% Holder does not submit an executed Media Ownership Certification by the Certification Deadline, and/or is not made a "party" to the FCC Applications, in accordance with section 5.4.2 of each of the Plans, such Potential 5% Holder may, in the event it otherwise would be entitled under any Plan to receive more than five percent (5%) of the New Class A Common Stock, receive as many shares of New Class B Common Stock in lieu of New Class A Common Stock under such Plan in the event such Plan is confirmed to the extent the Proponents of such confirmed Plan deem necessary to ensure compliance with the Communications Act or the FCC rules and/or to avoid a substantial delay in obtaining the FCC Approval.  The provisions of this paragraph are subject to confirmation of the relevant Plan, and the rights of all parties to interpose an objection to any of the Plans or respecting the distribution and terms of the New Common Stock are preserved for the hearing on confirmation of the Plans; provided, however, that nothing in this paragraph shall be interpreted as conferring standing to raise such issues on any party not otherwise having standing with respect thereto.

44.    Parameters for Confirmation-Related Discovery.  No additional fact discovery regarding the merits of the LBO-Related Causes of Action will be conducted.  Expert discovery and expert reports pertaining to the merits of the LBO-Related Causes of Action shall be limited to whether the settlements embodied in each of the Plans are fair, reasonable, and in the best interests of the Debtors' estates.

45.    Confirmation Hearing.  The Confirmation Hearing shall commence on [

] at [_:__] _.m., and shall continue for up to five (5) calendar days from that date, inclusive.

46429/0001-7155603v1

46.    <u>Notice of Confirmation Hearing</u>.  The Confirmation Hearing Notice and the Publication Notice, substantially in the forms annexed hereto as <u>Exhibits C</u> and <u>D</u>, are hereby approved.

47.    The Debtors shall publish the Publication Notice once each in the national editions of <u>The Wall Street Journal</u>, <u>The New York Times</u>, the <u>Los Angeles Times</u>, and the <u>Chicago Tribune</u> not less than twenty-eight (28) days before the Objection Deadline.

48.    <u>Objections to Confirmation of the Plans</u>.  Objections to confirmation of any of the Plans (including any supporting memoranda) must: (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received on or before [                    ] **at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Objection Deadline</u>") by the Proponents of each of the Plans to which the objection pertains.

49.    The Court shall consider only timely-filed written objections to confirmation of the Plans.  All objections not timely filed and served in accordance with the procedures described herein by the Objection Deadline shall be deemed overruled.

50.    The Proponents shall file responses, if any, to any objections to confirmation of their respective Plans on or before [            ] **at 4:00 p.m. (prevailing Eastern Time)**.  The Proponents shall also file with the Court their proposed findings of fact and conclusions of law and their memorandum of law in support of confirmation on or before such date.

51.    <u>Discovery Deadlines Respecting the Plans and Confirmation Hearing</u>.  In addition to the various deadlines relating to the solicitation process and the Confirmation

46429/0001-7155603v1

Hearing proposed above, the following deadlines shall apply respecting discovery concerning the

Plans:

- all parties in interest shall serve written discovery requests, if any, on or prior to [_____], and parties on whom written discovery requests have been served shall use reasonable best efforts to respond to such written discovery requests within [__] days;

- fact depositions may commence on or after [_____];

- all parties in interest shall comply with the requirements of Bankruptcy Rule 7026 and Federal Rule of Civil Procedures 26(a)(2)(B) with respect to experts (i.e., the deadline for the filing of written expert reports with the Bankruptcy Court) on or prior to [_____];

- expert depositions may commence on or after [_____]; and

- a Joint Pretrial Memorandum, along with any other documents required by the Chambers Procedures for the Honorable Kevin J. Carey, shall be filed with the Court by **4:00 p.m. (prevailing Eastern time) on** [_____].

52.     The Proponents are authorized to make any non-substantive changes to

their respective Specific Disclosure Statements without further order of the Court, including,

without limitation, changes to correct typographical, grammatical, and/or formatting errors or

omissions and to conform their Specific Disclosure Statements to their respective Plans prior to

mailing to parties in interest.

53.     The Debtors are authorized to make any non-substantive changes to the

General Disclosure Statement, voting procedures, Ballots, Master Ballots, and/or forms of

mailed and published notice of the Confirmation Hearing without further order of the Court,

including, without limitation, changes to correct typographical, grammatical, and/or formatting

errors or omissions and to conform the General Disclosure Statement and any other materials in

the Solicitation Package to the Plans prior to mailing to parties in interest.

54.     This Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

21

55.     The Proponents are authorized to take or refrain from taking any non-material actions necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

Dated:  Wilmington, Delaware
        _____, 2010

                                                                     _____
The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

22