IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| TRIBUNE COMPANY, et al. ) | Case No. 08-13141 (KJC) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | Hearing date: December 15, 2010 at 10:00 a.m. (ET) |
| ) | Objection deadline: December 8, 2010 at 4:00 p.m. (ET) |
| ) | |

## MOTION OF OAKTREE CAPITAL MANAGEMENT, L.P., AND ANGELO, GORDON & CO. L.P., FOR AN ORDER DISQUALIFYING AKIN GUMP STRAUSS HAUER & FELD LLP FROM REPRESENTING AURELIUS CAPITAL MANAGEMENT LP

Certain funds and accounts managed by Oaktree Capital Management, L.P. or their respective subsidiaries (collectively, "Oaktree"), and certain funds and accounts managed by Angelo, Gordon & Co. L.P. or its affiliates (collectively, "Angelo Gordon"), are holders of Credit Agreement claims against Tribune Company ("Tribune") and certain of its subsidiaries (collectively, the "Debtors").

Oaktree and Angelo Gordon hereby move for the entry of an order, in substantially the form of the proposed order attached hereto as *Exhibit A*, disqualifying their existing counsel, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), from representing Aurelius Capital Management LP ("Aurelius"), a party with declared interests directly adverse to those of Oaktree and Angelo Gordon, in these bankruptcy cases.

This Motion is based upon the accompanying Declaration of Kenneth Liang ("Liang Decl."), the accompanying Declaration of Gavin Baiera ("Baiera Decl.") the facts and arguments set forth below.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | STATEMENT OF FACTS | 3 |
|  | A. Akin Gump's Ongoing Representation Of Oaktree And Angelo Gordon. | 3 |
|  | B. Aurelius' Numerous Counsel And Akin Gump's Conflict. | 6 |
| III. | ARGUMENT | 9 |
|  | A. The Applicable Standard. | 9 |
|  | B. Akin Gump Has Violated The Applicable Standard. | 11 |
|  | C. Disqualification Is the Only Remedy For Akin Gump's Ethical Violation. | 14 |
| IV. | CONCLUSION | 15 |

YCST01:10385283.1　　　　　　　　　　　　　　　　068968.1001

# TABLE OF AUTHORITIES

Page

**Cases**

*Apeldyn Corp. v. Samsung Elecs. Co.*,
  660 F. Supp. 2d 557 (D. Del. 2009) .......................................................................... 11

*Boston Scientific Corp. v. Johnson & Johnson, Inc.*,
  647 F. Supp. 2d 369 (D. Del. 2009) .......................................................................... 15

*Century Indemn. Co. v. Congoleum Corp. (In re Congoleum Corp.)*,
  426 F.3d 675 (3d Cir. 2005) ..................................................................... 9, 10, 12, 13

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*,
  142 F. Supp. 2d. 579 (D. Del. 2001) ......................................................................... 14

*IBM v. Levin*,
  579 F. 2d 271 (3d Cir. 1978) .................................................................................... 14

*In re Corn Derivatives Antitrust Litig.*,
  748 F.2d 157 (3d Cir. 1984) .................................................................................. 9, 13

*In re Meridian Automotive Systems-Composite Operations, Inc.*,
  340 B.R. 740 (Bankr. D. Del. 2006) ......................................................................... 11

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*,
  803 F. Supp. 957 (D. Del. 1992) ......................................................................... 10, 12

*Madukwe v. Del. State Univ.*,
  552 F. Supp. 2d 452 (D. Del. 2008) ............................................................................ 9

*Richardson v. Hamilton International Corp.*,
  469 F.2d 1382 (3d Cir. 1972) ..................................................................................... 9

*United States v. Miller*,
  624 F.2d 1198 (3d Cir. 1980) ................................................................................ 9, 10

**Other Authorities**

ABA ANNOT. MODEL RULES OF PROF'L CONDUCT
  § 1.7[18] (6th ed. 2007) ............................................................................................. 12

ABA ANNOT. MODEL RULES OF PROF'L CONDUCT
  § 1.7[23] (6th ed. 2007) ............................................................................................. 12

**Rules**

ABA MODEL RULES OF PROF'L CONDUCT
   Rule 1.0 .................................................................................................................. 12

ABA MODEL RULES OF PROF'L CONDUCT
   Rule 1.7 ................................................................................................. 10, 11, 12, 14

ABA MODEL RULES OF PROF'L CONDUCT
   Rule 1.9 .................................................................................................................. 11

I.  **PRELIMINARY STATEMENT**

1. Akin Gump has been Angelo Gordon's in house counsel and/or primary outside counsel since Angelo Gordon's inception in 1988. Since at least June 2009, *Akin Gump has provided legal services and advice to Angelo Gordon on critical Federal Communications Commission ("FCC") matters and regulatory issues directly relating to Tribune and this reorganization.*

2. Since at least September 2009, *Akin Gump also has served as counsel to Oaktree and similarly has provided legal services and advice regarding Tribune-related FCC and regulatory issues.*

3. In this regard, Akin Gump has developed and implemented important strategies for Oaktree and Angelo Gordon in connection with this reorganization, including strategies implicated by the pending plan of reorganization proposed by Oaktree and Angelo Gordon (and opposed by Akin Gump's purported new client, Aurelius), and Akin Gump has been privy to a wide range of confidential information, including sensitive information regarding the Tribune holdings of Oaktree and Angelo Gordon and the structure and ownership of their funds. Akin Gump's advice to Oaktree and Angelo Gordon is ongoing and remains a critical component to the success of the reorganization currently pursued by them.

4. Yet, notwithstanding this active, ongoing representation in these very cases, Akin Gump recently purported to undertake a brand new representation of Aurelius – a party directly adverse to Oaktree and Angelo Gordon – in this same proceeding. Upon taking that engagement, Akin Gump wasted no time in contravening the interests of its existing clients, putting Oaktree and Angelo Gordon on notice that Aurelius "intends to seek discovery" from them, and then filing on behalf of Aurelius a plan of reorganization that directly conflicts with the plan proposed by them. At the same time, Akin Gump has indicated that Aurelius is preparing to directly attack (nominally through other counsel) Oaktree's and Angelo Gordon's interests in the Tribune proceedings now pending before the FCC – proceedings where Akin Gump is and has been representing both Oaktree and Angelo Gordon.

5.  Oaktree and Angelo Gordon have not consented to having their own lawyers represent their avowed adversary in the same case, and Akin Gump's attempted representation of Aurelius violates all applicable rules of professional conduct and ethical obligations. Those rules categorically prohibit an attorney from undertaking a representation that is directly adverse to another existing client, particularly in connection with the very same matter. By undertaking a representation in which it will pursue claims and advance interests directly adverse to its existing clients (Oaktree and Angelo Gordon), Akin Gump has disregarded the rules and breached its ethical obligations.[1]

6.  As Aurelius itself previously observed (in its recent motion for disqualification of counsel to the Official Committee), a breach of the rules of professional conduct can only be rectified by an order of this Court disqualifying the offending counsel. The standards that Aurelius demands of other professionals in these cases also apply to Aurelius' alleged new lawyers, and for all the reasons set forth below, the Court must disqualify Akin Gump from proceeding with or continuing the Aurelius representation here.

---

[1] As the Court is aware, Akin Gump previously represented Centerbridge Credit Advisors, LLC, also a party with adverse interests in these bankruptcy cases. Although Akin Gump never sought consent to that representation, Oaktree and Angelo Gordon did not object. Even if that silence is deemed to be a waiver of the prior representation, Oaktree and Angelo Gordon have never consented to Akin Gump's representation of any other adversary in these cases, and any waiver that might have occurred absolutely did not apply to others, particularly Aurelius.

Oaktree and Angelo Gordon have good reasons for not wanting their own counsel to represent Aurelius. Aurelius is known for litigation at all costs and to all ends. Aurelius commonly takes aggressive litigation positions in order to extract "hold up" value from other stakeholders, who may view the expense, delay and distraction of claims brought by Aurelius (no matter how frivolous) as detrimental to the best interest of the enterprise or debtor. Aurelius already has demonstrated that it will stop at nothing in its efforts to derail these cases, including by seeking the appointment of a chapter 11 trustee (ironically, on the grounds of alleged conflicts in interest) and disqualification of counsel to the Official Committee of Unsecured Creditors (again, ironically, on the grounds of alleged conflicts in interest). Having Aurelius as an adversary is a vastly different proposition from having Centerbridge as an adversary, and Oaktree and Angelo Gordon simply do not and will not consent to having their own lawyers at Akin Gump represent Aurelius in this same case. Akin Gump cannot serve the interests of both sets of clients, and Oaktree and Angelo Gordon are entitled to enforce Akin Gump's obligations of loyalty to them.

## II. STATEMENT OF FACTS

### A. Akin Gump's Ongoing Representation Of Oaktree And Angelo Gordon.

7. Akin Gump's legal relationship to Angelo Gordon is long-standing and has encompassed virtually every aspect of its business. Baiera Decl. ¶ 3. Akin Gump became Angelo Gordon's primary outside counsel at Angelo Gordon's formation in 1988 and, until 2008 (when Angelo Gordon hired its first internal counsel), Akin Gump essentially functioned as Angelo Gordon's "in house" counsel. Baiera Decl. ¶ 3. Pursuant to its longstanding relationship with Akin Gump, they have become Angelo Gordon's primary FCC counsel on substantially all its investments in the media and publishing companies. In June 2009 Angelo Gordon began consulting with Akin Gump regarding the Tribune bankruptcy cases, in which Angelo Gordon is a substantial holder of debt that ultimately will be converted into substantial equity in reorganized Tribune. Baiera Decl. ¶ 4. In that capacity, Akin Gump has advised Angelo Gordon on a wide range of critical issues relating to Tribune's FCC licenses and regulatory issues. Baiera Decl. ¶ 4.

8. Similarly, in September 2009 Oaktree also retained Akin Gump as its counsel and advisor in matters pertaining to governmental regulation of media companies, including applicable ownership rules and FCC regulations pertinent to Oaktree's substantial holdings of Tribune debt and the pending restructuring in which Oaktree would becomes a substantial equity holder of the reorganized Tribune. In addition, Akin Gump has become Oaktree's primary FCC counsel on substantially all its investments in media and publishing companies. Liang Decl. ¶ 3.

9. In connection with those Tribune engagements, Akin Gump has provided Oaktree and Angelo Gordon with substantial legal advice and services related to the Tribune reorganization proceeding. With respect to FCC and regulatory issues, Akin Gump has assisted them in formulating and evaluating plans of reorganization, in devising strategies and responses to competing plans, and in assessing a myriad of other issues.[2] Liang Decl. ¶ 4; Baiera Decl. ¶ 5.

---

[2] As the Court is aware, Oaktree and Angelo also have retained Hennigan, Bennett & Dorman LLP ("HBD") as special reorganization counsel for advice on matters other than the FCC

-3-

10. Akin Gump's services and advice to Oaktree and Angelo Gordon in fact relate to a central issue in this case. All of the various proposed plans of reorganization (including the plan proposed by Oaktree and Angelo Gordon, on one hand, and the plan proposed by Aurelius, on the other) involve the distribution of common stock in reorganized Tribune to different creditor constituencies. As a consequence, all plans contemplate a change in ownership of Tribune. This prospective change in ownership is not possible absent certain consents and waivers from the FCC, and Tribune has filed applications for waivers of a number of FCC rules and policies necessary for the consummation of a reorganization in this case.

11. The Disclosure Statement for the plan of reorganization proposed by Oaktree, Angelo Gordon and others specifically states that "the FCC must approve the Debtors' FCC Applications before emergence from bankruptcy" and contains a lengthy description of the various risks associated with FCC approval.[3] The General Disclosure Statement applicable to all of the competing plans filed in these cases contains a separate, thorough discussion of FCC issues and risks and confirms that "FCC consent [is] required for emergence from bankruptcy."[4] Aurelius (Akin Gump's alleged new client) frankly acknowledges this to be the case, as the plan of reorganization proposed by Aurelius (with Akin Gump as counsel) is conditioned on FCC approval, and the disclosure statement prepared by Akin Gump for Aurelius warns that the "inability to obtain FCC approval and media ownership waivers would adversely affect ability to consummate the Pre-LBO Debtholder Plan."[5]

---

issues. HBD does not have expertise in FCC or regulatory matters and has not provided and cannot provide Oaktree or Angelo Gordon with counsel on those issues.

[3] *Specific Disclosure Statement Relating to Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., and JPMorgan Chase Bank, N.A.* [D.I. 6091] ("Debtors Discl. Statement"), at 33-38 and 43-47.

[4] *Joint Disclosure Statement* [D.I. 6090], at 69

[5] *Specific Disclosure Statement For The Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, LP, On Behalf Of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes, Law Debenture Trust Company Of New York, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior*

12.  Oaktree and Angelo Gordon are among the largest, if not the largest, creditors in these proceedings, and they stand to be among the largest recipients of stock in the reorganized Tribune. Advice concerning FCC rules and required approvals, as well as issues that may require changes to Oaktree's and Angelo Gordon's corporate structures to accommodate their receipt of stock in reorganized Tribune, is critical to their positions in these cases. To that end, Akin Gump has represented and continues to represent Oaktree and Angelo Gordon in connection with filings with and proceedings before the FCC, including Tribune's pending applications to the FCC for various waivers and consents necessary for the effectiveness of any plan of reorganization, and Oaktree and Angelo Gordon have relied upon and utilized Akin Gump's work in formulating their own plan, in evaluating other proposed plans, and in their analysis of other options. Liang Decl. ¶ 5; Baiera Decl. ¶ 6.

13.  Akin Gump has not provided this legal advice in a vacuum. Akin Gump has consulted with Oaktree's and Angelo Gordon's management and reorganization counsel, has reviewed pertinent pleadings and has had access to confidential and sensitive information about Oaktree and Angelo Gordon, including information about their holdings and positions with respect to Tribune, ownership structures in various funds, and legal issues associated with those structures. Liang Decl. ¶ 6; Baiera Decl. ¶ 7

14.  Akin Gump also knows that the FCC issues are not isolated from the bankruptcy cases; in fact, ***Akin Gump bankruptcy attorneys were consulted on the impact of FCC issues on the Angelo Gordon and Oaktree positions in this bankruptcy proceeding***. On January 19, 2010, Akin Gump's FCC attorneys recommended that Akin Gump look at certain FCC issues on behalf of Oaktree and Angelo Gordon "from a bankruptcy law perspective" to ensure that Akin Gump's recommendations regarding FCC issues and suggested approach would work. Baiera Decl. ¶ 8.Angelo Gordon responded that, "I think it makes sense to have Akin be prepared from

---

Notes And Wilmington Trust Company, In Its Capacity As Successor Indenture Trustee For The Phones Notes. [D.I. 6182] ("Aurelius Discl. Statement"), at 55.

-5-

a BK perspective to defend our approach. So yes." Baiera Decl. ¶ 8. Thus, bankruptcy lawyers at Akin certainly had access to the FCC advice being provided to Oaktree and Angelo Gordon. They cannot now advise a party adverse to Oaktree and Angelo Gordon on the same FCC related bankruptcy issues. Indeed, a more direct conflict would be difficult to imagine.

15.     Simply put, Akin Gump has provided critical legal services and advice, and been privy to confidential Oaktree and Angelo Gordon information, in this very case about open and pending matters that are critical to the ultimate goal of reorganization. Yet, Akin Gump now proposes to represent Aurelius and to challenge the positions taken by Oaktree and Akin Gump on issues related to this very advice.

### B.     Aurelius' Numerous Counsel And Akin Gump's Conflict.

16.     Aurelius, acting on behalf of its managed funds, appeared in these cases as early as February 9, 2009 in its capacity as a holder of bonds issued by Tribune.[6] At that time, Aurelius was (and may still be) represented by the firm of Greenburg Traurig. By not later than August 2, 2010, Aurelius also had retained Bilzin Sumberg Baena Price & Axelrod, LLP and Ferry, Joseph & Pearce, P.A. as counsel.[7] Less than two weeks later, on August 13, 2010, Aurelius also retained Friedman, Kaplan, Seiler & Adelman, LLP and Ashby & Geddes, P.A.,[8] and Friedman Kaplan remained counsel of record for Aurelius as recently as October 11, 2010.[9] Some time after October 11, 2010, Aurelius also retained Akin Gump.

---

[6] *See Aurelius Objection To Motion Of The Committee For Entry Of Order Authorizing Filing Of Exhibit Under Seal* [D.I. 3352].

[7] *See Response By Aurelius Capital Management, LP To Motion Of Court-Appointed Examiner, Kenneth N. Klee, Esq., For Order (1) Temporarily Authorizing The Filing Of The Examiner's Entire Report And Certain Documents Under Seal; And (2) Overruling The Claims Of Confidentiality With Respect To The Report And Its Exhibits* [D.I. 5232]

[8] *See Notice Of Substitution Of Counsel Filed By Aurelius Capital Management, LP* [D.I. 5376].

[9] *See Limited Objection Of Aurelius Capital Management, LP To Motions Of The Official Committee Of Unsecured Creditors For Entry Of Orders Granting Leave, Standing And Authority To Commence, Prosecute And Settle Claims And Counterclaims Of The Debtors Estates* [D.I. 5922].

17. Just days later, on October 16, 2010, Akin Gump sent a letter to HBD, Oaktree's and Angelo Gordon's special reorganization counsel, stating that Akin Gump "is counsel to Aurelius" in the Tribune matter and that "Aurelius intends to seek discovery" from Oaktree and Angelo Gordon relating to Tribune. Liang Decl. ¶ 11; Baiera Decl., ¶ 10. The list of anticipated discovery included matters related to "any potential, proposed, or actual plan(s) of reorganization that have been considered, discussed, or negotiated by any party in interest" and thus directly implicated Akin Gump's own advice to Oaktree and Angelo Gordon respecting the critical FCC issues and matters on which Akin Gump had received confidential information in the course of its representation of Oaktree and Angelo Gordon. Liang Decl. ¶ 11; Baiera Decl., ¶ 10.

18. On October 27, 2010, Oaktree and Angelo Gordon (through HBD) objected and advised Akin Gump that it could not undertake this representation if Aurelius intended to take any positions adverse to those of Oaktree or Angelo Gordon in connection with pending or future proceedings before the FCC regarding Tribune or if Akin Gump intended to take any positions or make any statements that would be inconsistent with any positions or statements made by Akin Gump in connection with its representation of Oaktree and Angelo Gordon in these cases. Liang Decl., ¶ 9.

19. Remarkably, Akin Gump refused to agree. Instead, on October 29, 2010, Akin Gump, on behalf of Aurelius, filed a plan of reorganization in direct competition with the plan proposed by Oaktree and Angelo Gordon. As noted above, Aurelius acknowledges in its plan that the FCC issues, including FCC approval of Tribune's ownership structure, are inextricably intertwined with Tribune's reorganization and a critical component of any successful reorganization plan. Indeed, the Aurelius Disclosure Statement (presumably drafted by Akin Gump) devotes multiple pages to a description of FCC regulations, needed approvals of license transfers, and foreign ownership rules impacting holders of stock in reorganized Tribune.[10]

---

[10] Aurelius Discl. Statement, at 53-57.

-7-

20. Akin Gump advises Oaktree and Angelo Gordon on all of these issues, and has worked and will continue to work closely with them in an effort to ensure approval of the joint plan submitted by Oaktree, Angelo Gordon and others to this Court. Yet, Aurelius – Akin Gump's purported new client – has indicated that it has hired new FCC counsel which, according to Akin Gump, will be able "without limitation" to contest positions advanced by Oaktree and Angelo Gordon in proceedings before the FCC. Liang Decl. ¶ 9. In other words, Akin Gump now purports to represent an entity that intends to directly challenge the positions advanced by Akin Gump on behalf of Oaktree and Angelo Gordon, in the very same proceeding. This starkly demonstrates the direct adversity between Akin Gump's ongoing clients (Oaktree and Angelo Gordon) and its alleged new client (Aurelius).

21. Akin Gump's position therefore is untenable. It proposes to present positions on behalf of two clients (Oaktree and Angelo Gordon) before the FCC (and, indirectly, this Court), while simultaneously presenting, or assisting in presenting, contrary positions before the same tribunals on behalf another client (Aurelius). It is hard to imagine a more direct violation of Akin Gump's ethical obligations. Akin Gump's proposal that separate "FCC counsel" will actually appear on behalf of Aurelius at the FCC does nothing to rectify this conflict. As shown above, FCC issues directly impact this reorganization proceeding, and any "FCC counsel" retained by Aurelius will necessarily have to work with Akin Gump on these issues. The positions Akin Gump will develop on behalf of Aurelius at the FCC and before this Court will be directly adverse to those developed by Akin Gump on behalf of its existing clients, Oaktree and Angelo Gordon.

22. As discussed below, the applicable rules of professional conduct prohibit Akin Gump from representing a party adverse to Oaktree or Angelo Gordon in this proceeding. Akin Gump cannot, consistent with its ethical obligations, simultaneously represent and advise the very party who is trying to derail Oaktree's and Angelo Gordon's efforts before the FCC and contest approval of the plan proposed by Oaktree and Angelo Gordon. Yet, that is precisely what Akin Gump has proceeded to do. Oaktree and Angelo Gordon have not and could not have

waived this direct conflict, and Akin Gump's refusal to withdraw from the prohibited representation can only be rectified by an order of this Court disqualifying Akin Gump from representing Aurelius in this proceeding.[11]

## III. ARGUMENT

### A. The Applicable Standard.

23. Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008); *see, e.g.*, *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The Model Rules of Professional Conduct of the American Bar Association (the "Model Rules") govern the practice of law before this Court, D. Del. L.R. 83.6(d)(2) (incorporating the Model Rules), and therefore are applicable here.

24. The Court has the power to disqualify attorneys for violation of the applicable disciplinary rules. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). This power derives from the Court's inherent authority to supervise the professional conduct of attorneys appearing before it. *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972). Indeed, "[r]ules governing professional conduct are often viewed as even more necessary and applicable in bankruptcy cases than in other contexts." *Century Indemn. Co. v. Congoleum Corp. (In re Congoleum Corp.)*, 426 F.3d 675, 686 (3d Cir. 2005).

---

[11] Tellingly, Aurelius itself recently filed a motion seeking to disqualify the Chadbourne firm, counsel to the Official Committee, from undertaking any representation on matters that conflict with other concurrent representations, even if another firm ("conflicts counsel") took the lead on those issues. *Motion Of Aurelius Capital Management, LP To Disqualify Chadbourne & Parke LLP From Acting On Behalf Of The Official Committee Of Unsecured Creditors In Matters On Which It Has A Conflict Of Interest* [D.I. 5669]. Given Aurelius' strident pronouncements that concurrent conflicts mandate disqualification, Akin Gump's efforts to undertake the Aurelius representation in the face of its ongoing representation of Oaktree and Angelo Gordon are particularly surprising.

25. Akin Gump's representation of Aurelius categorically violates Model Rule 1.7, which precludes concurrent representation of a client with interests adverse to those of another client. That rule provides:

> Rule 1.7: Conflict Of Interest: Current Clients
>
> (a) Except as provided in paragraph (b), *a lawyer shall not represent a client if the representation involves a concurrent conflict of interest*. A concurrent conflict of interest exists if:
>
> > (1) *the representation of one client will be directly adverse to another client*; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) *the representation does **not** involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal*; and
> >
> > (4) each affected client gives informed consent, confirmed in writing.

MODEL RULES OF PROF'L CONDUCT R. 1.7 (emphasis added).

26. Violations of professional rules prohibiting conflicts or adverse representations can be grounds for disqualification of an attorney. *See, e.g., Congoleum*, 426 F.3d at 688-691; *Miller*, 624 F.2d at 1201 (disqualification, while not automatic, ordinarily results from a violation of a disciplinary rule); *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957 (D. Del. 1992) (violation of Model Rule 1.7's prohibition on concurrent representation of adverse clients warrants disqualification). In fact, a court "may disqualify an attorney for failing

to avoid even the appearance of impropriety." *Apeldyn Corp. v. Samsung Elecs. Co.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009) (quotation omitted).

27. Thus, this Court recent disqualified a firm from representing a creditor where, in so acting, the firm had violated the rules of professional conduct in vis-à-vis another client. Specifically, in *In re Meridian Automotive Systems-Composite Operations, Inc.*, 340 B.R. 740 (Bankr. D. Del. 2006), the Court disqualified the firm of Milbank, Tweed Hadley & McCoy from acting as counsel to an Informal Committee of First Lien Creditors (the "FLC") based on its violation of Model Rule 1.9.[12] Prior to the bankruptcy, Milbank had been retained to analyze credit agreements for Stanfield Capital Partners, LLC, a secured lender holding first *and* second liens against the debtor. *Id.* at 743. After that representation terminated and the bankruptcy was filed, Milbank undertook representation of the FLC. *Id.* at 743-744. The Court found that the interests of the FLC were "materially adverse" to Stanfield, which wanted to protect its second lien position, and therefore disqualified Milbank from represented the FLC. *Id.* at 746.

**B.     Akin Gump Has Violated The Applicable Standard.**

28. Akin Gump cannot deny that it has undertaken a representation directly adverse to that of its existing clients, Oaktree and Angelo Gordon, and therefore has violated Model Rule 1.7's prohibition of representation implicating a conflict with an existing client.

29. In fact, it simply is not possible for an attorney to undertake adverse representations in the same proceeding, ***even if the clients purport to consent***. Rule 1.7 unequivocally prohibits an attorney from proceeding with the adverse representation where it "involve[s] the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." MODEL RULES OF PROF'L CONDUCT R. 1.7(b)(3). In other words, the Rule "prohibits representation of opposing parties in the same

---

[12] Model Rule 1.9 governs a lawyer's obligations to a former client and provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." MODEL RULES OF PROF'L CONDUCT R. 1.9.

-11-

litigation, regardless of the Clients' consent." ABA ANNOT. MODEL RULES OF PROF'L CONDUCT § 1.7[23] (6th ed. 2007). Simply put, "[t]his type of conflict is not waivable." *Id.* at p. 123.

30. In this case, Akin Gump acts as counsel to Oaktree and Angelo Gordon and renders services to them in connection with the Tribune reorganization proceeding, the *exact same proceeding* in which it now proposes to represent Aurelius and to assert claims adverse to Oaktree and Angelo Gordon on its behalf. This representation clearly and unequivocally violates Model Rule 1.7 and, even if Akin Gump had obtained informed consent in writing (which it assuredly did not), Akin Gump would still be precluded from proceeding with the adverse representation of Aurelius under all applicable rules of professional conduct and ethical obligations.

31. Moreover, even if Akin Gump's ongoing representation did not involve the "same litigation or other proceeding before a tribunal" within the meaning of Model Rule 1.7(b)(3), Akin Gump still violated Rule 1.7 because there was no informed consent or waiver by Oaktree or Angelo Gordon to Akin Gump's new representation of Aurelius. Informed consent means an agreement to "a proposed course of conduct after the lawyer has communicated adequate information about the material risks and reasonably available alternatives." MODEL RULES OF PROF'L CONDUCT R. 1.0(e). For purposes of Rule 1.7, informed consent requires that each client "be aware of the relevant circumstances and of the material and foreseeable ways that the conflict could have adverse effects on the interests of the client." ABA ANNOT. MODEL RULES OF PROF'L CONDUCT § 1.7[18] (6th ed. 2007).

32. The requirement that the consent be in writing "does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and disadvantages, if any, of the representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns." *Congoleum*, 426 F.3d at 691. The attorney must communicate sufficient information "to permit the client to appreciate the significance of the matter in question." *Kabi Pharmacia*, 803 F. Supp. at 963 (citations omitted). Further,

fulfillment of the requirement to "consult with and obtain consent" must occur "prior to" undertaking the adverse representation. *Id.* At the most basic level, there must be "truly informed consent." *Congoleum*, 426 F.3d at 691.

33. None of that happened here. There was no consultation with Oaktree or Angelo Gordon regarding "the risks and disadvantages, if any, of the representation burdened with a conflict of interest." Oaktree and Angelo Gordon were not informed that Aurelius would file a competing plan, that Aurelius would take positions at the FCC adverse to the positions that Akin Gump had staked out for Oaktree and Angelo Gordon, or that Akin Gump would conduct discovery for Aurelius against its own clients. There was no explanation of "reasonably available alternatives." There was no "reasonable opportunity to consider the risks and alternatives and to raise questions and concerns."

34. All that happened here were attempts by Akin Gump to persuade Oaktree and Angelo Gordon to waive the conflict. Liang Decl. ¶ 8; Baiera Decl. ¶ 9. Given Akin Gump's knowledge that Oaktree and Angelo Gordon were represented by independent bankruptcy counsel, those efforts were obviously calculated to evade a careful evaluation of the situation created by Akin Gump. Yet, notwithstanding Akin Gump's attempted persuasion, neither Oaktree nor Angelo Gordon agreed to provide a waiver. To the contrary, both Oaktree and Angelo Gordon informed Akin Gump that they did ***not*** consent to the representation. Liang Decl. ¶ 8 and 9; Baiera Decl. ¶ 9 and 11. The burden of showing consent is squarely on the attorney opposing disqualification, *Corn Derivatives*, 748 F.2d at 162, and Akin Gump cannot meet that burden here.

35. *Meridian* again is instructive in this regard. There, in the context of a representation adverse to a former client (rather than an existing client), the Court rejected Milbank's claim that Stanfield had consented to the conflict by sending an email, in response to Milbank's query, that it did not plan to use Milbank's services in the impending bankruptcy. 340 B.R. at 748. Termination of the attorney-client relationship "did not mean Milbank was free to advise other parties to the Credit Documents, who are directly adverse to Stanfield, on inter-

-13-

creditor issues." *Id.* at 748. Although Milbank informed Stanfield that the query was made because it had received calls for representation from other creditors, Stanfield's termination e-mail did *not* reflect "informed consent, confirmed in writing" to the adverse representation." *Id.* Like Milbank, Akin Gump simply cannot show Oaktree's or Angelo Gordon's informed consent to Akin Gump's representation of their avowed adversary in the same proceeding.

### C.  Disqualification Is the Only Remedy For Akin Gump's Ethical Violation.

36. As noted above, disqualification is an appropriate remedy for a violation of Model Rule 1.7. *See, e.g., IBM v. Levin*, 579 F. 2d 271, 275 (3d Cir. 1978) (disqualifying a firm under the predecessor to Rule 1.7 from continuing its representation of a plaintiff in a suit against IBM where, while the suit was pending, the firm performed legal services for IBM in other matters).[13] While disqualification for a violation of the Model Rules is not automatic, where, as here, the violation involves clients who are currently adverse, and involves related issues, disqualification is the only appropriate remedy. Indeed, absent disqualification, Akin Gump would continue to violate Rule 1.7 by representing a client adverse to Oaktree and Angelo Gordon in the same matter – there is no other possible remedy.

37. In contrast, in cases where courts have declined to disqualify a law firm for violation of Model Rule 1.7, it is because the representations occurred in unrelated matters, or involved other considerations not present here. For example, in *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d. 579, 584 (D. Del. 2001), the court declined to disqualify Elonex's counsel where it found a waiver by Apple after being fully informed, and where it further found that disqualification was not warranted because the concurrent representation was as local counsel to Apple "in an unrelated Massachusetts suit" and Elonex would be extremely prejudiced by disqualification of the counsel that had represented it for over five years in connection with the technology in issue and had "extensive familiarity with the factual and legal

---

[13] In *IBM*, the Third Circuit affirmed the disqualification even though the concurrent representations were in unrelated matters, as the firm had never fully disclosed and obtained informed consent to the concurrent adverse representation. *Id.* at 281

-14-

issues in this complex patent case." *Id.* Similarly, in *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369 (D. Del. 2009), the court declined to disqualify the law firm because, among other countervailing factors, "the instant suits are unrelated to the Lonza matter." *Id.* at 374.

38. The common thread in these cases is that the conflicting representations were "unrelated." Here, Akin Gump's representations not only are related, they occur in connection with the very same proceeding. The positions of Oaktree and Angelo Gordon are directly adverse to Akin Gump's purported new client. Under these circumstances, an order disqualifying Akin Gump from representing Aurelius in this matter is not only appropriate, it is ***the only way to enforce Akin Gump's professional obligations*** to decline concurrent, adverse representations.

39. Further, Aurelius will incur no prejudice from the disqualification. Aurelius just retained Akin Gump and Aurelius already has had three prior, primary counsel, who argued on its behalf as recently as several weeks ago. Akin clearly will be able to retain replacement counsel, or re-engage its prior counsel, should it so choose.

## IV. CONCLUSION

Akin Gump's representation of Aurelius in this matter directly violates Model Rule 1.7 because it involves a representation of one client that is "directly adverse to another client." No consent by Oaktree or Angelo Gordon was given to Akin Gump, nor could any consent eliminate the conflict because the representations arise in the same matter. The only way to enforce Akin Gump's ethical obligations under these circumstances is by disqualifying Akin Gump from its representation of Aurelius, and this Court is respectfully requested to enter an order disqualifying Akin Gump from representing Aurelius here.

| | |
|---|---|
| Dated: November 12, 2010 | HENNIGAN, BENNETT & DORMAN LLP |
| | Bruce Bennett<br>James O. Johnston<br>Joshua D. Morse<br>865 South Figueroa Street, Suite 2900<br>Los Angeles, California 90017<br>Telephone: (213) 694-1200<br>Telecopier: (213) 694-1234 |
| | - and - |
| | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | /s/ Robert S. Brady<br>Robert S. Brady (No. 2847)<br>M. Blake Cleary (No. 3614)<br>The Brandywine Building – 17th Floor<br>1000 West Street, Post Office Box 391<br>Wilmington, Delaware 19899 0391<br>Telephone: (302) 571-6600<br>Telecopier: (302) 571-1253 |
| | *Counsel to the Credit Agreement Lenders* |