IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF DELAWARE


                                        )
IN RE:                                  ) Chapter 11
                                        )
TRIBUNE COMPANY, et al.,                ) Case No. 08-13141 (KJC)
                                        )
                                        ) Courtroom 5
                                        ) 824 Market Street
_____Debtors._____ )        Wilmington, Delaware


                                 November 10, 2010
                                 10:05 a.m.


                        TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE KEVIN J. CAREY
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin LLP
                                BY: JONATHAN LOTSOFF, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                BY: JAMES BENDERNAGEL, JR., ESQ.
                                BY: BRIAN J. GOLD, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (213) 896-6022


                                Cole, Schotz, Meisel, Forman &
                                Leonard, PA
                                BY:  KATE STICKLES, ESQ.
                                1000 North West Street
                                Suite 1200
                                Wilmington, DE 19801
                                (302) 652-3131


ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording; transcript
produced by transcription service

APPEARANCES:
(Continued)

```
For Tribune:                Mercer
Debtors:                    BY:  JOHN DEMPSEY
                            155 North Wacker Drive
                            15th Floor
                            Chicago, IL 60606
                            (312) 917-9900

                            Tribune Company
                            BY:  NILS LARSEN
                            BY:  EDDY HARTENSTEIN


For The Creditors Committee: Landis Rath & Cobb
                            BY:  ADAM G. LANDIS, ESQ.
                            BY:  KIMBERLY BROWN, ESQ.
                            919 Market Street Suite 1800
                            P.O. Box 2087
                            Wilmington, DE 19899
                            (302) 467-4400

                            Chadbourne & Parke LLP
                            BY:  DOUGLAS DEUTSCH, ESQ.
                            BY:  DAVID LEMAY, ESQ.
                            BY:  THOMAS MCCORMACK, ESQ.
                            30 Rockefeller Plaza
                            New York, NY 10112
                            (212) 408-5100

                            Zuckerman Spaeder LLP
                            BY:  JAMES SOTTILE, ESQ.
                            1800 M Street
                            Suite 1000
                            Washington, DC 20036-5807
                            (202) 778-1800

For Great Banc:             Womble Carlyle
                            BY:  THOMAS M. HORAN, ESQ.
                            222 Delaware Avenue
                            Wilmington, DE 19801
                            (302) 252-4320

For Merrill Lynch:          Potter Anderson & Corroon LLP
                            BY: LAURIE SELBER SILVERSTEIN
                            Hercules Plaza
                            1313 North Market Street
                            6th Floor
                            Wilmington, DE 19801
                            (302) 984-6000

APPEARANCES:
```

(Continued)

| | |
|---|---|
| For Aurelius Capital Management: | Akin Gump Strauss Hauer & Feld<br>BY:   DANIEL H. GOLDEN, ESQ.<br>BY:   DAVID M. ZENSKY, ESQ.<br>One Bryant Park<br>New York, NY 10036<br>(212) 872-1000 |
| For U.S. Trustee: | Office of the U.S. Trustee<br>BY:   DAVID KLAUDER, ESQ.<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801<br>(302) 573-6491 |
| For Credit Agreement Lenders: | Young Conaway Stargatt & Taylor<br>BY:   BLAKE CLEARY, ESQ.<br>The Brandywine Building<br>1000 West Street 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19801<br>(302) 571-6600 |
| For Wells Fargo As Bridge Agent: | Fox Rothschild LLP<br>BY:   JEFFREY M. SCHLERF, ESQ.<br>Citizens Bank Center<br>919 North Market Street<br>Suite 1300<br>P.O. Box 2323<br>Wilmington, DE 19899-2323<br>(302) 654-7444<br><br>White & Case LLP<br>BY:   ANDREW W. HAMMOND, ESQ.<br>1155 Avenue of the Americas<br>New York, NY 10036-2787<br>(212) 819-8200 |
| For Step One Lenders: | Morris Nichols Arsht & Tunnell<br>BY:   DEREK C. ABBOTT, ESQ.<br>1201 North Market Street<br>18th Floor<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200 |

TELEPHONIC APPEARANCES:

```
For Debtor:                    Tribune Company
                               BY:  CHANDLER BIGELOW
                               BY:  DAVID ELDERSVEID
                               BY:  DON LIEBENTRITT
                               BY:  MICHAEL D. O'NEAL
                               (312) 853-7778

                               Sidley Austin
                               BY:  JILLIAN LUDWIG, ESQ.
                               BY:  GARY WEITMAN, ESQ.
                               BY:  BRIAN KRAKAUER, ESQ.
                               BY:  CANDACE KLINE, ESQ.
                               BY:  KERIANN MILLS, ESQ.
                               BY:  DAVID MILES, ESQ.
                               (312) 853-7030

For Bank of America:           O'Melveny & Myers
                               BY:  DANIEL SHAMAH, ESQ.
                               (212) 326-2000

For Wilmington Trust           Brown Rudnick LLP
Company:                       BY:  JARED ELLIAS, ESQ.
                               BY:  MARTIN SIEGEL, ESQ.
                               BY:  GORDON NOVOD, ESQ.
                               (212) 209-4811

For Anna Kalenchits:           BY:  ANNA KALENCHITS
                               (212) 723-1808

For The Creditors Committee:   Chadbourne & Parke LLP
                               BY:  HOWARD SEIFE, ESQ.
                               BY:  MARC ROITMAN, ESQ.
                               (212) 408-5169

For Citigroup:                 Paul Weiss Rifkind Wharton &
                               Garrison LLP
                               BY:  ANDREW LEVY, ESQ.
                               BY:  ANDREW GORDON, ESQ.
                               BY:  OKSANA LASHKO, ESQ.
                               BY:  ELIZABETH MCCOLM, ESQ.
                               (212) 373-3543

For JPMorgan Chase Bank:       BY:  KEVIN C. KELLEY
                               BY:  SHACHAR MINKOVE
                               (212) 648-0427

                               Davis Polk & Wardwell LLP
                               BY:  DONALD S. BERNSTEIN, ESQ.
                               (212) 450-4092
```

TELEPHONIC APPEARANCES:
(Continued)

For Morgan Stanley:              Weil Gotshal & Manges LLP
                                 BY:  EVAN LEDERMAN, ESQ.
                                 (212) 310-8948

For Barclays:                    Mayer Brown LLP
                                 BY:  MICHAEL L. SIMES, ESQ.
                                 BY:  AMIT K. TREHAN, ESQ.
                                 BY:  JEAN-MARIE ATAMIAN, ESQ.
                                 (212) 506-2607

For Kramer Levin:                BY:  DAVID E. BLABEY, JR., ESQ.
                                 (212) 715-9100

For David & Kempner:             DK Partners
                                 BY:  EPHRAIM DIAMOND
                                 (646) 282-5841

For Aurelius Capital             Akin Gump Strauss Hauer & Feld
Management:                      BY:  JASON GOLDSMITH, ESQ.
                                 BY:  PHILLIP DUBLIN, ESQ.
                                 (212) 872-1000

For Jefferies & Company:         BY:  JUSTIN BRASS
                                 (203) 708-5847

For Perry Capital:               BY:  JAMES FREEMAN
                                 (212) 583-4000

For Schulte Roth & Zabel:        BY:  KAREN S. PARK
                                 (212) 756-2036

For Dennis A. Prieto:            Aurelius Capital Management
                                 BY:  MATTHEW A. ZLOTO
                                 (646) 445-6516

For Law Debenture Trust          Kasowitz Benson Torres &
Company of New York:            Friedman
                                 BY:  MATTHEW STEIN, ESQ.
                                 (212) 506-1726

For Miller Tabak Roberts         BY:  ANDREW M. THAU
Securities:                     (212) 692-5178

For Alvarez & Marsal Inc.:       BY:  BRIAN WHITTMAN
                                 (312) 601-4227

TELEPHONIC APPEARANCES:
(Continued)

For Dow Jones News Wires:          Dow Jones & Company
                                   BY:  PEG BRICKLEY
                                   (215) 462-0953

For Credit Agreement               Hennigan Bennett & Dorman LLP
Lenders:                           BY:  JAMES O. JOHNSTON, ESQ.
                                   (213) 694-1030

For Neil S. Losquadro:             Brigade Capital Management
                                   BY:  NEIL S. LOSQUADRO, PRO SE
                                   (212) 745-9758

For Merrill Lynch:                 Kaye Scholer LLP
                                   BY:  MADLYN G. PRIMOFF, ESQ.
                                   (212) 836-7042

For Deutsche Bank National         MCCARTER & ENGLISH
Trust Company:                     BY:  DAVID J. ADLER, ESQ.
                                   (212) 609-6800

For George Dougherty:              BY:  GEORGE DOUGHERTY
                                   (312) 704-7700

Special Committee of the           Jones Day
Board of Directors:                BY:  BRAD ERENS, ESQ.
                                   BY:  DAVID HALL, ESQ.
                                   BY:  DAVID HEIMAN, ESQ.
                                   (312) 269-4050

For Wells Fargo Bank:              White & Case LLP
                                   BY:  SCOTT GREISSMAN, ESQ.
                                   (212) 819-8567

For Royal Bank of Scotland:        BY:  COURTNEY ROGERS
                                   (203) 897-4815

For EGI-TRB, LLC:                  Jenner & Block LLP
                                   BY:  ANDREW VAIL, ESQ.
                                   (312) 840-8688

1                              INDEX

2                                                          Further

3    WITNESSES FOR THE        Direct  Cross  Redirect  Recross  Redirect

4      DEBTORS:

5    Eddy Hartenstein           23

6

7      EXHIBITS:                                    Marked  Received

8      DEBTORS:

9    Exhibit 1                                              31

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   WILMINGTON, DELAWARE, WEDNESDAY, NOVEMBER 10, 2010, 10:05 A.M.

2         THE CLERK:  All rise.  Be seated, please.

3         THE COURT:  Good morning, everyone.

4         THE ATTORNEYS:  Good morning, Your Honor.

5         THE COURT:  Is the debtor ready?  Well, don't

6   everybody run up at once.

7       (Laughter)

8         MR. LOTSOFF:  Good morning, Your Honor.  Jonathan

9   Lotsoff on behalf of the debtors.  I believe the first item on

10  the agenda is the motion to seal the unredacted copies of the

11  May and July 2010 Mercer report.  The redacted copies, of

12  which, were filed in support of the 2010 MIP motion.  We

13  understand that there are no objections to that motion by the

14  U.S. Trustee, the bridge agent or the committee of unsecured

15  creditors.  And so, consistent with what was done at the 2008

16  and 2009 MIP hearings, we would ask that the Court enter that

17  order.

18        THE COURT:  Does anyone wish to be heard in

19  connection with that matter?

20        I hear no response.  Do you have a form of order for

21  me?

22        MR. LOTSOFF:  I do, Your Honor.

23        THE COURT:  That order's been signed.  Should we

24  deal next with the tolling agreement?

25        MR. LOTSOFF:  There was one more related --

1              THE COURT:  I'm sorry.  Go ahead.

2              MR. LOTSOFF:  Oh.  At the last hearing, as the Court

3    is aware, there are likely to be some exhibits that encompass

4    information that's comparable to what is in the redacted

5    versions of the Mercer reports, so we would ask that consistent

6    with the Court's treatment of those exhibits, which we can

7    identify in the course of the hearing at the '09 MIP hearing

8    that such exhibits also be filed under seal and maintained

9    confidential consistent with what was done last time.

10             THE COURT:  Anyone wish to weigh in on that subject?

11             I hear no response.  Okay.

12             MR. LOTSOFF:  Thank you, Your Honor.

13             MR. LANTRY:  Good morning, Your Honor.  Kevin Lantry

14   on behalf of the debtors regarding the motion for the tolling

15   agreement involving the inter-company parties.  We don't

16   believe anyone has objected, but I sense Your Honor may want to

17   address something?

18             THE COURT:  I do.  The agreement and the form of

19   order -- well, the agreement is designed to put in place a

20   tolling agreement between and among the debtor and its

21   subsidiaries to preserve statutes of limitation to the extent

22   they apply and without waiving any rights or safe harbors there

23   may be under other applicable law for the purpose of avoidance

24   actions and actions which may concern inter-company claims; is

25   that --

1          MR. LANTRY:  That's correct, Your Honor.

2          THE COURT:  Okay.  The agreement and order have a

3  provision that says it's not only binding on those who are

4  parties to the agreement, but every other party-in-interest.

5  And so my question is, since we're -- you're asking the Court

6  to approve an agreement between and among various parties, how

7  is it that other parties-in-interest could be bound by this?

8          MR. LANTRY:  Your Honor, I will admit that I read

9  that on the flight out yesterday and I said, that's

10  interesting.  I think the concept would be that all parties in

11  these proceedings get the benefit of this tolling agreement.

12  In other words, what this is all about is there's some value

13  shifts that may occur between, you know, the various legal

14  entities and that may benefit various different parties and

15  we're just wanting to have status quo.  So it's probably less

16  that it's binding on all parties-in-interest, so much as it's

17  for the benefit for all of the parties-in-interest in order to

18  preserve this status quo, but I am not sure that that provision

19  is critical to what we're doing here.

20          THE COURT:  Yeah, I mean I -- I don't -- I mean, I

21  guess simply stated I don't think you can bind other parties in

22  this way.  And the second part of that is, it doesn't seem

23  that, given the subject of the agreement, that you need to do

24  that.  So I would be willing to approve it, but without that

25  provision in it.

1          MR. LANTRY:  That's fine, Your Honor.

2          THE COURT:  Okay.

3          MR. LANTRY:  And should we resubmit or will you just

4    interlineate as you sign it?

5          THE COURT:  If someone would like to interlineate it

6    for me, I would --

7          MR. LANTRY:  We will do that and then submit, Your

8    Honor.

9          THE COURT:  -- sign that copy today.

10          MR. LANTRY:  Thank you.

11          THE COURT:  All right.  Now, we're on to the

12    debtors' motion for approval of a 2010 MIP, correct?

13          MR. GOLD:  That's right, Your Honor.  Brian Gold on

14    behalf of the debtors.

15          THE COURT:  Okay.  Now since the pleadings, with one

16    exception -- well, a couple exceptions, are somewhat aged in

17    this case, I thought I would start by asking those who filed

18    objections and I'll -- but I'll begin with the debtor -- what,

19    if anything, has transpired other than the claw back agreement,

20    since the filing of the papers?

21          MR. GOLD:  Well --

22          THE COURT:  Any -- have there been any narrowing of

23    the issues or no --

24          MR. GOLD:  I'll speak to it best I can, Your Honor.

25          THE COURT:  Okay.

1          MR. GOLD:  And then obviously let any of the

2    objectors add to or correct me if I'm wrong.

3          I think it's fair to say that the U.S. Trustee and

4    the Official Committee of Unsecured Creditors are aligned, if

5    you will, in their objection, and as I understand their

6    objection, it relates solely to the payment of the MIP with

7    respect to five individuals who in the -- as indicated in the

8    very recent filing by the official committee, indicates that

9    those individuals are implicated in some way by the examiner

10   and in the the complaint that the UCC itself has filed.

11         I -- beyond that, I know the bridge has filed an

12   objection.  It, as you point out, is a little bit dated.  I

13   don't know whether that objection still stands, but on its face

14   it related to a bankruptcy court argument, if you will, 1129 as

15   I recall, related to whether these payments -- these MIP

16   payments should be made at all.

17         Those are the only objections, I think, I'm aware

18   of, Your Honor, and that's my understanding of the current

19   status with respect to them.

20         THE COURT:  Okay.  Well, let me hear from others

21   preliminarily, including the U.S. Trustee, committee and bridge

22   lenders.

23         MR. HAMMOND:  Good morning, Your Honor.  Andrew

24   Hammond from White and Case on behalf of the bridge agent.

25   Your Honor, our objection is simply that we believe that the

1   MIP motion should be continued, to be considered at

2   confirmation.  And that to the extent that it's not, that we be

3   permitted to reserve any rights or objections that we have with

4   respect to payments made under the MIP in connection with

5   confirmation.

6           THE COURT:  Well, as I take it, your objection is in

7   large part an absolute priority objection.  And it seems to me

8   that since, at least in this capacity, none of those who are

9   expected to be -- or who are included in the program are pre-

10  petition creditors, at least in the -- I don't know whether

11  they're employee claims or not, but let's assume they're not

12  pre-petition creditors for this purpose.  Is it really an

13  absolute priority argument?

14          MR. HAMMOND:  It may be, Your Honor.  We haven't

15  conducted any discovery on plan discovery yet.  So I couldn't

16  tell you whether they're pre-petition creditors or not at this

17  point in time.

18          THE COURT:  But they're not being paid on pre-

19  petition debt?

20          MR. HAMMOND:  Possibly, Your Honor.  Again, we

21  haven't conducted any discovery on that.

22          THE COURT:  Well, that's not what the proposed

23  request for relief provides anyway.  Okay.  Thank you.

24          MR. HAMMOND:  Thank you, Your Honor.

25          MR. LEMAY:  Your Honor, good morning.  My name is

1    David LeMay from Chadbourne and Parke in New York City for the

2    Official Committee of Unsecured Creditors.  I guess we are here

3    now in the third annual MIP ritual and the committee's views on

4    the MIP as a whole remain very much as stated in the two prior

5    enactments of this ritual.  The MIP is a valuable tool, the

6    committee has done a very significant review of it, and as I

7    have in years past, I would assure Your Honor that in this --

8    again this year, the committee has taken great pains to get

9    itself satisfied that the MIP creates the right incentives for

10   the right people and that this is designed to maximize creditor

11   value rather than minimize it.

12          As counsel identified, however, we do have a limited

13   bone to pick and that limited bone resulted in a limited

14   objection.  We have been in conversations with the debtors for

15   quite some time, really since shortly after the release of the

16   examiner's report, about the interplay between the MIP and the

17   individuals who for good or for ill are identified by the

18   examiner as persons of interest.  And the examiner says a

19   number of things about those people and we're not here today to

20   talk about whether the examiner is right or wrong, but there is

21   an examiner, he has made findings, some of them are relatively

22   serious and all of them in each case of these five individuals

23   could lead to liability.

24          So we have discussed with the debtors and we do not,

25   unfortunately, have a resolution of this.  The proposition that

1    these five individuals, in effect, should not be paid their MIP

2    payments for 2010 at this point and the reason for that is just

3    blatantly obvious.  It just seems to us not to be a thoughtful

4    business judgment exercise to pay money out regardless of the

5    performance of the individuals right now this year.  It does

6    not make sense to pay that money out to the individuals who are

7    already named defendants in complaints that have been filed by

8    the committee.  Generally speaking in bankruptcy, it's simply

9    heard of to let money go out the door to someone who you later

10   might have to chase back for it.

11        It's an unfortunate situation and I don't address

12   the Court on this topic with any glee or relish, but I think

13   that's just incredibly important, as a record matter and as a

14   fiduciary vigilance matter, that the committee make its voice

15   heard here.  We like the MIP, we think it creates the right

16   incentives.  If these five individuals are in later proceedings

17   proved to have been completely without fault and to have done

18   the right thing, then I think the committee would have no issue

19   with them getting their MIP payments at that point.

20        But to let them be paid now when we are in the midst

21   of a lawsuit, albeit a lawsuit that's been stayed, we're in the

22   midst of a lawsuit seeking to recover money against them, to us

23   does not square with the kind of business judgment and enhanced

24   scrutiny of insider transactions that the MIP requires.  So

25   that's our bone to pick in a nutshell, Your Honor.  I can

1    answer any questions you have.

2          THE COURT:  None at the moment.  Thank you.

3          MR. LEMAY:  Thank you, Your Honor.

4          MR. KLAUDER:  Good morning, Your Honor.  David

5    Klauder for the United States Trustee.  In kind of following u

6    on Mr. LeMay's comment about the ritual of the MIP, this being

7    the third one, actually from our office's perspective, we're

8    sort of changing our ritual, where Your Honor knows we

9    adamantly objected to the '08 and '09 MIPs as a global -- on a

10   global basis, we've focused our shift -- we focused the

11   objection here and as debtors' counsel mentioned, we are in

12   line now with the committee and their limited objection.

13         Your Honor, just as way of background, I was going

14   to get into more of this on my closing argument, but post the

15   examiner's report we've had substantial discussions with the

16   debtors with regard to our objection to the 2010 MIP and during

17   those discussions is when our focus changed from a global plan

18   perspective -- focus of our objection changed from a global

19   plan objection to an individual payment based objection and we

20   were discussing various individuals over the last few months.

21         Now that the committee has weighed in and we think

22   is a sensible and reasoned objection, we fully support that

23   objection and we believe that those individuals should be taken

24   out of the 2010 MIP and we will argue as such as we get forward

25   with this hearing.

1         THE COURT:  And is that the only remaining objection

2    that the U.S. Trustee has?

3         MR. KLAUDER:  It is.

4         THE COURT:  Let me ask this.  As I understand the

5    MIP for 2010, there are three categories of employees intended

6    to be covered.  There are approximately 640 who would be

7    covered by the plan.  They fall into three categories, as I

8    understand it.  Top management, which is -- includes nine

9    individuals, other key executives and then other participants.

10   I'm unable to tell from the review of the submissions, except

11   for top management, how many fall into each category.  The

12   compensation consultant did a survey of some, but not all, so I

13   don't -- if there are total numbers mentioned somewhere in each

14   category, again except for top management, I haven't been able

15   to glean that, but let me ask the U.S. Trustee.  How many

16   insiders, if the U.S. Trustee has a view, are included in the

17   other key executive's category?

18        MR. KLAUDER:  That would be the -- I don't have the

19   list in front of me, so I'm not sure I can -- is that the group

20   -- that's not the --

21        THE COURT:  It's the middle group.

22        MR. KLAUDER:  The middle group?

23        MR. GOLD:  Your Honor, there -- in terms of how

24   Mercer broke it down it to the benchmarking, nine, as you

25   suggested, in the top group.  I believe there are 26, which I

1  think is on Page 10, if I'm not mistaken, on the Mercer report,

2  in the so called middle group, and then whatever the difference

3  is, about 605 or so would be everyone else.

4           THE COURT:  Okay.  So they did survey then all the

5  26 what they called key incumbents in that category.  So in

6  that category, Mr. Klauder, does the U.S. Trustee have a

7  position about how many are insiders?

8           MR. KLAUDER:  We do not.

9           THE COURT:  Does anyone else like to be heard

10 preliminarily?  I hear no further response.

11          This round is very different, in terms of what the

12 parties have presented to me.  In the original objections, both

13 the bridge agent and the U.S. Trustee had said this is a matter

14 which should be put off to confirmation.  The U.S. Trustee has

15 backed away from that position; the bridge agent has not.

16          Frankly, based on earlier rounds, I had that thought

17 myself, but we have a circumstance here, which given what I've

18 learned from prior hearings, given the continuing disputes

19 among various constituents, which are now represented in the

20 competing plans, and the atmosphere that must have created, and

21 I figure continues at the debtor in part as a result of that

22 anyway, I sympathize with the debtors' request for the Court t

23 act at this time.

24          On the other hand, there still is no plan and five

25 individuals among the top management group have been named as

1   defendants in the long-awaited committee complaint.  And then I

2   look at that middle group -- and I haven't asked the debtor the

3   same question I asked the U.S. Trustee and that is, how many

4   insiders are there within the meaning of the bankruptcy code

5   anyway.  I take it that group is largely station managers,

6   newspaper heads, with one or two exceptions maybe; is that

7   accurate?

8            MR. GOLD:  Yes, I think that's right, Your Honor.

9   They all, frankly, hold some officer, director position at some

10  level.

11           THE COURT:  But in the other key execs group would

12  you say there are individuals among them who drive the

13  reorganization process directly or not?

14           MR. GOLD:  There certainly may be some.  I don't --

15  not predominately, but certainly there are some, Your Honor.

16           THE COURT:  Okay.

17           MR. GOLD:  And as I look at the list, you know,

18  it's, I guess, a matter of perspective.  I'm looking at the

19  list, Your Honor, and it -- you know, the lion's share of

20  anyone's duties would not, from what I can tell.

21           THE COURT:  And that was my general impression, but

22  I couldn't just from a review of the documents reach a

23  conclusion as to every individual included in that group.  I

24  will tell you I was initially inclined to put this off until

25  the time of confirmation, but I will say given the narrowing of

1    the objections, I'm now inclined to move forward to let the

2    debtor make its record and then decide what to do and decide

3    when to decide what I will do.  So -- somebody stole our clock.

4    I'll take a five minute break, then we'll begin with the

5    evidence.

6              MR. GOLD:  Thank you, Judge.

7              THE COURT:  All right.

8         (Recess taken at 10:26 a.m. to 10:43 a.m.)

9              THE CLERK:  All rise.  Be seated, please.

10             MR. GOLD:  Your Honor, Brian Gold again on behalf of

11   the debtors.  During the intervening recess, the debtors had a

12   chance to confer with the Official Committee of Unsecured

13   Creditors.  I think it's fair to say that the debtors and, I

14   think you can hear from the official committee itself on the

15   subject, just feel that while the five people who are subject

16   of the objections are important in their own right, that the

17   635 people who are before you are extraordinarily important for

18   some significant business reasons that the MIP get approved and

19   it get approved, frankly, here we are on the 11th month of the

20   year with some immediacy, some certainty in terms of running

21   the business.

22             With that, Your Honor, we would intend to proceed

23   without making our case, if you will, at this time for the

24   payment with respect to the five individuals who have been

25   subject of the objections that you just heard of.  We would

1  hope -- we're happy to proceed with whatever evidence Your

2  Honor would like us to proceed with and we're prepared to do so

3  with respect to the 635.  I guess we would hope that together

4  with the official committee and for the business reasons I

5  alluded to that, Your Honor, would take that with some force,

6  if you will, in terms of the consideration for a ruling both

7  positively and a ruling with some immediacy.

8            I throw that your way, Your Honor, with all due

9  respect and am ready to proceed, you know, however you would

10  like to directly do so.

11            THE COURT:  Let me try to figure out what you just

12  said to me.

13            MR. GOLD:  Sure.  A lot of people have that problem,

14  Judge.

15       (Laughter)

16            THE COURT:  Are you withdrawing request that the

17  five individuals who have been named as defendants be included

18  in the MIP program that's been proposed?

19            MR. GOLD:  Yes, without prejudice for their

20  consideration for payment at a later date, Your Honor,

21  presumably as part of the plan of reorganization or, you know,

22  after we regroup, frankly decide how we would like to proceed

23  in that regard.

24            THE COURT:  Okay.  I think that's a wise decision.

25  For the benefit of the corporate officers involved, I would

1  have sustained those objections anyway for the reasons which

2  Mr. LeMay say are obvious, but having said that, they're only

3  allegations in a complaint so far and --

4           MR. GOLD:  And the examiner -- just for the record,

5  Your Honor, the examiner took great pains to point that out.

6           THE COURT:  Yeah.

7           MR. GOLD:  And took great pains to point out that

8  there really were no findings with respect to -- of wrongdoing

9  with respect to specific individuals and I -- for the sake of

10  those five, I really feel compelled to state that on the record

11  today.

12           THE COURT:  Understood.  And, you know, the Court

13  forms know view about the merits of any such claims, but I

14  think it's wise that the debtor came to that decision.

15           Okay.  Now, further plumbing the depths of your

16  earlier statement, is it your intention to make proffers, put

17  live testimony on?  I think a record needs to be made in light

18  of the bridge agent's objection.

19           MR. GOLD:  Yeah, and -- yes, I agree with that, Your

20  Honor.  Our intention would be to put both on; live testimony

21  through one initial witness and presumably a proffer would

22  suffice with respect to Mr. Dempsey of Mercer's testimony.

23           THE COURT:  All right.  Let's proceed.

24           MR. GOLD:  Okay.  Thank you, Your Honor.  At this

25  time I'd like to call Eddy Hartenstein to the stand.

1          THE CLERK:  Please remain standing.  Raise your

2   right hand and place your left hand on the Bible.

3          EDDY HARTENSTEIN, DEBTORS' WITNESS, SWORN

4          THE CLERK:  Please be seated.

5          MR. GOLD:  And, Your Honor, I think we may end up

6   only using one exhibit, but we do have exhibit binders if I --

7   with your indulgence, we might as well distribute them now and

8   without breaking the flow?

9          THE COURT:  One moment.

10          THE CLERK:  Please state your full name for the

11   record, spelling your last.

12          MR. GOLD:  I'm sorry.

13          THE WITNESS:  It's Eddy Hartenstein, that's Eddy

14   with a Y.  Hartenstein, H-A-R-T-E-N-S-T-E-I-N.

15          THE CLERK:  Thank you.

16          THE COURT:  Now we can distribute binders, if you'd

17   like.

18          MR. GOLD:  Thank you, Your Honor.

19                    DIRECT EXAMINATION

20   BY MR. GOLD:

21   Q    Mr. Hartenstein -- Hartenstein, excuse me.

22   A    Yes, thank you.

23   Q    Where do you work?

24   A    I work for the Tribune Company.  I am one of the co-

25   presidents -- co-CEOs of all of Tribune Company and I'm also

1  the publisher and CEO of the Los Angeles Times.

2  Q     And with respect to the first position you mentioned, the

3  co-president/CEO, is that a new position for you?

4  A     That is a new position, barely two weeks.  New

5  assignment.

6  Q     And what are your duties in that particular aspect of

7  your position?

8  A     With my other three colleagues, essentially run the day-

9  to-day operations as a CEO would of Tribune Company.

10  Q     And I take it the other position, publisher of the LA

11  Times is a position you held not only recently, but before the

12  last couple weeks?

13  A     Yes, it is.

14  Q     And is that the position you held since you joined the

15  company?

16  A     Yes.

17  Q     And when did you join?

18  A     I joined in August of 2008.

19  Q     And can you maybe just give the Court a little background

20  about yourself.  You've been with the Trib, I guess, for two

21  plus years.  What is your educational background?

22  A     I have undergraduate degrees -- bachelor's degrees in

23  mathematics and aerospace engineering and a graduate degree

24  from Cal Tech in applied physics.

25  Q     You mentioned that you joined in '08, what -- can you

1    just kind of give the Court a brief rundown of your employment

2    history leading up to your hire by the Trib?

3    A    When I graduated in 1972 I began work for a company then

4    called Hughes Aircraft Company, which morphed into the largest

5    employer in the state of California and became Hughes

6    Electronics during the Cold War, and was instrumental and led

7    in 1990 the formation of a concept and a company within Hughes

8    Electronic today known as DirecTV.  We began the company from

9    basically zero subscribers to deliver direct broadcast

10   television multiple hundreds of channels into people's homes

11   across America.

12        I left as the chairman and CEO, which I was from the very

13   beginning within Hughes Electronics, in 2004 when News Corp.

14   bought what was then DirecTV the last remaining operating unit

15   of Hughes Electronics and took over its ownership.

16   Q    And how big was DirecTV at that point of that sale?

17   A    We had approximately twelve-and-a-half million

18   subscribers when I left.  It's gone on since to get to almost

19   18 million subscribers.  When I left we had created from

20   nothing a market valuation and enterprise value of almost $23

21   billion, which exceeded that of our parent company, General

22   Motors, you know, which was a bit embarrassing for the folks in

23   Detroit, but nevertheless, something I and our team there took

24   pride in.

25   Q    You mentioned the sale, did you stay on for some period

1  of time after the sale?

2  A     Yes, after the News Corp. transaction I stayed on as vice

3  chairman, reporting to the chairman of News Corp., Mr. Rupert

4  Murdoch, at that time for an additional year.

5  Q    And after that point in time, putting aside -- we'll get

6  to it, putting aside any corporate boards that you served on

7  and may continue to serve on, did you retire from full-time

8  employment, if you will?

9  A     Yes, I did.

10 Q    And I'm not going to ask you the question to juxtapose

11 your retirement days to what you're doing today, but we'll get

12 into some of those things in terms of your duties.

13      Let me ask you a question on corporate boards of

14 directors, though.  Did you and do you serve on corporate

15 boards of directors?

16 A     Yes, several public companies and a non-profit.  I am on

17 the board of directors of the City of Hope in California.  I am

18 also on the boards of SanDisk Corporation, Broadcom Corporation

19 and Sirius XM Satellite Radio.

20 Q    Can you -- just so it's on the record to make our record

21 here today, can you describe the nature generally of the

22 Tribune's business?

23 A     Tribune is a media company that has three basic branches;

24 broadcast television stations, of which there are 23 spread

25 across the country.  Publications, eight major newspaper

1    publications in large markets and small, largest being Los

2    Angeles and Chicago, with our flagship products the Los Angeles

3    Times, Chicago Tribune, six smaller markets, primarily on the

4    eastern seaboard.  And then a corporate function that holds

5    other media assets and provides infrastructure services to the

6    broadcast stations and the publishing group.

7    Q    From a organizational process then, the company organizes

8    its operations, as I understand it, from a publishing group,

9    and then a broadcast group and then this corporate group that

10   you mentioned?

11   A    That's correct.

12   Q    I take it, with respect to the year 2010 that we're in

13   now, Tribune had put in place an operating plan/operating

14   budget?

15   A    Yes, that's correct.

16   Q    Could you briefly describe to the Court how that

17   operating plan and budget was prepared?

18   A    Well, as with most companies, and someone earlier today

19   mentioned a ritual, it is the practice towards the beginning of

20   the fourth quarter of every year, from the bottoms up -- and I

21   mean that by every broadcast station, every publishing entity

22   -- to prepare a forecast and operating budget for the coming

23   year.  This year is no exception -- excuse me, in fourth

24   quarter of 2009 was no exception in making the 2010 forecast,

25   as then head of the Los Angeles Times, we did that for the Los

1  Angeles Times Media Group, as did the other seven publishing

2  entities and the 23 broadcast stations.

3  Q    And in that process where you have the ritual you

4  describe, is there a give and take between the businesses that,

5  you know, sort of have to perform, if you will, from a budget

6  standpoint and this corporate group you mentioned?

7  A    I think it's more than a give and take.  There's a

8  healthy tension that you would expect to go on between the

9  folks at corporate and the folks at the individual business

10  units, where assumptions are challenged, forecasts are vetted,

11  initiatives are discussed, where the main challenge has been

12  for most media companies in this last several years has been

13  what is the advertising forecast.

14       So there was a lot of that that went on.  There were a

15  lot of initiatives -- cost-cutting initiatives that were

16  discussed.  And from the corporate perspective there's always a

17  lot of pushback in terms of comparison to peer groups within

18  the industry outside of Tribune Company and within the other

19  business units that are within inside Tribune.  So yes, that

20  was a healthy and lively debate that went on not just for the

21  LA Times, but between all the business units.

22  Q    Is it fair to say that the corporate group, with respect

23  to the initiatives -- and we'll get to specific initiatives

24  letter, but with respect to initiatives is providing a certain

25  amount of push down to the businesses to be creative, to -- and

1  otherwise aggressive about trying to include initiatives in the

2  budgeting and the plan?

3  A    Absolutely.

4  Q    Well, here we are, as I mentioned earlier to the Court,

5  we're in the 11th month of 2010, so the budget was prepared

6  much earlier.  How is the company doing with respect to that

7  budget?

8  A    We're doing terrific and I would even push it to a more

9  expansive aggretive (sic).  I think by any means in a media

10 company in this environment, I think we're experiencing what I

11 would call stellar performance.

12 Q    And can you comment on the cash flow, in terms of cash

13 flow positive, with respect to the newspapers and broadcast

14 properties?

15 A    Yes, we have one key operating metric that's operating

16 cash flow, which is no more difficult than understanding the

17 difference in doing the arithmetic calculation of revenues

18 minus expenses.  We are exceeding our operating cash flow,

19 known as OCF, parameters.  We are exceeding with every

20 publishing unit the targets and with all but one of our

21 broadcast markets are we exceeding our plan, both on revenue

22 and on OCF.

23 Q    Let me ask you to take a look at Company -- or Debtor

24 Exhibit 1, which is --

25          MR. GOLD:  For reference, Your Honor, and others in

1  the courtroom, it's in the first tab of the binder that's been

2  distributed.

3  BY MR. GOLD:

4  Q     Take a look at that page of that and I'm going to ask you

5  a question and let me know when you get to it, Mr. Hartenstein.

6  A     Yes, I'm there.

7  Q     Okay.  Do you recognize this document?

8  A     Yes, I do.

9  Q     And what is it?

10  A     This is basically Tribune Company rolled up everything

11  you need to know on one sheet of paper.  It represents in the

12  first four columns going left to right, the first, second and

13  third quarters of actual performance, and the fourth quarter of

14  projected performance.  And in each of those quarters it shows

15  the 2010 actual versus the 2010 plan against a reference point

16  of the 2009 actual performance.  The fifth column on the far

17  right is then the full year; nine months of actual plus three

18  months of projected performance.

19        And as you go down the rows, starting on the top, you

20  have publishing, then broadcasting on the revenue front, so

21  that you can get the total revenues there.  They're broken into

22  the major categories of advertising, circulation and other.

23  And then in the next major array across from left to right, the

24  cash expenses for those respective business units.  And then

25  finally across the bottom array, left to right, quarter by

1    quarter, the OCF, the operating cash flow.

2        And if you look at the far right lower corner you will

3    see that against a plan of about $425 million of expected OCF,

4    we expect to close well in excess of 600 -- that's six hundred

5    and almost seventeen million dollars of OCF for the full year.

6    Q    So if my math is right, you have exceeded the budget as

7    to operating cash flow by close to $200 million based upon the

8    first three months -- first three quarters rather and the

9    projection for the last three months?

10   A    Yes and we're working hard for the fourth quarter.

11           MR. GOLD:  Your Honor, I'd like to move for the

12   admission of Debtors' Exhibit 1 and also a note that -- caveat

13   that this also, as noted by Mr. Lotsoff earlier, should be

14   confidential subject to the seal order.

15           THE COURT:  Is there any objection either to its

16   admission or being subject to the seal order?

17           I hear no response.  It's admitted without

18   objection.

19       (Debtors' Exhibit 1 received into evidence)

20           MR. GOLD:  Thank you.

21   BY MR. GOLD:

22   Q    In terms of this exhibit itself, in terms of the amount

23   by which you are exceeding, if you are exceeding your revenue

24   projection, are you exceeding projections with respect to

25   revenues?

1  A      Yes, we are.

2  Q      And how are you coming out on the expense side?

3  A      Expense side we are pretty much dead on what we thought

4  the expenses would be, what we laid out in the fourth quarter

5  of 2009 and have been executing on through the first now 11

6  months and two weeks of this year.

7  Q      Let me ask you, what accounts, with respect to the

8  revenue, for the stronger than budgeted, stronger than expected

9  performance?

10  A      I think most of it has to do with the various sales

11  initiatives that we put into place.  We made some concentrated

12  decisions to go with a new approach to sales.  It was a total

13  sales solution, as opposed to in the publishing business merely

14  having a rate card of here's a quarter page, here's a half

15  page, here's a full page kind of ad, to a mix of media that we

16  were hearing that our advertisers were looking for.  We're in a

17  very competitive environment, we have social media sites, we

18  have mobile advertising, we have online advertising, outdoor

19  advertising, the vital types of advertising campaigns and the

20  direct response television advertising to contend with, and we

21  realized that we needed to have more talented, more broadly

22  trained sales associates and we had to put them on compensation

23  plans that were highly skewed to the incentive side.  When I

24  came on board, and then gradually over the first year and fully

25  implemented for this year, we changed the comp plans for all of

1  our sellers, both on the broadcast television side and on the

2  publishing side, to be very results oriented.  They can't sit

3  still.  If they don't meet their numbers, they don't make their

4  mortgage payments, they can't live.  So we did a lot of

5  creative, out of the box types of training, incentivization, we

6  created new products, as well as just reorganizing our business

7  operations from top to bottom.

8  Q    Well, let me ask you about those new products in a

9  second, but with respect to, I think, what you said the sales

10 process, I think you called it solution selling; is that right?

11 A    There's a -- internally we call it selling the Tribune

12 way, which is a radically different way than publishing and

13 television has been sold in the past.

14 Q    I'd like you to give a Court -- the Court a sense, and

15 I'm going to ask you this when I get to the other initiatives

16 as well -- you've testified that you put these in place, you

17 testified what they are, that they've been successful.  I'd

18 like you to give the Court a sense of, if you will, the level

19 of effort, the kinds of effort and the type of effort that's

20 necessary from these 640 people who are -- you know, 100 and

21 some people are here before the Court today to ask for approval

22 of the MIP, you know, what was required in 2010 to make this a

23 success?

24 A    To get the kind of results that you see here, which I

25 characterize, my word, stellar, I think the efforts by the core

1  management team that we have represented across the 600 plus

2  was nothing short of herculean.  I come from a place -- I came

3  from a company where we created enormous value for our

4  shareholders out of nothing.  This was an industry in

5  transition, a company in both transition in that industry, and

6  in turmoil through the fact that we've been in bankruptcy since

7  December of 2008.  That we have -- I have never seen a group of

8  people, and I have personally never worked as hard in all my

9  years in business to make this happen.  I've asked people to do

10  extraordinary things and they've responded and other business

11  unit leaders in the company have as well.

12  Q    Let me ask you about some of the other initiatives that

13  go into that work you described.  In terms of the actual

14  revenue creation side, have you created new products, if you

15  will, or new sources of revenue that has been partially

16  responsible for this stellar performance?

17  A    Yes.

18  Q    And can you name one or more of those?

19  A    Oh, sure.  We are -- it starts with the fact that we are

20  no longer a -- in the publishing world we're no longer a one

21  instant in a 24 hour cycle kind of deadline.  We have converted

22  our newsgathering operations, our newsrooms and our reporting

23  out as a 24/7 operation.  We have consolidated a lot of the

24  functions to be more efficient, but from the top down, as we

25  look at the web based products that we had, we all have

1   websites, we made those better.  We are also pushing out new

2   mobile services so you can news and information wherever you

3   are and on whatever device that you have.  We have generated

4   iPhone apps, we are in the process of getting iPad apps.  We

5   are looking at other forms of devices to disseminate our news

6   and information.

7        We have also created, on the broadcast side, done things

8   to maximize our revenue there, where in most of our television

9   markets we have greatly expanded the amount of local news.  In

10  -- for example, in the Los Angeles market, our television

11  station there went from a mere, you know, two hour morning news

12  block to a four-and-a-half hour morning news block and expanded

13  by almost 50 percent the amount of local news, which --

14  Q    Does that increase revenue?

15  A    Absolutely, because the type of advertising dollars you

16  can get for a 30 -- meaning a 30 second spot or a 60 second

17  spot -- in a news show at either prime time in the morning or

18  in the evening where we also expanded far exceeds that that we

19  would have gotten in some of the other types of programming

20  that was on before we started.

21  Q    Have you also created any new events, if you will, in

22  terms of source of revenue?

23  A    Another great example, thank you, we have created at --

24  through our publishing entities, more theme driven events.  We

25  have book festivals, we have movie review festivals, we have

1  food and wine festivals.  In Los Angeles alone we created a

2  festival of books where we enhanced that this year so that we

3  had over 140,000 visitors over a weekend on one of the local

4  college campuses.  We created a travel and recreation show that

5  on a rainy Tuesday -- excuse me, on a rainy February weekend

6  drew close to 80,000 at the LA Convention Center out of brand

7  new -- newly created 8,000 attendees for a one day food and

8  wine festival.

9          Again, allowing our advertising clients to do more

10 than just by an ad, if you will, but to show up, be present,

11 allow participants to sample their wares and then tie that back

12 in through the presence that they can have in our various

13 publications, be that the local regional papers that we have

14 and our flagship product there, the Los Angeles Times.

15 Q    And again, and maybe it's obvious, but I take it there

16 was a fair amount of management effort to conceive of this and

17 then put it in place?

18 A    With almost no expansion of the ranks of management, we

19 created all of these new products, these events.  We went from

20 four events in 2008 to sixteen -- excuse me, sixteen events

21 this year so far in 2010.

22 Q    Likewise, have you devised opportunities to be, if you

23 will, the outsourced entity for other publishing entities?

24 A    Sure.  We do that both internally and externally.  For

25 example, we do all of the foreign newsgathering and national

1  newsgathering, including our Washington, D.C. office, through

2  Los Angeles, which in turn creates on multiple deadlines, news

3  stories, features and reporting that then, in Chicago, gets put

4  into modules for the smaller publications, the T-6

5  publications, those on the eastern seaboard I described, to

6  insert in their publications and on their websites in a way

7  that doesn't require them to staff up and try to do a foreign

8  report, a national report or even a regional report.

9       We benefit also the various websites for the television

10 stations for that and we then, in preparing those modules or

11 mods as we call them, are able to sell those -- or have begun

12 to start to attempt to sell those to other newsgathering

13 organizations, be they publishing or otherwise.  Tribune Media

14 Services is an entity, for example, that provides that for

15 various wire services frankly around the world for

16 newsgathering.  We're one of the only remaining news

17 organizations in the United States that has foreign

18 correspondents and national correspondents.  You can count on

19 fewer than the fingers on one hand of the number of news

20 organizations that still do that here in the US.

21 Q    Let me ask again, and not to be a broken record over

22 here, but you know, the one thing you described as part of your

23 answer was the additional consolidation that took place in Los

24 Angeles, on the international side and then the modules that

25 are now being created in Chicago.  From a management

1  standpoint, as you put that new initiative in place, again

2  could you describe to the Court, you know, what did management

3  have to do, what burden did management take on by not just

4  sitting still and putting into place a new initiative like

5  this?

6  A    Basically we had management overhaul just the very way

7  that they work day-to-day.  They had to work from the bottom

8  up, from reporters to editors, to videographers and

9  photographers, across Tribune to go to that 24/7 type of

10  format, to cover not only the news that we are expected to

11  cover by our readership and our advertising clients, but also

12  to go to cover the -- and provide for the new types of events

13  that we created.  A health and wellness event and feature had

14  experts from the industry talk about, both at the event and

15  then through our other reporting, you know, things of interest

16  -- subjects of interest that connect our readers to the target

17  audience of our advertising clients.

18        That's what we're all about.  That's how we have achieved

19  the kind of revenue performance that we show here on Exhibit 1.

20  Q    And not to belabor the point, but on the revenue side as

21  well, did you consolidate -- excuse me, did you bring in house

22  through other entities their printing and their distribution?

23  A    That's another great example.  We, in multiple of our

24  locations, now provide printing services for other

25  publications.  In Los Angeles, for example, we print and

1    distribute and deliver the Wall Street Journal for News Corp.

2    That's something that we hadn't done prior to 2009.  We do that

3    for a number of smaller publications as well, in various other

4    of our markets.

5         And we consolidated, which was a very difficult task to

6    achieve, but we consolidated from two printing plant operations

7    into one large printing plant operation, all of those

8    functions.  That's a task that affected every single facet of

9    our business in Los Angeles, that gave us a little bit of cost

10   reduction for 2010 so far, and for which we will see a huge

11   benefit going forward on a full year basis, almost $10 million

12   of cost reduction for 2011 and beyond.

13   Q    Well, let me ask you on that cost reduction front because

14   when we looked at Exhibit 1 earlier we noted that revenues had

15   gone up as it related to your budget, but that you had

16   basically met the budget with respect to costs, but now I hear

17   you talking about cost initiatives that result in savings.

18   From a real savings standpoint, you know, year over year how

19   much cost have you been able to take out of this business?

20   A    Tribune-wide we have taken out almost $700 million of

21   costs in the last two years across all operations.

22   Q    And a substantial portion of that -- was a substantial

23   portion of that in 2010?

24   A    Yes, it was.

25   Q    Can you -- let's talk, I guess, a little bit about the

1  MIP, just so it's in the record as well, the management

2  incentive plan.  First, can you talk about historically what

3  the components of compensation has been for the non-sales

4  management at the Tribune?

5  A    Prior to the bankruptcy, of course, it's very similar to

6  other companies I'm familiar with, and in business as general,

7  not just in the media business, but there are three legs to the

8  compensation stool, if you will.  There is base compensation,

9  there is bonus and then there is equity.  Equity is sometimes

10 given in terms of actual stock, RSU's or options.  Of course,

11 for us in the state of play that we're in, the equity leg of

12 that triad is basically zero, so we're left with just the two,

13 base and hopefully bonus.

14 Q    And with respect to the bonus, the management incentive

15 plan, we'll get into specifics later in the proffer for the

16 Court, but can you just give the Court a general sense of the

17 portion of compensation that the MIP comprises for the

18 individuals in management.

19 A    For the individuals in management in the pool it's

20 roughly a third to half -- as much as a half of their

21 compensation.

22 Q    You were -- you've been here present in the courtroom

23 this morning before you stepped up to testify, Mr. Hartenstein?

24 A    Yes.

25 Q    You, I think, heard some of the statements I made and I'm

1    sure some of the statements the Court made as well, so I want

2    to ask you this question.  What, in your view, would be the

3    impact on these initiatives, these efforts to transform the

4    business, if the MIP program wasn't approved now?

5    A     Boy, that is a -- that's one of the things that I just

6    don't want to -- I don't even contemplate what it would be like

7    without that.  Everybody has worked very hard, asked above and

8    beyond the call for virtually everybody in every aspect of what

9    we've been doing and it's one of those situations where I don't

10   want to know and I don't think any shareholder wants to find

11   out what would happen if we can't get that done.  We are

12   already operating, as I think you'll see from some of the other

13   material here, with folks in industry well below where I think

14   the median compensation should be and I will attest to -- down

15   to a person on that list that these -- this is a group that is

16   not median or mediocre in any way in their performance and

17   their capabilities.

18   Q     Do you feel like you've asked this workforce to do a lot

19   during this calendar year 2010?

20   A     Yes, I have and we all have.

21   Q     Do you plan to continue to do that?

22   A     Yes.  I think it's my job now, first as my role at the LA

23   Times, but now even more so as my role that has been given to

24   me, along with my other colleagues on the executive committee,

25   to continue to preserve and even enhance the value going

1    forward of Tribune Company and looking to make the right

2    decisions and position us in the right way for emergence.

3        Emergence, just going off the reservation here a little

4    bit, can't happen soon enough, as far as I'm concerned.  There

5    are so many opportunities out there, which we should be acting

6    on now, in terms of consolidation and other things that we

7    could be doing as the economy looks like it might be turning

8    around, we are making all the infrastructure adjustments, we

9    are making all the client and market adjustments to prepare

10   ourselves for that, now's not the time to take the foot off the

11   pedal and keep incentivizing these core -- this core group of

12   people here and exhorting them to continue to excel.

13   Q    With respect to that, keeping the foot on the gas

14   analogy, if the MIP isn't approved, if there remains

15   uncertainty as to whether the MIP will be approved, do you

16   think it will have any effect on the morale of the 600 and some

17   employees?

18   A    That would be absolutely devastating.  I can't emphasize

19   strongly enough from my general experience in business and from

20   my specific experience these two years and two months I've been

21   here at Tribune, how debilitating and devastating that would

22   be, to not come back and leave here today with an approval for

23   the MIP.  Every one of those folks on that list knows this is

24   happening today, knows that I am here today, and we need to

25   keep doing that to preserve the value, I think, for the benefit

1  of all the stakeholders that are looking here and that have

2  been darkening your doorway, Your Honor.

3          THE COURT:  Oh, I kind of look at it as the passage

4  of bright lights through the doors every day.

5      (Laughter)

6          THE WITNESS:  Well, hopefully you view us as a

7  bright light.

8  BY MR. GOLD:

9  Q    Well, let me just, I guess, close with one question and

10 do that -- I'll paraphrase, and I apologize, I won't do it as

11 eloquently as Mr. LeMay did with -- to Your Honor and you

12 quoted it in your last MIP ruling, but I think there was a

13 statement with respect to the 2009 MIP, you weren't here for

14 that at the time, Mr. Hartenstein, but that business people

15 understand the importance of an incentive plan and its

16 motivation to employees and that these business people,

17 frankly, don't want to find out what would happen if a MIP

18 wasn't implemented.  Do you share those sentiments?

19 A    I absolutely do.  I'm a business guy, have been that for

20 over 35, almost going on 40 years now.  I completely get that.

21 It's the right assessment.  I can't again emphasize A, how hard

22 a work these folks have done in very difficult and trying

23 circumstances.  I view this MIP as an investment in the human

24 capital of what is Tribune Company, the women and men that are

25 in management, leading all of the employees there.  And they

1  are believers, as am I, in that we will see a better day, and

2  that we are believers in doing the right thing here for the

3  company and to not only preserve, but enhance the underlying

4  asset value of what is Tribune Company today.

5  Q    Thank you, Mr. Hartenstein.

6        MR. GOLD:  I have no further questions at this time,

7  Your Honor.

8        THE COURT:  All right.  I want to take another five

9  minute break then we'll resume with cross-examination.  I don't

10 mean to give you that much usage out of that Mr. LeMay, but

11 good for you.

12       MR. LEMAY:  Thank you, Your Honor.

13       THE COURT:  Five minute recess.

14     (Recess taken at 11:24 a.m. to 11:32 a.m.)

15       THE CLERK:  All rise.

16       THE COURT:  All right.  Does anyone wish to

17 cross-examine Mr. Hartenstein?  Anyone?  I hear no response.

18       You may stay there, sir.  Thank you very much.

19       MR. GOLD:  Your Honor, at this time, I'll cede

20 the podium to Mr. Lotsoff, who will provide a proffer with

21 respect to the testimony of Mr. Dempsey of Mercer.

22       THE COURT:  All right.

23       MR. GOLD:  Thank you.

24       MR. LOTSOFF:  Good morning, Your Honor.  Jonathan

25 Lotsoff on behalf of the debtors.  We'd offer a proffer of

1   the testimony of John Dempsey, a principal with Mercer.

2   This court may recall that Mr. Dempsey testified in these

3   proceedings with respect to the 2008 and 2009 MIP programs.

4   And so, his background and experience I believe is already

5   in the record.  I will just summarize some salient points

6   here.

7           He's been with Mercer since 1985.  He's been a

8   principal or partner for the past 10 years.  Mercer is a

9   compensation consulting firm as the Court knows.  Mr.

10  Dempsey's principal practice area for his 20 years of

11  practice has been in the executive compensation consulting

12  field, including the development and analysis of incentive

13  plans.  And for almost 10 years, he's specialized in that

14  area of compensation consulting, specifically with respect

15  to restructurings in and out of Chapter 11.  He's worked

16  with numerous clients, testified as an expert witness in

17  numerous proceedings, including this one.  Other details,

18  again, are in the record.

19          He was retained by Tribune Company at the

20  direction of the compensation committee, and most recently

21  assisted Tribune in the design and analysis of the proposed

22  2010 MIP Program.

23          Mr. Dempsey would testify that, in his

24  experience, paying significantly below market compensation

25  can have a devastating effect on management incentives and

1   performance.  He would also testify that that's precisely

2   what would happen in terms of the level of compensation

3   being paid in this case if the 2010 MIP Program were not

4   approved.

5           Under those circumstances, as you've heard, the

6   640 -- 635 participants would receive only their base

7   salary.  Their total direct compensation relative to their

8   peers would be less than 50 percent of the market median.

9   So they would be less than half of the median relative to

10  the competitors that they're involved with day in and day

11  out.

12          With respect to the top management group, their

13  total direct compensation without this MIP program would be

14  28 percent of the median, so the bottom quartile.  And with

15  respect to the other key executives that the Court mentioned

16  earlier, they would be at 42 percent, again, less than 50

17  percent of the market median.

18          Mr. Dempsey, along with his colleagues at Mercer,

19  prepared a report, which the Court has at tab 3 of its

20  binder, basically describing and providing an analysis and

21  benchmarking of the 2010 MIP Program that was actually

22  proposed in May of this year.  A description of the

23  mechanics of the program is set forth at page 5.  I'll be

24  presenting a summary or offering -- proffering a summary

25  exhibit in due course.  So I won't go through the details

1  now, but Mercer's analysis concluded that that initial

2  program with the initial targets and benchmarks was well

3  within the range of market practice and, indeed, reasonable.

4         As this court is aware from the debtors' filing

5  in July, subsequent to filing its motion, the debtors worked

6  with the Official Committee of Unsecured Creditors and

7  agreed on certain revisions to the 2010 MIP Program.  As a

8  result of that agreement and those revisions, the targets --

9  the operating cash flow targets that the debtors have to

10  meet, were made substantially higher at all levels, so even

11  tougher to hit than they originally were.  And the

12  compensation structure under the MIP Program was made even

13  more conservative.  Indeed, at several levels of

14  performance, potential payouts were reduced.

15         Mercer's report with respect to this revised

16  compensation program is set forth at Tab 4 of your binder.

17  And specifically, the matrix payouts and operating cash flow

18  goals are set forth at Page 2.  If the Court would turn to

19  Exhibit 5.

20         Exhibit 5 is a demonstrative exhibit that, for

21  purposes of convenience and ease of reference, summarizes

22  the differences between the plan as initially proposed,

23  which, again, Mercer found to be reasonable, and the plan as

24  revised.  And as the Court can see, at all levels of

25  potential performance, the performance targets went up.  The

1    payouts, particularly at the first two plan and stretch or

2    threshold and target levels of performance, those payout

3    percentages went down and the overall cost at those

4    performance levels also went down relative to the initial

5    plan.

6            Mr. Dempsey would testify that it is typical for

7    an incentive plan to provide a threshold opportunity, as

8    does the 2010 MIP.  He would also testify that the 2010 MIP

9    is very conservative relative to market practice in that for

10   maximum performance, the payout is capped as it was last

11   year in the 2009 MIP Program approved by the Court, capped

12   at 130 percent of target, whereas with the competitors, the

13   peer groups, and in the market, the prevailing practice is

14   to offer a 200 percent of target opportunity.

15           If the -- if I could direct the Court's attention

16   to Tab 6 of the binder.  This is another demonstrative

17   exhibit that basically compares the pay for performance

18   structure of the 2010 MIP Program to the debtors' historical

19   practice as well as the court-approved 2009 program.  And

20   starting with the threshold box, historically, the debtors

21   would have been eligible -- the MIP participants -- for a

22   threshold payout of less than target if they achieved some

23   percentage of their operating plan, the operating plan

24   that's set in the beginning of the year.  They didn't have

25   to achieve the operating plan.  Typically, it was 75 to 85

1  percent achievement.

2          In 2010, by contrast, a threshold payout requires

3  above plan performance.  So the debtors must actually not

4  only hit, but exceed their operating plan in order to

5  receive not 100 percent payout, but in this case a 50

6  percent payout.  And that is consistent with what was done

7  in 2009.

8          With respect to achieving plan, historically, if

9  the debtors achieve their operating plan, the participants

10  would receive a pool equal to 100 percent of target.  This

11  year, in order to achieve 100 percent target pool, the

12  debtors again must exceed their original operating plan and

13  must exceed it by even more than threshold performance.

14          With respect to the maximum, as I mentioned,

15  Tribune Company's historical practice has been to offer a

16  maximum opportunity of 200 percent of target.  And in order

17  to achieve that 200 percent bonus pool which, as I noted, is

18  consistent with market practice, the debtors had to achieve,

19  typically, 120 to 140 percent of their operating plan.  This

20  year, they have to achieve 161 percent of their operating

21  plan.  And if they do so, again, their payout is capped at

22  130 percent of target.

23          So Mr. Dempsey would testify that the 2010 pay

24  for performance structure under the MIP is quite

25  conservative relative to market, relative to Tribune's

1  historical practice, and consistent with the court approved

2  2009 MIP.

3          If I could direct the Court's attention to Tab 7.

4  Tab 7 is basically an updated of an exhibit that I believe

5  this court has seen in the hearing in the 2008 and 2009 MIP

6  programs, provides some historical perspective as to the

7  participant and target payout levels of the MIP.  And Mr.

8  Dempsey would testify, as indicated by the data on this

9  document, that the participant level of the 2010 MIP

10  Program, as well as the target pay out opportunity, remains

11  consistent with historical practice.

12          With respect to the benchmarking of the 2010 MIP

13  Program, as revised, Mr. Dempsey would testify that, as I

14  noted, it is, as originally proposed and particularly as

15  revised, well within market practice, conservative

16  reasonable.  And if the Court were to look at Page 4 of Tab

17  4 -- and Tab 4, again, is Mercer's July 23rd supplemental

18  analysis of the MIP.  At Page 4, as I noted, without a MIP

19  program, the 600 plus MIP participants would receive only

20  their base salary.  And if you look at the bottom line where

21  it says aggregate all participants in market study, they'd

22  be at less than 50 percent of the market median.

23          With the 2010 MIP in place, if you look at total

24  direct compensation, which is what's being offered by the

25  company's competitors, at threshold payout, the management

1    team would be at 60 percent of the market median.  At

2    target, they would be at 72 percent of the market median.

3    And at maximum, whereas I noted most of our competitors

4    would be paying substantially higher percentages than the

5    company would be, the company management team would be at 52

6    percent of the market median.

7                The compensation committee of the company's board

8    of directors has approved the 2010 MIP.  Leslie Mercer has

9    updated its benchmarking more recently with respect to the

10   compensation of the executive council, after its formation,

11   as Mr. Hartenstein testified and found that the MIP

12   continues to be reasonable and soundly market based.

13               And with that, that concludes my proffer.

14               THE COURT:  Does anyone wish to cross-examine Mr.

15   Dempsey?  I hear no response.

16               Does the debtor have anything further in support

17   of its motion?

18               MR. GOLD:  No, Your Honor.  The debtor rests

19   subject to, hopefully, some closing remarks.

20               THE COURT:  All right, thank you.

21               Does anyone else wish to be heard in connection

22   with this motion, or have any evidence to present?

23               MR. LEMAY:  Your Honor, the committee has no

24   evidence, but we do wish to close briefly.

25               THE COURT:  All right.  Well, then we'll start

1  closing.

2        MR. GOLD:  Thank you, Your Honor.  I ended with

3  Mr. Hartenstein in his testimony by -- and since

4  paraphrasing Mr. LeMay, who you'll hear from shortly as well

5  in a -- I guess in a quote that we'll stop using for

6  everyone's benefit at this point, but it does really

7  resonate here.  And what he had said at the time was that

8  business people in the for-profit world understand what

9  motivates management.  And those business people don't want

10  to find out what's going to happen if management, in this

11  case, all of management other than the five that we've

12  agreed on, don't receive their MIP awards.

13        In short, in my mind, the way I think of it is

14  business people get it.  And you heard the testimony of

15  Eddie Hartenstein.  And as he noted, he's a business person.

16  He's a business guy.  He's the only business person that

17  you've heard from today, that you will hear from today on

18  this issue.  And you know, make no mistake about it, you

19  know, Eddie Hartenstein gets it.  And what he gets, as he

20  stated in his testimony, is that this company is operating

21  in a very, very challenging, as Your Honor knows,

22  environment.  They wouldn't, you know, be through these

23  proceedings and this court, frankly, if that wasn't the

24  case.

25        There's dramatic changes.  They're unprecedented.

1  He and other business guys come in, and gals to be complete

2  about it, come in every day and have to face those

3  challenges.  And they get what's needed to confront those

4  challenges and, frankly, to take them on and to do the kinds

5  of things that this company has done to transform

6  themselves.

7           And you heard from Mr. Hartenstein about a

8  sample, really, of the initiatives that they've taken on.

9  And you've heard from him of how these managers, day in and

10 day out, have to, you know, be creative.  They have to think

11 of these initiatives.  They've got to be incented to think

12 about them, to want to do all the extra work that comes

13 along with taking on initiative, some successful, some not.

14 They work long hours.

15          Mr. Hartenstein said that, you know, he was in a

16 company that was entrepreneurial of sorts, where those kind

17 of companies are known for the kind of hours people put in.

18 But he's seeing even longer and harder work here at these

19 companies -- this company.  And those initiatives paid off

20 this year.

21          The company has had, by his testimony and by the

22 exhibit which you've seen, stellar results.  All eight of

23 the newspapers and all but one of the 21 TV stations are

24 profitable and, frankly, gaining in the market.  And largely

25 on the success of these initiatives, the ones he pointed

1  out, the debtors are performing well against their operating

2  budget, I think, by my calculation, 40 to 50 percent over

3  their projections for this year.  And that's -- you know,

4  there's a revenue basis for that, and then there's 700

5  million of costs that they've taken out in the last couple

6  years.

7          And even with the approval of the MIP, as the

8  proffer from Mercer relates, even with the payment of the

9  MIP, these folks, with all their successes, aren't even

10  being paid at the market median.  And they won't be paid at

11  the market median, and they know that, until this bankruptcy

12  case is over.  What we're asking for in this case is payment

13  of the MIP just to get them, you know, some semblance of,

14  frankly, some market based compensation.

15          The -- we had discussions, as the proffer also

16  noted, with UCC, which took the original goals and original

17  payouts, made the goals tougher to hit, made the payouts

18  lesser for hitting those goals.  So, you know, we've acted

19  in a very, very conservative way with respect to this MIP

20  program for all the individuals who participate in it.

21          The one thing, you know, I wanted to close with

22  about what Mr. Hartenstein said that really, hopefully,

23  resonated with the Court is that an incentive plan is really

24  necessary and appropriate to maintain the kind of highly

25  motivated workforce that the Tribune now has in place.  And,

1  you know, Mr. Hartenstein gets that.  He gets that we need

2  this kind of program to keep the workforce creative, to keep

3  them working hard, to keep the initiatives going, and

4  frankly, to keep the kinds of results that will help all the

5  constituents here today and the ones that aren't here today,

6  really better off in the end.

7        And we really hope Your Honor, at the end,

8  frankly, that you get that too.  You have in the past, and

9  we hope you get it here today, that this is a MIP that

10 deserves approval.  It deserves approval for all those who

11 we requested it for.  And we hope it gets approved with --

12 in an expeditious way.  And with that, you know, I conclude,

13 subject to any questions you have.  And obviously, I'd cede

14 the podium if you're ready to hear from the official

15 committee.

16        THE COURT:  Thank you.  I'll hear from others.

17        MR. GOLD:  Thank you.

18        MR. LEMAY:  Your Honor, David LeMay again for the

19 Official Committee of Unsecured Creditors.  I don't want to

20 be a one trick pony.  So I need to find something new and

21 different to say this time, and I briefly think that I have

22 two or three observations that I'd like to share with the

23 Court.

24        First, as I said earlier, the committee did take

25 a very hard look at this particular MIP, negotiated hard.

1   And it is the committee's view, with the adjustments that

2   were made in court earlier this morning, that the plan that

3   has been proposed does create the right incentives for the

4   right people to maximize value.

5           Your Honor, you know, one of the reasons why this

6   case is so hard fought and one of the reasons why there's so

7   much that's being contested is that there's actually quite a

8   lot to fight over.  Sometimes we all see cases where the

9   game isn't worth the candle.  This isn't one.  The level of

10  litigiousness and the level of disagreement I think is

11  reflective of the fact that there's real value here.  And

12  although the litigiousness and the disagreement is something

13  that we all hope will go away, the value is something that

14  we hope will increase.  And it is the committee's view that

15  the way to make that value increase is to incent the

16  managers, the people included in this program, to make that

17  happen.

18          We heard Mr. Hartenstein's testimony.  I think it

19  was compelling.  I happen -- excuse me.  I'm here today with

20  my partner, Mr. McCormack, who sits on our firm's management

21  committee.  And I will tell you in his presence, as a

22  witness myself, that incentives work.  I know this very

23  well.  Incentives work.  And so, based not only on that, but

24  more importantly on the committee's study of how this MIP is

25  constructed, what incentives it offers, and the timing, the

1  committee would ask Your Honor to approve the MIP and would

2  ask you to do it at today's hearing, or soon, because the

3  committee does think it's very, very important to value

4  preservation.  And you know, it is just -- if the value

5  isn't there to be fought over, that's really going to be a

6  negative not a positive.

7          Thank you, Your Honor.

8          THE COURT:  Thank you.

9          MR. KLAUDER:  Good morning, Your Honor.  David

10  Klauder for the United States Trustee.  I'll be very brief.

11  To sort of reiterate and stand by the position that I

12  articulated earlier, with the exclusion of the five

13  individuals that have been named in the examiner report and

14  the subsequent committee complaint, we're no longer pursuing

15  our objection to the 2010 MIP.  Thank you.

16          THE COURT:  Thank you.

17          MR. HAMMOND:  Your Honor, Andrew Hammond on

18  behalf of the bridge agent.  We just wanted to make clear on

19  the record that with respect to the MIP, that we reserve all

20  rights that we may have with respect to confirmation

21  objections that we may have, with respect to payments that

22  are made, to the extent the Court approves the MIP.  Thank

23  you, Your Honor.

24          THE COURT:  Before you leave, I do want to press

25  you a little bit about your objection.  And in it, the

1  motivation is obvious from the tenor of the objection, and

2  that is you're unhappy about -- well, you were then and you

3  still are, about plan treatment, and that's understandable.

4  But aside from motivations, because they were

5  dispositive in everything before me, I'm not sure what would

6  result.  But in trying to glean merit from a bankruptcy

7  standpoint in what you say, you don't challenge the

8  reasonableness of the plan or the standards that, arguably,

9  are applicable to such a -- to the requested relief, but do

10  say that, well, it's just not right that management should

11  be paid before we get something meaningful in the way of a

12  plan distribution.

13  But it doesn't seem to me that that's -- while

14  the argument sounds in fairness, it doesn't fit within the

15  statutory standard it seems to me that I'm required to apply

16  in determining whether the debtor should receive the relief

17  it's requested.  If you think I'm wrong, tell me.

18  MR. HAMMOND:  No, I appreciate that, Your Honor.

19  And I guess what you'd have to look at is the context at the

20  time the objection was originally filed.  And at that time,

21  and still today, we feel strongly that it should be put off

22  and considered in connection with confirmation, where

23  additional evidence may come out with respect to individuals

24  who receive payments in connection with MIP.  And we thought

25  it was premature then.  We think it's premature now.  And I

1 think that's the genesis of the objection.

2           THE COURT:  All right, thank you.

3           MR. HAMMOND:  Thank you, Your Honor.

4           THE COURT:  Does anyone else with to be heard?  I

5 hear no further response.

6           Well, several different ways to -- that I look at

7 this in view of the record that's been made.  And let's

8 start with the standard.  I don't address whether the relief

9 should be awarded or viewed under 363(b) or (c).  No one has

10 argued that these are -- or is not now arguing this is

11 relief that should be applied against the standard set in

12 503(c)(1) or (c)(2).  So I will apply the standard provided

13 in 503(c)(3).  And I conclude that the debtor has met its

14 burden for the relief that it's now requesting.  And here's

15 how I view why that relief should be granted.

16           First, I'll look at what, in an unusual

17 circumstance for this case, is a relative absence of

18 objection.  Not something I've seen frequency -- frequently

19 to date.  And that's not always the end of the game.  But on

20 the other hand, I guess which is the corollary to the

21 absence of objection, and that is meaningful support,

22 particularly from the committee here for the reasons it's

23 expressed.

24           The MIP that's been proposed here is somewhat

25 less generous than 2009.  I find that the targets and the

1  benchmarks have been appropriately fixed as incentives.

2  They contain a necessary reach.  The metrics chosen in the

3  setting of the targets and benchmarks that is revenue and

4  operating cash flow I think is reasonably chosen under the

5  circumstances.

6          There's nothing wrong with relatively simple

7  means of determining such things.  I think sometimes the

8  parties, in requesting such relief, build frameworks that

9  are much more complicated than they need be.  The awards and

10 potential awards under the proposed plan are meaningful but

11 not excessive.  They're within the market and the company's

12 historical practice, arguably, below each of them.

13         So for all of these reasons, I will overrule any

14 remaining objections and approve the relief that's been

15 requested with the alteration that was made earlier in court

16 today.  Will this require a change to the form of order that

17 the debtor was otherwise expected to present?

18         MR. GOLD:  I believe it may, Your Honor.  And so,

19 we'd propose that we make those modifications, circulate

20 them, and get it to you in due course.

21         THE COURT:  Okay.  Now with tomorrow as a federal

22 holiday and court staff taking advantage of that, my comment

23 is if you wish an order to be signed and docketed today, you

24 should get it to me by mid-afternoon.  Otherwise, it would

25 likely be acted upon Friday.

1          MR. GOLD:  Okay.  We'll do our best to do so,

2     Your Honor.  Thank you.

3          THE COURT:  All right.  Is there anything further

4     for today?

5          MR. ZENSKY:  Good morning, Your Honor.  David

6     Zensky, Aiken Gump Strauss Hauer and Feld for Aurelius

7     Capital Management.  While we're together and before we

8     break, could I have two minutes to address a

9     scheduling/housekeeping matter with the Court?

10          THE COURT:  Go ahead.

11          MR. ZENSKY:  Great.  Your Honor, on the

12     assumption that, come the 29th or shortly thereafter, we

13     will have disclosure statements that go out and we'll be off

14     to the races --

15          THE COURT:  I like that sense of optimism from

16     Aurelius.

17          MR. ZENSKY:  We --

18          THE COURT:  Stay on that track.

19          MR. ZENSKY:  As long as ours is included.

20          THE COURT:  Yes.

21          MR. ZENSKY:  We took the initiative to start to

22     think about getting from there to the confirmation hearing,

23     and took the initiative to prepare a rather detailed case

24     management order, which we circulated to the proponents of

25     all the plans last Friday.  We did not in that draft -- it

1  was not filed with the Court.  You're not missing anything.

2  It was submitted to the parties for comment and to start a

3  discussion.  We did not include in that, Your Honor, any

4  sort of preview or prejudgment about what the hearing would

5  look like, and figure that would be a topic for discussion

6  much further down the road.

7        For control purposes, we put in our proposal of a

8  March 7th start date for the confirmation hearing and, of

9  course, let everyone know that we had not vetted that with

10  the Court.  It was just simply to start the discussion.

11        On Monday, the debtors, as you may know, filed a

12  motion dealing with the record date, solicitation

13  procedures, balloting, and the like.  And tucked in the back

14  of that the debtors, without having discussed it with any

15  parties but probably for the same reason, to get a

16  discussion started, also asked for the adoption of a case

17  management order, but left all the dates blank, and have put

18  that hearing when we're before you on the 29th.

19        The debtors also have asked for a confirmation

20  hearing starting in early March.  So as we move forward,

21  Your Honor, from today and looking ahead to the 29th when

22  these issues will be on, I pose the question as to whether

23  the Court is in a position to tell the parties whether a

24  March hearing date accords with the Court's expectations and

25  whether we should be working on plugging in dates that fit

1  with that, or whether the Court has a different idea of when

2  we would be beginning the confirmation hearing.

3         THE COURT:  How much time do the parties think

4  they will need?

5         MR. ZENSKY:  Okay.  I can report the debtors, in

6  their motion that's been filed, have asked for five days.

7  Aurelius and its co-proponents think that's woefully

8  inadequate.  And with four plans, three plans, or two plans

9  on the table, the complexity of the issues to be tried

10 regarding the 9019 inter-company claims, issues about the

11 phones -- there's a world of issues that are going to have

12 to be tried, and we would say, at a minimum, two weeks.  And

13 I'm certainly not here to ask you to rule on that now.

14        THE COURT:  Just to cheer me up a little bit I

15 guess.

16        MR. ZENSKY:  Well, Judge, think about how many

17 bright lights will be coming through the door during that

18 two weeks.

19        THE COURT:  I'll bring my shades.  Well --

20        MR. ZENSKY:  So, really, the question that we

21 had, and I think all the parties would benefit from it, is

22 knowing whether March is something that works with the

23 Court's calendar or whether we should be thinking about

24 something later, so that when we start to bang heads over

25 interim deadlines, we'll have a sense of where we need to

1  get to and when we need to get there.

2          THE COURT:  All right.  Have we gotten any recent

3  word, Nancy, on what's scheduled for the week of March 14th?

4          THE CLERK:  Last I heard, it was still happening.

5          THE COURT:  Still happening.  Okay.

6          Now I have a -- presently have scheduled a

7  weeklong trial beginning on March 14th.  The only hearing

8  now scheduled in the following two weeks is a Tribune

9  omnibus on the 22nd.  So if I were to set aside two weeks,

10 the weeks of March 21st and March 28th are -- well, hold on.

11 Let me just make sure.

12         MR. MASKOWITZ:  Your Honor --

13         THE COURT:  Are -- look open to me.  Yes?

14         MR. MASKOWITZ:  I apologize for interrupting.

15 This is Elliot Maskowitz at Davis Polk representing JP

16 Morgan.  I just want to add to the scheduling discussion, if

17 I may, for a second since dates like March 21st and 28th are

18 coming up.  There would be scheduling issues on our side and

19 I think on the part of other parties with respect to late

20 March.  That would make it difficult for us to have our full

21 team participate in a confirmation hearing at that time.

22         I think the date that Aurelius had originally

23 proposed in the private discussions that they had had was

24 March 1st.  And I think that accords with -- that's

25 consistent at least with schedules on our side.  I don't

1  presume to know what the Court's schedule is for early

2  March.  My only point is that early March, I think, is

3  consistent with a lot of schedules versus late March.

4  That's my first point.

5          And my second point is, and I don't intend to go

6  into this now, but Mr. Zensky made a number of comments

7  about, you know, what parties are desiring in the way of the

8  scope of a confirmation hearing and the length of the

9  confirmation hearing.  All I would say is that I think that

10  that issue is being teed up for the Court.  It need not be

11  decided right now.

12          But suffice it to say that JP Morgan and other

13  parties believe that two weeks is extremely long and,

14  frankly, far longer than is needed, and we had proposed five

15  days.  We need not decide that issue now, but there is a

16  hotly contested issue with respect to the scope of the

17  confirmation hearing.  And I wouldn't want it to be

18  suggested or pre-decided on this call that two weeks is the

19  appropriate frame of time.

20          THE COURT:  Well, if I've ever set aside time for

21  a hearing or a trial, if the parties actually finish before

22  then, I've never insisted that they stretch it out to

23  consume the whole time.  So whether I ultimately set aside

24  two weeks or not is not intended at any point to be a

25  decision that will take that long.

1          MR. ZENSKY:  Sure.  Your Honor --

2          THE COURT:  But I heard what you said about

3  scheduling.

4          MR. ZENSKY:  Our proposal was March 7th not March

5  1st.  I'm not sure what Mr. Maskowitz was referring to in

6  that regard.  And obviously, we're not asking, as I said,

7  the Court to determine today how long the hearing would go.

8  That will be the subject of some great debate, I believe,

9  when we're here on the 29th, at least as to proposed

10  limitations being placed in that hearing by the debtors and

11  the co-proponents of their plan.

12          THE COURT:  All right.  Does anyone want to weigh

13  in at this point on scheduling?  Anyone else?

14          MR. LANTRY:  Your Honor, Kevin Lantry on behalf

15  of the debtors.  Only two additional thoughts.  The first

16  is, as you heard today, the sooner the better for the

17  debtors.

18          The second point is I think, often, it's

19  beneficial, and we asked for a single week to move things

20  along.  But if your calendar didn't permit any additional

21  time in conjunction with that initial week package, that can

22  sometimes be beneficial, because things happen in the way

23  the confirmation hearing goes.  And so, I wouldn't want to

24  find a period of time that was going to be, you know,

25  contiguous for all two weeks, or however long it's going to

1  take, and therefore, postpone the ultimate commencement of

2  the hearing.  Thank you, Your Honor.

3          THE COURT:  I understand what you're saying.

4          MR. ZENSKY:  Your Honor, I would agree with that

5  point, that whatever dates are put aside do not necessarily

6  have to be noncontiguous.  And I remember coming down on

7  several different occasions when we were doing Exide.  They

8  were certainly not all backed up one after another.

9          The other point I wanted to ask the Court about,

10 Your Honor, was, as you know, you had previously directed

11 that the parties meet and confer, I believe it's next

12 Friday, regarding any unresolved objections to the

13 disclosure statement.  And I'm wondering whether it makes

14 sense to expand that to include, to the extent that there

15 has not been adequate time to meet and confer on the

16 proposed case management issues, between now and then, that

17 that parties be directed to expand that meet and confer, so

18 that when we come before you on the 29th, there's as maximum

19 amount of agreement as possible, or at least an effort to

20 agree on case management issues.

21         THE COURT:  Well, I'd like the primary focus to

22 be that which I originally directed it be.  To the extent

23 the parties are able -- are there and have time to address

24 the scheduling issue, that would be helpful.

25         Now I see that that there is an omnibus hearing

1 scheduled for the 23rd.  At this point, what does the debtor

2 anticipate will be considered at that time?

3        MR. LANTRY:  Nothing at this point, Your Honor.

4 We do have quite a backlog of claims, objections, and those

5 types of more ministerial things to tend to, but beyond

6 that, nothing that's specifically scheduled.

7        THE COURT:  Well, it's now November 10th.  Is it

8 anticipated that --

9        MR. LANTRY:  We would be happy to give way on

10 that omnibus, Your Honor, if that's where you're going.

11        THE COURT:  Oh, I can have a day back?

12        MR. LANTRY:  Yes.

13        THE COURT:  Oh, it's like a gift.  Thank you.

14 Okay.  Anything further for today?  I'll take a look at my

15 calendar.  I'll, understanding that the parties are

16 generally looking toward March, figure out what fits where

17 and when.  And I'm sure we'll have further discussions on

18 it.

19        Thank you all very much.  That concludes this

20 hearing.  Court is adjourned.

21     (Whereupon at 12:09 p.m., the hearing was adjourned)

22

23

24

25

1                           CERTIFICATION

2             I   certify   that   the   foregoing   is   a   correct

3     transcript   from   the   electronic   sound   recording   of   the

4     proceedings in the above-entitled matter.

5

6

7     _____          November 11, 2010

8     Stephanie McMeel

9     AAERT Cert. No. 452

10    Certified Court Transcriptionist

| Word | Page:Line |
|------|-----------|
| **503(c)(1)** 59:12 | |
| **503(c)(3)** 59:13 | |
| **_____debtors.___** 1:13 | |
| **a.m**(6) 1:16 8:1 20:8 20:8 44:14 44:14 | |
| **abbott**(1) 3:43 | |
| **able**(4) 17:14 37:11 39:19 67:23 | |
| **about**(34) 10:12 14:16 14:19 14:20 16:6 18:3 18:7 22:13 24:20 29:1 31:3 33:8 34:12 38:14 38:18 38:19 39:17 39:25 40:2 53:2 53:7 53:12 54:22 57:25 58:2 58:3 61:22 62:4 63:10 63:16 63:23 65:7 66:2 67:9 | |
| **above**(2) 41:7 49:3 | |
| **above-entitled**(1) 69:4 | |
| **absence**(2) 59:17 59:21 | |
| **absolute**(2) 13:7 13:13 | |
| **absolutely**(4) 29:3 35:15 42:18 43:19 | |
| **accords**(2) 62:24 64:24 | |
| **accounts**(1) 32:7 | |
| **accurate**(1) 19:7 | |
| **achieve**(7) 39:6 48:25 49:9 49:11 49:17 49:18 49:20 | |
| **achieved**(2) 38:18 48:22 | |
| **achievement**(1) 49:1 | |
| **achieving**(1) 49:8 | |
| **across**(5) 25:11 26:25 30:23 30:25 34:1 38:9 39:21 | |
| **act**(1) 18:23 | |
| **acted**(2) 54:18 60:25 | |
| **acting**(1) 42:5 | |
| **actions**(2) 9:24 9:24 | |
| **actual**(6) 30:13 30:15 30:16 30:17 34:13 40:10 | |
| **actually**(5) 16:7 46:21 49:3 56:7 65:21 | |
| **adam**(1) 2:17 | |
| **adamantly**(1) 16:9 | |
| **add**(2) 12:2 64:16 | |
| **additional**(5) 26:4 37:23 58:23 66:15 66:20 | |
| **address**(5) 9:17 15:11 59:8 61:8 67:23 | |
| **adequate**(1) 67:15 | |
| **adjourned**(2) 68:20 68:21 | |
| **adjustments**(3) 42:8 42:9 56:1 | |
| **adler**(1) 6:21 | |
| **admission**(2) 31:12 31:16 | |
| **admit**(1) 10:8 | |
| **admitted**(1) 31:17 | |
| **adoption**(1) 62:16 | |
| **advantage**(1) 60:22 | |
| **advertisers**(1) 32:16 | |
| **advertising**(11) 28:13 30:22 32:18 32:18 32:19 32:19 32:20 35:15 36:9 38:11 38:17 | |
| **aerospace**(1) 24:23 | |
| **aert**(1) 69:9 | |
| **affected**(1) 39:8 | |
| **after**(7) 14:15 21:22 26:1 26:2 26:5 51:10 67:8 | |
| **again**(16) 13:20 14:8 17:14 20:10 36:9 36:15 37:21 38:1 43:21 45:18 46:16 47:23 49:12 49:21 50:17 55:18 | |
| **against**(5) 15:22 30:15 31:3 54:1 59:11 | |
| **aged**(1) 11:16 | |
| **agenda**(1) 8:10 | |
| **agent**(6) 3:28 8:14 12:24 18:13 18:15 | |
| **agent's**(1) 22:18 | |
| **aggregate**(1) 50:21 | |
| **aggressive**(1) 29:11 | |
| **aggretive**(1) 29:9 | |
| **agree**(3) 22:19 67:4 67:20 | |
| **agreed**(2) 47:7 52:12 | |
| **agreement**(15) 3:19 6:8 8:24 9:15 9:18 9:19 9:20 10:2 10:4 10:6 10:11 10:23 11:19 47:8 67:19 | |

| Word | Page:Line |
|------|-----------|
| **ahead**(3) 9:1 61:10 62:21 | |
| **aiken**(1) 61:6 | |
| **aircraft**(1) 25:4 | |
| **akin**(3) 3:3 5:23 | |
| **albeit**(1) 15:21 | |
| **aligned**(1) 12:4 | |
| **all**(63) 8:2 10:10 10:12 10:16 10:17 11:11 12:16 14:22 17:12 18:4 19:9 20:7 20:9 21:8 22:23 23:25 28:21 29:20 32:25 34:8 34:25 36:19 36:25 38:18 39:7 39:21 41:21 42:8 42:9 43:1 43:25 44:8 44:15 44:16 44:22 47:10 47:24 50:21 51:20 51:25 52:11 53:12 53:22 53:23 54:9 54:20 55:4 55:10 56:8 56:13 57:19 59:2 60:13 61:3 61:25 62:17 63:21 64:2 65:9 66:12 66:25 67:8 68:19 | |
| **allegations**(1) 22:3 | |
| **allow**(1) 36:11 | |
| **allowing**(1) 36:9 | |
| **alluded**(1) 21:5 | |
| **almost**(9) 25:18 35:20 31:5 35:13 36:18 39:11 39:20 43:20 45:13 | |
| **alone**(1) 36:1 | |
| **along**(4) 41:24 46:18 53:13 66:20 | |
| **already**(3) 15:7 41:12 45:4 | |
| **also**(17) 9:8 23:25 26:18 31:12 31:13 35:1 35:7 35:18 35:21 37:9 38:11 46:1 48:4 48:8 54:15 62:16 62:19 | |
| **alteration**(1) 60:15 | |
| **although**(1) 56:12 | |
| **alvarez**(1) 5:50 | |
| **always**(2) 28:16 59:19 | |
| **america**(2) 4:17 25:11 | |
| **americas**(1) 3:38 | |
| **amit**(1) 5:10 | |
| **among**(3) 9:20 16:18 18:19 18:25 19:12 | |
| **amount**(6) 28:25 31:22 35:9 35:13 36:16 67:19 | |
| **analogy**(1) 42:14 | |
| **analysis**(5) 45:12 45:21 46:20 47:1 50:18 | |
| **and**(107) 53:9 53:9 53:18 53:19 53:21 53:23 53:24 53:24 54:3 54:4 54:7 54:10 54:11 54:16 54:24 54:24 55:3 55:5 55:7 55:8 55:11 55:12 55:13 55:20 55:21 56:1 56:6 56:10 56:11 56:12 56:14 56:21 56:23 56:25 57:4 57:11 57:13 57:25 58:1 58:2 58:3 58:19 58:20 58:22 58:24 58:25 59:7 59:13 59:14 59:19 59:21 59:25 60:3 60:3 60:9 60:11 60:14 60:18 60:20 60:22 61:6 61:6 61:7 61:13 61:23 62:2 62:5 62:8 62:13 62:13 62:17 62:21 62:24 63:7 63:8 63:12 63:21 64:1 64:10 64:17 64:18 64:24 65:5 65:5 65:8 65:12 65:13 65:14 65:17 66:6 66:10 66:19 66:23 67:1 67:6 67:11 67:15 67:16 67:17 67:23 68:4 68:17 68:17 | |
| **anderson**(1) 2:45 | |
| **andrew**(7) 3:37 4:37 4:38 5:46 6:41 12:23 57:17 | |
| **angeles**(12) 24:1 27:2 27:2 27:25 28:1 35:10 36:1 36:14 37:2 37:24 38:25 39:9 | |
| **anna**(2) 4:27 4:27 | |
| **annual**(1) 14:3 | |
| **another**(5) 35:23 38:23 44:8 48:16 67:8 | |
| **answer**(2) 16:1 37:23 | |
| **anticipate**(1) 68:2 | |
| **anticipated**(1) 68:8 | |
| **any**(26) 9:22 11:22 11:22 12:1 13:3 13:15 13:21 15:12 16:1 22:13 26:6 29:9 31:15 35:21 41:10 41:16 42:16 51:22 55:13 60:13 62:3 62:14 64:2 65:24 66:20 67:12 | |

| Word | Page:Line |
|------|-----------|
| **and**(301) 8:11 8:15 8:16 9:8 9:18 9:20 9:20 9:22 9:24 10:2 10:5 10:6 10:9 10:14 10:14 10:22 11:3 11:7 11:18 12:1 12:3 12:5 12:10 12:18 12:21 12:24 13:2 13:7 14:1 14:3 14:6 14:10 14:13 14:16 14:18 14:19 14:22 14:24 15:2 15:11 15:13 15:17 15:23 16:9 16:11 16:12 16:16 16:19 16:22 16:22 16:23 16:24 17:1 17:9 18:2 18:13 18:20 18:20 18:24 19:1 19:2 19:13 19:17 19:19 19:21 20:2 20:2 20:13 20:18 21:2 21:4 21:7 21:9 22:3 22:4 22:7 22:9 22:12 22:19 22:21 23:2 23:5 23:7 23:25 24:1 24:2 24:6 24:10 24:14 24:17 24:19 24:23 24:23 25:5 25:6 25:6 25:7 25:12 25:15 25:16 25:20 25:23 26:5 26:7 26:10 26:14 26:16 26:19 27:1 27:2 27:4 27:5 27:6 27:9 27:9 27:15 27:17 27:18 27:20 27:22 28:2 28:3 28:4 28:6 28:7 28:9 28:16 28:18 28:20 28:23 28:25 29:2 29:8 29:12 29:13 29:20 29:22 29:25 30:4 30:5 30:9 30:12 30:13 30:14 30:19 30:22 30:23 30:24 31:5 31:8 31:10 31:12 32:2 32:5 32:6 32:19 32:20 32:22 32:24 32:24 33:1 33:12 33:14 33:19 33:20 34:8 34:10 34:10 34:18 34:22 35:2 35:3 35:6 35:12 36:1 36:4 36:7 36:11 36:14 36:15 36:15 36:16 36:24 36:25 37:3 37:6 37:7 37:10 37:18 37:21 37:24 38:4 38:8 38:11 38:12 38:13 38:13 38:14 38:20 38:22 38:25 39:1 39:5 39:10 39:12 39:22 39:22 40:6 40:9 40:13 40:14 40:25 41:7 41:9 41:10 41:14 41:16 41:20 41:25 42:1 42:2 42:6 42:9 42:11 42:12 42:16 42:19 42:20 42:21 42:22 42:24 43:9 43:10 43:11 43:15 43:16 43:22 43:25 44:1 44:3 45:3 45:4 45:4 45:12 45:13 45:15 45:20 45:21 45:25 46:10 46:14 46:16 46:20 47:2 47:3 47:6 47:8 47:11 47:17 47:17 47:21 47:23 47:24 48:2 48:3 48:13 48:19 49:6 49:12 49:16 49:21 50:1 50:5 50:7 50:9 50:14 50:16 50:17 50:20 51:3 51:11 51:12 51:13 52:3 52:7 52:9 52:14 52:15 52:18 52:19 52:23 53:1 53:1 53:2 53:3 53:4 53:4 53:7 | |
| **and**(107) 53:9 53:9 53:18 53:19 53:21 53:23 53:24 53:24 54:3 54:4 54:7 54:10 | |

| Word | Page:Line |
|------|-----------|
| **anyone**(11) 8:18 9:10 9:16 18:9 44:16 44:17 51:14 51:21 59:4 66:12 66:13 | |
| **anyone's**(1) 19:20 | |
| **anything**(5) 11:19 51:16 61:3 62:1 68:14 | |
| **anyway**(4) 23:18 32:12 39:5 22:1 | |
| **apologize**(2) 43:10 64:14 | |
| **appearances**(3) 3:53 5:1 6:1 | |
| **applicable**(2) 9:23 58:9 | |
| **applied**(2) 24:24 59:11 | |
| **apply**(3) 9:22 58:15 59:12 | |
| **appreciate**(1) 58:18 | |
| **approach**(1) 32:12 | |
| **appropriate**(2) 54:24 65:19 | |
| **appropriately**(1) 60:11 | |
| **approval**(6) 11:12 33:21 42:22 54:7 55:10 55:10 | |
| **approve**(4) 10:6 10:24 57:1 60:14 | |
| **approved**(10) 20:18 20:19 41:4 42:14 42:15 46:4 48:11 50:1 51:8 55:11 | |
| **approves**(1) 57:22 | |
| **approximately**(2) 17:6 25:17 | |
| **apps**(2) 35:4 35:4 | |
| **are**(91) 8:13 9:3 10:3 11:16 12:4 12:9 12:17 13:8 13:9 13:9 14:2 14:17 14:21 15:6 15:16 15:20 16:11 17:5 17:6 17:13 17:16 17:25 18:7 18:19 19:4 19:12 19:13 20:15 20:16 20:17 20:17 20:19 21:16 22:2 24:6 26:24 28:10 28:11 28:19 29:4 29:18 29:19 29:21 31:23 33:23 34:19 34:19 32:2 32:3 33:17 33:20 33:21 34:19 34:19 35:1 35:3 35:4 35:5 37:11 37:25 38:10 40:7 41:11 42:5 42:8 42:9 43:1 43:24 44:1 44:2 45:18 47:18 53:17 53:23 54:1 57:22 58:3 58:9 59:10 60:9 60:9 63:11 64:10 64:13 64:17 65:7 67:5 67:23 67:23 68:15 | |
| **area**(2) 45:10 45:14 | |
| **aren't**(2) 54:9 55:5 | |
| **arguably**(2) 58:8 60:12 | |
| **argue**(1) 16:24 | |
| **argued**(1) 59:10 | |
| **arguing**(1) 59:10 | |
| **argument**(4) 12:14 13:13 16:14 58:14 | |
| **arithmetic**(1) 29:17 | |
| **around**(2) 37:15 42:8 | |
| **array**(2) 30:23 30:25 | |
| **arsht**(1) 3:42 | |
| **articulated**(1) 57:12 | |
| **aside**(7) 26:5 26:6 58:4 64:9 65:20 65:23 67:5 | |
| **ask**(20) 8:16 9:5 17:4 17:15 26:10 26:10 29:23 30:4 32:7 33:8 33:15 33:21 34:12 37:21 39:13 41:2 57:1 57:2 63:13 67:9 | |
| **asked**(9) 19:2 19:3 34:9 41:7 41:18 62:16 62:19 63:6 66:19 | |
| **asking**(4) 10:5 11:17 54:12 66:6 | |
| **aspect**(2) 24:6 41:8 | |
| **assessment**(1) 43:21 | |
| **asset**(1) 44:4 | |
| **assets**(1) 27:5 | |
| **assignment**(1) 24:5 | |
| **assisted**(1) 45:21 | |
| **associates**(1) 32:22 | |
| **assume**(1) 13:11 | |
| **assumption**(1) 61:12 | |
| **assumptions**(1) 28:10 | |
| **assure**(1) 14:7 | |
| **atamian**(1) 5:11 | |
| **atmosphere**(1) 18:20 | |
| **attempt**(1) 37:12 | |
| **attendees**(1) 36:7 | |
| **attention**(2) 48:15 50:3 | |
| **attest**(1) 41:14 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| attorneys(1) 8:4 | | between(9) 9:20 10:6 10:13 14:16 28:4 | | but(67) 9:16 10:4 10:18 10:24 11:18 | | circulation(1) 30:22 | |
| audience(1) 38:17 | | 28:8 28:21 47:22 67:16 | | 12:13 13:11 13:18 14:20 15:12 15:20 | | circumstance(2) 18:17 59:17 | |
| august(1) 24:18 | | | | 16:14 17:12 17:15 18:17 19:11 19:15 | | circumstances(3) 43:23 46:5 60:5 | |
| aurelius(7) 3:3 5:23 5:37 61:6 61:16 63:7 | | beyond(4) 12:11 39:12 41:8 68:5 | | 19:21 19:25 22:2 22:13 23:6 24:11 25:23 | | citigroup(1) 4:35 | |
| 64:22 | | bible(1) 23:2 | | 26:11 28:21 28:24 29:20 33:9 34:24 36:15 | | citizens(1) 3:29 | |
| | | big(1) 25:16 | | 36:15 37:22 38:11 38:20 39:6 39:15 39:16 | | city(2) 14:1 26:17 | |
| austin(2) 1:25 4:8 | | bigelow(1) 4:2 | | 40:7 40:16 41:23 43:12 43:14 44:3 44:10 | | claims(5) 9:24 13:11 22:13 63:10 68:4 | |
| avenue(2) 2:41 3:38 | | billion(1) 25:21 | | 47:1 49:4 49:5 51:24 52:6 53:18 53:23 | | claw(1) 11:19 | |
| avoidance(1) 9:23 | | bind(1) 10:21 | | 56:23 58:4 58:6 58:9 58:13 59:19 60:10 | | clear(1) 57:18 | |
| awarded(1) 59:9 | | binder(4) 30:1 46:20 47:16 48:16 | | 62:15 62:17 65:6 65:12 65:15 66:2 66:20 | | cleary(1) 3:20 | |
| awards(3) 52:12 60:9 60:10 | | binders(2) 23:6 23:16 | | 68:5 | | clerk(8) 8:2 20:9 23:1 23:4 23:10 23:15 | |
| aware(3) 9:3 12:17 47:4 | | binding(2) 10:3 10:16 | | | | 44:15 64:4 | |
| away(2) 18:15 56:13 | | bit(7) 12:12 25:22 39:9 39:25 42:4 57:25 | | c)(2)(1) 59:12 | | | |
| bachelor's(1) 24:22 | | 63:14 | | cal(1) 24:24 | | client(1) 42:9 | |
| | | | | calculation(2) 29:17 54:2 | | clients(4) 36:9 38:11 38:17 45:16 | |
| back(6) 11:19 15:10 36:11 42:22 62:13 | | blabey(1) 5:14 | | calendar(4) 41:19 63:23 66:20 68:15 | | clock(1) 20:3 | |
| 68:11 | | blake(1) 3:20 | | california(2) 25:5 26:17 | | close(6) 31:4 31:7 36:6 43:9 51:24 54:21 | |
| | | blank(1) 62:17 | | call(6) 22:25 29:11 33:11 37:11 41:8 65:11 | | closing(3) 16:14 51:19 52:1 | |
| backed(2) 18:15 67:8 | | blatantly(1) 15:3 | | called(4) 18:2 18:5 25:4 33:10 | | co-ceos(1) 23:25 | |
| background(4) 16:13 24:19 24:21 45:4 | | block(3) 6:40 35:12 35:12 | | came(3) 22:14 32:24 34:2 | | co-president/cec(1) 24:3 | |
| backlog(1) 68:4 | | board(4) 6:28 26:17 32:24 51:7 | | campaigns(1) 32:19 | | co-proponents(2) 63:7 66:11 | |
| balloting(1) 62:13 | | boards(4) 26:6 26:13 26:15 26:18 | | campuses(1) 36:4 | | cobb(1) 2:16 | |
| banc(1) 2:39 | | bone(3) 14:13 14:13 15:25 | | can(27) 9:6 10:21 11:24 15:25 17:19 | | code(1) 19:4 | |
| bang(1) 63:24 | | bonus(4) 40:9 40:13 40:14 49:17 | | 19:20 20:14 23:16 24:19 24:25 26:20 | | cold(1) 25:6 | |
| bank(6) 3:29 4:17 4:43 6:20 6:33 6:37 | | book(1) 35:25 | | 26:21 29:12 30:21 34:18 35:2 35:16 36:12 | | cole(1) 1:34 | |
| bankruptcy(9) 1:1 1:21 12:14 15:8 19:4 | | books(1) 36:2 | | 37:18 39:25 40:2 40:16 45:25 47:24 63:5 | | colleagues(3) 24:8 41:24 46:18 | |
| 34:6 40:5 54:11 58:6 | | both(8) 18:12 21:6 22:20 29:21 33:1 34:5 | | 66:21 68:11 | | college(1) 36:4 | |
| | | 36:24 38:14 | | can't(6) 33:2 33:4 41:11 42:4 42:18 43:21 | | column(1) 30:16 | |
| barclays(1) 5:8 | | | | candace(1) 4:12 | | columns(1) 30:12 | |
| barely(1) 24:4 | | bottom(5) 30:25 33:7 38:7 46:14 50:20 | | candle(1) 56:9 | | come(7) 34:2 42:22 52:1 53:1 53:2 58:23 61:12 | |
| base(4) 40:8 40:13 46:6 50:20 | | bottoms(1) 27:20 | | capabilities(1) 41:17 | | 67:18 | |
| based(6) 16:19 18:16 31:7 34:25 51:12 | | bought(1) 25:14 | | capacity(1) 13:8 | | | |
| 54:14 56:23 | | bound(1) 10:7 | | capital(7) 3:3 5:23 5:31 5:37 6:12 43:24 | | comes(1) 53:12 | |
| | | box(6) 2:20 3:23 3:32 3:46 33:5 48:20 | | 61:7 | | coming(5) 27:22 32:2 63:17 64:18 67:6 | |
| basic(1) 26:23 | | boy(1) 41:5 | | | | commencemen(1) 67:1 | |
| basically(8) 25:9 30:10 38:6 39:16 40:12 | | brad(1) 6:28 | | capped(3) 48:10 48:11 49:21 | | comment(4) 16:6 29:12 60:22 62:2 | |
| 46:20 48:17 50:4 | | branches(1) 26:23 | | card(1) 32:14 | | comments(1) 65:6 | |
| | | brand(1) 36:6 | | carey(1) 1:20 | | committee(32) 2:16 4:30 6:27 8:14 12:4 | |
| basis(3) 16:10 39:11 54:4 | | brandywine(1) 3:21 | | carlyle(1) 2:39 | | 12:8 12:21 14:2 14:6 14:8 15:8 15:14 | |
| | | brass(1) 5:28 | | case(19) 1:9 3:36 6:33 11:17 12:24 14:22 | | 15:18 16:12 16:21 19:1 20:12 20:14 21:4 | |
| became(1) 34:2 | | break(3) 20:4 44:9 61:8 | | 20:23 46:3 49:5 52:11 52:24 54:12 54:12 | | 41:24 45:20 47:6 51:7 51:23 55:15 55:19 | |
| because(5) 35:15 39:13 57:2 58:4 66:22 | | breaking(1) 23:8 | | 56:6 59:17 61:23 62:16 67:16 67:20 | | 55:24 56:21 57:1 57:3 57:14 59:22 | |
| been(41) 8:23 11:22 14:14 15:7 15:17 | | brian(5) 1:29 4:11 5:50 11:13 20:10 | | | | | |
| 15:21 17:14 18:20 20:24 21:17 21:18 | | brickley(1) 6:5 | | cases(1) 56:8 | | committee's(4) 14:3 56:1 56:14 56:24 | |
| 24:20 28:11 28:12 30:1 32:5 33:13 33:17 | | bridge(9) 3:28 8:14 12:11 12:21 12:24 | | cash(10) 29:12 29:12 29:16 29:18 30:24 | | comp(1) 32:25 | |
| 34:6 34:15 39:19 40:3 40:22 41:9 41:23 | | 18:13 18:15 22:18 57:18 | | 31:1 31:7 47:9 47:17 60:4 | | companies(4) 26:16 27:18 28:12 40:6 | |
| 42:20 43:2 43:19 45:7 45:17 45:11 48:21 | | | | | | 53:17 53:19 | |
| 49:15 56:3 57:13 59:7 59:24 60:1 60:14 | | brief(2) 25:1 57:10 | | categories(3) 17:5 17:7 30:22 | | | |
| 63:6 67:15 | | briefly(3) 27:16 51:24 55:21 | | category(5) 17:11 17:14 17:17 18:5 18:6 | | company(39) 1:9 2:11 4:1 4:22 5:28 5:42 | |
| before(13) 1:20 20:17 24:11 33:21 35:20 | | brigade(1) 6:12 | | caveat(1) 31:12 | | 6:4 6:21 23:24 23:25 24:9 24:15 25:3 | |
| 40:23 57:24 58:5 58:11 61:7 62:18 65:21 | | bright(3) 43:4 43:7 63:17 | | cede(2) 44:19 55:13 | | 25:4 25:7 25:8 25:21 26:23 27:7 28:18 | |
| 67:18 | | bring(2) 38:1 63:19 | | center(2) 3:29 36:6 | | 29:6 29:10 29:23 30:10 34:3 34:5 34:11 | |
| began(2) 25:3 25:8 | | broadcast(10) 25:9 26:24 27:6 27:9 27:21 | | ceo(3) 24:1 24:9 25:12 | | 42:1 43:24 44:3 44:4 45:19 51:5 51:5 | |
| begin(2) 11:18 20:4 | | 28:2 29:13 29:21 33:1 35:7 | | cert(1) 69:9 | | 52:20 53:5 53:6 53:19 53:21 | |
| beginning(5) 25:13 27:19 48:24 63:2 64:7 | | | | certain(2) 28:24 47:7 | | | |
| begun(1) 37:11 | | broadcasting(1) 30:20 | | certainly(4) 19:14 19:15 63:13 67:8 | | company's(4) 49:15 50:25 51:7 60:11 | |
| behalf(8) 8:9 9:14 11:14 12:24 20:10 | | broadcom(1) 26:18 | | certainty(1) 20:20 | | comparable(1) 9:4 | |
| 44:25 57:18 66:14 | | broadly(1) 32:21 | | certification(1) 69:1 | | compares(1) 48:17 | |
| | | broke(1) 17:24 | | certify(1) 69:2 | | comparison(1) 28:17 | |
| being(11) 13:18 16:6 27:1 31:16 37:25 | | broken(2) 30:21 37:21 | | chadbourne(3) 2:24 4:30 14:1 | | compelled(1) 22:10 | |
| 46:3 50:24 54:10 56:7 65:10 66:10 | | brown(3) 2:18 4:21 5:8 | | chairman(2) 26:3 26:3 | | compelling(1) 56:19 | |
| | | bryant(1) 3:6 | | challenge(2) 28:11 58:7 | | compensation(22) 17:12 32:22 40:3 40:8 | |
| belabor(1) 38:20 | | budget(10) 27:14 27:17 27:22 28:5 29:5 | | challenged(1) 28:10 | | 40:8 40:17 40:21 41:14 45:9 45:11 45:14 | |
| believe(11) 8:9 9:16 12:25 16:23 17:25 | | 29:7 31:6 39:15 39:16 54:2 | | challenges(2) 53:3 53:4 | | 45:20 45:24 46:2 46:7 46:13 47:12 47:16 | |
| 45:4 50:4 60:18 65:13 66:8 67:11 | | | | challenging(1) 52:21 | | 50:24 51:7 51:10 54:14 | |
| | | budgeted(1) 32:8 | | chance(1) 20:12 | | | |
| believers(2) 44:1 44:2 | | budgeting(1) 29:2 | | chandler(1) 4:2 | | | |
| below(3) 41:13 45:24 60:12 | | build(1) 60:8 | | change(1) 60:16 | | competing(1) 18:20 | |
| benchmarking(4) 17:24 46:21 50:12 51:9 | | building(1) 3:21 | | changed(3) 16:17 16:18 32:25 | | competitive(1) 32:17 | |
| benchmarks(3) 47:2 60:1 60:3 | | burden(2) 38:3 59:14 | | changes(1) 52:25 | | competitors(4) 46:10 48:12 50:25 51:3 | |
| bendernagel(1) 1:28 | | business(30) 15:4 15:23 20:18 20:21 21:4 | | changing(1) 16:8 | | complain(4) 12:10 19:11 22:3 57:14 | |
| beneficial(2) 66:19 66:22 | | 26:22 28:9 28:19 28:21 30:24 32:13 33:6 | | channels(1) 25:10 | | complaints(1) 15:7 | |
| benefit(9) 10:11 10:14 10:17 21:25 37:9 | | 34:9 34:10 39:9 39:19 40:6 40:7 41:4 | | chapter(2) 1:7 45:15 | | complete(1) 53:1 | |
| 39:11 42:25 52:6 63:21 | | 42:19 43:14 43:16 43:19 52:8 52:9 52:14 | | characterize(1) 33:25 | | completely(2) 15:17 43:20 | |
| | | 52:15 52:16 52:16 53:1 | | chase(2) 4:43 15:10 | | complexity(1) 63:9 | |
| bennett(1) 6:8 | | | | cheer(1) 63:14 | | complicated(1) 60:9 | |
| benson(1) 5:41 | | businesses(2) 28:4 28:25 | | chicago(6) 1:31 2:8 27:2 27:3 37:3 37:25 | | components(1) 40:3 | |
| bernstein(1) 4:48 | | | | chosen(2) 60:2 60:4 | | comprises(1) 40:17 | |
| best(2) 11:24 61:1 | | | | circulate(1) 60:19 | | conaway(1) 3:19 | |
| better(4) 35:1 44:1 55:6 66:16 | | | | circulated(1) 61:24 | | conceive(1) 36:16 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**concentrated**(1) 32:11
**concept**(2) 10:10 25:7
**concern**(1) 9:24
**concerned**(1) 42:4
**conclude**(2) 55:12 59:13
**concluded**(1) 47:1
**concludes**(2) 51:13 68:19
**conclusion**(1) 19:23
**conducted**(2) 13:15 13:21
**confer**(4) 20:12 67:11 67:15 67:17
**confidential**(2) 9:9 31:14
**confirmation**(15) 13:2 13:5 18:14 19:25 57:20 58:22 61:22 62:8 62:19 63:2 64:21 65:8 65:9 65:17 66:23
**confront**(1) 53:3
**conjunction**(1) 66:21
**connect**(1) 38:16
**connection**(8) 8:19 13:4 51:21 58:22 58:24
**conservative**(5) 47:13 48:9 49:25 50:15 54:19
**consideration**(2) 21:6 21:20
**considered**(3) 13:11 58:22 68:2
**consistent**(9) 8:15 9:5 9:9 49:6 49:18 50:11 50:11 64:25 65:3
**consolidate**(1) 38:21
**consolidated**(3) 34:23 39:5 39:6
**consolidation**(2) 37:23 42:6
**constituents**(2) 18:19 55:5
**constructed**(1) 56:25
**consultant**(1) 17:12
**consulting**(3) 45:9 45:11 45:14
**consume**(1) 65:23
**contain**(1) 60:2
**contemplate**(1) 41:6
**contend**(1) 32:20
**contested**(2) 56:7 65:16
**context**(1) 58:19
**contiguous**(1)
**continue**(4) 26:7 41:21 41:25 42:12
**continued**(5) 2:2 3:1 5:2 6:2 13:1
**continues**(2) 18:21 51:12
**continuing**(1) 18:18
**contrast**(1) 49:2
**control**(1) 62:7
**convenience**(1) 47:21
**convention**(1) 36:6
**conversations**(1) 14:14
**converted**(1) 34:21
**copies**(2) 8:10 8:11
**copy**(1) 11:9
**core**(3) 33:25 42:11 42:11
**corner**(1) 31:2
**corollary**(1) 59:20
**corp**(4) 25:13 26:2 26:3 39:1
**corporate**(6) 21:25 26:6 26:13 26:14 27:4 27:9 28:6 28:9 28:16 28:22
**corporation**(2) 26:18 26:18
**correct**(6) 10:1 11:12 12:7 27:11 27:15 27:15
**correspondents**(2) 37:18 37:18
**corroon**(1) 2:45
**cost**(6) 39:9 39:12 39:13 39:17 39:19 48:3
**cost-cutting**(1) 28:15
**costs**(3) 39:16 39:21 54:5
**could**(8) 10:7 14:23 27:16 38:2 42:7 48:15 50:3 61:8
**couldn't**(2) 13:15 19:22
**council**(1) 51:10
**counsel**(2) 14:12 16:11
**count**(1) 37:18
**country**(1) 26:25
**couple**(3) 11:16 24:12 54:5
**course**(6) 9:7 40:5 40:10 46:25 60:20 62:9

**court**(120) 1:1 8:3 8:5 8:16 8:18 8:23 9:1 9:2 9:10 9:18 10:2 10:5 10:20 11:2 11:5 11:9 11:11 11:15 11:22 12:14 12:22 13:6 13:18 13:22 15:12 16:2 17:1 17:4 17:21 18:4 18:9 18:22 19:11 19:16 19:21 20:7 21:11 21:16 21:24 21:24 22:12 22:12 22:23 23:9 23:16 24:19 25:1 27:16 29:4 31:15 33:14 33:14 33:18 33:21 38:2 40:10 40:16 41:1 43:3 44:8 44:13 44:16 44:22 45:2 45:9 46:15 46:19 47:4 47:18 47:24 48:11 50:1 50:5 50:16 51:14 51:20 51:25 52:23 54:23 55:16 55:23 56:2 57:8 57:16 57:22 57:24 59:2 59:4 60:15 60:21 60:22 61:3 61:9 61:10 61:15 61:18 61:20 62:1 62:10 62:23 63:1 63:3 63:14 63:19 64:2 64:5 64:13 65:10 65:20 66:2 66:12 67:3 67:9 67:21 68:7 68:11 68:13 68:20
**court's**(6) 9:6 48:15 50:3 62:24 63:23 65:1
**court-approved**(1) 48:19
**courtney**(1) 6:37
**courtroom**(3) 1:11 30:1 40:22
**cover**(2) 38:10 38:11 38:12
**covered**(2) 17:6 17:7
**create**(1) 56:3
**created**(14) 18:20 25:19 33:6 34:3 34:14 35:7 35:21 35:23 36:1 36:4 36:7 36:19 37:25 38:13
**creates**(3) 14:9 15:15 37:2
**creation**(1) 34:14
**creative**(4) 28:25 33:5 53:10 55:2
**credit**(2) 3:19 6:8
**creditor**(1) 14:10
**creditors**(11) 2:16 4:30 8:15 12:4 13:10 13:12 13:16 14:2 20:13 47:6 55:19
**critical**(1) 10:19
**cross**(1) 7:3
**cross-examination**(1) 44:9
**cross-examine**(2) 44:17 51:14
**current**(1) 12:18
**cycle**(1) 34:21
**d.c**(1) 37:1
**daniel**(2) 3:4 4:18
**darkening**(1) 43:2
**data**(2) 1:45 50:8
**date**(6) 21:20 59:19 62:8 62:12 62:24
**dated**(1) 12:12
**dates**(4) 62:17 62:25 64:17 67:5
**david**(5) 2:26 3:5 3:11 4:3 4:14 5:4 5:18 6:21 6:29 6:30 14:1 16:4 55:18 57:9 61:5
**davis**(2) 4:47 64:15
**day**(11) 6:27 24:8 36:7 43:4 44:1 46:10 46:10 53:2 53:9 53:10 68:11
**day-to-day**(1) 38:7
**days**(2) 26:11 63:6 65:15
**dead**(1) 32:3
**deadline**(1) 34:21
**deadlines**(2) 37:2 63:25
**deal**(1) 8:24
**dealing**(1) 62:12
**dearborn**(1) 1:30
**debate**(2) 28:20 66:18
**debenture**(1) 5:41
**debilitating**(1) 42:21
**debt**(1) 13:19
**debtor**(15) 4:1 8:5 9:20 11:18 18:21 19:2 20:2 21:24 29:23 51:16 51:18 58:16 59:1 60:17 68:1
**debtors**(37) 1:25 2:15 7:4 7:8 8:9 9:14 11:12 11:14 14:14 14:24 16:11 16:16 18:22 20:11 20:11 20:13 23:3 31:12 31:15 44:25 44:7 47:5 47:9 48:18 48:20 49:3 49:9 49:12 49:18 54:1 62:11 62:14 62:19 63:5 66:10 66:15 66:17

**december**(1) 34:7
**decide**(5) 20:2 20:2 20:3 21:22 65:15
**decided**(1) 65:11
**decision**(3) 21:24 22:14 65:25
**decisions**(2) 32:12 42:2
**defendants**(3) 15:7 19:1 21:17
**degree**(1) 24:23
**degrees**(3) 24:22 24:22
**delaware**(4) 1:2 1:13 2:41 8:1
**deliver**(2) 25:9 39:1
**demonstrativ**(2) 47:20 48:16
**dempsey**(12) 2:5 22:22 44:21 45:1 45:2 45:23 46:18 48:9 49:23 50:8 50:13 51:15
**dempsey's**(1) 45:10
**dennis**(1) 5:37
**depths**(1) 22:15
**derek**(1) 3:43
**describe**(4) 26:21 27:16 28:4 38:2
**described**(3) 34:13 37:5 37:22
**describing**(1) 46:20
**description**(1) 46:22
**deserves**(2) 55:10 55:10
**design**(1) 45:21
**designed**(2) 9:19 14:10
**desiring**(1) 65:7
**detailed**(1) 61:23
**details**(2) 45:17 46:25
**determine**(1) 66:7
**determining**(2) 58:16 60:7
**detroit**(1) 25:23
**deutsch**(1) 2:25
**deutsche**(1) 6:20
**devastating**(2) 42:18 42:21 42:25
**development**(1) 45:12
**device**(1) 35:3
**devices**(1) 35:5
**devised**(1) 36:22
**diamond**(1) 5:19
**diaz**(1) 1:45
**did**(18) 17:12 18:4 24:17 25:25 26:7 26:9 26:14 27:25 28:1 33:4 38:2 38:3 38:21 38:21 43:11 55:24 61:25 62:3
**didn't**(4) 48:24 66:20
**difference**(2) 18:2 29:17
**differences**(1) 47:22
**different**(7) 10:14 18:11 33:12 55:21 59:6 63:1 67:7
**difficult**(4) 29:16 39:5 43:22 64:20
**direct**(9) 7:3 23:19 25:9 32:20 46:7 46:13 48:15 50:3 50:24
**directed**(1) 67:10 67:17 67:22
**direction**(1) 45:20
**directly**(2) 19:13 21:10
**director**(1) 19:9
**directors**(5) 6:28 26:14 26:15 26:17 51:8
**directv**(3) 25:8 25:14 25:16
**disagreement**(2) 56:10 56:12
**disclosure**(2) 61:13 67:13
**discovery**(3) 13:15 13:15 13:21
**discussed**(4) 14:24 28:11 28:16 62:14
**discussing**(1) 16:20
**discussion**(5) 62:3 62:5 62:10 62:16 64:16
**discussions**(5) 16:15 16:17 54:15 64:23 68:17
**dispositive**(1) 58:5
**disputes**(1) 18:18
**disseminate**(1) 35:5
**distribute**(3) 23:7 23:16 39:1
**distributed**(1) 30:2
**distribution**(2) 38:22 58:12
**district**(1) 1:2
**docketed**(1) 60:23
**document**(2) 30:7 50:9
**documents**(1) 19:22

**does**(17) 8:18 15:5 15:23 18:6 18:9 35:14 44:16 48:8 51:14 51:16 51:21 52:6 56:3 57:3 59:4 66:12 68:1
**doesn't**(4) 10:22 37:7 58:13 58:14
**doing**(10) 10:19 26:11 29:6 29:8 29:17 41:9 42:7 42:25 44:2 67:7
**dollars**(2) 31:5 35:15
**don**(1) 4:4
**don't**(25) 8:5 9:15 10:20 10:21 12:13 13:10 15:11 17:13 17:18 19:14 33:3 33:3 41:6 41:6 41:9 41:10 43:17 44:9 52:9 52:12 55:19 58:7 59:8 64:25 65:5
**donald**(1) 4:48
**done**(10) 8:15 9:9 14:6 15:17 35:7 39:2 41:11 43:22 49:6 53:5
**door**(2) 15:9 63:17
**doors**(1) 43:4
**doorway**(1) 43:2
**dorman**(1) 6:8
**dougherty**(2) 6:24 6:24
**douglas**(1) 2:25
**dow**(2) 6:4 6:4
**down**(9) 17:24 28:25 30:19 34:24 41:14 48:3 48:4 62:6 67:6
**draft**(1) 61:25
**dramatic**(1) 52:25
**drew**(1) 36:6
**drive**(2) 2:6 19:12
**driven**(1) 35:24
**dublin**(1) 5:25
**due**(3) 21:8 46:25 60:20
**during**(5) 16:16 20:11 25:6 41:19 63:17
**duties**(3) 19:20 24:6 26:12
**each**(12) 14:12 17:11 17:13 30:14 60:12
**earlier**(12) 18:16 22:16 27:18 29:4 29:6 31:13 39:14 46:16 55:24 56:2 57:12 60:15
**early**(5) 62:20 65:1 65:2
**ease**(1) 47:21
**eastern**(2) 27:4 37:5
**economy**(1) 42:7
**ecro**(1) 1:43
**eddie**(2) 5:15 5:19
**eddy**(6) 2:13 7:5 22:25 23:3 23:13 23:13
**editors**(1) 38:8
**educational**(1) 24:21
**effect**(3) 15:1 42:16 45:25
**efficient**(1) 34:24
**effort**(5) 33:25 33:19 33:19 36:16 67:19
**efforts**(2) 33:25 41:3
**egi-trb**(1) 6:40
**eight**(2) 26:25 53:22
**either**(2) 31:15 35:17
**eldersveid**(1) 4:3
**electronic**(3) 1:51 25:8 69:3
**electronics**(3) 25:6 25:13 25:15
**eligible**(1) 48:21
**elizabeth**(1) 4:40
**ellias**(1) 4:22
**elliot**(1) 64:15
**eloquently**(1) 43:11
**else**(5) 18:3 18:9 51:21 59:4 66:13
**embarrassing**(1) 25:22
**emergence**(2) 42:2 42:3
**emphasize**(2) 42:18 43:21
**employee**(1) 13:11
**employees**(4) 17:5 42:17 43:16 43:25
**employer**(1) 25:5
**employment**(2) 25:1 26:8
**enactments**(1) 14:5
**encompass**(1) 9:3
**end**(4) 23:5 55:6 55:7 59:19
**ended**(1) 52:2
**engineering**(1) 24:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| english(1) 6:20 | | exhorting(1) 42:12 | | flow(10) 23:8 29:12 29:13 29:16 29:18 31:1 31:7 47:9 47:17 60:4 | | function(1) 27:4 | |
| enhance(2) 41:25 44:3 | | exide(1) 67:7 | | | | functions(2) 34:24 39:8 | |
| enhanced(2) 15:23 36:2 | | expand(2) 67:14 67:17 | | | | further(10) 7:2 18:10 22:15 44:6 51:16 59:5 61:3 62:6 68:14 68:17 | |
| enormous(1) 34:3 | | expanded(3) 35:9 35:12 35:18 | | focus(3) 16:17 16:18 67:21 | | | |
| enough(2) 42:4 42:19 | | expansion(1) 36:18 | | focused(2) 16:10 16:10 | | | |
| enter(1) 8:16 | | expansive(1) 29:9 | | folks(7) 25:22 28:9 28:9 41:13 42:23 43:22 54:9 | | gaining(1) 53:24 | |
| enterprise(1) 25:20 | | expect(2) 28:8 31:4 | | | | gals(1) 53:1 | |
| entities(5) 10:14 28:2 35:24 36:23 38:22 | | expectations(1) 62:24 | | | | game(2) 56:9 59:19 | |
| entity(3) 27:21 36:23 37:14 | | expected(5) 13:9 31:3 32:8 38:10 60:17 | | following(2) 16:5 64:8 | | garrison(1) 4:36 | |
| entrepreneuria(1) 53:16 | | expeditious(1) 55:12 | | food(2) 36:1 36:7 | | gary(1) 4:10 | |
| environment(3) 29:10 32:17 52:22 | | expense(2) 32:2 32:3 | | foot(2) 42:10 42:13 | | gas(1) 42:13 | |
| ephraim(1) 5:19 | | expenses(3) 29:18 30:24 32:4 | | for(177) 1:2 1:25 2:4 2:16 2:39 2:45 3:3 3:10 3:19 3:27 3:42 4:1 4:17 4:21 4:27 4:30 4:35 4:43 5:4 5:8 5:14 5:18 5:23 5:28 5:31 5:34 5:37 5:41 5:46 5:50 6:4 6:8 6:12 6:16 6:20 6:24 6:33 6:37 6:40 7:3 8:20 9:14 9:23 10:17 10:17 11:6 11:12 13:12 13:23 14:1 14:9 14:14 14:17 14:17 15:2 15:2 15:10 16:5 17:5 17:11 17:14 18:22 20:17 20:23 21:4 21:6 21:19 21:20 21:25 22:1 22:4 22:9 23:10 23:24 24:3 24:20 25:3 25:22 25:25 26:4 27:22 27:25 28:12 28:20 29:25 30:24 31:5 31:9 31:10 31:11 32:8 32:16 32:23 33:2 34:3 34:16 35:10 35:16 36:7 36:23 36:24 37:4 37:9 37:10 37:14 37:14 37:15 38:12 38:24 38:25 39:1 39:3 39:10 39:10 39:12 40:3 40:11 40:15 40:17 40:19 41:8 42:2 42:10 42:22 42:25 43:13 43:19 44:2 44:1 45:8 45:10 45:13 47:20 48:6 48:9 48:17 48:21 49:24 52:5 53:17 54:3 54:4 54:12 54:18 54:20 55:10 55:11 55:18 56:3 57:10 59:14 59:17 59:22 60:13 61:4 61:6 62:2 62:5 62:7 62:8 62:15 62:16 62:19 63:6 64:3 64:14 64:17 64:20 65:1 65:10 65:20 66:16 66:19 66:25 68:1 68:14 | | gave(1) 39:9 | |
| equal(1) 49:10 | | experience(4) 42:19 42:20 45:4 45:24 | | | | general(5) 19:21 25:21 40:6 40:16 42:19 | |
| equity(3) 40:9 40:9 40:11 | | experiencing(1) 29:10 | | | | generally(3) 15:8 26:21 68:16 | |
| esq(52) 1:26 1:27 1:28 1:29 1:36 2:17 2:18 2:25 2:26 2:27 2:33 2:40 3:4 3:11 3:20 3:28 3:37 3:43 4:9 4:10 4:11 4:12 4:13 4:14 4:18 4:22 4:23 4:24 4:31 4:32 4:37 4:38 4:39 4:40 4:48 5:5 5:9 5:10 5:11 5:14 5:24 5:53 6:3 6:9 6:17 6:21 6:28 6:29 6:30 6:34 6:41 | | expert(1) 45:16 | | | | generated(1) 35:3 | |
| | | experts(1) 38:14 | | | | generous(1) 59:25 | |
| | | expressed(1) 59:23 | | | | genesis(1) 59:1 | |
| | | extent(5) 9:21 13:2 57:22 67:14 67:22 | | | | george(2) 6:24 6:24 | |
| | | externally(1) 36:24 | | | | get(29) 10:11 14:8 16:14 16:24 20:18 20:19 25:18 26:5 26:11 28:23 30:5 30:21 33:15 33:24 35:16 40:15 41:11 43:20 52:14 53:3 54:13 55:8 55:9 58:11 60:20 60:24 62:15 64:1 64:1 | |
| essentially(1) 24:8 | | extra(1) 53:12 | | | | | |
| evan(1) 5:5 | | extraordinarily(1) 20:17 | | | | | |
| even(12) 29:8 37:8 41:6 41:23 41:25 47:10 47:12 49:13 53:18 54:7 54:8 54:9 | | extraordinary(1) 34:10 | | | | | |
| | | extremely(1) 65:13 | | | | gets(6) 37:3 52:19 52:19 55:1 55:1 55:11 | |
| | | face(2) 12:13 53:2 | | | | getting(3) 15:19 35:4 61:22 | |
| evening(1) 35:18 | | facet(1) 39:8 | | | | gift(1) 68:13 | |
| event(2) 38:13 38:14 | | fact(3) 34:6 34:19 56:11 | | | | give(9) 24:19 25:1 28:4 28:7 33:14 33:18 40:16 44:10 68:9 | |
| events(6) 35:21 35:24 36:19 36:20 36:20 38:12 | | fair(4) 12:3 20:13 28:22 36:16 | | | | | |
| | | fairness(1) 58:14 | | | | | |
| | | fall(2) 17:7 17:11 | | | | given(6) 10:23 18:17 18:18 19:25 40:10 41:23 | |
| ever(1) 65:20 | | familiar(1) 40:6 | | | | | |
| every(11) 10:14 19:23 27:20 27:21 27:21 29:19 39:8 41:8 42:23 43:4 53:2 | | far(82) 22:3 30:16 31:2 35:18 36:21 39:10 42:4 65:14 | | | | | |
| | | | | | | glean(2) 17:15 58:6 | |
| | | | | for-profit(1) 52:8 | | glee(1) 19:13 | |
| | | fargo(2) 3:27 6:33 | | force(1) 21:5 | | global(4) 16:9 16:10 16:17 16:18 | |
| everybody(3) 8:6 41:7 41:8 | | fault(1) 15:17 | | forecast(3) 27:22 27:24 28:13 | | goals(4) 47:18 54:16 54:17 54:18 | |
| everyone(3) 8:3 18:3 62:9 | | feature(1) 38:13 | | forecasts(1) 28:10 | | goes(1) 66:23 | |
| everyone's(1) 52:6 | | features(1) 37:3 | | foregoing(1) 69:2 | | going(16) 16:13 26:10 30:4 30:12 33:15 39:11 41:25 42:3 43:20 52:10 55:3 57:5 63:11 66:24 66:25 68:10 | |
| everything(2) 30:10 58:5 | | february(1) 36:5 | | foreign(3) 36:25 37:7 37:17 | | | |
| evidence(6) 20:5 21:1 31:19 51:22 51:24 58:23 | | federal(1) 60:21 | | form(3) 8:20 9:18 60:16 | | | |
| | | feel(4) 20:15 22:10 41:18 58:21 | | forman(1) 1:34 | | gold(37) 1:29 11:13 11:13 11:21 11:24 12:1 17:23 19:8 19:14 19:17 20:6 20:10 20:10 21:13 21:19 22:4 22:7 22:19 22:24 23:5 23:12 23:18 23:20 29:25 30:3 31:11 31:20 31:21 43:8 44:6 44:19 44:23 51:18 52:2 55:17 60:18 61:1 | |
| examination(1) 23:19 | | feld(3) 3:3 5:23 61:6 | | format(1) 38:10 | | | |
| examiner(8) 12:9 14:18 14:18 14:20 14:21 22:4 22:5 57:13 | | festival(2) 36:2 36:8 | | formation(2) 25:7 51:10 | | | |
| | | festivals(3) 35:25 35:25 36:1 | | forms(2) 22:13 35:5 | | | |
| | | few(1) 16:20 | | forth(3) 46:23 47:16 47:18 | | | |
| examiner's(2) 14:16 16:15 | | fewer(1) 37:19 | | fought(2) 56:6 57:5 | | | |
| | | fiduciary(1) 15:14 | | found(7) 47:23 51:11 | | golden(1) 3:4 | |
| example(6) 35:10 35:23 36:25 37:14 38:23 38:25 | | field(1) 45:12 | | four(3) 30:12 36:20 63:8 | | goldsmith(1) 5:37 | |
| | | fifth(1) 30:16 | | four-and-a-hall(1) 35:12 | | gone(2) 25:18 39:15 | |
| | | fight(1) 56:8 | | fourth(5) 27:20 27:23 30:13 31:10 32:4 | | good(12) 8:3 8:4 8:8 9:13 12:23 13:25 14:17 16:4 44:11 44:24 57:9 61:5 | |
| exceed(3) 49:4 49:12 49:13 | | figure(4) 18:21 21:11 62:5 68:16 | | fox(1) 3:27 | | | |
| exceeded(2) 25:21 31:6 | | filed(10) 8:12 9:8 11:17 12:10 12:11 15:7 58:20 62:1 62:11 63:6 | | frame(1) 65:19 | | | |
| exceeding(6) 29:18 29:19 29:21 31:23 31:23 31:24 | | | | frameworks(1) 60:8 | | gordon(2) 4:24 4:38 | |
| | | filing(4) 11:20 12:8 47:4 47:5 | | frankly(13) 18:16 19:9 20:19 21:22 37:15 43:17 52:23 53:4 53:24 54:14 55:4 55:8 65:14 | | got(1) 53:11 | |
| exceeds(1) 35:18 | | finally(1) 30:25 | | | | gotshal(1) 5:4 | |
| excel(1) 42:12 | | find(6) 41:10 43:17 52:10 55:20 59:25 66:24 | | | | gotten(2) 35:19 64:2 | |
| except(2) 17:10 17:14 | | | | freeman(1) 5:31 | | gradually(1) 32:24 | |
| exception(3) 11:16 27:23 27:24 | | | | frequency(1) 59:18 | | graduate(1) 24:23 | |
| exceptions(2) 11:16 19:6 | | findings(2) 14:21 22:8 | | frequently(1) 59:18 | | graduated(1) 25:3 | |
| excess(1) 31:4 | | fine(1) 11:1 | | friday(3) 60:25 61:25 67:12 | | granted(1) 59:15 | |
| excessive(1) 60:11 | | fingers(1) 37:19 | | friedman(1) 5:42 | | great(8) 2:39 14:8 22:5 22:7 35:23 38:23 61:11 66:8 | |
| exclusion(1) 57:12 | | finish(1) 65:21 | | from(57) 12:20 12:24 14:1 16:7 16:17 16:18 17:10 18:15 18:18 19:20 19:22 20:14 24:24 25:8 25:12 25:19 26:7 27:7 27:8 27:20 28:5 28:16 30:23 33:7 33:20 34:2 34:3 34:24 35:11 36:19 37:25 38:7 38:8 38:14 39:6 39:18 41:12 42:19 42:15 47:4 52:4 52:17 52:17 53:7 53:9 54:8 55:14 55:16 58:1 58:4 58:6 59:22 61:15 61:22 62:21 63:21 69:3 | | | |
| excuse(6) 23:21 27:23 36:5 36:20 38:21 56:19 | | firm(1) 45:9 | | | | | |
| | | firm's(1) 56:20 | | | | greatly(1) 35:9 | |
| | | first(16) 8:9 24:2 30:1 30:12 30:12 31:8 31:8 32:5 32:24 40:2 41:22 48:1 55:24 59:16 65:4 66:15 | | | | greissman(1) 6:34 | |
| execs(1) 19:11 | | | | | | group(21) 17:19 17:21 17:22 17:25 18:2 18:25 19:2 19:5 19:11 19:23 27:6 27:8 27:9 27:9 28:1 28:6 28:22 34:7 41:15 42:11 46:12 | |
| executing(1) 32:5 | | | | | | | |
| executive(3) 41:24 45:11 51:10 | | fit(2) 58:14 62:25 | | four(3) 30:12 36:20 63:8 | | | |
| executive's(1) 17:17 | | fits(1) 68:16 | | | | | |
| executives(2) 17:9 46:15 | | five(16) 12:7 14:22 15:1 15:16 18:24 20:4 20:15 20:24 21:17 22:10 44:8 44:13 52:17 57:12 63:6 65:14 | | front(3) 17:19 30:20 39:13 | | groups(2) 28:17 48:13 | |
| exercise(1) 15:4 | | | | full(6) 23:10 30:17 31:5 32:15 39:11 64:20 | | guess(11) 10:21 14:2 19:18 21:3 24:20 39:25 43:9 52:5 58:19 59:20 63:15 | |
| exhibit(16) 7:9 23:6 23:6 29:24 31:12 31:12 32:18 38:19 39:14 46:25 47:19 47:20 47:20 48:17 50:4 53:22 | | | | full-time(1) 26:7 | | | |
| | | fixed(1) 60:1 | | fully(2) 16:22 32:24 | | | |
| | | flagship(1) 27:2 36:14 | | | | gump(3) 3:3 5:23 61:6 | |
| exhibits(4) 7:7 9:3 9:6 9:8 | | flight(1) 10:9 | | front(3) 17:19 30:20 39:13 | | guy(2) 43:19 52:16 | |
| | | floor(4) 2:7 2:49 3:22 3:45 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**guys**(1) 53:1

**h-a-r-t-e-n-s-t-e-i-n**(1) 23:14
**had**(26) 16:15 18:13 18:16 20:11 25:17 25:19 27:13 32:22 34:25 36:3 38:6 38:7 38:13 39:14 39:15 49:18 52:7 53:21 54:15 62:9 63:21 64:22 64:23 64:23 65:14 67:10

**hadn't**(1) 39:2
**half**(4) 32:14 40:20 40:20 46:9
**hall**(1) 6:29
**hammond**(10) 3:37 12:23 12:24 13:14 13:20 13:24 57:17 57:17 58:18 59:3

**hand**(5) 18:24 23:2 23:2 37:19 59:20
**happen**(3) 34:9 41:11 41:12 46:2 52:10 56:17 56:19 66:22

**happening**(3) 42:24 64:4 64:5
**happy**(2) 21:1 68:9
**harbors**(1) 9:22
**hard**(8) 31:10 34:8 41:7 43:21 55:3 55:25 55:25 56:6

**harder**(1) 53:18
**harrisburg**(1) 1:47
**hartenstein**(21) 2:13 7:5 22:25 23:3 23:13 23:14 23:21 23:21 30:5 40:23 43:14 44:5 44:17 51:11 52:3 52:15 52:19 53:17 53:15 54:22 55:1

**hartenstein's**(1) 56:18
**has**(37) 9:16 11:19 12:10 12:11 14:6 14:8 14:21 16:21 17:2 17:16 18:14 18:15 26:23 28:11 28:12 32:10 33:13 34:15 37:17 40:3 41:7 41:23 45:11 46:19 49:15 50:5 51:8 51:8 51:23 53:5 53:21 54:25 56:3 59:9 59:13 63:1 67:15

**hauer**(3) 3:3 5:23 61:6
**have**(106) 8:20 10:2 10:15 11:22 13:3 14:7 14:12 14:14 14:24 14:25 15:7 15:10 15:17 15:17 16:17 17:18 18:6 18:12 18:17 18:20 18:25 20:24 21:13 21:17 22:23:6 24:22 28:3 28:5 29:15 30:20 31:6 32:5 32:17 32:18 32:18 32:21 34:1 34:7 34:7 34:8 34:11 34:14 34:21 34:23 34:25 35:3 35:5 35:7 35:9 35:19 35:21 35:23 35:25 35:25 35:25 36:12 36:13 36:22 37:11 38:3 38:18 39:19 39:20 41:20 41:20 42:16 43:1 43:19 43:22 44:6 45:25 47:9 48:21 48:24 49:20 51:16 51:22 53:2 53:10 55:8 55:13 55:21 57:13 57:20 57:2 58:19 60:1 61:8 61:13 62:17 62:19 63:11 63:25 64:2 64:6 64:6 64:20 67:6 67:23 68:4 68:11 68:17

**haven't**(4) 13:14 13:21 17:14 19:2
**having**(3) 22:2 32:14 62:14
**he's**(8) 45:7 45:7 45:13 45:15 52:15 52:16 52:16 53:18

**head**(1) 27:25
**heads**(2) 19:6 63:24
**health**(1) 38:13
**healthy**(2) 28:8 28:20
**hear**(14) 8:20 9:11 12:20 18:10 20:14 31:17 39:16 44:17 51:15 52:4 52:17 55:1 55:16 59:5

**heard**(17) 8:18 15:9 15:15 18:9 20:25 40:25 46:5 51:2 52:14 52:16 52:17 53:7 53:9 56:18 59:4 64:4 66:2 66:16

**hearing**(27) 9:2 9:7 9:7 9:7 16:25 32:16 50:5 57:2 61:22 62:4 62:8 62:18 62:20 62:22 63:2 64:7 64:21 65:8 65:9 65:17 65:21 66:7 66:10 66:23 67:2 67:25 68:20 68:21

**hearings**(2) 8:16 18:18
**heiman**(1) 6:30

**held**(2) 24:11 24:14
**help**(1) 55:4
**helpful**(1) 67:24
**hennigan**(1) 6:8
**herculean**(1) 34:2
**hercules**(1) 2:47
**here**(36) 10:19 14:2 14:19 15:15 16:11 18:17 20:19 26:21 29:4 33:21 33:24 37:26 37:22 38:19 40:22 41:13 42:3 42:12 42:25 42:22 42:24 43:1 43:13 44:2 45:6 52:7 53:18 55:5 55:5 55:9 56:11 56:19 59:22 59:24 63:13 66:9

**here's**(4) 32:14 32:14 32:15 59:14
**higher**(2) 47:10 51:4
**highly**(2) 32:23 54:24
**him**(1) 53:9
**hire**(1) 25:2
**his**(8) 45:4 45:10 45:23 46:18 52:3 52:20 53:21 56:21

**historical**(6) 48:18 49:15 50:1 50:6 50:11 60:12

**historically**(3) 40:2 48:20 49:8
**history**(1) 25:2
**hit**(3) 47:11 49:4 54:17
**hitting**(1) 54:18
**hold**(2) 19:9 64:10
**holds**(1) 27:4
**holiday**(1) 60:22
**homes**(1) 25:10
**honor**(76) 8:4 8:8 8:22 9:12 9:13 9:16 10:1 10:8 11:4 11:8 11:13 11:24 12:18 12:23 12:25 13:14 13:20 13:24 13:25 14:15:25 16:3 16:4 16:8 16:13 17:23 19:8 19:15 19:19 20:10 20:22 21:2 21:5 21:8 21:20 22:5 22:20 22:24 23:5 23:18 29:25 31:11 43:2 43:11 44:7 44:12 44:19 44:24 51:18 51:23 52:21 55:7 55:8 56:5 60:18 61:2 61:5 61:11 62:3 62:21 64:12 66:1 66:14 67:2 67:4 67:10 68:3 68:10

**honorable**(1) 1:9
**hope**(8) 21:1 21:3 26:17 55:7 55:9 55:13 56:13 56:14

**hopefully**(4) 40:13 43:6 51:19 54:22
**horan**(1) 2:40
**hotly**(1) 65:16
**hour**(3) 34:21 35:11 35:12
**hours**(2) 53:14 53:17
**house**(1) 38:21
**how**(21) 10:6 17:11 17:15 17:23 18:7 19:3 21:22 25:16 27:16 29:6 32:2 38:18 39:18 42:21 43:21 53:9 56:24 59:15 63:3 63:16 66:7

**howard**(1) 4:31
**however**(3) 14:12 21:9 66:25
**huge**(1) 39:10
**hughes**(5) 25:4 25:5 25:7 25:13 25:15
**human**(1) 43:23
**hundred**(1) 31:4
**hundreds**(1) 25:10
**i'd**(7) 22:25 31:11 33:14 33:17 55:13 55:22 67:21

**i'll**(13) 11:18 11:18 11:24 20:4 43:10 44:19 46:23 55:16 57:10 59:16 63:19 68:14 68:15

**i'm**(26) 9:1 12:12 12:17 17:10 17:19 18:1 19:18 20:1 21:13 23:23 23:25 26:10 30:4 30:6 33:15 40:6 40:25 42:4 43:19 56:9 58:5 58:15 58:17 63:13 66:5 67:13 68:17

**i've**(6) 18:17 34:9 42:20 59:18 65:20 65:22
**idea**(1) 63:1
**identified**(2) 14:12 14:17
**identify**(1) 9:7

**ill**(1) 14:17
**immediacy**(2) 20:20 21:7
**impact**(1) 41:3
**implemented**(2) 32:25 43:18
**implicated**(1) 12:9
**importance**(1) 43:15
**important**(4) 15:13 20:16 20:17 57:3
**importantly**(1) 56:24
**impression**(1) 19:21
**inadequate**(1) 63:8
**inc**(1) 5:50
**incent**(1) 56:15
**incented**(1) 53:11
**incentive**(7) 32:23 40:2 40:14 43:15 45:12 48:7 54:21

**incentives**(8) 14:9 15:16 45:25 56:3 56:22 56:23 56:25 60:1

**incentivization**(1) 33:5
**incentivizing**(1) 42:11
**inclined**(1) 19:24 20:1
**include**(3) 29:1 62:3 67:14
**included**(6) 13:9 17:16 19:23 21:17 56:16 61:19

**includes**(1) 17:8
**including**(4) 12:21 37:1 45:12 45:17
**increase**(3) 35:14 56:14 56:15
**incredibly**(1) 15:13
**incumbents**(1) 18:5
**indeed**(2) 47:3 47:13
**index**(1) 7:1
**indicated**(2) 12:7 50:8
**indicates**(1) 12:8
**individual**(3) 16:19 19:23 28:9
**individuals**(21) 12:7 12:19 14:7 14:22 15:1 15:5 15:6 15:16 16:20 16:23 17:9 18:25 19:12 20:24 21:17 22:9 40:18 40:19 54:20 57:13 58:23

**indulgence**(1) 23:7
**industry**(5) 28:18 34:4 34:5 38:14 41:13
**information**(3) 9:4 35:2 35:6
**infrastructure**(2) 27:5 42:8
**initial**(5) 22:21 47:1 47:2 48:4 66:21
**initially**(2) 47:24 47:22
**initiative**(5) 38:1 38:4 53:13 61:21 61:23
**initiatives**(17) 28:11 28:15 28:15 28:23 28:23 28:24 29:1 32:11 33:15 34:12 39:17 41:3 53:8 53:11 53:19 53:25 55:3

**insert**(1) 37:6
**inside**(1) 28:19
**insider**(1) 15:24
**insiders**(3) 17:16 18:7 19:4
**insisted**(1) 65:22
**instant**(1) 34:21
**instrumental**(1) 25:6
**intend**(2) 20:22 65:5
**intended**(2) 17:5 65:24
**intention**(2) 22:16 22:20
**inter-company**(3) 9:15 9:24 63:10
**interest**(3) 14:18 38:15 38:16
**interesting**(1) 10:10
**interim**(1) 63:25
**interlineate**(2) 11:4 11:5
**internally**(2) 33:11 36:24
**international**(1) 37:24
**interplay**(1) 14:16
**interrupting**(1) 64:14
**intervening**(1) 20:11
**into**(15) 16:14 17:7 17:11 25:4 25:10 26:12 30:21 31:19 32:11 34:13 37:4 38:4 38:4 39:2 46:15 65:6

**investment**(1) 43:23
**involved**(2) 21:25 46:10
**involving**(1) 9:15

**ipad**(1) 35:4
**iphone**(1) 35:4
**isn't**(4) 42:14 56:9 56:9 57:5
**issue**(6) 15:18 52:18 65:10 65:15 65:16 67:24

**issues**(8) 11:23 62:22 63:9 63:10 63:11 64:18 67:16 67:20

**it's**(36) 10:3 10:15 10:16 10:16 12:3 13:2 15:8 15:11 17:21 19:18 20:13 22:14 23:13 25:18 26:20 28:7 30:1 31:17 36:15 40:1 40:5 40:19 41:9 41:22 43:21 57:3 58:10 58:17 58:25 59:14 59:22 66:18 66:25 67:11 68:7 68:13

**item**(1) 8:9
**its**(15) 9:20 12:13 15:14 20:2 25:15 27:8 31:15 43:15 46:19 47:5 51:9 51:10 51:17 59:13 63:7

**itself**(4) 12:10 14:9 20:14 31:22
**james**(1) 1:28 2:33 5:31 6:9
**jared**(1) 4:22
**jason**(1) 5:24
**jean-marie**(1) 5:11
**jefferies**(1) 5:28
**jeffrey**(1) 3:28
**jenner**(1) 6:40
**jillian**(1) 4:9
**job**(1) 41:22
**john**(2) 2:5 45:1
**johnston**(1) 6:9
**join**(1) 24:17
**joined**(3) 24:14 24:18 24:25
**jonathan**(1) 1:26 8:8 44:24
**jones**(3) 6:4 6:4 6:27
**journal**(1) 39:1
**jpmorgan**(1) 4:43
**judge**(4) 1:21 20:6 21:14 63:16
**judgment**(2) 15:4 15:23
**july**(3) 8:11 47:5 50:17
**just**(35) 10:15 11:13 15:2 15:3 15:13 16:13 19:22 20:15 20:25 21:11 22:4 24:19 25:1 26:20 28:20 33:6 36:10 38:3 38:6 40:1 40:7 40:12 40:16 41:5 42:3 43:9 45:5 54:13 57:4 57:18 58:10 62:10 63:14 64:11 64:16

**justin**(1) 5:28
**juxtapose**(1) 26:10
**kalenchits**(2) 4:27 4:27
**karen**(1) 5:34
**kasowitz**(1) 5:41
**kate**(1) 1:36
**kaye**(1) 6:16
**keep**(6) 42:11 42:25 55:2 55:2 55:3 55:4
**keeping**(1) 42:13
**kelley**(1) 4:43
**kempner**(1) 5:18
**keriann**(1) 4:13
**kevin**(5) 1:20 1:27 4:43 9:13 66:14
**key**(5) 17:9 17:17 18:5 19:11 29:15 46:15
**kimberly**(1) 2:18
**kind**(12) 15:23 16:5 25:1 32:15 33:24 34:21 38:19 43:3 53:16 53:17 54:24 55:2

**kinds**(3) 33:19 53:4 55:4
**king**(1) 3:12
**kjc**(1) 1:9
**klauder**(10) 3:11 16:4 16:5 17:3 17:18 17:22 18:6 18:8 57:9 57:10

**kline**(1) 4:12

| Word | Page:Line |
|------|-----------|
| know(43) | 10:13 12:11 12:13 13:10 19:17 19:19 21:9 21:21 22:12 22:13 25:22 28:5 30:5 30:11 33:20 33:22 35:11 37:22 38:2 38:15 39:18 41:10 52:18 52:19 52:22 53:10 53:15 54:3 54:11 54:13 54:18 54:2 55:1 55:12 56:5 56:22 57:4 62:9 62:11 65:1 65:7 66:24 67:10 |
| knowing(1) | 63:22 |
| known(3) | 25:8 29:19 53:17 |
| knows(5) | 16:8 42:23 42:24 45:9 52:21 |
| krakauer(1) | 4:11 |
| kramer(1) | 5:14 |
| laid(1) | 32:4 |
| landis(2) | 2:16 2:17 |
| lantry(14) | 1:27 9:13 9:13 10:1 10:8 11:1 11:3 11:7 11:14 61:14 66:14 68:3 68:9 68:12 |
| large(3) | 13:7 27:1 39:7 |
| largely(2) | 19:5 53:21 |
| largest(2) | 25:4 27:1 |
| larsen(1) | 2:12 |
| lashko(1) | 4:39 |
| last(14) | 9:2 9:9 16:20 23:11 24:12 25:14 28:12 31:9 39:21 43:12 48:10 54:5 61:25 64:4 |
| late(2) | 64:19 65:3 |
| later(5) | 15:9 15:16 21:20 40:15 63:24 |
| laughter(3) | 8:7 21:15 43:5 |
| laurie(1) | 2:46 |
| law(2) | 5:41 9:23 |
| lawsuit(3) | 15:21 15:21 15:22 |
| lead(1) | 14:23 |
| leaders(1) | 34:11 |
| leading(2) | 25:2 43:25 |
| learned(1) | 18:18 |
| least(5) | 13:8 13:10 64:25 66:9 67:19 |
| leave(2) | 42:22 57:24 |
| led(1) | 25:6 |
| lederman(1) | 5:5 |
| left(6) | 23:2 25:12 25:18 25:19 30:12 30:23 30:25 40:12 62:17 |
| leg(1) | 40:11 |
| legal(1) | 10:13 |
| legs(1) | 40:7 |
| lemay(12) | 2:26 13:25 14:1 16:3 22:2 43:11 44:10 44:12 51:23 52:4 55:18 55:18 |
| lemay's(1) | 16:6 |
| lenders(4) | 3:20 3:42 6:9 12:22 |
| length(1) | 65:8 |
| leonard(1) | 1:35 |
| leslie(1) | 51:8 |
| less(7) | 10:15 46:8 46:9 46:16 48:22 50:2 59:25 |
| lesser(1) | 54:18 |
| let(19) | 12:1 12:20 15:9 15:20 17:4 17:15 20:1 21:11 26:13 29:23 30:5 32:7 33:8 34:12 37:21 39:13 43:9 62:9 64:11 |
| let's(4) | 13:11 22:23 39:25 59:7 |
| letter(1) | 28:24 |
| level(6) | 19:10 33:18 46:2 50:9 56:9 56:10 |
| levels(6) | 47:10 47:13 47:24 48:2 48:4 50:7 |
| levin(1) | 5:14 |
| levy(1) | 4:37 |
| liability(1) | 14:23 |
| liebentritt(1) | 4:4 |
| light(2) | 22:17 43:7 |
| lights(2) | 43:4 63:17 |
| like(22) | 11:5 15:15 18:9 21:2 21:10 21:22 22:25 23:17 31:11 33:14 33:18 38:4 41:6 41:18 42:7 55:22 61:15 62:5 62:13 64:17 67:20 68:13 |
| likely(2) | 9:3 60:25 |
| likewise(1) | 36:22 |
| limitation(1) | 9:21 |
| limitations(1) | 66:10 |
| limited(4) | 14:12 14:13 14:13 16:12 |
| line(2) | 16:12 50:20 |
| lion's(1) | 19:19 |
| list(5) | 17:19 19:17 19:19 41:15 42:23 |
| litigiousness(2) | 56:10 56:12 |
| little(7) | 12:12 24:19 39:9 39:25 42:3 57:25 63:14 |
| live(3) | 22:17 22:20 33:4 |
| lively(1) | 28:20 |
| llc(1) | 6:40 |
| llp(16) | 1:25 2:24 2:32 2:45 3:27 3:36 4:2 4:30 4:36 4:47 5:4 5:8 6:18 6:16 6:33 6:40 |
| local(4) | 35:9 35:13 36:3 36:13 |
| locations(1) | 38:24 |
| lockbox(1) | 3:13 |
| long(6) | 53:14 61:19 65:13 65:25 66:7 |
| long-awaited(1) | 19:1 |
| longer(1) | 34:20 34:20 53:18 57:14 65:14 |
| look(17) | 19:2 19:17 19:17 19:23 30:4 31:2 34:25 43:3 50:16 50:20 50:23 55:25 58:19 59:6 59:16 62:5 64:13 68:14 |
| looked(1) | 39:14 |
| looking(7) | 19:18 32:16 35:5 42:1 43:1 62:21 68:16 |
| looks(1) | 42:7 |
| los(12) | 24:1 27:1 27:2 27:25 27:25 35:10 36:1 36:14 37:2 37:23 38:25 39:9 |
| losquadro(2) | 6:12 6:13 |
| lot(9) | 21:13 28:14 28:15 28:17 33:4 34:23 41:18 56:8 65:3 |
| lotsoff(11) | 1:26 8:8 8:9 8:22 8:25 9:2 9:12 31:13 44:20 44:24 44:25 |
| lower(1) | 31:2 |
| ludwig(1) | 4:9 |
| lugano(1) | 1:43 |
| lynch(2) | 2:45 6:16 |
| made(17) | 12:16 13:4 14:21 22:17 32:11 35:1 40:25 41:1 47:10 47:12 54:17 54:17 56:2 57:22 59:7 60:15 65:6 |
| madlyn(1) | 6:17 |
| main(1) | 28:11 |
| maintain(1) | 54:24 |
| maintained(1) | 9:8 |
| major(3) | 26:25 30:22 30:23 |
| make(16) | 15:6 15:14 20:2 22:16 26:20 33:3 33:22 34:9 42:1 52:18 56:15 56:16 57:18 60:19 64:11 64:20 |
| makes(1) | 67:13 |
| making(4) | 20:23 27:24 42:8 42:9 |
| management(35) | 3:4 5:24 5:37 6:12 17:8 17:11 17:14 18:25 34:1 36:16 36:18 37:25 38:2 38:3 38:6 40:1 40:4 40:14 40:18 40:19 43:25 45:25 46:12 50:25 51:5 52:9 52:10 52:11 56:20 58:10 61:7 61:24 62:1 67:16 67:20 |
| managers(3) | 19:5 53:9 56:16 |
| manges(1) | 5:4 |
| many(6) | 17:11 17:15 18:7 19:3 42:5 63:16 |
| marc(1) | 4:32 |
| march(17) | 62:8 62:20 62:24 63:22 64:3 64:7 64:10 64:10 64:17 64:20 64:24 65:2 65:2 65:3 66:4 66:4 68:16 |
| marked(1) | 7:7 |
| market(28) | 1:12 2:19 2:48 3:30 3:44 25:20 35:10 42:9 45:24 46:8 46:17 47:3 48:9 48:13 49:18 49:25 50:15 50:21 50:22 51:1 51:2 51:6 51:12 53:24 54:10 54:11 54:14 60:11 |
| markets(5) | 27:1 27:3 29:21 35:9 39:4 |
| marsal(1) | 5:50 |
| martin(1) | 4:23 |
| maskowitz(6) | 64:12 64:14 64:15 66:5 |
| material(1) | 41:13 |
| math(1) | 31:6 |
| mathematics(1) | 24:23 |
| matrix(1) | 47:17 |
| matter(7) | 8:19 15:13 15:14 18:13 19:18 61:9 69:4 |
| matthew(2) | 5:38 5:43 |
| maximize(3) | 14:10 35:8 56:4 |
| maximum(5) | 35:11 49:14 49:16 51:3 67:18 |
| may(19) | 8:11 9:16 9:23 9:24 10:13 10:14 13:14 19:14 23:5 26:7 44:18 45:2 46:22 57:20 57:21 58:23 60:18 62:11 64:17 |
| maybe(3) | 19:6 24:19 36:15 |
| mayer(1) | 5:8 |
| mccarter(1) | 6:20 |
| mccolm(1) | 4:40 |
| mccormack(2) | 2:27 56:20 |
| mcmeel(1) | 69:8 |
| mean(4) | 10:20 10:20 27:21 44:10 |
| meaning(2) | 19:4 35:16 |
| meaningful(3) | 58:11 59:21 60:10 |
| means(2) | 29:9 60:7 |
| mechanics(1) | 46:23 |
| media(6) | 26:23 27:5 28:1 28:12 29:9 32:15 32:17 37:13 40:7 |
| median(12) | 44:14 41:16 46:8 46:9 46:14 46:17 50:22 51:1 51:2 51:6 54:10 54:11 |
| mediocre(1) | 41:16 |
| meet(5) | 33:3 47:10 67:11 67:15 67:17 |
| meisel(1) | 1:34 |
| men(1) | 43:24 |
| mentioned(11) | 16:11 17:13 24:2 24:25 25:25 27:10 27:19 28:6 29:4 46:15 49:14 |
| mercer(13) | 2:4 8:11 9:5 17:24 18:1 44:21 45:1 45:7 45:8 46:18 47:23 51:8 54:8 |
| mercer's(4) | 22:22 47:1 47:15 50:17 |
| mere(1) | 35:11 |
| merely(1) | 32:13 |
| merit(1) | 58:6 |
| merits(1) | 22:13 |
| merrill(2) | 2:45 6:16 |
| met(2) | 39:16 59:13 |
| metric(1) | 29:15 |
| metrics(1) | 60:2 |
| michael(2) | 4:5 5:9 |
| mid-afternoon(1) | 60:24 |
| middle(4) | 17:21 17:22 18:2 19:2 |
| midst(2) | 15:20 15:22 |
| might(3) | 15:10 23:7 42:7 |
| miles(1) | 4:14 |
| miller(1) | 5:46 |
| million(8) | 25:17 25:19 31:3 31:5 31:7 39:11 39:20 54:5 |
| mills(1) | 4:13 |
| mind(1) | 52:13 |
| minimize(1) | 14:11 |
| minimum(1) | 63:12 |
| ministerial(1) | 68:5 |
| minkove(1) | 4:44 |
| minus(1) | 29:8 |
| minute(3) | 20:4 44:9 44:13 |
| minutes(1) | 61:8 |
| mip(72) | 8:12 8:16 9:7 11:12 12:6 12:15 13:1 13:4 14:3 14:4 14:5 14:9 14:16 15:1 15:15 15:19 15:24 16:6 16:16 16:24 17:5 20:18 21:18 33:22 40:1 40:17 41:4 42:14 42:15 42:23 43:12 43:13 43:17 43:23 45:3 45:22 46:3 46:13 46:21 47:7 47:12 48:8 48:18 48:18 48:21 49:24 50:2 50:5 50:7 50:9 50:12 50:18 50:19 50:23 51:8 51:11 52:12 54:7 54:9 54:13 54:19 55:9 55:25 56:24 57:1 57:15 57:19 57:22 58:24 59:24 |
| mips(1) | 16:9 |
| missing(1) | 62:1 |
| mistake(1) | 52:18 |
| mistaken(1) | 18:1 |
| mix(1) | 32:15 |
| mobile(2) | 32:18 35:2 |
| modifications(1) | 60:19 |
| mods(1) | 37:11 |
| modules(3) | 37:4 37:10 37:24 |
| moment(1) | 16:2 23:9 |
| monday(1) | 62:11 |
| money(4) | 15:4 15:6 15:9 15:22 |
| month(2) | 20:19 29:5 |
| months(7) | 16:20 30:17 30:18 31:8 31:9 32:6 42:20 |
| morale(1) | 42:16 |
| more(18) | 8:25 16:14 28:7 29:8 29:16 32:21 32:21 34:8 34:18 35:24 36:9 41:23 47:13 49:13 51:9 54:24 60:9 68:5 |
| morgan(3) | 5:4 64:16 65:12 |
| morning(15) | 8:3 8:4 8:8 8:9 9:13 12:23 13:25 16:4 35:11 35:12 35:17 40:23 44:24 56:2 57:9 61:5 |
| morphed(1) | 25:4 |
| morris(1) | 3:42 |
| mortgage(1) | 33:4 |
| most(6) | 27:18 28:12 32:10 35:8 45:20 51:3 |
| motion(11) | 8:10 8:12 8:13 9:14 11:12 13:1 47:5 51:17 51:22 62:12 63:6 |
| motivated(1) | 54:25 |
| motivates(1) | 52:9 |
| motivation(2) | 42:16 58:1 |
| motivations(1) | 58:4 |
| motors(1) | 35:22 |
| move(4) | 20:1 31:11 62:20 66:19 |
| movie(1) | 35:25 |
| much(13) | 10:16 14:4 29:6 32:3 39:19 40:20 44:10 44:18 56:7 60:9 62:6 63:3 68:19 |
| multiple(3) | 25:10 37:2 38:23 |
| murdoch(1) | 26:4 |
| must(4) | 18:20 49:3 49:12 49:13 |
| myers(1) | 4:17 |
| myself(2) | 18:17 56:22 |
| name(3) | 13:25 23:10 34:18 |
| named(4) | 15:7 18:25 21:17 57:13 |
| nancy(1) | 6:43 |
| narrowing(1) | 11:22 19:25 |
| national(4) | 6:20 36:25 37:8 37:18 |
| nature(1) | 26:21 |
| necessarily(1) | 67:5 |
| necessary(3) | 33:20 54:24 60:2 |
| need(11) | 10:23 30:11 42:24 55:1 55:20 60:9 63:4 63:25 64:1 65:10 65:15 |
| needed(3) | 32:21 53:3 65:14 |
| needs(1) | 22:17 |
| negative(1) | 55:6 |
| negotiated(1) | 55:25 |
| neil(2) | 6:12 6:13 |
| never(3) | 34:7 34:8 65:22 |
| nevertheless(1) | 25:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **new**(21) 2:29  3:7  3:39  5:42  14:1  24:3 24:4  24:4  24:12  33:6  33:8  34:14  34:15 35:1  35:21  36:7  36:19  38:1  38:4  38:12 55:20 | | **office's**(1) 16:7 **officer**(1) 19:9 **officers**(1) 21:25 **official**(9) 12:4  12:8  14:2  20:12  20:14 21:4  47:6  55:14  55:19 | | **outsourced**(1) 36:23 **over**(13) 16:20  25:15  32:24  36:3  36:3 37:21  39:18  43:20  54:2  54:12  56:8  57:5 63:24 **overall**(1) 48:3 | | **performance**(21) 15:5  29:11  30:13  30:14 30:16  30:18  32:9  34:16  38:19  41:16  46:1 47:14  47:25  47:25  48:2  48:4  48:7  48:17 49:3  49:13  49:24 | |
| **newly**(1) 36:7 | | **often**(1) 66:18 | | **overhaul**(1) 38:6 **overrule**(1) 60:13 | | **performing**(1) 54:1 **period**(2) 25:25  66:24 | |
| **news**(16) 6:4  25:13  26:2  26:3  35:2  35:5 35:9  35:11  35:12  35:13  35:17  37:2  37:16 37:19  38:10  39:1 | | **okay**(18) 9:11  10:2  11:2  11:15  11:25 12:20  13:23  18:4  19:16  21:24  22:15  22:2 30:7  60:21  61:1  63:5  64:5  68:14 | | **own**(1) 20:16 **ownership**(1) 25:15 **p.m**(1) 68:21 | | **permit**(1) 66:20 **permitted**(1) 13:3 **perry**(1) 5:31 | |
| **newsgathering**(5) 34:22  36:25  37:1  37:12 37:16 | | **oksana**(1) 4:39 | | **p.o**(2) 2:20  3:23  3:32  3:46 **package**(1) 66:21 | | **person**(3) 41:15  52:15  52:16 **personally**(1) 34:8 | |
| **newspaper**(2) 19:6  26:25 **newspapers**(2) 19:2  53:23 | | **omnibus**(3) 64:9  67:25  68:10 **once**(1) 8:6 | | **page**(9) 18:1  30:4  32:14  32:15  32:15 46:23  47:18  50:16  50:18 | | **persons**(1) 14:18 **perspective**(5) 16:7  16:18  19:18  28:16  50:6 | |
| **newsrooms**(1) 34:22 **next**(3) 8:24  30:23  67:11 | | **one**(35) 1:30  3:6  3:42  8:25  11:15  16:7 19:6  22:21  23:6  23:9  23:24  29:15  29:20 | | **paid**(8) 13:18  15:1  15:20  46:3  53:19  54:1 54:10  58:11 | | **petition**(2) 13:10  13:19 **phillip**(1) 5:25 | |
| **nichols**(1) 3:42 **nine**(3) 17:8  17:24  30:17 | | 30:11  34:18  34:20  36:3  36:7  37:16  37:19 37:22  39:7  41:5  41:9  42:23  43:9  45:17 | | **pains**(3) 14:8  22:5  22:7 **paper**(1) 30:11 | | **phones**(1) 63:11 **photographers**(1) 38:9 | |
| **nils**(1) 2:12 **non-profit**(1) 26:16 | | 53:23  54:21  55:20  56:5  56:6  56:9  59:9 67:8 | | **papers**(1) 11:20  36:13 **parameters**(1) 29:19 | | **physics**(1) 24:24 **pick**(2) 14:13  15:25 | |
| **non-sales**(1) 40:3 **noncontiguous**(1) 67:6 | | **ones**(2) 53:25  55:5 **online**(1) 32:18 | | **paraphrase**(1) 43:10 **paraphrasing**(1) 52:4 | | **place**(12) 9:19  23:2  27:13  32:11  33:16 34:2  36:17  37:23  38:1  38:4  50:23  54:25 | |
| **none**(2) 13:8  16:2 **north**(5) 1:37  2:6  2:48  3:30  3:44 | | **only**(17) 10:3  12:17  17:1  22:2  23:6  24:11 37:16  38:10  44:3  46:6  49:4  50:19  52:16 56:23  64:7  65:2  66:15 | | **parent**(1) 25:21 **park**(2) 3:6  5:34 **parke**(3) 2:24  4:30  14:1 | | **placed**(1) 66:10 **plan**(37) 13:15  16:17  16:19  17:7  18:24 | |
| **not**(63) 10:3  10:18  13:2  13:11  13:11  13:16 13:18  13:22  14:16  14:24  15:1  15:3  15:6 | | **open**(1) 64:13 **operating**(23) 25:14  27:13  27:17  27:22 | | **part**(6) 10:22  13:7  18:21  21:21  37:22 **partially**(1) 34:15 | | 21:21  27:17  29:2  29:21  30:15  31:3  40:2 40:15  41:21  43:15  47:22  47:23  48:1  48:5 | |
| 15:23  17:12  17:19  17:20  18:1  18:8  18:15 19:13  19:15  19:20  21:1  26:10  28:20 | | 37:17  47:18  48:23  48:23  48:25  49:4  49:9  49:12 49:19  49:20  52:20  54:1  60:4 | | **participant**(2) 50:7  50:9 **participants**(7) 17:9  36:11  46:6  48:21  49:9 | | 48:7  48:23  48:23  48:25  49:3  49:4  49:8 49:9  49:12  49:19  49:21  54:23  56:2  58:3 | |
| 37:21  38:3  38:10  38:20  40:7  41:16  42:10 42:22  44:3  46:3  49:3  49:5  53:13  56:23 | | **operation**(2) 34:23  39:7 **operations**(6) 24:9  27:8  33:7  34:22  39:6 | | 50:19  50:21 **participate**(2) 54:20  64:21 | | 58:8  58:12  60:10  66:11 | |
| 57:6  58:5  58:10  59:10  59:18  60:11 60:11 61:25  62:1  62:1  62:3  62:9  63:13  65:10 | | 39:21 | | **particular**(2) 24:6  55:25 **particularly**(3) 48:1  50:14  59:22 | | **plan/operating**(1) 27:13 **plans**(8) 18:20  32:23  32:25  45:13  61:25 | |
| 65:15  65:24  65:24  66:4  66:5  66:6  67:5 67:8  67:15 | | **opportunities**(2) 36:22  42:5 **opportunity**(4) 48:7  48:14  49:16  50:10 | | **parties**(21) 9:15  10:4  10:6  10:10  10:14 10:21  18:12  60:8  62:2  62:15  62:23  63:3 | | 63:8  63:8 **plant**(2) 39:6  36:7 | |
| **note**(1) 31:12 **noted**(8) 31:13  39:14  49:17  50:14  50:18 | | **opposed**(1) 32:13 **optimism**(1) 61:15 | | 63:21  64:19  65:7  65:13  65:21  67:11  67:1 67:23  68:15 | | **play**(1) 40:11 **plaza**(2) 2:28  2:47 | |
| 51:3  52:15  54:16 | | **options**(1) 40:10 **order**(14) 8:17  8:20  9:19  10:2  10:17  31:14 | | **parties-in-interest**(3) 10:7  10:16  10:17 **partner**(2) 45:8  56:20 | | **please**(5) 8:2  20:9  23:1  23:4  23:10 **plugging**(1) 62:25 | |
| **nothing**(6) 25:20  34:2  34:4  60:6  68:3  68:6 **november**(4) 1:15  8:1  68:7  69:7 | | 31:16  49:24  49:11  49:16  60:16  60:23  61:2 62:17 | | **partners**(1) 5:18 **party-in-interest**(1) 10:4 | | **plumbing**(1) 22:15 **plus**(4) 24:21  30:17  34:1  50:19 | |
| **novod**(1) 4:24 **now**(37) 11:11  11:15  14:1  15:5  15:20 | | **order's**(1) 8:23 | | **passage**(1) 43:3 **past**(4) 14:7  33:13  45:8  55:8 | | **podium**(4) 44:20  55:14 **point**(21) 12:12  13:17  15:2  15:19  22:5 | |
| 16:12  16:21  18:19  20:1  22:15  23:7  23:16 27:13  32:5  37:25  38:24  39:16  41:4  41:22 | | **organizational**(1) 27:7 **organizations**(3) 37:13  37:17  37:20 | | **paul**(1) 4:35 **pay**(5) 15:4  15:6  48:17  49:23  50:10 | | 22:7  25:16  26:5  30:15  38:20  52:6  65:2 65:4  65:5  65:24  66:13  66:18  67:5  67:9 | |
| 41:23  42:6  43:20  47:1  54:25  58:25  59:10 59:14  60:21  63:13  64:6  64:8  65:6  65:11 | | **organizes**(1) 27:7 **oriented**(1) 33:2 | | **paying**(2) 45:24  51:4 **payment**(6) 12:6  16:19  20:24  21:20  54:8 | | 68:1  68:3 **pointed**(1) 53:25 | |
| 65:15  67:16  67:25  68:7 | | **original**(4) 18:12  49:12  54:16  54:16 **originally**(5) 47:11  50:14  58:20  64:22 | | 54:12 **payments**(8) 12:15  12:16  13:4  15:2  15:19 | | **points**(1) 45:5 **polk**(2) 4:47  64:15 | |
| **now's**(1) 42:10 **number**(4) 14:19  37:19  39:3  65:6 | | **other**(40) 9:23  10:4  10:7  10:12  10:21 11:19  11:19  17:7  17:18  24:7  19:11  24:8 | | 33:4  57:21  58:24 **payout**(9) 48:2  48:10  48:22  49:2  49:5 | | **pony**(1) 55:20 **pool**(4) 40:19  49:10  49:11  49:17 | |
| **numbers**(2) 17:13  33:3 **numerous**(2) 45:16  45:17 | | 24:10  27:5  28:1  28:18  30:22  33:15  34:10 34:12  35:5  35:19  36:23  37:12  38:15  38:22 | | 49:6  49:21  50:7  50:25 **payouts**(5) 47:14  47:17  48:1  54:17  54:17 | | **portion**(3) 39:22  39:23  40:9 **pose**(1) 62:22 | |
| **nutshell**(1) 15:25 **o'melveny**(1) 4:17 | | 38:24  39:3  40:6  41:12  41:24  42:9  45:17 46:15  52:11  53:1  59:20  64:19  65:2  67:9 | | **payouts**(2) 48:23  51:4 **pedal**(1) 42:11 | | **position**(13) 18:7  18:15  19:9  24:2  24:3 24:4  24:7  24:10  24:11  24:14  42:2  57:11 62:23 | |
| **o'neal**(1) 4:5 **objected**(2) 9:16  16:9 | | **others**(3) 12:20  29:25  55:16 **otherwise**(4) 29:1  37:13  60:17  60:24 | | **peer**(2) 28:17  48:13 **peers**(1) 46:8 | | **positive**(2) 29:13  57:6 **positively**(1) 21:7 | |
| **objection**(27) 12:5  12:6  12:12  12:13  12:25 13:6  13:7  14:14  16:11  16:12  16:16  16:18 | | **our**(51) 12:25  15:25  16:7  16:8  16:10 16:16  16:17  16:18  20:3  20:23  22:23  32:1 | | **peg**(1) 6:5 **pennsylvania**(1) 1:47 | | **possible**(1) 67:19 **possibly**(1) 13:20 | |
| 16:19  16:19  16:22  16:23  17:1  22:18  31:15 31:18  57:15  57:25  58:1  58:20  59:1  59:18 | | 33:1  33:6  34:3  34:22  34:22  34:22  35:5 35:8  35:8  35:10  35:24  36:9  36:12  36:14 | | **people**(18) 14:10  14:19  20:15  20:17  21:13 33:20  33:21  34:8  34:9  42:12  43:14  43:16 | | **post**(1) 16:14 **postpone**(1) 67:1 | |
| 59:21 | | 37:1  38:11  38:11  38:15  38:16  38:17  38:2 39:4  39:9  51:3  56:20  57:15  61:1  62:7 | | 52:8  52:9  52:14  53:17  56:4  56:16 **people's**(1) 25:10 | | **potential**(3) 47:14  47:25  60:10 **potter**(1) 2:45 | |
| **objections**(5) 8:13  11:18  12:17  13:3 18:12  20:1  20:16  20:25  22:1  57:21  60:14 | | 64:18  64:20  64:25  66:4 | | **percent**(22) 35:13  46:8  46:14  46:16  46:17 48:12  48:14  49:5  49:6  49:10  49:11 | | **ppearances**(1) 1:23  2:1  2:53 **practice**(13) 27:19  45:10  45:11  47:3  48:9 | |
| 67:12  68:4 **objectors**(1) 12:2 | | **ours**(1) 61:19 **ourselves**(1) 42:10 | | 49:16  49:17  49:19  49:20  50:22  51: 51:2  51:6  54:2 | | 48:13  48:19  49:18  50:1  50:11  50:15 60:12 | |
| **observations**(1) 55:22 **obvious**(4) 15:3  22:2  36:15  58:1 | | **out**(33) 10:9  12:12  15:4  15:6  15:9  16:24 21:11  22:5  22:7  32:2  32:4  33:5  34:4 | | **percentage**(1) 48:23 **percentages**(2) 48:3  51:4 | | **pre**(2) 13:9  13:18 **pre-decided**(1) 65:18 | |
| **obviously**(3) 12:1  55:13  66:6 **occasions**(1) 67:7 | | 34:23  35:1  36:6  39:19  39:20  41:11  42:5 43:17  44:10  45:15  46:11  50:10  52:10 | | **perform**(1) 28:5 | | **pre-petition**(3) 13:12  13:16 **precisely**(1) 46:1 | |
| **occur**(1) 10:13 **ocf**(5) 29:19  29:22  31:1  31:3  31:5 | | 53:10  54:1  54:5  58:23  61:13  65:22  68:16 | | | | **predominately**(1) 19:15 **prejudgment**(1) 62:4 | |
| **off**(8) 18:14  19:24  42:3  42:10  53:19  55:6 58:21  61:13 | | **outdoor**(1) 32:18 **outside**(1) 28:18 | | | | **prejudice**(1) 21:19 **preliminarily**(2) 12:21  18:10 | |
| **offer**(3) 44:25  48:14  49:15 **offered**(1) 50:24 | | | | | | | |
| **offering**(1) 46:24 **offers**(1) 56:25 | | | | | | | |
| **office**(2) 3:10  37:1 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **premature**(2) 58:25 58:25 | | **publications**(8) 26:25 27:1 36:13 37:4 37:5 37:6 38:25 39:3 | | **redirect**(2) 7:3 7:3 | | **revisions**(2) 47:7 47:8 | |
| **prepare**(1) 57:22 42:9 61:23 | | | | **reduced**(1) 47:14 | | **rifkind**(1) 4:35 | |
| **prepared**(4) 21:2 27:17 29:5 46:19 | | **publisher**(2) 24:1 24:10 | | **reduction**(3) 39:10 39:12 39:13 | | **right**(37) 11:11 11:13 14:9 14:10 14:20 15:5 15:15 15:18 19:8 20:7 20:16 22:23 23:2 30:12 30:17 30:23 30:25 31:2 31:6 33:10 42:1 42:3 42:21 44:2 44:8 44:16 44:22 51:20 51:25 56:3 56:4 58:10 59:2 61:3 64:2 65:11 66:12 | |
| **preparing**(1) 65:1 | | **publishing**(13) 27:6 27:8 27:21 28:1 29:20 30:20 32:13 33:2 33:12 34:20 35:24 36:2 37:13 | | **reference**(3) 29:25 30:15 47:21 | | | |
| **presence**(2) 36:12 56:21 | | | | **referring**(1) 66:5 | | | |
| **present**(4) 36:10 40:22 51:22 60:17 | | | | **reflective**(1) 56:11 | | | |
| **presented**(1) 18:12 | | **purpose**(2) 9:23 13:12 | | **regard**(3) 16:16 21:23 66:6 | | **rights**(3) 9:22 13:3 57:20 | |
| **presenting**(1) 46:24 | | **purposes**(2) 47:21 62:7 | | **regarding**(3) 9:14 63:10 67:12 | | **rise**(3) 8:2 20:9 44:15 | |
| **presently**(1) 64:6 | | **pursuing**(1) 57:14 | | **regardless**(1) 15:4 | | **ritual**(6) 14:3 14:5 16:6 16:8 27:19 28:3 | |
| **preservation**(1) 57:4 | | **push**(2) 28:25 29:8 | | **regional**(2) 36:13 37:8 | | **road**(1) 62:6 | |
| **preserve**(5) 9:21 10:18 41:25 42:25 44:3 | | **pushback**(1) 28:17 | | **regroup**(1) 21:22 | | **roberts**(1) 5:46 | |
| **presidents**(1) 23:25 | | **pushing**(1) 35:1 | | **reiterate**(1) 57:11 | | **rockefeller**(1) 2:28 | |
| **press**(1) 57:24 | | **put**(19) 9:19 18:14 19:24 22:16 22:20 27:13 32:11 32:22 33:16 36:17 37:3 38:1 53:17 58:21 62:7 62:17 67:5 | | **related**(4) 8:25 12:14 12:15 39:15 | | **rogers**(1) 6:37 | |
| **presumably**(2) 21:21 22:21 | | | | **relates**(2) 12:6 54:8 | | **roitman**(1) 4:32 | |
| **presume**(1) 65:1 | | | | **relative**(7) 46:7 46:9 48:4 48:9 49:25 49:25 59:17 | | **role**(2) 41:22 41:23 | |
| **pretty**(1) 32:3 | | **putting**(3) 26:5 26:6 38:4 | | | | **rolled**(1) 30:10 | |
| **prevailing**(1) 48:13 | | **quarter**(8) 27:20 27:24 30:13 30:25 31:1 31:10 32:4 32:14 | | **relatively**(2) 14:21 60:6 | | **roth**(1) 5:34 | |
| **preview**(1) 62:4 | | | | **release**(1) 14:15 | | **rothschild**(1) 3:47 | |
| **previously**(1) 67:10 | | | | **relief**(9) 13:23 58:9 58:16 59:8 59:11 59:14 59:15 60:8 60:14 | | **roughly**(1) 40:20 | |
| **pride**(1) 25:24 | | **quarters**(3) 30:13 30:14 31:8 | | | | **round**(1) 18:11 | |
| **prieto**(1) 5:37 | | **quartile**(1) 46:14 | | **relish**(1) 51:12 | | **rounds**(1) 18:16 | |
| **primarily**(1) 27:3 | | **question**(3) 10:5 19:3 26:10 26:13 30:5 41:2 43:9 62:22 63:20 | | **remain**(2) 14:4 23:1 | | **rows**(1) 30:19 | |
| **primary**(1) 67:21 | | | | **remaining**(4) 17:1 25:14 37:16 60:14 | | **royal**(1) 6:37 | |
| **prime**(1) 35:17 | | | | **remains**(2) 42:14 50:10 | | **rsu's**(1) 40:10 | |
| **primoff**(1) 6:17 | | **questions**(3) 16:1 44:6 55:13 | | **remarks**(1) 51:19 | | **rudnick**(1) 4:21 | |
| **principal**(3) 45:1 45:8 45:10 | | **quite**(4) 14:15 49:24 56:7 68:4 | | **remember**(1) 67:6 | | **rule**(1) 63:13 | |
| **print**(1) 38:25 | | **quo**(2) 10:15 10:18 | | **reorganization**(2) 19:13 21:21 | | **ruling**(3) 21:6 21:7 43:12 | |
| **printing**(4) 38:22 38:24 39:6 39:7 | | **quote**(1) 52:5 | | **reorganizing**(1) 33:6 | | **run**(2) 8:6 24:8 | |
| **prior**(4) 14:4 18:18 39:2 40:5 | | **quoted**(1) 43:12 | | **report**(1) 8:11 14:16 16:15 18:1 37:8 37:8 37:8 46:19 47:15 57:13 63:5 | | **rundown**(1) 25:1 | |
| **priority**(2) 13:7 13:13 | | **races**(1) 61:14 | | | | **running**(1) 20:20 | |
| **private**(1) 64:23 | | **radically**(1) 33:12 | | | | **rupert**(1) 26:3 | |
| **pro**(1) 6:13 | | **radio**(1) 26:19 | | **reporters**(1) 38:8 | | **safe**(1) 9:22 | |
| **probably**(2) 10:15 62:15 | | **rainy**(2) 36:5 36:5 | | **reporting**(4) 26:3 34:22 37:3 38:15 | | **said**(11) 9:18 18:13 21:12 22:2 33:9 52:7 53:15 54:22 55:24 62:6 66:6 | |
| **problem**(1) 21:13 | | **raise**(1) 23:1 | | **reports**(1) 9:5 | | | |
| **procedures**(1) 62:13 | | **range**(1) 47:3 | | **represented**(2) 18:19 34:1 | | **sake**(1) 22:9 | |
| **proceed**(6) 20:22 21:1 21:2 21:9 21:22 22:23 | | **ranks**(1) 36:18 | | **representing**(1) 64:15 | | **salary**(2) 46:7 50:20 | |
| | | **rate**(1) 32:14 | | **represents**(2) 19:13 21:16 | | **sale**(3) 25:16 25:25 26:1 | |
| **proceedings**(8) 1:19 1:51 10:11 15:16 45:3 45:17 52:23 69:4 | | **rath**(1) 6:17 | | **request**(3) 13:23 18:22 21:16 | | **sales**(5) 32:10 32:12 32:13 32:22 33:9 | |
| | | **rather**(3) 14:11 31:8 61:23 | | **requested**(4) 55:11 58:9 58:17 60:15 | | **salient**(1) 45:5 | |
| **process**(5) 19:13 27:7 28:3 33:10 35:4 | | **reach**(2) 19:22 60:2 | | **requesting**(2) 59:14 60:8 | | **same**(2) 19:3 62:15 | |
| **produced**(1) 1:52 | | **read**(1) 10:8 | | **require**(2) 37:7 60:16 | | **sample**(2) 36:11 53:8 | |
| **product**(1) 36:14 | | **readers**(1) 38:16 | | **required**(2) 33:22 58:15 | | **sandisk**(1) 26:18 | |
| **products**(6) 27:2 33:6 33:8 34:14 34:25 36:19 | | **readership**(1) 38:11 | | **requires**(2) 15:24 49:2 | | **satellite**(1) 26:19 | |
| | | **ready**(3) 8:5 21:9 55:14 | | **reservation**(1) 42:3 | | **satisfied**(1) 14:9 | |
| **proffer**(7) 22:21 40:15 44:20 44:25 51:13 54:8 54:15 | | **real**(2) 39:18 56:11 | | **reserve**(2) 13:3 57:19 | | **savings**(2) 39:17 39:18 | |
| | | **realized**(1) 32:21 | | **resolution**(1) 14:25 | | **say**(12) 12:3 19:12 19:25 20:13 22:2 28:22 55:21 58:7 58:10 63:12 65:9 65:12 | |
| **proffering**(1) 46:24 | | **really**(12) 13:12 14:15 22:8 22:10 52:6 53:8 54:22 54:23 55:6 55:7 57:5 63:20 | | **resonate**(2) 52:7 | | | |
| **proffers**(1) 22:16 | | | | **resonated**(1) 54:23 | | **saying**(1) 67:3 | |
| **profitable**(1) 53:24 | | **reason**(2) 15:2 62:15 | | **respect**(39) 12:7 12:19 13:4 20:24 21:3 21:9 22:8 22:9 22:22 24:2 27:12 28:22 28:24 29:6 29:13 31:24 32:7 33:9 39:16 40:14 42:13 43:13 44:21 45:3 45:14 46:13 46:15 47:15 49:8 49:14 50:12 51:9 54:16 57:19 57:20 57:21 58:23 64:19 65:16 | | **says**(5) 10:3 14:18 50:21 | |
| **program**(21) 13:9 21:18 41:4 45:22 46:3 46:13 46:21 46:23 47:2 47:7 47:12 47:16 48:11 48:18 48:19 50:10 50:13 50:19 54:20 55:2 56:16 | | **reasonable**(4) 47:3 47:23 50:16 51:12 | | | | **schedule**(1) 65:1 | |
| | | **reasonableness**(1) 58:8 | | | | **scheduled**(5) 64:3 64:6 64:8 68:1 68:6 | |
| | | **reasonably**(1) 60:4 | | | | **schedules**(2) 64:25 65:3 | |
| **programming**(1) 35:19 | | **reasoned**(1) 16:22 | | **respective**(1) 30:24 | | **scheduling**(5) 64:16 64:18 66:3 66:13 | |
| **programs**(2) 45:3 50:6 | | **reasons**(7) 20:18 21:4 22:1 56:5 56:6 59:22 60:13 | | **responded**(1) 34:10 | | **scheduling/housekeeping**(1) 61:9 | |
| **projected**(2) 30:14 30:18 | | | | **response**(8) 8:20 9:11 18:10 31:17 32:20 44:17 51:15 59:5 | | **schlerf**(1) 3:28 | |
| **projection**(2) 31:9 31:24 | | **recall**(2) 12:15 45:2 | | | | **scholer**(1) 6:16 | |
| **projections**(2) 31:24 54:3 | | **receive**(4) 46:6 49:5 49:10 50:19 52:12 58:16 58:24 | | **responsible**(1) 34:16 | | **schotz**(1) 1:34 | |
| **properties**(1) 29:14 | | | | **restructuring**(1) 45:15 | | **schulte**(1) 5:34 | |
| **proponents**(1) 61:24 | | | | **rests**(1) 51:18 | | **schuylkill**(1) 1:46 | |
| **proposal**(2) 62:7 66:4 | | **received**(2) 7:7 31:19 | | **resubmit**(1) 11:3 | | **scope**(2) 65:8 65:16 | |
| **propose**(1) 60:19 | | **recent**(2) 12:8 64:2 | | **result**(4) 18:21 39:17 47:8 58:6 | | **scotland**(1) 6:37 | |
| **proposed**(13) 13:22 21:18 45:21 46:22 47:22 50:14 56:3 59:24 60:10 64:23 65:11 66:9 67:16 | | **recently**(3) 24:11 45:20 51:9 | | **resulted**(1) 14:13 | | **scott**(1) 6:34 | |
| | | **recess**(2) 20:8 20:11 44:13 44:14 | | **results**(4) 33:2 33:24 53:22 55:4 | | **scrutiny**(1) 15:24 | |
| | | **recognize**(1) 30:7 | | **resume**(1) 44:9 | | **seaboard**(2) 27:4 37:5 | |
| **proposition**(1) 14:25 | | **record**(15) 15:13 20:2 22:4 22:10 22:17 23:11 26:20 26:20 37:21 40:1 45:5 45:18 57:19 59:7 62:12 | | **retained**(1) 45:19 | | **seal**(4) 8:10 9:8 31:14 31:16 | |
| **proved**(1) 5:17 | | | | **retire**(1) 26:7 | | **seated**(3) 8:2 20:9 23:4 | |
| **provide**(4) 38:12 38:24 44:20 48:7 | | | | **retirement**(1) 26:11 | | **second**(8) 10:22 30:12 33:9 35:16 35:16 64:17 65:5 66:18 | |
| **provided**(1) 59:12 | | **recorded**(1) 1:51 | | **revenue**(13) 29:21 30:20 31:23 32:8 34:14 34:15 35:8 35:14 35:22 38:19 38:20 54:4 60:3 | | | |
| **provides**(4) 13:23 27:5 37:14 50:6 | | **recording**(2) 1:51 69:3 | | | | **securities**(1) 5:47 | |
| **providing**(2) 28:24 46:20 | | **recover**(1) 15:22 | | **revenues**(4) 29:17 30:21 31:25 39:14 | | **see**(8) 31:3 33:24 39:10 41:12 44:1 47:24 56:8 67:25 | |
| **provision**(3) 10:3 10:18 10:25 | | **recreation**(1) 36:4 | | **review**(4) 14:6 17:10 19:22 35:25 | | | |
| **public**(1) 26:16 | | **recross**(1) 7:3 | | **revised**(4) 47:15 47:24 50:13 50:15 | | **seeing**(1) 53:18 | |
| | | **redacted**(2) 8:11 9:4 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| seeking(1) 15:22 | | sold(1) 33:13 | | stock(1) 40:10 | | tell(7) 13:16 17:10 19:20 19:24 56:21 | |
| seem(2) 10:22 58:13 | | solely(1) 12:6 | | stole(1) 20:3 | | 58:17 62:23 | |
| seems(3) 13:7 15:3 58:15 | | solicitation(1) 62:12 | | stool(1) 40:8 | | | |
| seen(4) 34:7 50:5 53:22 59:18 | | solution(2) 33:12 33:10 | | stop(1) 52:5 | | tend(1) 68:5 | |
| seife(1) 4:31 | | some(34) 9:3 10:12 12:9 14:15 14:21 | | stories(1) 37:3 | | tenor(1) 58:1 | |
| selber(1) 2:46 | | 17:12 19:9 19:9 19:14 19:15 20:18 20:20 | | strauss(3) 3:3 5:23 61:6 | | tension(1) 28:8 | |
| sell(2) 37:11 37:12 | | 20:20 21:5 21:7 25:25 26:12 32:11 33:21 | | street(11) 1:12 1:37 1:46 2:19 2:34 2:48 | | terms(14) 17:23 18:11 20:20 21:6 26:12 | |
| sellers(1) 33:1 | | 34:12 35:19 40:25 41:1 41:12 42:16 45:5 | | 3:12 3:22 3:30 3:44 39:1 | | 28:17 29:12 31:22 31:22 34:13 35:22 | |
| selling(2) 33:10 33:11 | | 48:22 50:6 51:19 53:13 53:13 54:13 54:14 | | | | 40:10 42:6 46:2 | |
| semblance(1) 54:13 | | 66:8 | | stretch(2) 48:1 65:22 | | | |
| sense(8) 9:16 15:6 33:14 33:18 40:16 | | | | stronger(2) 32:8 32:8 | | terrific(1) 29:8 | |
| 61:15 63:25 67:14 | | somebody(1) 20:3 | | strongly(2) 42:19 58:21 | | testified(5) 33:16 33:17 45:2 45:16 51:11 | |
| | | someone(3) 11:5 15:9 27:18 | | structure(3) 47:12 48:18 49:24 | | testify(8) 40:23 45:23 46:1 48:6 48:8 | |
| sensible(1) 16:22 | | something(10) 9:17 25:23 39:2 55:20 | | study(2) 50:21 56:24 | | 49:23 50:8 50:13 | |
| sentiments(1) 43:18 | | 56:12 56:13 58:11 59:18 63:22 63:24 | | subject(10) 9:10 10:23 20:15 20:15 20:25 | | | |
| serious(1) 14:22 | | | | 31:14 31:16 51:19 55:13 66:8 | | testimony(10) 22:17 22:20 22:22 44:21 | |
| serve(2) 26:7 26:14 | | sometimes(4) 40:9 56:8 60:7 66:22 | | | | 45:1 52:3 52:14 52:20 53:21 56:18 | |
| served(1) 26:6 | | somewhat(2) 11:16 59:24 | | subjects(1) 38:16 | | | |
| service(2) 1:45 1:52 | | somewhere(1) 17:13 | | submissions(1) 11:9 | | than(21) 11:19 14:11 28:7 29:16 32:8 | |
| services(6) 1:45 27:5 35:2 37:14 37:15 | | soon(2) 42:4 57:2 | | submit(1) 11:7 | | 32:8 33:12 36:10 37:19 46:8 46:9 46:16 | |
| 38:24 | | sooner(1) 66:16 | | submitted(1) 62:2 | | 47:11 48:22 49:3 51:4 52:1 51:4 52:11 59:25 | |
| | | sorry(2) 9:1 23:12 | | subscribers(3) 25:9 25:18 25:19 | | 60:9 65:14 | |
| set(8) 46:23 47:16 47:18 48:24 59:11 64:9 | | sort(4) 16:8 28:5 57:11 62:4 | | subsequent(2) 47:5 57:14 | | | |
| 65:20 65:23 | | sorts(1) 53:16 | | subsidiaries(1) 9:21 | | thank(32) 9:12 11:10 13:23 13:24 16:2 | |
| | | sottile(1) 2:33 | | substantial(3) 16:15 39:22 39:22 | | 16:3 20:6 22:24 23:15 23:18 23:22 31:20 | |
| setting(1) 60:3 | | sound(2) 1:51 69:3 | | substantially(2) 47:10 51:4 | | 35:23 44:5 44:12 44:18 44:23 51:20 52:2 | |
| seven(1) 28:1 | | soundly(1) 51:12 | | success(2) 33:23 53:25 | | 55:16 55:17 57:7 57:8 57:15 57:16 57:22 | |
| seventeen(1) 31:5 | | sounds(1) 58:14 | | successes(1) 54:9 | | 59:2 59:3 61:2 67:2 68:13 68:19 | |
| several(5) 26:16 28:12 47:13 59:6 67:7 | | source(1) 35:22 | | successful(2) 33:17 53:13 | | | |
| shachar(1) 4:44 | | sources(1) 34:15 | | such(6) 9:8 16:24 22:13 58:9 60:7 60:8 | | that(301) 8:13 8:13 8:16 8:16 8:19 8:23 | |
| shades(1) 63:19 | | south(1) 1:30 | | suffice(2) 22:22 65:12 | | 9:3 9:5 9:8 9:10 9:25 10:3 10:7 10:8 10:9 | |
| shamah(1) 4:18 | | spaeder(1) 2:37 | | suggested(2) 17:25 65:18 | | 10:10 10:13 10:14 10:16 10:18 10:18 | |
| share(3) 19:19 43:18 55:22 | | speak(1) 11:24 | | suite(5) 1:38 2:19 2:35 3:12 3:31 | | 10:22 10:23 10:23 10:24 10:24 11:7 11:9 | |
| shareholder(1) 41:10 | | speaking(1) 15:18 | | summarize(1) 44:5 | | 12:3 12:8 12:10 12:12 12:15 12:25 12:25 | |
| shareholders(1) 34:4 | | special(1) 6:27 | | summarizes(1) 47:21 | | 13:2 13:2 13:2 13:3 13:8 13:21 14:7 14:9 | |
| sheet(1) 30:11 | | specialized(1) 45:13 | | summary(4) 46:24 46:24 | | 14:10 14:13 14:25 15:2 15:6 15:7 15:14 | |
| shift(1) 16:10 | | specific(3) 22:9 28:23 42:20 | | supplemental(1) 50:17 | | 15:19 15:24 16:21 16:22 16:23 17:1 17:2 | |
| shifts(1) 10:13 | | specifically(3) 45:14 47:17 68:6 | | support(4) 8:12 16:22 51:16 59:21 | | 17:15 17:18 17:19 18:5 18:16 18:16 18:16 | |
| short(2) 34:2 52:13 | | specifics(1) 40:15 | | sure(11) 10:18 17:19 21:13 34:19 36:24 | | 18:20 18:21 19:2 19:3 19:5 19:6 19:21 | |
| shortly(3) 14:15 52:4 61:12 | | spelling(1) 23:11 | | 41:1 58:5 64:6 64:11 66:5 68:17 | | 19:23 20:13 20:15 20:16 20:18 20:22 | |
| should(19) 8:23 11:3 12:16 13:1 15:1 | | spot(1) 35:16 35:17 | | | | 20:25 21:3 21:5 21:5 21:8 21:13 21:16 | |
| 16:23 18:14 31:13 41:14 41:14 42:5 50:8 58:16 | | spread(1) 26:24 | | survey(2) 17:12 18:4 | | 21:23 22:2 22:2 22:5 22:7 22:10 22:14 22:14 | |
| 58:21 59:9 59:11 59:15 60:24 62:25 63:23 | | square(1) 15:23 | | sustained(1) 22:1 | | 22:19 24:3 24:4 24:6 24:14 24:25 25:16 | |
| | | staff(2) 37:7 60:22 | | sworn(1) 23:3 | | 25:16 25:21 26:4 26:5 26:6 26:23 27:4 | |
| show(4) 35:17 36:4 36:10 38:19 | | stakeholders(1) 43:1 | | sympathize(1) 18:22 | | 27:9 27:12 27:16 27:21 27:25 28:3 28:4 | |
| shows(1) 30:14 | | stand(2) 22:25 57:11 | | t-6(1) 37:4 | | 28:8 28:14 28:14 28:15 28:19 28:19 28:20 | |
| sic(1) 29:9 | | standard(4) 58:15 59:8 59:11 59:12 | | tab(6) 30:1 46:19 47:16 48:16 50:3 50:4 | | 31:13 32:11 32:15 32:16 32:21 32:23 | |
| side(11) 32:2 32:3 32:23 33:1 33:2 34:14 | | standards(1) 58:8 | | 50:16 50:17 | | 33:10 33:16 33:17 33:24 34:1 34:5 34:6 | |
| 35:7 37:24 38:20 64:18 64:25 | | standing(1) 23:1 | | | | 34:7 34:12 34:13 34:15 34:19 34:25 35:5 | |
| | | standpoint(4) 28:6 38:1 39:18 58:7 | | tabak(1) 5:46 | | 35:14 35:18 35:18 35:20 36:2 36:2 36:4 | |
| sidley(2) 1:25 4:8 | | stands(1) 12:13 | | table(1) 63:9 | | 36:11 36:12 36:13 36:13 36:24 37:3 37:7 | |
| siegel(1) 4:23 | | stanley(1) 5:4 | | take(20) 13:6 19:5 20:4 21:5 24:10 27:12 | | 37:10 37:14 37:14 37:17 37:20 37:20 | |
| sign(2) 11:4 11:9 | | stargatt(1) 3:19 | | 28:4 28:7 29:23 30:4 36:15 38:3 39:19 | | 37:23 37:24 38:1 38:7 38:9 38:10 38:13 | |
| signed(2) 8:23 60:23 | | start(9) 11:17 37:12 51:25 59:8 61:21 | | 42:10 44:8 53:4 55:24 65:25 67:1 68:14 | | 38:16 38:19 39:2 39:2 39:8 39:9 39:13 | |
| significant(2) 14:6 20:18 | | 62:2 62:8 62:10 63:24 | | | | 39:14 39:15 39:17 39:22 39:23 40:11 | |
| significantly(1) 45:24 | | | | taken(7) 14:8 16:23 20:8 39:20 44:14 53:8 | | 40:12 40:17 41:5 41:7 41:11 41:15 | |
| silverstein(1) 2:46 | | started(2) 35:20 62:16 | | 54:5 | | 41:15 41:15 41:21 41:23 42:6 42:10 42:13 | |
| simes(1) 5:9 | | starting(3) 30:19 48:20 62:20 | | | | 42:18 42:21 42:23 42:24 42:25 43:1 43:1 | |
| similar(1) 40:5 | | starts(1) 34:19 | | taking(2) 53:13 60:22 | | 43:10 43:14 43:14 43:16 43:24 44:1 | |
| simple(1) 60:6 | | state(4) 22:10 23:10 25:5 40:11 | | talented(1) 32:21 | | 43:24 44:1 44:2 44:10 44:10 45:2 45:13 | |
| simply(4) 10:21 12:25 15:8 62:10 | | stated(3) 10:21 14:4 52:20 | | talk(4) 14:20 38:14 39:25 40:2 | | 45:23 46:1 46:10 46:15 46:21 47:1 47:1 | |
| since(11) 10:5 11:15 11:20 13:8 14:15 | | statement(2) 22:16 43:13 67:13 | | talking(1) 39:17 | | 47:8 47:9 47:20 48:6 48:8 48:9 48:11 | |
| 24:14 25:18 34:6 45:7 52:3 64:17 | | statements(3) 40:25 41:1 61:13 | | target(12) 38:16 48:2 48:12 48:14 48:22 | | 49:6 49:17 49:23 50:4 50:9 50:13 51:11 | |
| | | states(5) 1:1 1:21 16:5 37:17 57:10 | | 49:10 49:11 49:16 49:22 50:7 50:10 51:2 | | 51:13 51:13 52:5 52:7 52:11 52:16 52:17 | |
| single(2) 39:8 66:19 | | station(3) 19:21 27:21 35:11 | | | | 52:20 52:23 53:5 53:8 53:12 53:15 53:16 | |
| sir(1) 44:18 | | stations(5) 26:24 27:6 28:2 37:10 53:23 | | targets(7) 29:20 47:2 47:8 47:9 47:25 | | 54:4 54:5 54:11 54:22 54:23 54:25 55:1 | |
| sirius(1) 26:19 | | status(3) 10:15 10:18 12:19 | | 59:25 60:3 | | 55:1 55:4 55:5 55:8 55:8 55:9 55:9 55:12 | |
| sit(1) 33:2 | | statutes(1) 58:15 | | | | 55:21 55:22 56:1 56:2 56:2 56:7 56:11 | |
| sites(1) 32:17 | | statutory(1) 9:21 | | task(2) 39:5 39:8 | | 56:13 56:13 56:14 56:15 56:16 56:16 56:22 | |
| sits(1) 56:20 | | stay(3) 25:25 44:18 61:18 | | taylor(1) 31:9 | | 56:23 57:11 57:13 57:19 57:19 57:20 | |
| sitting(1) 38:4 | | stayed(2) 15:21 26:2 | | team(5) 25:23 34:1 51:1 51:5 64:21 | | 57:21 57:21 58:2 58:8 58:10 58:10 58:13 | |
| situation(1) 15:11 | | stein(1) 5:43 | | tech(1) 24:24 | | 58:15 58:18 58:20 58:21 59:6 | |
| situations(1) 41:9 | | stellar(4) 29:11 33:25 34:16 53:22 | | teed(1) 65:10 | | | |
| six(2) 27:3 31:4 | | step(1) 3:42 | | telephonic(3) 3:53 5:1 6:1 | | | |
| sixteen(2) 36:20 36:20 | | stephanie(1) 69:8 | | television(8) 25:10 26:24 32:20 33:1 33:13 | | | |
| skewed(1) 32:23 | | stepped(1) 40:23 | | 35:8 35:10 37:9 | | | |
| small(1) 27:1 | | stickles(1) 1:36 | | | | | |
| smaller(3) 27:3 37:4 39:3 | | still(9) 12:13 18:24 33:3 37:20 38:4 58:3 | | | | | |
| social(1) 32:17 | | 58:21 64:4 64:5 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that(74)** 59:10 59:11 59:13 59:14 59:15 59:21 59:25 60:3 60:8 60:15 60:16 60:19 60:22 61:12 61:13 61:15 61:18 61:25 62:2 62:5 62:9 62:9 62:14 62:18 62:25 63:1 63:11 63:13 63:17 63:20 63:22 63:24 64:20 64:21 64:22 64:23 64:24 65:2 65:9 65:9 65:10 65:12 65:13 65:15 65:18 65:25 65:25 66:6 66:8 66:10 66:21 66:24 67:4 67:5 67:11 67:14 67:14 67:16 67:17 67:17 67:18 67:22 67:24 67:25 67:25 68:2 68:6 68:8 68:10 68:15 69:2

**that's(45)** 9:4 10:1 10:9 11:1 11:13 12:18 13:22 15:13 15:21 15:25 17:20 19:8 21:18 21:24 23:13 27:11 27:15 29:15 30:1 31:4 33:19 38:18 38:18 38:23 39:2 39:8 41:5 46:1 48:24 54:3 56:7 57:5 58:3 58:13 59:1 59:7 59:19 59:24 60:14 63:6 63:7 64:24 65:4 68:6 68:10

**thau(1)** 5:46

**the(301)** 1:1 1:2 1:20 2:16 3:10 3:21 3:38 4:30 6:27 7:3 8:2 8:3 8:4 8:5 8:5 8:9 8:9 8:10 8:10 8:10 8:10 8:11 8:12 8:13 8:14 8:14 8:15 8:16 8:18 8:23 8:24 9:1 9:2 9:2 9:4 9:5 9:6 9:7 9:7 9:7 9:10 9:14 9:14 9:15 9:18 9:18 9:19 9:19 9:20 9:21 9:23 10:2 10:2 10:4 10:5 10:9 10:10 10:11 10:13 10:17 10:17 10:20 10:22 10:23 10:23 11:2 11:5 11:9 11:11 11:11 11:14 11:15 11:15 11:18 11:19 11:20 11:20 11:22 11:23 11:25 12:1 12:3 12:4 12:6 12:6 12:7 12:7 12:7 12:8 12:10 12:10 12:10 12:11 12:17 12:18 12:20 12:21 12:24 12:25 13:2 13:4 13:6 13:9 13:10 13:18 13:22 13:22 14:1 14:3 14:3 14:4 14:4 14:5 14:5 14:8 14:9 14:9 14:10 14:14 14:15 14:15 14:16 14:16 14:16 14:17 14:18 14:20 14:24 14:25 15:2 15:4 15:5 15:6 15:8 15:9 15:12 15:13 15:23 15:24 16:2 16:2 16:5 16:6 16:6 16:7 16:9 16:10 16:12 16:14 16:15 16:16 16:20 16:21 16:24 17:1 17:1 17:2 17:4 17:4 17:7 17:10 17:10 17:11 17:15 17:16 17:16 17:18 17:18 17:19 17:20 17:21 17:21 17:22 17:24 17:25 18:1 18:2 18:2 18:4 18:4 18:6 18:9 18:11 18:12 18:13 18:14 18:15 18:18 18:19 18:20 18:21 18:22 18:22 18:24 18:25 19:1 19:2 19:2 19:3 19:4 19:4 19:11 19:11 19:12 19:16 19:17 19:18 19:19 19:21 19:22 19:25 19:25 20:1 20:1 20:4 20:7 20:9 20:11 20:11 20:11 20:12 20:13 20:14 20:14 20:15 20:16 20:16 20:18 20:19 20:19 20:21 20:23 20:24 20:25 21:3 21:4 21:4 21:6 21:11 21:16 21:16 21:18 21:21 21:24 21:25 21:25 22:1 22:4 22:4 22:5 22:6 22:9 22:10 22:12 22:12 22:13 22:14 22:15 22:18 22:23 22:25 23:1 23:2 23:4 23:8 23:9 23:10 23:10 23:13 23:15 23:16 23:24 23:24 24:1 24:1 24:2 24:2 24:8 24:10 24:11 24:14 24:14 24:19 24:20 25:1 25:2 25:4 25:5 25:6 25:7 25:8 25:12

**the(301)** 25:12 25:14 25:22 25:25 26:1 26:2 26:3 26:10 26:17 26:17 26:18 26:20 26:21 26:21 26:25 27:2 27:3 27:5 27:6 27:7 27:12 27:16 27:19 27:19 27:20 27:20 27:22 27:24 27:25 27:25 28:1 28:2 28:3 28:4 28:8 28:9 28:9 28:11 28:13 28:16 28:18 28:18 28:20 28:21 28:22 28:23 28:25 29:1 29:2 29:4 29:5 29:5 29:6 29:12 29:13 29:16 29:17 29:20 30:1 30:1 30:1 30:11 30:12 30:13 30:15 30:15 30:15 30:16 30:16 30:17 30:19 30:19 30:20 30:21 30:22 30:23 30:23 30:25 31:1 31:1 31:2 31:5 31:6 31:7 31:8 31:9 31:10 31:11 31:14 31:15 31:16 31:22 32:2 32:4 32:4 32:5 32:7 32:8 32:10 32:13 32:19 32:19 32:23 32:24 32:25 33:1 33:5 33:9 33:11 33:13 33:14 33:15 33:18 33:18 33:19 33:19 33:21 33:22 33:24 33:25 33:25 34:1 34:6 34:11 34:12 34:13 34:19 34:20 34:23 34:24 34:25 34:5 34:9 35:10 35:13 35:15 35:17 35:18 35:19 36:3 36:6 36:12 36:13 36:14 36:18 36:23 36:25 37:4 37:4 37:5 37:9 37:9 37:15 37:16 37:17 37:19 37:19 37:20 37:22 37:23 37:24 37:24 38:2 38:6 38:7 38:10 38:12 38:12 38:14 38:14 38:16 38:19 38:20 38:20 39:1 39:16 39:21 39:25 40:1 40:1 40:3 40:3 40:4 40:4 40:5 40:7 40:7 40:11 40:11 40:12 40:14 40:14 40:15 40:15 40:16 40:16 40:17 40:17 40:19 40:19 40:22 40:25 41:1 41:1 41:2 41:3 41:4 41:5 41:8 41:12 41:14 41:22 41:24 41:25 42:1 42:2 42:3 42:7 42:8 42:9 42:10 42:10 42:10 42:13 42:13 42:14 42:15 42:16 42:16 43:6 43:13 43:14 43:21 43:23 43:24 43:25 44:2 44:2 44:3 44:8 44:13 44:15 44:16 44:20 44:21 44:22 44:25 45:1 45:3 45:5 45:8 45:9 45:11 45:12 45:18 45:19 45:20 45:21 45:21 46:1 46:14 46:15 46:15 46:16 46:17 46:19 46:21 46:22 46:23 46:25 47:2 47:3 47:4 47:5 47:6 47:7 47:8 47:9 47:9 47:11 47:12 47:17 47:18 47:22 47:22 47:23

**the(301)** 47:24 47:25 47:25 48:1 48:3 48:4 48:8 48:8 48:10 48:11 48:11 48:12 48:12 48:13 48:13 48:15 48:15 48:16 48:17 48:18 48:18 48:19 48:20 48:20 48:21 48:23 48:24 48:24 48:25 49:3 49:9 49:9 49:11 49:14 49:18 49:23 49:24 50:1 50:3 50:5 50:5 50:6 50:7 50:8 50:9 50:9 50:10 50:12 50:12 50:16 50:18 50:19 50:20 50:22 50:23 50:24 50:25 51:1 51:2 51:4 51:5 51:6 51:7 51:7 51:8 51:9 51:10 51:11 51:14 51:16 51:18 51:20 51:23 51:25 52:7 52:8 52:11 52:13 52:14 52:16 52:23 53:4 53:8 53:12 53:17 53:21 53:21 54:7 54:7 54:7 54:8 54:8 54:10 54:11 54:13 54:15 54:15 54:16 54:17 54:17 54:20 54:21 54:23 54:24 54:25 55:2 55:3 55:4 55:5 55:5 55:6 55:7 55:8 55:14 55:14 55:16 55:18 55:22 55:24 56:1 56:1 56:2 56:3 56:3 56:5 56:6 56:8 56:9 56:9 56:10 56:11 56:12 56:12 56:13 56:14 56:15 56:15 56:16 56:24 56:25 56:25 57:2 57:4 57:8 57:10 57:11 57:12 57:12 57:13 57:14 57:15 57:16 57:18 57:19 57:19 57:22 57:22 57:24 57:25 58:1 58:7 58:8 58:8 58:9 58:11 58:14 58:14 58:16 58:19 58:19 58:20 59:1 59:2 59:4 59:7 59:8 59:8 59:11 59:12 59:13 59:14 59:19 59:19 59:20 59:20 59:20 59:22 59:22 59:24 59:25 59:25 60:2 60:2 60:3 60:4 60:7 60:9 60:10 60:11 60:11 60:14 60:15 60:16 60:17 60:21 61:3 61:9 61:10 61:11 61:12 61:23 61:24 61:25 62:1 62:2 62:4 62:6 62:8 62:10 62:10 62:11 62:12 62:13 62:13 62:14 62:15 62:16 62:17 62:18 62:19 62:21 62:22 62:23 62:23 62:24 63:1 63:2 63:3 63:3 63:5 63:9 63:9 63:9 63:10 63:10 63:14 63:17 63:19 63:20 63:21 63:22 64:2 64:3 64:4 64:5 64:7 64:8 64:9 64:10 64:13 64:16 64:19 64:22 64:23 65:7 65:7 65:8 65:9 65:16 65:16 65:18 65:20 65:21 65:23 66:2 66:7 66:7 66:8 66:9 66:9 66:10 66:11

**the(35)** 66:12 66:15 66:15 66:16 66:16 66:16 66:18 66:22 66:23 67:1 67:2 67:3 67:9 67:9 67:11 67:12 67:14 67:15 67:18 67:21 67:21 67:22 67:23 67:24 68:1 68:1 68:7 68:11 68:13 68:15 68:21 69:2 69:3 69:3 69:4

**their(35)** 12:5 12:5 15:1 15:19 16:12 20:16 21:19 33:3 33:6 36:11 37:6 37:6 38:22 38:22 40:20 41:16 41:17 46:6 46:7 46:7 46:12 48:23 49:4 49:9 49:12 49:19 49:20 49:21 50:20 52:12 54:1 54:3 54:9 63:6 66:11

**them(18)** 12:19 14:21 14:22 15:19 15:20 15:22 19:12 19:12 23:7 32:22 37:7 37:11 42:12 53:4 53:12 54:13 55:3 60:12 60:20

**theme(1)** 35:24

**themselves(1)** 53:6

**then(35)** 11:7 12:1 15:18 17:9 18:2 18:4 19:1 20:2 20:4 25:3 25:14 27:4 27:7 27:9 27:9 27:25 30:17 30:20 30:23 30:24 32:24 36:11 36:17 37:3 37:10 37:24 40:9 44:9 51:25 54:4 58:2 58:25 65:22 67:16

**there(48)** 8:13 8:25 9:3 9:22 11:22 14:20 17:5 17:6 17:13 17:23 17:25 18:24 19:4 19:12 19:14 19:15 22:8 25:23 26:24 28:4 28:14 28:14 30:6 30:21 31:15 35:8 35:11 36:14 36:15 40:7 40:8 40:9 40:9 42:4 42:5 42:14 43:12 43:25 44:18 57:5 61:3 61:22 64:1 64:18 65:15 67:14 67:23 67:25

**there's(13)** 10:12 10:14 28:7 28:16 33:11 52:25 54:4 54:4 56:6 56:7 56:11 60:6 63:11 67:18

**thereafter(1)** 61:12

**therefore(1)** 67:1

**these(27)** 10:11 12:15 12:15 14:22 15:1 15:16 33:16 33:20 36:19 36:19 41:3 41:3 41:15 42:11 42:20 43:16 43:22 45:2 52:22 53:9 53:11 53:18 53:25 54:9 59:10 60:13 62:22

**they(36)** 9:22 17:7 18:4 18:5 19:9 33:2 33:3 33:3 33:4 33:17 36:12 37:13 38:7 38:7 43:25 46:9 46:16 47:11 48:22 48:24 49:20 49:21 51:2 52:22 53:3 53:10 53:14 54:10 54:11 58:4 60:2 60:9 63:4 64:23 65:22 67:7

**they'd(1)** 50:21

**they're(9)** 13:11 13:11 13:16 13:18 22:2 20:21 46:10 52:25 60:11

**they've(5)** 33:17 34:10 53:8 53:11 54:5

**thing(4)** 15:18 37:22 44:2 54:21

**things(12)** 14:19 26:12 34:10 35:7 38:15 41:5 42:6 53:5 60:7 66:19 66:22 68:5

**think(55)** 10:10 10:21 12:3 12:17 15:12 15:15 15:18 16:21 18:1 19:8 20:13 20:14 21:24 22:14 22:17 23:5 28:7 29:9 29:10 32:10 33:9 33:10 33:25 40:25 41:10 41:12 41:13 41:22 42:16 42:25 43:12 52:13 53:10 53:11 54:2 55:21 56:10 56:18 57:3 58:17 58:25 59:1 60:4 60:7 61:22 63:3 63:7 63:16 63:21 64:19 64:22 64:24 65:2 65:9 66:18

**thinking(1)** 63:23

**third(4)** 14:3 16:7 30:13 40:20

**this(105)** 10:7 10:11 10:12 10:18 10:22 11:17 13:8 13:12 13:16 14:5 14:7 14:8 14:10 14:25 15:2 15:5 15:12 16:6 16:14 16:25 17:4 18:11 18:13 18:23 19:24 20:23 22:24 27:9 27:23 28:6 28:12 29:10 30:7 30:10 31:13 31:22 32:6 32:25 33:15 33:22 34:4 34:9 34:16 36:2 36:16 36:21 38:5 39:19 40:22 41:21 41:15 41:18 41:19 42:11 42:23 43:23 44:6 44:19 45:2 45:17 46:3 46:13 46:22 47:4 47:15 48:16 49:5 49:10 49:19 50:5 50:8 51:22 52:6 52:10 52:18 54:12 54:19 55:2 55:9 55:21 55:25 56:2 56:5 56:9 56:16 56:22 56:24 59:7 59:10 59:17 60:16 61:6 65:6 65:18 66:13 68:1 68:3 68:19

**thomas(2)** 2:27 2:40

**those(38)** 9:6 10:3 11:17 12:9 12:17 13:8 14:19 16:17 16:23 22:1 22:10 26:12 30:14 30:24 33:8 34:18 35:1 37:5 37:10 37:11 37:12 39:7 41:9 42:23 43:18 46:5 47:8 48:2 48:3 52:9 53:2 53:3 53:16 53:19 54:18 55:10 60:19 68:4

**though(1)** 26:14

**thought(4)** 11:17 18:16 32:3 58:24

**thoughtful(1)** 15:3

**thoughts(1)** 66:15

**three(11)** 17:5 17:7 24:8 26:23 30:17 31:8 31:8 31:9 40:7 55:22 63:8

**threshold(7)** 48:2 48:7 48:20 48:22 49:2 49:13 50:25

**through(12)** 22:21 32:5 34:6 35:24 36:12 37:1 38:15 38:22 43:4 46:25 52:22 63:17

**throw(1)** 21:8

**tie(1)** 36:11

**time(29)** 9:9 13:17 14:15 18:23 19:25 20:23 22:25 26:1 26:4 26:5 35:17 42:10 43:14 44:6 44:19 52:7 55:21 58:20 58:20 63:3 64:21 65:19 65:20 65:23 66:21 66:24 67:15 67:23 68:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| times(8) 24:1 24:11 27:3 27:25 28:1 28:21 36:14 41:23 | | ultimate(1) 67:1 | | was(52) 8:15 8:25 9:9 16:13 19:21 19:24 25:6 25:12 25:14 25:16 25:22 27:17 27:24 28:14 28:20 29:5 32:12 33:22 34:2 34:4 35:20 36:16 37:23 39:5 39:22 39:24 43:1 45:19 46:21 47:2 47:12 48:10 48:25 49:6 52:7 53:15 53:16 56:19 58:20 58:25 60:1 60:17 62:1 62:2 62:10 64:4 64:23 66:4 66:5 66:24 67:10 68:21 | | whereas(2) 48:12 51:3 |

times(8) 24:1 24:11 27:3 27:25 28:1 28:21 36:14 41:23

timing(1) 56:25

to-day(1) 24:9

today(26) 11:9 14:19 22:11 25:8 26:11 26:21 27:18 33:21 42:22 42:24 42:24 44:4 52:17 52:17 55:5 55:5 55:9 56:19 58:21 60:16 60:23 61:4 62:21 66:7 66:16 68:14

today's(1) 57:2

together(2) 21:3 61:7

tolling(4) 8:24 9:14 9:20 10:11

tomorrow(1) 60:21

too(1) 55:8

took(8) 22:5 22:7 25:15 25:23 37:23 54:15 61:21 61:23

tool(1) 14:5

top(9) 17:8 17:11 17:14 17:25 18:25 30:19 33:7 34:24 46:12

topic(2) 15:12 62:5

torres(1) 5:41

total(6) 17:13 30:21 32:12 46:7 46:13

tougher(2) 47:11 54:17

toward(1) 68:16

towards(1) 27:19

track(1) 61:18

trained(1) 33:22

training(1) 33:5

transaction(1) 26:2

transactions(1) 15:24

transcript(3) 1:19 1:51 69:3

transcription(2) 1:45 1:52

transform(2) 41:3 53:5

transition(2) 34:5 34:5

transpired(1) 11:19

travel(1) 36:4

trehan(1) 5:10

triad(1) 40:12

trial(2) 64:7 65:21

trib(2) 24:20 25:2

tribune(26) 1:9 2:4 2:11 4:1 23:24 23:25 24:9 26:23 27:3 27:13 28:18 28:19 30:10 33:11 37:13 37:13 38:9 40:4 42:1 42:21 43:24 44:4 45:19 45:21 49:15 54:25 64:8

tribune's(2) 26:22 49:25

tribune-wide(1) 39:20

trick(1) 55:20

tried(2) 63:9 63:12

trust(3) 4:21 5:41 6:21

trustee(14) 3:10 3:10 8:14 12:3 12:21 16:5 17:12 17:15 17:16 17:16 18:6 18:13 18:14 19:3 57:10

try(2) 21:11 37:7

trying(3) 29:1 43:22 58:6

tucked(1) 62:13

tuesday(1) 36:5

tunnell(1) 3:42

turmoil(1) 34:6

turn(2) 37:2 47:18

turning(1) 42:7

twelve-and-a-hall(1) 25:17

two(24) 14:4 19:6 24:4 24:20 32:6 35:11 39:6 39:21 40:12 42:20 42:20 48:1 55:22 61:8 63:3 63:12 63:18 64:8 64:9 65:13 65:18 65:24 66:15 66:25

type(3) 33:19 35:15 38:9

types(5) 32:19 33:5 35:19 38:12 68:5

typical(1) 48:6

typically(2) 48:25 49:19

u.s(12) 3:10 3:10 8:14 12:3 12:21 17:2 17:15 17:16 18:6 18:13 18:14 19:3

ucc(2) 12:10 54:16

ultimate(1) 67:1

ultimately(1) 65:23

unable(1) 17:10

uncertainty(1) 42:15

under(9) 9:8 9:23 13:4 46:5 47:12 49:24 59:9 60:4 60:10

undergraduate(1) 24:22

underlying(1) 44:3

understand(8) 8:13 12:5 17:4 17:8 27:8 43:15 52:8 67:3

understandable(1) 58:3

understanding(3) 12:18 29:16 68:15

understood(1) 22:12

unfortunate(1) 15:11

unfortunately(1) 14:25

unhappy(1) 58:2

unit(3) 25:14 29:20 34:11

united(5) 1:1 1:21 16:5 37:17 57:10

units(4) 28:10 28:19 28:21 30:24

unprecedented(1) 52:25

unredacted(1) 8:10

unresolved(1) 67:12

unsecured(6) 8:14 12:4 14:2 20:12 47:6 55:19

until(2) 19:24 54:11

unusual(1) 59:16

updated(2) 50:4 51:9

upon(2) 31:7 60:25

usage(1) 44:10

using(2) 23:6 52:5

vail(1) 6:41

valuable(1) 14:5

valuation(1) 15:20

value(13) 10:12 14:11 15:20 34:3 41:25 42:25 44:4 56:4 56:11 56:13 56:15 57:3 57:4

various(10) 10:6 10:13 10:14 16:20 18:19 32:10 36:12 37:9 37:15 39:3

versions(1) 9:5

versus(2) 30:15 55:3

very(24) 12:8 14:4 14:6 18:11 25:12 32:17 33:12 38:6 39:5 40:5 41:7 43:22 44:18 48:9 52:21 52:21 54:19 54:19 55:25 56:22 57:3 57:3 57:10 68:19

vetted(2) 28:10 62:9

vice(1) 26:2

videographers(1) 38:8

view(9) 17:16 22:13 41:2 43:6 43:23 56:1 56:14 59:7 59:15

viewed(1) 59:9

views(1) 14:3

vigilance(1) 59:16

virtually(1) 41:8

visitors(1) 36:3

vital(1) 32:19

voice(1) 15:14

wacker(1) 2:6

waiving(1) 9:22

wall(1) 39:1

want(14) 9:16 41:1 41:6 41:10 43:17 44:8 52:9 53:12 55:19 57:24 64:16 65:17 66:23

wanted(3) 54:21 57:18 67:9

wanting(1) 10:15

wants(1) 4:11

war(1) 25:6

wardwell(1) 4:47

wares(1) 36:11

was(52) 8:15 8:25 9:9 16:13 19:21 19:24 25:6 25:12 25:14 25:16 25:22 27:17 27:24 28:14 28:20 29:5 32:12 33:22 34:2 34:4 35:20 36:16 37:23 39:5 39:22 39:24 43:1 45:19 46:21 47:2 47:12 48:10 48:25 49:6 52:7 53:15 53:16 56:19 58:20 58:25 60:1 60:17 62:1 62:2 62:10 64:4 64:23 66:4 66:5 66:24 67:10 68:21

washington(2) 2:36 37:1

wasn't(3) 41:4 43:18 52:23

way(18) 10:22 12:9 16:13 21:8 33:12 33:12 37:6 38:6 41:16 42:2 52:13 54:19 55:12 56:15 58:11 65:7 66:22 68:9

ways(1) 59:6

we'd(2) 44:25 60:19

we'll(12) 20:4 26:5 26:11 28:23 40:15 44:9 51:25 52:5 61:1 61:13 63:25 68:17

we're(26) 10:5 10:15 10:19 11:11 14:19 15:21 16:7 21:1 21:2 27:12 29:5 29:8 29:10 31:10 32:16 34:20 37:16 38:18 40:11 40:12 54:12 57:14 61:7 62:18 66:6 66:9

we've(6) 16:10 16:15 34:6 41:9 52:11 68:2

web(1) 34:25

websites(3) 35:1 37:6 37:9

wednesday(1) 8:1

week(3) 64:3 66:19 66:21

weekend(2) 36:3 36:5

weeklong(1) 64:7

weeks(12) 24:4 24:12 32:6 63:12 63:18 64:8 64:9 64:10 65:13 65:18 65:24 66:25

weigh(2) 9:10 66:12

weighed(1) 16:21

weil(1) 5:4

weiss(1) 4:35

weitman(1) 4:10

well(40) 8:5 9:19 11:16 11:21 12:20 13:6 13:22 23:7 27:18 29:4 31:4 33:6 33:8 33:16 34:11 38:21 39:3 39:13 40:1 41:1 41:13 43:6 43:9 43:17 48:19 50:10 50:15 51:25 52:4 54:1 56:23 58:2 58:10 59:6 63:16 63:19 64:10 65:20 67:21 68:7

wellness(1) 38:13

wells(3) 3:27 6:33

went(7) 28:14 28:20 35:11 36:19 47:25 48:3 48:4

were(20) 8:12 16:20 22:8 28:14 28:15 32:16 32:16 32:23 40:22 46:3 47:10 47:1 47:14 50:16 56:2 58:2 58:4 64:9 67:7 67:8

weren't(1) 43:13

west(2) 1:37 3:22

wharton(1) 4:35

what(59) 8:15 9:4 9:9 10:12 10:19 11:18 13:22 18:5 18:11 18:17 19:20 20:2 20:3 21:11 24:6 24:21 24:25 25:14 26:11 28:13 29:10 30:9 32:3 32:4 32:7 33:9 33:17 33:22 38:2 38:3 38:18 40:2 41:2 41:6 41:8 41:11 43:17 43:24 44:4 46:2 49:6 52:7 52:8 52:19 54:12 54:22 56:25 58:5 66:5 67:3 68:1 68:16

what's(4) 50:24 52:10 53:3 64:3

whatever(4) 18:2 21:1 35:3 67:2

when(21) 15:20 16:17 20:3 24:17 25:3 25:13 25:18 25:19 30:5 32:23 33:15 39:14 62:18 62:21 63:1 63:24 64:1 66:9 67:7 67:18 68:17

where(18) 16:8 23:23 28:3 28:10 28:11 34:3 35:8 35:18 36:2 41:9 41:13 50:20 53:16 56:8 58:22 63:25 68:10 68:16

whereas(2) 48:12 51:3

whereupon(1) 68:21

wherever(1) 35:2

whether(16) 12:13 12:15 13:10 13:16 14:20 42:15 58:16 59:8 62:22 62:23 62:25 63:1 63:22 63:23 65:23 67:13

which(33) 8:12 9:6 9:24 17:8 17:25 18:14 18:17 18:19 22:1 25:4 25:12 25:21 25:22 26:24 29:16 29:24 31:23 33:12 33:24 35:13 37:2 39:5 39:10 42:5 46:19 47:23 49:17 50:24 53:22 54:16 59:20 61:24 67:22

while(3) 20:15 58:13 61:7

white(3) 3:36 6:33 12:24

whittman(1) 5:50

who(21) 10:3 11:17 12:7 13:8 13:9 14:17 15:6 15:9 17:6 19:12 20:15 20:17 20:24 21:17 33:20 44:20 52:4 54:20 55:10 56:20 58:24

whole(2) 14:4 65:23

why(3) 56:5 56:6 59:15

will(42) 10:8 11:3 11:7 12:5 12:14 16:24 19:24 19:25 20:3 20:23 21:6 26:8 28:5 31:2 33:18 34:15 35:21 36:10 36:23 39:10 40:8 41:14 42:15 42:16 44:1 44:20 45:5 52:17 55:4 56:15 56:21 59:12 60:13 60:16 61:13 62:22 63:17 65:25 66:8 68:2

willing(1) 10:24

wilmington(11) 1:13 1:39 2:21 2:42 2:50 3:14 3:24 3:33 3:47 4:21 8:1

wine(2) 36:1 36:8

wire(1) 37:15

wires(1) 6:4

wise(2) 21:24 22:14

wish(7) 8:18 9:10 44:16 51:14 51:21 51:24 60:23

with(140) 8:15 8:19 8:24 9:6 9:9 11:15 11:18 12:6 12:19 13:3 13:4 14:14 14:24 15:12 15:19 15:23 16:12 16:15 16:16 16:25 18:22 19:6 20:4 20:12 20:20 20:22 20:24 21:1 21:2 21:3 21:4 21:5 21:7 21:8 22:8 22:9 22:19 22:22 23:7 23:14 24:2 24:8 24:20 27:2 27:12 27:18 28:24 29:6 29:13 29:19 29:20 31:24 32:7 32:10 32:12 32:20 33:9 34:19 36:18 39:16 40:6 40:12 40:14 41:13 41:24 42:13 42:22 43:9 43:11 43:13 44:9 44:20 45:1 45:3 45:7 45:14 45:16 46:10 46:12 46:14 46:18 47:2 47:6 47:15 48:10 48:20 49:6 49:8 49:14 49:18 50:1 50:11 50:12 50:23 51:9 51:13 51:22 52:2 53:13 54:7 54:8 54:9 54:16 54:19 54:21 54:23 55:11 55:12 55:22 56:1 56:19 57:12 57:19 57:20 57:21 58:22 58:23 58:24 59:4 59:8 60:6 60:15 60:21 61:9 62:1 62:9 62:12 62:14 62:24 63:1 63:8 63:22 64:19 64:24 64:25 65:3 65:16 66:21 67:4

withdrawing(1) 21:16

within(10) 19:4 25:7 25:13 28:17 28:18 28:19 47:3 50:15 58:14 60:11

without(11) 9:22 10:24 15:17 20:23 21:19 23:8 31:17 41:7 46:13 50:18 62:14

witness(6) 22:21 23:3 23:13 43:6 45:16 56:22

witnesses(1) 7:3

woefully(1) 63:7

womble(1) 2:39

women(1) 43:24

won't(3) 43:10 46:25 54:10

wondering(1) 67:13

word(2) 33:25 64:3

| Word | Page:Line |
| --- | --- |
| **words**(1) 10:12 | |

**work**(12) 23:23 23:24 25:3 34:13 38:7
38:7 43:22 53:12 53:14 53:18 56:22 56:23

**worked**(4) 34:8 41:7 45:15 47:5
**workforce**(3) 41:18 54:25 55:2
**working**(3) 31:10 55:3 62:25
**works**(1) 63:22
**world**(4) 34:20 37:15 52:8 63:11
**worth**(1) 56:9
**would**(74) 8:16 9:5 10:10 10:24 11:5 11:6
11:17 14:7 15:18 17:6 17:18 18:3 19:11
19:20 20:22 20:25 21:2 21:3 21:5 21:9
21:22 21:25 22:20 22:21 24:9 28:8 29:8
29:11 32:4 35:19 41:2 41:6 41:11 42:18
42:21 43:17 45:23 46:1 46:2 46:6 46:8
46:9 46:13 46:16 47:18 48:6 48:8 48:21
49:10 49:23 50:8 50:13 50:19 51:1 51:2
51:4 51:5 51:5 57:1 57:1 58:5 60:24 62:4
62:5 63:2 63:12 63:21 64:18 64:20 65:9
66:7 67:4 67:24 68:9

**wouldn't**(3) 52:22 65:17 66:23
**wrong**(4) 12:2 14:20 58:17 60:6
**wrongdoing**(1) 22:8
**www.diazdata.com**(1) 1:49
**yeah**(3) 10:20 22:6 22:19
**year**(26) 14:8 15:5 20:20 26:4 27:12
27:20 27:23 27:23 30:17 31:5 32:6 32:24
32:25 36:2 36:21 39:11 39:18 39:18 41:19
46:22 48:11 48:24 49:11 49:20 53:20 54:3

**years**(11) 14:7 24:21 28:12 34:9 39:21
42:20 43:20 45:8 45:10 45:13 54:6

**yes**(24) 19:8 21:19 22:19 23:22 24:13
24:16 26:2 26:9 26:16 27:15 28:19 29:15
30:6 30:8 31:10 32:1 34:17 39:24 40:24
41:20 41:22 61:20 64:13 68:12

**yesterday**(1) 10:9
**yet**(1) 13:15
**york**(5) 2:29 3:7 3:39 5:42 14:1
**you**(211) 8:20 9:12 10:13 10:21 10:23
11:3 11:4 11:10 12:5 12:12 12:14 13:16
13:23 13:24 15:9 16:1 16:2 16:3 17:24
19:12 19:17 19:19 19:24 20:6 20:14 20:17
20:23 20:25 21:6 21:9 21:9 21:11 21:16
21:21 22:12 22:24 23:15 23:18 23:22
23:23 24:2 24:3 24:11 24:14 24:14 24:17
24:19 24:25 24:25 24:25 25:22 25:25
25:25 26:6 26:7 26:8 26:10 26:13 26:14
26:14 26:20 26:21 27:10 27:16 28:3 28:3
28:5 28:5 28:6 28:8 29:12 29:23 30:4
30:5 30:7 30:11 30:19 30:19 30:21 31:2
31:2 31:6 31:20 31:23 31:23 31:24 32:2
32:7 33:8 33:9 33:10 33:14 33:15 33:16
33:16 33:18 33:18 33:20 33:22 33:24
34:12 34:13 34:14 34:14 34:18 35:2 35:2
35:3 35:11 35:15 35:21 35:21 35:23 36:10
36:22 36:22 37:18 37:22 37:22 38:1 38:2
38:2 38:15 38:21 38:21 39:13 39:15 39:17
39:18 39:19 39:25 40:2 40:8 40:16 40:22
40:23 40:25 41:2 41:18 41:21 42:15 43:6
43:11 43:13 43:18 44:5 44:10 44:11 44:12
44:18 44:18 44:23 50:20 50:23 51:20 52:2
52:14 52:17 52:18 52:18 52:22 53:7 53:10
53:15 54:3 54:13 54:18 54:21 55:1 55:8
55:8 55:9 55:12 55:13 55:16 55:17 56:5
56:21 57:2 57:4 57:7 57:8 57:15 57:16
57:23 57:24 57:25 58:2 58:2 58:7 58:7
58:17 59:2 59:3 60:20 60:23 60:23 61:2
62:11 62:18 63:13 65:7 66:2 66:16 66:24
67:2 67:10 67:10 67:18 68:13 68:19

**you'd**(2) 23:16 58:19
**you'll**(2) 41:12 52:4
**you're**(7) 10:5 26:11 55:14 58:2 62:1 67:3
68:10

**you've**(8) 24:20 33:16 40:22 41:18 46:5
52:17 53:9 53:22

**young**(1) 3:19
**your**(101) 8:4 8:8 8:22 9:12 9:13 9:16
10:1 10:8 11:1 11:7 11:13 11:24 12:18
12:23 12:25 13:6 13:14 13:20 13:24 13:25
14:7 15:25 16:3 16:4 16:8 16:13 17:23
19:8 19:15 19:19 20:10 20:22 21:1 21:5
21:8 21:8 21:20 22:5 22:15 22:16 22:19
22:24 23:1 23:2 23:5 23:7 23:10 23:11
23:18 24:6 24:7 24:21 25:1 25:2 26:11
26:12 29:25 31:11 31:23 37:22 39:15 41:2
43:2 43:2 43:11 43:12 44:7 44:12 44:19
44:24 47:16 51:18 51:23 52:2 52:21 55:7
55:18 56:5 57:1 57:7 57:9 57:17 57:23
57:25 58:18 59:3 60:18 61:2 61:5 61:11
62:3 62:21 64:12 66:1 66:14 66:20 67:2
67:4 67:10 68:3 68:10

**yourself**(1) 24:20
**zabel**(1) 5:34
**zensky**(14) 3:5 61:5 61:6 61:11 61:17
61:19 61:21 63:5 63:16 63:20 65:6 66:1
66:4 67:4
**zero**(2) 25:9 40:12
**zloto**(1) 5:38
**zuckerman**(1) 2:32