UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

_____

|   |   |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 08-13141 (KJC) <br> ) <br> ) Jointly Administered <br> ) <br> ) <br> ) Re: Dkt Nos. 6091, 6182, 6183 and 6187 |
| TRIBUNE COMPANY, *et al.*, | |
| Debtors. | |

_____

# EGI-TRB LLC'S LIMITED OBJECTION
## TO THE DISCLOSURE STATEMENTS

EGI-TRB LLC ("EGI-TRB") respectfully submits its Limited Objection (the "Objection") to (1) the Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Settlement Plan Disclosure Statement"),[1] (2) the Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, in Its Capacity as Successor Trustee for Certain Series of Senior Notes, Law Denture Trust Company of New York, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in Its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Pre-LBO Debtholder Plan Disclosure Statement"), (3) the Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Assets

---

[1] For purposes of convenience, this Objection uses the defined terms used by the plan proponents to refer to their plans and disclosure statements.

Management, L.P. (the "Bridge Plan Disclosure Statement"), and (4) the Disclosure Statement for the Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Certain Holders of Step One Senior Loan Claims (the "Step One Plan Disclosure Statement," and together with the Settlement Plan Disclosure Statement, the Pre-LBO Debtholder Plan Disclosure Statement, and the Bridge Plan Disclosure Statement, the "Disclosure Statements") and states:

## INTRODUCTION

All of the Disclosure Statements fail to contain adequate information under section 1125 of the Bankruptcy Code because they do not inform creditors that estate funds—which otherwise would be distributed to them—will instead be wasted by litigation trusts and their lawyers attempting to pursue meritless claims against Sam Zell and EGI-TRB that the independent examiner appointed by the Court found were, at best, unlikely to succeed.

In his August 3, 2010 report, the Examiner, concluded, *inter alia*, that:

- It is "reasonably unlikely" that a court would find that the Debtors incurred their obligations under the Step One Transactions with the actual intent to delay, hinder, or defraud their creditors. (Report, Vol. II at 22);

- A preferential transfer claim based on payments made on the Exchangeable EGI-TRB Note likely would not succeed because, at a minimum, EGI-TRB appears to possess a valid ordinary course of business defense. (*Id*. at 311-14);

- There is no "plausible basis . . . to justify equitable subordination of the EGI-TRB Notes." (*Id*. at 338-39);

- It is "highly unlikely" that a court would "conclude that any claims for aiding and abetting breach of fiduciary duty could be sustained based on the conduct of any potential defendants [including Mr. Zell and EGI-TRB] at Step One." (*Id*. at 395.)

- There is no "sufficient basis to conclude that the Zell Group aided and abetted a breach of any fiduciary duties in connection with the Leveraged ESOP Transactions." (*Id*. at 397);

- It is "reasonably unlikely" that an unjust enrichment claim [against Mr. Zell or EGI-TRB] would be meritorious. (*Id*. at 404); and

- While there is evidence that certain third parties may not have acted in good faith in connection with the Step Two Transactions, the evidence shows that Mr. Zell and EGI-TRB always acted in good faith. (*Id*. at 74-75, 264, 281, 283, 338; *see also* Report, Vol. I at 300.)

In order to provide creditors with "adequate information" about each proposed plan of reorganization, the corresponding Disclosure Statement must inform creditors of the Examiner's findings regarding the merits (or the lack thereof) of potential claims that may be asserted by a litigation trust against Mr. Zell and EGI-TRB. Omitting that material information would preclude creditors from having a fair and reasonable opportunity to reach an informed judgment when voting on each plan. Moreover, including that necessary disclosure would not burden or inconvenience any plan proponent.

## ARGUMENT

Section 1125(b) of the Bankruptcy Code provides that "[a]n acceptance or rejection of a plan may not be solicited . . . unless . . . [there is] a written disclosure statement . . . containing adequate information." 11 U.S.C. §1125(b). "Adequate information" is "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. §1125(a). "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D.

Ohio 1990). Among other things, a disclosure statement should contain "all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." *Id.*

In their current form, none of the Disclosure Statements contain adequate information with respect to the Examiner's conclusions regarding the lack of merit of potential claims against EGI-TRB and Mr. Zell, and each must be amended to allow creditors to make informed judgments regarding the plans.

The potential pursuit of litigation claims has long been a driving and divisive force in these cases—a force that eventually culminated in the appointment of an independent and nationally-recognized Examiner. At a cost of more than $12 million, the Examiner hired a highly-regarded financial advisor and two prominent law firms to assist in his investigation. They had access to 3 million pages of documents, conducted 38 interviews (including interviews of Mr. Zell and an EGI-TRB representative), and personally assessed the credibility of witnesses. The Examiner then concluded, as part of a 1,000 plus page comprehensive report, that he did not find "any credible evidence" that Mr. Zell or EGI-TRB committed wrongful conduct.

Each proposed plan of reorganization effectively ignores the Examiner's report by providing for the transfer to the litigation trust of claims against EGI-TRB and Mr. Zell that the Examiner determined were without merit. Despite the Examiner's conclusions that all identified claims against Mr. Zell and EGI-TRB lack merit, each proposed plan seeks to expend estate resources prosecuting those meritless causes of action. (*See* Settlement Plan

Disclosure Statement at 4, 20-21; Pre-LBO Debtholder Plan Disclosure Statement at 5-6; Step One Plan Disclosure Statement at 7; Bridge Plan Disclosure Statement at 4, n.3).[2]

The Disclosure Statements, however, fail to inform interested parties that the Examiner already has evaluated the purported claims against Mr. Zell and EGI-TRB, and concluded that they are without merit.

That failure must be corrected for two primary reasons. First, pursuing claims without merit diminishes creditor recoveries. The initial establishment and funding of the various litigation trusts is not inexpensive – it requires an initial investment of at least tens of millions of dollars. For example, the Settlement Plan and the Step One Plan provide for an initial $20 million loan to fund their respective litigation and creditor trusts. (*See* Settlement Plan at 56; Step One Plan at 60.) Likewise, the Pre-LBO Debtholder Plan and the Bridge Plan initially fund their respective trusts with $40 million. (*See* Pre-LBO Debtholder Plan at 4, 65, and 84; Bridge Plan at 8, 72, 76, and 90.) Moreover, those figures cover only the initial costs. None of the plans estimate how much money will ultimately be used to fund the litigation trusts. What is clear, however, is that under any of the plans, tens of millions of dollars—funds that otherwise would be distributed to creditors—will be required to sustain the trusts. Given the central role that litigation trusts play in these plans, it is imperative the each Disclosure Statement at least inform creditors that the proposed plan would expend substantial estate funds on purported claims that the Examiner has found unlikely to succeed. *See Cardinal Congregate*, 121 B.R. at 765 (disclosure statement should include all material information relating to risks posed to creditors under proposed plan). This is particularly important in light of the fundamental

---

[2] While the Step One Plan would not retain Step One causes of action against Mr. Zell or EGI-TRB, it expressly retains all Step Two causes of action; even those the Examiner found unlikely to be meritorious.

underlying dispute among the plan proponents over how to address or settle potential causes of action.

Second, disclosing the Examiner's conclusions does not impose any undue burden on the plan proponents. No additional work needs to be undertaken to provide creditors with sufficient information from which they can reach a rational judgment regarding the viability of potential claims against Mr. Zell and EGI-TRB, and the usefulness of expending estate resources to pursue those claims. The Appendix to this Objection provides the necessary language to be inserted into each Disclosure Statement.

The Bankruptcy Code requires the Disclosure Statements to provide creditors with accurate information regarding the Examiner's conclusions regarding the quality of the litigation trusts' assets. Creditors are entitled to know that the Examiner has already found that all identified claims against Mr. Zell and EGI-TRB are not worth pursuing.

**CONCLUSION**

For all of the foregoing reasons, EGI-TRB respectfully requests that the Court require the proposed language in Appendix A to be added to the Disclosure Statements, and grant EGI-TRB any such further relief as the Court believes to be equitable and just.

**BLANK ROME LLP**

By:   /s/ *Alan M. Root*
David Carickhoff (DE No. 3715)
Alan M. Root (DE No. 5427)
1201 Market Street, Suite 800
Wilmington, Delaware  19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

and

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice)*
Catherine L. Steege (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois  60654
Telephone: (312) 222-9350
Facsimile: (312) 840-7375

*Counsel for EGI-TRB, LLC*

**APPENDIX**

**PROPOSED ADDITIONAL LANGUAGE**

EGI-TRB proposes that the following language be asserted into each applicable Disclosure Statement:

### 1. Settlement Plan Disclosure Statement

After the second sentence of the first full paragraph on page 3 of the Settlement Plan Disclosure Statement:

> On August 3, 2010, the Court-appointed Examiner released his findings regarding the validity of various potential causes of action that could be asserted against numerous third parties. The Examiner concluded that none of the identified potential causes of action against Mr. Zell and EGI-TRB were likely to be successful. Specifically, the Examiner found that the following claims are **unlikely** to be successful: (1) actual fraudulent transfer claims against Mr. Zell or EGI-TRB in connection with Step One of the Tribune LBO, (2) preferential transfer claims against Mr. Zell or EGI-TRB in connection with any payment made in connection with the Exchangeable EGI-TRB Note, (3) efforts to subordinate claims asserted on account of the EGI-TRB Notes, (4) breach of fiduciary claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (5) aiding and abetting claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (6) claims for the recovery of illegal corporate distributions against Mr. Zell in connection with Step One or Step Two of the Tribune LBO, and (7) unjust enrichment claims against Mr. Zell or EGI-TRB. In addition, the Examiner's Report found no evidence that, in connection with Step Two of the Tribune LBO, either Mr. Zell or EGI-TRB acted with bad faith, and found evidence that Mr. Zell and EGI-TRB acted in good faith at all times. Under this plan, however, these claims will be retained and potentially brought by either the Litigation Trust or the Creditors' Trust.

After the final sentence of the final paragraph on page 20 of the Settlement Plan Disclosure Statement (carrying on to page 21):

> As noted above, the Examiner found that none of the identified potential claims against Mr. Zell and/or EGI-TRB were likely to be meritorious. The Litigation Trust and the Creditors Trust retain and may prosecute some or all of these claims.

### 2. **<u>Pre-LBO Debtholder Plan Disclosure Statement</u>**

After the last sentence of the final paragraph on page 5 (carrying on to page 6) of the Pre-LBO Debtholder Plan Disclosure Statement:

> On August 3, 2010, the Court-appointed Examiner released his findings regarding the validity of various potential causes of action that could be asserted against numerous third parties. The Examiner concluded that none of the identified potential causes of action against Mr. Zell and EGI-TRB were likely to be successful. Specifically, the Examiner found that the following claims are **unlikely** to be successful: (1) actual fraudulent transfer claims against Mr. Zell or EGI-TRB in connection with Step One of the Tribune LBO, (2) preferential transfer claims against Mr. Zell or EGI-TRB in connection with any payment made in connection with the Exchangeable EGI-TRB Note, (3) efforts to subordinate claims asserted on account of the EGI-TRB Notes, (4) breach of fiduciary claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (5) aiding and abetting claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (6) claims for the recovery of illegal corporate distributions against Mr. Zell in connection with Step One or Step Two of the Tribune LBO, and (7) unjust enrichment claims against Mr. Zell or EGI-TRB. In addition, the Examiner's Report found no evidence that, in connection with Step Two of the Tribune LBO, either Mr. Zell or EGI-TRB acted with bad faith, and found evidence that Mr. Zell and EGI-TRB acted in good faith at all times. Under this plan, however, these claims will be retained and potentially brought by either the Litigation Trust or the Creditors' Trust.

After the final sentence of the last paragraph on page 7 of the Pre-LBO Debtholder Plan Disclosure Statement (carrying on to page 8), and after the end of the last full paragraph on page 21 of that document:

> As noted above, the Examiner found that none of the identified potential claims against Mr. Zell and/or EGI-TRB were likely to be meritorious. The Litigation Trust and the Creditors Trust retain and may prosecute some or all of these claims.

### 3. Bridge Plan Disclosure Statement

After the last sentence of the final paragraph last on page 14 (continuing on to page 15) of the Bridge Plan Disclosure Statement:

> On August 3, 2010, the Court-appointed Examiner released his findings regarding the validity of various potential causes of action that could be asserted against numerous third parties. The Examiner concluded that none of the identified potential causes of action against Mr. Zell and EGI-TRB were likely to be successful. Specifically, the Examiner found that the following claims are **unlikely** to be successful: (1) actual fraudulent transfer claims against Mr. Zell or EGI-TRB in connection with Step One of the Tribune LBO, (2) preferential transfer claims against Mr. Zell or EGI-TRB in connection with any payment made in connection with the Exchangeable EGI-TRB Note, (3) efforts to subordinate claims asserted on account of the EGI-TRB Notes, (4) breach of fiduciary claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (5) aiding and abetting claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (6) claims for the recovery of illegal corporate distributions against Mr. Zell in connection with Step One or Step Two of the Tribune LBO, and (7) unjust enrichment claims against Mr. Zell or EGI-TRB. In addition, the Examiner's Report found no evidence that, in connection with Step Two of the Tribune LBO, either Mr. Zell or EGI-TRB acted with bad faith, and found evidence that Mr. Zell and EGI-TRB acted in good faith at all times. Under this plan, however, these claims will be retained and potentially brought by either the Litigation Trust or the Creditors' Trust.

After the final sentence of footnote three of the Bridge Plan Disclosure Statement:

> As noted in more detail below, the Examiner found that none of the identified potential claims against Mr. Zell and/or EGI-TRB were likely to be meritorious. The Litigation Trust and the Creditors Trust retain and may prosecute some or all of these claims.

### 4. Step One Plan Disclosure Statement

After the first sentence of the last paragraph on page 1 (continuing on to page 2) of the Step One Plan Disclosure Statement:

> On August 3, 2010, the Court-appointed Examiner released his findings regarding the validity of various potential causes of action that could be asserted against numerous third parties. The Examiner concluded that

none of the identified potential causes of action against Mr. Zell and EGI-TRB were likely to be successful.  Specifically, the Examiner found that the following claims are **unlikely** to be successful: (1) actual fraudulent transfer claims against Mr. Zell or EGI-TRB in connection with Step One of the Tribune LBO, (2) preferential transfer claims against Mr. Zell or EGI-TRB in connection with any payment made in connection with the Exchangeable EGI-TRB Note, (3) efforts to subordinate claims asserted on account of the EGI-TRB Notes, (4) breach of fiduciary claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (5) aiding and abetting claims against Mr. Zell in connection with Step One and Step Two of the Tribune LBO, (6) claims for the recovery of illegal corporate distributions against Mr. Zell in connection with Step One or Step Two of the Tribune LBO, and (7) unjust enrichment claims against Mr. Zell or EGI-TRB.  In addition, the Examiner's Report found no evidence that, in connection with Step Two of the Tribune LBO, either Mr. Zell or EGI-TRB acted with bad faith, and found evidence that Mr. Zell and EGI-TRB acted in good faith at all times.  While this plan will not retain claims against Mr. Zell or EGI-TRB in connection with Step One of the Tribune LBO, all other claims, including claims against Mr. Zell and EGI-TRB that the Examiner found unlikely to be successful, will be retained and potentially brought by either the Litigation Trust or the Creditors' Trust.

After the first sentence of the first paragraph of page 7 of the Step One Plan Disclosure Statement:

However, the plan also provides for the retention and potential prosecution of claims against Mr. Zell and EGI-TRB that the Examiner found unlikely to be meritorious.

Insertion of the following footnote after the fourth bullet point on page 21 of the Step One Plan Disclosure Statement:

As noted in more detail below, the Examiner found that none of the identified potential claims against Mr. Zell and/or EGI-TRB were likely to be meritorious.  The Litigation Trust and the Creditors Trust retain and may prosecute some or all of these claims.