IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al.*[1] | : | Case No. 08-13141 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |

## LIMITED OBJECTION OF THE ACE COMPANIES TO THE DISCLOSURE STATEMENTS

ACE American Insurance Company, ACE Insurance Company, ACE Fire Underwriters

Insurance Company, ACE Property and Casualty Insurance Company, Bankers Standard

Insurance Company, Century Indemnity Company, Indemnity Insurance Company of North

America, Insurance Company of North America, Illinois Union Insurance Company, INA

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Surplus Insurance Company, Pacific Employers Insurance Company, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company (collectively and together with each of their affiliates, the "ACE Companies"), by and through their attorneys, Duane Morris LLP, hereby file this Objection to the Disclosure Statements (as defined herein) and in support hereof, respectfully state as follows:

## BACKGROUND

1.    On December 8, 2008 (the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.    Since the Petition Date, the Debtors have continued in possession of their property and the operation of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Code.

3.    On December 18, 2008, an official committee of unsecured creditors (the "Committee") was appointed.

4.    On or about October 22, 2010, the Debtors filed the Joint Disclosure Statement for the Following Plans of Reorganization (the "General Disclosure Statement") [DI No. 6090].

5.    On or about October 23, 2010, the Specific Disclosure Statement (the "Debtors' Disclosure Statement") Relating to Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JP Morgan Chase Bank, N.A. (the "Debtors' Plan") was filed [DI No. 6091].

6.    On or about October 29, 2010, the Specific Disclosure Statement (the "Aurelius Disclosure Statement") for the Joint Plan of Reorganization for Tribune Company and its

2

Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities,

Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for

Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as

Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company,

in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Aurelius Plan") was

filed. [DI No. 6182].

7.     On or about October 29, 2010, the Specific Disclosure Statement (the "Step One

Disclosure Statement") for Plan of Reorganization for Tribune Company and its Subsidiaries

Proposed by Holders of Certain Holders of Step One Senior Loan Claims (the "Step One Plan")

was filed [DI No. 6183].

8.     On or about October 29, 2010, the Specific Disclosure Statement (the "King

Disclosure Statement") for Joint Plan of Reorganization for Tribune and its Subsidiaries

Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon

Asset Management, L.P.  (the "King Plan") was filed [DI No. 6187].

9.     The General Disclosure Statement, the Debtors' Disclosure Statement, Aurelius

Disclosure Statement, the Step One Disclosure Statement and the King Disclosure Statement are

collectively referred to herein as the "Disclosure Statements" and the Debtors' Plan, the Aurelius

Plan, the Step One Plan and the King Plan are collectively referred to herein as the "Plans."

10.     The Debtors' Plan and the Step One Plan contain the following language

regarding insurance (the "Proposed Provision"):

> Insurance policies issued to, or insurance agreements entered into
> by, any of the Debtors prior to the Petition Date (including,
> without limitation, any policies covering directors' or officers'
> conduct) shall continue in effect after the Effective Date.  To the
> extent that such insurance policies or agreements (including,
> without limitation, any policies covering directors' or officers'

conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement. To the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief.

*See* Debtors' Plan § 6.9; Step One Plan § 6.9.

11.    The General Disclosure Statement, the Debtors' Disclosure Statement, the King Street Disclosure Statement, the King Street Plan, the Aurelius Disclosure Statement and the Aurelius Plan do not include an insurance provision.

12.    Section VII.B of the Step One Disclosure Statement contains the following provision (the "ACE Provision"):

The Step One Plan Proponents have not yet determined how to treat certain insurance policies issued by ACE American Insurance Company and/or its affiliates (collectively, "ACE") to or on behalf of the Debtors and any related agreements (hereinafter, the "ACE Policies and Agreements"), including whether or not such agreements are executory and whether they will be assumed. Subject to the Debtors' rights, if any, to assume or to reject such contracts, nothing contained in this Step One Plan Disclosure Statement, the Step One Plan, the Confirmation Order, any exhibit to the Step One Plan, any Plan Supplement or any other Step One Plan document (including any provision that purports to be peremptory or supervening) , shall in any way operate to, or have the effect of, waiving or impairing in any respect the legal, equitable or contractual rights or defenses of the parties to the ACE Policies and Agreements. For the avoidance of doubt, nothing in this Step One Plan Disclosure Statement or in the Step One Plan

4

shall be read to authorize the unilateral amendment by the Debtors
of any of the terms of the ACE Policies and Agreements. In any
event, ACE has reserved all of its rights and defenses under the
ACE Policies and Agreements and applicable non-bankruptcy law
with respect to the ACE Policies and Agreements.

## THE ACE INSURANCE PROGRAM

13.    Prior to the Petition Date, the ACE Companies issued certain insurance policies

(as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the

"Policies") to certain Debtors and their non-debtor affiliates as named insureds.

14.    Prior to the Petition Date, the ACE Companies and certain Debtors and/or their

non-debtor affiliates also entered into certain written agreements in connection with the Policies

(as renewed, amended, modified, endorsed or supplemented from time to time, and including any

exhibit or addenda thereto, collectively, the "Insurance Agreements").

15.    Pursuant to the Policies and Insurance Agreements (the "ACE Insurance

Program"), the ACE Companies provide, *inter alia*, certain workers' compensation, general

liability, products liability, directors and officers liability, automobile liability, and certain other

liability insurance for specified policy periods subject to certain limits, deductibles, retentions,

exclusions, terms and conditions, as more particularly described therein; and the ACE

Companies assert that the insureds, including one or more of the Debtors, are required to pay to

the ACE Companies certain amounts including, but not limited to, insurance premiums,

including retro and audit premiums, and are responsible for certain deductibles, as more

particularly described in the ACE Insurance Program (the "Obligations").

16.    The Obligations are secured by the following letters of credit and the proceeds

thereof (collectively, as amended, confirmed, supplemented or replaced, the "Letters of Credit"):

    a.    Letter of Credit No. TPTS-350275 in the amount of $4,881,802 issued by
JPMorgan Chase Bank, N.A.;

5

b.  Letter of Credit No. TPTS-350116 in the amount of $11,988,631.00 issued by JPMorgan Chase Bank, N.A.;

c.  Letter of Credit No. 00326659 in the amount of $7,516,464.00 issued by Bank One, NA n/k/a JPMorgan Chase Bank, N.A.;

d.  Letter of Credit No. 33546900 in the amount of $8,523,127.00 issued by Bank One, NA n/k/a JPMorgan Chase Bank, N.A.; and

e.  Letter of Credit No. TPTS-350107 in the amount of $227,734.00 issued by JPMorgan Chase Bank, N.A.

17.  The Obligations may also be secured by cash collateral, paid loss deposit funds, loss reimbursement funds and/or other amounts provided by the Debtors and held by, or under the control of, the ACE Companies, as security.

18.  On or about June 12, 2009, ACE American Insurance Company on its own behalf and on behalf of all of its affiliates filed a proof of claim against the Debtors in the bankruptcy case of Tribune Company pursuant to the Stipulation and the Order[2] for the claims arising under the ACE Insurance Program (the "ACE Claims").

## OBJECTION

19.  Section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited, the plan and a disclosure statement, containing "adequate information," as defined in § 1125(a) of the Bankruptcy Code, which has been approved by the Bankruptcy Court, after notice and a hearing. *See* 11 U.S.C. § 1125(b).

---

[2]  On or about June 9, 2009, the Court (as defined herein) entered an order (the "Order") approving that certain stipulation (the "Stipulation") dated as of June 5, 2009 by and between the Debtors and the ACE Companies which provides, *inter alia*, that notwithstanding anything to the contrary set forth in the Bar Date Order (as defined therein) or notice thereof, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures and/or local bankruptcy rules, (i) the Claimant on its own behalf and on behalf of all of the ACE Companies shall be permitted to file a single proof of claim and (ii) such claim shall be filed in the case of Tribune Company (Case No. 08-13141) but shall be deemed to have been filed by each of the ACE Companies.

20.    A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S. C. § 1125(a)[3].

21.    Courts in the Third Circuit consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an informed decision about the proposed plan. *See, e.g., In re Route 202 Corp.*, 37 B.R. 367, 375-76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re East Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982) ; *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir.), *cert. denied*, 488 U.S. 967 (1988).

**A.    The ACE Companies Are Not Able To Determine How The ACE Insurance Program or The Claims Arising Therefrom Will Be Treated.**

22.    Given that they do not contain a provision specifically addressing insurance policies and agreements, the ACE Companies cannot determine from the King Street Disclosure Statement, the King Street Plan, the Aurelius Disclosure Statement and the Aurelius Plan how the ACE Insurance Program and the claims arising therefrom will be treated.

23.    Further, the Proposed Provision in the Debtors' Debtors' Plan and the Step One Plan does not sufficiently or adequately describe the treatment of the ACE Insurance Program and the claims arising therefrom.

---

[3]    11 U.S.C. § 1125(a)(1) provides in pertinent part:
   (a) In this section –
   (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan . . . .

DM3\1536534.3

24.     Moreover, the ACE Provision in the Step One Disclosure Statement at best creates an ambiguity and is at least in some respects contrary to the Proposed Provision in the Step One Plan.  Further, states that the ACE Companies have reserved all rights but the proponents thereof have not contacted or conferred with counsel for the ACE Companies regarding the ACE Provision, the Proposed Provision or the ACE Insurance Program.

### 1.     The ACE Claim Should Be Deemed Treated as a Secured Claim That Is Reinstated.

25.     As a preliminary matter, the ACE Claim is secured by the Letters of Credit and any other collateral and/or security held by, or under the control of, the ACE Companies.

26.     The Letters of Credit are not property of the Debtors' estates.

27.     Each Disclosure Statement and each Plan define a Secured Claim as a "a Claim . . . secured by a Lien on collateral to the extent of the value of such collateral." *See* Debtors' Plan § 1.1.200 ; Step One Plan § 1.1.198; King Street Plan § 1.1.235; Aurelius Plan § 1.1.228.

28.     As drafted, it is not clear if "Secured Claims" and the reference therein to "collateral" include claims secured by property that is not property of the Debtors' estates such as the ACE Claims which are secured, at least in part, by the Letters of Credit.

29.     Accordingly, the Disclosure Statement and Plan do not expressly provide for the classification or treatment of the ACE Claims.

30.     Thus, the Disclosure Statement and Plan should be revised to provide that the ACE Claims shall be deemed (i) Secured Claims that are Reinstated pursuant to the Plan and thus, remain secured by the Letters of Credit and other collateral and security and the proceeds thereof provided by the Debtors to them and (ii) general unsecured claims as to the remaining balance thereof, if any.

8

2.    **The Debtors' Cannot Continue To Receive The Benefits Of The ACE Insurance Program Without Assuming The Obligations And Liabilities Thereunder.**

31.    To the extent the Disclosure Statements and Plans provide that the ACE Insurance Program shall continue in effect, the Disclosure Statements and Plans need to be revised to expressly provide that Reorganized Debtors will assume the Debtors' obligations under the ACE Insurance Program and pay and perform such obligations regardless of when they arise. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'").

32.    Similarly, the Disclosure Statements and Plans should also be revised to expressly provide that the Debtors' and insurers' respective claims, rights, duties and obligations shall survive and will not be impaired or altered by the Plans and shall not be discharged or released by the Plans or the Confirmation Order.

33.    Further, to the extent that the Debtors seek to assume any of the Policies or Insurance Agreements, the Debtors must satisfy the requirements of § 365 of the Bankruptcy Code. Specifically, the Debtors must: (a) cure any defaults, (b) compensate the ACE Companies for any actual pecuniary loss resulting from any defaults, and (c) provide adequate assurance of future performance (collectively, the "Assumption Requirements"). 11 U.S.C. § 365.

34.    The Proposed Provision which provides that no payments shall be required to cure any defaults does not satisfy the Assumption Requirements.

35.    Therefore, the ACE Companies cannot determine how the ACE Insurance Program and thus, the claims of the ACE Companies will be treated and thus, object to the

9

Disclosure Statements on the basis that they lack adequate information under § 1125 of the

Bankruptcy Code.

**B.    Proposed Resolution of Objection**

36.    Using the Proposed Provision as a basis (with additions noted in italicized text

and deletions noted with ~~strikethrough text~~), the ACE Companies hereby request that the

following language be added to each Disclosure Statement and Plan to resolve the Objection:

> *Notwithstanding anything to the contrary in the Disclosure Statement, Plan, any other Plan document, the Confirmation Order or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release),* the ~~i~~*I*nsurance policies issued to, or insurance agreements entered into by, any of the Debtors, *their affiliates or predecessors* prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) *or any documents or instruments relating thereto* shall continue in effect *according to the terms and conditions thereof* after the Effective Date.  To the extent that such insurance policies or agreements (including, without limitation, any policies covering directors' or officers' conduct) *or any documents or instruments relating thereto* are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date *and satisfaction of the requirements of section 365 of the Bankruptcy Code*, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate.  *In addition to and without altering any of the foregoing, (i) nothing in the Disclosure Statement, Plan, any other Plan document, the Confirmation Order or any other order of the Bankruptcy Court, shall alter or impair the rights and obligations of the Debtors or the insurers under the insurance policies or the agreements, documents or instruments related thereto (which rights and obligations shall be determined under the applicable insurance policies, agreements, and documents and applicable non-bankruptcy law) or modify the coverage provided thereunder, (ii) the Reorganized Debtors shall remain liable for all of the Debtors' obligations and liabilities, whether now existing or hereafter arising, under the insurance*

policies and the agreements, documents and instruments related thereto and shall pay liabilities in full in the ordinary course, and (iii) the claims of the insurers shall be deemed to be Secured Claims to the extent the Debtors have provided collateral and/or other security (including letters of credit) to the insurers that are Reinstated and General Unsecured Claims as to the remaining balance thereof, if any. ~~Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement. To the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief.~~

**C.    Reservation of Rights**

37.    The ACE Companies specifically reserve their right to assert additional objections to the Disclosure Statements and the Plans including, but not limited to, the right to object to the proposed treatment of director and officer liability insurance policies, the partial assumption of the ACE Insurance Program and/or any proposed claims handling procedures.

**CONCLUSION**

WHEREFORE, the ACE Companies respectfully request that this Court (a) either (i) condition any approval of the Disclosure Statements to inclusion of the modifications requested herein or (ii) deny the requests for approval of the Disclosure Statements as they do not contain the adequate information required by 11 U.S.C. § 1125 and (b) grant such other relief as the Court deems appropriate.

Dated:  November 16, 2010

DUANE MORRIS LLP
By:___/s/ Richard W. Riley_____
Richard W. Riley, Esquire
DE I.D.: 4052
1100 North Market Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 657-4900
Facsimile:  (302) 657-4901
rwriley@duanemorris.com

11

and

Margery N. Reed, Esquire
Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
mreed@duanemorris.com
wmsimkulak@duanemorris.com

Counsel to the ACE Companies

DM3\1536534.3