## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

TRIBUNE COMPANY, et al.,

              Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Chapter 11

Case No. 08-13141 (KJC)

(Jointly Administered)

## JOINT MOTION OF JPMORGAN CHASE BANK, N.A., MERRILL LYNCH CAPITAL CORPORATION, CITICORP NORTH AMERICA, INC., AND BANK OF AMERICA, N.A., FOR AN ORDER (I) FINDING THE STEP ONE CREDIT AGREEMENT LENDERS IN CONTEMPT OF THE COURT'S MEDIATION ORDER AND THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (II) ENJOINING THE STEP ONE CREDIT AGREEMENT LENDERS FROM FURTHER VIOLATIONS OF THE MEDIATION ORDER AND THE AUTOMATIC STAY

JPMorgan Chase Bank, N.A. ("JPMorgan"), Merrill Lynch Capital Corporation ("Merrill Lynch"), Citicorp North America, Inc. ("Citicorp"), and Bank of America, N.A. ("BofA") (collectively, the "Arrangers") hereby move this Court pursuant to this Court's September 1, 2010 Order Appointing Mediator [Docket No. 5591] (the "Mediation Order," attached as Exhibit A) and 11 U.S.C. § 362 for an order finding Alden Global Distressed Opportunities Fund, L.P., Alden Global Distressed Opportunities Master Fund, L.P., Arrowgrass Distressed Opportunities Fund Limited, Arrowgrass Master Fund Ltd., Bennett Offshore Restructuring Fund, Inc., Bennett Restructuring Fund, L.P., BRF Senior Income, L.P., CFIP Master Fund, Ltd., DeBello Investors LLC, Greywolf Capital Overseas Master Fund, Greywolf Capital Partners II LP, Greywolf CLO I, Ltd., Normandy Hill Capital, L.P., Scoggin Capital Management II LLC, Scoggin International Fund Ltd., Scoggin Worldwide Fund Ltd, and Wexford Spectrum Investors LLC (collectively,

the "Step One Credit Agreement Lenders" or "SOCALs") in contempt for violating the

Mediation Order and the automatic stay provisions of 11 U.S.C. § 362.

On October 29, 2010, just hours before the SOCALs filed a competing Plan of

Reorganization in this Court, they filed a complaint in the Supreme Court of the State of New

York (the "SOCAL Complaint," attached as Exhibit B) against the Arrangers. *See Alden Global*

*Distressed Opportunities Fund, L.P. v. JPMorgan Chase Bank, N.A.*, Index No. 651884/2010

(N.Y. Sup. Ct. filed Oct. 29, 2010) (the "New York Action"). The SOCAL Complaint asserts

claims and seeks relief with respect to issues arising out of the LBO-Related Causes of Action[1]

that are before this Court. *Id.* Because the filing of the SOCAL Complaint is a clear violation of

the Mediation Order and the automatic stay, the Arrangers request entry of an order holding the

SOCALs in contempt and enjoining them from further violation of the Mediation Order and

automatic stay.[2]

As targets of the action, the Defendants are moving to bring these issues to the Court's

attention as expeditiously as possible. The Defendants have also consulted with the Debtors,

who have indicated their intent to file a joinder to this Motion and the relief requested herein.

### INTRODUCTION

The major parties in these Cases have been working within the strictures of the Mediation

Order and the automatic stay in connection with a plan of reorganization and confirmation

---

[1] Except where otherwise noted, the term LBO-Related Causes of Action has the meaning ascribed to it in the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., dated October 22, 2010 [D.I. 6089].

[2] The Arrangers also intend to remove the New York Action to the United States District Court for the Southern District of New York and, once removed, request the action be transferred and/or stayed pending resolution of these bankruptcy proceedings.

process that would resolve all of the key issues relating to the LBO-Related Causes of Action,
either by settling those causes of action or preserving them for the benefit of the Estates.  To that
end, the Debtors, the Committee of Unsecured Creditors (the "UCC"), JPMorgan, Angelo
Gordon & Co., L.P., and Oaktree Capital Management, L.P., filed a joint plan of reorganization
on October 22, 2010 (the "Settlement Plan") [D.I. 6089].  The Settlement Plan, which
consensually resolves certain of the LBO-Related Causes of Action, was the product of weeks of
negotiation during the course of the Mediation and is supported by the Court-appointed
Mediator.  As Mediation Parties under the carefully negotiated Mediation Order, and active
participants in the Mediation (as well as proponents of their own competing plan), the SOCALs
are well aware that the Mediation is ongoing in an attempt to bring even more parties –
potentially including the SOCALs – into the settlement.  *See, e.g.*, Mediator's Second Report,
dated Oct. 12, 2010 [D.I. 5936] (attached as Exhibit C) ("The Mediator does not consider the
Mediation to be closed and will continue to seek to include additional parties.").  The SOCALs
are similarly aware, or should be aware, that by bringing the New York Action during the
pendency of the Mediation, they have violated the express terms of the Mediation Order, which
clearly enjoins all Mediation Parties from bringing "any motion or proceeding during the
pendency of the Mediation seeking relief in connection with the LBO-Related Causes of Action
or any related causes of action." (Mediation Order ¶ 10.)

In addition, the filing of the SOCAL Complaint is a violation of the automatic stay.
Although the SOCALs attempt to artfully draft around the automatic stay by ostensibly naming
only the Arrangers as parties, a closer review of the SOCAL Complaint reveals that the New
York Action falls squarely within Section 362's restrictions on actions "to obtain possession of

property of the estate or of property from the estate or to exercise control over property of the

estate" and "to collect, assess, or recover a claim against the debtor that arose before the

commencement of the case under this title." *See* 11 U.S.C. § 362(a)(3) & (6).  Indeed, it is

apparent that the primary goal of the New York Action is to obtain property from the Debtors

through enhancing the recoveries on the SOCALs' claims in the pending plan of reorganization

process.  Moreover, the overwhelming majority of the allegations in support of the claims, and

an underlying predicate to recovery on those claims, are that the Debtors and their directors,

officers, and agents engaged in intentional and fraudulent misconduct.  Those (and other) issues,

such as whether or not the Tribune Company ("Tribune") was rendered insolvent as a result of

the alleged fraud, cannot be adjudicated without deciding the key issues underlying the potential

LBO-Related Causes of Action and, as a result, such adjudication could materially impact the

value of the property and the orderly administration of these Estates.  Moreover, the issues

presented in the SOCAL Complaint are the precise issues that have already been placed before

this Court in connection with the filed plans of reorganization, including the plan filed by the

SOCALs.  Many of the issues will be central to the Confirmation Hearing as they go to the heart

of the alleged avoidability, allowance, priority, and treatment of claims against the Debtors under

any plan of reorganization.  By attempting for tactical reasons to raise those issues in another

forum, not only have the SOCALs manufactured a wasteful and unnecessary distraction that

raises a real risk of inconsistent rulings on critical issues, they have boldly infringed on the core

of this Court's jurisdiction.

It is not difficult to discern the true motivation behind the filing of the SOCAL

Complaint.  Unlike the recent UCC Complaints, which were filed only after obtaining leave from

4

this Court, the New York Action reeks of a transparent attempt to preempt the vote of the senior

lender class on the pending plans (which the SOCALs do not hold sufficient claims to control),

despite the resultant harm to the Estates and other creditors in these Cases, and to create leverage

in the ongoing Mediation process.  For all these reasons, and others detailed below, the SOCALs

should be held in contempt and enjoined from any further violation of the Mediation Order and

automatic stay.

## ARGUMENT

I.    **THE STEP ONE CREDIT AGREEMENT LENDERS ARE IN VIOLATION OF THE MEDIATION ORDER**

Following careful negotiations amongst all interested Parties, this Court entered the

agreed-upon Mediation Order on September 1, 2010, appointing the Honorable Kevin Gross as

Mediator and naming JPMorgan and the SOCALs, among others, as Mediation Parties.

(Mediation Order ¶ 2.)  In order to maximize the prospects of a successful Mediation, the

Mediation Order expressly barred the Mediation Parties from bringing any motion or proceeding

to seek relief in connection with the LBO-Related Causes of Action or any related causes of

action "without leave of the Court for good cause shown."  (*Id.* ¶ 10.)  The LBO-Related Causes

of Action were defined by reference to the Amended Joint Plan of Reorganization for Tribune

Company and Its Subsidiaries (as Modified), filed July 29, 2010 [D.I. 5205] (the "Joint Plan"), to

include:

> *any and all claims*, causes of action, avoidance powers or rights, and legal or
> equitable remedies against any Person *arising from any transaction related to the
> leveraged buy-out of Tribune that occurred in 2007*, including, without limitation,
> the purchase by Tribune of its common stock on or about June 4, 2007, the
> merger and related transactions involving Tribune on or about December 20,
> 2007, and *any financing committed to, incurred or repaid in connection with any
> such transaction*, regardless of whether such claims, causes of action, avoidance

5

powers or rights, or legal or equitable remedies may be asserted pursuant to the
Bankruptcy Code or any other applicable law.

(Joint Plan § 1.1.103 (emphasis added).)

The SOCAL Complaint, which alleges various claims against the Arrangers, all of which

relate to the LBO transactions and the financings related thereto, plainly violates the Mediation

Order. It is of no moment that the claims were not brought in this Court or that they were not

asserted pursuant to the Bankruptcy Code; indeed, the choice of venue is indicative of an ill-

conceived attempt to do an end-run around the Mediation Order for the very purpose of creating

leverage in the ongoing Mediation and in the reorganization process and to preempt the

resolution of these issues in this Court. Accordingly, the Arrangers respectfully request that the

Court enter an order holding the SOCALs in contempt for intentional violation of the Mediation

Order and enjoining them from further violation of the Mediation Order. *See In re Kennedy*, 80

B.R. 673, 673-74 (Bankr. D. Del. 1987) (holding that bankruptcy court has inherent power to

enforce compliance with its lawful orders through civil contempt proceedings).

## II.    THE STEP ONE CREDIT AGREEMENT LENDERS HAVE VIOLATED THE AUTOMATIC STAY

In addition to violating the Mediation Order, the SOCALs have violated the automatic

stay provisions of 11 U.S.C. § 362(a)(3) and (6). Section 362, by its terms, is intentionally

broadly worded to subsume actions by creditors affecting the property of or claims against the

Estates. Though nominally solely against the Arrangers, the New York Action is in fact a

violation of the automatic stay because it is, pure and simple, nothing more than an effort to

enhance the SOCALs' recoveries on their claims by diverting Estate assets away from one

creditor group (the Step Two lenders) to another creditor group (the Step One lenders). *See*

6

*McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (noting that the automatic

stay is intended to "protect[] creditors by preventing particular creditors from acting unilaterally

to obtain payment from a debtor to the detriment of other creditors"). As set forth below, the

New York Action is inextricably linked to the distributions to creditors under any plan and the

value of Estate causes of action that are to be settled or preserved. Accordingly, the Court

should enter an order finding the SOCALs in contempt for intentional violation of the automatic

stay and enjoining them from any further violations. *See Cuffee v. Atl. Bus. & Cmty. Dev. Corp.*

*(In re Atl. Bus. & Cmty. Corp.)*, 901 F.2d 325, 326-28 (3d Cir. 1990) (affirming contempt

sanctions for a willful violation of the automatic stay).

The SOCAL Complaint effectively seeks to usurp an issue within this Court's core

jurisdiction – the determination of which classes of claims are entitled to receive and retain

distributions under a plan of reorganization in these Cases – and to place authority for such a

determination in a New York state court unfamiliar with these proceedings. *See N. Pipeline*

*Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (noting that "the restructuring of

debtor-creditor relations" is "the core of the federal bankruptcy power"); *Resolution Trust Corp.*

*v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995) ("[T]he power to

prioritize distributions has long been recognized as an essential element of bankruptcy law.");

*Seaway Painting v. Cornell & Co.*, Misc. Action No. 98-158, 1998 WL 800343, at *2 (E.D. Pa.

Nov. 16, 1998) (observing that "[t]he administration of claims by two competing creditors over

the same asset of a debtor is exactly the sort of controversy" that is "core" to the bankruptcy

courts); *see also* 28 U.S.C. § 157(b)(2)(B) (listing as a "core proceeding[]" in bankruptcy the

7

"allowance or disallowance of claims against the estate or exemptions from property of the estate").

The SOCALs argue, for example, that despite plain language to the contrary, certain standard provisions of the governing credit agreement (the "Sharing Provisions") should not apply. (SOCAL Compl. ¶¶ 15, 176-188.) They purport to cast the dispute as nothing more than an inter-creditor dispute that has no connection to or impact upon the bankruptcy proceedings. But the SOCALs' own Disclosure Statement (the "SOCAL Disclosure Statement") filed in connection with their proposed plan (and that was filed almost instantaneously with the New York Action), puts the lie to that argument. Specifically, the SOCALs acknowledge that "if successful, the Sharing Dispute could result in the nullification of the Step Two Senior Loan Claims . . . . Plainly stated, this would not only mean that Holders of Step Two Senior Loan Claims cannot benefit from the Sharing Provision, but also the subsidiary guarantees and equity pledge." (SOCAL Disclosure Statement [D.I. 6183] at 1.) It is obvious that the SOCAL Complaint is nothing more than a poorly disguised attempt to recast an objection to the relative treatment of the Step One and Step Two claims in order to enhance the SOCALs' recoveries on their Step One claims under any plan – an issue that is, and rightfully should be, before this Court in connection with the confirmation hearing.[3]

Every proposed plan of reorganization before this Court is driven by the proponents' perception of the plan's impact on the relative rights of the classes of creditors in these Cases. A

---

[3] The close nexus between the New York Action and the pending bankruptcy proceedings can also be seen in allegations regarding alleged damages. Specifically, upon information and belief, the SOCALs purchased their positions at pennies on the dollar and thus will likely suffer little or no economic harm should the plan proposed by the Debtors be confirmed. Nonetheless, the SOCALs speculate that their damages will be the difference between some undefined amount and what they expect to receive as a result of the bankruptcy (SOCAL Compl. ¶¶ 14, 130, 144, 168), an amount that will not, and cannot, be determined until the Debtors emerge from bankruptcy.

judgment on the SOCAL Complaint goes directly to the merits of certain of the LBO-Related

Causes of Action and, as a result, the relative rights of the creditors.  The SOCAL Complaint is a

blatant attempt to resolve those issues and dictate, outside of the plan process in which the

SOCALs are active participants, who should collect what from the Debtors in these Cases.

Nothing could be a more straightforward violation of the stay.  This explains why so many of the

allegations in the SOCAL Complaint are directed at the Debtors, *see, e.g.*, ¶¶ 51-52, 59, 68-74,

76-80, and resolution of the claims asserted will necessarily require findings for or against the

Debtors, and their directors, officers, and agents.[4]

Moreover, the SOCAL Complaint raises numerous issues in New York state court that

either have been before this Court for many months or were raised in this Court by the SOCALs

themselves, the adjudication of which will have a material impact on the value of the Estates.

The crux of the SOCAL Complaint is that Tribune was insolvent prior to, or as a result of, the

Step Two transactions – an issue at the heart of these proceedings from the outset.  (SOCAL

Complaint ¶¶ 68-80.)  A judgment in another jurisdiction on this issue could easily have a

material impact – positively or negatively – on the value of the potential Estate causes of action

relating to these transactions.  *See In re Eagle Enters.*, 265 B.R. 671, 677 (E.D. Pa. 2001)

(enforcing automatic stay where potential recoveries would impact, in that case increase, the

value of the estate).  Similarly, a finding that Tribune's officers and directors committed an

intentional fraud to ensure that they would obtain a favorable solvency opinion before the Step

---

[4] Indeed, the allegations in the SOCAL Complaint strongly suggest that the Debtors are necessary parties to the New York Action. *See In re Loewen Group, Inc. Sec. Litig.*, No. CIV A. 98-6740, 2001 WL 530544 (E.D. Pa. May 16, 2001) (applying section 362(a) to stay proceedings against non-debtors defendants where, after weighing the interests of both parties and the non-party debtor, the district court concluded that the litigation should not go forward absent the debtors).

9

Two transaction closed – a predicate to many of the claims in the SOCAL Complaint – would have a similar material impact on the value of the Estates. *See Majestic Star Casino v. Gary, Indiana (In re the Majestic Star Casino, LLC)*, No. 09-14136 (KG), 2010 WL 2540457, at *2 (Bankr. D. Del. Apr. 28, 2010) (applying section 362(a)(1) and (3) to stay action against present and former directors, officers and employees of the Debtors and affiliates).[5]

Accordingly, given the impact of the New York Action on the Debtors' property and the relative entitlement of creditors to distribution from that property, enforcement of the automatic stay in this context is warranted.[6]

## NOTICE

Notice of this Motion has been given to: (a) counsel to Alden Global Distressed Opportunities Fund, L.P., Alden Global Distressed Opportunities Master Fund, L.P., Arrowgrass Distressed Opportunities Fund Limited, Arrowgrass Master Fund Ltd., Bennett Offshore Restructuring Fund, Inc., Bennett Restructuring Fund, L.P., BRF Senior Income, L.P., CFIP Master Fund, Ltd., DeBello Investors LLC, Greywolf Capital Overseas Master Fund, Greywolf Capital Partners II LP, Greywolf CLO I, Ltd., Normandy Hill Capital, L.P., Scoggin Capital Management II LLC, Scoggin International Fund Ltd., Scoggin Worldwide Fund Ltd, and

---

[5] In addition, Section 8.04 of the Credit Agreement provides for the Debtors' indemnification of the arranging banks sued by the SOCALs, thereby exposing the Estates to further claims. "[T]he Debtors will have to advance defense costs thereby, at the very least, temporarily diverting much needed funds . . . ." *Majestic Star Casino*, 2010 WL 2540457, at *2. As such, "[t]he indemnification demands are grounds for extending the stay." *Id.*

[6] It is of no consequence that the SOCALs artfully attempt to disguise their violation of the automatic stay by formally naming only the Arrangers, and not the Debtors, as defendants. Courts routinely enforce the automatic stay in actions against non-debtors where the Debtors are necessary parties or where the outcome of the litigation may impact the value of the Debtor's estate. *See McCartney*, 106 F.3d at 510 (stating that the stay has "been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties."); *Queenie, Ltd. v. Heavenly Fabrics, Inc.*, 321 F.3d 282, 287 (2d Cir. 2003) (applying section 362 where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate").

RLF1 3629460v. 1

10

Wexford Spectrum Investors LLC; (b) the Office of the United States Trustee for the District of Delaware; (c) counsel to the Official Committee of Unsecured Creditors; and (d) all parties that have requested service pursuant to Federal Rule of Bankruptcy Procedure 2002. Due to the nature of the relief herein, the Arrangers respectfully submit that no further notice of this Motion is required.

## CONCLUSION

For the foregoing reasons, the Arrangers respectfully request that this Court enter an Order, substantially in the form attached hereto as Exhibit D: (1) finding the Step One Credit Agreement Lenders in contempt for violation of the Court's Mediation Order and enjoining them from further violation of the Mediation Order; (2) finding the Step One Credit Agreement Lenders in contempt for violation of the automatic stay pursuant to 11 U.S.C. § 362 and enjoining them from further violation of the stay; (3) awarding attorneys' fees and costs incurred in bringing this motion; and (4) awarding any other relief that this Court deems just and proper.

11

Dated: November 16, 2010          Respectfully submitted,
      Wilmington, Delaware

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19899
Telephone: (302) 651-7700

-and-

Dennis E. Glazer
Benjamin Kaminetzky
Elliot Moskowitz
Michael Russano
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for JPMorgan Chase Bank, N.A.*

12

_/s/ Laurie Selber Silverstein_
Laurie Selber Silverstein (DE No. 2396)
R. Stephen McNeill (DE No. 5210)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

-and-

Madlyn Gleich Primoff, Esq.
Jane W. Parver, Esq.
Joseph M. Drayton, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000

*Attorneys for Merrill Lynch Capital Corporation*

13

_/s/ Stephen P. Lamb_

Stephen P. Lamb (#2053)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Brandywine Building
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 655-4410
Facsimile: (302) 655-4420

Andrew Gordon
David W. Brown
Stephen J. Shimshak
Elizabeth R. McColm
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Citicorp North America, Inc.*

*/s/ David B. Stratton*

David B. Stratton, Esq.
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302) 777-6500

-and-

O'MELVENY & MYERS LLP
Daniel L. Cantor, Esq.
Daniel S. Shamah, Esq.
Times Square Tower, Esq.
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

-and-

Evan M. Jones, Esq.
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6236

*Attorneys for Bank of America, N.A.*

RLF1 3629460v. 1