## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: December 15, 2010 at 10:00 a.m. (ET)<br>Re: Docket Nos. 5591, 6472 |

## JOINDER OF THE DEBTORS IN CONNECTION WITH JOINT MOTION OF JPMORGAN CHASE BANK, N.A., MERRILL LYNCH CAPITAL CORPORATION, CITICORP NORTH AMERICA, INC., AND BANK OF AMERICA, N.A., FOR AN ORDER (I) FINDING THE STEP ONE CREDIT AGREEMENT LENDERS IN CONTEMPT OF THE COURT'S MEDIATION ORDER AND THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (II) ENJOINING THE STEP ONE CREDIT AGREEMENT LENDERS FROM FURTHER VIOLATIONS OF THE MEDIATION ORDER AND THE AUTOMATIC STAY

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors") hereby submit this joinder in connection with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (9479); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

the Joint Motion of JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citicorp

North America, Inc., and Bank of America, N.A., for an Order (I) Finding the Step One Credit

Agreement Lenders in Contempt of the Court's Mediation Order and the Automatic Stay

Pursuant to 11 U.S.C. § 362; and (II) Enjoining the Step One Credit Agreement Lenders from

Further Violations of the Mediation and the Automatic Stay (the "Arrangers Motion") in order to

enforce the terms of this Court's September 1, 2010 Order Appointing Mediator [Docket No.

5591] (the "Mediation Order") and to suspend the New York Action commenced by the SOCAL

Parties (each as defined below) on or about October 29, 2010 pending the outcome of the plan

confirmation hearing in these cases.

## BACKGROUND

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune

CNLBC, LLC (formerly known as Chicago National League Ball Club, LLC), filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the

Debtors comprise 111 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes

only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket Nos. 43,

2333].  The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

3.      On September 1, 2010, in the Mediation Order, the Court appointed the

Honorable Kevin Gross as Mediator in these cases "to conduct a non-binding mediation

concerning the terms of a Plan, including the appropriate resolution of the LBO-Related Causes

46429/0001-7185315v1

of Action" (the "Mediation"). (Mediation Order, ¶ 1.)  Pursuant to the Mediation Order, the

Mediation Parties include, among others, the Debtors, the Official Committee of Unsecured

Creditors (the "Creditors' Committee"), JPMorgan Chase Bank, N.A., as administrative agent

and lender under the Senior Loan Agreement,[2] and the Step One Credit Agreement Lenders (as

defined in the Mediation Order).  The Mediator has filed two reports in these cases [Docket Nos.

5831, 5936].  In his most recent (October 12, 2010) report, the Mediator confirmed that he "does

not consider the Mediation to be closed and will continue to seek to include additional parties."

[Docket No. 5936.]

        4.        On February 1, 2010, September 13, 2010, and September 14, 2010, the

Creditors' Committee filed motions seeking standing to pursue certain LBO-Related Causes of

Action on behalf of the Debtors' estates arising from or relating to Tribune's prepetition two-step

leveraged buy-out transactions in 2007 (the "LBO Transactions"), and seeking leave from the

Court to commence and prosecute claims of the Debtors' estates set forth in draft complaints

filed with the Court [Docket Nos. 3281, 5668, 6598].  On October 27, 2010, after notice and a

hearing, the Court entered an Order Granting Unsecured Creditors Committee's Standing

Motions (the "Standing Order") [Docket No. 6150].  In accordance with the Standing Order, on

or about November 1, 2010, the Creditors' Committee filed two complaints asserting numerous

LBO-Related Causes of Action against various parties (the "LBO Actions").  Under the terms of

the Standing Order, however, "the LBO Actions shall be deemed stayed" until, among other

things, the completion of the confirmation hearings.  (Standing Order, pg. 4.)

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Settlement Plan") [Docket No. 6089].

5.      As this Court is aware, on or about October 22, 2010, the Debtors, together with the Creditors' Committee, Oaktree, Angelo Gordon, and JPMorgan, filed the Settlement Plan, as well as certain corresponding disclosure statement pleadings.

6.      In addition to the Settlement Plan, on or about October 29, 2010, three other competing plans were filed by (i) the Step One Credit Agreement Lenders (the "SOCAL Plan"), (ii) King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management, L.P., and (iii) Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company (collectively, the "Competing Plans"). Each of the Competing Plans addresses, in one form or another, the LBO Transactions.

7.      This Court has scheduled a hearing for November 29, 2010 to consider approval of the disclosure statements, various related solicitation materials and solicitation procedures, and certain procedures respecting the confirmation hearing with respect to the Settlement Plan and the other Competing Plans. Although the confirmation hearing is not yet scheduled, it is anticipated that the parties may seek a confirmation hearing as early as March of 2011.

8.      In addition to filing the SOCAL Plan, on October 29, 2010, certain of the Step One Credit Agreement Lenders (the "SOCAL Parties"), without prior notice to creditors or leave from this Court, filed a complaint (the "SOCAL Complaint") in the Supreme Court of the State of New York against JPMorgan, Merrill Lynch Capital Corporation, Citicorp North America, Inc. and Bank of America, N.A. (collectively, the "Arrangers") asserting claims against the Arrangers with respect to issues arising out of or relating to the LBO Transactions and the Senior Loan Agreement (the "New York Action"). In addition, although the Debtors are not named as parties defendant, the SOCAL Complaint includes allegations and accusations that directly

4

implicate the Debtors, their officers and directors, their prepetition conduct, and their financial condition.

9.     On November 16, 2010, the Arrangers filed the Arrangers Motion seeking an order (among other things) (i) finding the SOCAL Parties in contempt for violating the Mediation Order and enjoining them from further violation of the Mediation Order, and (ii) finding the SOCAL Parties in contempt for violation of the automatic stay pursuant to 11 U.S.C. § 362 and enjoining them from further violation of the stay [Docket No. 6472].

## ARGUMENT

I.     **The Commencement of the New York Action Violates the Terms of the Mediation Order.**

10.     As the Court is aware, the Mediation Order expressly provides that: "Except for motions with respect to standing to file and prosecute LBO-Related Causes of Action, in order to facilitate the Mediation, without leave of the Court for good cause shown, the Mediation Parties shall not bring any motion or proceeding during the pendency of the Mediation seeking relief in connection with the LBO-Related Causes of Action or any related causes of action, and any such motions or proceedings currently pending, including discovery related thereto, shall be stayed *sine die*." (Mediation Order, ¶ 10.)

11.     The Debtors agree with the Arrangers that the commencement and prosecution of the New York Action violate the express terms of the Mediation Order, and that the New York Action should therefore be stayed in accordance with such Order, at least "during the pendency of the Mediation," which, as of the date hereof, is still ongoing.

**II.     The New York Action Should be Suspended Pending the Outcome of the Plan
Confirmation Hearing in these Cases.**

12.     The Debtors further join the Arrangers Motion in order to suspend the New York
Action pending the outcome of the plan confirmation hearing with respect to the Settlement Plan,
the SOCAL Plan, and the other two Competing Plans.  At the outset, it is apparent from the face
of the SOCAL Complaint that there will be considerable overlap between the subject matter of
the numerous factual and legal issues implicated in the New York Action, and virtually identical,
or substantially similar, issues that have been raised, or will likely be adjudicated, as part of the
Debtors' pending plan confirmation proceedings.[3]  Moreover, several of the counts in the
SOCAL Complaint potentially involve predicate factual and legal issues that are, or may be, a
part of the Debtors' ongoing plan confirmation process before this Court, as well as the LBO
Actions that the Creditors' Committee has filed on behalf of the Debtors' estates with leave of
Court.[4]  There is a potential risk that the simultaneous adjudication of these and related issues in
the New York Action may lead to confusion, duplicative discovery, and potentially inconsistent
results.

---

[3] Among other issues, the SOCAL Compliant raises issues relating to the solvency of Tribune at the time of the Step
Two Transactions (see, e.g., Compl. ¶¶ 82-112), the validity of the debt incurred by the Debtors in connection with
the Step Two Transactions (see, e.g., Compl., Count VII), the validity, scope and application of the Sharing
Provision (as defined in the SOCAL Complaint) of the Senior Loan Agreement (see, e.g., Compl. ¶¶ 176-188) and
the allegedly fraudulent prepetition conduct of the Company (see, e.g., Compl. ¶¶ 69-78).  These issues either have
been raised or may be implicated by the Debtors' pending plan confirmation proceedings, as well as the Creditors'
Committee's pending LBO Actions.
[4] For example, the declarations sought by the SOCAL Parties in Counts Five and Seven would require the New
York state court to determine whether the Step Two Transactions rendered Tribune insolvent.  Count Five of the
SOCAL Complaint seeks a declaration that Section 7.05 of the Credit Agreement is unenforceable as to JPMorgan
because, among other things, the Step Two Transactions would allegedly render Tribune insolvent and drive it into
bankruptcy (Compl. ¶¶ 169-175).  Count Seven further alleges that Tribune made a false representation as to its
solvency following the consummation of the Step Two Transactions (Compl. ¶ 191), and that the Sharing Provision
should therefore be deemed not to apply to any debt that was issued pursuant to the Incremental Facility (as defined
in the SOCAL Complaint) (Compl. ¶¶ 189-201).  Moreover, the declarations requested in Counts Six and Seven in
the SOCAL Complaint also directly implicate the allowance and treatment of, and the amount of distributions
ultimately provided to, the Senior Loan Claims (Compl. ¶¶ 176-188, ¶¶ 189-201).  These issues have been squarely
raised by the Settlement Plan and the SOCAL Plan (as well as the other Competing Plans), and go to the core of the
ongoing plan confirmation process.

46429/0001-7185315v1

13.     Furthermore, the SOCAL Complaint makes numerous allegations and accusations that directly implicate the conduct of the Debtors and their directors and officers.[5] The New York Action is an unnecessary distraction to the Debtors as well as their directors, officers and advisors that will likely result in the expenditure of considerable estate resources, time, attention, and costs during the ongoing confirmation process (including costs and expenses that have been indemnified by the Tribune).  Proceeding with the New York Action will unquestionably divert the Debtors' resources and attention at this critical time, which would be especially wasteful and inefficient given the overlap of issues likely to be resolved most appropriately in this Court on an orderly basis through the ongoing confirmation process.

14.     Some or all of these overlapping issues and allegations against the Debtors may be resolved as part of the plan confirmation process, where all relevant parties are already present before the Court and actively participating in such process.  Accordingly, the separate adjudication of these issues by another state court that is not familiar with these proceedings may potentially interfere with the Debtors' ongoing reorganization efforts, and would not further the interests of any stakeholder in these chapter 11 cases (save for the SOCAL Parties).

15.     Where, as here, third-party litigation against non-debtor parties may potentially interfere with the debtor's ongoing plan confirmation process, courts have applied the automatic stay to such litigation.  See, e.g., A.H. Robins Co. Inc. v. Piccinin, 788 F.2d 994, 1008 (4th Cir.

---

[5] For example, the SOCAL Parties allege that (i) Tribune made unjustifiable changes to its financial projections and that its October 2007 Plan (as defined in the SOCAL Complaint) relied on baseless assumptions to grossly inflate the projections (Compl. ¶¶ 69-74), (ii) Tribune misled Valuation Research Corporation regarding Morgan Stanley & Co.'s refinancing opinion (Compl. ¶¶ 69, 75-78), and (iii) Tribune ignored or failed to adequately address the Arrangers' purported solvency concerns with respect to the Step Two Transactions (Compl. ¶ 100).  Count Three of the SOCAL Complaint further alleges that the Arrangers induced Tribune to breach representations, warranties, conditions, and covenants contained in the Senior Loan Agreement (Compl. ¶ 155) and that the Arrangers aided and abetted or induced the breach of fiduciary duties by Tribune's officers and directors (Compl. ¶ 159), which presupposes that Tribune supposedly breached the Senior Loan Agreement and that Tribune's officers and directors allegedly breached their fiduciary duties.  Needless to say, the Debtors vigorously deny these and other related allegations, many of which have already been raised in the Debtors' pending chapter 11 cases, including the pleadings surrounding the Competing Plans.

46429/0001-7185315v1

1986) (in applying the automatic stay to third-party litigation against non-debtors, the Fourth

Circuit observed that "it seems incontestable that, if the suits are permitted to continue and

discovery allowed, any effort at reorganization of the debtor will be frustrated, if not

permanently thwarted"); In re W.R. Grace & Co., 115 Fed. Appx. 565, 570 (3d Cir.

2004)(unpublished) (Third Circuit held that "[t]he standard for the grant of a stay is generally

whether the [third-party] litigation…would interfere with, deplete or adversely affect property of

the estates or which would frustrate the statutory scheme of chapter 11 or diminish the debtor's

ability to formulate a plan of reorganization." (internal citations omitted)).

16.    Courts have also stayed third-party litigation against non-debtors where, as in the

present case, the legal and factual issues asserted in the action substantially overlap with issues

pertaining to the debtor's chapter 11 case that will likely be adjudicated by the bankruptcy court.

See, e.g., In re Eagle Enters., Inc., 265 B.R. 671, 680 (E.D. Pa. 2001) (enforcing the automatic

stay and finding that the bankruptcy court reasonably concluded that the third-party proceeding

at issue "would invite 'essentially duplicitous litigation' with the accompanying risk of

inconsistent rulings"); Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville

Corp.), 26 B.R. 420, 435-36 (Bankr. S.D.N.Y. 1983), aff'd, 40 B.R. 219 (S.D.N.Y. 1984) (in

staying third-party litigation, court concluded that "[r]esolution by one forum, preferably this

Court, of the many issues relating to… the liability of insurance carriers…will be in the best

interest of all parties in the reorganization proceedings… Fragmenting these relevant issues by

permitting various forums to decide the issues will frustrate prompt and effective formulation of

a plan of reorganization because of uncertainties with respect to [such liability].").

17.    Furthermore, where third-party litigation is likely to divert focus away from the

reorganization process, as the New York Action will undoubtedly do, courts have found that a

stay of the third-party litigation is appropriate. See, e.g., In re Johns-Manville Corp., 26 B.R. at

426 ("[t]he massive drain on the [debtor's management's] time and energy at this crucial hour of

plan formulation in either defending themselves or in responding to discovery requests could

frustrate if not doom their vital efforts at formulating a fair and equitable plan of

reorganization."); Gillman v. Continental Airlines, Inc. (In re Continental Airlines), 177 B.R.

475, 481 (D. Del. 1993) (in staying third-party litigation against non-debtors this Court

determined that "since the parties-defendant to these actions include various Continental officers

and directors who are heavily involved in Continental's reorganization efforts and since

discovery in those actions would impose burdens both on the directors and on Continental,

defense of these actions would substantially detract from the directors' reorganization efforts.").

18.    Because the prosecution and adjudication of the New York Action may (among

other things) (i) overlap substantially with numerous factual and legal issues that have been

raised, and may be adjudicated, as part of the plan confirmation process, (ii) distract the Debtors

(and their management) from their duties and responsibilities in these chapter 11 cases, and (iii)

potentially interfere with the Debtors' ongoing plan confirmation process, the New York Action

should be suspended pending the outcome of the plan confirmation hearing.

## CONCLUSION

19.    In light of the advanced stage of their ongoing Plan confirmation process, the

Debtors only request that the New York Action be treated in a similar manner as the Creditors'

Committee's LBO Actions, by suspending further litigation pending the outcome of the plan

confirmation hearing.[6]  In this manner, there should be a level playing field among all interested

parties, including the Creditors' Committee, the SOCAL Parties and the other proponents of the

---

[6] Similarly, the adversary proceeding brought by Wilmington Trust Company (*Wilmington Trust Company v. JPMorgan Chase Bank, N.A., et al.* (Adv. No. 10-50732)) has been "stayed until further Order of the Court" pursuant to an order entered on October 8, 2010. [Adv. No. 10-50732, Docket No. 39.]

46429/0001-7185315v1

Competing Plans. The suspension of the New York Action should not unduly prejudice the SOCAL Parties, as they may continue to prosecute the SOCAL Plan before this Court in accordance with applicable law and procedure.[7]

[Remainder of Page Left Intentionally Blank]

---

[7] The filing of this joinder is without prejudice to the Debtors, the Arrangers or any other party seeking any additional relief with respect to the New York Action (including, without limitation, seeking to extend the suspension thereof) pending the outcome of the plan confirmation hearing.

WHEREFORE, the Debtors respectfully request that the Court enforce the terms of the Mediation Order and suspend the New York Action pending the outcome of the plan confirmation hearing; and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
           November 19, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Jeffrey C. Steen
Allison Ross Stromberg
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

Steven M. Bierman
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-7185315v1