IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Re D.I. 6255 |

## OBJECTION OF STEP ONE PLAN PROPONENTS TO THE MOTION OF THE DEBTORS FOR AN ORDER (I) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLANS OF REORGANIZATION; (II) APPROVING FORMS OF BALLOTS, MASTER BALLOTS AND RELATED INSTRUCTIONS; (III) APPROVING SOLICITATION PACKAGE CONTENTS AND AUTHORIZING DISTRIBUTION OF SOLICITATION AND NOTICE MATERIALS; (IV) FIXING VOTING RECORD DATE; (V) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION; (VI) SETTLING CONFIRMATION SCHEDULE AND ESTABLISHING PARAMETERS OF CONFIRMATION-RELATED DISCOVERY; (VII) ESTABLISHING NEW DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS; (VIII) AUTHORIZING EXPANSION OF BALLOTING AND TABULATION AGENT'S RETENTION AND ALLOCATION OF COSTS OF SAME; AND (IX) GRANTING RELATED RELIEF

The Step One Plan Proponents,[1] by and through their undersigned counsel, respectfully submit this Objection to the motion (the "Motion") of the Debtors for an order (i) establishing procedures for solicitation and tabulation of votes to accept or reject plans of reorganization; (ii) approving forms of ballots, master ballots and related instructions; (iii) approving solicitation package contents and authorizing distribution of solicitation and notice materials; (iv) fixing voting record date; (v) establishing notice and objection procedures in respect of confirmation; (vi) settling confirmation schedule and establishing parameters of confirmation-related discovery; (vii) establishing new deadline for return of media ownership certifications; (viii)

---

[1] "Step One Plan Proponents" means the proponents of the Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Certain Holders of Step One Senior Loan Claims [D.I. 6185]. The Step One Plan Proponents currently hold approximately $812,000,000 in principal amount of Step One Loans.

authorizing expansion of balloting and tabulation agent's retention and allocation of costs of same; and (ix) granting related relief (D.I. 6255). In support of this Objection, the Step One Plan Proponents respectfully state as follows:

Preliminary Statement

1. The Step One Plan Proponents object to the discovery limitation proposal in the Motion. The Debtors do not make the Motion as a disinterested party proposing an even-handed procedure for an efficient confirmation. Nor are they an honest broker seeking to mediate the contest among the competing creditors. To the contrary, the Debtors are a Plan co-proponent whose partners are identified in the Examiner's Report as primary litigation targets. Nevertheless, the Debtors are supporting a Plan that allows their co-proponents to avoid the extensive and serious liability outlined in the Examiner's Report for entirely inadequate consideration. It is not surprising, therefore, that the Debtors now propose a procedure that protects those co-proponents and makes it more difficult for other Plan Proponents to attack the propriety of the grossly disproportionate settlement that the Debtors support. Those procedures, among other things, limit discovery and confirmation hearing testimony into the LBO-Related Causes of Action.

2. Relying upon the "exhaustive" investigation that the Examiner conducted into the LBO-Related Causes of Action, the Debtors seek to eliminate further merits-based discovery or expert testimony despite the fact that the reasonableness of the settlement of the LBO-Related Causes of Action is going to be one of the key issues at confirmation. Essentially, the Debtors are using the Examiner's investigation as a shield from further discovery without proposing whether or how the Examiner's report will be admissible in the confirmation process.

3. The Step One Proponents also object to the preposterous suggestion that the non-Debtor proponents pay 75% of the solicitation costs. This smacks of a poll tax. This solicitation

process is a bankruptcy estate enterprise for the ultimate benefit of the creditors of the estate. It should be paid for out of the common fund, the fund from which all creditors will be paid.

## Argument

### A. Discovery and Expert Limitations

4. The Motion seeks to limit confirmation-related discovery as follows: "No additional fact discovery regarding the merits of the LBO-Related Causes of Action will be conducted." (Proposed Order, ¶ 44.)

5. The Motion similarly seeks to limit the role of experts in confirmation: "Expert discovery and expert reports pertaining to the merits of the LBO-Related Causes of Action shall be limited to whether the settlements embodied in each of the Plans are fair, reasonable in the best interests of the Debtors' estates. " (*Id.*)

6. The basis for these limitations as articulated in the Motion (¶¶ 64 - 72) are the following: approval of the plan settlements requires only a canvassing of the issues to determine whether the settlement meets the lowest level of reasonableness; the parties have engaged in exhaustive discovery; the Examiner spent 3 months and $12 million to investigate, producing a 1200 page report with detailed conclusions on "numerous factual and legal issues" and providing 1100 exhibits of underlying documentation; the Examiner also "did extensive work relating to the financial issues"; and all the Examiner's work product is publicly available.

7. However, the Debtors leave out the crucial step that must follow: the admissibility of the Examiner's report. The Debtors have conveniently used the Examiner's investigation as a shield against further discovery without providing for its use as evidence in court. The Step One Plan Proponents believe that, either by ruling or stipulation, the underlying Report exhibits should be deemed authenticated and that all factual findings and legal conclusions in the Examiner's Report be admitted into evidence, without the requirement of testimony of the

3

Examiner. Further, all experts who testify at confirmation should be permitted to rely upon the findings in the Report. The Court may then afford the contents of the Report the weight that the Court deems appropriate. Indeed, this approach is consistent with the Court's previous announcement that the Examiner's report would "probably inform not just the parties, but the Court about the scope . . . of the confirmation hearing." 7/14/10 Tr. at 44-45. Moreover, the admission into evidence of the full report and all exhibits thereto will narrow the need for broader discovery.

8. Once the Report is fully admissible, parties will undoubtedly challenge either factual or legal conclusions. Expert testimony on the merits of the LBO-related causes of Action will be a crucial part of this process. In fairness, this must be permitted and that new evidence subject to appropriate challenge. This will require further but limited discovery on the LBO-Related Causes of Action. However, such discovery will not be open-ended as the Debtors imply. It will be limited in the usual way, by judging relevance and by limiting the use of discovery devices (i.e. the number of depositions, the number of interrogatories, the number of document demands, etc.) and by the apportionment of time at the confirmation hearing. In short, efficiency will be achieved by limiting devices and time not by limiting content.

9. This further limited discovery into the LBO-Related Causes of Action will provide the opportunity to clear up crucial discovery matters regarding the production of JPMorgan and other Lead Banks which the Examiner was unable to resolve because of the deadlines under which he was operating. "At a minimum, the Examiner greeted portions of the testimony furnished by witnesses for the Lead Banks with a healthy dose of skepticism." (Vol. II, p. 337.) His disbelief was in large part based upon the Lead Banks' highly questionable assertion of attorney-client privilege, which the Examiner said he not have time to challenge.

(*Id.*) Further, the Examiner took note of the fact that JPMorgan did not produce any email or memoranda regarding the crucial solvency analysis it and other Lead Banks prepared. (Vol II, p. 274.) This void strains credulity and shows the need for further investigation as part of the confirmation process.

10. Thus, the work of the Examiner is crucial to the confirmation process. Full and fair adjudication of the settlements which shall be before the Court at confirmation requires a full inclusion and full airing of the Examiner's Report as well as the opportunity to delve into certain crucial areas where the Examiner was frustrated in his efforts.

B. Sharing of Solicitation Costs

11. The Motion also seeks to impose a tax upon the Plan Proponents. The proposed Order (¶ 41) provides that 75% of the Voting Agents' fees, costs and expenses shall be shared pro-rata by the three non-Debtor Plan Proponents. Presumably, the other 25% will be paid by the Debtors. The Motion (¶ 59) does not provide a rationale for this unusual sharing of the Debtors' function and expense. This is an estate expense just as the legal fees and expenses incurred for the preparation of the Motion are an estate expense. The solicitation and confirmation process are for the benefit of the estate. The Debtors provide no legal or other precedential basis for the proposed sharing of the Voting Agent expenses and it should be rejected out of hand.

Conclusion

WHEREFORE, the Step One Plan Proponents respectfully request that the Court: deny the relief requested as set forth herein and grant such other relief as appropriate.

Dated: November 19, 2010

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Daniel Butz*
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: 302.658.9200
Facsimile: 302.658.3989


ARKIN KAPLAN RICE LLP
Howard Kaplan
Johnny Yeh
Deana Davidian
590 Madison Avenue, 35th Floor
New York, NY 10022
Telephone: 212.333.0200
Facsimile: 212.333.2350

OLSHAN GRUNDMAN FROME ROSENZWEIG
& WOLOSKY LLP
Adam Friedman
Steve Wolosky
Fredrick Levy
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: 212.451.2300
Facsimile: 212.451.2222

BRACEWELL & GIULIANI LLP
Evan Flaschen
Daniel Connolly
Andrew Schoulder
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT 06103-1516
Telephone: 860-256-8537
Facsimile: 860-760-6310
*Counsel to the Step One Credit Agreement Lenders*

3912041.2