## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Hearing Date:** November 29, 2010 at 10:00 am (ET) |
| | ) **Objection Deadline:** November 19, 2010 at 4:00 p.m. (ET) |
| | ) |
| | ) **Ref. Docket No. 6255** |

**OBJECTION OF THE PRE-LBO DEBTHOLDER PLAN PROPONENTS TO DEBTORS' MOTION SEEKING, AMONG OTHER THINGS, (I) APPROVAL OF FORMS OF BALLOTS, MASTER BALLOTS AND RELATED INSTRUCTIONS; (II) FIXING VOTING RECORD DATE; (III) ESTABLISHMENT OF NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION; AND (IV) AUTHORIZING EXPANSION OF BALLOTING AND TABULATION AGENT'S RETENTION AND ALLOCATION OF COSTS OF SAME**

Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius"),

Deutsche Bank Trust Company Americas, in its capacity as Successor Indenture Trustee for

certain series of Senior Notes ("Deutsche Bank"), Law Debenture Trust Company of New York,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

in its capacity as Successor Trustee for certain series of Senior Notes ("Law Debenture"), and

Wilmington Trust Company, in its capacity as the PHONES Notes Indenture Trustee

("Wilmington Trust" and, together with Aurelius, Deutsche Bank and Law Debenture, the "Pre-

LBO Debtholder Plan Proponents"), each by and through its undersigned counsel, respectfully

submit this objection (the "Objection") to the Motion of the Debtors (the "Solicitation

Procedures Motion")[2] for Entry of an Order (the "Solicitation Procedures Order") (i)

Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject Plans of

Reorganization; (ii) Approving the Forms of Ballots, Master and Related Instructions, to be Used

in Voting to Accept or Reject the Plans; (iii) Approving the Contents of the Solicitation Packages

and Authorizing the Distribution of Solicitation and Notice Materials; (iv) Fixing the Voting

Record Date; (v) Establishing Notice and Objection Procedures in Respect of Confirmation; (vi)

Setting Confirmation Schedule and Establishing Parameters of Confirmation-Related Discovery;

(vii) Establishing a New Deadline for Return of Media Ownership Certifications; (viii)

Authorizing Expansion of Balloting and Tabulation Agent's Retention and Allocation of Costs of

Same (the "Voting Agent"); and (ix) Granting Related Relief.  This Objection pertains only to (i)

the approval of forms of Ballots, Master Ballots and Instructions; (ii) fixing the Voting Record

Date; (iii) the establishment of noticing and objection procedures in respect of confirmation; and

---

[2] Capitalized terms used but not defined, herein shall bear the meaning ascribed to them in the Solicitation Procedures Motion.

(iv) the allocation of costs of the Voting Agent.[3]  In support of the Objection, the Pre-LBO

Debtholder Plan Proponents respectfully submit as follows:

## PRELIMINARY STATEMENT

1.        Beginning at least a week prior to the filing of the Solicitation Procedures Motion,

in anticipation of potential issues regarding the Ballots for the Pre-LBO Debtholder Plan (as

defined below) and hoping to obviate the need for any objections to the solicitation procedures or

related materials, counsel for Aurelius made several attempts to obtain draft solicitation materials

(including the draft Ballots and related instructions) from Debtors' counsel.  Despite these

repeated requests, it was not until shortly before the Solicitation Procedures Motion was filed

that Debtors' counsel provided Aurelius's counsel with draft Ballots and instructions for the Pre-

LBO Debtholder Plan.  As a result, the Pre-LBO Debtholder Plan Proponents did not have

sufficient time to conduct an appropriate review of the proposed Ballots prepared by the Debtors

for the Pre-LBO Debtholder Plan or the specific instructions related thereto.  In addition,

Debtors' counsel refused to provide Aurelius with any other solicitation-related materials prior to

filing the Solicitation Procedures Motion despite knowing that the Pre-LBO Debtholder Plan

Proponents would have an interest in reviewing and commenting upon such materials to ensure

they conformed to the Pre-LBO Debtholder Plan.  As a result, the Pre-LBO Debtholder Plan

Proponents have been left with no choice but to file this Objection in order to obtain relief from

this Court to correct the infirmities in the proposed solicitation materials and other contents of

the Solicitation Packages.

---

[3] The Pre-LBO Debtholder Plan Proponents intend to file two additional objections to the Solicitation Procedures Motion as it relates to (i) the procedures for submitting Media Ownership Certificates and (ii) the contours of the confirmation hearing.  The objection to the procedures for submitting Media Ownership Certificates is being filed contemporaneously with this Objection.  The Debtors have granted the Pre-LBO Debtholder Plan Proponents an extension through and including November 22, 2010 to file an objection to the contours of the confirmation hearing.

2.    The Pre-LBO Debtholder Plan Proponents objections to the Solicitation

Procedures Motion, which are explained in greater detail below, include the following:

- As noted in the Pre-LBO Debtholder Plan Proponents' objection to the Debtor/Committee/LBO Lender Disclosure Statement (as defined below), the proponents of the Debtor/Committee/LBO Lender Plan (as defined below) have taken to referring to their plan as the "Settlement Plan" and the Pre-LBO Debtholder Plan as the "Litigation Plan." The Debtors and their co-proponents continue to appear to believe that they gain a tactical advantage before this Court and with creditors entitled to vote on the respective plans by mischaracterizing the competing plans of reorganization in this fashion. The Pre-LBO Debtholder Plan Proponents continue to object to such terms being used to describe these plans and respectfully submit that the Court should order the various plan proponents to refer to each of the plans on file in these cases appropriately. In that regard, the Pre-LBO Debtholder Plan Proponents reaffirm their proposal that each of the respective plan proponents be ordered to use the defined terms contained in this Objection (i.e., "Debtor/Committee/LBO Lender Plan," "Step One Lender Plan," "Bridge Lender Plan" and "Pre-LBO Debtholder Plan," collectively, the "Competing Plans") for each of the Competing Plans and for all purposes related to these Chapter 11 Cases (including in connection with all of the materials to be contained in the Solicitation Packages) in order to, among other things, prevent the solicitation of votes using unacceptably slanted materials.

- The Ballots in respect of the Pre-LBO Debtholder Plan (the "Pre-LBO Debtholder Plan Ballots") and corresponding instructions (the "Pre-LBO Debtholder Plan Specific Instructions") must be revised to provide creditors with a proper and complete explanation of the various elections that can be made when voting on the Pre-LBO Debtholder Plan and the consequences of making such elections.

- The Debtors' proposal that creditors indicate a preference on the Ballots for only *one* of the Competing Plans should be modified to provide that creditors rank all of the Competing Plans from most preferred to least preferred as it has yet to be determined which Competing Plan(s) will be confirmable.

- The proposed Record Date of November 9, 2010 should be changed to the date that this Court enters an order approving solicitation procedures for each of the Competing Plans.

- An interim deadline must be established for the filing of objections to claims to ensure that holders of disputed claims have a reasonable opportunity to file a motion under Bankruptcy Rule 3018 to have their claims deemed allowed for voting purposes.

4

- The costs and expenses to be incurred by the Voting Agent in connection with the preparation and mailing of the Solicitation Packages should be borne by the Debtors' Estates and not split among proponents of the various Competing Plans.

3.    The Pre-LBO Debtholder Plan Proponents submit that unless the foregoing issues, as well as the additional issues described below, are addressed prior to solicitation, the ability of creditors to understand and participate in the solicitation process and appreciate the consequences of their votes and elections on the respective Competing Plans will be impaired.

## RELEVANT BACKGROUND

4.    On October 18, 2010, this Court entered its Order Scheduling a Hearing and Establishing Certain Deadlines to Consider Approval of Certain Disclosure Document(s) [Docket No. 6022] (the "Scheduling Order"). The Scheduling Order, among other things, provided for the following:

(i)    the Debtors to prepare and file a general disclosure document containing information about the Debtors' businesses, history, and other information of general relevance to the solicitation process (the "General Disclosure Statement") by October 22, 2010;

(ii)   the Debtors, together with any co-proponents, to prepare and file a plan of reorganization and a specific disclosure document relating thereto on October 22, 2010;

(iii)  any parties wishing to propose competing plans of reorganization for the Debtors file such competing plans, together with an appropriate specific disclosure statement, by October 29, 2010; and

(iv)   established November 29, 2010 as the hearing date to consider the adequacy of the General Disclosure Statement and the specific disclosure statements for any competing plan.

5.    In accordance with the Scheduling Order, the following specific disclosure statements and related plans of reorganization have been filed:

(i)    the Specific Disclosure Statement Relating to Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo Gordon

5

& Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 6091] (the "Debtor/Committee/LBO Lender Disclosure Statement") and the related Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 6089] (the "Debtor/Committee/LBO Lender Plan");

(ii)    the Specific Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [Docket No. 6182] (the "Pre-LBO Debtholder Disclosure Statement") and the related Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [Docket No. 6184] (the "Pre-LBO Debtholder Plan");

(iii)    the Specific Disclosure Statement For Plan Of Reorganization For Tribune Company and Its Subsidiaries Proposed by Certain Holders of Certain Step One Senior Loan Claims (collectively, the "Step One Lenders") [Docket No. 6183] (the "Step One Lender Disclosure Statement") and the related Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Certain Holders of Step One Senior Loan Claims [Docket No. 6185] (the "Step One Lender Plan"); and

(iv)    the Specific Disclosure Statement for Joint Plan of Reorganization for Tribune and Its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management, L.P. [Docket No. 6187] (the "Bridge Lender Disclosure Statement" and, together with the Debtor/Committee/LBO Lender Disclosure Statement, the Pre-LBO Debtholder Disclosure Statement and Step One Lender Disclosure Statement, the "Disclosure Statements") and the related Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. [Docket No. 6186] (the "Bridge Lender Plan").

**OBJECTION**

I.    **The Solicitation Procedures Should Use Non-Inflammatory Terms When Referring to the Competing Plans**

6.      In order to ensure that the solicitation process in conducted in a fundamentally fair manner to the proponents of each of the Competing Plans and the creditors of these estates, the Pre-LBO Debtholder Plan Proponents respectfully submit that the proponents of each of the other Competing Plans should be prohibited from referring to the respective Competing Plans with self-serving definitions that are clearly intended to mislead voting creditors regarding the bona fides of the Competing Plans.  For example, each of the proponents of the Debtor/Committee/LBO Lender Plan refers to their plan as the "Settlement Plan" and the Pre-LBO Debtholder Plan as the "Litigation Plan."  These self-serving definitions misstate the true characterization of these plans of reorganization and the use of such terms should not be countenanced by this Court.  Indeed, the Debtor/Committee/LBO Lender Plan, like the Pre-LBO Debtholder Plan, contemplates the establishment of a litigation trust and creditors' trust to pursue the viable causes of action related to the Debtors' leveraged buyout following the Debtors' emergence from chapter 11.  The only distinguishing difference between the Debtor/Committee/LBO Lender Plan and the Pre-LBO Debtholder Plan is that the Debtor/Committee/LBO Lender Plan seeks to settle certain of the Estates' important, valuable causes of action for inappropriately low consideration.  Therefore, rather than permitting the use of self-serving and misleading definitions, this Court should order the proponents of each of the Competing Plans to use the defined terms contained in this Objection for each of the proposed plans (i.e., "Debtor/Committee/LBO Lender Plan," "Pre-LBO Debtholder Plan," "Bridge Lender Plan," and "Step One Lender Plan") in matters relating to these Chapter 11 Cases including the solicitation procedures and Ballots.

7

II.    **The Proposed Pre-LBO Debtholder Plan Ballots and Pre-LBO Debtholder Plan Specific Instructions Are Misleading**

A.    **The Proposed Pre-LBO Debtholder Plan Specific Instructions and Pre-LBO Debtholder Plan Ballots Contain Insufficient and Incorrect Information**

7.    The Pre-LBO Debtholder Plan Ballots, as proposed by the Debtors, among other things, contain (i) inadequate descriptions of certain key provisions of the Pre-LBO Debtholder Plan and (ii) inaccurate references to the Pre-LBO Debtholder Plan, each of which must be revised prior to the finalization of the Solicitation Packages.  Specifically, and as demonstrated in further detail by the revised Pre-LBO Debtholder Plan Specific Instructions and Pre-LBO Debtholder Plan Ballots annexed hereto as <u>Exhibit A</u> (and the redlines of such documents against the respective documents filed by the Debtors, which redlines are annexed hereto as <u>Exhibit B</u>), the Debtors' proposed Pre-LBO Debtholder Plan Ballots contain the following infirmities:

- **Instructions**:  In addition to several pages of Pre-LBO Debtholder Plan Specific Instructions, the Debtors propose to incorporate several pages of instructions on each of the Pre-LBO Debtholder Plan Ballots.  Such additional instructions are duplicative and repetitive, and will only serve to confuse creditors who will already have to parse through four separate sets of Disclosure Statements and Ballots in voting on, and making their elections under, the Competing Plans.  The Pre-LBO Debtholder Plan Proponents therefore prefer to have one set of master Pre-LBO Debtholder Plan Specific Instructions, and omit the repetition of such instructions on the Pre-LBO Debtholder Plan Ballots (except where otherwise required for explanatory purposes, as reflected on <u>Exhibit A</u> hereto).

- **Put Options**: As currently proposed, the Pre-LBO Debtholder Plan Specific Instructions and the voting sections of the Other Parent Claims Ballot and Other Guarantor Debtor Claims Ballot contain inaccurate and incomplete explanations of the Put Options and the consequences of making such elections.  As a result, creditors voting on the Pre-LBO Debtholder Plan would be forced to search for an explanation in the Pre-LBO Debtholder Plan. However, the proposed Pre-LBO Debtholder Specific Instructions and Pre-LBO Debtholder Specific Ballots make this impossible as they improperly refer creditors to the definitions section (specifically, section 1.1.188) of the Pre-LBO Debtholder Plan for an explanation of the Put Options instead of the operative provision contained in section 5.14 of the Pre-LBO Debtholder Plan. The Pre-LBO Debtholder Plan Proponents believe that it is imperative that creditors be made aware of the consequences of this election on the Ballot as

8

well as have accurate references to the operative provisions of the Pre-LBO Debtholder Plan. These infirmities are remedied through the revised documents attached as <u>Exhibit A</u>.

- **Non-Contribution Election**: As currently proposed, the Pre-LBO Debtholder Plan Specific Instructions and the voting sections of the Pre-LBO Debtholder Plan Ballots contain inaccurate and incomplete explanations of the Non-Contribution Election and the consequences of making such election thus, forcing creditors to search for an explanation in the Pre-LBO Debtholder Plan. Furthermore, as with the Put Options, the proposed drafts of the Pre-LBO Debtholder Plan Specific Instructions and Pre-LBO Debtholder Plan Ballots improperly refer creditors to the definitions section (specifically, section 1.1.167) of the Pre-LBO Debtholder Plan for an explanation of the Non-Contribution Election instead of the operative provision contained in section 5.18.2 of the Pre-LBO Debtholder Plan. The Pre-LBO Debtholder Plan Proponents believe that it is imperative that creditors be made aware of the consequences of this election on the Ballot as well as have accurate references to the operative provisions of the Pre-LBO Debtholder Plan. These infirmities are remedied through the revised documents attached as <u>Exhibit A</u>.

8.     In order to rectify the foregoing flaws and the other inadequacies discussed in greater detail below, the Pre-LBO Debtholder Plan Proponents request that the Court approve all of the modifications to the Pre-LBO Debtholder Plan Specific Instructions and Pre-LBO Debtholder Plan Ballots as reflected in <u>Exhibits A</u> and <u>B</u> hereto.

    **B.     The Plan Preference Election Should Be Changed to a Ranking System**

9.     Bankruptcy Code section 1129(c) provides, in pertinent part, that "the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c). In order to address this section, the Debtors have proposes that creditors indicate on their Ballots which single Competing Plan is their most preferred plan. While this structure may be generally acceptable when there are only two competing plans, there are four Competing Plans in these Chapter 11 Cases. At this time, it is unknown which, if any, of the four Plans will satisfy the necessary conditions for confirmation. Thus, requesting each creditor to select only its single "preferred" plan, which might ultimately not be a confirmable plan, could prevent this Court from appropriately applying Bankruptcy Code section 1129(c).

Therefore, the Pre-LBO Debtholder Plan Proponents submit that in order for this Court to have a comprehensive understanding of creditors' preferences with respect to all four Competing Plans, the "Election to Prefer a Plan" included on the Ballots should instead be restructured as a ranking system. This will ensure that even if a creditor's "preferred" Competing Plan is not confirmable, the Court will be able to consider the relative preferences of creditors vis-à-vis the remaining, confirmable, Competing Plans.

10.    Furthermore, as currently drafted, creditors must vote to "accept" the Competing Plan that they prefer the most – possibly giving the misleading message to creditors that if enough creditors vote to accept and to prefer such Competing Plan, it will certainly be confirmed. Instead, the Pre-LBO Debtholder Plan Proponents believe that the ability to rank the Competing Plans should not be conditioned on a vote to accept a given Competing Plan. Indeed, Bankruptcy Code section 1129(c) does not condition the consideration of a creditor's preference on the creditor's decision to accept or reject any or all proposed plans. 11 U.S.C. § 1129(c). A ranking system would take into account that creditors may have preferences on all of the Competing Plans – even those that they decide to abstain from voting on or vote to reject.

11.    Therefore, the Pre-LBO Debtholder Plan Proponents propose the replacement of current Item 2A on the Pre-LBO Debtholder Ballots (and each applicable Ballot for the Competing Plans with a corresponding provision) with the following:

> ELECTION TO RANK THE PRE-LBO DEBTHOLDER PLAN (OPTIONAL). You have the option to vote on all four Plans. You also have the option to rank your preferences among the Plans. If you wish to rank the Plans, you should check the box in item 2A of the respective ballots to designate whether, among the four Plans, you rank each Plan as your number 1, 2, 3 or 4 preference among all four Plans (with 1 being the most preferred Plan and 4 being your least preferred Plan).
>
> The undersigned elects to assign the following ranking to the **Pre-LBO Debtholder Plan** (check only one box):*

☐1          ☐2          ☐3          ☐4

*In order for your ranking to be counted (i) you must rank all four
Plans whether or not you voted on an applicable Plan, and (ii) not
have given any two Plans the same ranking. If you fail to rank all
Plans or give more than one Plan the same ranking, your ranking
will not be counted.*

**C.    The Pre-LBO Debtholder Ballots and Proposed Solicitation Procedures
Order Do Not Provide for Voting Mechanics in Respect of the PHONES
Notes Exchange Claims**

12.        As set forth in detail in the General Disclosure Statement and the Pre-LBO

Debtholder Specific Disclosure Statement, a subset of the original PHONES Notes were put to

Tribune for exchange prior to the Petition Date, with such claims referred to in the Pre-LBO

Debtholder Disclosure Statement and Pre-LBO Debtholder Plan as the "PHONES Notes

Exchange Claims." The Pre-LBO Debtholder Plan contemplates that the ultimate classification

of the PHONES Notes Exchange Claims will be determined at Confirmation. Despite the

overwhelming clarity of this issue in the Pre-LBO Debtholder Plan and Specific Disclosure

Statement, the Debtors' proposed Pre-LBO Debtholder Plan Ballots make no provisions for the

voting of such PHONES Notes Exchange Claims.

13.        Because the actual notes relating to such PHONES Notes Exchange Claims were

canceled by Tribune at the time the holders put such PHONES Notes to Tribune, the current

holders of the PHONES Notes Exchange Claims are not on record with Wilmington Trust or

DTC. Accordingly, the Pre-LBO Debtholder Plan Proponents seek the inclusion of a provision

in the Solicitation Procedures Order providing that with respect to PHONES Notes Exchange

Claims, the record holders of the underlying PHONES Notes that were put to Tribune, as of the

date that notice of tender was given, will be solicited. Such holders should then vote their

PHONES Notes Exchange Claims on the current Pre-LBO Debtholder Ballot for PHONES

Notes Exchange Claims but should return such Ballots directly to the Voting Agent, as there is no Voting Nominee for such Claims.

14.    In order to facilitate voting of the PHONES Notes Exchange Claims, the Pre-LBO Debtholder Plan Proponents propose that such claims be voted based upon the principal amount of PHONES Notes had such PHONES Notes not been put to Tribune. This will simplify matters from a tabulation perspective if the PHONES Notes Exchange Claims are found to be PHONES Notes Claims and, in the event that they are ultimately classified differently, the principal amount of such claims can easily be converted to the cash amount arising from exercise of the put option under the PHONES Notes Indenture.

15.    Accordingly, the Pre-LBO Debtholder Plan Proponents recommend the addition of the following language to both the Pre-LBO Debtholder Plan Specific Instructions and the Pre-LBO Debtholder Plan Ballot relating to the PHONES Notes Claims, along with the other changes reflected in Exhibits A and B hereto:

> For the avoidance of doubt, owners of PHONES Notes Exchange Claims should also use this Ballot to cast their votes under the Pre-LBO Debtholder Plan; provided, however, that to the extent the Bankruptcy Court determines that the PHONES Notes Exchange Claims are not properly classified as PHONES Notes Claims, the votes pertaining to such PHONES Notes Exchange Claims shall be applied to the applicable Class in which such Claims are classified.
>
> **The preprinted amount of your PHONES Notes Exchange Claim above will control for voting purposes only which is equal to the amount of PHONES Notes that you tendered to Tribune. VOTING THE PRINCIPAL AMOUNT OF PHONES NOTES YOU SOUGHT TO EXCHANGE DOES NOT MEAN THAT YOUR PHONES NOTES EXCHANGE CLAIM WILL BE ALLOWED IN THE AMOUNT OF THE PHONES NOTES YOU PREVIOUSLY HELD, OR THAT YOUR PHONES NOTES EXCHANGE CLAIM WILL RECEIVE THE TREATMENT AFFORDED TO THE PHONES NOTES CLAIMS UNDER THE PRE-LBO DEBTHOLDER PLAN. INSTEAD, THE AMOUNT STATED ABOVE SHALL**

GOVERN FOR VOTING PURPOSES ONLY, AND THE
AFOREMENTIONED ISSUES (INCLUDING THE
ALLOWED AMOUNT AND CLASSIFICATION OF
PHONES NOTES EXCHANGE CLAIMS) REMAIN
SUBJECT TO DETERMINATION BY THE BANKRUPTCY
COURT.

D.    **The Debtors' Proposed Record Date Is Unreasonable**

16.    Pursuant to the Solicitation Procedures Motion, the Debtors have requested that

the Court establish November 9, 2010, the date the Solicitation Procedures Motion was filed, as

the Record Date for determining which holders of claims should be entitled to vote on the

Competing Plans. The Pre-LBO Debtholder Plan Proponents believe that November 9, 2010 is

not an appropriate record date and, instead, the Record Date should be set as the date on which

this Court enters an order approving the Disclosure Statements as is generally contemplated by

Bankruptcy Rule 3018(a). See Fed. R. Bankr. P. 3018(a) ("a creditor whose claim is based on a

security of record shall not be entitled to accept or reject a plan unless . . . the creditor is the

holder of record of the security on the date the order approving the disclosure statement is

entered or another date fixed by the court, for cause, after notice and a hearing."). Indeed, it is

atypical to set voting record dates significantly in advance of the hearing to approve the

disclosure statement with little or no notice to the parties in interest. *See e.g., In re Uno*

*Restaurant Holdings Corp.*, et al., No. 10-10209 (MG) (S.D.N.Y. May 11, 2010) (setting voting

record date on same date that order approving the solicitation procedures was entered); *In re*

*Aventine Renewable Energy Holdings Inc., et al.*, No. 09-11214 (KG) (D. Del. Jan. 13, 2010)

(same); *In re Spansion, Inc., et al.*, No. 09-10690 (KJC) (Bankr. D. Del. Dec. 14, 2009) (same);

*In re M. Fabrikant & Sons Inc. and Fabrikant – Leer International, LTD.*, No. 06-12737 (SMB)

(S.D.N.Y. Nov. 7, 2009) (same); *In re Frontier Airlines Holdings, Inc., et al.*, No. 08-11298

(RDD) (S.D.N.Y. Jul. 22, 2009) (same); *In re Bally Total Fitness of Greater New York Inc., et al.*,

13

No. 08-14818 (BRL) (S.D.N.Y. Jul. 9, 2009) (same); *In re National Dry Cleaners Inc. et al.*, No.
08-11382 (CSS) (D.Del. Apr. 24, 2009) (same); *In re Masonite Corp., et al.*, No. 09-10844 (PJW)
(D. Del. Apr. 17, 2009) (same); *In re Wellman, Inc., et al.*, No. 08-10595 (SMB) (S.D.N.Y. Nov.
12, 2008) (same); *In re Supplements LT, Inc. et al.*, No. 08-10446 (KJC) (D. Del. Aug. 21, 2008)
(same); *In re Metromedia Fiber Network, Inc., et al.*, No. 02-22736(ASH) (S.D.N.Y. Jul. 2, 2003)
(same); *see also, In re Goody's Family Clothing Inc., et al.*, No. 08-11133 (CSS) (D. Del. Aug.
25, 2008) (setting voting record date at 21 days after solicitation procedures was entered); *In re
R.H. Donnelley Inc., et. al.*, No. 09-11833 (KG) (D. Del. Oct. 21, 2009) (setting voting record
date for nine days after solicitation procedures order was entered); *In re Tropicana
Entertainment, LLC, et al.*, No. 08-10856 (KJC) (D. Del. Mar. 6, 2009) (setting voting record
date for four days after solicitation procedures order was entered); *In re Owens Corning, et al.*,
No. 00-03837 (JFK) (D. Del. Jun. 20, 2006) (setting voting record date as two days after the later
of (a) entry of the solicitation procedures order or (b) entry of an order approving the disclosure
statement); *In re Pliant Corp., et al.*, No. 09-10443 (MFW) (D. Del. Aug. 17, 2009) (setting
voting record date for one day after solicitation procedures order was entered); *In re Semcrude,
L.P., et al.*, No. 08-11525 (BLS) (D. Del. Jul. 21, 2009) (same); *In re Landsource Communities
Development LLC, et al.*, No. 08-11111 (KJC) (Jun. 2, 2009) (same); *In re Western Nonwovens,
Inc., et al.*, No. 08-11435 (PJW) (D. Del. Mar. 18, 2010) (setting voting record date three days
before solicitation procedures order was entered); *In re Skybus Airlines, Inc.*, No. 08-10637 (CSS)
(D.Del. Mar. 5, 2009) (setting voting record date for four days before solicitation procedures
order was entered); *In re TCI2 Holdings, LCC, et al.*, No. 09-13654 (JHW) (D.N.J. Jan. 8, 2010)
(setting voting record date for five days before solicitation procedures order was entered); *In re
Spansion Inc., et al.*, No. 09-10690 (KJC) (D. Del. Dec. 18, 2009) (same); *In re Global*

14

*Motorsport Group., Inc. et al.*, No. 8-10192 (KJC) (D. Del. Oct. 23, 2009) (same); *In re General*

*Growth Properties, Inc., et al.*, No. 09-11977 (ALG) (S.D.N.Y. Dec. 1, 2009) (same); *In re*

*Young Broadcasting Inc., et al.*, No. 09-10645 (AJG) (S.D.N.Y. Nov. 6, 2009) (same).

17.    Establishing a Record Date that is twenty days in advance of the hearing to

consider the Solicitation Procedures and approval of the Disclosure Statements provides

creditors with insufficient notice and, if approved, could serve to, among other things, prevent

creditors from closing trades or otherwise attending to necessary administrative matters

respecting their positions within these cases that could impact their ability to vote.  In addition, a

Record Date of November 9, 2010 could result in creditors that do not own claims voting on the

Competing Plans.  Moreover, based on the timeline proposed by the Debtors themselves,

wherein solicitation will likely begin in mid-December, a Record Date that coincides with entry

of the Solicitation Procedures Order provides the Voting Agent with more than adequate time to

prepare the Solicitation Packages for mailing.  The Pre-LBO Plan Proponents therefore request

that Record Date be established as the date the Solicitation Procedures Order is entered by the

Court.

## III.    The Debtors' Proposed 3018 Motion Procedures Are Incomplete

18.    Bankruptcy Rule 3018(a) provides, in pertinent part, that "[n]otwithstanding

objection to a claim or interest, the court after notice and hearing may temporarily allow the

claim or interest in an amount which the court deems proper for the purpose of accepting or

rejecting a plan." Fed R. Bank. P. 3018(a).  Pursuant to the Solicitation Procedures Motion, the

Debtors have requested that any creditor whose claim is subject to an objection or otherwise

desires to have its claim allowed for voting purposes must file a motion with the Court under

Bankruptcy Rule 3018(a) on or before January 15, 2011 (the "3018 Motion Deadline").  The

Debtors' proposed procedures are insufficient, however, because the Debtors have failed to

provide a deadline by which claims objections must be filed in order for creditors with disputed claims to file an appropriate motion under Bankruptcy 3018. Without such a deadline, creditors whose claims are objected to on or after the 3018 Motion Deadline will be left with no recourse to have their votes on the Competing Plans counted and effectively will be disenfranchised from the Competing Plan process. Accordingly, the Court should establish a deadline by which claims objections must be filed in order for such claim objection to limit a creditors' ability to vote on the Competing Plans absent such creditor filing a motion under Bankruptcy Rule 3018.

**IV.    The Debtors' Estates Should Be Required to Pay the Costs of Solicitation**

19.    The Debtors' Estates and their creditors are the primary beneficiaries of the competing plan process and, as such, should be required to pay the fees, costs and expenses incurred by the Voting Agent in connection therewith. *See, e.g., In re TCI 2 Holdings, LLC, et al.*, No. 09-13654 (JHW) (Bankr. D.N.J. Jan. 8, 2010) ("[t]he Debtors shall be responsible for payment of all fees, costs, and expenses incurred by Garden City in its capacity as Solicitation Agent and in its capacity as Subscription Agent hereunder in connection with both Plans, including any expenses incurred by Garden City relating to the reimbursement of Intermediary Record Owner's reasonable, documented, costs and expenses associated with the distribution of copies of the respective Accredited Investor Questionnaires, Ballots and Solicitation Packages.").

20.    Furthermore, the costs of soliciting four plans, as opposed to one, should be only nominally higher. For the most part creditors are receiving the majority of the materials on CD-ROM, as opposed to voluminous paper copies. This substantially reducing the cost of the materials (i.e., thousands of additional CD-ROMs, which are relatively inexpensive in comparison to thousands of additional pounds of paper) and minimizes the increased cost of mailing since all materials will be mailed in one envelope.

21.     Finally, and most importantly, the Debtors should not be allowed to intimidate and deter other constituencies from filing competing plans, which may ultimately prove to yield a far better result in these cases than the Debtor/Committee/LBO Lender Plan would, by threatening them with having to undertake the costs of solicitation when it is the creditor body that is the true beneficiary of this process.

## V.     **Additional Objections**

22.     The Pre-LBO Debtholder Plan Proponents also object to the following issues related to the Solicitation Procedures:

- **Voting by Intercompany Claims**:  The Debtors should not be permitted to reserve their rights to assert that Intercompany Claims should be entitled to vote on the Plans.  The votes of Intercompany Claim Holders are votes by "affiliates" as that term is defined in Bankruptcy Code section 101(2) and, accordingly, any Intercompany Claim Holder votes would not be counted to determine whether any of the Plans satisfy the Bankruptcy Code section 1129(a)(10) impaired accepting class requirement.  There is no purpose to increasing the costs of solicitation by allowing the Intercompany Claims to vote.

- **Beneficial Ballots Control**:  The Solicitation Procedures Order should be revised to expressly provide that the votes, elections and rankings on each of the Beneficial Ballots shall be recorded on each of the Master Ballots to ensure that the votes, elections and rankings of beneficial holders control for all purposes with respect to each of the Competing Plans.

- **Adjustments for Prepetition Interest**:  Paragraph 51 of the Solicitation Procedures Motion and paragraph 33 of the proposed Solicitation Procedure Order provide that the votes with respect to the Senior Noteholder Claims and PHONES Notes Claims will be based on the principal amount of notes held by Voting Nominees and Beneficial Owners on the Record Date, with the ability of the Voting Agent to adjust such amounts to account for prepetition interest.  The procedures by which the Voting Agent will adjust the principal amount of Senior Noteholder Claims and PHONES Notes Claims, however, is not disclosed.  The Pre-LBO Debtholder Plan Proponents submit that such procedure must be made known so that the holders of such claims can ensure that the calculations are done correctly.

23.    In sum, to ensure that the Pre-LBO Debtholder Plan is adequately presented to creditors entitled to vote on the Competing Plans, the Pre-LBO Debtholder Plan Proponents urge the Court to require the Debtors to correct the aforementioned deficiencies prior to entry of an order approving the Ballots, Instructions and other solicitation materials and approve the Pre-LBO Debtholder Plan Ballots and Specific Instructions in the form annexed hereto as <u>Exhibit A</u>.

## CONCLUSION

24.    For the foregoing reasons, the Pre-LBO Debtholder Plan Proponents respectfully request that the Court (a) deny the relief requested in the Solicitation Procedures Motion unless modified in accordance with this Objection and (b) grant such other and further relief as the Court deems just, proper and equitable.

Dated: Wilmington, DE
      November 19, 2010

*AMWinfre*

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*and*

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, NY 10036
(212) 872-1000

*Counsel for Aurelius Capital Management, LP*

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Tel:  (302) 429-1900
Fax:  (302) 429-8600

*and*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
Richard F. Casher
1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700
Fax:  (212) 506-1800

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

19

Dated: Wilmington, DE
     November 19, 2010

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*and*

AKIN GUMP STRAUSS HAUER & FELD
LLP

Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, NY 10036
(212) 872-1000

*Counsel for Aurelius Capital Management, LP*

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Tel:  (302) 429-1900
Fax:  (302) 429-8600

*and*

KASOWITZ, BENSON, TORRES & FRIEDMAN
LLP
David S. Rosner
Richard F. Casher
1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700
Fax:  (212) 506-1800

*Counsel for Law Debenture Trust Company of New
York, solely in its capacity as successor Indenture
Trustee for certain series of Senior Notes*

2

McCARTER & ENGLISH, LLP
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*and*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

*Counsel for Deutsche Bank Trust Company*
*Americas, solely in its capacity as successor*
*Indenture Trustee for certain series of Senior Notes*

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
302-428-8191

*and*

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

*Counsel for Wilmington Trust Company, solely in*
*its capacity as successor Indenture Trustee for the*
*PHONES Notes*

20

McCARTER & ENGLISH, LLP
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*and*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

*Counsel for Deutsche Bank Trust Company
Americas, solely in its capacity as successor
Indenture Trustee for certain series of Senior Notes*

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
302-428-8191

*and*

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

*Counsel for Wilmington Trust Company, solely in
its capacity as successor Indenture Trustee for the
PHONES Notes*