## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Hearing Date:** November 29, 2010 at 10:00 am (ET) |
| | ) **Objection Deadline:** November 22, 2010 at 4:00 p.m. (ET) |
| | ) |
| | ) **Ref. Docket No. 6414, 6485** |

### RESPONSE AND LIMITED OBJECTION
### OF AURELIUS CAPITAL MANAGEMENT, LP
### TO AMENDED MOTION OF THE OFFICIAL COMMITTEE OF
### UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE,
### STANDING AND AUTHORITY TO COMMENCE, PROSECUTE, SETTLE AND
### RECOVER CERTAIN CAUSES OF ACTION ON BEHALF OF THE DEBTORS'
### ESTATES ARISING UNDER AND PURSUANT TO 11 U.S.C. §§ 547 AND 550

Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius"), by and

through its undersigned counsel, respectfully submits this limited objection and response (the

"Response") to the Amended Motion of the Official Committee of Unsecured Creditors (the

"Committee") for Entry of an Order Granting Leave, Standing and Authority to Commence,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (5347); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Prosecute, Settle and Recover Certain Causes of Action on Behalf of the Debtors' Estates Arising

Under and Pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Standing Motion"). In support

of this Response, Aurelius respectfully submits as follows:

## PRELIMINARY STATEMENT[2]

1.     By the Preference Standing Motion, the Committee seeks entry of an order (the

"Proposed Order") granting it leave, standing and authority to commence, prosecute, settle and

recover on certain causes of action (the "Insider/Affiliate Preference Actions") on behalf of the

Debtors' estates arising under and pursuant to sections 547 and 550 of title 11 of the United

States Code (the "Bankruptcy Code") against (a) certain current and former Tribune insiders who

received payments from Tribune in the year prior to the Petition Date and (b) certain business

entities who are past or likely future owners of the Debtors and against which the Committee has

previously filed complaints.  The Committee proposes that, after they have commenced the

Insider/Affiliate Preference Actions, such actions will be stayed (with limited exceptions)[3]

pending a resolution of the competing plan process or certain other events enumerated in the

Proposed Order.

2.     The Committee represents in the Preference Standing Motion that, pursuant to the

results of an investigation undertaken by the Debtors of all potential causes of action that their

estates may have arising under and pursuant to Bankruptcy Code sections 547 and 550 (the

"Potential Preference Actions"), the Insider/Affiliate Preference Actions cover payments in

excess of $250 million.  *See* Preference Standing Motion at 6, ¶ 14.  According to the

Committee, due to "inherent conflicts" that "make it very difficult, if not impossible" for the

---

[2] Capitalized terms used, but not defined herein shall bear the meanings ascribed to them in the Preference Standing Motion.

[3] These limited exceptions consist of amending the complaints, completing service of the complaints and taking such other steps, including the immediate pursuit of discovery, as necessary for the purpose of preventing applicable statutes of limitations or other time related defenses from barring any of the claims.

Debtors to prosecute the Insider/Affiliate Preference Actions, the Debtors have authorized the Committee to prosecute the Insider/Affiliate Preference Actions on their behalf. *Id*. at 2, ¶ 2. Accordingly, the Committee has filed the Preference Standing Motion for this Court to ratify the Committee's authority to commence and prosecute the Insider/Affiliate Preference Actions.

3.      Although Aurelius generally supports the relief the Committee seeks in the Preference Standing Motion, for the reasons set forth below it is Aurelius's view that such relief does not go nearly far enough. Specifically, Aurelius believes that the Committee is better suited than the Debtors to commence and prosecute the Insider/Affiliate Preference Actions but that such Actions should be stayed pending a resolution of the competing plan process. Aurelius does have a limited objection to the Preference Standing Motion relating to the authority the Committee seeks with respect to settlements of the Insider/Affiliate Preference Actions and the provisions of the Proposed Order related thereto.

4.      Based on (a) the process undertaken by the Debtors to date to indentify and analyze Potential Preference Actions and (b) the fact that many of the defendants of the Insider/Affiliate Preference Actions are the very same parties with which the Committee is aligned in proposing the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 6089] (the "Debtor/Committee/LBO Lender Plan"), Aurelius has significant concerns with allowing the Committee (or the Debtors) to settle any Potential Preference Actions for which it is granted authority to pursue. Moreover, the proposed order contains ambiguous language that makes it difficult to discern the exact relief the Committee is seeking with respect to settlement authority. The Proposed Order provides that "**except as provided in the [Debtor/Committee/LBO**

3

**Lender Plan]** (emphasis supplied), neither the Debtors nor the Committee shall settle, subject to

the Court's approval, any of the Preference Actions without the other's consent unless and until

the earliest to occur of the following: (i) the Committee and/or the Debtors withdraw their

support for the [Debtor/Committee/LBO Lender Plan], (ii) the Court declines to confirm the

[Debtor/Committee/LBO Lender Plan], or (iii) April 1, 2011." Proposed Order at 2. The

foregoing language is unclear: what is it about the Debtor/Committee/LBO Lender Plan that

provides an exception allowing the Debtors or the Committee to seek to settle any of the

Insider/Affiliate Preference Actions?   Aurelius submits that the Proposed Order must be revised

to provide that pending the outcome of the competing plan process (or further order of this

Court), the Insider/Affiliate Preference Actions will be commenced and then stayed and no

settlements thereof shall be brought before this Court pending the outcome of the competing plan

process.

## RESPONSE

5.     Aurelius's primary issue with the Preference Standing Motion, however, is not

with the relief requested in the motion but, rather, with the relief that it does not request.

Aurelius believes that the Debtors have failed to appropriately investigate, analyze and preserve

what could be thousands of Potential Preference Actions and, as a result, the Committee should

have requested authority to commence all Potential Preference Actions, not just Insider/Affiliate

Preference Actions.  Notwithstanding the Committee's failure to request such relief, Aurelius

submits that this Court must, nevertheless, (a) grant the Committee standing to commence and

prosecute all of the Potential Preference Actions or obtain tolling agreements from the potential

defendants thereunder, in each case on or before the quickly approaching two-year anniversary

of the Petition Date (December 8, 2010), which is the statutory deadline for a representative of

4

the Debtors' estates to commence the Potential Preference Actions (the "Preference Action Bar Date"), (b) direct the Committee to commence or obtain tolling agreements by the Preference Action Bar Date with respect to all Potential Preference Actions without regard to any perceived defenses thereto, (c) stay any Potential Preference Actions actually commenced by the Committee in the same manner as the Insider/Affiliate Preference Actions and (d) prohibit the Committee from settling any of the Potential Preference Actions pending the resolution of the competing plan process. Absent the Court mandating this relief, Aurelius believes that the Debtors' estates and its creditors may be prejudiced by the potential loss of tens of millions, if not hundreds of millions of dollars, in the form of potential preference recoveries.

6.      As of the date of this Response, despite the fact that the Preference Action Bar Date is only 16 days away and the Debtors have identified over $900 million in prepetition payments made within the 90 days prior to the Petition Date that may be subject to avoidance as preferential transfers, the Debtors and the Committee have failed to commence a single Potential Preference Action. As the Preference Action Bar Date rapidly approaches and with not a single Potential Preference Action having been commenced or a single tolling agreement having been filed in respect of the Potential Preference Actions, Aurelius's concerns over the Debtors' intention to maximize the value for the benefit of their creditors has continued to escalate.

7.      Debtors' counsel has attempted to ease the fears of creditors by representing that an analysis of the Potential Preference Actions was commenced prior to the filing of the Debtors' "Original Plan" on April 12, 2010 (*Joint Plan of Reorganization for Tribune Company and Its Subsidiaries – Exhibit A to Disclosure Statement for Joint Plan of Reorganization for Tribune Company and Its Subsidiaries*, [Docket No. 4008]).[4] Recent revelations, however, have

---

[4] Aurelius notes that both the Original Plan and the Debtor/Committee/LBO Lender Plan seek to release all avoidance claims, including all Potential Chapter 5 Preference Actions. *See* Original Plan § 11.2.6,

disclosed that the Debtors waited until the eleventh hour to commence an earnest review of the

Potential Preference Actions.  *See* October 22, 2010 Hearing Transcript [Docket No. 6095] at 37

(the "October 22 Transcript") ("The ongoing process was started before the original plan was

proposed . . . . The scrutiny that we and the creditors committee have engaged since that plan is

no longer in play and particularly in conjunction with the last month of activities has been very

much more intense and focused as we dig a whole lot deeper about all the potential preference

causes of action.").    Furthermore, it was not until the October 22, 2010 hearing before this

Court that counsel for the Debtors even outlined and purportedly solidified its strategy for

analyzing the Potential Preference Actions.  *See id.* at 53-55.

       8.      Late in the evening of October 28, 2010, in preparation for a telephonic

conference meeting scheduled for October 29, 2010, the Debtors provided Aurelius's counsel

with an analysis of the Potential Preference Actions.  In all, there were two telephonic meetings

and one in-person meeting to review the Debtors' ongoing preference analysis.  Through

Aurelius's participation in these meetings and its review of information provided by the Debtors,

certain facts, some of which are alarming, have come to light:

          a.     The Debtors have identified (i) payments in excess of $900 million made
to non-insider third parties within 90 days prior to the Petition Date and (ii) payments in excess
of $268 million made to insiders within one year prior to the Petition Date.

          b.     Based on the Debtors' own analysis of potential defenses (or the
imposition of thresholds below which the Debtors have determined not to pursue preference
actions) to the 90 day potential preference payments referenced above has led the Debtors to
conclude that only $309 million of the $900 million of payments should be attacked.

---

Debtor/Committee/LBO Lender Plan at § 11.2.1.  All outward appearances indicate that the Debtors believed they
could conduct a less than thorough and timely review of the Potential Preference Actions due to their intention of
not having to commence and prosecute the Potential Preference Actions by virtue of confirmation of the Original
Plan or Debtor/Committee/LBO Lender Plan.

c.    The Debtors' analysis identified potential preferential payments made to three significant vendors (the "Significant Vendors"), each of which is currently a debtor in its own chapter 11 proceeding. The payments made to the Significant Vendors within the 90 day period exceed $60 million. However, *the deadline for filing proofs of claim in each of the chapter 11 cases of the Significant Vendors has passed, without the Debtors ever having filed proofs of claim to preserve these potential preference actions or any other claims against the Significant Vendors, potentially costing the Debtors' estates and their creditors many millions of dollars in potential recoveries.*[5]

9.    In light of the foregoing, counsel for Aurelius has questioned Debtors' counsel regarding (a) what Potential Preference Actions the Debtors intend to commence prior to the Preference Action Bar Date, (b) what Potential Preference Actions the Debtors intend to obtain tolling agreements for and (c) whether the Debtors intend to use Potential Preference Actions defensively under section 502(d) of the Bankruptcy Code to object to claims filed by recipients of potential preferences and, if so, which ones. On November 13, 2010, Aurelius's counsel sent an email to counsel for the Debtors setting forth these very questions (*see* Exhibit A hereto). Five days later, on November 18, 2010, Aurelius's counsel received a letter from Debtors' counsel, annexed hereto as Exhibit B, in response. This letter indicates that the Debtors and the Committee intend to commence actions or obtain tolling agreements with respect to only approximately $503 million of the over $1.1 billion of payments made during the applicable preference periods. Additionally, the letter – which is dated a mere twenty days prior to the

---

[5] The Debtors have asked Aurelius to keep the identity of the Significant Vendors confidential. The Debtors' failure to file protective proofs of claim in the chapter 11 bankruptcies of the Significant Vendors might, in and of itself, constitute breaches of fiduciary duty that might be actionable. Despite the failure of the Debtors to undertake a comprehensive and timely analysis of the Potential Preference Actions and the stunning admission by the Debtors that they failed to preserve potentially material claims against the Significant Vendors, the Committee – the purported fiduciary for general unsecured creditors –has shown a dire lack of concern for the remaining Potential Preference Actions, affording them mention in only one short, passing parenthetical in the introduction of the Preference Standing Motion, in which they state that "(The Debtors intend to promptly prosecute or toll other preference actions where there is no actual or perceived conflict.)" Preference Standing Motion at 5, ¶ 9. The Committee may be a more appropriate, but far from perfect, party to commence the Potential Preference Actions. For instance, despite its duties to general unsecured creditors, the Committee has, on two occasions, supported plans of reorganization that seek to waive all preference causes of action, which could yield hundreds of millions of dollars of additional value to the Debtors' estates. *See* Original Plan § 11.2.6; Debtor/Committee/LBO Lender Plan § 11.2.1. Yet, Aurelius and other non-conflicted parties-in-interest are left to rely on the Committee to diligently prosecute the Potential Preference Actions and request that the Court order as much.

7

Preference Action Bar Date – states in various places that analyses with respect to certain Potential Preference Actions are "ongoing" or are "being finalized" (*see* Exhibit B at 1, n.1, 2) and that certain requested data "is not reasonably accessible" (*see id.* at 2).

10.     The letter, full of remaining uncertainties, does little to alleviate Aurelius's fears that the Debtors and the Committee have not done a thorough and meticulous job of analyzing and preserving the Potential Preference Actions. Instead, it seems that much uncertainty still exists and that, even in light of the impending Preference Action Bar Date, the Potential Preference Actions, the defendants thereto and the amount of value they represent to the estates remain shrouded in mystery. Indeed, the Debtors have failed to identify which of the Potential Preference Actions or the amounts that could potentially be recovered through their prosecution will be commenced, nor have any of the fiduciaries in these cases disclosed to the Court or any other party-in-interest how they intend to proceed with respect to these Potential Preference Actions despite being only 16 days away from the Preference Action Bar Date.

11.     In sum, based on (a) the Debtors' intention in both the Original Plan and the current Debtor/Committee/LBO Lender Plan to waive all Potential Preference Actions, (b) the failure of Debtors' counsel to file proofs of claim in the bankruptcy cases of the Significant Vendors, (c) the fact that with only 16 days from the Preference Action Bar Date the Debtors have not identified who they will commence preference actions against (or obtain tolling agreements from) and the associated dollar amount of potential preference recoveries, and (d) that the Debtors' preference analysis (which apparently is still not complete) is heavily weighted to a rationale for not bringing the Potential Preference Actions rather than the other way around, Aurelius's concerns regarding the completeness of the investigation conducted by the Debtors are valid.

12.    Fearing that there are few other practical alternatives given the time constraints present here, Aurelius asks this Court to consider the request made in this Response as Aurelius's (and other similarly situated creditors) Plan B. As set forth in the October 22 Transcript, the Court stated: "No, the only comment I'll make on that is consistent with what I said before, and that is if the Debtor wants to finish that process, that's fine. My only concern is that it be finished in time so that those who might disagree would have the opportunity to ask the Court to consider a Plan B before statutes expire." October 22 Transcript at 38. Accordingly, in order to preserve any and all Potential Preference Actions that may yield additional recoveries for creditors of the Debtors' estates, Aurelius requests that the Court order (i) the Committee to commence all of the Potential Preference Actions, whether they are Insider/Affiliate Preference Actions or otherwise identified by the Debtors in their investigation or, alternately, obtain tolling agreements with respect to any Potential Preference Actions for which actions are not commenced, in each case prior to the Preference Action Bar Date and regardless of any perceived defenses that might reduce or eliminate a defendant's liability to the Debtors' estates on account of such preference; (ii) that upon the commencement of the Insider/Affiliate Preference Actions and other Potential Preference Actions, such actions will be stayed pending the completion of the competing plan process; (iii) no settlements of the foregoing preference actions will be approved prior to the completion of the competing plan process; and (iv) based on the Debtors' and Committee's stated intention to release all Potential Preference Actions and waste hundreds of millions of dollars in estate assets, upon completion of the competing plan process, that all Potential Preference Actions, whether commenced or tolled, be transferred to the applicable litigation trust contemplated to be established under any plan confirmed in these cases. These directives are vital to the preservation of the Potential Preference Actions, which

will be forever barred if such actions are not commenced (or tolling agreements are not obtained) prior to December 8, 2010.

## CONCLUSION

13.     For the foregoing reasons, Aurelius respectfully requests that the Court (a) grant the relief requested in the Preference Standing Motion as modified in accordance with the Response and (b) grant such other and further relief as the Court deems just, proper and equitable.

Dated: Wilmington, DE
November 22, 2010

Respectfully submitted,

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*and*

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, NY 10036
(212) 872-1000

*Counsel for Aurelius Capital Management, LP*

10