# **EXHIBIT B**



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP<br>ONE SOUTH DEARBORN STREET<br>CHICAGO, IL 60603<br>(312) 853 7000<br>(312) 853 7036 FAX | BEIJING<br>BRUSSELS<br>CHICAGO<br>DALLAS<br>FRANKFURT<br>GENEVA<br>HONG KONG<br>LONDON<br>LOS ANGELES | NEW YORK<br>PALO ALTO<br>SAN FRANCISCO<br>SHANGHAI<br>SINGAPORE<br>SYDNEY<br>TOKYO<br>WASHINGTON, D.C. |
| jhenderson@sidley.com<br>(312) 853 7891 | FOUNDED 1866 | |

November 18, 2010

Daniel Golden
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6747

Gordon Novod
Brown Rudnick
Seven Times Square
New York, NY 10036

   Re:  In re Tribune Company et al.

Dear Danny and Gordon:

   Over the past several weeks, the Debtors have shared with you their and the Committee's analysis of potential preference causes of action. As you are aware from our presentations, the majority of payments made within the 90 days prior to the Petition Date have been determined either not to have been preferences, to fall under the applicable materiality threshold or to be subject to valid defenses, including, approximately $208 million in bond principal and interest and Swap payments, approximately $43.7 million in subsidiary account disbursements and approximately $331 million in various other payments. As we have also indicated, total gross preference claims for payments within the 90 day period that the Debtors or Committee intend to file or preserve by tolling agreements (excluding insider claims) aggregate approximately $323 million, which is over 35% of the total payments made to third parties during the 90 days prior to the Petition Date. Included within the $323 million are claims subsumed within (or to be added to) the Committee's complaint for Senior Lender and Bridge Lender interest payments ($149.1 million), payments made in connection with the JPMorgan PCARD program ($79.1 million), payments made pursuant to exchange notices tendered by holders of PHONES ($6.1 million)[1], approximately $5 million in professional and other Tribune (parent) gross payments and approximately $83 million in gross payments primarily made by or on behalf of subsidiaries. Additionally, as previously indicated, the Committee will be filing or tolling claims for potential "insider" preference payments made within the year prior to the Petition Date and aggregating in

---

[1] Analysis is still ongoing with respect to these payments.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 5547886v.5



Daniel Golden
Gordon Novod
November 18, 2010
Page 2

excess of $180 million. These insider claims, as well as the various categories comprising the other claims listed above, have been described to you in detail in our calls and meetings, as well as in the materials provided to you.

In response to your recent inquiries, please note the following. First, while the Debtors have employed a $100,000 materiality threshold net of calculated defenses, the Debtors intend to preserve or pursue payments to former vendors aggregating under $100,000 where the estimated recoveries net of calculated defenses exceed $50,000 (approximately $2.8 million in incremental gross payments). Second, the Debtors and Committee are finalizing their analysis in respect of professional fee payments and either the Committee or the Debtors will advise you when the analysis is completed. Third, we also understand that the Committee is tolling or filing preference claims in respect of certain retirees who are subject to the Retiree Claimant Settlement Agreement and who have potential preference exposure for payments totaling approximately $1.14 million (this amount is included within the $180 million referenced above). Finally, you have asked for identification of those payments made to critical vendors and §503(b)(9) vendors which, if not made, would have given rise to §503(b)(9) claims. We are advised that this data is not reasonably accessible. We have, however, provided to you data concerning the payments made within 90 days of the Petition Date to those vendors who qualified as critical vendors or who subsequently received payments on §503(b)(9) claims.

Consistent with the conclusions we have conveyed to you previously, this is to advise you that the Debtors and Committee do not currently intend to pursue or preserve the following categories of claims which overwhelmingly (i.e. over 98%) reside at the Debtor's subsidiaries:

1. Claims with "net" (i.e. after calculated defenses) estimated recoveries under $100,000 against current vendors and net estimated recoveries under $50,000 against inactive vendors (as opposed to claims against inactive vendors with a net exposure over $50,000, which the Debtors' intend to preserve). These represent claims against approximately 2,683 current vendors, totaling approximately $139 million on a gross basis and $15.8 million net of calculated defenses. Note that approximately 98% of these vendors account for claims under $50,000 in amount after calculated defenses.

2. Claims against vendors with whom the Debtors entered into critical vendor or §503(b)(9) agreements post-petition and who remain key vendors to the Debtors. These represent claims against 14 vendors totaling approximately $36.8 million on a gross basis, and appropriately $10.4 million net of calculated defenses.

CH1 5547886v.5


# SIDLEY
SIDLEY AUSTIN LLP

Daniel Golden
Gordon Novod
November 18, 2010
Page 3

3.  Claims against third parties not otherwise subject to legal defenses, with whom the Debtors have strategic business relationships (including approximately $6.6 million in gross payments to the Debtors' sole supplier of newsprint ink), or as to which business judgment considerations militate against pursuit of such claims. These represent claims against 14 vendors totaling approximately $14.6 million on a gross basis, and approximately $6.7 million net of calculated defenses.

4.  Claims for payments to third parties (including customer refunds and employee reimbursements) for whom the Debtors subsequently obtained court authorization under "First Day Orders" to make payment for prepetition amounts owing. Payments were made to 11 parties, and total approximately $13.4 million on a gross basis and approximately $4 million net of calculated defenses.

5.  Claims for payments to entities acting in an administrative capacity who made payments to third parties on the Debtors' behalf. These were payments to three administrators of workers compensation and employee benefit programs (both programs were included in First Day Orders). The payments total approximately $1.4 million on a gross basis and approximately $849,000 net of calculated defenses.

We trust this addresses your questions.

Very truly yours,

Janet E. Henderson

JEH:dah

CH1 5547886v.5