**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11 Cases** |
| | : | **Case No. 08-13141 (KJC)** |
| **TRIBUNE COMPANY, et al.,** | : | **(Jointly Administered)** |
| | : | |
| **Debtors.** | : | **Hearing Date and Time:** |
| | : | **November 29, 2010 at 10:00 AM (ET)** |
| | : | |
| | | **Related to Docket No. 6255** |

# OBJECTION OF WILMINGTON TRUST COMPANY TO THE MOTION OF THE DEBTORS FOR AN ORDER SETTING A CONFIRMATION SCHEDULE AND ESTABLISHING PARAMETERS OF CONFIRMATION-RELATED DISCOVERY AND JOINDER TO OPPOSITION OF AURELIUS CAPITAL MANAGEMENT, LP TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER SETTING CONFIRMATION SCHEDULE AND ESTABLISHING PARAMATERS OF CONFIRMATION-RELATED DISCOVERY

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2 billion (generally referred to as the "PHONES") issued in April 1999 by Tribune Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors"), by and through its undersigned counsel, hereby respectfully submits this Objection to Part VI of the *Motion of the Debtors for an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (II) Approving Forms of Ballots, Master Ballots and Related Instructions; (III) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (IV) Fixing Voting Record Date; (V) Establishing Notice and Objection Procedures in Respect of Confirmation; (VI) Setting Confirmation Schedule and Establishing Parameters of Confirmation-Related Discovery; (VII) Establishing New Deadline for Return of Media Ownership Certifications; (VIII) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and*

*(IX) Granting Related Relief* (the "Solicitation Motion") and joinder to the Opposition of Aurelius Capital Management, LP to the Debtors' Motion for Entry of an Order Setting Confirmation Schedule and Establishing Parameters of Confirmation-Related Discovery ("Aurelius Opposition").[1] In support of its Objection to Part VI of the Motion, Setting Confirmation Schedule and Establishing Parameters of Confirmation-Related Discovery (the "Contours Motion"), Wilmington Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1. By the Contours Motion, the Debtors return to this Court seeking an Order to limit the scope of plan confirmation discovery and the confirmation hearing in order to cripple the ability of opponents of its plan to obtain discovery or present evidence at the confirmation hearing as to the facts underlying the LBO-Related Causes of Action. This argument should seem familiar to the Court. In July of this year, the Debtors tried and failed to obtain similar relief.[2] To avoid duplication, Wilmington Trust hereby incorporates by reference its arguments articulated in its *Objection to the Cross-Motion of the Debtors for Entry of a Preliminary Pretrial Scheduling Order for the Plan Confirmation Hearing* [Docket No. 4991].

2. In rejecting the Debtors' original argument, the Court noted the large number of competing interests that needed to be accommodated and ruled that:

---

[1] Wilmington Trust, along with the other Pre-LBO Debtholder plan proponents, filed a separate objection to the remainder of the Solicitation Motion on November 19, 2010 [Docket No. 6513]. This supplemental Objection presents unique arguments dealing with Part VI of the Solicitation Motion only. Wilmington Trust also incorporates by reference and joins the arguments made and relief sought in Aurelius's Opposition to Part VI of the Solicitation Motion.

[2] See *Debtors' (I) Opposition to the Motion of Bridge Agent For Entry of Orders (A) Establishing Procedures for Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan Confirmation Proceedings and (B) Allowing Such Claims in Full and (II) Cross Motion for Entry of Preliminary Pre-Trial Scheduling Order for the Plan Confirmation Hearing* (the "Cross-Motion") [Docket No. 4943].

> "[M]y inclination is to allow, within appropriate boundaries under the discovery rules, for the other side to do what they will, again subject to the rules of civil procedure, in preparation for confirmation and support of their confirmation objections. . . . But it seems to me that in order to accommodate as many interests within the time frame that's allotted within the exclusivity period, it would not be best to limit what happens in the way of pre-confirmation discovery,"

see 7/14/10 Tr. 32:1-12 (relevant excerpts are attached hereto as Exhibit A) (emphasis added). The Court further stated that "[the Court] will not fix [the legal standard for 9019 settlements] prior to confirmation." Id. at 40:19-22.

3. Although much has occurred in these cases since this Court refused to limit the scope of pre-confirmation discovery in July, the essential reasons underlying the Court's July determination have not changed. Plan discovery has yet to begin. The Debtors, who once alleged that allowing any discovery at all would jeopardize the original (and long-discarded) settlement,[3] now argue that discovery as to the facts underlying the LBO-Related Causes of Action is unnecessary given the previous investigations of the LBO-Related Causes of Action by the Official Committee of Unsecured Creditors (the "Official Committee") and by the Examiner.[4] See Contours Motion ¶¶65-68. This argument reflects a disdain for a competing plan process with four plans and four groups of proponents who must discover the evidence to meet their respective burdens of proof at confirmation, and who must be able to present such evidence. If anything, there are now more competing interests to be balanced.

4. While the Official Committee and the Examiner did investigate the LBO-Related Causes of Action, they did not perform the analysis and investigation that Wilmington Trust and other proponents of plans of reorganization intend to engage in to prove that their own plans are confirmable and that the Plan that the Debtors and its allies support is not. In fact, as has been

---

3 See Cross-Motion ¶11.

4 Capitalized terms not otherwise defined herein shall have the same meaning as in the Solicitation Motion.

previously stated, the Official Committee's "investigation" was superficial and abbreviated. The Examiner himself stated that the Official Committee's effort to develop a factual record concerning the LBO was woefully inadequate in light of the complexity of the claims, with only seven witnesses being examined in the Rule 2004 examinations. See Examiner's Report, Vol. I, pg. 32.

5. While the Examiner's effort was far more comprehensive, it was not intended to satisfy the bankruptcy code's requirements for plan confirmation, and, in any event, the Examiner's Report is not admissible evidence.[5] The Examiner's task was to help the parties understand how a neutral fact finder viewed the causes of action and to guide the parties to a conclusion of a highly-contentious case. See, e.g., In re Fibermark, Inc., 339 B.R. 321, 325 (Bankr. D. Vt. 2006) (noting that the examiner's report is valuable "in identifying assets of the estate, evaluating a plan or reorganization, or describing likely and legitimate areas for recovery.") That is qualitatively different from the burden Wilmington Trust and other plan proponents must carry to confirm their Plans and to demonstrate the failings of the plan supported by the Debtors. Absent consent of the parties, the Examiner's findings of fact clearly constitute hearsay and are not admissible evidence.[6] Accordingly, the Examiner's findings cannot be used to restrict legitimate discovery or evidence to be presented at the Confirmation

---

[5] It is disingenuous for the Debtors to rely on the Examiner's report in its motion when the Debtors have refused to advise the parties what portions, if any, they believe are admissible. See Aurelius Opposition, at 12.

[6] In the interests of judicial efficiency, Wilmington Trust may be willing to enter into stipulations with other parties to permit some or all of the Examiner's report to be admitted into evidence in order to shorten the amount of court time needed to present evidence on certain issues. Such stipulations are a matter for another day, but will not be acceptable if the Examiner's report is used to unreasonably limit discovery or the presentation of evidence at confirmation.

Hearing, and the Debtors' attempt to prevent opposing parties from gathering, much less presenting, evidence should be denied in all respects.

## ARGUMENT

### A. A Plan Proponent Must Satisfy His Burden of Proof By Presenting Evidence in Court.

6. There are currently four competing plans, each with proponents who bear the burden of proof to establish compliance with Section 1129 of the bankruptcy code. See 11 U.S.C. § 1129(a); In re Armstrong World Indus., Inc., 348 B.R. 111, 120 n.15 (D. Del. 2006) (plan proponent must establish by preponderance of the evidence the satisfaction of requirements of Bankruptcy Code Sections 1129(a) and 1129(b)); In re Quigley Co., Inc., 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010) ("The proponent of confirmation bears the burden of proof…"); In re Genesis Health Ventures, Inc., 266 B.R. 591, 598-99 (Bankr. D. Del. 2001) ("To confirm a proposed Chapter 11 plan of reorganization, the proponent bears the burden of establishing the plan's compliance with each of the thirteen elements of 11 U.S.C. § 1129(a).")

7. To meet their responsibilities, the various plan proponents must be allowed sufficient discovery to obtain admissible evidence on the LBO-Related Causes of Action. It is likely that such evidentiary presentation will vary significantly from the Examiner's findings. In an adversarial process, lawyers for all sides can collect and develop the evidence most favorable to their clients, which is a far different exercise from an independent examination conducted by an Examiner in a highly compressed timeframe. See Gerald Walpin, America's Adversarial and Jury Systems: More Likely to do Justice, 26 HARV. J.L. & PUB. POLY. 175, 177 (2003) ("Zealous, faithful advocacy means the obligation to search out all favorable evidence, to seek, neutralize or destroy all unfavorable evidence, and to press the most favorable interpretation of

the law for his client. **That is simply not the obligation of a[] [neutral fact finder]**.") (internal citation omitted) (emphasis added).

8. The Middle District of Alabama recently rejected an attempt to defer to an independent fact-finder when the parties offered more developed evidence at trial. Evaluating an employment discrimination claim, the court granted summary judgment against a plaintiff even though neutral fact-finders at the Equal Employment Opportunity Commission ("EEOC") had previously reached a different decision. See Matthews v. City of Dothan, No. 1:04-CV-640-WKW, 2006 WL 3742237 at *11 (M.D.Ala. December 18, 2006). In making that determination, the Court noted that the EEOC "did not have the benefit of fully developed facts through an adversarial discovery process" and it declined to follow the EEOC's reasoning. Id.

9. The stakes in these cases are enormous, and the parties are entitled to present a fully developed factual record that benefits from an adversarial discovery process. See, e.g., Halebian v. Berv, 631 F. Supp.2d 284, 296 (S.D.N.Y. 2007) ("The purpose of discovery is to find out additional facts about a well-pleaded claim…"); News-Journal Co. v. Billingsley, No. 5774, 1979 Del. Ch. LEXIS 359 at *7 (Del. Ch. May 14, 1979) ("The purpose of discovery is to disclose the factual basis which the party will rely on at trial.") Indeed, the outcome of adversarial discovery may very well prove some of the Examiner's conclusions are incorrect. See, e.g., In re Granite Broadcasting Corp., 369 B.R. 120, 128 n.10 (Bankr. S.D.N.Y. 2007) (noting that after hearing the evidence, "many of [the Examiner Report's] conclusions have been proved wrong by the evidence of record.")

10. Furthermore, the discovery to date did not allow any of the plan proponents to vindicate their due process rights.[7] During the Committee's investigation, no party other than the Official Committee participated in the seven depositions conducted by its professionals. There was no cross-examination and no opportunity for any other plan proponent to develop favorable facts from the testimony of those seven witnesses. While the Examiner and his professionals conducted thirty-eight interviews, no other parties were allowed to question or observe those witnesses during those interviews. Indeed, many of the interviews were not transcribed, and are not available to the parties.

11. In fact, the Examiner expressly stated that his investigation did not take the place of more formal proceedings:

> The Examiner recognizes, however, that formal depositions (and the cross-examination that accompanies an adversarial process) might well produce information different from that which the Examiner was able to adduce in these interviews. Also, the adversarial process allows rebuttal witnesses and documents that may impeach or contradict other testimony or documents. **Although the Examiner strongly believes that the information adduced in the Investigation materially advances an understanding of what transpired in the Leveraged ESOP Transactions, neither the Investigation nor the resulting Report are intended to serve as proxies for what an adjudicative process would produce.**

Examiner's Report, Vol. I, pg. 37 (emphasis added).

**B. The Examiner's Report is Hearsay.**

12. Absent agreement of the parties, the Examiner's Report cannot, as a matter of law, serve as a replacement for discovery or evidentiary presentation because the Examiner's

---

[7] It is telling that the Debtors do not attempt to use prior discovery by the parties as justification for their Contours Motion. After the April settlement plan, the Debtors and other settlement proponents agreed to depositions concerning the facts underlying the LBO-Related claims. Deposition of JP Morgan, the Debtors and others were noticed by Wilmington Trust and others. But those depositions were cancelled or postponed for various reasons by the Debtors and the LBO defendants. Now the settlement proponents seek to prevent those previously noticed depositions from ever taking place.

factual conclusions are inadmissible hearsay. See e.g. U.S. v. Moore, 27 F.3d 969, 975 (4th Cir. 1994) ("[a statement] as related by the bankruptcy examiner's report, was inadmissible hearsay.") For example, the Bankruptcy Court in Northern Ohio rejected an attempt to admit an examiner's report into evidence:

> The [bankruptcy examiner's report] in the Phar-Mor case is a public record. It is prepared by a person appointed by the Court in the bankruptcy proceeding to conduct an examination and prepare a report. The examiner's report consists of nearly 1,000 pages relying on sworn and unsworn testimony and statements by individuals, some of whose identities are not revealed, and on a variety of documents, the authenticity of which may be subject to challenge under the Federal Rules of Evidence . . . The report is excluded for the reason that it lacks a guarantee of trustworthiness.
>
> Furthermore, the Court concludes whatever probative value the examiner's report may have is substantially outweighed by the danger of unfair prejudice, waste of time and needless presentation of accumulative evidence.

In re Monus, No. 92-41883, 1995 WL 469694, at *9 (Bankr. N.D.Ohio May 18, 1995).

13. Judge Bernstein of the Southern District of New York came to the same conclusion regarding a bankruptcy examiner's report regarding claims arising out of an allegedly fraudulent transaction:

> Initially, the evidence and findings in the [examiner's] Report are not binding. The Examiner conducted an investigation, but he was not charged-nor could he be-with the duty to "hear and determine" any claims in this case. **The Report is hearsay . . .**

In re Rickel & Associates, Inc., 272 B.R. 74, 87 (Bankr. S.D.N.Y. 2002) (emphasis added).

14. The Bankruptcy Court for the District of Vermont held the same, noting that by doing so it was not denigrating the integrity or effort of the examiner:

> This Court has recognized, and the Parties have acknowledged, [the examiner's] status as an expert in the field of bankruptcy and reorganization law. **[The examiner's] status as an expert however does not change the fact that the factual portions of his report contain an abundance of statements that are the purest sort of hearsay.**

Fibermark, 339 B.R. at 327 (emphasis added).[8]

15. Accordingly, absent agreement of the parties, the Examiner's Report may not be relied on to establish facts at confirmation concerning the LBO-Related Causes of Action, including facts needed to demonstrate the reasonableness of any proposed settlement of estate claims and/or the burden of proving other Section 1129 requirements, among them the moving party's good faith. As Judge Brown stated in Fibermark,

> . . . an examiner's report paints a picture, his or her image of what happened in the case, and ends with that expert's opinion of what that story means, in legal terms. The report puts the story on paper and provides a context for debate. **It is the duty of the parties to formulate a fuller version of the debate using the rules of evidence.**

Fibermark, 339 B.R. at 325 (emphasis added).

16. At the confirmation hearing, this Court will be the only trier of fact and the only person whose conclusions have the force of law. Accordingly, Wilmington Trust asks the Court to deny the Debtors' request in full. Instead, the Court should reaffirm its July ruling and defer consideration of the scope of evidence and the relevant legal standard until confirmation. See Exhibit A, 32:1-32:12.

[8] In Fibermark, the portions of the Expert Report constituting the Expert's conclusions were allowed into evidence as the opinion of an expert, which was subject to cross-examination. See Fibermark, 339 B.R. at 328. However, such a procedure is unavailable in this case, given that the court had stated that Mr. Klee is not to testify. Wilmington Trust reserves all rights in the event that circumstances change.

## CONCLUSION

**WHEREFORE**, Wilmington Trust respectfully requests that this Court: (1) reject the Debtors' request to limit discovery and the scope of the confirmation hearing; and (2) grant Wilmington Trust any such further relief as is just and proper.

Dated: November 22, 2010
Wilmington, Delaware

**SULLIVAN HAZELTINE ALLINSON LLC**

By: */s/ William D. Sullivan*

William D. Sullivan (No. 2820)
Elihu E. Allinson (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: zallinson@sha-llc.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*