IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: TBD<br>Obj. Deadline: TBD |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO (A) TOLL CERTAIN CAUSES OF ACTION AGAINST THE DEBTORS' PROFESSIONALS ON BEHALF OF THE DEBTORS' ESTATES ARISING UNDER AND PURSUANT TO 11 U.S.C. §§ 547 AND 550 OR, AT THE COMMITTEE'S OPTION, (B) COMMENCE, PROSECUTE, SETTLE AND RECOVER SUCH ACTIONS**

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company and its various debtor-subsidiaries (collectively, the "**Debtors**" or "**Tribune**"), by and through its undersigned counsel, hereby files this motion (the "**Professionals Preference Standing Motion**") for entry of an order granting the Committee leave, standing and authority to toll and/or commence, prosecute, settle and recover certain causes of action on behalf of the Debtors' estates arising under and pursuant to 11 U.S.C. §§ 547 and 550 (the "**Preference Actions**") against certain of the Debtors' professionals who received payments from Tribune in the ninety (90) days prior to the Petition Date (collectively, the "**Preference Defendants**"). In support of this Professionals Preference Standing Motion, the Committee respectfully submits as follows:

PRELIMINARY STATEMENT

1. By this Professionals Preference Standing Motion, the Committee seeks entry of an order authorizing it to toll and/or prosecute certain claims and causes of action pursuant to sections 547 and 550 of the Bankruptcy Code to avoid and recover on behalf of the Debtors'

CPAM: 3361720.1

estates prepetition preferential payments made to the Preference Defendants. These causes of action are against certain of the Debtors' professionals for amounts received in the ninety (90) days prior to the Debtors' bankruptcy filing. A list of Preference Defendants is attached hereto as Exhibit A.[1]

2. The rationale for the Committee, rather than the Debtors, to prosecute the Preference Actions on behalf of the Debtors' estates is self-evident. There are inherent conflicts that make it very difficult, if not impossible, for a company to preserve and/or vigorously pursue actions against its current professional advisors. At the very least, third parties would likely question the vigor with which such suits would be prosecuted. Additionally, given that the Committee is currently seeking standing to pursue other preference actions on behalf of the estate, *see* Insider Preference Standing Motion (as defined below), the Debtors' estates will benefit from the efficiencies to be gained by the Committee tolling and/or bringing preference causes of action against other parties.

3. To ensure efficient and appropriate use of estate resources, if a Preference Action is not tolled with a Preference Defendant for any reason, the Committee proposes that, after they have been filed and served, the Preference Actions will be stayed (except to the limited extent provided in the proposed order attached hereto) pending a resolution of the proposed plans of reorganization or as otherwise set forth below. This stay is important because certain plans currently propose to release, limit recoveries, or otherwise moot certain of the claims that would be brought (and, indeed, must be filed prior to the expiration of applicable limitations periods) against the identified Preference Defendants. Accordingly, while filing the Preference Actions

---

[1] This list may be amended based on the Committee's continued investigation and negotiations with the Debtors.

2

CPAM: 3361720.1

will ensure that they are preserved, continued prosecution of them could prove to be a waste of the estates' resources.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Professionals Preference Standing Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Professionals Preference Standing Motion is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 1103(c) and 1109(b) of chapter 11 of title 11 of the United States Code.

## PROCEDURAL BACKGROUND

5. On December 8, 2008 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Committee.

7. The Committee filed separate motions on February 1, 2010 (supplemented on September 14, 2010) and September 13, 2010 seeking entry of orders granting the Committee standing to commence and prosecute certain LBO-related causes of action [D.I. 3281, 5668 and 5698] (together, the "**LBO Standing Motions**").

8. On October 27, 2010, the Court entered the Order Granting Unsecured Creditors Committee's Standing Motions [D.I. 6150] (the "**LBO Standing Order**"), which granted the

Committee authority "to commence and prosecute the claims of the Debtors' estates set forth in the draft complaints attached to the [LBO] Standing Motions as they may be amended or modified . . . ." Those complaints have now been filed. *See* Complaint and Objection to Claims, *Official Comm. of Unsecured Creditors v. JPMorgan Chase Bank, N.A.* (*In re Tribune Co.*), No. 10-53963-KJC (Bankr. D. Del. Nov. 1, 2010) [Adv. Pro. D.I. 1]; Complaint, *Official Comm. of Unsecured Creditors v. Fitzsimons* (*In re Tribune Co.*), No. 10-54010-KJC (Bankr. D. Del. Nov. 1, 2010) [Adv. Pro. D.I. 1] (together, the "**LBO Complaints**"). Pursuant to the LBO Standing Order, the prosecution of the LBO Complaints generally has been stayed, subject to certain limited exceptions specified in the LBO Standing Order. *See* LBO Standing Order, p. 4.

9.  On November 11, 2010, the Committee filed a motion seeking entry of an order granting the Committee standing to commence, prosecute, settle and recover certain causes of action on behalf of the Debtors' estates arising under and pursuant to 11 U.S.C. §§ 547 and 550 against certain current and former Tribune insiders who received payments from Tribune in the year prior to the Petition Date and certain other identified entities who were previously sued by the Committee on a myriad of causes of action (amended November 17, 2010) [D.I. 6414 and 6485] (the "**Insider Preference Standing Motion**"). The Insider Preference Standing Motion is scheduled for hearing on November 29, 2010.

## THE INVESTIGATION INTO THE PREFERENCE ACTIONS

10.  As part of their duties as debtors in possession, the Debtors undertook an extensive analysis of potential preference actions. In its capacity as a fiduciary for unsecured creditors of the Debtors' estates, the Committee reviewed the Debtors' analyses. The Committee and the Debtors then worked on identifying which claims would be best pursued by the Committee because of actual or perceived conflicts that might, at minimum, taint the belief in a

fair outcome should the Debtors prosecute claims against certain parties believed to have received preferential transfers. The Committee then researched the identified Preference Actions further.

11. Based on the Committee's review and analysis of the Debtors' investigation with respect to potential preference actions and the Committee's independent investigation, the Committee seeks an order from this Court granting the Committee derivative standing to, at the Committee's option, either toll or pursue the Preference Actions against the Preference Defendants and to recover avoidable preferences with respect thereto on behalf of the Debtors' estates.

12. The Committee has requested that the Debtors consent to the relief sought in this Professionals Preference Standing Motion. Indeed, the Committee expects that the Debtors will consent to Committee standing to toll and/or commence, prosecute, settle and recover the Preference Actions as requested herein with respect to some or all of the Preference Defendants listed on Exhibit A, as may be amended. However, as of the filing of the Professionals Preference Standing Motion, the Committee has not yet received the Debtors' consent to Committee standing regarding any of the Preference Defendants listed on Exhibit A.

## SUMMARY OF CLAIMS

13. The Committee seeks authority to, at the Committee's option, either (a) toll actions against the Preference Defendants or (b) bring adversary proceedings to recover potentially preferential payments made to certain of the Debtors' professionals in the ninety (90) days prior to the Petition Date. In the aggregate, the Preference Defendants received in excess of $18 million from the Debtors that may be subject to avoidance and recovery as preferential payments.

## RELIEF REQUESTED

14. Pursuant to this Professionals Preference Standing Motion, the Committee requests that the Court enter an order (i) authorizing and appointing the Committee to, at the Committee's option, either toll actions against the Preference Defendants or to commence, prosecute and settle the Preference Actions against the Preference Defendants on behalf of the Debtors' estates, (ii) stipulating that after they are filed and served, the Preference Actions shall be deemed stayed under the same terms as the LBO Standing Order, and (iii) providing that, consistent with the terms of the LBO Standing Order, neither the Debtors nor the Committee shall settle the Preference Actions without the other's consent unless and until certain events occur.

## BASIS FOR RELIEF

**I. Legal Standard**

15. It is well settled within this and other circuits that bankruptcy courts may allow a creditors' committee to pursue causes of action on behalf of the estate under appropriate circumstances. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 575 (3d Cir. 2003); *Official Comm. of Unsecured Creditors v. Barron (In re Polaroid Corp.)*, No. 03-56404, 2004 WL 1397582 (Bankr. D. Del. June 22, 2004); *Official Comm. of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.)*, No. 01-11353, 2003 WL 21956410 (Bankr. D. Del. Aug. 14, 2003); *Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 304 B.R. 214 (Bankr. W.D. Pa. 2004), *aff'd* 326 B.R. 532 (W.D. Pa. 2005); *Liberty Mut. Ins. Co. v. Official Unsecured Creditors Comm. (In re Spaulding Composites Co.)*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997); *La. World Exposition v.*

*Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988); *Unsecured Creditors Comm. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904 (2d Cir. 1985).

16. Although the Bankruptcy Code does not expressly authorize a creditors' committee to initiate an adversary proceeding and/or pursue other causes of action typically brought by the trustee or the debtor in possession, the Bankruptcy Code established creditors' committees for the express purpose of protecting the rights of their constituents and similarly situated creditors. *See* H.R. Rep. No. 95-595, at 91 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6053. In furtherance of this purpose, Bankruptcy Code section 1103(c), which enumerates the statutory functions of a creditors' committee, authorizes creditors' committees to "perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5). To that end, Bankruptcy Code section 1109(b) provides, in pertinent part, that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). This general right to be heard would be rendered meaningless with respect to creditors' committees unless such committees are also given the right to act, on behalf of the estate, if a debtor in possession or trustee, who is explicitly granted the right to act, unjustifiably fails to act. *See In re iPCS, Inc.*, 297 B.R. 283, 290 (Bankr. N.D. Ga. 2003) ("[I]f a debtor has a cognizable claim, but refuses to pursue that claim, an important objective of the Code [the recovery and collection of estate property] would be impeded if the bankruptcy court has no power to authorize another party to proceed on behalf of the estate in the debtor's stead."); *see also Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 568-69 (3rd Cir. 2003) (en banc) (holding Bankruptcy Code sections 1101(c)(5) and 1109(b) implicitly authorize a court to grant a creditors' committee derivative standing to prosecute an

avoidance action when the trustee or debtor in possession cannot or will not do so, or when the debtor in possession is unlikely to act); *In re Joyanna Holitogs, Inc.*, 21 B.R. 323, 326 (Bankr. S.D.N.Y. 1982) (holding that the general right to be heard would be an empty grant unless those who have such a right are also given the right to act when the debtors refuse to do so).

17.     Courts in the Third Circuit have granted committee standing in connection with avoidance actions. *See Official Comm. Of Unsecured Creditors of Cybergenics Corp.*, 330 F.3d at 568 (holding that "the ability to confer derivative standing upon creditors' committees is a straightforward application of bankruptcy courts' equitable powers."); *see also In re Exide Techs., Inc.* 299 B.R. 732, 739 (Bankr. D. Del. 2003).

18.     The practice of conferring standing upon creditors' committees to pursue actions on behalf of a bankruptcy estate is widely followed and accepted in other jurisdictions as well. *See, e.g., In re La. World Exposition, Inc.*, 832 F.2d 1391, 1397 (5th Cir. 1987) ("A number of bankruptcy courts have held that in some circumstances a creditors' committee has standing under 11 U.S.C. § 1103(c)(5) and/or § 1109(b) to file suit on behalf of debtors-in-possession or the trustee."); *In re STN Enters.*, 779 F.2d 901 (2d Cir. 1985) (agreeing with those bankruptcy courts that have held that sections 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate litigation with the approval of the bankruptcy court).

19.     Where an official committee seeks to pursue an action at the behest or with the consent of the debtor, bankruptcy courts apply less stringent criteria in evaluating whether it is appropriate to grant the committee standing. With debtor consent, a creditors' committee should be granted standing if "the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *See Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262

F.3d 96, 100 (2d Cir. 2001) (citing *Spaulding Composites Co. v. Official Unsecured Creditors' Comm. (In re Spaulding Composites Co.)*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997)); 7 COLLIER ON BANKRUPTCY ¶ 1103.05[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d at 566 (agreeing with Second Circuit that committee may sue on behalf of debtors where debtor in possession consents).

20.  As the Second Circuit noted in *Commodore*, "[t]his approach permits a reasoned and practicable division of labor between the creditors' committee and the debtor in possession or trustee, while also providing bankruptcy courts with significant authority both to manage the litigation and to check any potential for abuse by the parties." *See In re Commodore Int'l Ltd.*, 262 F.3d at 100.

21.  Where an official committee seeks to pursue an action without the consent of the debtor, it must establish the following three elements to be granted derivative standing in the Third Circuit: (i) that the trustee unjustifiably refused to pursue the claim; (ii) a colorable claim; and (iii) the permission of the bankruptcy court to initiate the action. *In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004).

II.  **Committee Standing Is In The Best Interests Of The Estates And Is "Necessary And Beneficial" To The Fair And Efficient Resolution Of The Bankruptcy Proceedings**

22.  To the extent the Debtors consent to the Committee's authority to toll and/or bring Preference Actions against certain of the Preference Defendants (the "Consented Preference Actions"), the Committee satisfies the standard for standing. As noted above, the Committee expects the Debtors to provide consent to the Committee tolling and/or commencing actions against some or all of the Preference Defendants listed on Exhibit A, as may be amended.

23.     There is ample justification for the Court to grant the Committee the authority to toll and/or pursue the Consented Preference Actions. Having committed significant resources to investigating the facts underlying the Consented Preference Actions, the Committee believes, and the Debtors agree, that it would be most efficient and in the estates' best interest for the Committee to be vested with the authority to toll and/or pursue the Consented Preference Actions.

24.     Preservation and/or pursuit of the Consented Preference Actions is in the best interests of the bankruptcy estates because any and all amounts recovered will be returned to the estates for the benefit of all creditors.

25.     Vesting the Committee with the authority to toll and/or pursue the Consented Preference Actions is in the best interests of the Debtors' estates and is "necessary and beneficial" to the fair and efficient resolution of these bankruptcy proceedings because the Debtors are necessarily conflicted in pursuing claims against their current professional advisors.

26.     The Committee also has a lasting interest in maximizing the pecuniary value of the Debtors' estates. The Committee likely will have continued direct or indirect involvement in the administration of the estates following the confirmation of a plan of reorganization. Since counsel for the Committee is already familiar with the Consented Preference Actions, it would be efficient and in the best interests of the Debtors' estates for the Court to grant standing to the Committee to toll and/or pursue the Consented Preference Actions on behalf of the Debtors.

27.     Additionally, to ensure the efficient use of the estates' resources in pursuit of the Preference Actions and assuming such Actions are not tolled by agreement, the Committee requests that the Consented Preference Actions be stayed after they have been filed and served (except to the limited extent provided in the proposed order attached hereto). Given that many of

CPAM: 3361720.1

the Preference Actions could be eliminated, reduced or mooted following the confirmation of certain proposed plans of reorganization, the requested stay will ensure that the estates' resources are not consumed needlessly in pursuit of actions that will not ultimately result in additional recoveries for creditors.

### III. With Respect to the Non-Consented Preference Actions, the Committee Clearly Satisfies the Test for Derivative Standing

28. Furthermore, to the extent the Debtors have not consented to the Committee's authority to toll and/or bring Preference Actions against certain of the Preference Defendants (the "**Non-Consented Preference Actions**"), the Committee satisfies the test for derivative standing.

      a.    <u>Demand on the Debtors to Assert the Non-Consented Preference Actions Would Have Been Futile</u>

29. The first element of the derivative standing test requires that the Committee make a demand on the Debtors to assert the Non-Consented Preference Actions, and the Debtors unjustifiably refuse the Committee's demand, or that such a demand be excused as futile. Case law makes clear that a committee is not required to demand formally that a debtor take action where it is "plain from the record that no action on the part of the debtor would have been forthcoming." *See In re Nat'l Forge Co.*, 326 B.R. 532, 544 (W.D. Pa. 2005) (affirming the bankruptcy court's excusal of the committee's failure to petition the debtor on the ground that any request to file suit, under the facts of the case, would have been futile); *In re La. World Exposition,* 832 F.2d at 1397-98 (court would not remand so that committee could make formal demand upon debtor where conflicts would likely prevent debtor from pursuing litigation adverse to its directors and officers); *In re First Capital Holdings Corp.*, 146 B.R. 7, 13 (Bankr. C.D. Cal. 1992) (creditors' committee would be excused from making a demand on a debtor to

pursue action against its officers, directors and controlling shareholders where such a demand would be futile.[2]

30. It would plainly be futile for the Committee to demand that the Debtors prosecute the Non-Consented Preference Actions. The Debtors have an obvious conflict in suing their own professionals.

31. Policy considerations also support excusing the Committee from making a formal demand with respect to the Non-Consented Preference Actions. As stated by the *Nat'l Forge* Court, "[t]he policy concerns underlying the general requirement of a formal demand are to ensure that the debtor is: (i) informed of the committee's intent to assert the claims and (ii) afforded an opportunity to explain its reasons, if any, for declining to pursue the claims itself." 326 B.R. at 544.

32. Both of the foregoing concerns are clearly satisfied here given the extensive negotiations between the Committee and the Debtors with respect to the Preference Actions, and specifically the Non-Consented Preference Actions.

33. Thus, the Committee respectfully submits that a formal request on the Debtors to prosecute the Disputed Preference Actions would have been futile and the first element of the derivative standing test is therefore satisfied.

    b.    <u>The Non-Consented Preference Actions are Colorable</u>

34. The second element of the derivative standing test outlined above requires the Committee to demonstrate that colorable claims exist against the Preference Defendants with

---

[2] Moreover, the Debtors' waiver of their rights to prosecute the Preference Actions is akin to an unjustified refusal because the interests of creditors are left unprotected. *See In re La. World Exposition*, 832 F.2d at 1397 (holding that the court need not engage in reviewing the aforementioned elements as a formalistic checklist when it seems plain that the debtors would not have sought the relief the committee seeks, even if the committee had filed a formal request).

CPAM: 3361720.1

respect to the Non-Consented Preference Actions. The case law construing the requirement for "colorable" claims clearly provides that the requisite showing is a relatively low threshold to satisfy. *See, e.g., In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005) (holding that the requisite standard for presenting a "colorable" claim is relatively easy to meet); *In re America's Hobby Ctr.*, 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (observing that only if the claim is "facially defective" should standing be denied); *In re Colfor, Inc.*, No. 96-60306, 1998 WL 70718, at *2 (Bankr. N.D. Ohio Jan. 5, 1998) (stating that consistent with the common meaning of "colorable," that the claims to be asserted need only be "plausible" or "not without some merit"); *In re Midway Airlines, Inc.*, 167 B.R. 880, 884 (Bankr. N.D. Ill. 1994) (explaining, in a different procedural context, that "[a] colorable claim (one seemingly valid and genuine) is not a difficult standard to meet"). Courts have held that, in determining whether a colorable claim exists, the court must engage in an inquiry "much the same as that undertaken when a defendant moves to dismiss a complaint for failure to state a claim." *In re iPCS*, 297 B.R. at 291 (quoting *In re America's Hobby Ctr.*, 223 B.R. 282); *see also In re Valley Park*, 217 B.R. 864, 869 n.4 (Bankr. D. Mont. 1998) (holding that the committee "does not have to satisfy the quantum of proof necessary for a judgment in order to show a colorable claim").

35. In determining whether a claim is colorable, this Court is not required to conduct a mini-trial. Instead, "the Court may weigh the 'probability of success and financial recovery,' as well as the anticipated costs of litigation, as part of a cost/benefit analysis conducted to determine whether pursuit of the colorable claims are likely to benefit the estate." *In re iPCS*, 297 B.R. at 291 (citations omitted). Thus, the Committee is only required to establish to this Court the existence of a plausible claim and that the Non-Consented Preference Actions have some value to the Debtors' estates and their creditors.

13

36. To the extent that the Debtors made any preferential payments to the Preference Defendants, the Debtors have a plausible claim against such Preference Defendants. Any payments recovered from the Preference Defendants on account of the Non-Consented Preference Actions will provide value to the Debtors' estates and their creditors.

    c.    <u>The Committee is Seeking Court Approval to Toll and/or Prosecute the Non-Consented Preference Actions</u>

37. Finally, the requirement that the Committee should obtain court approval prior to asserting claims on behalf of the Debtors' estates is satisfied by the relief sought in this Preference Standing Motion.

**IV.    Additional Considerations**

38. Granting the Committee standing to toll and/or prosecute all of the Preference Actions is also important to the Committee's proper discharge of its fiduciary duties. These duties include "perform[ing] such ... services as are in the interest of those represented." 11 U.S.C. § 1103 (c)(5). As the United States Court of Appeals for the First Circuit has previously explained, a court should be flexible in interpreting these duties in order to allow a committee to "pursu[e] whatever lawful course best serves the interests of the class of creditors represented." *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1315-16 (1st Cir. 1993).

39. In order to properly discharge its fiduciary duties, and due to the Debtors' unwillingness to pursue the Preference Actions, the Committee seeks standing to toll and/or prosecute such Preference Actions on behalf of the Debtors' estates. As one influential treatise notes, there is no difference for standing purposes between a committee participating in a proceeding versus a committee initiating a proceeding if such proceeding is essential to the exercise of the committee's fiduciary duties:

> [V]irtually every bankruptcy proceeding necessarily arises within the context of a bankruptcy case, and, conversely, it is only

> through discrete proceedings that the case is administered and that issues may be raised and determined by the court ... Because every issue in case may be raised and adjudicated only in the context of a proceeding of some kind, it is apparent that reference in section 1109(b) to 'any issue in a case' subsumes issues in a proceeding. Any other conclusion would render section 1109(b) meaningless because there is no such thing as an issue that arises exclusively in a 'case' and not in a proceeding.

7 COLLIER ON BANKRUPTCY ¶ 1109.04[1][a][ii] at 1109-24 (Allan N. Resnick and Henry Sommers eds., 16th ed.).

40. The Committee is the appropriate party to toll and/or prosecute the Preference Actions because its very purpose is to defend the interest of the estates and to ensure that the assets of the estates are maximized. *See, e.g., In re Nationwide Sports Distrib., Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) ("the purpose of such [unsecured creditors'] committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors."). The unsecured creditors represented by the Committee have a significant stake in the outcome of the litigation relating to the Preference Actions and, thus, the Committee, as opposed to any other party, is more likely to pursue the litigation.

41. The Committee believes the potential recovery from the Preference Actions represents a valuable pool of assets that may be used to reduce or satisfy the claims asserted by the Debtors' unsecured creditors. Moreover, the Committee does not expect that the costs and expenses to be incurred in connection with tolling and/or prosecuting the Preference Actions will be excessive in relation to the potential recovery for the estates. Although litigation costs are a factor to consider, the Committee must only provide this Court with the comfort that the tolling and/or prosecution of the Preference Actions represents a sensible expenditure of the estates' resources. *See In re Adelphia Commc'ns. Corp.*, 330 B.R. at 386.

42. Here, where the potential benefits to the Debtors' estates and their unsecured creditors are worth in excess of $18 million, the benefits of tolling and/or prosecuting the Preference Actions clearly outweigh the costs incurred in connection herewith.

## RESERVATION OF RIGHTS

43. The Committee reserves its rights to seek authority to commence, prosecute and settle other claims and/or causes of action on behalf of the Debtors' estates against the Preference Defendants.

## NO PRIOR REQUEST

44. No prior request for the relief sought herein has been made by the Committee to this or any other court.

## NOTICE

45. Notice of this motion has been given to (i) the Debtors, (ii) counsel to the Debtors, (iii) the Office of the United States Trustee for the District of Delaware, and (iv) parties who have requested service of notices pursuant to Bankruptcy Rule 2002. The Committee submits that no other or further notice is required.

## CONCLUSION

46. This Court can and should authorize the Committee to toll and/or bring the Preference Actions on behalf of the Debtors' estates. The Committee respectfully requests that the Court grant leave, standing and authority to, at the Committee's option, either toll the Preference Actions or commence, prosecute, settle and recover amounts in connection with the Preference Actions on behalf of the Debtors' estates, and to grant such other and further relief as the Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: November 23, 2010  **LANDIS RATH & COBB LLP**
Wilmington, Delaware

_____
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Counsel to the Official Committee of Unsecured Creditors*