UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>Debtors. | Chapter 11 Cases<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered) |

**EMERGENCY MOTION OF STEP ONE CREDIT AGREEMENT LENDERS
FOR RELIEF CONCERNING JPMORGAN CHASE BANK N.A.'S
<u>REFUSAL TO RECORD LOAN TRADES</u>**

Certain Step One Credit Agreement Lenders (the "<u>Step One Lenders</u>"),[1] by and through their undersigned counsel, respectfully submit this emergency motion (this "<u>Motion</u>") for relief based on the refusal of JPMorgan Chase Bank N.A. ("<u>JPMorgan</u>"), as administrative agent under the Senior Loan Agreement,[2] to record loan trades even though it is contractually required to do so. The specific relief requested in this Motion is for an Order:

        (i)      confirming that the commencement of an action in the New York State Supreme Court to compel JPMorgan to record loan trades will not violate this Court's September 1, 2010 Order Appointing Mediator [D.I. 5591] (the "<u>Mediation Order</u>") and the automatic stay provisions of section 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); or

        (ii)     in the alternative should this Court conclude that it has jurisdiction over the third party dispute, compelling JPMorgan to record loan trades; and

        (iii)    in either event, postponing the record date for plan voting purposes until after such time that JPMorgan has closed all open trades.

In support of this Motion, the Step One Lenders respectfully state as follows:

---

[1] The Step One Lenders currently hold approximately $812,000,000 in principal amount of Step One Loans.

[2] The "<u>Senior Loan Agreement</u>" means that certain Credit Agreement, dated as of May 17, 2007, among Tribune Company, the lenders thereto, JPMorgan, as administrative agent, Merrill Lynch Capital Corporation, as syndication agent, and Citicorp North America, Inc. and Bank of America, N.A., as co-documentation agents, as amended, restated, supplemented or otherwise modified from time to time.

## II. PRELIMINARY STATEMENT

1. A number of the Step One Lenders (the "Step One Plaintiffs") commenced a lawsuit in New York State Court against JPMorgan, among others (the "NY Action").[3] The NY Action alleges breach of contract claims under the Senior Loan Agreement against JPMorgan, both as agent and as an initial Lender in connection with the Step Two transactions.

2. JPMorgan has responded in two ways. First, JPMorgan is seeking sanctions in this Court for the commencement by the Step One Plaintiffs of the NY Action (the "Contempt Motion").[4] Second, JPMorgan has informed a number of the Step One Plaintiffs that JPMorgan (as agent) either has rejected their existing trades and/or will not record any future trades for any Step One Plaintiff, even though JPMorgan is contractually required to record all such trades.

3. JPMorgan's wrongful refusal to record trades threatens harm to the Step One Lenders by reducing the amount of the claims that the relevant Step One Lenders can vote with respect to the four competing plans of reorganization. Given the timing of votes on the plans, including the Debtors' proposed setting of a November 9 record date for voting purposes with respect to all four proposed plans,[5] it is critical that this matter be resolved on an emergency basis by the Supreme Court for the State of New York (the "NY Court") (relief from the NY

---

[3] Alden Global Distressed Debt Opportunities Fund, et al. v. JPMorgan Chase Bank, et al., index 651884/2010, filed October 29, 2010, in the Supreme Court of the State of New York.

[4] See Joint Motion of JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citicorp North America, Inc., and Bank Of America, N.A., for an Order (I) Finding the Step One Credit Agreement Lenders in Contempt of the Court's Mediation Order and the Automatic Stay Pursuant to 11 U.S.C. § 362; and (II) Enjoining the Step One Credit Agreement Lenders from Further Violations of the Mediation Order and the Automatic Stay [D.I. 6472].

[5] See Motion of the Debtors for an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (II) Approving Forms of Ballots, Master Ballots and Related Instructions; (III) Approving Enforcement Action of Confirmation-Related Discovery; (VII) Establishing New Deadline for Return of Media Ownership Certifications; (VIII) Authorizing Expansion of Balloting and Tabulation Agent's Retention and Allocation of Costs of Same; and (IX) Granting Related Relief [D.I. 6255].

Court is referred to as "Injunctive Relief") or, if this Court holds that it has jurisdiction to do so, by this Court. Otherwise, the Step One Lenders face real prospects of immediate and irreparable harm as a result of JPMorgan's tactics.[6]

4. Were it not for the pendency of the Contempt Motion, the Step One Plaintiffs would already be seeking Injunctive Relief in the NY Action. As it is, the Step One Lenders are taking the cautionary measure of filing this Motion with this Court in order to confirm their ability to seek the Injunctive Relief.

### III. BASIS FOR RELIEF

**A.  JPMorgan Is Required To Record Trades to Existing Lenders**

5. The Senior Loan Agreement provides JPMorgan with no discretion: JPMorgan *must* record all trades made by existing Lenders. While the Agent (JPMorgan) and the Borrower (Tribune) have consent rights under certain circumstances, those consent rights do not apply here, given that each of the Step One Plaintiffs is a current Lender under the Senior Loan Agreement. Pursuant to clause (F) of Section 8.07(a) of the Senior Loan Agreement, "the consent of the Agent and/or each Issuing Bank (as applicable) shall not be required for an assignment to any Lender or one or more of such Lender's Affiliates or Approved Funds."

6. Section 8.07(c) of the Senior Loan Agreement also makes clear that JPMorgan has no discretion to reject assignments of additional Loans to existing Lenders: "Upon its receipt of an Assignment and Acceptance executed by an assigning Lender and an assignee representing that it is an Eligible Assignee ... the Agent shall ... (i) accept such Assignment and Acceptance,

---

[6] The voting record date for the plans ties to Lenders and Lender claims appearing on JPMorgan's Register, so an unrecorded trade means the relevant Lender cannot vote the claims that it has purchased.

(ii) record the information contained therein in the Register and (iii) give prompt notice thereof to Borrower."

7.   Because each Step One Lender is already an existing Lender, JPMorgan therefore has no discretion to reject any assignments of further Loans to or from them.

**B.   JPMorgan Has Rejected Trades and Stated that It Will Continue To Do So**

8.   Bennett Management Corporation, through its managed funds Bennett Offshore Restructuring Fund, Inc., Bennett Restructuring Fund LP, BRF Senior Income, LP, and Newstart Factors, Inc. (collectively, "Bennett"), is a Step One Lender. The factual statements in the following paragraphs 9-11 are based on the Declaration of Lucy K. Galbraith, a Vice President of Bennett Management Corporation, attached as Exhibit A.

9.   On numerous occasions, Bennett has submitted to JPMorgan all necessary documentation and forms to record multiple trades (both purchases and trades). Prior to commencement of the NY Action, JPMorgan has always complied with its contractual obligation to record Bennett's trades. After the NY Action was commenced, however, JPMorgan did not record (and still has not recorded) any additional purchase trades, while at the same time apparently recording sell trades.

10.   When the first series of Bennett's post-NY Action trades were not closed, Bennett and its counsel made numerous calls to identify the reason that the Bennett trades had not been recorded. Upon information and belief, lawyers for various counterparties to the Bennett trades have also called JPMorgan seeking the same information. Initially, Bennett was informed that these trades were "pending internal review" or "still pending review." However, on November 16, 2010, JPMorgan telephonically informed Bennett that its trades had been rejected. Even after Bennett referred JPMorgan's attention to the provisions of the Senior Loan Agreement

governing assignments to lenders of record, JPMorgan indicated that it "would not allow" any plaintiff in the NY Action to increase its holdings.

11. On November 22, 2010, Bennett telephoned JPMorgan one last time in an effort to resolve this consensually rather than via this emergency Motion. Bennett informed JPMorgan that the Step One Lenders intended to file this Motion today (November 23) unless JPMorgan reconsidered its position and stated that it would record Bennett's trades after all. JPMorgan stated that it would not reconsider its position, thus necessitating the filing of this Motion.

12. JPMorgan has similarly informed other Step One Plaintiffs that JPMorgan would no longer be willing to engage in any trades of Tribune with them. See, e.g., the Declaration of Jack Doyle, a partner at Wexford Capital LP, attached as Exhibit B.

C. **The Automatic Stay and the Mediation Order Do Not Apply to the Injunctive Relief**

13. The Step One Lenders do not believe that either the Mediation Order or the automatic stay would prohibit the Step One Lenders from seeking Injunctive Relief from the NY Court. It is the Step One Lenders' view that the Injunctive Relief would be obtained by an action between third parties for commercial breach of contract. However, the Step One Lenders are filing this Motion as a protective matter in light of the Contempt Motion, given that the Contempt Motion asserts that the NY Action – also an action between third parties for commercial breach of contract – violates both the automatic stay and the Mediation Order. While the Step One Lenders will be filing an objection to the Contempt Motion on the basis that neither the automatic stay nor the Mediation Order apply to the NY Action, this Motion will not discuss the merits (or the lack thereof) of the Contempt Motion. Nonetheless, the Contempt Motion demonstrates the real need for the protective relief requested in this Motion.

14. With respect to the automatic stay, the Injunctive Relief, like the NY Action itself, is neither an action against the Debtors nor an act to obtain possession or control over any property of the Debtors. See Bankruptcy Code § 362(a). Rather, the Injunctive Relief would relate solely to JPMorgan's failure to record the assignment of loans to existing Lenders in accordance with the express terms of the Senior Loan Agreement. Whether JPMorgan records trades or not is appropriately the subject of a third party contract dispute, the outcome of which has no bearing on the Debtors or their estates other than with respect to voting on the plans. Interestingly, in joining in the Contempt Motion several days later, the Debtors focused solely on the Mediation Order and a discretionary stay, and do not appear to be asserting a violation of the automatic stay.[7]

15. Even were the automatic stay to apply, JPMorgan as a non-debtor does not have the right to avail itself of the automatic stay to shield its conduct. See In re Uni-Marts, LLC, 399 B.R. 400, 415 (Bankr. D. Del. 2009) ("In general, only the debtor is afforded the protections of the automatic stay under section 362; conversely, third-parties do not receive the protection of the automatic stay.") (citing Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999)); see also In re Ronald Perlstein Enters., Inc., 70 B.R. 1005 (Bankr. E.D. Pa. 1987); In re Phila. Gold Corp., 56 B.R. 87 (Bankr. E.D. Pa. 1985).

16. The Mediation Order also does not apply. The Injunctive Relief would not assert LBO-Related Causes of Action.[8] In any event, the Mediation Order applies only to "motions or

---

[7] See Joinder of the Debtors, etc. [D.I. 6509].

[8] The Mediation Order defines an "LBO-Related Cause of Action" as any and all claims, causes of action, avoidance powers or rights, and legal or equitable remedies against any Person arising from any transaction related to the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction,

proceedings" (see Mediation Order ¶ 10), both of which would be disputes commenced in this Court. The Injunctive Relief, on the other hand, would be neither a motion nor a proceeding in this Court; it would be a completely separate action by a non-debtor third party asserting contract claims against another non-debtor third party in a non-bankruptcy court.

17. For the foregoing reasons, the Step One Lenders are requesting entry of a protective order finding that seeking the Injunctive Relief would not be a violation of the automatic stay or the Mediation Order.

**D.  If This Court Decides It Does Have Jurisdiction Over JPMorgan's Refusal To Record Trades, This Court Should Enter an Order Compelling JPMorgan To Record Trades**

18. Should this Court determine that it has jurisdiction to resolve the commercial dispute between the Step One Lenders and JPMorgan over an asserted breach of contract, the Step One Lenders request in the alternative that this Court enter an order compelling JPMorgan (i) immediately to record all pending Step One Lender trades and (ii) promptly to record all future trades. JPMorgan's actions directly affect the quantum in which several of the Step One Lenders can vote for and against the various proposed plans. JPMorgan should not be permitted to reduce the voice of the Step One Lenders in this fashion, particularly when JPMorgan is the co-proponent of a plan of reorganization that the Step One Lenders do not support.

**E.  In Either Event, This Court Should Not Schedule the Voting Record Date Until JPMorgan Has Recorded All Relevant Trades**

19. JPMorgan and the other co-proponents of the so-called "Settlement Plan" have proposed a record date for plan voting purposes of November 9, 2010. In addition to being unusually early in general, this date is particularly inappropriate in that JPMorgan rejected Step

---

regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any applicable law.

One Plaintiffs' purchase trades submitted to it on or before November 9 and has stated that it will continue to reject future trades submitted by any of the Step One Plaintiffs. By rejecting purchase trades and recording sell trades, JPMorgan is illegitimately attempting to skew the Step One Lenders' ability to vote.

20. In order to ensure that the Step One Lenders are properly able to vote the claims that they own, the Step One Lenders request that this Court not schedule the voting record date on any of the plans until JPMorgan confirms that is has closed all pending trades and the Step One Lenders are recorded on JPMorgan's Register in the proper amounts owing to them.

### IV. CONCLUSION

Given the proposed voting record date of November 9, it is thus crucial that the Step One Lenders be permitted to act quickly. The Step One Lenders respectfully request that the Court either (i) acknowledges that the Step One Plaintiffs are entitled to seek Injunctive Relief in the NY Action compelling JPMorgan to record all pending and prospective loan trades or (ii) in the alternative, enter an order compelling JPMorgan to record all pending and prospective loan trades. Either way, the Step One Lenders further request that this Court not schedule a record date for plan voting purposes until JPMorgan has recorded all relevant loan trades, together with such other relief as appropriate.

Dated: November 23, 2010                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Daniel B. Butz*
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: 302.658.9200
Facsimile: 302.658.3989

ARKIN KAPLAN RICE LLP
Howard Kaplan
Johnny Yeh
Deana Davidian
590 Madison Avenue, 35th Floor
New York, NY 10022
Telephone: 212.333.0200
Facsimile: 212.333.2350

OLSHAN GRUNDMAN FROME ROSENZWEIG
& WOLOSKY LLP
Adam Friedman
Steve Wolosky
Fredrick Levy
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: 212.451.2300
Facsimile: 212.451.2222

BRACEWELL & GIULIANI LLP
Evan Flaschen
Daniel Connolly
Andrew Schoulder
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT 06103-1516
Telephone: 860-256-8537
Facsimile: 860-760-6310

*Counsel to the Step One Credit Agreement Lenders*