**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

### DECLARATION OF LUCY K. GALBRAITH IN SUPPORT OF EMERGENCY MOTION OF STEP ONE CREDIT AGREEMENT LENDERS FOR RELIEF CONCERNING JPMORGAN CHASE BANK N.A.'S REFUSAL TO RECORD LOAN TRADES

**LUCY K. GALBRAITH**, declares under the penalty of perjury, pursuant to 28 U.S.C. section 1746, as follows:

1. I am a Vice President at Bennett Management Corporation ("Bennett"), an investment management company having an office at 2 Stamford Plaza, Stamford, Connecticut. 06901.

2. The facts set forth herein are based upon my personal knowledge as a Vice President for Bennett. I am authorized to submit this Declaration, and if called as a witness, I could and would testify thereto.

3. Bennett, through its affiliates Bennett Offshore Restructuring Fund, Inc., Bennett Restructuring Fund LP, BRF Senior Income, LP, and Newstart Factors, Inc., is a Step One Credit Agreement Lender ("Step One Lender") under a Credit Agreement, dated May 17, 2007 ("Credit Agreement"). JPMorgan Chase Bank N.A. ("JPMorgan") serves as administrative agent under the Credit Agreement, and, as administrative agent, is responsible for, among other things, recording and closing trades of Credit Agreement loans.

4.   Under Section 8.07(c) of the Credit Agreement,:"[u]pon its receipt of an Assignment and Acceptance executed by an assigning Lender and an assignee representing that it is an Eligible Assignee ... the Agent shall ... (i) accept such Acceptance and Assignment, (ii) record the information contained therein in the Register and (iii) give prompt notice thereof to Borrower."

5.   Clause (F) of Section 8.07(a) of the Credit Agreement provides that "the consent of the Agent and/or each Issuing Bank (as applicable) shall not be required for assignment to any Lender or one or more of such Lender's Affiliates or Approved Funds."

6.   Nevertheless, despite its contractual obligations as administrative agent under the Credit Agreement, JPMorgan has refused and is continuing to refuse to close purchase loan trades submitted to JPMorgan since November 2, 2010, even though Bennett and the trade counterparties provided JPMorgan with all the documentation and approvals necessary to close the trades in question.

7.   On November 2, 2010, counsel for one of Bennett's counterparties contacted Elizabeth Baquero, an associate with JPMorgan, to inquire about the closing status of a loan trade between Bennett and the counterparty. In response, Baquero replied simply that the trade was "[n]ot ready to close."

8.   Counterparty counsel again contacted JPMorgan the following day, November 3, 2010, to seek an update on the trade closing, but received no response from Baquero.

9.   Repeated follow-ups by the counterparty, counterparty counsel and Bennett and its counsel on November 4th, 8th, 9th through 12th and 15th either went unanswered by Baquero or resulted in Baquero's uninformative statement that the trades were "pending internal review" or "still pending review."

10. Indeed, over a week after the initial trade closing request was submitted to JPMorgan, counterparty counsel asked JPMorgan whether there was "a particular reason this trade is not able to close" and asked whether JPMorgan required any additional information in order to close the trade. While Baquero replied that no further information was necessary and that the trade was "still pending review," Baquero failed to explain the reason for the closing hold up.

11. On November 16, 2010, Bennett's counsel contacted Baquero to seek clarification regarding the reason for JPMorgan's failure to close the outstanding trades. Baquero refused to provide a reason for JPMorgan's refusal to close the trades and directed Bennett's counsel to Miriam Kulnis, an executive at JPMorgan, who, in turn, refused to speak with Bennett's counsel. Later that day, I telephoned Ms. Kulnis, who informed me that Bennett's pending trades had been rejected.

12. According to Ms. Kulnis, JPMorgan refused to close any of Bennett's trades because Bennett's affiliates, along with numerous others, brought a breach of contract action against JPMorgan in New York State Supreme Court captioned <u>Alden Global Distressed Debt Opportunities Fund, et al. v. JPMorgan Chase Bank, et al.</u>, Index No. 651884/2010.

13. More specifically, Ms. Kulnis stated that because the plaintiffs -- not just Bennett's affiliates -- had, by their lawsuit, repudiated JPMorgan's indemnification provisions in the Credit Agreement, JPMorgan would no longer close trades for any of the plaintiffs.

14. I asked Ms. Kulnis for a contact in JPMorgan's legal department in order to further discuss JPMorgan's position on this issue, and she stated that she would provide me with that contact information.

15. On November 22, 2010, having not heard back from Ms. Kulnis or anyone in JPMorgan's legal department, Bennett telephoned JPMorgan one last time in an effort to resolve JPMorgan's position consensually. Bennett informed JPMorgan that the Step One Lenders intended to file this Motion today (November 23) unless JPMorgan reconsidered its position and stated that it would record Bennett's trades after all. JPMorgan stated that it would not reconsider its position.

16. By refusing to close Bennett's trades, JPMorgan has barred Bennett from closing millions of dollars of loan trades. JPMorgan's actions have negatively impacted Bennett's voting rights in the above-captioned bankruptcy action.

17. Based upon my understanding of Section 8.07 of the Credit Agreement as well as Bennett's position as an existing lender under the Credit Agreement, JPMorgan must automatically close Bennett's Credit Agreement-related trades and has no discretion to reject assignments of loans Bennett.

18. Prior to the filing of the New York State court action, JPMorgan closed all of Bennett's trades under the Credit Agreement without issue.

Dated: Stamford, Connecticut
       November 23, 2010

_____
LUCY K. GALBRAITH