IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: November 29, 2010 at 10:00 a.m.<br><br>Ref. Nos. 6414, 6485, 6550 and 6553 |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF ITS AMENDED MOTION FOR ENTRY OF AN ORDER
GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE,
PROSECUTE, SETTLE AND RECOVER CERTAIN CAUSES OF
ACTION ON BEHALF OF THE DEBTORS' ESTATES
<u>ARISING UNDER AND PURSUANT TO 11 U.S.C. §§ 547 AND 550</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company and its various debtor-subsidiaries (collectively, the "**Debtors**" or "**Tribune**"), by and through its undersigned counsel, hereby submits this reply (the "**Reply**") in response to the limited objections (each a "**Limited Objection**") filed by Aurelius Capital Management, LP ("**Aurelius**") and Wilmington Trust Company ("**WTC**"; with Aurelius, the "**Objectants**") to the Committee's motion, filed on November 17, 2010 (the "**Committee's Standing Motion**"), for entry of an order granting the Committee leave, standing and authority to commence, prosecute, settle and recover certain causes of action on behalf of the Debtors' estates arising under and pursuant to 11 U.S.C. §§ 547 and 550 (the "**Preference Actions**") against certain individuals and entities who received payments from Tribune in the year prior to the Petition Date.[1] In further support of the Committee's Standing Motion, the Committee respectfully submits as follows:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them as set forth in the Committee's Standing Motion.

{698.001-W0011364.}CPAM: 3369413.5

**PRELIMINARY STATEMENT**

1.  As part of their duties as debtors-in-possession, the Debtors undertook an extensive analysis of potential preference actions. The Debtors then made multiple presentations to the Committee's professionals regarding their preference analysis setting forth which preference actions should be pursued and which actions they thought should not be pursued, and the reasons for the Debtors' conclusions. The Debtors, in determining which actions to pursue considered, <u>inter alia</u>, potential defenses (where pursuit of such actions would be wasteful for the estates) or where the defendant was a vendor whose good business relationship with the Debtors was important to maintain. The Debtors also identified, with the assistance of Committee counsel, potential preference actions where questions might arise as to the Debtors' independence and ability to determine the scope of the potential action, the potential defenses, or, generally, whether pursuing such actions would be in the best interests of the Debtors' estates. The Committee and Debtors agreed that the Committee should determine whether to pursue these particular preference actions on behalf of the Debtors' estates. The Debtors and the Committee shared their analysis and conclusions with the Objectants.

2.  On November 17, 2010, the Committee filed the Standing Motion. It seeks -- with the approval of the Debtors -- authority to pursue preference actions against certain insiders, certain Zell affiliates and JPMorgan Chase Bank, N.A. (collectively, the "**Preference Defendants**"). The Committee's Standing Motion also seeks to stay the actions against the Preference Defendants. The Limited Objections were filed in response to the Committee's Standing Motion.

3.  The Limited Objections are, in reality, not objections at all. The Objectants support the Committee's request for standing to pursue the Preference Actions identified in the Committee's Standing Motion. The Objectants assert, however, that the Committee's request

2

"does not go nearly far enough." Evidently, it is the Objectants' view that the Committee should bring *every* potential preference action, against *every* potential preference defendant, without regard to potential defenses and without regard to whether the preference action would maximize value to the Debtors' estates.

4. The Limited Objections ignore applicable law (and, in fact, do not cite to one case or other authority), general bankruptcy practice and applicable bankruptcy procedures to support their position. A debtor in a reorganization case typically has the authority to determine "in its business judgment" which preference actions it should pursue or not pursue. Where a debtor has failed to act in a manner that is consistent with its business judgment, the creditors' committee (or, indeed, any creditor) may seek standing to bring claims on behalf of the estate. In this case, the Committee's professionals have carefully reviewed the Debtors' decisions and have not seen any evidence that the Debtors acted in a manner inconsistent with their obligations. That the Debtors do not seek to bring preference actions against each and every potential defendant, as the Objectants desire, does not suggest otherwise. To the contrary, the Debtors' considered approach to identifying preference defendants and actions that should and should not be pursued is appropriate to ensure that funds are not wasted needlessly and that the value of good trade relationships are preserved for the benefit of the estates.

5. The Objectants' other points similarly ignore bankruptcy law and bankruptcy practice. For example, there is no basis in law to grant the Objectants' request that any settlement be stayed until a plan is confirmed. Pursuant to the Committee's Standing Motion, both the Debtors and the Committee would have to agree to any settlement and the settlement would have to be brought before the Court for approval, on notice and with an opportunity for parties-in-interest to be heard with respect to any objections they might have. This standard is

appropriate, consistent with applicable law, and provides any party-in-interest the opportunity to voice concrete (rather than imagined) concerns. The Objectants also cannot now have the Court mandate that all potential preference actions be transferred to the applicable litigation trust. That issue, of course, will be determined by whichever plan of reorganization is confirmed by this Court and is entirely irrelevant to a motion for standing.

## BACKGROUND

6. On December 8, 2008 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Committee.

8. During October and November 2010, as set forth in the accompanying Declaration of Brad Hall of AlixPartners, LLP, *see* Exhibit A hereto (the "**Hall Declaration**"), the Committee, with the Debtors, undertook a detailed and extensive analysis of the potential preferences. Over 16 in-person meetings and conference calls were held between AlixPartners and the Debtors' professionals. In addition, the Objectants were involved in three separate meetings with the Debtors and the Committee on potential preferences.[2]

---

[2] Aurelius has argued that the Committee has shown a "dire lack of concern" for any of the potential preference actions for which it is not responsible. *See* Aurelius Limited Objection at n.5. Nothing could be further from the truth. As set forth in the Hall Declaration, *see* Exhibit A, the Committee has gone to great lengths to investigate and analyze the potential preference claims at issue in this case. This work was done in detail by Committee's financial advisors as well as by Committee counsel. That Aurelius, after a far less exhaustive analysis, disagrees with the Committee should not be surprising. Additionally, Aurelius is incorrect in its

9. On November 11, 2010, the Committee filed a motion (as amended on November 17, 2010) for entry of an order granting the Committee leave, standing and authority to commence, prosecute, settle and recover the Preference Actions against the Preference Defendants. The Preference Actions subject to the Committee's Standing Motion can be divided into two groups: (a) claims against current and former officers and directors for amounts received in the year prior to the Debtors' bankruptcy filing; and (b) claims against certain business entities who are past or possible future owners of the Debtors and against which the Committee has previously filed complaints [D.I. 6414 and 6485].

10. On November 22, 2010, Aurelius filed its Limited Objection to the Committee's Standing Motion [D.I. 6550]. Later the same day, WTC also filed its own Limited Objection to the Committee's Standing Motion and joined Aurelius's Limited Objection [D.I. 6553].

## REPLY

### I. The Committee Has Satisfied the Standing Requirement and Its Motion Should Be Granted

11. As set forth in the Committee's Standing Motion, with debtor consent, a creditors' committee should be granted standing if "the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *See Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001) (citation omitted); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003) (agreeing with Second Circuit that committee may sue on behalf of debtors where debtor-in-possession consents).

---

statement that the "Debtor/Committee/LBO Lender Plan" provides releases for avoidance claims. *See, e.g.,* Aurelius Limited Objection at n.4, 5. The proposed plan does no such thing.

5

12. In this case, vesting the Committee with the authority to pursue the Preference Actions identified in the Committee's Standing Motion is in the best interests of the Debtors' estates and is "necessary and beneficial" to the fair and efficient resolution of these bankruptcy proceedings because (a) such potential preference claims should be preserved for the estates, and (b) the independence of the Debtors' judgment might be questioned with respect to the identified Preference Defendants.

13. No party has objected to the Committee pursuing the identified Preference Actions. Therefore, and for all the reasons set forth in the Committee's Standing Motion, the Court should grant standing to the Committee to pursue the Preference Actions on behalf of the Debtors.

## II. The Requests in the Limited Objections Are Without Legal Foundation

14. The Objectants request that the Committee bring all possible preference actions, without regard to the benefit or detriment that bringing such actions might have on the bankruptcy estates as a whole. The Objectants also seek to place inappropriate and unwarranted limits on the right of the Debtors and the Committee to bring proposed settlements of such actions before the Court and request that the actions be transferred to a litigation trust. All of these requests are procedurally improper and without legal foundation and, accordingly, must be denied.

### A. Debtors Have Reasonable Discretion On Whether to Bring Preference Actions or Not

15. Property recovered in avoidance actions is property of the estate under section 541 of the Bankruptcy Code. *See TWA, Inc. v. Travelers Int'l AG. (In re TWA)*, 163 B.R. 964, 972 (Bankr. D. Del. 1994). In debtor-in-possession cases, debtors alone generally have the discretion to pursue or not pursue preference actions. *See, e.g., In re PWS Holding Corp.*, 228

CPAM: 3369413.5

F.3d 224, 235 (3d Cir. 2000) (stating that "section 547 of the Bankruptcy Code vests exclusive discretion to prosecute or not prosecute preference claims with the trustee or debtor-in-possession"); *see also In re Coram Healthcare Corp.*, 271 B.R. 228, 237 (Bankr. D. Del. 2001) (noting "a debtor in possession has discretion not to pursue avoidance actions"); *In re Creekstone Apartments Assocs., L.P.*, No. 92-04511 (GCP), 1995 Bankr. LEXIS 552, at *29-30 (Bankr. M.D. Tenn. Jan. 20, 1995) (stating "the pursuit of avoidance actions are [sic] within the sound discretion and business judgment of chapter 11 debtors"). In considering whether or not to bring preference actions, debtors should consider a number of factors, including the costs and benefits of bringing the action and, with respect to ongoing businesses, the benefit to the estate of continued good relations with suppliers and other business partners. *See Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 548, 555 (W.D. Pa. 2005).

16. In practice, this issue of discretion in asserting preference actions often arises in the context of an attack under section 1129 on the good faith of a debtor who is seeking to confirm a plan of reorganization that does not propose to pursue preference actions. *See, e.g., In re PWS Holding Corp.*, 228 F.3d at 242-43; *see also In re Coram Healthcare Corp.*, 271 B.R. at 237; *In re Creekstone Apartments Assocs., L.P.*, 1995 Bankr. LEXIS 552, at *30-31.
In *PWS Holding*, the debtor had brought only one preference claim even though over $600 million in payments had been made during the 90-day preference period. *See In re PWS Holding Corp.*, 228 F.3d at 230-31. The official committee agreed with the debtor and passed a resolution approving the release of claims "in the interest of getting the plan into the hands of creditors and hopefully getting a distribution as soon as possible and getting the Debtor out of bankruptcy." *See id.* at 243. In fact, the committee co-chair testified that she had "never seen a reorganized debtor pursuing preference actions." *See id.* According to the court, section 547 of

the Bankruptcy Code "vests exclusive discretion to prosecute or not prosecute preference claims with the trustee or debtor-in-possession." *See id.* at 235. Based on the evidence provided by the debtors and the committee, and noting that the objecting creditors had "not presented anything but innuendo," the court ultimately rejected the argument that the plan was not proposed in good faith. *See id.* at 243.

### B. Authority of Committee and Others to Bring Preference Actions

17. It is clear, however, that a debtor's discretion to pursue or not pursue preference or other actions must be tempered in appropriate instances. As creditors' committees have fiduciary duties to all general unsecured creditors and have a primary purpose of maximizing distributions to all general unsecured creditors, *see In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 Bankr. LEXIS 323, at *9 (Bankr. D. Del. Mar. 2, 2005) (citations omitted), it is well settled in the Third Circuit that bankruptcy courts may allow a committee to pursue estate causes of action under appropriate circumstances. *See Cybergenics*, 330 F.3d at 575.

18. An "appropriate circumstance" for a committee to pursue an action is where debtors-in-possession pursue or fail to pursue preference actions without utilizing "sound discretion and business judgment." *See In re Creekstone Apartments Assocs., L.P.*, 1995 Bankr. LEXIS 552, at *29-30. Accordingly, before granting derivative standing to a committee, a court must examine whether a debtor-in-possession's actions are beyond the scope of that deference. *See Cybergenics*, 330 F.3d at 575; *see also In re Nat'l Forge Co.*, 326 B.R. at 555 ("prejudice can occur in numerous ways if creditors are permitted to file avoidance actions *carte blanche*. . . . In other contexts, an ill-advised suit by a creditors' committee may interfere with a debtor's efforts to reorganize by compromising important creditor-debtor relationships or by removing a source of the debtor's bargaining power.").

19.     The Debtors presented to the Committee their process for systematically reviewing each and every potential substantial preference action above certain threshold amounts. Where the Debtors proposed not to pursue actions, the Debtors explained their decisions to the Committee and to the Objectants. *See* Exhibit A. In fact, as alluded to in Exhibit A to Aurelius's Limited Objection, the Debtors invited counsel to the Objectants to bring its own motion for standing so that they might themselves pursue preference actions on behalf of the estate if they had concerns about the Debtors' and the Committee's process and decisions. This invitation was not accepted. Meanwhile, the Debtors and the Committee have sought to preserve potential preference actions with respect to $503 million of over $1.1 billion of payments made.

20.     Based on the Debtors' work, it appears that their business judgment decisions are subject to deference.[3] As such, there is no legal support or basis for the Committee to pursue the additional claims the Objectants insist must be brought.

### C. The Proposed Limitations on Actions Brought or Tolled by Debtors or Committee Are Irrelevant to this Motion and Should Be Denied

21.     The Objectants also argue that neither the Debtors nor the Committee should be permitted to propose a settlement of any preference actions and that all preference actions should be transferred to a litigation trust. Neither of these requests have any basis in the law.

22.     First, the Objectants argue that the Debtors and Committee should not be permitted even to propose a settlement of any preference actions. The proposed order attached to the Committee's Standing Motion explicitly provides, however, that both the Debtors and the Committee must approve any settlement, and then present it to the Court for approval, which can occur only after notice and an opportunity for parties-in-interest to be heard. Accordingly, it is

---

[3]  The conclusory allegations made by the Objectants, which show no evidence of any review of the detailed analyses undertaken by the Debtors and provided to the Objectants do not suggest differently.

9

with the Court, and neither the Debtors nor the Committee, that the ultimate decision rests on the propriety or impropriety of any proposed settlement. The Court should decline the invitation to tie its own hands and to give the Objectants veto power over any settlement.

23. Second, the Objectants argue that the Preference Actions should be transferred to a litigation trust and pursued by the trust. This argument simply has nothing to do with the Committee's Standing Motion, which simply seeks authority to assert the Preference Actions, not to decide which entities will ultimately prosecute them or benefit from them. The ownership of Preference Actions will be determined by whichever plan of reorganization is confirmed. This part of the Limited Objection is wholly irrelevant to the matters before the Court and should also be overruled.

WHEREFORE, the Committee respectfully requests that the Court (i) overrule the Limited Objections, (ii) grant standing and authority to the Committee to commence, prosecute, settle and recover amounts identified in the Committee's Standing Motion as required therein, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: November 24, 2010
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/ J. Landon Ellis_
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
J. Landon Ellis (No. 4852)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 408-5100
Facsimile:   (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*

- and -

Graeme W. Bush
James Sottile
**ZUCKERMAN SPAEDER LLP**
1800 M. Street, N.W., Suite 1000
Washington, DC 20036
Telephone:  (202) 778-1800
Facsimile:   (202) 822-8106

*Special Counsel to the Official Committee of Unsecured Creditors*

CPAM: 3369413.5