## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
|  | ) Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) Re: Docket No. 6559 |
|  | ) |

_____

### JENNER & BLOCK LLP'S LIMITED OBJECTION TO THE COMMITTEE'S MOTION FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO (A) TOLL CERTAIN CAUSES OF ACTION AGAINST THE DEBTORS' PROFESSIONALS ON BEHALF OF THE DEBTORS' ESTATES UNDER 11 U.S.C. §§ 547 AND 550, OR AT THE COMMITTEE'S OPTION, (B) COMMENCE, PROSECUTE, SETTLE AND RECOVER SUCH ACTIONS

Jenner & Block LLP ("Jenner & Block") respectfully submits its Limited Objection (the "Objection") to the Official Committee of Unsecured Creditors (the "Committee") Motion For Entry of An Order Granting Leave, Standing and Authority to (A) Toll Certain Causes of Action on Behalf of the Debtors' Estates Under 11 U.S.C. §§ 547 And 550, Or At The Committee's Option (B) Commence, Prosecute, Settle and Recover Such Actions (Bankr. Doc. 6559, the "Motion").

### INTRODUCTION

The Committee's Motion is the result of an unfortunate case dynamic that causes the Committee to seek to bring claims that it candidly acknowledges may not have merit, simply to avoid any possible criticism by its rival, Aurelius Capital Management, LP, that it has not been sufficiently aggressive in suing anyone and everyone associated with the Debtors. In their race to become king of the litigation hill, both the Committee and

Aurelius have lost sight of the applicable standards for derivative standing to bring suit, and seek to have this Court adopt the view that it is both prudent and economically justified for an estate to bring suit to recover every transfer made to any professional during the ninety days leading up to a debtor's bankruptcy filing without regard to any of the facts or circumstances surrounding such transfers.  Such an unorthodox approach to avoidance litigation not only undermines the ability of debtors to employ the services of counsel and other professionals pre-bankruptcy, but also threatens to sink these bankruptcy cases into a war of professional against professional.  As set forth more fully herein, the Committee has not met its burden of showing it is entitled to derivative standing.  Further allowing the Committee standing under these circumstances would be both inequitable and bad policy for future cases.

## **ARGUMENT**

The Committee's Motion fails on both legal and equitable grounds.  As the Committee admits in its Motion, to be granted derivative standing, it must establish by competent evidence that: (i) the Debtors and the Trustee unjustifiably refused to pursue the claim at issue; and (ii) the claim is colorable. (Comm. Motion at ¶21); *see also In re Cooper*, 405 B.R. 801, 816 (Bankr. N.D. Tex. 2009) (denying motion for derivative standing because movant could not meet its burden).  Instead of alleging any facts demonstrating that the Debtors have unjustifiably refused to prosecute these proposed claims and that the proposed claims against Jenner & Block (or the other professionals for that matter) are colorable, the Committee argues that the "rationale [for the relief it seeks] is self-evident", that the Debtors are "necessarily conflicted against their current

professional advisors," and that there is an "obvious conflict."[1]  (Comm. Mot. ¶¶2, 25, 30.)  In effect, the Committee wants *carte blanche* authority to sue to avoid every transfer made to every professional during the ninety days leading up to the bankruptcy filings simply because it says it believes the Debtors are conflicted.  Those conclusory allegations are not sufficient for a number of reasons.

For starters, the Committee ignores that the Debtors' payments to professionals, including Jenner & Block, were reviewed by both the Debtors and the United States Trustee when the Debtors sought to employ professionals at the start of this case.  Jenner & Block, like the other professionals at issue here, disclosed the payments it had received during the ninety days leading up to the bankruptcy filings in the affidavit it filed in support of its retention motion.  By the time the retention motions were filed (December 26, 2008), the Committee had already been formed and was operating.  (*See* Bankr. Doc. 142.)  Thus, the Committee presumably reviewed this information as well.

The United States Trustee/Debtor review also was meaningful.  Jenner & Block is informed that in a few instances the United States Trustee requested that certain professionals return certain payments to the estates because the United States Trustee believed the transfers at issue were preferential and the transfers were returned.  Neither the United States Trustee nor the Debtors asked Jenner & Block to return any payments.  Those facts show that the Debtors (and other parties) determined at the start of these chapter 11 cases, in the proper exercise of their business and professional judgment, that Jenner & Block (and the other Debtor professionals) were properly paid in the ordinary course pre-petition and that there were no colorable preference claims that would prevent

---

[1] This complained of conflict between a debtor-in-possession and its professionals would exist in every conceivable Chapter 11 proceeding.

these professionals from being retained. Otherwise, objections would have been made at that time and the issue addressed then.

There is good reason to continue to respect that judgment and not to give in to the temptation that the Committee presents of simply suing every professional that received funds in the ninety days before Tribune's filing in the belief that doing so will insulate from criticism the Committee or whomever brings the claim. Indeed, it is telling that even with respect to the two firms that returned some payments at the start of the case, the Committee still includes those firms on its list of candidates to be sued. That fact strongly suggests that the Committee has brought the instant Motion not because the Debtors have unjustifiably failed to act, but because the Committee is fearful that if it does not do so, it will lose the battle to convince creditors that it should handle the estate's litigation. But that is not a good enough reason to grant the Committee derivative standing.

The Committee's Motion also fails to establish that there are any colorable claims to pursue here. Instead of identifying specific transfers and explaining why they are preferential and not subject to defense, the Committee asks for *carte blanche* authority to sue to recover every payment made to every professional. But as the Committee itself recognized when replying to an argument that Aurelius previously made:

> before granting derivative standing to a committee a court must examine whether a debtor-in-possession's actions are beyond the scope of that deference. *See Cybergenics*, 330 F.3d at 757; *see also In re Nat'l Forge Co.*, 326 B.R. at 555 ("prejudice can occur in numerous ways if creditors are permitted to file avoidance actions *carte blanche*…. In other contexts, an ill-advised suit by a creditor's committee may interfere with a debtor's efforts to reorganize by compromising important creditor-debtor relationships or by removing a source of the debtor's bargaining power.").

(Comm.'s Reply to Aurelius Obj. at 8 (Bankr. Doc. 6620)).  The Court cannot begin to determine whether the Debtors' actions here are subject to deference because the Committee has not even identified the specific transfers it wants to avoid.  Plainly, the Committee has undertaken virtually no analysis here -- it is simply reacting to an upcoming deadline and potential criticisms it fears that its chief rival will make.  That is not good enough.  The Motion should be denied.  *See, e.g., In re Copperfield Invs., LLC*, 421 B.R. 604, 612 (Bankr. E.D.N.Y. 2010) (denying motion where movant failed to show the existence of a colorable claim).[1]

Allowing the Committee to proceed here also would be inequitable. Jenner & Block relied upon the review conducted by the Debtors, the United States Trustee and, presumably the Committee, at the start of this case in agreeing to be retained and providing services to these estates post-bankruptcy.  Jenner & Block represented Tribune and its directors and officers in defending ERISA claims made against them. Jenner & Block provided effective representation, as the ERISA claims were dismissed both as to Tribune and virtually all of its directors and officers.  *Neil v. Zell*, 677 F. Supp. 2d 1010 (N.D. Ill. 2009).  Thus, after two years, the Committee's Motion is not made on a blank slate.  The Motion, if allowed, will create needless collateral complications because the

---

[1] In addition to failing to identify the specific claims it wants to bring, the Committee also ignores the United States Supreme Court's recent *Twombly-Iqbal* decisions in an effort to suggest that its burden to show the existence of a colorable claim is not particularly high.  In *Bell Atl. Corp. v. Twombly*, the United States Supreme Court held, however, that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not due."  550 U.S. 544, 545, 127 S.Ct. 1955, 1964-65 (2007).  In *Aschroft v. Iqbal*, the United States Supreme Court held that a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. 1937, 1949 (2009).  The cases cited by the Committee all pre-date *Twombly*.  (*See* Comm. Mot at 13.)  Following *Twombly-Iqbal*, the standard for a colorable claim is higher and certainly requires at a minimum identification and analysis of the precise claims the Committee wants to bring.

directors and officers, whom Jenner & Block represented both pre-petition and post-petition, necessarily relied upon Tribune's payment of these pre-petition fees, and could incur an unexpected liability if those fees were successfully challenged as preferences. Jenner & Block, in turn, relied on the payments made in those ninety days in deciding to continue to represent the Debtors and the officers and directors post-petition, under agreed financial arrangements with the insurer. There is no apparent basis to revisit those decisions at the eleventh hour.

Finally, granting the Committee's Motion would be bad policy. Debtors typically require extensive legal services in the months leading up to a bankruptcy filing. By suggesting that every payment made to every professional during this time period is one that must be avoided under 11 U.S.C. §§ 547(b) and 550, the Committee is suggesting that in the future, a debtor's professionals can only protect themselves by demanding large advance payment retainers, which in and of themselves, might force a debtor into bankruptcy. Plainly not every transfer to every professional in this case is subject to avoidance as a preference. But if the Court grants the Committee standing based on the pending overly-broad and ill-conceived Motion, it will be suggesting that it is open-season on professionals and the result will potentially limit the ability of future debtors to obtain the legal services they need pre-bankruptcy on credit.

**CONCLUSION**

For the foregoing reasons, Jenner & Block respectfully requests that the Court deny the Committee's motion for derivative standing to commence preferential transfer actions against Jenner & Block. In the alternative, Jenner & Block asks that the Court compel the Committee to accept the execution of a tolling agreement that would preserve the proposed claims in lieu of commencing an action naming the law firm as a defendant in its preference action.

    Respectfully submitted,

    JENNER & BLOCK LLP

By:   */s/ David J. Bradford*
    David J. Bradford (admitted *pro hac vice)*
    Catherine L. Steege (admitted *pro hac vice*)
    Andrew W. Vail (admitted *pro hac vice*)
    JENNER & BLOCK LLP
    353 North Clark Street
    Chicago, Illinois 60654
    Telephone: (312) 222-9350
    Facsimile: (312) 840-8788