IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | ) |
| IN RE: | ) Chapter 11 |
| | ) |
| TRIBUNE COMPANY, et al., | ) Case No. 08-13141 (KJC) |
| | ) |
| | ) Courtroom 5 |
| | ) 824 Market Street |
| _____Debtors.\_\_\_\_\_ | ) Wilmington, Delaware |

November 29, 2010
10:30 a.m.


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Debtors: | Sidley Austin LLP |
| | BY: JAMES CONLAN, ESQ. |
| | BY: KEVIN LANTRY, ESQ. |
| | BY: JAMES BENDERNAGEL, JR., ESQ. |
| | BY: KENNETH P. KANSA, ESQ. |
| | BY: JESSICA C.K. BOELTER, ESQ. |
| | One South Dearborn |
| | Chicago, IL 60603 |
| | (213) 896-6022 |
| | |
| | Cole, Schotz, Meisel, Forman & Leonard, PA |
| | BY:  NORMAN PERNICK, ESQ. |
| | 1000 North West Street |
| | Suite 1200 |
| | Wilmington, DE 19801 |
| | (302) 652-3131 |
| | |
| ECRO: | AL LUGANO |
| | |
| Transcription Service: | DIAZ DATA SERVICES |
| | 331 Schuylkill Street |
| | Harrisburg, Pennsylvania 17110 |
| | (717) 233-6664 |

Proceedings recorded by electronic sound recording; transcript
produced by transcription service

APPEARANCES:
(Continued)

For The Creditors Committee:    Landis Rath & Cobb
                                BY:  ADAM LANDIS, ESQ.
                                BY:  DANIEL B. RATH, ESQ.
                                BY:  RICHARD COBB, ESQ.
                                919 Market Street Suite 1800
                                P.O. Box 2087
                                Wilmington, DE 19899
                                (302) 467-4400

                                Chadbourne & Parke LLP
                                BY:  HOWARD SEIFE, ESQ.
                                BY:  DAVID LEMAY, ESQ.
                                BY:  ANDREW ROSENBLATT, ESQ.
                                BY:  CHRISTY RIVERA, ESQ.
                                BY:  THOMAS MCCORMACK, ESQ.
                                BY:  MARC ASHLEY, ESQ.
                                BY:  DOUG DEUTSCH, ESQ.
                                BY:  MARC ROITMAN, ESQ.
                                30 Rockefeller Plaza
                                New York, NY 10112
                                (212) 408-5100

                                Zuckerman Spaeder LLP
                                BY:  JAMES SOTTILE, ESQ.
                                BY:  GRAEME W. BUSH, ESQ.
                                1800 M Street
                                Suite 1000
                                Washington, DC 20036-5807
                                (202) 778-1800

For JP Morgan Chase:            Davis Polk & Wardwell
                                BY:  BENJAMIN KAMINETZKY, ESQ.
                                BY:  DONALD BERNSTEIN, ESQ.
                                BY:  MICHAEL J. RUSSANO, ESQ.
                                BY:  DAMIAN SCHAIBLE, ESQ.
                                450 Lexington Avenue
                                New York, NY 10017
                                (212) 450-4000

                                Richards Layton & Finger
                                BY:  ROBERT J. STEARN, JR., ESQ.
                                One Rodney King Square
                                920 North King Street
                                Wilmington, DE 19801
                                (302) 651-7612

APPEARANCES:
(Continued)

For Great Banc:                     Womble Carlyle
                                    BY:   THOMAS M. HORAN, ESQ.
                                    222 Delaware Avenue
                                    Wilmington, DE 19801
                                    (302) 252-4320

                                    K&L Gates
                                    BY:   JEFFREY RICH, ESQ.
                                    599 Lexington Avenue
                                    New York, NY 10022-6030
                                    (212) 536-3900

For Merrill Lynch:                  Potter Anderson & Corroon LLP
                                    BY: LAURIE SELBER SILVERSTEIN
                                    BY:   R. STEPHEN MCNEILL, ESQ.
                                    Hercules Plaza
                                    1313 North Market Street
                                    6th Floor
                                    Wilmington, DE 19801
                                    (302) 984-6000

                                    Kaye Scholer LLP
                                    BY:   MADLYN PRIMOFF, ESQ.
                                    425 Park Avenue
                                    New York, NY 10022-3598
                                    (212) 836-8000

For Wilmington Trust:               Sullivan Hazeltine & Allinson
                                    BY:   WILLIAM SULLIVAN, ESQ.
                                    4 East 8th Street, Suite 400
                                    Wilmington, DE 19801
                                    (302) 250-4357

                                    Brown Rudnick
                                    BY:   GORDON Z. NOVOD, ESQ.
                                    BY:   MARTIN SIEGEL, ESQ.
                                    Seven Times Square
                                    New York, NY 10036
                                    (212) 209-4800

For U.S. Trustee:                   Office of the U.S. Trustee
                                    BY:   DAVID KLAUDER, ESQ.
                                    844 King Street, Suite 2207
                                    Lockbox 35
                                    Wilmington, DE 19801
                                    (302) 573-6491

```
APPEARANCES:
(Continued)

For Aurelius Capital              Ashby & Geddes, P.A.
Management LP:                    BY:   WILLIAM P. BOWDEN, ESQ.
                                  BY:   AMANDA M. WINFREE, ESQ.
                                  500 Delaware Avenue
                                  P.O. Box 1150
                                  Wilmington, DE 19899-1150
                                  (302) 654-1888

                                  Akin Gump Strauss Hauer & Feld
                                  BY:   DANIEL H. GOLDEN, ESQ.
                                  BY:   DAVID M. ZENSKY, ESQ.
                                  BY:   PHILIP C. DUBLIN, ESQ.
                                  BY:   KRISTINA M. WESCH, ESQ.
                                  BY:   ABID QURESHI, ESQ.
                                  One Bryant Park
                                  New York, NY 10036
                                  (212) 872-1000

                                  Lerman Senter PLLC
                                  BY:   MEREDITH S. SENTER, ESQ.
                                  BY:   SALLY BUCKMAN, ESQ.
                                  2000 K Street, N.W.
                                  Washington, D.C. 20006
                                  (202) 429-8970

For Credit Agreement             Young Conaway Stargatt & Taylor
Lenders:                         BY:   BLAKE CLEARY, ESQ.
                                  The Brandywine Building
                                  1000 West Street 17th Floor
                                  P.O. Box 391
                                  Wilmington, DE 19801
                                  (302) 571-6600

                                  Hennigan Bennett & Dorman LLP
                                  BY:   JAMES O. JOHNSTON, ESQ.
                                  BY:   JOSHUA M. MESTER, ESQ.
                                  865 South Figueroa
                                  Suite 2900
                                  Los Angeles, CA 90017
                                  (213) 694-1200

For DBTCA:                       McCarter & English LLP
                                  BY:   DAVID ADLER, ESQ.
                                  BY:   KATHARINE L. MAYER, ESQ.
                                  245 Park Avenue
                                  27th Floor
                                  New York, NY 10167
                                  (212) 609-6800
```

APPEARANCES:
(Continued)

```
For Wells Fargo             Fox Rothschild LLP
As Bridge Agent:            BY:  JEFFREY M. SCHLERF, ESQ.
                            BY:  ERIC SUTTY, ESQ.
                            Citizens Bank Center
                            919 North Market Street
                            Suite 1300
                            P.O. Box 2323
                            Wilmington, DE 19899-2323
                            (302) 654-7444

                            White & Case LLP
                            BY:  SCOTT GREISSMAN, ESQ.
                            BY:  ANDREW W. HAMMOND, ESQ.
                            BY:  THOMAS LAURIA, ESQ.
                            1155 Avenue of the Americas
                            New York, NY 10036-2787
                            (212) 819-8200

For Law Debenture:          Bifferato Gentilotti
                            BY:  GARVAN F. MCDANIEL, ESQ.
                            800 North King Street
                            Plaza Level
                            Wilmington, DE 19801
                            (302) 429-1900

                            Kasowitz Benson Torres &
                            Friedman LLP
                            BY:  MATTHEW B. STEIN, ESQ.
                            BY:  DAVID S. ROSNER, ESQ.
                            BY:  SHERON KORPUS, ESQ.
                            1633 Broadway
                            New York, NY 10019
                            (212) 506-1700

For Morgan Stanley:         Barnes & Thornburg LLP
                            BY:  DAVID POWLEN, ESQ.
                            11 South Meridian Street
                            Indianapolis, IN 46204-3535
                            (317) 236-1313

For Ad Hoc Op Co Trade      Andrews Kurth LLP
Committee:                  BY:  PAUL N. SILVERSTEIN, ESQ.
                            450 Lexington Avenue
                            New York, NY 10017
                            (212) 850-2800
```

```
APPEARANCES:
(Continued)

For ACE Companies:          Duane Morris LLP
                            BY:  RICHARD W. RILEY, ESQ.
                            Suite 1200
                            1100 North Market Street
                            Wilmington, DE 19801-1246
                            (302) 657-4900

For Step One Lenders:       Morris Nichols Arsht & Tunnell
                            BY:  DEREK ABBOTT, ESQ.
                            1201 North Market Street
                            18th Floor
                            P.O. Box 1347
                            Wilmington, DE 19899-1347
                            (302) 658-9200

                            Bracewell & Guiliani LLP
                            BY:  EVAN FLASCHEN, ESQ.
                            Goodwin Square
                            225 Asylum Street Suite 2600
                            Hartford, CT 06103
                            (860) 256-8537

                            Arkin Kaplan Rice LLP
                            BY:  HOWARD J. KAPLAN, ESQ.
                            590 Madison Avenue
                            35th Floor
                            New York, NY 10022
                            (212) 333-0200

For EGI-TRB LLC:            Blank Rome LLP
                            BY:  DAVID W. CARICKHOFF, ESQ.
                            1201 Market Street
                            Suite 800
                            Wilmington, DE 19801
                            (302) 425-6400

                            Jenner & Block LLP
                            BY:  DAVID J. BRADFORD, ESQ.
                            353 N. Clark Street
                            Chicago, IL 60654-3456
                            (312) 222-9350
```

```
TELEPHONIC APPEARANCES:
For Debtor:                    Tribune Company
                               BY:  CHANDLER BIGELOW
                               BY:  DAVID ELDERSVEID
                               BY:  DON LIEBENTRITT
                               BY:  GARY WEITMAN
                               (312) 853-7778

                               Sidley Austin
                               BY:  JILLIAN LUDWIG, ESQ.
                               BY:  CANDACE KLINE, ESQ.
                               BY:  DAVID MILES, ESQ.
                               (312) 853-7030

For Bank of America:           O'Melveny & Myers
                               BY:  DANIEL CANTOR, ESQ.
                               BY:  EVAN JONES, ESQ.
                               (212) 326-2000

                               Bank of America
                               BY:  ESTHER CHUNG
                               (646) 855-6705

For Wilmington Trust           Brown Rudnick LLP
Company:                       BY:  JARED ELLIAS, ESQ.
                               (212) 209-4811

                               Camden Asset Management
                               BY:  MARK HOLLIDAY
                               BY:  JOHN WAGNER
                               (503) 243-5000

For Angelo Gordon & Company:   Wilmer Cutler Pickering Hale &
                               Dorr
                               BY:  ANDREW N. GOLDMAN, ESQ.
                               (212) 230-8836

                               BY:  GAVIN BAIERA
                               (212) 692-0217

For EGI-TRB LLC:               Jenner & Block LLP
                               BY:  ANDREW VAIL, ESQ.
                               (312) 840-8688

For Citigroup:                 Paul Weiss Rifkind Wharton &
                               Garrison LLP
                               BY:  ANDREW LEVY, ESQ.
                               BY:  ANDREW GORDON, ESQ.
                               BY:  OKSANA LASHKO, ESQ.
                               BY:  ELIZABETH MCCOLM, ESQ.
                               (212) 373-3543
```

TELEPHONIC APPEARANCES:
(Continued)

For Anna Kalenchits:           BY:  ANNA KALENCHITS
                               (212) 723-1808

For JPMorgan Chase Bank:       BY:  KEVIN C. KELLEY
                               BY:  SAQUIB R. MIRZA
                               (212) 648-0427

For Morgan Stanley:            Weil Gotshal & Manges LLP
                               BY:  EVAN LEDERMAN, ESQ.
                               BY:  SHAI WAISMAN, ESQ.
                               BY:  JONATHAN POLKES, ESQ.
                               (212) 310-8948

For Barclays:                  Mayer Brown LLP
                               BY:  MICHAEL L. SIMES, ESQ.
                               BY:  AMIT K. TREHAN, ESQ.
                               BY:  JEAN-MARIE ATAMIAN, ESQ.
                               (212) 506-2607

For Kramer Levin:              BY:  DAVID E. BLABEY, JR., ESQ.
                               (212) 715-9100

For Goldman Sachs & Company:   BY:  FREDERICK MORRIS
                               (212) 902-2886

For SuttonBrook Capital        BY:  CAROL L. BALE
Management:                    (212) 588-6640

For David & Kempner:           DK Partners
                               BY:  EPHRAIM DIAMOND
                               (646) 282-5841

For Aurelius Capital           Akin Gump Strauss Hauer & Feld
Management:                    BY:  DAVID A. KAZLOW, ESQ.
                               (212) 872-1000

For Jefferies & Company:       BY:  JUSTIN BRASS
                               (203) 708-5847

For Perry Capital:             BY:  JAMES FREEMAN
                               (212) 583-4000

For Oaktree Capital            BY:  EDGAR LEE
Management:                    (213) 830-6415

TELEPHONIC APPEARANCES:
(Continued)

For Miller Tabak Roberts        BY:  ANDREW M. THAU
Securities:                     (212) 692-5178

For David B. Thompson:          Gruss & Company LLC
                                BY:  DAVID B. THOMPSON
                                (212) 688-7526

For Alvarez & Marsal Inc.:      BY:  BRIAN WHITTMAN
                                (312) 601-4227

For Jason Abbruzzeese:          Realm Partners
                                BY: JASON ABBRUZZEESE
                                (212) 612-1412

For Grey Wolf Capital:          BY:  JEFF ARMSTRONG
                                (914) 251-8264

For Cooperstown Capital         BY:  PETER COURI
Management, Inc.:               (203) 552-6900

For Arrowhawk Capital           BY:  ANDREW GU
Partners:                       (203) 413-7246

For Neil S. Losquadro:          Brigade Capital Management
                                BY:  NEIL S. LOSQUADRO, PRO SE
                                (212) 745-9758

For JPMorgan Chase Bank:        BY:  SHACHAR MINKOVE
                                (212) 834-7174

For Pryor Cashman LLP:          BY:  TINA MOSS, ESQ.
                                (212) 326-0421

For Macquarie Capital:          BY:  RUSHABH VORA
                                (212) 231-6311

For Tricadia Capital:           BY:  IMRAN AHMED
                                (212) 891-5013

For UBS Investment:             BY:  NEEL DOSHI
                                (203) 719-8723

For George Dougherty:           BY:  GEORGE DOUGHERTY
                                (312) 719-8723

For Silver Point Capital:       BY:  MATTHEW EHMER
                                (203)719-8723

For Bennett Management:         BY:  LUCY GALBRAITH
                                (203) 353-3101

TELEPHONIC APPEARANCES:
(Continued)

| | |
|---|---|
| For Arrowgrass Management: | BY:  ARIF GANGAT<br>(212) 584-1160 |
| For Special Committee to the<br>Board of Directors: | Jones Day<br>BY:  DAVID HALL, ESQ.<br>(312) 269-4207 |
| For Aurelius Capital<br>Management: | Akin Gump Strauss Hauer & Feld<br>BY:  LAURIE E. HUTCHINS, ESQ.<br>(212) 872-1000 |
| For Great Bank Trust: | Morgan Lewis & Bockius LLP<br>BY:  RACHEL MAUCERI, ESQ.<br>(215) 963-5000 |
| For Royal Bank of Scotland: | BY:  COURTNEY ROGERS<br>(203) 897-4815 |
| For Barclays: | Latham & Watkins<br>BY:  JASON SANJANA, ESQ.<br>(212) 906-1200 |
| For Matthew Zloto: | BY:  MATTHEW ZLOTO, PRO SE<br>(646) 445-6518 |
| For Cetus Capital: | BY:  GENTRY KLEIN<br>(203) 552-3542 |

1      WILMINGTON, DELAWARE, MONDAY, NOVEMBER 29, 2010, 10:30 A.M.

2               THE CLERK:  All rise.  Be seated, please.

3               THE COURT:  Good morning, everyone.

4               MR. LANTRY:  Good morning, Your Honor.  Kevin Lantry

5      of Sidley, on behalf of the debtors.  Your Honor, I have two

6      things to report and two proposals to make about how to best

7      handle the first five items on the agenda that pertain to the

8      disclosure aspect of our ceremonies today.

9               THE COURT:  I'm glad somebody has some idea of how

10     to handle those.

11              MR. LANTRY:  First, the good news, the different

12     plan proponents have worked zealously since we all filed our

13     amended documents Tuesday night to review things and to talk.

14     And I think we have spoken on a number of occasions with

15     virtually all of the different competing plan proponents and I

16     can now tell you that, by my tally, we're about 75 percent of

17     the issues resolved.  Last Tuesday we were at about the 50

18     percent mark.

19              More importantly we have, I think, gelded down to

20     about eight or ten issues and their conceptual points that

21     we're going to ask the Court to rule on today.  I think we're

22     far enough along that it won't be one of those page turning,

23     wordsmithing days.  It will be, Your Honor, here's the problem,

24     tell us if we need more words, more details in the disclosure

25     documents or if they're good to go.  So I think that's --

1          THE COURT:  I was kind of moving in the other

2    direction, you see, in the way of fewer words, but I will hear

3    what you have to say.

4          MR. LANTRY:  So that's point number one.  Point

5    number two is consistent with what we described on Tuesday, I

6    think it is clear that at least three of the four plan

7    proponents, and maybe all four of us, have settled on the best

8    course of action in dealing with the disclosure statement

9    objections.  And that's, if we have factual mistakes and

10   errors, we'll correct them amongst each others' documents, and

11   we have tried and I think we're, you know, within a hairs

12   breath of being there today.

13          However, if there are other issues about how it is

14   described, we're going to rely on our separate disclosure

15   documents and our separate responsive statements to set the

16   record straight from our side and let them in their other

17   responsive statements and specific disclosure documents

18   describe it in their side.  And again, let that go out, lay

19   down our swords today and have, as I say, only eight or ten

20   issues to dispute.  That seems to be the general consensus of

21   the best way to get through things.

22          And so if you feel similarly and ultimately find

23   that there is very few things to change, I think that we can be

24   done with these first five items before we have a lunch break.

25   On the other hand, if there are issues that need to be changed,

1  we may have a slightly longer ceremony.  Those are the two

2  observations.

3          Now proposals.  Your Honor, after we spend just a

4  moment about the general disclosure document and how the

5  documents kind of work, should just take a couple minutes, I

6  would propose to start with two of the individual objectors who

7  are not the plan proponents -- yes, we really do have parties

8  here who aren't plan proponents -- and address their issues,

9  because those two have raised almost identical issues against

10  all four plans.  And rather than having them get up four times,

11  I think it will be easier to dispose of those and then they can

12  leave if they so desire.

13          Once we get done with those, we would propose to

14  move items three and four -- items four and five on the agenda,

15  the Step One and the Bridge Lenders proposed disclosure

16  documents and responsive statements, move those first out of

17  order, because the parties have generally resolved their

18  objections and concerns and I think they will almost be a guide

19  to how we can lay down our swords and get done quickly.  And,

20  you know, we appreciate how they have, again in like fashion,

21  resolved as much as they can, both with regard to the other

22  competing plans and their own.

23          And then obviously the -- carry on then with items

24  two and three, the debtors' and the noteholders' -- the

25  committee and lender's plan and noteholders' plans or

1    disclosure documents, which may take a little bit longer, but

2    hopefully not much.  So unless you had a different attack plan,

3    that would be how we would propose.

4              THE COURT:  Well, I'll just give you an overall

5    comment and that is, if I -- if my arithmetic is correct, just

6    the texts of the joint disclosure statement and the four

7    specific disclosure statements exceeded 400 pages.  That's

8    without any exhibits, attachments, supplements, addenda,

9    whatever they're called respectively, and it seems to me that's

10   too long.  It's just too long.  Even if I assume, and I don't

11   know this, that many or most -- I don't know how the numbers

12   break down -- of those who will be entitled to vote on the

13   respective plans are sophisticated investors.

14              It also struck me that -- so one of the things I'm

15   considering frankly is a page limitation on the specific

16   disclosure statements.  But the other thought that occurred to

17   me is, there may be some sections of the specific disclosure

18   statements that could be added to the joint disclosure

19   statement, thereby reducing the specific disclosure statements

20   and that maybe runs counter to each of the proponents would

21   like respectively.  They'd like more room to make their case

22   but, you know, there are of course the responsive statements

23   which will go out in addition to that.

24              And I thought the best use of the specific

25   disclosure statements were just, you know, as plainly, as

1  concisely as possible to say here's what our plan says.  And if

2  that were the goal -- you may all tell me that that's the goal

3  now -- but if the parties were better focused on that, it seems

4  to me it would be easier for those who were viewing all four to

5  understand the differences.

6          Now, that's -- those are my initial impressions

7  after having reviewed on a selective basis that which was

8  submitted before the holiday.  I know it adds another dimension

9  to that, which the parties had intended to address today and

10 I'm content for the moment to just let it hang out and to

11 proceed in the fashion that you suggest.

12         MR. LANTRY:  Your Honor, could I just speak to your

13 issue in three ways?  One of them is we thought it would be

14 helpful, given the 400 pages or more, for you to see a mock

15 solicitation package.  And so, our counsel -- and we have a

16 whole pile -- we would imagining this would be better for the

17 solicitation ceremonies this afternoon, but we do have a pile

18 if that's relevant, to kind of show you what it would look like

19 to the real human beings that are getting the solicitation

20 package.  Did you have a chance to see that it was the white

21 binder, much like --

22         THE COURT:  Oh, I certainly have.

23         MR. LANTRY:  Yeah.  Again, what we had imagined, in

24 terms of simplicity, was what I think the parties have tried to

25 do in their responsive statements, which is summarize exactly

1    what our plans do, relative to each others, and then obviously

2    use the specific disclosure statements as a more addendum or a

3    more index and thoughtful treatise that would be able to

4    describe that.

5            And where all of this came from -- this is my second

6    point -- is we talked, we looked at the standards of 1125 and

7    they go to the sophistication of the voting creditors and they

8    go to the question of is there other information that would be

9    relevant to influence the voters, other than are contained in

10   the documents.  And we all felt that most everybody knows so

11   much about this, and are so well represented and are so

12   sophisticated in this case, that even though the glut of the

13   specific disclosure documents that are there and available for

14   people to read, was humungous, that the use of the responsive

15   statements was, in many ways, getting to where I hear you wish

16   that we would have gone.  At any rate, I would just put that

17   out there as something, again, to think about in terms of how

18   we got here.

19           And then the last one is simply a timing issue where

20   if we had to do it over again, maybe we should have had this

21   conversation in a little bit of what you articulated on

22   Tuesday, but to go back and do what you're suggesting, given

23   how long it's taken to get to where we are, would alter the end

24   game.  Just put that again out there in terms of knowing how

25   long it's taken for the lawyers to look over everybody's work

1  and to fight over every detail and any changes do have a lot of

2  impact in terms of timing.

3          THE COURT:  Well, and that brings me back to the

4  thought that I expressed at our last hearing, and that is I may

5  still do it myself if we can't get to a place that I'm

6  satisfied doesn't overwhelm the potential voter.

7          MR. LEMAY:  Good morning, Your Honor.  David LeMay

8  for the Official Committee of Unsecured Creditors.  I asked Mr.

9  Lantry if I might have the podium for one moment because it

10  occurs to me that in some ways probably we are the ones who are

11  supposed to, and should be, responding to this concern.

12          One of the aspects of this case, of course, is that

13  the letter -- oh sorry, the level of creditor sophistication

14  ranges from very sophisticated professional investors, some of

15  whom are in this room, who say that they wish to know and

16  deserve to know and need to know kind of every jot and tittle

17  of the plans and every aspect needs to be disclosed.  On the

18  other hand, of course, you've got Mr. Smith, the credit

19  manager, you know, at Acme Vending Company, who is confronted

20  with these documents and that Mr. Smith is at a whole level --

21  different level of sophistication.

22          What we thought, Your Honor -- and we did think very

23  hard about this and I'd like to urge this to Your Honor -- that

24  actually the structure that we've got, which evolved through

25  prior proceedings and prior negotiations, I think actually

1    maybe should address the Court's concern in the following way.

2    For the professional investor whose got an army of lawyers and

3    financial analysts and the like, you've got the specific

4    disclosure statements and they will comb through them, as they

5    should.

6            For Mr. Smith, the credit manager, you've got the

7    responsive statement and that -- in each case I don't think

8    anyone's responsive statement is more than 10, 12, 15 pages

9    long, in each case tells a pretty good headline story about why

10   the -- each proponent thinks it's a good one and the other ones

11   are bad ones.  I would think that for my hypothetical credit

12   manager, Mr. Smith, that responsive statement, which is a

13   little different from what you see in some cases, should be

14   able to get him there.  On the other hand, for the

15   sophisticated professional investor who wants and needs and

16   feels that it deserves a very, very, very extended disclosure,

17   there's that.

18           And so with that in mind, Your Honor, we -- the

19   committee's professionals and the committee, reached the

20   conclusion that this structure is appropriately protective of

21   different creditor interests in a case where people are over

22   the lot.  Thank you, Your Honor.

23           MR. LANTRY:  So to press on, Your Honor, the general

24   disclosure document, I don't believe there are any outstanding

25   objections.  There were two that were filed.  One has been

1  withdrawn by the County of San Bernardino.  The other one was

2  voiced by Kevin Millen, an individual who I believe was simply

3  raising a claims objection.  I don't know if he's on the phone?

4          THE COURT:  Let me ask, for the record, is Mr.

5  Millen either present or on the telephone?

6          MR. LANTRY:  Beyond that, Your Honor, there were two

7  other kind of more informal objections that were addressed.

8  The Department of Labor asked us to add a paragraph about the

9  Neil Litigation.  Wellington Trust asked for a couple of

10 sentences about the outcome of some of their complaints and

11 we've added those.  And then we've filled in a variety of

12 information to round out what was approved by you back in May,

13 I guess it was June 4, that rounded out what has occurred in

14 this case and developments in the case, just to sort of

15 describe again the basic rudiments of the debtors' business and

16 what's gone on.

17          I -- rather than asking you to approve that now,

18 there is the chance, as you articulated, where some things that

19 are in the specific disclosure documents might get imported

20 into that one, so I think as we try to address those, it's

21 better to just put that on the side, but just flowing down the

22 agenda, I believe there's no other objections to that and that

23 one would be good to go save and apart from the -- for the

24 changes today.

25          THE COURT:  All right.  Well, let me stop and then

1    ask for the record whether anyone wishes to be heard in

2    connection with the joint disclosure statement?

3            MR. SILVERSTEIN:  Very briefly, Your Honor.  Paul

4    Silverstein, Andrews Kurth, the ad hoc op co trade committee.

5    I'm not sure if it's the general or the specific, but we filed

6    a very brief self-explanatory objection with respect to the

7    treatment of the trade --

8            THE COURT:  It's the --

9            MR. SILVERSTEIN:  -- in these cases.  I assume Your

10   Honor has seen that.  And there seems to be a recurring theme

11   generally with respect to the amount of op co trade, as I think

12   we pointed out, there's no basis that we've seen for such a

13   conclusion and apropos Mr. LeMay's comment as to Mr. Smith, the

14   credit manager.  It's not appropriate for Mr. Smith to get a

15   document, in our judgment, that says the range is 85 to 150 for

16   the op co trade -- 85 million to 150 million for the op co

17   trade when there's no basis set forth in any of the documents.

18   And that was one of our objections.

19            I suppose I can stand again when I address the

20   specific disclosure statements, but that's the general --

21   that's my comment.  Thank you, Your Honor.

22            MR. LANTRY:  So with that, Your Honor, I would

23   propose to address two individual objections to all four plans,

24   as described.  One is asserted by ACE Insurance Company and the

25   other is asserted by EGI, and I think we can address those

1   fairly quickly.

2            THE COURT:  Okay.

3            MR. LANTRY:  Again, each of these parties were at

4   our meet and confer last Friday and each of them posed their

5   issue and all four of the plan proponents suggested that their

6   issues were confirmation issues or for whatever additional

7   reasons we felt that what they were asking for to put in the

8   disclosure documents weren't warranted.  So I think that's kind

9   of the lineup.

10           Essentially, turning to ACE first, the debtors, in

11  our plan that was filed back in April, observed that we had not

12  yet decided how we were going to treat various of the insurance

13  policies, if they were executory contracts they would be

14  assumed or if they weren't, how they would be treated.  That's

15  again how we treated the insurance policies under the current

16  plan, and the other three plan proponents generally tracked

17  what we were doing.  And what ACE is asking for is, you know,

18  to decide now if we are assuming or not assuming or to decide

19  that it's claim is secured or not -- or otherwise.  And we feel

20  that's premature and at this point we should continue to watch

21  and see what happens, given the nature of insurance policies it

22  is sometimes better to watch and get close to confirmation

23  because often some of the obligations that might make them

24  executory cease to be by that time and we just need to be

25  mobile in terms of how we deal with it.

1        So that's why we felt that what the insurance

2  companies were asking, that is ACE in this case, wasn't

3  appropriate at this time, but should be a confirmation issue.

4  I would point out that the language we have in there was

5  exactly what they asked for.  We negotiated with them back in

6  May and they have decided that they want to press an additional

7  objection now because these -- they have another opportunity.

8        MR. RILEY:  Good morning, Your Honor.  Richard Riley

9  from Duane Morris on behalf of the ACE Companies.  We will hold

10  -- we'll hold our objections until confirmation.  We'll raise

11  an objection to confirmation and deal with it then.

12        THE COURT:  Thank you.

13        MR. LANTRY:  Turning then to EGI, Your Honor at the

14  meet and confer, EGI proposed that we each add a paragraph or

15  so describing how the Examiner ruled with regard to causes of

16  action against EGI and Sam Zell (phonetic).  And indeed what

17  they were looking for is the general conclusion that the

18  Examiner had reached, which were these causes of actions are

19  unlikely to succeed.

20        We all told EGI that at the time we had some

21  reservations about that and it really came from problems that

22  we had amongst ourselves over the issue of what we'd said or

23  didn't say about the Examiner's report.  Some parties said you

24  can't describe at all the Examiner's report because you just

25  can't.  Others said, we want to force you to say this or that

1   about the Examiner's report.  Then we got in the what you've

2   said about the Examiner's report is a little inaccurate, you

3   need to add a little bit more over here and it just went back

4   and forth and finally we threw up our hands and said, we will

5   attach the Examiner's report as an exhibit to the general

6   disclosure document and people can say what they believe the

7   Examiner said if they want to, and so long as it isn't

8   fundamentally, factually erroneous we'll let you say that, and

9   that's kind of how we made peace with each other.

10          And so to have EGI coming in now asking each of us

11  to put their position in about the Examiner's position was

12  something that we felt was opening the floodgates that would

13  then allow each of the other four competing plan proponents to

14  say see, you've got to add our position over here about what

15  the Examiner said about our favorite issue.  So that's where we

16  tried to stop the floodgates.  I will acknowledge that EGI

17  isn't a plan proponent, so it doesn't have quite the benefit

18  that some of the rest of us have in terms of putting our side

19  of the story in.

20          That said, the heart of the matter is what EGI is

21  asking is to say the same thing to all of us.  All of our plans

22  -- and they acknowledge this -- preserve the causes of action

23  against EGI and Sam Zell.  And what they're wanting is for each

24  of us to say, you know what, our preservation of that makes no

25  sense because the Examiner concluded that there's no cause of

1    action here.  And for the voting constituency, since each of

2    the four plans contemplate the same preservation of rights, I'm

3    not sure that in the end what we would agree to would be

4    anything more than to remind all the voting constituencies that

5    all of us are preserving this cause of action, notwithstanding

6    what the Examiner said.  At any rate, that's the kind of

7    bidding asked here and beyond that, I'd turn it over to EGI.

8            THE COURT:  All right.

9            MR. BRADFORD:  Thank you, Your Honor.  David

10   Bradford for Mr. Zell and for EGI.  Your Honor, there is no

11   floodgate here because there are only two parties who are

12   getting sued under these plans who the Examiner, in 1,200 pages

13   and for $12 million, determined there was no credible evidence

14   to pursue a claim against and that's EGI-TRB and Mr. Zell.

15           The plan disclosure statements as written not only

16   fail to disclose this to allow the creditors to determine the

17   value of these litigation claims, which are treated very

18   differently from plan to plan, but they mislead the creditors

19   in terms of what the Examiner actually determined.  And that's

20   unfair not only to the creditors who would have to wade through

21   a 1,200 page Examiner report to find out that one of the lead

22   claims, which is advertised as a grounds of recovery in this

23   disclosure statement was found to be unlikely to succeed.  It's

24   always -- it's also very unfair reputationally to malign a

25   person and organization, in case the chairman of the Tribune,

1    suggesting that there are claims against them when the

2    Examiner, after exhaustively investigating, determined

3    otherwise.

4            And if I could read from the Aurelius plan

5    supplemental response statement, they state the following,

6    which we believe is grossly misleading, and I'm quoting from

7    Page 2 of the supplemental -- or I should say responsive

8    disclosure statement.  It says,

9            "The Examiner's report put an end to 20 months of

10            cover up.  It exposed flagrant wrongdoing within

11            Tribune's executive ranks and identified billions of

12            dollars of LBO-related actions, many of them against

13            Tribune insiders, such as Sam Zell."

14            Well, that's just a flat out misstatement, Your

15    Honor, because the Examiner determined that there was no

16    credible evidence of a claim against Mr. Zell.  And each of the

17    other disclosure statements are also misleading, although not

18    as egregiously so.

19            The Step One Creditors identify in their disclosure

20    statement at Page 23, "These are preserved causes of action

21    potentially worth billions of dollars."  And then they say,

22    "Claims against EGI-TRB and Mr. Zell" as if to imply that these

23    claims are worth billions of dollars when the Examiner has

24    found that they are unlikely to succeed.  And specifically that

25    disclosure statement identifies the claims it's preserving as

1    those that were found to be an equipoise or better with -- by

2    the Examiner with respect to Step Two.  Well, that's simply not

3    true with respect to the claims against EGI and Mr. Zell.

4            And similarly, the debtors' statement also indicates

5    that it preserves all of the claims that the Examiner found to

6    have equipoise or better status.  Simply not true again.

7            We've asked for one simple sentence.  It could be

8    added to the joint disclosure statement.  It doesn't have to be

9    in each of these and that one simple sentence, which is in our

10   supplemental submittal, is simply that the Examiner has

11   determined that the alleged claims against EGI-TRB and Sam

12   Zell, which are referenced in the disclosure statement, are

13   unlikely to succeed.  That's a truthful statement, it's

14   informative and it would help the creditors evaluate how

15   valuable these litigation trusts, which are treated very

16   differently, are going to be or not going to be.  And it also

17   necessary to be fair to the reputation of an organization and

18   an individual who had been exonerated and vindicated by the

19   Examiner.  Thank you, Your Honor.

20           THE COURT:  Thank you.

21           MR. LEMAY:  May I be heard on this one, Your Honor?

22           THE COURT:  You may.

23           MR. LEMAY:  Your Honor, David LeMay again from

24   Chadbourne and Parke for the creditors committee.  Just to put

25   this in context, why are we here today?  We are here today on a

1   disclosure statement approval hearing.  And as you've heard me

2   in the past, I will mention the statute, you know it Your

3   Honor, Section 1125(a)(1).  What the search here this morning

4   is for is to see if the documents contain information of a kind

5   and in sufficient detail -- sorry -- that would enable such a

6   hypothetical investor of the relevant class to make an informed

7   judgment about the plan.

8          So the question is what do people need to know to

9   vote?  I guess that counsel's argument is premised on the idea

10  that everybody needs to know the outcome of this issue and the

11  Examiner's conclusion of this issue in order to cast an

12  informed ballot.  Your Honor, I'd submit that that's simply not

13  true.  People don't need to know how the litigation against EGI

14  and Mr. Zell is going to come out or is likely to come out in

15  order to cast an informed ballot.

16         That's one very minor aspect of an overall plan of

17  reorganization that preserves and continues lots of causes of

18  action, settles others, at least in the case of our plan.  With

19  respect to the others, one way or the other, these claims are

20  being preserved and they are being pursued in all four plans.

21  So I'm not sure how this is relevant to voting and therefore

22  I'm not sure how this is relevant to the matter that's before

23  the Court today.

24         THE COURT:  How would you describe generally how the

25  Examiner's report is addressed in the joint disclosure

1  statement compared to the four others?

2            MR. LEMAY:  Well, Your Honor, I think Mr. Lantry

3  said it right.  You know, the Examiner's statement is like the

4  Bible; there's something in there for everybody.  Everyone's

5  got their favorite piece of it and certainly if you asked us

6  what parts of it we loved most, we'd be at you for awhile.  And

7  the same could be true of everyone.  Aurelius certainly has

8  some parts of the Examiner's statement that they think are

9  great.  The Step One Credit Lenders have some specific things

10  that they think are great for them and on and on it goes.

11  There really is something for everyone.

12            So I think Mr. Lantry said it right.  The Examiner's

13  report is there, it's not a secret, it's not expurgated, it's

14  not in any way unavailable.  And so I think both the general

15  and the specific disclosure statements adopt the approach of

16  not attempting in any great detail to sling a lot of Examiner's

17  report.  And if we do get into Examiner's report slinging, Your

18  Honor, I'm afraid we will be here for quite a long time.  Is

19  that -- am I being responsive?  I hope that was responsive

20  answer.

21            THE COURT:  I think as best as you can be under the

22  circumstances.

23            MR. LEMAY:  Thank you, Your Honor.

24            MR. GOLDEN:  Good morning, Your Honor. Daniel

25  Golden, counsel for Aurelius Capital Management.  The topic of

1   the Examiner's report and how it's treated in the general

2   disclosure statement, the four specific disclosure statements

3   and the various responsive statements is going to prove to be

4   nettlesome, I believe, for this Court, but I remind the Court

5   and the people in attendance today that on more than one

6   occasion Your Honor indicated we're going to attach the entire

7   Examiner's report.  Nobody is disputing that, it is provided as

8   an attachment to the general disclosure statement.

9           And I'll just say upfront, Aurelius is as guilty as

10  the other plan proponents in trying to jockey with respect to

11  picking and choosing that part -- or those parts of the

12  Examiner's report that they like, as Mr. LeMay indicated.  I

13  think the way to solve this problem once and for all, not only

14  with respect to the specific disclosure statement, but also

15  with respect to the responsive statements, is that each party

16  simply addresses their respective readers to the attachment of

17  the Examiner's report and don't try to editorialize what the

18  Examiner's report says, what it doesn't say, the implications

19  of what they think it says or some other notions with regard to

20  the Examiner's report, because you'll hear today, Your Honor,

21  unless that that is a determined ruling by this Court, that we

22  will be fighting over primarily what people say in their

23  responsive statements regarding the Examiner's report.

24          So the suggestion we would make, and it would

25  require Aurelius, as well as every other plan proponent to make

1  certain principally deletions to their specific disclosure

2  statements and their responsive statements, is to have a ruling

3  from this Court that there will be no editorializing with

4  respect to what the Examiner said.

5          I think this gets to another point, which you'll

6  hear a lot more about later on.  The Examiner's report is

7  exactly what it is, but the Examiner was not the Court.  It's

8  pronouncements will not be binding on this Court.  And I don't

9  mean to get into that whole discussion.  That will be -- happen

10  today.  That is -- happens, though, to be our view.

11          In light of that -- in light of the fact that it's

12  going to be in toto attached as an exhibit to the general

13  disclosure statement, we would suggest the easiest way to deal

14  with this problem is to have all of the plan proponents delete

15  all of their references in their specific disclosure statements

16  and responsive statements as to what they think the Examiner

17  report provides.  Thank you.

18          MR. FLASCHEN:  Your Honor, Evan Flaschen, Bracewell

19  and Giuliani for the Step One Lenders.  Two different issues

20  have been raised.  With respect to the Zell Group, it's one

21  sentence, who cares?  We're happy to add the Zell Group asserts

22  that the Examiner's report says it's unlikely to succeed

23  against him.  They're entitled to assert that; we're happy to

24  put that in.

25          The more fundamental issue, to refer to the

1  Examiner's report at all, for the Step One Lenders, our entire

2  plan is premised on the Examiner's report.  The Examiner's

3  report, to whatever percentage one wishes to ascribe, says that

4  it is more likely that avoidance actions will succeed against

5  Step Two and then against Step One.  That is our plan.

6  Avoidance actions should be pursued against Step Two, not Step

7  One, because the Examiner's report says that is the more likely

8  result that will happen if both are litigated.

9          So we understand the view just refer to the

10 attachment.  It eviscerates the entire purpose of our plan.  If

11 Aurelius has a problem with how our specific disclosure

12 statement characterizes the Examiner's report, they are free in

13 their responsive statement to state whatever they want as to

14 why they think we are incorrect.  Thank you, Your Honor.

15          MR. LEMAY:  May I have another brief go, Your Honor?

16          THE COURT:  You may.

17          MR. LEMAY:  Your Honor, David LeMay again.  Much as

18 it would be appealing, and much as I would like to embrace Mr.

19 Golden's suggestion, just because you know whatever kind of

20 gets us out of here fastest is good, I do think there's a

21 problem with that.  You know, Aurelius, in its responsive

22 statement, says that the committee has never given a

23 justification for why it chose to settle at the level that it

24 chose to settle those claims that it was settling and it says

25 no justification has been given.

1          Well, the justification has been given.  It was

2    given in our responsive statement and part of that

3    justification is that the Examiner laid out six scenarios and

4    in five of those six scenarios unsecured creditors do worse

5    than they do under our settlement.  Mr. Golden and his client

6    don't like that because it is at odds with their desire to

7    pursue the litigation strategy that they wish to pursue.  Fair

8    enough, but there's something -- there's an element of putting

9    us in a box here, whereas at the -- on the one hand it is said

10   to us, you've never explained why you made this rotten

11   settlement, but then if we have to extract from our responsive

12   statement, that really very substance of why we made that

13   settlement, namely that -- well, a piece of the substance,

14   mainly that the Examiner looked at these issues hard and in

15   most of the cases that he looked at the outcome was not as good

16   as the settlement that we're proposing.

17          That leaves us in a terrible box, so I -- Your

18   Honor, I would ask you to not -- please not to take Mr. Golden

19   up on his suggestion, as appealing as it facially sounds.  I do

20   think it is correct that each of the plan proponents has been

21   measured in the degree to which they, using my colloquialism

22   from before, the degree to which they sling around the

23   Examiner's report.  And through some negotiation, through some

24   talking, I think we've gotten ourselves to a point where

25   there's a very discrete and dealable with list of issues that

1  Your Honor could confront today, but the kind of blanket

2  prohibition that was just described I think would be

3  prejudicial to my clients.  Thank you, Your Honor.

4           THE COURT:  Thank you.

5           MR. JOHNSTON:  Good morning, Your Honor.  Jim

6  Johnston of Hennigan Bennett and Dorman in this capacity on

7  behalf of Oaktree Capital Management and Angelo Gordon and

8  Company, who are co-proponents of the debtor/committee/lender

9  plan.  I rise just to answer the specific question that Your

10 Honor posed with respect to the general disclosure statement

11 and what it says about the Examiner report.

12          On Pages 64 and 65 of the blackline that was filed

13 on Tuesday is the answer.  The blackline I'm looking at is 64

14 and 65 and in a nutshell it says nothing about the conclusions.

15 The summary is the Examiner's conclusions are summarized on

16 Page 5 through 28 of Volume I of his report, a copy of the

17 Examiner's report is included on the CD-ROM accompanying the

18 joint disclosure statement as Exhibit C and readers are

19 encouraged to read the entirety of the report.

20          So it directs readers to, you know, kind of the

21 headline conclusions of the Examiner, as contained in his

22 introduction and then to the entire report, but there is no

23 editorial comment in the general disclosure statement itself.

24          THE COURT:  Thank you.

25          MR. JOHNSTON:  Thank you.

1          MR. LANTRY:  Your Honor, the good news is this

2    reference to the Examiner report is one of those big items that

3    we needed you to decide on today.  So this isn't just the

4    smaller sentence that EGI wants, it's how we deal with this at

5    all.  So I think with that, we would hope that you could rule

6    on this issue.

7          THE COURT:  Me, too.

8      (Laughter)

9          THE COURT:  I'm not -- let's get through everything.

10          MR. LANTRY:  Your Honor, with that, I think we are

11    done with these two individual objectors that apply to all

12    four.  And following our proposed course of action, would move

13    to Agenda Item Number 4, which is the Step One Lenders

14    disclosure documents and responsive statements.  And just to

15    kick it off, Your Honor, I believe the debtors' committee and

16    senior lenders do not have any objections at this point because

17    they have been resolved.

18          MR. FLASCHEN:  Your Honor, Evan Flaschen again for

19    the Step One Lenders.  By resolved, that includes some comments

20    we have made over the last couple days which have not yet been

21    filed with the Court.  And counsel rightly pointed out a couple

22    of inconsistencies last night or this morning which we will

23    also correct.

24          I think our philosophy was pretty clear here.  We

25    started with the debtors' documents, both plan and disclosure

1  statement, so that there would be little room for dispute.  We

2  only wanted to highlight the two fundamental differences in our

3  approach versus theirs.  One is the disparate treatment of Step

4  One and Step Two.  The second is an improved treatment for the

5  noteholders and for the general unsecured creditors, both Hold

6  Co and Op Co if they accept our plan.

7             Otherwise, we intended to mirror what they had done.

8  We are glad we are in agreement with them, at least on the

9  disclosure statement, if not necessarily the merits of the

10  plan.  Thank you, Your Honor.

11             THE COURT:  Okay.  Well -- go ahead.

12             MR. GOLDEN:  Thank you, Your Honor.  Daniel Golden,

13  Akin Gump, counsel for Aurelius Capital Management.  Your

14  Honor, we have -- unfortunately, this is no one's fault, this

15  is just the nature of the beast, the one good thing is

16  hopefully the Court had its BlackBerry turned off last evening

17  and you didn't see the literally dozens of emails going back

18  and forth with all parties represented in court filing and

19  transmitting additional versions, amended versions of the like.

20             THE COURT:  I did not.  I did not see any.

21             MR. GOLDEN:  You should be very happy for that

22  thought.

23             THE COURT:  Well, it was Thanksgiving weekend.

24             MR. GOLDEN:  Not for most of us, Your Honor.

25             In our -- in Aurelius' objection -- disclosure

1    statement objections what we had said with respect to the Step

2    One disclosure statement is that we thought that it suffered

3    many of the same infirmities that we had pointed out with

4    respect to the debtors', creditor's committee, lenders specific

5    disclosure statement.  And rather than repeating them, we made

6    that general observation.

7          Mr. Flaschen has indicated that -- I believe that

8    their document is still in the process of being amended.  So if

9    Your Honor is going to ultimately rule at the end of the

10   hearing on what objections are going to be sustained and what

11   ones aren't, I would just ask that to the extent that an

12   objection was sustained with respect to the debtor's disclosure

13   statement and they have a like provision and they have a like

14   provision in their disclosure statement, that they follow along

15   with that and I think that should obviate a lot of our issues.

16         We though have one specific issue with the

17   disclosure statement that the Step One Lenders filed -- or at

18   least transmitted last evening.  And I don't know, Your Honor,

19   whether you have that -- Evan, do you know whether this is --

20   the Court has it?

21         THE COURT:  Let's put it this way --

22         MR. FLASCHEN:  It was just circulated among the plan

23   proponents.

24         THE COURT:  Yeah.  I've seen nothing -- regardless

25   of what may rest in chambers somewhere that came in this

1   morning, if anything, my universe of information is limited to

2   that which was delivered to chambers before the holiday.

3          MR. GOLDEN:  Do you have a copy that -- may I

4   approach, Your Honor?

5          THE COURT:  You may.  Thank you.

6          MR. GOLDEN:  Your Honor, with respect to Page 30 of

7   the Step One Lender's specific disclosure statement, in the

8   first full paragraph that starts, "Holders that received", the

9   second sentence of that paragraph states,

10             "For instance, even if holders of senior noteholder

11             claims and holders of other parent claims reject the

12             Step One Lender plan and the Step Two senior loan

13             claims are avoided or disallowed, such holders would

14             only receive a recovery of 7.06 percent."

15         We think that is factually inaccurate.  I understand

16  that that may be the view of what -- the view of the Step One

17  Lenders as to what would happen if Step Two recovery is

18  avoided.  It's not our view and maybe one way to simply solve

19  this problem, as Mr. Flaschen indicated he was prepared to do

20  with respect to the EGI objection, if they could just annotate

21  that sentence to say it is the view of Step One Lenders, rather

22  than stating it as a fact.

23         MR. FLASCHEN:  Your Honor, it's just a disclosure

24  statement.  I'm happy to add it is a view.  I would remind

25  counsel, it is a reference to what happens under our plan, not

1  in the world in general.  We think it is accurate in our plan.

2  We will add "in our view" to the sentence.  Thank you.

3         THE COURT:  All right.  All right.  Other comments

4  with respect to Step One Lenders' plan?

5         MR. GERSON:  Winerd Gerson (phonetic) from the US

6  Department of Labor.  Our objection to the Step One Lender

7  disclosure statement are identical to our objections to the

8  debtor's disclosure statement.  I've been told by the Step One

9  Lenders' attorneys that they've followed what the debtors'

10  attorneys have done in revising the disclosure statement and

11  plan in response to our objections.  So I don't know if you --

12  the Court would like to hear our objections to the Step One

13  Lenders' disclosure statement now or wait until the debtors'

14  disclosure statement is -- are addressed.

15         THE COURT:  Well, okay.  Has it been fixed or not

16  fixed?

17         MR. GERSON:  Some things have been fixed, some

18  things haven't been fixed.

19         THE COURT:  Okay.  Then yes, I'd like to hear from

20  you now.

21         MR. GERSON:  Thank you, Your Honor.  First, with

22  respect to the third-party releases that are in both plans, a

23  change has been made which we had hoped would clarify the

24  breadth of a carve out for ERISA claims.  Instead, it's made

25  clear that there is an important undefined area that needs some

1  explanation, whether the third-party release is permissible,

2  that's a confirmation objection, but the change that was made

3  in the carve out for ERISA claims made it clear that the carve

4  out was limited to claims against -- regarding ERISA

5  fiduciaries -- claims against ERISA fiduciaries.  ERISA

6  provides and allows for claims to be made and liability of

7  persons who assisted, who have knowingly participated in the

8  breach of fiduciary duties under ERISA.  It also allows for

9  claims against people who are not fiduciaries, but parties in

10  interest under ERISA.

11        Granting a third-party release is extraordinary

12  relief under the bankruptcy code.  There are creditors who are

13  voting on the plan who also are participants under the ERISA

14  plan.  If somehow they're releasing claims under ERISA, or may

15  be, they should know about it.  So we think there should be

16  some additional disclosure as to who the debtors and the Step

17  One Lenders are seeking to release under their plans.  Right

18  now someone voting on the plans wouldn't know because the

19  definition -- the people who comprise a group of non-

20  fiduciaries are just too broad.

21        THE COURT:  Well, then how -- what would be -- how

22  would you articulate such a disclosure, put it that way?

23        MR. GERSON:  Okay.  Well, in order for a third-party

24  release to be appropriate, it has to be essential to the plan,

25  there must be certain entities that the Step One Lenders and

1   the debtors feel a release is critical for in order for a plan

2   to be confirmed.  They should identify who those people are --

3   those entities are.

4           THE COURT:  By name or by category?

5           MR. GERSON:  I think by name so it's understandable,

6   because if you start getting into categories it -- they're so

7   broad, one still doesn't know.  I suspect the list might not be

8   so broad, so that's impossible.

9           THE COURT:  All right.  Thank you.  Anything

10  further?

11          MR. GERSON:  Yes, with respect to the bar order

12  being proposed in both of those plans, again there's been

13  clarifying language, but the provision is complicated enough so

14  it's still not clear as to what claims might be reduced as a

15  result of the bar order being imposed.  My general

16  understanding of a bar order is you're a plaintiff, there are a

17  group of defendants, you've reached a settlement with the

18  defendant -- one of the defendants.  That defendant wants to

19  know they have total peace that another of the defendants is

20  not going to go after them for contribution claim, so the

21  plaintiff agrees that if there is an allowable contribution

22  claim, they will reduce their judgment with respect to that

23  Defendant, which they're settling with, so they will be

24  protected with respect to a contribution claim.  I'm sorry,

25  with the other -- reduce the judgment against the non-settling

1    defendant so there will be no basis for asserting a

2    contribution claim against a settling defendant.

3            But what we're speaking about is a claim of the

4    plaintiff -- reducing a claim of the plaintiff.  With respect

5    to the debtors' plan and the Step One Lenders' plan, that could

6    be a claim being asserted by or on behalf the debtors' estates,

7    the creditors' litigation trust or the litigation trust.  Those

8    are the entities that are, you know, making claims for the

9    benefit of the plan -- under those plans, but the -- their bar

10   order also includes claims that could be asserted by any person

11   for preserved cause of action.

12           Now, I don't know whether they can rightfully do

13   that and include in their bar order claims being asserted other

14   than by the debtors or the trust, is an issue for confirmation,

15   but what kind of claims -- what claims they're speaking about

16   is something that they should disclose because again that could

17   be a problem for a voter.  For example, say you're a

18   participant in the ESOP and Judge Palmeyer (phonetic) has

19   issued an opinion in which he found that Great Bank breached

20   their fiduciary duty by purchasing stock that was not

21   qualifying stock under the Internal Revenue Code, meaning it

22   was -- resulting in the fact that it's a prohibited

23   transaction.

24           Well, is this bar order somehow going to be used to

25   reduce any claims, any damages that are awarded to the

1  plaintiffs in the Neill litigation as a result of Great Bank's

2  breach of its fiduciary duty?  Can't tell.

3        Next issue, the definition of securities litigation

4  claims in both of those plans.  Each of those plans in Classes

5  K subordinates ERISA claims and of the bases given is 510(b) --

6  Section 510(b), again whether that's appropriate is for

7  confirmation, but there's also a subparagraph in the definition

8  of securities litigation claims which is not limited to claims

9  that would be subject to subordination under 510(b).  It

10 includes claims asserted by the ESOP or by a participant based

11 upon his status as a participant in an ESOP.

12        Well, I think if you're subordinating under -- as a

13 -- under a proposed Chapter 11 plan, then you have an

14 obligation to disclose what the basis is for the subordination.

15 The fact that you're doing it under plan rather than pursuant

16 to an adversary proceeding, which is the other way to

17 subordinate claims, doesn't relieve you of that obligation for

18 disclosure.  And the plan proponents need to describe the basis

19 for their subordination of claims if it's other than 510(b) so

20 people will --

21        Finally, Section 6.8 of the debtors' plan, and I

22 think it's the same number in the Step One plan, and this

23 actually objection is relevant to each -- to all of the plans

24 because it's virtually the same provision in all of the plans.

25 It states that as part of the plan process, the proponents may

1    seek the Court's approval for the forgiveness of the ESOP note,

2    that note was money that was loaned by the Tribune to the ESOP

3    for the purpose of purchasing the Tribune stock, but that

4    Section 6.8 goes far beyond just asking the Court for a ruling

5    on whether the debtor can forgive that note.

6              For example, it asks for the -- the proponents may

7    ask the Court to describe the legal effect of the forgiveness

8    of the note.  And that's very strange.  Usually when you ask

9    for relief from the Court, you don't ask that Court to also

10   opine on the legal effect of their ruling.  We -- frankly, we

11   don't understand it.  It could be a back way of limiting the

12   Department's ERISA claims against the debtors, it could be some

13   sort of backdoor way of asking the Court to issue some kind of

14   ruling that could affect the judgment in the Neill litigation.

15   At the very least, given the unusual character of this request,

16   the proponents should describe the purpose of it.

17             And finally, in connection with that, that provision

18   says they may seek such relief in connection with the plan

19   process.  Well, is this something that they -- are these

20   provisions they're going to insert into the proposed

21   confirmation order?  Is that how it's going to be brought

22   before the Court?  We have a right to know.

23             Those are all our objections with respect to the LBO

24   -- the Step One Lender disclosure statement.

25             THE COURT:  Thank you.

1      MR. GERSON:  Thank you.

2      MR. LANTRY:  Your Honor, these are the identical

3  issues with regard to the debtors' committee and lenders' plan.

4  We have had two separate, rather lengthy, sessions with Mr.

5  Gerson over the past week, so it feels like it would be easier

6  for us, given that dialogue, address this rather than leaving

7  it to the Step One, so I think it will apply to everything.

8      Let me first, you know, say that we have cut in

9  half, at least, the Department of Labor's objections outside of

10  this, but of the four that were articulated by Mr. Gerson, as

11  we talked with him, each one of them when we got down to it, he

12  wanted to change the language in the plan, not the disclosure

13  document.  That's what he really cared about.  These were

14  confirmation objections.

15      He styled them as I could get a little information

16  here, but what he really wanted, when we really got down to it,

17  was plan changes.  Let me now take each one of them

18  individually.

19      Regarding the third-party release, what Mr. Gerson

20  is looking for is us to identify the names of parties who are

21  non-fiduciaries who might be somehow released from potential

22  causes of action under ERISA.  And we've asked him to help us

23  understand that universe.  What's going on and what makes it

24  hard for us to identify those, or for him, is the Neill

25  litigation is progressing.  That may determine the Department

1  of Labor's claims, it may not.  It's doing its own

2  investigation.  Given the nature of its proofs of claim, which

3  were very expansive and hard to intuit it, we have a hard time

4  knowing what the Department of Labor's claims might be,

5  particularly against non-fiduciaries.

6          And so the language is inherently hard to identify

7  in terms of who he might be looking for that would be non-

8  fiduciaries that might be released.  And so we sort of threw up

9  our arms and said, I don't know how this is something that is

10 resolved in a disclosure document.  I think what you want to

11 say is the entire universe of anyone who could ever be liable

12 under ERISA shouldn't be released.

13         And our answer to him is, it's the fiduciaries that

14 we think are at the heart of this and if there are others we'll

15 see, but it really goes to the language and scope of the

16 releases.  And if we got it wrong, that will be a confirmation

17 issue.  Typically when releases are narrowed at confirmation,

18 the creditors don't complain, so I think this can be preserved

19 for confirmation.

20         THE COURT:  Well, in a sense it seems as if you're

21 flipping the responsibility for identifying these parties.  And

22 I - tell me -- let's do this.  Direct me to the specific

23 language, if what's in the papers is now current enough.

24         MR. LANTRY:  Your Honor, the release section has to

25 do with the voluntary release that is provided for under the

1  plan that has people the -- gives people the ability to opt in

2  or out.  The plan language, again I think it's safer to stay

3  with the plan language, because that's where the heart of the

4  matter is, is 11.2.2.

5          THE COURT:  All right.  Bear with me for a minute.

6          MR. LANTRY:  And I'm going to use the redline

7  because we did change language that almost solved the

8  Department of Labor's problems.

9          THE COURT:  Bear with me.

10         MR. LANTRY:  It's about 10 lines from the end of

11  that section.

12         THE COURT:  For purposes of my weekend exercise, I

13  pulled certain --

14         MR. LANTRY:  And again, Your Honor, if it is easier

15  we can always hand one up to you.

16         THE COURT:  No, I have it now.  Give me a page

17  number

18         MR. LANTRY:  Page 76 of the redline that was filed

19  with you Tuesday night.

20         THE COURT:  Okay.

21         MR. LANTRY:  This is the part that has the language,

22  11.2.2 begins on 75.

23         THE COURT:  Okay.  I'm there.

24         MR. LANTRY:  So what we had originally had was a

25  clarification that the release did not release anything

1   involving ERISA claims.  We added, at Mr. Gerson's request, the

2   underlying provision that made it clear that no participant,

3   beneficiary, fiduciary would also get a release against any

4   covered plan fiduciaries -- ERISA covered plan fiduciaries.

5           THE COURT:  Okay.  I see that.

6           MR. LANTRY:  Turning then to the bar order, again I

7   think what the Department of Labor is looking for is the bar

8   order is not an easy provision to understand.  And in response

9   to their request for clarification about how the bar order

10  works, we added quite a bit of explanation.  And I think it's

11  best to turn to Page 23 and 24 of our specific disclosure

12  document in the redline to, again, show what we provided to

13  address the Department of Labor's concerns, as well as others,

14  to describe the scope and nature of the bar order.

15          THE COURT:  All right.  Bear with me for a moment.

16  And page again?

17          MR. LANTRY:  Page 23 and 24 of the redline.

18          THE COURT:  I have it.

19          MR. LANTRY:  I think the most pertinent part is the

20  last paragraph.  And in particular, the last four or five lines

21  identify the universe of people or claims that are not going to

22  be dealt with by the bar order, that was designed to give the

23  Department of Labor some comfort and clarification.  Just

24  picking up,

25              "Or any claims for contribution or non-contractual

1              indemnity, that are asserted with respect to any

2              claims that have not been brought by or on behalf of

3              the debtors' estates, the litigation trust, the

4              creditors' trust or any person asserting a preserved

5              cause of action."

6         We think those last four categories sum up the

7    universe of the way the bar order would work and should satisfy

8    the Department of Labor's concerns.  What the Department of

9    Labor is asking for is a special comfort provision that would

10   say and indeed, whatever this means, it doesn't involve any

11   ERISA claim.  That's what they're asking for.  And if we were

12   to give every party the -- and oh, the bar order doesn't apply

13   to you and doesn't apply to you, it gets ungainly.

14        We think it's very well crafted.  We think that this

15   additional explanation should give him the comfort and he's

16   just wanting that additional sentence that would say oh, and by

17   the way, just for the -- to make me sleep better and the

18   Department of Labor, it doesn't involve an ERISA claim, but it

19   can't by virtue of, you know, the underlying issue that he's

20   focused on, which is are any non-debtors -- non-debtor third-

21   parties, such as ERISA fiduciaries ultimately impacted here,

22   and the answer is no, and we try to make that quite clear.

23        Your Honor, to his third point, we defined

24   securities -- the securities litigation claims as a class to

25   involve a variety of different claims and one of them is

1  specifically ERISA type claims that might be subordinated under

2  510(b).  And there is another provision that also says, and it

3  could be other types of ESOP claims, but doesn't necessarily

4  say that that is 510(b).  And this was crafted directly in

5  response to the broad proof of claim that was filed by the

6  Department of Labor.  We want to make sure that the debtors are

7  discharged from their pre-petition obligations under the ESOP.

8  That is what this is all designed to do.

9        And we want to make sure that this class of claims

10 is identified fully and whether the ultimate class here comes

11 under a 510(b) subordination or whether it comes from other

12 source, that's why we drafted the additional provision.  The

13 whole point is this class of claims, we believe, is

14 subordinated under 510(b), but just in case we added the extra

15 provision in (4) of 1.1.201, which I think is what is causing

16 Mr. Gerson some discomfort.

17        The final issue is something that is virtually a law

18 of the case.  Section 6.8 of our plan, again in the goal of

19 trying to make sure that we have dealt with all of the ESOP

20 type liabilities that might be dealt with under our plan -- and

21 again, this is claims that beneficiaries of the ESOP might have

22 against the estate.  We said that, in the context of

23 confirmation, it's possible that we would need a determination

24 -- that's Page 61, Your Honor, of the plan, 6.8 if you're using

25 a redline.

1          THE COURT:  I am.

2          MR. LANTRY:  We wanted to make sure that it was

3   clear that in the context of confirmation, we had the right if

4   there needed to be some additional adjudication, whether by

5   virtue of a claims objection to the Department of Labor's

6   claims or anything else, that we needed to be able to address

7   that.  So we provided a mechanism where we might do that.  We

8   hope that the Neill litigation has matured enough so that we

9   don't need to address it here.

10         We may nevertheless need to object to the Department

11  of Labor's claims, we may need something else that goes on, but

12  what I'm sure you will make sure of is that this is done with

13  due process and that the Department of Labor is not surprised.

14  We don't know what it might be and we're not sure we need to do

15  any of the things provided in 6.8, but this is the identical

16  provision that was in our plan back in May.  Mr. Gerson

17  appeared before you by phone and objected to this provision and

18  you basically overruled that objection.  We'd ask you again to

19  do it in the same way.

20         Those are the four issues, Your Honor.

21         THE COURT:  All right.  Thank you.  Let's take a

22  five minute break.

23      (Recess taken from 11:38 a.m. to 11:46 a.m.)

24         THE CLERK:  All rise, please.  Be seated, please.

25         THE COURT:  All right.  Does anyone else wish to be

1 heard in connection with -- well, I'm sorry -- yeah, with the

2 Step Four lenders disclosure statement?

3         MR. LEMAY:  Your Honor, may I just have a sentence

4 with respect to the Department of Labor issues?

5         THE COURT:  Go ahead.

6         MR. LEMAY:  Your Honor, David LeMay again.  I just

7 wanted to say what I think is obvious, these really seem to me

8 to be very much confirmation issues that will be having an

9 enjoyable time with at some point in the future.  I can't

10 imagine for the life of me how the voting decision of any

11 creditor is affected by them and therefore I just don't think

12 they're relevant to why we're here today.  Thank you, Your

13 Honor.

14         THE COURT:  Anyone else?  Okay.

15         MR. LANTRY:  So, Your Honor, in the interest of

16 pressing on for another first down, I think we're at Item

17 Number 5 on the agenda.

18         THE COURT:  Okay.

19         MR. LANTRY:  This would be the Bridge disclosure

20 documents and responsive statements.  Your Honor, I think the

21 debtors' committee and lenders only have one issue and it's

22 purely a reservation of rights.  And that's if -- let me back

23 up.  The Bridge plan is proposing three different settlements,

24 none of which have materialized yet with parties to the

25 settlement.  And if none of them do ultimately materialize,

1  they have a fall back which really tracks the noteholder plan.

2  And so I would simply say that if, as we talk about the

3  noteholder plan, there are any changes to the noteholder plan

4  that might need to be made to the Bridge, we'd want you to

5  address that, but beyond that we have no objections to the

6  Bridge disclosure documents.

7         THE COURT:  Okay.  does anyone else wish to be heard

8  in connection with the Bridge Lenders' plan?

9         MR. GOLDEN:  Thank you, Your Honor.  We had listed a

10 number of objections to the Bridge Lender disclosure statement,

11 but as a product of further revisions and maybe determinations

12 on our part to press some of those in connection in

13 confirmation, we -- I think we only have two or three that

14 remain.

15        At -- the Bridge Lender proponents describe the

16 allocation of distributable enterprise valuation, a term I

17 think you'll hear a lot about later on, which the debtors and

18 the debtors and the committee and the lenders suggest in their

19 plan aggregates $6.75 billion.  And they describe that

20 allocation -- when I say they, the Bridge Lenders describe that

21 allocation as between Trib parent and the subsidiaries

22 differently and with different numbers than the debtors,

23 committee and lenders describe that allocation.

24        The Bridge Lenders have more of that distributable

25 enterprise valuation being at the parent and less at the

1    subsidiaries.  The debtors have it more at the subsidiaries and

2    less at the parent.  It is a similar objection that we will

3    raise with respect to the debtors' disclosure statement,

4    because nowhere in the Bridge Lenders' disclosure statement and

5    incidentally in the debtors' disclosure statement do they

6    describe the basis for that allocation.

7            And this point, I think, you can't get away and say

8    that's a confirmation objection.  This is a very important

9    information point for people to be able to make informed voting

10   decisions.  It dictates, depending upon how that issue is

11   ultimately determined, it dictates what -- for example, what

12   Bridge -- what parent lender -- I'm sorry, Your Honor, what

13   parent company creditors would be entitled to based upon their

14   pro rata share without any regard to the outcomes of the

15   litigation.

16           And so it impacts directly someone's view as to

17   these settlements that are being contemplated in the debtors'

18   plan and the Bridge Lender plan and the Step One Lenders' plan.

19   It doesn't with respect to Aurelius because as the Court knows,

20   there are no settlements within that plan of the LBO

21   litigation.

22           So we think that the Bridge Lenders, and we'll deal

23   with the debtors later, need to describe and disclose the basis

24   for their conclusion that $5.825 billion of the distributable

25   enterprise valuation or 86.3 percent resides at the

1  subsidiaries and 925 million, or 13.7 percent of the

2  distributable enterprise value, resides at the Tribune parent.

3  There is virtually no disclosure on that point, and for the

4  reasons I stated we think it is absolutely essential -- it's a

5  gate -- we would suggest it's a gating issue for creditors in

6  order to make informed decisions on all the plans.

7          One other thing I'll just say, which is connected to

8  this.  They -- you'll hear a lot about the "inter-company

9  claims settlement agreement" which apparently drives this

10  allocation of value as between the parent and the subsidiaries.

11  We take issue with the fact that the debtors, the committee and

12  the lenders won't attach the inter-company claims settlement

13  agreement to their disclosure statement and say it will only be

14  provided 15 days prior to the confirmation deadline, but we

15  believe that is the primary driver for this allocation of

16  value, as between the parent and the subsidiaries.

17  Unfortunately, the Bridge Lenders don't have that settlement

18  agreement either, so they may be shooting somewhat in the dark,

19  but I do believe that they have some information that's been

20  provided by the debtors.  And I think that they need to

21  disclose the basis of their proposed allocation.

22          My last point, Your Honor, is a -- maybe more of a

23  technical point.  At Page 13 of the Bridge Lenders' disclosure

24  statement filed on November 23, and that may not be the latest

25  version, but I think it carries over.

1              THE COURT:  Bear with me.

2              MR. GOLDEN:  Certainly.

3              THE COURT:  Okay.  Are we talking disclosure

4    statement or plan?

5              MR. GOLDEN:  I'm talking disclosure statement.

6              THE COURT:  Okay.  Give me the page.

7              MR. GOLDEN:  Page 13.  Hopefully you'll see a

8    blackline Footnote Number 7 at the bottom of the page?

9              THE COURT:  I see Footnote 7.  I do not see a

10   blackline.

11             MR. GOLDEN:  You just may not have the blackline

12   version in front of you.  Does that footnote start, "These

13   estimated recoveries"?

14             THE COURT:  It does.

15             MR. GOLDEN:  Okay.  We're in the right place.  This

16   footnote says,

17             "These estimated recoveries" -- talking about the

18             chart at the beginning of the page -- "are based on

19             the debtors' previous total enterprise value for the

20             debtors of 6.1 billion."

21             If you'll recall, Your Honor, in respect of the

22   April plan, that was the then debtors' suggestion as to the

23   distributable enterprise valuation.

24             "Since the Examiner's report was issued, the debtors

25             have increased the total enterprise value of the

1    debtors to 6.75 billion."

2    And here is the sentence which we think may be

3    inaccurate.

4    "All such additional value is allocated by the

5    debtors to the guarantor subsidiaries.  If accepted,

6    this only impacts the range of recovery to the

7    senior loan claims."

8    We don't think it's accurate that when the debtors

9    went from 6.1 to 6.75 billion, an increase of almost $650

10    million in distributable enterprise value that the debtors are

11    taking the position that all of that increased value was

12    accumulated or aggregated in the subsidiaries.  Now, if we're

13    wrong, the debtors should know, they'll tell us if we're wrong,

14    but we think that that's not a correct statement.  And, if in

15    fact, it's not correct, it should be corrected.  And those are

16    the only objections we had, Your Honor.

17    THE COURT:  All right.  Thank you.  Anyone else?

18    MR. LANTRY:  Your Honor, some of this allocation

19    issue is really about the debtors' plan and I don't know if you

20    want to try to address that issue now or just know that, you

21    know, we have similar issues, they're not identical, because we

22    do in fact actually have a different split between the parent

23    and subsidiary values than the Bridge do, but if you want to

24    have it heard now, I can address that.

25    THE COURT:  Yes, let's do that now.

1            MR. LANTRY:  Your Honor, at the heart of it,

2    Aurelius has asked for more information about the inter-company

3    claims.  We provided the Exhibit C to our specific disclosure

4    document, which is a description that we provided to the

5    Examiner about the inter-company claims and specifically the

6    settlement of the inter-company claims.  In particular, this

7    document goes through roughly 11 billion of claims that are,

8    with respect to the parent and the subs and three billion or so

9    with regard to the subs and the parent, and tries to put an

10   estimated ultimate settlement of those claims based on our

11   calculations and analysis of the legitimacies and historical

12   origins and goes to a whole lot of detail about how that works

13   out.  We've provided that information in our disclosure

14   document.  It's about a five page explanation of those details.

15           Aurelius wants more.  And I can understand that

16   there will be lengthy litigation over the valuation of the

17   inter-company claims, at least with respect to our plan, at

18   confirmation and probably, you know, as they're indicating with

19   regard to the Bridge plan.  And it's possible with regard to

20   any plan in this case, the inter-company claims are big enough

21   and they need to be determined in terms of the spread between

22   the value at the parent and the value at the operating

23   subsidiaries.  So we know that's going to be a big issue.

24           We've provided about as much information as we have

25   available at this time that we feel is certain.  We continue to

1  perform analysis on this.  Aurelius wanted us to document and

2  have an agreement reflecting the inter-company claims and we've

3  resisted that just because we, again, continue to refine this

4  as we do work.  As you probably know when you have a company of

5  this proportion and this historical origin for many different

6  mergers and acquisitions, the history of all the inter-company

7  claims is one of the biggest labyrinth you can ever dig down to

8  and we want to do it as accurately as we can, and therefore

9  we've resisted let's lock it down right now, even though I'm

10  sure that it will evolve a whole lot as we see discovery going

11  on about it.

12           There is two other elements of the inter-company

13  claims that ultimately go to this allocation of value between

14  the parent and sub.  One of them has to do with the basic

15  analysis of value.  We have a valuation of Lazard that we have

16  included in our specific disclosure document.  Ultimately what

17  they did is they went legal entity by legal entity and they

18  built up from ground up the kind of valuation that breaks down.

19  That's important in terms of ultimately getting to this spread

20  between the parent and the subsidiary.  They want, obviously,

21  in discovery to hear every detail about that Lazard valuation

22  and that will be progressing, but at this point we feel like we

23  have given enough in the disclosure document to give a basis

24  for that.

25           The final element that goes to this allocation of

1    value between the parent and the subsidiary is one that I think

2    the Examiner became somewhat infamous for in one of his

3    footnotes about one of the most tortured and painful aspects of

4    his entire enterprise, was trying to figure out how the inter-

5    company claims work and the dynamic scenarios in which the LBO

6    litigation might come out, and the different scenarios and the

7    different spread between the parent and subsidiary if you take

8    this assumption and that assumption and all the various ones is

9    just truly a mindbender.

10           And the idea that we would try to describe that in a

11   disclosure document is truly, you know, devastating in terms of

12   what is understandable to anyone except the most sophisticated

13   financial advisors.  And so we resist trying to put that sort

14   of a model into the disclosure document because it's truly a

15   computer sort of model rather than something that can be

16   described easily in words.

17           So for those reasons we feel like -- at least with

18   regard to the debtors' plan, we have provided enough

19   information to help the voting creditors sense the allocation

20   between these two, but we know that this allocation is subject

21   to an ultimate determination by the Court and likely to be

22   adjudicated at confirmation.  As a result, I think it's about

23   as far as it can go.

24           THE COURT:  Thank you.

25           MR. GREISSMAN:  Good afternoon, Your Honor.  Scott

1  Greissman for the Bridge proponents, White and Case.  We

2  disclose actually in several places, in a fair amount of

3  detail, the issues that Mr. Golden is raising.  In particular,

4  I'd refer Your Honor to Page 16 of our specific disclosure

5  statement.  The Bridge proponents make clear that our

6  allocation of value is driven by a -- effectively allowing all

7  inter-company claims, but then honoring the inter-company

8  claims subordination to the Bridge.

9          Effectively, the Bridge guarantee provides that the

10  inter-company claims owed from the parent to the subsidiaries

11  can't be paid until the Bridge is paid in full.  So if you

12  allow all inter-company claims and honor the inter-company

13  claims subordination, that value gets trapped at that parent

14  and that drives the differing allocation or most of it.

15          We make that very clear on Pages 16 and 17 of our

16  specific disclosure statement and in Footnote 4 on Page 7 of

17  our specific disclosure statement.  So I really don't have much

18  else to add there.

19          THE COURT:  All right.  Thank you.

20          MR. GREISSMAN:  Thank you.

21          THE COURT:  Anything further on the Bridge plan?

22          MR. GOLDEN:  Your Honor, I don't have anything

23  further on the Bridge plan.  I just wanted to make clear that

24  we would -- when we got to the debtors' plan, I would argue

25  with respect to the inter-company claim analysis at that time.

1  Thank you.

2          THE COURT:  I'm not going to rule on anything until

3  I've heard it all.

4          MR. GOLDEN:  Thank you, Your Honor.

5          MR. GERSON:  Winerd Gerson for the Department of

6  Labor.  One objection with respect to the disclosure statement

7  of the Bridge Lender disclosure statement.  This also applies

8  to the Aurelius disclosure statement, the same defect in both.

9  Both of the plans of those proponents -- these proponents don't

10 have a class for securities litigation claims asserted against

11 the subsidiaries.  They're called subordinated securities

12 claims, I think, under these two plans.

13         Since the Department of Labor has filed claims

14 against the sub -- a number of the subsidiaries, and we don't

15 know, but we expect participants in the ESOP also have filed

16 claims against subsidiaries because they're employees of the

17 subsidiaries, we're mystified by the fact that there are no

18 classes in those plans that cover those claims.

19         Now, whether you can confirm a plan that doesn't

20 have a class for an outstanding claim is a Section 1129 issue,

21 but I think it's incumbent upon these proponents to describe

22 why they haven't included a class for claims that right now are

23 allowed claims.  I mean, the bankruptcy code provides means of

24 objecting to a claim, any party-in-interest can object to a

25 claim, it has a means for subordinating a claim, you file an

1   adversary proceeding.  I don't know to what extent these

2   proponents are hoping to get a ruling from this Court under

3   Section 6.8 of the plan with respect to the legal effect of the

4   forgiveness of the ESOP note, that might cause any claim

5   against the subsidiaries to be disallowed, because there would

6   be no money owing.

7           Really, what's happened with these proponents, it

8   seems to the Department, is they've created a kind of Lou

9   Goldberg machine with respect to these ERISA claims rather than

10  dealing with them directly and appropriately, they're providing

11  all kinds of potential pitfalls that they have -- if they're

12  going to insist upon proceeding in that way, they need to

13  disclose.

14          THE COURT:  Thank you.  Anyone else with respect to

15  the Bridge plan?  Okay.

16          MR. LANTRY:  Your Honor, I don't know if you're

17  ready then to move to Item 2 on the agenda, this would be the

18  debtors, committee and senior lenders' disclosure documents.

19          THE COURT:  I am.

20          MR. LANTRY:  Your Honor, we have prepared the

21  traditional chart that identifies just in very one sentence or

22  bullet points the remaining objections based on the way they

23  seem to be at a late hour last night.  Could I pass that around

24  and up to Your Honor?

25          THE COURT:  Yes.  Do you have a copy for my law

1  clerk as well?

2          MR. LANTRY:  Your Honor, while this is being passed

3  around, I will tell you the good news is that we're probably

4  well over a third of the way through this chart from what we've

5  already done and that probably will be how the day progresses,

6  in terms of some of the overlap.

7          Your Honor, I would propose to go in the order that

8  we have here.  Again, I don't know, it could be that we may

9  have missed one or two and I'm sure parties will raise that.

10  We may have resolved one or two, but I think this chart is

11  reasonably accurate.

12          The first issue is one that a number of parties have

13  addressed, the Step One parties have brought it up, and that's

14  a desire for the lenders, Oaktree, Angelo Gordon and JPM, to

15  identify the amount of the specific holdings that they have.  I

16  think it's best for them to address that issue rather than I.

17          MR. FLASCHEN:  Your Honor, Evan Flaschen for the

18  Step One Lenders.  Keeping to my theme that it's mostly

19  disclosure statement who matters, we're not going to give you

20  dozens of quibbles.  I suspect you'll hear those in a few

21  minutes from other counsel.  We have a single issue, which

22  leads to several requests for clarification on the disclosure

23  statement.

24          To grossly simplify what the debtors on one hand and

25  Aurelius on the other hand are focusing on is senior lenders as

1    a group, the banks, versus noteholders.  Fundamentally what we

2    focus on is as between the senior lenders, Step One Lenders

3    versus Step Two Lenders.  To remind, Your Honor, Step One

4    closed at -- early on in April, May of 2007; Step Two closed in

5    December 2007 based on its own conditions precedent, its own

6    representations and warranties, its own requirement of

7    insolvency finding and so forth.

8         And referring to the debtors' disclosure statement,

9    it describes the Examiner's report as saying that the

10   challenges to the -- the LBO-related challenges to the Step One

11   loans are either highly unlikely or, if you collapse Step One

12   and Step Two, reasonably unlikely, whereas their reference to

13   the Step Two loans is -- as being avoidable according to the

14   Examiner, is either highly likely or reasonably likely

15   depending on the issue involved.  So there is a distinction.

16   I'm not here to argue the gap of the distinction, other that

17   there is one.

18        Because of that, when the debtors' plan proposes a

19   settlement it should disclose how, if at all, Step One and Step

20   Two are being treated differently.  In broad terms, the Step

21   One loans are six billion; Step Two loans are about two

22   billion.  The settlement amount contributed by the Step One

23   Lenders, if I understand correctly, is 401 million -- is that

24   right?  Okay, 401 million.  Of that 401 million that the

25   debtors' propose is paid in settlement of the claims against

1  Step One and Step Two, how much is contributed by Step One, how

2  much is contributed by Step Two?  Is it pro rata?  If so, they

3  should disclose that.  It would be inconsistent with the

4  Examiner's report, but it's their settlement, they should say

5  so.  If it is not pro rata, they should also say that so the

6  Step One Lenders can understand how much they are being asked

7  to contribute.

8         Next, the reason the debtors' disclosure statement

9  does not disclose the difference between what the two groups

10  are contributing is because in a couple footnotes they say the

11  money -- the distributions of Step One and Step Two are

12  distributed pursuant to the credit agreement, the senior loan

13  agreement.  This implies, although does not state, that they

14  are seeking to enforce what are called the sharing provisions

15  of the senior loan agreement.  One provision, one paragraph,

16  the debtor shall pay all creditor -- all lenders pro rata,

17  second one that says the debtors have paid one lender more than

18  another, the lenders as among themselves will share.

19         Assuming they are not saying it's a pro rata

20  contribution to the settlement by Step One and Step Two, they

21  should disclose explicitly that the distributions are

22  nevertheless pro rata because they are applying the sharing

23  provisions.  Or if they're not applying the sharing provisions

24  and we're mistaken, they should state that explicitly so that

25  we understand it.

1          And whichever of those they disclose, they should

2   indicate in just a paragraph that the Step One Lenders dispute

3   applicability of the sharing provisions.  That's the

4   fundamental aspect of our plan, Step One is different than Step

5   Two, and the sharing provisions don't apply -- and we're not

6   here today to argue why they don't apply, we just don't think

7   they do.

8          Therefore the plan -- the settlement is not fair, it

9   treats us differently.  Indeed, we agree with Aurelius, there

10  should not be a settlement at all with Step Two -- a

11  confirmation issue, but they need to put their money where

12  their mouth is.  Why are we getting the same on a pro rata

13  basis?  Are we giving up the same in settlement?  I doubt it.

14  The first Oaktree/Angelo plan clearly did not have us giving up

15  the same settlement. Or is it because they're applying the

16  sharing provision?  Again, the first Oaktree/Angelo plan said

17  yes, this one does not say.

18          Next, because their settlement purports to settle

19  both Step One and Step Two, and also in general one should know

20  who is proposing plans, it really is fundamental that the

21  debtors' plan should disclose the holdings of the main

22  financial backers, JPMorgan, Angelo Gordon, Oaktree Capital.

23  We think that the three of those are much more heavily weighted

24  in Step Two.  Indeed, the settlement certainly implies that.

25  No Step One lender would agree to the settlement, they must be

1    heavily in Step Two, but they should state that, so we think

2    they are more than half of Step Two, substantially more.  We

3    think they're only 25 percent give or take of Step One, but

4    regardless of what we think, they're plan proponents.  They

5    need to say what they hold, what they hold of Step One, what

6    they hold of Step Two, do they hold any senior notes?  Oaktree,

7    I understand, owns a swap claim.  Do they hold any bridge

8    loans?  And so forth down the line.

9           The most fundamental thing about a plan, who are the

10   proponents, tell us who the proponents are and what they hold.

11   That helps inform us as Step One Lenders in approaching the

12   settlement what were the motivations of those who are agreeing

13   to the settlement?  We know JPMorgan's fundamental motivation

14   is they want a release, that's fine.  In terms of their debt,

15   we think their fundamental motivation is to protect Step Two.

16           THE COURT:  Well, let me ask this.  If these

17   entities were subject to Rule 2019 disclosure, are you asking

18   for anything more or less or different than what the Rule, if

19   it applied, would require?

20           MR. FLASCHEN:  We're asking for, yes -- less, Your

21   Honor.  In this particular case, counsel generally have

22   complied with the polite fiction that 2019 statements should

23   provide general disclosure of groups, rather than individual

24   holdings when you bought and sold all those things.  We can do

25   that if you want, we're not asking them to go to that level of

1  detail, just tell us JPMorgan, what you hold or what kind of

2  debt, tell us Angelo Gordon, tell us Oaktree.

3              THE COURT:  As of when?

4              MR. FLASCHEN:  As of voting.  This plan will be

5  voted on, what votes do they have?  Are they voting according

6  to their disclosure statement a vast amount of votes, which

7  they probably are, but are they alone possibly two-thirds of

8  Step Two?

9              THE COURT:  What if it changes between now and then?

10             MR. FLASCHEN:  I'm easy.

11             THE COURT:  See the request is a simple one, but the

12 implementation of it --

13             MR. FLASCHEN:  I -- Your Honor, I defer to you.  I'm

14 easy on implementation.  Whether they have three billion today

15 and 3.2 billion tomorrow or 2.8 billion, I just want to know in

16 rough terms are they really heavily weighted to Step Two.  We

17 think they are.  They should say so and they should say in

18 broad terms, are they billions of debt, are they hundreds of

19 millions, are they millions, is this just JPMorgan trying to

20 get a release and Angelo and Oaktree don't own anything?  None

21 of that is really said in their disclosure statement.

22             The final relevant point to that is classification.

23 If we assume hypothetically they are heavily weighted to Class

24 Two, also if we assume hypothetically that, in fact, they are

25 required to disclose and they do disclose that Step One and

1   Step Two are contributing different to the settlement, but then

2   are equalizing pursuant to the sharing provisions, Step One and

3   Step Two are different.  They are fundamentally dissimilar.

4   The Examiner's report said they're dissimilar, but their own

5   plan would say they are dissimilar because they are

6   contributing differently to a settlement, they should be in

7   separate classes.  Not just an academic issue because if they

8   control the Step Two class, and we guess they do, but don't

9   control the Step One class, they should be separate classes and

10  should vote separately.

11          So again, we generally don't approve of the

12  settlement.  We think the Step Two claims should be pursued as

13  a litigation matter, but that's a confirmation issue.  Truly

14  and sincerely to help inform us, we just need to know how

15  they're treating Step One versus Step Two, rather than talking

16  about the senior lenders as a group.  Thank you, Your Honor.

17          THE COURT:  Thank you.

18          MR. LANTRY:  Your Honor, I don't know how we might

19  want to do this.  It may be easier to have the Step One issues

20  addressed and responded to and then the Bridge, and follow that

21  format so the noteholders have a chance to address everything.

22  I just want to stay in order here and your direction, but I

23  just wanted to have a pathway relative to this chart.

24          MR. GOLDEN:  Well, and that's fine, Your Honor,

25  because I think it probably be -- make more sense if the

1  noteholders spit out all their objections at one time, so I

2  don't have to keep coming up and down, but I just -- I rose

3  because point number one on Mr. Lantry's sheet references this

4  is a noteholder objection, even though it's under the category

5  of Step One proponents objection.  So I can speak now on this

6  point, maybe that probably makes the most sense, and then I

7  could reserve for all the rest of my points.

8              THE COURT:  All right.  Go ahead.

9              MR. GOLDEN:  Thank you, Your Honor.

10              So it's not often that Mr. Flaschen and I agree

11 almost entirely.  At Page 3 of the debtors' disclosure

12 statement, under the paragraph general overview, there's a

13 sentence,

14              "The debtor committee lender plan has been proposed

15              by several of the most significant constituents in

16              these Chapter 11 cases, the debtor, the creditors

17              committee, JPMorgan in their capacity as senior loan

18              agent and as the senior lender, and Oaktree and

19              Angelo Gordon, who are, along with JPM, the largest

20              holders of senior loan claims."

21              That type of disclosure is found throughout the

22 debtors', creditors', lenders' disclosure statement and in

23 their responsive statements.  For really the reasons stated by

24 Mr. Flaschen, I agree.  If they are going to say they are the

25 largest holders, they need to be put to their test.  I think

1 || it's incumbent, as a plan proponent, coupled with the two

2 || fiduciaries in this case, that they disclose their holdings of

3 || senior lender claims, both Step One and Step Two, Bridge owned

4 || lender claims, senior noteholder claims, swap claims.

5 ||         Your Honor asked the question as of when.  I think

6 || that's a very pertinent, appropriate question.  I have a

7 || slightly different answer.  I think it should be as of the date

8 || they filed this plan that is under consideration because I

9 || think that is the relevant time period.  And frankly, Your

10 || Honor, I care less about any changes that may occur in their

11 || ownership from the point of the time when they filed this plan

12 || going forward.

13 ||         I think what's really relevant for the voters is to

14 || know, in fact, who are the proponents of the debtors' committee

15 || lenders' plan.  And in that regard, as we set forth in our

16 || objection, we think also what should be disclosed is the amount

17 || of pre- and post-petition interest, principal payments that

18 || these three entities, JPMorgan, Oaktree and Angelo, have

19 || received because that will go to -- or may well go to the

20 || motivation for the settlement that's contained in the debtors'

21 || committees' lenders' plan.

22 ||         So we're asking for very easy disclosure.  This

23 || information is easy to get to.  It resides clearly within the

24 || realm of knowledge of these three plan proponents.  It is not

25 || cumbersome to disclose it.  They can disclose it once in one

1    spot and this objection will be resolved.  And yes, to the

2    extent that the Court has the question, Aurelius has, and is

3    willing to, indicate its holding of senior notes and other

4    claims against the debtors in its respective documents.

5            THE COURT:  Thank you.

6            MR. GOLDEN:  Thank you.

7            MR. JOHNSTON:  Good morning again, Your Honor.  Jim

8    Johnston, Hennigan Bennett.  As you know, three of the

9    proponents of our plan are, in fact, holders of senior loan

10   claims; two of them are my clients, Oaktree Capital and Angelo

11   Gordon and the third is JPMorgan.

12           As part of the back and forth on disclosure items,

13   we have agreed that our disclosure documents will state the

14   total amount of senior loan claims held by those three

15   proponents on an aggregate basis.  And to give Your Honor some

16   perspective that I'm not wasting my time here, while I don't

17   have the exact figure before me, the three senior lender

18   proponents collectively hold over 3.35 billion of the senior

19   loan claims, that's approximately 39 percent or so of the total

20   outstanding senior loan debt.

21           This disclosure, according to the objections and

22   what you heard this morning isn't enough.  You've heard the

23   objectors say they want holdings information on an institution

24   by institution basis.  With respect to Mr. Flaschen, he wants

25   holdings broken down by tranche, Mr. Golden says he wants pre-

1  and post-petition payment amounts.  I'd suggest that that level

2  of disclosure in this context is extraordinary and possibly

3  unprecedented and it appears to be made for the purpose of

4  harassing these individual institutions who have gone through

5  the mediation and supported a settlement plan and have become

6  proponents -- essentially put their neck out to become a

7  proponent of these plans.

8          THE COURT:  So let's assume that, just for purposes

9  of the question I'm about to ask, that disclosure issues,

10  especially under Rule 2019 -- well, I've heard the term used,

11  have become weaponized.

12          MR. JOHNSTON:  I'm sorry, I didn't --

13          THE COURT:  Have become weaponized.

14          MR. JOHNSTON:  Weaponized, okay.

15          THE COURT:  Yes.  So let's assume that you're right,

16  that the motivation here is to request disclosure for reasons

17  other than disclosure.  Where's the harassment in providing the

18  information that's been requested?  I don't -- under these

19  circumstances, with respect to plan proponents who've, you

20  know, intentionally joined the fray --

21          MR. JOHNSTON:  Uh-huh.

22          THE COURT:  -- what's the big deal?

23          MR. JOHNSTON:  Well, let me approach it two ways.

24  First, I think, to step back, in our view what is relevant is

25  whether or not proponents of a plan have sufficient skin in the

1   game.  You know, why -- do they have an economic interest that

2   justifies the plan that they are proposing.  To satisfy that

3   legitimate request, the three senior lenders have agreed that

4   yes, you know what, let's put our holdings out there on an

5   aggregate basis.

6           THE COURT:  And why not on an individual basis?

7           MR. JOHNSTON:  Well, once you get more granular,

8   frankly, and I know you've heard this before, Your Honor,

9   possibly from me, certainly from others in the 2019 context,

10  you start getting into sensitive information.  You get into

11  sensitive business level information about creditors in terms

12  of how have they divided their holdings among, you know,

13  different tranches of the senior loan claims, when did they get

14  their debt, that would key off of pre- and post-petition

15  payments made on the debt.  You could then back into --

16          THE COURT:  Well, I didn't ask that yet.

17          MR. JOHNSTON:  Okay.

18          THE COURT:  The -- my question was, at least for the

19  moment, limited to what's the harm in requiring individual

20  holdings disclosures, say as of the date of the filing of the

21  plan?

22          MR. JOHNSTON:  It simply is a level of disclosure

23  that's not required of other participants in the case, that's

24  not public information, so it's requiring a creditor to go out

25  there and disclose something that they otherwise would not have

1  to disclose, simply by virtue of the fact that that creditor

2  has become a proponent of a plan.

3          THE COURT:  Yeah, it's like, you know, you could

4  interject the adjective -- or maybe it's an adverb -- nearly.

5  I don't know what that ever means, you know, other than to make

6  an argument that what follows isn't that important, but you're

7  in bankruptcy -- well, you're a bankruptcy participant, that's

8  important.  I mean, it's different than being outside of the

9  process.  And, you know, telling people who you are and what

10  your claim is, it seems to me to be a fairly fundamental thing,

11  especially in connection with a plan proponent.

12          MR. JOHNSTON:  I concede that and we draw the line

13  maybe slightly farther to the right than Your Honor with

14  respect to the aggregate holdings.  Certainly, if you were to

15  draw the line a little to the left and say each individual

16  proponent disclose your aggregate holdings, that's one level of

17  disclosure.  The next level of granularity is even more

18  sensitive, even more proprietary, and so we would object to

19  that.

20          THE COURT:  But understanding -- so let's go to the

21  next level.  Understanding that so much of what's been built

22  here in the way of the various proposed plans hinges on various

23  treatment of Step One and Step Two debt, why under these

24  circumstances would it be inappropriate to require a disclosure

25  on that basis.

1          MR. JOHNSTON:  Let's take that on.  Thank you.

2          You heard Mr. Flaschen and his clients' previously

3   make a big deal about the alleged dichotomy between Step One

4   senior loan claims and Step Two senior loan claims.  And as an

5   aside, I'm using the terms Step One and Step Two, even though I

6   think they're misnomers, they've become part of the lexicon of

7   the case.  As Your Honor knows, the Examiner found that the two

8   different parts of Tribune's going private transactions in 2007

9   likely were not steps of the same transaction, they wouldn't be

10  combined under the step transaction doctrine.  We'll use the

11  shorthand because everybody does, but it's certainly not an

12  adoption of it.

13         You know that Mr. Flaschen and his clients initiated

14  a lawsuit trying to press that dichotomy between the Step One

15  and Step Two claims.  Their advancing the arguments that

16  distinctions should be drawn between the senior loan claims.

17  As a reminder, the senior loan claims constitute a single claim

18  under a single credit agreement, a single set of guarantee

19  agreements, and under our plan, they're all classified

20  together.  My clients certainly take the view that there isn't

21  any distinction to be drawn between the two.  We think that the

22  senior loan agreement clearly forbids the discrminary treatment

23  advanced by Mr. Flaschen's clients.  We think the distribution

24  rules under the credit agreement dictate that everyone who

25  makes an advance under that agreement shares pro rata in

1  payments of principal, and we're happy to take those issues on.

2  We think that those are all issues for another day.

3          For purposes of disclosure, the key takeaway is that

4  the plan that our clients are -- my clients are proponents of

5  doesn't draw the distinction.  In view of the fact that, in our

6  view, the makers of the Step One and Step Two advances stand

7  and fall together under their contract, in recognition that no

8  material recoveries flow to parent level creditors from

9  avoidance of the Step Two advances alone in exchange for

10  hundreds of millions of dollars of settlement consideration to

11  be provided.

12          The plan we support allows both the Step One claims

13  and the Step Two claims with no distinction.  Our document is

14  clear on that.  Allowance of the senior loan claims in the one

15  class provides equal treatment for all senior lenders.  Given

16  that, I'll submit to you that it doesn't make any sense to

17  require a breakdown of holdings of my clients on a tranche by

18  tranche basis because our plan doesn't call for that

19  distinction.  It's simply not relevant information as to our

20  plan.  It is as to Mr. Flaschen's plan, but not as to our plan.

21          They're free to argue that our plan is unfair,

22  illegal, whatever they want, they're free to speculate as to

23  our motives.  They're free to care -- or free to claim that my

24  clients care only about Step Two claims and not Step One

25  claims.  They don't need the proprietary holdings of my clients

1  to make those arguments.  They've already made them.  You've

2  seen their responsive statement; that's what they do.  You

3  heard it this morning.

4        And keying off, I think, the theme of the hearing as

5  Mr. Lantry indicated this morning, our disclosure document

6  isn't the place to advance their argument.  They can advance

7  the arguments on their own, they've done so capably.  We'd

8  submit that there just isn't any basis to compel that

9  disclosure for our plan, which my clients have signed up to be

10 proponents of.

11        THE COURT:  Thank you.

12        MR. JOHNSTON:  Thank you.

13        MR. FLASCHEN:  Your Honor, Evan Flaschen for Step

14 One Lenders.  I have to rise mainly because Mr. Golden said,

15 although we seldom agree, we agree here.  I'm pleased to say we

16 don't agree here.  I just had to say that.

17    (Laughter)

18        THE COURT:  Issuing a challenge in this case is

19 always a risk.

20        MR. FLASCHEN:  We haven't even asked for a breakdown

21 between JPMorgan, Angelo and Oaktree, just the Step Two's, but

22 I want to address two specific issues.

23        He makes a point that all advances share equal into

24 the sharing provision.  We have multiple arguments.  One of the

25 arguments is the Step Two loans were not advances; they don't

1  apply under the sharing agreement because they were incurred in

2  violation of the credit agreement.  It's a very real issue.  So

3  even if the sharing provisions by their terms apply, which we

4  don't think they do, that doesn't come within again a

5  confirmation issue.

6           The main point is, their plan has one class, one

7  treatment.  Their plan also proves a settlement and the reason

8  we need this disclosure is for the settlement aspect of the

9  plan, the settlement settles claims against Step One and Step

10 Two lenders.  We need to know the difference between the two,

11 it's really that simple.  Thank you, Your Honor.

12           THE COURT:  Thank you.  All right, let's -- can you

13 continue to work our way through the debtors' chart?

14           MR. LANTRY:  Your Honor, I'm not sure if the Bridge

15 proponents have the objection that's identified, but just in

16 case that's still out there, that would be next on the list.

17           MR. GREISSMAN:  Scott Greissman for the Bridge

18 proponents, Your Honor.  We are not pressing that objection.

19           THE COURT:  Thank you.

20           MR. LANTRY:  Your Honor, I think that brings us to

21 the noteholder objections.  Again, and just as a matter of

22 process, I think Mr. Golden wanted to be able to address all of

23 these together.  I would only, before passing over to him,

24 observe that we have addressed in various ways at least Items 2

25 and 3 and 4.  So we're more than halfway through of those.

1          MR. GOLDEN:  Thank you, Your Honor.  On behalf of

2   the Aurelius and the other proponents of the noteholder plan

3   raise the objections we have first with respect to the debtors'

4   committee lenders specific disclosure statement and then if

5   it's not inappropriate I can go on to the responsive statements

6   as well.  I'm not sure I agree with the calculations by Mr.

7   Lantry as to how many we've resolved, but I'll try to be as

8   brief as I can.

9          The first objection, Your Honor, is one that has

10  been already previewed.  It's regarding a lack of disclosure

11  regarding, in the debtors' committees' lenders' disclosure

12  statement regarding the allocation of the distributable

13  enterprise valuation.  This is found at Page 31 of the prior

14  specific disclosure statement and Page 31 of the blackline

15  version that was circulated last evening.

16          Just to go back, Your Honor, the debtors' plan is

17  premised on a distributable enterprise valuation of $6.75

18  billion, and it's further premised upon an allocation of this

19  distributable enterprise valuation as follows:  8.4 percent or

20  564 million to the Trib parent, 91.6 percent or 6,000,186,000

21  to the Trib subsidiaries taken collectively.

22          The problem, Your Honor, is two-fold.  There is

23  virtually nothing, no words, no disclosure in their specific

24  disclosure statement as to how they got to that allocation.

25  I'm not arguing valuation.  We did have an objection to lack of

1  disclosure with respect to valuation.  We've passed on that.

2  We'll take that up at confirmation, but there is no disclosure

3  regarding how they came to this allocation.  And as I tried to

4  explain to the Court before, this is crucial for creditors

5  trying to understand whether the debtors' committees' lenders'

6  plan makes sense and whether the underlying settlement -- the

7  primary settlement in that plan makes sense.

8         Your Honor, I believe, is familiar enough with the

9  debtors' plan that you know, or the Court knows, that there is

10 a settlement with respect to all fraudulent conveyance claims

11 contesting the allowance of Step One and any disgorgement

12 payments that were made with respect to Step One.  And that

13 settlement was done -- was -- as far as the noteholders are

14 concerned, they received $300 million in respect of that

15 settlement, but included in that $300 million is approximately

16 $62 million which the noteholders would have received

17 irrespective of the settlement.

18        That would have been their nature or baseline

19 recovery based upon the debtors' allocation of the

20 distributable enterprise valuation at the parent, because the

21 senior noteholders only have claims at the parent.  They can

22 only look to value at the parent to get their pro rata

23 recovery.

24        So if you subtract the 62 million from the 300

25 million, the settlement is $238 million to the noteholders.

1  And that's what they're being asked to vote on, but they're not

2  given any information as to how that allocation was arrived at.

3  And depending upon whether that allocation is too high or too

4  low, as it relates to the Tribune parent, the settlement may

5  not actually be $238 million, it could be considerably less.

6  If the right allocation as between the parent and the

7  subsidiary provide a lot more value to the parent as suggested

8  by the Bridge Lenders, then the settlement of Step One

9  allowance and Step One disgorgement is not $238 million, it's

10  less than that.  And I can't think of a more fundamental issue

11  or information that creditors need to be able to make an

12  informed decision with respect to this settlement plan.

13          This then gets to the issue of the inter-company

14  settlement agreement -- the inter-company claims settlement

15  agreement.  Although it's never said in the debtors'

16  committee's lenders' disclosure statement that the inter-

17  company claim analysis is what drives the allocation, I guess

18  we just assumed it did because why else talk about it?  But

19  they don't have that connection in their disclosure statement.

20  They never say that the allocation is premised primarily on

21  their view of the inter-company claim analysis, they don't say

22  anything about what -- how the allocation was arrived at, but I

23  guess we came to the conclusion it must be that.

24          And so we then look at the information regarding the

25  inter-company claim analysis.  Now, Your Honor, I want to take

1  you back to the April plan, which has long been scuttled, but

2  the one feature of the April plan, which is now six months ago,

3  the debtors had an inter-company claim analysis that was the

4  basis upon which they performed the same allocation of

5  distributable enterprise as between the parent and the

6  subsidiaries.  So at least six months ago they knew pretty much

7  where they were on the inter-company claim analysis.

8           Six months later, they still don't give us the

9  requisite disclosure that we think we're entitled to.  When we

10 raised this objection -- I'm sorry, Your Honor, one -- but they

11 do make reference that their inter-company claim analysis is

12 leading up an inter-company claim settlement agreement, which

13 will be, as required under the debtors' committees' lenders'

14 plan, a condition to confirmation that this Court approve the

15 inter-company claim settlement agreement.  They won't disclose

16 the agreement.

17          I assume you're going to hear that they don't have

18 the agreement, because they're still working on the analysis,

19 but if they're still working on the analysis, how do they know

20 what the allocation is as between -- for the distributable

21 enterprise valuation as between the parent and the

22 subsidiaries?  How do they know that 8.4 percent of that

23 distributable enterprise valuation belongs to the Trib parent

24 and 91.6 percent belongs to the subsidiaries?  We think they do

25 actually have the inter-company claims settlement agreement and

1  simply won't disclose it and have chosen not to disclose it

2  until 15 days prior to the confirmation deadline as part of

3  their plan supplement.

4         Your Honor, for the reasons I've said, I can't think

5  of a more important piece of information for voters to have.  I

6  don't think it's fair for the debtors to say at this point, six

7  months after they had already disclosed that they had this

8  analysis, that they're still working on it, it's not ready, we

9  can't disclose the inter-company claims settlement agreement

10 because it's not inked up, but it will be inked up, we're quite

11 certain, 15 days prior to confirmation, which depending upon

12 the schedule that the Court ultimately rules on, may well be

13 after the voting deadline, I don't know.

14        I think, if they don't actually have the inter-

15 company claims settlement agreement, we should just call a

16 halt.  And if Your Honor says we're not moving forward on this

17 plan until you have the inter-company claims settlement

18 agreement finalized and attached to the disclosure statement,

19 I'm pretty confident they'll be able to get to that settlement

20 agreement rapidly and be able to disclose it and I think that

21 that's what's appropriate under the circumstances.

22        So unless Your Honor has any questions on that, I

23 don't know how you want to proceed, if you want the debtors to

24 respond or the other of their plan proponents to respond or you

25 want me to go onto my next objection?

1          THE COURT:  I'd like you to finish your series of

2     objections.

3          MR. GOLDEN:  Okay.

4          THE COURT:  If you would.

5          MR. GOLDEN:  Thank you, Your Honor.

6          The next one deals -- also one that's been previewed

7     a little bit this morning, with the -- what we consider the

8     mischaracterization of the Examiner's report.  This can be

9     found at Page 20 of the debtors' committees' lenders' specific

10    disclosure statement and it can also be found in various places

11    in the responsive statements.  I want to make sure, Your Honor,

12    that I gave you the right page reference.

13         THE COURT:  I looked at it earlier today.

14         MR. GOLDEN:  Okay.  Essentially what Page 20 says,

15    and what at least the committees' responsive statement says, is

16    that they looked at the Examiner's report and they said that

17    the Examiner ran six scenarios.  The Examiner did run six

18    scenarios.  They could have run 106, but they ran six.  I don't

19    think anybody is going to debate there were hundreds of

20    scenarios that could have been derived from the information

21    obtained in the Examiner's investigation.

22         And they suggest that reviewing those six scenarios

23    leaves -- leads to the following result.  In only one of those

24    six scenarios do the noteholders do better than they do under

25    the debtors' committees' lenders' proposed plan.  Well, that's

1  right.  That's accurate as far as it goes.  What's inaccurate

2  is that it implies that the noteholders have a one in six

3  chance of doing better in the litigation than under the

4  settlement; we think that's false.  What's also true is that

5  there would -- could have been, and maybe should have been, a

6  variety of scenarios that the Examiner could have run, which

7  would have yielded different results.

8         All of that gets to the point that I made earlier

9  this morning.  The Examiner's report is being attached in full.

10  The debtors -- I think it was Mr. Johnston that pointed the

11  Court to the reference in the general disclosure statement as

12  to where creditors can find the report.  It could also add a

13  sentence to say a summary of the report is found in the first

14  30 pages of Volume I.

15         What I think is inappropriate here, for all of us,

16  I'm now not just picking on the debtors' committee and lenders,

17  because Aurelius in response is somewhat guilty as well.  All

18  of us should be prohibited from picking and choosing what they

19  like and what they don't like from the Examiner's report.  Your

20  Honor will ultimately determine what weight, if any, to give to

21  the Examiner's report, what role the Examiner's report will

22  play in the contested confirmation hearing.  And to try and gin

23  up a favorable response by creditors by taking selective

24  aspects of the Examiner's report, we think is simply misleading

25  and inappropriate, and as I asked the Court earlier this

1    morning, we'd ask the Court to direct all plan proponents in

2    their respective specific disclosure statements and responsive

3    statements to strike the language or references to the

4    Examiner's report.  So that's my objection on that point.

5         We've already covered the holdings of JPMorgan,

6    Oaktree and Angelo Gordon.  I want to turn to the treatment of

7    the swap claim.  This is found at Page 10, Footnote 18 of the

8    revised specific disclosure statement for the debtors'

9    creditor's committee and lenders, and in contrast to Page 17,

10   Footnote 34.

11        We've had a lot of discussion with the proponents of

12   the debtors' committee lender plan regarding the swap claim.

13   It's no secret, as set forth in our objection, we think that

14   there is a problem in the classification of the swap claim, but

15   we're not pressing that issue.  We will press it at

16   confirmation.  Here, the discussion is limited to the issue of

17   whether swap claim holders are entitled to post-petition

18   interest with respect to that claim, and there seems to be a

19   distinction, or a potential distinction.

20        So if Your Honor -- if you look at Page 10, Footnote

21   18, the language that was added in (ii) in the hole, the

22   holders of the swap claim will not receive post-petition

23   interest unless the guarantor debtors are determine to be

24   solvent on a collective basis.  That's what the debtors had

25   told us during the many meet and confers.  That's a proposition

1    and disclosure we can live with.  We have no objection to that.

2              But then you turn to Page 17, Footnote 34, it's all

3    new language, it's all blackline, and in the third line it

4    talks about -- or second line, "All amounts owing" -- "All

5    other amounts due and owing under the senior guarantee

6    agreement as of the petition date --"

7              MR. LANTRY:  Excuse me.  Your Honor, I don't think

8    you have the redline he's using because that was circulated

9    last night.  Could I approach and just give it to you?

10             MR. GOLDEN:  I'm sorry.

11             THE COURT:  Yes.

12             MR. GOLDEN:  Thank you, Kevin.

13             THE COURT:  Thank you.

14             MR. GOLDEN:  I'm sorry, Your Honor.

15             THE COURT:  That's all right.

16             MR. GOLDEN:  Page 7 -- I'm at Page 17 now.

17             THE COURT:  Go ahead.

18             MR. GOLDEN:  So it says here,

19                  "All amounts due and owing under the senior

20                  guarantee agreement as of the petition date, plus to

21                  the extent allowable under the bankruptcy code, all

22                  post-petition interest and other amounts due and

23                  owing under the senior guarantee agreement from and

24                  after the petition date."

25                  A different -- a slightly different formulation as

1  to whether the swap claim, which in the -- under the debtors'

2  plan as it relates to the subsidiary debtors, is classified as

3  a senior guarantee agreement claim, a different formulation as

4  to whether you're entitled to post-petition interest or not.

5  And all we were looking for was to clarify what we think is a

6  potential distinction between those two footnotes.

7          Your Honor, while I'm on that footnote however,

8  there's a slightly different point.  At the beginning of that

9  footnote, Page 34, Paragraph 17 it says -- all new language -

10              "The senior guaranteed claims shall be deemed

11              allowed in an an aggregate amount equal to all

12              amounts payable under the senior guarantee

13              agreement, including the full amount of principal,

14              interest and all other amounts due and owing under

15              the senior guarantee agreement as of the petition

16              date."

17          Well, since that -- their plan is deeming that claim

18  allowed, and I've now read the components of what makes up that

19  deemed allowed claim, we think they need to disclose what that

20  amount is and not just leave it to a guess on somebody's part.

21          Your Honor, my next point is a somewhat technical

22  point.  It deals with the treatment of the Morgan Stanley

23  claim.  It can be found in the same document you're looking at,

24  Page 8, Footnote 14, also new language.  It says, "If the

25  senior noteholders' claim" -- Morgan Stanley is a holder of

1  senior notes.  The allowance of the senior notes in the hands

2  of Morgan Stanley is subject to debate and subject to the

3  fraudulent conveyance litigation authorized by this Court.

4          A question was raised of the debtors that if those

5  -- if the senior notes held by Morgan Stanley -- if that claim

6  is disallowed, what happens to the consideration that otherwise

7  would have been payable in respect of that claim.  The debtors

8  have assured us it will go to the remainder of the senior

9  noteholders.

10          That's essentially what Paragraph 14 says in their

11 -- this revised disclosure statement.  Our only point is, they

12 -- we think they need to make that same corresponding change in

13 the plan and not just in the disclosure statement because it

14 will be the plan that will control.

15          Your Honor, regarding a defined term in the debtors'

16 committees' lenders' plan known as the remaining Bridge loan

17 reserve.  This is found at Page 6 of the -- not the document

18 you're looking at, but I believe it's Page 6 of the document

19 that they filed previously.  And I don't know whether you have

20 that book in front of you?

21          THE COURT:   I do.

22          MR. GOLDEN:  Okay.  I hope it's Page 6 because I

23 don't actually see it here.

24          THE COURT:  Yeah, the definition of the remaining

25 Bridge loan reserve?

1        MR. GOLDEN:  Yes.

2        THE COURT:  Yeah, it's Footnote 9.

3        MR. GOLDEN:  I'm in the wrong document.  Thank you,

4   Your Honor.  Footnote 9, this isn't an objection, so much as we

5   don't -- we just don't understand the words.  The debtors have

6   been very gracious, they've sent us two emails since yesterday

7   morning trying to explain it.  I'd like to have the

8   opportunity, since emails were flying back and forth last

9   night, to at a break talk to the debtors.  We just don't

10  understand the language or the intent of the language where

11  they're trying to explain how the remaining Bridge loan reserve

12  will be allocated as between senior lenders and senior

13  noteholders.

14        So, I don't know that I actually have an objection.

15  I will say we've read this footnote several times, can't

16  understand the calculations underlying it.  So maybe at a break

17  we can just raise that and I just flag that for the Court.

18        THE COURT:  Well, actually now that you mention the

19  word break, we are going to take a lunch break because I don't

20  think we're going to be done soon enough to just plow through.

21  So we'll recess now and reconvene at 2:00.  To the extent you

22  can use the break for that or other purposes --

23        MR. GOLDEN:  Yes.  And, Your Honor, just for your

24  scheduling purposes, I don't think I'll be more than another

25  10, 15 minutes at the most.

1              THE COURT:  Okay.

2              MR. GOLDEN:  Thank you.

3              THE COURT:  Thank you.  Court will stand in recess.

4         (Recess taken from 12:56 p.m. to 2:04 p.m.)

5              THE COURT:  Good afternoon.

6              Mr. Golden, I believe you had the floor.

7              MR. GOLDEN:  Thank you, Your Honor.  I hope you

8    enjoyed your lunch.

9              (Laughter)

10             THE COURT:  Well --

11             MR. GOLDEN:  Continuing on with the Aurelius Law

12   Debenture, Deutsche Bank and Wilmington Trust's objections to

13   the debtors, creditors, lenders' disclosure statement, the next

14   one is found at Page 33 of the newly revised debtors, creditors

15   committee's lenders' specific disclosure statement.  And if you

16   have that in front of you, Your Honor --

17             THE COURT:  I do --

18             MR. GOLDEN:  -- at the very top there's new

19   blackline language that states:

20             "The debtors' committee lender plan does not

21             affect the debtors' ability to settle claims or

22             causes of action that the debtors' or their

23             estates may have or are entitled to assert prior

24             to confirmation or effectiveness of the debtor

25             committee lender plan.  If the debtors' were to

1              settle any such claims or causes of action, the

2              debtors' expect that any order approving such

3              settlement would address the appropriate

4              allocation under proceeds."

5         That seems relatively straightforward.  The problem

6    we have is the debtors' committee's lender's plan sets up a

7    litigation trust into which certain litigations will be placed,

8    primarily the lender -- the leverage buyout fraudulent

9    conveyance litigations.  But this seemingly innocuous two-

10   sentence would allow for the following possibility.  Creditors

11   understand what litigation is to go into that litigation trust.

12   They understand to the extent that they are, whether they are

13   beneficiaries of that trust.  They vote in favor of the plan

14   because they believe that this is a good trust, could provide

15   additional value for the beneficiaries of the trust.

16        And low and behold after the voting deadline, the

17   debtors and the creditors committee settles a major aspect of

18   litigation that was otherwise to go into the litigation trust.

19   Now, of course, they'll come to the Court and seek approval of

20   that settlement, and as they indicate in this language, part of

21   the approval they will seek is for the Court to help them

22   determine, or for them to determine and ask the Court to rule

23   upon, where those proceeds go.

24        But should they choose to settle what might have

25   been a major piece of the litigation trust and decide not to

1  put the proceeds into the litigation trust, but rather let the

2  reorganized debtors keep it, that voter has now been -- I won't

3  say defrauded, but he's been harmed.  He voted on a plan

4  thinking major aspects of the fraudulent conveyance litigation

5  was going into the trust and he would be the beneficiary of any

6  proceeds from that litigation.  And now, despite the fact that

7  the debtors would have to seek subsequent Court approval, he

8  may not, in fact, get the proceeds of that litigation.  I think

9  as a disclosure matter it has to be explicitly set forth that

10  that eventuality could happen and a voter needs to be aware of

11  that before it casts its vote.

12          Unless you have any questions on that, Your Honor,

13  I'm going to continue on.

14          Now I'm referring to Page 4 of the revised debtors'

15  committee's lenders specific disclosure statement.  The last --

16  the next two objections will refer to this document and only

17  with respect to language that was revised last evening.

18          On Page 4 you see the -- approximately top half of

19  the page is blacklined, but I would like the Court to -- and

20  that blackline talks about the Step Two arranger settlement and

21  the backstop arrangement for the Step Two arranger settlement.

22  But the very last sentence says:

23          "Because the Step Two arrangers are providing the

24          foregoing backstop and, thus, bear the risk of

25          loss if any Step Two payee does not elect to

1              participate in this Step Two disgorgement

2              settlement, the Step Two arrangers may modify the

3              procedures for participation in the Step Two

4              disgorgement settlement at any time."

5         Now, Your Honor, I just don't know who that impacts.

6    If it only impacts potential Step Two disgorgement defendants,

7    frankly, I don't care that much.  But if it impacts the

8    obligation of the Step Two arrangers to put up the $120 million

9    and it will be there for all time, or if it affects the

10   recovery by the Step Two arrangers if they front the money for

11   other Step Two arrange -- other Step Two defendants and somehow

12   they get a bigger slice of the litigation trust, then we would

13   care.

14        So I don't think from these words that necessarily

15   this is the senior noteholders objection or need to carry this

16   particular pale of water, but it's just not clear from the

17   language that was inserted last night and, unfortunately, I

18   just haven't had an opportunity to discuss that with the

19   debtors.  I assume that's something we can get to.

20        And now I -- and so we -- and I am now done with the

21   disclosure statement and the revisions to the disclosure

22   statement.  If you -- if the Court likes, I can go on to the

23   response of statements or I can allow the debtors or the

24   committee or the lenders to respond.

25        THE COURT:  Let's deal with disclosure statement

1  first.

2        MR. GOLDEN:  Thank you.

3        MR. LANTRY:  Your Honor, first I apologize.  Our

4  list looked like it was missing four items and we just didn't

5  have a chance to talk with Mr. Golden earlier this morning as

6  this continued to move.

7        I'm going to address a number of these and some of

8  them the committee or the lenders will address.  Let me go in

9  the order.

10        First, on the settlement disclosures, Your Honor, we

11  did the settlement under mediation and I think the privileges

12  and protections that come under mediation in terms of how we

13  got there, the bits and pieces of the negotiation and the step

14  by step way in which we reached this are something that,

15  frankly, shouldn't be disclosed and is not relevant to the

16  voter.  The voter wants to know how much money am I getting,

17  the bottom line, what's the number of the settlement, not all

18  the intervening things that you got there.

19        Who cares about the intervening issues that get

20  there is probably a litigation issue and probably has to do

21  Aurelius's proposed attack on the reasonableness of the

22  settlement.  We will have to prove the reasonableness of the

23  settlement, but trying to break it down in allocable portions

24  that would attribute to this cause of action and that cause of

25  action and this party and that party, we certainly took those

1  into consideration, but it was a global settlement as they are.

2  And so I think that the only purpose of trying to

3  have this breakdown is litigation, not disclosure.  So we

4  believe that our disclosure about the overall settlement rather

5  than the bits and pieces and how we got there is all that would

6  be relevant for a disclosure statement.

7  THE COURT:  Well, having just concluded such a fight

8  in the context of a confirmation hearing which involved that

9  issue, in part, the evidentiary record in support of a global

10  settlement is, you know, in a way sausage making at its best.

11  But in the give and take of how these things work I -- I just

12  don't think I could bring myself to require that, at least for

13  purposes of disclosure.  That's my reaction.

14  MR. GOLDEN:  Your Honor, can I can just clarify one

15  point?  I don't mean to interrupt.  I didn't -- while we did

16  raise that issue in our written objection, I thought I had made

17  clear to the debtors we weren't pressing this as a disclosure

18  statement objection and, in fact, I did not speak to that issue

19  at any time this morning.

20  So I just don't know whether Mr. Lantry's under a

21  misimpression that we were still pressing that as a disclosure

22  statement objection.

23  THE COURT:  Well, if we were, we weren't anymore I

24  guess now.

25  (Laughter)

1          THE COURT:  Thank you.

2          MR. LANTRY:  Another resolution.  Thank you, Your

3  Honor.

4          IN terms of the intercompany claims settlement --

5          THE COURT:  I'm good at resolving disputes that are

6  resolved, really good.

7          (Laughter)

8          THE COURT:  Thank you.

9          MR. LANTRY:  Your Honor, the disclosure that we've

10  provided, the Exhibit C involving the intercompany claims

11  analysis to our specific disclosure statement is the very best

12  analysis that we have at this point.  We don't have a written

13  agreement like they allege.  This is as much information as we

14  promised that we were going to be giving to the examiner in

15  April.  Mr. Golden felt that there was more that was ever

16  disclosed before.  This is what we gave to the examiner and

17  this is what we're providing to the world.

18          When I compare it to the amount of disclosure that a

19  release provides -- which is a hope and a prayer depending on

20  the litigation; we have no certainty about anything -- this is

21  a whole lot more certainty relative to what's relevant to

22  voters, and so --

23          THE COURT:  Well, are the parts still moving?

24          MR. LANTRY:  Your Honor, I -- I don't think that

25  what I would say is going on is material changes.  No.  It's

1    fine-tuning.  But I -- I go to what they want it for.  In other

2    words, we stand by this analysis and we'll certainly be proving

3    it up when we ask Your Honor to prove the intercompany

4    settlement.

5           What I think they're trying to do is lock us down in

6    a written signed agreement so that when they do discovery and

7    they say, look.  We just found something in our discovery

8    that's slightly inconsistent with what you signed, gotchya.  I

9    think that's what it is.  I don't think it's what's the

10   division for purposes of voting constituents.  I don't think

11   that's it.  They want to lock it down for another purpose.

12          And so I question for, again, the voter if the

13   information that we provided in Exhibit R and the ultimate

14   results of that is anything more than is necessary.

15          Your Honor, I'm going to skip a few so that I can

16   finish up and then -- and come back.  I think regarding the

17   examiner's report the committee will want to talk about that.

18          On Number 5 on our list, which was actually

19   something that was addressed a little bit later by Mr. Golden,

20   what you have approved in your original order giving the

21   committee standing to pursue the LBO-related causes of action

22   and what we ask you to prove in the additional committee

23   standing to pursue various preferences is something that

24   requires us to come to you to get approval of any settlement.

25          And we anticipate that if there are still four

1    competing plans out there, which would use the settlement

2    proceeds from, say, an LBO-related cause of action differently

3    or a preference cause of action differently, be it -- depending

4    on which plan is approved, it's wisest for you to probably

5    decide that you'll figure out where those proceeds go when you

6    figure out which plan is being confirmed.  But for each of the

7    different plan proponents to come up and commit that if there's

8    any settlement between now and then for purposes of disclosure

9    to the voting constituency it's going here and here and here

10   seems premature.  That's usually not what a disclosure

11   statement does.

12          So I don't think that there is any need to somehow

13   warn the voters that you're not going to tend to the right

14   thing in how you approve the settlement and how the parties

15   fight over the use of the proceeds.  So I don't think we need

16   to have any more disclosure than what we provided.

17          Your Honor, I'll leave the issue of the swap claim

18   to the lenders.

19          On the issue of the Morgan Stanley fact that there

20   was a disconnect between what was in the disclosure statement

21   and the plan, we will match what we put in the disclosure

22   statement and the plan, so that issue can be resolved.

23          Your Honor, over the lunch hour I believe that we

24   had a fair amount of discourse between our financial advisors

25   and those of the lenders regarding the bridge loan reserve.  I

1    don't know if that was satisfactory.  The dialogue will

2    undoubtedly continue.  We're happy to be forthcoming about

3    that.   So I think that will be resolved.

4          And this last issue that was just raised about the

5    Step Two disgorgement settlement and the lack of clarity in Mr.

6    Golden's mind, we'll keep dialoging about that.  So, again, I

7    don't think we need a ruling on that.

8          THE COURT:  Well, give me some better idea of how

9    and when that discussion will occur.

10          MR. LANTRY:  Certainly before we close tonight, Your

11   Honor, we hope you, you know, lock some real deadlines down and

12   make -- make us get this all finished, but maybe it would be

13   better to wait on that or --

14          THE COURT:  All right.

15          MR. LANTRY:  So, Your Honor, with that, let me turn

16   the microphone over to the committee in terms of the examiner's

17   report and then a few more items from the lenders.

18          THE COURT:  Okay.

19          MR. LEMAY:  Good afternoon, Your Honor.  David Lemay

20   again for the creditors' committee.

21          By my scorecard I think I have one topic that I'm

22   meant to address and another one that I want to touch on just

23   in a sentence or two.

24          The one that I want to address is the suggestion

25   that's put forward by counsel for Aurelius that references to

1   the examiner's report be excluded from the disclosure statement

2   altogether and that there be, in effect, a gag order or a bar

3   against any reference to the examiner's report.

4           I do recall that when we were first together talking

5   about the procedures that would be used for the disclosure

6   statements and the disclosure hearing the Court, quite

7   properly, did enjoin all of the plan proponents, not to waste

8   hundreds of pages glossing and flagging and flagellating those

9   parts of the examiner's reports that were most favorable to

10  them.  As I had said this morning, it is something that's got

11  someone for everybody.

12          And I think in the main, really, almost without

13  exception, maybe without exception, the plan proponents, all of

14  them, including for that matter Aurelius, have been fairly

15  attentive to that -- to that injunction and people have not

16  included long, windy glosses on the examiner's report.

17          That, to me, is quite a different proposition from

18  putting in place a flat decree that says it's off limits.

19  That, to me, is a rather bizarre proposition.  The examiner's

20  report is a historical fact.  The examiner was retained by

21  order of the Court and did deliver the report.  The report's

22  annexed.

23          One of the things that Aurelius says in its

24  responsive statement in -- at quite a level of rhetorical pitch

25  and I'll come back to that in a moment, but at a fairly high

1    level of rhetorical pitch they say:

2              "Despite our repeated requests" -- I'm quoting

3              now -- "and notwithstanding the committee's

4              subsequent unpersuasive responsive statement, the

5              committee has failed to provide a substantive

6              rationale for endorsing the debtor LBO committee

7              lender plan, especially in light of the

8              examiner's report."

9         Well, so we're being taken to task for not having

10   ostensibly provided a rationale for why the committee is

11   supporting this settlement.

12        But from the committee's point of view, as we say in

13   our responsive statement, one of the reasons that we are

14   supporting this settlement -- there are others -- is that

15   litigation is a very uncertain thing and our responsive

16   statement says there are a lot of different outcomes that could

17   happen in litigation.

18        Mr. Golden had mentioned that he was concerned that

19   if we referred to the six scenarios run by the examiner, that

20   would imply that there were only six possible scenarios and

21   that there was only a one in six chance of winning.

22        Well, that's not true and we -- we certainly go to pains

23   to make sure that the world knows that isn't true.  Our

24   responsive statement says there are a wide range of potential

25   outcomes with respect to the LBO litigation.  It is a fact that

1  the examiner wrote -- did run six scenarios.  It is a fact, as

2  Mr. Golden conceded, that in five of those six scenarios the

3  recovery to unsecured creditors is less advantageous than under

4  the settlement.  It is a fact that the committee did not tell

5  the examiner which six scenarios to run, but he ran them.

6           And so the committee, in the course of considering

7  what to do and in the course of deciding what to do, took into

8  account, among all the other things that it took into account

9  and there were many, the examiner's conclusions and the

10 examiner's report and the examiner's scenarios.  That's fair.

11 That's what a committee's supposed to do.

12          And now we wish to tell creditors that we've done

13 that and that we've done that by reference to the examiner's

14 report.  I wouldn't have thought that as surprising or a

15 shocking proposition.  In fact, I would have thought that we

16 would have been subject to a lot of criticism had we not done

17 that.  But now we're being told on the one hand that we don't

18 give a rationale for why we support the settlement, and yet on

19 the other hand nobody can talk about the examiner's report.

20 And I would like to submit, Your Honor, that that's just a --

21 that that's just a preposterous state of affairs.  I mean, it

22 can't be that way.

23          And so what I would suggest is that the -- rule that

24 I would advocate to the Court would be the rule that Your Honor

25 almost, you know, in effect, kind of led us to a couple of

1  hearings ago.  Please let no one go on ad infinitum about the

2  examiner's report.  Please let no one spend twenty and thirty

3  pages picking out their favorite bits, which I don't think

4  anyone has done and I don't think Aurelius has done that

5  either.

6         But on the other hand, please don't issue a gag or -

7  - a gag order or a prohibition against adverting to the

8  examiner's report.  It makes -- it makes us very hard -- it

9  makes it very hard for the committee to let the voting world

10 know why it's made the decisions it had -- it has made,

11 decisions for which it's been fiercely criticized; that is, the

12 criticisms here are among the most stark that I've seen in my -

13 - in my career.  So it's -- it -- people are asking, why did

14 you make this decision and we need to be able to respond.

15        So on that issue, Your Honor, what I would suggest

16 is that the Court not take Mr. Golden up on his gag order

17 suggestion, but rather that the parties be free to use the

18 examiner's report as they have in -- in a measured way.

19        THE COURT:  Well, what if except in the joint

20 disclosure statement, which contains but a very brief

21 description of the report, reference or arguments not be made

22 with respect to it in the specific disclosure statement, but

23 permitted in the responsive statements.

24        MR. LEMAY:  You're saying how would that be.

25        THE COURT:  How would that be?

1    MR. LEMAY:  How would that be?  I'm going to turn to

2    my colleagues.

3         (Pause)

4    MR. LEMAY:  Your Honor, there is a section in the

5    joint debtor lender committee specific disclosure statement

6    which goes to the reasonableness of the settlement.  It does

7    not consume a lot of pages.  It consumes several pages.  I

8    guess I'm perplexed at why that isn't a relevant thing for

9    people to know.  I mean, the committee and the other proponents

10   are being put to it to explain why the settlement is a good

11   idea, and I would have thought that that would have been

12   reasonably fair game for a specific disclosure statement.

13        This could be, I suppose, bootlegged into the

14   responsive statements.  It would have the effect of making

15   those longer and I have to say from the perspective of my

16   hypothetical Mr. Smith or Mr. Jones -- I forget what I called

17   them this morning, my credit manager, my poor guy who's just

18   gotten hit with 400 pieces -- 400 pages of paper -- that the

19   shorter we can keep the responsive statements, I think the

20   fairer we will have been to that hypothetical voter.

21        Again, have I been -- have I been responsive, Your

22   Honor?  I --

23        THE COURT:  Yeah.  You've told me --

24        MR. LEMAY:  -- I feel like I talked around --

25        THE COURT:  -- there's no net benefit to making that

1  change, I think.  So --

2          MR. LEMAY:  That's a much better way of saying it

3  than I did.

4          (Laughter)

5          THE COURT:  Well, it's shorter anyway.

6          You may proceed.

7          MR. LEMAY:  The other thing I wanted to touch on,

8  Your Honor, very briefly -- and this is -- this is very, very

9  brief -- this issue of what happens with proceeds of settled

10  avoidance actions pre-confirmation.

11          The way our plan is set up, and Mr. Lantry said it

12  correctly, the disposition of those proceeds is going to be as

13  ordered by the Court.  Now I gather that Mr. Golden and his

14  client have a problem with that.  But, honestly, I think there

15  shouldn't be any problem with that, and let me go back again to

16  Mr. Smith or Mr. Jones or whatever it is.  He's probably being

17  told all he needs to be told, which is that the proceeds of

18  those actions, should they be settled before the plan is

19  confirmed, will go where -- in the direction that the Court,

20  having jurisdiction over this case, sends them.  I don't -- I

21  don't see a disclosure issue there, Your Honor.

22          And so that's my peace.

23          THE COURT:  Thank you.

24          MR. LEMAY:  Thank you, Your Honor.

25          MR. JOHNSTON:  Thank you, Your Honor.  Three points

1  very briefly.

2          The first is just to go with Mr. Lemay's sentiments

3  about the examiner's report.  We agree that excising reference

4  to the examiner report wouldn't make any sense in the context

5  of these cases and these plans.  I mean, frankly, it would be

6  to deny history.  What's happened here is a great deal of time

7  and effort and money was spent producing the examiner's report

8  and the examiner's report and his conclusions and opinions have

9  colored everything that have come since, most notably the

10  debtor committee lender plan which was the product of a

11  mediation at which you can be sure the examiner's report was

12  discussed and thoroughly discussed.

13          And we fully believe that the examiner's conclusions

14  support the deal that we cut, and to just wipe it off the

15  record I don't think would make sense.

16          Second point goes with respect to the argument about

17  allocation of enterprise value and the intercompany claim

18  settlement.  I would note that, you know, valuation issues

19  typically are quintessential confirmation issues as I know Your

20  Honor knows quite well.  And allocation of value goes hand in

21  hand with that.  I think when you take that perspective and

22  then you look at the specific disclosure statement and the

23  general disclosure statement here, you have far more disclosure

24  with respect to valuation and allocation issues than you would

25  have in the vast majority of other cases out there.

1           With respect to valuation you have the Elezzard

2    (phonetic) analysis that's attached to the general disclosure

3    statement that runs five or six pages, and then with respect to

4    allocation you have the Exhibit C that Mr. Lantry referred to

5    that will be attached to our specific disclosure statement

6    which runs, you know, five full pages, single-spaced, going

7    through all of the assumptions that underlie the intercompany

8    claims' settlement.

9           Now is that document, you know, drafted and signed?

10   No, it's not.  But you can bet that these assumptions on

11   Exhibit C are -- underlie what the intercompany claims'

12   settlement will be.  They produce the allocation of value

13   that's in the disclosure statement now.  That gives creditors

14   ample opportunity to understand how the allocation is done and

15   creditors, of course, will have the chance to challenge those

16   allocations and challenge valuation as typically happens in the

17   context of confirmation.

18          Last point was with respect to the disclosure on the

19   swap claim that Mr. Golden raised and he pointed to two

20   footnotes in the recently revised specific disclosure

21   statement:  Footnote 18, which was added in response to the

22   Aurelius and Aurelius objection.  This is at Page 10 where

23   there's language added that says that holders of the swap claim

24   will not receive post-petition interest until the guarantor

25   debtors are determined to be solvent on a collective basis.

1          That -- that is an accurate statement.  That is --

2    it was never intended that somehow the swap claim would be paid

3    more than in full and to the extent that there's not a solvent

4    debtor down there, then the swap claim's not going to get any

5    post-petition interest.

6          The other footnote that Mr. Golden referred to has

7    been in the document from the beginning and that is -- it looks

8    like a new footnote, 34, but if -- if you look on Page 17, if

9    you look at the text immediately above it, it -- it's just --

10   it was stricken and then added again, probably some quirk of a

11   redlining program.

12         And all that that says is that the -- as part of the

13   settlement, the guarantee claims, as part and parcel of

14   allowance of the senior loan claims in general are going to be

15   allowed in the principal amount, plus any prepetition interest

16   and fees and anything else that would be due and owing under

17   the contract.  And if post-petition interest is allowable, i.e.

18   if the guarantor debtors are solvent, then that gets allowed as

19   well.

20         So I don't think there's an inconsistency there.

21         THE COURT:  Well -- but even assuming without

22   deciding that -- Mr. Golden stuck up his hand a little late on

23   this one -- what's the problem with disclosing an amount?

24         MR. JOHNSTON:  Oh, I'm -- I'm sorry.  There is an

25   amount disclosed.  If you look at the box -- actually, you have

1  to turn back one page --

2              THE COURT:  Okay.

3              MR. JOHNSTON:  -- where it says, Senior Guarantee

4  claims, that 8.722 is the aggregate amount of the guarantee

5  claims.  Now that is a principal amount.  There's rounding

6  error in terms of probably some accrued prepetition interest

7  that didn't get paid in fees, but that is -- that's the guts of

8  the claim right there.

9              THE COURT:  Okay.  And where does it say it's a

10 principal amount?

11             MR. JOHNSTON:  I believe if we look at the clean

12 version of that it will say that.  The redlining has cut off

13 some stuff.  Let me look at my clean document.

14             THE COURT:  Okay.

15             (Pause)

16             MR. JOHNSTON:  Which I don't -- anybody have the

17 clean document?  It doesn't say that?

18             UNIDENTIFIED:  Huh-huh.

19             MR. JOHNSTON:  Yeah.  I -- we'll specify that.  It

20 should say that.

21             THE COURT:  Okay.

22             MR. JOHNSTON:  And that's a -- that's a principal

23 amount.

24             THE COURT:  All right.

25             MR. JOHNSTON:  And that's all I have, Your Honor.

1              THE COURT:  All right.

2              MR. JOHNSTON:  Thank you.

3              THE COURT:  Thank you.

4              MR. FLASCHAM:  Your Honor, Evan Flascham for Step

5    One lenders.

6              Briefly address the point that you pondered which is

7    why not move the examiner's report to the responsive

8    statements, wouldn't that be just a net push.  It would be net

9    negative for the Step One lenders.  Our entire plan is premised

10   on the examiner's report.  We would very much like our main

11   disclosure statement to reflect that.  But I have a solution,

12   not just a problem.

13             Let's just eliminate the responsive statements.

14   Everyone in this room, except maybe the op co trade creditors

15   knows how they're voting.  Let's not kid ourselves.  And

16   everyone knows what everyone else's objection and criticisms of

17   each other's plans are.  Let's just go straight to the

18   disclosure statements and responsive statements have done their

19   purpose.  Everyone's read them and addressed them to the extent

20   they have and you'll resolve the rest of it.

21             Thank you, Your Honor.

22             THE COURT:  Well, it's a -- it's really a -- an

23   alluring suggestion, but --

24             (Laughter)

25             THE COURT:  -- not which -- not one which I think I

1  can take based upon what the bankruptcy code requires and

2  unless, I guess as a matter of evidence, we had an evaluation

3  of every voter.  But I don't have that anyway and so I can't.

4  But it's something I've been tempted to decide before, but just

5  I don't think can do the way the process is designed to work

6  and the standard that has to be met for approval of a

7  disclosure statement.

8           Yes, Mr. Golden.

9           MR. GOLDEN:  Your Honor, before I turn to the

10  responsive statements, I only have two -- two sentences of

11  rebuttal on what we just heard.

12          I misspoke a little earlier when I said that the

13  examiner's report ran six scenarios.  In fact, they -- the

14  examiner's report ran eight scenarios.  And one of the reasons

15  why we think -- we took the position we did is that although

16  they ran those eight scenarios, they didn't probability-weight

17  any of them.  They didn't say one is more likely than the

18  other.  You just can't tell from the examiner's report.

19          And so we think when the committee and the lenders

20  and the debtors make reference to the six scenarios that were

21  run and the outcomes it's just misleading.  I'm not going to

22  say anymore.

23          With respect to the intercompany claim analysis and

24  whether they should have to attach the actual settlement or

25  not, they make a lot about the new exhibit they just attached,

1 the five pages which is their current iteration of their

2 intercompany claim analysis.

3         Your Honor, I commend you to read this document,

4 particularly when you have trouble sleeping because it is,

5 quite honestly --

6         THE COURT:  Well, that could be any given night at

7 this point, Mr. Golden.

8         (Laughter)

9         MR. GOLDEN:  Right.  Incomprehensible and I don't

10 believe anybody of any real intelligence is going to be able to

11 read that document and then decide, oh, I now see how they got

12 to the allocation of the distributable enterprise valuation.

13 So if they think attaching that five-page exhibit cures my

14 objection, we disagree.  But I'm not going to say anymore.

15         So if the Court is ready, unless the Court has any

16 questions, I'm prepared to turn to the responsive statements.

17         THE COURT:  Go ahead.

18         MR. GOLDEN:  Thank you.

19         Your Honor, I'll acknowledge up from that it has

20 appeared from the colloquy in the last few hearings that

21 everyone has agreed that the responsive statements, unlike the

22 traditional disclosure statements, are to be more -- more in

23 the nature of an advocate's piece.

24         THE COURT:  And I don't think anyone needed

25 encouragement to get there either.

1              MR. GOLDEN:  I think you're absolutely right.

2              And so we have attempted in reviewing them to only

3    comment, not on the rhetoric, not on the spirit, but to the

4    extent that we think things are being said that are just plain

5    wrong or plain not supportable.

6              So I'll turn first to the debtors' responsive

7    statement.  Do you have the -- in front of you the latest

8    version?  I don't know how you would know whether you had the

9    latest version.

10             THE COURT:  Precisely.

11             MR. GOLDEN:  I'm looking at the one that on the

12   bottom left-hand corner of the -- of the first page it says,

13   "Version 2."

14             MR. LANTRY:  Your Honor, again these were circulated

15   last night.  If I could approach and I'll give you the three

16   redlines that were circulated last night of the plan proponents

17   that we represent.

18             THE COURT:  Okay.

19             MR. GOLDEN:  Thank you.

20             THE COURT:  Do you have a copy for my law clerk?

21             MR. LANTRY:  Just one second, Your Honor, and I'll -

22   -

23             THE COURT:  All right.

24             (Pause)

25             MR. GOLDEN:  Thank you, Your Honor.

1              So I would refer Your Honor to Page 3 of the

2    debtors' revised responsive statement, in the middle where it's

3    describing the noteholder plan.  And in about the middle of

4    that paragraph it reads:

5                   "Moreover, due to the size of the senior

6                   noteholder claims in relation to the total debt

7                   outstanding against the debtors and the

8                   distributable value available to such

9                   debt holders, under virtually every plausible

10                  scenario contemplated by the proposed plans of

11                  reorganization, including the noteholder plan,

12                  the holders of senior noteholder claims and,

13                  therefore, the proponents of the noteholder plan

14                  will be eligible to receive at a most a

15                  comparatively small portion of the new common

16                  stock in reorganized Tribune."

17             Actually, that contains an error because under the

18   debtors' plan noteholders don't get stock.  They get cash.  So

19   that's a factual issue with respect to the reference to the

20   debtors' plan.

21             But that's not really my point.  My point is in the

22   next sentence:

23                  "As a result, their economic" -- 'their' meaning

24                  the noteholders -- "interests in reorganized

25                  debtors are disproportionate to the degree of

1                control the noteholder plan proponents seek to

2                exert over the fate of the reorganized debtors."

3            So I assume, without saying it, the fact that in our

4    noteholder plan our distribution trustee has the right to

5    appoint two directors of seven for the reorganized debtors,

6    that somehow that is going to affect the fate of the

7    reorganized debtors.  I don't think that's right.  I don't

8    think that statement can be supported.  I know it's an

9    advocate's piece, but it has to be grounded in some factual

10   basis.

11            Your Honor, at Page 3, same page, in describing the

12   proponents of the noteholder plan, the debtors say, "The

13   principal proponent of the noteholder plan is Aurelius," which

14   is a hedge fund.  Go down to the description of the bridge

15   lender plan.  "The bridge lender plan has been proposed by

16   three hedge funds."  Go down to the description of the Step One

17   lender plan.  "The Step One lender plan has been proposed by a

18   group of hedge funds."  There's some implication that it's bad

19   in this world to be a hedge fund.

20            THE COURT:  They wouldn't be the first to suggest

21   that, Mr. Golden.

22            MR. GOLDEN:  You're right.  You're --

23            (Laughter)

24            MR. GOLDEN:  You're right, Your Honor.  But what

25   they don't disclose is two of their plan proponents are hedge

1  funds.  Somehow they didn't think that was significant in

2  describing their plan proponents, the identity of their plan

3  proponents, only in the identity of the noteholders, bridge

4  lender and Step One lender plan proponents.

5          THE COURT:  Well, what if you were to say that in

6  your piece?

7          MR. GOLDEN:  Your Honor, we wouldn't say that

8  because we don't think there's anything inherently evil about

9  being a hedge fund.

10          (Laughter)

11          MR. GOLDEN:  You --

12          THE COURT:  There -- there's those that share that

13  view as well.

14          MR. GOLDEN:  Yeah.  Thanks.  The trick is to find

15  out what your view is.

16          (Laughter)

17          MR. GOLDEN:  Your Honor, that's all I have on the

18  debtors' responsive statement.  I want to turn to the

19  committee's responsive statement, and here I think I only have

20  one point I want to make.

21          And it is on Page 6.  It's in the carry-over

22  paragraph at the top about two -- half-way down with the

23  sentence starting:

24          "Because Aurelius has plainly stated its strong

25          belief that the LBO-related causes of action will

1                    assuredly yield very large recoveries, the low

2                    amounts it is offering for other parent claims

3                    and other guarantor debtor claims suggest that it

4                    may be exploiting the predicament of other

5                    unsecured creditors who do not have the

6                    resources, risk tolerance, or desire to wait

7                    years for an uncertain and risk fraud recovery."

8            This is the first time in thirty years of practice I

9   have heard someone object that a plan proponent has provided a

10  cash-out option to creditors.  We're not making them take the

11  cash-out option.  We're telling them we believe you shouldn't

12  take the cash-out option because you're going to get very large

13  recoveries, but if you want it, we'll make it available to you

14  at the rate of fifteen cents for the parent company creditors

15  and twenty-five cents for the subsidiary creditors.

16          Instead of just saying thank you because the

17  committee is supposed to be protective of the interests of

18  unsecured creditors, they're attacking us that we've exploited

19  -- somehow exploited that.  I think that language is

20  inappropriate and should be struck.

21          Turning, Your Honor, to the JPM, Oaktree, Angelo

22  Gordon revised responsive statement, which I think you may now

23  have in front of you.

24          THE COURT:  I do.

25          MR. GOLDEN:  And under the category of hyperbole

1  bordering on the sublime, I want to make -- point you to three

2  citations.  All of them are on -- the first two are on Page 3.

3  　　　　　In the second full paragraph, second sentence -- and

4  you need to listen carefully for the word "may" because it's

5  sprinkled throughout.

6  　　　　　"The contemplated litigation may take five years

7  　　　　　or longer, and may cost tens if not hundreds of

8  　　　　　millions of dollars.  In the meantime a huge

9  　　　　　portion of Tribune's enterprise value will not be

10 　　　　　distributed to the senior lenders or anyone else.

11 　　　　　The ability of Tribune to operate its business

12 　　　　　and raise new capital may be impaired and

13 　　　　　Tribune's interactions with the FCC may be

14 　　　　　complicated."

15 　　　　　And then turning at the bottom:

16 　　　　　"Moreover, the very fact that fifty percent or

17 　　　　　more of the outstanding shares of reorganized

18 　　　　　Tribune will be held in reserve may substantially

19 　　　　　depress the market value of the new common stock,

20 　　　　　thereby further harming creditors.  At the same

21 　　　　　time, distribution of trust holding all of the

22 　　　　　reserve value which will be controlled by the

23 　　　　　noteholder plan proponents would be entitled to

24 　　　　　appoint seven members of the board of directors

25 　　　　　and vote a majority of the outstanding shares of

1          reorganized Tribune."

2          That last sentence they recognize is incorrect.  The

3    distribution trust does not have the right to vote any shares,

4    much less a majority of the outstanding shares and they've --

5    they've indicated they are going to strike that and put a

6    period right after Tribune.

7          But just continuing on:

8          "This gives an equity stake with no -- this gives

9          an entity with no direct economic stake in the

10         enterprise, albeit one charged with fiduciary

11         duties to the holders of interest in the

12         distribution trust, substantial impact on the

13         operations of Tribune for the foreseeable

14         future."

15         Your Honor, simply using the word "may" does not

16    excuse a plan proponent from listing a bunch of horribles that

17    they may think happens.  Why don't they just say that as a

18    result of the noteholder plan it may cause the next pandemic to

19    occur in the United States.  It -- it's ludicrous that they can

20    list these parade of horrors and horribles and say, well, it

21    may happen to suggest that it's okay that they can say anything

22    that they please.  We think that that's inappropriate, unless

23    they can actually establish to the Court's satisfaction that

24    because of the noteholder plan, those horribles may, in fact,

25    actually happen.

1          And with the agreement by the -- JPM, Oaktree and

2     Angelo to excise the language of voting the majority of the

3     stock, we have no further objections with respect to the

4     responsive statement.

5               THE COURT:  Thank you.

6               MR. LANTRY:  Your Honor, with respect to the two

7     comments that Aurelius had regarding the debtors' responsive

8     statement, we consider both of these to be self-evidently petty

9     and, therefore, have no comment.

10              MR. LEMAY:  May I proceed, Your Honor?

11              THE COURT:  You may.

12              MR. LEMAY:  Your Honor, David Lemay again from

13    Chadbourne & Parke for the creditors committee.  Mr. Golden

14    raised one issue with respect to the committee's responsive

15    statement and that issue relates to the -- what's become known

16    as the put option.

17         And by way of background I guess I want to go back

18    to my hypothetical Mr. Smith or Mr. Jones or whatever I was

19    calling him this morning, my credit manager, trade creditor

20    and, of course, you know, he's got in front of him the plan

21    that the committee supports and that plan says that if he's a

22    subsidiary trade creditor he's going to be paid 100 cents on

23    the dollar up to a cap of 150 million, a cap which the debtors

24    and the committee believe will not be hit.  And if he's a

25    parent trade creditor he'll get a minimum of thirty-two cents

1  and change plus an interest from the litigation trust, or else

2  he can opt for a slightly higher all cash distribution and go

3  away.

4         The bondholder plan -- and the bondholders, I should

5  say, have made very clear their attempt -- their intent to make

6  sure that that plan never gets confirmed.  They've made it very

7  clear that they don't believe it's confirmable and will do

8  everything they can to make that plan disappear.

9         In return, they offer their own plan which is, we'll

10 start some litigation or there will be some litigation and at

11 the end of the litigation, be it soon or be it late, you'll get

12 what you get.

13        My Mr. Smith or Mr. Jones says, well, that's not so

14 good for me.  I'm a small company and I really don't have four

15 years to wait around.  I'm not a professional investor.  I --

16 you'll note, Your Honor, I do not use the word "hedge fund."  I

17 try never to.  Professional investor, which I think is neutral,

18 describes I think the situation.  People ought to use it more.

19 But I'm not a professional investor.  I don't have the deep

20 pockets.  I don't have the risk tolerance to wait around.  What

21 are you going to do for me.

22        And Aurelius's answer to that or the bondholder

23 proponent's answer to that is, well, if you vote for our plan -

24 - only if you vote for our plan, if your class votes for our

25 plan and accepts it and if our plan is confirmed, we'll give

1  you the cash-out option.

2           And so Mr. Golden says how -- how awful of us to be

3  anything other than grateful for that cash-out option.  But

4  one's got to consider that against the backdrop of the fact

5  that there is another plan on the table, a plan which from Mr.

6  Smith or Mr. Jones's point of view is demonstrably better and

7  which yields better results to him, and what Mr. Golden isn't

8  telling you is that he's going to do everything in his power,

9  which his power is -- he's a very formidable advocate -- to

10  make sure that that plan never gets confirmed.

11           Therefore, we say in our responsive statement that

12  we think that this is a bit -- this is exploitive.  It's -- it

13  takes advantage, in effect, of, you know, what I would call the

14  pawns or the hostages in this situation, the people who are not

15  professional investors, the people who did not knowingly buy

16  into a bankruptcy case, the people who are caught here.

17           And, thus, that statement is just meant to say that

18  we think that because Aurelius thinks that the lawsuit is worth

19  a whole lot of money, or the lawsuits are worth a whole lot of

20  money, there is -- there is something passing strange about

21  them flipping fifteen or twenty-five cents to my poor Mr. Smith

22  or poor Mr. Jones as his go-away in a circumstance where

23  there's another plan on the table, namely ours, that we think

24  is better.

25           So that's really our point in a nutshell.  I just

1    wanted, though, while I had the podium, Your Honor, to say that

2    the more I think of it -- and I know Your Honor is -- has had

3    some thoughts on this -- I really do feel that these responsive

4    statements are quite useful vehicles.  I think for Mr. Smith

5    and Mr. Jones and their like, that is -- they are probably the

6    single most important piece of paper in the case.  They're

7    short.  They're all pretty well written.  I won't take pride of

8    authorship for ours, but our opponents are well-written and

9    each of them conveys in its own way that proponent's overall

10   view of the case.

11          And so if there is any piece of paper that shouldn't

12   get thrown out or shouldn't be -- shouldn't be deleted from the

13   package I would urge that it be that one.

14          Thank you, Your Honor.

15          THE COURT:  And yet let me ask, do you think

16   Congress contemplated when it passed the code that that should

17   be the most important document?

18          MR. LEMAY:  I'm not sure Congress, when it passed

19   the code, contemplated the post-2005 world where there would be

20   four plans on the table.  You know, clearly the code

21   contemplates that there might be competing plans, but the four-

22   ring circus that we find ourselves with, which is exactly what

23   the bankruptcy code contemplates once exclusivity expires, I

24   don't think is what Congress had before it.

25          And so I think a lot of the complication and a lot

1   of the sort of moving parts derive not really from the nature

2   of these pieces of paper themselves, but from the fact that

3   there are more plans in this case than I have ever seen in my

4   life.

5           THE COURT:  Trying to cheer me up?

6           (Laughter)

7           MR. LEMAY:  No, but if it has that effect, I'm ever

8   so grateful.

9           (Laughter)

10          MR. LEMAY:  Thank you, Your Honor.

11          MR. JOHNSTON:  Your Honor, with respect to the

12  senior lender responsive statement, first, for the record, I

13  don't think there's anything wrong with being a hedge fund or a

14  professional investor, as Mr. Lemay put it.

15          And I do think that the situation we find ourself

16  (sic) in, while you can never define congressional intent flows

17  directly from the amendments of the code in 2006.  You put a

18  hard stop on exclusivity in a giant case like this one, the

19  odds are you may find yourself in a position like this, and I

20  think that the disclosure rules need to be looked at through a

21  slightly different prism in light of those changes.  When you

22  have four plans it doesn't make a whole lot of sense to have

23  one giant disclosure statement where, you know, it says, Party

24  X believes this, Party Y believes that, Party Z thinks this.

25          Here you have a nice vehicle where four different

1   sets of competing plans and proponents of competing plans are

2   able to express their view of the world, and it certainly gets

3   the information out there, albeit in a cumbersome way, but I'm

4   not sure that there's a better way to do it at this point.

5          THE COURT:  Well, I'm not sure there is either and

6   I'm disappointed I can't -- I can't reach out and grab it

7   myself.  That's been an enormous source of frustration for me

8   and it's not a criticism of the parties, but simply an

9   unwelcome meeting with my own limitations, I think.

10          MR. JOHNSTON:  I sense that frustration, Your Honor,

11   and, you know, for you to go so far as to suggest that you may

12   take a pen to paper and rewrite this stuff is, I think,

13   probably emblematic of your frustration.  But --

14          THE COURT:  Yeah.  The threat doesn't seem to have

15   gotten me very far, though.

16          (Laughter)

17          MR. JOHNSTON:  Under the limitations in which we

18   find ourself (sic), I think that the parties have -- have done

19   the best they can to get their views out there and considered

20   as a whole.  Creditors will have the information they need to

21   make the decisions they have to make.

22          THE COURT:  Well, I think with respect to the latter

23   point you're correct.  The information will be there.  It's

24   just -- and I know I've said this before -- it's just the

25   enormity of the task that the reader has to center in on that

1  which, depending on the prospective voter, considers the most

2  important.  There's just so much to wade through.  I mean, I

3  look at the group out here, which I'm sure found it for

4  themselves a challenging task, let alone, you know, the credit

5  manager or the other typical investor if you want to use

6  bankruptcy code terminology.  If there is such one here, I

7  don't know.  But it's a difficult exercise.

8          Okay.

9          MR. JOHNSTON:  Going back to the specific criticism

10 of our responsive statement and the statements that Mr. Golden

11 criticized as being, you know, a parade of horribles prefaced

12 by the word "may," what -- our first draft of the statement had

13 the word "will" before most of those statements because we

14 believe that these things will occur.  We believe that the plan

15 that Aurelius and its co-proponents are putting forward is not

16 a risk-free exercise.  It's something that runs a very real

17 risk of damaging this enterprise and destroying value for all

18 concerned.

19          So -- but in response to a criticism that we

20 couldn't definitively state that that would occur, which I

21 readily concede, we prefaced this by saying "may."  Yes.  Look,

22 the litigation may take five years or longer.  You can ask

23 Judge Gerber in the Adelphia case whether that's a possibility;

24 that it absolutely -- reorganized Tribune's ability to raise

25 capital may be impaired when you take into account that up to

1   sixty-five percent of the equity in the company is being held

2   off somewhere, held in reserve.  That's a material factor that

3   any lender or any financier is going to take into account when

4   it's looking to lend money or provide equity capital to this

5   enterprise going forward.

6          FCC issues may be complicated.  You bet.  Sixty-five

7   percent of the outstanding ownership of this company

8   undetermined for a period of time going forward, that's

9   something the FCC may care about.

10          The fact that a bunch of shares are not going to be

11  floated out into the market on their -- on the effective date

12  and instead are going to be held back in the form of a warrant,

13  is that going to depress the market value for the common stock?

14  We think it will.  It certainly might.

15          So we prefaced all those with the word "may."  We

16  can change that to say that the senior lender proponents

17  believe that this will occur.  I mean, I think it's -- you

18  know, six in one, half a dozen of the other.  These are our

19  objections to the plan and we think it's a legitimate beef that

20  we have and we want to get the point out that the plan that's

21  being presented is, essentially, kick the can down the road,

22  risk-free exercise really isn't one.

23          And with respect to the last changed language at the

24  top of Page 4 where it says the distribution trust, because it

25  has two of the seven members of the board, would have a

1  substantial impact on the operations of Tribune, we can say

2  that and change that to say substantial influence over.  I

3  don't think anybody would dispute that an entity with two of

4  the seven members of the board of directors is going to have

5  substantial influence on that organization.

6          THE COURT:  Well, that would be the purpose of it, I

7  suppose.

8          MR. JOHNSTON:  I think so.

9          That's all I have, Your Honor.

10         Thank you.

11         MR. LANTRY:  We are nearly done with the chart, Your

12 Honor, and hopefully --

13         THE COURT:  And so --

14         MR. LANTRY:  -- the objections.

15         THE COURT:  -- and in light of that -- I hesitate to

16 ask you to pause once more.  I have a question for Mr. Golden.

17         MR. GOLDEN:  Yes, sir.

18         THE COURT:  What -- what standard am I to employ in

19 resolving the objections that you've made to the responsive

20 statements?

21         MR. GOLDEN:  Common sense.  I don't think there's a

22 standard articulated in any bankruptcy code, rules, case law.

23 You've already noted that these documents now referred to as

24 responsive statements are something that we, essentially, made

25 up in this courtroom.

1          So I think, Your Honor, one of common sense.  I

2    don't know that I could give you a better bright line than

3    that.  You've obviously had years of experience adjudicating

4    and presiding over Chapter 11 cases.  You've seen disclosure

5    statements in all kinds of stripes and form.  I think you know

6    probably better than most, probably the best determiner in this

7    courtroom when someone is going over the line or not in trying

8    to scare a potential creditor into making or not making a vote

9    for a particular plan.

10          So, Your Honor, we would be happy for the Court to

11    exercise its best judgment under a common sense point of view

12    in making those determinations.

13          THE COURT:  See, here's my -- my concern, and that

14    is these -- these -- I have approved more recently than ever

15    statements like this to accompany the disclosure statement

16    because, at least until now, it was the best way under the

17    circumstances, I felt, at the suggestion of the parties to get

18    -- to get through the disclosure process in a way that

19    permitted the varying views to be expressed.

20          And yet these are clearly advocacy pieces, and so

21    then I say, should the Court, on the one hand, be lending it's

22    to advocacy pieces which it seems to me it's -- it's doing at

23    least in one respect when it's asked to resolve objections

24    because what's being offered isn't -- just to use a shorthand

25    reference -- fair.

1          And if I went through them line by line I could

2     probably pick out a lot more than what you've raised.

3          MR. GOLDEN:  We did try to be restrained, Your

4     Honor.

5          THE COURT:  I'm sure you've been selective.  And I

6     just -- I just wonder whether for the Court the outcome of the

7     process is good.  But that shouldn't be my main concern and it

8     won't be.  The concern I have would be --

9          MR. GOLDEN:  So just -- you know, just to draw a

10    fine point on this, and I don't actually mean to pick on the

11    debtors, but when they say that the distribution trust will do

12    -- exercise a degree of control that will seek to exert over

13    the fate of the reorganized debtors, I mean, it just -- it just

14    seems so appalling that they actually could mean that this

15    could determine the fate because the distribution trust will

16    appoint two directors of the seven of the reorganized company -

17    - of the board of directors of the reorganized company.  And

18    that's just an example.

19         You know, to say that the litigation -- yes.  I

20    guess it could take up to five years.  Do I think actually it

21    could cost hundreds of millions of dollars to do that

22    litigation?  I don't.  I don't think there's a person in this

23    courtroom who believes it will take hundreds of millions of

24    dollars to litigate that litigation.

25         So, Your Honor, you asked me a question.  Off the

1  top of my head I do think the best judgment you can use is one

2  of your own common sense born of however many years you've sat

3  on the bench and arbitrated these kinds of disputes.

4           THE COURT:  Yes.  The very thing that bankruptcy

5  judges get routinely criticized for.  But thank you.

6           MR. GOLDEN:  Thank you, Your Honor.

7           MR. BERNSTEIN:  Your Honor, may I make a comment?

8           THE COURT:  Certainly.

9           MR. BERNSTEIN:  Don Bernstein from Davis Polk for JP

10 Morgan.

11          Your Honor,  we're in a new world here with four

12 plans.  This is a post-2005 amendment world.  We're stuck in a

13 world where we're going to have plans that people have opinions

14 about.  And you mentioned before how difficult it is to go

15 through four different plans, four different disclosure

16 statements.  Truthfully, what the investor is going to be

17 looking for, the investor that 1126 asks us to consider is what

18 do my advocates say about this; what does the creditors

19 committee say for the unsecured creditor; what  does the

20 senior lenders say for the senior lenders; what does Aurelius

21 say for the noteholders.

22          Part of the disclosure here is what have the people

23 who studied this think about it and it's an opinion because

24 you've got four separate opinions and of necessity in any

25 contested plan process that's what you're going to have.  So

1    there's no way of doing away with somebody's opinion that if

2    the trust controls two directors, that is going to have a

3    significant impact on the fate of the company.  There's no way

4    of doing away with the other issues that have been raised and

5    each investor should be entitled to know what its advocate in

6    the case thinks of that issue.  It's a fact.  That's the fact

7    that they are going to have to grapple with because they can't

8    believe what Plan A says or what Plan B says if it's been

9    proposed by somebody who doesn't have their interests at heart.

10           So, Your Honor, I think we're in that kind of world

11   now and that's what we have to live with, unfortunately.

12           THE COURT:  Yeah.  I just -- I hope we're not moving

13   toward a place in which the disclosure statement is becoming

14   only marginally important.  That's my -- one of my concerns.

15           MR. BERNSTEIN:  Understood.

16           THE COURT:  Okay.

17           MR. BERNSTEIN:  Thank you, Your Honor.

18           MR. FLASCHAM:  And, Your Honor, extraordinarily

19   believe and agree with Mr. Bernstein.  Parties voting on plans

20   should know what the advocates who have their interests at

21   heart say.  We need the -- it just reinforces we need Angelo

22   and Oaktree and JP Morgan to disclose where their interests

23   are.

24           Thank you.

25           MR. LANTRY:  Getting back, Your Honor, to our list

1 and are nearly to the end of this portion.

2          THE COURT:  All right.  Go ahead.

3          MR. LANTRY:  ACE has already withdrawn its

4 objections to the disclosure of the debtors' committee and the

5 lenders.  EGI has been heard.  The Department of Labor has been

6 heard, and over the break Mr. Silverstein, on behalf of the ad

7 hoc committee said he would like a few more minutes to address

8 their objections.

9          THE COURT:  All right.

10          MR. SILVERSTEIN:  Thank you, Your Honor.

11          For the record, Paul Silverstein for the ad hoc op

12 co trade committee.

13          Your Honor, as I think earlier, our objection is

14 straightforward and focuses on disclosure to be provided to op

15 co trade creditors, the Mr. Smith's and Mr. Jones's of the

16 world and, frankly, what they need to know is how much they're

17 getting and when.

18          The debtors' plan is predicated on payment of the op

19 co trade in full in cash.  The debtor estimates the op co trade

20 that has trade claims against all subsidiaries is $85 million.

21 The debtors' plan puts a cap at $150 million on all such

22 claims.

23          There is, however, no factual support in the

24 disclosure statement for those conclusions.  For example, on

25 Page 15 -- I may be in the wrong version -- on Page 15 of some

1  version or Page 24 of the PDF of that version, it rattles off

2  eighty-five to 150 without a basis.

3          Now we -- we've met with the debtors' professionals

4  briefly on a couple of occasions to discuss the issue and to

5  get more comfort.  We've met with the committee, the

6  committee's professionals to try to get some more comfort

7  because, frankly, our clients would be delighted if the number

8  is between eighty-five and 150 because, in that case, they get

9  paid in full.

10          But we have no comfort and the problem is when they

11  vote, when op co trade votes, they don't know what they're

12  voting on.  They don't know what they're getting.  And if -- if

13  they're voting on a hope and a prayer, you know, it ought to

14  say in big, bold letters, you're voting on a hope and a prayer

15  because that's what the debtors are saying.  And I'm being,

16  obviously, facetious.  But that -- that's, in substance, what

17  it is.

18          As I understand it, the aggregate op co trade claims

19  are approximately $5 billion.  I'm told that that number really

20  is more manageable at $1 billion, but it's a far cry from $150

21  million or $85 million for that matter.

22          Mr. Lemay, on behalf of the committee, is confident.

23  We don't know where the confidence comes from.  What we would

24  like to do is we would like to have a three-paragraph statement

25  from the ad hoc op co trade committee sent to the op co trade,

1    and that statement recommendation on the ad hoc trade

2    committee's behalf would say as follows, and I quote:

3              "The debtors' proposed plan is premised upon

4              trade creditors of the subsidiary debtors being

5              paid in full in cash.  The plan, however,

6              provides for a cap or maximum payment to create

7              debtors' -- of all subsidiary debtors of $150

8              million.  Based on the plan and the accompanying

9              disclosure statement, it is unclear how much or

10             what amount trade creditors will receive on

11             account of their allowed claims on the initial

12             distribution date or ultimately.

13             The ad co -- the ad hoc op co trade committee

14             believes that trade creditors of each of the

15             subsidiary debtors are legally entitled to be

16             paid in full in cash (proceeds from the

17             settlement of any fraudulent conveyance claim or

18             actions belonging to the subsidiary debtors must

19             first be paid to trade creditors until all such

20             allowed claims are paid in full.)

21             The ad hoc op co trade committee urges all trade

22             committees to vote to reject the debtors' plan

23             and all other proposed plans if between now and

24             the hearing to confirmation the debtors can

25             demonstrate that the aggregate amount of allowed

1              claims against all subsidiary debtors do not

2              exceed $150 million and that all allowed trade

3              claims will be paid in full in cash on the

4              distribution date.  Votes to reject can be

5          changed or withdrawn.  Absence such a showing of

6          payment n full by the debtors, the ad hoc op co

7          trade committee believes that the debtors' plan

8          cannot be confirmed over the rejection of any

9          class."

10          That's simply what we want to say in a very short

11 statement.

12          THE COURT:  So -- so what vote does somebody lodge

13 based upon --

14          MR. SILVERSTEIN:  Reject.

15          THE COURT:  -- that recommendation?

16          MR. SILVERSTEIN:  A reject vote until we see if this

17 sorts out.  If the debtors and the committee are right that the

18 number is between eighty-five and 150 million, then it's --

19 it's a good day for the op co trade.  And if that doesn't shake

20 out by confirmation or by the voting deadline or whatever, you

21 know, date we set, op co trade doesn't know what they're voting

22 on.  They don't know what they're getting or when they're

23 getting it.  They don't know what the initial distribution

24 payment will be.  And I've -- you know, I -- as sort of like a

25 pest I'm pestering the debtors -- I know you've never seen me

1   be a pest --

2            THE COURT:  It just -- I --

3            MR. SILVERSTEIN:  Shocking, isn't it?

4            THE COURT:  Inconceivable.

5            MR. SILVERSTEIN:  Inconceivable.

6            (Laughter)

7            THE COURT:  Yeah.

8            MR. SILVERSTEIN:  I've pestered the debtors.  I've

9    pestered the committee and I say, show me.  Now we agreed to

10   become restricted so we could get more granular information.

11   They declined to do that for various reasons of their own.  But

12   other than a statement as I've just read into the record, I

13   don't know what else there is to do at this point because

14   although we would love this to be a payment in full plan, right

15   now it's not.

16            Thank you.

17            MR. JOHNSTON:  Your Honor, I hopped up because this

18   is, essentially, my client's issue.  As part of the settlement

19   that was reached, my client's agreed to make a one-hundred-

20   percent payment to subsidiary trade creditors, but they

21   couldn't get their arms around writing a blank check so that --

22   you know, that they would pay one-hundred percent of claims up

23   to a billion dollars.  That wasn't the deal.

24            The debtors told us, and we went through the

25   debtors' analysis, that by their best estimate there were about

1  $85 million of trade claims at the subs.  We said, okay.  You

2  know what?  We'll pay those hundred cents and we'll give you

3  big cushion.  We'll go up to $150 million so that all trade

4  creditors could get paid in full at the subsidiary level, but

5  we need some cap.  We need some, you know, downside protection.

6           In the face of the objection that was filed that,

7  gee, well, how are creditors to know whether that's a

8  reasonable estimate or not, the debtors added a great deal of

9  information to their disclosure statement.  And you didn't hear

10 Mr. Silverstein mention this, but if you look at Pages 49 to 51

11 of the general disclosure statement -- so this is the base

12 document -- there is a great deal of information about the

13 claims that have been filed against the subsidiary debtors and

14 how the debtors got to their estimate of eighty-five million to

15 $150 million.  And those page numbers were from the blackline

16 version.

17           THE COURT: Okay.

18           (Pause)

19           THE COURT:  I see it.

20           MR. JOHNSTON:  So it's just a reality in cases like

21 this that you have tens of thousands of claims filed.  I mean,

22 here it looks like there's 34,249 claims that were filed that

23 would go into the subsidiary trade classes that an aggregate

24 amount of $3.66 billion.  There's no way around that.  I know

25 the debtors are on their twentieth omnibus objection.  They're

1  going through them as fast as they can, but it's a process that

2  takes some time and you always have uncertainty in cases like

3  this as to exactly what the amount of a particular claims pool

4  is going to be.

5          We used the best information we could to come up

6  with the best estimate we could to add a cap onto -- or a

7  cushion on top of that to make it reasonably likely that trade

8  creditors were going to get the hundred cents that this plan

9  says that they're going to get.

10          There's also a disclosure that if for some reason

11  those allowed claims come in above that amount, they get the

12  pro rata share of 150 million.  You've -- I'm sure Your Honor

13  has seen that in dozens of plans.  It's the way you address --

14  it's the way you address a-- any type of distribution where you

15  have a limited amount of money to pay, you know, a somewhat

16  uncertain amount of claims.

17          And it's reasonable under the circumstances, I

18  think, that the disclosure that the debtors provided is far

19  more than you would typically see in a case like this and is

20  adequate under the circumstances.

21          Thanks.

22          THE COURT:  Briefly.

23          MR. SILVERSTEIN:  Thank you, Your Honor.

24          Paul Silverstein for the record.

25          Your Honor, yes -- yes.  I, too, have been on a few

1  cases and I've seen pop payments and I have seen payment in

2  full plans.  This was being pitched as a payment in full plan

3  with the caveat of a hundred-and-fifty-million-dollar cap with

4  everyone assuring trade creditors -- and I heard Mr. Lemay on

5  the record say it's -- we're well within the eighty-five to

6  hundred-million-dollar range that they're going to get paid in

7  full.

8            The problem is there's no factual support for it.

9  There's a bunch of statements that says -- that says, based on

10  the work we've done, this is what we think the result will be.

11  But Mr. Jones and Mr. Smith and my clients, who are investors,

12  don't know how to vote because they don't know what they're

13  going to get on the distribution date which is thirty days

14  after the effective date, I believe, under the plan.

15            THE COURT:  Thank you.

16            MR. SILVERSTEIN:  And that's -- that's where the

17  problem lies.

18            Thank you.

19            THE COURT:  I understand.

20            MR. LEMAY:  May I add one sentence, Your Honor?

21            THE COURT:  Briefly.

22            MR. LEMAY:  Your Honor, David Lemay, just to correct

23  one of Mr. Silverstein's comments.  I didn't say that the

24  subsidiary trade claims were going to be well within the

25  hundred-and-fifty-million-dollar cap.  What I said was that the

1  best estimates that the debtors have and which the committee

2  subscribes to is that they will be.

3          So I didn't want anyone to think that I was writing

4  a guarantee on that issue.

5          THE COURT:  All right.  Thank you.

6          MR. LANTRY:  Your Honor, I think that addresses the

7  issues unless anyone has anything else, and that would bring us

8  to Item Number 3 on the agenda, which is objections to the

9  Aurelius plan.  I think I can tell you that we said what we

10  meant and we meant what we said.  We have a very few amount of

11  objections because we really do believe that the best way to

12  get out of here is to lay down our swords and let what is said

13  be said, notwithstanding -- and I would invite you to read the

14  first three pages of Aurelius's responsive statement if you do

15  want to appreciate, you know, powerful, if not over the top

16  advocacy.  But we're willing to let that go.

17          I think we have but three issues, so I -- in the

18  interest of getting out of here I would move to press on with

19  those.

20          THE COURT:  Go ahead.

21          MR. LANTRY:  It could be that others, obviously,

22  have other things with regard to the noteholder plan.

23          Your Honor, the one issue that the debtors have, and

24  I think the committee has a couple, involves the deemed

25  treatment of intercompany claims.  Until last night they were

1  impaired under the noteholder plan, but deemed to accept when

2  there's a competing plan that the debtors' support that's

3  contrary to this one, the deemed acceptance, without being able

4  to vote and being impaired, seemed to us contrary to the law.

5           We raised that issue with them and last night they

6  changed it, or I think it was at 9:20 this morning we actually

7  saw it.  They have now revised it so that we have to file a

8  3018 motion to have the ability to vote our intercompany

9  claims.  But if there is no vote by a class, it's deemed to

10 accept.  So what they're now doing is compelling us to file a

11 3018 motion just as impaired class to be able to vote, but if

12 we don't, we're deemed to accept.  They're in deep need, up and

13 down the list of various legal entities, to get an accepting

14 impaired class.  We suspect that's what's up here, or else to

15 create a litigation environment in which we have to litigate

16 the intercompany claims because of the underlying dispute on

17 that and coming up on a 3018, well, at least, have you estimate

18 that and get an additional fight going.

19          This is undoubtedly a confirmation objection or a

20 solicitation issue.  What we had asked before was for them to

21 need to disclosure a legal basis for this unusual treatment.

22 That's still what we're asking for now in the version that

23 they're creating.  Again, this is largely a confirmation issue,

24 but I didn't want it to go by the by because of the

25 significance to it and not wanting to run in on a 3018 motion

1  that wasn't necessary.

2          MR. LEMAY:  Your Honor, David Lemay again.

3          The committee has objected to a couple of specific

4  passages in the responsive statement that Aurelius has

5  delivered and, most particularly, to a document that recovers

6  that responsive statement.  It is a letter from a Mr. Brodsky,

7  apparently the chairman of Aurelius, entitled, A Personal

8  Appeal To Tribune's Non-LBO Creditors.  It -- you probably

9  recognize it.  It begins with quotes from philosophers and

10 Marcus Aurelius.  It's quite an extraordinary document.

11         But as Mr. Lantry says, our general philosophy and a

12 philosophy that the committee shares is that the responsive

13 statement is the place for each participant in the process to

14 pick his own or its own level of rhetoric.  They have chosen to

15 use a rhetoric of outrage, such as you might see when, oh,

16 Captain Dreyfuss was hoarded off to Devil's Island by a corrupt

17 administration.  They have pitched this as sort of a

18 cataclysmic battle between the forces of good and the forces of

19 evil, sort of like *Star Wars* or *Paradise Lost*, I guess.

20         All that's fine.  You know, people can write their

21 responsive statements as they will.  But I have to rise on

22 behalf of my client, the creditors' committee with respect to a

23 couple of specific statements.

24         The creditors' committee, as you know, Your Honor,

25 is basically -- they service fiduciaries.  No one gets paid

1  extra for it and it really does not sit well with the members

2  of that committee to be called some of the atrocious names that

3  they are being called here.  I'm not really worried about

4  myself or the other professionals.  We get paid a fair amount

5  of money for this and if people want to call us names, I guess

6  that goes with the turf.

7          But I do want to talk a little bit about the

8  creditors' committee and their role.  Let me read from Mr.

9  Brodsky's letter a couple of sentences:

10          "The committee believes" -- I'm sorry --

11          "Aurelius believes that the committee and its

12          counsel are riddled with conflicts and have

13          provided cover for the LBO lenders for much of

14          this bankruptcy case.  It is Aurelius's view that

15          most of the committee members effectively had

16          their votes bought by the LBO lenders in return

17          for an increased or full recovery and have little

18          or no skin in the game regarding claims against

19          the LBO lenders."

20          I simply, Your Honor, cannot let that go unremarked.

21  It's simply just not right, even in the context of a sort of

22  fevered rhetoric that permeates this document that you can go

23  around talking about fiduciaries like that willy nilly.

24  Allegations of having people's vote bought are extremely

25  serious.  I mean, there's hardly a more serious allegation that

1  can be made.  You've seen how the committee and its

2  representatives have conducted themselves.

3          Mr. Golden a moment ago suggested to Your Honor that

4  the application of common sense is the right way to judge the

5  statements in these responsive statements.  It is the one thing

6  that Mr. Golden and I agree on.  I do think Your Honor should

7  apply some common sense.  And when Your Honor sees, as I say,

8  even in the context of admittedly a pretty overwrought piece of

9  paper, statements like that, my client would ask your -- would

10 ask the Court to intervene.

11         Similarly, one of the other statements in this

12 fevered paper is a statement to the effect that, "The committee

13 kept its negotiations with the LBO lenders secret from us,

14 their largest constituent."  That ignores, of course, the fact

15 that all of the negotiations that led to this settlement were

16 done in the context of a mediation.  It was done by a mediator

17 who you, yourself, appointed.  And as mediators often do, they

18 did not -- he did not -- Judge Gross, that is -- invite every

19 single litigant to every single meeting.  Everyone knows that

20 the way that mediators work is not to put twenty people in a

21 room and let them have at it.  That would yield nothing.

22         The mediator here chose his own manner of proceeding

23 in what I have to assume was his best estimate of how to get

24 things done in a way that would yield a settlement.  I'm still

25 a little bit amazed that we got to the settlement we did with

1  the people that we did.  I would have ascribed a low

2  possibility to that some time ago.  But that happened and that

3  happened, I think, because of the work of the mediator.

4       To then be told after you've gone to the mediation

5  and have attended those meetings that you were asked to attend

6  and have not attended those meetings that you were not asked to

7  attend as a creditors' committee, that you were excluded from

8  negotiations is, in my view, frankly, outrageous.

9       Furthermore, there is sort of an unstated

10  proposition here that the creditors' committee really is and

11  should be, in effect, a voice and a proxy for Aurelius and for

12  the bondholders to Court.  And that's not true.  As Your Honor

13  knows, the committee isn't a representative of the bondholders

14  simply.  It's not a representative of the op co trade simply.

15  It's not a representative of the retirees or of anyone else

16  simply.  It's a mixed body whose job is to balance competing

17  interests.

18       And the fact that both Mr. Golden and Mr.

19  Silverstein hate what I'm up here doing today might suggest

20  that we've done a pretty good job of that balance.  Be that as

21  it may, we'll test that at confirmation.

22       What I would like to urge for Your Honor is that in

23  the application of common sense, the standard that Mr. Golden

24  advocated and the standard which I endorse, the statements that

25  I've called out just need to be eliminated.  They're really

1  beyond the pale.

2           Beyond that, if Mr. Brodsky and if Aurelius believe

3  that it is in their interest to have a piece of paper that is

4  pitched at this rhetorical level, God bless them.

5           Thank you, Your Honor.

6           MR. SILVERSTEIN:  Your Honor, may I -- five seconds

7  --

8           THE COURT:  Let me hear from others from whom I have

9  not yet heard and then, yes.

10           MR. SILVERSTEIN:  Just in direct relation to what

11  Mr. Lemay just said.  It will take a minute.

12           Thank you.

13           THE COURT:  You may have a minute.

14           MR. SILVERSTEIN:  Thank you, Your Honor.

15           For the record I wanted to make clear that I don't

16  hate or report what Mr. Lemay is doing today.  I just can't

17  rely on his comfort level as to the amount of claims that will

18  -- the amount of allowed claims that will exist.  I can't rely

19  on that because I've been shown no basis for such an

20  assumption, number one.

21           Number two, in terms of disclosure of the members of

22  the committee and where they're coming from because of various

23  factors, the one question that, frankly, should be disclosed

24  and was not in my objection, but I'll raise it now, is that op

25  co trade members -- members of the committee who will -- who

1  hold op co trade claims, it should -- as to those folks it

2  should be disclosed whether they are parties to executory

3  contracts and whether those executory contracts are being

4  assumed.  That's relevance because if they're being assumed

5  they don't really care if it's eighty-five or 150, just that

6  they're getting paid in full.

7              But, again, I don't abhor or hate what Mr. Lemay is

8  saying.  I think he's trying to do his best.  I just can't rely

9  on a judgment he's making on an amount that may not --

10             THE COURT:  I --

11             MR. SILVERSTEIN:  -- be true and there's no basis --

12             THE COURT:  I understand.

13             MR. SILVERSTEIN:  -- for me to understand that.

14             MR. LEMAY:  I was using an advocate's license, Your

15  Honor.  I apologize.

16             UNIDENTIFIED:  As was I, Your Honor.

17             THE COURT:  You don't -- you don't stand alone in

18  that here.

19             MR. JOHNSTON:  No objections to press to the

20  Aurelius and proponents noteholder plan.  I just wanted to put

21  on the record that there was an ambiguity in the new version of

22  Section 5.3.2 of the Aurelius plan regarding the number of

23  directors and who would be appointed them.  I've talked that

24  over with Mr. Dublin and Mr. Golden and they've agreed to make

25  a clarifying change to that effect.

1    Thanks.

2    MR. BERNSTEIN:  Your Honor, Don Bernstein on behalf

3 of JP Morgan.

4    I don't rise to make any objections to the Aurelius

5 statement, but I do want to highlight the contrast between the

6 types of objections that were being made to the statements by

7 the debtor lender and committee plan as opposed to what's in

8 this Aurelius document because, you know, there were objections

9 to our using the word "may" as we describe what we think the

10 economic impact of the Aurelius plan could be as opposed to

11 using words in this cover letter like "cover-up," "extortion,"

12 "wrongdoing by the LBO lenders."

13    We're not objecting to them going out with that

14 language, Your Honor, but if that language does go out, there's

15 no reason why we can't express our bona fide views as to the

16 economic effects of their plan.

17    Thank you, Your Honor.

18    MR. DUBLIN:  Good afternoon, Your Honor.  Phil

19 Dublin, Akin Gump on behalf of Aurelius Capital Management as

20 well as our co-proponents for the noteholder plan.

21    As you heard, there's only a few limited issues with

22 respect to our disclosure statement and I'll take them in as

23 close to the turn that they were presented as possible.

24    I believe that the debtors had some concerns with

25 respect to the treatments for intercompany claims; that they

1  were concerned that there was no legal basis for how we have

2  structured those claims.

3       I think it is beyond dispute that the issue of

4  intercompany claims is one that will be hotly contested in

5  connection with confirmation.  I think the fact that the

6  debtors are working on the intercompany claim settlement, that

7  they still haven't been able to finalize evidences the fact

8  that those claims are disputed claims.  If the debtors'

9  intercompany claims are disputed claims, we don't see why they

10  should be treated any different than any third party disputed

11  claim who has to file a Bankruptcy Rule 3018 motion to vote

12  their claim, articulate what they think the allowed amount of

13  their claim should be, and then the Court will determine

14  whether they should vote and in what amount the claim should be

15  voted.

16       So we believe Bankruptcy Rule 3018 is the precedent

17  for why a 3018 motion should be filed by the debtors on account

18  of their intercompany claims.  They state in their solicitation

19  procedures they want to reserve the right to vote.  We're

20  giving them the mechanism to do that.

21       Second, with respect to if a class doesn't vote or

22  nobody in the class votes, they were looking for legal

23  precedent for deeming those classes to accept.  We can put this

24  in our disclosure statement, though I don't think we need to

25  have more words.  I direct them to the Tenth Circuit and the

1  <u>Rudy Sweetwater, Inc.</u> case, 836 F.2d 1263 and Judge Gerber's

2  confirmation order in the <u>Adelphia Communications Corp.</u> case,

3  368 BR 140, both stating the fact that if a class -- if no

4  creditor in a class votes, the class should be deemed to accept

5  the plan.  So I think that should address the intercompany

6  claims issue.

7           With respect to the creditors' committee taking

8  issue with the responsive statement, particularly the cover

9  letter that Mr. Brodsky drafted and references to *Star Wars* and

10  the good and evil, well, we can only hope that at the end of

11  the movie they take off their masks as Darth Vader did and come

12  to --

13           (Laughter)

14           MR. DUBLIN:  -- the right side of the force.  But

15  that said, we have caveated (sic), as everybody else has, what

16  they believe to be the case.

17           It is from our view clear that votes were

18  effectively -- or from Mr. Brodsky's point of view effectively

19  purchased when you compare what the initial term sheet for the

20  Oaktree, Angelo debtor plan was in connection with the

21  mediation, where the creditors' committee was not on board, the

22  proposed recoveries were much lower than they are now, but they

23  surprisingly increase for the retirees to get them up to

24  thirty-five cents, which were the terms that they required in

25  the April plan, and they also increased the subsidiary general

1  unsecured creditors to a hundred cents, leaves us to wonder who

2  was minding the ship at all with respect to the pre-LBO

3  creditors who only saw their recoveries increase marginally

4  based on the plan that the committee ultimately signed up for.

5             With respect to Mr. Johnston's point, we are going

6  to make the modification to our disclosure statement and our

7  plan to make clear that the board members that will be chosen

8  initially by Aurelius, two members who have to be independent,

9  will not be additive to the board members appointed by the

10  distribution trust who also have to be independents.  The

11  distribution trust advisory board will have the right, in

12  essence, to replace the two that are appointed by Aurelius at

13  any time or when their term is up to vote the slots that were

14  held by the Aurelius-appointed members.

15             Other than that, Your Honor, I think that covers the

16  points.  Everybody's had their peace as to what the purpose of

17  the responsive statements are.  They've taken on a life of

18  their own, as you have noted, and we will, of course, proceed

19  as the Court directs.

20             THE COURT:  Well, I think I'll have to instruct the

21  CSOs to post a notice that light sabers should be left at home

22  --

23             (Laughter)

24             THE COURT:  -- and will not be permitted in the

25  courtroom.

1          Okay.

2          MR. LEMAY:  Just briefly in reply, Your Honor.

3          With respect to a couple of Mr. Dublin's remarks,

4    two things:

5          One, if it had been the committee's members purpose

6    and intent to have their votes bought by the senior lenders in

7    exchange for taking care of themselves, they could have

8    accomplished that a very long time ago.  It is remarkable to

9    say that after two years of fighting and negotiating and

10   working very hard that they've sold the bondholders out down

11   the river.  If -- had they wanted to do that, they really could

12   have done it a long time ago.

13         Second, I believe that some of Mr. Dublin's comments

14   may have encroached on what was said in mediation and mediation

15   positions.  I'm not going to respond substantively, but I do

16   want to call the Court's attention to the fact that I think

17   that there -- there may be a little bit of a foot fall there.

18         Thank you, Your Honor.

19         MR. DUBLIN:  Your Honor, Phil Dublin again for

20   Aurelius.  I was just responding to some of the points raised

21   by Mr. Lemay who directed what they were allowed to do in

22   connection with mediation, what they weren't.  It's our

23   understanding there were no restrictions on their ability to

24   talk to any party, so we were just trying to clarify where the

25   parties came out and how they came out.  And there were filings

1    with respect to the various term sheets by the mediator and

2    that's all I was addressing.

3            THE COURT:  Is there anyone from whom I've not yet

4    heard who wishes to be heard in connection with disclosure?

5            MR. BRADFORD:  Your Honor, David Bradford on behalf

6    of EGI.  We had spoke more generally about disclosure.  I do

7    want to call the Court's attention to the specific statement in

8    the response by Aurelius which makes the assertion that the

9    examiner identified billions of dollars of claims against

10   Tribune insiders such as Mr. Zell.  That's simply a factually

11   false statement.  That's not opinion.  It's factually false.

12   It's shameful and it should be deleted.

13            Thank you, Your Honor.

14            THE COURT:  Anyone else?

15            (No verbal response)

16            THE COURT:  All right.  Here's what we are going to

17   do for now.  And, of course, the fluidity of the situation has

18   continued throughout the day.  I would like to take a break now

19   and when we come back ask the debtor to give me a recap of

20   what's been resolved and what's still open, and to let me know

21   when I will see the revisions that have been agreed to that the

22   parties have been talking about today.

23            It's my inclination -- well, as we go through some

24   of the objections in the recap I am prepared to rule on some of

25   them.  I may not be prepared to rule on others.  But we'll

1   establish a follow-up process in fairly short order so that we

2   come to a conclusion on how to get the disclosure statements

3   out and on voting procedures.  I know we have a standing motion

4   on the agenda for today and we'll address that as well.

5            Let me ask how much time the parties would like now

6   -- or the debtor would like anyway to corral what remains.

7                 MR. LANTRY:  I think fifteen minutes, Your Honor.

8                 THE COURT:  Okay.  We'll recess until four o'clock.

9   Are there any questions before we break?

10            Okay.  Court will stand in recess.

11            Yes, Mr. Golden.

12                 MR. GOLDEN:  I'm sorry, Your Honor.  Just -- just in

13   terms of planning since we have several people in the court, is

14   it after we get through the disclosure statement and Mr. Lantry

15   gives his report and the Court will indicate which rulings its

16   prepared to make now or later, are we then turning to the

17   solicitation procedures or to the standing motion?

18                 THE COURT:  Well, I think -- I think standing.

19                 MR. GOLDEN:  Okay.

20                 THE COURT:  Stand in recess.

21            (Recess.)

22                 THE CLERK:  All rise.

23                 MR. LANTRY:  Your Honor, first you asked about the

24   timing for those agreed upon changes that we've articulated

25   today.  There are a few that we have not described to you

1    because we have resolved them amongst ourselves earlier this

2    morning or late last night.  I think it's safe to say that all

3    of these would probably take no more than four or five hours

4    once we left here on all sides.  There are not that many

5    changes that have been agreed to that have left to be done, and

6    what they are are very small items.

7         What is, I think, considerably more significant is -

8    - my count is eight items in the larger field and five items

9    that are unique to the Department of Labor, so thirteen items.

10   Each of those would, depending on how you ruled, either require

11   or not require changes.  And each of them are the -- more

12   considerable than anything else, and so I think your decision

13   on as many of those as possible will be considerably more

14   significant in terms of how long it takes for us to get a

15   deliverable back to you.

16        But let me go through the list.

17        Number one, the use of the examiner report, and this

18   both involves between the plan proponents as well as the

19   outside issue of EGI.

20        Number two, information about the intercompany

21   settlement, the intercompany claims settlement.

22        Number three, allocation of value between the parent

23   and sub in terms of the distributable enterprise value, and

24   this involves both the bridge allocation and the debtors'

25   allocation since they are different.

1          Four, the holdings of JPM, Oaktree and Angelo

2    Gordon, and I think those came in a variety of different

3    increments.

4          Five, the division of the settlement consideration

5    under the debtors' committees' lenders' plan between Step One

6    and Step Two, whether that needs to be disclosed.

7          Number six, the disclosure of the logic for the

8    classification of Step One and Step Two in the same class under

9    the debtors' plan.

10          Number seven, what would happen to the proceeds of a

11    pre-effective date settlement of the various LBO or other

12    litigation claims that are being pursued by the committee or

13    the debtor.

14          Number eight, the legal bases for determining that

15    the acceptance of a plan can be forced or deemed to be accepted

16    by a non-voting class under Third Circuit law.  I think we

17    heard other circuits, but I think it would be relevant in terms

18    of the applicable circuit if there is any.

19          THE COURT:  Well, I gather if there were any it

20    would have been mentioned already.  I'm aware of none.  That

21    doesn't mean it doesn't exist.

22          MR. LANTRY:  And, Your Honor, I think I miscounted

23    or I would label the last one as Number nine, and that's the

24    responsive statements.  There are four different responsive

25    statements that have sustained some objections:  The debtors,

1    the committees, and the lenders on behalf of the one plan and

2    the Aurelius on behalf of the noteholder plan.  I pause to

3    enumerate all of those.  We certainly could, if you wanted me

4    to go through, but I think they are kind of a basket.

5              So call those nine rather than eight if we include

6    the responsive statements as a separate item.

7              The Department of Labor articulated five issues,

8    four with -- I mean, in many ways they apply to more than one

9    plan, both, in fact, at the bridge and the debtors' plan --

10   sorry -- the Step One and the debtors' plan because of their

11   similarities, but also some fall over into the others.

12             The scope of the release, scope of the bar order,

13   the subordination of ERISA claims and the treatment of the ESOP

14   note under the debtors' plan, and under both the bridge and

15   Aurelius plan the failure to separately classify the securities

16   litigation claims that the subsidiaries asserted by ERISA.

17             That's the debtors' list, Your Honor.  I don't know

18   if I missed anything.

19             THE COURT:  Let's ask that.  Is there any other

20   outstanding objection not covered?

21             MR. LANTRY:  Your Honor, I apologize.  More

22   information about the trade creditors; that is, the operating

23   companies -- the amount of the estimated total operating

24   company trade debt.

25             THE COURT:  Well, there was also a request -- and,

1  Mr. Silverstein, you'll correct me if I'm wrong, I'm sure --

2  for the addition of the statement that you read into the

3  record.  I took that as a request for an additional responsive

4  statement, or was that a request that that be inserted into one

5  or more disclosure statements?

6          MR. SILVERSTEIN:  I -- given the new term of

7  responsive statement that we've established, I think it's that.

8  I think we're making it up so I think it's a one-pager that I

9  would appreciate if it be -- if it was included.

10         THE COURT:  Okay.

11         MR. SILVERSTEIN:  Thank you, Your Honor, and there's

12 no need to be corrected.

13         THE COURT:  Well, for now anyways.

14         MR. GOLDEN:  I just wanted to inquire was -- of Mr.

15 Lantry, was that the list that the debtors believe are the open

16 disclosure statement objections regarding its plan or all the

17 plans?

18         MR. LANTRY:  All the plans that haven't, to my

19 understanding, been either talked about or we believe that are

20 going to be resolved that Your Honor needs to rule on.

21         (Pause)

22         MR. FLASCHAM:  Evan Flascham, Step One lenders.

23         This may have been implicit in their point five,

24 which was allocation of the settlement as between Step One and

25 Step Two, but we also wanted clarification:  Are they applying

1    sharing provisions or not.  If they state explicitly they are,

2    they should add disclosure that application of the sharing

3    provisions is disputed.

4              Thank you, Your Honor.

5              MR. JOHNSTON:  And just an amplification on issue

6    number four which Mr. Lantry described, holdings of JP Morgan -

7    -

8              THE COURT:  Aggregate disclosure.

9              MR. JOHNSTON:  Aggregate, and it would be --

10             THE COURT:  It's that to which you've agreed and you

11   object to anything further.

12             MR. JOHNSTON:  I was going somewhere else actually.

13             THE COURT:  Okay.

14             MR. JOHNSTON:  It would be to the extent that

15   disclosure is compelled of some of the proponents, namely my

16   clients, we would ask for similar disclosure from any of the

17   other creditor proponents of plans out there.

18             THE COURT:  Well, Aurelius, I think, already agreed

19   to that.

20             MR. JOHNSTON:  I think that's right.

21             THE COURT:  Is there anyone else upon whom that

22   disclosure would need to be imposed?

23             MR. JOHNSTON:  Yes.  It would be the Step One

24   proponents.

25             MR. FLASCHAM:  And we have repeatedly disclosed in

1   our pleadings we have $812 million of Step One claims.

2           THE COURT:  Okay.

3           MR. FLASCHAM:  Thank you.

4           THE COURT:  Any other outstanding objection that

5   hasn't been identified?

6           (No verbal response)

7           THE COURT:  Okay.  Well, the parties have given me

8   quite a menu to choose from in terms of what to do with the

9   respective statements and disclosure -- proposed disclosure

10  statements and responsive statements.

11          Let me start with the responsive statements.  I did

12  not, before today's hearing, review line by line, paragraph by

13  paragraph each of the responsive statements.  I'm going to do

14  that.

15          After hearing some of the objections that were

16  raised to some of the statements that were made in the

17  responsive statements I am concerned first that something be

18  included in the disclosure package that appears to bear the

19  imprimatur of the Court and I think I will require at a minimum

20  that there be a statement, which I may draft myself, that

21  simply says, while the Court's permitted -- to the effect that

22  while the Court's permitted these statements to be included in

23  the package, the only things that the Court has approved

24  pursuant to the bankruptcy code is the -- are the respective

25  disclosure statements, assuming I do that.

1          I may also require that certain passages be deleted

2    or amended.  But I have a suggestion about that and that is I

3    do think those who've raised objections with respect to some of

4    the -- oh, let's call it aggressiveness of the advocacy papers

5    are well-taken, and I think while the parties are being

6    permitted and should be permitted under these circumstances to

7    -- to include these responsive statements in the disclosure

8    package, solicitation package, I think they have to be

9    moderated, and I think that if the parties do that and submit

10   revisions, you will be well served.

11          I am not inclined, considering the language that's

12   been added, to require an additional statement by the ad hoc

13   trade group.  Now --

14          MR. SILVERSTEIN:  Your Honor, I missed that.

15          THE COURT:  I am not going to require or permit an

16   additional responsive statement on behalf of the ad hoc trade

17   group to include what you've requested, Mr. Silverstein.

18          Let me start back with the enumerated items as the

19   debtor went through them.

20          I am not going to require anything further or less

21   with respect to the examiner report except -- and this is

22   really a caveat to all of the comments as the debtor had

23   indicated initially -- to require that statements which are

24   incorrect plainly as assertions of fact be corrected, and I

25   will permit and require that the statement requested by EGI

1  about what the examiner found with respect to Mr. Zell and EGI

2  be accurately reported.

3          I am not going to require any further disclosure

4  with respect to the intercompany claims settlement or

5  allocations with respect to parent sub in the bridge or

6  debtors' plans.  I will -- I will take the parties up on their

7  collective offers or already in place agreements to disclosure

8  in the aggregate their holdings.

9          I will not require a division of settlement

10  considerations between Step One and Step Two, or statements

11  concerning whether sharing provisions apply, or the logics for

12  classifications of Step One and Step Two under the debtors'

13  plan.

14          I agree with the debtor and others who expressed the

15  view that what should happen with respect to proceeds prior to

16  confirm -- which are the subject of settlements, which may be

17  approved prior to confirmation is a matter that need not and

18  probably should not be locked in now for disclosure purposes.

19          With respect to legal basis for determining how

20  classes can be treated as deemed accepted, there should be

21  added whatever authority the proponent has.  If there's Third

22  Circuit authority that should be included.  I'm not aware of

23  any, but there may be.

24          With respect to the Department of Labor objections I

25  will overrule them.  I think the disclosures are adequate as

1    they now stand, with the exception -- and maybe we could talk a

2    little more about this -- the classification or failure to

3    classify the securities' litigation claims, which I understood

4    the objection to be a failure to classify it at all as opposed

5    to being separately classified.  But, perhaps, you could clear

6    that up for me.

7              MR. GERSON:  That's correct, Your Honor.  It was a

8    failure to classify at all.

9              THE COURT:  Okay.  Let me hear responses to that.  I

10   don't know that that was directly responded to and if it was,

11   that's my omission.

12             MR. DUBLIN:  Phil Dublin, Akin Gump for Aurelius and

13   our co-proponents.

14             Your Honor, I believe I did not mention that when I

15   was up here earlier so I will now, and I think it probably

16   applies equally for the bridge lenders, but Mr. Greissman can

17   cover that when it's his opportunity.

18             We have discussed the viability of these claims with

19   the debtors.  They do not believe they are viable claims.  We

20   are not aware of a circumstance where a entity like the

21   subsidiary debtors who do not have outstanding securities

22   would, in essence, then have subordinated securities claims

23   that would be viable against them, which is why they have not

24   been classified in our plan.

25             To the extent that the Department of Labor is

1  successful in asserting a claim of this nature against the

2  subsidiaries, presumably they would be treated as general

3  unsecured claims as we do not have a subordinated securities

4  class.  And I believe that the Department of Labor actually

5  wants them to be treated as general unsecured claims and not

6  subordinated claims.

7            So I think that should address the issue.

8            THE COURT:  Is there any -- any discussion of that

9  in the specific disclosure statements?

10            MR. DUBLIN:  We do not, but we can add a section or

11  a paragraph addressing that.

12            THE COURT:  I think you should.

13            MR. DUBLIN:  Okay.

14            MR. GERSON:  Your Honor, I just -- after I drafted

15  my objection and it was submitted I wondered, well, maybe

16  they're doing exactly what I want, treating my claim as a

17  general unsecured claim.  But then I looked at the definition

18  of general unsecured claims and subordinated securities claims

19  as they're -- that's the term used in the plans.  And the

20  definition of subordinated securities claims includes any claim

21  that's asserted under ERISA.

22            So I don't think, if I were successful in making --

23  well, first off, if there is a claim and it is an ERISA claim

24  and should be subordinated, well, it's still a claim and there

25  should be a class for it.

1          So I don't think what Mr. Dublin just suggested

2    satisfies my problem.

3          THE COURT:  Well, I do, and the rest is left to a

4    confirmation objection.

5          UNIDENTIIED:  Thank you, Your Honor.

6          THE COURT:  Okay.

7          MR. DUBLIN:  Your Honor, I apologize.  If I can just

8    make -- just provide Mr. Gerson with one direction.  We

9    modified the definition in our plan of subordinated securities

10   claim to make it clear it only applies at Tribune, so they

11   would be claims of the ESOP against Tribune.  Any claim that

12   would be against the subsidiaries would fall into the

13   definition of general unsecured claim.

14         MR. GERSON:  Thank you.

15         THE COURT:  All right.  Thank you.

16         And I would ask that the same be added to the bridge

17   lenders' plan -- disclosure statement in terms of the

18   explanation.

19         Okay.

20         MR. FLASCHAM:  Your Honor, a quick clarification on

21   your list.  We had asked for disclosure by classification,

22   which you denied.  I understand that.  We had asked about

23   allocation of settlement between Step One and Step Two.  That

24   was denied.  We had asked for reporting of claims in the

25   aggregate which you agreed to.  What we don't -- what we need

1   clarification of is it aggregate total holdings period or the

2   aggregate Step One and aggregate Step Two?  It's just a

3   question.

4           THE COURT:  The former.

5           MR. FLASCHAM:  Just in the aggregate.  Thank you,

6   Your Honor.

7           MR. SILVERSTEIN:  Your Honor, I have one

8   clarification as well.

9           You indicated that -- for the record, Paul

10  Silverstein for the ad hoc op co trade.  You said you would not

11  permit a responsive statement --

12          THE COURT:  Yeah, twice.

13          MR. SILVERSTEIN:  -- to the effect --

14          THE COURT:  Do I need to say it again, Mr.

15  Silverstein?

16          MR. SILVERSTEIN:  Well, I guess I'm a little slow

17  today, the cold.  How about that letter -- as a letter as

18  opposed to a responsive statement?

19          THE COURT:  No.

20          MR. SILVERSTEIN:  No.

21          THE COURT:  Nice try.

22          MR. SILVERSTEIN:  Okay.

23          THE COURT:  Got to admire your determination.

24          MR. LANTRY:  Your Honor, in terms of the insert that

25  I believe all the four of us will be doing for EGI, to make

1   sure that we're being consistent, I could imagine weaving in a

2   little context so it fits however they're doing.  At the same

3   time we want to have as minimal as possible, but just dropping

4   in the one sentence somewhere out of the blue may not make

5   sense.

6           So what I'm -- what I'm guessing is just an

7   understanding and clarification, both in terms of a little bit

8   of contextual lead in or do we just drop it in?  How is the

9   best way to deal with that?

10          THE COURT:  I'll let counsel take a first crack at

11  that.  I am going to set a follow-up hearing so that I've had

12  time to review the changes once they've been submitted and to

13  see whether they precipitate any further questions by me or

14  whether I'm ready simply to make the necessary approvals at

15  that point.

16          MR. LANTRY:  And, Your Honor, I sense that each of

17  us may be motivated to submit revised responsive statements.

18  Would you like, then, a redline from what was filed on Tuesday

19  night for each of those?

20          THE COURT:  I would.  And --

21          MR. LANTRY:  Thank you, Your Honor.

22          THE COURT:  -- in terms of timing, I am going out of

23  town tomorrow on court business through the end of the week, so

24  I will not be sitting again until next Monday.  And I was

25  thinking one of two things:  That I would set a follow-up

1  hearing for the 6th in the afternoon or the 8th in the

2  afternoon.  And I wondered if the parties had a preference.

3          MR. LANTRY:  Your Honor, let me ask a question.  I

4  don't know how long the standing motion will go and then how

5  long you have for us this evening in terms of the solicitation

6  issues.  Are those likely to be both addressed this afternoon

7  as we think about what we need to do to get to the end game

8  either on the 6th or the 8th?

9          THE COURT:  Well, how much time do you think you'll

10 need for standing?

11          MR. SEIFE:  Your Honor, Howard Seife, Chadbourne &

12 Parke for the committee.  There are two standing motions.  We

13 think they can be fairly expeditious with one caveat and that's

14 based on the limited objection filed by Aurelius Trust and it's

15 whether Your Honor wants to go beyond the confines of the

16 motion itself to other issues which were raised in the limited

17 objection that was filed.

18          I hope that wasn't too --

19          THE COURT:  Well --

20          MR. LANTRY:  Or to put it differently, Your Honor  --

21 -

22          THE COURT:  -- it means you don't know for sure, but

23 --

24          (Laughter)

25          THE COURT:  Okay.

1        MR. LANTRY:  If you need to have that secondary

2   issue addressed, we have a witness and perhaps no more than

3   thirty minutes of direct testimony, if you want to go that deep

4   in terms of some of the allegations that were raised.  But we

5   think that the witness would be -- could be finished in thirty

6   minutes.

7        THE COURT:  To answer your question, I was thinking

8   that standing would be a more time sensitive issue.

9        MR. LANTRY:  That is absolutely correct, Your Honor.

10  Having said that, could I give one more shot at the big

11  picture?

12       THE COURT:  Go ahead.

13       MR. LANTRY:  If you were to, you know, the night of

14  the 6th approve everything, I think we could still get our

15  solicitation out and have the hearing that you've also given us

16  on March 7.  We might need to condense from a forty-day

17  solicitation period down to thirty-five or something like that.

18  I think it would be doable, but we're getting very, very close

19  to the wire in terms of everything that you'll hear about

20  that's staged in terms of the solicitation process and the

21  contours.

22       So we certainly would prefer the 6th rather than the

23  8th because every day counts unless, of course, you want to go

24  on into the deep night and we can get everything done today.

25  Still, the 6th would be better.

1          THE COURT:  Okay.  We'll look toward the 6th.

2          MR. LANTRY:  And, Your Honor, sorry to belabor it.

3   In terms of us getting everything, we certainly can get it to

4   you before you get back into the courtroom if that would be of

5   any advantage to you.  I don't think there's that much work for

6   all of us to get you something like Wednesday, first thing

7   Wednesday or something like that.

8          THE COURT:  I would say by the close of business by

9   Wednesday, say five o'clock eastern time.  It would give my law

10  clerk a chance to take a first run at what came in.

11         MR. LANTRY:  Thank you, Your Honor.

12         THE COURT:  Okay.  And we'll fix a hearing for say

13  two o'clock on the afternoon of Monday, December 6th.

14         Now if -- well, we'll just fix a hearing for that

15  day and time.

16         All right.  Shall we move onto standing?

17         MR. FLASCHAM:  Your Honor, there is one uncontested

18  matter if I would -- we can get that out of the way.  I know JP

19  Morgan is anxious for it.  It's the last item on the agenda.

20         THE COURT:  Okay.  One moment.  Let me --

21         MR. FLASCHAM:  Thank you.

22         (Pause)

23         MR. FLASCHAM:  I'm not going to argue the motion.

24  In fact, we have an agreement about withdrawing it, but I need

25  to state the context.

1          THE COURT:  Very well.

2          MR. FLASCHAM:  This motion had to do with JP Morgan

3  not recording trades of Step One lenders.  They have agreed

4  that they will record existing trades including those they

5  rejected, and they will record future trades in the ordinary

6  course of business.  That resolves our main issue.

7          We had a secondary issue of the voting record date.

8  We agreed that if the voting record date was set for no early

9  than November 29th, we would withdraw our motion altogether and

10 I know that solicitation is not in front of you now, but I

11 would just ask, is there anyone in the courtroom who would

12 object to a voting record date being November 29th or later?

13          (No verbal response)

14          MR. FLASCHAM:  Okay.  When we have the solicitation

15 motion, we will argue for a date later than November 29th, but

16 based on the fact that no one's objecting to November 29th, we

17 withdraw our motion.

18          THE COURT:  Okay.

19          MR. FLASCHAM:  Thank you, Your Honor.

20          THE COURT:  Thank you.

21          MR. BERNSTEIN:  Your Honor, Don Bernstein for JP

22 Morgan.  I just want to acknowledge that we did agree that

23 properly submitted trades to date would be cleared.  I don't

24 think there was any discussion about the future, though.  So I

25 don't know, you know, terms of ordinary course of business or

1  the future, I think that's going to be on a case by case basis

2  and, obviously, within the scope of the credit documents.

3  There are reasons why trades may not clear.

4           So, Your Honor, we sort of reserve on that issue,

5  but I think as to trades that are currently pending, as long as

6  the proper paperwork has been submitted, we expect to clear

7  them.

8           THE COURT:  All right.  Thank you.

9           MR. SEIFE:  For the record, Your Honor, Howard

10 Seife, Chadbourne & Parke for the Official Committee of

11 Unsecured Creditors.

12          The committee has made two motions today, two

13 standing motions.  I will argue the first and my colleague from

14 Zuckerman Spaeder, Jim Sottile will cover the second.

15          The first motion for an order granting leave and

16 standing to commence, prosecute, settle, recover certain causes

17 of action on behalf of the debtors' estates deals primarily

18 with claims against what we term insiders of the debtor, either

19 current or former officers and directors.

20          We've identified something in excess of 200

21 recipients of potential preferences that total approximately

22 $180 million.  So that is the universe of claims that we are

23 dealing with in this motion.

24          The debtors have consented to the motion.  We think

25 we meet all of the requirements set forth in Cybergenics

1  regarding standing.  The debtors have determined that given the

2  relationship of the potential defendants to the company, that

3  it was in the best interest to -- of the creditors to have the

4  committee prosecute these claims so there would be no

5  suggestion of impartiality or the like.

6           Also included in this motion is the ability to

7  prosecute claims against certain Zell affiliates as well as JP

8  Morgan to the limited extent of its purchasing card program.

9  Against the insiders, the claims would look back one year from

10 the filing date.  As to the other parties we're looking at a

11 ninety-day period.

12          The order which we proposed and which was attached

13 to the motion tracks, in many respects, the conditions and

14 requirements that were in the heavily negotiated order which

15 granted standing to the committee to prosecute what we call the

16 LBO claims, and much of the language in the current order was

17 lifted from that prior order.  So it includes provisions that

18 the prosecution of the preference actions would be stayed

19 pending certain events, including the resolution of the pending

20 plans, and that any settlements during this period would have

21 to be with the concurrence of both the debtors and the

22 committee before we would bring it to the Court for approval

23 for hearing on notice.

24          There were two -- what I would -- what -- which --

25 there were two responsive pleadings filed which were entitled,

1  Limited Objections; one filed by Aurelius, the other filed by

2  Wilmington Trust.

3           Both pleadings did not object to the relief being

4  sought.  Both thought it advisable that the committee be

5  granted standing to bring these actions.  There are two, what

6  I would term points, though, that were raised in terms of the

7  relief being sought and the terms of the order.

8           The first was raised by Aurelius, that there was

9  language in the order which, in terms of the permissibility of

10 settlements, language that started "except as provided in the

11 joint plan," and that was at Page 2 of the proposed order, the

12 last paragraph, and we've agreed to strike the language which

13 Aurelius found objectionable and we agree in the context of

14 this motion it's probably not appropriate.

15          So to the extent we get to hand up an order to Your

16 Honor you will see a blackline which strikes that language.

17          THE COURT:  Okay.

18          MR. SEIFE:  The second objection that was raised by

19 Aurelius was the point that they didn't feel settlements of any

20 kind should be entered into pending confirmation of a plan.

21 You know, frankly, that's inconsistent with the prior heavily

22 negotiated order which approved the LBO standing motion.

23 There's really no basis that they've cited in law that suggests

24 that the ability to settle should be limited.  And, in fact, we

25 think it would not be in the interest of the estates to

1   restrict the ability to bring to Your Honor for approval

2   settlements which might be beneficial to the estate.

3           So to the extent they make that objection, we would

4   respectfully disagree.

5           There is also a suggestion that the plans should

6   provide that preference actions go in the litigation trust.  I

7   think we had a full afternoon on disclosure and plans.  That's

8   not something we can resolve in this motion and that is left to

9   the various plans and how they resolve what goes into

10  litigation trusts.  So I don't think that's an appropriate

11  objection to a standing motion.

12          So I think so far, Your Honor, it sounds like a

13  fairly plain vanilla standing motion without -- with the

14  debtors' consent and without a substantive objection.

15          However, the Aurelius pleading and Wilmington Trust

16  pleading has gone much further and they've apparently

17  challenged the business judgment of the debtors.  They've

18  challenged the oversight of the creditors' committee, and I

19  think the underlying allegation is we've left a lot on the

20  table that are not being prosecuted in terms of potential

21  preference actions.

22          And the relief they're seeking, I think, is somewhat

23  extraordinary.  It seems to be in the form of some mandatory

24  injunctive relief forcing the committee to take on additional

25  preference actions, potential preference actions mandating that

1  debtors bring them or that they consent to the standing of the

2  committee to bring them.

3        The debtors and the committee have responded to

4  this.  We filed two affidavits, which go in some detail to the

5  due diligence done by both the debtors and by the committee,

6  and that's the affidavit of Brian Whitman (phonetic) from

7  Alvarez and Marsal, and Brad Houl (phonetic) from Alex

8  Partners.

9        Mr. Houl highlights his -- something like sixteen

10 meetings with the debtors, several days camped out in Chicago

11 at the debtors' headquarters pouring over reams and reams of

12 data revolving around potential preferences.

13       And what has transpired in this process is that the

14 committee, working closely with the debtors, have determined

15 which are the viable claims that should be brought and those,

16 which for a variety of reasons as set forth in the debtors'

17 papers, should not be brought in their business judgment and

18 exercising their discretion.

19       So, Your Honor, I would suggest all of that is

20 peripheral to the standing motion we are seeking today.  There

21 are a variety of remedies which were available to Aurelius if

22 they thought there were actions that should be brought that

23 were not brought.  They could have brought their own motion

24 seeking standing.  The debtors invited them to do that.  They

25 obviously declined to do it, or they could have started some

1  kind of adversary proceeding in seeking injunctive relief.

2  They did not do that either.  What they've done is couched some

3  dirt in -- in their papers casting aspersions on the debtors

4  and its process and the committee and on its process.

5        We have responded to those.  We're prepared to go

6  forward if you think it's appropriate on an evidentiary basis.

7  We're prepared to rely on the affidavits.  It's really up to

8  Your Honor whether you think this is relevant to the relief and

9  the motion the debtor is seeking -- the committee is seeking

10 today.  If it is, we're prepared to go forward and put

11 witnesses on.

12        Frankly, Your Honor, I don't think it is.  I think

13 it is procedurally improper and unrelated to the relief we're

14 seeking, which is standing relief.

15        So with that I'll pause, Your Honor, and take my

16 guidance from you.

17        THE COURT:  Well, I'll hear preliminarily from the

18 parties have filed pleadings in connection with this motion and

19 then I'll decide where to go from there.

20        MS. ANDERSON:  Good afternoon, Your Honor.  Janet

21 Henderson, Sidley & Austin on behalf of the debtor.

22        Your Honor, I just wanted to briefly add to what Mr.

23 Seife said.

24        Your Honor directed, I believe, at the October 22nd

25 hearing that the debtors share their analyses with respect to

1  preference payments with Aurelius and Wilmington Trust.  The

2  debtors have done that over a series of several conference

3  calls and in person meeting, and by providing Aurelius and

4  Wilmington Trust with ongoing materials as part of a preference

5  analysis, a preference analysis that culminated in several

6  hundred pages of back-up documentation, various computer runs,

7  transfer by transfer analyses, determinations as to arithmetic

8  quantitative defenses, calculations as to qualitative defenses,

9  calculations as to what even should be considered within the

10 universe of potential preferences, all starting within the

11 very, very large universe of the statement of financial

12 affairs, Schedule 3(b) which is nothing more than several

13 computer runs of gross payments and is meaningless in and of

14 itself absent analysis.

15        The debtors spent considerable time with their

16 financial advisors in drilling down, coming to conclusions,

17 vetting those conclusions, vetting the assumptions, vetting the

18 analyses with the creditors' committee, numerous meetings with

19 the financial advisors in a very intensive process.  And while

20 Aurelius and Wilmington Trust suggest that this all just sprang

21 up overnight, that's absolutely not the case.

22        Analyses were done previously in connection with the

23 process proceeding the prior plan.  Your Honor may recall that

24 that plan, which was endorsed by the senior noteholders, called

25 for payment in full of creditors at the subsidiary level.  That

1  analyses was admittedly more geared towards payments at the

2  parent level because of the intended treatment at the

3  subsidiary level, but the analyses was certainly underway at

4  that juncture and was recommenced at a later -- at a later

5  point after that plan came off the table.

6          In any event, Your Honor, perfectly happy to spend

7  time with the papers we've already filed and with Mr. Whitman's

8  declaration.  However, I would say that in light of the fact

9  that both Aurelius and Wilmington Trust have come forward and

10  said, rather remarkably, first, we don't want standing, but we

11  want the committee to take standing to essentially rule on the

12  -- excuse me -- essentially sue on the statement of financial

13  affairs some three-thousand vendors and 900 million in

14  payments, we would just like you to file suit on that.  We

15  don't want you to take into account any defenses.  We don't

16  want you to do any analysis.  We just want you to file lawsuits

17  or otherwise toll those.  We think that's a remarkable

18  proposition entirely inconsistent with the exercise of

19  fiduciary duties or business judgment.  It's an exercise in

20  failing to draw lines and failing to appropriately exercise

21  judgment and discretion and it would be extraordinarily

22  damaging to the business to proceed that way.

23          Having said that, they have now put in issue the

24  process that we have undertaken and we are fully prepared to

25  vet that process with Your Honor today.  We think that the

1   relief that they ask for is completely unfounded.  We think

2   they have not met the burden of showing any colorable claims

3   that should be pursued, and they certainly haven't even

4   attempted to meet the burden of showing that we have

5   unjustifiably refused to bring claims that would benefit the

6   estate.

7              For that reason and without getting into further

8   argument at this juncture, we would just note for the Court

9   that we would be pleased, if it would be beneficial to the

10  Court at this point to offer Mr. Whitman.  We think his

11  testimony would go for about thirty minutes, but we understand

12  Your Honor will make that determination.

13             THE COURT:  Thank you.

14             Let me hear from the objectors.

15             MR. GOLDEN:  Thank you, Your Honor.

16             Daniel Golden, Akin, Gump, Strauss, Hauer & Feld,

17  counsel for Aurelius Capital Management.

18             Your Honor, in many ways the committee's preference

19  standing motion, the response is filed by Aurelius and

20  Wilmington Trust, and the reply's filed by both the committee

21  and the debtors are a microcosm of the current state of these

22  Chapter 11 cases.

23             The relief sought by the committee's standing

24  motion, both of them, not just the one that Mr. Seife

25  presented, but the additional one, is -- the relief sought is

 1   not very complicated or even controversial.  It's the history

 2   leading up to the filing of these motions that creates the

 3   friction.

 4            It simply cannot be lost on this Court, especially

 5   after the eight or nine hours we've been here today, that the

 6   pre-LBO creditors of these estates consisting primarily of 1$.2

 7   billion of senior notes and some amount of notes somewhere in

 8   the range of 760 million to $1.2 billion for which Wilmington

 9   Trust acts as the indentured trustee, have lost faith in and

10   feel betrayed by the very fiduciaries, the debtors and the

11   creditors' committee, who they -- who they expected to

12   represent and protect their interest.

13            In these Chapter 11 cases the central issue and it

14   has always been whether the failed 2007 leverage buyout which

15   settled -- which saddled these debtors with additional debt of

16   approximately $8 billion, whether that additional debt

17   constituted voidable fraudulent conveyance claims and how these

18   estate will treat such claims in its plan or any plan of

19   reorganization.

20            Your Honor, the pre-LBO creditors always expected

21   that the LBO lenders would be the natural opponent for them in

22   connection with those two gating issues.  But what wasn't

23   expected was that the debtors and the official committee would

24   join forces with the LBO lenders in an attempt to "settle"

25   major aspects of that potential fraudulent conveyance

1  litigation out from under the pre-LBO noteholders who naturally

2  were the primary and are the primary beneficiaries of such

3  litigation for settlement amounts that we believe bear no

4  reasonable relationship to the actions being settled.

5          And it's a direct consequence of that conflict that

6  we are now saddled with the almost unheard of proposition of

7  four competing plans of reorganization and the attending chaos

8  that attends that competitive plan process.

9          As Your Honor knows, Aurelius and the three other

10  pre-LBO indentured trustees have filed the competing plan which

11  at its core has one overriding goal:  To allow the debtors to

12  quickly and unconditionally emerge from Chapter 11 while

13  maintaining the status quo with respect to that fraudulent

14  conveyance litigation which is now actually pending pursuant to

15  an order of this Court.  This goal of maintaining the status

16  quo will continue to predominate as we work our way through the

17  competing plan process.

18          Not surprisingly, the decision by the debtors and

19  the creditors' committee to undercut the pre-LBO noteholders

20  with this punitive settlement creates a prism through which the

21  pre-LBO creditors will view the activities of the rest of these

22  cases, all of which is a way of background which brings me to

23  the standing motion today.

24          As set forth in our response, Aurelius has no

25  objection to the relief sought, but rather we believe that the

1  motion and the relief sought does not nearly go far enough.

2  And specifically what Aurelius is seeking is the following

3  direction for the Court:  A direction that the committee

4  commenced not only the identified preference actions described

5  in the standing motion -- or I should say motions, but, also,

6  all other potential preference actions identified by the

7  committee and the debtors in their preference analysis.

8          Similar to the order authorizing the commencement of

9  the LBO fraudulent conveyance actions, we would like the

10 direction that all commenced preference actions should

11 automatically be stayed pending the completion of the competing

12 plan process for reasons I'll get to in a moment.

13         Third, prohibiting settlements of these commenced

14 fraudulent -- preference actions as between the debtors and the

15 committees, again, pending the completion of the completing

16 plan process.

17         And, fourth, transferring the pending preference

18 claims to the applicable litigation trust established under the

19 competing plan that's actually confirmed.

20         In reply to this response by Aurelius, the debtors

21 and the committee spill quite a bit of ink braying about how

22 unprecedented and inappropriate these requests are.  And, yes,

23 Your Honor, the relief we are seeking is quite extraordinary

24 and, actually, a bit extreme until one considers as to whether

25 there are truly any other practical alternatives given the

1  current posture that we now find ourselves in with the absolute

2  preference bar date being only nine days away on December 8th.

3           THE COURT:  I know, Mr. Golden.  But they're alleged

4  claims in search of a plaintiff, aren't they?

5           MR. GOLDEN:  No, Your Honor.  They -- there are

6  preference claims, we believe, far in excess of what the

7  debtors in their business judgment believe should be commenced.

8  It is ultimately a question of business judgment and I think

9  that answer -- that question will be answered in connection

10  with the competing plan process.

11          But the problem is given the posture that the

12  debtors have put us in -- and this is -- make no mistake about

13  it -- a problem created by the debtors, and we'll get to that.

14  We are nine days away.  So if they've made a mistake and it

15  turns out that the debtors' plan is not the one that's

16  confirmed, but Aurelius's plan or the Step One noteholders plan

17  or the bridge plan or any other plan that has as a element of

18  it the preservation of preference claims for the benefit of

19  pre-LBO holders who are not getting paid in full under any of

20  those plans, it will be -- it will have been too late.

21          I can't change the date.  This date has been known

22  for -- from the moment these cases were filed and we'll get to

23  the process that led us up to where we are today, but if

24  anybody has put a gun to our head's, it's not Aurelius.

25  Aurelius isn't the fiduciary in this case.  It's the debtors

1  and the creditors' committee.  They waited until the eleventh

2  hour and fifty-ninth minute to make a determination as to which

3  preference claims should be brought and which ones shouldn't be

4  brought.

5          They -- the debtors and the committee, quite

6  remarkably we believe, believes that Aurelius has moved to --

7  has sought this relief to obtain a tactical advantage or that

8  they're employing gainsmanship simply in an attempt to show up

9  the debtors and the creditors' committee.  That's not it at

10  all.  There's no tactical advantage we gain by the relief we

11  seek.  We want to maximize our recoveries.  We don't think the

12  debtors or the committees or the lenders' plans maximizes

13  recovery for the pre-LBO noteholders.  We certainly don't think

14  the process that they're employing with respect to these

15  preference actions maximize recoveries for the pre-LBO

16  noteholders.

17          And as I said, Your Honor, we recognize the

18  extraordinary nature of this relief, but it's been done before.

19  The debtors make a point that this is a reorganization.  It's

20  not a liquidation.  A lot of times preference actions aren't

21  even brought, any of them are brought when you have

22  reorganization.

23          Well, they prove that because in their April 12th

24  plan they had a specific provision that released all preference

25  actions, not just preference actions that could be asserted by

1    the subsidiaries, but all preference actions.  So any debtor

2    that had a preference action would have had those preference

3    actions released under the April 12th plan.

4          Let -- let's review for a moment, Your Honor, a

5    little of the history.  Cases were filed on December 8th, 2008.

6    Debtors and committee employed very sophisticated experienced

7    professionals.  They knew what the absolute bar date was of

8    December 8th, 2010 for commencing or forever losing preference

9    actions.  This date has never varied.  It's never changed.

10          As I mentioned, on April 12th, the debtors filed a

11   plan that, in Section 11.2.6 that expressly released all

12   preference actions.  And although that that plan was scuttled,

13   we don't really hear again about the preference analysis until

14   October -- until a hearing at this court on October 22nd.

15   We're only six weeks away from the absolute bar date on October

16   22nd, and Mr. Lantry took the podium to describe the process

17   that the debtors were undertaking with respect to the

18   preference analysis, and I would just like to quote, with your

19   indulgence, from that transcript:

20          "Your Honor, may -- maybe I would address one

21          other item.  I know any number of parties have

22          asked about this.  I don't think it goes to the

23          form of order, but I still think it's something

24          that's lurking around here.

25          "Many of the parties have said, what are the

1        debtors and the creditors' committee going to be

2        doing with regard to preference actions, and I

3        can describe the ongoing process and the end

4        game.

5        "The ongoing process was started before the

6        original plan was proposed between the debtors

7        and the creditors' committee with sharing our

8        analysis of all preferential transfers"

9        We'll come back to that point in a second because

10   the affidavit filed by the committee's financial advisor seems

11   to suggest that they weren't involved in the process until mid-

12   October, last month, not back in April.

13        Continuing:

14        "We did that, you know, back in that period of

15        time and that was under a global settlement plan.

16        The scrutiny that we and the creditors' committee

17        have engaged since that plan is no longer in play

18        and particularly in conjunction with the last

19        month of activities has been very much more

20        intense and focused as we dig a whole lot deeper

21        after all the potential -- about all the

22        potential preference causes of action.

23        "Bottom line, I can assure you that the debtors

24        and the creditors' committee will stay in

25        contact.  Our financial advisors are meeting, you

1              know, numerous times each week with the lawyers

2              to go through a process that we have agreed seem

3              satisfactory to each party" -- each of those

4              parties -- "and to make sure that they agree with

5              our business judgment about that.  We are

6              briefing the rest of the co-plan proponents about

7              that process as well."  I assume they meant their

8              own plan proponents.

9         Well, two things are interesting about that passage

10  from Mr. Lantry:

11        Number one, they confirm that the intent preference

12  analysis being undertaken by the debtors at that time, and it's

13  further confirmed by the affidavit of Brad Houl of Alex

14  Partners, the financial advisors for the committee, that that

15  process, that in-depth process did not begin until the month of

16  March -- the month of May, 2010, two months away from the

17  absolute preference bar date.

18        Furthermore, on that very same date the debtors and

19  their confirmation-proponents filed their new plan of

20  reorganization and while it wasn't crystal clear whether they

21  were trying to preserve preference actions in that plan, what

22  was clear that even if they were attempting to preserve

23  preference actions, the benefits of those preference actions

24  were not to go to the pre-LBO creditors.  And there's just no

25  mistake about that.  They were not going to put those

1  preference actions into the litigation trust.  Creditors --

2  pre-LBO creditors under their plan were only getting cash and

3  interest in the creditor trust.  So if they recovered $10

4  million in a preference, that would go to reorganized Tribune.

5  The pre-LBO creditors who were being paid far less than in full

6  under their plan were not going to see a nickel of the

7  preference actions under the October 22 plan.

8           Your Honor, at the end of that hearing, recognizing

9  the severe time constraints, you stated as follows:

10          "The only comment I'll make on that is consistent

11          with what I've said before, and that is if the

12          debtor wants to finish the process, that's fine.

13          My only concern is that it be finished in time so

14          those who might disagree would have the

15          opportunity to ask the Court to consider a plan B

16          before statutes expire."

17          Your Honor, the debtors did what they promised they

18  would do.  On October 28th, late in the evening, they sent us

19  the first cut of their preference analysis in preparation for a

20  telephone conference the following day.  There was a subsequent

21  telephone conference and then, finally, there was an in-person

22  meeting, I think, on November 12th in Chicago at the officers

23  of Sidley and Austin, then only three-and-a-half weeks away

24  from the absolute preference bar date.

25          And although at these calls and meetings it was --

1  the debtors indicated that the preference analysis was ongoing,

2  certain things were apparent to Aurelius and Wilmington Trust:

3            First, that according to the debtors and their

4  preference analysis, they were taking a potential universe of

5  $900 million worth of payments that were made to third parties

6  within they ninety days of the bankruptcy and reducing that

7  number down to something like $350 million.

8            Now we understand there are going to be defenses to

9  potential preference actions.  There's going to be some

10 business judgment employed.  There's going to be some

11 materiality standards employed.  But we didn't understand the

12 magnitude to take what could have been or started out as a

13 potential 900 and reduce that down to 350, and of that $350

14 million round numbers that they were going to attack or seek to

15 commence preference actions, $250 million of such payments were

16 to be pursued by the committee and a hundred -- approximately

17 $100 million was to be pursued by the debtors.

18            We are now nine days away from the absolute

19 preference bar date.  We asked the debtors to identify the

20 amounts and the identities that make up the $100 million of

21 preference actions that they say that they're going to commence

22 before the absolute bar date or obtain tolling agreements from.

23 We're still waiting for an answer.

24            One other thing or a couple of other things are

25 clear.  Based upon the analysis that was shown to us by the

1  debtors, it came to our attention that there were approximately

2  $60 million of payments made within that ninety-day period to

3  three so-called significant vendors of the debtor.  They won't

4  let me identify their names, but they're names that are well

5  known because each one of them was the subject of their own

6  bankruptcy.  We asked, did you file a proof of claim in those

7  bankruptcy proceedings to preserve your preference claim before

8  the bar date.  The answer was, no, they didn't.  They've spent

9  quite a bit of time explaining now why they didn't do that at

10  the time.

11       They also haven't advised us which of the members of

12  the creditors' committee, several of which who have also

13  received very large payments aggregating in the millions of

14  dollars within the ninety-day period, which one of those

15  creditors' committee members are to be sued.  We don't have an

16  answer to that either.

17       It sends a signal to Aurelius, given that they

18  aren't trying to preserve preference claims for the benefit of

19  pre-LBO creditors; given that there were $60 million of

20  payments to vendors who were the subject of their own

21  bankruptcy, never filed a proof of claim; failed to and refused

22  to identify the $100 million of preference payments that the

23  debtors say they're going to file actions for or obtain tolling

24  agreements in the next nine days.  It doesn't give a Aurelius

25  and the other pre-LBO holders a great deal of comfort.

1           We are at a crossroads here.  We're at an

2   unbelievably crushing time deadline.  And so they say, well,

3   why didn't Aurelius file a standing motion.  Is it really

4   reasonable to expect to a single creditor whose not getting

5   paid from the estate to go out and bring preference actions,

6   which are typically the domain of a creditors' committee or the

7   debtors?  I just don't think that that's a suitable explanation

8   for their course of action.

9           We pointed out to the debtors that there are other

10  Chapter 11 cases, very successful reorganized Chapter 11 cases

11  where liquidation or litigation trusts have been set up to

12  house estate litigation including preferences.  We gave them

13  the example of the LyondellBasell case, a case that I'm

14  personally familiar with, at least as large as this case, at

15  least has the kind of relationships with their vendors that

16  they have to worry about, and in that case with a more willing

17  management they agreed to an arrangement between the

18  liquidation or litigation trustee and reorganized management as

19  to allow the actions to be brought.

20          Now I'll acknowledge they weren't facing the same

21  time crushing deadline that we're facing here, but to allow the

22  litigation trustee to bring those preference actions so long as

23  the management couldn't give a good reason why it would hurt

24  business.  We're not looking to hurt Tribune, but we are

25  looking to maximize recoveries here.  The relief we're seeking

1   is truly extraordinary, but given where we are, a problem that

2   has been created by both the debtors and the creditors'

3   committee, we don't have a better solution.

4          Now there is one other solution that would take the

5   time -- would take the heel off the throat or the shoe off the

6   throat or whatever that expression is to alleviate the time

7   pressure, and I know people are going to jump up and down.  But

8   if under the bankruptcy code, if you appoint a trustee for the

9   purpose -- for the limited purpose of bringing these actions --

10  or, actually, you just appoint a trustee, but I don't want to

11  suggest that we're -- I'm seeking to displace management here.

12  That's not my purpose for saying this.  But I think Your Honor

13  is well aware that under the bankruptcy code if you appoint a

14  trustee within the initial two-year period, it extends for a

15  year the time deadline to bring these preference actions.

16         All Aurelius and Wilmington Trust are trying to do

17  is to maximize recoveries for pre-LBO creditors.  That's a

18  process, a motivation that we think has been lost on the

19  debtors and the creditors' committee.  There is no -- there is

20  no good reason at all that even the preference claims that the

21  creditors' committee and the debtors are seeking to bring

22  within the time deadline, that they're not putting them into

23  the litigation trust unless they relate to the leverage buyout

24  transaction.  Why else would there be -- what other explanation

25  can there be for not putting preference actions in the

1    litigation trust, but rather giving them and the proceeds

2    therefrom to reorganized Tribune when the debtors know under

3    their very plan pre-LBO creditors won't see a single penny from

4    that.

5         So, Your Honor, I stand here today acknowledging

6    that the relief we're seeking is extraordinary, but

7    extraordinary circumstances sometimes require extraordinary

8    remedies.  So absent the appointment of a trustee which would

9    extend the statute for a year, we don't see a better way and

10   more viable way, a more practicable way of preserving these

11   causes of action for the benefit of pre-LBO creditors.

12         Thank you.

13         THE COURT:  Thank you.

14         MR. NOVOD:  All right.  Good evening, Your Honor, I

15   should say as we approach the late hour so I'll keep my

16   comments short.  Gordon Novod of Brown Rudnick on behalf of

17   Wilmington Trust.

18         I join in Mr. Golden's comments and argument to the

19   Court today, and I rise just to raise a handful of short items

20   that I would like to highlight for the Court as well in support

21   of the limited objection and response filed by both Aurelius

22   and Wilmington Trust.

23         It should be noted, as Your Honor if of course

24   aware, we spent quite a bit of time today talking about

25   disclosure statements and plans, and it should be noted here at

1  least that the pursuant of preference actions, in particular,

2  should not be simply left to the debtors as a plan proponent to

3  pursue in a manner which is consistent with their plan and

4  their plan alone.  There are other plans here that provide for

5  different treatments of preference claims and those claims, in

6  fact, should be preserved and should not be waived or destroyed

7  as the debtors would see fit.

8         And, in fact, Your Honor, I would posit to the Court

9  that it was quite a long time ago that the debtors actually

10 took the view that these claims should be waived or released,

11 or at least belong to the reorganized debtor, and my client,

12 Wilmington Trust, had stood up before this Court on a number of

13 occasions to remind the estates and, also, the other

14 fiduciaries that these claims should be preserved, at least

15 until a manner in which they can be decided in the context of

16 plan confirmation.

17        And as Mr. Golden did say, there are cases where we

18 reorganized debtors do preserve preference claims and do pursue

19 them, and Lyondell is a good example of that.  There are other

20 cases as well where debtors come up against the statutory

21 limitation and seek to preserve claims.

22        One example that I can think of is the Delphi case

23 where the debtors, in the days before they hit their two-year

24 statute of limitations -- limitation filed over 700 preference

25 actions, and the manner in which they filed that has been

1  subject to recent court opinion, but it doesn't change the fact

2  that the debtors there in Delphi, which if people will recall

3  in the fall of 2007 was a hundred cent plan to unsecured

4  creditors, the debtors there at least had the -- had it within

5  their own sense of obligation to preserve those claims.

6          That being said, Your Honor, a few different points:

7          One, I just -- perhaps I'll just clarify for

8  Wilmington Trust's sake, in our papers we had mentioned that

9  there were three committee members who preference claims were

10 going to be pursued against and, at least from my personal

11 knowledge, we are aware of those entities and the names of the

12 actual potential defendants.  And I just wanted to highlight

13 that for the record.

14         That said, you know, we did also highlight a handful

15 of other issues in our written papers, one was the fact that

16 the debtors are choosing to walk away from preference claims in

17 using their business judgment.  I think that's in instances in

18 Mr. Whitman's declaration on Page 13 where they talk about

19 strategic business relationships.

20         I wonder who these vendors are and how that relates

21 to the critical vendor order that Your Honor signed early in

22 the case.  If they were such strategic vendors then, perhaps,

23 they should have been critical vendors.  And, in fact, if they

24 were critical vendors here, which is another defense that the

25 debtors have raised along with a 503(b)(9)-type defense as a

1   justification for not pursuing those claims, I wonder to the

2   Court why the critical vendor order and the critical vendor

3   agreements themselves did not waive preference claims.  Rather,

4   the orders reserve all rights to pursue preference claims

5   against these particular vendors.

6          So it's convenient and easy to make the argument

7   that certain vendors enjoy a special relationship with the

8   debtor and should be protected, but, frankly, Your Honor, the

9   confirmation hearing, unfortunately, is not going to be held

10  for a few months and I think it would be premature to waive and

11  forever squander any opportunity to pursue claims because the

12  debtors and the committee may see the world one way and other

13  major pre-LBO constituencies like the phones, who I represent,

14  see it a different way.

15         That said, Your Honor, we'll rely on the remainder

16  of the comments that were made.  I do wish to, though, point

17  out that there's been a lot of discussion of preference claims,

18  but there hasn't been much discussion of other fraudulent

19  conveyance claims that arise out of theories other than the LBO

20  and what analysis was done with respect to those claims.

21         And so, you know, in many respects I wonder if the

22  debtors have even conducted an analysis to see if whether or

23  not there are any other fraudulent conveyance claims out there

24  other than the LBO claims which we've spent a lot of time on.

25         And, unfortunately, as Your Honor will recall, my

1  partner, Robert Starks, stood here before you mid-October and

2  said, Your Honor, we're concerned.  We would like to know what

3  the analysis is.  We would like to know how the debtors and the

4  committee are getting to the position that they've already

5  preordained themselves to get to as far as treatment of

6  preference claims, and we've now seen some of that analysis,

7  but we haven't seen all of it.

8           And so, you know, as Mr. Golden has suggested, the

9  analysis and the relief requested by both Aurelius and

10 Wilmington Trust is extraordinary.  However, there are estate

11 fiduciaries here who have obligations to preserve claims for

12 the benefit of creditors regardless if their view of how a plan

13 should work is ultimately that which is approved by this Court

14 or if the other major creditor constituencies, either the Step

15 Ones, the Bridge or the pre-LBO noteholders' plans is

16 ultimately confirmed.

17          Thank you, Your Honor.

18          MR. SEIFE:  Just briefly, Your Honor, if one were

19 just listening to Mr. Golden's argument on behalf of Aurelius,

20 one might think that the debtors and the committee were sitting

21 on their hands and letting the deadline go by for bringing

22 preference claims or getting tolling agreements unheated.

23 Rather, $525 million of potential claims will either be brought

24 or there will be tolling agreements by that deadline if Your

25 Honor orders the relief sought today.

1          I think what we heard rather from Aurelius was plan

2 objections; that they have a different view of the litigation

3 trust, what should go in the litigation trust, and we've also

4 heard a direct challenge of the business judgment of the

5 debtors and the committees' oversight and participation in the

6 process of the review and analysis of the potential preference

7 claims.

8          And I just have to harkens back to some of the

9 rhetoric at the disclosure statement hearing that we need to

10 impose some common sense here, Your Honor.  And common sense

11 dictates that one doesn't sue each and every recipient of

12 payments in the ninety-day period.

13          THE COURT:  In fact, Rule 11 might preclude it.

14          MR. SEIFE:  And, in fact, Your Honor, the committee

15 is not prepared to violate Rule 11 and takes strong objection

16 to having thrust upon it the bringing of litigation it doesn't

17 believe is appropriate.

18          So what happens here is there has to be some adult

19 supervision and judgment applied to what claims are brought and

20 what claims aren't brought, and that is exactly what has

21 happened.

22          So, Your Honor, we're prepared to demonstrate by

23 facts and witnesses and evidence of that process.  We heard no

24 evidence from the objectants.  We heard speculation and

25 accusations.  We have not not heard evidence or the ability to

1  put forward evidence to challenge the debtors' business

2  judgment or the committees' supervision of the process.

3         So we're prepared to do that if Your Honor thinks

4  it's necessary, otherwise we would ask that the motion be

5  granted.

6         MS. ANDERSON:  Janet Henderson again, Your Honor.

7  Thank you for indulging me for a few more minutes.

8         What I am struck by is that notwithstanding the

9  rather long argument that Mr. Golden advanced, he made no

10 specific allegations about claims.  He said that he wanted to

11 know who on the committee was an issue and then Mr. Novod stood

12 up and said, they told us, and we did.

13        He said, we don't know who they're going to -- who

14 they're going to sue.  Well, there are 3,000 vendors

15 approximately.  We have gone through on a category by category

16 basis how we have analyzed this.  We have set forth numerically

17 and by amount what it is we intend to do.  Short of providing

18 him with a list of ACME steel or whoever it happens to be --

19 which, by the way, I believe he's gotten that also as part of

20 the materials that he's been provided on a confidential basis -

21 - but the notion that we have not shared with him in fulsome

22 detail what it is we are going to do and why, what claims we

23 are going to bring and why, how we set materiality thresholds

24 and why, how we determined arithmetic defenses, how we

25 determined qualitative defenses and why, and he probed.

1          And that got very, very specific in terms of the

2   kinds of vendors that we are talking about and why we felt that

3   it would not be appropriate in certain instances to take on

4   certain kinds of claims because we thought they would be far

5   more damming to the business than helpful to the business, and

6   we believe and we think it's self-evident that when one talks

7   about the benefit to the estate and maximizing and preserving

8   value to the estate and one is talking about going concern

9   business that create value for creditors and not about the

10  liquidation and division of a carcass in a scenario where

11  assets are sold or liquidated and everybody is scrambling for

12  the last penny of recovery, that in that scenario, in the

13  former scenario, the benefit to the estate standard is,

14  frankly, has to be more thoughtful, more qualitative than

15  simply a calculation of arithmetic defenses.  And we have,

16  without apology, looked at the universe from that point of

17  view.

18          Now it seems to me that when you really drill down

19  what Mr. Golden is saying is, well, you know, Judge, we've just

20  kind of concluded there are no fiduciaries left in the house

21  and that being the case, we don't trust anything the committee

22  says, we don't trust anything the debtor says, so, yeah.  We

23  really do want them to go out and file suit against 3,000

24  vendors and just lift their schedule of statement of financial

25  affairs out as though that were a litigation analysis and act

1  on it.

2          Your Honor, that -- that really doesn't even merit

3  response and I think what I would say at this juncture is that

4  if Your Honor would like -- oh, let me make one other point

5  that I think does bear noting.

6          The idea of fulfilling your fiduciary duty in a --

7  from the point of view of the standard enunciated in

8  Cybergenics and other cases requires that you look at the -- as

9  I mentioned a moment ago, the benefit to the estate.  And

10  sometimes in making these decisions, obviously we were careful

11  to vet these with the committee and its financial advisors to

12  bring them into the analysis every step of the way, and

13  candidly, we didn't always agree.  And we changed our

14  determinations in certain respects based on feedback that we

15  got from them.  We lowered, for example, the threshold for --

16  the materiality threshold for litigation or tolling agreements

17  with so-called inactive vendors, who have become inactive since

18  the case began, to $25,000.  We agreed with them, ultimately,

19  that we have to do that.  We did that after discussion with

20  them and at their specific request.  We had had a higher

21  threshold as is reflected in my letter to Mr. Golden and Mr.

22  Novod of November 18th or November 17th.

23          Additionally, we looked at many of the same issues

24  together.  We came in some instances to different conclusions.

25  Not everybody in this room is happy about everything the

1    committee is doing.  Lots of professionals are going to be

2    asked to enter into tolling agreements.  The paint is pretty

3    broadly shared here in terms of the results of this analysis.

4         For example, far from having a fox in the henhouse

5    as Cybergenics speaks to in determining the appropriate

6    derivative standing to be conferred on a creditors' committee,

7    in this case the debtors have called the balls and strikes so

8    cleanly, so objectively, that we have a circumstance where we

9    have concluded that Wilmington Trust client, the Phones, who

10   received approximately 6 million in payments on exchanges that

11   were made immediately prior to the petition date, that we

12   initially had in the pursue category, we have concluded on

13   careful analysis and reflection that we believe under the Third

14   Circuit's standard, under Section 546(e) those are settlement

15   payments.

16        Not everybody's happy with our having reached that

17   conclusion.  But we did reach that conclusion and we're going

18   to stick by it because we believe that is the right decision

19   and we believe that bringing a preference claim that may not

20   qualify as a preference claim probably does skate a little

21   close to Rule 11 and we're not going to do that.

22        Similarly, we are going to be tolling or preserving

23   claims against some of the senior lender plan proponents.  That

24   doesn't make them very happy.

25        So -- and I should say the committee will be taking

1    on those claims.

2            So the fact of the matter is there are a lot of ox's

3    getting gored as a result of this analysis and everybody is

4    pretty unhappy at some level depending on where they shake out

5    in that analysis, but the one thing that it shows, Your Honor,

6    is that we are the grown-ups in the room.  We have acted

7    responsibly with the committee and it is no answer -- it's a

8    cheap shot, but it is no answer and it doesn't merit serious

9    consideration to simply say, well, there are no fiduciaries

10   left.  That simply isn't the case.  And, candidly, it's an

11   irresponsible thing to say and the position they take is

12   irresponsible in their papers.

13           With respect to other actions, there's a little bit

14   of a needle in a haystack quality to this.  They've said, well,

15   apparently we can't trust you about anything, so, okay.  We've

16   got the LBO over here.  You're doing the preference analysis

17   here.  What about anything else?  Well, the fact of the matter

18   is that procedures were put in place with respect to any

19   potential kinds of 549 issues when the case was commenced.  Mr.

20   Whitman can speak to that.

21           Additionally, we have looked at transactions over a

22   million dollars, normal kinds of sales, acquisitions,

23   investment transactions going back to the time of the Step One

24   portion of the -- ultimately of the leveraged buy-out closing

25   in June of 2007 in order to assess arms' length bona fides

1  indicia of those deals that were indicia of fair value, et

2  cetera.  That analysis has been and that was done more on the

3  legal side.  There are a couple of smaller transactions that

4  may wind up being in the nature of a 502(d) objection on a

5  claim because the counterparty may not be solvent at this

6  juncture.  But that analysis has been done.

7          So the fact is that there was this frenzy created

8  around the preference analysis that has been a large portion of

9  our conversations with these folks today.  But the notion that

10  the debtor had abnegated its responsibilities here is simply

11  untrue and if Your Honor were to indulge Mr. Whitman, I think

12  we could drive that point home.

13          Thank you.

14          THE COURT:  Well, both the Aurelius and Wilmington

15  Trust have acknowledged that the relief that they request in

16  their objections are extraordinary.  But, you know, what I find

17  extraordinary here is that the objectors actually have no

18  objection to the relief that's been requested.

19          So I don't think the committee needs to provide an

20  evidentiary record in connection -- in support of the relief

21  that it requests.

22          Now I can certainly understand why Aurelius and

23  Wilmington Trust may feel abused by the process that's been

24  employed here for the almost two years the case has been

25  pending and by the failure of others to allocate what they

1   think is the appropriate enterprise value of this estate.

2            But I think the objectors here -- and I agree with

3   one other thing.  Mr. Golden said it.  I don't think Aurelius

4   should feel compelled or be required to file its own standing

5   motion.  I agree with that.  But, you know, maybe there's a

6   corollary that goes with that and that -- that is, if -- if

7   there has appeared a gap in what should have happened here,

8   that doesn't mean that there is a remedy that's been

9   appropriately teed up to fill the gap, and here I don't think

10  there has been.

11           The objectors have framed their objection around

12  what should be done -- what should have been done, not -- not

13  as a dispute about what is being requested.  For the first

14  time so far as I can tell in connection with this series of

15  pleadings, Aurelius has asked for a trustee.  I don't remember

16  seeing that in your objection.

17           But even if I -- even if it had been there and I had

18  seen it, there are due process considerations.  I mean, even --

19  even when I have on very rare occasion, and I think I've only

20  done it once since I've been sitting in Delaware, entered an

21  order to show cause about whether a Chapter 11 trustee should

22  be appointed.  I did so in such a way that gave interested

23  parties the opportunity to weigh in on that.

24           Here, there's been no such opportunity.  And as I

25  suggested when Mr. Seife was at the podium, to authorize and

1    then direct the filing of preference adversaries with respect

2    to defendants in connection with whom nobody has determined

3    there is a valid claim -- well, a winnable claim anyway,

4    understanding that by definition the fact alone that a payment

5    has been made may be considered arguably a preference subject

6    to defenses -- just seems to me to be epithetical to the proper

7    conduct of litigation and it's not -- certainly not a practice

8    that I wish to encourage under these circumstance and I can't,

9    for the moment, envision any circumstances under which I would

10   condone it.

11           Now that's not to say there might not be

12   consequences if, in fact, the debtor here has failed to do

13   something that its fiduciary obligations have compelled it to

14   do, and the same might apply to the committee.  But I don't

15   think those issues are framed properly before me today.  The

16   relief that's been requested is appropriate under the

17   circumstances.  There is no objection to that relief and I will

18   approve it.

19           MR. GOLDEN:  Your Honor, I just -- I just want to

20   make -- I fully understand Your Honor's ruling.  I just want to

21   make one clarification.  We did not seek the appointment of a

22   trustee either in our papers, so you didn't misread something,

23   or did I stand up today.  I was -- I was reacting or suggesting

24   that the relief we sought was the only practicable relief we

25   thought -- we could think of under the -- given the

1 | circumstances.  The only other alternative was the appointment
2 | of a trustee would have the effect of extending the statute.
3 | So I just -- I want to make it clear.  We did not
4 | seek a trustee either in our papers or nor did I do it through
5 | an attempted oral application today.
6 | THE COURT:  Well, it sounded like an oral
7 | application today, but --
8 | MR. GOLDEN:  Well, I --
9 | (Laughter)
10 | THE COURT:  Look, I understand you might have been
11 | thinking aloud and from your standpoint, yes.  It would have
12 | solved the immediate problem.  I don't disagree.
13 | MR. GOLDEN:  And while I'm not arguing the ruling at
14 | all, Your Honor --
15 | THE COURT:  That's a good thing.
16 | (Laughter)
17 | MR. GOLDEN:  Thank you.
18 | We thought long and hard about what the Court might
19 | have meant as to a Plan B, and this was the best Plan B we
20 | could come up with under the circumstances.
21 | THE COURT:  I understand.
22 | MR. SEIFE:  Your Honor, I would like to hand up an
23 | order.  There will be a blackline which will show two changes
24 | from what was submitted:  The first I already eluded to in the
25 | last ordered paragraph of the second page which removed the

1  language that Aurelius found objectionable.

2          The second will be an expanded footnote on the first

3  page which expands slightly the definition of preference

4  actions to also include Section 548 claims based on the same

5  transfers.  The reason that is included given the cash

6  management system of the debtors, we didn't -- we wanted to

7  make sure we were not missing inadvertently any such claims.

8          So with that, I would like to hand up a clean and a

9  blackline.  I have copies here if anyone would like to see the

10  order.

11          THE COURT:  Have copies been circulated?

12          MR. SEIFE:  To Aurelius, but other parties may want

13  to see it, including Wilmington Trust.

14          THE COURT:  Okay.

15          (Pause)

16          THE COURT:  All right.  Does everyone who has wanted

17  to see it seen a copy of the revised order and does anyone have

18  a comment with respect to the revisions that have been proposed

19  to the order?

20          (No verbal response)

21          THE COURT:  I hear no response.

22          The order has been signed.

23          MR. SEIFE:  Thank you, Your Honor.  There is a

24  second standing motion which the committee is bringing and Mr.

25  Sottile will argue that motion.  Hopefully, that will be

1    somewhat briefer.

2         THE COURT:  Thank you.

3         MR. SOTTILE:  Your Honor, James Sottile of Zuckerman

4    Spaeder, special counsel to the committee of unsecured

5    creditors.

6         The second standing motion in many ways follows the

7    form of the first one and I don't think need detain the Court

8    long in light of Your Honor's resolution of the first standing

9    motion.

10        What's at issue here is the committee's request for

11   standing to either enter into tolling agreements or, if

12   necessary, commence preference actions against twelve

13   defendants, all of which are professionals that are currently

14   engaged by the debtors.

15        The total amount at issue in terms of payments to

16   those professionals during the ninety-day preference period is

17   a little over sixteen-and-a-half-million dollars.  The claims

18   were identified through the same process that the Court has

19   heard about in connection with the first standing motion; that

20   is, the debtors' professionals did an analysis of payments and

21   potential defenses.  The committee's professionals reviewed

22   that analysis and the result was identification of twelve firms

23   of professionals that received payments during the preference

24   period that appeared to be viable and where -- notwithstanding

25   the application of defenses, there appeared to be amounts that

1    would be recoverable as a preference even if those defenses

2    were ultimately established.

3              As with the first standing motion, we believe that

4    the record set forth in the affidavits that were submitted

5    there with shows that these claims would meet the standards set

6    forth by the Third Circuit in Cybergenics.  They are in the

7    best interest of the estate because that analysis shows that

8    there is value to the claims, that it is worth pursuing for the

9    benefit of creditors of the estate, and it's in the best

10   interest of the estate and necessary that the claims be

11   presented by the committee rather than the debtors because

12   these are all current professionals that are doing work for the

13   debtors and the debtors' judgment with respect to potential

14   resolution of those claims would necessarily be called into

15   question if they were the ones pursuing the claims.

16             The debtors, recognizing those conflicts, have

17   consented to the committee pursuing these claims either by way

18   of a tolling agreement, which is our preferred course of

19   action.  Given the small number of firms we believe that we are

20   likely to be able to enter into tolling agreements with most,

21   if not all of these entities, or if we're not able to reach

22   agreement on tolling with any of them, we would -- the debtors

23   consent to our filing preference actions against them.

24             The proposed order has the same terms with respect

25   to any preference actions that we actually file as with the

1    first standing motion; that is, they would be stayed with the

2    limited exceptions set forth therein and the claims couldn't be

3    settled without consent from both the committee and debtors and

4    this Court's approval.

5              A single objection was filed to the motion, Your

6    Honor, by the Law Firm of Jenner and Block, one of the subjects

7    of the motion for standing, and I have --

8              THE COURT:  I have not seen -- I have not seen that

9    objection.

10             MR. SOTTILE:  It was filed, I believe, last evening,

11   Your Honor, but I think I can report to the Court that that

12   objection is going to be withdrawn.  We have, given the

13   accelerated time schedule, had only a very limited opportunity

14   to discuss this matter with Jenner and Block prior to their

15   filing the objection.

16             We've had further discussions with them thereafter.

17   They've reviewed a draft form of tolling agreement and I

18   understand -- and their counsel, Mr. Bradford, will advise the

19   Court if I've overstated or misstated their position -- that

20   based on their review of the tolling agreement and their

21   discussions with the committee, they are prepared to withdraw

22   the objection on the understanding that we will proceed to

23   negotiate a tolling agreement and have further discussions with

24   them about the potential preference claim against Jenner and

25   Block.

1        And if Mr. Bradford has anything to add or subtract,

2    I would invite him to do so.

3        MR. BRADFORD:  That's correct, Your Honor.

4        THE COURT:  All right.  Thank you.

5        The order that I entered fixing this matter for

6    hearing on short notice provided that objections could be

7    presented at the time of hearing.  Are you aware of any other

8    objections are is there anyone who has an objection to this

9    relief that's being requested?

10        MR. SOTTILE:  We have not been made aware of any of

11    their objections, Your Honor.

12        THE COURT:  All right.  I hear no further response.

13        Does the committee have anything further in support

14    of its motion?

15        MR. SOTTILE:  Your Honor, we would be in a position

16    to submit evidence, if the Court thought that was necessary.

17    The committee does not believe it is necessary given the lack

18    of objection and the evidentiary record presented by way of

19    affidavits with respect to the first standing motion.

20        THE COURT:  Does anyone wish to be heard in

21    connection with this motion?

22        (No verbal response)

23        THE COURT:  I hear no response.

24        Is there a proposed form of order?

25        MR. SOTTILE:  There is, Your Honor.  It has the same

1    two changes that Mr. Seife identified with respect to the first

2    standing order, and the one I will hand up to the Court and

3    make available to any parties that wish to review it, shows

4    those changes in blackline as well as a clean version.  But

5    it's the same changes that the Court has seen and that were

6    described with respect to the first standing motion.

7                THE COURT:  All right.

8                MR. SOTTILE:  May I approach, Your Honor?

9                THE COURT:  You may.

10               Thank you.

11               (Pause)

12               THE COURT:  Is everyone who wishes to have had an

13   opportunity to review the revised proposed form of order and if

14   so, are there any comments?

15               (No verbal response)

16               THE COURT:  I hear no response.

17               In the absence of objection, I'm prepared to grant

18   the relief that's been requested.

19               MR. SOTTILE:  Thank you, Your Honor.

20               THE COURT:  That order has been signed.

21               Okay.  That leaves -- I think the only remaining

22   open item on the agenda today is the procedures motion.

23               MR. SOTTILE:  Your Honor, with some trepidation --

24   may I beg the Court's indulgence for one moment on another

25   matter relating to the complaints filed by the committee on

1  which we will be seeking relief from the Court shortly?

2          THE COURT:  Why not?

3          MR. SOTTILE:  Literally one minute, Your Honor.

4          Your Honor, as the Court is aware the -- while the

5  complaints were generally stayed after they were filed, the

6  committee was permitted to pursue discovery needed to try to

7  address potential limitations issues, and following the filing

8  of the complaints, the committee has served literally hundreds

9  of subpoenas seeking largely the identity of individual

10 shareholders in an effort to name as many individual

11 shareholders with material holdings as possible prior to the

12 reigning of the limitations period.

13         We are getting the responses to be expected, Your

14 Honor, objections, requests for more time and so forth, as well

15 as some substantive responses.

16         It is clear to us from the responses we have

17 received so far that the process of attempting to identify

18 those defendants is going to be a continuing one.  And we

19 believe that we can address the limitations issues, Your Honor,

20 by filing a motion seeking to enlarge the time for service of

21 the complaints on defendants because we will be, I think, in

22 the process of identifying shareholders for some period after

23 the hundred-and-twenty-day period generally provided for

24 service under Rule 4(M) of the federal rules.

25         And I just wanted to alert the Court that that

1   process is ongoing.  We anticipate filing within the next eight

2   or nine days a motion to extend the period for service intended

3   to address the limitations issues that are arising simply

4   because of the difficulties of identifying shareholders within

5   the limitations period.

6              And related to that, Your Honor, I understand that

7   JP Morgan will be updating a register of holders and we will be

8   seeking disclosure of that as well so that we can ensure that

9   we are named as current a list of holders of debt as possible

10  with respect to the complaints.

11             Thank you for your indulgence, Your Honor.

12             THE COURT:  Thank you.

13             Back to procedures, I will put off until the hearing

14  next Monday considerations of the procedures motion.  I would

15  like to ask the debtor, though, that along with -- and others -

16  - but ask the debtor to provide by Wednesday at five o'clock,

17  the same time for the filing of any revisions or proposed

18  revisions, a chart which indicates the status of objections to

19  the procedures motion and so that I can know whether any of the

20  issues have been narrowed and, if not, make the appropriate

21  preparation for the hearing.

22             MR. KANSA:  Your Honor, Ken Kansa of Sidley Austin

23  on behalf of the debtors.  We have been able to narrow some of

24  the issues.  We will provide an appropriate chart to the Court

25  identifying what we've resolved and what we may still have

1    remaining for the Court to resolve.

2              THE COURT:  Okay.

3              Thank you.

4              Is there anything further for today?

5              (No verbal response)

6              THE COURT:  Thank you all very much.  That concludes

7    this hearing.

8              Court is adjourned.

9              MR. LANTRY:  Thank you, Your Honor.

10          (Whereupon at 5:39 p.m., the hearing was adjourned)

11

12                         CERTIFICATION

13          I certify that the foregoing is a correct transcript

14   from the electronic sound recording of the proceedings in the

15   above-entitled matter.

16

17

18

19   Sherri Breach                    December 1, 2010

20   AAERT Cert. No. 397

21   Certified Court Transcriptionist

22

23

24

25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**1125(a)(1)(1)** 27:3

**503(b)(9)-type(1)** 199:25

**_____debtors.__** 1:13

**a.m(4)** 1:16  11:1  50:23  50:23

**abbott(1)** 6:12

**abbruzzeese(2)** 9:14  9:15

**abhor(1)** 150:7

**abid(1)** 4:17

**ability(10)** 46:1  92:21  120:11  128:24  144:8  155:23  176:6  177:24  178:1  202:25

**able(17)** 16:3  18:14  50:6  53:9  79:22  82:1  84:19  84:20  105:14  114:10  127:2  144:3  144:11  152:7  214:20  214:21  219:23

**abnegated(1)** 208:10

**about(122)** 11:16  11:11  11:17  11:20  12:13  13:4  16:11  16:17  17:23  18:9  19:10  22:21  22:23  23:1  23:2  23:11  23:14  23:15  27:7  30:6  33:11  33:14  39:15  41:3  41:15  44:13  46:10  47:9  52:2  52:17  54:8  55:17  56:19  57:2  57:12  57:14  57:24  58:11  58:21  59:3  59:22  64:21  67:9  69:16  71:10  73:9  74:11  76:2  77:24  82:18  82:22  88:4  94:20  96:19  97:4  98:20  99:17  101:2  101:6  102:5  104:19  105:1  108:3  108:16  113:25  116:3  118:8  118:22  124:20  129:9  133:14  133:18  133:23  139:25  140:12  146:7  146:23  156:6  156:22  157:23  158:20  160:22  161:19  164:2  165:1  166:2  168:22  169:17  171:1  172:19  173:24  174:24  183:11  186:21  187:12  189:13  189:22  190:21  191:5  191:6  191:9  191:25  195:16  197:24  199:18  203:10  204:2  204:7  204:8  204:9  205:25  207:15  207:17  209:13  209:21  211:18  213:19  215:24

**above(2)** 110:9  141:11

**above-entitled(1)** 220:15

**absence(2)** 138:5  217:17

**absent(2)** 181:14  197:8

**absolute(7)** 187:1  189:7  189:15  191:17  192:24  193:18  193:22

**absolutely(5)** 54:4  115:1  128:24  172:9  181:21

**abused(1)** 208:23

**academic(1)** 69:7

**accelerated(1)** 215:13

**accept(6)** 35:6  144:1  144:10  144:12  152:23  153:4

**acceptance(2)** 144:3  159:15

**accepted(3)** 56:5  159:15  165:20

**accepting(1)** 144:13

**accepts(1)** 123:25

**accompany(1)** 131:15

**accompanying(2)** 33:17  137:8

**accomplished(1)** 155:8

**according(4)** 64:13  68:5  72:21  193:3

**account(7)** 104:8  104:8  128:25  129:3  137:11  152:17  182:15

**accrued(1)** 111:6

**accumulated(1)** 56:12

**accurate(5)** 38:1  56:8  63:11  86:1  110:1

**accurately(2)** 58:8  165:2

**accusations(1)** 202:25

**ace(7)** 6:4  20:24  21:10  21:17  22:2  22:9  135:3

**acknowledge(5)** 23:16  23:22  114:19  174:22  195:20

**acknowledged(1)** 208:15

**acknowledging(1)** 197:5

**acme(2)** 17:19  203:18

**acquisitions(2)** 58:6  207:22

**act(1)** 204:25

**acted(1)** 207:6

**action(25)** 12:8  22:16  23:22  24:1  24:5  25:20  27:18  34:12  41:11  44:22  48:5  92:22  93:1  96:24  96:25  99:21  100:2  100:3  118:25  175:17  189:2  190:2  195:8  197:11  214:19

**actions(51)** 22:18  25:12  31:4  31:6  107:10  107:18  137:18  176:18  177:5  178:6  178:21  178:25  178:25  179:22  185:4  186:4  186:6  186:9  186:10  186:14  188:15  188:20  188:25  188:25  189:1  189:3  189:9  189:12  190:2  191:21  191:23  192:1  192:7  193:9  193:15  193:21  194:23  195:5  195:19  195:22  196:9  196:15  196:25  198:1  198:25  207:1  212:4  213:12  214:23  214:25

**activities(2)** 185:21  190:19

**acts(1)** 184:9

**actual(2)** 113:24  199:12

**actually(30)** 17:24  17:25  24:19  42:23  56:22  60:2  82:5  83:25  84:14  90:23  91:14  92:18  99:18  110:25  116:17  121:23  121:25  132:10  132:14  132:20  144:6  162:12  167:3  185:14  186:19  186:24  196:10  198:9  208:1  214:25

**adam(1)** 2:5

**add(15)** 19:8  22:14  23:3  23:14  30:21  37:24  38:2  60:18  86:12  141:6  142:20  142:22  167:10  180:22  216:1

**added(14)** 14:18  19:11  26:8  47:1  47:10  45:14  87:21  109:21  109:23  110:10  140:8  164:12  165:21  168:16

**addenda(1)** 14:8

**addendum(1)** 16:2

**addition(14)** 14:23  161:2

**additional(19)** 21:6  22:6  35:19  39:16  48:15  48:16  49:12  50:24  56:4  93:15  99:22  144:18  161:3  164:12  164:16  178:24  183:2  184:15  184:16

**additionally(2)** 205:23  207:21

**additive(1)** 154:9

**address(34)** 13:8  15:9  18:1  19:20  20:19  20:23  20:25  44:6  47:13  50:6  50:9  52:5  56:20  56:24  63:16  69:21  79:22  79:22  93:6  96:7  96:8  101:22  101:24  112:6  135:7  141:13  141:14  153:5  157:4  167:7  189:20  218:7  218:19  219:3

**addressed(10)** 19:7  27:25  38:14  63:13  69:20  79:24  99:19  112:19  171:6  172:2

**addresses(2)** 29:16  143:6

**addressing(2)** 156:2  167:11

**adds(1)** 15:8

**adelphia(2)** 128:23  153:2

**adequate(2)** 141:20  165:25

**adjective(1)** 75:4

**adjourned(2)** 220:8  220:10

**adjudicated(1)** 59:22

**adjudicating(1)** 131:3

**adjudication(1)** 50:4

**adler(1)** 4:46

**administration(1)** 145:17

**admire(1)** 169:23

**admittedly(2)** 147:8  182:1

**adopt(1)** 28:15

**adoption(1)** 76:12

**adult(1)** 202:18

**advance(3)** 76:25  78:6  78:6

**advanced(2)** 76:23  203:9

**advances(4)** 77:6  77:9  78:23  78:25

**advancing(1)** 76:15

**advantage(4)** 124:13  173:5  188:7  188:10

**advantageous(1)** 104:3

**adverb(1)** 75:4

**adversaries(1)** 210:1

**adversary(3)** 42:16  62:1  180:1

**adverting(1)** 105:7

**advertised(1)** 24:22

**advisable(1)** 177:4

**advise(1)** 215:18

**advised(1)** 194:11

**advisor(1)** 190:10

**advisors(7)** 59:13  100:24  181:16  181:19  190:25  191:14  205:11

**advisory(1)** 154:11

**advocacy(4)** 131:20  131:22  143:16  164:4

**advocate(3)** 104:24  124:9  134:5

**advocate's(3)** 114:23  117:9  150:14

**advocated(1)** 148:24

**advocates(2)** 133:18  134:20

**aert(1)** 220:20

**affairs(4)** 104:21  181:12  182:13  204:25

**affect(3)** 43:14  92:21  117:6

**affected(1)** 51:11

**affects(1)** 95:9

**affidavit(3)** 179:6  190:10  191:13

**affidavits(4)** 179:4  180:7  214:4  216:19

**affiliates(1)** 176:7

**afraid(1)** 28:18

**after(21)** 13:5  15:7  25:2  40:20  84:7  84:13  88:24  93:16  121:6  142:14  148:4  155:9  157:14  163:15  167:14  182:5  184:5  190:25  205:19  218:5  218:22

**afternoon(11)** 11:17  59:25  92:5  101:19  151:18  171:1  171:2  171:6  173:13  178:7  180:20

**again(50)** 12:18  13:20  15:23  16:17  16:20  16:24  19:15  20:19  21:3  21:15  26:6  26:23  31:17  34:18  40:12  41:16  42:6  46:2  46:14  47:6  47:12  47:16  49:18  49:21  50:18  51:6  58:3  63:8  66:16  69:11  72:7  79:4  79:21  99:12  101:16  101:20  106:21  107:15  110:16  115:14  122:12  144:23  145:2  150:7  155:19  169:24  170:24  186:15  189:13  203:6

**against(55)** 13:9  22:16  23:23  24:14  25:1  25:12  25:16  23:22  26:3  26:11  27:13  30:21  31:4  31:5  31:6  39:4  39:5  39:9  40:25  41:2  43:12  45:5  47:3  49:22  61:10  61:14  61:16  62:5  64:25  72:4  79:9  102:3  105:7  116:7  124:4  135:20  138:1  140:13  146:18  156:9  166:23  167:1  168:11  168:12  175:18  176:7  176:9  180:19  180:20  200:5  204:23  206:23  213:12  214:23  215:24

**agenda(10)** 11:7  13:14  19:22  34:13  51:17  62:17  143:8  143:17  154:7  173:19  217:22

**agent(2)** 5:5  70:18

**ago(9)** 83:2  83:6  105:1  147:3  148:2  155:8  155:12  198:9  205:9

**agree(19)** 24:3  66:9  66:25  70:10  70:24  78:15  78:15  78:16  80:6  108:3  134:19  147:6  165:14  174:22  177:13  191:4  205:13  209:2  209:5

**agreed(18)** 72:13  74:3  114:21  139:9  139:19  150:24  156:21  157:24  158:5  162:1  162:18  168:25  174:3  174:8  177:12  191:2  195:17  205:18

**agreeing(1)** 67:12

**agreement(41)** 4:29  35:8  54:9  54:13  54:18  58:2  65:12  65:13  65:15  76:18  76:22  76:24  76:25  79:1  79:2  82:14  82:15  83:12  83:15  83:16  83:18  83:25  84:9  84:15  84:18  84:20  88:6  88:20  88:23  89:3  89:13  89:15  98:13  99:6  122:1  173:24  214:18  214:22  215:17  215:20  215:23

**agreements(11)** 76:19  165:7  193:22  194:24  200:3  201:22  201:24  205:16  206:2  213:11  214:20

**agrees(1)** 40:21

**ahead(8)** 35:11  51:5  70:8  88:17  114:17  135:2  143:20  172:12

**ahmed(1)** 9:40

**akin(7)** 4:12  8:39  30:11  35:13  151:19  166:12  183:16

**albeit(2)** 121:10  127:3

**alert(1)** 218:25

**alex(2)** 179:7  191:13

**all(165)** 11:2  11:12  11:15  12:7  13:10  15:2  15:4  16:5  16:10  19:25  20:23  21:5  22:20  22:24  23:21  23:21  24:4  24:5  24:8  26:5  27:20  29:13  30:14  30:15  31:1  34:5  34:11  35:18  38:3  38:3  40:9  42:23  42:24  43:23  46:5  47:15  49:8  49:19  50:21  50:24  50:25  54:6  56:4  56:11  56:17  58:6  59:8  60:6  60:12  60:19  61:3  62:11  64:19  65:16  65:16  66:10  67:24  70:1  70:7  70:8  76:19  77:2  77:15  78:23  79:12  79:22  81:10  86:8  86:15  86:17  87:1  88:2  88:3  88:4  88:4  88:15  88:19  88:21  89:5  89:9  89:11  89:14  95:9  96:17  97:5  101:12  101:14  102:7  102:13  104:8  107:17  109:7  110:12  111:24  111:25  112:1  115:23  118:17  120:2  120:21  123:2  125:7  128:17  129:15  130:9  131:5  135:2  135:9  135:20  135:21  137:7  137:19  137:21  137:23  138:1  138:2  140:3  143:5  145:20  147:15  154:2  156:2  156:16  157:22  158:2  158:4  160:3  161:16  161:18  164:22  166:4  166:8  168:15  169:25  173:6  173:16  175:8  175:25  179:19  181:10  181:20  181:20  185:22  186:5  186:10  188:10  188:24  189:1  189:1  190:1  190:1  190:21  190:16  196:20  197:14  200:4  201:7  211:14  212:16  213:13  214:12  214:21  216:14  216:12  217:7  220:6

**allegation(2)** 146:25  178:19

**allegations(3)** 146:24  172:4  203:10

**allege(1)** 98:13

**alleged(3)** 26:11  76:3  187:3

**allege(1)** 98:13

**alleviate(1)** 196:6

**allinson(1)** 3:31

**allocable(1)** 96:23

**allocate(1)** 208:25

**allocated(2)** 56:4  91:12

**allocation(41)** 54:12  52:20  52:21  52:23  53:6  54:10  54:15  54:21  56:18  58:13  58:25  59:19  59:20  60:6  60:14  80:12  80:18  80:24  81:3  81:19  82:2  82:3  82:6  82:17  82:20  82:22  83:4  83:20  93:4  108:17  108:20  108:24  109:4  109:12  109:14  114:12  158:22  158:24  158:25  161:24  168:23

**allocations(2)** 109:16  165:5

**allow(8)** 23:13  24:16  60:12  93:10  95:23  185:11  195:19  195:21

**allowable(3)** 40:21  88:21  110:17

**allowance(5)** 77:14  81:11  82:9  90:1  110:14

**allowed(14)** 61:23  89:11  89:18  89:19  110:15  110:18  137:11  137:20  137:25  138:2  141:11  149:18  152:12  155:21

**allowing(1)** 60:6

**allows(3)** 39:6  39:8  77:12

**alluring(1)** 112:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**almost**(9) 13:9 13:18 46:7 56:9 70:11 102:12 104:25 185:6 208:24

**alone**(6) 68:7 77:9 128:4 150:17 198:4 210:4

**along**(5) 11:22 36:14 70:19 199:25 219:15

**aloud**(1) 211:11

**already**(13) 63:5 78:1 80:10 84:7 87:5 130:23 135:3 159:20 162:18 165:7 182:7 201:4 211:24

**also**(44) 14:14 24:24 25:17 26:4 26:16 29:14 34:23 39:8 39:13 41:10 42:7 43:9 47:3 49:2 61:7 61:15 65:5 66:19 68:24 71:16 79:7 85:6 85:10 86:4 86:12 89:24 141:10 153:25 154:10 160:11 160:25 161:25 164:1 172:15 176:6 178:5 186:5 194:11 194:12 198:13 199:14 202:3 203:1 212:4

**alter**(1) 16:23

**alternative**(1) 211:1

**alternatives**(1) 186:25

**although**(8) 25:17 65:13 78:15 82:15 113:15 139:14 189:12 192:25

**altogether**(2) 102:2 174:9

**alvarez**(2) 9:11 179:7

**always**(7) 24:24 46:15 78:19 141:2 184:14 184:20 205:13

**amanda**(1) 4:6

**amazed**(1) 147:25

**ambiguity**(1) 150:21

**amended**(4) 11:13 35:19 36:8 164:2

**amendment**(1) 133:12

**amendment**(1) 126:17

**america**(2) 7:15 7:20

**americas**(1) 5:18

**amit**(1) 8:20

**among**(5) 36:22 65:18 74:12 104:8 105:12

**amongst**(3) 12:10 22:22 158:1

**amount**(37) 20:11 60:2 63:15 64:22 68:6 71:16 72:14 89:11 89:13 89:20 98:18 100:24 110:15 110:23 110:25 111:4 111:5 111:10 111:23 137:10 137:25 140:24 141:3 141:11 141:15 141:16 143:10 146:4 149:17 149:18 150:9 152:12 152:14 160:23 184:7 203:17 213:15

**amounts**(11) 73:1 88:4 88:5 88:19 88:22 89:12 89:14 119:2 185:3 193:20 213:25

**ample**(1) 109:14

**amplification**(1) 162:5

**analyses**(6) 180:25 181:7 181:18 181:22 182:1 182:3

**analysis**(52) 57:11 58:1 58:15 60:25 82:17 82:21 82:25 83:3 83:7 83:11 83:18 83:19 84:8 98:11 99:12 99:2 109:2 113:23 114:2 139:25 181:5 181:5 181:14 182:16 186:7 189:13 189:18 190:8 191:12 192:19 193:1 193:4 193:25 200:20 200:22 201:3 201:6 201:9 202:6 204:25 205:12 206:3 206:13 207:3 207:5 207:16 208:2 208:6 208:8 213:20 213:22 214:7

**analysts**(1) 18:3

**analyzed**(1) 203:16

**and**(301) 11:6 11:13 11:14 11:15 11:20 12:7 12:9 12:9 12:10 12:11 12:15 12:16 12:17 12:18 12:19 12:22 12:22 13:4 13:8 13:10 13:11 13:14 13:14 13:15 13:16 13:18 13:18 13:19 13:19 13:22 13:23 13:24 13:24 13:24 13:25 13:25 14:5 14:6 14:9 15:3 16:1 16:3 16:5 16:6 16:7 16:10 16:11 16:11 16:13 16:19 16:22 17:1 17:1 17:3 17:4 17:11 17:15 17:16 17:16 17:17 17:20 17:22 17:23 17:25 18:2 18:3 18:4 18:7 18:10 18:15 18:15 18:18 18:19 19:1 19:11 19:14 19:15 19:22 19:23 19:25 20:10 20:13 20:18 20:24 20:25 21:4 21:4 21:5 21:16 21:17 21:19 21:20 21:21 21:24 22:6 22:11 22:14 22:16 22:22 22:24 23:3 23:4 23:4 23:6 23:7 23:8 23:10 23:22 23:23 23:23 24:1 24:7 24:10 24:13 24:14 24:14 24:19 24:25 25:4 25:6 25:11 25:16 25:21 25:22 25:24 26:3 26:4 26:9 26:11 26:14 26:16 26:17 26:18 26:24 27:5 27:10 27:14 27:17 27:20 27:21 28:5 28:6 28:10 28:10 28:14 28:15 28:17 29:1 29:3 29:5 29:9 29:11 29:13 29:17 29:24 30:2 30:8 30:16 30:19 31:5 31:18 31:24 32:2 32:3 32:5 32:14 32:23 32:25 33:6 33:7 33:7 33:11 33:12 33:14 33:14 33:18 33:22 34:12 34:14 34:14 34:15 34:21 34:25 35:4 35:5 35:6 35:17 35:18 35:18 36:5 36:10 36:13 36:13 36:15 36:18 37:12 37:18 38:10 39:6 39:6 39:16 39:25 41:5 41:13 41:18 42:5 42:18 42:21 42:22 43:8 43:17 44:3 44:22 44:23 45:3 45:6 45:8 45:13 45:14 45:15 45:16 45:20 45:24 46:6 46:14 47:8 47:10 47:11 47:14 47:16 47:17 47:20 47:23 48:7 48:10 48:11 48:12 48:13 48:15 48:16 48:17 48:22 48:22 48:25 49:2 49:2 49:4 49:9 49:10 49:20 50:13 50:14 50:17 50:17 51:11 51:20 51:21 51:21 51:22 51:25 52:2 52:11 52:17 52:18 52:18 52:19 52:21 52:22 52:23 52:25 53:1 53:4 53:7 53:7 53:16 53:18 53:22 53:23 53:23 54:1 54:3 54:10 54:11 54:13 54:16 54:20 54:24 56:2 56:14 56:19 56:19

**and**(301) 56:23 57:5 57:8 57:8 57:9 57:9 57:11 57:11 57:12 57:15 57:15 57:18 57:19 57:21 57:22 58:1 58:2 58:5 58:8 58:8 58:14 58:17 58:20 58:22 59:1 59:3 59:5 59:6 59:6 59:7 59:8 59:8 59:10 59:13 59:21 60:1 60:12 60:14 60:15 60:15 61:4 62:10 62:18 62:24 63:5 63:9 63:13 63:14 63:24 64:6 64:7 64:8 64:12 64:19 65:1 65:11 65:20 65:24 66:1 66:5 66:5 66:19 66:19 67:8 67:10 67:24 68:9 68:15 68:17 68:20 68:20 68:25 69:8 69:9 69:20 69:20 69:20 69:22 69:24 70:2 70:6 70:10 70:18 70:18 70:18 70:22 71:3 71:9 71:15 71:17 71:18 72:1 72:1 72:2 72:3 72:10 72:11 72:12 72:15 72:21 73:1 73:2 73:3 73:5 73:5 74:6 74:8 74:14 74:24 75:9 75:9 75:12 75:15 75:18 75:23 76:2 76:4 76:4 76:5 76:13 76:15 76:19 77:1 77:6 77:7 77:13 77:24 78:4 78:21 79:1 79:9 79:21 79:25 79:25 80:2 80:4 80:14 80:18 81:3 81:6 81:11 81:12 82:1 82:3 82:6 82:9 82:10 82:24 83:5 83:21 83:23 83:25 84:1 84:16 84:18 84:20 84:20 85:10 85:15 85:16 85:22 86:5 86:16 86:18 86:19 86:22 86:22 86:25 86:25 87:2 87:6 87:9 87:9 87:18 87:25 88:1 88:3 88:5 88:9 88:19 88:22 88:22 88:23 89:5 89:14 89:18 89:19 89:20 90:13 90:19 91:8 91:12 91:17 91:21 91:23 92:12 92:15 93:16 93:16 93:17 93:19 93:20 93:22 93:25 94:5 94:6 94:10 94:14 94:19 94:20 94:24 95:9 95:11 95:17 95:20 95:20 95:22 96:4 96:7 96:11 96:12 96:13 96:16 96:20 96:24 96:25 96:25 97:2 97:5 97:5 97:11 97:18 98:16 98:19 98:22 99:2 99:12 99:13 99:16 99:22 99:22 100:7 100:8 100:9 100:9 100:14 100:21 100:22 100:25 101:4 101:5 101:9 101:11 101:17 101:22 102:2 102:6 102:8 102:8 102:12 102:15 102:21 102:25 103:3 103:1 103:20 103:22 104:6 104:7 104:9 104:9 104:10 104:13 104:18 104:20 104:23 105:2 105:4 105:14 106:9 106:11 106:15 107:8 107:11 107:13 107:15 107:2 108:5 108:7 108:7 108:8 108:8

**and**(301) 108:8 108:12 108:13 108:14 108:17 108:20 108:21 108:22 108:24 109:3 109:9 109:14 109:16 109:19 109:19 109:22 110:3 110:7 110:10 110:12 110:13 110:16 110:16 110:16 110:17 111:9 111:22 111:25 112:15 112:16 112:18 112:19 112:20 113:1 113:3 113:6 113:14 113:19 113:19 113:20 113:21 113:23 114:9 114:11 114:24 115:2 115:15 115:21 116:3 116:7 116:12 118:4 118:19 118:21 119:3 119:7 119:15 119:20 119:25 120:3 120:7 120:12 120:12 120:15 120:25 121:4 121:5 121:20 121:20 121:21 122:1 122:9 122:15 122:17 122:20 122:21 122:24 122:24 123:1 123:2 123:4 123:7 123:10 123:14 123:22 123:25 123:25 124:2 124:6 124:7 124:17 125:2 125:5 125:5 125:8 125:11 125:11 125:15 125:25 125:25 126:15 126:19 127:1 127:2 127:5 127:6 127:8 127:11 127:12 127:19 127:24 128:10 128:15 128:17 129:12 129:19 129:20 129:23 130:2 130:12 130:13 130:15 131:4 131:5 131:13 131:20 131:20 132:1 132:5 132:7 132:10 132:17 133:3 133:14 133:23 133:24 134:3 134:11 134:18 134:22 134:22 135:1 135:4 135:6 135:14 135:15 135:16 135:17 136:4 136:8 136:10 136:12 136:13 136:14 136:15 137:1 137:2 137:8 137:23 137:23 138:2 138:17 138:18 138:19 138:24 139:9 139:24 140:2 140:9 140:13 140:15 141:2 141:17 141:19 141:2 142:4 142:11 142:11 142:16 143:1 143:7 143:10 143:12 143:13 143:23 144:4 144:5 144:12 144:17 144:18 144:25 145:5 145:9 145:11 145:18 146:1 146:5 146:8 146:11 146:12 146:17 147:1 147:6 147:7 147:17 147:21 148:2 148:5 148:6 148:10 148:11 148:11 148:12 148:18 148:18 148:24 149:2 149:9 149:22 149:24 150:3 150:11 150:20 150:23 150:24 150:24 151:7 151:22 152:13 152:14 152:25 153:1 153:9 153:10 153:11 153:25 154:6 154:18 154:24 155:6 155:9 155:9 155:14 155:25 155:25 156:1 156:12 156:17 156:19 156:20 156:20 157:3 157:4 157:14 157:15 158:5 158:8 158:11 158:12 158:17 158:23 158:23 158:24 159:1 159:2 159:6 159:8 159:22 159:23 160:1 160:1 160:9 160:10 160:13 160:14 160:25 161:11 161:24 162:5 162:9 162:10 162:25 163:9 163:10 163:19 164:2 164:5 164:6 164:9 164:9 164:21 164:24 164:25 165:1 165:10 165:12 165:14 165:17 166:1

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 166:10 166:12 166:15 167:4 167:5 167:15 167:18 167:19 167:23 167:25 167:24 168:3 168:16 168:23 169:2 170:7 170:12 170:16 170:20 170:24 171:2 171:4 171:13 171:14 172:2 172:15 172:20 172:22 173:2 173:12 173:15 174:5 174:9 175:2 175:13 175:15 175:19 176:12 176:13 176:16 176:20 176:21 177:7 177:11 177:11 177:13 177:24 178:7 178:8 178:9 178:14 178:15 178:16 178:18 178:22 179:3 179:5 179:6 179:7 179:7 179:11 179:13 179:15 179:17 180:4 180:4 180:8 180:8 180:10 180:13 180:15 180:18 181:1 181:3 181:3 181:3 181:13 181:13 181:19 181:20 182:4 182:7 182:9 182:9 182:13 182:20 182:21 182:21 182:24 183:3 183:7 183:19 183:20 183:21 184:7 184:9 184:10 184:12 184:13 184:17 184:23 185:2 185:5 185:7 185:9 185:12 185:18 186:1 186:2 186:7 186:24 186:17 186:21 186:22 186:22 186:24 187:17 187:17 187:17 187:14 187:22 188:1 188:7 188:3 188:5 188:9 188:17 189:6 189:12 189:16 189:18 190:1 190:2 190:3 190:7 190:15 190:16 190:18 190:20 190:24 191:12 191:17 191:18 191:20 191:24 192:2 192:11 192:21 192:23 192:25 192:25 193:2 193:3 193:6 193:13 193:13 193:16 193:20 194:21 194:25 195:2 195:5 195:16 195:18 196:2 196:7 196:7 196:16 196:19 196:21 197:1 197:9 197:18 197:19 197:21 197:22 197:25 197:25 198:3 198:5 198:6 198:8 198:11 198:13 198:17 198:18 198:19 198:21 198:25 199:10 199:11 199:12 199:20 199:23 200:2 200:6 200:8 200:10 200:10 200:12 200:12 200:20 200:21 200:25 201:1 201:3 201:6 201:8 201:9 201:9 201:20 201:21 202:3 202:5 202:5 202:6 202:8 202:10 202:11 202:14 202:15 202:19 202:19 202:20 202:23 202:23 202:24 203:11 203:12 203:12 203:17 203:22 203:23 203:24 203:25 203:25 204: 204:2 204:5 204:6 204:7 204:7 204:8 204:9 204:10 204:11 204:15 204:21 204:2 204:24 204:25 205:3 205:8 205:9 205:11 205:12 205:13 205:20 205:21 206:7 206:1 206:17 206:19 206:21 206:25 207:3 207:7 207:8 207:10 207:11 208:2 208:11 208:14 208:22 208:25 209:2 209:6 209:9 209:17 209:19 209:24 209:25 210:7 210:8 210:14 210:17 211:11 211:13 211:18 211:19 212: 212:17 212:24 213:7 213:20 213:22 213:24 214:9 214:10 214:13 215:2 | | **answer**(15) 28:20 33:9 33:13 45:13 48:22 71:7 123:22 123:23 172:7 187:9 193:23 194:8 194:16 207:7 207:8 **answered**(1) 187:9 **anticipate**(2) 99:25 219:1 **anxious**(1) 173:19 **any**(111) 14:8 16:16 17:1 18:24 20:17 24:6 28:14 28:16 34:16 35:20 41:10 41:25 41:25 47:3 47:25 48:1 48:4 48:10 48:20 50:15 51:10 52:3 53:14 57:20 61:24 62:4 67:6 67:7 71:10 76:21 77:16 78:8 81:11 82:2 84:22 86:20 93:1 93:2 94:5 94:12 94:25 95:4 97:19 99:24 100:8 100:12 100:16 102:3 107:15 108:4 110:4 110:15 113:17 114:6 114:10 114:15 121:3 125:11 129:3 129:3 130:22 133:24 137:17 138:8 141:14 151:4 152:10 152:10 154:13 155:2 157:9 159:18 159:19 160:19 162:16 163:4 165:3 165:23 167:8 167:8 167:20 168:11 170:13 173:5 174:24 176:20 177:19 182:6 182:15 182:16 183:2 184:18 186:25 187:1 187:19 188:21 189:1 189:21 200:11 200:23 207:18 210:9 212:7 214:22 214:25 216:7 216:10 217:3 217:14 219:17 219:19 **anybody**(5) 85:19 111:16 114:10 130:3 187:24 **anymore**(3) 97:23 113:22 114:14 **anyone**(22) 20:1 45:11 50:25 51:14 52:7 56:17 59:12 62:14 105:4 114:24 120:10 143:3 143:7 148:15 156:3 156:14 162:21 174:11 212:9 212:17 216:8 216:20 **anyone's**(1) 18:8 **anything**(30) 24:4 37:1 40:9 46:25 50:6 60:21 60:22 61:2 67:18 68:20 82:22 98:2 99:14 110:16 118:8 121:21 124:3 126:13 143:7 158:12 160:18 162:11 164:20 204:22 204:22 207:15 207:17 216:1 216:13 220:1 **anyway**(4) 107:5 113:3 157:6 210:3 **anyways**(1) 161:13 **apart**(1) 19:23 **apologize**(4) 96:3 150:15 160:21 168:7 **apology**(1) 204:16 **appalling**(1) 132:14 **apparent**(1) 193:2 **apparently**(4) 54:9 145:7 178:16 207:15 **appeal**(1) 145:8 **appealing**(2) 31:18 32:19 **appearances**(4) 7:1 8:1 9:1 10:1 **appeared**(5) 50:17 114:20 209:7 213:24 213:25 **appears**(2) 73:3 163:18 **applicability**(1) 66:3 **applicable**(2) 159:18 186:18 **application**(6) 147:4 148:23 162:2 211:5 211:7 213:25 **applied**(2) 67:19 202:19 **applies**(3) 61:7 166:16 168:10 **apply**(12) 34:11 44:7 48:12 48:13 66:5 66:6 79:1 79:3 147:7 160:8 165:11 201:14 **applying**(4) 65:22 65:23 66:15 161:25 **appoint**(6) 117:5 120:24 132:16 196:8 196:10 196:13 **appointed**(5) 147:17 150:23 154:9 154:12 209:22 **appointmen**(3) 197:8 210:21 211:1 **appreciate**(3) 13:20 143:15 161:9 | | **approach**(8) 28:15 35:3 37:4 73:23 88:9 115:15 197:15 217:8 **approaching**(1) 67:11 **appropriate**(17) 20:14 22:3 39:24 42:6 71:6 84:21 93:3 177:14 178:10 180:6 202:17 204:3 206:5 209:1 210:16 219:20 219:24 **appropriately**(4) 18:20 62:10 182:20 209:9 **approval**(10) 27:1 43:1 93:19 93:21 94:7 99:24 113:16 177:18 181:1 215:4 **approvals**(1) 170:14 **approve**(6) 19:17 69:11 83:14 100:14 172:14 210:18 **approved**(8) 19:12 99:20 100:4 131:14 163:23 165:17 177:22 201:13 **approving**(1) 93:2 **approximately**(10) 72:19 81:15 94:18 136:19 175:21 184:16 193:16 194:1 203:1 206:10 **april**(11) 21:11 55:22 64:4 83:1 83:2 98:15 153:25 188:23 189:3 189:10 190:12 **apropos**(1) 20:13 **arbitrated**(1) 133:3 **are**(301) 12:13 12:25 13:1 13:7 14:13 14:22 15:6 15:19 16:9 16:11 16:11 16:13 16:23 17:10 17:10 17:15 18:11 18:21 18:24 19:19 21:18 22:18 24:5 24:11 24:1 24:17 25:1 25:17 25:20 25:23 25:24 26:1 26:12 26:15 26:16 26:25 26:25 27:19 27:20 28:8 28:10 31:8 31:12 31:14 33:8 33:15 33:18 34:10 35:8 36:10 37:13 38:7 38:14 38:22 39:9 39:12 39:12 39:13 39:17 39:20 40:2 40:3 40:16 41:8 41:8 41:25 43:19 43:23 44:2 44:20 45:14 45:14 45:17 47:21 48:1 48:20 49:6 50:20 52:3 53:17 53:20 55:3 55:18 56:10 56:15 57:7 57:20 61:17 61:22 62:2 63:25 64:11 64:20 64:21 64:21 65:6 65:10 65:11 65:14 65:14 65:19 65:21 65:22 66:12 66:13 66:23 67:2 67:9 67:10 67:12 67:17 68:5 68:7 68:7 68:16 68:17 68:18 68:18 68:19 68:23 68:24 69:1 69:2 69:3 69:5 69:5 70:19 70:24 70:24 71:14 72:9 72:10 74:2 75:9 77:2 77:4 77:4 79:18 81:13 87:17 87:23 91:19 92:23 93:12 93:12 94:23 96:14 97:1 98:5 98:23 99:25 103:13 103:14 103:16 103:24 105:12 105:13 106:10 108:19 109:11 109:25 110:14 110:18 112:17 114:22 115:4 115:4 116:25 117:25 120:2 120:2 121:5 123:21 124:14 124:16 124:19 125:4 125:5 125:8 126:3 126:19 127:1 128:15 129:10 129:12 129:11 130:11 130:24 131:20 134:7 134:23 135: 136:15 136:19 137:15 137:20 138:7 140: 140:25 142:11 146:3 146:12 146:24 150: 150:3 152:6 152:8 152:9 153:22 154:5 154:12 154:17 156:16 157:9 157:16 157:25 158:4 158:6 158:6 158:9 158:11 158:25 159:12 159:24 160:4 161:15 161:19 161:22 162:1 163:24 164:5 164:5 164:23 165:16 165:25 166:19 166:20 171:6 171:12 175:3 175:5 175:22 178:20 179:15 179:20 179:22 182:24 183:21 185:2 185:6 186:22 186:23 186:25 187:5 187:14 187:19 187:23 188:2 189:25 190:25 191:5 191:9 193:18 193:18 193:24 194:4 194:15 195:1 195:6 195:9 195:24 196:1 196:7 196:16 196:21 198:4 198:17 198:19 199:11 199:16 199:20 200:23 201:4 201:10 202:19 203:14 203:22 203:23 204:2 204:11 204:20 206:1 206:14 206:22 207:2 207:6 207:9 208:3 208:16 | | **are**(15) 209:18 210:15 213:13 213:13 214:6 214:12 214:12 214:19 215:21 216:7 216:8 217:14 218:13 219:3 219:9 **area**(1) 38:25 **aren't**(6) 13:8 36:11 187:4 188:20 194:18 202:20 **arguably**(1) 210:5 **argue**(8) 60:24 64:16 66:6 77:21 173:23 174:15 175:13 212:25 **arguing**(2) 80:25 211:13 **argument**(9) 27:9 75:6 78:6 108:16 183:8 197:18 200:6 201:19 203:9 **arguments**(6) 76:15 78:1 78:7 78:24 78:25 105:21 **arif**(1) 10:4 **arise**(1) 200:19 **arising**(1) 219:3 **arithmetic**(4) 14:5 181:7 203:24 204:15 **arkin**(1) 6:26 **arms**(3) 45:9 139:21 207:25 **armstrong**(1) 9:18 **army**(1) 18:2 **around**(13) 33:22 62:23 63:3 106:24 123:15 123:20 139:21 140:24 146:23 179:12 189:24 208:8 209:11 **arrange**(1) 95:11 **arrangement**(2) 94:21 195:17 **arranger**(2) 94:20 94:21 **arrangers**(4) 94:23 95:2 95:8 95:10 **arrived**(2) 82:2 82:22 **arrowgrass**(1) 10:4 **arrowhawk**(1) 9:24 **arsht**(1) 6:11 **articulate**(2) 39:22 152:12 **articulated**(6) 16:21 19:18 44:10 130:22 157:24 160:7 **ascribe**(1) 31:3 **ascribed**(1) 148:1 **ashby**(1) 4:4 **ashley**(1) 2:19 **aside**(1) 76:5 **ask**(33) 11:21 19:4 20:1 32:18 36:11 43:7 43:8 43:9 50:18 67:16 73:9 74:16 87:1 93:22 99:3 99:22 125:15 128:22 130:16 147:9 147:10 156:19 157:5 160:19 162:16 168:16 171:3 174:11 183:1 192:15 203:4 219:15 219:16 **asked**(28) 17:8 19:8 19:9 22:5 24:7 26:7 28:5 44:22 57:2 65:6 71:5 78:20 82:1 86:25 131:23 132:25 144:20 148:5 148:6 157:23 168:21 168:22 168:24 189:22 193:19 194:6 206:2 209:15 **asking**(16) 19:17 21:7 21:17 22:2 23:10 23:21 43:4 43:13 48:9 48:11 67:17 67:20 67:25 71:22 105:13 144:22 **asks**(2) 43:6 133:17 **aspect**(6) 11:8 17:17 27:16 66:4 79:8 **aspects**(5) 17:12 59:3 86:24 94:4 184:25 **aspersions**(1) 180:3 **assert**(2) 30:23 92:23 **asserted**(11) 20:24 20:25 41:6 41:10 41:13 42:10 48:1 61:10 160:16 167:21 188:25 **asserting**(3) 41:1 48:4 167:1 **assertion**(1) 156:8 **assertions**(1) 146:24 **asserts**(1) 30:21 **assess**(1) 207:25 **asset**(1) 7:28 |
| **and**(26) 215:3 215:3 215:6 215:7 215:14 215:17 215:18 215:20 215:23 215:24 216: 216:18 217:2 217:2 217:5 217:13 218:7 218:14 218:18 218:25 219:6 219:7 219:15 219:19 219:20 219:25 **anderson**(3) 3:16 180:20 203:6 **andrew**(8) 2:16 5:16 7:35 7:42 7:47 7:48 9:4 9:24 **andrews**(2) 5:44 20:4 **angeles**(1) 4:42 **angelo**(16) 7:33 33:7 63:14 66:22 68:2 68:20 70:19 71:18 72:10 78:21 87:6 119:21 122:2 134:21 153:20 159:1 **anna**(2) 8:4 8:4 **annexed**(1) 102:22 **annotate**(1) 37:20 **another**(17) 15:8 22:7 30:5 31:15 40:19 49:2 51:16 65:18 77:2 91:24 98:2 99:11 101:22 124:5 124:23 199:24 217:24 | | | | | | | |

| Word | Page:Line |
|------|-----------|

**assets**(1) 204:11
**assisted**(1) 39:7
**assume**(11) 14:10 20:9 68:23 68:24 73:8
73:15 83:17 95:19 117:3 147:23 191:7

**assumed**(4) 21:14 82:18 150:4 150:5
**assuming**(5) 21:18 21:18 65:19 110:21
163:25

**assumption**(3) 59:8 59:8 149:20
**assumptions**(3) 109:7 109:10 181:17
**assure**(1) 190:23
**assured**(1) 90:8
**assuredly**(1) 119:1
**assuring**(1) 142:4
**asylum**(1) 6:22
**atamian**(1) 8:21
**atrocious**(1) 146:2
**attach**(4) 23:5 29:6 54:12 113:24
**attached**(7) 30:12 84:18 86:9 109:2 109:5
113:25 176:12

**attaching**(1) 114:13
**attachment**(3) 29:8 29:16 31:10
**attachments**(1) 14:8
**attack**(3) 14:2 96:21 193:14
**attacking**(1) 119:18
**attempt**(3) 123:5 184:24 188:8
**attempted**(3) 115:2 183:4 211:5
**attempting**(3) 28:16 191:22 218:17
**attend**(2) 148:5 148:7
**attendance**(1) 29:5
**attended**(2) 148:5 148:6
**attending**(1) 185:7
**attends**(1) 185:8
**attention**(3) 155:16 156:7 194:1
**attentive**(1) 102:15
**attorneys**(2) 38:9 38:10
**attribute**(1) 96:24
**aurelius**(91) 4:4 8:39 10:11 25:4 28:7
28:25 29:9 29:25 31:11 31:21 35:13 35:25
53:19 57:2 57:15 58:1 61:8 63:25 66:9
72:2 80:2 86:17 92:11 101:25 102:14
102:23 105:4 109:22 109:22 117:13 118:2
122:7 124:18 128:15 133:20 143:9 145:4
145:7 145:10 146:11 148:11 149:2 150:20
150:22 151:4 151:8 151:10 151:19 154:8
154:12 155:20 156:8 160:2 160:15 162:18
166:12 171:14 177:1 177:8 177:13 177:19
178:15 179:21 181:1 181:3 181:20 182:9
183:17 183:19 185:9 185:24 186:2 186:20
187:24 187:25 188:6 193:2 194:17 194:24
195:3 196:16 197:21 201:9 201:19 202:1
208:14 208:22 209:3 209:15 212:1 212:12

**aurelius's**(5) 96:21 123:22 143:14 146:14
187:16

**aurelius-appointed**(1) 154:14
**austin**(5) 1:25 7:9 180:21 192:23 219:22
**authority**(2) 165:21 165:22
**authorize**(1) 209:25
**authorized**(1) 90:3
**authorizing**(1) 186:8
**authorship**(1) 125:8
**automatically**(1) 186:11
**available**(6) 16:13 57:25 116:8 119:13
179:21 217:3

**avenue**(9) 2:39 3:6 3:12 3:27 4:7 4:48
5:18 5:46 6:28

**avoidable**(1) 64:13
**avoidance**(4) 31:4 31:6 77:9 107:10
**avoided**(2) 37:13 37:18
**awarded**(1) 41:25
**aware**(10) 94:10 159:20 165:22 166:20
196:13 197:24 199:11 216:7 216:10 218:4

**away**(11) 53:7 123:3 134:1 134:4 187:2
187:14 189:15 191:16 192:23 193:18
199:16

**awful**(1) 124:2
**awhile**(1) 28:6
**back**(36) 16:22 17:3 19:12 21:11 22:5
23:3 35:17 43:1 50:16 51:22 52:1 72:12
73:24 74:15 80:16 83:1 91:8 99:16 102:25
107:15 111:1 122:17 128:9 129:12 134:25
156:19 158:15 164:18 173:4 176:9 190:9
190:12 190:14 202:8 207:23 219:13

**back-up**(1) 181:6
**backdoor**(1) 43:13
**backdrop**(1) 124:4
**backers**(1) 66:22
**background**(2) 122:17 185:22
**backstop**(2) 94:21 94:24
**bad**(2) 18:11 117:18
**baiera**(1) 7:38
**balance**(2) 148:16 148:20
**bale**(1) 8:31
**ballot**(2) 27:12 27:15
**balls**(1) 206:7
**banc**(1) 3:4
**bank**(9) 5:7 7:15 7:20 8:7 9:31 10:15
10:19 41:19 92:12

**bank's**(1) 42:1
**bankruptcy**(23) 1:1 1:21 39:12 61:23 75:7
75:7 88:21 113:1 124:16 125:23 128:6
130:22 133:4 146:14 152:11 152:16 163:2
193:6 194:6 194:7 194:21 196:8 196:13

**banks**(1) 64:1
**bar**(23) 40:11 40:15 40:16 41:9 41:13
41:24 47:6 47:7 47:9 47:14 47:22 48:7
48:12 102:2 160:12 187:2 189:7 189:15
191:17 192:24 193:19 193:22 194:8

**barclays**(2) 8:18 10:22
**barnes**(1) 5:38
**base**(1) 140:11
**based**(18) 42:10 53:13 55:18 57:10 62:22
64:5 81:19 113:1 137:8 138:13 142:9
154:4 171:14 174:16 193:25 205:14 212:4
215:20

**baseline**(1) 81:18
**bases**(2) 42:5 159:14
**basic**(2) 19:15 58:14
**basically**(2) 50:18 145:25
**basis**(33) 15:7 20:12 20:17 41:1 42:14
42:19 53:6 53:23 54:21 58:23 66:13 72:14
72:24 74:5 74:6 75:25 77:18 78:8 83:4
87:24 109:25 117:10 136:2 144:21 149:19
150:1 152:1 152:6 165:19 175:1 177:23 180:6
203:16 203:20

**basket**(1) 160:4
**battle**(1) 145:18
**bear**(8) 46:5 46:9 47:15 55:1 94:24
163:18 185:3 205:5

**beast**(1) 35:15
**became**(1) 59:2

**because**(98) 13:9 13:17 17:9 21:23 22:7
22:24 23:25 24:11 25:15 29:20 31:7 31:9
32:6 34:16 39:18 40:6 41:16 42:24 46:3
46:7 53:4 53:19 56:21 58:3 59:14 61:16
62:5 64:18 65:10 65:22 66:15 66:18 69:5
69:7 69:25 70:3 71:8 71:19 76:11 77:18
78:14 79:1 81:20 82:18 83:18 84:10 86:11
88:8 90:13 90:22 91:19 93:14 94:23 114:10
116:17 118:8 118:24 119:12 119:16 120:4
121:24 124:18 128:13 129:24 131:16
131:24 132:15 133:23 134:7 136:7 136:8
136:15 139:13 139:17 142:12 143:11
144:16 144:24 148:3 149:19 149:22 150:4
151:8 158:1 160:10 172:3 182:2 188:23
190:9 194:5 200:11 204:4 206:18 208:5
214:7 214:11 218:21 219:4

**become**(9) 73:5 73:6 73:11 73:13 75:2
76:6 122:15 139:10 205:17

**becoming**(1) 134:13
**beef**(1) 129:19
**been**(103) 25:26 26:18 30:20 31:25 32:1
32:20 34:17 34:20 38:8 38:15 38:17 38:18
38:23 40:12 48:2 54:19 70:14 73:18 75:21
80:10 81:18 83:1 85:6 85:20 86:5 86:5
90:7 91:6 93:25 94:2 94:3 102:14 104:16
105:11 106:11 106:20 106:21 106:21 110:5
113:4 117:15 117:17 127:7 132:5 134:4
134:8 135:5 135:5 140:13 141:25 149:19
152:7 155:5 156:20 156:21 156:22 158:5
159:20 161:19 161:23 163:5 164:12 166:2
170:12 175:6 184:5 184:14 187:20 187:21
188:18 190:19 193:12 195:11 196:2 196:11
198:25 199:23 200:17 200:18 203:20
208:2 208:6 208:8 208:18 208:23 208:24
209:8 209:10 209:12 209:17 209:20 209:2
210:5 210:16 211:10 212:11 212:18
212:22 216:10 217:18 217:20 219:20
219:23

**before**(37) 1:20 12:24 15:8 27:22 32:22
37:2 43:22 50:17 72:17 74:8 79:23 81:4
94:11 98:16 101:10 107:18 113:4 113:9
125:24 127:24 128:13 133:14 144:20 157:
163:12 173:4 176:22 188:18 190:5 192:11
192:16 193:22 194:7 198:12 198:23 201:1
210:15

**beg**(1) 217:24
**began**(1) 205:18
**begin**(2) 46:22 145:9
**beginning**(3) 55:18 89:8 110:7
**begins**(2) 191:15
**behalf**(21) 11:5 22:9 33:7 41:6 48:2 80:1
135:6 136:22 137:2 145:22 151:2 151:19
156:5 160:1 160:2 164:16 175:17 180:21
197:16 201:19 219:23

**behold**(1) 93:16
**being**(56) 12:12 27:20 27:20 28:19 36:8
40:12 40:15 41:6 41:13 52:25 53:17 63:2
64:13 64:20 65:6 75:8 82:1 86:9 100:6
103:9 104:17 106:10 107:16 115:4 118:9
126:13 128:11 129:1 129:21 131:24 136:1
137:4 142:2 144:3 144:4 146:3 150:3
150:4 151:6 159:12 164:5 166:5 170:1
174:12 177:3 177:7 178:20 185:4 187:2
191:12 192:5 199:6 204:21 208:4 209:13
216:9

**beings**(1) 15:19
**belabor**(1) 173:2
**belief**(1) 118:25

**believe**(58) 18:24 19:2 19:22 23:6 25:6
29:4 34:15 36:7 49:13 54:15 54:19 81:8
90:18 92:6 93:14 97:4 100:23 108:13
111:11 114:10 119:11 122:24 123:7 128:1
128:14 129:17 134:8 134:19 142:14
143:11 149:2 151:24 152:16 153:16 155:13
161:15 161:19 166:14 166:19 167:4
169:25 180:24 185:3 185:25 187:6 187:7
188:6 202:17 203:19 204:6 206:13 206:18
206:19 214:3 214:19 215:10 216:17 218:19

**believes**(8) 126:24 126:24 132:23 137:14
138:7 146:10 146:11 188:6

**belong**(1) 198:11
**belonging**(1) 137:18
**belongs**(2) 83:23 83:24
**bench**(1) 133:3
**bendernagel**(1) 1:28
**beneficial**(2) 178:2 183:9
**beneficiaries**(4) 49:21 93:13 93:15 185:2
**beneficiary**(2) 47:3 94:5
**benefit**(12) 23:17 41:9 106:25 183:5
187:18 194:18 197:11 201:12 204:7 204:13
205:9 214:9

**benefits**(1) 191:23
**benjamin**(1) 2:35
**bennett**(4) 4:37 9:52 33:6 72:8
**benson**(1) 5:29
**bernardino**(1) 19:1
**bernstein**(11) 2:36 133:7 133:9 133:9
134:15 134:17 134:19 151:2 151:2 174:21
174:21

**best**(26) 11:6 12:7 12:21 14:24 28:21
47:11 63:16 97:10 98:11 127:19 131:6
131:11 131:16 133:1 139:25 141:5 141:6
143:1 143:11 147:23 150:8 170:9 176:3
211:19 214:7 214:9

**bet**(2) 109:10 129:6
**betrayed**(1) 184:10
**better**(21) 15:3 15:16 19:21 21:22 26:1
26:6 48:17 85:24 86:3 101:8 101:13 107:2
124:6 124:7 124:24 127:4 131:2 131:6
172:25 196:3 197:9

**between**(42) 52:21 54:10 54:16 56:22
57:21 58:13 58:20 59:1 59:7 59:20 64:2
65:9 68:9 76:3 76:14 76:16 76:21 78:21
79:10 82:6 83:5 83:20 83:21 89:6 91:12
100:8 100:20 108:8 134:8 137:23 138:18
145:18 151:5 158:18 158:22 159:5 161:24
165:10 168:23 186:14 190:6 195:17

**beyond**(8) 19:6 24:7 43:4 52:5 149:1
149:2 152:3 171:15

**bible**(1) 28:4
**bidding**(1) 24:7
**bifferato**(1) 5:22
**big**(8) 34:2 57:20 57:23 73:22 76:3 136:14
140:3 172:10

**bigelow**(1) 7:3
**bigger**(1) 95:12
**biggest**(1) 58:7
**billion**(21) 52:19 53:24 55:20 56:1 56:9
57:7 57:8 61:21 64:22 68:14 68:15 68:15
72:18 80:18 136:19 136:20 139:23 140:24
184:7 184:8 184:16

**billions**(5) 25:11 25:21 25:23 68:18 156:9
**binder**(1) 15:21
**binding**(1) 30:8
**bit**(16) 14:1 16:21 23:3 47:10 85:7 99:19
124:12 146:7 147:25 155:17 170:7 186:21
186:24 194:9 197:24 207:3

**bits**(3) 96:13 97:5 105:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **bizarre**(1) 102:19 | | **bring**(14) 97:12 143:7 176:22 177:5 178:1 179:1 179:2 183:5 195:5 195:22 196:15 196:21 203:23 205:12 | | **called**(10) 14:9 61:11 65:14 106:16 146:2 146:3 148:25 181:24 206:7 214:14 | | **cash**(8) 116:18 123:2 135:19 137:5 137:16 138:3 192:2 212:5 | |
| **blabey**(1) 8:24 | | | | | | | |
| **blackberry**(1) 35:16 | | | | **calling**(1) 122:19 | | **cash-out**(5) 119:10 119:11 119:12 124:1 124:3 | |
| **blackline**(14) 33:12 33:13 55:8 55:10 55:11 80:14 88:3 92:19 94:20 140:15 177:16 211:23 212:9 217:4 | | **bringing**(5) 196:9 201:21 202:16 206:19 212:24 | | **calls**(2) 181:3 192:25 | | | |
| | | | | **camden**(1) 7:28 | | **cashman**(1) 9:34 | |
| | | **brings**(3) 17:3 79:20 185:22 | | **came**(12) 16:5 22:21 36:25 81:3 82:23 155:25 155:25 159:2 173:10 182:5 194:1 205:24 | | **cast**(2) 27:11 27:15 | |
| **blacklined**(1) 94:19 | | **broad**(6) 39:20 40:7 40:8 49:5 64:20 68:1 | | | | **casting**(1) 180:3 | |
| **blake**(1) 4:30 | | **broadly**(1) 206:3 | | | | **casts**(1) 94:11 | |
| **blank**(2) 6:33 139:21 | | **broadway**(1) 5:34 | | | | **cataclysmic**(1) 145:18 | |
| **blanket**(1) 33:1 | | **brodsky**(3) 145:6 149:2 153:9 | | **camped**(1) 179:10 | | **categories**(2) 40:6 48:6 | |
| **bless**(1) 149:4 | | **brodsky's**(2) 146:9 153:18 | | **can**(94) 11:16 12:23 13:11 13:19 13:21 20:19 20:25 23:6 28:21 41:12 43:5 45:18 46:15 56:24 57:15 58:7 58:8 59:15 59:23 61:19 61:24 65:6 67:24 70:5 71:25 78:6 79:12 80:5 80:8 81:21 85:8 85:10 86:12 88:1 89:23 91:17 91:22 95:19 95:22 95:2 97:14 97:14 99:15 100:22 104:19 106:19 108:11 109:10 113:1 113:5 117:8 121:19 121:21 121:23 123:2 123:8 126:16 127:19 128:22 129:16 129:21 130:1 133:1 137:24 138:4 141:1 143:9 145:20 146:22 147:1 152:23 153:10 159:15 165:20 166:16 167:10 168:7 171:13 172:24 173:3 173:18 178:8 190:3 190:23 196:25 198:15 198:22 207:20 208:22 209:14 215:11 218:19 219:19 | | **category**(6) 40:4 70:4 119:25 203:15 203:15 206:12 | |
| **block**(5) 6:40 7:41 215:6 215:14 215:25 | | **broken**(1) 72:25 | | | | | |
| **blue**(1) 170:4 | | **brought**(16) 43:21 48:2 63:13 179:15 179:17 179:22 179:23 179:23 188:3 188:4 188:21 188:21 195:19 201:23 202:19 202:20 | | | | **caught**(1) 124:16 | |
| **board**(9) 10:8 120:24 129:25 130:4 132:17 153:21 154:7 154:9 154:11 | | | | | | **cause**(11) 23:25 24:5 41:11 48:5 62:4 96:24 96:24 100:2 100:3 121:18 209:21 | |
| **bockius**(1) 10:15 | | **brown**(4) 3:37 7:24 8:18 197:16 | | | | | |
| **body**(1) 148:16 | | **bryant**(1) 4:18 | | | | **causes**(13) 22:15 22:18 23:22 25:20 27:17 44:22 92:22 93:1 99:21 118:25 175:16 190:22 197:11 | |
| **boelter**(1) 1:30 | | **buckman**(1) 4:24 | | | | | |
| **bold**(1) 136:14 | | **building**(1) 4:31 | | | | | |
| **bona**(2) 151:15 207:25 | | **built**(2) 58:18 75:21 | | | | **causing**(1) 49:15 | |
| **bondholder**(2) 123:4 123:22 | | **bullet**(1) 62:22 | | | | **caveat**(3) 142:3 164:22 171:13 | |
| **bondholders**(4) 123:4 148:12 148:13 | | **bunch**(3) 121:16 129:10 142:9 | | **can't**(25) 17:5 22:24 22:25 42:2 48:19 51:9 53:7 60:11 82:10 84:4 84:9 91:15 104:22 113:3 113:18 127:6 127:6 134:7 149:16 149:18 150:8 151:15 187:21 207:1 210:8 | | **caveated**(1) 153:15 | |
| **book**(1) 90:20 | | **burden**(2) 183:2 183:4 | | | | **cd-rom**(1) 33:17 | |
| **bootlegged**(1) 106:13 | | **bush**(1) 2:28 | | | | **cease**(1) 21:24 | |
| **bordering**(1) 120:1 | | **business**(23) 19:15 74:11 120:11 170:23 173:8 174:6 174:25 178:17 179:17 182:19 182:22 187:7 187:8 191:5 193:10 195:24 192:19 199:19 202:4 203:1 204:5 204:5 204:9 | | | | **cent**(1) 199:3 | |
| **born**(1) 133:2 | | | | | | **center**(2) 5:7 127:25 | |
| **both**(34) 13:21 28:14 31:8 34:25 35:5 38:22 40:12 42:4 61:8 61:9 66:19 71:3 77:12 122:8 148:18 153:3 158:18 158:24 160:9 160:14 170:7 171:6 176:21 177:3 177:4 179:5 182:9 183:20 183:24 196:2 197:21 201:9 208:14 215:3 | | | | **candace**(1) 7:11 | | **central**(1) 184:13 | |
| | | | | **candidly**(2) 205:13 207:10 | | **cents**(9) 119:14 119:15 122:22 122:25 124:21 140:2 141:8 153:24 154:1 | |
| | | **but**(223) 12:2 14:1 14:16 14:22 15:3 15:17 16:22 19:7 20:20 22:3 24:18 29:4 29:14 30:7 32:8 32:11 33:1 33:22 39:2 39:9 40:13 41:3 41:9 41:15 42:7 43:3 44:10 44:16 45:15 48:18 49:3 49:14 50:11 50:15 52:5 52:11 54:14 54:19 54:22 56:14 56:23 58:22 59:20 60:7 61:15 61:21 63:10 65:4 66:11 67:1 67:3 68:7 68:11 69:1 69:4 69:8 69:13 69:22 70:2 75:6 75:20 76:11 77:20 78:21 79:15 80:7 81:2 81:15 82:1 82:18 82:22 83:1 83:10 83:19 84:10 85:18 87:14 88:2 90:18 93:9 93:24 94:1 94:3 94:19 94:22 95:7 95:16 96:23 97:1 97:11 99:1 100:6 101:12 102:25 103:12 104:5 104:17 105:6 105:17 105:20 105:22 107:14 109:10 110:8 110:21 111:7 112:11 112:23 113:3 113:4 113:4 114:14 115:3 116:21 117:9 117:24 119:13 121:7 123:19 124:3 125:8 125:21 126:2 126:7 127:3 127:8 127:13 128:17 128:19 132:7 132:11 133:5 136:10 136:16 136:20 139:1 139:20 140:4 140:10 141:1 142:11 143:16 143:17 144:1 144:9 144:11 144:24 145:11 145:21 146:7 148:2 149:24 150:7 151:5 151:14 153:14 153:22 155:15 156:25 158:16 159:17 160:4 160:11 161:25 164:2 165:23 166:5 166:16 167:10 167:17 170:3 171:22 172:4 172:18 173:24 174:10 174:1 175:5 182:3 182:10 183:11 183:25 184:22 185:25 186:5 187:3 187:11 187:16 187:23 188:18 189:1 189:23 193:11 194:4 195:21 195:24 196:1 196:7 196:10 196:12 197:1 197:6 199:1 200:8 200:18 201:7 203:21 206:17 207:5 207:8 208:6 208:9 208:16 209:2 209:5 209:17 210:14 211:7 212:12 215:11 217:4 219:16 | | **candace**... | | **ceremonies**(2) 11:8 15:17 | |
| **bottom**(5) 55:8 96:17 115:12 120:15 | | | | **cannot**(3) 138:8 146:20 184:4 | | **ceremony**(1) 13:1 | |
| **bought**(4) 67:24 146:16 146:24 155:6 | | | | **cantor**(1) 7:16 | | **cert**(1) 220:20 | |
| **bowden**(1) 4:5 | | | | **cap**(8) 122:23 122:23 135:21 137:6 140:5 141:6 142:3 142:25 | | **certain**(15) 30:1 39:25 46:13 57:25 84:11 93:7 164:1 175:16 176:7 176:19 193:2 200:7 204:3 204:4 205:14 | |
| **box**(8) 2:9 4:8 4:33 5:10 6:15 32:9 32:17 110:25 | | | | | | | |
| **bracewell**(2) 6:19 30:18 | | | | **capably**(1) 78:7 | | **certainly**(24) 15:22 28:5 28:7 55:2 66:24 74:9 75:14 76:11 76:20 96:25 99:2 101:10 103:22 127:2 129:14 133:8 160:3 172:22 173:3 183:2 183:3 188:13 208:22 210:7 | |
| **brad**(2) 179:7 191:13 | | | | **capacity**(2) 33:6 70:17 | | | |
| **bradford**(8) 6:41 24:10 24:10 156:5 156:5 215:18 216:1 216:3 | | | | **capital**(24) 4:4 8:31 8:39 8:46 8:49 9:18 9:21 9:24 9:27 9:37 9:40 9:49 10:11 10:29 28:25 33:7 35:13 66:22 72:10 120:12 128:25 129:4 151:19 183:17 | | | |
| | | | | | | **certainty**(2) 98:20 98:21 | |
| **brandywine**(1) 4:31 | | **buy**(1) 124:15 | | **captain**(1) 145:16 | | **certification**(1) 220:12 | |
| **brass**(1) 8:43 | | **buy-out**(1) 207:24 | | **carcass**(1) 204:10 | | **certified**(1) 220:21 | |
| **braying**(1) 186:21 | | **buyout**(3) 93:8 184:14 196:23 | | **card**(1) 176:8 | | **certify**(1) 220:13 | |
| **breach**(3) 39:8 42:2 220:19 | | **c.k**(1) 1:30 | | **care**(8) 71:10 77:23 77:24 95:7 95:13 129:9 150:5 155:7 | | **cetera**(1) 208:2 | |
| **breadth**(1) 38:24 | | **calculation**(1) 204:15 | | | | **cetus**(1) 10:29 | |
| **break**(12) 12:24 14:12 50:22 91:9 91:16 91:19 91:19 91:22 96:23 135:6 156:18 157:9 | | **calculations**(5) 57:11 80:6 91:16 181:8 181:9 | | **cared**(1) 44:13 | | **chadbourne**(5) 2:13 26:24 122:13 171:11 175:10 | |
| | | | | **career**(1) 105:13 | | | |
| **breakdown**(3) 77:17 78:20 97:3 | | | | **careful**(2) 205:10 206:13 | | **chairman**(2) 24:25 145:7 | |
| **breaks**(1) 58:18 | | | | **carefully**(1) 120:4 | | **challenge**(5) 78:18 109:15 109:16 202:4 203:1 | |
| **breath**(1) 12:12 | | | | **cares**(2) 30:21 96:19 | | | |
| **brian**(2) 9:11 179:6 | | **call**(9) 77:18 84:15 124:13 146:5 155:16 156:7 160:5 164:4 176:15 | | **carey**(1) 1:20 | | | |
| **bridge**(49) 5:5 13:15 51:19 51:23 52:4 52:6 52:6 52:10 52:15 52:20 52:24 53:4 53:12 53:18 53:22 54:17 54:23 56:3 57:19 60:1 60:5 60:8 60:9 60:11 60:21 60:23 61:7 62:15 67:7 69:20 71:3 79:14 79:17 82:8 90:16 90:25 91:11 100:25 117:14 117:15 118:3 158:24 160:9 160:14 165:5 166:16 168:16 187:17 201:15 | | | | **carickhoff**(1) 6:34 | | **challenged**(2) 178:17 178:18 | |
| | | | | **carlyle**(1) 3:4 | | **challenges**(2) 64:10 64:10 | |
| | | | | **caroll**(1) 8:31 | | **challenging**(1) 128:4 | |
| | | | | **carries**(1) 54:25 | | **chambers**(2) 36:25 37:2 | |
| | | | | **carry**(2) 13:23 95:15 | | **chance**(8) 15:20 19:18 69:21 86:3 96:5 103:21 109:15 173:10 | |
| | | | | **carry-over**(1) 118:21 | | | |
| **brief**(5) 20:6 31:15 80:8 105:20 107:9 | | | | **carve**(3) 38:24 39:3 39:3 | | | |
| **briefer**(1) 213:1 | | | | **case**(54) 1:9 5:14 14:21 16:12 17:12 18:7 18:9 18:21 19:14 19:14 22:4 22:25 27:18 49:14 49:18 57:20 60:1 67:21 71:2 74:23 76:7 78:18 79:16 107:20 124:16 125:6 125:10 126:3 126:18 128:23 130:22 134:6 136:8 141:19 146:14 153:1 153:2 153:16 175:1 175:1 181:21 187:25 195:13 195:13 195:14 195:16 198:22 199:22 204:21 205:18 206:7 207:10 207:19 208:24 | | **chandler**(1) 7:3 | |
| **briefing**(1) 191:6 | | | | | | **change**(13) 12:23 38:23 39:2 44:12 46:7 90:12 107:1 123:1 129:16 130:2 150:25 187:21 199:1 | |
| **briefly**(10) 20:3 107:8 108:1 112:6 136:4 141:22 142:21 155:2 180:22 201:18 | | | | | | | |
| | | | | | | **changed**(6) 12:25 129:23 138:5 144:6 189:9 205:13 | |
| **brigade**(1) 9:27 | | | | **cases**(20) 18:13 20:9 32:15 70:16 108:5 108:25 131:4 140:20 141:2 142:1 183:22 184:13 185:22 187:22 189:5 195:10 195:10 198:17 198:20 205:8 | | | |
| **bright**(1) 131:2 | | | | | | **changes**(16) 17:1 19:24 44:17 52:3 68:9 71:10 98:25 126:21 157:24 158:1 158:11 170:12 211:23 217:1 217:4 217:5 | |
| | | | | | | **chaos**(1) 185:7 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **chapter**(10) 1:7 42:13 70:16 131:4 183:22 184:13 185:12 195:10 195:10 209:21 | | **claims**(234) 19:3 24:17 24:22 25:1 25:22 25:23 25:25 26:3 26:5 26:11 27:19 31:24 37:11 37:11 37:13 38:24 39:3 39:4 39:5 39:6 39:9 39:14 40:14 41:8 41:10 41:13 41:15 41:15 41:25 42:4 42:5 42:8 42:8 42:10 42:17 42:19 43:12 45:1 45:4 47:1 47:21 47:25 48:2 48:24 48:25 49:1 49:3 49:9 49:13 49:21 50:5 50:6 50:11 54:9 54:12 56:7 57:3 57:5 57:6 57:7 57:10 57:17 57:20 58:2 58:7 58:13 59:5 60:7 60:8 60:10 60:12 60:13 61:10 61:12 61:15 61:16 61:18 61:23 62:9 64:25 69:12 70:20 71:3 71:4 71:4 71:4 72:4 72:10 72:14 72:19 74:13 76:4 76:4 76:15 76:16 76:17 77:12 77:13 77:14 77:25 79:15 81:10 81:21 82:14 83:25 84:9 84:15 84:17 89:10 92:21 93:1 98:4 98:10 109:8 109:11 110:13 110:14 111:4 111:5 116:6 116:12 119:2 119:3 135:20 135:22 136:18 137:11 137:20 138:1 138:3 139:22 140:1 140:13 140:21 140:22 141:3 141:11 141:16 142:2 143:25 144:9 144:16 146:18 149:17 149:18 150:1 151:25 152:2 152:4 152:8 152:8 152:9 152:9 152:18 153:6 156:9 158:21 159:12 160:13 160:16 163:1 165:4 166:3 166:18 166:19 166:22 167:3 167:5 167:6 167:18 167:18 167:20 168:11 168:2 175:18 175:22 176:4 176:7 176:9 176:16 179:15 183:2 183:5 184:17 184:18 186:18 187:4 187:6 187:18 188:3 194:18 196:20 198:5 198:5 198:10 198:14 198:18 198:21 199:5 199:9 199:16 200:1 200:3 200:4 200:11 200:17 200:19 200:20 200:23 200:24 201:6 201:11 201:21 201:23 202:1 202:19 202:20 203:10 203:22 204:4 206:2 207:1 212:4 212:7 213:17 214:5 214:8 214:10 214:14 214:15 214:17 215:2 | | **clients**(15) 33:5 72:10 76:2 76:13 76:20 76:23 77:4 77:4 77:17 77:24 77:25 78:9 136:7 142:11 162:16 | | **committee's**(18) 18:19 82:16 92:15 93:6 94:15 103:3 103:12 104:11 118:19 122:14 136:6 137:2 155:5 183:18 183:23 190:10 213:10 213:21 |
| **character**(1) 43:15 | | | | **close**(6) 21:22 101:10 151:23 172:18 173:8 206:21 | | **committees**(15) 71:21 80:11 81:5 83:13 85:9 85:15 85:25 90:16 137:22 159:5 160:1 186:15 188:12 202:5 203:2 |
| **characterizes**(1) 31:12 | | | | **closed**(2) 64:4 64:4 | | **common**(12) 116:15 120:19 129:13 130:21 131:1 131:11 133:2 147:4 147:7 148:23 202:10 202:10 |
| **charged**(1) 121:10 | | | | **closely**(1) 179:14 | | |
| **chart**(9) 55:18 62:21 63:4 63:10 69:23 79:13 130:11 219:18 219:24 | | | | **closing**(1) 207:24 | | **communications**(1) 153:2 |
| | | | | **co-plan**(1) 191:6 | | **companies**(4) 6:4 22:2 22:9 160:23 |
| **chase**(3) 2:34 8:7 9:31 | | | | **co-proponents**(4) 33:8 128:15 151:20 | | **company**(24) 1:9 7:2 7:25 7:33 8:27 8:43 9:7 17:9 20:24 33:8 53:13 58:4 59:5 82:17 84:15 119:14 123:14 129:1 129:7 132:16 132:17 134:3 160:24 176:2 |
| **cheap**(1) 207:8 | | | | **cobb**(2) 2:4 2:7 | | |
| **check**(1) 139:21 | | | | **code**(15) 39:12 41:21 61:23 88:21 113:1 125:16 125:19 125:20 125:23 126:17 128:13 130:22 163:24 196:8 196:13 | | |
| **cheer**(1) 126:5 | | | | | | |
| **chicago**(4) 1:32 6:43 179:10 192:22 | | | | **cold**(1) 169:17 | | **comparatively**(1) 116:15 |
| **choose**(2) 93:24 163:8 | | | | **cole**(1) 1:35 | | **compare**(2) 98:18 153:19 |
| **choosing**(3) 29:11 86:18 199:16 | | | | **collapse**(1) 64:11 | | **compared**(1) 28:1 |
| **chose**(3) 31:23 31:24 147:22 | | | | **colleague**(1) 175:13 | | **compel**(1) 78:12 |
| **chosen**(3) 84:1 145:14 154:7 | | | | **colleagues**(1) 106:2 | | **compelled**(3) 162:15 209:4 210:13 |
| **christy**(1) 2:17 | | | | **collective**(3) 87:24 109:25 165:7 | | **compelling**(1) 144:10 |
| **chung**(1) 7:21 | | | | **collectively**(2) 72:18 80:21 | | **competing**(15) 11:15 13:22 23:13 100:1 125:21 127:1 127:1 144:2 148:16 185:7 185:10 185:17 186:11 186:19 187:10 |
| **circuit**(5) 152:25 159:16 159:18 165:22 214:6 | | | | **colloquialism**(1) 32:21 | | |
| | | | | **colloquy**(1) 114:20 | | |
| **circuit's**(1) 206:14 | | | | **colorable**(1) 183:2 | | |
| **circuits**(1) 159:17 | | | | **colored**(1) 108:9 | | **competitive**(1) 185:8 |
| **circulated**(6) 36:22 80:15 88:8 115:14 115:16 212:11 | | | | **comb**(1) 18:4 | | **complain**(1) 45:18 |
| | | | | **combined**(1) 76:10 | | **complaints**(6) 19:10 217:25 218:5 218:8 218:21 219:10 |
| **circumstance**(4) 124:22 166:20 206:8 210:8 | | | | **come**(20) 27:14 27:14 59:6 79:4 93:19 96:12 99:16 99:24 100:7 102:25 108:9 141:5 141:11 153:1 156:19 157:2 182:9 190:9 198:20 211:20 | | |
| **circumstances**(13) 28:22 73:19 75:24 84:21 131:17 141:17 141:20 164:6 197:7 210:9 210:17 211:1 211:20 | | | | | | **completely**(1) 183:1 |
| | | | | **comes**(3) 49:10 49:11 136:23 | | **completing**(1) 186:15 |
| | | | | | | **completion**(2) 186:1 186:15 |
| **circus**(1) 125:22 | | | | **comfort**(7) 47:23 48:9 48:15 136:5 136:6 136:10 149:17 194:25 | | **complicated**(4) 40:13 120:14 129:6 184:1 |
| **citations**(1) 120:2 | | **clarification**(10) 46:25 47:9 47:23 63:22 161:25 168:20 169:1 169:8 170:7 210:21 | | | | **complication**(1) 125:25 |
| **cited**(1) 177:23 | | | | **coming**(5) 23:10 70:2 144:17 149:22 | | **complied**(1) 67:22 |
| **citigroup**(1) 7:45 | | **clarify**(5) 38:23 89:5 97:14 155:24 199:7 | | **commence**(4) 175:16 193:15 193:21 213:12 | | **components**(1) 89:18 |
| **citizens**(1) 5:7 | | **clarifying**(2) 40:13 150:25 | | **commenced**(5) 186:4 186:10 186:13 187:7 207:19 | | **comprise**(1) 39:19 |
| **claim**(79) 21:19 24:14 25:16 40:20 40:22 40:24 41:2 41:3 41:4 41:6 45:2 48:11 48:18 49:5 60:21 61:16 61:24 61:25 61:25 62:4 67:7 75:10 76:17 77:23 82:17 82:21 82:25 83:3 83:7 83:11 83:12 83:15 87:7 87:12 87:14 87:17 87:18 87:22 89:1 89:3 89:17 89:19 89:23 89:25 90:5 90:7 100:1 108:17 109:19 109:23 110:2 111:8 113:23 114:2 137:17 152:6 152:11 152:12 152:13 152:14 167:1 167:16 167:17 167:20 167:23 167:24 168:10 168:11 168:13 194:6 194:7 194:21 206:19 206:20 208:5 210:3 210:3 215:24 | | **clarity**(1) 101:5 | | **commencement**(1) 186:8 | | **computer**(3) 59:15 181:6 181:13 |
| | | **class**(27) 27:6 48:24 49:9 49:10 49:13 61:10 61:22 68:23 69:8 69:9 77:15 79:6 123:24 138:9 144:9 144:11 144:14 152:21 152:22 153:3 153:4 153:4 153:4 158:8 159:16 167:4 167:25 | | **commencing**(1) 189:8 | | **conaway**(1) 4:29 |
| | | | | **commend**(1) 114:7 | | **concede**(2) 75:12 128:21 |
| | | | | **comment**(9) 14:5 20:13 20:21 33:23 115:3 122:9 133:7 192:10 212:18 | | **conceded**(1) 104:2 |
| | | | | | | **conceptual**(1) 11:20 |
| **claim's**(1) 110:4 | | **classes**(7) 42:4 61:18 69:7 69:9 140:23 152:23 165:20 | | **comments**(10) 34:19 38:3 122:7 142:23 155:13 164:22 197:16 197:18 200:16 217:14 | | **concern**(7) 17:11 18:1 131:13 132:7 132:8 192:13 204:8 |
| | | | | **commit**(1) 100:7 | | **concerned**(6) 81:14 103:18 128:18 152:1 163:17 201:2 |
| | | **classification**(5) 68:22 87:14 159:8 166:2 168:21 | | **committee**(148) 2:4 5:45 10:7 13:25 17:8 18:19 20:4 26:24 31:22 34:15 36:4 44:3 51:21 52:18 52:23 54:11 62:18 70:14 70:17 71:14 80:4 86:16 87:9 87:12 92:20 92:25 93:7 95:24 96:8 99:17 99:21 99:21 101:16 101:20 103:5 103:6 103:10 104:4 104:6 105:9 106:5 106:6 106:9 108:10 113:19 119:17 122:13 122:21 122:24 133:19 135:1 135:7 135:12 136:5 136:22 136:25 137:13 137:21 138:7 138:17 139:9 143:1 143:24 145:3 145:12 145:22 145:24 146:2 146:8 146:10 146:11 146:15 147:1 147:12 148:7 148:10 148:13 149:22 149:25 151:7 153:7 153:25 154:12 159:12 171:12 175:10 175:1 176:4 176:15 176:22 177:4 178:18 178:24 179:2 179:3 179:5 179:14 180:4 180:9 181:18 182:11 183:20 184:11 184:23 185:19 186:3 186:7 186:21 188:1 188:5 188:9 189:6 190:1 190:7 190:16 190:24 191:14 193:16 194:12 194:15 195:6 196:3 196:19 196:21 199:9 200:12 201:4 201:20 202:14 203:11 204:21 205:11 206:1 206:6 206:25 207:7 208:19 210:14 212:24 213:4 214:11 214:17 215:3 215:21 216:13 216:1 217:25 218:6 218:8 | | **concerning**(1) 165:11 |
| | | | | | | **concerns**(5) 13:18 47:13 48:8 134:14 |
| | | **classifications**(1) 165:12 | | | | **concisely**(1) 15:1 |
| | | **classified**(4) 76:19 89:2 166:5 166:24 | | | | **concluded**(5) 23:25 97:7 204:20 206:9 206:12 |
| | | **classify**(4) 160:15 166:3 166:4 168:5 | | | | |
| | | **clean**(5) 111:11 111:13 111:17 212:8 217:5 | | | | **concludes**(1) 220:6 |
| | | **cleanly**(1) 206:8 | | | | **conclusion**(9) 18:20 20:13 22:17 27:11 53:24 82:23 157:2 206:17 206:17 |
| | | **clear**(28) 12:6 34:24 38:25 39:3 40:14 47:2 48:22 50:3 60:5 60:15 60:23 77:14 95:16 97:17 123:5 123:7 149:15 153:17 154:7 166:5 168:10 175:3 175:6 191:20 191:22 193:25 211:3 218:16 | | | | **conclusions**(10) 33:14 33:15 33:21 104:9 108:8 108:13 135:24 181:16 181:17 205:24 |
| | | | | | | **concurrence**(1) 176:21 |
| | | **cleared**(1) 174:23 | | | | **condense**(1) 172:16 |
| | | **clearly**(5) 66:14 71:23 76:22 125:20 131:2 | | | | **condition**(1) 83:14 |
| | | **cleary**(1) 4:30 | | | | **conditions**(2) 64:5 176:13 |
| | | **clerk**(6) 11:2 50:24 63:1 115:20 157:22 173:10 | | | | **condone**(1) 210:10 |
| | | | | | | **conduct**(1) 210:7 |
| | | | | | | **conducted**(2) 147:2 200:22 |
| | | **client**(6) 32:5 107:14 145:22 147:9 198:11 206:9 | | | | **confer**(2) 21:4 22:14 |
| | | | | | | **conference**(3) 181:2 192:20 192:21 |
| | | | | | | **conferred**(1) 206:6 |
| | | **client's**(2) 139:18 139:19 | | | | **confers**(1) 87:25 |
| | | | | | | **confidence**(1) 136:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **confident**(2) 84:19 136:22 | | **continued**(10) 2:2 3:2 4:2 5:2 6:2 8:2 9:2 10:2 96:6 156:18 | | **course**(19) 12:8 14:22 17:12 17:18 34:12 93:19 104:6 104:7 109:15 122:20 147:14 154:18 156:17 172:23 174:6 174:25 195:8 197:23 214:18 | | **created**(4) 62:8 187:13 196:2 208:7 | |
| **confidential**(1) 203:20 | | | | | | **creates**(2) 184:2 185:20 | |
| **confines**(1) 171:15 | | **continues**(1) 27:17 | | | | **creating**(1) 144:23 | |
| **confirm**(3) 61:19 165:16 191:11 | | **continuing**(4) 92:11 121:7 190:13 218:18 | | **court**(301) 1:1 11:3 11:9 11:21 12:1 14:4 15:22 17:3 19:4 19:25 20:8 21:2 22:12 24:8 26:20 26:22 27:23 27:24 28:21 29:4 29:21 30:3 30:7 30:8 31:16 33:4 33:24 34:7 34:9 34:21 35:11 35:16 35:18 35:20 35:23 36:20 36:21 36:24 37:5 38:3 38:12 38:15 38:19 39:21 40:4 40:9 43:4 43:7 43:9 43:9 43:13 43:22 43:25 45:20 46:5 46:9 46:12 46:16 46:20 46:25 47:5 47:15 47:18 50:1 50:21 50:25 51:5 51:14 51:18 52:7 53:19 55:1 55:3 55:6 55:9 55:14 56:17 56:25 59:21 59:24 60:19 60:21 61:2 62:2 62:14 62:19 62:25 67:16 68:3 68:9 68:11 69:17 70:8 72:2 72:5 73:8 73:13 73:15 73:22 74:6 74:16 74:18 75:3 75:20 78:11 78:18 79:12 79:19 81:4 81:9 83:14 84:12 85:1 85:4 85:13 86:11 86:25 87:1 88:11 88:13 88:15 88:17 90:3 90:21 90:24 91:2 91:17 91:18 92:1 92:3 92:3 92:5 92:10 92:17 93:19 93:21 93:22 94:5 94:19 95:22 95:25 97:7 97:23 98:1 98:5 98:8 98:23 101:8 101:14 101:18 102:6 102:21 104:24 105:16 105:19 105:2 106:23 106:25 107:5 107:13 107:19 107:23 110:21 111:2 111:9 111:14 111:21 111:24 112:1 112:3 112:22 112:25 114:6 114:15 114:15 114:17 114:24 115:10 115:18 115:20 115:23 117:20 118:5 118:1 119:24 122:5 122:11 125:15 126:5 127:5 127:14 127:22 130:6 130:13 130:15 130:18 131:10 131:13 131:21 132:5 132:6 133:4 133:8 134:12 134:16 135:2 135:9 138:12 138:15 139:2 139:4 139:7 140:17 140:19 141:22 142:15 142:19 142:21 143:5 143:2 147:10 148:12 149:8 149:13 150:10 150:12 150:17 152:13 154:19 154:20 154:24 156:3 156:14 156:16 157:8 157:10 157:13 157:15 157:18 157:20 159:19 160:19 160:25 161:10 161:13 162:8 162:1 162:13 162:18 162:21 163:2 163:4 163:7 163:19 163:23 164:15 166:9 167:8 167:12 168:3 168:6 168:15 169:4 169:12 169:14 169:19 169:21 169:23 170:10 170:20 170:22 170:23 171:9 171:11 171:22 171:2 172:7 172:12 173:1 173:8 173:12 173:20 174:1 174:18 174:20 175:8 176:22 177:17 180:17 183:8 183:10 183:13 184:4 185:15 186:3 187:3 189:14 192:15 197:13 197:19 | | **credible**(2) 24:13 25:16 | |
| **confirm**(46) 21:6 21:22 22:3 22:10 22:11 39:2 41:14 42:7 43:21 44:14 45:16 45:17 45:19 49:23 50:3 51:8 52:13 53:8 54:14 57:18 59:22 66:11 69:13 79:5 81:2 83:14 84:2 84:11 86:22 87:16 92:24 97:8 108:19 109:17 137:24 138:20 144:19 144:23 148:21 152:5 153:2 165:17 168:4 177:20 198:16 200:9 | | **contours**(1) 172:21 | | | | **credit**(14) 4:29 17:18 18:6 18:11 20:14 28:9 65:12 76:18 76:24 79:2 106:17 122:19 128:4 175:2 | |
| | | **contract**(2) 77:7 110:17 | | | | **creditor**(16) 17:13 18:21 51:11 65:16 74:24 75:1 122:19 122:22 122:25 131:8 133:19 153:4 162:17 192:3 195:4 201:14 | |
| **confirmation-proponent**(1) 191:19 | | **contracts**(3) 21:13 150:3 150:3 | | | | **creditor's**(2) 36:4 87:9 | |
| **confirmed**(11) 40:2 100:6 107:19 123:6 123:25 124:10 138:8 186:19 187:16 191:1 201:16 | | **contrary**(2) 144:3 144:4 | | | | **creditors**(102) 2:4 16:7 17:8 24:16 24:18 24:20 25:19 26:14 26:24 32:4 35:5 39:12 41:7 45:18 48:4 53:13 54:5 59:19 70:16 70:22 74:11 77:8 81:4 82:11 86:12 86:23 92:13 92:14 93:10 93:17 101:20 104:3 104:12 109:13 109:15 112:14 119:5 119:10 119:14 119:15 119:18 120:22 123:13 127:20 133:18 135:15 137:4 137:10 137:14 137:19 139:20 140:4 140:7 141:7 141:8 142:4 145:8 145:22 145:24 146:8 148:7 148:10 153:7 153:21 154:1 154:3 160:22 175:11 176:3 178:18 181:18 181:25 184:6 184:11 184:20 185:19 185:21 188:1 189:9 190:1 190:7 190:16 190:24 191:24 192:1 192:2 192:5 194:12 194:15 194:19 195:6 196:2 196:17 196:19 196:21 197:3 197:11 199:4 201:12 204:9 206:6 213:5 214:9 | |
| **contrast**(2) 87:9 151:5 | | | | | | | |
| **conflict**(1) 185:5 | | **contribute**(1) 65:7 | | | | | |
| **conflicts**(2) 146:12 214:16 | | **contributed**(3) 64:22 65:1 65:2 | | | | | |
| **confront**(1) 33:1 | | **contributing**(3) 65:10 69:1 69:6 | | | | | |
| **confronted**(1) 17:19 | | **contribution**(6) 40:20 40:21 40:24 41:2 47:25 65:20 | | | | **critical**(6) 40:1 199:21 199:23 199:24 200:2 200:2 | |
| **congress**(3) 125:16 125:18 125:24 | | **control**(5) 69:8 69:9 90:14 117:1 132:12 | | | | | |
| **congressional**(1) 126:16 | | **controlled**(1) 120:22 | | | | **criticism**(4) 104:16 127:8 128:9 128:19 | |
| **conjunction**(1) 190:18 | | **controls**(1) 134:2 | | | | **criticisms**(2) 105:12 112:16 | |
| **conlan**(1) 1:26 | | **controversial**(1) 184:1 | | | | **criticized**(3) 105:11 128:11 133:5 | |
| **connected**(1) 54:7 | | **convenient**(1) 200:6 | | | | **crossroads**(1) 195:1 | |
| **connection**(21) 20:2 43:17 43:18 51:1 52:8 52:12 75:11 82:19 152:5 153:20 155:22 156:4 180:18 181:22 184:22 187:9 208:20 209:14 210:2 213:19 216:21 | | **conversation**(1) 16:21 | | | | **crucial**(1) 81:4 | |
| | | **conversations**(1) 208:9 | | | | **crushing**(2) 195:2 195:21 | |
| | | **conveyance**(11) 81:10 90:3 93:9 94:4 137:17 184:17 184:25 185:14 186:9 200:1 200:23 | | | | **cry**(1) 136:20 | |
| | | | | | | **crystal**(1) 191:20 | |
| **consensus**(1) 12:20 | | **conveys**(1) 125:9 | | | | **csos**(1) 154:21 | |
| **consent**(4) 178:14 179:1 214:23 215:3 | | **cooperstown**(1) 9:21 | | | | **culminated**(1) 181:5 | |
| **consented**(2) 175:24 214:17 | | **copies**(2) 212:9 212:11 | | | | **cumbersome**(2) 71:25 127:3 | |
| **consequence**(1) 185:5 | | **copy**(5) 33:16 37:3 62:25 115:20 212:17 | | | | **cures**(1) 114:13 | |
| **consequences**(1) 210:12 | | **core**(1) 185:11 | | | | **current**(9) 21:15 45:23 114:1 175:19 176:16 183:21 187:1 214:12 219:9 | |
| **consider**(5) 85:7 122:8 124:4 133:17 | | **corner**(1) 115:12 | | | | | |
| **considerable**(2) 158:12 181:15 | | **corollary**(1) 209:6 | | | | | |
| **considerably**(2) 82:5 158:7 158:13 | | **corp**(1) 153:2 | | | | **currently**(2) 175:5 213:13 | |
| **consideration**(6) 71:8 77:10 90:6 97:1 159:4 207:9 | | **corral**(1) 157:6 | | | | **cushion**(1) 140:3 141:7 | |
| | | **correct**(13) 12:10 14:5 32:20 34:23 56:14 56:15 127:23 142:22 161:1 166:7 172:9 216:3 220:13 | | | | **cut**(4) 44:8 108:14 111:12 192:19 | |
| | | | | | | **cutler**(1) 7:33 | |
| **considerations**(3) 165:10 209:18 219:14 | | **corrected**(3) 56:15 161:12 164:24 | | | | **cybergenics**(4) 175:25 205:8 206:5 214:2 | |
| **considered**(4) 127:19 181:9 210:5 | | **correctly**(2) 64:23 107:12 | | | | **d.c**(1) 4:26 | |
| **considering**(3) 14:15 104:6 164:11 | | **corresponding**(1) 90:12 | | | | | |
| **considers**(2) 128:1 186:24 | | **corroon**(1) 3:16 | | | | **damages**(1) 41:25 | |
| **consistent**(4) 12:5 170:1 192:10 198:3 | | **corrupt**(1) 145:16 | | | | **damaging**(2) 128:17 182:22 | |
| **consisting**(1) 184:6 | | **cost**(2) 120:7 132:21 | | | | **damian**(1) 2:38 | |
| **constituencies**(3) 24:4 200:13 201:14 | | **couched**(1) 180:2 | | | | **damming**(1) 204:5 | |
| **constituency**(2) 24:1 100:9 | | **could**(65) 14:18 15:12 25:4 26:7 28:7 33:1 34:5 37:20 41:5 41:10 41:16 43:8 43:17 43:14 44:15 45:11 49:3 62:23 63:8 70:7 74:15 75:3 82:5 85:18 85:20 86:5 86:6 86:12 88:9 93:14 94:10 97:12 103:16 106:13 114:6 115:15 131:2 132:1 132:14 132:15 132:20 132:21 139:10 140:4 141:5 141:6 143:21 151:10 155:7 155:11 160:3 166:1 166:5 170:1 172:5 172:10 172:14 179:23 179:25 188:25 193:12 208:12 210:25 211:20 216:6 | | | | **daniel**(6) 2:6 4:13 7:16 28:24 35:12 183:16 | |
| **constituent**(1) 147:14 | | | | | | | |
| **constituents**(2) 70:15 99:10 | | | | | | | |
| **constitute**(1) 76:17 | | | | | | **dark**(1) 54:18 | |
| **constituted**(1) 184:17 | | | | | | **darth**(1) 153:11 | |
| **constraints**(1) 192:9 | | | | | | **data**(1) 146 179:12 | |
| **consume**(1) 106:7 | | | | | | **date**(32) 71:7 74:20 88:6 88:20 88:24 89:16 129:11 137:12 138:4 138:21 142:13 142:14 159:11 174:7 174:8 174:12 174:15 174:23 176:10 187:2 187:21 187:21 189:7 189:9 189:15 191:17 191:18 192:24 193:19 193:22 194:8 206:11 | |
| **consumes**(1) 106:7 | | **couldn't**(4) 128:20 139:21 195:23 215:2 | | | | | |
| **contact**(1) 190:25 | | **counsel**(13) 15:15 28:25 34:21 35:13 37:22 63:21 67:21 101:25 146:12 170:10 183:1 213:4 215:18 | | | | | |
| **contain**(1) 27:4 | | | | | | | |
| **contained**(3) 16:9 33:21 71:20 | | | | | | | |
| **contains**(2) 105:20 116:17 | | **counsel's**(1) 27:9 | | | | | |
| **contemplate**(1) 24:2 | | **count**(1) 158:8 | | | | | |
| **contemplated**(5) 53:17 116:10 120:6 125:16 125:19 | | **counter**(1) 14:20 | | | | **david**(26) 2:15 3:45 4:14 4:46 5:32 5:39 6:34 6:41 7:4 7:12 8:24 8:35 8:40 9:7 9:8 10:8 17:7 24:9 26:23 31:17 51:6 101:19 122:12 142:22 145:2 156:5 | |
| | | **counterparty**(1) 208:5 | | | | | |
| **contemplates**(2) 125:21 125:23 | | **counts**(1) 172:23 | | | | | |
| **content**(1) 15:10 | | **county**(1) 19:1 | | | | | |
| **contested**(3) 86:22 133:25 152:4 | | **couple**(14) 13:5 19:9 34:20 34:21 65:10 104:25 136:4 143:24 145:3 145:23 146:9 155:3 193:24 208:3 | | | | | |
| **contesting**(1) 81:11 | | | | **cover**(7) 25:10 61:18 146:13 151:11 153:8 166:17 175:14 | | **davis**(2) 2:34 133:9 | |
| **context**(16) 26:25 49:22 50:3 73:2 74:9 97:8 108:4 109:17 146:21 147:8 147:16 170:2 173:25 177:13 198:15 | | | | | | | |
| | | **coupled**(1) 71:1 | | **cover-up**(1) 151:11 | | **day**(8) 10:7 63:5 77:2 138:19 156:18 172:23 173:13 192:20 | |
| **contextual**(1) 170:8 | | **couri**(1) 9:21 | | **covered**(4) 47:4 47:4 87:5 160:20 | | | |
| **continue**(7) 21:20 57:25 58:3 79:13 94:13 101:2 185:16 | | | | **covers**(1) 154:15 | | | |
| | | | | **crack**(1) 170:10 | | | |
| | | | | **crafted**(2) 48:14 49:4 | | | |
| | | | | **create**(3) 137:6 144:15 204:9 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**days(14)** 11:23 34:20 54:14 84:2 84:11 142:13 179:10 187:2 187:14 193:6 193:18 194:24 198:23 219:2

**dbtca(1)** 4:45

**deadline(11)** 54:14 84:2 84:13 93:16 138:20 195:2 195:21 196:15 196:22 201:21 201:24

**deadlines(1)** 101:11

**deal(15)** 21:25 22:11 30:13 34:4 53:22 73:22 76:3 95:25 108:6 108:14 139:23 140:8 140:12 170:9 194:25

**dealable(1)** 32:25

**dealing(3)** 12:8 62:10 175:23

**deals(4)** 85:6 89:22 175:17 208:1

**dealt(3)** 47:22 49:19 49:20

**dearborn(1)** 1:31

**debate(2)** 85:19 90:2

**debenture(2)** 5:22 92:12

**debt(15)** 67:14 68:2 68:18 72:20 74:14 74:15 75:23 116:6 116:9 160:24 184:15 184:16 219:9

**debtor(33)** 7:2 43:5 65:16 70:14 70:16 92:24 103:6 106:5 108:10 110:4 119:3 135:19 151:7 153:20 156:19 157:6 159:13 164:19 164:22 165:14 175:18 180:9 180:2 189:1 192:12 194:3 198:11 200:8 204:22 208:10 210:12 219:15 219:16

**debtor's(2)** 36:12 38:8

**debtor/committee/lender(1)** 33:8

**debtors(247)** 1:25 11:5 13:24 19:15 21:10 26:4 34:15 34:25 36:4 38:9 38:13 39:16 40:1 41:5 41:6 41:14 42:21 43:12 44:3 48:3 49:6 51:21 52:17 52:18 52:22 53:1 53:3 53:5 53:17 53:23 54:11 54:20 55:19 55:20 55:22 55:24 56:1 56:5 56:8 56:10 56:13 56:19 59:18 60:24 62:18 63:24 64:8 64:18 64:25 65:8 65:17 66:21 70:11 70:22 71:14 71:20 72:4 79:13 80:3 80:11 80:16 81:5 81:9 81:19 82:15 83:3 83:13 84:6 84:23 85:9 85:25 86:10 86:16 87:8 87:12 87:23 87:24 89:1 89:2 90:4 90:7 90:15 91:5 91:9 91:12 92:14 92:20 92:21 92:25 93:2 93:6 93:17 94:2 94:7 94:14 95:19 95:23 97:17 109:25 110:18 113:20 115:6 116:2 116:7 116:18 116:20 116:25 117:2 117:5 117:7 117:12 118:18 122:7 122:23 132:11 132:13 135:4 135:18 135:2 136:3 136:15 137:3 137:4 137:7 137:7 137:15 137:18 137:22 137:24 138:1 138:6 138:7 138:17 138:25 139:8 139:24 139:25 140:8 140:13 140:14 140:25 141:18 141:9 143:23 144:2 151:24 152:6 152:8 152:17 158:24 159:5 159:9 159:25 160:9 160:10 160:14 160:17 161:15 165:6 165:12 166:19 166:21 175:17 175:24 176:1 176:21 178:14 178:17 179:1 179:3 179:5 179:10 179:11 179:14 179:18 179:24 180:3 180:2 181:2 181:15 183:21 184:10 184:15 184:23 185:11 185:18 186:7 186:14 186:2 187:7 187:12 187:13 187:15 187:25 188:5 188:9 188:12 188:19 189:6 189:10 189:17 190:1 190:6 190:23 191:2 191:18 192:17 193:1 193:3 193:17 193:19 194:3 194:23 195:7 195:9 196:2 196:19 196:21 197:2 198:2 198:7 198:9 198:18 198:20 198:23 199:2 199:4 199:16 199:25 200:12 200:22 201:3 201:20 202:5 203:1 206:7 212:6 213:14 213:20 214:11 214:13 214:13 214:16 214:22 215:3 219:23

**december(6)** 64:5 173:13 187:2 189:5 189:8 220:19

**decide(8)** 21:18 21:18 34:3 93:25 100:5 113:4 114:11 180:19

**decided(3)** 21:12 22:6 198:15

**deciding(2)** 104:7 110:22

**decision(6)** 51:10 82:12 105:14 158:12 185:18 206:18

**decisions(6)** 53:10 54:6 105:10 105:11 127:21 205:10

**declaration(2)** 182:8 199:18

**declined(2)** 139:11 179:25

**decree(1)** 102:18

**deemed(10)** 89:10 89:19 143:24 144:1 144:3 144:9 144:12 153:4 159:15 165:20

**deeming(2)** 89:17 152:23

**deep(4)** 123:19 144:12 172:3 172:24

**deeper(1)** 190:20

**defect(1)** 61:8

**defendant(5)** 40:18 40:18 40:23 41:1 41:2

**defendants(11)** 40:17 40:18 40:19 95:6 95:11 176:2 199:12 210:2 213:13 218:18 218:21

**defense(2)** 199:24 199:25

**defenses(11)** 181:8 181:8 182:15 193:8 203:24 203:25 204:15 210:6 213:21 213:2 214:1

**defer(1)** 68:13

**define(1)** 126:16

**defined(2)** 48:23 90:15

**definition(10)** 39:19 42:3 42:7 90:24 167:17 167:20 168:9 168:13 210:4 212:3

**definitively(1)** 128:20

**defrauded(1)** 94:3

**degree(4)** 32:21 32:22 116:25 132:12

**delaware(6)** 1:2 1:13 3:6 4:7 11:1 209:20

**delete(1)** 30:14

**deleted(3)** 125:12 156:12 164:1

**deletions(1)** 30:1

**delighted(1)** 136:7

**deliver(1)** 102:21

**deliverable(1)** 158:15

**delivered(2)** 37:2 145:5

**delphi(2)** 198:22 199:2

**demonstrably(1)** 124:6

**demonstrate(2)** 137:25 202:22

**denied(2)** 168:22 168:24

**deny(1)** 108:6

**department(26)** 19:8 38:6 44:9 44:25 45:4 46:8 47:7 47:13 47:23 48:8 48:8 48:18 49:6 50:5 50:16 50:13 51:4 61:5 61:13 62:8 135:5 158:9 160:7 165:24 166:25 167:4

**department's(1)** 43:12

**depending(9)** 53:10 64:15 82:3 84:11 98:19 100:3 128:1 158:10 207:4

**depress(2)** 120:19 129:13

**derek(1)** 6:12

**derivative(1)** 206:6

**derive(1)** 126:1

**derived(1)** 85:20

**describe(20)** 12:18 16:4 19:15 22:24 27:24 42:18 43:7 43:16 47:14 52:9 52:12 52:23 53:6 53:23 59:10 61:21 151:9 189:16 190:3

**described(9)** 12:5 12:14 20:24 33:2 59:16 157:25 162:6 186:4 217:6

**describes(2)** 64:9 123:18

**describing(4)** 22:15 116:3 117:11 118:2

**description(4)** 57:4 105:21 117:14 117:16

**deserve(1)** 17:16

**deserves(1)** 18:16

**designed(3)** 47:22 49:8 113:5

**desire(4)** 13:12 32:6 63:14 119:6

**despite(2)** 94:6 103:2

**destroyed(1)** 198:6

**destroying(1)** 128:17

**detail(9)** 17:1 27:5 28:16 57:12 58:21 60:3 68:1 179:4 203:22

**details(2)** 11:24 57:14

**detain(1)** 213:7

**determination(5)** 49:23 59:21 169:23 183:12 188:2

**determinations(4)** 52:11 131:12 181:7 205:14

**determine(8)** 24:16 44:25 86:20 87:23 93:22 93:22 132:15 152:13

**determiner(1)** 131:6

**determining(3)** 159:14 165:19 206:5

**deutsch(1)** 2:20

**deutsche(1)** 92:12

**devastating(1)** 59:11

**developments(1)** 19:14

**devil's(1)** 145:16

**dialoging(1)** 101:6

**dialogue(2)** 44:6 101:1

**diamond(1)** 8:36

**diaz(1)** 1:46

**dichotomy(2)** 76:3 76:14

**dictate(1)** 76:24

**dictates(3)** 53:10 53:11 202:11

**did(50)** 15:20 17:22 35:20 35:20 46:7 46:25 58:17 66:14 74:13 80:25 82:18 85:17 96:11 97:15 97:18 102:7 102:21 104:1 104:4 105:13 107:3 113:15 124:15 132:3 147:18 147:18 147:25 148:1 153:11 163:11 166:14 174:22 177:3 180:2 190:14 191:15 192:17 194:6 198:17 199:14 200:3 203:12 205:19 206:17 209:22 210:21 210:23 211:3 211:4 213:20

**didn't(20)** 22:23 35:17 73:12 74:16 96:4 97:15 111:7 113:16 113:17 118:1 140:9 142:23 143:3 193:11 194:8 194:9 195:3 205:13 210:22 212:6

**didn't(2)** 144:24 177:19

**difference(2)** 65:9 79:10

**differences(2)** 51:3 76:2

**different(43)** 11:11 11:15 14:2 17:21 18:13 18:21 30:19 48:25 51:23 52:22 56:22 58:5 59:6 59:7 66:4 67:18 69:1 69:3 71:7 74:13 75:8 76:8 86:7 88:25 88:25 89:3 89:8 100:7 102:17 103:16 126:21 126:25 133:15 133:15 135:15 158:25 159:2 159:24 198:5 199:6 200:14 202:2 205:24

**differently(9)** 24:18 26:16 52:22 64:20 66:9 69:6 100:2 100:3 171:20

**differing(1)** 60:14

**difficult(2)** 128:7 133:14

**difficulties(1)** 219:4

**dig(2)** 58:7 190:20

**diligence(1)** 179:5

**dimension(1)** 15:8

**direct(9)** 45:22 87:1 121:9 149:10 152:25 172:3 185:5 202:4 210:7

**directed(1)** 155:21 180:24

**direction(7)** 12:2 69:22 107:19 168:8 186:3 186:13 186:10

**directly(5)** 49:4 53:16 62:10 126:17 166:16

**directors(9)** 10:8 117:5 120:24 130:4 132:16 132:17 134:2 150:23 175:19

**directs(2)** 33:20 154:19

**dirt(1)** 180:3

**disagree(4)** 114:18 178:4 192:14 211:12

**disallowed(3)** 37:13 62:5 90:6

**disappear(1)** 123:8

**disappointed(1)** 127:6

**discharged(1)** 49:7

**disclose(29)** 24:16 41:16 42:14 53:23 54:21 60:2 62:13 64:19 65:3 65:9 65:21 66:1 66:21 68:25 68:25 71:2 71:25 71:25 74:25 75:1 75:16 83:15 84:1 84:1 84:9 84:20 89:19 117:25 134:22

**disclosed(10)** 17:17 71:16 84:7 96:15 98:16 110:25 149:23 150:2 159:6 162:25

**disclosing(1)** 110:23

**disclosure(229)** 11:8 11:24 12:8 12:14 12:17 13:4 13:15 14:1 14:6 14:7 14:16 14:17 14:18 14:19 14:25 16:2 16:13 18:4 18:16 18:24 19:19 20:2 20:20 21:8 23:6 24:15 24:23 25:8 25:17 25:19 25:25 26:8 26:12 27:1 27:25 28:15 29:2 29:2 29:8 29:14 30:1 30:13 30:15 31:11 33:10 33:18 33:23 34:14 34:25 35:9 35:25 36:2 36:5 36:12 36:14 36:17 37:7 37:23 38:7 38:8 38:10 38:13 38:14 39:16 39:22 42:18 43:24 44:12 45:10 47:11 51:2 51:19 52:6 52:10 53:3 53:4 53:5 54:3 54:13 54:23 55:3 55:5 57:3 57:13 58:16 58:23 59:11 59:14 60:4 60:16 60:17 61:6 61:7 61:8 62:18 63:19 63:22 64:8 65:8 67:17 67:23 68:6 68:21 70:11 70:22 71:22 72:12 72:13 72:21 73:2 73:9 73:16 73:17 74:22 75:17 75:24 77:3 78:5 78:9 79:8 80:4 80:10 80:11 80:14 80:23 80:24 81:1 81:2 82:16 82:19 83:9 84:18 85:10 86:11 87:2 87:8 88:1 90:11 90:13 92:13 92:15 94:9 94:15 95:21 95:21 95:25 97:3 97:4 97:6 97:13 97:17 97:21 98:9 98:11 98:18 100:8 100:10 100:16 100:20 100:21 102:1 102:5 102:6 105:20 105:22 106:5 106:12 107:21 108:22 108:23 108:23 109:2 109:5 109:13 109:18 109:20 112:11 112:18 113:7 114:22 126:20 126:23 131:4 131:15 131:18 133:15 133:22 134:13 135:4 135:4 135:24 137:9 140:9 140:11 141:10 141:18 144:21 149:21 151:22 152:24 154:6 156:4 156:6 157:2 157:14 159:7 161:5 161:16 162:2 162:8 162:15 162:16 162:22 163:9 163:9 163:18 163:25 164:7 165:3 165:7 165:18 167:9 168:17 168:21 178:7 197:25 202:9 219:8

**disclosures(3)** 74:20 96:10 165:25

**discomfort(1)** 49:16

**disconnect(1)** 100:20

**discourse(1)** 100:24

**discovery(5)** 58:10 58:21 99:6 99:7 218:6

**discrete(1)** 32:25

**discretion(2)** 179:18 182:21

**discrminary(1)** 76:22

**discuss(3)** 95:18 136:4 215:14

**discussed(3)** 108:12 108:12 166:18

**discussion(9)** 30:9 87:11 87:16 101:9 167:8 174:24 200:17 200:18 205:19

**discussions(3)** 215:16 215:21 215:23

**disgorgement(6)** 81:11 82:9 95:1 95:4 95:6 101:5

**disparate(1)** 35:3

**displace(1)** 196:11

**dispose(1)** 13:11

**disposition(1)** 107:12

**disproportionate(1)** 116:25

**dispute(7)** 12:20 35:1 66:2 130:3 146:16 152:3 209:13

**disputed(4)** 152:8 152:9 152:10 162:3

**disputes(2)** 98:5 133:3

| Word                          Page:Line | Word                          Page:Line | Word                          Page:Line | Word                          Page:Line |
|---|---|---|---|
| **disputing**(1) 29:7 | **don't**(153) 14:10  14:11  18:7  18:24  19:3 | **each**(39) 12:10  14:20  16:1  18:7  18:9 | **employ**(1) 130:18 |
| **dissimilar**(3) 69:3  69:4  69:5 | 27:13  29:17  30:8  32:6  36:18  38:11  41:12 | 18:10  21:3  21:4  22:14  23:9  23:10  23:13 | **employed**(4) 189:6  193:10  193:11  208:24 |
| **distinction**(9) 64:15  64:16  76:21  77:5 | 43:9  43:11  45:9  45:18  50:9  50:14  51:11 | 23:23  24:1  25:16  26:9  29:15  32:20  42:4 | **employees**(1) 61:16 |
| 77:13  77:19  87:19  87:19  89:6 | 54:17  56:8  56:19  60:17  60:22  61:9  61:14 | 42:23  44:11  44:17  75:15  100:6  112:17 | **employing**(2) 188:8  188:14 |
| | 62:1  62:16  63:8  66:5  66:6  66:6  68:20 | 125:9  134:5  137:14  145:13  158:10  158:11 | **enable**(1) 27:5 |
| **distinctions**(1) 57:16 | 69:8  69:11  69:18  70:2  72:16  73:18  75:5 | 163:13  170:16  170:19  191:1  191:3  191:3 | **encourage**(1) 210:8 |
| **distributable**(16) 52:14  52:24  53:24  54:2 | 77:25  78:16  78:25  79:4  82:19  82:21  83:8 | 194:5  202:11 | **encouraged**(1) 33:19 |
| 55:23  56:10  80:12  80:17  80:19  81:20  83: | 83:17  84:6  84:13  84:14  84:23  85:18  86:19 | | **encouragement**(1) 114:25 |
| 83:20  83:23  114:12  116:8  158:23 | 88:7  90:19  90:23  91:5  91:5  91:9  91:14 | **earlier**(8) 85:13  86:8  86:25  96:5  113:12 | **encroached**(1) 155:14 |
| | 91:19  91:24  95:5  95:7  95:14  97:12  97:15 | 135:13  158:1  166:15 | **end**(12) 16:23  24:3  25:9  36:9  46:10 |
| **distributed**(2) 65:12  120:10 | 97:20  98:12  99:10  100:12  100:15  101:1 | | 123:11  135:1  153:10  170:23  171:7  190:3 |
| **distribution**(16) 76:23  117:4  120:21  121:3 | 107:1  104:17  105:3  105:4  105:6  107:21 | **early**(5) 64:4  174:8  199:21 | 192:8 |
| 121:12  123:2  129:24  132:11  132:15  137:1 | 108:15  110:20  111:16  113:3  113:5  114:9 | **easier**(5) 13:11  15:4  44:5  46:14  69:19 | **endorse**(1) 148:24 |
| 138:4  138:23  141:14  142:13  154:10 | 114:24  115:8  116:18  117:17  117:7  117:25 | **easiest**(1) 30:13 | **endorsed**(1) 181:24 |
| 154:11 | 118:8  121:17  123:7  123:14  123:19  123:20 | **easily**(1) 59:16 | **endorsing**(1) 103:6 |
| | 125:24  126:13  128:7  130:3  131:2  132:10 | **east**(1) 3:33 | **enforce**(1) 65:14 |
| **distributions**(2) 65:11  65:21 | 132:22  132:22  136:11  136:12  136:23 | **eastern**(1) 173:9 | **engaged**(2) 190:17  213:14 |
| **district**(1) 1:2 | 138:22  138:23  139:13  142:12  142:12 | **easy**(6) 47:8  68:10  68:14  71:22  71:23 | **english**(1) 4:45 |
| **divided**(1) 74:12 | 144:12  149:15  150:5  150:7  150:17  150:17 | **economic**(5) 74:1  116:23  121:9  151:10 | **enjoin**(1) 102:7 |
| **division**(4) 99:10  159:4  165:9  204:10 | 151:4  152:9  152:24  160:17  166:10  167:22 | 151:16 | **enjoy**(1) 200:7 |
| **doable**(1) 172:18 | 168:1  168:25  171:4  171:22  173:5  174:23 | | **enjoyable**(1) 51:9 |
| **doctrine**(1) 76:10 | 178:10  180:12  182:10  182:15  182:15 | **ecro**(1) 1:44 | **enjoyed**(1) 92:8 |
| **document**(35) 13:4  18:24  20:15  23:6  36:8 | 188:13  189:13  189:22  194:15  195:7  196:3 | **edgar**(1) 8:49 | **enlarge**(1) 218:20 |
| 44:13  45:10  47:12  57:4  57:7  57:14  58:1 | 196:10  197:9  203:13  204:21  208:19  209:3 | **editorial**(1) 33:23 | **enormity**(1) 127:25 |
| 58:16  58:23  59:11  59:14  77:13  78:5  89:23 | 209:9  210:14  211:12  213:7 | **editorialize**(1) 29:17 | **enormous**(1) 127:7 |
| 90:17  90:18  91:3  94:16  109:9  110:7 | | **editorializing**(1) 30:3 | **enough**(12) 11:22  32:8  40:13  45:23  50:8 |
| 111:13  111:17  114:3  114:11  125:17  140:1 | **donald**(1) 2:36 | **effect**(14) 43:7  43:10  62:3  102:2  104:25 | 57:20  58:23  59:18  72:22  81:8  91:20  186:1 |
| 145:5  145:10  146:22  151:8 | **done**(40) 12:24  13:13  13:19  34:11  35:7 | 106:14  124:13  126:7  147:12  148:11  150:25 | **ensure**(1) 219:8 |
| | 38:10  50:12  63:5  78:7  81:13  91:20  95:20 | 163:21  169:13  211:2 | **enter**(3) 206:2  213:11  214:20 |
| **documentation**(1) 181:6 | 104:12  104:13  104:16  105:4  105:4  109:14 | **effective**(3) 129:11  142:14 | **entered**(3) 177:20  209:20  216:5 |
| **documents**(24) 11:13  11:25  12:10  12:15 | 112:18  127:18  130:11  142:10  147:16 | **effectively**(5) 60:6  60:9  146:15  153:18 | **enterprise**(24) 52:16  52:25  53:25  54:2 |
| 12:17  13:5  13:16  14:1  16:10  16:13  17:20 | 147:16  147:24  148:20  155:12  158:5  172:2 | 153:18 | 55:19  55:23  55:25  56:10  59:4  80:13  80:17 |
| 19:19  20:17  21:18  27:4  34:14  34:25  51:20 | 179:5  180:2  181:2  181:22  188:18  200:20 | **effectiveness**(1) 92:24 | 80:19  81:20  83:5  83:21  83:23  108:17 |
| 52:6  62:6  72:4  72:13  130:23  175:2 | 208:2  208:6  209:12  209:12  209:20 | **effects**(1) 151:16 | 114:12  120:9  121:10  128:17  129:5  158:23 |
| | | **effort**(2) 108:7  218:10 | 209:1 |
| **does**(29) 50:25  52:7  55:12  55:14  65:9 | **don't**(8) 98:24  99:9  107:20  130:21  174:25 | **egg**(21) 20:25  22:13  22:14  22:16  22:20 | **entire**(7) 29:6  31:1  31:10  33:22  45:11 |
| 65:13  66:17  76:11  92:20  94:25  100:11 | 188:11  204:22  209:15 | 23:10  23:16  23:20  23:23  24:7  24:10  26:3 | 59:4  112:9 |
| 106:6  111:9  121:3  121:15  133:18  133:19 | | 27:13  34:4  37:20  135:5  156:6  158:19 | |
| 133:20  138:12  146:1  151:14  186:1  205:5 | **dorman**(2) 4:37  33:6 | 164:25  165:1  169:25 | **entirely**(2) 70:11  182:18 |
| 206:20  212:16  212:17  216:13  216:17 | **dorr**(1) 7:34 | | **entirety**(1) 33:19 |
| 216:20 | **doshi**(1) 9:43 | **egi-trb**(5) 6:33  7:41  24:14  25:22  26:11 | **entities**(8) 39:25  40:3  41:8  67:17  71:18 |
| | **doubt**(1) 66:13 | **egi**(1) 9:49 | 144:13  199:11  214:21 |
| **doesn't**(33) 17:6  23:17  26:8  29:18  40:7 | **doug**(1) 2:20 | **egregiously**(1) 25:18 | **entitled**(12) 14:12  30:23  53:13  83:9  87:17 |
| 42:17  48:10  48:12  48:13  48:18  49:3  53:19 | **dougherty**(2) 9:46  9:46 | **ehmer**(1) 9:49 | 89:4  92:23  134:23  134:5  137:15  145:7 |
| 61:19  77:5  77:16  77:18  111:17  126:22 | **down**(32) 11:19  12:19  13:19  14:12  19:21 | **eight**(9) 11:20  12:19  113:14  113:16  158:8 | 176:25 |
| 127:14  134:9  138:19  138:21  152:21  159:2 | 44:11  44:16  51:16  58:7  58:9  58:18  67:8 | 159:14  160:5  184:5  219:1 | **entity**(5) 58:17  58:17  121:9  130:3  166:20 |
| 159:21  194:24  199:1  202:11  202:16  205: | 70:2  72:25  96:23  99:5  99:11  101:11  110: | | **enumerate**(1) 160:3 |
| 206:24  207:8  209:8 | 117:14  117:16  118:22  129:21  143:12 | **eighty-five**(6) 136:2  136:8  138:18  140:14 | **enumerated**(1) 164:18 |
| | 144:13  155:10  172:17  181:16  193:7  193:1 | 142:5  150:5 | **enunciated**(1) 205:7 |
| **doesn't**(1) 79:4 | 196:7  204:18 | **either**(19) 19:5  54:18  64:11  64:14  105:5 | **environment**(1) 144:15 |
| **doing**(17) 21:17  42:15  45:1  86:3  131:22 | | 114:25  127:5  158:10  161:19  171:8  175:18 | **envision**(1) 210:9 |
| 134:1  134:4  144:10  148:19  149:16  167:16 | **downside**(1) 140:5 | 180:2  194:16  201:14  201:23  210:22  211:4 | **ephraim**(1) 8:36 |
| 169:25  170:2  190:2  206:1  207:16  214:12 | **dozen**(1) 129:18 | 213:11  214:17 | **epithetical**(1) 210:6 |
| | **dozens**(3) 35:17  63:20  141:13 | | **equal**(3) 77:15  78:23  89:11 |
| **dollar**(1) 122:23 | **draft**(3) 128:12  163:20  215:17 | **elect**(1) 94:25 | **equalizing**(1) 69:2 |
| **dollars**(12) 25:12  25:21  25:23  77:10  120:8 | **drafted**(4) 49:12  109:9  153:9  167:14 | **electronic**(2) 1:52  220:14 | **equally**(1) 166:16 |
| 132:21  132:24  139:23  156:9  194:14 | **draw**(5) 75:12  75:15  77:5  132:9  182:20 | **element**(3) 32:8  58:25  187:17 | **equipoise**(2) 26:1  26:6 |
| 207:22  213:17 | **drawn**(2) 76:16  76:21 | **elements**(1) 58:12 | **equity**(3) 121:8  129:1  129:4 |
| | **dreyfuss**(1) 145:16 | **eleventh**(1) 188:1 | **eric**(1) 5:6 |
| **domain**(1) 195:6 | **drill**(1) 204:18 | **elezzard**(1) 109:1 | **erisa**(24) 38:24  39:3  39:4  39:5  39:5  39:8 |
| **don**(4) 7:5  133:9  151:2  174:21 | **drilling**(1) 181:16 | **eligible**(1) 116:14 | 39:10  39:13  39:14  42:5  43:12  44:22  45:12 |
| | **drive**(1) 208:12 | **eliminate**(1) 112:13 | 47:1  47:4  48:11  48:18  48:21  49:1  62:9 |
| | **driven**(1) 60:6 | **eliminated**(1) 148:25 | 160:13  160:16  167:21  167:23 |
| | **driver**(1) 54:15 | **elizabeth**(1) 7:50 | |
| | **drives**(3) 54:9  60:14  82:17 | **ellias**(1) 7:25 | **erroneous**(1) 23:8 |
| | **drop**(1) 170:8 | **else**(23) 50:6  50:11  50:25  51:14  52:7 | **error**(2) 111:6  116:17 |
| | **dropping**(1) 170:3 | 56:17  60:18  62:14  82:18  110:16  120:10 | **errors**(1) 12:10 |
| | **due**(5) 50:13  88:5  88:19  88:22  89:14 | 123:1  139:13  143:7  144:14  148:15  153:5 | **esop**(13) 41:18  42:10  42:11  43:1  43:2  49:3 |
| | 110:16  116:5  179:5  209:18 | 156:14  158:12  162:12  162:21  196:24 | 49:7  49:19  49:21  61:15  62:4  160:13 |
| | | 207:17 | 168:11 |
| | **during**(4) 87:25  176:20  213:16  213:23 | **else's**(1) 112:16 | **especially**(4) 73:10  75:11  103:7  184:4 |
| | **duties**(3) 39:8  121:11  182:19 | **eluded**(1) 211:24 | |
| | **duty**(3) 41:20  42:2  205:6 | **emails**(3) 35:17  91:6  91:8 | |
| | **dynamic**(1) 59:5 | **emblematic**(1) 127:13 | |
| | | **embrace**(1) 31:18 | |
| | | **emerge**(1) 185:12 | |

| Word | Page:Line |
| --- | --- |

esq(88) 1:26 1:27 1:28 1:29 1:30 1:37 2:5 2:6 2:7 2:14 2:15 2:16 2:17 2:18 2:19 2:20 2:21 2:27 2:28 2:35 2:36 2:37 2:38 2:44 3:5 3:11 3:18 3:26 3:32 3:38 3:39 3:45 4:5 4:6 4:13 4:14 4:15 4:16 4:17 4:23 4:24 4:30 4:38 4:39 4:46 4:47 5:5 5:6 5:15 5:16 5:17 5:23 5:31 5:32 5:33 5:39 5:45 6:5 6:12 6:20 6:27 6:34 6:41 7:10 7:11 7:12 7:16 7:17 7:25 7:35 7:42 7:47 7:48 7:49 7:50 8:13 8:14 8:15 8:19 8:20 8:21 8:24 8:40 9:34 10:8 10:12 10:16 10:23

essence(2) 154:12 166:22

essential(2) 39:24 54:4

essentially(9) 21:10 73:6 85:14 90:10 129:21 130:24 139:18 182:11 182:12

establish(2) 121:23 157:1

established(3) 161:7 186:18 214:2

estate(15) 49:22 178:2 183:6 184:18 195:5 195:12 201:10 204:7 204:8 204:13 205:9 209:1 214:7 214:9 214:12

estates(7) 41:6 48:3 92:23 175:17 177:25 184:6 198:13

esther(1) 7:21

estimate(6) 139:25 140:8 140:14 141:6 144:17 147:23

estimated(4) 55:13 55:17 57:10 160:23
estimates(2) 135:19 143:1
evaluate(1) 26:14
evaluation(1) 113:2
evan(10) 6:20 7:17 8:13 30:18 34:18 36:19 63:17 78:13 112:4 161:22

even(26) 14:10 16:12 37:10 58:9 70:4 75:17 75:18 76:5 78:20 79:3 110:21 146:21 147:8 181:9 183:3 184:1 188:21 191:22 196:20 200:22 205:2 209:17 209:1 209:18 209:19 214:1

evening(8) 35:16 36:18 80:15 94:17 171:5 192:18 197:14 215:10

event(1) 182:6
events(1) 176:19
eventuality(1) 94:10
ever(7) 45:11 58:7 75:5 98:15 126:3 126:7 131:14

every(13) 17:1 17:16 17:17 29:25 48:12 58:21 113:3 116:9 147:18 147:19 172:23 202:11 205:12

everybody(9) 16:10 27:10 28:4 76:11 102:11 153:15 204:11 205:25 207:3

everybody's(3) 16:25 154:16 206:16

everyone(12) 11:3 28:7 28:11 76:24 112:14 112:16 112:16 114:21 142:4 147:1 212:16 217:12

everyone's(2) 28:4 112:19

everything(11) 34:9 44:7 69:21 108:9 123:8 124:8 172:14 172:19 172:24 173:3 205:25

evidence(8) 24:13 25:16 113:2 202:23 202:24 202:25 203:1 216:16

evidences(1) 152:7
evidentiary(4) 97:9 180:6 208:20 216:18
evil(3) 118:8 145:19 153:10
eviscerates(1) 31:10
evolve(1) 58:10
evolved(1) 17:24
exact(1) 72:17

exactly(7) 15:25 22:5 30:7 125:22 141:3 167:16 202:10

examiner(42) 22:15 22:18 23:7 23:15 23:25 24:6 24:12 24:19 24:21 25:2 25:15 25:23 26:2 26:5 26:10 26:19 30:4 30:7 30:16 32:3 32:14 33:11 33:21 34:2 57:5 59:2 64:14 76:7 85:17 85:17 86:6 98:14 98:16 102:20 103:19 104:1 104:5 108:4 156:9 158:17 164:21 165:1

examiner's(70) 22:23 22:24 23:1 23:2 23:5 23:11 23:25 27:11 27:25 28:3 28:8 28:12 28:16 28:17 29:1 29:7 29:12 29:17 29:18 29:20 29:23 30:6 30:22 31:1 31:2 31:2 31:7 31:12 32:23 33:15 33:17 55:24 64:9 65:4 69:4 85:8 85:16 85:21 86:9 86:19 86:21 86:21 86:24 87:4 99:17 101:16 102:1 102:3 102:9 102:16 102:19 103:8 104:10 104:10 104:13 104:19 105:2 105:8 105:18 108:3 108:7 108:8 108:11 108:13 112:7 112:10 113:13 113:14 113:1

example(10) 41:17 43:6 53:11 132:18 135:24 195:13 198:19 198:22 205:15 206:

exceed(1) 138:2
exceeded(1) 14:7
except(5) 59:12 105:19 112:14 164:21 177:10

exception(3) 102:13 102:13 166:1
exceptions(1) 215:2
excess(2) 175:20 187:6
exchange(2) 77:9 155:7
exchanges(1) 206:10
excise(1) 122:2
excising(1) 108:3
excluded(2) 102:1 148:7
exclusivity(2) 125:23 126:18
excuse(3) 88:7 121:16 182:12
executive(1) 25:11
executory(4) 21:13 21:24 150:2 150:3 131:11 132:12 182:18 182:19 182:20

exercising(1) 179:18
exert(2) 117:2 132:12
exhaustively(1) 25:2
exhibit(10) 23:5 30:12 33:18 57:3 98:10 99:13 109:4 109:11 113:25 114:13

exhibits(1) 14:8
exist(2) 149:18 159:21
existing(1) 174:4
exonerated(1) 26:18
expanded(1) 212:2
expands(1) 212:3
expansive(1) 45:3
expect(4) 61:15 93:2 175:6 195:4
expected(4) 184:11 184:20 184:23 218:13
expeditious(1) 171:13
experience(1) 131:3
experienced(1) 189:6
expire(1) 192:16
expires(1) 125:23
explain(4) 81:4 91:7 91:11 106:10
explained(1) 32:10
explaining(1) 194:9
explanation(7) 39:1 47:10 48:15 57:14 168:18 195:7 196:24

explicitly(4) 65:21 65:24 94:9 162:1
exploited(2) 119:18 119:19
exploiting(1) 119:4
explotive(1) 124:12
exposed(1) 25:10
express(2) 127:2 151:15
expressed(3) 17:4 131:19 165:14

expression(1) 196:6
expressly(1) 189:11
expurgated(1) 28:13
extend(2) 197:9 219:2
extended(1) 18:16
extending(1) 211:2
extends(1) 196:14
extent(14) 36:11 62:1 72:2 88:21 91:21 93:12 110:3 112:19 115:4 162:14 166:25 176:8 177:15 178:3

extortion(1) 151:11
extra(2) 49:14 146:1
extract(1) 32:11
extraordinarily(2) 134:18 182:21
extraordinary(13) 39:11 73:2 145:10 178:23 186:23 188:18 196:1 197:6 197:7 197:7 201:10 208:16 208:17

extreme(1) 186:24
extremely(1) 146:24
f.2d(1) 153:1
face(1) 140:6
facetious(1) 136:16
facially(1) 32:19
facing(2) 195:20 195:21
fact(55) 30:11 37:22 41:22 42:15 54:11 56:15 56:22 61:17 68:24 71:14 72:9 75:1 77:5 94:6 94:8 97:18 100:19 102:20 103:25 104:1 104:4 104:15 113:13 117:3 120:16 121:24 124:4 126:2 129:10 134:6 134:6 147:14 148:18 152:5 152:7 153:3 155:16 160:9 164:24 173:24 174:16 177:2 182:8 198:6 198:8 199:1 199:15 199:23 202:13 202:14 207:2 207:17 208:7 210:4 210:12

factor(1) 129:2
factors(1) 149:23
facts(1) 202:23
factual(5) 12:9 116:19 117:9 135:23 142:8
factually(4) 23:8 37:15 156:10 156:11
fail(1) 24:16
failed(4) 103:5 184:14 194:21 210:12
failing(2) 182:20 182:20
failure(5) 160:15 166:2 166:4 166:8 208:25
fair(11) 26:17 32:7 60:2 66:8 84:6 100:24 104:10 106:12 131:25 146:4 208:1

fairer(1) 106:20
fairly(7) 21:1 75:10 102:14 102:25 157:1 171:13 178:13

faith(1) 184:9
fall(6) 52:1 77:7 155:17 160:11 168:12 199:3

false(3) 86:4 156:11 156:11
familiar(2) 81:8 195:14
far(19) 11:22 43:4 59:23 81:13 86:1 108:23 127:11 127:15 136:20 141:18 178:12 186:1 187:6 192:5 201:5 204:4 206:4 209:14 218:17

fargo(1) 5:4
farther(1) 75:13
fashion(2) 13:20 15:11
fast(1) 141:1
fastest(1) 31:20
fate(5) 117:2 117:6 132:13 132:15 134:3
fault(1) 35:14
favor(1) 93:13
favorable(2) 86:23 102:9
favorite(3) 23:15 28:5 105:3
fcc(3) 120:13 129:6 129:9
feature(1) 83:2
federal(1) 218:24
feedback(1) 205:14

feel(12) 12:22 21:19 40:1 57:25 58:22 59:17 106:24 125:3 177:19 184:10 208:23 209:4

feels(2) 18:16 44:5
fees(2) 110:16 111:7
feld(4) 4:12 8:39 10:11 183:16
felt(7) 16:10 21:7 22:1 23:12 98:15 131:17 204:2

fevered(2) 146:22 147:12
few(13) 12:23 63:20 99:15 101:17 114:20 135:7 141:25 143:10 151:21 157:25 199:6 200:10 203:7

fewer(1) 12:2
fiction(1) 67:22
fide(1) 151:15
fides(1) 207:25
fiduciaries(17) 39:5 39:5 39:9 39:20 45:8 45:13 47:4 47:4 48:21 71:2 145:25 146:23 184:10 198:14 201:11 204:20 207:9

fiduciary(9) 39:8 41:20 42:2 47:3 121:10 182:19 187:25 205:6 210:13

field(1) 158:8
fiercely(1) 105:11
fifteen(3) 119:14 124:21 157:7
fifty(1) 120:16
fifty-ninth(1) 188:2
fight(4) 17:1 97:7 100:15 144:18
fighting(2) 29:22 155:9
figueroa(1) 4:40
figure(4) 59:4 72:17 100:5 100:6
file(12) 61:25 144:7 144:10 152:11 182:14 182:16 194:6 194:23 195:3 204:23 209:4 214:25

filed(45) 11:12 18:25 20:5 21:11 33:12 34:21 36:17 46:18 49:5 54:24 61:13 61:15 71:8 71:11 90:19 140:6 140:13 140:21 140:22 152:17 170:18 171:14 171:17 176:25 177:1 177:1 179:4 180:18 182:7 183:19 183:20 185:10 187:22 189:5 189:10 190:10 191:19 194:21 197:21 198:24 198:25 215:5 215:10 217:25 218:5

filing(11) 35:18 74:20 176:10 184:2 210:1 214:23 215:15 218:7 218:20 219:1 219:17

filings(1) 155:25
fill(1) 209:9
filled(1) 19:11
final(3) 49:17 58:25 68:22
finalize(1) 152:7
finalized(1) 84:18
finally(4) 23:4 42:21 43:17 192:21
financial(13) 18:3 59:13 66:22 100:24 181:11 181:16 181:19 182:12 190:10 190:25 191:14 204:24 205:11

financier(1) 129:3
find(10) 12:22 24:21 86:12 118:14 125:22 126:15 126:19 127:18 187:1 208:16

finding(1) 64:7
fine(5) 67:14 69:24 132:10 145:20 192:12
fine-tuning(1) 99:1
finger(1) 2:43
finish(3) 85:1 99:16 192:12
finished(3) 101:12 172:5 192:13
firm(1) 215:6
firms(2) 213:22 214:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **first**(53) 11:7 11:11 12:24 13:16 21:10 37:8 38:21 44:8 51:16 63:12 66:14 66:16 73:24 80:3 80:9 86:13 96:1 96:3 96:10 102:4 108:2 115:6 115:12 117:20 119:8 120:2 126:12 128:12 137:19 143:14 157:23 163:17 167:23 170:10 173:6 173:10 175:13 175:15 177:8 182:10 192:19 193:3 209:13 211:24 212:2 213:7 213:8 213:19 214:3 215:1 216:19 217:1 217:6 | | **for**(301) 1:2 1:25 2:4 2:34 3:4 3:16 3:31 3:44 4:4 4:29 4:45 5:4 5:22 5:38 5:44 6:4 6:11 6:33 7:2 7:15 7:24 7:33 7:41 7:45 8:4 8:7 8:12 8:18 8:24 8:27 8:31 8:35 8:39 8:43 8:46 8:49 9:4 9:7 9:11 9:14 9:18 9:21 9:24 9:27 9:31 9:34 9:37 9:40 9:43 9:46 9:49 9:52 10:4 10:7 10:11 10:15 10:19 10:22 10:26 10:29 15:4 15:10 15:14 15:16 16:13 16:25 17:8 17:9 18:2 18:6 18:11 18:14 19:4 19:9 19:23 20:1 20:12 20:14 20:15 20:16 21:6 21:7 21:17 22:5 22:17 23:23 24:1 24:10 24:10 24:13 26:7 26:24 27:4 28:4 28:6 28:10 28:11 28:18 28:25 29:4 29:13 30:19 31:1 31:23 34:18 35:1 35:4 35:5 35:13 35:21 35:24 37:10 38:24 39:3 39:8 39:23 40:1 40:1 40:20 41:1 41:8 41:11 41:14 41:17 41:17 42:6 42:14 42:17 42:19 43:1 43:3 43:4 43:6 43:6 43:9 44:6 44:20 44:24 44:24 45:7 45:19 45:21 45:25 46:5 46:12 47:7 47:9 47:15 47:25 48:9 48:11 48:17 51:10 51:16 53:6 53:9 53:11 53:24 54:3 54:5 54:15 55:19 57:2 58:5 58:24 59:2 59:17 60:1 61:5 61:10 61:20 61:22 61:25 62:25 63:14 63:16 63:17 63:22 67:18 67:20 70:7 70:23 71:13 71:20 71:22 73:3 73:8 73:16 74:18 77:2 77:3 77:9 77:15 77:18 77:19 77:22 78:20 79:8 79:17 81:4 83:20 84:4 84:5 84:6 86:15 87:8 89:5 91:17 91:22 91:23 93:10 93:15 93:21 93:22 94:21 95:3 95:9 95:10 97:6 97:12 99:1 99:10 99:11 99:12 100:4 100:6 100:7 101:20 101:25 102:5 102:11 102:14 103:6 103:9 103:10 104:18 105:9 105:11 106:8 106:12 112:4 112:9 113:6 115:20 117:5 119:2 119:7 119:14 119:15 120:4 121:13 122:13 123:2 123:14 123:21 123:23 123:2 123:24 124:3 125:4 125:8 126:12 127:7 127:11 128:3 128:17 129:8 129:13 130:16 131:9 131:10 132:6 133:5 133:9 133:17 133:19 133:20 133:21 135:11 135:11 135:24 135:24 136:21 137:6 138:19 139:1 141:10 141:24 142:8 144:20 144:21 144:22 145:13 146:1 146:5 146:13 146:13 146:17 148:11 148:11 | | **form**(8) 129:12 131:5 178:23 189:23 213:7 215:17 216:24 217:13 | | **full**(25) 37:8 60:11 86:9 89:13 109:6 110:3 120:3 135:19 136:9 137:5 137:16 137:20 138:3 138:6 139:14 140:4 142:2 142:2 142:7 146:17 150:6 178:7 181:25 187:19 192:5 |
| **fit**(1) 198:7 | | | | **forman**(1) 1:35 | | **fully**(4) 49:10 108:13 182:24 210:20 |
| **fits**(1) 170:2 | | | | **format**(1) 69:21 | | **fulsome**(1) 203:21 |
| **five**(22) 11:7 12:24 13:14 32:4 47:20 50:22 57:14 104:2 109:3 109:6 114:1 120:6 128:22 132:20 149:6 158:3 158:8 159:4 160:7 161:23 173:9 219:16 | | | | **formed**(3) 169:4 175:19 204:13 | | **fund**(5) 117:14 117:19 118:9 123:16 |
| | | | | **formidable**(1) 124:9 | | **fundamental**(9) 30:25 35:2 66:4 66:20 67:9 67:13 67:15 75:10 82:10 |
| | | | | **formulation**(2) 88:25 89:3 | | |
| **five-page**(1) 114:13 | | | | **forth**(18) 20:17 23:4 35:18 64:7 67:8 71:15 72:12 87:13 91:8 94:9 175:25 179:16 185:24 203:16 214:4 214:6 215:2 218:14 | | **fundamentally**(3) 23:8 64:1 69:3 |
| **fix**(2) 173:12 173:14 | | | | | | **funds**(3) 117:16 117:18 118:1 |
| **fixed**(4) 38:15 38:16 38:17 38:18 | | | | | | **further**(19) 40:10 52:11 60:21 60:23 80:18 120:20 122:3 162:11 164:20 165:3 170:13 178:16 183:7 191:13 215:16 215:23 216:12 216:13 220:4 |
| **fixing**(1) 216:5 | | | | | | |
| **flag**(1) 91:17 | | | | **forthcoming**(1) 101:2 | | |
| **flagellating**(1) 102:8 | | | | **forty-day**(1) 172:16 | | |
| **flagging**(1) 102:8 | | | | **forward**(10) 71:12 84:16 101:25 128:15 129:5 129:8 180:6 180:10 182:9 203:1 | | **furthermore**(2) 148:9 191:18 |
| **flagrant**(1) 25:10 | | | | | | **future**(5) 51:9 121:14 174:5 174:24 175:1 |
| **flascham**(15) 112:4 112:4 134:18 161:22 161:22 162:25 163:3 168:20 169:5 173:17 173:21 173:23 174:2 174:14 174:19 | | | | **found**(20) 24:23 25:24 26:1 26:5 41:19 70:21 76:7 81:03 85:9 85:10 86:13 87:7 89:23 90:17 92:14 99:7 128:3 165:1 177:13 212:1 | | **gag**(4) 102:2 105:6 105:7 105:16 |
| | | | | | | **gain**(1) 188:10 |
| | | | | | | **gainsmanship**(1) 188:8 |
| | | | | | | **galbraith**(1) 9:52 |
| **flaschen**(23) 6:20 30:18 30:18 34:18 34:18 36:7 36:22 37:19 37:23 63:17 65:17 68:4 68:10 68:13 70:10 70:24 72:24 76:2 76:13 78:13 78:13 78:20 | | | | **four**(40) 12:6 12:7 13:10 13:10 13:14 13:14 14:6 15:4 20:23 21:5 23:13 24:2 27:20 28:1 29:2 34:12 44:10 47:20 48:6 50:20 51:2 96:4 99:25 123:14 125:20 125:21 126:22 126:25 133:11 133:15 133:15 133:24 157:8 158:3 159:1 159:24 160:8 162:6 169:25 185:7 | | **game**(6) 16:24 74:1 106:12 146:18 171:7 190:4 |
| | | | | | | |
| **flaschen's**(2) 76:23 77:20 | | | | | | **gangat**(1) 10:4 |
| **flat**(2) 25:14 102:18 | | | | **fourth**(1) 186:17 | | **gap**(3) 64:16 209:7 209:9 |
| **flipping**(2) 45:21 124:21 | | | | **fox**(2) 5:4 206:4 | | **garrison**(1) 7:46 |
| **floated**(1) 129:11 | | | | **framed**(2) 209:11 210:15 | | **garvan**(1) 5:23 |
| **floodgate**(1) 24:11 | | | | **frankly**(15) 14:15 43:10 71:9 74:8 95:7 96:15 108:5 135:16 136:7 148:8 149:23 177:21 180:12 200:8 204:14 | | **gary**(1) 7:6 |
| **floodgates**(2) 23:12 23:16 | | | | | | **gate**(1) 54:5 |
| **floor**(6) 3:21 4:32 4:49 6:14 6:29 92:6 | | | | | | **gates**(1) 3:10 |
| **flow**(1) 77:8 | | | | **fraud**(1) 119:7 | | **gather**(2) 107:13 159:19 |
| **flowing**(1) 19:21 | | | | **fraudulent**(12) 81:10 90:3 93:8 94:4 137:17 184:17 184:25 185:13 186:9 186:1 200:18 200:23 | | **gating**(2) 54:5 184:22 |
| **flows**(1) 126:16 | | | | | | **gave**(4) 85:12 98:16 195:12 209:22 |
| **fluidity**(1) 156:17 | | | | | | **gavin**(1) 7:38 |
| **flying**(1) 91:8 | | | | **fray**(1) 73:20 | | **geared**(1) 182:1 |
| **focus**(1) 64:2 | | | | **frederick**(1) 8:27 | | **geddes**(1) 4:4 |
| **focused**(3) 15:3 48:20 190:20 | | | | **free**(6) 31:12 77:21 77:22 77:23 77:23 105:17 | | **gee**(1) 140:7 |
| **focuses**(1) 135:14 | | | | | | **gelded**(1) 11:19 |
| **focusing**(1) 63:25 | | | | | | **general**(32) 12:20 13:4 18:23 20:5 20:20 22:17 23:5 28:14 29:1 29:8 30:12 33:10 33:23 35:5 36:6 38:1 40:15 66:19 67:23 70:12 86:11 108:23 109:2 110:14 140:11 145:11 153:25 167:2 167:5 167:17 167:18 168:13 |
| **folks**(2) 150:1 208:9 | | | | **freeman**(1) 8:46 | | |
| **follow**(2) 36:14 69:20 | | | | **frenzy**(1) 208:7 | | |
| **follow-up**(3) 157:1 170:11 170:25 | | | | **friction**(1) 184:3 | | |
| **followed**(1) 38:9 | | | | **friday**(1) 21:4 | | |
| **following**(8) 18:1 25:5 34:12 85:23 93:10 186:2 192:20 218:7 | | | | **friedman**(1) 5:30 | | **generally**(9) 13:17 20:11 21:16 27:24 67:21 69:11 156:6 218:5 218:23 |
| | | | | **from**(115) 12:16 16:5 17:14 18:13 19:23 22:9 22:21 24:18 25:4 25:6 26:23 30:3 32:11 32:22 38:5 38:19 43:9 44:21 46:10 49:7 49:11 50:23 56:9 58:18 60:10 62:2 63:4 63:21 71:11 74:9 74:9 77:8 81:24 95:16 100:2 101:17 102:1 102:17 103:12 106:15 110:7 113:18 114:19 114:20 121:11 122:12 123:1 124:5 125:12 126:1 126:2 126:17 133:9 136:20 136:23 136:25 137:11 140:15 145:6 145:9 146:8 147:13 148:7 149:8 149:8 149:22 153:17 153:18 156:3 162:16 163:8 167:18 172:16 173:16 176:9 176:17 179:6 179:7 180:16 180:17 180:19 183:14 185:1 185:12 187:22 189:15 189:1 191:10 191:16 192:24 193:18 193:22 195:5 197:3 199:10 199:16 202:1 202:24 204:16 205:7 205:15 206:4 211:11 211:24 215:3 218:1 218:16 220:14 | | | | **gentilotti**(1) 5:22 |
| **follows**(5) 75:6 80:19 137:2 192:9 213:6 | | | | | | **gentry**(1) 10:29 |
| **foot**(1) 155:17 | | | | | | **george**(2) 9:46 9:46 |
| **footnote**(19) 55:8 55:9 55:12 55:16 60:16 87:7 87:10 87:20 88:2 89:7 89:9 89:24 91:2 91:4 91:15 109:21 110:6 110:8 212:2 | | | | | | **gerber**(1) 128:23 |
| | | | | | | **gerber's**(1) 153:1 |
| | | | | | | **gerson**(19) 38:5 38:5 38:17 38:21 39:23 40:5 40:11 44:1 44:5 44:10 44:19 49:16 50:16 61:5 61:5 166:7 167:14 168:8 168:14 |
| **footnotes**(4) 59:3 65:10 89:6 109:20 | | | | | | **gerson's**(1) 47:1 |
| | | | | | | **get**(77) 12:21 13:10 13:13 13:19 16:23 17:5 18:14 19:19 20:14 21:22 28:17 30:9 34:9 44:15 47:3 53:7 62:2 68:20 71:23 74:7 74:10 74:13 81:22 84:19 94:8 95:12 95:19 96:19 99:24 101:12 110:4 111:7 114:25 116:18 116:18 119:12 122:25 123:11 123:12 125:12 127:19 129:20 131:17 131:18 133:5 136:5 136:6 136:8 139:10 139:21 140:4 141:8 141:9 141:11 142:6 142:13 143:12 144:13 144:18 146:4 147:23 153:23 157:2 157:14 158:14 171:7 172:14 172:24 173:3 173:4 173:6 173:18 177:15 186:12 187:13 187:22 201:5 |
| | | | **forbids**(1) 76:22 | | | | |
| | | | **force**(2) 22:25 153:14 | | | | |
| | | | **forced**(1) 159:15 | | | | |
| | | | **forces**(3) 145:18 145:18 184:24 | | | | |
| | | | **forcing**(1) 178:24 | | **front**(8) 55:12 90:20 92:16 95:10 115:7 119:23 122:20 174:18 | | |
| | | | **foregoing**(2) 94:24 220:13 | | | | |
| | | | **foreseeable**(1) 121:13 | | | | |
| | | | **forever**(2) 189:8 200:11 | | | | |
| | | | **forget**(1) 106:16 | | **frustration**(3) 127:7 127:10 127:13 | | **gets**(11) 30:5 31:20 48:13 60:13 82:13 86:8 110:18 123:6 124:10 127:2 145:25 |
| | | | **forgive**(1) 43:5 | | **fulfilling**(1) 205:6 | | |
| | | | **forgiveness**(3) 43:1 43:7 62:4 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**getting**(25) 15:19  16:15  24:12  40:6  58:19  66:12  74:10  96:16  134:25  135:17  136:12  138:22  138:23  143:18  150:6  172:18  173:3  183:7  187:19  192:2  195:4  201:4  201:22  207:3  218:13

**giant**(2) 126:18  126:23

**gin**(1) 86:22

**giuliani**(1) 30:19

**give**(25) 14:4  46:16  47:22  48:12  48:15  55:6  58:23  63:19  67:3  72:15  83:8  86:20  88:9  97:11  101:8  104:18  115:15  123:25  131:2  140:2  156:19  172:10  173:9  194:24  195:23

**given**(29) 15:14  16:22  21:21  31:22  31:25  32:1  32:2  42:5  43:15  44:6  45:2  58:23  77:15  82:2  114:6  161:6  163:7  172:15  176:1  186:25  187:11  194:17  194:19  196:1  210:25  212:5  214:19  215:12  216:17

**gives**(5) 46:1  109:13  121:8  121:8  157:15

**giving**(6) 66:13  66:14  98:14  99:20  152:20  197:1

**glad**(2) 11:9  35:8

**global**(3) 97:1  97:9  190:15

**glosses**(1) 102:16

**glossing**(1) 102:8

**glut**(1) 16:12

**go-away**(1) 124:22

**goal**(5) 15:2  15:2  49:18  185:11  185:15

**god**(1) 149:4

**goes**(3) 18:10  43:4  45:15  50:11  57:7  57:12  58:25  86:1  106:6  108:16  108:20  146:6  178:9  189:22  209:6

**going**(113) 11:21  12:14  21:12  26:16  26:16  27:14  29:3  29:6  30:12  35:17  36:9  36:10  40:20  41:24  43:20  43:21  44:23  46:6  47:21  57:23  58:10  61:2  62:12  63:19  70:24  71:11  76:8  83:17  85:19  91:19  91:20  94:5  94:13  96:7  98:14  98:25  99:15  100:9  100:13  106:1  107:12  109:6  110:4  110:14  112:21  114:10  114:14  116:7  119:12  121:5  122:22  123:21  124:8  128:9  129:3  129:5  129:8  129:10  129:12  129:13  130:4  131:7  133:13  133:16  133:25  134:2  134:7  141:1  141:4  141:8  141:9  142:6  142:13  142:24  144:18  151:13  154:5  155:15  156:16  161:20  162:1  163:13  164:15  164:20  165:3  170:11  170:22  173:23  175:1  190:1  191:25  192:6  193:8  193:9  193:10  193:14  193:21  194:23  196:7  199:10  200:9  203:13  203:14  203:22  203:23  204:8  206:1  206:17  206:22  207:23  215:12  218:18

**goldberg**(1) 62:9

**golden**(106) 4:13  28:24  28:25  32:5  32:18  35:12  35:12  35:21  35:24  37:3  37:6  52:9  55:2  55:5  55:7  55:11  55:15  60:3  60:22  61:4  69:24  70:9  72:6  72:25  78:14  79:22  80:1  85:3  85:5  85:14  88:10  88:12  88:14  88:16  88:18  90:22  91:1  91:3  91:23  92:2  92:6  92:7  92:11  92:18  96:2  96:5  97:14  98:15  99:19  103:18  104:2  105:16  107:13  109:19  110:6  110:22  113:8  113:9  114:7  114:9  114:18  115:1  115:11  115:19  115:25  117:21  117:22  117:24  118:7  118:11  118:11  118:17  119:25  123:4  124:7  128:10  130:16  130:17  130:21  132:3  132:9  133:6  147:3  147:6  148:18  148:23  150:24  157:11  157:12  157:19  161:14  183:15  183:16  187:5  187:9  198:17  201:8  203:9  204:19  205:21  209:3  210:19  211:8  211:13  211:17

**golden's**(4) 31:19  101:6  197:18  201:19

**goldman**(2) 7:35  8:27

**gone**(6) 11:16  19:16  73:4  148:4  178:16  203:15

**good**(37) 11:3  11:4  11:11  11:25  17:7  18:9  18:10  19:23  22:8  28:24  31:20  32:15  33:5  34:1  35:15  59:25  63:3  72:7  92:5  93:14  98:5  98:6  101:19  106:10  123:14  132:7  138:19  145:18  148:20  151:18  153:10  180:20  195:23  196:20  197:14  198:19  211:15

**goodwin**(1) 6:21

**gordon**(13) 3:38  7:33  7:48  33:7  63:14  66:22  68:2  70:19  72:11  87:6  119:22  159:2  197:16

**gored**(1) 207:3

**got**(28) 16:18  17:18  17:24  18:2  18:3  18:6  23:1  23:14  28:5  44:11  44:16  45:16  60:24  80:24  96:13  96:18  97:5  102:10  114:11  122:20  124:4  133:24  140:14  147:25  169:2  204:1  205:15  207:11

**gotcha**(1) 99:8

**gotshal**(1) 8:12

**gotten**(4) 32:24  106:18  127:15  203:19

**grab**(1) 127:6

**gracious**(1) 91:6

**graeme**(1) 2:28

**grant**(1) 217:17

**granted**(3) 176:15  177:5  203:5

**granting**(2) 39:11  175:15

**granular**(2) 74:7  139:10

**granularity**(1) 75:17

**grapple**(1) 134:7

**grateful**(2) 124:8  126:8

**great**(11) 3:4  10:15  28:9  28:10  28:16  41:19  42:1  108:6  140:8  140:12  194:25

**greissman**(7) 5:15  59:25  60:1  60:20  79:17  79:17  166:16

**grey**(1) 9:18

**gross**(2) 147:18  181:13

**grossly**(2) 25:6  63:24

**ground**(1) 58:18

**grounded**(1) 117:9

**grounds**(1) 24:22

**group**(10) 30:20  30:21  39:19  40:17  64:1  69:16  117:18  128:3  164:13  164:17

**groups**(2) 65:9  67:23

**grown-ups**(1) 207:6

**gruss**(1) 9:7

**guarantee**(12) 60:9  76:18  88:5  88:20  88:23  89:3  89:12  89:15  110:13  111:3  111:4  143:4

**guaranteed**(1) 89:10

**guarantor**(5) 56:5  87:23  109:24  110:18  119:3

**guess**(14) 19:13  27:9  69:8  82:17  82:23  89:20  97:24  106:8  113:2  122:17  132:20  145:19  146:5  169:16

**guessing**(1) 170:6

**guidance**(1) 180:16

**guide**(1) 13:18

**guiliani**(1) 6:19

**guilty**(2) 29:9  86:17

**gump**(7) 4:12  8:39  10:11  35:13  151:19  166:12  183:16

**gun**(1) 187:24

**guts**(1) 111:7

**guy**(1) 106:17

**had**(75) 14:2  15:9  15:23  16:20  16:20  21:11  22:18  22:20  22:22  26:18  35:7  35:15  36:1  36:3  38:23  44:4  46:24  46:24  50:3  52:9  56:16  78:16  83:3  84:7  84:7  87:11  87:24  92:6  95:18  97:16  100:24  102:10  103:18  104:16  105:10  113:2  115:8  122:7  125:1  125:2  125:24  128:12  131:3  144:20  146:15  151:24  154:16  155:5  155:11  156:6  164:22  168:21  168:22  168:24  170:11  171:22  174:2  174:7  178:7  188:24  189:2  189:2  198:12  199:4  199:4  199:8  205:20  205:20  206:12  208:10  209:17  209:17  215:13  215:16  217:12

**hairs**(1) 12:11

**hale**(1) 7:33

**half**(4) 44:9  67:2  94:18  129:18

**half-way**(1) 118:22

**halfway**(1) 79:25

**hall**(1) 10:8

**halt**(1) 84:16

**hammond**(1) 5:16

**hand**(18) 12:25  17:19  18:14  32:9  46:15  63:24  63:25  104:17  104:19  105:6  108:20  108:21  110:22  131:21  177:15  211:22  212:217:2

**handful**(2) 197:19  199:14

**handle**(2) 11:7  11:10

**hands**(3) 23:4  90:1  201:21

**hang**(1) 15:10

**happen**(9) 30:9  31:8  37:17  94:10  103:17  121:21  121:25  159:10  165:15

**happened**(6) 62:7  108:6  148:2  148:3  202:21  209:7

**happens**(9) 21:21  30:10  37:25  90:6  107:9  109:16  121:17  202:18  203:18

**happy**(11) 30:21  30:23  35:21  37:24  77:1  101:2  131:10  182:6  205:25  206:16  206:24

**harassing**(1) 73:4

**harassment**(1) 73:17

**hard**(11) 17:23  32:14  44:24  45:3  45:3  45:6  105:8  105:9  126:18  150:10  211:18

**hardly**(1) 146:25

**harkens**(1) 202:8

**harm**(1) 74:19

**harmed**(1) 94:3

**harming**(1) 120:20

**harrisburg**(1) 1:48

**hartford**(1) 6:23

**has**(113) 11:9  18:25  19:13  20:10  25:23  26:10  28:7  31:11  31:22  31:25  32:1  32:20  36:7  36:20  38:15  38:23  39:24  41:18  43:5  46:1  46:21  50:8  57:2  58:14  61:13  61:25  70:14  72:2  72:2  75:2  79:6  80:9  83:1  84:22  94:2  94:9  96:20  103:5  105:4  105:4  105:10  110:6  111:12  113:6  114:15  114:22  114:21  117:4  117:9  117:15  117:17  118:24  119:9  125:2  126:7  127:25  129:25  135:3  135:5  135:5  135:20  141:13  143:7  143:24  145:3  145:4  152:11  153:15  156:17  163:23  165:21  175:6  175:12  178:16  179:13  184:14  185:11  185:24  187:17  187:21  187:24  188:6  188:7  189:7  190:19  195:15  196:2  196:18  198:25  201:8  202:20  202:20  204:14  208:2  208:6  208:8  208:24  209:7  209:10  209:15  210:2  210:5  210:12  212:16  212:22  213:18  214:24  216:1  216:8  216:25  217:5  217:20  218:8

**hasn't**(2) 163:5  200:18

**hate**(3) 148:19  149:16  150:7

**hauer**(4) 4:12  8:39  10:11  183:16

**have**(301) 11:5  11:12  11:14  11:19  12:3  12:7  12:19  12:11  12:19  12:24  13:1  13:7  13:9  13:17  13:20  15:15  15:17  15:20  15:22  15:24  16:16  16:20  17:1  17:9  22:4  22:6  22:7  23:10  23:17  23:18  24:20  26:6  26:8  28:9  30:2  30:4  30:20  31:15  32:11  34:16  34:17  34:20  34:20  35:14  36:13  36:13  36:16  36:19  37:10  38:10  38:17  39:7  40:19  42:13  43:22  44:4  44:8  45:3  46:16  47:18  48:2  49:19  49:21  51:3  51:21  51:24  52:1  52:5  52:13  52:24  53:1  54:17  54:19  55:11  55:25  56:21  56:22  56:24  57:24  58:2  58:4  58:15  58:15  58:23  59:18  60:17  60:22  61:10  61:15  61:20  62:11  62:20  62:25  63:8  63:9  63:10  63:12  63:13  63:15  63:25  65:17  66:14  67:21  68:5  68:14  69:19  69:21  69:23  70:2  71:6  71:18  72:13  72:17  73:4  73:5  73:11  73:13  73:25  74:1  74:3  74:12  74:25  78:9  78:14  78:24  79:15  79:24  80:3  80:25  81:16  81:18  81:21  82:19  83:17  83:25  84:1  84:5  84:14  84:17  85:18  85:20  86:2  86:5  86:5  86:6  86:7  88:1  88:8  90:7  90:8  90:19  91:5  91:7  91:14  92:10  92:23  93:6  93:24  94:7  94:12  96:5  96:22  97:3  98:12  98:12  98:20  99:20  100:16  101:21  102:14  102:15  104:14  104:15  104:16  105:8  106:11  106:11  106:16  106:15  106:20  106:21  106:21  107:14  108:8  108:9  108:23  108:25  109:1  109:4  109:15  110:25  111:16  111:25  112:11  112:18  112:20  113:3  113:10  113:24  114:4  115:2  115:7  115:20  118:17  118:19  119:5  119:9  119:23  121:3  122:3  122:9  123:5  123:14  123:19  123:20  126:3  126:22  126:22  126:25  127:14  127:18  127:18  127:20  127:21  129:20  129:25  130:4  130:9  130:16  131:14  132:8  133:13  133:12  133:22  134:20  136:10  136:24  140:13  140:21  141:2  141:15  141:25  142:1  143:1  143:10  143:17  143:22  143:23  144:7  144:7  144:8  144:15  144:17  144:25  145:17  145:21  146:12  146:17  147:2  147:21  147:23  148:1  148:5  148:6  149:3  149:8  149:13  152:1  152:25  153:15  154:8  154:10  154:11  154:18  154:20  155:6  155:7  155:12  155:14  156:21  156:22  157:3  157:13  157:25  158:1  158:5  158:5  159:20  159:25  161:23  162:25  163:1  163:7  164:2  164:8

**haven't**(9) 38:18  61:22  78:20  95:18  152:7  161:18  183:3  194:11  201:7

**having**(12) 13:10  15:7  51:8  97:7  103:9  107:20  146:24  172:10  182:23  202:16  206:24  206:16

**haystack**(1) 207:14

**hazeltine**(1) 3:31

**he'll**(1) 122:25

**he's**(16) 19:3  48:15  48:19  88:8  94:3  107:16  122:20  122:21  122:22  122:24  124:8  124:9  150:8  150:9  203:19  203:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **head**(1) 133:1 | | **hoarded**(1) 145:16 | | **hope**(12) 28:19 34:5 50:8 90:22 92:7 | | **i'm**(91) 11:9 14:14 15:10 17:5 20:5 24:2 | |
| **head's**(1) 187:24 | | **hoc**(12) 5:44 20:4 135:7 135:11 136:25 | | 98:19 101:11 134:12 136:13 136:14 153:1 | | 25:6 27:21 27:22 28:18 33:13 34:9 37:24 | |
| **headline**(2) 18:9 33:21 | | 137:1 137:13 137:21 138:6 164:12 164:16 | | 171:18 | | 40:24 46:6 46:23 50:12 51:1 53:12 55:5 | |
| **headquarters**(1) 179:11 | | 169:10 | | **hoped**(1) 38:23 | | 58:9 61:2 63:9 64:16 68:10 68:13 72:16 | |
| **hear**(22) 12:2 16:15 29:20 30:6 38:12 | | **hold**(12) 22:9 22:10 35:5 67:5 67:5 67:6 | | **hopefully**(5) 14:2 35:16 55:7 130:12 | | 73:9 73:12 76:5 78:15 79:14 80:6 80:25 | |
| 38:19 52:17 54:8 58:21 63:20 83:17 140:9 | | 67:6 67:7 67:10 68:1 72:18 150:1 | | **hoping**(1) 62:2 | | 83:10 84:19 86:16 88:10 88:14 88:16 89:7 | |
| 149:8 166:9 172:19 180:17 183:14 189:13 | | | | **hopped**(1) 139:17 | | 91:3 94:13 94:14 96:7 98:5 99:15 101:21 | |
| 212:21 216:12 216:23 217:16 | | **holder**(1) 89:25 | | **horan**(1) 3:5 | | 103:2 106:1 106:8 110:24 110:24 113:21 | |
| | | **holders**(17) 37:8 37:10 37:11 37:13 70:20 | | **horribles**(4) 121:16 121:20 121:24 128:11 | | 114:14 114:16 115:11 123:14 123:15 | |
| **heard**(30) 20:1 26:21 27:1 51:1 52:7 | | 70:25 72:9 87:17 87:22 109:23 116:9 | | **horrors**(1) 124:14 | | 123:19 125:18 126:7 127:3 127:5 127:6 | |
| 56:24 61:3 72:22 72:22 78:10 74:8 76:2 | | 116:12 121:11 187:19 194:25 219:7 219:9 | | **hostages**(1) 124:14 | | 128:3 132:5 136:15 136:19 138:25 141:12 | |
| 78:3 113:11 119:9 135:5 135:6 142:4 | | | | **hotly**(1) 152:4 | | 146:3 146:10 147:24 148:19 155:15 157:12 | |
| 149:9 151:21 156:4 156:4 159:17 202:1 | | **holding**(2) 72:3 120:21 | | **houl**(3) 179:7 179:9 191:13 | | 159:20 161:1 161:1 163:13 165:22 169:16 | |
| 202:4 202:23 202:24 202:25 213:19 216:2 | | **holdings**(19) 63:15 66:21 67:24 71:2 72:23 | | **hour**(4) 62:23 100:23 188:2 197:15 | | 170:6 170:6 170:14 173:23 195:13 196:11 | |
| | | 72:25 74:4 74:12 74:20 75:14 75:16 77:1 | | **hours**(2) 158:3 184:5 | | 211:13 217:17 | |
| **hearing**(27) 17:4 27:1 36:10 78:4 86:22 | | 77:25 87:5 159:1 162:6 165:8 169:1 | | **house**(2) 195:12 204:20 | | | |
| 97:8 102:6 137:24 163:12 163:15 170:11 | | 218:11 | | **how**(98) 11:6 11:9 12:13 13:4 13:19 13:20 | | **i've**(23) 36:24 38:8 61:3 73:10 84:4 89:18 | |
| 171:1 172:15 173:12 173:14 176:23 180:2 | | **hole**(1) 87:21 | | 14:3 14:11 16:17 16:23 16:24 21:12 21:11 | | 105:12 113:4 127:24 138:24 139:8 139:8 | |
| 189:14 192:8 200:9 202:9 216:6 216:7 | | **holiday**(2) 15:8 37:2 | | 21:15 21:25 22:15 23:9 26:14 27:13 27:2 | | 139:12 142:1 148:25 149:19 150:23 156:3 | |
| 219:13 219:21 220:7 220:10 | | **holliday**(1) 7:29 | | 27:22 27:24 27:24 29:1 31:11 34:4 39:21 | | 170:11 192:11 209:19 209:20 215:19 | |
| | | **home**(2) 154:21 208:12 | | 39:21 43:21 45:9 47:9 51:10 53:10 57:12 | | | |
| **hearings**(2) 105:1 114:20 | | **honestly**(2) 107:14 114:5 | | 59:4 63:5 64:19 65:1 65:1 65:6 69:14 | | **i.e**(1) 110:17 | |
| **heart**(6) 23:20 45:14 46:3 57:1 134:9 | | **honor**(301) 11:4 11:5 11:23 13:3 15:12 | | 69:18 74:12 80:7 80:8 81:3 82:2 82:22 | | **idea**(6) 21:9 37:9 59:10 101:8 106:11 | |
| 134:21 | | 17:7 17:22 17:23 18:18 18:22 18:23 19:6 | | 83:19 83:22 84:23 91:11 96:12 96:16 97:5 | | **identical**(5) 13:9 38:7 44:2 50:15 56:21 | |
| | | 20:3 20:10 20:21 20:22 22:8 22:13 24:9 | | 97:11 100:14 100:14 101:8 105:24 105:25 | | **identification**(1) 213:22 | |
| **heavily**(6) 66:23 67:1 68:16 68:23 176:14 | | 24:10 25:15 26:19 26:21 26:23 27:3 27:12 | | 106:1 109:14 112:15 114:11 115:8 124:2 | | **identified**(10) 25:11 49:10 79:15 156:9 | |
| 177:21 | | 28:2 28:18 28:23 28:24 29:6 29:20 30:18 | | 124:2 133:14 135:16 137:9 140:7 140:14 | | 163:5 175:20 186:6 186:6 213:18 217:1 | |
| | | 31:14 31:15 31:17 32:18 33:1 33:3 33:5 | | 142:12 147:1 147:23 152:1 155:25 157:2 | | | |
| **hedge**(8) 117:14 117:16 117:18 117:19 | | 33:10 34:1 34:10 34:15 34:8 35:18 35:19 | | 157:5 158:10 158:14 165:19 169:17 170:8 | | **identifies**(2) 25:25 62:21 | |
| 117:25 118:9 123:16 126:13 | | 35:14 35:24 36:9 36:18 37:4 37:6 37:23 | | 171:4 171:4 171:9 178:9 184:17 186:21 | | **identify**(11) 25:19 40:2 44:20 44:24 45:6 | |
| | | 38:21 44:2 45:24 46:14 48:23 49:24 50:18 | | 199:20 201:3 201:12 203:16 203:23 203:2 | | 47:21 63:15 159:19 189:14 194:22 218:17 | |
| **heel**(1) 196:5 | | 51:3 51:6 51:13 51:15 51:20 52:9 53:12 | | 203:24 | | | |
| **held**(8) 72:14 90:5 120:18 129:1 129:2 | | 54:22 55:21 56:16 56:18 57:1 59:25 60:4 | | | | **identifying**(4) 45:21 218:22 219:4 219:25 | |
| 129:12 154:14 200:9 | | 60:12 60:22 61:4 62:16 62:20 62:24 63:2 | | **howard**(2) 2:14 6:27 171:11 175:9 | | **identities**(1) 193:20 | |
| | | 63:7 63:17 64:3 67:21 68:13 69:16 69:18 | | **however**(9) 12:13 89:7 133:2 135:23 137:5 | | **identity**(3) 118:2 118:3 218:9 | |
| **help**(5) 26:14 44:22 59:19 69:14 93:21 | | 69:24 70:9 71:5 71:10 72:7 72:15 74:8 | | 170:2 178:15 182:8 201:10 | | **ignores**(1) 147:14 | |
| **helpful**(2) 15:14 204:5 | | 75:13 76:7 78:13 79:11 79:14 79:18 79:20 | | **huge**(1) 120:8 | | **illegal**(1) 77:22 | |
| **helps**(1) 67:11 | | 80:1 80:9 80:16 80:22 81:8 82:25 83:10 | | **huh-huh**(1) 111:18 | | **imagine**(2) 51:10 170:1 | |
| **henderson**(2) 180:21 203:6 | | 84:4 84:16 84:22 85:5 85:11 86:20 87:20 | | **human**(1) 15:19 | | **imagined**(1) 15:23 | |
| **henhouse**(1) 206:4 | | 88:7 88:14 89:7 89:21 90:15 91:4 91:23 | | **humungous**(1) 16:14 | | **imagining**(1) 15:16 | |
| **hennigan**(3) 4:37 33:6 72:8 | | 92:7 92:16 94:12 95:5 96:3 96:10 97:14 | | **hundred**(6) 140:2 141:8 154:1 181:6 | | **immediate**(1) 211:12 | |
| **hercules**(1) 3:19 | | 98:3 98:9 98:24 99:3 99:15 100:17 100:2 | | 193:16 199:3 | | **immediately**(2) 110:9 206:11 | |
| **here**(84) 13:8 16:18 23:3 23:14 24:1 24:7 | | 101:11 101:15 101:19 104:20 104:24 | | | | **impact**(5) 17:2 121:12 130:1 134:3 151:10 | |
| 24:11 26:25 26:25 27:3 28:18 31:20 32:9 | | 105:15 106:4 106:22 107:8 107:21 107:24 | | **hundred-and-fifty-million-do** 142:3 | | **impacted**(1) 48:21 | |
| 34:24 44:16 48:21 49:10 50:9 51:12 56:2 | | 107:25 108:20 111:25 112:4 112:21 113:9 | | 142:25 | | **impacts**(5) 53:16 56:6 95:5 95:6 95:9 | |
| 63:8 64:16 66:6 69:22 72:16 73:16 75:22 | | 114:3 114:19 115:14 115:21 115:25 116:1 | | | | **impaired**(6) 120:12 128:25 144:1 144:4 | |
| 78:15 78:16 86:15 87:16 88:18 90:23 | | 117:11 117:24 118:7 118:17 119:21 121:15 | | **hundred-and-twenty-day**(1) 218:23 | | 144:11 144:14 | |
| 100:9 100:9 100:9 105:12 108:6 108:23 | | 122:6 122:10 122:12 123:16 125:1 125:2 | | **hundred-million-dolla**(1) 142:6 | | | |
| 118:19 124:16 126:25 128:3 128:6 133:11 | | 125:14 126:10 126:11 127:10 130:9 130:1 | | **hundreds**(6) 68:18 77:10 85:19 102:8 | | **impartiality**(1) 176:5 | |
| 133:22 140:22 143:12 143:18 144:14 146: | | 131:1 131:10 132:4 132:25 133:6 133:7 | | 120:7 132:21 132:23 218:8 | | **implementation**(2) 68:12 68:14 | |
| 147:22 148:10 148:19 150:18 158:4 | | 135:10 135:13 139:17 141:12 141:23 | | | | **implication**(1) 117:18 | |
| 166:15 184:5 189:24 195:1 195:21 195:25 | | 145:21 142:20 142:22 143:6 143:23 145:2 | | **hurt**(2) 195:23 195:24 | | **implications**(1) 29:18 | |
| 196:11 197:5 197:25 198:4 199:24 201:1 | | 145:24 146:20 147:3 147:6 147:7 148:12 | | **hutchins**(1) 10:12 | | **implicit**(1) 161:23 | |
| 201:11 202:10 202:18 206:3 207:16 207:1 | | 148:22 149:5 149:6 149:14 150:15 150:16 | | **hyperbole**(1) 119:25 | | **implies**(3) 65:13 66:24 86:2 | |
| 208:10 208:17 208:24 209:2 209:7 209:9 | | 151:2 151:14 151:17 151:18 154:15 155:2 | | **hypothetical**(5) 18:11 27:6 106:16 106:20 | | **imply**(2) 25:22 103:20 | |
| 209:24 210:12 212:9 213:10 | | 155:18 155:19 156:5 156:13 157:7 157:12 | | 122:18 | | **important**(10) 38:25 53:8 53:8 58:19 75:6 75:8 | |
| | | 157:23 159:22 160:17 160:21 161:11 | | | | 84:5 125:6 125:17 128:2 134:14 | |
| **here's**(4) 11:23 15:1 131:13 156:16 | | 161:20 162:4 164:14 166:7 166:14 167:14 | | **hypothetically**(2) 68:23 68:24 | | | |
| **hesitate**(1) 130:15 | | 168:5 168:7 168:20 169:6 169:7 169:24 | | **i'd**(8) 17:23 24:7 27:12 38:19 60:4 73:1 | | **importantly**(1) 11:19 | |
| **high**(2) 82:3 102:25 | | 170:16 170:21 171:3 171:11 171:15 171:5 | | 85:1 91:7 | | **imported**(1) 19:19 | |
| **higher**(2) 123:2 205:20 | | 172:9 173:2 173:11 173:17 174:19 174:21 | | | | **impose**(1) 202:10 | |
| **highlight**(5) 35:2 151:5 197:20 199:12 | | 175:4 175:9 177:16 178:1 178:12 179:19 | | **i'll**(24) 14:4 29:9 54:7 77:16 80:7 91:24 | | **imposed**(2) 40:15 162:22 | |
| 199:14 | | 180:8 180:12 180:15 180:20 180:22 180:2 | | 100:17 102:25 114:19 115:6 115:15 115:2 | | **impossible**(1) 40:8 | |
| | | 181:23 182:6 182:25 183:12 183:15 | | 149:24 151:22 154:20 170:10 180:15 | | **impressions**(1) 15:6 | |
| **highlights**(1) 179:9 | | 183:18 184:20 185:9 186:23 187:5 188:17 | | 180:17 180:19 186:12 192:10 195:20 | | **imprimatur**(1) 163:19 | |
| **highly**(2) 64:11 64:14 | | 189:4 189:20 192:8 192:17 196:12 197:5 | | 197:15 199:7 | | **improper**(1) 180:13 | |
| **him**(14) 18:14 30:23 44:11 44:22 44:24 | | 197:14 197:23 198:8 199:6 199:21 200:8 | | | | **improved**(1) 35:4 | |
| 45:13 48:15 79:23 122:19 122:20 124:7 | | 200:15 200:25 201:2 201:17 201:18 201:25 | | | | **imran**(1) 9:40 | |
| 203:18 203:21 216:2 | | 202:10 202:14 202:22 203:3 203:6 205:2 | | | | **in-depth**(1) 191:15 | |
| | | | | | | **in-person**(1) 192:21 | |
| **hinges**(1) 75:22 | | | | | | **inaccurate**(4) 23:2 37:15 56:3 86:1 | |
| **his**(26) 32:5 32:19 33:16 33:21 42:11 | | | | | | **inactive**(2) 205:17 205:17 | |
| 48:23 59:2 59:4 76:2 76:5 101:16 107:13 | | **honor**(25) 205:4 207:5 208:11 210:19 | | | | **inadvertently**(1) 212:7 | |
| 108:8 110:22 124:8 124:9 124:22 145:14 | | 211:14 211:22 212:23 213:3 215:6 215:11 | | | | **inappropriate**(7) 75:24 80:5 86:15 86:25 | |
| 147:22 147:23 149:17 150:8 157:15 166:1 | | 216:3 216:11 216:15 216:25 217:8 217:19 | | | | 119:20 121:22 186:22 | |
| 179:9 183:10 | | 217:23 218:3 218:4 218:14 218:19 219:6 | | | | | |
| | | 219:11 219:22 220:9 | | | | | |
| **historical**(3) 57:11 58:5 102:20 | | | | | | **inc**(3) 9:11 9:22 153:1 | |
| **hits**(4) 58:6 108:6 184:1 189:5 | | **honor's**(2) 210:20 213:8 | | | | **incidentally**(1) 53:5 | |
| **hit**(3) 104:18 122:24 198:23 | | **honorable**(1) 1:20 | | | | **inclination**(1) 156:23 | |
| | | **honoring**(1) 60:7 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| inclined(1) 164:11 | | institutions(1) 73:4 | | issue(77) 15:13  16:19  21:5  22:3  22:22 | | job(2) 148:16  148:20 | |
| include(5) 41:13  160:5  164:7  164:17  212: | | instruct(1) 154:20 | | 23:15  27:10  27:11  30:25  34:6  36:16  41:14 | | jockey(1) 29:10 | |
| included(11) 33:17  58:16  61:22  81:15 | | insurance(5) 20:24  21:12  21:15  21:21  22: | | 42:3  43:13  45:17  48:19  49:17  51:21  53:10 | | john(1) 7:30 | |
| 102:16  161:9  163:18  163:22  165:22  176:6 | | intelligence(1) 114:10 | | 54:5  54:11  56:19  56:20  57:23  61:20  63:1 | | johnston(40) 4:38  33:5  33:6  33:25  72:7 | |
| 212:5 | | intend(1) 203:17 | | 63:16  63:21  64:15  66:11  69:7  69:13  79:2 | | 72:8  73:12  73:14  73:21  73:23  74:7  74:17 | |
| includes(5) 34:19  41:10  42:10  167:20 | | intended(5) 15:9  35:7  110:2  182:2  219:2 | | 79:5  82:10  82:13  87:15  87:16  96:20  97:9 | | 74:22  75:12  76:1  78:12  86:10  107:25 | |
| 176:17 | | intense(1) 190:20 | | 97:16  97:18  100:17  100:19  100:22  101:4 | | 110:24  111:3  111:11  111:16  111:19  111:22 | |
| | | intensive(1) 181:19 | | 105:6  105:15  107:9  107:21  116:19  122:14 | | 111:25  112:2  126:11  127:10  127:17  128:9 | |
| including(7) 89:13  102:14  116:11  174:4 | | intent(5) 91:10  123:5  126:16  155:6  191:11 | | 122:15  134:6  136:4  139:18  143:4  143:23 | | 130:8  139:17  140:20  150:19  162:5  162:9 | |
| 176:19  195:12  212:13 | | intentionally(1) 73:20 | | 144:5  144:20  144:23  152:3  153:6  153:8 | | 162:12  162:14  162:20  162:23 | |
| | | inter(3) 59:4  82:16  84:14 | | 158:19  162:5  167:7  172:2  172:8  174:6 | | | |
| incomprehensibl(1) 114:9 | | inter-company(28) 54:8  54:12  57:2  57:5 | | 174:7  175:4  182:23  184:13  203:11  213:10 | | johnston's(1) 154:5 | |
| inconceivable(2) 139:4  139:5 | | 57:6  57:17  57:20  58:2  58:6  58:12  60:7 | | 213:15 | | join(2) 184:24  197:18 | |
| inconsistencies(1) 34:22 | | 60:7  60:10  60:12  60:12  60:25  82:13  82:1 | | issued(2) 41:19  55:24 | | joined(1) 73:20 | |
| inconsistency(1) 110:20 | | 82:21  82:25  83:3  83:7  83:11  83:12  83:15 | | issues(46) 11:17  11:20  12:13  12:20  12:25 | | joint(9) 14:6  14:18  20:2  26:8  27:25  33:18 | |
| inconsistent(4) 65:3  99:8  177:21  182:18 | | 83:25  84:9  84:17 | | 13:8  13:9  21:6  21:6  30:19  32:14  32:25 | | 105:19  106:5  177:11 | |
| incorrect(3) 31:14  121:2  164:24 | | | | 36:15  44:3  50:20  51:4  51:8  56:21  60:3 | | | |
| increase(3) 56:9  153:23  154:3 | | interactions(1) 120:13 | | 69:19  73:9  77:1  77:2  78:22  96:19  108:18 | | jonathan(1) 8:15 | |
| increased(4) 55:25  56:11  146:17  153:25 | | intercompany(20) 98:4  98:10  99:3  108:17 | | 108:19  108:24  129:6  134:4  143:7  143:17 | | jones(9) 7:17  10:7  106:16  107:16  122:18 | |
| increments(1) 159:3 | | 109:7  109:11  113:23  114:2  143:25  144:8 | | 151:21  160:7  171:6  171:16  184:22  199:15 | | 123:13  124:22  125:5  142:11 | |
| incumbent(2) 61:21  71:1 | | 144:16  151:25  152:4  152:6  152:9  152:18 | | 205:23  207:19  210:15  218:7  218:19  219:3 | | | |
| incurred(1) 79:1 | | 153:5  158:20  158:21  165:4 | | 219:20  219:24 | | jones's(2) 124:6  135:15 | |
| indeed(4) 22:16  48:10  66:9  66:24 | | | | | | joshua(1) 4:39 | |
| indemnity(1) 48:1 | | interest(24) 39:10  51:15  71:17  74:1  87:18 | | issuing(1) 78:18 | | jot(1) 17:16 | |
| indentured(2) 184:9  185:10 | | 87:23  88:22  89:4  89:14  109:24  110:5 | | it's(170) 14:10  16:23  16:25  18:10  19:20 | | jpm(5) 63:14  70:19  119:21  122:1  159:1 | |
| independent(1) 154:8 | | 110:15  110:17  111:6  121:11  123:1  143:18 | | 20:5  20:8  20:14  21:19  24:23  24:24  25:25 | | jpmorgan(10) 8:7  9:31  66:22  68:1  68:19 | |
| independents(1) 154:10 | | 149:3  176:3  177:25  184:12  192:3  214:7 | | 26:13  28:13  28:13  28:13  29:1  30:7  30:11 | | 70:17  71:18  72:11  78:21  87:5 | |
| index(1) 16:3 | | 214:10 | | 30:20  30:22  34:4  37:13  38:24  40:5 | | | |
| indianapolis(1) 5:14 | | interested(1) 209:22 | | 40:14  41:22  42:19  42:22  42:24  43:21  45: | | jpmorgan's(1) 67:13 | |
| indicate(4) 66:2  72:3  93:20  157:15 | | interesting(1) 191:9 | | 45:13  46:2  46:10  47:10  48:14  49:23  51:2 | | judge(7) 1:21  41:18  128:23  147:4  147:18 | |
| indicated(9) 29:6  29:12  36:7  37:19  78:5 | | interests(7) 18:21  116:24  119:17  134:9 | | 54:4  54:5  56:8  56:15  57:14  57:19  59:14 | | 153:1  204:19 | |
| 121:5  164:23  169:9  193:1 | | 134:20  134:22  148:17 | | 59:22  61:21  63:16  63:18  65:4  65:19  70:4 | | | |
| | | | | 70:10  71:1  74:24  75:3  75:8  76:11 | | judges(1) 133:5 | |
| indicates(2) 26:4  219:18 | | interject(1) 75:4 | | 77:19  79:2  79:11  80:5  80:10  80:18  82:9 | | judgment(21) 20:15  27:7  40:22  40:25 | |
| indicating(1) 57:18 | | internal(1) 41:21 | | 82:15  84:6  84:8  84:10  87:13  88:2  88:3 | | 43:14  131:11  133:1  150:9  178:17  179:17 | |
| indicia(2) 208:1  208:1 | | interrup(1) 97:15 | | 90:18  90:22  91:2  95:16  98:25  99:9  100:4 | | 182:19  182:21  187:7  187:8  191:5  193:10 | |
| individual(12) 13:6  19:2  20:23  26:18 | | intervene(1) 147:10 | | 100:9  102:18  105:10  105:11  105:13  107:5 | | 199:17  202:4  202:19  203:2  214:13 | |
| 34:11  67:23  73:4  74:19  75:15  218:9 | | intervening(2) 96:18  96:19 | | 109:10  110:9  111:9  112:22  112:22  113:4 | | | |
| 218:10 | | into(43) 19:20  28:17  30:9  40:6  43:20 | | 113:21  116:2  117:8  117:18  118:21  120:4 | | jump(1) 196:7 | |
| individually(1) 44:18 | | 59:14  74:10  74:10  74:15  78:23  93:7  93:11 | | 121:19  121:21  123:7  124:12  127:8  127:23 | | juncture(4) 182:4  183:8  205:3  208:6 | |
| indulge(1) 208:11 | | 93:18  94:1  94:5  97:1  104:7  104:8  106:13 | | 127:24  128:7  128:16  129:4  129:17  129:19 | | june(2) 19:13  207:25 | |
| indulgence(3) 189:19  217:24  219:11 | | 124:16  128:25  129:3  129:11  131:8  139:12 | | 131:21  131:22  131:22  131:23  133:23  134: | | jurisdiction(1) 107:20 | |
| indulging(1) 203:7 | | 140:23  160:11  161:2  164:16  168:12  172:24 | | 134:8  136:20  138:18  138:19  139:15 | | just(179) 13:3  13:5  14:4  14:5  14:10  14:25 | |
| infamous(1) 59:2 | | 173:4  177:20  178:9  182:15  183:7  192:1 | | 140:20  141:1  141:13  141:14  141:17  142:5 | | 15:10  15:12  16:16  16:24  19:14  19:21 | |
| infinitum(1) 105:1 | | 196:22  205:12  206:2  213:11  214:14  214:2 | | 144:9  144:10  146:21  148:14  148:15  148:1 | | 19:21  21:24  22:24  23:3  25:14  26:24  29:9 | |
| infirmities(1) 36:3 | | | | 150:5  155:22  156:11  156:12  156:23  158:2 | | 31:9  31:19  33:2  33:9  34:3  34:14  35:15 | |
| influence(3) 16:9  130:2  130:5 | | introduction(1) 33:22 | | 161:7  161:8  162:10  166:17  167:24  169:2 | | 36:11  36:22  37:20  37:23  39:20  43:4  47:23 | |
| inform(2) 67:11  69:14 | | intuit(1) 45:3 | | 171:14  173:19  177:14  180:6  180:7  182:19 | | 48:16  48:17  49:14  51:3  51:6  51:11  54:7 | |
| informal(1) 19:7 | | investigating(1) 25:2 | | 184:1  185:5  187:24  187:25  188:18  188:19 | | 55:11  56:20  58:3  59:9  60:23  62:21  66:2 | |
| information(34) 16:8  19:12  27:4  37:1 | | investigation(2) 45:2  85:21 | | 189:9  189:23  191:12  200:6  203:4  204:6 | | 66:8  68:1  68:15  68:19  69:7  69:14  69:22 | |
| 44:15  53:9  54:4  59:19  57:2  57:13  57:24  59:19 | | investment(2) 9:43  207:23 | | 207:7  207:10  210:7  214:9  217:5 | | 69:23  70:2  73:8  78:8  78:16  78:21  79:15 | |
| 71:23  72:23  73:18  74:10  74:11  74:24 | | investor(11) 18:2  18:15  27:6  123:15 | | | | 79:21  80:16  82:18  84:15  86:16  88:9  89:20 | |
| 77:19  82:2  82:11  82:24  84:5  85:20  98:13 | | 123:17  123:19  126:14  128:5  133:16  131:1 | | item(8) 34:13  51:16  62:17  143:8  160:6 | | 90:13  91:5  91:9  91:17  91:17  91:20  91:23 | |
| 99:13  127:3  127:20  127:23  139:10  140:9 | | 134:5 | | 173:19  189:21  217:22 | | 95:5  95:16  95:18  96:4  97:7  97:11  97:14 | |
| 140:12  141:5  158:20  160:22 | | investors(4) 14:13  17:14  124:15  142:11 | | | | 97:20  99:7  101:4  101:22  104:20  104:21 | |
| | | invite(3) 143:13  147:18  216:2 | | items(16) 11:7  12:24  13:14  13:14  13:23 | | 106:17  108:2  108:14  110:9  112:8  112:12 | |
| informative(1) 26:14 | | invited(1) 179:24 | | 34:2  72:12  79:24  96:4  101:17  158:6  158:1 | | 112:13  112:17  113:4  113:11  113:18  113:21 | |
| informed(6) 27:6  27:12  27:15  53:9  54:6 | | involve(5) 48:10  48:18  48:25 | | 158:8  158:9  164:18  197:19 | | 113:25  115:4  115:21  119:16  121:7  121:17 | |
| 82:12 | | involved(3) 64:15  97:8  190:11 | | | | 124:17  124:25  127:24  127:24  128:2  131:24 | |
| | | involves(3) 143:24  158:18  158:24 | | iteration(1) 114:1 | | 132:6  132:6  132:9  132:9  132:13  132:13 | |
| inherently(2) 45:6  118:8 | | involving(2) 47:1  98:10 | | its(36) 31:21  35:16  42:2  45:1  45:2  64:5 | | 132:18  134:12  134:21  139:2  139:12  140:20 | |
| initial(5) 15:6  137:11  138:23  153:19 | | irrespective(1) 81:17 | | 64:5  64:6  72:3  72:4  94:11  97:10  102:23 | | 142:22  144:11  146:21  148:25  149:10 | |
| initially(3) 154:8  164:23  206:12 | | irresponsibl(2) 207:11  207:12 | | 118:24  120:11  125:9  128:15  131:11  134:5 | | 149:11  149:16  150:5  150:8  150:20  155:2 | |
| initiated(1) 76:13 | | island(1) 145:16 | | 135:3  145:14  146:11  147:1  147:13  157:15 | | 155:20  155:24  157:12  157:12  161:14  162:5 | |
| injunction(1) 102:15 | | isn't(18) 23:7  23:17  34:3  72:22  75:6  76:20 | | 161:16  176:8  180:4  180:4  184:18  185:11 | | 167:14  168:1  168:7  168:8  169:2  169:5 | |
| injunctive(2) 178:24  180:1 | | 78:6  78:8  91:4  103:23  106:8  124:7  129:22 | | 205:11  208:10  209:4  210:13  216:14 | | 170:3  170:6  170:8  173:14  174:11  174:22 | |
| ink(1) 186:21 | | 131:24  139:3  148:13  187:25  207:10 | | | | 180:22  181:20  182:14  182:16  183:8  183:24 | |
| inked(2) 84:10  84:10 | | | | itself(3) 33:23  171:16  181:14 | | 188:25  189:18  191:24  195:7  196:10 | |
| innocuous(1) 93:9 | | | | james(6) 1:26  1:28  2:27  4:38  8:46  213:3 | | 197:19  199:7  199:9  199:12  201:18  201:19 | |
| inquire(1) 161:14 | | | | janet(2) 180:20  203:6 | | 202:8  204:19  204:24  210:6  210:19  210:19 | |
| insert(2) 43:20  169:24 | | | | jared(1) 7:25 | | 210:20  211:3  218:25 | |
| inserted(2) 95:17  161:4 | | | | jason(3) 9:14  9:15  10:23 | | | |
| insiders(4) 25:13  156:10  175:18  176:9 | | | | jean-marie(1) 8:21 | | | |
| insist(1) 62:12 | | | | jeff(1) 9:18 | | justification(5) 31:23  31:25  32:1  32:3 | |
| insolvency(1) 64:7 | | | | jefferies(1) 8:43 | | justifies(1) 74:2 | |
| instance(1) 37:10 | | | | jeffrey(2) 3:11  5:5 | | justin(1) 8:43 | |
| instances(3) 199:17  204:3  205:24 | | | | jenner(5) 6:40  7:41  215:6  215:14  215:24 | | kl (1) 3:10 | |
| instead(3) 38:24  119:16  129:12 | | | | jessica(1) 1:30 | | kalenchits(2) 8:4  8:4 | |
| institution(2) 72:23  72:24 | | | | jillian(1) 7:10 | | kaminetzky(1) 2:35 | |
| | | | | jim(3) 33:5  72:7  175:14 | | kansa(3) 1:29  219:22  219:22 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **kaplan**(2) 6:26  6:27 | | **landis**(2) 2:4  2:5 | | **leaving**(1) 44:6 | | **leverage**(3) 93:8  184:14  196:23 | |

**kaplan**(2) 6:26  6:27
**kasowitz**(1) 5:29
**katharine**(1) 4:47
**kaye**(1) 3:25
**kazlow**(1) 8:40
**keep**(5) 70:2  94:2  101:6  106:19  197:15
**keeping**(1) 63:18
**kelley**(1) 8:7
**kempner**(1) 8:35
**ken**(1) 219:22
**kenneth**(1) 1:29
**kept**(1) 147:13
**kevin**(6) 1:20  1:27  8:7  11:4  19:2  88:12
**key**(2) 74:14  77:3
**keying**(1) 78:4
**kick**(2) 34:15  129:21
**kid**(1) 112:15
**kind**(24) 12:1  13:5  15:18  17:16  19:7  21:8  23:9  24:6  27:4  31:19  33:1  33:20  41:15  43:13  58:18  62:8  68:1  104:25  134:10  160:4  177:20  180:1  195:15  204:20
**kinds**(7) 62:11  131:5  133:3  204:2  204:4  207:19  207:22
**king**(4) 2:45  2:46  3:46  5:24
**kjc**(1) 1:9
**klauder**(1) 3:45
**klein**(1) 10:59
**kline**(1) 7:11
**knew**(2) 83:6  189:7
**know**(160) 12:11  13:20  14:11  14:11  14:22  14:25  15:8  17:15  17:16  17:16  17:19  19:3  21:17  23:24  27:2  27:8  27:10  27:13  28:3  31:19  31:21  33:20  36:18  36:19  38:11  39:15  39:18  40:7  40:19  41:8  41:12  43:22  44:8  45:9  48:19  50:14  56:13  56:19  56:20  56:21  57:18  57:23  58:4  59:11  59:20  61:15  62:1  62:16  63:8  66:19  67:13  68:15  69:14  69:18  71:14  72:8  73:20  74:1  74:4  74:8  74:12  75:3  75:5  75:5  75:9  76:13  79:10  81:9  83:19  83:22  84:13  84:23  90:19  91:14  95:5  96:16  97:10  97:20  101:1  101:11  104:25  105:10  106:9  108:18  108:19  109:6  109:9  115:8  115:8  117:8  122:20  124:13  125:2  125:20  126:23  127:11  127:24  128:4  128:7  128:11  129:18  131:2  131:5  132:9  132:19  134:5  134:20  135:16  136:11  136:13  136:23  138:21  138:22  138:23  138:24  138:25  139:13  139:22  140:1  140:5  140:7  140:24  141:15  142:12  142:12  143:15  145:20  145:24  151:8  156:20  157:3  160:17  166:10  171:4  171:22  172:13  173:1  174:10  174:25  174:25  177:21  187:3  189:21  190:14  191:1  196:7  197:2  199:14  200:21  201:2  201:3  201:8  203:13  204:19  208:16  209:5  219:19
**knowing**(6) 16:24  45:4
**knowingly**(2) 39:7  124:15
**knowledge**(2) 71:24  199:11
**known**(4) 90:16  122:15  187:21  194:5
**knows**(11) 16:10  53:19  76:7  81:9  103:23  108:20  112:15  112:16  147:19  148:13  185:
**korpus**(1) 5:33
**kramer**(1) 8:24
**kristina**(1) 4:16
**kurth**(2) 5:44  20:4
**label**(1) 159:21
**labor**(17) 19:8  38:6  48:7  47:23  48:9  48:18  49:6  50:13  51:4  61:6  61:13  61:15  158:9  160:7  165:24  166:25  167:4
**labor's**(8) 44:9  45:1  45:4  46:8  47:13  48:8  50:5  50:11
**labyrinth**(1) 58:7
**lack**(4) 80:10  80:25  101:5  216:17
**laid**(1) 32:3

**landis**(2) 2:4  2:5
**language**(34) 22:4  40:13  44:12  45:6  45:15  45:23  46:2  46:3  46:7  46:21  87:3  87:21  88:3  89:9  89:24  91:10  91:10  92:19  93:20  94:17  95:17  109:23  119:19  122:2  129:23  151:14  151:14  164:11  176:16  177:9  177:11  177:12  177:16  212:1
**lantry**(81) 1:27  11:4  11:4  11:11  12:4  15:12  15:23  17:9  18:23  19:6  20:22  21:3  22:13  28:2  28:12  34:1  34:10  44:2  45:24  46:6  46:10  46:14  46:18  46:21  46:24  47:6  47:17  47:19  50:2  51:15  51:19  56:18  57:1  62:16  62:20  63:2  69:18  78:5  79:14  79:20  80:7  88:7  96:3  98:2  98:9  98:24  101:10  101:15  107:11  109:4  115:14  115:21  122:6  130:11  130:14  134:25  135:3  143:6  143:21  145:11  157:7  157:14  157:23  159:22  160:2  161:15  161:18  162:6  169:24  170:16  170:21  171:6  171:20  172:1  172:9  172:13  173:2  173:11  189:16  191:10  220:9
**lantry's**(2) 70:3  97:20
**large**(6) 119:1  119:12  181:11  194:13  195:14  208:8
**largely**(2) 144:23  218:9
**larger**(1) 158:8
**largest**(3) 70:19  70:25  147:14
**lashko**(1) 7:49
**last**(38) 11:17  16:19  17:4  21:4  34:20  34:22  35:16  36:18  47:20  47:20  48:6  54:22  95:17  101:4  109:18  114:20  115:15  115:16  121:2  129:23  143:25  144:5  158:2  159:23  173:19  177:12  190:12  190:18  204:12  211:25  215:10
**late**(7) 62:23  110:22  123:11  158:2  187:20  218:19  197:15
**later**(10) 30:6  52:17  53:23  83:8  99:19  157:16  174:12  174:15  182:4  182:4
**latest**(3) 54:24  115:7  115:9
**latham**(1) 10:22
**latter**(1) 127:22
**laughter**(20) 34:8  78:17  92:9  97:25  98:7  107:4  112:24  114:8  117:23  118:10  118:16  126:6  126:9  127:16  139:6  153:13  154:23  171:24  211:9  211:16
**lauria**(1) 5:17
**law**(11) 3:17  10:12
**law**(11) 5:22  49:17  62:25  92:11  115:20  130:22  144:4  159:14  159:16  173:9  177:23  215:6
**lawsuit**(2) 76:14  124:18
**lawsuits**(2) 124:19  182:16
**lawyers**(3) 16:25  18:2  191:1
**lay**(3) 12:18  13:19  143:12
**layton**(1) 2:43
**lazard**(2) 58:15  58:21
**lbo**(19) 43:23  53:20  59:5  103:6  103:25  146:13  146:16  146:19  147:13  151:12  159:11  176:16  177:22  184:21  184:24  186:  200:19  200:24  207:16
**lbo-related**(5) 25:12  64:10  99:21  100:2  118:25
**lead**(2) 24:21  170:8
**leading**(2) 83:12  184:2
**leads**(2) 63:22  85:23
**least**(23) 12:6  27:18  35:8  36:18  43:15  44:9  57:17  59:17  74:18  79:24  83:6  85:5  97:12  131:16  131:23  144:17  195:14  195:  198:1  198:11  198:14  199:4  199:10
**leave**(4) 13:12  89:20  100:17  175:15
**leaves**(4) 32:17  85:23  154:1  217:21

**leaving**(1) 44:6
**led**(3) 104:25  147:15  187:23
**lederman**(1) 8:13
**lee**(1) 8:49
**left**(10) 75:15  154:21  158:4  158:5  168:3  178:8  178:19  198:2  204:20  207:10
**left-hand**(1) 115:12
**legal**(12) 43:7  43:10  58:17  58:17  62:3  144:13  144:21  152:1  152:22  159:14  165:1  208:3
**legally**(1) 137:15
**legitimacies**(1) 57:11
**legitimate**(2) 74:3  129:19
**lemay**(44) 2:15  17:7  17:7  26:21  26:23  26:23  28:22  28:23  29:12  31:15  31:17  31:1  51:3  51:6  51:6  101:19  101:19  105:24  106:1  106:4  106:24  107:2  107:7  107:24  120:10  122:12  122:12  125:18  126:7  126:1  126:14  126:22  144:4  142:20  142:22  142:22  145:2  145:2  149:11  149:16  150:7  150:14  155:2  155:21
**lemay's**(2) 20:13  108:2
**lend**(1) 129:4
**lender**(33) 37:12  38:6  43:24  52:10  52:15  53:12  53:18  61:7  65:17  66:25  70:14  70:18  71:3  71:4  72:17  87:12  92:20  92:25  93:8  103:7  106:5  108:10  117:15  117:15  117:17  117:17  118:4  118:4  126:12  129:3  129:16  151:7  206:23
**lender's**(3) 13:25  37:7  93:6
**lenders**(96) 43:30  6:11  13:15  28:9  30:19  31:1  34:13  34:16  34:19  36:4  36:17  37:17  37:21  38:4  38:9  38:13  39:17  39:25  41:5  44:3  51:2  51:21  52:8  52:18  52:20  52:23  52:24  53:4  53:18  53:22  54:12  54:17  54:23  62:18  63:14  63:18  63:25  64:2  64:2  64:23  65:6  65:16  65:18  66:2  67:11  69:16  70:22  71:15  71:21  74:3  77:15  78:14  79:16  80:4  80:11  81:5  82:8  82:16  83:5  83:9  85:25  86:14  87:9  90:16  91:12  92:13  92:15  94:15  95:24  96:8  100:18  100:25  101:17  112:5  112:19  113:19  120:10  133:20  133:20  135:5  146:13  146:16  146:19  147:13  151:1  156:6  159:5  160:1  161:22  166:14  168:17  174:3  184:21  184:24  188:12
**lending**(1) 131:21
**length**(1) 207:25
**lengthy**(2) 44:4  57:16
**leonard**(1) 1:36
**lerman**(1) 4:22
**less**(11) 52:25  53:2  67:18  67:20  71:10  82:5  82:10  104:3  121:4  164:20  192:5
**let**(40) 12:16  12:18  15:19  24:9  19:25  23:8  44:8  44:17  51:22  67:16  73:23  94:1  96:8  101:15  105:1  105:2  105:9  107:15  111:13  125:15  128:4  143:12  143:16  146:8  146:20  147:21  149:8  156:20  157:5  158:16  163:11  164:18  166:9  170:10  171:3  173:20  183:14  189:11  194:4  205:4
**let's**(19) 34:9  36:21  45:22  50:21  56:25  58:9  73:8  73:15  74:4  75:20  76:1  79:12  95:25  112:3  112:15  112:17  160:19  164:4  189:4
**letter**(8) 17:13  145:6  146:9  151:11  153:9  169:17  169:17  205:21
**letters**(1) 136:14
**letting**(1) 201:21
**level**(35) 5:25  17:13  17:20  17:21  31:23  67:25  73:1  74:11  74:22  75:16  75:17  75:2  77:8  102:24  103:1  140:4  145:14  149:4  149:17  181:25  182:2  182:3  207:4

**leverage**(3) 93:8  184:14  196:23
**leveraged**(1) 207:24
**levin**(1) 8:24
**levy**(1) 7:47
**lewis**(1) 10:15
**lexicon**(1) 76:6
**lexington**(3) 2:39  3:12  5:46
**liabilities**(1) 49:20
**liability**(1) 39:6
**liable**(1) 45:11
**license**(1) 150:14
**liebentritt**(1) 7:5
**lies**(1) 142:17
**life**(3) 51:10  126:4  154:17
**lift**(1) 204:24
**lifted**(1) 176:17
**light**(8) 30:11  30:11  103:7  126:21  130:15  154:21  182:8  213:8
**like**(73) 13:20  14:21  14:21  15:18  15:21  17:23  18:3  28:3  29:12  31:18  32:6  35:9  36:13  36:13  38:12  38:19  44:5  58:22  59:17  75:3  85:1  86:19  86:19  91:7  94:19  96:4  98:13  104:20  106:24  110:8  112:10  112:25  126:18  126:19  131:15  135:7  136:24  136:24  138:24  140:20  140:22  141:2  141:19  145:19  146:23  147:9  148:22  151:11  156:18  157:5  157:6  166:20  170:18  172:17  173:6  173:7  176:5  178:12  179:9  182:14  186:9  189:18  193:7  197:20  200:13  201:2  201:3  205:4  211:6  211:22  212:8  212:9  219:15
**likely**(11) 27:14  31:4  31:7  59:21  64:14  64:14  76:9  113:17  141:7  171:6  214:20
**likes**(1) 95:22
**limitation**(3) 14:15  198:21  198:24
**limitations**(8) 127:9  127:17  198:24  218:7  218:12  218:19  219:3  219:5
**limited**(16) 37:1  39:4  42:8  74:19  87:16  141:15  151:21  171:14  171:16  176:8  177:1  177:24  196:9  197:21  215:2  215:13
**limiting**(1) 43:11
**limits**(1) 102:18
**line**(13) 67:8  75:12  75:15  88:3  88:4  96:17  131:2  131:7  132:1  132:1  163:12  163:12  190:23
**lines**(3) 46:10  47:20  182:20
**lineup**(1) 21:9
**liquidated**(1) 204:11
**liquidation**(4) 188:20  195:11  195:18  204:10
**list**(1) 52:9
**listed**(1) 52:9
**listen**(1) 120:4
**listening**(1) 201:19
**listing**(1) 121:16
**literally**(1) 147:19
**litigant**(1) 147:19
**litigate**(2) 132:24  144:15
**litigated**(1) 31:8
**litigation**(72) 19:9  24:17  26:15  27:13  32:7  41:7  41:7  42:1  42:3  42:8  43:14  44:25  48:3  48:24  50:8  53:15  53:21  57:16  59:6  61:10  69:13  86:3  90:3  91:3  93:11  93:18  93:18  93:25  94:1  94:4  94:6  94:8  95:12  96:20  97:3  98:20  103:15  103:17  103:25  120:6  123:1  123:10  123:10  123:11  128:22  132:19  132:22  132:24  144:15  159:12  160:16  166:3  178:6  178:10  185:1  185:3  185:14  186:18  192:1  195:1  195:18  195:22  196:23  197:1  202:2  202:3  202:16  204:25  205:16  210:7
**litigations**(2) 93:7  93:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**little**(24) 14:1 16:21 18:13 23:2 23:3 35:1 44:15 75:15 85:7 99:19 112:10 112:12 146:7 146:17 147:25 155:17 166:2 169:16 170:2 170:7 189:5 206:20 207:13 213:17

**live**(2) 88:1 134:11
**llc**(3) 6:33 7:41 9:7
**llp**(24) 1:25 2:13 2:26 3:16 3:25 4:37 4:45 5:4 5:14 5:30 5:38 5:44 6:4 6:19 6:26 6:33 6:40 7:24 7:41 7:46 8:12 8:18 9:34 10:15
**loan**(22) 37:12 56:7 65:12 65:15 70:17 70:20 72:9 72:14 72:19 72:20 74:13 76:4 76:4 76:16 76:17 76:22 77:14 90:16 90:25 91:11 100:25 110:14

**loaned**(1) 43:2
**loans**(6) 64:11 64:13 64:21 64:21 67:8 78:25

**lock**(4) 58:9 99:5 99:11 101:11
**lockbox**(1) 3:47
**locked**(1) 165:18
**lodge**(1) 138:12
**logic**(1) 159:7
**logics**(1) 165:11
**long**(20) 14:10 14:10 16:23 16:25 18:9 23:7 28:18 83:1 102:16 155:8 155:12 158:14 171:4 171:5 175:5 195:22 198:9 203:9 211:18 213:8

**longer**(6) 13:1 14:1 106:15 120:7 128:22 190:17

**look**(19) 15:18 16:25 81:22 82:24 87:20 99:7 108:22 110:8 110:9 110:25 111:11 111:13 128:3 128:21 140:10 173:1 176:9 205:8 211:10
**looked**(11) 16:6 32:14 32:15 85:13 85:16 96:4 126:20 167:17 204:16 205:23 207:21

**looking**(15) 22:17 33:13 44:20 45:7 47:7 89:5 89:23 90:18 115:11 129:4 133:17 152:22 176:10 195:24 195:25

**looks**(2) 110:7 140:22
**los**(1) 4:42
**losing**(1) 189:8
**losquadro**(2) 9:27 9:28
**loss**(1) 94:25
**lost**(4) 145:19 184:4 184:9 196:18
**lot**(28) 17:1 18:22 28:16 30:6 36:15 52:17 54:8 57:12 58:10 82:7 87:11 98:21 103:10 104:16 106:7 113:25 124:19 124:19 125:2 125:25 126:22 132:2 178:19 188:20 190:20 200:17 200:24 207:2

**lots**(2) 27:17 206:1
**lou**(1) 62:8
**love**(1) 139:14
**loved**(1) 28:6
**low**(4) 82:4 93:16 119:1 148:1
**lower**(1) 153:22
**lowered**(1) 205:15
**lucy**(1) 9:52
**ludicrous**(1) 121:19
**ludwig**(1) 7:10
**lugano**(1) 1:44
**lunch**(4) 12:24 91:19 92:8 100:23
**lurking**(1) 189:24
**lynch**(1) 3:16
**lyondell**(1) 198:19
**lyondellbasell**(1) 195:13
**machine**(1) 62:9
**macquarie**(1) 9:37

**made**(37) 23:9 32:10 32:12 34:20 36:5 38:23 38:24 39:2 39:3 39:6 47:2 52:4 73:3 74:15 78:1 81:12 86:8 97:16 105:10 105:10 105:21 123:5 123:6 130:19 130:24 147:1 151:6 163:16 175:12 187:14 193:5 194:2 200:16 203:9 206:11 210:5 216:10

**madison**(1) 6:28
**madlyn**(1) 3:26
**magnitude**(1) 193:12
**main**(6) 66:21 79:6 102:12 112:10 132:7 174:6

**mainly**(2) 32:14 78:14
**maintaining**(2) 185:13 185:15
**major**(6) 93:17 93:25 94:4 184:25 200:13 201:14

**majority**(4) 108:25 120:25 121:4 122:2
**make**(75) 11:6 14:21 21:23 27:6 29:24 29:25 48:17 48:22 49:6 49:9 49:9 50:2 50:12 53:9 54:6 60:5 60:15 60:23 69:25 75:5 76:3 77:16 78:1 82:11 83:11 85:11 90:12 101:12 101:12 103:23 105:14 108:4 108:15 113:20 113:25 118:20 119:13 120:23:5 123:8 124:10 126:22 127:21 127:21 133:7 139:19 141:7 149:15 150:24 151:4 154:6 154:7 157:16 168:8 168:10 169:25 170:4 170:14 178:3 183:12 187:12 188:2 188:19 191:4 192:10 193:20 200:6 205:4 206:24 210:20 210:21 211:3 212:7 217:3 217:13 219:20

**makers**(1) 77:6
**makes**(12) 33:24 44:23 70:6 76:25 78:23 81:6 81:7 89:18 105:8 105:8 105:9 156:8
**making**(12) 41:8 97:10 106:14 106:25 119:10 131:8 131:8 131:12 150:9 161:8 167:22 205:10

**malign**(1) 24:24
**manageable**(1) 136:20
**management**(20) 4:5 7:28 8:32 8:40 8:50 9:22 9:27 9:52 10:4 10:12 28:25 33:7 35:13 151:19 183:17 195:17 195:18 195:2 196:11 212:6

**manager**(7) 17:19 18:6 18:12 20:14 106:17 122:19 128:5

**mandating**(1) 178:25
**mandatory**(1) 178:23
**manges**(1) 8:12
**manner**(4) 147:22 198:3 198:15 198:25
**many**(19) 14:11 16:15 25:12 36:3 58:5 80:7 87:25 104:9 133:2 158:4 158:13 160:8 176:13 183:18 189:25 200:21 205:2 213:6 218:10

**marc**(2) 2:19 2:21
**march**(2) 172:16 191:16
**marcus**(1) 145:10
**marginally**(2) 134:14 154:3
**mark**(2) 7:29 11:18
**market**(10) 1:12 2:8 3:20 5:8 6:7 6:13 6:35 120:19 129:11 129:13

**marsal**(2) 9:11 179:7
**martin**(1) 3:39
**masks**(1) 153:11
**match**(1) 100:21
**material**(4) 77:8 98:25 129:2 218:11
**materiality**(3) 193:11 203:23 205:16
**materialize**(1) 51:25
**materialized**(1) 51:24
**materials**(2) 181:4 203:20

**matter**(17) 23:20 27:22 46:4 69:13 79:21 94:9 102:14 113:2 136:21 165:17 173:18 202:7 207:17 215:14 216:5 217:25 220:15

**matters**(1) 63:19
**matthew**(4) 5:1 9:49 10:26 10:26
**matured**(1) 50:8
**mauceri**(1) 50:16
**maximize**(4) 188:11 188:15 195:25 196:17
**maximizes**(1) 188:12
**maximizing**(1) 204:7
**maximum**(1) 137:6
**may**(98) 13:1 14:1 14:17 15:2 17:4 19:12 22:6 26:21 26:22 31:15 31:16 36:25 37:3 37:5 37:16 39:14 42:25 43:6 43:18 44:25 45:1 50:10 50:11 50:16 51:3 54:18 54:24 55:11 56:2 63:8 63:10 64:4 69:19 71:10 71:19 82:4 84:12 92:23 94:8 95:2 107:6 119:4 119:22 120:4 120:6 120:7 120:12 120:13 120:18 121:15 121:17 121:18 121:21 121:24 122:10 122:11 126:19 127:11 128:12 128:21 128:22 128:25 129:1 129:9 129:15 133:7 135:25 142:20 148:21 149:6 149:13 150:9 151:9 155:14 155:17 156:25 161:23 163:20 164:1 165:16 165:2 170:4 170:17 175:3 181:23 189:20 191:16 200:12 206:19 208:4 208:5 208:23 210:5 212:12 217:8 217:9 217:24 219:25

**maybe**(19) 12:7 14:20 16:20 18:1 37:18 52:11 54:22 70:6 75:4 75:13 86:5 91:16 101:12 102:13 112:14 166:1 167:15 199:2 209:5

**mayer**(2) 4:47 8:18
**mccarter**(1) 4:45
**mccolm**(1) 7:50
**mccormack**(1) 2:18
**mcdaniel**(1) 5:23
**mcneill**(1) 3:18
**mean**(18) 30:9 61:23 75:8 97:15 104:21 106:9 108:5 128:2 129:17 132:10 132:13 132:14 140:21 146:25 159:21 160:8 209:8 209:18
**meaning**(2) 41:21 116:23
**meaningless**(1) 181:13
**means**(5) 48:10 61:23 61:25 75:5 171:22
**meant**(6) 101:22 124:17 143:10 143:10 191:7 211:19

**meantime**(1) 120:8
**measured**(2) 32:21 105:18
**mechanism**(2) 50:7 152:20
**mediation**(10) 73:5 96:11 96:12 108:11 147:16 148:4 153:21 155:14 155:14 155:2

**mediator**(4) 147:16 147:22 148:3 156:1
**mediators**(2) 147:17 147:20
**meet**(6) 21:4 22:14 87:25 175:25 183:4 214:5

**meeting**(5) 127:9 147:19 181:3 190:25 192:22

**meetings**(5) 148:5 148:6 179:10 181:18 192:25

**meisel**(1) 1:35
**members**(10) 120:24 129:25 130:4 146:1 146:15 149:21 149:25 149:25 154:7 154:8 154:9 154:14 155:5 194:11 194:15 199:9

**mention**(4) 27:2 91:18 140:10 166:14
**mentioned**(6) 103:18 133:14 159:20 189:10 199:8 205:9

**menu**(1) 163:8
**meredith**(1) 4:23
**mergers**(1) 58:6
**meridian**(1) 5:40

**merit**(2) 205:2 207:8
**merits**(1) 35:9
**merrill**(1) 3:16
**mester**(1) 4:39
**met**(4) 113:6 136:3 136:5 183:2
**michael**(2) 2:37 8:19
**microcosm**(1) 183:21
**microphone**(1) 101:16
**mid**(1) 190:11
**mid-october**(1) 201:1
**middle**(2) 116:2 116:3
**might**(32) 17:9 19:19 21:23 40:7 40:14 44:21 45:4 45:7 45:8 49:1 49:20 49:21 50:7 50:14 52:4 59:6 62:4 69:18 93:24 125:21 129:14 145:15 148:19 172:16 178:2 192:14 194:19 194:22 201:23 210:11 210:14 211:10 211:18

**miles**(1) 7:12
**millen**(2) 19:2 19:5
**miller**(1) 9:4
**million**(48) 20:16 20:16 24:13 54:1 56:10 64:23 64:24 64:24 80:20 81:14 81:15 81:16 81:24 81:25 81:25 82:5 82:9 95:8 122:23 135:20 135:21 136:21 136:21 137:8 138:2 138:18 140:1 140:3 140:14 140:15 141:12 163:1 175:22 182:13 184:8 192:4 193:5 193:7 193:14 193:15 193:17 193:20 194:2 194:19 194:22 201:23 206:10 207:22

**millions**(7) 68:19 68:19 77:10 120:8 132:21 132:23 194:13

**mind**(2) 18:18 101:6
**mindbender**(1) 59:9
**minding**(1) 154:2
**minimal**(1) 170:3
**minimum**(2) 122:25 163:19
**minkove**(1) 9:31
**minor**(1) 27:16
**minute**(4) 46:5 50:22 149:11 149:13 188:2 218:3

**minutes**(9) 13:5 63:21 91:25 135:7 157:7 172:3 172:6 183:11 203:7

**mirror**(1) 35:7
**mirza**(1) 8:13
**mischaracterization**(1) 85:8
**miscounted**(1) 159:22
**misimpression**(1) 97:21
**mislead**(1) 24:18
**misleading**(4) 25:6 25:17 86:24 113:21
**misnomers**(1) 76:6
**misread**(1) 210:22
**missed**(3) 63:9 160:18 164:14
**missing**(2) 96:4 212:7
**misspoke**(1) 113:12
**misstated**(1) 215:19
**misstatement**(1) 25:14
**mistake**(3) 187:12 187:14 191:25
**mistaken**(1) 65:24
**mistakes**(1) 12:9
**mixed**(1) 148:16
**mobile**(1) 21:25
**mock**(1) 15:14
**model**(2) 59:14 59:15
**moderated**(1) 164:9
**modification**(1) 154:6
**modified**(1) 168:9
**modify**(1) 95:2
**moment**(14) 13:4 15:10 17:9 47:15 74:19 102:25 147:3 173:20 186:12 187:22 189:4 205:9 210:9 217:24

**monday**(4) 11:1 170:24 173:13 219:14

| Word | Page:Line |
|---|---|
| **money**(12) 43:2 62:6 65:11 66:11 95:10 96:16 108:7 124:19 124:20 129:4 141:15 146:5 | |
| **month**(4) 190:12 190:19 191:15 191:16 | |
| **months**(7) 25:9 83:2 83:6 83:8 84:7 191:16 200:10 | |
| **more**(84) 11:19 11:24 11:24 14:21 15:14 16:2 16:3 18:8 19:7 23:3 24:4 29:5 30:6 30:25 31:4 31:7 52:24 53:1 54:22 57:2 57:15 65:17 66:23 67:2 67:18 69:25 74:7 75:17 75:18 79:25 82:7 82:10 84:5 91:24 98:15 98:21 99:14 100:16 101:17 108:23 110:3 113:17 114:22 114:22 120:1 123:18 125:22 126:3 130:16 131:14 132:2 135:7 136:5 136:6 136:20 139:10 141:19 146:25 152:25 156:6 158:3 158:7 158:11 158:13 160:8 160:21 161:5 166:2 172:2 172:8 172:10 181:12 182:1 190:19 195:16 197:10 197:10 203:7 204:5 204:14 204:14 208:2 218:14 | |
| **moreover**(2) 116:5 120:16 | |
| **morgan**(18) 2:34 5:38 8:12 10:15 89:22 89:25 90:2 90:9 100:19 133:10 134:22 151:3 162:6 173:19 174:2 174:22 176:8 219:7 | |
| **morning**(24) 11:3 11:4 17:7 22:8 27:3 28:24 33:5 34:22 37:1 72:7 72:22 78:3 78:5 85:7 86:9 87:1 91:7 96:5 97:19 102:10 106:17 122:19 144:6 158:2 | |
| **morris**(4) 6:4 6:11 8:27 22:9 | |
| **moss**(1) 9:34 | |
| **most**(25) 14:11 16:10 28:6 32:15 35:24 47:19 59:3 59:12 60:14 67:9 70:6 70:15 91:25 102:9 105:12 108:9 116:14 125:6 125:17 128:1 128:13 131:6 145:5 146:15 214:20 | |
| **mostly**(1) 63:18 | |
| **motion**(54) 144:8 144:11 144:25 152:11 152:17 157:3 157:17 171:4 171:16 173:23 174:2 174:9 174:15 174:17 175:15 175:23 175:24 176:6 176:13 177:14 177:22 178:8 178:11 178:13 179:20 179:23 180:9 180:1 183:19 183:24 185:23 186:1 186:5 195:3 203:4 209:5 212:24 212:25 213:6 213:9 213:19 214:3 215:1 215:5 215:7 216:14 216:19 216:21 217:6 217:22 218:20 219:2 219:14 219:19 | |
| **motions**(5) 171:12 175:12 175:13 184:2 186:5 | |
| **motivated**(1) 170:17 | |
| **motivation**(5) 67:13 67:15 71:20 73:16 196:18 | |
| **motivations**(1) 67:12 | |
| **motives**(1) 77:23 | |
| **mouth**(1) 66:12 | |
| **move**(5) 13:14 13:16 34:12 62:17 96:6 112:7 143:18 173:16 | |
| **moved**(1) 188:6 | |
| **movie**(1) 153:11 | |
| **moving**(5) 12:1 84:16 98:23 126:1 134:12 31:18 51:8 57:24 60:17 65:5 66:23 66:23 75:21 83:6 91:4 95:7 96:16 98:13 107:2 112:10 121:4 128:2 135:16 137:9 146:13 153:22 157:5 171:9 173:16 178:16 190:19 200:18 220:6 | |
| **multiple**(1) 78:24 | |
| **must**(4) 39:25 66:25 82:23 137:18 | |
| **myers**(1) 7:15 | |
| **myself**(5) 17:5 97:12 127:7 146:4 163:20 | |
| **mystified**(1) 61:17 | |
| **n.w**(1) 4:25 | |
| **name**(3) 40:4 40:5 218:10 | |
| **named**(1) 219:9 | |
| **namely**(3) 32:13 124:23 162:15 | |
| **names**(6) 44:20 146:2 146:5 194:4 194:4 199:11 | |
| **narrow**(1) 219:23 | |
| **narrowed**(2) 45:17 219:20 | |
| **natural**(1) 184:21 | |
| **naturally**(1) 185:1 | |
| **nature**(10) 21:21 35:15 45:2 47:14 81:18 114:23 126:1 167:1 188:18 208:4 | |
| **nearly**(4) 75:4 130:11 135:1 186:1 | |
| **necessarily**(4) 35:9 49:3 95:14 214:14 | |
| **necessary**(9) 26:17 99:14 145:1 170:14 203:4 213:12 214:10 216:16 216:17 | |
| **necessity**(1) 133:24 | |
| **neck**(1) 73:6 | |
| **need**(57) 11:24 12:25 17:16 21:24 23:3 27:8 27:13 42:18 49:23 50:9 50:10 50:11 50:14 52:4 53:23 54:20 57:21 62:12 66:11 67:5 69:14 70:25 77:25 79:8 79:10 82:11 89:19 90:12 95:15 100:12 100:15 101:7 105:14 120:4 126:20 127:20 134:21 134:2 135:16 140:5 140:5 144:12 144:21 148:25 152:24 161:12 162:22 165:17 168:25 169:14 171:7 171:10 172:1 172:16 173:24 202:9 213:7 | |
| **needed**(5) 34:3 50:4 50:6 114:24 218:6 | |
| **needle**(1) 207:14 | |
| **needs**(9) 17:17 18:15 27:10 38:25 94:10 107:17 159:6 161:20 208:19 | |
| **neel**(1) 9:43 | |
| **negative**(1) 112:9 | |
| **negotiate**(1) 215:23 | |
| **negotiated**(3) 22:5 176:14 177:22 | |
| **negotiating**(1) 155:9 | |
| **negotiation**(2) 32:23 96:13 | |
| **negotiations**(4) 17:25 147:13 147:15 148:8 | |
| **neil**(3) 9:27 9:28 19:9 | |
| **neill**(4) 42:1 43:14 44:24 50:8 | |
| **neil's**(3) 106:25 112:8 112:8 | |
| **nettlesome**(1) 29:4 | |
| **neutral**(1) 123:17 | |
| **never**(13) 31:22 32:10 82:15 82:20 110:2 123:6 123:17 124:10 126:16 138:25 189:9 194:21 | |
| **nevertheless**(2) 50:10 65:22 | |
| **new**(24) 2:23 2:40 3:13 3:28 3:41 4:19 4:50 5:19 5:35 5:47 6:30 88:3 89:9 89:24 92:18 110:8 113:25 116:15 120:12 120:19 133:11 150:21 161:6 191:19 | |
| **newly**(1) 92:14 | |
| **news**(3) 11:11 34:1 63:3 | |
| **next**(17) 42:3 65:8 66:18 75:17 75:21 79:16 84:25 85:6 89:21 92:13 94:16 116:22 121:18 170:24 194:24 219:1 219:1 | |
| **nice**(2) 126:25 169:21 | |
| **nichols**(1) 6:11 | |
| **nickel**(1) 192:6 | |
| **night**(16) 11:13 34:22 46:19 62:23 88:9 91:9 95:17 114:6 115:15 115:16 143:25 144:5 158:22 170:19 172:13 172:24 | |
| **nilly**(1) 146:23 | |
| **nine**(8) 159:23 160:5 184:5 187:2 187:14 193:18 194:24 219:2 | |
| **ninety**(1) 193:6 | |
| **ninety-day**(5) 176:11 194:2 194:14 202:12 213:16 | |
| **nobody**(4) 29:7 104:19 152:22 210:2 | |
| **non**(2) 39:19 45:7 | |
| **non-contractua**(1) 47:25 | |
| **non-debtor**(1) 48:20 | |
| **non-debtors**(1) 48:20 | |
| **non-fiduciaries**(2) 44:21 45:5 | |
| **non-lbo**(1) 145:8 | |
| **non-settling**(1) 40:25 | |
| **non-voting**(1) 159:16 | |
| **nor**(1) 51:24 51:25 68:20 159:20 | |
| **nor**(1) 211:4 | |
| **normal**(1) 207:22 | |
| **norman**(1) 1:37 | |
| **north**(7) 1:38 2:46 3:20 5:8 5:24 6:7 6:13 21:19 24:3 24:15 24:20 25:17 26:2 26:6 26:16 27:12 27:21 27:22 28:13 28:13 28:14 28:16 29:13 30:7 30:8 31:6 32:15 32:18 32:18 34:9 34:16 34:20 35:9 35:20 35:20 35:24 37:18 37:25 38:15 39:9 40:7 40:14 40:20 41:20 42:8 44:12 45:1 46:25 47:8 47:21 48:2 50:13 50:14 54:24 55:9 55:11 56:14 56:15 56:21 61:2 63:19 64:9 65:5 65:9 65:15 65:19 65:23 66:5 66:8 66:10 66:14 66:17 67:25 69:7 70:10 71:24 72:16 73:25 74:6 74:23 74:24 74:25 76:9 76:11 77:19 77:20 77:24 78:25 79:14 79:18 80:5 80:6 80:25 82:1 82:25 84:1 84:8 84:10 84:16 86:16 87:15 87:22 88:4 89:20 90:13 90:17 92:20 93:25 94:8 94:25 95:16 96:15 96:17 97:3 97:18 100:10 100:13 102:7 102:15 103:9 103:22 104:4 104:16 105:16 105:21 106:7 109:10 109:24 110:3 110:4 112:7 112:12 112:15 112:25 112:25 113:21 113:25 114:14 115:3 115:5 116:21 119:15 119:10 120:7 120:9 121:3 121:15 122:24 123:13 123:15 123:16 123:19 124:14 124:15 125:18 126:1 127:4 127:25 127:8 128:15 129:10 131:7 131:8 134:12 138:1 139:15 140:8 143:15 144:25 146:1 146:3 146:17 147:18 147:18 147:20 148:6 148:6 148:12 148:14 148:15 149:9 149:24 150:9 151:13 153:21 154:9 154:24 155:15 156:3 156:11 156:25 157:22 158:4 158:11 160:20 162:1 163:12 164:1 164:15 164:20 165:3 165:9 165:17 165:18 165:22 166:14 166:19 166:20 166:21 166:23 167:3 167:5 167:10 169:10 170:4 170:24 173:23 174:3 174:10 175:3 177:3 177:14 177:25 178:8 178:20 179:17 179:25 180:2 181:21 183:2 183:24 184:1 185:18 186:1 186:4 187:15 187:19 187:24 188:9 188:20 188:25 190:12 191:15 191:24 191:25 192:6 195:4 196:14 196:12 196:22 196:25 198:2 198:6 200:1 200:3 200:9 200:23 202:5 202:25 202:25 203:21 204:9 205:25 206:16 206:19 206:21 208:5 209:12 209:12 210:7 210:11 210:11 210:21 211:3 211:23 212:7 214:21 214:21 215:8 215:15 216:10 216:11 216:17 218:2 219:20 | |
| **notably**(1) 108:9 | |
| **note**(9) 43:1 43:2 43:5 43:8 62:4 108:18 123:16 160:14 183:8 | |
| **noted**(4) 130:23 154:18 197:23 197:25 | |
| **noteholder**(25) 37:10 52:1 52:3 52:3 70:4 71:4 79:21 80:2 116:3 116:6 116:11 116:12 116:13 117:1 117:4 117:12 117:13 120:23 121:18 121:24 143:22 144:1 150:2 151:20 160:2 | |
| **noteholders**(27) 13:24 13:25 35:5 64:1 69:21 70:1 81:13 81:16 81:21 81:25 85:24 86:2 89:25 90:9 91:13 95:15 116:18 116:24 118:3 133:21 181:24 185:1 185:19 187:16 188:13 188:16 201:15 | |
| **notes**(7) 67:6 72:3 90:1 90:1 90:5 184:7 184:7 | |
| **nothing**(5) 33:14 36:24 80:23 147:21 216:6 | |
| **notice**(3) 154:21 176:23 216:6 | |
| **noting**(1) 205:5 | |
| **notion**(2) 203:21 208:9 | |
| **notions**(1) 29:19 | |
| **notwithstanding**(5) 24:5 103:3 143:13 203:8 213:24 | |
| **november**(10) 1:15 11:1 54:24 174:9 174:12 174:15 174:16 192:22 205:22 205:22 | |
| **novod**(5) 3:38 197:14 197:16 203:11 | |
| **now**(85) 11:16 13:3 15:3 15:6 19:17 21:18 22:7 23:10 38:13 38:20 39:18 41:12 44:17 45:23 46:16 56:12 56:20 56:24 56:25 58:9 61:19 61:22 68:9 70:5 82:25 83:2 86:16 88:16 89:18 91:18 91:21 93:19 94:2 94:6 94:14 95:5 95:20 95:20 97:24 100:8 103:3 104:12 104:17 107:13 109:9 109:13 111:5 114:11 119:22 130:23 131:16 134:11 136:3 137:23 139:9 139:15 144:7 144:10 144:22 149:24 153:22 156:17 156:18 157:5 157:16 161:13 164:13 165:18 166:1 166:15 173:14 174:10 182:23 185:6 185:14 187:1 193:18 193:18 194:9 195:20 196:4 201:6 204:18 208:22 210:11 | |
| **nowhere**(1) 53:4 | |
| **number**(35) 11:14 12:5 34:13 42:22 46:17 51:10 52:10 55:8 61:14 63:12 70:3 96:7 96:17 99:18 136:7 136:19 138:18 143:8 149:20 149:21 150:22 158:17 158:20 158:22 159:7 159:10 159:14 159:23 162:6 189:21 191:11 193:7 198:12 214:19 | |
| **numbers**(4) 14:11 52:22 140:15 193:14 | |
| **numerically**(1) 203:16 | |
| **numerous**(2) 181:18 191:1 | |
| **nutshell**(2) 33:14 124:25 | |
| **o'clock**(3) 157:8 173:9 173:13 219:16 | |
| **o'melveny**(1) 7:15 | |
| **oaktree**(17) 8:49 37:3 63:14 66:22 67:6 68:2 68:20 70:18 71:18 72:10 78:21 87:6 119:21 122:1 134:22 153:20 159:1 | |
| **oaktree/angelo**(2) 66:14 66:16 | |
| **object**(7) 50:10 61:24 75:18 119:7 162:11 174:12 177:3 | |
| **objectants**(1) 202:24 | |
| **objected**(2) 50:17 145:3 | |
| **objecting**(3) 61:24 151:13 174:16 | |
| **objection**(69) 19:3 20:6 22:7 22:11 35:25 36:12 37:20 38:6 39:2 42:23 50:5 50:18 53:2 53:8 61:6 70:4 70:5 71:16 72:1 79:15 79:18 80:9 80:25 83:10 84:25 87:4 87:13 88:1 91:4 91:14 95:15 97:16 97:18 97:22 109:22 112:16 114:14 135:13 140:6 140:25 144:19 149:24 160:20 163:4 166:4 167:15 168:4 171:14 171:17 177:18 178:3 178:11 178:14 185:25 197:21 202:15 208:4 208:18 209:11 209:16 210:17 215:5 215:9 215:12 215:15 215:22 216:8 216:18 217:17 | |
| **objectionable**(2) 177:13 212:1 | |
| **objections**(55) 12:9 13:18 18:25 19:7 19:22 20:18 20:23 22:10 34:16 36:1 36:10 38:7 38:11 38:12 43:23 44:9 44:14 52:5 52:10 56:16 62:22 70:1 72:21 79:21 80:3 85:2 92:12 94:16 122:3 129:19 130:14 130:19 131:23 135:4 135:8 143:3 143:11 150:19 151:4 151:6 151:8 156:24 159:25 161:16 163:15 164:3 165:24 177:1 202:2 208:16 216:6 216:8 216:11 218:14 219:18 | |
| **objectively**(1) 206:8 | |
| **objectors**(7) 13:6 34:11 72:23 183:14 208:17 209:2 209:19 | |
| **obligation**(4) 42:14 42:17 95:8 199:5 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **obligations**(4) 21:23 49:7 201:11 210:13 | | **one**(250) 1:31 2:45 4:18 6:11 11:22 12:4 13:15 14:14 15:13 16:19 17:9 17:12 18:10 18:25 19:1 19:20 19:23 20:18 20:24 24:2 25:19 26:7 26:9 26:21 27:16 27:19 28:9 29:5 30:19 30:20 31:1 31:3 31:5 31:7 32:9 34:2 34:13 34:19 35:3 35:4 35:15 36:2 36:16 36:17 37:7 37:12 37:16 37:18 37:21 38:4 38:6 38:8 38:12 39:17 39:25 40:7 40:18 41:5 42:22 43:24 44:7 44:11 44:17 46:15 48:25 51:21 53:18 54:7 58:7 58:14 59:1 59:2 59:3 61:6 62:21 63:9 63:10 63:12 63:13 63:18 63:24 64:2 64:3 64:10 64:11 64:17 64:19 64:21 64:22 65:1 65:6 65:11 65:15 65:15 65:17 65:20 66:2 66:4 66:17 66:19 66:19 66:25 67:3 67:5 67:11 68:11 68:25 69:2 69:9 69:15 69:19 70:1 70:3 70:5 71:3 71:25 75:16 75:23 76:3 76:5 76:14 77:6 77:12 77:14 77:24 78:14 78:24 79:6 79:6 79:9 80:9 81:1 81:12 82:8 82:9 83:2 83:10 85:6 85:6 85:23 86:2 92:14 97:14 101:21 101:22 101:24 102:23 103:13 103:21 104:17 105:1 105:2 110:23 111:1 112:5 112:9 112:25 113:14 113:17 115:11 115:2 117:16 117:17 118:4 118:20 121:10 122:14 125:13 126:18 126:23 128:6 129:1 129:22 131:1 131:21 131:23 133:1 134:1 142:20 142:23 143:23 144:3 145:25 147:5 147:11 149:20 149:23 152:4 155:4 155:8 158:17 159:5 159:8 159:23 160:1 160:8 160:10 161:4 161:22 161:24 162:23 163:1 165:10 165:12 168:8 168:23 169:2 169:7 170:4 170:25 171:13 172:10 173:17 173:20 174:1 176:9 177:1 183:24 183:25 185:11 186:2 187:15 187:18 189:20 191:11 193:24 194:1 194:14 196:4 198:22 199:7 199:15 200:1 201:18 201:20 202:11 204:6 204:8 205:4 207:5 207:23 209:3 210:21 213:7 215:6 217:2 217:24 218:3 218:18 | **order**(60) 13:17 27:11 27:15 39:23 40:1 40:11 40:15 40:16 41:10 41:13 41:24 43:21 47:6 47:8 47:9 47:14 47:22 48:7 48:12 54:6 63:7 69:22 93:2 96:9 99:20 102:2 102:21 105:7 106:16 153:2 157:1 160:12 175:15 176:12 176:14 176:16 176:17 177:7 177:9 177:11 177:15 177:22 185:15 186:8 189:23 199:21 200:2 207:25 209:21 211:23 212:10 212:17 212:19 212:22 214:24 216:5 216:24 217:2 217:13 217:20 | | **out**(72) 12:18 13:16 14:23 15:10 16:17 16:24 19:12 19:13 20:12 22:4 24:21 25:14 27:14 27:14 31:20 32:3 34:21 36:3 38:24 39:3 39:4 46:2 57:13 59:4 59:6 70:1 73:6 74:4 74:24 79:16 100:1 100:5 100:6 105:3 108:25 118:15 125:12 127:3 127:16 128:3 129:11 129:20 132:2 138:17 138:20 143:12 143:18 148:25 151:13 151:14 155:10 155:25 155:25 157:3 162:17 170:4 170:22 172:15 173:18 179:10 185:1 187:15 193:12 195:5 195:9 200:17 200:19 200:23 204:23 204:25 207:4 |
| **observation**(1) 36:6 | | | | **ordered**(2) 107:13 211:25 | | |
| **observations**(1) 13:2 | | | | **orders**(2) 200:4 201:25 | | |
| **observe**(1) 79:24 | | | | **ordinary**(2) 174:5 174:25 | | **outcome**(4) 19:10 27:10 32:15 132:6 |
| **observed**(1) 21:11 | | | | **organization**(3) 24:25 26:17 130:5 | | **outcomes**(4) 53:14 103:16 103:25 113:21 |
| **obtain**(3) 188:7 193:22 194:23 | | | | **origin**(1) 58:5 | | **outrage**(1) 145:15 |
| **obtained**(1) 85:21 | | | | **original**(2) 99:20 190:6 | | **outrageous**(1) 148:8 |
| **obviate**(1) 51:7 | | | | **originally**(1) 46:24 | | **outside**(3) 44:9 75:8 158:19 |
| **obvious**(1) 36:15 | | | | **origins**(1) 57:12 | | **outstanding**(11) 18:24 61:20 72:20 116:7 120:17 120:25 121:4 129:7 160:20 163:4 166:21 |
| **obviously**(9) 13:23 16:1 58:20 131:3 136:16 143:21 175:2 179:25 205:10 | | | | **ostensibly**(1) 103:10 | | |
| | | | | **other**(106) 1:22 12:13 12:16 12:25 13:21 14:16 16:8 16:9 17:18 18:10 18:14 19:1 19:7 19:22 20:25 21:16 23:9 23:13 25:17 27:19 29:10 29:19 29:25 37:11 38:3 40:25 41:13 42:16 42:19 49:3 49:11 54:7 58:12 63:21 63:25 64:16 72:3 73:17 74:23 75:5 80:2 84:24 88:5 88:20 89:4 91:22 95:11 95:11 99:1 104:8 104:19 105:6 106:9 107:7 108:25 110:6 113:18 119:2 119:3 119:4 124:3 128:5 129:18 134:4 137:23 139:12 143:22 146:4 147:11 154:15 159:1 159:17 160:19 162:17 163:4 171:16 176:10 177:1 185:9 186:6 186:25 187:17 189:21 193:24 193:24 194:25 195:9 196:4 196:24 198:4 198:13 198:19 199:15 200:1 200:18 200:19 200:23 200:24 201:14 205:4 205:8 207:13 209:3 211:1 212:12 216:7 | | |
| **occasion**(2) 29:6 209:19 | | | | | | |
| **occasions**(3) 11:14 136:4 198:13 | | | | | | |
| **occur**(6) 71:10 101:9 121:19 128:14 128:20 129:17 | | | | | | |
| | | | | | | **overall**(4) 14:4 27:16 97:14 125:9 |
| **occurred**(2) 14:16 19:13 | | | | | | **overlap**(1) 63:6 |
| **occurs**(1) 17:10 | | | | | | **overnight**(1) 181:21 |
| **october**(7) 180:24 189:14 189:14 189:15 190:12 192:7 192:18 | | | | | | **overriding**(1) 185:11 |
| | | | | | | **overrule**(1) 165:25 |
| **odds**(2) 32:6 126:19 | | | | **other's**(1) 112:17 | | **overruled**(1) 50:18 |
| **off**(17) 34:15 35:16 74:14 78:4 102:18 108:14 111:12 129:2 132:25 136:1 145:16 153:11 167:23 182:5 196:5 196:5 219:13 | | | | **others**(17) 12:10 16:1 22:25 27:18 27:19 28:1 45:14 47:13 74:9 103:14 143:21 149:8 156:25 160:11 165:14 208:25 219:15 | | **oversight**(2) 178:18 202:5 |
| | | | | | | **overview**(1) 70:12 |
| **offer**(2) 123:9 183:10 | | | | | | **overwhelm**(1) 17:6 |
| **offered**(1) 131:24 | | | | | | **overwrought**(1) 147:8 |
| **offering**(1) 119:2 | | | | **otherwise**(8) 21:19 25:3 35:7 74:25 90:6 93:18 182:17 203:4 | | **owed**(1) 60:10 |
| **offers**(1) 165:7 | | | | | | **owing**(7) 62:6 88:4 88:5 88:19 88:23 89:14 110:16 |
| **office**(1) 3:44 | | | | | | |
| **officers**(2) 175:19 192:22 | | | | **ought**(2) 123:18 136:13 | | |
| **official**(3) 17:8 175:10 184:23 | | | | | | |
| **often**(3) 21:23 70:10 147:17 | | **ongoing**(5) 181:4 190:3 190:5 193:1 219:1 | | **our**(150) 11:8 11:12 12:14 12:15 12:16 12:19 13:19 15:1 15:15 16:1 17:4 20:15 20:18 21:4 21:11 22:13 23:4 23:14 23:15 31:5 31:10 31:11 32:2 32:5 32:11 34:12 34:24 35:2 35:6 35:25 36:15 37:18 37:25 57:3 57:10 57:13 57:17 68:21 72:3 73:24 74:4 76:19 77:4 77:5 77:13 77:18 77:19 77:20 77:21 77:23 78:5 78:9 79:13 87:13 90:11 96:3 97:4 97:16 98:11 99:7 99:18 100:24 103:2 103:13 103:15 103:23 107:1 109:5 112:9 112:10 117:3 117:4 123:23 123:24 123:25 124:11 124:25 125:28:10 128:12 128:18 134:25 135:13 136:7 143:12 144:8 145:11 151:9 151:5 151:20 151:22 152:24 153:17 154:6 154:6 155:22 163:1 166:13 166:24 168:9 172:14 174:6 174:9 174:17 185:16 185:24 187:24 188:11 190:7 190:25 191:5 194:1 199:8 199:15 205:13 206:16 208:9 210:22 214:4 214:18 214:23 | | **own**(23) 13:22 45:1 64:5 64:5 64:6 68:20 69:4 78:7 123:9 125:9 127:9 133:2 139:11 145:14 145:14 147:22 154:18 179:23 191:8 194:5 194:20 199:5 209:4 |
| **okay**(57) 21:2 35:11 38:15 38:19 39:23 46:20 46:23 47:5 51:14 51:18 52:7 55:3 55:6 55:15 62:15 64:24 73:14 74:17 85:3 85:14 90:22 92:1 101:18 111:2 111:9 111:14 111:21 115:18 121:21 128:8 134:16 140:1 140:17 155:1 157:8 157:10 157:19 161:10 162:13 163:3 163:7 166:9 167:13 168:6 168:19 169:22 171:25 173:1 173:12 173:20 174:14 174:18 177:17 207:15 212:14 217:21 220:2 | | | | | | |
| | | | | | | **owned**(1) 71:3 |
| | | | | | | **ownership**(2) 71:11 129:7 |
| | | | | | | **owns**(1) 67:7 |
| **oksana**(1) 7:49 | | **one's**(3) 35:14 124:4 174:16 | | | | **ox's**(1) 207:2 |
| **omission**(1) 166:11 | | **one-hundred**(2) 139:19 139:22 | | **ours**(2) 124:23 125:8 | | **p.a**(1) 4:4 |
| **omnibus**(1) 140:25 | | **one-pager**(1) 161:8 | | **ourself**(2) 126:15 127:18 | | **p.m**(3) 92:4 92:4 220:10 |
| **once**(9) 13:13 29:13 71:25 74:7 125:23 130:16 158:4 170:12 209:20 | | | | **ourselves**(6) 22:22 32:24 112:15 125:22 158:1 187:1 | | **p.o**(5) 2:9 4:8 4:33 5:10 6:15 |
| | | | | | | **package**(7) 15:15 15:20 125:13 163:18 163:23 164:8 164:8 |
| | | **onto**(3) 84:25 141:6 173:16 | | | | |
| | | **open**(3) 156:20 161:15 217:22 | | | | |
| | | **opening**(1) 23:12 | | | | |
| | | **operate**(1) 120:11 | | | | **page**(60) 11:22 14:15 14:21 25:7 25:20 33:16 37:6 46:16 46:18 47:11 47:16 47:17 49:24 54:23 55:6 55:7 55:8 55:18 57:14 60:4 60:16 70:11 80:13 80:14 85:9 85:12 85:14 87:7 87:9 87:20 88:2 88:16 88:16 88:9 89:24 90:17 90:18 90:22 92:14 94:14 94:18 94:19 109:22 110:8 111:1 115:12 116:1 117:11 117:11 118:21 120:2 129:24 135:25 135:25 136:1 140:15 177:11 199:18 211:25 212:3 |
| | | **operating**(3) 57:22 160:22 160:23 | | | | |
| | | **operations**(2) 121:13 130:1 | | | | |
| | | **opine**(1) 43:10 | | | | |
| | | **opinion**(5) 41:19 133:23 134:1 156:11 | | | | |
| | | **opinions**(3) 108:8 133:13 133:24 | | | | |
| | | **opponent**(1) 184:21 | | | | |
| | | **opponents**(1) 125:8 | | | | |
| | | **opportunity**(11) 22:7 91:8 95:18 109:14 166:17 192:15 200:11 209:23 209:24 215:13 217:13 | | | | **pages**(18) 14:7 15:14 18:8 24:12 33:12 60:15 86:14 102:8 105:3 106:7 106:7 106:18 109:3 109:6 114:1 140:10 143:14 181:6 |
| | | | | | | |
| | | **opposed**(4) 151:7 151:10 166:4 169:18 | | | | **paid**(21) 60:11 60:11 64:25 65:17 110:2 111:7 122:22 136:9 137:5 137:16 137:19 137:20 138:3 140:4 142:6 145:25 146:4 150:6 187:19 192:5 195:5 |
| | | **opt**(2) 46:1 123:2 | | | | |
| | | **option**(6) 119:10 119:11 119:12 122:16 124:1 124:3 | | | | |
| | | | | | | |
| | | **oral**(2) 211:5 211:6 | | | | **painful**(1) 59:3 |
| | | | | | | **pains**(1) 103:22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

paint(1) 206:2
pale(2) 95:16 149:1
palmeyer(1) 41:18
pandemic(1) 2:14
paper(8) 106:18 125:6 125:11 126:2 127:12 147:9 147:12 149:3

papers(10) 45:23 164:4 179:17 180:3 182:7 199:8 199:15 207:12 210:22 211:4

paperwork(1) 175:6
parade(2) 121:20 128:11
paradise(1) 145:19
paragraph(18) 19:8 25:2 14 37:8 37:9 47:20 65:15 66:2 70:12 89:9 90:10 116:4 118:22 120:3 163:12 163:13 167:11 177:12 211:25
parcel(1) 110:13
parent(36) 37:11 52:21 52:25 53:2 53:12 53:13 54:2 54:10 54:16 56:22 57:8 57:9 57:22 58:14 58:20 59:1 59:7 60:10 60:13 77:8 80:20 81:20 81:21 82:22 82:4 82:6 82:7 83:5 83:21 83:23 119:12 119:14 122:25 158:22 165:5 182:2

park(3) 3:27 4:18 4:48
parke(5) 2:13 26:24 122:13 171:12 175:10
part(18) 29:11 32:2 42:25 46:21 47:19 52:12 72:12 76:6 84:2 89:20 93:20 97:9 110:12 110:13 133:22 139:18 181:4 203:1

participant(6) 41:18 42:10 42:11 47:2 75:7 145:13

participants(3) 39:13 61:15 74:23
participate(1) 95:1
participated(1) 39:7
participation(2) 95:3 202:5
particular(9) 47:20 57:6 60:3 67:21 95:16 131:9 141:3 198:1 200:5

particularly(5) 45:5 114:4 145:5 153:8 190:18

parties(41) 13:7 13:17 15:3 15:9 15:24 21:3 22:23 24:11 35:18 39:9 44:20 45:21 48:21 51:24 63:9 63:12 63:13 100:14 105:17 127:8 127:18 131:17 134:19 150:2 155:25 156:22 157:5 163:7 164:5 164:9 165:6 171:2 176:10 180:18 189:21 189:25 191:4 193:5 209:23 212:12 217:3

partner(1) 201:1
partners(5) 8:35 9:14 9:25 179:8 191:14
parts(7) 28:6 28:8 29:11 76:8 98:23 102:9 126:1

party(10) 29:15 48:12 96:25 96:25 126:23 126:24 126:24 152:10 155:24 191:3

party-in-interest(1) 61:24
pass(1) 62:23
passage(1) 191:9
passages(2) 145:4 164:1
passed(4) 63:2 81:1 125:16 125:18
passing(2) 79:23 124:20
past(2) 27:2 44:5
pathway(1) 69:23
paul(6) 5:45 7:45 20:3 135:11 141:24
pause(11) 106:3 111:15 115:24 130:16 140:18 160:2 161:21 173:22 180:15 212:1 217:11

pawns(1) 124:14
pay(4) 65:16 139:22 140:2 141:5
payable(2) 89:12 90:7
payee(1) 94:25
payment(11) 73:1 135:18 137:6 138:6 138:24 139:14 139:20 142:1 142:2 181:25 210:4

payments(21) 71:17 74:15 77:1 81:12 142:1 181:1 181:13 182:1 182:14 193:5 193:15 194:2 194:13 194:20 194:22 202:1 206:10 206:15 213:15 213:20 213:23

pdf(1) 136:1
peace(4) 23:9 40:19 107:22 154:16
pen(1) 127:12
pending(9) 175:5 176:19 176:19 177:20 185:14 186:11 186:15 186:17 208:25

pennsylvania(1) 1:48
penny(2) 197:3 204:12
people(32) 16:14 18:21 23:6 27:8 27:13 29:5 29:22 39:9 39:19 40:2 42:20 46:1 46:1 47:21 53:9 75:9 102:15 105:13 106:2 123:18 124:14 124:15 124:16 133:13 133:22 145:20 146:5 147:20 148:1 157:13 196:7 199:2

people's(1) 146:24
percent(16) 11:16 11:18 37:14 53:25 54:1 67:3 72:19 80:19 80:20 83:22 83:24 120:16 129:1 129:7 139:20 139:22

percentage(1) 31:3
perfectly(1) 182:6
perform(1) 58:1
performed(1) 83:4
perhaps(4) 166:5 172:2 199:7 199:22
period(19) 71:9 121:6 129:8 169:1 172:17 176:11 176:20 190:14 194:2 194:14 196:1 202:12 213:16 213:24 218:12 218:22 218:23 219:2 219:5

peripheral(1) 179:20
permeates(1) 146:22
permissibility(1) 177:9
permissible(1) 39:1
permit(3) 164:15 164:25 169:11
permitted(6) 105:23 131:19 154:24 163:21 163:22 164:6 164:6 218:6

pernick(1) 1:37
perplexed(1) 106:8
perry(1) 8:46
person(5) 24:25 41:10 48:4 132:22 181:3
personal(2) 145:7 199:10
personally(1) 195:14
persons(1) 39:7
perspective(3) 72:16 106:15 108:21
pertain(1) 11:7
pertinent(2) 47:19 71:6
pest(2) 138:25 139:1
pestered(2) 139:8 139:9
pestering(1) 138:25
peter(1) 9:21
petition(5) 88:6 88:20 88:24 89:15 206:11
petty(1) 122:8
phil(3) 151:18 155:19 166:12
philip(1) 4:15
philosophers(1) 145:9
philosophy(3) 34:24 145:11 145:12
phone(2) 19:3 50:17
phones(2) 200:13 206:9
phonetic(6) 22:16 38:5 41:18 109:2 179:6 179:7

pick(3) 132:2 132:10 145:14
pickiry(1) 7:33
picking(5) 29:11 47:24 86:16 86:18 105:3
picture(1) 117:1
piece(11) 28:5 32:13 84:5 93:25 114:23 117:9 118:6 125:6 125:11 147:8 149:3

pieces(6) 96:13 97:5 106:18 126:2 131:20 131:22

pile(2) 15:16 15:17

pitch(2) 102:24 103:1
pitched(3) 142:2 145:17 149:4
pitfalls(1) 62:11
place(8) 17:5 55:15 78:6 102:18 134:13 145:13 165:7 207:18

placed(1) 93:7
places(2) 60:2 85:10
plain(3) 115:4 115:5 178:13
plainly(3) 54:15 128:24 164:24
plaintiff(5) 40:16 40:21 41:4 41:4 187:4
plaintiffs(1) 42:1
plan(291) 11:12 11:15 12:6 13:7 13:8 13:25 14:2 15:1 21:5 21:11 21:16 21:16 23:13 23:17 24:15 24:18 24:18 25:4 27:7 27:16 27:18 29:10 29:25 30:14 31:2 31:5 31:10 32:20 33:9 34:25 35:6 35:10 36:22 37:12 37:25 38:1 38:4 38:11 39:13 39:14 39:24 40:1 41:5 41:5 41:9 42:13 42:15 44:17 46:1 46:2 46:3 47:4 47:4 49:18 49:20 49:24 50:16 51:23 52:1 52:3 52:3 52:8 52:19 53:18 53:18 53:20 55:4 55:22 56:19 57:17 57:19 57:20 59:18 60:21 60:23 60:24 61:19 62:3 62:15 64:18 66:4 66:8 66:14 66:16 66:21 67:4 67:9 68:4 69:5 70:14 71:1 71:8 71:11 71:15 71:21 71:24 72:9 73:5 73:19 73:25 74:2 74:21 75:2 75:11 76:19 77:4 77:12 77:18 77:20 77:20 77:20 77:21 78:9 79:6 79:7 79:9 80:2 80:16 81:6 81:7 81:9 82:12 83:1 83:2 83:14 84:3 84:17 84:24 85:25 87:1 87:12 89:2 89:17 90:3 90:14 90:16 92:20 92:25 93:6 93:13 94:3 100:4 100:6 100:7 100:21 100:22 102:7 102:13 103:7 107:11 107:18 108:10 112:9 115:16 116:3 116:11 116:13 116:18 116:20 117:1 117:4 117:12 117:13 117:15 117:15 117:17 117:17 117:25 118:2 118:2 118:4 119:9 120:23 121:16 121:18 121:24 122:20 122:21 123:4 123:6 123:8 123:9 123:23 123:24 123:25 123:25 124:5 124:5 124:10 124:23 128:14 129:19 129:20 131:9 133:22 134:8 134:8 135:18 135:21 137:3 137:5 137:8 137:22 138:7 139:14 141:8 142:2 142:14 143:9 143:22 144:1 144:2 150:20 150:22 151:7 151:10 151:16 151:20 153:25 153:20 153:25 154:4 154:7 158:18 159:5 159:9 159:15 160:1 160:2 160:9 160:9 160:10 160:14 160:15 161:16 165:13 166:24 168:9 168:7 177:11 177:20 181:23 181:24 182:5 184:18 184:18 185:8 185:10 185:17 186:12 186:16 186:19 187:10 187:15 187:16 187:16 187:17 187:17 188:24 189:3 189:11 189:12 190:6 190:15 190:17 191:8 191:19 191:21 192:2 192:6 192:7 192:15 197:3 198:2 198:3 198:4 198:4 199:13 199:3 201:12 202:1 206:23 211:19 211:19

planning(1) 157:13
plans(59) 13:10 13:22 13:25 14:13 16:1 17:17 20:23 23:21 24:2 24:12 27:20 38:22 39:17 39:18 40:12 41:9 42:4 42:4 42:23 42:24 54:6 61:9 61:12 61:18 66:20 73:7 75:22 100:1 108:5 112:17 116:10 125:20 125:21 126:3 126:22 127:1 127:1 133:12 133:13 133:15 134:19 137:23 141:13 141:23 161:17 161:18 162:17 165:6 167:19 176:20 178:5 178:7 178:9 185:7 187:20 188:12 197:25 198:4 201:15

plausible(1) 116:9
play(2) 86:22 190:17
plaza(3) 2:22 3:19 5:25
pleading(2) 178:15 178:16
pleadings(5) 163:1 176:25 177:3 180:18 209:15

please(8) 11:2 32:18 50:24 50:24 105:1 105:2 105:6 121:22

pleased(2) 78:15 183:9
pllc(1) 4:22
plow(1) 91:20
plus(3) 88:20 110:15 123:1
pockets(1) 123:20
podium(4) 119:2 125:1 189:16 209:25
point(64) 9:49 12:4 12:4 16:6 21:20 22:4 30:5 32:24 34:16 48:23 49:13 51:9 53:7 53:9 54:3 54:22 54:23 58:22 68:22 70:3 70:6 71:11 78:23 79:6 84:6 86:8 87:4 89:8 89:21 89:22 90:11 97:15 98:12 103:12 108:16 109:18 112:6 114:7 116:21 116:21 118:20 120:1 124:6 124:25 127:4 127:23 129:20 131:11 132:10 139:13 153:18 154:5 161:23 170:15 177:19 182:5 183:10 188:19 190:9 200:16 204:16 205:4 205:7 208:12

pointed(6) 20:12 34:21 36:3 86:10 109:19 195:9

points(8) 11:20 62:22 70:7 107:25 154:16 155:20 177:6 199:6

policies(3) 21:13 21:15 21:21
polite(1) 67:22
polk(2) 2:23 194:3
polkes(1) 8:15
pondered(1) 112:6
pool(1) 141:3
poor(3) 106:17 124:21 124:22
pop(1) 142:1
portion(5) 116:15 120:9 135:1 207:24
portions(1) 96:23
posed(2) 21:4 33:10
posit(1) 198:8
position(10) 23:11 23:11 23:14 56:11 113:15 126:19 201:4 207:11 215:19 216:15

positions(1) 155:15
possibility(3) 93:10 128:23 148:2
possible(9) 15:1 49:23 57:19 103:20 151:23 158:13 170:3 218:11 219:9

possibly(3) 68:7 73:2 74:9
post(1) 154:21
post-2005(2) 125:19 133:12
post-petition(9) 71:17 73:1 74:14 87:17 87:22 88:22 89:4 109:24 110:5 110:17

posture(2) 187:1 187:11
potential(29) 17:6 44:21 62:11 87:19 89:6 95:6 103:24 131:8 175:21 176:2 178:20 178:25 179:12 181:10 184:25 186:6 190:21 190:22 193:4 193:9 193:13 199:12 201:23 202:6 207:19 213:21 214:13 215:24 218:7

potentially(15) 25:21
potter(1) 3:16
pouring(1) 179:11
power(2) 124:8 124:9
powerful(1) 143:15
powlen(1) 5:39
ppearances(6) 1:23 2:1 3:1 4:1 5:1 6:1
practicable(2) 197:10 210:24
practical(1) 186:25
practice(2) 119:8 210:7
prayer(3) 98:19 136:13 136:14
pre(3) 71:17 72:25 74:14
pre-confirmation(1) 107:10
pre-effective(1) 159:11
pre-lbo(20) 154:2 184:16 184:20 185:1 185:10 185:19 185:21 187:19 188:15 188:15 191:24 192:2 192:5 194:19 194:25 196:17 197:3 197:11 200:13 201:15

pre-petition(1) 49:7
precedent(3) 64:5 152:16 152:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| precipitate(1) 170:13 | | prior(15) 17:25 17:25 54:14 80:13 84:2 84:11 92:23 165:15 165:17 176:17 177:21 181:23 206:11 215:14 218:11 | | proponents(68) 11:12 11:15 12:7 13:7 13:8 14:20 21:5 21:24 23:13 29:10 30:14 32:20 36:23 42:18 42:25 43:6 43:16 52:15 60:1 60:5 61:9 61:9 61:21 62:2 62:7 67:4 67:10 67:10 70:5 71:14 71:24 72:9 72:15 72:18 73:6 73:19 73:25 77:4 78:10 79:15 79:18 80:2 84:24 87:1 87:11 100:7 102:7 102:13 106:9 115:16 116:13 117:1 117:12 117:25 118:2 118:3 118:4 120:23 127:1 129:16 150:20 158:18 162:15 162:17 162:24 191:6 191:8 206:23 | | pursuant(6) 42:15 65:12 69:2 163:24 184:16 198:1 |
| precisely(1) 115:10 | | | | | | pursue(11) 24:14 32:7 32:7 99:21 99:23 198:3 198:18 200:4 200:11 206:12 218:6 |
| preclude(1) 202:13 | | | | | | |
| predicament(1) 119:4 | | prism(2) 126:21 185:20 | | | | |
| predicated(1) 135:18 | | private(1) 76:8 | | | | pursued(8) 27:20 31:6 69:12 159:12 183:3 193:16 193:17 199:10 |
| predominate(1) 185:16 | | privileges(1) 96:11 | | | | |
| prefaced(3) 128:11 128:21 129:15 | | pro(12) 9:28 10:26 53:14 65:2 65:5 65:16 65:19 65:22 66:12 76:25 81:22 141:12 | | | | pursuing(4) 200:1 214:8 214:15 214:17 push(1) 112:8 |
| prefer(1) 172:22 | | | | | | put(37) 16:16 16:24 19:21 21:7 23:11 25:9 26:24 30:24 36:21 39:22 57:9 59:13 66:11 70:25 73:6 74:4 94:1 95:8 100:21 101:25 106:10 121:5 122:16 126:14 126:17 147:20 150:20 152:23 171:20 180:10 182:23 187:12 187:24 191:25 203:1 207:18 219:13 |
| preference(84) 100:3 171:2 176:18 176:8 178:21 178:25 178:25 181:1 181:4 181:5 183:18 186:4 186:6 186:7 186:10 186:14 186:17 187:2 187:6 187:18 188:3 188:15 188:20 188:24 188:25 189:1 189:2 189:2 189:8 189:12 189:13 189:18 190:2 190:22 191:11 191:17 191:21 191:23 191:23 192:1 192:4 192:7 192:19 192:24 193:1 193:4 193:9 193:15 193:19 193:21 194:7 194:18 194:22 195:5 195:22 196:15 196:20 196:2 198:1 198:5 198:18 198:24 199:9 199:16 200:3 200:4 200:17 201:6 201:22 202:6 206:19 206:20 207:16 208:8 210:1 210:5 212:3 213:12 213:16 213:23 214:1 214:23 214:25 215:24 | | probability-weigh(1) 113:16 probably(25) 17:10 57:18 58:4 63:3 63:5 68:7 69:25 70:6 96:20 96:20 100:4 107:16 110:10 111:6 125:5 127:13 131:6 131:6 132:2 145:8 158:3 165:18 166:15 177:14 206:20 | | proportion(1) 58:5 proposals(2) 11:6 13:3 propose(6) 13:6 13:13 14:3 20:23 63:7 64:25 | | |
| | | probed(1) 203:25 | | | | puts(1) 135:21 |
| | | problem(22) 11:23 29:13 30:14 31:11 51:21 37:19 41:17 80:22 87:14 93:5 107:14 107:15 110:23 112:12 136:10 142:7 142:17 168:2 187:11 187:13 196:1 211:11 | | proposed(27) 13:15 22:14 34:12 40:12 42:13 43:20 54:21 70:14 75:22 85:25 96:21 116:10 117:15 117:17 134:9 137:3 137:23 153:22 163:9 176:12 177:11 190:6 212:18 214:24 216:24 217:13 219:17 | | putting(6) 23:18 32:8 102:18 128:15 196:22 196:25 |
| | | | | | | qualify(1) 206:20 |
| | | problems(2) 22:21 46:8 | | | | qualifying(1) 41:21 |
| preferences(5) 99:23 175:21 179:12 181:10 195:12 | | procedurally(1) 180:13 procedures(10) 95:3 102:5 152:19 157:3 157:17 207:18 217:22 219:13 219:14 219:19 | | proposes(1) 64:18 proposing(4) 32:16 51:23 66:20 74:2 proposition(7) 87:25 102:17 102:19 104:15 148:10 182:18 185:6 | | qualitative(3) 181:8 203:25 204:14 quality(1) 207:14 quantitative(1) 181:8 |
| | | | | | | question(19) 16:8 27:8 33:9 71:5 71:6 72:2 73:9 74:18 90:4 99:12 130:16 132:25 149:23 169:3 171:3 172:7 187:8 187:9 214:15 |
| preferential(1) 190:8 | | proceed(7) 15:11 84:23 107:6 122:10 154:18 182:22 215:22 | | proprietary(2) 75:18 77:25 prosecute(4) 175:16 176:4 176:7 176:15 | | |
| preferred(1) 214:18 | | | | | | |
| prejudicial(1) 33:3 | | | | prosecuted(1) 178:20 | | |
| preliminarily(1) 180:17 | | | | prosecution(1) 176:18 | | questions(5) 84:22 94:12 114:16 157:9 170:13 |
| premature(3) 21:20 100:10 200:10 | | proceeding(6) 42:16 62:11 62:12 147:22 180:1 181:23 | | prospective(1) 128:1 protect(2) 67:15 184:12 | | |
| premised(7) 27:9 31:2 80:17 80:18 82:20 112:9 137:3 | | | | protected(2) 40:24 200:8 | | quibbles(1) 63:20 |
| | | proceedings(5) 1:19 1:52 17:25 194:7 220:14 | | protection(1) 140:5 | | quick(1) 168:20 |
| | | | | protections(1) 96:12 | | quickly(3) 13:19 21:1 185:12 |
| preordained(1) 201:5 | | | | protective(2) 18:20 119:17 | | quintessential(1) 108:19 |
| preparation(2) 192:19 219:21 | | proceeds(15) 93:4 93:23 94:1 94:6 94:8 100:2 100:5 105:10 107:9 107:12 107:17 137:16 159:10 165:15 197:1 | | prove(5) 29:3 96:22 99:3 99:22 188:23 | | quirk(1) 110:10 |
| prepared(15) 37:19 62:20 114:16 156:24 156:25 157:16 180:5 180:7 180:10 182:24 202:15 202:22 203:3 215:21 217:17 | | | | proves(1) 79:7 | | quite(19) 23:17 28:18 47:10 48:22 84:10 102:6 102:17 104:22 108:20 114:5 125:4 145:10 163:8 186:21 186:23 188:5 194:9 197:24 198:9 |
| | | | | provide(11) 67:23 82:7 93:14 103:5 129:4 168:8 178:6 198:4 208:19 219:16 219:24 | | |
| | | process(47) 36:8 42:25 43:19 50:13 75:9 79:22 113:5 131:18 132:7 133:25 141:1 145:13 157:1 172:20 179:13 180:4 180:4 181:19 181:23 182:24 182:25 185:8 185:1 182:12 186:16 187:10 187:23 188:14 189:16 190:3 190:5 190:11 191:2 191:7 191:15 191:15 192:12 196:18 202:6 202:2 203:2 208:23 209:18 213:18 218:17 218:22 219:1 | | | | quo(2) 185:13 185:16 |
| prepetition(2) 110:15 111:6 | | | | provided(25) 29:7 45:25 47:12 50:7 50:15 54:14 54:20 57:3 57:4 57:13 57:24 59:18 77:11 98:10 99:13 100:16 103:10 119:9 135:14 141:18 146:13 177:10 203:20 216:1 218:23 | | quote(2) 137:2 189:18 |
| preposterous(1) 104:21 | | | | | | quotes(1) 145:9 |
| present(1) 19:5 | | | | | | quoting(2) 25:6 103:2 |
| presented(6) 129:21 151:23 183:25 214:11 216:7 216:18 | | | | | | qureshi(1) 4:17 |
| | | | | | | rachel(1) 10:16 |
| | | produce(1) 109:12 | | | | raise(10) 22:10 53:3 63:9 80:3 91:17 97:16 120:12 128:24 149:24 197:19 |
| preservation(3) 23:24 24:2 187:18 | | produced(1) 1:53 | | | | |
| preserve(9) 23:22 191:21 191:22 194:7 194:18 198:18 198:21 199:5 201:11 | | producing(1) 108:7 | | provides(7) 30:17 39:6 60:9 61:23 75:15 98:19 137:6 | | |
| | | product(2) 52:11 108:10 | | | | raised(19) 13:9 30:20 83:10 90:4 101:4 109:19 122:14 132:2 134:4 144:5 155:20 163:16 164:3 171:16 172:4 177:6 177:8 177:18 199:25 |
| | | professional(8) 17:14 18:2 18:15 123:15 123:17 123:19 124:15 126:14 | | providing(6) 62:10 73:17 94:23 98:17 181:3 203:17 | | |
| preserved(7) 25:20 27:20 41:11 45:18 48:4 198:6 198:14 | | | | | | |
| | | | | proving(1) 99:2 | | |
| preserves(2) 26:5 27:17 | | professionals(12) 18:19 136:3 136:6 146:4 189:7 206:1 213:13 213:16 213:20 213:21 213:23 214:12 | | provision(17) 36:13 36:14 40:13 42:24 43:17 47:2 47:8 48:9 49:2 49:12 49:15 50:16 50:17 65:15 66:16 78:24 188:24 | | |
| preserving(5) 24:5 25:25 197:10 204:7 206:22 | | | | | | raising(2) 19:3 60:3 |
| | | | | | | ran(6) 85:17 85:18 104:5 113:13 113:14 113:16 |
| presiding(1) 131:4 | | program(2) 110:11 176:8 | | provisions(12) 43:20 65:14 65:23 65:23 66:3 66:5 69:2 79:3 162:1 162:3 165:11 176:17 | | |
| press(7) 18:23 22:6 52:12 76:14 87:15 143:18 150:19 | | progresses(1) 63:5 | | | | range(5) 20:15 56:6 103:24 142:6 184:8 |
| | | progressing(2) 44:25 58:22 | | proxy(1) 148:11 | | ranges(1) 17:14 |
| | | prohibited(2) 41:22 86:18 | | pryor(1) 9:34 | | ranks(1) 25:11 |
| pressing(5) 51:16 79:18 87:15 87:15 97:17 97:21 | | prohibiting(1) 186:13 | | public(1) 74:24 | | rapidly(1) 84:20 |
| pressure(1) 196:7 | | prohibition(2) 33:2 105:7 | | pulled(1) 46:13 | | rare(1) 209:19 |
| presumably(1) 167:2 | | promised(2) 98:14 192:17 | | punitive(1) 185:20 | | rata(10) 53:14 65:2 65:5 65:16 65:19 65:22 66:12 76:25 81:22 141:12 |
| pretty(9) 18:9 34:24 83:6 84:19 125:7 147:8 148:20 206:2 207:4 | | pronouncement(1) 30:8 | | purchased(1) 153:19 | | |
| | | proof(3) 49:5 194:6 194:21 | | purchasing(3) 41:20 43:3 176:8 | | |
| | | proofs(1) 45:2 | | purely(1) 51:22 | | rate(3) 16:16 24:6 119:14 |
| previewed(2) 80:10 85:6 | | proper(2) 175:6 210:6 | | purports(1) 66:18 | | rath(2) 2:4 2:6 |
| previous(1) 55:19 | | properly(3) 102:7 174:23 210:15 | | purpose(13) 31:10 43:3 43:16 73:3 97:2 99:11 112:19 130:6 154:16 155:5 196:9 196:9 196:12 | | rather(10) 13:10 19:17 36:5 37:21 42:15 44:4 44:6 59:15 62:9 63:16 67:23 69:15 94:1 97:4 102:19 105:17 160:5 172:22 182:10 185:25 197:1 200:3 201:23 202:1 203:9 214:11 |
| previously(3) 76:2 90:19 181:22 | | proponent(13) 18:10 23:17 29:25 71:1 73:7 75:2 75:11 75:16 117:13 119:9 121:16 165:21 198:2 | | | | |
| pride(1) 125:7 | | | | | | |
| primarily(5) 29:22 82:20 93:8 175:17 | | | | | | |
| primary(4) 54:15 81:7 185:2 185:2 | | | | | | |
| primofl(1) 3:26 | | proponent's(2) 123:23 125:9 | | purposes(9) 46:12 73:8 77:3 91:22 91:24 97:13 99:10 100:8 165:18 | | |
| principal(8) 71:17 77:1 89:13 110:15 111:5 111:10 111:22 117:13 | | | | | | rationale(3) 103:6 103:10 104:18 |
| principally(1) 30:1 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **rattles**(1) 136:1 | | **redline**(7) 46:6 46:18 47:12 47:17 49:25 88:8 170:18 | | **remarks**(1) 155:3 | | **resolving**(2) 98:5 130:19 | |
| **reach**(3) 127:6 206:17 214:21 | | | | **remedies**(2) 179:21 197:8 | | **resources**(1) 119:9 | |
| **reached**(6) 18:19 22:18 40:17 96:14 139:19 206:16 | | **redlines**(1) 115:16 | | **remedy**(1) 209:8 | | **respect**(95) 20:6 20:11 26:2 26:3 27:19 29:10 29:14 29:15 30:4 30:20 33:10 36:1 36:4 36:12 37:6 37:20 38:4 38:22 40:11 40:22 40:24 41:4 43:23 48:1 51:4 53:3 53:19 55:21 57:8 57:17 60:25 61:6 62:3 62:9 62:14 72:24 73:19 75:14 80:3 81:1 81:10 81:12 81:14 82:12 87:18 90:7 94:17 103:25 105:22 108:16 108:24 109:1 109:3 109:18 113:23 116:19 122:3 122:6 122:14 126:11 127:22 129:23 131:23 145:22 151:22 151:25 152:21 153:7 154:2 154:5 155:3 156:1 164:3 164:21 165:1 165:4 165:5 165:15 165:19 165:24 180:25 185:13 188:14 189:17 200:20 207:13 207:18 210:1 212:18 214:13 214:24 216:19 217:1 217:6 219:10 | |
| **reacting**(1) 210:23 | | **redlining**(2) 110:11 111:12 | | **remember**(1) 209:15 | | | |
| **reaction**(1) 97:13 | | **reduce**(4) 40:22 40:25 41:25 193:13 | | **remind**(5) 24:4 29:4 37:24 64:3 198:13 | | | |
| **read**(12) 16:14 25:4 33:19 89:18 91:15 112:19 114:3 114:11 139:12 143:13 146:8 161:2 | | **reduced**(1) 40:14 | | **reminder**(1) 76:17 | | | |
| | | **reducing**(3) 14:19 41:4 193:6 | | **reminder**(1) 211:25 | | | |
| **reader**(1) 127:25 | | **refer**(5) 30:25 31:9 60:4 94:16 116:1 | | **reorganization**(7) 27:17 116:11 184:19 185:7 188:19 188:22 191:20 | | | |
| **readers**(3) 29:16 33:18 33:20 | | **reference**(13) 34:2 37:25 64:12 83:11 85:12 86:11 102:3 104:13 105:21 108:3 113:20 116:19 131:25 | | | | | |
| **readily**(1) 128:21 | | | | **reorganized**(18) 94:2 116:16 116:24 117:2 117:5 117:7 120:17 121:1 128:24 132:13 132:16 132:17 192:4 195:10 195:18 197:2 198:11 198:18 | | **respectfully**(1) 178:4 | |
| **reads**(1) 116:4 | | | | | | | |
| **ready**(4) 62:17 84:8 114:15 170:14 | | **referenced**(1) 26:12 | | | | **respective**(6) 14:13 29:16 72:4 87:2 163:9 163:24 | |
| **real**(5) 15:19 79:2 101:11 114:10 128:16 | | **references**(5) 30:15 70:3 87:3 101:25 153:9 | | | | | |
| **reality**(1) 140:20 | | **referred**(4) 103:19 109:4 110:6 130:23 | | **repeated**(1) 103:2 | | **respectively**(2) 14:9 14:21 | |
| **really**(44) 13:7 22:21 28:11 32:12 44:13 44:16 44:16 45:15 51:7 52:1 56:19 60:17 62:7 66:20 68:16 68:21 70:23 71:13 79:1 98:6 102:12 112:22 116:21 123:14 124:25 125:3 126:1 129:22 136:19 143:11 146:1 146:3 148:10 148:25 150:5 155:11 164:22 177:23 180:7 189:13 195:3 204:18 204:23 205:2 | | **referring**(2) 64:8 94:14 | | **repeatedly**(1) 162:25 | | **respects**(3) 176:13 200:21 205:14 | |
| | | **refine**(1) 58:3 | | **repeating**(1) 36:5 | | **respond**(5) 84:24 84:24 95:24 105:14 155:15 | |
| | | **reflect**(1) 112:11 | | **replace**(1) 54:12 | | | |
| | | **reflected**(1) 205:21 | | **reply**(2) 155:2 186:20 | | | |
| | | **reflecting**(1) 58:2 | | **reply's**(1) 183:20 | | | |
| | | **reflection**(1) 206:13 | | **report**(78) 11:6 22:23 22:24 23:1 23:2 23:5 24:21 25:9 27:25 28:13 28:17 28:21 29:1 29:7 29:12 29:17 29:18 29:20 29:23 30:6 30:17 30:22 31:1 31:2 31:3 31:7 31:12 32:23 33:11 33:16 33:17 33:19 33:22 34:2 55:24 64:9 65:4 69:4 85:8 85:16 86:9 86:12 86:13 86:19 86:21 86:21 86:24 87:4 99:17 101:17 102:1 102:3 102:16 102:20 102:21 103:8 104:10 104:1 104:19 105:2 105:8 105:18 105:21 108:3 108:4 108:7 108:8 108:11 112:7 112:10 113:13 113:14 113:18 149:16 157:15 158:17 164:21 215:11 | | **responded**(4) 69:20 166:10 179:3 180:5 | |
| | | **refuse**(2) 183:5 194:21 | | | | **responding**(2) 17:11 155:20 | |
| | | **regard**(12) 13:21 22:15 29:19 44:3 53:14 57:9 57:19 57:19 59:18 71:15 143:22 190:2 | | | | **response**(26) 25:5 38:11 47:8 49:5 86:17 86:23 95:23 109:21 128:19 156:8 156:15 163:6 174:13 183:19 185:24 186:20 197:21 205:3 212:20 212:21 216:12 216:22 216:23 217:15 217:16 220:5 | |
| **realm**(2) 9:14 71:24 | | | | | | | |
| **reams**(2) 179:11 179:11 | | **regarding**(17) 29:23 39:4 44:19 80:10 80:11 80:12 81:3 82:24 87:12 90:15 99:1 100:25 122:7 146:18 150:22 161:16 176:1 | | | | | |
| **reason**(8) 65:8 79:7 141:10 151:15 183:7 195:23 196:20 212:5 | | | | **report's**(1) 102:21 | | | |
| | | | | **reported**(1) 165:2 | | | |
| | | | | **reporting**(1) 168:24 | | **responses**(4) 166:9 218:13 218:15 218:16 | |
| **reasonable**(4) 140:8 141:17 185:4 195:4 | | **regardless**(3) 36:24 67:4 201:12 | | **reports**(1) 102:9 | | **responsibilities**(1) 208:10 | |
| **reasonableness**(3) 96:21 96:22 106:6 | | **register**(1) 219:7 | | **represent**(3) 115:17 184:12 200:13 | | **responsibility**(1) 45:21 | |
| **reasonably**(5) 63:11 64:12 64:14 106:12 141:7 | | **reigning**(1) 218:12 | | **representation**(1) 64:6 | | **responsibly**(1) 207:7 | |
| | | **reinforces**(1) 134:21 | | **representative**(3) 148:13 148:14 148:15 | | **responsive**(81) 12:15 12:17 13:16 14:22 15:25 16:14 18:7 18:8 18:12 25:7 28:19 28:19 29:3 29:15 29:23 30:2 30:16 31:13 31:21 32:2 32:11 34:14 51:20 70:23 78:2 80:5 85:11 85:15 87:2 102:24 103:4 103:13 103:15 103:24 105:23 106:14 106:19 106:21 112:7 112:13 112:18 113:10 114:16 114:21 115:6 116:2 118:18 118:19 119:22 122:4 122:7 122:14 124:11 125:3 126:12 128:10 130:19 130:24 143:14 145:4 145:6 145:12 145:21 147:5 153:8 154:17 159:24 159:24 160:6 161:3 161:7 163:10 163:11 163:13 163:17 164:7 164:16 169:11 169:18 170:17 176:25 | |
| **reasons**(12) 21:7 54:4 59:17 70:23 73:16 84:4 103:13 113:14 139:11 175:3 179:16 186:12 | | **reject**(5) 37:11 137:22 138:4 138:14 | | **representatives**(1) 147:2 | | | |
| | | **rejected**(1) 174:5 | | **represented**(2) 16:11 35:18 | | | |
| | | **rejection**(1) 138:8 | | **reputation**(1) 26:17 | | | |
| **rebuttal**(1) 113:11 | | **relate**(1) 196:23 | | **reputationally**(1) 24:24 | | | |
| **recall**(5) 55:21 102:4 181:23 199:2 200:25 | | **related**(1) 219:6 | | **request**(12) 43:15 47:1 47:9 68:11 73:16 74:3 160:25 161:3 161:4 205:20 208:15 213:10 | | | |
| **recap**(2) 156:19 156:24 | | **relates**(4) 82:4 89:2 122:15 199:20 | | | | | |
| **receive**(5) 37:14 87:22 109:24 116:14 137:10 | | **relating**(1) 217:25 | | | | | |
| | | **relation**(2) 116:6 149:10 | | | | | |
| | | **relationship**(3) 176:2 185:4 200:7 | | **requested**(9) 73:18 164:17 164:25 201:9 208:18 209:13 210:16 216:9 217:18 | | | |
| **received**(8) 37:8 71:19 81:14 81:16 194:13 206:10 213:23 218:17 | | **relationships**(2) 195:15 199:19 | | | | | |
| | | **relative**(3) 16:1 69:23 98:21 | | | | | |
| | | **relatively**(1) 93:5 | | **requests**(5) 63:22 103:2 186:22 208:21 218:14 | | | |
| **recent**(1) 199:1 | | **release**(15) 39:1 39:11 39:17 39:24 40:1 44:19 45:24 45:25 46:25 46:25 47:3 67:1 68:20 98:19 160:12 | | | | | |
| **recently**(2) 109:20 131:14 | | | | | | | |
| **recess**(8) 50:23 91:21 92:3 92:4 157:8 157:10 157:20 157:21 | | | | **require**(17) 29:25 67:19 75:24 77:17 97:12 158:10 158:11 163:19 164:1 164:12 164:15 164:20 164:23 164:25 165:3 165:9 197:7 | | | |
| | | **released**(7) 44:21 45:8 45:12 188:24 189:3 189:11 198:10 | | | | | |
| **recipient**(1) 202:11 | | | | | | | |
| **recipients**(1) 175:21 | | **releases**(3) 38:22 45:16 45:17 | | **required**(5) 68:25 74:23 83:13 153:24 | | **rest**(7) 23:18 36:25 70:7 112:20 168:3 185:21 191:6 | |
| **recognition**(1) 77:7 | | **releasing**(1) 39:14 | | **requirement**(1) 64:6 | | | |
| **recognize**(3) 121:2 145:9 188:17 | | **relevance**(1) 150:4 | | **requirements**(2) 175:25 176:14 | | **restrained**(1) 132:3 | |
| **recognizing**(2) 192:8 214:16 | | **relevant**(18) 15:18 16:9 27:6 27:21 27:22 42:23 51:12 68:22 71:9 71:23 74:11 96:15 97:6 98:21 106:8 159:17 180:8 | | **requires**(5) 99:24 113:1 205:8 | | **restrict**(1) 178:1 | |
| **recommence**(1) 182:4 | | | | **requiring**(2) 74:19 74:24 | | **restricted**(1) 139:10 | |
| **recommendation**(2) 137:1 138:15 | | | | **requisite**(1) 83:9 | | **restrictions**(1) 155:23 | |
| **reconvene**(1) 91:21 | | | | **reservation**(1) 51:22 | | **result**(10) 31:8 40:15 42:1 59:22 85:23 116:23 121:18 142:10 207:3 213:22 | |
| **record**(24) 12:16 19:4 20:1 97:9 108:15 126:12 135:11 139:12 141:24 142:5 149:11 150:21 161:3 169:9 174:4 174:5 174:7 174:8 174:12 175:9 199:13 208:20 214:4 216:18 | | **reservations**(1) 12:24 | | | | | |
| | | **reserve**(11) 70:7 90:17 90:25 91:11 100:25 120:18 120:22 129:2 152:19 175:4 200:4 | | | | | |
| | | | | **resolution**(4) 98:2 176:19 213:8 214:14 | | **resulting**(1) 41:22 | |
| | | | | **resolve**(5) 112:20 131:23 178:8 178:9 | | **results**(4) 86:7 99:14 124:7 206:3 | |
| | | **resides**(3) 53:25 54:2 71:23 | | **resolved**(16) 11:17 13:17 13:21 34:17 34:19 45:10 63:10 72:1 80:7 98:6 100:22 101:3 156:20 158:1 160:21 219:25 | | **retained**(1) 102:20 | |
| **recorded**(1) 1:52 | | **resist**(1) 59:13 | | | | **retirees**(2) 148:15 153:23 | |
| **recording**(3) 1:52 174:3 220:14 | | **resisted**(2) 58:3 58:9 | | | | **return**(2) 123:9 146:16 | |
| **recover**(1) 175:16 | | | | | | **revenue**(1) 41:21 | |
| **recoverable**(1) 214:1 | | | | | | **review**(8) 11:13 163:12 170:12 189:4 202:6 215:20 217:3 217:13 | |
| **recovered**(1) 192:3 | | | | **resolves**(5) 112:20 131:23 178:8 178:9 | | | |
| **recoveries**(11) 55:13 55:17 77:8 119:1 119:13 153:22 154:3 188:11 188:15 195:2 196:17 | | | | | | | |
| | | | | **resolve**(5) 112:20 131:23 178:8 178:9 | | **reviewed**(3) 15:7 213:21 215:17 | |
| | | | | | | **reviewing**(2) 85:22 115:2 | |
| **recovers**(1) 145:5 | | **relief**(34) 39:12 43:9 43:18 177:3 177:7 178:22 178:24 180:1 180:8 180:13 180:14 183:1 183:23 183:25 185:25 186:1 186:23 188:7 188:10 188:18 195:25 197:6 201:9 201:25 208:15 208:18 208:20 210:16 210:17 210:24 210:24 216:9 217:18 218:1 | | | | **revised**(12) 87:8 90:11 92:14 94:14 94:17 109:20 116:2 119:22 144:7 170:17 217:13 | |
| **recovery**(12) 24:22 37:14 37:17 56:6 81:19 81:23 95:10 104:3 119:7 146:17 188:13 204:12 | | | | **resolution**(4) 98:2 176:19 213:8 214:14 | | | |
| | | | | **resolves**(1) 174:6 | | | |
| **recurring**(1) 20:10 | | **relieve**(1) 42:17 | | | | **revising**(1) 38:10 | |
| | | **rely**(6) 12:14 149:17 149:18 150:8 180:7 200:15 | | **remain**(1) 52:14 | | | |
| | | | | **remainder**(2) 90:8 200:15 | | | |
| | | | | **remaining**(6) 62:22 90:16 90:24 91:11 217:21 220:1 | | | |
| | | **remains**(1) 157:6 | | | | | |
| | | **remarkable**(1) 155:8 182:17 | | | | | |
| | | **remarkably**(2) 182:10 188:6 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **revisions**(7) 52:11 95:21 156:21 164:10 212:18 219:17 219:18 | | **run**(9) 85:17 85:18 86:6 103:19 104:1 104:5 113:21 144:25 173:10 | | **scenarios**(20) 32:3 32:4 59:5 59:6 85:17 85:18 85:20 85:22 85:24 86:6 103:19 103:20 104:1 104:2 104:5 104:10 113:13 113:14 113:16 113:21 113:20 | | **senior**(60) 34:16 37:10 37:12 56:7 62:18 63:25 64:2 65:12 65:15 67:6 69:16 70:17 70:18 70:20 71:3 71:4 72:3 72:9 72:14 72:17 72:18 72:20 74:3 74:13 76:4 76:4 76:16 76:17 76:22 77:14 77:15 81:21 88:5 88:19 88:23 89:3 89:10 89:12 89:15 89:25 90:1 90:1 90:5 90:8 91:12 91:12 95:15 110:14 111:3 116:5 116:12 120:10 126:12 129:16 133:20 133:20 155:6 181:24 184:7 206:23 |
| **revolving**(1) 179:12 | | **runs**(6) 14:20 109:3 109:6 128:16 181:6 181:13 | | | | |
| **rewrite**(1) 127:12 | | | | **schaible**(1) 2:38 | | |
| **rhetoric**(5) 115:3 145:14 145:15 146:22 202:9 | | **rushabh**(1) 9:37 | | **schedule**(4) 84:12 181:12 204:24 215:13 | | |
| | | **russano**(1) 2:37 | | **scheduling**(1) 91:24 | | |
| **rhetorical**(3) 102:24 103:1 149:4 | | **sabers**(1) 154:21 | | **schlerf**(1) 5:5 | | |
| **rice**(1) 6:26 | | **sachs**(1) 8:27 | | **scholer**(1) 3:25 | | |
| **rich**(1) 3:11 | | **saddled**(2) 184:15 185:6 | | **schotz**(1) 1:35 | | **sense**(24) 23:25 45:20 59:19 69:25 70:6 77:16 81:6 81:7 108:4 108:15 126:22 127:10 130:21 131:1 131:11 133:2 147:4 147:7 148:23 170:5 170:16 199:5 202:10 202:10 |
| **richard**(3) 2:7 6:5 22:8 | | **safe**(1) 158:2 | | **schuylkill**(1) 1:47 | | |
| **richards**(1) 2:43 | | **safer**(1) 46:2 | | **scope**(5) 45:15 47:14 160:12 160:12 175:2 | | |
| **riddled**(1) 146:12 | | **said**(55) 22:22 22:23 22:25 23:2 23:4 23:7 23:15 23:20 24:6 28:3 28:12 30:4 32:9 36:1 45:9 49:22 66:16 68:21 69:4 78:14 82:15 84:4 85:16 102:10 107:11 113:12 115:4 127:24 135:7 140:1 142:25 143:9 143:10 143:12 143:13 149:11 153:15 155:14 169:10 172:10 180:23 182:10 182:23 188:17 189:25 192:11 199:6 199:1 200:15 201:2 203:10 203:12 203:13 207:14 209:3 | | **scorecard**(1) 101:21 | | |
| **rifkind**(1) 7:45 | | | | **scotland**(1) 10:19 | | |
| **right**(63) 19:25 24:8 28:3 28:12 38:3 38:3 39:17 40:9 43:22 46:5 47:15 50:3 50:21 50:25 55:15 56:17 58:9 60:19 61:22 64:21 70:8 73:15 75:13 79:12 82:6 85:12 86:1 88:15 100:13 101:14 111:8 111:24 112:1 114:9 115:1 115:23 117:4 117:7 117:22 117:24 121:3 121:6 135:2 135:9 138:17 139:14 143:5 146:21 147:4 152:19 153:14 154:11 156:16 162:20 168:15 173:16 175:8 197:14 206:18 212:16 216:4 216:12 217:2 | | **scott**(3) 5:15 59:25 79:17 | | **sensitive**(4) 74:10 74:11 75:18 172:8 |
| | | | | **scrambling**(1) 204:11 | | **sent**(3) 91:6 136:25 192:18 |
| | | | | **scrutiny**(1) 190:16 | | **sentence**(22) 26:7 26:9 30:21 34:4 37:9 37:21 38:2 48:16 51:3 56:2 62:21 70:13 86:13 93:10 94:22 101:23 116:22 118:23 120:3 121:2 142:20 170:4 |
| | | | | **scuttled**(2) 83:1 189:12 | | |
| | | | | **search**(2) 27:3 187:4 | | |
| | | | | **seated**(2) 11:2 50:24 | | |
| | | | | **second**(18) 16:5 35:4 37:9 65:17 88:4 108:16 115:21 120:3 120:3 152:21 155:13 175:14 177:18 190:9 211:25 212:2 212:24 213:6 | | **sentences**(3) 19:10 113:10 146:9 |
| **rightfully**(1) 41:12 | | | | | | **senter**(2) 4:22 4:23 |
| **rightly**(1) 34:21 | | | | **secondary**(2) 172:1 174:7 | | **sentiments**(1) 108:2 |
| **rights**(3) 24:2 51:22 200:4 | | **sake**(1) 199:8 | | **seconds**(1) 149:6 | | **separate**(7) 12:14 12:15 44:4 69:7 69:9 133:24 160:6 |
| **riley**(3) 6:5 22:8 22:8 | | **sales**(1) 207:22 | | **secret**(3) 28:13 87:13 147:13 | | |
| **ring**(1) 125:22 | | **sally**(1) 4:24 | | **section**(15) 27:3 42:6 42:21 43:4 45:24 46:11 49:18 61:20 62:3 106:4 150:22 167:10 189:11 206:14 212:4 | | **separately**(3) 69:10 160:15 166:5 |
| **rise**(8) 11:2 33:9 50:24 78:14 145:21 151:4 157:22 197:19 | | **sam**(2) 22:16 23:23 25:13 26:11 | | | | **series**(3) 85:1 181:2 209:14 |
| | | **same**(30) 23:21 24:2 28:7 36:3 42:22 42:24 50:19 61:8 66:12 66:13 66:15 76:9 83:4 89:23 90:12 117:11 120:20 159:8 168:16 170:2 191:18 195:20 205:23 210:14 212:4 213:18 214:24 216:25 217:5 219:17 | | | | **serious**(3) 146:25 146:25 207:8 |
| | | | | **sections**(1) 14:17 | | **served**(2) 164:10 218:8 |
| | | | | **secured**(1) 21:19 | | **service**(1) 1:46 1:53 145:25 218:20 218:24 219:2 |
| **risk**(6) 78:19 94:24 119:6 119:7 123:20 128:17 | | **san**(1) 19:1 | | **securities**(15) 9:5 42:3 42:8 48:24 48:24 61:10 61:11 160:15 166:3 166:21 166:22 167:3 167:18 167:20 168:9 | | |
| | | **sanjana**(1) 10:23 | | | | **services**(1) 1:46 |
| | | **saquib**(1) 8:8 | | | | **sessions**(1) 44:4 |
| **risk-free**(2) 128:16 129:22 | | **sat**(1) 133:2 | | | | **set**(20) 12:15 20:17 71:15 76:18 87:13 94:9 107:11 138:21 170:11 170:25 174:8 175:25 179:16 185:24 195:11 203:16 203:23 214:4 214:5 215:2 |
| **river**(1) 155:11 | | **satisfaction**(1) 121:23 | | **see**(39) 12:2 15:14 15:20 18:13 21:21 23:14 27:4 35:17 35:20 45:15 47:5 55:7 55:9 55:9 58:10 68:11 90:23 94:18 107:21 114:11 131:13 138:16 140:19 141:19 145:15 152:9 156:21 170:13 177:16 192:6 197:3 197:9 198:7 200:12 200:22 212:9 212:13 212:17 | | |
| **rivera**(1) 2:17 | | **satisfactory**(2) 101:1 191:3 | | | | |
| **road**(1) 129:21 | | **satisfied**(1) 17:6 | | | | |
| **robert**(2) 2:44 201:1 | | **satisfies**(1) 168:2 | | | | **sets**(2) 93:6 127:1 |
| **roberts**(1) 9:4 | | **satisfy**(2) 48:7 74:2 | | | | **settle**(9) 31:23 31:24 66:18 92:21 93:1 93:24 175:16 177:24 184:24 |
| **rockefeller**(1) 2:22 | | **sausage**(1) 97:10 | | **seeing**(1) 209:16 | | |
| **rodney**(1) 2:45 | | **save**(1) 19:23 | | | | |
| **rogers**(1) 10:19 | | **saw**(2) 144:7 154:3 | | **seek**(12) 43:1 43:18 93:19 93:21 94:7 117:1 132:12 188:11 193:14 198:21 210:22 211:4 | | **settled**(6) 12:7 107:9 107:18 184:15 185:4 215:3 |
| **roitman**(1) 2:21 | | **say**(108) 12:3 12:19 15:1 17:15 22:23 22:25 23:6 23:8 23:14 23:21 23:24 25:7 25:21 29:9 29:18 29:22 37:1 41:17 44:8 45:11 48:10 48:16 49:4 51:7 52:2 52:20 53:7 54:7 54:13 65:4 65:5 65:10 66:17 67:5 68:17 68:17 69:5 70:24 72:23 74:20 75:15 78:15 78:16 82:20 82:21 84:6 86:13 91:15 94:3 98:25 99:7 100:2 103:1 103:17 106:15 111:9 111:12 111:17 111:20 113:17 113:22 114:14 117:12 118:5 118:7 121:15 121:20 121:21 123:5 124:11 124:17 125:1 129:16 130:1 130:2 131:21 132:11 132:19 133:18 133:19 133:20 133:21 134:21 136:14 137:2 138:10 139:9 142:5 142:23 147:7 155:9 158:2 169:14 173:8 173:9 173:12 182:8 186:5 193:21 194:23 195:2 197:15 198:17 205:3 206:25 207:9 207:11 210:11 | | | | |
| **role**(2) 86:21 146:8 | | | | **seeking**(19) 39:17 65:14 178:22 179:20 179:24 180:1 180:9 180:9 180:14 180:14 186:2 186:23 195:25 196:11 196:21 197:6 218:1 218:9 218:20 219:8 | | **settlement**(104) 32:5 32:11 32:13 32:16 40:17 51:25 54:9 54:12 54:17 57:6 57:10 64:19 64:22 64:25 65:4 65:20 66:8 66:10 66:13 66:15 66:18 66:24 66:25 67:12 67:13 69:1 69:6 69:12 71:20 73:5 77:10 79:7 79:8 79:9 81:6 81:7 81:10 81:13 81:15 81:17 81:25 82:4 82:8 82:12 82:14 82:14 83:12 83:15 83:25 84:9 84:15 84:17 84:19 86:4 93:3 93:9 94:20 94:21 95:2 95:4 96:10 96:11 96:17 96:22 96:23 97:1 97:4 97:10 98:4 99:4 99:24 100:1 100:8 100:14 100:15 103:11 103:14 104:4 104:18 106:6 106:10 108:18 109:8 109:12 110:13 113:24 137:17 139:18 147:15 147:24 147:25 152:6 158:21 158:21 159:4 159:11 161:24 165:4 165:9 168:23 185:3 185:20 190:15 206:14 |
| **rome**(1) 6:33 | | | | | | |
| **room**(7) 14:21 17:15 35:1 112:14 147:21 205:25 207:6 | | | | **seem**(4) 51:7 62:23 127:14 191:2 | | |
| | | | | **seemed**(1) 144:4 | | |
| **rose**(1) 70:2 | | | | **seemingly**(1) 93:9 | | |
| **rosenblatt**(1) 2:16 | | **saying**(11) 64:9 65:19 105:24 107:2 117:3 119:16 128:21 136:15 150:8 196:12 204:19 | | **seems**(16) 12:20 14:9 15:3 20:10 45:20 62:8 75:10 87:18 93:5 100:10 131:22 132:14 178:23 190:10 204:18 210:6 | | |
| **rosner**(1) 5:32 | | | | | | **settlements**(9) 51:23 53:17 53:20 165:16 176:20 177:10 177:19 178:2 186:13 |
| **rothschild**(1) 5:4 | | | | **seem**(19) 20:10 20:12 36:24 78:2 105:12 126:3 131:4 138:25 141:13 142:1 142:1 147:1 201:6 201:7 209:18 212:17 215:8 215:8 217:5 | | |
| **rotten**(1) 32:10 | | | | | | |
| **rough**(1) 68:16 | | | | | | **settles**(3) 27:18 79:9 93:17 |
| **roughly**(1) 57:7 | | **says**(47) 15:1 20:15 25:8 29:18 29:19 30:22 31:3 31:7 31:22 31:24 33:11 33:14 43:18 49:2 55:16 65:17 72:25 84:16 85:1 85:15 88:18 89:9 89:24 90:10 94:22 102:18 102:23 103:16 103:24 109:23 110:12 111:3 115:12 122:21 123:13 124:2 126:23 129:24 134:8 134:8 141:9 142:9 142:9 145:11 163:21 204:22 204:22 | | **sees**(1) 147:7 | | **settling**(3) 31:24 40:23 41:2 |
| **round**(2) 19:12 193:14 | | | | **seife**(15) 2:14 171:11 171:11 175:9 175:10 177:18 180:23 183:24 201:18 202:14 209:25 211:22 212:12 212:23 217:1 | | **seven**(7) 3:40 117:5 120:24 129:25 130:4 132:16 159:10 |
| **rounded**(1) 19:13 | | | | | | |
| **rounding**(1) 111:5 | | | | **selber**(1) 3:17 | | |
| **routinely**(1) 133:5 | | | | **seldom**(1) 78:15 | | **several**(11) 60:2 63:22 70:15 91:15 106:7 157:13 179:10 181:2 181:5 181:12 194:12 |
| **royal**(1) 10:19 | | | | **selective**(3) 15:7 86:23 132:5 | | |
| **rudiment**(1) 19:15 | | | | **self-evident**(1) 204:6 | | **severe**(1) 192:9 |
| **rudnick**(3) 3:37 7:24 197:16 | | | | **self-evidently**(1) 122:8 | | **shachar**(1) 9:31 |
| **rudy**(1) 153:1 | | | | **self-explanatory**(1) 20:6 | | |
| **rule**(20) 11:21 34:5 36:9 61:2 67:17 67:18 73:10 93:22 104:23 104:24 152:11 152:16 156:24 156:25 161:20 182:11 202:13 202:15 206:21 218:24 | | **scare**(1) 131:8 | | **sends**(2) 107:20 194:17 | | |
| | | **scenario**(4) 116:10 204:10 204:12 204:13 | | | | |
| **ruled**(2) 22:15 158:10 | | | | | | |
| **rules**(5) 76:24 84:12 126:20 130:22 218:24 | | | | | | |
| **ruling**(9) 29:21 30:2 43:4 43:10 43:14 62:2 101:7 210:20 211:13 | | | | | | |
| **rulings**(1) 157:15 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**shai**(1) 8:14
**shake**(2) 149:18 207:4
**shall**(3) 65:16 89:10 173:16
**shameful**(1) 156:12
**share**(6) 53:14 65:18 78:23 118:12 141:12 180:25

**shared**(2) 203:21 206:3
**shareholders**(4) 218:10 218:11 218:22
**shares**(7) 76:25 120:17 120:25 121:3 121:4 129:10 145:12

**sharing**(14) 65:14 65:22 65:23 66:3 66:5 66:16 69:2 78:24 79:1 79:3 162:1 162:2 165:11 190:7

**sheet**(2) 70:3 153:19
**sheets**(1) 156:1
**sheron**(1) 5:33
**sherri**(1) 220:19
**ship**(1) 154:2
**shocking**(2) 104:15 139:3
**shoe**(1) 196:5
**shooting**(1) 54:18
**short**(7) 125:7 138:10 157:1 197:16 197:19 203:17 216:6

**shorter**(2) 106:19 107:5
**shorthand**(2) 76:11 131:24
**shortly**(1) 218:1
**shot**(2) 172:10 207:8
**should**(109) 13:5 16:20 17:11 18:1 18:5 18:13 21:20 22:3 25:7 31:6 35:21 36:15 39:15 39:15 40:2 41:16 43:16 48:7 48:15 56:13 56:15 64:9 65:3 65:4 65:5 65:21 65:24 66:1 66:10 66:19 66:21 67:1 67:22 68:17 68:17 69:6 69:9 69:10 69:12 71:7 71:16 76:16 84:15 86:5 86:5 86:18 93:24 107:18 111:20 113:24 119:20 123:4 125:1 131:21 134:5 134:20 147:6 148:11 149:23 150:1 150:2 152:10 152:13 152:14 152:14 152:17 153:4 153:5 154:21 156:12 162:2 164:6 165:15 165:18 165:20 165:22 167:7 167:12 167:24 167:25 177:20 177:24 178:3 179:15 179:17 179:22 181:9 183:3 186:5 186:10 187:7 188:3 197:15 197:23 197:25 198:2 198:6 198:6 198:10 198:14 199:23 200:8 201:13 202:3 206:25 209:4 209:7 209:12 209:12 209:21

**shouldn't**(9) 45:12 96:15 107:15 119:11 125:11 125:12 125:12 132:7 188:3

**show**(6) 15:18 47:12 139:9 188:8 209:21 211:23

**showing**(3) 138:5 183:2 183:4
**shown**(2) 149:19 193:25
**shows**(4) 207:5 214:5 214:7 217:3
**sic**(3) 126:16 127:18 153:15
**side**(6) 12:16 12:18 19:21 23:18 153:14 208:3

**sides**(1) 158:4
**sidley**(6) 1:25 7:9 11:5 180:21 192:23 219:22

**siegel**(1) 3:39
**signal**(1) 97:4
**signed**(8) 78:9 99:6 99:8 109:9 154:4 199:21 212:22 217:20

**significance**(1) 144:25
**significant**(6) 70:15 118:1 134:3 158:7 158:14 194:3

**silver**(1) 9:49

**silverstein**(35) 3:17 5:45 20:3 20:4 20:9 135:6 135:10 135:11 138:14 138:16 139:3 139:5 139:8 140:10 141:23 141:24 142:16 148:19 149:6 149:10 149:14 150:11 150:13 161:1 161:6 161:11 164:14 164:17 169:7 169:10 169:13 169:15 169:16 169:20 169:22

**silverstein's**(1) 142:23
**simes**(1) 8:19
**similar**(4) 53:2 56:21 162:16 186:8
**similarities**(1) 160:11
**similarly**(4) 12:22 26:4 147:11 206:22
**simple**(4) 26:7 26:9 68:11 79:11
**simplicity**(1) 15:24
**simplify**(1) 63:24
**simply**(33) 16:19 19:2 26:2 26:6 26:10 27:12 29:16 37:18 52:2 74:22 75:1 77:19 84:1 86:24 121:15 127:8 138:10 146:20 146:21 148:14 148:14 148:16 156:10 163:21 170:14 184:4 188:8 198:2 204:15 207:9 207:10 208:10 219:3

**since**(13) 11:12 24:1 55:24 61:13 89:17 91:6 91:8 108:9 157:13 158:25 190:17 205:17 209:20

**sincerely**(1) 69:14
**single**(10) 63:21 76:17 76:18 76:18 125:6 147:19 147:19 195:4 197:3 215:5

**single-spaced**(1) 109:6
**sir**(1) 130:17
**sit**(1) 146:1
**sitting**(3) 170:24 201:20 209:20
**situation**(4) 123:18 124:14 126:15 156:17
**six**(25) 32:3 32:4 64:21 83:2 83:6 83:8 84:6 85:17 85:17 85:18 85:22 85:24 86:2 103:19 103:20 103:21 104:1 104:2 104:5 109:3 113:13 113:20 129:18 159:7 189:15

**sixteen**(1) 179:9
**sixteen-and-a-half-million**(1) 213:17
**sixty-five**(2) 129:1 129:6
**size**(1) 116:5
**skate**(1) 206:20
**skin**(2) 73:25 146:18
**skip**(1) 99:15
**sleep**(1) 48:17
**sleeping**(1) 114:4
**slice**(1) 95:12
**slightly**(5) 13:1 71:7 75:13 88:25 89:8 99:8 123:2 126:21 212:3

**sling**(2) 28:16 32:22
**slinging**(1) 28:17
**slots**(1) 154:13
**slow**(1) 169:16
**small**(4) 116:15 123:14 158:6 214:19
**smaller**(2) 34:4 208:3
**smith**(14) 17:18 17:20 18:6 18:12 20:13 20:14 106:16 107:16 122:18 123:13 124:6 124:21 125:4 142:11

**smith's**(1) 135:15
**so-called**(2) 194:3 205:17
**sold**(3) 67:24 155:10 204:11
**solicitation**(13) 15:15 15:17 15:19 144:20 152:18 157:17 164:8 171:5 172:15 172:17 172:20 174:10 174:14

**solution**(3) 112:11 196:3 196:4
**solve**(2) 29:13 37:18
**solved**(2) 46:7 211:12
**solvent**(5) 87:24 109:25 110:3 10:18

**some**(83) 11:9 14:17 17:10 17:14 18:13 19:10 19:18 21:23 22:20 22:23 23:18 28:8 28:9 29:9 32:23 32:23 34:19 38:17 38:1 38:25 39:16 43:12 43:13 47:23 49:16 50:4 51:9 52:12 54:19 56:18 63:6 72:15 96:7 101:8 101:11 110:10 111:6 111:13 117:9 117:18 123:10 123:10 125:3 135:25 136:6 140:5 140:5 141:2 141:10 146:2 147:7 148:2 151:24 155:13 155:20 156:23 156:2 159:25 160:11 162:15 163:15 163:16 164:3 172:4 178:23 179:4 179:25 180:2 182:13 184:7 193:9 193:10 201:6 202:8 202:10 202:18 205:24 206:23 207:4 217:2 218:15 218:22 219:23

**somebody**(3) 11:9 134:9 138:12
**somebody's**(2) 89:20 134:1
**somehow**(9) 39:14 41:24 44:21 95:11 100:12 110:12 117:6 118:1 119:19

**someone**(4) 39:18 102:11 119:9 131:7
**someone's**(1) 53:16
**something**(34) 16:17 23:12 28:4 28:11 32:8 41:16 43:19 45:9 49:17 50:11 59:15 74:25 95:19 96:14 99:7 99:19 99:23 102:10 113:4 124:20 128:16 129:9 130:24 163:17 172:17 173:6 173:7 175:20 178:8 179:9 189:23 193:7 210:13 210:22

**sometimes**(3) 21:22 197:7 205:10
**somewhat**(7) 54:18 59:2 86:17 89:21 141:15 178:22 213:1

**somewhere**(5) 36:25 129:2 162:12 170:4 184:7

**soon**(2) 91:20 123:11
**sophisticated**(6) 14:13 16:12 17:14 18:15 59:12 189:6

**sophistication**(3) 16:7 17:13 17:21
**sorry**(14) 17:13 27:5 40:24 51:1 53:12 73:12 83:10 88:10 88:14 110:24 146:10 157:12 160:10 173:2

**sort**(12) 19:14 43:13 45:8 59:13 59:15 126:1 138:24 145:17 145:19 146:21 148:9 175:4

**sorts**(1) 138:17
**sottile**(13) 2:27 175:14 212:25 213:3 213:3 215:10 216:10 216:15 216:25 217:8 217:19 217:23 218:3

**sought**(9) 177:4 177:7 183:23 183:25 185:25 186:1 188:7 201:25 210:24

**sound**(2) 1:52 220:14
**sounded**(1) 211:6
**sounds**(2) 32:19 178:12
**source**(2) 49:12 127:7
**south**(3) 1:31 4:40 5:40
**spaeder**(3) 2:26 175:14 213:4
**speak**(4) 15:12 70:5 97:18 207:20
**speaking**(2) 41:3 41:15
**speaks**(1) 206:5
**special**(4) 10:7 48:9 200:7 213:4
**specific**(56) 12:17 14:7 14:15 14:17 14:19 14:24 16:2 16:13 18:3 19:19 20:5 20:20 28:9 28:15 29:2 29:14 30:1 30:15 31:11 33:9 36:4 36:16 37:7 45:22 47:11 57:3 58:16 60:4 60:16 60:17 78:22 80:4 80:14 80:23 85:9 87:2 87:8 92:15 94:15 98:11 105:22 106:5 106:12 108:22 109:5 109:20 128:9 145:3 145:23 156:7 167:9 188:24 203:10 204:1 205:20

**specifically**(4) 25:24 49:1 57:5 186:2
**specify**(1) 111:19
**speculate**(1) 77:22
**speculation**(1) 202:24

**spend**(3) 13:3 105:2 182:6
**spent**(5) 108:7 181:15 194:8 197:24 200:24
**spill**(1) 186:21
**spirit**(1) 115:3
**spit**(1) 70:1
**split**(1) 56:22
**spoke**(1) 156:6
**spoken**(1) 11:14
**spot**(1) 72:1
**sprang**(1) 181:20
**spread**(3) 57:21 58:19 59:7
**sprinkled**(1) 120:5
**squander**(1) 200:11
**square**(3) 2:45 3:40 6:21
**staged**(1) 172:20
**stake**(2) 121:8 121:9
**stand**(10) 20:19 77:6 92:3 99:2 150:17 157:10 157:20 166:1 197:5 210:23

**standard**(8) 113:6 130:18 130:22 148:23 148:24 204:13 205:7 206:14

**standards**(3) 16:6 193:11 214:5
**standing**(42) 99:21 99:23 157:3 157:17 157:18 171:4 171:10 171:12 172:8 173:16 175:13 175:16 176:1 176:15 177:5 177:22 178:11 178:13 179:1 179:20 179:24 180:14 182:10 182:11 183:19 183:23 185:23 186:5 195:3 206:6 209:4 212:24 213:6 213:8 213:11 213:19 214:3 215:1 215:7 216:19 217:2 217:6

**standpoint**(1) 211:11
**stanley**(7) 5:38 8:12 89:22 89:25 90:2 90:5 100:19

**star**(2) 145:19 153:9
**stargatt**(1) 4:29
**stark**(1) 105:12
**starks**(1) 201:1
**start**(7) 13:6 40:6 55:12 74:10 123:10 163:11 164:18

**started**(5) 34:25 177:10 179:25 190:5 193:12

**starting**(2) 118:23 181:10
**starts**(1) 37:8
**state**(12) 25:5 31:13 65:13 65:24 67:1 72:13 104:21 128:20 152:18 162:1 173:25 183:21

**stated**(4) 54:4 70:23 118:24 192:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| statement(171) | 12:8 14:6 14:19 18:7 18:8 18:12 20:2 24:23 25:5 25:8 25:20 25:25 26:4 26:8 26:12 26:13 27:1 28:1 28:3 28:8 29:2 29:8 29:14 30:13 31:12 31:13 31:22 32:2 32:12 33:10 33:18 33:23 35:1 35:9 36:1 36:2 36:5 36:13 36:14 36:17 37:7 37:24 38:7 38:8 38:10 38:13 38:14 43:24 51:2 52:10 53:3 53:4 53:5 54:13 54:24 55:4 55:5 56:14 60:5 60:16 60:17 61:6 61:7 61:6 63:19 63:23 64:8 65:8 68:6 68:21 70:12 70:22 78:2 80:4 80:12 80:14 80:24 82:16 82:19 84:18 85:10 85:15 86:11 87:8 90:11 90:13 92:13 92:15 95:21 95:22 95:25 97:6 97:18 97:22 98:11 100:11 100:20 100:22 102:1 102:24 103:4 103:13 103:16 103:24 105:20 105:2 106:5 106:12 108:22 108:23 109:3 109:5 109:13 109:21 110:1 112:11 113:7 115:7 116:2 117:8 118:18 118:19 119:22 122:4 122:8 122:15 124:11 124:17 126:12 126:2 128:10 128:12 131:15 134:13 135:24 136:24 137:1 137:9 138:11 139:12 140:9 140:11 143:14 145:4 145:6 145:13 147:12 151:5 151:22 152:24 153:8 154:6 156:7 156:11 157:14 161:2 161:4 161:7 161:16 163:20 164:12 164:16 164:25 168:17 169:11 169:18 181:11 182:12 202:9 204:2 | stephen(1) | 3:18 | succeed(6) | 22:19 24:23 25:24 26:13 30:22 31:4 | takeaway(1) | 77:3 |
| | | steps(1) | 76:9 | | | taken(7) | 16:23 16:25 50:23 80:21 92:4 103:9 154:17 |
| | | stick(1) | 206:18 | | | | |
| | | still(22) | 17:5 36:8 40:7 40:14 79:16 83:8 83:18 83:19 84:8 97:21 98:23 99:25 144:22 147:24 152:7 156:20 167:24 172:1 172:25 189:23 193:23 219:25 | successful(3) | 167:1 167:22 195:10 | takes(4) | 124:13 141:2 158:14 202:15 |
| | | | | such(26) | 20:12 25:13 27:5 37:13 39:22 43:18 48:21 56:4 93:1 93:2 97:7 116:8 128:6 135:21 137:19 138:5 145:15 149:19 156:10 184:18 185:2 193:15 199:22 209:2 209:24 212:7 | taking(6) | 56:11 86:23 153:7 155:7 193:4 206:25 |
| | | | | | | talk(11) | 11:13 52:2 82:18 91:9 96:5 99:17 104:19 146:7 155:24 166:1 199:18 |
| | | stock(8) | 41:20 41:21 43:3 116:16 116:18 120:19 122:3 129:13 | | | talked(5) | 16:6 44:11 106:24 150:23 161:19 |
| | | | | sue(3) | 182:12 202:11 203:14 | talking(11) | 33:24 55:3 55:5 55:17 69:15 102:4 146:23 156:22 197:24 204:2 204:8 |
| | | stood(3) | 198:12 201:1 203:11 | sued(2) | 24:12 194:15 | | |
| | | stop(3) | 19:25 23:16 126:18 | suffered(1) | 36:2 | | |
| | | story(2) | 18:9 23:19 | sufficient(2) | 27:5 73:25 | talks(3) | 88:4 94:20 204:6 |
| | | straight(2) | 12:16 112:17 | suggest(17) | 15:11 30:13 52:18 54:5 73:1 85:22 104:23 105:15 117:20 119:3 121:21 127:11 148:19 179:19 181:20 190:11 196:11 | tally(1) | 192:16 |
| | | straightforward(2) | 93:5 135:14 | | | task(1) | 103:9 127:25 128:4 |
| | | strange(2) | 43:8 124:20 | | | taylor(1) | 4:29 |
| | | strategic(2) | 199:19 199:22 | | | technical(2) | 54:23 89:21 |
| | | strategy(1) | 32:7 | suggested(6) | 21:5 82:7 147:3 168:1 201:8 209:25 | teed(1) | 209:9 |
| statements(84) | 12:15 12:17 13:16 14:7 14:16 14:18 14:19 14:22 14:25 15:25 16:6 16:15 18:4 20:20 24:15 25:17 28:15 29:2 29:3 29:15 29:23 30:2 30:2 30:15 30:16 34:14 51:20 67:22 70:23 80:5 85:11 87:2 87:3 95:23 102:6 105:23 106:14 106:19 112:8 112:13 112:18 112:18 113:10 114:1 114:21 114:22 125:4 128:10 128:13 130:20 130:24 131:5 131:15 133:16 142:9 145:21 145:23 147:5 147:5 147:9 147:11 148:24 151:6 154:17 157:2 159:24 159:25 160:6 161:5 163:9 163:10 163:11 163:13 163:16 163:17 163:22 163:25 164:24 164:23 165:10 167:9 170:17 197:25 | strauss(4) | 4:12 8:39 10:11 183:16 | | | telephone(3) | 19:5 192:20 192:21 |
| | | street(19) | 1:12 1:38 1:47 2:8 2:29 2:46 3:20 3:33 3:46 4:25 4:32 5:8 5:24 5:40 6:7 6:13 6:22 6:35 6:42 | suggesting(3) | 16:22 25:1 210:23 | telephonic(2) | 7:1 8:1 9:1 10:1 |
| | | | | suggestion(11) | 29:24 31:19 32:19 55:22 101:24 105:17 112:23 131:17 164:2 176:5 178:5 | tell(16) | 11:16 11:24 15:2 42:2 45:22 56:13 63:3 67:10 68:1 68:2 68:2 104:4 104:12 113:18 143:9 209:14 |
| | | stricken(1) | 110:10 | | | | |
| | | strike(3) | 87:3 121:5 177:12 | | | | |
| | | strikes(2) | 177:16 206:7 | suggests(1) | 177:23 | telling(3) | 75:9 119:11 124:8 |
| | | stripes(1) | 131:5 | suit(2) | 182:14 204:23 | tells(1) | 18:9 |
| | | strong(2) | 118:24 202:15 | suitable(1) | 195:7 | tempted(1) | 113:4 |
| | | struck(3) | 14:14 119:20 203:8 | suite(10) | 1:39 2:8 2:30 3:33 3:46 4:41 5:9 6:6 6:36 | ten(2) | 11:20 12:19 |
| | | structure(2) | 17:24 18:20 | | | tend(1) | 100:13 |
| | | structured(1) | 152:2 | | | tens(2) | 127:2 140:21 |
| | | stuck(2) | 110:22 133:12 | | | tenth(1) | 152:25 |
| | | studied(1) | 133:23 | sullivan(2) | 3:31 3:32 | term(10) | 52:16 73:10 90:15 153:19 154:13 156:1 167:16 167:19 175:18 177:6 |
| | | stuff(2) | 111:13 127:12 | sum(1) | 48:6 | | |
| | | styled(1) | 44:15 | summarize(1) | 15:25 | | |
| states(6) | 1:1 1:21 37:9 42:25 92:19 121:19 | subject(11) | 42:9 59:20 67:17 90:2 90:2 104:16 165:16 194:5 194:20 199:1 210:5 | summarized(1) | 133:15 | terminology(1) | 128:6 |
| | | | | summary(2) | 33:15 86:13 | terms(48) | 15:24 16:11 16:24 17:2 21:25 23:18 24:19 45:7 57:21 58:19 59:11 63:6 64:20 67:14 68:16 68:18 74:11 76:5 79:3 96:12 98:4 101:16 111:6 149:21 153:24 157:13 158:14 158:23 159:17 163:8 168:17 169:24 170:7 170:22 171:5 172:4 172:19 172:20 173:3 174:25 177:6 177:7 177:9 178:20 204:1 206:3 213:15 214:24 |
| stating(2) | 37:22 153:3 | subjects(1) | 215:6 | supervision(2) | 202:19 203:2 | | |
| status(5) | 26:4 130:13 185:13 185:15 219:18 | sublime(1) | 120:1 | supplement(1) | 84:3 | | |
| statute(4) | 27:2 197:9 198:24 211:2 | submit(7) | 217:12 77:16 78:8 104:20 164:9 170:17 216:16 | supplemental(3) | 25:5 25:7 26:10 | | |
| statutes(1) | 192:16 | | | supplements(1) | 14:8 | | |
| statutory(1) | 198:20 | submittal(1) | 26:10 | support(10) | 77:12 97:9 104:18 108:14 135:23 142:8 144:2 197:20 208:20 216:13 | | |
| stay(3) | 46:2 69:22 190:24 | submitted(7) | 15:8 167:15 170:12 174:23 175:6 211:24 214:4 | | | | |
| stayed(1) | 186:18 186:11 215:1 218:5 | | | | | terrible(1) | 32:17 |
| stearn(1) | 2:44 | | | supportable(1) | 115:5 | test(2) | 70:25 148:21 |
| steel(1) | 203:18 | subordinate(1) | 42:17 | supported(2) | 73:5 117:8 | testimony(2) | 172:3 183:11 |
| stein(1) | 5:31 | subordinated(10) | 49:1 49:14 61:11 166:22 167:3 167:6 167:18 167:20 167:24 168:9 | supporting(2) | 103:11 103:14 | text(1) | 110:9 |
| step(158) | 6:11 13:15 25:19 26:2 28:9 30:19 31:1 31:5 31:5 31:6 31:6 34:13 34:19 35:3 35:4 36:1 36:17 37:7 37:12 37:12 37:16 37:17 37:21 38:4 38:6 38:8 38:12 39:16 39:25 41:5 42:22 43:24 44:7 51:2 53:18 63:13 63:18 64:2 64:3 64:3 64:4 64:10 64:11 64:12 64:13 64:19 64:19 64:20 64:21 64:22 65:1 65:1 65:1 65:2 65:6 65:11 65:11 65:20 65:20 66:2 66:4 66:4 66:10 66:19 66:19 66:24 66:25 67:1 67:2 67:3 67:5 67:6 67:11 67:15 68:8 68:16 68:25 69:1 69:2 69:3 69:8 69:12 69:15 69:15 69:19 70:5 71:3 71:3 73:24 75:23 75:23 76:3 76:4 76:5 76:5 76:10 76:14 76:15 77:6 77:6 77:7 77:13 77:24 77:24 78:13 78:21 78:25 79:9 79:9 81:11 81:12 82:8 82:9 94:20 94:21 94:23 94:25 95:1 95:2 95:3 95:6 95:8 95:10 95:11 96:11 96:13 96:14 101:15 112:4 112:9 117:16 117:17 118:4 159:5 159:6 159:8 159:8 160:10 161:22 161:24 161:25 162:23 163:1 165:10 165:10 165:1 168:23 168:23 169:2 169:2 174:3 187:16 201:14 205:12 207:23 | subordinates(1) | 42:5 | supports(1) | 122:21 | | |
| | | subordinating(2) | 42:12 61:25 | suppose(3) | 20:19 106:13 130:7 | than(67) | 13:10 16:9 18:8 19:17 24:4 29:5 32:5 36:5 37:22 41:14 42:15 42:19 44:6 52:22 56:23 59:15 62:9 63:16 65:17 66:7 67:2 67:18 67:23 69:15 73:17 75:5 75:8 75:13 79:25 82:10 85:24 86:3 91:24 97:5 99:14 100:16 104:3 107:3 108:24 110:3 113:17 124:3 126:3 131:2 131:6 131:14 132:2 139:12 141:19 152:10 153:22 154:15 158:3 158:12 160:5 160:8 172:2 172:22 174:9 174:15 181:12 192:5 200:19 200:24 204:5 204:14 214:11 |
| | | subordination(7) | 42:9 42:14 42:19 49:11 60:8 60:13 160:13 | supposed(3) | 17:11 104:11 119:17 | | |
| | | subparagraph(1) | 42:7 | supposed(3) | 30:11 104:11 119:17 | | |
| | | subpoenas(1) | 218:9 | | | | |
| | | subs(3) | 57:8 57:9 140:1 | surprised(1) | 50:13 | | |
| | | subsection(1) | 143:2 | surprising(1) | 104:14 | | |
| | | subsequent(1) | 94:7 103:4 192:20 | surprisingly(2) | 153:23 185:18 | | |
| | | subsidiaries(24) | 52:21 53:1 53:1 54:1 54:10 54:16 56:12 57:23 60:10 61:11 61:14 61:16 61:17 62:5 80:21 83:6 83:22 83:24 135:20 160:16 167:2 168:12 189:1 | suspect(3) | 40:7 63:20 144:14 | suttonbrook(1) | 8:31 |
| | | | | sustained(3) | 36:10 36:12 159:25 | sutty(1) | 5:6 |
| | | | | suttonbrook(1) | 8:31 | swap(13) | 67:7 71:4 87:7 87:12 87:14 87:17 87:22 89:1 100:17 109:19 109:23 110:2 110:4 |
| | | subsidiary(22) | 56:23 58:20 59:1 59:7 82:7 89:2 119:15 122:12 137:4 137:7 137:15 137:18 138:1 139:20 140:4 140:13 140:23 142:24 153:25 166:21 181:25 182:3 | sure(31) | 20:5 24:3 27:21 27:22 49:6 49:9 49:19 50:2 50:12 50:12 50:14 58:10 63:9 79:14 80:6 85:11 103:23 108:11 123:6 124:10 125:18 127:4 127:5 128:3 132:5 141:12 161:1 170:1 171:22 191:4 212:7 | sweetwater(1) | 153:1 |
| | | | | | | swords(3) | 12:19 13:19 143:12 |
| | | | | surprised(1) | 50:13 | system(1) | 212:6 |
| | | substance(3) | 32:12 32:13 136:16 | surprisingly(2) | 153:23 185:18 | | |
| | | substantial(4) | 121:12 130:1 130:2 130:5 | suspect(3) | 40:7 63:20 144:14 | tabak(1) | 9:4 |
| | | substantially(2) | 67:2 120:18 | sustained(3) | 36:10 36:12 159:25 | table(5) | 124:5 124:23 125:20 178:20 182:5 |
| | | substantive(3) | 103:5 178:14 218:15 | suttonbrook(1) | 8:31 | tactical(2) | 188:7 188:10 |
| | | substantively(1) | 155:15 | sutty(1) | 5:6 | take(45) | 13:5 14:1 32:18 44:17 50:21 54:11 59:7 67:3 76:1 76:20 77:1 81:2 82:25 91:19 97:11 105:16 108:21 113:1 119:10 119:12 120:6 125:7 127:12 128:22 128:25 129:3 132:20 132:23 149:11 151:22 153:11 156:18 158:3 165:6 170:10 173:10 178:24 180:15 182:11 182:15 193:12 196:4 196:5 204:3 207:11 |
| | | subtract(2) | 81:24 216:1 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **thank**(115) 18:22 20:21 22:12 24:9 26:19 26:20 28:23 30:17 31:14 33:3 33:4 33:24 33:25 35:10 35:12 37:5 38:2 38:21 40:9 43:25 44:1 50:21 51:12 52:9 56:17 59:24 60:19 60:20 61:1 61:4 62:14 69:16 69:17 70:9 72:5 72:6 76:1 78:11 78:12 79:11 79:12 79:19 80:1 85:5 88:12 88:13 91:3 92:2 92:3 92:7 96:2 98:1 98:2 98:8 107:23 107:24 107:25 112:2 112:3 112:21 114:18 115:19 115:25 119:16 122:5 125:16 126:10 130:10 133:5 133:6 134:17 134:24 135:10 139:16 141:23 142:15 142:18 143:8 149:5 149:12 149:14 151:17 155:18 156:13 161:11 162:4 163:3 168:5 168:14 168:15 169:5 170:21 173:11 173:21 174:17 174:20 175:8 183:13 183:15 197:12 197:13 201:17 203:7 208:13 211:17 212:22 213:2 216:4 217:10 217:19 219:11 219:12 220:3 220:6 220:9 | | **that**(301) 54:11 54:15 54:17 54:19 54:20 54:24 55:12 55:22 56:8 56:10 56:11 56:11 56:14 56:20 56:20 56:24 56:25 57:4 57:7 57:12 57:13 57:15 57:25 58:3 58:10 58:13 58:15 58:18 58:21 58:22 58:24 58:25 59:1 59:8 59:10 59:10 59:13 59:15 59:20 60:3 60:5 60:9 60:13 60:13 60:14 60:15 60:23 60:25 61:17 61:18 61:19 61:22 62:4 62:11 62:12 62:21 62:23 63:3 63:5 63:7 63:8 63:9 63:12 63:15 63:16 63:18 64:9 64:16 64:18 64:23 64:24 64:24 65:3 65:5 65:13 65:17 65:21 65:24 65:24 66:2 66:20 66:21 66:24 67:1 67:11 67:22 67:25 67:25 68:21 68:22 68:24 68:25 69:20 70:6 70:10 70:22 71:2 71:8 71:9 71:10 71:15 71:17 71:19 71:20 72:13 72:16 73:1 73:1 73:8 73:9 73:15 73:16 74:1 74:2 74:2 74:3 74:14 74:16 74:25 75:1 75:1 75:5 75:6 75:6 75:12 75:19 75:21 75:25 76:1 76:7 76:13 76:14 76:15 76:20 76:21 76:24 76:25 77:2 77:3 77:4 77:5 77:7 77:14 77:16 77:16 77:18 77:21 77:23 78:8 78:8 78:16 78:23 79:4 79:11 79:16 79:18 79:20 79:24 80:9 80:15 80:24 81:1 81:2 81:7 81:9 81:9 81:12 81:12 81:14 81:15 81:18 82:2 82:3 82:9 82:11 82:16 82:19 82:20 82:23 83:9 83:11 83:14 83:17 83:22 83:22 84:7 84:8 84:12 84:19 84:20 84:22 85:12 85:16 85:20 85:22 86:2 86:2 86:4 86:6 86:8 86:8 86:10 87:4 87:13 87:15 87:18 87:21 88:1 88:8 89:7 89:8 89:17 89:17 90:1 90:8 90:19 90:4 90:5 90:6 90:7 90:12 90:14 90:19 90:20 91:14 91:17 91:17 92:9 92:12 92:16 92:19 92:22 93:2 93:5 93:11 93:12 93:13 93:14 93:18 93:20 94:2 94:6 94:6 94:8 94:9 94:10 94:11 94:12 94:17 94:20 95:5 95:7 95:14 95:17 95:18 96:12 96:14 96:18 96:19 96:24 96:24 96:25 97:2 97:4 97:5 97:8 97:12 97:16 97:18 97:21 97:21 98:5 98:9 98:12 98:14 98:15 98:15 98:18 98:24 99:6 99:13 99:14 99:15 99:17 99:19 99:23 99:25 100:5 100:7 100:12 100:13 100:19 100:22 100:2 101:1 101:3 101:3 101:4 101:6 101:7 | **that**(301) 101:9 101:13 101:15 101:21 101:22 101:24 101:25 102:2 102:4 102:5 102:9 102:14 102:15 102:15 102:17 102:17 102:19 102:23 102:25 103:13 103:14 103:16 103:18 103:18 103:19 103:20 103:21 103:23 103:23 103:25 104:2 104:4 104:8 104:12 104:13 104:13 104:13 104:11 104:15 104:17 104:17 104:20 104:21 104:22 104:23 104:23 104:24 105:4 105:1 105:12 105:15 105:16 105:17 105:24 105:25 106:1 106:8 106:11 106:11 106:18 106:20 106:25 107:13 107:14 107:15 107:17 107:19 108:3 108:9 108:13 108:14 108:18 108:21 108:21 109:3 109:4 109:5 109:7 109:9 109:10 109:13 109:19 109:23 109:23 110:1 110:1 110:1 110:2 110:3 110:6 110:7 110:12 110:12 110:12 110:16 110:18 110:22 111:4 111:5 111:7 111:7 111:12 111:12 111:17 111:19 111:20 112:5 112:8 112:11 113:3 113:6 113:12 113:15 113:20 114:6 114:11 114:13 114:19 114:22 114:21 115:4 115:4 115:11 115:16 115:17 116:4 116:17 117:3 117:6 117:6 117:8 117:18 117:21 118:1 118:5 118:7 118:12 118:12 118:25 119:3 119:9 119:18 119:19 119:19 120:16 121:2 121:5 121:16 121:17 121:19 121:21 121:21 121:22 121:22 121:23 122:5 122:12 122:21 122:22 123:6 123:6 123:7 123:8 123:22 123:23 124:3 124:4 124:5 124:8 124:10 124:10 124:11 124:12 124:17 124:17 124:18 124:18 124:23 125:1 125:3 125:5 125:9 125:11 125:13 125:13 125:16 125:16 125:24 125:22 126:2 126:7 126:15 126:20 127:25 128:10 128:14 128:14 128:15 128:16 128:19 128:20 128:20 128:24 128:25 129:2 129:10 129:13 129:16 129:1 129:17 129:19 129:20 130:2 130:2 130:3 130:5 130:6 130:15 130:19 130:23 130:24 131:2 131:3 131:13 131:18 132:7 132:11 132:12 132:14 132:14 132:19 132:21 132:24 133:4 133:13 133:17 134:1 134:2 134:4 134:6 134:7 134:10 135:20 136:1 136:8 136:16 136:19 136:21 137:1 137:14 137:25 138:2 138:7 138:15 138:17 138:19 139:11 139:19 139:21 139:22 139:23 139:25 140:3 140:6 140:6 140:13 140:21 140:22 140:22 140:23 140:24 141:7 141:7 141:8 141:9 141:10 141:11 141:13 141:18 141:18 142:6 142:9 142:9 142:23 142:25 143:1 143:2 143:3 143:4 143:6 143:7 143:9 | **that**(301) 143:11 143:16 143:21 143:23 144:2 144:5 144:7 144:17 144:18 144:22 145:1 145:4 145:5 145:6 145:12 145:12 146:2 146:2 146:6 146:11 146:14 146:20 146:22 146:22 146:23 146:25 147:3 147:6 147:9 147:12 147:14 147:15 147:15 147:18 147:19 147:20 147:21 147:24 147:25 148:1 148:2 148:2 148:2 148:5 148:6 148:7 148:10 148:18 148:20 148:20 148:20 148:21 148:22 148:23 148:24 149:2 149:3 149:3 149:15 149:17 149:18 149:19 149:28 149:24 150:5 150:9 150:13 150:18 150:21 150:23 150:25 151:6 151:13 151:14 151:28 151:24 151:25 152:1 152:3 152:4 152:5 152:6 152:8 152:20 153:3 153:5 153:9 153:10 153:15 153:17 153:24 154:4 154:7 154:7 154:12 154:13 154:15 154:15 154:21 155:8 155:9 155:10 155:11 155:13 155:16 155:17 156:8 156:21 156:21 157:1 157:4 157:24 157:25 158:2 158:4 158:5 158:5 157:24 157:25 158:2 158:4 158:5 158:5 158:9 159:6 159:12 159:14 159:20 159:25 160:16 160:19 160:22 161:2 161:3 161:4 161:4 161:4 161:7 161:7 161:8 161:15 161:15 161:18 161:19 161:20 162:2 162:10 162:14 162:19 162:21 163:4 163:14 163:15 163:16 163:17 163:18 163:20 163:20 163:21 163:23 163:25 164:1 164:2 164:2 164:9 164:9 164:14 164:23 164:25 165:15 165:17 165:22 166:6 166:9 166:10 166:10 166:14 166:17 166:23 166:25 167:4 167:7 167:8 167:11 168:11 168:16 168:22 168:23 169:9 169:17 169:24 170:1 170:9 170:11 170:11 170:15 170:16 170:25 171:17 171:18 172:1 172:3 172:4 172:5 172:8 172:9 172:10 172:15 172:17 172:19 173:4 173:5 173:7 173:14 173:18 174:4 174:6 174:8 174:10 174:16 174:22 174:22 175:4 175:5 175:21 175:22 175:22 176:1 176:2 176:14 176:17 176:17 176:20 177:4 177:6 177:8 177:10 177:11 177:16 177:18 177:19 177:23 177:23 177:24 178:3 178:5 178:6 178:8 178:20 178:25 179:1 179:13 179:15 179:19 179:22 179:22 179:24 180:2 180:15 180:25 181:2 181:5 181:20 181:23 181:24 181:25 182:4 182:5 182:8 182:9 182:14 182:22 182:23 182:24 182:25 182:25 183:1 183:3 183:4 183:5 183:7 183:9 183:12 183:24 184:2 184:5 184:16 184:21 184:23 184:25 185:3 185:5 185:5 185:8 185:8 185:13 185:25 186:3 186:10 187:1 187:9 187:9 187:11 187:13 187:15 187:17 187:23 |
| **thanks**(3) 118:14 141:21 151:1 | | | | | | | |
| **thanksgiving**(1) 35:23 | | | | | | | |
| **that**(301) 11:7 11:16 11:20 11:22 12:6 12:18 12:20 12:23 12:23 12:25 14:3 14:5 14:11 14:14 14:16 14:18 14:20 14:23 15:7 15:2 15:3 15:7 15:9 15:11 15:19 15:20 16:3 16:4 16:8 16:10 16:12 16:13 16:14 16:16 16:16 16:24 17:3 17:4 17:4 17:5 17:10 17:12 17:15 17:20 17:23 17:24 18:5 18:11 18:12 18:16 18:17 18:18 18:20 18:25 19:6 19:7 19:13 19:17 19:18 19:20 19:21 19:22 19:22 20:10 20:12 20:15 20:18 20:22 21:5 21:7 21:11 21:11 21:19 21:23 21:24 22:1 22:2 22:4 22:6 22:14 22:17 22:20 22:21 22:21 22:25 23:8 23:15 23:12 23:16 23:18 23:20 23:24 23:25 24:1 24:4 24:7 24:21 25:1 25:15 25:22 25:24 25:24 26:1 26:5 26:5 26:9 26:10 26:11 27:5 27:9 27:10 27:12 27:17 28:8 28:10 28:19 28:19 29:5 29:7 29:11 29:12 29:14 29:21 29:21 29:21 30:3 30:9 30:9 30:10 30:11 30:11 30:22 30:23 30:24 31:3 31:4 31:5 31:7 31:8 31:21 31:22 31:23 31:24 32:2 32:3 32:6 32:7 32:12 32:12 32:13 32:14 32:15 32:16 32:17 32:20 32:25 33:2 33:9 33:12 34:2 34:4 34:5 34:5 34:10 34:11 34:19 35:1 35:21 36:2 36:2 36:3 36:6 36:7 36:7 36:11 36:11 36:14 36:15 36:15 36:17 36:19 36:25 37:2 37:3 37:8 37:8 37:9 37:15 37:16 37:16 37:21 38:9 38:22 38:25 38:25 39:2 39:3 39:22 39:25 40:18 40:19 40:21 40:22 41:5 41:8 41:10 41:13 41:16 41:16 41:19 41:20 41:22 41:25 42:9 42:15 42:17 42:25 43:2 43:2 43:3 43:5 43:9 43:14 43:17 43:17 43:19 43:21 44:6 44:8 44:10 44:23 44:25 45:7 45:8 45:9 45:13 45:16 45:25 46:1 46:7 46:11 46:18 46:21 46:25 47:2 47:2 47:5 47:21 47:22 48:1 48:2 48:9 48:14 48:16 48:16 48:19 48:22 49:1 49:2 49:4 49:5 49:6 49:8 49:9 49:17 49:19 49:20 49:21 49:22 49:23 50:2 50:3 50:6 50:7 50:7 50:8 50:8 50:11 50:12 50:13 50:18 50:18 51:2 52:4 52:5 52:13 52:19 52:20 52:23 52:24 53:2 53:6 53:10 53:17 53:20 53:22 53:24 54:3 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that(238)** 188:6 188:7 188:14 188:19 188:23 188:24 188:25 189:2 189:11 189:1 189:12 189:12 189:17 189:19 190:9 190:11 190:14 190:14 190:15 190:16 190:17 190:23 191:2 191:4 191:5 191:7 191:9 191:11 191:12 191:14 191:14 191:1 191:18 191:21 191:22 191:25 192:4 192:1 192:10 192:11 192:13 193:1 193:3 193:5 193:6 193:13 193:13 193:14 193:20 193:2 193:21 193:25 194:1 194:2 194:4 194:9 194:16 194:17 194:19 194:22 195:7 195:9 195:13 195:15 195:16 195:21 196:1 196:8 196:6 196:11 196:13 196:18 196:20 196:2 196:22 197:4 197:6 197:20 198:1 198:4 198:9 198:9 198:10 198:14 198:19 198:22 198:25 199:2 199:6 199:8 199:13 199:14 199:15 199:20 199:21 199:24 200:7 200:1 200:16 200:17 200:19 201:4 201:6 201:1 201:20 201:24 202:2 202:9 202:11 202:20 202:23 203:3 203:4 203:8 203:9 203:10 203:19 203:20 203:21 204:1 204:2 204:6 204:9 204:12 204:12 204:16 204:18 204:21 204:25 205:2 205:2 205:3 205:5 205:8 205:14 205:19 205:19 205:19 206:8 206:9 206:10 206:11 206:13 206:16 206:1 206:18 206:19 206:19 206:21 206:23 207:5 207:5 207:6 207:10 207:18 207:20 208:1 208:2 208:2 208:3 208:6 208:7 208:8 208:9 208:12 208:15 208:15 208:17 208:21 209:5 209:6 209:6 209:6 209:8 209:8 209:16 209:22 209:23 210:4 210:4 210:8 210:13 210:17 210:24 212:1 212:5 212:8 212:18 212:25 212:25 213:13 213:18 213:19 213:22 213:23 213:24 213:25 214:3 214:4 214:5 214:7 214:7 214:8 214:10 214:12 214:19 214:25 215:1 215:8 215:11 215:11 215:19 215:22 216:5 216:6 216:16 217:1 217:3 217:5 217:5 217:20 217:21 218:17 218:19 218:25 218:25 219:3 219:6 219:6 219:8 219:8 219:15 219:19 220:6 220:13

**that's(156)** 11:25 12:4 12:9 14:7 14:9 15:2 15:6 15:18 20:20 20:21 21:8 21:14 21:20 22:1 23:9 23:15 24:6 24:14 24:19 25:14 26:2 26:13 27:12 27:16 27:22 39:2 40:8 42:6 43:8 44:13 46:3 48:11 49:12 49:24 51:22 53:8 54:19 56:14 57:23 58:19 63:13 66:3 67:14 69:13 69:24 71:6 71:20 72:19 73:18 74:23 74:23 75:7 75:16 78:2 79:15 79:16 82:1 84:21 85:6 85:25 86:1 86:4 87:4 87:24 87:25 88:15 90:10 95:19 97:13 99:8 99:9 99:11 100:10 101:25 102:10 103:22 104:10 104:11 104:20 104:21 107:2 107:22 109:2 109:13 111:7 111:22 111:22 111:25 116:19 116:21 117:7 118:17 121:22 123:13 124:25 127:7 128:23 129:2 129:8 129:20 130:9 132:18 133:25 134:6 134:11 134:14 136:15 136:16 138:10 140:7 142:16 142:16 144:2 144:14 144:22 145:20 148:12 150:4 156:2 156:10 156:11 159:23 160:17 162:20 164:11 166:7 166:11 167:19 167:21 171:13 172:20 175:1 177:21 178:7 178:10 179:6 181:21 182:17 186:19 187:15 188:9 189:24 192:12 195:7 196:12 196:17 199:17 208:18 208:23 209:8 210:11 210:16 211:15 216:3 216:9 217:18

**thau(1)** 9:4

**the(301)** 1:1 1:2 1:20 2:4 3:44 4:31 5:18 10:7 11:2 11:3 11:5 11:7 11:7 11:7 11:9 11:11 11:11 11:15 11:17 11:17 11:21 11:23 11:24 12:1 12:1 12:2 12:6 12:7 12:8 12:15 12:20 12:21 12:25 13:1 13:4 13:4 13:6 13:7 13:14 13:15 13:15 13:17 13:21 13:23 13:24 13:24 13:24 14:4 14:6 14:6 14:6 14:11 14:12 14:14 14:15 14:16 14:17 14:18 14:19 14:20 14:22 14:24 14:24 15:2 15:2 15:3 15:5 15:8 15:9 15:10 15:11 15:14 15:16 15:19 15:19 15:20 15:22 15:24 16:2 16:6 16:7 16:7 16:8 16:9 16:10 16:12 16:12 16:14 16:14 16:19 16:23 16:25 17:3 17:3 17:6 17:8 17:9 17:10 17:12 17:13 17:13 17:17 17:1 17:18 17:24 18:1 18:1 18:2 18:3 18:3 18:6 18:6 18:10 18:10 18:14 18:14 18:18 18:19 18:19 18:22 18:23 19:1 19:1 19:3 19:4 19:4 19:5 19:8 19:8 19:10 19:10 19:14 19:15 19:15 19:18 19:19 19:21 19:21 19:23 19:23 19:25 20:1 20:2 20:4 20:5 20:5 20:6 20:7 20:8 20:8 20:11 20:11 20:15 20:16 20:16 20:17 20:19 20:20 20:24 21:2 21:5 21:7 21:9 21:10 21:12 21:15 21:15 21:16 21:21 21:23 22:1 22:4 22:9 22:12 22:13 22:15 22:17 22:17 22:20 22:22 22:23 22:24 23:1 23:1 23:2 23:5 23:17 23:18 23:19 23:20 23:20 23:21 23:22 23:25 24:1 24:2 24:2 24:3 24:4 24:6 24:6 24:8 24:12 24:15 24:16 24:16 24:18 24:19 24:20 24:21 24:25 24:25 25:19 24:5 24:5 25:7 25:9 25:15 25:16 25:19 25:23 25:25 26:2 26:3 26:4 26:5 26:5 26:8 26:10 26:11 26:12 26:14 26:17 26:18 26:20 26:22 26:24 27:2 27:2 27:3 27:4 27:6 27:7 27:8 27:9 27:10 27:10 27:13 27:18 27:19 27:19 27:22 27:23 27:24 27:24 27:25 28:1 28:3 28:3 28:7 28:8 28:9 28:12 28:14 28:15 28:15 28:21 28:2 28:25 29:1 29:1 29:2 29:3 29:4 29:5 29:8 29:10 29:11 29:13 29:14 29:15 29:1 29:17 29:17 29:18 29:20 29:23 29:24 30:1 30:6 30:7 30:7 30:11 30:12

**the(301)** 30:13 30:14 30:16 30:19 30:20 30:21 30:22 30:25 30:25 31:1 31:2 31:2 31:7 31:7 31:9 31:9 31:10 31:12 31:16 31:22 31:23 32:1 32:3 32:7 32:9 32:9 32:13 32:14 32:15 32:15 32:16 32:20 32:21 32:22 32:22 33:1 33:4 33:8 33:9 33:10 33:11 33:12 33:13 33:13 33:14 33:15 33:15 33:16 33:17 33:17 33:19 33:19 33:20 33:21 33:22 33:23 33:24 34:2 34:3 34:7 34:9 34:13 34:15 34:19 34:20 34:21 34:25 35:2 35:3 35:4 35:4 35:5 35:8 35:9 35:9 35:11 35:15 35:15 35:16 35:17 35:19 35:20 35:23 36:3 36:4 36:8 36:9 36:9 36:11 36:12 36:16 36:17 36:20 36:21 36:22 36:24 37:5 37:7 37:7 37:8 37:11 37:12 37:16 37:16 37:16 37:20 37:21 38:1 38:2 38:3 38:5 38:6 38:7 38:8 38:9 38:10 38:12 38:12 38:13 38:15 38:19 38:22 38:23 39:2 39:3 39:3 39:7 39:12 39:13 39:13 39:16 39:16 39:18 39:18 39:19 39:21 39:24 39:25 40:1 40:4 40:7 40:9 40:11 40:13 40:15 40:17 40:18 40:19 40:20 40:25 40:25 40:25 41:3 41:4 41:5 41:5 41:6 41:7 41:7 41:8 41:8 41:9 41:9 41:14 41:18 41:18 41:21 41:22 41:25 42:1 42:3 42:5 42:7 42:10 42:14 42:14 42:15 42:16 42:18 42:18 42:21 42:22 42:22 42:23 42:24 42:24 42:25 42:25 43:1 43:1 43:2 43:2 43:3 43:3 43:4 43:5 43:6 43:6 43:7 43:7 43:8 43:9 43:10 43:11 43:12 43:13 43:14 43:14 43:15 43:15 43:16 43:16 43:18 43:20 43:22 43:23 43:24 43:25 44:2 44:3 44:5 44:7 44:9 44:10 44:12 44:12 44:12 44:19 44:20 44:24 44:25 45:2 45:4 45:6 45:11 45:13 45:14 45:15 45:15 45:18 45:20 45:21 45:22 45:23 45:24 45:25 45:25 46:1 46:1 46:2 46:3 46:3 46:3 46:5 46:6 46:7 46:9 46:10 46:12 46:16 46:18 46:20 46:23 46:25 47:1 47:5 47:6 47:7 47:9 47:12 47:13 47:14 47:14 47:15 47:17 47:18 47:19 47:19 47:20 47:21 47:22 47:22 48:3 48:3 48:3 48:6 48:7 48:7 48:8 48:8 48:12

**the(301)** 48:12 48:15 48:17 48:17 48:17 48:19 48:22 48:24 49:5 49:5 49:6 49:7 49:10 49:12 49:12 49:14 49:17 49:18 49:18 49:19 49:21 49:22 49:22 49:24 50:1 50:3 50:3 50:5 50:8 50:10 50:13 50:15 50:15 50:19 50:20 50:21 50:24 50:25 51:1 51:4 51:5 51:9 51:10 51:10 51:14 51:15 51:17 51:18 51:19 51:20 51:23 51:24 52:1 52:2 52:3 52:4 52:5 52:7 52:8 52:10 52:15 52:15 52:17 52:18 52:18 52:18 52:20 52:21 52:22 52:24 52:25 52:25 53:1 53:1 53:2 53:3 53:4 53:5 53:6 53:14 53:14 53:17 53:18 53:18 53:19 53:20 53:22 53:23 53:23 53:24 53:25 54:1 54:2 54:3 54:6 54:8 54:10 54:10 54:11 54:11 54:11 54:12 54:12 54:14 54:15 54:16 54:16 54:17 54:18 54:20 54:21 54:23 54:24 55:1 55:3 55:6 55:6 55:8 55:8 55:9 55:11 55:14 55:15 55:17 55:18 55:18 55:19 55:19 55:21 55:22 55:24 55:24 55:25 55:25 56:2 56:4 56:5 56:6 56:6 56:8 56:10 56:11 56:12 56:13 56:6 56:17 56:19 56:22 56:23 56:25 57:1 57:2 57:3 57:4 57:5 57:5 57:6 57:8 57:8 57:9 57:9 57:11 57:16 57:16 57:19 57:20 57:21 57:22 57:22 57:22 57:22 58:2 58:6 58:6 58:7 58:12 58:14 58:14 58:18 58:20 58:20 58:23 58:25 59:1 59:1 59:2 59:3 59:4 59:5 59:5 59:6 59:6 59:7 59:8 59:10 59:12 59:14 59:18 59:19 59:19 59:21 59:24 60:1 60:3 60:5 60:7 60:8 60:9 60:9 60:10 60:10 60:11 60:12 60:14 60:9 60:21 60:21 60:23 60:24 60:25 61:2 61:5 61:6 61:7 61:8 61:8 61:9 61:11 61:13 61:14 61:16 61:15 61:16 61:17 61:23 62:3 62:3 62:3 62:4 62:5 62:8 62:14 62:15 62:17 62:17 62:19 62:20 62:22 62:22 62:25 63:3 63:4 63:5 63:6 63:7 63:12 63:13 63:14 63:15 63:15 63:17 63:22 63:24 63:25 64:1 64:2 64:8 64:9 64:9 64:10 64:10 64:10 64:13 64:15 64:16 64:16 64:18 64:20 64:22 64:22 64:24 64:25 65:3 65:5 65:8 65:8 65:9 65:9 65:10 65:11 65:12 65:12 65:14 65:15 65:16 65:17 65:18 65:20 65:21

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **the**(301) 65:22 65:23 66:2 66:3 66:3 66:5 66:8 66:8 66:12 66:13 66:14 66:15 66:15 66:16 66:20 66:21 66:21 66:23 66:24 66:25 67:8 67:9 67:9 67:10 67:11 67:12 67:13 67:16 67:18 67:22 68:3 68:9 68:11 68:11 68:11 68:22 69:1 69:2 69:4 69:8 69:9 69:11 69:12 69:16 69:17 69:19 69:20 69:21 69:25 70:4 70:6 70:7 70:8 70:11 70:12 70:14 70:15 70:16 70:16 70:18 70:19 70:21 70:23 70:24 71:1 71:5 71:7 71:9 71:11 71:11 71:13 71:14 71:14 71:16 71:19 71:20 71:20 71:23 72:1 72:2 72:2 72:4 72:5 72:8 72:11 72:12 72:13 72:17 72:17 72:18 72:19 72:21 72:22 73:3 73:5 73:8 73:9 73:10 73:13 73:15 73:16 73:17 73:17 73:20 73:22 73:22 73:25 74:2 74:3 74:6 74:9 74:13 74:15 74:16 74:18 74:18 74:18 74:19 74:20 74:20 74:23 75:3 75:4 75:8 75:12 75:13 75:14 75:15 75:15 75:17 75:20 75:20 75:22 75:22 76:3 76:5 76:6 76:7 76:7 76:7 76:9 76:10 76:10 76:14 76:15 76:16 76:17 76:20 76:21 76:21 76:22 76:23 76:24 77:3 77:4 77:5 77:5 77:6 77:6 77:9 77:12 77:12 77:13 77:14 77:14 77:25 78:4 78:4 78:6 78:7 78:11 78:18 78:21 78:24 78:24 78:25 79:1 79:2 79:3 79:6 79:7 79:8 79:8 79:9 79:10 79:10 79:12 79:13 79:14 79:15 79:16 79:17 79:19 79:21 80:2 80:2 80:2 80:3 80:3 80:5 80:6 80:9 80:11 80:12 80:12 80:13 80:14 80:16 80:20 80:21 80:22 81:4 81:5 81:6 81:6 81:8 81:9 81:11 81:13 81:16 81:17 81:19 81:19 81:20 81:20 81:21 81:22 81:24 81:24 81:25 81:25 82:4 82:4 82:6 82:6 82:6 82:7 82:8 82:8 82:13 82:13 82:14 82:15 82:16 82:17 82:20 82:21 82:22 82:23 82:24 82:24 83:1 83:2 83:2 83:3 83:3 83:4 83:5 83:5 83:7 83:8 83:13 83:14 83:16 83:18 83:18 83:19 83:20 83:20 83:21 83:21 83:23 83:24 83:25 84:2 84:4 84:6 84:9 84:12 84:12 84:13 84:14 84:17 84:18 84:21 84:23 84:24 85:1 85:4 85:6 85:7 85:7 85:8 85:9 85:11 85:12 85:13 85:15 85:16 | | **the**(301) 85:17 85:17 85:20 85:21 85:23 85:24 85:25 86:2 86:3 86:3 86:6 86:8 86:9 86:10 86:10 86:11 86:11 86:12 86:13 86:13 86:16 86:19 86:21 86:21 86:22 86:24 86:25 87:1 87:3 87:3 87:5 87:6 87:7 87:7 87:8 87:11 87:12 87:12 87:14 87:14 87:16 87:16 87:21 87:21 87:21 87:22 87:23 87:24 87:25 88:3 88:5 88:6 88:8 88:11 88:13 88:15 88:17 88:19 88:20 88:21 88:21 88:23 88:24 89:1 89:1 89:1 89:2 89:8 89:10 89:12 89:13 89:15 89:15 89:18 89:22 89:22 89:23 89:24 90:1 90:1 90:1 90:2 90:4 90:5 90:6 90:7 90:8 90:8 90:10 90:13 90:14 90:15 90:16 90:17 90:17 90:18 90:21 90:24 90:24 90:24 91:2 91:3 91:5 91:5 91:7 91:9 91:10 91:10 91:10 91:11 91:16 91:17 91:18 91:18 91:21 91:22 91:25 92:1 92:3 92:5 92:6 92:10 92:11 92:13 92:13 92:14 92:17 92:18 92:20 92:21 92:22 92:24 92:25 93:1 93:3 93:5 93:6 93:8 93:8 93:10 93:12 93:18 93:19 93:21 93:22 93:25 94:1 94:1 94:4 94:4 94:5 94:6 94:7 94:8 94:14 94:15 94:16 94:18 94:19 94:19 94:20 94:21 94:21 94:22 94:23 94:24 95:2 95:2 95:3 95:7 95:8 95:8 95:9 95:10 95:10 95:12 95:15 95:16 95:18 95:20 95:21 95:21 95:22 95:22 95:23 95:23 95:24 95:25 96:8 96:8 96:9 96:10 96:11 96:11 96:13 96:13 96:13 96:15 96:16 96:17 96:17 96:17 96:18 96:19 96:21 96:21 96:22 96:22 97:2 97:4 97:5 97:7 97:8 97:9 97:11 97:17 97:23 98:1 98:4 98:5 98:8 98:9 98:10 98:10 98:11 98:14 98:16 98:17 98:18 98:20 98:23 98:23 99:3 99:9 99:12 99:13 99:16 99:17 99:20 99:21 99:22 100:1 100:6 100:9 100:13 100:13 100:14 100:14 100:15 100:17 100:17 100:18 100:19 100:19 100:20 100:21 100:21 100:22 100:23 100:25 100:25 101:1 101:4 101:5 101:8 101:14 101:16 101:16 101:16 101:17 101:18 101:20 101:24 101:24 102:1 102:3 102:5 102:5 102:6 102:6 102:7 102:9 102:12 102:13 102:16 102:19 102:20 102:21 102:21 | | **the**(301) 102:21 102:23 103:3 103:4 103:6 103:7 103:10 103:12 103:13 103:19 103:19 103:23 103:25 104:1 104:2 104:4 104:4 104:5 104:6 104:6 104:7 104:8 104:9 104:9 104:10 104:13 104:17 104:18 104:19 104:19 104:23 104:24 104:24 105:1 105:6 105:7 105:9 105:9 105:10 105:11 105:12 105:16 105:17 105:17 105:19 105:19 105:21 105:22 105:23 105:25 106:4 106:6 106:6 106:9 106:9 106:10 106:13 106:14 106:15 106:18 106:19 106:19 106:23 106:25 107:5 107:7 107:11 107:12 107:13 107:17 107:18 107:19 107:19 107:23 108:3 108:4 108:4 108:7 108:8 108:9 108:10 108:11 108:13 108:14 108:14 108:16 108:17 108:22 108:25 109:2 109:2 109:4 109:7 109:7 109:11 109:12 109:13 109:14 109:15 109:16 109:18 109:18 109:20 109:21 109:23 109:24 110:3 110:4 110:6 110:7 110:7 110:9 110:12 110:12 110:13 110:14 110:15 110:17 110:18 110:21 110:23 110:25 110:1 111:4 111:4 111:7 111:8 111:9 111:11 111:12 111:14 111:16 111:21 111:24 112:3 112:6 112:7 112:7 112:9 112:10 112:13 112:14 112:17 112:19 112:20 112:22 112:25 113:1 113:5 113:5 113:6 113:9 113:12 113:13 113:14 113:15 113:18 113:19 113:19 113:20 113:20 113:21 113:23 113:25 114:1 114:6 114:12 114:12 114:15 114:16 114:17 114:20 114:20 114:21 114:23 114:24 115:3 115:3 115:6 115:7 115:7 115:8 115:10 115:11 115:11 115:12 115:12 115:15 115:16 115:18 115:20 115:23 116:1 116:2 116:3 116:10 116:5 116:5 116:6 116:7 116:7 116:10 116:11 116:12 116:13 116:13 116:15 116:17 116:19 116:19 116:21 116:24 116:25 117:1 117:2 117:2 117:3 117:4 117:5 117:6 117:6 117:11 117:12 117:12 117:12 117:13 117:14 117:14 117:16 117:16 117:16 117:17 117:20 117:20 118:18 118:3 118:5 118:12 118:14 118:17 118:18 118:21 118:22 118:25 119:14 119:9 119:8 119:9 119:10 119:12 119:14 119:14 119:15 119:16 119:17 119:21 119:24 119:25 120:2 120:3 120:4 120:6 120:8 120:10 120:11 120:13 120:15 120:16 120:17 120:19 120:19 120:20 120:21 120:22 120:24 120:25 121:2 121:3 121:4 121:9 121:11 121:11 121:12 121:13 121:15 121:18 121:18 121:19 121:23 | | **the**(301) 121:24 122:1 122:1 122:2 122:2 122:2 122:3 122:5 122:6 122:7 122:11 122:13 122:14 122:15 122:16 122:20 122:21 122:23 122:23 122:24 123:1 123:4 123:4 123:11 123:11 123:16 123:18 123:19 123:20 123:22 124:1 124:4 124:4 124:5 124:13 124:14 124:14 124:15 124:16 124:18 124:19 124:23 125:1 125:2 125:5 125:6 125:10 125:12 125:15 125:16 125:17 125:19 125:19 125:20 125:20 125:21 125:23 125:25 126:1 126:1 126:2 126:5 126:11 126:12 126:15 126:17 126:17 126:18 126:20 127:2 127:3 127:5 127:8 127:14 127:14 127:17 127:18 127:19 127:20 127:21 127:22 127:22 127:23 127:24 127:25 127:25 128:1 128:1 128:3 128:4 128:5 128:9 128:10 128:12 128:12 128:13 128:14 128:22 128:23 129:1 129:1 129:7 129:9 129:10 129:11 129:11 129:12 129:13 129:13 129:15 129:16 129:18 129:19 129:20 129:20 129:21 129:21 129:23 129:23 129:24 129:25 129:25 130:1 130:4 130:4 130:6 130:6 130:11 130:13 130:14 130:15 130:18 130:19 130:19 131:6 131:7 131:10 131:13 131:15 131:16 131:16 131:17 131:17 131:18 131:19 131:21 131:21 131:25 132:6 132:6 132:6 132:8 132:10 132:11 132:13 132:13 132:15 132:15 132:16 132:16 132:17 132:17 132:19 132:25 133:1 133:3 133:4 133:4 133:8 133:16 133:17 133:18 133:19 133:20 133:21 133:22 133:22 134:2 134:3 134:3 134:4 134:6 134:6 134:12 134:13 134:16 134:20 134:21 135:1 135:2 135:4 135:4 135:4 135:5 135:6 135:9 135:11 135:11 135:15 135:15 135:18 135:18 135:19 135:19 135:21 135:23 135:25 136:1 136:3 136:4 136:5 136:5 136:7 136:10 136:15 136:18 136:22 136:23 136:25 136:25 137:1 137:3 137:4 137:5 137:8 137:8 137:11 137:13 137:13 137:14 137:16 137:18 137:21 137:22 137:24 137:24 137:25 138:3 138:6 138:6 138:7 138:8 138:12 138:15 138:17 138:17 138:17 138:18 138:20 138:23 138:25 139:2 139:4 139:7 139:8 139:9 139:12 139:18 139:23 139:24 139:24 140:1 140:4 140:6 140:6 140:8 140:11 140:11 140:12 140:13 140:14 140:15 140:17 140:19 140:23 140:25 141:3 141:5 141:6 141:8 141:11 141:13 141:14 141:17 141:18 141:18 141:20 141:22 141:24 142:3 142:5 142:5 142:8 142:10 142:12 142:13 142:14 142:14 142:15 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 142:16 142:19 142:21 142:23 142:24 142:25 143:1 143:1 143:5 143:6 143:8 143:8 143:11 143:13 143:15 143:17 143:20 143:22 143:23 143:23 143:24 143:24 144:1 144:2 144:3 144:4 144:8 144:13 144:16 144:16 144:22 144:24 144:24 145:3 145:4 145:7 145:12 145:12 145:13 145:13 145:18 145:18 145:22 145:24 146:1 146:2 146:4 146:6 146:7 146:10 146:11 146:13 146:15 146:16 146:18 146:19 146:21 147:1 147:4 147:4 147:4 147:5 147:8 147:10 147:11 147:12 147:12 147:14 147:14 147:15 147:16 147:20 147:22 147:25 148:1 148:3 148:3 148:4 148:10 148:12 148:13 148:13 148:1 148:15 148:18 148:23 148:23 148:24 148:24 149:1 149:8 149:13 149:15 149:17 149:18 149:21 149:22 149:23 149:25 150:10 150:12 150:17 150:19 150:21 150:21 150:22 150:22 151:4 151:5 151:5 151:6 151:7 151:9 151:9 151:10 151:12 151:15 151:20 151:23 151:24 151:25 152: 152:5 152:5 152:6 152:7 152:8 152:12 152:13 152:14 152:16 152:17 152:19 152:20 152:22 152:25 152:25 153:2 153:3 153:4 153:5 153:5 153:7 153:8 153:8 153:10 153:10 153:11 153:14 153:14 153:16 153:19 153:19 153:20 153:21 153:21 153:23 153:24 153:25 153:25 154: 154:2 154:4 154:4 154:6 154:7 154:9 154:9 154:10 154:11 154:12 154:13 154:1 154:15 154:16 154:17 154:19 154:20 154:20 154:24 154:24 155:5 155:6 155:10 155:11 155:15 155:16 155:20 155:24 156: 156:1 156:3 156:7 156:7 156:8 156:8 156:8 156:14 156:16 156:17 156:17 156:1 156:19 156:21 156:21 156:24 156:24 157:2 157:4 157:5 157:6 157:8 157:13 157:14 157:15 157:16 157:17 157:18 157:20 157:22 157:23 158:8 158:9 158:11 158:16 158:17 158:17 158:18 158:18 158:20 158:21 158:22 158:23 158:24 158:24 159:1 159:4 159:4 159:5 159:7 159:7 159:7 159:8 159:9 159:10 159:11 159:12 159:13 159:14 159:15 159:18 159:19 159:23 159:23 159:25 160:1 160:1 160:1 160:2 160:2 160:6 160:7 160:9 160:9 160:10 160:10 160:11 160:12 160:1 160:12 160:13 160:13 160:13 160:14 160:14 160:15 160:15 160:16 160:17 160:19 160:22 160:22 160:23 160:23 160:25 161:2 161:2 161:2 161:6 161:10 161:13 161:15 161:15 161:15 161:16 161:18 161:24 162:2 162:8 162:10 162:13

**the(301)** 162:14 162:15 162:16 162:18 162:21 162:23 163:2 163:4 163:7 163:7 163:8 163:11 163:13 163:15 163:16 163:1 163:18 163:18 163:19 163:21 163:21 163:22 163:23 163:23 163:23 163:24 163:24 163:24 164:4 164:4 164:5 164:7 164:9 164:11 164:12 164:15 164:16 164:1 164:18 164:21 164:22 164:22 164:25 165:1 165:4 165:5 165:6 165:8 165:11 165:12 165:14 165:14 165:16 165:21 165:24 165:25 166:1 166:2 166:3 166:4 166:9 166:16 166:18 166:19 166:20 166:2 166:25 167:1 167:4 167:7 167:8 167:9 167:12 167:17 167:19 167:19 167:19 168: 168:3 168:6 168:9 168:11 168:12 168:12 168:15 168:16 168:16 168:17 168:24 169: 169:4 169:4 169:5 169:9 169:10 169:12 169:13 169:14 169:17 169:19 169:21 169:23 169:24 169:25 170:2 170:4 170:4 170:8 170:10 170:12 170:14 170:20 170:2 170:23 170:23 171:1 171:1 171:1 171:1 171:2 171:4 171:5 171:7 171:8 171:8 171:9 171:12 171:14 171:15 171:15 171:1 171:16 171:22 171:25 172:4 172:5 172:7 172:10 172:12 172:13 172:14 172:15 172:19 172:20 172:20 172:22 172:22 172:24 172:25 173:1 173:1 173:4 173:8 173:8 173:12 173:13 173:18 173:19 173:1 173:20 173:23 173:25 174:1 174:5 174:7 174:24 174:11 174:14 174:16 174:18 174:2 174:24 175:1 175:2 175:2 175:6 175:8 175:9 175:10 175:12 175:13 175:14 175:1 175:17 175:18 175:22 175:24 175:24 175:25 176:1 176:1 176:2 176:2 176:3 176:3 176:3 176:5 176:6 176:8 176:9 176:9 176:10 176:10 176:12 176:13 176:1 176:14 176:15 176:15 176:16 176:16 176:18 176:18 176:19 176:19 176:21 176:21 176:21 176:22 177:1 177:3 177:4 176:7 177:7 177:7 177:7 177:8 177:9 177:9 177:10 177:11 177:11 177:12 177:13 177:15 177:17 177:18 177:19 177:21 177:22 177:24 177:25 177:25 178:1 178:2 178:3 178:5 178:6 178:9 178:13 178:15 178:17 178:17 178:18 178:18 178:19 178:19 178:22 178:23 178:24 179:1 179:1 179:3 179:3 179:4 179:5 179:5 179:6 179:10 179:11 179:13 179:14 179:15 179:16 179:20 179:24 180:3 180:4 180:7 180:8 180:9 180:9 180:9 180:13 180:17 180:17 180:21 180:24 180:25 181:1 181:9 181:10 181:11 181:15 181:17 181:17 181:18 181:19 181:21 181:22 181:23 181:24

**the(301)** 181:25 182:1 182:2 182:2 182:3 182:5 182:7 182:8 182:11 182:11 182:12 182:18 182:22 182:23 182:25 183:2 183:4 183:5 183:8 183:9 183:13 183:14 183:18 183:19 183:20 183:20 183:21 183:21 183:23 183:23 183:24 183:25 183:25 184: 184:2 184:2 184:5 184:5 184:8 184:9 184:10 184:10 184:10 184:13 184:14 184:20 184:21 184:21 184:23 184:23 184:24 185:1 185:2 185:2 185:4 185:6 185:7 185:9 185:10 185:11 185:13 185:15 185:16 185:18 185:18 185:19 185:19 185:20 185:21 185:21 185:23 185:25 185:25 186:1 186:2 186:3 186:3 186:4 186:5 186:6 186:7 186:8 186:8 186:9 186:9 186:11 186:11 186:14 186:14 186:1 186:15 186:17 186:18 186:18 186:20 186:21 186:23 186:25 187:1 187:3 187:6 187:10 187:11 187:11 187:11 187:13 187:15 187:15 187:16 187:17 187:18 187:18 187:21 187:22 187:23 187:25 187:25 188:1 188:1 188:5 188:5 188:9 188:9 188:10 188:11 188:12 188:12 188:1 188:14 188:15 188:17 188:19 188:19 189: 189:5 189:7 189:10 189:13 189:15 189:16 189:16 189:17 189:17 189:22 189:25 189:25 190:1 190:3 190:3 190:5 190:5 190:6 190:7 190:10 190:10 190:11 190:16 190:16 190:18 190:19 190:21 190:23 190:24 191:1 191:6 191:6 191:11 191:12 191:16 191:18 191:23 191:24 192:1 192:3 192:5 192:6 192:7 192:8 192:9 192:10 192:11 192:12 192:14 192:15 192:17 192:18 192:19 192:20 192:22 192:24 193: 193:1 193:3 193:6 193:11 193:16 193:17 193:18 193:19 193:19 193:20 193:20 193:22 193:25 193:25 194:3 194:5 194:8 194:18 194:20 194:22 194:22 194:24 194:25 195:5 195:6 195:6 195:9 195:13 195:13 195:15 195:17 195:19 195:20 195:21 195:23 195:25 196:2 196:2 196:4 196:5 196:5 196:5 196:6 196:6 196:8 196:8 196:9 196:13 196:14 196:15 196:18 196:19 196:20 196:20 196:21 196:22 196:23 196:23 196:25 197:1 197:2 197:6 197:8 197:9 197:11 197:13 197:15 197:18 197:20 197:21 198:1 198:2 198:7 198:8 198:9 198:10 198:11 198:13 198:13 198:1 198:20 198:22 198:23 198:23 198:25 199:1 199:2 199:3 199:4 199:4 199:11 199:11 199:13 199:15 199:16 199:21 199:22 199:24 200:1

**the(301)** 200:2 200:2 200:4 200:6 200:7 200:8 200:11 200:12 200:12 200:13 200:15 200:16 200:19 200:21 200:24 201:3 201:3 201:3 201:4 201:8 201:9 201:12 201:14 201:14 201:15 201:15 201:20 201:20 201:21 201:25 202:2 202:3 202:4 202:4 202:5 202:5 202:6 202:6 202:8 202:9 202:12 202:13 202:14 202:16 202:24 202:25 203:1 203:2 203:2 203:4 203:8 203:11 203:19 203:20 203:21 204:1 204:5 204:5 204:7 204:7 204:8 204:9 204:12 204:12 204:13 204:13 204:16 204:20 204:21 204:21 204:22 205:6 205:7 205:7 205:8 205:9 205:9 205:11 205:12 205:12 205:15 205:16 205:18 205:23 205:25 206:2 206:3 206:4 206:5 206:7 206:7 206:9 206:11 206:12 206:13 206:18 206:23 206:25 207:2 207:2 207:5 207:6 207:6 207:7 207:10 207:11 207:16 207:16 207:17 207:17 207:19 207:23 207:23 207:24 207:24 208:2 208:4 208:5 208:7 208:8 208:9 208:10 208:14 208:14 208:15 208:17 208:18 208:19 208:20 208:23 208:24 208:24 208:25 209:1 209:2 209:9 209:11 209:13 209:23 209:25 210:1 210:4 210:6 210:9 210:12 210:14 210:14 210:15 210:16 210:21 210:24 210:24 210:25 210:25 211:1 211:1 211:2 211:2 211:6 211:10 211:12 211:13 211:15 211:18 211:19 211:20 211:21 211:24 211:24 211:24 211:25 212:2 212:2 212:3 212:4 212:5 212:5 212:6 212:9 212:11 212:14 212:16 212:17 212:18 212:19 212:21 212:22 212:24 213:2 213:4 213:6 213:6 213:7 213:7 213:8 213:10 213:14 213:15 213:16 213:17 213:18 213:18 213:19 213:20 213:21 213:22 213:23 213:25 214:3 214:4 214:4 214:5 214:6 214:6 214:7 214:8 214:8 214:9 214:9 214:10 214:10 214:11 214:11 214:12 214:13 214:15 214:15 214:16 214:17 214:19 214:22 214:24 214:24 214:25 215:1 215:2 215:3 215:5 215:6 215:6 215:7 215:8 215:11 215:12 215:15 215:18 215:20 215:21 215:22 215:22 215:24 216:4 216:5 216:7 216:12 216:13 216:16 216:17 216:17 216:18 216:19 216:20 216:23 216:25 217:1 217:2 217:2 217:5 217:5 217:6 217:7 217:9 217:12 217:13 217:16 217:17 217:18 217:20 217:21 217:22 217:22 217:24 217:25 217:25 218:1 218:2 218:4 218:4 218:4 218:5 218:7 218:8 218:8 218:9 218:11 218:12 218:13 218:16 218:17 218:19 218:20

**the(34)** 218:21 218:22 218:23 218:24 218:25 219:1 219:2 219:3 219:4 219:5 219:10 219:12 219:13 219:14 219:15 219:16 219:17 219:17 219:18 219:19 219:19 219:20 219:21 219:23 219:24 219:24 220:1 220:2 220:6 220:10 220:13 220:14 220:14 220:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **their**(166) 11:20  12:16  12:18  13:8  13:17 13:22  14:21  15:25  19:10  21:4  21:5  23:11 25:19  28:5  29:16  29:22  30:1  30:2  30:15 30:15  31:13  32:6  36:8  36:14  39:17  40:22 41:9  41:13  41:20  42:19  43:10  47:9  49:7 52:18  53:13  53:24  54:13  54:21  64:12  65:2 66:11  66:12  66:18  67:14  67:15  68:6  68:22 69:4  70:17  70:17  70:23  70:25  71:2  71:10 73:6  74:12  74:14  76:15  77:7  78:2  78:6 78:7  79:3  79:6  79:7  80:23  81:18  81:22 82:19  82:21  83:11  84:3  84:24  87:2  89:17 90:10  92:22  105:3  112:18  114:1  114:1 116:23  116:23  117:25  118:2  118:2  123:5 123:5  123:9  125:5  127:2  127:19  129:11 134:9  134:20  134:22  135:8  137:11  139:11 139:21  139:25  140:9  140:14  140:25  145:22 146:8  146:16  147:14  149:3  151:16  152:12 152:13  152:18  152:18  153:11  154:3  154:1 154:16  154:18  155:6  155:23  160:10 161:23  165:6  165:8  179:17  179:18  179:23 180:3  180:25  181:15  184:12  186:7  187:7 188:23  191:7  191:19  191:19  192:2  192:6 192:19  193:3  194:4  194:5  194:20  195:8 195:15  197:3  198:3  198:4  198:23  199:5 199:17  201:12  201:21  204:24  205:20 207:12  208:16  209:11  215:14  215:18 215:19  215:20  215:20  216:11 | **theirs**(1) 35:3 **them**(84) 12:10  12:16  13:10  15:13  18:4 21:4  21:23  22:5  25:1  25:12  28:10  35:8 36:5  40:20  44:11  44:15  44:17  48:25  51:1 51:25  58:14  62:10  63:16  67:25  72:10  78:1 93:21  93:22  96:8  102:10  102:14  104:5 106:17  107:20  112:19  112:19  113:17  115: 119:10  119:11  120:2  124:21  125:9  132:1 141:1  144:5  144:20  147:21  149:4  150:23 151:13  151:22  152:20  152:25  153:23 156:25  158:1  158:11  164:19  165:25  166:2 167:5  175:7  179:1  179:2  179:24  183:24 184:21  188:21  194:5  195:12  196:22  197:1 198:19  204:23  205:12  205:15  205:18 205:20  206:24  214:22  214:23  215:16 215:24 **theme**(3) 20:10  63:18  78:4 **themselves**(7) 65:18  126:2  128:4  147:2 155:7  200:3  201:5 **then**(59) 13:11  13:23  13:23  16:1  16:19 19:11  19:25  22:11  22:13  23:1  23:13  25:2 31:5  32:11  33:22  38:19  39:21  42:13  47:6 55:22  60:7  62:17  68:9  69:1  69:20  70:6 74:15  80:4  82:8  82:13  82:24  88:2  92:5 99:16  100:8  101:17  108:22  109:3  110:4 110:10  110:18  114:11  120:15  131:21 138:18  148:4  149:9  152:13  157:16  166:22 167:17  170:18  171:4  180:19  192:21  192:7 199:22  203:11  210:1 **theories**(1) 200:10 | **there**(196) 12:12  12:13  12:23  12:25  14:17 14:22  16:8  16:13  16:17  16:24  18:14  18:24 18:25  19:6  19:18  20:10  22:4  24:10  24:11 24:13  25:1  25:15  28:4  28:11  28:13  30:3 33:22  35:1  38:25  39:12  39:15  39:25  40:1 40:21  41:1  45:14  46:23  49:2  50:4  52:3 53:20  54:3  57:16  58:12  60:18  61:17  62:5 64:15  64:17  66:9  74:4  74:25  76:20  77:4 79:16  80:22  81:2  81:9  85:19  86:5  87:14 87:18  95:9  96:13  96:18  96:20  97:5  98:15 99:25  100:1  100:12  100:19  102:2  103:14 103:16  103:20  103:21  103:24  104:9  106:4 107:14  107:21  108:25  110:4  110:20  110:25 111:8  114:25  118:12  123:10  124:5  124:20 124:20  125:11  125:19  125:21  126:3  127:25 127:25  127:19  127:23  128:6  135:23  139:13 139:25  140:12  144:9  148:9  150:21  151:8 152:1  155:17  155:17  155:23  155:23  155:24 156:3  157:9  157:25  158:4  159:18  159:19 159:24  160:19  160:25  162:17  162:21 163:20  165:20  165:23  167:8  167:23  167:2 171:12  173:17  174:11  174:24  175:3  176:2 176:24  176:25  177:5  177:8  178:5  179:20 179:22  180:19  186:25  187:5  192:20  192:2 193:8  194:1  194:19  195:9  196:4  196:19 196:19  196:24  196:25  198:4  198:17  198:1 199:2  199:4  199:9  200:18  200:23  200:23 201:10  201:24  202:18  203:14  204:20  207: 207:9  208:3  208:7  209:7  209:8  209:10 209:17  209:18  210:3  210:11  210:17  211:2 212:23  213:25  214:5  214:8  216:8  216:24 216:25  217:14  220:4 **there's**(54) 18:17  19:22  20:12  20:17  23:25 28:4  31:20  32:8  32:8  32:25  40:12  42:7 70:12  89:8  92:18  100:7  106:25  109:23 103:3  110:20  111:5  117:18  118:8  118:12 124:23  126:13  127:4  128:2  130:21  132:22 134:1  134:3  140:22  140:24  141:10  142:8 142:9  144:2  146:25  150:11  151:14  151:21 161:11  165:21  173:5  177:23  188:10  191:7 193:9  193:10  200:17  207:13  209:5  209:24 **thereafter**(1) 215:16 **thereby**(2) 14:19  120:20 **therefore**(7) 27:21  51:11  58:8  66:8  116:13 122:9  124:11 **therefrom**(1) 197:2 **therein**(1) 215:2 **these**(92) 12:24  17:20  20:9  21:3  22:7 22:18  24:12  24:17  25:20  25:22  26:9  26:15 27:19  32:14  34:11  43:19  44:2  44:13  45:2 51:7  53:17  55:12  55:17  59:20  61:9  61:12 61:21  62:1  62:7  62:9  67:16  70:16  71:18 71:24  73:4  73:7  73:18  75:23  79:23  95:14 96:7  97:11  108:5  108:5  109:10  115:14 121:20  122:8  125:3  126:2  128:14  129:18 130:23  131:14  131:14  131:20  133:3  147:5 158:3  163:22  164:6  164:7  166:18  176:4 177:5  183:21  184:2  184:6  184:13  184:15 184:17  185:21  186:13  186:22  187:22 188:14  192:25  196:9  196:15  197:10  198:1 198:14  199:20  200:5  205:10  205:11  208: 210:8  214:5  214:12  214:17  214:21 | **they**(301) 13:11  13:12  13:18  13:20  13:21 16:7  16:7  17:15  18:4  18:4  21:7  21:13 21:13  21:14  21:14  22:5  22:6  22:9  22:17 22:17  23:6  23:7  23:22  24:18  25:5  25:21 25:24  27:20  28:8  28:10  29:12  29:19  30:1 31:12  31:13  31:14  32:5  32:7  32:21  32:22 34:17  35:6  35:7  36:13  36:13  36:14  37:20 39:15  40:2  40:19  40:22  40:23  41:12  41:1 43:18  43:19  52:1  52:19  52:20  53:5  54:8 54:18  54:19  54:20  57:21  58:17  58:17 58:17  58:20  61:22  62:11  62:12  62:22 63:15  65:2  65:4  65:5  65:6  65:6  65:10  65: 65:19  65:20  65:22  65:24  66:1  66:1  66:6 66:7  66:11  66:25  67:1  67:2  67:4  67:5 67:5  67:6  67:6  67:7  67:10  67:14  68:5 68:5  68:7  68:7  68:14  68:16  68:17  68:17 68:17  68:18  68:18  68:19  68:23  68:24 68:25  69:3  69:5  69:6  69:6  69:7  69:8  69:9 70:24  70:24  70:25  71:2  71:8  71:11  71:25 72:23  74:1  74:2  74:12  74:15  74:25  76:9 77:22  77:25  78:2  78:6  78:25  79:1  79:4 80:24  81:3  81:14  81:21  82:19  82:20  82:2 83:4  83:6  83:7  83:8  83:10  83:15  83:17 83:19  83:22  83:24  84:7  84:14  85:16 85:16  85:18  85:18  85:22  85:24  86:18 86:19  89:19  90:11  90:12  90:19  93:12 93:12  93:12  93:13  93:14  93:20  93:21 93:24  95:10  95:12  97:1  98:13  99:1  99:6 99:7  99:11  103:1  105:18  107:18  109:12 112:20  113:13  113:16  113:16  113:17 113:24  113:25  113:25  114:11  114:13 116:18  117:20  117:25  118:1  121:2  121:5 121:23  123:7  123:8  123:9  125:5  127:20 127:20  127:21  132:11  132:14  134:7  134:7 135:16  136:8  136:10  136:11  136:12  138:2 138:23  139:11  139:20  139:22  141:1 141:11  142:12  143:2  143:25  144:5  144:7 145:14  145:17  145:21  145:25  146:3  147:1 150:2  150:5  151:23  151:25  152:7  152:9 152:12  152:14  152:18  152:19  152:22 153:11  153:16  153:22  153:22  153:24 153:25  155:7  155:11  155:11  155:21  155:2 162:1  162:1  162:2  164:8  166:1  166:19 166:19  166:23  167:12  168:10  170:13  171: 174:3  174:4  174:4  174:5  177:19  178:3 178:9  179:1  179:22  179:23 **they**(60)  179:24  179:25  180:2  182:23 183:1  183:2  183:3  184:11  184:11  187:4 187:5  188:1  188:5  188:23  188:24  189:7 190:11  191:4  191:7  191:11  191:20  191:22 191:25  192:3  192:17  192:17  192:18  193:4 193:6  193:14  193:21  194:3  194:8  194:9 194:11  194:17  195:2  195:16  195:17  195:2 196:23  198:15  198:23  198:25  199:18 199:22  199:23  199:23  202:2  203:12  204:4 207:4  207:11  208:15  208:25  214:6  214:15 215:1  215:21  218:5 **they'd**(1) 14:21 **they'll**(3) 56:13  84:19  93:19 **they're**(70) 11:25  14:9  23:23  30:23  39:14 40:6  40:23  41:15  43:20  48:11  51:12  56:2 57:18  61:11  61:16  62:10  62:11  65:23 66:15  67:3  67:4  69:4  69:15  76:6  76:19 77:21  77:22  77:23  82:1  82:1  83:18  83:19 84:8  91:11  99:5  112:15  119:18  125:6 125:7  135:16  136:11  136:12  136:13  138:2 138:22  138:22  140:25  141:9  142:6  142:11 144:10  144:12  144:23  148:25  149:22  150: 150:6  167:16  167:19  170:2  178:22  187:3 188:8  188:14  193:21  194:4  194:23  196:22 203:13  203:14 **they've**(22) 38:9  62:8  76:6  78:1  78:7  91:6 121:4  121:5  123:6  150:24  154:17  155:10 170:12  177:23  178:16  178:17  180:2  187:14 194:8  201:4  207:14  215:17 | **thing**(17) 23:21  35:15  54:7  67:9  75:10 100:14  103:15  106:8  107:7  133:4  147:5 173:6  193:24  207:5  207:11  209:3  211:15 **things**(25) 11:6  11:13  12:21  12:23  14:14 19:18  28:9  38:17  38:18  50:15  67:24  96:18 97:11  102:23  104:8  115:4  128:14  143:22 147:24  155:4  163:23  170:25  191:9  193:2 193:24 **think**(294) 11:14  11:19  11:21  11:25  12:6 12:11  12:23  13:11  13:18  15:24  16:17 17:22  17:25  18:7  18:11  19:20  20:11  20:25 21:8  28:2  28:8  28:10  28:12  28:14  28:21 29:13  29:19  30:5  30:16  31:14  31:20  32:20 32:24  33:2  34:5  34:10  34:24  36:15  37:15 38:1  39:15  40:5  42:12  42:22  44:7  45:10 45:14  45:18  46:2  47:7  47:10  47:19  48:6 48:14  48:14  49:15  51:7  51:11  51:16  51:20 52:13  52:17  53:7  53:22  54:4  54:20  54:25 56:2  56:8  56:14  59:1  59:22  61:12  61:21 63:10  63:16  66:6  66:23  67:1  67:3  67:4 67:15  68:17  69:12  69:25  70:25  71:5  71:7 71:9  71:13  71:16  73:24  76:6  76:21  76:23 77:2  78:4  79:4  79:20  79:22  82:10  83:9 83:24  84:4  84:6  84:14  84:20  85:19  86:4 86:10  86:15  86:24  87:13  88:7  89:5  89:19 90:12  91:20  91:24  94:8  95:14  96:11  97:2 97:12  98:24  99:5  99:9  99:9  99:10  99:16 100:12  100:15  101:3  101:7  101:21  102:12 105:3  105:4  106:19  107:1  107:14  108:15 108:21  110:20  112:25  113:5  113:15  113:19 114:13  114:24  115:1  115:4  117:7  117:8 118:1  118:8  118:19  119:19  119:22  121:17 121:22  123:17  123:18  124:12  124:18 124:23  125:2  125:4  125:15  125:24  125:25 126:13  126:15  126:20  127:9  127:12  127:18 127:22  129:14  129:17  129:19  130:3  130:8 130:21  131:1  131:5  132:20  132:22  133:1 133:23  134:10  135:13  141:18  142:10  143:3 143:6  143:9  143:17  143:24  144:6  147:6 148:3  150:8  151:9  152:3  152:5  152:12 152:24  153:5  154:15  154:20  155:16  157:7 157:18  157:18  158:2  158:7  158:12  159:2 159:16  159:17  159:22  160:4  161:7  161:8 161:8  162:18  162:20  163:19  163:3  164:5 164:8  164:9  165:25  166:15  167:7  167:12 167:22  168:1  171:7  171:9  171:13  172:5 172:14  172:18  173:5  174:24  175:1  175:5 175:24  177:25  178:7  178:10  178:12  178:19 178:22  180:6  180:8  180:12  180:12  182:17 182:25  183:1  183:10  187:8  188:11  188:13 189:22  189:23  192:22  195:7  196:12  196:18 198:22  199:17  200:10  201:20  202:1  204:6 205:3  205:5  208:11  208:19  209:1  209:2 209:3  209:9  209:19  210:15  210:25  213:7 215:11  217:21  218:21 **thinking**(4) 94:4  170:25  172:7  211:11 **thinks**(5) 18:10  124:18  126:24  134:6  203:3 **third**(12) 48:20  48:23  63:4  72:11  88:3 152:10  159:16  165:21  186:13  193:5  206:13 214:6 **third-party**(5) 38:22  39:1  39:11  39:23 **thirteen**(1) 158:9 **thirty**(6) 105:2  119:8  142:13  172:3  172:5 183:11 **thirty-five**(2) 153:24  172:17 **thirty-two**(1) 122:25 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **this**(299) 14:11 15:16 15:17 16:5 16:5 16:11 16:12 16:20 17:11 17:12 17:15 17:23 17:23 18:20 19:14 21:20 22:2 22:3 22:25 23:22 24:5 24:16 24:22 26:21 26:25 27:3 27:10 27:11 27:21 27:22 29:4 29:13 29:21 30:3 30:5 30:8 30:14 32:10 33:6 34:1 34:3 34:4 34:6 34:16 34:22 35:14 35:14 36:19 36:21 36:25 37:19 41:24 42:22 43:15 43:19 44:6 44:10 45:9 45:14 45:18 45:22 46:21 48:10 48:14 49:4 49:8 49:9 49:13 49:21 50:12 50:15 50:17 51:19 53:7 53:8 54:8 54:9 54:15 55:15 56:6 56:18 57:6 57:20 57:25 58:1 58:3 58:5 58:13 58:19 58:22 58:25 59:8 59:20 61:7 62:2 62:17 63:2 63:4 63:10 65:13 66:17 67:16 67:21 68:4 68:19 69:19 69:22 70:3 70:5 71:2 71:8 71:11 71:22 72:1 72:21 72:22 73:2 74:8 78:3 78:5 78:18 79:8 80:13 80:18 81:3 81:4 82:12 82:13 83:10 83:14 84:6 84:7 84:16 85:7 85:8 86:9 86:25 87:7 90:3 90:11 90:17 91:4 91:15 93:9 93:14 93:20 94:16 95:1 95:15 95:15 96:6 96:6 96:14 96:24 96:25 97:3 97:17 97:19 98:12 98:13 98:16 98:17 98:20 99:2 101:4 101:12 102:10 103:11 103:14 105:14 106:13 106:17 107:8 107:8 107:9 107:20 109:22 110:23 112:14 114:3 114:7 117:19 119:8 121:8 121:8 122:19 124:12 124:12 124:14 125:3 126:3 126:18 126:19 126:24 126:24 127:4 127:12 127:23 128:17 128:21 129:4 129:7 129:17 130:25 131:6 131:15 132:10 132:14 132:22 133:1 133:18 133:23 135:1 138:16 139:13 139:14 139:17 140:10 140:11 140:21 141:1 141:8 141:19 142:2 142:10 144:3 144:6 144:19 144:21 144:23 145:17 146:5 146:15 146:22 147:11 147:15 149:4 151:8 151:11 152:23 158:1 158:17 158:24 162:13 164:2 166:2 167:1 171:5 171:6 174:2 175:23 176:6 176:20 177:14 178:8 179:14 179:13 180:8 180:18 181:20 183:8 183:10 184:4 185:15 185:15 185:20 186:20 187:12 187:21 187:25 188:7 188:18 188:19 189:9 189:14 189:22 195:14 196:12 198:12 201:13 203:16 205:3 205:25 206:3 206:7 207:3 207:14 208:5 208:7 209:1 209:14 211:19 215:4 215:14 216:5 216:8 216:21 220:7 | | **thoughtful**(2) 16:3 204:14 **thoughts**(1) 125:3 **thousands**(1) 140:21 **threat**(1) 127:14 **three**(26) 12:6 13:14 13:24 15:13 21:16 51:23 52:13 57:8 66:23 68:14 71:18 71:24 72:8 72:14 72:17 74:3 107:25 115:15 117:16 120:1 143:14 143:17 158:22 185:9 194:3 199:9 | | **toto**(1) 30:12 **touch**(2) 101:22 107:7 **toward**(2) 134:13 173:1 **towards**(1) 182:1 **town**(1) 170:23 **tracked**(1) 21:16 **tracks**(2) 52:1 176:13 **trade**(46) 5:44 20:4 20:7 20:11 20:16 20:17 112:14 122:19 122:22 122:25 135:1 135:15 135:19 135:19 135:20 136:11 136:18 136:25 136:25 137:1 137:4 137:10 137:13 137:14 137:19 137:21 137:23 138:7 138:19 138:21 139:20 140:1 140:3 140:23 141:7 142:4 142:24 148:14 149:25 150:1 160:22 160:24 164:13 164:16 169:1 | | **trust's**(2) 92:12 199:8 **trustee**(15) 3:44 3:44 117:4 184:9 195:18 195:22 196:8 196:10 196:14 197:8 209:15 209:21 210:22 211:2 211:4 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **uncontested**(1) 173:17 | | **unwelcome**(1) 127:9 | | **viable**(5) 166:19 166:23 179:15 197:10 213:24 | | **wars**(2) 145:19 153:9 | |
| **undefined**(1) 38:25 | | **updating**(1) 219:7 | | | | **was**(177) 12:1 15:7 15:20 15:24 16:14 16:15 19:1 19:2 19:12 19:13 20:18 21:11 22:4 23:11 23:12 24:13 24:23 25:15 28:19 30:7 31:24 32:1 32:15 33:2 33:12 34:24 35:23 36:12 36:22 37:2 37:19 39:2 39:4 41:20 41:22 43:2 43:2 44:17 46:18 46:24 47:22 49:4 49:5 50:2 50:16 55:22 55:24 56:11 59:4 74:18 80:15 81:13 81:13 82:2 82:22 83:3 86:10 87:21 88:8 89:5 90:4 93:18 94:5 94:17 95:17 96:4 97:7 98:15 98:15 99:18 99:19 100:20 100:20 101:1 101:4 102:20 103:18 103:21 108:7 108:10 108:11 109:18 109:21 110:2 110:10 118:1 122:18 131:16 139:19 140:6 142:2 142:25 143:3 144:6 144:20 145:16 147:16 147:23 149:24 150:14 150:16 150:21 152:1 153:2 153:21 154:2 155:14 155:20 156:2 160:25 166:7 166:10 166:10 166:15 167:15 168:24 170:18 170:24 171:17 172:7 174:8 174:24 176:3 176:12 176:16 177:8 177:8 177:11 177:18 177:19 181:24 182:1 182:3 182:4 184:23 189:7 189:12 190:5 190:6 190:15 191:22 192:20 192:21 192:25 193:1 193:17 193:25 194:5 194:8 198:9 199:3 199:15 200:20 202:1 203:11 207:19 208:2 208:7 209:25 210:23 210:23 210:24 211:1 211:9 211:24 212:22 215:5 215:10 216:16 218:6 220:10 | |
| **under**(94) 21:15 24:12 28:21 32:5 37:25 39:8 39:10 39:12 39:13 39:14 39:17 41:9 41:21 42:9 42:12 42:13 42:15 44:22 45:11 45:25 49:1 49:7 49:11 49:14 49:20 61:12 62:2 70:4 70:12 71:8 73:10 73:18 75:23 76:10 76:18 76:19 76:24 76:25 77:7 79:1 83:13 84:21 85:24 86:3 88:5 88:19 88:21 88:23 89:1 89:12 89:14 93:4 96:11 96:12 97:20 104:3 110:16 116:9 116:17 119:25 127:17 131:11 131:16 141:17 141:20 142:14 144:1 159:5 159:8 159:16 160:14 160:14 164:6 165:12 167:21 185:1 186:18 187:19 189:3 190:15 192:2 192:6 192:7 196:8 196:13 197:2 206:13 206:14 210:8 210:9 210:16 210:25 211:20 218:24 | | **upfront**(1) 29:9 | | | | | |
| | | **upon**(18) 42:11 53:10 53:13 61:21 62:12 82:3 82:3 83:4 84:11 93:23 113:1 137:3 138:13 157:24 162:21 193:25 202:1 | | | | | |
| | | **urge**(3) 17:23 125:13 148:22 | | **viewing**(1) 15:4 | | | |
| | | **urges**(1) 137:21 | | **views**(3) 127:19 131:19 151:15 | | | |
| | | **use**(16) 14:24 16:2 16:14 46:6 76:10 91:22 100:1 100:15 105:17 123:16 123:18 128:5 131:24 133:1 145:15 158:17 | | **vindicated**(1) 26:18 | | | |
| | | | | **violate**(1) 202:15 | | | |
| | | **used**(5) 41:24 73:10 102:5 141:5 167:19 | | **violation**(1) 79:2 | | | |
| **undercut**(1) 185:19 | | **useful**(1) 125:4 | | **virtually**(6) 11:15 42:24 49:17 54:3 80:23 116:9 | | | |
| **underlie**(2) 109:7 109:11 | | **using**(9) 32:21 49:24 76:5 88:8 121:15 150:14 151:9 151:11 199:17 | | **virtue**(3) 48:19 50:5 75:1 | | | |
| **underlying**(6) 47:2 48:19 81:6 91:16 144:16 178:19 | | | | **voice**(1) 148:11 | | | |
| | | **usually**(2) 43:8 100:10 | | **voiced**(1) 19:2 | | | |
| | | **vader**(1) 153:11 | | **voidable**(1) 184:17 | | | |
| **understand**(32) 15:5 31:9 37:15 43:11 44:23 47:8 57:15 64:23 65:6 65:25 67:7 81:5 91:5 91:10 91:16 93:11 93:12 109:1 136:18 142:19 150:12 150:13 168:22 183:11 193:8 193:11 208:22 210:20 211:10 211:21 215:18 219:6 | | **vail**(1) 7:42 | | **volume**(2) 33:16 86:14 | | | |
| | | **valid**(1) 210:3 | | **voluntary**(1) 45:25 | | | |
| | | **valuable**(1) 26:15 | | **vora**(1) 9:37 | | | |
| | | **valuation**(21) 52:16 52:25 53:25 55:23 57:16 58:15 58:18 58:21 80:13 80:17 80:19 80:25 81:1 81:20 83:21 83:23 108:18 108:24 109:1 109:16 114:12 | | **vote**(26) 12:1 27:9 69:10 82:1 93:13 94:11 120:25 121:3 123:23 123:24 131:8 136:11 137:22 138:12 138:16 142:12 144:1 144:8 144:9 144:11 146:24 152:11 152:4 152:19 152:21 154:13 | | | |
| **understandable**(2) 40:5 59:12 | | | | | | | |
| **understanding**(8) 40:16 75:20 75:21 155:23 161:19 170:7 210:4 215:22 | | **value**(35) 24:17 54:2 54:10 54:16 55:9 55:25 56:4 56:10 56:11 57:22 57:22 58:1 58:15 59:1 60:6 60:13 81:22 82:7 93:19 108:17 108:20 109:12 116:8 120:9 120:19 120:22 128:17 129:13 158:22 158:23 204:9 208:1 209:1 214:8 | | | | | |
| | | | | **voted**(3) 68:5 94:3 152:15 | | | |
| **understood**(2) 134:15 166:3 | | | | **voter**(10) 17:6 41:17 94:2 94:10 96:16 96:16 99:12 106:20 113:3 128:1 | | | |
| **undertaken**(2) 182:24 191:12 | | | | | | | |
| **undertaking**(1) 189:17 | | **values**(1) 56:23 | | **voters**(5) 16:9 71:13 84:5 98:22 100:13 | | | |
| **underway**(1) 182:3 | | **vanilla**(1) 178:13 | | **votes**(10) 68:5 68:6 123:24 136:11 138:4 146:16 152:22 153:4 153:17 155:6 | | | |
| **undetermined**(1) 129:8 | | **varied**(1) 189:9 | | | | | |
| **undoubtedly**(2) 101:2 144:19 | | **variety**(6) 19:11 48:25 86:6 159:2 179:16 179:21 | | **voting**(28) 16:7 24:1 24:4 27:21 39:13 39:18 51:10 53:9 59:19 68:4 68:5 84:13 93:16 99:10 100:9 105:9 112:15 122:2 134:19 136:12 136:13 136:14 138:20 138:21 157:3 174:7 174:8 174:12 | | | |
| **unfair**(3) 24:20 24:24 77:21 | | | | | | | |
| **unfortunately**(6) 35:14 54:17 95:17 134:11 200:9 200:25 | | | | | | | |
| | | **various**(15) 21:12 29:3 59:8 75:22 75:22 79:24 85:10 99:23 139:11 144:13 149:22 156:1 159:11 178:9 181:6 | | **wade**(2) 24:20 128:2 | | | |
| | | | | **wagner**(1) 7:30 | | | |
| **unfounded**(1) 183:1 | | | | **waisman**(1) 8:14 | | **ways**(8) 15:13 16:15 17:10 73:23 79:24 160:8 183:18 213:6 | |
| **unganily**(1) 48:13 | | **varying**(1) 131:19 | | **wait**(5) 38:13 101:13 119:6 123:15 123:20 | | | |
| **unhappy**(1) 207:4 | | **vast**(2) 68:6 108:25 | | **waited**(1) 188:1 | | | |
| **unheard**(1) 185:6 | | **vehicle**(1) 126:25 | | **waiting**(1) 193:23 | | **we'd**(6) 22:22 28:6 50:18 52:4 78:7 87:1 | |
| **unheated**(1) 201:22 | | **vehicles**(1) 125:4 | | **waive**(2) 200:3 200:10 | | **we'll**(29) 12:10 22:10 22:10 23:8 45:11 53:22 76:10 81:2 91:21 99:2 101:6 111:19 119:13 123:9 123:25 140:2 140:2 140:3 148:21 156:25 157:4 157:8 173:1 173:12 173:14 187:13 187:22 190:9 200:15 | |
| **unidentified**(2) 111:18 150:16 | | **vending**(1) 17:19 | | **waived**(2) 198:6 198:10 | | | |
| **unidentiied**(1) 168:5 | | **vendor**(3) 199:21 200:2 200:2 | | **walk**(1) 199:16 | | | |
| **unique**(1) 158:9 | | **vendors**(14) 182:13 194:3 194:20 195:15 199:20 199:22 199:23 199:24 200:5 200:7 203:14 204:2 204:24 205:17 | | **want**(65) 22:6 22:25 23:7 31:13 45:10 49:6 49:9 52:6 56:23 58:8 58:20 67:14 67:25 68:15 69:19 69:22 72:23 77:22 78:22 82:25 84:23 84:23 84:25 85:11 87:6 99:1 99:11 99:17 101:22 101:24 118:18 118:20 119:13 120:1 122:1 128:5 129:20 139:18 140:3 143:15 144:24 146:5 146:7 151:5 152:19 155:16 156:7 167:16 170:3 172:3 172:23 172:24 182:10 182:11 182:15 182:16 182:16 188:11 196:10 204:23 210:19 210:20 211:3 212:1 | | | |
| **united**(3) 1:1 12:1 121:19 | | | | | | | |
| **universe**(10) 37:1 44:23 45:11 47:21 48:7 175:22 181:10 181:11 193:4 204:16 | | | | | | | |
| | | **verbal**(7) 156:15 163:6 174:13 212:20 216:22 217:15 220:5 | | | | | |
| **unjustifiably**(1) 183:5 | | | | | | | |
| **unless**(11) 14:2 29:21 84:22 87:23 94:12 113:2 114:15 121:22 143:7 172:23 196:23 | | **version**(14) 54:25 55:12 80:15 111:12 115:8 115:9 115:13 135:25 136:1 136:1 140:16 144:22 150:21 217:4 | | | | | |
| | | | | **wanted**(3) 35:2 44:12 44:16 50:2 51:7 58:1 60:23 69:23 79:22 107:7 125:1 149:15 150:20 155:11 160:3 161:14 161:2 180:22 199:12 203:10 212:6 212:16 218:25 | | | |
| **unlike**(1) 114:21 | | **versions**(2) 35:19 35:19 | | | | | |
| **unlikely**(7) 22:19 24:23 25:24 26:13 30:22 64:11 64:12 | | **versus**(4) 35:3 64:1 64:3 69:15 | | | | **we're**(70) 11:16 11:21 11:21 12:11 12:14 29:6 30:21 30:23 32:6 34:1 36:14 51:2 51:16 55:15 56:12 56:13 61:17 63:5 63:19 65:24 66:5 67:20 67:25 71:2 72:7 77:1 79:25 83:9 84:10 84:16 87:15 91:20 98:17 101:2 103:9 104:17 119:10 119:11 133:11 133:12 133:13 134:10 134:12 142:5 143:16 144:12 144:22 151:13 152:19 161:8 170:1 172:18 176:10 180:5 180:7 180:10 180:18 189:15 193:23 195:1 195:21 195:24 195:25 196:11 197:6 201:2 202:22 203:3 206:17 206:21 214:21 | |
| **unpersuasive**(1) 103:4 | | **very**(73) 12:23 17:14 17:22 18:16 18:16 18:16 20:3 20:6 24:17 24:24 24:24 26:15 27:16 32:12 32:25 35:21 43:8 43:15 45:3 48:14 51:8 53:8 60:15 62:21 71:6 71:22 79:2 76:12 92:18 94:22 98:11 103:15 105:8 105:9 105:20 107:8 107:8 107:8 108:1 112:10 119:1 119:12 120:16 123:5 123:6 124:9 127:15 128:16 133:4 138:10 143:10 155:5 155:10 158:6 172:18 172:18 174:1 181:1 181:11 181:19 184:1 184:10 186:9 190:19 191:18 194:13 195:10 197:3 204:1 204:24 209:19 215:13 220:6 | | | | | |
| **unprecedented**(2) 73:3 186:22 | | | | | | | |
| **unrelated**(1) 180:13 | | | | | | | |
| **unremarked**(1) 146:20 | | | | **wants**(10) 18:15 34:4 40:18 57:15 72:24 72:25 96:16 167:5 171:15 192:12 | | | |
| **unsecured**(16) 17:8 32:4 35:5 104:3 119:5 119:18 133:19 154:1 167:3 167:5 167:17 167:18 168:13 175:11 199:3 213:4 | | | | | | | |
| | | | | **wardwell**(1) 2:34 | | | |
| **unstated**(1) 148:9 | | | | **warn**(1) 100:13 | | | |
| **until**(21) 22:10 38:13 60:11 61:2 84:2 84:17 109:24 131:16 137:19 138:16 143:2 157:8 170:24 186:24 188:1 189:13 189:14 190:11 191:15 198:15 219:13 | | **vet**(2) 182:25 205:11 | | **warrant**(1) 129:12 | | | |
| | | **vetting**(3) 181:17 181:17 181:17 | | **warranted**(1) 21:8 | | | |
| **untrue**(1) 208:11 | | **viability**(1) 166:18 | | **warranties**(1) 64:6 | | | |
| **unusual**(2) 43:15 144:21 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| we've(39) | 17:24 19:11 19:11 20:12 26:7 32:24 44:22 57:13 57:24 58:2 58:9 63:4 80:7 81:1 87:5 87:11 91:15 98:9 104:12 104:13 119:18 136:3 136:5 142:10 148:20 157:24 161:7 175:20 177:12 178:19 182:7 184:5 200:24 201:6 202:3 204:19 207:15 215:16 219:25 | | what(275) | 12:3 12:5 15:1 15:18 15:23 15:24 16:1 16:21 16:22 17:22 18:13 19:1 19:13 21:7 21:17 21:17 21:21 22:1 22:5 22:16 22:22 23:1 23:6 23:14 23:20 23:23 23:24 24:3 24:6 24:19 27:3 27:8 28:6 29:17 29:18 29:19 29:22 30:4 30:7 30:16 33:11 35:7 36:1 36:10 36:10 36:25 37:16 37:17 37:25 38:9 39:21 40:14 41:3 41:15 41:15 42:14 44:13 44:16 44:19 44:23 45:4 45:10 46:24 47:7 47:12 48:8 48:11 49:8 49:15 50:12 50:14 51:7 53:11 53:11 53:13 53:12 58:16 59:12 62:1 63:4 63:24 64:1 65:9 65:14 67:4 67:5 67:5 67:5 67:10 67:12 67:18 68:1 68:1 68:5 68:9 71:5 72:22 73:24 74:4 75:5 75:6 75:9 78:2 82:1 82:17 82:22 83:20 85:7 85:14 85:15 86:15 86:18 86:19 86:20 86:21 87:24 89:18 89:19 90:6 90:10 93:11 93:24 98:1 98:17 98:25 99:1 99:5 99:8 99:9 99:20 99:22 100:10 100:16 100:20 100:21 104:7 104:11 104:23 105:15 105:19 106:1 107:9 109:11 112:16 113:1 113:11 117:2 118:5 118:15 123:12 123:20 124:7 124:13 125:22 125:24 128:12 130:18 130:18 132:1 133:16 133:17 133:18 133:19 133:20 133:22 133:25 134:5 134:8 134:8 134:11 134:20 135:16 136:11 136:12 136:15 136:16 136:23 137:10 138:10 138:12 138:21 138:22 138:23 139:13 140:2 141:3 142:10 142:12 142:25 143:9 143:10 143:1 144:10 144:20 144:22 147:23 148:19 148:22 149:10 149:16 150:7 151:9 152:12 152:14 153:15 153:19 154:16 155:14 155:21 155:22 156:16 157:6 158:6 158:19 159:10 163:8 164:17 165:1 165:15 167:16 168:1 168:25 168:25 170:6 170:6 170:18 171:7 173:10 175:18 176:15 176:24 176:24 177:5 178:9 179:13 180:2 180:22 181:9 184:22 186:2 187:6 189:7 189:25 191:21 192:11 192:17 193:12 196:24 200:20 201:2 202:1 202:3 202:18 202:19 202:20 203:8 203:17 203:22 203:22 204:19 205:3 207:17 208:16 208:25 209:7 209:12 209:1 209:13 211:18 211:24 219:25 219:25 | | whether(43) | 20:1 36:19 36:19 39:1 41:12 43:6 43:5 49:10 49:11 50:4 61:19 68:14 73:25 81:5 81:6 82:3 87:17 89:1 89:4 90:19 93:12 97:20 113:24 115:8 128:23 132:6 140:7 150:2 150:3 152:14 159:6 165:11 170:13 170:14 171:15 180:8 184:1 184:16 186:24 191:20 200:22 209:21 219:19 | | will(155) | 11:23 12:2 13:11 13:18 14:12 14:23 18:4 22:9 23:4 23:16 27:2 28:18 29:22 30:3 30:8 30:9 31:4 31:8 34:22 38:2 40:22 40:23 41:1 42:20 44:7 45:16 50:12 51:8 53:2 54:13 57:16 58:10 58:22 63:3 63:5 63:9 65:18 68:4 71:19 72:1 72:13 83:13 84:10 86:20 86:21 87:15 87:22 90:8 91:16 91:17 91:15 92:3 93:7 93:21 94:16 95:9 96:8 96:22 99:17 100:21 101:1 101:3 101:9 106:20 107:19 109:5 109:12 109:15 109:24 111:12 116:14 118:25 120:9 120:18 120:22 122:24 123:7 123:10 127:20 127:23 128:13 128:14 129:14 129:17 132:11 132:12 132:15 132:23 137:10 138:3 138:24 142:10 143:2 145:21 149:11 149:17 149:18 149:25 152:4 152:13 154:7 154:9 154:11 154:18 154:24 156:21 157:10 157:15 158:13 163:19 164:10 164:25 165:6 165:6 165:9 165:25 166:15 169:25 170:24 171:4 174:4 174:5 174:15 175:13 175:14 177:16 183:12 184:18 185:16 185:21 187:9 187:20 187:20 190:24 199:2 200:25 201:23 201:24 206:25 210:17 211:23 211:23 212:2 212:25 212:25 215:18 215:22 217:2 218:21 218:21 219:7 219:7 219:13 219:24 |
| weaponized(3) | 73:11 73:13 73:14 | | | | | | | | |
| weaving(1) | 170:1 | | | | | | | |
| wednesday(4) | 173:6 173:7 173:9 219:16 | | | | | | | |
| week(3) | 44:5 170:23 191:1 | | | | | | | |
| weekend(2) | 35:23 46:12 | | | | | | | |
| weeks(2) | 189:15 192:23 | | | | | which(157) | 14:1 14:23 15:7 15:9 15:25 17:24 18:12 22:18 24:17 24:22 25:6 26:9 26:12 26:15 30:5 32:21 32:22 34:13 34:20 34:22 37:2 38:23 40:23 41:19 42:8 42:16 45:2 48:20 49:15 51:24 52:1 52:17 54:7 54:9 56:2 57:4 59:5 63:21 68:6 78:9 79:3 81:16 83:1 83:2 83:4 83:12 84:11 86:6 89:1 93:7 96:14 97:8 98:19 99:18 100:1 100:4 100:6 104:5 105:3 105:11 105:20 106:6 107:17 108:10 108:11 109:6 109:21 111:16 112:6 112:25 112:25 114:1 117:13 119:22 120:22 122:23 123:9 123:17 124:5 124:7 124:9 125:22 127:17 128:1 128:3 128:20 131:22 134:13 142:13 143:1 143:8 144:15 148:24 153:24 156:8 157:15 161:2 162:6 162:10 163:20 164:23 165:16 165:16 166:3 166:23 168:22 168:25 171:1 176:12 176:12 176:14 176:24 176:25 177:9 177:12 177:16 177:22 178:2 179:4 179:15 179:16 179:21 180:14 181:12 181:24 184:8 184:14 184:15 185:10 185:1 185:20 185:22 185:22 188:2 188:3 194:1 194:12 194:14 195:6 197:8 198:3 198:15 198:25 199:2 199:24 200:24 201:13 203:1 210:9 211:23 211:25 212:3 212:24 213:13 214:18 218:1 219:18 |
| weigh(1) | 209:23 | | | | | | | |
| weight(1) | 86:20 | | | | | | | |
| weighted(3) | 66:23 68:16 68:23 | | | | | | | |
| weil(1) | 8:12 | | | | | | | |
| weiss(1) | 7:45 | | | | | | | |
| weitman(1) | 7:6 | | | | | | | |
| well(111) | 14:4 16:11 17:3 19:25 25:14 26:2 28:2 29:25 32:1 32:13 35:11 35:23 38:15 39:21 39:23 41:24 42:12 43:19 45:20 47:13 48:14 51:1 63:1 63:4 67:16 69:24 71:19 73:10 73:23 74:7 74:16 76:7 80:6 84:12 85:25 86:17 89:17 91:18 92:10 97:7 97:23 98:23 101:8 103:9 103:22 105:19 107:5 108:20 110:19 110:21 112:2 114:6 118:5 118:13 121:20 123:13 123:23 125:7 127:5 127:22 130:6 140:7 142:5 142:24 144:17 146:1 151:20 153:10 154:2 156:23 157:4 157:18 158:18 159:19 160:25 161:13 162:18 163:7 164:10 167:1 167:23 167:24 168:3 169:8 169:16 171:9 171:19 173:14 174:1 176:7 180:17 188:23 191:7 191:9 194:4 195:2 196:13 197:20 198:20 203:14 204:19 207:9 207:14 207:1 208:14 210:3 211:6 211:8 217:4 218:14 219:8 | | | | | | | |
| well-taken(1) | 164:5 | | | | | | | |
| well-written(1) | 125:8 | | | whichever(1) | 66:1 | | | |
| wellington(1) | 19:9 | | | while(14) | 63:2 72:16 89:7 97:15 125:1 126:16 163:21 163:22 164:5 181:19 185:1 191:20 211:13 218:4 | | | |
| wells(1) | 5:4 | | | | | | | |
| went(6) | 23:3 56:9 58:17 132:1 139:24 164:19 | | | white(3) | 5:14 15:20 60:1 | | | |
| | | | whatever(12) | 14:9 21:6 31:3 31:13 31:19 48:10 77:22 107:16 122:18 138:20 165:21 196:6 | | whitman(4) | 179:6 183:10 207:20 208:11 | | |
| | | | | | | whitman's(2) | 182:7 199:18 | | |
| were(126) | 11:17 14:25 15:2 15:3 15:4 18:25 18:25 19:6 19:7 21:3 21:6 21:7 21:12 21:13 21:17 22:2 22:17 22:18 26:1 44:10 44:13 45:3 48:11 67:12 67:17 75:1 76:9 78:25 79:1 81:12 83:7 85:19 89:5 91:8 92:25 97:21 97:23 98:14 102:4 102:9 103:20 104:9 113:20 115:14 115:16 118:5 139:25 140:15 140:22 141:8 142:24 143:2 147:15 148:5 148:6 148:7 151:6 151:8 151:23 152:1 152:22 153:17 153:22 153:2 154:13 155:21 155:23 155:24 155:25 159:19 163:15 163:16 167:22 171:16 172:13 173:14 174:6 174:24 176:25 177:5 177:6 179:21 179:22 179:23 181:22 185:2 187:22 189:5 189:17 191:21 191:22 191:24 191:25 192:2 192:5 192:6 193:2 193:4 193:5 193:14 193:15 194:1 194:19 194:20 199:9 199:9 199:22 199:24 200:16 201:18 201:20 204:25 205:10 206:11 207:18 208:1 208:11 212:7 213:18 214:2 214:4 214:15 217:5 218:5 218:5 | | | when(58) | 20:17 20:19 25:1 25:23 43:8 44:11 44:16 45:17 52:20 56:8 58:4 60:24 64:18 67:24 68:3 71:5 71:11 74:13 83:9 98:18 99:3 99:6 100:5 101:9 102:4 108:2 113:12 113:19 114:4 125:16 125:18 126:2 128:25 129:3 131:7 131:23 132:11 135:17 136:10 136:11 138:22 144:1 145:15 147:7 153:19 154:13 156:19 156:21 166:14 166:17 174:14 188:21 197:2 204:6 204:18 207:19 209:19 209:25 | | whitman(1) | 9:11 | | |
| | | | | | | who(82) | 13:6 13:8 14:12 15:4 17:10 17:15 17:19 18:15 19:2 24:11 24:12 24:20 26:1 30:21 33:8 39:7 39:7 39:9 39:12 39:13 39:16 39:19 40:2 44:20 44:21 45:7 45:11 63:19 66:20 67:9 67:10 67:12 70:19 71:14 73:4 75:9 76:24 95:5 96:19 119:5 124:14 124:15 124:16 132:23 133:23 134:9 134:20 142:11 147:17 149:25 149:25 150:23 152:11 154:1 154:3 154:8 154:10 155:21 156:4 165:14 166:21 174:11 184:11 184:11 185:1 187:19 192:5 192:14 194:12 194:20 199:19 199:20 200:13 201:11 203:11 203:13 203:15 205:17 206:9 212:16 216:8 217:12 | | |
| weren't(7) | 21:8 21:14 97:17 97:23 155:22 190:11 195:20 | | | | | | | |
| | | | | | | who's(1) | 106:17 | | |
| wesch(1) | 4:16 | | | | | who've(2) | 73:19 164:3 | | |
| west(2) | 1:38 4:32 | | | where(47) | 16:5 16:15 16:19 16:23 18:21 19:18 23:15 32:24 46:3 50:7 66:11 83:7 86:12 91:10 93:23 100:5 107:19 109:22 111:3 111:9 116:2 124:22 125:19 126:23 126:25 129:24 133:13 134:22 136:23 141:14 142:16 149:22 153:21 155:24 166:20 180:19 187:23 195:11 196:1 198:1 198:20 198:23 199:18 204:10 206:8 207:1 213:24 | | whoever(1) | 203:18 | | |
| wharton(1) | 7:45 | | | | | whole(12) | 15:16 17:20 30:9 49:13 57:12 58:10 98:21 124:19 124:19 126:22 127:20 190:20 | | |
| | | | where's(1) | 73:17 | | whom(5) | 17:15 149:8 156:3 162:21 210:2 | | |
| | | | whereas(2) | 32:9 64:12 | | whose(3) | 18:2 148:16 195:4 | | |
| | | | whereupon(1) | 220:10 | | why(42) | 18:9 22:1 26:25 31:14 31:23 32:10 32:12 49:12 51:12 61:22 66:6 66:12 74:1 74:6 75:23 82:18 103:10 104:18 105:10 105:13 106:8 106:10 112:7 113:15 121:17 151:15 152:9 152:17 166:23 175:3 194:9 195:3 195:23 196:24 200:2 203:22 203:23 203:24 203:25 204:2 208:22 218:2 | | |
| | | | | | | wide(1) | 103:24 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **with**(301) 11:14  12:5  12:8  12:24  13:6  13:13  13:21  13:23  17:20  18:18  20:2  20:6  20:11  20:22  21:25  22:5  22:11  22:15  23:9  26:1  26:2  26:3  27:18  29:10  29:14  29:15  29:19  30:3  30:14  30:20  31:11  31:21  32:6  32:25  33:10  34:4  34:5  34:10  34:11  34:21  34:25  35:8  35:18  36:1  36:3  36:12  36:15  36:16  37:6  37:20  38:4  38:21  40:11  40:17  40:22  40:23  40:24  40:25  41:4  43:17  43:18  43:23  44:3  44:4  44:11  45:25  46:3  46:5  46:9  46:19  47:15  47:22  48:1  49:19  49:20  50:12  51:1  51:1  51:4  51:9  51:24  52:8  52:22  53:3  53:19  53:23  54:11  55:1  57:8  57:9  57:17  57:18  57:19  58:14  59:17  60:25  61:6  62:3  62:7  62:9  62:10  62:14  65:3  66:9  66:10  67:22  70:19  71:1  72:24  73:19  75:11  75:13  77:13  80:3  80:6  81:1  81:8  81:10  81:12  82:12  85:7  87:11  87:18  88:1  89:22  92:11  94:17  95:18  95:20  95:25  96:5  99:8  101:15  103:25  105:22  106:18  107:9  107:14  107:15  108:2  108:16  108:21  108:22  109:1  109:3  109:18  110:23  113:23  116:19  118:22  120:13  121:8  121:9  121:10  122:1  122:3  122:6  122:14  125:22  126:11  126:13  127:9  127:22  129:15  129:23  130:3  130:11  133:11  134:1  134:4  134:7  134:11  134:19  136:3  136:5  141:6  142:3  142:3  143:18  143:22  144:5  145:9  145:22  146:1  146:6  146:12  147:13  147:25  150:24  151:13  151:21  151:24  152:5  152:21  153:7  153:8  153:20  154:2  154:5  155:3  155:22  156:1  156:4  160:8  163:8  163:11  164:3  164:18  164:21  165:1  165:4  165:5  165:14  165:15  165:19  165:24  166:1  166:18  168:8  170:9  171:13  174:2  175:18  175:23  176:21  177:2  178:13  179:10  179:14  180:15  180:18  180:25  181:1  181:14  181:15  181:18  181:18  181:22  182:7  182:7  182:18  182:25  184:15  184:22  184:24  185:6  185:13  185:20  187:1  187:10  188:14  189:17  189:18  190:2  190:7  190:18  191:1  191:4  192:11  195:14  195:15  195:16  198:3  199:25  200:7  200:20  203:18  203:21  205:11  205:17  205:18  205:19  206:16  207:7  207:13  207:18  208:9  209:2  209:5  209:6  209:14  210:1  210:2  211:20  212:8  212:18  213:19  214:3  214:5  214:13  214:20  214:22  214:24  214:25  215:1  215:1  215:16  215:21  215:23  216:19  216:21 | | **work**(15) 13:5  16:25  48:7  58:4  59:5  79:13  97:11  113:5  142:10  147:20  148:3  173:5  185:16  201:13  214:12<br><br>**worked**(1) 11:12<br>**working**(6) 83:18  83:19  84:8  152:6  155:10  179:14<br><br>**works**(2) 47:10  57:12<br>**world**(13) 38:1  98:17  103:23  105:9  117:19  125:19  127:2  133:11  133:12  133:13  134:10  135:16  200:12<br><br>**worried**(1) 146:3<br>**worry**(1) 195:16<br>**worse**(1) 32:4<br>**worth**(6) 25:21  25:23  124:18  124:19  193:5  214:8<br><br>**would**(241) 13:6  13:13  14:3  14:3  14:20  15:4  15:13  15:16  15:16  15:18  16:3  16:8  16:16  16:16  16:23  18:11  19:23  20:22  21:13  21:13  21:24  23:12  24:3  24:3  24:20  26:14  27:5  27:24  29:24  29:24  30:13  31:18  31:18  32:18  33:2  34:5  34:12  35:1  36:11  37:13  37:17  37:24  38:12  38:23  39:21  39:22  42:9  44:5  45:7  47:3  48:7  48:9  48:16  49:23  51:19  52:2  53:13  54:5  59:10  60:24  60:24  62:5  62:17  63:5  66:25  67:19  69:5  74:14  74:25  75:18  75:24  79:16  79:23  81:16  81:18  85:4  86:5  86:7  90:7  93:3  93:10  94:5  94:7  94:19  95:12  96:24  97:5  98:25  100:1  101:12  102:5  103:20  104:15  104:16  104:20  104:23  104:24  104:24  105:15  105:24  105:25  106:1  106:1  106:11  106:14  108:5  108:18  108:5  108:24  110:2  110:16  112:8  112:10  115:8  116:1  120:23  124:13  125:13  125:19  128:22  129:25  130:3  130:6  131:10  132:8  135:7  136:7  136:23  136:24  137:2  139:14  139:22  140:23  141:19  143:7  143:13  143:18  147:9  147:9  147:21  147:24  148:1  148:22  150:23  156:18  157:5  157:6  158:3  158:10  159:10  159:17  159:20  159:23  161:9  162:9  162:14  162:16  162:22  162:23  166:22  166:23  167:10  168:11  168:12  168:16  169:10  170:18  170:20  170:25  172:5  172:8  172:18  172:22  172:25  173:4  173:8  173:9  173:18  174:9  174:11  174:11  174:23  176:4  176:9  176:18  176:20  176:22  176:24  177:6  177:2  178:3  179:19  182:8  182:14  182:21  183:5  183:8  183:9  183:9  183:11  184:21  184:23  186:9  189:2  189:18  189:20  192:4  192:14  192:18  195:23  196:4  196:5  196:24  197:8  197:20  198:7  198:8  200:10  201:2  201:3  203:4  204:3  204:4  205:3  205:4  210:9  212:1  211:11  211:22  212:8  212:9  214:1  214:5  214:14  214:22  215:1  216:2  216:15  219:14<br><br>**wouldn't**(6) 39:18  76:9  104:14  108:4  112:8  118:7<br><br>**wouldn't**(1) 117:20<br>**write**(1) 145:20<br>**writing**(2) 139:21  143:3<br>**written**(6) 24:15  97:16  98:12  99:6  125:7  199:15<br><br>**wrong**(8) 45:16  56:13  56:13  91:3  115:5  126:13  135:25  161:1<br><br>**wrongdoing**(2) 25:10  151:12<br>**wrote**(1) 104:1<br>**yeah**(14) 15:23  36:24  51:1  75:3  90:24  91:2  106:23  111:19  118:14  127:14  134:12  139:7  169:12  204:22<br><br>**year**(3) 176:9  196:15  197:9 | | **years**(10) 119:7  119:8  120:6  123:15  128:22  131:3  132:20  133:2  155:9  208:24<br><br>**yes**(25) 13:7  38:19  40:11  56:25  62:25  66:17  67:20  72:1  73:15  74:4  88:11  91:1  91:21  113:8  128:21  130:17  132:19  133:4  141:25  141:25  149:9  157:11  162:23  186:2  211:11<br>**yesterday**(1) 91:6<br>**yet**(9) 21:12  34:20  51:24  74:16  104:18  125:15  131:20  149:9  156:3<br><br>**yield**(3) 119:1  147:21  147:24<br>**yielded**(1) 86:7<br>**yields**(1) 124:7<br>**york**(11) 2:23  2:40  3:13  3:28  3:41  4:19  4:50  5:19  5:35  5:47  6:30<br><br>**you**(301) 11:16  12:2  12:3  12:11  12:22  13:20  14:2  14:4  14:22  14:25  15:2  15:11  15:14  15:18  15:20  16:15  16:21  17:19  18:13  18:22  19:12  19:17  19:18  20:21  21:17  22:12  22:23  22:24  22:25  23:2  23:8  23:23  24:9  26:19  26:20  26:22  27:2  27:24  28:3  28:5  28:6  28:21  28:23  30:17  31:14  31:16  31:19  31:21  32:10  32:18  33:3  33:4  33:20  33:24  33:25  34:3  34:5  35:10  35:12  35:17  35:21  36:19  36:19  37:3  37:5  37:5  38:2  38:11  38:20  38:21  39:22  40:6  40:9  40:17  42:13  42:17  43:8  43:9  43:25  44:1  44:8  45:10  46:15  46:19  48:13  48:13  48:18  50:12  50:17  50:18  50:18  50:21  51:12  52:25  52:9  55:11  55:12  56:17  56:19  56:20  56:23  57:18  58:4  58:4  58:7  59:7  59:11  59:24  60:11  60:19  60:20  61:1  61:4  61:19  61:25  62:14  62:25  63:3  63:19  64:11  67:17  67:24  67:25  68:1  68:13  69:16  69:17  70:9  72:5  72:6  72:8  72:22  73:19  74:1  74:4  74:7  74:10  74:10  74:12  74:15  75:3  75:3  75:5  75:9  75:9  75:14  76:1  76:2  76:13  77:16  78:2  78:11  78:12  79:11  79:12  79:13  79:19  80:1  81:9  81:24  83:1  84:17  84:23  84:23  84:24  85:1  85:4  85:5  85:12  87:20  88:2  88:8  88:9  88:12  88:13  90:19  90:20  91:3  91:18  91:21  92:2  92:3  92:6  92:7  92:7  92:15  92:16  94:12  94:18  95:22  96:2  96:18  97:10  98:1  98:2  98:8  99:8  99:20  99:22  99:24  100:4  100:5  100:14  101:11  101:11  104:25  105:14  107:6  107:23  107:24  107:25  108:11  108:18  108:21  108:22  108:23  108:24  109:1  109:4  109:6  109:9  109:10  110:8  110:17  110:25  110:25  112:2  112:3  112:6  112:21  113:18  114:3  114:4  114:18  115:7  115:7  115:8  115:8  115:15  115:19  115:20  115:25  118:5  118:11  119:11  119:13  119:13  119:16  119:22  119:23  120:1  120:4  122:5  122:11  122:20  123:12  123:21  123:23  123:24  124:1  124:8  124:13  125:14  125:15  125:20  126:10  126:16  126:17  126:19  126:21  126:23  126:25  127:11  127:11  127:11  128:4  128:5  128:11  128:22  128:25  129:6  129:17  130:10  130:16  131:2  131:5  132:9  132:19  132:25  133:1  133:5  133:6  133:14  134:17  134:24  135:10  136:13  138:20  138:24  139:16 | | **you**(137) 139:22  140:1  140:2  140:5  140:9  140:10  140:21  141:2  141:13  141:14  141:14  141:15  141:19  141:23  142:15  142:18  143:5  143:9  143:13  143:14  143:15  144:17  145:8  145:15  145:20  145:24  146:22  147:17  148:5  148:6  148:7  149:5  149:12  149:13  149:14  150:17  150:17  151:8  151:17  151:21  153:19  154:18  155:18  156:13  157:23  157:25  158:10  158:15  160:3  161:2  161:11  162:4  162:10  163:3  164:10  166:5  167:12  168:5  168:14  168:15  168:22  168:25  169:5  169:9  169:10  169:10  170:18  170:21  171:5  171:9  171:22  172:1  172:3  172:13  172:13  172:23  173:4  173:4  173:5  173:6  173:11  173:21  174:10  174:19  174:20  174:25  175:8  177:16  177:21  180:6  180:8  180:16  182:14  182:15  182:16  182:16  183:13  183:15  188:21  190:14  190:23  190:25  192:9  194:6  196:8  196:10  196:13  197:12  197:13  199:14  200:21  201:1  201:8  201:17  203:7  204:18  204:19  205:8  207:15  208:13  208:16  209:5  210:22  211:10  211:17  212:23  213:2  216:4  216:7  217:9  217:10  217:19  219:11  219:12  220:3  220:6  220:9<br><br>**you'll**(14) 29:20  30:5  52:17  54:8  55:7  55:21  63:20  100:5  112:20  123:11  123:16  161:1  171:9  172:19<br><br>**you're**(26) 16:22  40:16  41:17  42:12  42:15  45:20  49:24  62:16  73:15  75:6  75:7  83:17  89:4  89:23  90:18  100:13  105:24  115:1  117:22  117:22  117:24  119:12  127:23  133:25  136:14  207:16<br><br>**you've**(27) 17:18  18:3  18:6  23:1  23:14  27:1  32:10  40:17  72:22  74:8  78:1  106:23  130:19  130:23  131:3  131:4  132:2  132:5  133:2  133:24  138:25  141:12  147:1  148:4  162:10  164:17  172:15<br><br>**young**(1) 4:29 |

| Word | Page:Line |
|------|-----------|

**your**(301) 11:4  11:5  11:23  13:3  15:12
15:12  17:7  17:22  17:23  18:18  18:22  18:23
19:6  20:3  20:9  20:21  20:22  22:8  22:13
24:9  24:10  25:14  26:19  26:21  26:23  27:2
27:12  28:2  28:17  28:23  28:24  29:6  29:20
30:18  31:14  31:15  31:17  32:17  33:1  33:3
33:5  33:9  34:1  34:10  34:15  34:18  35:10
35:12  35:13  35:24  36:9  36:18  37:4  37:6
37:23  38:21  44:2  45:24  46:14  48:23  49:24
50:20  51:3  51:6  51:12  51:15  51:20  52:9
53:12  54:22  55:21  56:16  56:18  57:1  59:25
60:4  60:22  61:4  62:16  62:20  62:24  63:2
63:7  63:17  64:3  67:20  68:13  69:16  69:18
69:22  69:24  70:9  71:5  71:9  72:7  72:15
74:8  75:10  75:13  75:16  76:7  78:13  79:11
79:14  79:18  79:20  80:1  80:9  80:16  80:22
81:8  82:25  83:10  84:4  84:16  84:22  85:1
85:5  85:11  86:19  87:20  88:7  88:14  89:7
89:21  90:15  91:4  91:23  91:23  92:7  92:8
92:16  94:12  95:5  96:3  96:10  97:14  98:2
98:9  98:24  99:3  99:15  99:20  100:17
100:23  101:10  101:15  101:19  104:20
104:24  105:15  106:4  106:21  107:8  107:21
107:24  107:25  108:19  111:25  112:4  112:21
113:9  114:3  114:19  115:14  115:21  115:25
116:1  117:11  117:24  118:6  118:7  118:15
118:17  119:21  121:15  122:6  122:10  122:12
123:16  123:24  125:1  125:2  125:14  126:10
126:11  127:10  127:13  130:9  130:11  131:1
131:10  132:3  132:25  133:2  133:6  133:7
133:11  134:10  134:17  134:18  134:25
135:10  135:13  139:17  141:12  141:23
141:25  142:20  142:22  143:6  143:23  145:2
145:24  146:20  147:3  147:6  147:7  147:9
148:12  148:22  149:5  149:6  149:14  150:14
150:16  151:2  151:14  151:17  151:18  154:15
155:2  155:18  155:19  156:5  156:13  157:7
157:12  157:23  158:12  159:22  160:17
160:21  161:11  161:20  162:4  164:14  166:7
166:14  167:14  168:5  168:7  168:20  168:21
169:6  169:7  169:23  169:24  170:16  170:21
171:3  171:11  171:15  171:20  172:7  172:9
173:2  173:11  173:17  174:19  174:21  175:4
175:9  177:15  178:1  178:12  179:19  180:8
180:12  180:15  180:20  180:22  180:24
181:23  182:6  182:25  183:12  183:15  183:18
184:20  185:9  186:23  187:5  188:17  189:4
189:18  189:20  192:8  192:17  194:7  196:12

**your**(50) 197:5  197:14  197:23  198:8  199:6
199:21  200:8  200:15  200:25  201:2  201:17
201:18  201:24  202:10  202:14  202:22  203:3
203:6  205:2  205:4  205:6  207:5  208:11
209:16  210:19  210:20  211:11  211:14
211:22  212:23  213:3  213:8  215:5  215:11
216:3  216:11  216:15  216:25  217:8  217:19
217:23  218:3  218:4  218:13  218:19  219:6
219:11  219:11  219:22  220:9

**yourself**(2) 126:19  147:17
**zealously**(1) 11:12
**zell**(15) 22:16  23:23  24:10  24:14  25:13
25:16  25:22  26:3  26:12  27:14  30:20  30:21
156:10  165:1  176:7

**zensky**(1) 4:14
**zloto**(2) 10:26  10:26
**zuckerman**(3) 2:26  175:14  213:3