## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### STATEMENT OF SPECIAL COMMITTEE IN RESPONSE TO OBJECTION OF AURELIUS CAPITAL MANAGEMENT, LP TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER SETTING CONFIRMATION SCHEDULE AND ESTABLISHING PARAMETERS OF CONFIRMATION-RELATED DISCOVERY

The special independent committee of Tribune Company's board of directors (the "Special Committee")[1] respectfully submits this statement in response (the "Response") to the above-referenced objection of Aurelius Capital Management, LP ("Aurelius") [Docket No. 6558] (the "Objection").

1. Although it has not directly participated in the negotiation of the procedural and discovery matters addressed by the Objection, the Special Committee wishes to correct the misleading statements made about it at pages 12-15 of the Objection. At the outset, it is relevant to note that the independence of the Special Committee in authorizing the Debtors to enter into the settlements ("Settlements") embodied in the Joint Plan[2] is evidenced by the Joint Plan itself, which does not favor, by release or otherwise, any members of management, Tribune Company's board of directors or the current shareholders of the Debtors. Indeed, there is no

---

[1] The Special Committee consists of the following individuals: Mark Shapiro, the chairman of the Special Committee (Chief Executive Officer, Dick Clark Productions), Jeffrey S. Berg (Chief Executive Officer and Chairperson, International Creative Management), Maggie Wilderotter (Chief Executive Officer and Chairperson, Frontier Communications) and Frank Wood (President and Chief Executive Officer, Secret Communications).

[2] Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 6599] (the "Joint Plan").

CHI-1782635v6

assertion to the contrary by Aurelius. Instead, Aurelius asserts that the Special Committee somehow violated its fiduciary duty simply because Aurelius would rather litigate than settle.

### *The Special Committee's Role in These Cases*

2. Following the issuance of the report of the Court-appointed examiner, which raised issues about the LBO transactions that are at the heart of these cases and, therefore, called into question the conduct of certain officers and directors in place at the time of those transactions, the Debtors' board of directors determined that it was appropriate to establish the Special Committee consisting only of directors elected after the LBO transactions were consummated. The Special Committee was officially formed on August 27, 2010.

3. Aurelius in its Objection implies that it was the job of the Special Committee to displace management and its advisors in the settlement negotiations leading to the Joint Plan. To the contrary, that was not, and should not have been, its job. In re Lear Corp. S'holder Litig., 926 A.2d 94, 118 (Del. Ct. Ch. 2007) (refusing to enjoin a merger after finding that special committee's delegation of negotiating authority to management was not a breach of special committee's duty, and noting that it is typical for boards to allow "the actual work to be done by management" and "to [sign] off on it after the fact."); In re Western Nat'l Corp. Shareholders Litig., 2000 Del. Ch. LEXIS 82, at *77 (Del. Ch. May 22, 2000) (finding that the special committee was well informed by its advisors and appropriately discharged its duty in approving merger despite not being fully informed of all of the details of the transaction).

4. In fact, the Debtors already had a very capable team of management and outside representatives who were, and had been for more than 18 months, steeped in the complex issues of the case. The Special Committee provided a constructive new element – an oversight and decision-making authority for the Debtors comprised of individuals who had no involvement and no interest whatsoever in the controversial transactions.

5. In its proper supervisory role, and with the assistance of its counsel, the Special Committee from its inception coordinated closely with the Debtors in the plan process and in the mediation to assure that its oversight responsibility would be discharged properly. Because the negotiations had reached a stage of gridlock when it was formed, the Special Committee also hoped to be able to use its authority to prompt a new phase of negotiations. This function was described in Mr. Shapiro's deposition testimony.[3]

> [T]he idea was to be purely independent, no conflicts of interest ... [and] to maximize recovery as deep as we possibly could for as many constituencies as we possibly could, to motivate the constituencies, Unsecured Creditors Committee, J.P. Morgan, you know, all the way down the line to get to the table and reach an agreement, to minimize litigation and to -- if there was going to be litigation, see that it was going to be after the fact so that the company could emerge and preserve the value of the estate continuing the business operations, which were trending upwards significantly at the time.

Shapiro Dep. at 92:1-25. In point of fact, this is exactly what happened when the Settlements were ultimately reached through the efforts of the Debtors, their creditor constituencies and the mediator.

### *The Special Committee Relied on Its Advisors, Management and the Debtors' Advisors*

6. Consistent with its theme that the negotiations were the responsibility of the Special Committee, Aurelius seems to believe that it was the Special Committee's obligation to decide whether it would be "fairer" to litigate, rather than settle, the LBO-related causes of action. But that is not the case. Instead, the Special Committee, in the exercise of its good faith business judgment, concluded only that the Settlements are reasonable under the circumstances and will provide significant recoveries that would, at best, otherwise be delayed if uncertain litigation were pursued. The Special Committee did so understanding that the Settlements are subject to the bankruptcy process and the approval of creditors and the Court.

---

[3] The term "Shapiro Dep." refers to the transcript of the deposition of Mr. Shapiro dated October 13, 2010 and filed in these cases as Docket Number 6589.

7. The Special Committee relied on its own counsel, the Debtors' management and the Debtors' outside advisors and experts in determining that the proposed Settlements are reasonable under the circumstances. It is axiomatic that boards of directors can and should rely on the analyses and determinations of management and outside experts in reaching a reasonable business judgment regarding such settlements. See Western Nat'l Corp. Shareholders Litig., 2000 Del. Ch. LEXIS 82, at *77 (noting the importance of a special committee to rely on the advice of well-qualified, independent advisors and experts in discharging its duties).

8. More importantly, the Special Committee was also able to rely on the agreement of many of the key parties in the case, including the Unsecured Creditors' Committee, after many months of gridlock. The Special Committee was greatly influenced by the fact that the Settlements were the result of an arduous mediation led by a highly respected judge who endorsed the Settlements. In that regard, Mr. Shapiro testified:

> Recovery was greater for more classes. The litigation was reduced, which was also a part of our job. And it had the endorsement of several parties that as aforementioned it didn't previously have and it had the endorsement of the mediator, who worked tirelessly to get to a deal. And, from what I was being told from advisors and counsel, he was pleased and willing to not only sign off on it but endorse it publicly, which he did by signing off on the press release.

Shapiro Dep. at 60:6-15.

9. Accordingly, the Special Committee acted exactly as it should have – it provided the much-needed comfort that the Debtors' decision-making authority was entirely independent, without self-interest or conflict. In reaching its decision, it relied on the knowledge and expertise of outside advisors and experts. It determined that a settlement reached through mediation was a reasonable alternative to uncertain litigation, and it took comfort that any

settlement would be subjected to the scrutiny and open debate required by the plan confirmation process.

### *The Special Committee Acted Appropriately in Preserving Documents*

10. Aurelius also mischaracterizes Mr. Shapiro's deposition testimony by stating that he "admitted to spoliating virtually all of his emails" relating to the Special Committee. Prior to his receipt of Aurelius' document request, Mr. Shapiro implemented his normal business practice of deleting emails and eliminating paper documents that he determined were no longer necessary for retention in order to avoid the clutter of the large mass of emails and paper flowing to him. See Shapiro Dep. at 107:7-15. This ordinary course practice, however, is not spoliation.

11. After receiving the subpoena from Aurelius requesting the production of certain documents, Mr. Shapiro, with the aid of his assistant and information technology department, canvassed all of his e-mail folders, including his folders containing previously deleted e-mails, and produced all of the documents in these e-mail folders that were requested by Aurelius. See Shapiro Dep. 109:18-20. Further, after receiving a letter from Aurelius sent two days after his deposition that requested Mr. Shapiro retain certain documents, Mr. Shapiro began to preserve his e-mails and other documents in accordance with the requests made in the letter.

Dated: December 3, 2010

SPECIAL COMMITTEE OF BOARD OF
DIRECTORS OF TRIBUNE COMPANY

By:    /s/ David G. Heiman
     David G. Heiman
     North Point
     901 Lakeside Avenue
     Cleveland, Ohio 44114-1190

     – and –

     Brad B. Erens
     David A. Hall
     77 West Wacker
     Chicago IL 60601-1692
     (312) 782-3939 (Telephone)
     (312) 782-8585 (Facsimile)

ATTORNEYS FOR THE SPECIAL COMMITTEE