IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, _et al._,<br><br>       Debtors. | )<br>)<br>) Chapter 11<br>) Case No. 08-13141 (KJC)<br>) Jointly Administered<br>)<br>)<br>) |

### DECLARATION OF DANIEL H. GOLDEN IN SUPPORT OF OPPOSITION TO MOTION OF OAKTREE CAPITAL MANAGEMENT, L.P., AND ANGELO, GORDON & CO. L.P., TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP FROM REPRESENTING AURELIUS CAPITAL MANAGEMENT, LP

I, DANIEL H. GOLDEN, do hereby declare that:

1. I am the partner in charge of the New York office of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or the "Firm"). I also head Akin Gump's financial restructuring practice group in New York. Akin Gump has more than 900 lawyers with offices in Abu Dhabi, Austin, Beijing, Dallas, Geneva, Houston, London, Los Angeles, Moscow, New York, Philadelphia, San Antonio, San Francisco, and Washington, D.C. My office is located at One Bryant Park, New York, New York 10036.

2. I make this Declaration in support of Akin Gump's Opposition to the Motion filed by Oaktree Capital Management, L.P. ("Oaktree") and Angelo, Gordon & Co. L.P. ("Angelo Gordon" and, together with Oaktree, the "Movants") to disqualify Akin Gump from continuing to represent Aurelius Capital Management, LP, on behalf of its managed entities (collectively, "Aurelius"), in these chapter 11 cases. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

**Akin Gump's Representation of Centerbridge Credit Advisors**

3. In August 2009, Centerbridge Credit Advisors retained Akin Gump as bankruptcy counsel in the chapter 11 cases of Tribune Company ("Tribune") and its affiliated debtors (collectively with Tribune, the "Debtors"). At that time, accounts and entities managed by Centerbridge Credit Advisors (collectively, "Centerbridge") held senior notes issued by Tribune.

4. When the Centerbridge representation commenced in August 2009, Akin Gump was advising Angelo Gordon on FCC-related regulatory issues pertaining to its senior loan debt holdings in the Debtors. Angelo Gordon had retained Akin Gump for this purpose in or around June 2009. Thereafter, Akin Gump was also retained to advise Oaktree on FCC-related regulatory issues pertaining to Oaktree's senior loan debt holdings in the Debtors. From its inception through the present, Tom Davidson and Phillip Marchesiello, partners based in Akin Gump's Washington D.C. office who specialize in FCC matters, have headed Akin Gump's representation of Movants on the FCC issues.

5. Because Akin Gump recognized (as did Movants) that Centerbridge, as a senior note holder, was likely to advance positions in the Debtors' chapter 11 cases that were at odds with positions taken by either or both of the Movants, the Firm took steps to secure consent from both Movants to the representation of Centerbridge.

6. In Fall 2009, I personally sought and received Angelo Gordon's consent to Akin Gump's representation of Centerbridge.

7. With respect to Oaktree, my D.C.-based partner, Tom Davidson, had an exchange of emails with Emily Alexander, Senior Vice President of Legal at Oaktree, reflecting Oaktree's consent to that adverse representation. On January 28, 2010, Ms. Alexander emailed Mr. Davidson, observing (correctly) that other Akin Gump lawyers were now "involved in the Tribune representation on the bankruptcy side that could have positions opposite to ours." Ms. Alexander simply sought assurances "there was a wall set up between those of you on the FCC side." (A true and correct copy of this email is included in the Appendix as Exhibit 3.).

8. By email dated February 16, 2010, Mr. Davidson confirmed that there was, indeed, such a wall in place (the "Ethical Wall"), in light of the fact that "Centerbridge could have positions adverse to the positions of Angelo Gordon and Oaktree." *See* Exhibit 3.

9. Pursuant to the Ethical Wall, attorneys and staff representing Centerbridge in the chapter 11 cases were prohibited from having any communication with attorneys and staff assigned to the FCC representation regarding their respective cases. In addition, the attorneys and staff representing Centerbridge in the chapter 11 cases were prohibited from having access to documents, communications or other non-public information relating to the FCC representation. Likewise, the attorneys and staff working on the FCC representation were prohibited from having access to documents, communications or other non-public information relating to the Centerbridge representation.

**As Expected, Centerbridge Did In Fact Take Positions Opposite to One or Both of the Movants**

10. The Centerbridge representation involved several matters in which Centerbridge took positions that were adverse to those taken by Oaktree and Angelo Gordon.

11. For example, on September 21, 2009, roughly a month into the Centerbridge representation, Akin Gump filed the Joinder of Centerbridge Credit Advisors LLC to the Relief Requested in Motion of Law Debenture Trust Company of New York for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, Its Affiliates, and Certain Third Parties, or Alternatively, For the Appointment of an Examiner (the "Joinder") (*See* Docket #2176). The Joinder made clear that Centerbridge believed there were possible fraudulent conveyance claims in connection with the 2007 leveraged buy-out of the Tribune entities (the "LBO") that warranted taking discovery of certain current and former LBO lenders (collectively, the "Fraudulent Conveyance Claim"). As evinced by the non-conforming Bankruptcy Rule 2019(a) statements filed by Hennigan, Bennett & Dorman, LLP ("Hennigan Bennett"), which represents Angelo Gordon and Oaktree in connection with the Debtors' chapter 11 cases, both Angelo Gordon and Oaktree are current LBO lenders.

12. Further demonstrating the friction between Centerbridge and Movants, on April 2, 2010, counsel for Movants and other LBO lenders filed the Motion of Credit Agreement Lenders for Leave to Conduct Discovery Pursuant to Bankruptcy Rule 2004 of Centerbridge Partners, L.P., Centerbridge Credit Advisors LLC, and their Affiliates (the "Rule 2004 Motion"). (*See* Docket #3928). The purpose of the Rule 2004 Motion was to take discovery regarding Centerbridge's contemporaneous views on the transactions that culminated in the LBO in the hopes of undercutting the Fraudulent Conveyance Claim. Akin Gump objected to the Rule 2004 Motion on behalf of Centerbridge. (*See* Docket #3988).

13. As of April 12, 2010, Centerbridge and Angelo Gordon, among others, agreed to a settlement of the Fraudulent Conveyance Claim (the "Settlement Support Agreement"). (*See* JP Morgan Chase Bank N.A.'s Notice of Filing of Settlement Support Agreement Between and Among Certain Holders and Indenture Trustees for Holders of Claims Against Tribune Company Filed By Tribune Company, Docket #4013).

14. Oaktree was not a party to the Settlement Support Agreement and remained potentially adverse to Centerbridge in connection with the Fraudulent Conveyance Claim. As I explained at a hearing in this Court on April 13, 2010, the Settlement Support Agreement served as the basis for Centerbridge's support of the Joint Plan of Reorganization for Tribune Company and its Subsidiaries dated April 12, 2010, which Oaktree continued to oppose. (*See* Apr. 13, 2010 Tr. 19:23-22:19, a true and correct copy of which is included in the Appendix as Exhibit 4). After that plan was scuttled, Centerbridge, on the one hand, and Oaktree and Angelo Gordon, on the other hand, engaged in direct plan negotiations.

15. At no time during the many months of the Centerbridge representation did either Movant purport to withdraw its consent – notwithstanding the periodic adversity of their positions.

16. In the process of the Centerbridge representation, Akin Gump became deeply immersed in the details of the chapter 11 cases. All told, Akin Gump lawyers devoted in excess of 2,700 hours to the Centerbridge representation, acquiring crucial knowledge and insights regarding these complex proceedings that would be exceedingly difficult – and expensive – to replicate were Movants' disqualification motion to be granted.

**Aurelius Capital Management, LP Acquires Holdings in Tribune from Centerbridge and Retains Akin Gump**

17. Akin Gump represented Centerbridge in these bankruptcy cases until September 17, 2010, when Aurelius acquired a substantial portion of Centerbridge's senior notes.

18. At that time, Aurelius was already a substantial holder of senior notes of Tribune and was a represented party in these bankruptcy cases. When Aurelius acquired senior note holdings from Centerbridge, Aurelius formally retained Akin Gump as counsel in financial restructuring and litigation matters in these bankruptcy cases.

19. On Friday, September 17, 2010, I advised the plan mediator appointed in these bankruptcy cases, Judge Kevin Gross, and all of the mediation parties, including Angelo Gordon's individual counsel Andrew Goldman of Wilmer Hale and Bruce Bennett of Hennigan Bennett, counsel to both Angelo Gordon and Oaktree, that Centerbridge had sold its entire position of senior notes and would not be participating in the mediation scheduled for September 26, 2010. (A true and correct copy of this email is included in the Appendix as Exhibit 5).

20. On September 26 and 27, 2010, my bankruptcy partner, Phil Dublin, attended the court-ordered plan mediation on behalf of Aurelius. Both Movants and their respective counsel also attended these plan mediation sessions.

**Movants Consented to the Aurelius Representation**

21. Late in the day on September 17, 2010, I also spoke with Gavin Baiera, a Managing Director in the Distressed Debt Group at Angelo Gordon and advised him that Akin Gump would likely be retained by Aurelius in these bankruptcy cases. I asked him for consent to this representation. Baiera stated that he would need to consult with Thomas Fuller, a Senior Managing Director at Angelo Gordon.

22. I therefore called Fuller sometime before 8:40 a.m. on September 20, 2010 to discuss whether Angelo Gordon would consent to the Aurelius representation. Fuller advised me that Akin Gump was free to take on the Aurelius representation, even though

4

Angelo Gordon believed that the bankruptcy proceedings could become contentious. I told Fuller that the Ethical Wall would remain in place.

23. Pursuant to the Ethical Wall, attorneys and staff working on the Aurelius representation are prohibited from having any communication with attorneys and staff assigned to the Movants' respective FCC representations. In addition, the attorneys and staff working on the Aurelius representation are prohibited from accessing documents, communications or other non-public information relating to the Movants' respective FCC representations. Likewise, the attorneys and staff working on the Movants' respective FCC representations are prohibited from accessing documents, communications or other non-public information relating to the Aurelius representation.

24. For its part, Oaktree's consent is reflected in an exchange of emails between my partner Tom Davidson and Oaktree on October 13, 2010. Mr. Davidson emailed Emily Alexander and others at Oaktree, noting that Akin Gump was now representing Aurelius and assuring Oaktree that the Ethical Wall established at the time of the Centerbridge representation remained in full force and effect. (A true and correct copy of this email is included in the Appendix as Exhibit 10).

25. Oaktree responded the same day. Managing Director Ken Liang stated that, in Oaktree's view, Aurelius was apt to be "more litigious than Centerbridge"; indeed, he asserted, "[a]ll efforts will be brought by Aurelius to derail the restructuring." *See* Ex.10. Nevertheless, far from withholding consent for the Aurelius representation, Mr. Liang simply sought an assurance that Aurelius would not "use the Akin multiple representations to disqualify Akin as our FCC counsel." *Id.* Aurelius has not done so and will not do so in the future.

**Movants' Tactical Use of the Disqualification Motion**

26. On October 4, 2010, I appeared on the record on behalf of Aurelius at a status conference in this Court regarding the plan process. Anyone listening to my remarks at the status conference – as Movants certainly were– would have known that Aurelius intended to file a competing plan of reorganization. (*See* Oct. 4, 2010 Tr. 17:25 – 19:10, a true and correct copy of which is included in the Appendix as Exhibit 7.) And in fact, Akin Gump filed such a plan and accompanying disclosure statement on behalf of Aurelius and others on October 29, 2010 (the "Noteholder Plan"). (*See* Docket #s 6182, 6814).

27. After the status conference on October 4, the parties began negotiating the Order Scheduling a Hearing and Establishing Certain Procedures to Consider Approval of Certain Disclosure Documents (the "Order"), but could not reach consensus on the terms of the Order. Specifically, the parties disagreed on the dates for filing a plan and plan-related documents and submitted opposing proposed orders to the Court, as reflected in an email I later sent on October 8, 2010 to all of the parties, including counsel for the Movants. (A true and correct copy of this email is included in the

Appendix as Exhibit 8). The Court scheduled a telephonic conference to resolve outstanding issues regarding the Order for October 13, 2010.

28. I appeared on behalf of Aurelius at the October 13 telephonic conference, and Aurelius was largely successful in advocating its position with respect to the Order. In addressing the Court, I again indicated that Aurelius would be filing a competing plan of reorganization. (*See* Oct. 13, 2010 Tr. 9:23– 17:10, a true and correct copy of which is included in the Appendix as Exhibit 9).

29. Satisfied that Akin Gump had already secured consent from both Movants, on October 15, 2010, I emailed Bennett and Goldman, counsel for Movants, and stated that "I think you know that Oaktree and Angelo [did] not [] assert any conflicts as a result of Akin representing Aurelius in trb at the same time that Akin's FCC counsel is representing Oaktree and Angelo in connection with Trb. Can you please confirm that neither Oaktree or Angelo will have any objection to Akin, on behalf of Aurelius, serv[ing] discovery on Oaktree and Angelo." (A true and correct copy of this email is included in the Appendix as Exhibit 11).

30. On October 16, 2010, my partner David Zensky emailed "litigation hold" letters to both Oaktree and Angelo Gordon and requested that they preserve certain documents. Those letters did not seek the production of any documents or testimony. (A true and correct copy of this email is included in the Appendix as Exhibit 12).

31. On October 19, 2010, I spoke with Fuller, who wanted to confirm that Akin Gump would not be representing Aurelius on FCC-related regulatory matters in connection with these bankruptcy cases. I confirmed that Akin Gump would not and that Aurelius was hiring separate counsel for that purpose. I also re-confirmed that the Ethical Wall remained in place. I understood that conversation to be a clear confirmation of Fuller's prior consent on behalf of Angelo Gordon on September 20.

32. To my surprise, shortly after my call with Fuller on October 19, I received an email from Bennett in response to my October 15 email noted above. For the first time, Bennett stated that neither Angelo Gordon nor Oaktree "has agreed to waive or not to assert any of the conflicts Akin Gump has in representing adversaries of either of them." (A true and correct copy of this email is included in the Appendix as Exhibit 13).

33. I immediately forwarded Bennett's October 19 email to Fuller and said, "[I] promise you this e mail from Bennett came after my conversation with you. Can you or your counsel confirm whether or not Angelo Gordon has an issue with the Akin representation [of Aurelius]." Fuller responded within a few minutes that he would call his general counsel and "get to the bottom of this." (A true and correct copy of this email is included in the Appendix as Exhibit 14).

34. Within a day, I received a phone call from Fuller and in-house counsel at Angelo Gordon, who wanted to re-confirm that Akin Gump would not be Aurelius's FCC

counsel and that the Ethical Wall would remain in place. I confirmed that Aurelius had hired separate counsel on FCC-related issues pertaining to the Tribune chapter 11 cases and that the Ethical Wall remained in place. On that basis, they did not raise any objection to Akin Gump's representation of Aurelius.

35. Several days later, however, on October 27, 2010, I received an email from Bennett laying out new and onerous conditions upon which Akin Gump's representation of Aurelius would be acceptable to Movants. (A true and correct copy of this email is included in the Appendix as Exhibit 15). Movants' conditions included the following:

   a. "[I]t is necessary that Akin Gump advise Oaktree and Angelo Gordon that Aurelius is not and will not be adverse to either of them in connection with the pending and any future proceedings before the FCC in connection with the Tribune companies or any of them or in connection with any matters relating to the FCC waivers or consents in connection with those Tribune entities";

   b. "Akin Gump must agree that, in representing Aurelius, Akin Gump will not take any position or make any statements that are inconsistent with any position and statements made by Akin Gump in connection with its representation of Oaktree and Angelo Gordon"; and

   c. "Akin Gump may not conduct any discovery against Oaktree or examine any of its employees or agents in court or in depositions, and Akin may not take any action directly adverse to Oaktree other than actions that are applicable to holders of Senior Loan Claims generally."

**Akin Gump's Unsuccessful Effort to Resolve the Dispute**

36. Believing that these new conditions were motivated by strategy rather than legitimate concerns about conflicts, I emailed Bennett a proposal on November 3, 2010 that I believed provided Movants with more than sufficient assurances, over and above the Ethical Wall already in place. (A true and correct copy of this email is included in the Appendix as Exhibit 16).

37. In my proposal, I stated that Oaktree and Angelo Gordon had "previously consented to and waived any potential conflicts of interest that have or may arise as a result of Akin Gump acting as FCC counsel for Oaktree and Angelo Gordon in connection with the Tribune bankruptcy proceedings on the one hand and acting as bankruptcy and litigation counsel for first Centerbridge and now Aurelius in connection with the Tribune bankruptcy proceedings on the other hand." *Id.*

38. I nevertheless agreed that Aurelius would not "utilize Akin Gump to conduct any discovery against Oaktree or examine any of its employees or agents in court or in depositions," as Mr. Bennett had requested. *Id.*

7

39. I also reiterated that Akin Gump would continue to maintain the Ethical Wall that had been established separating the professionals and other personnel working on the FCC representation for Oaktree and Angelo Gordon, as well as any work and files generated in connection with that representation, from the professionals and other personnel working on the bankruptcy representation of Aurelius in the chapter 11 cases. *Id.*

40. Finally, I agreed that Akin Gump would not advocate or defend Aurelius in connection with FCC/communications laws issues. I explained that Aurelius had retained the law firm of Lerman Senter PLLC as its FCC/communications counsel for FCC-related matters pertaining to the Debtors and that any positions taken by Aurelius on FCC/communications law issues would be handled by Lerman Senter and not by Akin Gump. *Id.*

41. In my November 3 email, I noted that Aurelius had engaged Lerman Senter to handle any and all FCC matters "without limitation." My use of the phrase "without limitation" was a direct response to the purported limitations on the positions Aurelius could take before the FCC, as set forth in Bennett's email dated October 27. I intended the phrase to reflect – simply and solely – that Akin Gump would take no part in representing Aurelius before the FCC, and that Aurelius had already engaged the firm of Lerman Senter PLLC to handle the FCC proceedings. At no time has Akin Gump intimated (much less threatened, as Movants suggest) that Aurelius is poised "to directly attack" Movants' FCC positions. To the contrary, it is my present understanding that the positions on FCC-related matters taken by Aurelius to date in its plan are not different from the positions on FCC-related matters taken by Movants in their competing plan.

42. Movants rejected Akin Gump's proposal on November 11 and filed the present Motion on November 12.

**Steps Taken by Akin Gump to Prosecute Aurelius's Plan**

43. From September 2010 through the present, Akin Gump lawyers have devoted over 5,800 hours to the Aurelius representation. Since filing the Noteholder Plan on October 29, 2010, Akin Gump has undertaken substantial efforts to prosecute such Plan and oppose the competing plans.

44. On November 9, Akin Gump filed a responsive statement detailing the four competing plans, including the Noteholder Plan. (*See* Responsive Statement by Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company Filed by Aurelius Capital Management, LP (Docket #6293)).

45. On November 16, Akin Gump filed Aurelius's and its co-plan proponents' objections to the disclosure statements relating to the other three competing plans. (*See* Omnibus Objection of the Pre-LBO Debtholder Plan Proponents to (I) the Disclosure Statements for the Competing Plans and (II) the Responsive Statements Filed By the Proponents of

the Competing Plans (Docket #6466) and Omnibus Objection to the Specific Disclosure Statement Relating to (i) the Oaktree Plan, (ii) the Aurelius Plan and (iii) the Bridge Lender Plan (Docket #6473)).

46. On November 19, I attended a hearing before this Court designed to narrow the contested issues among the various plan proponents. That day, Akin Gump also filed on behalf of Aurelius and its co-plan proponents oppositions to Debtors' proposed voting and solicitation procedures. (*See* Objection of the Pre-LBO Debtholder Plan Proponents to Debtors' Motion Seeking, Among Other Things, (I) Approval of Forms of Ballots, Master Ballots and Related Instructions; (II) Fixing Voting Record Date; (III) Establishment of Notice and Objection Procedures in Respect of Confirmation; and (IV) Authorizing Expansion of Balloting and Tabulation Agent's Retention and Allocation of Costs of Same (Docket # 6512) and Joint Objection of the Pre-LBO Debtholder Plan Proponents to Debtors' Solicitation Procedures Motion Seeking, Among Other Things, Approval of Procedures for Submitting Media Ownership Certifications (Docket #6513)).

47. In addition, on November 22, Akin Gump proposed a competing case management order and has objected to the Debtors' motion seeking to limit the scope of expert testimony, preclude fact discovery relating to the underlying merits of the LBO transaction and compress the timeframe of the confirmation hearing (the "Contours Motion"). (*See* Objection of Aurelius Capital Management, LP to the Debtors' Motion for Entry of an Order Setting Confirmation Schedule and Establishing Parameters of Confirmation-Related Discovery dated November 22, 2010 (Docket # 6558)). My litigation partners have had lengthy communications, including at least two "meet and confer" conference calls with the Debtors and other parties-in-interest regarding the parties' respective proposals for the case management order.

48. Our litigators also prepared for the Contours Motion to be heard on November 29, 2010 and were in attendance at the hearing. However, the Contours Motion was adjourned until December 6, 2010 due to the Court's time constraints as other matters relating to the Debtors' chapter 11 cases were heard that day. Accordingly, preparation for the hearing on the Contours Motion continues.

49. On November 23, Akin Gump filed Aurelius's and its co-plan proponents' revised disclosure statement, related plan of reorganization and responsive statement. (*See* Specific Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (Docket # 6603), Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain

Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (Docket # 6601) and Responsive Statement, Dated November 23, 2010 by Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company (Docket #6605)).

50. On December 1, Akin Gump filed Aurelius's and its co-plan proponents' further revised disclosure statement, the related proposed plan of reorganization and responsive statement. (*See* Specific Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (Docket # 6677), Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (Docket # 6676) and Responsive Statement, dated December 1, 2010 by Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company (Docket # 6679)).

51. Finally, Akin Gump is gearing up within a very expedited timeframe for the confirmation hearing currently scheduled by the Court to begin the week of March 7, which includes preparing for fact discovery, expert discovery, confirmation briefs and other pre-trial submissions to commence later this week or at the very latest early next week. To that end, among other things, Akin Gump is presently preparing to serve the Debtors and other parties with document requests and interrogatories, and has begun the process of collecting relevant documents from Aurelius. Moreover, preparation has already begun for depositions as the parties have agreed in their proposed case management orders that fact depositions may commence as early as next week, provided the Court does not preclude fact depositions when it hears the Contours Motion on December 6, 2010.

**Adherence to the Ethical Wall**

52. I have adhered strictly to the Ethical Wall. The Ethical Wall prohibits (i) attorneys and staff representing Angelo Gordon and Oaktree relating to the FCC representation from having any communication with attorneys and staff representing Centerbridge or Aurelius in the chapter 11 cases regarding their respective matters; (ii) the attorneys

and staff representing Centerbridge and Aurelius in the chapter 11 cases from having access to documents, communications or other non-public information relating to the Angelo Gordon and Oaktree representation on the FCC issues; and (iii) the attorneys and staff representing Angelo Gordon and Oaktree on FCC issues in connection with such parties' debt holdings in the Debtors from having access to documents, communications or other non-public information relating to the Centerbridge and Aurelius representations in these chapter 11 cases.

53. No Akin Gump attorney representing Centerbridge and Aurelius has received any confidential information relating to Oaktree and Angelo Gordon. The only information relating to the Tribune holdings of Oaktree and Angelo Gordon that those Akin Gump attorneys may have is what has been publicly disclosed in the non-conforming Bankruptcy Rule 2019(a) statements filed by Hennigan Bennett, which represents Angelo Gordon and Oaktree in the Debtors' chapter 11 cases.

54. No Akin Gump FCC lawyer has ever billed any time to the Centerbridge or Aurelius client matter numbers for Tribune. Likewise, no Akin Gump financial restructuring attorney has ever billed any time to the Oaktree or Angelo Gordon client matter numbers for Tribune.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 3, 2010
   New York, New York

_____
Daniel H. Golden