## EXHIBIT 1

**December 5, 2010 Revised First Amended Joint Plan**
**(Without Appendices and Exhibits)**

46429/0001-7215437v1

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | ) Case No. 08-13141 (KJC) |
| | ) Jointly Administered |
| Debtors. | ) |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.**

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, IL 60603
Telecopier: (312) 853-7036

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telecopier: (302) 652-3117

*Counsel For Debtors and Debtors In Possession and Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier: (212) 541-5369

LANDIS RATH & COBB LLP
Adam G. Landis
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier: (302) 467-4450

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telecopier: (202) 822-8106

*Counsel For the Official Committee of Unsecured Creditors*

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telecopier: (213) 694-1234

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telecopier: (302) 571-1253

*Counsel For Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier: (212) 230-8888

*Co-Counsel For Angelo, Gordon & Co, L.P.*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Damian S. Schaible
450 Lexington Avenue
New York, New York 10017
Telecopier: (212) 701 5800

RICHARDS LAYTON & FINGER
Mark Collins
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

*Counsel For JPMorgan Chase Bank, N.A.*

## DATED: December [___], 2010

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the next page.

Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

ARTICLE I : DEFINITIONS; RULES OF INTERPRETATION; EXHIBITS ............................. 1

    1.1   DEFINITIONS. ........................................................................................... 1
    1.2   RULES OF INTERPRETATION. ...................................................................... 30
    1.3   COMPUTATION OF TIME. ........................................................................... 31
    1.4   EXHIBITS AND PLAN SUPPLEMENT. ............................................................ 31
    1.5   DEEMED ACTS. ......................................................................................... 31

ARTICLE II : TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS ....... 31

    2.1   DIP FACILITY CLAIMS. .............................................................................. 31
    2.2   ADMINISTRATIVE EXPENSE CLAIMS. .......................................................... 32
    2.3   PRIORITY TAX CLAIMS. ............................................................................. 32

ARTICLE III : CLASSIFICATION AND TREATMENT OF CLASSIFIED
CLAIMS AND INTERESTS ............................................................................ 33

    3.1   SUMMARY OF CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
INTERESTS. ............................................................................................. 33
    3.2   CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND INTERESTS IN
TRIBUNE COMPANY (DEBTOR 1). ............................................................... 34
    3.3   CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND INTERESTS
IN FILED SUBSIDIARY DEBTORS (DEBTORS 2 THROUGH 111). ......................... 40
    3.4   PREPACKAGED PLANS FOR AND TREATMENT OF CLAIMS AGAINST AND
INTERESTS IN GUARANTOR NON-DEBTORS, IF ANY, THAT BECOME DEBTORS. ...... 43

ARTICLE IV : ACCEPTANCE OR REJECTION OF PLAN ..................................... 45

    4.1   IMPAIRED CLASSES OF CLAIMS AND INTERESTS ENTITLED TO VOTE. ............... 45
    4.2   ACCEPTANCE BY AN IMPAIRED CLASS OF CLAIMS. ...................................... 45
    4.3   DEEMED ACCEPTANCE BY HOLDERS OF INTERCOMPANY CLAIMS. ................... 45
    4.4   PRESUMED ACCEPTANCES BY UNIMPAIRED CLASSES. ................................... 45
    4.5   PRESUMED REJECTION OF THE PLAN. ......................................................... 45
    4.6   CONFIRMABILITY AND SEVERABILITY OF THIS PLAN. .................................... 46

ARTICLE V : MEANS FOR IMPLEMENTATION OF THE PLAN ............................ 46

    5.1   NON-SUBSTANTIVE CONSOLIDATION. ......................................................... 46
    5.2   RESTRUCTURING TRANSACTIONS. .............................................................. 46
    5.3   CORPORATE GOVERNANCE, DIRECTORS, OFFICERS AND CORPORATE ACTION. ..... 47
    5.4   ISSUANCE AND DISTRIBUTION OF NEW SECURITIES AND RELATED MATTERS. ...... 49
    5.5   REPORTING REQUIREMENTS UNDER SECURITIES EXCHANGE ACT OF
1934 AND LISTING OF NEW CLASS A COMMON STOCK ON
SECURITIES EXCHANGE OR QUOTATION SYSTEM. ......................................... 52
    5.6   NEW SENIOR SECURED TERM LOAN AGREEMENT. ....................................... 52

## TABLE OF CONTENTS CONT'D

**Page**

5.7 CONTINUED CORPORATE EXISTENCE AND VESTING OF ASSETS IN THE REORGANIZED DEBTORS. ........................................................................ 53
5.8 CANCELLATION OF LOAN AGREEMENTS, LOAN GUARANTY AGREEMENTS, THE PLEDGE AGREEMENT, NOTES ISSUED UNDER THE LOAN AGREEMENTS, SENIOR NOTES, DEBENTURES, INSTRUMENTS, INDENTURES, EGI-TRB LLC NOTES, PHONES NOTES, OLD COMMON STOCK AND OTHER TRIBUNE INTERESTS. ............................................................................................................ 53
5.9 CANCELLATION OF LIENS AND GUARANTIES. ........................................ 55
5.10 EXIT FACILITY. ................................................................................ 55
5.11 EQUITY INCENTIVE PLAN. ................................................................ 55
5.12 SOURCES OF CASH FOR PLAN DISTRIBUTIONS. .................................. 55
5.13 INITIAL FUNDING OF THE LITIGATION TRUST AND THE CREDITORS' TRUST ................ 56
5.14 ADDITIONAL TRANSACTIONS AUTHORIZED UNDER THE PLAN. ............ 56
5.15 SETTLEMENT OF CLAIMS AND CONTROVERSIES. ................................ 56
5.16 PRESERVATION OF RIGHTS OF ACTION AND SETTLEMENT OF ORDINARY LITIGATION CLAIMS. .................................................................. 58
5.17 FCC APPLICATIONS. ......................................................................... 58

ARTICLE VI :  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................................................... 58

6.1 ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ........ 58
6.2 CURE OF DEFAULTS OF ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .................................................................. 59
6.3 REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .......... 59
6.4 REJECTION DAMAGES BAR DATE. ...................................................... 60
6.5 COMPENSATION AND BENEFIT PROGRAMS. ........................................ 60
6.6 COLLECTIVE BARGAINING AGREEMENTS. .......................................... 60
6.7 POST-PETITION CONTRACTS AND LEASES. ......................................... 61
6.8 TERMINATION OF ESOP. ................................................................... 61
6.9 INSURANCE POLICIES. ...................................................................... 61

ARTICLE VII :  PROVISIONS GOVERNING DISTRIBUTIONS ......................... 62

7.1 GENERAL. ........................................................................................ 62
7.2 DISTRIBUTIONS FOR CERTAIN CLAIMS. ............................................. 62
7.3 SPECIAL PROVISIONS GOVERNING DISTRIBUTIONS TO HOLDERS OF LOAN CLAIMS AND LOAN GUARANTY CLAIMS. ................................. 63
7.4 INTEREST ON CLAIMS. ..................................................................... 64
7.5 DISTRIBUTIONS BY DISBURSING AGENT. ........................................... 65
7.6 DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS. .................................................................. 65
7.7 RECORD DATE FOR DISTRIBUTIONS. .................................................. 66
7.8 ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST. .............. 66
7.9 MEANS OF CASH PAYMENT. .............................................................. 67

## TABLE OF CONTENTS CONT'D

**Page**

7.10 WITHHOLDING AND REPORTING REQUIREMENTS. ........................................ 67
7.11 SETOFFS. ........................................................................................................... 67
7.12 FRACTIONAL SHARES. ...................................................................................... 68
7.13 DE MINIMIS DISTRIBUTIONS. ........................................................................... 68
7.14 SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS. .............................. 68
7.15 SUBORDINATION. ............................................................................................. 68

ARTICLE VIII : PROVISIONS FOR RESOLVING DISPUTED CLAIMS AND DISPUTED
INTERESTS ...................................................................................................................... 69

8.1 OBJECTIONS TO AND ESTIMATION OF CLAIMS. .............................................. 69
8.2 PAYMENTS AND DISTRIBUTIONS ON DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS AND INTERESTS AND ON CLAIMS FOR
WHICH PROOFS OF CLAIM ARE FILED. ............................................................ 69

ARTICLE IX : PAYMENT AND FILING OF PROFESSIONAL FEE CLAIMS .................... 69

9.1 PAYMENT OF CERTAIN FEE AND EXPENSE CLAIMS. ....................................... 69
9.2 BAR DATE FOR PAYMENT OR REIMBURSEMENT OF PROFESSIONAL FEES
AND EXPENSES AND CLAIMS FOR SUBSTANTIAL CONTRIBUTION. ................... 70

ARTICLE X : CONFIRMATION AND CONSUMMATION OF THE PLAN ........................ 71

10.1 CONDITIONS TO EFFECTIVE DATE. .................................................................. 71
10.2 WAIVER OF CONDITIONS. ................................................................................. 73
10.3 CONSEQUENCES IF CONFIRMATION ORDER IS VACATED. .............................. 73

ARTICLE XI : INJUNCTIONS, RELEASES AND DISCHARGE ..................................... 73

11.1 DISCHARGE. ...................................................................................................... 73
11.2 RELEASES. ......................................................................................................... 74
11.3 BAR ORDER. ...................................................................................................... 77
11.4 DISALLOWED CLAIMS AND DISALLOWED INTERESTS. ................................... 78
11.5 EXCULPATION. ................................................................................................... 79
11.6 CORPORATE INDEMNITIES. ............................................................................... 79
11.7 TERM OF BANKRUPTCY INJUNCTION OR STAYS. ............................................. 80

ARTICLE XII : RETENTION OF JURISDICTION ......................................................... 80

12.1 RETENTION OF JURISDICTION. ......................................................................... 80

ARTICLE XIII : LITIGATION TRUST ......................................................................... 82

13.1 ESTABLISHMENT OF TRUST. ............................................................................ 82
13.2 LITIGATION TRUST ASSETS. ............................................................................. 82
13.3 LITIGATION TRUSTEE. ....................................................................................... 83
13.4 DISSOLUTION. ................................................................................................... 86
13.5 FUNDING THE LITIGATION TRUST. ................................................................... 87

ARTICLE XIV : CREDITORS' TRUST ........................................................................ 87

## TABLE OF CONTENTS CONT'D

**Page**

14.1    DISCLAIMER OF DISCLAIMED STATE LAW AVOIDANCE CLAIMS. ................................... 87
14.2    ESTABLISHMENT OF CREDITORS' TRUST. ................................................................. 87
14.3    CREDITORS' TRUST ASSETS. ................................................................................ 87
14.4    CREDITORS' TRUSTEE. ........................................................................................ 88
14.5    DISSOLUTION. ................................................................................................... 91
14.6    FUNDING THE CREDITORS' TRUST. ....................................................................... 92

ARTICLE XV : MISCELLANEOUS ............................................................................. 92

15.1    SURRENDER OF INSTRUMENTS. ............................................................................ 92
15.2    CREDITORS COMMITTEE. .................................................................................... 92
15.3    POST-CONFIRMATION DATE RETENTION OF PROFESSIONALS. ................................... 92
15.4    EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS. ................................... 92
15.5    EXEMPTION FROM TRANSFER TAXES. .................................................................... 93
15.6    PAID-IN CAPITAL OF CORPORATE REORGANIZED DEBTORS. ..................................... 93
15.7    PAYMENT OF STATUTORY FEES. ........................................................................... 93
15.8    AMENDMENT OR MODIFICATION OF THIS PLAN. ..................................................... 93
15.9    SEVERABILITY OF PLAN PROVISIONS. .................................................................... 94
15.10   SUCCESSORS AND ASSIGNS. ................................................................................ 94
15.11   REVOCATION, WITHDRAWAL OR NON-CONSUMMATION. ......................................... 94
15.12   NOTICE. ........................................................................................................... 95
15.13   GOVERNING LAW. .............................................................................................. 96
15.14   TAX REPORTING AND COMPLIANCE. ..................................................................... 96
15.15   EXHIBITS AND APPENDICES. ................................................................................ 96
15.16   RESERVATION OF RIGHTS. ................................................................................... 96
15.17   NOTICE OF THE EFFECTIVE DATE. ........................................................................ 96

## APPENDICES AND EXHIBITS

Appendix A          Filed Subsidiary Debtors

Appendix B          Subsidiary Non-Debtors

Appendix C          Collective Bargaining Agreements

Exhibit 1.1.122     Terms of Intercompany Claims Settlement

Exhibit 1.1.154     Terms of New Warrant Agreement

Exhibit 1.1.192     Individuals Excluded from Released Step Two Stockholder Parties

Exhibit 5.2         Restructuring Transactions

Exhibit 5.3.1(1)    Certificate of Incorporation of Reorganized Tribune

Exhibit 5.3.1(2)    By-Laws of Reorganized Tribune

Exhibit 5.3.1(3)    Registration Rights Agreement

Exhibit 5.3.2(1)    Officers of Reorganized Tribune

Exhibit 5.3.2(2)    Directors of Reorganized Tribune

Exhibit 5.3.3       Directors, Managers, and Officers of Reorganized Debtors Other Than
                    Reorganized Tribune

Exhibit 5.6         Terms of New Senior Secured Term Loan

Exhibit 5.10        Terms of Exit Facility

Exhibit 5.13        Terms of Trusts' Loan Agreement

Exhibit 5.15.1(1)   Step Two/Disgorgement Settlement Undertaking

Exhibit 5.15.1(2)   Step Two/Disgorgement Settlement Procedures

Exhibit 5.15.4      Terms of Retiree Claimant Settlement Agreement

Exhibit 6.3         Rejected Executory Contracts and Unexpired Leases

Exhibit 13.1        Litigation Trust Agreement

Exhibit 14.1        Creditors' Trust Agreement

# INTRODUCTION

The Proponents are the Debtors, the Creditors' Committee (as hereafter defined), certain investment funds and accounts managed by Oaktree Capital Management, L.P. and/or its Affiliates ("Oaktree") and Angelo, Gordon & Co., L.P. and/or certain of its Affiliates ("Angelo Gordon"), each of which is a Holder, or is a general partner or manager of an entity that is a Holder, of Senior Loan Claims, and JPMorgan Chase Bank, N.A. and certain of its Affiliates, as the Senior Loan Agent and as Holders of Senior Loan Claims ("JPMorgan"). The Proponents are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

The Proponents hereby propose the following joint plan of reorganization for the resolution of all outstanding Claims against and Interests in all of the Debtors in their reorganization cases under chapter 11 of the Bankruptcy Code. The Guarantor Non-Debtors shall participate in this Plan with the Debtors.

Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, properties and operations, projections for those operations, risk factors, a summary and analysis of this Plan, and certain related matters including, among other things, the indebtedness and securities to be issued under this Plan. Subject to certain restrictions and requirements set forth herein, including, without limitation Sections 15.8 and 15.9 of this Plan, and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order, and the Bankruptcy Code.

## ARTICLE I: DEFINITIONS; RULES OF INTERPRETATION; EXHIBITS

1.1    Definitions.

As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.1    Administrative Expense Claim means a Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims) related to tax years ending on or after the Petition Date or commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date; (b) all compensation for legal, financial, advisory, accounting and other professional services and reimbursement of expenses incurred during the Chapter 11 Cases Allowed by the Bankruptcy Court; (c) any indebtedness or obligation incurred or assumed by the Debtors during the Chapter 11 Cases pursuant to an agreement which was approved or otherwise permitted by a Final Order of the Bankruptcy Court or is an ordinary

course agreement; (d) any payment to cure a default on an assumed executory contract or unexpired lease; (e) post-petition Claims against any of the Debtors held by a Debtor or a non-Debtor Affiliate; or (f) any fees and charges assessed against the Debtors' Estates under section 1930, chapter 123, of title 28 of the United States Code.

   1.1.2 <u>Advisors</u> means any Persons who acted as advisors to a Tribune Entity or to any of its officers, directors, or any special or independent committee of its Board of Directors with respect to any matter arising from or related to the leveraged buy-out of Tribune that occurred in 2007, provided that the Step Two Arrangers shall not be deemed to have been Advisors with respect to actions they took solely in their capacities as agents, arrangers or lenders under the Senior Loan Agreement, Bridge Loan Agreement or related guarantees.

   1.1.3 <u>Advisor Claims</u> means any and all LBO-Related Causes of Action that the Tribune Entities or the Debtors' Estates may have or are entitled to assert on behalf of their respective Estates against any Person related to such Person's conduct as Advisor.

   1.1.4 <u>Affiliate</u> shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code, and when used with reference to any Debtor, shall include, but not be limited to, each of the other Debtors.

   1.1.5 <u>Allowed</u> means, with respect to a Claim or Interest, or any portion thereof, in any Class or category specified, a Claim or Interest (a) that is evidenced by a Proof of Claim or Interest and is not listed as disputed, contingent or unliquidated on the pertinent Debtor's schedules and as to which no objection or request for estimation has been filed on or before any objection deadline set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court, (b) that is listed on the pertinent Debtor's schedules but is not listed as disputed, contingent or unliquidated, that is not otherwise subject to an objection and as for which no contrary or superseding Proof of Claim or Interest has been filed, (c) as to which any objection has been settled, waived, withdrawn or overruled by a Final Order; or (d) that is expressly allowed (i) by a Final Order, (ii) pursuant to the terms of the Claims Settlement Order, (iii) solely with respect to those Claims that are not pre-petition Claims and are not required under applicable bankruptcy law to be allowed pursuant to an order of the Bankruptcy Court, by an agreement between the Holder of such Claim and the pertinent Debtor or Reorganized Debtor pursuant to an agreement which was approved or otherwise permitted by a Final Order of the Bankruptcy Court or is an ordinary course agreement that, unless *de minimis* in nature, has been provided to and has not been objected to in writing by the Proponents, or (iv) pursuant to the terms of this Plan. For the avoidance of doubt, to the extent a Claim is not Allowed, such Claim is still subject to objection based upon potentially applicable rights of avoidance, setoff, subordination, and any other defenses.

   1.1.6 <u>Assigned Senior Guaranty Claims</u> has the meaning set forth in <u>Section 11.2.5</u> of this Plan.

   1.1.7 <u>Available Cash</u> means all bank Cash balances that are immediately available for disbursement reduced by the value of (a) any funds held in accounts that are restricted in their use, including, but not limited to, Cash held as collateral for issued letters of credit, Cash held in escrow accounts, Cash held for collateral in respect of utility deposits, and

Cash held by Multimedia Insurance Company, a Non-Guarantor Non-Debtor and (b) up to $5,000,000 held in bank accounts that are not part of the Debtors' centralized cash management system.

  1.1.8   Average Distributable Cash means the average of the Available Cash balance of all of the Tribune Entities at the close of business on each of the four Fridays (or the immediately preceding Business Day if any such Friday is not a Business Day) immediately preceding the Effective Date.

  1.1.9   Ballot means the document for accepting or rejecting the Plan in the form approved by the Bankruptcy Court.

  1.1.10 Bankruptcy Code means title 11 of the United States Code, as in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases.

  1.1.11 Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware.

  1.1.12 Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases.

  1.1.13 Bridge Lenders means the lenders from time to time party to the Bridge Loan Agreement as Lenders thereunder, including former lenders and any applicable assignees and participants thereof.

  1.1.14 Bridge Loan Agent means Wells Fargo Bank, N.A. as administrative agent, and its Affiliates and Related Persons of such entities (but excluding the Former Bridge Loan Agent), and any successor administrative agent, under the Bridge Loan Agreement.

  1.1.15 Bridge Loan Agreement means that certain Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, among Tribune, the Bridge Lenders, the Former Bridge Loan Agent, JPMorgan Chase Bank, N.A., as syndication agent, and Citicorp North America, Inc. and Bank of America, N.A., as co-documentation agents, as amended, restated, supplemented or otherwise modified from time to time.

  1.1.16 Bridge Loan Arrangers means any Syndication Agent, Documentation Agent, Arranger, Bookrunner or other party serving a similar purpose under the Bridge Loan Agreement.

  1.1.17 Bridge Loan Claim means a Claim arising under the Bridge Loan Agreement.

  1.1.18 Bridge Loan Distribution Amount means, after the final determination of the allowance of the Bridge Loan Claims, an amount equal to the lesser of (a)(i) the amount of

the Allowed Bridge Loan Claims divided by $1,619,507,000 times (ii) the Bridge Loan Reserve; and (b) the Bridge Loan Reserve.

1.1.19 Bridge Loan Guaranty Agreement means the Guarantee Agreement, dated as of December 20, 2007, among Tribune, each of the subsidiaries of Tribune listed on Annex I thereto, and the Former Bridge Loan Agent, as amended, restated, supplemented or otherwise modified from time to time.

1.1.20 Bridge Loan Guaranty Claim means a Claim arising under Bridge Loan Guaranty Agreement.

1.1.21 Bridge Loan Reserve means an amount of Cash equal to $77,819,000, or such other amount as may be determined by the Bankruptcy Court, funded out of the Distributable Cash Pool.

1.1.22 Business Day means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.1.23 By-Laws means the amended and restated by-laws of Reorganized Tribune, in substantially the form of Exhibit 5.3.1(2) to be filed with the Plan Supplement.

1.1.24 Cash means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

1.1.25 Certificate of Incorporation means the amended and restated certificate of incorporation of Reorganized Tribune, in substantially the form of Exhibit 5.3.1(1) to be filed with the Plan Supplement.

1.1.26 Chapter 11 Cases means the voluntary cases commenced on the Petition Date by the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and the voluntary cases, if any, commenced by any of the Subsidiary Non-Debtors under chapter 11 of the Bankruptcy Code.

1.1.27 Claim means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.1.28 Claims Settlement Order means the Order Granting Debtors (I) Limited Waiver of Requirements of Local Rule 3007-1(f) and (II) Authority to Settle Disputed Claims, as entered on November 25, 2009 [D.I. 2657], as the same may be amended, modified or supplemented from time to time.

1.1.29 Class means a category of Claims or Interests set forth in Article III of this Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.1.30 Class 1C Creditors' Trust Interests means beneficial interests in the Creditors' Trust granted to Holders of Allowed Class 1C Claims who do not opt out of making

the assignment in Section 14.3.1 of this Plan, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1D Claims who do not opt out of making the assignment in Section 14.3.1 of this Plan, of the Senior Loan Claims Net Creditors' Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1C Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

1.1.31 Class 1C Litigation Trust Interests means beneficial interests in the Litigation Trust granted to Holders of Allowed Class 1C Claims, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1D Claims, of the Senior Loan Claims Net Litigation Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1C Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

1.1.32 Class 1D Creditors' Trust Interests means beneficial interests in the Creditors' Trust granted to Holders of Allowed Class 1D Claims who do not opt out of making the assignment in Section 14.3.1 of this Plan, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1C Claims who do not opt out of making the assignment in Section 14.3.1 of this Plan, of the Senior Loan Claims Net Creditors' Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1D Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

1.1.33 Class 1D Litigation Trust Interests means beneficial interests in the Litigation Trust granted to Holders of Allowed Class 1D Claims, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1C Claims, of the Senior Loan Claims Net Litigation Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1D Claim be entitled to receive the Allowed amount of such Holder's Claim.

1.1.34 Class 1E Creditors' Trust Interests means beneficial interests in the Creditors' Trust granted to Holders of Allowed Class 1E Claims who do not opt out of making the assignment in Section 14.3.1 of this Plan, which shall entitle such Holders to (i) a Pro Rata share, calculated together with Allowed Class 1I and 1J Claims that do not opt out of making the assignment in Section 14.3.1 of this Plan and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii) and do not opt out of making the assignment in Section 14.3.1 of this Plan, of the Parent GUC Trust Preference and (ii) a Pro Rata share, calculated together with Allowed Class 1I and 1J Claims and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii), of the Parent GUC Net Creditors' Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1E Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

1.1.35 Class 1E Litigation Trust Interests means beneficial interests in the Litigation Trust granted to Holders of Allowed Class 1E Claims, which shall entitle such Holders to (i) a Pro Rata share, calculated together with Allowed Class 1I and 1J Claims and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii), of the Parent GUC Trust Preference and (ii) a Pro Rata share, calculated together with Allowed Class 1I and 1J Claims and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii), of the Parent GUC Net Litigation Trust

Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1E Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.36 Class 1F Creditors' Trust Interests means beneficial interests in the Creditors' Trust granted to Holders of Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii) and who do not opt out of making the assignment in Section 14.3.1 of this Plan, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1E, 1I and 1J Claims that do not opt out of making the assignment in Section 14.3.1 of this Plan, of : (i) the Parent GUC Trust Preference; and (ii) the Parent GUC Net Creditors' Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1F Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.37 Class 1F Litigation Trust Interests means beneficial interests in the Litigation Trust granted to Holders of Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii), which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1E, 1I and 1J Claims, of: (i) the Parent GUC Trust Preference; and (ii) the Parent GUC Net Litigation Trust Proceeds; provided, however, that in no event shall any Holder of an Allowed Class 1F Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.38 Class 1I Creditors' Trust Interests means beneficial interests in the Creditors' Trust granted to Holders of Allowed Class 1I Claims who do not opt out of making the assignment in Section 14.3.1 of this Plan, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1E and 1J Claims that do not opt out of making the assignment in Section 14.3.1 of this Plan and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii) and do not opt out of making the assignment in Section 14.3.1 of this Plan, of (i) the Parent GUC Trust Preference; and (ii) the Parent GUC Net Litigation Trust Proceeds; provided that until (a) the Holders of Allowed Senior Noteholder Claims, and (b) the Holders of any other Allowed Claims that are entitled to share in the Parent GUC Trust Preference and are entitled to the benefit of the contractual subordination of the EGI-TRB LLC Notes receive payment in full of the Allowed amount of such Holders' Claims, all distributions that would otherwise be made on account of Allowed EGI-TRB LLC Notes Claims shall be turned over to such Holders; provided further, that in no event shall any Holder of an Allowed Class 1I Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.39 Class 1I Litigation Trust Interests means beneficial interests in the Litigation Trust granted to Holders of Allowed Class 1I Claims, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1E and 1J Claims and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii), of (i) the Parent GUC Trust Preference; and (ii) the Parent GUC Net Litigation Trust Proceeds; provided that until (a) the Holders of Allowed Senior Noteholder Claims, and (b) the Holders of any other Allowed Claims that are entitled to share in the Parent GUC Trust Preference and to the benefit of the contractual subordination of the EGI-TRB LLC Notes receive payment in full of the Allowed amount of such Holders' Claims, all distributions that would otherwise be made on account of Allowed EGI-TRB LLC Notes Claims shall be turned over to such Holders; provided

further, that in no event shall any Holder of an Allowed Class 1I Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.40 Class 1J Creditors' Trust Interests means beneficial interests in the Creditors' Trust granted to Holders of Allowed Class 1J Claims who do not opt out of making the assignment in Section 14.3.1 of this Plan, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1E and 1I Claims that do not opt out of making the assignment in Section 14.3.1 of this Plan and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii) and do not opt out of making the assignment in Section 14.3.1 of this Plan, of (i) the Parent GUC Trust Preference; and (ii) the Parent GUC Net Litigation Trust Proceeds; provided that until (a) the Holders of Allowed Senior Noteholder Claims, and (b) the Holders of any other Allowed Claims that are entitled to share in the Parent GUC Trust Preference and are entitled to the benefit of the contractual subordination of the PHONES Notes receive payment in full of the Allowed amount of such Holders' Claims, all distributions that would otherwise be made on account of Allowed PHONES Notes Claims shall be turned over to such Holders; provided further, that in no event shall any Holder of an Allowed Class 1J Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.41 Class 1J Litigation Trust Interests means beneficial interests in the Litigation Trust granted to Holders of Allowed Class 1J Claims, which shall entitle such Holders to a Pro Rata share, calculated together with Allowed Class 1E and 1I Claims and Allowed Class 1F Claims the Holders of which elect the treatment set forth in Section 3.2.6(c)(ii), of (i) the Parent GUC Trust Preference; and (ii) the Parent GUC Net Litigation Trust Proceeds; provided that until (a) the Holders of Allowed Senior Noteholder Claims, Claims, and (b) the Holders of any other Allowed Claims that are entitled to share in the Parent GUC Trust Preference and are entitled to the benefit of the contractual subordination of the PHONES Notes receive payment in full of the Allowed amount of such Holders' Claims, all distributions that would otherwise be made on account of Allowed PHONES Notes Claims shall be turned over to such Holders; provided further, that in no event shall any Holder of an Allowed Class 1J Claim be entitled to receive payments that exceed the Allowed amount of such Holder's Claim.

      1.1.42 Collective Bargaining Agreement(s) means, individually or collectively, the collective bargaining agreements listed on Appendix C hereto.

      1.1.43 Communications Act means the Communications Act of 1934, as amended, or any other successor federal statute, and the rules and regulations of the FCC promulgated thereunder.

      1.1.44 Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

      1.1.45 Confirmation Hearing means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

      1.1.46 Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.47 Convenience Claim means a Claim against Tribune that would otherwise be a General Unsecured Claim that is (a) in an amount equal to or less than $1,000 or (b) in an amount that has been reduced to $1,000 pursuant to a Convenience Class Election made by the Holder of such Claim; provided, however, that where any portion(s) of a single Claim has been transferred on or after April 12, 2010, any transferred portion(s) shall continue to be treated together with such Claim as a single Claim for purposes of the Convenience Class Election and determining whether such Claim qualifies as a Convenience Claim.

1.1.48 Convenience Class Election means an irrevocable election made on the Ballot by the Holder of a Claim against Tribune that would otherwise be a General Unsecured Claim in an amount greater than $1,000 to reduce such Claim to $1,000.

1.1.49 Creditor Proponents means the Proponents other than the Debtors and the Creditors' Committee; provided, however, that where this Plan provides for any approval, waiver, modification, or action by the "Creditor Proponents", such approval or waiver may be given or modification or action may be taken by the Creditor Proponents so long as each of Oaktree, Angelo Gordon, and JPMorgan all agree in writing with such approval or action; and provided further, however, that other Proponents may become "Creditor Proponents" of this Plan with the written consent of each of Oaktree, Angelo Gordon, and JPMorgan.

1.1.50 Creditors' Committee means the official committee of unsecured creditors appointed by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

1.1.51 Creditors' Committee Member Fee/Expense Claims means amounts incurred by individual members of the Creditors' Committee solely in their capacity as members of the Creditors' Committee on and after the Petition Date through and including the Effective Date for the reasonable and documented fees, costs and expenses of their individual outside legal and/or financial advisors.

1.1.52 Creditors' Trust means that certain trust created pursuant to the Plan and governed by the Creditors' Trust Agreement, to be administered by the Creditors' Trustee, all as more particularly set forth in Article XIV of the Plan and the Creditors' Trust Agreement.

1.1.53 Creditors' Trust Advisory Board means the advisory board, consisting of members of the Creditors' Committee who are beneficiaries of Creditors' Trust Interests, established pursuant to the Creditors' Trust Agreement that shall (i) appoint the Creditors' Trustee, (ii) participate in the management of the Creditors' Trust, and (iii) perform various other duties under the Creditors' Trust Agreement.

1.1.54 Creditors' Trust Agreement means that certain trust agreement, substantially in the form of Exhibit 14.1 filed as a supplement prior to the Confirmation Hearing, which agreement shall govern the Creditors' Trust and which shall provide for the distribution of Net Creditors' Trust Proceeds to the Creditors' Trust Beneficiaries in accordance with the terms of this Plan and the assumption of the setoff obligations as provided in Section 7.11.2 of this Plan; provided that in the event of any conflict between the terms of the Creditors' Trust Agreement and the terms of this Plan, this Plan shall control.

8

1.1.55 Creditors' Trust Assets means the Transferred State Law Avoidance Claims and any proceeds therefrom and any interest and earnings on such proceeds.

1.1.56 Creditors' Trust Beneficiaries means the holders of the Creditors' Trust Interests.

1.1.57 Creditors' Trust Indemnified Parties has the meaning set forth in Section 14.4.7 of this Plan.

1.1.58 Creditors' Trust Interests means the Class 1C Creditors' Trust Interests, Class 1D Creditors' Trust Interests, Class 1E Creditors' Trust Interests, Class 1F Creditors' Trust Interests, Class 1I Creditors' Trust Interests, and Class 1J Creditors' Trust Interests.

1.1.59 Creditors' Trustee means the trustee to serve pursuant to Article XIV of this Plan and under the Creditors' Trust Agreement.

1.1.60 CT Confidentiality and Common Interest Agreement means the confidentiality and common interest agreement to be entered into between the Reorganized Debtors and the Creditors' Trust governing the use of confidential information or material provided to the Creditors' Trust.

1.1.61 CT Reserve means any reserve established by the Creditors' Trustee on account of Disputed Claims held by any Creditors' Trust Beneficiary that, if Allowed, would entitle such Creditors' Trust Beneficiary to a distribution of Net Creditors' Trust Proceeds.

1.1.62 CT Tax Items has the meaning set forth in Section 14.2.2 of this Plan.

1.1.63 Customer Program means any of the Debtors' customer programs and practices as to which the Debtors were authorized, in their sole discretion and in the ordinary course of business, to honor and perform all obligations in respect thereof by the Order Authorizing, But Not Requiring, the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue Prepetition Customer Programs and Practices in the Ordinary Course of Business, which was signed by the Bankruptcy Court on December 10, 2008 [D.I. 50].

1.1.64 Debtor(s) means, individually or collectively, the debtors and debtors in possession identified in footnote 1 hereto, and shall also include any Subsidiary Non-Debtor that files a chapter 11 petition for relief prior to the Confirmation Date.

1.1.65 Debtor Released Claims has the meaning set forth in Section 11.2.1 of this Plan.

1.1.66 Defined Benefit Plan means a single-employer plan within the meaning of section 4001(a)(15) of the Employee Retirement Income Security Act of 1974, as amended.

1.1.67 DIP Facility means the financing facility and letter of credit facility entered into by the Debtors pursuant to the DIP Facility Agreements.

1.1.68 <u>DIP Facility Agent</u> means Barclays Bank PLC, as administrative agent and letter of credit agent under the DIP Facility Agreements.

1.1.69 <u>DIP Facility Agreements</u> means collectively, as each may be amended, supplemented or otherwise modified from time to time, (a) that certain Amended and Restated Receivables Loan Agreement among Tribune, Tribune Receivables, LLC, the DIP Facility Agent, and the DIP Facility Lenders, (b) that certain Amended and Restated Receivables Purchase Agreement among Tribune Receivables, LLC, Tribune and the other Originators (as defined therein), (c) that certain Amended and Restated Servicing Agreement among Tribune Receivables, LLC, Tribune and the other Originators (as defined therein), (d) that certain Amended and Restated Guaranty Security Agreement among Tribune, the other Debtors, and the DIP Facility Agent, (e) that certain Letter of Credit Agreement among the DIP Facility Agent, certain DIP Facility Lenders and the Debtors, and (f) that certain Payout and Termination Agreement, dated as of March 1, 2010, among Tribune Receivables, LLC, Tribune, certain subsidiaries of Tribune party thereto, and Barclays Bank PLC, as administrative agent.

1.1.70 <u>DIP Facility Claims</u> means all Claims held by the DIP Facility Agent and the DIP Facility Lenders pursuant to the DIP Facility Agreements and the Final DIP Order.

1.1.71 <u>DIP Facility Lenders</u> means the lenders from time to time party to the DIP Facility Agreements, including any applicable assignees and participants thereof.

1.1.72 <u>Disallowed Claim</u> means all or such part of a Claim that is disallowed by a Final Order.

1.1.73 <u>Disbursing Agent</u> means any entity in its capacity as a disbursing agent under <u>Section 7.5</u> of this Plan.

1.1.74 <u>Discharge Injunction</u> means the injunction described in section 1141 of the Bankruptcy Code and contained in <u>Section 11.1.2</u> of this Plan.

1.1.75 <u>Disclaimed State Law Avoidance Claims</u> means any and all LBO-Related Causes of Action arising under state fraudulent conveyance law that the Debtors or the Debtors' Estates could assert pursuant to section 544(b) of the Bankruptcy Code against Step Two Selling Stockholders, solely with respect to funds received in their capacities as such; provided, however, that Disclaimed State Law Avoidance Claims shall not include any claims for intentional fraudulent conveyance. For the avoidance of doubt, Disclaimed State Law Avoidance Claims shall not include any LBO-Related Causes of Action arising under state fraudulent conveyance law against any Released Parties.

1.1.76 <u>Disclosure Statement</u> means that certain general and specific disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.1.77 <u>Disputed Claim</u> means any portion of a Claim (a) that is neither an Allowed Claim nor a Disallowed Claim, (b) that is listed as disputed, contingent or unliquidated on the Debtors' schedules or that is otherwise subject to an objection, (c) for which a Proof of

Claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors have, or any party in interest entitled to do so has, interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order, or (d) that is subject to challenge by the Litigation Trust pursuant to this Plan.

1.1.78 Distributable Cash Pool means an amount in Cash equal to (i) if the Average Distributable Cash is more than $25 million greater than the Effective Date Cash, the Effective Date Cash plus $25 million, or (ii) if the Average Distributable Cash is more than $25 million less than the Effective Date Cash, the Effective Date Cash less $25 million, or (iii) if the Average Distributable Cash is within $25 million higher or lower than the Effective Date Cash, the Average Distributable Cash.

1.1.79 Distribution Date means any of the Initial Distribution Date, the Quarterly Distribution Date and the Final Distribution Date, but in no event a date prior to the Effective Date.

1.1.80 Distribution Record Date means the Confirmation Date or such other date as may be designated in the Confirmation Order.

1.1.81 DTC means The Depository Trust Company.

1.1.82 Effective Date means the first Business Day on which all of the conditions to the Effective Date specified in Section 10.1 of this Plan have been satisfied or waived in accordance with Section 10.2 of this Plan.

1.1.83 Effective Date Cash means an amount in Cash equal to the Available Cash balance of all of the Tribune Entities at the close of business on the Friday immediately preceding the Effective Date (or the immediately preceding Business Day if any such Friday is not a Business Day).

1.1.84 EGI-TRB LLC Noteholder means a Holder of EGI-TRB LLC Notes.

1.1.85 EGI-TRB LLC Notes means those certain promissory notes in the aggregate principal amount of $225 million issued by Tribune in favor of EGI-TRB LLC and certain direct and indirect assignees of EGI-TRB LLC.

1.1.86 EGI-TRB LLC Notes Claim means all Claims held by the EGI-TRB LLC Noteholders pursuant to the EGI-TRB LLC Notes.

1.1.87 EGI-TRB LLC Warrant means those certain 15-year warrants issued to EGI-TRB LLC and certain assignees evidencing rights to purchase 43,478,261 shares in the aggregate (subject to adjustment) of Old Common Stock.

1.1.88 Employee Benefit Claim means any Claim arising under or in connection with an assumed Employee Benefit Plan.

1.1.89 Employee Benefit Plan means any employment, compensation, tax-qualified or non-tax qualified Pension Plan, Defined Benefit Plan, Multiemployer Plan, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense reimbursement, dependent care, retirement, savings, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other benefit plan or any individual contract or agreement that has not been rejected or terminated prior to the Confirmation Date for the benefit of the directors, officers or employees (whether salaried or hourly) of the applicable Debtor, or maintained by any Debtor for employees of non-Debtor direct or indirect subsidiaries of a Debtor, and any retiree benefit program of the applicable Debtor included in the protections of section 1114 of the Bankruptcy Code, in all cases that has been in existence and has accrued to a specific person before or on the Petition Date or has been approved or otherwise permitted by a Final Order of the Bankruptcy Court or is an ordinary course agreement, plan or program, provided that any of the foregoing that specifically applies to any of the top twenty (20) officers of Tribune and its wholly-owned subsidiaries (determined by salary and bonus payments earned with respect to the most recently completed fiscal year) and does not have broad application to employees other than such officers, must have been disclosed to and approved by the Creditor Proponents to constitute an "Employee Benefit Plan"; provided further, that the definition of "Employee Benefit Plan" excludes Non-Qualified Former Employee Benefit Plans and the ESOP.

1.1.90 Equity Incentive Plan means an equity incentive plan pertaining to the Reorganized Debtors described in Section 5.11 of this Plan.

1.1.91 ESOP means, individually or collectively, the Tribune Employee Stock Ownership Plan and the Tribune Employee Stock Ownership Trust and any related documents and agreements, as the context implies.

1.1.92 Estate(s) means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.1.93 Exhibit means an exhibit annexed to this Plan.

1.1.94 Exit Facility means a new revolving credit facility, if any, as described in Exhibit 5.10 to be filed with the Plan Supplement, providing for loans and other extensions of credit in an aggregate amount up to $300 million, with a letter of credit sub-facility of up to $100 million, which may be entered into by Reorganized Tribune and certain of the other Reorganized Debtors and U.S. Subsidiary Non-Debtors on the Effective Date.

1.1.95 Exit Facility Credit Agreement means the definitive agreement relating to the Exit Facility.

1.1.96 Face Amount means (a) when used in reference to a Disputed Claim, (i) the full stated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (ii) if no such claim is filed in accordance with clause (i) above, the full stated amount listed on the pertinent Debtor's schedules as disputed, contingent or unliquidated if no contrary or superseding Proof of Claim or an objection

to the Claim has been filed, or (iii) if no stated amount is included in the Proof of Claim or the pertinent Debtor's schedules with respect to a disputed, contingent or unliquidated claim, then an amount determined by the pertinent Debtor, and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

1.1.97 FCC means the Federal Communications Commission or any other federal agency succeeding to its jurisdiction.

1.1.98 FCC Applications means, collectively, each application filed with the FCC in connection with this Plan, including those filed in connection with the assignment and/or transfer of control of FCC Licenses from the Debtors to the Reorganized Debtors and any other FCC applications necessary to complete the Restructuring Transactions.

1.1.99 FCC Approval means an action or actions by the FCC (including any action or actions taken by the FCC's staff pursuant to delegated authority and regardless of whether any action or actions may be subject to further administrative or judicial review) on the FCC Applications granting any consent of the FCC necessary to consummate the assignment and/or transfer of control of FCC Licenses from the Debtors to the Reorganized Debtors and/or otherwise necessary to implement this Plan.

1.1.100  FCC Licenses means broadcasting and other licenses, authorizations, waivers and permits that are issued from time to time by the FCC.

1.1.101  Filed Subsidiary Debtors means, individually or collectively, the Debtors listed on Appendix A hereto.

1.1.102  Final DIP Order means the Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and For Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter Into a Letter of Credit Facility, (3) Modifying the Automatic Stay and (4) Granting Other Related Relief, as entered on January 15, 2009 [D.I. 233], as the same has been and may be amended, modified or supplemented from time to time, together with any modifications and amendments thereto, including, without limitation, the Order Authorizing Debtors to Amend Letter of Credit Facility Pursuant to Sections 105, 362(d), 363(b)(1), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code and Granting Other Related Relief, as entered on March 22, 2010 [D.I. 3808].

1.1.103  Final Distribution Date means a date selected by the Reorganized Debtors that is no later than thirty (30) days after the date that all Disputed Claims in the applicable Class(es) shall have been Allowed or Disallowed.

1.1.104  Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall

then be pending, or (b) if an appeal, writ of <u>certiorari</u>, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or <u>certiorari</u> shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for <u>certiorari</u> or move for a new trial, reargument or rehearing shall have expired; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

      1.1.105 <u>Foreign Ownership Certification</u> means the certification of aggregate foreign voting interests and aggregate foreign equity interests that each Holder of a Claim that is eligible to receive New Common Stock under this Plan must provide.

      1.1.106 <u>Former Bridge Loan Agent</u> means Merrill Lynch Capital Corporation as former administrative agent under the Bridge Loan Agreement.

      1.1.107 <u>General Unsecured Claim</u> means any Claim against the Debtors that is not an Administrative Expense Claim, a DIP Facility Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, a Senior Loan Claim, a Bridge Loan Claim, a Senior Noteholder Claim, a Convenience Claim, an EGI-TRB LLC Notes Claim, a PHONES Notes Claim, an Employee Benefit Claim, an Intercompany Claim, a Securities Litigation Claim, a Senior Guaranty Claim or a Bridge Loan Guaranty Claim and shall not include Disallowed Claims or Claims that are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

      1.1.108 <u>Global Contract Motion</u> means a motion seeking the assumption or rejection of unassumed or unrejected executory contracts and unexpired leases of the Debtors, which motion may be filed with the Bankruptcy Court and heard at the Confirmation Hearing.

      1.1.109 <u>Guarantor Debtors</u> means those Debtors listed on <u>Appendix A</u> hereto as "Guarantor Debtors".

      1.1.110 <u>Guarantor Non-Debtor Release</u> means the release by all Holders of Loan Guaranty Claims against the Guarantor Non-Debtors on the Effective Date (a) releasing the Guarantor Non-Debtors from any and all Senior Guaranty Claims and Bridge Loan Guaranty Claims and (b) releasing the Senior Loan Agent, Former Bridge Loan Agent, and Bridge Loan Agent, respectively, from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever resulting from the release of the Guarantor Non-Debtors from any and all Senior Guaranty Claims and Bridge Loan Guaranty Claims.

      1.1.111 <u>Guarantor Non-Debtors</u> means those non-Debtors listed on <u>Appendix B</u> hereto as "Guarantor Non-Debtors".

      1.1.112 <u>Holder</u> means a Person holding a Claim or Interest.

1.1.113 Holder Released Claims has the meaning set forth in Section 11.2.2 of this Plan.

1.1.114 Impaired means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.1.115 Incremental Senior Loans means the "Incremental Term Advances" or "Incremental Term Borrowings" as defined in the Senior Loan Agreement.

1.1.116 Indemnity, Subrogation and Contribution Agreements means (a) the Indemnity, Subrogation and Contribution Agreement, dated as of December 20, 2007, among Tribune, each of the subsidiaries of Tribune listed on Schedule I thereto, and the Former Bridge Loan Agent, as amended, restated, supplemented or otherwise modified from time to time, and (b) the Indemnity, Subrogation and Contribution Agreement, dated as of December 20, 2007, among Tribune, each of the subsidiaries of Tribune listed on Schedule I thereto, and the Senior Loan Agent, as amended, restated, supplemented or otherwise modified from time to time.

1.1.117 Indentures means the Senior Notes Indentures and the PHONES Notes Indenture.

1.1.118 Indenture Trustees means the Senior Notes Indenture Trustees and the PHONES Notes Indenture Trustee.

1.1.119 Initial Distribution Date means a date selected by the Reorganized Debtors that is as soon as practicable following the Effective Date and is in no event later than thirty (30) days after the Effective Date.

1.1.120 Initial Report has the meaning set forth in Section 9.2 hereto.

1.1.121 Intercompany Claims means all prepetition Claims against any of the Debtors held by another Debtor or a non-Debtor Affiliate.

1.1.122 Intercompany Claims Settlement means the settlement and compromise respecting Intercompany Claims on the terms set forth in Exhibit 1.1.122 to be filed with the Plan Supplement.

1.1.123 Interest means any share of common stock, preferred stock or other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date, including, but not limited to, any Tribune Interest and Interest in a Subsidiary Debtor.

1.1.124 Law Debenture means Law Debenture Trust Company of New York, not personally but solely in its capacity as successor indenture trustee under that certain Indenture, dated as of March 19, 1996, as amended, restated or otherwise modified from time to time, between Tribune and Law Debenture Trust Company of New York.

15

1.1.125 <u>LBO-Related Causes of Action</u> means any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action, avoidance powers or rights, liabilities of any nature whatsoever, and legal or equitable remedies against any Person arising from the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law.

1.1.126 <u>Lien</u> means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property.

1.1.127 <u>Litigation Trust</u> means the trust created pursuant to the Litigation Trust Agreement on the Effective Date in accordance with this Plan, the Confirmation Order and the Litigation Trust Agreement.

1.1.128 <u>Litigation Trust Advisory Board</u> means a board of up to five members, consisting of members of the Creditors' Committee who are beneficiaries of Litigation Trust Interests, established pursuant to <u>Article XIII</u> of this Plan to advise, assist and supervise the Litigation Trustee in the administration of the Litigation Trust pursuant to the Litigation Trust Agreement.

1.1.129 <u>Litigation Trust Agreement</u> means the Litigation Trust Agreement to be dated as of the Effective Date establishing the terms and conditions of the Litigation Trust, on substantially the terms described in <u>Exhibit 13.1</u> to be filed as part of the Plan Supplement, including, without limitation (i) procedures for control of any legal proceedings and/or settlements in respect of any Preserved Causes of Action against the Non-Settling Step Two Payees, in each case on a basis satisfactory to both the Committee and the Step Two Arrangers, and (ii) the assumption of the setoff obligations as provided in <u>Section 7.11.2</u> of this Plan; <u>provided</u> that in the event of any conflict between the terms of the Litigation Trust Agreement and the terms of this Plan, this Plan shall control.

1.1.130 <u>Litigation Trust Assets</u> means all Preserved Causes of Action that are not Disclaimed State Law Avoidance Claims, including any proceeds therefrom, and any interest and earnings on such proceeds.

1.1.131 <u>Litigation Trust Beneficiaries</u> means the holders of Litigation Trust Interests.

1.1.132 <u>Litigation Trust Indemnified Parties</u> has the meaning set forth in <u>Section 13.3.7</u> of this Plan.

1.1.133 <u>Litigation Trust Interests</u> means the Class 1C Litigation Trust Interests, Class 1D Litigation Trust Interests, Class 1E Litigation Trust Interests, Class 1F Litigation Trust Interests, Class 1I Litigation Trust Interests, and Class 1J Litigation Trust Interests.

1.1.134 <u>Litigation Trustee</u> means the trustee to serve pursuant to <u>Article XIII</u> of the Plan and under the Litigation Trust Agreement.

1.1.135 <u>Loan Agents</u> means the Senior Loan Agent and the Bridge Loan Agent.

1.1.136 <u>Loan Agreements</u> means the Senior Loan Agreement and the Bridge Loan Agreement.

1.1.137 <u>Loan Claims</u> means the Senior Loan Claims and the Bridge Loan Claims.

1.1.138 <u>Loan Guaranty Agreements</u> means the Senior Guaranty Agreement, the Bridge Loan Guaranty Agreement and the Indemnity, Subrogation and Contribution Agreements.

1.1.139 <u>Loan Guaranty Claims</u> means the Senior Guaranty Claims and the Bridge Loan Guaranty Claims.

1.1.140 <u>LT Confidentiality and Common Interest Agreement</u> means the confidentiality and common interest agreement to be entered into between the Reorganized Debtors and the Litigation Trust governing the use of confidential information or material provided to the Litigation Trust.

1.1.141 <u>LT Reserve</u> means any reserve established by the Litigation Trustee on account of Disputed Claims held by any Litigation Trust Beneficiary that, if Allowed, would entitle such Litigation Trust Beneficiary to a distribution of Net Litigation Trust Proceeds.

1.1.142 <u>LT Tax Items</u> has the meaning set forth in <u>Section 13.2.2</u> of this Plan.

1.1.143 <u>Media Ownership Certification</u> means the certification of other media investments and holdings, and any other information that the Debtors deem reasonably necessary for purposes of the FCC Applications and/or FCC Approval, including, without limitation, on FCC qualifications to hold an attributable interest in the Reorganized Debtors under FCC rules and policies that each Holder that is entitled to receive New Common Stock under this Plan may be required to provide.

1.1.144 <u>Morgan Stanley Claims</u> means all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, and including any and all rights, claims and actions (including avoidance actions arising under chapter 5 of the Bankruptcy Code) that Tribune or any of its Affiliates may have against MSCS. Morgan Stanley Claims include but are not limited to rights, claims and actions arising from or related to (a) the acquisition, sale or disposition of any notes, bonds or other indebtedness held by MSCS, (b) the interest rate swap transaction executed pursuant to the ISDA Master Agreement dated as of August 5, 1994 (as subsequently amended and together with any schedules, exhibits and confirmations) between The Times Mirror Company and MSCS and any set-offs of claims arising from such interest rate swap transaction, and (c) any advisory engagement or potential advisory engagement of, and/or advice given by, or information or analyses withheld, MSCS, including but not limited to (i) services provided by MSCS as an Advisor, and (ii) the agreement

between Tribune and MSCS dated as of November 30, 2008, regardless of whether such rights, claims and actions may be asserted pursuant to the Bankruptcy Code or any other applicable law. For avoidance of doubt, rights, claims and actions arising from or related to (a)-(c) in the preceding sentence are Preserved Causes of Action and are not released pursuant to this Plan or the Confirmation Order.

1.1.145 MSCS means Morgan Stanley Capital Services Inc. and its Affiliates and Related Persons of such entities, including, without limitation, Morgan Stanley & Co, Inc.

1.1.146 Multiemployer Plan means a plan (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements contained in regulations promulgated by the United States Department of Labor.

1.1.147 Net Creditors' Trust Proceeds means the proceeds received by the Creditors' Trust from the pursuit of any Transferred State Law Avoidance Claims less, without duplication, (a) the amount of any fees and expenses incurred by the Creditors' Trust in pursuing the Transferred State Law Avoidance Claims, administering the Creditors' Trust, managing the Creditors' Trust Assets and making distributions on account of Creditors' Trust Interests; (b) such amounts as the Creditors' Trustee determines should be held as a reserve to pay fees and expenses anticipated to be incurred in the future for the purposes set forth in (a) above; and (c) amounts held in the CT Reserves.

1.1.148 Net Litigation Trust Proceeds means the proceeds received by the Litigation Trust from the pursuit of any Litigation Trust Assets less, without duplication, (a) the amount of proceeds received by the Litigation Trust from the pursuit of any Preserved Causes of Action against the Non-Settling Step Two Payees required to satisfy the Step Two Arrangers Litigation Trust Preference, if any; (b) the amount of any fees and expenses incurred by the Litigation Trust in pursuing the Litigation Trust Assets, administering the Litigation Trust, managing the Litigation Trust Assets and making distributions on account of Litigation Trust Interests; (c) such amounts as the Litigation Trustee determines should be held as a reserve to pay fees and expenses anticipated to be incurred in the future for the purposes set forth in (b) above; and (d) amounts held in the LT Reserves.

1.1.149 New Class A Common Stock means the Class A Common Stock to be issued by Reorganized Tribune in connection with the implementation of, and as authorized by, this Plan, which shall have the powers, preferences and rights and be subject to the limitations, qualifications and restrictions, in each case as set forth in the Certificate of Incorporation.

1.1.150 New Class B Common Stock means the Class B Common Stock to be issued by Reorganized Tribune in connection with the implementation of, and as authorized by, this Plan, which shall have the powers, preferences and rights and be subject to the limitations, qualifications and restrictions, in each case as set forth in the Certificate of Incorporation.

1.1.151 New Common Stock means, collectively, the New Class A Common Stock and the New Class B Common Stock; provided that, under the circumstances set forth in

Section 5.4.2 of this Plan, certain Holders of Claims that would otherwise be entitled to receive New Class A Common Stock or New Class B Common Stock may instead receive New Warrants.

        1.1.152 New Senior Secured Term Loan means the new senior secured term loan in an aggregate principal amount of not more than the lesser of (a) $1.1 billion or (b) two times the Debtors' trailing twelve month operating cash flow excluding minority equity interests (each as described and defined in the New Senior Secured Term Loan Agreement) as of the end of the fiscal quarter most recently ended prior to the Effective Date; which, subject to the terms of Section 5.6 of this Plan, may be issued on the Effective Date by Reorganized Tribune pursuant to the New Senior Secured Term Loan Agreement, or may be replaced in whole or in part with a distribution of Cash pursuant to and in accordance with Section 5.6.2 of this Plan.

        1.1.153 New Senior Secured Term Loan Agreement means the loan agreement among Reorganized Tribune, as borrower, the other Reorganized Debtors and U.S. Subsidiary Non-Debtors as provided in and subject to Section 5.6 of this Plan (including, without limitation, the Guarantor Non-Debtors and any successors to the Reorganized Debtors after giving effect to the Restructuring Transactions), as guarantors, the administrative agent party thereto, and the Holders of Claims entitled to receive the New Senior Secured Term Loan under this Plan, which shall contain terms substantially as set forth in Exhibit 5.6 and filed with the Plan Supplement.

        1.1.154 New Warrant Agreement means the warrant agreement with substantially the terms set forth in Exhibit 1.1.154 to be filed with the Plan Supplement.

        1.1.155 New Warrants means the warrants to purchase New Class A Common Stock or New Class B Common Stock to be issued by Reorganized Tribune in connection with the implementation of, and as authorized by, this Plan.

        1.1.156 Non-Guarantor Debtors means those Debtors listed on Appendix A hereto as "Non-Guarantor Debtors".

        1.1.157 Non-Guarantor Non-Debtors means those non-Debtors listed on Appendix B hereto as "Non-Guarantor Non-Debtors".

        1.1.158 Non-Qualified Former Employee Benefit Plan means any of the Debtors' non-tax qualified Pension Plans and individual agreements providing for retirement compensation, or deferred compensation arrangements of the applicable Debtor covering an individual who was not an employee, consultant or director of the applicable Debtor as of the Effective Date.

        1.1.159 Non-Settling Defendants means all Persons who are or may be defendants on LBO-Related Causes of Action or Morgan Stanley Claims other than Released Parties in their capacities as such.

        1.1.160 Non-Settling Step Two Payees means any current or former Senior Lender or Bridge Lender that (i) received any payment (a) under the Senior Loan Agreement on account of the Incremental Senior Loans or (b) under the Bridge Loan Agreement, in each case prior to the Petition Date and (ii) does not participate in the Step Two/Disgorgement Settlement,

solely in any such Person's capacities (if any) as an agent or arranger with respect to the Step Two Transactions or as a recipient of such payments.

1.1.161 <u>Old Common Stock</u> means the issued and outstanding common stock of Tribune as of the Petition Date.

1.1.162 <u>Ordinary Litigation Claims</u> means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown that any Debtor or Estate may hold against any Person as of the Petition Date; <u>provided</u>, <u>however</u>, Ordinary Litigation Claims shall not include (a) any claim, right of action, suit or proceeding that has been settled on or prior to the Effective Date, (b) the Released LBO-Related Causes of Action, (c) other claims, rights of action, suits or proceedings waived or released pursuant to <u>Article XI</u> of this Plan and (d) the Preserved Causes of Action against the Non-Settling Defendants.

1.1.163 <u>Other Parent Claims</u> means General Unsecured Claims against Tribune and the Swap Claim (and for the avoidance of doubt includes all Claims against Tribune under Non-Qualified Former Employee Benefit Plans, but does not include Convenience Claims).

1.1.164 <u>Other Parent Claims Reserve</u> means one or more reserves of Cash established for the benefit of Allowed Other Parent Claims pursuant to <u>Section 7.2.1(a)</u> of this Plan.

1.1.165 <u>Other Secured Claim</u> means a Secured Claim, other than an Administrative Expense Claim, a DIP Facility Claim, a Priority Tax Claim, a Senior Loan Claim (other than a right to setoff) or a Senior Noteholder Claim (other than a right to setoff).

1.1.166 <u>Parent GUC Net Creditors' Trust Proceeds</u> means, after the Parent GUC Trust Preference and the Trusts' Loan Preference have been paid in full, sixty five percent (65%) of the Net Creditors' Trust Proceeds to be distributed to Holders of Allowed Claims, who have not opted out of making the assignment provided in <u>Section 14.3.1</u> of this Plan, in Classes 1E, 1I and 1J and Allowed Class 1F Claims the Holders of which elect the treatment set forth in <u>Section 3.2.6(c)(ii)</u> and have not opted out of making the assignment provided in <u>Section 14.3.1</u> of this Plan, and, after the payment in full of all the foregoing Claims, Holders of Allowed Claims in Class 1C.

1.1.167 <u>Parent GUC Net Litigation Trust Proceeds</u> means, after the Parent GUC Trust Preference and the Trusts' Loan Preference have been paid in full, sixty five percent (65%) of the Net Litigation Trust Proceeds to be distributed to Holders of Allowed Claims in Classes 1E, 1I and 1J and Allowed Class 1F Claims the Holders of which elect the treatment set forth in <u>Section 3.2.6(c)(ii)</u>, and, after the payment in full of all the foregoing Claims, Holders of Allowed Claims in Class 1C.

1.1.168 <u>Parent GUC Trust Preference</u> means one hundred percent (100%) of the Net Creditors' Trust Proceeds plus 100% of the Net Litigation Trust Proceeds in each case to be distributed to Holders of Allowed Claims in Classes 1E, 1I and 1J and Allowed Class 1F Claims the Holders of which elect the treatment set forth in <u>Section 3.2.6(c)(ii)</u> until such Holders have received an amount equal to $90,000,000 in the aggregate from the Litigation Trust and/or the Creditors' Trust.

1.1.169 <u>Pension Plan</u> means an employee pension benefit plan within the meaning of section (2)(A) of the Employee Retirement Income Security Act of 1974, as amended, but excludes Multiemployer Plans.

1.1.170 <u>Person</u> means an individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

1.1.171 <u>Petition Date</u> means (i) for Tribune and for all Debtors listed on Appendix A to this Plan other than Tribune CNLBC, LLC, December 8, 2008, the date on which such Debtors commenced their Chapter 11 Cases, (ii) for Tribune CNLBC, LLC, October 12, 2009, the date on which such Debtor commenced its Chapter 11 Case, and (iii) with respect to the Subsidiary Non-Debtors, the date on which any such Subsidiary Non-Debtor commences its Chapter 11 Case, if any.

1.1.172 <u>PHONES Notes</u> means the issued and outstanding notes under the PHONES Notes Indenture.

1.1.173 <u>PHONES Notes Claim</u> means a Claim arising under or evidenced by the PHONES Notes Indenture and related documents, except any claim made by Wilmington Trust Company, as successor indenture trustee, for reasonable compensation for services under the PHONES Notes Indenture or for the reimbursement of reasonable expenses, disbursements, and advances incurred or made by Wilmington Trust Company in accordance with any provision of the PHONES Notes Indenture, only to the extent that the Bankruptcy Court determines that any such claim should not be a PHONES Notes Claim and should instead be classified as and afforded the treatment provided to a General Unsecured Claim against Tribune.

1.1.174 <u>PHONES Notes Indenture</u> means that certain Indenture, dated as of April 1, 1999, between Tribune and Wilmington Trust Company, as successor indenture trustee, as amended, restated or otherwise modified from time to time.

1.1.175 <u>PHONES Notes Indenture Trustee</u> means the indenture trustee under the PHONES Notes Indenture.

1.1.176 <u>Plan</u> means this first amended chapter 11 plan of reorganization for the Debtors in the Chapter 11 Cases and, with the consent of the Proponents, this chapter 11 plan of reorganization for the Non-Guarantor Non-Debtors, if any, that become Debtors and the Prepackaged Plan for the Guarantor Non-Debtors, if any, that become Debtors, including Exhibits and all supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.1.177 <u>Plan Supplement</u> means the supplement to this Plan filed with the Bankruptcy Court not later than fifteen (15) calendar days prior to the deadline established for objecting to confirmation of this Plan, in form and substance acceptable to the Proponents.

1.1.178 <u>Pledge Agreement</u> means the Pledge Agreement, dated as of June 4, 2007, between Tribune and the Senior Loan Agent, as amended, restated, supplemented or otherwise modified from time to time.

1.1.179 <u>Prepackaged Plan</u> means this Plan for the Guarantor Non-Debtors, if any, that become Debtors.

1.1.180 <u>Preserved Causes of Action</u> means (a) any and all LBO-Related Causes of Action that the Tribune Entities or the Debtors' Estates may have or are entitled to assert on behalf of their respective Estates (whether or not asserted) against the Non-Settling Defendants under any provision of the Bankruptcy Code or any applicable nonbankruptcy law including, without limitation, any and all claims under chapter 5 of the Bankruptcy Code; (b) Advisor Claims; (c) Morgan Stanley Claims; (d) objections, claims, and causes of action for avoidance and disallowance of Bridge Loan Claims and Bridge Loan Guaranty Claims; (e) claims and causes of action against Non-Settling Step Two Payees to the extent such claims or causes of action seek recovery of payments (i) under the Senior Loan Agreement on account of the Incremental Senior Loans or (ii) under the Bridge Loan Agreement, in each case whether based on avoidance and disallowance of Senior Loan Claims or Bridge Loan Claims or any other theory; and (f) Disclaimed State Law Avoidance Claims; <u>provided</u>, <u>however</u>, that Preserved Causes of Action shall not include any claims, causes of action, suits or proceedings that have been released or settled on or prior to the Effective Date.

1.1.181 <u>Priority Non-Tax Claims</u> means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.1.182 <u>Priority Tax Claim</u> means any secured or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.183 <u>Proof of Claim or Proof of Interest</u> means the proof of claim or proof of interest, respectively, that must be filed by a Holder of a Claim or Interest by the date(s) designated by the Bankruptcy Court as the last date(s) for filing proofs of claim or interests against the Debtors, or as is otherwise permitted to be filed against any of the Debtors pursuant to a Final Order of the Bankruptcy Court.

1.1.184 <u>Proponents</u> means (a) the Debtors, (b) the Creditors' Committee, (c) Oaktree and Angelo Gordon, each in its capacity as a Holder of Senior Loan Claims, or as a general partner or manager of an entity that is a Holder of Senior Loan Claims, and as a proponent of this Plan and (d) JPMorgan as the Senior Loan Agent and as a Holder of Senior Loan Claims; <u>provided</u>, <u>however</u>, that where this Plan provides for any approval, waiver, modification, or action by the "Proponents", such approval or waiver may be given or modification or action may be taken by the Proponents so long as each of the Debtors, the Creditors' Committee, Oaktree, Angelo Gordon, and JPMorgan all agree in writing with such approval or action; and provided further, however, that other Persons may become "Proponents" of this Plan with the written consent of each of the Debtors, the Creditors' Committee, Oaktree, Angelo Gordon, and JPMorgan.

1.1.185 <u>Pro Rata</u> means that proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such multiple Classes, or in reference to a specific type of Claim, in which case Pro Rata means the proportion that an Allowed Claim of such type bears to the aggregate amount of all Allowed Claims of such type.

1.1.186 <u>Quarterly Distribution Date</u> means fifteen (15) calendar days after the conclusion of the calendar quarters ending in March, June, September and December.

1.1.187 <u>Reinstated or Reinstatement</u> means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default whether or not such default occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest.

1.1.188 <u>Related Person</u> means, with respect to any Person, such Person's Affiliates, predecessors, successors and assigns (whether by operation of law or otherwise), and with respect to any of the foregoing their respective present and former Affiliates and each of their respective current and former members, partners, shareholders, equity-holders, officers, directors, employees, managers, trustees, trust beneficiaries, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, or other representatives, nominees or investment managers, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, trustees, trust beneficiaries, shareholders, partners, employees, members and professionals).

1.1.189 <u>Released Claims</u> means the Debtor Released Claims and the Holder Released Claims, as such terms are defined in <u>Sections 11.2.1</u> and <u>11.2.2</u> respectively.

1.1.190 <u>Released LBO-Related Causes of Action</u> means any and all LBO-Related Causes of Action that belong to or could be asserted by the Tribune Entities, the Debtors' Estates or any other Person that is deemed to have given a release pursuant to <u>Section 11.2</u> of this Plan against the Released Parties.

1.1.191 <u>Released Parties</u> means, except as otherwise provided in Sections 11.2.1, 11.2.3 and 11.2.6 of this Plan, each of (a) the Debtors, their non-Debtor Affiliates, including the Subsidiary Non-Debtors, and the Reorganized Debtors; (b) the current and former Senior Lenders in all capacities except their capacities, if any, as (i) Step Two Selling Stockholders, (ii) Non-Settling Step Two Payees, and (iii) Advisors; (c) the Settling Step Two Payees in all capacities except their capacities, if any, as (i) Step Two Selling Stockholders, (ii) Advisors, and (iii) Bridge Lenders, solely with respect to allowance of their Bridge Loan Claims and Bridge Loan Guaranty Claims; (d) each of the following, solely in their capacities as such: (i) the Creditors' Committee, (ii) the present and former members of the Creditors' Committee, (iii) the Senior Loan Agent and the Former Bridge Loan Agent, (iv) the Step One Selling Stockholders, (v) the Proponents, and (vi) the Released Step Two Stockholder Parties ; (e) Related Persons of Released Parties listed in clause (a) of this paragraph to the extent a claim arises from the Related Person's relationship to one of the foregoing "Released Parties" listed in clause (a) and is not a LBO-Related Cause of Action, and (f) Related Persons of Persons listed in clauses (b), (c) and (d) of this paragraph to the extent a claim arises from actions taken by such Related Person in its capacity as a Related Person of one of the Persons listed in clauses (b), (c) and (d) of this paragraph and is released against the party as to which they are a Related Person. Notwithstanding anything to the contrary in this definition, none of the following, solely in their capacities as such, shall be Released Parties with respect to LBO-Related Causes of Action or Morgan Stanley Claims: (a) Related Persons of the Debtors, (b) Advisors, (c) Step Two Selling Stockholders (with the exception of Released Step Two Stockholder Parties), (d) MSCS, (e) Non-Settling Step Two Payees, (f) EGI-TRB LLC, (g) Samuel Zell, and (h) Valuation Research Corporation.

1.1.192 <u>Released Step Two Stockholder Parties</u> means (a) any Person that redeemed shares of common stock of Tribune held through the Tribune Company 401(k) Savings Plan (f/k/a Tribune Company 401(k) Savings and Profit Sharing Plan) in connection with the Step Two Transactions, with the exception of those Persons, and subject to the circumstances, listed on <u>Exhibit 1.1.192</u> hereto to be filed with the Plan Supplement, (b) any Person employed by the Debtors on October 22, 2010 and that remains employed by the Debtors as of the Effective Date with respect to the first $100,000 of Cash received from the redemption of common stock, stock equivalents or options of Tribune in connection with the Step Two Transactions, with the exception of those Persons, and subject to the circumstances, listed on <u>Exhibit 1.1.192</u> hereto to be filed with the Plan Supplement, (c) the Retiree Claimants or other Holders of Claims arising from Non-Qualified Former Employee Benefit Plans that elect to receive the treatment set forth in <u>Section 3.2.6(c)(i)</u> of this Plan, and (d) the Retiree Claimants or other Holders of Claims arising from Non-Qualified Former Employee Benefit Plans that elect to receive the treatment set forth in <u>Section 3.2.6(c)(ii)</u> of this Plan, solely with respect to the first $100,000 of Cash received from the redemption of common stock, stock equivalents or options of Tribune in connection with the Step Two Transactions.

1.1.193 <u>Remaining Bridge Loan Reserve</u> means an amount equal to the Bridge Loan Reserve minus the Bridge Loan Distribution Amount.

1.1.194 <u>Remaining Distributable Cash</u> means an amount in Cash equal to (a) the Distributable Cash Pool less (b) the sum of (i) $325 million, (ii) the amount of Cash required for the Bridge Loan Reserve, (iii) the amount of Cash to be distributed to or reserved for the Holders

of Allowed Senior Noteholder Claims pursuant to Section 3.2.5, (iv) the amount of Cash to be distributed to or reserved for the Holders of Allowed Other Parent Claims pursuant to Section 3.2.6, (v) the amount of Cash to be distributed to or reserved for the Holders of Allowed Convenience Claims pursuant to Section 3.2.7, (vi) the amount of Cash to be distributed to or reserved for the Holders of Allowed General Unsecured Claims pursuant to Section 3.3.5, (vii) the amount of Cash necessary to fund the Trusts' Loan, and (viii) the amount of Cash estimated by the Proponents to be required to be distributed to or reserved for Holders of Allowed Administrative Expense Claims (including fees paid pursuant to Section 9.1 of this Plan, any fees and expenses associated with the Exit Facility or any new indebtedness under Section 5.6 of this Plan, and cure costs required to be paid by the Debtors but excluding post-petition payables arising and paid in the ordinary course of business), Priority Tax Claims estimated to be payable at or in connection with the Effective Date, DIP Facility Claims, Priority Non-Tax Claims, Claims arising from Employee Benefit Plans continuing with current employees, and Cash required to be posted to cash collateralize outstanding letters of credit.

1.1.195 Reorganized Debtors means Reorganized Tribune and the other reorganized Debtors or any successors thereto by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the transactions occurring on or prior to the Effective Date in accordance with this Plan (including, without limitation, the Restructuring Transactions).

1.1.196 Reorganized Tribune means reorganized Tribune or any successors thereto by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the transactions occurring on or prior to the Effective Date in accordance with this Plan.

1.1.197 Restructuring Transactions means those transactions or other actions (including, without limitation, mergers, consolidations, conversions, joint ventures, restructurings, recapitalizations, dispositions, liquidations or dissolutions) that one or more of the applicable Debtors or Reorganized Debtors may enter into or undertake on, prior to, or after the Effective Date outside the ordinary course of business of such Debtors or Reorganized Debtors in accordance with Section 5.2 hereof and as shall be set forth in the Plan Supplement.

1.1.198 Retiree Claimants means those Holders of Claims under Non-Qualified Former Employee Benefit Plans that are parties to the Retiree Claimant Settlement Agreement.

1.1.199 Retiree Claimant Settlement Agreement means that certain settlement agreement by and among Tribune and certain Retiree Claimants attached hereto as Exhibit 5.15.4.

1.1.200 Secured Claim means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral (i) as set forth in this Plan, (ii) as agreed to by the Holder of such Claim and the Debtors, which agreement is approved or otherwise permitted by a Final Order of the Bankruptcy Court or is an ordinary course agreement, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

1.1.201 Securities Litigation Claim means any Claim against any of the Debtors, except any Claim that survives confirmation and effectiveness of this Plan pursuant to Section

11.6, (i) arising from the rescission of a purchase or sale of shares, notes or any other securities of any of the Debtors or an Affiliate of any of the Debtors, (ii) for damages arising from the purchase or sale of any such security, (iii) for violations of the securities laws or the Employee Retirement Income Security Act of 1974 (unless there has been a judicial determination by Final Order that any such Claim is not subject to subordination under section 510(b) of the Bankruptcy Code), including, without limitation, any Claim against any of the Debtors asserted by the United States Department of Labor, or for misrepresentations or any similar Claims related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (iv) asserted by or on behalf of any present or former participants in the ESOP and/or the ESOP in their capacity as such, (v) for attorneys' fees, other charges or costs incurred on account of any of the foregoing Claims, or (vi) for reimbursement, contribution or indemnification allowed under section 502 of the Bankruptcy Code on account of any of the foregoing Claims, including Claims based upon allegations that the Debtors made false and misleading statements or engaged in other deceptive acts in connection with the offer, purchase, or sale of securities.

      1.1.202 <u>Senior Guaranty Agreement</u> means the Guarantee Agreement, dated as of June 4, 2007, among Tribune, each of the subsidiaries of Tribune listed on Annex I thereto, and the Senior Loan Agent, as amended, restated, supplemented or otherwise modified from time to time.

      1.1.203 <u>Senior Guaranty Claim</u> means a Claim arising under the Senior Guaranty Agreement, including, without limitation, the guaranty of the Swap Claim.

      1.1.204 <u>Senior Guaranty Claim Assignee</u> means Reorganized Tribune or a designee of Reorganized Tribune, in each case vested with full standing and authority to hold and enforce any and all rights, claims, causes of action, obligations, and remedies in respect of Assigned Senior Guaranty Claims against the Guarantor Non-Debtors and to hold and enforce any and all rights of subordination in respect of the Bridge Loan Guaranty Agreement.

      1.1.205 <u>Senior Lender Fee/Expense Claims</u> means all accrued and unpaid amounts for the reasonable and documented fees, costs and expenses of the Senior Lender Professionals incurred in connection with the Chapter 11 Cases.

      1.1.206 <u>Senior Lender Holdback</u> has the meaning set forth in <u>Section 3.3.3</u> of this Plan.

      1.1.207 <u>Senior Lender Professionals</u> means (i) the professionals and advisors for JPMorgan, (ii) Hennigan, Bennett & Dorman LLP, Young, Conaway, Stargatt & Taylor LLP and Wilmer Cutler Pickering Hale & Dorr LLP, as counsel to Angelo Gordon, Oaktree, and other holders of Senior Loan Claims, and (iii) any other counsel previously retained by Angelo Gordon or Oaktree in connection with the Chapter 11 Cases on or after the Petition Date through the Effective Date.

      1.1.208 <u>Senior Lenders</u> means the lenders from time to time party to the Senior Loan Agreement as Lenders thereunder, including former lenders and any applicable assignees and participants thereof.

1.1.209 <u>Senior Loan Agent</u> means JPMorgan Chase Bank, N.A. as administrative agent under the Senior Loan Agreement.

1.1.210 <u>Senior Loan Agreement</u> means, collectively, (a) that certain Credit Agreement, dated as of May 17, 2007, among Tribune, the Senior Lenders, the Senior Loan Agent, Merrill Lynch Capital Corporation, as syndication agent, and Citicorp North America, Inc. and Bank of America, N.A., as co-documentation agents, as amended, restated, supplemented or otherwise modified from time to time and (b) those certain Increase Joinders, dated as of December 20, 2007, among Tribune, certain of the Senior Lenders and the Senior Loan Agent, as amended, restated, supplemented or otherwise modified from time to time.

1.1.211 <u>Senior Loan Arrangers</u> means any Syndication Agent, Documentation Agent, Arranger, Bookrunner or other party serving a similar purpose under the Senior Loan Agreement.

1.1.212 <u>Senior Loan Claim</u> means a Claim arising under the Senior Loan Agreement, other than a Senior Lender Fee/Expense Claim, and any Claim of the Senior Lenders or the Senior Loan Agent arising under the Pledge Agreement.

1.1.213 <u>Senior Loan Claims Distribution</u> means 1.50% of the Remaining Distributable Cash, 1.50% of the New Senior Secured Term Loan and 1.50% of the New Common Stock (subject to dilution by the Equity Incentive Plan).

1.1.214 <u>Senior Loan Claims Net Creditors' Trust Proceeds</u> means after the Parent GUC Trust Preference and the Trusts' Loan Preference has been paid in full, thirty five percent (35%) of the Net Creditors' Trust Proceeds and, after the Holders of Allowed Claims, who have not opted out of making the assignment provided in <u>Section 14.3.1</u> of this Plan, in Classes 1E, 1I and 1J and Allowed Class 1F Claims the Holders of which elect the treatment set forth in <u>Section 3.2.6(c)(ii)</u> and have not opted out of making the assignment provided in <u>Section 14.3.1</u> of this Plan have received payment in full of the Allowed amount of such Holders' Claims, one hundred percent (100%) of the Net Creditors' Trust Proceeds, in each case which will be distributed to Holders of Allowed Claims in Class 1C and Class 1D.

1.1.215 <u>Senior Loan Claims Net Litigation Trust Proceeds</u> means, after the Parent GUC Trust Preference and the Trusts' Loan Preference have been paid in full, thirty five percent (35%) of the Net Litigation Trust Proceeds and, after the Holders of Allowed Claims in Classes 1E, 1I and 1J and Allowed Class 1F Claims the Holders of which elect the treatment set forth in <u>Section 3.2.6(c)(ii)</u> have received payment in full of the Allowed amount of such Holders' Claims, one hundred percent (100%) of the Net Creditors' Trust Proceeds, in each case which will be distributed to Holders of Allowed Claims in Class 1C and Class 1D.

1.1.216 <u>Senior Noteholder Claims</u> means all Claims arising under or evidenced by the Senior Notes Indentures and related documents and any Claim of the Senior Noteholders arising under the Pledge Agreement.

1.1.217 <u>Senior Noteholder(s)</u> means, individually or collectively, the Holder(s) of a Senior Noteholder Claim(s).

1.1.218 <u>Senior Notes</u> means the eight series of notes issued and outstanding under the Senior Notes Indentures.

1.1.219 <u>Senior Notes Indenture(s)</u> means, individually or collectively: (a) that certain Indenture, dated as of January 1, 1997, between Tribune and Deutsche Bank Trust Company Americas, as successor indenture trustee, as amended, restated or otherwise modified from time to time; (b) that certain Indenture, dated as of March 19, 1996, between Tribune and Law Debenture Trust Company of New York, as successor indenture trustee, as amended, restated or otherwise modified from time to time; (c) that certain Indenture, dated as of January 30, 1995, between Tribune and Deutsche Bank Trust Company Americas, as successor indenture trustee, as amended, restated or otherwise modified from time to time; and (d) that certain Indenture, dated as of March 1, 1992, between Tribune and Deutsche Bank Trust Company Americas, as successor indenture trustee, as amended, restated or otherwise modified from time to time.

1.1.220 <u>Senior Notes Indenture Trustee(s)</u> means, individually or collectively, the indenture trustees under the Senior Notes Indentures as of the Effective Date

1.1.221 <u>Settlement</u> has the meaning set forth in <u>Section 5.15.2</u> hereto.

1.1.222 <u>Settling Step Two Payees</u> means any current or former Senior Lender, Bridge Lender, or Step Two Arranger that (i) received any payment (a) under the Senior Loan Agreement on account of the Incremental Senior Loans or (b) under the Bridge Loan Agreement prior to the Petition Date and (ii) participates in the Step Two/Disgorgement Settlement and pays to the Disbursing Agent the portion of the Step Two/Disgorgement Settlement allocable to such party pursuant to <u>Section 5.15.1</u> of this Plan.

1.1.223 <u>Step One Selling Stockholders</u> means those beneficial owners of issued and outstanding common stock of Tribune whose shares of common stock were purchased by Tribune on or about June 4, 2007, solely in their capacity as a recipient of payments with respect to such purchase.

1.1.224 <u>Step Two Arrangers</u> means the Senior Loan Agent, the Former Bridge Loan Agent, the Senior Loan Arrangers, the Bridge Loan Arrangers, each in their capacity as agents and arrangers of the Incremental Senior Loans and the Bridge Loans.

1.1.225 <u>Step Two Arranger Litigation Trust Preference</u> means ninety percent (90%) of the proceeds received by the Litigation Trust from the pursuit of Litigation Trust Assets against the Non-Settling Step Two Payees to be distributed to the Step Two Arrangers until such Step Two Arrangers have been reimbursed in full for the portion of the Step Two/Disgorgement Settlement allocable to Senior Lenders and Bridge Lenders that did not elect to participate in the Step Two/Disgorgement Settlement that was advanced by the Step Two Arrangers.

1.1.226 <u>Step Two/Disgorgement Settlement</u> has the meaning set forth in <u>Section 5.15.1</u> of this Plan.

1.1.227 <u>Step Two Selling Stockholders</u> means those beneficial owners of issued and outstanding common stock of Tribune whose shares of common stock were redeemed for Cash pursuant to the Step Two Transactions solely in their capacity as a recipient of payments with respect to such redemption; <u>provided</u>, <u>however</u>, that Step Two Selling Stockholders shall not include the Released Step Two Stockholder Parties.

1.1.228 <u>Step Two Transactions</u> means (a) the merger that was consummated on or about December 20, 2007 of Tribune with and into Tesop Corporation pursuant to that certain Agreement and Plan of Merger, dated as of April 1, 2007, by and among Tribune, GreatBanc Trust Company, Tesop Corporation, and EGI-TRB, L.L.C. with Tribune surviving the merger and becoming a wholly-owned subsidiary of the ESOP, including the distributions that were made to Step Two Selling Stockholders pursuant to the merger, (b) the execution, delivery and performance of the Bridge Loan Agreement, and (c) the making of additional advances of $2.105 billion under the tranche B facility of the Senior Loan Agreement or as a new tranche of term loans under the Senior Loan Agreement.

1.1.229 <u>Subsidiary Debtors</u> means, individually or collectively, the Filed Subsidiary Debtors, and such Subsidiary Non-Debtors, if any, that become Debtors prior to the Confirmation Date.

1.1.230 <u>Subsidiary GUC Reserve</u> means one or more reserves, if any, of Cash that may be established for the benefit of Allowed General Unsecured Claims against the Filed Subsidiary Debtors pursuant to <u>Section 7.2.2</u> of this Plan.

1.1.231 <u>Subsidiary Non-Debtors</u> means those entities listed on <u>Appendix B</u> hereto.

1.1.232 <u>Swap Claim</u> means any Claims asserted under that certain 1992 ISDA Master Agreement, dated as of July 2, 2007, between Barclays Bank PLC and Tribune.

1.1.233 <u>Transferred State Law Avoidance Claims</u> has the meaning set forth in <u>Section 14.3.1</u> of this Plan.

1.1.234 <u>Tribune</u> means Tribune Company, a Debtor in the Chapter 11 Cases.

1.1.235 <u>Tribune Entities</u> means, collectively, the Debtors and the Subsidiary Non-Debtors.

1.1.236 <u>Tribune Interest</u> means any shares of Old Common Stock, preferred stock or other instrument evidencing an ownership interest in Tribune, whether or not transferable, and any options, warrants (including, without limitation, the EGI-TRB LLC Warrants), calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised stock options, unvested common stock, unvested preferred stock or any other agreements of any character related to the Old Common Stock, but does not include the Securities Litigation Claims.

1.1.237 <u>Trusts' Loan</u> means a new delayed draw term loan in an aggregate principal amount of $20 million to be made by Reorganized Tribune to the Litigation Trust and

the Creditors' Trust, and for which the Litigation Trust and the Creditors' Trust shall be jointly and severally liable pursuant to the terms of the Trusts' Loan Agreement.

    1.1.238 <u>Trusts' Loan Agreement</u> means the loan agreement for the Trusts' Loan between Reorganized Tribune, as lender, and the Litigation Trust and the Creditors' Trust, as borrowers, as provided in and subject to <u>Section 5.13</u> of this Plan, which shall contain terms and conditions to be agreed upon by Tribune, the Creditors' Committee and the Creditor Proponents including, (a) the Trusts shall be prohibited from reborrowing the principal amount thereof, (b) after the Parent GUC Trust Preference has been paid in full, the Trusts shall not make any distributions on account of Litigation Trust Interests or Creditors' Trust Interests until the Trusts' Loan has been repaid in full in accordance with the terms of the Trusts' Loan Agreement and the commitments thereunder shall have terminated and (c) mandatory payment provisions with respect to net proceeds received by the Litigation Trust and the Creditors' Trust after the Parent GUC Creditors' Trust Preference and the Parent GUC Litigation Trust Preference have been paid in full.

    1.1.239 <u>Trusts' Loan Preference</u> means one hundred percent (100%) of the Net Creditors' Trust Proceeds and one hundred percent (100%) of the Net Litigation Trust Proceeds to be applied to repay the Trusts' Loan in accordance with the terms of the Trusts' Loan Agreement after the Parent GUC Trust Preference has been paid in full until the Trusts' Loan has been satisfied in full in accordance with the terms of the Trusts' Loan Agreement.

    1.1.240 <u>Unimpaired</u> means with respect to a Claim or Interest that such Claim or Interest is not Impaired including, without limitation, as a result of being Reinstated under this Plan.

    1.1.241 <u>Voting Deadline</u> means the deadline established by the Bankruptcy Court for returning Ballots.

    1.2    <u>Rules of Interpretation</u>.

    For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document attached as an Exhibit to this Plan being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or Exhibit filed or to be filed means such document, schedule or Exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (e) all references in this Plan to Sections, Articles and Appendices are references to Sections, Articles and Appendices of or to this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to

Section 15.13 and the provisions of any contract, certificates or articles of incorporation, by-laws, certificates of formation, limited liability company agreements, partnership agreements, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (j) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

### 1.3    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

### 1.4    Exhibits and Plan Supplement.

All Exhibits, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely filed in accordance with this Plan.  Holders of Claims and Interests may obtain a copy of the filed Exhibits and Plan Supplement upon written request to the Proponents.  Upon their filing, the Exhibits and Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

### 1.5    Deemed Acts.

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

## ARTICLE II: TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

### 2.1    DIP Facility Claims.

On or as soon as reasonably practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, the Reorganized Debtors shall pay Allowed DIP Facility Claims in full in Cash.  In

addition, on the Effective Date, any unexpired letters of credit outstanding under the DIP Facility shall be, at Reorganized Tribune's option, (i) returned to the issuer undrawn and marked canceled, (ii) collateralized with Cash in an amount equal to 105% of the face amount of such outstanding letter of credit in form and substance acceptable to the issuer thereof, (iii) collateralized with back-to-back letters of credit issued under the Exit Facility in an amount equal to 105% of the face amount of such outstanding letter of credit, in form and substance acceptable to the issuer thereof, or (iv) otherwise deemed to be subject to reimbursement pursuant to the terms and conditions of the Exit Facility.

2.2     Administrative Expense Claims.

Subject to the provisions of sections 328, 330, 331 and 503(b) of the Bankruptcy Code, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Administrative Expense Claim, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to different treatment, or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Expense Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Expense Claim becomes an Allowed Claim, (iii) with respect to Allowed Administrative Expense Claims not yet due on the Effective Date or that represent obligations incurred by the Debtors in the ordinary course of their business during these Chapter 11 Cases, or assumed by the Debtors during these Chapter 11 Cases, such time as such Allowed Administrative Expense Claims are due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, or (iv) such other date as may be agreed upon between the Holder of such Allowed Administrative Expense Claim and the Reorganized Debtors.

2.3     Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive either, at the sole option of the Reorganized Debtors, (a) payment in full in Cash after such Priority Tax Claim becomes an Allowed Claim, (b) except as otherwise determined by the Bankruptcy Court at the Confirmation Hearing, regular installment payments in Cash equal to the Allowed amount of such Claim over a period ending not later than the fifth anniversary of the Petition Date, together with interest compounded annually from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, which installment payments shall commence after such Priority Tax Claim becomes an Allowed Claim, or (c) such other treatment as agreed to by the Holder of an Allowed Priority Tax Claim and the Reorganized Debtors.

## ARTICLE III: CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

3.1     Summary of Classification and Treatment of Classified Claims and Interests.

3.1.1  General.

(a)     Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.  In no event shall any Holder of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such Holder's Claim.

(b)     This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  For purposes of brevity and convenience, the classification and treatment of Claims and Interests has been set forth in three groups: (i) Tribune (Debtor 1), (ii) Filed Subsidiary Debtors (Debtors 2 through 111) and (iii) any Guarantor Non-Debtors that become Debtors and participate in the Prepackaged Plan.

3.1.2  Identification of Classes Against Tribune (Debtor 1).  The following chart assigns a letter to each Class against Tribune for purposes of identifying each separate Class:

| CLASS | CLAIM OR INTEREST |
|-------|-------------------|
| A | Priority Non-Tax Claims |
| B | Other Secured Claims |
| C | Senior Loan Claims |
| D | Bridge Loan Claims |
| E | Senior Noteholder Claims |
| F | Other Parent Claims |
| G | Convenience Claims |
| I | EGI-TRB LLC Notes Claims |
| J | PHONES Notes Claims |
| K | Intercompany Claims |

| | |
|---|---|
| L | Securities Litigation Claims |
| M | Tribune Interests |

3.1.3 <u>Identification of Classes Against Filed Subsidiary Debtors (Debtors 2 through 111)</u>. The following chart assigns a letter to each Class against the Filed Subsidiary Debtors for purposes of identifying each separate Class:

| <u>CLASS</u> | <u>CLAIM OR INTEREST</u> |
|---|---|
| A | Priority Non-Tax Claims |
| B | Other Secured Claims |
| C | Senior Guaranty Claims |
| D | Bridge Loan Guaranty Claims |
| E | General Unsecured Claims |
| K | Intercompany Claims |
| L | Securities Litigation Claims |
| M | Interests in Filed Subsidiary Debtors |

3.2    <u>Classification and Treatment of Claims Against and Interests in Tribune Company (Debtor 1)</u>.

3.2.1 <u>Class 1A – Priority Non-Tax Claims</u>.

(a)    Classification:  Class 1A consists of all Priority Non-Tax Claims against Tribune.

(b)    Treatment:  Each Holder of an Allowed Priority Non-Tax Claim against Tribune shall have its Claim Reinstated.

(c)    Voting:  Allowed Claims in Class 1A are Unimpaired, and the Holders of Class 1A Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1A Claims are not entitled to vote to accept or reject the Plan; <u>provided</u>, <u>however</u>, that all Class 1A Claims shall be subject to allowance or disallowance in whole or in part under the applicable provisions of the Plan, including, but not limited to, <u>Article VIII</u>.

### 3.2.2  Class 1B – Other Secured Claims.

(a)     Classification:  Class 1B consists of all Other Secured Claims against Tribune.

(b)     Treatment:  Each Holder of an Allowed Other Secured Claim against Tribune shall have its Claim Reinstated.

(c)     Voting:  Allowed Claims in Class 1B are Unimpaired, and the Holders of Class 1B Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1B Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1B Claims shall be subject to allowance or disallowance in whole or in part under the applicable provisions of the Plan, including, but not limited to, Article VIII.

### 3.2.3  Class 1C – Senior Loan Claims.

(a)     Classification:  Class 1C consists of all Senior Loan Claims against Tribune.

(b)     Allowance:  The Senior Loan Claims shall be deemed Allowed in an aggregate amount equal to all amounts payable under the Senior Loan Agreement or the Pledge Agreement, other than the Senior Lender Fee/Expense Claims, including the full amount of principal, interest, and all other amounts due and owing under the Senior Loan Agreement and the Pledge Agreement as of the Petition Date, and neither such Claims nor the distributions thereon shall be subject to reduction, disallowance, subordination, set off or counterclaim.

(c)     Treatment: On or as soon as practicable after the applicable Distribution Date, together with other distributions provided for in this Plan, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Senior Loan Claims against Tribune, subject to Section 5.4.2 herein, each Holder of an Allowed Senior Loan Claim against Tribune shall receive (i) a Pro Rata share of the Senior Loan Claims Distribution, (ii) a Pro Rata share of 71.64% of the Remaining Bridge Loan Reserve, (iii) if such Holder has not opted out of making the assignment provided in Section 14.3.1 of this Plan, a Pro Rata share, calculated based upon the aggregate amount of Allowed Senior Loan Claims the Holders of which do not opt out of making the assignment provided in Section 14.3.1 of this Plan, of the Class 1C Creditors' Trust Interests, and (iv) a Pro Rata share of the Class 1C Litigation Trust Interests.  In addition, on the Effective Date, any unexpired letters of credit outstanding under the Senior Loan Agreement shall be either, at Tribune's option, (i) returned to the issuer undrawn and marked canceled, (ii) collateralized with Cash in an amount equal to 105% of the face amount of such outstanding letter of credit in form and substance acceptable to the issuer thereof, or (iii) collateralized with back-to-back letters of credit issued under the Exit Facility in an amount equal to 105% of the face amount of such outstanding letter of credit, in form and substance acceptable to the issuer thereof.

(d)     Voting:  Claims in Class 1C are Impaired, and Holders of Class 1C Claims are entitled to vote to accept or reject the Plan.

35

### 3.2.4 Class 1D – Bridge Loan Claims.

(a)    Classification:  Class 1D consists of all Bridge Loan Claims against Tribune.

(b)    Allowance:  Bridge Loan Claims against Tribune shall be subject to challenge by the Litigation Trust pursuant to Article XIII hereof.

(c)    Treatment: On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Bridge Loan Claims against Tribune, each Holder of an Allowed Bridge Loan Claim against Tribune shall receive (i) a Pro Rata share of the Bridge Loan Distribution Amount, (ii) if such Holder has not opted out of making the assignment provided in Section 14.3.1 of this Plan, a Pro Rata share, calculated based upon the aggregate amount of Allowed Bridge Loan Claims the Holders of which do not opt out of making the assignment provided in Section 14.3.1 of this Plan, of the Class 1D Creditors' Trust Interests, and (iii) a Pro Rata share of the Class 1D Litigation Trust Interests.  To the extent that any Bridge Loan Claims are Allowed, Bridge Loan Claims held by the Settling Step Two Payees or their Affiliates will receive no worse treatment than other Bridge Loan Claims unless otherwise agreed by such Settling Step Two Payees.

(d)    Voting:  Claims in Class 1D are Impaired, and Holders of Class 1D Claims are entitled to vote to accept or reject the Plan.

### 3.2.5 Class 1E – Senior Noteholder Claims.

(a)    Classification:  Class 1E consists of all Senior Noteholder Claims against Tribune.

(b)    Allowance:  The Senior Noteholder Claims shall together be deemed Allowed in the aggregate amount of $1,283,055,743.77 less any Senior Noteholder Claims held by MSCS.  The Senior Noteholder Claims owned by MSCS shall be subject to challenge by the Litigation Trust pursuant to Article XIII herein.  The Senior Noteholder Claims shall not be subject to reduction, disallowance, subordination, set off or counterclaim (other than the Senior Noteholder Claims of MSCS with respect to the Morgan Stanley Claims).

(c)    Treatment:  On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Senior Noteholder Claims against Tribune, each Holder of an Allowed Senior Noteholder Claim shall receive (i) a Pro Rata share of $300,000,000 in Cash (paid out of the Distributable Cash Pool), (ii) a Pro Rata share of the Step Two/Disgorgement Settlement in the aggregate amount of $120,000,000 in Cash, (iii) a Pro Rata share of 23.51% of the Remaining Bridge Loan Reserve, (iv) a Pro Rata share of the Class 1E Litigation Trust Interests, and (v) if such Holder has not opted out of making the assignment provided in Section 14.3.1 of this Plan, a Pro Rata share, calculated based upon the aggregate amount of Allowed Senior Noteholder Claims the Holders of which do not opt out of making the assignment provided in Section 14.3.1 of this Plan, of the Class 1E Creditors' Trust Interests.  For the avoidance of doubt, if the Senior Noteholder Claims held by MSCS are disallowed, the consideration that would otherwise be distributed to MSCS on account of its Senior Noteholder

Claims shall instead be distributed to the other Holders of Allowed Senior Noteholder Claims as set forth in this Section 3.2.5(c).

        (d)     Voting:  Claims in Class 1E are Impaired, and Holders of Class 1E Claims are entitled to vote to accept or reject the Plan.

    3.2.6   <u>Class 1F – Other Parent Claims</u>.

        (a)     Classification:  Class 1F consists of all Other Parent Claims against Tribune.

        (b)     Allowance:  The Swap Claim shall be Allowed against Tribune in the amount of $150,948,822.  The Claims of the Retiree Claimants shall be Allowed in accordance with the Retiree Claims Settlement.  Additional Other Parent Claims shall be subject to allowance, disallowance, or offset under the applicable provisions of this Plan, including, but not limited to, <u>Article VIII</u> and <u>Section 7.11</u>.

        (c)     Treatment: On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Other Parent Claims against Tribune, each Holder of an Allowed Other Parent Claim shall receive:

        (i)     Option 1:  (y) an amount of Cash (paid out of the Distributable Cash Pool) equal to 35.18% of the aggregate amount in U.S. dollars of such Holder's Allowed Other Parent Claim, and (z) a Pro Rata share of 4.85% of the Remaining Bridge Loan Reserve, or

        (ii)     Option 2:  (w) an amount of Cash (paid out of the Distributable Cash Pool) equal to 32.73% of the aggregate amount in U.S. dollars of such Holder's Allowed Other Parent Claim, (x) such Holder's Pro Rata share of 4.85% of the Remaining Bridge Loan Reserve, (y) if such Holder has not opted out of making the assignment provided in <u>Section 14.3.1</u> of this Plan, a Pro Rata share, calculated based upon the aggregate amount of Allowed Other Parent Claims the Holders of which do not opt out of making the assignment provided in <u>Section 14.3.1</u> of this Plan and that elect the treatment set forth in this Section 3.2.6(c)(ii), of the Class 1F Creditors' Trust Interests, and (z) a Pro Rata share, calculated based upon the aggregate amount of Allowed Other Parent Claims the Holders of which elect the treatment set forth in this Section 3.2.6(c)(ii), of the Class 1F Litigation Trust Interests.

Each Holder of an Allowed Other Parent Claim may, on such Holder's Ballot, elect the treatment specified in <u>Section 3.2.6(c)(i)</u> or <u>Section 3.2.6(c)(ii)</u>.  Each Holder of an Allowed Other Parent Claim that has not submitted a Ballot or has submitted a Ballot but failed to elect a treatment set forth in this <u>Section 3.2.6(c)</u> shall be deemed to have elected the treatment specified in <u>Section 3.2.6(c)(ii)</u> with respect to its Allowed Other Parent Claim.  Each Holder of an Allowed Other Parent Claim that has voted in favor of the Plan shall be deemed to have elected the treatment specified in <u>Section 3.2.6(c)(ii)</u> with respect to its Allowed Other Parent Claim unless, on such

Holder's Ballot, such Holder elects instead to receive the treatment specified in Section 3.2.6(c)(i).

(d)    Voting:  Claims in Class 1F are Impaired, and Holders of Class 1F Claims are entitled to vote to accept or reject the Plan.

### 3.2.7    Class 1G – Convenience Claims.

(a)    Classification:  Class 1G consists of all Convenience Claims against Tribune.

(b)    Treatment:  In full satisfaction, settlement, release and discharge of and in exchange for Allowed Convenience Claims against Tribune, on or as soon as practicable after the applicable Distribution Date, each Holder of an Allowed Convenience Claim against Tribune shall receive payment in full in Cash on account of such Claim; provided, however, that, subject to Section 7.4 of this Plan, post-petition interest shall not be paid to any Holder on any Convenience Claim without regard to whether such amount has accrued for federal income tax purposes.

(c)    Voting:  Allowed Claims in Class 1G are Unimpaired, and the Holders of Class 1G Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1G Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1G Claims shall be subject to allowance or disallowance in whole or in part under the applicable provisions of the Plan, including, but not limited to, Article VIII.

### 3.2.8    Class 1I – EGI-TRB LLC Notes Claims.

(a)    Classification:  Class 1I consists of all EGI-TRB LLC Notes Claims against Tribune.

(b)    Allowance:  EGI-TRB LLC Notes Claims against Tribune shall be subject to challenge by the Litigation Trust pursuant to Section 5.17 of this Plan.

(c)    Treatment:  On or as soon as practicable after the applicable Distribution Date, together with other distributions provided for in this Plan, in full satisfaction, settlement, release and discharge of and in exchange for Allowed EGI-TRB LLC Notes Claims against Tribune, each Holder of an Allowed EGI-TRB LLC Notes Claim against Tribune shall receive (i) a Pro Rata share of the Class 1I Litigation Trust Interests and (ii) if such Holder has not opted out of making the assignment provided in Section 14.3.1 of this Plan, a Pro Rata share, calculated based upon the aggregate amount of Allowed EGI-TRB LLC Notes Claims the Holders of which do not opt out of making the assignment provided in Section 14.3.1 of this Plan, of the Class 1I Creditors' Trust Interests.

(d)    Voting:  Claims in Class 1I are Impaired, and Holders of Class 1I Claims are entitled to vote to accept or reject the Plan.

### 3.2.9    Class 1J – PHONES Notes Claims.

(a)    Classification:  Class 1J consists of all PHONES Notes Claims against Tribune.

(b)    Treatment:  On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed PHONES Notes Claims against Tribune,  each Holder of an Allowed PHONES Notes Claim shall receive (i) a Pro Rata share of the Class 1J Litigation Trust Interests and (ii) if such Holder has not opted out of making the assignment provided in Section 14.3.1 of this Plan, a Pro Rata share, calculated based upon the aggregate amount of Allowed PHONES Notes Claims the Holders of which do not opt out of making the assignment provided in Section 14.3.1 of this Plan, of the Class 1J Creditors' Trust Interests.

(c)    Voting:  Claims in Class 1J are Impaired, and Holders of Class 1J Claims are entitled to vote to accept or reject the Plan.

### 3.2.10  Class 1K – Intercompany Claims.

(a)    Classification:  Class 1K consists of all Intercompany Claims against Tribune.

(b)    Treatment:  In full satisfaction, settlement, release and discharge of and in exchange for Intercompany Claims against Tribune, except as otherwise provided herein, Holders of Intercompany Claims against shall receive the treatment afforded to them in the Intercompany Claims Settlement.

(c)    Voting:  Claims in Class 1K are Impaired; however, as set forth in Section 4.3, votes shall not be solicited from Holders of Claims in Class 1K.

### 3.2.11  Class 1L – Securities Litigation Claims.

(a)    Classification:  Class 1L consists of all Securities Litigation Claims against Tribune.

(b)    Treatment:  On the Effective Date, all Securities Litigation Claims against Tribune shall be extinguished and Holders of such Claims shall not receive or retain any property under the Plan on account of such Securities Litigation Claims.

(c)    Voting:  Claims in Class 1L are Impaired.  Holders of Claims in Class 1L are conclusively deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

### 3.2.12  Class 1M – Tribune Interests.

(a)    Classification:  Class 1M consists of all Tribune Interests in Tribune.

(b)    Treatment:  On the Effective Date, all Tribune Interests in Tribune shall be extinguished and Holders of such Interests shall not receive or retain any property under the Plan on account of such Tribune Interests.

(c)    Voting:  Interests in Class 1M are Impaired.  Holders of Interests in Class 1M are conclusively deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

3.3    Classification and Treatment of Claims Against and Interests in Filed Subsidiary Debtors (Debtors 2 through 111).

3.3.1  Classes 2A through 111A – Priority Non-Tax Claims.

(a)    Classification:  Classes 2A through 111A consist of all Priority Non-Tax Claims against the relevant Filed Subsidiary Debtors.  The numerical portion of the Class designation corresponds to the applicable Debtor number on Appendix A hereto.

(b)    Treatment:  Each Holder of an Allowed Priority Non-Tax Claim against a Filed Subsidiary Debtor shall have such Claim Reinstated.

(c)    Voting:  Allowed Claims in Classes 2A through 111A are Unimpaired, and the Holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 2A through 111A are not entitled to vote to accept or reject this Plan; provided, however, that all Claims in Classes 2A through 111A shall be subject to allowance or disallowance in whole or in part under the applicable provisions of this Plan, including, but not limited to, Article VIII.

3.3.2  Classes 2B through 111B – Other Secured Claims.

(a)    Classification:  Classes 2B through 111B consist of all Other Secured Claims against the relevant Filed Subsidiary Debtors.  The numerical portion of the Class designation corresponds to the applicable Debtor number on Appendix A hereto.

(b)    Treatment:  Each Holder of an Allowed Other Secured Claim against a Filed Subsidiary Debtor shall have such Claim Reinstated.

(c)    Voting:  Allowed Claims in Classes 2B through 111B are Unimpaired, and the Holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 2B through 111B are not entitled to vote to accept or reject this Plan; provided, however, that all Claims in Classes 2B through 111B shall be subject to allowance or disallowance in whole or in part under the applicable provisions of this Plan, including, but not limited to, Article VIII.

### 3.3.3  Classes 50C through 111C – Senior Guaranty Claims.

(a)  Classification:  Classes 50C through 111C consist of all Senior Guaranty Claims against the relevant Guarantor Debtors.  The numerical portion of the Class designation corresponds to the applicable Debtor number on Appendix A hereto.

(b)  Allowance:  The Senior Guaranty Claims shall be deemed Allowed in an aggregate amount equal to all amounts payable under the Senior Guaranty Agreement, including the full amount of principal, interest, and all other amounts due and owing under the Senior Guaranty Agreement as of the Petition Date, plus, to the extent allowable under the Bankruptcy Code, all postpetition interest and other amounts due and owing under the Senior Guaranty Agreement from and after the Petition Date, and neither such Claims nor the distributions thereon shall be subject to reduction, disallowance, subordination, set off or counterclaim.

(c)  Treatment:  On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Senior Guaranty Claims against the Guarantor Debtors, subject to Section 5.4.2, each Holder of an Allowed Senior Guaranty Claim against a Guarantor Debtor shall receive a Pro Rata share of:

> (i)  98.50% of the New Senior Secured Term Loan;
>
> (ii)  98.50% of the Remaining Distributable Cash; and
>
> (iii)  98.50% of the New Common Stock.

The distributions payable to the Holder(s) of the Swap Claim shall be paid directly to such Holder by the Disbursing Agent and all other distributions payable to the Holders of the Senior Guaranty Claims shall be paid to the Senior Loan Agent for distribution in accordance with Section 7.3 of this Plan, and prior to distributing such amounts the Senior Loan Agent is only authorized to retain $32,500,000 from the Distributable Cash included in such distribution (such amount the "Senior Lender Holdback"), to be used by the Senior Loan Agent, or, to the extent unused, distributed, solely in accordance with Section 7.3 of this Plan.

(d)  Voting:  Claims in Classes 50C through 111C are Impaired, and Holders of Claims in Classes 50C through 111C are entitled to vote to accept or reject the Plan against the relevant Debtors.

### 3.3.4  Classes 50D through 111D – Bridge Loan Guaranty Claims.

(a)  Classification:  Classes 50D through 111D consist of all Bridge Loan Guaranty Claims against the relevant Guarantor Debtors.  The numerical portion of the Class designation corresponds to the applicable Debtor number on Appendix A hereto.

(b)  Allowance:  Bridge Loan Guaranty Claims may be challenged by an Estate representative on or prior to the Effective Date and subsequently shall be subject to challenge by the Litigation Trust pursuant to Article XIII hereof.  To the extent that any Bridge

Loan Guaranty Claims are Allowed, Bridge Loan Guaranty Claims held by the Settling Step Two Payees or their Affiliates will receive no worse treatment than other Bridge Loan Guaranty Claims unless otherwise agreed by such Settling Step Two Payees.

(c)        Treatment:  In accordance with Section 7.3, in order to comply with the contractual subordination provisions in the Loan Guaranty Agreements, all distributions of (i) the New Senior Secured Term Loan, (ii) the Remaining Distributable Cash and (iii) the New Common Stock that would otherwise be made on account of Allowed Bridge Loan Guaranty Claims shall instead be distributed to the Senior Loan Agent for distribution on account of Allowed Senior Guaranty Claims.  Accordingly, on the Effective Date, all Bridge Loan Guaranty Claims against the Guarantor Debtors shall be extinguished and Holders of such Claims shall not receive or retain any property under the Plan on account of such Bridge Loan Guaranty Claims.

(d)        Voting:  Claims in Class 50D through 111D are Impaired, and Holders of Claims in Classes 50D through 111D are conclusively deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

### 3.3.5    Classes 2E through 111E – General Unsecured Claims.

(a)        Classification:  Classes 2E through 111E consist of all General Unsecured Claims against the relevant Filed Subsidiary Debtors.  The numerical portion of the Class designation corresponds to the applicable Debtor number on Appendix A hereto.

(b)        Treatment:  On or as soon as reasonably practicable after the applicable Distribution Date, each Holder of an Allowed General Unsecured Claim against a Filed Subsidiary Debtor shall receive an amount of Cash (paid out of the Distributable Cash Pool) equal to the lesser of (i) 100% of such Holders' Allowed General Unsecured Claim Against a Filed Subsidiary Debtor or (ii) a Pro Rata share of (x) $150,000,000 *plus* (y) an amount equal to the aggregate amount of Allowed General Unsecured Claims against a Filed Subsidiary arising under section 502(h) of the Bankruptcy Code as a result of the payment to the Estates on account of an Ordinary Litigation Claim; provided, however, that post-petition interest shall not accrue or be paid on any General Unsecured Claim.

(c)        Voting:  Claims in Classes 2E through 111E are Impaired, and Holders of Claims in Classes 2E through 111E are entitled to vote to accept or reject the Plan against the relevant Debtors.

### 3.3.6    Classes 2K through 111K – Intercompany Claims.

(a)        Classification:  Classes 2K through 111K consist of all Intercompany Claims against the relevant Filed Subsidiary Debtors.  The numerical portion of the Class designation corresponds to the applicable Debtor number on Appendix A hereto.

(b)        Treatment:  In full satisfaction, settlement, release and discharge of and in exchange for Intercompany Claims against Filed Subsidiary Debtors, except as otherwise provided herein, Holders of Intercompany Claims shall receive the treatment afforded to them in the Intercompany Claims Settlement.