# ATTACHMENT B

**Black Line that compares the December 5, 2010 Responsive Statement
to the December 1, 2010 Responsive Statement [Docket No. 6690] - Changed Pages Only**

**Debtor/Committee/Lender Plan.** Three diverse groups of constituents are proponents of the Debtor/Committee/Lender Plan, *and the Debtor/Committee/Lender Plan is the only proposed plan of reorganization that has the support of parties with fiduciary duties to all creditors in these Chapter 11 Cases.* The Debtors, which include Tribune and 110 of Tribune's subsidiaries, are fiduciaries for all stakeholders in these Chapter 11 Cases. The Debtors are proponents of the Debtor/Committee/Lender Plan because the Debtors believe the Debtor/Committee/Lender Plan is in the best interests of their stakeholders. The Official Committee of Unsecured Creditors, which is an official statutory committee appointed by the Office of the United States Trustee, is also a proponent of the Debtor/Committee/Lender Plan. Like the Debtors, the Creditors' Committee is a fiduciary for all general unsecured creditors of the Debtors and has approved the Debtor/Committee/Lender Plan because the Creditors' Committee believes it is in the best interests of the stakeholders they represent. The final group of constituents that proposed the Debtor/Committee/Lender Plan is comprised of three of the largest Holders of Senior Loan Claims—JPMorgan, which is also the Senior Loan Agent, Oaktree and Angelo Gordon. These three Holders will initially be the largest individual holders of Tribune's New Common Stock under any of the proposed plans of reorganization.

**Noteholder Plan.** The principal proponent of the Noteholder Plan is Aurelius, which is a hedge fund purportedly holding Senior Notes Claims and PHONES Notes Claims. The other proponents of the Noteholder Plan are Indenture Trustees for the Senior Notes and PHONES Notes. It is the Debtors' understanding that Aurelius recently purchased the majority of its Senior Notes Claims from another hedge fund that was a proponent of the original settlement plan filed by the Debtors. None of the proponents of the Noteholder Plan are creditors of any of the 110 operating subsidiary Debtors. ~~Moreover, due to the size of the Senior Noteholder Claims in relation to the total debt outstanding against the Debtors and the distributable value available to such debtholders, under virtually every plausible scenario contemplated by the proposed plans of reorganization (including the Noteholder Plan), the Holders of Senior Noteholder Claims and therefore the proponents of the Noteholder Plan will only be eligible to receive, at most, a comparatively small portion of the New Common Stock in Reorganized Tribune. As a result, their economic interests in the Reorganized Debtors are disproportionate to the degree of influence the Noteholder Plan proponents seek to exert over the Reorganized Debtors.~~

**Bridge Lender Plan.** The Bridge Lender Plan has been proposed by three hedge funds that are Holders of Bridge Loan Claims who purchased such Claims from the original Bridge Lenders.

**Step One Lender Plan.** The Step One Lender Plan has been proposed by a group of hedge funds that solely hold Step One Senior Loan Claims. Based upon the Debtors' information and belief, this group of hedge funds did not become actively involved in the Debtors' Chapter 11 Cases until the late summer of 2010. According to the proponents' disclosures before the Bankruptcy Court, the proponents of the Step One Lender Plan hold less than 9.5% of the aggregate Senior Loan Claims.

C. *What distinguishes the Debtor/Committee/Lender Plan from the other plans of reorganization?*

3

| Class | Debtor/Committee/ Lender Plan (Blue Ballot) | Noteholder Plan (Purple Ballot)[3] | Bridge Lender Plan (Green Ballot)[3,4] | Step One Lender Plan (Yellow Ballot) |
|---|---|---|---|---|
| Step One Senior Loan/Guaranty Claims: | 71.03% | 34.20% | 34.20% | 70.70%[5] |
| Step Two Senior Loan/Guaranty Claims: | 71.03% | 0% | 0% | 0%[6] |
| Bridge Loan/Guaranty Claims: | 0% | 0% | 0% | 0% |
| Senior Noteholder Claims: | 32.73% | 4.8% | 4.8% | 4.8% or 23.38%[7] |
| Other Parent Claims: | | | | |

[3] Recovery percentages assume that (a) disputes concerning the "sharing provisions" in the Senior Loan Agreement are not resolved prior to the Effective Date, but that distributions are made to the Holders of Step One Senior Loan Claims on the Effective Date, and (b) disputes concerning the Allowed amount of the PHONES Notes Claims are not resolved prior to the Effective Date of the Noteholder Plan. If these matters were resolved prior to the Effective Date of the Noteholder Plan, holders of Step One Senior Loan Claims and Step Two Senior Loan Claims may receive higher recoveries as set forth in the Noteholder Plan Disclosure Statement. In addition, if the classes of Other Parent Claims and General Unsecured Claims against the Guarantor Debtors vote to accept the Plan, individual holders in such accepting classes may elect to receive higher distributions on the Effective Date of the Plan. More particularly, under such circumstances, holders of Other Parent Claims may elect to receive a distribution equal to 15% of their allowed claim rather than 4.3% and holders of General Unsecured Claims against the Guarantor Debtors may elect to receive a distribution equal to 25% of their allowed claim rather than 8%.

[4] Although the Bridge Lender Plan provides an option for various settlements that may potentially result in greater distributions to certain creditors of Tribune as of the Effective Date, the Bridge Lender Plan is not conditioned upon the implementation of these settlements and the Debtors believe the ability to consummate these settlements is highly unlikely.

[5] If the disputes concerning the "sharing provisions" in the Senior Loan Agreement are resolved in a manner that is favorable to the Step One Senior Lenders prior to the Effective Date, the initial distribution to the Holders of Step One Senior Loan Claims may potentially be higher than that set forth above.

[6] If the disputes concerning the "sharing provisions" in the Senior Loan Agreement are resolved in a manner that is favorable to the Step Two Senior Lenders prior to the Effective Date, the initial distribution to the Holders of Step Two Senior Loan Claims may potentially be higher than that set forth above.

[7] Under the Step One Lender Plan, Holders of Senior Noteholder Claims are entitled to receive on the Effective Date a cash distribution equal to 4.8% of their allowed claims, unless the Class of Step One Senior Loan Claims, the Classes of Step One Senior Loan Guaranty Claims and the Class of Senior Noteholder Claims all both vote to accept the Step One Lender Plan. If, however, all each of these Classes vote votes to accept the Step One Lender Plan, then under the terms of the Step One Lender Plan, Holders of Senior Noteholder Claims may potentially receive on the Effective Date a cash distribution equal to 23.38% of their allowed claims.

| Class | Debtor/Committee/ Lender Plan (Blue Ballot) | Noteholder Plan (Purple Ballot)[3] | Bridge Lender Plan (Green Ballot)[3,4] | Step One Lender Plan (Yellow Ballot) |
|---|---|---|---|---|
| | 35.18 or 32.73%[8] | 4.3% | 4.3% | 4.8% or 25.83 or 23.38%[9] |
| Convenience Claims against Tribune: | 100% | 4.3% | 4.3% | 100% |
| General Unsecured Claims against *Guarantor Subsidiaries*: | 100%[10] | 8.0% | 8.0% | 100% |
| General Unsecured Claims against *Non-Guarantor Subsidiaries*:[11] | 100% | 100% | 100% | 100% |
| EGI-TRB LLC Notes Claims: | 0% | 0% | 0% | 0% |
| PHONES Notes Claims: | 0% | 0% | 0% | 0% |

E.  *Will the Trusts provide significant recoveries to Holders of Claims against the Debtors?*

---

[8] The Debtors believe that the vast majority, if not all, of the Claims in the Other Parent Claims Class are entitled to the benefit of the contractual subordination of the PHONES Notes Claims and EGI-TRB LLC Notes Claims. Although some Other Parent Claims may not be entitled to the benefit of the contractual subordination of the PHONES Notes Claims and the EGI-TRB LLC Notes Claims, as part of the Settlement the Senior Lenders allocated sufficient settlement consideration necessary to enable all Allowed Other Parent Claims to receive the same distributions under the Debtor/Committee/Lender Plan.

[9] Under the Step One Lender Plan, Holders of Other Parent Claims are entitled to receive on the Effective Date a cash distribution equal to 4.8% of their allowed claims, unless the Class of Step One Senior Loan Claims, the Classes of Step One Senior Loan Guaranty Claims and the Class of Other Parent Claims all both vote to accept the Step One Lender Plan. If, however, all each of these Classes vote votes to accept the Step One Lender Plan, then, under the terms of the Step One Lender Plan, Holders of Other Parent Claims may potentially receive on the Effective Date a cash distribution equal to 25.83% or 23.38% of their allowed claims.

[10] The recovery percentage for Holders of Allowed General Unsecured Claims against Filed Subsidiary Debtors assumes that the aggregate amount of Allowed General Unsecured Claims against Filed Subsidiary Debtors does not exceed $150 million, which is the upper end of the Debtors' current estimate of such claims as set forth in greater detail in the General Disclosure Statement.

[11] General Unsecured Claims against the Non-Guarantor Subsidiary Debtors represent less than 5% of the aggregate General Unsecured Claims against the Subsidiary Debtors.