# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 Cases |
| TRIBUNE COMPANY, *et al.*, | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: December 15, 2010, 10:00 a.m. |
| | Re: D.I. 5591, 6472, 6509 |

**OBJECTION BY THE STEP ONE LENDERS
TO THE LEAD BANKS' JOINT MOTION FOR AN ORDER (I) FINDING
THE STEP ONE CREDIT AGREEMENT LENDERS IN CONTEMPT OF THE
COURT'S MEDIATION ORDER AND THE AUTOMATIC STAY; AND
(II) ENJOINING THE STEP ONE LENDERS FROM FURTHER VIOLATIONS
OF THE MEDIATION ORDER AND THE AUTOMATIC STAY**

The Lead Banks[1] request that this Court enter an order holding certain of the Step One

Lenders (the "SOCAL Plaintiffs") in contempt (the "Contempt Motion")[2] for commencing in

New York State Court an action for, among other things, breach of contract, tortious interference

with contract and declaratory relief (the "New York Action").[3] Specifically, the Lead Banks

allege that the New York Action violates both the Mediation Order[4] and the automatic stay, even

---

[1] "Lead Banks" are JPMorgan Chase Bank, N.A. ("JPMorgan"), Merrill Lynch Capital Corporation, Citicorp North America, Inc., and Bank of America, N.A., in their capacities as lenders under the Credit Agreement dated May 17, 2007 ("Credit Agreement") and, in the case of JPMorgan, also as administrative agent.

[2] The "Debtors" (as defined in the Joinder) filed a Joinder to the Contempt Motion on November 19, 2010 (the "Joinder") [D.I. 6509]; this response addresses both the Contempt Motion and the Joinder.

[3] *Alden Global Distressed Opportunities Fund, et al. v. JPMorgan Chase Bank, et al.*, Index No. 651884/2010 (N.Y. Sup. Ct. filed Oct. 29, 2010). A copy of the Complaint in the New York Action is attached hereto.

[4] "Mediation Order" is this Court's September 1, 2010 Order Appointing Mediator [D.I. 5591].

though the New York Action does not fall within the matters stayed by the Mediation Order and does not assert any claims against the Debtors or property of the estate.

## SUMMARY

1.      The SOCAL Plaintiffs filed the New York Action against the Lead Banks on October 29, 2010 seeking the following relief: (i) damages *from the Lead Banks* resulting from their breach of the Credit Agreement and from JPMorgan's gross negligence in connection with executing certain joinders thereunder; (ii) a declaration that JPMorgan is not entitled to rely on indemnity provisions of the Credit Agreement with respect to any damages owed to the SOCAL Plaintiffs due to its gross negligence and/or willful misconduct; (iii) a declaration that the SOCAL Plaintiffs are not obligated to make payments to the Lead Banks pursuant to Sections 2.13 or 2.15 of the Credit Agreement; and (iv) a declaration that Section 2.13 does not apply to the $2.1 billion issued by the Lead Banks to finance certain private transactions that closed in December 2007 (items (i) and (ii) are referred to as the "Direct Damages Claims"); items (iii) and (iv) are referred to as the "Sharing Provisions Dispute").

2.      The New York Action does not assert any claims against the Debtors whatsoever, it does not seek damages on behalf of anyone other than the named SOCAL Plaintiffs, and it does not seek to obtain or control any property of the Debtors' estates.  As a result, the automatic stay does not apply to the New York Action and, even if it arguably did apply, only the Debtors have standing to assert a stay violation and they have not done so here.  Instead, the Debtors have only requested that the automatic stay be extended in order to "suspend" the New York Action pending the plan confirmation hearing.

3.      On September 1, 2010, this Court entered the Mediation Order, which provides that the "Mediation Parties shall not bring any motion or proceeding during the pendency of the

Mediation seeking relief in connection with the LBO-Related Causes of Action or any related causes of action...."  LBO-Related Causes of Action is defined in the Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (D.I. 5205, "Joint Plan").  The New York Action is neither a motion nor proceeding within the meaning of the Mediation Order nor does it fall within the definition of LBO-Related Causes of Action.

4.      In short, the only real issue presented in either the Contempt Motion or the Joinder is the Debtors' request for a "suspension" of the New York Action "pending the outcome of the plan confirmation hearing in these cases."  Joinder at 2. According to the Debtors, the issues raised in the New York Action "have been squarely raised by the [Debtor/Committee/Lender] Plan and the [Step One Lender] Plan (as well as the other Competing Plans), and go to the core of the ongoing plan confirmation process."  Joinder at 6, n.4.  The Lead Banks agree that the Sharing Provisions Dispute will be decided by this Court – in the words of counsel for JPMorgan, "we're happy to take those issues on," Transcript of Hearing, November 29, 2010, at 77, ln.1; and in the words of all of the Lead Banks, "[m]any of the issues raised in the [New York Action] are already before the Bankruptcy Court in connection with the plan confirmation process."  Notice of Removal at 4, ¶10.[5]

5.      The SOCAL Plaintiffs welcome the acknowledgement by the Debtors, JPMorgan and the Lead Banks that the Sharing Provisions Dispute will be "taken on" as part of the plan confirmation process.  Those parties cannot be seriously contending, however, that this Court has jurisdiction to adjudicate the Direct Damages Claims.

---

[5] "Notice of Removal" is the Lead Banks' Notice of Removal filed with the United States District Court for the Southern District of New York on November 23, 2010.

## **ARGUMENT**

**A.     The Lead Banks Do Not Have Standing To Assert a Violation of the Automatic Stay and the Debtors Themselves Have Made No Such Assertion**

6.      A party seeking to enforce the automatic stay must have standing under the Bankruptcy Code to do so.  *City of Farmers Branch v. Pointer (In re Pointer),* 952 F.2d 82, 85 (5th Cir. 1992), *cert. denied sub nom. Pointer v. Carrollton-Farmers Branch Indep. School Dist.,* 505 U.S. 1222 (1992).  Creditors and other non-debtor parties have no such standing.  *See In re Pecan Groves of Ariz.*, 951 F.2d 242, 245 (9th Cir. 1991) (held that creditors have no standing to enforce the automatic stay, noting that "if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay.") (citations omitted); *Taberna Capital Mgmt. v. Dunmore*, 392 B.R. 559, 560 (Bankr. S.D.N.Y. 2008) (non-debtor defendants had no standing to raise issue of automatic stay where trustee did not raise the issue); *In re Cook*, 2008 WL 5157847 at *3 (Bankr. D. N.M. Sep. 15, 2008) (held that "an individual creditor does not have standing to assert [an automatic stay] violation regarding property of the estate. This action belongs to the estate and therefore the Chapter 7 Trustee….") (quoting *In re Deshazo*, 2006 WL 5217795 at *1 (Bankr. D. Md. Feb. 22, 2006)).  Therefore, the Lead Banks have no standing to assert, let alone seek a finding of contempt, for an alleged violation of the automatic stay.

7.      In contrast to the Contempt Motion, the Joinder does not assert a violation of the automatic stay even though the Joinder was filed several days after the Contempt Motion. Instead, the Joinder seeks only to stay the New York Action during the pendency of the mediation and/or "extend" the automatic stay to "suspend" the New York Action pending the plan confirmation proceedings.  Because the Debtors are not asserting a violation of the automatic stay, that issue has not been properly presented to this Court.

**B.    The New York Action Is Not a "Matter or Proceeding" Within the Meaning of the Mediation Order**

8.      A matter is a contested matter.  *See* Bankruptcy Rule 9014.  A proceeding is an adversary proceeding.  *See* Bankruptcy Rule 7001 (listing 10 types of "proceeding[s]" that are "adversary proceedings").  Both are commenced in the Bankruptcy Court.  The New York Action is a civil action commenced in state court and is neither a "matter" nor a "proceeding" as those terms are used in the Mediation Order.

9.      The Third Circuit's *Phar-Mor* decision does not suggest a different result.  *See Phar-Mor v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994).  The issue in *Phar-Mor* was whether a creditors' committee could intervene as a matter of right in a civil action brought by the Debtor in state court and then removed to a federal District Court, where the civil action was determined to be a non-core, "related to" proceeding.  In that context, the Third Circuit concluded that the federal civil action could be considered an "adversary proceeding" for committee intervention purposes.

10.     The New York Action was a civil action commenced by non-debtors against non-debtors, not by a debtor against its own auditors (which was the case in *Phar-Mor*).  Further, there has been no finding by any court that the New York Action is a "related to" proceeding.  *Phar-Mor* only addresses civil actions that are properly before a district court and does not address at all civil actions like the New York Action that were commenced in, and belong in, state court, or that have been temporarily removed to district court but as to which no decision on the merits of removal has yet been entered.

11.     Claims related to creditor disputes, especially where declarations of rights are sought, are commonly brought in state courts where there are state law claims at issue.  *See, e.g., In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1286 (11th Cir. 2006) (reversed bankruptcy court's

removal of state court fraud claims in intercreditor dispute noting that the plaintiff could not have been granted state law damages against the other creditor in the context of the contested proceedings). The case most closely analogous to the present situation is *Extended Stay v. Lightstone Holdings (In re Extended Stay)*, 418 B.R. 49 (Bankr. S.D.N.Y. 2009). In *Extended Stay* the Court addressed motions to remand various matters to state court. Of relevance here was an action against various lenders and other non-debtors asserting breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference and breach of fiduciary duty. The Court concluded that, because the claims arose solely under New York law, not the Bankruptcy Code, and sought monetary damages from non-debtors rather than property of the estate, the action was not core or related and must therefore be remanded. *Id*.

C.     **The New York Action Is Not an "LBO-Related Cause of Action" Within the Meaning of the Mediation Order**

12.     The New York Action seeks damages from the Lead Banks, not the Debtors. The damages sought involve harm to the specific named SOCAL Plaintiffs and are not damages that have been or could be asserted by the Debtors or their estates.

13.     The definition of LBO-Related Causes of Action includes actions "arising from any transaction related to the leveraged buy-out of Tribune that occurred in 2007" and certain related transactions, and also includes related "financing committed to, incurred or repaid in connection with" those transactions. The definition of LBO-Related Causes of Action does not include state court disputes between non-debtor parties that seek damages specific to the plaintiffs rather than damages that could be asserted or recovered by the Debtors or their estates. The reason such claims may be properly excluded from the definition is simple: "LBO-Related Causes of Action" is defined in the context of the Joint Plan and is intended to include claims assertable by or against the Debtors' estates, such as adversary proceedings.

**D.     Even If This Court Concludes That the Mediation Order Does Apply to the New York Action, the Actions of the SOCAL Plaintiffs Do Not Satisfy the Requirements for a Contempt Finding**

14.     The Lead Banks must prove three elements by clear and convincing evidence to establish liability for civil contempt:  (i) that a valid order of the court existed; (ii) that the defendants had knowledge of the order; and (iii) that the defendants disobeyed the order.  *Clean Harbors v. Arkema (In re Safety-Kleen)*, 331 B.R. 605, 608 (Bankr. D. Del. 2005) (citations omitted).  "[T]he order which is said to have been violated must be specific and definite." *Id.* (citing *In re Rubin*, 378 F.2d 104, 108 (3d Cir. 1967)).  "Put differently, 'a person will not be held in contempt of an order unless the order has given him fair warning that his acts were forbidden.'" *Id.* (citations omitted).  Further, "the long-standing rule in contempt cases is that ambiguities or omissions in an order will favor the party charged with contempt." *Id.* (citations omitted).  The well-established standard of proof therefore requires that "the plaintiff must prove by clear and convincing evidence that the defendants violated an unambiguous order in that *no other reasonable interpretation of such order existed*." *Id.* (citing *Harris v. Phila.*, 47 F.3d 1342, 1350 (3d Cir. 1995) (emphasis added)).

15.     For the reasons noted above, it was reasonable for the SOCAL Plaintiffs to conclude that the New York Action was not prohibited by the Mediation Order.  Even if this Court does not agree that the SOCAL Plaintiffs' interpretation is correct, it should find the interpretation *reasonable*, especially in light of the tendency of non-debtor parties to use state court actions as a means of determining rights.  Because the SOCAL Plaintiffs have reasonable grounds to believe that they are not in violation of the Mediation Order, a finding of contempt cannot be supported. *In re Safety-Kleen,* 331 B.R. at 614 (dismissed contempt claim because the

plaintiff could not demonstrate by clear and convincing evidence that the agreement at issue was not susceptible to more than one meaning).

E.    **Even If This Court Concludes That the Automatic Stay Does Apply to the New York Action, the Actions of the SOCAL Plaintiffs Do Not Satisfy the Requirements for a Contempt Finding**

16.    As noted above, the Debtors have not asserted that the SOCAL Plaintiffs violated the automatic stay and, therefore, the assertion of a stay violation in the Contempt Motion is of no effect.   However, because contempt for an alleged stay violation has been asserted, the SOCAL Plaintiffs will address the automatic stay out of an abundance of caution.

17.    A finding of contempt for violation of the automatic stay can be warranted where, in circumstances far unlike the filing of the New York Action, there is a "willful violation" of the stay.   *In re Cont'l Airlines*, 236 B.R. 318, 331 (Bankr. D. Del. 1999).   The two provisions of Section 362(a) that the Lead Banks claim were violated by the SOCAL Plaintiffs are Section (a)(3), which prohibits any act to obtain or control "*property of the estate*", and Section (a)(6), which prohibits "any act to collect, assess, or recover a claim *against the debtor*" that arose before the commencement of the bankruptcy case.   11 U.S.C. § 362(a)(3), 11 U.S.C. § 362(a)(6) (emphasis added).   The New York Action does not make any claims against the Debtors, nor does it seek to obtain or control any property of the estate, either in form or in substance.   *See Extended Stay*, *supra*.

18.    Further, although there are certain "unusual circumstances" under which "courts have extended the automatic stay to non-bankrupt codefendants," *id*. at 510 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)), those circumstances are not present here and, in any event, do not present any issue of contempt.   Self-evidently, an *extension* of the automatic stay only occurs when the court decides to extend the stay, which has not yet happened here.

19.    In addition, even were this Court to decide *now* to extend the automatic stay, neither the Lead Banks nor the Debtors have cited to a single case that concluded that a bankruptcy court has jurisdiction over claims such as the Direct Damages Claims, which are payable by one non-debtor to another non-debtor and which do not come out of or diminish estate assets in any manner.  The cases that are cited in the Joinder all involve actions seeking to recover property of the estate or actions against a party closely related to the debtor.  *See A.H. Robins*, 788 F.2d at 1008 (stay enforced where the defendants had rights of indemnity against the debtor and were additional insureds under the debtor's insurance policy; court found that the action would reduce and diminish the debtor's insurance fund to the detriment of the creditors as a whole); *In re W.R. Grace & Co.*, 115 Fed. Appx. 565 (3d Cir. 2004) (action stayed against debtor's worker's compensation insurer); *In re Eagle Enters.*, 265 B.R. 671 (E.D. Pa. 2001) (held that unsecured creditors' alter ego claim against third-party seeking to impose vicarious liability for debtor's breach of equipment leases was estate property subject to the automatic stay); *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984) (stayed third party actions against debtor's asbestos insurers, holding that insurance of debtor constituted property of the estate); *In re Cont'l Airlines*, 177 B.R. 475 (D. Del. 1993) (stayed shareholders' class action lawsuits against directors and officers of debtor).  None of the cases support the proposition that a suit alleging state law causes of action against creditors, which does not seek property of the estate, would violate the automatic stay.  The *Eagle Enterprises* court recognized this distinction and held that the creditor's claim for tortious interference brought against a third party did not violate the automatic stay.  265 B.R. at 680.

20.    Finally, even if this Court concludes that the Lead Banks do have standing to assert a stay violation and disagrees with the SOCAL Plaintiffs' position on the automatic stay,

the mere filing of the New York Action, which does not assert any claims against the Debtors or seek any property of the estate, does not rise to the level of "willful violation" necessary for a finding of contempt. *United States v. Norton*, 717 F.2d 767, 774-75 (3d Cir. 1983) (refused to hold IRS in contempt for violating automatic stay where it exercised rights of set-off against debtor, holding that the IRS did not have "fair warning" that it's actions were "per se a violation of the automatic stay.").

**F.      The Debtors' Request To "Suspend" the New York Action**

21.      The Joinder seeks two forms of relief.  First, the Joinder seeks a stay of the New York Action "at least 'during the pendency of the Mediation,' which, as of the dater hereof, is still ongoing."   Joinder at 5, ¶11.   Upon information and belief, the Mediation may already be terminated as to the Step One Lenders (and possibly as to all parties), but of course it is the Mediator who will need to make and announce that determination.

22.      Second, the Debtors seek "to suspend the New York Action pending the outcome of the plan confirmation hearing." Joinder at 6, ¶12.  According to the Debtors, the issues raised in the New York Action "have been squarely raised by the [Debtor/Committee/Lender] Plan and the [Step One Lender] Plan (as well as the other Competing Plans), and go to the core of the ongoing plan confirmation process."  Joinder at 6, n.4.

23.      Subsequent to filing the Contempt Motion, the Lead Banks filed the Notice of Removal with respect to the New York Action.  The Lead Banks express views similar to the Debtors, noting in their removal that "[m]any of the issues raised in the [New York Action] are already before the Bankruptcy Court in connection with the plan confirmation process."  Notice of Removal at 4, ¶10.  Counsel for JPMorgan made similar comments to this Court at the hearing

on November 29, 2010, stating that "we're happy to take those issues on."  Transcript of Hearing,

November 29, 2010, at 77, ln.1.

24.    The SOCAL Plaintiffs welcome the acknowledgement by the Debtors, JPMorgan

and the Lead Banks that the Sharing Provisions Dispute will be "taken on" as part of the plan

confirmation process.  Those parties cannot be seriously contending, however, that this Court has

jurisdiction to adjudicate the Direct Damages Claims.

**CONCLUSION**

WHEREFORE, the SOCAL Plaintiffs respectfully request that the Court deny the

Contempt Motion and the Joinder and enter such other relief as is just.


Dated:  December 6, 2010                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Daniel Butz*
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: 302.658.9200
Facsimile: 302.658.3989

BRACEWELL & GIULIANI LLP
Evan Flaschen
Daniel Connolly
Andrew Schoulder
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT 06103-1516
Telephone:  860-256-8537
Facsimile:  860-760-6310

ARKIN KAPLAN RICE LLP
Howard Kaplan
Johnny Yeh
Deana Davidian
590 Madison Avenue, 35th Floor
New York, NY  10022
Telephone: 212.333.0200
Facsimile: 212.333.2350

*Counsel to the Step One Credit Agreement Lenders*