# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| TRIBUNE COMPANY, <u>et al.</u>,[1] | ) | Case No. 08-13141 (KJC) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

## AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY KING STREET ACQUISITION COMPANY, L.L.C., <u>KING STREET CAPITAL, L.P. AND MARATHON ASSET MANAGEMENT, L.P.</u>

Dated: December 1,7, 2010

| | |
|---|---|
| WHITE & CASE LLP | FOX ROTHSCHILD LLP |
| Thomas E Lauria, Esq. | Jeffrey M. Schlerf, Esq. (No. 3047) |
| David Hille, Esq. | Eric M. Sutty, Esq. (No. 4007) |
| Andrew Hammond, Esq. | Jay Strock, Esq. (No. 4965) |
| Scott Greissman, Esq. | Citizens Bank Center |
| 1155 Avenue of the Americas | 919 North Market Street, Suite 1600 |

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| ARTICLE 1 | DEFINITIONS; RULES OF INTERPRETATION; EXHIBITS | 3 |
| 1.1 | Definitions | 3 |
| 1.2 | Rules of Interpretation | 33 |
| 1.3 | Computation of Time | 34 |
| 1.4 | Exhibits | 34 |
| 1.5 | Deemed Acts | 34 |
| ARTICLE 2 | TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS | 34 |
| 2.1 | DIP Facility Claims | 3435 |
| 2.2 | Administrative Expense Claims | 35 |
| 2.3 | Priority Tax Claims | 35 |
| ARTICLE 3 | CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 3536 |
| 3.1 | Summary of Classification and Treatment of Classified Claims and Interests | 3536 |
| 3.2 | Classification and Treatment of Claims Against and Interests in Tribune Company (Debtor 1) | 37 |
| 3.3 | Classification and Treatment of Claims Against and Interests in Non-Guarantor Debtors (Debtors 2 through 49) | 46 |
| 3.4 | Classification and Treatment of Claims Against and Interests in Guarantor Debtors (Debtors 50 through 111) | 48 |
| 3.5 | Prepackaged Plans for and Treatment of Claims Against and Interests in Subsidiary Non-Debtors that Become Debtors | 5354 |
| ARTICLE 4 | ACCEPTANCE OR REJECTION OF BRIDGE LENDER PLAN | 55 |
| 4.1 | Impaired Classes of Claims and Interests Entitled to Vote | 55 |
| 4.2 | Acceptance by an Impaired Class of Claims | 55 |
| 4.3 | Deemed Acceptance by Holders of Intercompany Claims | 55 |
| 4.4 | Presumed Acceptances by Unimpaired Classes | 55 |
| 4.5 | Presumed Rejection of the Bridge Lender Plan | 55 |
| 4.6 | Confirmability and Severability of the Bridge Lender Plan | 5556 |
| ARTICLE 5 | MEANS FOR IMPLEMENTATION OF THE BRIDGE LENDER PLAN | 56 |
| 5.1 | Non-Substantive Consolidation | 56 |
| 5.2 | Restructuring Transactions | 5657 |
| 5.3 | Corporate Governance, Directors, Officers and Corporate Action | 5758 |
| 5.4 | Issuance and Distribution of New Securities and Related Matters | 60 |
| 5.5 | Reporting Requirements Under the Securities Exchange Act of 1934 and Listing of New Class A Common Stock on the Securities Exchange or Quotation System | 64 |
| 5.6 | New Senior Secured Term Loan Agreement | 64 |
| 5.7 | Continued Corporate Existence and Vesting of Certain Assets in the Reorganized Debtors | 65 |

| | | |
|---|---|---|
| 5.8 | Cancellation of Loan Agreements, Loan Guaranty Agreements, the Pledge Agreement, Notes Issued Under the Loan Agreements, Senior Notes, Debentures, Instruments, Indentures, EGI-TRB LLC Notes, PHONES Notes, Old Common Stock and Other Tribune Interests | 6566 |
| 5.9 | Cancellation of Liens and Guaranties | 67 |
| 5.10 | Exit Facility | 67 |
| 5.11 | Equity Incentive Plan | 67 |
| 5.12 | Sources of Cash for Initial Bridge Lender Plan Distributions | 6768 |
| 5.13 | Additional Transactions Authorized Under the Bridge Lender Plan | 68 |
| 5.14 | Put Option | 68 |
| 5.15 | Settlement of Claims and Controversies | 69 |
| 5.16 | Preservation of Rights of Action and Settlement of Litigation Claims | 7273 |
| 5.17 | FCC Applications | 73 |
| 5.18 | Litigation Trust | 73 |
| 5.19 | Creditors' Trust. | 77 |
| ARTICLE 6 | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 83 |
| 6.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 83 |
| 6.2 | Cure of Defaults of Assumed Executory Contracts and Unexpired Leases | 84 |
| 6.3 | Assumption of Executory Contracts and Unexpired Leases | 84 |
| 6.4 | Rejection Damages Bar Date | 85 |
| 6.5 | Compensation and Benefit Programs | 85 |
| 6.6 | Collective Bargaining Agreements | 85 |
| 6.7 | Postpetition Contracts and Leases | 86 |
| 6.8 | Termination of ESOP | 86 |
| 6.9 | Insurance Policies. | 86 |
| ARTICLE 7 | PROVISIONS GOVERNING DISTRIBUTIONS | 87 |
| 7.1 | General | 87 |
| 7.2 | Disputed Claims Reserves | 87 |
| 7.3 | Special Provisions Governing Distributions to Holders of Senior Loan Claims and Senior Loan Guaranty Claims | 88 |
| 7.4 | Interest on Claims | 89 |
| 7.5 | Distributions by Disbursing Agent/Distribution Trustee/Creditors' Trustee | 89 |
| 7.6 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 89 |
| 7.7 | Record Date for Distributions | 90 |
| 7.8 | Allocation of Bridge Lender Plan Distributions Between Principal and Interest | 91 |
| 7.9 | Means of Cash Payment | 91 |
| 7.10 | Withholding and Reporting Requirements | 91 |
| 7.11 | Setoffs | 93 |
| 7.12 | Fractional Shares/Fractional Distribution Trust Interests/Fractional Creditors' Trust Interests | 93 |
| 7.13 | De Minimis Distributions | 93 |
| 7.14 | Special Provision Regarding Unimpaired Claims | 93 |
| 7.15 | Subordination | 94 |

MIAMI 889648 (2K)

| 7.16 | Distribution Trust | 94 |
|---|---|---|
| **ARTICLE 8** | **PROVISIONS FOR RESOLVING DISPUTED CLAIMS AND DISPUTED INTERESTS** | 100 |
| 8.1 | Objections to and Estimation of Claims | 100 |
| 8.2 | Payments and Distributions on Disputed, Contingent and Unliquidated Claims and Interests and on Claims for Which Proofs of Claim are Filed | 101 |
| **ARTICLE 9** | **PAYMENT AND FILING OF PROFESSIONAL FEE CLAIMS** | 101 |
| 9.1 | Payment of Proponents Fee/Expense Claims | 101 |
| 9.2 | Bar Date for Payment or Reimbursement of Professional Fees and Expenses and Claims for Substantial Contribution | 101 |
| **ARTICLE 10** | **CONFIRMATION AND CONSUMMATION OF THE BRIDGE LENDER PLAN** | 102 |
| 10.1 | Conditions to Effective Date | ~~102~~103 |
| 10.2 | Waiver of Conditions | 104 |
| 10.3 | Consequences if Confirmation Order is Vacated | 104 |
| **ARTICLE 11** | **INJUNCTIONS, RELEASES AND DISCHARGE** | 104 |
| 11.1 | Discharge | 104 |
| 11.2 | Releases | 105 |
| 11.3 | Obligations of the Guarantor Non-Debtors as a Condition to the Release of Guarantor Non-Debtors from Loan Guaranty Claims and Bridge Loan Guaranty Claims | 107 |
| 11.4 | Disallowed Claims and Disallowed Interests | 107 |
| 11.5 | Term of Bankruptcy Injunction or Stays | 108 |
| 11.6 | Exculpation | 108 |
| **ARTICLE 12** | **RETENTION/RELEASE OF JURISDICTION** | 108 |
| 12.1 | Retention of Jurisdiction | 108 |
| 12.2 | Release of Jurisdiction | 110 |
| **ARTICLE 13** | **MISCELLANEOUS** | 110 |
| 13.1 | Surrender of Instruments | 110 |
| 13.2 | Creditors' Committee | 111 |
| 13.3 | Post-Confirmation Date Retention of Professionals | 111 |
| 13.4 | Effectuating Documents and Further Transactions | 111 |
| 13.5 | Exemption from Transfer Taxes | 111 |
| 13.6 | Paid-in Capital of Corporate Reorganized Debtors | ~~111~~112 |
| 13.7 | Payment of Statutory Fees | 112 |
| 13.8 | Amendment or Modification of the Bridge Lender Plan | 112 |
| 13.9 | Withdrawal of Proponents | 112 |
| 13.10 | Severability of Bridge Lender Plan Provisions | ~~112~~113 |
| 13.11 | Successors and Assigns | 113 |
| 13.12 | Revocation, Withdrawal or Non-Consummation | 113 |
| 13.13 | Notice | 113 |

MIAMI 889648 (2K)

13.14   Governing Law                                                   114
13.15   Tax Reporting and Compliance                                    114
13.16   Reservation of Rights                                      ~~114~~115
13.17   Notice of the Effective Date                                    115

MIAMI 889648 (2K)

entered on November 25, 2009 [D.I. 2657], as the same may be amended, modified or supplemented from time to time.

1.1.39    Class means a category of Claims or Interests set forth in Article 3 of the Bridge Lender Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.1.40    Class [   ] Creditors' Trust Interests means the applicable series of Creditors' Trust Interests allocable to each eligible Class, entitling the holders of such series of Creditors' Trust Interests to distributions (if any) from the Creditors' Trust in accordance with the terms of the Creditors' Trust Agreement, the Creditors' Trust Distribution Orders, the Bridge Lender Plan and the Senior Loan Claim Sharing Resolution. For the avoidance of doubt, each Holder of a given Class of Creditors' Trust Interests shall receive Pro Rata distributions on account of such Class of Creditors' Trust Interests.

1.1.41    Class [   ] Distribution Trust Interests means the applicable series of Distribution Trust Interests allocable to each applicable Class entitling the holders of such series of Distribution Trust Interests to distributions (if any) from the Distribution Trust (including proceeds of the Litigation Trust Causes of Action) in accordance with the terms of the the Distribution Trust Agreement, the Litigation Distribution Orders, the Bridge Lender Plan and the Senior Loan Claim Sharing Resolution.

1.1.42    Collective Bargaining Agreement(s) means, individually or collectively, the collective bargaining agreements listed on Appendix C to the Debtor/Committee/Lender Plan.

1.1.43    Communications Act means the Communications Act of 1934, as amended, or any other successor federal statute, and the rules and regulations of the FCC promulgated thereunder.

1.1.44    Confirmation means the entry of the Confirmation Order on the docket of the Debtors' Chapter 11 Cases.

1.1.45    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket for the Chapter 11 Cases.

1.1.46    Confirmation Hearing means the hearing held by the Bankruptcy Court on confirmation of the Bridge Lender Plan, as such hearing may be continued from time to time.

1.1.47    Confirmation Order means the order of the Bankruptcy Court confirming the Bridge Lender Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.48    Creditor means the Holder of a Claim against a Debtor or a Subsidiary Non-Debtor that becomes a Debtor.

1.1.49    Creditors' Committee means the official committee of unsecured creditors appointed by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

MIAMI 889648 (2K)

other applicable law.  For avoidance of doubt, rights, claims and actions arising from or related to (i)-(iii) in the preceding sentence are LBO-Related Causes of Action and are not released pursuant to the Plan or the Confirmation Order.

 1.1.171   MSCS means Morgan Stanley Capital Services Inc. and its Affiliates and Related Persons of such entities, including, without limitation, Morgan Stanley & Co., Inc.

 1.1.172   Multiemployer Plan means a plan (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements contained in regulations promulgated by the United States Department of Labor.

 1.1.173   Net Creditors' Trust Proceeds means the sum of all recoveries obtained in connection with the prosecution of the State Law Avoidance Claims after repayment of the Creditors' Trust Initial Funding, other financing sources, to the extent applicable, and the satisfaction of all costs and expenses of the Creditors' Trust (including the costs and expenses of the Creditors' Trustee and the employees, professionals, advisors and consultants retained by the Creditors' Trustee or the Creditors' Trust).

 1.1.174   New Class A Common Stock means the Class A Common Stock to be issued by Reorganized Tribune in connection with the implementation of, and as authorized by, the Bridge Lender Plan, which shall have the powers, preferences and rights and be subject to the limitations, qualifications and restrictions, in each case as set forth in the Certificate of Incorporation.

 1.1.175   New Class B Common Stock means the Class B Common Stock to be issued by Reorganized Tribune in connection with the implementation of, and as authorized by, the Bridge Lender Plan, which shall have the powers, preferences and rights and be subject to the limitations, qualifications and restrictions, in each case as set forth in the Certificate of Incorporation.

 1.1.176   New Class C Common Stock means the single share of Class C Common Stock to be issued by Reorganized Tribune in connection with the implementation of, and as authorized by, the Bridge Lender Plan, which shall have the powers, preferences and rights and be subject to the limitations, qualifications and restrictions, in each case as set forth in the Certificate of Incorporation; provided, however, that such New Class C Common Stock shall be distributed to the Distribution Trust on the Effective Date and provide that the Distribution Trust<u>Trustee, at the direction of the Distribution Trust Advisory Board,</u> shall have the right to appoint two members to the board of directors of Reorganized Tribune so long as the Distribution Trust has not been wound down and dissolved.

 1.1.177   New Common Stock means, collectively, the New Class A Common Stock, the New Class B Common Stock and the New Class C Common Stock; provided, however, that (i), under the circumstances set forth in Section 5.4.2 of the Bridge Lender Plan, certain Holders of Claims that would otherwise be entitled to receive New Class A Common Stock or New Class

1.1.186    Non-Qualified Former Employee Benefit Plan means any of the Debtors' non-tax qualified Pension Plans and individual agreements providing for retirement compensation, or deferred compensation arrangements of the applicable Debtor covering an individual who was not an employee, consultant or director of the applicable Debtor as of the Petition Date.

1.1.187    Old Common Stock means the issued and outstanding common stock of Tribune as of the Petition Date.

1.1.188    Original Bridge Loan Lenders means JPMorgan Chase Bank. N.A., Citicorp North America, Inc., Merrill Lynch Capital Corporation and Bank of America, N.A.

1.1.189    Original Bridge Loan Lenders Release means the release of the Original Bridge Loan Lenders from the Estates and the other Bridge Loan Lenders in respect of all LBO-Related Causes of Action related to, or arising in connection with, the Bridge Loan Agreement and the sale or disposition of the Bridge Loans and rights and obligations thereunder.

1.1.190    Other Guarantor Debtor Claims means the General Unsecured Claims against the Guarantor Debtors and any Claim against a Guarantor Debtor by or on behalf of the ESOP and/or any present or former participants in the ESOP in their capacity as such, to the extent that the Bankruptcy Court determines that the ESOP and/or any present or former participants in the ESOP in their capacity as such has an Allowed Claim against a Guarantor Debtor.

1.1.191    Other Guarantor Debtor Claims Initial Distribution means Cash equal to 8% of each Holder's Allowed Other Guarantor Debtor Claim.

1.1.192    Other Guarantor Debtor Claims Purchase Price means, subject to the Claims Purchase Price Cap, Cash in an amount equal to 25% of the amount of the applicable Allowed Other Guarantor Debtor Claims.

1.1.193    Other Guarantor Debtor Claims Purchase Funds means an amount of Cash equal to the lesser of (a) the Other Guarantor Debtor Claims Purchase Price Cap or (b) 25% of the aggregate amount of Allowed Other Guarantor Debtor Claims that exercised and are eligible, under the terms and conditions of the Bridge Lender Plan, to exercise the Other Guarantor Debtor Claims Put Option, which will be used to pay applicable Holders of Allowed Claims electing the Other Guarantor Debtor Claims Put Option, as applicable.

1.1.194    Other Guarantor Debtor Claims Purchase Price Cap means $20.75 million, the maximum aggregate amount of the Other Guarantor Debtor Claims Purchase Price paid for Other Guarantor Debtor Put Claims unless otherwise increased in the sole discretion of the Claims Purchaser.  To the extent the aggregate consideration necessary to purchase Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims in the applicable Class, rounded to the nearest whole dollar, at the Other Guarantor Debtor Purchase Price and the remaining portion of the applicable Other Guarantor Debtor Put Claims shall receive their Pro Rata share of the Initial Distribution and Distribution Trust Interests on account of such remaining amount of the applicable Other Guarantor Debtor Put Claims.

23

1.1.195    Other Guarantor Debtor Claims Put Election means the election by a Holder of an Other Guarantor Debtor Claim that is Allowed as of the Voting Deadline, on its Ballot, to participate in the Other Guarantor Debtor Claims Put Option.

1.1.196    Other Guarantor Debtor Claims Put Option means the option presented to the Holders of Other Guarantor Debtor Claims that are Allowed as of the Voting Deadline to sell such Allowed Claims to the Claims Purchaser in exchange for the Other Guarantor Debtor Claims Purchase Price, which Claims Purchase shall be commenced only in the event that (i) the applicable Other Guarantor Debtor Claims Class votes to accept the Bridge Lender Plan, (ii) such particular Holder of the Other Guarantor Debtor Claim makes the Other Guarantor Debtor Claims Put Election on its Ballot, and (iii) the Claims Purchaser consents to the contribution of Claims Purchase Funds.  For the avoidance of doubt, the Other Guarantor Debtor Claims Put Option shall only be exercisable by Holders whose Other Guarantor Debtor Claims are Allowed as of the Voting Deadline.

1.1.197    Other Guarantor Debtor Put Claims means the Other Guarantor Debtor Claims, the Holders of which made the Other Guarantor Debtor Claims Put Election on their respective Ballots.

1.1.198    Other Non-Guarantor Debtor Claims means the General Unsecured Claims against the Non-Guarantor Debtors and any Claim against a Non-Guarantor Debtor by or on behalf of the ESOP and/or any present or former participants in the ESOP in their capacity as such, to the extent that the Bankruptcy Court determines that the ESOP and/or any present or former participants in the ESOP in their capacity as such has an Allowed Claim against a Non-Guarantor Debtor.

1.1.199    Other Parent Claims means General Unsecured Claims against Tribune (and for the avoidance of doubt includes all Claims against Tribune under Non-Qualified Former Employee Benefit Plans).

1.1.200    Other Parent Claims Initial Distribution means a Pro Rata share of the Parent Consideration equal to the amount of Allowed Other Parent Claims divided by the mid-point estimated amount of all Allowed Claims against Tribune in the event all LBO-Related Causes of Action were unsuccessful.

1.1.201    Other Parent Claims Purchase Funds means an amount of Cash equal to the lesser of (a) the Other Parent Claims Purchase Price Cap or (b) 15% of the amount of aggregate Allowed Other Parent Claims that exercised and are eligible, under the terms and conditions of the Bridge Lender Plan, to exercise the Other Parent Claims Put Option which will be used to pay applicable Holders of Allowed Claims electing the Other Parent Claims Put Option.

1.1.202    Other Parent Claims Purchase Price means, subject to the Claims Purchase Price Cap, Cash in an amount equal to 15% of the amount of the applicable Allowed Other Parent Claims.

1.1.203    Other Parent Claims Purchase Price Cap means $24.25 million, the maximum aggregate amount of the Other Parent Claims Purchase Price paid for Other Parent Put Claims

24

event that the Senior Loan Claim Sharing Resolution finds that the sharing provisions of the Senior Loan Agreement (including, without limitation, Sections 2.13 and 2.15 thereof) are enforceable regardless of whether Step Two Lender Claims are avoided.

1.1.267    Step Two Lender Parties means each Step Two Lender, and each of their respective directors, officers, employees, agents, representatives and attorneys.

1.1.268    Step Two Lender Settlement means the proposed settlement between the Debtors and the Step Two Lenders described in Section 5.15(b) of the Bridge Lender Plan.

1.1.269    Step Two Senior Loan Claim means a Claim arising under the Senior Loan Agreement or the Pledge Agreement in respect of "Incremental Term Borrowings" as defined in the Senior Loan Agreement.

1.1.270    Step Two Senior Loan Guaranty Claim means a Claim arising under the Senior Loan Guaranty Agreement in respect of "Incremental Term Borrowings" as defined in the Senior Loan Agreement.

1.1.271    Step Two Senior Loans means the loans under the Senior Loan Agreement and the Pledge Agreement solely with respect to "Incremental Term Borrowings" as defined in the Senior Loan Agreement.

1.1.272    Subordinated Securities Claim means any Claim against Tribune, except any Claim that survives confirmation and effectiveness of the Bridge Lender Plan pursuant to Section 11.1, subject to subordination under section 510(b) of the Bankruptcy Code, including, without limitation, any Claim (i) arising from the rescission of a purchase or sale of shares, notes or any other securities of Tribune or an Affiliate of Tribune, (ii) for damages arising from the purchase or sale of any such security, or (iii) for reimbursement, contribution or indemnification allowed under section 502 of the Bankruptcy Code on account of any of the foregoing Claims.  For the avoidance of doubt, Subordinated Securities Claims include Claimsany Claim asserted against Tribune by or on behalf of the ESOP and/or any present or former participants in the ESOP in their capacity as such and PHONES Notes Exchange Claims to the extent the Bankruptcy Court determines that such Claims are different from and subordinated in right of payment to the PHONES Notes Claims pursuant to the PHONES Notes Claims Resolution.

1.1.273    Subsidiaries means all Subsidiary Debtors and Subsidiary Non-Debtors.

1.1.274    Subsidiary Consideration means a percentage of the New Common Stock, a percentage of the New Senior Secured Term Loan and a percentage of the Distributable Cash in each case equal to the Subsidiary Distributable Enterprise Value Percentage.

1.1.275    Subsidiary Debtors means, individually or collectively, the Filed Subsidiary Debtors, and such Subsidiary Non-Debtors, if any, that become Debtors prior to the Confirmation Date.

MIAMI 889648 (2K)

directors of Reorganized Tribune shall serve for a two-year term and two members of the initial board of directors of Reorganized Tribune shall serve for a three-year term, and in each case be subject to re-election based on a shareholder vote pursuant to the terms of the Certificate of Incorporation and applicable law; provided, however, that. Notwithstanding anything contained herein, until the termination or dissolution of the Distribution Trust, the Distribution TrustTrustee, at the direction of the Distribution Trust Advisory Board shall have the right, pursuant to the terms of the New Class C Common Stock, have the right to appoint two members to the board of directors of Reorganized Tribune, which directors shall be independent directors under applicable SEC rules and regulations.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, Exhibit 5.3.2 to the Debtor/Committee/Lender Plan, to be filed no later than five days before the commencement of the Confirmation Hearing, shall disclose the identity and affiliations of any person proposed to serve on the initial board of directors of Reorganized Tribune (to the extent known) and to the extent such person is an insider (as defined in section 101(31) of the Bankruptcy Code) other than by virtue of being a director, the nature of any compensation for such person.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the Certificate of Incorporation and applicable law.  Each member of the current board of directors of Tribune will be deemed to have resigned on the Effective Date unless identified in Exhibit 5.3.2(1) to the Debtor/Committee/Lender Plan as continuing on the board of directors of Reorganized Tribune.  The officers and directors of Reorganized Tribune shall be required to (i) cooperate in all respects with the prosecution and investigation of the Litigation Trust Causes of Action and the State Law Avoidance Claims and (ii) not take or omit from taking any action that could interfere with or adversely affect the investigation or prosecution of the Litigation Trust Causes of Action or State Law Avoidance Claims.

5.3.3    Ownership and Management of Reorganized Debtors Other Than Reorganized Tribune.  Except as set forth in Exhibit 5.3.3 to the Debtor/Committee/Lender Plan, from and after the Effective Date, each Reorganized Debtor shall retain its equity interest in any other Reorganized Debtor.  The initial boards of directors or managers of the Reorganized Debtors other than Reorganized Tribune shall be as set forth in Exhibit 5.3.3 to be filed no later than five days before the commencement of the Confirmation Hearing.   The initial officers of Reorganized Tribune shall be the persons identified in Exhibit 5.3.2(1) to the Debtor/Committee/Lender Plan; provided, however, that the Proponents shall be able to make any modifications to such Exhibit and file such modified Exhibit with the Bankruptcy Court at any time prior to the commencement of the Confirmation Hearing if deemed necessary in the Proponents' sole discretion.

5.3.4    Corporate Action.  The adoption of the Certificate of Incorporation or similar constituent documents, the adoption of the By-Laws, the selection of directors and officers for Reorganized Tribune, and all other actions contemplated by the Bridge Lender Plan shall be authorized and approved in all respects (subject to the provisions of the Bridge Lender Plan) by the Confirmation Order.  All matters provided for in the Bridge Lender Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Bridge Lender Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors.  On the Effective Date, as applicable, the appropriate officers of the

60

Debtors and/or the Reorganized Debtors and members of the boards of directors or managers of the Debtors and/or Reorganized Debtors are authorized and directed to issue, execute and deliver, and cause the Reorganized Debtors to perform, the agreements, documents, securities and instruments contemplated by the Bridge Lender Plan in the name of and on behalf of the Debtors and/or Reorganized Debtors.

5.4     Issuance and Distribution of New Securities and Related Matters.

       5.4.1     Issuance of New Securities.  On, or as promptly as reasonably practicable after, the Effective Date or a subsequent Distribution Date, as applicable, Reorganized Tribune shall issue shares of New Common Stock and New Warrants and all instruments, certificates and other documents required to be issued or distributed pursuant to the Bridge Lender Plan without further act or action under applicable law, regulation, order or rule.  On the Effective Date, the Distribution Trust, for purposes of funding the Distribution Trust Reserve, will receive the New Class C Common Stock, and the New Warrants.  Except as otherwise provided in the Bridge Lender Plan, including as specifically provided in Section 5.4.2 hereof, each Holder of a Claim to receive a distribution of New Common Stock pursuant to the Bridge Lender Plan will be issued New Class A Common Stock, provided that any such Holder will be entitled to receive all or a portion of its shares of New Common Stock in the form of New Class B Common Stock or New Warrants if such Holder informs the Debtors and the Proponents of its desire to receive such New Class B Common Stock or New Warrants by the date announced by the Proponents in a filing with the Bankruptcy Court, with such date to be no earlier than the first day of the Confirmation Hearing.  On the Effective Date, Reorganized Tribune shall issue one share of New Class C Common Stock to the Distribution Trust.  Reorganized Tribune shall not issue any other shares of New Class C Common Stock at any time without the prior written consent of the Distribution Trust, such consent to be in the sole discretion of the Distribution Trust.  The New Class C Common Stock shall not be subject to optional redemption.  On the date on which the Distribution Trust is dissolved or otherwise wound down, Reorganized Tribune shall redeem the outstanding share of New Class C Common Stock at a price of $1.00 per share.  As the sole holder of New Class C Common Stock, the Distribution ~~Trust, through~~Trustee, at the direction of the Distribution Trust Advisory Board, shall have the right to elect two members of the board of directors of Reorganized Tribune.  New Class C Common Stock may not be transferred without the approval of the board of directors of Reorganized Tribune. Without the consent or approval of the Distribution Trust (such consent to be in the sole discretion of the Distribution Trust), Reorganized Tribune will not directly or indirectly, by way of merger, consolidation, operation of law or otherwise: (i) alter or change the rights, preferences or privileges of the New Class C Common Stock;   (ii) take any action, including amending Reorganized Tribune's Certificate of Incorporation or Bylaws that would adversely affect the rights, preferences or privileges of the New Class C Common Stock;   (iii) increase or decrease the authorized number of shares of New Class C Common Stock; or   (iv) increase or decrease the authorized size of Reorganized Tribune's board of directors.  The Certificate of Incorporation, substantially in the form of Exhibit 5.3.1(1) to be filed with the Debtor/Committee/Lender Plan Supplement, sets forth the rights and preferences of the New Common Stock.  The Certificate of Incorporation may contain customary provisions restricting the sale, transfer, assignment, conversion or other disposal of such shares of New Common Stock.  To the extent the shares of New Class A Common Stock, New Class B Common Stock or New Class C Common Stock are certificated, such certificates may contain a legend restricting the sale, transfer, assignment, conversion or other disposal of

5.8     Cancellation of Loan Agreements, Loan Guaranty Agreements, the Pledge Agreement, Notes Issued Under the Loan Agreements, Senior Notes, Debentures, Instruments, Indentures, EGI-TRB LLC Notes, PHONES Notes, Old Common Stock and Other Tribune Interests.

5.8.1     Except as otherwise provided for herein, as of the Effective Date, (a) all Loan Agreements, Loan Guaranty Agreements, the Pledge Agreement, notes issued under the Loan Agreements, Senior Notes, EGI-TRB LLC Notes, PHONES Notes, Old Common Stock, other Tribune Interests and any other notes, bonds (with the exception of surety bonds outstanding), indentures (including the Indentures), stockholders' agreements, registration rights agreements, repurchase agreements and repurchase arrangements, or other instruments or documents evidencing or creating any indebtedness or obligations of a Debtor that relate to Claims or Interests that are Impaired under the Bridge Lender Plan shall be cancelled, and (b) all amounts owed by and the obligations of the Debtors under any agreements, credit agreements, guaranty agreements, stockholders' agreements, registration rights agreements, repurchase agreements and repurchase arrangements, indentures (including the Indentures) or certificates of designation governing the Loan Claims, Loan Guaranty Claims, Senior Notes, EGI-TRB LLC Notes, PHONES Notes, Old Common Stock, other Tribune Interests and any other notes, bonds, indentures, or other instruments or documents evidencing or creating any Claims against or Interests in a Debtor that are Impaired under the Bridge Lender Plan shall be discharged. ~~For the avoidance of doubt, the indemnification and guaranty obligations of the Debtors contained in (A) that certain Indemnity Agreement between CSC Holdings, Inc., NMG Holdings, Inc. and Tribune dated July 29, 2008; (B) that certain Guaranty of Collection entered into on October 27, 2009 made by Tribune to various parties with respect to the obligations of Chicago Baseball Holdings, LLC in respect of the Credit Agreement Loans (as defined therein) and the Private Placement Notes (as defined therein); and (C) that certain Subordinated Guaranty of Collection entered into on October 27, 2009 made by Tribune to various parties with respect to the obligations of Chicago Baseball Holdings, LLC in respect of the Loans (as defined therein) shall be cancelled. In addition, as of the Effective Date, all Old Common Stock and other Tribune Interests that have been authorized to be issued but that have not been issued shall be deemed cancelled and extinguished without any further action of any party.~~ Notwithstanding anything to the contrary herein, the obligations of parties to the Loan Agreements and the Loan Guaranty Agreements that are not Reorganized Debtors or Subsidiary Non-Debtors shall not be discharged or limited in any way.

5.8.2     Notwithstanding the foregoing provisions of Section 5.8 and anything contained elsewhere in the Bridge Lender Plan, but subject to Section 5.8.1, (x) the Indentures shall continue in effect solely to the extent necessary to allow the Reorganized Debtors, the Distribution Trustee, the Claims Purchase Agent, the Disbursing Agent and the Indenture Trustees, as applicable, to make distributions pursuant to the Bridge Lender Plan under the respective Indentures and for the applicable Indenture Trustee to perform such other functions with respect thereto and assert any rights preserved under subsection (z) of Section 5.8.2; (y) the Loan Agreements (including, without limitation, the intercreditor provisions described in Section 7.3 of the Bridge Lender Plan) shall continue in effect solely to the extent necessary to allow the Reorganized Debtors, Distribution Trust or the Disbursing Agent, as applicable, to make distributions, subject to the Senior Loan Claim Sharing Resolution, pursuant to the Bridge Lender Plan on account of the Loan Claims and Loan Guaranty Claims under the respective Loan Agreements and Loan Guaranty Agreements; and (z) nothing herein shall waive, release, or

67

be preserved.  The Litigation Trustee shall be permitted to use all such records and documents in connection with the investigation and prosecution of the Litigation Trust Causes of Action.  The Debtors and the Reorganized Debtors shall not be permitted to invoke any privilege, including, but not limited to, attorney/client privileges, work product privileges, accountant/client privileges or any other evidentiary privileges to prevent the Litigation Trustee from using such records and documents for the purpose of investigating or prosecuting the Litigation Trust Causes of Action.

5.19    Creditors' Trust.

5.19.1    Creation and Purpose of the Creditors' Trust.  On the Effective Date, the Creditors' Trust shall be created and established pursuant to the Creditors' Trust Agreement for the purposes of administering the Creditors' Trust Assets and making all distributions to the Holders of Creditors' Trust Interests as provided for under the Bridge Lender Plan and the Creditors' Trust Distribution Orders.  The Creditors' Trust shall not continue or engage in the conduct of a trade or business, and no part of the Creditors' Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Creditors' Trustee in the furtherance of any business.  The Creditors' Trust is intended to qualify as a grantor trust pursuant to ~~Regulations Tax the of 671 Section Code Tax~~Treasury Regulation section 1.671-4(a) Initial Trust 'Creditors the to respect with 8.19.5 Section in provided expressly as Except . or cost any for liability any have shall Debtors Reorganized the or Debtors the of none ,Funding Agreemen Trust 'Creditors The  .Trust 'Creditors the of expenset shall be acceptable to the Proponents and shall be filed prior to the Confirmation Hearing.

5.19.2    Transfers to the Creditors' Trust.  On the Effective Date, the Abandoned Claims, to the extent commenced, shall be discontinued by the Debtors, the Creditors' Committee and/or the Estates without prejudice and the Debtors shall be deemed to have abandoned, pursuant to section 554 of the Bankruptcy Code, any and all right to further pursue the Abandoned Claims.  Upon the effectiveness of the aforesaid discontinuance and abandonment, each Holder of Senior Loan Claims, Bridge Loan Claims, Senior Noteholder Claims, Other Parent Claims, PHONES Notes Claims, EGI-TRB LLC Notes Claims and Subordinated Securities Claims not making the Non-Contribution Election, shall contribute to the Creditors' Trust any and all State Law Avoidance Claims.  The Creditors' Trust shall be authorized to prosecute the State Law Avoidance Claims that are contributed to the Creditors' Trust for the benefit of Creditors' Trust Beneficiaries who contribute State Law Avoidance Claims to the Creditors' Trust, who shall receive any recoveries on account of the State Law Avoidance Claims transferred to the Creditors' Trust, which recoveries shall be distributed to Creditors' Trust Beneficiaries in accordance with the Creditors' Trust Agreement, the Creditors' Trust Distribution Orders, the Bridge Lender Plan and the Senior Loan Claim Sharing Resolution.

5.19.3    Creditors' Trust Assets.  The transfer of the Creditors' Trust Assets to the Creditors' Trust shall be made for the benefit and on behalf of the Creditors' Trust Beneficiaries.  To the extent that any Creditors' Trust Assets cannot be transferred to the Creditors' Trust because of a restriction on transferability under applicable law, such Creditors' Trust Assets shall be deemed to have been retained by the Creditors' Trust Beneficiary, and the Creditors' Trust shall be deemed to have been designated as a representative of such Creditors' Trust

79

Creditors' Trust Agreement and may be paid without any requirement to seek Bankruptcy Court approval of such compensation.

5.19.11    Federal Tax Treatment of the Creditors' Trust. As stated in the Creditors' Trust Agreement, the Creditors' Trust (i) will be established for the sole purpose of taking title to, protecting, conserving and distributing any recoveries from the State Law Avoidance Claims for the Creditors' Trust Beneficiaries, in accordance with Tax Regulations section 301.7701-4(a), with no objective to continue or engage in the conduct of a trade or business and (ii) is intended to qualify as a grantor trust for U.S. federal income tax purposes. In general, a grantor trust is not a separate taxable entity for U.S. federal income tax purposes, but is instead treated as a pass-through entity. The Creditors' Trust Agreement will require all parties (i) to treat the transfer of the Creditors' Trust Assets to the Creditors' Trust as a transfer of such assets directly from the Creditors' Trust Beneficiaries to the Creditors' Trust, and (ii) consistent herewith, to treat the Creditors' Trust as a grantor trust of which the Creditors' Trust Beneficiaries are the owners and grantors. For federal income tax purposes, the Creditors' Trust Beneficiaries will be treated as grantors, deemed owners and beneficiaries of the Creditors' Trust. Subject to the terms of the Creditors' Trust Agreement, promptly after the Effective Date, the Creditors' Trustee, in consultation with the Creditors' Trust Advisory Board, will determine the fair market value as of the Effective Date of all Creditors' Trust Assets transferred to the Creditors' Trust, and such determined fair market value shall be used by the Creditors' Trust, the Creditors' Trustee, and the Creditors' Trust Beneficiaries for all U.S. federal income tax purposes, including for determining tax basis and gain or loss. The Creditors' Trustee shall file federal income tax returns for the Creditors' Trust as a grantor trust under Tax Code Section 671 and Tax Regulations section 1.671-4 and report, but not pay tax on, the Creditors' Trust's tax items of income, gain, loss, deductions and credits ("CT Tax Items"). The holders of Creditors' Trust Interests shall report such CT Tax Items on their federal income tax returns and pay any resulting federal income tax liability.

5.19.12    The CT Reserves. The Creditors' Trustee may establish one or more CT Reserves on account of Disputed Claims held by Creditors' Trust Beneficiaries. The amount of Net Creditors' Trust Proceeds held back in the CT Reserve(s) shall be equal to the amount of Net Creditors' Trust Proceeds necessary to satisfy the distributions to which the Creditors' Trust Beneficiaries holding Disputed Claims would be entitled if all such Disputed Claims were to be subsequently Allowed. The Creditors' Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Regulations section 1.468B-9 to treat the CT Reserve(s) as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the CT Reserve(s), with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the CT Reserve(s) as, when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved. The Creditors' Trust Beneficiaries shall be bound by such election, if made by the Creditors' Trustee, in consultation with the Creditors' Trust Advisory Board, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

5.19.13    Creditors' Trust Interests. The Creditors' Trust Interests will not be represented by certificates. The Creditors' Trust Interests will be transferable in accordance with

82

and circumstances that an extension is necessary for the purpose of the Creditors' Trust, the term of the Creditors' Trust may be extended for a finite period if (i) such extension is necessary to the purpose of the Creditors' Trust, (ii) the Creditors' Trustee receives an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the Creditors' Trust as a liquidating trust for U.S. federal income tax purposes, and (iii) such extension is noticed to the Creditors' Trust Beneficiaries within the six (6) month period prior to the Creditors' Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable. Upon dissolution of the Creditors' Trust, any remaining Cash on hand and other assets will be distributed to the Creditors' Trust Beneficiaries in accordance with the Creditors' Trust Distribution Orders.

5.19.16   Reorganized Debtors' Cooperation. The Reorganized Debtors and each employee, officer and director of the Reorganized Debtors shall be required to cooperate in all reasonable respects with the Creditors' Trustee's prosecution of the State Law Avoidance Claims and shall not take any action or omit from taking an action that could interfere with the investigation or prosecution of the Litigation Trust Causes of Action. The Creditors' Trustee shall have the right to seek relief from the Bankruptcy Court, including seeking an order of contempt of the Confirmation Order, if, in the Creditors' Trustee's judgment, the Reorganized Debtors or any employee, officer or director of the Reorganized Debtors fails to cooperate in accordance with the provisions of this Section.

5.19.17   Document Retention. The Reorganized Debtors shall preserve (at their cost) all records and documents (including all electronic records or documents) related to the State Law Avoidance Claims for a period of five (5) years after the Effective Date, or if any State Law Avoidance Claim has been asserted in a pending action, then until such later time as the Creditors' Trustee notifies the Reorganized Debtors in writing that such records are no longer required to be preserved. The Creditors' Trustee shall be permitted to use all such records and documents in connection with the investigation and prosecution of the State Law Avoidance Claims.

## ARTICLE 6   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1   Assumption and Rejection of Executory Contracts and Unexpired Leases.

6.1.1   On the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is an executory contract or unexpired lease that is included in the Global Contract Motion, (iv) is an executory contract or unexpired lease that is included in a pending motion to reject such executory contract or unexpired lease, (v) is a prepetition obligation to indemnify any target of any Litigation Trust Causes of Action or, (vi) is an executory contract or unexpired lease that is expressly excluded from the assumptions set forth in Section 6.3 hereto or is set forth on Exhibit 6.3 to be filed with the Debtor/Committee/Lender Plan Supplement or (vii) is an executory contract or unexpired lease that is set forth on Exhibit 6.3 of the Debtor/Committee/Lender Plan; provided, however, that the Proponents may make

84

executory contract or unexpired lease may otherwise agree.  In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the executory contract or unexpired lease at issue shall be deemed conditionally assumed by the relevant Debtor unless otherwise ordered by the Bankruptcy Court.

6.3     Assumption of Executory Contracts and Unexpired Leases.

On the Effective Date, each executory contract and unexpired lease other than those listed on Exhibit 6.3 to the Debtor/Committee/Lender Plan Supplement shall be assumed pursuant to section 365 of the Bankruptcy Code, and only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  As it relates to the Bridge Lender Plan, the Debtors (with the consent of the Proponents) and the Proponents reserve their rights to amend Exhibit 6.3 to the Debtor/Committee/Lender Plan Supplement, as applicable, to delete any unexpired lease or executory contract therefrom or add any unexpired lease or executory contract thereto at any time prior to the Confirmation Hearing.  Listing a contract or lease on Exhibit 6.3 of the Debtor/Committee/Lender Plan Supplement or the Assumption Schedule shall not constitute an admission by a Debtor, a Reorganized Debtor or the Proponents that such contract or lease is an executory contract or unexpired lease or that such Debtor or Reorganized Debtor has any liability thereunder.

6.4     Rejection Damages Bar Date.

If the rejection by a Debtor, pursuant to the Bridge Lender Plan, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor, or the properties of any of them, unless a Proof of Claim is filed and served upon counsel to the Debtors within thirty (30) days after service of the notice that the executory contract or unexpired lease has been rejected.

6.5     Compensation and Benefit Programs.

Except as set forth in Article III.C.6-III.C. 11 of the General Disclosure Statement and such other Employee Benefit Plans as may be disclosed in the Debtor/Committee/Lender Plan Supplement, the Reorganized Debtors shall continue to perform their obligations under all Employee Benefit Plans and all such Employee Benefit Plans shall be assumed by the applicable Reorganized Debtors; provided, however, that nothing in the Bridge Lender Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, causes of action, or other rights with respect to the interpretation, application or enforcement of any such Employee Benefit Plan or the payment of any Employee Benefit Claim, including the Reorganized Debtors' rights to amend, modify or terminate any such Employee Benefit Plan either prior to or after the Effective Date; provided further that any ~~benefits or awards to~~bonuses or equity-based compensation for any officer, director or employee that has been named as a defendant in the Creditors' Committee Directors, Officers, Employees and Shareholders Complaint shall not

86

MIAMI 889648 (2K)

receive such ~~benefits~~bonuses and/or ~~awards~~equity-based compensation and such ~~benefits~~bonuses and/or ~~awards~~equity-based compensation shall instead be placed in trust pending the resolution of the causes of action set forth in the Creditors' Committee Directors, Officers, Employees and Shareholders Complaint.   For the avoidance of doubt, nothing contained in the Bridge Lender Plan or in any postpetition or assumed contract shall obligate the Reorganized Debtors to indemnify or exculpate any director, officer or employee of the Tribune Entities in connection with any claims or causes of action brought against such parties and the Reorganized Debtors shall be prohibited from indemnifying or exculpating any current, former of future director, officer or employee of the Tribune Entities or any other Person in connection with any of the Litigation Trust Causes of Action or State Law Avoidance Claims.

6.6     Collective Bargaining Agreements.

Upon the Effective Date, any Collective Bargaining Agreement entered into by the Debtors that has not expired by its terms and is in effect as of the Effective Date shall be deemed to have been assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.   Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the survival, and/or the pertinent Debtor's assumption of the Collective Bargaining Agreements then in effect, except to the extent that such agreements have already been assumed prior to the entry of the Confirmation Order.   Upon the Effective Date, with respect to any Collective Bargaining Agreement entered into by the Debtors that has expired by its terms, the rights and obligations, if any, of the Reorganized Debtors with respect to such expired agreement shall not be affected by the Confirmation Order, and the Reorganized Debtors shall continue to have the same rights and obligations with respect to any such expired agreement as the Debtors had immediately prior to the entry of the Confirmation Order and any such rights and obligations of the Reorganized Debtors under any such expired agreement shall continue to be determined in accordance with applicable federal labor law.

6.7     Postpetition Contracts and Leases.

All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by such Debtors to the Reorganized Debtors, including any successor to any Reorganized Debtor after giving effect to the Restructuring Transactions, on the Effective Date.   For the avoidance of doubt, nothing contained in the Bridge Lender Plan or in any postpetition or assumed contract shall obligate the Reorganized Debtors to indemnify or exculpate any director, officer or employee of the Tribune Entities in connection with any claims or causes of action brought against such parties and the Reorganized Debtors shall be prohibited from indemnifying or exculpating any current, former of future director, officer or employee of the Tribune Entities or any other Person in connection with any of the Litigation Trust Causes of Action or State Law Avoidance Claims.

6.8     Termination of ESOP.

Upon the Effective Date, the ESOP shall be deemed terminated in accordance with its terms, and the amount of unpaid principal and interest remaining on the ESOP Note shall be forgiven pursuant to section 6.3 of the ESOP Loan Agreement by and between Tribune and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the

87

Sections 5.18.8 and 7.16.8 of the Bridge Lender Plan and other matters, (f) the procedures for changing an address of record pursuant to Section 7.6.2 of the Bridge Lender Plan and (g) such other matters as the Reorganized Debtors deem to be appropriate.

Dated: December +7, 2010

KING STREET ACQUISITION COMPANY, L.L.C.

By: _____
     Name: _____
     Title: _____

KING STREET CAPITAL, L.P.

By: _____
     Name: _____
     Title: _____

MARATHON ASSET MANAGEMENT, L.P.

By: _____
     Name: _____
     Title: _____

MIAMI 889648 (2K)