```
                  IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE



                                   )
IN RE:                             ) Chapter 11
                                   )
TRIBUNE COMPANY, et al.,           ) Case No. 08-13141 (KJC)
                                   )
                                   ) Courtroom 5
                                   ) 824 Market Street
_____Debtors._____  ) Wilmington, Delaware

                                      December 6, 2010
                                      2:00 p.m.



                        TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE KEVIN J. CAREY
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                      Sidley Austin LLP
                                  BY: JAMES CONLAN, ESQ.
                                  BY: KEVIN LANTRY, ESQ.
                                  BY: JAMES BENDERNAGEL, JR., ESQ.
                                  BY: KENNETH P. KANSA, ESQ.
                                  One South Dearborn
                                  Chicago, IL 60603
                                  (213) 896-6022

                                  Cole, Schotz, Meisel, Forman &
                                  Leonard, PA
                                  BY:  NORMAN PERNICK, ESQ.
                                  1000 North West Street
                                  Suite 1200
                                  Wilmington, DE 19801
                                  (302) 652-3131


ECRO:                             AL LUGANO

Transcription Service:            DIAZ DATA SERVICES
                                  331 Schuylkill Street
                                  Harrisburg, Pennsylvania 17110
                                  (717) 233-6664


Proceedings recorded by electronic sound recording; transcript
produced by transcription service
```

```
APPEARANCES:
(Continued)

For The Creditors Committee:   Landis Rath & Cobb
                               BY:  DANIEL B. RATH, ESQ.
                               919 Market Street Suite 1800
                               P.O. Box 2087
                               Wilmington, DE 19899
                               (302) 467-4400

                               Chadbourne & Parke LLP
                               BY:  DAVID LEMAY, ESQ.
                               BY:  ANDREW ROSENBLATT, ESQ.
                               BY:  CHRISTY RIVERA, ESQ.
                               BY:  THOMAS MCCORMACK, ESQ.
                               BY:  MARC ASHLEY, ESQ.
                               BY:  DOUG DEUTSCH, ESQ.
                               BY:  MARC ROITMAN, ESQ.
                               30 Rockefeller Plaza
                               New York, NY 10112
                               (212) 408-5100

                               Zuckerman Spaeder LLP
                               BY:  JAMES SOTTILE, ESQ.
                               1800 M Street
                               Suite 1000
                               Washington, DC 20036-5807
                               (202) 778-1800

For JP Morgan Chase:           Davis Polk & Wardwell
                               BY:  BENJAMIN KAMINETZKY, ESQ.
                               BY:  DONALD BERNSTEIN, ESQ.
                               BY:  DENNIS GLAZER, ESQ.
                               BY:  DAMIAN SCHAIBLE, ESQ.
                               450 Lexington Avenue
                               New York, NY 10017
                               (212) 450-4000

                               Richards Layton & Finger
                               BY:  ROBERT J. STEARN, JR., ESQ.
                               One Rodney King Square
                               920 North King Street
                               Wilmington, DE 19801
                               (302) 651-7612

For Great Banc:                Womble Carlyle
                               BY:  THOMAS M. HORAN, ESQ.
                               222 Delaware Avenue
                               Wilmington, DE 19801
                               (302) 252-4320
```

APPEARANCES:
(Continued)

For Merrill Lynch:                Potter Anderson & Corroon LLP
                                  BY: LAURIE SELBER SILVERSTEIN
                                  BY:  R. STEPHEN MCNEILL, ESQ.
                                  Hercules Plaza
                                  1313 North Market Street
                                  6th Floor
                                  Wilmington, DE 19801
                                  (302) 984-6000

For Wilmington Trust:             Sullivan Hazeltine & Allinson
                                  BY:  WILLIAM SULLIVAN, ESQ.
                                  4 East 8th Street, Suite 400
                                  Wilmington, DE 19801
                                  (302) 250-4357

                                  Brown Rudnick
                                  BY:  GORDON Z. NOVOD, ESQ.
                                  BY:  MARTIN SIEGEL, ESQ.
                                  Seven Times Square
                                  New York, NY 10036
                                  (212) 209-4800

For U.S. Trustee:                 Office of the U.S. Trustee
                                  BY:  DAVID KLAUDER, ESQ.
                                  844 King Street, Suite 2207
                                  Lockbox 35
                                  Wilmington, DE 19801
                                  (302) 573-6491

For DBTCA:                        McCarter & English LLP
                                  BY:  DAVID ADLER, ESQ.
                                  245 Park Avenue
                                  27th Floor
                                  New York, NY 10167
                                  (212) 609-6800

For Barclays Bank:                Edwards Angell Palmer & Dodge
                                  BY:  R. CRAIG MARTIN, ESQ.
                                  919 North Market Street
                                  15th Floor
                                  Wilmington, DE 19801
                                  (302) 777-7770

```
APPEARANCES:
(Continued)

For Aurelius Capital          Ashby & Geddes, P.A.
Management LP:                BY:  WILLIAM P. BOWDEN, ESQ.
                              BY:  AMANDA M. WINFREE, ESQ.
                              500 Delaware Avenue
                              P.O. Box 1150
                              Wilmington, DE 19899-1150
                              (302) 654-1888

                              Akin Gump Strauss Hauer & Feld
                              BY:  DANIEL H. GOLDEN, ESQ.
                              BY:  DAVID M. ZENSKY, ESQ.
                              BY:  PHILIP C. DUBLIN, ESQ.
                              BY:  KRISTINA M. WESCH, ESQ.
                              BY:  ABID QURESHI, ESQ.
                              One Bryant Park
                              New York, NY 10036
                              (212) 872-1000

For Credit Agreement          Young Conaway Stargatt & Taylor
Lenders:                      BY:  BLAKE CLEARY, ESQ.
                              The Brandywine Building
                              1000 West Street 17th Floor
                              P.O. Box 391
                              Wilmington, DE 19801
                              (302) 571-6600

                              Hennigan Bennett & Dorman LLP
                              BY:  JAMES O. JOHNSTON, ESQ.
                              BY:  JOSHUA M. MESTER, ESQ.
                              865 South Figueroa
                              Suite 2900
                              Los Angeles, CA 90017
                              (213) 694-1200

For Wells Fargo               Fox Rothschild LLP
As Bridge Agent:              BY:  JEFFREY M. SCHLERF, ESQ.
                              Citizens Bank Center
                              919 North Market Street
                              Suite 1300
                              P.O. Box 2323
                              Wilmington, DE 19899-2323
                              (302) 654-7444

                              White & Case LLP
                              BY:  SCOTT GREISSMAN, ESQ.
                              BY:  DAVID G. HILLE, ESQ.
                              1155 Avenue of the Americas
                              New York, NY 10036-2787
                              (212) 819-8200
```

```
APPEARANCES:
(Continued)

For Law Debenture:              Bifferato Gentilotti
                                BY:   GARVAN F. MCDANIEL, ESQ.
                                800 North King Street
                                Plaza Level
                                Wilmington, DE 19801
                                (302) 429-1900

                                Kasowitz Benson Torres &
                                Friedman LLP
                                BY:   SHERON KORPUS, ESQ.
                                1633 Broadway
                                New York, NY 10019
                                (212) 506-1700

For Step One Lenders:           Morris Nichols Arsht & Tunnell
                                BY:   DEREK ABBOTT, ESQ.
                                BY:   DANIEL B. BUTZ, ESQ.
                                1201 North Market Street
                                18th Floor
                                P.O. Box 1347
                                Wilmington, DE 19899-1347
                                (302) 658-9200

                                Bracewell & Guiliani LLP
                                BY:   EVAN FLASCHEN, ESQ.
                                Goodwin Square
                                225 Asylum Street Suite 2600
                                Hartford, CT 06103
                                (860) 256-8537

                                Arkin Kaplan Rice LLP
                                BY:   HOWARD J. KAPLAN, ESQ.
                                590 Madison Avenue
                                35th Floor
                                New York, NY 10022
                                (212) 333-0200
```

```
TELEPHONIC APPEARANCES:
For Debtor:                    Tribune Company
                               BY:  CHANDLER BIGELOW
                               BY:  DAVID ELDERSVELD
                               BY:  DON LIEBENTRITT
                               BY:  GARY WEITMAN
                               BY:  MICHAEL D. O'NEAL
                               (312) 853-7778

                               Sidley Austin
                               BY:  JILLIAN LUDWIG, ESQ.
                               BY:  CANDACE KLINE, ESQ.
                               BY:  DAVID MILES, ESQ.
                               BY:  BRIAN KRAKAUER, ESQ.
                               (312) 853-7030

For Bank of America:           O'Melveny & Myers
                               BY:  DANIEL CANTOR, ESQ.
                               BY:  EVAN JONES, ESQ.
                               (212) 326-2000

                               Bank of America
                               BY:  ESTHER CHUNG
                               (646) 855-6705

For Wilmington Trust           Camden Asset Management
Company:                       BY:  MARK HOLLIDAY
                               (503) 243-5000

For Angelo Gordon & Company:   Wilmer Cutler Pickering Hale &
                               Dorr
                               BY:  ANDREW N. GOLDMAN, ESQ.
                               (212) 230-8836

                               BY:  GAVIN BAIERA
                               (212) 692-0217

For EGI-TRB LLC:               Jenner & Block LLP
                               BY:  ANDREW VAIL, ESQ.
                               (312) 840-8688

For Citigroup:                 Paul Weiss Rifkind Wharton &
                               Garrison LLP
                               BY:  ANDREW LEVY, ESQ.
                               BY:  ANDREW GORDON, ESQ.
                               BY:  OKSANA LASHKO, ESQ.
                               BY:  ELIZABETH MCCOLM, ESQ.
                               (212) 373-3543

For Anna Kalenchits:           BY:  ANNA KALENCHITS
                               (212) 723-1808
```

```
TELEPHONIC APPEARANCES:
(Continued)

For JPMorgan Chase Bank:      BY:  KEVIN C. KELLEY
                              BY:  SAQUIB R. MIRZA
                              (212) 648-0427


For Morgan Stanley:           Weil Gotshal & Manges LLP
                              BY:  EVAN LEDERMAN, ESQ.
                              BY:  SHAI WAISMAN, ESQ.
                              BY:  JONATHAN POLKES, ESQ.
                              (212) 310-8948


For Barclays:                 Mayer Brown LLP
                              BY:  MICHAEL L. SIMES, ESQ.
                              BY:  AMIT K. TREHAN, ESQ.
                              BY:  JEAN-MARIE ATAMIAN, ESQ.
                              (212) 506-2607


For Kramer Levin:             BY:  DAVID E. BLABEY, JR., ESQ.
                              (212) 715-9100


For SuttonBrook Capital       BY:  CAROL L. BALE
Management:                   (212) 588-6640


For David & Kempner:          DK Partners
                              BY:  EPHRAIM DIAMOND
                              (646) 282-5841


For Aurelius Capital          Akin Gump Strauss Hauer & Feld
Management:                   BY:  DAVID A. KAZLOW, ESQ.
                              BY:  PHILLIP DUBLIN, ESQ.
                              BY:  JASON GOLDSMITH, ESQ.
                              BY:  LAURIE E. HUTCHINS, ESQ.
                              BY:  SHAYA ROCHESTER, ESQ.
                              (212) 872-1000

                              The Law Office of Lerman Senter
                              BY:  MEREDITH S. SENTER, ESQ.
                              (202) 416-6740

                              Aurelius Capital Management
                              BY:  MATTHEW ZLOTO, ESQ.
                              (646) 445-6518

For Jefferies & Company:      BY:  JUSTIN BRASS
                              (203) 708-5847


For Oaktree Capital           BY:  EDGAR LEE
Management:                   (213) 830-6415
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Miller Tabak Roberts        BY:  ANDREW M. THAU
Securities:                     (212) 692-5178

For David B. Thompson:          Gruss & Company LLC
                                BY:  DAVID B. THOMPSON
                                (212) 688-7526

For Alvarez & Marsal Inc.:      BY:  BRIAN WHITTMAN
                                (312) 601-4227

For Grey Wolf Capital:          BY:  JEFF ARMSTRONG
                                (914) 251-8264

For Arrowhawk Capital           BY:  ANDREW GU
Partners:                       (203) 413-7246

For Neil S. Losquadro:          Brigade Capital Management
                                BY:  NEIL S. LOSQUADRO, PRO SE
                                (212) 745-9758

For JPMorgan Chase Bank:        BY:  SHACHAR MINKOVE
                                (212) 834-7174

For Pryor Cashman LLP:          BY:  TINA MOSS, ESQ.
                                (212) 326-0421

For Tricadia Capital:           BY:  IMRAN AHMED
                                (212) 891-5013

For UBS Investment:             BY:  NEEL DOSHI
                                (203) 719-8723

For George Dougherty:           BY:  GEORGE DOUGHERTY
                                (312) 719-8723

For Silver Point Capital:       BY:  MATTHEW EHMER
                                (203)719-8723

For Bennett Management:         BY:  LUCY GALBRAITH
                                (203) 353-3101

For Arrowgrass Management:      BY:  ARIF GANGAT
                                (212) 584-1160

For Special Committee to the    Jones Day
Board of Directors:             BY:  DAVID HALL, ESQ.
                                (312) 269-4207
```

TELEPHONIC APPEARANCES:
(Continued)

For Great Bank Trust:              Morgan Lewis & Bockius LLP
                                   BY:  RACHEL MAUCERI, ESQ.
                                   (215) 963-5000

For Royal Bank of Scotland:        BY:  COURTNEY ROGERS
                                   (203) 897-4815

For DebtWire:                      BY:  JON BERKE
                                   (212) 686-2741

For Dow Jones:                     BY:  PEG BRICKLEY
                                   (215) 462-0953

For Soros Fund Management:         BY:  TED BURDICK
                                   (212) 320-5417

For Goldman Sachs & Co.:           BY:  SCOTT BYNUM
                                   (212) 902-8060

For Silvermine Capital             BY:  BRIAN C. CARLSON
Management:                        (203) 399-3018

For Michael Ching:                 Allen & Company
                                   BY:  MICHAEL CHING, ESQ.
                                   (212) 339-2431

For The Official Committee         Chadbourne & Parke LLP
of Unsecured Creditors:            BY:  DOUGLAS DEUTSCH, ESQ.
                                   BY:  HOWARD SEIFE, ESQ.
                                   (212) 408-5169

For Deutsche Bank:                 McCarter & English
                                   BY:  RODNEY GEOGHAN, ESQ.
                                   (973) 639-7908

For U.S. Department of             BY:  LEONARD GERSON, ESQ.
Labor:                             (202) 693-5615

For Chicago Fundamental            BY:  PETER GRUSZKA
Investment:                        (312) 416-4215

For Schulte Roth & Zabel:          Schulte Roth & Zabel
                                   BY:  ADAM HARRIS, ESQ.
                                   (212) 756-2253

For Nealesh Jhaveri:               Citadel Investment Group
                                   BY:  NEALESH JHAVERI
                                   (212) 651-7636

TELEPHONIC APPEARANCES:
(Continued)

For UBS:                        BY:  LAWRENCE LAWLER
                               (212) 821-5422

For Tribune Company:           Lazard Freres & Co., LLC
                               BY:  SUNEEL MANDAVA
                               (312) 407-6673

For Trade Claim Holders:       Andrew & Kurth LLP
                               BY:  ABHISHEK MATHUR, ESQ.
                               BY:  JEREMY RECKMEYER, ESQ.
                               BY:  PAUL SILVERSTEIN, ESQ.
                               (212) 850-2822

For Latigo Partners:           BY:  SCOTT T. MCCABE
                               (212) 754-1613

For Socal:                     Bracewell & Giuliani
                               BY:  SOHAM NAIK, ESQ.
                               BY:  ANDREW J. SCHOULDER, ESQ.
                               (212) 508-6171

For Merrill Lynch:             Kaye Scholer LLP
                               BY:  MADLYN PRIMOFF, ESQ.
                               (212) 836-7042

For EOS Partners:              BY:  MIKE J. SCHOLL
                               (212) 593-4046

For Katten Muchin Rosenman:    BY:  JOHN SIEGER, ESQ.
                               BY:  ANDREW L. WOOL, ESQ.
                               (312) 902-5294

For Law Debenture:             Kasowitz Benson Torres &
                               Friedman
                               BY:  MATTHEW STEIN, ESQ.
                               (212) 506-1717

For Contrarian Capital         BY:  JOSHUA TRUMP
Management:                    (203) 862-8299

1      WILMINGTON, DELAWARE, MONDAY, DECEMBER 6, 2010 2:00 P.M.

2              THE CLERK:  All rise.  Be seated, please.

3              THE COURT:  Good afternoon, everyone.

4              MR. LANTRY:  Good afternoon, Your Honor.  Kevin

5   Lantry on behalf of the debtors.  Your Honor, following up

6   where we were a week ago, I wanted to just apprise you of a few

7   things that have been gone on between the parties addressing

8   the disclosure statement, responsive statements, sort of parts

9   -- Agenda 1 through 5.

10             Once we take care of that, which hopefully will not

11  take long, then we'll finally move to Item 6 on the agenda, the

12  solicitation process.  The solicitation issues, I think, could

13  be divided into two pieces; one the straight bankruptcy

14  solicitation balloting process and the other the contours of

15  what sort of litigation discovery, expert stuff goes on between

16  now and the confirmation hearing.  So that's kind of how we

17  would propose to handle it unless you feel otherwise?

18             THE COURT:  I don't.

19             MR. LANTRY:  On what has happened regarding the

20  remaining issues in terms of disclosure statement and

21  responsive statements, on Tuesday of last week the debtors sent

22  out a notice to all of the competing plan proponents by email

23  saying let's, after everybody files everything on Wednesday

24  night as you directed, let's make sure that by Thursday night

25  we identify any remaining issues that are out there that

1   somehow cause us to believe that what was filed on Wednesday

2   night isn't adequate.

3            In compliance with that, a number of emails were

4   exchanged on 5:00 p.m. on Thursday and we have essentially

5   resolved now everything except two issues.  So let me just kind

6   of quickly go by.  The noteholders had a number of changes they

7   wanted to our disclosure statement and our responsive

8   statement, that is the debtors' committee's lenders', and we

9   have complied with those changes in what we filed, I believe,

10  last night.

11           What remains in dispute is the debtors' committee's

12  and lenders asked for some additional changes to the noteholder

13  responsive statement, and although they made some of those

14  changes in what was filed with you on Friday, there are others

15  that still are out there, and particularly it was we were still

16  asking for a bit more of a calming down, if you please, a

17  moderating language that didn't yet occur.

18           The other remaining item has to do with the Step One

19  Lenders' responsive statement.  Although we dialogued with them

20  on Thursday and Friday, what they ultimately submitted on

21  Friday still has six new paragraphs from what they had

22  submitted for the hearing a week ago and that troubles us even

23  though they have complied with some of our requests.

24           If you'd like for us to address those two remaining

25  issues, in terms of the responsive statements, I think that

1   would wrap up everything up.  I know you had said you were also

2   going to look at the responsive statements; you may have a few

3   items that you'd want to raise first.  I don't know.

4           THE COURT:  Let me hear what the parties have to say

5   first.

6           MR. LANTRY:  Okay.  Your Honor, first regarding the

7   Step One Lender responsive statement, Jim Johnston from our

8   team will be addressing our remaining concerns on that.

9           THE COURT:  Okay.

10          MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

11  Johnston of Hennigan Bennett and Dorman on behalf of Angelo

12  Gordon and Oaktree Capital Management.  As before, we're taking

13  on the issues with respect to the Step One responsive

14  statement, because there's really two things in there that are

15  near and dear to the interests of my clients.

16          Your Honor, I don't think when we were here last

17  Monday and you ruled on the disclosure issues that you intended

18  that ruling to essentially be the start of a negotiation or

19  that you envisioned an iterative process regarding disclosure

20  issues, but that seems to be the road the Step One proponents

21  want to take us down.  Last time around you asked for a very

22  limited set of changes to be made to the responsive statements

23  and you asked the parties to essentially moderate their

24  language.  I don't think you asked for wholesale new argument

25  to be added to the responsive statements, but that's what the

1  Step One proponents have done.

2          Specifically, they've added three-quarters of a page

3  of new text addressed to "the general unsecured creditors of

4  the subsidiary debtors" and that's the new text carrying over

5  from Page 1 to 2.  And then they added a brand new section, V,

6  on Pages 10 through 12, with two pages of argument regarding

7  what they call the alleged lack of transparency of Oaktree,

8  Angelo Gordon and JPMorgan's Holdings, as a barometer for their

9  motivations.

10         Your Honor, if allowed to stand, this new advocacy

11 opens the door, it actually cries out for a response by the

12 senior lenders.  And we certainly would ask for the chance to

13 respond if Your Honor permits the new arguments.  And then

14 really, where would it end?  Would the Step One proponents want

15 to respond to our response, who would get the last word?  I

16 think Your Honor set up a fair process the last time around and

17 last Monday we got to a set of documents on which you ruled.

18 Opening the door to new arguments stands to get us off the

19 tracks really before we get out of the station.

20         We definitely do have substantive objections to the

21 new language as well, even in the modified version that the

22 Step One proponents filed last Friday.  I'll give you a couple

23 of examples.  The statement directed to the subsidiary trade

24 creditors at the beginning of the statement warns that the

25 debtor committee lender plan puts a $150 million cap on

1   payments to subsidiary trade, whereas they say, "The Step One

2   Lender plan offers a much higher cap of $225 million if the

3   general unsecured creditors and Step One Lenders accept the

4   plan."

5           Then they warn that if subsidiary trade claims total

6   $225 million trade creditors may only receive 67 percent under

7   our plan, whereas they say they would still receive a 100

8   percent recovery under the Step One Lender plan.  It nowhere is

9   there a mention of the fact that the debtors actually estimate

10  that trade claims will be far less than $150 million and

11  perhaps as low as $85 million.

12          Nowhere do they point to the detailed analysis in

13  the general disclosure statement on that very point, which Your

14  Honor will recall, we discussed last Monday.  Nowhere do they

15  mention that in all likelihood the treatment of subsidiary

16  trade, therefore under the debtor committee lender plan, will

17  be identical to the treatment of subsidiary trade under the

18  Step One Lender plan.  I'd submit that as a result, this new

19  dialogue that they want to have with trade creditors is

20  incomplete and misleading.

21          Turning to their new attack on the "motivations" of

22  my clients, I think it's similarly flawed.  The Step One

23  proponents claim that JPMorgan, Oaktree and Angelo Gordon

24  "refuse to disclose who they are advocates for", but that's

25  just false.  Our plan, our disclosure statement and our

1 responsive statement make it clear that the senior lender

2 proponents are advocates for the senior lenders as a whole, all

3 of them, and not just a parochial subset like the Step One

4 proponents.

5          THE COURT:  Well, point me directly to the language

6 that you're talking about.

7          MR. JOHNSTON:  Yes. It's in Section 5, let's see on

8 the version I am looking --

9          THE COURT:  I'm looking at the blackline that was

10 overnighted to me this weekend and my Roman V starts not quite

11 half the -- halfway down the page on Page 10.

12          MR. JOHNSTON:  On Page 11, right after the block

13 quote, first sentence.  That's where they say that we refuse to

14 disclose exactly who we are advocates for.

15          THE COURT:  And it's not blacklined, so --

16          MR. JOHNSTON:  That, Your Honor, there are actually

17 two documents that you'll need to review.  The blackline they

18 filed on Wednesday, the entirety of Section 5 is brand new.  I

19 believe what you're looking at then is a subsequently modified

20 version that they filed on Friday, which shows revisions to the

21 revisions.

22          THE COURT:  Okay.  Okay.  You're right, I am.

23          MR. JOHNSTON:  So everything under Roman Numeral V

24 is new -- was not in the document that we were discussing last

25 Monday.

1        THE COURT:  I see.

2        MR. JOHNSTON:  And that's our fundamental problem.

3   This is brand new advocacy that we didn't have a chance to

4   comment on, respond to and the like last time around.

5        In addition to what we think is an unfair

6   characterization of our motivations, and actually an inaccurate

7   description of who we are advocates for, this new responsive

8   text, after complaining about non-disclosure of my clients'

9   specific holdings and failing to note that Your Honor last time

10  overruled their request that we disclose those holdings, the

11  proponents then proceed to speculate about those holdings

12  anyway under the old information and belief.

13        Not only is this inappropriate, the speculation is

14  wrong, and it's as if they're trying to force us to disclose

15  the information that Your Honor said we don't have to disclose

16  in order to correct their unfounded speculation.  I'd submit

17  that it should go without saying that that's not appropriate.

18        And finally, it just -- this new text mis-describes

19  our plan.  The Step One proponents proceed to attack what they

20  call "the purported settlement between Step One Lenders and

21  Step Two Lenders under the debtor committee lender plan."  But

22  that's mystifying because there is no such settlement in our

23  plan.  As we discussed last week, our plan allows both the Step

24  One and the Step Two senior loan claims and there's no

25  settlement between Step One Lenders and Step Two Lenders.  This

1   is just something they made up as a straw man to attack and it

2   misleads senior lenders into thinking that our plan does

3   something that it doesn't do.

4          So for all these reasons, Your Honor, I'd ask that

5   you strike the two new argument sections of the Step One

6   responsive statement.  If you decline to do so, I'd ask that

7   you order the Step One proponents to revise their statement to

8   correct the inaccuracies and misleading text and that you

9   permit us to revise our statement to respond to this new

10  argument.

11         THE COURT:  The very exercise that you argue again.

12         MR. JOHNSTON:  Precisely.

13         THE COURT:  Thank you.

14         MR. JOHNSTON:  Thank you.

15         MR. FLASCHEN:  Your Honor, Evan Flaschen of

16  Bracewell and Giuliani for the Step One Lenders.  In the big

17  picture these are responsive statements, these are advocacy

18  statements, these are not to be disclosure statements

19  themselves.  Everything counsel has referred to is quite

20  accurately and extensively addressed in their disclosure

21  statement as well as ours.

22         Why do we have new stuff?  First, to clarify why

23  there are changes between Wednesday and Friday, that was to

24  reflect comments they gave to us, so we made changes to

25  accommodate what they asked.  For example, we just heard that

1  the description about the Oaktree, Angelo Gordon and JPMorgan

2  does not say the Court didn't require them to disclose their

3  separate holdings.  We do say that at their request.  It's

4  right in the language, I think counsel mentioned it.

5          More generally, these are not two brand new

6  arguments created out of whole cloth.  We did not have them in

7  our statements filed prior to the last hearing because we all

8  filed our responsive statement at the same time.  In the debtor

9  responsive statement they raised our treatment of the general

10  unsecured creditors.  It's the first time they had done that,

11  so we could not have changed ours then because it was at the

12  same time.

13          And one does get iteration, I understand that, but

14  we do believe our statement about the trade is 100 percent

15  accurate.  Their plan does not guarantee a full payment to

16  unsecureds.  Ours --

17          THE COURT:  It does based upon certain assumptions.

18          MR. FLASCHEN:  It does, and that's why this is an

19  advocacy rather than disclosure.  Their disclosure is clear,

20  counsel in court said this is not a guarantee, read their

21  disclosure statement.  It says in length, estimate is between

22  whatever it is, 80 and 120.  I suspect their responsive

23  statements say the same thing.  I don't think we need to repeat

24  what they have already disclosed several times.

25          The numbers, that's straight math.  I'm not sure how

1  they can object to that.

2          I just don't see what these truly factual statements

3  do that harm them so much that they need to respond.  If they

4  can find something that is factually in error in any of those

5  sentences, and we did make changes at their request, I will be

6  glad to change those factual errors.

7          THE COURT:  Anything further?

8          MR. FLASCHEN:  On the second part, we had not put

9  anything in our responsive statement as to the holdings of the

10 banks, vis a vis their Step One and Step Two positions for the

11 precise reason that that was up for debate at the last hearing.

12 It had not yet been decided whether they would disclose their

13 separate holdings.  We even filed a disclosure statement

14 objection to that effect and this Court was to resolve that.

15         We then, we believe, state facts, including the

16 second sentence, the Court ruled that they did not have to

17 disclose their separate statement.  We then quoted their own

18 language and this goes to the heart of our arguments -- and

19 I'll let you read before I continue.

20         THE COURT:  I've read it.

21         MR. FLASCHEN:  Okay.  There are two aspects to what

22 their plan is proposing as to the senior lenders.  One is

23 settlement of senior lenders, vis a vis, the estate -- the LBO-

24 related causes of action.  Separate is a resolution of what we

25 call the sharing provisions dispute.  They keep telling us this

1  will be decided in this Court and we're glad to hear that, but

2  the sharing --

3          THE COURT:  Well, that makes one of us.

4      (Laughter)

5          MR. FLASCHEN:  The sharing provisions dispute, as

6  they have interpreted it, says the Step Two Lenders get

7  everything they could want under the sharing provision.  It

8  says the Step One Lenders do not get everything they could

9  want.  One would find it hard to believe any Step Two Lender

10 would not be motivated to agree to a settlement that gives the

11 pro rata sharing even though their exposure is

12 disproportionate.  It is only Step One Lenders who might object

13 to that.

14         Our point here is, they stated you should know who

15 the plan proponents -- whose interest they have at heart.  And

16 our answer is maybe they have all senior lenders at heart, but

17 Step One and Step Two aren't the same.  Just tell us if you

18 have one Step One interest at heart.  We don't understand the

19 big deal.  We know they don't have to put it in the disclosure

20 statement, we're not saying that.

21         In saying we're reduced upon information and belief.

22 Yes, we are reduced to what the market gossip is about their

23 positions because they won't tell us.  They are trying to cram

24 through on Step One Lenders a settlement, which we think it

25 primarily controls Step Two debt.  We'd be delighted for them

1  to say, you know, this is way off.  We're actually two-thirds

2  of the Step One, you guys are not representative of the Step

3  One Class.  They have never said that.

4         I looked through it again.  We made some corrections

5  that they asked us to make, even though we did not think they

6  were incorrect.  Each other statement is either a statement of

7  fact or a quotation of counsel.  Again, this is an advocacy

8  piece.  This is not the disclosure, and even so we took their

9  comment to tell people you said they did not have to disclose

10  as between the two.

11         So we welcome any comments as to inaccuracy of the

12  statements.  We do think the statements are entirely

13  appropriate.  People who are saying they are settling on your

14  behalf, they should tell you what they hold of your debt.

15  Thank you, Your Honor.

16         THE COURT:  Thank you.

17         MR. LANTRY:  And, Your Honor, with regard to our

18  remaining concern about the Aurelius responsive statement,

19  David LeMay is going to address those concerns.

20         THE COURT:  All right.

21         MR. LEMAY:  Your Honor, good afternoon.  David LeMay

22  from Chadbourne and Parke for the Official Committee of

23  Unsecured Creditors.  I am going to address the Aurelius issue.

24  I don't have any further comment on the argument that's just

25  been had, I just wanted to make sure that the Court wants to

1   hear everything before deciding anything before I launch in?

2          THE COURT:  People like that usually.

3          MR. LEMAY:  Okay.  When we were together last

4   Monday, Your Honor, there was an extensive hearing and at the

5   end of that though the Court resolved most of the issues that

6   were outstanding, gave precise directions on many of them, and

7   also left the parties with a little bit of a think piece.  The

8   Court mentioned that the tone of the responsive statements

9   should be reexamined by each party and should be moderated and

10  that parties would be well advised to do so.  And we certainly

11  thought that was good advice and the Court set Wednesday at

12  5:00 p.m. as the time for people to evince that moderation with

13  new responsive statements.

14          We heard the Court's direction, and although we

15  thought our responsive statement was a pretty moderate piece to

16  begin with, we did do a little bit of tinkering to it and we

17  took out of it one sentence that went to the issue of Aurelius'

18  motivations.  I tried to make that more neutral and I'm happy

19  that there are no further complaints about our responsive

20  statement.  And we probably thought -- and I suppose maybe

21  everybody thought -- that others would do the same, but of

22  course the principal document that is the subject of this

23  debate about tone is the personal appeal to Tribune's non-LBO

24  creditors of Mr. Brodsky, the apparent chairman of Aurelius.

25  And we had hoped that with a little bit of time, and perhaps a

1  little less coffee, that they would moderate their responsive

2  statement.

3          And so we were slightly surprised when, on Wednesday

4  and then subsequently on Friday, revisions came in that really

5  with the most insignificant revisions and the most

6  insignificant and immaterial changes, really preserved, almost

7  in whole cloth and certainly with respect to the few issues we

8  cared about in whole cloth, all of the invective and all of the

9  accusations and all of the motivation directed rhetoric that

10  was embodied in the original document.

11          In fact, you know, really instead of substantive set

12  of changes designed to moderate, I think we got -- and in fact

13  the Court got -- an answer that came from a roman judge about

14  2,000 years ago -- it wasn't Marcus Aurelius though -- and the

15  answer is qoud scripsi, scripsi; what I have written, I have

16  written.  And we just don't think that, Your Honor, is correct.

17  We don't think it's responsive to the Court's directions at the

18  last hearing, we think it remains overly hyperbolic and we

19  think it's improper.

20          So that raise --

21          THE COURT:  Give me --

22          MR. LEMAY:  I'm sorry, Your Honor.

23          THE COURT:  Give me some specific examples of what

24  you mean.

25          MR. LEMAY:  Well, we had given -- we had given -- we

1   didn't decide the entire tenor of the document.  We had proved

2   Aurelius with a few sentences that we asked them to strike, but

3   I'll quote a few of those.  "Aurelius believes that the

4   committee and its counsel riddled with conflicts and have

5   provided cover for the LBO lenders for much of this bankruptcy

6   case."

7           THE COURT:  Tell me where you are.

8           MR. LEMAY:  Oh, I'm sorry, Your Honor.  That's

9   disgraceful of me.

10          THE COURT:  That's okay.

11          MR. LEMAY:  Page 2 of Mr. Brodsky's letter.  It's

12  about in the middle of the page, a paragraph beginning, "The

13  creditors committee was no substitute for bondholders in those

14  negotiations."

15          THE COURT:  I'm there.

16          MR. LEMAY:  Okay.  So picking up with that first

17  sentence, which is offensive, but nevertheless we weren't

18  really complaining about it, the next sentence,

19              "Aurelius believes that the committee and its

20              counsel are riddled with conflicts and have provided

21              cover for the LBO lenders for much of this

22              bankruptcy case.  It is Aurelius' view that most of

23              the committee members were heavily influenced to

24              support the debtor committee lender plan in return

25              for an increased or full recovery, and as a result

1          had little or no skin in the game."

2          It goes on with new language to suggest that of the

3    five members of the committee, who are neither LBO lenders nor

4    representatives, four will have their claims paid in full or

5    reinstated with the unstated, but very real, sort of subtext

6    that that was the reason why they're supporting the plan.

7    Continuing on a couple sentences further toward the end of that

8    paragraph,

9          "Despite our repeated requests, and notwithstanding

10         the committee's subsequent unpersuasive responsive

11         statement, the committee has failed to provide a

12         substantive rational for endorsing the debtor

13         committee lender plan, especially in light of the

14         Examiner's report."

15         Now, Your Honor, those are just specific instances

16   of a document that remains extraordinarily hyperbolic,

17   continuing with the apocalyptic rhetoric of good versus evil,

18   continuing to present this as though it were something other

19   than an economic contest between -- in this case, economic

20   investors who looked at a situation and entered it.  So that

21   would lead me, Your Honor, to ask the question, what should the

22   Court do?  And there are three options.

23         I suppose you could send Aurelius and its principal

24   back and give them a pen and ask them to rewrite their

25   statement.  I --

1              THE COURT:  I've done that already.

2              MR. LEMAY:  You've done that already and so I won't

3    carry on.  The Court could do it itself.  We don't think that's

4    a good idea.  I don't see why a very, very busy federal judge

5    should become the copy editor for a litigant.

6              THE COURT:  Well, I agree with you, not necessarily

7    for that reason, but for the reason I think I had alluded to

8    earlier, and that is I do not in any way wish to give the

9    Court's imprimatur to the advocacy pieces here.

10             MR. LEMAY:  Right.

11             THE COURT:  And I have decided -- and I guess re-

12   decided as I looked through these materials this weekend, not

13   to take a -- I guess I'll call it an affirmative exercise --

14   undertake an affirmative exercise of telling parties what they

15   should say, but I am prepared to tell them what they should not

16   say.

17             MR. LEMAY:  All right.  So the third thing I think

18   Your Honor could do, and this is what I would advocate, take

19   Mr. Brodsky's letter and eliminate it from the package and that

20   does no harm to Aurelius or anyone else.  There remains the

21   bondholder responsive statement, it really puts everybody on

22   the same footing.  There is no personal appeal for Mr. Oaktree

23   or Mr. Angelo Gordon or for Mr. Diamond of JPMorgan Chase, or

24   from any member of our constituency.  It would put all of the

25   principal plan proponents on the same footing.  Everyone would

1  have their own responsive statement.  We only have one small

2  quarrel with the responsive statement that was submitted by

3  Aurelius and its co-proponents.

4        And so what we would suggest, Your Honor, is that

5  Mr. Brodsky's letter simply be, in effect, vetoed in its

6  entirety.  There really has been an opportunity to work on it.

7  And then we could go out with four responsive statements and

8  they would all look the same and there would be no quotes from

9  Edmund Burke and there would be no appeals to decency and there

10  would be something approaching the kind of rhetoric that one

11  expects in a judicial proceeding.

12        That said, Your Honor, there is one statement, which

13  is in fact a carryover and a paraphrase, or perhaps even a

14  quote, from the improper language in Mr. Brodsky's letter that

15  did make it into the responsive statement itself.  It shows up

16  on Page 5 of the Aurelius -- of the bondholder proponent's

17  responsive statement.  It's at the end of the first full

18  paragraph of Page 5 of the most recent blackline -- it's

19  actually two sentences because they added one.  It's up toward

20  the top, I can read the couple sentences that I think should go

21  out for the same reasons I previously --

22        THE COURT:  Go ahead.

23        MR. LEMAY:  -- described.  It says -- and you've

24  heard this before -- "The proponents believe this settlement,

25  pursuant to which general unsecured creditors received an

1  additional $73 million in recoveries, was done to influence the

2  committee's support for --"

3          THE COURT:  Heavily influence.

4          MR. LEMAY:  I'm sorry, Your Honor?

5          THE COURT:  Heavily influence.

6          MR. LEMAY:  Heavily influence, I apologize.

7              "Heavily influence the committee's support for and

8              their agreement to become a co-proponent of the

9              debtor committee lender plan to illustrate of the

10             five members of the committee who are neither an LBO

11             lender, nor a representative of the LBO notes, four

12             will have their claims paid in full or reinstated

13             under the debtor committee lender plan."

14         There are a million criticisms I could make of that

15  statement.  I've made many of them.  The fact that someone's

16  claim is being reinstated because they have an executory

17  contract is simply a commentary on the fact that that contract

18  is a valuable asset of the debtors' and I don't think any of

19  the plans, including the plan filed by the bondholders, for

20  example, calls for the wholesale rejection of valuable

21  executory contracts that they need to run the business.

22         THE COURT:  Is the statement contained in the last

23  sentence of that paragraph factually accurate?

24         MR. LEMAY:  The statement standing in and of itself

25  is not factually inaccurate or -- okay, I'll answer it the way

1    you asked it, is factually accurate.  Just that four of the

2    five members would, under our plan, have their claims fully

3    paid or reinstated, yes.

4              THE COURT:  Okay.

5              MR. LEMAY:  And that's all I have, Your Honor.

6              THE COURT:  Thank you.

7              MR. LEMAY:  Thank you.

8              MR. GOLDEN:  Good afternoon, Your Honor.

9              THE COURT:  Good afternoon.

10             MR. GOLDEN:  Daniel Golden, Akin Gump Strauss Hauer

11   and Feld, counsel for Aurelius Capital Management on behalf of

12   the noteholder plan proponents.  Your Honor, just before I

13   start, I wanted to make sure that you had -- and I think you

14   do, the document -- the responsive statements, which contains

15   two parts, the Brodsky letter and the responsive statement

16   itself that we filed on December 3?

17             THE COURT:  Well, let's put it this way, I don't

18   know what I have, but I'll tell you what I reviewed.

19             MR. GOLDEN:  Okay.

20             THE COURT:  And that was that two-part document that

21   was in the binder that was overnighted to me this weekend and

22   which I received on Saturday.

23             MR. GOLDEN:  I could tell you, Your Honor, if --

24   well --

25             THE COURT:  It's a blackline -- the letter begins

1  with a blackline dated December 3rd.

2          MR. GOLDEN:  Yeah.  Can I just approach just to make

3  sure?

4          THE COURT:  Certainly.

5          MR. GOLDEN:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7          MR. GOLDEN:  Your Honor, what I've handed up -- and

8  I think you may have had it in the binder, but just to be sure

9  -- is a cumulative blackline from the original version of the

10  responsive statement, all the way through the changes we made

11  on Friday, December 3rd, and I'll begin.

12          Your Honor, I'd like to make a couple of preliminary

13  points right before I get to the Brodsky letter itself.  Both

14  Aurelius and its co-proponents for the noteholder plan did, in

15  fact, carefully listen -- attend and carefully listen to the

16  hearing last Monday.  And we understood, I think, quite well

17  the Court's directives.  Based upon Your Honor's guidance and

18  direction, Aurelius and its co-plan proponents filed on

19  December 1st -- timely filed, I'll say, because we're the only

20  ones who did actually timely file the documents, their

21  respective amendments to the plan, specific disclosure

22  statement and responsive statement.

23          Even prior to the deadline for filing our amendments

24  on December 1, we received a missive from the creditor's

25  committee, not making suggestions as to how we should change

1  our documents, but in fact, it was a direction as to how we

2  must change our documents in order to comply with Your Honor's

3  rulings of November 29th.   We did, as I say, file a revised

4  responsive statement that contains two parts, the Brodsky

5  letter, which I'll get to, and the more traditional responsive

6  statement, if now responsive statements are traditional.

7       We filed those on December 1.   We thought that they

8  were compliant with Your Honor's rulings, but we got a further

9  complaint, this time from the creditor's committee, saying that

10 based upon the missive we had received from the committee, the

11 debtors didn't believe that our December 1 filing was compliant

12 and they asked us to go back.   We, in fact, disagreed with that

13 view, but we looked at our letter again, primarily the Brodsky

14 letter, and we did file a revised version on December 3.

15      And just before I get to the letter and changes we

16 made, I do want to make a couple of comments about the author

17 of the Brodsky letter.   He is not the apparent chairman of

18 Aurelius Capital Management, as Mr. LeMay continues to suggest,

19 he is the chairman.   If there is any doubt about that fact, I

20 will demonstrate it to Mr. LeMay's satisfaction.

21      Mr. Brodsky is a lawyer by training.   He practiced

22 over 16 years as a bankruptcy lawyer, rising to the level -- or

23 to the status of co-head of Kramer Levin's financial

24 restructuring department.   Starting in 1994, he started to work

25 for a financial institution and then a second one and then in

1   2006 he founded Aurelius Capital Management.  Mr. Brodsky is a

2   serious professional, he takes his job seriously, he doesn't

3   make comments lightly or glibly.  And I can represent to the

4   Court that Mr. Brodsky believes in every sentiment contained in

5   his letter, including every word contained in the letter.  He

6   does not believe that there's a factual inaccuracy in the

7   letter.  He does not believe that the sentiments are

8   hyperbolic, as Mr. LeMay has suggested.

9            We worked hard, in light of Your Honor's rulings on

10  11/29, to moderate, if you will, what seemed to be the buzz

11  words that most angst the creditor's committee and the debtors

12  and the lenders, and we'll go through that in a minute, but I

13  do want to leave the Court with the notion that Mr. Brodsky has

14  taken this letter seriously, he did not do it as a joyride.  He

15  believes in the sentiments expressed and he believes further,

16  Your Honor, that as the largest pre-LBO holder in this case, it

17  is absolutely appropriate, especially as a counterpoint to the

18  positions advocated by the debtors, the lenders, the creditor's

19  committee, that he be able to tell his version, his view of the

20  current controversy, especially because -- and I think Mr.

21  LeMay made a mistake in counting, there are not four responsive

22  statements, because the debtors' lenders' creditor's committee

23  themselves have three responsive statements, we have one

24  responsive statement, plus the Brodsky letter, the Step One

25  Lenders have a responsive statement, and the Bridge Lenders

1  have a responsive statement.

2          Your Honor, I do want to now turn to the letter

3  itself.  There is no doubt in my mind that we have moderated

4  the points.  You are looking -- and I think most people have it

5  -- at a color-coded version where the red is deleted language.

6  So in the very first paragraph we say -- we changed the word to

7  extort to extract.  All of these are couched in terms of

8  Aurelius' belief.

9          At the top of Page 2 we delete the language where we

10  said the Examiner's report put an end to 20 months of cover up,

11  we deleted that language.  We deleted, at the request of the

12  Jenner and Block attorney, the reference to Sam Zell.  We

13  deleted the reference to Zell's associates, including the chief

14  restructuring officer and a member of the Tribune's executive

15  committee.  The end of that paragraph we referenced the last

16  best opportunity to prevent, rather than to cheat creditors,

17  from receiving their just recoveries.

18          And the two paragraphs below this -- and this is

19  obviously that paragraph the most offends the creditor's

20  committee -- we changed the language --

21          THE COURT:  Apparently even more than the Bonnie and

22  Clyde analogy.

23          MR. GOLDEN:  Apparently, because that's the one

24  thing they've never actually picked on.  Where we said,

25  "Effectively had their votes bought" we changed that to heavily

1  influenced to support the debtors' and creditor's committee's

2  plan.  Your Honor, the facts are the facts.  I am not making

3  any of this up.  All this Court needs to do is to go back to --

4  it's a public document, what the recoveries were under the

5  first settlement agreement arrived at through the mediation

6  that was proposed and supported by the debtors, Oaktree, Angelo

7  Gordon, but not the creditor's committee.

8          Under that settlement proposal, the parent gucks

9  received a recovery of 23.38 percent in cash plus trust

10 interest.  Under the current version of the plan, which now has

11 -- is supported by the creditor's committee, the parent gucks

12 are receiving either 32.73 percent cash plus trust interest, or

13 35.18 percent all cash.  That's the facts.  I'm not making that

14 up.

15         Under the same Step One or term -- I'm sorry, not

16 Step One, first term sheet, the subordinated -- the subsidiary

17 gucks received 10 cents in cash if their class rejected, 50

18 cents in cash if their class approved.  That was before the

19 committee signed on.  Now the committee signed on, what are the

20 subsidiary gucks get under the plan?  They get 100 cents in

21 cash.  They may not like these facts, but they're not wrong,

22 they're not inaccurate, and it is our view that those change in

23 circumstances are what heavily influenced the committee's vote.

24         It is also a fact, as Mr. LeMay has now advised the

25 Court, that four out of the five non-LBO, non-LBO lender are

1  receiving under the plan either payment in full or having their

2  claims reinstated.  There's no inaccuracy there.  Frankly, Your

3  Honor, I don't think they like the fact that somebody has the

4  gall to bring these facts to somebody's attention.  Well, this

5  case is all about ultimately approving the settlement.  I've

6  said that probably 20 times and you'll probably hear me say it

7  again.

8           If we're not misleading the public, if we're not

9  telling something that's not true, and we're not using overly

10  hyperbolic terms anymore, what could be wrong with Mr. Brodsky

11  having the ability to send out this letter?  It's not

12  misleading anybody, it's not telling an untruth, it's not

13  prerogative.  Even if it once was, it no longer is in its

14  current state.  We worked hard to get this letter to its

15  current form.  Mr. Brodsky believes in the letter, he believes

16  it's true.  I don't see a reason in the world that Your Honor,

17  especially without the Court's imprimatur, would have a problem

18  in allowing this letter to go out.

19           And, Your Honor, unless you have any questions,

20  that's all I have to say.

21           THE COURT:  I don't, but I'd like you to remain at

22  the podium.

23           MR. GOLDEN:  Certainly.

24           THE COURT:  I am going to exclude this letter from

25  inclusion in the package and I'll tell you why, because I think

1  there are reasons to do so.  I don't disagree, Mr. Golden, that

2  the letter was moderated somewhat as a result of my

3  instruction, but you know what -- well, it's apparent to me

4  that you knew exactly what you were doing and that you had to

5  know that it didn't go far enough and I'll give you some

6  examples.

7          You know, the Bonnie and Clyde reference is one of

8  them.  The committee has indicated the provision on Page 2,

9  where Aurelius says it believes the committee and its counsel

10  are riddled with conflicts and provided cover for the LBO

11  lenders.  You know, later on under the bullet points, ask

12  yourself this, if the settlement were fair, would the LBO

13  lenders need to hold Tribune hostage in order to procure it.

14  The following page, two-thirds of the way down the page, last

15  sentence in the paragraph,

16          "As long as one side to a dispute feels it can do

17          better through high-handed tactics, abusive power

18          and conflicts of interest than it can on the merits

19          of this position, that side will do exactly what has

20          transpired here."

21          I don't finish the sentence.  I could pick out other

22  examples, and I noted them as I went along, but that's enough.

23  This is the micro decision on one issue.  I did read, by the

24  way, the other part of the responsive statement.  I thought it

25  was pretty good actually and I think it fairly conveys the

1    position of that plan proponent, including even the offending

2    language the committee still doesn't like in that one.  I'm

3    inclined to leave it in there, but we're at a place now in a

4    situation in which, much to my dismay, Mr. LeMay indicated at

5    the last hearing he thought we had a four-ring circus going on

6    here.  Now, I know he didn't intend any insult to the Court,

7    but in a way it was a cry to keep in as orderly a process as

8    possible the resolution of four competing plans, and that's

9    what I intend to do.  And one way I intend to do that is to

10   have the parties listen to me the first time.

11           Now those who have been before me with any

12   regularity know that I can be pressed to consider and

13   reconsider much of the time.  I do it because people make good

14   arguments, even though they're often in opposition to each

15   other.  And at the end I feel confident every time that I leave

16   the bench that we've all done the best we can, but this is a

17   process, which I will not allow to get under -- out of control

18   and I intend to keep, as best I am able, under control.  The

19   parties have to listen to what I tell them.  That's my decision

20   with respect to that.

21           MR. GOLDEN:  And --

22           THE COURT:  And it is no reflection, I will add in

23   light of your comments, to the chairman of your client.

24           MR. GOLDEN:  Okay.  Your Honor, I'm not going to

25   actually re-argue.  I will say --

1           THE COURT:  I will prefer that you not, because I've

2   made a ruling.

3           MR. GOLDEN:  I understand that, Your Honor.  I do

4   want to say though that the changes in the letter -- and

5   apparently they're not sufficient to satisfy the Court's prior

6   commentary, was not because we didn't listen.  We did listen.

7   There may have been just a -- frankly a disagreement.  This is

8   a -- you know, this is different from what lawyers and judges

9   usually do.  We're not arguing about the law or the

10  interpretation of the law or how facts apply to this law, this

11  is a little bit different, as Your Honor recognized --

12          THE COURT:  And it represents an evolving process of

13  adding to solicitation packages, which disturbs me in the way

14  it's coming about.  But I've decided, and I allowed the parties

15  to include these pieces, and I will reluctantly.

16          MR. GOLDEN:  Thank you, Your Honor.

17          THE COURT:  All right.

18          MR. LEMAY:  Your Honor, may I briefly have a word

19  with the Court just one add?

20          THE COURT:  Other than the one we just talked about?

21          MR. LEMAY:  Relating to what Your Honor just said.

22  Just this, Your Honor, David LeMay again.  When I used that

23  term four-ring circus, I really had in mind the fact that we

24  had four competing plans and I have a tendency for metaphor.

25  When I read the transcript and saw what I said and the way that

1  it might have been taken, I was a little bit appalled and

2  wished that I hadn't used it.  Certainly never my intention --

3           THE COURT:  That makes two of us.

4           MR. LEMAY:  Certainly my intention (sic), but I

5  certainly do want to get up and apologize because that was the

6  furthest thing from my mind and I would hope that Your Honor

7  wouldn't think that I meant it that way.

8           THE COURT:  I didn't or I would have said something

9  at the time.

10           MR. LEMAY:  Okay.  Well, apology in either case,

11  Your Honor.

12           THE COURT:  Thank you.  All right, let's return to

13  the first issue.  Consistent with the ruling that I just made,

14  I am reluctant to agree to further changes of this magnitude,

15  whether the factual information is true or not true.  We are

16  going to have to set deadlines and keep things moving so that

17  there is -- one or more counsel have said today -- are not

18  constant iterations of the same thing.  I mean, the parties

19  have come a long way in terms of getting to the point at which

20  they now find themselves.  This is just disclosure.  I shudder

21  to think at yet what's ahead.

22           So I'm not inclined to permit the addition of new

23  provisions, except that which arose strictly in connection with

24  the Court's ruling about disclosure in the aggregate of the

25  Step One and Step Two Lender interests.  And I want the parties

1  at some point before leave here today to come back to me and

2  tell me precisely what language, based on that ruling, should

3  be in there because we're going to make that decision before

4  you leave here today.

5          MR. FLASCHEN:  Thank you, Your Honor, Evan Flaschen.

6  And I sometimes rise just because there's a lots of clients on

7  the phone.  So strike entirely the first language about general

8  unsecured claims, work with the parties on the second language

9  about the difference between Step One and Step Two?

10         THE COURT:  You said it better than I did.

11         MR. FLASCHEN:  Thank you, Your Honor.

12         MR. LANTRY:  Your Honor, there was also in the

13  responsive statement arena a motion to reconsider that was

14  filed on Friday by the ad hoc trade committee and, again, they

15  wanted to add something that you told them, I think three

16  times, they couldn't add at the hearing, but they have made

17  another run at that and we just needed some direction on that

18  as well, in terms of what goes in the solicitation package.

19         THE COURT:  Does someone wish to be heard on behalf

20  of the ad hoc Op Co Trade Committee?

21         MR. SILVERSTEIN:  Your Honor, it's Paul Silverstein,

22  I'm on the phone.  Is that all right?

23         THE COURT:  Good afternoon, sir.

24         MR. SILVERSTEIN:  Good afternoon, Your Honor.  I

25  don't think I want to be heard because I said what I have to

1  say in the papers and I think I specifically said that I didn't

2  need argument on whether or not the debtor should be directed

3  to include that in the package.  So I have nothing to add.

4          THE COURT:  Well --

5          MR. SILVERSTEIN:  We modified the letter, as you

6  saw, if you looked at it.

7          THE COURT:  I did receive and review the submission

8  today.  I did tell you no three times, but the one issue of

9  merit that you raised in the motion is that I might not have

10  been as clear as I could have been in explaining the reason why

11  I said no.  And the reason is that, under the circumstances, I

12  don't think this ad hoc committee represents enough of an

13  interest that it should be separately represented in the way of

14  the disclosure package.  I do not think that a good reason was

15  given.

16          It's not that the Court has to give you reasons why

17  not, it's that the movant has to give a good reason why it

18  should be included in the package and I heard no good reason.

19  So for that reason, I'm going to deny the motion again, and

20  I'll ask the debtor to submit an order under certification.

21          MR. LANTRY:  We will, Your Honor.  There are two

22  housekeeping changes that we have put in the debtor committee

23  lender disclosure statement, and although we filed those, there

24  is one more change that has gone on and it's at the request of

25  Aurelius in terms of the change to the definition of the

1  disclaimed state law avoidance claims.  I think we have that

2  ready, but I don't think we have it ready to pass around.

3          There's also the change that we made in terms of

4  what we filed about deleting a provision in 11.2.2 of the plan

5  -- parallel changes in the plan and the disclosure statement,

6  where in prior versions we had had a -- in conjunction with an

7  unimpaired class being deemed to accept, we had also had them

8  being deemed to grant a third-party release.  We have stricken

9  that because we felt that was inappropriate and are given them

10  the chance in a ballot-like form to elect in or out of the

11  release.

12          What I think would be the easiest, and maybe the

13  best thing to do on these two relative to our overall timing,

14  and maybe at the close of the hearing after we've spoken with

15  the Step One Lenders about the changes, is we all talk about

16  all these things that need to be seen and people may want to

17  look a little while to look at it.  At the same time, we need

18  to get your Court's order approving everything and figure out

19  how we do that, but maybe it's better to wait until we've --

20  get close to the end of the hearing.

21          THE COURT:  All right.

22          MR. LANTRY:  Thank you, Your Honor.  I think that

23  completes agenda's 1 through 5 and we're ready to turn to Item

24  6.

25          THE COURT:  Well, let me ask before you move in if

1  anyone wishes to be heard in connection with --

2           MR. GOLDEN:  Yes, Your Honor, just so that --

3           THE COURT:  -- those matters?

4           MR. GOLDEN:  -- because there maybe needs a little

5  explication.  Mr. Lantry indicated that there was going to be a

6  change in the plan and disclosure statement at a request of

7  Aurelius.  Maybe a little text would help that along.

8           This was a change to ensure that certain fraudulent

9  conveyance claims against either EGI or Zell are properly

10 classified in connection with the lawsuits that are being filed

11 with the committee.  Committee's special litigation counsel has

12 agreed, believes that those changes are appropriate and I just

13 want the Court to be aware that this was Aurelius in its

14 attempt to be vigilant to make sure those claims are going to

15 be preserved as best as can be under the circumstances.

16          THE COURT:  Thank you.  Anyone else?

17          Okay.  Shall we move to procedures?

18          MR. KANSA:  Good afternoon, Your Honor.  Ken Kansa

19 of Sidley Austin on behalf of the debtors and that brings us to

20 Agenda Item Number 6, which is the debtors' motion to establish

21 procedures for soliciting and tabulating votes on the plans

22 among a range of other relief.  I will, as Mr. Lantry, said

23 cover the first part of the solicitation motion.

24          In the two broad pieces we have what you might think

25 of as the traditional solicitation piece and we -- governing

1   notice of the plan and similar relief.  The second piece of it

2   is what we've colloquially referred to as the contours piece

3   for conduct of discovery and the confirmation hearing.  And I

4   would propose to have that handled second and that will be

5   handled by others.

6          THE COURT:  All right.

7          MR. KANSA:  Your Honor, the debtors have fashioned

8   the solicitation procedures that we've presented to you to take

9   account of the challenges that you've alluded to on many

10  occasions, which is trying to solicit and tabulate votes on

11  four competing plans in a relatively coordinated and organized

12  fashion.  We have followed what we believe is the Court's

13  preference for a consolidated voting process for the four plans

14  and we've done this with three goals in mind:  to keep this as

15  intelligible as possible to the voting creditor, to recognize

16  the requirements of securities voting and elections with

17  respect to the senior notes and the Phones notes, and to keep

18  the solicitation materials as uniform as possible across the

19  various plans, taking into account that there are slight

20  differences in the elections and voting requirements of each of

21  the plans.

22          I don't propose to walk through all of the relief

23  requested in the solicitation motion, or the in and outs of

24  each ballot or procedure unless the Court wishes, but I would

25  like to turn to the objections that were raised to the

1   solicitation motion and provide Your Honor a little bit of

2   background on that, in particular focus on the four issues

3   where we have not been able to come to a resolution as yet.

4           THE COURT:  All right.

5           MR. KANSA:  Your Honor, we provided the Court with a

6   chart, you may recall you requested it at the end of the last

7   hearing.  We filed a chart with you on Wednesday afternoon or

8   perhaps Wednesday evening.  We filed an updated version of the

9   chart then again on Friday reflecting for purposes of the

10  solicitation aspects of the motion the resolution of one of the

11  then five pending objections.  I can work off either chart, as

12  you wish, Your Honor.

13          THE COURT:  I think I have the most recently filed

14  one.

15          MR. KANSA:  All right.  Your Honor, it shows four

16  unresolved objections on about Page -- looks to be about Page 4

17  of the filing -- or I guess three on the first page and one on

18  the second page.

19          THE COURT:  Okay.  Mine are on Page 5.  I'll tell

20  you what --

21          MR. KANSA:  That's the same one I have, Your Honor.

22          THE COURT:  Okay.

23          MR. KANSA:  Okay.  The four unresolved -- I should,

24  before turning to the unresolved objections, touch very briefly

25  on some of the resolutions we've hit and then I'll come to the

1    unresolved objections.  The terminology for the responsive

2    statements, which had been raised by the noteholders, has been

3    worked out amicably.  In terms of the ballots and instructions,

4    the noteholder plan proponents had a number of revisions and

5    we've had several back and forth exchanges on revisions to the

6    form of ballot, technical modifications, modification to track

7    changes to the plans and so on.

8         I'm pleased to advise the Court that I believe we

9    are there on the forms of ballot.  We have work -- we still

10   have a  few minor modifications that have been made to the

11   forms of ballot, even as recently as this morning.  We are

12   working through those modifications at the moment, Your Honor,

13   but I don't believe there is anything there that remains open

14   and controversial or that remains for the parties to discuss.

15   And I think when we discuss, as Mr. Lantry suggested, the

16   filing of revised documents concerning the disclosure

17   statements and responsive statements, we could also discuss the

18   filing of revised forms of ballot so that everyone can see them

19   and have a look

20        THE COURT:  All right.

21        MR. KANSA:  Your Honor, in terms of the voting

22   mechanics for the Phones Notes exchange claim, this was an

23   issue raised by the noteholder plan proponents.  We have worked

24   such mechanics into the form of proposed order at Paragraph 24.

25   Those are at a somewhat general level, but we have -- I have

1   talked with Mr. Novad and I understand the voting agent and my

2   client have spoken with the folks at Wilmington Trust about

3   getting a workable mechanism together for these claims, and we

4   believe we have one at a sufficient level of generality to

5   embody in the order and we will work out the mechanics of that

6   going forward.

7            In terms of the procedures for 3018 motions, we've

8   made a motion -- we've made a revision to Paragraph 41 of the

9   proposed order to make explicit that the voting record date is

10  also the deadline to file objections to timely filed proofs of

11  claim, to have those claims be unable to vote on the plan.  In

12  terms of a request from the noteholder plan proponents that

13  beneficial ballots control over master ballots with respect to

14  the voting of senior notes and Phones notes, we have made that

15  change as well to clarify that if there is a mis-tabulation on

16  a master ballot, the beneficial ballot will in fact control.

17           We have addressed an issue raised by the noteholder

18  plan proponents on adjustments for pre-petition interest.

19  We've had an informal discussion with the folks at Aurelius and

20  I believe we are revise -- we are resolved on that issue.

21           In terms of the media ownership certifications,

22  which were the subject of an entirely separate objection filed

23  by the noteholder plan proponents, they raised four discrete

24  issues in there and I believe we've been successful in

25  resolving all four of those through the discussions with FCC

1   counsel for the noteholder plan proponents.

2          That brings us, Your Honor, to the four issues that

3   we haven't been able to resolve and I propose to walk through

4   those briefly and then turn the podium over to the objectors.

5          THE COURT:  Very well.

6          MR. KANSA:  Your Honor, the first issue concerns the

7   means by which creditors will express their preference or

8   preferences among plans on the forms of ballot so that this

9   Court can make its determination as to preferences of creditors

10  under 1129(c) and in accordance with Bankruptcy Rule 3018(c).

11  I think the dispute is pretty well laid out in the papers and

12  it has been narrowed somewhat through our discussions.  All of

13  the parties agree the creditors are free to accept more than

14  one of the competing plans if they wish.  There is likewise

15  agreement that parties need to be able to express their

16  preference in the event they accept more than one of the plans.

17  Based on our discussions with Aurelius, we further understand

18  that the parties agree that preferences may only be made by a

19  creditor who accepts more than one plan, so you may only prefer

20  among plans that you vote to accept, rather than expressing

21  your views across the spectrum of plans you vote to accept,

22  reject or abstain from.

23         The remaining issue goes to the mechanic of how this

24  is accomplished.  We're aware of two ways to go on this.

25  First, the version that we've proposed in the ballots, which is

1   a tick box on the ballots, that let a creditor prefer a

2   particular plan and then the Court would be able to see on the

3   tabulation report which plan has received the most preferred

4   marks within a given class.  The second is a ranking system

5   where creditors would rank the plans from one to four, or one

6   to three, or one to two among the plans that they voted to

7   accept.

8          We found when we created the ballots that the

9   ranking system was appealing on its face.  We also found when

10  we went to create the ballots that the ranking system was very

11  difficult to work in practice, both for creditors and for the

12  determination that the Court is going to need to make.  It's

13  less desirable for creditors because it makes the individual

14  ballots cross the pendant.  A creditor will have to ensure that

15  their rankings are uniform or are consistent across four

16  separate pieces of paper in order to have their rankings

17  counting or those rankings will be disregarded for purposes of

18  any preference election and it makes things significantly more

19  complex in a balloting process that needs a lot less, not a lot

20  more complexity.

21         We also find this to lead to a less reliable result

22  for the Court in making its 1129(c) determination, because what

23  the tabulation would presumably provide for the Court is a

24  matrix of what preference creditors gave a particular plan out

25  of how many plans that creditor accepted; one out four, two out

1    four, one of out three and so on.  So you would have nine

2    possible results that a creditor could have for where they

3    prefer this plan in the spectrum.  We think that yields a

4    mishmash on the tabulation report and I'm not sure how the

5    Court would ascribe particular preferences or discern the

6    preferences of creditors out of that result.  I suspect it is

7    very difficult indeed and it probably involves the use of a

8    statistician or at least more statistics than the Court may

9    like.  It is a difficult process.  It seems to be a very

10    unworkable process.  We do believe that the tick box showing

11    which creditor prefers a particular plan gives the Court

12    reliability, gives the Court a very clear result and gives the

13    Court a very simple and straightforward basis on which to make

14    its determination.

15            THE COURT:  Do you have a sample of what that would

16    look like?

17            MR. KANSA:  I do have a form of the ballot, Your

18    Honor, and let me see if we can scare one up out of these

19    materials if you'll indulge me for one moment?

20            THE COURT:  Sure.

21            MR. KANSA:  Your Honor, if I may approach?

22            Your Honor, what I've provided you would be a

23    uniform 2-A across all of the ballots, indicating that a

24    creditor should tick the box shown at that point on the ballot

25    if this is the plan that they prefer over all other plans they

1  have voted to accept.

2          THE COURT:  All right.  Thank you.

3          MR. KANSA:  Thank you, Your Honor.

4          That's all I have on that issue.  I'd propose a walk

5  through the rest of the objections, Your Honor --

6          THE COURT:  Please.

7          MR. KANSA:  -- and proceed from there.

8          The second issue, Your Honor, concerns who bears the

9  costs of solicitation.  This is an issue on which the debtors

10  have proposed in the motion that the cost of the solicitation

11  and tabulation process be born equally in four shares among the

12  proponents of the four plans.  We have gotten unity from the

13  proponents of the other three plans on this issue.  Each of

14  them is quite adamant that the debtors should bear their costs

15  in their entirety.

16          We've spoken our piece on this in the papers.  I

17  have very little to add to it.  This seems a basic piece of

18  equity in the debtors' view.  A successful set of proponents,

19  if their plan is confirmed and becomes effective will recoup

20  their costs under that plan.  In any event, pursuant to a

21  provision in each of the co-proponents plans, and the idea that

22  these solicitation costs propose a meaningful bar or some kind

23  of poll tax is, we think, misguided and farfetched.

24          There is also a suggestion in here that the debtors

25  should bear the cost because it is the debtors who benefit from

1   the competing plan process.  I think it's fair to say the

2   debtors find that benefit to be something of a double edged

3   sword at best and it is clear that nothing in the Code mandates

4   that the debtors bear the full costs of this process.

5   Moreover, in a world after the 2005 amendments where we've come

6   into a post-exclusivity world, it is with competing plans being

7   more common a fundamental fairness point, that proponents of a

8   plan should be required to bear some cost or some burden in the

9   course of proposing a plan, rather than asserting a fundamental

10  right, if you will, that's found nowhere in the Code, that they

11  can call upon the debtors' funds at will to advance whatever

12  plan they prefer.

13         THE COURT:  But not very much decisional law

14  guidance on the issue.

15         MR. KANSA:  There is -- we have seen very little, if

16  any, decisional law guidance on the issue.  Again, I think that

17  stems in large measure because of the increased prevalence of

18  competing plans in the post-BAPCA world.

19         Your Honor, I would turn to the third issue, which

20  is inter-company claims and how they vote or how they are

21  treated for purposes of this plan or this plan process.  The

22  issue has been resolved with respect to three of the plans, so

23  it remains open only with respect to the noteholder plan.

24         The debtor committee plan provides that the debtors

25  need not vote to accept that plan, that's Section 4.3, and

1  that's a provision of basic logic.  The debtors are proponents

2  of that plan and should be deemed easily to accept it and it's

3  logical to assume that the debtors support their own plan.  The

4  proponents of the other three plans initially provided at the

5  time the solicitation motion was filed that inter-company

6  claims were impaired under each of those plans, but were

7  nonetheless deemed to accept those plans without voting for

8  various reasons.

9         The debtors objected to that treatment and indicated

10 that we should be able to reserve on the issue of inter-claims

11 voting until we reached the confirmation hearing.  It wasn't an

12 issue that needed to come up and we could see if the issue

13 mattered up to the time of the confirmation hearing and

14 certainly have the debtors be in a position to vote rather

15 quickly if they were called upon to do so.

16        The response from the plan proponents has been

17 varied.  The Bridge plan, in its most recent iteration,

18 provides that inter-company claims are unimpaired and deemed to

19 accept that plan.  We have no quarrel with that treatment, Your

20 Honor.  The Step One plan provides that inter-company claims

21 are impaired and entitled to vote on that plan.  We have no

22 quarrel with that treatment either.  We will prepare and file

23 with the Court, with our set of updated ballots, a form of

24 inter-company claims ballot to accomplish that voting, but we

25 have no quarrel with that proposed treatment.

1          The noteholder plan, on the other hand, contains a

2     very different treatment.  It provides that inter-company

3     claims are deemed disputed under that plan in their entirety

4     and that if inter-company claims, -- the holders of inter-

5     company claims wish to vote those claims, they must do so by

6     filing a 3018 motion and having their claims allowed for voting

7     purposes.  If they do not do so, and there are no voting claims

8     in that class, as Your Honor may recall from our colloquy at

9     the last hearing, the noteholder plan provides that the non-

10    voting class will be deemed to accept that plan.

11         Your Honor asked the noteholder plan proponents to

12    put their authority for that proposition in their disclosure

13    statement.  From what I've seen they've done that and we have

14    no quarrel with that piece of the issue.  Where we have a

15    quarrel is the -- erecting a 3018 barrier, in effect, to the

16    voting of the inter-company claims and the wholesale disputing

17    of those claims, really without basis, which treats the inter-

18    company claims differently than every other class of claims

19    under the noteholder plan and under the solicitation

20    procedures.

21         What we suspect is happening here is that the

22    noteholder plan proponents have attempted to manufacture an

23    accepting impaired class at each of the subsidiaries, where

24    neither the senior notes, nor the Phones, hold any claims.  And

25    they've attempted to do so by, in essence, taking the inter-

1   company claims, those held by the debtors and their affiliates,

2   who may well be objecting to the noteholder plan in the future,

3   by taking those claims and deeming them not to vote or deeming

4   them disputed and not entitled to vote, absent the filing of a

5   3018 motion, the debtors are therefore put in a position of

6   having either to file a 3018 motion and guarantee themselves

7   some significant pre-confirmation litigation in order to be

8   entitled just to vote on the plan, or in the alternative not

9   filing a 3018 motion, having the class have no votes in it

10  whatsoever and then possibly be deemed to accept, if Your Honor

11  agrees with the legal authority that's put forth in their

12  disclosure statement.

13          We don't think that is appropriate, and more to the

14  point, it's at odds with the treatment of all other classes of

15  claims that are deemed wholesale to be disputed under the terms

16  of a various plan.

17          THE COURT:  So what would you have me put in a

18  procedures order which doesn't require a change to the proposed

19  noteholders plan?

20          MR. KANSA:  Your Honor, we could put into the

21  procedures order simply that the issue of the voting of inter-

22  company claims on the noteholder plan is deferred without

23  prejudice to any party's right until the confirmation hearing.

24          THE COURT:  Okay.

25          MR. KANSA:  And, Your Honor, just to be clear, under

1  the terms of the solicitation order, there are under the

2  noteholder plan, and under certain of the other plans, there

3  are classes of claims that are deemed disputed in toto.  We

4  don't think it was the intention, and it certainly wouldn't be

5  logical for it to be the intention, that none of those claims

6  could vote on the plan at all.  And so, when we prepared the

7  solicitation motion and order, we put in a provision at

8  Paragraph 48 of the motion and 31 of the order that where a

9  class of claims was deemed disputed in its entirety, solely by

10 terms of the plan, the holders of those claims would be

11 entitled to vote to accept or reject that plan not withstanding

12 that provision.

13         Your Honor, we can revise -- we can make changes

14 here simply by entitling inter-company claims to vote to accept

15 or reject the noteholder plan as well.  That is another way to

16 skin this cat, and we've already agreed with that treatment

17 with respect to the Step One plan.  So there are several issues

18 that -- there are several ways to achieve a solution of the

19 sort the debtors are looking for here.

20         What we are looking to avoid is the situation where

21 a bar is erected to the voting of the inter-company claims.  We

22 have to either guaranty ourselves some litigation to get over

23 that bar, even though these claims have been in the schedules

24 for a year-and-a-half, or alternatively, we have to not vote

25 and take our chances that we are later deemed to accept the

1  noteholder plan under the Rudy Sweetwater line of cases.  That

2  is the result we are trying to avoid, Your Honor.

3           THE COURT:  All right.

4           MR. KANSA:  The last open issue among our -- among

5  the parties concerns the voting record date, Your Honor.  We

6  had initially proposed in the motion a voting record date of

7  November 9.  We have subsequently agreed to move that date

8  forward to November 29 and then December 6th.

9           This may not be a dispute depending on the timing of

10 Your Honor's order approving the solicitation procedures.  If

11 that order is forthcoming in the next day or two, I suspect the

12 December 6th date will work for folks.

13          THE COURT:  Well, when are you going to get it to

14 me?

15          MR. KANSA:  We will get it to you just as soon as we

16 can, Your Honor.  I think a lot of that comes off the

17 resolution of the objections that we're discussing here today.

18          THE COURT:  Understood.

19          MR. KANSA:  If we can get that to you quickly, Your

20 Honor, and you can enter it quickly, I think the issue on the

21 voting record date resolves itself, and I don't think we need

22 to spend a lot of time going into it.  If it looks like there

23 may be a more protracted timetable to getting to the order, we

24 may want to revisit the issue.  But for now, I think we've said

25 all that needs to be said on the point.

1            THE COURT:  Okay.

2            MR. KANSA:  With that, Your Honor, I'm happy to turn

3    the podium over either to the parties that are joined in the

4    motion or to the objectors as may be.

5            THE COURT:  Well, let's hear from the pros, and then

6    we'll hear from the cons.

7            MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

8    Johnston again.  Very briefly, just on issue number two, who

9    bears the cost.  I wanted to add a lender perspective on this.

10           Your Honor, at the prior hearing, and again this

11   morning, we've spoken about the complexities and difficulties

12   presented by having four competing plans go out for a vote,

13   especially in a case like this one.  I certainly sense

14   frustration from Your Honor.  I think we're all somewhat

15   frustration -- frustrated with the process in -- that we're

16   going down.

17           And I fear that this case may be Exhibit A in the

18   treatise that will be written someday about how ever since

19   Congress, in its infinite wisdom, put a hard stop on

20   exclusivity, the plan process has become somewhat weaponized,

21   to use a term that I learned for the first time last week.

22           I'll ask you, if that's the statutory landscape we

23   find ourselves in, shouldn't creditors who seek to put the

24   bankruptcy estates through what these estates are now going

25   through, at least have to pay their share of the hard costs of

1  the process?    To carry the metaphor a little bit, if competing

2  plans have become a weapon of choice in bankruptcy practice

3  circuit 2010, shouldn't creditors at least have to pay for the

4  bullets in the gun they want to shoot?  I can think of no

5  reason why not.

6          The competing plan proponents here would have to pay

7  their own freight if there was no debtor sponsored plan going

8  out for a vote.  And indeed, you'll recall that my clients

9  filed their own plan back before the mediation commenced, and

10  they were fully prepared to pay for the cost of solicitation of

11  that plan had it been sent out for a vote.  They were prepared

12  to put their money where their mouth was.

13          Giving competing plan proponents a free ride on the

14  debtors' backs here I would submit would do nothing other than

15  encourage even more plans to be filed and more chaos to be

16  generated in the next case where there's a reorganization that

17  can't get done before the termination of exclusivity in the

18  period afforded by Congress.

19          I do think it's telling, as Your Honor noted, that

20  none of the other proponents have cited any statutory or case

21  law authority that requires the estate to pay for their efforts

22  or that prohibits the Court from ordering that they pay their

23  fair share.  I think it just makes sense for proponents to pay

24  for the solicitation costs associated with their own plan, and

25  we'd ask you to order that the costs be shared here, both in

1  fairness to these estates, which are already burdened by

2  staggering administrative expenses and in consideration of what

3  may come in the next case where parties want to fire off

4  multiple plans.  Thank you.

5            THE COURT:  Thank you.  Anyone else?

6            MR. DUBLIN:  Good afternoon, Your Honor.  Phil

7  Dublin, Akin Gump, on behalf of Aurelius and the other co-

8  proponents or noteholders.  Interesting to hear Mr. Johnston

9  come up and advocate for no sharing of costs.  He's not paying

10  anything, and he's a co-proponent on the debtor plan.  LBO

11  lenders have also had the benefit of continuing to get legal

12  fees paid throughout almost the full duration of these cases,

13  and then they're worried about cases, but I'll come back to

14  that issue later.  Your Honor, I'll take the four open issues

15  in the order that the debtor has presented if that's okay with

16  the Court.

17            The first was the delineating of preferences with

18  respect to creditors voting in favor of the various plans.

19  Your Honor, when you look at the applicable Bankruptcy Code

20  Section 1129(c), and it refers to the Court looking at the

21  preferences of creditors and determining which plan to confirm

22  with -- if you have multiple plans that are able to be

23  confirmed.  We think that the Court necessarily then looks to

24  Bankruptcy Rule 3018, which says that a creditor voting on a

25  plan can then set forth its preference or preferences with

1  respect to the various plans.

2      It's troubling to see how difficult it could be to

3  tabulate whether a creditor votes on one, two, three, or four.

4  To be able to create a simple chart like one with see with

5  baseball MVP votings, where the journalists can pick 12 or more

6  different people, and you have a line across that says first

7  place, second place, third place, fourth place, and you have

8  the various plans, you're able to then calculate which one has

9  the most creditor preferences.

10      Just an example, Your Honor.  If we had the four

11  plans go out and we use small numbers just for ease of

12  reference, and plan one had 100 creditors that preferred it,

13  plan two had 75, plan three had 50, and plan four had 25, plan

14  one, with 100 people making it their preferred plan, would

15  clearly seem the best.  Well, plan one doesn't satisfy 1129, so

16  it's out.  Two, three, and four all satisfy confirmation

17  requirements, and plan two had 75 creditors that said it was

18  its favorite.  So looking back at 1129(c), the Court might say

19  well, plan two is the one that's most favored.  I'll go with

20  plan two, but what if all 100 of those creditors from plan one

21  liked plan three better than plan two?

22      Well, then plan three would have had 150 votes as

23  opposed to the 75 that plan two had.  And then the Court would

24  have confirmed a plan where the creditor preferences were not

25  appropriately taken into account.

1    THE COURT:  Well, I understand, if I heard

2  correctly, that there is agreement that a creditor can express

3  a preference only if it voted for a plan; is that correct?

4    MR. DUBLIN:  Voted to accept the plan.

5    THE COURT:  Correct.

6    MR. DUBLIN:  Correct, Your Honor.

7    THE COURT:  Okay.  So if a creditor votes to accept

8  four plans, it has the right to express preference with respect

9  to all four.

10    MR. DUBLIN:  That's not what the debtors are

11  proposing, Your Honor.  They're --

12    THE COURT:  Okay.  Then explain to me what the

13  debtors are proposing.

14    MR. DUBLIN:  The debtors are proposing that you pick

15  your favorite out of the four not if -- not ranking one through

16  four that you voted in favor of.

17    THE COURT:  Okay.

18    MR. DUBLIN:  So that's our issue with that

19  preference system.

20    THE COURT:  Well, now the debtor suggested that if,

21  somehow, a voter had incorrectly, on four ballots, listed its

22  preferences inconsistently, that all of those preferences were

23  to be excluded?

24    MR. DUBLIN:  It would be typical as if you voted for

25  and against the plan.  If you check the box twice, then the

1  vote wouldn't count.  I think that would be the same here.  If

2  you got your numbers wrong, then you wouldn't count the

3  preferences.

4          THE COURT:  Well, at least we won't have hanging

5  chads.  Okay.  Continue.

6          MR. DUBLIN:  The second one, Your Honor, is with the

7  cost of solicitation I believe.  Your Honor, there is -- we

8  were unable to find a reported decision on how the cost of

9  solicitation should be handled when we're dealing with multiple

10 competing plans.

11         We did cite in our objection the Trump case, where

12 Judge Wizmur analogized the competing plan process to an

13 auction.  And if creditors are able to vote on more than one

14 plan, it benefits the creditors.  It benefits the

15 administration.  And it is a cost that should be borne by the

16 estate.

17         It's interesting here, separate and apart from the

18 LBO lender free rider, that the debtors would incur

19 substantially of the same costs with four plans as we would

20 with one plan, as we're using CD-ROMs here and not books upon

21 books of paper going out to creditors.  The only paper that

22 will be received will be the ballots and, presumably, the

23 responsive statements.  However, the debtors would prefer that

24 the Court order that the estates only pay 25 percent of the

25 aggregate cost, whereas if it was one plan, they would incur

1   substantially all of those costs.

2              THE COURT:  Has anyone estimated what the cost will

3   be?

4              MR. DUBLIN:  I do not have an estimate, Your Honor.

5              MR. KANSA:  Your Honor, we've tried to get an

6   estimate that would be of some use to the Court.  The number of

7   variables that go into it has been so enormous that we haven't

8   really been able to get to any number that we would feel

9   comfortable putting forward at this point.

10             We think the principal element of the cost will not

11  be in the raw materials as we've talked about are the CD-ROMS.

12  It really is going to be in the personnel time necessary to

13  accomplish the tabulation.  We will -- we can try to go back

14  and get more of a sense from the voting agent as to what the

15  likely costs are to be.  But right now, we haven't gotten

16  anything that we're comfortable putting forward.

17             THE COURT:  Well, don't you think it might be a

18  consideration for the Court to determine what would be the fair

19  thing to do, to know what costs are?  I mean as opposed to

20  whether I'm allocating a division of $10 or $10 million.

21             MR. KANSA:  Yes, indeed, Your Honor.  We will try to

22  get an estimate for the Court.

23             THE COURT:  And when can you have that for me?

24             MR. KANSA:  We will have it -- we can file it with

25  the certification and the appropriate caveats or factors

1  entering into it later today.

2         THE COURT:  Well, let me as you this.  Not to say

3  that anything in this case is that simple, but could you make a

4  phone call?

5         MR. KANSA:  We will do so, Your Honor.

6         THE COURT:  All right.  Thank you.

7         MR. DUBLIN:  So, Your Honor, we believe that it's

8  appropriate for the debtors to bear the cost of the

9  solicitation.

10         In the event that you're not comfortable doing that,

11  we think that the only equitable potential alternative would be

12  that whatever incremental cost that would be borne above and

13  beyond if the debtors were just doing their own plan, that it

14  could be split among the competing plan proponents, a third, a

15  third, a third.  But otherwise, Your Honor, having the estate

16  only pay 25 percent of the cost with respect to solicitation of

17  these plans we do not think is equitable under the

18  circumstances.

19         THE COURT:  Well, you propose an interesting

20  concept, but how would that be actually determined?

21         MR. DUBLIN:  I think, in part, it would be in

22  reliance upon Epiq, the voting and claims agent, to be able to

23  tell the Court what they believe the cost would be for the one

24  plan.  As I mentioned, this is a CD-ROM that's going on.  And

25  as counsel mentioned, it's really the tabulation where the

1    excess -- the additional costs are, but it's my understanding

2    that the ballots are coded.  So they kind of get fed into a

3    machine.  It's not like you have a bunch of people lined up in

4    an assembly ballots.  Human error component is something in

5    this day and age that is really no longer an issue.

6             Your Honor, I think that takes us to the inter-

7    company claims point.  Counsel mentioned that we were trying to

8    -- I don't want to --

9             THE COURT:  You know what?

10            MR. DUBLIN:  -- say something incorrect, but --

11            THE COURT:  And the answer is no more or less than

12   any other party does.

13            MR. DUBLIN:  I'm sorry?

14            THE COURT:  I said they -- they're accusing you of

15   no more or no less than what any other party does.  I

16   understand that, if I anticipate what you were about to

17   address.

18            MR. DUBLIN:  Your Honor, we treat the inter-company

19   claims as disputed in our plan not because we are trying to get

20   impaired accepting class from the inter-company claims, because

21   they're insiders.  So they both don't matter if they accept the

22   plan.  So that's not what we're at.

23            We don't know what the inter-company claims are.

24   The debtors -- we filed their five-page exhibit to their

25   specific disclosure statement that we talked at length about

1  last week.  All that shows, to the extent those numbers are

2  accurate, and we, at this point, subject to discovery, have not

3  an opportunity to confirm those, they show consolidated inter-

4  company claims at the guarantor subsidiaries, where the banks

5  have guaranties against the parent company, and then the parent

6  company back against the guarantor subsidiaries, again, on a

7  consolidated basis.

8         We don't have, as we do for all of the other

9  classes, an estimated amount of allowed claims.  Now that's why

10 the claims are disputed.  There's no disclosure as to what they

11 may be, whether they're allowed or not.  Mr. Lantry said at the

12 last hearing, and we'll probably hear more about in connection

13 with the contours portion of today's hearing, the issue of

14 inter-company claims is going to be hotly contested in

15 connection with confirmation.  Well, that's because we don't

16 know what they are, and we don't know how they should be

17 treated.

18         We don't understand why, in our plan that we're

19 proposing, the debtor should have the right to be treated than

20 any other disputed creditor, in their own plan or in any other

21 plan.  All we've done is set up a mechanic for them to be able

22 to come to the Court.  The Court will determine, in connection

23 with that process, whether there should be claims that should

24 or should not be voted, and then the debtors can or cannot vote

25 as they choose.  And the noteholder planned proponents will

1   have whatever remedies and arguments we have available with

2   respect to whatever election the debtors may make.  We're not

3   seeking to harm them any more than anybody else.  We're seeking

4   to put them on the same playing field that they're putting the

5   whole holders of disputed claims on.

6           Now counsel was correct that there are other

7   disputed claims where we have said they're allowed to vote.

8   The Bridge Lenders, the Bridge Lenders are disputed.  But we

9   know what their claim amounts are.  We don't know what the

10  claims amounts are here for the inter-company claims.  The

11  debtors have nor provided any disclosure in their disclosure

12  statement with respect to inter-company claims at the

13  non-guarantor subsidiaries at all.  So being able to determine

14  what is an appropriate vote or not an appropriate vote is

15  something that we have the right to know, I believe.

16          And saving the issue for confirmation, I just don't

17  understand.  They show up at confirmation and say yes, want to

18  vote, no, we don't want to vote.  I'm just really not sure how

19  that process would work, especially within the timeline that

20  the Court has currently for confirmation and all the other

21  issues that are going to be litigated.

22          So we think that the proper mechanism would be to

23  treat the debtors under our plan just as all disputed creditors

24  are under each of the plans, and that they file a pleading with

25  the Court in order to vote their claims.

1            The last issue is the record date, Your Honor.  If

2    the order is going to be entered as quickly as it seems, I

3    think we probably do not have an issue.  And if it's entered in

4    the next day or two, we are perfectly happy with December 6th.

5    We just want to make sure that the right creditors are voting

6    on the plan.   One of the easiest mechanics may be just that

7    the voting record date be the date that the order is actually

8    submitted to the Court not necessarily the date that it's

9    entered on the docket.  This way we know the claims agent or

10   the voting agent will have a date and start putting in the

11   materials, and we can go forward.

12           THE COURT:  Well, if you do it on a date that I am

13   here, it will be the same date.  And I am here today, tomorrow,

14   and Wednesday.  I'm out Thursday and Friday.  I would like to

15   have an order signed and docketed before I leave.

16           MR. DUBLIN:  And if that's the case, Your Honor,

17   then we are fine with the December 6 date.

18           THE COURT:  Okay.

19           MR. DUBLIN:  And I think that covers the four

20   outstanding issues.

21           THE COURT:  All right.  Does anyone else wish to be

22   heard?

23           MR. NOVAD:  Good afternoon, Your Honor.  Gordon

24   Novad, Law Firm of Brown Rudnick on behalf of Wilmington Trust

25   Company.  I am a -- or my client, I should say, is a co-

1  proponent with Aurelius of the noteholder plan.  So I will not

2  repeat the argument before you today other than I rise to, a,

3  join the arguments that are made before and to underscore a

4  point a little bit unique to the indenture trustees that are

5  noteholder proponents of our plan.

6          As that would suggest, Your Honor, we actually are

7  indenture trustees, fiduciaries on behalf of the noteholders.

8  We aren't private clients such as Angela Gordon, or Oak Tree,

9  or Aurelius, or even the Bridge Lenders.  We are indenture

10  trustees.  And the cost of -- to bear the cost of a one-fourth,

11  one-fourth, one-fourth, one-fourth share of the solicitation

12  costs I think really ignores that fact.  And I just wanted to

13  highlight that for the Court.

14          The second, Your Honor, is, frankly, to join in

15  something that Mr. Kansa said before.  He had mentioned to you

16  about the resolution of certain issues with respect to

17  solicitation of a certain component of Phones notes.  And we

18  believe that based on the order that has ultimately been

19  provided in draft form, as well as the form of instructions,

20  and ballots, and so on and so forth, that it adequately

21  addresses and, quite honestly, elegantly addresses a logistical

22  problem.  And we're happy to report to Your Honor that we have

23  been able to resolve that.

24          THE COURT:  Thank you.

25          MR. NOVAD:  So without using up too much of Your

1    Honor's time, I just wanted to stand and join my planned

2    co-proponent, although it's not my expectation that the other

3    indentured trustees may stand up as well.  Thank you.

4              THE COURT:  Okay.

5              MR. FLASCHEN:  Your Honor, Evan Flaschen for the

6    Step One plan proponents.  On the revised responsive statement,

7    we'll just take out the paragraph where they don't like that we

8    say we think here's what they're owed.  I wish they told us

9    what they're owed, but we'll just take that out.  Excuse me.

10             THE COURT:  Thank you.

11             MR. FLASCHEN:  I've just given them a mark-up.  I'm

12   confident we'll be able to give it to you shortly.

13             THE COURT:  All right, thank you.

14             MR. FLASCHEN:  We appreciate debtors' cooperation on

15   the record date.  That was one of our objections.  We're fine

16   with December 6th.  One of the clients sometimes say to me is

17   why I don't get up in court and scream and yell and use

18   hyperbolic phrases.  Your Honor has shown --

19             THE COURT:  You can do that at home.

20             MR. FLASCHEN:  Your Honor, I am more likely to do

21   that in this court than I am at home.

22             Something counsel for the bank said on costs.

23   Having entities pay for hard costs of third party plans will

24   open the flood gates for everyone to file plans.  Come on.  If

25   you're going to file a plan, you're going to spend a whole lot

1   more money drafting a plan and disclosure statement than the

2   incremental costs of filing it.  So let's just focus on non-

3   hyperbolic issues.

4          If they were so concerned about costs, they should

5   have shown up and said what the costs were.  They shouldn't go

6   out now and get someone to -- on the phone to say what the cost

7   might be.  If it was a big issue, that this wasn't just a play,

8   a game that they're playing, they'd have come up here and said,

9   you know what, it's costing us a million dollars to do this,

10  and it's another $100,000 because of those guys.  They should

11  pay the $100,000.  I think it's too late for them to come back

12  with a number.

13         Second, the debtor proponents of a plan should bear

14  the cost.  We have four proponents of a plan.  If we're going

15  to start divvying things up, debtor and the committee will

16  count as one.  That's easy.  We're not going to make them

17  separate.  The estate pays anyway.  Oak Tree, Angela Gordon, JP

18  Morgan are having -- they're not only -- they're hard costs

19  paid for.  They're having millions -- probably tens of millions

20  of dollars of attorney's fees paid for by the estate.  So we're

21  dividing things up, let's do it by seven, or whatever that adds

22  up to, not by four.

23         Second incremental, machine ballots that are read by

24  a machine, I'm sure they can come up with an extra few bucks.

25  Is it worth it?  Was it worth this time for them to make that

1    point to do this?  So if we have to do it, we'll share one out

2    of seven of the costs of an extra person at $15 an hour to feed

3    one more ballot through one more machine.  But it's part of the

4    games playing that's going on.  And respectfully, we would just

5    like to get down to the main events here.  Thank you, Your

6    Honor.

7              THE COURT:  Thank you.

8              MR. GRIESSMAN:  Good afternoon, Your Honor.  Scott

9    Griessman, White and Case, for the Bridge agent, won't take up

10   too much time.  We agree completely with all the arguments made

11   regarding the solicitation costs.  There is no indication that

12   there's any real incremental costs associated with soliciting

13   three new plans or three additional plans.  And in fact, if

14   there was, the information should have been presented.  It was

15   not.  And we agree the estate should bear those costs.  Thank

16   you.

17             THE COURT:  Thank you.  Anyone else care to be

18   heard.

19             MR. JOHNSTON:  Your Honor, just very briefly on the

20   cost point.  I wanted to correct the record and make an

21   observation.  One, my clients, Oaktree and Angelo Gordon, are

22   not being paid by the estate.  They haven't been paid by the

23   estate.  To the contrary, as senior lenders, my clients are

24   paying the lion's share of the expenses of this estate as an

25   ultimate matter.  If our claims are allowed, and I recognize

1   that that's a point of contention in the case, these dollars

2   are all coming out of our hide.  That's why it's an issue of

3   concern to us.

4          With respect to indentured trustees, I know no

5   reason why an indentured trustee should get a free pass just

6   because of its status.  They should be subject to the same date

7   keeping function that I suggested to Your Honor earlier.  I

8   don't think I said that the flood gates would be opened, but I

9   did suggest that there should be some gate, some check on the

10  ability of a creditor to willy-nilly go forward with a plan of

11  reorganization when the debtor is also going out for

12  solicitation.  Thank you.

13         MR. KANSA:  Your Honor, Ken Kansa of Sidley Austin

14  on behalf of the debtors.  I rise to respond to one point on

15  the inter-company claims issue.  And that's that if the

16  animating difficulty here on the part of the noteholder plan

17  proponents is they don't know what the inter-company claims are

18  and really can't discern anything, I may get pulled down from

19  the podium, but an obvious solution is to have the inter-

20  company claims which are classified separately each vote at a

21  dollar, and vote as they're classified in the schedules, which

22  the inter-company claims have been in the schedules now for a

23  year-and-a-half.  It seems easy enough to figure out what those

24  are.  And that should resolve that issue and hopefully bring

25  us to closure, Your Honor.  Thank you.

1          THE COURT:  Well, I guess unless somebody files an

2    objection, I don't know.  Okay.  I appreciate the suggestion.

3          MR. KANSA:  Thank you, Your Honor.

4          THE COURT:  All right.  I do think that with respect

5    to ranking, that ranking should be permitting, that the

6    creditors should be able to express a preference with respect

7    to every plan on which it votes, despite the mechanical

8    difficulties that may pose.

9          There seems to be now and hopefully won't be a

10   dispute about the record date if things move apace in the next

11   couple days as I hope they will.  With respect to the inter-

12   company claims, put it this way, to jump ahead a little bit --

13   and I'll give the parties a little bit of time to think about

14   this.  We'll take a break after we deal with the disclosure

15   issues and before we get to the contour issues.

16         I had tentatively set aside the week of March 7th

17   for confirmation and allocating five days.  I do not intend to

18   change that.  I do not intend to add more time to it.  I intend

19   to stay where I said I thought I would go, and that is we will

20   set the five days.  If it turns out we need more, I will find

21   some time on my schedule as soon as I can after that to

22   continue the confirmation hearing.

23         Now I understand that that will press the parties

24   considerably for the pre-confirmation discovery that will need

25   to be undertaken, and I understand there's a dispute about the

1  scope of that.  And we can deal with that when we get to the

2  contour part of this discussion, but especially in light of

3  that, I am not interested in approving a process in which we

4  tee up 3018 issues during that time which I think could be much

5  better used for other things in connection with whether a plan,

6  and which one, should be confirmed, so that -- I would take

7  either of the debtors' two alternatives.  I'll allow during

8  the break to consult with the noteholders on this of whether we

9  defer until confirmation or permit the inter-company claims to

10  be voted at a dollar.  It matters not to me.

11          With respect to costs, I have some ideas about how I

12  would resolve that objection, but I'd like to know, you know,

13  within some range what we're talking about before I tell people

14  they have to bear the cost of a plan of the solicitation

15  process.  So maybe during the break that information, at least

16  in some rough fashion, can be divined.

17          Now with respect to those issues, does that leave

18  anything unaddressed?

19          MR. KANSA:  Your Honor, Ken Kansa of Sidley Austin

20  again.  That resolves I think all of those issues.  We still

21  have some deadlines that are set out in the solicitation order

22  for a voting deadline, for the deadline to return objections to

23  confirmation, and that sort of thing.  I think that's probably

24  best addressed in conjunctions with the contours discussion

25  we're about to have.  So I would defer the issue till then.

1   But I'd want to put a pin in that in case there is a date we

2   haven't gotten from the Court before we conclude today.  I

3   might want to rise again and raise that issue.

4               THE COURT:  I'm not sure what your question is.

5               MR. KANSA:  If there is, for example, during the

6   contours piece we don't get a voting deadline, for example, set

7   by the Court, I would want to rise and ask the Court to set the

8   voting deadline.  We have not asked for a specific date in the

9   motion.

10              THE COURT:  Well, we'll figure it out before we

11  leave today.

12              MR. KANSA:  Thank you, Your Honor.

13              THE COURT:  I don't have any preformed notions about

14  that if that's your question.

15              MR. KANSA:  That is a good bit of the question.

16  Thank you, Your Honor.

17              THE COURT:  Okay.  Anything else before break?

18              Let's break until 4:00.  The Court will stand in

19  recess.

20         (Recess taken at 3:40 p.m. to 4:03 p.m.)

21              THE CLERK:  All rise.

22              Be seated.

23              MR. FLASCHEN:  Your Honor, Evan Flaschen for the

24  Step One lenders.  I'll very briefly summarize the agreement

25  we've reached.

1          You'll recall that they objected to a sentence

2   about our information and beliefs as what their holdings

3   might be between the two groups.  We took out the whole

4   paragraph.  They asked us to take out two more paragraphs.

5   We took those out except the parts where we quote their

6   language.  They're now okay.  I assume you don't need to see

7   this?

8          THE COURT:  I do not.

9          MR. FLASCHEN:  We'll -- we will file the revised

10  version tonight and we'll provide clean versions for the

11  debtor for their solicitation package.

12          Thank --

13          THE COURT:  Thank you very much.

14          MR. FLASCHEN:  -- you, Your Honor.

15          MR. BENDERNAGEL:  Your Honor, Jim Bendernagel,

16  Sidley and Austin for the debtors regarding what's been

17  referenced as the contours portion of the procedures motion.

18          Your Honor, the open issues appear on Pages 5

19  through 9 of Attachment A  to what was filed on Friday, and

20  they sort of fall into two separate categories and I would

21  propose to address them separately if that meets with Your

22  Honor's approval.  I --

23          THE COURT:  That's fine.

24          MR. BENDERNAGEL:  -- talked to the other parties

25  and they agreed to it.  Just so it's clear what I'm doing is

1  the two issues on Page 5 sort of stem from Paragraph 48, not

2  Paragraph 49, but Paragraph 48 of the order and propose to

3  limit discovery with respect to the LBO-related causes of

4  action.

5          On Page 6 there is a item which I believe you've

6  already resolved and that is the length of the hearing at

7  this juncture.  You've said it's five days so we don't have

8  to worry about that.

9          And then on Pages 7 through 9 there are seven

10  issues identified regarding the case management order where

11  the parties have a disagreement that we would like some

12  guidance from the Court.  What I would propose to do to

13  start out is just address the issues on Page 5 relating to

14  the limitations on LBO discovery, then open that up to

15  comment from other parties and then after we get through

16  that, proceed to the case management order --

17          THE COURT:  Okay.

18          MR. BENDERNAGEL:  -- if that's okay?

19          THE COURT:  Yes.  It's fine.

20          MR. BENDERNAGEL:  With respect to the limitations

21  on LBO-related discovery, there's both a fact discovery and

22  an expert component portion of our request.  The more

23  serious or more substantial of the request relates to fact

24  discovery.  It's the debtors' position that the current

25  information that's available regarding the LBO-related

1    causes of action, specifically the merits of the LBO-related

2    causes of action is sufficient for assessing the

3    reasonableness of the claims.

4            As the Court knows there's a lot of work that's

5    already been done on this issue over the course of the last

6    two years.  There's a document depository that has over 3

7    million pages of material relating to these issues.  There's

8    an examiner report which, at great cost to the estate, was

9    put together comprising over a thousand pages of discussion

10   of these issues, 1,100 exhibits, various transcripts and

11   various financial analysis, all of which is available to the

12   parties and which we believe provides a sufficient basis.

13           Furthermore, it's absolutely clear from what's

14   gone on to date that the parties are fully familiar with

15   these issues, these defenses and the evidence supporting

16   these matters.  That's clear from the briefing that's come

17   forward.  It's clear from the plans they put forward.  It's

18   clear from the complaints that have been filed by the UCC

19   against various parties to preserve claims, and it's also

20   clear from the fact that people have engaged with the

21   mediator.

22           Consequently, we just don't believe there's a

23   necessity for additional fact discovery regarding the merits

24   of the LBO-related causes of action.  The Court has

25   sufficient information to do the canvassing or the

1 canvassing plus to come to a conclusion as to whether, in

2 fact, the proposed settlements by the various parties are

3 reasonable or not.

4         Now in making this point -- and I want to clear

5 something up.  We're not seeking to limit discovery with

6 respect to other confirmation-related issues.  There's a

7 statement today by Mr. Dublin suggesting that the

8 intercompany claims was going to be a subject to a contours

9 motion.  It isn't.  We're not seeking to limit discovery on

10 the intercompany claims.  We're not seeking to limit

11 discovery on the valuation issues.  We're not seeking to

12 limit discovery with respect to whether, in fact, the

13 settlements were negotiated in good faith or whatever.

14 This is focused simply on the merits of the LBO-related

15 causes of action, the work that the examiner did, the work

16 that the committee did prior to the examiner.  We just think

17 the record is sufficient in that regard.

18         We're also not trying to limit or bar expert

19 testimony with respect to these issues.  In fact, it's our

20 expectation the experts will utilize the examiner's report

21 as a baseline by which to comment on the reasonableness of

22 the plans.  The examiner's report is a resource.  We believe

23 that the Court should make clear that it's a relevant

24 document; that people, including the Court, can rely on the

25 expert report; that the documents that are attached to the

1   expert report should be viewed as authentic; that there

2   shouldn't be any dispute in that regard.

3           Now that's not to say that it comes in for all

4   purposes.  It's premature to address that issue and the

5   like.  The specific -- but people should be able to utilize

6   the expert report and we've presented language to the Court

7   on Page 26 of our submission that lays out what we and

8   certain other of our plan co-components would be willing to

9   live with in that regard.

10          And, essentially, what it would be to do would be

11  to treat the report as if it was the report of a Rule 706

12  court-appointed examiner -- court-appointed expert; that the

13  report would not be binding on any party; the documents

14  would be authentic.  There wouldn't be any cross or further

15  discovery of the examiner.  That's our proposition --

16  proposal.  We've been criticized in the filing for putting

17  forward a proposal.  But nobody's come forward and said

18  exactly how they say -- at least Aurelius hasn't -- how they

19  see the examiner report being utilized.  We're amenable to

20  putting together some type of mechanism to work in that

21  regard.

22          As we'll talk about later with the case

23  management order, we don't think contention interrogatories

24  or RFAs is the right mechanism.  But, clearly, we've spent

25  an awful lot of money on this examiner report and it ought

1    to be utilized.  And I think the parties would be better off

2    utilizing their resources to do discovery on the other

3    issues and that the state of the record with respect to the

4    merits of the LBO-related claims is sufficient at this

5    juncture for purposes of the type of canvassing that the

6    Court is required to do with respect to assessing the

7    reasonableness of the settlement.

8           And that is not to suggest that that canvassing

9    is somehow narrowed or the like.  We think it's sufficient

10   for purposes of canvassing, canvassing plus or whatever it

11   is that the Court needs to do in that regard and that we

12   ought to focus the discovery on other issues so that we can

13   get to the confirmation hearing by March 7th.

14           I'll step aside and allow other parties to

15   address this issue.

16           THE COURT:  Thank you.

17           Does anyone else wish to be heard?

18           MR. MCCORMACK:  Good afternoon, Your Honor.  Tom

19   McCormack with Chadbourne and Park on behalf of the official

20   committee of unsecured creditors.  I rise to speak briefly,

21   Your Honor, in support of the debtors' efforts to bring

22   certain discipline and appropriate limitations to the

23   discovery process that is relative to the confirmation

24   proceeding.

1          We would agree that as to the LBO-related causes

2    of action significant discovery has already taken place.

3    There is a mass -- a massive record, quite frankly, from

4    which to draw arguments to and from with regard to the

5    reasonableness of the settlement of those claims.  We would

6    also agree that that limitation is not intended to stop

7    discovery that would be related to the intercompany issues,

8    to the settlement issues, and to other non-LBO causes of

9    action issues in -- in -- that would be relevant to the very

10   contested plan confirmation hearing.

11         Expert testimony, of course, will be across the

12   board.  It can be used for any purpose, as we've talked

13   about, consistent with the efforts to establish the

14   appropriateness and reasonableness of the settlements that

15   are the basis of the plan.  And as -- as Mr. Bendernagel

16   said, we are certainly amenable to coming up with

17   appropriate protocols to make as much use of the examiner's

18   report as appropriate so that this process can be more

19   streamlined.

20         That's all I wanted to say, Your Honor.  Thank

21   you.

22         THE COURT:  Thank you.

23         MR. JOHNSTON:  Jim Johnston, again, Your Honor,

24   for Angelo Gordon and Oaktree Capital.

1            Just very briefly on this point.  Let me offer

2   what may be a unique perspective on the issue.

3            You'll recall that last time around in the spring

4   my clients were on the outside looking in.  They didn't

5   support the settlement and didn't support the debtors' plan

6   that was put forward.  And you'll recall that we resisted

7   efforts to push through that plan before the examiner had

8   had a chance to investigate the issues and write his report.

9   You'll recall hearing me plead, I think on a couple of

10  occasions, that creditors be given the chance to re-digest

11  the examiner's report before ballots were cast.

12           And, ultimately, I think you agreed with the

13  sentiment that the examiner's report was going to be highly

14  relevant to any assessment of the appropriate resolution of

15  these cases through a plan, whether it be preservation of

16  claims, whether it be a settlement, you name it.

17           One thing we did not argue last time, even though

18  we were opposing the proposed plan as vigorously as Aurelius

19  and some of the others are opposing the settlement plan now,

20  was that we needed to have a trial on the LBO claims coupled

21  with all the discovery that would lead up to that trial as

22  part of the battle of a plan confirmation.  I think we were

23  the most vocal opponents of the plan and the settlement, and

24  even we didn't think it would have made sense or that that

25  was the appropriate way to contest confirmation of a

1    settlement plan by actually litigating the underlying issues

2    that were proposed to be settled.

3              We wanted to contest confirmation on the merits

4    and not obstruct it through a war of discovery at attrition.

5    We wanted the examiner to do his job and issue his report,

6    and then we wanted the ability to argue from that report as

7    well as from what's already or was then already an enormous

8    document depository compiled with the millions of pages of

9    production materials produced in response to the committee's

10   own investigation; that based on those materials that prior

11   plan shouldn't be confirmed because the settlement in it was

12   not reasonable.

13             So fast forward to today.  The examiner has now

14   done his job.  He has produced a thousand-plus page report

15   that I think I can safely say is comprehensive beyond

16   anyone's wildest imaginings.  On top of that the examiner

17   has put into the record virtually the entire basis for his

18   report, 1,100 exhibits, witness transcripts and the like,

19   and when you combined that with the huge record compiled by

20   the committee and the parties previously and the two years

21   of investigation and analysis of all the interested parties

22   you have a fulsome and ample record with which to make

23   decisions regarding plan confirmation as it relates to the

24   LBO causes of action.

1          We would submit that in this context the request

2     to preclude fact discovery as to the merits of those causes

3     of action makes perfect sense.  It's how we thought things

4     should have proceeded when we opposed the settlement plan

5     and it's how we think that things should proceed now that

6     we're a supporter of the settlement plan.  Everything that

7     has gone before in these cases indicates that after all the

8     time consumed and all of the money spent, it would be tragic

9     and ultimately pointless to force these estates to bear the

10    burden of massive -- what would be a massive and ultimately

11    pointless and wasteful discovery effort as to the merits of

12    these claims, and we would ask that Your Honor stop it now.

13          Thank you.

14          THE COURT:  Thank you.

15          MR. KAMINETZKY:  Good afternoon, Your Honor.

16    Benjamin Kaminetzky of Davis, Polk and Wardwell for JPMorgan

17    Chase's agent.

18          The good news, Your Honor, as you've heard is

19    that Aurelius and the other plan -- or settlement plan

20    opponents are being rather transparent.  Despite their

21    previous statements to the Court to the contrary which I'll

22    get to in a second, they're want -- they're seeking to

23    launch an unfettered World War III type discovery effort in

24    advance of the confirmation.  In the handful of months

25    between now and the March 7th confirmation, the order that

1    they propose to the Court calls for up to 160 depositions,

2    massive document discovery, unlimited -- that are unlimited

3    in scope -- and we saw a preview of that on Friday night --

4    and unlimited contention interrogatories and requests for

5    admissions.  In sum, they want to conduct discovery as if

6    all the parties are new to the case and we're just getting

7    started.

8             Now at last Monday's hearing we also got a taste

9    of Aurelius's litigation tactics.  They unabashedly

10   subscribe to the litigation school of ready, fire, aim; sue

11   everyone, launch everything, we'll sort it out later if at

12   all.  Just take a look at their toned down version of their

13   letter and their tactics of filing additional pleadings on

14   Friday night before a Monday hearing.  And just in the words

15   of a recent article quotes the Socal's representative in a

16   public statement where he unabashedly said we're looking at

17   a confirmation hearing free for all because we're not

18   backing down.  That's what they want.  That's what they're

19   unabashedly looking for.  So why shouldn't we give Aurelius

20   and their merry band of litigators the green light for

21   massive discovery?

22            Well, there's two reasons:  The facts and the

23   law.  Let's start with the law.  And there's no reason to

24   spend more than a minute on what the precise standard is

25   because it really doesn't matter.  We all know the 9019

1  standard and we all know that -- you know, what it says.

2  Aurelius wants to wish it away, but there it is.

3           But as I said, it doesn't really matter because

4  whether we're doing a canvassing, canvassing-plus, or a

5  complete spackle, paint and wallpaper job, it doesn't matter

6  because what we have here -- the record that we have here

7  after two years and after an examiner is more than enough,

8  no matter what kind of standard of review the Court would

9  ultimately want to do at the confirmation hearing.

10          And how do we know that the information we have

11 is enough no matter what kind of standard of review that

12 Your Honor wants to do?  The answer is because Aurelius and

13 its counsel already said so.  What do I mean by that?

14          First, Aurelius's present position that it needs

15 additional information to evaluate the settlement attempts

16 to divide the world into the real world and the litigation

17 world.  In the real world, Aurelius had sufficient

18 information to invest millions and millions of dollars of

19 its clients' money at -- to purchase bonds at a reported

20 forty-nine-cents on the dollar, while in the litigation

21 world they're standing here and pretending that they don't

22 know anything.  They need massive discovery.  They don't

23 really know anything about these causes of action.

24 Therefore, we have to spend the next several months with 160

25 depositions, massive discovery requests and the like.

1           Unfortunate -- and they're trying to keep a

2    straight face in both these worlds.  On the one hand,

3    they've made a business decision based on the information to

4    spend millions and millions of dollars to buy into this case

5    very recently.  On the other hand, they said we need massive

6    discovery because we don't know what's going on.

7           Second, Law Debenture and Fenterbridge,

8    representing the same creditor constituency that Aurelius

9    now purports to represent with the same lead counsel

10   previously joined the debtors' motion before the Court

11   seeking to limit discovery and the scope of the confirmation

12   hearing.

13          THE COURT:  Funny how things shift during the

14   course of a --

15          MR. KAMINETZKY:  It is.  And --

16          THE COURT:  -- litigation, isn't it?

17          MR. KAMINETZKY:  -- I mean, I could just quote,

18   "The confirmation is not going to be a plenary trial on the

19   merits of the LBO-related claims nor should it be."  That's

20   Law Debenture quote of the July 14th hearing.  "But I think

21   it's important" -- and I'm quoting again -- "but I think

22   it's important for the Court to observe that why we did

23   settle.  But to us" -- this is a quote, sorry.  "But to us

24   it is not to spend the millions of dollars necessary to

25   prepare a case as if it was going to trial on the merits."

1  Their words, not ours.  So all I'm asking is you take their

2  word for it and not mine.

3          Third, and most importantly, by any standard the

4  record developed by the examiners' three months, twelve-

5  million-dollar investigation was exhaustive and provides a

6  sufficient record for the Court to evaluate the LBO claims

7  being settled in the plan.

8          Finally, in the objector's papers they make

9  certain suggestions that the examiner's report was not

10  complete or was not exhaustive because there was some

11  haggling over privilege issues, some very complicated

12  privilege issues.  What they don't tell the Court is that at

13  the end of the day, JPMorgan, and as far as we know JP --

14  all the other parties as well capitulated completely to the

15  examiner on all the privilege calls.  And when we

16  capitulated to the examiner and provided him documents --

17  provided the examiner with documents that he wanted, those

18  documents became part of the record that's now available to

19  all the parties.

20          So, yes.  There was haggling over privilege, but

21  the bottom line is we gave into them.  We gave into the

22  examiner.

23          And let me conclude, Your Honor, it may not be

24  for today, but just for a word about the role of the

25  examiner's report at the confirmation hearing.  And I must

1 confess there's something rather ironic about this, and I'll

2 come back to that.

3          We always believed and continue to believe that

4 the examiner's report would be front and center at the

5 confirmation hearing.  Indeed, we thought we were rather

6 close to an agreement with Aurelius on this issue, and it

7 was always contemplated by the parties that the examiner

8 report would be used by the Court at confirmation to

9 evaluate the settlement.  Indeed, when Wilmington Trust

10 asked for the examiner, he -- one of the reasons they said

11 was it would "substantially assist this Court in evaluating

12 the proposed settlement."  The U.S. Trustee said:

13               "An independent and unbiased opinion as to what

14               is the truth go very far in assisting the Court

15               in being prepared for confirmation and addressing

16               all the issues that continue to linger in this

17               case."

18          And Your Honor responded to the U.S. Trustee by

19 saying, "That's almost spot-on express the preliminary views

20 about what should happen here for the reasons he has

21 stated."

22          Now what's the irony is that the settlement

23 opponents, such as Aurelius and Wilmington Trust have made

24 both statements to any reporter that would listen and, in

25 fact, right at this podium waiving around the examiner's

1   report saying that it vindicates their view and their

2   position.

3          However, now for some reason what they're doing,

4   ironically, is they want to pretend that it either doesn't

5   exist in the case of Wilmington Trust, or Aurelius wants to

6   redo the entire investigation themselves and wanted to, as

7   we heard on Monday, wanted to even excise any mention of the

8   examiner report from the responsive statements.

9          In sum, Your Honor, I submit that the examiner

10  report, which was preceded by a significant investigation by

11  the unsecured creditors' committee, because of the huge sums

12  of money spent by the examiner and all the parties on the

13  investigation, everyone in this courtroom knows more about

14  these LBO claims today right now than in any other

15  settlement or confirmation circumstance.

16         So bottom line, Your Honor, enough is enough.  We

17  respectfully request, therefore, that you enter the

18  solicitation and case management order proposed by the

19  debtors.

20         Thank you.

21         THE COURT:  Thank you.

22         MR. FLASCHEN:  Your Honor, Evan Flaschen for the

23  Step One loans.  I don't particularly like going after

24  Aurelius.  I'm just jumping up quickly, not because they

1  don't have good things to say, but they say a lot and I only

2  have a little to say.

3      One editorial if I may be so presumptuous, Your

4  Honor, you've already noted that a comment quoting circus

5  taken out of context and repeated in the press across the

6  country has not cast fair light on the parties and on this

7  Court.  I would simply ask counsel not to use phrases like

8  World War II -- World War III and merry band of litigators.

9  We can all make our points with your analogies and

10  hyperbole.

11      THE COURT:  I haven't seen much merriment here

12  anyways, but --

13      (Laughter.)

14      MR. FLASCHEN:  Litigators, I don't know.  They're

15  a different breed.

16      THE COURT:  Oh, they sure are.

17      (Laughter.)

18      MR. FLASCHEN:  We -- we the Step One lenders take

19  a great deal of comfort in what Mr. Bendernagel on behalf of

20  the debtors has said about the document depository, about

21  the examiner's report.  We don't presume that it is

22  admissible, per se, as evidence for all purposes.  We would

23  like it considered at the confirmation hearing, and if there

24  are particular items, such as a non-cross-examined

25  deposition or whatever, you can decide -- Your Honor can

1  decide them.  But the importance to us is the examiner's

2  report is part of the confirmation record.

3          Because of that, one other point there, Mr.

4  Bendernagel kindly offered that all 1,100 exhibits to the

5  examiner's report would be treated as authenticated and I

6  think that is also very helpful.  He mentioned 3 million

7  pages in a document depository.  I haven't looked at them so

8  I don't know what the right answer is, but is that stuff

9  also authenticated because it's in the document depository?

10 I --

11         MR. BENDERNAGEL:  I don't think I could be quite

12 that grand.

13         (Laughter)

14         MR. FLASCHEN:  It -- right.  But --

15         MR. BENDERNAGEL:  They're available to the

16 parties to look at, Your Honor, and they have been for a

17 long time.

18         MR. FLASCHEN:  I'm --

19         MR. BENDERNAGEL:  They were available to the

20 examiner and I'm quite sure most of the documents that he

21 reviewed --

22         MR. FLASCHEN:  My only point is I would hate to

23 use a document against JPMorgan and have them say, can you

24 prove that's a JPMorgan document.

25         THE COURT:  All right.

1          MR. FLASCHEN:  My main point is Mr. Bendernagel

2   said this does not limit discovery not related to the LBO-

3   related causes of action.  I just want to clarify that the

4   sharing provisions is not an LBO-related cause of action.

5   It is a separate dispute under a contract.  It does not

6   require a finding of fraudulent transfer to resolve the

7   issue in our favor or against us.  It requires discovery

8   particularly against the lead -- the agent and the lead

9   banks.  And I'll refer to a couple of comments in the

10  examiner's report that give me pause.

11          In discussing about some discovery manner --

12  matters, the examiner, and I'm quoting:  "At a minimum the

13  examiner greeted portions of the testimony furnished by

14  witnesses for the lead banks with a healthy dose of

15  skepticism."

16          A second point and critical to our sharing

17  provisions' dispute.  We have various theories, one of them

18  is that the conditions necessary under the credit agreement

19  in order for the newly incurred debt to the banks to be

20  treated as incremental debt -- a defined term -- you had to

21  meet all those conditions precedent.  One of those

22  conditions was that Tribune had to be solvent.

23          We are heartened that the examiner's report

24  thinks it is highly unlikely that Tribune was solvent, but

25  our focus is one, in fact, were they insolvent and, if so,

1    did the agent and lead banks know about that.  They did

2    commission their own solvency report which, apparently, they

3    were not pleased with.

4              And I'm referring now to the examiner's report

5    which says that the -- this is not a quote.  This is a

6    paraphrase.  The examiner took note that JPMorgan did not

7    produce any email or memoranda regarding the crucial

8    solvency analysis even other lead banks prepared.  So

9    hopefully this is just clarification that the sharing

10   provisions dispute are not LBO-related causes of action and,

11   therefore, we are -- when they say they are only limiting

12   discovery on LBO-related causes of action, they are not

13   limiting discovery on the issues that go to the core of our

14   complaint.

15             And we do not have a merry band of litigators.

16   I'm not sure we even have a band of litigators.  We're not

17   looking to do 160 depositions or commence any world or

18   regional or local war.  We have very focused discovery on

19   the issues surrounding the incurrence of the Step Two loans.

20             Thank you, Your Honor.

21             THE COURT:  Thank you.

22             MR. BERNSTEIN:  Your Honor, Don Bernstein from

23   Davis Polk.  Just a brief comment on what Mr. Flaschen just

24   said.

1          Mr. Flaschen just described to you the basis on

2    which the sharing issues are being raised and truthfully,

3    Your Honor, it -- it arises out of the application to this

4    leverage buyout transaction and the conduct of the parties

5    in connection with that transaction.

6          So if what Mr. Flaschen is saying is that it's

7    not LBO-related discovery, we just disagree with that.  It

8    is LBO-related discovery, Your Honor.

9          Thank you.

10          THE COURT:  All right.

11          MR. ZENSKY:  Good afternoon, Your Honor.  David

12    Zensky, Akin, Gump, Strauss, Hauer and Feld for Aurelius

13    Capital Management.

14          Mr. Flaschen is right.  Aurelius does have a lot

15    to say about this topic, and notwithstanding Your Honor's

16    comments before we broke.  And Your Honor is right that I

17    don't think I'm going to bring must merriment to the

18    proceedings today because these are serious issues that are

19    going to affect the outcome of this case and we should make

20    no mistake about that.

21          Your Honor, we think the debtors and their plan

22    co-proponents are asking you to tilt the playing field in

23    their favor so that they're running downhill and we're

24    running uphill.  And on top of --

1           THE COURT:  Okay.  Let me -- let me ask you to

2    pause for a moment and save you some breath.  I am not going

3    to order as a blanket matter the exclusion of discovery with

4    respect to LBO matters.

5           MR. ZENSKY:  Okay.  Well, that's --

6           THE COURT:  Okay.

7           MR. ZENSKY:  -- a lot of what I wanted to speak

8    to, but I think that I need to still speak to it because it

9    sounds like Your Honor is thinking about some kind of

10   limitation and --

11          THE COURT:  Yes, I am.

12          MR. ZENSKY:  Okay.  So I think I still need to --

13          (Laughter.)

14          THE COURT:  And, you know, I think in a way that,

15   despite the positions taken respectably by the parties in a

16   way that they might expect.  But I don't mean to cut you

17   off, but I just wanted to let you know that I agree with

18   you.

19          MR. ZENSKY:  Okay.  It -- the motion appears in

20   an effort to twist and contort the 9019 hearing into

21   something that coincides with their legal strategy perfectly

22   and prejudices the people who are opposing the settlement,

23   Your Honor.  And it's a settlement that coughs up what, as

24   you know, the people on this side of the room believe to be

25   a woefully inadequate amount of consideration for one of the

1    most notorious failed LBO's in history, fifteen cents on the

2    dollar for the non-LBO debt.

3            Now Mr. Kaminetzky said we don't need to talk

4    about 9019.  We all understand it.  Well, with all due

5    respect -- and I think very highly of Mr. Kaminetzky -- I

6    think they grossly misunderstand 9019 and what needs to

7    happen at the hearing, Your Honor.  And I start my analysis

8    with the Supreme Court and the TMT case.

9            And we all know that the Court said there that a

10   bankruptcy court sizing up a settlement has to come to a

11   reason judgment as to the probable outcome and compare the

12   proposed compromise with the likely rewards of litigation.

13   But most important for present purposes what the Supreme

14   Court said there, Your Honor, is how does the Court do it.

15   It has to "apprise itself of all facts necessary for an

16   intelligent and objective opinion of the probabilities of

17   ultimate success."  And I stress the word "facts," Your

18   Honor.

19           Now you've written on the subject, of course, as

20   you've reminded the parties on multiple occasions in this

21   case, and in Exide (phonetic) you told us that "The Court

22   has to reach an informed independent judgment supported by

23   the factual background underlying the litigation," and

24   that's how you evaluate the probability of success on the

25   merits.  And, of course, you also have the other factors

1  which I'll speak to later, the extent to which the

2  settlement is the product of arms length bargaining is

3  particularly important here.

4           In Spansion you made another important point that

5  bears centrally on this case and that is that when you're

6  thinking about whether a settlement is fair and equitable,

7  that you have to think about it from the perspective of the

8  people who aren't settling.  This is not a question whether

9  this is the right outcome for the estate to get it out of

10  bankruptcy in a hurry.  Whether the settlement is fair and

11  equitable has to be judged from the perspective of the

12  people whose property right is being taken away here, and

13  that property right is the expectation of sharing in the

14  litigation proceeds that the estate would receive were it to

15  proceed with these claims.

16           Now you've told the parties on multiple occasions

17  already that you don't view settlements as a gimmee.  You

18  made that comment, I think, at the first hearing I attended.

19  Previously, you said --

20           THE COURT:  I wish I had found a more eloquent

21  way to say that, but --

22           MR. ZENSKY:  We understood the point, Your Honor,

23  and agree with it.

1          You've said, I need to determine if the claims

2    are good or bad and I may have to do more than canvas the

3    issues.

4          Now that's another important phrase here that the

5    banks and the debtors toss around, "we're going to canvas

6    the issues."  Okay.  The others understand what that means,

7    Your Honor.  "Canvas the issues" goes to the output.  It

8    means that you don't have to adjudicate the claims.  No one

9    is asking you to make a definitive ruling on solvency.  No

10   one is asking you to make a definitive ruling on what was in

11   the state of mind of the debtors when they fudged with the

12   projections and lied to people about their ability to

13   refinance.

14         You have to "canvas the issues" means an overview

15   of the facts.  But it's not a constrain on what we can bring

16   to bear to try to show you what the likelihood of success at

17   an ultimate trial would be.  So it goes to the output.  It

18   doesn't go to the input.  It's not a short way of saying,

19   let's dispense with factual presentations and have a

20   glorified motion to dismiss hearing.

21         Now they feel that they have a lot of legal

22   defenses.  Fine.  If that's the strategy they want to pursue

23   at the hearing, they should just admit all of the

24   allegations in the complaint and argue their legal defenses.

1    That's one way to cut down on the hearing and cut down on

2    discovery.

3             But I don't think that that's what they're

4    proposing to do, Your Honor.  I think it's the opposite.

5    From their proposal on the use of the examiner report,

6    they're going to come in here and tell you either you can't

7    consider the factual findings in the examiner report or that

8    they're dead wrong.  So we're going to have a factually

9    contested hearing, Your Honor.

10            Now, you know, the last note on this particular

11   issue, you get the feeling that they think that 9019 just

12   has magical powers; that the debtor or the committee utter

13   the word "settlement" and presto, we -- the judicial process

14   goes away, and here's my hyperbole moment, Your Honor.  I

15   couldn't strip it all out from the -- from the hearing.

16            Now I -- I'm very fond of Mr. Bendernagel.  It's

17   the first time I've worked with him.  I think highly of him

18   as well.  But 9019 doesn't mean that my client and the other

19   people getting the short end of the stick on the settlement

20   should proceed over there and kiss his ring instead of

21   diligence to the settlement and to be able to do discovery

22   as to what's wrong with it.  And that's --

23            THE COURT:  I'm just glad you said "ring."

24            (Laughter)

25            MR. ZENSKY:  It was a careful --

1          (Laughter)

2          MR. ZENSKY:  It was a carefully thought out word,

3    Your Honor.

4          So, Your Honor, from -- from our perspective the

5    debtors and the committee have stepped over the line on

6    their fiduciary obligations to the creditors as a whole.

7    They're taking sides here.  They're trying to shield

8    JPMorgan and the other banks that did the deal from ever

9    having to give a deposition on the merits of this case, not

10   to get ready for a full trial.

11          If you were going to try this fraudulent transfer

12   case, it would be a thirty, forty-day trial.  There would be

13   fifty depositions just on the merits of the claim, and Mr.

14   Kaminetzky completely misstates our position on the number

15   of depositions and I'll get to that later.  You know, if --

16   if they thought this was a fair settlement, they should be

17   in favor -- and by "they" I mean the debtors and the

18   committee, Your Honor -- as the estate fiduciaries in a full

19   and open process to make sure you have the comfort and

20   enough factual background with witnesses in that witness

21   chair so that you can say, yes.  This is in the best

22   interest of the estate and it's fair and equitable to the

23   people objecting to the settlement.

24          But they're trying to do the opposite.  They're

25   telling you, don't let us have any discovery.  Don't let us

1    have any depositions at all.  Let's have a hearing with no

2    fact testimony whatsoever -- and I'll explain that in a

3    moment -- and just hope that you'll bless the settlement.

4    And I don't think that's what 9019 stands for, Your Honor.

5              Now the issues -- well, let me touch on one other

6    point.

7              I think their position would be wrong, you know,

8    in any case, in a garden variety case, but I would like you

9    to think about the context in which this is happening.  You

10   saw the reference in our papers to Mr. Shapiro's deposition.

11   Mr. Shapiro is the chairman of the special committee that

12   they set up to what we thought at the time, based on reading

13   the resolution, was take control over the settlement process

14   after the examiner report came out to take out of the

15   equation the debtors' insiders who did the deal and the

16   debtors' counsel, Sidley, who did the deal for the debtors

17   and have a separate entity of people not involved and

18   separate law firm counsel them.

19             So we were shocked when the testimony came out

20   that that's not really the way Mr. Shapiro saw his role and

21   it was not to supplant the debtors in the terms of

22   negotiating hard for the beneficiaries of the litigation.

23   It was just a kind of let's hope that the people come

24   together and get a settlement, and it's not my job to really

1   think about whether it's fair or better to litigate than

2   settle because the Court's going to think about that.

3          So the special committee says the Court's going

4   to think about it and then the debtors say, tie my hands

5   behind my back so I can't litigate the issue before you.

6   So, you know, they're talking past each other and trying to,

7   you know, squish us in the middle, obviously.

8          The second problem, Your Honor, is that we now

9   have not one, but two instances of spoliation by the members

10  of the board of directors of this company during the time

11  period that the settlement is being negotiated.  You saw the

12  references in our paper to Mr. Shapiro just cavalierly

13  discarding and shredding everything he got about the

14  settlement process while it was going on, and they knew that

15  the settlement was going to be challenged by Aurelius and

16  the other non-LBO lenders.  Their own emails say that.  They

17  say, we've got to set this up.  We've got to be ready for

18  Aurelius.  That's back in September before he starts

19  shredding his documents, and then if you saw the 2004 filed

20  on Friday by the debtors.

21         Now Mr. Michaels took his -- he's the -- was the

22  chairman of the board, and he went off on his way.  He took

23  his laptop and he fried it, erased everything on it.  So now

24  we have two members of the board of the directors who have

25  destroyed their documents, and this is the context in which

1    they're saying we should have no discovery in a five-day

2    hearing and don't worry about it.  It will be a fair trial.

3           So the issues -- I did digress and I'll move on,

4    Your Honor.

5           9019 requires you to have a factual hearing and

6    here we're not talking about claims in the abstract anymore.

7    We have a real live adversary proceeding on file with

8    thirteen counts in it against JPMorgan and the banks and

9    Angelo Gordon and Oaktree and the holders of the debt, and

10   that's what the debtors want to release and that's what you

11   have to assess for the 9019 piece of this at the hearing.

12          So I know Your Honor is familiar with the claims,

13   but let me take it down one issue and think about the issues

14   that you will have to think about to determine the

15   likelihood of success on the merits.

16          So for starters you're going to have to think

17   about, for example, what projections were the right

18   projections that should have been used at the time of Step

19   One, at the time of Step Two, to properly assess the

20   solvency of the company:  Should Step Two debt be included

21   in Step One; utilizing reasonable projections, does the

22   company pass all the solvency tests at the time of Step One

23   and at the time of Step Two.

24          Now more important or more to the point of

25   present purposes, what was the debtors' knowledge and intent

1    at the time of Step Two with respect to the projections that

2    it proffered for the solvency analysis.  You know if you saw

3    the examiner's report there was an awful lot of shenanigans

4    going on with respect to the debtors and the solvency expert

5    that they had, VRC, in directing them:  Use these

6    projections; no, use these projections; use this

7    methodology; don't use this methodology.  So that's an

8    important issue in terms of the likelihood of success, Your

9    Honor.

10           What was the knowledge and intent of each of the

11   banks, Your Honor?  You saw that that was an area that the

12   examiner devoted a lot of attention to, and rightly so.

13           And critically, not in a full trial, not asking

14   you to adjudicate the claim, Your Honor, but in a 9019

15   hearing where you're going to canvas the issues, some of

16   that is going to turn on the credibility of the witnesses.

17   I don't see how you can decide any of those issues, how you

18   can decide the likelihood of success that the committee

19   complaint for intentional fraudulent transfer can be proved

20   up if you don't have people sitting there who did the deal

21   at the time.  It's impossible.

22           So if -- as I said before, if the banks and the

23   holders want to short circuit things, I'll accept the

24   stipulation that everything in the committee complaint is

25   true and could be proven at the hearing, and then I would

1    agree that we don't need too many depositions on the merits

2    and we could shortcut down on a lot of things.

3              So if the banks want to admit Paragraph 3, that

4    they recognize the LBO would render the company insolvent or

5    create a high risk of insolvency, I'll take that stipulation

6    and cut down on our need for discovery, Your Honor, on the

7    merits.  If they want to stipulate that the debtors -- and

8    now I'm quoting Paragraph 133 -- "structured the LBO

9    financing with actual intent to hinder, delay or defraud the

10   non-bank lenders," that will cut down on the length of the

11   hearing I suspect and we'll end up in a debate about their

12   legal defenses.  Okay.

13             Do they want to admit Paragraph 691, that the

14   debtors made unjustifiable changes to their projections on

15   the eve of closing Step Two and mislead the company's

16   solvency expert?  I think you get the point.  I'll stop if

17   they want to --

18             THE COURT:  I actually got --

19             MR. ZENSKY:  -- come up and --

20             THE COURT:  I got it awhile ago.

21             MR. ZENSKY:  Yeah.  Okay.  So --

22             THE COURT:  I understand your position and I'm

23   going to give you the opportunity to take within --

24             MR. ZENSKY:  Okay.

25             THE COURT:  -- certain limitations --

1          MR. ZENSKY:  Then that's what I'll turn to, Your

2    Honor.

3          THE COURT:  -- discovery.

4          MR. ZENSKY:  Okay.  The untrammeled -- let me

5    talk about the untrammeled discovery that they say that we

6    want.

7          We served the debtors with our document requests.

8    There are five requests that go to the history -- the

9    transaction itself, the historical merits, which -- which

10   they say there should be no discovery.  And each of the

11   requests says, "to the extent you have not yet put in the

12   deposit -- document depository, produce the following."

13   Okay.  It's not asking them to reproduce millions of

14   documents.  If they produced all the documents relevant to

15   the transaction and they're in the depository, there's

16   nothing to do on that issue.

17         Let me tell you what this is really about, and

18   you heard it come out before.  The examiner found that the

19   banks and the other parties took suspect positions on

20   privilege.  Okay.  So they figure that -- and they did not

21   capitulate on that, Your Honor.  Mr. Kaminetzky is mistaken.

22         What they capitulated on was confidentiality with

23   what they did turn over.  They agreed that the examiner

24   could publish that.  They never capitulated on their

25   spurious claims of privilege; that the business people could

1  get together and talk about whether the company was solvent

2  and whether they should close Step Two, and they're claiming

3  privilege over that.

4          So here's the secret hidden agenda on this issue,

5  on document production.  If they get you to shut it down,

6  which you've said you won't, we'll never have a chance to

7  demand those documents.  They won't have to claim privilege

8  and we won't get to come back to you and ask you to rule on

9  that privilege.  So that was the first point that they

10 weren't telling you.

11         The second is on depositions, Your Honor.

12 They're telling you there should be no fact depositions of

13 any kind.  Well, we can't have a hearing with fact witnesses

14 if we don't have fact depositions, but should I subpoena

15 thirty people to come to my five-day hearing and put them on

16 the stand and take my deposition during the trial?  I don't

17 think you would want that.  I don't think that's a wise use

18 of the Court's time.

19         And what about ex-employees?  I can't subpoena

20 ex-employees to come to this hearing.  And, surely, they

21 don't think that they can bring witnesses in to testify to

22 you if we don't have an opportunity to take depositions.

23         So that's what I was getting at in our papers

24 when I said that they want to have a hearing without fact

1  testimony about the underlying transaction.  And Your Honor

2  knows that's not how a 9019 hearing works.

3       Now let me touch on the examiner report because

4  here's where I think today's proceedings merge or move from

5  the overreaching to the utterly inexplicable.  Okay.

6       The whole basis of this approach to shut down

7  discovery is we have this examiner report, but then you

8  heard Mr. Bendernagel tell you it's completely premature to

9  address what use or how it can come in at the hearing.  They

10  made their motion without any commentary whatsoever about

11  how it could be used.  And we wrote to them and said what --

12  what's your position and they still had no position, and it

13  didn't surface until their reply papers, which is what Mr.

14  Bendernagel was quoting to you, and what they giveth with

15  one hand, they taketh with the other, Your Honor.  They say

16  it's a relevant document and we should all get to comment on

17  it, but every single objection to the use of it is

18  preserved.

19       So the moment -- they're telling we should have

20  no discovery because we have this great examiner report and

21  the moment I try to draw your attention at the hearing to,

22  well, the examiner found this and his conclusion of this

23  witness was that, objection.  Hearsay.  And Your Honor has

24  looked at this.  I mean, it was more surprising to me that

25  they said nothing giving that in your case in TRS you were

1  very careful about the degree to which you relied on an

2  examiner report.

3           THE COURT:  That was not my case.

4           MR. ZENSKY:  Excuse me.  Okay.  In -- in that --

5  well, the --

6           THE COURT:  Well, let's put it this way.  It's a

7  name I don't recognize.

8           MR. ZENSKY:  Okay.  I'm sorry, then.  I may be --

9  I was fairly sure it was your case where there was an

10 examiner report and the comment was, I'm only going to rely

11 on it for non-controversial background facts and nothing

12 more.

13          THE COURT:  Oh, Century.

14          MR. ZENSKY:  Yes.  I'm sorry.  I thought TRS is

15 in the caption of that case and I'm sorry.  That's --

16          So given that that was your brush with examiner

17 reports, to then come in and say, well, don't give them

18 discovery because there's an examiner report, but we'll

19 figure it out when we get to the hearing, as I said, is the

20 -- is inexplicable, Your Honor.

21          And if we look at the cases where examiner

22 reports have come in at a confirmation hearing like Best

23 Products or Granite, they came in, but there was still

24 widespread factual development at the hearing and there was

25 discovery in aid of that.  And when you signed the examiner

1  order -- the order appointing examiner, in Paragraph 13, I

2  believe, it says that, "This order will not impede the

3  rights of any party to request other lawful relief."  So one

4  would think that that includes the right to do confirmation

5  discovery, Your Honor.

6          Now as far as the proposal that all the documents

7  that are attached are deemed authentic, it's wonderful.  We

8  agree with that.  But that doesn't resolve all the

9  objections that I am certain are going to come with respect

10 to documents as to whether they're hearsay or you haven't

11 proven an adequate foundation for a business record or a

12 present sense impression.

13         So they're very, you know, clever the way they

14 propose it.  They're authentic.  They didn't agree to

15 stipulate to every piece of factual evidence that one might

16 need to lay a foundation to get it in.  How can we do that

17 without depositions, Your Honor.  It's impossible.

18         I'm not really sure where the debtors are anymore

19 on their proposed limits on expert witnesses.  They try to

20 say in their papers that the expert should be directed to

21 speak only to the reasonableness of the settlement and I --

22 I got a kick out of that because when I looked back at the

23 initial expert disclosures from the prior plan, that's how

24 the debtors described what their expert will testify to.  So

25 this is a really neat trick, Your Honor, if you can have

1   your expert craft his opinion and then get the Court to say,

2   everyone else has to only opine on what my expert's going to

3   opine on and nothing else.

4           Well, as we say in our papers, they're fully

5   ready to go.  JPM's hired one of the most prolific experts

6   in the country.  He'll come in here and give you his views

7   on solvency and insolvency and we should have no less than

8   that opportunity.  I just don't understand what kind of

9   limitation it is they think is appropriate and, as you know,

10  the experts even in a 9019 setting always give their view on

11  what the ultimate success would be on the merits of each of

12  the elements or not.

13          Now I know I heard Your Honor loud and clear --

14          THE COURT:  Well, not necessarily, not always, in

15  terms of probability.

16          MR. ZENSKY:  In terms of --

17          THE COURT:  Sometimes they do and sometimes they

18  don't.

19          MR. ZENSKY:  Okay.  Well, certainly, in Capmark,

20  the case they cite as the paradigm here, the experts came in

21  and gave opinions on solvency and insolvency.  In Exide we

22  had experts come in and give opinions on solvency and

23  insolvency at the time of the challenge and -- challenge

24  transaction, and we had discovery and we had fact testimony

1   at the hearing as well, Your Honor, as I'm sure you

2   remember.

3            THE COURT:  I do.  My children have never come

4   back to see another hearing.

5            (Laughter)

6            THE COURT:  After they --

7            MR. ZENSKY:    Well --

8            THE COURT:  After they heard the experts.

9            MR. ZENSKY:  And I've warned my daughter never to

10  call at eight o'clock when I'm in court.  If you remember my

11  cell phone went off one night and -- and that's why I don't

12  get to use hyperbole at home anymore because now she's

13  eleven and I get called on it.

14            I do want to talk about the length of the hearing

15  a minute because I heard you before the break, Your Honor,

16  but when I was here last time and you scheduled the first

17  five days you said, I'm not making any ruling.  This is just

18  the first five days.  And then you appear to -- I'm not sure

19  what the ruling is or isn't, but I would like an opportunity

20  to be heard on that issue if it's any --

21            THE COURT:  The answer is I am not now setting

22  aside additional time for confirmation.

23            MR. ZENSKY:  Oh.

24            THE COURT:  That's the ruling.

1           MR. ZENSKY:  Okay.  And am I pushing it if I ask

2    to be heard on that issue as to whether that's adequate --

3           THE COURT:  It would be --

4           MR. ZENSKY:  -- time or not?

5           THE COURT:  It would be to no avail.

6           MR. ZENSKY:  Okay.  That's --

7           THE COURT:  And I know you think it's not.

8           MR. ZENSKY:  I'm sorry, Your Honor.

9           THE COURT:  And -- I said I know you think it's

10   not adequate time and you may ultimately prove to be right.

11          MR. ZENSKY:  Okay.  Well, my real position was,

12   as I said last time, it's premature in our view to decide

13   how long will be needed until we get closer and everyone has

14   a sense of what witnesses they want to bring in and what

15   arguments are still being made or not.

16          THE COURT:  Well, you know, the way my calendar

17   works, I can't wait until then to lock in time.  Even in

18   March now I have to do that.  So it may be that we'll be one

19   session and followed by another one which will be several

20   weeks later.

21          MR. ZENSKY:  Okay.  Well, on the issues, then,

22   that we've addressed so far, Your Honor, we would ask that

23   you deny any limitation on the -- our ability to take

24   discovery on the merits.  As I've already told you, we're

1  not asking for the reproduction of documents that are

2  already in the depository.

3          As far as the number of depositions and the scope

4  of that, I think by agreement that's an issue for the second

5  part of today's proceedings when we go through the CMO,

6  unless you want it addressed now.

7          THE COURT:  Let's -- I mean, it's all related.  I

8  mean, frank -- well, let me -- let me tell you what my goal

9  is, and I -- maybe I should have said this earlier.  But

10  what I would like to do is get an order approving the

11  disclosure statement done within the next couple of days so

12  that that process can be mapped out and move forward.

13          My inclination is, frankly, that the parties need

14  to talk more about a discovery schedule.  And, you know,

15  there is an omnibus hearing coming up next week and I think

16  the parties ought to use the time between now and then to

17  drill down a little bit farther and get a little closer on

18  what should be permitted or not.  I've already given you one

19  parameter with respect to the scheduling of the confirmation

20  hearing which, I think, will inform other dates --

21          MR. ZENSKY:  Sure.

22          THE COURT:  -- happily or not.

23          I'm prepared -- but I'll hear everyone else from

24  whom I've not yet heard who wishes to be heard on the

25  issues, whatever it is they want to tell me, but I do have

1  some broad strokes to offer in terms of what I like about

2  what the respective parties have suggested, which I hope

3  will be helpful in their further discussions.

4           MR. ZENSKY:  Okay.  I think that we've made a lot

5  of progress from our initial meet and confer.  We have

6  narrowed the issues, as you can tell, from the chart of the

7  debtors to eight or nine provisions, and I understand and am

8  happy to go back to the drawing board with Mr. Bendernagel

9  and the other counsel on that.

10           I do want to make one point and then I'll yield

11  the floor, Your Honor; that I think there was a statement

12  that we had not given or Aurelius had not given its position

13  on the examiner report and that's not correct.  It's our

14  view that it should come in for all purposes.  Okay.  That

15  is a completely important part of the record at the hearing

16  and that all parties reserve the right to challenge the

17  findings and the conclusions.

18           That is a much more aggressive use of it than the

19  debtors are proposing or anyone on this side of the room

20  because they want to say we have this great examiner report,

21  but when we get to the hearing say, you can't pay attention

22  to any of the material part of it.  So that should be clear.

23  We are in favor of the broadest possible use of it.

24           THE COURT:  Thank you.

1              Is there anyone else from whom I have not yet

2    heard wish to be heard?

3              MR. SIEGEL:  Yes, Your Honor.

4              Thank you, Your Honor.  Martin Siegel from Brown

5    Rudnick for the Phones -- Wilmington Trust as indentured

6    trustee for the Phones.

7              First of all, with regard to the Phones, Your

8    Honor, a lot has been said about who is coming in, who is

9    complaining.  At least the majority of the holders of the

10   Phones purchased their notes at or about the time of the

11   LBO, some before, some around that time.  So we think we

12   represent a constituency that's due to get zero under the

13   plan, under the current plan that has at least a unique

14   perspective.

15             THE COURT:  Yeah.  It's nice to see someone who

16   was around at the beginning every now and then.

17             MR. SIEGEL:  And we also have a unique

18   perspective, which I'll get to in a moment, since we're the

19   ones who asked for an examiner.  We've been in the case

20   since the beginning and we've been consistent throughout.

21   And I'll tell you in a moment why, notwithstanding what they

22   say, why we haven't changed our position on the use of the

23   examiner and what you should do.

24             First of all, as reflected in our -- in our

25   objection we think you got it right in July -- on July 14th

1   when you gave some preliminary views that you weren't going

2   to restrict discovery and that you'll wait until at the

3   confirmation hearing or shortly before when we do pretrial

4   orders, when you've seen the objections, when a lot more

5   facts are, when you'll determine what the standards are.

6   And we're glad to see that at least your first reaction

7   today is very similar that you're not going to put

8   restrictions on discovery.

9           But I want to at least focus on a couple of those

10  issues and in deals with that I think Mr. Flaschen raised

11  and a little bit that Mr. Zensky raised.  What is fact

12  discovery related to the LBO-related claims which is what

13  they're seeking to restrict.  And in particular, there are

14  issues that -- well, the Phones have some common issues with

15  everybody.  We have some unique issues that we want to make

16  sure do not get foreclosed by the way we come out today.

17          And that deals with issues such as equitable

18  subordination, good faith, whether or not Step Two --

19  whether the Step One lenders get to share in the

20  disgorgement that comes from whatever happens with Step Two

21  because, again, the Phones right now are getting zero.

22          And one issue that's been lost throughout this,

23  the debtor says and the plan proposes a settlement in which

24  the Phones contractual subordination is enforced.  They just

1  assume that that's the fact, propose the plan and now let's

2  look whether it's fair and equitable.

3          Well, the Phones don't agree that the LBO banks

4  can enforce the contractual subordination.  It will be a

5  confirmation objection, but when you get to discovery, the

6  discovery on the reasons why it's not enforceable, we

7  believe that the indenture clearly provides that it's not

8  enforceable if the people -- the senior lenders seeking to

9  enforce it did not act in good faith.  And that's an issue

10  that goes, perhaps, to the sharing agreement.  It goes to

11  the issues of the LBO-related claims, and it also goes to

12  confirmation objections by the Phones.

13          And so we want to be clear, you know, facts can

14  be used for many different parts and -- and facts such as

15  the banks acting in good faith, what they knew.  Mr. Zensky

16  mentioned some of those; that those do not get foreclosed

17  regardless of how you come out on discovery or other issues

18  because we have a right to pursue that confirmation

19  objection.

20          Similarly, back at the July 14th hearing, Mr.

21  Stark was here.  I think he made it clear that one issue in

22  agreeing to an examiner, in talking about plan confirmation

23  is the Phones' complaint for equitable subordination.

24  That's still out there.  We've been waiting to see what

25  happened with these proceedings.  It may be time now that we

1    have to gear that up because the facts upon which our

2    complaint our raised are very similar to the LBO causes of

3    action.  But we have a right to pursue that claim and you'll

4    have to decide, at the appropriate time, whether those facts

5    get determined at the same time as confirmation or whether

6    separately.

7              But those facts need to be litigated.  They need

8    to be -- discovery has to be had as to them.  So there are

9    certain things that are unique to the Phones, but the facts,

10   whether they're used -- the facts are facts and how they're

11   used are issues that the Court is going to need to

12   determine.  Any restriction on our ability to take discovery

13   on those facts, obviously, we oppose.

14             In our most recent objection, since we have been

15   around in these cases objecting for a long time, sometimes

16   alone, we merely incorporated our previous pleading that we

17   filed in July.  I don't know if Your Honor had a chance to

18   read that.

19             But in our July objection, which is now

20   incorporated as part of this objection, we talked about due

21   process rights.  Obviously, due process rights when you're

22   objecting to a plan not only include the ability to take

23   discovery, but, also, the ability to have an opportunity at

24   the hearing to present your arguments.  And I'm not going to

25   go into those facts -- you know, that issue now because I

1   think you've ruled on discovery with regard to the hearing.

2   We think we'll have an -- we hope we have an opportunity to

3   show you why we think that we will need sufficient time to

4   present facts as to why the settlement is not fair and

5   reasonable.

6          But there are a couple of things that I want to

7   talk about the examiner.  Yes.  We asked for an examiner.

8   The reason why we say you can't just rely on the record that

9   they want you to rely on, the two things they point two:

10  The committee's investigation.  I'm not going to go into a

11  lot of the hyperbole that's been set forth by the parties.

12  But, clearly, that investigation was done very early before

13  most of the discovery -- the documents -- these 3 million

14  pages, most of it hadn't been produced at the time they

15  started depositions.  The examiner himself noted that he was

16  surprised to find that the committee only took seven

17  depositions.

18         Then we get to the examiner's report.  The

19  examiner's report is incredibly thorough, more than anybody

20  could hope.  That, however, doesn't make it admissible and

21  that's where we run into a problem.

22         Let me just cite you from the Fibermar (phonetic)

23  case, which is one of the cases that everybody cites, and

24  I'm quoting now:

1              "The facts as found by the examiner are not

2              'true' just because they are in the report.  They

3              explain and justify the examiner's conclusion.

4              That is all.  The examiner's rendition of the

5              facts may not be relied upon to prove the truth

6              of the matter."

7         And most crucial:

8              "Rather, if parties wish to prove the accuracy of

9              the examiner's conclusions in court, they must do

10             so with admissible evidence."

11        The fact that we asked for an examiner doesn't

12   mean that the examiner's report can be used to restrict our

13   rights to discovery and it doesn't mean that it can be used

14   to restrict the evidence that you hear at the trial.

15        I was also before you in _Spansion_.  We know very

16   well the issues that you considered there.

17        THE COURT:  So you're making all the fights.

18        MR. SIEGEL:  Well, you know, we do what we can,

19   Your Honor.

20        THE COURT:  I can't get away from contentious

21   confirmation hearings.  I don't know what it is.

22        (Laughter)

23        MR. SIEGEL:  The reason why we say that the

24   examiner's report is hearsay and you can't just admit it --

25   although we do drop a footnote and say we're willing to

1  consider a regional stipulation -- is we think we're getting

2  jammed and we don't like it because what they're seeking to

3  do is reserve all the rights to object to the examiner

4  report after the time for discovery has passed, and then we

5  find out we didn't take discovery.  We get here and they

6  object on hearsay or other grounds.

7          And I might point Your Honor to last Thursday's

8  decision in the Wamu confirmation hearing in which Judge

9  Walrath, last Thursday, I guess that's December 2 -- and I

10  have a copy of the transcript if Your Honor would like --

11          THE COURT:  Probably right in this very

12  courtroom.

13          MR. SIEGEL:  And Judge Walrath -- similar issue.

14  In fact, it was one of the parties moving to exclude the

15  examiner report was counsel that moved for the examiner

16  report.  And the same issue came up, was the examiner's

17  report hearsay, and Judge Walrath wrote:

18          "I'm going to exclude the examiner report from

19          the record and the confirmation hearing.  I don't

20          think it's admissible as an expert report or oral

21          argument for the reasons I've just said.  I don't

22          think it's a futile gesture to appoint an

23          examiner and then not use the report.  The

24          parties did no object it could be admitted."

1            I think that was probably supposed to say if the

2    parties did not object it could be admitted.

3            "I think that the potential advantage of having

4            an examiner is to have a third party review the

5            facts and, perhaps, allow all the parties to

6            reach a consensual resolution because they at

7            least had a third party testing the debtors'

8            species" -- it says, but I don't know what that

9            meant -- "but I think once we get to court and

10           litigation, I don't think it's appropriate to

11           enter and I think it's hearsay.  So I will

12           exclude the reference to the examiner's report

13           from the record."

14           If Your Honor likes I have a copy of the

15    transcript to hand up.  But that's the transcript.

16           THE COURT:  All right.

17           MR. SIEGEL:  So when you put all of this

18    together, we think your ruling in July should now be

19    formalized and I hope you're leaning in the same way.  There

20    should not be restrictions on discovery other than when we

21    get to disputes.  Your Honor knows how to resolve those

22    disputes.  And when we get to -- closer to confirmation we

23    do -- the objections are in.  You know what plans have been

24    voted on.  We'll go through the pretrial order stage and at

1  that point Your Honor will tell us what -- how you're going

2  to shape up the hearing.

3          But now is not the right time to tell opponents

4  to the plan that they cannot take discovery or that they

5  can't introduce evidence at trial.

6          Thank you, Your Honor.

7          THE COURT:  Thank you.

8          MR. KORPUS:  Good afternoon, Your Honor.  Sheron

9  Korpus of Kasowitz, Benson, Torres and Friedman for Law

10 Debenture.

11         Your Honor, we filed a joinder with the Aurelius

12 objection and I agree with everything that Mr. Zensky said.

13 A couple of brief points.

14         First of all, I want to correct the record.  I

15 heard counsel for JPMorgan Chase say that Law Debenture is

16 being inconsistent with the position we took in the case

17 when we were a settlement proponent together with JPMorgan

18 and some other parties.  That is not the case.  If Your

19 Honor look at those pleadings we never argued, even at that

20 time, there shouldn't be any fact discovery.

21         In fact, at that time there was already

22 depositions that had been agreed to and had been scheduled

23 of JPMorgan witnesses and debtor witnesses, and everybody

24 recognized that those should go ahead.  So we have never

25 argued that there should not be any of those -- that fact

1   discovery, and I have a lot less to say on that matter now

2   that Your Honor has indicated that he agrees that there

3   should not be a limitation on discovery on the LBO-related

4   causes of action.

5          The other point I want to say on this -- on the

6   expert report, Your Honor, is I respectfully disagree with

7   Mr. Siegel.  Now is the time for the parties to understand

8   what would be the role of the expert report in the case and

9   we do not think it would be constructive to come to the

10  confirmation hearing -- and I do have the same fear that Mr.

11  Zensky has, that the second -- notwithstanding what the

12  debtors say in their papers.  They were very careful in the

13  way they crafted those papers.  And we do have a concern

14  that they will make objections as to the admissibility of

15  certain portions of the report.  And if that's going to be

16  done, we would like to know that now rather than later.

17         Thank you, Your Honor.

18         THE COURT:  Thank you.

19         MR. ELLIOTT:  Good evening, Your Honor.  David

20  Elliott from White and Case on behalf of the bridge agent,

21  Wells Fargo.  I promise I will be extremely brief.

22         I just wanted to point out with respect to fact

23  discovery that I believe that the -- the burden and the

24  issues raised by the plan proponents with respect to

25  document discovery is overstated.  I think that the great

1    bulk of the materials, documentary materials that the

2    parties are going to need have, in fact, been provided in

3    the document depository.  And the -- for the -- speaking for

4    the bridge agent, we don't see a great need for additional

5    documentation relating to the LBO-related causes of action.

6            The difference, though, is in the context of

7    depositions.  We had noticed a number of depositions on the

8    first go around.  Those were all put off because the

9    examiner's report was coming and people wanted to see what

10   it said.  Well, now we've seen what it said and we would

11   like to go forward with those depositions.  And we think

12   it's important, Your Honor, also to level the playing field.

13           The debtors and the -- their plan proponents have

14   access to the primary actors described in the examiner's

15   report:  The Tribune management, the arrangers personnel as

16   well.  We haven't had a chance to sit down with those people

17   and depositions will allow us to do so.

18           Last point, Your Honor, is with respect to expert

19   reports.  It sounds like today that the debtors don't appear

20   to be arguing for significant limitations on -- on expert

21   reports.  We hope that's the case.  We think it's very

22   important that the objectors to the debtors' plan have the

23   ability to put in expert reports on insolvency, the nature

24   of their projections, things like that, to assess the

25   conclusions in the examiner's report, however they may come

1    in, and feel that there should be no limitations on those --

2    on expert reports.

3              Thank you, Your Honor.

4              THE COURT:  Thank you.

5              Anyone else?

6              MR. BENDERNAGEL:  I'm certainly happy that I

7    broke this up into parts, Your Honor.  It sounds like we

8    covered more than simply the question of LBO-related

9    discovery and went into a lot of different areas and I guess

10   that's good.  But I don't want to try to respond to all of

11   these claims.  There's a lot of mischaracterization of the

12   examiner's report in some of the statements and the argument

13   that -- by Mr. Zensky that he only had one instance of

14   hyperbole seem to be a little bit overstated.

15             But let me try to be constructive in this regard.

16             First of all, with respect to the use of the

17   expert reports, the lawyer for the bridge indicated that we

18   had -- didn't seem to be pressing the point to try and

19   narrowly constrain it and that's true.  I mean, in the case

20   management order it specifically states in a paragraph that

21   is not objected to by either party, Paragraph 17, that those

22   issues will be dealt with later, and that is the issue that

23   you were asked to address at the July 14th issue (sic).  It

24   did not relate -- the July 14th issue related to the expert

25   testimony, not to fact discovery.

1             What we're trying to do by this aspect of the

2    motion is use the examiner report and what's gone on before

3    as effectively as possible so that we can get to a

4    confirmation hearing quickly.  We would be very, very

5    interested in your views in this regard.  We don't think the

6    discovery with respect to the LBO issues should be

7    unfettered, nor do we think it's necessary.

8             You hear Mr. Zensky stand up here and say, wholly

9    inadequate.  If it's wholly inadequate, why does he need

10   extensive discovery to demonstrate that.  You would think

11   that the record was sufficient for that purpose.  But I'm

12   not going to argue that point right now.

13            What I would like to point out is that we do

14   think it would be helpful and we made this point straight

15   away in the statement that we think it's helpful to come up

16   with a mechanism that basically figures out how we can

17   utilize the examiner's report effectively in the case.  We

18   don't think RFAs and contention interrogatories is going to

19   do anything other than kill a lot of trees and waste the

20   parties' times.  But a mechanism by which the parties sit

21   down, starting sooner rather than later, and try to

22   determine what benefit we can get out of this for purposes

23   of structuring this hearing is probably a helpful thing.

24            Secondly, with respect to some of the issues --

25   the other issues that are up for discussion today, we do

1    think that limitations on fact depositions, forty

2    depositions per proponent group with no showing of need

3    makes no sense.  We can't do 160 depositions --

4            THE COURT:  I agree with that.

5            MR. BENDERNAGEL:  -- at this juncture.

6            THE COURT:  I agree with that.

7            MR. BENDERNAGEL:  And we also think that

8    privilege documents by document by document isn't going to

9    work.  We think categories is more than sufficient, and

10   there are going to be a lot of privilege disputes as

11   evidenced by what was filed on Friday night, and that we

12   ought to get cued up, but we ought to do it on a category

13   basis, not a document by document basis.  We'll be here

14   forever.

15           THE COURT:  Well, I don't -- I don't know how to

16   answer that question today.  I will tell you in the past

17   what I've done is, you know, invited parties to identify

18   selected documents from categories and I've reviewed them in

19   camera.

20           MR. BENDERNAGEL:  Well, I just think -- what

21   we're trying to avoid is expending enormous amounts of money

22   and time putting together documents that will never be

23   utilized effectively.  Looking at the discovery requests

24   that were served on the debtor Friday night, there were a

25   bunch of privilege issues that are going to come up, but

1   they can be addressed on a category basis.  They have

2   nothing to do with specific documents.  And at least as a

3   starting point --

4           THE COURT:  Well, but --

5           MR. BENDERNAGEL:  -- that's how we ought to do

6   that.

7           THE COURT:  -- but the point there always is,

8   especially given the level of mistrust here, that -- and not

9   to put words in anybody's mouth -- but, okay.  You can say

10  they're privileged, but how do we know.  You know, I --

11          MR. BENDERNAGEL:  Well --

12          THE COURT:  At some point that proposition will

13  need to be tested.

14          MR. BENDERNAGEL:  I agree with that completely.

15          THE COURT:  Okay.

16          MR. BENDERNAGEL:  And I think we can do it better

17  on a category basis than a document by document basis.  And

18  I think we can demonstrate that and I think that's going to

19  come up as a result of the objections that are filed to the

20  discovery requests, Your Honor.

21          But I do think it would be helpful to get some

22  guidance on each of the seven issues that are still floating

23  out on the case management order because --

24          THE COURT:  Well --

1          MR. BENDERNAGEL:  -- we have spent a lot of times

2     in the last couple of weeks --

3          THE COURT:  Why don't you run through them real -

4     -

5          MR. BENDERNAGEL:  Sure.  If you take a look at

6     Pages 7 through 9, the first issue is close of fact

7     discovery and this is simply a straightforward call.  We

8     would propose that fact discovery close at February 4 so

9     that expert discovery can move forward.  Aurelius is

10    proposing that fact discovery close on February 18th, except

11    for fact discovery necessary to expert reports, and I don't

12    know how you would ever be able to figure that out.  I just

13    think there ought to be a solid date before the first expert

14    discovery that basically says fact discovery is done.

15         THE COURT:  Tell you what, before you proceed,

16    let me -- let me try something this way.

17         MR. BENDERNAGEL:  Sure.

18         THE COURT:  Understanding that a number of issues

19    need to be -- well, apparently, probably expectedly need to

20    be resolved before confirmation because I do -- I want to

21    use the confirmation time for confirmation.  I do not want

22    to spend a day working through late-filed motions, motions

23    in limine, and emergency claims for one type of relief or

24    another related to discovery or evidentiary presentation at

1    confirmation.  I want these issues finished ahead of time so

2    that the five days can be used most efficiently.

3              So my thought was to require the filing by

4    February 8th of any motions in limine or motions which were

5    addressed to things that had to be resolved prior to

6    confirmation, and I would set a hearing date on the motions

7    filed by February 8th on February 24th, 25th, somewhere in

8    that neighborhood, not to set aside two days, but somewhere

9    around there.

10             So I tell you that to put the deadlines that the

11   parties have requested respectively be put into that

12   context.  Now it's not that I'm inflexible with those

13   specific dates, but that -- that was my initial construct,

14   anyway.

15             MR. BENDERNAGEL:  And that was February 8th as

16   opposed to 18th?

17             THE COURT:  Yes.

18             MR. BENDERNAGEL:  Okay.

19             THE COURT:  Yeah.  I know it's a full month

20   before we start confirmation and I know that time is limited

21   and --

22             MR. BENDERNAGEL:  Well, the difficulty with that

23   under this schedule, just to give you a head's up, is it's

24   going to be hard to address issues regarding whether, in

25   fact, the expert reports are problematic or there are

1   problems with the expert reports given the fact that under

2   the schedule parties aren't even scheduled to file their

3   expert reports until February 8th.  And I don't really see

4   how that can be pushed much earlier than that given the fact

5   that it is going to take until the end of January by both

6   parties' submissions to try and get the -- the fact

7   discovery done.

8           THE COURT:  Well, maybe we could make it February

9   15th.

10          MR. BENDERNAGEL:  Okay.  I'll -- that's helpful.

11  And I agree with you.  We should try to get all this stuff

12  cued up so that we don't, you know, waste a day at the start

13  of -- on March 7th doing this stuff and the like.  Whether

14  we need February 24th or 25th or whether that can be a

15  little closer to March 7th might be something else we can

16  negotiate in that regard and the like.  But that does

17  suggest that fact discovery get closed earlier than February

18  18th.

19          Another issue was the issue of whether, in fact,

20  there should be hard deadlines or best efforts deadlines for

21  some of the discovery.  Obviously, these deadlines are going

22  to have to be pretty quick.  The concern, though, is to the

23  extent that the discovery is as prolific as some have

24  suggested, that committing to a hard deadline of thirty days

1   when you don't know what it is you're committing to is a

2   little hard to do.

3           Obviously, it's in our interests and the interest

4   of all the parties to get the discovery done quickly because

5   if we don't, we're not going to get to the hearing or

6   there's going to be a problem.  So I think --

7           THE COURT:  Well --

8           MR. BENDERNAGEL:  -- the incentives are probably

9   set up.

10          THE COURT:  I don't disagree with that, but I

11  think hard deadlines are helpful.  Parties can always seek

12  relief from those deadlines, if necessary.  But I think

13  under these circumstances, fixing dates would be a good

14  thing.

15          MR. BENDERNAGEL:  All right.  That's helpful.

16          With respect to our -- the next dispute had to do

17  with interrogatories and RFAs specifically as they relate to

18  the examiner's report.  I don't think that that's  a

19  productive use of people's time.  I think that there should

20  be a mechanism for dealing with the examiner report.  It

21  ought to be a joint mechanism where the parties sit down and

22  work through the examiner report.

23          THE COURT:  And I think the parties have to do

24  that.

1              MR. BENDERNAGEL:  And as a consequence I would

2    rather do that than waste a lot of time with contention

3    interrogatories and RFAs in that regard.

4              On privilege logs I think we've heard what you

5    had to say in terms of trying to come up with something.  We

6    can work together in trying to move forward on that.

7              Fact depositions, we proposed ten per proponent

8    group, with the ability to show if you needed more, you

9    could get more.  We think that there ought to be a number

10   that is realistic in terms of the time period we have, which

11   is two months.  The depositions aren't going to start

12   immediately.  They never do.  They're probably going to be

13   in January, so we're going to have thirty, thirty-five days

14   to get these done.  If -- you know, that suggests forty all

15   together is probably a high number.

16             On the other hand, we're not saying, as some

17   people have accused us, well, you know, it's ten or nothing.

18   It's just start with a base and then if you need more, come

19   in and show why you need it.  And to the extent that we, you

20   know, can get that done, I think it would be better to start

21   with ten, but I think forty as the base is just too high per

22   proponent group.

23             THE COURT:  I agree.  I think the debtor is much

24   closer to a number, but I would like to see the parties meet

25   and confer again before I make a decision.

1          MR. BENDERNAGEL:  Okay.  That's helpful.

2          The last two issues, one relates to this letter

3    briefing process.  My guess is that we're going to need that

4    type of expedited process to get in front of you.

5          THE COURT:  You know --

6          MR. BENDERNAGEL:  We had proposed that there not

7    be reply briefs and there be page limits.  Look at, the

8    reality is, if you need more pages, I think the whole

9    process here is to try to identify to you what the issues

10   are and then get the thing on an expedited briefing schedule

11   if, in fact, it requires so much more.  But the idea that

12   we're going to have long briefs, I see this more as a way of

13   bringing it to your attention.

14         MR. BENDERNAGEL:  And I will tell you I've

15   recently -- and I haven't built this in yet to a -- my

16   standard order, but I intend to if I ever get a spare minute

17   to deal with it.  But I do like the letter mechanism

18   proposal, but here's what I would like.  If somebody's got

19   an issue, get me a letter.  After that I'll decide what I

20   want to see and if I want to have a telephone conference or

21   if I need a motion.  Just let me see the first letter and

22   then I'll tell the parties right away what else I need or

23   how I would like to address it.

24         MR. BENDERNAGEL:  Do you want the other party to

25   quickly put in a response and do you want to limit the page

1  limits because that's -- that's done in the Southern

2  District all the time and it does make sense.  It gives you

3  an idea of what the parties want and what they say.  I think

4  making the determination without hearing from the other side

5  is a little unfair in the sense that you don't --

6              THE COURT:  Well, I --

7              MR. BENDERNAGEL:  -- have a balanced view.

8              THE COURT:  -- I never do that.  I've never done

9  that.  The only issue in my mind is -- normally what I do is

10 I'll -- if I get a letter I'll set up a telephone conference

11 and usually there's enough time for the other party to

12 respond.  In fact, I would normally prefer it.

13             But, you know, sometimes from the letter, you

14 know, if I get it in the afternoon of Monday, I may set up a

15 teleconference for Tuesday morning.  You know, I -- and

16 that's not to foreclose an argument by the other party.

17 It's just that I may not think I need a response in writing

18 before I talk to the parties.  It just depends on the nature

19 of the dispute and they're all different.

20             MR. BENDERNAGEL:  Yeah.  But in terms of the

21 general practice, I think it would be helpful to have a

22 procedure that basically says, letter, response, page limits

23 -- look at.  If you read the first letter and you say, hey,

24 I've heard enough.  You -- you're going to make a phone call

25 and people are going to respond, so that's not the problem.

1  I think the general practice ought to be to try and get it

2  in front of you.  If there's page limits and, you know, two

3  or three-day -- business day --

4          THE COURT:  Well, what's the Southern District

5  page limit?

6          MR. BENDERNAGEL:  I think it's three pages.

7  That's my recollection.  If there's -- and, you know, my

8  sense is that you do it in a couple of days and that would

9  be the standard procedure.  Obviously, if you read the first

10  letter and say, let me see what's going on, I think that

11  would be helpful.

12          A final issue, and this, I think, is an issue

13  that I think will get resolved simply because of what you're

14  setting up, you know, right now the parties agree that we

15  have to put together your pretrial submission.  Now under

16  your standing order for adversary proceedings, that's

17  supposed to be filed five days before.  We're getting the

18  impression you want that sooner than that, though, so that

19  we can settle all this stuff up because, you know, in some

20  respects the sooner you get that, that -- that's really what

21  is going to set up what the objections are and everything

22  else.  So --

23          THE COURT:  It's the road map.  It's the road map

24  for the --

25          MR. BENDERNAGEL:  Yeah.

1          THE COURT:  -- conduct of the hearing, and what I

2    tell parties in contested matters is that they should alter

3    the form as suit their needs -- as suits their needs.

4          MR. BENDERNAGEL:  Well, why don't -- why don't

5    you let us take that back and work it in with the first

6    point you made and see if we can come up with something that

7    makes sense in getting this thing in front of you in a way,

8    and at that same time we can deal with the briefing because

9    there's -- the bankruptcy people and the litigation people

10   are trying to work out their differences here.

11         Obviously, one issue is objections to

12   confirmation.  Everybody agreed that would be February 11th

13   for purposes of this planning.  And then there was going to

14   be responses to that on February 25th, and at that point in

15   time people would put in there, essentially, pretrial brief

16   in support.

17         Nobody disagrees with that.  Where the

18   disagreement is is whether there's going to be another brief

19   a couple of days later laying out additional points.  I

20   think the less number of just briefs and just getting a

21   procedure in place where you're reading it once as opposed

22   to multiple times is better.  But, you know, if you have any

23   thoughts on that it would be helpful.

1          THE COURT:  Well, I don't disagree with that.

2   What I have found to be lately more helpful are post-hearing

3   submissions, which I usually ask for in letter form.

4          MR. BENDERNAGEL:  Well, we could work that, you

5   know, into the mix and that way you don't need as many

6   opening briefs as opposed to a brief after you've seen the

7   evidence and you can hear what the parties' perspectives are

8   in that regard.

9          THE COURT:  Well, the -- I ask the parties

10  normally, as you might expect, post-hearing to focus on what

11  they think the record demonstrates in support of their

12  respective positions.  You know, legal -- legal positions, I

13  guess, are best articulated before the hearing.  But I

14  don't, you know, extensive -- I mean, there's already been

15  so much extensive briefing pre-confirmation.  It's not that

16  it's not helpful.  It's unmanageable --

17          MR. BENDERNAGEL:  Uh-huh.

18          THE COURT:  -- I guess would be the best way for

19  me to say that.

20          MR. BENDERNAGEL:  Well, and look at -- you know,

21  you've already got a number of parties, you know, submitting

22  briefs on different subject matters and if we could at least

23  put it all in the same document it would make it a lot

24  easier for you and for the parties in terms of just trying

25  to figure out where this stuff is.

1              THE COURT:  I tend to agree with that.

2              MR. BENDERNAGEL:  All right, Your Honor.  I'll

3    step aside.  I just may have comments on these things, but -

4    -

5              THE COURT:  Well --

6              MR. BENDERNAGEL:  -- whatever else, guidance you

7    can give us will be helpful.

8              THE COURT:  -- I have some questions before you

9    go.

10             MR. BENDERNAGEL:  Sure.

11             THE COURT:  Is there still a dispute about

12   whether the fact and expert discovery should be conterminous

13   or has that been agreed?

14             MR. BENDERNAGEL:  I think that the desire was to

15   have the fact discovery complete and let the expert

16   discovery continue on.

17             THE COURT:  Yeah.  And is there -- is there still

18   dispute about that?

19             MR. BENDERNAGEL:  Yeah.

20             THE COURT:  Okay.

21             MR. BENDERNAGEL:  I mean, that was the whole

22   issue that I started with in terms of, you know, February

23   4th versus March 2nd --

24             THE COURT:  See --

25             MR. BENDERNAGEL:  -- and this March 18th date.

1           THE COURT:  -- and that's how -- normally, that's

2   how discovery would proceed.  But it strikes me that in this

3   case, I mean, is there something the experts are going to

4   learn that they don't already know?  I mean, I don't

5   necessarily agree with the proposition that they could be

6   based on what the examiner's report says and that alone.

7   But, I mean, this may be a case where we could do that

8   without really hurting anybody.

9           MR. BENDERNAGEL:  And just so I'm clear, Your

10  Honor, do what, make them --

11          THE COURT:  The same date.

12          MR. BENDERNAGEL:  So that the fact discovery

13  would continue on while the expert discovery was taking

14  place?

15          THE COURT:  Yeah.  They would close on the same

16  date.

17          MR. BENDERNAGEL:  Okay.  We can take that into

18  consideration.  It's been done in other cases and --

19          THE COURT:  Okay.

20          MR. BENDERNAGEL:  -- it wouldn't be the first

21  time.

22          THE COURT:  Have the parties agreed with respect

23  to the production of draft reports --

24          MR. BENDERNAGEL:  Yes.

25          THE COURT:  -- or not?

1          MR. BENDERNAGEL:  We're not going to do that.

2          THE COURT:  Okay.  Hooray.

3          (Laughter)

4          MR. BENDERNAGEL:  That doesn't mean we've agreed

5    on anything else, but we have agreed on that.

6          THE COURT:  Okay.  I don't -- you know, it may be

7    that I have.  I just don't recall approving a procedure in

8    which discovery could be issued by -- by email.  Is that --

9    is that -- have the parties agreed to that here?

10         MR. BENDERNAGEL:  I don't believe that's

11   addressed.

12         THE COURT:  I thought --

13         MR. BENDERNAGEL:  It's being issued --

14         THE COURT:  -- I saw that somewhere in the papers

15   that somebody's proposed that.  Maybe that was Aurelius's

16   proposal.  I just don't -- someone tell me where it came

17   from.

18         MR. BENDERNAGEL:  I guess we agreed on it.

19         THE COURT:  Okay.

20         (Laughter)

21         THE COURT:  I thought it was a good idea myself.

22         MR. BENDERNAGEL:  Well, that's how it proceeded

23   over the weekend.

24         THE COURT:  Okay.

1          MR. BENDERNAGEL:  I wish they would have emailed

2     it to me.  It would have been easier, but --

3          THE COURT:  Okay.  Bear with me for just one

4     moment.

5          MR. BENDERNAGEL:  Sure.

6          (Pause in proceedings)

7          THE COURT:  Okay.  That -- that exhausts, anyway,

8     my preliminary -- my responses to your -- to the list of

9     objections or issues that you've raised and my preliminary

10    questions and observations.

11         I'll hear from others.

12         MR. BENDERNAGEL:  Thank you, Your Honor.

13         MR. ZENSKY:  Good afternoon again, Your Honor.

14    David Zensky from Akin, Gump, Strauss, Hauer and Feld.

15         Just for the -- for the record, the CMO that we

16    submitted was not just on behalf of Aurelius, but it was on

17    behalf of all our plan proponents.  I think Mr. Bendernagel

18    referred to it as just Aurelius's.

19         I'm not going to address, I think, all of the

20    issues, just a couple of points.

21         It had been our proposal in this case, because of

22    how constrained the time is, to have the discovery go

23    conterminous as you said.  And I think that there are

24    certain depositions that the parties will agree are not as

25    important or important at all to do before the expert

1  reports go out, and that was the nature of that thought

2  process.

3         Obviously, we agreed with the point Your Honor

4  made on a hard stop for document production, particularly in

5  a case where it's going to be as condensed as it is or a

6  hard deadline.

7         In terms of the interrogatories, we'll -- we'll

8  talk more about this, but the only point of dispute was one

9  subsection of our CMO where we asked for the ability to

10 submit interrogatories asking what parts of the examiner

11 report are you going to challenge at the hearing.  So that

12 didn't seem to be an unreasonable request in light of the

13 importance that the debtors were attaching to it and the

14 role that they say it was going to play.

15        So we need to find a mechanism for the parties to

16 know each other's positions.

17        THE COURT:  Yeah.  I mean, look.  I understand

18 that, I think as someone said earlier, there's something in

19 the examiner's report for everybody.  I guess you could say

20 there's something the other way for most as well.  But un --

21 not unlike in this respect, an expert report, I guess

22 technically the written report is largely hearsay.  Now I

23 understand this.

24        I do think that the parties ought to be able to

25 work out an arrangement under which it should be admitted.

1   I -- but I know what it is, so nobody who opposes part or

2   all of it I think need worry about what weight I should or

3   do ascribe to it.  It will be informed, I think, largely by,

4   as you've said, what I hear factually at -- at the

5   confirmation hearing.

6           But, you know, it's been such the subject of wide

7   circulation.  It's been the centerpiece in a number of

8   phases of this proceeding.  It just seems to me to be a --

9   not the best use of -- of the limited time available to us

10  all to be dickering about, you know, what should come in and

11  what shouldn't.

12          Now I understand parties' sensitivities and --

13  and that's all I'll say.

14          MR. ZENSKY:  All right.  Now just -- if I was

15  unclear, let me correct it.

16          As you know, it's our position that it should

17  come in.  The issue is are the parties going to be able to

18  discover in advance of the hearing what parts of it are our

19  adversaries going to try to challenge at the hearing and

20  when will we learn about that.

21          THE COURT:  I --

22          MR. ZENSKY:  If -- if we --

23          THE COURT:  That's a fair question.

24          MR. ZENSKY:  Right.  If we can't ask a discovery

25  question on that, the first time we will see what they

1    intend to challenge will be in the expert report at which

2    point the fact discovery process will be virtually over.  So

3    it's a discovery mechanism.  It's not a harassment

4    mechanism.

5              THE COURT:  I under --

6              MR. ZENSKY:  We have to understand the parties'

7    positions on the expert report.

8              On the privilege log, Your Honor, I don't believe

9    it's an issue of distrust as much as the utility of being

10   able to have Your Honor get to the bottom of what are going

11   to be some thorny privilege questions, both relating to

12   documents issued at the time of the transaction and during

13   the course of this case.

14             And the decisions show that it's really through a

15   line by line log that the Court can get to the bottom of

16   whether a document is privileged because the most important

17   piece of it is going to be describing what is the nature of

18   this document, the subject matter of it, who it was sent to,

19   and you -- you can't make a reasoned challenge to a document

20   if they put 7,000 documents under the category, LBO

21   Transaction.

22             THE COURT:  Mr. Zensky, I don't disagree with

23   that.  I think we have to start somewhere.  I'm inclined to

24   say, okay.  We'll start with categories, understanding that

25   we're going to have to drill down at some point.

1          MR. ZENSKY:  Okay.  And we -- we had suggested

2  several areas where categories were fine because we think

3  it's sufficient to tee up whatever issues there are.  But

4  there are other areas where we don't see how that's

5  possible.  And, again, given the limited time frame, if I

6  have to wait thirty days for a category log, then how much

7  time is there going to be to drill down on it, Your Honor.

8          THE COURT:  Understood.  I think the parties need

9  to talk more about it, see if they can reach some

10 accommodation.  If they can't, I will resolve all of these

11 issues at next week's hearing.

12         MR. ZENSKY:  Okay.  And then lastly, Your Honor,

13 we didn't ask for forty depositions for Aurelius to take on

14 the merits of the LBO.  That was a proposal for all of the

15 plan proponents on my side to share for all issues, not just

16 LBO merits.  That was the merits of the LBO, how the

17 settlement came about, all the issues that go to the other

18 9019 factors, and all the other confirmation issues, and I

19 under --

20         THE COURT:  Well --

21         MR. ZENSKY:  -- I heard you loud and clear.  You

22 said that's not the right number, but I don't want any

23 misapprehension that we were asking for that many for us to

24 take about the LBO itself.

25         THE COURT:  Well, here --

1          MR. ZENSKY:  And --

2          THE COURT:  -- here's a question that I have.  I

3    mean, we're -- again, it strikes me that this is one of

4    those circumstances in which, without foreclosing any right

5    you might have to ask for more, you pretty much know who you

6    want to depose right now and I -- there's just been some

7    much information circulated and so many investigations

8    conducted that you ought to have a pretty good idea of who

9    you want.

10          And so from that it seems to me that the number

11   ought to be relatively definable.  Now that's not to say

12   that as a result of other discovery, other names don't come

13   up and that they -- these -- they don't reveal people who,

14   you know, shouldn't be deposed.  But don't you know most of

15   them right now?

16          MR. ZENSKY:  I do, Your Honor.  We didn't pick a

17   number out of the air.

18          THE COURT:  Okay.

19          MR. ZENSKY:  We made a -- you know, as best as we

20   could at this stage an idea of who we wanted.  A lot of them

21   will have to be 30(b)(6) because we don't have the luxury of

22   taking multiple deposition.  But I can't speak for

23   Wilmington, per se.  You heard in today's hearing there's

24   some disagreement on some issues and they have other fish to

1  fry.  And they're going to want some depositions that may

2  not be the same that we want.

3          THE COURT:  I understand.  I just see -- like I

4  said, I would like the parties to talk a little more and see

5  if they can't come closer.

6          MR. ZENSKY:  Okay.  And then on the -- the issue

7  of the letter briefing that was -- that originated as our

8  proposal.  If Mr. Bendernagel is referring to the Southern

9  District of New York, there is no three-page limit on

10  letters regarding discovery motions.  The three-page limit

11  is when you send the letter requesting permission to make a

12  motion.  You just describe the motion in three pages and

13  then there's a conference and then the judge determines

14  whether you can make the motion or not.

15          What they are proposing is that we have three

16  pages to bring to you the substance of our entire privilege

17  objection and I -- I think that you've said that's not the

18  way to do it, and what you're asking us to do is just flag

19  the issue, don't consider it your brief per se, just tell me

20  what the issue is and then we'll convene and decide how to

21  deal with it.

22          THE COURT:  I think that's a fair way to -- to

23  approach it.

24          MR. ZENSKY:  Okay.  Then I -- I understood that's

25  what you were saying.

1            Okay.  I think that's all I had on your comments,

2    Your Honor.

3            THE COURT:  Thank you.

4            MR. BENDERNAGEL:  Just so it's clear, Your Honor,

5    that was our proposal.  We weren't suggesting that you brief

6    the substance of these discovery requests in three pages.

7            THE COURT:  Okay.

8            MR. SIEGEL:  Your Honor, just very briefly.  You

9    know, it's a good example of no good deed goes unpunished

10   and talking about the depositions.

11           As I said, the Phones have certain issues that we

12   don't share.  And we considered very seriously when we were

13   deciding whether to do our own plan or to see if we could

14   reach accommodation with some parties to reduce the number

15   of plans, and, you know, one of the things if we can't

16   agree, you should be aware, our issues aren't identical.

17   And if we had done our own plan, each party would have ten

18   depositions.  I think that's how we came up with the forty

19   number.

20           Now maybe that's -- you know, not the right

21   number, but the fact is that we have some common issues and

22   we have some issues that each party, even if you're a common

23   plan proponent may have.  And I just wanted to make sure

24   that you were aware of that, if we can't agree -- you know,

1  we'll do our best to agree to the number of depositions, but

2  that's why it's a controversial issue.

3        THE COURT:  Well, except for rulings that I've

4  made definitively today you haven't lost anything yet.

5        MR. SIEGEL:  Thank you very much.

6        THE COURT:  Okay.

7        Does anyone else wish to be heard?

8        (No verbal response)

9        THE COURT:  Okay.

10        All right.  Next week's hearing is set for the

11  15th at 10 o'clock in the morning.  Let's -- let me jump --

12  and I'll -- we'll dispose of all the case -- what I'll call

13  the case management or contour issues then.  I would like,

14  however, to approve a disclosure statement and set -- I

15  think we need to set all the voting deadlines and other

16  usual deadlines in connection with that order.

17        So let's return to that for a moment so that we

18  can pin down what open issues there are, if any, and when I

19  can see the last final revisions to all the items that need

20  to go into the solicitation package, and I know we have at

21  least the cost issue outstanding.  I was wondering if you

22  were in a position to address that first and then whatever

23  else we need to talk about.

24        MR. KANG:  Good evening, Your Honor.  Ken Kang of

25  Sidley Austin on behalf of the debtors.

1          With respect to the costs issue, we have gotten

2    some feedback from the voting agent as to how much the --

3    the solicitation process is likely to cost.  They caution

4    that it's a very rough estimate and difficult to -- to be

5    relied on for anything strongly.  But they have provided the

6    information that the original solicitation process for the

7    prior plan all in cost about $1.7 million.  That included

8    $900,000 in printing costs for hard copy books; that because

9    we're looking to distribute on CD-Rom in this case, those

10    costs would not be present here.

11          On the other hand, they estimate that there will

12    be dramatically increased costs for a new solicitation here

13    as a result of increased professional costs, increased

14    quality checking to make sure everybody gets the same --

15    everybody gets the balance that they're entitled to get in

16    the same package.

17          And so they have given us a projection for a

18    total cost of $2.5 million for this solicitation process.

19          THE COURT:  All right.  I'm going to order that

20    the debtor bear half the cost of the solicitation process

21    and the other three proponents divide the remaining fifty

22    percent one-third each, without prejudice to -- I guess I

23    should say without prejudice to any party based upon the

24    result of the confirmation hearing to move for a

25    reallocation of that -- of the cost, and without prejudice

1   for a party who may be qualified for such to request payment

2   of an administrative expense or a request for substantial

3   contribution.  Is that clear enough?

4            MR. KANG:  That is clear, Your Honor.

5            THE COURT:  All right.

6            MR. KANG:  And we will amend the order

7   accordingly.

8            THE COURT:  Okay.

9            MR. KANG:  Turning to your next issue, which is I

10  believe the establishment of deadlines and when we can get

11  revised documents to the Court and on file for the parties

12  and Your Honor to review, the one key deadline that we need

13  to establish in the -- in the form of a solicitation order

14  is the voting deadline.  We've been advised by the voting

15  agent that we would be looking at, from the time of approval

16  of the materials, approximately two weeks to get the

17  materials into the mail.

18           So we're looking at getting something into the

19  mail around the middle, maybe a little later after the end

20  of this month -- or after the -- the middle of this month or

21  perhaps a little later.

22           THE COURT:  Well, let me -- let's start at the

23  very beginning.  When will I have the revised documents?

24           MR. KANG:  We intend to file revised ballots and

25  other notices with the Court, all of the materials and

1  revised form of solicitation order tonight, Your Honor,

2  certainly by the open of business tomorrow morning.

3            THE COURT:   All right.   Then I would expect

4  anyone who has a response to that to be able to talk with

5  the debtor about it, you know, by the end of the day

6  tomorrow.   I would like to be in a position to see an order

7  under certification, you know, by early afternoon on

8  Wednesday.   Is this realistic?

9            MR. KANG:   Yeah.   I believe it is, Your Honor,

10  subject to being dragged down from the podium by anyone who

11  disagrees.

12            THE COURT:  All right.   Mr. Golden, did you have

13  something you wanted to--

14            MR. GOLDEN:  No.   I was just waiting to find out

15  what the schedule was.

16            THE COURT:   Okay.

17            MR. GOLDEN:  I -- if we see -- let me -- if we

18  have an opportunity to see the documents by some point this

19  evening and the debtors are accessible tomorrow to answer

20  any questions or any comments, we believe we should be able

21  to adjust to that schedule.

22            THE COURT:   All right.   Well, two weeks from the

23  8th would be the 22nd.   Is that something that could be

24  realistically set for the dissemination of the solicitation

25  package?

1          MR. KANG:  For the dissemination of the

2    solicitation packages I believe that is achievable, Your

3    Honor.

4          THE COURT:  Okay.  So if -- if that were to

5    happen, what would you suggest as the voting deadline?

6          MR. KANG:  I think we would propose a voting

7    deadline a little more than a month out, around Friday,

8    January 28th.

9          THE COURT:  Does anyone have a comment about

10   that?

11          (No verbal response)

12          THE COURT:  It seems reasonable to me.

13          MR. KANG:  Thank you, Your Honor.  And then that

14   -- triggering off of that would be the filing of the

15   tabulation report, the final tabulation report two weeks

16   later on February the 11th.

17          THE COURT:  Okay.  That's fine with me.

18          MR. KANG:  Your Honor, beyond that --

19          THE COURT:  Well, that was also suggested as the

20   date for filing confirmation objections, and that responses

21   would be due on February 25th, along with the pretrial

22   statement and briefs.  Does anyone have a comment about any

23   of those dates that have been suggested?

1          MR. FLASCHEN:  Yes, Your Honor.  One of our

2   confirmation objections might go to the results of the

3   voting, so we would need a few days in between the two.

4          THE COURT:  Hmm.  How do you know you're going to

5   object?

6          MR. FLASCHEN:  I said might be.  We may end up

7   questioning how do we know if Step One lenders support of

8   the plan as opposed to "senior lenders" support of the plan.

9   The voting might be relevant or might make that academic.

10          THE COURT:  All right.  I mean, do you want to

11   push it -- I'll push it to the 15th?  Does that create a lot

12   of heartburn for somebody?

13          MR. KANG:  Excuse me, Your Honor.  I'm sorry.

14          THE COURT:  If we push the objection deadline to

15   February 15th, would that create a -- that much heartburn?

16          MR. KANG:  It -- I don't believe it causes any

17   heartburn for the debtors, Your Honor.

18          MR. FLASCHEN:  Thank you.

19          THE COURT:  Okay.

20          MR. FLASCHEN:  And then while I'm standing, I'm

21   just clarifying on costs.  The debtors were talking about --

22   originally, before they came out with these estimates, not

23   solicitation, but tabulation, and "hard costs."  When you

24   say you're splitting these, is it solicitation and

25   tabulation?  Is it just tabulation?

1           THE COURT:  No.  It's part -- I think it all goes

2   together.

3           MR. FLASCHEN:  Okay.  And this is just hard costs

4   meaning they paid someone else, not their lawyers and their

5   personnel and things.

6           THE COURT:  That's correct.

7           MR. FLASCHEN:  Thank you, Your Honor.

8           THE COURT:  Anyone else wish to be heard?

9           (No verbal response)

10          THE COURT:  Okay.  Any other pieces we need to

11  put into place to get to a -- an order approving the

12  disclosure statement and setting those deadlines?

13          MR. KANG:  I believe that's all we need, Your

14  Honor.

15          MR. LANTRY:  Your Honor, last Monday you had said

16  you were thinking about whether there needed to be anything

17  either on the responsive statements themselves or in the

18  order approving the process about how you felt -- may I

19  approach, Your Honor?

20          THE COURT:  Yes.

21          (Pause in proceedings)

22          THE COURT:  I'll give the parties a moment to

23  look at the half-page paragraph.

1          MR. LANTRY:    And am I sensing, Your Honor, that

2   this would appear on the top of each of the responsive

3   statements --

4          THE COURT:    Well --

5          MR. LANTRY:    -- or in a separate --

6          THE COURT:    How are the --

7          MR. LANTRY:    -- freestanding piece?

8          THE COURT:    How are the responsive statements

9   going to be presented?  I mean, I -- when I saw them I got

10  them in a binder behind tabs.  How are they going to go to

11  the voters?

12         MR. LANTRY:    Again, we thought that the color

13  combination would help the voters to be able to see this one

14  match that one.

15         THE COURT:    Yeah.

16         MR. LANTRY:    As to whether they are bound in a

17  single document or free-floating, I have not heard if we've

18  decided.  I suspect it would be easier for the players to be

19  able to have them loose and to be able to match up, here's

20  my ballot with my --

21         THE COURT:    Okay.

22         MR. LANTRY:    -- color-coded, so I think they'll

23  be loose, but I don't know that people --

24         THE COURT:    Okay.  If that's the case, then it

25  should appear before each of the statements.

1          MR. LANTRY:  Okay, Your Honor.

2          THE COURT:  But I will take comments now if

3    anyone would care to make them with respect to that which

4    I've asked be included.

5          MR. KANG:  Your Honor, just to clarify just one

6    point that -- that Mr. Lantry had raised.  We do provide in

7    the proposed order at decree Paragraph 5 that all responsive

8    statements proposed by the proponents of a particular plan

9    would be bound together in a single booklet.  So,

10   presumably, this would be on the front of four booklets.

11         THE COURT:  Okay.  That's fine.

12         Any other questions or comments?

13         MR. SILVERSTEIN:  Your Honor, Paul Silverstein.

14   I have one question if I may?

15         THE COURT:  Yes.

16         MR. SILVERSTEIN:  I'm assuming that each of the

17   separate debtors are going to have separate ballots.  So,

18   for example, with respect to the operating company trade, I

19   think there's about a hundred-odd debtors.  Is it -- is it -

20   - is my assumption correct that each of those debtors will

21   have a separate ballot and they'll be tabulated separately?

22         MR. KANG:  We -- we anticipate tabulating votes

23   on a debtor by debtor basis.  And so for a subsidiary trade

24   claim of the sort represented by Mr. Silverstein, the

25   claimant would receive a ballot indicating that they are in

1  a subsidiary general unsecured class and it would indicate

2  the amount of their claim and the debtor against which that

3  -- that claim is being voted.

4          MR. SILVERSTEIN:  I think that answers it.

5          Thank you, Your Honor.

6          THE COURT:  All right.  Any other questions or

7  comments?

8          (No verbal response)

9          THE COURT:  Is there anything further for today?

10          MR. KANG:  I don't believe so, Your Honor.

11          THE COURT:  Hold on.

12          MR. SOTTILE:  Your Honor, sooner or later I have

13  to be able to raise housekeeping matters earlier in the

14  hearing so I don't have to tread on the Court's patience at

15  a late hour.

16          THE COURT:  Well, you know I would worry about

17  the people whose trains you're standing between.

18          (Laughter)

19          MR. SOTTILE:  Your Honor, may I have two minutes

20  to address a housekeeping issue?

21          THE COURT:  You may.

22          MR. SOTTILE:  Your Honor, as the Court is aware,

23  the Court granted standing to the committee to file

24  complaints against lenders and a number of other third

25  parties by an October 27th order.  The Court also set forth

1   permitted amendments and modifications to the complaints

2   that the committee could make as it consulted with other

3   parties to ensure that all meritorious claims were filed

4   within the two-year anniversary of the filing of the cases.

5           The committee has proceeded consistent with the

6   order under the terms of the order.  We filed original

7   complaints on November 1.  Thereafter we continued to

8   consult with the parties to make sure that we were

9   identifying all claims that any parties believed were

10  meritorious and should be preserved, and we are going to be

11  filing tonight, Your Honor, amended complaints in both

12  actions that add some additional claims and allegations.

13          And I wanted to bring that to the Court's

14  attention as well as to advise the Court that we intend to

15  file a motion seeking confirmation from the Court that all

16  of the claims asserted fall within the standing granted to

17  the Court -- granted by the Court to the committee in the

18  original motion.

19          As the Court may recall, it set forth various

20  categories in which the committee could amend the complaints

21  without seeking further leave.  Those categories were

22  crafted so that the Court was properly performing its gate

23  keeping function.  They include, among other things,

24  amendments and modifications that have been consented to by

1   the debtors, matters within the scope of the examiner's

2   report and so forth.

3            The complaints that are going to be filed tonight

4   have all been consented to by the debtors and fall within

5   some of the other categories that the Court identified in

6   its exercise of its gate keeping function as permissible

7   areas where the committee could revise the complaints.

8            The housekeeping matter I would like to seek the

9   Court's guidance on is that we would like, if the Court were

10  so inclined, to notice that hear -- that motion seeking

11  confirmation that the complaints comply with this Court's

12  order for the December 15th hearing, but we would have to

13  shorten the notice period and the hearing, obviously, in

14  order to do that.

15           Would the Court be minded to hear us on an

16  expedited basis on that matter?

17           THE COURT:  What -- what else is scheduled for

18  next week?

19           MR. BENDERNAGEL:  The other issues, Your Honor,

20  are the disqualification motion with respect to Akin Gump,

21  the 2004 motion that we filed regarding Mr. Michaels, and

22  also this motion that was filed with respect to the New York

23  proceeding in contemp.  I think those are the only --

1        MR. PERNICK:  And some other -- just a couple of

2   smaller matters.  The Francisco motion for relief and it

3   looks like Citrick's (phonetic) retention on the case.

4        MR. SOTTILE:  And I think we may be in the

5   process of resolving the contempt motion as well.

6        THE COURT:  It's nice to end the day on good

7   news.

8        Yes.  That's fine.  You may put in the form of

9   order on the motion to shorten that objections may be

10  presented at the time of hearing.

11       MR. SOTTILE:  Thank you very much, Your Honor.

12       MR. FLASCHEN:  Your Honor, just one -- this is a

13  silly little point, but if we're getting all this stuff out

14  we all technically have amended disclosure statements and

15  plans.  Would the parties object if those were signed by

16  counsel rather than trying to get nineteen Step One lenders

17  to resign all disclosure statements and plans.  We represent

18  that they are accurate from their perspective?

19       THE COURT:  Is there any objection?

20       MR. PERNICK:  Just a question, Your Honor.  Will

21  they be identified if counsel signs for them?

22       MR. FLASCHEN:  Absolutely.

23       Thank you, Your Honor.

24       THE COURT:  Is there anything else for today?

1           MR. KANG:  Your Honor, in going down our

2    checklist of dates in the disclosure statement order, there

3    is one remaining date we need to set or we need to revise,

4    which is the date for filing 3018 motions and a response

5    date, or a hearing date thereon.

6           Given the voting deadline of January 28, we would

7    propose a deadline of January 8, which is approximately

8    eighteen days after the ballots would be in the mail, and a

9    hearing date on or about the 22nd or I believe it would be

10   the 21st, Your Honor, if that is amenable to the Court.

11          THE COURT:  Bear with me.

12          (Pause in proceedings)

13          THE COURT:  I guess you -- do we actually have

14   anything going forward on the 20th other than Midwest do you

15   think?

16          All right.  Why don't you just -- for a hearing

17   date put January 20th at 10 o'clock.

18          MR. KANG:  January 20th, 10 a.m.  We will --

19          THE COURT:  Yes.

20          MR. KANG: -- do that, Your Honor.

21          THE COURT:  And if there's a problem overnight,

22   we'll let you know right away.

23          MR. KANG:  Thank you very much, Your Honor.

24          THE COURT:  Okay.  Is there anything further for

25   today?

1          (No verbal response)

2          THE COURT:   Thank you all very much.   That

3  concludes this hearing.   Court is adjourned.

4       (Whereupon at 5:54 p.m., the hearing was adjourned)

5

6                      CERTIFICATION

7          I certify that the foregoing is a correct

8  transcript from the electronic sound recording of the

9  proceedings in the above-entitled matter.

10

11

12

13  Sherri Breach                    December 7, 2010

14  AAERT Cert. No. 397

15  Certified Court Transcriptionist

16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **30(b)(6)**(1) 154:21 | | **actually**(16) 14:11  15:9  16:16  17:6  22:1 | | **agent**(14) 4:39  48:1  65:14  66:22  70:9 | | **also**(29) 13:1  23:7  35:24  41:12  43:3  43:7 | |

**_____debtors.___    1:13**

**a.m**(1) 170:18
**abbott**(1) 5:19
**abhishek**(1) 10:12
**abid**(1) 4:17
**ability**(11) 36:11  75:10  87:6  103:12  118:23  124:12  124:22  124:23  131:23  140:  150:9
**able**(30) 33:19  38:18  46:3  49:3  49:15  50:  54:10  61:22  62:4  62:8  64:13  65:8  66:22  68:21  69:13  71:23  72:12  76:6  83:5  104:2  136:12  150:24  151:17  152:10  160:4  160:2  164:13  164:19  164:19  166:13
**about**(111) 16:6  17:8  17:11  19:1  19:14  21:22  22:18  23:19  23:23  24:8  24:13  25:1  25:18  32:16  32:19  36:5  39:9  39:14  39:20  40:24  41:7  41:9  43:4  43:15  43:15  46:16  46:16  48:2  59:11  59:18  61:13  65:11  67:16  67:25  68:12  71:16  73:4  76:10  76:13  76:25  77:11  77:13  77:25  78:13  79:2  80:8  83:22  85:13  90:23  92:24  93:1  93:20  94:13  95:20  95:20  97:11  98:1  99:15  99:20  100:9  101:4  102:6  102:7  103:12  106:9  107:1  107:2  107:4  107:13  108:2  108:6  108:13  108:14  108:17  110:11  111:5  111:17  112:1  112:19  113:1  113:10  114:1  117:14  119:14  120:1  121:8  121:10  123:22  124:20  125:7  146:11  146:18  150:8  151:2  151:10  151:20  153:9  153:17  153:24  156:10  157:23  158:7  160:5  161:9  161:22  162:21  163:16  163:18  165:1  166:16  170:9
**above**(1) 66:12
**above-entitled**(1) 171:9
**absent**(1) 56:4
**absolutely**(3) 33:17  81:13  169:22
**abstain**(1) 49:22
**abstract**(1) 108:6
**abusive**(1) 37:17
**academic**(1) 162:9
**accept**(21) 15:3  43:7  49:13  49:16  49:20  49:21  50:7  52:1  53:25  54:2  54:7  54:19  55:10  56:10  57:11  57:14  57:25  63:4  63:7  67:21  109:23
**accepted**(1) 50:25
**accepting**(2) 55:23  67:20
**accepts**(1) 49:19
**access**(1) 131:14
**accessible**(1) 160:19
**accommodate**(1) 18:25
**accommodation**(2) 153:10  156:14
**accomplish**(2) 54:24  65:13
**accomplished**(1) 49:24
**accordance**(1) 49:10
**accordingly**(1) 159:7
**account**(3) 45:9  45:19  62:25
**accuracy**(1) 126:8
**accurate**(5) 19:15  29:23  30:1  68:2  169:18
**accurately**(1) 18:20
**accusations**(1) 24:9
**accused**(1) 140:17
**accusing**(1) 67:14
**achievable**(1) 161:2
**achieve**(1) 57:18
**across**(7) 45:18  49:21  50:15  51:23  62:6  85:11  95:5

**act**(1) 123:9
**acting**(1) 123:15
**action**(18) 20:24  80:4  81:1  81:2  81:24  82:15  85:2  85:9  87:24  88:3  90:23  97:3  97:4  98:10  98:12  124:3  130:4  131:5

**actions**(1) 167:12
**actors**(1) 131:14
**actual**(1) 110:9

**actually**(16) 14:11  15:9  16:16  17:6  22:1  28:19  31:20  34:24  37:25  38:25  66:20  70:  71:6  87:1  110:18  170:13

**adam**(1) 9:46
**adamant**(1) 52:14
**add**(9) 38:22  39:19  41:15  41:16  42:3  52:17  59:9  76:18  167:12

**added**(4) 13:25  14:2  14:5  28:19
**adding**(1) 39:13
**addition**(2) 17:5  40:22
**additional**(11) 12:12  29:1  67:1  74:13  81:23  89:13  90:15  117:22  131:4  144:19  167:12
**address**(15) 12:24  22:19  22:23  67:17  179:21  80:13  83:4  84:15  113:9  132:23  137:24  141:23  149:19  157:22  166:20
**addressed**(9) 14:3  18:20  48:17  77:24  118:22  119:6  135:1  137:5  148:11

**addresses**(2) 71:21  71:21
**addressing**(3) 11:7  13:8  93:15
**adds**(1) 73:21
**adequate**(4) 12:2  115:11  118:2  118:10
**adequately**(1) 71:20
**adjourned**(2) 171:3  171:4
**adjudicate**(2) 103:8  109:14
**adjust**(1) 160:21
**adjustments**(1) 48:18
**adler**(1) 3:34
**administration**(1) 64:15
**administrativ**(2) 61:2  159:2
**admissibility**(1) 130:14
**admissible**(4) 95:22  125:20  126:10  127:20
**admissions**(1) 89:5
**admit**(4) 103:23  110:3  110:13  126:24
**admitted**(3) 127:24  128:2  150:25
**advance**(3) 53:11  88:24  151:18
**advantage**(1) 128:3
**adversaries**(1) 151:19
**adversary**(2) 108:7  143:16
**advice**(1) 23:11
**advise**(2) 47:8  167:1
**advised**(3) 23:10  35:24  159:14
**advocacy**(6) 14:10  17:3  18:17  19:19  22:7  27:9

**advocate**(2) 27:18  61:9
**advocated**(1) 33:18
**advocates**(4) 15:24  16:2  16:14  17:7
**aert**(1) 171:14
**affect**(1) 99:19
**affiliates**(1) 56:1
**affirmative**(2) 27:13  27:14
**afforded**(1) 60:18
**after**(21) 11:23  16:12  17:8  43:14  53:5  76:14  76:21  80:15  88:7  90:7  90:7  94:23  106:14  117:6  117:8  127:4  141:19  145:6  159:19  159:20  170:8

**afternoon**(21) 11:3  11:4  13:10  22:21  30:8  30:9  41:23  41:24  44:18  46:7  59:7  61:6  70:23  74:8  84:18  88:15  99:11  129:8  142:14  149:13  160:1

**again**(23) 18:11  22:4  22:7  32:13  36:7  39:22  41:14  42:19  46:9  53:16  59:8  59:10  68:6  77:20  78:3  85:23  91:21  122:21  140:25  149:13  153:5  154:3  164:12

**against**(11) 44:9  63:25  68:5  68:6  81:11  96:23  97:7  97:8  108:8  166:2  166:24

**age**(1) 67:5
**agenda**(4) 11:9  11:11  44:20  112:4
**agenda's**(1) 43:23

**agent**(14) 4:39  48:1  65:14  66:22  70:9  70:10  74:9  88:17  97:8  98:1  130:20  131:4  158:2  159:15
**aggregate**(2) 40:24  64:25
**aggressive**(1) 120:18
**ago**(4) 11:6  12:22  24:14  110:20
**agree**(28) 21:10  27:6  40:14  49:13  49:18  74:10  74:15  85:1  85:6  100:17  102:23  110:1  115:8  115:14  123:3  129:12  134:4  134:6  135:14  138:11  140:23  143:14  146:1  147:5  149:24  156:16  156:24  157:1

**agreed**(15) 44:12  57:16  58:7  79:25  86:12  111:23  129:22  144:12  146:13  147:22  148:  148:5  148:9  148:18  150:3

**agreeing**(1) 123:22
**agreement**(10) 4:22  29:8  35:5  49:15  63:2  78:24  93:6  97:18  119:4  123:10

**agrees**(2) 56:11  130:2
**ahead**(5) 28:22  40:21  76:12  129:24  137:1
**ahmed**(1) 8:30
**aid**(1) 114:25
**aim**(1) 89:10
**air**(1) 154:17
**akin**(7) 4:12  7:32  30:10  61:7  99:12  149:1  168:20

**all**(161) 11:2  11:22  15:15  16:2  18:4  19:7  21:16  22:20  24:8  24:8  24:9  27:17  27:24  28:8  30:5  31:10  34:7  35:3  35:13  36:5  36:20  38:16  39:17  40:12  41:22  43:15  43:16  43:21  45:6  45:22  46:4  46:15  47:20  48:25  49:12  51:23  51:25  52:2  52:4  56:14  57:6  58:3  58:25  59:14  62:16  62:20  63:9  63:22  65:1  66:6  68:1  68:8  68:21  69:13  69:20  69:23  70:21  72:13  74:10  75:2  76:4  77:20  78:21  81:11  83:3  85:20  86:21  87:2  88:7  88:8  89:6  89:12  89:17  89:25  90:1  92:1  92:14  92:15  92:19  93:16  94:12  95:9  95:22  96:4  96:25  97:21  99:10  101:4  101:4  101:9  101:15  103:23  104:15  106:1  108:22  111:14  113:16  115:6  115:8  119:7  120:14  120:16  121:7  121:24  126:4  126:17  127:3  128:5  128:16  128:17  129:14  131:8  132:10  132:16  138:11  139:4  139:15  140:14  142:17  142:19  143:19  145:23  146:2  149:17  149:19  149:25  151:2  151:10  151:13  151:14  153:10  153:14  153:15  153:17  153:18  156:1  157:10  157:12  157:15  157:19  158:7  158:19  159:5  159:25  160:3  160:12  160:22  162:10  163:1  163:13  165:7  166:6  167:3  167:9  167:15  168:4  169:13  169:14  169:17  170:16  171:2

**allegations**(2) 103:24  167:12
**alleged**(1) 14:7
**allen**(1) 9:26
**allinson**(1) 3:13
**allocating**(2) 65:20  76:17
**allow**(5) 38:17  77:7  84:14  128:5  131:17
**allowed**(7) 14:10  39:14  55:6  68:9  68:11  69:7  74:25

**allowing**(1) 36:18
**allows**(1) 17:23
**alluded**(2) 27:7  45:9
**almost**(3) 24:6  61:12  93:19
**alone**(2) 124:16  147:6
**along**(3) 37:22  44:7  161:21
**already**(20) 19:24  27:1  27:2  57:16  61:1  80:6  81:5  85:2  87:7  87:7  90:13  95:4  102:17  118:24  119:2  119:18  129:21  145:14  145:21  147:4

**also**(29) 13:1  23:7  35:24  41:12  43:3  43:7  47:17  48:10  50:9  50:21  52:24  61:11  75:11  81:19  82:18  85:6  89:8  96:6  96:9  101:25  121:17  123:11  124:23  126:15  131:12  134:7  161:19  166:25  168:22

**alter**(1) 144:2
**alternative**(2) 56:8  66:11
**alternatively**(1) 57:24
**alternatives**(1) 77:7
**although**(6) 12:13  12:19  23:14  42:23  72:2  126:25

**alvarez**(1) 8:11
**always**(6) 93:3  93:7  116:10  116:14  135:7  139:11

**amanda**(1) 4:6
**amenable**(3) 83:19  85:16  170:10
**amend**(2) 159:6  167:20
**amended**(2) 167:11  169:14
**amendments**(5) 31:21  31:23  53:5  167:1  167:24

**america**(2) 6:17  6:22
**americas**(1) 4:50
**amicably**(1) 47:3
**amit**(1) 7:17
**among**(9) 44:22  49:8  49:20  50:6  52:11  58:4  58:4  66:14  167:23

**amount**(3) 68:9  100:25  166:2
**amounts**(3) 69:9  69:10  134:21
**ample**(1) 87:22
**analogies**(1) 95:9
**analogized**(1) 64:12
**analogy**(1) 34:22
**analysis**(6) 15:12  81:11  87:21  98:8  101:7  109:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 11:14 11:16 11:20 12:4 12:7 12:8 12:12 12:13 12:15 12:20 12:22 13:1 13:12 13:13 13:15 13:17 13:23 14:4 14:5 14:8 14:12 14:13 14:16 15:3 15:10 15:20 15:25 15:25 16:3 16:10 16:15 17:2 17:4 17:6 17:9 17:12 17:14 17:18 17:20 17:24 17:24 17:25 18:1 18:8 18:8 18:16 18:20 18:23 19:1 19:13 19:18 19:22 20:5 20:10 20:14 20:18 20:18 21:1 21:15 21:17 21:21 22:8 22:17 22:22 23:4 23:6 23:9 23:9 23:10 23:11 23:14 23:16 23:18 23:20 23:20 23:25 23:25 24:3 24:4 24:5 24:6 24:7 24:8 24:9 24:12 24:14 24:16 24:18 25:4 25:4 25:19 25:20 25:25 26:9 26:20 26:22 26:23 26:24 26:24 27:2 27:8 27:11 27:11 27:18 27:19 27:19 28:3 28:4 28:7 28:7 28:8 28:9 28:9 28:13 28:23 29:7 29:18 29:24 30:5 30:11 30:13 30:15 30:20 30:21 31:7 31:11 31:14 31:15 31:16 31:17 31:18 31:22 32:5 32:12 32:14 32:15 32:25 32:4 32:25 33:1 33:12 33:12 33:15 33:20 33:25 34:4 34:12 34:14 34:18 34:18 34:21 35:1 35:6 35:22 36:6 36:9 36:19 36:25 37:4 37:5 37:7 37:9 37:10 37:18 37:22 37:25 38:8 38:9 38:12 38:15 38:18 38:21 38:22 39:4 39:8 39:12 39:14 39:15 39:24 39:25 39:25 40:1 40:5 40:6 40:16 40:25 40:25 41:1 41:6 41:9 41:14 41:17 42:7 42:11 42:18 42:19 42:23 42:24 43:5 43:9 43:12 43:14 43:16 43:18 43:23 44:6 44:12 44:19 44:21 44:25 45:1 45:3 45:3 45:4 45:10 45:11 45:14 45:16 45:17 45:17 45:20 45:23 46:1 46:17 46:25 47:3 47:4 47:5 47:7 47:14 47:15 47:17 47:19 48:1 48:1 48:3 48:5 48:14 48:19 48:24 49:3 49:4 49:10 49:11 50:3 50:11 50:18 51:1 51:4 51:7 51:12 51:13 51:18 52:7 52:11 52:19 52:21 52:23 53:3 53:20 53:25 54:2 54:2 54:9 54:12 54:13 54:18 54:21 54:22 55:4 55:6 55:7 55:15 55:19 55:24 56:1 56:3 56:4 56:6 56:10 56:13 56:25 57:2 57:4 57:6 57:7 57:8 57:16 57:25 58:8 58:20 58:21 59:5 59:10 59:11 59:17 60:8 60:9 60:15

**and**(301) 60:24 61:2 61:7 61:9 61:10 61:13 61:20 61:21 62:6 62:7 62:11 62:12 62:13 62:16 62:17 62:23 63:25 64:13 64:17 64:20 64:22 65:14 65:23 65:25 66:12 66:22 66:24 67:5 67:11 68:2 68:5 68:12 68:16 68:24 68:25 69:1 69:16 69:17 69:20 69:24 70:3 70:10 70:11 70:13 71:10 70:14 70:14 70:15 70:16 70:19 71:3 71:10 71:12 71:17 71:20 71:20 71:20 71:21 71:22 72:1 72:17 72:17 72:17 73:1 73:5 73:6 73:8 73:10 73:15 74:4 74:9 74:13 74:15 74:20 74:21 74:25 75:15 75:18 75:21 75:24 75:24 76:9 76:13 76:15 76:17 76:19 76:25 77:1 77:6 77:23 78:3 78:7 79:2 79:10 79:16 79:19 79:20 79:25 80:2 80:6 80:9 80:15 80:21 81:10 81:12 81:15 81:19 82:4 83:4 83:6 83:7 83:10 83:17 83:25 84:1 84:3 84:8 84:11 84:14 84:19 84:22 85:4 85:8 85:14 85:15 85:24 86:5 86:6 86:8 86:12 86:19 86:23 86:23 87:4 87:5 87:6 87:18 87:19 87:20 87:20 87:21 87:22 88:5 88:8 88:9 88:10 88:11 88:12 88:16 88:19 88:25 89:3 89:4 89:4 89:6 89:13 89:14 89:20 89:22 89:23 90:1 90:5 90:7 90:10 90:12 90:16 90:18 90:21 90:25 91:1 91:4 91:7 91:11 91:15 91:21 92:2 92:3 92:5 92:13 92:15 92:16 92:23 92:25 93:1 93:3 93:4 93:6 93:13 93:15 93:23 93:24 94:1 94:6 94:12 94:18 95:1 95:6 95:8 95:9 95:9 95:23 96:5 96:16 96:20 96:23 97:8 97:9 97:12 97:16 97:25 98:1 98:4 98:10 98:15 99:2 99:4 99:12 99:15 99:16 99:19 99:22 99:23 99:24 100:2 100:10 100:14 100:20 100:22 100:2 101:5 101:6 101:7 101:8 101:9 101:11 101:16 101:17 101:21 101:23 101:25 102:2 102:6 102:10 102:12 102:23 103:5 103:12 103:19 103:24 104:1 104:6 104:13 104:14 104:18 104:20 104:21 104:22 105:5 105:8 105:13 105:15 105:17 105:17 105:19 105:19 105:22 106:2 106:3 106:4 106:15 106:17 106:17 106:20 106:24 106:24 107:4 107:6 107:13 107:14 107:15 107:19 107:22 107:23 107:25 108:2 108:3 108:5 108:8 108:8 108:9 108:9 108:10 108:13 108:23 108:25 109:4 109:1

**and**(301) 109:12 109:13 109:22 109:25 109:25 110:2 110:6 110:7 110:11 110:15 110:19 110:22 111:10 111:15 111:17 111:19 111:20 112:1 112:2 112:2 112:8 112:8 112:15 112:16 112:19 112:20 113:1 113:11 113:11 113:12 113:12 113:14 113:16 113:20 113:22 113:23 114:10 114:11 114:15 114:17 114:21 114:24 114:25 116:1 116:1 116:3 116:6 116:7 116:7 116:9 116:13 116:17 116:21 116:21 116:22 116:22 116:23 116:24 116:24 117:1 117:8 117:9 117:11 117:11 117:13 117:16 117:18 118:1 118:7 118:9 118:10 118:13 118:14 118:19 119:3 119:9 119:12 119:14 119:15 119:16 119:17 120:5 120:7 120:7 120:9 120:10 120:13 120:16 120:17 121:16 121:17 121:20 121:21 121:23 122:2 122:6 122:10 122:11 122:13 122:17 122:22 122:23 123:1 123:2 123:9 123:11 123:13 123:14 123:14 124:3 124:10 124:24 125:4 125:20 125:23 126:3 126:7 126:13 126:24 126:25 127:2 127:4 127:5 127:7 127:9 127:13 127:16 127:17 127:19 127:23 128:9 128:9 128:11 128:19 128:22 128:24 129:5 129:12 129:18 129:22 129:23 129:23 130:1 130:8 130:10 130:13 130:15 130:20 130:23 131:3 131:9 131:10 131:11 131:13 131:17 132:1 132:9 132:9 132:12 132:18 132:19 132:22 133:2 133:8 133:14 133:18 133:19 133:21 134:7 134:9 134:11 134:18 134:22 135:2 135:8 135:16 135:17 135:18 136:7 136:11 136:23 137:6 137:15 137:20 137:21 138:3 138:6 138:11 138:13 138:16 139:3 139:17 139:21 139:23 140:1 140:3 140:18 140:19 140:19 140:25 141:7 141:1 141:14 141:15 141:16 141:20 141:21 141:25 142:2 142:3 142:11 142:15 142:19 142:23 142:25 143:1 143:2 143:7 143:8 143:10 143:12 143:21 144:1 144:5 144:6 144:8 144:9 144:13 144:14 144:20 145:5 145:7 145:22 145:24 146:12 146:15 146:17 146:25 147:1 147:6 147:9 147:18 149:10 149:14 149:23 150:1 150:13 151:10 151:12 151:13 151:19 152:14 152:19 153:1 153:5 153:12 153:18 153:18 153:21 154:1 154:6 154:7 154:10 154:13 154:24 155:1 155:4 155:6 155:12 155:13 155:17 155:18 155:20 156:10 156:12 156:15 156:17 156:21 156:23 157:12 157:15 157:18 157:20 157:22 158:4 158:17 158:21 158:2 159:6 159:10 159:11 159:12 159:24 159:25 160:19 161:13 161:20 161:22 162:20

**and**(31) 162:23 162:24 163:3 163:4 163:5 163:12 164:1 164:19 165:21 165:23 166:1 166:2 166:24 167:1 167:10 167:10 167:12 167:13 167:24 168:2 168:4 168:13 168:21 169:1 169:2 169:4 169:14 169:17 170:4 170:8 170:21

**anderson**(1) 3:4
**andrew**(10) 2:13 6:32 6:39 6:44 6:45 8:4 8:17 10:11 10:22 10:33

**angela**(2) 71:8 73:17
**angeles**(1) 4:35
**angell**(1) 3:40
**angelo**(10) 6:30 3:11 14:8 15:23 19:1 27:23 35:6 74:21 85:24 108:9

**angst**(1) 33:11
**animating**(1) 75:16
**anna**(2) 6:50 6:50
**anniversary**(1) 167:4
**another**(10) 41:17 57:15 73:10 102:4 103:4 117:4 118:19 136:24 138:19 144:18

**answer**(10) 21:16 24:13 24:15 29:25 67:11 90:12 96:8 117:21 134:16 160:19

**answers**(1) 166:4
**anticipate**(2) 67:16 165:22
**any**(68) 11:25 20:4 21:9 22:11 22:24 27:8 27:24 29:18 32:19 35:3 36:19 38:6 38:11 50:18 52:20 53:16 55:24 56:23 60:20 65:8 67:12 67:15 68:20 68:20 69:3 69:11 74:12 78:13 83:2 83:13 83:14 85:12 86:14 92:3 93:24 94:7 94:14 98:7 98:17 105:25 106:1 106:8 109:17 112:13 113:10 115:3 117:17 117:20 118:23 120:22 124:12 129:20 129:25 137:4 144:22 153:22 154:4 157:18 158:23 160:20 160:20 161:22 162:16 163:10 165:12 166:6 167:9 169:19

**anybody**(4) 36:12 69:3 125:19 147:8
**anybody's**(1) 135:9
**anymore**(4) 36:10 108:6 115:18 117:12
**anyone**(18) 27:20 44:1 44:16 61:5 65:2 70:21 74:17 84:17 120:19 121:1 132:5 157:7 160:4 160:10 161:9 161:22 163:8 165:3

**anyone's**(1) 87:16
**anything**(21) 20:7 20:9 23:1 47:13 61:10 65:16 66:3 75:18 77:18 78:17 90:22 90:23 133:19 148:5 157:4 158:5 163:16 166:9 169:24 170:14 170:24

**anyway**(4) 17:12 73:17 137:14 149:7
**anyways**(1) 95:12
**apace**(1) 76:10
**apart**(1) 64:17
**apocalyptic**(1) 26:17
**apologize**(2) 29:6 40:5
**apology**(1) 40:10
**appalled**(1) 40:1
**apparent**(3) 23:24 32:17 37:3
**apparently**(5) 34:21 34:23 39:5 98:2
**appeal**(2) 23:23 27:22
**appealing**(1) 50:9
**appeals**(1) 28:9
**appear**(5) 79:18 117:18 131:19 164:2 164:25

**appearances**(5) 6:1 7:1 8:1 9:1 10:1
**appears**(1) 100:19
**applicable**(1) 61:19
**application**(1) 99:3
**apply**(1) 39:10
**appoint**(1) 127:22
**appointing**(1) 115:1
**appreciate**(2) 72:14 76:2
**apprise**(2) 11:6 101:15
**approach**(5) 31:2 51:21 113:6 155:23 163:19

**approaching**(1) 28:10
**appropriate**(17) 17:17 22:13 33:17 44:12 56:13 65:25 66:8 69:14 69:14 84:22 85:17 85:18 86:14 86:25 116:19 124:4 128:10

**appropriately**(1) 62:25
**appropriateness**(1) 85:14
**approval**(2) 79:22 159:15
**approve**(1) 157:14
**approved**(1) 35:18
**approving**(8) 36:5 43:18 58:10 77:3 119:10 148:7 163:11 163:18

**approximately**(2) 159:16 170:7

| Word | Page:Line |
|------|-----------|

**are**(204) 11:25 12:14 12:15 13:14 15:24 16:2 16:14 16:16 17:7 18:17 18:17 18:18 18:23 19:5 20:21 21:22 21:23 22:2 22:12 22:13 22:13 23:19 25:7 25:20 26:3 26:15 26:22 29:10 29:14 32:6 33:7 33:21 34:4 34:7 35:2 35:12 35:19 35:23 35:25 37:1 37:10 40:15 40:17 42:21 43:9 44:9 44:10 44:12 44:14 45:19 46:19 47:9 47:11 47:25 48:20 48:20 49:13 50:15 50:15 53:20 54:1 54:18 54:21 55:3 55:7 56:6 56:15 57:1 57:3 57:3 57:17 57:18 57:19 57:20 57:25 58:2 58:13 59:3 59:24 61:1 61:22 63:10 63:13 63:14 64:13 65:11 65:15 65:19 67:6 67:2 67:19 67:23 68:1 68:10 68:16 69:6 69:8 69:9 69:10 69:21 69:24 70:4 70:5 70:17 71:3 71:4 71:6 71:9 73:18 73:23 74:21 74:23 74:25 75:2 75:17 75:20 75:22 77:21 80:9 81:14 82:22 82:25 85:15 85:16 86:19 88:20 89:2 89:6 95:16 95:24 97:23 98:10 98:11 98:11 98:12 99:2 99:18 99:18 99:22 100:22 103:2 111:8 115:7 115:7 115:9 115:18 118:15 119:1 120:19 120:23 122:5 122:5 122:13 122:21 124:2 124:8 124:9 124:10 124:11 125:6 126:1 126:2 128:23 131:2 133:25 134:10 134:25 135:1 135:22 137:25 137:25 138:21 139:8 139:11 141:10 142:25 143:21 144:10 145:7 145:13 147:3 149:23 149:24 150:1 151:17 151:18 152:10 153:3 153:4 155:15 157:18 160:19 164:6 164:8 164:10 164:16 165:17 165:25 167:10 168:3 168:20 168:2 169:18

**area**(1) 109:11

**areas**(4) 132:9 153:2 153:4 168:7

**aren't**(6) 21:17 71:8 102:8 138:2 140:11 156:16

**arena**(1) 41:13

**argue**(5) 18:11 86:17 87:6 103:24 133:12

**argued**(2) 129:19 129:25

**arguing**(2) 39:9 131:20

**argument**(10) 13:24 14:6 18:5 18:10 22:24 42:2 71:2 127:21 132:12 142:16

**arguments**(11) 14:13 14:18 19:6 20:18 38:14 69:1 71:3 74:10 85:4 118:15 124:24

**arif**(1) 8:45

**arises**(1) 99:3

**arkin**(1) 5:34

**arms**(1) 102:2

**armstrong**(1) 8:14

**arose**(1) 40:23

**around**(14) 13:21 14:16 17:4 43:2 86:3 93:25 103:5 121:11 121:16 124:15 131:8 137:9 159:19 161:7

**arrangement**(1) 150:25

**arrangers**(1) 131:15

**arrived**(1) 35:5

**arrowgrass**(1) 8:45

**arrowhawk**(1) 8:17

**arsht**(1) 5:18

**article**(1) 89:15

**articulated**(1) 145:13

**ascribe**(2) 51:5 151:3

**ashby**(1) 4:4

**ashley**(1) 2:16

**aside**(5) 76:16 84:14 117:22 137:8 146:3

**ask**(22) 14:12 18:4 18:6 26:21 26:24 37:11 42:20 43:25 59:22 66:25 78:7 88:15 95:7 100:1 112:8 118:1 118:22 145:3 145:9 151:24 153:13 154:5

**asked**(19) 12:12 13:21 13:23 13:24 18:25 22:5 25:2 30:1 32:12 55:11 78:8 79:4 93:10 121:19 125:7 126:11 132:23 150:9 165:4

**asking**(11) 12:16 92:1 99:22 103:9 103:10 109:13 111:13 119:1 150:10 153:23 155:1

**aspect**(1) 133:1

**aspects**(2) 20:21 46:10

**assembly**(1) 67:4

**asserted**(1) 167:16

**asserting**(1) 53:9

**assess**(3) 108:11 108:19 131:24

**assessing**(2) 81:2 84:6

**assessment**(1) 86:14

**asset**(2) 6:26 29:18

**assist**(1) 93:11

**assisting**(1) 93:14

**associated**(2) 60:24 74:12

**associates**(1) 34:13

**assume**(3) 54:3 79:6 123:1

**assuming**(1) 165:16

**assumptions**(1) 165:20

**assumptions**(1) 19:17

**asylum**(1) 5:30

**atamian**(1) 7:18

**attached**(2) 82:25 115:7

**attaching**(1) 150:13

**attachment**(1) 79:19

**attack**(3) 15:21 17:19 18:1

**attempt**(1) 44:14

**attempted**(2) 55:22 55:25

**attempts**(1) 90:15

**attend**(1) 31:15

**attended**(1) 102:18

**attention**(6) 36:4 109:12 113:21 120:21 141:13 167:14

**attorney**(1) 34:12

**attorney's**(1) 73:20

**attrition**(1) 87:4

**auction**(1) 64:13

**aurelius**(52) 4:4 7:32 7:44 22:18 22:23 23:17 23:24 24:14 25:2 25:3 25:19 25:22 26:23 27:00 28:3 28:16 30:11 31:14 31:18 32:18 33:1 34:8 37:9 42:25 44:7 44:13 48:19 49:17 61:7 71:1 71:9 83:18 86:18 88:19 89:19 90:2 90:12 90:17 91:8 93:6 93:23 94:5 94:24 99:12 99:14 107:15 107:18 120:12 129:11 136:9 146:3 153:1

**aurelius's**(4) 89:9 90:14 148:15 149:18

**austin**(7) 1:25 6:10 44:19 75:13 77:19 79:16 157:25

**authentic**(4) 83:1 83:14 115:7 115:14

**authenticated**(2) 96:5 96:9

**author**(1) 32:16

**authority**(3) 55:12 56:11 60:21

**avail**(1) 118:5

**available**(7) 69:1 80:25 81:11 92:18 96:15 96:19 151:9

**avenue**(6) 2:35 2:49 3:35 4:7 4:50 5:36

**avoid**(3) 57:20 58:2 134:21

**avoidance**(1) 43:1

**aware**(5) 44:13 49:24 156:16 156:24

**away**(7) 90:2 102:12 104:14 126:20 133:15 141:22 170:22

**awful**(2) 83:25 109:3

**awhile**(1) 110:20

**back**(20) 26:24 32:12 35:3 41:1 47:5 60:9 61:13 62:18 65:13 68:6 73:11 93:2 107:5 107:18 112:8 115:22 117:4 120:8 123:20 144:5

**background**(4) 46:2 101:23 105:20 114:11

**backing**(1) 89:18

**backs**(1) 60:14

**bad**(1) 103:2

**baiera**(1) 6:35

**balance**(1) 158:15

**balanced**(1) 142:7

**bale**(1) 7:24

**ballot**(15) 45:24 47:6 47:9 47:11 47:18 48:16 48:16 49:8 51:17 51:24 54:24 74:3 164:20 165:21 165:25

**ballot-like**(1) 43:10

**balloting**(2) 11:14 50:19

**ballots**(20) 47:3 48:13 48:13 49:25 50:1 50:8 50:10 50:14 51:23 54:23 63:21 64:21 67:2 67:4 71:20 73:23 86:11 159:24 165:17 170:8

**banc**(1) 2:47

**band**(4) 89:20 95:8 98:15 98:16

**bank**(10) 3:40 4:40 6:17 6:22 7:4 8:24 9:4 9:8 9:35 72:22

**bankruptcy**(14) 1:1 1:21 11:13 25:5 25:22 32:22 49:10 59:24 60:2 61:19 61:24 101:10 102:10 144:9

**banks**(16) 20:10 68:4 97:9 97:14 97:19 98:1 98:8 103:5 105:8 108:8 109:11 109:22 110:3 111:19 123:3 123:15

**bar**(4) 52:22 57:21 57:23 82:18

**barclays**(2) 3:40 7:15

**bargaining**(1) 102:2

**barometer**(1) 14:8

**barrier**(1) 55:15

**base**(2) 140:18 140:21

**baseball**(1) 62:5

**based**(11) 19:17 31:17 32:10 41:2 49:17 71:18 87:10 91:3 106:12 147:6 158:23

**baseline**(1) 82:21

**basic**(2) 52:17 54:1

**basically**(3) 133:16 136:14 142:22

**basis**(15) 51:13 55:17 68:7 81:12 85:15 87:17 99:1 113:6 134:13 134:13 135:1 135:17 135:17 165:23 168:16

**battle**(1) 86:22

**bear**(14) 52:14 52:25 53:4 53:8 66:8 71:10 73:13 74:15 77:14 88:9 103:16 149:3 158:20 170:11

**bears**(3) 52:8 59:9 102:5

**became**(1) 51:18

**because**(72) 13:14 17:22 19:7 19:11 21:23 28:19 29:16 31:19 33:20 33:22 34:23 36:25 38:13 39:1 39:6 40:5 41:3 41:6 41:25 43:9 44:4 50:13 50:22 52:25 53:17 67:19 67:20 68:15 73:10 75:6 87:11 89:17 89:25 90:3 90:6 90:12 94:9 94:11 94:24 96:3 96:9 99:18 100:8 107:2 113:3 113:20 114:18 115:22 117:12 117:15 120:20 122:21 123:18 124:1 124:25 126:2 127:2 128:6 131:8 135:23 136:20 139:4 142:1 143:13 143:19 144:8 149:21 152:16 153:2 154:21 158:8

**become**(4) 27:5 29:8 59:20 60:2

**becomes**(1) 52:19

**been**(57) 11:7 20:12 22:25 28:6 38:11 39:7 40:1 42:10 42:10 46:3 47:2 47:2 47:10 48:24 49:3 49:12 53:22 56:17 60:11 65:7 65:8 71:18 71:23 74:14 74:22 75:22 79:16 81:5 81:18 83:16 96:16 108:18 121:8 121:19 121:20 122:22 123:2 124:14 125:11 125:14 128:23 129:22 129:22 132:1 145:14 146:13 147:18 149:2 149:21 151:6 151:7 154:6 159:14 161:23 167:24 168:4

**beneficial**(2) 48:13 48:16

**beneficiaries**(1) 106:22

**benefit**(4) 52:25 53:2 61:11 133:22

**benefits**(2) 64:14 64:14

**benjamin**(2) 2:31 88:16

**bennett**(3) 4:30 8:42 13:11

**benson**(3) 5:11 10:36 129:9

**berke**(1) 9:11

**bernstein**(3) 2:32 98:22 98:22

**best**(16) 34:16 38:16 38:18 43:13 44:15 53:3 62:15 77:24 105:21 114:22 138:20 145:13 145:18 151:9 154:19 157:1

**better**(10) 37:17 41:10 43:19 62:21 77:5 84:1 107:1 135:16 140:20 144:22

**between**(14) 11:7 11:15 17:20 17:25 18:23 19:21 22:10 26:19 41:9 79:3 88:25 119:16 162:3 166:17

**beyond**(3) 66:13 87:15 161:18

**bifferato**(1) 5:4

**big**(3) 18:16 19:19 73:7

**bigelow**(1) 6:3

**binder**(3) 30:21 31:8 164:10

**before**(55) 1:20 13:12 14:19 20:19 23:1 23:1 28:24 30:12 31:13 32:5 35:18 38:11 41:1 41:3 43:25 46:24 60:9 60:17 70:15 71:2 71:3 71:15 76:15 77:13 78:2 78:10 78:17 86:7 86:11 88:7 89:14 91:10 99:16 107:5 107:18 109:22 111:18 117:15 121:11 122:3 125:12 126:15 133:2 136:13 136:15 136:20 137:20 140:25 142:18 143:17 145:13 146:8 149:25 162:22 164:25

**begin**(2) 23:16 31:11

**beginning**(5) 14:24 25:12 121:16 121:20 159:23

**begins**(1) 30:25

**behalf**(16) 11:5 13:11 22:14 30:11 41:19 44:19 61:7 70:24 71:7 75:14 84:19 95:19 130:20 149:16 149:17 157:25

**behind**(2) 107:5 164:10

**being**(20) 29:16 43:7 43:8 44:10 53:6 69:13 74:22 83:19 88:20 92:7 93:15 99:2 102:12 107:11 118:15 129:16 148:13 152:9 160:10 166:3

**belief**(3) 17:12 21:21 34:8

**beliefs**(1) 79:2

**believe**(41) 12:1 12:9 16:19 19:14 20:15 21:9 28:24 32:11 33:6 33:7 45:12 47:8 47:13 48:14 48:20 48:24 51:10 64:7 66:7 66:23 69:15 71:18 80:5 81:12 81:22 82:22 93:3 100:24 115:2 123:7 130:23 148:10 152:8 159:10 160:9 160:20 161:2 162:16 163:13 166:10 170:9

**believed**(2) 93:3 167:9

**believes**(9) 25:3 25:19 33:4 33:15 33:15 36:15 36:15 37:9 44:12

**below**(1) 34:18

**bench**(1) 38:16

**bendernagel**(72) 1:28 79:15 79:15 79:24 80:18 80:20 85:15 95:19 96:4 96:11 96:15 96:19 97:1 104:16 113:8 113:14 120:8 132:6 134:5 134:7 134:20 135:5 135:11 135:14 135:16 136:1 136:5 136:17 137:15 137:18 137:22 138:10 139:8 139:15 140:1 141:1 141:6 141:14 141:24 142:7 142:20 143:6 143:25 144:4 145:4 145:17 145:20 146:2 146:6 146:10 146:14 146:19 146:21 146:25 147:9 147:12 147:17 147:20 147:24 148:1 148:4 148:10 148:13 148:18 148:22 149:1 149:5 149:12 149:17 155:8 156:4 168:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **binding**(1) 83:13 | | **brush**(1) 114:16 | | **can't**(20) 60:17 75:18 104:6 107:5 112:13 | | **certainly**(15) 14:12 23:10 24:7 31:4 36:23 |
| **bit**(15) 12:16 23:7 23:16 23:25 39:11 40:1 | | **bryant**(1) 4:18 | | 112:19 118:17 120:21 125:8 126:20 126:24 | | 40:2 40:4 40:5 54:14 57:4 59:13 85:16 |
| 46:1 60:1 71:4 76:12 76:13 78:15 119:17 | | **bucks**(1) 73:24 | | 129:5 134:3 151:24 152:19 153:10 154:22 | | 116:19 132:6 160:2 |
| 122:11 132:14 | | **building**(1) 4:24 | | 155:5 156:15 156:24 | | |
| | | **built**(1) 141:15 | | | | **certification**(4) 42:20 65:25 160:7 171:6 |
| **blabey**(1) 7:21 | | **bulk**(1) 131:1 | | **candace**(1) 6:12 | | **certifications**(1) 48:21 |
| **blackline**(6) 16:9 16:17 28:18 30:25 31:1 | | **bullet**(1) 37:11 | | **cannot**(2) 68:24 129:4 | | **certified**(1) 171:15 |
| 31:9 | | **bullets**(1) 60:4 | | **cantor**(1) 6:18 | | **certify**(1) 171:7 |
| | | **bunch**(2) 67:3 134:25 | | **canvas**(5) 103:2 103:5 103:7 103:14 109:1 | | **chadbourne**(4) 2:11 9:30 22:22 84:19 |
| **blacklined**(1) 16:15 | | **burden**(3) 53:8 88:10 130:23 | | **canvassing**(7) 81:25 82:1 84:5 84:8 84:10 | | **chads**(1) 64:5 |
| **blake**(1) 4:23 | | **burdened**(1) 61:1 | | 84:10 90:4 | | **chair**(1) 105:21 |
| **blanket**(1) 100:3 | | **burdick**(1) 9:17 | | | | **chairman**(6) 23:24 32:17 32:19 38:23 |
| **bless**(1) 106:3 | | **burke**(1) 28:9 | | **canvassing-plus**(1) 90:4 | | 106:11 107:22 |
| **block**(3) 6:38 16:12 34:12 | | **business**(6) 29:21 91:3 111:25 115:11 | | **cap**(2) 14:25 15:2 | | |
| **board**(6) 8:49 85:12 107:10 107:22 107:24 | | 143:3 160:2 | | **capital**(18) 4:4 7:24 7:32 7:44 7:51 8:14 | | **challenge**(7) 116:23 116:23 120:16 150:11 |
| 120:8 | | | | 8:17 8:20 8:30 8:39 9:23 10:41 13:12 | | 151:19 152:1 152:19 |
| | | **busy**(1) 27:4 | | 30:11 32:18 33:1 85:24 99:13 | | |
| **bockius**(1) 9:4 | | **but**(160) 13:20 13:25 15:24 17:21 19:13 | | | | **challenged**(1) 107:15 |
| **bondholder**(2) 27:21 28:16 | | 21:1 21:16 23:21 25:2 25:17 26:5 27:7 | | **capitulate**(1) 111:21 | | **challenges**(1) 45:9 |
| **bondholders**(2) 25:13 29:19 | | 27:15 30:18 31:8 32:1 32:8 32:13 33:12 | | **capitulated**(4) 92:14 92:16 111:22 111:24 | | **chance**(8) 14:12 17:3 43:10 86:8 86:10 |
| **bonds**(1) 90:19 | | 35:7 35:21 36:21 37:3 37:22 38:3 38:7 | | **capmark**(1) 116:19 | | 112:6 124:17 131:16 |
| **bonnie**(3) 34:21 37:7 | | 38:16 39:14 40:4 41:16 42:8 43:2 43:19 | | **caption**(1) 114:15 | | |
| **booklet**(1) 165:9 | | 45:24 47:13 47:25 53:13 54:6 54:24 58:2 | | **care**(3) 11:10 74:17 165:3 | | **chances**(1) 57:25 |
| **booklets**(1) 165:10 | | 61:13 62:20 65:15 66:3 66:15 66:20 67:1 | | **cared**(1) 24:8 | | **chandler**(1) 6:3 |
| **books**(3) 64:20 64:21 158:8 | | 67:10 69:8 72:9 74:3 75:8 75:19 77:2 | | **careful**(3) 104:25 114:1 130:12 | | **change**(12) 20:6 31:25 32:2 35:22 42:24 |
| **born**(1) 52:11 | | 77:12 78:1 80:2 83:5 83:17 83:24 90:2 | | **carefully**(3) 31:15 31:15 105:2 | | 42:25 43:3 44:6 44:8 48:15 56:18 76:18 |
| **borne**(2) 64:15 66:12 | | 90:3 91:20 91:21 91:23 91:23 92:20 92:22 | | **carey**(1) 1:20 | | |
| **both**(11) 17:23 31:13 50:11 60:25 67:21 | | 95:1 95:12 96:1 96:8 96:14 97:24 100:8 | | **carlson**(1) 9:23 | | **changed**(5) 19:11 34:6 34:20 34:25 121:22 |
| 80:21 91:2 93:24 138:5 152:11 167:11 | | 100:16 100:17 101:13 102:21 103:15 104: | | **carlyle**(1) 2:47 | | **changes**(21) 12:6 12:9 12:12 12:14 13:22 |
| | | 104:18 105:24 106:8 107:9 108:13 109:1 | | **carol**(1) 7:24 | | 18:23 18:24 20:5 24:6 24:12 31:10 32:15 |
| **bottom**(4) 92:21 94:16 152:10 152:15 | | 112:14 113:7 113:17 114:18 114:23 115:8 | | **carry**(2) 27:3 60:1 | | 39:4 40:14 42:22 43:5 43:15 44:12 47:7 |
| **bought**(1) 34:25 | | 117:16 117:19 119:9 119:23 119:25 120:2 | | **carrying**(1) 14:4 | | 57:13 110:14 |
| **bound**(2) 164:16 165:9 | | 122:9 123:5 124:3 124:7 124:9 124:19 | | **carryover**(1) 28:13 | | |
| **bowden**(1) 4:5 | | 124:23 125:6 125:12 128:8 128:9 128:15 | | **case**(61) 1:9 4:47 25:6 25:22 26:19 33:16 | | **chaos**(1) 60:15 |
| **box**(9) 2:7 4:8 4:26 4:43 5:23 50:1 51:10 | | 129:3 132:10 132:15 133:11 133:20 134:1 | | 36:5 40:10 59:13 59:17 60:16 60:20 61:3 | | **chapter**(1) 1:7 |
| 51:24 63:25 | | 134:25 135:4 135:7 135:9 135:10 135:21 | | 64:11 66:3 70:16 74:9 75:1 78:1 80:10 | | **characterization**(1) 17:6 |
| | | 137:8 137:13 138:16 139:10 139:12 140:2 | | 80:16 83:22 89:6 91:4 91:25 93:17 94:5 | | **chart**(6) 46:6 46:7 46:9 46:11 62:4 120:6 |
| **bracewell**(3) 5:27 10:20 18:16 | | 140:24 141:11 141:16 141:17 141:18 | | 94:18 99:19 101:8 101:21 102:5 105:9 | | **chase**(5) 2:30 7:4 8:24 27:23 129:15 |
| **brand**(4) 14:5 16:18 17:3 19:5 | | 142:13 142:20 144:22 145:13 146:3 147:2 | | 105:12 106:8 106:8 113:25 114:3 114:9 | | **chase's**(1) 88:17 |
| **brandywine**(1) 4:24 | | 147:7 148:5 149:2 149:16 150:8 150:20 | | 114:15 116:20 121:19 125:23 129:16 | | **cheat**(1) 34:16 |
| **brass**(1) 7:48 | | 151:1 151:6 153:3 153:22 154:14 154:22 | | 129:18 130:8 130:20 131:21 132:19 133:1 | | **check**(2) 63:25 75:9 |
| **breach**(1) 171:13 | | 156:21 157:1 158:5 162:23 164:23 165:2 | | 135:23 147:3 147:7 149:21 150:5 152:13 | | **checking**(1) 158:14 |
| **break**(6) 76:14 77:8 77:15 78:17 78:18 | | 168:12 169:13 | | 157:12 157:13 158:9 164:24 169:3 | | **checklist**(1) 170:2 |
| 117:15 | | | | | | **chicago**(2) 1:31 9:42 |
| | | **butz**(1) 5:20 | | **cases**(10) 58:1 61:12 61:13 86:15 88:7 | | **chief**(1) 34:13 |
| **breath**(1) 100:2 | | **buy**(1) 91:4 | | 114:21 124:15 125:23 147:18 167:4 | | **children**(1) 117:3 |
| **breed**(1) 95:15 | | **buyout**(1) 99:4 | | | | **ching**(2) 9:26 9:27 |
| **brian**(3) 6:14 8:11 9:23 | | **buzz**(1) 33:10 | | **cash**(6) 35:9 35:12 35:13 35:17 35:18 | | **choice**(1) 60:2 |
| **brickley**(1) 9:14 | | **bynum**(1) 9:20 | | **cashman**(1) 8:27 | | **choose**(1) 68:25 |
| **bridge**(10) 4:39 33:25 54:17 69:8 69:8 | | **calculate**(1) 62:8 | | **cast**(2) 86:11 95:6 | | **christy**(1) 2:14 |
| 71:9 74:9 130:20 131:4 132:17 | | **calendar**(1) 118:16 | | **cat**(1) 57:16 | | **chung**(1) 6:23 |
| | | **call**(10) 14:7 17:20 20:25 27:13 53:11 | | **categories**(8) 79:20 134:9 134:18 152:24 | | **circuit**(2) 60:3 109:23 |
| **brief**(8) 98:23 129:13 130:21 144:15 | | 66:4 117:10 136:7 142:24 157:12 | | 153:2 167:20 167:21 168:5 | | **circulated**(1) 154:7 |
| 144:18 145:6 155:19 156:5 | | | | | | **circulation**(1) 151:7 |
| | | **called**(2) 54:15 117:13 | | **category**(5) 134:12 135:1 135:17 152:20 | | **circumstance**(1) 94:15 |
| **briefing**(6) 81:16 141:3 141:10 144:8 | | **calls**(3) 29:20 89:1 92:15 | | 153:6 | | **circumstances**(6) 35:23 42:11 44:15 66:18 |
| 145:15 155:7 | | **calming**(1) 12:16 | | | | 139:13 154:4 |
| | | **camden**(1) 6:26 | | **cause**(2) 12:1 97:4 | | |
| **briefly**(9) 39:18 46:24 49:4 59:8 74:19 | | **came**(11) 24:4 24:13 106:14 106:19 | | **causes**(18) 20:24 80:3 81:1 81:2 81:24 | | **circus**(3) 38:5 39:23 95:4 |
| 78:24 84:20 86:1 156:8 | | 114:23 116:20 127:16 148:16 153:17 | | 82:15 85:1 85:8 87:24 88:2 90:23 97:3 | | **citadel**(1) 9:49 |
| | | 156:18 162:2 | | 98:10 98:12 124:2 130:4 131:5 162:16 | | **cite**(3) 64:11 116:20 125:22 |
| **briefs**(6) 141:7 141:12 144:20 145:6 | | **camera**(1) 134:19 | | | | **cited**(1) 60:20 |
| 145:22 161:22 | | **can**(86) 20:1 20:4 28:20 31:2 33:3 37:16 | | **caution**(1) 158:3 | | **cites**(1) 125:23 |
| | | 37:18 38:12 38:16 44:15 46:11 47:18 49: | | **cavalierly**(1) 107:12 | | **citigroup**(1) 6:42 |
| **brigade**(1) 8:20 | | 51:18 53:11 57:13 57:13 58:16 58:19 | | **caveats**(1) 65:25 | | **citizens**(1) 4:40 |
| **bring**(9) 36:4 75:24 84:21 99:17 103:15 | | 58:20 60:4 61:25 62:5 63:2 65:13 65:23 | | **cd-rom**(2) 66:24 158:9 | | **citrick's**(1) 169:3 |
| 112:21 118:14 155:16 167:13 | | 65:24 68:24 70:11 72:19 73:24 76:21 77: | | **cd-roms**(2) 64:20 65:11 | | **claim**(13) 10:11 15:23 29:16 47:22 48:11 |
| | | 77:16 82:24 84:12 85:12 85:18 87:15 97:5 | | **cell**(1) 117:11 | | 69:9 105:13 109:14 112:7 124:3 165:24 |
| **bringing**(1) 141:13 | | 95:25 95:25 96:23 103:15 105:21 109:17 | | **center**(2) 4:40 93:4 | | 166:2 166:3 |
| **brings**(2) 44:19 49:2 | | 109:18 109:19 112:21 113:9 115:16 115:2 | | **centerpiece**(1) 151:7 | | |
| **broad**(2) 44:24 120:1 | | 119:12 120:6 123:4 123:13 126:12 126:1 | | **centrally**(1) 102:5 | | **claimant**(1) 165:25 |
| **broadest**(1) 120:23 | | 126:18 133:3 133:16 133:22 135:1 135:9 | | **cents**(4) 35:17 35:18 35:20 101:1 | | **claiming**(1) 112:2 |
| **broadway**(1) 5:14 | | 135:16 135:18 136:9 137:2 138:4 138:14 | | **century**(1) 114:13 | | |
| **brodsky**(13) 23:24 30:15 31:13 32:4 32:13 | | 138:15 139:11 140:6 140:20 143:19 144:6 | | **cert**(1) 171:14 | | |
| 32:17 32:21 33:1 33:4 33:13 33:24 36:10 | | 144:8 145:7 146:7 147:17 152:15 153:9 | | **certain**(14) 19:17 44:8 57:2 71:16 71:17 | | |
| 36:15 | | 154:14 157:18 157:19 159:10 | | 83:8 84:22 92:9 110:25 115:9 124:9 | | |
| **brodsky's**(4) 25:11 27:19 28:5 28:14 | | | | 130:15 149:24 156:11 | | |
| **broke**(2) 99:16 132:7 | | | | | | |
| **brown**(4) 3:19 7:15 70:24 121:4 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **claims**(90) 15:5 15:10 17:24 26:4 29:12 30:2 36:2 41:8 43:1 44:9 44:14 48:3 48:11 53:20 54:6 54:18 54:20 54:24 55:3 55:4 55:15 55:5 55:6 55:7 55:9 55:14 55:17 55:18 55:24 56:1 56:3 56:15 56:22 57:3 57:5 57:9 57:10 57:14 57:21 57:23 66:22 67:7 67:19 67:20 67:23 68:4 68:9 68:10 68:14 68:23 69:5 69:7 69:10 69:10 69:12 69:25 70:9 74:25 75:15 75:17 75:20 75:22 76:12 77:9 81:3 81:19 82:8 82:10 84:4 85:5 86:16 86:20 88:12 91:19 92:6 94:14 102:15 103:1 103:8 108:6 108:12 111:25 122:12 123:11 132:11 136:23 167:3 167:9 167:12 167:16 | | **coming**(6) 39:14 75:2 85:16 119:15 121:8 131:9 | | **confer**(2) 120:5 140:25 | | **contrarian**(1) 10:41 |
| **clarification**(1) 98:9 | | **commence**(1) 98:17 | | **conference**(3) 141:20 142:10 155:13 | | **contrary**(2) 74:23 88:21 |
| **clarify**(4) 18:22 48:15 97:3 165:5 | | **commenced**(1) 60:9 | | **confess**(1) 93:1 | | **contribution**(1) 159:3 |
| **clarifying**(1) 162:21 | | **commentary**(3) 29:17 39:6 113:10 | | **confident**(2) 38:15 72:12 | | **control**(5) 38:17 38:18 48:13 48:16 106:13 |
| **class**(13) 22:3 35:17 35:18 43:7 50:4 55:5 55:10 55:18 55:23 56:9 57:9 67:20 166:1 | | **comment**(12) 17:4 22:9 22:24 80:15 82:21 95:4 98:23 102:18 113:16 114:10 161:9 161:22 | | **confidentiality**(1) 111:22 | | **controls**(1) 21:25 |
| | | | | **confirm**(2) 61:21 68:3 | | **controversial**(2) 47:14 157:2 |
| **classes**(3) 56:14 57:3 68:9 | | **comments**(13) 18:24 22:11 32:16 33:3 38:23 97:9 99:16 146:3 156:1 160:20 165:2 165:12 166:7 | | **confirmation**(64) 11:16 45:3 54:11 54:13 56:23 62:16 68:15 69:16 69:17 69:20 76:17 76:22 77:9 77:23 84:13 84:23 85:16 86:22 86:25 87:3 87:23 88:24 88:25 89:1 90:9 91:11 91:18 92:25 93:5 93:8 93:15 94:15 95:23 96:2 114:22 115:4 117:22 119:19 122:3 123:5 123:12 123:18 123:22 124:5 126:21 127:8 127:19 128:22 130:14 133:4 136:20 136:21 136:21 137:1 137:6 162:2 167:15 168:11 | | **convene**(1) 155:20 |
| **classified**(3) 44:10 75:20 75:21 | | **commission**(1) 98:2 | | | | **conveyance**(1) 44:9 |
| **clean**(1) 79:10 | | **committee**(58) 2:4 8:48 9:30 14:25 15:16 17:21 22:22 25:4 25:13 25:19 25:23 26:3 26:11 26:13 29:9 29:10 29:13 31:25 32:9 32:10 33:11 33:19 33:22 34:15 34:20 35:7 35:11 35:19 35:19 37:8 37:9 38:2 41:14 41:20 42:12 42:22 44:11 53:24 73:15 82:16 84:20 87:20 94:11 104:12 105:5 105:18 106:11 107:3 109:18 109:24 125:16 166:23 167:5 167:17 167:17 168:7 | | | | **conveys**(1) 37:25 |
| **clear**(23) 16:1 19:19 42:10 51:12 53:3 56:25 79:25 81:13 81:16 81:17 81:18 81:20 82:4 82:23 116:13 120:22 123:13 123:21 147:9 153:21 156:4 159:3 159:4 | | | | **confirmation-relate**(1) 82:6 | | **cooperation**(1) 72:14 |
| | | | | **confirmed**(5) 52:9 61:23 62:24 77:6 87:1 | | **coordinated**(1) 45:11 |
| | | | | **conflicts**(5) 25:4 25:20 37:10 37:18 | | **copy**(4) 27:5 127:10 128:14 158:8 |
| **clearly**(4) 62:15 83:24 123:7 125:12 | | | | **congress**(2) 59:19 60:18 | | **core**(1) 98:13 |
| **cleary**(1) 4:23 | | | | **conjunction**(1) 43:6 | | **correct**(14) 17:16 18:8 24:16 63:3 63:5 63:6 69:6 74:20 120:13 129:14 151:15 163:6 165:20 171:7 |
| **clerk**(1) 11:2 78:21 | | | | **conjunctions**(1) 77:24 | | |
| **clever**(1) 115:13 | | | | **conlan**(1) 51:2 | | **corrections**(1) 22:4 |
| **client**(4) 38:23 48:2 70:25 104:18 | | **committing**(2) 138:24 139:1 | | **connection**(9) 40:23 44:1 44:10 68:12 68:15 68:22 77:5 99:5 157:16 | | **correctly**(1) 63:2 |
| **clients**(11) 13:15 15:22 17:8 41:6 60:8 71:8 72:16 74:21 74:23 86:4 90:19 | | **common**(4) 53:7 112:12 156:21 156:22 | | **cons**(1) 59:6 | | **corroon**(1) 3:4 |
| | | **company**(25) 1:9 6:2 6:27 6:30 7:48 8:7 9:26 10:7 55:5 55:18 56:1 56:22 67:7 68:4 68:5 68:6 70:25 75:20 76:12 107:10 108:20 108:22 110:4 112:1 165:18 | | **consensual**(1) 128:6 | | **cost**(28) 52:10 52:25 53:8 59:9 60:10 64:7 64:8 64:15 64:25 65:2 65:10 66:8 66:12 66:16 66:23 71:10 71:10 73:6 73:14 74:20 77:14 81:8 157:21 158:3 158:7 158:18 158:20 158:25 |
| **close**(8) 43:14 43:20 93:6 112:2 136:6 136:8 136:10 147:15 | | | | **consented**(2) 167:24 168:4 | | |
| | | | | **consequence**(1) 140:1 | | **costing**(1) 73:9 |
| **closed**(1) 138:17 | | **company's**(1) 110:15 | | **consequently**(1) 81:22 | | **costs**(34) 52:9 52:14 52:20 52:22 53:4 59:25 60:24 60:25 61:9 64:19 65:1 65:15 65:19 67:1 71:12 72:22 72:23 73:2 73:4 73:5 73:18 74:2 74:11 74:12 74:15 77:11 158:1 158:8 158:10 158:12 158:13 162:21 162:23 163:3 |
| **closer**(6) 118:13 119:17 118:22 138:15 140:24 155:5 | | **compare**(1) 101:11 | | **consider**(8) 38:12 104:7 127:1 155:19 | | |
| | | **competing**(15) 11:22 38:8 39:24 45:11 49:14 53:1 53:6 53:18 59:12 60:1 60:6 60:13 64:10 64:12 66:14 | | **considerably**(1) 76:24 | | |
| **closing**(1) 110:15 | | | | **consideration**(4) 61:2 65:18 100:25 147:18 | | **couched**(1) 34:7 |
| **closure**(1) 75:25 | | | | **considered**(5) 95:23 126:16 156:12 | | **coughs**(1) 100:23 |
| **cloth**(3) 19:6 24:7 24:8 | | | | **consistent**(5) 40:13 50:15 85:13 121:20 167:5 | | **could**(46) 11:12 19:11 21:7 21:8 26:23 27:3 27:18 28:7 29:14 30:23 36:10 37:21 42:10 47:17 51:2 54:12 56:20 57:6 62:2 66:3 66:14 77:4 91:17 96:11 109:25 110:2 111:24 111:25 113:11 125:20 127:24 128:2 138:8 140:9 145:4 145:22 147:5 147:7 148:8 150:19 154:20 156:13 160:23 167:2 167:20 168:7 |
| **clyde**(2) 34:22 37:7 | | **compiled**(2) 87:8 87:19 | | | | |
| **cmo**(3) 119:15 149:11 150:9 | | **complaining**(3) 17:8 25:18 121:9 | | **consolidated**(3) 45:13 68:3 68:7 | | |
| **coproponent**(1) 72:2 | | **complaint**(7) 32:9 98:14 103:24 109:19 109:24 123:23 124:2 | | **constant**(1) 40:18 | | |
| **co-proponent**(1) 83:8 | | | | **constituency**(3) 27:24 91:8 121:12 | | |
| **co-head**(1) 32:23 | | | | **constrain**(2) 103:15 132:19 | | |
| **co-plan**(1) 31:18 | | **complaints**(10) 23:19 81:18 166:24 167:1 167:7 167:11 167:20 168:3 168:7 168:1 | | **constrained**(1) 149:22 | | **couldn't**(1) 41:16 |
| **co-proponent**(2) 29:8 61:10 | | | | **construct**(1) 137:13 | | **couldn't**(1) 104:15 |
| **co-proponents**(4) 28:3 31:14 52:21 99:22 | | **complete**(3) 90:5 92:10 146:15 | | **constructive**(2) 130:9 132:15 | | **counsel**(25) 18:19 19:4 19:20 22:7 25:4 25:20 30:11 37:9 40:17 44:11 49:1 66:25 67:7 69:6 72:22 90:13 91:9 95:7 106:16 106:18 120:9 127:15 129:15 169:16 169:21 |
| **cobb**(1) 2:4 | | **completely**(6) 74:10 92:14 105:14 113:8 120:15 135:14 | | **consult**(2) 77:8 167:8 | | |
| **code**(3) 53:3 53:10 61:19 | | | | **consulted**(1) 167:2 | | |
| **coded**(1) 67:2 | | **completes**(1) 43:23 | | **consumed**(1) 88:8 | | |
| **coffee**(1) 24:1 | | **complex**(1) 50:19 | | **contained**(3) 29:22 33:4 33:5 | | |
| **coincides**(1) 100:21 | | **complexities**(1) 59:11 | | **contains**(3) 30:14 32:4 55:1 | | **count**(3) 64:1 64:2 73:16 |
| **cole**(1) 1:34 | | **complexity**(1) 50:20 | | **contemp**(1) 168:23 | | **counterpoint**(1) 33:17 |
| **colloquially**(1) 45:2 | | **compliance**(1) 12:3 | | **contemplated**(1) 93:7 | | **counting**(3) 33:21 50:17 |
| **colloquy**(1) 55:8 | | **compliant**(2) 32:8 32:11 | | **contempt**(1) 169:5 | | **country**(2) 95:6 116:6 |
| **color**(1) 164:12 | | **complicated**(1) 92:11 | | **contention**(5) 75:1 83:23 89:4 133:18 | | **counts**(1) 108:8 |
| **color-coded**(2) 34:5 164:22 | | **complied**(2) 12:9 12:23 | | **contentious**(1) 126:20 | | **couple**(17) 14:22 26:7 28:20 31:12 32:16 76:11 86:9 97:9 119:11 122:9 125:6 129:13 136:2 143:8 144:19 149:20 169:1 |
| **combination**(1) 164:13 | | **comply**(2) 32:2 168:11 | | **conterminous**(2) 146:12 149:23 | | |
| **combined**(1) 87:19 | | **component**(3) 67:4 71:17 80:22 | | **contest**(3) 26:19 86:25 87:3 | | |
| **come**(48) 40:19 41:1 46:3 46:25 53:5 54:12 61:3 61:9 61:13 68:22 72:24 73:8 73:11 73:24 81:16 82:1 83:17 93:2 101:10 104:6 106:23 110:19 111:18 112:15 112:20 113:9 114:17 114:22 115:9 116:6 116:22 117:3 120:14 122:16 123:17 130:9 131:25 133:15 134:25 135:19 140:5 140:1 144:6 151:10 151:17 154:12 155:5 | | **comprehensiv**(1) 87:15 | | **contested**(4) 68:14 85:10 104:9 144:2 | | **coupled**(1) 86:20 |
| | | **comprising**(1) 81:9 | | **context**(6) 88:1 95:5 106:9 107:25 131:6 137:12 | | |
| | | **compromise**(1) 101:12 | | | | |
| | | **conaway**(1) 4:22 | | **continue**(7) 20:19 64:5 76:22 93:3 93:16 146:16 147:13 | | **course**(8) 23:22 53:9 81:5 85:11 91:14 101:19 101:25 152:13 |
| | | **concept**(1) 66:20 | | | | |
| | | **concern**(4) 22:18 75:3 130:13 138:22 | | **continued**(9) 2:2 3:2 4:2 5:2 7:2 8:2 9:2 10:2 167:7 | | |
| **comes**(3) 58:16 83:3 122:20 | | **concerned**(1) 73:4 | | | | |
| **comfort**(2) 95:19 105:19 | | **concerning**(1) 47:16 | | **continues**(1) 32:18 | | |
| **comfortable**(3) 65:9 65:16 66:10 | | **concerns**(5) 13:8 22:19 49:6 52:8 58:5 | | **continuing**(4) 26:7 26:17 26:18 61:11 | | |
| | | **conclude**(2) 78:2 92:23 | | **contort**(1) 100:20 | | |
| | | **concludes**(1) 171:3 | | **contour**(3) 76:15 77:2 157:13 | | |
| | | **conclusion**(3) 82:1 113:22 126:3 | | **contours**(7) 11:14 45:2 68:13 77:24 78:6 79:17 82:8 | | |
| | | **conclusions**(3) 120:17 126:9 131:25 | | | | |
| | | **condensed**(1) 150:5 | | **contract**(3) 29:17 29:17 97:5 | | |
| | | **conditions**(3) 97:18 97:21 97:22 | | **contracts**(1) 29:21 | | |
| | | **conduct**(4) 45:3 89:5 99:4 144:1 | | **contractual**(2) 122:24 123:4 | | |
| | | **conducted**(1) 154:8 | | | | |

| Word | Page:Line |
|------|-----------|

court(301) 1:1 11:3 11:18 13:4 13:9 16:5 16:9 16:15 16:22 17:1 18:11 18:13 19:2 19:17 19:19 20:2 20:10 20:16 20:20 21:1 21:3 22:16 22:20 22:25 23:2 23:5 23:8 23:11 24:13 24:21 24:23 25:7 25:10 25:15 26:22 27:1 27:3 27:6 27:11 28:22 29:3 29:5 29:22 30:4 30:6 30:9 30:17 30:20 30:25 31:4 31:6 33:4 33:13 34:21 35:3 35:25 36:21 36:24 38:6 38:22 39:1 39:12 39:17 39:19 39:20 40:3 40:8 40:12 41:10 41:19 41:23 42:4 42:7 42:16 43:21 43:25 44:3 44:13 44:16 45:6 45:24 46:4 46:5 46:13 46:19 46:22 47:8 47:20 49:5 49:9 50:2 50:12 50:22 50:23 51:5 51:11 51:12 51:13 51:15 51:20 52:2 52:6 53:13 54:23 56:17 56:24 58:3 58:13 58:18 59:1 59:5 60:22 61:5 61:16 61:20 61:23 62:18 62:23 63:1 63:5 63:7 63:12 63:17 63:20 64:4 64:24 65:6 65:17 65:18 65:22 65:23 66:2 66:6 66:19 66:23 67:9 67:14 67:14 68:22 68:22 69:20 69:25 70:8 70:12 70:18 70:21 71:1 71:13 71:24 72:4 72:10 72:17 72:19 72:21 74:1 74:17 76:1 76:4 78:2 78:4 78:7 78:7 78:10 78:13 78:17 78:18 79:8 79:13 79:23 80:12 80:17 80:9 81:4 81:24 82:23 82:24 83:6 84:3 84:16 85:22 88:14 88:21 89:1 90:8 91:10 91:13 91:16 91:22 92:6 92:12 93:9 93:14 94:21 95:7 95:11 95:16 96:25 98:2 99:10 100:1 100:6 100:11 100:14 101:8 101:9 101:10 101:14 101:21 102:2 104:23 110:18 110:20 110:22 110:25 111:3 114:3 114:6 114:13 116:1 116:14 116:17 117:3 117:6 117:8 117:17 117:21 117:24 118:3 118:5 118:7 118:9 118:16 119:7 119:22 120:24 121:15 124:11 126:9 126:17 126:20 127:11 128:9 128:16 129:7 130:18 132:4 134:4 134:6 134:15 135:4 135:7 135:12 135:15 135:24 136:3 136:15 136:18 137:17 137:19 138:8 139:10 139:23 140:23 141:5 142:6 142:8 143:4 143:23 144:1 145:1 145:9 145:18 146:1 146:5 146:8 146:11 146:17 146:20 146:24 147:1 147:11 147:15 147:19 147:22 147:2 148:2 148:6 148:12 148:14 148:19 148:2 148:24 149:3 149:7 150:17

court(81) 151:21 151:23 152:5 152:15 152:22 153:8 153:20 153:25 154:2 154:18 155:3 155:22 156:3 156:7 157:3 157:6 157:9 158:19 159:5 159:8 159:11 159:22 159:25 160:3 160:12 160:6 160:22 161:4 161:9 161:12 161:17 161:19 162:4 162:10 162:14 162:19 163:1 163:6 163:8 163:10 163:20 163:22 164:4 164:6 164:8 164:15 164:21 164:25 165:11 165:15 166:6 166:22 166:9 166:11 166:16 166:21 166:22 166:2 166:25 167:14 167:15 167:17 167:17 167:19 167:22 168:5 168:9 168:15 168:17 169:6 169:19 169:24 170:10 170:11 170:11 170:19 170:21 170:24 171:2 171:3 171:15

court's(16) 23:14 24:17 27:9 31:17 36:17 39:5 40:24 43:18 45:12 107:2 107:3 112:18 166:14 167:13 168:9 168:11

court-appointed(2) 83:12 83:12

courtney(1) 9:8
courtroom(1) 1:11 94:13 127:12
cover(5) 25:5 25:21 34:10 37:10 44:23
covered(1) 132:8
covers(1) 70:19
craft(1) 116:1
crafted(2) 130:13 167:22
craig(1) 3:41
cram(1) 21:23
create(5) 50:10 62:4 110:5 162:11 162:15
created(2) 19:6 50:8
credibility(1) 109:16
credit(2) 4:22 97:18

creditor(47) 45:15 49:19 50:1 50:14 50:25 51:2 51:11 51:24 61:24 62:3 62:9 62:24 63:2 63:7 68:20 75:10 91:8

creditor's(9) 31:24 32:9 33:11 33:18 33:22 34:19 35:1 35:7 35:11

creditors(38) 2:4 9:31 14:3 14:24 15:3 15:6 15:19 19:10 22:23 23:24 25:13 28:25 34:16 49:7 49:9 49:13 50:5 50:11 50:24 51:6 59:23 60:3 61:18 61:21 62:12 62:17 62:20 64:13 64:14 64:21 69:23 70:6 76:6 84:20 86:10 94:11 105:6

cries(1) 14:11
critical(1) 97:16
critically(1) 109:13
criticisms(1) 29:14
criticized(1) 83:16
cross(2) 50:14 83:14
crucial(2) 98:7 126:7
cry(1) 38:7
cued(2) 134:12 138:12
cumulative(1) 31:9
current(6) 33:20 35:10 36:14 36:15 80:24 121:13

currently(1) 69:20
cut(5) 100:16 100:4 104:1 110:6 110:10
cutler(1) 6:30
damian(1) 2:34
daniel(5) 2:5 4:13 5:20 6:18 30:10
data(1) 1:45
date(32) 48:9 58:5 58:6 58:7 58:12 58:21 70:1 70:7 70:7 70:8 70:10 70:12 70:13 71:7 72:15 75:6 76:10 78:1 78:8 81:14 136:13 137:6 146:25 147:11 147:16 161:2 170:3 170:4 170:5 170:9 170:17

dated(1) 31:1
dates(5) 119:20 137:13 137:13 139:13 161:23
daughter(1) 117:9
david(9) 2:12 3:27 3:34 4:14 4:49 6:4 6:13 7:21 7:28 7:33 8:7 8:8 8:49 22:19 22:21 39:22 99:11 130:19 149:14

davis(3) 3:30 88:16 98:23
day(10) 8:48 58:11 67:5 70:4 92:13 136:22 138:12 143:3 160:5 169:6

days(17) 76:11 76:17 76:20 80:7 117:17 117:18 119:11 137:2 137:8 138:24 140:13 143:8 143:17 144:19 153:6 162:3 170:8

dbtca(1) 3:33
dead(1) 104:8
deadline(15) 31:23 48:10 77:22 77:22 78:6 78:8 138:24 150:6 159:12 159:14 161:5 161:7 162:14 170:6 170:7

deadlines(12) 40:16 77:21 137:10 138:20 138:20 138:21 139:11 139:12 157:15 157:16 159:10 163:12

deal(11) 21:19 76:14 77:1 95:19 105:8 106:15 106:16 109:20 141:17 144:8 155:2

dealing(2) 64:9 139:20
deals(2) 122:10 122:17
dealt(1) 132:22
dear(1) 13:15
dearborn(1) 1:30
debate(3) 20:11 23:23 110:11
debenture(6) 5:4 10:36 91:7 91:20 129:10 129:15

debt(7) 21:25 22:14 97:19 97:20 101:2 108:9 108:20

debtor(32) 6:2 14:25 15:16 17:21 19:8 25:24 26:12 29:9 29:13 42:2 42:20 42:22 53:24 60:7 61:10 61:15 63:20 68:19 73:11 73:15 75:11 79:11 104:12 122:23 129:23 134:24 140:23 158:20 160:5 165:23 165:2 166:2

debtors(92) 1:25 11:5 11:21 12:8 12:11 14:4 15:9 29:18 32:11 33:11 33:18 33:22 35:1 35:6 44:19 44:20 45:7 52:9 52:14 52:18 52:24 52:25 53:2 53:4 53:11 53:24 54:1 54:3 54:9 54:14 56:1 56:5 57:19 60:14 63:10 63:22 66:13 67:24 68:24 69:2 69:11 69:23 72:14 75:14 77:7 79:16 80:24 84:21 86:5 91:10 94:19 95:20 99:21 103:5 103:11 105:5 105:17 106:15 106:16 106:16 106:21 107:20 108:10 108:25 109:4 110:7 110:14 111:7 115:18 115:24 120:7 120:19 128:7 130:12 131:13 131:19 131:22 150:13 157:25 160:19 162:17 162:21 165:17 165:19 165:20 168:1 168:4

debtwire(1) 9:11
december(18) 1:15 11:1 30:16 31:1 31:11 31:19 31:24 32:7 32:11 32:14 58:8 58:12 70:4 70:17 72:16 127:9 168:12 171:13

decency(1) 28:9
decide(3) 56:3 56:3
decide(3) 25:1 95:25 96:1 109:17 109:18 118:12 124:4 141:19 155:20

decided(6) 20:12 21:1 27:11 27:12 39:14 164:18

deciding(2) 23:1 156:13
decision(7) 37:23 38:19 41:3 64:8 91:3 127:8 140:25

decisional(2) 53:13 53:16
decisions(2) 87:23 152:14
decline(1) 18:6
decree(1) 165:7
deed(1) 156:9
deemed(13) 43:7 43:8 54:2 54:7 54:18 55:3 55:10 56:10 56:15 57:3 57:9 57:25 115:7

deeming(2) 56:3 56:3
defenses(4) 81:15 103:22 103:24 110:12
defer(2) 77:9 77:25
deferred(1) 56:22
definable(1) 154:11
defined(1) 97:20
definitely(1) 14:20
definition(1) 42:25
definitive(2) 103:9 103:10
definitively(1) 157:4
defraud(1) 110:9
degree(1) 114:1
delaware(5) 1:2 1:13 2:49 4:7 11:1
delay(1) 110:9
delete(1) 34:9
deleted(4) 34:5 34:11 34:11 34:13
deleting(1) 43:4
delighted(1) 21:25
delineating(1) 61:17
demand(1) 112:7
demonstrate(3) 32:20 133:10 135:18
demonstrates(1) 145:11
dennis(1) 2:33
deny(2) 42:19 118:23
department(1) 9:39 32:24
depending(1) 58:9
depends(1) 142:18
depose(1) 154:6
deposed(1) 154:14
deposit(1) 111:12
deposition(2) 95:25 105:9 106:10 112:16 154:22

depositions(31) 89:1 90:25 98:17 105:13 105:15 106:1 110:1 112:11 112:12 112:14 112:22 115:17 119:3 125:15 125:17 129:22 131:7 131:7 131:11 131:17 134:1 134:2 134:3 140:7 140:11 149:24 153:13 155:1 156:10 156:18 157:1

depository(9) 81:6 87:8 95:20 96:7 96:9 111:12 111:15 119:2 131:3

derek(1) 5:19
describe(1) 155:12
described(4) 28:23 99:1 115:24 131:14
describing(1) 152:17
description(2) 17:7 19:1
designed(1) 24:12
desirable(1) 50:13
desire(1) 146:14
despite(4) 26:9 76:7 88:20 100:15
destroyed(1) 107:25
detailed(1) 115:12
determination(5) 49:9 50:12 50:22 51:4 142:4

determine(8) 65:18 68:22 69:13 103:1 108:14 122:5 124:12 133:22

determined(2) 66:20 124:5
determines(1) 155:13
determining(1) 61:21
deutsch(2) 2:17 9:31
deutsche(1) 9:35
developed(1) 92:4
development(1) 114:24
devoted(1) 109:12
dialogue(1) 15:19
dialogued(1) 12:19
diamond(1) 7:29 27:23
diaz(1) 1:45
dickering(1) 151:10
did(38) 19:6 20:5 20:16 22:5 22:9 23:16 28:15 31:14 31:20 32:3 32:14 33:14 37:23 39:6 41:10 42:7 42:8 64:11 75:9 82:15 82:16 86:17 91:22 98:1 98:1 98:6 105:8 106:15 106:16 106:20 111:20 111:23 123:9 127:24 128:2 132:24 160:12

didn't(19) 12:17 17:3 19:2 25:1 32:11 37:5 38:6 39:6 40:8 42:1 86:4 86:5 86:24 115:14 127:5 132:18 150:12 153:13 154:15

didn't(1) 113:13
difference(2) 41:9 131:6
differences(2) 45:20 144:10
different(9) 39:8 39:11 55:2 62:6 95:15 123:14 132:9 142:19 145:22

differently(1) 55:18
difficult(5) 50:11 51:7 51:9 62:2 158:4
difficulties(2) 59:11 76:8
difficulty(2) 75:16 137:22
digress(1) 108:3
diligence(1) 104:21
directed(5) 11:24 14:23 24:9 42:2 115:20
directing(1) 109:5
direction(4) 23:4 31:18 32:1 41:17
directions(2) 23:6 24:17
directives(1) 31:17
directly(1) 16:5
directors(8) 8:49 107:10 107:24
disagree(6) 37:1 99:7 130:6 139:10 145:1 152:22

disagreed(1) 32:12
disagreement(4) 39:7 80:11 144:18 154:24
disagrees(2) 114:7 160:11
discarding(1) 107:13
discern(2) 51:5 75:18
discipline(1) 84:22

| Word | Page:Line |
|------|-----------|

**disclaimed**(1) 43:1
**disclose**(9) 15:24 16:14 17:10 17:14 17:15 19:2 20:12 20:17 22:9
**disclosed**(1) 19:24
**disclosure**(37) 11:8 11:20 12:7 13:17 13:19 15:13 15:25 18:18 18:20 19:19 19:19 19:21 20:13 21:19 22:8 31:21 40:20 40:24 42:14 42:23 43:5 44:6 47:16 55:12 56:12 68:10 69:11 69:11 73:1 76:14 119:11 157:14 163:12 169:14 169:17 170:7
**disclosures**(1) 115:23
**discover**(1) 151:18
**discovery**(111) 11:15 45:3 68:2 76:24 80:3 80:14 80:21 80:21 80:24 81:23 82:5 82:9 82:11 82:12 83:15 84:2 84:12 84:23 85:2 85:7 86:21 87:4 88:2 88:11 88:23 89:2 89:5 89:21 90:22 90:25 91:6 91:11 97:2 97:7 97:11 98:12 98:13 98:18 99:7 99:8 100:3 104:2 104:21 105:25 108:1 110:6 111:3 111:5 111:10 113:7 113:20 114:18 114:25 115:5 116:24 118:24 119:14 122:2 122:8 122:12 123:5 123:6 123:17 124:8 124:12 124:23 125:1 125:13 126:13 127:4 127:5 128:20 129:4 129:20 130:1 130:3 130:23 130:25 132:9 132:25 133:6 133:10 134:23 135:20 136:7 136:8 136:9 136:10 136:11 136:14 136:14 136:24 138:7 138:15 138:21 138:23 139:4 146:12 146:15 146:16 147:2 147:12 147:13 148:8 149:22 151:24 152:2 152:3 154:12 155:10 156:6
**discrete**(1) 48:23
**discuss**(3) 47:14 47:15 47:17
**discussed**(2) 15:14 17:23
**discussing**(3) 16:24 58:17 97:11
**discussion**(5) 48:19 77:2 77:24 81:9 133:22
**discussions**(4) 48:25 49:12 49:17 120:3
**disgorgement**(1) 122:20
**disgraceful**(1) 25:9
**dismay**(1) 38:4
**dismiss**(1) 103:20
**dispense**(1) 103:19
**dispose**(1) 157:12
**disproportionate**(1) 21:12
**dispute**(17) 12:11 20:25 21:5 37:16 49:11 58:9 76:10 76:25 83:2 97:5 97:17 98:10 139:16 142:19 146:11 146:18 150:8
**disputed**(12) 55:3 56:4 56:15 57:3 57:9 67:19 68:10 68:20 69:5 69:7 69:8 69:23
**disputes**(3) 128:21 128:22 134:10
**disputing**(1) 55:16
**disqualification**(1) 168:20
**disregarded**(1) 50:17
**dissemination**(2) 160:24 161:1
**distribute**(1) 158:9
**district**(4) 1:2 142:2 143:4 155:9
**distrust**(1) 152:9
**disturbs**(1) 39:13
**divide**(2) 90:16 158:21
**divided**(1) 11:13
**divined**(1) 77:16
**division**(1) 65:20
**divvying**(1) 73:15
**docket**(1) 70:9
**docketed**(1) 70:15
**document**(35) 16:24 23:22 24:10 25:1 26:16 30:14 30:20 35:4 81:6 82:24 87:8 89:2 95:20 96:7 96:9 96:23 96:24 111:7 111:12 112:5 113:16 130:25 131:3 134:8 134:8 134:13 134:13 135:17 135:17 145:2 150:4 152:16 152:18 152:19 164:17
**documentary**(1) 131:1
**documentation**(1) 131:5

**documents**(30) 14:17 16:17 31:20 32:1 32:2 47:16 82:25 83:13 92:16 92:17 92:18 96:20 107:19 107:25 111:14 111:14 112:7 115:6 115:10 119:11 125:13 134:8 134:18 134:22 135:2 152:12 152:20 159:11 159:2 160:18
**dodge**(1) 3:40
**does**(27) 18:2 19:2 19:13 19:15 19:17 27:20 27:20 33:6 33:7 41:6 67:12 67:15 70:21 77:17 84:17 97:2 97:5 99:14 101:1 108:21 133:9 138:16 142:2 157:7 161:9 161:22 162:11
**doesn't**(16) 18:3 33:2 38:2 56:18 62:15 89:25 90:3 90:5 94:4 103:18 104:18 115:1 125:20 126:11 126:13 148:4
**doing**(7) 37:4 66:10 66:13 79:25 90:4 94:3 138:13
**dollar**(4) 75:21 77:10 90:20 101:2
**dollars**(6) 73:9 73:20 75:1 90:18 91:4
**don**(2) 6:5 98:22
**don't**(131) 11:18 13:3 13:16 13:24 17:15 19:23 20:2 21:18 21:19 22:24 24:16 24:18 27:3 27:4 29:18 30:17 36:3 36:16 36:21 37:1 37:21 41:15 42:12 43:2 45:22 47:13 48:10 53:7 54:18 58:21 65:17 67:8 67:21 67:23 68:8 68:15 68:16 68:18 69:9 69:16 69:18 72:7 72:17 75:8 76:2 78:6 78:13 79:6 80:7 81:22 83:23 90:21 90:22 91:6 92:12 94:23 95:1 95:14 95:21 96:8 96:11 99:17 100:16 101:3 102:17 105:25 105:25 106:4 108:2 109:7 109:20 110:1 112:14 112:16 112:17 112:21 112:22 114:7 114:17 116:18 116:18 117:11 123:3 124:17 126:21 127:2 127:19 127:21 128:8 128:10 131:4 131:12 132:10 133:5 133:18 134:15 134:15 136:3 136:11 138:3 138:12 138:25 139:5 139:10 139:18 142:5 144:4 144:4 145:1 145:5 145:14 147:4 147:4 148:6 148:7 148:10 148:16 152:8 152:22 153:4 153:22 154:12 154:13 154:14 154:21 155:19 156:12 162:16 164:23 166:10 166:14 170:16
**donald**(1) 2:32
**done**(25) 14:1 19:10 27:1 27:2 29:1 38:16 45:14 55:13 60:17 68:21 81:5 87:14 119:11 125:12 130:16 134:17 136:14 138:9 139:4 140:14 140:20 142:1 142:8 147:18 156:17
**don't**(4) 75:17 103:8 104:3 109:17
**door**(2) 14:11 14:18
**dorman**(2) 4:30 13:11
**dorr**(1) 6:31
**dose**(1) 97:14
**doshi**(1) 8:33
**double**(1) 53:2
**doubt**(2) 32:19 34:3
**doug**(1) 2:17
**dougherty**(2) 8:36 8:36
**douglas**(1) 9:31
**dow**(1) 9:14
**down**(26) 12:16 13:21 16:11 37:14 59:16 74:5 75:18 89:12 89:18 104:1 104:1 108:13 110:2 110:6 110:10 112:5 113:6 119:17 131:16 133:21 139:21 152:25 153:... 157:18 160:10 170:1
**downhill**(1) 99:23
**draft**(2) 71:19 147:23
**drafting**(1) 73:1
**dragged**(1) 160:10
**dramatically**(1) 158:12
**draw**(2) 85:4 113:21
**drawing**(1) 120:8
**drill**(3) 119:17 152:25 153:7
**drop**(1) 126:25

**dublin**(20) 4:15 7:34 61:6 61:7 63:4 63:6 63:10 63:14 63:24 64:6 65:4 66:7 66:21 67:10 67:13 67:18 70:16 70:19 82:...
**due**(5) 101:4 121:12 124:20 124:21 161:2...
**duration**(1) 61:12
**during**(8) 77:4 77:7 77:15 78:5 91:13 107:10 112:16 152:12
**each**(24) 22:6 33:14 34:18 45:20 45:24 52:13 52:21 54:6 55:23 69:24 75:20 107:6 109:10 111:10 116:11 135:22 150:16 156:17 156:22 158:22 164:2 164:25 165:1 165:20
**earlier**(7) 27:8 75:7 119:9 138:4 138:17 150:18 166:13
**early**(2) 125:12 160:7
**ease**(1) 62:11
**easier**(3) 145:24 149:2 164:18
**easiest**(2) 43:12 70:6
**easily**(1) 54:2
**east**(1) 3:15
**easy**(2) 73:16 75:23
**economic**(2) 26:19 26:19
**ecro**(1) 1:43
**edgar**(1) 7:51
**edged**(1) 53:2
**editor**(1) 27:5
**editorial**(1) 95:3
**edmund**(1) 28:9
**edwards**(1) 3:40
**effect**(3) 20:14 28:5 55:15
**effective**(1) 52:19
**effectively**(4) 34:25 133:3 133:17 134:23
**efficiently**(1) 137:2
**effort**(3) 88:11 88:23 100:20
**efforts**(5) 60:21 84:21 85:13 86:7 138:20
**egi**(1) 44:9
**egi-trb**(1) 6:38
**ehmer**(1) 8:39
**eight**(2) 117:10 120:7
**eighteen**(1) 170:8
**either**(15) 22:6 35:12 36:1 40:10 44:9 46:11 54:22 56:6 57:22 59:3 77:7 94:4 104:6 132:21 163:17
**eldersveld**(1) 6:4
**elect**(1) 43:10
**election**(2) 50:18 69:2
**elections**(2) 45:16 45:20
**electronic**(2) 1:51 171:8
**elegantly**(1) 71:21
**element**(1) 65:10
**elements**(1) 116:12
**eleven**(1) 117:13
**eliminate**(1) 27:19
**elizabeth**(1) 6:47
**elliott**(2) 130:19 130:20
**eloquent**(1) 102:20
**else**(24) 27:20 44:16 61:5 69:3 70:21 74:17 78:17 84:17 116:2 116:3 119:23 121:1 132:5 138:15 142:13 142:22 146:6 148:5 157:7 157:23 163:4 163:8 163:17 169:24
**email**(3) 11:22 98:7 148:8
**emailed**(1) 149:1
**emails**(2) 12:3 107:16
**embodied**(1) 24:10
**embody**(1) 48:5
**emergency**(1) 136:23
**encourage**(1) 60:15
**end**(17) 14:14 23:5 26:7 28:17 34:10 34:15 38:15 43:20 46:6 92:13 104:19 110:11 138:5 159:19 160:5 162:6 169:6
**endorsing**(1) 26:12
**enforce**(2) 123:4 123:9

**enforceable**(2) 123:6 123:8
**enforced**(1) 122:24
**engaged**(1) 81:20
**english**(2) 3:33 9:35
**enormous**(3) 65:7 87:7 134:21
**enough**(12) 37:5 37:22 42:12 75:23 90:7 90:11 94:16 94:16 105:20 142:11 142:24 159:3
**ensure**(3) 44:8 50:14 167:3
**enter**(3) 58:20 94:17 128:11
**entered**(4) 26:20 70:2 70:3 70:9
**entering**(1) 66:1
**entire**(4) 25:1 87:17 94:6 155:16
**entirely**(3) 22:12 41:7 48:22
**entirety**(5) 16:18 28:6 52:15 55:3 57:9
**entities**(1) 72:23
**entitled**(5) 54:21 56:4 56:8 57:11 158:15
**entitling**(1) 57:14
**entity**(1) 106:17
**envisioned**(1) 13:19
**eos**(1) 10:29
**ephraim**(1) 7:29
**epiq**(1) 66:22
**equally**(2) 52:11
**equation**(1) 106:15
**equitable**(8) 66:11 66:17 102:6 102:11 105:22 122:17 123:2 123:23
**equity**(1) 52:18
**erased**(1) 107:23
**erected**(1) 57:21
**erecting**(1) 55:15
**error**(2) 20:4 67:4
**errors**(1) 20:6
**especially**(6) 26:3 33:17 33:20 36:17 59:13 69:19 77:2 135:8
**esq**(90) 1:26 1:27 1:28 1:29 1:36 2:5 2:12 2:13 2:14 2:15 2:16 2:17 2:18 2:24 2:31 2:32 2:33 2:34 2:40 2:48 3:6 3:14 3:20 3:21 3:27 3:34 3:41 4:5 4:6 4:13 4:14 4:15 4:16 4:17 4:23 4:31 4:32 4:39 4:48 4:49 5:5 5:13 5:19 5:20 5:28 5:35 6:11 6:12 6:13 6:14 6:18 6:19 6:32 6:39 6:44 6:45 6:46 6:47 7:10 7:11 7:12 7:16 7:17 7:18 7:21 7:33 7:34 7:35 7:36 7:37 7:41 7:45 8:27 8:49 9:5 9:27 9:31 9:32 9:36 9:39 9:46 10:12 10:13 10:14 10:21 10:22 10:26 10:32 10:33 10:38
**essence**(1) 55:25
**essentially**(5) 12:4 13:18 13:23 83:10 144:15
**establish**(3) 44:20 85:13 159:13
**establishment**(1) 159:10
**estate**(15) 20:23 60:21 64:16 66:15 73:17 73:20 74:15 74:22 74:23 74:24 81:8 102:9 102:14 105:18 105:22
**estates**(5) 59:24 59:24 61:1 64:24 88:9
**esther**(1) 6:23
**estimate**(7) 15:9 19:21 65:4 65:6 65:22 158:4 158:11
**estimated**(2) 65:2 68:9
**estimates**(1) 162:22
**evaluate**(4) 90:15 92:6 93:9 101:24
**evaluating**(1) 93:11
**evan**(8) 5:28 6:19 7:10 18:15 41:5 72:5 78:23 94:22
**eve**(1) 110:15
**even**(26) 12:22 14:21 20:13 21:11 22:5 22:8 28:13 31:23 34:21 36:13 38:1 38:14 47:11 57:23 60:15 71:9 86:17 86:24 94:7 98:8 98:16 116:10 118:17 129:19 138:2 156:22
**evening**(4) 46:8 130:19 157:24 160:19

| Word | Page:Line |
|------|-----------|
| event(3) 49:16 52:20 66:10 | |
| events(1) 74:5 | |
| ever(4) 59:18 105:8 136:12 141:16 | |
| every(8) 33:4 33:5 38:15 55:18 76:7 113:17 115:15 121:16 | |
| everybody(10) 11:23 23:21 27:21 122:15 125:23 129:23 144:12 150:19 158:14 158:15 | |
| everyone(9) 11:3 27:25 47:18 72:24 89:11 94:13 116:2 118:13 119:23 | |
| everything(16) 11:23 12:5 13:1 16:23 18:19 21:7 21:8 23:1 43:18 88:6 89:11 107:13 107:23 109:24 129:12 143:21 | |
| evidence(7) 81:15 95:22 115:15 126:10 126:14 129:5 145:7 | |
| evidenced(1) 134:11 | |
| evidentiary(1) 136:24 | |
| evil(1) 26:17 | |
| evince(1) 23:12 | |
| evolving(1) 39:12 | |
| ex-employees(2) 112:19 112:20 | |
| exactly(4) 16:14 37:4 37:19 83:18 | |
| examiner(62) 81:8 82:15 82:16 83:12 83:15 83:19 83:25 86:7 87:5 87:13 87:16 90:7 92:15 92:16 92:17 92:22 93:7 93:10 94:8 94:9 94:12 96:20 97:12 97:13 98:6 104:5 104:7 106:14 109:12 111:18 111:23 113:3 113:17 113:20 113:22 114:2 114:10 114:16 114:18 114:21 114:25 115:1 120:15 120:20 121:19 121:23 122:21 122:5 125:7 125:15 126:1 126:11 127:3 127:15 127:15 127:18 127:23 128:4 133:2 139:20 139:22 150:10 | |
| examiner's(36) 26:14 34:10 82:20 82:22 85:17 86:11 86:13 92:9 92:25 93:4 93:25 95:21 96:1 96:5 97:10 97:23 98:4 109:3 125:18 125:19 126:3 126:4 126:9 126:12 126:24 127:16 128:12 131:9 131:14 131:2 132:12 133:17 139:18 147:6 150:19 168: | |
| examiners(1) 92:4 | |
| example(8) 18:25 29:20 62:10 78:5 78:6 108:17 156:9 165:18 | |
| examples(4) 14:23 24:23 37:6 37:22 | |
| except(5) 12:5 40:23 79:5 136:10 157:3 | |
| excess(1) 67:1 | |
| exchange(1) 47:22 | |
| exchanged(1) 12:4 | |
| exchanges(1) 47:5 | |
| excise(1) 94:7 | |
| exclude(4) 36:24 127:14 127:18 128:12 | |
| excluded(1) 63:23 | |
| exclusion(1) 100:3 | |
| exclusivity(2) 59:20 60:17 | |
| excuse(3) 72:9 114:4 162:13 | |
| executive(1) 34:14 | |
| executory(2) 29:16 29:21 | |
| exercise(4) 18:11 27:13 27:14 108:6 | |
| exhaustive(2) 92:5 92:10 | |
| exhausts(1) 149:7 | |
| exhibit(2) 59:17 67:24 | |
| exhibits(3) 81:10 87:18 96:4 | |
| exide(2) 101:21 116:21 | |
| exist(1) 94:5 | |
| expect(3) 100:16 145:10 160:3 | |
| expectation(3) 72:2 82:20 102:13 | |
| expectedly(1) 136:19 | |
| expects(1) 28:11 | |
| expedited(3) 141:4 141:10 168:16 | |
| expending(1) 134:21 | |
| expense(1) 159:2 | |
| expenses(2) 61:2 74:24 | |

| Word | Page:Line |
|------|-----------|
| expert(37) 11:15 80:22 82:18 82:25 83:1 83:6 83:12 85:11 109:4 110:16 115:19 115:20 115:23 115:24 116:1 127:20 130:6 130:8 131:18 131:20 131:23 132:2 132:17 132:24 136:9 136:11 136:13 137:25 138:1 138:3 146:12 146:15 147:13 149:25 150:2 152:1 152:7 | |
| expert's(1) 116:2 | |
| experts(7) 82:20 116:5 116:10 116:20 116:22 117:8 147:3 | |
| explain(3) 63:12 106:2 126:3 | |
| explaining(1) 42:10 | |
| explication(1) 44:5 | |
| explicit(1) 48:9 | |
| exposure(1) 21:11 | |
| express(6) 49:7 49:15 63:2 63:8 76:6 | |
| expressed(1) 33:15 | |
| expressing(1) 49:20 | |
| extensive(4) 23:4 133:10 145:14 145:15 | |
| extensively(1) 18:20 | |
| extent(5) 68:1 102:1 111:11 138:23 140:19 | |
| extort(1) 34:7 | |
| extra(2) 73:24 74:2 | |
| extract(1) 34:7 | |
| extraordinarily(1) 26:16 | |
| extremely(1) 130:21 | |
| face(2) 50:9 91:2 | |
| fact(63) 19:5 22:7 24:11 24:12 28:13 29:15 29:17 31:15 32:1 32:12 32:19 35:24 36:3 39:23 48:16 71:12 74:13 80:21 80:2 81:23 82:2 82:12 82:19 88:2 93:25 97:25 106:2 112:12 112:13 112:14 112:24 116:24 122:11 123:1 126:11 127:14 129:2 129:21 129:25 130:22 131:2 132:25 134:1 136:6 136:8 136:10 136:11 136:14 137:25 138:1 138:4 138:6 138:17 138:19 140:7 141:11 142:12 146:12 146:15 147:12 152: 156:21 | |
| factors(3) 65:25 101:25 153:18 | |
| facts(27) 20:15 35:2 35:2 35:3 35:21 36:4 39:10 89:22 101:15 101:17 103:15 114:11 122:5 123:13 123:14 124:1 124:7 124:9 124:10 124:10 124:13 124:25 124:5 126:1 126:5 128:5 | |
| factual(11) 20:2 20:6 33:6 40:15 101:23 103:19 104:7 105:20 108:5 114:24 115:15 | |
| factually(6) 20:4 29:23 29:25 30:1 104:8 151:4 | |
| failed(2) 26:11 101:1 | |
| failing(1) 17:9 | |
| fair(16) 14:16 37:12 53:1 60:23 65:18 95:6 102:6 102:10 105:16 105:22 107:1 108:2 123:2 125:4 151:23 155:22 | |
| fairly(2) 37:25 114:9 | |
| fairness(2) 53:7 61:1 | |
| faith(4) 82:13 122:18 123:9 123:15 | |
| fall(3) 79:20 167:16 168:4 | |
| false(1) 15:25 | |
| familiar(2) 81:14 108:12 | |
| far(7) 15:10 37:5 92:13 93:14 115:6 118:22 119:3 | |
| farfetched(1) 52:23 | |
| fargo(2) 4:38 130:21 | |
| farther(1) 119:17 | |
| fashion(2) 45:12 77:16 | |
| fashioned(1) 45:7 | |
| fast(1) 87:13 | |
| favor(6) 61:18 63:16 97:7 99:23 105:17 120:23 | |
| favored(1) 62:19 | |
| favorite(2) 62:18 63:15 | |

| Word | Page:Line |
|------|-----------|
| fcc(1) 48:25 | |
| fear(2) 59:17 130:10 | |
| february(16) 136:8 136:10 137:4 137:7 137:7 137:15 138:3 138:8 138:14 138:17 144:12 144:14 146:22 161:16 161:21 162:15 | |
| fed(1) 67:2 | |
| federal(1) 27:4 | |
| feed(1) 74:2 | |
| feedback(1) 158:2 | |
| feel(5) 11:17 38:15 65:8 103:21 132:1 | |
| feeling(1) 104:11 | |
| feels(1) 37:16 | |
| fees(2) 61:12 73:20 | |
| feld(5) 4:12 7:32 30:11 99:12 149:14 | |
| felt(2) 43:9 163:18 | |
| fenterbridge(1) 91:7 | |
| few(8) 11:6 13:2 24:7 25:2 25:3 47:10 73:24 162:3 | |
| fiberman(1) 125:22 | |
| fiduciaries(2) 71:7 105:18 | |
| fiduciary(1) 105:6 | |
| field(3) 69:4 99:22 131:12 | |
| fifteen(1) 101:1 | |
| fifty(2) 105:13 158:21 | |
| fights(1) 126:17 | |
| figueroa(1) 4:33 | |
| figure(7) 43:18 75:23 78:10 111:20 114:19 136:12 145:25 | |
| figures(1) 133:16 | |
| file(17) 31:20 32:3 32:14 48:10 54:22 56:6 65:24 69:24 72:24 72:25 79:9 108:7 138:7 159:11 159:24 166:23 167:15 | |
| filed(41) 12:1 12:9 12:14 14:22 16:18 31:19 32:7 41:14 42:23 43:4 44:10 46:7 46:8 46:13 48:10 48:22 54:5 60:9 60:15 67:24 79:19 81:18 107:19 124:17 129:11 134:11 135:19 137:7 143:17 167:3 167:6 168:3 168:21 168:22 | |
| files(1) 11:23 76:1 | |
| filing(17) 31:23 32:11 46:17 47:16 47:18 55:6 56:4 56:9 73:2 83:16 89:13 137:3 161:14 161:20 167:4 167:11 170:4 | |
| final(3) 143:12 157:19 161:15 | |
| finally(3) 11:11 17:18 92:8 | |
| financial(3) 32:23 32:25 81:11 | |
| financing(1) 110:9 | |
| find(12) 20:4 21:9 40:20 50:21 53:2 59:23 64:8 76:20 125:16 127:5 150:15 160:14 | |
| finding(1) 97:6 | |
| findings(2) 104:7 120:17 | |
| fine(9) 70:17 72:15 79:23 80:19 103:22 153:2 161:17 165:11 169:8 | |
| finger(1) 2:39 | |
| finish(1) 37:21 | |
| finished(1) 137:1 | |
| fire(2) 61:3 89:10 | |
| firm(2) 70:24 106:18 | |
| first(42) 13:3 13:5 13:6 16:13 18:22 19:10 25:16 28:17 34:6 35:5 35:16 38:10 40:13 41:7 44:23 46:17 49:6 49:25 59:21 61:17 62:6 90:14 102:18 104:17 112:17 117:18 117:21 121:24 122:6 129:14 131:8 132:16 136:16 136:23 141:21 142:23 143:9 144:5 147:20 151:25 157:22 | |
| fish(1) 154:24 | |
| five(13) 26:3 29:10 30:2 35:25 46:11 76:17 76:20 80:7 111:8 117:17 117:18 137:2 143:17 | |
| five-day(2) 108:1 112:15 | |
| five-page(1) 67:24 | |

| Word | Page:Line |
|------|-----------|
| fixing(1) 139:13 | |
| flag(1) 155:18 | |
| flaschen(40) 5:28 18:15 18:15 19:18 20:8 20:21 21:5 41:5 41:5 41:11 72:5 72:5 72:11 72:14 72:20 78:23 78:23 79:9 79:14 94:22 94:22 95:14 95:14 95:18 96:14 96:14 96:22 97:1 98:23 99:1 99:6 99:14 122:10 162:1 162:6 162:8 162:18 162:20 163:3 163:7 169:12 169:22 | |
| flawed(1) 15:22 | |
| floating(1) 135:22 | |
| flood(2) 72:24 75:8 | |
| floor(7) 3:9 3:36 3:43 4:25 5:22 5:37 120:11 | |
| focus(6) 46:2 73:2 84:12 97:25 122:9 145:10 | |
| focused(2) 82:14 98:18 | |
| folks(3) 48:2 48:19 58:12 | |
| followed(2) 45:12 118:19 | |
| following(3) 11:5 37:14 111:12 | |
| fond(1) 104:16 | |
| footing(2) 27:22 27:25 | |
| footnote(1) 126:25 | |
| for(301) 1:2 1:25 2:4 2:30 2:47 3:4 3:13 3:26 3:33 3:40 4:4 4:22 4:38 5:4 5:18 6:2 6:17 6:26 6:30 6:38 6:42 6:50 7:4 7:9 7:15 7:21 7:24 7:28 7:32 7:48 7:51 8:4 8:7 8:11 8:14 8:17 8:20 8:24 8:27 8:30 8:33 8:36 8:39 8:42 8:45 8:48 9:4 9:8 9:11 9:14 9:17 9:20 9:23 9:26 9:30 9:35 9:39 9:42 9:45 9:49 10:4 10:7 10:11 10:17 10:20 10:25 10:29 10:32 10:36 10:41 12:12 12:16 12:22 12:24 13:21 13:24 14:8 14:11 14:12 15:24 16:2 16:14 17:7 18:4 18:16 18:25 20:10 20:11 21:25 22:22 23:12 25:5 25:5 25:13 25:21 25:21 25:25 26:12 27:5 27:7 27:7 27:22 27:23 28:21 29:2 29:7 29:19 29:20 30:11 31:14 31:23 32:25 31:9 30 39:24 42:19 44:21 45:3 45:13 45:13 46:9 47:1 47:14 47:22 48:3 48:7 48:18 49:1 50:11 50:11 50:13 50:22 50:23 51:2 51:19 53:21 54:7 55:6 55:12 57:5 57:19 57:24 58:12 58:24 59:12 59:21 60:3 60:8 60:10 60:11 60:21 60:23 60:24 61:9 62:11 63:3 63:24 65:18 65:22 65:23 66:6 66:23 68:8 68:21 69:10 69:16 69:20 71:3 72:5 72:22 72:23 72:24 73:1 73:19 73:20 73:24 73:24 74:9 75:11 75:22 76:17 76:24 77:5 77:22 77:22 78:5 78:6 78:8 78:23 79:10 79:11 79:16 81:2 81:23 83:3 83:16 84:5 84:10 85:12 85:24 87:17 88:16 89:1 89:4 89:17 89:19 89:20 91:22 92:2 92:6 92:24 92:24 93:10 93:15 93:20 94:3 94:22 95:22 96:16 97:14 97:19 99:12 100:2 100:25 101:2 101:13 101:15 102:9 105:10 106:4 106:16 106:22 107:17 108:11 108:16 108:17 109:2 109:19 110:6 114:11 115:11 117:22 119:1 119:24 120:14 121:5 121:6 121:19 123:14 123:23 124:15 125:7 126:11 127:4 127:15 127:21 129:9 129:15 130:7 131:3 131:3 131:4 131:20 132:17 133:11 133:22 133:25 136:11 136:11 136:23 138:20 139:20 142:11 142:15 143:16 143:24 144:13 145:3 145:18 145:21 145:24 149:3 149:15 149:15 150:4 150:9 150:15 150:19 156:3 156:13 153:13 153:14 153:15 153:23 153:23 154:5 154:22 157:3 157:10 157:17 158:5 | |
| force(2) 17:14 88:9 | |
| foreclose(1) 142:16 | |
| for(27) 158:6 158:8 158:12 158:17 158:18 158:24 159:1 159:1 159:2 159:11 160:24 161:1 161:20 162:12 162:17 164:18 165:18 165:23 166:9 166:23 168:17 169:2 169:21 169:24 170:4 170:16 170:24 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

foreclosed(2) 122:16 123:16
foreclosing(1) 154:4
foregoing(1) 171:7
forever(1) 154:4
form(13) 36:15 43:10 47:6 47:24 51:17 54:23 71:19 71:19 144:3 145:3 159:13 160:1 169:8

formalized(1) 128:19
forman(1) 1:34
forms(4) 47:9 47:11 47:18 49:8
forth(8) 47:5 56:11 61:25 71:20 125:11 166:25 167:19 168:2

forthcoming(1) 58:11
forty(5) 134:1 140:14 140:21 153:13
forty-day(1) 105:12
forty-nine-cents(1) 90:20
forward(17) 48:6 58:8 65:9 65:16 70:11 75:10 81:17 81:17 83:17 83:17 86:6 87:11 119:12 131:11 136:9 140:6 170:14

found(8) 50:8 50:9 53:10 102:20 111:18 113:22 126:1 145:2

foundation(2) 115:11 115:16
founded(1) 33:1
four(38) 26:4 28:7 29:11 30:1 33:21 35:25 38:8 39:24 45:11 45:13 46:2 46:15 46:23 48:23 48:25 49:2 50:5 50:15 50:25 51:1 52:11 52:12 59:12 61:14 62:3 62:10 62:13 62:16 63:8 63:9 63:15 63:16 63:21 64:19 70:19 73:14 73:22 165:10

four-ring(2) 38:5 39:23
fourth(1) 62:7
fox(1) 4:38
frame(1) 153:5
francisco(1) 169:2
frank(1) 119:8
frankly(5) 36:2 39:7 71:14 85:3 119:13
fraudulent(4) 44:8 97:6 105:11 109:19
free(5) 49:13 60:13 64:18 75:5 89:17
free-floating(1) 164:17
freestanding(1) 164:7
freight(1) 60:7
freres(1) 6:17
friday(18) 12:14 12:20 12:21 14:22 16:20 18:23 24:4 31:11 41:14 46:9 70:14 79:19 89:3 89:14 107:20 134:11 134:24 161:7

fried(1) 107:23
friedman(3) 5:12 10:37 129:9
from(86) 12:21 13:7 14:5 22:22 24:13 27:19 27:24 28:8 28:14 31:9 31:24 32:9 32:10 34:17 36:24 39:8 40:6 48:12 49:22 50:5 52:7 52:12 52:25 54:16 55:8 55:13 59:5 59:6 59:14 60:22 62:20 64:17 65:14 67:20 75:18 78:2 80:1 80:12 80:15 81:13 81:16 81:17 81:18 81:20 85:3 85:4 87:6 87:7 94:8 98:22 102:7 102:11 104:5 104:15 104:15 105:4 105:4 105:8 113:4 115:23 119:23 120:5 120:6 121:1 121:4 122:20 125:22 126:20 127:18 128:13 130:20 134:18 139:12 142:4 142:13 148:1 149:11 149:14 154:10 158:2 159:15 160:10 160:22 167:15 169:18 171:8

front(5) 93:4 141:4 143:2 144:7 165:10
frustrated(1) 59:15
frustration(2) 59:14 59:15
fry(1) 155:1
fudged(1) 103:11
full(12) 19:15 25:25 26:4 28:17 29:12 36:1 53:4 61:12 105:10 105:18 109:13 137:19

fully(4) 30:2 60:10 81:14 116:4
fulsome(1) 87:22
function(3) 75:7 167:23 168:6
fund(1) 9:17

fundamenta(4) 9:42 17:2 53:7 53:9
funds(1) 53:11
funny(1) 91:13
furnished(1) 97:13
further(13) 20:7 22:24 23:19 26:7 32:8 33:15 40:14 49:17 83:14 120:3 166:9 167:21 170:24

furthermore(1) 81:13
furthest(1) 40:6
futile(1) 127:22
future(1) 56:2
galbraith(1) 8:42
gall(1) 36:4
game(2) 26:1 73:8
games(1) 74:4
gangat(1) 8:45
garden(1) 106:8
garrison(1) 6:43
garvan(1) 5:5
gary(1) 6:6
gate(3) 75:9 167:22 168:6
gates(2) 72:24 75:8
gave(7) 18:24 23:6 50:24 92:21 92:21 116:21 122:1

gavin(1) 6:35
gear(1) 124:1
geddes(1) 4:4
general(10) 14:3 15:3 15:13 19:9 28:25 41:7 47:25 142:21 143:1 166:1

generality(1) 48:4
generally(1) 19:5
generated(1) 60:16
gentilotti(1) 5:4
geoghan(1) 9:36
george(2) 8:36 8:36
gerson(1) 9:39
gesture(1) 127:22
get(99) 14:15 14:18 14:19 19:13 21:6 21:8 31:13 32:5 32:15 35:20 35:20 36:14 38:1 40:5 43:18 43:20 57:22 58:3 58:15 58:1 60:17 61:11 65:5 65:8 65:14 65:22 67:2 67:19 72:17 73:6 74:5 75:5 78:10 78:16 77:1 78:6 80:15 84:13 88:22 102:9 104:1 105:10 105:15 106:24 110:16 112:17 112:5 112:8 113:16 114:19 115:16 116:1 117:12 117:13 118:13 119:10 119:17 120:21 121:12 121:18 122:16 122:19 123:5 123:1 124:5 125:18 126:20 127:5 128:9 128:21 128:22 133:2 133:22 134:12 135:21 138:6 138:11 138:17 139:14 139:5 140:9 140:14 140:20 141:4 141:10 141:16 141:19 142:1 142:14 143:1 143:13 143:20 152:10 152:15 158:15 159:10 159:16 169:16

gets(2) 158:14 158:15
getting(13) 40:19 48:3 58:23 89:6 104:19 112:23 122:21 127:1 143:17 144:7 144:20 159:18 169:13

gimmee(1) 102:17
giuliani(2) 10:20 18:16
give(21) 14:22 24:21 24:23 26:24 27:8 37:5 42:16 42:17 72:12 76:13 89:19 97:1 105:9 110:23 114:17 116:6 116:10 116:22 137:23 146:7 163:22

given(17) 24:25 24:25 42:15 43:9 50:4 72:11 86:10 114:16 119:18 120:12 120:12 135:8 138:1 138:4 153:5 158:17 170:6

gives(5) 21:10 51:11 51:12 51:12 142:2
giveth(1) 113:14
giving(2) 60:13 113:25
glad(1) 20:6 21:1 104:23 122:6
glazer(1) 2:33
glibly(1) 33:3

glorified(1) 103:20
goal(1) 119:8
goals(1) 45:14
goes(13) 11:15 20:18 26:2 41:18 49:23 103:7 103:17 104:14 123:10 123:10 123:1 156:9 163:1

going(108) 13:2 22:19 22:23 36:24 38:5 38:24 40:16 41:3 42:19 44:5 44:14 48:6 50:12 58:13 58:22 59:16 59:24 60:7 64:2 65:12 66:24 68:14 69:21 70:2 72:25 72:25 73:14 73:16 74:4 75:11 82:8 86:13 91:6 91:18 91:25 94:23 99:17 99:19 100:2 103:5 104:6 104:8 105:11 107:2 107:1 107:14 107:15 108:16 109:4 109:15 109:1 110:23 114:10 115:9 116:2 122:1 122:7 124:11 124:24 125:10 127:18 129:1 130:15 131:2 133:12 133:18 134:8 134:10 134:24 135:18 137:24 138:5 138:21 139:5 139:6 140:11 140:12 140:13 141:3 141:12 142:2 142:25 143:10 143:21 144:13 144:18 147:3 148:1 149:19 150:5 150:11 150:14 151:17 151:19 152:10 152:17 152:25 153:1 155:1 158:19 162:4 164:9 164:10 165:17 167:10 168:3 170:1 170:14

golden(21) 4:13 30:8 30:10 30:10 30:19 30:23 31:2 31:5 31:7 34:23 36:23 37:1 38:21 38:24 39:3 39:16 44:2 44:4 44:6 60:12 160:14 160:17

goldman(2) 6:32 9:20
goldsmith(1) 7:35
gone(1) 11:7 42:24 81:14 88:7 133:2
good(43) 11:3 11:4 13:10 22:21 23:11 26:17 27:4 30:8 30:9 37:25 38:13 41:23 41:24 42:14 42:17 42:18 44:18 59:7 61:6 70:23 74:8 78:15 82:13 84:18 88:15 88:18 95:1 99:11 103:2 122:18 123:9 123:15 129:8 130:19 132:10 139:13 148:21 149:1 154:8 156:9 156:9 157:24 169:6

goodwin(1) 5:29
gordon(15) 3:20 6:30 6:45 13:12 14:8 15:23 19:1 27:23 35:7 70:23 71:8 73:17 74:21 85:24 108:9

gossip(1) 21:22
got(16) 14:17 24:12 24:13 32:8 64:2 89:8 107:13 107:17 107:17 110:18 110:20 115:22 121:25 141:18 145:21 164:9

gotshal(1) 7:9
gotten(4) 52:12 65:15 78:2 158:1
governing(1) 44:25
grand(1) 96:12
granite(1) 114:23
grant(1) 43:8
granted(3) 166:23 167:16 167:17
great(8) 2:47 9:4 81:8 95:19 113:20 120:20 130:25 131:4

green(1) 89:20
greeted(1) 97:13
greissman(1) 4:48
grey(1) 8:14
griessman(2) 74:8 74:9
grossly(1) 101:6
grounds(1) 127:6
group(4) 9:49 134:2 140:8 140:22
groups(1) 79:3
gruss(1) 8:7
gruszka(1) 9:42
guarantee(3) 19:15 19:20 56:6
guaranties(1) 68:5
guarantor(2) 68:4 68:6
guaranty(1) 57:22
gucks(4) 35:8 35:11 35:17 35:20

guess(14) 27:11 27:13 46:17 76:1 127:9 132:9 141:3 145:13 145:18 148:18 150:19 150:21 158:22 170:13

guidance(7) 31:17 53:14 53:16 80:12 135:22 146:6 168:9

guiliani(1) 5:27
gump(7) 4:12 7:32 30:10 61:7 99:12 149:14 168:20

gun(1) 60:4
guys(2) 22:2 73:10
had(75) 12:6 12:21 13:1 19:10 20:8 20:12 22:25 23:25 24:25 24:25 25:1 26:1 27:7 30:13 31:8 32:10 34:25 37:4 38:5 39:23 39:24 43:6 43:6 43:7 43:7 47:2 47:4 47:5 48:19 58:6 60:11 61:1 62:10 62:12 62:13 62:13 62:13 62:17 62:22 62:23 63:21 71:15 76:16 86:7 86:8 90:17 97:20 97:22 102:20 109:5 113:12 116:22 116:24 116:24 120:12 120:12 124:8 124:17 128:7 129:22 129:22 131:7 131:16 132:13 132:18 137:5 139:16 140:5 141:6 149:21 153:1 156:1 156:17 163:15 165:6

hadn't(2) 40:2 125:14
haggling(2) 92:11 92:20
hale(1) 6:30
half(2) 16:11 158:20
half-page(1) 163:23
halfway(1) 16:11
hall(1) 8:49
hand(7) 55:1 91:2 91:5 113:15 128:15 140:16 158:11

handed(1) 31:7
handful(1) 88:24
handle(1) 11:17
handled(3) 45:4 45:5 64:9
hands(1) 107:4
hanging(1) 64:4
happen(3) 93:20 101:7 161:5
happened(1) 11:19 123:25
happening(2) 55:21 106:9
happens(1) 122:20
happily(1) 119:22
happy(6) 23:18 59:2 70:4 71:22 120:8 132:6

harassment(1) 152:3
hard(18) 21:9 33:9 36:14 59:19 59:25 72:23 73:18 106:22 137:24 138:20 138:24 139:2 139:11 150:4 150:6 158:8 162:23 163:3

harm(3) 20:3 27:20 69:3
harris(1) 9:46
harrisburg(1) 1:47
hartford(1) 5:31
has(58) 11:19 12:18 12:21 18:19 26:11 28:6 33:8 33:13 35:10 35:24 36:3 37:8 37:19 42:16 42:17 42:24 44:11 47:2 49:12 50:3 53:22 54:16 59:20 61:15 62:8 63:8 65:2 65:7 69:20 71:8 72:18 81:6 81:24 85:2 87:13 87:14 87:17 88:7 93:20 95:6 95:20 101:10 101:15 101:22 102:11 104:12 113:23 116:2 118:13 121:8 121:13 124:8 127:4 130:22 130:11 146:13 160:4 167:5

hasn't(1) 83:18
hate(1) 96:22
hauer(5) 4:12 7:32 30:10 99:12 149:14

| Word | Page:Line |
|---|---|

have(301) 11:7 12:4 12:9 12:23 13:2 13:4 14:1 14:20 15:19 17:3 17:15 18:22 19:6 19:11 19:24 20:16 21:6 21:15 21:16 21:18 21:19 22:3 22:9 22:24 24:15 24:15 25:4 25:20 26:4 27:11 28:1 28:1 29:12 29:16 30:2 30:5 30:18 31:8 33:23 33:23 33:25 34:1 34:3 34:4 36:17 36:19 36:20 38:10 38:11 38:19 39:7 39:18 39:24 40:1 40:8 40:16 40:17 40:19 41:16 41:25 42:3 42:9 42:10 42:22 43:1 43:2 43:8 44:24 45:4 45:7 45:12 46:3 46:13 46:21 47:9 47:10 47:10 47:19 47:23 47:25 47:25 48:2 48:4 48:11 48:14 48:17 50:14 50:16 51:1 51:2 51:15 51:17 52:1 52:4 52:10 52:12 52:17 53:15 54:14 54:19 54:21 54:25 55:13 55:14 55:22 56:9 56:17 57:22 57:23 57:24 58:7 59:25 60:2 60:3 60:6 60:20 61:11 61:22 62:6 62:7 62:22 62:24 64:4 65:4 65:23 65:24 67:3 68:2 68:5 68:8 68:19 69:1 69:1 69:7 69:11 69:15 70:3 70:10 70:15 71:22 73:5 73:8 73:14 74:1 74:14 75:19 75:22 77:11 77:14 77:21 77:25 78:3 78:13 80:7 80:11 81:18 81:20 86:20 86:24 87:22 88:4 90:6 90:6 90:10 90:24 93:23 95:1 95:2 96:16 96:23 97:17 98:15 98:16 98:18 99:14 101:25 102:7 103:2 103:8 103:14 103:19 103:21 104:8 105:5 105:19 105:25 106:1 106:1 106:17 107:24 107:24 108:1 108:5 108:7 108:11 108:14 108:16 108:18 109:20 111:11 112:6 112:7 112:13 112:14 112:22 112:24 113:7 113:1 113:20 114:22 115:25 116:7 117:3 118:18 119:9 119:25 120:2 120:5 120:20 121:1 121:17 122:14 122:15 123:18 124:1 124:3 124:4 124:14 124:23 125:2 125:2 127:10 128:4 128:14 128:23 129:24 130:1 130:10 130:13 131:2 131:13 131:22 135:1 136:1 137:11 138:22 138:23 139:23 140:10 140:13 140:17 141:12 141:20 142:7 142:2 143:15 144:22 145:2 146:3 146:8 146:15 147:22 148:5 148:7 148:9 149:1 149:2 149:22 152:6 152:10 152:23 152:25 153:6 154:2 154:5 154:8 154:21 154:21 154:24 155:15 156:11 156:17 156:21 156:22 156:23 157:20 158:1 158:5 158:17 159:23 160:12 160:18 161:9 161:22 161:23 164:17 164:19 165:14 165:17 165:21

have(8) 166:12 166:14 166:19 167:24 168:4 168:12 169:14 170:13

haven't(12) 49:3 65:7 65:15 74:22 78:2 95:11 96:7 115:10 121:22 131:16 141:15 157:4

having(12) 36:1 36:11 55:6 56:6 56:9 59:12 66:15 72:23 73:18 73:19 105:9 128:3

hazeltine(1) 3:13
he'll(1) 116:6
he's(3) 61:9 61:10 107:21
head's(1) 137:23
healthy(1) 97:14
hear(16) 13:4 21:1 23:1 36:6 59:5 59:6 61:8 68:12 119:23 126:14 133:8 145:7 149:11 151:4 168:10 168:15

heard(32) 18:25 23:14 28:24 41:19 41:25 42:18 44:1 63:1 70:22 74:18 84:17 88:18 94:7 111:18 113:8 116:13 117:8 117:15 117:20 118:2 119:24 119:24 121:2 121:2 129:15 140:4 142:24 153:21 154:23 157:7 163:8 164:17

hearing(98) 11:16 12:22 19:7 20:11 23:4 24:18 31:16 38:5 41:16 43:14 43:20 45:3 46:7 54:11 54:13 55:9 56:23 59:10 68:12 68:13 76:22 80:6 84:13 86:15 86:9 89:8 89:14 89:17 90:9 91:12 91:20 92:25 93:5 95:23 100:20 101:7 102:18 103:20 103:23 104:1 104:9 104:15 106:1 108:2 108:5 108:11 109:15 109:25 110:11 112:13 112:15 112:20 112:24 113:2 113:9 113:21 114:19 114:22 114:24 117:1 117:4 117:14 119:15 119:20 120:15 120:21 122:3 123:24 124:24 125:1 127:8 127:19 129:2 130:10 133:4 133:23 137:16 139:5 142:4 144:1 145:13 150:11 151:8 151:19 153:1 154:23 157:10 158:24 166:14 168:12 168:13 169:10 170:5 170:9 170:16 171:3 171:4

hearings(1) 126:21
hearsay(7) 113:23 115:10 126:24 127:6 127:17 128:11 150:22

heart(4) 20:18 21:15 21:16 21:18
heartburn(3) 162:12 162:15 162:17
heartened(1) 97:23
heavily(7) 25:23 29:3 29:5 29:6 29:7 34:25 35:23

held(1) 56:1
help(2) 44:7 164:13
helpful(16) 96:6 120:3 133:14 133:15 133:23 135:21 138:10 139:11 139:15 141:12 143:11 144:23 145:2 145:16 146:7

hennigan(2) 4:30 13:11
hercules(1) 3:7
here(49) 13:16 21:14 27:9 37:20 38:6 41:7 41:4 52:24 55:21 57:14 57:19 58:17 60:6 60:14 60:25 64:1 64:17 64:20 69:10 70:13 70:13 73:8 74:5 75:16 90:6 90:6 90:21 93:20 95:11 102:3 102:12 103:4 104:6 105:7 108:6 116:6 116:20 117:16 123:21 127:5 133:8 134:13 135:8 141:9 144:10 148:9 153:25 158:10 158:12

here's(7) 72:8 104:14 112:4 113:4 141:18 154:2 164:19

hey(1) 142:23
hidden(1) 112:4
hide(1) 75:2
high(3) 110:5 140:15 140:21
high-handed(1) 37:17
higher(1) 15:2
highlight(1) 71:13
highly(4) 86:13 97:24 101:5 104:17
hille(1) 4:49
him(3) 92:16 104:17 104:17
himself(1) 125:15
hinder(1) 110:9
hired(1) 116:5
his(18) 33:2 33:5 33:19 33:19 86:8 87:5 87:5 87:14 87:17 104:20 106:20 107:19 107:21 107:22 107:23 113:22 116:11 116:6

historical(1) 111:9
history(2) 101:1 111:8
hit(1) 46:25
hmm(1) 162:4
hoc(3) 41:14 41:20 42:12
hold(4) 22:14 37:13 55:24 166:11
holder(1) 13:9
holders(7) 10:11 55:4 57:10 69:5 108:9 109:23 121:9

holdings(8) 14:8 17:9 17:10 17:11 19:3 20:9 20:13 79:2

holliday(1) 6:27
home(3) 72:19 72:21 117:12

honestly(1) 71:21
honor(260) 11:14 11:5 13:6 13:10 13:16 14:10 14:13 14:16 15:14 16:16 17:9 17:15 18:4 18:15 22:15 22:17 22:21 23:4 24:16 24:22 25:8 26:15 26:21 27:18 28:4 28:12 29:4 30:5 30:8 30:12 30:23 31:5 31:7 31:12 33:16 34:2 35:2 36:3 36:16 36:19 38:24 39:3 39:11 39:16 39:18 39:25 40:2 40:6 40:11 41:5 41:11 41:12 41:21 41:24 42:21 43:22 44:2 44:18 45:7 46:1 46:5 46:12 46:15 46:21 47:12 47:21 49:2 49:6 51:18 51:21 51:22 52:3 52:5 52:8 53:19 54:20 55:8 55:11 56:10 56:20 56:25 57:15 58:2 58:5 58:16 58:20 59:2 59:7 59:10 59:14 60:19 61:6 61:14 61:19 62:10 63:6 64:6 64:7 65:4 65:5 65:21 66:5 66:7 66:15 67:6 67:18 70:1 70:16 70:23 71:6 71:14 71:22 72:5 72:18 72:20 74:6 74:8 74:19 75:7 75:13 75:25 76:3 77:19 78:12 78:16 78:23 79:14 79:15 79:18 84:18 84:21 85:20 85:23 88:12 88:15 88:18 90:12 92:23 93:18 94:9 94:16 94:22 95:4 95:25 96:16 98:20 98:21 98:24 99:11 99:16 99:21 100:9 100:23 101:7 101:14 101:18 102:22 103:7 104:4 104:9 104:14 105:3 105:4 105:18 106:4 107:8 108:4 108:12 109:9 109:11 109:14 110:6 111:2 111:21 112:11 113:1 113:15 113:23 114:20 115:5 115:17 115:25 116:13 117:11 117:15 118:8 118:22 120:11 121:3 121:4 121:8 124:17 126:19 127:7 127:10 128:14 128:21 129:1 129:6 129:8 129:11 129:19 130:2 130:6 130:17 130:19 131:12 131:18 132:3 132:7 135:20 146:2 147:10 149:12 149:13 150:3 152:8 152:12 153:7 153:12 154:16 156:2 156:4 156:8 157:24 159:4 159:12 160:1 160:9 161:3 161:13 161:18 162:1 162:13 162:17 163:7 163:14 163:15 163:19 164:1 165:1 165:5 165:13 166:5 166:10 166:12 166:14 166:22 167:11 168:19 169:11 169:12 169:20 169:23 170:10 170:20 170:23

honor's(8) 31:7 32:2 32:8 33:9 58:10 72:1 79:22 99:15

honorable(1) 1:20
hooray(1) 148:2
hope(9) 40:6 76:11 106:3 106:23 120:2 125:2 125:20 128:19 131:21

hoped(1) 23:25
hopefully(4) 11:10 75:24 76:9 98:9
horan(1) 2:48
hostage(1) 37:13
hotly(1) 68:14
hour(2) 74:2 166:15
housekeeping(4) 42:22 166:13 166:20
how(61) 11:16 19:25 31:25 32:1 39:10 43:19 49:23 50:25 51:4 53:20 53:20 59:18 62:2 64:8 66:20 68:16 69:18 77:11 83:18 83:18 88:3 88:5 90:10 91:13 101:14 101:24 109:17 109:17 113:2 113:9 113:11 115:16 115:23 118:13 123:17 124:10 128:21 129:1 133:16 134:15 135:5 135:16 136:12 138:4 141:23 147:1 147:2 148:22 149:22 153:4 153:6 153:16 155:16 158:12 158:22 162:7 163:18 164:6 164:8 164:10

howard(2) 5:35 9:32
however(5) 64:23 94:3 125:20 131:25 157:14

huge(2) 87:19 94:11
human(1) 67:4
hundred-odd(1) 165:19
hurry(1) 102:10
hurting(1) 147:8
hutchins(1) 7:36

hyperbole(5) 95:10 104:14 117:12 125:11 132:14

hyperbolic(6) 24:18 26:16 33:8 36:10 72:18 73:3

i'd(9) 15:18 17:16 18:4 18:6 31:12 36:21 52:4 77:12 78:1

i'll(49) 14:22 20:19 25:3 27:13 29:25 30:18 31:11 31:19 32:5 36:25 37:5 42:20 46:19 46:25 59:22 61:13 61:14 62:19 76:13 77:7 78:24 84:14 88:21 93:1 97:9 102:1 105:15 106:2 108:3 109:23 110:5 110:16 111:1 119:23 120:10 121:18 121:21 138:10 141:19 141:22 142:10 142:10 146:2 149:11 151:13 151:23 157:12 157:12 162:11 163:22

i'm(64) 16:9 19:25 23:18 24:22 25:8 25:15 29:4 35:13 35:15 38:2 38:24 40:22 41:22 42:19 47:8 51:4 59:2 65:20 67:13 69:18 70:14 72:11 73:24 78:4 79:25 91:21 92:1 94:24 96:18 96:20 97:12 98:4 98:16 99:17 104:16 104:23 110:8 110:22 114:8 114:10 114:14 114:15 115:18 117:1 117:10 117:17 117:18 118:8 119:23 124:24 125:10 125:24 127:18 132:6 133:11 137:12 147:9 149:19 152:23 158:19 162:13 162:20 162:20 165:16

idea(7) 27:4 52:21 141:11 142:3 148:21 154:8 154:20

ideas(1) 77:11
identical(2) 15:17 156:16
identified(3) 80:10 168:5 169:21
identify(3) 11:25 134:17 141:9
identifying(1) 167:9
ignores(1) 71:12
iii(2) 88:23 95:8
illustrate(1) 29:9
imaginings(1) 87:16
immaterial(1) 24:6
immediately(1) 140:12
impaired(4) 54:6 54:21 55:23 67:20
impede(1) 115:2
importance(2) 96:1 150:13
important(14) 91:21 91:22 101:13 102:3 102:4 103:4 108:24 109:8 120:15 131:12 131:22 149:25 149:25 152:16

importantly(1) 92:3
impossible(2) 109:21 115:17
impression(2) 115:12 143:18
imprimatur(2) 27:9 36:17
improper(2) 24:19 28:14
imran(1) 8:30
inaccuracies(1) 18:8
inaccuracy(3) 22:11 33:6 36:2
inaccurate(3) 17:6 29:25 35:22
inadequate(3) 100:25 133:9 133:9
inappropriate(2) 17:13 43:9
inc(1) 8:11
incentives(1) 139:8
inclination(1) 119:13
inclined(4) 38:3 40:22 152:23 168:10
include(4) 38:15 42:3 124:22 167:23
included(4) 42:18 108:20 158:7 165:4
includes(1) 115:4
including(6) 20:15 29:19 33:5 34:13 38:1 82:24

inclusion(1) 36:25
incomplete(1) 15:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**inconsistent**(1) 129:16
**inconsistently**(1) 63:22
**incorporated**(2) 124:16 124:20
**incorrect**(2) 22:6 67:10
**incorrectly**(1) 63:21
**increased**(5) 25:25 53:17 158:12 158:13 158:13

**incredibly**(1) 125:19
**incremental**(5) 66:12 73:2 73:23 74:12 97:20

**incur**(2) 64:18 64:25
**incurred**(1) 97:19
**incurrence**(1) 98:19
**indeed**(5) 51:7 60:8 65:21 93:5 93:9
**indenture**(4) 71:4 71:7 71:9 123:7
**indentured**(4) 72:3 75:4 75:5 121:5
**independent**(2) 93:13 101:22
**indicate**(1) 166:1
**indicated**(6) 37:8 38:4 44:5 54:9 130:2 132:17

**indicates**(1) 88:7
**indicating**(2) 51:23 165:25
**indication**(1) 74:11
**individual**(1) 50:13
**indulge**(1) 51:19
**inexplicable**(2) 113:5 114:20
**infinite**(1) 59:19
**inflexible**(1) 137:12
**influence**(5) 29:1 29:3 29:5 29:6 29:7
**influenced**(3) 25:23 35:1 35:23
**inform**(1) 119:20
**informal**(1) 48:19
**information**(15) 17:12 17:15 21:21 40:15 74:14 77:15 79:2 80:25 81:25 90:10 90:15 90:18 91:3 154:7 158:6

**informed**(2) 101:22 151:3
**initial**(3) 115:23 120:5 137:13
**initially**(2) 54:4 58:6
**input**(1) 103:18
**insiders**(2) 67:21 106:15
**insignificant**(2) 24:5 24:6
**insolvency**(5) 110:5 116:7 116:21 116:23 131:23

**insolvent**(2) 97:25 110:4
**instance**(1) 132:13
**instances**(2) 26:15 107:9
**instead**(2) 24:11 104:20
**institution**(1) 32:25
**instruction**(1) 37:3
**instructions**(2) 47:3 71:19
**insult**(1) 38:6
**intelligent**(1) 101:16
**intelligible**(1) 45:15
**intend**(11) 38:6 38:9 38:9 38:18 76:17 76:18 76:18 141:16 152:1 159:24 167:14

**intended**(2) 13:17 85:6
**intent**(3) 108:25 109:10 110:9
**intention**(4) 40:2 40:4 57:4 57:5
**intentional**(1) 109:19
**inter**(8) 55:4 55:17 55:25 56:21 67:6 68:3 75:19 76:11

**inter-claims**(1) 54:10
**inter-company**(20) 53:20 54:5 54:18 54:20 54:24 55:2 55:4 55:16 57:14 57:21 67:18 67:20 67:23 68:14 69:10 69:12 75:15 75:17 75:22 77:9

**intercompany**(3) 82:8 82:10 85:7
**interest**(9) 21:15 21:18 35:10 35:12 37:18 42:13 48:18 105:22 139:3

**interested**(3) 77:3 87:11 133:5

**interesting**(3) 61:8 64:17 66:19
**interests**(3) 13:15 40:25 139:3
**interpretation**(1) 39:10
**interpreted**(1) 21:6
**interrogatories**(7) 83:23 89:4 133:18 139:17 140:3 150:7 150:10

**into**(31) 11:13 18:2 28:15 45:19 47:24 53:6 56:20 58:22 62:25 65:7 66:1 67:2 79:20 87:17 90:16 91:4 92:21 92:21 100:20 124:25 125:10 125:21 132:7 132:9 137:11 145:5 147:17 157:20 159:17 159:19 163:11

**introduce**(1) 129:5
**invective**(1) 24:8
**invest**(1) 90:18
**investigate**(1) 86:8
**investigation**(8) 87:10 87:21 92:5 94:6 94:10 94:13 125:10 125:12

**investigations**(1) 154:7
**investment**(3) 8:33 9:43 9:49
**investors**(1) 26:20
**invited**(1) 134:17
**involved**(1) 106:17
**involves**(1) 51:7
**ironic**(1) 93:1
**ironically**(1) 94:4
**irony**(1) 93:22
**isn't**(5) 12:2 82:9 91:16 117:19 134:8
**issue**(84) 22:23 23:17 37:23 40:13 42:8 47:23 48:17 48:20 49:6 49:23 52:4 52:8 52:9 52:13 53:14 53:16 53:19 54:2 54:16 54:12 54:12 55:14 56:21 58:4 58:20 58:2 59:8 61:14 63:18 67:5 68:13 69:16 70:3 70:3 73:7 75:2 75:15 75:24 77:25 78:3 81:5 83:4 84:15 86:2 87:5 93:6 97:7 104:11 107:5 108:13 109:8 111:16 112:4 117:20 118:2 119:4 122:22 123:9 123:21 124:25 127:13 127:16 132:22 132:23 132:24 136:6 138:19 138:19 141:19 142:9 143:12 143:12 144:11 146:22 151:17 152:5 155:6 155:19 155:20 157:2 157:21 158:1 159:9 166:20

**issued**(3) 148:8 148:13 152:12
**issues**(96) 11:12 11:20 11:25 12:5 12:25 13:13 13:17 13:20 23:5 24:7 46:2 48:24 49:2 57:17 61:14 69:21 70:20 71:16 73:3 76:15 76:15 77:4 77:17 77:20 79:18 80:1 80:10 80:13 81:7 81:10 81:15 82:6 82:11 82:19 84:3 84:12 85:7 85:8 85:9 86:8 87:1 92:11 92:12 93:16 98:13 98:19 99:2 99:18 103:3 103:6 103:7 103:14 106:5 108:3 108:13 109:15 109:17 118:21 119:2 120:6 122:10 122:14 122:14 122:15 122:17 123:11 123:17 124:11 126:16 130:24 132:22 133:6 133:24 133:25 134:2 135:22 136:18 137:1 137:24 141:2 141:9 149:9 149:20 153:3 153:11 153:15 153:17 153:18 154:24 156:11 156:16 156:21 156:22 157:13 157:18 168:19

**it's**(127) 15:22 16:7 16:15 17:14 19:3 19:10 24:17 24:19 25:7 28:17 28:18 28:19 30:25 35:4 36:11 36:12 36:12 36:16 37:3 39:14 41:21 42:16 42:17 42:24 43:19 50:12 53:1 54:2 56:14 60:19 62:2 62:16 64:17 66:7 66:25 67:1 67:3 70:3 70:8 70:7 80:19 80:24 81:13 81:17 81:17 81:19 82:19 82:23 83:4 84:9 88:3 88:5 91:21 91:22 96:9 99:6 100:23 103:15 103:18 104:4 104:16 105:20 106:24 107:1 109:21 111:13 113:8 113:16 114:6 115:7 115:17 117:20 118:7 118:9 118:12 119:7 120:13 121:15 123:22 123:6 123:7 127:20 127:22 128:10 128:11 131:12 131:21 133:7 133:9 133:15 137:12 137:19 137:23 139:3 140:1 140:18 142:17 143:6 143:23 143:23 145:15 145:16 145:16 147:18 148:13 150:1 151:6 151:7 151:16 152:3 152:3 152:9 152:14 153:3 156:4 156:9 157:2 158:4 163:1 169:6

**item**(5) 11:11 12:18 43:23 44:20 80:5
**items**(3) 13:3 95:24 157:19
**iteration**(2) 19:13 54:17
**iterations**(1) 40:18
**iterative**(1) 13:19
**its**(28) 24:5 25:19 26:23 28:3 28:5 31:14 31:18 36:13 36:14 37:9 44:13 49:9 50:9 50:22 51:14 54:17 57:9 59:19 61:25 62:11 63:21 75:6 90:13 90:19 120:12 167:22 168:6 168:6

**itself**(10) 27:3 28:15 29:24 30:16 31:13 34:3 58:21 101:15 111:9 153:24

**james**(4) 1:26 1:28 2:24 4:31
**jammed**(1) 127:2
**january**(7) 138:5 140:13 161:8 170:6 170:7 170:17 170:18

**jason**(1) 7:35
**jean-marie**(1) 7:18
**jeff**(1) 8:14
**jefferies**(1) 7:48
**jeffrey**(1) 4:39
**jenner**(2) 6:38 34:12
**jeremy**(1) 10:13
**jhaveri**(2) 9:49 9:50
**jillian**(1) 6:11
**jim**(5) 13:7 13:10 59:7 79:15 85:23
**job**(5) 33:2 87:5 87:14 90:5 106:24
**john**(1) 10:32
**johnston**(17) 4:31 13:7 13:10 13:11 16:7 16:12 16:16 16:23 17:2 18:12 18:14 59:7 59:8 61:8 74:19 85:23 85:23

**join**(3) 71:3 71:14 72:1
**joinder**(1) 129:11
**joined**(2) 59:3 91:10
**joint**(1) 139:21
**jon**(1) 9:11
**jonathan**(1) 7:12
**jones**(3) 6:19 8:48 9:14
**joshua**(2) 4:32 10:41
**journalists**(1) 62:5
**joyride**(1) 33:14
**jpm's**(1) 116:5
**jpmorgan**(15) 7:4 8:24 15:23 19:1 27:23 88:16 92:13 96:23 96:24 98:6 105:8 108:8 129:15 129:17 129:23

**jpmorgan's**(1) 14:8
**judge**(8) 1:21 24:13 27:4 64:12 127:8 127:13 127:17 155:13

**judged**(1) 102:11
**judges**(1) 39:8
**judgment**(2) 101:11 101:22
**judicial**(2) 28:11 104:13

**july**(9) 91:20 121:25 121:25 123:20 124:17 124:19 128:18 132:23 132:24

**jump**(2) 76:12 157:11
**jumping**(1) 94:24
**juncture**(3) 80:7 84:5 134:5
**just**(129) 11:6 12:5 15:25 16:3 17:18 18:1 18:25 20:2 21:17 22:24 22:25 24:16 26:15 30:1 30:12 31:2 31:2 31:8 32:15 34:17 39:7 39:19 39:20 39:21 39:22 40:13 40:20 41:6 41:17 44:2 44:12 56:8 56:25 58:15 59:8 60:23 62:10 62:11 66:13 69:16 69:18 69:23 70:5 70:6 71:12 72:1 72:7 72:9 72:11 73:2 73:7 74:4 74:19 75:5 79:25 80:13 81:22 82:16 86:1 89:6 89:12 89:14 91:17 92:24 94:24 97:3 98:9 98:23 99:1 99:7 100:17 103:23 104:11 104:23 105:13 106:3 106:23 107:12 116:8 117:17 122:24 125:8 125:22 126:2 126:24 127:21 130:22 134:20 136:12 137:23 140:18 140:21 141:21 142:17 142:18 144:20 144:20 145:24 146:3 147:9 148:7 148:16 149:3 149:15 149:16 149:18 149:20 151:8 151:14 153:15 154:6 155:2 155:15 155:18 155:19 156:4 156:8 156:23 160:14 162:21 162:25 163:3 165:5 165:5 169:1 169:12 169:20 170:16

**justify**(1) 126:3
**justin**(1) 7:48
**kalenchits**(2) 6:50 6:50
**kaminetzky**(9) 2:31 88:15 88:16 91:15 91:17 101:3 101:5 105:14 111:21

**kang**(21) 4:24 157:24 159:4 159:6 159:9 159:24 160:9 161:1 161:6 161:13 161:18 162:13 162:16 163:13 165:5 165:22 166:10 170:1 170:18 170:20 170:23

**kansa**(34) 1:29 44:18 44:18 45:7 46:5 46:15 46:21 46:23 47:2 47:17 51:21 52:3 52:7 53:15 56:20 56:25 58:4 58:15 58:19 59:2 65:5 65:21 65:24 66:5 71:15 75:13 75:13 76:3 77:19 77:19 78:5 78:12 78:15

**kaplan**(2) 5:34 5:35
**kasowitz**(3) 5:11 10:36 129:9
**katten**(1) 10:32
**kaye**(1) 10:25
**kazlow**(1) 7:33
**keep**(7) 20:25 38:7 38:18 40:16 45:14 45:17 91:1

**keeping**(3) 75:7 167:23 168:6
**kelley**(1) 7:4
**kempner**(1) 7:28
**ken**(4) 44:18 75:13 77:19 157:24
**kenneth**(1) 1:29
**kevin**(4) 1:20 1:27 7:4 11:4
**key**(1) 159:12
**kick**(1) 115:22
**kill**(1) 133:19
**kind**(11) 11:16 12:5 28:10 52:22 67:2 90:8 90:11 100:9 106:23 112:13 116:8

**kindly**(1) 96:4
**king**(4) 2:41 2:42 3:28 5:6
**kiss**(1) 104:20
**kjc**(1) 1:9
**klauder**(1) 3:27
**kline**(1) 6:12
**knew**(3) 37:4 107:14 123:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **know**(117) 13:1 13:3 21:14 21:19 22:1 24:11 30:18 37:3 37:5 37:7 37:11 38:6 38:12 39:8 65:19 67:9 67:23 68:16 69:6 69:9 69:9 69:15 70:9 73:9 75:4 75:17 76:2 77:12 77:12 89:25 90:1 90:1 90:10 90:22 90:23 91:6 92:13 95:14 96:8 98:1 100:14 100:17 100:24 101:9 104:10 105:1 106:7 107:6 107:7 108:14 109:2 115:13 116:9 116:13 118:7 118:9 118:16 119:14 123:13 124:17 124:25 126:15 126:18 126:21 128:8 128:23 130:16 134:15 134:1 135:10 135:10 136:12 137:19 137:20 138:12 139:1 140:14 140:17 140:20 141:5 142:13 142:14 142:15 143:2 143:7 143:14 143:19 144:22 145:5 145:12 145:14 145:2 145:21 146:22 147:4 148:6 150:16 151:1 151:6 151:10 151:16 154:5 154:14 154:14 154:19 156:9 156:15 156:20 156:24 157:20 160:5 160:7 162:4 162:7 164:23 166:16 170:22 | | **laying**(1) 144:19 <br> **lays**(1) 83:7 <br> **layton**(1) 2:39 <br> **lazard**(1) 10:7 <br> **lbo**(28) 20:23 25:5 25:21 26:3 29:10 29:11 37:10 37:12 61:10 64:18 80:14 86:20 87:24 92:6 94:14 97:2 100:4 110:4 110:8 121:11 123:3 124:2 133:6 152:20 153:14 153:16 153:16 153:24 <br> **lbo's**(1) 101:1 <br> **lbo-related**(19) 80:3 80:21 80:25 81:1 81:24 82:14 84:4 85:1 91:19 97:4 98:10 98:12 99:7 99:8 122:12 123:11 130:3 131:5 132:8 <br> **lead**(9) 26:21 50:21 86:21 91:9 97:8 97:8 97:14 98:1 98:8 <br> **leaning**(1) 128:19 <br> **learn**(2) 147:4 151:20 <br> **learned**(1) 59:21 <br> **least**(14) 51:8 59:25 60:3 64:4 77:15 83:18 121:9 121:13 122:6 122:9 128:7 135:2 145:22 157:21 <br> **leave**(9) 33:13 38:3 38:15 41:1 41:4 70:15 77:17 78:11 167:21 <br> **lederman**(1) 7:10 <br> **lee**(1) 7:51 <br> **left**(1) 23:7 <br> **legal**(8) 56:11 61:11 100:21 103:21 103:24 110:12 145:12 145:12 <br> **lemay**(29) 2:12 22:19 22:21 22:21 23:3 24:22 24:25 25:8 25:11 25:16 27:2 27:10 27:17 28:23 29:4 29:6 29:24 30:5 30:7 32:18 33:8 33:21 35:24 38:4 39:18 39:21 39:22 40:4 40:10 <br> **lemay's**(1) 32:20 <br> **lender**(19) 13:7 14:25 15:2 15:8 15:16 15:18 16:1 17:21 21:9 25:24 26:13 29:9 29:11 29:13 35:25 40:25 42:23 59:9 64:18 <br> **lenders**(47) 4:23 5:18 12:8 12:12 12:19 14:12 15:3 16:2 17:20 17:21 17:25 17:25 18:2 18:16 20:22 20:23 21:6 21:8 21:12 21:16 21:24 25:5 25:21 26:3 33:12 33:18 33:22 33:25 33:25 37:11 37:13 43:15 61:11 69:8 69:8 71:9 74:23 78:24 95:18 107:16 110:10 122:19 123:8 162:7 162:8 166:24 169:16 <br> **length**(6) 19:21 67:25 80:6 102:2 110:10 117:14 <br> **leonard**(2) 1:35 9:39 <br> **lerman**(1) 7:40 <br> **less**(10) 15:10 24:1 50:13 50:19 50:21 67:11 67:15 116:7 130:1 144:20 <br> **let**(34) 12:5 13:4 20:19 43:25 50:1 51:18 66:2 86:1 92:23 100:1 100:1 100:17 105:25 105:25 106:5 108:13 111:4 111:17 113:3 119:8 119:8 125:22 132:15 136:16 136:16 141:21 143:10 144:5 146:15 151:1 157:11 159:22 160:17 170:22 <br> **let's**(19) 11:23 11:24 16:7 30:17 40:12 59:5 73:2 73:21 78:8 103:22 103:19 106: 106:23 114:6 119:7 123:1 157:11 157:17 159:22 | | **letters**(1) 155:10 <br> **level**(6) 5:7 32:22 47:25 48:4 131:12 135:8 <br> **leverage**(1) 99:4 <br> **levin**(1) 7:21 <br> **levin's**(1) 32:23 <br> **levy**(1) 6:44 <br> **lewis**(1) 9:4 <br> **lexington**(1) 2:35 <br> **liebentritt**(1) 6:5 <br> **lied**(1) 103:12 <br> **light**(7) 26:13 33:9 38:23 77:2 89:20 95:6 150:12 <br> **lightly**(1) 33:3 <br> **like**(55) 12:24 16:3 17:4 23:2 31:12 35:21 36:3 36:21 38:2 45:25 51:9 51:16 58:22 59:13 62:4 67:3 70:14 72:7 74:5 77:12 80:11 83:5 84:9 87:18 90:25 94:23 95:7 95:23 100:9 106:8 114:22 117:19 119:10 120:1 127:2 127:10 130:16 131:11 131:19 131:24 132:7 133:13 138:13 138:16 140:24 141:17 141:18 141:23 155:3 155:4 157:1 160:6 168:8 168:9 169:3 <br> **liked**(1) 62:21 <br> **likelihood**(5) 15:15 103:16 108:15 109:8 109:18 <br> **likely**(4) 65:15 72:20 101:12 158:3 <br> **likes**(1) 128:14 <br> **likewise**(1) 49:14 <br> **limine**(2) 136:23 137:4 <br> **limit**(12) 80:3 82:5 82:9 82:10 82:12 82:18 91:11 97:2 141:25 143:5 155:9 155:10 <br> **limitation**(5) 85:6 100:10 116:9 118:23 130:3 <br> **limitations**(7) 80:14 80:20 84:22 110:25 131:20 132:1 134:1 <br> **limited**(4) 13:22 137:20 151:9 153:5 <br> **limiting**(2) 98:11 98:13 <br> **limits**(5) 115:19 141:7 142:1 142:22 143:2 <br> **line**(7) 58:1 62:6 92:21 94:16 105:5 152:15 152:15 <br> **lined**(1) 67:3 <br> **linger**(1) 93:16 <br> **lion's**(1) 74:24 <br> **list**(1) 149:8 <br> **listed**(1) 63:21 <br> **listen**(7) 31:15 31:15 38:10 38:19 39:6 39:6 93:24 <br> **litigant**(1) 27:5 <br> **litigate**(2) 107:1 107:5 <br> **litigated**(2) 69:21 124:7 <br> **litigating**(1) 87:1 <br> **litigation**(15) 11:15 44:11 56:7 57:22 89:9 89:10 90:16 90:20 91:16 101:12 101:23 102:14 106:22 128:10 144:9 <br> **litigators**(5) 89:20 95:8 95:14 98:15 98:16 <br> **little**(30) 23:7 23:16 23:25 24:1 26:1 39:11 40:1 43:17 44:4 44:7 46:2 52:17 53:15 60:1 71:4 76:12 76:13 95:2 119:17 119:17 122:11 132:14 138:15 139:2 142:5 155:4 159:19 159:21 161:7 169:13 <br> **live**(2) 83:9 108:7 <br> **llc**(3) 6:38 8:7 10:7 <br> **llp**(20) 1:25 2:11 2:23 3:4 3:33 4:30 4:38 4:47 5:12 5:27 5:34 6:38 6:43 7:9 7:15 8:27 9:4 9:30 10:11 10:25 <br> **loan**(1) 17:24 <br> **loans**(2) 94:23 98:19 <br> **local**(1) 98:18 <br> **lock**(1) 118:17 | | **lockbox**(1) 3:29 <br> **log**(3) 152:8 152:15 153:6 <br> **logic**(1) 54:1 <br> **logical**(2) 54:3 57:5 <br> **logistical**(1) 71:21 <br> **logs**(1) 140:4 <br> **long**(7) 11:11 37:16 40:19 96:17 118:13 124:15 141:12 <br> **longer**(2) 36:13 67:5 <br> **look**(18) 13:2 28:8 43:17 43:17 47:19 51:16 61:19 89:12 96:16 114:21 123:2 129:19 136:5 141:7 142:23 145:20 150:17 163:23 <br> **looked**(8) 22:4 26:20 27:12 32:13 42:6 96:7 113:24 115:22 <br> **looking**(16) 16:8 16:9 16:19 34:4 57:19 57:20 61:20 62:18 86:4 89:16 89:19 98:17 134:23 158:9 159:15 159:18 <br> **looks**(4) 46:16 58:22 61:23 169:3 <br> **loose**(2) 164:19 164:23 <br> **los**(1) 4:35 <br> **losquadro**(2) 8:20 8:21 <br> **lost**(2) 122:22 157:4 <br> **lot**(28) 50:19 50:19 58:16 58:22 72:25 81:4 83:25 95:1 99:14 100:7 103:21 109:3 109:12 110:2 110:2 120:4 121:8 122:4 125:11 130:1 132:9 132:11 133:19 134:10 136:1 140:2 145:23 154:20 162:11 <br> **lots**(1) 41:6 <br> **loud**(2) 116:13 153:21 <br> **low**(1) 15:11 <br> **lucy**(1) 8:42 <br> **ludwig**(1) 6:11 <br> **lugano**(1) 1:43 <br> **luxury**(1) 154:21 <br> **lynch**(2) 3:4 10:25 <br> **machine**(4) 67:3 73:23 73:24 74:3 <br> **made**(35) 12:13 13:22 18:1 18:24 22:4 29:15 31:10 32:16 33:21 39:2 40:13 41:16 43:3 47:10 48:8 48:8 48:14 49:18 71:3 74:10 86:24 91:3 93:23 102:4 102:18 110:14 113:10 118:15 120:4 123:21 133:14 144:6 150:4 154:19 157:4 <br> **madison**(1) 5:36 <br> **madlyn**(1) 10:26 <br> **magicak**(1) 104:12 <br> **magnitud**(1) 40:14 <br> **mail**(3) 159:17 159:19 170:8 <br> **main**(2) 74:5 97:1 <br> **majority**(1) 121:9 <br> **make**(55) 11:24 16:1 20:5 22:5 22:25 23:18 28:15 29:14 30:13 31:2 31:12 32:16 33:1 33:4 43:11 44:14 48:9 49:9 50:12 51:13 57:13 66:3 69:2 70:5 73:16 73:25 74:20 82:23 85:17 87:22 92:8 95:9 99:19 103:9 103:10 105:19 120:10 122:15 125:20 130:14 138:8 140:25 142:2 142:24 145:23 147:10 152:19 155:11 155:14 156:23 158:14 162:9 165:3 167:2 167:8 <br> **makes**(8) 21:3 40:3 50:13 50:18 60:23 88:3 134:3 144:7 <br> **making**(9) 31:25 35:2 35:13 50:22 62:14 82:4 117:17 126:17 142:4 <br> **man**(1) 18:1 <br> **management**(25) 4:5 6:26 7:25 7:33 7:44 7:52 8:20 8:42 8:45 9:17 9:24 10:42 13:12 30:11 32:18 33:1 80:10 80:16 83:23 94:18 99:13 131:15 132:20 135:23 157:13 <br> **mandates**(1) 53:3 <br> **mandava**(1) 10:8 <br> **manges**(1) 7:9 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| manner(1) 97:11 | | mechanism(12) 48:3 69:22 83:20 83:24 | | mistrust(1) 135:8 | | must(5) 32:2 55:5 92:25 99:17 126:9 | |
| manufacture(1) 55:22 | | 133:16 133:20 139:20 139:21 141:17 | | misunderstand(1) 101:6 | | mvp(1) 62:5 | |
| many(9) 23:6 29:15 45:9 50:25 110:1 | | 150:15 152:3 152:4 | | mix(1) 145:5 | | myers(1) 6:17 | |
| 123:14 145:5 153:23 154:7 | | | | moderate(5) 13:23 23:15 24:1 24:12 33:10 | | myself(1) 148:21 | |
| | | media(1) 48:21 | | moderated(3) 23:9 34:3 37:2 | | mystifying(1) 17:22 | |
| map(2) 143:23 143:23 | | mediation(2) 35:5 60:9 | | moderating(1) 12:17 | | naik(1) 10:21 | |
| mapped(1) 119:12 | | mediator(1) 81:21 | | moderation(1) 23:12 | | name(2) 86:16 114:7 | |
| marc(2) 2:16 2:18 | | meet(3) 97:21 120:5 140:24 | | modification(1) 47:6 | | names(1) 154:12 | |
| march(8) 76:16 84:13 88:25 118:18 | | meets(1) 79:21 | | modifications(5) 47:6 47:10 47:12 167:1 | | narrowed(3) 49:12 84:9 120:6 | |
| 138:13 138:15 146:23 146:25 | | meisel(1) 1:34 | | 167:24 | | narrowly(1) 132:19 | |
| | | member(2) 27:24 34:14 | | | | nature(4) 131:23 142:18 150:1 152:17 | |
| marcus(1) 24:14 | | members(6) 25:23 26:3 29:10 30:2 107:9 | | modified(12) 47:12 51:19 100:2 104:14 | | nealesh(2) 9:49 9:50 | |
| mark(1) 6:27 | | 107:24 | | 106:3 113:19 113:21 121:18 121:21 149:4 | | near(1) 13:15 | |
| mark-up(1) 72:11 | | | | 157:17 163:22 | | neat(1) 115:25 | |
| market(7) 1:12 2:6 3:8 3:42 4:41 5:21 | | memoranda(1) 98:7 | | | | necessarily(5) 27:6 61:23 70:8 116:14 | |
| 21:22 | | mention(3) 15:9 15:15 94:7 | | monday(11) 11:1 13:17 14:17 15:14 16:25 | | necessary(7) 65:12 91:24 97:18 101:15 | |
| | | mentioned(8) 19:4 23:8 66:24 66:25 67:7 | | 23:4 31:16 89:14 94:7 142:14 163:15 | | 133:7 136:11 139:12 | |
| marks(1) 50:4 | | 71:15 96:6 123:16 | | | | | |
| marsal(1) 8:11 | | | | monday's(1) 89:8 | | necessity(1) 81:23 | |
| martin(3) 3:21 3:41 121:4 | | meredith(1) 7:41 | | money(7) 60:12 73:1 83:25 88:8 90:19 | | need(57) 16:17 19:23 20:3 29:21 37:13 | |
| mass(1) 85:3 | | merely(1) 124:16 | | 94:12 134:21 | | 42:2 43:16 43:17 49:15 50:12 53:25 58:21 | |
| massive(6) 85:3 88:10 88:10 89:2 89:21 | | merge(1) 113:4 | | | | 76:20 76:24 79:6 90:22 91:5 100:8 100:12 | |
| 90:22 90:25 91:5 | | merit(1) 42:9 | | month(4) 137:19 159:20 159:20 161:7 | | 101:3 103:1 110:1 110:6 115:16 119:13 | |
| | | meritorious(2) 167:3 167:10 | | months(5) 34:10 88:24 90:24 92:4 140:11 | | 124:7 124:7 124:11 125:3 131:2 131:4 | |
| master(2) 48:13 48:16 | | merits(22) 37:18 81:1 81:23 82:14 84:4 | | more(62) 12:16 19:5 23:18 32:5 34:21 | | 133:9 134:2 135:13 136:19 136:19 138:14 | |
| match(2) 164:14 164:19 | | 87:3 88:21 91:19 91:25 101:25 105:5 | | 40:17 42:24 49:13 49:16 50:4 50:18 50:18 | | 140:18 140:19 141:3 141:8 141:21 141:22 | |
| material(2) 81:7 120:22 | | 105:13 108:15 110:1 110:7 111:9 116:11 | | 50:20 51:8 53:7 56:13 58:23 60:15 60:15 | | 142:17 145:5 150:15 151:2 153:8 157:15 | |
| materials(12) 27:12 45:18 51:19 65:11 | | 118:24 153:14 153:16 153:16 | | 62:5 64:13 65:14 67:11 67:15 68:12 69:3 | | 157:19 157:23 159:12 162:3 163:10 163:13 | |
| 70:11 87:9 87:10 131:1 131:1 159:16 | | | | 72:20 73:1 74:3 74:3 76:18 76:20 79:4 | | 170:3 170:3 | |
| 159:17 159:25 | | merrill(2) 3:4 10:25 | | 80:22 80:23 85:18 89:24 90:7 94:13 | | | |
| math(1) 19:25 | | merriment(2) 95:11 99:17 | | 102:20 103:2 108:24 108:24 113:24 114:1 | | needed(6) 41:17 54:12 86:20 118:13 140:8 | |
| mathur(1) 10:12 | | merry(3) 89:20 95:8 98:15 | | 119:14 120:18 122:4 125:19 132:8 134:9 | | 163:16 | |
| matrix(1) 50:24 | | mester(1) 4:32 | | 140:8 140:9 140:18 141:8 141:11 141:12 | | | |
| matter(14) 67:21 74:25 89:25 90:3 90:5 | | metaphor(2) 39:24 60:1 | | 145:2 150:8 153:9 154:5 155:4 161:7 | | needs(9) 35:3 44:4 50:19 58:25 84:11 | |
| 90:8 90:11 100:3 126:6 130:1 152:18 | | methodology(2) 109:7 109:7 | | | | 90:14 101:6 144:3 144:3 | |
| 168:8 168:16 171:9 | | michael(4) 6:7 7:16 9:26 9:27 | | moreover(1) 53:5 | | | |
| | | michaels(2) 107:21 168:21 | | morgan(4) 2:30 7:9 9:4 73:18 | | neel(1) 8:33 | |
| mattered(1) 54:13 | | micro(1) 37:23 | | morning(5) 47:11 59:11 142:15 157:11 | | negotiate(1) 138:16 | |
| matters(10) 44:3 77:10 81:16 97:12 100:4 | | middle(4) 25:12 107:7 159:19 159:20 | | 160:2 | | negotiated(2) 82:13 107:11 | |
| 144:2 145:22 166:13 168:1 169:2 | | midwest(1) 170:14 | | | | negotiating(1) 106:22 | |
| | | might(19) 21:12 40:1 42:9 44:24 62:18 | | morris(1) 5:18 | | negotiation(1) 13:18 | |
| matthew(3) 7:45 8:39 10:38 | | 65:17 73:7 78:3 79:3 100:16 115:15 127:1 | | moss(1) 8:27 | | negotiations(1) 25:14 | |
| mauceri(1) 9:5 | | 138:15 145:10 154:5 162:2 162:6 162:9 | | most(27) 23:5 24:5 24:5 25:22 28:18 | | neighborhood(1) 137:8 | |
| may(53) 13:2 15:6 31:8 35:21 39:7 39:18 | | 162:9 | | 33:11 34:4 34:19 46:3 50:3 54:17 62:9 | | neil(2) 8:20 8:21 | |
| 43:16 46:6 49:18 49:19 51:8 51:21 55:8 | | mike(1) 10:29 | | 62:19 86:23 92:3 96:20 101:1 101:13 | | neither(3) 26:3 29:10 55:24 | |
| 56:2 58:9 58:23 58:24 59:4 59:17 61:3 | | miles(1) 6:13 | | 116:5 124:14 125:13 125:14 126:7 137:2 | | neutral(1) 23:18 | |
| 68:11 69:2 70:6 72:3 75:18 76:8 86:2 | | miller(1) 8:4 | | 150:20 152:16 154:14 | | never(13) 22:3 34:24 40:2 111:24 112:6 | |
| 92:23 95:3 103:2 114:8 118:10 118:18 | | million(14) 14:25 15:2 15:6 15:10 15:11 | | | | 117:3 117:9 129:19 129:24 134:22 140:12 | |
| 123:25 126:5 131:25 142:14 142:17 146:3 | | 29:1 29:14 65:20 73:9 81:7 96:6 125:13 | | motion(40) 41:13 42:9 42:19 44:20 44:23 | | 142:8 142:8 | |
| 147:7 148:6 155:1 156:23 159:1 162:6 | | 158:7 158:18 | | 45:23 46:1 46:10 48:8 52:10 54:5 55:6 | | | |
| 163:18 165:14 166:19 166:21 167:19 167:19 | | | | 56:5 56:6 56:9 57:7 57:8 58:6 59:4 78:9 | | nevertheless(1) 25:17 | |
| 169:8 169:9 | | million-dollar(1) 92:5 | | 79:17 82:9 91:10 100:19 103:20 113:10 | | new(36) 2:20 2:36 3:23 3:37 4:19 4:51 | |
| | | millions(9) 73:19 73:19 87:8 90:18 90:18 | | 133:2 141:21 155:12 155:12 155:14 167:1 | | 5:15 5:38 12:21 13:24 14:3 14:4 14:5 | |
| maybe(13) 21:16 23:20 43:12 43:14 43:19 | | 91:4 91:4 91:24 111:13 | | 167:18 168:10 168:20 168:21 168:22 | | 14:10 14:13 14:18 14:21 15:18 15:21 | |
| 44:4 44:7 77:15 119:9 138:8 148:15 | | | | 169:2 169:5 169:9 | | 16:18 16:24 17:3 17:7 17:18 18:5 18:9 | |
| 156:20 159:19 | | mind(6) 34:3 39:23 40:6 45:14 103:11 | | | | 18:22 19:5 23:13 26:2 40:22 74:13 89:6 | |
| | | 142:9 | | motions(8) 48:7 136:22 136:22 137:4 | | 155:9 158:12 168:22 | |
| mayer(1) 7:15 | | | | 137:4 137:6 155:10 170:4 | | | |
| mccabe(1) 10:17 | | minded(1) 168:15 | | | | newly(1) 97:19 | |
| mccarter(2) 3:33 9:35 | | mine(2) 46:19 92:2 | | motivated(1) 21:10 | | news(2) 88:18 169:7 | |
| mccolm(1) 6:47 | | minimum(1) 97:12 | | motivation(1) 24:9 | | next(14) 25:18 58:11 60:16 61:3 70:4 | |
| mccormack(2) 2:15 84:18 84:19 | | minkove(1) 8:24 | | motivations(4) 14:9 15:21 17:6 23:18 | | 76:10 90:24 119:11 119:15 139:16 153:11 | |
| mcdaniel(1) 5:5 | | minor(1) 47:10 | | mouth(2) 60:12 135:9 | | 157:10 159:9 168:18 | |
| mcneill(1) 3:6 | | minute(4) 33:12 89:24 117:15 141:16 | | movant(1) 42:17 | | | |
| | | minutes(1) 166:19 | | move(11) 11:11 43:25 44:17 58:7 76:10 | | nice(2) 121:15 169:6 | |
| mean(24) 24:24 40:18 65:19 90:13 91:17 | | mirza(1) 7:5 | | 108:3 113:4 119:12 136:9 140:6 158:24 | | nichols(1) 5:18 | |
| 100:16 104:18 105:17 113:24 119:7 119:8 | | mis-describes(1) 17:18 | | | | night(9) 11:24 11:24 12:2 12:10 89:3 | |
| 126:12 126:13 132:19 145:14 146:21 147:7 | | mis-tabulation(1) 48:15 | | moved(1) 127:15 | | 89:14 117:11 134:11 134:24 | |
| 147:4 147:7 148:4 150:17 154:3 162:10 | | misapprehension(1) 153:23 | | moving(2) 40:16 127:14 | | | |
| 164:9 | | mischaracterization(1) 132:11 | | much(28) 15:22 20:3 25:5 25:21 38:4 38:13 | | nine(2) 51:1 120:7 | |
| | | misguided(1) 52:23 | | 53:13 71:25 74:10 77:4 79:13 85:17 95:1 | | nineteen(1) 169:16 | |
| meaning(1) 163:4 | | mishmash(1) 51:4 | | 120:18 138:4 140:23 141:11 145:15 152:9 | | nobody(2) 144:17 151:1 | |
| meaningful(1) 52:22 | | mislead(1) 110:15 | | 153:6 154:5 154:7 157:5 158:2 162:15 | | nobody's(1) 83:17 | |
| means(4) 49:7 103:6 103:8 103:14 | | misleading(4) 15:20 18:8 36:8 36:12 | | 169:11 170:23 171:2 | | non(2) 55:9 73:2 | |
| meant(2) 40:7 128:9 | | misleads(1) 18:2 | | | | nonguarantor(1) 69:13 | |
| measure(1) 53:17 | | missive(2) 31:24 32:10 | | muchin(1) 10:32 | | non-bank(1) 110:10 | |
| mechanic(2) 49:23 68:21 | | misstates(1) 105:14 | | multiple(7) 61:4 61:22 64:9 101:20 102:16 | | non-controversia(1) 114:11 | |
| mechanical(1) 76:7 | | mistake(2) 33:21 99:20 | | 144:22 154:22 | | non-cross-examine(1) 95:24 | |
| mechanics(4) 47:22 47:24 48:5 70:6 | | mistaken(1) 111:21 | | | | non-disclosur(1) 17:8 | |

| Word | Page:Line |
|------|-----------|

**non-lbo**(6) 23:23 35:25 35:25 85:8 101:2 107:16

**none**(2) 57:5 60:20

**nonetheless**(1) 54:7

**nor**(6) 26:3 29:11 55:24 69:11 91:19 133:

**normally**(4) 142:9 142:12 145:10 147:1

**norman**(1) 1:36

**north**(7) 1:37 2:42 3:8 3:42 4:41 5:6 5:21

**not**(246) 11:10 16:3 16:10 16:15 16:24 17:13 17:17 18:18 19:2 19:5 19:6 19:11 19:15 19:20 19:25 20:8 20:12 20:16 21:8 21:10 21:20 22:2 22:5 22:8 22:9 27:6 27:8 27:12 27:15 29:25 31:25 32:17 33:6 33:7 33:14 33:21 35:2 35:7 35:13 35:15 35:21 35:21 35:22 36:8 36:8 36:9 36:9 36:11 36:12 36:12 38:17 38:24 39:1 39:5 39:6 39:9 40:15 40:17 40:22 42:2 42:9 42:14 42:16 42:17 46:3 50:19 51:4 53:13 53:25 55:7 56:3 56:4 56:8 57:11 57:24 58:9 60:5 61:9 62:24 63:10 63:15 63:15 64:20 65:4 65:16 66:2 66:10 66:17 67:3 67:19 67:22 68:2 68:11 68:24 69:2 69:14 69:18 70:3 70:8 71:1 72:2 73:16 73:18 73:22 74:15 74:22 76:17 76:18 77:3 77:9 78:4 78:8 79:8 80:1 82:3 82:5 82:9 82:10 82:11 82:18 83:3 83:13 84:8 85:6 86:17 87:4 87:12 89:17 91:18 91:24 92:1 92:2 92:9 92:10 92:23 94:24 95:6 95:7 97:2 97:2 97:14 97:5 98:3 98:5 98:6 98:10 98:12 98:15 98:16 98:16 99:7 100:2 102:8 103:15 103:18 105:9 106:17 106:20 106:2 106:24 107:9 108:6 109:13 109:13 111:1 111:13 111:20 113:2 114:3 115:2 115:18 116:12 116:14 116:14 117:17 117:18 117:21 118:4 118:7 118:10 118:15 119:1 119:18 119:22 119:24 120:12 120:12 120:13 121:1 122:7 122:16 122:18 123:6 123:7 123:9 123:16 124:22 124:24 125:4 125:10 126:1 126:5 127:23 128:2 128:20 129:3 129:18 129:25 130:3 130:9 132:21 132:24 132:25 133:12 134:13 135:8 136:2 137:8 137:12 139:5 140:16 141:6 142:16 142:17 142:25 145:15 145:16 147:25 148: 149:16 149:19 149:24 150:21 151:9 152:3 153:15 153:22 154:11 155:2 155:14 155:11 156:20 158:10 162:22 163:4 164:17

**note**(3) 17:9 98:6 104:10

**noted**(4) 37:22 60:19 95:4 125:15

**noteholder**(24) 12:12 30:12 31:14 47:4 47:23 48:12 48:17 48:23 49:1 53:23 55:1 55:9 55:11 55:19 55:22 56:2 56:22 57:2 57:15 58:1 68:25 71:1 71:5 75:16

**noteholders**(6) 12:6 47:2 56:19 61:8 71:7 77:8

**notes**(9) 29:11 45:17 45:17 47:22 48:14 48:14 55:24 57:4 72:17 121:10

**nothing**(9) 42:3 53:3 60:14 111:16 113:25 114:11 116:3 135:2 140:17

**notice**(4) 11:22 45:1 168:10 168:13
**noticed**(1) 131:7
**notices**(1) 159:25
**notion**(1) 33:13
**notions**(1) 78:13
**notorious**(1) 101:1
**notwithstanding**(4) 26:9 99:15 121:21 130:11

**novad**(4) 48:1 70:23 70:24 71:25
**november**(4) 32:3 58:7 58:8 167:7
**novod**(1) 3:20

**now**(84) 11:16 12:5 26:15 32:6 34:2 35:10 35:19 35:24 38:3 38:6 38:11 40:20 58:24 59:24 63:20 65:15 68:9 69:6 73:6 75:22 76:9 76:23 77:11 79:6 82:4 83:3 86:9 87:13 88:5 88:12 88:25 89:8 91:9 92:18 93:22 94:3 94:14 98:4 101:3 101:19 102:16 103:4 103:21 104:10 104:16 106:5 107:8 107:21 107:23 108:24 110:8 113:3 115:6 116:13 117:12 117:21 118:18 119:6 119:16 121:16 122:21 123:1 123:25 124:1 124:25 125:24 128:18 129:3 130:1 130:7 130:16 130:10 133:12 137:12 143:14 143:15 150:22 151:12 151:14 154:6 154:1 154:15 156:20 165:2

**nowhere**(4) 15:8 15:12 15:14 53:10
**number**(26) 12:3 12:6 44:20 47:4 59:8 65:6 65:8 73:12 105:14 119:3 131:7 136:18 140:9 140:15 140:24 144:20 145:2 151:7 153:22 154:10 154:17 156:14 156:19 156:21 157:1 166:24

**numbers**(4) 19:25 62:11 64:2 68:1
**numeral**(1) 16:23

**o'clock**(3) 117:10 157:11 170:17
**o'melveny**(1) 6:17
**o'neal**(1) 6:7
**oak**(2) 71:8 73:17
**oaktree**(10) 7:51 13:12 14:7 15:23 19:1 27:22 35:6 74:21 85:24 108:9

**object**(8) 20:1 21:12 127:3 127:6 127:24 128:2 162:5 169:15

**objected**(3) 54:9 79:1 132:21
**objecting**(4) 56:2 105:23 124:15 124:22
**objection**(17) 20:14 48:22 64:11 76:2 77:12 113:17 113:23 121:25 123:5 123:19 124:14 124:19 124:20 129:12 155:17 162:14 169:19

**objections**(23) 14:20 45:25 46:11 46:16 46:24 47:1 48:10 52:5 58:17 72:15 77:22 115:9 122:4 123:12 128:23 130:14 135:19 143:21 144:11 149:9 161:20 162:2 169:9

**objective**(1) 101:16
**objector's**(1) 92:8
**objectors**(3) 49:4 59:4 131:22
**obligations**(1) 105:6
**observation**(1) 74:21
**observations**(1) 149:10
**observe**(1) 91:22
**obstruct**(1) 87:4
**obvious**(1) 75:19
**obviously**(10) 34:19 107:7 124:13 124:21 138:21 139:3 143:9 144:11 150:3 168:13

**occasions**(4) 45:10 86:10 101:20 102:16
**occur**(1) 12:17
**october**(1) 166:25
**odds**(1) 56:14
**off**(11) 14:18 22:1 46:11 58:16 61:3 84:1 100:17 107:22 117:11 131:8 161:14

**offending**(1) 38:1
**offends**(1) 34:19
**offensive**(1) 25:17
**offer**(2) 86:1 120:1
**offered**(1) 96:4
**offers**(1) 15:2
**office**(2) 3:26 7:40
**officer**(1) 34:14
**official**(3) 9:30 22:22 84:19
**often**(1) 38:14

**okay**(89) 13:6 13:9 16:22 16:22 20:21 23:3 25:10 25:16 29:25 30:4 30:19 38:24 40:10 44:17 46:19 46:22 46:23 56:24 59: 61:15 63:7 63:12 63:17 64:5 70:18 72:4 76:2 78:17 79:6 80:17 80:18 100:1 100:5 100:6 100:12 100:19 103:6 110:12 110:21 110:24 111:4 111:13 111:20 113:5 114:4 114:8 116:19 118:1 118:6 118:11 118:21 120:4 120:14 135:9 135:15 137:18 138:10 141:1 146:20 147:17 147:19 148:2 148:6 148:19 148:24 149:3 149:7 152:24 153:1 153:12 154:18 155:16 155:24 156:1 156:7 157:6 157:9 159:8 160:16 161:4 161:17 162:19 163:3 163:10 164:21 164:24 165:1 165:11 170:24

**oksana**(1) 6:46
**old**(1) 17:12
**omnibus**(1) 119:15
**once**(4) 11:10 36:13 128:9 144:21
**one**(158) 1:30 2:41 4:18 5:18 11:13 12:18 13:7 13:13 13:20 14:1 14:14 14:22 15:1 15:3 15:8 15:18 15:22 16:3 17:19 17:20 17:24 17:25 18:5 18:7 18:16 19:13 20:10 20:22 21:3 21:8 21:9 21:12 21:17 21:18 21:18 21:24 22:22 23:3 23:17 28:1 28:10 28:12 28:19 32:25 33:23 33:24 34:23 35:15 35:16 37:7 37:16 38:23 38:2 38:9 39:19 39:20 40:17 40:25 41:9 42:8 42:24 43:15 46:10 46:16 46:17 46:21 48:4 49:1 49:16 49:19 50:5 50:5 50:6 50:25 51:1 51:18 51:19 54:20 57:17 59:13 62:3 62:4 62:8 62:12 62:14 62:15 62:19 62:20 63:1 64:6 64:13 64:20 64:25 66:23 70:6 72:6 72:15 72:16 73:16 74:1 74:3 74:3 74:21 75:14 77:6 78:24 78:6 81:7 91:2 93:10 94:23 95:3 95:18 96:3 97:17 97:21 97:25 100:23 103:8 103:10 104:1 106:5 107:9 108:18 108:21 108:22 113:15 115:3 115:7 116:5 117:11 118:18 118:19 118:21 120:10 122:19 122:22 123:21 125:23 127:14 132:13 136:23 141:2 144:11 149:7 150:8 154:3 156:15 159:12 162:1 162:7 164:13 164:14 165:5 165:14 169:12 169:1 170:3

**one-fourth**(4) 71:10 71:11 71:11 71:11
**one-third**(1) 158:22
**ones**(2) 31:20 121:19
**only**(26) 15:6 17:13 21:12 28:1 31:19 49:18 49:19 53:23 63:3 64:21 64:24 66:1 66:16 73:18 95:1 96:22 98:11 114:10 115:21 116:2 124:22 125:16 132:13 142:9 150:8 168:23

**open**(10) 47:13 53:23 58:4 61:14 72:24 79:18 80:14 105:19 157:18 160:2

**opened**(1) 75:8
**opening**(2) 14:18 145:6
**opens**(1) 14:11
**operating**(1) 165:18
**opine**(2) 116:2 116:3
**opinion**(3) 93:13 101:16 116:1
**opinions**(2) 116:21 116:22
**opponents**(4) 48:23 80:20 93:23 129:3
**opportunity**(10) 28:6 34:16 68:3 110:23 112:22 116:8 117:19 124:23 125:2 160:18
**oppose**(1) 124:13
**opposed**(7) 62:23 65:19 88:4 137:16 144:21 145:6 162:8

**opposes**(1) 151:1
**opposing**(3) 86:18 86:19 100:22
**opposite**(2) 104:4 105:24
**opposition**(1) 38:14
**options**(1) 26:22
**oral**(1) 127:20

**order**(61) 17:16 18:7 32:2 37:13 42:20 43:18 47:24 48:5 48:9 50:16 56:7 56:18 56:21 57:1 57:7 57:8 58:10 58:11 58:23 60:25 61:15 64:24 69:25 70:2 70:7 70:15 71:18 77:21 80:2 80:10 80:16 83:23 88:25 94:18 97:19 100:3 115:1 115:1 115:2 119:10 128:24 132:20 135:23 141:16 143:16 157:16 158:19 159:6 159:13 160:1 160:6 163:11 163:18 165:7 166:25 167:6 167:6 168:12 168:14 169:9 170:2

**ordering**(1) 60:22
**orderly**(1) 38:7
**orders**(1) 122:4
**organized**(1) 45:11
**original**(5) 24:10 31:9 158:6 167:6 167:18
**originally**(1) 162:22
**originated**(1) 155:7
**other**(88) 11:14 12:18 22:6 26:18 37:21 37:24 38:15 39:20 44:22 51:25 52:13 54:4 55:1 55:18 56:14 57:2 60:14 60:20 61:7 67:12 67:15 68:8 68:20 68:20 69:6 69:20 71:2 72:2 72:5 79:24 80:15 82:6 83:8 84:2 84:12 84:14 85:8 88:19 91:5 92:14 94:14 96:3 98:8 101:25 104:18 105:8 106:5 107:6 107:16 111:19 113:15 115:3 119:20 120:9 123:17 127:6 128:20 129:18 130:5 133:19 133:25 140:16 141:24 142:4 142:11 142:16 147:18 150:20 153:4 153:17 153:18 154:12 154:24 157:15 158:11 158:21 159:25 163:10 165:12 166:5 166:24 167:2 167:23 168:5 168:19 169:1 170:14

**other's**(1) 150:16
**others**(6) 12:14 23:21 45:5 86:19 103:6 149:11

**otherwise**(2) 11:17 66:15
**ought**(13) 83:25 84:12 119:16 134:12 134:12 135:5 136:13 139:21 140:9 143:1 150:24 154:8 154:11

**our**(103) 12:7 12:7 12:23 13:7 13:8 14:15 15:7 15:25 15:25 15:25 17:2 17:6 17:19 17:22 17:23 18:2 18:9 19:7 19:8 19:9 19:14 20:9 20:18 21:14 21:16 22:17 23:15 23:19 26:9 27:24 30:2 31:23 32:1 32:2 32:11 32:13 35:22 43:13 49:2 49:17 52:16 54:23 55:8 57:25 58:4 63:18 64:11 67:19 68:18 69:23 71:5 72:15 74:25 75:2 79:2 80:22 82:19 83:7 83:8 83:15 95:9 97:7 97:16 97:25 98:13 105:4 105:14 106:10 107:12 110:6 111:7 112:23 116:4 118:12 118:23 120:5 120:13 121:2 121:22 121:24 124:1 124:2 124:12 124:14 124:16 124:19 126:12 139:3 139:16 149:7 149:21 150:9 151:16 151:18 155:7 155:16 156:5 156:13 156:16 156:17 157:1 162:1 170:1

**ours**(4) 18:21 19:11 19:16 92:1
**ourselves**(2) 57:22 59:23
**out**(81) 11:22 11:25 12:15 14:11 14:19 19:6 23:17 28:7 28:21 35:25 36:11 36:18 37:21 38:17 43:10 43:18 47:3 48:5 49:11 50:24 50:25 50:25 51:1 51:6 51:18 59:12 60:8 60:11 62:1 62:16 63:15 64:21 70:14 72:7 72:9 73:6 74:1 75:2 75:11 75:23 76:20 77:21 78:10 79:3 79:4 79:5 80:13 83:7 89:11 95:5 99:3 102:9 104:15 105:2 106:14 106:14 106:19 111:18 114:19 115:22 119:12 122:16 123:17 123:24 127:5 130:22 133:13 133:16 133:22 135:23 136:12 144:10 144:19 145:25 150:1 150:25 154:17 160:14 161:7 162:22 169:13

**outcome**(3) 99:19 101:11 102:9
**output**(2) 103:7 103:17
**outs**(1) 45:23
**outside**(1) 86:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **outstanding**(3) 23:6 70:20 157:21 | | **parties**(95) 11:7 13:4 13:23 23:7 23:10 27:14 38:10 38:19 39:14 40:18 40:25 41:8 47:14 49:13 49:15 49:18 58:5 59:3 61:3 76:13 76:23 79:24 80:11 80:15 81:12 81:14 81:19 82:2 84:1 84:14 87:20 87:21 89:6 92:14 92:19 93:7 94:12 95:6 96:16 99:4 100:15 101:20 102:16 111:19 119:13 119:16 120:2 120:16 125:11 126:8 127:14 127:24 128:2 128:5 129:18 130:7 131:2 133:20 133:20 134:17 137:11 138:2 138:6 139:4 139:11 139:21 139:23 140:24 141:22 142:3 142:18 143:14 144:2 145:7 145:9 145:21 145:24 147:22 148:9 149:24 150:1 150:24 151:12 151:17 152:6 153:8 155:4 156:14 159:11 163:22 166:25 167:3 167:8 167:9 169:15 | | **phases**(1) 151:8 | | **plus**(5) 33:24 35:9 35:12 82:1 84:10 |
| **over**(19) 14:4 32:22 48:13 49:5 57:22 59:3 81:5 81:6 81:9 92:11 92:20 104:20 105:5 106:13 111:23 112:3 148:23 152:2 | | | | **phil**(1) 61:6 | | **podium**(6) 36:22 49:4 59:3 75:19 93:25 160:10 |
| **overall**(1) 43:13 | | | | **philip**(1) 4:15 | | |
| **overly**(2) 24:18 36:9 | | | | **phillip**(1) 7:34 | | **point**(54) 8:39 15:12 15:13 16:5 21:14 40:19 41:1 51:24 53:7 56:24 58:25 65:9 67:7 68:2 71:4 74:1 74:20 75:1 75:14 82:4 86:1 96:3 96:22 97:1 97:16 102:4 102:22 106:6 108:24 110:16 112:9 120:10 125:9 127:7 129:1 130:5 130:22 131:18 132:18 133:12 133:13 133:13 134:15 135:7 135:12 144:6 144:14 150:3 150:8 152:2 152:25 160:18 165:6 169:13 |
| **overnight**(1) 170:21 | | | | **phone**(6) 41:7 41:22 66:4 73:6 117:11 142:24 | | |
| **overnighted**(2) 16:10 30:21 | | | | | | |
| **overreaching**(1) 113:5 | | | | **phones**(17) 45:17 47:22 48:14 55:24 71:17 121:5 121:6 121:7 121:10 122:14 122:21 122:24 123:3 123:12 123:23 124:9 156:11 | | |
| **overruled**(1) 17:10 | | | | | | |
| **overstated**(2) 130:25 132:14 | | | | **phonetic**(3) 101:21 125:22 169:3 | | |
| **overview**(1) 103:14 | | | | **phrase**(1) 103:4 | | |
| **owed**(2) 72:8 72:9 | | | | **phrases**(2) 72:18 95:7 | | |
| **own**(13) 20:17 28:1 54:3 60:7 60:9 60:24 66:13 68:20 87:10 98:2 107:16 156:13 156:17 | | **partners**(1) 7:28 8:18 10:17 10:29 | | **pick**(4) 37:21 62:5 63:14 154:16 | | |
| | | **parts**(8) 11:8 30:15 32:4 79:5 123:14 132:7 150:10 151:18 | | **picked**(1) 34:24 | | **pointless**(2) 88:9 88:11 |
| **ownership**(1) 48:21 | | | | **pickering**(1) 6:30 | | **points**(7) 31:13 34:4 37:11 95:9 129:13 144:19 149:20 |
| **p.a**(1) 4:4 | | **party**(16) 23:9 67:12 67:15 72:23 83:13 115:3 128:4 128:7 132:21 141:24 142:11 142:16 156:17 156:22 158:23 159:1 | | **picking**(1) 25:16 | | |
| **p.m**(7) 1:16 11:1 12:4 23:12 78:20 78:20 171:4 | | | | **picture**(1) 13:7 | | |
| | | | | **piece**(14) 22:8 23:7 23:15 44:25 45:1 45:2 52:16 52:17 55:14 78:6 108:11 115:15 152:17 164:7 | | **polk**(3) 2:30 88:16 98:23 |
| **p.o**(5) 2:7 4:8 4:26 4:43 5:23 | | **party's**(1) 56:23 | | | | **polkes**(1) 7:12 |
| **package**(10) 27:19 36:25 41:18 42:3 42:14 42:18 79:11 157:20 158:16 160:25 | | **pass**(3) 43:2 75:5 108:22 | | **pieces**(6) 11:13 27:9 39:15 44:24 50:16 163:10 | | **poll**(1) 52:23 |
| | | **passed**(1) 127:14 | | | | **portion**(3) 68:13 79:17 80:22 |
| | | **past**(1) 107:6 134:16 | | | | **portions**(2) 97:13 130:15 |
| **packages**(2) 39:13 161:2 | | **patience**(1) 166:14 | | **pin**(2) 78:1 157:18 | | **pose**(1) 76:8 |
| **page**(28) 14:2 14:5 16:11 16:11 16:12 25:11 25:12 28:16 28:18 34:9 37:8 37:14 37:14 46:16 46:16 46:17 46:18 46:19 46:21 80:5 80:13 83:7 87:14 141:7 141:25 142:22 143:2 143:5 | | **paul**(4) 6:42 10:14 41:21 165:13 | | **place**(9) 38:3 62:7 62:7 62:7 62:7 85:2 144:21 147:14 163:11 | | **position**(19) 37:13 38:1 54:14 56:5 80:24 90:14 94:2 105:14 106:7 110:22 113:12 113:12 118:11 120:12 121:22 129:16 151:16 157:22 160:6 |
| | | **pause**(5) 97:10 100:2 149:6 163:21 170:12 | | | | |
| | | **pay**(12) 59:25 60:3 60:6 60:10 60:21 60:22 60:23 64:24 66:16 72:23 73:11 120:21 | | **plan**(182) 11:22 14:25 15:2 15:4 15:7 15:8 15:16 15:18 15:25 17:19 17:21 17:23 17:23 18:2 19:15 20:22 21:15 25:24 26:6 26:13 27:25 29:9 29:13 29:19 30:2 30:17 31:14 31:21 35:2 35:10 35:20 36:1 38:1 43:4 43:5 44:6 45:1 47:4 47:23 48:11 48:12 48:18 48:23 49:1 49:8 50:2 50:3 50:24 51:3 51:11 51:25 52:19 52:20 53:1 53:8 53:9 53:12 53:21 53:21 53:23 53:24 53:25 54:2 54:3 54:16 54:17 54:19 54:20 54:21 55:1 55:3 55:9 55:10 55:11 55:19 55:22 56:2 56:8 56:16 56:19 56:22 57:2 57:6 57:10 57:11 57:15 57:17 58:1 59:20 60:6 60:7 60:9 60:11 60:13 60:24 61:10 61:21 61:25 62:12 62:13 62:13 62:13 62:13 62:14 62:15 62:17 62:19 62:20 62:21 62:21 62:22 62:23 62:24 63:4 63:25 64:12 64:14 64:20 64:25 66:1 66:14 66:24 67:19 67:22 68:18 68:20 69:23 70:6 71:1 71:5 72:6 72:25 73:1 73:13 73:14 75:10 76:6 76:7 77:5 77:14 83:8 85:10 85:15 86:5 86:7 86:15 86:18 86:19 86:22 86:23 87:1 87:11 87:23 88:4 88:6 88:19 88:19 92:7 99:21 115:23 121:13 121:13 122:23 123:1 123:22 124:2 129:4 130:24 131:13 131:22 149:17 153:15 156:13 156:17 156:23 158:7 162:8 162:8 165:8 | | **positions**(9) 20:10 21:23 33:18 100:15 111:19 145:12 145:12 150:16 152:7 |
| **pages**(15) 14:6 14:6 79:18 80:9 81:7 81:9 87:8 96:7 125:14 136:6 141:8 143:6 155:12 155:16 156:6 | | | | | | **possible**(7) 38:8 45:15 45:18 51:2 120:23 133:3 153:5 |
| | | | | | | **possibly**(1) 56:10 |
| | | **paying**(2) 61:9 74:24 | | | | **post-bapca**(1) 53:18 |
| **paid**(9) 26:4 29:12 30:3 61:12 73:19 73:22 74:22 74:22 163:4 | | **payment**(3) 19:15 36:1 159:1 | | | | **post-exclusivity**(1) 53:6 |
| | | **payments**(1) 15:1 | | | | **post-hearing**(2) 145:2 145:10 |
| | | **pays**(1) 73:17 | | | | **potential**(2) 66:11 128:3 |
| **paint**(1) 90:5 | | **peg**(1) 9:14 | | | | **potter**(1) 3:4 |
| **palmer**(1) 3:40 | | **pen**(1) 26:24 | | | | **power**(1) 37:17 |
| **paper**(4) 50:16 64:21 64:21 107:12 | | **pendant**(1) 50:14 | | | | **powers**(1) 104:12 |
| **papers**(12) 42:1 49:11 52:16 92:8 106:10 112:23 113:13 115:20 116:4 130:12 130:1 148:14 | | **pending**(1) 46:11 | | | | **ppearances**(5) 1:23 2:1 3:1 4:1 5:1 |
| | | **pennsylvania**(1) 1:47 | | **planned**(2) 68:25 72:1 | | **practice**(4) 50:11 60:2 142:21 143:1 |
| | | **people**(37) 22:9 22:13 23:2 23:12 34:4 38:13 43:16 62:6 62:14 67:3 77:13 81:20 82:24 83:5 100:22 100:24 102:8 102:12 103:12 104:19 105:23 106:17 106:23 109:20 111:25 112:15 123:8 131:9 131:16 140:17 142:25 144:9 144:9 144:15 154:13 164:23 166:17 | | **planning**(1) 144:13 | | **practiced**(1) 32:21 |
| | | | | **plans**(52) 29:19 38:8 39:24 44:21 45:11 45:13 45:19 45:21 47:7 49:8 49:14 49:16 49:20 49:21 50:5 50:6 50:25 51:25 52:12 52:13 52:21 53:6 53:18 53:22 54:4 54:7 54:7 57:2 59:12 60:2 60:5 61:4 61:18 61:22 62:1 62:8 62:11 63:8 64:10 64:19 66:17 69:24 72:23 72:24 74:13 74:13 81:17 82:22 128:23 156:15 169:15 169:17 | | **pre-confirmation**(3) 56:7 76:24 145:15 |
| **paradigm**(1) 116:20 | | | | | | **pre-lbo**(1) 33:16 |
| **paragraph**(24) 12:25 26:8 28:18 29:23 34:6 34:15 34:19 37:15 47:24 48:8 57:8 72:7 79:4 80:1 80:22 80:2 110:3 110:8 110:13 115:1 132:20 132:21 163:23 | | **people's**(1) 139:19 | | | | **pre-petition**(1) 48:18 |
| | | **per**(6) 95:22 134:2 140:7 140:21 154:23 155:19 | | | | **preceded**(1) 94:10 |
| | | | | | | **precedent**(1) 97:21 |
| **paragraphs**(3) 12:21 34:18 79:4 | | **percent**(9) 15:6 15:8 19:14 35:9 35:12 35:13 64:24 66:16 158:22 | | | | **precise**(3) 20:11 23:6 89:24 |
| **parallel**(1) 43:5 | | | | **play**(2) 73:7 150:14 | | **precisely**(2) 18:12 41:2 |
| **parameter**(1) 119:19 | | | | **players**(1) 164:18 | | **preclude**(1) 88:2 |
| **paraphrase**(2) 28:13 98:6 | | **perfect**(1) 88:3 | | **playing**(5) 69:4 73:8 74:4 99:22 131:12 | | **prefer**(8) 39:1 49:19 50:1 51:3 51:25 53:12 64:23 142:12 |
| **parent**(4) 35:8 35:11 68:5 68:5 | | **perfectly**(2) 70:4 100:21 | | **plaza**(2) 2:19 3:7 5:7 | | |
| **park**(3) 3:35 4:18 84:19 | | **performing**(1) 167:22 | | **plead**(1) 86:9 | | **preference**(10) 45:13 49:7 49:16 50:18 50:24 61:25 63:3 63:8 63:19 76:6 |
| **parke**(3) 2:11 9:30 22:22 | | **perhaps**(7) 15:11 23:25 28:13 46:8 123:10 128:5 159:21 | | **pleading**(2) 69:24 124:16 | | |
| **parochial**(1) 16:3 | | | | **pleadings**(2) 89:13 129:19 | | |
| **part**(16) 20:8 37:24 44:23 66:21 74:3 75:16 77:2 86:22 92:18 96:2 119:5 120:15 120:22 124:20 151:1 163:1 | | **period**(4) 60:18 107:11 140:10 168:13 | | **please**(3) 11:2 12:16 52:6 | | **preferences**(13) 49:8 49:9 49:18 51:5 51:6 61:17 61:21 61:25 62:9 62:24 63:22 63:22 64:3 |
| | | **permissible**(1) 168:6 | | **pleased**(2) 47:8 98:3 | | |
| | | **permission**(1) 155:11 | | **plenary**(1) 91:18 | | |
| | | **permit**(3) 18:9 60:22 77:9 | | | | **preferred**(3) 50:3 62:12 62:14 |
| **particular**(9) 46:2 50:2 50:24 51:5 51:11 95:24 104:10 122:13 165:8 | | **permits**(1) 14:13 | | | | **prefers**(1) 51:11 |
| | | **permitted**(2) 119:18 167:1 | | | | **preformed**(1) 78:13 |
| | | **permitting**(1) 76:5 | | | | **prejudice**(4) 56:23 158:22 158:23 158:25 |
| | | **pernick**(3) 1:36 169:1 169:20 | | | | **prejudices**(1) 100:22 |
| | | **person**(1) 74:2 | | | | **preliminary**(5) 31:12 93:19 122:1 149:8 149:9 |
| **particularly**(5) 12:15 94:23 97:8 102:3 150:4 | | **personal**(2) 23:23 27:22 | | | | |
| | | **personnel**(3) 65:12 131:15 163:5 | | | | **premature**(3) 83:4 113:8 118:12 |
| | | **perspective**(8) 59:9 86:2 102:7 102:11 105:4 121:14 121:18 169:18 | | | | **prepare**(2) 54:22 91:25 |
| | | | | | | **prepared**(7) 27:15 57:6 60:10 60:11 93:15 98:8 119:23 |
| | | **perspectives**(1) 145:7 | | | | |
| | | **peter**(1) 9:42 | | | | **prerogative**(1) 36:13 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| present(8) 26:18 90:14 101:13 108:25 115:12 124:24 125:4 158:10 | | process(43) 11:12 11:14 13:19 14:16 38:7 38:17 39:12 45:13 50:19 51:9 51:10 52:1 53:1 53:4 53:21 59:15 59:20 60:1 64:12 68:23 69:19 77:3 77:15 84:23 85:18 104:13 105:19 106:13 107:14 119:12 124:21 124:21 141:3 141:4 141:9 150:2 152:2 158:3 158:6 158:18 158:20 163:18 169:5 | | publish(1) 111:24 pulled(1) 75:18 purchase(1) 90:19 purchased(1) 121:10 purported(1) 17:20 purports(1) 91:9 purpose(2) 85:12 133:11 purposes(13) 46:9 50:17 53:21 55:7 83:4 84:5 84:10 95:22 101:13 108:25 120:14 133:22 144:13 | | reached(2) 54:11 78:25 reaction(1) 122:6 read(10) 19:20 20:19 20:20 28:20 37:23 39:25 73:23 124:18 142:23 143:9 reading(2) 106:12 144:21 ready(7) 43:2 43:2 43:23 89:10 105:10 107:17 116:5 |
| presentation(1) 136:24 presentations(1) 103:19 presented(7) 45:8 59:12 61:15 74:14 83:6 164:9 169:10 | | procure(1) 37:13 produce(2) 98:7 111:12 produced(5) 1:52 87:9 87:14 111:14 product(1) 102:2 production(4) 87:9 112:5 147:23 150:4 productive(1) 139:19 products(1) 114:23 | | pursuant(2) 28:25 52:20 pursue(3) 103:22 123:18 124:3 push(4) 86:7 162:11 162:11 162:14 pushed(1) 138:4 pushing(1) 118:1 | | real(7) 26:5 74:12 90:16 90:17 108:7 118:11 136:3 realistic(2) 140:10 160:8 realistically(1) 160:24 reality(1) 141:8 |
| preservation(1) 86:15 preserve(1) 81:19 preserved(4) 24:6 44:15 113:18 167:10 press(2) 76:23 95:5 pressed(1) 38:12 pressing(1) 132:18 presto(1) 104:13 presumably(3) 50:23 64:22 165:10 presume(1) 95:21 presumptuous(1) 95:3 pretend(1) 94:4 pretending(1) 90:21 | | professional(2) 33:2 158:13 proffered(1) 109:2 progress(1) 120:5 prohibits(1) 60:22 projection(1) 158:17 projections(9) 103:12 108:17 108:18 108:21 109:1 109:6 109:6 110:14 131:24 | | put(40) 20:8 21:19 27:24 30:17 34:10 42:22 55:12 56:5 56:11 56:17 56:20 57:7 59:19 59:23 60:12 69:4 76:12 78:1 81:9 81:17 86:6 87:17 111:11 112:15 114:6 122:7 128:17 131:8 131:23 135:9 137:10 137:11 141:25 143:15 144:15 145:23 152:20 163:11 169:8 170:17 | | reallocation(1) 158:25 really(30) 13:14 14:14 14:19 24:4 24:6 24:11 25:18 27:21 28:6 39:23 55:17 65:8 65:12 66:25 67:5 69:18 71:12 75:18 89:25 90:3 90:23 106:20 106:24 111:17 115:18 115:25 138:3 143:20 147:8 152:14 reason(18) 20:11 26:6 27:7 27:7 36:16 42:10 42:11 42:14 42:17 42:18 42:19 60:5 75:5 89:23 94:3 101:11 125:8 126:23 |
| pretrial(5) 122:3 128:24 143:15 144:15 161:21 pretty(6) 23:15 37:25 49:11 138:22 154:5 154:8 | | prolific(2) 116:5 138:23 promise(1) 130:21 proofs(1) 48:10 proper(1) 69:22 properly(3) 44:9 108:19 167:22 property(2) 102:12 102:13 | | puts(2) 14:25 27:21 putting(7) 65:9 65:16 69:4 70:10 83:16 83:20 134:22 | | reasonable(5) 82:3 87:12 108:21 125:5 161:12 reasonableness(6) 81:3 82:21 84:7 85:5 85:14 115:21 |
| prevalence(1) 53:17 prevent(1) 34:16 preview(1) 89:3 previous(2) 88:21 124:16 previously(4) 28:21 87:20 91:10 102:19 primarily(2) 21:25 32:13 primary(1) 131:14 primofi(1) 10:26 principal(4) 23:22 26:23 27:25 65:10 printing(1) 158:8 | | proponent(7) 38:1 71:1 129:17 134:2 140:7 140:22 156:23 proponent's(1) 28:16 proponents(49) 11:22 13:20 14:1 14:14 14:22 15:23 16:2 16:4 17:11 17:19 18:7 21:15 27:25 28:24 30:12 31:18 47:4 47:25 48:12 48:18 48:23 49:1 52:12 52:13 52:13 53:7 54:1 54:4 54:16 55:11 55:22 60:6 60:13 60:20 60:23 61:8 66:14 68:25 71:5 72:6 73:13 73:14 75:17 130:24 131:13 149:17 153:15 158:21 165:8 | | qoud(1) 24:15 qualified(1) 159:1 quality(1) 158:14 quarrel(8) 28:2 54:19 54:22 54:25 55:14 55:15 question(12) 26:21 78:4 78:14 78:15 102:8 132:8 134:16 151:23 151:25 154:2 165:14 169:20 questioning(1) 162:7 questions(7) 36:19 146:8 149:10 152:11 160:20 165:12 166:6 | | reasoned(1) 152:19 reasons(10) 18:4 28:21 37:1 42:16 54:8 89:22 93:10 93:20 123:6 127:21 recall(10) 15:14 46:6 55:8 60:8 79:1 86:3 86:6 86:9 148:7 167:19 receive(5) 15:6 15:7 42:7 102:14 165:25 received(8) 28:25 30:22 31:24 32:10 35:9 35:17 50:3 64:22 |
| prior(10) 19:7 31:23 39:5 43:6 59:10 82:16 87:10 115:23 137:5 158:7 private(1) 71:8 privilege(16) 92:11 92:12 92:15 92:20 111:20 111:25 112:3 112:7 112:9 134:8 134:10 134:25 140:4 152:8 152:11 155:16 | | proposal(11) 35:8 83:16 83:17 104:5 115:6 141:18 148:16 149:21 153:14 155:6 156:5 propose(16) 11:17 45:4 45:22 49:3 52:4 52:22 66:19 79:21 80:2 80:12 89:1 115:14 123:1 136:8 161:6 170:7 | | quick(1) 138:22 quickly(9) 12:6 54:15 58:19 58:20 70:2 94:24 133:4 139:4 141:25 quite(8) 16:10 18:19 31:16 52:14 71:21 85:3 96:11 96:20 | | receiving(3) 34:17 35:12 36:1 recent(4) 28:18 54:17 89:15 124:14 recently(4) 46:13 47:11 91:5 141:15 recess(2) 78:19 78:20 reckmeyer(1) 10:13 recognize(4) 45:15 74:25 110:4 114:7 recognized(2) 39:11 129:24 recollection(1) 143:7 |
| privileged(2) 135:10 152:16 pro(2) 8:21 21:11 probabilities(1) 101:16 probability(2) 101:24 116:15 probable(1) 101:11 probably(15) 23:20 36:6 36:6 51:7 68:12 70:3 73:19 77:23 127:11 128:1 133:23 136:19 139:8 140:12 140:15 | | proposed(20) 35:6 47:24 48:9 49:25 52:10 54:25 56:18 58:6 82:2 86:18 87:2 93:12 94:18 101:12 115:19 140:7 141:6 148:15 165:7 165:8 proposes(1) 122:23 proposing(10) 20:22 53:9 63:11 63:13 63:14 68:19 104:4 120:19 136:10 155:15 | | quotation(1) 22:7 quote(8) 16:13 25:3 28:14 79:5 91:17 91:20 91:23 98:5 quoted(1) 20:17 quotes(2) 28:8 89:15 quoting(6) 91:21 95:4 97:12 110:8 113:14 125:24 | | reconsider(2) 38:13 41:13 record(29) 48:9 58:5 58:6 58:21 70:1 70:7 72:15 74:20 76:10 82:17 84:3 85:3 87:17 87:19 87:22 90:6 92:4 92:6 92:18 96:2 115:11 120:15 125:8 127:19 128:13 129:14 133:11 145:11 149:15 |
| problem(8) 17:2 36:17 71:22 107:8 125:21 139:6 142:25 170:21 problematic(1) 137:25 problems(1) 138:1 procedure(5) 45:24 142:22 143:9 144:21 148:7 | | proposition(4) 55:12 83:15 135:12 147:5 pros(1) 59:5 protocols(1) 85:17 protracted(1) 58:23 prove(4) 96:24 118:10 126:5 126:8 proven(2) 25:1 109:19 proven(2) 109:25 115:11 | | qureshi(1) 4:17 rachel(1) 9:5 raise(4) 13:3 24:20 78:3 166:13 raised(14) 19:9 42:9 45:25 47:2 47:23 48:17 48:23 99:2 122:10 122:11 124:2 130:24 149:9 165:6 | | recorded(1) 1:51 recording(1) 1:51 171:8 recoup(1) 52:19 recoveries(3) 29:1 34:17 35:4 recovery(3) 15:8 25:25 35:9 red(1) 34:5 redo(1) 94:6 reduce(1) 156:14 |
| procedures(9) 44:17 44:21 45:8 48:7 55:20 56:18 56:21 58:10 79:17 proceed(9) 17:11 17:19 52:7 80:16 88:5 102:15 104:20 136:15 147:2 | | provide(5) 26:11 46:1 50:23 79:10 165:6 provided(12) 25:5 25:20 37:10 46:5 51:22 54:4 69:11 71:19 92:16 92:17 131:2 158:5 | | range(2) 44:22 77:13 rank(1) 50:5 ranking(6) 50:4 50:9 50:10 63:15 76:5 rankings(3) 50:15 50:16 50:17 rata(1) 21:11 | | reduced(2) 21:21 21:22 reexamined(1) 23:9 refer(1) 97:9 reference(4) 34:12 34:13 37:7 62:12 106:10 128:12 |
| proceeded(3) 88:4 148:22 167:5 proceeding(5) 28:11 84:24 108:7 151:8 168:23 proceedings(11) 1:19 1:51 99:18 113:4 119:5 123:25 143:16 149:6 163:21 170:12 171:9 proceeds(1) 102:14 | | provides(8) 53:24 54:18 54:20 55:2 55:9 81:12 92:5 123:7 provision(7) 21:7 37:8 43:4 52:21 54:1 57:7 57:12 provisions(7) 20:25 21:5 40:23 97:4 97:17 98:10 120:7 pryor(1) 8:27 public(3) 35:4 36:8 89:16 | | rath(2) 2:4 2:5 rather(13) 19:4 34:16 49:20 53:9 54:14 88:20 93:1 93:5 126:8 130:16 133:21 140:2 169:16 rational(1) 26:12 raw(1) 65:11 re-argue(1) 38:25 re-digest(1) 86:10 reach(4) 101:22 128:6 153:9 156:14 | | referenced(2) 34:15 79:17 references(1) 107:12 referred(3) 18:19 45:2 149:18 referring(2) 98:4 155:8 refers(1) 61:20 refinance(1) 103:13 reflect(1) 18:24 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **reflected**(1) 121:24 | | **representatives**(1) 26:4 | | **reveal**(1) 154:13 | | **said**(72) 13:1 17:15 19:20 22:3 22:9 28:12 34:10 34:24 36:6 39:21 39:25 40:8 40:17 41:10 41:15 42:1 42:11 44:22 58:24 58:25 62:17 67:14 68:11 69:7 71:15 72:22 73:5 73:8 75:8 76:19 80:7 83:17 85:16 89:16 90:3 90:13 91:5 93:10 93:12 95:20 97:2 98:24 101:3 101:9 101:14 102:19 103:1 104:23 109:22 112:6 112:24 113:11 113:25 114:19 117:17 118:9 118:12 119:9 121:8 127:21 129:12 131:10 131:10 149:23 150:18 151:4 153:22 155:4 155:17 156:11 162:6 163:15 | | |
| **reflecting**(1) 46:9 | | **represented**(2) 42:13 165:24 | | **review**(6) 16:17 42:7 90:8 90:11 128:4 159:12 | | | |
| **reflection**(1) 38:22 | | **representing**(1) 91:8 | | | | | |
| **refuse**(2) 15:24 16:13 | | **represents**(2) 39:12 42:12 | | **reviewed**(3) 30:18 96:21 134:18 | | | |
| **regard**(14) 22:17 82:17 83:2 83:9 83:21 84:11 85:4 121:7 125:1 132:15 133:5 138:16 140:3 145:8 | | **reproduce**(1) 111:13 | | **revise**(6) 18:7 18:9 48:20 57:13 72:6 | | | |
| | | **reproduction**(1) 119:1 | | **revised**(10) 32:3 32:14 47:16 47:18 72:6 79:9 159:11 159:23 159:24 160:1 | | | |
| | | **request**(15) 17:10 19:3 20:5 34:11 42:24 44:6 48:12 80:22 80:23 88:1 94:17 115:3 150:12 159:1 159:2 | | | | **sam**(1) 34:12 | |
| **regarding**(14) 11:19 13:6 13:19 14:6 74:11 79:16 80:10 80:25 81:23 87:23 98:7 137:24 155:10 168:21 | | | | **revision**(1) 48:8 | | **same**(31) 19:8 19:12 19:23 21:17 23:21 27:22 27:25 28:8 28:21 35:15 40:18 43:17 46:21 64:1 64:19 69:4 70:13 75:6 91:8 91:9 124:5 127:16 128:19 130:10 144:8 145:23 147:11 147:15 155:2 158:14 158:16 | | |
| | | | | **revisions**(7) 16:20 16:21 24:4 24:5 47:4 47:5 157:19 | | | |
| | | **requested**(3) 45:23 46:6 137:11 | | | | | |
| **regardless**(1) 123:17 | | **requesting**(1) 155:11 | | **revisit**(1) 58:24 | | | |
| **regional**(1) 98:18 127:1 | | **requests**(10) 12:23 26:9 89:4 90:25 111:7 111:8 111:11 134:23 135:20 156:6 | | **rewards**(1) 101:12 | | | |
| **regularity**(1) 38:12 | | | | **rewrite**(1) 26:24 | | **sample**(1) 51:15 | |
| **reinstated**(5) 26:5 29:12 29:16 30:3 36:2 | | | | **rfas**(4) 83:24 133:18 139:17 140:3 | | **saquib**(1) 7:5 | |
| **reject**(3) 49:22 57:11 57:15 | | **require**(4) 19:2 56:18 97:6 137:3 | | **rhetoric**(3) 24:9 26:17 28:10 | | **satisfaction**(1) 32:20 | |
| **rejected**(1) 35:17 | | **required**(2) 53:8 84:6 | | **rice**(1) 5:34 | | **satisfy**(3) 39:5 62:15 62:16 | |
| **rejection**(1) 29:20 | | **requirements**(3) 45:16 45:20 62:17 | | **richards**(1) 2:39 | | **saturday**(1) 30:22 | |
| **relate**(2) 132:24 139:17 | | **requires**(4) 60:21 97:7 108:5 141:11 | | **riddled**(3) 25:4 25:20 37:10 | | **save**(1) 100:2 | |
| **related**(8) 20:24 85:7 97:2 97:3 119:7 122:12 132:24 136:24 | | **reserve**(3) 54:10 120:16 127:3 | | **ride**(1) 60:13 | | **saving**(1) 69:16 | |
| | | **resign**(1) 169:17 | | **rider**(1) 64:18 | | **saw**(11) 39:25 42:6 89:3 106:10 106:20 107:11 107:19 109:2 109:11 148:14 164:9 | |
| | | **resisted**(1) 86:6 | | **rifkind**(1) 6:42 | | | |
| **relates**(3) 80:23 87:23 141:2 | | **resolution**(9) 20:24 38:8 46:3 46:10 58:17 71:16 86:14 106:13 128:6 | | **right**(73) 16:12 16:22 19:4 22:20 27:10 27:17 31:13 39:17 40:12 41:22 43:21 45:6 46:4 46:15 47:20 52:2 53:10 56:23 58:3 63:8 65:15 66:6 68:19 69:15 70:5 70:21 72:13 76:4 83:24 90:3 94:14 96:8 96:14 96:25 99:10 99:14 99:16 102:9 102:12 102:13 108:17 115:4 118:10 120:16 121:22 122:21 123:18 124:3 127:11 128:16 129:15 133:12 139:15 141:22 143:14 146:2 151:1 151:24 153:22 154:4 154:6 154:15 156:20 157:10 158:19 159:5 160:12 160:22 162:10 166:6 170:16 170:22 | | **say**(74) 13:4 15:1 15:7 16:13 19:2 19:3 19:23 22:1 27:15 27:16 31:19 32:3 34:6 36:6 36:20 38:25 39:4 42:1 53:1 62:18 66:2 67:10 69:17 70:25 72:8 72:16 73:6 83:3 83:18 85:20 87:15 95:1 95:1 95:2 96:23 98:11 99:15 102:21 105:21 107:4 107:16 107:17 111:5 111:10 113:15 114:17 115:20 116:1 116:4 120:20 120:21 121:22 125:8 126:23 126:25 128:1 129:15 130:1 130:5 130:12 133:8 135:9 140:5 142:3 142:23 143:10 145:19 150:14 150:19 151:13 152:24 154:11 158:23 162:24 | |
| **relating**(5) 39:21 80:13 81:7 131:5 152:11 | | | | | | | |
| **relative**(2) 43:13 84:23 | | | | | | | |
| **relatively**(2) 45:11 154:11 | | **resolutions**(1) 46:25 | | | | | |
| **release**(3) 43:8 43:11 108:10 | | **resolve**(9) 20:14 49:3 71:23 75:24 77:12 97:6 115:8 128:21 153:10 | | | | | |
| **relevant**(6) 82:23 85:9 86:14 111:14 113:16 162:9 | | | | **rightly**(1) 109:12 | | | |
| | | **resolved**(8) 12:5 23:5 48:20 53:22 80:6 136:20 137:5 143:13 | | **rights**(5) 115:3 124:21 124:21 126:13 | | | |
| **reliability**(1) 51:12 | | | | **ring**(2) 104:20 104:23 | | **saying**(13) 11:23 17:17 21:20 21:21 22:13 32:9 93:19 94:1 99:6 103:18 108:1 140:16 155:25 | |
| **reliable**(1) 50:21 | | **resolves**(1) 58:21 77:20 | | **rise**(8) 11:2 41:6 71:2 75:14 78:3 78:7 78:21 84:20 | | | |
| **reliance**(1) 66:22 | | **resolving**(2) 48:25 169:5 | | | | | |
| **relied**(3) 114:1 126:5 158:5 | | **resource**(1) 82:22 | | | | | |
| **relief**(7) 44:22 45:1 45:22 115:3 136:23 139:12 169:2 | | **resources**(1) 84:2 | | **rising**(1) 32:22 | | **says**(17) 19:21 21:6 21:8 28:23 37:9 61:24 62:6 90:1 98:5 107:3 111:11 115:2 122:23 128:8 136:14 142:22 147:6 | |
| | | **respect**(48) 13:13 24:7 38:20 45:17 48:13 53:22 53:23 57:17 61:18 62:1 63:8 66:16 69:2 69:12 71:16 75:4 76:4 76:6 76:11 77:11 77:17 80:3 80:20 82:6 82:12 82:19 84:3 84:6 100:4 101:5 109:1 109:4 115:9 119:19 130:22 130:24 131:18 132:16 133:3 133:24 139:16 147:22 150:21 158:1 165:3 165:18 168:20 168:22 | | **risk**(1) 110:5 | | | |
| | | | | **rivera**(1) 2:14 | | | |
| **reluctant**(1) 40:14 | | | | **road**(3) 13:20 143:23 143:23 | | | |
| **reluctantly**(1) 39:15 | | | | **robert**(1) 2:40 | | **scare**(1) 51:18 | |
| **rely**(4) 82:24 114:10 125:8 125:9 | | | | **roberts**(1) 8:4 | | **schaible**(1) 2:34 | |
| **remain**(1) 36:21 | | | | **rochester**(1) 7:37 | | **schedule**(7) 76:21 119:14 137:23 138:2 141:10 160:15 160:21 | |
| **remaining**(9) 11:20 11:25 12:18 12:24 13:8 22:18 49:23 158:21 170:3 | | **respectably**(1) 100:15 | | **rockefeller**(1) 2:19 | | | |
| | | **respectfully**(3) 74:4 94:17 130:6 | | **rodney**(2) 2:41 9:36 | | | |
| | | **respective**(3) 31:21 120:2 145:12 | | **rogers**(1) 9:8 | | | |
| **remains**(7) 12:11 24:18 26:16 27:20 47:13 47:14 53:23 | | **respectively**(1) 137:11 | | **roitman**(1) 2:18 | | **scheduled**(4) 117:16 129:22 138:2 168:17 | |
| | | **respects**(1) 143:20 | | **role**(4) 92:24 106:20 130:8 150:14 | | **schedules**(3) 57:23 75:21 75:22 | |
| | | **respond**(9) 14:13 14:15 17:4 18:9 20:3 75:14 132:10 142:12 142:25 | | **roman**(3) 16:10 16:23 24:13 | | **scheduling**(1) 119:19 | |
| **remedies**(1) 69:1 | | | | **room**(2) 100:24 120:19 | | **schlerf**(1) 4:39 | |
| **remember**(2) 117:2 117:10 | | | | **rosenblatt**(1) 2:13 | | **scholer**(1) 10:25 | |
| **reminded**(1) 101:20 | | **responded**(1) 93:18 | | **rosenman**(1) 10:32 | | **scholl**(1) 10:29 | |
| **render**(1) 110:4 | | **response**(14) 14:11 14:15 54:16 87:9 141:25 142:17 142:22 157:8 160:4 161:11 163:9 166:8 170:4 171:1 | | **roth**(2) 9:45 9:45 | | **school**(1) 89:10 | |
| **rendition**(1) 126:4 | | | | **rothschild**(1) 4:38 | | **schotz**(1) 1:34 | |
| **reorganization**(2) 60:16 75:11 | | | | **rough**(2) 77:6 158:4 | | **schoulder**(1) 10:22 | |
| **repeat**(2) 19:23 71:2 | | | | **royal**(1) 9:8 | | **schulte**(2) 9:45 9:45 | |
| **repeated**(2) 26:9 95:5 | | **responses**(3) 144:14 149:8 161:20 | | **rudnick**(3) 3:19 70:24 121:5 | | **schuylkill**(1) 1:46 | |
| **reply**(2) 113:13 141:7 | | **responsive**(56) 11:8 11:21 12:7 12:13 12:19 12:23 13:2 13:7 13:13 13:22 13:25 16:1 17:7 18:6 18:17 19:8 19:9 19:22 20:9 22:18 23:8 23:13 23:15 23:19 24:1 24:17 26:10 27:21 28:1 28:2 28:7 28:15 28:17 30:14 30:15 31:10 31:22 32:4 32:5 32:6 33:21 33:23 33:24 33:25 34:1 37:24 41:13 47:1 47:17 64:23 72:6 94:8 163:17 164:2 164:8 165:7 | | **rudy**(1) 58:1 | | **scope**(5) 77:1 89:3 91:11 119:3 168:1 | |
| **report**(85) 26:14 34:10 50:3 51:4 71:22 81:8 82:20 82:22 82:25 83:1 83:6 83:11 83:11 83:13 83:19 83:25 85:18 86:8 86:13 86:13 87:5 87:6 87:14 87:18 92:9 92:25 93:4 93:8 94:1 94:8 94:10 95:21 96:2 96:5 97:10 97:23 98:2 98:4 104:5 104:7 106:14 109:3 113:3 113:7 113:20 114:2 114:10 114:18 120:13 120:20 125:18 125:19 126:2 126:12 126:24 127:4 127:15 127:16 127:17 127:18 127:20 127:23 128:12 130:6 130:8 130:15 131:9 131:15 131:25 132:12 133:2 133:17 139:18 139:20 139:22 147:6 150:11 150:19 150:21 150:22 152:1 152:7 161:15 161:15 168:2 | | | | **ruled**(4) 49:19 61:24 83:11 112:8 | | **scotland**(1) 9:8 | |
| | | | | **ruled**(4) 13:17 14:17 20:16 125:1 | | **scott**(4) 4:48 9:20 10:17 74:8 | |
| | | | | **ruling**(11) 13:18 39:2 40:13 40:24 41:2 103:9 103:10 117:17 117:19 117:24 128:1 | | **scream**(1) 72:17 | |
| | | | | | | **scripsi**(24) 24:15 24:15 | |
| | | **rest**(1) 52:5 | | **rulings**(4) 32:3 32:8 33:9 157:3 | | **seated**(2) 11:2 78:22 | |
| | | **restrict**(4) 122:2 122:13 126:12 126:14 | | **run**(4) 29:21 41:17 125:21 136:3 | | **second**(21) 20:8 20:16 32:25 41:8 45:1 45:4 46:16 50:4 52:8 62:7 64:6 71:14 73:13 73:23 88:22 91:7 97:16 107:8 112:11 119:4 130:11 | |
| | | **restriction**(1) 124:12 | | **running**(2) 99:23 99:24 | | | |
| **reported**(2) 64:8 90:19 | | **restrictions**(2) 122:8 128:20 | | | | | |
| **reporter**(1) 117:2 93:24 | | **restructuring**(2) 32:24 34:14 | | **sachs**(1) 9:20 | | | |
| **reports**(13) 114:17 114:22 131:19 131:21 131:23 132:2 132:17 136:11 137:25 138:1 138:3 147:23 150:1 | | **result**(11) 15:18 25:25 37:2 50:21 51:6 51:12 58:2 135:19 154:12 158:13 158:24 | | **safely**(1) 87:15 | | **secondly**(1) 133:24 | |
| | | | | | | **secret**(1) 112:4 | |
| **represent**(4) 33:3 91:9 121:12 169:17 | | **results**(2) 51:2 162:2 | | | | | |
| **representativ**(3) 22:2 29:11 89:15 | | **retention**(1) 169:3 | | | | | |
| | | **return**(4) 25:24 40:12 77:22 157:17 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| section(5) 14:5 16:7 16:18 53:25 61:20 | | settling(2) 22:13 102:8 | | silly(1) 169:13 | | sooner(4) 133:21 143:18 143:20 166:12 | |
| sections(1) 18:5 | | seven(6) 3:22 73:21 74:2 80:9 125:16 135:22 | | silver(1) 8:39 | | soros(1) 9:17 | |
| securities(2) 8:5 45:16 | | | | silvermine(1) 9:23 | | sorry(11) 24:22 25:8 29:4 35:15 67:13 91:23 114:8 114:14 114:15 118:8 162:13 | |
| see(39) 16:7 17:1 20:2 27:4 36:16 47:18 50:2 51:18 54:12 62:2 62:4 79:6 83:19 109:17 117:4 121:15 122:6 123:24 131:4 131:9 138:3 140:24 141:12 141:20 141:21 143:10 144:6 146:24 151:25 153:4 153:9 155:3 155:4 156:13 157:19 160:6 160:17 160:18 164:13 | | several(7) 19:24 47:5 57:17 57:18 90:24 118:19 153:2 | | silverstein(11) 3:5 10:14 41:21 41:21 41:24 42:5 165:13 165:13 165:16 165:24 166:4 | | sort(9) 11:8 11:15 26:5 57:19 77:23 79:20 80:1 89:16 112:6 | |
| | | shachar(1) 8:24 | | simes(1) 7:16 | | |
| | | shai(1) 7:11 | | similar(4) 45:1 122:7 124:2 127:13 | | sottile(6) 2:24 166:12 166:19 166:22 169:4 169:11 | |
| | | shall(1) 44:17 | | similarly(2) 15:22 123:20 | | |
| | | shape(1) 129:2 | | simple(3) 51:13 62:4 66:3 | | sound(2) 1:51 171:8 | |
| seek(3) 59:23 139:11 168:8 | | shapiro(3) 106:11 106:20 107:12 | | simply(9) 28:5 29:17 56:21 57:14 82:14 95:7 132:8 136:7 143:13 | | sounds(3) 100:9 131:19 132:7 | |
| seeking(14) 69:3 69:3 82:5 82:9 82:10 82:11 88:22 91:11 122:13 123:8 127:2 167:15 167:21 168:10 | | shapiro's(1) 106:10 | | | | south(2) 1:30 4:33 | |
| | | share(8) 59:25 60:23 71:11 74:1 74:24 122:19 153:15 156:12 | | since(4) 59:18 121:18 121:20 124:14 | | southern(3) 142:1 143:4 155:8 | |
| | | | | single(3) 113:17 164:17 165:9 | | spackle(1) 90:5 | |
| seem(4) 62:15 132:14 132:18 150:12 | | | | sir(1) 41:23 | | spaeder(1) 2:23 | |
| seemed(1) 33:10 | | shared(1) 60:25 | | sit(3) 131:16 133:20 139:21 | | spansion(2) 102:4 126:15 | |
| seems(9) 13:20 51:9 52:17 70:2 75:23 76:9 151:8 154:10 161:12 | | shares(1) 52:11 | | sitting(1) 109:20 | | spare(1) 141:16 | |
| | | sharing(12) 20:25 21:2 21:5 21:7 21:11 61:9 97:4 97:16 98:9 99:2 102:13 123:10 | | situation(3) 26:20 38:4 57:20 | | speak(6) 84:20 100:7 100:8 102:1 115:21 154:22 | |
| seen(7) 43:16 53:15 55:13 95:11 122:4 131:10 145:6 | | | | six(1) 12:21 | | |
| | | | | sizing(1) 101:10 | | speaking(1) 131:3 | |
| seife(1) 9:32 | | shaya(1) 7:37 | | skepticism(1) 97:15 | | special(4) 8:48 44:11 106:11 107:3 | |
| selber(1) 3:5 | | she's(1) 117:12 | | skin(2) 26:1 57:16 | | species(1) 128:8 | |
| selected(1) 134:18 | | sheet(1) 35:16 | | slight(1) 45:19 | | specific(9) 17:9 24:23 26:15 31:21 67:25 78:8 83:5 135:2 137:13 | |
| send(3) 26:23 36:11 155:11 | | shenanigans(1) 109:3 | | slightly(1) 24:3 | | |
| senior(14) 14:12 16:1 16:2 17:24 18:2 20:22 20:23 21:16 45:17 48:14 55:24 74:23 123:8 162:4 | | sheron(2) 5:13 129:8 | | small(2) 28:1 62:11 | | specifically(5) 14:2 42:1 81:1 132:20 | |
| | | sherri(1) 171:13 | | smaller(1) 169:2 | | spectrum(2) 49:21 51:3 | |
| | | shield(1) 105:7 | | socal(1) 10:20 | | speculate(1) 17:11 | |
| | | shift(1) 91:13 | | socal's(1) 89:15 | | speculation(2) 17:13 17:16 | |
| sense(12) 59:13 60:23 65:14 86:24 88:3 115:12 118:14 134:3 142:2 142:5 143:8 144:7 | | shocked(1) 106:19 | | soham(1) 10:21 | | spend(7) 58:22 72:25 89:24 90:24 91:4 91:24 136:22 | |
| | | shoot(1) 60:4 | | solely(1) 57:9 | | |
| | | short(3) 103:18 104:19 109:23 | | solicit(1) 45:10 | | spent(4) 83:24 88:8 94:12 136:1 | |
| sensing(1) 164:1 | | shortcut(1) 110:2 | | solicitation(46) 11:12 11:12 11:14 39:13 41:18 44:23 44:25 45:8 45:18 45:23 46:1 46:10 52:9 52:10 52:22 54:5 55:19 57:1 57:7 58:10 60:10 60:24 64:7 64:9 66:9 66:16 71:11 71:17 74:1 75:12 77:14 77:21 79:11 94:18 157:20 158:3 158:6 158:12 158:18 158:20 159:13 160:1 160:2 161:2 162:23 162:24 | | spoliation(1) 107:9 | |
| sensitivities(1) 151:12 | | shorten(2) 168:13 169:9 | | | | sponsored(1) 60:7 | |
| sent(3) 11:21 60:11 152:18 | | shortly(2) 72:12 122:3 | | | | spot-on(1) 93:19 | |
| sentence(9) 16:13 20:16 23:17 25:17 25:18 29:23 37:15 37:21 79:1 | | should(90) 17:17 21:14 22:14 23:9 23:9 26:21 27:5 27:15 27:15 28:10 31:25 41:2 42:2 42:13 42:18 46:23 51:24 52:14 52:22 53:8 54:2 54:10 64:9 64:15 68:16 68:19 68:23 68:23 68:24 70:25 73:4 73:10 73:13 74:14 74:15 75:5 75:6 75:9 75:24 76:5 76:6 77:6 82:23 83:1 83:5 88:4 88:5 91:19 93:20 99:19 103:23 104:20 105:16 108:1 108:18 108:20 111:10 112:2 112:12 112:14 113:16 113:19 115:20 116:7 119:9 119:18 120:14 120:22 121:23 128:18 128:20 129:24 129:25 130:3 132:1 133:6 138:11 138:20 139:19 144:2 146:12 150:2 151:2 151:10 151:16 156:16 158:23 160:20 164:25 167:10 | | spring(1) 86:3 | |
| | | | | soliciting(2) 44:21 74:12 | | spurious(1) 111:25 | |
| | | | | solid(1) 136:13 | | square(3) 2:41 3:22 5:29 | |
| sentences(5) 20:5 25:2 26:7 28:19 28:20 | | | | solution(2) 57:18 75:19 | | squish(1) 107:7 | |
| senter(2) 7:40 7:41 | | | | solvency(11) 98:2 98:8 103:9 108:20 108:22 109:2 109:4 110:16 116:7 116:21 116:22 | | stage(2) 128:24 154:20 | |
| sentiment(2) 33:4 86:13 | | | | | | staggering(1) 61:2 | |
| sentiments(2) 33:7 33:15 | | | | solvent(3) 97:22 97:24 112:1 | | stand(6) 14:10 72:1 72:3 78:18 112:16 133:8 | |
| separate(16) 19:3 20:13 20:17 20:24 48:22 50:16 64:17 73:17 79:20 97:5 106:17 106:18 164:5 165:17 165:17 165:21 | | | | some(64) 12:12 12:13 12:23 22:4 24:23 37:5 41:1 41:17 46:25 52:22 53:8 53:8 56:7 57:22 65:6 75:9 75:9 76:21 77:11 77:13 77:16 77:21 80:11 83:20 86:19 92:10 92:11 94:3 97:11 100:2 100:9 109:15 120:1 121:11 121:11 121:12 122:1 122:15 123:16 129:18 132:12 133:24 135:12 135:21 138:21 138:23 140:16 143:19 146:8 152:11 152:25 153:9 154:6 154:24 154:25 156:14 156:16 156:21 156:22 158:2 160:18 167:12 168:5 169:1 | | standard(7) 89:24 90:1 90:8 90:11 92:3 141:16 143:9 | |
| | | shouldn't(8) 59:23 60:3 73:5 83:2 89:19 129:20 151:11 154:14 | | | | |
| | | | | | | standards(1) 122:5 | |
| separately(5) 42:13 75:20 79:21 124:6 165:21 | | shouldn't(1) 87:11 | | | | standing(7) 29:24 90:21 143:16 162:20 166:17 166:23 167:16 | |
| | | show(7) 68:3 69:17 103:16 125:3 140:8 140:19 152:14 | | | | |
| | | | | | | stands(2) 14:18 106:4 | |
| september(1) 107:18 | | showing(2) 51:10 134:2 | | somebody(3) 36:3 76:1 162:12 | | stanley(1) 7:9 | |
| serious(3) 33:2 80:23 99:18 | | shown(1) 51:24 72:18 73:5 | | somebody's(3) 36:4 141:18 148:15 | | stargatt(1) 4:22 | |
| seriously(3) 33:2 33:14 156:12 | | shows(4) 16:20 28:15 46:15 68:1 | | someday(1) 59:18 | | stark(1) 123:21 | |
| served(2) 111:7 134:24 | | shredding(2) 107:13 107:19 | | somehow(3) 12:1 63:21 84:9 | | start(15) 13:18 30:13 70:10 73:15 80:13 89:23 101:7 137:20 138:12 140:11 140:18 140:20 152:23 152:24 159:22 | |
| service(2) 1:45 1:52 | | shudder(1) 40:20 | | someone(4) 41:19 73:6 121:15 148:16 150:18 163:4 | | |
| services(1) 1:45 | | shut(2) 112:5 113:6 | | | | |
| session(1) 118:19 | | sic(2) 40:4 132:23 | | someone's(1) 29:15 | | started(4) 32:24 89:7 125:15 146:22 | |
| set(31) 13:22 14:16 14:17 23:11 24:11 40:16 52:18 54:23 61:25 68:21 76:16 76:20 77:21 78:6 78:7 106:12 107:17 125:11 137:6 137:8 139:9 142:10 142:14 143:21 157:10 157:14 157:15 160:24 166:25 167:19 170:3 | | side(6) 37:16 37:19 100:24 120:19 142:4 153:15 | | | | starters(1) 108:16 | |
| | | | | something(27) 18:1 18:3 20:4 26:18 28:10 36:9 40:8 41:15 53:2 67:4 67:10 69:15 71:15 72:22 82:5 93:1 100:21 136:3 138:10 138:15 144:6 147:3 150:18 150:20 159:18 160:13 160:23 | | starting(4) 32:24 133:21 135:3 | |
| | | sides(1) 105:7 | | | | starts(2) 16:10 107:18 | |
| | | sidley(8) 1:25 6:10 44:19 75:13 77:19 79:16 106:16 157:25 | | | | state(5) 20:15 36:14 43:1 84:3 103:11 | |
| | | | | | | stated(2) 21:14 93:21 | |
| | | siegel(11) 3:21 121:3 121:4 121:17 126:18 126:23 127:13 128:17 130:7 156:8 157:5 | | sometimes(6) 41:6 72:16 116:17 116:17 124:15 142:13 | | |
| setting(4) 116:10 117:21 143:14 163:12 | | | | | | |
| settle(3) 91:23 107:2 143:19 | | | | somewhat(5) 37:2 47:25 49:12 59:14 59:20 | | |
| settled(2) 87:2 92:7 | | sieger(1) 10:32 | | somewhere(4) 137:7 137:8 148:14 152:23 | | |
| settlement(50) 17:20 17:22 17:25 20:23 21:10 21:24 28:24 35:5 35:8 36:5 37:12 84:7 85:5 85:8 86:5 86:16 86:19 86:23 87:1 87:11 88:4 88:6 88:19 90:15 93:9 93:12 93:22 94:15 100:22 100:23 101:10 102:2 102:6 102:10 104:13 104:19 104:21 105:16 105:23 106:13 106:24 107:1 107:14 107:15 115:21 122:23 125:4 129:17 153:17 | | signed(5) 35:19 35:19 70:15 114:25 169:15 | | soon(2) 58:15 76:21 | | |
| | | significant(4) 56:7 85:2 94:10 131:20 | | | | |
| | | significantly(1) 50:18 | | | | |
| | | signs(1) 169:21 | | | | |
| settlements(4) 82:2 82:13 85:14 102:17 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| statement(71) 11:8 11:20 12:7 12:8 12:13 12:19 13:7 13:14 14:23 14:24 15:15 15:25 16:1 18:6 18:9 18:21 19:8 19:9 19:14 19:21 20:9 20:13 20:17 21:20 22:6 22:18 23:15 23:20 24:2 26:11 26:25 27:21 28:1 28:2 28:12 28:15 28:17 29:15 29:22 29:24 30:15 31:10 31:22 31:22 32:4 32:6 33:24 33:25 34:1 37:24 41:13 42:23 43:5 44:6 55:13 56:12 67:25 69:12 72:6 73:1 82:7 89:16 119:11 120:11 133:15 157:14 161:22 163:12 170:2 | submit(7) 15:18 17:16 42:20 60:14 88:1 94:9 150:10 | suspect(7) 19:22 51:6 55:21 58:11 110:11 111:19 164:18 | testimony(8) 82:19 85:11 97:13 106:2 106:19 113:1 116:24 132:25 |
| statements(36) 11:8 11:21 12:25 13:2 13:22 13:25 18:8 18:17 18:18 18:19 19:7 19:21 20:2 22:12 22:12 23:8 23:13 28:7 30:14 32:6 33:22 33:23 47:2 47:17 47:17 64:23 88:21 93:24 94:8 132:12 163:17 164:3 164:8 164:25 165:8 169:14 169:17 | submitted(5) 12:20 12:22 28:2 70:8 149:16 submitting(1) 145:21 subordinated(1) 53:16 subordination(4) 122:18 122:24 123:4 123:23 | sweetwater(1) 58:1 sword(1) 53:3 system(4) 50:4 50:9 50:10 63:19 tabak(1) 8:4 tabs(1) 164:10 | testing(1) 128:7 tests(1) 108:22 text(6) 14:3 14:4 17:8 17:18 18:8 44:7 49:20 51:8 53:9 55:18 60:14 62:21 64:13 67:11 67:15 68:9 71:23 72:1 72:21 73:1 |
| states(3) 1:1 1:21 132:20 station(1) 14:19 statistician(1) 51:8 statistics(1) 51:8 status(2) 32:23 75:6 statutory(2) 59:22 60:20 stay(1) 76:19 stearn(1) 2:40 stein(1) 10:38 stem(1) 80:1 stems(1) 53:17 step(68) 5:18 12:18 13:7 13:13 13:20 14:1 14:14 14:22 15:1 15:3 15:8 15:18 15:22 16:3 17:19 17:20 17:21 17:23 17:24 17:25 17:25 18:5 18:7 18:16 20:10 20:10 21:6 21:8 21:9 21:12 21:17 21:17 21:18 21:24 21:25 22:2 23:22 33:24 35:15 35:16 40:25 40:25 41:9 41:9 43:15 54:20 57:17 72:6 78:24 84:14 94:23 95:18 98:19 108:18 108:19 108:20 108:21 108:22 108:23 109: 110:15 112:22 122:18 122:19 122:20 146:3 162:7 169:16 | subpoena(2) 112:14 112:19 subscribe(1) 89:10 subsection(1) 150:9 subsequent(1) 26:10 subsequently(3) 16:19 24:4 58:7 subset(1) 16:3 subsidiaries(4) 55:23 68:4 68:6 69:13 subsidiary(10) 14:4 14:23 15:1 15:5 15:15 15:17 15:16 35:20 165:23 166:1 substance(2) 155:16 156:6 substantial(2) 80:23 159:2 substantially(3) 64:19 65:1 93:11 substantive(3) 14:20 24:11 26:12 substitute(1) 25:13 subtext(1) 26:5 success(7) 101:17 101:24 103:16 108:15 109:8 109:18 116:11 successful(2) 48:24 52:18 such(9) 17:22 47:24 71:8 93:23 95:24 123:13 123:14 151:6 159:1 | tabak(1) 8:4 tabs(1) 164:10 tabulate(2) 45:10 62:3 tabulated(1) 165:21 tabulating(2) 44:21 165:22 tabulation(11) 50:3 50:23 51:4 52:11 65:13 66:25 161:15 161:15 162:23 162:25 162:25 tactics(3) 37:17 89:9 89:13 taken(36) 11:10 11:11 13:21 27:13 27:18 45:8 57:25 61:14 72:7 72:9 74:9 76:14 77:6 79:4 89:12 92:1 95:18 106:13 106:14 108:13 110:5 110:23 112:16 112:22 118:2 124:12 124:22 127:5 129:4 136:5 138:5 144:5 147:17 153:13 153:24 165:2 taken(8) 33:14 40:1 62:25 78:20 85:2 95:5 100:15 102:12 takes(2) 33:2 67:6 taketh(1) 113:15 taking(7) 13:12 45:19 55:25 56:3 105:7 147:13 154:22 talk(14) 43:15 83:22 101:3 111:5 112:1 117:14 119:14 125:7 142:18 150:8 153:9 155:4 157:23 160:4 talked(7) 39:20 48:1 65:11 67:25 79:24 85:12 124:20 talking(7) 16:6 77:13 107:6 108:6 123:22 156:10 162:21 taste(1) 89:8 tax(1) 52:23 taylor(1) 4:22 team(1) 13:8 technical(1) 47:6 technically(2) 150:22 169:14 ted(1) 9:17 tee(2) 77:4 153:3 teleconference(1) 142:15 telephone(2) 141:20 142:10 telephonic(5) 6:1 7:1 8:1 9:1 10:1 tell(34) 21:17 21:23 22:9 22:14 25:7 27:15 30:18 30:23 33:19 36:25 38:19 41:2 42:13 46:19 66:23 77:13 92:12 104:6 111:17 113:8 119:8 119:25 120:6 121:21 129:1 129:3 134:16 136:15 137:10 141:14 141:2 144:2 148:16 155:19 telling(9) 20:25 27:14 36:9 36:12 60:19 105:25 112:10 112:12 113:19 ten(4) 140:7 140:17 140:21 156:17 tend(1) 146:1 tendency(1) 39:24 tenor(1) 25:1 tens(1) 73:19 tentatively(1) 76:16 term(5) 35:15 35:16 39:23 59:21 97:20 termination(1) 60:17 terminology(1) 47:1 terms(28) 11:20 12:25 34:7 36:10 40:19 41:18 42:25 43:3 47:3 47:21 48:7 48:12 48:21 56:15 57:1 57:10 106:21 109:8 116:15 116:16 120:1 140:5 140:10 142:20 145:24 146:22 150:7 167:6 tested(1) 135:13 testify(2) 112:21 115:24 | 89:24 90:7 94:14 103:2 107:1 116:7 120:18 125:19 128:20 130:16 132:8 133:19 133:21 134:9 135:17 138:4 138:17 140:2 143:18 161:7 169:16 170:14 thank(63) 18:13 18:14 22:15 22:16 30:6 30:7 31:5 31:6 39:16 40:12 41:5 41:11 43:22 44:16 52:2 52:3 61:4 61:5 66:6 71:24 72:3 72:10 72:13 74:5 74:7 74:15 74:17 75:12 75:25 76:3 78:12 78:16 79:12 79:13 84:16 85:20 85:22 88:13 88:14 94:20 94:21 98:20 98:21 99:9 120:24 121:4 129:6 129:7 130:17 130:18 132:3 132:4 149:12 153:2 153:6 157:5 161:13 162:18 163:7 166:5 169:11 169:23 170:23 171:2 that(301) 11:7 11:10 11:24 11:25 11:25 12:1 12:3 12:8 12:15 12:17 12:22 12:25 13:3 13:8 13:14 13:17 13:18 13:19 13:20 14:21 14:24 15:5 15:9 15:10 15:13 15:15 15:18 15:19 15:23 16:1 16:6 16:9 16:13 16:16 16:17 16:20 16:24 17:3 17:9 17:10 17:15 17:17 17:17 18:2 18:3 18:4 18:6 18:8 18:11 18:23 18:25 19:3 19:10 19:13 20:1 20:3 20:3 20:4 20:11 20:11 20:14 20:14 20:16 21:1 21:3 21:10 21:13 21:20 22:3 22:5 22:25 23:2 23:5 23:5 23:8 23:10 23:11 23:12 23:17 23:18 23:19 23:21 23:22 23:25 24:1 24:4 24:4 24:13 24:16 24:20 25:2 25:3 25:16 25:19 26:2 26:6 26:6 26:7 26:16 26:20 27:1 27:2 27:7 27:8 27:19 28:2 28:4 28:10 28:12 28:14 28:20 29:14 29:15 29:17 29:17 29:21 29:23 30:1 30:13 30:16 30:20 30:20 30:21 32:4 32:7 32:9 32:11 32:12 32:19 33:4 33:6 33:7 33:11 33:12 33:13 33:16 33:19 34:3 34:11 34:15 34:19 34:25 35:6 35:8 35:13 35:18 35:22 35:25 36:3 36:6 36:16 37:1 37:4 37:4 37:5 37:19 38:1 38:2 38:9 38:12 38:15 38:16 38:20 39:1 39:3 39:4 39:22 39:23 39:25 40:2 40:3 40:5 40:6 40:7 40:7 40:13 40:16 40:23 41:2 41:3 41:13 41:15 41:17 42:13 42:14 42:16 42:17 42:19 42:22 42:24 43:1 43:3 43:9 43:16 44:12 43:22 44:2 44:5 44:7 44:8 44:10 44:12 44:13 44:19 45:4 45:4 45:8 45:9 45:19 45:25 46:2 47:8 47:10 47:13 47:14 47:18 48:5 48:9 48:12 48:14 48:15 48:20 49:2 49:2 49:8 49:15 49:18 49:18 49:24 49:25 50:1 50:6 50:8 50:10 50:12 50:14 50:19 50:25 51:2 51:3 51:6 51:10 51:15 51:23 51:24 51:25 52:4 52:10 52:14 52:20 52:21 52:24 53:2 53:3 53:4 53:7 53:10 53:16 53:24 53:25 54:2 54:3 54:5 54:9 54:10 54:12 54:18 54:19 54:19 54:20 54:21 54:22 54:24 54:25 55:2 55:3 55:4 55:8 55:9 55:10 55:12 55:13 55:14 55:21 56:13 56:15 56:21 57:3 57:5 57:8 57:11 |
| stephen(1) 3:6 stepped(1) 105:5 stick(1) 104:19 still(16) 12:15 12:15 12:21 15:7 38:2 47:9 77:20 100:8 100:12 113:12 114:23 118:15 123:24 135:22 146:11 146:17 | sue(1) 89:10 sufficient(14) 39:5 48:4 81:2 81:12 81:25 82:17 84:4 84:9 90:17 92:6 125:3 133:11 134:9 153:3 suggest(8) 26:2 28:4 32:18 71:6 75:9 84:8 138:17 161:5 | | |
| stipulate(2) 110:7 115:15 stipulation(3) 109:24 110:5 127:1 stop(5) 59:19 85:6 88:12 110:16 150:4 straight(4) 11:13 19:25 91:2 133:14 straightforward(2) 51:13 136:7 strategy(2) 100:21 103:22 strauss(5) 4:12 7:32 30:10 99:12 149:14 straw(1) 18:1 streamlined(1) 85:19 street(15) 1:12 1:37 1:46 2:6 2:25 2:42 3:8 3:15 3:28 3:42 4:25 4:41 5:6 5:21 5:30 stress(1) 101:17 stricken(1) 43:8 strictly(1) 40:23 strike(3) 18:5 25:2 41:7 strikes(2) 147:2 154:3 strip(1) 104:15 strokes(1) 120:1 strongly(1) 158:5 structured(1) 110:8 structuring(1) 133:23 stuff(8) 11:15 18:22 96:8 138:11 138:13 143:19 145:25 169:13 subject(10) 23:22 48:22 68:2 75:6 82:8 101:19 145:22 151:6 152:18 160:10 submission(3) 42:7 83:7 143:15 submissions(2) 138:6 145:3 | suggested(9) 33:8 47:15 63:20 75:7 120:2 138:24 153:1 161:19 161:23 suggesting(2) 82:7 156:5 suggestion(2) 52:24 76:2 suggestions(2) 31:25 92:9 suggests(1) 140:14 suit(1) 144:3 suite(8) 1:38 2:6 2:26 3:15 3:28 4:34 4:42 5:30 suits(1) 144:3 sullivan(2) 3:13 3:14 sum(2) 89:5 94:9 summarize(1) 78:24 sums(1) 94:11 suneel(1) 10:8 supplant(1) 106:21 support(12) 25:24 29:2 29:7 35:1 54:3 84:21 86:5 86:5 144:16 145:11 162:7 162:8 supported(3) 35:6 35:11 101:22 supporter(1) 88:6 supporting(2) 26:6 81:15 suppose(2) 23:20 26:23 supposed(2) 128:1 143:17 supreme(2) 101:8 101:13 sure(30) 11:24 19:25 22:25 30:13 31:3 31:8 44:14 51:4 51:20 69:18 70:5 73:24 78:4 95:16 96:20 98:16 105:19 114:9 115:18 117:1 117:18 119:21 122:16 136:5 136:17 146:10 149:5 156:23 158:14 167:8 surely(1) 112:20 surface(1) 113:13 surprised(2) 24:3 125:16 surprising(1) 113:24 surrounding(1) 98:19 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 57:12 57:15 57:16 57:18 57:23 57:25 58:1 58:7 58:11 58:16 58:17 58:19 58:25 59:2 59:3 59:15 59:17 59:18 59:21 60:8 60:11 60:16 60:19 60:21 60:24 62:6 60:25 61:14 61:15 61:22 61:23 61:24 62:6 62:12 62:17 62:23 63:2 63:2 63:3 63:4 63:16 63:18 63:20 63:22 64:1 64:15 64:18 64:21 64:23 64:24 65:6 65:7 65:7 65:8 65:16 65:23 66:3 66:3 66:7 66:10 66:10 66:11 66:12 66:12 66:13 66:20 67:2 67:5 67:6 67:7 67:16 67:25 68:1 68:18 68:23 68:23 69:4 69:6 69:15 69:19 69:19 69:22 69:24 70:5 70:6 70:7 70:8 70:12 70:19 71:3 71:4 71:6 71:12 71:13 71:15 71:18 71:18 71:20 71:22 71:23 72:2 72:7 72:9 72:15 72:19 72:21 73:7 73:8 73:13 73:23 73:25 74:11 75:1 75:7 75:8 75:9 75:15 75:24 75:24 76:4 76:5 76:5 76:8 76:18 76:19 76:21 76:23 76:23 76:24 77:1 77:1 77:3 77:4 77:6 77:12 77:15 77:17 77:20 77:21 77:23 78:1 78:3 78:14 78:15 79:1 79:21 80:6 80:8 80:11 80:14 80:16 80:24 81:6 81:14 81:18 81:20 82:7 82:15 82:16 82:17 82:23 82:23 82:24 82:25 82:25 83:1 83:2 83:3 83:4 83:7 83:9 83:12 83:20 84:3 84:5 84:8 84:8 84:8 84:11 84:11 84:11 84:12 84:23 85:1 85:6 85:6 85:7 85:9 85:14 85:18 86:3 86:6 86:6 86:7 86:10 86:13 86:20 86:21 86:24 86:24 87:2 87:6 87:10 87:10 87:15 87:16 87:19 88:1 88:5 88:5 88:6 88:7 88:12 88:19 88:25 89:2 89:9 90:1 90:6 90:10 90:11 90:13 90:14 90:21 91:8 91:21 92:9 92:12 92:17 93:2 93:3 93:7 93:16 93:22 93:24 94:1 94:4 94:9 94:17 95:4 95:21 96:3 96:4 96:6 96:8 96:12 96:20 97:3 97:10 97:18 97:22 97:23 97:24 98:1 98:5 98:6 98:9 98:13 99:5 99:6 99:7 99:16 99:18 99:20 99:23 100:8 100:14 100:16 100:17 100:21 100:23 101:9 101:9 101:21 102:4 102:5 102:5 102:7 102:13 102:14 102:17 102:18 102:21 103:4 103:6 103:8 103:21 104:3 104:7 104:11 104:11 104:12 104:18 105:8 105:15 105:20 105:2 106:2 106:3

**that**(301) 106:11 106:20 106:23 107:2 107:8 107:11 107:14 107:16 108:14 108:1 109:1 109:5 109:11 109:11 109:11 109:1 109:18 109:24 110:1 110:3 110:5 110:7 110:10 110:13 111:5 111:5 111:8 111:16 111:18 111:20 111:21 111:24 111:25 112:3 112:9 112:9 112:9 112:17 112:21 112:24 113:23 113:24 113:25 114:4 114:15 114:16 114:16 114:25 115:4 115:4 115:6 115:7 115:8 115:8 115:9 115:15 115:16 115:20 115:22 116:8 117:20 118:2 118:18 118:18 118:22 118:22 119:1 119:4 119:12 119:12 119:13 120:4 120:9 120:11 120:12 120:14 120:14 120:1 120:18 120:22 121:11 121:13 122:1 122:2 122:6 122:7 122:10 122:11 122:14 122:15 122:17 122:20 123:1 123:3 123:7 123:7 123:10 123:16 123:18 123:21 123:25 124:1 124:3 124:9 124:11 124:16 124:18 124:25 125:3 125:6 125:8 125:12 125:15 125:16 125:20 125:23 126:4 126:11 126:12 126:1 126:14 126:16 126:23 127:15 128:1 128:3 128:8 129:1 129:4 129:4 129:12 129:15 129:18 129:19 129:21 129:22 129:24 129:25 129:25 130:1 130:2 130:2 130:3 130:10 130:11 130:14 130:16 130:23 132:1 132:6 132:13 132:13 132:17 133:3 132:21 132:22 132:22 133:3 133:10 133:1 133:11 133:12 133:13 133:15 133:16 133:25 134:1 134:4 134:6 134:7 134:11 134:16 134:22 134:24 134:25 135:6 135:8 135:12 135:14 135:18 135:19 135:22 136:3 136:9 136:10 136:12 136:14 136:18 137:3 137:5 137:8 137:10 137:10 137:11 137:12 137:13 137:13 137:15 137:20 137:22 138:3 138:4 138:4 138:5 138:12 138:14 138:16 138:16 138:17 138:23 138:24 138:24 139:10 139:18 139:19 139:24 140:2 140:3 140:6 140:9 140:10 140:14 140:19 140:20 140:2 141:3 141:6 141:11 141:19 142:5 142:8 142:9 142:17 142:22 142:24 143:8 143:10 143:13 143:14 143:18 143:18 143:18 143:20 143:22 144:5 144:6 144:8 144:12 144:12 144:14 144:14 144:17 144:23 145:5 145:5 145:8 145:15 145:19 146:1 146:13 146:14 146:18 146:21 146:22 147:4 147:5 147:6 147:7 147:12 147:17 148:1 148:4 148:5 148:7 148:8 148:9 148:9 148:14 148:15 148:15 149:7 149:7 149:9 149:15 149:23 149:24 150:1 150:1 150:11 150:13

**that**(110) 150:14 150:18 150:24 151:16 151:20 151:25 152:14 152:15 152:23 152:24 153:14 153:16 153:17 153:23 153:23 154:2 154:3 154:8 154:10 154:10 154:12 154:13 155:1 155:2 155:7 155:7 155:15 155:17 156:5 156:5 156:11 156:21 156:22 156:24 156:24 157:3 157:16 157:1 157:17 157:19 157:22 158:4 158:6 158:7 158:8 158:11 158:15 158:19 158:25 159:3 159:4 159:12 159:15 160:4 160:21 160:23 160:23 161:2 161:4 161:10 161:13 161:14 161:18 161:19 161:20 161:23 162:9 162:1 162:15 162:15 164:1 164:12 164:14 164:23 165:3 165:6 165:6 165:7 165:16 165:20 165:25 166:2 166:3 166:4 167:2 167:3 167:8 167:9 167:12 167:13 167:14 167:15 167:22 167:24 168:3 168:5 168:9 168:10 168:10 168:11 168:14 168:16 168:21 168:22 169:9 169:18 170:10 170:20 171:2 171:7

**that's**(132) 11:16 13:25 14:4 15:24 16:13 17:2 17:17 17:22 19:9 19:18 19:25 22:24 25:8 25:10 27:3 30:5 34:23 35:13 36:9 36:20 37:22 38:8 38:19 46:21 52:4 53:10 53:25 54:1 56:11 59:22 61:15 62:19 63:10 63:18 66:24 67:22 68:9 68:15 70:16 73:16 74:4 75:1 75:2 75:15 77:23 78:14 79:23 80:18 80:25 81:4 81:16 81:16 83:3 83:15 85:20 89:18 89:18 91:19 92:18 93:19 96:24 100:5 101:24 103:4 103:22 104:1 104:3 104:22 106:4 106:20 107:18 108:10 108:1 109:7 111:1 117:12 112:23 113:2 114:15 115:23 117:11 117:24 118:2 118:6 119:4 120:13 121:12 122:22 123:1 123:9 123:24 125:11 125:21 127:9 128:15 130:15 131:2 132:10 132:19 139:15 139:18 141:1 142:1 142:1 142:16 142:25 143:7 143:16 143:20 147:1 147:1 148:10 148:22 151:13 151:23 153:4 153:2 154:11 155:17 155:22 155:24 156:1 156:18 156:20 157:2 161:17 163:6 163:13 164:24 169:8

**that's**(1) 165:11

**thau**(1) 8:4

**the**(301) 1:1 1:2 1:20 2:4 3:26 4:24 4:50 7:40 8:48 9:30 11:2 11:3 11:5 11:7 11:8 11:11 11:11 11:12 11:13 11:14 11:14 11:16 11:18 11:19 11:21 11:22 12:6 12:8 12:11 12:12 12:18 12:18 12:22 12:25 13:3 13:4 13:4 13:6 13:9 13:13 13:13 13:15 13:17 13:18 13:20 13:20 13:22 13:23 13:25 13:25 14:3 14:4 14:4 14:7 14:11 14:11 14:12 14:13 14:14 14:15 14:16 14:18 14:18 14:19 14:20 14:21 14:21 14:23 14:23 14:24 14:24 14:24 15:1 15:2 15:3 15:8 15:9 15:9 15:9 15:12 15:13 15:15 15:16 15:17 15:17 15:21 15:22 16:1 16:2 16:3 16:5 16:5 16:8 16:9 16:9 16:11 16:11 16:12 16:16 17:4 17:16 17:10 16:20 16:22 16:24 17:1 17:4 17:10 17:12 17:13 17:15 17:19 17:20 17:21 17:23 17:24 18:1 18:5 18:7 18:8 18:11 18:11 18:13 18:16 18:16 19:1 19:1 19:2 19:4 19:7 19:8 19:8 19:9 19:10 19:11 19:14 19:17 19:23 19:25 20:7 20:8 20:9 20:9 20:10 20:11 20:15 20:16 20:18 20:20 20:22 20:23 20:23 20:25 21:2 21:3 21:5 21:6 21:7 21:8 21:10 21:15 21:17 21:18 21:19 21:22 22:2 22:2 22:8 22:10 22:11 22:12 22:16 22:18 22:20 22:22 22:23 22:24 22:25 23:2 23:4 23:5 23:5 23:7 23:8 23:8 23:11 23:12 23:14 23:17 23:21 23:22 23:22 23:23 23:24 24:5 24:5 24:7 24:8 24:8 24:9 24:10 24:13 24:14 24:17 24:17 24:21 24:23 25:1 25:1 25:3 25:5 25:7 25:10 25:12 25:12 25:12 25:15 25:18 25:19 25:23 25:23 25:24 26:1 26:2 26:3 26:5 26:6 26:6 26:7 26:10 26:11 26:12 26:13 26:16 26:21 26:21 27:1 27:3 27:5 27:6 27:7 27:8 27:9 27:11 27:17 27:19 27:20 27:22 27:24 27:25 28:2 28:8 28:10 28:14 28:15 28:16 28:16 28:17 28:17 28:18 28:20 28:20 28:21 28:22 28:24 29:1 29:3 29:15 29:7 29:8 29:9 29:10 29:11 29:13 29:15 29:17 29:18 29:19 29:19 29:19 29:20 29:21 29:22 29:22 29:22 29:24 30:1 30:4 30:6 30:9 30:12 30:14 30:14 30:15 30:15 30:17 30:20 30:21 30:25 30:25 31:4

**the**(301) 31:6 31:8 31:9 31:9 31:10 31:10 31:13 31:14 31:15 31:17 31:19 31:20 31:21 31:23 31:24 32:4 32:5 32:9 32:10 32:10 32:10 32:12 32:13 32:15 32:16 32:17 32:17 32:19 32:22 32:23 33:3 33:5 33:6 33:7 33:10 33:11 33:11 33:12 33:13 33:13 33:15 33:16 33:17 33:18 33:18 33:18 33:19 33:22 33:24 33:24 33:25 34:2 34:4 34:5 34:6 34:6 34:9 34:9 34:10 34:11 34:11 34:12 34:13 34:13 34:14 34:15 34:15 34:18 34:19 34:19 34:20 34:21 34:21 34:23 35:1 35:2 35:2 35:4 35:4 35:5 35:6 35:7 35:8 35:10 35:10 35:11 35:13 35:13 35:15 35:16 35:16 35:18 35:19 35:19 35:20 35:23 35:24 35:25 36:1 36:3 36:3 36:5 36:6 36:8 36:11 36:15 36:16 36:17 36:21 36:22 36:24 36:25 37:2 37:7 37:8 37:8 37:9 37:10 37:11 37:12 37:12 37:14 37:14 37:14 37:15 37:18 37:21 37:23 37:23 37:24 37:24 37:25 38:1 38:2 38:5 38:6 38:8 38:8 38:10 38:10 38:13 38:15 38:16 38:16 38:18 38:22 38:23 39:1 39:4 39:4 39:5 39:9 39:9 39:10 39:12 39:13 39:14 39:17 39:19 39:20 39:20 39:23 39:25 39:25 40:3 40:5 40:8 40:9 40:12 40:13 40:13 40:15 40:18 40:18 40:19 40:22 40:24 40:24 40:24 40:25 41:7 41:7 41:8 41:8 41:9 41:10 41:12 41:14 41:16 41:18 41:19 41:20 41:22 41:23 42:1 42:2 42:3 42:4 42:5 42:7 42:7 42:8 42:9 42:10 42:11 42:11 42:12 42:13 42:14 42:16 42:17 42:18 42:19 42:20 42:22 42:24 42:25 42:25 42:25 43:4 43:5 43:5 43:10 43:10 43:12 43:12 43:14 43:14 43:15 43:15 43:17 43:20 43:20 43:21 43:25 44:3 44:6 44:10 44:11 44:13 44:15 44:16 44:18 44:20 44:21 44:23 44:23 44:24 44:25 45:1 45:1 45:2 45:3 45:6 45:7 45:8 45:9 45:12 45:13 45:15 45:16 45:17 45:17 45:18 45:18 45:20 45:21 45:23 45:23 45:24 45:25 45:25 46:2 46:4 46:5 46:6 46:6 46:6 46:8 46:10 46:10 46:10 46:13 46:13 46:17 46:17 46:18 46:19 46:21 46:22 46:23 46:24 46:25 47:1 47:1 47:2 47:3 47:4 47:5 47:7 47:8 47:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 47:10 47:12 47:14 47:15 47:16 47:17 47:20 47:21 47:22 47:23 47:24 48: 48:2 48:5 48:5 48:7 48:8 48:9 48:10 48:11 48:12 48:14 48:16 48:17 48:19 48:21 48:22 48:23 48:25 49:1 49:2 49:4 49:4 49:5 49:6 49:6 49:8 49:11 49:11 49:13 49:13 49:14 49:16 49:16 49:18 49:21 49:23 49:23 49:25 50:1 50:2 50:2 50:3 50:4 50:5 50:6 50:8 50:8 50:10 50:10 50:11 50:12 50:13 50:14 50:22 50:23 50:23 51:3 51:4 51:4 51:5 51:7 51:8 51:10 51:11 51:12 51:12 51:15 51:17 51:20 51:23 51:24 51:24 51:25 52:2 52:5 52:5 52:6 52:8 52:8 52:9 52:10 52:10 52:10 52:11 52:12 52:12 52:13 52:14 52:16 52:18 52:21 52:21 52:24 52:25 52:25 53:1 53:1 53:3 53:4 53:4 53:5 53:8 53:10 53:11 53:13 53:14 53:16 53:17 53:18 53:19 53:21 53:22 53:23 53:24 53:24 54:1 54:3 54:3 54:4 54:4 54:5 54:9 54:10 54:11 54:12 54:13 54:13 54:14 54:16 54:16 54:17 54:20 54:23 55:1 55:1 55:4 55:9 55:9 55:9 55:11 55:14 55:15 55:15 55:16 55:16 55:17 55:19 55:19 55:21 55:23 55:24 55:24 55:25 56:1 56:2 56:2 56:4 56:5 56:8 56:8 56:9 56:11 56:13 56:14 56:15 56:17 56:18 56:20 56:21 56:21 56:24 56:24 57:1 57:1 57:1 57:2 57:4 57:5 57:6 57:6 57:8 57:8 57:10 57:10 57:15 57:17 57:18 57:19 57:20 57:21 57:21 57:23 57:25 58:1 58:2 58:3 58:4 58:5 58:5 58:6 58:9 58:10 58:11 58:11 58:13 58:16 58:17 58:18 58:20 58:20 58:23 58:24 58:25 59:1 59:3 59:3 59:3 59:4 59:5 59:5 59:6 59:9 59:9 59:10 59:11 59:15 59:17 59:20 59:20 59:23 59:25 60:1 60:1 60:3 60:4 60:6 60:9 60:10 60:13 60:16 60:17 60:17 60:20 60:21 60:22 60:24 60:25 61:3 61:5 61:7 61:10 61:11 61:12 61:14 61:15 61:15 61:16 61:17 61:17 61:18 61:19 61:20 61:20 61:23 62:1 62:5 62:8 62:9 62:10 62:15 62:18 62:19 62:23 62:23 62:24 63: 63:4 63:5 63:7 63:8 63:10 63:12 63:12 63:14 63:15 63:17 63:20 63:20 | | **the**(301) 63:25 63:25 63:25 64:1 64:2 64: 64:6 64:6 64:6 64:8 64:11 64:12 64:14 64:14 64:15 64:17 64:18 64:19 64:21 64:22 64:22 64:23 64:24 64:24 64:24 64:24 65:2 65:2 65:6 65:6 65:10 65:10 65:11 65:11 65:12 65:13 65:14 65:14 65:17 65:18 65:18 65:22 65:23 65:25 65:25 66:2 66:6 66:8 66:8 66:8 66:10 66:11 66:13 66:14 66:15 66:16 66:17 66:19 66:22 66:23 66:23 66:23 66:25 66:25 67:1 67:2 67:6 67:9 67:11 67:11 67:14 67:18 67:20 67:21 67:23 67:24 68:1 68:4 68:4 68:5 68:5 68:6 68:8 68:8 68:10 68:11 68:13 68:13 68:19 68:19 68:22 68:22 68:24 68:25 69:2 69:4 69:4 69:8 69:8 69:9 69:9 69:10 69:10 69:12 69:15 69:16 69:19 69:20 69:20 69:22 69:23 69:24 69:25 70:1 70:1 70:2 70:4 70:5 70:6 70:6 70:7 70:7 70:7 70:8 70:8 70:9 70:9 70:10 70:10 70:12 70:13 70:16 71:4 71:7 71:9 71:10 71:10 71:11 71:13 71:14 71:16 71:18 71:19 71:24 72:2 72:4 72:5 72:6 72:7 72:10 72:12 72:15 72:16 72:19 72:22 72:24 73:1 73:5 73:6 73:6 73:11 73:13 73:14 73:15 73:17 73:20 74:3 74:3 74:5 74:7 74:9 74:10 74:11 74:14 74:15 74:17 74:19 74:20 74:22 74:22 74:23 74:24 74:24 75:1 75:6 75:8 75:9 75:11 75:14 75:15 75:15 75:16 75:16 75:17 75:19 75:19 75:21 75:22 75:22 76:1 76:2 76:4 76:5 76:7 76:10 76:10 76:11 76:13 76:14 76:15 76:16 76:20 76:23 76:24 76:25 77:1 77:7 77:8 77:8 77:9 77:14 77:14 77:15 77:21 77:22 77:22 77:25 78:2 78:4 78:5 78:7 78:7 78:7 78:8 78:10 78:13 78:15 78:17 78:18 78:21 78:23 78:24 79:3 79:3 79:5 79:8 79:9 79:10 79:13 79:16 79:17 79:17 79:18 80:1 80:2 80:3 80:6 80:6 80:10 80:11 80:12 80:13 80:14 80:16 80:17 80:19 80:20 80:22 80:23 80:24 80:24 80:25 81:1 81:1 81:2 81:3 81:4 81:5 81:5 81:8 81:11 81:14 81:15 81:16 81:17 81:18 81:18 81:20 81:20 81:23 81:24 81:24 81:25 81:25 82:2 | | **the**(301) 82:1 82:7 82:10 82:11 82:12 82:14 82:14 82:15 82:15 82:15 82:16 82:16 82:17 82:20 82:20 82:21 82:22 82:22 82:23 82:24 82:24 82:25 82:25 83: 83:5 83:6 83:6 83:11 83:11 83:12 83:13 83:15 83:16 83:19 83:22 83:24 84:1 84:2 84:3 84:3 84:3 84:4 84:5 84:5 84:6 84:7 84:9 84:11 84:12 84:13 84:16 84:19 84:22 84:22 84:23 85:1 85:4 85:5 85:7 85:8 85:9 85:11 85:13 85:13 85:14 85:15 85:15 85:17 85:22 86:2 86:3 86:4 86:5 86:5 86:7 86:8 86:10 86:11 86:12 86:13 86:14 86:18 86:19 86:19 86:20 86:21 86:22 87:6 87:8 87:9 87:11 87:13 87:16 87:17 87:17 87:18 87:19 87:20 87:20 87:20 87:21 87:23 88:1 88:2 88:4 88:6 88:7 88:8 88:9 88:11 88:14 88:18 88:19 88:21 88:21 88:24 88:24 88:25 88:25 89:1 89:6 89:6 89:10 89:14 89:15 89:20 89:22 89:22 89:23 89:24 89:25 90:6 90:8 90:9 90:10 90:12 90:15 90:16 90:16 90:16 90:17 90:20 90:20 90:20 90:25 91:2 91:3 91:5 91:8 91:9 91:10 91:10 91:11 91:11 91:13 91:13 91:16 91:18 91:18 91:19 91:20 91:22 91:24 91:25 92:3 92:4 92:6 92:6 92:7 92:8 92:9 92:12 92:13 92:13 92:14 92:14 92:15 92:16 92:17 92:18 92:19 92:21 92:21 92:24 92:24 92:25 93:4 93:4 93:7 93:7 93:8 93:9 93:10 93:10 93:12 93:12 93:14 93:14 93:16 93:18 93:19 93:22 93:22 93:25 94:5 94:6 94:7 94:8 94:9 94:11 94:11 94:12 94:12 94:12 94:17 94:18 94:21 94:22 95:5 95:5 95:6 95:11 95:16 95:18 95:20 95:20 95:21 95:23 96:1 96:1 96:2 96:4 96:8 96:9 96:15 96:19 96:20 96:25 97:2 97:3 97:6 97:8 97:8 97:8 97:9 97:12 97:12 97:13 97:14 97:18 97:18 97:19 97:19 97:23 98: 98:4 98:5 98:6 98:7 98:9 98:13 98:13 98:19 98:19 98:19 98:21 99:1 99:2 99:3 99:4 99:4 99:10 99:17 99:19 99:21 99:22 100:1 100:3 100:6 100:11 100:14 100:15 100:15 100:19 100:20 100:22 100:22 100:24 100:24 100:25 101:1 101:2 101:7 | | **the**(301) 101:8 101:8 101:9 101:11 101:11 101:12 101:13 101:14 101:16 101:17 101:19 101:20 101:21 101:23 101:23 101:24 101:24 101:25 102:1 102:1 102:2 102:7 102:7 102:9 102:9 102:10 102:11 102:11 102:13 102:13 102:14 102:16 102:18 102:20 102:22 103:1 103:2 103:4 103:5 103:6 103:6 103:7 103:7 103:8 103:11 103:11 103:11 103:14 103:15 103:16 103:17 103:18 103:22 103:23 103:23 103:24 104:1 104:4 104:5 104:5 104:7 104:7 104:10 104:11 104:12 104:12 104:13 104:13 104:15 104:15 104:17 104:18 104:19 104:19 104:19 104:21 104:23 105:4 105:5 105:5 105:6 105:8 105:8 105:9 105:13 105:13 105:14 105:17 105:17 105:18 105:19 105:21 105:22 105:22 105:23 105:24 106:3 106:5 106:9 106:10 106:11 106:11 106:12 106:13 106:15 106:14 106:14 106:16 106:15 106:15 106:16 106:16 106:19 106:20 106:21 106:21 106:22 106:22 106:23 107:2 107:3 107:3 107:4 107:5 107:7 107:8 107:9 107:10 107:10 107:11 107:11 107:13 107:15 107:16 107:19 107:20 107:21 107:21 107:22 107:24 107:24 107:25 108:3 108:6 108:8 108:9 108:9 108:10 108:11 108:11 108:12 108:13 108:14 108:15 108:17 108:18 108:19 108:19 108:20 108:21 108:22 108:22 108:23 108:24 108:25 109:1 109:1 109:2 109:3 109:4 109:4 109:8 109:10 109:10 109:11 109:14 109:15 109:16 109:16 109:18 109:19 109:20 109:21 109:22 109:22 109:23 109:24 109:25 110:1 110:3 110:4 110:4 110:6 110:7 110:8 110:9 110:10 110:10 110:13 110:15 110:15 110:16 110:18 110:20 110:22 110:23 110:25 111:3 111:4 111:5 111:7 111:8 111:8 111:9 111:10 111:11 111:11 111:12 111:14 111:15 111:15 111:16 111:18 111:19 111:23 111:25 112:1 112:4 112:9 112:11 112:16 112:16 112:18 113:1 113:3 113:5 113:5 113:6 113:9 113:15 113:17 113:19 113:21 113:21 113:22 114:1 114:3 114:5 114:6 114:10 114:13 114:15 114:19 114:21 114:24 114:25 115:1 115:2 115:4 115:6 115:6 115:8 115:13 115:18 115:20 115:21 115:21 115:22 115:23 115:24 116:1 116:5 116:6 116:10 116:11 116:11 116:12 116:14 116:17 116:20 116:20 116:20 116:23 116:23 117:1 117:3 117:6 117:8 117:8 117:14 117:14 117:15 117:16 117:18 117:19 117:21 117:21 117:24 117:24 118:3 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | 118:5 118:7 118:9 118:16 118:16 118:21 118:23 118:24 119:1 119:2 119:3 119:3 119:4 119:5 119:7 119:10 119:11 119:13 119:16 119:16 119:19 119:19 119:22 119:24 120:2 120:6 120:6 120:6 120:8 120:9 120:11 120:13 120:15 120:15 120:16 120:16 120:17 120:18 120:19 120:21 120:22 120:23 120:24 121:5 121:6 121:7 121:9 121:9 121:9 121:10 121:10 121:12 121:13 121:15 121:16 121:18 121:19 121:20 121:22 121:22 122:2 122:4 122:5 122:12 122:14 122:16 122:19 122:1 122:21 122:23 122:23 122:24 123:1 123:1 123:3 123:3 123:4 123:5 123:6 123:7 123:8 123:8 123:10 123:11 123:11 123:12 123:15 123:20 123:23 124:1 124:2 124:4 124:5 124:9 124:9 124:10 124:11 124:22 124:23 124:24 125:1 125:4 125:7 125:8 125:8 125:9 125:10 125:11 125:11 125:13 125:15 125:14 125:15 125:16 125:18 125:18 125:22 125:23 126:1 126:1 126:2 126:3 126:4 126:4 126:5 126:6 126:8 126:9 126:11 126:12 126:14 126:14 126:1 126:17 126:17 126:20 126:23 126:23 127:3 127:3 127:4 127:8 127:10 127:11 127:14 127:14 127:15 127:16 127:16 127:18 127:17 127:19 127:21 127:23 127:23 128:1 128:3 128:4 128:5 128:7 128:12 128:12 128:13 128:14 128:15 128:16 128:19 128:23 128:24 129:2 129:3 129:4 129:7 129:11 129:14 129:16 129:16 129:18 130:3 130:5 130:5 130:7 130:7 130:8 130:8 130:8 130:9 130:10 130:11 130:11 130:12 130:14 130:15 130:18 130:20 130:23 130:23 130:23 130:24 130:25 131:1 131:1 131:3 131:3 131:3 131:4 131:5 131:6 131:6 131:7 131:8 131:12 131:13 131:13 131:14 131:14 131:15 131:15 131:19 131:21 131:22 131:22 131:23 131:24 131:25 132: 132:8 132:11 132:12 132:12 132:16 132:16 132:17 132:17 132:18 132:19 132:22 132:23 132:24 132:24 133:1 133:2 133:5 133:6 133:11 133:15 133:17 133:17 133:19 133:20 133:24 133:25 134:4 134:6 134:15 134:16 134:23 134:24 135:4 135:7 135:7 135:8 135:12 135:15 135:19 135:19 135:22 135:23 136:2 136:3 136:6 136:13 136:15 136:18 136:21 137:2 137:3 137:6 137:10 137:10 137:17 137:17 137:2 137:25 138:1 138:1 138:2 138:4 138:5 138:6 138:6 138:8 138:12 138:13 138:16 138:19 138:21 138:22 138:22 | **the**(301) | 138:23 139:3 139:4 139:4 139:5 139:7 139:8 139:10 139:16 139:18 139:20 139:21 139:22 139:23 139:23 140:8 140:1 140:11 140:16 140:19 140:21 140:23 140:23 140:24 141:2 141:5 141:7 141:8 141:9 141:10 141:11 141:11 141:21 141:24 141:24 141:25 142:1 142:2 142:3 142:4 142:4 142:5 142:6 142:8 142:9 142:11 142:13 142:14 142:16 142:18 142:18 142:19 142:20 142:23 143:1 143:4 143:4 143:9 143:9 143:14 143:17 143:20 143:21 143:23 143:23 143:23 143:24 144: 144:1 144:3 144:5 144:8 144:9 144:9 144:17 144:20 145:1 145:5 145:6 145:7 145:9 145:9 145:9 145:11 145:13 145:18 145:18 145:23 145:24 146:1 146:5 146:8 146:11 146:12 146:14 146:15 146:15 146:17 146:20 146:21 146:24 147:1 147:3 147:5 147:6 147:11 147:11 147:12 147:13 147:15 147:15 147:19 147:20 147:22 147:22 147:23 147:25 148:2 148:6 148:9 148:12 148:14 148:14 148:19 148:21 148:23 148:24 149:3 149:7 149:8 149:15 149:15 149:15 149:19 149:22 149:22 149:24 149:25 150:1 150:3 150:7 150:8 150:9 150:10 150:11 150:12 150:13 150:1 150:15 150:17 150:19 150:20 150:22 150:24 151:4 151:6 151:7 151:9 151:9 151:11 151:17 151:18 151:19 151:21 151:23 151:25 152:1 152:2 152:5 152:6 152:7 152:8 152:9 152:10 152:12 152:12 152:13 152:14 152:15 152:15 152:16 152:17 152:18 152:20 152:22 153:5 153:8 153:8 153:14 153:14 153:14 153:16 153:1 153:16 153:17 153:17 153:18 153:20 153:22 153:24 153:25 154:2 154:10 154:2 154:18 154:21 155:2 155:3 155:4 155:6 155:6 155:7 155:8 155:10 155:11 155:12 155:13 155:14 155:16 155:17 155:19 155:20 155:22 156:3 156:6 156:7 156:10 156:11 156:14 156:15 156:18 156:20 156:21 157:1 157:3 157:6 157:9 157:10 157:11 157:12 157:13 157:15 157:19 157:19 157:20 157:21 157:25 158:1 158:2 158:2 158:3 158:5 158:6 158:6 158:11 158:14 158:15 158:16 158:19 158:20 158:20 158:20 158:21 158:23 158:24 158:25 159:5 159:6 159:8 159:10 159:11 159:11 159:12 159:13 159:13 159:14 159:15 159:16 159:16 159:17 159:18 159:19 159:19 159:20 159:20 159:22 159:22 159:23 159:25 159:25 160:2 160:3 160:5 160:5 160:5 160:10 160:12 160:15 | **the**(166) | 160:16 160:18 160:19 160:22 160:22 160:23 160:24 161:1 161:1 161:4 161:5 161:9 161:12 161:14 161:14 161:15 161:16 161:16 161:17 161:19 161:19 161:21 162:2 162:2 162:3 162:4 162:8 162:8 162:9 162:10 162:11 162:14 162:14 162:17 162:19 162:21 163:1 163:6 163:8 163:10 163:11 163:17 163:17 163:18 163:20 163:22 163:22 163:23 164:2 164:2 164:4 164:6 164:6 164:8 164:8 164:11 164:12 164:13 164:15 164:18 164:21 164:24 164:24 164:25 165:2 165:7 165:8 165:10 165:11 165:15 165:16 165:18 165:24 165:24 166:2 166:2 166:6 166:9 166:11 166:13 166:14 166:16 166:17 166:21 166:22 166:23 166:23 166:25 167: 167:2 167:4 167:4 167:4 167:5 167:6 167:6 167:8 167:13 167:14 167:15 167:16 167:16 167:17 167:17 167:17 167:17 167:19 167:20 167:22 168: 168:1 168:1 168:3 168:4 168:5 168:5 168:7 168:7 168:8 168:8 168:9 168:11 168:12 168:13 168:13 168:15 168:17 168:19 168:20 168:21 168:23 169:5 169:3 169:4 169:5 169:6 169:6 169:8 169:9 169:10 169:15 169:19 169:24 170:2 170:4 170:6 170:8 170:8 170:9 170:10 170:10 170:11 170:13 170:14 170:19 170:21 170:24 171:2 171:4 171:7 171:8 171:9 |  |  |
| **their**(113) | 13:23 14:8 15:21 17:10 17:16 18:7 18:20 19:2 19:3 19:15 19:19 19:20 19:22 20:5 20:10 20:12 20:17 20:17 20:2 21:11 21:22 22:8 24:1 26:4 26:24 28:1 29:8 29:12 30:2 33:20 34:17 34:25 35:17 35:18 36:1 49:7 49:15 50:15 50:16 52:14 52:15 52:19 52:20 54:3 55:3 55:6 55:12 55:12 56:1 56:11 59:25 60:7 60:9 60:12 60:12 60:21 60:22 60:24 62:4 66:13 67:24 67:24 68:20 69:9 69:11 69:25 79:2 79:9 79:11 84:2 88:20 89:12 89:13 89:20 92:1 92:1 94:1 94:1 98:2 99:21 99:23 100:21 103:12 103:24 104:5 105:6 106:7 107:16 107:25 110:11 110:14 111:24 113:10 113:13 115:19 115:20 115:24 116:10 120:3 121:10 130:12 131:13 131:24 138:2 144:3 144:3 144:10 145:11 163:4 163:4 166:2 169:18 |  |  |  |
| **them**(52) | 12:19 16:3 19:2 19:6 20:3 21:25 23:6 25:2 26:24 26:24 27:15 29:15 37:6 37:22 38:19 41:15 43:7 43:9 47:18 52:14 56:3 56:4 68:21 69:3 69:4 72:11 73:11 73:16 73:25 79:21 92:21 96:1 96:7 96:23 97:17 106:18 109:5 111:13 112:15 113:11 114:17 124:8 134:18 136:3 147:10 154:15 154:20 164:9 164:10 164:19 165:3 169:21 |  |  |  |
| **themselves**(6) | 18:19 33:23 40:20 56:6 94:6 163:17 |  |  |  |
| **then**(73) | 11:11 14:5 14:13 15:5 16:19 17:11 19:11 20:15 20:17 24:4 28:7 32:25 32:25 46:9 46:11 46:25 49:4 50:2 56:10 58:8 59:5 61:13 61:23 61:25 62:8 62:22 62:23 63:12 63:25 64:2 68:5 68:24 70:17 77:25 80:9 80:14 80:15 87:6 87:7 107:4 107:19 109:25 111:1 113:7 114:8 114:17 116:1 117:18 118:17 118:21 119:16 120:10 121:16 125:18 127:4 127:23 140:18 141:10 141:22 144:13 153:6 153:12 155:6 155:13 155:13 155:20 155:24 157:13 157:22 160:3 161:13 162:20 164:24 |  |  |  |
| **theories**(1) | 97:17 |  |  |  |
| **there**(128) | 11:25 12:14 12:15 13:14 15:9 16:16 17:22 18:23 20:21 23:4 23:19 25:15 26:22 27:20 27:22 28:6 28:8 28:9 28:9 28:12 29:14 32:19 33:21 34:3 36:2 37:1 38:3 39:7 40:17 41:3 41:12 42:21 42:23 44:4 44:5 45:19 47:9 47:13 47:13 48:15 48:24 49:14 52:7 52:24 53:15 55:7 57:1 57:2 57:17 57:18 58:22 60:7 63:2 64:7 68:23 69:6 74:11 74:14 75:9 76:9 78:1 78:5 80:5 80:9 83:1 83:14 85:3 90:2 92:10 92:20 95:23 96:3 101:9 101:14 104:20 105:12 109:3 109:20 111:8 111:10 112:12 114:9 114:23 114:24 119:15 120:11 121:1 122:13 123:24 124:8 125:6 126:16 128:19 129:20 129:21 129:25 130:2 132:1 134:10 134:24 135:7 136:13 137:9 137:25 138:20 139:19 140:9 141:6 141:7 144:13 144:15 146:11 146:17 146:17 147:3 149:23 153:3 153:4 153:7 155:9 157:18 158:11 163:16 166:9 169:19 169:24 170:2 170:24 |
|  |  |  |  |  | | **there's**(36) | 13:14 17:24 33:6 36:2 41:6 43:3 60:16 68:10 74:12 76:25 80:21 81:4 81:6 81:7 81:22 82:6 89:22 89:23 93:1 111:15 114:18 132:11 139:6 142:1 143:2 143:7 144:9 144:18 145:14 150:18 150:20 154:6 154:23 155:13 165:19 170:21 |
|  |  |  |  |  | | **thereafter**(1) | 167:7 |
|  |  |  |  |  | | **therefore**(5) | 15:16 56:5 90:24 94:17 98:11 |
|  |  |  |  |  | | **thereon**(1) | 170:5 |
|  |  |  |  |  | | **these**(53) | 18:4 18:17 18:17 18:18 19:5 20:2 27:12 34:7 35:21 36:4 39:15 43:13 43:16 48:3 51:18 52:22 57:23 59:24 61:1 61:12 66:17 75:1 81:7 81:10 81:15 81:15 81:16 82:19 86:15 88:7 88:9 88:12 90:23 91:2 94:14 99:18 102:15 109:5 109:6 123:25 124:15 125:13 132:11 137:1 138:21 162:22 162:24 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **they**(242) 12:6  12:13  12:20  12:21  12:23  14:5  14:7  15:1  15:5  15:7  15:7  15:12  15:14  15:19  15:24  16:13  16:17  16:20  17:19  18:1  18:24  18:25  19:9  19:10  19:24  20:1  20:3  20:3  20:12  20:16  20:25  21:6  21:7  21:8  21:14  21:15  21:16  21:19  21:23  21:23  22:3  22:5  22:5  22:9  22:13  22:14  22:14  24:1  27:14  27:15  28:8  28:19  29:6  29:21  32:12  35:20  35:21  36:3  40:20  41:14  41:16  41:16  48:23  49:14  49:16  50:6  51:2  51:25  51:25  53:10  53:12  53:20  54:15  55:5  55:7  60:4  60:10  60:11  60:22  64:25  66:23  67:2  67:14  67:21  67:21  68:3  68:10  68:16  68:16  68:25  69:17  69:24  72:8  72:8  73:4  73:5  73:10  73:24  74:22  75:6  75:17  76:11  77:14  79:1  79:4  79:20  79:25  81:17  83:18  83:18  86:4  89:1  89:5  89:9  89:18  90:21  90:22  90:22  91:5  92:8  92:12  93:10  94:4  94:24  95:1  95:16  96:16  96:19  97:25  98:1  98:2  98:11  98:12  100:16  101:6  103:11  103:21  103:21  103:23  104:11  105:16  105:16  105:17  106:12  107:14  107:16  109:5  110:4  110:7  110:13  110:17  111:5  111:10  111:14  111:2  111:20  111:22  111:23  111:23  111:24  112:2  112:5  112:7  112:9  112:20  112:21  112:24  113:9  113:12  113:14  113:15  113:1  113:25  114:23  115:13  115:14  115:19  116:9  116:17  116:17  116:20  117:6  117:8  118:14  119:25  120:20  121:21  122:24  123:15  124:7  125:9  125:9  125:14  126:2  126:2  126:9  127:5  128:6  129:4  129:4  130:12  130:13  130:14  131:25  135:1  135:1  139:17  140:12  142:3  144:2  145:11  147:4  147:5  147:15  149:1  150:14  151:25  152:20  153:9  153:10  154:13  154:13  154:24  155:5  155:15  158:3  158:5  158:11  158:17  162:22  163:4  164:10  164:16  165:25  167:23  169:1  169:21 | | **think**(211) 11:12  12:25  13:16  13:24  14:16  15:22  17:5  19:4  19:23  21:24  22:5  22:12  23:7  24:12  24:16  24:17  24:18  24:19  27:3  27:7  27:17  28:20  29:18  30:13  31:8  31:16  33:20  34:4  36:3  36:25  37:25  40:7  40:21  41:15  41:25  42:1  42:12  42:14  43:1  43:2  43:12  43:22  44:24  46:13  47:15  49:11  51:3  52:11  53:1  53:16  56:13  57:18  58:20  58:21  58:24  59:14  60:4  60:19  60:23  61:2  64:1  65:10  65:17  66:11  66:17  66:21  67:6  69:22  70:3  70:19  71:12  72:8  73:11  75:8  76:4  76:13  77:4  77:20  77:23  82:16  83:23  84:1  84:9  86:9  86:12  86:22  86:24  87:15  88:5  91:20  91:21  96:6  96:11  99:17  99:21  100:8  100:12  100:14  101:5  101:6  102:7  102:18  104:3  104:4  104:11  104:17  106:4  106:7  106:9  107:1  107:2  107:4  108:13  108:14  108:16  110:16  112:17  112:17  112:21  113:4  115:4  116:9  118:7  118:9  119:11  119:20  120:4  120:11  121:11  121:25  122:10  123:21  125:1  125:2  125:3  127:1  127:20  127:22  128:1  128:3  128:9  128:10  128:11  128:18  130:9  130:25  131:1  131:21  133:5  133:7  133:10  133:14  133:15  133:18  133:18  134:1  134:9  134:20  135:16  135:18  135:18  135:21  136:13  139:6  139:1  139:12  139:18  139:19  139:23  140:4  140:9  140:20  140:21  140:23  141:8  142:3  142:17  142:21  143:1  143:6  143:10  143:12  143:13  144:20  145:11  146:14  149:17  149:19  149:23  150:18  150:24  151:2  151:3  152:23  153:2  153:8  155:17  155:22  156:1  156:18  157:15  161:6  163:1  164:22  165:19  166:4  168:23  169:4  170:15 | | **thompson**(2) 8:7  8:8  **thorny**(1) 152:11  **thorough**(1) 125:19  **those**(78) 12:9  12:13  12:24  17:10  17:11  20:4  20:6  22:19  25:3  25:13  26:15  32:7  35:22  38:11  42:23  44:3  44:12  44:14  47:13  47:25  48:11  48:25  49:4  51:7  54:6  54:7  55:5  55:17  56:1  56:3  57:5  57:10  62:20  63:22  65:1  68:1  68:3  73:10  74:15  75:23  77:17  77:20  79:5  85:5  87:10  88:2  92:17  97:21  97:21  109:17  112:7  122:9  123:16  123:16  124:4  124:7  124:13  124:25  128:21  129:19  129:24  129:25  130:13  131:8  131:1  131:16  132:1  132:12  137:12  139:12  154:4  158:9  161:23  163:12  165:20  167:21  168:2  169:15 | | **together**(14) 23:3  48:3  81:9  83:20  106:24  112:1  128:18  129:17  134:22  140:6  140:15  143:15  163:2  165:9  **told**(5) 41:15  72:8  101:21  102:16  118:24  **tom**(1) 84:18  **tomorrow**(4) 70:13  160:2  160:6  160:19  **tone**(2) 23:8  23:23  **toned**(1) 89:12  **tonight**(4) 79:10  160:1  167:11  168:3  **too**(5) 71:25  73:11  74:10  110:1  140:21  **took**(10) 22:8  23:17  79:3  79:5  98:6  107:21  107:22  111:19  125:16  129:16  **top**(5) 28:20  34:9  87:16  99:22  164:2  **topic**(1) 99:15  **torres**(3) 5:11  10:36  129:9  **toss**(1) 103:5  **total**(2) 15:5  158:18  **toto**(1) 57:3  **touch**(3) 46:24  106:5  113:3  **toward**(2) 26:7  28:19  **track**(1) 47:6  **tracks**(1) 14:19  **trade**(14) 10:11  14:23  15:1  15:5  15:6  15:10  15:16  15:17  15:19  19:14  41:14  41:20  165:18  165:23  **traditional**(3) 32:5  32:6  44:25  **tragic**(1) 88:8  **training**(1) 32:21  **trains**(1) 166:17  **transaction**(8) 99:4  99:5  111:9  111:15  113:1  116:24  152:12  152:21  **transcript**(7) 1:19  1:51  39:25  127:10  128:15  128:15  171:8  **transcription**(2) 1:45  1:52  **transcriptionist**(1) 171:15  **transcripts**(2) 81:10  87:18  **transfer**(3) 97:6  105:11  109:19  **transparency**(1) 14:7  **transparent**(1) 88:20  **transpired**(1) 37:20  **tread**(1) 166:14  **treat**(3) 67:18  69:23  83:11  **treated**(5) 53:21  68:17  68:19  96:5  97:20  **treatise**(1) 59:18  **treatment**(10) 15:15  15:17  19:9  54:9  54:19  54:22  54:25  55:2  56:14  57:16  **treats**(1) 55:17  **tree**(2) 71:8  73:17  **trees**(1) 133:19  **trehan**(1) 7:17  **trial**(12) 86:20  86:21  91:18  91:25  103:17  105:10  105:12  108:2  109:13  112:16  126:14  129:5  **tribune**(7) 1:9  6:2  10:7  37:13  97:22  97:24  131:15 |
| **they'd**(1) 73:8  **they'll**(2) 164:22  165:21  **they're**(56) 17:14  26:6  35:21  35:22  38:14  39:5  61:13  63:11  67:14  67:21  68:11  69:4  69:7  72:8  72:9  73:8  73:18  73:19  75:21  79:6  88:22  88:23  89:18  90:21  94:3  95:14  96:15  99:23  104:3  104:6  104:8  105:7  105:7  105:24  105:24  107:6  108:1  111:15  112:2  112:12  113:19  115:10  115:14  116:4  122:13  124:10  127:2  135:10  140:12  142:19  155:1  158:15 | | **thinking**(4) 18:2  100:9  102:6  163:16  **thinks**(1) 97:24  **third**(11) 27:17  53:19  62:7  66:14  66:15  66:15  72:23  92:3  128:4  128:7  166:24  **third-party**(1) 43:8  **thirteen**(1) 108:8  **thirty**(5) 105:12  112:15  138:24  140:13  153:6  **thirty-five**(1) 140:13  **this**(208) 14:10  15:18  16:10  17:3  17:7  17:13  17:18  17:25  18:9  19:18  19:20  20:11  20:18  20:25  21:1  22:1  22:7  22:8  23:22  25:5  25:21  26:18  26:19  27:12  27:18  28:2  28:24  30:17  30:21  32:9  33:14  33:16  34:18  34:18  35:3  35:3  36:4  36:11  36:14  36:18  36:24  37:12  37:19  37:23  38:16  39:7  39:8  39:10  39:10  39:22  40:14  40:20  42:12  44:5  44:13  45:14  45:14  47:11  47:22  49:8  49:25  49:24  50:21  51:3  51:25  52:9  52:13  52:16  52:17  53:4  53:21  53:21  57:16  58:9  59:9  59:10  59:13  59:17  65:9  66:2  66:3  66:24  67:5  68:2  70:9  72:21  73:7  73:9  73:25  74:1  74:24  76:12  76:14  77:2  77:8  79:7  80:7  81:5  82:4  82:14  83:25  84:4  84:15  85:18  86:1  88:1  91:4  91:23  93:1  93:16  93:25  94:13  95:6  97:2  98:5  98:5  98:9  99:3  99:15  99:19  100:24  101:24  102:5  102:8  102:9  104:10  105:9  105:11  105:16  105:21  106:9  107:10  107:17  107:2  108:11  109:6  109:7  111:17  112:4  112:20  113:6  113:7  113:20  113:22  113:24  114:6  115:2  115:25  117:17  119:9  120:19  120:20  122:22  124:20  127:11  128:17  130:5  132:7  132:15  133:1  133:5  133:14  133:22  133:23  134:5  136:7  136:24  137:23  138:11  138:13  141:2  141:12  141:15  143:12  143:1  144:7  144:13  145:25  146:25  147:2  147:7  149:21  150:8  150:21  150:23  151:8  152:13  152:18  154:3  154:20  158:9  158:18  159:20  159:20  160:8  160:18  163:3  164:2  164:13  165:10  168:11  168:22  169:12  169:13  171:1  **thomas**(2) 2:15  2:48 | | **though**(13) 12:23  21:11  22:5  23:5  24:14  26:18  38:14  39:4  57:23  86:17  131:6  138:22  143:18  **thought**(19) 23:11  23:15  23:20  23:21  32:7  37:24  38:5  76:19  88:3  93:5  105:2  105:16  106:12  114:14  137:3  148:12  148:21  150:1  164:12  **thoughts**(1) 144:23  **thousand**(1) 81:9  **thousand-plus**(1) 87:14  **three**(24) 26:22  33:21  41:15  42:8  45:14  46:17  50:6  51:1  52:13  53:22  54:4  62:3  62:13  62:16  62:21  62:22  74:13  74:13  92:4  143:6  155:12  155:15  156:6  158:21  **three-day**(1) 143:3  **three-page**(2) 155:9  155:10  **three-quarters**(1) 14:2  **through**(33) 11:9  14:6  21:24  22:4  27:12  31:10  33:12  35:5  37:17  43:23  45:22  47:12  48:25  49:3  49:12  52:5  59:24  59:25  63:15  74:3  79:19  80:9  80:15  86:7  86:15  87:4  119:5  128:24  136:3  136:6  136:22  139:22  152:14  **throughout**(3) 61:12  121:20  122:22  **thursday**(5) 11:24  12:4  12:20  70:14  127:9  **thursday's**(1) 127:7  **tick**(3) 50:1  51:10  51:24  **tie**(1) 107:4  **till**(1) 77:25  **tilt**(1) 99:22  **time**(82) 13:21  14:16  17:4  17:9  19:8  19:10  19:12  23:12  23:25  32:9  38:10  38:13  38:1  40:9  43:17  54:5  54:13  58:22  59:21  65:12  72:1  73:25  74:10  76:13  76:18  76:21  77:4  86:3  86:17  88:8  96:17  104:17  106:12  107:10  108:18  108:19  108:22  108:23  109:  109:21  112:18  116:23  117:16  117:22  118:4  118:10  118:12  118:17  119:16  121:  121:11  123:25  124:4  124:5  124:15  125:3  125:14  127:4  129:3  129:20  129:21  130:7  134:22  136:21  137:1  137:20  139:19  140:2  140:10  142:2  142:11  144:8  144:15  147:21  149:22  151:9  151:25  152:12  153:5  153:7  159:15  169:10  **timeline**(1) 69:19  **timely**(3) 31:19  31:20  48:10  **times**(8) 3:22  19:24  36:6  41:16  42:8  133:20  136:1  144:22  **timetable**(1) 58:23  **timing**(2) 43:13  58:9  **tina**(1) 8:27  **tinkering**(1) 23:16  **tmt**(1) 101:8  **today**(24) 40:17  41:1  41:4  42:8  58:17  66:  70:13  71:2  78:2  78:11  82:7  87:13  92:24  94:14  99:18  122:1  122:7  122:16  131:19  133:25  134:16  157:4  166:9  169:24  170:25  **today's**(4) 68:13  113:4  119:5  154:23 | | **tribune's**(2) 23:23  34:14  **tricadia**(1) 8:30  **trick**(1) 115:25  **tried**(2) 23:18  65:5  **triggering**(1) 161:14  **troubles**(1) 12:22  **troubling**(2) 62:0  **trs**(2) 113:25  114:14  **true**(7) 36:9  36:16  40:15  40:15  109:25  126:2  132:19  **truly**(1) 20:2  **trump**(2) 10:41  64:11  **trust**(11) 3:13  6:29  9:4  35:9  35:12  48:2  70:24  93:9  93:23  94:5  121:5 |

| Word | Page:Line |
|---|---|
| trustee(6) 3:26  3:26  75:5  93:12  93:18 | |
| trustees(5) 71:4  71:7  71:10  72:3  75:4 | |
| truth(2) 93:14  126:5 | |
| truthfully(1) 99:2 | |
| try(16) 65:13  65:21  103:16  105:11  113:21 115:19  132:10  132:15  132:18  133:21 136:16  138:6  138:11  141:9  143:1  151:19 | |
| trying(18) 17:14  21:23  45:10  58:2  67:7 67:19  82:18  91:1  105:7  105:24  107:6 133:1  134:21  140:5  140:6  144:10  145:24 169:16 | |
| tuesday(2) 11:21  142:15 | |
| tunnell(1) 5:18 | |
| turn(9) 34:2  43:23  43:25  49:4  53:19  59:2 109:16  111:1  111:23 | |
| turning(3) 15:21  46:24  159:9 | |
| turns(1) 76:20 | |
| twelve(1) 92:4 | |
| twice(1) 63:25 | |
| twist(1) 100:20 | |
| two(73) 11:13  12:5  12:24  13:14  14:6 16:17  17:21  17:24  17:25  18:5  19:5  20:10 20:21  21:6  21:9  21:17  21:25  22:10  28:19 30:15  32:4  34:18  40:3  40:25  41:9  42:21 43:13  44:24  49:24  50:6  50:25  58:11  59:8 62:3  62:13  62:16  62:17  62:19  62:20  62:21 62:23  70:4  77:7  79:3  79:4  79:20  80:1 81:6  87:20  89:22  90:7  98:19  107:9  107:24 108:19  108:20  108:23  109:1  110:15  112:2 122:18  122:20  125:9  125:9  137:8  140:11 141:2  143:2  159:16  160:22  161:15  162:3 166:19 | |
| two-part(1) 30:20 | |
| two-thirds(2) 22:1  37:14 | |
| two-year(1) 167:4 | |
| type(5) 83:20  84:5  88:23  136:23  141:4 | |
| typical(1) 63:24 | |
| u.s(5) 3:26  3:26  9:39  93:12  93:18 | |
| ubs(2) 8:33  10:4 | |
| ucc(1) 81:18 | |
| uh-huh(1) 145:17 | |
| ultimate(4) 74:25  101:17  103:17  116:11 | |
| ultimately(8) 12:20  36:5  71:18  86:12  88:9 88:10  90:9  118:10 | |
| unabashedly(3) 89:9  89:16  89:19 | |
| unable(2) 48:11  64:8 | |
| unaddressed(1) 77:18 | |
| unbiased(1) 93:13 | |
| unclear(1) 151:15 | |
| under(50) 15:6  15:8  15:16  15:17  16:23 17:12  17:21  21:7  29:13  30:2  35:4  35:8 35:10  35:15  35:20  36:1  37:11  38:17  38:18 42:11  42:20  44:15  49:10  52:20  54:6  55:3 55:19  55:19  56:15  56:25  57:1  57:2  58:1 66:17  69:23  69:24  97:5  97:18  121:12 121:13  137:23  138:1  139:13  143:15  150:25 152:5  152:20  153:19  160:7  167:6 | |
| underlying(3) 87:1  101:23  113:1 | |
| underscore(1) 71:3 | |
| understand(22) 19:13  21:18  39:3  48:1 49:17  63:1  67:16  68:18  69:17  76:23  76:25 101:4  103:6  110:22  116:8  120:7  130:7 150:17  150:23  151:12  152:6  155:3 | |
| understanding(3) 67:1  136:18  152:24 | |
| understood(5) 31:16  58:18  102:22  153:8 155:24 | |
| undertake(1) 27:14 | |
| undertaken(1) 76:25 | |
| unfair(2) 17:5  142:5 | |
| unfettered(2) 88:23  133:7 | |
| unfortunate(1) 91:1 | |
| unfounded(1) 17:16 | |
| uniform(3) 45:18  50:15  51:23 | |
| unimpaired(2) 43:7  54:18 | |

| Word | Page:Line |
|---|---|
| unique(6) 71:4  86:2  121:13  121:17  122:15 124:9 | |
| united(2) 1:1  1:21 | |
| unity(1) 52:12 | |
| unjustifiable(1) 110:14 | |
| unless(5) 11:17  36:19  45:24  76:1  119:6 | |
| unlike(1) 110:1 | |
| unlikely(1) 97:24 | |
| unlimited(3) 89:2  89:2  89:4 | |
| unmanageable(1) 145:16 | |
| unpersuasive(1) 26:10 | |
| unpunished(1) 156:9 | |
| unreasonable(1) 150:12 | |
| unresolved(4) 46:16  46:23  46:24  47:1 | |
| unsecured(10) 9:31  14:3  15:3  19:10  22:23 28:25  41:8  84:20  94:11  166:1 | |
| unsecureds(1) 19:16 | |
| unstated(1) 26:5 | |
| until(11) 43:19  54:11  56:23  77:9  78:18 113:13  118:13  118:17  122:2  138:3  138:5 | |
| untrammeled(2) 111:4  111:5 | |
| untruth(1) 36:12 | |
| unworkable(1) 51:10 | |
| updated(2) 46:8  54:23 | |
| uphill(1) 99:24 | |
| up(20) 11:19  17  21:21  31:17  32:10  53:11 54:15  64:20  66:22  124:1  126:5  158:23 | |
| use(27) 51:7  59:21  62:11  65:6  72:17  85:1 95:7  96:23  104:5  109:5  109:6  109:6  109:9 112:17  113:9  113:17  117:12  119:16 120:18  120:23  121:22  127:23  132:16  133:1 136:21  139:19  151:9 | |
| used(13) 39:22  40:2  77:5  85:12  93:8 108:18  113:11  123:14  124:10  124:11 126:12  126:13  137:2 | |
| using(3) 36:9  64:20  71:25 | |
| usual(1) 57:16 | |
| usually(4) 23:2  39:9  142:11  145:3 | |
| utility(1) 152:9 | |
| utilize(3) 82:20  83:5  133:17 | |
| utilized(3) 83:19  84:1  134:23 | |
| utilizing(2) 84:2  108:21 | |
| utter(1) 104:12 | |
| utterly(1) 113:5 | |
| vail(1) 6:39 | |
| valuable(2) 29:18  29:20 | |
| valuation(2) 82:11 | |
| variables(1) 65:7 | |
| varied(1) 54:17 | |
| variety(1) 106:8 | |
| various(12) 45:19  54:8  56:16  61:18  62:1 62:8  81:10  81:11  81:19  82:2  97:17  167:1 | |
| verbal(5) 157:8  161:11  163:9  166:8  171:1 | |
| version(12) 14:21  16:8  16:20  31:9  32:14 33:19  34:5  35:10  46:8  49:25  79:10  89:12 | |
| versions(2) 43:6  79:10 | |
| versus(2) 26:17  146:23 | |
| very(30) 13:21  15:13  18:11  26:5  27:4 27:4  34:6  46:24  49:5  50:10  51:7  51:9 51:12  51:13  52:17  53:13  53:15  55:2  59:8 74:19  78:24  79:13  85:9  86:1  91:5  92:11 93:14  96:6  98:18  101:5  104:16  114:1 115:13  122:7  124:2  125:12  126:15  127:11 130:12  131:21  133:4  133:8  156:8  156:12 157:5  158:4  159:23  169:11  170:23  171:2 | |
| vetoed(1) 28:5 | |
| view(11) 25:22  32:13  33:19  35:22  52:18 94:1  102:17  116:10  118:12  120:14  142:7 | |
| viewed(1) 83:1 | |

| Word | Page:Line |
|---|---|
| views(5) 49:21  93:19  116:6  122:1  133:5 | |
| vigilant(1) 44:14 | |
| vigorously(1) 86:18 | |
| vindicates(1) 94:1 | |
| virtually(2) 87:17  152:2 | |
| vis(4) 20:10  20:10  20:23  20:23 | |
| vocal(1) 86:23 | |
| vote(30) 35:23  48:11  49:20  49:21  53:20 53:25  54:14  54:21  55:5  56:3  56:4  56:8 57:6  57:11  57:14  57:24  59:12  60:8  60:11 64:1  64:13  68:24  69:7  69:14  69:18  69:18 69:18  69:25  75:20  75:21 | |
| voted(10) 50:6  52:1  63:3  63:4  63:16  63:24 68:24  77:10  128:24  166:3 | |
| voter(1) 63:21 | |
| voters(2) 164:11  164:13 | |
| votes(9) 34:25  44:21  45:10  56:9  62:3 62:22  63:7  76:7  165:22 | |
| voting(39) 45:13  45:15  45:16  45:20  47:21 48:1  48:9  48:14  54:7  54:11  54:24  55:6 55:7  55:10  55:16  56:21  57:21  58:5  58:6 58:21  61:18  61:24  65:14  66:22  70:5  70:7 70:10  77:22  78:6  78:8  157:15  158:2 159:14  159:14  161:5  161:6  162:3  162:9 170:6 | |
| votings(1) 62:5 | |
| vrc(1) 109:5 | |
| waisman(1) 7:11 | |
| wait(4) 43:19  118:17  122:2  153:6 | |
| waiting(2) 123:24  160:14 | |
| waiving(1) 93:25 | |
| walk(3) 45:22  49:3  52:4 | |
| wallpaper(1) 90:5 | |
| walrath(3) 127:9  127:13  127:17 | |
| wamu(1) 127:8 | |
| want(71) 13:3  13:21  14:14  15:19  21:7 21:9  32:16  33:13  34:2  39:4  40:5  40:25 41:25  43:16  44:13  58:24  60:4  61:3  67:8 69:17  69:18  70:5  78:1  78:3  78:7  82:4 88:22  89:5  89:18  90:9  94:4  97:3  103:22 108:10  109:23  110:3  110:7  110:13  110:17 111:6  112:17  112:24  117:14  118:14  119:6 119:25  120:10  120:20  122:9  122:15  123:17 125:6  125:9  129:14  130:5  132:10  136:20 136:21  137:1  141:20  141:20  141:24  141:24 142:3  143:18  153:22  154:6  154:9  155:1 155:2  162:10 | |
| wanted(24) 11:6  12:7  22:25  30:13  41:15 59:9  71:12  72:1  74:20  85:20  87:3  87:5 87:6  92:17  94:6  94:7  100:17  100:17  130:22 131:9  154:20  156:23  160:13  167:13 | |
| wants(4) 22:25  90:2  90:12  94:5 | |
| war(5) 84:7  88:23  95:8  95:8  98:18 | |
| wardell(2) 2:30  88:16 | |
| warn(1) 15:5 | |
| warned(1) 117:9 | |
| warns(1) 14:24 | |

| Word | Page:Line |
|---|---|
| was(149) 12:1  12:14  12:15  16:9  16:24 18:23  19:11  20:11  20:14  23:4  23:11  23:15 24:10  25:13  26:6  28:2  29:1  30:20  30:21 30:21  32:1  32:11  35:6  35:18  36:13  37:2 37:25  38:7  39:6  40:1  40:5  41:12  41:13 42:14  43:9  44:5  44:8  44:13  47:22  50:9 50:10  54:5  57:4  57:9  60:7  60:12  61:17 62:17  64:25  69:6  72:15  73:7  73:25  74:14 74:14  79:19  81:8  82:8  83:11  86:6  86:13 86:20  86:25  87:7  87:11  91:25  92:5  92:9 92:10  92:10  92:20  93:7  93:11  94:10  97:22 97:24  103:10  104:25  105:2  105:16  106:13 106:21  106:23  107:14  107:15  107:21 108:25  109:3  109:10  109:11  111:22  112:1 112:9  112:23  113:14  113:23  113:24  114:3 114:9  114:9  114:9  114:10  114:16  114:23 114:24  117:16  118:11  120:11  121:16 123:21  125:12  125:15  126:15  127:14 127:15  127:16  128:1  129:21  131:9  133:11 134:11  137:3  137:13  137:15  138:19  144:13 146:14  146:21  147:13  148:15  148:21 149:16  149:16  150:1  150:8  150:14  151:14 152:18  153:14  153:16  155:7  156:5  157:21 160:14  160:15  161:19  167:22  168:22  171:4 | |
| washington(1) 2:27 | |
| wasn't(3) 24:14  54:11  73:7 | |
| waste(3) 133:19  138:12  140:2 | |
| wasteful(1) 88:11 | |
| way(39) 22:1  27:8  29:25  30:17  31:10 37:14  37:24  38:7  38:9  39:13  39:25  40:7 40:19  42:13  57:15  70:9  76:12  86:25 100:14  100:16  102:21  103:18  104:1  106:20 107:22  114:6  115:13  118:16  122:16 128:19  130:13  136:16  141:12  144:7  145:5 145:18  150:20  155:18  155:22 | |
| ways(2) 49:24  57:18 | |
| we'd(2) 21:25  60:25 | |
| we'll(28) 11:11  33:12  59:6  68:12  72:7 72:9  72:12  74:1  76:14  78:10  79:9  79:10 83:22  89:11  110:11  112:6  114:18  118:18 122:5  128:24  134:13  150:7  150:7  152:24 155:20  157:1  157:12  170:22 | |
| we're(66) 13:12  21:1  21:20  21:21  22:1 31:19  36:8  36:8  36:9  38:3  39:9  41:3 43:23  49:24  58:17  59:14  59:15  64:9  64:20 65:16  67:22  68:18  69:2  69:3  71:22  72:15 73:14  73:16  73:20  77:13  77:25  82:5  82:9 82:10  82:11  82:18  83:19  88:6  89:6  89:16 89:17  90:4  98:16  99:23  103:5  104:8  108:6 118:24  121:18  122:6  126:25  127:1  133:1 134:21  139:5  140:13  140:16  141:3  141:12 143:17  148:1  152:25  154:3  158:9  159:18 169:13 | |
| we've(38) 38:16  43:14  43:19  45:2  45:8 45:14  46:25  47:5  48:8  48:19  48:24 49:25  52:16  53:5  57:16  58:24  59:11  65:5 65:11  68:21  78:25  83:6  83:16  83:24  85:12 107:17  107:17  118:22  120:4  121:19  121:20 123:24  131:10  140:4  148:4  159:14  164:17 | |
| weapon(1) 60:2 | |
| weaponized(1) 59:20 | |
| wednesday(10) 11:23  12:1  16:18  18:23 23:11  24:3  46:7  46:8  70:14  160:8 | |
| week(9) 11:6  11:21  12:22  17:23  59:21 68:1  76:16  119:5  168:18 | |
| week's(2) 153:11  157:10 | |
| weekend(4) 16:10  27:12  30:21  148:23 | |
| weeks(5) 118:20  136:2  159:16  160:22 161:15 | |
| weight(1) 151:2 | |
| weil(1) 7:9 | |
| weiss(1) 6:42 | |
| weitman(1) 6:6 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**welcome**(1) 22:11

**well**(95) 14:21 16:5 18:21 21:3 23:10 24:25 27:6 30:17 30:24 31:16 36:4 37:3 40:10 41:18 42:4 43:25 48:15 49:5 49:11 56:2 57:15 58:13 59:5 62:15 62:19 62:22 63:1 63:20 64:4 65:17 66:2 66:19 68:15 70:12 71:19 72:3 76:1 78:10 87:7 89:22 92:14 100:5 101:4 104:18 106:5 112:13 113:22 114:5 114:6 114:17 116:4 116:14 116:19 117:1 117:7 118:11 118:16 118:21 119:8 122:14 123:3 126:16 126:18 131:10 131:16 134:15 134:20 135:4 135:11 135:2 136:19 137:22 138:8 139:7 140:17 142:6 143:4 144:4 145:1 145:4 145:9 145:20 146:5 148:22 150:20 153:20 153:25 157:3 159:22 160:22 161:19 164:4 166:16 167:16 169:5

**wells**(2) 4:38 130:21

**went**(6) 23:17 37:22 50:10 107:22 117:11 132:9

**were**(69) 11:6 12:3 12:15 13:1 13:16 16:24 22:6 23:3 23:6 24:3 25:23 26:18 32:8 35:4 37:4 37:12 45:25 48:22 54:6 54:6 54:15 60:10 60:11 62:24 63:22 64:8 66:13 67:7 67:16 73:4 73:5 82:13 86:4 86:11 86:18 86:22 87:2 93:5 96:19 97:25 98:3 102:14 105:11 106:19 108:17 113:25 129:17 130:12 131:8 132:23 134:24 134:24 137:4 150:13 153:2 153:23 155:25 156:1 156:24 157:22 161:4 162:21 163:16 167:3 167:8 167:9 167:21 168:9 169:15

**weren't**(4) 25:17 112:10 122:1 156:5

**wesch**(1) 4:16

**west**(2) 1:37 4:25

**wharton**(1) 6:42

**what**(214) 11:15 11:19 12:1 12:9 12:11 12:14 12:20 12:21 13:4 13:25 14:7 16:19 17:15 17:19 18:25 19:24 20:2 20:21 20:24 21:22 22:14 24:15 24:23 26:21 27:14 27:15 27:18 28:4 30:18 30:18 31:7 33:10 35:4 35:19 35:23 36:10 37:3 37:4 37:19 38:9 38:19 39:8 39:21 39:25 41:2 41:18 41:25 43:4 43:12 44:24 45:2 45:12 46:20 50:22 50:24 51:15 51:22 55:13 55:21 56:17 57:20 59:24 61:2 62:20 63:10 63:11 65:2 65:14 65:18 65:19 66:23 67:9 67:15 67:16 67:22 67:23 68:10 68:16 69:9 69:9 69:14 72:8 72:9 73:5 73:6 73:9 75:17 75:23 77:13 78:4 79:2 79:19 79:25 80:12 83:7 83:10 86:2 88:8 89:18 89:18 89:24 90:1 90:6 90:8 90:11 90:13 92:12 93:13 93:20 94:3 95:19 96:8 98:23 99:6 100:7 100:23 101:6 101:13 103:6 103:10 103:15 103:16 104:3 106:4 106:12 108:10 108:10 108:17 108:25 109:10 111:1 111:17 111:2 111:23 112:19 112:23 113:9 113:11 113:13 113:14 115:24 116:2 116:8 116:11 117:19 118:14 118:14 119:8 119:10 119:1 120:1 120:2 121:21 121:23 122:5 122:11 122:12 123:15 123:24 126:18 126:21 127:1 128:8 128:23 129:1 130:8 130:11 131:9 131:10 131:1 133:1 133:13 133:22 134:11 134:1 134:20 136:15 139:1 140:4 141:9 141:18 141:19 141:22 142:3 142:3 142:9 143:13 143:20 143:21 144:1 145:2 145:7 145:10 147:6 147:10 150:10 151:1 151:2 151:4 151:10 151:11 151:18 151:25 152:10 152:17 155:15 155:20 155:25 157:12 157:18 160:15 161:5 168:17 168:1

**what's**(11) 40:21 79:16 81:13 87:7 91:6 93:22 104:22 113:12 133:2 143:4 143:10

**whatever**(14) 19:22 53:11 66:12 69:1 69:2 74:12 82:13 84:10 95:25 119:25 122:20 146:6 153:3 157:22

**whatsoever**(3) 56:10 106:2 113:10

**when**(51) 13:16 23:3 24:3 39:22 39:25 47:15 50:8 50:9 57:6 58:13 61:19 64:9 65:23 75:11 77:1 87:19 88:4 92:15 93:9 98:11 102:5 103:11 106:19 112:24 114:19 114:25 115:22 117:10 117:16 119:5 120:25 122:1 122:3 122:4 122:5 123:5 124:21 128:17 128:20 128:22 129:17 139:1 151:20 155:11 156:12 157:18 159:10 159:23 162:23 164:9

**where**(48) 11:6 14:14 16:13 25:7 34:5 34:9 34:24 37:9 43:6 46:3 50:5 51:2 53:5 55:14 55:23 57:8 57:20 60:12 60:16 61:3 62:5 62:24 64:11 66:25 68:4 69:7 72:7 76:19 79:5 80:10 89:16 109:15 113:4 114:9 114:21 115:18 125:21 139:21 144:17 144:21 145:25 147:7 148:16 150:5 150:9 153:2 153:4 168:7

**whereas**(3) 15:1 15:7 64:25

**whereupon**(1) 171:4

**whether**(39) 20:12 40:15 42:2 62:3 65:20 68:11 68:23 77:5 77:8 82:1 82:12 86:15 86:16 90:4 102:16 102:8 102:10 107:1 112:1 112:2 115:10 118:2 122:18 122:19 123:2 124:4 124:5 124:10 137:24 138:13 138:14 138:19 144:18 146:12 152:16 155:14 156:13 163:16 164:16

**which**(85) 11:10 14:17 15:13 16:20 21:24 21:7 28:12 28:25 30:14 30:22 32:5 35:11 38:4 38:17 39:13 40:19 40:23 44:20 45:10 47:2 48:22 49:7 49:25 50:3 51:11 51:13 52:9 53:19 55:17 56:18 61:1 61:21 61:24 62:8 75:20 75:21 76:7 77:3 77:4 77:6 80:5 81:8 81:11 81:12 82:21 85:4 87:22 88:21 94:10 98:2 98:5 99:2 102:1 102:1 106:9 107:25 111:9 111:9 112:6 113:13 114:1 118:19 119:20 120:2 121:18 122:22 122:23 124:1 124:19 125:23 127:8 133:20 137:4 140:10 145:3 148:8 150:25 152:1 154:4 159:9 165:3 166:2 167:20 170:4 170:7

**while**(5) 43:17 90:20 107:14 147:13 162:25

**white**(3) 4:47 74:9 130:20

**whittman**(1) 8:11

**who**(38) 14:15 15:24 16:14 17:7 21:12 21:14 22:13 24:3 26:20 29:10 31:20 38:1 52:8 52:25 56:2 59:8 59:23 100:22 102:8 106:15 106:16 107:24 109:20 119:2 121:8 121:8 121:15 121:19 151:1 152:18 154:5 154:8 154:13 154:20 159:1 160:4 160:10

**whole**(11) 16:2 19:6 24:7 24:8 69:5 72:25 79:3 105:6 113:6 141:8 146:21

**wholesale**(4) 13:24 29:20 55:16 56:15

**wholly**(2) 133:8 133:9

**whom**(2) 119:24 121:1

**whose**(3) 21:15 102:12 166:17

**why**(32) 18:22 18:22 19:18 26:6 27:4 36:25 42:10 42:16 42:17 60:5 68:9 68:18 75:12 75:5 89:19 91:22 117:11 121:21 121:22 123:6 125:3 125:4 125:8 126:23 133:9 136:3 140:19 144:4 144:4 157:2 170:16

**wide**(1) 151:6

**widespread**(1) 114:24

**wildest**(1) 87:16

**will**(95) 11:10 13:8 15:10 15:14 15:16 20:5 21:1 26:4 29:12 32:20 33:10 37:19 38:17 38:22 38:25 39:1 39:15 42:21 44:2 45:4 48:5 48:16 49:7 50:14 50:17 52:19 53:10 53:11 54:22 55:10 58:12 58:15 59:18 64:22 64:22 65:2 65:10 65:13 65:2 65:24 66:5 68:22 68:25 70:10 70:13 71:1 72:23 73:15 76:11 76:19 76:20 76:23 76:24 78:18 79:9 82:20 85:11 108:2 108:14 110:10 115:2 115:24 118:13 118:1 119:20 120:3 123:4 125:3 128:11 129:1 130:14 130:21 131:17 132:22 134:16 134:22 135:12 141:14 143:13 146:7 149:2 151:3 151:20 151:25 152:1 152:2 153:10 154:21 158:11 159:6 159:23 165:2 165:20 169:20 170:18

**william**(2) 3:14 4:5

**willing**(2) 83:8 126:25

**willy-nilly**(1) 75:10

**wilmer**(1) 6:30

**wilmington**(24) 1:13 1:39 2:8 2:43 2:50 3:10 3:13 3:16 3:30 3:44 4:9 4:27 4:44 5:8 5:24 6:26 11:1 48:2 70:24 93:9 93:23 94:5 121:5 154:23

**winfree**(1) 4:6

**wisdom**(1) 59:19

**wise**(1) 112:17

**wish**(15) 27:8 41:19 46:12 49:14 55:5 70:21 72:8 84:17 90:2 102:20 121:2 126:8 149:1 157:7 163:8

**wished**(1) 40:2

**wishes**(3) 44:1 45:24 119:24

**with**(249) 12:23 13:13 14:6 15:19 22:17 23:7 23:12 23:16 23:25 24:5 24:7 25:2 25:4 25:16 25:20 26:2 26:5 26:17 27:6 28:2 28:7 31:1 32:2 32:8 32:12 33:13 36:10 37:10 38:11 38:20 39:19 40:13 40:23 41:8 43:6 43:14 44:1 44:10 44:11 45:14 45:16 46:5 46:7 48:1 48:2 48:13 48:19 48:25 49:10 49:17 53:6 53:22 53:23 54:19 54:22 54:23 54:25 55:14 56:11 56:14 57:16 57:17 59:2 59:15 60:24 61:15 61:17 61:21 61:25 62:4 62:4 62:14 62:19 63:8 63:18 64:6 64:9 64:19 64:20 65:24 66:16 68:13 68:15 68:23 69:1 69:12 69:24 70:4 70:17 71:1 71:16 72:16 73:12 73:24 74:10 74:12 75:4 75:10 76:4 76:6 76:11 76:14 77:1 77:5 77:8 77:11 77:17 77:24 79:21 80:3 80:20 81:14 81:20 82:5 82:12 82:19 83:9 83:22 84:3 84:6 84:19 85:4 85:13 85:16 86:12 86:21 87:8 87:19 87:22 89:23 90:24 91:9 92:17 93:6 95:9 97:14 98:3 99:5 99:7 100:3 100:17 100:21 101:4 101:8 101:12 102:15 102:23 103:11 103:19 104:17 104:22 105:20 106:1 108:7 108:12 109:1 109:4 110:9 111:7 111:22 112:13 113:14 113:15 114:16 115:8 115:9 119:19 120:8 121:17 122:10 122:14 122:17 122:20 123:25 125:1 126:10 129:11 129:12 129:1 129:17 130:6 130:22 130:24 131:11 131:16 131:18 132:16 132:22 133:6 133:21 133:24 134:2 134:4 134:6 135:2 135:14 137:12 137:22 138:1 138:11 139:10 139:11 139:17 139:20 140:2 140:5 140:8 140:18 140:21 141:17 144:5 144:6 144:8 144:17 145:1 146:1 146:22 147:5 147:22 149:3 150:3 152:22 152:24 155:21 156:14 156:15 157:16 158:1 159:25 160:4 161:17 161:21 162:22 164:20 165:3 165:18 167:2 167:5 167:8 168:11 168:20 168:22 170:11

**within**(9) 50:4 69:19 77:13 110:23 119:11 167:4 167:16 168:1 168:4

**without**(16) 17:17 36:17 54:7 55:17 56:22 71:25 112:24 113:10 115:17 142:4 147:8 154:4 158:22 158:23 158:23 158:25 167:21

**withstanding**(1) 57:11

**witness**(3) 87:18 105:20 113:23

**witnesses**(9) 97:14 105:20 109:16 112:13 112:21 115:19 118:14 129:23 129:23

**wizmur**(1) 64:12

**woefully**(1) 100:25

**wolf**(1) 8:14

**womble**(1) 2:47

**won't**(8) 21:23 27:2 64:4 74:9 76:9 112:6 112:7 112:8

**wonderful**(1) 115:7

**wondering**(1) 157:21

**wool**(1) 10:33

**word**(9) 14:15 33:5 34:6 39:18 92:2 92:24 101:17 104:13 105:2

**words**(4) 33:11 89:14 92:1 135:9

**work**(20) 28:6 32:24 41:8 46:11 47:9 48:5 50:11 58:12 69:19 81:4 82:15 82:15 83:20 134:9 139:22 140:6 144:5 144:10 145:4 150:25

**workable**(1) 48:3

**worked**(5) 33:9 36:14 47:3 47:23 104:17

**working**(2) 47:12 136:22

**works**(2) 113:2 118:17

**world**(13) 36:16 53:5 53:6 53:18 88:23 90:16 90:16 90:17 90:17 90:21 95:8 95:8 98:17

**worlds**(1) 91:2

**worried**(1) 61:13

**worry**(4) 80:8 108:2 151:2 166:16

**worth**(2) 73:25 73:25

**would**(180) 11:17 13:1 14:12 14:14 14:14 14:15 15:7 20:12 21:9 21:10 23:10 23:21 24:1 26:21 27:18 27:24 27:25 28:4 28:8 28:8 28:9 28:10 30:2 36:17 37:12 40:6 40:8 43:12 44:7 45:4 45:24 50:2 50:5 50:23 51:1 51:5 51:15 51:22 53:19 56:17 57:10 60:6 60:14 60:14 62:4 62:22 62:23 63:24 64:1 64:18 64:19 64:23 64:25 65:6 65:8 65:18 66:11 66:12 66:20 66:21 66:21 69:19 69:22 70:14 71:6 74:4 75:8 76:19 77:6 77:12 77:25 78:7 79:20 80:11 80:12 83:8 83:10 83:10 83:13 83:14 84:1 85:1 85:5 85:7 85:9 86:21 86:24 88:1 88:8 88:10 88:12 90:8 93:4 93:8 93:11 93:24 95:7 95:22 96:5 96:22 102:14 103:17 105:12 105:12 106:7 106:8 109:25 110:4 112:17 115:4 116:11 116:17 118:3 118:5 118:22 119:10 127:10 130:8 130:9 130:16 131:10 133:4 133:13 133:13 133:14 135:21 136:8 136:12 137:6 139:13 140:1 140:20 140:24 141:18 141:23 142:12 142:21 143:8 143:11 144:12 144:15 144:15 145:18 145:23 147:2 147:13 147:15 149:1 149:2 155:4 156:17 157:13 158:10 159:15 160:3 160:6 160:23 161:5 161:6 161:14 161:21 162:3 162:15 164:2 164:13 164:18 165:3 165:9 165:10 165:25 166:1 166:16 168:8 168:9 168:12 168:15 169:15 170:6 170:8 170:9

**wouldn't**(6) 40:7 57:4 64:1 64:2 83:14 147:20

**wrap**(1) 13:1

**write**(1) 86:8

**writing**(1) 142:17

**written**(5) 24:15 24:16 59:18 101:19

**wrong**(7) 17:14 35:21 36:10 64:2 104:8 104:22 106:7

**wrote**(2) 113:11 127:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|
| **yeah**(12) 31:2 110:21 121:15 137:19 142:20 143:25 146:17 146:19 147:15 150:17 160:9 164:15 | | **you**(113) 139:1 140:4 140:8 140:14 140:17 140:18 140:19 140:19 141:4 141:5 141:8 141:9 141:14 141:24 141:25 142:2 142:5 142:13 142:13 142:15 142:23 142:2 142:24 143:2 143:2 143:7 143:8 143:9 143:14 143:18 143:19 143:20 144:5 144:6 144:7 144:22 144:22 145:4 145:5 145:7 145:10 145:12 145:14 145:20 145:21 145:24 146:6 146:8 146:22 148:6 149:12 149:23 150:11 150:19 151:6 151:10 151:1 152:19 152:19 153:21 153:21 154:5 154:7 154:5 154:8 154:9 154:14 154:14 154:19 154:23 155:11 155:12 155:14 155:16 155:25 156:3 156:5 156:8 156:15 156:16 156:20 156:24 156:24 157:4 157:5 157:21 160:5 160:7 160:12 160:13 161:5 161:13 162:4 162:10 162:18 162:23 163:7 163:15 163:16 163:18 166:5 166:16 166:21 166:9 169:11 169:23 170:13 170:14 170:16 170:22 170:23 171:2 | | **your**(297) 11:4 11:5 13:6 13:10 13:16 14:10 14:13 14:16 15:13 16:16 17:9 17:15 18:4 18:15 22:13 22:14 22:15 22:17 22:21 23:4 24:16 24:22 25:8 26:15 26:21 27:18 28:4 28:12 29:4 30:5 30:8 30:12 30:23 31:5 31:7 31:12 31:17 32:2 32:8 33:9 33:16 34:2 35:2 36:2 36:16 36:19 38:23 38:23 38:24 39:3 39:11 39:16 39:18 39:21 39:22 40:6 40:11 41:5 41:11 41:12 41:21 41:24 42:21 43:18 43:22 44:2 44:18 45:7 46:1 46:5 46:12 46:15 46:21 47:12 47:21 49:2 49:6 49:21 51:17 51:21 51:22 52:3 52:5 52:8 53:19 54:19 55:8 55:11 56:10 56:20 56:25 57:13 58:2 58:5 58:10 58:16 58:19 59:2 59:7 59:10 59:14 60:19 61:6 61:14 61:19 62:6 62:13 63:6 63:11 63:15 64:2 64:6 64:7 65:4 65:5 65:21 66:5 66:7 66:15 67:6 67:18 70:1 70:16 70:23 71:6 71:14 71:22 71:25 72:5 72:18 72:20 74:5 74:8 74:19 75:7 75:13 75:25 76:3 77:19 78:4 78:12 78:14 78:16 78:23 79:14 79:15 79:18 79:21 84:18 84:21 85:20 85:23 88:12 88:15 88:18 90:12 92:23 93:18 94:9 94:16 94:22 95:3 95:9 95:25 96:16 98:20 98:22 99:3 99:8 99:11 99:15 99:16 99:21 90:9 100:23 101:7 101:14 101:17 102:22 103:7 104:4 104:9 104:14 105:3 105:4 105:18 106:4 107:8 108:4 108:12 109:8 109:11 109:14 110:6 110:22 111:1 111:21 112:11 113:1 113:12 113:15 113:21 113:23 113:25 114:9 114:16 114:20 115:5 115:17 115:25 116:1 116:13 117:1 117:15 118:8 118:22 120:11 121:3 121:4 121:7 122:6 123:24 124:6 126:19 127:7 127:10 128:14 128:18 128:21 129:1 129:6 129:8 129:11 129:18 130:2 130:6 130:17 130:19 131:12 131:18 132:3 132:7 133:5 135:20 141:13 143:15 143:16 146:2 147:9 149:8 149:12 149:13 150:3 152:8 152:10 153:7 153:12 154:16 155:19 156:1 156:2 156:4 156:8 157:24 159:4 159:9 159:12 160:1 160:9 161:2 161:13 161:18 162:1 162:13 162:17 163:7 163:13 163:15 163:19 164:1 165:1 165:5 165:13 166:5 166:10 166:12 166:19 166:22 167:11 168:19 169:11 169:12 169:20 169:23 170:1 170:10 170:20 170:23 |
| **year-and-a-half**(2) 57:24 75:23 | | | | | |
| **years**(5) 24:14 32:22 81:6 87:20 90:7 | | | | | |
| **yell**(1) 72:17 | | | | | |
| **yes**(20) 16:7 21:22 30:3 44:2 65:21 69:17 80:19 92:20 100:11 105:21 114:14 121:3 125:7 137:17 147:24 162:1 163:20 165:15 169:8 170:19 | | | | | |
| **yet**(9) 12:17 20:12 40:21 46:3 111:11 119:24 121:1 141:15 157:4 | | | | | |
| **yield**(1) 120:10 | | | | | |
| **yields**(1) 51:3 | | | | | |
| **york**(10) 2:20 2:36 3:23 3:37 4:19 4:51 5:15 5:38 155:9 168:22 | | **you'd**(2) 12:24 13:3 | | | |
| | | **you'll**(12) 16:17 36:6 51:19 60:8 79:1 86:3 86:6 86:9 106:3 122:2 122:5 124:3 | | **yourself**(1) 37:12 |
| **you**(301) 11:6 11:17 11:24 12:14 12:16 13:1 13:1 13:2 13:17 13:17 13:19 13:21 13:23 13:24 14:17 14:22 18:5 18:6 18:7 18:8 18:11 18:13 18:14 20:19 21:14 21:1 22:1 22:2 22:9 22:14 22:15 22:16 24:11 24:24 25:7 26:23 27:6 30:1 30:6 30:7 30:13 30:13 30:18 30:23 31:5 31:6 31:8 33:10 34:4 36:19 36:21 36:25 37:3 37:4 37:4 37:4 37:5 37:7 37:11 39:1 39:8 39:16 40:12 41:4 41:5 41:10 41:11 41:15 42:5 42:6 42:8 42:9 42:16 43:22 43:25 44:16 44:24 45:8 46:6 46:6 46:7 46:12 46:20 49:19 49:20 49:21 51:1 51:15 51:2 52:2 52:3 53:10 56:17 58:13 58:15 58:19 58:20 59:22 60:25 61:4 61:5 61:19 61:22 62:6 62:7 63:14 63:16 63:24 63:25 64:2 64:2 65:17 65:23 66:2 66:3 66:6 66:19 67:3 67:9 67:14 67:16 70:12 71:2 71:15 71:24 72:3 72:10 72:12 72:13 72:19 73:9 74:5 74:7 74:16 74:17 75:12 75:25 76:3 77:7 77:12 78:12 78:16 79:6 79:13 79:14 84:16 85:21 85:22 86:12 86:16 87:19 87:22 88:13 88:14 90:1 92:1 94:17 94:20 94:21 95:25 96:23 97:20 98:20 98:21 99:1 99:9 99:22 100:1 100:2 100:14 100:16 100:17 100:18 100:24 101:21 101:24 101:25 102:4 102:7 102:17 102:17 102:19 103:8 103:9 103:10 103:14 103:16 104:6 104:6 104:10 104:11 104:23 105:11 105:15 105:19 105:21 105:25 106:7 106:8 106:9 107:5 107:6 107:7 107:11 107:19 108:5 108:10 108:14 109:2 109:2 109:11 109:14 109:17 109:17 109:20 110:16 110:23 111:2 111:17 111:18 112:5 112:6 112:8 112:8 112:10 112:12 112:17 112:22 113:7 113:8 113:14 113:25 114:1 114:25 115:10 115:13 115:25 116:6 116:9 117:1 117:10 117:15 117:16 117:17 117:18 118:7 118:9 118:10 118:16 118:23 118:24 119:6 119:8 119:14 119:18 120:6 120:21 120:24 121:4 121:21 121:23 121:25 122:1 122:1 123:5 123:13 123:17 124:25 125:3 125:8 125:9 125:22 126:14 126:15 126:16 126:18 126:24 128:17 128:23 129:6 129:7 130:17 130:18 132:3 132:4 132:23 133:8 133:10 134:16 134:17 135:9 135:10 136:3 136:5 136:12 136:15 136:15 137:10 137:23 138:11 138:12 | | **you're**(24) 16:6 16:19 16:22 62:8 66:10 72:25 72:25 102:5 108:16 109:15 122:7 124:21 126:17 128:19 129:1 139:1 142:24 143:13 144:21 155:18 156:22 162:4 162:2 166:17 | | **zabel**(2) 9:45 9:45 |
| | | | | **zell**(2) 34:12 44:9 |
| | | **you've**(19) 27:2 28:23 45:9 80:5 80:7 88:18 95:4 101:19 101:20 102:16 103:1 112:6 122:4 125:1 145:6 145:21 149:9 151:4 155:17 | | **zell's**(1) 34:13 |
| | | | | **zensky**(52) 4:14 99:11 99:12 100:5 100:7 100:12 100:19 102:22 104:25 105:2 110:19 110:21 110:24 111:1 111:4 114:4 114:8 114:14 116:16 116:19 117:7 117:9 117:23 118:1 118:4 118:6 118:8 118:11 118:21 119:21 120:4 122:11 123:15 129:12 130:11 132:13 133:8 149:13 149:14 151:14 151:22 151:24 152:6 152:22 153:1 153:12 153:21 154:1 154:16 154:19 155:6 155:24 |
| | | **young**(1) 4:22 | | **zero**(2) 121:12 122:21 |
| | | | | **zloto**(1) 7:45 |
| | | | | **zuckerman**(1) 2:23 |