**<u>EXHIBIT 1</u>**

**REVISED PROPOSED ORDER**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### ORDER (I) APPROVING GENERAL DISCLOSURE STATEMENT AND SPECIFIC DISCLOSURE STATEMENTS; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLANS OF REORGANIZATION; (III) APPROVING FORMS OF BALLOTS, MASTER BALLOTS AND RELATED INSTRUCTIONS; (IV) APPROVING SOLICITATION PACKAGE CONTENTS AND AUTHORIZING DISTRIBUTION OF SOLICITATION AND NOTICE MATERIALS; (V) FIXING VOTING RECORD DATE; (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION; (VII) SETTING CONFIRMATION SCHEDULE AND ESTABLISHING PARAMETERS ON CONFIRMATION-RELATED DISCOVERY; (VIII) ESTABLISHING NEW DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS; (IX) AUTHORIZING EXPANSION OF BALLOTING AND

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

**TABULATION AGENT'S RETENTION AND ALLOCATION OF COSTS OF SAME; AND (X) GRANTING RELATED RELIEF**

Upon the motion, dated November 8, 2010 (the "Motion"), of the Debtors,[2] for

entry of an order, pursuant to sections 105, 1125, 1126, 1128 and 1129 of the Bankruptcy Code,

Bankruptcy Rules 2002, 3003, 3017, 3018 and, and Local Rule 3017-1, (i) establishing

procedures for the solicitation and tabulation of votes to accept or reject the four (4) plans of

reorganization that have been proposed by the Proponents for Tribune Company and its

Subsidiaries[3] (collectively the "Plans", as such Plans may be amended or supplemented from

time to time), (ii) approving the forms of Ballots and Master Ballots, together with their related

Instructions, to be used in voting to accept or reject the Plans and in making various elections

called for under the Plans, (iii) approving the contents of the solicitation packages and

authorizing the distribution of solicitation and notice materials as described in the Motion, (iv)

fixing the voting record date for purposes of determining which Holders of Claims against the

Debtors are entitled to vote on the Plans, (v) establishing notice and objection procedures in

respect of the hearing to consider confirmation of the Plans, (vi) fixing necessary dates and

deadlines in connection with the confirmation process and establishing parameters on discovery

relating to the confirmation process and confirmation hearing, (vii) establishing a renewed

deadline for return of the Media Ownership Certifications, (viii) authorizing expansion of the

existing retention of the Voting Agent to include services as balloting and tabulation agent for all

of the Plans, and (ix) granting related relief, and it appearing that adequate and sufficient notice

of the Motion has been given under the circumstances; and upon the filing by the Debtors of the

General Disclosure Statement and upon the filing by the Proponents (including the Debtors) of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or, as applicable, in the particular Plan to which a particular term pertains.

[3] All references to the Plan in this Order are also references to any Prepackaged Plan(s), as such term is defined in each of the Plans.

the Plans and the Specific Disclosure Statements relating to the Plans; and the Court having

jurisdiction over this matter; and it further appearing that adequate and sufficient notice, pursuant

to Bankruptcy Rules 2002(b) and 3017, of the hearing on the Motion and of the hearing to

consider approval of the General Disclosure Statement and the Specific Disclosure Statements

has been given; and all objections to the Motion, the General Disclosure Statement and the

Specific Disclosure Statements having been withdrawn or overruled for reasons stated on the

record at the Disclosure Statement Hearing; and after due deliberation and upon the Court's

determinations that the General Disclosure Statement and the Specific Disclosure Statements

should be approved and that the relief requested in the Motion is in the best interests of the

Debtors, their Estates, creditors, and other parties in interest, and sufficient cause appearing

therefor,

## THE COURT FINDS AND DETERMINES THAT:

A.    The General Disclosure Statement and each of the following specific

disclosure statements (collectively, the "Joint Disclosure Statement") contain "adequate

information" within the meaning of section 1125 of the Bankruptcy Code:

1. Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.;

2. Specific Disclosure Statement for the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in Its Capacity as Successor Indenture Trustee for the PHONES Notes;

3.  Specific Disclosure Statement for First Amended Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Certain Holders of Step One Senior Loan Claims; and

4.  Amended Specific Disclosure Statement for Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management, L.P.

B.    The forms of Ballots and Master Ballots annexed to this Order as <u>Exhibits</u> <u>A</u> through <u>C</u>, respectively, (i) are sufficiently consistent with Official Form No. 14 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, including, without limitation, the solicitation and tabulation of votes on multiple Plans and the making of elections called for under the various Plans, and (iii) are appropriate for each Class of Claims entitled to vote to accept or reject the Plans.

C.    The Ballots and Master Ballots require the furnishing of sufficient information to assure that (i) duplicate Ballots and Master Ballots are not submitted and tabulated and (ii) the Master Ballots reflect the votes of the Beneficial Owners of the Debtors' Senior Notes and PHONES Notes.

D.    The period, as set forth below, during which the Proponents may solicit acceptances of the Plans is a reasonable and adequate period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plans.

E.    The voting procedures set forth in the Motion, as modified by this Order, and the voting instructions accompanying the forms of Ballots and Master Ballots provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

F.    The procedures associated with the Ballots and Master Ballots with respect to a party's right to rank the Plans and make the elections set forth in each of the Plans,

4

including, without limitation, to grant the releases contained in the Debtor/Committee/Lender Plan and the Step One Lender Plan, are fair and reasonable.

   G. The contents of the Solicitation Packages and other notices, as set forth in the Motion, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice of the Plans and the Confirmation Hearing to all interested parties.

   H. The combination of direct and published notice of the Plans and Confirmation Hearing, as set forth in the Motion, provides good and sufficient notice of the Plans, the Confirmation Hearing and the opportunity to vote on and/or object to the Plans and satisfies the requirements of due process with respect to all known and unknown creditors of the Debtors.

   I. The notice, solicitation, and voting procedures set forth in the Motion with respect to Holders of Claims against and Interests in any Guarantor Non-Debtors or other Subsidiary Non-Debtors that commence Chapter 11 Cases provide adequate notice of the Pre-Packaged Plans and a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

   J. Taking into account the extensive documentary and other factual record already developed in the Debtors' chapter 11 cases with respect to the LBO-Related Causes of Action (including, but not limited to, the materials provided to and developed by the Court-appointed Examiner), the discovery-related parameters proposed in the Motion are in the best interests of the Debtors' estates, are fair and reasonable under the circumstances, and will promote the efficient conduct of the Confirmation Hearing.

   **NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted, and any and all objections to the Motion are overruled.

2.     The Joint Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

3.     <u>Record Date</u>.  **December 6, 2010** is established as the Record Date for purposes of determining (i) the Holders of Claims in Voting Classes that are entitled to vote on the Plans, and (ii) the Holders of Claims and Interests that are entitled to receive Solicitation Packages or other notice materials respecting the Plans and the Confirmation Hearing, as set forth in the Motion.

4.     <u>Solicitation Package</u>.  The Proponents are authorized and empowered to distribute, through the Voting Agent, to Holders of Claims in the Voting Classes that have not been disallowed for voting purposes and that otherwise qualify to vote to accept or reject some or all of the Plans in accordance with the procedures in this Order ("<u>Voting Claims</u>"), by first-class mail, the Solicitation Package, which shall contain copies of:

   a.  a CD-ROM containing the General Disclosure Statement and the Specific Disclosure Statements approved by this Court at the Disclosure Statement Hearing and the Plans related thereto, and other exhibits annexed thereto;

   b.  the Solicitation Order, excluding exhibits annexed thereto, which may be included on the CD-ROM referred to in item (a) of this paragraph;

   c.  the Confirmation Hearing Notice;

   d.  an appropriate number of Ballots, together with applicable Instructions and one or more pre-paid return envelopes;

   e.  the Responsive Statements; and

   f.  appropriate election forms for making various elections called for under the Plans (attached hereto as Exhibit F).

5.      The Responsive Statements shall be included in the Solicitation Packages in four (4) hard copy booklets, with all Responsive Statements proposed by the Proponents of a particular Plan bound together in a single booklet.

6.      The Ballots shall be color-coded to correspond to each particular Plan, with Ballots for the Debtor/Committee/Lender Plan being blue, Ballots for the Noteholder Plan being purple, Ballots for the Bridge Lender Plan being green, and Ballots for the Step One Lender Plan being yellow; provided, however, that the foregoing color-coding shall not apply to the beneficial Ballots nor the Master Ballots for the voting of the Senior Noteholder Claims and the PHONES Notes Claims (as well as any Claims based on the PHONES Notes relating to PHONES Notes purportedly put to Tribune Company for exchange prior to the filing of the Debtors' chapter 11 petitions), which shall be consolidated Ballots and Master Ballots for voting on all Plans and making the elections called for thereunder and shall not be color-coordinated to any particular Plan.

7.      The Proponents are authorized to distribute, through the Voting Agent, the Joint Disclosure Statement and the Plans, and all exhibits thereto, and this Order, on CD-ROM; provided, however, that any party receiving the CD-ROM may request hard copies of the foregoing documents, without charge, from the Voting Agent; and provided further, that the Proponents may distribute, through the Voting Agent, hard copies of the General Disclosure Statement, the Specific Disclosure Statements, the Plans or other exhibits annexed thereto as part of the Solicitation Packages to the extent necessary to facilitate a timely distribution of the Solicitation Packages.

8.      To the extent that the following parties have not otherwise received a Solicitation Package, as of the commencement of the solicitation process, the Proponents shall

distribute, though the Voting Agent, (a) a CD-ROM containing the Joint Disclosure Statement, together with the Plans and other exhibits annexed thereto, (b) the Solicitation Order, excluding exhibits annexed hereto (which may be included on the CD-ROM described in clause (a)), and (c) the Confirmation Hearing Notice to:  (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for each of the Proponents; (iv) counsel to the Loan Agents for Tribune Company's pre-petition loan facilities; (v) counsel to the administrative agent for the Debtors' post-petition financing facility; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.

      9.    Service on such parties of the Joint Disclosure Statement and the Plans, together with their exhibits and other materials in the Solicitation Packages, fulfills the obligations of the Proponents of the relevant Plans under Bankruptcy Rules 2002(b) and 3017(d).

      10.    A transferee of a Voting Claim shall be entitled to receive a Solicitation Package on account of a transferred Claim only if:  (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Record Date, or (b) the transferee files, no later than the Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence such transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

      11.    Where a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall be bound by any vote (and the consequences thereof) and, if applicable, any election(s) or plan preference rankings made on the Ballot by the Holder as of the Record Date of such transferred Claim.

12.     To the extent a Claim has been temporarily disallowed for voting purposes pursuant to an order of this Court, the Holder of such Claim shall not be entitled to receive a Solicitation Package.

13.     To the extent a Class of Claims is entitled to vote under one or more of the Plans but is not entitled to vote under other Plans, the Holders of such Claims shall be provided with a full Solicitation Package.

14.     <u>Notice to Holders of Non-Voting Claims and Interests</u>.  The Proponents are not required to transmit Solicitation Packages to parties not entitled to vote on any of the Plans.  The Proponents shall instead mail, or cause to be mailed, to each member of the Non-Voting Classes copies of the Confirmation Hearing Notice and this Order, excluding the exhibits annexed hereto.  If the Holder of a Claim in any of the Non-Voting Classes makes a specific request to the Voting Agent, such party shall receive a CD-ROM containing the Joint Disclosure Statement, together with the Plans and other exhibits annexed thereto.

15.     <u>Notice to Holders of Customer Program Claims</u>.  The Proponents are not required to provide Solicitation Packages, or any other form of notice of the Plans and/or the Confirmation Hearing, to the Holders of Customer Program Claims; <u>provided</u>, <u>however</u>, that the Debtors may provide a form of notice substantially in the form previously provided to Holders of Customer Program Claims in connection with the solicitation and notice process on the Prior Plan that may not have received such notice in connection with the solicitation and notice process on the Prior Plan.

16.     <u>Holders of Intercompany Claims</u>.  The Proponents are not required to distribute Solicitation Packages or other materials respecting the Plans and the Confirmation Hearing to Holders of Intercompany Claims for voting on the Debtor/Committee/Lender Plan.

Intercompany Claims are unimpaired under the Bridge Lender Plan and are accordingly deemed to accept such Plan. Intercompany Claims are impaired under the Step One Lender Plan and are accordingly entitled to vote to accept or reject the Step One Lender Plan. Issues relating to the acceptance or rejection of the Noteholder Plan by Holders of Intercompany Claims shall be reserved for and, if necessary, determined at the Confirmation Hearing, and the rights and ability of the Holders of such Claims to vote to accept or reject the Noteholder Plan on account of such Claims shall be preserved until determination at the Confirmation Hearing.

17.    <u>Notices to Holders of Claims Against and Interests in Guarantor Non-Debtors or Subsidiary Non-Debtors that Become Debtors, if Any</u>. The Proponents are not required to transmit Solicitation Packages to Holders of Claims against and Interests in any Guarantor Non-Debtor or other Subsidiary Non-Debtor in connection with the Prepackaged Plans.

18.    <u>Non-Delivery of Solicitation Materials to Undeliverable Addresses</u>. With respect to addresses from which notices of the hearing to approve the Prior Disclosure Statement were returned as undeliverable by the United States Postal Service, the Voting Agent, on behalf of the Proponents, is excused from distributing Solicitation Packages or any other materials or notices (including any updates, supplements, amendments or modifications thereto) to those persons or entities listed at such addresses unless the Voting Agent has been or is provided with an accurate address for any such entity prior to the distribution of the solicitation materials, and failure to distribute Solicitation Packages or other materials to such persons or entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline (as defined below) or violate Bankruptcy Rule 3017(d).

19.     <u>Approving Forms of Ballots, Master Ballots and Instructions, Distribution Thereof</u>.  The Ballots and Master Ballots, together with their accompanying instructions, which shall be substantially in the forms annexed hereto as <u>Exhibits A</u> through <u>C</u>, respectively, are hereby approved.

20.     The Voting Agent shall customize, to the extent possible, each Ballot to include each Holder's name, address, and the amount (and, where applicable, the classification) of such Holder's Claim.

21.     As soon as practicable following entry of this Order, the Debtors shall assemble sample Solicitation Packages for each Class of Claims under each of the Plans and shall provide, to the Proponents of each Plan, Solicitation Packages for the Classes of Claims that are relevant under the Plan proposed by such Proponents.

22.     Wherever possible, creditors who have more than one Claim against one or more of the Debtors shall receive only one Solicitation Package and one or more Ballots, as necessary.

23.     With respect to Solicitation Packages to be distributed to Holders of Senior Noteholder Claims and PHONES Notes Claims (other than any Claims based on the PHONES Notes relating to PHONES Notes purportedly put to Tribune Company for exchange prior to the filing of the Debtors' chapter 11 petitions), the Proponents shall distribute, or cause to be distributed, a reasonably sufficient number of Solicitation Packages, including beneficial Ballots, to Voting Nominees for distribution to the Beneficial Owners of the Claims for whom such Voting Nominee acts.  Upon written request with supporting documentation, the Voting Agent shall reimburse each Voting Nominee for its reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages.

24.     Each Voting Nominee is required to (i) forward the Solicitation Packages to Beneficial Owners, (ii) receive returned beneficial Ballots from the Beneficial Owners, (iii) tabulate the results according to the instructions set forth in the Master Ballot, return such results in a Master Ballot by the Voting Deadline, and (iv) retain the underlying beneficial Ballots received from the Beneficial Owners for inspection for a period of one (1) year following the Voting Deadline.

25.     With respect to the Holders of any Claims based on PHONES Notes that relate to PHONES Notes purportedly put to Tribune Company for exchange prior to the filing of the Debtors' chapter 11 petitions, the Proponents shall distribute, or shall cause the Voting Agent to distribute, Solicitation Packages, including a beneficial Ballot, to the record Holder of the relevant PHONES Notes as of the date and time such PHONES Notes were put to Tribune Company for exchange, to the extent the Debtors are able to identify, in consultation with the PHONES Notes Indenture Trustee and in the exercise of reasonable diligence, such record Holders.  It shall be the responsibility of such record Holder to provide the Solicitation Package, including the beneficial Ballot, to any Beneficial Owner(s) of such PHONES Notes, and neither the Voting Agent nor any of the Proponents shall have any responsibility to provide Solicitation Packages or beneficial Ballots to any party other than such record Holder.  The beneficial Ballots to be provided in Solicitation Packages sent on account of PHONES Notes purportedly put to Tribune Company for exchange but not paid in cash prior to the filing of the Debtors' chapter 11 petitions, and or the instructions accompanying such Ballots, shall provide that they are to be returned directly to the Voting Agent and not to the relevant record Holders, and the process of returning such beneficial Ballots directly to the Voting Agent is approved.  The allowance of Claims on account of PHONES Notes purportedly put to Tribune Company for exchange but not

paid in cash prior to the filing of the Debtors' chapter 11 petitions shall be solely for voting purposes pursuant to Bankruptcy Rule 3018(a), and shall not constitute a determination by the Court as to the allowance or classification of such Claims for any other purpose.

26.    The contents of the Solicitation Package and the manner of service of the Solicitation Package satisfy the requirements of Bankruptcy Rule 3017(d).

27.    <u>Solicitation Commencement</u>.  The Voting Agent shall complete mailing of the solicitation materials on or before **December 22, 2010**.

28.    <u>Voting Deadline</u>.  Ballots and Master Ballots must be properly executed and completed, and the originals thereof shall be delivered to the Voting Agent so as to be actually received by no later than **January 28, 2011 at 4:00 p.m. (prevailing Eastern Time)** by (a) first-class mail postage prepaid in the return envelope provided with the Ballot, or (b) personal delivery or overnight courier, in each case to the addresses provided on the Ballots or Master Ballots, as applicable, or in the instructions for such Ballots and Master Ballots.

29.    The Voting Agent is required to file the results of its tabulation of votes to accept or reject the Plans and accompanying election results no later than fourteen (14) days following the Voting Deadline (**i.e., February 11, 2011**).

30.    <u>Ballot Tabulation Procedures</u>.  Solely for purposes of voting to accept or reject the Plan, and not for any other purposes, and without prejudice to the rights of any party (including, without limitation, any of the Proponents) in any other context, each Holder of a Claim in a Voting Class shall be entitled to vote the amount of such Claim as set forth in the Debtors' filed Schedules (as may be amended from time to time) unless such Holder has filed a proof of claim, in which event such Holder would be entitled to vote the amount of such Claim as set forth in such proof of claim, subject to the following:

13

a.  if a Claim is deemed "Allowed" in accordance with any of the Plans or an order of this Court, such Claim shall be allowed for voting purposes in the "Allowed" amount set forth in the applicable Plan or this Court's order;

b.  if a Claim has been estimated or otherwise allowed for voting purposes by order of this Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by this Court for voting purposes only;

c.  if no proof of claim has been timely filed and the Claim has not been disallowed, then the vote amount shall be the non-contingent, liquidated, and undisputed amount as set forth in the Schedules;

d.  if a proof of claim has been timely filed and the Claim has not been disallowed, and the Claim is not (i) the subject of a pending objection, (ii) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), or (iii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), the vote amount is the liquidated amount as set forth on the proof of claim;

e.  if a proof of claim has been timely filed and the Claim has not been disallowed, and the Claim is (i) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), or (ii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), such claim shall be temporarily allowed for voting purposes only, and not for any other purposes and without prejudice to the rights of any of the Proponents in any other context, at $1.00;

f.  if (i) a proof of claim has been filed and is the subject of a pending objection, or (ii) if the Debtors have amended or supplemented the Schedules to (a) eliminate a Claim or (b) to change the nature or characterization of a Claim but the thirty (30) day period specified in the Bar Date Order for the relevant Holder of such Claim to file a proof of claim in response to such amendment has not yet passed, then such Claim shall be disallowed for voting purposes, except to the extent and in the

manner as may be set forth in the relevant objection, amendment or supplement;

g.  to the extent that a Holder of Claims has filed or purchased duplicative claims that are classified in the same Class under a particular Plan, such Holder shall be provided with a single Solicitation Package and a single Ballot for voting a single Claim in such Class, regardless of whether an objection has been filed to the allowance of such duplicate Claims;

h.  where a Holder of Claims has asserted its Claims against no particular Debtor, or against all Debtors without filing separate proofs of claim against each Debtor as required by the Bar Date Order, and the Voting Agent is not able to determine which Debtor such Claims should properly be asserted against after the exercise of reasonable diligence, such Holder shall not be entitled to a vote on account of such Claims;

i.  Claims, whether scheduled or filed, for $0.00 will be disallowed for voting purposes;

j.  if a proof of claim has been filed in a liquidated amount but also purports to include other, unliquidated amounts, the vote amount shall be solely the liquidated, non-disputed amount set forth on the proof of claim; and

k.  if a proof of claim has been filed after the applicable bar date without such filing having been expressly authorized by the Court, the Holder of the Claim reflected in such proof of claim shall not be entitled to vote to accept or reject any of the Plans on account of such Claim.

31.    Notwithstanding the foregoing tabulation procedures, Holders of Senior Loan Claims, Senior Guaranty Claims (or Senior Loan Guaranty Claims, as defined in the relevant Plan), the Swap Claim, Bridge Loan Claims, Bridge Loan Guaranty Claims, Senior Noteholder Claims, and PHONES Notes Claims (including, for purposes of this Order, Claims on account of PHONES Notes purportedly put to Tribune Company for exchange but not paid in cash prior to the filing of the Debtors' chapter 11 petitions) as of the Record Date shall be entitled to vote to accept or reject all of the Plans, regardless of whether such Claims are deemed disputed under one or more of the Plans or are the subject of a pending objection.

32.    Any Ballot that partially rejects and partially accepts any of the Plans will not be counted.

33.    Where the Holder of a Claim attempts to vote or to make an election or ranking on their Ballot (or on a separate election form) that is expressly prohibited by the terms of the applicable Plan or on the face of the relevant Ballot or election form, as applicable (including, without limitation, where the Holder of a Claim in a Voting Class votes to accept more than one Plan, and attempts to give the same ranking to more than one Plan, or where the Holder of a Claim in a Voting Class attempts to rank a Plan that they did not vote to accept), the impermissible vote, election and/or ranking shall not be tabulated by the Voting Agent.  For the avoidance of doubt, if the Holder of a Claim makes an election or a ranking of the Plans that is impermissible, it shall be only such election or ranking that is not tabulated, and such Holder's vote(s) to accept or reject the Plans shall be tabulated provided that such vote(s) otherwise comply with the procedures set forth in this Order.

34.    The following types of Ballots will <u>not</u> be counted in determining whether the Plans have been accepted or rejected:

a.    any Ballot or Master Ballot that is otherwise properly completed, executed and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the relevant Plan, or that indicates both acceptance and rejection of the relevant Plan;

b.    any Ballot or Master Ballot received after the Voting Deadline, unless the Proponents of the relevant Plan, in their sole discretion, shall have granted in writing an extension of the Voting Deadline with respect to such Ballot or Master Ballot;

c.    any Ballot or Master Ballot containing a vote that the Bankruptcy Court determines, after notice and a hearing, was not in good faith or was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

d.    any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.      any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

f.      any Ballot or Master Ballot without an original signature; and any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

35.     The following voting procedures and standard assumptions shall be used in tabulating the Ballots, subject to any contrary order(s) of this Court:

a.      delivery of a completed Ballot or Master Ballot to the Voting Agent will be deemed made only when the original, executed Ballot or Master Ballot is actually received by the Voting Agent.

b.      The Proponents of a particular Plan, in their sole discretion, may waive any defect in any Ballot or Master Ballot at any time, including failure to file such Ballot or Master Ballot in a timely manner, either before or after the close of voting, and without notice.  Unless the Ballot or Master Ballot being furnished is submitted on or prior to the Voting Deadline, the Proponents of a particular Plan, in their sole discretion, may reject any defective or late-filed Ballot or Master Ballot as invalid and, therefore, decline to utilize it in connection with confirmation of the applicable Plan.

c.      After the Voting Deadline, no vote may be withdrawn without the prior consent of the Proponents of the particular Plan on which the vote has been cast, or authorization from the Bankruptcy Court.

d.      Any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Proponents of the relevant Plan (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

e.      Neither the Proponents, nor any other person or entity, will be under any duty to provide notification to Holders of Claims of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any of them incur any liabilities for failure to provide such notification.  Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

The Proponents shall provide reports of any waivers or consents granted under the foregoing subsections to the Voting Agent, and the Voting Agent shall maintain a record of any waivers or consents granted under the subsections of this paragraph.

17

36.    <u>Master Ballot Tabulation</u>.  With respect to the tabulation of Master Ballots and Beneficial Ballots for Senior Noteholder Claims and PHONES Notes Claims (other than Claims based on PHONES Notes purportedly put to Tribune Company for exchange but not paid prior to the Petition Date) cast by Voting Nominees and Beneficial Owners, respectively, the principal amount held by Voting Nominees and Beneficial Owners on the Record Date, as evidenced by the record and depository listings will be used as the amount to tabulate acceptance or rejection of the Plans (although any principal amounts may be adjusted by the Voting Agent to account for prepetition interest).  The following additional rules shall apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners on each of the Plans:

      a.      Votes cast by Beneficial Owners through a Voting Nominee will be compared to the positions held by such Beneficial Owners in the PHONES Notes or the applicable tranche of Senior Notes as of the Record Date, as evidenced by the record and depository listings.  Votes submitted by a Voting Nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of Senior Notes or PHONES Notes held by such Voting Nominee.

      b.      To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Voting Nominees.

      c.      To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject each Plan in the same proportion as the votes to accept and reject such Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the PHONES Notes or the applicable tranche of Senior Notes.

      d.      Where a Beneficial Owner holds its Senior Notes or PHONES Notes through more than one Voting Nominee, it must execute a separate Beneficial Ballot for each block of Senior Notes or PHONES Notes, as applicable.  Such Beneficial Owner must vote all of its Senior Noteholder Claims or PHONES Notes Claims in the same manner, to either accept or reject each Plan.  If such Beneficial Owner returns more than one Beneficial Ballot to more than one Voting Nominee voting different Senior Noteholder Claims or PHONES Notes Claims, and the Beneficial

18

Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

e. In the event of a conflict between a vote or election reflected on a Beneficial Ballot and the same vote or election as reflected in the tabulation of such vote or election on a Master Ballot, the vote and elections, if any, on the relevant Beneficial Ballot shall control.

37.     In addition to the foregoing tabulation procedures, in the event a Holder of Claims or a Voting Nominee casts multiple Ballots or Master Ballots, respectively, voting the same Claim(s) before the Voting Deadline, the last dated and valid Ballot or Master Ballot received before the Voting Deadline be deemed to reflect the voter's intent and supersede any prior Ballots or Master Ballots.  If a Holder of Claims or a Voting Nominee casts multiple Ballots or Master Ballots received by the Voting Agent on the same day, but which are voted inconsistently, unless a supplemental Master Ballot respecting such Claims is subsequently filed, such Ballots or Master Ballots shall not be counted.

38.     A Holder of Voting Claims in more than one Voting Class under a particular Plan is required to execute a separate Ballot for its Claims in each such Class, and in the case of the Senior Notes and the PHONES Notes (other than PHONES Notes not voted through a Voting Nominee), each Beneficial Owner must execute a separate Beneficial Ballot for each block of securities that it holds through any Voting Nominee and must return each such Beneficial Ballot to the appropriate Voting Nominee.

39.     In the case of (i) Senior Loan Claims and Senior Guaranty Claims or Senior Loan Guaranty Claims (whether or not classified into Step One Senior Loan Claims/Step One Senior [Loan] Guaranty Claims and Step Two Senior Loan Claims/Step Two Senior [Loan] Guaranty Claims) and (ii) Bridge Loan Claims and Bridge Loan Guaranty Claims, the Holders of such Claims shall be provided with a single Ballot for voting on a particular Plan that will be used jointly to vote the Senior Loan Claims and Senior Guaranty Claims (or Senior Loan

Guaranty Claims, as applicable) and/or a single Ballot that will be used jointly to vote the

relevant Bridge Loan Claims and Bridge Loan Guaranty Claims, as applicable.  Such votes will

also be, to the extent specified in each of the Plans, votes to accept or reject the Prepackaged

Plan of any Guarantor Non-Debtor that becomes a Debtor in the relevant Classes.

   40. Each vote to accept the Debtor/Committee/Lender Plan in each of Classes

50C through 111C (Senior Guaranty Claims) will also be counted as an acceptance of the

compromise and settlement set forth in section 11.2.5 of the Debtor/Committee/Lender Plan.

Similarly, each vote to accept the Step One Lender Plan in Classes 50C(i) through 111C(i) and

50C(ii) through 111C(ii) will be counted as an acceptance of the compromise and settlement set

forth in Section 11.3.5 of the Step One Lender Plan.

   41. <u>Rule 3018 Motions</u>.  If any Holder of a Claim wishing to have its Claim

allowed for purposes of voting to accept or reject one or more of the Plans in a manner that is

inconsistent with the amount or classification(s) set forth on the Ballot(s) it received, or if any

party that did not receive a Ballot wishes to have its Claim temporarily allowed for voting

purposes only, such Holder must serve on the Proponents and file with this Court, on or before

**January 8, 2011**, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily

allowing such Claim for purposes of voting (the "<u>3018 Motion</u>").  A 3018 Motion must set forth,

with particularity, the amount and classification in which such Holder believes its Claim should

be allowed for voting purposes and the evidence in support of its belief, as well as the Plan(s) as

to which such Holder seeks to have its Claim allowed for voting purposes.  In respect of any

timely-filed 3018 Motion, the Ballot(s) in question shall be counted against the Plans specified

by the Holder of the relevant Claim (a) in the amount established by this Court in an order

entered on or before the Voting Deadline, or (b) if such an order has not been entered by the

Voting Deadline and unless the Proponents of the applicable Plans and the party submitting the
3018 Motion have come to an agreement as to the relief requested in the 3018 Motion, in an
amount equal to (i) the liquidated, non-contingent, and non-disputed amount of such Claim as set
forth in the Schedules; (ii) if a proof of claim has been timely filed in respect of such Claim, the
liquidated, non-contingent, and non-disputed amount set forth in such proof of claim; or (iii) if
neither (i) nor (ii) applies, such party shall not have a Ballot counted at all.  For the avoidance of
doubt, Claims objected to after the Record Date shall be entitled to vote on the Plans without the
necessity of filing a Rule 3018 Motion seeking temporary allowance of such claim for voting
purposes.

   42.  **January 20, 2011 at 10:00 a.m. (prevailing Eastern time)** is established
as the date for a hearing to consider any and all 3018 Motions.

   43.  <u>Voting Agent</u>.  Epiq Bankruptcy Solutions, LLC (the "<u>Voting Agent</u>")
shall be retained as Voting Agent for the consolidated noticing, solicitation, and tabulation
process respecting the Plans, notwithstanding the terms of any other agreement between the
Voting Agent and the Debtors, or any order entered with respect to the retention of the Voting
Agent by the Debtors.

   44.  The Voting Agent's reasonable fees, costs and expenses in performing its
duties in connection with the noticing, solicitation, and tabulation process respecting the Plans
shall be allocated and paid 50% by the Debtors and 50% in the aggregate by the Proponents of
the Noteholder Plan, the Bridge Lender Plan, and the Step One Lender Plan, with such 50%
share to be paid pro rata by those Proponents (<u>i.e.</u>, one-sixth of the overall fees, costs and
expenses of the Voting Agent shall be allocated to the Proponents of each of the Plans).  Nothing
in this allocation shall prevent any of the Proponents of the Noteholder Plan, the Bridge Lender

Plan, or the Step One Lender Plan from seeking to reallocate such costs, or asserting an administrative expense claim or a request for substantial contribution on account of its allocable share of such fees, costs, and expenses.

45.     The Proponents of each of the Plans shall be provided with interim tabulation reports and data respecting voting on the Plans in the same manner and fashion as such reports and data are provided to the Debtors.

46.     <u>Media Ownership Certification Deadline</u>.  Any Holder of a Claim or Claims that (i) is anticipated to receive New Common Stock or New Warrants under any Plan, (ii) believes that the amount of its Claims (or Claims that it intends to acquire prior to the Effective Date of a confirmed Plan) may entitle it to receive (for any reason, including, but not limited to, as a result of the distribution of New Warrants or New Class B Common Stock in lieu of New Class A Common Stock to other Holders of applicable Claims, as contemplated in section 5.4.2 of each of the Plans) five percent (5%) or more of the New Class A Common Stock under a Plan (a "<u>Potential 5% Holder</u>"), and (iii) wishes to remain eligible to receive 5% or more of the New Class A Common Stock, shall contact the Debtors and execute and submit to the Debtors a Media Ownership Certification on or prior to **January 16, 2011** (the "<u>Certification Deadline</u>").

47.     The Debtors shall provide the Proponents of the other Plans with the identity of Potential 5% Holders known to them as of the date of this Order as soon as practicable after entry of this Order.  The Debtors will provide copies of all Media Ownership Certifications to the other Proponents as soon as practicable following the Certification Deadline.

48.     In the event a Potential 5% Holder does not submit an executed Media Ownership Certification by the Certification Deadline, and/or is not made a "party" to the FCC

Applications, in accordance with section 5.4.2 of each of the Plans, such Potential 5% Holder

may, in the event it otherwise would be entitled under any Plan to receive more than five percent

(5%) of the New Class A Common Stock, receive as many shares of New Class B Common

Stock in lieu of New Class A Common Stock under such Plan in the event such Plan is

confirmed to the extent the Proponents of such confirmed Plan deem necessary to ensure

compliance with the Communications Act or the FCC rules and/or to avoid a substantial delay in

obtaining the FCC Approval.  The provisions of this paragraph are subject to confirmation of the

relevant Plan, and the rights of all parties to interpose an objection to any of the Plans or

respecting the distribution and terms of the New Common Stock are preserved for the hearing on

confirmation of the Plans; provided, however, that nothing in this paragraph shall be interpreted

as conferring standing to raise such issues on any party not otherwise having standing with

respect thereto.

49.     Confirmation Hearing.  The Confirmation Hearing shall commence on

**March 7, 2011** at **10:00 a.m.**, prevailing Eastern time, and shall continue for up to five (5)

calendar days from that date, inclusive; provided, however, that the Court reserves judgment to

the extent to which additional days for the Confirmation Hearing will be permitted, and all

parties' rights are reserved in all respects with respect to such issue.

50.     Notice of Confirmation Hearing.  The Confirmation Hearing Notice and

the Publication Notice, substantially in the forms annexed hereto as Exhibits D and E,

respectively, are hereby approved.

51.     The Debtors shall cause the Publication Notice to be published once each

in the national editions of The Wall Street Journal, The New York Times, the Los Angeles

Times, and the Chicago Tribune not less than twenty-eight (28) days before the Objection Deadline.

52.    Objections to Confirmation of the Plans.  Objections to confirmation of any of the Plans (including any supporting memoranda) must: (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received on or before **February 15, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline") by the Proponents of each of the Plans to which the objection pertains.

53.    The Court shall consider only timely-filed written objections to confirmation of the Plans.  All objections not timely filed and served in accordance with the procedures described herein by the Objection Deadline shall be deemed overruled.

54.    The Proponents shall file responses, if any, to any objections to confirmation of their respective Plans on or before **February 25, 2011 at 4:00 p.m. (prevailing Eastern Time)**.  The Proponents shall also file with the Court their proposed findings of fact and conclusions of law and their memorandum of law in support of confirmation on or before such date.

55.    Deadlines Respecting Discovery and the Confirmation Hearing.  In addition to the various deadlines relating to the solicitation process and the Confirmation Hearing set forth above, the deadlines set forth in this Court's case management order respecting the confirmation process shall also apply.

56.     The Proponents are authorized to make any non-substantive changes to their respective Specific Disclosure Statements prior to the distribution of the Solicitation Packages without further order of the Court, including, without limitation, changes to correct typographical, grammatical, and/or formatting errors or omissions and to conform their Specific Disclosure Statements to their respective Plans prior to mailing to parties in interest.

57.     The Debtors are authorized to make any non-substantive changes to the General Disclosure Statement, voting procedures, Ballots, Master Ballots, and/or forms of mailed and published notice of the Confirmation Hearing without further order of the Court, including, without limitation, changes to correct typographical, grammatical, and/or formatting errors or omissions and to conform the General Disclosure Statement and any other materials in the Solicitation Package to the Plans prior to mailing to parties in interest.

58.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

59.     The Proponents are authorized to take or refrain from taking any non-material actions necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

Dated:  Wilmington, Delaware
        December _____, 2010

_____
The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge