# EXHIBIT C

*Intercompany Claims Analysis*

*The attached Intercompany Claims Analysis is based upon the preliminary review of the Intercompany Claims by the Debtors and their financial advisors, and is subject to further modification based upon further review and analysis.*

## Assumptions Relating to Intercompany Claims

Debtors and their advisors have reviewed the Intercompany Claims as reflected in their books and records at the Petition Date in order to determine an appropriate estimate of Allowed Intercompany Claims. The Intercompany Claims are comprised of hundreds of thousands of individual transactions over the history of Debtors. The review of these claims included a focus on (i) the most significant amounts that arose in the seven years preceding the Petition Date and (ii) amounts related to large, "one time" transactions. In addition, due to the prepetition debt structure that creates distinctions between Guarantor Subsidiary Debtors (and Guarantor Subsidiary Non-Debtors), Non-Guarantor Subsidiary Debtors, and Tribune, the review also focused on claims amongst these groups. The review resulted in the identification of certain categories of transactions, which were then assessed from both a financial and a legal perspective and an assessment was then made of the likelihood that each category would be found to be an Allowable Claim. The results of that analysis are set forth on the attached spreadsheet. A summary of the basis for each of the assessments is set forth below.

**General Notes**

- As more fully discussed in the Motion of the Debtors for an Order (I) Approving Cash Management Systems, (II) Authorizing Use of Prepetition Bank Accounts and Business Forms, (III) Waiving the Requirements of 11 U.S.C. 345(b) on an Interim Basis, and (IV) Granting Superpriority Expense Status to Postpetition intercompany Transactions, Intercompany Claims between and amongst Debtors arise in the normal course of business due to the operation of the centralized cash management system, the processing of centrally billed expenses such as insurance and benefit programs, allocation of corporate expenses, and funding of capital calls or losses at subsidiaries or investments.

- Intercompany balances related to Tribune, Tribune Finance Service Center ("FSC"), and Tribune Publishing ("TPUB") have been netted for purposes of analyzing and determining the estimate of Allowed Intercompany Claims. As noted in the Final Order (I) Approving Cash Management Systems, (II) Authorizing Use of Prepetition Bank Accounts and Business Forms, and (III) Granting Superpriority Expense Status to Postpetition intercompany Transactions (the "Final Cash Management Order"), FSC and TPUB have a "disbursement agent" relationship in which they make payments to vendors on behalf of other Tribune Entities. These payments are drawn off of bank accounts owned by Tribune. For technical reasons, the Company's accounting system records intercompany transactions between FSC and TPUB, the other Tribune Entities on whose behalf the payment is being made, and Tribune whose bank account is funding the payment. For purposes of determining the estimate of Allowed Intercompany Claims these transactions are treated as having occurred directly between the those other Tribune Entities and Tribune.

- Immediately prior to the Petition Date, Tribune transferred approximately $368.8 million in cash from its concentration and investment accounts at JPMorgan Chase Bank, N.A. and Bank of America, N.A. to new investment accounts at Fidelity Investments Institutional Services Company held by (i) Chicago Tribune Company and WGN Continental Broadcasting Company

(which became Filed Subsidiary Debtors on December 8, 2008), (ii) Tribune CNLBC (which became a Filed Subsidiary Debtor on October 12, 2009), and (iii) Tribune Interactive, Inc. (which is a Guarantor Subsidiary Non-Debtor). These transfers were done in order to implement certain business objectives, including the preservation of liquidity and the continued availability of funding for subsidiary operations. These intercompany transfers were appropriately accounted for on the books and records of Tribune and its subsidiaries. For purposes of calculating distributions to Holders of Allowed Claims against and Interests in the Debtors, the aforementioned $368.8 million has been deemed to have been returned to Tribune and the associated intercompany transactions reversed.

**Claims of Guarantor Subsidiaries Against Tribune Company**

- Goodwill Write-Off: The Company wrote off approximately $2.9 billion of newspaper goodwill in the 2nd quarter of 2008 with the expense recorded at TPUB and the reduction to the asset at each of the main publishing entities. This transaction resulted in $2.9 billion of payables from Tribune to the publishing entities. In reviewing this transaction, Debtors and their advisors concluded that there was a very high likelihood that the resulting Intercompany Claims would be disallowed as there was no compelling legal or financial reason for an Intercompany Claim to have arisen as a result of this transaction.
- Newsday Transaction: The Company contributed the assets of its Newsday business to a partnership and received a distribution of approx. $0.6 billion during 2008. These funds were received at Tribune ND, a Guarantor Subsidiary, and transferred to Tribune, resulting in a payable from the Tribune to Tribune ND. In reviewing this transaction, Debtors and their advisors weighed ordinary course arguments against arguments that the transfer would be recharacterized as a dividend or a return of capital and concluded that the likelihood of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 40% and 60%.
- Eagle Transaction: The payable from Tribune to Eagle New Media Investments increased by $220 million and to Eagle Publishing increased by $384 million at the time the Tribune preferred stock held by these two entities was retired in December 2007. In reviewing this transaction, Debtors and their advisors weighed arguments that the transfer would be recharacterized as a dividend or a return of capital, particularly in light of the fact that the transaction involved equity of the parent, versus ordinary course arguments and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 20% and 40%.
- Tribune Receivables LLC ("TREC") Financing: In 2008, the Company created an accounts receivable securitization facility under which certain operating subsidiaries sold their accounts receivable to Tribune which in turn sold the receivables to TREC, a special purpose entity (and a Non-Debtor Non-Guarantor) which used the receivables as security for certain borrowings. The sale of the receivables from the subsidiaries to Tribune created an intercompany payable of approximately $0.5 billion. In reviewing this transaction, Debtors and their advisors weighed the documented nature of this transaction against arguments that the transfer might be re-characterized as a dividend or a return of capital and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 70% and 90%.
- Operations: As noted above, many Intercompany Claims between Debtors arise in the ordinary course of business. After adjusting for the above items, Debtors believe that the material

portion of the remaining claims relate to ordinary course activities. As more fully discussed in the Brief of the Debtors to the Examiner, the Debtors weighed arguments on the validity of these claims and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 65% and 85%.

**Claims of Tribune Company Against Guarantor Subsidiaries**

- Management Fees: Tribune charges a management fee to its subsidiaries based on actual costs incurred for corporate level activities (including providing management, legal, accounting, treasury, risk management, and other services) plus a 10% mark-up. These fees are first charged to intermediate holding or management companies and from there on to the individual operating entities. In reviewing the $106 million of Intercompany Claims specifically identified as arising from management fees, the Debtors and their advisors weighed ordinary course arguments, potentially mitigated by arguments concerning the appropriateness of the 10 percent mark-up and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 95% and 100%.
- Interest on Intercompany Payables: Tribune charges interest on its intercompany receivables (as do the subsidiaries charge such interest for receivables from Tribune) at a rate set annually to approximate the Company's third party borrowing cost. In reviewing the $595 million of Intercompany Claims arising from intercompany interest[1], the Debtors and their advisors weighed ordinary course and market basis for the interest rate arguments against the fact that some portion of the interest may have related to underlying claims that would not be found to be allowed claims and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 65% and 85%.
- Funding of Los Angeles Times International Ltd. ("LATI") Intercompany Note: Historically, transactions between LATI and certain subsidiaries were memorialized by formal intercompany notes. The process associated with the notes was such that all aspects associated with the notes other than the funding from LATI to the borrowing subsidiary were handled through capital transactions that did not result in additional intercompany balances. As disclosed in footnote 106 to the Fact Statement, these notes were retired as part of Step One of the Leveraged ESOP Transactions. However, certain transactions associated with the notes (i.e. payment of principal and interest) were, at certain times, accounted for through other intercompany accounts rather than as capital transactions and these account balances survived the retirement of the notes. The Debtors and their advisors reviewed these associated balances including this particular balance of $162 million (as well as the balance described in last footnote to the attached Debtors' Analysis of the Intercompany Claims), took into consideration the manner in which these activities had typically been accounted for and the fact that the notes had been retired as part of Step One, and concluded that the probability of the resulting Intercompany Claims being Allowed Intercompany Claims would be 0 to 5%.
- Funding of Investments: Tribune periodically advanced money to one or more of its subsidiaries to make acquisitions and/or to make an investment in a joint venture. Debtors identified approximately $520 million in Intercompany Claims associated with specific acquisitions or relating to entities which principally hold investments. In reviewing these claims, Debtors and their advisors weighed ordinary course arguments against arguments that such claims should be

---

[1] There are other portions of Intercompany Claims related to interest that were not specifically identified which are included in the estimate of claims resulting from Operations, which has the same probability of being an allowed claim.

recharacterized as contributions of capital and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 60% and 80%.
- <u>Tribune Broadcasting Company ("TBC") Dividend Accounting:</u> In reviewing this potential claim for $230 million arising from accounting for an intercompany dividend in a way that did not parallel the movement of cash, the Debtors and their advisors weighed arguments that a dividend (being a capital movement) would not be expected to result in a claim and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 0% and 10%.
- <u>Operations:</u> As noted above, many Intercompany Claims between Debtors arise in the ordinary course of business. After adjusting for the above items, Debtors believe that the material portion of the remaining claims relate to ordinary course activities. As more fully discussed in the Brief of Debtors to the Examiner, Debtors weighed arguments on the validity of these claims and concluded that the probability of the resulting Intercompany Claim being an Allowed Intercompany Claim would be between 65% and 85%.

**Claims Arising from Affiliate Receipt of Cash**

Claims arising from Affiliate Receipt of Cash relate to entities whose third party revenue is received by an affiliated legal entity, typically as a matter of administrative convenience. In Debtors' analysis, the claims of Tribune against these entities are reversed as is a corresponding amount between these entities and their affiliate and the affiliate and Tribune.

**Debtors' Analysis of the Intercompany Claims**
($ in billions)

| | Initial Amount | Estimated % Valid | | Adjusted Claim Amt. | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| **Claims of Guarantor Subsidiaries Against Tribune Company (a)** | | | | | |
| Goodwill Write-Off | $ 2.91 | 0% | 0% | $ - | $ - |
| Newsday Transaction | 0.59 | 40% | 60% | 0.24 | 0.35 |
| Eagle Transaction | 0.61 | 20% | 40% | 0.12 | 0.24 |
| TREC Facility | 0.50 | 70% | 90% | 0.35 | 0.45 |
| Operations | 6.83 | 65% | 85% | 4.44 | 5.80 |
| **Subtotal** | $ 11.43 | | | $ 5.14 | $ 6.85 |
| Other (b) | | | | 0.02 | 0.01 |
| **Subtotal** | | | | $ 5.17 | $ 6.85 |
| Claims Arising from Affiliate Receipt of Cash (See Detail Below) | | | | (0.57) | (0.44) |
| **Total Estimate of Allowed Claims** | | | | $ 4.59 | $ 6.41 |
| % Allowed | | | | 40% | 56% |
| | | | | | |
| **Claims of Tribune Company Against Guarantor Subsidiaries (a)** | | | | | |
| Management Fees | $ 0.11 | 100% | 95% | $ 0.11 | $ 0.10 |
| Interest on Intercompany Payables | 0.62 | 85% | 65% | 0.52 | 0.40 |
| Funding of LATI Intercompany Note | 0.16 | 5% | 0% | 0.01 | - |
| Funding of Investments | 0.52 | 80% | 60% | 0.41 | 0.31 |
| TBC Dividend Accounting | 0.23 | 10% | 0% | 0.02 | - |
| Operations | 1.90 | 85% | 65% | 1.62 | 1.24 |
| **Subtotal** | $ 3.53 | | | $ 2.69 | $ 2.05 |
| Other (b) | | | | 0.05 | 0.04 |
| **Subtotal** | | | | $ 2.74 | $ 2.08 |
| Claims Arising from Affiliate Receipt of Cash (See Detail Below) | | | | (0.57) | (0.44) |
| **Total Estimate of Allowed Claims** | | | | $ 2.16 | $ 1.64 |
| % Allowed | | | | 61% | 47% |

**Claims Arising from Affiliate Receipt of Cash (Detail) (c)**

| | Initial Amount | | | Adjusted Low | Adjusted High | Affiliate |
|---|---|---|---|---|---|---|
| Gold Coast Publications, Inc. | $ 0.17 | | | $ 0.14 | $ 0.11 | Sun Sentinel |
| Homestead Publishing Company | 0.09 | | | 0.08 | 0.06 | Baltimore Sun |
| Patuxent Publishing Company | 0.14 | | | 0.12 | 0.09 | Baltimore Sun |
| Star Community Publishing, LLC | 0.27 | | | 0.23 | 0.18 | Star Community Publishing |
| | $ 0.67 | 86% | 65% | $ 0.57 | $ 0.44 | |

Notes:
(a) Claim amounts based on the Debtors books and records adjusting for the netting of intercompany balances of Tribune Company ("TCO"), Tribune Finance Service Center ("FSC"), and Tribune Publishing Company ("TPUB"), for purposes of Intercompany Claims only (See attached Assumptions Related to Intercompany Claims). All references to TCO herein take account this netting of claims.
(b) Amounts are rounded. Certain adjustments cause entities to "flip" from a payable to receivable position result in a slight difference in actual results.
(c) Claims arising from Affiliate Receipt of Cash relate to entities whose third party revenue is received by an affiliated legal entity. The claims of TCO against these entities are reversed as is a corresponding amount between these entities and their affiliate and the affiliate and TCO.
- In addition to the above adjustments to claims between TCO and Guarantor Subsidiaries, $4.9 billion of claims against TCO and various Guarantor and Non-Guarantor Subsidiaries by Los Angeles Times International ("LATI") that are the residual of certain notes that were extinguished in June 2007, have been eliminated.