<u>**Exhibit 1**</u>

**Black Line Changed Pages Comparing the December 8, 2010 Joint Disclosure Statement to the version filed December 1, 2010 [Docket No. 6684]**

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., [1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### JOINT DISCLOSURE STATEMENT
### FOR THE FOLLOWING PLANS OF REORGANIZATION:

1) **FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON, AND CO., L.P., AND JPMORGAN CHASE BANK, N.A.;**

2) **JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES AND WILMINGTON TRUST COMPANY, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES;**

3) **AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY KING STREET ACQUISITION COMPANY, L.L.C., KING STREET CAPITAL, L.P. AND MARATHON ASSET MANAGEMENT, L.P.; AND**

4) **FIRST AMENDED PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY CERTAIN HOLDERS OF STEP ONE SENIOR LOAN CLAIMS**

DATED: ~~November [●]~~December 8, 2010

~~THE JOINT DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE FILING AND DISSEMINATION OF THE JOINT DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS A SOLICITATION OF~~

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the following page.

~~ACCEPTANCES OF ANY COMPETING PLAN (AS DEFINED HEREIN).  ACCEPTANCES OF THE COMPETING PLANS MAY NOT BE SOLICITED UNTIL THE JOINT DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.~~

**IMPORTANT DATES**

- Date by which ~~ballots~~Ballots and master ballots must be received: ~~[●]~~**January 28, 2011 at 4:00 p.m. (prevailing Eastern Time)**

- Date by which objections to confirmation of the Competing Plans must be filed and served: **February 15, 2011 at 4:00 p.m. (prevailing Eastern Time)** ~~[●] at 4:00 p.m. (prevailing Eastern Time)~~

- ~~Hearing on confirmation of the Competing Plans:~~ Deadline to execute and submit to the Debtors a Media Ownership Certification: **January 16, 2011**

- ~~[●] at [●] —~~ Commencement of Confirmation Hearing: **March 7, 2011 at 10:00 a.m. (prevailing Eastern Time)**

|  |  | 4. | Miscellaneous Other Litigation | 39 |
| IV. |  | DEBTORS' DESCRIPTION OF THE EVENTS LEADING UP TO CHAPTER 11 | | 39 |
| V. |  | DEBTORS' DESCRIPTION OF EVENTS DURING THE CHAPTER 11 CASES | | 40 |
|  | A. | Procedural Motions | | 40 |
|  | B. | "First-Day" Motions | | 41 |
|  | C. | Employee Compensation and Benefits | | 41 |
|  | D. | Cash Management | | 42 |
|  | E. | Post-Petition Financing | | 43 |
|  | F. | Professional Retentions | | 44 |
|  |  | 1. | Retention of Professionals by the Debtors' Estates | 44 |
|  |  | 2. | Retention of Jones Day by the Special Committee | 44 |
|  |  | 3. | The Creditors' Committee and its Advisors | 44 |
|  | G. | Certain Administrative Matters and Other Motions | | 45 |
|  |  | 1. | Disposition of Certain Executory Contracts and Unexpired Leases | 45 |
|  |  | 2. | Certain other Motions filed by the Debtors | 47 |
|  |  | 3. | Schedules of Assets and Liabilities; Statements of Financial Affairs | 48 |
|  |  | 4. | All Filed Claims and Bar Date | 48 |
|  |  | 5. | General Unsecured Claims Against Filed Subsidiary Debtors | 48 |
|  |  | 6. | Bankruptcy Rule 2015.3 Reports | 50 |
|  |  | 7. | Fee Disgorgement Motion | 50 |
|  |  | 8. | WTC Complaint | 51 |
|  |  | 9. | Limited Motion to Disqualify Counsel to the Official Committee of Unsecured Creditors | 52 |
|  |  | 10. | Pursuit of Preference Avoidance Actions | 52 |
|  |  | 11. | The Committee's Standing Motions | 53 |
|  |  | 12. | Motion to Appoint a Chapter 11 Trustee | 53~~54~~ |
|  |  | 13. | Motion to Approve Tolling Agreement | 54~~55~~ |
|  |  | 14. | Motion to Disqualify Akin Gump Strauss Hauer & Feld LLP as Counsel to Aurelius | 54 |
|  |  | ~~15.~~ | ~~Certain Holders of Step One Senior Loan Claims' New York State Court Action~~ | 55 |
|  | H. | Chicago Cubs Transaction | | 55 |
|  | I. | Morgan Stanley Swap Agreement | | 57 |
| VI. |  | THE FORMER SETTLEMENT SUPPORT AGREEMENT AND FORMER PLAN | | 58 |
| VII. |  | THE EXAMINER AND CLAIMS  RELATING TO THE LEVERAGED ESOP TRANSACTIONS | | 58 |
|  | A. | The Leveraged ESOP Transactions | | 58 |
|  | B. | Appointment of an Examiner | | 62 |
|  | C. | Investigation and Report of the Examiner | | 63 |
|  | D. | Mediation | | 64 |
| VIII. |  | EXCLUSIVITY PERIOD | | 64 |
| IX. |  | VOTING PROCEDURES AND REQUIREMENTS | | 65 |
|  | A. | Voting Deadline | | 65 |
|  | B. | Holders of Claims Entitled to Vote | | 66 |

|  |  |  |  |
|---|---|---|---|
| C. | Vote Required for Acceptance by a Class | | 6667 |
| | 1. | Class of Claims | 6667 |
| | 2. | Class of Interests | 6667 |
| D. | Voting Procedures | | 67 |
| | 1. | Ballots | 67 |
| | 2. | Withdrawal or Change of Votes on the Competing Plans | 67 |
| X. | CONFIRMATION OF THE PLAN | | 6768 |
| A. | Confirmation Hearing | | 6768 |
| B. | Statutory Requirements for Confirmation of a Competing Plan | | 6970 |
| | 1. | Acceptance | 70 |
| | 2. | Fair and Equitable Test | 70 |
| | 3. | Feasibility | 71 |
| | 4. | Best Interests Test and Liquidation Analysis | 71 |
| XI. | PROJECTED FINANCIAL INFORMATION  AND REORGANIZATION VALUE | | 7172 |
| A. | Projected Financial Information | | 7172 |
| B. | Reorganization Value | | 72 |
| XII. | GENERAL RISK FACTORS | | 7273 |
| A. | FCC-Related Considerations and Risks Relating to Emergence | | 73 |
| B. | Risks Related to the Debtors' Businesses | | 7475 |
| XIII. | CONCLUSION | | 83 |

EXHIBITS TO THE GENERAL DISCLOSURE STATEMENT:

| | | |
|---|---|---|
| Exhibit A | — | Corporate Organizational Chart |
| Exhibit B | — | Collective Bargaining Agreements |
| Exhibit C | — | Examiner's Report |
| Exhibit D | — | Liquidation Analysis |
| Exhibit E | — | Financial Projections |
| Exhibit F | — | Reorganized Value Analysis |
| Exhibit G | — | Selected Historical Financial Information |

specific to the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries, filed April 12, 2010 (as amended, supplemented, or modified the "Tribune Plan").

The Proponents have each prepared a specific disclosure statement (each a "Specific Disclosure Statement" and, together with the General Disclosure Statement, the "Joint Disclosure Statement") with respect to each of their respective Competing Plans. The Specific Disclosure Statements, which represent only the views of their respective Proponents, are attached as addenda to this General Disclosure Statement. Each Specific Disclosure Statement sets forth information concerning, among other things, (a) the terms, provisions and implications of the applicable Proponent's Competing Plan and (b) the Holders of Claims against and Interests in the Debtors and their rights under the applicable Proponent's Competing Plan. Certain Proponents or parties in interest have also prepared a statement (collectively, the "Responsive Statements") concerning their views on the Competing Plans. The Responsive Statements are annexed to this General Disclosure Statement.

On [•],December 9, 2010, the Bankruptcy Court approved the Joint Disclosure Statement in accordance with section 1125 of the Bankruptcy Code as containing "adequate information" to enable a hypothetical, reasonable investor typical of Holders of Claims against, or Interests in, the Debtors to make an informed judgment as to whether to accept or reject each Competing Plan, and authorized its use in connection with the solicitation of votes with respect to each Competing Plan. **APPROVAL OF THE JOINT DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF ANY COMPETING PLAN.** No solicitation of votes may be made except pursuant to the Joint Disclosure Statement and section 1125 of the Bankruptcy Code. In voting on any of the Competing Plans, Holders of Claims should not rely on any information relating to the Debtors and their businesses other than that contained in the Joint Disclosure Statement, the Competing Plans, the Responsive Statements, and all exhibits and appendices hereto and thereto.

THE STATEMENTS CONTAINED IN THIS GENERAL DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE OF SUCH DOCUMENTS, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED IN THIS GENERAL DISCLOSURE STATEMENT AND THE SPECIFIC DISCLOSURE STATEMENTS WILL BE CORRECT AT ANY TIME AFTER SUCH DATE.

CERTAIN INFORMATION CONTAINED IN THIS GENERAL DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND FINANCIAL PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED IN ARTICLE XII OF THIS GENERAL DISCLOSURE STATEMENT, "RISK FACTORS." IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS GENERAL DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. NONE OF THE DEBTORS NOR ANY OF THE REORGANIZED DEBTORS UNDERTAKE ANY OBLIGATION TO UPDATE PUBLICLY OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.

SUBJECT TO APPLICABLE THIRD CIRCUIT LAW, AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, NEITHER

B.      **Parties Entitled to Vote on the Competing Plans.**

Under the provisions of the Bankruptcy Code, not all parties in interest are entitled to vote on a chapter 11 plan.  Creditors or equity interest holders whose claims or interests are not impaired by a plan are deemed to accept the plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote. Creditors or equity interest holders whose claims or interests are impaired by a plan, but who will receive no distribution under the plan, are also not entitled to vote because they are deemed to have rejected the plan under section 1126(g) of the Bankruptcy Code.  For a discussion of these matters, please see Article IX of this General Disclosure Statement, "Voting Procedures and Requirements."

**Please refer to the Specific Disclosure Statements for information concerning the parties in interest that are entitled to vote on each Competing Plan.  You may be entitled to vote on multiple Competing Plans.**

C.      **Solicitation Package.**

Accompanying the Joint Disclosure Statement (which is provided on CD-ROM) is a package of materials called the "Solicitation Package."  The Solicitation Package contains copies of, among other things:

- the Bankruptcy Court order approving the Joint Disclosure Statement and procedures for soliciting and tabulating votes on the Competing Plans (the "Solicitation Order") which, among other things, approves the Joint Disclosure Statement as containing adequate information, schedules the Confirmation Hearing, sets the voting deadline, details the procedures for distributing Solicitation Packages to the holders of claims against the Debtors that are entitled to vote on the Competing Plans, establishes the procedures for tabulating ballotsBallots (as defined herein) used in voting on the Competing Plans and sets the deadline for objecting to confirmation of the Competing Plans;

- the notice of the hearing to consider confirmation of the Competing Plans; and

- ballotsBallots and a postage-paid return envelope (ballotsBallots are provided only to holders of Claims that are entitled to vote on the Competing Plans), which will be used by creditors and equity holders who are entitled to vote on the Competing Plans.

D.      **Voting Procedures, Ballots, and Voting Deadline.**

After carefully reviewing the materials in the Solicitation Package and the detailed instructions accompanying your ballotsBallots, please indicate your acceptance or rejection of the Competing Plans by voting in favor of or against one or more of the Competing Plans (provided that you are the holder of an impaired claim entitled to vote on such Competing Plan(s)).  You may choose to accept any or all of the Competing Plans, reject any or all of the Competing Plans, or abstain from voting on some or all Competing Plans.

Each ballotBallot has been coded to reflect the class or classes of claims it represents. Accordingly, in voting to accept or reject the Competing Plans, you must use only the coded ballotBallot or ballotsBallots sent to you with the Joint Disclosure Statement.

In order for your vote to be counted, you must complete and sign your original ballotsBallots and return them in the envelope provided.  Only original signatures will be accepted.  **Ballots should not be sent to the Debtors or any of the Proponents.**  Please return your completed ballotsBallots to the

5

Voting Agent, unless you are the beneficial holder of a Claim who receives a ~~ballot~~Ballot from a broker, bank, commercial bank, trust company, dealer, or other agent or nominee (each, a "Voting Nominee"), in which case you must return the ~~ballots~~Ballots to such Voting Nominee.

You may have previously received a ~~ballot~~Ballot for voting to accept or reject the Tribune Plan, which was proposed by the Debtors. Ballots that were distributed in connection with the Tribune Plan are no longer valid. If you cast a vote to accept or reject the Tribune Plan, that vote will not be counted as a vote to accept or reject any of the Competing Plans. If you want to have a vote counted to accept or reject some or all of the Competing Plans, you must complete and return your ~~ballot~~Ballot by the Voting Deadline.

**If you are a beneficial holder of a Claim who receives a ~~ballot~~Ballot from a Voting Nominee, in order for your vote to be counted, your ~~ballot~~Ballot must be completed in accordance with the voting instructions on the ~~ballot~~Ballot and received by the Voting Nominee in enough time for the Voting Nominee to transmit a master ballot to the Voting Agent so that it is received no later than [●]January 28, 2011 at [●]4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline"). If you are the holder of any other type of Claim, in order for your vote to be counted, your ~~ballot~~Ballot must be properly completed in accordance with the voting instructions on the ~~ballot~~Ballot and received by Epiq Bankruptcy Solutions, LLC (the "Voting Agent") no later than the Voting Deadline. Any ~~ballot~~Ballot received after the Voting Deadline shall be counted at the sole discretion of the Proponents of the applicable Competing Plan, unless otherwise ordered by the Bankruptcy Court. Do not return any debt instruments or equity securities with your ~~ballot~~Ballot.**

**Any executed ~~ballot~~Ballot that does not indicate either an acceptance or rejection of the applicable Competing Plan or indicates both an acceptance and rejection of the applicable Competing Plan will not be counted as a vote either to accept or reject such Competing Plan.**

If you are a holder of a Claim who is entitled to vote on a Competing Plan and did not receive a ~~ballot~~Ballot, received a damaged ~~ballot~~Ballot or lost your ~~ballot~~Ballot, please contact the Voting Agent at (888) 287-7568 or tribunevote@epiqsystems.com.

If you have any questions about the procedures for voting your Claim, the packet of materials that you have received, the amount of your Claim, or if you wish to obtain an additional copy of the Joint Disclosure Statement and its Exhibits and/or appendices, please contact the Voting Agent.

FOR FURTHER INFORMATION AND INSTRUCTIONS ON VOTING TO ACCEPT OR REJECT THE COMPETING PLANS, SEE ARTICLE IX OF THIS GENERAL DISCLOSURE STATEMENT, "VOTING PROCEDURES AND REQUIREMENTS."

Before voting on the Competing Plans, each Holder of Claims in classes that are entitled to vote on the Competing Plans should read, in their entirety, the Joint Disclosure Statement, the Competing Plans, the Responsive Statements, the Solicitation Order, the notice of the Confirmation Hearing, and the instructions accompanying the ~~ballots~~Ballots. These documents contain important information concerning how Claims are classified for voting purposes and how votes will be tabulated.

### E.    Confirmation Hearing and Deadline for Objections to Confirmation.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. The Confirmation Hearing pursuant to section 1128 of the Bankruptcy Code will ~~be held~~commence on [●]March 7, 2011 at [●]10:00 a.m. (prevailing Eastern Time), before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for

assembled specialized teams to review and reconcile the various categories of Claims. While the Claims reconciliation process is still ongoing, preliminary analysis suggests that the filed claims that are likely to be allowed may not vary substantially from the aggregate liabilities of approximately $13.7 billion reflected in the Schedules.

5.    General Unsecured Claims Against Filed Subsidiary Debtors.

There are approximately 34,249 general unsecured claims against the Filed Subsidiary Debtors reflected either in the Debtors' Schedules (as defined herein) or in timely-filed proofs of claim. Those Claims are asserted in a face amount of $3,366,545,793 according to the claims register maintained by the Debtors' claims agent, Epiq. The Debtors have conducted an ongoing review of those Claims since the Petition Date, and believe that the overwhelming majority of those Claims will not be Allowed by the Bankruptcy Court for one or more reasons, including, but not limited to, (i) that such Claims duplicate other Claims that may be Allowed, (ii) such Claims will be resolved through the assumption of contracts and the cure of any amounts due thereunder under any of the Competing Plans, (iii) such Claims have been satisfied by the applicable Filed Subsidiary Debtor(s) since the Petition Date, and/or (iv) such Claims do not otherwise reflect a legitimate obligation owed by one of the Filed Subsidiary Debtors.

The Debtors have raised objections to numerous general unsecured claims against the Filed Subsidiary Debtors since the Petition Date, and the process of objecting to, or consensually resolving, such Claims is ongoing. The Debtors believe that, when that process is concluded, the aggregate amount of general unsecured claims that will ultimately be Allowed against the Filed Subsidiary Debtors is between $85 and $150 million.

The general unsecured claims asserted against the Filed Subsidiary Debtors may be categorized as set forth in the chart below. This chart is an estimate only, and reflects the number of claims asserted against the Filed Subsidiary Debtors that have not been disallowed or are the subject of a pending objection (except in certain circumstances described in the chart), as well as the face amount of those Claims. The chart then sets forth the Debtors' estimate as to the range of aggregate amounts for Claims in the relevant subcategory that will be Allowed. The ultimate amount of the general unsecured claims that may be Allowed against the Filed Subsidiary Debtors may be higher or lower than the amounts projected by the Debtors, and is subject to determinations of the Bankruptcy Court. The chart below also necessarily reflects assumptions by the Debtors as to the amounts of individual claims that may ultimately be Allowed, which may not reflect the ultimate determinations as to such Claims, and additionally do not represent an agreement by any of the Debtors as to the amount of any particular Claim.

All categories of general unsecured claims in the chart below include Claims that have been asserted in partially or entirely-unliquidated amounts. As a result, some of the ranges set forth below slightly exceed the face amount of the Claims asserted within a subcategory. The Debtors have not attempted to quantify such amounts for purposes of this ~~Joint~~General Disclosure Statement; however, the Debtors do not believe that such amounts when liquidated will cause the aggregate amount of Allowed general unsecured claims against the Filed Subsidiary Debtors to exceed $150 million.

| Claim Type | Total Active Filed Claims & Filed Active Scheduled Records | | Estimated Range of Estimated Allowed Claims | | Notes |
|---|---|---|---|---|---|
| | Count | Amount | Low | High | |
| Asserted as 503(b)(9) | 370 | 3,122,684 | 2,000,000 | 2,200,000 | The estimated range shown reflects the unsecured portion of Claims asserted with priority under section 503(b)(9) of the Bankruptcy Code. |

49

Committee Disqualification Motion. On October 8, 2010, Aurelius withdrew the Disqualification Motion with prejudice.

10.    Pursuit of Preference Avoidance Actions.

Prior to December 8, 2010, the Debtors and Creditors' Committee commenced various preference avoidance actions against third-parties and insiders of the Debtors or entered into tolling agreements with these third-parties and insiders, which extended the applicable statute of limitations for purposes of initiating such preference causes of action. The face amount of all the preference actions being pursued by the Debtors or Creditors' Committee is greater than $500 million. Pursuant to various orders of the Bankruptcy Court, all of these preference actions were stayed pending the outcome of the Confirmation Hearing or June 11, 2011, whichever occurs first. The Debtor/Committee/Lender Plan Proponents cannot predict the amount of proceeds that will be generated from these preference actions given the various defenses that may be asserted by the preference defendants, and the fact that preference actions involving payments on behalf of the Filed Subsidiary Debtors are not likely to be pursued if the Debtor/Committee/Lender Plan is confirmed. The Debtors, as well as the Creditors' Committee, made their decision to pursue certain preference actions, and not pursue others, based on a detailed factual review of the defenses under section 547(c) of the Bankruptcy Code involving the transfers, a "cost benefit" analysis attendant to bringing the specific preference claims, and the need to preserve viable Estate causes of action in the event the Debtor/Committee/Lender Plan is not confirmed.

11.    The Committee's Standing Motions.

a)    The LBO Standing Motions

On February 1, 2010, the Creditors' Committee filed a motion seeking authority to prosecute certain estate causes of action against the Debtors' pre-petition lenders related to the Leveraged ESOP Transactions ("Original LBO Standing Motion"). The Debtors opposed the relief requested in the Original Standing Motion, including the Creditors' Committee's request for settlement authority over estate causes of action. The Original Standing Motion was scheduled to be heard by the Bankruptcy Court on February 18, 2010, but was continued and ultimately withdrawn *sine die* by the Creditors' Committee in light of the April 9, 2010 Settlement Support Agreement and subsequent filing by the Debtors of the Tribune Plan incorporating the settlement terms. On or about September 13, 2010, the Creditors' Committee supplemented its Original Standing Motion to add certain new causes of action related to the Leveraged ESOP Transactions and on September 14 filed a new standing motion seeking authorization to prosecute certain causes of action related to the Leveraged ESOP Transactions against various non-lender parties, including directors, officers, subsidiaries, Zell defendants and large shareholders (the "New LBO Standing Motion," and together with the Original Standing Motion, the "LBO Standing Motions").

The Debtors objected to the Standing Motions, but only as to the Creditors' Committee's request for settlement authority in respect of estate causes of action, including actions related to the Leveraged ESOP Transactions. In addition, on October 7, 2010, the Bridge Agent filed a limited objection to the Standing Motions seeking a ruling that the Standing Motions do not prejudice and reserve the rights of parties in interest to seek the establishment or appointment of a disinterested fiduciary to pursue all claims. On October 11, 2010, Aurelius filed a limited objection to the Standing Motions seeking a ruling that, among other things, (i) all settlements by the Creditors' Committee be subject to court approval and (ii) the Creditors' Committee, or another independent fiduciary, be given authority to prosecute the Intercompany Claims. On October 14, 2010, the Wilmington Trust Company filed a limited objection to

53

the Standing Motions, which objected to the narrow scope of the relief requested in the Standing Motions and questioned whether the Creditors' Committee could objectively bring the causes of action under the Standing Motions. The Wilmington Trust Company proposed as an alternative that the Creditors' Committee be authorized to file the complaints pursuant to the Standing Motions but that causes of action filed by the Creditors' Committee be immediately stayed to allow for the plan confirmation process to proceed. Finally, on October 19, 2010, Merrill Lynch filed an objection to the New Standing Motion stating that Merrill Lynch did not object to the Bankruptcy Court granting the Creditors' Committee standing but that certain claims and allegations in the New Standing Motion against Merrill Lynch were defective. The Standing Motions were heard on October 22, 2010, and adjourned to October 26, 2010, for an additional status hearing regarding entry of an agreed order. The Bankruptcy Court entered an order approving the Standing Motions on October 27, 2010 (the "LBO Standing Order").

Pursuant to the LBO Standing Order, the Creditors' Committee initiated two adversary proceedings on November 1, 2010: *Official Comm. Of Unsecured Creditors v. JPMorgan Chase Bank, N.A. (In re Tribune Co.)*, Case no. 10-53963 (KJC) (Bankr. D. Del. Nov. 1, 2010) and *Official Comm. Of Unsecured Creditors v. Fitzsimons (In re Tribune Co.)*, Case No. 10-54010 (KJC) (Bankr. D. Del. Nov. 1, 2010) (collectively, the "LBO Avoidance Adversaries"). On December 7, 2010, the Creditors' Committee filed amended complaints (the "Amended Complaints") in each of the LBO Avoidance Adversaries.[10] The LBO Avoidance Adversaries seek to avoid allegedly fraudulent transfers made to certain lenders and equity holders that received transfers in connection with the Leveraged ESOP Transactions.

### b)    The Preference Standing Motions

On November 11, 2010, the Creditors' Committee filed a motion requesting standing to bring certain preference actions on behalf of the Debtors pursuant to sections 547 and 550 of the Bankruptcy Code against certain former and current insiders of the Debtors' who received payments from the Debtors in the year prior to the Petition Date and certain other identified entities (the "Preference Standing Motion"). On November 17, 2010, the Creditors' Committee filed an amended Preference Standing Motion seeking standing to pursue a preference action against Eagle Aircraft & Transportation Management, an alleged insider, in addition to the parties identified in the Preference Standing Motion (the "Amended Preference Standing Motion"). On November 23, 2010, the Creditors' Committee filed a motion requesting leave, standing and authority to toll and/or commence, prosecute, and settle and recover certain causes of action on behalf of the Debtors' estates arising under sections 547 and 550 of the Bankruptcy Code against certain of the Debtors' professionals who received payments from Tribune in the ninety (90) days prior to the Petition Date (the "Professionals Preference Standing Motion").

On November 22, 2010, Aurelius filed a response and limited objection to the Amended Preference Standing Motion, which requested (i) that the Bankruptcy Court order the Creditors' Committee to commence all potential preference actions; (ii) that all actions be stayed pending the completion of the competing plan process; (iii) that no settlements of the preference action be approved prior to the completion of the competing plan process; and (iv) that upon completion of the competing plan process, all preference actions be transferred to the applicable litigation trust. On November 22, 2010, Wilmington Trust Company filed a limited objection and joinder to Aurelius' response.

---

[10] On December 7, 2010, the Creditors' Committee also filed a motion with the Bankruptcy Court (the "Confirmatory Motion") seeking an order confirming that the Bankruptcy Court's October 27, 2010 order granting the Creditors' Committee standing on behalf of the Debtors' estates to commence, prosecute and settle claims and counterclaims arising out of or in connection with the Leveraged ESOP Transactions encompasses all claims set forth in the Amended Complaints. The Confirmatory Motion is scheduled to be heard by the Bankruptcy Court on December 15, 2010.

The Bankruptcy Court entered an order on November 29, 2010 (the "<u>Preference Standing Order</u>") granting the Creditors' Committee leave, standing and authority to commence and prosecute the preference actions identified in the Preference Standing Order, subject to the terms set forth in the Preference Standing Order. On that same date, the Bankruptcy Court entered an order (the "<u>Professionals Preference Standing Order</u>") granting the Creditors' Committee leave, standing and authority to, at the option of the Creditors' Committee, either toll or to commence and prosecute the preference actions identified in the Professional Preference Standing Order, subject to the terms set forth in the Professionals Preference Standing Order.

      12.     Motion to Appoint a Chapter 11 Trustee.

Aurelius filed a motion on September 13, 2010, requesting that the Bankruptcy Court appoint a trustee to administer both the affairs of the Debtors and the Chapter 11 Cases pursuant to 11 U.S.C. § 1104 (the "<u>Trustee Motion</u>"). On October 15, 2010, the Debtors, the Creditors' Committee, the Credit Agreement Lenders, and JPMorgan filed timely objections to the relief requested in the Trustee Motion. The hearing on the Trustee Motion has been adjourned to a date and time to be determined by the Court.

      13.     Motion to Approve Tolling Agreement.

The Debtors filed a motion on October 28, 2010, seeking authority to enter into tolling agreements between Tribune and each of the Filed Subsidiary Debtors (the "<u>Tolling Agreement Motion</u>"). The Tolling Agreement Motion requests an extension of the statute of limitations to bring avoidance actions imposed by section 546(a) of the Bankruptcy Code, which requires that avoidance actions be brought within two (2) years of the Petition Date, until June 30, 2011. The Tolling Agreement Motion was approved by the Bankruptcy Court on November 12, 2010, and all avoidance causes of action between Tribune and the Filed Subsidiary Debtors were subsequently tolled.

      14.     Motion to Disqualify Akin Gump Strauss Hauer & Feld LLP as Counsel to Aurelius.

On November 12, 2010, Oaktree and Angelo Gordon filed a motion (the "<u>Akin Disqualification Motion</u>") requesting that the Bankruptcy Court disqualify Aurelius' bankruptcy counsel, Akin Gump Strauss Hauer & Feld, LLP ("<u>Akin</u>"). In the Disqualification Motion, Oaktree and Angelo Gordon assert that Akin currently represents both Oaktree and Angelo Gordon in the Debtors' bankruptcy as FCC counsel and that such representation predated Akin's representation of Aurelius. Oaktree and Angelo Gordon further assert that, under the Model Rules of Professional Conduct, which govern attorneys' ethical obligations to their clients, Akin's representation of Aurelius constitutes a clear conflict of interest which requires disqualification of Akin pursuant to the Model Rules of Professional Conduct. The hearing on the Akin Disqualification Motion is scheduled for December 15, 2010.

      ~~15.~~     ~~Certain Holders of Step One Senior Loan Claims' New York State Court Action~~

~~On October 29, 2010, in conjunction with filing the Step One Plan, certain Step One Plan Proponents (the "SOCAL Parties") filed a complaint in the Supreme Court of the State of New York against JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citicorp North America Inc., and Bank of America, N.A. (collectively, the "Arrangers") asserting claims against the Arrangers with respect to issues arising out of or relating to the Leveraged ESOP Transactions and the Senior Loan Agreement (the "SOCAL Action"). The claims asserted in the SOCAL Action include claims for breach of contract, breach of covenant of good faith and fair dealing, inducement to breach of contract, gross negligence, and declaratory relief respecting certain provisions of the Senior Loan Agreement. On~~

~~November 16, the Arrangers filed a motion in the Bankruptcy Court seeking an order finding (among other things) the SOCAL Parties in contempt for violating the Order Appointing Mediator and the automatic stay under 11 U.S.C. § 362 and enjoining the SOCAL Parties from further violations of the Order Appointing Mediator and the automatic stay. On November 19, 2010, the Debtors filed a joinder in connection with the Arrangers' motion to enforce the Order Appointing Mediator and to suspend the SOCAL Action pending the outcome of the plan confirmation hearing.~~

### H.    Chicago Cubs Transaction

During the pendency of the Chapter 11 Cases, the Tribune Entities pursued and consummated certain transactions pursuant to which the Chicago Cubs and related assets and liabilities, including the Company's 25.34% interest in CSN Chicago, were contributed to a newly formed limited liability company, Chicago Baseball Holdings, LLC and its subsidiaries (collectively, "New Cubs LLC"). Tribune first announced its intention to dispose of an interest in the Chicago Cubs and its attendant assets in April 2007, on the same day that Tribune announced the completion of its strategic review process and its decision to convert from a public company to a privately-held company. Thereafter, Tribune and Tribune CNLBC acted to identify parties that were both likely to have an interest in acquiring an interest in the Chicago Cubs and assets and the financial resources to complete such a transaction. In furtherance of those efforts, Tribune engaged J.P. Morgan Securities Inc. in July 2007 to aid in identifying suitable investors and to act as Tribune's financial advisor in connection with the proposed transaction.

From mid-2007 to early 2009, Tribune engaged in an intensive process to identify a transaction partner and ultimately reduced the number of interested parties from more than 100 to a single party. The prevailing party was a new entity formed by the Ricketts family ("Ricketts Acquisition LLC"). Following an extended period of negotiations, on August 21, 2009, Tribune and Ricketts Acquisition LLC, among other parties, entered an agreement (the "Cubs Formation Agreement") governing the contribution of certain assets and liabilities related to the businesses of the Chicago Cubs owned by Tribune and its subsidiaries to New Cubs LLC. The contributed assets included, but were not limited to, the Chicago Cubs Major League Baseball franchise, spring training and Dominican Republic baseball operations, Wrigley Field and certain other real estate used in the business, and a 25.34% interest in CSN Chicago, which operates a local sports programming network in the Chicago area (collectively, the "Cubs Business").

On August 24, 2009, the Debtors filed a motion with the Bankruptcy Court seeking authority to enter into the Cubs Formation Agreement and to perform all transactions necessary to effect the contribution of the Cubs Business to New Cubs LLC. On the same day, the Debtors announced that the principal entity holding the assets and liabilities of the Cubs Business, Tribune CNLBC, would commence a Chapter 11 case to implement the transactions contemplated by the Cubs Formation Agreement. The Debtors also sought approval for notice and other procedures relating to the transactions by filing a motion with the Bankruptcy Court on August 24, 2009. The Bankruptcy Court approved the Debtors' notice and other procedures for the transactions on August 31, 2009 and, on September 24, 2009, authorized the Debtors to perform the transactions under the Cubs Formation Agreement. On October 6, 2009, Major League Baseball announced unanimous approval of the transactions. Tribune CNLBC filed its voluntary Chapter 11 petition on October 12, 2009, and the Bankruptcy Court granted a motion to approve the transactions contemplated by the Cubs Formation Agreement as to Tribune CNLBC on October 14, 2009. The transactions contemplated by the Cubs Formation Agreement and the agreements related thereto closed on October 27, 2009.

In addition to the Cubs Formation Agreement, Tribune, Tribune CNLBC, and several of their affiliates entered into a number of ancillary agreements implementing various aspects of the Chicago Cubs-related transactions. Among those ancillary agreements are guarantees of collection by Tribune of

56

within which to solicit a chapter 11 plan through and including August 8, 2010. The Debtors' exclusive period to file a chapter 11 plan and solicit acceptances expired on August 8, 2010.

## IX.    VOTING PROCEDURES AND REQUIREMENTS

The following section describes in summary fashion the procedures and requirements that have been established for voting on the Competing Plans.

If you are entitled to vote to accept or reject one or more of the Competing Plans, with the package accompanying ~~this~~the Joint Disclosure Statement, you will receive separate, color-coded ballots (each a "Ballot") for each of the Competing Plans on which you are entitled to vote. Ballots and accompanying instructions relating to the Debtor/Committee/Lender Plan are blue. Ballots and accompanying instructions relating to the Noteholder Plan are purple. Ballots and accompanying instructions relating to the Step One Lender Plan are yellow. Ballots and accompanying instructions relating to the Bridge Lender Plan are green. Please note that, for your vote to accept or reject a particular Competing Plan to be counted, you must complete all required information on the Ballot for that particular Competing Plan, execute such Ballot and return such Ballot to the address indicated on the Ballot. In addition, each of the Competing Plans calls for various elections to be made, either on the Ballot or on a separate election form, as set forth in the instructions accompanying the Ballot. If you wish to make any of the elections under one of the Competing Plans, you should check the appropriate boxes on the Ballot or, as applicable, return the separate election form, completed and executed in accordance with the applicable instructions.

If you are the Holder of a Claim or Claims and (i) anticipate receiving New Common Stock or New Warrants under any Competing Plan, (ii) believe that the amount of your Claim(s) (or Claim(s) that you intend to acquire prior to the Effective Date of a confirmed plan) may entitle you to receive (for any reason, including, but not limited to, as a result of the distribution of New Warrants or New Class B Common Stock in lieu of New Class A Common Stock to other Holders of applicable Claims, as contemplated in section 5.4.2 of each of the Competing Plans) five percent (5%) or more of the New Class A Common Stock under a Competing Plan, and (iii) wish to remain eligible to receive 5% or more of the New Class A Common Stock, you must contact the Debtors and execute and submit to the Debtors a Media Ownership Certification on or prior to January 16, 2011.[23]

If you hold Claims in more than one Class and you are entitled to vote such Claims in more than one Class, you will receive separate Ballots which must be used for each separate Class of Claims. If you are entitled to vote on one or more of the Competing Plans and did not receive a Ballot for each of the Competing Plans on which you are entitled to vote, received a damaged Ballot or lost your Ballot, please contact the Voting Agent, Epiq Bankruptcy Solutions, LLC, at (888) 287-7568 or tribunevote@epiqsystems.com.

### A.    Voting Deadline.

TO BE CONSIDERED FOR PURPOSES OF ACCEPTING OR REJECTING THE COMPETING PLANS, ALL BALLOTS (INCLUDING THOSE BALLOTS TRANSMITTED BY VOTING NOMINEES) MUST BE **RECEIVED BY** THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE. ONLY THOSE BALLOTS ACTUALLY RECEIVED BY THE VOTING AGENT BEFORE THE VOTING DEADLINE WILL BE COUNTED AS EITHER ACCEPTING OR

---

[23] Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to such terms in the applicable Competing Plan.

REJECTING THE COMPETING PLANS.  ALL BALLOTS MUST BE SENT TO THE FOLLOWING ADDRESS:

**FOR FIRST CLASS MAIL:**

Tribune Company Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5014
New York, NY 10150-5014

**FOR OVERNIGHT MAIL AND HAND DELIVERY:**

Tribune Company Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, Third Floor
New York, NY 10017

Ballots will only be counted if mailed to the above address.  Ballots cannot be transmitted orally, by facsimile or by electronic mail.  Accordingly, you are urged to return your signed and completed Ballot promptly.  Any executed ballotBallot received that does not indicate either an acceptance or rejection of a particular Competing Plan or that indicates both an acceptance and rejection of a particular Competing Plan shall not be counted.

B.      **Holders of Claims Entitled to Vote**

In general, a holder of a claim may vote to accept or reject a plan of reorganization if (i) the holder's claim or interest is "allowed," (i.e., generally not disputed, contingent, or unliquidated), and (ii) such holder's claim or equity interest is "impaired" (as defined below) by the plan.  However, if a holder of an allowed and impaired claim will not receive any distribution under a plan, than such holder is deemed to have rejected the plan and is not entitled to vote.  In the same vein, a holder of an allowed and unimpaired claim will be presumed to have accepted the plan and will not be entitled to vote.

Under the Bankruptcy Code, a class of claims or equity interests is presumed impaired unless a plan (i) does not alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder thereof; or (ii) regardless of any legal right to an accelerated payment of such claim or equity interest the plan (a) cures all existing defaults, except the defaults of a kind specified in section 365(b)(2) of the Bankruptcy Code, (b) reinstates the maturity of such claim or interest as it existed before the default, (c) compensates the holder of such claim for any damages incurred as a result of any such holder's reasonable reliance on such legal right to an accelerated payment, (d) if such claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the holder of such claim for any actual pecuniary loss incurred by such holder as a result of such failure, and (e) does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

**Please refer to the Specific Disclosure Statements for information concerning the parties in interest that are entitled to vote on each Competing Plan.**

ANY VOTE NOT SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE WITH THE PROVISIONS OF THE BANKRUPTCY CODE WILL NOT BE COUNTED PURSUANT TO SECTION 1126(E) OF THE BANKRUPTCY CODE.

C.      **Vote Required for Acceptance by a Class**

1.      Class of Claims.

A Class of Claims shall have accepted a Competing Plan if it is accepted by at least two-thirds (⅔) in amount and more than one-half (½) in number of the Allowed Claims in such Class that have voted on the Competing Plan in accordance with the Solicitation Order.

2.      Class of Interests.

A Class of Interests shall have accepted a Competing Plan if it is accepted by at least two-thirds (⅔) in amount of the Allowed Interests in such Class that have voted on the Competing Plan in accordance with the Solicitation Order.

D.      **Voting Procedures**

1.      Ballots.

All votes to accept or reject the Competing Plans with respect to any Class of Claims must be cast by properly submitting the duly completed and executed form of ~~ballot~~Ballot.

ANY EXECUTED BALLOT THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF A PARTICULAR COMPETING PLAN OR THAT INDICATES BOTH AN ACCEPTANCE AND REJECTION WITH RESPECT TO A PARTICULAR COMPETING PLAN WILL NOT BE COUNTED AS A VOTE EITHER TO ACCEPT OR REJECT SUCH COMPETING PLAN.

ANY BALLOT THAT IS RECEIVED BUT WHICH IS NOT SIGNED OR THAT OTHERWISE CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE CLAIMANT WILL BE CONSIDERED AN INVALID BALLOT AND WILL NOT BE COUNTED FOR PURPOSES OF DETERRING ACCEPTANCE OR REJECTION OF ANY OF THE COMPETING PLANS.

All ~~ballots~~Ballots (including those ~~ballots~~Ballots transmitted by Voting Nominees) must be delivered to the Voting Agent, at its address set forth above, and received by the Voting Deadline.  THE METHOD OF SUCH DELIVERY IS AT THE ELECTION AND RISK OF THE VOTER.

**If you are entitled to vote and you did not receive a ~~ballot~~Ballot, received a damaged Ballot or lost your Ballot, please contact the Voting Agent in the manner set forth in this General Disclosure Statement.**

2.      Withdrawal or Change of Votes on the Competing Plans.

After the Voting Deadline, no vote may be withdrawn without the prior consent of the applicable Proponent – which consent shall be given in such Proponent's sole discretion or order of the Bankruptcy Court.

Any Holder of a Claim who has submitted to the Voting Agent prior to the Voting Deadline a properly completed ~~ballot~~Ballot may change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed ~~ballot~~Ballot.  If more than one timely, properly

67

completed ~~ballot~~Ballot is received with respect to the same Claim, the ~~ballot~~Ballot that will be counted will be the ~~ballot~~Ballot that the Voting Agent determines was the last to be received.

## X.    CONFIRMATION OF THE PLAN

### A.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan.  The Confirmation Hearing pursuant to section 1128 of the Bankruptcy Code will ~~be held~~commence on [●]March 7, 2011 at [●]10:00 a.m. (prevailing Eastern Time), before the Honorable Kevin J.  Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N.  Market Street, Fifth Floor, Courtroom No. 5, Wilmington, Delaware 19801.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of adjournment at the Confirmation Hearing, or at any subsequent adjourned Confirmation Hearing.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan.  Any objection to Confirmation of a Competing Plan must: (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Competing Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received **on or before** [●]February 15, 2011 at [●]4:00 p.m. (prevailing Eastern Time) by the following parties:

**Counsel to the Debtors:**

| | |
|---|---|
| Sidley Austin LLP | Cole, Schotz, Meisel, Forman & Leonard, P.A. |
| One South Dearborn Street | 500 Delaware Avenue, Suite 1410 |
| Chicago, IL  60603 | Wilmington, DE  19801 |
| Telephone:  (312) 853-7000 | Facsimile:  (302) 652-3117 |
| Facsimile:  (312) 853-7036 | Attn: J. Kate Stickles ~~(No. 2917)~~ |
| Attn: Jessica C.K. Boelter | |

**The U.S. Trustee:**

U.S. Trustee
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lock Box #35
Wilmington, Delaware 19899
Facsimile: (302) 573-6497
Attn: David Klauder

**Counsel to the Official Committee of Unsecured Creditors:**

| | | |
|---|---|---|
| Chadbourne & Parke LLP | Landis Rath & Cobb LLP | Zuckerman Spaeder LLP |
| 30 Rockefeller Plaza | 919 Market Street, Suite 1800 | 1800 M Street, N.W., Suite 1000 |
| New York, New York 10112 | Wilmington, Delaware 19801 | Washington D.C. 20036 |
| Facsimile (212) 541-5369 | Facsimile (302) 467-4450 | Facsimile: (202) 822-8106 |
| Attn: David M. LeMay | Attn: Adam G. Landis | Attn: James Sottile |

**Counsel to Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.**

Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Facsimile: (213) 694-1234
Attn: Bruce Bennett

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Facsimile: (302) 571-1253
Attn: Robert S. Brady

**Co-Counsel to Angelo, Gordon & Co, L.P.**

Wilmer Cutler Pickering Hale &
Dorr LLP
399 Park Avenue
New York, New York 10022
Facsimile: (212) 230-8888
Attn: Andrew Goldman

**Counsel to JPMorgan Chase Bank, N.A.**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Facsimile: (212) 701 5800
Attn: Damian S. Schaible

Richards Layton & Finger
One Rodney Square
920 North King Street; Wilmington, Delaware 19801
Facsimile: (302) 651-7701
Attn: Mark Collins

**Counsel to Aurelius Capital Management, LP**

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
~~Facsimile:(212) [•]~~872-1000
Attn: Daniel H. Golden
    Philip C. Dublin

Ashby & Geddes, P.A.
500 Delaware Avenue, P.O. Box 1150
Wilmington, Delaware 19899
~~Facsimile: [•]~~(302) 654-1888
Attn: William P. Bowden
    Amanda M. Winfree

**Counsel to Deutsche Bank Trust Company Americas**

McCarter & English, LLP
245 Park Avenue
New York, New York 10167
~~Facsimile: [•]~~212-609-6800
Attn: David J. Adler

McCarter & English LLP
Renaissance Centre
405 W. King Street; Wilmington, Delaware 19801
~~Wilmington, Delaware 19801~~302-984-6300
~~Facsimile~~Attn: [•]Katharine L. Mayer
~~Attn: Katharine Mayer~~

**Counsel to Law Debenture Trust Company of New York**

Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Attn: David S. Rosner
    Richard F. Casher

Bifferato Gentilotti LLC
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Tel: (302) 429-1900
Facsimile: (302) 429-8600
Attn: Garvan F. McDaniel

**Counsel to Wilmington Trust Company**

Brown Rudnick LLP
Seven Times Square
New York, New York 10036
~~Facsimile:(212) [•]~~209-4800
Attn: Robert J. Stark
    Martin S. Siegel
    Gordon Z. Novod

Sullivan Hazeltine Allinson LLC
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
~~Facsimile:(302) [•]~~428-8191
Attn: William D. Sullivan
    Elihu E. Allinson, III

**Counsel to King Street Acquisition Company, LLC, King Street Capital, LP, and Marathon Asset Management, LP**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036

Fox Rothschild LLP
919 North Market Street, Suite 1600
Wilmington, Delaware 19801

Facsimile: ~~[•]~~(212) 819-8113                    Facsimile: ~~[•]~~(302) 656-8920
Attn: Thomas E. Lauria                              Attn: Jeffrey M. Schlerf
      Scott Greissman

**Counsel to Holders of Certain Step One Senior Loan Claims**

Arkin Kaplan Rice LLP                               ~~Olshan Grundman Frome Rosenzweig & Wolosky~~Bracewell
                                                    ~~& Giuliani~~ LLP

590 Madison Avenue, 35th Floor                      ~~Park Avenue Tower,~~225 Asylum Street, Suite 2600
New York, New York 10022                            ~~65 East 55th Street~~Hartford, CT 06103
Telephone: (212) 333-0200                           ~~New York, New York 10022~~Telephone: (860) 947-9000
Facsimile: (212) 333-2350                           Facsimile: (860) 246-3201
Attn: Howard J. Kaplan                              ~~Facsimile: (212) 451-2222~~Attn: Evan D. Flaschen
      Johnny Yeh                                          Daniel S. Connolly
      Deana Davidian                                     Andrew Schoulder
                                                    ~~Attn: Adam Friedman~~

Morris, Nichols, Arsht & Tunnell LLP                ~~Bracewell & Giuliani LLP~~
1201 North market Street, 18th Floor                ~~225 Asylum Street, Suite 2600~~
P.O. Box 1347                                       ~~Hartford, CT 06103~~
Wilmington, Delaware 19899-1347                     ~~Facsimile: 860-246-3201~~
Telephone: (302) 658-9200                           ~~Attn: Evan Flaschen, Daniel S. Connolly, and~~
Facsimile: (302) ~~351-9357~~658-3989               ~~Andrew Schoulder~~
Attn: Derek C. Abbott
      Daniel B. Butz

        Objections to confirmation of a Competing Plan are governed by Rule 9014 of the Bankruptcy
Rules.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND PROPERLY SERVED
AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

>    **B.**     **Statutory Requirements for Confirmation of a Competing Plan**

        At the Confirmation Hearing, the Bankruptcy Court will confirm a plan only if it finds all of the
requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation
are that a plan (i) is accepted by all impaired classes of claims and interests or, if rejected by an impaired
class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) is
feasible, and (iii) is in the "best interests" of holders of claims and interests impaired under the plan.

>            1.      Acceptance.

>                 a)      Acceptance of a Plan.

        As set forth in the Specific Disclosure Statements, certain classes of Claims and Interests are
Impaired under the Competing Plans (the "Impaired Classes of Claims") and are entitled to vote to accept
or reject the Competing Plans.  As a condition to confirmation of a plan, the Bankruptcy Code requires
that each class of impaired claims or interests vote to accept the plan unless the plan satisfies the "fair and
equitable test" (as described below) as applied to such nonaccepting impaired class.

        Impaired Classes of Claims that are entitled to vote on the Competing Plan will have accepted a
Competing Plan if such Competing Plan is accepted by at least two-thirds (⅔) in dollar amount and a
majority in number of the Claims of each such Class (other than any Claims of creditors designated under
section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Competing Plan.

>            2.      Fair and Equitable Test.

        The Proponents may seek to confirm their respective Competing Plans notwithstanding the non-
acceptance or deemed nonacceptance of such Competing Plan by any Impaired Class of Claims or

the Debtors project that significant cash contributions will be required in the future. Actual Cash Funding may be more or less than these projections. For example, if PPA discount rates remain low and/or investment returns are below expectations, then without legislative relief the projected contributions may be higher than currently anticipated. As a result, the Debtors may have less cash available for working capital and other corporate uses, which may have an adverse impact on the Debtors' operations, financial condition and liquidity.

In addition, the Debtors participate in multiemployer pension plans on behalf of employees represented by certain unions. Contributions to these multiemployer pension plans could increase as a result of future collective bargaining, funding deficiencies or other factors. The Debtors' obligations to make contributions to their pension plans and multiemployer pension plans in which they participate would reduce the cash available for working capital and other corporate uses and may have a material adverse impact on the Debtors' operations, financial condition and liquidity.

> 17. Labor Strikes, Lock-Outs and Protracted Negotiations can Lead to Business Interruptions and Increased Operating Costs.

As of December 31, 2009, union employees comprise about fifteen percent (15%) of the Debtors' workforce. The Debtors are required to negotiate collective bargaining agreements across their respective business units on an ongoing basis. Complications in labor negotiations can lead to work slowdowns or other business interruptions and greater overall employee costs.

> 18. Acquisitions, Investments and Dispositions Pose Inherent Financial and Other Risks and Challenges.

The Debtors continuously evaluate their businesses and make strategic acquisitions, dispositions, and investments. These transactions involve challenges and risks in negotiation, execution, valuation and integration. There can be no assurance that any such transaction can be completed. Moreover, competition for certain types of acquisitions and investments is significant. Even if successfully negotiated, closed and integrated, certain acquisitions or investments may prove not to advance the Debtors' businesses strategy and may fall short of expected return on investment targets. In certain of the Debtors' investments, the Debtors have taken or may take a minority position in a company with limited voting rights and an inability to exert absolute control over the entity.

## XIII.  CONCLUSION

Please refer to the Specific Disclosure Statements for the Proponents' views regarding the implications and consequences of confirmation of their respective Competing Plans. Following such review, please vote to accept or reject the Competing Plans by returning your ballotBallot(s) so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on [•], 2010.January 28, 2011.

Dated: ~~November [●]~~ December ____, 2010

Respectfully submitted,

TRIBUNE COMPANY (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession, and the Guarantor Non-Debtors and Non-Guarantor Non-Debtors)

By: _____

    Name: Donald J. Liebentritt
    Title: Co-President and Chief Restructuring
          Officer, Tribune

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kevin T. Lantry
Kerriann S. Mills
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue
Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel to the Debtors, Debtors-in-Possession, and Certain Non-Debtor Affiliates