# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Deadline: January 3, 2011 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 4820, 5329, and 6088** |

## SIXTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF MARCH 1, 2010 THROUGH MAY 31, 2010

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide<br>Professional Services to: | **Debtors** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Date of Retention:                      **February 20, 2009 (nunc pro tunc to December 8, 2008)**

Period for Which Compensation           **March 1, 2010 through May 31, 2010**
and Reimbursement is Sought:

Amount of compensation sought as actual,    **$6,581,178.43**
reasonable and necessary:

Amount of Expense Reimbursement sought as    **$425,733.29**
actual, reasonable and necessary

This is a(n): _____ monthly    ___X___ interim    _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee applications, including time expended for review and response to fee auditor preliminary and final reports and recommendations, during the Sixth Interim Fee Period is approximately 263.50 hours and the corresponding compensation requested is approximately $85,194.50.

### Prior Interim Applications

| Quarter | Date Filed | Period Covered | Requested | | Approved | |
|---------|-----------|----------------|-----------|-----------|----------|----------|
| | | | Fees | Expenses | Fees | Expenses |
| 1 | 4/15/09 | 12/8/08-2/28/09 | $3,897,043.25 | $165,360.71 | $3,886,289.75 | $158,441.67 |
| 2 | 7/16/09 | 3/1/09-5/31/09 | $4,209,274.75 | $105,524.36 | $4,203,235.50 | $104,118.90 |
| 3 | 10/15/09 | 6/1/09-8/31/09 | $4,513,018.00 | $99,429.34 | $4,510,127.00 | $99,253.67 |
| 4 | 1/15/10 | 9/1/09-11/30/09 | $5,292,782.75 | $221,808.01 | | |
| 5 | 4/15/10 | 12/1/09-2/28/10 | $5,426,757.50 | $205,852.05 | | |
| 6 | | 3/1/10-5/31/10 | $6,581,178.43 | $425,733.29 | | |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: January 3, 2011 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 4820, 5329, and 6088** |

## SIXTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF MARCH 1, 2010 THROUGH MAY 31, 2010

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (1579); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (D.I. 225) (the "Interim Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications (D.I. 546) (the "Fee Examiner Order") for approval of interim compensation and reimbursement of expenses for the sixth quarterly period from March 1, 2010 through May 31, 2010 (the "Sixth Interim Fee Period").  In support of the Application, Sidley respectfully states as follows:

## FACTUAL BACKGROUND OF THE CASES

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC) ("Tribune CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.[2]  On March 22, 2010, this Court entered an order dismissing the chapter 11 petition of New River Center Maintenance Association, Inc.  In all, the Debtors comprise 111 entities.

---

[2] Orders of the Court applicable to this Application have subsequently been extended to Tribune CNLBC.  (See Order Directing (I) Joint Administration of Chapter 11 Cases and (II) that Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. be Made Applicable to the Chapter 11 Case of Chicago National League Ball Club, LLC (entered Oct. 14, 2009) (D.I. 2333) (the "CNLBC Joint Administration Order").

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  (D.I. 43, 2333.)

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On March 19, 2009, pursuant to the Fee Examiner Order, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009.

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

7.      The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and

regulatory, employee-related, and real estate matters.  In particular, Sidley's retention application
sets forth the following scope of services:

(a)    to provide legal advice with respect to the Debtors' powers and duties as
debtors in possession in the continued operation of their business;

(b)    to take all necessary action on behalf of the Debtors to protect and
preserve the Debtors' estates, including prosecuting actions on behalf of
the Debtors, negotiating any and all litigation in which the Debtors are
involved, and objecting to claims filed against the Debtors' estates;

(c)    to prepare on behalf of the Debtors all necessary motions, answers, orders,
reports, and other legal papers in connection with the administration of the
Debtors' estates;

(d)    to attend meetings and negotiate with representatives of creditors and
other parties in interest, attend court hearings, and advise the Debtors on
the conduct of their chapter 11 cases;

(e)    to perform any and all other legal services for the Debtors in connection
with both their chapter 11 cases and with the formulation and
implementation of the Debtors' plan of reorganization;

(f)    to advise and assist the Debtors regarding all aspects of the plan
confirmation process, including, but not limited to, negotiating and
drafting a plan of reorganization and accompanying disclosure statement,
securing the approval of a disclosure statement, soliciting votes in support
of plan confirmation, and securing confirmation of the plan;

(g)    to provide legal advice and representation with respect to various
obligations of the Debtors and their managers and officers;

(h)    to provide legal advice and perform legal services with respect to matters
involving the negotiation of the terms of and the issuance of corporate
securities, matters related to corporate governance, and the interpretation,
application, or amendment of the Debtors' organizational documents,
including their limited liability company agreements, material contracts,
and matters involving the fiduciary duties of the Debtors and their officers
and managers;

(i)    to provide legal advice and perform legal services with respect to
litigation, tax (state and federal income tax and local property tax
assessment matters) and other general non-bankruptcy legal issues for the
Debtors to the extent requested by the Debtors; and

(j)    to render such other services as may be in the best interests of the Debtors
in connection with any of the foregoing and all other necessary or

appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, nunc pro tunc to the Petition Date, was approved by this Court by order dated February 20, 2009. (D.I. 435.)

8.     The Interim Compensation Order and the Fee Examiner Order (together, the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide to the Fee Examiner monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the applicable time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing that no objection or partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Application or (ii) 80% of the fees and 100% of the expenses not subject to an objection.

9.     Pursuant to the procedures set forth in the Fee Orders, Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods of March 2010, April 2010 and May 2010, which Monthly Fee

Applications are incorporated herein by reference.[3] Sidley has accordingly submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases for the Sixth Interim Fee Period.

10. In addition to the Monthly Fee Applications, beginning with the three-month period ending February 28, 2009, and each three-month period thereafter, all Case Professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request"). (See Interim Compensation Order at 3.) Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. (Id.) This Application represents the sixth Quarterly Fee Application Request that Sidley has filed with the Court in connection with these chapter 11 cases, and it covers the period from March 1, 2010 through May 31, 2010, both dates inclusive.

## RELIEF REQUESTED

11. By this Application, Sidley respectfully requests that the Court approve the interim allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy counsel to the Debtors during the Sixth Interim Fee Period.

12. The amount of fees sought for services rendered during the Sixth Interim Fee Period is $6,581,178.43, representing 11,656.70 hours in professional and paraprofessional time for such services. Reimbursement of actual, necessary expenses incurred by Sidley during the Sixth Interim Fee Period in connection with these services is requested in the amount of

---

[3] The docket numbers of Sidley's Monthly Fee Applications for March 2010, April 2010, and May 2010 are 4820, 5329, and 6088, respectively.

$425,733.29. Sidley seeks the interim allowance of such compensation, and this Court's authorization for payment of such amounts by the Debtors to Sidley, less amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

13.    The hourly rates charged by Sidley professionals and paraprofessionals during the Sixth Interim Fee Period are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases. The highest billing rate that will be charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2010 and continuing until Sidley's next Firm-wide rate adjustment will be $950 per hour. (See Supplemental Affidavit (Second) of James F. Conlan in Support of Application for an Order Authorizing the Employment and Retention of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession ¶ 3, D.I. 424.) Sidley believes these rates are comparable to those charged by the bankruptcy and other professionals of other firms of comparable size, stature, and experience.

14.    Sidley has received no payment and no promises for payment from any source other than the Debtors for services rendered in these chapter 11 cases. There is no agreement between Sidley and any other party for the sharing of compensation to be received for the services rendered by Sidley in these chapter 11 cases. All professional and paraprofessional services for which compensation is sought herein were rendered solely on behalf of the Debtors in these cases.

## **SERVICES RENDERED**

15.    Sidley has rendered substantial services to the Debtors in connection with these chapter 11 cases during the period covered by this Application, both in its capacity as general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation,

and transactional counsel to the Debtors in their ordinary course of business. The services performed by Sidley's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.     A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of Attachment A to this Application, as required by Local Rule 2016-2. A detailed description of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed by Sidley with the Court. The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Sixth Interim Fee Period:

### A.     FCC Matters (20100):    Hours: 447.60    Fees: $188,974.00[4]

17.     During the Sixth Interim Fee Period, Sidley's professionals represented the Debtors' broadcast stations on several matters as communications regulatory counsel. In this capacity, Sidley's professionals and paraprofessionals handled various matters on behalf of the Debtors relating to regulatory compliance, including advising on compliance with technical and operational rules and regulations of the Federal Communications Commission ("FCC"), transactional matters that require FCC approval; seeking waivers of the newspaper/broadcasting cross-ownership rules; preparing and filing periodic license renewal applications and license modification applications, and responding to various complaints filed with the FCC.

---

[4] Commencing in December 2009, the Debtors requested that Sidley provide separate invoices for professional fees for certain discrete FCC-related services attributable to KWGN/FCC General, KPLR-TV, Nextel Negotiations, and Newspaper Crossownership matters, on which Sidley represents the Debtors in the ordinary course of business. In accordance with this request, and after consultation with the Fee Examiner, Sidley has included such invoices within the broader category of FCC Matters for the purposes of calculating the total fees and expenses in Sidley's Monthly Fee Applications and Quarterly Fee Application Requests.

Additionally, Sidley represented Tribune in appeals to the U.S. Courts of Appeals from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

18.    During the Sixth Interim Fee Period, Sidley's professionals and communications specialist drafted and filed applications, reports, notifications, and other materials that were required to be filed with the FCC in connection with the Debtors' 23 television stations, cable "Superstation" WGN America, and WGN Radio, including, but not limited to, preparing post-bankruptcy Public Notice text and instructions and drafting biennial ownership reports. In addition, Sidley represented the Debtors in briefing an appeal currently before the Third Circuit regarding the application of media cross-ownership rules, the outcome of which is of substantial importance to the Debtors' broadcasting and publishing operations in several key markets in which the Debtors conduct business.

**B.    Fee Applications (30390):    Hours: 263.50    Fees: $85,194.50**

19.    This matter category encompasses all tasks relating to the preparation and filing of Sidley's Monthly Fee Applications and Quarterly Fee Application Requests with the Court. In this Sixth Interim Fee Period, Sidley's professionals and paraprofessionals drafted and filed Sidley's thirteenth, fourteenth, fifteenth, and sixteenth Monthly Fee Applications and reviewed and complied with the Court's Fee Orders. During the Sixth Interim Fee Period, Sidley also prepared and filed its Fifth Quarterly Fee Application Request with the Court. Additionally, Sidley's professionals and paraprofessionals received, reviewed, and responded to the Fee Examiner's reports concerning Sidley's Second and Third Quarterly Fee Application Requests, and received and reviewed the Fee Examiner's report concerning the Fourth Quarterly Fee Application Request.

**C.     Intellectual Property Issues (30400):   Hours: 15.80   Fees: $12,605.93**

20.     In February and March 2010, Sidley was asked by the Debtors to provide advice and counsel on the application of the laws of England and Wales to certain of the Debtors' intellectual property contracts, which matter arose in the ordinary course of business of Debtor Tribune Media Services, Inc.  Sidley's professionals in the Firm's London office reviewed and analyzed the proposed contract and advised the Debtors accordingly.  Although these services were rendered prior to the Sixth Interim Fee Period, they were first invoiced to the Debtors in May 2010 and are thus part of this Quarterly Fee Application Request.

**D.     Executory Contracts and Leases (30410):   Hours: 121.20   Fees: $59,916.00**

21.     As of the Petition Date, the Debtors in these cases were party to approximately 45,000 executory contracts and unexpired leases.  During the Sixth Interim Fee Period, Sidley's professionals continued to assist the Debtors with obtaining Court approval to assume, or to assume and assign, certain executory contracts under section 365 of the Bankruptcy Code on terms favorable to the Debtors.  Sidley's professionals also addressed numerous inquiries from executory contract and lease counterparties concerning the status of certain contracts and leases.

22.     Specifically, Sidley's professionals, working with Tribune's insurance counsel, finalized the assumption of certain agreements with Marsh USA, Inc. ("Marsh") related to the settlement of a state court action that Tribune brought against Marsh prior to the Petition Date.  The settlement agreements with Marsh were discussed in greater detail in the Debtors' Fifth Quarterly Fee Application Request and that discussion is incorporated herein by reference.  The order authorizing the assumption of the Marsh settlement agreements was entered on March 23, 2010.  (D.I. 3825.)

23.     In addition, during the Sixth Interim Fee Period, Sidley's professionals evaluated the rejection of, and prepared and filed the motion to reject a contract between certain of the Debtors and Dun & Bradstreet ("D&B").  Through the rejection of the D&B contract, the Debtors expect to realize significant cost savings.  The order authorizing the rejection of the D&B contract was entered on May 14, 2010.  (D.I. 4412.)

**E.     Vendor Issues (30420):   Hours: 1.90   Fees: $1,064.00**

24.     In this period, Sidley's professionals continued to address issues concerning postpetition vendor performance, which has periodically required Sidley's professionals to review existing contracts between the Debtors and relevant vendors and, in some cases, arrange and participate in calls with the Debtors' business personnel, financial advisors at Alvarez and Marsal, vendors, and/or vendor's counsel to ensure or facilitate continued vendor performance.

**F.     Use/Sale/Lease of Assets (30430):   Hours: 90.30   Fees: $64,132.50**

25.     Sidley's professionals remained engaged in negotiating and documenting transactions for the use, sale, and lease of assets on behalf of the Debtors, both in connection with these chapter 11 cases and with Sidley's ongoing representation of the Debtors in their ordinary course of business.  For example, during the Sixth Interim Fee Period, Sidley worked with the Debtors' in-house counsel and management at Los Angeles Times Communications LLC ("LATC") to prepare and to file a motion authorizing LATC to sell its 66.67% membership interest in the joint venture known as Zetabid to Catalist Homes, following which sale Catalist Homes became the sole member of Zetabid, and LATC received an ongoing interest in any profits of Zetabid, and to enter into and perform obligations under the purchase and sale agreement.  The motion was filed on March 2, 2010 (D.I. 3664) and was granted by order entered on March 23, 2010 (D.I. 3824).  Sidley's professionals also reviewed and analyzed

certain existing contracts and proposed postpetition contracts concerning certain Debtors and non-Debtor subsidiaries on behalf of certain of the Debtors, as requested by the Debtors' in-house personnel.

**G.**     **DIP Financing/Cash Collateral (30440):**    **Hours: 28.50**    **Fees: $13,810.00**

      26.      During the Sixth Interim Fee Period, Sidley's professionals in the Bankruptcy and Banking practice groups negotiated and prepared the underlying substantive documentation to effect the termination of the Debtors' securitized receivables facility and the entry into an amended letter of credit facility in the amount of $30,000,000 provided by Barclays Bank PLC as postpetition agent and issuing bank. In connection therewith, Sidley's professionals researched and prepared motions to obtain the Court's authorization to enter into the amended letter of credit facility and to file the agent's fee letter under seal. Each of these motions were filed on March 2, 2010 (D.I. 3666 and 3667, respectively) and were approved by the Court on March 22, 2010 (D.I. 3808 and 3798, respectively). The Sidley professionals that participated in the consummation and Court approval of these financing transactions did so consistent with their roles in the initial debtor-in-possession financing transactions and subsequent amendments thereto since the outset of these chapter 11 cases.

**H.**     **Insurance Matters (30450):**    **Hours: 4.30**    **Fees: $3,520.00**

      27.      During the Sixth Interim Fee Period, Sidley's professionals continued to work with the Debtors, their outside insurance counsel, and various insurance providers to resolve certain insurance coverage issues, and to advise upon the impact of these chapter 11 cases on the Debtors' insurance and risk management procedures. Sidley's professionals also reviewed and addressed various legal issues arising in connection with the Debtors' primary and excess liability policies covering certain prepetition lawsuits pending against the Debtors.

**I.**   **Committee-Related Matters (30460):   Hours: 14.90   Fees: $12,400.00**

28.   Sidley's professionals continued during the Sixth Interim Fee Period to work diligently to maintain a cooperative and responsive relationship with the Debtors' major creditor constituencies, including the Committee.  During this Sixth Interim Fee Period, Sidley's professionals conferred with the Committee and their professionals and advisors on pending motions and general case administration issues and participated in numerous periodic conference calls and meetings in order to address case issues as they arose.  Communications with the Committee related to specific substantive matters, including the development of the Debtors' plan of reorganization and disclosure statement or discovery-related matters, are reflected in the applicable substantive matter categories.

**J.**   **Litigated Matters (30470):   Hours: 4,099.50   Fees: $2,054,633.50**

29.   The "Litigated Matters" category encompasses all of Sidley's activities relating to actual and potential litigation, contested matters, and adversary proceedings, as discussed in detail below.  Notably, this category also includes much of Sidley's activities relating to the review and analysis of the series of transactions that returned Tribune to private ownership in 2007 (the "Leveraged ESOP Transactions") and corresponding document discovery and production activities, negotiations with creditor constituencies, and matters concerning the Debtors' participation in the examination of the Leveraged ESOP Transactions by Kenneth N. Klee, the Court-appointed Examiner.  The resolution of potential claims arising out of the Leveraged ESOP Transactions—whether through settlement or, to the extent required, litigation—is a pivotal issue in these chapter 11 cases, requiring substantial attention from Sidley, the Debtors' senior management, the Committee, the Steering Committee, and other key creditor constituencies during the Sixth Interim Fee Period.

(a)    Appointment of the Examiner and Cooperation with the Investigation

30.    On April 13, 2010, the Court held a hearing on the motion of Wilmington Trust Company ("WTC"), successor indenture trustee for certain Exchangeable Subordinated Debenture due 2029 (the "PHONES") issued in April 1999 by Tribune, for the appointment of an examiner.[5]  As a result of that hearing and the parties' further negotiations, on April 20, 2010 the Court entered an Agreed Order Directing the Appointment of an Examiner (D.I. 4187).  On April 30, 2010, Kenneth N. Klee was appointed the Examiner, which appointment was approved by Order dated May 11, 2010 (D.I. 4320).  The scope of the Examiner's investigation included the evaluation of: (i) potential claims and causes of action that may be asserted arising from and in connection with the Leveraged ESOP Transactions (the "LBO-Related Claims"), (ii) whether WTC violated the automatic stay by filing, on March 4, 2010, its Complaint for Equitable Subordination and Disallowance of Claims, Damages, and Constructive Trust (docketed at Adv. No. 10-50732, D.I. 1), and (iii) assertions and defenses of the parties in connection with the Motion of JPMorgan Chase Bank, N.A. for Sanctions Against Wilmington Trust Company for Improper Disclosure of Confidential Information in Violation of Court Order (collectively, the "Investigation").

31.    Immediately following his appointment, the Examiner and his legal and financial advisors conducted in-person meetings with certain parties involved in the Leveraged ESOP Transactions and invited the parties to share their views in writing on the issues to be considered in the Examiner's Report.  During the Sixth Interim Fee Period, Sidley's

---

[5] Sidley prepared the Debtors' objection to WTC's motion, and also reviewed and analyzed the objections and/or responses to WTC's motion filed by (i) the Committee, (ii) JPMorgan Chase Bank, N.A. ("JPMorgan"), (iii) Merrill Lynch Capital Corporation, as agent for the Bridge Facility lenders, (iv) the Credit Agreement Lenders, (v) certain of the Debtors' retirees, (vi) Citigroup North America Inc./Citigroup Global Markets Inc., (vii) Bank of America, N.A. and Banc of America Securities LLC, (viii) Law Debenture Trust Company of New York ("Law Debenture"), (ix) Centerbridge Credit Advisors LLC ("Centerbridge"), and (x) the Office of the United States Trustee.

professionals in the Bankruptcy and Litigation practice groups assisted the Debtors in

cooperating with the Examiner and his advisors in the Examiner's Investigation, including

responding to the document discovery requests of the Examiner and his professionals and

advisors, participating in formal depositions and informal interviews with the Debtors' senior

management,[6] and preparing and submitting two rounds of voluminous briefing to the Examiner,

with supporting documents, that set forth in extensive detail the relevant issues pertaining to the

LBO-Related Claims and the other issues investigated by the Examiner.  The Examiner expressly

noted that the Debtors "facilitated the Investigation and were responsive to the Examiner's many

requests for documents and information."  (See Examiner's Report, Vol. I, at 7.)

> (b)    Discovery Activities Relating to Leveraged ESOP Transactions

32.    Upon the appointment of the Examiner in April 2010, Sidley's

comprehensive ongoing discovery activities in these chapter 11 cases[7] expanded to facilitate the

Investigation, including the production of relevant documents and data to the Examiner and his

legal and financial advisors, as well as the collection and analysis of documents relevant to

preparing the Debtors' briefs and submissions to the Examiner.  Document discovery activities

also continued during this period among the Debtors and their various creditor constituencies.

Throughout this process, Sidley's team has worked closely with the Debtors' senior management

to advise on the legal issues implicated by the document production.

---

[6] During the course of the Investigation, the Examiner and his legal and financial advisors interviewed 38 witnesses, of which 33 interviews were conducted in person.

[7] As discussed in Sidley's prior Quarterly Fee Application Requests, since the spring of 2009, more than 45 individuals and entities involved with the Leveraged ESOP Transactions collectively, the "Producing Parties"), including the Debtors, have participated in informal (but comprehensive) discovery to facilitate the Committee's investigation of the Leveraged ESOP Transactions and LBO-Related Claims.  Sidley and the Debtors have supported requests for access to these materials from Law Debenture, Centerbridge, JPMorgan, and other creditor constituencies with respect to their independent reviews of the Leveraged ESOP Transactions, through the Document Depository procedures discussed in detail in Sidley's Fifth Quarterly Fee Application Request.

33.    To date, Sidley's team of Litigation professionals and paraprofessionals have received the equivalent of approximately 4.5 million pages of discovery documents produced by the Producing Parties in connection with the Leveraged ESOP Transactions, which are maintained in the Document Depository.  During the Sixth Interim Fee Period, Sidley continued to receive, process, review, and analyze documents submitted by the Producing Parties that were responsive to the Debtors' discovery requests.  Sidley's professionals also collected and reviewed several hundred thousand pages of the Debtors' documents and electronic records for relevance and privilege, including corporate documents, financial records, board of directors' minutes and resolutions, and electronic computer files from certain of the Debtors' employees, for inclusion in the Document Depository and production to the Examiner and other parties in interest authorized to receive the discovery materials (the "Depository Designees").  Upon completing their review of Debtors' documents, Sidley's professionals also prepared the List of Documents Withheld as Privileged.

34.    The collection, review, and analysis of such a volume of documents in connection with the discovery are substantial undertakings, requiring a team of professionals, paraprofessionals, litigation support specialists, and other personnel.  Much of the collection, review, and production of discovery documents has been accomplished by means of an electronic data discovery system ("EDD") maintained by Sidley's litigation support specialists, analysts, and technicians.  Sidley's litigation support specialists received and processed the raw data and physical documents provided by the Debtors into the database so that they can be reviewed by attorneys.  Sidley's professionals reviewed the documents, prepared privilege logs, and prepared approved documents for production.  In connection with those discovery activities, Sidley's professionals and paraprofessionals coordinated with third parties the claw-back and

replacement of inadvertently produced documents and resolved issues related to data spoliation, preservation, and quality control.

35.     During the Sixth Interim Fee Period Sidley's professionals also received approximately five additional requests by the Debtors' creditor constituencies to become Depository Designees, and prepared the notices required by the Depository Order. Sidley's professionals brokered and responded to disputes among the Depository Designees regarding the use of confidential documents that are subject to the Depository Order in connection with the Investigation, pleadings, and court proceedings.

(c)     Substantive Analysis of the Leveraged ESOP Transactions

36.     During the Sixth Interim Fee Period, a significant number of Sidley's professionals and paraprofessionals from the firm's Bankruptcy and Litigation practice groups expended considerable efforts in connection with the substantive review and analysis of documents produced by the Debtors and the other Producing Parties to evaluate the impact that the Debtors' Leveraged ESOP Transactions may have on the Debtors' plan of reorganization and the confirmation process. Overall, this review has demanded hundreds of hours of professional time and effort, necessitating substantial staffing by Sidley's professionals to address this matter. Based on the substantive document review, Sidley's professionals were able to develop comprehensive legal and factual analyses concerning any potential fraudulent transfer or other liability implications of these transactions. Sidley's analysis formed the basis of its briefing to the Examiner in connection with his Investigation of the Leveraged ESOP Transactions and was essential to the negotiation of a proposed settlement of all potential causes of action arising from the Leveraged ESOP Transactions that formed the basis of a proposed plan of reorganization of the Debtors that was filed with this Court on April 12, 2010.

    (d)    <u>Stay Relief Motions</u>

37.    The Debtors were involved in over one hundred active or threatened lawsuits as of the Petition Date, all of which have been stayed as a result of the commencement of these chapter 11 cases. As in most chapter 11 cases, the Debtors are faced with periodic requests for relief from the automatic stay. Specifically, the Debtors have received seventeen (17) requests for relief from stay since the commencement of these cases. During the Sixth Interim Fee Period, Sidley's professionals negotiated and entered into a stipulation modifying the automatic stay to permit Simone and Victoria Conigliaro to proceed with mediation of a state court action against certain Debtors, which stipulation was approved by the Court on March 22, 2010 (D.I. 3800).

    (e)    <u>Adversary Proceedings</u>

38.    As noted above, on March 4, 2010, WTC filed a complaint (the "<u>WTC Complaint</u>") purporting to seek equitable subordination, disallowance of claims, damages, and constructive trust against certain of the Debtors' senior lenders. (<u>See</u> Adv. No. 10-50732, D.I. 1.) Sidley's professionals in the Bankruptcy and Litigation practice groups reviewed and analyzed the WTC Complaint, and prepared and filed a motion on March 18, 2010 seeking a determination that the WTC Complaint violated the automatic stay imposed by section 362 of the Bankruptcy Code. (D.I. 3759.) In that motion the Debtors requested that WTC be required to demonstrate why it should not be held in contempt of court for filing the WTC Complaint, and sought to halt all proceedings respecting the WTC Complaint. On April 5, 2010, WTC filed a response to the Debtors' motion and on April 7, 2010, the Committee filed a statement supporting the Debtors' motion. Sidley reviewed and analyzed all responsive pleadings and prepared and filed a reply on behalf of the Debtors on April 9, 2010. (D.I. 3993.) As part of the Investigation, the Examiner was directed by the Court to review and analyze the parties'

contentions raised in the WTC Complaint and related pleadings.  Sidley prepared briefs to the Examiner on these issues during the Sixth Interim Fee Period (and continuing through June and July 2010).

(f)     Other Contested Matters

39.     On March 26, 2010 the Court heard oral arguments with respect to Law Debenture's Motion to Terminate Debtor Affiliates' Undisclosed Payment of LBO Lenders' Fees and Expenses, for an Accounting, and for Disgorgement of Past Payments, which had been joined by Centerbridge and Deutsche Bank Trust Company Americas (the "Fee Motion"). During the Sixth Interim Fee Period, Sidley's professionals in the Bankruptcy and Litigation practice groups researched and analyzed the substantive issues raised in the Fee Motion in preparation for the oral arguments.  Sidley's professionals also participated in the negotiation and preparation of a pre-hearing stipulation in connection with the hearing.  (See D.I. 3657, corrected at D.I. 3730).  Thereafter, Sidley's professionals negotiated with Law Debenture, Centerbridge, and the Debtors' senior lenders on a consensual withdrawal of the Fee Motion, which was approved by order dated April 15, 2010.  The Fee Motion has subsequently been reinstated and remains pending before the Court.

(g)     Other Pending Litigation

40.     Prior to the Petition Date and since, Sidley has served the Debtors as defense counsel with respect to a number of litigation matters pending in all levels of state and federal courts across the country, including such matters as *Neuman v. Goldstone*, a prepetition employment contract lawsuit in Los Angeles, and certain litigation matters pending in New York, including the cases styled *Schultz v. Tribune*, *Crab House of Douglaston, Inc. v. Newsday*, and *Furnell v. Tribune*.  Sidley continued to represent the Debtors in connection with these litigation matters during the Sixth Interim Fee Period, to the extent such matters were not stayed

21

by section 362(a) of the Bankruptcy Code, and also provided advice to the Debtors with

connection with proofs of claim filed by the plaintiffs on account of such litigated matters.

**K.**   **Travel Time (30480):   Hours: 182.30   Fees: $68,894.00**

41.   During the Sixth Interim Fee Period, Sidley's professionals spent time

traveling to Wilmington, Delaware to attend various hearings in the Debtors' cases, including

disclosure statement hearings and omnibus hearings.  In addition, Sidley's professionals traveled

to a variety of locations to attend meetings with the Debtors and various creditor constituencies.

The hours reflect non-working travel time and the fees requested in this matter category have

been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**L.**   **Labor Issues (30490):   Hours: 62.50   Fees: $44,277.00**

42.   Approximately 15% of the Debtors' employees are represented by labor

unions.  During the Sixth Interim Fee Period, Sidley's professionals continued to address and

analyze a variety of legal issues concerning the impact of these chapter 11 cases on the Debtors'

collective bargaining agreements, multiemployer pension plans, and obligations thereunder.

43.   In addition, Sidley's professionals have continued to work with the

Debtors to respond to various bankruptcy-related issues and questions raised by the Pension

Benefit Guaranty Corporation ("PBGC") in connection with certain of the Debtors' labor

contracts.  Sidley's professionals also continued to analyze the implications of the sale of

substantially all of the assets of the Chicago Sun-Times newspaper business (in connection with

its chapter 11 proceedings) on the multiemployer pension plan shared between the Chicago Sun-

Times and the Chicago Tribune Company.

44.   Sidley's professionals in the bankruptcy, employee benefits, and litigation

practice groups reviewed, researched, and analyzed proofs of claim filed by, among other parties,

the Department of Labor ("DOL"), respecting the Debtors' potential liabilities arising from their

collective bargaining agreements, pension plans, and other employee health and benefit plans. Sidley's professionals also analyzed the potential treatment of other labor-related claims under the Debtors' proposed plan of reorganization.

**M.**    **Plan and Disclosure Statement (30500):    Hours: 4,482.80   Fees: $3,010,552.50**

45.    Beginning over a year ago, Sidley and the Debtors used the investigation of the LBO-Related Claims described above as a springboard for negotiations with the Debtors' various creditor constituencies, with the goal of achieving a resolution of the LBO-Related Claims that would be acceptable to a wide range of constituencies and that could form the basis for a consensual plan of reorganization.  These discussions, in turn, led to a series of intensive plan negotiation meetings in January, February, and March of 2010, in which Debtors and certain of their principal creditor constituencies discussed potential resolution of the LBO-Related Claims through a consensual plan of reorganization.  Sidley's professionals, acting on behalf of the Debtors, have continued to press forward with the negotiation and development of a plan that is in the best interests of the Debtors, their estates, creditors and other parties in interest to secure the Debtors' near term emergence from their chapter 11 cases and to maximize the going concern value of the Debtors' businesses.

(a)    <u>Development, Negotiation, Preparation, and Filing of the Original Plan and Disclosure Statement</u>

46.    On April 12, 2010, Sidley's professionals, acting on behalf of the Debtors, filed a proposed disclosure statement and plan of reorganization (D.I. 4008) (the "<u>Original Plan</u>" and the "<u>Disclosure Statement</u>"), which embodied the substantive terms of a "Settlement Support Agreement" executed on April 8, 2010 by the Debtors' senior lenders JPMorgan and Angelo,

Gordon & Co. ("Angelo Gordon") and senior noteholders Law Debenture and Centerbridge, and which was supported by the Committee.[8]

47.    Leading up to the filing of the Original Plan and Disclosure Statement, during the Sixth Interim Fee Period, Sidley's professionals continued to engage in substantial ongoing communications, meetings, and negotiations on behalf of the Debtors with the professionals for the Committee, the Debtors' prepetition lenders, noteholders, and other creditor constituencies to formulate the terms of the Original Plan and Disclosure Statement. The Original Plan was the product of extensive and intensive arms-length negotiations among the parties and was aimed at a global resolution of the LBO-Related Claims, on which the Debtors' various creditor constituencies hold widely divergent views.

48.    In furtherance of the formulation of the Original Plan during the Sixth Interim Fee Period, Sidley's professionals met and conferred on a regular basis with the Debtors' senior management to analyze and discuss a variety of legal issues raised by the plan, confirmation, and the Debtors' eventual emergence from chapter 11. Sidley's professionals in the bankruptcy, corporate, tax, litigation, and FCC regulatory practice groups have continued to conduct the extensive operational, financial, and legal analyses necessary to the development of the Original Plan and Disclosure Statement, as they evolved based on such negotiations.

(b)    Solicitation and Balloting

49.    Sidley's professionals also continued the preparation of solicitation materials in connection with balloting and voting on the Original Plan. Sidley prepared and filed

---

[8] On October 22, 2010, the Debtors, the Committee, Angelo Gordon, JPMorgan, and Oaktree Capital Management, L.P. ("Oaktree") (collectively, the "Plan Proponents") filed a Joint Plan of Reorganization for Tribune Company and Its Subsidiaries, together with general and specific disclosure statements, as directed by the Court (the "New Plan"). Further discussion of Sidley's efforts in connection with the New Plan will be provided in Sidley's subsequent interim fee applications to this Court.

the Motion of the Debtors for an Order (I) Establishing Procedures for Solicitation and

Tabulation of Votes to Accept or Reject Joint Plan of Reorganization for Tribune Company and

Its Subsidiaries; (II) Establishing Deadline for Return of Media Ownership Certifications; (III)

Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures in Respect

of Confirmation of Joint Plan of Reorganization; and (V) Granting Related Relief (D.I. 4204,

filed April 29, 2010) (the "Solicitation Procedures Motion"), together with extensive supporting

materials, including the form of ballots to be used in voting on the Original Plan and notices to

be sent to holders of claims and interests respecting the Original Plan. Sidley's professionals

additionally prepared and filed revisions to the proposed form of order accompanying the

Solicitation Procedures Motion on May 24, 2010 (D.I. 4600), May 27, 2010 (D.I. 4633), June 1,

2010 (D.I. 4651), and June 4, 2010 (D.I. 4692). The Order approving the Solicitation Procedures

Motion was entered by the Bankruptcy Court on June 7, 2010 (D.I. 4707).

    (c)    Objections to the Disclosure Statement and Approval of the Adequacy of the Disclosure Statement

    50.    Following the filing of the Original Plan and Disclosure Statement and

prior to the initial deadline for filing objections to the approval of the Disclosure Statement and

Solicitation Procedures Motion, the Debtors received approximately fourteen (14) objections (the

"Disclosure Statement Objections") to the Disclosure Statement and Solicitation Procedures

Motion, plus numerous other informal objections or responses thereto. Sidley's professionals

reviewed and analyzed each of the Disclosure Statement Objections and expended substantial

time and effort to engage with each of the objecting parties, to the extent practicable, to resolve

the Disclosure Statement Objections consensually.

    51.    On May 18, 2010, Sidley filed an omnibus response on behalf of the

Debtors to certain of the Disclosure Statement Objections. (See D.I. 4450.) To assist the Court

in evaluating the Disclosure Statement Objections, Sidley's professionals prepared and provided

a comprehensive summary of the Objections, which identified each objecting party, summarized

the substance of each of the Objections, and provided the Debtors' responses thereto.

      52.    To further facilitate the resolution of the Disclosure Statement Objections,

Sidley's professionals filed amendments to the Original Plan and Disclosure Statement with the

Court on May 19, 2010 (D.I. 4472), prior to the hearing held before the Court on May 20, 2010

(the "First Disclosure Statement Hearing").  Following the First Disclosure Statement Hearing,

Sidley prepared and filed further proposed revisions to the Disclosure Statement on May 24,

2010 (D.I. 4598) and May 27, 2010 (D.I. 4632).  On May 28, 2010, the Court held a

supplemental hearing on the fourth iteration of the Original Plan and Disclosure Statement (the

"Second Disclosure Statement Hearing").  Based on the then-outstanding Disclosure Statement

Objections and the statements of the Court made at the Second Disclosure Statement Hearing,

Sidley's professionals continued their efforts to negotiate and revise the Disclosure Statement

and Original Plan.  Subsequent to the Sixth Interim Fee Period, Sidley prepared and filed further

proposed revisions to the Disclosure Statement on June 1, 2010 (D.I. 4650) and June 4, 2010

(D.I. 4690).  The Court held a final hearing on the adequacy of the Disclosure Statement on June

4, 2010 (the "Third Disclosure Statement Hearing") and entered an order approving the

Disclosure Statement and Solicitation Procedures Motion, each as amended, on June 7, 2010

(D.I. 4707), and solicitation of the Original Plan, as amended, commenced thereafter.

      (d)    Exclusivity

      53.    In aid of the Debtors' ongoing efforts to negotiate a consensual plan of

reorganization, on March 31, 2010, Sidley's professionals filed a motion requesting a further

extension of the Debtors' exclusive period within which to file a chapter 11 plan and solicit

acceptances thereto (D.I. 3902) (the "Fifth Exclusivity Motion"), which was approved by the

Bankruptcy Court on April 13, 2010, and which extended that exclusive period to file a plan

through that date (D.I. 4017). Sidley's professionals subsequently prepared and filed a motion

requesting a further, final extension of the Debtors' exclusive period within which to solicit

acceptances to the plan on April 30, 2010 (D.I. 4211) (the "Sixth Exclusivity Motion"), which

was approved by the Bankruptcy Court by order entered on May 18, 2010 (D.I. 4466).

N.    **Professional Retention (30510):    Hours: 63.30    Fees: $33,217.50**

        54.    The Debtors' large and diverse businesses require the employment and

retention of a variety of professionals to support these bankruptcy proceedings and to continue

managing the litigation, real estate, tax, accounting, and other needs of their business operations

in the ordinary course. During the Sixth Interim Fee Period, Sidley's professionals assisted the

Debtors with modification of the scope of the existing retentions of Ernst & Young LLP

("E&Y"), Lazard Frères & Co. LLC ("Lazard"), and PricewaterhouseCoopers LLP ("PWC") in

connection with additional services to be provided to the Debtors by such professionals. In each

instance, Sidley's professionals consulted with the Debtors' management to determine the

appropriate scope and terms of the supplemental retention, and coordinated with counsel for and

personnel of each of E&Y, Lazard, and PWC so that Sidley could prepare the necessary

pleadings to obtain Court approval of such modified retentions.

        55.    Sidley's professionals filed the supplemental application to modify the

scope of E&Y's retention on February 22, 2010 (D.I. 3516), which was approved by the Court

on March 22, 2010 (D.I. 3804). Sidley prepared and filed an additional supplemental retention

application on behalf of the Debtors to further modify E&Y's scope of employment on March

24, 2010 (D.I. 4594), which was approved by the Court on June 14, 2010 (D.I. 4779). The

supplemental application to retain Lazard was filed with the Court on April 1, 2010 (D.I. 3920)

and was approved by the Court on May 14, 2010 (D.I. 4409). The supplemental application to

retain PWC was filed on April 30, 2010 (D.I. 4216) and was approved by the Court on May 14, 2010 (D.I. 4414).

56.     In addition, Sidley's professionals prepared and filed several additional supplements to the list of the Debtors' ordinary course professionals ("OCP") and coordinated with the Debtors' legal department and financial advisors to prepare and file monthly and quarterly reports of proposed payments to OCPs.  In connection therewith, Sidley's professionals assisted three OCPs in preparing and filing applications with the Court for allowance of their fees, in connection with the Court's order governing the retention and compensation of OCPs.

**O.    Tax Issues (30520):   Hours: 267.90   Fees: $145,510.00**

57.     During the Sixth Interim Fee Period, Sidley's tax professionals contributed substantially to the analysis of the tax implications of the Debtors' proposed plan of reorganization.  Issues respecting the tax consequences of the Original Plan are described in detail for approximately 10 pages of the Disclosure Statement accompanying the Original Plan, the preparation of which required careful and detailed analysis of numerous tax issues.  For example, Sidley's professionals analyzed and participated in the drafting of disclosures relating to the U.S. federal income tax consequences of the Original Plan and related restructuring transactions to the Debtors, including the termination of the Debtors' subchapter S corporation status, and cancellation of debt and reduction of tax attributes.  Sidley's professionals also analyzed and prepared disclosures relating to the potential tax consequences of the Original Plan on holders of claims and interests, which analysis included specific descriptions and disclosures relevant to holders of Loan Claims and Loan Guaranty Claims (as defined in the Disclosure Statement), Senior Noteholder Claims, General Unsecured Claims, Convenience Claims, claims arising from certain employee benefit plans, holders of certain notes claims, holders of securities litigation claims, and holders of Tribune interests.

58.     In addition, Sidley's professionals reviewed and analyzed a variety of discrete tax issues on behalf of the Debtors, both arising from and in connection with these chapter 11 cases and in connection with Sidley's representation of the Debtors in tax matters in the ordinary course of the Debtors' business.  For example, Sidley's professionals in the Tax and Bankruptcy practice groups worked with the Debtors' senior management and outside tax professionals to negotiate and document the settlement of tax-related claims filed by the states of Connecticut and California.  Motions seeking approval of these settlements were filed with the Bankruptcy Court on March 29, 2010 (D.I. 3887 and 3888, respectively), and were approved by Order of this Court on April 19, 2010 (D.I. 4097 and 4098, respectively).  Additionally, Sidley's professionals reviewed and analyzed tax-related claims and liabilities, considered the tax implications of proposed transactions, handled appeals of tax assessments, advised the Debtors with respect to potential settlements of tax claims, and communicated with taxing authorities concerning all such matters.

**P.      Claims Processing (30530):   Hours: 422.30   Fees: $230,435.00**

59.     During the Sixth Interim Fee Period, Sidley's professionals continued evaluating, researching, and analyzing the treatment of various types of claims arising in the Debtors' chapter 11 cases, covering the full spectrum of potential liabilities.  To date, over 6,600 proofs of claim have been filed in these chapter 11 cases.  Sidley's professionals assigned to handle claims-related matters participated in regular conference calls with the Debtors' financial advisors, Alvarez and Marsal, in order to coordinate the processing of the proofs of claim, evaluating the legal sufficiency of the claims, and preparing objections thereto.

60.     During the Sixth Interim Fee Period, Sidley's professionals, working together with the Debtors' management, business personnel, and Alvarez and Marsal, prepared and filed the Debtors' 19th through 31st omnibus objections to claims as well as a stand-alone

29

objection to a $100 million claim asserted in the Debtors' chapter 11 cases, which was by far the largest single litigation-related proof of claim filed in the Debtors' cases. Sidley's professionals reviewed and responded to formal and informal responses by claimants to the claims objections, and coordinated with the Debtors' personnel to negotiate the consensual resolution of objections where feasible. During the Sixth Interim Fee Period, the Bankruptcy Court entered orders sustaining the Debtors' 16th through 26th omnibus objections that had previously been filed by Sidley on behalf of the Debtors (subject to the continuance of objections to certain claims of creditors who filed responses to such objections). In addition, Sidley's professionals assisted the Debtors with the implementation of the claims settlement procedures that were approved by this Court in the prior interim period.

61.    In November 2009, a _pro se_ litigation claimant named Kevin Millen filed an appeal of the Debtors' Fourth Omnibus Objection (Non-Substantive) to Claims (the "Millen Appeal") (Docketed at 09-00863 (GMS) at D.I. 1). On February 19, 2010, the district court entered an order directing the parties to submit a joint briefing schedule (09-00863 at D.I. 5), and the parties negotiated and submitted the briefing schedule on March 5, 2010 (09-00863 at D.I. 7.) During the Sixth Interim Fee Period, Sidley's professionals researched the substantive and procedural issues raised by the Millen Appeal and prepared and filed their responsive brief. (See 09-00863 at D.I. 9.)

**Q.    Business Operations (30550):    Hours: 375.50    Fees: $180,896.00**

62.    The Business Operations matter category encompasses the activities of Sidley's professionals with respect to their representation of the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business, as well as other general corporate law and transactional advice, both related to these chapter 11 cases and otherwise related to the Debtors' businesses. These services are necessary to facilitate the Debtors' efforts

to stabilize and reposition their businesses through cost saving and revenue enhancing strategies, as well as to prepare the Debtors for their emergence from chapter 11. During the Sixth Interim Fee Period, Sidley's professionals in the corporate practice group expended substantial time and effort to prepare, research, review, and comment upon a draft registration statement, as contemplated by the Original Plan in connection with the obligation of the Debtors in the Original Plan to list the New Class A Common Stock of Reorganized Tribune as promptly as practicable after the effective date of the Original Plan. The corporate practice group also reviewed and commented upon the financial statements prepared by the Debtors for the 2009 fiscal year.

       63.     In addition, Sidley's professionals addressed a variety of discrete matters arising postpetition in the ordinary course of the Debtors' business, including the review of proposed transactions, contracts, and leases. Among these matters, during the months of March and April 2010, Sidley's professionals assisted the Debtors with the negotiation and ultimate resolution of a claim held by the Debtors against Affiliated Media, which entailed the filing of pleadings in Affiliated Media's pending chapter 11 proceedings on behalf of the Debtors.

**R.**     **Case Administration (30560):  Hours: 396.70  Fees: $167,976.00**

       64.     During the Sixth Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings to the Debtors, the Committee, the United States Trustee, and other interested parties, and maintaining a schedule of critical dates and deadlines. On a periodic basis during this Sixth Interim Fee Period, Sidley's professionals participated in status calls with the Debtors' senior management and financial advisors to discuss pending motions and issues and the outcome of each hearing. In addition, Sidley's paraprofessionals are

responsible for monitoring the docket for all filed pleadings and preparing and distributing a daily status report to the Debtors' senior management and Sidley professionals.

**S.     Creditor Communications (30570):   Hours: 7.30   Fees: $4,657.50**

65.     Throughout the Sixth Interim Fee Period, Sidley's professionals have responded to numerous inquiries and communications from individual creditors as well as from representatives of larger groups of the Debtors' creditor constituencies regarding the status of these chapter 11 cases.

**T.     Bankruptcy Schedules (30580):   Hours: 24.40   Fees: $12,457.50**

66.     During the Sixth Interim Fee Period, Sidley's professionals continued to work in cooperation with the Debtors and their financial advisors at Alvarez and Marsal to analyze the Debtors' schedules of assets and liabilities and statements of financial affairs, with the goal of ensuring accuracy and completeness of all financial disclosures.  In connection therewith, Sidley's professionals reviewed and prepared (i) the third amended schedules and statements for certain of the Debtors, which were filed on March 3, 2010 (D.I. 3548-3599), and (ii) the fourth amended schedules and statements for certain of the Debtors, which were filed on May 13, 2010 (D.I. 4388, 4389).

**U.     Employee Issues (30590):   Hours: 281.60   Fees: $184,300.00**

67.     During the Sixth Interim Fee Period, Sidley's professionals in the Bankruptcy and Labor and Employment practice groups remained substantially engaged in assisting the Debtors with various issues pertaining to employee-related matters.  Specifically, Sidley continued to advise the Debtors with respect to obtaining approval of their motions to implement the proposed management incentive plans ("MIP") during this period.  As a result of continuing negotiations with certain of the parties that had objected to the proposed 2009 MIP, Sidley, on behalf of the Debtors, filed a motion to dismiss voluntarily, without prejudice, the

Debtors' request for the implementation of the TMIP and KOB components of the 2009 MIP Motion. This Court granted the Debtors' motion by order dated March 23, 2010. The TMIP and KOB programs were subsequently incorporated into the terms of the Original Plan.

68.     Sidley's professionals also researched, drafted, and advised the Debtors with respect to the development of the 2010 MIP. On May 26, 2010, Sidley filed the Motion of the Debtors for an Order Authorizing the Debtor to Implement a Management Incentive Plan for 2010 (D.I. 4620) (the "2010 MIP Motion"). The hearing on the 2010 MIP Motion was held on November 10, 2010.

69.     In addition to the foregoing, Sidley's professionals responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, drafted emergence equity and severance plans, responded to numerous information requests from and/or regarding current and former employees, analyzed employee-related claims, and handled various other issues in connection with the Debtors' employees.

**V.      2010 Exit Credit Facility (13700):     Hours: 2.70   Fees: $1,755.00**

70.     In May 2010, Sidley commenced providing services to the Debtors relating to the evaluation, negotiation, and eventual implementation of a post-confirmation financing facility that will provide a source of funding for the reorganized Debtors upon their emergence from these chapter 11 cases. During the Sixth Interim Fee Period, the fees incurred by Sidley in connection with this matter related to certain initial planning and preparatory steps with the Debtors' management and potential lenders.

## EXPENSES INCURRED

71.     Sidley has incurred expenses of $425,733.29 in connection with its services rendered to the Debtors during the Sixth Interim Fee Period. These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors,

including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related expenses, overtime services, in-house document production, and professional services from contract attorneys relating to discovery activities in connection with the Leveraged ESOP Transactions and the Examiner's Investigation. Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in these cases, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in these cases.

72.    Computer research and information retrieval services are charged on a time, item and/or search-type basis which takes advantage of certain discounts that Sidley is able to negotiate with the relevant service providers because of the Firm's size and volume of usage. The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate that recovers no more than the Firm's costs.

73.    Sidley submits that all travel expenses incurred during the period covered by this Application were necessary, reasonable, and reflect the prevailing market rates. In particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors' personnel during the period covered by this Application was at the prevailing coach-class rate for such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.

74.    Sidley's normal billing practices, as set forth in the pleadings supporting its retention in these chapter 11 cases, include standard secretarial services as part of normal overhead. For certain projects involving large and/or time-sensitive administrative and logistical requirements resulting from client needs, Sidley utilizes the services of third-party providers in

the place of clerical personnel on staff during normal business hours and bills those services to the client at Sidley's cost for such services. During the Sixth Interim Fee Period, Sidley charged a total of $1,059.74 relating to outside word processing and/or document binding/drilling services that were billed to the Debtors at cost; that is, no markup for such services is applied by Sidley.

      75.    In connection with Sidley's maintenance of the Document Depository, in which the equivalent of approximately 4.5 million pages of documents relating to the Leveraged ESOP Transactions are electronically stored, Sidley utilized the services of an outside vendor to process electronic data files for production upon request to the Examiner and Depository Designees. During the Sixth Interim Fee Period, Sidley was subject to substantial time constraints imposed by the need to pursue the confirmation of the Original Plan and facilitate the Examiner's Investigation simultaneously, in accordance with the schedule approved by the Bankruptcy Court. Sidley utilized the services of contract attorneys to supplement the Firm's Litigation professionals in the review and analysis of documents received and produced in discovery to meet the deadlines imposed by this schedule. During the Sixth Interim Fee Period, Sidley charged a total of $241,765.57 relating to such outside document processing and professional services (under the expense category "Professional Services/Specialists") that were billed to the Debtors at cost. A detailed breakdown of Sidley's expenses incurred in rendering services to the Debtors during the period covered by this application is incorporated into this Application as part of Attachment B hereto.

## REVIEW OF APPLICABLE LOCAL RULE

      76.    The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this application substantially complies with Rule 2016-2.

## NOTICE

77.    Notice of this Application has been served upon the Notice Parties specified in the Fee Orders.  In accordance with the terms of the Fee Orders, Sidley respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

78.    Other than the applicable Monthly Fee Applications, no previous application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $6,581,178.43 and reimbursement of expenses in the amount of $425,733.29, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this sixth Quarterly Fee Application Request and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: December 14, 2010

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION