UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 7141** |

## <u>NOTICE OF FILING DEBTORS' RESPONSIVE STATEMENT</u>

**PLEASE TAKE NOTICE** that, attached hereto is a black line version of the Debtors' Responsive Statement which reflects all revisions to the Responsive Statement that was filed on December 10, 2010 [Docket No. 7141]. The revisions were necessitated by the Notice of Withdrawal of (A) First Amended Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Certain Holders of Step One Senior Loan Claims, (B) Specific Disclosure Statement for First Amended Plan of Reorganization, and (C) Responsive Statement by Certain Holders of Step One Senior Loan Claims [Docket No. 7190].

Dated: December 15, 2010

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kevin T. Lantry
Jessica C.K. Boelter
Kerriann Mills
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-0199
Facsimile: (312) 853-7036

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

/s/ *Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors In Possession

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-7243567v1

## DEBTORS' RESPONSIVE STATEMENT

The Court has reviewed and approved the Joint Disclosure Statement and the Specific Disclosure Statements filed by the proponents of the ~~four~~three proposed plans, and has determined that they comply with Bankruptcy Code §1125.  Although the Court has also reviewed the Responsive Statements filed by the plan proponents, and resolved certain disputes among the parties in connection with such statements, the Responsive Statements are not a substitute for the respective disclosure statements, nor have the Responsive Statements been subject to the Bankruptcy Code's standard for approval of a disclosure statement.  While the Court has allowed inclusion of the Responsive Statements in this solicitation package, it has not endorsed the contents of any Responsive Statement.

## TRIBUNE COMPANY AND ITS SUBSIDIARY DEBTORS' RESPONSE TO COMPETING PLANS OF REORGANIZATION

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE:

You are being asked to consider the Debtor/Committee/Lender Plan proposed by the Debtors, the Official Committee of Unsecured Creditors, JPMorgan, Oaktree and Angelo Gordon, and ~~three~~two (~~3~~2) competing plans of reorganization for Tribune Company and its Debtor Subsidiaries. You have received a separate, color-coded Ballot for each of these plans of reorganization. The plans of reorganization and their corresponding Ballot color are as follows:

- **Debtor/Committee/Lender Plan** proposed by the Debtors, the Official Committee of Unsecured Creditors, JPMorgan, Oaktree and Angelo Gordon, accompanied by a **BLUE** Ballot

- **Noteholder Plan** proposed by Aurelius, Deutsche Bank, Law Debenture and Wilmington Trust Company, accompanied by a **PURPLE** Ballot

- **Bridge Lender Plan** proposed by certain Holders of Bridge Loan Claims, accompanied by a **GREEN** Ballot

- ~~Step One Lender Plan proposed by certain Holders of Step One Senior Loan Claims, accompanied by a **YELLOW** Ballot~~

**TRIBUNE COMPANY AND ITS SUBSIDIARY DEBTORS URGE YOU TO SUBMIT YOUR <u>BLUE BALLOT IN FAVOR OF THE DEBTOR/COMMITTEE/LENDER PLAN</u> AND INDICATE YOUR PREFERENCE FOR THE DEBTOR/COMMITTEE/LENDER PLAN ABOVE ALL OTHER PLANS THAT YOU MAY BE CONSIDERING.**

A.   *What is the Debtor/Committee/Lender Plan?*

The formal title of the Debtor/Committee/Lender Plan is the "Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, N.A." The Debtor/Committee/Lender Plan has been proposed by several of the most significant constituents in these Chapter 11 Cases—the Debtors, the Official Committee of Unsecured Creditors, JPMorgan, in its capacity as Senior Loan Agent and as a Senior Lender, and Oaktree and Angelo Gordon (who are, along with JPMorgan, the largest Holders of Senior Loan Claims). The agreement that is embodied in the Debtor/Committee/Lender Plan is the result of the Mediation that was overseen by U.S. Bankruptcy Court Judge Kevin Gross, who has endorsed the settlement.

In summary, the Debtor/Committee/Lender Plan has two primary components. First, the Debtor/Committee/Lender Plan provides for certain settlements of LBO-Related Causes of Action held by the Debtors' Estates against current and former Senior Lenders (with the exception of liability for certain disgorgement claims if such parties are not participants in the Step Two/Disgorgement Settlement), the Senior Loan Agent and the Senior Loan Arrangers,

participating current and former Bridge Lenders and Bridge Loan Arrangers, and the Step One Selling Stockholders.  Significant portions of the distributions to be made to Holders of Senior Noteholder Claims, Other Parent Claims (which include claims of the Retiree Claimants and other General Unsecured Claims against Tribune), Convenience Claims and General Unsecured Claims against the Filed Subsidiary Debtors are on account of and in consideration of these settlements.  As a result of these settlements, on the Effective Date of the Debtor/Committee/Lender Plan, (i) the Holders of Allowed Senior Noteholder Claims will receive their Pro Rata share of $420 million[1] in Cash (equal to 32.73% of their Allowed Claims) plus trust interests described below, (ii) the Holders of Allowed Other Parent Claims can choose to receive (a) Cash in an amount equal to 35.18% of their Allowed Claim or (b) Cash in an amount equal to 32.73% of their Allowed Claims plus trust interests described below, and (iii) the Holders of Allowed General Unsecured Claims against the Filed Subsidiary Debtors will receive Cash in an amount equal to 100% of their Allowed Claim unless such Claims exceed $150 million, in which case Holders will receive their Pro Rata share of $150 million.

A second component of the Debtor/Committee/Lender Plan is the preservation of the Estate's remaining LBO-Related Causes of Action for the benefit of Tribune's creditors and the assignment of those causes of action to the Litigation Trust and the Creditors' Trust (collectively, the "Trusts").  As part of the settlements embodied in the Debtor/Committee/Lender Plan, the Senior Lenders have agreed to relinquish a portion of their entitlement to the proceeds of the Trusts for the benefit of Holders of Non-LBO Lender Claims against Tribune.  As a result, the beneficial interests granted to Holders of Allowed Senior Noteholder Claims, PHONES Notes Claims, EGI-TRB LLC Notes Claims and electing Holders of Other Parent Claims will provide such Holders with their Pro Rata share (subject to the contractual subordination of the PHONES and EGI-TRB Notes enforced only within such group) of (i) the first $90 million realized from the Trusts (with the exception of amounts allocable to the Step Two Litigation Trust Preference), and, thereafter and after repayment of the Trusts' Loan, (ii) sixty-five percent (65%) of the proceeds realized from the Trusts until payment in full of all of the foregoing claims.  The remaining thirty-five percent (35%) of the Trusts' recoveries will be provided to Holders of Allowed Senior Loan Claims and Bridge Loan Claims.

FOR ADDITIONAL INFORMATION CONCERNING THE DEBTOR/COMMITTEE/LENDER PLAN, HOLDERS OF CLAIMS SHOULD REVIEW THE DEBTOR/COMMITTEE/LENDER PLAN AND THE SPECIFIC DISCLOSURE STATEMENT RELATING TO JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDON & CO., L.P. AND JPMORGAN CHASE BANK, N.A.

---

[1] The amounts set forth in this sentence include each Class of Claims' "baseline" or "natural" recovery based upon the enterprise value of the Debtors and the allocation thereof set forth in the General Disclosure Document and the settlement recovery.  In the absence of the Settlement, (i) the Holders of Allowed Senior Noteholder Claims would be entitled to receive aggregate consideration equal to approximately $61.7 million or 4.8% of their Allowed Claims, (ii) the Holders of Allowed Other Parent Claims would be entitled to receive aggregate consideration equal to approximately $12.7 million or 4.8% of their Allowed Claims, and (iii) the Holders of Allowed General Unsecured Claims against the Filed Subsidiary Debtors would be entitled to receive aggregate consideration equal to approximately $2.2 million or 2.6% of their Allowed Claims.

B.   *Who are the proponents of the various plans of reorganization?*

**Debtor/Committee/Lender Plan.** Three diverse groups of constituents are proponents of the Debtor/Committee/Lender Plan, *and the Debtor/Committee/Lender Plan is the only proposed plan of reorganization that has the support of parties with fiduciary duties to all creditors in these Chapter 11 Cases.* The Debtors, which include Tribune and 110 of Tribune's subsidiaries, are fiduciaries for all stakeholders in these Chapter 11 Cases. The Debtors are proponents of the Debtor/Committee/Lender Plan because the Debtors believe the Debtor/Committee/Lender Plan is in the best interests of their stakeholders. The Official Committee of Unsecured Creditors, which is an official statutory committee appointed by the Office of the United States Trustee, is also a proponent of the Debtor/Committee/Lender Plan. Like the Debtors, the Creditors' Committee is a fiduciary for all general unsecured creditors of the Debtors and has approved the Debtor/Committee/Lender Plan because the Creditors' Committee believes it is in the best interests of the stakeholders they represent. The final group of constituents that proposed the Debtor/Committee/Lender Plan is comprised of three of the largest Holders of Senior Loan Claims—JPMorgan, which is also the Senior Loan Agent, Oaktree and Angelo Gordon. These three Holders will initially be the largest individual holders of Tribune's New Common Stock under any of the proposed plans of reorganization.

**Noteholder Plan.** The principal proponent of the Noteholder Plan is Aurelius, which is a hedge fund purportedly holding Senior Notes Claims and PHONES Notes Claims. The other proponents of the Noteholder Plan are Indenture Trustees for the Senior Notes and PHONES Notes. It is the Debtors' understanding that Aurelius recently purchased the majority of its Senior Notes Claims from another hedge fund that was a proponent of the original settlement plan filed by the Debtors. None of the proponents of the Noteholder Plan are creditors of any of the 110 operating subsidiary Debtors.

**Bridge Lender Plan.** The Bridge Lender Plan has been proposed by three hedge funds that are Holders of Bridge Loan Claims who purchased such Claims from the original Bridge Lenders.

~~**Step One Lender Plan.** The Step One Lender Plan has been proposed by a group of hedge funds that solely hold Step One Senior Loan Claims. Based upon the Debtors' information and belief, this group of hedge funds did not become actively involved in the Debtors' Chapter 11 Cases until the late summer of 2010. According to the proponents' disclosures before the Bankruptcy Court, the proponents of the Step One Lender Plan hold less than 9.5% of the aggregate Senior Loan Claims.~~

C.   *What distinguishes the Debtor/Committee/Lender Plan from the other plans of reorganization?*

The cornerstone of the **Debtor/Committee/Lender Plan** is the settlement, as of the Effective Date of the Debtor/Committee/Lender Plan, of the Estate's LBO-Related Causes of Action against the Holders of Senior Loan Claims and Settling Step Two Payees in exchange for $521 million, while preserving for the benefit of Tribune's creditors LBO-Related Causes of Action against the Step Two Selling Stockholders, advisors, certain directors, certain officers, Morgan Stanley, EGI-TRB LLC, Samuel Zell and Non-Settling Step Two Payees. As a result of

4

the settlements in the Debtor/Committee/Lender Plan, most Holders of Claims against the Debtors will receive substantial cash distributions upon the Debtors' emergence from their Chapter 11 Cases, in contrast to the minimal initial distributions of the competing plans. In addition, the immediate distributions to Non-LBO Lender creditors of the Debtors will be in the form of cash rather than common stock or a new loan. Finally, based upon the settlements in the Debtor/Committee/Lender Plan, the Non-LBO Lender creditors of Tribune will receive the first $90 million of any Trust recoveries (with the exception of amounts allocable to the Step Two Litigation Trust Preference) and, after repayment of the Trusts' loan, will receive a disproportionately larger share of any future Trust recoveries than their base entitlement.

In contrast, the **Noteholder Plan** is premised upon no settlements and the preservation of all potential LBO-Related Causes of Action and the transfer of these causes of action to two litigation trusts. Under the Noteholder Plan, upon the Debtors' emergence from their Chapter 11 Cases, most Classes of creditors of the Debtors will receive only their minimum entitlement in the form of cash, new common stock and a new loan[2] based upon the assumption that all preserved litigation claims are decided in a manner that is least favorable to such Classes. The Debtors believe that further distributions to each Class of Claims will only occur, if at all, after years of costly litigation concerning the LBO-Related Causes of Action and the completion of any appeals and after the entry of various final court orders resolving the relative entitlement of various Classes of Claims to the proceeds of the litigation. The Debtors believe that since the Noteholder Plan does not resolve any of the critical issues in these Chapter 11 Cases, not only the amount, but also the timing, of any consideration that Holders of Claims may ultimately receive under the Noteholder Plan are not only speculative, but also unascertainable at present.

Like the Noteholder Plan, the **Bridge Lender Plan** provides minimal up-front distributions of cash, new common stock and a new loan, with any meaningful distributions to Holders of Non-LBO Lender Claims occurring, if at all, after years of costly litigation and appeals concerning the LBO-Related Causes of Action and after the entry of various final court orders resolving the relative entitlement of various Classes of Claims to the proceeds of the litigation. Although the Bridge Lender Plan does contemplate various opt-in settlements that would purport to provide substantial up-front cash distributions to creditors, none of the parties that would fund these proposed settlements have agreed to the Bridge Lender Plan, and the Debtors believe they are unlikely to do so. If the Holders of Senior Loan Claims do not accept the Bridge Lender Plan, the Bridge Lender Plan would provide for minimal distributions similar to the Noteholder Plan, with a significant portion of the Reorganized Debtors' enterprise value held in reserve pending the outcome of protracted litigation. Accordingly, the Debtors view both the amount and timing of distributions under the Bridge Lender Plan as highly speculative, at best.

~~Finally, the Step One Lender Plan is a single-issue plan that is focused on providing certain Step-One hedge funds and similar creditors with more favorable treatment than what they are afforded under the Debtor/Committee/Lender Plan, at the expense of most other~~

---

[2] A limited number of creditors under the Noteholder Plan will receive or will have the option to receive their initial distributions in cash only. In particular, Holders of Other Parent Claims and General Unsecured Claims against the Guarantor Debtors will have the option to receive their initial distributions in cash only, and the Holders of General Unsecured Claims against Non-Guarantor Debtors will receive cash only.

~~creditor constituencies. In addition, the Step One Lender Plan contemplates additional litigation involving the application of the "sharing provisions" in the Senior Loan Agreement. While the Step One Lender Plan proposes to release all Step One Lenders from all LBO-Related Causes of Action in exchange for an alleged "gift" to certain other unsubordinated unsecured creditor Classes of value that would otherwise be distributable to the Step One Lenders, upon information and belief, the Step One Lender Plan proponents do not control the Class of Step One Senior Lenders (or any other creditor Class), and without the acceptance of the Class of Step One Senior Lenders and the respective Classes of other creditors entitled to consent to the potential "gift", the Step-One Plan proponents cannot bind the Holders of Step One Senior Loan Claims (or any other relevant claims) to their proposed "gift" distributions. Furthermore, the Step One Lender Plan substantially reduces the distributions set forth in the Debtor/Committee/Lender Plan. For example, the Step One Lender Plan does not provide for the $120 million Step Two/Disgorgement Settlement in the Debtor/Committee/Lender Plan, thereby reducing distributions to Senior Noteholders, and also provides smaller initial distributions to several classes of creditors, including Holders of Step Two Senior Loan Claims and Other Parent Claims, as compared to the Debtor/Committee/Lender Plan. Finally, the Step One Lender Plan reduces the percentage of litigation trust recoveries to be paid to holders of Non-LBO Lender Claims from 65% to their pro rata share, thus redirecting the bulk of these recoveries to Step One Senior Lenders.~~

D.     ***What will be the initial distributions under the Debtor/Committee/Lender Plan as compared to the other plans of reorganization?***

The following chart depicts a comparison of the estimated recovery percentages (based on the enterprise value and allocation described in the General Disclosure Statement) that Classes of Claims entitled to vote will initially receive upon the Debtors' emergence from bankruptcy under the various plans of reorganization:

| Class | Debtor/Committee/Lender Plan (Blue Ballot) | Noteholder Plan (Purple Ballot)[3] | Bridge Lender Plan (Green Ballot)[3,4] | |
|---|---|---|---|---|
| Step One Senior Loan/Guaranty Claims: | 71.03% | 34.20% | 34.20% | 70.70%[5] |
| Step Two Senior Loan/Guaranty Claims: | 71.03% | 0% | 0% | 0%[6] |
| Bridge Loan/Guaranty Claims: | 0% | 0% | 0% | 0% |
| Senior Noteholder Claims: | 32.73% | 4.8% | 4.8% | 4.8% or 23.38%[7] |

---

[3] Recovery percentages assume that (a) disputes concerning the "sharing provisions" in the Senior Loan Agreement are not resolved prior to the Effective Date, but that distributions are made to the Holders of Step One Senior Loan Claims on the Effective Date, and (b) disputes concerning the Allowed amount of the PHONES Notes Claims are not resolved prior to the Effective Date of the Noteholder Plan. If these matters were resolved prior to the Effective Date of the Noteholder Plan, holders of Step One Senior Loan Claims and Step Two Senior Loan Claims may receive higher recoveries as set forth in the Noteholder Plan Disclosure Statement. In addition, if the classes of Other Parent Claims and General Unsecured Claims against the Guarantor Debtors vote to accept the Plan, individual holders in such accepting classes may elect to receive higher distributions on the Effective Date of the Plan. More particularly, under such circumstances, holders of Other Parent Claims may elect to receive a distribution equal to 15% of their allowed claim rather than 4.3% and holders of General Unsecured Claims against the Guarantor Debtors may elect to receive a distribution equal to 25% of their allowed claim rather than 8%.

[4] Although the Bridge Lender Plan provides an option for various settlements that may potentially result in greater distributions to certain creditors of Tribune as of the Effective Date, the Bridge Lender Plan is not conditioned upon the implementation of these settlements and the Debtors believe the ability to consummate these settlements is highly unlikely.

[5] If the disputes concerning the "sharing provisions" in the Senior Loan Agreement are resolved in a manner that is favorable to the Step One Senior Lenders prior to the Effective Date, the initial distribution to the Holders of Step One Senior Loan Claims may potentially be higher than that set forth above.

[6] If the disputes concerning the "sharing provisions" in the Senior Loan Agreement are resolved in a manner that is favorable to the Step Two Senior Lenders prior to the Effective Date, the initial distribution to the Holders of Step Two Senior Loan Claims may potentially be higher than that set forth above.

[7] Under the Step One Lender Plan, Holders of Senior Noteholder Claims are entitled to receive on the Effective Date a cash distribution equal to 4.8% of their allowed claims, unless the Class of Step One Senior Loan Claims and the Class of Senior Noteholder Claims both vote to accept the Step One Lender Plan. If, however, each of these Classes votes to accept the Step One Lender Plan, then under the terms of the Step One Lender Plan, Holders of Senior Noteholder Claims may potentially receive on the Effective Date a cash distribution equal to 23.38% of their allowed claims.

| Class | Debtor/Committee/Lender Plan (Blue Ballot) | Noteholder Plan (Purple Ballot)[3] | Bridge Lender Plan (Green Ballot)[3,4] | |
|---|---|---|---|---|
| Other Parent Claims: | 35.18 or 32.73%[8,5] | 4.3% | 4.3% | 4.8% or 25.83 or 23.38%[9] |
| Convenience Claims against Tribune: | 100% | 4.3% | 4.3% | 100% |
| General Unsecured Claims against *Guarantor Subsidiaries*: | 100%[10,6] | 8.0% | 8.0% | 100% |
| General Unsecured Claims against *Non-Guarantor Subsidiaries*:[11,7] | 100% | 100% | 100% | 100% |
| EGI-TRB LLC Notes Claims: | 0% | 0% | 0% | 0% |
| PHONES Notes Claims: | 0% | 0% | 0% | 0% |

---

[8,5] The Debtors believe that the vast majority, if not all, of the Claims in the Other Parent Claims Class are entitled to the benefit of the contractual subordination of the PHONES Notes Claims and EGI-TRB LLC Notes Claims. Although some Other Parent Claims may not be entitled to the benefit of the contractual subordination of the PHONES Notes Claims and the EGI-TRB LLC Notes Claims, as part of the Settlement the Senior Lenders allocated sufficient settlement consideration necessary to enable all Allowed Other Parent Claims to receive the same distributions under the Debtor/Committee/Lender Plan.

[9] Under the Step One Lender Plan, Holders of Other Parent Claims are entitled to receive on the Effective Date a cash distribution equal to 4.8% of their allowed claims, unless the Class of Step One Senior Loan Claims and the Class of Other Parent Claims both vote to accept the Step One Lender Plan. If, however, each of these Classes votes to accept the Step One Lender Plan, then, under the terms of the Step One Lender Plan, Holders of Other Parent Claims may potentially receive on the Effective Date a cash distribution equal to 25.83% or 23.38% of their allowed claims.

[10,6] The recovery percentage for Holders of Allowed General Unsecured Claims against Filed Subsidiary Debtors assumes that the aggregate amount of Allowed General Unsecured Claims against Filed Subsidiary Debtors does not exceed $150 million, which is the upper end of the Debtors' current estimate of such claims as set forth in greater detail in the General Disclosure Statement.

[11,7] General Unsecured Claims against the Non-Guarantor Subsidiary Debtors represent less than 5% of the aggregate General Unsecured Claims against the Subsidiary Debtors.

8

E.    ***Will the Trusts provide significant recoveries to Holders of Claims against the Debtors?***

It is impossible for any party to predict with certainty the recoveries, if any, that Holders of Claims may receive from the various litigation and creditors' trusts.  Consequently, it is conceivable that certain creditors may only receive the distributions set forth in the chart above.  In order for Holders of Non-LBO Lender Claims to receive as much under the Noteholder Plan or the Bridge Lender Plan as they are receiving under the Debtor/Committee/Lender Plan, the proposed litigation and creditors' trusts will need to recover in excess of $521 million[128] (even before taking into account the time value of money) net of litigation expenses[129], which will likely be significant, or there would need to be a reallocation of such amount from the Holders of Senior Loan Claims to the Holders of Non-LBO Lender Claims.  The Debtors believe that unbridled post-bankruptcy litigation concerning the LBO-Related Causes of Action will likely be fact intensive, time consuming and extraordinarily costly.  The Debtors believe that recoveries from any such litigation are speculative, at best.  As a result, the Debtors have concluded that the Debtor/Committee/Lender Plan, which provides greater up-front recoveries to Holders of Claims, and less back-end litigation risk, cost, delay and uncertainty, is in the best interests of their creditors as a whole.

F.    ***Which plan of reorganization provides the best overall result for Tribune's creditors?***

The Debtor/Committee/Lender Plan provides for substantial initial distributions to the Debtors' creditors and a significant reduction in post-emergence litigation through fair and reasonable settlements that are in the best interests of the Estates and the parties in interest in these Chapter 11 Cases.   Under the Debtor/Committee/Lender Plan, there are no uncertainties as to the identity of the future owners of Reorganized Tribune.  The Debtor/Committee/Lender Plan accounts for the substantial progress that has been made with the Debtors' stakeholders during the Debtors' time in chapter 11, including the valuable input from the Mediator, Judge Kevin Gross.  These efforts are lost under the Noteholder Plan, which does not resolve any of the LBO-Related Causes of Action or any issues related to the priority of distributions among various creditor constituents.  After nearly two years in bankruptcy, Tribune is poised to emerge from chapter 11 with a deleveraged balance sheet.  The Debtors believe that the Debtor/Committee/Lender Plan provides the best outcome for their stakeholders and other parties in interest as a whole.

---

[128] Under the Debtor/Committee/Lender Plan, the aggregate cash distributions to Holders of Senior Noteholder Claims, Other Parent Claims, Convenience Claims and General Unsecured Claims against the Filed Subsidiary Debtors will be approximately $598 million.  Of the $598 million in total cash recoveries, $77 million is the "natural" or "base case" recovery, and the remaining $521 million is being provided as settlement consideration by the current Senior Lenders and the Settling Step Two Payees, including $358 million to Holders of Senior Noteholder Claims, $80 million to Holders of Other Parent Claims, and $83 million to Holders of General Unsecured Claims against the Filed Subsidiary Debtors.

[129] The Noteholder Plan provides that the Debtors' Estates will contribute $40 million to fund the trust's expenses. Any expenses in excess of $40 million will be funded with litigation proceeds, if any, before such proceeds could be distributed to creditors.

**For the foregoing reasons, the Debtors urge all Holders of Claims to vote in favor of the Debtor/Committee/Lender Plan by checking the ACCEPT box on the BLUE Ballot and indicate your preference for the DEBTOR/COMMITTEE/LENDER PLAN above all other plans.**

Respectfully,

TRIBUNE COMPANY (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession, and the Guarantor Non-Debtors and Non-Guarantor Non-Debtors)

By:_____

Name: Donald J. Liebentritt
Title:  Co-President, Chief Restructuring Officer, Tribune