# EXHIBIT D

*Liquidation Analysis*

TRIBUNE COMPANY AND ITS DEBTOR SUBSIDIARIES

LIQUIDATION ANALYSIS

A.  Introduction

Under the "best interests" of creditors test set forth in section 1129(a) (7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a Claim or Interest who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. Set forth herein is an analysis of the estimated aggregate amount of liquidation proceeds available to holders of Claims against and Interests in the Debtors in a chapter 7 liquidation (the "Liquidation Analysis" or "Analysis"). The Liquidation Analysis is based upon certain assumptions discussed in the General Disclosure Statement, including Exhibit F thereto (Reorganized Value Analysis), and in the global notes accompanying the Liquidation Analysis (the "Global Notes"). Capitalized terms not defined in the Global Notes shall have the meanings ascribed to them in the General Disclosure Statement.

The Liquidation Analysis estimates potential cash distributions to holders of Allowed Claims and Interests in a hypothetical chapter 7 liquidation of the Debtors' assets.[1] Asset values discussed in the Liquidation Analysis may differ materially from reorganization or going concern values referred to in the Competing Plans and the Joint Disclosure Statement.

THE LIQUIDATION ANALYSIS WAS PREPARED BY THE DEBTORS WITH THE ASSISTANCE OF THEIR ADVISORS.

PLEASE REVIEW EACH SPECIFIC DISCLOSURE STATEMENT FOR INFORMATION CONCERNING THE ALLOCATION OF PROCEEDS TO HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER A PARTICULAR COMPETING PLAN AS WELL AS FOR INFORMATION CONCERNING HOW SUCH ALLOCATIONS COMPARE TO RECOVERIES THAT WOULD BE RECEIVED IN A CHAPTER 7 LIQUIDATION.

B.  Scope, Intent, and Purpose of Liquidation Analysis

The determination of the costs of, and hypothetical proceeds from, the liquidation of the Debtors' assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

---

[1] In the case of each Competing Plan, the term "Allowed" shall have the meaning ascribed to such term in the Competing Plan.

1

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules and Proofs of Claim Filed to date. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the Chapter 11 Cases, but which could be asserted and Allowed in a chapter 7 liquidation, including unpaid chapter 11 administrative expense Claims, and chapter 7 administrative claims such as wind down costs, trustee fees, and tax liabilities. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Competing Plans. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

## Global Notes to Liquidation Analysis

1.   Conversion Date and Appointment of a Chapter 7 Trustee

The Liquidation Analysis assumes conversion of the Debtors' Chapter 11 Cases to chapter 7 liquidation cases on December 31, 2010 (the "Conversion Date"). On the Conversion Date, it is assumed that the Bankruptcy Court would appoint a chapter 7 trustee (the "Trustee") to oversee the liquidation of the Estates. In addition, it is assumed that all of Tribune's direct or indirect non-debtor subsidiaries, excluding any foreign subsidiaries would commence liquidation under chapter 7 on the Conversion Date, and the Debtors' interests in various joint ventures and minority investments are assumed to be sold. Tribune Company, its Debtor and non-Debtor direct and indirect subsidiaries are collectively referred to in the Liquidation Analysis as the "Tribune Entities".

Except as noted herein, the Liquidation Analysis is based upon the unaudited balance sheets of the Tribune Entities as of August 29, 2010 and those values, in total, are assumed to be representative of the Tribune Entities' assets and liabilities at the Conversion Date.

2.   Individual Liquidations

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered, but not substantively consolidated proceeding therefore the Liquidation Analysis considers an entity by entity liquidation. The Analysis takes into account post-petition administrative priority Claims against any of the Debtors held by another Debtor or a non-Debtor Affiliate (the "Post-Petition Intercompany Claims")[2], unsecured pre-petition Claims against any of the Debtors held by another Debtor or a non-Debtor Affiliate (the "Pre-Petition Intercompany Claims" and together with the Post-Petition Intercompany Claims, the "Intercompany Claims"), and the equity interests of each parent – subsidiary relationship. In an iterative and sequential fashion, the Liquidation Analysis assumes that liquidation value is cycled among the Tribune Entities to satisfy the Intercompany Claims and Interests, which in turn adds to the liquidation value available to satisfy third party Claims at each entity[3]. The results of the individual entity by entity analysis

---

[2] Please refer to Note 18, below, for a further discussion of Post-Petition Intercompany Claims.
[3] The value from liquidating the assets of each entity net of the costs of liquidation is used to pay out Post-Petition Intercompany Claims resulting in an increase in value for those entities in a net receivable position and a decrease in value for those entities in a net payable position. The resulting value (if any) is used to pay other administrative and priority Claims. The residual value is allocated among the various unsecured Claims, including Pre-Petition Intercompany Claims. Again, value flows to those entities in a net receivable position from those entities in a net payable position which results in more value to distribute among the entities other unsecured Claims. (See Notes to lines 18, 19, 23, and 29 of the Liquidation Analysis for additional detail.)

have been incorporated into the results of Tribune Company, the combined subsidiaries (i.e. all 128 direct or indirect subsidiaries and their interests), with consolidating adjustments, for a combined total liquidation value (see Estimated Liquidation Recoveries).

3.     Liquidation Methodology

The Tribune Entities are assumed to be liquidated either through a distressed sale on a going concern basis or as part of a straight liquidation of the underlying assets depending on the best course for that entity:

- Going Concern Disposition – Typically, upon conversion of a chapter 11 case to a chapter 7 case, a business is shut down and ceases all operations. For (i) those Tribune Entities engaged in broadcasting activities[4], (ii) Tribune Media Services[5], and (iii) Forsalebyowner.com Corp., the Liquidation Analysis assumes a sale of the business as a going concern in a "distressed sale". The broadcast entities are assumed to be liquidated through a distressed sale rather than a liquidation of the assets because the value of the broadcast licenses is most likely maximized by keeping the stations operating during the sale process. Similar considerations exist for Tribune Media Services and Forsalebyowner.com Corp, because both are service businesses with minimal tangible assets.

  The distressed sale process is assumed to be conducted over a six-month period to minimize the disruptions to the operations of the businesses. While some entities may be sold in a shorter timeframe, other entities may take longer, including the Debtors' broadcast operations which are subject to FCC regulation on the transfer of ownership. The Liquidation Analysis does not take any FCC regulatory impediments into account. Due to a number of factors including (a) the expedited nature of the sale process, (b) potential deterioration of the businesses during the chapter 7 liquidation, (c) the "as is" nature of the asset sales given the limited ability of the Trustee to provide representations, warranties, and indemnifications, and (d) the number of broadcast stations to be sold at a single time, management and their advisors believe that it is appropriate to apply discounts of 15% (high recovery) to 30% (low recovery) to the assumed going concern value of those entities[6]. It is assumed that the buyer would acquire all assets of the entity (excluding cash) and assume post-petition liabilities as well as key contracts. It is possible a buyer may seek to refrain from assuming all of the stations' broadcast rights contracts or other liabilities resulting in additional Claims that would further reduce recoveries under a chapter 7 liquidation.

  If the Debtors' broadcast operations were shut down in their entirety, as may normally occur upon conversion to chapter 7, the Debtors believe the liquidation recoveries on the broadcast assets would be substantially lower than those reflected in the Liquidation Analysis.

- Shut Down – The Liquidation Analysis assumes that all other Tribune Entities, including those engaged in publishing activities, would cease operations immediately. Most of their employees would be severed and their assets liquidated piecemeal over a three to six month period.

---

[4] The Tribune Entities engaged in broadcasting activities excludes inactive broadcast related legal entities which are assumed to be liquidated.

[5] The Tribune Media Services ("TMS") business is comprised of Tribune Media Services, Inc., Tribune Media Services B.V., TMS Entertainment Guides, Inc., TMS Entertainment Guides Canada Corp., Tribune Hong Kong Ltd., and Los Angeles Times International, Ltd.

[6] The going concern value of these entities was determined by the Debtors' investment banker as part of the valuation analysis included as Exhibit F to the General Disclosure Statement.

The Gross Liquidation Proceeds assumed to be received as a result of the sale and liquidation of the assets and operations of the Tribune Entities, as outlined above, less the Costs Associated with Liquidation as detailed in Notes 10 to 15 below, is then used to satisfy the various Claims, including chapter 7 Claims, chapter 11 administrative Expenses and Priority Non-Tax Claims, and pre-petition Claims. The Liquidation Analysis assumes that the Trustee would resolve Claims and other matters involving the Debtors' estates and make distributions to creditors over an 18-month period.

4.      Other Potential Recoveries and Other Potential Claims

The Liquidation Analysis does not consider recoveries from potential Claims arising from the Leveraged ESOP Transactions described in Article VII.A of the General Disclosure Statement. It is assumed that the recoveries from these claims would be substantially similar in either a reorganization or a liquidation and thus are not included in this analysis.

Liquidation would likely result in additional Claims against the Estates, which unless specifically noted have not been quantified. One example would be Claims related to the rejection of those executory contracts and unexpired leases either not assumed by the buyer of those entities sold as a going concern or rejected as a part of the liquidation of those entities whose operations are shut down upon conversion. These rejections would create a larger number of unsecured Claims (and administrative priority Claims in the case of those leases and contracts already assumed by the Debtors). These additional Claims would dilute any potential recoveries to holders of other pre-petition unsecured Claims. No attempt has been made to estimate these additional unsecured and/or administrative Claims that may occur in a chapter 7 liquidation.

## Estimated Liquidation Recoveries

($ in 000's)

| Row # | | Tribune Company (Stand Alone) | | | | | Combined Subsidiaries (excludes Tribune Company) | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | $ Book Value | Low $ Recovery | Low % | High $ Recovery | High % | $ Book Value | Low $ Recovery | Low % | High $ Recovery | High % |
| 1 | Cash | $ 386,941 | $ 386,941 | 100.0% | $ 386,941 | 100.0% | $ 1,486,255 | $ 1,486,255 | 100.0% | $ 1,486,255 | 100.0% |
| 2 | Accounts Receivable | - | - | 55.0% | - | 80.0% | 213,095 | 117,200 | 55.0% | 170,476 | 80.0% |
| 3 | Inventory | - | - | 0.0% | - | 0.0% | 20,769 | 10,385 | 50.0% | 12,462 | 60.0% |
| 4 | Property, Plant & Equipment | 60,145 | 24,223 | 40.3% | 37,446 | 62.3% | 833,138 | 268,791 | 32.3% | 365,755 | 43.9% |
| 5 | GW & Intangibles | - | - | 0.0% | - | 0.0% | 40,638 | - | 0.0% | - | 0.0% |
| 6 | Investments | 17,557,008 | 83,475 | 0.0% | 101,363 | 5.0% | 7,745,491 | 1,217,825 | 15.7% | 1,478,788 | 19.1% |
| 7 | Other Assets | 170,904 | - | 0.0% | 8,545 | 5.0% | 24,831 | - | 0.0% | 1,242 | 5.0% |
| 8 | Book Value of Assets of Going Concern Sale | - | - | 0.0% | - | 0.0% | 3,161,786 | 1,824,999 | 57.7% | 2,216,070 | 70.1% |
| 9 | **Gross Liquidation Proceeds** | $ 18,174,998 | $ 494,639 | 2.7% | $ 534,294 | 2.9% | $ 13,526,003 | $ 4,925,455 | 36.4% | $ 5,731,048 | 42.4% |
| | Less (Costs) Associated with Liquidation | | | | | | | | | | |
| 10 | Professional Fees | | (3,296) | | (4,029) | | | (54,680) | | (67,493) | |
| 11 | Taxes on Dispositions | | (64,264) | | (87,115) | | | (764,189) | | (1,100,691) | |
| 12 | Ch.7 Trustee | | (2,154) | | (2,947) | | | (68,784) | | (84,896) | |
| 13 | Sale Period Profit / (Loss) & Equity Income | | - | | - | | | 84,928 | | 118,828 | |
| 14 | Wind Down Costs | | (1,116) | | (1,043) | | | (25,335) | | (25,414) | |
| 15 | Severance | | (14,277) | | (14,277) | | | (151,121) | | (160,095) | |
| 16 | **Total Liquidation Costs** | | $ (85,107) | | $ (109,411) | | | $ (979,181) | | $ (1,319,761) | |
| 17 | **Value Before I/C & Investment Recovery** | | $ 409,532 | | $ 424,884 | | | $ 3,946,274 | | $ 4,411,287 | |
| | Add Recoveries from I/C Rec. & Inv. | | | | | | | | | | |
| 18 | Admin Priority I/C Receivables | $ 716,611 | $ 709,571 | 99.0% | $ 710,695 | 99.2% | $ 1,615,888 | $ 1,613,439 | 99.8% | $ 1,613,811 | 99.9% |
| 19 | I/C Receivables (Pre-Petition) | 4,030,389 | 129,051 | 3.2% | 149,420 | 3.7% | 26,439,391 | 94,128 | 0.4% | 119,223 | 0.5% |
| 20 | Investments In Subsidiaries | 17,526,159 | 36,515 | 0.2% | 43,750 | 0.2% | 9,037,102 | 17,177 | 0.2% | 21,969 | 0.2% |
| 21 | **Total Recoveries** | $ 22,273,158 | $ 875,137 | | $ 903,866 | | $ 37,092,381 | $ 1,724,744 | | $ 1,755,002 | |
| 22 | **Value After Recoveries (Before Ch.11 Claims)** | | $ 1,284,670 | | $ 1,328,750 | | | $ 5,671,018 | | $ 6,166,289 | |
| | Less Ch.11 Admin & Priority Claims (Paid) | | | | | | | | | | |
| 23 | Admin Priority I/C Payables | (855,015) | (855,015) | 100.0% | (855,015) | 100.0% | (1,477,484) | (1,467,995) | 99.4% | (1,469,491) | 99.5% |
| 24 | Admin Claims - Ch.11 Trade & Other | (132,029) | (132,029) | 100.0% | (132,029) | 100.0% | (214,069) | (182,816) | 85.4% | (195,267) | 91.2% |
| 25 | Admin Claims - Ch.11 Unpaid Prof Fees | (21,000) | (1,974) | 9.4% | (1,845) | 8.8% | (21,000) | (19,026) | 90.6% | (19,155) | 91.2% |
| 26 | Priority Tax Claims | (144,000) | (13,539) | 9.4% | (12,651) | 8.8% | (144,000) | (130,461) | 90.6% | (131,349) | 91.2% |
| 27 | **Total Ch.11 Claims (Paid)** | $ (1,152,045) | $ (1,002,558) | | $ (1,001,541) | | $ (1,856,553) | $ (1,800,298) | | $ (1,815,261) | |
| 28 | **Value After Ch.11 Admin & Priority Claims Paid** | | $ 282,112 | | $ 327,209 | | | $ 3,870,721 | | $ 4,351,027 | |
| | Less Pre-Petition Claims (Paid) | Est. Claim | | | | | Est. Claim | | | | |
| 29 | I/C Claims | $ (16,478,401) | $ (157,973) | 1.0% | $ (183,384) | 1.1% | $ (13,991,379) | $ (175,170) | 1.3% | $ (212,911) | 1.5% |
| 30 | Joint & Several Pension Termination Cl | (560,600) | (1,415) | 0.3% | (1,360) | 0.2% | (560,600) | (559,185) | 99.7% | (559,240) | 99.8% |
| 31 | Senior Debt | (8,638,069) | (82,810) | 1.0% | (96,131) | 1.1% | (8,789,017) | (2,601,474) | 29.6% | (2,964,805) | 33.7% |
| 32 | Bridge | (1,619,507) | (15,526) | 1.0% | (18,023) | 1.1% | (1,619,507) | (479,360) | 29.6% | (546,309) | 33.7% |
| 33 | Bonds | (1,283,056) | (12,300) | 1.0% | (14,279) | 1.1% | - | - | 0.0% | - | 0.0% |
| 34 | Other General Unsecured Claims | (264,742) | (2,538) | 1.0% | (2,946) | 1.1% | (120,000) | (1,837) | 1.5% | (2,041) | 1.7% |
| 35 | Subordinated Debt | (996,181) | (9,550) | 1.0% | (11,086) | 1.1% | - | - | 0.0% | - | 0.0% |
| 36 | **Total Pre-Petition Claims / (Claims Paid)** | $ (29,840,556) | $ (282,112) | | $ (327,209) | | $ (25,080,503) | $ (3,817,027) | | $ (4,285,306) | |
| 37 | **Equity Value** | | - | | - | | | 53,693 | | 65,720 | |

5

| Row # | ($ in 000's) | Eliminations - Adjustments | | | Consolidated Tribune & Subsidiaries | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Book Value $ | Low $ | High $ | $ | Low $ | Low % | High $ | High % |
| | | | | | Book Value | | | | |
| 1 | Cash | | | | $ 1,873,196 | $ 1,873,196 | 100.0% | $ 1,873,196 | 100.0% |
| 2 | Accounts Receivable | | | | 213,095 | 117,200 | 55.0% | 170,476 | 80.0% |
| 3 | Inventory | | | | 20,769 | 10,385 | 50.0% | 12,462 | 60.0% |
| 4 | Property, Plant & Equipment: | | | | 893,284 | 293,014 | 32.8% | 403,201 | 45.1% |
| 5 | GW & Intangibles | | | | 40,638 | - | 0.0% | - | 0.0% |
| 6 | Investments | (24,853,481) | | | 449,017 | 1,301,300 | 289.8% | 1,580,150 | 351.9% |
| 7 | Other Assets | | | | 195,735 | - | 0.0% | 9,787 | 5.0% |
| 8 | Book Value of Assets of Going Concern Sale | (1,709,780) | | | 1,452,006 | 1,824,999 | 125.7% | 2,216,070 | 152.6% |
| 9 | Gross Liquidation Proceeds | $ (26,563,261) | | | $ 5,137,740 | $ 5,420,094 | 105.5% | $ 6,265,342 | 121.9% |
| | Less (Costs) Associated with Liquidation | | | | | | | | |
| 10 | Professional Fees | | | | | (57,976) | | (71,522) | |
| 11 | Taxes on Dispositions | | | | | (828,453) | | (1,187,805) | |
| 12 | Ch.7 Trustee | | | | | (70,938) | | (87,843) | |
| 13 | Sale Period Profit / (Loss) & Equity Income | | | | | 84,928 | | 118,828 | |
| 14 | Wind Down Costs | | | | | (26,451) | | (26,456) | |
| 15 | Severance | | | | | (165,398) | | (174,372) | |
| 16 | Total Liquidation Costs | | | | | $ (1,064,288) | | $ (1,429,171) | |
| 17 | Value Before I/C & Investment Recovery | | | | | $ 4,355,806 | | $ 4,836,170 | |
| | Add Recoveries from I/C Rec. & Inv. | | | | | | | | |
| 18 | Admin Priority I/C Receivables | $ (2,332,499) | $ (2,323,010) | $ (2,324,506) | $ - | $ - | 0.0% | $ - | 0.0% |
| 19 | I/C Receivables (Pre-Petition) | (30,469,780) | (223,180) | (268,643) | - | - | 0.0% | - | 0.0% |
| 20 | Investments in Subsidiaries | (26,563,261) | (53,692) | (65,719) | - | - | 0.0% | - | 0.0% |
| 21 | Total Recoveries | $ (59,365,540) | $ (2,599,882) | $ (2,658,868) | $ - | $ - | | $ - | |
| 22 | Value After Recoveries (Before Ch.11 Claims) | | | | | $ 4,355,806 | | $ 4,836,170 | |
| | Less Ch.11 Admin & Priority Claims (Paid) | | | | | | | | |
| 23 | Admin Priority I/C Payables | $ 2,332,499 | $ 2,323,010 | $ 2,324,506 | - | - | 0.0% | - | 0.0% |
| 24 | Admin Claims - Ch.11 Trade & Other | | | | (346,098) | (314,845) | 91.0% | (327,296) | 94.6% |
| 25 | Admin Claims - Ch.11 Unpaid Prof Fees | | | | (21,000) | (21,000) | 100.0% | (21,000) | 100.0% |
| 26 | Priority Tax Claims | | | | (144,000) | (144,000) | 100.0% | (144,000) | 100.0% |
| 27 | Total Ch.11 Claims (Paid) | $ 2,332,499 | $ 2,323,010 | $ 2,324,506 | $ (511,098) | $ (479,845) | | $ (492,296) | |
| 28 | Value After Ch.11 Admin & Priority Claims Paid | | $ (276,871) | $ (334,362) | | $ 3,875,961 | | $ 4,343,874 | |
| | Less Pre- Petition Claims (Paid) | Est. Claim | | | Est. Claim | | | | |
| 29 | I/C Claims | $ 30,469,780 | $ 333,143 | $ 396,295 | $ - | $ - | 0.0% | $ - | 0.0% |
| 30 | Joint & Several Pension Termination Claims | | | | (560,600) | (560,600) | 100.0% | (560,600) | 100.0% |
| 31 | Senior Debt | | $ (596,312) | $ (682,074) | (8,789,017) | (3,280,597) | 37.3% | (3,743,009) | 42.6% |
| 32 | Bridge | | $ 478,050 | $ 544,788 | (1,619,507) | (16,836) | 1.0% | (19,544) | 1.2% |
| 33 | Bonds | | $ (1,038) | $ (1,205) | (1,283,056) | (13,338) | 1.0% | (15,484) | 1.2% |
| 34 | Other General Unsecured Claims | | $ (214) | $ (249) | (384,742) | (4,589) | 1.2% | (5,236) | 1.4% |
| 35 | Subordinated Debt | | $ 9,550 | $ 11,086 | (996,181) | - | 0.0% | - | 0.0% |
| 36 | Total Pre-Petition Claims / (Claims Paid) | $ 30,469,780 | $ 223,179 | $ 268,642 | $ (13,633,103) | $ (3,875,961) | | $ (4,343,874) | |
| 37 | Equity Value | | (53,693) | (65,720) | | - | | - | |

6

5.  Note on Eliminations / Adjustments

The Eliminations / Adjustments column is used to show (a) the elimination of Intercompany Claim activity and (b) the reallocation of value among pre-petition Claims due to contractual subordination.

| ($000s) Eliminations / Adjustments | Intercompany Elimination | | | Tribune Intercompany Subordination | | Contractual Subordination Bridge Guarantee Subordination | | Subordinated Debt Adjustment | | TOTAL | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Book Value $ | Low $ | High $ | Low $ | High $ | Low $ | High $ | Low $ | High $ | Book Value $ | Low $ | High $ |
| Admin Priority I/C Receivables | (2,332,499) | (2,323,010) | (2,324,506) | | | | | | | (2,332,499) | (2,323,010) | (2,324,506) |
| I/C Receivables (Pre-Petition) | (30,469,780) | (223,180) | (268,643) | | | | | | | (30,469,780) | (223,180) | (268,643) |
| Investments In Subsidiaries | | (53,692) | (65,719) | | | | | | | | (53,692) | (65,719) |
| Total Recoveries | (32,802,279) | (2,599,882) | (2,658,868) | | | | | | | (32,802,279) | (2,599,882) | (2,658,868) |
| Admin Priority I/C Claims | 2,332,499 | 2,323,010 | 2,324,506 | | | | | | | 2,332,499 | 2,323,010 | 2,324,506 |
| Total Ch.11 Claims (Paid) | 2,332,499 | 2,323,010 | 2,324,506 | | | | | | | 2,332,499 | 2,323,010 | 2,324,506 |
| I/C Claims | 30,469,780 | 223,180 | 268,643 | 109,964 | 127,652 | | | | | 30,469,780 | 333,144 | 396,295 |
| Senior Debt | | | | (109,964) | (127,652) | (479,360) | (546,309) | (6,988) | (8,112) | | (596,312) | (682,074) |
| Bridge | | | | | | 479,360 | 546,309 | (1,310) | (1,521) | | 478,050 | 544,788 |
| Bonds | | | | | | | | (1,038) | (1,205) | | (1,038) | (1,205) |
| Other General Unsecured Claims | | | | | | | | (214) | (249) | | (214) | (249) |
| Subordinated Debt | | | | | | | | 9,550 | 11,086 | | 9,550 | 11,086 |
| Total Pre-Petition Claims / (Claims Paid) | 30,469,780 | 223,180 | 268,643 | - | - | - | - | - | - | 30,469,780 | 223,180 | 268,643 |
| Total Eliminations / Adjustments | - | (53,693) | (65,720) | - | - | - | - | - | - | - | (53,693) | (65,720) |

The Intercompany Elimination nets the offsetting payable and receivable balances to zero for presentation purposes to show a total combined liquidation analysis for all of the Tribune Entities.

The Contractual Subordination section details the following adjustments specified under the associated credit agreements:

- Any value that would be distributed to Guarantor Subsidiaries that are Debtors on the account of Intercompany Claims against Tribune Company is redistributed to the holders of Claims arising under the Guarantee Agreement, dated as of June 4, 2007, among Tribune, each of the subsidiaries of Tribune listed on Annex I thereto, and JP Morgan Chase Bank, N.A., as administrative agent, as amended, restated, supplemented or otherwise modified from time to time (the "Senior Loan Guaranty Claims");

- Any value that would be distributed to the holders of Claims arising under the Guarantee Agreement, dated as of December 20, 2007, among Tribune, each of the subsidiaries of Tribune listed on Annex I thereto, and Wells Fargo Bank, N.A., as administrative agent, as amended, restated, supplemented or otherwise modified from time to time (the "Bridge Loan Guaranty Claims") is redistributed to the Senior Loan Guaranty Claims; and

- Any value that would be distributed to (i) the holders of the EGI-TRB LLC Notes on account of Claims arising pursuant to the EGI-TRB LLC Notes (the "EGI-TRB LLC Notes Claims") or (ii) holders of Claims arising under or evidenced by the PHONES Notes Indenture and related documents, except any claim made by Wilmington Trust Company, as successor indenture trustee, for reasonable compensation for services under the PHONES Notes Indenture or for the reimbursement of reasonable expenses, disbursements, and advances incurred or made by Wilmington Trust Company in accordance with any provision of the PHONES Notes Indenture (the "PHONES Notes Claims") is redistributed to the holders of (a) Claims arising under the Senior Loan Agreement (other than accrued and unpaid amounts for the reasonable and documented fees, costs and expenses of the Senior Lender Professionals incurred in connection with the Chapter 11 Cases) and any Claim of the Senior Lenders or the Senior Loan Agent arising under the Pledge Agreement (the "Senior Loan Claims"), (b) Claims arising under the Bridge Loan Agreement (the "Bridge Loan Claims"), (c) Claims arising under or evidenced by the Senior

Notes Indentures and related documents and any Claim of the Senior Noteholders arising under the Pledge Agreement (the "Noteholder Claims"), and (d) other general unsecured claims at Tribune Company on a pro rata basis.

## Notes to Specified Lines Items of Liquidation Analysis

**Asset Liquidation Values**

1. **Cash** - 100% recovery of projected available cash balances as of the Conversion Date. Cash recovery excludes restricted cash related to (a) approximately $2 million in a segregated utility adequate assurance account and (b) approximately $16.275 million collateralizing a letter of credit. Tribune Company cash includes $368 million of cash as described in Exhibit F to the General Disclosure Statement.

2. **Trade Accounts Receivable** – The majority of the receivables consist of advertising trade receivables. They also include a smaller amount of single copy newspaper sales, home circulation, commercial printing and delivery and other miscellaneous receivables. The Liquidation Analysis assumes an estimated recovery range of between 55% and 80% of the net book value of accounts receivable consistent with the assumptions that were used in the now expired DIP Facility for the calculation of eligible trade accounts receivable.

3. **Inventory** – Inventories are comprised mainly of newsprint, ink and other supplies. Due to the costs associated with transport and handling, and possible shrinkage, the Liquidation Analysis assumes a recovery range of between 50% - 60% of net book value.

4. **Property, Plant & Equipment** includes the following:

*$000s*

|  | Book Value | Low $ | Low % | High $ | High % |
|---|---|---|---|---|---|
| Land & Buildings | $ 433,569 | $ 271,587 | 63% | $ 360,346 | 83% |
| Machinery & Equipment | 428,543 | 21,427 | 5% | 42,854 | 10% |
| Construction in Process | 31,172 | - | 0% | - | 0% |
| Total Property, Plant & Equipment | $ 893,284 | $ 293,014 | 33% | $ 403,201 | 45% |

- **Land, Buildings & Leasehold Improvements** – The liquidation value for land and buildings is based upon a review conducted by the Debtors' management, which assumes a discount to prior appraisal information based on (a) current market factors, (b) a forced liquidation of empty buildings in a six-month period, and (c) maintaining the property and removing equipment.

  The majority of the liquidation value relates to properties held by Chicago Tribune Company (including Tribune Tower in downtown Chicago and the Freedom Center printing and distribution complex near downtown Chicago), Los Angeles Times Communications LLC (including the Times Mirror Square office building, printing and distribution center in downtown Los Angeles) and Tribune Company (two properties used for office, printing and distribution by The Baltimore Sun Company). Leasehold improvements are assumed to have no value.

- **Machinery & Equipment** – Primarily consists of printing presses and related equipment. Given the over-capacity in the industry and the limited universe of potential buyers (who may exist in other geographic areas & some of whom might be experiencing financial distress), it is likely that these assets would not command significant value. Therefore the expected recovery range is 5% - 10% of net book value.

- **Construction in Progress** – Primarily relates to software development and web width reduction projects which are assumed to have no recovery value given the need for additional funding to complete any outstanding projects.

9

5. **Goodwill & Intangibles** – As part of the Analysis, the Debtors' investment banker surveyed the current publishing marketplace for comparable transactions and was not able to find any recent transactions or public comparables that would lend support to significant value for intangible publishing assets. In addition, any goodwill is assumed to have no value.

6. **Investments** – Investments are assumed to be liquidated through a distressed sale at a 15% to 30% discount to the going concern values determined in the valuation contained in Exhibit F to the General Disclosure Statement. The primary investments include Television Food Network, G.P. (31.3% held by non-debtor Tribune (FN) Cable Ventures, Inc.), CareerBuilder, LLC (30.8% held by non-debtor Tribune National Marketing Company), Classified Ventures (27.8% ownership between Tribune Company and non-debtor Tribune National Marketing Company), Legacy.com, Inc. (49.1% owned by Tribune Company), and Chicago Baseball Holdings, LLC (5% held by Tribune Sports Network Holdings, LLC, Tribune CNLBC, LLC, Tribune DQ, LLC, and Tribune WFPT, LLC).

7. **Other Assets** – Includes prepaid, deposits, tax refunds receivable and other sundry assets which are assumed to have minimal value in a liquidation.

8. **Assets Sold as a Going Concern** – The Liquidation Analysis separates out the book value of assets of entities that are sold as a going concern. See Global Note #3 above for explanation of how the going concern value was discounted to obtain the liquidation value. The following are the entities assumed to be sold as going concerns under a distressed sale:

| | Legal Entity Name | | Legal Entity Name |
|---|---|---|---|
| 1 | Chicagoland Television News, Inc. | 14 | KSWB Inc. |
| 2 | Oak Brook Productions, Inc. | 15 | Forsalebyowner.com Corp. |
| 3 | KIAH Inc. | 16 | Forsalebyowner.com Referral Services, LLC |
| 4 | KPLR, Inc. | 17 | Tribune Television Company |
| 5 | KTLA Inc. | 18 | Tribune Television New Orleans, Inc. |
| 6 | Channel 40, Inc. | 19 | Tribune Television Holdings, Inc. |
| 7 | KWGN, Inc. | 20 | Tribune Television Northwest, Inc. |
| 8 | Tribune Media Services, Inc. | 21 | WDCW Broadcasting, Inc. |
| 9 | Tribune Media Services B.V. | 22 | Tower Distribution Company |
| 10 | TMS Entertainment Guides, Inc. | 23 | WGN Continental Broadcasting Company |
| 11 | TMS Entertainment Guides Canada Corp | 24 | WPIX, Inc. |
| 12 | Tribune Hong Kong Ltd. | 25 | Channel 39, Inc. |
| 13 | Tribune Broadcast Holdings, Inc. | 26 | Los Angeles Times International, Ltd |

**Costs Associated with Liquidation**

10. **Professional Fees** – Includes estimates for investment banking fees (1.0% of Gross Liquidation Proceeds, excluding cash, from the sale of Going Concern Disposition entities and Investments) real estate brokerage fees (2.0% of net proceeds from property dispositions), and chapter 7 professional fees (0.6% of Gross Liquidation Proceeds excluding cash).

11. **Taxes on Disposition** - Management and its advisors have estimated the taxes that would be paid on the net gains on the disposition of the assets of the Tribune Entities, at an assumed tax rate of 41%.

12. **Chapter 7 Trustee Fees** –Although section 326 of the Bankruptcy Code provides for statutory Trustee fees of 3.0% for liquidation proceeds in excess of $1,000,000, the Liquidation Analysis assumes that the Bankruptcy Court will only authorize Trustee fees of 2.0% of Gross Liquidation Proceeds excluding cash. Should the Bankruptcy Court authorize Trustee fees in excess of 2.0%, the liquidation proceeds available for distribution would be reduced.

13. **Sale Period Profit / (Loss)** –For those Tribune Entities that are assumed to be sold as a going concern, the Liquidation Analysis assumes that those entities will continue to operate during a six month sale period. Therefore the Liquidation Analysis includes an estimated Sale Period Profit / (Loss) equal to the actual operating profit (excluding depreciation and amortization) for the six month period from January through June 2010, discounted by 30% (High) to 50% (Low). The discount factors in reduced performance and potential additional employee retention costs during a distressed sale.

14. **Wind Down Costs** –For those entities to be Shut Down, the Liquidation Analysis assumes that operations would immediately cease upon filing of chapter 7, (e.g.; publishing entities would stop printing newspapers), and the majority of the staff would be severed (see Note 15), with minimal staff remaining to assist in the shutdown of operations and assist the chapter 7 Trustee in the wind down and sale of individual assets.

    Costs associated with the limited operation of corporate functions during the liquidation (including finance, technology, human resource and property service centers) are allocated to all the Tribune Entities on a pro rata basis, based upon Gross Liquidation Proceeds. These functions will support the collection of accounts receivable, the termination of employees, the management of payroll remittances, the ongoing operations of Tribune Entities to be sold, the maintenance and closing of accounting records, the preparation of estate tax returns and the management of asset sales during the liquidation period. These costs assume that the current corporate and service center head count of approximately 840 is immediately reduced to approximately 165 upon filing for chapter 7, and by the end of the 6 month liquidation period has been reduced to 66 full time employees. The Liquidation Analysis assumes that employees retained beyond the start of the liquidation process are paid stay bonuses equal to three months of their base salary.

15. **Employee Severance Costs** - Employee severance is based upon the Bankruptcy Court approved severance policy. The Liquidation Analysis assumes that for any entity sold as a going concern, the buyer(s) would offer employment to all current employees and therefore the estate would not incur any severance related costs for these entities. Pursuant to the Bankruptcy Court approved severance policy, the Analysis assumes lump sum payments without benefits continuation for all employees of entities that are liquidated. In certain instances there is insufficient value to satisfy the severance Claims in full resulting in less than 100% recovery on these Claims.

**Recoveries from Intercompany Balances and Investments in Subsidiaries**

18. **Administrative Priority Intercompany Receivables** –These are net Intercompany receivable and payable balances that have arisen since the commencement of the Chapter 11 Cases.[7] Per the Final Order (I) Approving Cash Management Systems, (II) Authorizing Use of Pre Petition Bank Accounts and Business Forms, and (III) Granting Superpriority Expense Status to Post Petition intercompany Transactions (the "Final Cash Management Order"), these intercompany balances have super priority status and as such are satisfied in advance of all other chapter 11 Claims. Also in accordance with the Final Cash Management Order, the administrative priority intercompany receivables & payables among Tribune Company, Tribune Finance Service Center, Inc., and Tribune Publishing Company are consolidated.

The Liquidation Analysis assumes that intercompany Claims are satisfied from the Value After Recoveries and each subsidiary receives value on account of its respective priority intercompany receivables, which in turn is value used to satisfy priority intercompany payables.

19. **Pre-Petition Intercompany Receivables** - Represents the total intercompany amounts owning among the Tribune Entities at the time of the chapter 11 filings. Consistent with the treatment of such Claims under the Final Cash Management Order, Pre-Petition Intercompany Claims and payables among Tribune Company, Tribune Finance Service Center, Inc., and Tribune Publishing Company are likewise consolidated in accordance with the Final Cash Management Order. The pre-petition intercompany recoveries are adjusted in accordance with the contractual obligations under the various credit and guarantee agreements (see Global Notes 2 & 5).

The Liquidation Analysis assumes all intercompany balances are valid at the amounts reflected in the books and records of the Tribune Entities without giving effect to any potential challenges to their validity.

20. **Investments in Subsidiaries** –Represents the equity value in direct subsidiaries. For most entities the Claims exceed the value so there is no equity value to distribute to its parent.

**Chapter 11 Administrative Claims**

23. **Administrative Priority Intercompany Claims (See Note 18 Above)**

24. **Chapter 11 Trade Claims** –Administrative Claims arising from operation of the Debtors' businesses post petition and prior to the Conversion Date.[8]

25. **Chapter 11 Unpaid Professional Fees** –Administrative Claims for unpaid professional fees as of the Conversion Date are paid pro rata by all of the Debtors.

26. **Priority Tax Claims** –Includes an estimated Allowed amount for existing tax Claims that would occur in liquidation. Certain existing tax Claims are joint and several liabilities of all of the Debtors and the estimated Allowed amounts are consistent with the assumptions with regard to resolving outstanding tax disputes incorporated into the Debtors' business plan. These Claims are assumed to be satisfied in full pro rata across all of the Debtors.

---

[7] For all Debtors, the Intercompany Priority Claims are the balances that have arisen since December 8, 2008, except for Tribune CNLBC LLC, where the balances have arisen since it filed for chapter 11 on October 12, 2009.
[8] An estimate for 503(b)(9) Claims is not included as most 503(b)(9) Claims have already been satisfied pursuant to an order of the Bankruptcy Court.

12

To the extent that there is insufficient value at a given subsidiary to satisfy its proportionate share of the tax claim, the Liquidation Analysis assumes that value is used pro rata from other Tribune Entities to satisfy the tax claim in full.

**Pre-Petition Claims**

After the deduction of chapter 11 administrative priority Claims, as outlined, the Net Liquidation Value at the Tribune Entities is allocated Pro Rata to the pre-petition unsecured Claims at each entity.

29. **Pre-Petition Intercompany Claims (See Note 19 Above)**

30. **Joint and Several Pension Termination Claims** —The Liquidation Analysis assumes that the Tribune Entities would terminate their various pension plans and therefore the Pension Benefit Guarantee Corporation ("PBGC") would have a claim for the unfunded portion of the pension plans. This is a joint and several liability among all entities and has been estimated with assistance from the Debtors' actuarial consultants. It does not include potential additional Claims related to any withdrawal from multi-employer plans.

31. **Senior Debt** —Includes the estimated Allowed amounts for the Senior Loan Claims and Senior Loan Guaranty Claims. The Senior Loan Guaranty Claims include Claims asserted under that certain 1992 ISDA Master Agreement, dated as of July 2, 2007, between Barclays Bank PLC and Tribune. The Senior Loan Claims and the Senior Loan Guaranty Claims assume that all undrawn pre-petition letters of credit, which primarily backstop the self insured portion of the Tribune Entities' workers compensation liability, are drawn at the time of the liquidation.

32. **Bridge Debt** —Includes the Bridge Loan Claims and the Bridge Loan Guaranty Claims. As the Bridge Loan Guaranty Claims are subordinated to the Senior Loan Guaranty Claims, the value initially recovered on account of the Bridge Loan Guaranty is reallocated to the Senior Debt Claims (see Global Note 5).

33. **Bond Debt** - The Noteholder Claims are unsecured Claims at Tribune Company, pari-passu with the Senior Debt and Bridge Debt Claims. The Noteholder Claims are also beneficiaries of certain stock pledges; however as there is no equity value in the related entities, these are not reflected in the Liquidation Analysis.

34. **Other General Unsecured Claims** – Includes an estimate of Allowed Claims, including pre-petition trade Claims. Numerous Litigation Claims have been asserted against the Tribune Entities, which the Tribune Entities generally do not believe have validity and are likely to be disallowed. Accordingly these Litigation Claims are not included in the estimate of General Unsecured Claims. Other General Unsecured Claims at Tribune includes Claims asserted under that certain 1992 ISDA Master Agreement, dated as of July 2, 2007, between Barclays Bank PLC and Tribune.

35. **Subordinated Debt Claims** – Includes (i) the "PHONES Notes (both the unredeemed notes at face value and the unfunded redemptions at redemption value), and (ii) the "EGI-TRB LLC Notes" (see Global Note 5).

37. **Equity Value** – To the extent that a legal entity has sufficient Value After Chapter 11 Administrative and Priority Claims and its Pre-Petition Claims have been repaid in full, the Liquidation Analyses assumes any excess equity value is then available for its respective parent to repay Administrative and Pre-Petition Claims (see Note 20). There is no equity value at Tribune Company.