IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------X
In re:                              :    Chapter 11 Cases
                                    :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,            :    (Jointly Administered)
                                    :
      Debtors.                      :    Hearing Date: January 20, 2011 at 10:00 a.m.
                                    :    Objections Due: January 13, 2011 at 4:00 p.m.
                                    :
                                    :
-------------------------------------------------X
```

## WILMINGTON TRUST COMPANY'S MOTION FOR (I) ESTIMATION OF THE PHONES CLAIMS AND (II) CLASSIFICATION OF PHONES CLAIMS PURSUANT TO BANKRUPTCY RULE 3013

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2 billion (generally referred to as the "PHONES") issued in April 1999 by Tribune Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the "Company"), by and through its undersigned counsel, hereby respectfully submits this Motion, pursuant to Section 502 of the United States Bankruptcy Code and Rule 3013 of the Federal Rules of Bankruptcy Procedure, seeking a judicial determination of: (a) the amount of the PHONES claim; and (b) the proper classification of the PHONES claim in the proposed plans of reorganization. In support of this request, Wilmington Trust respectfully states as follows:

### PRELIMINARY STATEMENT

1. On the eve of the commencement of these cases in December 2008, certain creditors exercised their contractual rights as PHONES holders. Under their indenture, as further described below, PHONES holders had the right to tender their notes to Tribune in exchange for the market value of two shares of Time Warner stock. Upon information and belief, the holders of approximately $417,536,319 in principal amount of PHONES debt (the "PHONES Notes

1

Exchange Claims") informed the prior indenture trustee, Deutsche Bank Trust Company Americas ("DBTCA"), that they wished to tender certain notes and expected to receive $56 million in cash in return (by the Debtor's calculation). See Joint Disclosure Statement at pg. 24 [Docket No. 7134]. Tribune did not honor these requests and no payment was ever made on account of them. In its proof of claim, Wilmington Trust asserted that the full amount of the PHONES claim remain outstanding, including the PHONES Notes Exchange Claims. Some parties-in-interest have asserted that the tendered PHONES Exchange Claims are subordinated securities claims (pursuant to Section 510(b) of the United States Bankruptcy Code) that are subordinated to the balance of the PHONES claim that did not tender. Other parties-in-interest have suggested that the tendered PHONES claims may even be general unsecured claims of Tribune Company. After much discussion between the parties-in-interest, all of the propounded plans of reorganization contemplate (explicitly or implicitly) that the Court will resolve this controversy. Wilmington Trust respectfully submits that this issue should be resolved now, prior to the confirmation hearing and respectfully asks the Court to determine: (a) the amount of PHONES debt outstanding including the amount of the PHONES Notes Exchange Claims; and (b) the proper classification for such debt in each of the proposed plans of reorganization.[1]

## JURISDICTION AND VENUE

2.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

---

[1] In an earlier pleading, Wilmington Trust requested estimation of a claim arising out of the PHONES Indenture for certain expenses and fees that have a different priority than the claims owed to the holders of the PHONES Notes. See *Motion to Approve Estimation and Temporary Allowance of Claims Pursuant to Bankruptcy Rule 3018* (the "Original 3018 Motion") [Docket No. 4886]. The Original 3018 Motion will be supplemented for hearing at the Debtors' scheduled Rule 3018 hearing on January 20, 2011, and Wilmington Trust requests that this Motion be heard at that same hearing.

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 502(b) and Bankruptcy Rule 3013.

## BACKGROUND

A. **The Debtors' Chapter 11 Cases.**

3. On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") [Docket No. 1].

4. The Debtors have remained in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Official Committee").

6. On March 26, 2009, the Court entered its *Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order") [Docket No. 813]. The final day for filing proofs of claim was June 13, 2009.

7. On December 9, 2010, the Court entered an *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media*

*Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief* (the "Solicitation Order"). The Solicitation Order was modified on December 16, 2010 [Docket No. 7215].

8. The Solicitation Order contemplates a competing plan process, with four plans outstanding:

- A plan supported by the Debtors, the Official Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (the "Debtor/Committee/Lender Plan");

- A plan supported by Aurelius Capital Management, L.P., Deutsche Bank Trust Company Americas, solely in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust (the "Noteholder Plan");

- A plan supported by certain holders of step one senior loan claims (the "Step-One Plan"); and

- A plan supported by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management, L.P. (the "Bridge Plan").

9. On December 14, 2010, the Step-One Plan was withdrawn by its proponents [Docket No. 7190], leaving three plans pending before the Court: the Debtor/Committee/Lender Plan, the Noteholder Plan and the Bridge Plan (collectively, the "Competing Plans").

10. On December 20, 2010, the Court entered a *Discovery and Scheduling Order for Plan Confirmation* [Docket No. 7239]. The confirmation hearing is currently scheduled to commence on March 7, 2011.

**B.    The PHONES.**

11. Pursuant to an indenture dated as of April 1, 1999 (the "Indenture")[2] between Tribune and Bank of Montreal Trust Company, as original Indenture Trustee, Tribune issued

---

[2]    A true and accurate copy of the Indenture is attached hereto as Exhibit A.

8,000,000 units of PHONES in the aggregate original principal amount of $1.256 billion calculated at $157 per PHONES note, which was the value of one "reference share" of America Online ("AOL") common stock.

12. Pursuant to the terms of the PHONES, each holder thereof has the right, at any time and from time to time, to exchange each of its PHONES notes for an amount of cash equal to 95% (or 100% under certain circumstances) of the market value of two shares of common stock of Time Warner, Inc. as the successor to AOL as a result of a merger (the "Exchange Right"). See Form of PHONES Note, R-6 through R-8, attached hereto as Exhibit B.

13. In order to exercise the Exchange Right, a holder of PHONES is required to send the Indenture Trustee an exchange notice (the "Exchange Notice"). A true and accurate copy of the form of Exchange Notice is attached hereto as Exhibit C. In addition, the holder must surrender to the Indenture Trustee the PHONES to be exchanged. Then, the Indenture Trustee will notify Tribune of the exercise of the Exchange Right by delivering the Exchange Notice and acknowledging that it has taken possession of the PHONES tendered for exchange. Subsequently, Tribune must make the required cash payment to the tendering holder. Pursuant to the Exchange Notice, each tendering holder authorizes and instructs the Indenture Trustee to cancel the PHONES tendered for exchange upon the date of the exchange payment.

C. **Unconsummated Pre-Petition Exchange Requests.**

14. Shortly prior to the Petition Date, holders of 2,659,467 units of PHONES (the "Tendering Holders") – in the aggregate principal amount of $417,536,319 calculated at $157

per PHONES note – properly sought to exercise the Exchange Right by delivering an Exchange Notice and surrendering their PHONES to DBTCA, the predecessor Indenture Trustee.[3]

15. Tribune did not honor the Exchange Right exercised by the Tendering Holders (i.e., it did not make the exchange payments to the Tendering Holders by the Petition Date). However, upon information and belief, DBTCA cancelled the PHONES surrendered to it by the Tendering Holders (notwithstanding the instruction set forth in the Exchange Notice that specifies that the Indenture Trustee shall cancel the PHONES only upon consummation of the exchange).

16. By letter dated December 30, 2008, DBTCA informed Tribune that it had received a number of requests from PHONES holders seeking to withdraw their election to exercise the Exchange Right (the "Withdrawal Requests"), and requested that Tribune advise DBTCA and Wilmington Trust, as successor trustee, whether it would honor the Withdrawal Requests. A true and accurate copy of this letter is attached hereto as Exhibit D.

17. In response, by letter dated January 14, 2009, Tribune advised DBTCA that it considered each election to exercise the Exchange Right to be irrevocable, and was not prepared to honor the Withdrawal Requests. However, in the letter Tribune did not provide any justification for this position.[4] A true and accurate copy of this letter is attached hereto as Exhibit E.

**D.   Uncertainty Regarding the Status of the PHONES Claims.**

18. In its Amended Schedules of Assets and Liabilities dated April 13, 2009 [Docket No. 938] (the "Schedules"), Tribune listed the amount of PHONES debt as $758,871,303. See

---

[3]   Wilmington Trust succeeded DBTCA as Indenture Trustee on or about December 26, 2008.

[4]   Wilmington Trust notes that neither the Indenture nor the PHONES themselves provide that the exercise of the Exchange Right is irrevocable.

Schedules, Schedule F – Unsecured Notes and Debentures. A footnote to the Schedules states that this number "represents PHONE debt at par value for un-exchanged shares and at exchange value for those shares exchanged but not paid in cash." The Debtors' General Disclosure Statement discloses the Debtors' belief that the "approximate carrying value of PHONES Notes on the Petition date was $759 million comprised of $703 million for PHONES Notes not submitted for exchange and a $56 million liability for PHONES Notes exchanged that were not settled in cash." See Joint Disclosure Statement, pg. 24 [Docket No. 7134]. Thus, Tribune apparently holds the position that the PHONES Notes Exchange Claims are limited to the value of the cash exchange amounts.

19.     Since its appointment as successor Indenture Trustee, Wilmington Trust has received numerous inquiries from Tendering Holders regarding the status of the PHONES Notes Exchange Claims. Wilmington Trust has requested the Debtors' cooperation in restoring the PHONES Notes Exchange Claims, but the Debtors have declined this request.

20.     On June 5, 2009, consistent with the Bar Date Order, Wilmington Trust filed a proof of claim on behalf of all holders of the PHONES. A true and accurate copy of the proof of claim filed by Wilmington Trust is attached hereto as Exhibit F. In order to preserve the rights of the Tendering Holders, Wilmington Trust included the principal and interest associated with the PHONES Notes Exchange Claims in its calculation of the total claim amount. The total amount of the claim – $1,196,823,429 – is materially greater than the Debtors' scheduled amount of $758,871,303 (which amount appears to be based on the PHONES Notes Exchange Claims being limited to the value of the exchange payment).

21.     In the Debtor/Committee/Lender Plan, the Debtors and their co-proponents define PHONES Notes Claim in Section 1.1.173, in relevant part, as constituting "a Claim arising under

or evidenced by the PHONES Notes Indenture and related documents . . ." The proponents of this plan do not provide separate treatment for, or judicial resolution of, the PHONES Notes Exchange Claims.

22. In the Bridge Plan, the proponents explicitly provide for judicial resolution of the PHONES Notes Exchange Claims and adjudication of the rights of the Tendering Holders. In Section 1.1.216, the Bridge Plan defines "PHONES Notes Claim" as including:

> . . . a Claim arising under or evidenced by the PHONES Notes Indenture and related documents, other than PHONES Notes Exchange Claims, to the extent the Bankruptcy Court determines that PHONES Notes Exchange Claims are subordinated in right of payment to PHONES Notes Claims or are General Unsecured Claims.

The Bridge Plan further contemplates that, to the extent the PHONES Notes Exchange Claims are not found by the Court to be PHONES Notes Claims (Class 1I), they will instead be classified as Subordinated Securities Claims (Class 1K). See Bridge Plan § 1.1.272. The Subordinated Securities Claims are subordinated in right of payment to the PHONES Note Claims. If the Bridge Plan is confirmed and the bankruptcy court does not resolve the status of the PHONES Notes Claims, such resolution will be left to the litigation trusts to be created under the plans. See Bridge Plan at pg. 2 [Docket No. 6695, Exhibit 1].

23. The Noteholder Plan also contemplates judicial resolution of these issues, defining "PHONES Notes Claims" in Section 1.1.211 as encompassing:

> . . . a Claim arising under or evidenced by the PHONES Notes Indenture and related documents, other than PHONES Notes Exchange Claims but only to the extent the Bankruptcy Court determines that PHONES Notes Exchange Claims are subordinated in right of payment to PHONES Notes Claims or are General Unsecured Claims.

The treatment is identical to the Bridge Plan, and if the Noteholder Plan is confirmed the Court must also resolve the status of the PHONES Notes Exchange Claims as part of confirmation or, alternatively, such resolution will be prosecuted by the litigation trusts created under the plan. In

any event, the PHONES Notes Exchange Claims are members of the PHONES Notes Class (Class 1I) or the Subordinated Securities Claims Class (Class 1K) or even general unsecured claims of Tribune Company, and their classification will determine their priority of payment as well as reserves under the Noteholder Plan.

### RELIEF REQUESTED

24. By this Motion, Wilmington Trust requests that this Court determine: (a) the amount of the allowed claims arising under the PHONES; and (b) the proper classification of the PHONES Notes Exchange Claims under the Competing Plans. Bankruptcy Code Section 502(b) provides that, if an objection to a claim is made, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition." 11 U.S.C. § 502(b).[5] Bankruptcy Rule 3013 is the applicable rule for seeking judicial determination of proper classification under a proposed plan of reorganization. See In re Mirant Corp., 2005 Bankr. LEXIS 909 (Bankr. N.D. Tex. May 24, 2005) (pursuant to Bankruptcy Rule 3013, holders of long dated unsecured notes contested their classification under the proposed plan).

25. As described above, as indenture trustee, Wilmington Trust filed a proof of claim on behalf of all PHONES holders. In that proof of claim, Wilmington Trust asserted a claim amount that includes the face amount of the PHONES Notes Exchange Claims. However, as indicated in their Schedules and correspondence to the prior Indenture Trustee, the Debtors have taken the position that the claims of the Tendering Holders are limited to the exchange value for those shares exchanged but not paid in cash. While the Debtor/Committee/Lender Plan is silent

---

[5] Wilmington Trust submits that, because this Motion falls within the rubric of claims resolution and claims classification, it is appropriate to proceed by motion rather than by commencing an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

9

on the issue, it implicitly contemplates the reconciliation of the amount provided on the Debtors' Schedules and the amount asserted by Wilmington Trust. The Bridge Plan and the Noteholder Plan both expressly provide for judicial resolution of the amount of the PHONES Notes Exchange Claims and the proper classification of all claims arising under the Indenture.

26. Wilmington Trust submits that the allowed amount of the PHONES Notes Exchange Claims should be resolved at this time for two primary reasons. First, the gap between the Debtors' calculation of the total amount of PHONES Notes Exchange Claims and the amount calculated by Wilmington Trust is substantial – greater than $400 million. This large number could materially shift the size of the aggregate unsecured creditor pool of Tribune Company, potentially diluting (or enhancing) the recovery of unsecured creditors. This shift in the recovery math is important, as voting creditors need to understand it in order to evaluate the value of the settlements proposed under the Debtor/Committee/Lender Plan and the Bridge Plan.

27. Second, the Competing Plans all require resolution of the claim in order for votes to be apportioned properly.[6] For example, the status of the PHONES Notes Exchange Claims could determine whether the PHONES Notes class is an impaired accepting class under any of the Competing Plans.

---

[6] Wilmington Trust notes that the instructions on the Exchange Notice provide that the Indenture Trustee may only cancel the PHONES tendered for exchange after the exchange payment is made. Because Tribune never consummated the exchanges by paying the exchange amount to the Tendering Holders, the PHONES of the Tendering Holders appear to have been erroneously cancelled by DBTCA, the prior Indenture Trustee. Since DBTCA appears to not have had the authority under the Indenture and form of PHONES note to cancel the PHONES of the Tendering Holders, Wilmington Trust submits there is ground to allow the Tendering Holders to assert claims based on continued ownership of the PHONES. Moreover, as noted above, neither the Indenture nor the PHONES provide that exercise of the Exchange Right is irrevocable, as has been asserted by the Debtors.

28.     Put succinctly, there is substantial disagreement as to: (a) whether the PHONES Notes Exchange Claims may be asserted for their full principal amount; and (b) whether the PHONES Notes Exchange Claims are subordinated in right of payment to other claims arising under the PHONES Notes Indenture.  Once resolved, the PHONES Notes Exchange Claims can be properly classified.  Such resolution will also provide clarity to the marketplace, reduce uncertainty surrounding plan voting and enable a smoother confirmation process by eliminating an issue that is principally, if not exclusively, a legal question (to the best of Wilmington Trust's knowledge).  See In re G & C Foundry Co., 2008 Bankr. LEXIS 2764, at *9 (Bankr. N.D. Ohio Oct. 9, 2008) (Rule 3013 is appropriately invoked in "addressing classification issues before the expense of the disclosure and plan confirmation process").

**WHEREFORE**, for the reasons set forth herein, Wilmington Trust, as successor Indenture Trustee, requests that this Court enter an order in substantially the form of the order attached hereto: (a) granting the Motion; (b) determining the allowed amount and relative priority of the claims relating to the PHONES; (c) determining the proper classification of the PHONES claims in the Competing Plans; and (d) granting such other and further relief to Wilmington Trust as is just and proper under the circumstances.

Date:  December 30, 2010
       Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

/s/ *William D. Sullivan*
William D. Sullivan, Esq. (Del. Bar No. 2820)
Elihu E. Allinson, Esq. (Del. Bar No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: zallinson@sha-llc.com

-and-

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*