IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| TRIBUNE COMPANY, *et al.,* | Case Nos. 08-13141 (KJC), *et seq.* (jointly administered) |
| Debtors. | |

## REPLY MEMORANDUM IN SUPPORT OF
## MOVANTS' MOTION FOR CLASS CERTIFICATION AND
## CLASS TREATMENT OF MOVANTS' CLASS PROOFS OF CLAIM

Movants James Allen, Charles Evans, Pearl Evans, Gary Grant, Loretta Grant, Bill McNair and Sean Serrao (collectively, "Movants"), by their undersigned attorneys, respectfully submit this reply memorandum of law in further support of their motion for class treatment of their class proofs of claim against Debtors ("Motion" or "Mot.") and in response to Tribune's Objection to Movants' Motion for Class Certification and Class Treatment of Movants' Class Proof of Claim ("Objection" or Obj.").

## PRELIMINARY STATEMENT[1]

Ironically, Debtors accuse Movants of "forum shopping."  (Obj. at 10)  In truth, Movants' attempts to move forward with this case have been thwarted at every turn.

Movants began by filing their case in federal court, bringing their claim for failure to pay minimum wage under both the FLSA and New York wage and hour laws.  Tribune moved to

---

[1] Movants cite herein to the declarations filed as part of their original motion papers.  In further support of the reply, Movants also attach hereto the following: attaching as Exhibit 1, a true and correct copy of an invoice produced by Debtors' as part of discovery in the state court action, Bates No. TD/ALLEN 00229; attaching as Exhibit 2, a true and correct copy of an invoice from Mitchell's Newspaper Delivery Service to AM New York and attached documents, that was produced by Debtors' as part of discovery in the state court action, Bates No. TD/ALLEN 00093-00108.  (Mitchell's Newspaper Delivery Service d/b/a LBN Consulting, LLC was a non-debtor in the State Court Action.  *See* Opp. at 3)

dismiss, and Movants, upon realizing that their FLSA claims were dwarfed by their state law claims (because of the sizeable difference between the federal and state minimum wage, at that time), voluntarily dismissed the case and re-filed in state court alleging only their state law claims. The parties then engaged in some limited discovery, but Tribune informed Movants' counsel fairly early in the case that it was filing for bankruptcy. When Tribune filed its petition, the state court stayed the action both as to Tribune and LBN, the non-debtor co-defendant. Once Debtor petitioned for bankruptcy and the state court stayed the case, Movants made a motion in state court seeking to sever the case as to LBN, the non-debtor co-defendant, so that the case could proceed while the bankruptcy was pending. (Mot. at 3, n.6) This motion was denied. (*Id.*)

Now, Debtors argue that Movants are moving for class certification in the Bankruptcy Court to "avoid an insurmountable obstacle in obtaining class certification in the State Court Action." (Obj. at 9) This argument is absurd. Movants certainly did not maneuver their way into Bankruptcy Court, but were dragged here by Debtors' petition. Moreover, Movants are not foreclosed from getting class certification in the state court solely on the basis of the 60-day filing deadline in CPLR 902. "'Although prompt resolution of the certification issue is the desired goal,' the court has the discretion, pursuant to CPLR 2004, to extend the 60-day deadline either prospectively or retroactively upon good cause shown." *Argento v Wal-Mart Stores, Inc.,* 66 A.D.3d 930, 931-32, 888 N.Y.S.2d 117 (2d Dep't 2009) (internal citations omitted) (citing

cases).[2]  Given the circumstances of this case, Movants are confident they would be permitted to move for certification were the case permitted to proceed in the state court.[3]  Indeed, even the Debtors, who argue that the class certification motion should have been made years ago, simultaneously argue that certification at this juncture is premature because the parties never fully engaged in discovery.   (Obj. at 22 n.9, 29)[4]

## ARGUMENT

### I.    CLASS CERTIFICATION SHOULD BE GRANTED.

Despite the length of their brief, Debtors' arguments opposing class certification boil down to the following three:  1) the Motion is untimely, 2) Movants are independent contractors rather than employees, and 3) the question whether promoters are independent contractors is too individualized an inquiry for class treatment.  None of these arguments is persuasive.

---

[2]    *See also Rodriguez v Metropolitan Cable Communications*, 2010-02914, 2010 N.Y. App. Div. LEXIS 9335, (2d Dep't Dec. 14, 2010); *Cardona v. Maramont Corp.*, 602877-2007, 2009 N.Y. Misc. LEXIS 5010, (N.Y. Sup. Ct. Nov. 12, 2009); *In re DeBlasio v. City of New York*, 24 Misc. 3d 789, 883 N.Y.S.2d 843 (N.Y. Sup. Ct. 2009); *In re Cablevision Sys. Corp. Shareholders Litig.*, 21 Misc. 3d 419,431, 868 N.Y.S.2d 456, 466 (N.Y. Sup. Ct. 2008) ("One of the strengths of CPLR Article 9 is its flexibility.'  Thus, with respect to an application for attorneys' fees, unless the protesting party makes 'a showing of actual prejudice,' class action determination may be delayed until the hearing of the application.") (internal citation omitted); *Caesar v. Chemical Bank*, 118 Misc. 2d 118, 460 N.Y.S.2d 235 (N.Y. Sup. Ct. 1983), aff'd 106 A.D.2d 353, 483 N.Y.S.2d 16, 1984 N.Y. App. Div. LEXIS 21390 (N.Y. App. Div. 1st Dep't 1984).  *Cf. Sanders v. Lum's, Inc.*, 76 F.R.D. 1, 2 (S.D.N.Y. 1976) (in discussing a federal rule equivalent, stating "[w]hile the language of such provisions may seem on its face to support defendants' claim of untimeliness, the application of these provisions by the courts has produced a great deal of flexibility in adapting to the particular fact patterns of individual cases").

[3]    Of course, as Defendants recognize, since Movants have been dragged into the Bankruptcy court, Bankruptcy Rule 7023 and Federal Rule of Evidence 23 apply, and under these rules there is no 60-day provision.  Accordingly, there is no need for the Court to assess whether a state court would waive or extend the 60-day deadline.

[4]    In an exceptional example of self-serving logic, Debtors complain that they have only limited facts upon which to oppose the Motion (Obj. at 22 n.9), in part, because Tribune chose not to depose the Movants while the state court action was still active.

## A.    The Circumstances Of This Case Favor Class Certification.

The class members are people who worked for less than minimum wage passing out free AM New York papers on city streets and at subway stations.  Their written contract states that they worked for LBN, rather than Tribune.[5]  Accordingly, the class members are unlikely to be aware that they could have filed a proof of claim against Debtors.[6]  In *In re Bally Total Fitness of Greater New York, Inc.*, the court explained that one of the situations in which "'[t]he filing of a class proof of claim is consistent with the Bankruptcy Code'" is where "there has been no actual or constructive notice to the class members of the bankruptcy case and Bar Date."  402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009).  *See In re First Interregional Equity Corp.*, 227 B.R. 358, 371 (Bankr. D.N.J. 1998) (where unnamed class members are a group who are in large part unknown creditors, then the class device may provide the only form of notice to such parties).

Debtors do not–and could not–argue that any class members, other than the Movants, were given individual notice of Tribune's bankruptcy and the bar date.  While Debtors suggest that the current and former AM New York promoters in the class should have been alerted by notice of Debtors' bankruptcy in the *Wall Street Journal, The New York Times,* the *Los Angeles Times* or the *Chicago Tribune* (Obj. at 17), this is clearly unrealistic.[7]  It certainly cannot be said

---

[5]    In actuality, LBN and Tribune were joint employers; however, this was not expressly stated in the contract.

[6]    It should be noted that Debtors have not identified any promoters who individually filed proofs of claims other than those individuals represented by Movants' counsel. Thus, the preservation of the claims of the unnamed class members can only be achieved by certifying the class proof of claim.

[7]    Of course, even were each of the class members a regular subscriber to such papers and read about Debtors' bankruptcy, such information still would not have clearly explained the basis of the class members' claims against Tribune, as would be provided in a Rule 23(c)(2) notice.

that the "putative unnamed class members have **clearly** received" notice.  *See In re Sacred Heart Hospital*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (added emphasis).[8]

The absence of notice largely distinguishes this case from those cited by Debtors where there was no dispute that putative class members had received notice and could have filed individual proofs of claim.[9] (Obj. at 10-12)

**B.     The Motion Should Not Be Denied For "Untimeliness."**

"There is no bright-line rule setting the clock within which a claimant must move for certification.  Rather, the facts determine when a delay is undue."  *Rodriguez v. Tarragon Corp. (In re Tarragon Corp.)*, Case No.: 09-10555 (DHS), 2010 Bankr. LEXIS 3410, at *8 (Bankr. D.N.J. Sept. 24, 2010).  *See, e.g., In re Spring Ford Indus*., Chapter 11, Bankruptcy No. 02-15015DWS**,** 2004 Bankr. LEXIS 112, at *15, *20 (Bankr. E.D. Pa. Jan. 20, 2004) (finding certification motion filed one year after class proof of claim and after confirmation of the plan was not untimely).  As the court stated in *In re Kaiser Group International*, "[w]e do not believe that the timing of the bankruptcy filing should be determinative of whether a class proof of claim should be permitted."  278 B.R. 58, 63 (Bankr. D. Del. 2002).

---

[8]     Debtors' argument that they had no obligation to send individual notice (despite the fact that they have access to the names and addresses of their promoters) misses the point. The point is simply whether class members actually received notice.  *In re Sacred Heart*, 177 B.R. at 22.

[9]     *See, e.g, In re Bally Total Fitness*, 402 B.R. 616 (denying class certification where "Debtors sent formal Bar Date notices to all present employees as well as all former employees"); *Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, Chapter 11, Case No. 95 B 44821 (JLG), 1997 Bankr. LEXIS 825, at *35 (Bankr. S.D.N.Y. June 11, 1997) (WARN case involving former employees all of whom had received "adequate notice"); *In re Bicoastal Corp.*, 133 B.R. 252, 255 (Bankr. M.D. Fla. 1991) ("[I]t is without dispute that the 'members' of the purported class received more than ample and adequate notice of the bar date  . . . .").  *Accord In re First Interregional Equity*, 227 B.R. at 371 ("[I]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable").

Debtors' claim that they would be "prejudiced" by certification (Obj. at 13) is disingenuous to say the least. A plan has not been confirmed or put into place (indeed, voting has yet to be completed). Furthermore, as courts have held, Debtors would not be prejudiced by class certification because they unquestionably "had notice of the existence of the class claim before the bar date." *In re Kaiser,* 278 B.R. at 63-64; *Spring Ford*, 2004 Bankr. LEXIS 112 at *20 (certification motion made after plan confirmation was not untimely because Debtor was "fully aware" of the class claim).[10] Not only were Movants' class claims set forth in their complaint in the state court action, they filed class proofs of claim prior to the bar date.

Debtors' suggestion that there is something inherently unfair about applying the class proof claim to the unnamed class members (Obj. at 14-15) is unavailing. "If the class claim is certified, then the claims of all the members of the class are incorporated in the proof of claim that was timely filed. This is inherent in class actions. For example, the filing of a class action tolls the statute of limitations otherwise applicable to all class members in their individual capacities." *In re Kaiser*, 278 B.R. at 63-64. *See also In re American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988) ("If the court certifies the class, . . . the self-appointed agent has become 'authorized', and the original filing is effective for the whole class (the principals).").

---

[10] Tribune's citation of cases in which the debtor was prejudiced by the delay in seeking certification are distinguishable. *See, e.g., Rodriguez*, 2010 Bankr. LEXIS 3410 (motion made after Plan of Reorganization had been confirmed); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1 (S.D.N.Y. 2005) (class certification raised after plan already had been submitted for a vote; moreover, court also found that the case failed to meet requirements of Rule 23); *In re Woodward & Lothrop Holdings, Inc*., 205 B.R. 365, 370-71 (Bankr. S.D.N.Y. 1997) (no certification motion was ever made; rather, the issue was raised "only indirectly and defensively in response to the debtor's post confirmation objection to his claim. In the interim, the debtor sold all of its assets, confirmed a liquidating plan, and made an approximate 70% distribution to unsecured creditors."). As previously noted, voting on the plan has not even been completed in this case.

**C.     The Ultimate Question Of Whether Promoters Are Independent Contractors Goes Directly To The Merits.**

Debtors' primary argument–that promoters are not employees but independent contractors—goes to the merits and thus is inappropriate at this juncture. *Behrend v. Comcast Corp.,* 264 F.R.D. 150, 155 (E.D. Pa. 2010) ("Although a district court inquires into the merits of the case insofar as 'arguments that go to the merits of a plaintiff's cause of action . . . also implicate the class certification decision,' such an inquiry is merely preliminary. A plaintiff need not establish by a preponderance of the evidence the merits of its claims at the class certification stage, and any inquiry into the merits that is not necessary to a Rule 23 decision is precluded.") (internal citations omitted).  The Movants are not required to prove their case at this time, but simply show that the Rule 23 requirements are satisfied.

Moreover, Debtors' arguments are weak.  First, Debtors point out that promoters signed "independent contractor agreements."    However, the mere existence of such agreements repeatedly has been held not to be wholly indicative of the parties' relationship.[11]    *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) ("An employer's characterization of an employee [as an independent contractor] is not controlling . . ."); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1050 (2d Cir. 1988) ("[A]n employer's self-serving label of workers as independent contractors is not controlling."). *Cf. In re Schulman Transp. Enter.,* 744 F.2d 293, 295 (2d Cir. 1984) ("An employee does not become an

---

[11]     Similarly, Debtors erroneously assert that if Movants' tax returns state that they were "self-employed," Movants would be "judicially estopped" from arguing they were employees. (Obj. at 25 n.11) Courts are clear that while statements on tax returns are considered, "it is generally not singularly dispositive." *Gagen v. Kipany Prods., Ltd.*, 27 A.D.3d 1042, 1043, 812 N.Y.S.2d 689, 691 (3d Dep't 2006). *See also Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 547-48 (E.D.N.Y. 2007) ("Whether the employer and/or the worker represented on federal tax forms that the worker was an employee or an independent contractor is a significant, but not controlling, consideration.").

independent contractor simply because a contract describes him as such.").  In any event, to the extent the language in the contracts is a factor to be considered, it presents the same factor for all promoters.

Second, Debtors list all of the facts they "believe they can prove . . . through discovery" that demonstrate promoters are independent contractors.[12]  (Obj. at 29-31)  Significantly, those promised facts apply to promoters as a whole and do not present any individualized questions. Moreover, Debtors obviously cannot defeat class certification by promising to contradict Movants' facts at some future date.

> **D.    The Question Of Whether Promoters Are Independent Contractors Is A Common One That Should Be Decided On A Class-Wide Basis.**

Movants' submissions plainly establish that whether promoters are independent contractors is a class-wide question subject to common proof.  Both the "Promoters Rules" and the seven declarations detail the control unilaterally exercised over promoters as a group.  Even Debtors' counterstatement of facts apply to promoters as a group.  (*See* Obj. at 30-31)  Thus, courts have found in cases like this one, where the employer made a blanket decision to categorize a particular group as independent contractors, that the employer's wholesale categorization presents a common question appropriate for class treatment.  (*See* Mot. at 16)[13]

---

[12]    Debtors do not explain why they would need discovery in order to produce such "proof" since it seems to be information within their possession and/or control.

[13]    *See also Hart v. Rick's Cabaret Int'l Inc.*, 09 Civ. 3043 (JGK), 2010 U.S. Dist. LEXIS 137129, at *21 (S.D.N.Y. Dec. 17, 2010) ("As other courts have previously found, the propriety of the defendants' blanket categorization of the plaintiffs as independent contractors, and, if improper, the legal consequences of that categorization, by their nature tend to predominate over any individual issues." [also finding commonality and typicality for the same reason]).

Nevertheless, Debtors argue that the question whether promoters are independent contractors is such an individualized question that it forecloses commonality, typicality,[14] predominance and superiority.[15]  In making this argument, Debtors rely heavily on *Edwards v. Publishers Circulation Fulfillment, Inc*., 268 F.R.D. 181 (S.D.N.Y. 2010) and a number of other distinguishable cases.

In *Edwards,* the court denied a certification motion brought by a class of present and former drivers who used their own vehicles to deliver newspapers for the defendant.[16]  Unlike Movants—who submitted seven declarations describing their common experiences as

---

[14]    Debtors also make an additional argument regarding typicality.  Without naming any individuals and without submitting any evidence, Debtor argues that certification should be defeated because they "have a good-faith basis to believe that they will be able to show that at least some of the proposed class members" were terminated for "throwing away or otherwise discarding left over copies of AM NewYork."  (Obj. at 34)  However, even assuming that Debtors could actually prove this, it would not support denying class certification.  At best, such proof could conceivably provide the basis for arguing that one (or more) of the seven named plaintiffs would not be an adequate class representative.  *See, e.g., Mendoza v. Casa De Cambio Delgado, Inc.*, 07CV2579(HB), 2008 U.S. Dist. LEXIS 61557, at *20 n.7 (S.D.N.Y. Aug. 12, 2008) (Obj. at 34).

[15]    Debtors do not dispute that Movants have satisfied the requirements of numerosity and adequacy of class counsel.  (Obj. at 21)

[16]    Debtors also cite a slew of distinguishable cases from the National Labor Relations Board.  (Obj. at 27)  *See St. Joseph News-Press and Teamsters Union Local 460*, 270 N.L.R.B. 1200 (2005) (board found it compelling that carriers could solicit new customers on their own, were free to hold other jobs and deliver other products (even competing papers) on their routes, and performed their duties without supervision); *American Publ'g Co. of Michigan*, 308 N.L.R.B. 563 (1992) (carriers can and do deliver products other than the employer's while on their routes, they can solicit new customers, no work rules for the drivers and they are not supervised on their routes, they do not wear any uniforms or employer insignia); *A.S. Abell Publ'g Co*., 270 N.L.R.B. 1200 (1984) (hawkers were permitted to sell competitors'' products, their income was the profit made on the sale of newspapers, most of the their activities were not supervised or even observed by anyone from the employer, and hawkers wore no employer insignia); *The Daily Mining Gazette*, 273 N.L.R.B. 350 (1984) (carriers could negotiate their rates of compensation, ran their routes without supervision, could deliver other products on their routes, were free to run their routes in whatever order they wished, and were not required to display the employer's insignia).  These cases all involve significantly less control than that exercised over promoters here.

promoters—the *Edwards* plaintiffs relied instead on their Independent Contractor Agreements ("ICAs") and certain training materials. The court found "plaintiffs' effort to avoid consideration of what actually occurred with each putative class member by reference to the form ICA and the training materials is insufficient to show that there are common issues, that they predominate, or that the named plaintiffs' claims are typical of the putative class members." *Id.* at 184. The court further found that the plaintiffs' description of the contents of the ICAs was "misleading, reflect serious distortions of the terms of the ICA, or are unsubstantiated." *Id.* at 186. Ultimately, the court held that the ways in which the ICA applied to each class member in practice was an individual question that defeated class certification.[17]

Here, Movants submitted declarations that detail the control actually exercised over their performance as promoters and also submitted the "Promoters Rules" that applied to all promoters. (*See* Mot. at 5-7) Promoters are required to be at their posts at a scheduled time where their zone leaders check them in, they are required to wear a red vest bearing the logo "AM NY" while they are working, they are given a specific number of papers to distribute during their shifts, and not only are they supervised during their shifts, promoters cannot leave their posts until a zone leader checks them out at the end of their shifts.[18] (Mot. at 5-7) Each of

---

[17]    Similarly in *Bamgbose v. Delta-T Group*, the court denied the plaintiffs' motion for conditional certification under the FLSA because "[t]he record demonstrates that the healthcare workers have a wide array of skills, responsibilities, and experiences with [the defendant] and its clients." 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (Obj. at 32 n.12). Because the plaintiffs had such a variety of responsibilities and experiences, the court found it could not evaluate the employment relationship on a collective basis. *Id.* Such is not the case here.

[18]    The fact that promoters must check out with their supervisor before ending each and every shift directly belies Debtors' contention that "Movants have not presented any direct evidence of day-to-day control." (Obj. at 28) While Debtors question the veracity of this statement (Obj. at 31), the "Promoter Rules," a document produced during discovery, plainly states: "Wait for your zone leader to sign you out. If you leave without signing out, you will not be paid." (Palmer Decl., Ex. E)

the declarants state that his or her experiences were similar to all AM New York promoters.[19]

The Promoter Rules substantiate the Movants' descriptions, providing, *inter alia,* a dress code

(including wearing the AMNY vest), prohibiting promoters from inserting anything into the

papers or handing out any other products on their shifts, and requiring promoters to be signed out

by their zone leaders.[20]  (Palmer Dec, Ex. E)

Similarly, Debtor's argument that Movants have presented "no proof" that Tribune was a

joint employer with LBN (Obj. at 24 n.10), is not a valid argument against certification.  *See*

*Bogosian v. All Am. Concessions*, 06-CV-1633 (RRM)(RML), 2008 U.S. Dist. LEXIS 78625, at

\*19-20 (E.D.N.Y. Sept. 29, 2008) (whether defendant entities were joint employers was a

question that was common to all members of the putative class).

Further, the Movants have evidence that AM New York/Tribune was one of the Movants'

employers. For example, Steve Petersheim is AM New York's Circulation Director. *See*

http://www.amny.com/about-amnewyork-1.1112282.  In performing this job, Mr. Petersheim ran

the division in which the promoters' worked, ran employee orientations, and even hired some of

the Movants.  *See* Reid Decl. ¶ 4; Serrao Decl. ¶ 5; Evans Decl. ¶ 4; McLaughlin Decl. ¶ 4; G.

Grant Decl. ¶ 5; Heywood Decl. ¶ 4; L. Grant Decl. ¶ 5.  Similarly, the division of AM New

York in which promoters worked was called "3rd Floor Promotions".  *See* Reid Decl. ¶¶ 3-4;

---

[19]    Reid Decl. ¶ 24; Serrao Decl. ¶ 23; Evans Decl. ¶ 24; McLaughlin Decl. ¶ 23; G. Grant Decl. ¶ 26; Heywood Decl. ¶ 25; L. Grant Decl. ¶ 24.

[20]    In a desperate attempt to create differences where none exist, Debtors complain that some of the declarants state that Tribune "wanted" them to distribute all of their copies while others state that Tribune "required" them to distribute all copies.  (Obj. at 29)  However, this exercise in semantics does not get Debtors very far.  First, the totality of the circumstances demonstrate that promoters were employees—not independent contractors.  Second, whether Tribune required or encouraged them to do so, each of the declarants clearly felt pressured to distribute all of their papers before they could leave their posts and frequently stayed longer than their three-hour shifts to do so.  *See* Reid Decl. ¶ 18; Serrao Decl. ¶ 15; Evans Decl. ¶ 17; McLaughlin Decl. ¶ 16; G. Grant Decl. ¶ 19; Heywood Decl. ¶ 18; L. Grant Decl. ¶ 17.

Evans Decl. ¶ 5.  Documents produced by the Debtors show that 3rd Floor Promotions is, at the very least, intimately connected with AM New York.  *See* Ex. 1 ((TD/ALLEN 00229) (invoice sent to "AM NEW YORK c/o 3rd Floor Promotions, Attn: Steve Petersheim, Circ. Director")).

Finally, Mitchell's Newspaper Delivery Service (a/k/a LBN Consulting) would send invoices to AM New York to be reimbursed for the wages of promoters/hawkers.  *See, e.g.* Ex. 2 (TD/ALLEN 00093-00108) (included in the list of employees compensated by AM New York are Movants Bill McNair, Pearl Evans, and James Allen).  Accordingly, the Debtors provided the compensation paid to the movants and other class members.

## CONCLUSION

For the reasons discussed above, as well as the reasons in Movants' original motion papers, Movants respectfully request that the Court grant their request to certify their class proofs of claim.

Dated: January 6, 2011  
      Wilmington, Delaware

Respectfully submitted,

PINCKNEY, HARRIS & WEIDINGER, LLC

 **/s/ Adam Hiller**
Adam Hiller (DE No. 4105)  
Donna Harris (DE No. 3740)  
1220 North Market Street, Suite 950  
Wilmington, Delaware 19801  
(302) 504-1497 telephone  
(302) 442-7046 facsimile

-and-

Michael D. Palmer*
Charles Joseph*
JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, New York 10279
Tel: (212) 688-5640
Fax: (212) 688-2548
mpalmer@jhllp.com
*Admitted pro hac vice

*Attorneys for Movants*