IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                                     : Chapter 11
                                                           :
TRIBUNE COMPANY, *et al.*                                  : Case No. 08-13141 (KJC)
                                                           :
                    Debtors.                               : Jointly Administered
                                                           :
---------------------------------------------------------- : Hearing date: January 20, 2011 @ 10:00 am
                                                           x

**MOTION OF DEUTSCHE BANK TRUST COMPANY AMERICAS, INDENTURE TRUSTEE UNDER THE 1992 INDENTURE, THE 1995 INDENTURE AND THE 1997 INDENTURE FOR ESTIMATION AND TEMPORARY ALLOWANCE OF CLAIM FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018**

Deutsche Bank Trust Company Americas ("DBTCA" or the "Indenture Trustee"), successor indenture trustee under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture (as defined herein), by and through its undersigned counsel, McCarter & English, LLP, hereby files this Motion for Estimation and Temporary Allowance of its Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018.  In support thereof DBTCA states as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 502(b) and Bankruptcy Rule 3018.

**BACKGROUND**

1.   On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Since that time, the Debtors have continued to operate their

businesses and manage their properties as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

2. On December 18, 2008, the United States Trustee for the District of Delaware appointed a committee of unsecured creditors (the "Committee"). DBTCA was appointed to the Committee, which presently consists of eight members.

## THE SOLICITATION ORDER

3. On December 9, 2010, the Court entered an *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agent's Retention and Allocation of Costs of Same; and (X) Granting Related Relief* [D.I. #7126 modified on 12/16/10 at D.I. #7215] (the "Solicitation Order"). Pursuant to the Solicitation Order, parties seeking to have claims allowed for voting purposes were required to file a motion on or before Saturday, January 8, 2011.

4. Following the entry of the Solicitation Order (as amended), the solicitation process commenced with respect to three competing plans (collectively the "Plans") as follows:

- Joint Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its Managed Entities, DBTCA, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and

ME1 11061964v.1

> Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Pre-LBO Debtholder Plan");

- Joint Plan of reorganization proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. ("Debtor/Committee/Lender Plan"); and

- Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. (the "Bridge Lender Plan").

5.      On December 20, 2010, the Court entered a *Discovery and Scheduling Order for Plan Confirmation* [D.I. # 7239]. The confirmation hearing is scheduled to begin on March 7, 2011.

### DBTCA'S CLAIMS

6.      DBTCA serves as the Indenture Trustee under the following indentures issued by Tribune:

**A.      The 1992 Indenture**

7.      DBTCA is the indenture trustee under that certain indenture dated as of March 1, 1992, as amended and supplemented (the "1992 Indenture"), by and between Tribune and Continental Bank, N.A, as the predecessor indenture trustee.

8.      On or about June 5, 2009, DBTCA filed a proof of claim for claims under the 1992 Indenture in the amount of $120,500.00. This claim was recorded by the Debtors as Claim #3526. A copy of Claim #3526 (without attachments) is annexed hereto as Exhibit "A".

9.      Under Section 6.07 of the 1992 Indenture, and as noted in the claim, Tribune is legally obligated:

> (1) to pay to the Trustee from time to time reasonable compensation in Dollars for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust); (2) except as otherwise expressly provided herein, to reimburse the

> Trustee in Dollars upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its negligence or bad faith; and (3) to indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trust, or trusts hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

**B.    The 1995 Indenture**

10.    DBTCA is the indenture trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1995 Indenture"), by and between Tribune and First Interstate Bank of California, as the predecessor indenture trustee. Under the 1995 Indenture, two series of notes were issued: (i) 7.25% Debentures due March 1, 2013; and (ii) 7.50% Debentures due July 1, 2023.

11.    On or about June 5, 2009, DBTCA filed a proof of claim for the 7.25% Debentures in the amount of $83,702,999.21. This claim was recorded by the Debtors as Claim #3525. A copy of Claim #3525 (without attachments) is annexed hereto as Exhibit "B". On that same date, DBTCA filed a proof of claim for the 7.50% Debentures in the amount of $102,000,520.83. This claim was recorded by the Debtors as Claim # 3531. A copy of Claim #3531 (without attachments) is annexed hereto as Exhibit "C".

12.    Under section 607 of the 1995 Indenture, and as noted in the claims, Tribune is legally and contractually obligated to pay the Trustee reasonable compensation for services rendered by it as Trustee, to reimburse the Trustee upon its request for all reasonable expenses,

and to indemnify the Trustee for, and to hold it harmless against any loss, liability or expense incurred.

C.  **The 1997 Indenture**

13. DBTCA is the Indenture Trustee under that certain indenture dated as of January 1, 1997, as amended and supplemented (the "1997 Indenture"; collectively, the 1992 Indenture, the 1995 Indenture and the 1997 Indenture are referred to herein as the "Indentures"), by and between Tribune and Bank of Montreal Trust Company.  Under the 1997 Indenture, three series of notes were issued: (i) 4.875% Debentures due August 15, 2010; (ii) 5.25% Debentures due August 15, 2015; and (iii) 5.67% Debentures due December 8, 2008.

14. On or about June 5, 2009, DBTCA filed the following claims:

(i) A claim for the 4.875% Debentures in the amount of $456,946,875.00. This claim was recorded by the Debtors as Claim # 3528.  A copy of Claim # 3528 (without attachments) is annexed hereto as Exhibit "D";

(ii) A claim for the 5.25% Debentures in the amount of $335,486,250.00. This claim was recorded by the Debtors as Claim # 3527.  A copy of Claim # 3527 (without attachments) is annexed hereto as Exhibit "E"; and

(iii) A claim for the 5.67% Debentures in the amount of $69,812,899.00. This claim was recorded by the Debtors as Claim # 3532.  A copy of Claim # 3532 (without attachments) is annexed hereto as Exhibit "F".

15. Under section 6.07 of the 1997 Indenture, and as noted in the claims, Tribune is legally obligated to pay the Trustee reasonable compensation in dollars for all services rendered thereunder, to reimburse the Trustee for all reasonable expenses, and to indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense.

16. As noted above, DBTCA has filed Claims ##3525, 3526, 3627, 3528, 3531 and 3532 in the above captioned bankruptcy case (collectively referred to as the "Claims")[1]. Each of the Claims expressly asserted the contractual right to recover fees, costs and all other amounts due or incurred by DBTCA in its role as Indenture Trustee under the Indentures.. *See* Sections 2(c) and 2(d) of the Claims. There have been no objections to the Claims.

17. As of December 31, 2010, DBTCA has incurred fees and expenses in an amount no less than $2,900,000[2] in its capacity as Indenture Trustee under the Senior Notes (the "DBTCA Expense Claim"). This amount includes legal fees and disbursements and fees incurred by DBTCA in connection with its role as Indenture Trustee under the Senior Notes.

### CLASSIFICATION OF DBTCA EXPENSE CLAIM AND TEMPORARY ALLOWANCE OF CLAIM

18. The Debtor/Committee/Lender Plan classifies Senior Noteholder Claims as a Class 1E Claim and deems those claims to be allowed in the aggregate amount of $1,283,055,743.77 (the "Allowed Amount") less any Senior Noteholder Claims held by Morgan Stanley Capital Services, Inc. or its Affiliates and Related Persons. *See* Section 3.2.5 of the Debtor/Committee/Lender Plan. The Allowed Amount reflects the total amount for unpaid principal and interest as of the Petition Date for the Senior Notes. It does not include any

---

[1] DBTCA was also the successor Indenture Trustee on behalf of the holders of the (i) 6.61% Debentures due September 15, 2027; and (ii) 7.25% Debentures due November 15, 2096, under that certain indenture dated as of March 19, 1996, as amended and supplemented by and between The Times Mirror Company, n/k/a The Tribune Company and Citibank, N.A., as the predecessor indenture trustee (the "1996 Indenture") . As Indenture Trustee, DBTCA filed Claims ##3529 and 3530 for the two series of notes issued under the 1996 Indenture . Thereafter, DBTCA resigned on or about June 8, 2009 and Law Debenture Trust Company of New York ("Law Debenture") succeeded as indenture trustee. Tribune remains contractually obligated under the 1996 Indenture to reimburse DBTCA for its services rendered under the 1996 Indenture. DBTCA was also the Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 issued in April 1999 by Tribune Company (the "PHONES") until it resigned on December 26, 2008.

[2] This amount represents the fees and expenses incurred as of December 31, 2010, a significant portion of which are related to DBTCA's role as a member of the Committee. The DBTCA Expense Claim continues to increase as fees and expenses accrue in connection with the confirmation process.

ME1 11061964v.1

amounts for fees and expenses incurred by the indenture trustees for the Senior Notes (DBTCA and Law Debenture) for their respective services in their capacities as indenture trustee

19.     Accordingly, pursuant to the Solicitation Order, DBTCA is filing this Motion and seeking to allow the DBTCA Expense Claim as a Class 1F Claim in the amount of $2,900,000 for voting purposes.[3]

## ARGUMENT

20.     In accordance with the Disclosure Statement, the Solicitation Order and Bankruptcy Rule 3018(a), DBTCA requests that the Court temporarily allow the DBTCA Expense Claim as an "Other Parent Claim" for voting purposes.

21.     Pursuant to section 1126(a) of the Bankruptcy Code, a "holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."  11 U.S.C. § 1126(a). Further, section 502(a) provides that, a "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).

22.     Where a plan of reorganization would otherwise infringe upon a creditor's rights, Bankruptcy Rule 3018 permits a judge to allow the claim for voting purposes.  Fed. R. Bank. P. 3018(a) ("the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."); *See In re Century Glove, Inc.*, 88 B.R. 45 (Bankr. D. Del. 1988).  The bankruptcy court has broad discretion in applying Rule 3018.  *See Pension Benefit Guarantee Corp. v. Enron Corp.*, No. 04 Civ. 5499, 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004); *see also Bittner v. Bome Chemical*

---

[3] Nothing stated in this Motion should be deemed as a waiver of the right of the Indenture Trustee pursuant to the Indentures to assert a charging lien against any recoveries it may receive on account of the noteholders.  Rather, the Indenture Trustee reserves all rights to assert such a charging lien against any distributions/recoveries it may receive on account of the noteholders.

*Co.*, 691 F.2d 134, 136 (3d Cir. 1982); *In re Kivler*, 2009 WL 1545821, at *1 (Bankr. D. N.J. 2009).

23. The obligations set forth in the Indentures, including the obligation of Tribune to reimburse the indenture trustee for its fees and costs post-petition, are enforceable in bankruptcy. *See In re Oakwood Homes Corp.*, 394 B.R. 352, 356 (Bankr. D. Del. 2008). An indenture trustee is entitled to reimbursement of its expenses, including attorneys' fees, in accordance with the terms of the indenture. *See, e.g., In re Flight Transp. Corp Litig.*, 874 F.2d 576, 583 (8th Cir. 1989) (holding that the indenture trustee has a separate contractual claim for its fees and expenses); *In re W.T. Grant Co.*, 119 B.R. 898, 900 (S.D.N.Y.1990) ("[a]n indenture trustee is contractually entitled to payment for performance of its duties regardless of whether its efforts benefited the estate.").

24. Tribune's obligation to reimburse DBTCA for its fees and expenses is a contractual obligation under the Indentures separate and apart from the principal and interest owed to the noteholders.

25. Accordingly, the DBTCA Expense Claim should be classified with other similar contractual obligations of the Debtors, *i.e.* as an "Other Parent Claim" in Class 1F of the Debtor/Committee/Lender Plan. *See John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs*. 987 F.2d 154, 159 (3d Cir. 1993) (similar claims should be classified together); *In re Combustion Eng'g, Inc*., 391 F.3d 190, 239 (3d Cir. 2004) ("Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims"). The Debtors cannot unilaterally, and without support, classify claims that are not substantially similar, especially where such mis-classification limits the distributions to the class or extinguishes the claim in its entirety. There

are "limits on a plan proponent's classification freedom." *See In re Dow Corning Corp.*, 244 B.R. 634, 644 (Bankr. E.D. Mich. 1999) (citing cases). Only claims that are "substantially similar" should be classified together. 'Substantially similar' has been defined as including claims that are "similar in legal nature, character or effect." *Id*, citing, 7 *Collier on Bankruptcy* ¶1122.03[3] (15th Ed. Rev. 1999). Dissimilar claims may not be classified together. *Aetna Cas. & Surety Co. v. Clerk, U.S. Bankr. Ct. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996).

26. The proponents of the Debtor/Committee/Lender Plan implicitly recognized that the DBTCA Expense Claim should be classified as a Class 1F Claim by defining the Allowed Amount as simply the unpaid principal and interest of the Senior Notes and not including any expense claims of the indenture trustees. Previously, the Debtors, Committee and the Lenders were aware of the amount of the fees and expenses of Law Debenture and agreed to pay such fees in connection with the First Amended Plan of Reorganization [D.I. #4690][4]. Accordingly, the proponents' decision not to include any portion of the indenture trustees' fees and expenses (or even reference its existence within Class 1E) demonstrates the Debtors' belief that those claims should be classified as Class 1F Claims.

27. The Court of Appeals for the Second Circuit recognized that an unsecured claim for post-petition fees, authorized by a valid pre-petition contract, is allowable in bankruptcy. *Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143 (2d Cir. 2009), citing *Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 553 (2007).

---

[4] Section 9.14 of the Plan provided that: "[o]n the Plan Effective Date, there shall be allowed and reimbursed to Centerbridge and Law Debenture (i) up to $5.25 million in the aggregate on account of reasonable and documented fees, costs and expenses of their legal and financial advisors and the reasonable and documented internal fees, costs and expenses of Law Debenture, in each case in connection with the Bankruptcy Cases incurred on or after the Petition Date and on or prior to the date of the Agreement and (ii) any additional reasonable and documented fees, costs and expenses of their legal and financial advisors incurred in connection with the Bankruptcy Cases…"

ME1 11061964v.1

28.     As noted above, DBTCA has incurred fees and costs in an amount not less than $2,900,000 in its capacity as Indenture Trustee.[5]  The DBTCA Expense claim (a contractual obligation to reimburse fees and expenses) is not similar in legal nature, character or effect as the claims in the Senior Noteholder class (a claim based on a note).  Rather, the DBTCA Expense Claim is substantially similar to the claims in the Other Parent Claims class and therefore should be allowed as an "Other Parent Claim" (Class 1F) claim under the Debtor/Committee/Lender Plan.[6]

29.     Accordingly, DBTCA requests that the Court enter an order temporarily allowing the DBTCA Expense Claim as an Other Parent Claim[7] in the amount of no less than $2,900,000 for purposes of voting on the Plans.[8]

[Remainder of page left intentionally blank]

---

[5] DBTCA respectfully refers to the Notice of Lender Fee Payment Summaries [D.I. ## 2407, 4206, 5211, 6129] and the most recent omnibus fee application order [D.I. #6078] as a comparison of the amount of fees and expenses that have been incurred and paid by other parties in this case (*i.e.* the Senior Lenders and retained professionals).

[6] Similarly under the Bridge Plan, the DBTCA Expense Claim should be allowed as a Class 1G Claim ("Other Parent Claim").

[7] DBTCA reserves the right to assert that all or a portion of this claim should be entitled to treatment as an administrative expense claim.

[8] DBTCA expressly reserves the right to assert a supplemental or final claim for the full amount of its unpaid expenses and fees at the appropriate time.

ME1 11061964v.1

**WHEREFORE**, DBTCA respectfully requests that the Bankruptcy Court enter an Order temporarily allowing DBTCA's Expense Claim for voting purposes and granting DBTCA such other and further relief as is just.

Dated: January 7, 2011  **McCARTER & ENGLISH, LLP**
Wilmington, DE

By: /s/ Katharine L. Mayer
Katharine L. Mayer (DE # 3758)
McCarter & English, LLP
405 N. King Street, 8th Floor
P.O. Box 111
Wilmington, DE 19899
Telephone: (302) 984-6300
Facsimile: (302) 984-6399

-and-

David J. Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6800
Fax: (212) 609-6921
dadler@mccarter.com

*Counsel for Deutsche Bank Trust Company Americas*