**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 Cases |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Objection deadline:  January 13, 2011 @ 4:00 pm** |
| | : | **Hearing date:  January 20, 2011 @ 10:00 am** |

---------------------------------------------------------x

**LAW DEBENTURE TRUST COMPANY OF NEW YORK'S MOTION
FOR ESTIMATION AND CLASSIFICATION OF CLAIM FOR
VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018**

Law Debenture Trust Company of New York ("Law Debenture" or "Indenture Trustee"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096 (as amended, the "1996 Indenture"), by and through its undersigned counsel, hereby respectfully submits this motion (the "Motion") pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for estimation and classification of its claim for voting purposes.  In support of its Motion, Law Debenture respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 502(b) and Bankruptcy Rule 3018.

**BACKGROUND**

2. On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3. The Debtors have remained in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

**THE SOLICITATION ORDER**

5. On December 9, 2010, the Court entered an *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief* (the "Solicitation Order"). The Solicitation Order was modified on December 16, 2010 [Docket No. 7215].

6. The Solicitation Order directs parties seeking to have claims allowed or reclassified for voting purposes to file a motion seeking such relief on or before Saturday,

January 8, 2011. The Solicitation Order also set the objection deadline with respect to such motion for January 13, 2011 at 4:00 p.m. and the hearing for January 20, 2011 at 10:00 a.m.

7.  Following the entry of the Solicitation Order (as amended), solicitation commenced with respect to the three competing plans (collectively the "Plans") being considered as follows:

- Joint Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Noteholder Plan");
- Joint Plan of Reorganization proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A (the "Debtors/Committee/Lender Plan"); and
- Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. (the "Bridge Lender Plan").

8.  On December 20, 2010, the Court entered a Discovery and Scheduling Order for Plan Confirmation, scheduling the confirmation hearing to begin on March 7, 2011 [Docket No. 7239].

## LAW DEBENTURE'S CLAIMS

9.  Law Debenture serves as successor indenture trustee under the 1996 Indenture, having succeeded Deutsche Bank Trust Company Americas ("DBTCA") as indenture trustee on June 8, 2009. A copy of the 1996 Indenture is attached hereto as Exhibit A. Under the 1996 Indenture, two series of notes were issued: 7 1/4 % Debentures due 2096 and the 6.61% Debentures due 2027.

10.  Pursuant to Section 607 of the 1996 Indenture, Tribune is legally and contractually obligated to pay the Indenture Trustee "for all services rendered by it hereunder."

3

*See* 1996 Indenture, Section 607.  The 1996 Indenture further provides that Tribune will "reimburse the [Indenture] Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the [Indenture] Trustee in accordance with any provision of [the] Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel)."  *Id*.  The 1996 Indenture also provides that Tribune will "indemnify the [Indenture] Trustee for . . . any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder or performance of its duties hereunder . . . ."  *Id.*

11. On or about June 5, 2009, prior to its resignation as indenture trustee under the 1996 Indenture, DBTCA filed a proof of claim for the 7 ¼ Debentures in the amount of $148,715,333.33.  The Debtors recorded the claim as Claim 3529.  A copy of Proof of Claim 3529 is attached hereto as <u>Exhibit B</u>.  On the same date, DBTCA filed a proof of claim for the 6.61% Debentures in the amount of $86,270,366.40.  The Debtors recorded the claim as Claim 3530.  A copy of Proof of Claim 3530 is attached hereto as <u>Exhibit C</u>.

12. As successor trustee, Law Debenture is the current holder of Proofs of Claim 3529 and 3530 (collectively referred to as the "<u>Law Debenture Claims</u>").  Each of the Law Debenture Claims expressly asserts the right to recover fees, costs and all other amounts due incurred by Law Debenture in its role as Indenture Trustee under the 1996 Indenture in addition to the stated amounts of principal and accrued interest.  *See* Sections 2(c) and 2(d) of the Law Debenture Claims.

13. As of December 31, 2010, Law Debenture has incurred reasonable fees and expenses in an amount no less than $6,300,000[1] in its capacity as Indenture Trustee under the

---

[1] This amount includes the fees and expenses incurred as of December 31, 2010.  Fees and expenses continue to be incurred on a daily basis and this amount will increase as the cases move through the confirmation process.

Indenture (the "Law Debenture Expense Claim"). This amount includes reasonable legal fees and disbursements and reasonable fees incurred by Law Debenture in connection with its role as Indenture Trustee under the 1996 Indenture.

14. The Law Debenture Claims, including the Law Debenture Expense Claim, are allowed claims in that there have been no objections asserted against them.

### CLASSIFICATION OF LAW DEBENTURE EXPENSE CLAIM

15. The Debtor/Committee/Lender Plan classifies Senior Noteholder Claims as a Class 1E Claim and deems those claims to be allowed in the aggregate amount of $1,283,055,743.77 (the "Allowed Amount") less any Senior Noteholder Claims held by Morgan Stanley Capital Services, Inc. or its Affiliates and Related Persons. *See* Section 3.2.5 of the Debtor/Committee/Lender Plan. The Allowed Amount reflects the total amount for unpaid principal and interest as of the Petition Date for the Senior Notes. The Allowed Amount, however, does not include the Law Debenture Expense Claim, nor is this claim reflected as a separate voting claim in that or any other class.

16. Accordingly, pursuant to the Solicitation Order and to assert and to preserve its rights under the 1996 Indenture, Law Debenture asserts its allowed Law Debenture Expense Claim and requests entry of an or order to permit it properly to vote the Law Debenture Expense Claim as a Class 1F Claim in the amount of $6,300,000 for voting purposes.[2]

### ARGUMENT

17. In accordance with the Disclosure Statement, the Solicitation Order and Bankruptcy Rule 3018(a), Law Debenture respectfully requests that the Court confirm the

---

[2] Nothing stated in this Motion should be deemed as a waiver of the right of the Indenture Trustee pursuant to the Indentures to assert a charging lien against any recoveries it may receive on account of the noteholders. Rather, the Indenture Trustee reserves all rights to assert such a charging lien against any distributions/recoveries it may receive on account of the noteholders.

5

classification of the Law Debenture Expense Claim as an "Other Parent Claim" for voting purposes.

18.     Pursuant to section 1126(a) of the Bankruptcy Code, a "holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a). Further, section 502(a) provides that, a "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

19.     Where a plan of reorganization would otherwise infringe upon a creditor's rights, Bankruptcy Rule 3018 permits a judge to allow the claim for voting purposes. Fed. R. Bank. P. 3018(a). Bankruptcy Rule 3018(a) provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." *See* Fed. R. Bankr. P. 3018(a). The rule "was designed to give all creditors, even those holding disputed claims, the opportunity to vote and provided the means of accomplishing this." *In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988). To allow disputed claims "to vote on the plans, even though some may be eventually disallowed for purposes of distribution, is more in keeping with the spirit of Chapter 11 which encourages creditor vote and participation in the reorganization process." *In re Amarex*, 61 B.R. 301, 302 (Bankr. W.D. Okla. 1985). Implicit in this procedure for temporary allowance of a claim is the ability of a party to seek proper classification of a claim.

20.     The decision to grant the relief requested pursuant to Bankruptcy Rule 3018 is subject to the reasonable discretion of the court. *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996); *In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994) (Rule 3018(a) contemplates a summary hearing and exercise of court's discretion based on

reasoned analysis). Here, the relief requested by this Motion is justified by the policy goals underlying Bankruptcy Rule 3018.

21. Here, neither the Debtors nor any other party has objected to the Law Debenture Claims. They can not, of course, because the claims bases are contractually explicit and any objection would be frivolous. Tribune's obligation to reimburse Law Debenture for its fees and expenses is a contractual obligation under the 1996 Indenture separate and apart from the principal and interest owed to the noteholders. Though no party has objected to the Law Debenture Expense Claim, if the Court determines or any other party argues that this claim must not be allowed to vote (though its allowance is automatic under section 502 of the Bankruptcy Code), Law Debenture requests that the Court temporarily allow the Law Debenture Expense Claim for voting purposes.

22. Also, the Law Debenture Expense Claim should be classified with other similar contractual obligations of the Debtors, *i.e.* as an "Other Parent Claim" in Class 1F of the Debtor/Lender/Committee Plan. *See John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.* 987 F.2d 154, 159 (3d Cir. 1993) (similar claims should be classified together); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) ("Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims").

23. The proponents of the Debtor/Committee/Senior Lender Plan implicitly recognized that the Law Debenture Expense Claim should be classified as a Class 1F Claim by defining the Allowed Amount as simply the unpaid principal and interest of the Senior Notes and not including any expense claims of the indenture trustees. Previously, the Debtors, Committee and the Senior Lenders were aware of the amount of the fees and expenses of Law Debenture

and agreed to pay such fees in connection with the First Amended Plan of Reorganization [Docket No. 4690].[3] Accordingly, the proponents' decision not to include any portion of the Law Debenture Expense Claim (or even reference its existence within Class 1E) demonstrates the Debtors' belief that that claim should be classified as Class 1F Claims.

24. As noted above, Law Debenture has incurred reasonable fees and costs in an amount not less than $6,300,000 in its capacity as Indenture Trustee.[4] The Law Debenture Expense Claim (a contractual obligation to reimburse fees and expenses) is not similar in legal nature, character or effect as the claims in the Senior Noteholder class (a claim based on a note). Rather, the Law Debenture Expense Claim is substantially similar to the claims in the Other Parent Claims class and therefore should be allowed as an "Other Parent Claim" (Class 1F) claim under the Debtor/Lender/Committee Plan.[5] Notwithstanding the foregoing, it is not clear that Law Debenture may vote its claims or, once voted, in what class the Debtors will tabulate the vote. Accordingly, Law Debenture requests that the Court enter an order classifying the Law Debenture Expense Claim as an Other Parent Claim[6] in the amount of no less than $6,300,000

---

[3]    Section 9.14 of that now abandoned Plan provided that: "[o]n the Plan Effective Date, there shall be allowed and reimbursed to Centerbridge and Law Debenture (i) up to $5.25 million in the aggregate on account of reasonable and documented fees, costs and expenses of their legal and financial advisors and the reasonable and documented internal fees, costs and expenses of Law Debenture, in each case in connection with the Bankruptcy Cases incurred on or after the Petition Date and on or prior to the date of the Agreement and (ii) any additional reasonable and documented fees, costs and expenses of their legal and financial advisors incurred in connection with the Bankruptcy Cases…" Subsequently, on July 22, 2010, pursuant to the terms of Section 9.14, Law Debenture and Centerbridge informed the Debtors that it had incurred additional fees and expenses in the amount of $2,585,975.44 since the date of that certain Settlement Support Agreement.

[4]    Law Debenture respectfully refers to the Notice of Lender Fee Payment Summaries [Docket Nos. 2407, 4206, 5211, 6129] and the most recent omnibus fee application order [D.I. #6078] as a comparison of the amount of fees and expenses that have been incurred and paid by other parties in this case (*i.e.* the Senior Lenders and retained professionals).

[5]    Similarly under the Bridge Plan, the Law Debenture Expense Claim should be allowed as a Class 1G Claim ("Other Parent Claim").

[6]    Law Debenture reserves the right to assert that all or a portion of this claim should be entitled to treatment as an administrative expense claim.

for purposes of voting on the Plans,[7] and, if necessary, temporarily allowing the claim for voting purposes.

**WHEREFORE**, for all of the foregoing reasons, Law Debenture respectfully requests that the Court enter an order (i) approving the classification of Law Debenture's Expense Claim in Class 1F under the Debtor/Lender/Committee plan, (ii) if necessary, temporarily allowing the Law Debenture Expense Claim for voting purposes, and (iii) granting such other and further relief as may be just and proper.

Dated: January 8, 2011
Wilmington, Delaware

**BIFFERATO GENTILOTTI LLC**

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (DE No. 4167)
800 N. King St., Plaza Level
Wilmington, DE 19801
(302) 429-1900

- and -

David S. Rosner
Andrew K. Glenn
Sheron Korpus
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Co-Counsel for Law Debenture Trust Company of New York*

---

[7] Law Debenture expressly reserves the right to assert a supplemental or final claim for the full amount of its unpaid expenses and fees at the appropriate time.