# EXHIBIT A



① 610, 611, 607
② (EKa Times Mirror (Ompany)
③ 1st whereas

---

## THE TIMES MIRROR COMPANY
### TO
### CITIBANK, N.A., TRUSTEE

---

### INDENTURE
### DATED AS OF MARCH 19, 1996

---

LC960780.006

This Cross Reference Sheet, showing the location in the Indenture of the provisions inserted pursuant to Sections 310 to 318(a), inclusive, of the Trust Indenture Act of 1939, is not to be considered a part of the Indenture.

## TRUST INDENTURE ACT CROSS REFERENCE SHEET

| Trust Indenture Act Section | Indenture Section |
|---|---|
| Section 310 (a)(1) | 609 |
| (a)(2) | 609 |
| (a)(3) | 609 |
| (a)(4) | N/A |
| (b) | 608,610 |
| (b)(1) | 608,610 |
| Section 311 (a) | 613 |
| (b) | 613 |
| (c) | 613 |
| Section 312 (a) | 701 |
| (b) | 702 |
| (c) | 702 |
| Section 313 (a) | 703 |
| (b)(1) | 703 |
| (b)(2) | 703 |
| (c) | 703 |
| (d) | 703 |
| Section 314 (a) | 704 |
| (b) | N/A |
| (c)(1) | 704 |
| (c)(2) | 704 |
| (c)(3) | 704 |
| (d) | N/A |
| (e) | 102 |
| Section 315 (a) | 601 |
| (b) | 602 |
| (c) | 601 |
| (d) | 601 |
| (e) | 503 |
| Section 316 (a) (last sentence) | 101 |
| (a)(1)(A) | 512 |
| (a)(1)(B) | 513 |
| (a)(2) | N/A |
| (b) | 508 |
| Section 317 (a)(1) | 503 |
| (a)(2) | 504 |
| (b) | 506 |
| Section 318 (a) | 107 |

Note: This reconciliation and tie shall not, for any purpose, be deemed to be a part of the Indenture.

LC960780.006

# TABLE OF CONTENTS

                                                                                    Page

ARTICLE ONE          Definitions and Other Provisions of General Application ........ 1

   Section 101.      Definitions. ...................................................... 1

   Section 102.      Compliance Certificates and Opinions. ........................... 7

   Section 103.      Form of Documents Delivered to Trustee............................ 8

   Section 104.      Acts of Holders; Record Dates. ................................... 8

   Section 105.      Notices, Etc., to Trustee and Company. ......................... 10

   Section 106.      Notice to Holders; Waiver....................................... 10

   Section 107.      Conflict with Trust Indenture Act. ............................. 10

   Section 108.      Effect of Headings and Table of Contents........................ 11

   Section 109.      Successors and Assigns. ........................................ 11

   Section 110.      Separability Clause............................................. 11

   Section 111.      Benefits of Indenture........................................... 11

   Section 112.      Governing Law. ................................................. 11

   Section 113.      Legal Holidays. ................................................ 11

ARTICLE TWO          Security Forms.................................................. 12

   Section 201.      Forms Generally................................................. 12

   Section 202.      Form of Face of Security........................................ 12

   Section 203.      Form of Reverse of Security..................................... 14

   Section 204.      Form of Legend for Global Securities............................ 18

   Section 205.      Form of Coupon. ................................................ 18

   Section 206.      Form of Trustee's Certificate of Authentication. ............... 19

ARTICLE THREE        The Securities ................................................. 19

   Section 301.      Amount Unlimited; Issuable in Series. .......................... 19

   Section 302.      Denominations. ................................................. 22

   Section 303.      Execution, Authentication, Delivery and Dating. ................ 22

Section 304.          Temporary Securities. ....................................... 24

Section 305.          Registration, Registration of Transfer and Exchange. .......... 25

Section 306.          Mutilated, Destroyed, Lost and Stolen Securities or
                      Coupons. ................................................... 27

Section 307.          Payment of Interest; Interest Rights Preserved.............. 28

Section 308.          Persons Deemed Owners..................................... 29

Section 309.          Cancellation. ............................................. 29

Section 310.          Computation of Interest. ................................... 30

Section 311.          Certificate by a Person Entitled to Delivery of a Bearer
                      Security. ................................................. 30

ARTICLE FOUR          Satisfaction And Discharge ................................ 30

Section 401.          Satisfaction and Discharge of Indenture.................... 30

Section 402.          Application of Trust Money. ............................... 31

ARTICLE FIVE          Remedies .................................................. 32

Section 501.          Events of Default. ........................................ 32

Section 502.          Acceleration of Maturity; Rescission and Annulment. .......... 33

Section 503.          Collection of Indebtedness and Suits for Enforcement by
                      Trustee. .................................................. 33

Section 504.          Trustee May File Proofs of Claim........................... 34

Section 505.          Trustee May Enforce Claims Without Possession of
                      Securities. ............................................... 34

Section 506.          Application of Money Collected. ........................... 34

Section 507.          Limitation on Suits........................................ 35

Section 508.          Unconditional Right of Holders to Receive Principal,
                      Premium and Interest and to Convert. ...................... 36

Section 509.          Restoration of Rights and Remedies. ....................... 36

Section 510.          Rights and Remedies Cumulative............................. 36

Section 511.          Delay or Omission Not Waiver............................... 36

Section 512.          Control by Holders......................................... 36

Section 513.          Waiver of Past Defaults.................................... 37

LC960760.006

ii

Section 514.     Undertaking for Costs. ..........................................................37

Section 515.     Waiver of Usury, Stay or Extension Laws. ...........................37

ARTICLE SIX     The Trustee. ..........................................................................37

Section 601.     Certain Duties and Responsibilities. .....................................37

Section 602.     Notice of Defaults. ................................................................38

Section 603.     Certain Rights of Trustee. ....................................................38

Section 604.     Not Responsible for Recitals or Issuance of Securities. ........39

Section 605.     May Hold Securities or Coupons. .........................................39

Section 606.     Money Held in Trust. ............................................................40

Section 607.     Compensation and Reimbursement. ......................................40

Section 608.     Disqualification; Conflicting Interests. .................................40

Section 609.     Corporate Trustee Required; Eligibility. ..............................40

Section 610.     Resignation and Removal; Appointment of Successor. ...........41

Section 611.     Acceptance of Appointment by Successor. ............................42

Section 612.     Merger, Conversion, Consolidation or Succession to
                 Business. ...............................................................................43

Section 613.     Preferential Collection of Claims Against Company. .............43

Section 614.     Appointment of Authenticating Agent. .................................43

ARTICLE SEVEN  Holders' Lists and Reports by Trustee and Company ...........44

Section 701.     Company to Furnish Trustee Names and Addresses of
                 Holders. ................................................................................44

Section 702.     Preservation of Information; Communications to Registered
                 Holders. ................................................................................45

Section 703.     Reports by Trustee. ..............................................................45

Section 704.     Reports by Company. ............................................................45

ARTICLE EIGHT   Consolidation, Merger, Conveyance, Transfer or Lease ........46

Section 801.     Company May Consolidate, Etc., Only on Certain Terms. .....46

Section 802.     Successor Substituted. ..........................................................47

ARTICLE NINE Supplemental Indentures ............................................... 47

 Section 901. Supplemental Indentures Without Consent of Holders. ......... 47

 Section 902. Supplemental Indentures with Consent of Holders............. 48

 Section 903. Execution of Supplemental Indentures................................. 49

 Section 904. Effect of Supplemental Indentures. ................................... 49

 Section 905. Conformity with Trust Indenture Act. .................................. 49

 Section 906. Reference in Securities to Supplemental Indentures. ............. 49

ARTICLE TEN Covenants .......................................................................... 49

 Section 1001. Payment of Principal Premium and Interest.......................... 49

 Section 1002. Maintenance of Office or Agency. ........................................ 50

 Section 1003. Money for Securities Payments to Be Held in Trust............. 50

 Section 1004. Statement by Officers as to Default. ..................................... 51

 Section 1005. Commission Reports. ....................................................... 52

 Section 1006. Continued Existence............................................................ 52

 Section 1007. Taxes. ............................................................................... 52

 Section 1008. Waiver of Certain Covenants.............................................. 52

ARTICLE ELEVEN Redemption of Securities .................................................... 53

 Section 1101. Applicability of Article. ....................................................... 53

 Section 1102. Election to Redeem; Notice to Trustee. ................................. 53

 Section 1103. Selection by Trustee of Securities to Be Redeemed. ............. 53

 Section 1104. Notice of Redemption. ......................................................... 53

 Section 1105. Deposit of Redemption Price.............................................. 54

 Section 1106. Securities Payable on Redemption Date................................ 54

 Section 1107. Securities Redeemed in Part. ............................................... 55

ARTICLE TWELVE Sinking Funds .................................................................... 55

 Section 1201. Applicability of Article. ....................................................... 55

 Section 1202. Satisfaction of Sinking Fund Payments with Securities.......... 55

 Section 1203. Redemption of Securities for Sinking Fund.......................... 56

LC960780.006       iv

ARTICLE THIRTEEN        Conversion of Securities...........................................56

Section 1301.        Conversion Privilege and Conversion Price........................56

Section 1302.        Exercise of Conversion Privilege. ..................................57

Section 1303.        Fractions of Shares.................................................58

Section 1304.        Adjustment of Conversion Price. ..................................58

Section 1305.        Notice of Adjustments of Conversion Price. ....................62

Section 1306.        Notice of Certain Corporate Action..............................63

Section 1307.        Company to Reserve Series A Common Stock. .................64

Section 1308.        Taxes on Conversions. .............................................64

Section 1309.        Covenant as to Series A Common Stock. ........................64

Section 1310.        Cancellation of Converted Securities. ...........................64

Section 1311.        Provisions in the Case of Consolidation, Merger or Sales of Assets. ...............................................................64

Section 1312.        Responsibility of Trustee. .........................................65

ARTICLE FOURTEEN        Defeasance and Covenant Defeasance ...........................65

Section 1401.        Company's Option to Effect Defeasance or Covenant Defeasance. ........................................................65

Section 1402.        Defeasance and Discharge. .......................................65

Section 1403.        Covenant Defeasance. ............................................66

Section 1404.        Conditions to Defeasance or Covenant Defeasance...........66

Section 1405.        Deposited Money and U.S. Government Obligations to be Held in Trust; Other Miscellaneous Provisions. ..................67

Section 1406.        Reinstatement. .....................................................68

ARTICLE FIFTEEN        Meetings of Holders of Securities................................68

Section 1501.        Purposes for Which Meetings May Be Called. ................68

Section 1502.        Call, Notice and Place of Meetings. ...........................69

Section 1503.        Persons Entitled to Vote at Meetings. .........................69

Section 1504.        Quorum; Action. ...................................................69

Section 1505.        Determination of Voting Rights; Conduct and Adjournment of Meetings.........................................70

THIS INDENTURE, dated as of March 19, 1996, is between THE TIMES MIRROR COMPANY, a Delaware corporation (the "Company"), having its principal office at Times Mirror Square, Los Angeles, California 90053, and CITIBANK, N.A, a national banking association duly incorporated and existing under the laws of the United States of America, as Trustee (the "Trustee").

## RECITALS OF THE COMPANY

The Company has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its unsecured debentures, notes or other evidences of indebtedness (the "Securities"), to be issued in one or more series as in this Indenture provided.

All things necessary to make this Indenture a valid agreement of the Company, in accordance with its terms, have been done.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders thereof, it is mutually agreed, for the equal and proportionate benefit of all Holders of the Securities or of the applicable series thereof, as follows:

## ARTICLE ONE

### Definitions and Other Provisions

### of General Application

Section 101.  Definitions.

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(1)     the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(2)     all other terms used herein that are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(3)     all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such accounting principles as are generally accepted at the date of such computation;

(4)     the words "Article" and "Section" refer to an Article and Section, respectively, of this Indenture; and

(5)     the words "herein," "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

"Act," when used with respect to any Holder, has the meaning specified in Section 104.

"Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Authenticating Agent" means any Person authorized by the Trustee pursuant to Section 614 to act on behalf of the Trustee to authenticate Securities of one or more series.

"Authorized Newspaper" means a newspaper in the English language or, at the option of the Company, in an official language of the country of publication, customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays, and of general circulation in the place in connection with which the term is used or in the financial community at such place. Where successive publications are required to be made in Authorized Newspapers, the successive publications may be made in the same or in different Authorized Newspapers meeting the foregoing requirements and in each case on any Business Day.

"Bearer Security" means any Security, in the form (to the extent applicable thereto) established pursuant to Section 201, which is payable to the bearer.

"Board of Directors" means either the board of directors of the Company or any duly authorized committee of that board.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"Business Day," when used with respect to any Place of Payment, means each Monday, Tuesday, Wednesday, Thursday and Friday that is not a day on which banking institutions in that Place of Payment, or the city in which the Corporate Trust Office of the Trustee is located, are authorized or obligated by law or executive order to close.

"Cedel S.A." means Centrale de Livraison de Valeurs Mobilieres S.A.

"Closing Price" for any day means the last reported sale price of the Series A Common Stock regular way on such day or, in case no such reported sale takes place on such day, the average of the reported closing bid and asked prices regular way on such day, in either case on the New York Stock Exchange or, if the Series A Common Stock is not listed or admitted to trading on such exchange, on the principal national securities exchange on which the Series A Common Stock is listed or admitted to trading or, if not listed or admitted to trading on any national securities exchange, on the Nasdaq National Market or, if the Series A Common Stock is not listed or admitted to trading on any national securities exchange or quoted on such National Market, the average of the closing bid and asked prices in the over-the-counter market as furnished by any New York Stock Exchange member firm selected from time to time by the Company for that purpose. If the Series A Common Stock is not listed or admitted to trading on any national securities exchange, quoted on such National Market or listed in any list of bid and asked prices in the over-the-counter market, "Closing Price" shall mean the fair market value of the Series A Common Stock as determined in good faith by the Board of Directors.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Exchange Act or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

"Company" means the Person named as the "Company" in the first paragraph of this instrument until a successor Person shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Company" shall mean such successor Person.

"Company Request" or "Company Order" means a written request or order signed in the name of the Company by its Chairman of the Board, its President or a Vice President, and by its Treasurer, an Assistant Treasurer, its Secretary or an Assistant Secretary, and delivered to the Trustee.

"Corporate Trust Office" means the office of the Trustee at which the corporate trust business of the Trustee shall, at any particular time, be principally administered; which office is, at the date as of which this Indenture is dated, located at 120 Wall Street, New York, New York 10043, except that for purposes of the presentation of Securities for payment or registration of transfer or exchange, such term means the office or agency of the Trustee in said city at which at any particular time the corporate agency business of the Trustee shall be conducted, which office at the date of execution of this Indenture is located at 111 Wall Street, 5th Floor, New York, New York 10043.

"Corporation" means a corporation, association, company, joint stock company or business trust.

"Coupon" means any interest coupon of a Bearer Security.

"Covenant Defeasance" has the meaning specified in Section 1403.

"Defaulted Interest" has the meaning specified in Section 307.

"Defeasance" has the meaning specified in Section 1402.

"Defeasible Series" has the meaning specified in Section 1401.

"Depositary" means, with respect to Securities of any series issuable in whole or in part in the form of one or more Global Securities, the Person designated to act as Depositary for such Securities as contemplated by Section 301 until a successor Depositary shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder, and if at any time there is more than one such Person, "Depositary" as used with respect to the Securities of any series shall mean each Depositary with respect to Securities of that series.

"Dollar" or "$" means a dollar or other equivalent unit in such coin or currency of the United States as at the time shall be legal tender for the payment of public and private debts.

"ECU" means the European Currency Unit as defined and revised from time to time by the Council of the European Communities.

"Euro-clear" means the operator of the Euro-clear System.

"Event of Default" has the meaning specified in Section 501.

"Exchange Act" means the Securities Exchange Act of 1934, as amended from time to time, and any statute successor thereto.

"Exchange Rate" shall have the meaning specified as contemplated in Section 301.

"Exchange Rate Agent" shall have the meaning specified as contemplated in Section 301.

"Exchange Rate Officer's Certificate," with respect to any date for the payment of principal of (and premium, if any) and interest on any series of Securities, means a certificate setting forth the applicable Exchange Rate and the amounts payable in Dollars and Foreign Currencies in respect of the principal of (and premium, if any) and interest on Securities denominated in ECU, any other composite currency or Foreign Currency, and signed by the Chairman of the Board, the President, the Treasurer or any Assistant Treasurer of the Company or the Exchange Rate Agent appointed pursuant to Section 301 and delivered to the Trustee.

"Foreign Currency" means a currency issued by the government of any country other than the United States.

"Global Security" means a Security that evidences all or part of the Securities of any series and is authenticated and delivered to, and registered in the name of, the Depositary for such Securities or a nominee thereof.

"Holder" means, in the case of any Registered Security, a Person in whose name a Security is registered in the Security Register and, in the case of any Bearer Security, the bearer thereof and, when used with respect to any coupon, the bearer thereof.

"Indenture" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof, including, for all purposes of this instrument and any such supplemental indenture, the provisions of the Trust Indenture Act that are deemed to be a part of and govern this instrument and any such supplemental indenture, respectively. The term "Indenture" shall also include the terms of a particular series of Securities established as contemplated by Section 301.

"Interest," when used with respect to an Original Issue Discount Security which by its terms bears interest only after Maturity, means interest payable after Maturity.

"Interest Payment Date," when used with respect to any Security, means the Stated Maturity of an installment of interest on such Security.

"Maturity," when used with respect to any Security, means the date on which the principal of such Security or an installment of principal becomes due and payable as therein or herein provided, whether at the Stated Maturity or by declaration of acceleration, call for redemption or otherwise.

"Officers' Certificate" means a certificate signed by the Chairman of the Board, the Chief Executive Officer, the President or a Vice President, and by the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary, of the Company, and delivered to the Trustee. One of the officers signing an Officers' Certificate given pursuant to Section 1004 shall be the principal executive, financial or accounting officer of the Company.

"Opinion of Counsel" means a written opinion of counsel reasonably acceptable to the Trustee, who may be counsel for the Company.

LC960780.006                                   4

"Original Issue Discount Security" means any Security that provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 502.

"Outstanding," when used with respect to Securities, means, as of the date of determination, all Securities theretofore authenticated and delivered under this Indenture, except:

(1)     Securities theretofore canceled by the Trustee or delivered to the Trustee for cancellation;

(2)     Securities for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the Company) in trust or set aside and segregated in trust by the Company (if the Company shall act as its own Paying Agent) for the Holders of such Securities; provided, however, that, if such Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made;

(3)     Securities as to which Defeasance has been effected pursuant to Section 1402; and

(4)     Securities that have been paid pursuant to Section 306 or in exchange for or in lieu of which other Securities have been authenticated and delivered pursuant to this Indenture, other than any such Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Securities are held by a bona fide purchaser in whose hands such Securities are valid obligations of the Company;

provided, however, that in determining whether the Holders of the requisite principal amount of the Outstanding Securities have given any request, demand, authorization, direction, notice, consent or waiver hereunder, (A) the principal amount of an Original Issue Discount Security that shall be deemed to be Outstanding shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon acceleration of the Maturity thereof to such date pursuant to Section 502, (B) the principal amount of a Security denominated in one or more foreign currencies or currency units shall be the U.S. dollar equivalent, determined in the manner provided as contemplated by Section 301 on the date of original issuance of such Security, of the principal amount (or, in the case of an Original Issue Discount Security, the U.S. dollar equivalent on the date of original issuance of such Security of the amount determined as provided in Clause (A) above) of such Security, and (C) Securities owned by the Company or any other obligor upon the Securities or any Subsidiary of the Company or of such other obligor shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Securities that the Trustee knows to be so owned shall be so disregarded. Securities so owned that have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledge is not the Company or any other obligor upon the Securities or any Subsidiary of the Company or of such other obligor.

"Paying Agent" means any Person authorized by the Company to pay the principal of or any premium or interest on any Securities on behalf of the Company.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Place of Payment," when used with respect to the Securities of any series, means the place or places where the principal of and any premium and interest on the Securities of that series are payable as specified as contemplated by Section 301.

"Predecessor Security" of any particular Security means every previous Security evidencing all or a portion of the same debt as evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 306 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed to evidence the same debt as the mutilated, destroyed, lost or stolen Security.

"Redemption Date," when used with respect to any Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

"Redemption Price," when used with respect to any Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

"Registered Security" means any Security in the form (to the extent applicable thereto) established pursuant to Section 201, which is registered on the books of the Security Registrar.

"Regular Record Date" for the interest payable on any Interest Payment Date on the Securities of any series means the date specified for that purpose as contemplated by Section 301.

"Responsible Officer," when used with respect to the Trustee, means the chairman of the board of directors, the chairman or any vice-chairman of the executive committee of the board of directors, the president, any vice president, any trust officer, any senior trust officer, the treasurer, any assistant treasurer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his or her knowledge of and familiarity with the particular subject.

"Securities" has the meaning stated in the first recital of this Indenture and more particularly means any Securities authenticated and delivered under this Indenture.

"Security Register" and "Security Registrar" have the respective meanings specified in Section 305.

"Series A Common Stock" means Series A Common Stock, par value $1.00 per share, of the Company.

"Special Record Date" for the payment of any Defaulted Interest means a date fixed by the Trustee pursuant to Section 307.

"Stated Maturity," when used with respect to any Security or any installment of principal thereof or interest thereon, means the date specified in such Security as the fixed date on which the principal of such Security or such installment of principal or interest is due and payable.

"Subsidiary" means a corporation more than 50% of the outstanding voting stock of which is owned, directly or indirectly, by the Company or by one or more other Subsidiaries, or by the Company and one or more other Subsidiaries. For the purposes of this definition, "voting stock" means stock that ordinarily has voting power for the election of directors, whether at all

LC960780.006                                    6

times or only so long as no senior class of stock has such voting power by reason of any contingency.

"Trading Day" means, with respect to the Series A Common Stock, each Monday, Tuesday, Wednesday, Thursday and Friday, other than any day on which securities are not traded on the exchange or market on which the Series A Common Stock is traded.

"Trustee" means the Person named as the "Trustee" in the first paragraph of this instrument until a successor Trustee shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean or include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" as used with respect to the Securities of any series shall mean each Trustee with respect to Securities of that series.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended by the Trust Indenture Reform Act of 1990 and as in force at the date as of which this instrument was executed; provided, however, that in the event the Trust Indenture Act of 1939 is amended after such date, "Trust Indenture Act" means, to the extent required by any such amendment, the Trust Indenture Act of 1939 as so amended.

"United States" means the United States of America, its territories, its possessions (including the Commonwealth of Puerto Rico), and other areas subject to its jurisdiction.

"United States Alien" means any person who, for United States Federal income tax purposes, is a foreign corporation, a nonresident alien individual, a nonresident fiduciary of a foreign estate or trust, or a foreign partnership one or more members of which is, for United States Federal income tax purposes, a foreign corporation, a nonresident alien individual or a nonresident alien fiduciary of a foreign estate or trust.

"U.S. Government Obligations" has the meaning specified in Section 1304.

"Vice President," when used with respect to the Company or the Trustee, means any vice president, whether or not designated by a number or a word or words added before or after the title "vice president."

Section 102.    Compliance Certificates and Opinions.

Upon any application or request by the Company to the Trustee to take any action under any provision of this Indenture, the Company shall furnish to the Trustee such certificates and opinions as may be required under the Trust Indenture Act. Each such certificate or opinion shall be given in the form of an Officers' Certificate, if to be given by an officer of the Company, or an Opinion of Counsel, if to be given by counsel, and shall comply with the requirements of the Trust Indenture Act and any other requirements set forth in this Indenture.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include

(1)    a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(2)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)     a statement that, in the opinion of each such individual, he or she has made such examination or investigation as is necessary to enable him or her to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(4)     a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

Section 103.   Form of Documents Delivered to Trustee.

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an officer of the Company may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his or her certificate or opinion is based are erroneous.  Any such certificate or opinion of counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Company stating that the information with respect to such factual matters is in the possession of the Company, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Section 104.   Acts of Holders; Record Dates.

Any request, demand, authorization, direction, notice, consent, waiver or other action provided or permitted by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing.  If Securities of a series are issuable in whole or in part as Bearer Securities, any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may, alternatively, be embodied in and evidenced by the record Holders of Securities voting in favor thereof, either in person or by proxies duly appointed in writing, at any meeting of Holders of Securities duly called and held in accordance with the provisions of Article Fifteen, or a combination of such instruments and any such record.  Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Company.  Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments.  Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 601) conclusive in favor of the Trustee and the Company, if made in the manner provided in this Section.

The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public

or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him or her the execution thereof. Where such execution is by a signer acting in a capacity other than his or her individual capacity, such certificate or affidavit shall also constitute sufficient proof of his or her authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any other manner that the Trustee deems sufficient.

The ownership of Registered Securities shall be proved by the Security Register.

The principal amount and serial numbers of Bearer Securities held by any Person, and the date of holding the same, may be proved by the production of such Bearer Securities or by a certificate executed, as Depositary, by any trust company, bank, banker or other depositary, wherever situated, if such certificate shall be deemed by the Trustee to be satisfactory, showing that as of the date therein mentioned such Person had on deposit with such Depositary, or exhibited to it, the Bearer Securities in the amount and with the serial numbers therein described, or such facts may be proved by the certificate or affidavit of the Person holding such Bearer Securities, if such certificate or affidavit is deemed by the Trustee to be satisfactory. The Trustee of the Company may assume that such ownership of any Bearer Security continues until (1) another certificate or affidavit bearing a later date issued in respect of the same Bearer Security is produced, (2) such Bearer Security is produced to the Trustee by some other Person, (3) such Bearer Security is surrendered in exchange for a Registered Security, or (4) such Bearer Security is no longer Outstanding.

The fact and date of execution of any such instrument or writing, the authority of the Person executing the same and the principal amount and serial numbers of Bearer Securities held by the Person so executing such instrument or writing and the date of holding the same may also be proved in any other manner that the Trustee deems sufficient, and the Trustee may in any instance require further proof with respect to any of the matters referred to in this Section 104.

Any request, demand, authorization, direction, notice, consent, waiver or other Act of the Holder of any Security shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Security.

The Company may, in the circumstances permitted by the Trust Indenture Act, set any day as the record date for the purpose of determining the Holders of Outstanding Securities of any series entitled to give or take any request, demand, authorization, direction, notice, consent, waiver or other action or permitted by this Indenture to be given or taken by Holders of Securities of such series. If not set by the Company prior to the first solicitation of a Holder of Outstanding Securities of such series made by any Person in respect of any such action, or, in the case of any such vote, prior to such vote, the record date for any such action or vote shall be the 30th day (or, if later, the date of the most recent list of Holders required to be provided pursuant to Section 701) prior to such first solicitation or vote, as the case may be. With regard to any record date set pursuant to this paragraph, the Holders of Outstanding Securities of the relevant series on such record date (or their duly appointed agents), and only such Persons, shall be entitled to give or take the relevant action, whether or not such Holders remain Holders after such record date.

Without limiting the foregoing, a Holder entitled hereunder to give or take any action hereunder with regard to any particular Security may do so with regard to all or any part of the principal amount of such Security or by one or more duly appointed agents each of whom may do so pursuant to such appointment with regard to all or any different part of such principal amount.

Section 105.   <u>Notices, Etc., to Trustee and Company.</u>

Any request, demand, authorization, direction, notice, consent, waiver or Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with,

(1)     the Trustee by any Holder or by the Company shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, Attention:  Corporate Trust Department, or

(2)     the Company by the Trustee or by any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to the Company addressed to it to the attention of its Treasurer at the address of its principal office specified in the first paragraph of this instrument or at any other address previously furnished in writing to the Trustee by the Company.

Section 106.   <u>Notice to Holders; Waiver.</u>

Where this Indenture provides for notice to Holders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at his or her address as it appears in the Security Register, not later than the latest date (if any), and not earlier than the earliest date (if any), prescribed for the giving of such notice.  In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders.  Notice shall be sufficiently given to Holders of Bearer Securities if published in an Authorized Newspaper in the City of New York and in such other city or cities as may be specified in the Securities on at least two Business Days, the first such publication to be not earlier than the earliest date, and not later than the latest date, prescribed for the giving of such notice.  Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impractical to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

In case by reason of the suspension of publication of any Authorized Newspaper or Authorized Newspapers or by reason of any other cause it shall be impracticable to publish any notice to Holders of Bearer Securities as provided above, then such notification to Holders of Bearer Securities as shall be given with the approval of the Trustee shall constitute sufficient notice to such Holders for every purpose hereunder.  Neither the failure to give notice by publication to Holders of Bearer Securities as provided, nor any defect in any notice so published, shall affect the sufficiency of any notice to Holders of Registered Securities given as provided herein.

Any request, demand, authorization, direction, notice, consent or waiver required or permitted under this Indenture shall be in the English language, except that any published notice may be in an official language of the country of publication.

Section 107.   <u>Conflict with Trust Indenture Act.</u>

LC960780.006                                      10

If any provision hereof limits, qualifies or conflicts with a provision of the Trust Indenture Act that is required under such Act to be a part of and govern this Indenture, the latter provision shall control. If any provision of this Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the latter provision shall be deemed to apply to this Indenture as so modified or to be excluded, as the case may be.

Section 108.    Effect of Headings and Table of Contents.

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

Section 109.    Successors and Assigns.

All covenants and agreements in this Indenture by the Company shall bind its successors and assigns, whether so expressed or not.

Section 110.    Separability Clause.

In case any provision in this Indenture or in the Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 111.    Benefits of Indenture.

Nothing in this Indenture or in the Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 112.    Governing Law.

This Indenture and the Securities shall be governed by and construed in accordance with the law of the State of New York, but without regard to principles of conflicts of laws.

Section 113.    Legal Holidays.

In any case where any Interest Payment Date, Redemption Date, Repurchase Date or Stated Maturity of any Security shall not be a Business Day at any Place of Payment (or the City in which the Corporate Trust Office of the Trustee is located), then unless otherwise provided in the Securities of any series, payment of interest or principal (and premium, if any) need not be made at such Place of Payment on such date, but may be made on the next succeeding Business Day at such Place of Payment (provided such Business Day is a Business Day in the City in which the Corporate Trust Office of the Trustee is located) with the same force and effect as if made on the Interest Payment Date, Redemption Date, Repurchase Date, or at the Stated Maturity; provided, however, that no interest shall accrue for the period from and after such Interest Payment Date, Redemption Date, Repurchase Date or Stated Maturity, as the case may be.

## ARTICLE TWO

### Security Forms

Section 201.   Forms Generally.

The Securities of each series (including, with respect to Bearer Securities, the coupons related thereto) and the Trustee's certificate of authentication thereon shall be in substantially the form set forth in this Article, or in such other form as shall be established by or pursuant to a Board Resolution or in one or more indentures supplemental hereto, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with the rules of any securities exchange or as may, consistently herewith, be determined by the officers executing such Securities, as evidenced by their execution of the Securities. If the form of Securities of any series is established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Company Order contemplated by Section 303 for the authentication and delivery of such Securities.

Unless otherwise specified in accordance with Section 301, Bearer Securities shall have coupons attached.

The definitive Securities shall be printed, lithographed or engraved on steel engraved borders or may be produced in any other manner, all as determined by the officers executing such Securities, as evidenced by their execution of such Securities.

Global Securities may be issued in either registered or bearer form and in either temporary or permanent form.

Section 202.   Form of Face of Security.

[INSERT ANY LEGEND REQUIRED BY THE INTERNAL REVENUE CODE AND THE REGULATIONS THEREUNDER]

### THE TIMES MIRROR COMPANY

[Title of Security]

No. _____                                      [$]_____

THE TIMES MIRROR COMPANY, a Delaware corporation (herein called the "Company," which term includes any successor Person under the Indenture hereinafter referred to), for value received, hereby promises to pay to [_____, or registered assigns,] [bearer upon presentation and surrender of this Security] the principal sum of _____ Dollars ($_____) on _____ [if the Security is to bear interest prior to Maturity, insert -- , and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [annually] [semi-annually] [quarterly] on _____ [and] [_, _____ and _____] in each year, commencing _____, at [if the Security is to bear interest at a fixed rate, insert -- the rate of ____% per annum] [if the Security is to bear interest at a variable rate, insert -- the rate or rates as determined herein], until the principal hereof is paid or made available for payment [if applicable, insert -- , and (to the extent that the payment of such interest shall be legally enforceable) at the rate of ___% per annum on any overdue principal and

LC960760.006                              12

premium and on any overdue installment of interest]. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in such Indenture, be paid to [the Person in whose name this Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest, which shall be the _____ or _____ (whether or not a Business Day), as the case may be, next preceding such Interest Payment Date] [bearer upon presentation and surrender of the interest coupons attached hereto as they severally mature]. [Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the Holder on such Regular Record Date and may either be paid to the Person in whose name this Security (or one or more Predecessor Securities) is registered at the close of business on a Special Record Date for the payment of such Defaulted Interest to be fixed by the Trustee, notice whereof shall be given to Holders of Securities of this series not less than 10 days prior to such Special Record Date, or be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange, all as more fully provided in said Indenture].

[If the Security is to bear interest at a variable rate, insert -- [appropriate provisions with regard to the determination of the applicable interest rate or rates based upon the prime rate, the LIBOR rate, the secondary market rate for T-Bills or United States dollar domestic certificates of deposit, the auction rate for T-Bills or such other rate as selected]]

[If the Security is not to bear interest prior to Maturity, insert -- The principal of this Security shall not bear interest except in the case of a default in payment of principal upon acceleration, upon redemption or at Stated Maturity and in such case the overdue principal of this Security shall bear interest at the rate of ___% per annum (to the extent that the payment of such interest shall be legally enforceable), which shall accrue from the date of such default in payment to the date payment of such principal has been made or duly provided for. Interest on any overdue principal shall be paid on demand. Any such interest on any overdue principal that is not so paid on demand shall bear interest at the rate of ___% per annum (to the extent that the payment of such interest shall be legally enforceable), which shall accrue from the date of such demand for payment to the date payment of such interest has been made or duly provided for, and such interest shall also be payable on demand.]

Payment of the principal of (and premium, if any) [if applicable, insert -- any such] and interest on this Security will be made at the office or agency of the Company maintained for that purpose in _____, in such coin or currency of the United States of America [if applicable, specify other currency] as at the time of payment is legal tender for payment of public and private debts [if applicable, insert -- ; provided, however, that at the option of the Company payment of interest may be made by check mailed to the address of the Person entitled thereto as such address shall appear in the Security Register].

[No payment of principal (and premium, if any) or interest with respect to any Bearer Securities shall be made at the Corporate Trust Office of the Trustee under the Indenture or at any other office or agency of the Company in the United States or by transfer to an account in, or by check mailed to an address in, the United States. Notwithstanding the foregoing, payment of principal of (and premium, if any) and interest in Dollars on any Bearer Securities and payments of any such additional amounts may be made at the Corporate Trust Office of the Trustee, if (but only if) payment of the full amount of such principal, premium, interest or additional amounts, as the case may be, at all offices located outside the United States through which payment is to be made in accordance with the Indenture is illegal or effectively precluded because of the imposition of exchange controls or other similar restrictions.]

LC960780.006

13

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Trustee referred to on the reverse hereof by manual signature, [neither] this Security [nor any coupon attached hereto] shall [not] be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly executed under its corporate seal.

Dated:

                                        THE TIMES MIRROR COMPANY


                                        By:_____

Attest:

_____


Section 203.    Form of Reverse of Security.

This Security is one of a duly authorized issue of securities of the Company (herein called the "Securities"), issued and to be issued in one or more series under an Indenture, dated as of _____ and all indentures supplemental thereto (herein called the "Indenture"), between the Company and _____, as Trustee (herein called the "Trustee", which term includes any successor trustee under the Indenture), to which Indenture reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Company, the Trustee and the Holders of the Securities and of the terms upon which the Securities are, and are to be, authenticated and delivered. This Security is one of the series designated on the face hereof [if applicable, insert --, limited in aggregate principal amount to $_____]. [If applicable, insert -- The Securities of this series are subject to redemption upon not less than 30 nor more than 60 days' notice by mail, (1) on _____ in any year commencing with the year _____ and ending with the year _____ through operation of the sinking fund for this series at the Redemption Prices for redemption through operation of the sinking fund (expressed as percentages of the principal amount) set forth in the table below, and (2) at any time [if applicable, insert -- on or after _____], as a whole or in part, at the election of the Company, at the Redemption Prices for redemption otherwise than through operation of the sinking fund (expressed as percentages of the principal amount) set forth in the table below:  If redeemed during the 12-month period beginning _____ of the years indicated,

LC960760.006                                        14

| Year | Redemption Price For Redemption Through Operation of the Sinking Fund | Redemption Price for Redemption Otherwise Than Through Operation of the Sinking Fund |
| --- | --- | --- |

and thereafter at a Redemption Price equal to _____% of the principal amount, together in the case of any such redemption (whether through operation of the sinking fund or otherwise) with accrued interest to the Redemption Date, but interest installments whose Stated Maturity is on or prior to such Redemption Date will be payable [upon presentation and surrender of coupons for such interest] [to the Holders of such Securities, or one or more Predecessor Securities, of record at the close of business on the relevant Regular Record Dates referred to on the face hereof,] all as provided in the Indenture.

[If applicable, insert -- Notwithstanding the foregoing, the Company may not, prior to _____ redeem any Securities of this series as contemplated by [if applicable, -- Clause (2) of] the preceding paragraph as a part of, or in anticipation of, any refunding operation by the application, directly or indirectly, of moneys borrowed having an interest cost to the Company (calculated in accordance with generally accepted financial practice) of less than _____% per annum.]

[The sinking fund for this series provides for the redemption on _____ in each year beginning with the year _____ and ending with the year _____ of [if applicable, -- not less than $_____ ("mandatory sinking fund") and not more than] $_____ aggregate principal amount of Securities of this series. Securities of this series acquired or redeemed by the Company otherwise than through [if applicable, -- mandatory] sinking fund payments may be credited against subsequent [if applicable, -- mandatory] sinking fund payments otherwise required to be made [if applicable, -- in the inverse order in which they become due].]

[If the Security is subject to [redemption] [or] [conversion] in part of any kind, insert -- In the event of [redemption] or [conversion] of this Security in part only, a new Security or Securities of this series and of like tenor for the [unredeemed[ [or] [unconverted] portion hereof will be issued in the name of the Holder hereof upon the cancellation hereof.]

[If the Security is subject to conversion, insert -- Subject to and upon compliance with the provisions of the Indenture, the Holder of this Security is entitled, at his or her option, at any time on or before the close of business on _____, or in case this Security or a portion hereof is called for redemption, then in respect of this Security or such portion hereof until and including, but (unless the Company defaults in making the payment due upon redemption or repurchase) not after, the close of business on the Redemption Date or the repurchase date, to convert this Security (or any portion of the principal amount hereof which is $_____ or an integral multiple thereof), at the principal amount hereof, or of such portion, into fully paid and non-assessable shares (calculated as to each conversion to the nearest 1/100 of a share) of Series A Common Stock of the Company at a conversion price equal to $_____ aggregate principal amount of Securities for each share of Series A Common Stock (or at the current adjusted conversion price if an adjustment has been made as provided in the Indenture) by surrender of this Security, duly endorsed or assigned to the Company or in blank, to the Company at its office or agency in [Los Angeles, California] [New York, New York,] [or to such office or agency outside the United States as the Company may designate] accompanied by [all unmatured coupons and any matured coupons in default attached hereto and] written notice to the Company that (i) the

Holder hereof elects to convert this Security, or if less than the entire principal amount hereof is to be converted, the portion hereof to be converted, and (ii) the name or names (with addresses) in which the certificate or certificates for shares of Series A Common Stock issuable on such conversion shall be issued. [In case such surrender shall be made during the period from the close of business on any Regular Record Date next preceding any Interest Payment Date to the opening of business on such Interest Payment Date (unless this Security or the portion thereof being converted has been called for redemption, or is to be repurchased, on such Interest Payment Date or on a Redemption Date or a repurchase date within such period), this Security shall also be accompanied by payment of an amount equal to the interest payable on such Interest Payment Date on the principal amount of this Security then being converted (or, if this Security was issued in exchange for a Bearer Security after the close of business on such Regular Record Date, by surrender of one or more coupons relating to such Interest Payment Date or by both payment in such funds and surrender of such coupon or coupons, in either case, in an amount equal to the interest payable on such Interest Payment Date on the principal amount of this Security then being converted).] [Subject to the aforesaid requirement for payment and, in the case of a conversion after the Regular Record Date next preceding any Interest Payment Date and on or before such Interest Payment Date, to the right of the Holder of this Security (or any Predecessor Security) of record at such Regular Record Date to receive an installment of interest (with certain exceptions provided in the Indenture),] no payment or adjustment is to be made on conversion for interest accrued hereon or for dividends on the Series A Common Stock issued on conversion. No fractions of shares or scrip representing fractions of shares will be issued on conversion, but instead of any fractional interest the Company shall pay a cash adjustment as provided in the Indenture. The conversion price is subject to adjustment as provided in the Indenture. In addition, the Indenture provides that in case of certain consolidations or mergers to which the Company is a party or the transfer of substantially all of the assets of the Company, the Indenture shall be amended, without the consent of any Holders of Securities, so that this Security, if then outstanding, will be convertible thereafter during the period this Security shall be convertible as specified above, only into the kind and amount of securities, cash and other property receivable upon the consolidation, merger or transfer by a Holder of the number of shares of Series A Common Stock into which this Security might have been converted immediately prior to such consolidation, merger or transfer (assuming such holder of Series A Common Stock failed to exercise any rights of election and received per share the kind and amount received per share by a plurality of non-electing shares).]

[If the Security is not an Original Issue Discount Security, insert -- If an Event of Default with respect to Securities of this series shall occur and be continuing, the principal of the Securities of this series may be declared due and payable in the manner and with the effect provided in the Indenture.]

[If the Security is an Original Issue Discount Security, insert -- If an Event of Default with respect to Securities of this series shall occur and be continuing, an amount of principal of the Securities of this series may be declared due and payable in the manner and with the effect provided in the Indenture. Such amount shall be equal to -- insert formula for determining the amount. Upon payment (i) of the amount of principal so declared due and payable and (ii) of interest on any overdue principal and overdue interest (in each case to the extent that the payment of such interest shall be legally enforceable), all of the Company's obligations in respect of the payment of the principal of and interest, if any, on the Securities of this series shall terminate.]

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of the Securities of each series to be affected under the Indenture at any time by the Company and the Trustee with the consent of the Holders of a majority in principal amount of the Securities at the time Outstanding of each series to be affected. The Indenture also contains

provisions permitting the Holders of specified percentages in principal amount of the Securities of each series at the time Outstanding, on behalf of the Holders of all Securities of such series, to waive compliance by the Company with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

As provided in and subject to the provisions of the Indenture, the Holder of this Security shall not have the right to institute any proceeding with respect to the Indenture or for the appointment of a receiver or trustee or for any other remedy thereunder, unless such Holder shall have previously given the Trustee written notice of a continuing Event of Default with respect to the Securities of this series, the Holders of not less than 25% in principal amount of the Securities of this series at the time Outstanding shall have made written request to the Trustee to institute proceedings in respect of such Event of Default as Trustee and offered the Trustee reasonable indemnity, and the Trustee shall not have received from the Holders of a majority in principal amount of Securities of this series at the time Outstanding a direction inconsistent with such request, and shall have failed to institute any such proceeding, for 60 days after receipt of such notice, request and offer of indemnity. The foregoing shall not apply to any suit instituted by the Holder of this Security for the enforcement of any payment of principal hereof or any premium or interest hereon on or after the respective due dates expressed herein.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and any premium and interest on this Security at the times, places and rates, and in the coin or currency, herein prescribed.

As provided in the Indenture and subject to certain limitations therein set forth, the transfer of this Security is registrable in the Security Register, upon surrender of this Security for registration of transfer at the office or agency of the [Company][Trustee] in any place where the principal of and any premium and interest on this Security are payable, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Company and the Security Registrar duly executed by, the Holder hereof or his or her attorney duly authorized in writing, and thereupon one or more new Securities of this series and of like tenor, of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

[Title to Bearer Securities and coupons shall pass by delivery.]

[The Securities of this series are issuable only in registered form without coupons in denominations of $_____ and any integral multiple thereof.] As provided in the Indenture and subject to certain limitations therein set forth, Securities of this series are exchangeable for a like aggregate principal amount of Securities of this series and of like tenor of a different authorized denomination, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

[Prior to due presentment of this Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered] [The Company, the Trustee and any agent of the Company or the Trustee may treat the Bearer of any Bearer Securities and any coupon attached

LC960760.006                                    17

thereto] as the owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

Section 204.    Form of Legend for Global Securities.

Every Global Security authenticated and delivered hereunder shall bear a legend in substantially the following form:

> THIS SECURITY IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITARY OR A NOMINEE THEREOF. THIS SECURITY MAY NOT BE TRANSFERRED TO, OR REGISTERED OR EXCHANGED FOR SECURITIES REGISTERED IN THE NAME OF, ANY PERSON OTHER THAN THE DEPOSITARY OR A NOMINEE THEREOF AND NO SUCH TRANSFER MAY BE REGISTERED, EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE. EVERY SECURITY AUTHENTICATED AND DELIVERED UPON REGISTRATION OF TRANSFER OF, OR IN EXCHANGE FOR OR IN LIEU OF, THIS SECURITY SHALL BE A GLOBAL SECURITY SUBJECT TO THE FOREGOING, EXCEPT IN SUCH LIMITED CIRCUMSTANCES.

Section 205.    Form of Coupon.

[Face of coupon]

[Insert any legend required by the Internal Revenue Code and the Regulations thereunder.]

No. _____

On the [_____] Interest Payment Date

[_____]

THE TIMES MIRROR COMPANY (the "Company") will pay to the bearer, upon surrender hereof, the interest payable with respect to the above-referenced Interest Payment Date on its [name of the Securities] with the certificate number set forth below, together with any additional amounts which may be payable under the terms of the Security, unless the Security shall have been previously called for redemption or submitted for repayment and sums for such redemption or repayment duly provided. Payment of this coupon will be made in the currency set forth on the face of such Security upon surrender hereof, subject to applicable laws and regulations, only (subject to certain limited exceptions set forth in such Security) at such paying agencies outside the United States and its possessions as the Company may appoint from time to time. Such payments will be made, at the option of the bearer, by check mailed or delivered to an address outside the United States and its possessions furnished by such bearer or by payment to an account maintained by the payee with a bank located outside the United States. [This coupon will become void unless presented for payment within [____] years from the due date hereof.] Reference is made to the Security for definitions of terms used herein.

The Times Mirror Company

LC960780.006                                        18

By: _____

Certificate Number: _____

[Reverse of Coupon]

Paying Agencies (subject to change)

_____

_____

_____

Section 206.    <u>Form of Trustee's Certificate of Authentication.</u>

The Trustee's certificate of authentication shall be in substantially the following form:

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

As Trustee

By_____

Authorized Signatory

## ARTICLE THREE

### The Securities

Section 301.    <u>Amount Unlimited; Issuable in Series.</u>

The aggregate principal amount of Securities that may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. There shall be established in or pursuant to a Board Resolution and, subject to Section 303, set forth, or determined in the manner provided, in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series,

(1)    the title of the Securities of the series (which shall distinguish the Securities of the series from Securities of any other series);

(2)    any limit upon the aggregate principal amount of the Securities of the series that may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Section 304, 305, 306, 906 or 1107 and except for any Securities that, pursuant to Section 303, are deemed never to have been authenticated and delivered hereunder);

LC960780.006

19

(3)    the Person to whom any interest on any Registered Security of the series shall be payable, if other than the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest, and the manner in which, and the person to whom, any interest on any Bearer Securities of the series shall be payable, if otherwise then upon presentation and surrender of the coupons appertaining thereto as they severally mature;

(4)    the date or dates on which the principal of the Securities of the series is payable;

(5)    the rate or rates, or the method or methods by which such rate or rates shall be determined, at which the Securities of the series shall bear interest, if any, the date or dates from which such interest shall accrue, the Interest Payment Dates on which any such interest shall be payable and the Regular Record Date for any interest payable on any Interest Payment Date;

(6)    the place or places where the principal of and any premium and interest on Securities of the series shall be payable;

(7)    the period or periods within which, the date or dates on which, the price or prices at which and the terms and conditions upon which, Securities of the series may be redeemed, in whole or in part, at the option of the Company;

(8)    the obligation, if any, of the Company to redeem or purchase Securities of the series pursuant to any sinking fund or other provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series shall be redeemed or purchased, in whole or in part, pursuant to such obligation;

(9)    if other than denominations of $1,000 and any integral multiple thereof, the denominations in which Securities of the series shall be issuable;

(10)    the currency, currencies or currency units in which payment of the principal of and any premium and interest on any Securities of the series shall be payable, if other than Dollars, and the Exchange Rate and Exchange Rate Agent;

(11)    if the amount of payments of principal of or any premium or interest on any Securities of the series may be determined with reference to an index or any security or other measure, the manner in which such amounts shall be determined and any special voting or defeasance provisions in connection thereto;

(12)    if the principal of or any premium or interest on any Securities of the series is to be payable, at the election of the Company or a Holder thereof, in one or more currencies or currency units other than that or those in which the Securities are stated to be payable, the currency, currencies or currency units in which payment of the principal of and any premium and interest on Securities of such series as to which such election is made shall be payable, and the periods within which and the terms and conditions upon which such election is to be made;

(13)    if other than the principal amount thereof, the portion of the principal amount of Securities of the series that shall be payable upon declaration of acceleration of the Maturity thereof pursuant to Section 502;

(14)   if applicable, that the Securities of the series shall be convertible as provided in Article Thirteen;

(15)   if applicable, that the Securities of the series shall be defeasible as provided in Article Fourteen;

(16)   whether Securities of the series shall be issuable as Registered Securities or Bearer Securities, and whether the Securities of the series shall be issuable in whole or in part in the form of one or more Global Securities and, in such case, the Depositary or Depositaries and exchange agent for such Global Security or Global Securities and any circumstances other than those set forth in Section 305 in which any such Global Security may be transferred to, and registered and exchanged for Securities registered in the name of, a Person other than the Depositary for such Global Security or a nominee thereof and in which any such transfer may be registered;

(17)   if the Company will pay any additional amounts on any of the Securities and coupons, if any, of the series to any Holder who is a United States Alien (including any modification in the definition of such term), in respect of any tax, assessment or governmental charge withheld or deducted, under what circumstances and with what procedures and documentation the Company will pay such additional amounts, whether such additional amounts will be treated as interest or principal pursuant to this Indenture, and whether the Company will have the option to redeem such Securities rather than pay additional amounts (and the terms of any such option);

(18)   the inclusion of any additional Events of Default or variations from the Events of Default set forth in Section 501 for the Securities of the series;

(19)   the applicability or non-applicability of Section 1008, or any variations in Section 1008, or the applicability of any additional restrictive covenants; and

(20)   if payments of principal of (and premium, if any) or interest on the Securities of the series are to be made in a Foreign Currency other than the currency in which such Securities are denominated, the manner in which the Exchange Rate with respect to such payments shall be determined or if the Exchange Rate is to be determined otherwise than as provided in Section 101;

(21)   if the Securities of the series may be issued or delivered (whether upon original issuance or upon exchange of a temporary Security of such series or otherwise), or any installment of principal or interest is payable, only upon receipt of certain certificates or other documents or satisfaction of other conditions in addition to those specified in this Indenture, the form and terms of such certificates, documents or conditions; and

(22)   any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture, except as permitted by Section 901(5)).

All Securities of any one series and the coupons appertaining to any Bearer Securities of such series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to the Board Resolution referred to above and (subject to Section 303) set forth, or determined in the manner provided, in the Officers' Certificate referred to above or in any such indenture supplemental hereto.

Any such Board Resolution may provide, without limitation, that Securities of any particular series may be issued at various times, with different dates on which the principal or any

installment of principal is payable, with different rates of interest, if any, or different methods by which rates of interest may be determined, with different dates on which such interest may be payable, or with different redemption or repayment dates and may be denominated in different currencies or payable in different currencies. Unless otherwise provided in such Board Resolution, a series of Securities may be reopened for issuances of additional Securities of that series.

At the option of the Company, interest on the Securities of any series that bears interest may be paid by mailing a check to the address of the Person entitled thereto as such address shall appear in the Security Register.

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

Section 302.   Denominations.

The Securities of each series shall be issuable in such denominations as may be approved by the Company, such approval to be evidenced by the execution thereof by the Company.   The Securities may bear such letters and numbers distinguishing the several denominations and the several Securities of each denomination as may be determined by the Company with the approval of the Trustee.   At the office or agency of the Company to be maintained by the Company as provided in Section 1002, unless otherwise provided in the Securities of any series, and in the manner, subject to the limitations and upon payment of the charges provided herein, Securities of each series may be exchanged for a like aggregate principal amount of Securities of such series of other authorized denominations.

Section 303.   Execution, Authentication, Delivery and Dating.

The Securities shall be executed on behalf of the Company by its Chairman of the Board, its Chief Executive Officer, its President or one of its Vice Presidents, under its corporate seal reproduced thereon attested by its Secretary or one of its Assistant Secretaries.   The signature of any of these officers on the Securities may be manual or facsimile.

Securities bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the date of such Securities.

At any time and from time to time after the execution and delivery of this Indenture, the Company may deliver Securities of any Series together with any coupons relating thereto executed by the Company to the Trustee for authentication, together with a Company Order for the authentication and delivery of such Securities, and the Trustee in accordance with the Company Order shall authenticate and deliver such Securities; provided, however, that, in connection with its original issuance, no Bearer Security or coupon shall be mailed or otherwise delivered (i) to any person who is not a United States Alien or to any location in the United States, (ii) unless the Company shall have received such certificates required by Section 311 or Section 301 hereof, and (iii) unless the Company has no reason to know that such certificates are false.

If the form or terms of the Securities of the series and any related coupons have been established in or pursuant to one or more Board Resolutions as permitted by Sections 201 and 301, in authenticating such Securities, and accepting the additional responsibilities under this

LC960780.006                                       22

Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 601) shall be fully protected in relying upon, an Opinion of Counsel stating,

> (1)    if the forms of such Securities and any coupons has been established by or pursuant to Board Resolution as permitted by Section 201, that such form has been established in conformity with the provisions of this Indenture;

> (2)    if the terms of such Securities and any coupons have been established by or pursuant to Board Resolution as permitted by Section 301, that such terms have been established in conformity with the provisions of this Indenture; and

> (3)    that such Securities, together with any coupons appertaining thereto, when authenticated and delivered by the Trustee and issued by the Company in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and legally binding obligations of the Company enforceable in accordance with their terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

If such form or terms have been so established, the Trustee shall not be required to authenticate such Securities if the issuance of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and this Indenture or otherwise in a manner that is not reasonably acceptable to the Trustee.

Notwithstanding the provisions of Section 301 and of the preceding paragraph, if all Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver the Officers' Certificate otherwise required pursuant to Section 301 or the Company Order and Opinion of Counsel otherwise required pursuant to such preceding paragraph at or prior to the time of authentication of each Security of such series if such documents are delivered at or prior to the authentication upon original issuance of the first Security of such series to be issued. After any such first delivery, any separate request by the Company that the Trustee authenticate Securities of such series for original issue will be deemed to be a certification by the Company that all conditions precedent provided for in this Indenture relating to the authentication and delivery of such Securities continue to be complied with.

Each Registered Security shall be dated the date of its authentication. Unless otherwise specified in Section 301, each Bearer Security (including a Bearer Security represented by a temporary Global Security) shall be dated as of the date of original issuance of the first Security of such series to be issued.

No Security or coupon attached thereto shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder. Except as otherwise permitted by this Indenture, the Trustee shall not authenticate and deliver any Bearer Security unless all pertinent coupons for interest then matured have been detached and canceled. Notwithstanding the foregoing, if any Security shall have been authenticated and delivered hereunder but never issued and sold by the Company, and the Company shall deliver such Security to the Trustee for cancellation as provided in Section 309, for all purposes of this Indenture such Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits of this Indenture.

Section 304.   Temporary Securities.

Pending the preparation of definitive Securities of any series, the Company may execute, and upon Company Order the Trustee shall authenticate and deliver, temporary Securities which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Securities in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Securities may determine, as evidenced by their execution of such Securities.

Every temporary Security shall be executed by the Company and authenticated by the Trustee and registered by the Security Registrar, upon the same conditions, and with like effect, as a definitive Security.

Except in the case of Securities represented by a temporary Global Security (which shall be exchanged in accordance with the provisions of the three succeeding paragraphs), if temporary Securities of any series are issued, the Company will cause definitive Securities of that series to be prepared without unreasonable delay. After the preparation of definitive Securities of such series, the temporary Securities of such series shall be exchangeable for definitive Securities of such series upon surrender of the temporary Securities of such series (accompanied by any unmatured coupons appertaining thereto) at the office or agency of the Company in a Place of Payment for that series, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Securities the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor one or more definitive Securities of the same series, of any authorized denominations and of a like aggregate principal amount and tenor, except that no definitive Bearer Security shall be delivered in exchange for a temporary Registered Security. Until so exchanged the temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of such series and tenor.

Unless otherwise specified as contemplated by Section 301, if Bearer Securities of any series are represented by a temporary Global Security, any such temporary Global Security shall be delivered to the Depositary for the benefit of Euro-clear and Cedel S.A., for credit to the respective accounts of the beneficial owners of such Securities (or to such other accounts as they may direct).

Without unnecessary delay but in any event not later than the date specified in or determined pursuant to the terms of any such temporary Global Security (the "Exchange Date"), the Company shall deliver to the Trustee permanent Securities of the same series, in aggregate principal amount equal to the principal amount of such temporary Global Security, executed by the Company.   On or after the Exchange Date, such temporary Global Security shall be surrendered by the Depositary to the Trustee, as the Company's agent for such purpose, to be exchanged, in whole or from time to time in part, for permanent Securities of the same series and of like tenor without charge and the Trustee shall authenticate and deliver, in exchange for each portion of such temporary Global Security, an equal aggregate principal amount of definitive Securities of the same series of authorized denominations and of like tenor as the portion of such temporary Global Security to be exchanged. The permanent Securities to be delivered in exchange for any such temporary Global Security shall be in definitive bearer form or registered from, or shall be represented by a permanent Global Security, or any combination thereof, as specified as contemplated by Section 301, and, if any combination thereof is so specified, as requested by the beneficial owner thereof.

Unless otherwise specified in any such temporary Global Security, the interest of a beneficial owner of Securities of a series represented by such temporary Global Security shall be exchanged for permanent Securities of the same series and of like tenor following the Exchange

Date when the account holder instructs Euro-clear or Cedel S.A., as the case may be, to request such exchange on his behalf and delivers to Euro-clear or Cedel S.A., as the case may be, any certificates specified as contemplated by Sections 301 and 311. Unless otherwise specified in such temporary Global Security, any such exchange shall be made free of charge to the beneficial owners of such temporary Global Security, except that a person receiving permanent Securities must bear the cost of insurance, postage, transportation and the like in the event that such person does not take delivery of such permanent Securities in person at the offices of Euro-clear or Cedel S.A.

Until exchanged in full as hereinabove provided, the temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as permanent Securities of the same series and of like tenor authenticated and delivered hereunder, except that, unless otherwise specified as contemplated by Section 301, interest payable on a temporary Global Security representing a series of Bearer Securities on an Interest Payment Date for Securities of such series occurring prior to the applicable Exchange Date shall be payable to Euro-clear and Cedel S.A. on such Interest Payment Date, upon delivery by Euro-clear and Cedel S.A. to the Trustee of any certificate specified as contemplated by Section 301, for credit without further interest on or after such Interest Payment Date to the respective accounts of the persons who are the beneficial owners of such temporary Global Security on such Interest Payment Date and who have each delivered to Euro-clear or Cedel S.A., as the case may be, any certificate specified as contemplated by Sections 301 and 311.

Section 305.    Registration, Registration of Transfer and Exchange.

The Company shall cause to be kept at the Corporate Trust Office of the Trustee a register (the register maintained in such office and in any other office or agency of the Company in a Place of Payment being herein sometimes collectively referred to as the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Company shall provide for the registration of Securities and of transfers of Securities. The Trustee is hereby appointed "Security Registrar" for the purpose of registering Securities and transfers of Securities as herein provided.

Upon surrender for registration of transfer of any Security of any series at the office or agency in a Place of Payment for that series, the Company shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Securities of the same series, of any authorized denominations and of a like aggregate principal amount and tenor.

At the option of the Holder, Registered Securities of any series may be exchanged for other Registered Securities of the same series, of any authorized denominations and of a like aggregate principal amount and tenor, upon surrender of the Registered Securities to be exchanged at such office or agency. Whenever any Securities are so surrendered for exchange, the Company shall execute, and the Trustee shall authenticate and deliver, the Securities that the Holder making the exchange is entitled to receive.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Registered Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Company or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Company and the

LC960780.006

25

Security Registrar duly executed, by the Holder thereof or his or her attorney duly authorized in writing.

No service charge shall be made for any registration of transfer or exchange of Securities, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Section 304, 906 or 1107 not involving any transfer.

The Company shall not be required (1) to issue, register the transfer of Securities of any series during a period beginning at the opening of business 15 days before the day of the mailing or publishing, as applicable, of a notice of redemption of Securities of that series selected for redemption under Section 1103 and ending at the close of business on the day of such mailing, (2) to register the transfer of any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part, or (3) to exchange any Bearer Security so selected for redemption except that such a Bearer Security may be exchanged for a Registered Security of like tenor and terms of that series, provided that such Bearer Security shall be simultaneously surrendered for redemption.

At the option of the Holder, Bearer Securities of any series may be exchanged for Registered Securities of the same series of any authorized denomination or denominations and of a like aggregate principal amount and tenor, upon surrender of the Bearer Securities to be exchanged at any such office or agency, with all unmatured coupons and all matured coupons in default thereto appertaining. If the Holder of a Bearer Security is unable to produce any such unmatured coupon or coupons or matured coupon or coupons in default, such exchange may be effected if the Bearer Securities are accompanied by a payment in funds acceptable to the Company and the Trustee in an amount equal to the face amount of such missing coupon or coupons, or the surrender of such missing coupon or coupons may be waived by the Company and Trustee if there is furnished to them such security or indemnity as they may require to save each of them and any Paying Agent harmless. If thereafter the Holder of such Bearer Security shall surrender to any Paying Agent any such missing coupon in respect of which such a payment shall have been made, such Holder shall be entitled to receive the amount of such payment; provided, however, that except as otherwise provided in this Indenture, interest represented by coupons shall be payable only upon presentation and surrender of such coupons at an office or agency located outside the United States. Notwithstanding the foregoing, in case a Bearer Security of any series is surrendered at any such office or agency in exchange for a Registered Security of the same series and like tenor after the close of business at such office or agency on (i) any Regular Record Date and before the opening of business at such office or agency on the relevant Interest Payment Date, or (ii) any Special Record Date and before the opening of business at such office or agency on the related proposed date for payment of Defaulted Interest, such Bearer Security shall be surrendered without the coupon relating to such Interest Payment Date or proposed date for payment, as the case may be, and interest or Defaulted Interest, as the case may be, will not be payable on such Interest Payment Date or proposed date for payment, as the case may be, in respect of the Registered Security issued in exchange for such Bearer Security, but will be payable only to the Holder of such coupon when due in accordance with the provisions of this Indenture.

Notwithstanding any other provision in this Indenture, no Global Security may be transferred to, or registered or exchanged for Securities registered in the name of, any Person other than the Depositary for such Global Security or any nominee thereof, and no such transfer may be registered, unless (1) such Depositary (A) notifies the Company that it is unwilling or unable to continue as Depositary for such Global Security or (B) ceases to be a clearing agency registered under the Exchange Act if required to be so registered, (2) the Company executes and delivers to the Trustee a Company Order that such Global Security shall be so transferable,

registrable and exchangeable, and such transfers shall be registrable. (3) there shall have occurred and be continuing an Event of Default with respect to the Securities evidenced by such Global Security or (4) there shall exist such other circumstances, if any, as have been specified for this purpose as contemplated by Section 301. Notwithstanding any other provision in this Indenture, a Global Security to which the restriction set forth in the preceding sentence shall have ceased to apply may be transferred only to, and may be registered and exchanged for Securities registered only in the name or names of, such Person or Persons as the Depositary for such Global Security shall have directed, and no transfer thereof other than such a transfer may be registered.

Every Security authenticated and delivered upon registration of transfer of, or in exchange for or in lieu of, a Global Security to which the restriction set forth in the first sentence of the preceding paragraph shall apply, whether pursuant to this Section, Section 304, 306, 906 or 1107 or otherwise, shall be authenticated, registered and delivered in the form of, and shall be, a Global Security.

Notwithstanding anything herein to the contrary, the exchange of Bearer Securities into Registered Securities shall be subject to applicable laws and regulations in effect at the time of exchange. Neither the Company, the Trustee nor the Security Registrar shall exchange any Bearer Securities into Registered Securities if the Company has received an Opinion of Counsel that as a result of such exchanges the Company would suffer adverse consequences under the United States Federal income tax laws and regulations then in effect and the Company has delivered to the Trustee a Company Order directing the Trustee not to make such exchanges thereafter, unless and until the Trustee receives a subsequent Company Order to the contrary. The Company shall deliver copies of such Company Order to the Security Registrar.

Section 306.    Mutilated, Destroyed, Lost and Stolen Securities or Coupons.

If any mutilated Security or a Security with a mutilated coupon appertaining thereto is surrendered to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (i) evidence to the Trustee's and the Company's satisfaction of the destruction, loss or theft of any Security and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and the Trustee shall upon the Company's request authenticate and deliver, in lieu of any such destroyed, lost or stolen Security (and mutilated coupon, if applicable), a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Security or coupon has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security or coupon; provided, however, that the interest on any Bearer Security shall be payable only at an office or agency located outside the United States and only upon presentation and surrender of the coupons appertaining thereto (unless otherwise specified as contemplated by Section 301).

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of counsel and the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any mutilated, destroyed, lost or stolen Security, or in exchange for a Security to which a mutilated, destroyed, lost or stolen coupon appertains, shall constitute an original additional contractual obligation of the Company, whether or not the mutilated, destroyed, lost or stolen Security and its coupons, if any, or the destroyed, lost or stolen coupon shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of that series and their coupons, if any, duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities or coupons.

Section 307.   Payment of Interest; Interest Rights Preserved.

Except as otherwise provided as contemplated by Section 301 with respect to any series of Securities, interest on any Registered Security that is payable, and is punctually paid or duly provided for, on any Interest Payment Date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest.

In case a Bearer Security of any series is surrendered in exchange for a Registered Security of such series after the close of business (at an office or agency in a Place of Payment for such series) on any Regular Record Date and before the opening of business on the next succeeding Interest Payment Date, such Bearer Security shall be surrendered without the coupon relating to such Interest Payment Date and interest will not be payable on such Interest Payment Date in respect of the Registered Security issued in exchange for such Bearer Security, but will be payable only to the Holder of such coupon when due in accordance with the provisions of this Indenture.

Any interest on any Registered Security of any series that is payable, but is not punctually paid or duly provided for, on any Interest Payment Date (herein called "Defaulted Interest") shall forthwith cease to be payable to the Holder on the relevant Regular Record Date by virtue of having been such Holder, and such Defaulted Interest may be paid by the Company, at its election in each case, as provided in Clause (1) or (2) below:

(1)     The Company may elect to make payment of any Defaulted Interest to the Persons in whose names the Securities of such series (or their respective Predecessor Securities) are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner.  The Company shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Security of such series and the date of the proposed payment, and at the same time the Company shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this Clause provided.  Thereupon the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest that shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment.  The Trustee shall promptly notify the Company of such Special Record Date and, in the name and at the expense of the Company, shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder of Securities of such series at his or her address as it appears in the Security Register, not less than 10 days prior to such

Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been so mailed, such Defaulted Interest shall be paid to the Persons in whose names the Securities of such series (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following Clause (2).

(2)    The Company may make payment of any Defaulted Interest on the Securities of any series in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Securities may be listed, and upon such notice as may be required by such exchange, if, after notice is given by the Company to the Trustee of the proposed payment pursuant to this Clause, such manner of payment shall be deemed practicable by the Trustee.

Subject to the foregoing provisions of this Section, each Security delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Security shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other Security.

In the case of any Security that is converted after any Regular Record Date and on or prior to the next succeeding Interest Payment Date (other than any Security whose maturity is prior to such Interest Payment Date), Interest shall be payable on such Interest Payment Date notwithstanding such conversion, and such Interest (whether or not punctually paid or duly provided for) shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on such Regular Record Date. Except as otherwise expressly provided in the immediately preceding sentence, in the case of any Security that is converted, Interest after the date of conversion of such Security shall not be payable.

Section 308.    Persons Deemed Owners.

Prior to due presentment of a Registered Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name such Registered Security is registered as the owner of such Registered Security for the purpose of receiving payment of principal of and any premium and (except as contemplated by Section 301(3) and subject to Section 307) any interest on such Registered Security and for all other purposes whatsoever, whether or not such Registered Security is overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be affected by notice to the contrary.

Title to any Bearer Security and any coupons appertaining thereto shall pass by delivery. The Company, the Trustee and any agent of the Company or the Trustee may treat the bearer of any Bearer Security and the bearer of any coupon as the absolute owner of such Bearer Security or coupon for the purpose of receiving payment thereof or on account thereof and for all purposes whatsoever, whether or not such Bearer Security or coupon be overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be effected by notice to the contrary.

None of the Company, the Trustee, any Paying Agent or the Security Registrar shall have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial ownership interests of a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

Section 309.    Cancellation.

LC960780.006                                              29

All Securities or coupons surrendered for payment, redemption, registration of transfer or exchange or for credit against any sinking fund payment shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee and all Registered Securities and matured coupons so delivered shall be promptly canceled by it. All Bearer Securities and unmatured coupons so delivered shall be canceled. All Bearer Securities and unmatured coupons held by the Trustee pending such cancellation shall be deemed to be delivered for cancellation for all purposes of this Indenture and the Securities. The Company may at any time deliver to the Trustee for cancellation any Securities previously authenticated and delivered hereunder that the Company may have acquired in any manner whatsoever, and may deliver to the Trustee (or to any other Person for delivery to the Trustee) for cancellation any Securities previously authenticated hereunder that the Company has not issued and sold, and all Securities so delivered shall be promptly canceled by the Trustee. No Securities shall be authenticated in lieu of or in exchange for any Securities canceled as provided in this Section, except as expressly permitted by this Indenture. All canceled Securities held by the Trustee shall be destroyed and a certificate of destruction provided to the Company.

Section 310.    Computation of Interest.

Except as otherwise specified as contemplated by Section 301 for Securities of any series, interest on the Securities of each series shall be computed on the basis of a 360-day year of twelve 30-day months.

Section 311.    Certificate by a Person Entitled to Delivery of a Bearer Security.

Whenever any provision of this Indenture contemplates that a Person shall be entitled to delivery of a Bearer Security, no delivery of such Bearer Security shall be made unless and until the Company shall have received certification substantially in the form of Exhibit A-1 and, if applicable, Exhibit A-2 and Exhibit B hereto, with only such changes as shall be approved by the Company and any additional certification as may be required pursuant to United States Department of Treasury regulations.

## ARTICLE FOUR

### Satisfaction And Discharge

Section 401.    Satisfaction and Discharge of Indenture.

This Indenture shall upon Company Request cease to be of further effect (except as to any surviving rights of conversion, registration of transfer or exchange of Securities herein expressly provided for), and the Trustee, at the expense of the Company, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture, when

(1)    either

(A)    all Securities theretofore authenticated and delivered and all coupons, if any, appertaining thereto (other than (i) Securities that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 306, (ii) Securities and coupons, if any, for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust, as provided in Section 1003, (iii) coupons appertaining to Bearer Securities surrendered in exchange for Registered Securities and maturing after such exchange, whose surrender is not required or has been waived as provided in this Indenture, and (iv)

coupons, if any, appertaining to the Securities called for redemption and maturing after the relevant Redemption Date, whose surrender has been waived as provided in this Indenture) have been delivered to the Trustee for cancellation; or

(B)    all such Securities not theretofore delivered to the Trustee for cancellation

(i)    have become due and payable, or

(ii)    will become due and payable at their Stated Maturity within one year, or

(iii)    are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Company,

and the Company, in the case of (i), (ii) or (iii) above, has deposited or caused to be deposited with the Trustee as trustee funds in trust for the purpose an amount sufficient to pay and discharge the entire indebtedness on such Securities not theretofore delivered to the Trustee for cancellation, for principal and any premium and interest to the date of such deposit (in the case of Securities that have become due and payable) or to the Stated Maturity or Redemption Date, as the case may be;

(2)    the Company has paid or caused to be paid all other sums payable hereunder by the Company; and

(3)    the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Company to the Trustee under Section 607, if money shall have been deposited with the Trustee pursuant to subclause (B) of Clause (1) of this Section, the obligations of the Trustee under Section 402 and the last paragraph of Section 1003 shall survive.

Section 402.    Application of Trust Money.

Subject to provisions of the last paragraph of Section 1003, all money deposited with the Trustee pursuant to Section 401 shall be held in trust and applied by it, in accordance with the provisions of the Securities and this Indenture, to the payment, either directly or through any Paying Agent (including the Company acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal and any premium and interest for whose payment such money has been deposited with the Trustee. All moneys deposited with the Trustee pursuant to Section 401 (and held by it or any Paying Agent) for the payment of Securities subsequently converted shall be returned to the Company upon Company Request.

# ARTICLE FIVE

## Remedies

Section 501.   Events of Default.

"Event of Default," wherever used herein with respect to Securities of any series, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(1)    default in the payment of any interest upon any Security of that series when it becomes due and payable, and continuance of such default for a period of 30 days; or

(2)    default in the payment of the principal of (or premium, if any, on) any Security of that series at its Maturity, upon redemption or otherwise; or

(3)    default in the payment of any sinking fund payment, when and as due by the terms of a Security of that series; or

(4)    default in the performance, or breach, of any covenant or warranty of the Company in this Indenture (other than a covenant or warranty a default in whose performance or whose breach is elsewhere in this Section specifically dealt with or which has expressly been included in this Indenture solely for the benefit of a series of Securities other than that series), and continuance of such default or breach for a period of 90 days after there has been given, by registered or certified mail, to the Company by the Trustee or to the Company and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of that series a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(5)    the entry by a court having jurisdiction in the premises of (A) a decree or order for relief in respect of the Company in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or (B) a decree or order adjudging the Company a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Company under any applicable Federal or state law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Company or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and the continuance of any such decree or order for relief or any such other decree or order unstayed and in effect for a period of 60 consecutive days; or

(6)    the commencement by the Company of a voluntary case or proceeding under any applicable Federal or state bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by it to the entry of a decree or order for relief in respect of the Company in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under any applicable Federal or State law, or the consent by it to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Company or of any substantial part of its property, or the making by it of an

assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due, or the taking of corporate action by the Company in furtherance of any such action; or

(7)    any other Event of Default or variations in the foregoing Events of Default provided with respect to Securities of that series.

Section 502.   Acceleration of Maturity; Rescission and Annulment.

If an Event of Default (other than an Event of Default due to certain events of bankruptcy, insolvency, or reorganization) with respect to Securities of any series at the time Outstanding occurs and is continuing, then in every such case the Trustee or the Holders of not less than 25% in principal amount of the Outstanding Securities of that series, or such other amount as may be specified with respect to Securities of that series, may declare the principal amount (or, if any of the Securities of that series are Original Issue Discount Securities, such portion of the principal amount of such Securities as may be specified in the terms thereof) of all of the Securities of that series to be due and payable immediately, by a notice in writing to the Company (and to the Trustee if given by Holders), and upon any such declaration such principal amount (or specified amount) shall become immediately due and payable.

At any time after such a declaration of acceleration with respect to Securities of any series has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter in this Article provided, the Holders of a majority in principal amount of the Outstanding Securities of that series, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if

(1)    the Company has paid or deposited with the Trustee a sum sufficient to pay

(A)    all overdue interest on all Securities of that series,

(B)    the principal of (and premium, if any, on) any Securities of that series which has become due otherwise than by such declaration of acceleration and any interest thereon at the rate or rates prescribed therefor in such Securities,

(C)    to the extent that payment of such interest is lawful, interest upon overdue interest at the rate or rates prescribed therefor in such Securities, and

(D)    all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel; and

(2)    all Events of Default with respect to Securities of that series, other than the non-payment of the principal of Securities of that series that has become due solely by such declaration of acceleration, have been cured or waived as provided in Section 513.

No such rescission shall affect any subsequent default or impair any right consequent thereon.

Section 503.   Collection of Indebtedness and Suits for Enforcement by Trustee.

The Company covenants that if

(1)    default is made in the payment of any interest on any Security when such interest becomes due and payable and such default continues for a period of 30 days, or

(2)     default is made in the payment of the principal of (or premium, if any, on) any Security at the Maturity thereof,

the Company will, upon demand of the Trustee, pay to it, for the benefit of the Holders of such Securities, the whole amount then due and payable on such Securities for principal and any premium and interest and, to the extent that payment of such interest shall be legally enforceable, interest on any overdue principal and premium and on any overdue interest, at the rate or rates prescribed therefor in such Securities, and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel.

If an Event of Default with respect to Securities of any series occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Holders of Securities of such series by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy.

Section 504.   Trustee May File Proofs of Claim.

In case of any judicial proceeding relative to the Company (or any other obligor upon the Securities), its property or its creditors, the Trustee shall be entitled and empowered, by intervention in such proceeding or otherwise, to take any and all actions authorized under the Trust Indenture Act in order to have claims of the Holders and the Trustee allowed in any such proceeding. In particular, the Trustee shall be authorized to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under Section 607.

No provision of this Indenture shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder of a Security or coupon any plan of reorganization, arrangement, adjustment or composition affecting the Securities or the rights of any Holder of a Security or coupon thereof or to authorize the Trustee to vote in respect of the claim of any Holder of a Security or coupon in any such proceeding; provided, however, that the Trustee may, on behalf of the Holders, vote for the election of a trustee in bankruptcy or similar official and be a member of a creditors' or other similar committee.

Section 505.   Trustee May Enforce Claims Without Possession of Securities.

All rights of action and claims under this Indenture or the Securities may be prosecuted and enforced by the Trustee without the possession of any of the Securities or coupons or the production thereof in any proceeding relating thereto, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders of the Securities and any coupons in respect of which such judgment has been recovered.

Section 506.   Application of Money Collected.

Any money collected by the Trustee pursuant to this Article shall be applied in the following order, at the date or dates fixed by the Trustee and, in case of the distribution of such money on account of principal or any premium or interest, upon presentation of the Securities and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

FIRST:  To the payment of all amounts due the Trustee under Section 607;

SECOND:  To the payment of the amounts then due and unpaid for principal of and any premium and interest on the Securities and interest evidenced by coupons in respect of which or for the benefit of which such money has been collected, ratably, without preference or priority of any kind, according to the amounts due and payable on such Securities and coupons first for any premium and interest, and second, for any principal, respectively; and

THIRD:  The balance, if any, to the Company.

With respect to Securities denominated in ECU, any other composite currency or a Foreign Currency and any matured coupons relating thereto, the amount payable on such Securities and coupons under this Section shall be determined by the Exchange Rate Agent by converting the currency in which the principal amount Outstanding of such series of Securities and matured but unpaid interest on such series of Securities is denominated into Dollars at the Exchange Rate as of the date of declaration of acceleration of Maturity of the Securities of such series.

Section 507.  Limitation on Suits.

No Holder of any Security of any series or related coupons shall have any right to institute any proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless

(1)  such Holder has previously given written notice to the Trustee of a continuing Event of Default with respect to the Securities of that series;

(2)  the Holders of not less than 25% in principal amount of the Outstanding Securities of that series shall have made written request to the Trustee to institute proceedings in respect of such Event of Default in its own name as Trustee hereunder;

(3)  such Holder or Holders have offered to the Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request in such amount as shall be reasonably acceptable to the Trustee;

(4)  the Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute any such proceeding; and

(5)  no direction inconsistent with such written request has been given to the Trustee during such 60-day period by the Holders of a majority in principal amount of the Outstanding Securities of that series;

it being understood and intended that no one or more of such Holders shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other of such Holders, or to obtain or to seek to obtain priority or preference over any other of such Holders or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all of such Holders.

LC960780.006                                        35

Section 508.    <u>Unconditional Right of Holders to Receive Principal, Premium and Interest and to Convert.</u>

Notwithstanding any other provision in this Indenture, the Holder of any Security or coupon shall have the right, which is absolute and unconditional, to receive payment of the principal of and any premium and (except as contemplated by Section 301(3) and subject to Section 307) interest on such Security or payment of such coupon on the respective Stated Maturities expressed in such Security or coupon (or, in the case of redemption, on the Redemption Date) and to institute suit for the enforcement of any such payment and the right to convert such Security in accordance with Article Thirteen and to institute suit for its enforcement, and such rights shall not be impaired without the consent of such Holder.

Section 509.    <u>Restoration of Rights and Remedies.</u>

If the Trustee or any Holder has instituted any proceeding to enforce any right or remedy under this Indenture and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Holder, then and in every such case, subject to any determination in such proceeding, the Company, the Trustee and the Holders shall be restored severally and respectively to their former positions hereunder and thereafter all rights and remedies of the Trustee and the Holders shall continue as though no such proceeding had been instituted.

Section 510.    <u>Rights and Remedies Cumulative.</u>

Except as otherwise provided with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities or coupons in the last paragraph of Section 306, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 511.    <u>Delay or Omission Not Waiver.</u>

No delay or omission of the Trustee or of any Holder of any Securities or coupons to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

Section 512.    <u>Control by Holders.</u>

The Holders of a majority in principal amount of the Outstanding Securities of any series shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee, with respect to the Securities of such series, provided that

(1)    such direction shall not be in conflict with any rule of law or with this Indenture, and

(2)    the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction.

Section 513.  Waiver of Past Defaults.

The Holders of not less than a majority in aggregate principal amount of the Outstanding Securities of any series may, on behalf of the Holders of all the Securities of such series and any related coupons, waive any past default hereunder with respect to such series and its consequences, except a default

(1)  in the payment of the principal of or any premium or interest on any Security of such series, or

(2)  in respect of a covenant or provision hereof that under Article Nine cannot be modified or amended without the consent of the Holder of each Outstanding Security of such series affected.

Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

Section 514.  Undertaking for Costs.

In any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, a court may require any party litigant in such suit to file an undertaking to pay the costs of such suit, and may assess costs against any such party litigant, in the manner and to the extent provided in the Trust Indenture Act; provided, however, that neither this Section nor the Trust Indenture Act shall be deemed to authorize any court to require such an undertaking or to make such an assessment in any suit instituted by the Trustee or the Company.

Section 515.  Waiver of Usury, Stay or Extension Laws.

The Company covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any usury, stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and the Company (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

## ARTICLE SIX

### The Trustee

Section 601.  Certain Duties and Responsibilities.

(a)  Except during the continuance of an Event of Default,

(1)  the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and