KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

SHERON KORPUS
(212) 506-1969

HOUSTON ——————————— ATLANTA ——————————— NEWARK

January 9, 2011

Honorable Kevin J. Carey
Chief United States Bankruptcy Judge
United States Bankruptcy Court for the
   District of Delaware
824 Market Street, Fifth Floor
Wilmington, Delaware 19801

    **Re:**   *In re Tribune Company, et al.*, Case No. 08-13141 (KJC) (collectively, "Tribune")

Dear Judge Carey:

    I write in response to Mr. Johnston's January 7, 2011 letter to the Court (the "January 7th Letter") with respect to twelve subpoenas (the "Subpoenas") issued by Law Debenture Trust Company of New York ("Law Debenture") to certain clients (the "Non-Proponent Credit Agreement Lenders" or "NPCALS") of Hennigan, Bennett & Dorman LLP ("HBD") in connection with discovery related to the plan confirmation process in the above-referenced chapter 11 cases (the "Chapter 11 Cases").

    On January 4, 2011, the parties held a meet and confer, which lasted all of ten minutes given HBD's unwillingness to engage in any meaningful dialogue. During the call, Law Debenture indicated that it was willing to negotiate the scope of the Subpoenas. HBD, however, maintained the position, which is reflected in its January 5th letter and January 7th Letter, that the NPCALS should be exempt from *any* discovery because they "are not sources of relevant information for the March 7, 2011 confirmation hearing as they are not proponents of a plan and have not directly participated in this case." *See* HBD letter, dated January 5, 2011, attached hereto as Exhibit A (the "January 5th Letter") During that call, HBD made no counter-proposal as to how to limit the scope of the Subpoenas, claiming they were entirely inappropriate.

    Following the Court's *Order*, dated January 7, 2011, at Law Debenture's initiative, the parties held a meet and confer that same evening in which Law Debenture agreed to limit the scope of the Subpoenas substantially in the following manner. First, Law Debenture agreed to eliminate request numbers 1-19 and 22, which constituted all but two of the "Relationship"

requests. Second, Law Debenture agreed to reduce the time period covered in the definition of "Relationship" from ten years to three years. Finally, Law Debenture suggested, as a way to ease the burden, the NPCALS perform electronic searches based upon limited search terms. Subsequent to the call, Law Debenture sent HBD a set of approximately thirty search terms to capture the most relevant documents. A copy of the email attaching the search terms is attached as Exhibit B. HBD made absolutely no counter-proposal and stood by its position that no discovery should be sought from the NPCALS. Of significance, HBD admitted that certain communications the NPCALS had with, for example, plan proponents concerning the merits of the plans may be relevant to the confirmation hearing but claimed – contrary to controlling law – that such discovery should be obtained from the plan proponents only, rather than the NPCALS. *Software Rights Archive, LLC v. Google, Inc.*, 2009 U.S. Dist. LEXIS 43835 at *6 (D. Del. May 21, 2009) ("there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party.") When asked whether Law Debenture would be entitled to such discovery from the NPCALS if the plan proponents did not have the requested documents in their possession and only the NPCALS possessed those documents (such as notes of telephone conversations with plan proponents), HBD could not provide a meaningful response. *Thus, under HBD's flawed logic, the NPCALS would be immune from discovery even if they are in possession of relevant information not obtainable from another source.*

The NPCALS' refusal to comply with discovery because they "only possess, at most, a limited amount of relevant information" is not only baseless but irreconcilable with the facts. The NPCALS are simply not "non-parties" as HBD would have this Court believe. They have been parties-in-interest for over a year. Indeed, under the CMO – which was negotiated in part by HBD as counsel for the NPCALS, Angelo Gordon and Oaktree and which the NPCALS concede in their December 27, 2010 letter applies to them – discovery can be obtained from the NPCALS as parties-in-interest. A copy of the December 27, 2010 letter is attached hereto as Exhibit C. HBD relies upon *In re Cusumano*, 162 F.3d 708, 717 (1st Cir. 1998) in arguing that "special weight" should be given to the NPCALS who are "stranger[s] to the contested plan confirmation matters." Yet, *In re Cusumano* is inapposite and discovery is appropriate here because, as discussed below, the NPCALS are far from strangers to this plan confirmation. *See Software Rights*, 2009 U.S. Dist LEXIS 43835, at *7-8 (citing *Peskoff v. Faber*, 2006 U.S. Dist. LEXIS 46372 at *9-10 (D.D.C. July 11, 2006) ("[T]his is not a situation, as Faber and Plaza Street would have the Court believe, where a non-party is burdened by a subpoena relating to litigation to which it is has no or only a peripheral interest. . . Faber and Plaza Street even appear to have the same counsel.")

Throughout the Chapter 11 Cases, HBD has continually represented as a single entity a large group of creditors known as the Credit Agreement Lenders, which currently encompass the NPCALS, Oaktree and Angelo Gordon. As early as November 20, 2009, HBD filed a Joint Statement of Representation of More Than One Creditor indicating that seven of the twelve NPCALS were a part of the larger group of creditors acting in concert as the Credit Agreement Lenders. While the constituency of the Credit Agreement Lenders has evolved throughout the Chapter 11 Cases, a core group has remained intact. Based upon the ten separate statements filed by HBD in compliance with Bankruptcy Rule 2019, a chart showing the involvement of

2

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

each of the NPCALS as members of the Credit Agreement Lenders is attached hereto as Exhibit D.

It is undisputable that the NPCALS, as Credit Agreement Lenders members, have been actively involved in the Chapter 11 Cases, including those issues that relate to the documents and communications requested in the Subpoenas. This activity includes, among other things:

- On November 24, 2009, the Credit Agreement Lenders' Status Conference Statement Regarding Leveraged ESOP Transaction (the "Transactions") and Outstanding Discovery Requests Thereto was filed, disclosing that the Credit Agreement Lenders held approximately $4.4 billion in debt and that "**as holders of more than half of the Credit Agreement indebtedness, the Credit Agreement Lenders likely will be involved . . . in any litigation commenced with respect to the Transactions.**"

- On February 11, 2010, the Credit Agreement Lenders objected to the motion by the Official Committee of Unsecured Creditors (the "Committee) seeking standing to prosecute claims arising out of the Transactions. On the same date, the Credit Agreement Lenders objected to a motion seeking the appointment of an examiner to investigate the Transactions.

- On May 24 and June 7, 2010, the Credit Agreement Lenders submitted two formal briefs to the Examiner that were considered as part of the investigation.

- The Credit Agreement Lenders also took an active role with respect to the April Plan and the negotiations that led to such plan, including filing a motion pursuant to Bankruptcy Rule 2004 seeking discovery from Centerbridge on April 2, 2010, submitting a response to the filing of the April Plan on April 12, 2010, objecting to the disclosure statement in support of the April Plan on May 13, 2010, and objecting to a preliminary pre-trial scheduling order in connection with the April Plan on July 12, 2010.

- The Credit Agreement Lenders also repeatedly attempted to prevent the Debtors from extending their exclusive right to file a plan of reorganization, objecting to such extensions on November 24, 2009 and February 15, 2010, and informing the Court on multiple occasions that they wanted to file their own plan – at one point even specifically raising the concept of a "subsidiary only" plan.

- The NPCALS even participated in the mediation, contrary to their assertion in the January 7th Letter. The Court in paragraph 2 of the *Order Appointing Mediator*, dated September 1, 2010 ("Mediation Order"), specifically provided that the Credit Agreement Lenders are a

3

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

"Mediation Party." Less than a week before mediation commenced, HBD filed a Rule 2019 statement, which indicated to the Court that notwithstanding its filing of the Oaktree/Angelo Gordon Plan on September 17, 2010, it still represented the Credit Agreement Lenders. Thus, at the time HBD attended the mediation, it was acting as counsel for not just Oaktree and Angelo Gordon but for the NPCALS as well. At no time during the mediation did HBD assert it was only acting on behalf of Oaktree and Angelo Gordon.

As we mentioned to HBD on our January 7th call and as is demonstrated above, the Subpoenas are directly relevant to the issues in the Chapter 11 Cases and are directed at parties whom are believed to have responsive documents in their possession given their role in the Chapter 11 Cases. For instance, as discussed above, the Creditor Agreement Lenders proclaimed in their court filings on November 24, 2009 that they would likely be involved in litigating the claims arising from the Transactions. The treatment of the litigation concerning the Transactions is a core issue in the three proposed plans of reorganization and to the extent the NPCALS have documents relating to those issues, they should be produced. Furthermore, the following issues, among others, are relevant: (i) the viability of the claims arising from the Transactions; (ii) the settlement of such claims; (iii) the circumstances surrounding the negotiations of the various plans and settlements proposed and reached (or abandoned, as the case may be); and (iv) any evidence that pressure was applied between the parties to gain their assent and acquiescence, which could support a motion for a designation of votes. Simply because the NPCALS are not plan proponents does not mean that they were not involved in key aspects of the negotiation and formulation of the Debtor/Committee/Lender Plan, including the proposed settlement of the LBO-Related Causes of Action. Law Debenture is entitled to discovery to ascertain such involvement and given the NPCALS' role in opposing the April Plan, Examiner submissions and mediation, it is likely they possess relevant documents.

HBD also takes issue with the Subpoena on the grounds that the only information that the NPCALS possess is information about Tribune that was obtained from public sources. Given the substantial involvement of the NPCALS in these Chapter 11 Cases, this assertion is implausible. Moreover, the Subpoena specifically excludes that category of information. HBD further claims that the NPCALS never became "restricted" and never had access to confidential or proprietary information regarding Tribune. In that case, the burden of production should be slight and the NPCALS have no reason to complain about burden, but, more importantly, that argument does not apply to any communications between the NPCALS and parties other than the Debtors.

We remain willing to discuss the Subpoenas further with NPCALS' counsel, but given their categorical refusal to produce any documents whatsoever, we are grateful that the Court has scheduled a hearing to advance this matter.

Sincerely,

*Sheron Korpus* /MBS

Sheron Korpus

4

# **EXHIBIT A**

**HENNIGAN, BENNETT & DORMAN LLP**

LAWYERS

865 SOUTH FIGUEROA STREET

SUITE 2900

LOS ANGELES, CALIFORNIA 90017

TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1103
MESTERJ@HBDLAWYERS.COM

January 5, 2011

**BY E-MAIL**

Sheron Korpus, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

      Re:    In re Tribune Company, *et al.* (collectively, "Tribune")

Dear Mr. Korpus:

      This letter confirms our meet and confer yesterday, January 4, 2011, regarding the 13 subpoenas issued by Law Debenture Trust Company of New York ("Law Debenture") to certain of our clients in the above captioned case who are not proponents of a plan of reorganization (the "Non-Proponent Clients"). As stated in the prior correspondence from my colleague Brent Truitt and again during the meet and confer, we do not believe that the Non-Proponent Clients are sources of relevant information for the March 7, 2011 confirmation hearing as they are not proponents of a plan and have not directly participated in this case.

      In response, Matthew Stein wrote in his letter of December 31, 2010 that because our Non-Proponent Clients had appeared in the bankruptcy case and were parties in interest, they were susceptible to Law Debenture's discovery requests. During our conference, you asserted that Law Debenture did not seek discovery from the Non-Proponent Clients merely because they were clients of our firm, but rather that the subpoenas were issued because the Non-Proponent Clients have been involved in the bankruptcy case, have taken positions in the case, and were part of a group of clients represented by this firm that made submissions to the examiner.

      As I stated, the Non-Proponent Clients have not participated in any activities relevant to the upcoming confirmation hearings. Moreover, the Non-Proponent Clients did not participate in the mediation or any of the negotiations leading to the Debtor/Committee/Lender Plan. Discovery from them is no moPre appropriate than it would be from any of the hundreds of other parties who have appeared in the bankruptcy case and to whom Law Debenture and Aurelius have not made document requests. In fact, unlike Oaktree and Angelo Gordon, the Non-

HENNIGAN, BENNETT & DORMAN LLP

Sheron Korpus, Esq.
January 5, 2011
Page 2

Proponent Clients have not become "restricted" and have not had access to any confidential or proprietary information regarding Tribune. Accordingly, any information they might possess about Tribune either was obtained from public sources or is highly likely to be privileged and protected from disclosure in any event.

Given the undue burden imposed by the subpoenas and the strong likelihood that little, if any, relevant information would be produced, the Non-Proponent Clients should not be subjected Law Debenture's discovery requests. As stated during our meet and confer, given your unwillingness to withdraw the subpoenas we intend to submit a letter to the Court in the very near future requesting judicial resolution of this issue. Should you reconsider your position or wish to discuss the matter further, we are available for a further meet and confer.

Sincerely,

Joshua M. Mester

# **EXHIBIT B**

# Matthew B. Stein

**From:** Matthew B. Stein
**Sent:** Saturday, January 08, 2011 2:49 PM
**To:** 'johnstonj@hbdlawyers.com'; 'MesterJ@hbdlawyers.com'
**Cc:** Sheron Korpus; Christine Montenegro
**Subject:** In re Tribune Co.

Jim and Josh:

As we discussed during our meet and confer last evening, here are the search terms and date ranges that we are requesting that the Non-Proponent Clients use in connection with their respective searches:

**Date range: January 1, 2008 – Sept. 1, 2009**
AG
Angelo
Bendernagel
Bigelow
Chadbourne
Chandler
EGI
EGII
"Equity Group Investments"
"Equity Office Properties"
fraudulent w/1 conveyance
Grenesko
(James or Jim) w/1 Conlan
Krakauer
Kurtz
"LBO-related causes of action"
Lemay
Oaktree
"Preserved causes of action"
Seife, Siefe
Settle* w/25 LBO
"sharing provision"
Sidley
(Step or Phase) w/2 (one or Two or 1 or 2)
TRB
Trib!
Zell

**Date range: Sept. 1, 2009 - December 3, 2010**
AG
Angelo
"April Proposed Settlement"
Aur*
Bendernagle
Berg /2 Jeff!
Bigelow
Chadbourne
Chandler

1

EGI
EGI
"Equity Group Investments"
"Equity Office Properties"
examiner or examiners or examiner's
fraudulent w/1 conveyance
Grenesko
(James or Jim) w/1 Conlan
Judge w/2 Gross
Klee
Krakauer
Kurtz
"LBO-related causes of action"
LeMay
"Noteholder Plan"
Oaktree
PHONES
"Preserved causes of action"
Seife, Siefe
Settle* w/25 LBO
"settlement plan"
Shapiro w/2 Mark
"sharing provision"
Sidley
(Step or Phase) w/2 (one or Two or 1 or 2)
TRB
Trib!
Wilderotter
Zell
Zuckerman

## EXHIBIT C

HENNIGAN, BENNETT & DORMAN LLP

LAWYERS

865 SOUTH FIGUEROA STREET

SUITE 2900

LOS ANGELES, CALIFORNIA 90017

TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1116
TRUITTB@HBDLAWYERS.COM

December 27, 2010

**BY E-MAIL**

Paul J. Burgo, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

      Re:    In re Tribune Company, *et al.* (collectively, "Tribune")

Dear Mr. Burgo:

      I am writing with respect to the 15 subpoenas (the "Subpoenas") that you issued on behalf of Law Debenture Trust Company of New York to certain of our clients (the "Non-Proponent Clients") in connection with the Tribune chapter 11 cases.[1]  We believe that the Subpoenas impose an undue and unnecessary burden on the Non-Proponent Clients and, as set forth below, would like to discuss them with you.

      First, the documents requested by the Subpoenas -- from creditors of Tribune who have not participated in any material way in the settlement or plan processes -- appear to be entirely irrelevant to issues surrounding confirmation of a plan of reorganization for Tribune and not reasonably calculated to lead to the discovery of admissible evidence.  For instance, one broad category of requested documents (represented by request numbers 1 through 22) largely concerns various relationships among various parties who have been actively involved in the chapter 11 and settlement processes.  Any information the Non-Proponent Clients might have about such relationships would seem to be irrelevant to the issues surrounding plan confirmation.

      The balance of the requests concern such things as analyses and negotiation of settlements, resolution of "LBO-Related Causes of Action," preparation of plans of

---

[1]    For avoidance of doubt, this letter does not concern the document requests you sent to Oaktree Capital Management and Angelo, Gordon & Co. or the subpoena issued on behalf of Law Debenture to this firm.  Those requests will be addressed separately.

HENNIGAN, BENNETT & DORMAN LLP

Paul J. Burgo, Esq.
December 27, 2010
Page 2

reorganization, analyses of the Examiner's Report and communications regarding the mediation. None of the Non-Proponent Clients played any material role in those activities.

Furthermore, the breadth of the documents requested (comprising an astounding 89 separate requests) closely approaches that of the requests directed at our clients who have been actively involved in the case and who have co-proposed one of the plans under consideration (Oaktree and Angelo Gordon). Requiring each of the Non-Proponent Clients to engage in essentially the same search and review of documents as that being performed by plan co-proponents is both unreasonable and inappropriate, particularly in view of the lack of relevance of any responsive documents that might be identified for production.

In short, the Subpoenas appear to have been issued to harass the Non-Proponent Clients for no reason other than that their counsel, our firm, also represents two co-proponents of a plan. Given the breadth and irrelevance of the documents being requested, the Subpoenas impose an undue burden on the Non-Proponent Clients, and we are prepared to ask the Court to quash or modify them.

We would prefer, however, to attempt to resolve the matter with you on a consensual basis. Therefore, we hereby request the opportunity to meet and confer with you regarding the Subpoenas. In accordance with paragraph 14 of the Discovery and Scheduling Order for Plan Confirmation entered in this case, please let me know your availability to hold such a conference within the next three business days.

Thank you.

Sincerely,

A. Brent Truitt[2]

---

[2]   Admitted in N.Y. and D.C. only.

# **EXHIBIT D**

Involvement of NPCALS in Credit Agreement Lenders Group[1]

1. Anchorage Advisors, L.L.C. – 11/20/2009 – 5/9/2010; 10/15/2010 – Present
2. Avenue Investments, LP. *et al.* – 11/20/2009 – 5/9/2010; 10/1/2010 – Present
3. Canyon Capital Advisors, LLC – 11/20/2009 – 5/9/2010; 10/1/2010 – Present
4. Contrarian Funds LLC – 11/20/2009 – Present
5. CVI GVF (Lux) Master S.a.r.l. - 11/20/2009 – Present
6. Franklin Floating Rate Master Series, *et al.* – 2/11/2010 – Present
7. Golden Tree Asset Management, LP, *et al.* – 12/14/2009 – 5/9/2010; 10/1/2010 – Present
8. Knighthead Master Fund, L.P. – 11/20/2009 – Present
9. Luxor Capital Group, LP – 12/14/2009 – Present
10. Mason Capital Management, LLC – 10/1/2010 – Present
11. Thracia LLC – 5/10/2010 – Present
12. Värde Investment Partners, L.P. 11/20/2009 – Present

---

[1] Sources: Joint Verified Statement of Representation of More Than One Creditor By Hennigan Bennett & Dorman, LLP and Young Conaway Stargatt & Taylor, LLP, dated November 20, 2009 [Dkt. No. 2600] and the nine amendments thereto, dated December 14, 2009 [Dkt. No. 2852]; February 11, 2010 [Dkt. No. 3370]; April 2, 2010 [Dkt. No. 3927]; April 12, 2010 [Dkt. No. 3998]; May 10, 2010 [Dkt. No. 4268]; May 13, 2010 [Dkt. No. 4374]; September 20, 2010 [Dkt. No. 5739]; October 1, 2010 [Dkt. No. 5868]; and October 15, 2010 [Dkt. No. 5984].