

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON
LOS ANGELES

NEW YORK
PALO ALTO
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

jbendernagel@sidley.com
(202) 736 8136

FOUNDED 1866

January 11, 2011

**By Hand**

Chief Judge Kevin J. Carey
U.S. Bankruptcy Court
for the District of Delaware
824 North Market Street
Wilmington, DE 19801

    Re:    In re Tribune Co., Case No. 08-13141 (KJC)

Dear Chief Judge Carey:

    We submit this letter on behalf of Debtor/Committee/Lender Plan Proponent Group (the "DCLPP Group") in response to the January 7, 2011 letter filed by the Noteholder Plan Proponent Group (the "Noteholders").

    **Background**. In December 2009, Debtors moved for entry of an order authorizing them to establish and maintain a centralized document depository and establishing certain settlement negotiation protections pursuant to Section 105(a) of the Bankruptcy Code. On December 15, 2009, the Court entered an order granting the Motion (the "Document Depository Order") (attached as Exhibit B to 1/7/11 Letter). The Document Depository Order provides, among other things, that all written and oral communications between and among the Negotiating Parties in connection with discussions of the Leveraged ESOP Transactions "shall be deemed confidential," may not be "used" or "disclosed" except in connection with "settlement discussions" and "may not be introduced at any trial or hearing or deposition." Following entry of that Order, the Debtors and several parties in these proceedings engaged in a series of negotiations which ultimately resulted in a settlement of the LBO-Related Causes of Action. The settlement was embodied in a Plan of Reorganization filed by the Debtors on April, 12, 2010 (the "April Plan").

    In mid-April 2010, the Court approved a schedule for the confirmation hearing on the April Plan. At or around the same time, the Court granted a motion filed by Wilmington Trust for the appointment of an examiner to investigate the LBO-Related Causes of Action. In appointing the Examiner, the Court made clear that the work of the Examiner and the confirmation process were to proceed simultaneously. The Examiner completed his report in late

July 2010 and his report was publicly-filed early August 2010. Following the completion of the Examiner's Report, the parties to the settlement embodied in the April Plan engaged in further discussions to determine what, if any changes should be made in the settlement and/or the April Plan. As a result of these discussions, the April Plan was ultimately abandoned.

The Debtors then sought appointment of a mediator to assist in connection with the formulation and proposal of a confirmable plan of reorganization. On September 1, 2010, the Court entered an Order Appointing Mediator (the "Mediation Order"), which appointed the Honorable Kevin Gross as mediator. (Attached as Exhibit C to 1/7/11 Letter). Consistent with Local Rule 9019-5(d)(i),[1] the Mediation Order explicitly provides that certain discussions, information and material relating to the Mediation "are strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding." In particular, the Order protects (a) all "discussions among the Mediating Parties in relation to the Mediation, including discussions with or in the presence of the Mediator"; (b) all "documents or information provided to the Mediator or the Mediation Parties in the course of the Mediation"; (c) "correspondence, draft resolutions, offers and counteroffers produced for or as a result of the Mediation" and (d) "communications between the Mediator and the Examiner or the Examiner's Professionals."

Following entry of the Mediation Order, the Debtors and certain parties participated in several days of mediation under the auspices of Judge Gross. The mediation process ultimately resulted in the settlement of the LBO-Related Causes of Action that is now embodied in the Amended Plan of Reorganization filed by the Debtors and other proponents of the plan in December, 2010 (the "Settlement").

**Aurelius' Discovery Requests**. Pursuant to the terms of the Case Management Order, Aurelius, acting on behalf of the Noteholders Plan Proponents, served wide ranging discovery, including discovery of the materials expressly protected from discovery by the Document Depository Order. The Noteholders have insisted that, notwithstanding the terms of the Document Depository Order, the Mediation Order and Local Rule 9019-5(d)(i), the parties must either waive the protections of these Orders and rules or be precluded from offering any evidence at trial respecting the mediation, including the Mediator's endorsement of the Settlement Plan, or that the Settlement Plan was the product of arms-length bargaining.

The members of the DCLPP Group strenuously dispute any suggestion of fraud or collusion or lack of good faith and note that the DCL Settlement was reached in a Mediation

---

[1] Local Rule 9019-5(d)(i) provides that the mediator and the participants in mediation "are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation." The rule further provides that "[n]o person may rely on or introduce" in any arbitral, judicial or other proceeding any "evidence pertaining to any aspect of the mediation effort ," including but not limited to: "(A) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (B) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (C) proposals made or views expressed by the mediator; (D) statements or admissions made by a party in the course of the mediation; and (E) documents prepared for the purpose of, in the course of, or pursuant to the mediation." The local rule also makes clear that, "without limiting the foregoing, Rule 408 of the Federal Rules of Evidence, any applicable federal or state statute, rule, common law or judicial precedent relating to the privileged nature of settlement discussions, mediations or other alternative dispute resolution procedures shall apply."

conducted under the auspices of a respected bankruptcy judge appointed by order of this Court.[2] The members of the DCLPP Group also note that neither the Mediation Order nor common sense support Aurelius' initial position that the Order applies only to a single day of a multi-day mediation. Nonetheless, in an effort to resolve the dispute, the Debtors offered in a December 30, 2010 meet and confer session to withdraw their objection based on the Document Depository Order and Rule 408 and to narrow the scope of the protections afforded by the Mediation Order and Local Rule 9019-5 so that only the following documents and/or communications would be protected from discovery documents or information:

- written or oral communications between a Mediation Party and Judge Gross;

- written or oral communications between or among Mediation Parties concerning the Mediation to the extent such communications were exchanged on any Mediation Day (*i.e.*, a day on which Judge Gross convened a Mediation Session among two or more Mediation Parties);

- written or oral communications reflecting the substance of any discussions between or among Mediation Parties on a Mediation Day or documenting any offers or counter-offers exchanged or agreements reached on a Mediation Day; and

- written or oral communications between Judge Gross and the Examiner or the Examiner's professionals concerning the Mediation.

*See* Exh. A hereto. The Noteholders responded to this proposal by filing their January 7, 2011 letter initiating the dispute resolution procedures of the Case Management Order.

**Discussion**. The Court should enter an order embodying the proposal of the DCLPP Group set forth above. The proposal provides the Noteholders with more than adequate discovery to assess whether the DCL Settlement satisfies the requirements of the Bankruptcy Code while at the same time preserving and enforcing the core policy of confidentiality underlying Court-ordered mediation.

The Noteholders wrongly frame the issue as a "binary choice." (1/7/11 letter at 4). According to them, Plan Proponents must either "voluntarily waive" the protections of the Local Rules and this Court's prior Orders or be precluded from offering "any evidence at trial respecting the Mediation," including the Mediators' endorsement of the Settlement, or "seeking to show that the Settlement was the product of arms-length bargaining and not fraud or collusion." (*Id.*) That is a false dichotomy. Bankruptcy Code Section 1129(a)(3) requires that a Plan of Reorganization, including one embodying the settlement of claims, be "proposed in good faith and not by any means required by law." As this Court has recently reiterated, "for purposes of determining good faith, 'the important point of inquiry is the plan itself and whether such Plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Abitibibowater, Inc.*, 2010 WL 4823839 at *5 (Bankr. D. Del. Nov. 22, 2010)(quoting *In re PBS Holding Corp.*, 228 F.3d 224, 242 (3rd Cir. 2000), in turn quoting *In re Abbotts Dairies of*

---

[2] The Noteholders' letter includes a variety of gratuitous and baseless insinuations as to the motives and good faith of Debtors' management, the Special Committee and the Committee of Unsecured Creditors. (*See* 1/7/10 Letter at 2 n.2). This is neither the time nor place to respond to such accusations; suffice to say that the DCLPP Group takes strong exception to these statements and will address them at the confirmation hearing.

*Pennsylvania, Inc.*, 788 F.2d 143, 150 n.5 (3rd Cir. 2000)). Although this inquiry may involve examination of "the process leading" to the formulation of the Plan and settlement, *In re Premier Int'l Holdings, Inc.*, 2010 WL 2745964 at *11 (Bankr. D. Del. April 29, 2010), examination of this *process* does not and need not entail examination of the *substance* of protected mediation communications. This is especially true where, as here, such communications have taken place under the explicit protection of court orders and local rules mandating confidentiality and parties have justifiably relied upon these protections.[3] Notably, the Noteholders have not cited a single case – including this Court's decisions in *Exide* and *Spansion* – that permitted discovery of mediation communications, or in which evidence of the process or result of a mediation was precluded because parties declined to "voluntarily waive" the protections of applicable Rules or Court Orders protecting against the disclosure of such materials.

The DCLPP Group's Proposal provides the Noteholders with adequate means to assess and challenge the Plan. It permits discovery of communications prior to the Mediation as well as most communications between the Mediation Parties that occurred outside the presence of the Mediator on a day that is not a Mediation Day. Putting aside the reckless implication that Judge Gross could have been party to a fraud, it simply strains credulity to suggest that evidence of a lack of good faith in connection with the Settlement would be found only in the limited communications protected from disclosure under the DCLPP Group's proposal.[4]

In concluding, we note that the DCLPP Group's proposal accommodates and respects the strong policy in favor of court ordered mediation, and that it is only by enforcing the confidentiality provisions of the mediation rules and the reasonable expectations of the parties that the Court can further this policy. *See In re RDM Sports Group*, 277 B.R. 415, 419 (Bankr. N.D. Ga. 2002); *Sheldone v. Penn Turnpke Comm'n*, 104 F. Supp. 2d 511, 517 (W.D. Pa. 2000). If parties were required to disclose the contents of core mediation communications or otherwise be precluded from presenting evidence as to the process and result of mediation, parties would be loath to engage in mediation, thereby undermining the vitality of the process. For all of these reasons, the Debtors respectfully request that the Court enter an Order embodying the DCLPP Group's proposal and reject the Noteholder's request.

Very truly yours,

*James F. Bendernagel Jr.*
James F. Bendernagel Jr.

JFB:fpw

---

[3] The Noteholders' reliance on *In re RFE Indus., Inc.*, 283 F.3d 159 (3d. Cir. 2002) to suggest that the parties could not have had a reasonable expectation that their communications would be protected is without merit. *RFE* simply held that a language of a dismissal order entered by the bankruptcy court in connection with a settlement should be construed broadly to include the power of the court to later disapprove the settlement. 283 F.3d at 163. The case had nothing to do with discovery, mediation or reliance on express protections from discovery provided by a Court Order or Local Rule.

[4] Similarly reckless is the Noteholders' suggestion that Judge Gross endorsed as fair a settlement because his "only objective was to get a settlement that the parties would agree to" rather than a settlement that is reasonable and fair to all parties. (1/7/10 Letter at 4).

**DRAFT**

## Protocol Relating to the Mediation Order

The following documents and/or communications are excluded from disclosure pursuant to the Order Appointing Mediator (Docket No. 5591) ("Mediation Order") and Delaware Local Rule 9019-5:

1. Mediation Statements, Ownership Statements, and any other document or information provided to Judge Gross in connection with the Mediation; provided, however, that documents and information prepared or created independent of the Mediation shall not be excluded from disclosure or deemed inadmissible merely because such documents or information also were provided to Judge Gross in connection with the Mediation.

2. Written or oral communications between a Mediation Party and Judge Gross, including without limitation e-mails and telephonic communications, at any point in time.

3. Any written or oral communications between a Mediation Party and another Mediation Party concerning the Mediation to the extent such communications were exchanged on any Mediation Day.

4. Any written or oral communications reflecting the substance of any discussions between or among Mediation Parties on a Mediation Day;or documenting any offers or counter-offers exchanged, or agreements reached, on a Mediation Day;

5. Written or oral communications between Judge Gross and the Examiner or the Examiner's professionals concerning the Mediation.

For purposes of this Agreement the term "Mediation" shall refer to the Mediation that took place pursuant to the September 1, 2010 Mediation Order. The term "Mediation Party"

shall have the meaning ascribed to it in Paragraph 2 of the Mediation Order. The term "Mediation Day" shall mean the days on which Judge Gross convened a Mediation session among two or more Mediation Parties; specifically, September 26-27, October 3-4, October 8 and November 17, 2010[*subject to confirmation/supplementation*]. For the avoidance of doubt, only the documents and information specifically identified as such in items 1 through 5 above shall be excluded from disclosure and/or deemed inadmissible based upon the Mediation Order and/or Local Rule 9019-5.

### [Protocol Relating to the Document Depository Order

Admissibility and disclosure of Settlement Material, as that term is defined in the December 15, 2009 Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing Settlement Negotiation Protections Pursuant to 11 U.S.C. 105(A) (the "Depository Order"), concerning the Mediation shall not be limited by the Depository Order.]

### [Rule 408 No Limit to Disclosure

Disclosure of Settlement Material and documents or information concerning the Mediation shall not be limited by Federal Rule of Evidence 408 or any similar law or rule.]