**EXHIBIT A**

2008 Consolidated Audit Engagement Letters



**PricewaterhouseCoopers LLP**
One North Wacker
Chicago IL 60606
Telephone (312) 298 2000
Facsimile (312) 298 2001

May 1, 2008

Mr. William A. Osborn
Director, Audit Committee Chair of Tribune Company
435 North Michigan Avenue
Chicago, IL 60611

Dear Mr. Osborn:

The purpose of this letter is to confirm our understanding of the terms of our engagement as independent accountants of Tribune Broadcasting Holdco, LLC and Tribune Finance, LLC. (the "Companies").

Services and related reports

We will audit the financial statements of the Companies at December 28, 2008 and for the year then ending. Upon completion of our audits, we will provide the Companies with our audit reports on the financial statements referred to above. If, for any reasons caused by or relating to the affairs or management of the Companies, we are unable to complete the audits, we may decline to issue reports as a result of this engagement.

Our responsibilities and limitations

The objective of a financial statement audit is the expression of an opinion on the financial statements. We will be responsible for performing the audits in accordance with standards established by the PCAOB. These standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. The audits will include examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation.

We will consider the Companies' internal control over financial reporting solely for the purpose of determining the nature, timing and extent of auditing procedures necessary for expressing our opinions on the financial statements. This consideration will not be sufficient to enable us to provide assurance on the effectiveness of internal control over financial reporting. However, any significant deficiencies and material weaknesses relating to internal control over financial reporting identified during our audits will be communicated to the audit committee. All deficiencies in internal control (i.e., those deficiencies in internal control over financial reporting that are of a lesser magnitude than significant deficiencies) relating to internal control over financial reporting identified while performing our work will be communicated to management of the Companies.

We will design our audits to obtain reasonable, but not absolute, assurance of detecting errors or fraud that would have a material effect on the financial statements as well as other illegal acts having a direct and material effect on financial statement amounts. Our audits will not include a detailed audit of

PRICEWATERHOUSECOOPERS

transactions, such as would be necessary to disclose errors or fraud that did not cause a material misstatement of the financial statements. It is important to recognize that there are inherent limitations in the auditing process. Audits are based on the concept of selective testing of the data underlying the financial statements, which involves judgment regarding the areas to be tested and the nature, timing, extent and results of the tests to be performed. Audits are, therefore, subject to the limitation that material errors or fraud or other illegal acts having a direct and material financial statement impact, if they exist, may not be detected. Because of the characteristics of fraud, particularly those involving concealment through collusion, falsified documentation and management's ability to override controls, an audit designed and executed in accordance with standards established by the PCAOB may not detect a material fraud. Further, while effective internal control reduces the likelihood that errors, fraud or other illegal acts will occur and remain undetected, it does not eliminate that possibility. For these reasons we cannot ensure that errors, fraud or other illegal acts, if present, will be detected. However, we will communicate to the audit committee and management of the Companies, as appropriate, any such matters identified during our audits.

We also are responsible for determining that the audit committee is informed about certain other matters related to the conduct of the audits, including (i) any disagreements with management about matters that could be significant to the Companies' financial statements or our reports thereon; (ii) any serious difficulties encountered in performing the audits; (iii) information relating to our independence with respect to the Companies; and (iv) other matters related to the Companies' financial statements including its accounting policies and practices; and (v) all significant deficiencies and material weaknesses identified during the audits, as previously mentioned. Lastly, we are responsible for ensuring that the audit committee receives copies of certain written communications between us and management, including management representation letters and written communications on accounting, auditing, internal control or operational matters.

The audits will not be planned or conducted in contemplation of reliance by any specific third party or with respect to any specific transaction. Therefore, items of possible interest to a third party will not be specifically addressed and matters may exist that would be assessed differently by a third party, possibly in connection with a specific transaction.

Management's responsibilities

The Companies' management is responsible for the financial statements and information referred to above. In this regard, management is responsible for establishing policies and procedures that pertain to the maintenance of accounting records, the authorization of receipts and disbursements, the safeguarding of assets, the proper recording of transactions in the accounting records, and for reporting financial information in conformity with accounting principles generally accepted in the United States of America. Management also is responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us (i) about all known or suspected fraud affecting the entity involving (a) management, (b) employees who have significant roles in internal control over financial reporting, and (c) others where the fraud could have a material effect on the financial statements; and (ii) of its knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, analysts, regulators, short sellers, or others. Management is responsible for (i) adjusting the financial statements to correct material misstatements and for affirming to us that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the year under audit are immaterial, both individually and in the aggregate, to the financial statements taken as a whole; and (ii) notifying us of all material weaknesses, including other significant deficiencies, in the design or operation of the Companies' internal control over financial reporting that are reasonably likely to adversely affect the Companies' ability to record, process, summarize and report external financial data reliably in

PRICEWATERHOUSECOOPERS

accordance with generally accepted accounting principles. Management also is responsible for identifying and ensuring that the Companies comply with the laws and regulations applicable to its activities.

As part of management's responsibility for the financial statements and the effectiveness of its system of internal control over financial reporting, management is responsible for making available to us, on a timely basis, all of the Companies' original accounting records and related information and Company personnel to whom we may direct inquiries. As required by standards of the PCAOB, we will make specific inquiries of management and others about the representations embodied in the financial statements and the effectiveness of internal control over financial reporting. Standards of the PCAOB also require that we obtain written representations covering audited financial statements from certain members of management. The results of our audit tests, the responses to our inquiries and the written representations comprise the evidential matter we intend to rely upon in forming our opinions on the financial statements.

Other documents

Standards established by the PCAOB require that we read any annual report that contains our audit report. The purpose of this procedure is to consider whether other information in the annual report, including the manner of its presentation, is materially inconsistent with information appearing in the financial statements. We assume no obligation to perform procedures to corroborate such other information as part of our audits.

With regard to electronic filings, such as in connection with the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system, you agree that, before filing any document in electronic format with the SEC with which we are associated, management of the Companies will advise us of the proposed filing on a timely basis. We will provide the Companies with a signed copy of our reports and consents. These manually signed documents will serve to authorize the use of our name prior to any electronic transmission by the Companies. For our files, management of the Companies will provide us with a complete copy of the document as accepted by EDGAR.

The Companies may wish to include our reports on these financial statements in a registration statement proposed to be filed under the Securities Act of 1933 or in some other securities offering. You agree that the aforementioned audit reports, or reference to our Firm, will not be included in any such offering without our prior permission or consent. Any agreement to perform work in connection with an offering, including an agreement to provide permission or consent, will be a separate engagement.

Agreement not to demand jury trial

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, the Companies and PricewaterhouseCoopers LLP agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to our services and fees for this engagement.



Timing and fees

Completion of our work is subject to, among other things, 1) appropriate cooperation from the Companies' personnel, including timely preparation of necessary schedules, 2) timely responses to our inquiries, and 3) timely communication of all significant accounting and financial reporting matters. When and if for any reason the Companies is unable to provide such schedules, information and assistance, PricewaterhouseCoopers LLP and you will mutually revise the fee to reflect additional services, if any, required of us to complete the audits.

Our fee estimates are based on the time required by the individuals assigned to the engagement. We estimate our fees for this audit engagement will be $225,000, subject to the terms and conditions above. We will update you on significant changes in our fee estimate as the audits progress.

We also will bill the Companies for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings and minimize total costs.

Invoices rendered are due and payable upon receipt.

Other matters

PricewaterhouseCoopers LLP is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PricewaterhouseCoopers"), is the U.S. firm of the global network of PricewaterhouseCoopers firms (exclusive of PricewaterhouseCoopers, the "PricewaterhouseCoopers Firms"). In the course of providing the services hereunder, we may, in our discretion, draw on the resources of other PricewaterhouseCoopers Firms. You agree that we may provide any information we receive in connection with this engagement to other PricewaterhouseCoopers Firms for the purpose of providing the services set forth in this engagement letter and/or for internal administrative and regulatory compliance purposes.

Any additional services that may be requested and we agree to provide will be the subject of separate arrangements.

In the event we are requested or authorized by the Companies or required by government regulation, subpoena, or other legal process to produce our working papers or our personnel as witnesses with respect to our engagement for the Companies, the Companies will, so long as we are not a party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such a request.

The Companies agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers LLP arising out of this engagement to anyone, except to an entity with which the Companies merges or an entity which acquires all or substantially all of the assets of the Companies and where, in either case, the assignee entity agrees to be bound by this provision.

This engagement letter reflects the entire agreement between us relating to the services covered by this letter. It replaces and supersedes any previous proposals, correspondence and understandings,

PRICEWATERHOUSECOOPERS

whether written or oral. The agreements contained in this engagement letter shall survive the completion or termination of this engagement.

* * * * *

If there are any questions, please call William T. England at (312) 298-2808. If the services outlined herein are in accordance with your requirements and if the above terms are acceptable, please have one copy of this letter signed in the spaces provided below and return it to us.

Very truly yours,

PricewaterhouseCoopers LLP

PricewaterhouseCoopers LLP

cc: Samuel Zell
Chandler Bigelow

PRICEWATERHOUSECOOPERS

The services and terms as set forth in this letter are agreed to.

Tribune Company by and through its Audit Committee

By: William A. Osborn

William A. Osborn
Audit Committee Chair

5-7-08

(Date)

By signing below I acknowledge and agree to my obligation to ensure that the responsibilities of the Companies and its management as set forth herein are properly discharged:

By:

Samuel Zell
Chairman and Chief Executive Officer

5/7/08

(Date)

By:

Chandler Bigelow
Senior Vice President and Chief Financial Officer

5-7-08

(Date)



**PricewaterhouseCoopers LLP**
One North Wacker
Chicago IL 60606
Telephone (312) 298 2000
Facsimile (312) 298 2001

May 1, 2008

Mr. William A. Osborn
Director, Audit Committee Chair of Tribune Company
435 North Michigan Avenue
Chicago, IL 60611

Dear Mr. Osborn:

The purpose of this letter is to confirm our understanding of the terms of our engagement as independent accountants of Tribune Company (the "Company").

<u>Services and related report</u>

We will perform an integrated audit of the consolidated financial statements of the Company at December 28, 2008 and for the year then ending and of the Company's internal control over financial reporting as of December 28, 2008. Upon completion of our work, we will provide the Company with our report on the audit work referred to above. If, for any reasons caused by or relating to the affairs or management of the Company, we are unable to complete our integrated audit, we may decline to issue a report as a result of this engagement.

In conjunction with the annual financial statement audit, we will perform reviews of the Company's unaudited consolidated quarterly financial information for each of the first three quarters in the year ending December 28, 2008, before the Form 10-Q is filed. These reviews will be conducted in accordance with the standards established by the Public Company Accounting Oversight Board (the "PCAOB") and are substantially less in scope than an audit. Accordingly, a review may not reveal material modifications necessary to make the quarterly financial information conform with generally accepted accounting principles. We will communicate to the audit committee and management any matters that come to our attention as a result of the review that we believe may require material modifications to the quarterly financial information to make it conform with accounting principles generally accepted in the United States of America. If, for any reasons caused by or relating to the affairs or management of the Company, we are unable to complete our review, we will notify the audit committee and management.

<u>Our responsibilities and limitations</u>

The objective of a financial statement audit is the expression of an opinion on the financial statements. We will be responsible for performing the audit in accordance with the standards established by the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The audit will include examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We will consider the Company's internal

PRICEWATERHOUSECOOPERS

control over financial reporting in determining the nature, timing and extent of auditing procedures necessary for expressing our opinion on the financial statements.

The objective of an audit of internal control over financial reporting is the expression of an opinion on the effectiveness of the Company's internal control over financial reporting. We will be responsible for performing the audit in accordance with the standards established by the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. The audit will include obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control over financial reporting based on the assessed risk, and performing such other procedures as we consider necessary in the circumstances.

Each of the following circumstances should be regarded as an indicator that a material weakness in internal control over financial reporting exists:

- Identification of fraud, whether or not material, on the part of senior management;
- Restatement of previously issued financial statements to reflect the correction of a material misstatement;
- Identification by the auditor of a material misstatement of financial statements in the current period in circumstances that indicate that the misstatement would not have been detected by the company's internal control over financial reporting; and
- Ineffective oversight of the company's external financial reporting and internal control over financial reporting by the company's audit committee.

Under the standards established by the PCAOB, the existence of one or more material weaknesses will require us to issue an adverse opinion regarding the effectiveness of the Company's internal control over financial reporting.

All significant deficiencies and material weaknesses relating to internal control over financial reporting identified while performing our work will be communicated in writing to management and the audit committee. All deficiencies in internal control over financial reporting (i.e., those deficiencies in internal control over financial reporting that are of a lesser magnitude than significant deficiencies) identified while performing our work will be communicated in writing to management of the Company, and the Audit Committee will be informed when such a communication has been made. We will communicate in writing to the Board of Directors of the Company if we conclude that the oversight of the Company's external financial reporting and internal control over financial reporting by the Company's audit committee is ineffective.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness of internal control over financial reporting from December 28, 2008, the date of our audit of the Company's internal control over financial reporting, to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

We will design our audits to obtain reasonable, but not absolute, assurance of detecting errors or fraud that would have a material effect on the financial statements as well as other illegal acts having a direct and material effect on financial statement amounts, and of identifying material weaknesses in internal control over financial reporting. Our audits will not include a detailed audit of transactions, such as would be necessary to identify errors or fraud that did not cause a material misstatement of the financial statements or procedures designed to identify deficiencies in internal control over financial reporting that, individually or in combination, are less severe than a material weakness. It is important to

PRICEWATERHOUSECOOPERS

recognize that there are inherent limitations in the auditing process. Audits are based on the concept of selective testing of the data underlying the financial statements, which involves judgment regarding the areas to be tested and the nature, timing, extent and results of the tests to be performed. Audits are, therefore, subject to the limitation that material errors or fraud or other illegal acts having a direct and material financial statement impact, if they exist, may not be detected. Because of the characteristics of fraud, an audit designed and executed in accordance with the standards established by the PCAOB may not detect a material misstatement due to fraud. Characteristics of fraud include (i) concealment through collusion among management, employees, or third parties; (ii) withheld, misrepresented, or falsified documentation; and (iii) the ability of management to override or instruct others to override what otherwise appears to be effective controls. Further, while effective internal control over financial reporting reduces the likelihood that errors, fraud or other illegal acts will occur and remain undetected, it does not eliminate that possibility. For these reasons we cannot ensure that errors, fraud or other illegal acts, if present, will be detected. However, we will communicate to the audit committee and management of the Company, as appropriate, any such matters identified during our audit.

We also are responsible for determining that the audit committee is informed about certain other matters related to the conduct of our audits, including (i) any disagreements with management about matters that could be significant to the Company's financial statements or our report thereon; (ii) any serious difficulties encountered in performing the audit; (iii) information relating to our independence with respect to the Company; (iv) other matters related to the Company's financial statements including its significant accounting policies and practices, including critical accounting policies and alternative treatments within accounting principles generally accepted in the United States; and (v) all significant deficiencies and material weaknesses identified during the audit, as previously mentioned. Lastly, we are responsible for ensuring that the audit committee receives copies of certain written communications between us and management, including management representation letters and written communications on accounting, auditing, internal control or operational matters.

The financial statement audit and the audit of the Company's internal control over financial reporting will not be planned or conducted in contemplation of reliance by any specific third party or with respect to any specific transaction. Therefore, items of possible interest to a third party will not be specifically addressed and matters may exist that would be assessed differently by a third party, possibly in connection with a specific transaction.

Management's responsibilities

The Company's management is responsible for the financial statements and information referred to above including establishing and maintaining adequate internal control over financial reporting. In this regard, management is responsible for establishing policies and procedures that pertain to the maintenance of accounting records, the authorization of receipts and disbursements, the safeguarding of assets, the proper recording of transactions in the accounting records, and for reporting financial information in conformity with accounting principles generally accepted in the United States of America. Management also is responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us (i) about all known or suspected fraud affecting the entity involving (a) management, (b) employees who have significant roles in internal control over financial reporting, and (c) others where the fraud could have a material effect on the financial statements; and (ii) of its knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, analysts, regulators, short sellers, or others. Management is responsible for (i) adjusting the financial statements to correct material misstatements and for affirming to us that the effects of any uncorrected misstatements aggregated by us during the

PRICEWATERHOUSECOOPERS

current engagement and pertaining to the year under audit are immaterial, both individually and in the aggregate, to the financial statements taken as a whole; and (ii) notifying us of all deficiencies in the design or operation of internal control over financial reporting identified as part of management's assessment, including separately disclosing to us all such deficiencies that it believes to be significant deficiencies or material weaknesses in internal control over financial reporting. Management also is responsible for identifying and ensuring that the Company complies with the laws and regulations applicable to its activities. Furthermore, management of the Company is responsible for:

- Accepting responsibility for the effectiveness of the Company's internal control over financial reporting;
- Evaluating the effectiveness of the Company's internal control over financial reporting using suitable control criteria;
- Supporting its evaluation with sufficient evidential matter, including documentation, and
- Presenting a written assessment of the effectiveness of the Company's internal control over financial reporting as of the end of the Company's most recent fiscal year.

As part of management's responsibility for the financial statements and the effectiveness of internal control over financial reporting, management is responsible for making available to us, on a timely basis, all of the Company's original accounting records and related information and company personnel to whom we may direct inquiries. Inadequate documentation of the design of controls and the absence of sufficient documented evidence to support management's assessment of the operating effectiveness of internal control over financial reporting are internal control deficiencies that could result in a limitation on the scope of the audit.

As required by the standards of the PCAOB, we will make specific inquiries of management and others about the representations embodied in the financial statements and the internal control over financial reporting. Standards of the PCAOB also require that we obtain written representations regarding the financial statements and the internal control over financial reporting from certain members of management. The results of our tests, the responses to our inquiries and the written representations comprise the evidential matter we intend to rely upon in forming our opinion on the financial statements and the effectiveness of the Company's internal control over financial reporting. Similarly, the results of our analytical procedures, the responses to our inquiries and the written representations obtained comprise the basis for our review on the unaudited quarterly financial information.

Document retention

The Company agrees to maintain documentation sufficient to support its assessment of internal control over financial reporting as of December 28, 2008 for a period of seven years from the date of our audit report.

Other documents

Standards established by the PCAOB require that we read any annual report that contains our audit report. The purpose of this procedure is to consider whether other information in the annual report, including the manner of its presentation, is materially inconsistent with information appearing in the financial statements or management's assessment of the effectiveness of the Company's internal control over financial reporting. We assume no obligation to perform procedures to corroborate such other information as part of our audit.

PRICEWATERHOUSECOOPERS

With regard to electronic filings, such as in connection with the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system, you agree that, before filing any document in electronic format with the SEC with which we are associated, management of the Company will advise us of the proposed filing on a timely basis. We will provide the Company with a signed copy of our report(s) and consent(s). These manually signed documents will serve to authorize the use of our name prior to any

The Company may wish to include our report on these financial statements and internal control over financial reporting in a registration statement proposed to be filed under the Securities Act of 1933 or in some other securities offering. You agree that the aforementioned audit report, or reference to our Firm, will not be included in any such offering without our prior permission or consent. Any agreement to perform work in connection with an offering, including an agreement to provide permission or consent, will be a separate engagement.

Agreement not to demand jury trial

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, the Company and PricewaterhouseCoopers LLP agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to our services and fees for this engagement.

Timing and fees

Completion of our work is subject to, among other things, 1) appropriate cooperation from the Company's personnel, including timely preparation of necessary schedules; 2) timely responses to our inquiries; and 3) timely communication of all significant accounting, financial, and internal control over financial reporting matters. When and if for any reason the Company is unable to provide such schedules, information and assistance, PricewaterhouseCoopers LLP and you will mutually revise the fee to reflect additional services, if any, required of us to complete our work.

Our fees are based on the time required by the individuals assigned to the engagement. We estimate our fees for this integrated audit engagement will be $1,590,000, subject to the terms and conditions above. We will update you on significant changes in our fee estimate as the audit progresses.

We also will bill the Company for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings and minimize total costs. We estimate out-of-pocket expenses to be $130,000.

Invoices rendered are due and payable upon receipt.

Other matters

PricewaterhouseCoopers LLP is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

PRICEWATERHOUSECOOPERS

PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PricewaterhouseCoopers"), is the U.S. firm of the global network of PricewaterhouseCoopers firms (exclusive of PricewaterhouseCoopers, the "PricewaterhouseCoopers Firms"). In the course of providing the services hereunder, we may, in our discretion, draw on the resources of other PricewaterhouseCoopers Firms. You agree that we may provide any information we receive in connection with this engagement to other PricewaterhouseCoopers Firms for the purpose of providing the services set forth in this engagement letter and/or for internal administrative and regulatory compliance purposes.

Any additional services that may be requested and we agree to provide will be the subject of separate arrangements.

In the event we are requested or authorized by the Company or required by government regulation, subpoena, or other legal process to produce our working papers or our personnel as witnesses with respect to our engagement for the Company, the Company will, so long as we are not a party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such a request.

The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers LLP arising out of this engagement to anyone, except to an entity with which the Company merges or an entity which acquires all or substantially all of the assets of the Company and where, in either case, the assignee entity agrees to be bound by this provision.

This engagement letter reflects the entire agreement between us relating to the services covered by this letter. It replaces and supersedes any previous proposals, correspondence and understandings, whether written or oral. The agreements contained in this engagement letter shall survive the completion or termination of this engagement.

* * * * *

If there are any questions, please call William T. England at (312) 298-2808. If the services outlined herein are in accordance with your requirements and if the above terms are acceptable, please have one copy of this letter signed in the spaces provided below and return it to us.

Very truly yours,

PricewaterhouseCoopers LLP

PricewaterhouseCoopers LLP

cc: Samuel Zell
Chandler Bigelow

PRICEWATERHOUSECOOPERS

The services and terms as set forth in this letter are agreed to.

Tribune Company by and through its Audit Committee

By: ______________________________
William A. Osborn
Audit Committee Chair

5-7-08
(Date)

By signing below I acknowledge and agree to my obligation to ensure that the responsibilities of the Company and its management as set forth herein are properly discharged:

By: ______________________________
Samuel Zell
Chairman and Chief Executive Officer

5/7/08
(Date)

By: ______________________________
Chandler Bigelow
Senior Vice President and Chief Financial Officer

5-7-08
(Date)