**EXHIBIT E**

2010 Consolidated Audit Engagement Letter



PricewaterhouseCoopers LLP
One North Wacker
Chicago IL 60606
Telephone (312) 298 2000
Facsimile (312) 298 2001

May 5, 2010

Mr. William A. Osborn
Director, Audit Committee Chair of Tribune Company
435 North Michigan Avenue
Chicago, IL 60611

Dear Mr. Osborn:

The purpose of this letter is to confirm our understanding of the terms of our engagement as independent accountants of Tribune Company (the "Company").

### 2010 Integrated Audit of the Consolidated Financial Statements and Internal Control Over Financial Reporting - Services and related report

We will perform an integrated audit of the consolidated financial statements of the Company at December 26, 2010 and for the year then ending and of the effectiveness of the Company's internal control over financial reporting as of December 26, 2010. Upon completion of our work, we will provide the Company with our report on the audit work referred to above. If for any reason relating to the affairs or management of the Company we are unable to complete our integrated audit, we may decline to issue a report as a result of this engagement.

In conjunction with the annual financial statement audit, we will perform reviews of the Company's unaudited consolidated quarterly financial information for each of the first three quarters in the year ending December 26, 2010. These reviews will be conducted in accordance with the standards established by the Public Company Accounting Oversight Board (the "PCAOB") and are substantially less in scope than an audit. Accordingly, a review may not reveal material modifications necessary to make the quarterly financial information conform with generally accepted accounting principles. We will communicate to the audit committee and management any matters that come to our attention as a result of the review that we believe may require material modifications to the quarterly financial information to make it conform with accounting principles generally accepted in the United States. If for any reason relating to the affairs or management of the Company we are unable to complete our review, we will notify the audit committee and management.

### Our responsibilities and limitations

The objective of a financial statement audit is the expression of an opinion on the financial statements. We will be responsible for performing the audit in accordance with the standards established by the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The audit will include examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We will consider the Company's internal



**PRICEWATERHOUSECOOPERS**

control over financial reporting in determining the nature, timing and extent of auditing procedures necessary for expressing our opinion on the financial statements.

The objective of an audit of internal control over financial reporting is the expression of an opinion on the effectiveness of the Company's internal control over financial reporting. We will be responsible for performing the audit in accordance with the standards established by the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. The audit will include obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control over financial reporting based on the assessed risk, and performing such other procedures as we consider necessary in the circumstances.

Under the standards established by the PCAOB, the existence of one or more material weaknesses will require us to issue an adverse opinion regarding the effectiveness of the Company's internal control over financial reporting.

All significant deficiencies and material weaknesses relating to internal control over financial reporting identified while performing our work will be communicated in writing to management and the audit committee. All deficiencies in internal control over financial reporting (i.e., those deficiencies in internal control over financial reporting that are of a lesser magnitude than significant deficiencies) identified while performing our work will be communicated in writing to management of the Company, and the Audit Committee will be informed when such a communication has been made. We will communicate in writing to the Board of Directors of the Company if we conclude that the oversight of the Company's external financial reporting and internal control over financial reporting by the Company's audit committee is ineffective.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness of internal control over financial reporting from December 26, 2010, the date of our audit of the Company's internal control over financial reporting, to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

We will design our audit to obtain reasonable, but not absolute, assurance of detecting errors or fraud that would have a material effect on the financial statements as well as other illegal acts having a direct and material effect on financial statement amounts, and of identifying material weaknesses in internal control over financial reporting. Absolute assurance is not attainable due to the nature of audit evidence and the characteristics of fraud. Our audit will not include a detailed audit of transactions, such as would be necessary to identify errors or fraud that did not cause a material misstatement of the financial statements or procedures designed to identify deficiencies in internal control over financial reporting that, individually or in combination, are less severe than a material weakness. It is important to recognize that there are inherent limitations in the auditing process. An audit is based on the concept of selective testing of the data underlying the financial statements, which involves judgment regarding the areas to be tested and the nature, timing, extent and results of the tests to be performed. An audit is, therefore, subject to the limitation that material errors or fraud or other illegal acts having a direct and material financial statement impact, if they exist, may not be detected. Because of the

# PriceWaterhouseCoopers

characteristics of fraud, an audit designed and executed in accordance with the standards established by the PCAOB may not detect a material misstatement due to fraud. Characteristics of fraud include (i) concealment through collusion among management, employees, or third parties; (ii) withheld, misrepresented, or falsified documentation; and (iii) the ability of management to override or instruct others to override what otherwise appears to be effective controls. Further, while effective internal control over financial reporting reduces the likelihood that errors, fraud or other illegal acts will occur and remain undetected, it does not eliminate that possibility. For these reasons we cannot ensure that errors, fraud or other illegal acts, if present, will be detected. However, we will communicate to the audit committee and management of the Company, as appropriate, any such matters identified during our audit.

We also are responsible for determining that the audit committee is informed about certain other matters related to the conduct of our audit, including (i) any disagreements with management about matters that could be significant to the Company's financial statements or our report thereon; (ii) any serious difficulties encountered in performing the audit; (iii) information relating to our independence with respect to the Company; (iv) other matters related to the Company's financial statements including its significant accounting policies and practices, including critical accounting policies and alternative treatments within accounting principles generally accepted in the United States; and (v) all significant deficiencies and material weaknesses identified during the audit, as previously mentioned. Lastly, we are responsible for ensuring that the audit committee receives copies of certain written communications between us and management, including management representation letters and written communications on accounting, auditing, internal control or operational matters.

The financial statement audit and the audit of the Company's internal control over financial reporting will not be planned or conducted in contemplation of reliance by any specific third party or with respect to any specific transaction. Therefore, items of possible interest to a third party will not be specifically addressed and matters may exist that would be assessed differently by a third party, possibly in connection with a specific transaction.

Management's responsibilities

The Company's management is responsible for the financial statements and information referred to above including establishing and maintaining adequate internal control over financial reporting. In this regard, management is responsible for establishing policies and procedures that pertain to the maintenance of accounting records, the authorization of receipts and disbursements, the safeguarding of assets, the proper recording of transactions in the accounting records, and for reporting financial information in conformity with accounting principles generally accepted in the United States. Management also is responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us (i) about all known or suspected fraud affecting the entity involving (a) management, (b) employees who have significant roles in internal control over financial reporting, and (c) others where the fraud could have a material effect on the financial statements; and (ii) of its knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, analysts, regulators, short sellers, or others. Management is responsible for (i) adjusting the financial statements to correct material misstatements and for affirming to us that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the year under audit are immaterial, both individually and in the

PRICEWATERHOUSECOOPERS

aggregate, to the financial statements taken as a whole; and (ii) notifying us of all deficiencies in the design or operation of internal control over financial reporting identified as part of management's assessment, including separately disclosing to us all such deficiencies that it believes to be significant deficiencies or material weaknesses in internal control over financial reporting. Management also is responsible for identifying and ensuring that the Company complies with the laws and regulations applicable to its activities. Furthermore, management of the Company is responsible for:

- Establishing and maintaining internal control over financial reporting;
- Evaluating the effectiveness of the Company's internal control over financial reporting using suitable control criteria;
- Supporting its evaluation with sufficient evidential matter, including documentation, and
- Presenting a written assessment of the effectiveness of the Company's internal control over financial reporting as of the end of the Company's most recent fiscal year.

As part of management's responsibility for the financial statements and the effectiveness of internal control over financial reporting, management is responsible for making available to us, on a timely basis, all of the Company's original accounting records and related information and company personnel to whom we may direct inquiries. Management is responsible for maintaining evidential matter, including documentation of the design of controls to provide reasonable support for management's assessment of the operating effectiveness of internal control over financial reporting.

As required by the standards of the PCAOB, we will make specific inquiries of management and others about the representations embodied in the financial statements and the internal control over financial reporting. Standards of the PCAOB also require that we obtain written representations regarding the financial statements and the internal control over financial reporting from certain members of management. The results of our tests, the responses to our inquiries and the written representations comprise the evidential matter we intend to rely upon in forming our opinion on the financial statements and the effectiveness of the Company's internal control over financial reporting. Similarly, the results of our analytical procedures, the responses to our inquiries and the written representations obtained comprise the basis for our review on the unaudited quarterly financial information.

Document retention

The Company agrees to maintain documentation sufficient to support its assessment of internal control over financial reporting as of December 26, 2010 for a period of seven years from the date of our audit report.

Other documents

Standards established by the PCAOB require that we read any annual report (or similar document) that contains our audit report. The purpose of this procedure is to consider whether other information in the annual report, including the manner of its presentation, is materially inconsistent with information appearing in the financial statements or management's assessment of the effectiveness of the Company's internal control over financial reporting. We assume no obligation to perform procedures to corroborate such other information as part of our audit.

4

# PRICEWATERHOUSECOOPERS

With regard to electronic filings, such as in connection with the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system, you agree that, before filing any document in electronic format with the SEC with which we are associated, management of the Company will advise us of the proposed filing on a timely basis. We will provide the Company with a signed copy of our report(s) and consent(s). These manually signed documents will serve to authorize the use of our name prior to any electronic transmission by the Company. For our files, management of the Company will provide us with a complete copy of the document as accepted by EDGAR.

The Company may wish to include our report on these financial statements and internal control over financial reporting in a registration statement proposed to be filed under the Securities Act of 1933 or in some other securities offering. You agree that the aforementioned audit report, or reference to our Firm, will not be included in any such offering without our prior permission or consent. Any agreement to perform work in connection with an offering, including an agreement to provide permission or consent, will be a separate engagement.

Additionally, regulations established by certain non-U.S. countries include a requirement for the auditor to be registered in that country if the Company offers its securities in the non-U.S. country or provides financial information to a non-U.S. regulator or government. The potential consequences of our non-compliance with these regulatory regimes in a timely manner can be severe for both our Firm and the Company. Accordingly, you will notify us of (i) your current or planned offering of securities in a non-U.S. country or (ii) when you have provided or plan to provide audited financial statements to a non-U.S. regulator or government in connection with your access to its capital markets, whether or not you include or refer to our report (and internal control over financial reporting, as applicable) or include reference to our Firm.

### Agreement not to demand jury trial

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, the Company and PricewaterhouseCoopers LLP agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to our services and fees for this engagement.

### Timing and fees

Completion of our work is subject to, among other things, 1) appropriate cooperation from the Company's personnel, including timely preparation of necessary schedules; 2) timely responses to our inquiries; and 3) timely communication of all significant accounting, financial, and internal control over financial reporting matters. When and if for any reason the Company is unable to provide such schedules, information and assistance, PricewaterhouseCoopers LLP and you will mutually revise the fee to reflect additional services, if any, required of us to complete our work.

Our fees are based on the time required by the individuals assigned to the engagement. We estimate our fees for this integrated audit engagement will be $1,400,000, subject to the terms and conditions above. We will update you on significant changes in our fee estimate as the audit progresses.

We also will bill the Company for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of

# PricewaterhouseCoopers ®

running our travel department in a manner to maximize cost savings and minimize total costs. We estimate out-of-pocket expenses to be $75,000.

We will submit detailed billing statements and request payment of our fees in accordance with the United States Bankruptcy Code. Additionally due to the bankruptcy we are required to perform additional procedures on the financial statements including financial statement disclosures as well as follow administrative processes for time keeping and billing. We estimate our fees for this time will be $150,000. We will update you on significant changes in our fee estimate for this area as the audit progresses.

We may use temporary contract staff to perform certain tasks on your engagement and will bill for that time at the rate that corresponds to PwC staff providing a similar level of service. Upon request, we will be happy to provide details on the training, supervision and billing arrangements we use in connection with these professionals.

Other matters

PricewaterhouseCoopers LLP is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

PricewaterhouseCoopers LLP is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms. In the course of providing the services herein, we may, in our discretion, draw on the resources of or subcontract to other PricewaterhouseCoopers firms or to PricewaterhouseCoopers LLP subsidiaries outside the United States. You agree that we may provide any information we receive in connection with this engagement to such other PricewaterhouseCoopers firms and subsidiaries for the purpose of providing the services set forth in this engagement letter and/or for internal administrative and regulatory compliance purposes. Unless another PricewaterhouseCoopers firm is contracted by you or a group entity to provide any of the services which are the subject of this engagement letter, provision of the services remains the responsibility of PricewaterhouseCoopers LLP alone.

Any additional services that may be requested and we agree to provide will be the subject of separate arrangements.

In the event we are requested or authorized by the Company or required by government regulation, subpoena, or other legal process to produce our working papers or our personnel as witnesses with respect to our engagement for the Company, the Company will, so long as we are not a party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such a request.

The Company agrees that it will not, directly or indirectly, agree to assign or transfer this engagement letter or any rights, obligations, claims or proceeds from claims against PricewaterhouseCoopers LLP arising under this engagement letter to anyone, except to an entity with which the Company merges or an entity which acquires all or substantially all of the assets of the Company and where, in either case,

# PRICEWATERHOUSECOOPERS

the assignee entity agrees to be bound by this provision. Any assignment or transfer by the Company in violation of this paragraph shall be void and invalid.

This engagement letter reflects the entire agreement between us relating to the services covered by this letter. It replaces and supersedes any previous proposals, correspondence and understandings, whether written or oral. The agreements contained in this engagement letter shall survive the completion or termination of this engagement.

\* \* \* \* \*

We are pleased to have the opportunity to provide services to Tribune Company. If you have any questions about this letter, please discuss them with William T. England at (312) 298-2808. If the services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to us.

Very truly yours,

*PricewaterhouseCoopers LLP*

PricewaterhouseCoopers LLP

cc:   Randy Michaels
      Chandler Bigelow

# PRICEWATERHOUSECOOPERS 🌐

The services and terms as set forth in this letter are agreed to.

Tribune Company by and through its Audit Committee

By: _____
William A. Osborn
Audit Committee Chair

5/10/10
(Date)

By signing below I acknowledge and agree to my obligation to ensure that the responsibilities of the Company and its management as set forth herein are properly discharged:

By: _____
Randy Michaels
Chief Executive Officer

5/21/10
(Date)

By: _____
Chandler Bigelow
Senior Vice President and Chief Financial Officer

5/10/10
(Date)