**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
                                              )
**In re:**                                    )   **Chapter 11**
                                              )
**TRIBUNE COMPANY, et al.,**[1]               )   Case No. 08-13141 (KJC)
                                              )   (Jointly Administered)
          **Debtors.**                        )
                                              )   Hearing Date:  January 21, 2011 at 10:00 a.m.
                                              )   Objections Due:  January 13, 2011 at 4:00 p.m.
                                              )
                                              )   Related to Docket No. 7352
_____

**RESPONSE OF SUTTONBROOK CAPITAL MANAGEMENT LP
TO WILMINGTON TRUST COMPANY'S MOTION FOR (I) ESTIMATION OF
THE PHONES CLAIMS AND (II) CLASSIFICATION OF PHONES CLAIMS
PURSUANT TO BANKRUPTCY RULE 3013 [DOCKET NO. 7352]**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

DOC ID-15484951.6

SuttonBrook Capital Management LP ("SuttonBrook") hereby responds to the motion of Wilmington Trust Company ("Wilmington Trust"), dated December 30, 2010 [Docket No. 7352] (the "Motion"), under section 502 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rule 3013 of the Federal Rules of Bankruptcy Procedure, seeking a judicial determination of the (i) allowed amount of the claims (the "PHONES Claims") of the holders of Exchangeable Subordinated Debentures due 2029 (the "PHONES"), issued by Tribune Company ("Tribune")[2]; and (ii) proper classification of the PHONES Claims under each of the three competing plans proposed in these cases, as follows:

## PRELIMINARY STATEMENT

1. SuttonBrook holds or controls through affiliated funds or managed accounts 3,140,236 units, or $493,017,052 in aggregate principal amount, of PHONES. SuttonBrook supports Wilmington Trust's request for a prompt judicial determination of the allowed amount and proper classification of the PHONES Claims.

2. SuttonBrook understands, as described in the Motion, that prior to the commencement of these cases by Tribune and its affiliated debtors (collectively, the "Debtors") on December 8, 2008 (the "Petition Date"), holders of approximately $417,536,319 in principal amount of PHONES (the "Former PHONES Holders") exercised their Exchange Right (as defined in the Motion) by surrendering their notes (the "Surrendered PHONES") to Deutsche Bank Trust Company Americas ("DBTCA"), the predecessor indenture trustee under the PHONES indenture, in exchange for a proposed payment of approximately $56 million in cash (the "Exchange Payment"). SuttonBrook further understands that while the Former PHONES Holders did all that was required to effectuate the proposed exchange, *i.e.*, surrendering their

---

[2] A copy of the indenture, dated April 1, 1999, governing the PHONES, in the form attached to the Motion is attached hereto as Exhibit A. A copy of the form of PHONES in the form attached to the Motion is attached hereto as Exhibit B.

notes and delivering exchange notices to DBTCA, Tribune never paid the Exchange Payment. The exchange having been completed but for the payment by Tribune, the Former PHONES Holders should have a claim in these cases solely for the unpaid Exchange Payment. Further, that claim should be subordinated under section 510(b) of the Bankruptcy Code to the claims of PHONES holders who did not surrender their notes (the "<u>Retained PHONES Claims</u>").

3. Although the Former PHONES Holders surrendered, and, upon information and belief, DBTCA cancelled, their $417,536,319 of notes, Wilmington Trust, successor indenture trustee to DBTCA, filed a proof of claim (the "<u>Claim</u>") in these cases on behalf of the PHONES noteholders in the aggregate amount of $1,196,823,429.80, plus fees, costs, expenses (including professional fees and expenses), and other charges (the "<u>Claim Amount</u>").[3] The Claim Amount includes not only the principal and interest due non-tendering PHONES holders as of the Petition Date, but also the principal and accrued interest on the Surrendered PHONES.

4. In furtherance of the Motion, SuttonBrook requests judicial determinations that (a) the claims on account of the Surrendered PHONES (the "<u>Surrendered PHONES Claims</u>") be reduced and allowed as unsecured claims in the amount of the unpaid Exchange Payment -- approximately $56 million; (b) (i) the Surrendered PHONES Claims be classified as unsecured claims subordinate to the Retained PHONES Claims under section 510(b) of the Bankruptcy Code, or, if not subordinated, (ii) the Surrendered PHONES Claims be classified as unsecured claims *pari passu* with the Retained PHONES Claims (in the amount of the unpaid Exchange Payment); and (c) the Retained PHONES Claims be allowed in an amount representing the aggregate principal amount as of the Petition Date outstanding under the

---

[3] A copy of the Claim in the form attached to the Motion is attached hereto as <u>Exhibit C</u>.

PHONES that were not exchanged prior to the Petition Date (the "Retained PHONES"), plus all accrued interest and other amounts due under the PHONES as of the Petition Date.

**RESPONSE**

A. Surrendered PHONES Claims Should Be Limited To $56 Million Owed As Exchange Price.

5. According to the General Disclosure Statement, dated December 15, 2010 [Docket No. 7232] (the "Disclosure Statement"), the appropriate aggregate carrying value of PHONES on the Petition Date was $759 million, comprised of $703 million for PHONES not submitted for exchange and $56 million for those PHONES exchanged but not settled in cash. Disclosure Statement, at 24. SuttonBrook submits that the Former PHONES Holders' claims should be limited to the Exchange Payment owed by Tribune on account of the exchange.

6. The Exchange Right provided each PHONES holder a right, exercisable at any time, to exchange each PHONES note for an amount of cash equal to 95% (or 100% under certain circumstances) of the then-current market value of two shares of Time Warner stock. PHONES, at R-6 - R-8; Disclosure Statement, at 24. To exercise the Exchange Right, each exchanging PHONES holder had to sign and deliver an exchange notice (the "Exchange Notice") to the indenture trustee along with the PHONES to be exchanged.[4] The Exchange Notice stated: "Please accept this letter as authorization to exchange the number of PHONES provided below for an amount of cash equal to the percentage of the exchange market value of the reference shares attributable to the PHONES . . . ." Exchange Notice, ¶ 2 (emphasis added). The cash value of the reference Time Warner stock that the Former PHONES Holders should have received on account of exercising their Exchange Right is approximately $56 million. Disclosure Statement, at 24. The Former PHONES Holders delivered the Exchange Notice and

---

[4] A copy of the form of Exchange Notice in the form attached to the Motion is attached hereto as Exhibit D.

surrendered their PHONES to DBTCA.  Motion, ¶ 14.  Upon information and belief, DBTCA cancelled the Surrendered PHONES.  Motion, ¶ 15.[5]

7. Upon delivery of the Exchange Notice and surrender of their PHONES, the Former PHONES Holders authorized DBTCA to exchange their PHONES for the cash Exchange Payment.  Exchange Notice, ¶ 2.  The Former PHONES Holders thus ceased to continue bearing the risk associated with the PHONES and sought an immediate cash payment from Tribune.  Their claim should accordingly be limited to the amount of that payment -- approximately $56 million.

B. Surrendered PHONES Claims Are Subordinate To Retained PHONES Claims.

8. Section 510(b) of the Bankruptcy Code mandates subordination of the Surrendered PHONES Claims.  Section 510(b) provides, in pertinent part:

> For the purpose of distribution under this title, a claim . . . for damages arising from the purchase or sale of [a security of the debtor] . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . .

11 U.S.C. § 510(b) (emphasis added).  Section 510(b) of the Bankruptcy Code thus requires subordination when the claim is for damages arising from, among other things, the sale of a security of the debtor.

9. By its terms, section 510(b) applies to the Surrendered PHONES Claims.  First, the Surrendered PHONES, as debentures, are "securities" subject to subordination under section 510(b) of the Bankruptcy Code.  11 U.S.C. § 101(49) ("The term 'security -- (A) includes -- (i) note; . . . (iv) bond; . . . (v) debenture; . . . "); In re NAL Fin. Group, Inc., 237 B.R. 225, 230

---

[5] If and to the extent DBTCA somehow improperly cancelled the Surrendered PHONES, the Former PHONES Holders' recourse may be against DBTCA, but certainly not against Tribune.

(Bankr. S.D. Fla. 1999) (held, convertible debentures were "security" under section 510(b) of the Bankruptcy Code).

10. Second, the Former PHONES Holders' surrender of their notes in exchange for cash constituted a "sale" of the Surrendered PHONES. Although the Bankruptcy Code does not define the term "sale," Black's Law Dictionary defines "sale" as "[t]he transfer of property or title for a price." Black's Law Dictionary (9th ed. 2009). Consistent with this common definition of a sale, courts have held that the pre-petition exchange of securities for consideration constituted "the purchase or sale of a security" under section 510(b), even when the debtor breached its obligation to provide the consideration in exchange. In re Med Diversified, Inc., 461 F.3d 251, 259 (2d Cir. 2006) (former executive's termination agreement required debtor to issue its securities to executive in exchange for executive's securities in another company; debtor failed to issue securities; held, section 510(b) required subordination of former executive's breach of contract claim for debtor's failure to exchange securities); In re Betacom of Phoenix, Inc., 240 F.3d 823, 829, 832 (9th Cir. 2001) (merger agreement required exchange of securities to effectuate merger; debtor failed to deliver contracted-for securities; held, breach of contract claim against debtor for failure to deliver securities was subordinated under section 510(b); "claims are for damages surrounding the sale or purchase of a security of the debtor.").

11. When the Former PHONES Holders surrendered their notes for a price -- the $56 million cash exchange amount -- they sold their notes back to Tribune. As described in the Motion, the Former PHONES Holders delivered the required exchange notice, surrendered their PHONES to DBTCA, and DBTCA cancelled the PHONES. Motion, ¶¶ 14, 15. The only step remaining was Tribune's payment of the purchase price. The Former PHONES Holders

thus have "a claim . . . for damages arising from the . . . sale of [the PHONES to Tribune]" for Tribune's failure to make the Exchange Payment. Because the exchange of the Surrendered PHONES was a sale of a security, the Former PHONES Holders' claim for damages arising out of Tribune's failure to pay the exchange amount must be subordinated under section 510(b) of the Bankruptcy Code.[6]

12.     If this Court determines, however, that section 510(b) of the Bankruptcy Code does not require subordination of the Surrendered PHONES Claims, the Surrendered PHONES Claims should be classified as unsecured claims, *pari passu* with the Retained PHONES Claims (in the amount of the unpaid Exchange Payment).

C.     Retained PHONES Claims Should Be Allowed Claims.

13.     The Retained PHONES Claims should be allowed claims in an amount representing the aggregate principal amount outstanding under the Retained PHONES as of the Petition Date, plus all accrued interest and other amounts due under the PHONES as of the Petition Date.

---

[6]     Although the plain language of section 510(b) is clear, subordinating the Former PHONES Holders' claims would also be consistent with the policies underlying that section. Courts analyzing the purpose of section 510(b) often look to the risk and return expectations of the security holder in determining whether section 510(b) requires subordination of the holder's claims. In re Teleglobe, Inc., 281 F.3d 133, 140-41 (3d Cir. 2002) ("Ultimately, the … proposal that inspired § 510(b) appears intended to prevent disappointed shareholders from recovering the value of their investment by filing bankruptcy claims predicated on the issuer's unlawful conduct at the time of issuance, when the shareholders assumed the risk of business failure by investing …"); In re Med Diversified, Inc., 461 F.3d at 256 (evaluating claimant's "risk and return expectations" as security holder); In re Int'l Wireless Communications Holdings, Inc., 279 B.R. 463, 469-70 (D. Del. 2002) (citing In re Teleglobe, Inc.). Here, the Former PHONES Holders elected to surrender a stream of payments under their PHONES in exchange for an immediate cash payment prior to the Petition Date. By doing so, the Former PHONES Holders relinquished their risk as PHONES holders; they no longer sought to bear the risk of deferred payments from Tribune on account of the PHONES and instead opted for a one-time cash distribution in an amount less than the principal amount owed under the PHONES. Accordingly, consistent with the policies underlying section 510(b), their claims should be subordinated to those who retained their PHONES and continued to bear the risk and return expectations of PHONES holders.

**CONCLUSION**

**WHEREFORE**, SuttonBrook respectfully requests that (a) the Surrendered PHONES Claims be reduced and allowed in the amount of the unpaid Exchange Payment -- approximately $56 million; (b) (i) the Surrendered PHONES Claims be classified as unsecured claims subordinated to the Retained PHONES Claims under section 510(b) of the Bankruptcy Code, or, if not subordinated, (ii) the Surrendered PHONES Claims be classified as unsecured claims *pari passu* with the Retained PHONES Claims (in the amount of the unpaid Exchange Payment); (c) the Retained PHONES Claims be allowed in an amount representing the aggregate principal amount outstanding under the Retained PHONES as of the Petition Date, plus all accrued interest and other amounts due under the PHONES as of the Petition Date; and (d) the Court grant such other relief as is proper.

Dated: January 13, 2011
      Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**

 /s/ Michael W. Yurkewicz
Michael W. Yurkewicz (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, Delaware  19801-3062
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email:  myurkewicz@klehr.com

- and -

SCHULTE ROTH & ZABEL LLP
Lawrence V. Gelber
Adam L. Hirsch
919 Third Avenue
New York, New York, 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955
Email:  lawrence.gelber@srz.com
Email:  adam.hirsch@srz.com

*Attorneys for SuttonBrook Capital Management LP*