**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br>(Jointly Administered)<br><br>Hearing Date:  January 21, 2011 at 10:00 a.m.<br>Related Docket No.:  7352 |

**RESPONSE TO WILMINGTON TRUST COMPANY'S MOTION FOR (I)
ESTIMATION OF THE PHONES CLAIMS AND (II) CLASSIFICATION OF PHONES
CLAIMS PURSUANT TO BANKRUPTCY RULE 3013**

Barclays Bank PLC ("**Barclays**") and Waterstone Capital Management LP ("**Waterstone**," and together with Barclays, the "**Exchange Claims Holders**"), by and through their undersigned counsel, hereby submit this response (the "**Response**") to the motion (the "**Motion**") of Wilmington Trust Company (the "**PHONES Trustee**") for (I) Estimation of the PHONES Claims and (II) Classification of PHONES Claims Pursuant to Bankruptcy Rule 3013. [Docket No. 7352].[1] In support hereof, the Exchange Claims Holders respectfully state as follows:

**Preliminary Statement**

1.      Barclays and Waterstone hold claims arising from PHONES which were tendered for exchange on the same day as Tribune's Petition Date.  Tribune's bankruptcy petition thus occurred before the date on which the PHONES Note required Tribune to deliver payments on account of such exchange.  As a result, Tribune did not consummate the exchange.  Indeed, it could not have done so.  The PHONES Indenture and the PHONES Note (together, the

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

NY\1758282.6

"**Indenture Documents**") do not allow an unconsummated, failed exchange to be used to reduce Tendering Holders' claims. Nevertheless, it *appears* that Tribune intends to do just that.

2. Tribune's intentions toward PHONES Note Exchange Claims are suggested in calculations buried in the Debtors' Schedules and in footnotes to their disclosure statements. Such calculations and footnotes indicate that Tribune believes that the allowed amount of the PHONES Note Exchange Claims should be the amount Tribune would have paid to consummate Tendering Holders' exchanges (such amount, the "**Exchange Amount**"). Tribune thus appears to be using confusion regarding the PHONES Note Exchange Claims to reduce its obligation to holders of such claims.

3. The proof of claim filed by the PHONES Trustee correctly accounts for PHONES Note Exchange Claims in an amount based on the full face amount of the PHONES.[2] The fact that this proposition is controversial is surprising. The Court should not indulge evasiveness regarding the PHONES Note Exchange Claims any longer – as discussed below, the PHONES Note Exchange Claims should be allowed in the amounts claimed in the PHONES Trustee's proof of claim.

**Background**

4. The Motion contains a general description of the PHONES and the Debtors' Chapter 11 Cases. See Motion at 3-6.

5. The Exchange Claims Holders and their affiliates hold claims (the "**Barclays/Waterstone Exchange Claims**") on account of approximately 450,890 units of

---

[2] The PHONES Trustee's proof of claim is attached to the Motion as Exhibit F. Because the PHONES Trustee's proof of claim has not been challenged, it remains "prima facie evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001."

PHONES in the aggregate original principal amount of $70,789,730 (calculated at $157 per PHONES unit). The Exchange Claims were purchased from Sandelman Partners Opportunity Master Fund, LP and Sandelman Partners Multi-Strategy Master Fund, Ltd. (together, the "**Original Holder**").

6.  On December 8, 2008, the Original Holder exercised its Exchange Right (such exercise, an "**Exchange**") through the Original Holders' prime broker.

7.  *On the same day*, December 8, 2008 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The Petition Date occurred prior to the occurrence of the date (the "**Exchange Payment Date**") on which Tribune was required to make payments on account of the Original Holder's Exchange. Pursuant to the PHONES Note, the Exchange Payment Date was to occur either two (2) or six (6) business days after a holder initiates an Exchange, depending on the aggregate number of PHONES tendered on a given day. See PHONES Note at R-7 to R-8.

8.  The Exchange Amount was never delivered to the Original Holder, and, contrary to the plain instructions of the Indenture Documents, the prior indenture trustee for the PHONES purports to have cancelled the Original Holder's PHONES Notes.

9.  On June 5, 2009 the PHONES Trustee filed a proof of claim (the "**PHONES Proof of Claim**") on behalf of all holders of PHONES, including holders of the PHONES Note Exchange Claims.

**Argument**

10.  The Motion cites various theories as to the proper amount and treatment of the PHONES Note Exchange Claims, including (i) that they are subordinated to the same extent as

3

other PHONES and should be allowed in an amount based on the PHONES' face amount, plus interest; (ii) that they are subordinated to the same extent as other PHONES but should only be allowed in an amount equal to the Exchange Amount; (iii) that they are subordinated to the same extent as other PHONES but should be subject to an added layer of subordination as "securities claims" under Section 510(b) of the Bankruptcy Code; or (iv) that they are general unsecured claims in an amount equal to the Exchange Amount.  For the reasons discussed below, theories (ii) and (iii) are clearly wrong. The Exchange Claims Holders have supported and continue to support the position taken in the PHONES Trustee's proof of claim (i.e. theory (i) above). However, in the event that the Court determines that the PHONES Note Exchange Claims are general unsecured claims, the Exchange Claims Holders reserve their right to assert such general unsecured claims.

      **A)  The Indenture Documents Clearly Preserve the Exchange Claims Holders' Right to Assert a Claim Based on the PHONES' Accelerated Principal Amount**

      11.     The PHONES Trustee is correct that the Indenture Documents do not support the proposition that the Exchange Right is irrevocable. See Motion at FN4, FN6.  That proposition is legally irrelevant to the extent that the exchange was not consummated within the terms of the Indenture Documents (which is undisputed).  The Motion fails to discuss the relevant provisions of the Indenture Documents.

      12.     First, the PHONES Note instructs that upon an Event of Default or bankruptcy event, the PHONES may be accelerated to (and a proof of claim may be filed for) an amount equal to the sum of (A) *the higher of* (i) the current market value of the reference share plus any unpaid Deferred Quarterly Interest or (ii) the "Contingent Principal Amount" and (B) the "Final Period Distribution."  See PHONES Note at R-12.  The "Contingent Principal Amount" is the "Original Principal Amount" of $157.00 per PHONES adjusted to reflect payments, of which

there were none, of variable interest or additional interest.  See PHONES Note at R-4 to  R-5.  The current market value of the reference shares is, essentially, the Exchange Amount at issue in this matter.[3]  There is no doubt that, at the time of Tribune's bankruptcy petition, the Contingent Principal Amount (i.e., $157.00 per PHONE) was higher than the current market value of the reference share.   As a result, under the PHONES Note's acceleration and proof of claim provisions, the Contingent Principal Amount prevails.

13. Moreover, it is clear from the exchange provisions in the PHONES Note itself that holders of PHONES Note Exchange Claims retained the right to accelerate the notes on account of Tribune's bankruptcy filing.  The Exchange Notice required to be delivered in connection with an Exchange clearly states that PHONES subject to exchange shall only be cancelled by the Trustee *after* consummation of the Exchange.  See Exchange Notice, Exhibit C to Motion at 1, 3. Indeed, the PHONES Note instructs that only *after* Tribune has paid the amount owing on account of an Exchange and only *after* the Trustee has transferred such amount to the holder making the Exchange will a "Redemption Date" occur with respect to the PHONES delivered for Exchange.  See PHONES Note at R-8 ("The date on which all of the foregoing requirements have been satisfied shall be the Redemption Date with respect to the PHONES delivered for exchange").  A "Redemption Date" or an accelerated maturity date is necessary for the acceleration amount to be calculated.  See  PHONES Note at R-5.

14. The above provisions indicate that an Exchange is final only when consummated by payment of the Exchange Amount to the holder.  Because such consummation did not occur, the PHONES Note Exchange Claims were wrongly cancelled by the previous PHONES

---

[3]   Because under certain circumstances the amount due from Tribune on account of an Exchange would be either 95% or 100% of the value of the "reference share," the Exchange Amount may differ slightly from the current market value of the "reference share."

indenture trustee. The current PHONES Trustee admits this is the case. See Motion at FN6.[4] Because the Exchanges were never final, Tribune appears to be bootstrapping the ministerial errors of the prior indenture trustee into a reduction of the Tendering Holders' claims. Such a reduction is inconsistent with the Indenture Documents and unwarranted by any principles of equity.

### B) 510(b) Subordination is Not Applicable

15. Equally nonsensical is the suggestion that the PHONES Note Exchange Claims are subject to subordination vis-à-vis other PHONES pursuant to Section 510(b) of the Bankruptcy Code. Claims for the recovery of an amount owing on a security are not within the ambit of Section 510(b) of the Bankruptcy Code ("**Section 501(b)**"). See In re Blondheim Real Estate, Inc., 91 B.R. 639, 640 (Bankr. D.N.H. 1988) (rejecting 510(b) subordination for "recovery of the liquidated, unpaid amount *due and owing on the instrument itself, i.e., the promissory note*, [when] claimant is not claiming any further consequential or other damages caused by the failure to repay the note when due") (emphasis in original). This is because "existing case law uniformly agrees that Congress enacted § 510(b) to prevent equity investors from converting their interest into higher priority general unsecured claims." In re Montgomery Ward Holding Corp., 272 B.R. 836, 842 (Bankr. D.Del. 2001). For that reason, the Montgomery Ward court found that claims under a note issued by a debtor to redeem stock were not subject to Section 510(b) subordination. Id. at 844 (holding that "absent an allegation of fraud in the purchase, sale or issuance of the debt instrument, §510(b) does not apply to a claim seeking

---

[4] Because certain PHONES were wrongly purported to be cancelled by the prior indenture trustee, Tribune should be directed to authenticate and deliver new PHONES in accordance with Section 3.06 of the PHONES Indenture, which governs "Mutilated, Destroyed, Lost and Stolen Securities."

NY\1758282.6

simple recovery of an unpaid debt due upon a promissory note" and noting that characterization of a default under a note as giving rise to Section 510(b) subordination would lead to "the untenable result that any claim based on default of a corporate bond or debenture is automatically subordinated to the claims of other unsecured creditors."); see also In re Enron Corp., 341 B.R. 141, 156 (Bankr. S.D.N.Y. 2006) (noting continued validity of Montgomery Ward after Baroda Hill Investments, Ltd. v. Telegroup, Inc. (In re Telegroup), 281 F.3d 133 (3d Cir. 2002)).

16. For a claim to be subordinated pursuant to Section §510(b), there must be a "causal relationship to the purchase or sale of [a security]" and subordination must further the policies underlying Section 510(b). In re Telegroup, Inc., 281 F.3d at 144. Neither is the case here. Instead, the holders of PHONES Note Exchange Claims simply assert their right to payment after Tribune defaulted on its obligations under the Indenture Documents. An exchange pursuant to exchange provisions in an indenture is not the same as a "purchase or sale." Moreover, the "further consequential or other damages" noted by the Blondheim court are crucially missing in this instance.

## CONCLUSION

17. There is simply no indication in the Indenture Documents that the act of tendering for exchange reduced the amount of Tendering Holders' claims to the Exchange Amount. In fact, various provisions in the Indenture Documents indicate exactly the opposite – that the Exchange was only final once consummated and that the accelerated amount of claims arising from unconsummated exchanges is, as with other PHONES, the *greater* of the Exchange Amount *or* their face amount.

18.     Enough confusion and expense has been caused by conflicting calculations regarding the PHONES Note Exchange Claims and the prior indenture trustee's wrongful cancellation of such tendered but not exchanged notes.  Further inequity must now be avoided.  The PHONES Note Exchange Claims cannot be reduced to the Exchange Amount, nor can they be subordinated pursuant to Section 510(b) of the Bankruptcy Code.   If the PHONES class is fortunate enough to see any recovery in these Cases, then PHONES Note Exchange Claims must participate in such recovery *pari pasu* with the rest of the PHONES class.

**WHEREFORE,** the Prepetition Agent respectfully requests that this Court (i) direct the Debtors and the PHONES Trustee to reinstate the cancelled PHONES and (ii) otherwise respond to the Motion in a manner consistent with this Response.

Dated: New York, NY
January 13, 2011

 /s/ Robert J. Rosenberg
Robert J. Rosenberg
Jason B. Sanjana
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  212-906-1200
Fax:  212-751-4864
Email:  robert.rosenberg@lw.com
        jason.sanjana@lw.com

*Counsel for Barclays Bank PLC and Waterstone Capital Management LP*