# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 4886, 7401, 7433 and 7434 |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTIONS BY WILMINGTON TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR ESTIMATION AND TEMPORARY ALLOWANCE OF CLAIMS FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018

The Official Committee of Unsecured Creditors (the **"Committee"**) of the above-

captioned debtors and debtors-in-possession (collectively, the **"Debtors"**) submits this objection

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(the "**Objection**") to each of the following motions: (i) Wilmington Trust Company's

("**Wilmington Trust**") Motion for Estimation and Temporary Allowance of Claims Pursuant to

Bankruptcy Rule 3018 [Docket No. 4886], as supplemented [Docket No. 7401] (the

"**Wilmington Trust Motion**"); (ii) Motion of Deutsche Bank Trust Company Americas

("**Deutsche Bank**"), Indenture Trustee Under the 1992 Indenture, the 1995 Indenture and the

1997 Indenture for Estimation and Temporary Allowance of Claim for Voting Purposes Pursuant

to Bankruptcy Rule 3018 [Docket No. 7433] (the "**Deutsche Bank Motion**"); and (iii) Law

Debenture Trust Company of New York's ("**Law Debenture**," together with Wilmington Trust

and Deutsche Bank, the "**Movants**") Motion for Estimation and Classification of Claim for

Voting Purposes Pursuant to Bankruptcy Rule 3018 [Docket No. 7434] (the "**Law Debenture**

**Motion**," together with the Wilmington Trust Motion and the Deutsche Bank Motion, the

"**Motions**"). In support of the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Movants request, among other things, the temporary allowance for voting

purposes of multi-million dollar claims for fees and expenses for services performed as indenture

trustees under certain indentures. However, the Movants have provided absolutely no evidence

to support the amounts and reasonableness of the fees and expenses they respectively claim.

Given that the Movants have failed to provide any support for their asserted multi-million dollar

claims, the Motions should be denied or, at most, should be allowed, consistent with the

Solicitation Order (as defined below), at $1.00.

2.      Deutsche Bank and Law Debenture also request that their claims be reclassified as

Class 1F claims for voting purposes under the Debtor/Committee/Lender Plan (as defined

below), a Plan they oppose. Those requests have no merit. To the extent that Deutsche Bank's

and Law Debenture's claims for fees and expenses are allowed at all, such claims are properly

classified under the Debtor/Committee/Lender Plan as Class 1E bondholder claims. The claims for reasonable fees and expenses are created by the same documents that create Deutsche Bank's and Law Debenture's respective Class 1E claims for principal and interest and have the same priority against the same Debtor as those claims. Accordingly, the Debtor/Committee/Lender Plan properly classifies these claims together. On this basis, the Deutsche Bank Motion and the Law Debenture Motion should also be denied.

## BACKGROUND

3.    On December 8, 2008, the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the **"Court"**) a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code 11 U.S.C. §§ 101 *et seq.* (the **"Bankruptcy Code"**).[2]

4.    On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Committee.

5.    On June 25, 2010, Wilmington Trust filed the Wilmington Trust Motion.

6.    On December 16, 2010, the Court entered an Order Amending Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents

---

[2]    An additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition under the Bankruptcy Code on October 12, 2009.

Retention and Allocation of Costs of Same; and (X) Granting Related Relief (the **"Solicitation Order"**) [Docket No. 7215].

7.      The Solicitation Order directs parties seeking to have claims temporarily allowed for voting purposes to file a motion seeking such relief on or before Saturday, January 8, 2011. The Solicitation Order also set the objection deadline with respect to such motions for January 13, 2011 at 4:00 p.m. and a hearing on objections to such motions for January 20, 2011 at 10:00 a.m.

8.      Following entry of the Solicitation Order, solicitation commenced with respect to three competing plans:

- the Joint Plan of Reorganization proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A (the **"Debtor/Committee/Lender Plan"**);

- the Joint Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its Managed Entities, Deutsche Bank, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the **"Aurelius/Deutsche Bank/Law Debenture/WTC Plan"**); and

- the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. (the **"Bridge Lender Plan"**).

9.      On January 6, 2011, Wilmington Trust filed its Supplemental Motion for Estimation and Temporary Allowance of Claims Pursuant to Bankruptcy Rule 3018 [Docket No. 7401].

10.     On January 7, 2011, Deutsche Bank filed the Deutsche Bank Motion.

11.     On January 8, 2011, Law Debenture filed the Law Debenture Motion.

## ARGUMENT

**I.**     **Estimation and Temporary Allowance of Claims for Purposes of Voting Under Rule 3018 and the Solicitation Order**

12.     Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") allows the Court to estimate a claim amount and temporarily allow such a claim for the purpose of accepting or rejecting a plan.  As neither the Bankruptcy Code nor the Bankruptcy Rules prescribe any particular method for estimating a claim, the bankruptcy court may, in its reasonable discretion, employ whatever method of estimation is best suited to the circumstances of the case.  *See, e.g., Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir.1982); *In re Kivler*, 2009 WL 1545821, *1 (Bankr. D. N.J. 2009); *In re Thomson McKinnon Securities, Inc.*, 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1996).  However, the claimant still bears the burden of showing its entitlement to temporary allowance of a claim for voting purposes.  *See, e.g., In re Armstrong*, 294 B.R. 344, 354 (BAP 10th Cir. 2003) (burden of proof should be on claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation).

13.     A court is bound by "the legal rules which may govern the ultimate value of the claim.  For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law." *Bittner*, 691 F.2d at 135-136 (affirming bankruptcy court's assignment of zero value to claim and its temporary disallowance until final resolution of state court action).  Thus, in order to estimate the appropriate value of a claim:

> [a]n estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact.  The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all.

*See In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994).

14.    In this case, the Solicitation Order also explicitly prescribes that "[a] 3018 Motion must set forth, with particularity, the amount and classification in which [the holder of a claim] believes its Claim should be allowed for voting purposes *and the evidence in support of its belief* . . . ." Solicitation Order at ¶ 41 (emphasis added).

A.    **The Movants Provide No Evidence to Support the Amounts Allegedly Due**

15.    Each of the Movants' claims is allegedly based on the right to reimbursement of fees and expenses owed for services rendered as indenture trustee pursuant to certain indentures. *See* Wilmington Trust Motion ¶ 11; Deutsche Bank Motion ¶ 16; Law Debenture Motion ¶ 12. The operative indentures generally provide that Tribune Company will (i) pay the indenture trustee reasonable compensation for all services rendered, and (ii) reimburse the indenture trustee for all reasonable expenses, disbursements and advances incurred or made in accordance with the indenture.  *See* Wilmington Trust Motion ¶ 11; Deutsche Bank Motion ¶ 9, 12 and 15; Law Debenture Motion ¶ 10.

16.    In total, the Movants assert that that are owed over $19 million in fees and expenses. *See* Wilmington Trust Motion ¶ 15 (asserting that it is owed $10 million in fees and expenses as of June 25, 2010); Deutsche Bank Motion ¶ 19 (asserting that it is owed $2.9 million in fees and expenses as of December 31, 2010); Law Debenture Motion ¶ 13 (asserting it is owed $6.3 million in fees and expenses as of December 31, 2010).  The Movants fail, however, to provide any evidence to support the asserted amounts due in each of their claims.  Instead, the Movants refer solely to their filed proofs of claim, which similarly contain no evidence (much less quantification) of the amounts of fees and expenses allegedly owed. *See* Wilmington Trust Motion ¶ 12; Deutsche Bank Motion ¶ 16; Law Debenture Motion ¶ 11.

17.    Any reliance by the Movants on the fact that no objections have yet been filed to those proofs of claim (and such claims are therefore "deemed allowed") is disingenuous. *See,*

*e.g.,* Law Debenture Motion ¶ 18. Each of those proofs of claim asserts an unknown and unliquidated amount for reasonable fees and expenses. No quantification of those amounts has been offered by the Movants until the filing of the instant Motions.

18.    Under the Solicitation Order, when timely proofs of claim contain claims for "unknown, unliquidated or undetermined" amounts, those claims are to be temporarily allowed for voting purposes at $1.00. *See* Solicitation Order ¶ 30(e). As the Movants have provided no evidence to support their claims, each of the Movants' claims should be allowed, if at all, at $1.00.[3]

**B.    The Movants Provide No Evidence to Support the Reasonableness of the Amounts Allegedly Due for Reimbursement of Fees and Expenses under the Respective Indentures**

19.    Each of the indentures at issue requires that the fees and expenses of the indenture trustee be "reasonable." However, the Movants have failed to provide any evidence that supports their claims that their fees and expenses are "reasonable." This is especially noteworthy where, in one instance, the Movant represents deeply subordinated claimholders and incurred very substantial professional fees. Such substantial fees may well be determined as "unreasonable" under the circumstances.

20.    As the Movants have provided no evidence whatsoever of the actual purported expenditures as ordered under the Solicitation Order and no evidence of the "reasonableness" of those expenditures, the Court must deny the Movants' Motions.

---

[3]    Section 3.2.5 of the Debtor/Committee/Lender Plan did not include indenture trustee fees and expenses in the computation of the Allowed Amount of the Senior Noteholder Claims. This was because neither Deutsche Bank nor Law Debenture had submitted any data regarding their alleged professional fees and expenses when that Plan was filed. The Committee has conferred with its co-proponents and has concluded that a technical amendment should be made to section 3.2.5. of the Debtor/Committee/Lender Plan. The amendment will provide that reasonable claims for fees and expenses of the indenture trustees that are payable under the relevant indenture and allowed by this Court will be included in the computation of the Allowed Amount of the Senior Noteholder Claims.

II.    **The Claims for Reasonable Fees and Expenses of Deutsche Bank and Law Debenture are Properly Classified as Class 1E Claims**

21.    Section 1122 provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. 1122(a). "A classification structure will satisfy section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar." *In re Armstrong World Industries, Inc.*, 348 B.R. 136, 159 (D. Del. 2006) (citations omitted). Accordingly, claims that are "substantially similar" should be classified together. *See John Hancock Mut. Life* Ins. *Co. v. Route 37 Business Park Assocs.* 987 F.2d 154, 159 (3d Cir. 1993) (similar claims should be classified together); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) ("Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims").

22.    "Substantially similar" has been defined to include claims that are similar in legal character or effect. *See* 7 COLLIER ON BANKRUPTCY ¶ 1122.03[3] (16th Ed.). In determining whether claims are "substantially similar," various courts have looked at whether the claims share common priority status and similar legal rights against the debtors' estates. *See, e.g., In re Smurfit-Stone Container Corp.*, No. 09-10235 (BLS), 2010 Bankr. LEXIS 1971, at *15 (Bankr. D. Del. June 11, 2010); *In re Lisanti Foods, Inc.*, 329 B.R. 491 (D.N.J. 2005); *In re Mahoney Hawkes, LLP*, 289 B.R. 285 (Bankr. D. Mass. 2002); *In re Berhard Steiner Pianos USA, Inc.*, 292 B.R. 109 (Bankr. N.D. Tex. 2002).[4]

---

[4]    Although not cited by the Movants, the Committee has identified a single case holding that the fees and expenses of an indenture trustee "are of a substantially different legal character" than the claims of bondholders, and therefore should be classified separately. *See In re Gillette Assoc., Ltd.*, 101 B.R. 866, 873 (Bankr. N.D. Ohio 1989). The decision in *Gillette*, however, is distinguishable from the facts of the present case. *Gillette* compared an obligation which included a prepetition component and an ongoing (or "open-ended") component with an obligation which was entirely prepetition in nature. That the *Gillette* court concluded that such claims might be treated differently is a relatively unremarkable proposition and certainly not the facts at issue here.

23.     Deutsche Bank and Law Debenture each allege that their fee and expense claims arising under their respective indentures should not be classified together with their underlying debt claims under those same indentures in Class 1E under the Debtor/Committee/Lender Plan. Under that Plan, Class 1E includes "Senior Noteholder Claims," which is explicitly defined as "all Claims arising under or evidenced by the Senior Notes Indentures and related documents and any Claim of the Senior Noteholders arising under the Pledge Agreement." *See* Debtor/Committee/ Lender Plan at § 1.1.216.

24.     Objections that Deutsche Bank or Law Debenture may have with respect to the Debtor/Committee/Lender Plan and its classification structure are properly left to the confirmation hearing.[5] If the Court decides to address any of these arguments now, however, they must fail because the Debtor/Committee/Lender Plan has properly placed substantially similar claims together. The facts before the Court make this clear.

25.     First, the claims for reasonable fees and expenses and the underlying claims for principal and interest arise in favor of the same party (the relevant indenture trustee) under the same contracts, *i.e.*, the indentures. Second, the claims for reasonable fees and expenses and the underlying obligations for principal and interest are asserted against the same Debtor, Tribune Company. Third, Deutsche Bank and Law Debenture's claims for fees and expenses have the same priority as the underlying claims for principal and interest. Indeed, the indentures themselves treat the right to payment of reasonable fees and expenses no differently from the right to payment of principal and interest. Fourth and finally, both Deutsche Bank and Law Debenture confirm that the claims are substantially similar by filing their claims for fees and

---

[5]    The Committee reserves all rights to respond to any objections raised at the Confirmation Hearing concerning the classification scheme under the Debtor/Committee/Lender Plan and/or to raise its own objections.

expenses in the same proof of claim form that they used to file their claims for principal and interest.

26.    The reasonableness of the classification under the Debtor/Committee/Lender Plan is further confirmed by the fact that the Aurelius/Deutsche Bank/Law Debenture/WTC Plan, of which both Law Debenture and Deutsche Bank are proponents, has adopted the exact same classification structure with respect to Class 1E claims, *i.e.*, the Senior Noteholder Claims. Both the Debtor/Committee/Lender Plan and the Aurelius/Deutsche Bank/Law Debenture/WTC Plan define "Senior Noteholder Claims" as "*all Claims arising under or evidenced by the Senior Notes Indentures* and related documents and any Claim of the Senior Noteholders arising under the Pledge Agreement." *See* Debtor/Committee/Lender Plan at § 1.1.216 (emphasis added); Aurelius/Deutsche Bank/Law Debenture/WTC Plan at § 1.1.241. This straightforward definition clearly classifies fee and expense claims together with the underlying obligations for principal and interest as "*all*" claims are contemplated by the definition.

27.    The Debtor/Committee/Lender Plan establishes a logical and appropriate classification structure. Accordingly, the claims at issue are "substantially similar" and should be so classified. Deutsche Bank and Law Debenture's arguments to reclassify these claims should be rejected.

28.    WHEREFORE, the Committee respectfully requests that the Court (a) deny the Motions in their entirety, or (b) in the alternative, value such claims at $1.00 as set forth herein, (c) deny any reclassification requests made by Deutsche Bank and Law Debenture, and (d) grant such other relief as is just and proper.

Dated: January 13, 2011
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Howard Seife
David LeMay
Douglas Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

_Counsel to the Official Committee of Unsecured Creditors_