# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 7352** |

## DEBTORS' RESPONSE TO WILMINGTON TRUST COMPANY'S MOTION FOR (I) ESTIMATION OF THE PHONES CLAIMS AND (II) CLASSIFICATION OF PHONES CLAIMS PURSUANT TO BANKRUPTCY RULE 3013

The debtors and debtors in possession (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>")

in the above-captioned chapter 11 cases, hereby respond (the "<u>Response</u>") to Wilmington Trust

Company's ("<u>Wilmington Trust</u>") Motion for (I) Estimation of the Phones Claims and (II)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Classification of Phones Claims Pursuant to Bankruptcy Rule 3013 [Docket No. 7352] (the "Motion").  In support of their Response, the Debtors respectfully state as follows:

## INTRODUCTION

Wilmington Trust's Motion puts at issue the allowed amount of certain PHONES[2] claims – in particular, those claims based on PHONES which were submitted for redemption but not redeemed prior to the Petition Date (such claims, the "Exchange Notes Claims").  The Motion also raises a related question of whether or not the Exchange Notes Claims, to the extent reduced, are *pari pasu*, senior, or junior to the claims of other PHONES holders.

Wilmington Trust, however, itself takes no position as to the "correct" answer to these questions, perhaps because Wilmington Trust wishes to remain neutral on a matter that may favor one group of the PHONES claimants over another.  Accordingly, the Motion essentially asks the Court for an advisory opinion on a question, absent advocacy from necessary interested parties – holders of the Exchange Notes Claims themselves (the "Exchange Claimants").

Thus, a threshold issue for this Court is whether the Motion is appropriate to be heard without the opportunity for the Exchange Claimants themselves to be present, and further, even if accorded such an opportunity, whether the claim allowance and priority issues described in the Motion need to and should be heard and determined on an accelerated basis prior to confirmation of a plan of reorganization in these cases.  For the reasons set forth below, the Debtors believe that there is no live controversy which requires immediate attention and that an accelerated determination of the issues described in the Motion prior to plan confirmation is neither necessary nor appropriate.

---

[2] Subject to certain exceptions discussed below, Capitalized terms used in this Response but not defined herein shall have the meanings ascribed to them in the Motion.

-7305975v

First, determination of the issues raised in the Motion is not necessary to confirm any of the presently proposed plans of reorganization (the "Competing Plans"). Each of the Competing Plans has been solicited for votes, extensive disclosure has been provided therefor, and the Court has already determined that voting parties have adequate information to vote for the plan(s) of their choice. The Debtors have also consented to allow the holders to vote their claims in an amount which does not reduce the Exchange Notes Claims due to their prior submission for redemption.[3] Any interested party, including Wilmington Trust, can file a confirmation objection if it believes that any of the Competing Plans are unconfirmable based on their classification or treatment of the PHONES claims. Although issues respecting the amount and classification of the PHONES claims are unlikely to be pertinent or material to confirmation of any of the Competing Plans, to the extent someone believes otherwise, such issues can be addressed at plan confirmation and there is no need to presently determine the Motion in advance of plan confirmation.

Second, the relief requested in the Motion should be addressed in the normal claims process with the PHONES holders themselves – including the Exchange Claimants – afforded the opportunity to participate in any adjudication. As acknowledged in the Motion, the PHONES claims issues impact particular PHONES holders disparately, with one group potentially benefited and another group potentially being treated relatively more poorly, depending on how these issues are resolved. The Motion should not go forward without all holders of PHONES, both Exchange Claimants and those who chose not to submit their claims for redemption, given adequate notice and a full opportunity to participate in any determination.

---

[3] This is without prejudice to the Debtors' position on the merits that such claims should be allowed at a lesser amount.

-7305975v

While the Motion has an attached affidavit of service, it is not clear to the Debtors that all PHONES holders were provided service of the Motion and, in any event, even with respect to those holders who were served, nothing in the Motion makes clear that such PHONES holders only have a one time opportunity to appear and be heard to the extent they wish to make their views known before a determination is made respecting the allowed amount or priority of their claims. The Motion thus fails to provide the PHONES holders themselves with the fundamental tenets of due process, as it lacks adequate notice and a meaningful opportunity to participate.[4] Except to the extent that issues regarding the PHONES are directly pertinent to confirmation of a plan of reorganization (in which event they can and should be separately raised in a confirmation objection), a fulsome opportunity to determine the allowance of the PHONES claims when all holders desiring to participate can be heard can and should be accomplished post-confirmation, and indeed it is normal in large cases for claim resolution to extend beyond the effective date of a plan.

Third, as the Court is well aware, the Debtors and many other parties in this case are presently focused upon addressing a large number of tasks and issues related to the plan confirmation process. Diverting attention from plan confirmation to substantively address the Motion at this time is not an appropriate use of the parties' resources or the Court's time. Moreover, after confirmation, the Court, the Debtors and Wilmington Trust will have a much better understanding of what actual recoveries, if any, may be available to the holders of the PHONES and thus what is at stake with respect to the issues described in the Motion.

---

[4] The Debtors are aware of one PHONES holder, whom apparently did not submit a pre-Petition Date redemption request, that has asserted in a response to the Motion that the Exchange Claimants have reduced and subordinated claims. See Docket No. 7481. This response highlights the need for the Court to afford PHONES holders on both sides of the issue the opportunity to be present for any determination.

4

Finally, while the Debtors reiterate that now is not the time to substantively address the issues raised in the Motion, it is the Debtors' view that, under the terms of the PHONES Indenture and applicable law, the Exchange Notes Claims have been reduced by their election to redeem and that the Exchange Notes Claims remain, at a minimum, subordinated to those of Tribune Company's general unsecured creditors. The Debtors will be prepared at an appropriate time set by the Court to substantively address these claim issues.

## ARGUMENT

### I.    Wilmington Trust's Motion Need Not be Determined Prior to Plan Confirmation

1.    There is no need to determine the claim issues raised in the Motion prior to confirmation of a plan of reorganization. The Debtors believe that none of the presently pending plans require such a determination. To the extent Wilmington Trust disagrees, it will have the opportunity to state its position in a confirmation objection and the issue can then be addressed at the confirmation hearing itself. See In re Scioto Valley Mortgage Co., 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) ("If creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation").[5]

---

[5] Substantive plan issues (i.e., classification) are typically addressed at confirmation. See In re Main Road Property, 144 B.R. 217, 219 (Bankr. D. R.I. 1992) (holding that an objection to the separate classification of unsecured claims raises a substantive plan issue normally addressed at confirmation). While Main Road recognizes that substantive plan issues can be considered before confirmation when a plan is arguably unconfirmable on its face, that is not the issue in the case at bar, and such a contention has never been raised. Additionally, Bankruptcy Rule 3013 exists not to cause undue delay to a case, but rather to address serious classification problems before plan formulation. To that end, the Advisory Committee Notes state that Bankruptcy Rule 3013 "recognizes that it may be desirable or necessary to establish proper classification *before a plan can be formulated*." Fed. R. Bankr. P. 3013 Advisory Committee Notes (emphasis added). Any alleged classification issues with respect to the Exchange Notes Claims have not prevented any party from formulating plan; Wilmington Trust itself has proceeded as the proponent of the Noteholder Plan without previously obtaining resolution of those issues.

### a. None of the Competing Plans Require Immediate Resolution of the Issues Presented in the Motion

2.      The mechanics of the Competing Plans do not necessitate the immediate resolution of the Motion.  Treatment of PHONES claims under each of the Competing Plans is briefly summarized below:[6]

#### i. *Debtor/Committee/Lender Plan*

3.      The Debtor/Committee/Lender Plan classifies all PHONES Notes Claims as a single class.  Holders of Allowed PHONES Notes Claims receive shares of litigation trusts established under the Debtor/Committee/Lender Plan but, because of the contractual subordination provisions of the Indenture, are not entitled to receive a distribution on the Effective Date.  Instead, any such recoveries go to more senior claimants that are entitled to be paid in full before payment on the PHONES.  See Debtor/Committee/Lender Plan at Art. 3.2.9; Specific Disclosure Statement Related to Debtor/Committee/Lender Plan at 5 n.8.

4.      These classification and treatment provisions are plain and unambiguous.  Moreover, the fact that no cash distribution to PHONES Notes Claims will be made on the Effective Date, and subsequent recovery is dependent upon more senior creditors being paid in full and dependent upon the outcome of future litigation, indicates there is no need under the Debtor/Committee/Lender Plan to resolve the issues described in the Motion before confirmation.

#### ii. *Noteholder Plan*

5.      The Noteholder Plan also classifies the PHONES Notes Claims together in a voting class, and contemplates a post-confirmation process pursuant to which the Court will

---

[6] Capitalized terms used in subsection I.a but not otherwise defined in this Response shall have the meanings ascribed to them in the Competing Plan within which they are provided.  Furthermore, the terms of the Competing Plans as set forth in this Response are intended only as a summary of the terms of the Competing Plans with respect to the PHONES.  This Response shall not in any way supersede or alter the terms of the Competing Plans.

-7305975v

determine if the Exchange Claimants have Subordinated Securities Claims. Holders of Allowed

PHONES Notes Claims receive shares of litigation trusts established under the Noteholder Plan

but, pending determination of the enforceability of the contractual subordination provisions of

the Indenture, are not entitled to receive a distribution on the Effective Date. Similarly, Holders

of Allowed Subordinated Securities Claims receive shares of litigation trusts but any

distributions that would otherwise go to these claimants are instead distributed to more senior

classes. See Noteholder Plan at Arts. 1.1.259, 3.2.9, 3.2.11; Specific Disclosure Statement for

the Noteholder Plan at 18. The charts provided in the disclosure statement for the Noteholder

Plan show that Holders of Allowed PHONES Notes Claims do not receive a distribution on the

initial distribution date under *any* proposed outcome of the Noteholder Plan. See Specific

Disclosure Statement for the Noteholder Plan at 30-42. Additionally, the claims of more senior

creditors will not be paid off in full and the balance of their recovery is dependant upon the

outcome of future litigation. Finally, the Noteholder Plan provides for lengthy post-confirmation

litigation on numerous fronts and *specifically* contemplates that the Trusts might engage in the

PHONES Notes Claims Resolution after the Effective Date. See Specific Disclosure Statement

for the Noteholder Plan at 5-6. Consequently, under the Noteholder Plan the Motion need not be

resolved before plan confirmation.

### iii.  Bridge Plan

6.      The Bridge Plan is essentially identical to the Noteholder Plan with

respect to PHONES Notes Claims, except that it proposes certain Plan Settlements with the Step

One Lenders, the Step Two Lenders and the Bridge Loan Lenders. If settlements with the Step

One Lenders, the Step Two Lenders or both, are approved, each Holder of a PHONES Note will

receive a Pro Rata share of a lump-sum cash payment and a percentage of litigation trust

7

interests.  If the Plan Settlements are not accepted and approved, PHONES treatment under the

Bridge Plan is identical to the PHONES treatment discussed above with respect to the

Noteholder Plan.  See Bridge Plan at Arts. 3.2.9 and 5.15; Motion ¶ 23.  Accordingly, only in the

extremely unlikely event that the Step One Lenders and the Step Two Lenders vote in favor of

the Bridge Plan and the PHONES Notes Claims are thereby entitled to receive a distribution on

the Effective Date is there a reason to expeditiously determine the PHONES claims issues.  In

such event, the claims issues can be resolved expeditiously after confirmation.  Otherwise, there

is no need, even after plan confirmation, to expeditiously determine the claim issues raised in the

Motion.

### b. The Motion Raises Claims Objection Issues That Must Be Resolved After Notice to and With the Participation of the Exchange Notes Claimants

7.        The Motion attempts to frame the Debtor/Committee/Lender Plan as an

objection to Wilmington Trust's PHONES claim (claim #3523) that needs immediate resolution.

But, as Wilmington Trust ultimately concedes, the Debtor/Committee/Lender Plan "is silent" on

issues regarding the allowed amount of the PHONES claims.  See, e.g., Motion at ¶ 25 ("While

the Debtor/Committee/Lender Plan *is silent on the issue*, it implicitly contemplates the

reconciliation of the amount provided on the Debtors' Schedules and the amount asserted by

Wilmington Trust.") (emphasis added).  In fact, the Exchange Claimants have been given the

right to vote on the Competing Plans based on the full principal amount of the PHONES Notes

they sought to exchange, instead of the significantly reduced amount the Debtors believe they

can rightfully claim.  Thus, as noted above, there is no reason for any issues respecting the

PHONES to be adjudicated prior to or in connection with confirmation of the

Debtor/Committee/Lender Plan.

8.      To make matters worse, by the Motion Wilmington Trust raises "issues" regarding its claim, then seeks "resolution" from the Court without actually advocating for any particular result or holding.  Wilmington Trust has simply thrown up a jump ball and gotten off the court.  This type of claims resolution process is inconsistent with the procedural requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the District of Delaware.

9.      Also, it is important to note that absent from this process are the Exchange Claimants themselves.  Even if Wilmington Trust has decided that the PHONES claims can be resolved without the PHONES holders themselves having a full opportunity to actually participate in the resolution, the Debtors do not believe that is the appropriate way to proceed. The PHONES claimants themselves must be given notice and the full opportunity to state their position.  To the extent that any issue relates to plan confirmation, the PHONES holders presently have an opportunity to come forth and state their position by filing a confirmation objection.  Conversely, any other PHONES issues not directly pertinent to plan confirmation, including claims allowance issues, are best addressed after confirmation.  It is, for example, well accepted that claims objections need not be filed and resolved before confirmation of a plan of reorganization.  See In re Shank, 315 B.R. 799, 801 (Bankr. N.D. Ga. 2004) ("Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requires that objections be filed prior to confirmation.").

10.     In short, the Debtors suggest the appropriate process for determining the allowed amount of the Exchange Notes Claims and any priority issues not addressed by a plan of reorganization itself be addressed after confirmation and after providing adequate notice to the Exchange Claimants and any other party in interest, including the remaining PHONES holders.

-7305975v

This would provide such parties with the proper forum and adequate time to brief a position regarding the allowance of the PHONES claims.

### c.  The Parties Should Focus on Matters That are Critical to Confirmation

11.     The Debtors and each of their key creditor constituencies (including Wilmington Trust) are engaged in a contentious plan confirmation process which has involved countless pleadings, numerous disclosure statements, competing proposed plans, extensive discovery, mediation, litigation and more.  Indeed, all of the requisite parties are focused on the critical task at hand, confirming a plan of reorganization that will facilitate the Debtors' orderly exit from bankruptcy.  While the issues raised in the Motion *might* become consequential, today they have only a hypothetical effect.

12.     For example, the Motion states that the Exchange Notes Claims need to be resolved in order to properly apportion votes and because the status of the Exchange Notes Claims could determine whether the PHONES class is an impaired accepting class.  See Motion at ¶ 27.  If the classification of the Exchange Notes Claims turns out to be an issue that could affect the confirmation of any of the Competing Plans, such an issue can be resolved in connection with confirmation and any votes from the Exchange Claimants can then be quickly and accurately apportioned.[7]  If the votes show that this determination is necessary for confirmation, the Court can adequately address the issue at such time.  As discussed above, the Motion raises claims allowance issues that can be, and commonly are, determined post-confirmation.  It also raises classification issues that likely are of no consequence or, if of

---

[7] The solicitation materials expressly contemplate this possibility and instruct voters that if the PHONES Notes Exchange Claims are not properly classified under the Noteholder Plan and the Bridge Plan, "the votes pertaining to such PHONES Notes Exchange Claims shall be applied to the applicable Class in which such claims are reclassified."  See Docket No. 7126 at Exhibit C.

10

consequence, can be addressed at confirmation. The best use of judicial resources is to focus on plan confirmation at this time, rather than upon claims allowance issues.

II.    **The Exchange Notes Claims are Subordinated Pursuant to the Indenture**

13.    The Debtors have indicated herein that advocacy of the substantive merits of the issues respecting the allowance of the Exchange Notes Claims should not be addressed at this juncture without all real parties in interest given the opportunity to be present. Indeed, it is notable that Wilmington Trust asks the Court to fix the allowed amount and priority of the Exchange Notes Claims, yet takes no position on the relative priority of the Exchange Notes Claims, while relegating other substantive arguments to a footnote. See Motion at 10 n.6. This illustrates that the substantive issues are not yet fully joined or presented. The Debtors themselves believe that the Exchange Notes Claims should be valued at the amount that the Exchange Claimants were entitled to receive upon redemption of their PHONES. The Debtors also believe that all the Exchange Notes Claims remain contractually subordinated.[8] The Debtors' views, however, together with the possibly disparate views of the PHONES holders, can and should be fully briefed at an appropriate time.

---

[8] The Debtors do not intend for this Response to foreclose their rights to make any future arguments and assert any legal bases for the merits of their position regarding the PHONES. The Debtors believe that resolution of the matters addressed in the Motion falls squarely within the parameters of a claims reconciliation process that should invite input from the actual Exchange Claimants. In the event of such a process, or in any future pleadings or filings regarding the PHONES, the Debtors reserve the right to assert any and all legal arguments and positions, including, without limitation, whether or not the Exchange Notes Claims are further subordinated pursuant to section 510(b) of the Bankruptcy Code.

-7305975v

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court deny the Motion; and grant such other and further relief as the Court deems appropriate.

Dated: Wilmington, Delaware
      January 13, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James Conlan
Kevin T. Lantry
Kenneth P. Kansa
Kerriann S. Mills
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

-7305975v