# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Ref. Docket Nos. 4886, 7401, 7433, 7434** |

## CONSOLIDATED OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO MOTIONS FOR TEMPORARY ALLOWANCE OF CLAIMS FOR VOTING PURPOSES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018

The debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors")

in the above-captioned chapter 11 cases, respectfully submit this consolidated objection (the

"Objection") to (i) the Motion for Estimation and Temporary Allowance of Claims Pursuant to

Bankruptcy Rule 3018 [Docket No. 4886] (the "Original WTC Motion") filed by Wilmington

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Trust Company ("Wilmington Trust"), (ii) Wilmington Trust's Supplemental Motion for

Estimation and Temporary Allowance of Claims Pursuant to Bankruptcy Rule 3018 [Docket No.

7401] (the "Supplemental WTC Motion"), (iii) the Motion for Estimation and Classification of

Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 [Docket No. 7434] (the "Law

Debenture Motion") filed by Law Debenture Trust Company of New York ("Law Debenture"),

and (iv) the Motion of Deutsche Bank Trust Company Americas, Indenture Trustee Under the

1992 Indenture, the 1995 Indenture and the 1997 Indenture for Estimation and Temporary

Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018  [Docket No. 7433]

(the "Deutsche Bank Motion" and, together with the Original WTC Motion, the Supplemental

WTC Motion, and the Law Debenture Motion, the "3018 Motions") filed by Deutsche Bank

Trust Company Americas ("Deutsche Bank," and together with Wilmington Trust and Law

Debenture, the "Movants").  In support of this Objection, the Debtors respectfully state as

follows:

## INTRODUCTION

1.       Each of the Movants is an indenture trustee for Tribune's Senior Notes[2] or

PHONES Notes, as applicable, and in that capacity is a proponent of the Noteholder Plan.  By

the 3018 Motions, the Movants seek to have their alleged claims for reimbursement of attorney's

fees and expenses (the "Expense Claims") estimated and temporarily allowed for purposes of

voting on the Debtor/Committee/Lender Plan and the Bridge Lender Plan.  In addition, two of

the Movants (Law Debenture and Deutsche Bank) ask that their Expense Claims, to the extent

allowed, be classified under the Debtor/Committee/Lender Plan (which they likely oppose) as

Class 1F Other Parent Claims, which is comprised of non-debt-related general unsecured claims,

---

[2] All terms used but otherwise defined herein shall have the meanings ascribed to them in the 3018 Motions, as
applicable.

rather than Class 1E, which is comprised of the Senior Noteholder Claims for which Law Debenture and Deutsche Bank serves as indenture trustees. In other words, Law Debenture and Deutsche Bank seek to have their Expense Claims removed from the class in which their relevant Senior Notes are classified and into which its Expense Claim should naturally be placed, if allowed, and moved into an entirely different and unrelated class for voting purposes.

2.      Law Debenture and Deutsche Bank clearly seek this relief for tactical purposes; namely, to try and manufacture votes that will cause Class 1F to accept the Debtor/Committee/Lender Plan in a less overwhelming fashion while importing Senior Noteholder objections to the Debtor/Committee/Lender Plan into an unrelated class of claims. As shown below, there is no merit to this gambit. For present purposes, however, the Debtors propose that ruling on the 3018 Motions be deferred without prejudice until such time as the plan voting tabulation is completed, given the near-certainty that tabulation of Law Debenture's and Deutsche Bank's disputed Expense Claims with the ballots cast with respect to the Class 1F Other Parent Claims ultimately will have no impact on that class's acceptance of the Debtor/Committee/Lender Plan. Absent such a deferral, the Debtors are also willing to consent to the Movants having claims temporarily allowed, for voting purposes only in whatever amount of Expense Claim they can support with satisfactory evidence; provided, however, that the votes cast in respect of such claims be tabulated with Class 1E Senior Noteholder Claims (for Law Debenture and Deutsche Bank).

3.      If neither proposal is adopted by the Movants and/or the Court, then the Debtors object to the relief sought in the 3018 Motions for the reasons set forth below. To uphold the intent of Rule 3018 and this Court's Solicitation Order,[3] the Court should apply the classification

---

[3] The "Solicitation Order" is that certain Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of

46429/0001-7306119v1

scheme of the Debtor/Committee/Lender Plan and the procedures approved in the Solicitation

Order as they are written, and temporarily allow, solely for voting purposes, (i) each of Law

Debenture and Deutsche Bank a Class 1E Noteholder Claim in the amount of $1.00, and (ii)

Wilmington Trust a Class a Class 1F Other Parent Claim in the amount of $1.00.  Temporary

allowance of claims for voting purposes in such manner preserves the Movants' rights and

effects the classification scheme established by the Debtor/Committee/Lender Plan, while at the

same time preventing distortion of the voting process and accounting for the fact that none of the

Movants has provided any detail to the Debtors or the other proponents of the

Debtor/Committee/Lender Plan (or, for that matter, to the Court) that supports the amount or

reasonableness of the Expense Claims.

## ARGUMENT

**I.    The Court Should Defer Ruling on the 3018 Motions Until After the Voting Deadline**

4.    The Court should defer ruling on the 3018 Motions until after the Voting

Deadline (i.e., January 28, 2011), given the strong likelihood that the Expense Claims will be

insufficient to affect the acceptance of the Debtor/Committee/Lender Plan by Class 1F, even if

they were all temporarily allowed for voting purposes in Class 1F and voted in their full

requested amount to reject the Debtor/Committee/Lender Plan.

5.    The Debtor/Committee/Lender Plan's treatment of Class 1F - Other Parent Claims

is materially similar to the prior Plan proposed by the Debtors (the "Prior Plan"), which was

overwhelmingly supported by the Other Parent Claims Class.  The final preliminary voting

---

Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving
Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting
Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting
Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New
Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation
Agent's Retention  and Allocation of Costs of Same; and (X) Granting Related Relief entered on December 9, 2010
[Docket No. 7126].

report sent by the Voting Agent on August 19, 2010 showed an accepting vote in the Other

Parent Claims class of 243 to 5 in number, and $118,144,972.21 in amount accepting versus

$20,624.00 rejecting.  See Preliminary Voting Report dated Aug. 19, 2010, attached hereto as

Exhibit A.  In percentage terms, 97.98% of holders of Other Parent Claims on the Prior Plan

holding 99.98% in amount of such claims voted to accept the Prior Plan.  Given that (i) the

Debtor/Committee/Lender Plan affords Other Parent Claims materially similar treatment to the

Prior Plan, (ii) the Other Parent Claims class is similarly constituted under the

Debtor/Committee/Lender Plan (excepting the Swap Claim discussed below), and (iii) the other

two competing plans offer substantially lower initial percentage recoveries to holders of Other

Parent Claims, it is highly likely that Class 1F will overwhelmingly accept the

Debtor/Committee/Lender Plan.

6.    Moreover, the Debtor/Committee/Lender Plan also classifies the Swap Claim (as

defined in the Debtor/Committee/Lender Plan) as a Class 1F Other Parent Claim and allows such

claim in the amount of $150,948,822.  See Debtor/Committee/Lender Plan at § 3.2.6(b).  The

Debtors expect that the holder of the Swap Claim will vote to accept the

Debtor/Committee/Lender Plan, thus further substantially increasing the anticipated acceptance

of the Debtor/Committee/Lender Plan by the Other Parent Claims class.

7.    Accordingly, it is highly unlikely that the relief sought in the 3018 Motions will

have any impact on Class 1F's acceptance of the Debtor/Committee/Lender Plan, even if the

3018 Motions are granted in their entirety.  Specifically, even if all three 3018 Motions were

granted as plead (and, for reasons set out below, they should not be), and the vote otherwise

mirrored that on the Prior Plan, the accepting percentage of Class 1F would still be 85.76% in

amount – well above the two-thirds statutory threshold for acceptance – and nearly 97% in

number.  Under such circumstances, consideration of the 3018 Motions should be deferred until

it can be determined whether the relief sought therein would be moot.

**II.     Law Debenture's and Deutsche Bank's Claims Should be Classified as Senior Noteholder Claims Because that Accords with Their Classification Under the Debtor/Committee/Lender Plan**

8.     If, notwithstanding the foregoing, the Court concludes that it is appropriate to

adjudicate the 3018 Motions at this time, any temporary allowance for voting purposes of the

Expense Claims should follow the classification scheme set forth in the

Debtor/Committee/Lender Plan and classify both Law Debenture's and Deutsche Bank's claims

as Class 1E Senior Noteholder Claims.  The definition of Senior Noteholder Claim under the

Debtor/Committee/Lender Plan is straightforward and directly encompasses the claims sought to

be temporarily allowed for voting purposes by Law Debenture and Deutsche Bank:  "Senior

Noteholder Claims means all Claims arising under or evidenced by the Senior Notes Indentures

and related documents and any Claim of the Senior Noteholders arising under the Pledge

Agreement."  Debtor/Committee/Lender Plan at § 1.1.216 (emphasis added).  From a review of

Law Debenture's and Deutsche Bank's proof(s) of claim, any Expense Claims they may have

clearly "aris[e] under or [are] evidenced by the Senior Notes Indentures and related documents."

Both Law Debenture and Deutsche Bank cite only to the relevant indentures as the bases for their

claims.  See Law Debenture Motion at ¶ 10; Deutsche Bank Motion at ¶¶ 9, 12, 15; see also Law

Debenture Motion at ¶ 21 ("Tribune's obligation to reimburse Law Debenture for its fees and

expenses is a contractual obligation under the 1996 Indenture…").

9.     Neither Law Debenture nor Deutsche Bank cite to or acknowledge the definition

of Senior Noteholder Claims in the Debtor/Committee/Lender Plan or confront the fact that it

plainly addresses the issue of how their asserted Expense Claims should be classified thereunder.

46429/0001-7306119v1

This failure is glaring because the same definition of Senior Noteholder Claims is used word-for-word in the Noteholder Plan of which each of Law Debenture and Deutsche Bank is a proponent. See Noteholder Plan at § 1.1.241 (adopting verbatim definition from Debtor/Committee/Lender Plan).[4] The claims sought to be voted by Law Debenture and Deutsche Bank are plainly classified as Senior Noteholder Claims under the Debtor/Committee/Lender Plan just as they are under the Noteholder Plan, and they should be classified for voting purposes under the Debtor/Committee/Lender Plan accordingly.

10.     Neither Law Debenture nor Deutsche Bank offer any legitimate argument to the contrary. Instead, both focus on the allowed amount of Senior Noteholder Claims set forth in section 3.2.5 of the Debtor/Committee/Lender Plan as an apparent basis for concluding that the definition of Senior Noteholder Claim does not mean what it says and that the Debtor/Committee/Lender Plan "implicitly" classifies Law Debenture's and Deutsche Bank's claims as Class 1F Other Parent Claims. See Law Debenture Motion at ¶ 23; Deutsche Bank Motion at ¶ 26. However, neither of those 3018 Motions takes any note of what the Debtor/Committee/Lender Plan (and, for that matter, the Noteholder Plan) explicitly says; i.e., that the Law Debenture and Deutsche Bank claims are classified as Senior Noteholder Claims. Voting on the Debtor/Committee/Lender Plan should follow the classification scheme expressly set forth therein.[5]

11.     Finally, Law Debenture and Deutsche Bank both assert in passing that it is somehow inappropriate for all claims arising under the Senior Notes Indentures to be classified

---

[4] The Bridge Lender Plan also adopts an identical definition for Senior Noteholder Claims. See Bridge Lender Plan at § 1.1.248.
[5] To eliminate any confusion that may be caused to Law Debenture, Deutsche Bank or others, the Debtors have conferred with the co-proponents of the Debtor/Committee/Lender Plan and intend to make a technical amendment to section 3.2.5 of the Debtor/Committee/Lender Plan to clarify that the Allowed Amount of the Senior Noteholder Claims is $1,283,055,743.77 plus the amount (if any) of any allowed Expense Claims, solely to the extent specified in the applicable indentures and allowed by the Bankruptcy Court.

together.  As a threshold matter, any issues that Law Debenture or Deutsche Bank have respecting the Debtor/Committee/Lender Plan's classification scheme are properly left to the Confirmation Hearing, as are any issues respecting the Noteholder Plan's classification scheme, and the Debtors (and their co-proponents) reserve all rights concerning such issues.[6]  Neither Law Debenture nor Deutsche Bank, however, make any persuasive argument on the point, citing only to boilerplate precedents that similarly-situated claims should be classified together and then concluding, without explanation, that their claims are sufficiently dissimilar from other claims arising under the Senior Notes Indentures that classification of all claims arising under the Senior Notes Indentures is impossible.  See Law Debenture Motion at ¶ 22; Deutsche Bank Motion at ¶ 25.

12.     This assertion does not withstand scrutiny.  The professional fee and expense claims of Law Debenture and Deutsche Bank were classified as Senior Noteholder Claims under the Debtor/Committee/Lender Plan because all such claims arise under the Senior Note Indentures and are claims of equal priority against the same Debtor.  Each of Law Debenture and Deutsche Bank included the Expense Claims in their proofs of claim together with all other claims arising under the Senior Notes Indentures, and they cannot now perform an about-face and assert that the claims joined together in their proofs of claim – all arising under the same documents – are so dissimilar that their classification together violates the Bankruptcy Code.  The strained nature of Law Debenture's and Deutsche Bank's arguments is made plain by the fact that the same classification scheme that Law Debenture and Deutsche Bank assert violates the Bankruptcy Code here is also present in the Noteholder Plan, of which Law Debenture and

---

[6] For the avoidance of doubt, the Debtors reserve all rights to respond to any objections raised at the Confirmation Hearing respecting the classification scheme under the Debtor/Committee/Lender Plan and/or raise objections

Deutsche Bank are proponents.[7]  Claims of equal priority against the same debtor, arising under

a particular contract or contracts (such as the Senior Notes Indentures), facially satisfy the

"substantially similar" test of Section 1122(a) and warrant their classification together for voting

purposes.  Accordingly, Law Debenture's and Deutsche Bank's arguments to the contrary should

be rejected.

**III.    Each of the Movants' Claims Should be Allowed Only at $1.00 for Voting Purposes Because No Evidence Has Been Presented to Support Any of the Claims**

13.    Turning from the requested classification for the Movants' claims to the amounts

thereof, each of the Movants' Claims should be allowed in a nominal amount (i.e., $1.00) for

voting purposes given that each of the Movants has submitted no evidence to support the

asserted amounts of their claims, as required by the Solicitation Order.  The Solicitation Order

states plainly that "[a] 3018 Motion must set forth, with particularity, the amount and

classification in which [the holder of a claim] believes its Claim should be allowed for voting

purposes *and the evidence in support of its belief.  . . ."*  See Solicitation Order at ¶ 41.  This

accords with case law which makes clear that the Movants bear the burden of showing their

entitlement to temporary allowance of a claim for voting purposes.  See, e.g., In re Armstrong,

294 B.R. 344, 354 (B.A.P. 10th Cir. 2003) (burden of proof should be on claimant to permit

sufficient evidence that it has a colorable claim capable of temporary evaluation).

14.    Despite the fact that each of the 3018 Motions requests the temporary allowance

of a multi-million dollar claim for professional fees and expenses – which if legitimate would no

doubt be supported by voluminous detail – the Movants have elected to provide no more factual

---

[7] The Noteholder Plan provides for payment of the professional fees and expenses of Law Debenture, Deutsche Bank and Wilmington Trust promptly upon the Effective Date.  See Noteholder Plan at § 9.1.1.  Whether a particular Plan provides for the payment of a proponent's professional fees and expenses other than through class distributions thereunder may affect whether that proponent feels strongly about the classification scheme under such Plan, but it does not affect the propriety of that Plan's classification scheme.

46429/0001-7306119v1

support for their claims than (i) a recitation of their proofs of claim, followed by an estimation of the amounts of such claims based on no evidence or factual basis at all, and (ii), in the case of Law Debenture and Deutsche Bank, an allusion to the amounts of other professionals' fees occurred in connection with these cases, which self-evidently provides no factual support for the Movants' claims.  <u>See</u> Law Debenture Motion at ¶ 24 n.4, Deutsche Bank Motion at ¶ 28, n.5. While it may be understandable that each of the Movants prefers to keep the details of its professional expenses to itself, without such detail – and any other relevant supporting documentation – the Movants' failure of proof makes it impossible for the Debtors, the Court or any other parties to evaluate the asserted amount and legitimacy of the Expense Claims, including whether those claims are "reasonable" as required by the Senior Notes Indentures and the PHONES Notes Indenture.  Hence, the 3018 Motions provide no basis for temporarily allowing claims for voting purposes.[8]

15.     The Court should accordingly treat each of the Movants' claims as claims entirely unliquidated in amount under the Solicitation Order, which is the appropriate treatment where a claim has been asserted but where the claimant has made no showing as to the proper amount of the claim.  Paragraph 30(e) of the Solicitation Order provides that an entirely unliquidated claim that is based on a timely filed proof of claim not subject to a pending objection shall be temporarily allowed for voting purposes only in the amount of $1.00.  Such treatment is entirely appropriate here, and should be approved by the Court.

---

[8] After the filing of the Original WTC Motion, the Debtors made repeated requests in writing for Wilmington Trust to provide the detail supporting the $10 million fee and expense claim it seeks to vote.  Despite assurances that such materials would be forthcoming, Wilmington Trust has never provided any support for the asserted amount of its claims to the Debtors.

46429/0001-7306119v1

## CONCLUSION

16.     For all of the foregoing reasons, ruling on the 3018 Motions should be deferred or, in the alternative, the 3018 Motions should each be denied except to the extent that they provide that, with respect to the Debtor/Committee/Lender Plan, (i) Law Debenture shall be entitled to vote a single Senior Noteholder Claim temporarily allowed in Class 1F for voting purposes only in the amount of $1.00; (ii) Deutsche Bank shall be entitled to vote a single Senior Noteholder Claim temporarily allowed in Class 1F for voting purposes only in the amount of $1.00; and (iii) Wilmington Trust shall be entitled to vote a single PHONES Notes Claim temporarily allowed in Class 1F for voting purposes only in the amount of $1.00.

## RESERVATION OF RIGHTS

17.     Nothing in this Objection shall constitute a waiver by the Debtors or their co-proponents of any arguments in support of confirmation of the Debtor/Committee/Lender Plan or in opposition to (i) any other Plan or (ii) the allowance, amount and/or classification of any claims in the Debtors' chapter 11 cases, and all rights related thereto are expressly reserved.[9]

---

[9] Wilmington Trust and Deutsche Bank cite, for example, to In re Oakwood Homes Corp., 394 B.R. 652 (Bankr. D. Del. 2008) for the proposition that postpetition fees and expenses are available to any unsecured creditor with a contractual entitlement thereto. See Original WTC Motion at ¶ 12, Deutsche Bank Motion at ¶ 23. Such issue may appropriately be addressed, if required, at any necessary future proceedings respecting the Movants' claims, and the Debtors reserve their rights to object on any and all grounds to any claims asserted by the Movants.

11

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court defer ruling on the 3018 Motions as described herein or, in the alternative, deny such

Motions except to the extent set forth herein; and grant such other and further relief as the Court

deems appropriate.

Dated: Wilmington, Delaware
      January 13, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Gregory V. Demo
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

       -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

46429/0001-7306119v1