## EXHIBIT A

1  that juncture.  It may be that the letters are going to cue

2  this up sufficiently that you'll have a clear, you know,

3  understanding of what the parties' positions are in this

4  regard, you know, you can make a better judgment then as to

5  what additional material or briefing is necessary, if any.  It

6  will also give the parties -- you know, it will bring closure

7  to the issue, in the sense that they'll see what we're arguing

8  and while my guess is that we'll still be apart, their

9  characterization of what our position is in their letter is --

10  you know, in our view, you know, not a fair characterization

11  and after they review our letter, maybe -- our response, maybe

12  there will be some ground for maneuvering here.  I'm not sure,

13  but it's always worth a try.

14          THE COURT:  All right.

15          MR. BENDERNAGEL:  So I would agree with Mr. Zensky

16  that we ought -- and rather than schedule a separate thing --

17  you know, hearing, since we're going to be together on

18  Thursday, it seems to me that we could deal with it at that

19  juncture.

20          THE COURT:  Well, we've already informed debtors'

21  counsel that my time on Thursday is extremely limited.  In

22  fact, that's why the hearing was moved up to 10:30 eastern in

23  the morning.  I have two hours to give you and literally not a

24  second more.  I have a commitment that cannot be changed or

25  moved and for which I must be on time.  So I'm not inclined to

1  -- unless the circumstances have changed and other matters

2  tentatively scheduled have been worked out, I'm not going to be

3  in a position to really spend any time on the discovery

4  matters.

5          You know, it would -- in terms of where the hearing

6  date falls, it would be a natural time and date to do it, but

7  my schedule does just not permit it.  So here's what we're

8  going to do, to the extent that the parties -- and I -- to the

9  extent the parties are unable to work out what remaining

10 differences there are, either motions to compel or motions for

11 a protective order or whatever other motions parties need

12 relief on -- need court ordered relief on, should be filed by

13 January 14th at 4:00 p.m. eastern time.  Responses are due by

14 January 19, 4:00 p.m. eastern time.  I will fix a hearing for

15 Friday, January 21st at 10:00.  I hadn't otherwise planned to

16 sit on that day, but I will do that.  And I think it probably

17 would be best if I moved everything that was scheduled now for

18 the 20th to the 21st as well and I'll set aside whatever time

19 is necessary to resolve whatever remaining disputes there are.

20          I do not anticipate, nor do I want replies, but I

21 will, as I normally do, poll the parties at the outset of the

22 hearing whether there have been any further developments since

23 responses are filed to the discovery requests.  Are there any

24 questions?

25          MR. BENDERNAGEL:  I have two questions, Your Honor.

1   This is Jim Bendernagel.

2            THE COURT:  Go ahead.

3            MR. BENDERNAGEL:  First question is, you know, would

4   it be helpful for us -- I think it probably would be helpful

5   for us to file our letter response to see if, in fact, we can

6   make some progress before Friday on this issue of the mediation

7   orders and we'll do that unless you tell us no, that's a waste

8   of time.

9            THE COURT:  No, I mean, it's a -- look --

10           MR. BENDERNAGEL:  The second issue is, to the extent

11  there are other issues that the parties anticipate potentially

12  cuing up this week, is it worth pursuing the CMO procedure,

13  sending you a letter, or should we just aim on trying to cue

14  them up in connection with this motion practice that you've

15  laid out?

16           THE COURT:  On your second question --

17           MR. BENDERNAGEL:  Is it --

18           THE COURT:  -- the answer is the latter, because my

19  time this week is extremely limited.  I'm beginning a mediation

20  first thing tomorrow, which may continue into the following

21  day.  I have a limited hearing schedule Thursday and I will not

22  be in the office at all on Friday.  So I think, to the extent

23  there are other issues which have arisen, but not yet been the

24  subject of a letter, they should just be wrapped into the

25  motion practice.

1          And to answer your first question look, I think it

2    can't hurt.

3          MR. BENDERNAGEL:  Uh-huh.

4          THE COURT:  You know.

5          MR. BENDERNAGEL:  We'll do that, Your Honor, so that

6    at least we've joined the issue.

7          THE COURT:  Okay.  Are there any other questions?

8          All right.  Thank you all very much.  I appreciate

9    your getting together on short notice.  That concludes this

10   hearing.  Court will stand adjourned.

11        (Whereupon at 2:50 p.m., the hearing was adjourned)

12                        CERTIFICATION

13          I  certify  that  the  foregoing  is  a  correct

14   transcript  from  the  electronic  sound  recording  of  the

15   proceedings in the above-entitled matter.

16

17

18   *Stephanie McMeel*                    January 13, 2011
     _____

19   Stephanie McMeel

20   AAERT Cert. No. 452

21   Certified Court Transcriptionist

**EXHIBIT B**

**Meredith S. Senter, Jr.**
**Sally A. Buckman**
**LERMAN SENTER PLLC**
**2000 K Street, N.W.**
**Suite 600**
**Washington, DC 20006**
**(202) 429-8970**

**Counsel for Aurelius Capital Management, LP**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------X
In re:                                     :
                                           :         Chapter 11 Cases
                                           :         Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                   :         (Jointly Administered)
                                           :
                              Debtors.     :
-----------------------------------------------------X
```

**SECOND REQUEST FOR PRODUCTION OF DOCUMENTS OF**
**AURELIUS CAPITAL MANAGEMENT, LP TO JPMORGAN**

Pursuant to Fed. R. Civ. P. 26 and 34, as made applicable herein by Rules 7026,

7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Aurelius Capital

Management, LP, on behalf of its managed entities (collectively, "Aurelius"), requests

that JPMorgan (as defined herein) produce the documents and things described herein for

inspection and copying at the offices of Lerman Senter PLLC, located at 2000 K Street,

N.W., Suite 600, Washington, DC 20006, pursuant to a case management order or

scheduling order to be entered by the Court, or in the absence of any such order within

thirty days of service of this Request:

## REQUESTS FOR PRODUCTION

1.      All Documents and Communications relating to any direct or indirect ownership, or other financial interest, including any Debt Interest, held or managed by JPMorgan or any JPMorgan Individual in any Broadcasting Entity, including but not limited to Gannett Company, Inc. and Freedom Communications.

2.      All Documents and Communications relating to the ownership, corporate or management structure of any Broadcasting Entity in which JPMorgan or any JPMorgan Individual holds or manages a direct or indirect ownership or other financial interest, including a Debt Interest.

3.      All Documents and Communications identifying or relating to the application of the FCC's broadcast multiple ownership and cross-ownership rules (as discussed in the Disclosure Statement to the Debtor/Committee/Lender Plan) to the holding by JPMorgan or any JPMorgan Individual of a direct or indirect ownership, financial  or other interest (including a Debt Interest) in Tribune and any other Broadcasting Entity, including Gannett Company, Inc. and Freedom Communications, whether or not JPMorgan considers such interest to be attributable under the FCC's rules.

4.      All Documents and Communications relating to any direct or indirect ownership or other financial interest, including a Debt Interest, held by investment companies or trust accounts held or managed by JPMorgan or any JPMorgan Individual in any Daily Newspaper or Publishing Entity, including but not limited to Gannett Company, Inc.

5.      All Documents and Communications relating to the ownership, corporate or management structure of any Daily Newspaper or Publishing Entity in which JPMorgan or any JPMorgan Individual holds or manages a direct or indirect ownership or other financial interest, including a Debt Interest.

6.      All Documents and Communications identifying or relating to the application of the FCC's broadcast multiple ownership and cross-ownership rules (as discussed in the Disclosure Statement to the Debtor/Committee/Lender Plan) to the holding by JPMorgan or any JPMorgan Individual of a direct or indirect ownership, financial or other interest

2

(including a Debt Interest) in Tribune and any other Daily Newspaper or Publishing Entity, whether or not JPMorgan considers such interest to be attributable under the FCC's rules.

7.      All Documents identifying the investment advisor to any investment company, as defined in 15 U.S.C. § 80a-3, owned or managed by JPMorgan, that holds a direct or indirect ownership or other financial interest in any Broadcasting Entity, Daily Newspaper or Publishing Entity, including Gannett Company, Inc.

8.      All Documents identifying any investment advisor owned or controlled by JPMorgan that provides investment advice to any investment company, as defined in 15 U.S.C. § 80a-3, that holds a direct or indirect ownership or other financial interest in any Broadcasting Entity, Daily Newspaper or Publishing Entity.

9.      All Documents and Communications describing or discussing the delegation of authority to take action with respect to JPMorgan's holdings in Reorganized Tribune to Miriam Kulnis, Naomi Hung, Alex Khabin, Goh Siew Tan, and Patrick Daniello.

10.     All Documents and Communications describing or discussing the delegation of authority referenced in Request #9 as consistent with JPMorgan's risk management policies.

11.     All Documents and Communications relating to review by the board of directors of JPMorgan of decisions relating to Tribune.

12.     Any Documents and Communications relating to any analysis of the FCC regulatory implication of Stephen B. Burke acting as an executive officer of NBCU while also serving as a director of JPMorgan, including without limitation whether Mr. Burke will have an attributable interest in Tribune.

## DEFINITIONS

The following additional definitions also apply to these requests:

A.      "Broadcasting Entity" means any Person engaged in the ownership, operation or management of a Broadcast Station.

3

B.      "Broadcast Station" means a broadcast radio or television station regulated by FCC.

C.      "Communication" means, without limitation, any exchange or transfer of information or Documents by any means *(e.g.,* whether oral, written, electronic or by other methods), as well as any notes, memorandum, or other record thereof.

D.      "Daily Newspaper" means a newspaper published at least four days per week and circulated generally in its community of publication.

E.      "Debt Interest" means any debt of a Broadcasting Entity or Publishing Entity, provided that if JPMorgan has no direct or indirect ownership or other non-debt financial interest in a Broadcasting Entity or Publishing Entity, Debt Interest means more than 33% of such entity's aggregate debt.

F.      "Document Depository" means the document depository that the Court authorized the Debtors to establish in an Order dated December 15, 2009.

G.      "Documents" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

     a.      correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, physical evidence, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments,

4

analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice Communications, or offers;

b.       notations in any form made of conversations, telephone calls, meetings, negotiations or other Communications; and

c.       bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

H.       "FCC" means the Federal Communications Commission.

I.       "Joint Disclosure Statement" means the Joint Disclosure Statement filed by the Debtors on October 22, 2010, as subsequently modified and approved by the Court.

J.       "JPMorgan" means (i) JPMorgan Chase & Co. and its affiliates; (ii) any of its or their officers, directors, partners, employees, members, or managers; (iii) any of its or their board of directors and any committee or subcommittee of any board of directors; and (iv) Professionals of any Person within (i), (ii) or (iii) above.

K.       "JPMorgan Individual" means any person within Definition J(ii) and or J(iii) and any entity or entities that any such person directly or indirectly owns or controls.

L.       "Person" means an individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

5

M.      "Professional" means any counsel, consultant, advisor, testifying

expert, non-testifying expert, agent, representative or other Person engaged to

provide or involved in providing at any time any services relating to any direct or

indirect ownership interest or other financial interest (including Debt Interest) held or

managed by JPMorgan in any Broadcasting Entity, Daily Newspaper or Publishing

Entity.

N.      "Publishing Entity" means any Person engaged in the publication,

printing, or distribution of any Daily Newspaper.

O.      "Relationship" means any prior, current or prospective personal,

professional, business or other relationship among any of the Persons specified in the

request, including but not limited to any matter with respect to which such persons have

done or sought to do business with one another (including commercial, charitable and

any other types of matters) or have been recommended or considered for a position or

engagement, at any time within the past ten years.

P.      "Tribune" means (i) the entity known as Tribune Company and its

direct and indirect subsidiaries, including but not limited to each of the Debtors in the

captioned bankruptcy case; (ii) any of their past, present or future officers, directors,

partners, members, employees, or managers; (iii) any past, present or future board of

directors, board of managers or similar body and any committee or subcommittee

thereof of any Person within (i) above, including but not limited to the Special

Committee; and (iv) Professionals of any Person within (i), (ii) or (iii) of this

Definition P.

## INSTRUCTIONS

1.      The words "and" and "or" are to be construed both conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. The word "all" shall also include each of and vice versa.

2.      You are requested to produce all responsive Documents in your possession, custody or control, wherever located, including, without limitation, those in the custody of your Professionals and affiliates.

3.      Unless otherwise stated in a specific request herein, the time period covered by the following requests is the period between January 1, 2007, through and including the present.

4.      If any part of the following requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for your inability to respond to the remainder and stating whatever information or knowledge you have relating to the portion to which you do not respond.

5.      If there are no Documents responsive to any particular request, please state so in writing.

6.      Where any copy of any Document whose production is sought herein, whether a draft or final version, is not identical to any copy thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

7.      If any Document requested herein was formerly in your possession, custody or control (or that of your Professional) and has been lost or destroyed or otherwise disposed of, you are requested to submit in lieu of any such Document a written statement (i) describing in detail the nature of the Document and its contents, (ii) identifying the person(s) who prepared or authored the Document and, if applicable, the

7

person(s) to whom the Document was sent, (iii) specifying the date on which the Document was prepared or transmitted, and (iv) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

8.    Hard copies of all Documents should be produced: in addition, copies of all Documents available electronically should be delivered on a disk, DVD or CD-ROM in a format to be agreed upon by Aurelius and the producing party. Aurelius reserves the right to request that Documents be produced in their native format.

9.    To the extent any responding Person intends to employ an electronic search to help locate responsive or potentially responsive Documents, Aurelius shall require that such Person promptly disclose and come to an agreement with Aurelius respecting its proposed search terms and methodology, and otherwise comply in full with Rule 7026-3(e) of the Local Rules for the United States Bankruptcy Court, District of Delaware.

10.    A request for any Document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such Document, in addition to the Document in its full and unexpurgated form.

11.    Documents should be segregated according to the number of the request to which you are responding or produced in the manner they are kept in the ordinary course of business. Documents attached to each other should not be separated.

12.    Each request for Documents herein includes a request for exact copies of all disks, CDs, DVDs and other removable media containing any information responsive to such request. Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system or program from which each was derived to permit rendering the material legible.

13.    If any privilege is claimed as to any Communication requested or sought to be identified herin:

8

A) State the nature of the privilege of the claim (i.e., attorney/client, work product, etc.);

B) State the name of the party claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

C) State the basis for claiming the privilege as to the specific Communication;

D) Identify all persons present at any Communication to which privilege is claimed and all persons to whom the subject matter of the Communication was discussed or disclosed; and

E) State the date of each such Communication.

14.    If any privilege is claimed as to any Document requested or sought to be identified herein:

A) State the nature of the privilege claimed (i.e., attorney/client, work product, etc.);

B) State the basis for claiming the privilege as to the specific information or Documents; and

C) State the date of such Document; identify the type of Document (i.e., letter, memo, etc.); set forth the subject matter thereof, identify each person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; identify each person now in possession of the Document; and, for each person identified, indicate whether such person is an attorney.

15.    For the avoidance of doubt, these requests call for the production of complete, unredacted versions of any redacted Documents or Communications that may be contained in the Document Depository. If any privilege is claimed as to any redacted portion of any Document or Communication contained in the Document Depository, please log such redacted material pursuant to Instructions 15-17.

16.    For purposes of each document request, each such request for Documents to be produced by you expressly includes Documents in the possession of your Professionals.

9

17.     The foregoing document requests are to be deemed continuing in nature. In the event you become aware of or acquire additional information relating or referring to any of the foregoing document requests, such additional information is to be promptly produced.


Washington, DC
December 17, 2010

Respectfully submitted,


By:    _____
        Meredith S. Senter, Jr.
        Sally A. Buckman
        Lerman Senter PLLC
        2000 K Street, N.W.
        Suite 600
        Washington, DC  20006
        Tel:  (202) 429-8970

        Counsel for
        Aurelius Capital Management, LP

10

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

IN RE:                          :

                            :  Chapter 11
TRIBUNE COMPANY, et al.,      :  Case No. 08-13141 (KJC)
                            :  (Jointly Administered)
           Debtors.         :

                            :

                            :

                            :

                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### RESPONSES AND OBJECTIONS OF JPMORGAN CHASE & CO. TO AURELIUS CAPITAL MANAGEMENT, LP'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

JPMorgan Chase & Co. ("JPMorgan"), by its undersigned counsel, pursuant to

Rules 26 and 34 of the Federal Rules of Civil Procedure, and Rules 7026, 7034, and 9014

of the Federal Rules of Bankruptcy Procedure, hereby responds and objects to Aurelius

Capital Management, LP's ("Aurelius") Second Request for Production of Documents,

dated December 17, 2010 (the "Document Requests").

### GENERAL OBJECTIONS

In addition to the grounds for objection set forth in response to each particular

request below, JPMorgan hereby incorporates by reference each and every General

Objection set forth in the Responses and Objections of JPMorgan Chase Bank, N.A. to

Aurelius Capital Management, L.P.'s First Request for Production of Documents, dated

December 23, 2010, and, in addition, responds and objects generally with respect to each

and every request as follows:

1.    JPMorgan objects to the Document Requests to the extent that they attempt to circumvent the procedure for objecting to the qualification of a proposed attributable party before the Federal Communications Commission ("FCC").  Whether JPMorgan will be qualified to hold attributable interests in Tribune after Tribune's emergence from bankruptcy is currently before the FCC in the form of applications submitted by Tribune on April 28, 2010.  Although the Communications Act of 1934, as amended, 47 U.S.C. § 151 et seq. (the "Communications Act"), and the FCC's rules, 47 C.F.R. § 0.1 et seq., permit parties to petition the FCC to deny an application or otherwise to object to the qualifications of proposed attributable parties, Aurelius has not availed itself of these procedures.  *See* 47 U.S.C. § 309(b); 47 C.F.R. § 73.3584(a); *see also* 47 C.F.R. § 73.3587 (providing for informal objections).  By the Document Requests, Aurelius seeks documents, information or things regarding matters that lie within the FCC's exclusive jurisdiction and that are neither relevant to the subject matter of the confirmation hearing nor reasonably calculated to lead to the discovery of admissible evidence.

2.    JPMorgan objects to the Document Requests to the extent that the Requests seek documents, information or things that are publicly accessible or that will be provided in Media Ownership Certifications to be filed by January 16, 2011 pursuant to the Solicitation Order.  [D.I. 7126, at ¶ 46.]

3.    JPMorgan objects to the Document Requests to the extent that they seek documents in support of arguments regarding compliance with FCC ownership rules that have been effectively waived by Aurelius, as each of the competing Plans of

Reorganization, including both the Debtor/Committee/Lender Plan and Noteholder Plan,
incorporates identical procedures to ensure that each Plan complies with FCC ownership
rules.

4.      JPMorgan's Responses and Objections to the Document Requests and its
production of any documents or information shall not be construed as an admission of the
relevance, materiality, or admissibility of any such documents or of the subject matter of
any such documents, or as a waiver or abridgement of any applicable privilege or of any
applicable objection set forth above or below, or as an agreement that requests for similar
documents will be treated in a similar manner.  The fact that JPMorgan responds or
objects to a particular document request shall not be interpreted as implying that
JPMorgan acknowledges the propriety of that request.  JPMorgan reserves the right,
without limitation, (a) to supplement, amend or correct all or any part of its responses or
objections; and (b) to object, on any ground, to the admissibility in evidence of any part
of the documents ultimately produced in response to the Document Requests or of any
information contained in any such document.

## OBJECTIONS TO DEFINITIONS

1.      JPMorgan objects to each and every definition to the extent that it purports
to define words in a way that is inconsistent with their generally understood meanings.
JPMorgan objects to the Definitions to the extent that they purport to impose obligations
on JPMorgan not required by the Federal Rules of Civil Procedure, the Federal Rules of
Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the

District of Delaware, provisions of the Communications Act or FCC rules, or any other applicable statute, rule or case law governing the discovery or disclosure of information.

2.     JPMorgan objects to the definition of "Broadcasting Entity" as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to the definition of "Broadcasting Entity" to the extent it is inconsistent with the Communications Act, FCC rules, or any other applicable statute, rule, or case law.

3.     JPMorgan objects to the definition of "Communication" as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to the definition of "Communication" to the extent it is inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, or provisions of FCC rules or the Communications Act governing the discovery or disclosure of information, and imposes burdens not required by those rules or that statute.

4.     JPMorgan objects to the definition of "Daily Newspaper" as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to the definition of "Daily Newspaper" to the extent it is inconsistent with the Communications Act, FCC rules, *e.g.*, 47 C.F.R. § 73.3555 Note 6, or any other applicable statute, rule, or case law.

5.     JPMorgan objects to the definition of "Debt Interest" as overbroad, vague, ambiguous, and unduly burdensome, particularly insofar as the term "other non-debt financial interest" is itself vague and ambiguous.  JPMorgan further objects to the definition of "Debt Interest" to the extent it is inconsistent with the Communications Act, FCC rules, or any other applicable statute, rule, or case law.

6.      JPMorgan objects to the definition of "Documents" as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to the definition of "Documents" to the extent it is inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, or provisions of FCC rules or the Communications Act governing the discovery or disclosure of information, and imposes burdens not required by those rules or that statute.

7.      JPMorgan objects to the definition of "JPMorgan" on the grounds that it is overbroad, vague, ambiguous and unduly burdensome, particularly insofar as it includes "its affiliates . . . any of its or their officers, directors, partners, employees, members or managers," "any of its or their board of directors and any committee or subcommittee of any board of directors" and "Professionals of any Person" listed.  JPMorgan further objects to this definition to the extent it is inconsistent with the Communications Act, FCC rules, or any other applicable statute, rule, or case law.  As used in JPMorgan's responses, "JPMorgan" means JPMorgan Chase and Co.

8.      JPMorgan objects to the definition of "JPMorgan Individual" on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and that it is not possible to know all of the persons and entities that Aurelius intends to include within the definition as stated.  JPMorgan further objects to this definition to the extent it is inconsistent with the Communications Act, FCC rules, or any other applicable statute, rule, or case law.  As used in JPMorgan's responses, "JPMorgan Individual" includes the

current officers and directors of JPMorgan, subject to the objections set forth herein, unless otherwise specified.

9.      JPMorgan objects to the definition of "Person" as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to the definition of "Person" to the extent it is inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, or provisions of FCC rules or the Communications Act governing the discovery or disclosure of information, and imposes burdens not required by those rules or that statute.

10.      JPMorgan objects to the definition of "Professional" as overbroad, vague, ambiguous and unduly burdensome.

11.      JPMorgan objects to the definition of "Publishing Entity" as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to the definition of "Publishing Entity" to the extent it is inconsistent with the Communications Act, FCC rules, or any other applicable statute, rule, or case law.

12.      JPMorgan objects to the definition of "Relationship" as overbroad, vague, ambiguous and unduly burdensome particularly insofar as it uses "relationship" in its definition.  JPMorgan further objects to the time frame set forth in the definition of "Relationship" as overbroad, and to the extent it includes documents, or information, that are not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.

13.     JPMorgan objects to the definition of "Tribune" on the grounds that it is overbroad, vague, ambiguous, unduly burdensome and that it is not possible to know all of the persons and entities that Aurelius purports to include within the definition as stated. As used in JPMorgan's responses, "Tribune" means Tribune Company and its direct and indirect subsidiaries, unless otherwise specified.

## OBJECTIONS TO INSTRUCTIONS

1.     JPMorgan objects to each of the Instructions to the extent that they impose any obligations that exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Case Management Order, provisions of the Communications Act or FCC rules or any other applicable statute, rule or case law governing the discovery or disclosure of information.

2.     JPMorgan objects to Instructions 1, 4, 6, 10 and 12 as overbroad, vague, ambiguous and unduly burdensome.

3.     JPMorgan objects to Instruction 2 as it is overbroad, vague, ambiguous and unduly burdensome. JPMorgan further objects to Instruction 2 to the extent it requires JPMorgan to search the files of its counsel, on the grounds of attorney-client privilege, work-product doctrine and/or any other applicable law or privilege. JPMorgan further objects to Instruction 2 to the extent that it seeks the production of documents that are not within JPMorgan's possession, custody or control including documents from JPMorgan's counsel, advisors, testifying and non-testifying experts or representatives.

4.       JPMorgan objects to Instruction 3 as overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it seeks documents from irrelevant time periods.

5.       JPMorgan objects to Instruction 5 as overbroad and unduly burdensome, and to the extent it is inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, provisions of the Communications Act or FCC rules or any other applicable statute, rule or case law governing the discovery or disclosure of information, and imposes burdens not required by those rules.

6.       JPMorgan objects to Instruction 7 as unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and to the extent it is inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, provisions of the Communications Act or FCC rules or any other applicable statute, rule or case law governing the discovery or disclosure of information, and imposes burdens not required by those rules.

7.       JPMorgan objects to Instruction 8 as overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to Instruction 8 to the extent that it seeks the production of hard copies of all documents, and to the extent that it seeks the production of electronic documents in their native form, on the grounds that it is inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court

8

for the District of Delaware, provisions of the Communications Act or FCC rules or any

other applicable statute, rule or case law governing the discovery or disclosure of

information, and imposes burdens not required by those rules. JPMorgan will only

produce electronic copies of the non-duplicative, non-privileged responsive documents as

tiff images.

        8.     JPMorgan objects to Instruction 9 to the extent that it is inconsistent with

the terms of the Case Management Order. [D. I. 7239.] The Case Management Order

was carefully negotiated by the parties, including Aurelius, and supersedes the

requirements of Rule 7026-3 of the Local Rules of the United States Bankruptcy Court

for the District of Delaware. JPMorgan further notes that Aurelius itself has not

complied with the provisions of Rule 7026-3.

        9.     JPMorgan objects to Instruction 11 as overbroad, vague, ambiguous and

unduly burdensome. JPMorgan further objects to Instruction 11 to the extent it is

inconsistent with the requirements of the Federal Rules of Civil Procedure, the Federal

Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court

for the District of Delaware, provisions of the Communications Act or FCC rules or any

other applicable statute, rule or case law governing the discovery or disclosure of

information, and imposes burdens not required by those rules.

       10.    JPMorgan objects to Instructions 13 and 14 as overbroad, vague,

ambiguous, unduly burdensome, and to the extent they are inconsistent with the

requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy

Procedure, the Case Management Order, the Local Rules of the United States Bankruptcy

Court for the District of Delaware, provisions of the Communications Act or FCC rules or any other applicable statute, rule or case law governing the discovery or disclosure of information, and impose burdens not required by those rules. JPMorgan will comply with its obligations under the Case Management Order regarding information or documents withheld under a claim of privilege.

11.    JPMorgan objects to Instruction 15 as overbroad, vague, ambiguous and unduly burdensome, and unintelligible, particularly insofar as it purports to require JPMorgan to "log such redacted material pursuant to Instructions 15-17," none of which contain instructions regarding the creation of privilege logs. JPMorgan further objects to Instruction 15 to the extent that it seeks the production of documents or information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege or discovery protection.

12.    JPMorgan objects to Instruction 16 as overbroad, vague, ambiguous and unduly burdensome. JPMorgan further objects to Instruction 16 to the extent it seeks to require JPMorgan to search the files of its counsel, on the grounds of attorney-client privilege, work-product doctrine and/or any other applicable law or privilege. JPMorgan further objects to Instruction 16 to the extent that it seeks the production of documents that are not within JPMorgan's possession, custody, or control, including documents from JPMorgan's counsel, advisors, testifying and non-testifying experts or representatives.

13.    JPMorgan objects to Instruction 17 on the grounds that it is contrary to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local

Rules of the United States Bankruptcy Court for the District of Delaware, provisions of

the Communications Act or FCC rules, or any other applicable statute, rule or case law

governing the discovery or disclosure of information, and imposes burdens not required

by those rules.

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

Subject to and without waiving the foregoing general objections, which are

incorporated herein by reference as if fully set forth in each response, JPMorgan objects

and responds to the Document Requests as follows:

**Request No. 1:**

All Documents and Communications relating to any direct or indirect ownership,
or other financial interest, including any Debt Interest, held or managed by JPMorgan or
any JPMorgan Individual in any Broadcasting Entity, including but not limited to Gannett
Company, Inc. and Freedom Communications.

**Response to Request No. 1:**

JPMorgan objects to Request No. 1 on the grounds that it is overbroad, vague,

ambiguous and unduly burdensome, particularly insofar it uses the vague term "other

financial interest." JPMorgan further objects to Request No. 1 on the grounds that it

seeks information that is irrelevant, seeks documents with respect to entirely unrelated

matters and is not reasonably calculated to lead to the discovery of admissible evidence.

JPMorgan further objects to Request No. 1 on the grounds that it constitutes an improper

attempt to circumvent applicable FCC rules, Communications Act provisions, or ongoing

FCC proceedings, or that it seeks information that is publicly accessible or that can more

easily be obtained from the Media Ownership Certification to be submitted by January

16, 2011.

**Request No. 2:**

All Documents and Communications relating to the ownership, corporate or management structure of any Broadcasting Entity in which JPMorgan or any JPMorgan Individual holds or manages a direct or indirect ownership or other financial interest, including a Debt Interest.

**Response to Request No. 2:**

JPMorgan objects to Request No. 2 on the grounds that it is overbroad, vague, ambiguous and unduly burdensome.  JPMorgan further objects to Request No. 2 on the ground that it seeks production of documents or information in contravention of any confidentiality agreement or obligations that would unduly violate the privacy interests of others.  JPMorgan further objects to Request No. 2 on the grounds that it seeks information that is irrelevant, seeks documents with respect to entirely unrelated matters and is not reasonably calculated to lead to the discovery of admissible evidence. JPMorgan further objects to Request No. 2 on the grounds that it constitutes an improper attempt to circumvent applicable FCC rules, Communications Act provisions, or ongoing FCC proceedings, or that it seeks information that is publicly accessible or that can more easily be obtained from the Media Ownership Certification to be submitted by January 16, 2011.

**Request No. 3:**

All Documents and Communications identifying or relating to the application of the FCC's broadcast multiple ownership and cross-ownership rules (as discussed in the Disclosure Statement to the Debtor/Committee/Lender Plan) to the holding by JPMorgan or any JPMorgan Individual of a direct or indirect ownership, financial or other interest (including a Debt Interest) in Tribune and any other Broadcasting Entity, including Gannett Company, Inc. and Freedom Communications, whether or not JPMorgan considers such interest to be attributable under the FCC's rules.

**Response to Request No. 3:**

JPMorgan objects to Request No. 3 on the grounds that it is overbroad, vague,

ambiguous and unduly burdensome. JPMorgan further objects to Request No. 3 on the

ground that it seeks the production of Privileged Material. JPMorgan further objects to

Request No. 3 on the grounds that it seeks information that is irrelevant, seeks documents

with respect to entirely unrelated matters and is not reasonably calculated to lead to the

discovery of admissible evidence. JPMorgan further objects to Request No. 3 on the

grounds that it constitutes an improper attempt to circumvent applicable FCC rules,

Communications Act provisions, or ongoing FCC proceedings, or that it seeks

information that is publicly accessible or that can more easily be obtained from the Media

Ownership Certification to be submitted by January 16, 2011.

**Request No. 4:**

All Documents and Communications relating to any direct or indirect ownership
or other financial interest, including a Debt Interest, held by investment companies or
trust accounts held or managed by JPMorgan or any JPMorgan Individual in any Daily
Newspaper or Publishing Entity, including but not limited to Gannett Company, Inc.

**Response to Request No. 4:**

JPMorgan objects to Request No. 4 on the grounds that it is incomprehensible,

overbroad, vague, ambiguous and unduly burdensome, particularly insofar as it seeks the

production of documents relating to "any . . . financial interest" held in client trust

accounts managed by JPMorgan. JPMorgan further objects to Request No. 4 on the

ground that it seeks production of documents or information in contravention of any

confidentiality agreement or obligations that would unduly violate the privacy interests of

others. JPMorgan further objects to Request No. 4 on the grounds that it seeks

13

information that is irrelevant, seeks documents with respect to entirely unrelated matters

and is not reasonably calculated to lead to the discovery of admissible evidence.

JPMorgan further objects to Request No. 4 on the grounds that it constitutes an improper

attempt to circumvent applicable FCC rules, Communications Act provisions, or ongoing

FCC proceedings, or that it seeks information that is publicly accessible or that can more

easily be obtained from the Media Ownership Certification to be submitted by January

16, 2011.

**Request No. 5:**

     All Documents and Communications relating to the ownership, corporate or
management structure of any Daily Newspaper or Publishing Entity in which JPMorgan
or any JPMorgan Individual holds or manages a direct or indirect ownership or other
financial interest, including a Debt Interest.

**Response to Request No. 5:**

     JPMorgan objects to Request No. 5 on the grounds that it is overbroad, vague,

ambiguous and unduly burdensome.  JPMorgan further objects to Request No. 5 on the

ground that it seeks production of documents or information in contravention of any

confidentiality agreement or obligations that would unduly violate the privacy interests of

others.  JPMorgan further objects to Request No. 5 on the grounds that it seeks

information that is irrelevant, seeks documents with respect to entirely unrelated matters

and is not reasonably calculated to lead to the discovery of admissible evidence.

JPMorgan further objects to Request No. 5 on the grounds that it constitutes an improper

attempt to circumvent applicable FCC rules, Communications Act provisions, or ongoing

FCC proceedings, or that it seeks information that is publicly accessible or that can more

easily be obtained from the Media Ownership Certification to be submitted by January

16, 2011.

**Request No. 6:**

All Documents and Communications identifying or relating to the application of
the FCC's broadcast multiple ownership and cross-ownership rules (as discussed in the
Disclosure Statement to the Debtor/Committee/Lender Plan) to the holding by JPMorgan
or any JPMorgan Individual of a direct or indirect ownership, financial or other interest
(including a Debt Interest) in Tribune and any other Daily Newspaper or Publishing
Entity, whether or not JPMorgan considers such interest to be attributable under the
FCC's rules.

**Response to Request No. 6:**

JPMorgan objects to Request No. 6 on the grounds that it is overbroad, vague,

ambiguous and unduly burdensome. JPMorgan further objects to Request No. 6 on the

ground that it seeks the production of Privileged Material. JPMorgan further objects to

Request No. 6 on the grounds that it seeks information that is irrelevant, seeks documents

with respect to entirely unrelated matters and is not reasonably calculated to lead to the

discovery of admissible evidence. JPMorgan further objects to Request No. 6 on the

grounds that it constitutes an improper attempt to circumvent applicable FCC rules,

Communications Act provisions, or ongoing FCC proceedings, or that it seeks

information that is publicly accessible or that can more easily be obtained from the Media

Ownership Certification to be submitted by January 16, 2011.

**Request No. 7:**

All Documents identifying the investment advisor to any investment company, as
defined in 15 U.S.C. § 80a-3, owned or managed by JPMorgan, that holds a direct or
indirect ownership or other financial interest in any Broadcasting Entity, Daily
Newspaper or Publishing Entity, including Gannett Company, Inc.

**Response to Request No. 7:**

JPMorgan objects to Request No. 7 on the grounds that it is overbroad, vague, ambiguous and unduly burdensome. JPMorgan further objects to Request No. 7 on the grounds that it seeks information that is irrelevant, seeks documents with respect to entirely unrelated matters and is not reasonably calculated to lead to the discovery of admissible evidence. JPMorgan further objects to Request No. 7 on the grounds that it constitutes an improper attempt to circumvent applicable FCC rules, Communications Act provisions, or ongoing FCC proceedings, or that it seeks information that is publicly accessible or that can more easily be obtained from the Media Ownership Certification to be submitted by January 16, 2011.

**Request No. 8:**

All Documents identifying any investment advisor owned or controlled by JPMorgan that provides investment advice to any investment company, as defined in 15 U.S.C. § 80a-3, that holds a direct or indirect ownership or other financial interest in any Broadcasting Entity, Daily Newspaper or Publishing Entity.

**Response to Request No. 8:**

JPMorgan objects to Request No. 8 on the grounds that it is overbroad, vague, ambiguous and unduly burdensome. JPMorgan further objects to Request No. 8 on the grounds that it seeks information that is irrelevant, seeks documents with respect to entirely unrelated matters and is not reasonably calculated to lead to the discovery of admissible evidence. JPMorgan further objects to Request No. 8 on the grounds that it constitutes an improper attempt to circumvent applicable FCC rules, Communications Act provisions, or ongoing FCC proceedings, or that it seeks information that is publicly

accessible or that can more easily be obtained from the Media Ownership Certification to
be submitted by January 16, 2011.

**Request No. 9:**

All Documents and Communications describing or discussing the delegation of
authority to take action with respect to JPMorgan's holdings in Reorganized Tribune to
Miriam Kulnis, Naomi Hung, Alex Khabin, Goh Siew Tan, and Patrick Daniello.

**Response to Request No. 9:**

JPMorgan objects to Request No. 9 on the grounds that it is overbroad, vague,
ambiguous and unduly burdensome.  JPMorgan further objects to Request No. 9 on the
grounds that it seeks information that is irrelevant, seeks documents with respect to
entirely unrelated matters and is not reasonably calculated to lead to the discovery of
admissible evidence.  JPMorgan further objects to Request No. 9 on the ground that it
constitutes an improper attempt to circumvent applicable FCC rules, Communications
Act provisions, or ongoing FCC proceedings.

**Request No. 10:**

All Documents and Communications describing or discussing the delegation of
authority referenced in Request #9 as consistent with JPMorgan's risk management
policies.

**Response to Request No. 10:**

JPMorgan objects to Request No. 10 on the grounds that it is overbroad, vague,
ambiguous and unduly burdensome.  JPMorgan further objects to Request No. 10 on the
ground that it seeks the production of Privileged Material.  JPMorgan further objects to
Request No. 10 on the grounds that it seeks information that is irrelevant, seeks
documents with respect to entirely unrelated matters and is not reasonably calculated to
lead to the discovery of admissible evidence.  JPMorgan further objects to Request No.

17

10 on the ground that it constitutes an improper attempt to circumvent applicable FCC

rules, Communications Act provisions, or ongoing FCC proceedings.

**Request No. 11:**

All Documents and Communications relating to review by the board of directors
of JPMorgan of decisions relating to Tribune.

**Response to Request No. 11:**

JPMorgan objects to Request No. 11 on the grounds that it is overbroad, vague,

ambiguous and unduly burdensome.  JPMorgan further objects to Request No. 11 on the

ground that it seeks the production of Privileged Material.  JPMorgan further objects to

Request No. 11 on the grounds that it seeks information that is irrelevant, seeks

documents with respect to entirely unrelated matters and is not reasonably calculated to

lead to the discovery of admissible evidence.  JPMorgan further objects to Request No.

11 on the ground that it constitutes an improper attempt to circumvent applicable FCC

rules, Communications Act provisions, or ongoing FCC proceedings.

**Request No. 12:**

Any Documents and Communications relating to any analysis of the FCC
regulatory implication of Stephen B. Burke acting as an executive officer of NBCU while
also serving as a director of JPMorgan, including without limitation whether Mr. Burke
will have an attributable interest in Tribune.

**Response to Request No. 12:**

JPMorgan objects to Request No. 12 on the grounds that it is overbroad, vague,

ambiguous and unduly burdensome.  JPMorgan further objects to Request No. 12 on the

ground that it seeks the production of Privileged Material.  JPMorgan further objects to

Request No. 12 on the grounds that it seeks information that is irrelevant, seeks

documents with respect to entirely unrelated matters and is not reasonably calculated to

lead to the discovery of admissible evidence.  JPMorgan further objects to Request No.

12 on the ground that it constitutes an improper attempt to circumvent applicable FCC

rules, Communications Act provisions, or ongoing FCC proceedings.


Dated: January 4, 2011                          Respectfully submitted,
      Washington, D.C.

Richard E. Wiley
James R.W. Bayes
Eve Klindera Reed
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7000

Benjamin S. Kaminetzky
Elliot Moskowitz
Michael Russano
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for JPMorgan Chase & Co.*

19

**EXHIBIT D**



LERMAN
SENTER
PLLC

WASHINGTON, DC

SALLY A. BUCKMAN
202.416.6762
SBUCKMAN@LERMANSENTER.COM

January 10, 2011

Richard E. Wiley, Esq.
James R.W. Bayes, Esq.
Eve Klindera Reed, Esq.
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC  20006

Re:     **JPMorgan's Responses and Objections
        To Aurelius's Second Request For
        <u>Production of Documents</u>**

Dear Dick, Jim and Eve:

The purpose of this letter is to set forth Aurelius's initial reaction to JPMorgan's Responses and Objections to Aurelius's Second Request For Production of Documents. Although it is subject to further review by our client and co-proponents, we wanted to provide it to you for review in advance of a meet and confer call. As we indicated via e-mail earlier today, we request a meet and confer call tomorrow.

**<u>General Objections</u>**

First, with respect to your incorporation by reference of each General Objection set forth in JPMorgan's Responses and Objections to Aurelius's First Request for Production of Documents, we request that you agree that any modifications to a request resulting from stipulations agreed to by the parties will be applied to the Second Request for Production of Documents to the extent they are applicable thereto.

Your first general objection claims that Aurelius's requests circumvent the procedures for objecting to the qualifications of an attributable party before the FCC and seek documents and information "that are neither relevant to the subject matter of the confirmation hearing nor reasonably calculated to lead to the discovery of admissible evidence." We do not agree with the bases for your objection. Section 1129 (a)(11) of the Bankruptcy Code codifies the feasibility requirement for confirmability of a bankruptcy plan. The plan proponent must demonstrate that the plan is workable and can be implemented. A key component of the feasibility of the Plan in this case is the ability to obtain timely approval by the FCC of the applications to transfer control



Richard E. Wiley, Esq.
James R.W. Bayes, Esq.
Eve Klindera Reed, Esq.
January 10, 2011
Page 2

of Tribune and its subsidiaries that result from the reorganization following confirmation. Therefore, factors that would cause substantial delay in the FCC approval process – such as the qualifications of a proposed attributable party to hold FCC licenses or the impact of the media holdings of a party on Tribune's requests for waivers – are directly relevant to whether a particular plan is feasible. The Senior Lenders have acknowledged this by expressing the concern in their Responsive Statement that the Noteholders Plan might complicate Tribune's interactions with the FCC. In addition, the proponents of the Debtors/Committee/Lenders Plan have conceded that information regarding media ownership interests is relevant to the confirmation process by including media ownership certification in the solicitation process.

Your second general objection asserts that Aurelius seeks information that is publicly available or that will be provided in Media Ownership Certifications to be filed by January 16, 2011. We disagree. Although we have not been provided with the form of the Media Ownership Certification, we believe that the form will not request all information that may be relevant to the FCC application process, particularly the waivers that Tribune has requested. In addition, the documents that Aurelius has requested contain information related to the Media Ownership Certification that JPMorgan will presumably provide. Because the Media Ownership Certification will – at the Debtors' request – be submitted in connection with the confirmation process, the facts underlying the certification are relevant.

Your third general objection is that Aurelius's Document Requests seek documents to support arguments regarding compliance with ownership rules that have been effectively waived by Aurelius because the Noteholders Plan incorporates the same procedures to ensure compliance with FCC ownership rules. We disagree with the basis for your objection. The Debtors/Committee/Lenders Plan provides that JPMorgan specifically will have the right to designate an initial director of Reorganized Tribune. The Noteholders Plan does not. The Debtors/Committee/Lenders Plan apparently contemplates that JPMorgan will hold an attributable interest in Reorganized Tribune. The Noteholders Plan does not.

## Objections to Definitions

You object to many of the definitions set forth in our requests as "overbroad, vague, ambiguous and unduly burdensome" and that it is not possible to know all of the persons and entities that Aurelius intends to include (see e.g. paragraphs 2, 3, 4, 5, 6, 7, 8 and 13). In Paragraph 8, you limit the term "JPMorgan" to mean JPMorgan Chase and Co. Based on your definition, to the extent that there are any responsive communications between JPMorgan and its counsel for instance, those documents would not be produced. We cannot agree with such a narrow limitation and would like you to withdraw your objections to the definitions in this regard and confirm that the definitions of entities as defined by Aurelius including officers and directors, employees, board members, and Professionals will be adopted.



Richard E. Wiley, Esq.
James R.W. Bayes, Esq.
Eve Klindera Reed, Esq.
January 10, 2011
Page 3

You object to various definitions on the grounds, among other things, that these definitions are overbroad and vague (*see, e.g.*, paragraphs 3, 7, 9 and 12. Notwithstanding those objections, we would like you to confirm that you will produce Documents and Communications responsive to our requests to the extent they exist.

In paragraphs 4 you object to the definition of "Daily Newspaper" to the extent it is inconsistent with 47 C.F.R. § 73.3555 Note 6 or any other applicable statute, rule, or case law. We believe the definition of Daily Newspaper is consistent with the rule you cite and other applicable statutes, rules and case law and request that you apply these definitions in responding to the requests. Similarly, in Paragraphs 2, 5 and 11, you object to the definitions of "Broadcast Entity", "Debt Instrument" and "Publishing Entity" to the extent they are inconsistent with the Communications Act, FCC rules or other applicable statutes, rules or case law. We believe these definitions are consistent with the Communications Act, FCC rules and other applicable statutes, rules or case law and request that you confirm that you will apply these definitions in responding to the requests.

In Paragraph 12, you object to the definition of "Relationship," on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome, and that the timeframe set forth in the definition is overbroad. We do not understand the basis for your objection. Our definition specified the types of relationships at issue, including professional, personal, and business relationships. With regard to specific document requests we will consider narrowing the scope subject to further internal review by our client and our co-proponents.

**Specific Objections to Aurelius's Second Document Request**

You object to all specific requests on the ground that they constitute an improper attempt to circumvent applicable FCC rules, Communications Act provisions or ongoing FCC proceedings. We disagree with your claim in this regard for the reasons set forth in our responses above to your general objections. More specifically, the requests may lead to the discovery of information that is relevant to the feasibility of the Debtors/Committee/Lenders Plan. Similarly, you object to requests 1 through 5 on the grounds that the requests seek information that is publicly accessible or that can be obtained from the media ownership certification. We disagree with your objection for the reasons set forth above in response to your identical second general objection. In addition, you have refused to produce Documents and Communications responsive to each specific request, on the grounds they are vague, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. As discussed above, these requests are germane to the issues in this case and therefore responsive documents in JPMorgan's possession should be produced.

You object to Requests 2, 4 and 5 on the grounds that the requests call for production of confidential and proprietary information. Because the exchange of confidential documents is



Richard E. Wiley, Esq.
James R.W. Bayes, Esq.
Eve Klindera Reed, Esq.
January 10, 2011
Page 4

protected by the Document Depository Order, we do not understand the basis of this objection. To the extent that JPMorgan possesses non-privileged Documents and Communications responsive to these requests, such Documents and Communications should be produced.

Very truly yours,

Sally A. Buckman

cc:     Benjamin S. Kaminetzky, Esquire
        Elliot Moskowitz, Esq.
        Michael Russano, Esq.

**<u>EXHIBIT E</u>**

Meredith S. Senter, Jr.
Sally A. Buckman
**LERMAN SENTER PLLC**
2000 K Street NW, Suite 600
Washington, DC 20006
Telephone: (202) 429-8970
Facsimile: (202) 293-7783

Counsel for Aurelius Capital Management, LP

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
In re:                                      :    **Chapter 11 Cases**
                                            :
**TRIBUNE COMPANY., et al.,**               :    **Case No. 08-13141 (KJC)**
                                            :
                          Debtors.          :    **(Jointly Administered)**
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSES AND OBJECTIONS TO DEBTORS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO
AURELIUS CAPITAL MANAGEMENT, LP (REQUESTS NO. 38 AND 44)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026 and

7034 of the Federal Rules of Bankruptcy Procedure, Aurelius Capital Management, LP,

("Aurelius") by and through its undersigned attorneys, Lerman Senter PLLC, hereby responds

and objects to Requests No. 38 and 44 in the Debtors' First Request for Production of

Documents to Aurelius Capital Management, LP, dated December 19, 2010[1] (the "Requests" and

each request a "Request") as follows:

---

[1] Aurelius refers the Debtors to the objections and responses to the remaining Requests served under
separate cover by Akin Gump Strauss Hauer & Feld LLP.

12.    Aurelius objects to the Requests to the extent they are not subject to a reasonable time limitation.  Subject to its objections, Aurelius will produce non-privileged, documents responsive to the Requests for the time period December 15, 2009 to December 3, 2010.

13.    Aurelius reserves the right to supplement and amend these General and Specific Objections and Responses.

## RESPONSES AND SPECIFIC OBJECTIONS

Request No. 38:

All documents and communications constituting or relating to any discussion, analysis, assessment or review of the actual or potential effect of the Noteholder Plan on the ability to obtain FCC Approval.

Response to Request No. 38:

Subject to, as limited by and without waiving the General Objections, Aurelius responds that it will produce non-privileged documents in its possession, custody or control responsive to this Request.

Request No. 44:

All documents and communications constituting or relating to any discussion or analysis of the actual or potential effect of the Noteholder Plan on the ability to obtain FCC Approval.

Response to Request No. 44:

Subject to, as limited by and without waiving the General Objections, Aurelius responds that it will produce non-privileged documents in its possession, custody or control responsive to this Request.  Nevertheless, Aurelius notes that Request No. 44 is wholly duplicative of Request No. 38.

**EXHIBIT F**

As of the Effective Date, the Board of Directors of Reorganized Tribune will have between seven and nine members and will include Reorganized Tribune's chief executive officer. Each officer and director will possess the requisite qualifications to hold an attributable interest in a broadcast licensee. In addition, each member of the initial Board will serve for a two-year, non-staggered term and will be subject to re-election based on a shareholder vote pursuant to the terms of Reorganized Tribune's Certificate of Incorporation, its Bylaws, and applicable law.

### C.    Proposed FCC License Assignments

The applicants seek Commission consent to assign each of their broadcast licenses from the current licensee, which is operating as a debtor-in-possession, to the same licensee, as reorganized pursuant to the Chapter 11 process.[8] Attachment A hereto lists the specific assignments requested and the corresponding licenses and/or permits held by each licensee.

## II.    AGREEMENTS FOR THE PROPOSED ASSIGNMENTS

Copies of the Plan of Reorganization and Disclosure Statement are being filed as Attachment H to the Exit Application for WGN Continental Broadcasting Company, licensee of WGN(AM) and WGN-TV, Chicago, Illinois, and are being incorporated herein by reference. The Bankruptcy Court has not yet issued an order confirming the Plan of Reorganization ("Confirmation Order"). Accordingly, the applicants will amend the Exit Applications to include the Confirmation Order once the court issues it. The Table of Contents of the Disclosure Statement identifies the Exhibits submitted to the Bankruptcy Court. Other than the Plan of Reorganization, which is Exhibit A to the Disclosure Statement, the applicants are not submitting the Exhibits to the Disclosure Statement with the Exit Applications. The excluded documents, which will be provided to the Commission upon request, are voluminous, contain information that is not germane to the FCC's consideration of the Exit Applications, and generally are available to the public through the Bankruptcy Court.[9]

## III.    PARTIES TO THE APPLICATION

The capital stock of Reorganized Tribune will be widely held, and a majority of the shares will be held by entities that will own less than 5% of the New Class A Common Stock and thus will fall below the Commission's applicable attribution threshold. As of the filing date of the Exit Applications, it is anticipated that three of Tribune's creditors—JPMorgan Chase Bank, N.A., Angelo, Gordon & Co. L.P., and

[8] *See* Note 2, *supra.*

[9] *See LUJ, Inc. and Long Nine, Inc.*, 17 FCC Rcd 16980 (2002). Epiq Bankruptcy Solutions, LLC offers a list on its website of the publicly available filings in the Tribune bankruptcy docket as a service to the public. The list is available at http://chapter11.epiqsystems.com/tribune (last visited April 15, 2010). The website is not, however, the website of the United States Bankruptcy Court and does not purport to contain the complete, official record of the Bankruptcy Court. All documents filed with the Bankruptcy Court are available for inspection at the office of the Clerk of the Bankruptcy Court during its normal business hours or may be accessed online for a fee via PACER at: http://www.deb.uscourts.gov.

FCC Form 314
August 2010
Page 5

Oaktree Tribune, L.P. — each will own, directly or through affiliates, 5% or more of the New Class A Common Stock and, accordingly, will be deemed to hold attributable interests in Reorganized Tribune. Attachments C, D, and E hereto provide detailed information on the ownership and other media interests of each of these entities.

As noted above, the Plan of Reorganization authorizes Reorganized Tribune to issue both New Class A Common Stock, which will be standard voting common stock, and New Class B Common Stock, which will have limited voting rights designed to correspond to standard investor protections and which, the applicants submit, should be treated as non-cognizable under the Commission's rules.[10] The protections that will be accorded to the holders of the New Class B Common Stock are consistent with those the Commission has found do not rise to the level of attributable influence.[11] Accordingly, for purposes of determining which entities will hold an attributable interest in Reorganized Tribune upon emergence, shares of the New Class B Common Stock are being treated as the functional equivalent of non-voting stock and other economic interests that the Commission has concluded are not cognizable under its rules.

Between the filing date of the Exit Applications and Tribune's emergence from bankruptcy, Tribune anticipates that there may be immaterial changes in the identity of the individuals or entities eligible to acquire New Common Stock (the "Claim Holders")

---

[10] Specifically, the Certificate of Incorporation of Reorganized Tribune will provide that the holders of New Class B Common Stock will be entitled to vote as a separate class on any amendment, repeal, or modification of any provision of the Restated Certificate that adversely affects the rights of the New Class B Common Stock in a manner different from the rights of the New Class A Common Stock. In addition, the holders of New Class B Common Stock will be entitled to vote together with the holders of the New Class A Common Stock on the following non-ordinary course transactions to the extent that these matters are submitted to a vote of the holders of New Class A Common Stock: (i) any authorization of, or increase in the number of authorized shares of, any class of capital stock ranking *pari passu* with or senior to the New Class A Common Stock or New Class B Common Stock as to dividends or liquidation preference, including with respect to an increase in the number of shares of New Class A Common Stock or New Class B Common Stock; (ii) any amendment to the Restated Certificate of Incorporation or the Bylaws of Reorganized Tribune; (iii) any amendment to any stockholders or comparable agreement; (iv) any sale, lease or other disposition of all or substantially all of the assets of Reorganized Tribune through one or more transactions; (v) any recapitalization, reorganization, share exchange, consolidation or merger of Reorganized Tribune or its capital stock; (vi) any issuance or entry into an agreement for the issuance of capital stock (or any options or other securities convertible into capital stock) of Reorganized Tribune, including any stock option or stock incentive plan; (vii) any redemption, purchase or other acquisition by Reorganized Tribune of any of its capital stock (except for purchases from employees upon termination of employment); and (viii) any liquidation, dissolution, distribution of assets or winding-up of Reorganized Tribune. Holders of New Class B Common Stock will not be entitled to vote for members of the Board of Directors of Reorganized Tribune.

[11] *See, e.g., Shareholders of Hispanic Broadcasting Corporation and Univision Communications, Inc.*, 18 FCC Rcd 18834, 18849-18850 (2003) ("[T]he Commission has consistently held that a nonvoting shareholder's approval rights over fundamental corporate matters are permissible investor protections that neither restrict a corporation's discretion or rise to the level of attributable influence."); *Paxson Management Corporation and Lowell W. Paxson*, 22 FCC Rcd 22224, 22231-32 (2007) ("Permitting a certain level of minority investor protection without implicating the multiple ownership rules is generally in the public interest because it encourages investment in broadcast properties, and thus enhances the ability of stations to provide better programming to the public.").

**EXHIBIT G**

FCC Form 314
August 2010
Page 19

### 6.    JPMORGAN CHASE BANK, N.A.

It is anticipated that JPMorgan Chase Bank, N.A. ("JPMB") will hold an attributable interest in Reorganized Tribune upon its emergence from bankruptcy.  JPMB is a wholly owned subsidiary of JPMorgan Chase & Co., a widely-held, publicly traded company ("JPM").[12]  JPM, a financial holding company incorporated under Delaware law, is a leading global financial services firm and is one of the largest banking institutions in the United States, with $2.0 trillion in assets, $165.4 billion in stockholders' equity, and operations in more than 60 countries.  JPM is a leader in investment banking, financial services for consumers and businesses, financial transaction processing, and asset management.  JPMB, a national bank with branches in 23 states in the U.S., is one of JPM's principal bank subsidiaries.  The indirect ownership that JPM is seeking to acquire in Reorganized Tribune represents an extremely small portion of its business activities.

| Name and Address | Citizenship | Positional Interest | Percentage Vote | Percentage of Total Assets (debt plus equity) | Percentage of Equity |
|---|---|---|---|---|---|
| JPMorgan Chase Bank, N.A. | U.S. | N/A | N/A | N/A | N/A |
| JPMorgan Chase & Co. | U.S. | Shareholder | 100% | 100% | 100% |

As noted above, under the Plan of Reorganization, a portion of JPMB's existing debt interest in Tribune will be converted into equity in Reorganized Tribune upon the company's emergence from bankruptcy.  In situations in which JPMB acquires equity in this manner, the equity interest is assigned to JPMB's Special Credits Group ("SCG") and is overseen by a team consisting of a Credit Officer and an Analyst.  Here, the Credit Officer handling the day-to-day management of JPMB's investment in Reorganized Tribune will be Miriam Kulnis, Executive Director, with the assistance of Naomi Hung, Analyst.  Ms. Kulnis and Ms. Hung will periodically review JPMB's holdings in Reorganized Tribune and will make determinations regarding (a) any exercise of JPMB's voting rights and (b) JPMB's acquisition of additional equity or the divestiture of its existing equity in the company.  In some cases, decisions may be reviewed and approved by a Regional Coordinator—here, Alex Khabin, Executive Director, and Goh Siew Tan, Associate.  Certain material decisions regarding JPMB's interest in Reorganized Tribune also may be subject to the final approval of Patrick Daniello, Managing Director.[13]  No further internal reviews or approvals will be needed before action may be taken with respect to JPMB's holding in Reorganized Tribune.

---

[12] *See* Attachment G, Figure 1 for the organizational structure of Reorganized Tribune and for the organization of JPM/JPMB.

[13] Per JPMB's corporate policies, any proposal to acquire or sell interests in Tribune must be screened for regulatory and legal compliance by JPM's Legal, Regulatory, and Compliance Departments; however, the decision to trade on interests in Tribune will ultimately rest with Mr. Daniello.

FCC Form 314
August 2010
Page 20

Because no other officers or directors of JPMB or its corporate parent, JPM, will perform duties or have responsibilities related to JPMB's investment in Reorganized Tribune, it is respectfully submitted that the executive officers and directors of JPM and JPMB should be deemed not to hold attributable interests in Reorganized Tribune. These officers and directors include the following individuals:[14]

| Name | JPM Positional Interest | JPMB Positional Interest |
|---|---|---|
| James Dimon | President, Chief Executive Officer and Chairman | President, Chief Executive Officer, Chairman, and Director |
| Frank J. Bisignano | Chief Administrative Officer | Chief Administrative Officer and Director |
| Steven D. Black | Vice Chairman | Vice Chairman and Director |
| Michael J. Cavanaugh | Chief Financial Officer | Chief Financial Officer and Director |
| Stephen M. Cutler | General Counsel | General Counsel |
| William M. Daley | Head of Corporate Responsibility, Chairman of Midwest Region | Head of Corporate Responsibility, Chairman of Midwest Region |
| John L. Donnelly | Director of Human Resources | Director of Human Resources |
| Ina R. Drew | Chief Investment Officer | Chief Investment Officer |
| Mary Callahan Erdoes | Chief Executive Officer of Asset Management | Chief Executive Officer of Asset Management |
| Samuel Todd Maclin | Chief Executive Officer of Commercial Banking | Chief Executive Officer of Commercial Banking |
| Jay Mandelbaum | Head of Strategy and Business Development | Head of Strategy and Business Development |
| Heidi Miller | Chief Executive Officer of Treasury & Security Services | Chief Executive Officer of Treasury & Security Services |
| Charles W. Scharf | Chief Executive Officer of Retail Financial Services | Chief Executive Officer of Retail Financial Services and Director |
| Gordon A. Smith | Chief Executive Officer of Card Services | Chief Executive Officer of Card Services |
| James E. Staley | Chief Executive Officer of Investment Bank | Chief Executive Officer of Investment Bank and Director |
| Barry L. Zubrow | Chief Risk Officer | Chief Risk Officer |
| Crandall C. Bowles | Director | N/A |
| Stephen B. Burke | Director | N/A |
| David M. Cote | Director | N/A |
| James S. Crown | Director | N/A |
| Ellen V. Futter | Director | N/A |
| William H. Gray, III | Director | N/A |
| Laban P. Jackson, Jr. | Director | N/A |
| David C. Novak | Director | N/A |
| Lee R. Raymond | Director | N/A |
| William C. Weldon | Director | N/A |

The address of JPMB is 111 Polaris Parkway, Columbus, Ohio, 43240. The address of JPM is 270 Park Avenue, New York, NY 10017.

---

[14] Pursuant to Section 73.3555, Note 2(g) of the Commission's Rules, officers and directors of a parent company of a broadcast licensee with an attributable interest in any such subsidiary entity shall be deemed to have a cognizable interest in the subsidiary unless the duties and responsibilities of the officers or directors involved are wholly unrelated to the broadcast licensee and a statement properly documenting this fact is submitted to the Commission.

**<u>EXHIBIT H</u>**







Members
of the Board

Biography

**Stephen B. Burke**

President of
Comcast Cable Communications, Inc.

Director since 2003 of JPMorgan Chase
or a predecessor institution

**Board Committees**
Compensation & Management Development Committee
Corporate Governance & Nominating Committee

Mr. Burke joined Comcast Cable Communications, Inc. (cable television) as President in 1998.
Prior to 1998, he was with The Walt Disney Company from 1986. Mr. Burke is a graduate of
Colgate University and received an MBA from Harvard Business School. He is Chairman of The
Children's Hospital of Philadelphia.

Home | J.P. Morgan | Chase                Terms & conditions | USA PATRIOT Act Certification | USA PATRIOT Act Recertification

© 2009 JPMorgan Chase & Co.

| Email | Voice | TV | My Account |

Español

comcast.com

# Press Releases

## Comcast and GE Name Steve Burke Chief Executive Officer of NBC Universal

PHILADELPHIA, PA and FAIRFIELD, CT  -  September 26, 2010

Comcast (NASDAQ: CMCSA, CMCSK) and General Electric (NYSE: GE) announced today that Stephen B. Burke will become chief executive officer of NBC Universal (NBCU) upon the close of Comcast's acquisition of 51% of NBCU from GE.

Burke, 52, would succeed NBC Universal President and CEO Jeff Zucker, who will continue to serve in his position until the close of the transaction and will work with Mr. Burke to ensure a smooth leadership transition.  Comcast and GE also said that there will be no additional structural or personnel announcements until the deal closing process and timing is certain.

Comcast Chairman and Chief Executive Officer Brian L. Roberts said, "Steve Burke is an experienced, talented and visionary leader with over 25 years in the media and entertainment industry.  Steve is one of the most well-respected executives in the industry, and I am confident that he will lead NBCU forward to a new era of growth."

GE Chairman and Chief Executive Officer Jeff Immelt said, "I have known Steve Burke for many years and greatly respect him. He has deep expertise in this industry and I am very confident that he will be a strong leader for NBC Universal."

### About GE
GE (NYSE: GE) is a diversified infrastructure, finance and media company taking on the world's toughest challenges. From aircraft engines and power generation to financial services, health care solutions and television programming, GE (www.ge.com) operates in more than 100 countries and employs about 300,000 people worldwide.

### About Comcast Corporation
Comcast Corporation (Nasdaq: CMCSA, CMCSK) (www.comcast.com) is one of the nation's leading providers of entertainment, information and communication products and services. With 23.2 million video customers, 16.4 million high-speed Internet customers, and 8.1 million Comcast Digital Voice customers, Comcast is principally involved in the development, management and operation of cable systems and in the delivery of programming content.

Comcast's content networks and investments include E! Entertainment Television, Style Network, Golf Channel, VERSUS, G4,PBS KIDS Sprout, TV One, 11 regional sports networks operated by Comcast Sports Group and Comcast Interactive Media, which develops and operates Comcast's Internet businesses, including Comcast.net (www.comcast.net). Comcast also has a majority ownership in Comcast-Spectacor, which owns two professional sports teams, the Philadelphia 76ers NBA basketball team and the Philadelphia Flyers NHL hockey team, and a large, multipurpose arena in Philadelphia, the Wells Fargo Center, and, through Global Spectrum, manages other facilities for sporting events, concerts and other events.

### About NBC Universal
NBC Universal is one of the world's leading media and entertainment companies in the development, production, and marketing of entertainment, news, and information to a global audience. NBC Universal owns and operates a valuable portfolio of news and entertainment networks, a premier motion picture company, significant television production operations, a leading television stations group, and world-renowned theme parks. NBC Universal is 80% owned by General Electric and 20% owned by Vivendi.

©2011 Comcast | Investor Relations | Press Room | Corporate Blog | Privacy Statement | Visitor Agreement | Comcast.com Feedback | Site Map