## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x
In re:                                           :    Chapter 11
                                                 :
TRIBUNE COMPANY, et al.                          :    Case No. 08-13141 (KJC)
                                                 :    Jointly Administered
                Debtors.                         :
                                                 :    Objection deadline:  January 13, 2011 @ 4:00 pm
------------------------------------------------ x    Hearing date:  January 21, 2011 @ 10:00 am
```

## LAW DEBENTURE TRUST COMPANY OF NEW YORK'S
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY
## THE NON-PROPONENT CREDIT AGREEMENT LENDERS

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture

trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its

debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and

Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096, by

and through its undersigned counsel, hereby respectfully submits this motion (the "Motion"),

pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure and Rule 45 of the Federal

Rules of Civil Procedure, for the entry of an order compelling and directing the Non-Proponent

Credit Agreement Lenders ("NPCALs") to produce documents and communications responsive

to the Subpoenas For Production of Documents served by Law Debenture (the "Subpoenas") in

connection with the Debtors' bankruptcy case (the "Chapter 11 Cases").  In support of this

Motion, Law Debenture respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and

1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and Rule 45

of the Federal Rules of Civil Procedure ("FRCP"), as made applicable to these Chapter 11 Cases

by Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PRELIMINARY STATEMENT

Despite the NPCALs being parties-in-interest in the Chapter 11 Cases, they have

continually resisted to comply with the terms of the Subpoenas. Initially, the NPCALs outright

refused to comply with the Subpoena, claiming discovery was inappropriate given their minimal

involvement in the Chapter 11 Cases and that discovery could be obtained from the plan

proponents rather than the NPCALs. Notwithstanding the Court's remarks at the January 10th

hearing that *Law Debenture is entitled to "test" parties' representations that they have no

responsive documents,* NPCALs has maintained its untenable position. (*See* Hrg. Trans., dated

January 10, 2011, at 30-31, Ex. 1). NPCALs have now resorted to imposing unreasonable

restrictions on the scope and timeframe of the Subpoenas. The NPCALs' refusal to produce

documents for the period prior to April 2010 is a clear attempt to shield from discovery relevant

information they have in their possession. This Court should not allow the NPCALs to impose

arbitrary restrictions on discovery and compel their compliance with the Subpoenas.

## BACKGROUND

### A.    The Bankruptcy Background

2.    On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates filed

voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code").

3.    The Debtors have remained in possession of their respective properties and have

continued to operate and maintain their businesses as debtors-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On December 9, 2010, the Court entered an *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief* (the "Solicitation Order"). The Solicitation Order was modified on December 16, 2010 [Docket No. 7215].

6.      Following the entry of the Solicitation Order (as amended), solicitation commenced with respect to the three competing plans (collectively the "Plans") being considered as follows:

- Joint Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Noteholder Plan"), dated December 9, 2010;

- Joint Plan of Reorganization proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A (the "Debtors/Committee/Lender Plan"), dated December 8, 2010; and

- Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. (the "<u>Bridge Lender Plan</u>"), dated December 7, 2010.

7.     On December 20, 2010, the Court entered a Discovery and Scheduling Order for Plan Confirmation, scheduling the confirmation hearing to begin on March 7, 2011 [Docket No. 7239] (the "<u>CMO</u>").

8.     Paragraph 14 of the CMO provides, in pertinent part, that "[w]ith respect to any discovery dispute that may arise, the Parties to the dispute(s) shall meet and confer within (3) business days of any Party's request for such a meet and confer conference."

9.     While the remainder of paragraph 14 provided for a mechanism to bring unresolved disputes to the Court's attention, during a telephonic hearing on January 10, 2011, the Court instructed that in light of the limited time available prior to the commencement of the confirmation hearing, the parties should initiate motion practice to resolve any remaining discovery disputes. (*See* Ex. 1 at 6:13-16, Hrg. Trans.)

## B.     Law Debenture's Efforts to Meet and Confer with the NPCALs

10.     On December 22, 2010, pursuant to Rule 45 of the Federal rules of Civil Procedure, Law Debenture served Subpoenas on the twelve NPCALs. (*See* Chart of NPCALs attached to Letter dated January 9, 2011, Ex. 2 at ex. D; *see* Subpoena dated December 22, 2010, attached to Letter dated January 7, 2011, Ex. 4 at ex. B). The Subpoenas seek documents and communications concerning, *inter alia*, (i) the relationships between and among certain individuals or entities that are key players in the Plans and the Chapter 11 Cases; (ii) negotiations concerning the Plans and settlements incorporated therein, as well as other proposed plans that have been filed or that parties have contemplated filing during the pendency of the Chapter 11 Cases; (iii) any claims arising out of the LBO (the "<u>LBO-Related Causes of Action</u>"), including

the merits of such claims; (iv) the Court-appointed examiner (the "Examiner"), including the

report produced by the examiner (the "Examiner Report"); (v) potential conflicts of interest; and

(vi) the Court-appointed mediator, the mediation and any discussions arising out of or in

connection with such mediation.  (*See* Ex. 3).

11.    On December 27, 2010, Hennigan, Bennett & Dorman, LLP ("HBD"), counsel

for the NPCALs, replied by letter (the "December 27th Letter"), flatly refusing to respond to any

of the Subpoenas' Requests Nos. 1 through 22 (concerning relationships between parties

involved in the Chapter 11 cases and settlement process) because any responsive material in

possession of the NPCALs would be irrelevant to plan confirmation.  (*See* Letter dated

December 27, 2010, attached to Letter dated January 9, 2011, Ex. 2 at ex. C).  The December

27th letter dismissed the remaining requests as related to "analyses and negotiation of

settlements, resolution of 'LBO-Related Causes of Action,' preparation of plans of

reorganization, analyses of Examiner's Report and communications regarding the mediation,"

activities in which HBD claimed NPCALs played no role in those activities (Ex. 2 at ex. C, Dec.

27, 2010 Letter).

12.    On December 31, 2010, Law Debenture responded by letter informing the

NPCALs that they were obligated to respond to the Subpoenas, on the grounds that the NPCALs

had been and continued to be actively involved in the bankruptcy case.  (*See* Letter dated

December 31, 2010, Ex. 3).

13.    On January 4, 2011, the parties held a meet and confer, which lasted all of ten

minutes given HBD's unwillingness to engage in any meaningful dialogue.  (*See* Declaration of

Matthew Stein ("Stein Decl."), ¶ 6).  During the call, Law Debenture indicated that it was willing

to negotiate the scope of the Subpoenas. (Stein Decl., ¶ 6).  HBD, however, maintained that the

NPCALs should be exempt from *any* discovery because they "are not sources of relevant information for the March 7, 2011 confirmation hearing as they are not proponents of a plan and have not directly participated in this case," as it stated in its January 5, 2011 letter to Law Debenture (the "January 5th Letter"). (*See* Letter dated January 5, 2011, attached to Letter dated January 9, 2011, Ex. 2 at ex. A). HBD offered no suggestions on how to reasonably limit the Subpoenas, claiming they were entirely inappropriate. HBD reiterated its position in a January 7, 2011 letter to the Court (the "January 7th Letter"). (*See* Letter dated January 7, 2011, Ex. 4).

14.     On January 7, 2011, immediately following this Court's *order* [Docket No. 7412], which, *inter alia*, directed the parties to meet and confer, the parties held a meet and confer during which Law Debenture agreed to limit the scope of the Subpoenas substantially. (Stein Decl., ¶ 10-11). First, Law Debenture agreed to eliminate Request Nos. 1 through 19 and 22, which constituted all but two of the "relationship" requests ("Relationship Requests"). (Stein Decl., ¶ 11). Second, Law Debenture agreed to reduce the time period covered in the definition of "Relationship" from ten years to three years. (Stein Decl., ¶ 11). Finally, Law Debenture proposed that the NPCALs perform electronic searches based upon limited search terms to minimize the burden of production. (Stein Decl., ¶ 11).

15.     On January 8th, 2011, Law Debenture sent HBD an email, proposing NPCALs use approximately thirty search terms to capture the most relevant documents (the "Proposed Search Terms"). (*See* Email dated January 8, 2011, attached to Letter dated January 9, 2011, Ex. 2 at ex. B). HBD made absolutely no counter-proposal and stood by its position that no discovery should be sought from the NPCALs. Law Debenture's Proposed Search Terms are narrowly tailored to obtain evidence specifically relating to the NPCALs' involvement in the Chapter 11 Cases. The Proposed Search Terms encompass unique terms meant to capture the most relevant

documents with minimal burden. For instance, Law Debenture has suggested the following

terms be used for the NPCALs' search for documents: "LBO-related causes of action,"

fraudulent w/1 conveyance, release*, Oaktree, EGI, Zell, and Bigelow. To further ease the

burden on the NPCALs, Law Debenture has segmented its post-LBO search terms into two

periods, from December 8, 2008 to September 1, 2009, and from September 1, 2009 to

December 3, 2010. (*See* Ex. 2 at ex. B, Email containing Proposed Search Terms,).

16.     The Proposed Search Terms are intended to seek evidence concerning NPCALs

communications and negotiations with plan proponents and evidence of pressure being placed on

the NPCALs in connection with the Debtors/Committee/Lender Plan. NPCALs claim that this

evidence is accessible through discovery of the plan proponents. That is simply not true. HBD

and Oaktree has represented that it intends to run searches only for the domain name addresses

they have identified, which does not include the domain names of any of the NPCALs. Thus, the

search protocol HBD and Oaktree intend to implement to collect documents will intentionally

exclude any communications between the plan proponents and the NPCALs. Consequently, Law

Debenture could not obtain communications between NPCALs and the plan proponents based on

Oaktree's and HBD's search protocols. Moreover, there may be internal notes and documents

reflecting communications between the parties that are not in the possession of HBD or Oaktree.

17.     On January 9, 2011, Law Debenture responded to both the January 5th Letter and

the January 7th Letter in a January 9, 2011 letter (the "January 9th Letter"), which, among other

things, detailed NPCALs' role in the Chapter 11 Cases, disputed HBD's contention that the

NPCALs were not sources of relevant information. (See Letter dated January 9, 2011, Ex. 2).

On January 10, 2011, a hearing was held at which Judge Carey indicated that the parties should

be able to test the veracity of NPCALs' contention that the responsive document they possess are

in the public domain and/or are otherwise available from other parties. (Ex. 1, at 30:6-31:18, Hrg. Trans.).

18.     Following the Court hearing, on Tuesday, January 11, 2011, the parties engaged in a meet and confer. (Stein Decl., ¶ 15). Law Debenture reiterated its proposal to limit its requests, offered to further limit the date range from December 8, 2008 to December 22, 2010, and negotiate the list of proposed search terms. (Stein Decl., ¶ 16). NPCALs indicated they would provide Law Debenture with their own proposed search terms later that day. (Stein Decl., ¶ 16). NPCALs further refused to produce pre-April 2010 documents, documents relating to their economic interest and documents relating to the retention of professionals and consultants. (Stein Decl., ¶ 16).

19.     On January 12, 2011 another meet and confer was held during which Law Debenture agreed to withdraw the requests regarding the retention of professionals and consultants and to accept a list of NPCALs' current holdings in lieu of NPCALs producing documents relating to their economic interest in Tribune. (Stein Decl., ¶ 17-18). NPCALs, however, remained steadfast on refusing to produce documents prior to April 2010, claiming those documents were irrelevant without any substantive explanation as to how they were irrelevant. (Stein Decl., ¶ 18).

20.     In the spirit of cooperation, Law Debenture reiterated its offer to limit the date range of the Subpoenas from the petition date of December 8, 2008 to December 22, 2010. (Stein Decl., ¶ 19). HBD rejected this concession. (Stein Decl., ¶ 19). Additionally, HBD continued to reject Law Debenture's Proposed Search Method to collect responsive documents, and, despite its January 11th promise to do so, provided no counter-proposal regarding an alternative search method. (Stein Decl., ¶ 19). HBD also did not indicate that it would be

searching for any additional terms. (Stein Decl., ¶ 19). To minimize the burden placed on NPCALs, Law Debenture restricted its Proposed Search Method to the most basic search terms that would still be effective at capturing relevant documents. In response, HBD claimed it would consider using only "TRB" and "Trib*," as search terms, depending upon the outcome of its test searches, but refused to commit to even those wholly inadequate terms. (Stein Decl., ¶ 19). The NPCALs' recalcitrance towards using even the most basic of search terms, let alone the Proposed Search Method (which is both reasonable and already restricted), suggest that the NPCALs are attempting to hide relevant information from discovery. This case has focused, among other things, on the cover-up of claims associated with the LBO later exposed by the Examiner. The Court should not permit the NPCALs to perpetuate a similar, if not related cover-up.

## RELIEF REQUESTED

21.    Law Debenture requests that the NPCALs be compelled to produce all relevant, non-privileged documents responsive to Subpoena Request Nos. 20 through 21 and 23 through 89 for the time period of December 8, 2008 to December 22, 2010.

## ARGUMENT

### I.    LEGAL STANDARDS

22.    Law Debenture may seek discovery from the NPCALs through Subpoenas issued pursuant to Rule 45, which is applicable to bankruptcy matters pursuant to Rule 9016 of the Federal Rule of Bankruptcy. Fed. R. Civ. P. 45; Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection"). The scope of discovery permitted under Rule 45 Subpoena is "subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Cash Today of Tex. v. Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *4 (D. Del. Oct. 23, 2002) (Denying a

motion to quash because the discovery sought was relevant, subject to a protective order to the

extent it was confidential or proprietary, and would not create an undue burden for the movant)

(internal citations omitted).

23.     Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense," and that "[r]elevant

information need not be admissible at the trial if the discovery appears reasonably calculated to

lead to the discovery of admissible evidence."  In the Third Circuit, "it is well recognized that the

federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir.

1999) (holding that it was an abuse of discretion to deny plaintiff's relevant discovery requests);

*Cash Today*, 2002 U.S. Dist. LEXIS 20694, at *4 (D. Del. Oct. 23, 2002) (Stating that

"[r]elevance for discovery purposes is given very broad meaning"); *see also Falkenberg Capital

Corp. v. Dakota Cellular*, 1998 U.S. Dist. LEXIS 13456 (D. Del. Aug. 4, 1998) (finding it

"axiomatic that the discovery rules are to be construed liberally in favor of the party seeking

discovery") (internal citations omitted); *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D. 287,

295 (D. Del 1975) (holding that "delineating the boundaries of appropriate discovery can be

challenging and difficult, yet discovery will be permitted 'unless it is clear that the information

sought can have no possible bearing upon the subject matter of the action.") (internal citations

omitted).

24.     Where a party moves to compel discovery of non-privileged, relevant information

pursuant to Rule 45 subpoena, and the production does not create an undue burden or expense

for the subpoenaed party, courts in the Third Circuit generally grant the motion. *See, e.g.,*

*Software Rights Archive, LLC v. Google, Inc.*, 2009 U.S. Dist. LEXIS 43835 (D. Del. May 21,

2009) (granting a motion to compel seeking enforcement of a Rule 45 subpoena where the

discovery sought was relevant and would not create an undue burden); *Clarke v. Marriott Int'l, Inc.*, 2010 U.S. Dist. LEXIS 11146 (D.V.I. Feb. 10, 2010) (same); *Miller v. Allstate Fire & Casualty. Insurance Co.*, 2009 U.S. Dist. LEXIS 21225 (W.D. Pa. Mar. 17, 2009) (same).

## II.    THE DISCOVERY SOUGHT BY THE SUBPOENAS IS RELEVANT AND MATERIAL TO THIS CASE

### A.    NPCALs Possess Relevant Documents

25.    The NPCALs are not mere "non-parties," as HBD would have this Court believe, and their close connection to the parties and issues involved in the case underscore the high likelihood that they are in possession of relevant documents.  Throughout the Chapter 11 Cases, HBD has continually represented as a single entity a large group of creditors known as the Credit Agreement Lenders, which currently encompass the NPCALs, Oaktree and Angelo Gordon.  As early as November 20, 2009, HBD filed a Joint Statement of Representation of More Than One Creditor indicating that seven of the twelve NPCALs were a part of the larger group of creditors acting in concert as the Credit Agreement Lenders [Docket No. 2600]. While the constituency of the Credit Agreement Lenders has evolved throughout the Chapter 11 Cases, a core group has remained intact.[1]  Moreover, most of the NPCAL have been parties-in-interest for over a year. [Docket No. 2600]  Indeed, under the CMO—which was negotiated in part by HBD as counsel for the NPCALs, and which the NPCALs concede in their December 27, 2010 letter applies to them (*see* Ex. 2 at Ex. C) – discovery can be obtained from the NPCALs as parties-in-interest.

26.    Additionally, it is undisputable that the NPCALs, as Credit Agreement Lenders members, have been actively involved in the Chapter 11 Cases, including those issues that relate to the documents and communications requested in the Subpoenas.  Some examples of this activity are described below:

---

[1] Based upon the ten separate statements filed by HBD in compliance with Bankruptcy Rule 2019, the involvement of each of the NPCALs as members of the Credit Agreement Lenders is set forth in a chart. (*See* Ex. 2 at Ex. D).

- On November 24, 2009, the Credit Agreement Lenders' Status Conference Statement Regarding Leveraged ESOP Transaction (the "Transactions") and Outstanding Discovery Requests Thereto was filed, disclosing that the Credit Agreement Lenders held approximately $4.4 billion in debt and that "as holders of more than half of the Credit Agreement indebtedness, the Credit Agreement Lenders likely will be involved . . . in any litigation commenced with respect to the Transactions." [Docket No. 2618]

- On February 11, 2010, the Credit Agreement Lenders objected to the motion by the Official Committee of Unsecured Creditors (the "Committee) seeking standing to prosecute claims arising out of the Transactions. [Docket No. 3374]  On the same date, the Credit Agreement Lenders objected to a motion seeking the appointment of an examiner to investigate the Transactions. [Docket No. 3373]

- On May 24 and June 7, 2010, the Credit Agreement Lenders submitted two formal briefs to the Examiner that were considered as part of the investigation.

- The Credit Agreement Lenders also took an active role with respect to the April Plan and the negotiations that led to such plan, including filing a motion pursuant to Bankruptcy Rule 2004 seeking discovery from Centerbridge on April 2, 2010 [Docket No. 3928], submitting a response to the filing of the April Plan on April 12, 2010 [Docket No. 3999], objecting to the disclosure statement in support of the April Plan on May 13, 2010 [Docket No. 4376], and objecting to a preliminary pre-trial scheduling order in connection with the April Plan on July 12, 2010. [Docket No. 4992]

- The Credit Agreement Lenders also repeatedly attempted to prevent the Debtors from extending their exclusive right to file a plan of reorganization, objecting to such extensions on November 24, 2009 [Docket No. 2617] and February 15, 2010 [Docket No. 3409], and informing the Court on multiple occasions that they wanted to file their own plan – at one point even specifically raising the concept of a "subsidiary only" plan.

27.    The NPCALs even participated in the mediation, contrary to their assertion in the

January 7th Letter.  The Court in paragraph 2 of the Order Appointing Mediator, dated

September 1, 2010 ("Mediation Order"), specifically provided that the Credit Agreement

Lenders are a "Mediation Party." [Docket No. 5591] Less than a week before mediation commenced, HBD filed a Rule 2019 statement, which indicated to the Court that notwithstanding its filing of the Oaktree/Angelo Gordon Plan on September 17, 2010, it still represented the Credit Agreement Lenders. [Docket No. 5591] Thus, at the time HBD attended the mediation, it was acting as counsel for not just Oaktree and Angelo Gordon but for the NPCALs as well. At no time during the mediation did HBD assert it was only acting on behalf of Oaktree and Angelo Gordon.

28.     The Subpoenas are directly relevant to the issues in the Chapter 11 Cases, and are directed at parties whom are believed to have responsive documents in their possession given their role in the Chapter 11 Cases. For instance, as discussed above, the Credit Agreement Lenders proclaimed in their court filings on November 24, 2009 that they would likely be involved in litigating the claims arising from the LBO. [Docket No. 2618] The treatment of the litigation concerning the LBO is a core issue in the Plans and, to the extent the NPCALs have documents relating to those issues, they are relevant and should be produced.

## III.   NPCALS HAVE AN OBLIGATION TO COMPLY WITH THE SUBPOENAS, ESPECIALLY AS PARTIES-IN-INTEREST

### A.     The Subpoenas Are Proper

29.     Courts, in assessing whether a subpoena is proper, weigh the following factors: 1) the extent to which the information sought is relevant; 2) the requesting party's need for the information sought; 3) the breadth of the request; 4) the applicable time frame covered by the request; 5) the particularity of the request; and 6) the burden imposed. *Miller v. Allstate Fire & Casualty. Insurance Co.*, 2009 U.S. Dist. LEXIS 21225, at *5 (W.D. Pa. Mar. 17, 2009); *Cash Today of Tex. v. Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *13 (D. Del. Oct. 23, 2002); *Clarke v. Marriott Int'l, Inc.*, 2010 U.S. Dist. LEXIS 11646 (D.V.I. Feb. 10, 2010); *see also*

*Thayer v. Chiczewski,* 257 F.R.D. 466, 469 (N.D. Ill. 2009) ("Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed") (internal quotations omitted). As further discussed below, the Subpoenas are proper because they seek relevant and necessary information for the Confirmation Hearing for a limited period of time from a party-in-interest.

30.    The information sought in the Subpoenas is directly relevant to the confirmation hearing and necessary to this Court's determination of whether the Debtors/Committee/Lender Plan is confirmable. As discussed above, the Subpoenas seek information relating to, among other things: (i) the viability of the claims arising from LBO; (ii) the settlement of such claims; (iii) the circumstances surrounding the negotiations of the Plans and settlements proposed and reached (or abandoned, as the case may be); (iv) communications between and among the NPCALs and (v) any evidence that pressure was applied between the parties to gain their assent and acquiescence, which could support a motion for a designation of votes. Simply because the NPCALs are not plan proponents does not mean that they were not involved in key aspects of the negotiation and formulation of the Debtor/Committee/Lender Plan, including the proposed settlement of the LBO-Related Causes of Action. *The NPCALs even recognize this fact – claiming they did not participate in "pertinent settlement negations," as opposed to stating they were not involved in "any settlement negotiations."* (Ex. 4, Jan. 7 Letter).

31.    The information sought will assist the Court in evaluating whether NPCALs acted in good faith with respect to the plan, if prior relationships biased their decision-making, or if their relationships or others' relationship influenced parties' support of the plan or the terms of

the plan. *See In re Exide Techs.*, 303 B.R. 48, 67-68, 71 (Bankr. D. Del. 2003) (criteria for

approving settlement in the context of a proposed plan includes "the extent to which [it] is truly

the product of 'arms-length' bargaining, and not of fraud or collusion"); *In re Adelphia*

*Commc'ns*, 327 B.R. 143, 165 (Bankr. S.D.N.Y. 2005) (in analyzing proposed settlement under

Rule 9019, arms-length bargaining is a relevant consideration — one which the court would give

great weight to "if [it] ever thought it had not been satisfied"); *Sound Radio, Inc. v. WNJR Radio*

*1430*, 93 B.R. 849, 853 (Bankr. D. N.J. 1988) (affirming that the good faith of the plan

proponents is part of a bankruptcy court's inquiry when evaluating competing plans); *In re*

*Lyondell Chem. Co.*, Case No. 09-10023 (Gerber, J.), January 7, 2010 Tr. at 14-15 (directing

discovery of settlement communications between debtors and senior lenders, even after the date

a settlement in principal was reached, because "I need to have total comfort that the settlement

[of fraudulent transfer claims] was at arms' length and wasn't collusive. And communications

between the debtors and [senior lenders] at any time . . . are at least potentially relevant" in 9019

proceeding).

32.     Under Section 1129(a)(3) of the bankruptcy code, courts can only confirm plans

proposed in good faith. *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)

("Section 1129(a)(3) provides that the court shall confirm a plan only if "'the plan has been

proposed in good faith and not by any means forbidden by law'"); *In re ACandS, Inc.*, 311 B.R.

36, 42-43 (Bankr. D. Del. 2004) (evaluating the totality of the circumstances surrounding the

plan, the bankruptcy court denied confirmation of debtor's plan of reorganization finding that

"the plan was largely drafted by and for the benefit of the prepetition committee"). Further,

where parties have engaged in bad faith conduct, courts have designated votes and refused to

confirm plans otherwise approved by creditors. *See, e.g., In re Allegheny Int'l, Inc.*, 118 B.R.

282 (Bankr. W.D. Pa. 1990) (granting motion to designate and finding bad faith where a party's motives were unrelated to its interest as a creditor); *see generally In re Gulph Woods Corp.*, 83 B.R. 339 (Bankr. E.D. Pa. 1988) (enjoining Debtor from communicating with creditors where voter manipulation was feared).

33.      In assessing bad faith, courts undertake a fact-intensive inquiry looking at a totality of the circumstances. *See In re Combustion Eng'g Inc.*, 391 F.3d 190, 242, n55 (3d Cir. 2004). Here, the Subpoenas are designed specifically to uncover documents relevant to the Court's fact-intensive inquiry, and to determine whether the NPCALs possess information of plan proponents engaging in bad faith conduct to warrant vote designation or other relief.

34.      Further the Subpoenas seek information as to whether settlement reached among the parties, which is encompassed within the Debtors/Committee/Lender Plan, was fair and equitable. *See Exide*, 303 B.R. at 71 (citing absence of arms-length bargaining as a reason to reject the proposed settlement); *In re Spansion, Inc.*, 2009 Bankr. LEXIS 128, at *13-14 (Bankr. D. Del. June 2, 2009) (rejecting settlement where, inter alia, the person negotiating for the debtor failed to obtain legal advice regarding the strength of the subject claims before agreeing to a settlement); *Gillman v. Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (holding that non-debtor releases must exhibit "the hallmarks of permissible non-consensual releases -- fairness, necessity to the reorganization, and specific factual findings to support these conclusions."); *see also In re Saxby's Coffee Worldwide, LLC*, 436 B.R. 331, 336 (Bankr. E.D. Pa. 2010) (rejecting a plan that included a release which did not receive the support of the majority of creditors who voted and did not provide for payment of substantially all of the claims affected by the release). NPCALs should be compelled to comply with the Subpoenas and produce information necessary

for this Court to determine whether the Debtors/Committee/Lender Plan complies with Section 1129(a)(3)'s good faith test.

35.    Moreover, the Subpoenas are reasonable both in scope and timeframe.  As discussed above, the Subpoenas are directed at parties whom are believed to have relevant information based on, among other things, their involvement in the Chapter 11 Cases and relationship to the parties in the case.  Law Debenture has agreed to reduce the time period of the Subpoenas to approximately a two year period of December 8, 2008 to December 22, 2010.

36.    Nevertheless, the NPCALs have unilaterally decided to only produce documents from April 2010 to the present without providing a rationale explanation for that arbitrary cut-off.  Law Debenture has a firm basis to seek pre-April 2010 discovery.  For instance, the discovery in the pre-April 2010 period may shed light on whether the lenders had knowledge about the insolvency of Tribune, whether the plan proponents engaged in collusive behavior, whether the NPCALs had relevant communications among them and whether certain parties were improperly influenced.  Because the Subpoenas seek discovery over the precise period during which activity related to such claims may have occurred, the time period is fully justifiable.  *See Hall v. Life Insurance Co. of North America*, 265 F.R.D. 356 (N.D. Ind. 2010) (holding that a subpoena's five year time frame was reasonably limited because the period would be sufficient to discover trends that would tend to support an alleged claim of bias).

37.    The NPCALs' insistence that they will not produce documents from December 8, 2008 to December 14, 2009 is wholly unjustified, and suggests that the NPCALs are purposefully shielding relevant documents from discovery.  For instance, when asked during the January 12, 2011 meet and confer session why the documents could not be produced in the earlier period, HBD explained that information prior to when the Document Depository Order

was instituted is irrelevant. (Stein Decl., ¶ 17-18). HBD further claimed that searching the pre-December 2009 time period for documents concerning causes of action arising out of the LBO ("LBO Causes of Action") would be irrelevant since documents were not made available to the parties pursuant to the Depository Order date. (Stein Decl., ¶ 17-18). The NPCALs' explanation for withholding documents prior to April 2010 is illogical and ignores the litany of other potential documents, as identified above, they have in their possession – which has absolutely nothing to do with their views of the claims.

38.     The burden associated with responding to requests for a two-year period is minimal, especially given the potentially relevant information NPCALs may possess.

**B.      NPCALs Are Not Shielded From Discovery By Virtue Of Their Status As Non-Plan Proponents**

39.     The NPCALs' reliance on *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) to support their claim that the Subpoenas are unduly burdensome is wholly misplaced. In *Cusumano*, the subpoenaed party was an academic whose sole connection to the dispute was that he had been researching petitioner's management styles in connection with a book. *Id.* at 711. The District Court denied petitioner's motion to compel, and the First Circuit affirmed, noting specifically that compliance with the subpoena would impose too great a burden on a non-party such as the respondent, who was totally unrelated to petitioner's anti-trust litigation. *Id.* at 717. HBD cites the *Cusumano* court's observation that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" (*Id.*) as dispositive grounds on which to establish that Law Debenture's subpoena's are unduly burdensome.

40.     The facts in *Cusumano*, however, are easily distinguishable from those at play in this discovery dispute. In *Cusumano*, the court states that "respondents are strangers to the

antitrust litigation; insofar as the record reflects, they have *no dog in that fight*." *Id.* (emphasis added)  Despite their HBD's protestations to the contrary, the NPCALs are in no way strangers to the instant matter because, as discussed above, they have a clearly demonstrable economic interest in the outcome of this litigation.  Moreover, multiple courts in the Third Circuit— including even one relied upon by the NPCALs—have recognized that "although it is appropriate to consider Respondents' status as non-parties…this consideration [does not] rigidly tilts in favor of shielding them from discovery." *Software Rights Archive, LLC v. Google, Inc.*, 2009 U.S. Dist. LEXIS 43835, at *6 (D. Del. May 21, 2009) (Court granted motion to compel respond to subpoena); *Miller*, 2009 U.S. Dist. LEXIS 21225, at *5 (The court acknowledged the subpoenaed non-party's status, but granted the motion to compel provided cost sharing was undertaken); *Cash Today of Tex. v. Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *4 (D. Del. Oct. 23, 2002) (The court denied a motion to quash, despite acknowledging that the subpoena target was a non party and thus was entitled to special protection); *see also Peskoff v. Faber*, 2006 U.S. Dist. LEXIS 46372, at *9 (D.D.C. July 11, 2006) (Court granted a motion to compel compliance with a subpoena, in part, because case did not present a situation where a non-party was "burdened by a subpoena relating to litigation to which it [had] no or only a peripheral interest").

### C.    Law Debenture Has Consistently Cooperated And Taken Concrete Steps To Reduce The Burden Of Production On The NPCALs

41.    Throughout this discovery dispute, Law Debenture has adopted a proactively cooperative posture, and has taken extensive steps to reduce the scope of the Subpoenas by, among other things:  (i) withdrawing twenty Relationship Requests; (ii) narrowing the time period from 10 years to approximately 2 years and (iii) suggesting the Proposed Search Method to efficiently capture relevant documents with minimal burden.

42.     Despite Law Debenture's willingness to engage in further negotiations to ease the burden of searching for responsive documents, the NPCALs persist in shielding relevant evidence from discovery with no plausible explanation. *See Capitol Records, Inc, v. MP3tunes, LLC*, 261 F.R.D. 44, 47 (S.D.N.Y. 2009) (holding that the defendant's unilateral decision to select search terms failed to satisfy its discovery obligations); *see also Bell v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 62971, at *25 (D.N.J. June 23, 2010) (finding that the defendant's expense incurred in complying with discovery did not excuse it from producing further discovery where the defendant had not complied with the full subject matter or temporal scope of the discovery requests). Courts expect cooperation between the parties in coming to an agreement over discovery issues. *See Romero v. Allstate Ins. Co*, 2010 U.S. Dist. LEXIS 111985, at *39 (E.D. Pa. Oct. 21, 2010); *DeGeer v. Gillis*, 2010 U.S. Dist. LEXIS 129745, at *55 (N.D. Ill. Dec. 8, 2010) ("The proper and most efficient course of action would have been agreement by [non-party] Huron and Defendants as to search terms and data custodians prior to Huron's electronic document retrieval. Selecting search terms and data custodians should be a matter of cooperation and transparency among parties and non-parties."). When one party refuses to cooperate, a court may "compel the parties to confer and come to some agreement" on basic discovery issues including search terms, custodians to be searched, the date ranges for the searches, and "any other essential details about the search methodology." *Id.* at *41-42. As the NPCALs have refused to engage in good faith meet and confer sessions since the outset, this Court should order the NPCALs to comply with the Subpoenas and perform its searches in accordance with the Proposed Search Method.

## NOTICE

43.     Notice of this Motion has been given to (i) all counsel listed in paragraph 35 of the CMO, including counsel to the Debtors, the Committee, and NPCALs, and (ii) the United States Trustee.

2188623v7

## CONCLUSION

44.     For the reasons set forth above, Law Debenture respectfully requests that the

Court order NPCALs to comply with the Subpoenas and perform their searches in accordance

with the Proposed Search Method and grant the relief requested.

Dated:   January 14, 2011
         Wilmington, Delaware

                                        **BIFFERATO GENTILOTTI LLC**


                                        */s/ Garvan F. McDaniel*
                                        Garvan F. McDaniel (DE No. 4167)
                                        800 N. King St., Plaza Level
                                        Wilmington, DE 19801
                                        (302) 429-1900

                                        - and -

                                        David S. Rosner
                                        Andrew K. Glenn
                                        Sheron Korpus
                                        Christine A. Montenegro
                                        Kasowitz, Benson, Torres & Friedman LLP
                                        1633 Broadway
                                        New York, New York 10019
                                        (212) 506-1700

                                        *Co-Counsel for Law Debenture Trust*
                                        *Company of New York*