IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| ---X | | |
|---|---|---|
| **In re:** | : | **Chapter 11 Cases** |
| | : | **Case No. 08-13141 (KJC)** |
| | : | **(Jointly Administered)** |
| **TRIBUNE COMPANY, et al.,** | : | |
| | : | **Objection Deadline: January 19, 2010 at 4:00 p.m. (ET)** |
| **Debtors.** | : | **Hearing Date: January 21, 2010 at 10:00 a.m. (ET)** |
| ---X | | |

**MOTION OF THE NOTEHOLDER PLAN PROPONENTS TO COMPEL JPMORGAN TO SEARCH FOR, REVIEW AND PRODUCE DOCUMENTS RESPONSIVE TO AURELIUS'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

The proponents of the Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, LP, On Behalf Of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes, Law Debenture Trust Company Of New York, In Its Capacity As Successor Indenture Trustee For Certain Series of Senior Notes And Wilmington Trust Company, In Its Capacity As Successor Indenture Trustee For The PHONES Notes [Docket No. 7127] (the "Notheolder Plan Proponents"),[1] by and through their undersigned counsel, hereby submit this motion (the "Motion"), pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7026, 7034 and 7037 of the Federal Rules of Bankruptcy Procedure, and the Case Management Order entered in this case (the "CMO"), for entry of an order compelling JPMorgan Chase Bank, N.A. ("JPMorgan") to (i) employ the

[1] The Noteholder Plan Proponents are Aurelius Capital Management, LP, on behalf of its managed entities (collectively, "Aurelius"), Law Debenture Trust Company of New York, as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (successor to The Times Mirror Company) and Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096 ("Law Debenture"), Wilmington Trust Company, in its capacity as Successor Indenture Trustee for the PHONES Notes ("Wilmington Trust"), and Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee under certain indentures by and between Tribune ("DBTCA").

reasonable methodology proposed by the Noteholder Plan Proponents to locate and produce documents responsive to Aurelius's First Request For Production Of Documents To JPMorgan (the "JPMorgan Requests"), and (ii) review the information maintained by individuals who negotiated the First Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By The Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., And JPMorgan Chase Bank, N.A. [Docket No. 7136] (the "Debtor/Committee/Lender Plan") on JPMorgan's behalf, for the purpose of producing non-privileged communications regarding such negotiations.[2] In support of the Motion, the Noteholder Plan Proponents respectfully state as follows:

## PRELIMINARY STATEMENT

This Motion addresses five disputes: (i) JPMorgan's refusal to conduct any searches or produce any documents created in 2007 in advance of the leveraged buy-out transaction (the "LBO") that unquestionably led to the Debtors' demise, other than those previously produced to the document depository established in these cases (the "Document Depository"); (ii) JPMorgan's refusal to produce any documents after the LBO closed through December 2008 — a time period for which JPMorgan has *never* produced information; (iii) JPMorgan's refusal to conduct any searches or produce any documents for the period September 1, 2009 through April 12, 2010, other than those previously produced to the Document Depository;[3] (iv) JPMorgan's

[2] A copy of the search methodology proposed by the Noteholder Plan Proponents to JPMorgan is attached as Exhibit A.

[3] Indeed, JPMorgan refuses to produce any responsive documents for the first year of the petition period in 2009 (before December 15), another time period for which it has never previously searched for or produced documents. This objection was made not only by JPMorgan but each of its co-plan proponents including the Debtors. Accordingly, the Noteholder Plan Proponents seek to compel production of responsive documents from 2009 and address those arguments separately in the Memorandum Of Law In Support Of Noteholder Plan Proponents' Motion To Compel Production Of Documents and Information From the Debtor/Committee/Lender Plan Proponents and Other Parties Or, Alternatively, For An Order Of Preclusion Respecting Certain Issues.

refusal to run reasonable searches to locate relevant information for the period April 13, 2010 through December 3, 2010; and (v) JPMorgan's refusal to even review communications between JPMorgan and its lawyers and advisors who conducted the negotiation of the Debtor/Committee/Lender Plan.[4] JPMorgan does not dispute that this information is relevant to the Noteholder Plan Proponents' confirmation objections, but argues instead that it already produced documents in connection with prior contested matters in these cases, and should not be put to the task of doing much more, given the time-frame on which confirmation is proceeding.

These arguments fall flat. The fact that JPMorgan produced documents in connection with prior contested matters does not relieve it of the obligation to produce additional relevant information now, especially given that this Court has explicitly ordered that the Noteholder Plan Proponents may take additional discovery concerning the LBO. Transcript of Proceedings Before the Hon. Kevin J. Carey on Dec. 6, 2010 ("Dec. 6 Tr.") at 100:1-4.[5] Aurelius and DBTCA were not parties to these prior disputes, and should not be bound by decisions made by other parties regarding the information JPMorgan was required to produce. Moreover, JPMorgan's prior productions were made before the Debtor/Committee/Lender Plan or the Report of Kenneth Klee as Examiner (the "Examiner's Report") existed, when far less information was known about the causes of action related to the LBO (the "LBO-Related Causes of Action") or the way in which the Debtors, JPMorgan and their co-plan proponents would jointly propose to settle them.

[4] The Noteholder Plan Proponents are currently engaging in meet and confer discussions with JPMorgan regarding additional issues, principally with respect to certain deficiencies in JPMorgan's privilege log. Notwithstanding that the Noteholder Plan Proponents first notified JPMorgan of their concerns regarding JPMorgan's privilege log on January 7, 2010, JPMorgan was not able to provide the Noteholder Plan Proponents with sufficient information for the parties to determine whether these additional issues will require judicial intervention. The Noteholder Plan Proponents thus reserve their rights to raise this and other issues relating to JPMorgan's discovery obligations at a later date.

[5] A copy of the relevant portion of this transcript is attached as Exhibit C.

Additionally, JPMorgan should not be heard to complain that it does not have sufficient time to locate and review information that is responsive to the JPMorgan Requests. JPMorgan has itself created this purported dilemma, by:

- opposing the Noteholder Plan Proponents' prior proposal to have the confirmation hearing commence on April 7, 2011;
- refusing the Noteholder Plan Proponents' requests that confirmation discovery begin in November 2010, and insisting instead that no discovery on any subject could be served until *after* the Debtors' motion regarding the scope of discovery was heard by the Court in December;
- refusing the Noteholder Plan Proponents' request that JPMorgan disclose its search methodology in advance of December 21, 2010, and insisting instead that parties exchange their search methodologies simultaneously, notwithstanding that the JPMorgan Requests were served on JPMorgan on December 9, 2010, and that the Debtors did not serve their requests on the Noteholder Plan Proponents until December 16, 2010; and
- refusing to take any steps during the more than two weeks that have passed since this dispute first arose to gather or review the majority of the information that the Noteholder Plan Proponents are requesting.

Having argued for a mere three months for the discovery and pre-trial phases of confirmation, and mounted significant blockades to the Noteholder Plan Proponents' discovery efforts, JPMorgan nonetheless asserts that the deadlines necessitated by the March confirmation hearing eviscerate the protections of the Federal Rules of Bankruptcy Procedure and the general practice in this Circuit requiring parties to meet and confer regarding the search methodology used to locate responsive electronic information. Incredibly, JPMorgan argues that because the Noteholder Plan Proponents "insisted, over JPMorgan's objection, on a hard deadline of thirty days to complete production of documents responsive to [the JPMorgan Requests]," the Noteholder Plan Proponents do not have "the right to approve of the search parameters that JPMorgan has employed in order to reasonably respond to [the JPMorgan Requests]," because "by Aurelius' own making," it is "impractical" for "the parties to meet-and-confer to negotiate

certain search terms prior to conducting a search." *See* Letter from Elliot Moskowitz to Deborah Newman dated December 20, 2010 at 1-2.[6]

This suggestion is untenable. To begin with, the CMO provides additional time for the production of documents that are subject to dispute. More importantly, no such invalidation of rights was ever discussed, or even contemplated, during the parties' vigorous negotiations over the CMO, and the Noteholder Plan Proponents would not have agreed to such a waiver of rights had it been raised.

The Noteholder Plan Proponents should not be required to sacrifice clearly relevant information so that JPMorgan will not be inconvenienced. The protestations that JPMorgan and its counsel Davis Polk, who are among the world's largest banks and most prestigious law firms, cannot complete the review requested by the Noteholder Plan Proponents within the timeframe contemplated by the CMO, ring hollow. Indeed, JPMorgan's assertion that its counsel is capable of reviewing only 10,000 documents a week is highly specious, and contrary to the Noteholder Plan Proponents' experience in these and other cases.

JPMorgan's strategy is clear – refuse to take any steps to provide the Noteholder Plan Proponents with the information necessary for the Noteholder Plan Proponents to adequately prosecute their confirmation objections for as long as it possibly can, and then argue that it should not be ordered to produce such information because it cannot do so within a reasonable period before the confirmation hearing. This Court's reiteration that the confirmation hearing would proceed on March 7th, however, was coupled with an order that that the Noteholder Plan Proponents be permitted to take discovery into the LBO, and a recognition that the parties needed to work together to devise a schedule that would allow discovery to be completed in

---

[6] A copy of this letter is attached as Exhibit D.

advance of the hearing. *See* Dec. 6 Tr. at 76:16-18, 23-25; 100:1-4; 119:13-14. JPMorgan's actions fly in the face of these rulings, and are designed to effectively "time out" the Noteholder Plan Proponents so that they are forced to proceed with the confirmation hearing without an opportunity to discover information supporting their confirmation objections.

This behavior should not be permitted. JPMorgan is a plan proponent, and a primary defendant in the LBO-Related Causes of Actions that the Debtors, JPMorgan and their co-plan proponents jointly propose to settle. Moreover, the Examiner found that JPMorgan and the other lead banks have sought to frustrate examination of the LBO in these cases, by "attempt[ing] to clothe as much of their deliberations as possible [regarding what they knew about the Debtors' financial condition in advance of Step Two][7] under the umbrella of attorney-client and other privileges," Examiner's Report Vol 2, at 336-37, and "tend[ing] to speak from the same script in discussing key events as well as their activities during the months preceding Step Two Closing," *id.* at 337. JPMorgan's efforts to continue to shield relevant information, by arguing that it may unilaterally determine what the Noteholder Plan Proponents can and cannot see, should be rejected. The Noteholder Plan Proponents respectfully request that JPMorgan be ordered to produce the information described below, in accordance with the deadlines set forth in the CMO.

## ARGUMENT

### I. JPMORGAN SHOULD BE ORDERED TO EMPLOY THE SEARCH METHODOLOGY PROPOSED BY THE NOTEHOLDER PLAN PROPONENTS

Federal Rule of Civil Procedure 26, made applicable to these cases by Federal Rule of Bankruptcy Procedure 7026, provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "It is well recognized that the federal rules allow broad and liberal discovery." *Pacitti*

[7] As defined in the Examiner's Report.

*v. Macy's East, Inc.*, 193 F.3d 766, 776 (3d Cir. 1999); see also *Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000) ("[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted."); *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 40 (D. Del. 1993) ("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.") (internal quotation omitted).

Additionally, Rule 26 requires parties to confer in good faith regarding the discovery of electronic information. *See* F. R. Civ. P. 26(f)(3)(C). Courts in this and other Circuits instruct parties to "work in a cooperative, rather than an adversarial manner," regarding "search terms, date ranges, key players and the like." *Romero v. Allstate Ins. Co.*, No. 10-3894, 2010 WL 4138693, at *13, 14 (E.D. Pa. Oct. 21, 2010); *see William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, at 136 (S.D.N.Y. 2009) ("Of course, the best solution in the entire area of electronic discovery is cooperation among counsel").

In recognition of these obligations, the Noteholder Plan Proponents have endeavored to work cooperatively with JPMorgan to devise a search methodology that is mutually acceptable to both parties. As JPMorgan acknowledges, the Noteholder Plan Proponents have significantly narrowed the scope of their proposed methodology, in an effort to balance the Noteholder Plan Proponents' need for relevant information against JPMorgan's burden in searching for such information. Transcript of Proceedings Before the Hon. Kevin J. Carey on Jan. 10, 2011 at 7:12-19.[8] Unfortunately, JPMorgan has not moved from its opening salvo after multiple meet and confers and related communications, and continues to refuse to (i) produce any information from the LBO time-frame in 2007 (to the extent not previously produced to the Document

[8] A copy of the relevant excerpt of this transcript is attached as Exhibit E.

Depository), (ii) produce any information from 2008, a period from which JPMorgan has never produced any documents, (iii) produce any information from the period September 1, 2009 through April 12, 2010 (to the extent not previously produced to the Document Depository), or (iv) conduct a reasonable search for electronic information from the period April 13, 2010 through December 3, 2010.[9]

### A. Consistent With This Court's Prior Ruling, JPMorgan Should Be Ordered To Produce Relevant Information Regarding The LBO From 2007 and 2008

Consistent with this Court's prior ruling that parties may seek documents and discovery into the LBO, JPMorgan should be ordered to employ the search methodology proposed by the Noteholder Plan Proponents for the time periods January 1, 2007 through December 20, 2007 (the date of the close of Step Two of the LBO), and December 21, 2007 through December 2008, and to produce the resulting non-privileged, responsive information to the extent not previously produced by JPMorgan to the Document Depository.[10] In an effort to reach a consensual resolution, the Noteholder Plan Proponents significantly narrowed the search terms and custodians they are requesting for both of these periods.[11] To date, JPMorgan has refused to search for or produce any information from these time-frames.

With respect to January 1, 2007 through December 20, 2007, the Noteholder Plan Proponents have limited their proposed custodians to five individuals who were intimately involved with the LBO. The Noteholder Plan Proponents have further narrowed their proposed

[9] A copy of JPMorgan's proposed search methodology is attached as Exhibit B. In sharp contrast to the narrow methodology proposed by JPMorgan, each of the Noteholder Plan Proponents has agreed to run more than 65 search terms for the entire period requested by the Debtors, including TRB, Trib and Tribune.

[10] JPMorgan has informed the Noteholder Plan Proponents that it is able to electronically remove from the information resulting from its searches all documents previously produced to the Document Depository. As such, the Noteholder Plan Proponents' proposal would not require JPMorgan to re-review or reproduce such documents.

[11] The search terms and custodians the Noteholder Plan Proponents have proposed for the periods January 1, 2007 through December 20, 2007, and December 21, 2007 through June 1, 2008 are set forth in Exhibit A.

search terms to only seven words relating to areas that are missing from JPMorgan's prior 2007 LBO-related production, including JPMorgan's analysis of the Debtors' financial condition in advance of Steps One[12] and Two of the LBO. As noted in the Examiner's Report, although JPMorgan produced internal solvency analyses prepared prior to closing both Step 1 and Step 2, JPMorgan "did not provide any e-mail correspondence or any memoranda accompanying these internal valuation analyses," and the Examiner "did not find a single e-mail referencing these analyses." Examiner's Report Vol. 2, at 274.

JPMorgan's understanding of the Debtors' financial condition at the time of the LBO is unquestionably relevant to this Court's assessment of whether the proposed settlement of LBO-related causes of action embodied in the Debtor/Committee/Lender Plan, which releases billions of dollars of claims against JPMorgan and others, satisfies the standards established by the Bankruptcy Code. JPMorgan should not be permitted to foreclose further discovery into this critical issue, especially given that JPMorgan's prior production does not include relevant information on this topic that is reasonably certain to exist.

For the period December 21, 2007 through December 2008, the Noteholder Plan Proponents request that JPMorgan run the search terms it used to compile its prior LBO-related production, as well as the additional seven terms referenced above, through information maintained by four custodians who continued to monitor Tribune after the LBO closed. JPMorgan has never produced information from this period, and it is not reasonable to believe that JPMorgan custodians who were involved in the LBO and continued to monitor Tribune did not discuss the company's rapid decline, the circumstances that led JPMorgan to continue with the LBO notwithstanding this decline, whether the decline could have been predicted during the

[12] As defined in the Examiner's Report.

time of the transaction, and/or any modifications in lending standards that may have occurred as a result of the LBO. It is also possible that JPMorgan employees were discussing the way in which they intended to deal with a Tribune bankruptcy, as the likelihood of a chapter 11 filing was no secret in the days leading up to Tribune's bankruptcy filing. All of this information is highly relevant to JPMorgan's state of mind during the LBO, JPMorgan's assertion that the economic downturn that led to Tribune's bankruptcy was unforeseeable, and the strategy undertaken by JPMorgan to reduce its liability in connection with the LBO.

**B. JPMorgan Should Be Ordered To Produce Information From The Period September 1, 2009 Through December 3, 2010**

JPMorgan should also be ordered to run the Noteholder Plan Proponents' proposed search methodology for the period September 1, 2009 through December 3, 2010, and to produce the resulting non-privileged, responsive information.[13] JPMorgan is refusing to do so, arguing that (i) it has already produced information from the period December 15, 2009 through April 13, 2010 in response to document requests it received from Wells Fargo and Wilmington Trust in connection with a prior proposed plan (the "April Plan") and should not be required to produce any additional information from this period, and (ii) it should not be required to run any search terms or custodians for the period April 14, 2010 through December 3, 2010, other than those listed in Exhibit B hereto.

There is no basis for JPMorgan's refusal to produce any information from the period September 1, 2009 through April 13, 2010 other than the information it produced in connection with the April Plan (the "April Plan Production"). The prior efforts made by JPMorgan in order to gather the April Plan Production fall far below the search that is required of JPMorgan in order

[13] The Noteholder Plan Proponents' proposed search terms and custodians for the period September 1, 2009 through December 3, 2010 are listed in Exhibit A.

to adequately respond to the JPMorgan Requests. To begin with, JPMorgan did not include within that prior search information maintained by certain JPMorgan and Davis Polk custodians who were integral to JPMorgan's involvement in this case. Moreover, the only search terms JPMorgan used to locate information responsive to the Wilmington Trust and Wells Fargo document requests were 21 domain names, such as "zuckerman.com" or "chadbourne.com," of 16 law firms, advisors, and entities involved in the case at the time.[14] *This methodology would not capture any internal emails from JPMorgan that were not sent outside the bank.* It also fails to identify emails sent by JPMorgan to individuals with domain names other than those listed by JPMorgan, such as other members of the Credit Agreement Lender Group represented by Hennigan Bennett, or the Step One Lender Group represented by Bracewell Giuliani. Moreover, the domain name methodology would be inadequate even if JPMorgan were willing to add additional domain names (which it is not), as the Noteholder Plan Proponents cannot possibly know the universe of individuals with whom JPMorgan may have been sharing relevant information. Indeed, one of the very purposes of discovery is to identify such individuals.

JPMorgan's proposed methodology for the period April 14, 2010 through December 3, 2010 is also inadequate. Once again, JPMorgan proposes to search only by domain name to locate all responsive emails that were sent outside of JPMorgan, and thus this portion of their production suffers from the same infirmities as the April Plan Production. While JPMorgan is willing, for this later period, to run search terms through external emails sent outside of the bank, its willingness to do so fails to cure the defects in its methodology, because the search terms are much too narrowly drawn to capture a great deal of responsive information. JPMorgan proposes to use only 26 search terms, each of which must appear in conjunction with, or, for 12 of the

[14] A list of the custodians and domain name search terms JPMorgan used to locate documents responsive to the Wilmington Trust and Wells Fargo requests is set forth in Exhibit B.

terms, within 10 or 20 words of, the terms TRB, Trib and/or Tribune. JPMorgan should not be permitted to limit its production in this way, and none of the Debtors, the Committee, or the Noteholder Plan Proponents are doing so.

## II. JPMORGAN SHOULD BE ORDERED TO REVIEW AND PRODUCE NON-PRIVILEGED INFORMATION REGARDING ITS NEGOTIATION OF THE DEBTOR/COMMITTEE/LENDER PLAN

JPMorgan should also be ordered to review information from the period April 1, 2010 through November 23, 2010 in the possession, custody or control of JPMorgan employees, lawyers and/or advisors who negotiated the Debtor/Committee/Lender Plan on JPMorgan's behalf, in order to locate and produce non-privileged information, regardless of whether such information is embodied in communications solely between JPMorgan and its lawyers or advisors. Federal Rule of Civil Procedure 26 provides that:

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial material, the party must (i) expressly make the claim, and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim.

F. R. Civ. P. 26(b)(3)(5). Implicit in this requirement is the truism that responsive materials must be reviewed even if they are potentially privileged, so that the privilege may be discerned and, if applicable, asserted in the manner provided for in the rule.

Nevertheless, the Noteholder Plan Proponents have agreed to the Debtor/Committee/Lender Plan Proponents' request that parties need not review or log communications (i) solely within a law firm representing the party, (ii) solely within an advisor representing the party, or (iii) solely between a party and its counsel, inside counsel and/or advisor. As a condition to this agreement, however, the Noteholder Plan Proponents required JPMorgan to agree to review communications from the period April 1, 2010 through November

23, 2010 for communications that fall within category (iii) – when the negotiations over potential settlements and plans of reorganizations took place – that were maintained by the individuals who negotiated those settlements and plans on the parties' behalf.[15] The purpose of this condition was to ensure that communications relaying oral negotiations regarding the Debtor/Committee/Lender Plan, or other mere recitations of facts or comments made by third parties, would be located and produced.

Such "mere recitations" are not privileged, regardless of whether they are communicated between attorney and client or advisor and client. *See, e.g., Rhone-Poulnc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer."); *Lyondell*, Jan. 7. 2010 Tr. at 37-39 (a communication between attorney and client that constitutes a "mere recitation" of what third party said to attorney must be produced); *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, No. 04 Civ. 7844, 2006 WL 2807187, at *6 (S.D.N.Y. Sept. 27, 2006). Moreover, upon information and belief, many of the Debtor/Committee/Lender Plan negotiations were conducted orally. As such, without this "exception to the exception," large portions of non-privileged, relevant information regarding the negotiating tactics employed by various parties, and whether the LBO/Committee/Lender Plan was consummated as a result of collusion or improper strong-arming, will be wholly shielded from discovery.

The Debtors and Creditors' Committee have agreed to this compromise. If JPMorgan refuses to comply with its obligation to review responsive information among itself and its lawyers and advisors, it should be ordered to do so as well.

---

[15] A copy of the Noteholder Plan Proponents' privilege log proposal is attached as Exhibit F.

## CONCLUSION

For the foregoing reasons, the Noteholder Plan Proponents request that this Court enter an order, substantially in the form attached hereto as Exhibit G, directing JPMorgan to (i) employ the reasonable methodology proposed by the Noteholder Plan Proponents and produce the resulting non-privileged, responsive information, to the extent JPMorgan has not previously produced such information to the Document Depository, and (ii) either (a) review and log communications solely between itself, its lawyers, and its advisors, or (b) agree to review and log information maintained by individuals who negotiated the Debtor/Committee/Lender Plan on JPMorgan's behalf during the period April 1, 2010 through November 23, 2010, for the purpose of producing non-privileged communications regarding such negotiations.

New York, New York
January 14, 2010

**ASHBY & GEDDES, P.A.**

BY: */s/ Amanda M. Winfree*
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

-and-

Daniel H. Golden
David M. Zensky
Abid Qureshi
Deborah J. Newman
Akin Gump Strauss Hauer & Feld LLP

One Bryant Park
New York, New York 10036
(212) 872-1000

*Co-counsel to Aurelius Capital Management, LP*

**BIFFERATO GENTILOTTI**

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel
800 N. King St., Plaza Level
Wilmington, DE 19801
(302) 429-1900

- and -

David S. Rosner
Andrew K. Glenn
Sheron Korpus
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Co-Counsel for Law Debenture Trust Company of New York*

**SULLIVAN HAZELTINE ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (Del. Bar No. 2820)
Elihu E. Allinson (Del. Bar No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: zallinson@sha-llc.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Katherine S. Bromberg
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*

**McCARTER & ENGLISH, LLP**

*/s/ James J. Freebery*
James J. Freebery (I.D. No. 3498)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

-and-

David Adler
Joseph Boccassini
Steven Beckelman
100 Mulberry Street
Gateway Four
Newark, New Jersey 07102
(973) 622-4444

*Counsel to Deutsche Bank Trust Company Americas*