**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| TRIBUNE COMPANY, *et al.* | : | Case No. 08-13141 (KJC) |
|  | : | Jointly Administered |
|  | : |  |
| Debtors. | : | **Hearing Date: January 21, 2011 at 10:00 a.m. (ET)** |
|  | : | **Objection Deadline: January 19, 2011 at 4:00 p.m. (ET)** |

-------------------------------------------------

**MOTION BY LAW DEBENTURE TRUST COMPANY
TO COMPEL PRODUCTION OF DOCUMENTS
BY MERRILL LYNCH, PIERCE, FENNER & SMITH INC.**

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture

trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its

debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and

Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096, by

and through its undersigned counsel, hereby respectfully submits this motion (the "Motion"),

pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure and Rule 45 of the Federal

Rules of Civil Procedure, for the entry of an order compelling and directing Merrill Lynch,

Pierce, Fenner & Smith Inc. ("Merrill Lynch" or "Merrill") to produce documents and

communications responsive to the Subpoena For Production of Documents served by Law

Debenture (the "Subpoena") in connection with the Debtors' bankruptcy case (the "Chapter 11

Cases"). In support of this Motion, Law Debenture respectfully represents as follows:

**PRELIMINARY STATEMENT**

Law Debenture submits this motion to compel Merrill Lynch to meet its longstanding

discovery obligations. From the inception of this case, Merrill Lynch has done its utmost to

evade producing documents. During 2004 discovery, Merrill Lynch repeatedly delayed and tried

2188721v11

to satisfy its discovery obligations with a limited production that was patently deficient. Merrill Lynch's prior production was so inadequate that the Unsecured Creditors Committee was forced to bring a motion to compel and seek this Court's intervention. Even though Merrill Lynch ultimately produced additional documents, the production failed to include documents from key custodians and was based upon a search that excluded critical search terms that related to its role in Tribune's leveraged buy-out transaction. Of significance, Merrill Lynch did not even collect any documents from the two custodians the Examiner interviewed whom were found to have the most relevant information concerning the case.

Remarkably, rather than undertake efforts to make a full production and address their prior deficiencies, Merrill Lynch has refused to comply with Law Debenture's reasonable Subpoena. Merrill Lynch wishes to rest on its initial production, and argues that its previous shortcomings are simply not relevant. That is unacceptable. This Court should compel Merrill Lynch to comply with the Subpoena and the search parameters proposed by Law Debenture to ensure the production of all material and necessary evidence for the confirmation hearing.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and Rule 45 of the Federal Rules of Civil Procedure ("FRCP"), as made applicable to these Chapter 11 Cases by Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

A.      **The Bankruptcy Background**

2.      On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.      The Debtors have remained in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On December 9, 2010, the Court entered an *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief* (the "Solicitation Order"). The Solicitation Order was modified on December 16, 2010 [Dkt. No. 7215].

6.      Following the entry of the Solicitation Order (as amended), solicitation commenced with respect to the three competing plans (collectively, the "Plans") as follows:

3

- Joint Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Noteholder Plan"), dated December 9, 2010;

- Joint Plan of Reorganization proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A (the "Debtors/Committee/Lender Plan"), dated December 8, 2010; and

- Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. (the "Bridge Lender Plan"), dated December 7, 2010.

7.    On December 20, 2010, the Court entered a Discovery and Scheduling Order for Plan Confirmation, scheduling the confirmation hearing to begin on March 7, 2011 [Dkt. No. 7239] (the "CMO").

8.    Paragraph 14 of the CMO provides, in pertinent part, that "[w]ith respect to any discovery dispute that may arise, the Parties to the dispute(s) shall meet and confer within (3) business days of any Party's request for such a meet and confer conference."

9.    While the remainder of paragraph 14 provided for a mechanism to bring unresolved disputes to the Court's attention, during a telephonic hearing on January 10, 2011, the Court instructed that in light of the limited time available prior to the commencement of the confirmation hearing, the parties should initiate motion practice to resolve any remaining discovery disputes. See Hearing Transcript, dated January 10, 2011, ("January 10 Hearing") Ex. 1 at 34:5-19.

**B.    Law Debenture Attempts To Meet And Confer With Merrill Lynch**

10.    On December 15, 2010, Law Debenture served Merrill Lynch, a settling party under the Debtors/Committee/Lender Plan, with the Subpoena.  (January 14, 2011 Declaration of

4

Paul Burgo ("Burgo Decl.") ¶ 3).  The Subpoena seeks targeted discovery concerning Merrill Lynch's involvement in the leveraged buy-out (the "LBO") that continues to be a central issue in these Chapter 11 Cases.  Additionally, the Subpoena seeks documents concerning (i) the relationships among certain individuals or entities, including Merrill Lynch, that are key players in the Plans and the Chapter 11 Cases; (ii) negotiations concerning the Plans and settlements incorporated therein, as well as other proposed plans that have been filed or that parties have contemplated filing; (iii) claims arising out of the LBO (the "LBO-Related Causes of Action"), including their merits; (iv) the Court-appointed examiner (the "Examiner") (*See* Examiner Report excerpts, Ex. 2), including the report produced by the Examiner (the "Examiner Report"); (v) potential conflicts of interest; and (vi) the Court-appointed mediator, the mediation and any discussions arising out of or in connection with such mediation.  *See* Ex. 3, Law Debenture Requests for Production.

11.     On December 23, 2010, prior to Merrill Lynch's response to the Subpoena, Law Debenture requested that the parties meet and confer on December 27 to expedite the process of resolving any disputes.  (Ex. 4, Dec. 23, 2010 Email).  Merrill Lynch ignored this request. (Burgo Decl. ¶ 4).

12.     On December 30, 2010, Merrill Lynch served its objections and responses to the Subpoena (the "Objections").  Merrill Lynch refused to comply with certain document requests and made blanket assertions that the Requests are, among other things, vague, overbroad and unduly burdensome; seek irrelevant information; call for the production of documents that are not within Merrill Lynch's possession, custody or control and are more readily available from third-parties, or otherwise publicly available.  (Ex. 5, Objections; Burgo Decl. ¶ 5).

13.     On January 6, 2011, Law Debenture responded to Merrill Lynch's Objections, offering to compromise, limit the scope of certain Requests, and engage in a meet and confer (the "January 6, 2011 Email"). (Ex. 6, January 6, 2011 Email; Burgo Decl. ¶ 6). Under the CMO, Merrill Lynch was to meet and confer with Law Debenture within three business days of its request (CMO at ¶ 14), but instead ignored Law Debenture's request. On January 10, 2011, in light of the Court's recent schedule allowing motions to be filed by January 14, 2011 regarding discovery disputes, Law Debenture renewed its request to meet and confer with Merrill Lynch by January 11, 2011 ("January 10, 2011 Email"). (Ex. 7, January 10, 2011 Email; Burgo Decl. ¶ 7).

14.     By letter dated January 11, 2011, Merrill Lynch finally responded ("January 11, 2011 Letter"). (Ex. 8, January 11, 2011 Letter). On January 13, the parties met and conferred primarily regarding the production of documents from the LBO time period ("January 13 Meet and Confer"). Merrill Lynch refused to produce documents prior to December 8, 2008 and employ additional search terms or custodians. Merrill Lynch also was not amenable to using additional search terms or custodians for the post-LBO period. The parties agreed to meet again on January 14 ("January 14 Meet and Confer"). (Burgo Decl. ¶ 8).[1]

15.     On January 13, 2011, shortly after the Meet and Confer, Law Debenture submitted proposed search parameters and search terms for Merrill Lynch to employ in locating responsive documents to the Subpoena ("Proposed Search Method"). (Ex. 9, Proposed Search Method). The Proposed Search Method specified that Merrill Lynch need not rerun search terms that it already searched.

---

[1]  Merrill Lynch and Law Debenture are continuing to attempt to negotiate the parameters of Merrill Lynch's production and scope of its electronic searches.

16.     In the January 14 Meet and Confer, Law Debenture offered to narrow a number of its requests regarding its Proposed Search Method.  For example, Law Debenture limited its proposed custodians to those referred to by the Examiner in the Examiner Report; Merrill Lynch agreed to take the suggestions to its client, but was unable to commit to any of them and appeared particularly resistant to the use of any additional search terms.  (Burgo Decl. ¶ 11).

17.     Because the parties have been unable to fully resolve their discovery disputes, and time is of the essence, Law Debenture respectfully moves this Court to compel Merrill Lynch to comply with the Subpoena and conduct its searches in accordance with the Proposed Search Method.  Law Debenture does intend to continue their meet and confer process over the course of the next week to consensually resolve their motion.

## LEGAL ARGUMENT

### I.     Legal Standards

18.     Law Debenture is empowered to seek discovery from Merrill Lynch through subpoenas issued pursuant to Rule 45, made applicable to bankruptcy matters by Rule 9016 of the Federal Rule of Bankruptcy.  Fed. R. Civ. P. 45; Fed. Bankr. R. 9016; Fed. R. Civ. P. 34(c). The scope of discovery permitted is "subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Cash Today of Tex. v. Greenberg, C.A.*, 2002 U.S. Dist. LEXIS 20694, at *4 n.4 (D. Del. Oct. 23, 2002).  Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26; *Cash Today*, 2002 U.S. Dist. LEXIS 20694, at *4 ("relevance for discovery purposes is given very broad meaning"); *Falkenberg Capital Corp. v. Dakota Cellular*, 1998 U.S. Dist. LEXIS

13456, at *12 (D. Del. Aug. 4, 1998) ("discovery rules are to be construed liberally in favor of the party seeking discovery").

19.       In the context of a bankruptcy case, "[w]ide-ranging" discovery is permitted to prepare for a confirmation hearing. *See In re Int'l Wireless Commc'ns Holdings, Inc.*, 1999 Bankr. LEXIS 1853, at *8 (Bankr. D. Del. Mar. 26, 1999); *see also In re Molina*, 420 B.R. 825, 831 (Bankr. D. N.M. 2009) ("[A] court might well deny for bad faith confirmation of a plan of a debtor who refuses to comply with legitimate discovery requests, on the grounds that the debtor's conduct directly contravenes the overarching principles of transparency and disclosure that inhere in the bankruptcy process").

20.       Courts in the Third Circuit repeatedly grant motions to compel in which parties seek discovery of non-privileged, relevant information, the production of which does not create an undue burden for the subpoenaed party. *See Software Rights Archive, LLC v. Google, Inc.*, 2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009) (granting a motion to compel seeking enforcement of a Rule 45 subpoena because the discovery sought was relevant and would not create an undue burden); *Miller v. Allstate Fire & Cas. Ins. Co.*, 2009 U.S. Dist. LEXIS 21225, at *3 (W.D. Pa. Mar. 17, 2009) ("The function and purpose of a subpoena is to compel the production of documents relevant to the disputed matter").

## II.   Merrill Lynch, As A Significant Party To The LBO And These Chapter 11 Cases, Must Produce Relevant Documents

21.       Merrill Lynch is a party-in-interest that undoubtedly has responsive documents given its role in the LBO and in these Chapter 11 Cases.  In connection with the LBO, Merrill Lynch served as the financial advisor to Tribune's board of directors (the "Board") that evaluated and eventually recommended that the Board should approve the transactions comprising the LBO.  Additionally, Merrill Lynch (through its affiliate, Merrill Lynch Capital Corporation) was

8

the syndication agent for the first step of the LBO and the lead administrative agent for the

second step. Both roles earned Merrill Lynch enormous transaction fees and, more importantly,

left Merrill Lynch with a tremendous amount of documents relevant to all aspects of the LBO,

including those documents and communications that necessarily are relevant to the underlying

merits of the LBO-Related Causes of Action and their treatment in the respective Plans.

22.    Merrill Lynch's involvement in these Chapter 11 Cases is also substantial, albeit

more covert than its participation in the LBO. Some of the major submissions Merrill Lynch has

made in the Chapter 11 cases include:

- Objection of Merrill Lynch Capital Corporation to Motion of Law Debenture Trust Company of New York for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, Its Affiliates, and Certain Third Parties, or Alternatively, for the Appointment of an Examiner, dated September 17, 2009 [Dkt. No. 2148];

- Objection of Merrill Lynch Capital Corporation to Motion for 2004 Examination Motion for Order Requiring the Production by Date Certain of Email Documents from Merrill Lynch Capital Corporation, dated December 14, 2009 [Dkt. No. 2848];

- Joinder of Merrill Lynch Capital Corporation to J.P. Morgan Chase Bank, N.A.s Response to the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors Estates, dated February 11, 2010 [Dkt. No. 3366];

- Joinder of Merrill Lynch Capital Corporation to J.P. Morgan Chase Bank, N.A.s Response to Motion of Wilmington Trust Company for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code, dated February 11, 2010 [Dkt. No. 3368];

- Objection of Merrill Lynch to Supplement to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors Estates and in Response to the Limited Objection of Aurelius Capital Management, LP, dated October 19, 2010 [Dkt. No. 6038]; and

- Submission of two briefs to the Examiner, dated May 24, 2010 and June 7, 2010.

23.     Additionally, although Merrill Lynch is not a plan proponent, it is a substantial beneficiary of the Debtors/Committee/Lender Plan. In pertinent part, the Debtors/Committee/ Lender Plan grants Merrill Lynch benefits by providing, among other things: (i) full releases to the Step One lenders in their capacities as such, and (ii) releases to the Step Two lenders with respect to the avoidability of their claims against the Debtors. (Debtors/Committee/Plan at 34-35). Moreover, for no additional consideration, the plan provides full releases to the Step One agents and arrangers in their capacity as such, notwithstanding that they received approximately $134 million in fees and expenses from the Debtors prior to the commencement of these cases. The Debtors/Committee/Lender Plan also releases the Step Two and Bridge lenders, agents and arrangers for disgorgement liability associated with approximately $318 million of payments in principal, interest, fees and expenses for consideration of only $120 million.

24.     Accordingly, Merrill Lynch has been significantly involved with the Debtors prior to the LBO, through the LBO, and now continuing through these Chapter 11 Cases. It is without question that it possesses a substantial amount of relevant documents.

## III.     Merrill Lynch Cannot Arbitrarily Choose What Discovery It Wants To Produce

### A.     Merrill Lynch Cannot Rely Upon Its Prior Deficient Productions In Lieu of Complying With The Subpoena

25.     Merrill Lynch has unilaterally limited the scope of the Subpoena, by refusing to produce documents relating to the LBO Related Causes of Action and documents for the earlier period of December 20, 2007 through December 8, 2008.[2] In refusing to produce these documents, Merrill Lynch relies upon its prior productions in this case. In particular, Merrill Lynch's January 11, 2011 Letter provides, that it will not produce documents prior to December

---

[2]  In the January 14 Meet and Confer, in conjunction with its other proposals, Law Debenture offered to limit the time period to January 1, 2007 to December 31, 2007. (Burgo Decl. ¶ 14).

8, 2008 and its prior production including documents from that period and those associated with the LBO-Related Causes of Action. As such Merrill Lynch would not engage in another review and collection of pre-December 8, 2008 documents. (Ex.8).

26.    Given the inadequacies of Merrill Lynch's prior productions, it is wholly inappropriate for Merrill Lynch to rely upon those productions in lieu of (i) fully responding to the Subpoena, (ii) producing pre-December 8, 2008 documents and (iii) providing documents relating to the LBO-Related Causes of Action.

27.    Throughout the protracted Chapter 11 Cases, Merrill Lynch has frustrated the discovery process by delaying its production of documents. Merrill Lynch's prior production was entirely inadequate, failing to include certain key custodians and search terms beyond an initial finite set. The Creditors' Committee acquiescence as to such custodians and search terms does not render Merrill Lynch's production any more sufficient. Law Debenture's Subpoena is intended to correct those deficiencies and obtain relevant information that is necessary for the confirmation hearing.

28.    Since the inception of this case, Merrill Lynch's delay tactics and inadequate discovery have been monumental. By motion dated December 8, 2009, the Committee had sought an Order requiring Merrill Lynch to produce certain emails, and in so doing, catalogued Merrill Lynch's malfeasance with respect to its discovery obligations. (Ex. 10, *Motion of the Off. Comm. Of Unsecured Creditors For An Order Requiring the Production by Date Certain of Email Documents from Merrill Lynch Capital Corporation Pursuant to Bankruptcy Rule 2004*, dated December 8, 2009 [Dkt. No. 2767] (the "Merrill 2004 Motion")). To demonstrate Merrill Lynch's dilatory tactics, the Committee noted:

- "Merrill's production has been delayed far more than that of virtually any other party in [providing documents responsive to 2009 Requests for Information]

11

notwithstanding the fact that Merrill was among the earliest recipients of the document requests from the Committee."

- "Merrill has been even more dilatory in its production of email to the Committee."

- Although the Committee's counsel had reached agreement on search protocol with JPMorgan, by way of example, after minimal debate, "Merrill's counsel strongly resisted" and even after agreement was reached, weeks passed without Merrill producing any emails.

- Merrill Lynch's "stonewalling tactics" included consistently, and unilaterally, imposing limitations on the scope of its email production.

- Merrill Lynch, invariably, had the habit of producing a "relatively small initial production" and refrained from "providing [] update[s] on the timing of its email production prior to [] [a] Status Conference" and would communicate with the Committee via "cryptic email."

(Ex. 10, Merrill 2004 Motion).  In response to the motion, the Court ordered Merrill Lynch to produce additional documents. *See* Order Requiring The Production By Date Certain Of E-Mail Documents From Merrill Lynch Capital Corporation Pursuant to Bankruptcy Rule 2004, dated December 28, 2010 [Dkt. No. 2931].

### 1.    Discovery for the LBO Period

29.    At the January 13 Meet and Confer, Merrill argued that because its production from that time period had been the subject of the Merrill 2004 Motion, it would not return to that time period again.  (Burgo Decl. ¶¶ 8-9).  Merrill Lynch's prior production, which it now holds out as complete and responsive to the Requests pertaining to the LBO, was deficient, first, because Merrill utilized a limited group of search terms and second, because it did not pull documents from appropriate custodians.

30.    In the January 13 Meet and Confer and January 11 Letter, Merrill sought to defend its LBO-period production by claiming that it previously produced documents twice. First, Merrill Lynch used twenty-eight search terms to produce documents in response to the

document requests of the Official Committee of Unsecured Creditors (the "UCC Request").

Second, Merrill Lynch pulled documents using additional search terms in response to the

Wilmington Trust Company's requests (the "WT Requests"). In fact, as Merrill Lynch's

Responses to the WT Requests (the "WT Responses") make clear, the additional search terms for

the WT Requests were run only in the universe of documents pulled for the UCC Requests, not

directly from Merrill Lynch's custodians. (Ex. 11, WT Responses ¶ 1, at page 4). As a result,

Merrill Lynch has only produced documents for the LBO period that are limited by its initial

twenty-eight search terms. (Burgo Decl. ¶ 9).[3]

31.    Law Debenture has proposed a more expansive search term list that takes into

account the varying roles Merrill Lynch played in the LBO, the Chapter 11 Cases and as a

settling party. While Merrill did search for certain basic search terms like "TRB" and "Trib,"

Merrill did not use other basic search terms, includes "LBO-Related Causes of Action." For

example, Merrill did not use search terms that were inclusive enough to capture responsive

documents concerning Step 1 and Step 2; the PHONES;[4] Tranche B; Duff & Phelps; various

participants, like Navigant; and several important individuals, like Whayne, Bigelow, and Crane.

A complete list of Merrill Lynch's search terms compared to Law Debenture's proposed search

terms is attached as Ex.12. ("Search Term Comparison").

32.    In addition, the custodians Merrill Lynch searched in its prior production were

also deficient. Whereas Merrill Lynch only searched for twelve custodians, Law Debenture has

proposed that it search for an additional eleven. For example, Merrill Lynch did not include

---

[3]  Merrill Lynch contested this point in the January 14 Meet and Confer, stating that it would confirm with its client but that it believed the additional search terms were run directly from the custodians (Burgo Decl. ¶ 9); however, the plain language of the WT Responses belies this assertion.

[4]  As described above, although Merrill Lynch did use the search term PHONES, as identified in its WT Responses, it apparently only searched for that term in a database that was collected using 28 other search terms.

Stephen Paras, a managing director in the Leveraged Finance Capital Markets, or David Tuvlin, a managing director in Leveraged Finance, both of whom the Examiner identified as "key personnel working with Tribune on behalf of the Merrill Entities." (Examiner Report Vol. I at 269.) Similarly, Merrill Lynch did not pull documents from the files of Nancy Meadows, a Vice President for Loan Execution and Management, whom the Examiner quoted as writing, "I'm not saying we love the credit, and the leverage is high, but there is some asset value here." (*Id.* at 289).

33.     To rectify Merrill Lynch's prior discovery deficiencies, Law Debenture has identified the following additional custodians to be searched for responsive information: Stephen Paras; David Tuvlin; David Lewicki; Matthew Buffington; John Eidinger; Nancy Meadows; Jose Cotarelo; Caroline Kim; Alan Hartman; Mitchell L. Marcus; and Mariela Figueroa. In the January 14 Meet and Confer, Law Debenture offered to limit the production to Stephen Paras, David Tuvlin, Nancy Meadows, and Caroline Kim, all individuals whom the Examiner referenced in his report. (Burgo Decl. ¶ 11). At a minimum, Merrill Lynch should be required to produce documents from the LBO period from those four custodians.

34.     The following briefly sets forth each proposed custodian's relevance to the LBO (a copy of this chart is also attached as Ex. 13).

| CUSTODIAN | ROLE WITH MERRILL LYNCH | RELEVANCE TO PLAN CONFIRMATION HEARING |
|---|---|---|
| Stephen Paras | Managing Director, Leveraged Finance Capital Markets | Mr. Paras is identified by the Examiners Report as "key personnel working with Tribune on behalf of the Merrill Entities." (Examiner Report Vol. I, p. 269). |
| David Tuvlin | Managing Director, Leveraged Finance | Mr. Tuvlin is identified by the Examiner's Report as "key personnel working with Tribune on behalf of the Merrill Entities." (Examiner Report Vol. I, p. 269). |
| Nancy Meadows | Vice President,  Loan Execution and | Ms. Meadows is listed as a Vice President for Loan Execution and Management in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB- |

14

| | Management | 0007228 at ML-TRIB-0007223). |
|---|---|---|
| | | The Examiner quotes Ms. Meadows as having stated: "I'm not saying we love the credit, and the leverage is high, but there is some asset value here." (Examiner Report Vol I. at 289). |
| John Eidinger | Associate, Mergers & Acquisitions | Mr. Eidinger is listed as an Associate with the Mergers & Acquisitions group in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| | | In an April 6, 2007 email, Chris Cormier congratulated John Eidinger, Michael Costa, and Todd Kaplan for what Cormier called "truly amazing financing engineering" regarding Tribune. (ML-TRIB-0387938-ML-TRIB-387942 at ML-TRIB-0387938). |
| | | Mr. Eidinger played a role in valuation analyses for Tribune and stated: "I can only take valuation up so much on an EBITDA basis." (MLB-TRIB-0597523-24). |
| | | Mr. Eidinger also played a significant role in Merrill Lynch's Fee Proposal and Fairness memorandum. (ML-TRIB-0595294-98; ML-TRIB-0607636; ML-TRIB-1145527-30). |
| David Lewicki | Analyst, Investment Banking Group | Mr. Lewicki is listed as an Analyst in the Investment Banking Group in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| | | Mr. Lewicki played an active role in Merrill Lynch's internal valuation of Tribune. For example, Mr. Lewicki created an analysis which attempted to replicate the tax savings aspects of the VRC Report. (ML-TRIB-1402294). |
| | | Mr. Lewicki also collected and circulated sensitive information regarding Craig Huber's of Lehman's negative report on Tribune, from Chandler Bigelow. (Examiner Ex. 999; Examiner Report Vol. 1 at 606, n. 2528). Before that, he located, circulated and analyzed a prior negative Lehman report (ML-TRIB-0548239). |
| Matthew Buffington | Analyst, Mergers & Acquisitions | Mr. Buffington is listed as an Analyst in Mergers & Acquisitions in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |

| | | Mr. Buffington participated in various Tribune projects including: the Special Committee deck; Debt-for-Debt deck; Broadcasting Valuation; and the Covenant Analysis. (ML-TRIB-0604202-225; ML-TRIB-0381742-751; ML-TRIB-0602093-96; ML-TRIB-0610308-312). |
|---|---|---|
| Jose Cotarelo | Director of Mergers and Acquisitions | Mr. Cotarelo is listed as the Director of Mergers and Acquisitions in an April 2007 Tribune Working Group List.  (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223).<br><br>Mr. Cotarelo participated in Merrill Lynch's fee proposal to Tribune and in Merrill Lynch's fairness opinion (ML-TRIB-0418810; ML-TRIB-0418811-ML-TRIB-0418817; ML-TRIB-0006970-7011 at ML-TRIB-0006971). At least one time, Cotarelo circulated an email instructing others not to circulate, suggesting that he may have documents not in the possession of other custodians (ML-TRIB-0418810-ML-TRIB-0418817). |
| Caroline Kim | Investment Banker | The Examiner's Report identified Ms. Kim as an investment banker who "circulated a debt covenants analysis among her colleagues."  (Examiner Report Vol I at 282, and Ex. 340 at ML-TRIB-0619109).<br><br>Ms. Kim is also listed as an associate in the leveraged finance department in an April 2007 Tribune Working Group List.  (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| Mitchell Marcus | Managing Director, Investment Banking | Mr. Marcus is listed as a Managing Director for Investment Banking in an April 2007 Tribune Working Group List. (ML-TRIB-0007223).<br><br>Mr. Marcus played a role in Merrill Lynch's valuation of Tribune and in Merrill Lynch's analysis of the VRC Preliminary Solvency Opinion.  (ML-TRIB-1052281; Examiner Ex. 358; Examiner Report Vol. I at 290, n.1200).<br><br>Mr. Marcus also participated in discussions regarding the structure of the Tribune transaction. (ML-TRIB-0361430-31). |
| Mariela Figueroa | Associate, Leveraged Finance Capital Markets | Ms. Figueroa is listed as an associate in Leveraged Finance Capital Markets in an April 2007 Tribune Working Group List. (ML-TRIB-0007223).  The Leveraged Finance Department is of particular importance to the viability of the LBO.<br><br>Ms. Figueroa appears on the cover page of a February |

|  |  | 22, 2007 Tribune presentation. (MLB-TRIB-0429502 - MLB-TRIB-0429516).<br><br>Ms. Figueroa participated in discussions regarding Merrill's Fees. (ML-TRIB-1401770-773). On January 25, 2007, Ms. Figueroa was asked for her advice regarding a Tribune proposal regarding pricing. (ML-TRIB-0427048- ML-TRIB-04270487075). |
|--|--|--|

35.     Moreover, the Examiner questioned many of the parties' productions from the

LBO period, noting that he "did not have an opportunity to pursue whether or to what extent the

deliberations that the Lead Banks engaged in during the fall of 2007 actually are protected

attorney-client communications or are really business discussions among principals,

masquerading as communications to and from counsel and financial advisors." Examiner Report

Vol. II at 337.  The Examiner continued to explain that "to the extent the Lead Banks assert

privilege based solely on the fact that an attorney was present during a telephone conference or

meeting, or was copied on correspondence, any such assertions are highly suspect." *Id.*  The

Examiner noted that the "Lead Banks . . . plainly attempted to clothe as much of their

deliberations on this matter under the umbrella of attorney-client and other privileges."

Examiner Report Vol. II at 336-37.

### 2.     Discovery for the Post-LBO Period

36.     In the January 13 Meet and Confer, Merrill also refused to hear Law Debenture's

suggestions for additional search terms and custodians for even the post-LBO production.  In

response to the Subpoena, Merrill informed Law Debenture it was performing searches using the

terms Tribune, TRB, and Trib*.  (Burgo Decl. ¶ 12).  Merrill's searches are in stark contrast to

Law Debenture's Proposed Search Method which encompasses crucial terms that relate to the

parties involved in the Plans and the terms of the settlement, for example, "LBO-related causes

of action," fraudulent w/1 conveyance, release*, Oaktree, EGI, Zell, and Bigelow.  To ease the

burden on Merrill, Law Debenture has segmented its post-LBO search terms into two periods, from December 8, 2008-September 1, 2009 and from September 1, 2009-December 3, 2010. A complete list of these terms is in the Search Term Comparisons in Ex. 12. Although during the January 14 Meet and Confer, Merrill Lynch stated that it would convey Law Debenture's request to the client, it was resistant to using additional search terms and would not propose an alternative list of search terms it believed were overbroad. (Burgo Decl. ¶ 13).

37.    Merrill Lynch's custodians for the post-LBO period are also deficient. For the vast majority of this period, it only searched the file of one individual, Michael O'Brien. It searched the files of Todd Kaplan and Jeffrey Kaplan only for one month, October 2010, (Burgo Decl. ¶ 13) despite the fact that they both participated in the mediation, which began in September. (Burgo Decl. ¶ 12). Law Debenture requested that Merrill Lynch search the files of Todd Kaplan and Michael Costa, two individuals interviewed by the Examiner, for the period of May 11, 2010 to July 31, 2010 during the Examiner's investigation. Law Debenture additionally requests that Merrill Lynch search the files of in-house counsel for the period of December 8, 2008 to December 3, 2010. Such individuals are nearly certain to have documents relevant to the Plan Confirmation. Law Debenture reserves its right to propose additional custodians for the post-LBO period after it has a chance to review Merrill Lynch's production.

38.    In determining whether search methods employed were appropriate, "the court applies a 'reasonableness test to determine the 'adequacy' of search methodology.'" *Eurand, Inc. v. Mylan Pharms., Inc.*, 266 F.R.D. 79, 85 (D. Del. 2010). "An adequate search is one that 'could . . . have been expected to produce the information requested.'" *Id.* Because Law Debenture's Proposed Search Method is geared at locating relevant documents responsive to the Subpoena, Merrill Lynch should be directed to produce search documents in accordance with

Law Debenture's Proposal. As evidenced from Merrill Lynch's prior production, its selection of custodians and search terms enabled it to shield highly relevant evidence. Had the Examiner not sought out these interviews of Merrill Lynch's employees, the parties would have never uncovered this very probative evidence through the discovery process with Merrill Lynch. During the January 13 Meet and Confer, Merrill Lynch, without addressing its failure to produce documents from custodians the Examiner identified as "key personnel," instead relied upon the number of documents it had produced, (Burgo Decl. ¶ 9) a classic fallacy of quantity over quality. Merrill Lynch's gamesmanship tactics contravene the underlying policies behind the role of discovery.

**B.      Merrill Lynch Cannot Arbitrarily Select
          Which Relevant Documents It Wants To Produce**

39.      Aside from relying on its prior deficient production, Merrill Lynch unilaterally imposes a restriction on the date range for the Subpoena, refusing to produce documents prior to December 8, 2008 – the petition date. The Subpoena specifically calls for production of documents for the period of January 1, 2007 through December 15, 2010 unless otherwise specified. (Ex. 3, Subpoena p. 26, ¶ 3). Nevertheless, Merrill Lynch limits the date range by withholding documents prior to December 8, 2008. The Objections specifically state "such production will be limited to documents, not previously produced, that relate to the April Proposed Settlement, the Proposed LBO Settlement, and/or the Plan." (Ex. 5, Objections p. 21, ¶ 63).

40.      Merrill Lynch's arbitrary cut-off date runs *directly afoul of this Court's prior ruling on the Debtor's Contours motion allowing targeted discovery concerning the LBO.* (December 6, 2010 Transcript of Proceedings, Ex.14, at 100:2-4, 110:22-111:3). As such, Law

19

Debenture is entitled to discovery prior to December 8, 2008 relating to the LBO and other matters concerning the confirmation hearing.

41.      Merrill Lynch – a settling party under the Debtors/ Committee/Lender Plan – must comply with its discovery obligations and cannot unilaterally limit the scope of discovery to avoid producing relevant information. *See Francis v. BIC Corp.*, 869 F.2d 194, 202 (3d Cir. 1989) (rejecting attempt to preclude discovery of relevant information based on time limitations); *Dow Corning Corp. v. BB&T Corp.*, 2010 U.S. Dist. LEXIS 124031, at *30-31 (D. N.J. Nov. 23, 2010) (refusing to restrict discovery even after holding that only claims limited to a specific time period may proceed); *Harris v. Harley-Davidson Motor Co. Operations, Inc.*, 2010 U.S. Dist. LEXIS 119311, at *6-7 (M.D. Pa. Nov. 10, 2010) (rejecting defendant's efforts to restrict temporal scope of discovery); *Dennis Joslin Co., LLC v. Yoffe*, 2003 U.S. Dist. LEXIS 6578, at *4-5 (E.D. Pa. Mar. 24, 2003) (holding that the statute of limitations does not restrict discovery where there is relevant evidence preceding the statutory period). As discussed above, allowing Merrill Lynch to selectively choose what relevant documents it wants to produce will result in highly probative evidence being shielded from discovery. That is not acceptable.

42.      Furthermore, Merrill Lynch's unsubstantiated representation concerning the comprehensiveness of its prior production cannot be the basis for withholding responsive documents prior to December 8, 2008. *See New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*, 2000 U.S. Dist. LEXIS 531, at *16 (E.D. Pa. Jan. 13, 2000) (ordering further discovery so that plaintiff could "test the veracity of defendants' assertions that they have produced all the documents they were required to produce"). This Court should allow further discovery against Merrill Lynch to test the "veracity of its assertion" that it has produced all relevant documents through prior discovery. *Med. Tech., Inc.*, 2010 U.S. Dist. LEXIS 100063, at *11 (ordering

further discovery "not only to supplement" Plaintiff's original production but "also to test the

veracity of [Plaintiff's] assertions that they have produced all the documents they are required to

produce"). Thus, this Court should direct Merrill Lynch to produce documents in response to the

LBO-Causes of Action, including Request No. 43.

    **C.**    **Merrill Lynch Must Be Compelled To Undertake**
           **A Comprehensive Search For Relevant Documents**

    43.    Further demonstrating Merrill Lynch's non-compliance with its discovery

obligations, Merrill Lynch has refused to expand its search term list and undertake a

comprehensive search for responsive documents to the Subpoena. As discussed above, Merrill

Lynch's refusal to adopt the Proposed Search Method and reliance upon its limited search terms

list will result in an enormous amount of relevant documents that will not be captured by Merrill

Lynch's search methods. Merrill Lynch's unwillingness to use key terms that will capture the

most responsive documents defeats the very purpose of employing a search term methodology to

locate responsive documents in lieu of an expansive page-by-page review of all documents.

Merrill Lynch's search methods are unacceptable under these circumstances. *See William A.*

*Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("where

counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft

the appropriate keywords, with input from the ESI's custodians as to the words and abbreviations

they use, and the proposed methodology must be quality control tested to assure accuracy in

retrieval and elimination of "false positives." It is time that the Bar – even those lawyers who

did not come of age in the computer era – understand this"). *See In re Seroquel Prods. Liab.*

*Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) (imposing sanctions and noting that "while key

word searching is a recognized method to winnow relevant documents from large repositories,

use of this technique must be a cooperative and informed process. Rather than working with

Plaintiffs from the outset to reach agreement on appropriate and comprehensive search terms and methods, AZ undertook the task in secret. Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness").

44.    Law Debenture has proposed reasonable date restrictions and search terms for Merrill Lynch to use, and is willing to engage in further negotiations to ease the burden of searching for responsive documents. Contrarily, Merrill Lynch has remained steadfast in its position, unilaterally dictating the conditions of its search. *See Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 47 (S.D.N.Y. 2009) (holding that the defendant's unilateral decision to select search terms failed to satisfy its discovery obligations); *see also Bell v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 62971, at *25 (D.N.J. June 23, 2010) (finding that the defendant's expense incurred in complying with discovery did not excuse it from producing further discovery where the defendant had not complied with the full subject matter or temporal scope of the discovery requests).

45.    When one party refuses to cooperate, a court may "compel the parties to confer and come to some agreement" on basic discovery issues including search terms, custodians to be searched, the date ranges for the searches, and "any other essential details about the search methodology." *Romero v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 111985, at *41-42 (E.D. Pa. Oct. 21, 2010). *See also DeGeer v. Gillis*, 2010 U.S. Dist. LEXIS 129745, at *55 (N.D. Ill. Dec. 8, 2010) ("The proper and most efficient course of action would have been agreement by [non-party] Huron and Defendants as to search terms and data custodians prior to Huron's electronic document retrieval. Selecting search terms and data custodians should be a matter of cooperation and transparency among parties and non-parties."); Fed. R. Civ. P. 26(f)(3)(C). Thus, given

Merrill Lynch's unwillingness to compromise, this Court should compel Merrill Lynch to

conduct its searches in accordance with the Proposed Search Method.

**IV.    Merrill Lynch Should Be Compelled To Produce
Relevant Documents For The Confirmation Hearing**

**A.    Law Debenture Is Entitled To Documents
Concerning Party Relationships As They Are Relevant**

46.    Merrill Lynch has unequivocally refused to produce any documents with respect

to Requests 1 through 10, which relate to any relationship among key parties in the Chapter 11

Cases, including Tribune, the Settling Parties, Special Committee Individuals, Committee

Individuals, and Tribune Individuals, among others, claiming such documents are not in Merrill

Lynch's possession, and, are more easily obtained from other parties.[5]

47.    The argument that Request Nos. 1 through 10 seek information that is not relevant

to confirmation is without merit.  Requests 1 through 10 seek to collect information to assist this

Court in determining whether the releases provided in the Debtor/Committee/Lender Plan,

including those obtained by Merrill Lynch, are fair and equitable.  These documents are directly

relevant as they will assist both the Court and Law Debenture in evaluating whether Merrill

Lynch' settlement, encompassed in the Debtor/Committee/Lender Plan, was reached in good

faith or if prior relationships and financial interests biased the settlement reached.  *See In re*

*Exide Techs.*, 303 B.R. 48, 67-68, 71 (Bankr. D. Del. 2003) (criteria for approving settlement in

the context of a proposed plan includes "the extent to which [it] is truly the product of 'arms-

length' bargaining, and not of fraud or collusion"); *In re Adelphia Commc'ns*, 327 B.R. 143, 165

(Bankr. S.D.N.Y. 2005) (in analyzing proposed settlement under Rule 9019, arms-length

---

[5]  Law Debenture, in its January 6, 2011 response to Merrill Lynch's Objections, offered to consider narrowing the
scope of Requests 1 through 10, such as limiting the definition of "Tribune Individuals."  Merrill Lynch, in its
January 11, 2011 Letter, does not address Law Debenture's good faith offer.  (*See* Ex. 8).

bargaining is a relevant consideration — one which the court would give great weight to "if [it] ever thought it had not been satisfied"); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Gerber, J.), January 7, 2010 Tr. at 14-15 (directing discovery of settlement communications between debtors and senior lenders, even after the date a settlement in principal was reached, because "I need to have total comfort that the settlement [of fraudulent transfer claims] was at arms' length and wasn't collusive. And communications between the debtors and [senior lenders] at any time . . . are at least potentially relevant" in 9019 proceeding).

48.    Law Debenture's Requests were designed to specifically adduce facts relevant to the Court's good faith inquiry. As relevancy is broadly construed in the Third Circuit (*see Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009)), Merrill Lynch, as a beneficiary under the Debtor/Committee/Lender Plan, is obligated to produce documents relevant to whether its settlement was fair and equitable, even accepting Merrill Lynch's contention that is a "non-party." *See Exide*, 303 B.R. at 71 (citing absence of arms-length bargaining as a reason to reject the proposed settlement); *In re Spansion, Inc.*, 2009 Bankr. LEXIS 128, at *13-14 (Bankr. D. Del. June 2, 2009) (rejecting settlement where, inter alia, the person negotiating for the debtor failed to obtain legal advice regarding the strength of the subject claims before agreeing to a settlement); *Gillman v. Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (non-debtor releases must exhibit "the hallmarks of permissible non-consensual releases – fairness, necessity to the reorganization, and specific factual findings to support these conclusions").

49.    Moreover, the definitions of "Relationship" and the entities and individuals included in Requests 1 through 10 are clear on their face. In light of Merrill Lynch's longstanding involvement with Tribune, the LBO, and the Chapter 11 Cases, Merrill Lynch's

24

assertion that these documents, as well as others detailed *supra*, are not within its possession, custody or control, is not credible and does not require Law Debenture to seek duplicative discovery from other parties. *See* Ex. 1, January 10 Hearing at 30-31 ("how is it that Law Debenture should be able to test the proposition that there's nothing for them to give because they haven't had involvement . . . [I]sn't that something that a party has a right to test somehow through discovery?"); *see also Software Rights Archive, LLC.*, 2009 U.S. Dist. LEXIS 43835 at *6 ("there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party").

**B.    Merrill Lynch Should Comply With This Court's
Decision And The Parties' Stipulation Regarding Discovery**

50.    Merrill Lynch maintains that because it is not a plan proponent, it is not subject to the orders and stipulations reached among the parties regarding discovery. To the extent this Court enters any orders that impact Merrill Lynch's discovery obligations, this Court should compel Merrill Lynch's compliance of such orders.

## NOTICE

Notice of this Motion has been given to (i) all counsel listed in paragraph 35 of the CMO, including counsel to the Debtors, the Committee, and Merrill Lynch, and (ii) the United States Trustee.

## CONCLUSION

For the reasons set forth above, Law Debenture respectfully requests that the Court order Merrill Lynch to comply with the attached Subpoena, perform its searches in accordance with the Proposed Search Method and grant the relief requested.

Dated:  January 14, 2011
        Wilmington, Delaware

**BIFFERATO GENTILOTTI LLC**

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (DE No. 4167)
800 N. King St., Plaza Level
Wilmington, DE 19801
(302) 429-1900

- and -

David S. Rosner
Andrew K. Glenn
Sheron Korpus
Christine Montenegro
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Co-Counsel for Law Debenture Trust*
*Company of New York*