## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------

In re:

TRIBUNE COMPANY, *et al.*

                                    Debtors.

-------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 08-13141 (KJC)
Jointly Administered

**Hearing Date: January 21, 2011 at 10:00 a.m. (ET)**
**Objection Deadline: January 19, 2011 at 4:00 p.m. (ET)**

### LAW DEBENTURE TRUST COMPANY OF NEW YORK'S
### MOTION TO COMPEL ANGELO, GORDON & CO., L.P., OAKTREE CAPITAL
### MANAGEMENT, L.P., AND HENNIGAN, BENNETT & DORMAN LLP TO
### PRODUCE DOCUMENTS PURSUANT TO BANKRUPTCY RULES 9014
### AND 7037 AND FEDERAL RULE OF CIVIL PROCEDURE 37

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture

trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its

debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and

Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096, by

and through its undersigned counsel, hereby respectfully submits this motion (the "Motion"),

pursuant to Rules 9014 and 7037 of the Federal Rules of Bankruptcy Procedure and Rule 37 of

the Federal Rules of Civil Procedure, to compel plan proponents Angelo, Gordon & Co., L.P.

("Angelo Gordon") and Oaktree Capital Management, L.P. ("Oaktree"), and Hennigan, Bennett

& Dorman LLP ("HBD"), counsel to Angelo Gordon and Oaktree, to produce documents.  In

support of its Motion, Law Debenture respectfully states as follows:

### PRELIMINARY STATEMENT

Law Debenture brings this motion to compel to combat Angelo Gordon, Oaktree, and

HBD's flagrant disregard for their discovery obligations.  Angelo Gordon and Oaktree insist that

the Debtor/Committee/Lender Plan they support was the result of an arm's length process and

represents the best interests of the estate. If this is so, if negotiations of the plan have been unbiased and exercised in good faith, if there has been no pressure exercised on other voting parties in the case, then why do Angelo Gordon, Oaktree, and HBD insist on a shroud of secrecy? Their bitter fight to preclude discovery into patently relevant areas of inquiry is a clear attempt to shield their wrongdoing from this Court. Angelo Gordon and Oaktree, by virtue of their prominent roles in this case, have an unmitigated duty to comply with discovery. This Court should not allow Angelo Gordon and Oaktree to frustrate the discovery process and evade their obligations. If there is really nothing for Angelo Gordon and Oaktree to hide, then there should be no complaints about providing full and complete discovery as certain other parties have endeavored to do.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and Rule 37 of the Federal Rules of Civil Procedure ("FRCP"), as made applicable to these Chapter 11 Cases by Rules 9014 and 7037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.      The Bankruptcy History

2.      On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2

3.      The Debtors have remained in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On December 9, 2010, the Court entered an *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief* (the "Solicitation Order"). The Solicitation Order was modified on December 16, 2010 [Docket No. 7215].

6.      Following the entry of the Solicitation Order (as amended), solicitation commenced with respect to the three competing plans (collectively, the "Plans") being considered as follows:

- Joint Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Noteholder Plan"), dated December 9, 2010;

3

- Joint Plan of Reorganization proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A (the "Debtors/Committee/Lender Plan"), dated December 8, 2010; and

- Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P., and Marathon Asset Management, L.P. (the "Bridge Lender Plan"), dated December 7, 2010.

7.     On December 20, 2010, the Court entered a Discovery and Scheduling Order for Plan Confirmation, scheduling the confirmation hearing to begin on March 7, 2011 ("CMO") [Docket No. 7239].

8.     Paragraph 14 of the CMO provides, in pertinent part, that "[w]ith respect to any discovery dispute that may arise, the Parties to the dispute(s) shall meet and confer within (3) business days of any Party's request for such a meet and confer conference."

9.     While the remainder of paragraph 14 provided for a mechanism to bring unresolved disputes to the Court's attention, during a telephonic hearing on January 10, 2011, the Court instructed that in light of the limited time available prior to the commencement of the confirmation hearing, the parties should initiate motion practice to resolve any remaining disputes. (*See* Hrg. Trans., dated January 10, 2011, at 30-31, Ex. 1).[1]

## B.     The Parties' Meet and Confer Efforts

10.     On December 17, 2010, Law Debenture served its first request for the production of document requests on Angelo Gordon and Oaktree, proponents of the Debtors/Committee/Lender Plan, and on HBD, Angelo Gordon and Oaktree's counsel[2] (collectively, the "Requests"). The Requests target relevant documents concerning, among other

---

[1] Submitted herewith in support of the motion is the Declaration of Garvan F. McDaniel, dated January 14, 2011, and accompanying exhibits, which are cited herein as "Ex.__."

[2] While HBD is counsel to Angelo Gordon and Oaktree with respect to the Debtors/Committee Lender Plan, it is only counsel to Oaktree with respect to the Requests.

4

things: (i) the viability of the claims arising from the leveraged buy-out of Tribune ("LBO"); (ii) the settlement of such claims; (iii) the circumstances surrounding the negotiations of the Plans and settlements proposed and reached (or abandoned, as the case may be); (iv) any evidence that pressure was applied between the parties to gain their assent and acquiescence, which could support a motion for a designation of votes; and (v) the feasibility of the implementation of the Plans. The Requests are specifically tailored to obtain evidence that is necessary for the Court to determine whether the Debtors/Committee/Lenders Plan is confirmable.

11.    Pertinent to the instant Motion, Requests Nos. 1 through 22 served on Angelo Gordon and Oaktree and Requests 1 through 10 served on HBD sought documents concerning the relationships among and between Angelo Gordon, Oaktree, Tribune, the settling parties, and the members of the special committee for the last ten years. (*See* Law Debenture's First Request for Production of Documents to Angelo Gordon ("Angelo Gordon Requests"), Ex. 2; Law Debenture's First Request for Production of Documents to Oaktree ("Oaktree Requests"), Ex. 3; Law Debenture's First Request for Production of Documents to HBD ("HBD Requests", Ex. 4). Requests Nos. 89 through 94 served on Angelo Gordon and Oaktree call for FCC-related documents concerning their ownership interests in broadcast, newspapers and publishing entities (collectively, the "Media Entities"). (Angelo Gordon Requests, Ex. 2; Oaktree Requests, Ex. 3). The Requests seek information, unless otherwise specified, from the period of January 1, 2007 through December 17, 2010. (*Id.* at Instruction No. 3).

12.    Pursuant to the parties' agreement, on December 24, 2010, Oaktree and HBD sent an email detailing the search parameters, custodians, and search terms they would employ for their electronic search ("Oaktree/HBD Proposed Search Terms"). (*See* Oaktree/HBD Proposed Search Terms, Ex. 5). Similarly, on December 27, 2010, Angelo Gordon sent Law Debenture its

5

search parameters, custodians, and search terms ("Angelo Gordon's Proposed Search Terms"). (*See* Angelo Gordon's Proposed Search Terms, Ex. 6).

13.    In response to these proposed search terms, Law Debenture sent counter-proposals to Oaktree/HBD and Angelo Gordon on December 31, 2010 regarding the appropriate search methodology and search terms that should be employed to collect responsive documents (respectively, "Oaktree/HBD Search Term Counter-Proposal" and "Angelo Gordon Search Term Counter-Proposal"). (*See* Oaktree/HBD Search Term Counter-Proposal, Ex. 7; Angelo Gordon Search Term Counter-Proposal, Ex. 8).

14.    On January 3, 2011, Angelo Gordon served its objections and responses to the Requests ("Angelo Gordon's Objections"), and, on January 4, 2011, Oaktree and HBD served their objections and responses to the Requests ("Oaktree's Objections" and "HBD's Objections," respectively). (*See* Angelo Gordon's Objections, Ex. 9; Oaktree's Objections, Ex. 10; HBD's Objections, Ex. 11). While all of the parties were willing to search for and produce some documents regarding analysis of the settlements, they outright refused to produce, among other things, (i) documents concerning the relationships between the parties, (ii) documents related to ownership interests of Angelo Gordon and Oaktree in the Media Entities and (iii) documents relating to the FCC approval process. (*Id.*). In addition, Angelo Gordon unilaterally limited the timeframe of the requests (a majority of which sought information beginning in January 1, 2007) to May 21, 2010 through December 15, 2010. (*See* Angelo Gordon's Objections, Ex. 9). Oaktree and HBD refused to produce any documents prior to December 15, 2009. (*See* Oaktree's Objections, Ex. 10; HBD's Objections, Ex. 11).

15.    Following receipt of Angelo Gordon's Objections, Oaktree's Objections, and HBD's Objections, Law Debenture attempted to meet and confer to avoid unnecessary motion

practice and bridge the parties' differences. (*See* Declaration of Matthew Stein ("Stein Decl."), ¶ 6). By separate emails, each dated January 9, 2011, Law Debenture addressed Angelo Gordon's Objections, Oaktree's Objections, and HBD's Objections, and offered to compromise and limit the scope of some of its Requests (collectively, the "January 9, 2011 Emails"). (*See* January 9, 2011 Emails, Exs. 12-13).

16.     On January 11 and 12, 2011, Law Debenture, Angelo Gordon, Oaktree, and HBD met and conferred regarding the discovery disputes. (Stein Decl., ¶ 8). During the meet and confer, Law Debenture agreed to accept a chart of the holdings of Angelo Gordon and Oaktree in lieu of a production relating to Angelo Gordon's and Oaktree's interests in Tribune and discussed a narrower search term list of 66 terms that were previously circulated on January 8, 2011 ("Law Debenture's Search Term Counter-Proposal"). (*See* Law Debenture's Search Term Counter-Proposal, Ex. 14; Stein Decl., ¶ 9). While the parties were able to reach a compromise on the requests relating to Angelo Gordon's and Oaktree's economic interests in Tribune, they refused to waiver on their previous positions and produce three important categories of responsive documents: (i) documents prior to May 21, 2010 with respect to Angelo Gordon and prior to December 15, 2009 with respect to Oaktree and HBD; (ii) documents concerning the parties' relationships; and (iii) documents relating to Angelo Gordon's and Oaktree's ownership in the Media Entities as well as to the FCC approval process.[3] (Stein Decl., ¶ 10).

---

[3] During the January 12, 2011 meet and confer call, counsel for Angelo Gordon, Oaktree, and HBD were informed that Law Debenture was fully prepared to address the FCC-related discovery dispute as it had its FCC counsel on the call. However, the parties claimed that they were unprepared to deal with those issues during that call but would schedule another call for a later date to deal with the FCC discovery dispute. (Stein Decl., ¶ 17). In light of the upcoming motion deadlines, Law Debenture's counsel made clear on that call that it would seek appropriate relief from the court to the extent any discovery issues remained unresolved. (Stein Decl., ¶ 18). To date, neither Angelo Gordon's counsel nor counsel for Oaktree (HBD) have scheduled a meet and confer to address the FCC-related discovery. (Stein Decl., ¶ 19).

2187717v12

17.    Additionally, at the meet and confers, Angelo Gordon, Oaktree, and HBD could not agree to Law Debenture's Search Term Counter-Proposal.  Counsel for Angelo Gordon said that it may be willing to use some additional search terms to collect responsive documents. (Stein Decl., ¶ 11).  However, Angelo Gordon refused to use the basic search term "TRB," a common and often used abbreviation for the Debtors, or affirmatively demonstrate why the other key search terms on the Counter-Proposal could not be used in locating responsive documents, especially in light of their admission that they had searched for "TRB" in connection with a prior production.  (Stein Decl., ¶ 11-12).

18.    Even more egregious, during the meet and confers, Oaktree and HBD insisted on using specific domain name restrictions to improperly limit the potential sources and recipients of relevant emails.  (Stein Decl., ¶ 13).  Thus, if Oaktree and HBD had relevant communications with a third party that was not identified on the domain name list, those documents would be excluded from the production based on their search methodology.  Restricting searches to domain names in the manner Oaktree and HBD propose is a blatant attempt to prevent full and complete disclosure of Oaktree's and HBD's communications with unknown parties.  Further, Oaktree and HBD excluded the most significant search terms from their list:  "Tribune," "Trib" and "TRB."  (Stein Decl., ¶ 13).  How could Oaktree and HBD ever possibly claim they endeavored to do a good faith search for all responsive documents when they are missing fundamental terms, such as Tribune?  Law Debenture and Aurelius are running these very searches even though a significant number of documents will result from that search.  When this point was raised with Oaktree and HBD during the meet and confer, they claimed they would reconsider their position and run test searches using the terms "Tribune," "Trib" and "TRB" to determine the number of documents that would be pulled from that search.  (*Id.*).  This too is an

8

untenable position. Even if those search terms result in a large universe of documents, Oaktree, a plan proponent in this case, has no excuse to disregard its discovery obligations. It cannot simply cast aside its duty to produce relevant documents and search for terms that are highly likely to produce discoverable documents by claiming that it was <u>too involved</u> in the case and has <u>too many</u> documents to review. Certainly, Law Debenture and Aurelius have not dispensed with their obligations due to the voluminous number of documents they must review.

19.     While the parties held a final meet and confer on January 13, 2011, they agreed that no further progress was possible. (Stein Decl., ¶ 19). To date, Oaktree and HBD have neither committed to perform searches with additional terms nor have they responded to the Search Term Counter-Proposal as they promised to do on January 11, 2011. (Stein Decl., ¶ 13).

20.     The efforts of Angelo Gordon, Oaktree, and HBD to delay and stall commencing their use of appropriate search terms is a deplorable tactic designed to run out the clock on Law Debenture. This critical discovery is desperately needed by Law Debenture and time is running out before the confirmation hearing.

21.     Because the parties have been unable to fully resolve their discovery disputes after several unsuccessful meet and confer conferences, Law Debenture moves this Court to compel Angelo Gordon, Oaktree, and HBD to produce these categories of documents in compliance with the date ranges set forth in the Requests and to adopt Law Debenture's Search Term Counter-Proposal in locating their responsive documents.

## ARGUMENT

### I.    Legal Standards

22.     Rules 9014 and 7026 of the Federal Rules of Bankruptcy Procedure dictate that Federal Rule of Civil Procedure 26 applies in contested matters in bankruptcy court. Rule 26

provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) (holding that it was an abuse of discretion to deny plaintiff's relevant discovery requests); *see also Falkenberg Capital Corp. v. Dakota Cellular*, 1998 U.S. Dist. LEXIS 13456, at *12 (D. Del. 1998) (finding it "axiomatic that the discovery rules . . . be construed liberally in favor of the party seeking discovery") (internal citations omitted); *Marshall v. Elec. Hose & Rubber Co.*, 68 F.R.D. 287, 295 (D. Del. 1975) (finding that "delineating the boundaries of appropriate discovery can be challenging and difficult, [yet] discovery will be permitted unless it is clear that the information sought can have no possible bearing upon the subject matter of the action") (internal citations omitted). Further, in the context of a bankruptcy proceeding, "wide-ranging" discovery has been permitted and is encouraged in preparation for a confirmation hearing. *See In re Int'l Wireless Commc'ns Holdings, Inc.*, 1999 Bankr. LEXIS 1853, at *8 (Bankr. D. Del. Mar. 26, 1999); *see also In re Molina*, 420 B.R. 825, 831 (Bankr. D. N.M. 2009) ("[A] court might well deny for bad faith confirmation of a plan of a debtor who refuses to comply with legitimate discovery requests, on the grounds that the debtor's conduct directly contravenes the overarching principles of transparency and disclosure that inhere in the bankruptcy process").

23.     Rules 9014 and 7037 of the Federal Rules of Bankruptcy Procedure instruct that Fed. R. Civ. P. 37 governs motions to compel discovery in contested proceedings in bankruptcy court. Rule 37 of the Federal Rules of Civil Procedure contemplates motions to compel where parties fail to meet their discovery obligations. Parties will prevail on their motions to compel where they complied with the federal rules in furnishing their discovery requests, and the

10

responding party was deficient in its response. *See, e.g., SWIMC, Inc. v. Hy-Tech Thermal Solutions, LLC*, 2009 U.S. Dist. LEXIS 53528, at *6-9 (D. Del. 2009) (granting motion to compel response to interrogatories and document requests); *Marshall*, 68 F.R.D. at 295 (compelling discovery where it was merely "conceivable that it might have a bearing upon the subject matter of this action"). In the era of electronic discovery, it is the producing party's responsibility to objectively demonstrate that it complied with its ESI discovery obligations. *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 269 F.R.D. 493, 494 (W.D. Pa. 2010); *Smith v. Life Investors Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 58261, at *20 (W.D. Pa. July 9, 2009) (stating that the producing party "has a burden to demonstrate that its search for documents was reasonable"); *see generally Susquehanna Commercial Fin., Inc. v. Vascular Resources, Inc.*, 2010 U.S. Dist. LEXIS 127125, at *4 (M.D. Pa. Dec. 1, 2010) (directing "[p]laintiff to provide a full and detailed explanation regarding the specific efforts undertaken to comply with the discovery that has been propounded").

## II.    The Parties Cannot Arbitrarily Select Which Relevant Discovery They Want To Produce

24.    Angelo Gordon has unilaterally proclaimed that it will not adhere to the date range in the Requests, refusing to produce any documents prior to May 21, 2010. Oaktree and HBD refuse to provide any discovery prior to December 15, 2009. These arbitrary cut-off dates run *directly afoul of this Court's prior ruling on Debtor's Contours motion allowing targeted discovery concerning the LBO.* (December 6, 2010 Transcript of Proceedings, Ex. 15 at 100:2-4, 110:22-111:3). More significantly, they preclude any discovery during the initial year (a year and a half with respect to Angelo Gordon) that these Chapter 11 Cases have been pending without any justification. As such, Law Debenture is entitled to discovery since the Petition Date relating to the LBO and other matters concerning the confirmation hearing.

11

25.     The arbitrary cut-off dates appear to be specifically intended to shield relevant

documents from discovery.  For instance, when asked during the January 12, 2011 meet and

confer session why the documents could not be produced in the earlier period, Angelo Gordon

agreed with Oaktree's position that information prior to when the Document Depository Order

was instituted is irrelevant. (Stein Decl., ¶ 15).  Oaktree and Angelo Gordon further claimed that

searching the pre-December 2009 time period for documents concerning causes of action arising

out of the LBO ("LBO Causes of Action") would be irrelevant since documents were not made

available to the parties pursuant to the Depository Order date. (Stein Decl., ¶ 15).  This

statement is patently false as documents were produced to Law Debenture months prior to the

entry of the Document Depository Order.  *See Order Approving Stipulation as Between the*

*Debtors', the Unsecured Creditors' Committee, J.P. Morgan Chase Bank, N.A., Citigrouop*

*Global Markets, Inc., Merrill Lynch Capital Corporation, Merrill, Lynch, Pierce, Fenner &*

*Smith, Inc., Morgan Stanley & Co., Inc., Valuation Research Corporation, Robert R. McCormick*

*Foundation, Cantigny Foundation and Law Debenture Trust Company of New York, Law*

*Debenture's Motion For Leave To Conduct Discovery Pursuant to Rule 2004 of the Federal*

*Rules of Bankruptcy Procedure, or Alternatively, the Appointment of an* Examiner, dated

September 25, 2009 [Dkt. No. 2235].

26.     Moreover, Oaktree's and Angelo's explanation for withholding documents prior

to December 2009 and somehow tying the date of HBD's and Oaktree's production to the

Document Depository Order date is illogical and ignores the litany of other potential documents

they have in their possession – which have absolutely nothing to do with their views of the

claims.  For example, if the parties have documents in their possession showing the lenders'

knowledge about the insolvency of Tribune, collusive behavior among the plan proponents

12

and/or the ability of certain parties to direct a plan that would benefit them to the detriment of the estate, all such documents are discoverable. The Court should prohibit Angelo Gordon, Oaktree, and HBD from blocking the disclosure of these critical documents by arbitrarily choosing the date range of its production.

27.     Angelo Gordon and Oaktree – plan proponents with a vested interest in the Debtors/Committee/Lender Plan – and HBD must comply with their discovery obligations and cannot unilaterally limit the scope of discovery to avoid producing relevant information. *See Francis v. BIC Corp.*, 869 F.2d 194, 202 (3d Cir. 1989) (rejecting attempt to preclude discovery of relevant information based on time limitations); *Dow Corning Corp. v. BB&T Corp.*, 2010 U.S. Dist. LEXIS 124031, at *30-31 (D. N.J. Nov. 23, 2010) (refusing to restrict discovery even after holding that only claims limited to a specific time period may proceed); *Harris v. Harley-Davidson Motor Co. Operations, Inc.*, 2010 U.S. Dist. LEXIS 119311, at *6-7 (M.D. Pa. Nov. 10, 2010) (rejecting defendant's efforts to restrict temporal scope of discovery); *Dennis Joslin Co., LLC v. Yoffe*, 2003 U.S. Dist. LEXIS 6578, at *4-5 (E.D. Pa. Mar. 24, 2003) (holding that the statute of limitations does not restrict discovery where there is relevant evidence preceding the statutory period).

28.     Furthermore, Angelo Gordon's unsubstantiated representation about the comprehensiveness of its prior production cannot be the basis for withholding responsive documents prior to December 2009. *See New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*, 2000 U.S. Dist. LEXIS 531, at *16 (E.D. Pa. Jan. 13, 2000) (ordering further discovery so that plaintiff could "test the veracity of defendants' assertions that they have produced all the documents they were required to produce"). This Court has recently instructed that Law Debenture is entitled to "test" parties' representations that they have no responsive documents.

(*See* Hrg. Trans., dated January 10, 2011, at 30-31, Ex. 1). During the January 11, 2011 meet and confer session, Angelo Gordon claimed that one of the reasons the date limit was imposed was because it made a prior production. (Stein Decl., ¶ 14). However, despite Law Debenture asking Angelo Gordon to detail its search and collection efforts for that prior production, Angelo Gordon did not provide any information about the date ranges, search parameters and methodology it employed. (*Id.*). Consequently, Angelo Gordon has not met its burden of affirmatively showing it complied with its discovery obligations for its prior production. *See Susquehanna Commercial Fin., Inc.* 2010 U.S. Dist. LEXIS 127125, at *4 (directing "Plaintiff to provide a full and detailed explanation regarding the specific efforts undertaken to comply with the discovery that has been propounded"); *Smith,* 2009 U.S. Dist. LEXIS 58261, at *20 (stating that the producing party "has a burden to demonstrate that its search for documents was reasonable"); *Labadie v. Dennis,* 2008 U.S. Dist. LEXIS 103754, at *4 (W.D. M.I. Dec. 23, 2008) (ordering Plaintiff to complete outstanding production having failed to demonstrate compliance with Plaintiff's discovery obligation or advance any reasonable excuse for this failure).

29.    Moreover, absent detailed information about Angelo Gordon's first production, Law Debenture cannot confirm that production was adequate and complete. *Medical Tech., Inc. v. Breg, Inc.*, 2010 U.S. Dist. LEXIS 100063, at *11 (E.D. Pa. Sept. 21, 2010) (ordering further discovery "not only to supplement" Plaintiff's original production but "also to test the veracity of [Plaintiff's] assertions that they have produced all the documents they are required to produce"). Thus, Angelo Gordon, along with Oaktree and HBD, should be directed to produce responsive documents and communications in accordance with the timeframe set forth in the Requests.

14

III.    **Angelo Gordon, Oaktree, and HBD Are Obligated To Produce Relevant Documents**

    A.    **Documents Concerning Party Relationships**
             **Are Relevant And Must Be Produced**

    30.    As discussed above, Request Nos. 1 through 22 of the Angelo Gordon Requests

and the Oaktree Requests as well as Request Nos. 1 through 10 of the HBD Requests ask for all

documents concerning the relationships among and between Angelo Gordon, Oaktree, Tribune,

the settling parties, and the members of the special committee.  These documents are directly

relevant as they will assist the Court in evaluating whether Angelo Gordon and Oaktree

supported the plan in good faith, if prior relationships biased their decision-making, or if their

relationships influenced parties' support of the plan or the terms of the plan. *See In re Exide*

*Techs.*, 303 B.R. 48, 67-68, 71 (Bankr. D. Del. 2003) (criteria for approving settlement in the

context of a proposed plan includes "the extent to which [it] is truly the product of 'arms-length'

bargaining, and not of fraud or collusion"); *In re Adelphia Commc'ns*, 327 B.R. 143, 165 (Bankr.

S.D.N.Y. 2005) (in analyzing proposed settlement under Rule 9019, arms-length bargaining is a

relevant consideration — one which the court would give great weight to "if [it] ever thought it

had not been satisfied"); *Sound Radio, Inc. v. WNJR Radio 1430*, 93 B.R. 849, 853 (Bankr. D.

N.J. 1988) (affirming that the good faith of the plan proponents is part of a bankruptcy court's

inquiry when evaluating competing plans); *In re Lyondell Chem. Co.*, Case No. 09-10023

(Gerber, J.), January 7, 2010 Tr. at 14-15 (directing discovery of settlement communications

between debtors and senior lenders, even after the date a settlement in principal was reached,

because "I need to have total comfort that the settlement [of fraudulent transfer claims] was at

arms' length and wasn't collusive.  And communications between the debtors and [senior

lenders] at any time . . . are at least potentially relevant" in 9019 proceeding).

31.     Under Section 1129(a)(3) of the bankruptcy code, courts can only confirm plans

proposed in good faith. *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)

("Section 1129(a)(3) provides that the court shall confirm a plan only if "'the plan has been

proposed in good faith and not by any means forbidden by law'"); *In re ACandS, Inc.*, 311 B.R.

36, 42-43 (Bankr. D. Del. 2004) (evaluating the totality of the circumstances surrounding the

plan, the bankruptcy court denied confirmation of debtor's plan of reorganization finding that

"the plan was largely drafted by and for the benefit of the prepetition committee").   Where

parties have engaged in bad faith conduct, courts have designated votes and have refused to

confirm plans otherwise approved by creditors. *See, e.g., In re Allegheny Int'l, Inc.*, 118 B.R.

282 (Bankr. W.D. Pa. 1990) (granting motion to designate and finding bad faith where a party's

motives were unrelated to its interest as a creditor); *see generally In re Gulph Woods Corp.*, 83

B.R. 339 (Bankr. E.D. Pa. 1988) (enjoining Debtor from communicating with creditors where

voter manipulation was feared).

32.     In assessing bad faith, courts undertake a fact-intensive inquiry looking at a

totality of the circumstances. *See In re Combustion Eng'g Inc.*, 391 F.3d 190, 242, n55 (3d Cir.

2004).   Here, our Requests were designed specifically to uncover documents relevant to the

Court's fact-intensive inquiry, and to determine whether Angelo Gordon and Oaktree engaged in

any bad faith conduct warranting vote designation or other relief.

33.     While Law Debenture is sensitive to the burdens of discovery and has offered to

consider narrowing the scope of these Requests, Angelo Gordon, Oaktree, and HBD have shown

no willingness whatsoever to produce any such documents.   Oaktree and HBD have never

committed to searching anything other than domain names with respect to their external

communications rather than running search terms.   This is severely problematic as it requires

16

knowledge of those individuals whom Oaktree and HBD communicated with - a fundamental

purpose of discovery itself. Strikingly, even the proposed list of domain names is deficient,

omitting the domain names of Oaktree's co-Credit Agreement Lenders (other than Angelo

Gordon).[4] As relevancy is broadly construed in the Third Circuit (*see Inventio AG v.

Thyssenkrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009)), Angelo

Gordon, Oaktree, and HBD are obligated to produce documents relevant to whether the

settlement reached among the parties encompassed within the Debtors/Committee/Lender Plan

was fair and equitable. *See Exide*, 303 B.R. at 71 (citing absence of arms-length bargaining as a

reason to reject the proposed settlement); *In re Spansion, Inc.*, 2009 Bankr. LEXIS 128, at *13-

14 (Bankr. D. Del. June 2, 2009) (rejecting settlement where, inter alia, the person negotiating

for the debtor failed to obtain legal advice regarding the strength of the subject claims before

agreeing to a settlement); *Gillman v. Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000)

(holding that non-debtor releases must exhibit "the hallmarks of permissible non-consensual

releases -- fairness, necessity to the reorganization, and specific factual findings to support these

conclusions."); *see also In re Saxby's Coffee Worldwide, LLC*, 436 B.R. 331, 336 (Bankr. E.D.

Pa. 2010) (rejecting a plan that included a release which did not receive the support of the

majority of creditors who voted and did not provide for payment of substantially all of the claims

affected by the release). The parties' refusal to produce the very documents directed at obtaining

evidence of whether the Debtors/Committee/Lender Plan complies with Section 1129(a)(3)'s

good faith test is appalling.

---

[4]      This is especially brazen for HBD who continues to argue that the Non-Proponent Credit Agreement
Lenders should not produce communications with Oaktree and other third-parties since such documents are directly
obtainable from Oaktree and those other parties at the same time as their discovery plan seeks to shield such
communications.

B.      **Law Debenture Is Entitled To FCC-Related Discovery**

1.      **The FCC-Related Requests Are Directly**
        **Relevant to the Confirmation Hearing**

34.     Angelo Gordon and Oaktree improperly refuse to produce any documents or

communications relating to (i) their direct or indirect interest in other Media Entities, (ii) the

corporate/management structure of the Media Entities in which they have an interest and (iii) the

potential effect of these on the applications that Tribune will submit to the FCC for approval of

any confirmed Plan. (*See* Angelo Gordon's Responses to Request Nos. 89-94, Ex. 9; Oaktree's

Responses to Request Nos. 89-94, Ex. 10). The parties claim these requests circumvent the

procedures for objecting to the qualifications of a party before the FCC, and that they are neither

relevant nor calculated to lead to the discovery of admissible evidence. (*Id.*). Nothing could be

further from the truth. Debtors themselves, who are co-proponents with Angelo Gordon and

Oaktree of the Debtors/Committee/Lender Plan, have acknowledged the relevancy of FCC-

related discovery by requesting FCC-related documents from Law Debenture and its counsel.

(*See* Debtors' First Request for Production of Documents to Law Debenture No. 38, Ex. 16;

Debtors' Subpoena to Produce Documents to Kasowitz Benson Torres & Friedman LLP No. 44,

Ex. 17). Law Debenture and its counsel have agreed to produce non-privileged documents in

their possession, custody or control responsive to these requests.

a.      **The FCC-Related Requests Relate**
        **To The Feasibility Of The Plan**

35.     The Debtors/Committee/Lender Plan cannot be confirmed unless it satisfies the

feasibility requirement under Section 1129(a)(11) of the Bankruptcy Code. *See In re Cont'l*

*Airlines*, 91 F.3d 553, 563 (3d Cir. 1996); *see also In re The Leslie Fay Cos.*, 207 B.R. 764, 788

(Bankr. S.D.N.Y. 1997) (holding that the Bankruptcy Court is required to determine whether a

18

plan is workable and has a reasonable likelihood of success). The feasibility standard "requires courts to determine whether the Plan is feasible and has a reasonable likelihood of success." *In re G-1 Holdings, Inc.*, 420 B.R. 216, 267 (D.N.J. 2009) (citing *In re Am. Family Enters.*, 256 B.R. 377, 404 (D.N.J. 2000)); *In re The Leslie Fay Cos.*, 207 B.R. at 788; *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 226 (Bankr. D.N.J. 2000) ("Although the standards for determining feasibility are not rigorous,...the Bankruptcy Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success...). The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed. The purpose of the feasibility test is to protect against visionary or speculative plans. *See In re Congoleum Corp.*, 362 B.R. 198, 203 (Bankr. D.N.J. 2007) (the "purpose of the feasibility requirement...is to prevent the confirmation of visionary plans, but it does not demand irrefutable proof of success"); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

36.     A bankruptcy court, in evaluating the feasibility of a plan, will consider whether the plan proponents will have any impediments in obtaining the necessary regulatory approvals for the reorganized debtor. *See In re TCI 2 Holdings, LLC*, 428 B.R. 117, 154 (Bankr. D.N.J. 2010) ("To establish the feasibility of their plan, . . . the proponents of the AHC/Debtor Plan must also show that the new owners of the Reorganized Debtors will not face material hurdles to achieve the necessary regulatory approvals from the New Jersey Casino Control Commission . . . . The Beal/Icahn parties argue that there is substantial uncertainty about whether the AHC members will obtain licensure, or waiver of licensure or qualification requirements, from the Casino Control Commission"); *In re Sound Radio, Inc.*, 93 B.R. at 857 (in assessing whether the plan was feasible the court evaluated whether the necessary approvals from the FCC could be

19

timely obtained); *In re Cajun Elec. Power Coop.*, 230 B.R. 715, 747 (Bankr. M.D. La. 1999) (same).

37.     The FCC-related discovery directed at Angelo Gordon and Oaktree seeks evidence for purposes of determining whether the Debtor/Committee/Lender Plan is "speculative" and has any real prospects of success.  As the Debtors even concede in their disclosure statement – because the Debtors' business operations are subject to the regulation of the FCC – "their emergence from bankruptcy will require the consent of the FCC."  (*See* Debtors/Committee/Lenders Disclosure Statement ("Debtors' Disclosure Statement") at 38 [Dkt. 6091]).  Any substantial delay in the FCC approval process that may be caused by Angelo Gordon's or Oaktree's interests in other Media Entities is relevant to the feasibility of the Debtors/Committee/Lender Plan.

### b.     The Interests of Angelo Gordon and Oaktree Impact the FCC Approval Process

38.     As way of background, the FCC, in processing the Debtors' applications, will consider, among other things, whether the Reorganized Debtors and the parties receiving new common stock and/or new warrants under the plan (*i.e.* Angelo Gordon and Oaktree) will comply with the FCC-related ownership requirements and restrictions and will not impair the ability of the reorganized debtors (the "Reorganized Debtors" or "Reorganized Tribune") to obtain the FCC approval necessary to implement the plan.  (*See* Debtors' Disclosure Statement at 43).  Furthermore, Tribune is seeking waivers of several of the FCC's broadcast multiple and cross-ownership rules to permit continued ownership of combinations of television stations and daily newspapers or more than one television station in various markets.[5]  (*See* Joint Disclosure

---

[5] These markets include: New York, Los Angeles, Chicago, Miami, Indianapolis, and Hartford-New Haven.

20

Statement at 38-39 [Dkt. 7232]).  A coalition of public interest groups has opposed these waiver

requests.  (*See* Debtors Disclosure Statement at 51-52).

39.     In order to address potential FCC issues, each Plan requires any potential holder

of five percent (5%) or more of the voting stock of Reorganized Tribune to submit a Media

Ownership Certification ("Certification").  The Certification is supposed to contain information

about such holder and its affiliates to establish that the issuance of voting stock to such holder

would not result in a violation of law, impair the qualifications of Reorganized Tribune to hold

FCC broadcast licenses, or impede the grant of any FCC Applications.  (*See, e.g.*, Debtors

Disclosure Statement at 43).  Presumably because of the contentiousness of Tribune's FCC

waiver requests, the proponents of the Debtors/Committee/Lender Plan claim that "[n]o waivers

will be sought and no special showing will be submitted to accommodate separate media

interests of prospective stockholders independent of their interests in the Reorganized Debtors."

(Debtors Disclosure Statement at 41).

40.     Law Debenture has requested documents from Angelo Gordon and Oaktree on

FCC matters to determine whether their role in the Debtors/Committee/Lenders Plan will (1)

require a waiver from the FCC, (2) require a special showing to the FCC or (3) impede the grant

of the FCC Applications.  The FCC-related requests therefore directly relate to the feasibility of

the timely implementation of the Debtors/Committee/Lenders Plan.

41.     The pending FCC Applications provide that Angelo Gordon and Oaktree will

hold more than five percent (5%) of the voting stock and therefore will have an attributable

interest[6] in the Reorganized Tribune.  (*See* Excerpt from Pending Tribune Application Filed with

---

[6]   As the proponents of the Debtors/Committee/Lender Plan explain in their Disclosure Statement, the FCC's
multiple ownership and cross-ownership rules prohibit the common ownership of "attributable interests" in certain
combinations of broadcast and other media properties.  Debtors Disclosure Statement at 40.  The FCC has adopted
certain rules for determining whether an ownership, debt, positional or other interest is "attributable."  47 C.F.R. §

the FCC, dated August 2010, Ex. 18).  Also, the Debtors/Committee/Lenders Plan provides that

Angelo Gordon "shall have the sole right to designate one member of the initial board of

directors of Reorganized Tribune" and that "Oaktree, Angelo Gordon and JPMorgan shall have

the right to jointly designate two members of the initial board of directors of Reorganized

Tribune by majority consent of Oaktree, Angelo Gordon and JPMorgan (each of whom shall

have one vote)."  (Debtors/Committee/Lender Plan at 48).  The right of Angelo Gordon and

Oaktree to designate a director, standing alone, will cause them to have an attributable interest in

Tribune.  *See Telemundo Communications Group, Inc.*, 17 FCC Rcd 6958, 6972-73 ¶ 39 (2002).

By virtue of their having an attributable interest in Tribune, ownership or other interests that

Angelo Gordon and Oaktree may have in other Media Entities may create issues under the

FCC's multiple ownership and cross-ownership rules.  Even more importantly, the interests of

Angelo Gordon and Oaktree in other Media Entities may affect the FCC's decision on whether to

grant waivers of the ownership rules for Tribune.

42.    Because Law Debenture does not know the extent of Angelo Gordon's and

Oaktree's interests in other broadcast stations and newspapers independent of their prospective

interest in Tribune, Law Debenture seeks to obtain this pertinent information directly from the

plan proponents who possesses such information – Angelo Gordon and Oaktree.  Certain public

sources indicate that the interests of Angelo Gordon and Oaktree – which *have not been*

*disclosed in the FCC applications* – are significant and may require either a waiver from the

FCC, a special showing to the FCC or impede the grant of the FCC Applications.  In particular,

---

73.3555 Note 2.  The purpose of the attribution rules, however, is "to identify the interests or relationships to licensees that confer on their holders a degree of influence or control such that the holders have a realistic potential to affect the programming decisions of licensees or other core operating functions."  *Review of the Commission's Regulations Governing Attribution of Broadcast and Cable/MDS Interests*, 14 FCC Rcd 12559, 12560 (1999). Therefore, the FCC "retain[s] the discretion to review individual cases that present unusual issues on a case-by-case basis where it would serve the public interest to conduct such a review."  *Id.* at 12581.

Angelo Gordon's interest in Freedom Communications and The Philadelphia Inquirer may

impact FCC approval for the Reorganized Tribune. Oaktree's interests in Townsquare Media,

LLC and Liberman Broadcasting, Inc. may also impact FCC approval for the Reorganized

Tribune.

43.    According to articles from several publications, including Chicago Tribune,

Orange County Register, Orange County Business Journal and TVNewsCheck, Angelo Gordon

acquired a 45% interest in Freedom Communications in April 2010. (*See* Michael Oneal, *When*

*Bankers Start the Pre$$es*, Chicago Tribune, June 6, 2010, § C, at 1, Ex. 19; Mary Ann

Milbourn, *Register's Owner Exits Bankruptcy*, Orange County Register, May 1, 2010, Business,

at D, Ex. 20; Murray Coleman, *Distressed Investor Grabs Stake in Register Parent*, Orange

County Business Journal, April 4, 2010, Ex. 21; Price Coleman, *Freedom Seeking $500 Million*

*for TV Group*, TVNewsCheck, November 17, 2010, Ex. 22). Freedom Communications, like

Tribune, is a broadcast/newspaper company that operates television stations or publishes

newspapers in some of the same markets as Tribune. Freedom Communications owns the

following entities that overlap with Tribune's market presence:

- The *Orange County Register*, which is a daily newspaper in the Los Angeles market, where Tribune is requesting a waiver of the FCC's broadcast/newspaper cross-ownership rule. (*See* Mary Ann Milbourn, *Register's Owner Exits Bankruptcy*, Orange County Register, May 1, 2010, Business, at D, Ex. 20).

- A *television* station in West Palm Beach, Florida, which serves the same area as Tribune's *South Florida Sun Sentinel*. (*See* Joint Disclosure Statement at 11). Tribune is seeking a waiver of the FCC's broadcast/newspaper cross-ownership rule in order to retain the *South Florida Sun Sentinel* and its Miami television station.

- A *television* station in the Kalamazoo, Michigan market, where Tribune also owns a television station. (*See* Price Coleman, *Freedom Seeking $500 Million for TV Group*, TVNewsCheck, November 17, 2010, Ex. 22). An attributable ownership interest in both television stations is not permitted under the FCC's rules. 47 C.F.R. § 73.3555(b). *See also* Debtors Disclosure Statement at 42.

23

44.     Of significance, Angelo Gordon's interest in Freedom Communications *has not been disclosed to the FCC in the FCC application.* To the contrary, Tribune has represented to the FCC that the Freedom Communications' Orange County Register is an independently owned newspaper that competes with Tribune in the Los Angeles market. (*See* Excerpt from Waiver Request in Pending Tribune Application Filed with the FCC, Ex. 23).

45.     Additionally, Angelo Gordon acquired a significant interest in The Philadelphia Inquirer in October 2010 out of a bankruptcy proceeding, which could conflict with Tribune's ownership of a television station in Philadelphia. (*See* Jonathan Stempel, *Philadelphia Newspapers Win Bankruptcy Plan OK*, Reuters, June 28, 2010, Ex. 24; Christopher K. Hepp, *New Owners Take Control of Inquirer*, The Philadelphia Inquirer, October 9, 2010, § A, at 1, Ex. 25; Christopher K. Hepp and Joseph A. Slobodzian, *Senior Lenders Again Buy Philly Newspaper Company*, September 24, 2010, § A, at 1, Ex. 26; David Carr, *Defending the Papers He Fought*, The New York Times, April 12, 2010, § B, at 1, Ex. 27). For instance, cross-ownership by Angelo Gordon in both *The Philadelphia Inquirer* and Tribune's television station in the Philadelphia market would violate the FCC's broadcast/newspaper cross-ownership. 47 C.F.R. § 73.3555(d); *see also* Debtors Disclosure Statement at 41-42.

46.     These are only a few examples – gleaned from public records – of how Angelo Gordon's interests in other Media Entities may impact the ability to obtain timely FCC approval and therefore the confirmability of the plan. The documents in Angelo Gordon's possession may shed even greater light on its FCC-related ownership issues and therefore must be produced.

47.     Similarly, Law Debenture does not know the extent of Oaktree's interests in other Media Entities independent of its prospective interest in Tribune. The FCC Applications, however, disclose that Oaktree controls Townsquare Media, LLC, which owns numerous radio

24

stations, and holds approximately 25% of Liberman Broadcasting, Inc., which owns radio and television stations in the Los Angeles, Houston, Dallas and Denver markets, where Tribune also owns television stations and/or newspapers. (*See* Excerpt from Pending Tribune Application Filed with the FCC, Ex. 18).

48.    The FCC Application indicates that Oaktree plans to make its interest in Liberman Broadcasting non-attributable. (*Id.*). One basis for Tribune's request for a waiver of the broadcast/newspaper cross-ownership rule in the Los Angeles market is the number of competing media outlets in that market. The FCC Application does not address how Oaktree's interest, through Liberman Broadcasting, in one television station and six radio stations in the Los Angeles area will affect Tribune's request for a waiver. Therefore, the Requests are critical to shed light on Oaktree's FCC-related ownership issues.

### 2.    Law Debenture Cannot Obtain The Requested FCC Information From Public Sources And Is Entitled To Test The Veracity Of Angelo Gordon's and Oaktree's Contentions

49.    Oaktree has refused to produce information pertaining to the FCC-related requests on the grounds that they seek information that is publicly available or that will be provided in the Certifications to be filed by January 16, 2011. (*See* Oaktree's Responses to Request Nos. 89-94, Ex. 10). As an initial matter, because the Certifications may not contain all of the information that is relevant to the FCC application process, particularly the waivers that Tribune has requested, and the information omitted from the Certification is not publicly available, Law Debenture is entitled to obtain this information from Angelo Gordon and Oaktree.

50.    While Angelo Gordon, Oaktree, and others parties that may potentially acquire an attributable interest in Reorganized Tribune will be submitting Certifications to the Debtors specifying their interest in the Media Entities, the Certifications are not subject to strict scrutiny

25

and only contain the responsive information Angelo Gordon and Oaktree are willing to provide. The Requests at issue are intended to obtain the underlying documents supporting the statements contained in the Certifications. In the absence of such information, Law Debenture has no way of testing the veracity of the statements contained in the Certifications, or obtaining the necessary information to determine whether the plan is feasible. *See Lowther v. Insley (In re Insley)*, 322 B.R. 272, 276 (Bankr. W.D. Pa. 2005) (allowing discovery where the plaintiff questioned the veracity of the debtor's statements regarding financial matters); *Shapiro v. Nu-West*, No. 15442, 1998 Del. Ch. LEXIS 190, at *15 (Del. Ch. Oct. 1, 1998) (ordering the plaintiff to respond to the defendant corporation's interrogatory requests, explaining that the defendant need not accept the plaintiff's answer to the requests as true and "should have the opportunity to test its veracity" and therefore "is entitled to the discovery requested in order to verify the truth" of the plaintiff's answer). As discussed above, because Angelo Gordon and Oaktree have not fully disclosed their substantial interests in the Media Entities to the FCC, Law Debenture cannot rely upon their representation that their interests will not impact the FCC approval process. Given that Angelo Gordon and Oaktree are parties who are the sole sources possessing this highly relevant information, they should be compelled to comply with the FCC-related requests.

### 3.    This Court Should Reject The Baseless Objections of Angelo Gordon and Oaktree for Withholding Relevant Information

51.    As a last ditch effort to withhold material and relevant information that is necessary for the Court to decide whether the proposed plan can be confirmed, Angelo Gordon and Oaktree essentially claim such information is unnecessary because compliance with ownership rules has been effectively waived by Law Debenture. In particular, Angelo Gordon and Oaktree claim a waiver has resulted because the Noteholders Plan incorporates the same procedures as the Debtors/Committee/Lender Plan to ensure compliance with FCC ownership

26

rules. (*Id.*). That certainly is not the case. First, the Debtors/Committee/Lender Plan provides that Angelo Gordon and Oaktree specifically will have the right to designate an initial director of Reorganized Tribune. The Noteholders Plan does not. (*See* First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed By the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. at 48 [Dkt. 7136]). Second – unlike the Noteholders Plan – the Debtors/Committee/Lender Plan apparently contemplates that Angelo Gordon and Oaktree will hold an attributable interest in Reorganized Tribune. (*See* Excerpt from Pending Tribune Application Filed with the FCC, dated August 2010, Ex. 18).

52.     Lastly, Angelo Gordon and Oaktree object to producing these FCC-related documents citing concerns that they contain confidential and proprietary information. (*See* Angelo Gordon's Responses to Request Nos. 89-94, Ex. 9; Oaktree's Responses to Request Nos. 89-94, Ex. 10).   However, because the exchange of confidential information is protected by the Document Depository Order in place in this case, their concerns are not justified.  Third Circuit courts regularly hold that the existence of a valid confidentiality agreement obviates the need for a protective order for confidential information. *See, e.g., Hart v. Nationwide Mut. Fire Ins. Co.*, No. 07-678, 2010 U.S. Dist. LEXIS 73193, at *12 (D. Del. July 20, 2010) ("entry of a protective order is not warranted in light of the Stipulated Confidentiality Order"); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121 (D. N.J. 2002) (finding that "[a]ny confidentiality concerns have been met by the confidentiality order currently in place" the court ordered party claiming privilege to review its files for responsive information).

27

**IV.    Angelo Gordon, Oaktree, and HBD Must Be Compelled To
Undertake A Comprehensive Search For Relevant Documents**

53.    Further demonstrating their non-compliance with their discovery obligations,
Angelo Gordon, Oaktree, and HBD have refused to undertake a comprehensive search for
responsive documents to the Requests.  Having already searched and produced documents in this
case within an unidentified timeframe and using unidentified search terms, Angelo Gordon
declares that it is unwilling to expand its search and has rejected most of Law Debenture's
proposed search terms even on its shortened list.  (Stein Decl., ¶¶ 9-11 ).  Oaktree and HBD have
also completely refused to search for documents prior to December 15, 2009.  (Stein Decl., ¶ 10).
Such intransigence is plainly inadequate under the federal rules.  Rule 26 requires parties to
confer in good faith regarding the discovery of electronic information.  *See* Fed. R. Civ. P.
26(f)(3)(C).  *See also In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007)
(imposing sanctions and noting that "while key word searching is a recognized method to
winnow relevant documents from large repositories, use of this technique must be a cooperative
and informed process. Rather than working with Plaintiffs from the outset to reach agreement on
appropriate and comprehensive search terms and methods, AZ undertook the task in secret.
Common sense dictates that sampling and other quality assurance techniques must be employed
to meet requirements of completeness").

54.    In particular, Angelo Gordon has refused to use the search term "TRB" on the
Counter-Proposal list to capture relevant documents relating to Tribune, claiming too many
documents would be captured by that search term.  (Stein Decl., ¶ 11).  Yet, multiple parties have
accepted the "TRB" term to be an appropriate search term and are using that term in locating
responsive documents to be produced in this case.  (*See* Debtor Search Term List dated
December 24, 2010, Ex. 28;  Committee Search Term List dated December 24, 2010, Ex. 31).

Oaktree and HBD have also been unwilling to commit to using the search terms "Tribune" and "TRB", and have insisted that only certain domain names be searched to improperly restrict the potential sources of relevant emails. (Stein Decl., ¶ 13-14). The parties' unwillingness to use key terms that will capture the most responsive documents defeats the very purpose of employing a search term methodology to locate responsive documents in lieu of an expansive page-by-page review of all documents. Their refusal to use most of the key terms proposed by Law Debenture for its searches will undoubtedly result in locating a limited number of responsive documents while excluding an enormous number of responsive documents. The search methods of Angelo Gordon, Oaktree, and HBD are unacceptable under these circumstances. *See William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("where counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords, with input from the ESI's custodians as to the words and abbreviations they use, and the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of "false positives." It is time that the Bar – even those lawyers who did not come of age in the computer era – understand this").

55.    Law Debenture has proposed reasonable date restrictions, has reduced the search terms it has requested Angelo Gordon, Oaktree, and HBD use, and has repeatedly stated its willingness to engage in further negotiations to ease the burden of searching for responsive documents. Contrarily, Angelo Gordon and Oaktree have remained steadfast in their positions, unilaterally dictating the conditions of their search. *See Capitol Records, Inc, v. MP3tunes, LLC*, 261 F.R.D. 44, 47 (S.D.N.Y. 2009) (holding that the defendant's unilateral decision to select search terms failed to satisfy its discovery obligations); *see also Bell v. Lockheed Martin Corp.*,

2010 U.S. Dist. LEXIS 62971, at *25 (D.N.J. June 23, 2010) (finding that the defendant's expense incurred in complying with discovery did not excuse it from producing further discovery where the defendant had not complied with the full subject matter or temporal scope of the discovery requests). Angelo Gordon, Oaktree, and HBD have not engaged in a meaningful meet and confer as is expected of parties in a discovery dispute. *See Romero v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 111985, at *38-42 (E.D. Pa. Oct. 21, 2010). When one party refuses to cooperate, a court may "compel the parties to confer and come to some agreement" on basic discovery issues including search terms, custodians to be searched, the date ranges for the searches, and "any other essential details about the search methodology." *Romero*, 2010 U.S. Dist. Lexis at *41-42. *DeGeer v. Gillis*, No. 09 c 6974, 2010 U.S. Dist. LEXIS 129745, at *55 (N.D. Ill. Dec. 8, 2010) ("The proper and most efficient course of action would have been agreement by [non-party] Huron and Defendants as to search terms and data custodians prior to Huron's electronic document retrieval. Selecting search terms and data custodians should be a matter of cooperation and transparency among parties and non-parties."). Such relief is warranted here. There is no excuse for plan proponents and their counsel to flaunt this fundamental discovery obligation.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, Law Debenture respectfully requests

that the Court enter an order (i) compelling Angelo Gordon to search for and produce relevant

documents, and (ii) granting such other and further relief as may be just and proper.

Dated: January 14, 2011
       Wilmington, Delaware

                         **BIFFERATO GENTILOTTI LLC**

                         */s/ Garvan F. McDaniel*
                           Garvan F. McDaniel (DE No. 4167)
                           800 N. King St., Plaza Level
                           Wilmington, DE 19801
                           (302) 429-1900

                           - and -

                           David S. Rosner
                           Andrew K. Glenn
                           Sheron Korpus
                           Christine A. Montenegro
                           Kasowitz, Benson, Torres & Friedman LLP
                           1633 Broadway
                           New York, New York 10019
                           (212) 506-1700

                           *Co-Counsel for Law Debenture Trust*
                           *Company of New York*

2187717v12