# EXHIBIT 6

## Paul Burgo

| | |
|---|---|
| **From:** | Paul Burgo |
| **Sent:** | Friday, January 07, 2011 6:33 PM |
| **To:** | 'MPrimoff@kayescholer.com' |
| **Cc:** | Sheron Korpus; Christine Montenegro; Matthew B. Stein |
| **Subject:** | RE: In re Tribune (08-13141): Merrill Lynch's Objections to Law Debenture's Subpoena |

Madlyn,

Please let us know when you are available during the week of January 10, 2011 to meet and confer regarding the subpoena.

Thank you,

Paul

---

**From:** Paul Burgo
**Sent:** Thursday, January 06, 2011 7:13 PM
**To:** MPrimoff@kayescholer.com; jmorgan@potteranderson.com
**Cc:** jConlan@sidley.com; bKrakauer@sidley.com; 'Lantry, Kevin T.'; Jbendernagel@sidley.com; jDucayet@sidley.com; 'Miles, David M.'; pWackerly@sidley.com; jpeltz@sidley.com; ckenney@sidley.com; 'Bierman, Steven'; dthomas@sidley.com; 'Flagg, Ronald S.'; msiegel@brownrudnick.com; KBromberg@brownrudnick.com; gnovod@brownrudnick.com; jellias@brownrudnick.com; HSeife@chadbourne.com; DLeMay@chadbourne.com; MAshley@chadbourne.com; McCormack, Thomas J.; agoldfarb@zuckerman.com; agoldfarb@zuckerman.com; jsottile@zuckerman.com; hobartd@hbdlawyers.com; johnstonj@hbdlawyers.com; MesterJ@hbdlawyers.com; donald.bernstein@davispolk.com; Elliot.moskowitz@davispolk.com; Michael.russano@davispolk.com; sasha.polonsky@davispolk.com; 'Kaminetzky, Benjamin S.'; Sheron Korpus; Matthew B. Stein; David S. Rosner; Christine Montenegro; dadler@mccarter.com; dhille@whitecase.com; ahammond@whitecase.com; bfritz@whitecase.com; hkaplan@arkin-law.com; JYEH@ARKIN-LAW.COM; lsilverstein@potteranderson.com; MPrimoff@kayescholer.com; jagudelo@kayescholer.com; JParver@kayescholer.com; jdrayton@kayescholer.com; bbutwin@omm.com; dcantor@omm.com; dshamah@omm.com; schannej@pepperlaw.com; strattond@pepperlaw.com; dbrown@paulweiss.com; agordon@paulweiss.com; emccolm@paulweiss.com; alevy@paulweiss.com; dgheiman@jonesday.com; bberens@jonesday.com; dahall@JonesDay.com; lmarvin@JonesDay.com; andrew.goldman@wilmerhale.com; Charles.Platt@wilmerhale.com; Dawn.wilson@wilmerhale.com; dgolden@akingump.com; dzensky@akingump.com; nchung@akingump.com; aqureshi@akingump.com; djnewman@akingump.com; jgoldsmith@akingump.com; bcarney@akingump.com; cdoniak@akingump.com; mhurley@akingump.com; sgulati@akingump.com
**Subject:** In re Tribune (08-13141): Merrill Lynch's Objections to Law Debenture's Subpoena

Dear Madlyn,

Please find below our email regarding Merrill Lynch's specific objections to the subpoena served by Law Debenture Trust Company of New York ("Subpoena"). Although it is subject to further review by our client and co-proponents, we wanted to circulate it to you for your review in advance of any party-specific meet and confer call, which we believe would be appropriate to schedule at your earliest convenience.

## General Objections

- With regard to all objections based on various alleged privileges and/or pre-existing orders, such as the Mediation Order, Depository Order, and Examiner Order, please confirm that your position will be further modified in accordance with stipulations, if any, agreed to by the parties. (*See, e.g.*, General Objections 7, 8, 9.) As you know, the orders that you refer to preclude discovery of the Examiner and

his Professionals, and not any parties' communications with or concerning the Examiner. As noted in our responses to the specific objections below, we believe all notes and Communications with the Examiner should be produced.

- In paragraph 10 of your General Objections, you object on the basis that Merrill Lynch previously produced documents in response to requests from UCC and Wilmington Trusts. Please confirm that Merrill Lynch will adhere to this Subpoena despite its prior production to the extent the documents requested were not previously produced. To the extent there may be responsive documents in the Document Depository, please tell us what search terms, time periods, and custodians were used to collect these documents. We are available to discuss your search protocols on a meet and confer call.

- Please confirm that independent of how the parties deal with the Mediation Order and the Depository Order, Merrill Lynch will not withhold responsive Documents solely on mere Rule 408 grounds. (*See, e.g.*, General Objection 11.)

- Please confirm that Merrill Lynch is not withholding the production of any responsive documents pursuant to Paragraphs 2, 13, 14, and 15 of your General Objections relating to ambiguity, burden, duplicativeness, and information outside of Merrill Lynch's control, confidentiality, and alleged improper purpose, respectively, of the requests.

- In paragraph 12 of your General Objections, you object to identifying documents protected by privilege or outside the scope of the Discovery and Scheduling Order. Paragraph 9 of the Discovery and Scheduling Order requires the parties to produce privilege logs. Please confirm that you will follow any agreement reached by the parties regarding such privilege logs.

**Objections to Definitions**
- You object to many of the definitions set forth in our requests as "overbroad, vague, ambiguous and unduly burdensome, and that it is not possible to know all persons and entities that Law Debenture purports to include" and provide a revised definition for these terms (*see, e.g.*, Paragraphs 21, 23-24, 27, 33, 38, 39, 41, 52-59). For example, in paragraph 38 you limit the term "Merrill Lynch" to mean Merrill Lynch Capital Corporation, Merrill, Lynch Pierce, Fenner & Smith, and Merrill Lynch & Co. Based on your definition, to the extent that there are any responsive communications between the Merrill Lynch and their respective counsel, for instance, those documents would not be produced. We cannot agree with such a narrow limitation and would like you to withdraw your objections to the definitions in this regard and confirm that the definitions of entities as defined by Law Debenture including officers and directors, employees, board members, and Professionals will be adopted.

- In Paragraphs 25 and 29, you object to the definitions of "Board of Directors" and "Committee Individuals" respectively, to replace the definition of Board of Directors and Committee Individuals as used in your responses and exclude their Professionals. As noted above, we request that you withdraw your objection and include in your production responsive Documents and Communications to Law Debenture's requests.

- In Paragraph 28, you object to Definition I, "Committee," and replace this definition. Please confirm that you are not excluding from this definition individual members of the Committee and its Professionals, and that you will produce such Documents and Communications that involve them which are responsive to Law Debenture's requests to the extent they exist.

- In Paragraph 31, you object to Definition N, "<u>Debtor/Committee/Lender Plan</u>," and replace this definition.  Please confirm that you are not excluding from this definition any prior plans of reorganization filed or considered by the parties mentioned in that Definition.

- In Paragraphs 34, 35, and 42, you object to the definitions of "<u>LBO</u>," "<u>LBO Lender Debt</u>," and "<u>Other Potential Settlement</u>," on the grounds, among other things, that these definitions are overbroad and vague.  Notwithstanding those objections, we would like you to confirm that you will produce Documents and Communications responsive to our requests to the extent they exist.

- In Paragraph 36, you object to the definition of "<u>LBO-Related Causes of Action</u>" as vague and replace it with the definition of this term used in the Debtor/Committee/Lender Plan.  We do not understand your effort to substitute our definition in this regard.  Please advise us if and how you are intending to limit the definition by adopting the definition in the Debtor/Committee/Lender Plan.

- In Paragraph 44, you object to the definition of "<u>Plans</u>" on the grounds that it is vague and you replace the definition of "Plans" as used in your Responses.  We do not understand the basis of your objection.  We understood that these defined terms regarding the Plans were agreed to by the parties and have been used in prior submissions filed with the court.

- In Paragraph 45, you object to the definition of "<u>Potential LBO Liability Party</u>" and limit the definition of this term as used in your responses to the "named defendants in the Complaints."  We do not understand why you limited to only those named defendants.  If responsive Documents and Communications exist relating to individuals who were not named defendants in the Complaints, such as any of the Settling Parties who were not named in the Complaints in response to Requests 16, 22, 28, and 57 where this term is used, such Documents and Communications should be produced.

- In Paragraph 48, you object to the definition of "<u>Relationship</u>" on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and that the time frame set forth in the definition is overbroad.  We do not understand the basis for your objection.  Our definition specified the types of relationships at issue, including professional, personal, and business relationships.  As noted below, with regard to specific document requests we will consider narrowing the scope subject to further internal review by our client and our co-proponents.

- In Paragraphs 49 and 50, you object to the definitions of "<u>Settlement Analysis</u>" and "<u>Settlement Process</u>," respectively, on the grounds, among other things, that it it is calls for the disclosure of information that is protected by the attorney-client privilege, work-product doctrine, the joint-defense privilege, the common interest privilege and/or any other applicable privilege, doctrine or immunity.  As noted above, we would like to confirm that your position is subject to any stipulation reached with regard to the Depository Order and/or Mediation Order and that you are not independently invoking Rule 408 in objecting to the disclosure of responsive documents.

**Objections to Instructions**
- **Instruction 3**:  You object to the production of documents for the time period January 1, 2007 through the present on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  However, Instruction 3 is clear on its face that Law Debenture does not seek documents prior to January 1, 2007 unless otherwise specified, which we have done sparingly.  The Court has already determined that there will be discovery regarding the merits of the underlying LBO-Causes of Action and our merits-related requests are limited to seeking documents which were not produced to the Document Depository.  To the extent that Merrill Lynch has any

responsive, non-privileged documents regarding the LBO-Related Causes of Action not contained in the Document Depository, they should be produced.

- **Instructions 8 and 12:**  You indicate that you will provide Law Debenture with documents as provided in the Discovery and Scheduling Order.  Specifically, you object to the production of hard copy documents and to the production of native files.  We do not believe such a limitation is warranted.  We are available to discuss your production format on a meet and confer call.

- **Instruction 13:**  In Paragraph 71, you object o production of documents on the basis that the material requested is not admissible under Federal Rule of Evidence 408.  Please confirm that you are not withholding any documents or information on the basis of Rule 408.

- **Instructions 15 and 16:**  In Paragraph 73, you object to the production of a privilege log on a number of bases.  Please confirm that you will withdraw this objection and provide a privilege log that conforms to the stipulation reached with the parties.

- **Instruction 20:**  You object to the document requests being continuing in nature as contrary to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules for the Delaware Bankruptcy Court.  We disagree with your assertion.  Should Merrill Lynch become aware of or acquire additional information relating or referring to any of the document requests, such additional information should be promptly produced.

**Specific Objections**
- You indicate in a number of your responses that you will only produce documents "that relate to the April Proposed Settlement, the Proposed LBO Settlement, and/or the Plans" (*see, e.g.*, Requests Nos. 28, 29, 33, 34, and 70).  To the extent that this is intended to be a limitation on your production of documents responsive to these requests, we believe that such a limitation is inappropriate and do not understand the basis for such a limitation.  Unless the request specifically calls for documents related to the "Plans," Merrill Lynch should produce responsive, non-privileged documents in its possession regardless of their relation to the April Proposed Settlement, the April Plan, the Proposed LBO Settlement, or the Plans.

- In a number of your responses, you have objected to the production of documents on the grounds that Merrill Lynch is not a Plan Proponent and therefore responsive documents should be sought from the Proponents of Debtor/Committee/Lender Plan in the first instance (*see, e.g.*, Requests Nos. 52-53).  Merrill Lynch, as a party in interest, is required to produce non-privileged responsive Documents and Communications in its possession regardless of whether it is a Plan Proponent.

- In a number of your responses, you object that the Requests call for privileged documents and that the requests are "premature" (*see, e.g.*, Requests Nos. 55, 59, 60).  We believe that your objection shall be resolved by the common-interest stipulation which is currently being negotiated.  Please confirm that you will abide by any agreement reached by the parties.

- In a number of your responses, you object that the Requests call for production of confidential information (*see, e.g.*, Requests Nos. 58, 69, 70).   We do not understand this objection as these documents would be protected by the Document Depository Order.  Please confirm that Merrill Lynch is not limiting the scope of its production on that basis.

- **Requests 1-10:**  You have refused to produce Documents and Communications responsive to these requests, which address the "relationships" among certain entities and/or individuals, including Tribune,

the Settling Parties, Special Committee Individuals, Committee Individuals, and Tribune Individuals, among others, on the grounds that these requests seek documents that are not in Merrill Lynch's possession and are more easily obtained from other parties. We believe the definitions of Relationship and the entities and individuals included in these requests are clear on their face. Subject to discussion with our client and co-proponent group, we shall consider narrowing the scope of our request such as limiting the definition of "Tribune Individuals" to the Tribune custodians identified by the Debtors for purposes of this request.

- **Request 11:** You have objected to the production of Documents and Communications regarding any conflict or potential conflict of interest relating to Persons involved in Settlement Analysis or the Settlement Process. Any Document or Communication in Merrill Lynch's possession reflecting a conflict of interest of any of the parties involved with the proposed settlement is clearly relevant to the court's determination of whether the proposed settlement was negotiated in good faith and should be approved. Accordingly, to the extent that responsive documents exist and are in Merrill Lynch's possession, such Documents and Communications should be produced.

- **Request 12:** You have refused to produce documents and communications relating to whether certain Tribune individuals, Special Committee Individuals, or Committee Individuals were Step One Selling Shareholders. Any Document or Communication related to this subject matter is clearly relevant to the parties' economic interest who were involved in the LBO, the reorganization of the Debtor, and the negotiation of, among other things, the Proposed LBO Settlement. As advisor to the Board of Directors, Merrill Lynch is likely to have this information and is an appropriate source of this information.

- **Request 17:** You have refused to produce engagement letters, bills, invoices, and time records, from any Professionals retained by Merrill Lynch as related to the Settlement Analysis, the Settlement Process, and/or negotiation or drafting of any of the Plans on the grounds that it calls for privileged material. We do not understand your objection to withhold such materials in their entirety. At a minimum, these documents should be produced in redacted form. If you have authority to support your position, we would ask that you send us the case law.

- **Request 18:** In response to this request for the production of any engagement letters, bills, and time records of Professionals retained by any of the Settling Parties, you state that you will comply with the Discovery or Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure. Please explain whether you intend to withhold any responsive documents and the basis for your objection.

- **Request 24:** You have refused to produce document retention policies, litigation hold notices and other documents relating to steps taken to preserve documents by Merrill Lynch. The document retention policies are not protected by the attorney-client privilege or the work product doctrine and are entirely relevant. In addition, to the extent you are relying on prior productions to the Document Depository or in connection with the April Proposed Settlement, it is relevant to know what retention polices were in effect during the relevant periods. If you intend to assert the attorney-client privilege and/or work product privilege with regard to the litigation hold notice(s), we believe you are still obligated to produce such notices and any other preservation instructions in redacted form so that we can determine the dates and recipients of such communications.

- **Request 25:** You have objected to the production of Documents sufficient to identify claims made or threatened by any Person arising from or relating to the LBO on the basis that these documents are not in Merrill Lynch's possession and are more easily obtained from other parties and/or are publicly available. We do not understand the basis for your objection. To the extent that non-privileged

Documents responsive to this request are in Merrill Lynch's possession, such Documents should be produced.

- **Request Nos. 39-42, 72:** You have refused to produce Documents and Communications related to the Examiner and the Examiner's Report. We do not understand the basis for your objection. You object in part that this material is "protected from disclosure by the Examiner Order and/or Discharge Order." However, these Orders currently only protect disclosure of the Examiner and its Professionals, not Merrill Lynch's or other parties' communications with the Examiner and its Professionals. Such Documents and Communications are relevant and should be produced.

- **Request 43:** You refused to produce Documents and Communications relating to the LBO or financing thereof because such documents were previously produced to the Document Depository. Your refusal is inappropriate given that the court has rejected your efforts to preclude discovery regarding the underlying LBO in preparation for the upcoming confirmation hearing. Additionally, our merits-related requests specifically exclude Documents and Communications contained in the Document Depository. To the extent that Merrill Lynch is in the possession of any of the Documents referred to in (i) through (vi) regarding the LBO transaction and financing thereof (e.g. presentations, projections, balance sheets, financial models, two-step structure of the LBO, solvency analysis, etc.), not contained in the Document Depository, such Documents and Communications should be produced. Moreover, Request 43(iv) seeks the personnel files of all executives and/or management level individuals involved with the LBO. At the present time, we are not aware that such Documents were in fact produced to the Document Depository, but if they have, you should advise us.

- **Request 44:** You object to the production of Documents and Communications relating to Murray Devine on the grounds, among other things, that it calls for documents not within Merrill Lynch's possession, and you refer Law Debenture to the Document Depository. For the same reasons noted in our comments to Request 43 above, responsive documents in Merrill Lynch's possession should be produced.

- **Request 45:** You object to the production of documents relating to the purchase, sale, assignment, or other acquisition or disposition of any interest in the Senior Notes, PHONES Notes, Senior Loans or Bridge Loans, on the grounds that it has previously been produced. Our request, however, specifically excludes documents contained in the Document Depository. For the same reasons noted in our comments to Request 43 above, responsive documents in Merrill Lynch's possession should be produced.

- **Request 46:** You object to the production of documents relating to the purchase, sale, assignment, or other acquisition or disposition of any interest by any of the Tribune Individuals or Settling Parties of any other interest in or tied to Tribune, on the grounds that it has previously been produced. Our request, however, specifically excludes documents contained in the Document Depository. For the same reasons noted in our comments to Request 43 above, responsive documents in Merrill Lynch's possession should be produced.

- **Request 47:** You object to the production of Documents and Communications relating to the circumstances under which any Settling Party was selected for, or otherwise became involved in any aspect of the LBO on the grounds that it, among other things, seeks documents not in Merrill Lynch's possession, and you refer Law Debenture to the Document Depository. Our request, however, specifically excludes documents contained in the Document Depository. To the extent that non-privileged responsive Documents and Communications are in Merrill Lynch's possession, they should be produced.

6

- **Request 57:** You have objected to the production of "Communications with the Debtors, Settling Parties and/or other Potential LBO Liability Parties relating to the mediation or the Mediator" on the grounds that such communications are not within Merrill Lynch's control, barred by applicable privilege, and barred by the Mediation Order.  Please confirm that to the extent that non-privileged responsive Communications are in Merrill Lynch's possession, you will produce them in accordance with any agreement reached by the parties regarding the Mediation Order.

- **Request 58:** You have refused to produce Documents relating to any direct or indirect interest in Tribune held by any of the Tribune Individuals or any of the Settling Parties, because, among other things, it calls for confidential material.  We do not understand this objection as the Document Depository Order protects these confidential documents.  Please confirm that to the extent that non-privileged responsive Documents Communications are in Merrill Lynch's possession, they will be produced.

- **Request 72:** You have objected to the production of document requests or subpoenas received by Merrill Lynch in connection with the above-caption case or any related adversary proceeding and all subsequent Communications regarding such requests on the basis that this material is "publicly available" and that it calls for Documents subject to the terms of the Examiner Order and the Discharge Order.  We do not believe that it would be burdensome to re-produce prior document requests or subpoenas given the narrow scope of this request.  To the extent you object based on the Examiner Order and the Discharge Order, we do not agree with your objection as discussed above.

- **Request 75:** You have objected to the production of Documents and Communications relating to any consideration received by the proponents of the Step One Lender Plan, because, among other things, it calls for privileged documents.  We do not agree with your objection.  Please confirm that to the extent that non-privileged responsive Documents Communications are in Merrill Lynch's possession, they will be produced, and that you will comply with any agreement as to privilege logs reached by the parties.

# EXHIBIT 7

## Paul Burgo

| | |
|---|---|
| **From:** | Christine Montenegro |
| **Sent:** | Monday, January 10, 2011 4:24 PM |
| **To:** | mprimoff@kayescholer.com |
| **Cc:** | Sheron Korpus; Matthew B. Stein; Paul Burgo |
| **Subject:** | Tribune |

Following up our responses to Merrill's objections and responses we forwarded to you on January 6, 2011, we would like to schedule a meet and confer tomorrow.  Under the CMO, a meet and confer should occur within 3 days of a party making such a request.  In light of the recent schedule the Judge set for discovery-related motions, we believe a meet and confer session is imperative.  Please let us know when you are available tomorrow.

Regards,
Christine Montenegro


Christine A. Montenegro
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1715
Fax (212) 835-5015
CMontenegro@kasowitz.com

1

# EXHIBIT 8

# KAYE SCHOLER LLP

Joseph M. Drayton
212.836.7177
jdrayton@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212.836.8000
Fax 212.836.6576
www.kayescholer.com

January 11, 2011

Paul Burgo, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

Re:    *In re Tribune Company, et al.*

Dear Mr. Burgo:

This letter responds to your email dated January 6, 2011 sent at 7:13 p.m. (the "January 6 Email") regarding the objections and responses of Merrill Lynch, Pierce, Fenner & Smith (the "Merrill Lynch Response") to the 75 document requests of Law Debenture Trust Company of New York (the "Document Requests"), which were served on December 30, 2010.

Merrill Lynch intends to comply with its obligations under the Discovery and Scheduling Order dated December 20, 2010 and as required by the applicable rules of civil procedure. Merrill Lynch's objections to the Document Requests, including the accompanying definitions and instructions were, in part, based on their lack of reasonableness in light of the expedited discovery schedule set by the Court and the purpose of the discovery, *i.e.*, in connection with the confirmation hearing.

The January 6 Email requests that Merrill Lynch agree today to abide by all stipulations entered into in the future by "the parties," whoever they may be, regarding discovery issues. Until specific stipulations are entered into, however, Merrill Lynch cannot possibly begin to consider their impact on Merrill Lynch's objections to the Documents Requests or whether Merrill Lynch would be willing to abide by such stipulations.

With respect to the Document Requests, Merrill Lynch does not intend to withhold non-privileged responsive documents in its possession based on paragraphs 2, 11, 13, 14 and 15 of its general objections in the Merrill Lynch Response (the "General Objections"), the confidential nature of any document or the fact that Merrill Lynch is not a plan proponent. Nor does Merrill Lynch believe that its objections to the definitions in the Documents Requests identified in the January 6 Email raise a material issue related to its production of non-privileged documents responsive to the Document Requests.

As stated in the January 6 Email, the Document Requests seek "responsive, non-privileged documents regarding the LBO-Related Causes of Action not contained in the depository." With respect to documents related to the LBO-Related Causes of Action which would have been created on or before December 8, 2008, Merrill Lynch has completed a

KAYE SCHOLER LLP

Paul Burgo, Esq.                          - 2 -                          January 11, 2011

reasonable and substantial search for those documents and does not intend to engage in another search, collection and review process. With respect to documents related to the LBO-Related Causes of Action which would have been created after December 8, 2008, Merrill has agreed to search for certain documents that would not be in the Document Depository.

        The Merrill Lynch documents in the Document Depository were produced in response to the document requests of the Official Committee of Unsecured Creditors dated March 26, 2009, as amended on May 14, 2009 (the "UCC Requests") and the document requests served by Wilmington Trust Company ("Wilmington Trust") on May 13, 2010 (the "WT Requests"). As set forth in detail in the General Objections, Merrill Lynch produced over 1.3 million pages of documents relating to the LBO-Related Causes of Action which cover at least January 1, 2007 to December 8, 2008. With respect to Merrill Lynch's responses and objections to the UCC Requests, all of the material information, including negotiated search terms, has long been a matter of public record. (See Dkt. Nos. 2767, 2787, 2848, 2913, 2931.) With respect to Merrill Lynch's responses to the WT Requests, we have attached the relevant written communications between the parties. Accordingly, Merrill Lynch will not engage in another collection, review and production of documents and refers Law Debenture to the Document Depository for the documents that it seeks.

        With regard to the production of a log of privileged documents specifically collected and reviewed in response to the Document Requests, Merrill Lynch intends to produce a privilege log as described in paragraph 73 of its General Objections, including a document by document privilege log for any document that does not fall into one of the five categories listed in paragraph 73. In connection with the WT Requests, Merrill Lynch and Wilmington Trust entered into a similar arrangement for privileged documents during a time when, as opposed to now, the parties were not faced with the time constraints of expedited discovery.

        We are prepared to discuss your various concerns at a meet and confer at which time we also expect Law Debenture to explain certain of its Document Requests. Please provide us with various times this week during which you are available to discuss.

                                          Sincerely,

                                          Joseph M. Drayton

cc:    Madlyn Gleich Primoff
       Jane W. Parver


Enclosures


32082250.DOCX

# EXHIBIT 9

**Paul Burgo**

| | |
|---|---|
| **From:** | Paul Burgo |
| **Sent:** | Thursday, January 13, 2011 4:53 PM |
| **To:** | Drayton, Joseph |
| **Cc:** | Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn; Christine Montenegro |
| **Subject:** | Tribune Search Terms |

Joseph,

As discussed in our call this afternoon, we write regarding proposed electronic search methodology, custodians, and terms for the Merrill Lynch. Although our response is subject to further review by our Plan proponent group, we wanted to circulate it to you as soon as possible. To the extent you have already searched certain of the terms below, we would not request that you rerun those searches.

1. **Search Methodology:**

- To the extent that you are relying on prior productions made by Merrill Lynch to the Document Depository, we request a copy of the search terms that the Merrill Lynch used in connection with those productions. It will be necessary for us to review your new search term proposal against any prior search term lists, among other things, to confirm the adequacy of your proposal. Merrill Lynch has a blanket objection that it will produce documents related to the April Proposed Settlement, the Proposed LBO Settlement, and/or the Plans. As you know, in response to the Debtors' contours motion, the Court has already determined that there will be discovery regarding the merits of the underlying LBO-Causes of Action. Without waiver of our position as to whether such an undertaking to identify specific merits-related categories by Law Debenture is required, we cannot begin to identify such categories unless we have an opportunity to review your prior search term list(s).

- We would like to confirm that your search for responsive documents will include searches of electronic databases at Merrill Lynch related to the underlying LBO transaction and the bankruptcy as well as Merrill Lynch's custodians' other electronic documents.

2. **Custodians:**

- Please confirm that that the following custodians were previously searched by Merrill Lynch in connection with their prior production. We request that you run any new search terms for these custodians.

   Todd Baker
   Michael Costa
   Henrik Dahlback
   Blair Faulstich
   John Harrison
   Jim Janover
   Todd Kaplan
   Greg Margolies
   Carl Mayer
   Michael O'Grady
   Jennifer Wilson
   Adam Wood

- We have identified below additional custodians to add to your list. Attorneys acting on Merrill Lynch's behalf should be added and search terms below should be run for these custodians.

  Stephen Paras
  David Tuvlin
  David Lewicki
  Matthew Buffington
  John Eidinger
  Nancy Meadows
  Jose Cotarelo
  Caroline Kim
  Alan Hartman
  Mitchell L. Marcus
  Mariela Figueroa

**3. Search Terms**

**LBO Period**

**Date range:** From Dec. 20, 2007 to June 1, 2008

**Search terms:**

1. Tribune
2. Trib
3. TRB
4. EGI
5. Zell
6. (step or phase) w/2 (one or two or first or second or 1 or 2)
7. ESOP
8. Chandler
9. Grenesko
10. Osborn*
11. "Equity Office Properties"
12. S-Corp*
13. "Scorp*"
14. "S Corp*"
15. "Tranch X"
16. "Tranch B"
17. VRC
18. "Valuation Research"
19. "Duff & Phelps"
20. "D&P"
21. Nils
22. Larsen
23. FitzSimons
24. Tower
25. Cantigny

2

26. "Chai Trust"
27. "EGI-TRB"
28. EGII
29. "Equity Group Investments"
30. GreatBanc
31. McCormick
32. "Sam Investment Trust"
33. "TESOP"
34. Foundation
35. Foundations
36. Navigant
37. Bracewell
38. Flaschen
39. PHONES
40. Devine
41. Kenny
42. Kenney
43. Crane
44. Bigelow
45. Taubman
46. Whayne


**<u>Bankruptcy Period</u>**

**Date range:** Dec. 8, 2008 – Sept. 1, 2009
**Search Terms:**
1.  AG
2.  Angelo
3.  Bendernagel
4.  Bigelow
5.  Chadbourne
6.  Chandler
7.  EGI
8.  EGII
9.  "Equity Group Investments"
10. "Equity Office Properties"
11. Fiduciary /5 duty
12. fraudulent w/1 conveyance
13. Gresnesko
14. (James or Jim) w/1 Conlan
15. Krakauer
16. Kurtz
17. "LBO-related causes of action"
18. Lemay
19. Oaktree
20. "Preserved causes of action"
21. Seife, Siefe
22. Settle* w/25 LBO
23. "sharing provision"
24. Sidley

25. (step or phase) w/2 (one or two or first or second or 1 or 2)
26. TRB
27. Trib!
28. Zell
29. Release*

**Date range:** Sept. 1, 2009 – December 3, 2010
**Search terms:**
1. Adler
2. AG
3. Akin
4. Angelo
5. "April Proposed Settlement"
6. Aur*
7. "bar order"
8. Bendernagel
9. Bennett
10. Bigelow
11. breach w/1 fiduciary w/1 duty
12. Chadbourne
13. Chandler
14. Conlan
15. Crane
16. "Creditors Trust"
17. "Creditor's Trust"
18. D&P
19. Devine
20. Dublin
21. Duff & Phelps
22. EGI
23. ESOP
24. examiner or examiners or examiner's
25. FitzSimons
26. fraudulent w/1 conveyance
27. Golden
28. Graeme
29. Grenesko
30. HBD
31. hennigan w/1 bennett
32. "intercompany settlement"
33. Judge w/2 Gross
34. Kasowitz
35. Kenney
36. Kenny
37. Klee
38. Krakauer
39. Kurtz
40. Larsen
41. Lauria
42. "Law Deb!"
43. Lazard

44. LBO
45. "Litigation Trust"
46. Mandava
47. Nils
48. "Noteholder Plan"
49. Oaktree
50. PHONES
51. "Preserved causes of action"
52. Rosner
53. Rudnick
54. Sam Investment Trust
55. Seife, Siefe
56. Settle* w/25 LBO
57. "settlement plan"
58. Shapiro
59. "sharing provision"
60. Sidley
61. Sottile
62. Stark
63. (step or phase) w/2 (one or two or first or second or 1 or 2)
64. Taubman
65. Tower
66. TRB
67. Trib!
68. Valuation Research
69. VRC
70. Whayne
71. "White and Case"
72. Wilderotter
73. Zell
74. Zuckerman
75. Release*

---

**From:** Drayton, Joseph [mailto:JDrayton@kayescholer.com]
**Sent:** Wednesday, January 12, 2011 7:48 PM
**To:** Paul Burgo; Christine Montenegro
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** RE: Tribune

Paul,

We are available at 4 p.m. Does that work for your office?

Joseph M. Drayton
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
(212) 836-7177
(212) 836-6576 (fax)

**From:** Paul Burgo [mailto:PBurgo@Kasowitz.com]
**Sent:** Wednesday, January 12, 2011 7:31 PM
**To:** Drayton, Joseph; Christine Montenegro
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** RE: Tribune

Joseph,

Someone who needs to be on the call has a hearing at 10. Are you available at 12:30?


Paul Burgo
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1865
Fax (212) 835-5265
PBurgo@Kasowitz.com

**From:** Drayton, Joseph [mailto:JDrayton@kayescholer.com]
**Sent:** Wednesday, January 12, 2011 3:04 PM
**To:** Paul Burgo; Christine Montenegro
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** Re: Tribune

Paul,

Thank you for offering to set up a dial in for the call. Unfortunately, we need to have the call tomorrow in light of the snow storm. Are you available at 11:00 a.m. tomorrow?

**From:** Paul Burgo <PBurgo@Kasowitz.com>
**To:** Drayton, Joseph; Christine Montenegro <CMontenegro@kasowitz.com>
**Cc:** Sheron Korpus <SKorpus@kasowitz.com>; Matthew B. Stein <MStein@kasowitz.com>; Parver, Jane; Primoff, Madlyn
**Sent:** Wed Jan 12 14:25:15 2011
**Subject:** RE: Tribune

Joseph,

We can set up a dial-in for you to call in today if you're away from the office.

**From:** Drayton, Joseph [mailto:JDrayton@kayescholer.com]
**Sent:** Wednesday, January 12, 2011 10:46 AM
**To:** Paul Burgo; Christine Montenegro
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** RE: Tribune

Paul,

In light of the snow storm, we need to reschedule the meet and confer until Thursday morning. Are you available at 11:00 a.m.?


Joseph M. Drayton

Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
(212) 836-7177
(212) 836-6576 (fax)

---

**From:** Paul Burgo [mailto:PBurgo@Kasowitz.com]
**Sent:** Tuesday, January 11, 2011 5:54 PM
**To:** Drayton, Joseph; Christine Montenegro
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** RE: Tribune

That time works for us.


Paul Burgo
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1865
Fax (212) 835-5265
PBurgo@Kasowitz.com

**From:** Drayton, Joseph [mailto:JDrayton@kayescholer.com]
**Sent:** Tuesday, January 11, 2011 3:10 PM
**To:** Christine Montenegro; Paul Burgo
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** RE: Tribune

Christine,

We would like to have the call at 3:30 p.m. tomorrow barring the inability to make it in the office in light of the anticipated storm.

Joseph M. Drayton
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
(212) 836-7177
(212) 836-6576 (fax)

---

**From:** Christine Montenegro [mailto:CMontenegro@kasowitz.com]
**Sent:** Tuesday, January 11, 2011 2:46 PM
**To:** Drayton, Joseph; Paul Burgo
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** RE: Tribune

What time works for you?


Christine A. Montenegro
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

Tel. (212) 506-1715
Fax (212) 835-5015
CMontenegro@kasowitz.com

**From:** Drayton, Joseph [mailto:JDrayton@kayescholer.com]
**Sent:** Tuesday, January 11, 2011 2:19 PM
**To:** Paul Burgo; Christine Montenegro
**Cc:** Sheron Korpus; Matthew B. Stein; Parver, Jane; Primoff, Madlyn
**Subject:** Tribune

Paul and Christine:

Please see the attached correspondence.  We are generally available to meet and confer tomorrow.  Please provide us with a few times that work for you.

Thanks

Joseph M. Drayton
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
(212) 836-7177
(212) 836-6576 (fax)

                                        *   *   *   *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax advice
contained in this correspondence (including any attachments) is not
intended or written to be used, and cannot be used for the purpose of (i)
avoiding penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

                                        *   *   *   *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax advice
contained in this correspondence (including any attachments) is not
intended or written to be used, and cannot be used for the purpose of (i)
avoiding penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.
                                        *   *   *   *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax advice
contained in this correspondence (including any attachments) is not

intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

\*   \*   \*   \*

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

\*   \*   \*   \*

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT 10

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: TBD**<br>**Objection Deadline: TBD** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER REQUIRING THE PRODUCTION BY DATE CERTAIN OF EMAIL DOCUMENTS FROM MERRILL LYNCH CAPITAL CORPORATION PURSUANT TO BANKRUPTCY RULE 2004

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this Motion for an Order Requiring the Production by Date Certain of Email Documents from Merrill Lynch Capital Corporation ("Merrill") Pursuant to Bankruptcy Rule 2004 (the "Motion"). In support of this Motion, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

698.001-W0004667

## BACKGROUND

1.  On December 8, 2008 (the "Petition Date"), the Tribune Company (the "Company") and one hundred ten of its subsidiaries each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). An additional Debtor, Chicago National League Ball Club, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. Pursuant to orders of this Court, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.  The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  On December 18, 2008, the Office of the United States Trustee for Region 3 appointed the Committee. As a result of subsequent resignations and additional appointments, the membership of the Committee changes from time to time.

## THE COMMITTEE'S INITIAL INVESTIGATION INTO THE MERGER

4.  As part of its statutory duties pursuant to section 1103(c) of the Bankruptcy Code, the Committee has been investigating the acts, conduct, liabilities and financial condition of the Debtors, including, without limitation, the transaction (the "Leveraged ESOP Transaction") that took place beginning in April 2007 and culminated with the consummation of the merger of the Company and Tesop Corporation in December 2007 (the "Merger").

2

5.    As the Court is aware, the Company, one of the Debtors, was founded in 1847 and incorporated in Illinois in 1861. In 1968, as a result of a corporate restructuring, the Company became a holding company incorporated in Delaware. In 1983, after 136 years of private ownership, the Company became a public company.

6.    As early as February 2005, the Company and Merrill, the Company's outside financial advisor, reviewed certain factors affecting the Company's Broadcasting and Entertainment Group and discussed, on a preliminary basis, the range of financial and strategic options available with respect to that business. Merrill continued to serve as the Company's outside advisor for the next three years, during which the Company, Merrill and other discussed a number of possible alternative transactions.

7.    Ultimately, on April 1, 2007, the Company's board of directors approved the Leveraged ESOP Transaction designed to return the Company to private ownership with a newly formed Tribune Employee Stock Ownership Plan (the "ESOP"), EGI-TRB, L.L.C., a Delaware limited liability company wholly owed by Sam Investment Trust (a trust established for the benefit of Samuel Zell ("Zell") and his family), and Zell. The Leveraged ESOP Transaction ultimately resulted in the Merger. On December 20, 2007, the Company completed the Merger, culminating with (a) cancellation of all issued and outstanding shares of the Company's common stock as of that date, (other than shares held by the Company or the ESOP), and (b) the Company becoming wholly owned by the ESOP. Less than a year after the Merger, the Company and its subsidiary Debtors commenced these Chapter 11 cases.

8.    In connection with the Merger, the Company entered into certain financing facilities in May and December 2007. In particular, the Company entered into (i) a $8.028 billion credit agreement (as amended, the "Credit Agreement") with JPMorgan Chase

Bank, N.A. ("JPMorgan"), as Administrative Agent, Merrill, as Syndication Agent, Citicorp North America, Inc., Bank of America, N.A. and Barclays Bank PLC as Co-Documentation Agents, and the Initial Lenders named therein and (ii) a 1.6 billion Senior Unsecured Interim Loan Agreement (the "Bridge Facility"), with Merrill Lynch as Administrative Agent, JPMorgan as Syndication Agent, CNAI and Bank of America as Co-Documentation Agents, and the Initial Lenders named therein. The proceeds from the Credit Agreement and Bridge Facility were used by the Company, among other ways, in connection with the consummation of the Merger, to refinance certain existing indebtedness of the Company, and for general corporate purposes.

### THE COMMITTEE'S ATTEMPTS AT INFORMAL DISCOVERY

9.    In connection with its investigation, counsel to the Committee has spoken with various parties involved and sent requests for information surrounding the Leveraged ESOP Transaction and the Merger to the Debtors and Zell, among others. With respect to Merrill, the Committee sent a detailed request for information on March 26, 2009 (the "March Request"), a true and correct copy of which is attached to the Certification of Robert A. Schwinger dated December 8, 2009 (the "Schwinger Certification") as Exhibit "A." The March 26 Request was generally limited to information that Merrill would have by virtue of its role as an agent and a lender under the Credit Agreement and Bridge Facility. After discussions with counsel for Merrill, the Committee sent an amended request on May 14, 2009 (the "May Request," together with the March Request, the "Requests for Information") that additionally covered information that Merrill would have in its capacity as the Company's outside financial advisor. A true and correct copy of the May Request is attached to the Schwinger Certification as Exhibit "B." By letter dated June 26, 2009 (the "June 26 Letter"), a copy of which is attached to the Schwinger

Certification as Exhibit "C," counsel to Merrill acknowledged receipt of the May Request and enclosed various objections and responses to the Requests for Information.

10.     As set forth on the record at the status conference on December 1, 2009 (the "Status Conference") and in the Schwinger Certification attached hereto, the Committee has received and reviewed substantial document discovery from many parties on a consensual basis. However, Merrill's production has been delayed far more than that of virtually any other party in this matter, notwithstanding the fact that Merrill was among the earliest recipients of document requests from the Committee. After a relatively small initial production of material in mid-July 2009, the Committee received a first production of non-email documents from Merrill just before Labor Day weekend. At that time Merrill represented that its production of non-email documents was complete. Nearly three months later, however – on the day before Thanksgiving – Merrill advised the Committee that it was about to produce additional non-email documents. According to Merrill's counsel, these documents had not been produced previously due to a "technical glitch," but the volume of this late November production exceeded the entire volume of material that Merrill had produced to the Committee to date. See Schwinger Certification at ¶ 4.

11.     Merrill has been even more dilatory in its production of email to the Committee. At Merrill's urging, the Committee's counsel had agreed back in June 2009 to defer discussion of email search terms and custodians until Merrill's non-email document production was in hand and could be reviewed. The Committee never anticipated that Merrill would not make its first substantial non-email production until Labor Day. Approximately two weeks after Labor Day, after the Merrill non-email production then in hand had been reviewed, Committee's counsel began negotiating email search terms and custodians with Merrill's counsel. See Schwinger Certification at ¶ 5.

12.   The Committee's counsel proposed using the same search terms and approach to identifying custodians that had been used with respect to JPMorgan. The Committee had reached agreement on that search protocol with JPMorgan after minimal debate or negotiation among counsel. However, Merrill's counsel strongly resisted following this same approach, extending negotiations throughout most of October 2009. It was not until October 26, 2009 that a "without prejudice" agreement was reached between Merrill and the Committee regarding email search methodology, which included a radically truncated list of email custodians from what the Committee originally had sought from Merrill. In the approximately six weeks since then, however, and Merrill has yet to produce a single email. See Schwinger Certification at ¶ 6.

13.   In early November 2009, the Committee's counsel made several requests to Merrill's counsel for estimates of (a) when the first installment of the rolling production of Merrill's email was expected to arrive, and (b) the estimated amount of time the overall email production would take for completion. On November 10, 2009, Merrill's counsel advised in a telephone conversation that they were still in the process of "collecting, processing and filtering" email in accordance with the agreed-upon search terms and custodian list. The Committee was told that this phase of work would be completed within two weeks (i.e., by November 24, the Tuesday before Thanksgiving) but perhaps earlier, and that at that point the material would be "sent out" for review. The Committee was also told that Merrill would have a sense of the total volume, and could give the Committee an updated report about timing. See Schwinger Certification at ¶ 7.

14.   Merrill never provided an update on the timing of its email production prior to the Status Conference. On Friday, November 20, 2009, and again on Monday, November 23, 2009, the Committee's counsel had telephone conversations with Merrill's

6

counsel concerning the mounting concern among various parties about the slow pace of Merrill's email production and the impact of the delay on other issues in the case. The Committee's counsel explained that this was one of the issues that had prompted the Debtors to seek a discovery status conference on December 1, and that the Committee and others were hoping to get firm commitments from Merrill regarding th estart and completion of Merrill's rolling production of email. Merrill's only response was to provide a cryptic email later on the evening of November 23, 2009 (a copy of which is attached to the Schwinger Certification as Exhibit "D") which stated "Merrill has collected the email data for the 12 custodians identified in the email discovery plan agreed to by Merrill and the Creditors' Committee. The size of the collection is 215 GB which is extremely large for 12 custodians over a two year period. Merrill is currently processing the data. The project is a high priority for Merrill which is adhering to the email discovery plan." No further information was provided prior to the Status Conference. See Schwinger Certification at ¶ 8.

15.    During the December 1, 2009 Status Conference, Merrill asserted that it would take approximately twelve weeks for it to complete production of email and related electronic documents, which production would begin on a rolling basis three and a half weeks from December 1, 2009. See 12/1/09 Hearing Tr. at pg. 122. Merrill also expressed its concerns regarding the Committee's requested search terms and email custodians - both of which it had agreed to on October 26. See 12/1/09 Hearing Tr. at pg. 120-124, 131-132. Ultimately, the Committee agreed to continue discussions with Merrill regarding the timing and scope of the requested production. See 12/1/09 Hearing Tr. at pg. 135-136. This Court instructed the Committee, if it proved necessary, to return on a shortened time frame and seek the relief now requested herein. See 12/1/09 Hearing Tr. at pg. 133.

16.     After the December 1, 2009 Status Conference, counsel for Merrill and the Committee had a further telephone conference on these issues on the evening of December 2, 2009. In that conversation, and again in an email dated December 4, 2009 (a copy of which is attached as Exhibit "E" to the Schwinger Certification), Merrill proposed a further limitation on the scope of its email production by which it would omit 12 of the search terms previously agreed to (and previously used with JPMorgan without incident) on a schedule consistent with Merrill's representations at the Status Conference. Thereafter, by email dated December 7, 2009, Merrill offered to expedite its constricted email production only to the limited extent of offering a "target date" for completion of February 11, 2010. See Schwinger Certification at ¶10. After careful consideration of Merrill's proposal, it is clear to the Committee that Merrill's proposed timing as outlined in the Status Conference simply does not work given that (i) substantive settlement negotiations regarding claims arising from the Merger is planned to commence sometime in the early part of January 2010, and (ii) the Debtors' exclusive period to propose a chapter 11 plan is currently set to expire on February 28, 2010. Merrill's counsel has been so advised. Accordingly, the Committee requests the Court's assistance so that this matter is not delayed further by Merrill's stonewalling tactics.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8

**RELIEF REQUESTED**

19.     Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, the Committee requests that the Court order Merrill to (a) commence its production of emails responsive to the May 14, 2009 Amended Request for Information within one week of the date of this Order; (b) complete production of 75% of the total number of email documents by the close of business on December 30, 2009; (c) complete the remainder of such production no later than the close of business on Friday, January 8, 2010.

**BASIS FOR RELIEF**

20.     Bankruptcy Rule 2004 provides that upon a motion of a party in interest, the court may order an examination of any entity relating to the "acts, conduct, or property or liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate ...." Fed. R. Bankr. P. 2004(a) – (b).  Rule 2004 "permits a party invoking to undertake a broad inquiry of the examiner, in the nature of a 'fishing expedition.'"  In re Valley Forge Plaza Assoc., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990); see also In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y 1996) (Rule 2004 is a broad "fishing expedition").

21.     Pursuant to section 1103 of the Bankruptcy Code, the Committee is authorized to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor," including the apparent decline in revenue and poor economic conditions suffered by the Debtors after the Merger.  As set forth in the attached Schwinger Certification, Merrill's approach to its document production has obstructed and delayed the Committee's efforts.  These delays threaten to disrupt the upcoming schedule for activity in these cases that was discussed

with the Court at the Status Conference.  The Committee needs to have this email information in hand by early January 2010 for its investigation of the Merger and to assess whether the Debtors' estates may have causes of action related thereto.

22.    Any potential causes of action relating to the Leveraged ESOP Transaction and the Merger are assets of the Debtors' estates.  Merrill, as the Company's financial advisor as well as an agent and lender under the Credit Agreement and Bridge Facility, has material and relevant information concerning the Merger.  This information relates to the acts, conduct, or property or to the liabilities and financial condition of the Debtors.  Accordingly, the Rule 2004 exam of Merrill is appropriate under these circumstances.  See e.g. 2435 Plainfield Ave., Inc. v. Township of Scotch Plains (In re: 2435 Plainfield Ave., Inc.), 223 B.R. 440, 456 (Bankr. D. N.J. 1998) ("A Rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct.").

23.    Pursuant to Local Rule 2004-1, counsel for the Committee has communicated with counsel for Merrill repeatedly (as set forth in the Schwinger Certification) in an attempt to arrange mutually agreeable production.  Although Merrill has provided the Committee with certain information, Merrill has refused to provide the Committee with the necessary and relevant emails within a reasonable time.  Indeed, under the schedule Merrill originally proposed, its email production would not be completed until nearly a full year after the Committee first issued a document request to Merrill.  Given the upcoming settlement negotiations and possible termination of exclusivity, the Committee needs to receive (so it can review) the emails by early January 2010.  Otherwise, there will be little of hope of having a meaningful settlement negotiation in mid-January 2010 and a confirmable chapter 11 plan in the near term.

WHEREFORE, the Committee respectfully requests that the Court (i) grant the Motion, (ii) compel Merrill to (a) commence its production of emails responsive to the May 14, 2009 Amended Request for Information within one week of the date of this Order; (b) complete production of 75% of the total number of email documents by the close of business on December 30, 2009; (c) complete the remainder of such production no later than the close of business on Friday, January 8, 2010; and (iii) grant such further relief as is just and proper.

Dated: December 8, 2009
     Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Rebecca L. Butcher
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Rebecca L. Butcher (No. 3816)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Counsel to the Official Committee of Unsecured Creditors*

- and -

**ZUCKERMAN SPAEDER LLP**
Graeme W. Bush
James Sottile
Andrew N. Goldfarb
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (phone)
(202) 822 8106 (facsimile)

- and –

/s/ Thomas G. Macauley
Thomas G. Macauley (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
(302) 427-0400 (phone)
(302) 427-8242 (facsimile)

*Special Counsel to the Official Committee of Unsecured Creditors*

11

# EXHIBIT 11

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :

In re:                                      Chapter 11 Cases
                              :  Case No. 08-13141 (KJC)

TRIBUNE COMPANY, et al.,               (Jointly Administered)
                                :

         Debtors.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OBJECTIONS AND RESPONSES OF MERRILL
LYNCH, PIERCE, FENNER & SMITH INCORPORATED AND
MERRILL LYNCH CAPITAL CORPORATION TO WILMINGTON
TRUST'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**

        Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch

Capital Corporation (collectively, "Merrill Lynch"), for their objections and responses to

the First Request for the Production of Documents dated May 13, 2010 ("Document

Requests") made by the Wilmington Trust Company, Successor Indenture Trustee

("Wilmington Trust") for the Exchangeable Subordinated Debentures due 2029 in the

aggregate principal amount of approximately $1.2 billion (the "PHONES"), respectfully

states as follows:

        Merrill Lynch's responses to Wilmington Trust's Document Requests

incorporate and are subject to the objections set forth below (the "General Objections").

These General Objections form a part of the response to each Document Request and are

set forth here to avoid the duplication and repetition of restating them within each

response.  While these General Objections may be referred to specifically in response to

individual document requests for purposes of clarity, the failure to specifically incorporate a General Objection should not be construed as a waiver of the objection. Likewise, any response and/or specific objection to a Document Request should not be construed as a waiver of these General Objections.

## GENERAL OBJECTIONS

1.    Wilmington Trust has served Merrill Lynch with a massive document request which, for the most part, seeks the same documents that Merrill Lynch previously provided to the Official Committee of Unsecured Creditors (the "UCC") in response to the UCC's discovery requests dated March 26, 2009, as amended on May 14, 2009 (hereinafter, the "UCC Document Requests"), which sought documents from Merrill Lynch in its role as an agent and a lender under the Senior Loan Agreement and Bridge Facility[1] and in its capacity as a financial advisor to the Tribune Company ("Tribune"). Wilmington Trust was a member of the UCC at all relevant times, including when the UCC and Merrill Lynch negotiated the scope, i.e., time periods, custodians and search terms, of the UCC Document Requests. As explained below, Merrill Lynch has already produced more than one million pages of documents to the UCC in response to the UCC's Document Requests, which documents have been made available to Wilmington Trust and, indeed Wilmington Trust has availed itself of those documents. Therefore, to the extent that Wilmington Trust seeks documents that go beyond the previously agreed

---

[1]    Merrill Lynch incorporates the definitions of these terms as they are used in the Proposed Disclosure Statement for Proposed Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries, dated May 24, 2010 (hereinafter "Disclosure Statement") at 31-32.

upon time periods, custodians and search terms, it would be unduly burdensome, time consuming, expensive and unfair for Merrill Lynch to have to engage in a second collection, filtering, processing, and reviewing exercise.

After the UCC served the UCC Document Requests, the UCC and Merrill Lynch agreed that Merrill Lynch would first produce non-email electronic and hard copy documents, to enable the UCC to inform itself as to the selection of appropriate custodians and search terms for a subsequent email production. Merrill Lynch collected hard copy documents and also collected non-email electronic documents from Merrill Lynch employees (the "Non-Email Data Set") and searched the Non-Email Data Set for responsive documents for the period between January 1, 2007 and December 8, 2008. Between July 14, 2009 and November 25, 2009, Merrill Lynch produced 1,086 hard copy documents and 72,944 non-email electronic documents.

The UCC and Merrill Lynch then engaged in further, extensive discussions concerning the scope of the email production because, as proposed by the UCC, Merrill Lynch's cost of complying, as it related to emails, would have been in the range of between $4 million and $16 million and would have likely required the collection and processing of almost five terabytes of data.

On October 26, 2009, the UCC and Merrill Lynch agreed to a seven step plan with respect to the production of emails (the "EDP"). Under the EDP, Merrill Lynch agreed to search emails of 12 designated custodians from within nine groups at Merrill Lynch. These custodians were selected based on the functions performed by them and their groups in connection with the Leveraged ESOP Transactions (as defined

in the Disclosure Statement) and were likely to capture the vast majority of emails responsive to the UCC's Document Requests. Merrill Lynch also agreed to search the email data collected and processed using 40 of the 42 broad search terms originally proposed by the UCC. If, after collecting the data, Merrill Lynch concluded that the use of 40 search terms required by the UCC yielded an unduly burdensome amount of data to cull, review and produce, the UCC and Merrill Lynch agreed that Merrill Lynch would communicate its view to the UCC and attempt to reach agreement on less burdensome search terms. Merrill Lynch also agreed to modify the agreed upon time period for email document production so that the time period to be searched for emails would begin six months earlier than the Non-Email Data Set and would run from June 1, 2006 to December 8, 2008.

On November 18, 2009, Merrill Lynch completed the collection of email data for the 12 custodians identified in the EDP. The email data collected was 215 gigabytes and, after filtering, yielded approximately 330,000 email documents, which was an unduly burdensome amount of data to cull, review and produce. Accordingly, Merrill Lynch proposed and the UCC agreed to exclude 12 of the 40 search terms and, when the 28 search terms were applied to the email data, there were 276,969 email documents (the "Email Data Set"). After the Email Data Set was culled and reviewed, Merrill Lynch produced 27,302 email documents to the UCC. In total, Merrill Lynch produced 101,332 hard copy, non-email electronic and email documents, representing a total of 1,363,768 pages.

In light of Merrill Lynch's prior production of more than one million pages of documents to the UCC pursuant to and in accordance with negotiated agreements with the UCC -- of which Wilmington Trust is a member -- it would be extraordinarily burdensome and a waste of Merrill Lynch's resources for Merrill Lynch to undertake a second collection, review and production of documents responsive to requests made by Wilmington Trust. Merrill Lynch objects to each Document Request to the extent that it seeks documents in addition to those already produced to the UCC.

2.      Merrill Lynch objects to each Document Request to the extent that it seeks (a) material not reasonably calculated to lead to the discovery of admissible evidence, (b) information not relevant to the Wilmington Trust's objections to the Proposed Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries, (c) material protected by the attorney-client privilege, the work-product doctrine, the joint interest or common interest privilege, or any other applicable privilege or (d) material which otherwise exceed(s) the bounds of the Federal Rules of Civil Procedure ("FRCP"), the Federal Rules of Bankruptcy Procedure ("FRBP"), the Local Rules of the Bankruptcy Court for the District of Delaware, or other applicable laws. Any inadvertent production of a document or information which is privileged or immune from discovery shall not be deemed a waiver of any privilege or immunity with respect to such document or information. Merrill Lynch reserves the right to demand the return of any document that may be produced inadvertently as part of Merrill Lynch's responses to the Document Requests if it determines that such document contains privileged information.

3.    Merrill Lynch objects to each of the Document Requests that (a) are vague or ambiguous with respect to the information sought, (b) are overly broad or unreasonably burdensome in the context of confirmation and approval of a settlement under Federal Rule of Bankruptcy Procedure 9019, and include requests more appropriate to trial of a contested matter rather than the avoidance of cost and expense contemplated by settlement, (c) are duplicative or (d) call for documents or information not within Merrill Lynch's possession, custody, or control.

4.    Merrill Lynch objects to each Document Request that calls for documents that are already in Wilmington Trust's possession, are readily accessible from the "Debtors" and "Guarantor Subsidiaries," have already been produced by Merrill Lynch to the UCC, or are within the public domain.

5.    Merrill Lynch objects to each Document Request that seeks production of trade secrets or confidential, proprietary or other sensitive information of Merrill Lynch or a third party. Such information as well as all documents produced in response to the Document Requests will only be produced subject to a Protective Order governing the exchange of such information between Merrill Lynch and Wilmington Trust. All documents produced are produced solely for use in this matter, and for no other purpose, and are to be governed by the terms of the Protective Order agreed to by the parties. To the extent that Merrill Lynch inadvertently produces such information as part of Merrill Lynch's responses to the Document Requests, Merrill Lynch reserves the right to demand the return of any such document until a protective order is agreed upon and so ordered by the Court.

6.    Merrill Lynch objects to all definitions that are inconsistent with the FRCP, the FRBP or the Local Rules of the Bankruptcy Court for the District of Delaware. Merrill Lynch's use of a particular definition provided by Wilmington Trust in responding to the Document Requests is not an admission of the accuracy of the particular definition. Merrill Lynch further reserves its right to (a) dispute Wilmington Trust's interpretations, definitions and characterizations of terms and/or events and (b) assert its own interpretations, definitions and characterizations to such terms and/or events.

7.    Merrill Lynch objects to the Document Requests as they each request "all" and/or "any" documents, statements, reports, memoranda or indices relating to a particular subject matter.

8.    Merrill Lynch objects to the definition of the words "You" and "Your" in the DEFINITIONS section of the Document Requests as unduly burdensome and vague and ambiguous to the extent they improperly impose obligations upon persons and entities that are not parties in interest in these chapter 11 cases and impose a duty upon Merrill Lynch to produce documents and things that are not within its possession, custody or control. Merrill Lynch further objects to the definitions of "You" and "Your" to the extent that they include Merrill Lynch's outside counsel within those definitions. Merrill Lynch will not search the files of its outside counsel.

9.    Merrill Lynch objects to the definition of the word "concerning" in the DEFINITIONS section of the Document Requests as unduly burdensome, overly broad

and vague and ambiguous.  Merrill Lynch will use the ordinary English definition of this word to interpret the Document Requests.

10.    Merrill Lynch objects to the definition of "Tribune" in the DEFINITIONS section of the Document Requests on the grounds that it is overly broad, unduly burdensome, vague and ambiguous.  The definition encompasses each of Tribune's affiliates, subsidiaries, officers, directors, employees, agents, consultants, advisors, attorneys and representatives, and any other persons acting, or who have acted, on its behalf without regard to their connection to the events at issue.  Moreover, Merrill Lynch has no basis for knowing whether a person is "acting, or [has] acted, on [Tribune's] behalf."  In responding to the Document Requests, Merrill Lynch will construe "Tribune" to mean only Tribune Company and its employees and agents known to Merrill Lynch as such.

11.    Merrill Lynch objects to the definitions of "Zell" and "Zell Entities" in the DEFINITIONS section of the Document Requests on the grounds that they are overly broad, unduly burdensome, vague and ambiguous.  The definition encompasses each of Zell's and the Zell Entities' affiliates, subsidiaries, officers, directors, employees, agents, consultants, advisors, attorneys and representatives, and any other persons acting, or who have acted, on its behalf without regard to their connection to the events at issue. Moreover, Merrill Lynch has no basis for knowing whether a person is "acting, or [has] acted, on [Zell's or the Zell Entities'] behalf."  In responding to the Document Requests, Merrill Lynch will construe "Zell" and "Zell Entities" to mean only Samuel Zell, Sam

Investment Trust, Equity International, Equity Group Investments, L.L.C., EGI-TRB LLC and their respective employees and agents known to Merrill Lynch as such.

12.    Merrill Lynch objects to the definition of "Merger" in the DEFINITIONS section of the Document Requests on the grounds that it is overly broad, unduly burdensome, vague and ambiguous.

13.    Merrill Lynch objects to the definition of the words "and" and "or" in Instruction No. 1 as vague and ambiguous. Merrill Lynch will construe the words "and" and "or" either disjunctively or conjunctively.

14.    Merrill Lynch objects to Instruction No. 2 as unduly burdensome and vague and ambiguous. Merrill Lynch will produce all documents within its actual custody or control. Merrill Lynch will not search the records of any affiliates of Merrill Lynch.

15.    Merrill Lynch objects to Instruction Nos. 3 and 4 to the extent that Merrill Lynch redacts privileged or non-responsive information from documents, prior to production to Wilmington Trust, which contain a combination of responsive, non-responsive and/or privileged information. Merrill Lynch further objects to Instruction Nos. 3 and 4 to the extent that they seek to impose obligations beyond those in the FRCP or the FRBP.

16.    Merrill Lynch objects to Instruction Nos. 6, 9, 11, 12 and 15 as unduly burdensome.

17.    Merrill Lynch objects to Instruction No. 10. Consistent with its obligations under the FRCP, the FRBP and Local Rule 7026-3(d) of the United States

Bankruptcy Court for the District of Delaware, Merrill Lynch intends to produce all electronically stored information as TIFF or PDF images with the appropriate load files for text searching. Merrill Lynch objects to producing documents in "native" format with an accompanying index as unduly burdensome and unnecessarily duplicative. Prior to production, Merrill Lynch reserves its right to demand that Wilmington Trust bear the cost of processing to produce TIFF or PDF images with the appropriate load files for text searching.

18.     Merrill Lynch objects to Instruction No. 16 as unduly burdensome and reserves the right to oppose any request by Wilmington Trust to further amend or supplement its Document Requests.

19.     To the extent there are documents responsive to the Document Requests, Merrill Lynch will provide Wilmington Trust with a DVD (or other form of storage medium) of such responsive documents at a mutually convenient and agreed upon time, unless other arrangements are agreed to by Wilmington Trust and Merrill Lynch.

20.     Nothing contained herein may be construed as an admission relative to the existence or non-existence of any document, claim, fact or allegation and no response is an admission with respect to the relevance or admissibility of any evidence or any statement or characterization contained in any Document Request.

21.     Merrill Lynch's failure to object to a Document Request, or its statement that it will produce non-privileged responsive documents, if any exist, is not an indication that responsive documents actually exist or are in Merrill Lynch's possession, custody or control. Merrill Lynch reserves the right to supplement its responses or objections if, in

the course of these chapter 11 cases, it becomes aware of information and/or documents which are called for by the Document Requests but were not known or available at the time these responses were made. Failure to object to any Document Request shall not constitute a waiver of any objection by Merrill Lynch to such Request and all of Merrill Lynch's rights to object are hereby preserved.

**SPECIFIC RESPONSES AND
OBJECTIONS TO DOCUMENT REQUESTS**

### REQUEST NO. 1.

All documents concerning the PHONES during the Relevant Period in connection with the Merger, the financing of the Merger, or otherwise.

### RESPONSE TO REQUEST NO. 1.

Merrill Lynch repeats and reincorporates each of its General Objections to Request No. 1. Subject to these objections, Merrill Lynch will search the Non-Email and Email Data Sets that were previously compiled in response to the UCC's Document Requests, using the search terms "PHONES" and "Exchangeable Subordinated Debentures due 2029," and produce any non-privileged responsive documents to the extent not previously produced.

### REQUEST NO. 2.

All documents concerning Citibank, N.A.'s role and activities as Indenture Trustee to the PHONES, and its resignation as Indenture Trustee.

### RESPONSE TO REQUEST NO. 2.

Merrill Lynch repeats and reincorporates each of its General Objections to Request No. 2. Merrill Lynch further objects to Request No. 2 because the information

is not relevant to discovery regarding the Proposed Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries. Instead, Wilmington Trust is attempting to gain information for use in its adversary proceeding, *Wilmington Trust Company, v. J.P. Morgan Chase Bank, N.A.*, Adv. No.10-50732 (KJC) in which it seeks damages against Citibank, N.A. for its alleged breach of fiduciary duty as the indenture trustee to the PHONES. Subject to these objections, Merrill Lynch will search the Non-Email and Email Data Sets that were previously compiled in response to the UCC's Document Requests, using the search terms "Citibank, N.A." and "Indenture Trustee," and produce any such non-privileged responsive documents to the extent not already produced.

## REQUEST NO. 3.

All documents concerning any presentations, proposals, term sheets, commitment letters, credit committee memoranda, meeting minutes, reports, summaries or analyses with respect to the Merger or the proposed financing thereof.

## RESPONSE TO REQUEST NO. 3.

Merrill Lynch repeats and reincorporates each of its General Objections to Request No. 1. Merrill Lynch has already produced documents responsive to this request to the UCC in response to the UCC's Document Requests and Wilmington Trust has access to those documents.

## REQUEST NO. 4.

All documents concerning any presentations, proposals, term sheets, agreements, assignments, offering statements, prospecti, memoranda, reports, summaries

or analyses with respect to any proposed, contemplated, attempted or actual syndication, assignment or sale of all or any part of the Merger financing including, without limitation, the Senior Credit Facility.

**RESPONSE TO REQUEST NO. 4.**

    *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 5.**

    All documents concerning Tribune's balance sheets, income statements, statements of cash flow, general ledgers or other similar financial report or any kind or nature during the Relevant Period.

**RESPONSE TO REQUEST NO. 5.**

    *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 6.**

    All documents concerning any projections of Tribune's financial, cash flow, or operating performance during the Relevant Period, and any review or analyses thereof including, without limitation, any base cases, downside cases, stress tests or other similar document.

**RESPONSE TO REQUEST NO. 6.**

    *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 7.**

    All documents concerning the solvency of Tribune during the Relevant Period including, without limitation, whether as a result of the Merger and the proposed financing thereof, the value of Tribune's assets were exceeded by its liabilities, whether

Tribune was left with unreasonably small capital, and whether Tribune was unable to pay its debts as they became due.

**RESPONSE TO REQUEST NO. 7.**

  *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 8.**

  All documents concerning any oral or written opinions from any source with respect to the solvency of Tribune during the Relevant Period including, without limitation, any such opinion from Valuation Research Corporation, and any review, discussion or analyses of such opinions.

**RESPONSE TO REQUEST NO. 8.**

  *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 9.**

  All documents concerning any proposed or actual organizational, financial or operational structure of Tribune as part of the Merger.

**RESPONSE TO REQUEST NO. 9.**

  *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 10.**

  All documents concerning the negotiation, drafting or closing of the Senior Credit Facility, the Bridge Facility, the Credit Agreement, or the Zell Notes.

**RESPONSE TO REQUEST NO. 10.**

  *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 11.**

All documents concerning the funding, administration and/or enforcement of the Senior Credit Facility, the Bridge Facility, the Credit Agreement, or the Zell Notes.

**RESPONSE TO REQUEST NO. 11.**

*See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 12.**

All documents concerning any tax issues identified by any person in connection with any proposed or actual financial or organizational structure of the Merger.

**RESPONSE TO REQUEST NO. 12.**

*See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 13.**

All documents concerning the possible treatment of the claims of the LBO Lenders, senior noteholders, PHONES, or other creditors in any bankruptcy proceeding of Tribune.

**RESPONSE TO REQUEST NO. 13.**

*See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 14.**

All documents concerning any due diligence performed by you or any consultant, expert, investment banker or other professional retained by you in connection with the Merger or the proposed financing thereof.

**RESPONSE TO REQUEST NO. 14.**

   *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 15.**

   All documents concerning the use, disposition and application of any of the proceeds of the loans that funded the Merger including, without limitation, any closing statements, letters of direction or other similar documents.

**RESPONSE TO REQUEST NO. 15.**

   *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 16.**

   All documents concerning the amount and timing of any repayment by Tribune of any principal, interest or other sums due under the Senior Credit Facility, the Bridge Facility, the Credit Agreement, or the Zell Notes.

**RESPONSE TO REQUEST NO. 16.**

   *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 17.**

   All documents concerning any notices, demands or requests issued by you to Tribune with respect to the Senior Credit Facility or any provision of the Credit Agreement, and any responses thereto.

**RESPONSE TO REQUEST NO. 17.**

   *See* Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 18.**

   All documents concerning any amendments or modifications of the Senior Credit Facility.

968325/33740        16

**RESPONSE TO REQUEST NO. 18.**

See Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 19.**

All documents concerning the amount and recipients of any bonuses or other form of additional compensation paid by you to any of your employees as a consequence of their role in the Merger or the financing thereof.

**RESPONSE TO REQUEST NO. 19.**

Merrill Lynch repeats and reincorporates each of its General Objections to Request No. 19.   In addition, Merrill Lynch specifically objects to Request No. 19 on the grounds that it is overly broad, unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence.

**REQUEST NO. 20.**

All documents concerning the amount and type of any compensation, fees or other form of payment charged or received by you in connection with the Merger or the financing thereof.

**RESPONSE TO REQUEST NO. 20.**

See Response to Request No. 3 which is incorporated herein.

**REQUEST NO. 21.**

All documents concerning the nature, extent and type of any investment banking, financial, lending or other form of service provided by you to any Zell Entities within the past five (5) years including, without limitation, the amount and type of any compensation, fees or other form of payment charged or received by you from any Zell Entities.

**RESPONSE TO REQUEST NO. 21.**

        Merrill Lynch repeats and reincorporates each of its General Objections to Request No. 21.  In addition, Merrill Lynch specifically objects to Request No. 21 on the grounds that it is overly broad, unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence.  Merrill Lynch previously produced documents responsive to this request using the search terms "Zell," "EGI-TRB," "EGII," "Equity Group Investments," "Equity Office Properties," and "Sam Investment Trust." Merrill Lynch will search the Non-Email and Email Data Sets that were previously compiled in response to the UCC's Document Requests, using the additional search term "Equity International" and produce any such non-privileged responsive documents to the extent not already produced.

**REQUEST NO. 22.**

        All documents concerning the negotiation, documentation or analyses of the Proposed Settlement including, without limitation, any notes, letters, electronic mails, term sheets, memoranda, reports, presentations or other similar document.

**RESPONSE TO REQUEST NO. 22.**

        Merrill Lynch repeats and reincorporates each of its General Objections to Request No. 22.  Merrill Lynch did not participate in the negotiation or documentation of the Proposed Settlement and any subsequent analyses of the Proposed Settlement would be protected from disclosure by the attorney-client and work product privileges. Accordingly, Merrill Lynch does not have any non-privileged documents responsive to this Request.

**REQUEST NO. 23.**

   All documents sufficient to identify the names, roles, involvement and specific duties of any of your employees, agents, consultants or attorneys in the negotiation, documentation or analyses of the Proposed Settlement.

**RESPONSE TO REQUEST NO. 23.**

   *See* Response to Request No. 22 which is incorporated herein.

**REQUEST NO. 24.**

   All calendars and time records of any of your employees, agents, consultants and attorneys involved in the negotiation, documentation or analyses of the Proposed Settlement.

## RESPONSE TO REQUEST NO. 24.

*See* Response to Request No. 22 which is incorporated herein.

Dated:    May 27, 2010
          Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

By: *R. Stephen McNeill*

Laurie Selber Silverstein (DE Bar 2396)
R. Stephen McNeill (DE Bar No. 5210)
P.O. Box 951
1313 N. Market Street, 6th Floor
Wilmington, Delaware  19899
    (302) 984-6000

-and-

KAYE SCHOLER LLP
Madlyn Gleich Primoff
Joseph M. Drayton
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Counsel for Merrill Lynch, Pierce, Fenner &
Smith Incorporated and Merrill Lynch Capital
Corporation*

968325/33740

20

# EXHIBIT 12

# EXHIBIT 12

| Leveraged Buy Out Period December 20, 2007-December 8, 2008 ||
|---|---|
| **Merrill Lynch's Search Terms** | **Law Debenture's Proposed Search Terms** |
| Tribune | Tribune |
| Trib | Trib |
| TRB | TRB |
| EGI | EGI |
| Zell | Zell |
| EGI-TRB | EGI-TRB |
| EGII | EGII |
| Equity Office Properties | Equity Office Properties |
| Equity Group Investments | Equity Group Investments |
| Sam Investment Trust | Sam Investment Trust |
| Chandler | Chandler |
| Grenesko | Grenesko |
| Osborn* | Osborn* |
| Chai Trust | Chai Trust |
| ESOP | ESOP |
| TESOP | TESOP |
| VRC | VRC |
| Valuation Research | Valuation Research |
| Nils | Nils |
| Larsen | Larsen |
| FitzSim* | FitzSim* |
| Tower | Tower |
| McCormick | McCormick |
| Foundation* | Foundation* |
| GreatBanc | Great Banc |
| Cantigny | Cantigny |
| Murray Devine | Murray |
|  | Devine |
| Tranche X | Tranche X |
|  | Tranche B |
|  | "Scorp*" |
|  | S Corp*" |
|  | S-Corp* |
|  | "D&P |
|  | "Duff & Phelps" |
|  | Navigant |
|  | Kenny |
|  | Kenney |
|  | Crane |

1

|  | Bigelow |
|---|---|
|  | Taubman |
|  | Whayne |
|  | (step or phase) w/2 (one or two or first or second or 1 or 2) |
| *PHONES*[1] | PHONES |
| *"Exhangeable Subordinated Debentures due 2029"* |  |
| *"Citibank, N.A."* |  |
| *"Indenture Trustee"* |  |
| *"Equity International"* |  |
| **Bankruptcy Period** **December 8, 2008-September 1, 2009** | |
| Tribune | Tribune |
| TRB | TRB |
| Trib* | Trib* |
|  | Angelo |
|  | Bendernagel |
|  | Bigelow |
|  | Chadbourne |
|  | Chandler |
|  | EGI |
|  | EGII |
|  | "Equity Group Investments" |
|  | "Equity Office Properties" |
|  | Fiduciary /5 duty |
|  | fraudulent w/1 conveyance |
|  | Grenesko |
|  | (James or Jim) w/1 Conlan |
|  | Krakauer |
|  | Kurtz |
|  | "LBO-related causes of action" |
|  | Lemay |
|  | Oaktree |
|  | "Preserved causes of action" |
|  | Seife, Siefe |
|  | Settle* w/25 LBO |
|  | "sharing provision" |
|  | Sidley |

---

[1] Bolded, italicized terms indicate seach terms identified in Merrill Lynch's WT Response which were run in the set of documents retrieved by Merrill Lynch though using the 28 search terms above, not directly from the master files of Merrill Lynch's custodians, as explained in Law Debenture's Motion to Compel. As noted therein, Merrill contested this point in the January 14 Meet and Confer, stating that it would confirm with its client but that it believed the additional search terms were run directly from the custodians; however, the plain language of the WT Responses belies this assertion.

| | |
|---|---|
| | (step or phase) w/2 (one or two or first or second or 1 or 2) |
| | Zell |
| | Release* |
| | AG |
| **Bankruptcy Period** **September 1, 2009-December 3, 2010** | |
| Tribune | Tribune |
| TRB | TRB |
| Trib* | Trib* |
| | Adler |
| | AG |
| | Akin |
| | Angelo |
| | "April Proposed Settlement" |
| | Aur* |
| | "bar order" |
| | Bendernagel |
| | Bennett |
| | Bigelow |
| | breach w/1 fiduciary w/1 duty |
| | Chadbourne |
| | Chandler |
| | Conlan |
| | Crane |
| | "Creditors Trust" |
| | "Creditor's Trust" |
| | D&P |
| | Devine |
| | Dublin |
| | Duff & Phelps |
| | EGI |
| | ESOP |
| | examiner or examiners or examiner's |
| | FitzSimons |
| | fraudulent w/1 conveyance |
| | Golden |
| | Graeme |
| | Grenesko |
| | HBD |
| | hennigan w/1 bennett |
| | "intercompany settlement" |
| | Judge w/2 Gross |
| | Kasowitz |
| | Kenney |

| | |
|---|---|
| | Kenny |
| | Klee |
| | Krakauer |
| | Kurtz |
| | Larsen |
| | Lauria |
| | "Law Deb!" |
| | Lazard |
| | LBO |
| | "Litigation Trust" |
| | Mandava |
| | Nils |
| | "Noteholder Plan" |
| | Oaktree |
| | PHONES |
| | "Preserved causes of action" |
| | Rosner |
| | Rudnick |
| | Sam Investment Trust |
| | Seife, Siefe |
| | Settle* w/25 LBO |
| | "settlement plan" |
| | Shapiro |
| | "sharing provision" |
| | Sidley |
| | Sottile |
| | Stark |
| | (step or phase) w/2 (one or two or first or second or 1 or 2) |
| | Taubman |
| | Tower |
| | Valuation Research |
| | VRC |
| | Whayne |
| | "White and Case" |
| | Wilderotter |
| | Zell |
| | Zuckerman |
| | Release* |

# EXHIBIT 13

| CUSTODIAN | ROLE WITH MERRILL LYNCH | RELEVANCE TO PLAN CONFIRMATION HEARING |
|---|---|---|
| Stephen Paras | Managing Director, Leveraged Finance Capital Markets | Mr. Paras is identified by the Examiners Report as "key personnel working with Tribune on behalf of the Merrill Entities." (Examiner Report Vol. I, p. 269) |
| David Tuvlin | Managing Director, Leveraged Finance | Mr. Tuvlin is identified by the Examiner's Report as "key personnel working with Tribune on behalf of the Merrill Entities." (Examiner Report Vol. I, p. 269). |
| Nancy Meadows | Vice President, Loan Execution and Management | Ms. Meadows is listed as a Vice President for Loan Execution and Management in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223).<br><br>The Examiner quotes Ms. Meadows as having stated: "I'm not saying we love the credit, and the leverage is high, but there is some asset value here." (Examiner Report Vol I, at 289). |
| John Eidinger | Associate, Mergers & Acquisitions | Mr. Eidinger is listed as an Associate with the Mergers & Acquisitions group in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223).<br><br>In an April 6, 2007 email, Chris Cormier congratulated John Eidinger, Michael Costa, and Todd Kaplan for what Cormier called "truly amazing financing engineering" regarding Tribune. (ML-TRIB-0387938-ML-TRIB-387942 at ML-TRIB-0387938).<br><br>Mr. Eidinger played a role in valuation analyses for Tribune and stated: "I can only take valuation up so much on an EBITDA basis." (MLB-TRIB-0597523-24).<br><br>Mr. Eidinger also played significant role in Merrill Lynch's Fee Proposal and Fairness memorandum. (ML-TRIB-0595294-98; ML-TRIB-0607636; ML-TRIB-1145527-30). |
| David Lewicki | Analyst, Investment | Mr. Lewicki is listed as an Analyst in the Investment Banking Group in an April 2007 |

| CUSTODIAN | ROLE WITH MERRILL LYNCH | RELEVANCE TO PLAN CONFIRMATION HEARING |
|---|---|---|
| | Banking Group | Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| | | Mr. Lewicki played an active role in Merrill Lynch's internal valuation of Tribune. For example, Mr. Lewicki created an analysis which attempted to replicate the tax savings aspects of the VRC Report. (ML-TRIB-1402294). |
| | | Mr. Lewicki also collected and circulated sensitive information regarding Craig Huber's of Lehman's negative report on Tribune, from Chandler Bigelow. (Examiner Ex. 999; Examiner Report Vol. 1 at 606, n. 2528). Before that, he located, circulated and analyzed a prior negative Lehman report (ML-TRIB-0548239). |
| Matthew Buffington | Analyst, Mergers & Acquisitions | Mr. Buffington is listed as an Analyst in Mergers & Acquisitions in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| | | Mr. Buffington participated in various Tribune projects including the: the Special Committee deck; Debt-for-Debt deck; Broadcasting Valuation; and the Covenant Analysis. (ML-TRIB-0604202-225; ML-TRIB-0381742-751; ML-TRIB-0602093-96; ML-TRIB-0610308-312). |
| Jose Cotarelo | Director of Mergers and Acquisitions | Mr. Cotarelo is listed as the Director of Mergers and Acquisitions in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| | | Mr. Cotarelo participated in Merrill Lynch's fee proposal to Tribune and in Merrill Lynch's fairness opinion (ML-TRIB-0418810; ML-TRIB-0418811-ML-TRIB-0418817; ML-TRIB-0006970-7011 at ML-TRIB-0006971). At least one time, Cotarelo circulated an email instructing others not to circulate, suggesting that he may have documents not in the possession of other custodians (ML-TRIB-0418810-ML-TRIB-0418817). |

2

| CUSTODIAN | ROLE WITH MERRILL LYNCH | RELEVANCE TO PLAN CONFIRMATION HEARING |
|---|---|---|
| Caroline Kim | Investment Banker | The Examiner's Report identified Ms. Kim as an investment banker who "circulated a debt covenants analysis among her colleagues." (Examiner Report Vol I at 282, and Ex. 340 at ML-TRIB-0619109). |
| | | Ms. Kim is also listed as an associate in the leveraged finance department in an April 2007 Tribune Working Group List. (ML-TRIB-0007221-ML-TRIB-0007228 at ML-TRIB-0007223). |
| Mitchell Marcus | Managing Director, Investment Banking | Mr. Marcus is listed as a Managing Director for Investment Banking in an April 2007 Tribune Working Group List. (ML-TRIB-0007223). |
| | | Mr. Marcus played a role in Merrill Lynch's valuation of Tribune and in Merrill Lynch's analysis of the VRC Preliminary Solvency Opinion. (ML-TRIB-1052281; Examiner Ex. 358; Examiner Report Vol. I at 290, n.1200). |
| | | Mr. Marcus also participated in discussions regarding the structure of the Tribune transaction. (ML-TRIB-0361430-31). |
| Mariela Figueroa | Associate, Leveraged Finance Capital Markets | Ms. Figueroa is listed as an associate in Leveraged Finance Capital Markets in an April 2007 Tribune Working Group List. (ML-TRIB-0007223). The Leveraged Finance Department is of particular important to the viability of the LBO. |
| | | Ms. Figueroa appears on the cover page of a February 22, 2007 Tribune presentation. (MLB-TRIB-0429502 - MLB-TRIB-0429516). |
| | | Ms. Figueroa participated in discussions regarding Merrill's Fees. (ML-TRIB-1401770-773). On January 25, 2007, Ms. Figueroa was asked for her advice regarding a Tribune proposal regarding pricing. (ML-TRIB-0427048- ML-TRIB-0427048T075). |

# EXHIBIT 14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          ) Chapter 11
                                )
TRIBUNE COMPANY, et al.,        ) Case No. 08-13141 (KJC)
                                )
                                ) Courtroom 5
                                ) 824 Market Street
_____Debtors._____ ) Wilmington, Delaware

                                  December 6, 2010
                                  2:00 p.m.


                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE KEVIN J. CAREY
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                BY: JAMES BENDERNAGEL, JR., ESQ.
                                BY: KENNETH P. KANSA, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (213) 896-6022

                                Cole, Schotz, Meisel, Forman &
                                Leonard, PA
                                BY:  NORMAN PERNICK, ESQ.
                                1000 North West Street
                                Suite 1200
                                Wilmington, DE 19801
                                (302) 652-3131


ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664


Proceedings recorded by electronic sound recording; transcript
produced by transcription service

1              THE COURT:  Okay.  Let me -- let me ask you to

2  pause for a moment and save you some breath.  I am not going

3  to order as a blanket matter the exclusion of discovery with

4  respect to LBO matters.

5              MR. ZENSKY:  Okay.  Well, that's --

6              THE COURT:  Okay.

7              MR. ZENSKY:  -- a lot of what I wanted to speak

8  to, but I think that I need to still speak to it because it

9  sounds like Your Honor is thinking about some kind of

10  limitation and --

11              THE COURT:  Yes, I am.

12              MR. ZENSKY:  Okay.  So I think I still need to --

13              (Laughter.)

14              THE COURT:  And, you know, I think in a way that,

15  despite the positions taken respectably by the parties in a

16  way that they might expect.  But I don't mean to cut you

17  off, but I just wanted to let you know that I agree with

18  you.

19              MR. ZENSKY:  Okay.  It -- the motion appears in

20  an effort to twist and contort the 9019 hearing into

21  something that coincides with their legal strategy perfectly

22  and prejudices the people who are opposing the settlement,

23  Your Honor.  And it's a settlement that coughs up what, as

24  you know, the people on this side of the room believe to be

25  a woefully inadequate amount of consideration for one of the

1  agree that we don't need too many depositions on the merits

2  and we could shortcut down on a lot of things.

3            So if the banks want to admit Paragraph 3, that

4  they recognize the LBO would render the company insolvent or

5  create a high risk of insolvency, I'll take that stipulation

6  and cut down on our need for discovery, Your Honor, on the

7  merits.  If they want to stipulate that the debtors -- and

8  now I'm quoting Paragraph 133 -- "structured the LBO

9  financing with actual intent to hinder, delay or defraud the

10  non-bank lenders," that will cut down on the length of the

11  hearing I suspect and we'll end up in a debate about their

12  legal defenses.  Okay.

13            Do they want to admit Paragraph 691, that the

14  debtors made unjustifiable changes to their projections on

15  the eve of closing Step Two and mislead the company's

16  solvency expert?  I think you get the point.  I'll stop if

17  they want to --

18            THE COURT:  I actually got --

19            MR. ZENSKY:  -- come up and --

20            THE COURT:  I got it awhile ago.

21            MR. ZENSKY:  Yeah.  Okay.  So --

22            THE COURT:  I understand your position and I'm

23  going to give you the opportunity to take within --

24            MR. ZENSKY:  Okay.

25            THE COURT:  -- certain limitations --

1           MR. ZENSKY:  Then that's what I'll turn to, Your

2    Honor.

3           THE COURT:  -- discovery.

4           MR. ZENSKY:  Okay.  The untrammeled -- let me

5    talk about the untrammeled discovery that they say that we

6    want.

7           We served the debtors with our document requests.

8    There are five requests that go to the history -- the

9    transaction itself, the historical merits, which -- which

10   they say there should be no discovery.  And each of the

11   requests says, "to the extent you have not yet put in the

12   deposit -- document depository, produce the following."

13   Okay.  It's not asking them to reproduce millions of

14   documents.  If they produced all the documents relevant to

15   the transaction and they're in the depository, there's

16   nothing to do on that issue.

17          Let me tell you what this is really about, and

18   you heard it come out before.  The examiner found that the

19   banks and the other parties took suspect positions on

20   privilege.  Okay.  So they figure that -- and they did not

21   capitulate on that, Your Honor.  Mr. Kaminetzky is mistaken.

22          What they capitulated on was confidentiality with

23   what they did turn over.  They agreed that the examiner

24   could publish that.  They never capitulated on their

25   spurious claims of privilege; that the business people could