## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY *et al.*, | : | Case No. 08-13141 (KJC) |
| | : | Jointly Administered |
| Debtors. | : | |
| _____ | : | **Hearing Date: 1/21/11 @ 10:00 a.m.** |

**Re: D.I. 7091**

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER CONFIRMING THAT
THE COURT'S OCTOBER 27, 2010 ORDER GRANTED THE COMMITTEE
STANDING WITH RESPECT TO ALL CLAIMS ASSERTED IN THE AMENDED
COMPLAINTS IN ADVERSARY PROCEEDING NOS. 10-53963 AND 10-54010**

The Official Committee of Unsecured Creditors (the "Committee") of the Tribune

Company (the "Company") and its various debtor-subsidiaries (collectively, the "Debtors")

respectfully submits its reply in support of its December 7, 2010 motion (the "Motion to Confirm

Standing") for entry of an order confirming that the Court's October 27, 2010 order granting the

Committee standing on behalf of the Debtors' estates to commence, prosecute and settle claims

and counterclaims arising out of or in connection with the Debtors' 2007 leveraged buyout

transaction ("LBO") encompasses all claims set forth in the Committee's Amended Complaints

filed on December 7, 2010 in Adv. No. 10-53963 (the "Lender Action") and Adv. No. 10-54010

(the "Third Party Action") (collectively, the "LBO Actions").

### PRELIMINARY STATEMENT

The Court's October 27, 2010 order (the "Standing Order") [D.I. 6150] granted the

Committee's original standing motions [D.I. 3281/5668 and D.I. 5698] and conferred standing

on the Committee to commence and prosecute all the claims in the Amended Complaints. The

Committee filed its Motion to Confirm Standing out of an abundance of caution to avoid any

doubt that its standing to commence and prosecute the LBO Actions extends to all of the claims in the Amended Complaints.

This reply concerns the lone filing made in response to the Motion to Confirm Standing. On December 14, 2010, Sam Zell and EGI-TRB L.L.C. (the "Zell Parties"), parties named as defendants in the Third Party Action, submitted a Limited Objection to the Committee's Motion to Confirm Standing with Respect to Certain Claims (the "Limited Objection") [D.I. 7164].  On December 17, 2010, the Court granted the Motion to Confirm Standing [D.I. 7223] but reserved ruling on the Limited Objection.

In the Limited Objection, the Zell Parties concede that this Court properly granted the Committee standing to commence the actions.  They could hardly do otherwise given their counsel's statement that the Zell Parties "don't object to the UCC's motion for standing." Tr. of Proceedings at 43 (Oct. 22, 2010).  However, they seek to invent a distinction between standing to **commence** the actions and standing to **prosecute** certain claims against them once the current stay is lifted.  This purported distinction finds no support in standing law.  The Zell Parties suggest, again without authority, that because of the Examiner's predictions in the Examiner's Report [D.I. 5247-5250] of the ultimate resolution of certain claims, the Court should reserve judgment on whether the Committee has standing to prosecute the claims in the Amended Third Party Complaint against the Zell Parties.  The Zell Parties seek a future evaluation of whether such claims are colorable and would benefit the Debtors' estates.

The Limited Objection should be denied for two principal reasons.  <u>First</u>, the Standing Order definitively resolved the issues raised by the Limited Objection.  This Court granted the Committee standing to "commence and prosecute" all of the claims in the draft Third Party Complaint attached to the standing motion and additional claims falling within defined

2

categories, including claims against the Zell Parties seeking avoidance and disgorgement, claims within the scope of the Examiner's Report, and claims consented to by the Debtors.

Seven of the nine claims[1] against the Zell Parties in the Amended Third Party Complaint were in the draft third party complaint that the Committee filed with the standing motion on the Third Party Action [D.I. 5698] and there can be no doubt that this Court granted standing as to those claims. Standing Order at 2 (granting Committee authority to "commence and prosecute the claims of the Debtors' estates set forth in the draft complaints attached to the Standing Motions").

The Limited Objection is similarly groundless as to the additional claims in the Amended Third Party Complaint pleaded against them. The Standing Order expressly granted the Committee leave to amend its complaints in the LBO Actions during the stay, and the Zell Parties do not contend that the Amended Third Party Complaint is procedurally improper in any respect. The Amended Complaint added a claim to recharacterize the EGI-TRB Subordinated Exchangeable Promissory Note (the "Exchangeable Note") as equity (Count Seventeen); added Sam Zell as a defendant to a fraudulent transfer count originally asserted against EGI-TRB alone (Count Eighteen); and included a preference claim against the Zell Parties that seeks recovery of the Exchangeable Note and certain fee transfers (Count Nineteen). These are all "avoidance and disgorgement claims against Samuel Zell and related entities, including EGI and EGI-TRB," "have been consented to by the Debtors," and are "within the scope of the Examiner's Report."

---

[1] Another claim in the Amended Third Party Complaint, Count Twenty, is a preference claims against only EGI, LLC ("EGI"), which, while closely affiliated with Sam Zell, is a separate defendant in the Third Party Action and not one of the parties that filed the Limited Objection.

Standing Order at 2-3.   The Standing Order plainly granted the Committee standing to commence and prosecute each of these added claims.

In the face of this Court's clear grant of standing as to all of the claims against the Zell Parties in the Amended Third Party Complaint, the Zell Parties are reduced to arguing that this Court granted standing only for commencement of the claims, not their prosecution.   But this Court's order expressly provides otherwise – the Committee was granted standing to "commence and prosecute" the claims.   The Limited Objection thus amounts to an improper and untimely effort by the Zell Parties to have this Court reconsider its Standing Order.   Because the time to seek reconsideration has long expired, and the Zell Parties have shown no new facts, or any other grounds, that would justify reconsideration, their Limited Objection must be denied.

<u>Second</u>, even if the Zell Parties had timely moved to reconsider, there can be no doubt that this Court properly granted the Committee standing to commence and prosecute the claims against the Zell Parties.   Indeed, the case for standing is even stronger because the Debtors have consented to the Committee pursuing such claims – which the Debtors had done as of the time the Standing Order was entered, relaxing the already low threshold for granting derivative standing to a Creditors Committee.

As alleged in the Third Party Action, the Zell Parties orchestrated the calamitous LBO that rendered Tribune insolvent or so close to insolvency that the Debtors petitioned for bankruptcy within a year of the LBO's consummation.   The claims against the Zell Parties arising out of their conduct in connection with the LBO have the potential to yield significant recoveries for the Debtors Estates, and the marginal expense of pursuing such claims as part of the Third Party Action that implicates all aspects of the LBO is far outweighed by the potential benefits.

The Zell Parties' assertion that the Examiner's Report somehow supports an unprecedented limitation on the Committee's standing – that it should apply only to commencement, not prosecution of the claims – is flatly wrong. As the Debtors have consented to the Committee's standing to bring all of its claims, including the claims against the Zell Parties, the grant of standing to the Committee was and is in the best interest of the Debtors' estate and will promote the fair and efficient resolution of the bankruptcy proceedings. Absent the Committee' standing to pursue these claims, potentially valuable claims would be wasted and the ongoing plan confirmation proceedings, which are predicated in part on the Committee's standing to prosecute these claims, would be thrown into disarray.

The fact that the Examiner opined that some of the claims against the Zell Parties were subject to defenses and might ultimately be defeated does nothing to call into question this Court's grant of standing. In fact, far from exonerating the Zell Parties, the Examiner's Report supports a number of key avoidance claims against them. But even if that were not the case, derivative standing does not, as the Zell Parties seem to believe, require a Court to find that the claims are likely to succeed on the merits or even that they will survive motion practice. Instead, when as here the Debtors consent, all the Court must find is that it is in the best interests of the estate to pursue claims because their potential benefits outweigh the costs. That standard is easily met here. The Committee's claims against the Zell Parties – developed with information contained in the Examiner's Report as well as information outside the Report – are well-grounded and have the potential to yield significant recoveries for creditors. In short, Zell was the principal architect and intended beneficiary of the disastrous LBO that forced Tribune into bankruptcy. His assertion that he was somehow exonerated by the Examiner's Report – which, among other things, found intentional fraud at one stage of the transaction – is simply wrong.

In the guise of a Limited Objection to a standing motion that has already been decided, the Zell Parties are essentially seeking a mini-trial on the claims asserted against them. That is not the function or purpose of a standing determination, and opening the door to such an inquiry would wreak potential havoc on this Court and this case – the Zell Parties are no different from countless other shareholders and other defendants who might similarly seek a pre-litigation trial of the claims against them. If the Zell Parties believe the Committee's claims lack merit, they are free to move for dismissal once the stay is lifted and the action proceeds. They are not entitled to multiple bites of that apple.

This Court should overrule the Limited Objection and confirm that the Committee has standing to both commence and prosecute all claims against the Zell Parties set forth in the Amended Third Party Complaint.

## ARGUMENT

### I.    The Standing Order Grants the Committee Standing To Prosecute, Not Just To File, Claims in the Amended Complaints.

In their Limited Objection, the Zell Parties request that the Court defer a determination of whether the claims against them are colorable and would benefit the Debtors' estates before allowing the Committee to prosecute the Third Party Action. But the Court has already resolved that issue in favor of the Committee.

### A.    The Standing Order Granted the Committee Full Standing for Seven of the Nine Claims Against the Zell Parties in the Amended Third Party Complaint.

In the Committee's September 13 motion for standing to commence, prosecute, and settle the third party claims (the "Standing Motion on Third Party Claims") [D.I. 5668], the Committee expressly addressed each element of the inquiry to obtain derivative standing, including a showing that the claims it sought to assert were colorable and would benefit the Debtors' estates.

Standing Motion on Third Party Claims at 20-21.   That Standing Motion also described the claims in the Committee's draft proposed third party complaint, including the claims against the Zell Parties, and noted that the Committee's draft pleading had been informed by the Examiner's investigation and report.   The proposed draft complaint – which contained seven of the nine claims about which the Zell Parties now complain – was attached to the motion.   Thus, the Committee was very clear about what claims it sought to pursue against the Zell Parties, among others, and why it should be given the standing to pursue them.

The Zell Parties did not file a written objection to the Standing Motion on Third Party Claims.   Rather, the Zell Parties' only response was a four-sentence statement of counsel at the October 22, 2010 hearing which began by **consenting** to standing for the Committee.   Hearing Tr. at 43 (Oct. 22, 2010) (stating that the Zell Parties and EGI "don't object to the UCC's motion for standing").   Their counsel went on to (i) express the Zell Parties' view that the claims against them lacked merit given the Examiner's Report, and (ii) request that the Court not authorize the filing of claims against the Zell Parties until the conclusion of the mediation.   Limited Obj. at 3 (citing to Hearing Tr. at 43).

The Court expressly rejected the Zell Parties' arguments.[2]   The Court granted the Committee's standing motions without condition or qualification[3], and authorized the Committee to "commence **and prosecute**" the claims in the draft complaints, which included the claims against the Zell Parties.   Standing Order at 2 (emphasis added).   In so doing, the Court

---

[2] The Standing Order expressly noted that it was issued with due consideration for arguments and objections presented at the October 22nd hearing.

[3] To the extent the Limited Objection suggests that the standing granted to the Committee was limited by, or conditioned on, the stay (Limited Obj. at 4), it is in error.   The stay simply puts off the Committee's prosecution of the LBO Actions for a period of time to avoid disruption of the ongoing plan negotiation and confirmation process.

necessarily agreed that the claims in the Committee's draft Third Party Complaint were colorable and had the potential to affect distributions to creditors. *See Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 145 (D. Del. 2004) (setting out standards for derivative standing). The Court expressly denied the Zell Parties' oral request to delay filing of the claims against them until the close of mediation (Hearing Tr. at 66 (Oct. 22, 2010), ordering the Committee to file complaints by November 1, 2010.

In short, this Court unequivocally granted the Committee standing to both commence and prosecute claims against the Zell Parties, rejecting the Zell Parties' argument that the Committee should defer filing the claims. The Zell Parties' current argument that the Committee's standing should be limited to commencement of the claims flies in the face of the Standing Order and must be rejected.

None of the Zell Parties filed a timely motion for reconsideration of the Standing Order and that order is therefore now final. Even if the Limited Objection were a timely motion for reconsideration, the Zell Parties point to no newly discovered evidence, or any other basis, that could possibly support reconsideration of the Standing Order. Their Limited Objection should therefore be overruled.

### B.    The Standing Order Authorized the Additional Claims Against the Zell Parties in the Amended Third Party Complaint.

The Limited Objection is similarly groundless as to the additional claims asserted against the Zell Parties in the Amended Third Party Complaint – Count Seventeen,[4] the inclusion of Sam

---

[4] Count Seventeen seeks to recharacterize the EGI-TRB "Exchangeable Note" as equity, a claim supported in part by the Examiner's description of the Exchangeable Note (Examiner's Report, Vol. I. at 129, 148 and Vol. II at 311).

Zell in Count Eighteen, and Count Nineteen.[5]  The Limited Objection does not suggest that any of these claims falls outside the scope of standing granted in the Standing Order, and does not even attempt to show that the claims are not colorable or that the Committee's prosecution of these valuable claims would not be in the best interest of the Debtors' estates.

The Standing Order expressly gave the Committee standing to "assert avoidance and disgorgement claims against Samuel Zell and related entities, including EGI and EGI-TRB...." Thus, the Amended Third Party Complaint's addition of claims seeking avoidance and recovery of transfers made to the Zell Parties in connection with the Exchangeable Note and other reimbursement payments, is also authorized by the Standing Order.

As noted above, the Standing Order expressly authorized the Committee to amend or modify the September 13 draft third party complaint to include avoidance and disgorgement claims against the Zell Parties, as well as to bring other claims consented to by the Debtors.  The Debtors consented to the Committee's assertion of all claims in the Amended Third Party Complaint (including Count Twenty, the preference count against EGI).

Thus, all of the claims in the Amended Third Party Complaint against the Zell Parties were expressly authorized under the original Standing Order.  The Limited Objection does not contend otherwise.  It simply requests that the Court "continue to preserve all of their rights as defendants, including the right to contest these issues [i.e., whether the claims are colorable and

---

[5] As noted above, Count Twenty is alleged against only EGI, which is not one of the parties to the Limited Objection.  By its terms, the Standing Order also authorized the Committee to bring claims to avoid and recover preferential transfers to EGI.  At the October 22nd hearing, there was extensive discussion about the process that the Debtors, Committee, and others were engaged in to address preference claims against various defendants – a process the Court indicated was satisfactory.  In addition, it was expressly considered that the Committee might amend its draft Third Party Complaint to add preference claims against Zell and the EGI entities.  Hearing Tr. at 72 (Oct. 22, 2010).

would benefit the Debtors' estates] in future proceedings." Limited Obj. at 5. But, as the Court indicated at the December 15, 2010 initial hearing on the instant Motion, the Standing Order was not intended to preserve the right to contest, or to defer consideration of, standing to prosecute claims as to which the Standing Order granted standing to the Committee. Hearing Tr. at 40 (Dec. 15, 2010) ("[I]f the claims fall within the scope of the order that I signed, arguments to the contrary in my view are foreclosed. All other rights would be preserved it seems to me, but why would I make a standing decision that could be questioned later on? I mean, that makes no sense to me in the conduct of litigation."). As discussed above, the Standing Order granted the Committee standing to commence **and** prosecute not only the claims in the draft complaint but also the additional claims against the Zell Parties set forth in the Amended Third Party Complaint. The Zell Parties therefore have not retained the right to contest, either now or at a later time, the Committee's standing to prosecute the claims. Once the stay on prosecution of the LBO Actions is lifted, the Zell Parties – like any other defendant – can contest the legal sufficiency of the claims by moving to dismiss or answering the complaint, or otherwise asserting defenses to the claims. However, the Limited Objection does not and cannot offer any basis in fact or law for the Court to modify or revisit the scope of standing granted in the Standing Order.

II.     **Even If the Standing Order Did Not Resolve the Issue Raised by the Limited Objection, the Committee Satisfies the Test for Derivative Standing To Prosecute the Claims Against the Zell Parties in the Amended Third Party Complaint.**

For the reasons stated above, the Court need not and should not revisit the question of whether the Committee has standing to prosecute claims against the Zell Parties. However, even if the Court were to re-examine the question, it should reach the same result: the Committee

10

satisfies the test for derivative standing, and its claims against the Zell Parties are colorable and would benefit the Debtors' estates.

**A.      The Committee Satisfies Any Test for Derivative Standing To Prosecute the Claims Against the Zell Parties in the Amended Third Party Complaint.**

The Committee showed in its original motion that standing was proper under the "colorable" standard applicable when the Debtors have not consented to standing, and this Court necessarily found that the claims met that standard in issuing the Standing Order.    As demonstrated above, the Debtors have now consented to the Committee pursuing all of the claims in the Amended Third Party Complaint.    The standard is therefore not whether the claims are "colorable" but only whether prosecution of the claims is in the best interest of the estate and will promote the fair and efficient resolution of the bankruptcy proceedings.    Because the claims clearly satisfy the "colorable" standard applicable before the Debtors consented, they easily meet this more relaxed standard applicable at this juncture.

Looking specifically at the claims against the Zell Parties, there is no question that they are colorable.    The test for colorability is a low hurdle to clear.    *See, e.g., In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 369 (Bankr. S.D.N.Y. 2005) (noting that the Court need only be satisfied that there is "some factual support" for the claims).    The Amended Third Party Complaint includes substantial allegations about the Zell Parties' central role in designing and spearheading the LBO in such a way as to minimize their risk exposure while giving Zell control of the Company (and the right to acquire a controlling interest for a relative song).    *E.g.,* Amended Third Party Compl. ¶¶ 109-113.    It describes the failings of the Tribune board of directors, which after May 9, 2007 included Zell, in connection with the LBO, including, in particular, at Step Two.    In addition, paragraphs 57-58 and 348-368 provide substantial allegations that support the Committee's claims to recharacterize the Exchangeable Note as

11

equity, and to avoid as a fraudulent conveyance and/or preference the transfer respecting the Exchangeable Note, which occurred as part of the netting of transactions at Step Two.[6]  The Amended Third Party Complaint also contains numerous allegations about the Zell Parties' conscious efforts to dangle significant financial incentives in front of Tribune officers to induce them to support the LBO whether or not it was in Tribune's best interest.  *See* Amended Third Party Compl. ¶¶ 2-3, 118-131.  Such allegations could plainly support a finding that the Zell Parties acted other than in good faith in connection with the LBO.[7]

Where, as here, the debtor consents to a creditors committee's standing to bring the debtor's claims derivatively, standing should be granted as long as a court determines that suit by the committee is in the best interest of the estate and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.  *See, e.g.*, *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003) (*en banc*) (citing *Commodore*); *In re Hydrogen, LLC*, No. 08-14139 (AJG), 2009 WL 2913448 (Bankr. S.D.N.Y. 2009).

Here, there is little question that giving the Committee standing to initiate and, after the stay, to prosecute the Third Party Action, including the claims against the Zell Parties, is in the best interest of the Debtors' estates and will promote the fair and efficient resolution of the

---

[6] While not relevant to the standing question at issue here, this netting of transactions at Step Two involved no payment of cash by Tribune to the Zell Parties for their Tribune Stock and no clearing of funds through a financial institution, financial participant or securities clearing agency.  Accordingly, the Amended Third Party Complaint also alleges that the Zell Parties may not assert a "settlement payment" defense under section 546(e) of the Bankruptcy Code with respect to the claim for constructive fraudulent conveyance.  *See* Amended Third Party Compl. ¶¶ 57,58, 358.

[7] Such allegations of misconduct also support the Committee's equitable subordination claim (Count Twenty-Two), a claim that was in the draft third party complaint and thus expressly authorized by the Standing Order.

bankruptcy proceedings. At this point, all interested parties in the instant cases have recognized the potential value of the Third Party Action and have incorporated the litigation, and its expected recoveries, to varying degrees in the proposed plans under consideration. Neither the Zell Parties nor any other party objected to the Committee, which is obligated to act in a fiduciary capacity for all unsecured creditors, as the proper party to obtain standing to pursue these claims. There is likewise little question that the potential benefits to the estates far outweigh the costs of prosecuting the claims against the Zell Parties. For example, the combined value of the Exchangeable Note transfer, the EGI-TRB Stock Sale, and the EGI-TRB Fee Payments, among the conveyances at issue in Counts Seventeen to Nineteen, is approximately $261,418,859. Amended Third Party Compl. ¶ 57.[8]

## B.  The Zell Parties' Argument That the Examiner's Report Warrants Denial of Standing Has Already Been Rejected by This Court and Is Plainly Wrong.

In their effort to re-open the question of standing, the Zell Parties point to selected portions of the Examiner's Report that they say show that the claims against them are not colorable. In fact, a fair reading of the Examiner's Report **supports** standing for the Committee to pursue claims against the Zell Parties, including the claims for intentional fraudulent transfer at Step Two and for preference.

The Zell Parties' reliance on the Examiner's Report is misplaced for several reasons. First, the Zell Parties and EGI made this very argument at the hearing on the standing motions and this Court rejected it and granted the Committee standing. Second, the Examiner did not, and did not purport to, analyze potential causes of action under the colorability standard set out

---

[8] The preference claim against EGI in Count Twenty is for reimbursements totaling almost $600,000.

above, much less the "best interests" standard applicable following the Debtors' consent. Instead, he evaluated the prospects of success – after full litigation and trial on the merits – with respect to some, but not all, of the claims against the Zell Parties. His conclusion that certain claims are "somewhat unlikely" to succeed (while concluding that others have better chances of success) in fact supports the colorability of the claims. Claims that are "somewhat unlikely" to succeed nonetheless have real prospects of success – if they did not, they would be frivolous or meritless, not "somewhat unlikely" to succeed. Third, the Examiner's Report makes explicit that his investigation of the Zell Parties was incomplete in certain respects, emphasizing that his conclusions are not the final word on claims against them.[9] Finally, the Zell Parties' arguments based on the Examiner's Report simply ignore the more liberal standard for standing applicable where, as here, the Debtors have consented to Committee standing.

The Zell Parties recycle the specious argument their counsel made at the hearing on the standing motions – that the Examiner's Report shows there is no merit to the claims against the Zell Parties. This Court rejected this argument in granting the Committee standing, and the Zell Parties identify no basis for revisiting that decision. And by authorizing the Committee to pursue any claims "within the scope of the Examiner's Report," the Court in the Standing Order implicitly recognized that claims considered by the Examiner were colorable, whatever the Examiner's view of their ultimate disposition after trial.

The Committee briefly addresses a number of the principal counts against the Zell Parties in order to demonstrate that these claims are more than colorable.

---

[9] The Committee, of course, in no way denigrates the investigation conducted by the Examiner. Rather, the Committee disputes the Zell Parties' suggestion that the Examiner's Report – which was before the Court and all the parties long before the Standing Order was issued – compels or supports a re-examination of the propriety or scope of the Committee's standing

Counts Seventeen, Eighteen, and Nineteen.  Counts Seventeen, Eighteen, and Nineteen in the Amended Third Party Complaint, which seek recharacterization of the Exchangeable Note as equity and avoidance of that transfer as a fraudulent conveyance and/or preference, rest on substantial factual allegations.  As alleged, the Exchangeable Note was unsecured and effectively subordinate to all the debt incurred by Tribune in connection with the LBO.  Amended Third Party Compl. ¶ 351.  Tribune had the option to exchange any portion of the outstanding principal owed on the Exchangeable Note for shares of Tribune stock at any time – at the same price as paid for stock in connection with the merger, $34 per share.  *Id.* ¶ 352; Exchangeable Note § 4(a) (Apr. 23, 2007) (Ex. 153 to Examiner's Report).  Moreover, if Step Two of the LBO failed to close, the outstanding principal amount owed on the Exchangeable Note would be automatically exchanged for shares of Tribune stock without any further action by Tribune or EGI-TRB, again using the same $34/share merger price.  Amended Third Party Compl. ¶ 352; Exchangeable Note § Sec. 4(b).  In addition, the principal amount actually paid on the note at Step Two was the same amount as would have been paid had the Note been exchanged for stock and then cashed out at $34/share as part of the completion of the merger.  *Id.* § 4(d)(ii).  Insofar as the Examiner identified the aforementioned characteristics of the Exchangeable Note, *see* Examiner's Report, Vol. II at 310-11, Count Seventeen is clearly "within the scope of the Examiner's Report."

However, the Examiner did not focus on the degree to which the Exchangeable Note was structured to have a disposition upon consummation of the LBO that was effectively identical to the disposition of outstanding stock, and did not opine on the legal significance of this fact.  As the redemption of the Exchangeable Note was functionally equivalent to the disposition of outstanding stock at Step Two, the consideration paid by Tribune to EGI-TRB for the Exchangeable Note falls squarely within the ambit of the intentional fraudulent transfer claim

asserted against the other Step Two shareholders – a claim that the Examiner expressly found to be meritorious. In short, Counts Seventeen to Nineteen rest on strong grounds, both for reasons reflected in the Examiner's Report, and for additional reasons not articulated by the Examiner. *See* Amended Third Party Compl. ¶¶ 57-58, 348-368.

Moreover, the Examiner's Report confirms that the Committee's preference claim is colorable insofar as it concludes that "[i]t is unclear," and thus effectively a toss-up, whether a court would view satisfaction of the Exchangeable Note as a preferential transfer. Examiner's Report, Vol. II at 311, 314 (explaining why the Exchangeable Note transaction might be a preferential transfer). The Examiner's prediction that it is "reasonably likely" that a Court would ultimately find an "ordinary course of business" defense valid (while questioning the viability of a "new value" defense) underscores the Examiner's assessment that there remains a real possibility that such a defense would fail. The mere fact that the Zell Parties may have litigable defenses provides no basis whatsoever for withdrawing the Committee's standing to assert potentially meritorious claims.[10]

<u>Count Seven, Amended Third Party Complaint</u>. The citation to the Examiner's conclusions about aiding and abetting breach of fiduciary duty claims is also misplaced.[11]

---

[10] Similarly, the Court necessarily found that the Committee's equitable subordination and unjust enrichment claims against the Zell Parties – claims that were included in the draft third party complaint – were colorable by authorizing the Committee to prosecute them. Indeed, as to the equitable subordination claim, the Examiner left in "equipoise" the question of whether holders of EGI-TRB notes should share in any recoveries from successful avoidance actions. Examiner's Report, Vol. II at 303 n.834.

[11] This claim of aiding and abetting breach of fiduciary duty was also included in the September 13 draft complaint, and thus the Committee's standing to bring it was expressly authorized by the Standing Order. It is also within the scope of the Examiner's Report and consented to by the Debtors. Similarly, counts against the Zell Parties alleging breach of fiduciary duty, violation of Delaware corporations law, unjust enrichment, and equitable subordination or disallowance of claims, all were in the original draft third party complaint, fall within the scope of the Examiner's Report, and were consented to by the Debtors.

Limited Obj. at 2. While the Examiner concluded that aiding and abetting breach of fiduciary duty claims were unlikely to succeed at Step One, the Examiner found willful misconduct on the part of Tribune's officers at Step Two, and found that "reasonable people could disagree" about whether the conduct of Tribune directors at Step Two amounted to a breach of fiduciary duty. *See* Examiner's Report, Vol. II at 385. As to the Zell Parties' potential liability for aiding and abetting such breaches, the Examiner stated that his investigation was incomplete, and that his conclusion was based on a limited record. *Id.* at 397. According to the Examiner, "with the benefit of more time, he would have further investigated the interactions between personnel at the Zell Group and Tribune's senior financial management in relation to the October 2007 projections and the senior financial management's interactions with the Zell Group and VRC." *Id.* The Limited Objection ignores this caveat, as well as the obvious fact that the Examiner did not have the benefit of complete discovery and a full litigation record in evaluating the claims.

The Zell Parties' Good Faith. Finally, the Examiner's Report does not support the Zell Parties' statement that "the evidence shows that Mr. Zell and EGI-TRB always acted in good faith." Limited Obj. at 3. The Examiner did not specifically assess the Zell Parties' good faith, as he did that of other parties, and the Zell Parties' citations to the Examiner's Report do not support their insistence of good faith. Indeed, most of the citations do not concern the Zell Parties at all. *See id.* at 3 (citing to Examiner's Report, Vol. II at 264, 281, 283, and Vol. I at 300) (discussing motivations of JPMorgan Chase Bank, Merrill Lynch, Bank of America, and Citi, respectively, for participating in the LBO at Step One). The two cited references that concern the Zell Parties do not support the blanket statement that "the evidence shows" that the

17

Zell Parties "always acted in good faith."[12]  In any event, the Amended Third Party Complaint contains numerous allegations about the Zell Parties' conscious efforts to induce Tribune officers to support an LBO whether or not it was in Tribune's best interest.  *See, e.g.*, Amended Third Party Compl. ¶¶ 118-131.  Such allegations support a finding that the Zell Parties acted other than in good faith in connection with the LBO.

In short, even assuming *arguendo* that there were some basis to grant the Zell Parties the do-over they seek on standing, and even assuming that the Court were to reconsider the Examiner's Report in connection with that do-over, the Court should reach the same conclusion it did when it issued the Standing Order on October 27:  the Committee has standing to prosecute its claims in the Amended Complaints because those claims are colorable and have the potential to achieve recoveries for the Debtors' estates that far exceed the cost of pursuing them; and granting the Committee standing is in the best interest of the Debtors' estates and will promote the fair and efficient resolution of the bankruptcy proceeding.

---

[12] One of the statements that concerns the Zell Parties was made solely in the context of the equitable subordination analysis, and is so broad as to defy reasonable scrutiny:  "The Zell Group proposed an aggressive, highly-leveraged transaction that failed and ended up in bankruptcy.  EGI lost a lot of money.  These are not grounds to equitably subordinate the EGI-TRB Notes beyond their already broad contractual subordination."  *Id.*, Vol. II at 338.  This general proclamation – offered in recognition of the already subordinated nature of the EGI-TRB Notes – simply has no application to the specific allegations of misconduct contained in the Amended Third Party Complaint.  The second statement, concerning Zell's commitment to complete the LBO and investment of a net $56 million at Step Two, does not account for the fact that the Zell Parties' investment in Step Two was minimal relative to Zell's personal wealth, and in light of the valuable right to control Tribune that Zell received in exchange.  *See id.*, Vol. II at 74-75.  In all events, the mere fact that the Zell Parties proceeded with the LBO in no way exonerates them from a charge of bad faith in connection with their structuring and execution of the disastrous transaction.

## CONCLUSION

For the reasons set forth herein, in the Committee's opening memorandum in support of the Motion to Confirm Standing, and in the Standing Motions, the Committee respectfully requests that the Court (i) confirm that the Standing Order authorized the Committee to make the amendments and modifications reflected in the Amended Complaints and granted the Committee standing to commence and prosecute all claims reflected in the Amended Complaints; and (ii) grant to the Committee such other and further relief as is just.

Dated: Wilmington, Delaware
       January 18, 2011

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

Thomas G. Macauley (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
Telephone: (302) 427-0400
Facsimile: (302) 427-8242

- and -

Graeme W. Bush, Esquire
James Sottile, Esquire
Andrew N. Goldfarb, Esquire
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

Special Counsel to the Official Committee
of Unsecured Creditors