# **EXHIBIT 4**

## Common Interest Stipulation and Order

A. For purposes of this Stipulation and Order the following terms shall be defined as follows:

1. "April Plan" means the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries, filed April 12, 2010 (as amended, supplemented, or modified).

2. "Bridge Plan" means the Chapter 11 Plan of Reorganization for Tribune and Its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management, L.P. (as amended, supplemented, or modified).

3. "Bridge Lenders" means the creditors (or the agents or arrangers for such creditors) holding claims against the Debtors on or after the Petition Date arising from debt owing under the $1.6 Billion Senior Unsecured Interim Loan Agreement (the "Bridge Agreement"), dated as of December 20, 2007, by and among, Tribune, as borrower, Merrill Lynch Capital Corporation as administrative agent, JPMorgan Chase Bank, N.A. as syndication agent, Citicorp North America, Inc. and Bank of America as co-documentation agents, and the lenders named therein, as the same has been amended, restated, modified, or supplemented.

4. "Common Interest Communications" means oral, written or electronic communications, draft pleadings, briefs, plans, disclosure statements or other correspondence exchanged solely between or among parties within a Common Interest Relationship that, if only exchanged between or among a single party, its counsel and/or advisors, would have been protected from discovery by any applicable attorney-client privileges or work product protections.

5. "Complaints" means the complaints filed in the actions entitled (i) *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. JPMorgan Chase Bank, N.A., et al.* (Bankr . D. Del. Adversary Proceeding No. 10-53963 (KJC)), and (ii) *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. Dennis J. Fitzsimmons, et al.* (Bankr. D. Del. Adversary Proceeding No. 10-54010 (KJC), and any drafts, amendments or modifications of such complaints.

6. "Credit Agreement" means the $8.028 Billion Credit Agreement, dated as of May 17, 2007, by and among Tribune, as borrower, JPMorgan Chase Bank, N.A., as administrative agent, Merrill Lynch Capital Corporation., as syndication agent, Citicorp North America, Inc., Bank of America, and Barclays Bank PLC, as co documentation agents, and the lenders named therein, as the same has been amended, restated, modified, or supplemented, and all documents related thereto.

7. "Credit Agreement Debt" means the indebtedness owing under the Credit Agreement.

8. "Credit Agreement Lenders" means the creditors (or the agents or arrangers for such creditors) holding claims against the Debtors on or after the Petition Date arising from debt owing under the Credit Agreement.

9. "Debtor/Committee/Lender Plan" means the First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A ("JPMorgan") (as amended, supplemented, or modified).

10. "Incremental Credit Agreement Facility" means an additional $2.105 billion in new incremental term loans under the Tranche B Facility or as a new tranche of term loans under the Credit Agreement.

11. "LBO-Related Causes of Action" means any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action, avoidance powers or rights, liabilities of any nature whatsoever, and legal or equitable remedies against any person or entity arising from the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law.

12. "Noteholders" means the creditors (or the indenture trustees for such creditors) holding claims against the Debtors on or after the Petition Date other than (i) the holders of debt owing under the Credit Agreement, (ii) the holders of debt owing under the $1.6 Billion Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, by and among, Tribune, as borrower, Merrill Lynch Capital Corporation as administrative agent, JPMorgan Chase Bank, N.A. as syndication agent, Citicorp North America, Inc. and Bank of America as co-documentation agents, and the lenders named therein, and (iii) the holders of debt owing under the 1992 International Swap and Derivatives Association, Inc. ("ISDA") Master Agreement and schedule to the 1992 ISDA Master Agreement, dated as of July 2, 2007, and those certain interest rate swap confirmations, dated as of July 3, 2007, in each case by and between Tribune and Barclays Bank PLC.

13. "Noteholder Plan" means the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas ("Deutsche Bank"), in its Capacity as Successor Indenture Trustee for certain series of Senior Notes ("Senior Notes"), Law Debenture Trust Company of New York ("Law Debenture"), in Its Capacity as Successor Indenture Trustee for certain series of Senior Notes and Wilmington Trust Company ("Wilmington Trust"), in its

Capacity as Successor Indenture Trustee for the PHONES Notes (as amended, supplemented, or modified).

14. "Preference Claims" means any claims which may be asserted on behalf of the Debtors pursuant to Section 547 of the Bankruptcy Code.

15. "Retiree Settlement" means the proposed settlement attached to the Debtor/Committee/Lender Plan as Exhibit 5.1.5.4.

16. "SOCAL Plan" means the First Amended Plan Of Reorganization for Tribune Company and its Subsidiaries Proposed By Certain Holders Of Step One Senior Loan Claims (as amended, supplemented, or modified).

17. "Step One Credit Agreement Debt" means the Credit Agreement Debt other than the indebtedness owing under the Incremental Credit Agreement Facility.

18. "Step One Lenders" means the holders of the Step One Credit Agreement Debt.

19. "Step Two Lenders" means the holders of the indebtedness owing under the Incremental Credit Agreement Facility.

20. "Tranche B Facility" means the $5.515 billion Senior Tranche B Term Loan Facility under the Credit Agreement.

21. "UCC" means the official committee of unsecured creditors appointed by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

B. Subject to the terms hereof, no party shall be required to provide disclosure of Common Interest Communications.

C. Solely with respect to the Confirmation Hearing and related pre-hearing discovery, the following "Common Interest Relationships" between the Persons listed below are hereby recognized and agreed to exist with respect to the specified topics, subject to and as limited by the exceptions described in Section D.

1. Between co-proponents and supporters of the Debtor/Committee/Lender Plan, the Noteholder Plan, the SOCAL Plan, or the Bridge Plan from and after October 12, 2010 concerning or involving (i) the development and drafting of such Plan, including without limitation the associated disclosure statement, responsive statement, exhibits, solicitation materials, and other such related documents, (ii) any actual or anticipated efforts or proceedings seeking to obtain, or in furtherance of obtaining, judicial approval or confirmation of any such Plan, including without limitation the associated disclosure statement, responsive statement, exhibits, solicitation materials, and other such related documents or (iii) any actual or anticipated efforts or proceedings seeking to oppose, or in furtherance of opposing, the confirmation or approval of any one or more competing Plans or associated disclosure statements, responsive statements,

exhibits, solicitation materials, and other such related documents, including without limitation the process for the Court's consideration of competing Plans.

2. Between the Debtors, Oaktree, and Angelo Gordon, in their capacities as proponents of the Plan that is described in the term sheet attached to the Mediator's Report of September 27, 2010, and parties to the compromises embodied therein, from and after September 27, 2010, concerning or involving (i) the development and drafting of such Plan, including without limitation the associated disclosure statement, responsive statement, exhibits, solicitation materials, and other such related documents, (ii) any actual or anticipated efforts or proceedings seeking to obtain, or in furtherance of obtaining, judicial approval or confirmation of any such Plan, including without limitation the associated disclosure statement, responsive statement, exhibits, solicitation materials, and other such related documents or (iii) any actual or anticipated efforts or proceedings seeking to oppose, or in furtherance of opposing, the confirmation or approval of any one or more competing Plans or associated disclosure statements, responsive statements, exhibits, solicitation materials, and other such related documents, including without limitation the process for the Court's consideration of competing Plans.

3. Between Centerbridge, Law Debenture, JPMorgan, Angelo Gordon, the UCC and the Debtors between April 12, 2010 and August 9, 2010 concerning or involving (i) the development and drafting of the April Plan, including without limitation the associated disclosure statement, responsive statement, exhibits, solicitation materials, and other such related documents, (ii) any actual or anticipated efforts or proceedings seeking to obtain, or in furtherance of obtaining, judicial approval or confirmation of the April Plan, including without limitation the associated disclosure statement, responsive statement, exhibits, solicitation materials, and other such related documents.

4. Between one or more Credit Agreement Lenders or one or more Bridge Lenders concerning the enforcement of rights under the Credit Agreement or Bridge Agreement, respectively.

5. On or after the Petition Date, between one or more Credit Agreement Lenders and/or one or more Bridge Lenders (excluding proponents of the Bridge Plan) concerning the defense of the Complaints, the merits of the LBO-Related Causes of Action, or the potential settlement of the LBO-Related Causes of Action.

6. Between the UCC and any Noteholder who is not a member of the UCC concerning the drafting and prosecution of the Complaints.

7. Between or among UCC members or their respective counsel and/or counsel for the UCC, to the extent any such UCC members shared a common interest with the UCC with respect to the matter(s) at issue.

   8. On or after the Petition Date, between two or more Noteholders respecting the interpretation or application of the relevant indentures, the drafting and prosecution of the Complaints, the merits of the LBO-Related Causes of Action, or the potential settlement of the LBO-Related Causes of Action.

   9. Between two or more parties opposed to the Debtor/Committee/Lender Plan, the Noteholder Plan, the SOCAL Plan, and/or the Bridge Plan, concerning or involving any actual or anticipated efforts or proceedings seeking to oppose, or in furtherance of opposing, the confirmation or approval of any such Plan, including, without limitation the associated disclosure statements, responsive statements, exhibits, solicitation materials, and other such related documents, including without limitation the process for the Court's consideration of competing Plans.

D. The following topics are <u>not</u> included within the definition of Common Interest Relationship, and discovery concerning such topics shall not be withheld from disclosure on the basis of any alleged common interest:

   1. Common Interest Relationships C.4 and C.5 shall not include any communications with proponents of the SOCAL Plan as to whether Step One Lenders would be required to share any portion of their distribution from the Debtors in the event the claims of Step Two Lenders only are avoided or subordinated.

   2. Common Interest Relationship C.4 shall not include anything concerning or relating to the April Plan as between any one or more of JP Morgan and/or Angelo Gordon, on the one hand, and any Person opposed to the April Plan on the other hand.

E. Nothing herein shall impact any Party's (i) obligation to prepare a privilege log, in the form and manner agreed to by the parties or directed by the Court, or (ii) ability to assert that any document or information has been improperly withheld pursuant to the terms and conditions of this Common Interest Stipulation and Order.

F. Other than as specifically set forth herein, the foregoing is without prejudice to any party's rights, claims or defenses concerning discovery or the Confirmation Hearing, including without limitation the assertion of common interest privileges other than those that are the subject of this Stipulation. All other rights to discovery or objections thereto, are preserved. Further nothing herein shall preclude any Noteholder from arguing (or the Court from determining) that it shares a common interest with the Debtors and/or UCC in certain respects and, on that basis or any other lawful basis, should receive disclosure of certain documents or information that would otherwise be immune from disclosure. Likewise, nothing herein shall provide a basis for any Noteholder(s) to argue that the UCC's common interest with any Noteholder who is not a member of the UCC extends beyond the subject matters identified in paragraph C.6 above.