IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>) Re: Docket No. 7518<br>)<br>) <u>Hearing date</u>: January 24, 2011, at 11:00 a.m. (Eastern)<br>)<br>) <u>Objection deadline</u>: January 19, 2011, at 4:00 p.m. (Eastern)<br>) |

**OPPOSITION TO MOTION OF LAW DEBENTURE TRUST COMPANY
OF NEW YORK TO COMPEL PRODUCTION OF DOCUMENTS BY
THE NON-PROPONENT CREDIT AGREEMENT LENDERS**

Twelve of the Credit Agreement Lenders represented by Hennigan, Bennett & Dorman LLP ("HBD") who are not proponents of any plan of reorganization (the "Non-Proponent Lenders")[1] hereby object to the Motion To Compel Production Of Documents By The Non-Proponent Credit Agreement Lenders filed by Law Debenture Trust Company of New York ("Law Debenture").

I.   **INTRODUCTION**

In ongoing discussions between Law Debenture's counsel and HBD, substantial progress had been (and was being) made on virtually all of the issues raised in the Motion. Yet, instead of distilling its grievances to the few remaining issues, and notwithstanding continuing discussions, Law Debenture attacks a straw man, pretending that the Non-Proponent Lenders have refused to produce any documents whatsoever, filling page upon page with factual inaccuracies that all but ignore the progress that had been achieved. If only the Motion had reflected reality instead of Law Debenture's imagined conspiracy that the Non-Proponent Lenders are "purposefully shielding relevant documents from discovery" (Motion ¶ 37), it would have been much shorter.

---

[1]   The Non-Proponent Lenders are listed on *Exhibit A* hereto. Although HBD represents other "non-proponent" Credit Agreement Lenders who also are targets of Law Debenture's discovery, those entities are represented separately for purposes of such discovery.

The Non-Proponent Lenders and HBD heard the Court loud and clear when it indicated in the telephonic hearing held on January 10, 2011 that Law Debenture should be able to "test" the assertion that the Non-Proponent Lenders have had no material involvement in the settlement and plan negotiation process and therefore have few, if any, documents that would not be produced by others more actively involved in these cases. As a consequence, immediately after that hearing, the Non-Proponent Lenders began searching their files for responsive documents, and HBD began a series of "meet and confer" conferences with Law Debenture's counsel to attempt to define the scope of the twelve different productions to be made by the Non-Proponent Lenders.

Despite those almost daily discussions and the mammoth production efforts now underway (regardless of how many responsive documents may result), Law Debenture chose to plow forward with a vitriolic Motion accusing the Non-Proponent Lenders – who, to reiterate, are not proponents of any plan, are not parties to any settlement, and did not participate in the mediation – of a "cover up" and a "clear attempt to shield from discovery relevant information they have in their possession." Motion ¶¶ 1 & 20. As set forth below, Law Debenture's screed notwithstanding, the remaining issues respecting the discovery requested of the Non-Proponent Lenders are discrete, surmountable, and certainly not deserving of twenty-two pages of accusations and misstatements.

II. **THERE IS NO BASIS TO COMPEL THE NON-PROPONENT LENDERS TO SEARCH FOR RESPONSIVE DOCUMENTS THAT PREDATE THE LATER OF THEIR ENGAGMENT OF HBD AND DECEMBER 15, 2009**

Law Debenture repeatedly complains about the Non-Proponent Lenders' alleged "refusal to produce documents for the period prior to April 2010." *E.g.*, Motion ¶¶ 1, 18, 36. This is mysterious, as the Non-Proponent Lenders have committed to produce responsive documents generated on and after December 15, 2009 – the exact same date used by others in responding to document requests by the Noteholder Plan proponents – to the extent they were clients of HBD on such date. Specifically, on January 12, two days before Law Debenture filed the Motion,

- 2 -

HBD notified Law Debenture's counsel that "[w]e have considered the [time frame] issue further and are willing to search for responsive documents from December 15, 2009 through December 3, 2010 for the twelve Non-Proponent Clients." *See* accompanying Declaration of Joshua M. Mester ("Mester Decl."), Ex. A. Thereafter, reiterating and clarifying this concession, HBD informed Law Debenture's counsel that each of the Non-Proponent Lenders would search for and produce responsive documents generated from the later of (a) the date on which the client engaged HBD in connection with the Tribune cases; and (b) December 15, 2009. Mester Decl. ¶ 5.

In the Motion, Law Debenture ignores this and demands that the Non-Proponent Lenders search for and produce documents dating all the way back to the bankruptcy petition date of December 8, 2008, apparently without regard to the time at which any Non-Proponent Lender became a client of HBD. Motion ¶ 15.

As to the appropriateness of the December 15, 2009 start date, the Non-Proponent Lenders refer the Court to Section III of the "Debtor/Committee/Lender Plan Proponents' Objection To The Noteholder Plan Proponents' Motion To Compel Production Of Documents And Information From The Debtor/Committee/Lender Plan Proponents And Other Parties Or, Alternatively, For An Order Of Preclusion Respecting Certain Issues" (the "Debtor/Committee/Lender Brief"), filed contemporaneously with this Objection, which conclusively demonstrates that it would be burdensome and ultimately pointless to require parties in interest to search for documents that predate December 15, 2009, the starting period of settlement discussions in these cases.

Similarly, Law Debenture's apparent insistence that the Non-Proponent Lenders search for and produce documents for periods *before* the time at which they engaged HBD is completely inconsistent with its alleged basis for seeking discovery from the Non-Proponent Lenders in the first place. Specifically, Law Debenture asserts that discovery from the Non-Proponent Lenders is appropriate because, "as Credit Agreement Lenders members [represented by HBD], [they] have been actively involved in the Chapter 11 Cases, including those issues that

related to the documents and communications requested in the Subpoenas." Motion ¶ 26. In support, Law Debenture compiles a list of pleadings filed by HBD on behalf of the Credit Agreement Lenders it then represented, *id.*, and then asserts that its document requests "are narrowly tailored to obtain evidence specifically relating to the [Non-Proponent Lenders'] involvement in the Chapter 11 Cases" and "are directed at parties whom are believed to have responsive documents in their possession given their role in the Chapter 11 Cases." Motion ¶¶ 15, 28.

By Law Debenture's own definition of "involvement in the Chapter 11 Cases" – which is premised upon actions taken by the Credit Agreement Lender group collectively represented by HBD – a Non-Proponent Lender could not possibly have any responsive documents or materials that predate its engagement of HBD. As the various Non-Proponent Lenders engaged HBD at different points in time, with many such engagements commencing well after December 15, 2009, there is no basis whatsoever to compel any Non-Proponent Lender to search for documents that predate the time at which it engaged HBD and thus began the "involvement in the Chapter 11 Cases" that Law Debenture claims to be the basis for the discovery request in the first place.[2]

If it is alleged "involvement" or "roles" in the chapter 11 cases that matter to Law Debenture, then the production of documents from the later of December 15, 2009 and the date that a particular Non-Proponent Lender became an HBD client will give it precisely what it allegedly wants. By continuing to demand materials that precede those dates, Law Debenture reveals different motives, grounded more in harassment than a legitimate search for information that may be relevant to matters to be litigated at plan confirmation.

---

[2]   The absurdity (and inconsistency) of Law Debenture's position is best revealed through a real-life example. One of the Non-Proponent Lenders, Mason Capital Management, LLC, became an HBD client in the case only on October 1, 2010. Mester Decl. ¶ 5. Notwithstanding that very recent engagement, Law Debenture would have Mason Capital search for and produce documents going back more than two years, virtually ensuring a massive search effort that will likely yield few responsive documents.

- 4 -

### III. THE SEARCH METHODOLOGY EMPLOYED BY THE NON-PROPONENT LENDERS IS DESIGNED TO GIVE LAW DEBENTURE EXACTLY WHAT IT SAYS IT WANTS

Law Debenture similarly mischaracterizes the Non-Proponent Lenders' position with respect to searches for electronic documents. It complains about the Non-Proponent Lenders' alleged "recalcitrance towards using even the most basic of search terms" and accuses them of "attempting to hide relevant information from discovery" and engaging in a "cover-up." Motion ¶ 20.

Law Debenture conveniently neglects to mention that the Non-Proponent Lenders have committed to make an initial search of their files for all documents within the relevant time period containing any of "Tribune," "Trib," and "TRB," an approach designed to capture any document with relevance to these cases. Mester Decl. ¶ 6. Further, HBD stated in the meet and confer sessions that, depending upon the volume of "hits" for any particular Non-Proponent Lender, it would discuss with Law Debenture whether there would be a need to narrow the searches or run additional searches within that Tribune-related universe of documents. *Id.*

This methodology has not materially limited the pool of documents to be reviewed. To the contrary, even after eliminating duplicate documents, the Non-Proponent Lenders' searches using the Tribune/Trib/TRB methodology have generated more than 155,000 potentially-responsive documents that will have to be reviewed for relevancy and privilege. Mester Decl. ¶ 8. Of course, even this methodology (which Law Debenture derides as too limiting) produces massive numbers of irrelevant and non-responsive documents – such as copies of any article from any newspaper with "Tribune" in its name (including the dozens of "Tribune" newspapers not owned by the Debtors) – that nevertheless must be reviewed, requiring the Non-Proponent Lenders and their counsel to spend hundreds of thousands of dollars to cull through tens of thousands of documents to eliminate the chaff.

All this, however, is not good enough for Law Debenture. Instead of defining a universe of documents that concern these cases, and then whittling away the non-responsive documents, Law Debenture would have each of the Non-Proponent Lenders conduct scattershot searches of

YCST01:10622030.1    068968.1001

all of their files – searches that, apparently by design, would result in thousands upon thousands of "hits" for documents that have nothing whatsoever to do with this case. For example, Law Debenture insists that the Non-Proponent Lenders search their files for terms like "fraudulent w/1 conveyance" and "examiner" and "phones" and "trib!"[3] and "aur*"[4] and the like, resulting in mountains of documents to be reviewed but ultimately leading to the same responsive documents that would have been produced had the universe of documents first been narrowed to those referring to "Tribune" in some way.

HBD voiced just this concern during the meet and confer sessions and informed Law Debenture's counsel that it would be in a better position to assess the feasibility of conducting additional searches once the results of the Tribune/Trib/TRB searches were in. Mester Decl. ¶ 9. Law Debenture steadfastly refused, asserting that even its own search terms would not capture all hypothetically relevant communications. *Id.*

This is nonsense. Law Debenture would have the Court believe that third parties not involved in the settlement or plan confirmation process would communicate with (indeed, allegedly conspire and collude with) each other about the Tribune case and somehow, remarkably, not make any reference to "Tribune," "Trib," or "TRB" in any of their relevant communications and, on that basis, authorize a fishing expedition. This is truly burdensome and oppressive, particularly for parties who otherwise are strangers to the plan and settlement matters with which Law Debenture purports to be concerned, and the Court should decline to order a search broader than that already conducted by the Non-Proponent Lenders.

The use of the Tribune/TRB/Trib search methodology will enable Law Debenture to "test" the assertion that the Non-Proponent Lenders were not involved in the settlement or plan negotiation process and much, much more. Nothing further should be required. *See, e.g.,*

---

[3] The "trib!" search term alone would produce "hits" for words like: tribe, tribal, tribeca, tribulation, tribunal, tributary, and tribute.

[4] The "aur*" search term would produce "hits" for words like: aura, aural, aureola, auricle, auriform, and aurora.

*Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 23-24 (D. Conn. 2008) (motion to compel broader search denied; court accepted that five search terms would "reasonably lead to responsive documents without also producing volumes of documents unrelated to" the project, concluding that a broader search "would not be practical"); *Quinby v. WestLB AG*, 245 F.R.D. 94, 99 (S.D.N.Y. 2006) (court limited requests by eliminating search terms commonly used in the banking industry such as "deal", "asset", "insurance" and "risk").

### IV. LAW DEBENTURE'S "RELATIONSHIP REQUESTS" SEEK DOCUMENTS WHOLLY UNRELATED TO TRIBUNE

To evidence its asserted "proactively cooperative posture," Law Debenture notes that it has withdrawn twenty of its so-called "Relationship Requests." Motion ¶ 41. As previously noted to the Court, this ostensible concession is mere window dressing, as the two remaining "Relationship Requests" are designed to capture communications between the Non-Proponent Lenders and scores of other individuals and institutions, many of which would have absolutely nothing to do with these cases. Specifically, the remaining "Relationship Requests" pressed by Law Debenture seek:

> All Documents and Communications relating to any Relationship between and among, on the one hand, [the Non-Proponent Lender and numerous others, including its affiliates, officers, directors, directors, partners, employees, members, managers, board of directors and professionals], and on the other hand (i) Zell; (ii) any Special Committee Individuals; (iii) any Committee Individuals; (iv) any Tribune Individuals and/or (v) any Settling Party.

Thus, for example, Law Debenture would insist upon the production of all documents reflecting any and all business relationships between a Non-Proponent Lender and, for example, JPMorgan, Citicorp, Bank of America, Merrill Lynch or Wells Fargo (all defined as "Settling Parties"), or Buena Vista Television, Deutsche Bank Trust Company, Warner Bros. Television, or Wilmington Trust Company (members of the Committee), or Sam Zell. The Non-Proponent Lenders are all sophisticated financial investors with countless dealings with other financial

institutions, meaning that this request would necessitate the endless production of documents relating to deals and transactions having nothing whatsoever to do with Tribune or these cases.

Even more egregiously, the requests as written would require the production of any and all communications between any employee of any Non-Proponent Lender and any of the tens of thousands of employees of JPMorgan, Citicorp, Bank of America, Merrill Lynch or Wells Fargo, completely untethered by any connection to Tribune (or lack thereof). Given Law Debenture's incredibly broad definition of "Relationship" – defined to mean "any prior, current or prospective personal, professional, business or other relationship among any of the Persons specified in the request" – the Non-Proponent Lenders would be forced to search for and produce totally irrelevant communications, such as those between employees scheduling a soccer practice for their children.

These requests obviously were not designed to capture documents having any bearing on issues to be determined at confirmation, and they certainly are not "narrowly tailored to obtain evidence specifically relating to the [Non-Proponent Lenders'] involvement in the Chapter 11 Cases" as Law Debenture now asserts. Motion ¶ 15. For that reason, HBD proposed the same approach to the "Relationship Requests" that it proposed for Law Debenture's other document requests: first search for documents containing "Tribune," "Trib," or "TRB" to see how many "hits" there are, and then discuss whether or not a further narrowing might be possible. Mester Decl. ¶ 7. Law Debenture's refusal to proceed in this manner undermines any claim of "proactive cooperation" and makes clear that the "Relationship Requests" are nothing other than an exercise in harassment.

## V. THE REQUESTS POSE AN UNDUE BURDEN

For all of the reasons set forth above, the requests being pressed by Law Debenture pose an undue and unjustifiable burden on the Non-Proponent Lenders, particularly given their roles as spectators in the settlement and plan confirmation process. Law Debenture claims that the Non-Proponent Lenders are "not mere non-parties" here, pointing to "their close connection to

the parties and issues involved in the case." Motion ¶ 25. Yet, the only "close connections" that Law Debenture can point to are pleadings that HBD filed on behalf a group of clients that, at various times, included certain of the Non-Proponent Lenders. This does not remotely justify the burden that Law Debenture seeks to impose on the Non-Proponent Lenders.

Law Debenture also argues that the Non-Proponent Lenders "are in no way strangers to the instant matter because . . . they have a clearly demonstrable economic interest in the outcome of this litigation." Motion ¶ 40. This, of course, proves far too much, as the same can be said for every other Credit Agreement Lender and virtually every other creditor in this case, whether or not represented by HBD.

Finally, Law Debenture seeks to justify its overreaching requests on the grounds that "[t]he information sought will assist the Court in evaluating whether [Non-Proponent Lenders] *acted in good faith* with respect to the plan, if prior relationships *biased their decision-making*, or if their relationships or others' relationship [sic] influenced parties' support of the plan or the terms of the plan." Motion ¶ 31 (emphasis added). While such information might be helpful if the Non-Proponent Lenders had actually done any of these things, they have not. It is a matter of public record that the Non-Proponent Lenders are not proponents of the Debtors/Committee/Lender Plan and have not taken any "action" (much less "acted" in bad faith) with respect to that plan or any other. Similarly, the Non-Proponent Lenders have made no "decisions" respecting any plan and have not even gone on record as supporting the Debtors/Committee/Lender Plan or opposing the Noteholder Plan. In other words, the Non-Proponent Lenders are just like the thousands of other creditors in these cases, whose involvement with respect to the competing plans of reorganization now out for a vote is limited to casting their ballots before the voting deadline.

Law Debenture acknowledges that, although it is appropriate for the Court to consider the non-party status of those responding to subpoenas, "this consideration does not rigidly tilts [sic] in favor of shielding them from discovery.'" Motion ¶ 40 (citations omitted). In so arguing, Law Debenture neglects that *all* of the relevant factors "tilt in favor" of much narrower discovery

against non-parties than that sought by Law Debenture. First, given the Non-Proponent Lenders' limited role in this case, the blunderbuss search methodology urged by Law Debenture – which would compel the compilation and review of thousands of documents having nothing whatsoever with Tribune or these cases – will not produce documents that are relevant to plan confirmation any more than the more reasonable Tribune/Trib/TRB approach proposed by the Non-Proponent Lenders. Further, Law Debenture has not demonstrated any need for broader searches.

Second, the unreasonable breadth and lack of particularity of the requests – best demonstrated by the far-flung "Relationships" that would be captured under Law Debenture's demands – indicates that Law Debenture is engaged in nothing more than a fishing expedition, disconnected from any demonstrable need for the information sought from the Non-Proponent Lenders.

Third, for the reasons set forth above and in the Debtor/Committee/Lender Brief, limiting the time period to be covered by the requests to the later of December 15, 2009 and the time a Non-Proponent Lender became an HBD client in this case is far more reasonable than looking back two years for parties who have played, at best, a tangential role in this case, and no material role at all in the settlement and confirmation process.

Finally, Law Debenture's continued insistence that the Non-Proponent Lenders search for two years' worth of documents, irrespective of their relevance to this case, foists an immense burden on them. The fact is that the burden is not in the production of responsive documents, however few that might ultimately be, which simply involves burning a CD or uploading responsive documents to a secure site and then preparing a cover letter to opposing counsel. The true burden of time and money is in searching for and then reviewing tens of thousands of "hits" or false positives to arrive at a set of responsive documents (however minimal) ready for production. As explained above, even without Law Debenture's multitude of additional search terms, the Non-Proponent Lenders' searches have already resulted in more than 155,000 hits to be reviewed by counsel – a time consuming and costly effort thrust upon the Non-Proponent

- 10 -

YCST01:10622030.1                                                                                       068968.1001

Lenders for no reason other than the conspiracy theories of Law Debenture and its fellow Noteholder Plan proponents.

The Non-Proponent Lenders have already committed to conduct extensive searches for responsive documents, undertaking a burden far out of proportion to their involvement in these cases. Requiring them to do more, either as to time frame or search methodology, would subject them to an unfair and undue burden not borne by the thousands of other creditors who also have "a clearly demonstrable economic interest" in these cases but do not happen to be represented by HBD.

## VI.  CONCLUSION

For the reasons set forth above and in the Debtor/Committee/Lender Brief, the Court should deny the Motion and approve the approach proposed by the Non-Proponent Lenders for responding to Law Debenture's subpoenas, as described above.

Dated: January 19, 2011                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ M. Blake Cleary
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

- and -

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
865 S. Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

*Counsel to the Non-Proponent Lenders*

# EXHIBIT A

**Non-Proponent Lenders**

1. Anchorage Advisors, L.L.C.
2. Avenue Investments, LP, et al.
3. Canyon Capital Advisors, LLC
4. Contrarian Funds LLC
5. CVI GVF (Lux) Master S.a.r.l.
6. Franklin Floating Rate Master Series, et al.
7. Golden Tree Asset Management, LP, et al.
8. Knighthead Master Fund, L.P.
9. Luxor Capital Group, LP
10. Mason Capital Management, LLC
11. Thracia LLC
12. Värde Investment Partners, L.P.