IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| TRIBUNE COMPANY, et al. | ) Case No. 08-13141 (KJC) |
| Debtors. | ) Jointly Administered |
| | ) **Re:** Docket No. 7522 |
| | ) <u>Hearing date</u>: January 24, 2011, at 11:00 a.m. (Eastern) |
| | ) <u>Objection deadline</u>: January 19, 2011, at 4:00 p.m. (Eastern) |

**OPPOSITION TO MOTION OF LAW DEBENTURE COMPANY OF NEW YORK TO
COMPEL OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO.,
L.P., AND HENNIGAN, BENNETT & DORMAN LLP TO PRODUCE DOCUMENTS**

Oaktree Capital Management, L.P. ("<u>Oaktree</u>"), Angelo, Gordon & Co., L.P. ("<u>Angelo
Gordon</u>"), and Hennigan, Bennett & Dorman LLP ("<u>HBD</u>") hereby object to the Motion To
Compel filed by Law Debenture Trust Company of New York ("<u>Law Debenture</u>").

## I.    INTRODUCTION

Oaktree, Angelo Gordon and HBD had nothing to do with the so-called Leveraged ESOP
Transactions that Law Debenture and its fellow Noteholder Plan proponents attack.  Oaktree and
Angelo Gordon simply hold a portion of the debt issued by the Tribune Debtors in connection
with those transactions and, in that capacity, have negotiated with the Debtors and the
Committee a settlement of the so-called LBO-Related Causes of Action asserted, among other
things, to avoid that debt.  HBD has represented Oaktree and Angelo Gordon in negotiating the
settlement and enforcing their claims against the estates.

Notwithstanding their lack of involvement with the transactions that give rise to the
LBO-Related Causes of Action, Law Debenture has now unleashed the hounds of discovery on
Oaktree and Angelo Gordon, apparently because they are parties to a settlement that Law
Debenture opposes, and on HBD, apparently because it serves as counsel to Oaktree and Angelo

Gordon. Law Debenture's document requests are thirty-two (32) pages long and seek ninety-six (96) categories of documents, including the full panoply of information requested of JPMorgan, Tribune, and other entities who actually were involved in structuring the Leveraged ESOP Transactions.

Now that Oaktree, Angelo Gordon and HBD have resisted some of those document requests, Law Debenture has accused them of all manner of misconduct ("flagrant disregard" "shroud of secrecy"; "attempt to shield their wrongdoing from this Court"; "blatant attempt to prevent full and complete disclosure"; "deplorable tactic"; "specifically intended to shield relevant documents"; "appalling"; "brazen"; "flaunt this fundamental discovery obligation"; etc.). *See* Motion at 1, 2, 8, 9, 12, 17, 30.

Lost amidst this rhetoric is the fact that Oaktree, Angelo Gordon and HBD already have undertaken a massive response to Law Debenture's requests, producing over *34,000 pages* of documents to date, at a cost of hundreds of thousand dollars. The remaining disputes that are the subject of Law Debenture's wrath relate to the legitimate efforts of Oaktree, Angelo Gordon, and HBD to ensure that the burden and expense of the discovery process does not outweigh its plausible benefit in the context of the upcoming confirmation hearing.

Specifically, the parties disagree with respect to four basic issues:

(a) Law Debenture seeks documents evidencing even the slightest connection between Oaktree and Angelo Gordon and hundreds of other entities, institutions, and individuals over the course of the last *ten years*, requests that Oaktree, Angelo Gordon, and HBD believe to be unduly burdensome and not calculated to lead to the discovery of admissible evidence;

(b) Law Debenture seeks to compel Oaktree, Angelo Gordon, and HBD to use a huge panoply of search terms for electronic documents – including such generic terms as "intercompany," "examiner," "mediation," "LBO," "projection," "recap*," "swap," and "ucc" – that would require the review of a mountain of utterly irrelevant documents having nothing whatsoever to do with Tribune or these cases;

-2-

(c) Law Debenture demands production of communications and information that predate December 15, 2009 (in the case of Oaktree and HBD) and May 21, 2010 (in the case of Angelo Gordon), notwithstanding the fact that no discussions or settlement negotiations occurred before entry of the Depository Order on December 15, 2009, and the fact that Angelo Gordon previously produced documents for the period through May 20, 2010, in its capacity as a supporter of the now-abandoned April Plan; and

(d) Law Debenture seeks production of documents and information from Oaktree and Angelo Gordon relating to subjects now within the exclusive purview of the FCC.

For the reasons set forth below, Law Debenture's overreaching requests are inappropriate, and its Motion to Compel should be denied.

## I.     THE "RELATIONSHIP" REQUESTS

Law Debenture has propounded twenty-two (22) separate requests seeking "documents and communications relating to" any "Relationship" existing "at any time within the past ten years" that (a) Oaktree, individuals at Oaktree, Angelo Gordon, individuals at Angelo Gordon, and HBD have or may have had with a vast array of firms and persons, including JPMorgan, Bank of America, Merrill Lynch, Citicorp, Wells Fargo, Tribune, the members of the Committee, and the present and past officers, directors, partners, members, employees, managers, and professionals employed by any of them; and (b) any of those firms and persons have or may have had amongst themselves. *See* Declaration of Garvin McDaniel ("McDaniel Decl.") [D.I. 7533], Exs. 2-3 (requests 1-22).

The list of "Relationship" parties literally encompasses hundreds of entities and tens of thousands of individuals.[1]  The term "Relationship" similarly encompasses every conceivable

---

[1]  It includes for example, every employee of JPMorgan, Bank of America, Citibank, Merrill Lynch, Wells Fargo and Tribune.  It also includes, as "Settling Parties" who would receive a release under the Debtor/Committee/Lender Plan, any creditor that votes to accept the plan and does not opt out of giving the "Holder Released Claims".  McDaniel Decl., Ex. 2 at 25.

connection between the parties, including "any prior, current or prospective personal, professional, business or other relationship . . . , including but not limited to any matter with respect to which such persons have done or sought to do business with one another (including commercial, charitable, and any other types of matters) or have been recommended or considered for a position or engagement." McDaniel Decl., Ex. 2 at 23-24.

These requests thus would require Oaktree, Angelo Gordon and HBD to search for the slightest of connections between tens of thousands of people arising at any time since December 2000. To give one real world example (among many others) to demonstrate the point, consider the following: Oaktree and Angelo Gordon regularly invest in bank debt and bonds; JPMorgan, Citicorp, Merrill Lynch, Bank of America, and Wells Fargo regularly serve as administrative agent, collateral agent, arranger, co-lender, and/or indenture trustee for the debt instruments in which Oaktree and Angelo Gordon invest; pursuant to Law Debenture's requests, Oaktree and Angelo Gordon would be required to search for and produce every single document and email generated within the last ten years for every single debt investment involving those giant financial institutions. Given the prominence of those institutions in the capital markets, distressed debt markets, and other bankruptcy cases, the requests thus likely would encompass the vast majority of debt investments made by Oaktree and Angelo Gordon for the last decade.[2]

Law Debenture attempts to justify this fishing expedition by arguing that it is permitted to test the good faith of Oaktree and Angelo Gordon in proposing the Debtor/Committee/Lender Plan and negotiating the settlements embodied therein, including whether "prior relationships biased their decision making." Motion ¶ 30. But Law Debenture cannot seriously believe that "prior relationships" from three, five or ten years ago somehow created a "bias" that produced

---

[2]   Another example:  the requests not only call for information revealing whether employees of Oaktree or Angelo Gordon have bank or investment accounts with JPMorgan, Citicorp, Bank of America, Merrill Lynch or Wells Fargo (which they surely do), but also call for production of documents disclosing the identity of the employees and the relevant bank statements themselves.

the allegedly-collusive settlement. Law Debenture certainly points to no evidence suggesting any such bias, fraud or collusion – it offers only rank speculation.

This is important, because the Federal Rules require parties to plead fraud with particularity. Fed. R. Civ. P. 9(b). Absent such a particularized allegation – made in compliance with the strictures of Rule 11 – discovery is not permitted: "Among the purposes behind the particularity requirement Rule 9(b) is to deter the filing of charges of fraud as a pretext for discovery of unknown wrongs." *Ethypharm S.A. France v. Abbott Labs.*, 2010 U.S. Dist. LEXIS 116156, *11-12 (D. Del. Nov. 2, 2010) (footnotes and quotations omitted). Simply put, "where a party requests discovery to determine whether it has any basis for inequitable conduct, it is improper to use discovery in search of a factual predicate required to be pled in the first instance." *Id.*

So, too, here. Law Debenture's imagined collusion, without specific allegations of particular misconduct in the settlement negotiation process (which, after all, was conducted under the auspices of Judge Gross in court-ordered mediation sessions), does not open the door to the limitless discovery sought with respect to "whether Angelo Gordon and Oaktree supported the plan in good faith, [whether] prior relationships biased their decision-making, or [whether] their relationships influenced parties' support of the plan or the terms of the plan." Motion ¶ 30. Law Debenture is not entitled to discovery on the basis of its speculation of a fraud.

Moreover, if the imagined collusion or bias existed, it surely would be reflected in communications and documents exchanged while the Debtor/Committee/Lender Plan was negotiated. It strains credulity to suggest that the settlements embodied in the Debtor/Committee/Lender Plan somehow are the product of unspoken collusion and bias, not relating to any efforts to influence settling parties during the negotiations that occurred over the past several months but instead relating solely to prior relationships that were never mentioned or raised when the parties recently sat across the bargaining table from each other. Critically, because Oaktree and HBD have agreed to search for and produce responsive documents going back December 15, 2009, and Angelo Gordon has agreed to produce responsive documents

going back to May 1, 2010 (and, as explained below, previously produced documents dating to

January 1, 2007), any such contemporaneous communications would be captured and produced

to Law Debenture.[3]

Law Debenture's unfounded conspiracy theories do not require anything further, and

certainly do not dictate the massively burdensome collection effort demanded by the document

requests.

## II.    SEARCH METHODOLOGY

Law Debenture criticizes the methodology used by Oaktree, Angelo Gordon, and HBD to

search for potentially relevant documents, and demands that each search its entire database of

emails and electronic documents using the *sixty-six (66)* different search terms set forth in its

"Search Term Counterproposal" – apparently "narrowed" from the *ninety-five (95)* terms

demanded by Law Debenture in the meet and confer process.  Motion ¶¶ 16-19 and 53-55.[4]  In

so doing, Law Debenture completely distorts the record and reveals, yet again, an apparent desire

to maximize the burden and expense imposed upon Oaktree, Angelo Gordon and HBD by the

document requests, untethered from any legitimate effort to seek out information reasonably

calculated to lead to the production of admissible evidence.

---

[3]    Notably, Oaktree, Angelo Gordon, and HBD have not "outright refused to produce"
documents in response to the "Relationship" requests.  Motion ¶ 14.  Rather, during the meet
and confer conferences, they offered to produce documents responsive to such requests to the
extent captured by the search terms and methodology employed to find responsive
documents – including using the search terms "Tribune", "Trib", and "TRB."  *See*
accompanying Declaration of Joshua Mester ("Mester Decl.") ¶ 6.  It is inconceivable that, if
the parties engaged in the collusion of which Law Debenture accuses them, they did not use
the words "Tribune" or "Trib" or "TRB" somewhere in their communications in furtherance
of the alleged fraud.

[4]    Contrary to its assertion in the Motion, *see* Motion ¶ 16, Law Debenture never agreed to
remove a single one of its demanded search terms during the meet and confer process.
Mester Decl. ¶ 6.

Oaktree.  In response to the document requests, Oaktree searched its electronic records (a) for emails sent to a list of twenty-eight (28) different "domain names" representing institutions with which Oaktree personnel had material communications regarding Tribune and these cases; and (b) for internal emails and documents containing the term "Tribune," "Trib," or "TRB" and other terminology relevant to these cases.  Mester Decl. ¶ 3.  This search resulted in the compilation of approximately 10,850 documents, generated during the period from December 15, 2009, through December 3, 2010, all of which have now been reviewed for responsiveness and privilege.  Mester Decl. ¶ 3.

Angelo Gordon.  In response to the document requests, Angelo Gordon searched its electronic records using a search term list consisting of 59 key words, key words with connectors, email addresses, and domain names.  *See* accompanying Declaration of Dawn Wilson ("Wilson Decl.") at ¶ 3.  This search resulted in the compilation of approximately 15,000 documents, generated during the period from May 21, 2009, through December 15, 2010, all of which have been reviewed for responsiveness and privilege.  Wilson Decl. ¶ 12.  (As explained below, in its capacity as a supporter of the now-abandoned "April Plan," Angelo Gordon previously had searched for and produced approximately 55,000 pages of documents relating to the period from January 1, 2007, through May 20, 2010.  Wilson Decl. ¶ 9).

HBD.  In response to the document requests, HBD (a) collected every email maintained by one custodian (James Johnston) in his "Tribune" email folder; and (b) searched twenty-eight (28) domain names for the nine other HBD professionals who have had material involvement with respect to these cases.  Mester Decl. ¶ 4.  This search resulted in the compilation of approximately 14,450 documents, generated during the period from December 15, 2009, through December 3, 2010, which have now been reviewed for responsiveness and privilege.  Mester Decl. ¶ 4.

Meet and Confer Process.  During the meet and confer process, Law Debenture requested that Oaktree, Angelo Gordon, and HBD start anew, using ninety-five (95) separate search terms with no connectors or other limitations to gather responsive documents.  Mester Decl. ¶ 6.  Law

Debenture's requested search terms include highly generic terms like "intercompany," "examiner," "disclosure statement", "mediation," "LBO," "projection," "recap*," "swap," "ucc," and even "trib*".[5]  *Id.*  In subsequent conferences, Law Debenture expressed some willingness to reduce the number of search terms, but it never provided any scaled down list. *Id.* ¶ 6. Nevertheless, in response to Law Debenture's alleged concerns, Oaktree agreed to search all of its electronic records (including external emails) for the terms "Tribune", "Trib", and "TRB", producing an additional 9,150 documents to be reviewed, and HBD agreed to search the terms "Tribune", "Trib", and "TRB" in all of the emails maintained by its lead lawyer on the Tribune engagement (Bruce Bennett) yielding an additional 4,600 documents to be reviewed.  Mester Decl. ¶ 7.

The methodology employed by Oaktree, Angelo Gordon, and HBD is more than adequate under the circumstances.  It has generated a universe of more than 54,000 documents to be reviewed, resulting in the production of more than 55,000 pages to date (in addition to the 55,000 pages of documents previously produced by Angelo Gordon in connection with the April Plan). Oaktree, Angelo Gordon and HBD have consumed hundreds (likely thousands) of lawyer hours reviewing documents, at a cost of hundreds of thousands of dollars.  The domain names searched and the search terms used – especially "Tribune", "Trib" and "TRB" – produce documents reasonably likely to contain relevant information.

In contrast, the additional search terms demanded by Law Debenture are likely to yield duplicative documents or, more often, documents that are not remotely responsive or relevant. The review of such additional documents would be unreasonably expensive, as it would require large numbers of lawyers to sift through mostly irrelevant or non-responsive documents in an effort to find an isolated document that may not have been captured by the reasonable and

---

[5]   Consider that a search for "trib*" would produce "hits" – requiring review by an attorney document reviewer – for all documents containing the word *tribe* or *tribal* or *tribeca* or *tribulation* or *tribunal* or *tributary* or *tribute*.

comprehensive search terms already employed by the parties.[6] *See, e.g.*, *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 23-24 (D. Conn. 2008) (motion to compel broader search denied; court accepted that five search terms would "reasonably lead to responsive documents without also producing volumes of documents unrelated to" the project, concluding that a broader search "would not be practical"); *Quinby v. WestLB AG*, 245 F.R.D. 94, 99 (S.D.N.Y. 2006) (court limited requests by eliminating search terms commonly used in the banking industry such as "deal", "asset", "insurance" and "risk").

Moreover, the risk that such a hypothetical document will not ultimately be produced is extremely low. Law Debenture and the other Noteholder Plan proponents have served more than 1,300 pages of document requests on forty-six (46) separate entities, including each of the Debtor/Committee/Lender Plan proponents, their counsel, and numerous other parties they suspect may have potentially relevant documents. To the extent there exist any documents that have not yet been captured or produced by Oaktree, Angelo Gordon, and HBD – a very small risk – there is a very high likelihood that such documents will be produced from another party, particularly given that most of the responsive communications are emails addressed or copied to multiple parties.

Law Debenture's demands for more amount to harassment, and are not justified by the facts and circumstances of these cases.

---

[6] Law Debenture complains that "Angelo Gordon has refused to use the search term 'TRB'". Motion ¶ 54. As Law Debenture was informed, the reason for this is straightforward. During its prior document collection and review efforts (in connection with the April Plan), Angelo Gordon learned that the term "TRB" on its own did not generate documents that were not captured by other terms. Instead, "TRB" collected documents that list the ticker symbol for Tribune (TRB) and its daily price, along with the ticker and price of other traded debt instruments. Several of the Angelo Gordon custodians received such reports on a daily basis, resulting in thousands of such documents that are neither responsive nor relevant. Wilson Decl. ¶ 14.

YCST01:10622023.1
068968.1001

## III.   TIME PERIODS

Oaktree and HBD compiled documents for the period starting December 15, 2009, the date of entry of the Depository Order and the very start of discussions and negotiations regarding the LBO-Related Causes of Action.  This is the same start date used by the Debtors and the Committee with respect to their productions, and it is appropriate for all of the reasons set forth in the "Debtor/Committee/Lender Plan Proponents' Objection To The Noteholder Plan Proponents' Motion To Compel Production Of Documents And Information From The Debtor/Committee/Lender Plan Proponents And Other Parties Or, Alternatively, For An Order Of Preclusion Respecting Certain Issues" (the "Joint Objection") filed contemporaneously with this Objection.

To avoid duplication, Oaktree and HBD incorporate the arguments set forth in that Joint Objection, noting only that a December 2009 start date is particularly generous for Oaktree (and HBD) given that Oaktree was not a party to the April settlement, was not a supporter of the April Plan, and was on the "outside looking in" with respect to settlement negotiations through the filing of the Examiner's Report, which vindicated Oaktree's positions regarding the inappropriateness of the prior settlement.  During that time period, Oaktree obviously could not have colluded with parties who supported the plan that Oaktree opposed (parties with whom Law Debenture itself had settled), yet Law Debenture now seeks discovery of materials from this period and earlier in an alleged effort to ferret out Oaktree's alleged collusion.  This is ridiculous.

As noted above, Angelo Gordon compiled documents for the period starting May 21, 2010.  The reason for this is that Angelo Gordon previously had produced documents in response to Wells Fargo's request for production in connection with the April Plan (the "Wells Fargo Request"), pursuant to which Angelo Gordon collected and produced documents from the time period January 1, 2007 through May 20, 2010.  Wilson Decl. ¶ 9.  That prior production is available to Law Debenture through the Document Depository.  *Id.*

The Wells Fargo Request and Law Debenture's current request seek similar categories of documents, even if the wording of each is different.  *Compare* Wilson Decl., Ex. A, *with*

-10-

McDaniel Decl., Ex. 2.  For example, the Wells Fargo Request seeks documents relating to "the resolution of the LBO Related Causes of Action" and "reflecting or analyzing the value of the LBO-Related Cause of Action" (Wilson Decl. Ex. A ¶¶ 2, 5); Law Debenture's request similarly seeks document relating to "any Settlement Analysis" and the "Settlement Process" (McDaniel Decl. Ex. 2 ¶¶ 36-37).

Upon receipt of the Law Debenture request, Angelo Gordon determined that its previous document review would have collected and produced documents responsive to the Law Debenture request for the earlier time period.  Wilson Decl. ¶ 8.  Thus, Angelo Gordon limited its response to the Law Debenture Request to the period from May 21, 2010 to December 15, 2010.  Angelo Gordon has now provided to Law Debenture the document request, responses and objections, time frame, custodians, search terms, and privilege log associated with its initial production, and has offered to meet and confer with Law Debenture to discuss any other outstanding questions it may have regarding it.  Wilson Decl. ¶ 9.  This information is more than sufficient to satisfy Law Debenture's need to test whether the prior production satisfies its current request, especially in light of the fact that Law Debenture has made no representation that it even examined Angelo Gordon's previous production.


## IV.    FCC DOCUMENTS

Law Debenture seeks a wide swath of documents related to the ongoing Tribune proceedings before the FCC, an entirely inappropriate effort to go beyond the discovery permitted in connection with FCC proceedings.  Oaktree and Angelo Gordon's FCC counsel has prepared and contemporaneously filed a separate response regarding these requests, which is incorporated by this reference.

## V.    CONCLUSION

The efforts of Oaktree, Angelo Gordon and HBD to search for and produce relevant information have been exhausting and comprehensive, resulting in the production of over 55,000 pages of materials to date (on top of the 55,000 pages previously produced by Angelo Gordon). Because Law Debenture's demands for more are unreasonable and inappropriate under the circumstances, the Motion should be denied.

Dated:  January 19, 2011                 YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                          /s/ M. Blake Cleary
                                          Robert S. Brady (No. 2847)
                                          M. Blake Cleary (No. 3614)
                                          The Brandywine Building – 17th Floor
                                          1000 West Street, Post Office Box 391
                                          Wilmington, Delaware 19899 0391
                                          Telephone: (302) 571-6600
                                          Telecopier: (302) 571-1253

                                                    - and -

                                          HENNIGAN, BENNETT & DORMAN LLP
                                          Bruce Bennett
                                          James O. Johnston
                                          Joshua M. Mester
                                          865 South Figueroa Street, Suite 2900
                                          Los Angeles, California 90017
                                          Telephone:  (213) 694-1200
                                          Telecopier:  (213) 694-1234

                                          *Counsel to Oaktree Capital Management L.P., and*
                                          *Angelo, Gordon & Co., L.P.*

                                                    - and -

                                          WILMER CUTLER PICKERING HALE & DORR LLP
                                          Andrew Goldman
                                          399 Park Avenue
                                          New York, New York 10022
                                          *Co-Counsel to Angelo, Gordon & Co., L.P.*