IN THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT
OF DELAWARE

```
----------------------------------------------------X
In re:                              :
                                    :       Chapter 11 Cases
        TRIBUNE COMPANY, et al,     :       Case No. 08-13141 (KJC)
                                    :       (Jointly Administered)
                    Debtors.        :
----------------------------------------------------X
```

### DECLARATION OF DAWN M. WILSON

DAWN M. WILSON, hereby declares, pursuant to Local Rule 7026-1(c), for the United

States Bankruptcy Court, District of Delaware, that the following is true and correct to the best of

her knowledge, information, and belief:

     1.      I am a special counsel in the law firm of Wilmer Cutler Pickering Hale and Dorr

LLP, counsel for Angelo, Gordon & Co., L.P. ("Angelo Gordon"), in the above-captioned

adversary proceeding.

     2.      On December 17, 2010, Law Debenture served its first request for the production

of documents on Angelo, Gordon. ("Law Debenture Request"). The Law Debenture Request

consisted of 96 specific requests and seeks documents from January 1, 2007 to the present,

except for documents concerning certain relationships, for which it seeks documents for the last

ten years.

     3.      On December 27, 2010, pursuant to an agreement reached by the parties, Angelo

Gordon provided Law Debenture a list of the search terms and custodians it was using to collect

electronic documents responsive to the Law Debenture Request.  Angelo Gordon's search term

list consisted of 59 key words, key words with connectors, email addresses, and domain names.

4.     On December 31, 2010, Law Debenture responded to Angelo Gordon's search term list by insisting that Angelo Gordon conduct searches for approximately 95 additional terms.

5.     On January 3, 2011, Angelo Gordon served its objections and responses to the Law Debenture Request.

6.     On January 9, 2011, Law Debenture sent an e-mail addressing its position regarding Angelo Gordon's responses and objections.

7.     On January 11 and 12, 2011, counsel for Law Debenture, Angelo Gordon, Oaktree, and Hennigan Bennett and Dorman LLP met and conferred regarding the discovery disputes.  The parties were able to reach agreement on many but not all of the objections and responses.

8.     Law Debenture claims that Angelo Gordon refused to produce documents prior to May 21, 2010.  Angelo Gordon limited its document collection and review efforts in response to the Law Debenture request to May 21, 2010 to December 15, 2010 because it previously produced documents prior to May 21, 2010, in response to Wells Fargo Bank, N.A.'s First Request for Production of Documents, dated June 1, 2010 ("Wells Fargo Request"), attached as Exhibit A to this declaration.  Although the two document requests are not identical, Angelo Gordon concluded that, with respect to the portions of the Law Debenture request to which it did not object, its previous efforts collected and produced documents responsive to the Law Debenture request for the earlier time period.

9.     In connection with responding to the Wells Fargo Request, Angelo Gordon collected documents from three custodians – Gavin Baiera, Thomas Fuller, and Bradley Pattelli – for the time period January 1, 2007 to May 20, 2010.  Angelo Gordon utilized search terms to

collect electronic documents for review. In response to the Wells Fargo Request, Angelo Gordon produced 55,908 pages of documents. These documents are available to Law Debenture via the Document Depository. Subsequent to the filing of this Motion, Angelo Gordon has provided Law Debenture with a copy of the Wells Fargo Request, its responses and objections thereto, the list of search terms used to collect documents, and a privilege log of documents withheld from the Wells Fargo production. Angelo Gordon has also offered to meet and confer to discuss further questions Law Debenture might have regarding the scope of the previous production.

10.    In connection with responding to the Law Debenture Request, Angelo Gordon revisited the custodians and search terms that it had run for the previous request. Angelo Gordon added Bruce Martin and Bryan Rush to the custodian list. It also decided to narrow the search terms because the original search terms generated significantly more non-responsive documents than responsive documents. Specifically, the original search terms captured over 200,000 documents, of which less than approximately 12,000 were responsive (including privileged documents).

11.    In response to the Law Debenture Request, Angelo Gordon has searched for relevant electronic documents in several ways. First, it searched for certain key words (Trib, EGI, EGI-TRB, Zell). Second, it searched for certain key words connected to other key words (*e.g.* LBO and TRB or Trib). Third, it searched for all communications with certain individuals (*e.g.*, Miriam.Kulnis@chase.com). Fourth, it searched for all communications with certain domain names (*e.g.*, @tribune.com). Finally, it searched for communications with certain domain names connected to key words (*e.g.*, @zuckerman.com and TRB or Trib or Tribune).

12.     These new search terms have captured approximately 15,000 documents, of which approximately 6300 are responsive (including privileged documents). Angelo Gordon has already spent hundreds of lawyer hours collecting these documents, and reviewing the documents that were captured. Based on this review, and the large number of duplicative documents that have been captured, Angelo Gordon believes that it has properly searched for the documents that are reasonably likely to contain relevant information, and that any additional searches are likely to yield duplicative documents or documents that are not responsive or relevant. Any additional searches are likely to be unreasonably expensive, because they will require large numbers of lawyers to sift through mostly irrelevant or non-responsive documents in an effort to find an isolated document that may not have been produced.

13.     Law Debenture has served document requests on the Debtor/Committee/Lender Plan proponents and their counsel and many other parties. To the extent there may be any documents that have not yet been captured or produced by Angelo Gordon – a very small risk, there is a high likelihood that they will be produced from another party in this case because many of the documents were emails that were addressed or copied to multiple parties.

14.     Law Debenture has specifically questioned Angelo Gordon's decision not to use the search term "TRB" on a stand alone basis. As discussed at our meet and confer sessions, during the prior document collection and review, Angelo Gordon learned that the term "TRB" on its own did not generate documents that were not captured by other terms. Instead, "TRB" collected documents that list the ticker symbol for Tribune (TRB) and its daily price, along with the ticker and price of other traded debt instruments. Several of the Angelo Gordon custodians received such reports on a daily basis, resulting in thousands of such documents that are neither responsive nor relevant.

15.    Other search terms proposed by Law Debenture also, in Angelo Gordon's experience, generate significantly more non-responsive than responsive documents.  For example, the term "LBO" is commonly used in Angelo Gordon's business and appears in electronic documents that have nothing to do with Tribune.

16.    To date, Angelo Gordon has produced at total of 76,093 pages (7348 documents) in response to document requests in this action.  55,908 pages (5544 documents) were produced in response to the Wells Fargo Request.  20,185 pages (1804 documents) have been produced in response to the Law Debenture Request.

Dated:  January 19, 2011
       New York, New York

                                        _____
                                        Dawn M. Wilson

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **TRIBUNE COMPANY, et al.,**[1] | : | **Case No. 08-13141 (KJC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

## WELLS FARGO BANK, N.A.'S FIRST REQUEST FOR PRODUCTION OF
## DOCUMENTS DIRECTED TO ANGELO GORDON & CO. LP

Wells Fargo Bank, N.A., as successor administrative agent (in such capacity, the

"Administrative Agent") under that certain $1.6 billion Senior Unsecured Interim Loan

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5626); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Inc. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Agreement (the "Bridge Credit Agreement"), dated as of December 20, 2007, by and among

Tribune Company, each lender from time to time party thereto, JPMorgan Chase Bank, N.A., as

Syndication Agent, Citicorp North America, Inc. and Bank of America, N.A., as Co-

Documentation Agents, J.P. Morgan Securities Inc., Merrill Lynch & Co., Merrill Lynch, Pierce,

Fenner & Smith Incorporated, Citigroup Global Markets Inc. and Banc of America Securities

LLC, as Joint Lead Arrangers and Joint Bookrunners, pursuant to Rules 7026, 7034 and 9014 of

the Federal Rules of Bankruptcy Procedure, and Rules 26 and 34 of the Federal Rules of Civil

Procedure, requests that Ángelo Gordon & Co. LP produce for inspection and copying the

documents and things called for by the requests listed below, on or before May 31, 2010 in

accordance with the provisions of the Bankruptcy Court's May 13, 2010 Discovery and

Scheduling Order for Confirmation, to the attention of Jeffrey M. Schlerf at the offices of Fox

Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 1600, Wilmington,

Delaware, 19801, or at such other time and place as may be agreed to by the parties.

## DEFINITIONS

1.    "Communication" means the transmittal of information or the attempted transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally, in writing, or by any other means or medium.

2.    "Concerning" means relating to, referring to, describing, reflecting, evidencing or constituting.

3.    "Debtors" means the debtors and debtors-in-possession in these chapter 11 cases.

4.    "Disclosure Statement" means the Disclosure Statement for Joint Plan of Reorganization for Tribune Company and its Subsidiaries filed in the above-captioned proceedings on April 12, 2010 [Docket No. 4008].

5.    "Document" shall be defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

6.    "Draft" includes any earlier, preparatory, preliminary, or tentative version of all or part of a document, whether such draft was succeeded by a later draft or final version, and whether the terms of such draft are the same as, or different from, the terms of the final version.

7.    "Global Settlement" means the settlement of the LBO-Related Causes of Action proposed by the Debtors in the above-captioned proceedings.

8.    "Guarantor Subsidiaries" means the subsidiaries of Tribune Co. that have guaranteed Tribune Co.'s obligations under the Senior Credit Agreement and the Bridge Credit Agreement.

9.    "Including" means "including, without limitation" or "including but not limited to."

10.    "Initial Zell Note" means the unsecured subordinated exchangeable promissory note issued by Tribune Co. dated as of April 23, 2007, as amended, restated, supplemented or otherwise modified from time to time, in the original principal amount of $200 million, exchangeable at the option of Tribune Co., or automatically under certain circumstances, into 5,882,353 shares of common stock issued pursuant to the Securities Purchase Agreement dated as of April 1, 2007, by and among Tribune Co., EGI-TRB L.L.C and Sam Zell.

11.    "LBO-Related Causes of Action" means any and all claims, causes of action, avoidance powers or rights, and legal or equitable remedies against any Person arising from any transaction related to the leveraged buy-out of Tribune that occurred in 2007, including, without

limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law.

12. "Leveraged ESOP Transactions" means the series of transactions culminating in the merger on December 20, 2007 in which Tribune Co. became a wholly-owned subsidiary of the Tribune Employee Stock Option Plan.

13. "Merger Agreement" means the Agreement and Plan of Merger made as of April 1, 2007 among Tribune Co., GreatBanc Trust Company, the Zell Entity, and Tesop Corporation.

14. "Person" or "Persons" means natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

15. "Petition Date" means December 8, 2008.

16. "Plan" means the Joint Chapter 11 Plan of Reorganization for Tribune Company and its Subsidiaries filed as Exhibit A to the Disclosure Statement.

17. "Relate" and its variants encompass the terms "refer," "reflect," and "concern" and shall be construed to bring within the scope of the Request all documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Request, including but not limited to all documents that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Request.

18. "Releases" means the releases proposed to be granted in connection with the Global Settlement.

19.     "Settlement Support Agreement" means the agreement made as of April 8, 2010 among certain holders and indenture trustees for holders of claims against Tribune whereby such parties agreed to support a settlement of the LBO-Related Causes of Action on specified terms.

20.     "Settlement Term Sheet" means the Settlement Term Sheet attached as Exhibit A to the Settlement Support Agreement.

21.     "Settling Parties" means the parties to the Settlement Support Agreement and their advisors, attorneys, or other representatives.

22.     "Senior Credit Agreement" means the $8.028 billion senior secured credit agreement dated as of May 17, 2007, by and among Tribune, as borrower, the financial institutions party thereto as lenders, JPMorgan Chase Bank, N.A., as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

23.     "Special Committee" means the special committee of the board of Tribune Co. that approved the Leveraged ESOP Transactions.

24.     "Subsequent Zell Note" means the $225 million promissory note issued by Tribune Co., dated as of December 20, 2007, as amended, restated, supplemented or otherwise modified from time to time, purchased by EGI-TRB L.L.C. from Tribune Co.

25.     "Valuation" means the actual, perceived, estimated or appraised worth of any entity, asset or property whatsoever, and includes without limitation enterprise value, going concern value, equity value, actual cash value, book value, intrinsic value, liquidation value, and market value.

26.    "You" means Angelo Gordon & Co. LP and any of its corporate parents, partners, members, divisions, subsidiaries, officers, directors, representatives, trustees, agents, employees, affiliates, predecessors and successors.

27.    "Zell Entity" means EGI-TRB, L.L.C.

28.    "Zell Entity Purchase Agreement" means the Securities Purchase Agreement made as of April 1, 2007 among Tribune Co., the Zell Entity, and Samuel Zell.

29.    "Zell Notes" means the Initial Zell Note and the Subsequent Zell Note.

30.    Reference to a corporation, partnership, limited partnership, limited liability company, unincorporated association, joint venture, government entity, or other fictitious person shall be deemed to include each and all of its present or former subsidiaries, affiliates, predecessors and successors, and, with respect to each of the aforesaid entities, its present or former officers, directors, shareholders, employees, partners, members, general partners, and/or limited partners.

31.    References to the singular include the plural, and references to the plural include the singular as needed to construe the Requests in their broadest permissible form.

32.    The terms "all," "any," "each," and "every" shall each be construed as both "each" and "every" to bring within the scope of each Request or Requests all responses which might otherwise be construed to be outside of its or their scope.

33.    The masculine form of a noun or pronoun includes the feminine form to construe the Requests in their broadest permissible form.

34.    Each request shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

## INSTRUCTIONS

1.    The preceding Definitions apply to each of these Instructions and each of the following Requests.

2.    These Requests apply to all documents in your possession, custody or control, including documents in the possession, custody or control of your members, attorneys, agents, accountants and advisors.  A document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you: (1) own such document in whole or in part; (2) have a right, by contract, statute or otherwise, to use, inspect, examine or copy such document on any terms; (3) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (4) as a practical matter, have been able to use, inspect, examine, or copy such document when you sought to do so.  If any requested document was, but no longer is, in your control, state the disposition of each such document.

3.    As the term "possession" pertains to e-mail, the term includes, but is not limited to, e-mail contained in your electronic e-mail directories containing (a) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

4.    In responding to each Request, you are to review and search all relevant files of appropriate entities and persons.

5.    All document Requests shall be deemed to include Requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6.    You are to produce the original and all non-identical copies, including all drafts, of each document requested. If you are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.

7.    Any document requested herein shall be produced as it is kept in the ordinary course of business. The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file each shall be set forth. All documents requested herein shall be produced electronically as tagged image file format ("TIFF") or portable document format ("PDF") files, except that all spreadsheets and accounting and financial data, including those created with Excel software, shall be produced in their native form.

8.    If any document responsive to these requests is known to have existed and cannot now be located, or has been destroyed or discarded, set forth a complete statement of the circumstances surrounding such loss or destruction, including:

(1)    A description of the document, including the date, a summary of its contents and the identity of its author and the person(s) to whom it was sent or shown;

(2)    The last known custodian;

(3)    Whether the document is missing or lost or was destroyed or discarded;

(4)    The date of loss, destruction or discard;

(5)    The manner of destruction or discard;

(6)    The reason(s) for destruction or discard;

(7)    The person(s) authorizing or carrying out such destruction or discard; and

(8)    The efforts made to locate lost or misplaced documents.

9.    In the event that you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you shall

produce as much of the document concerned as to which no claim of privilege is made.  With respect to documents or portions of documents for which a claim of privilege or limitation is made, you are instructed to provide a numerical list of the document(s) and thing(s) for which a privilege or limitation of discovery is claimed that (1) identifies the nature of the privilege (including work product) asserted and, if the privilege is governed by state law, indicate the state of the privilege rule invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document, e.g., letter or memorandum; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment also is withheld from production.

10.    Each Definition, Instruction and Request herein shall be construed independently and not with reference to any other Definition, Instruction or Request for the purposes of limitation.

11.    If any meaning of any term in any Request herein is unclear to you, without waiver of the Administrative Agent's right to seek a full and complete response to the Request, you shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

12.    In the event that you interpose an objection to a Request, you should clearly indicate to which part or portion of the Request the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate Request.

13.    Each Request shall be deemed continuing so as to require prompt supplementation if you obtain, generate, or discover additional documents. If, after responding, you obtain or become aware of any additional documents responsive to these Requests, production of such additional documents shall be made forthwith as required by Rule 7026 of the Federal Rules of Bankruptcy Procedure and Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS

1.    All documents produced in the course of the above-captioned proceedings in response to formal or informal requests for the production of documents.

2.    All communications relating to the resolution or potential resolution of the LBO-Related Causes of Action, including any communications with the Settling Parties.

3.    All documents relating to the Settlement Term Sheet, including all drafts of the Settlement Term Sheet and all communications regarding the terms to be incorporated in the Settlement Term Sheet.

4.    All documents relating to the Settlement Support Agreement, including all drafts of the Settlement Support Agreement and all communications regarding the terms to be incorporated in the Settlement Support Agreement.

5.    All documents reflecting or analyzing the value of the LBO-Related Causes of Action.

6.    All documents relating to the Releases, including all communications relating to the negotiation of these releases and all documents assessing, analyzing, or reflecting the value or propriety of the releases.

7.    All agreements that could provide You with a right to indemnification from Tribune and any communications regarding such agreements.

8.    All communications regarding the allocation of value between Tribune Co. and the Guarantor Subsidiaries under the Plan, including any communications with the Settling Parties.

9.    All documents relating to the classification of claims against Tribune arising under the Senior Credit Agreement and the Bridge Credit Agreement, including claims against the Guarantor Subsidiaries.

10.    All documents analyzing or reflecting the potential recovery of any of Tribune's creditors in connection with any proposed or contemplated plan of reorganization or potential settlement of the LBO-Related Causes of Action.

11.    All analyses of creditor recoveries under the Global Settlement, including any analysis of the amounts being transferred from potential recoveries of the LBO Lenders to the holders of Senior Notes Claims and Other Parent Claims and any analysis of the amounts being transferred from potential recoveries of holders of Allowed Loan Guaranty Claims to holders of General Unsecured Claims against Filed Subsidiary Debtors.

12.    All financial analyses of creditor recoveries under any scenario other than the Global Settlement, including any analysis of the potential recoveries of creditors absent a settlement of the LBO-Related Causes of Action.

13.     All documents concerning or analyzing whether the Debtors or the Guarantor Subsidiaries received reasonably equivalent value, or other value realized or contemplated to be realized, in connection with the Merger Agreement, the Senior Credit Agreement, and the Bridge Credit Agreement.

14.     All documents relating to any evaluation or analysis of the potential for the obligations incurred or consideration paid in connection with the Merger Agreement, the Senior Credit Agreement, and the Bridge Credit Agreement to be avoided or challenged under the Bankruptcy Code or state fraudulent conveyance law.

15.     All documents discussing, analyzing or reflecting the value of any of the Debtors or the Guarantor Subsidiaries between January 1, 2007 and the present, including all documents relating to any financial valuation, appraisal, analysis, opinion, review, statement or projection of any of the Debtors or the Guarantor Subsidiaries.

16.     All documents assessing, analyzing, or referring to the solvency of the Debtors or the Guarantor Subsidiaries from January 1, 2007 through the Petition Date, including any analysis of the adequacy of their capital with respect to their ongoing business or transactions and their ability to pay debts as they come due.

17.     All consolidated and consolidating financial statements of the Debtors or the Guarantor Subsidiaries for the period January 1, 2007 through the Petition Date, including those provided by the Debtors to any actual or potential lenders during discussions or negotiations relating to the Leveraged ESOP Transactions, the Merger Agreement, the Senior Credit Agreement, the Bridge Credit Agreement or the Zell Entity Purchase Agreement.

18.     All documents relating to the assets and liabilities of the Debtors or the Guarantor Subsidiaries during the period January 1, 2007 through the Petition Date, including all balance

sheets, financial statements, listings of all cash accounts held by the Debtors or the Guarantor Subsidiaries and the monthly balances for each account, summary and detail supporting all tangible and intangible assets, detailed inter-company receivable and intercompany payable balances and activity, and summary and detail supporting all liabilities of each of the Debtors and Guarantor Subsidiaries.

19.    All documents relating to business plans for any Debtor or Guarantor Subsidiary prepared or in effect during the period from January 1, 2007 through the present.

20.    All documents relating to the valuation of the reorganized Tribune Company and its subsidiaries, including documents relating to the models, methodologies, business plans and financial forecasts used to arrive at such valuation.

21.    All analyses and models relating to the allocation of value among Tribune Company and its subsidiaries, including all analyses and models relating to the settlement of intercompany claims and to the actual or potential recoveries of creditors of the Tribune Company and its subsidiaries.

22.    All documents reflecting the intercompany balances of the Tribune Company and its subsidiaries since the Petition Date, including documents sufficient to identify the composition and source of such intercompany balances and documents sufficient to identify any changes to the intercompany balances since the Petition Date.

23.    All communications concerning or relating to the financing of the Leveraged ESOP Transactions, including any reports issued by investment banks, underwriters, financial advisors or other financial analysts in connection with the Merger Agreement, the Senior Credit Agreement, the Bridge Credit Agreement, or the Zell Entity Purchase Agreement.

24.      All documents concerning meetings of or deliberations of Tribune Co.'s Board of Directors or any Special Committee of Tribune Co.'s Board of Directors at which the Leveraged ESOP Transactions approved by the Board on April 1, 2007 were considered or discussed, including any discussion of the Merger Agreement, the Senior Credit Agreement, the Bridge Credit Agreement, or the Zell Entity Purchase Agreement.

25.      All documents concerning the purpose and structure of the Leveraged ESOP Transactions.

26.      All documents relating to presentations made in connection with the Leveraged ESOP Transactions, the Merger Agreement, the Senior Credit Agreement, the Bridge Credit Agreement or the Zell Entity Purchase Agreement, including presentations made to the Tribune Co. Board of Directors or any committee thereof, rating agencies, actual or proposed lenders, financial advisors or the Tribune Employee Stock Ownership Plan or trustees thereof or advisors thereto.

27.      All documents relating to any and all risk analyses prepared in connection with the Leveraged ESOP Transactions, the Merger Agreement, the Senior Credit Agreement, the Bridge Credit Agreement and the Zell Entity Purchase Agreement.

28.      All documents relating to any solvency opinions regarding Tribune (including any solvency opinions from Valuation Research Corporation), including all documents referenced therein.

29.      All communications with Houlihan Lokey Howard & Zukin Capital, L.P., Duff & Phelps, Valuation Research Corporation, and Murray Devine & Company regarding the Leveraged ESOP Transactions, the Merger Agreement, the Senior Credit Agreement, the Bridge

Credit Agreement and the Zell Entity Purchase Agreement, including all communications relating to any solvency opinions.

30.    All documents relating to any opinion letters relating to the Leveraged ESOP Transactions, the Merger Agreement, the Senior Credit Agreement, the Bridge Credit Agreement or the Zell Entity Purchase Agreement.

31.    All documents reflecting interest or principal payments made under the Senior Credit Agreement, the Bridge Credit Agreement or the Zell Notes on or prior to the Petition Date, including documents showing by whom or on whose behalf such payments were made, when such payments were made, the amounts of such payments, the dates of such payments and under which agreements the payments were made.

32.    Documents sufficient to show the amount of funds received by You (either as fees or payments of interest and principal) in connection with the Senior Credit Agreement or the Bridge Credit Agreement.

33.    All documents reflecting any or all of the flow of funds pursuant to the Senior Credit Agreement and the Bridge Credit Agreement, including any analysis of the amount of loan proceeds that were used for corporate purposes unrelated to the Leveraged ESOP Transactions.

34.    All exhibits or demonstrative aids to be used at any hearing on confirmation of the Plan, and all work papers and other documents concerning such exhibits.

35.    All documents on which You rely or intend to rely, including any expert opinion or report, in these chapter 11 proceedings.

36.    All documents supplied to or reviewed by any expert witness or consultant You have retained in connection with these proceedings, including any communications with such expert witness or consultant.

Dated:  May 17, 2010
        Wilmington, Delaware

                            FOX ROTHSCHILD LLP

                            */s/ Jeffrey M. Schlerf*
                            Jeffrey M. Schlerf (No. 3047)
                            John H. Strock (No. 4965)
                            Citizens Bank Center
                            919 North Market Street, Suite 1600
                            Wilmington, Delaware 19801
                            Telephone: (302) 654-7444
                            Facsimile: (302) 656-8920

                            Attorneys for Wells Fargo Bank, N.A.
                            as Administrative Agent under the
                            Bridge Credit Agreement