IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Re: Docket No. 7522<br><br>Hearing date: January 24, 2011, at 11:00 a.m. (Eastern)<br><br>Objection deadline: January 19, 2011, at 4:00 p.m. (Eastern) |

**ANGELO, GORDON & CO., L.P. AND OAKTREE CAPITAL MANAGEMENT, L.P.'S RESPONSE TO LAW DEBENTURE TRUST COMPANY OF NEW YORK'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

1. Angelo, Gordon & Co., L.P. ("Angelo Gordon") and Oaktree Capital Management, L.P. ("Oaktree" and collectively the "Respondents") hereby submit this response to the Motion to Compel the Production of Documents, filed by Law Debenture Trust Company of New York ("Law Debenture") dated January 14, 2011 as it pertains to requests for production of documents related to Respondents' media interests and/or the FCC application process ("FCC Requests").[1] Aurelius Capital Management submitted a request similar to the FCC Requests. *See* Motion to Compel the Production of Documents, filed on behalf of Aurelius Capital Management, dated January 19, 2011 ("Aurelius Request"). JP Morgan Chase & Co. filed a response to the Aurelius Request on January 19, 2011 ("JP Morgan Response"). The Respondents hereby support and incorporate by reference the arguments made in the JP Morgan Response. For all of the reasons which are stated in greater detail in the JP Morgan Response, Law Debenture's request is irrelevant, overbroad, and burdensome.

---

[1] The remaining issues raised in Law Debenture's Motion to Compel are addressed in the "Opposition To Motion Of Law Debenture Company Of New York To Compel Oaktree Capital Management, Angelo, Gordon & Co., and Hennigan, Bennett & Dorman To Produce Documents" filed contemporaneously herewith.

2.      Law Debenture is requesting documents related to all ownership interests in Media Entities[2] held by the Respondents ("FCC Requests"). *See* Mot. at ¶34. As the sole justification for its broad FCC Requests, Law Debenture argues that the documents it seeks will help it evaluate whether the Respondents' media interests might prevent the Debtor/Committee/Lender Plan from obtaining approval from the Federal Communications Commission ("FCC" or "Commission"), and that the possibility that the FCC will delay or reject the application is thus relevant to the "feasibility" of Debtor/Committee/Lender Plan. *See* Mot. at ¶¶34-42. This argument is flawed for at least four reasons.

3.      First, Law Debenture's request is improper because any information relevant to the FCC's approval of the FCC Applications will either be available to Law Debenture in the Media Ownership Certification process or is already publicly available in the pending FCC Applications themselves. In particular, the FCC Applications that are already publicly on file with the FCC contain information regarding the Respondents' "attributable" media interests. The FCC Applications were submitted on forms created by the FCC itself in furtherance of its statutory obligation to consider whether, in the context of a license assignment or transfer, "the public interest, convenience, and necessity will be served" by a grant. 47 U.S.C. § 310(d). To the extent the forms do not request the information contained in the FCC Requests, the information is by definition irrelevant to the FCC. In addition, Law Debenture already has or will have access to the attached Media Ownership Certifications, which were specifically designed to address all of the types of interests that the FCC considers relevant under its rules and policies. Therefore, Law Debenture has access to all the information necessary to interpose an objection to confirmation based upon its argument regarding the Respondents' compliance

---

[2]   The term Media Entities has been defined in previous Court filings. To the extent that terms are not defined herein, we incorporate by reference the relevant definitions which have been defined in previous Court filings.

2

with the FCC's media ownership rules. Consequently, the Media Ownership Certification process and the FCC Applications render the information sought in the FCC Requests unnecessary.

4.   Second, to the extent that the Respondents hold other non-attributable interests in Media Entities, such interests are irrelevant to the FCC's media ownership analysis, and therefore, certainly irrelevant to the bankruptcy court's "feasibility" determination of whether the FCC will grant the FCC Applications. Although Law Debenture's request for documents relates to "all" media ownership interests, the FCC's evaluation of the Respondents' compliance with the FCC's media ownership rules is limited to only those types of ownership interests that meet the FCC's definition of "attribution." *See* 47 C.F.R. § 73.3555 Note 2. As a result, only the Respondents' "attributable" media ownership interests are relevant to the FCC's analysis of the Debtor/Committee/Lender Plan. Importantly, the Respondents certified in the Media Ownership Certifications that they have disclosed all "attributable" interests in Media Entities. The Respondents understand that Tribune supplied proponents of each of the competing Tribune plans with copies of the Media Ownership Certifications, and therefore Law Debenture should have access to the Media Ownership Certifications. In addition, the Respondents disclosed all "attributable media ownership interests" in the FCC Applications which were certified as accurate and true. Because non-attributable media interests are not considered by the FCC in its media ownership analysis of applicants, any economic interest in other media that the parties may have that are not attributable are irrelevant and do not have to be disclosed to the FCC or third parties. *See* FCC Form 314 Instructions, available at http://www.fcc.gov/Forms/Form314/314.pdf. Furthermore, requiring the Respondents to respond to such a request would be overly burdensome.

3

5. Third, to the extent that Law Debenture believes the Media Ownership Certification process does not adequately address issues relating to whether the post-emergence ownership structure proposed by the Debtor/Committee/Lender Plan comports with the FCC's rules, that is an issue that should be addressed by the FCC, not this Court. If Law Debenture takes issue with the FCC's procedures or the FCC Applications, it is freely able to appear in the FCC proceeding and make those points. However, Law Debenture has failed to take that step, choosing to bring this FCC-related dispute to this Court instead. To the extent Law Debenture's true motivation for seeking this information is to use it to oppose the Respondents' applications before the FCC, that is a grossly improper basis on which to seek discovery in the bankruptcy court. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 n. 17 (1978).

6. Finally, Law Debenture's contention that the FCC Requests are justified on the ground that they are necessary to test the "veracity" of the information reflected in the Respondents' FCC Applications or Media Ownership Certifications has no logical limit. We are aware of no authority that would support a discovery request for the purpose of testing whether an application submitted to an administrative agency was accurate. Moreover, the FCC, an administrative agency with expertise in analyzing these issues, has its own process for investigating false certifications. Furthermore, the FCC has authority to impose sanctions on applicants who falsely certify FCC applications. Therefore, the FCC Requests are not necessary to ensure the veracity of the FCC Applications and Media Ownership Certifications.

7. In conclusion, the materials sought by the FCC Requests are either irrelevant to the FCC proceeding and thus irrelevant to the bankruptcy proceeding or are publicly available to Law Debenture in the FCC Applications and the Media Ownership Certifications. Law Debenture should not be permitted to impose further onerous discovery upon the Respondents to

satisfy its curiosity or to invoke this Court's civil discovery process to obtain information for use in another forum that itself does not allow third-party discovery.

Dated: January 19, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ M. Blake Cleary
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

- and -

AKIN GUMP STRAUSS HAUER AND FELD LLP
Tom W. Davidson, Esq.
1333 New Hampshire Avenue, NW
Washington, DC 20036

*Counsel to Oaktree Capital Management L.P., and Angelo, Gordon & Co., L.P.*