**EXHIBIT 4**

| New York | Madrid |
|---|---|
| Menlo Park | Tokyo |
| Washington DC | Beijing |
| London | Hong Kong |
| Paris | |

# Davis Polk

**Elliot Moskowitz**

Davis Polk & Wardwell LLP      212 450 4241 tel
450 Lexington Avenue           212 701 5241 fax
New York, NY 10017             elliot.moskowitz@davispolk.com

December 20, 2010

<u>**Via E-Mail**</u>
Deborah Newman, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY  10036

Dear Deborah:

In response to your email dated December 18, 2010, counsel for JPMorgan is available to meet-and-confer at the suggested time of 2 pm EST on Tuesday, December 21, 2010.  As you acknowledged in your email, JPMorgan is not yet required to serve its Responses and Objections to Aurelius' first set of document requests (the "Aurelius Document Requests").  Such Responses and Objections are due on December 23, 2010, pursuant to the agreed-upon Case Management Order.  To the extent that Aurelius intends to meet-and-confer regarding specific document requests that have not yet been responded to, any discussion regarding such requests is premature and will likely be unproductive at this time.

You have also requested that JPMorgan send "a list of custodians and search terms that [JPMorgan] propose[s] to use to locate electronic information responsive to Aurelius' requests." To the extent this represents a proposal for a *mutual* exchange of information between JPMorgan and Aurelius regarding the discovery requests received from, and served upon, Aurelius, JPMorgan is prepared to share its search parameters with Aurelius in advance of or subsequent to the Tuesday meet-and-confer provided that Aurelius is prepared to do the same. Our willingness to share that information, however, is not to suggest that the parameters of JPMorgan's search is subject to debate or revision.   Moreover, to the extent Aurelius' request for search parameters represents a demand for such information, JPMorgan objects and requests that Aurelius state the basis for its belief that it is entitled to make such a demand.

As you know, the heavily negotiated Case Management Order has been agreed-upon by all parties, and governs all aspects of discovery in connection with the upcoming confirmation hearing, including e-discovery.  As such, Delaware Local Rule 7026-3, which sets forth certain default standards in the event the parties are unable to reach consensual agreement on the conduct of discovery, is not applicable.  In fact, Aurelius itself has conceded as much by failing to comply with various other aspects of Local Rule 7026-3.

Moreover, there is a more fundamental point to be made to the extent you imply that Aurelius has the right to approve of the search parameters that JPMorgan has employed in order to

reasonably respond to Aurelius' requests. As you are well aware, contrary to standard industry practice in most complex cases, Aurelius has insisted, over JPMorgan's objection, on a *hard* deadline of thirty calendar days to *complete* production of documents responsive to Aurelius' requests. While in a more typical scenario – where the party propounding discovery is amenable to a reasonable best-efforts rolling production depending on the scope and complexity of the requests served – it may be feasible for the parties to meet-and-confer to negotiate certain search terms prior to conducting a search, that is simply impractical here, by Aurelius' own making. JPMorgan was served with Aurelius' broad discovery requests, consisting of 74 individual document requests (many of which contain sub-parts), on December 9, 2010.[1]

In order to have any realistic possibility of complying with the hard thirty-day deadline imposed at Aurelius' insistence, JPMorgan was left with no alternative but to undertake its collection and review process based upon what it determined to be reasonable search parameters. For Aurelius to suggest a meet-and-confer session to approve of JPMorgan's initial search parameters just two business days prior to the date the Responses and Objections are due, and less than three weeks prior to the date JPMorgan is obligated to *complete* production of documents over a period of time spanning both the Christmas and New Year's holidays, is unreasonable and impractical.[2] Aurelius sought, and prevailed in obtaining, a hard production deadline, but in doing so it cannot ignore the consequences of that result. Put simply, Aurelius cannot have it both ways – it cannot insist on an atypically short period of time for JPMorgan to *complete* document production, while at the same time demand the right to approve, at its own pace, the parameters of a search that must be conducted before the collection process can even begin, much less the review and production process. JPMorgan and its counsel are engaged in extraordinary efforts, at a difficult time of year, to comply with an onerous production deadline imposed at Aurelius' insistence; it is neither appropriate nor reasonable for Aurelius to attempt to impose additional requirements on JPMorgan that would make it impossible to do so.[3]

We nonetheless agree that there are certain topics, such as the appropriate scope and timing of a privilege log, that are ripe for discussion. In addition, it would be useful to gain an understanding of your client's positions regarding certain threshold privilege questions in advance of our meet-and-confer session. Indeed, as set forth below, we are concerned that a number of the Aurelius Document Requests take positions regarding privilege that are difficult to understand and require clarification or Court intervention.

<u>Common Interest Privilege Materials</u>

It appears from the Aurelius Document Requests that Aurelius does not recognize the existence of any common interest privilege between the Debtors and its plan proponents, at any point in time. For example, instruction number 13 states that Aurelius is seeking *all* documents and communications exchanged between the Debtors and the proponents of the

---

[1] Late on Friday afternoon, Aurelius served another dozen requests on JPMorgan. We note that such requests do not appear to have been circulated to all parties, as the Case Management Order requires. We suggest that Aurelius remedy this error today.

[2] We also remind Aurelius that that the Case Management Order imposes a February 25, 2011 cut-off for all discovery, including depositions. Given the narrow discovery window, a prolonged negotiation over electronic search parameters is simply not feasible.

[3] Having said all this, we believe Aurelius will agree that JPMorgan has employed reasonable search parameters in a good faith effort to respond to the Aurelius Document Requests.

Debtors/Committee/Lender Plan concerning the proposed settlement contained therein, including documents the parties are creating now to prepare for the confirmation hearing.  Likewise, request number 36 seeks all documents "relating to any objection to any aspect of the Noteholder Plan," and request number 56 even seeks "drafts of any confirmation brief relating to the Debtor/Committee/Lender Plan."  Please clarify whether it is indeed Aurelius' position that a common interest privilege does not exist between the Debtors and its proponents at any point in time, including the present, when the Debtor/Committee/Lender plan proponents are working together as a single unit to prepare for the confirmation hearing.

Privilege issues aside, it is inconceivable that Aurelius would on the one hand negotiate a Case Management Order that requires parties to work in "Plan Proponent Groups" yet at the same time does not recognize a common interest privilege among the parties within each court-ordered group.  And of course, it is unprecedented for one side of a litigation to be granted an opportunity to examine all of the pre-trial work product of the other side, as Aurelius requests here.

Finally, if it is Aurelius' position that there is no common interest privilege between the Debtors and its plan proponents, please advise whether Aurelius takes the same position with respect to any common interest privilege between itself and its plan proponents.  To the extent Aurelius believes that a common interest privilege exists among proponents of one plan but not another, please provide the basis for any such distinction.

<u>Mediation Materials</u>

We are also concerned with the Aurelius Document Requests related to the Mediation.  As you know, communications with the Mediator appointed in these cases are subject to the Court's Order Appointing Mediator, dated September 1, 2010 [D.I. 5591] (the "Mediation Order").  The Aurelius Document Requests appear to seek all documents related to the Mediation except for face-to-face communications with the Mediator on November 17, 2010.  (*See* Instruction No. 14.)  Such requests are plainly inconsistent with the Mediation Order, which states that "discussions among the Mediation Parties relating to the Mediation . . . , any other documents or information provided to the Mediator or Mediation Parties in the course of the Mediation, [and]   . . . correspondence, draft resolutions, offers, and counteroffers produced for or as a result of the Mediation . . . are strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding."  (D.I. 5591 at ¶ 7.)

As you know, the Mediation began before November 17, 2010 (for example, a lengthy session with the Mediator occurred on September 26, 2010) and in fact is continuing, as the Mediator himself has stated in pleadings to the Court.  (*See* Mediator's Report D.I. 5831; Mediator's Second Report D.I. 5936 ("The Mediator does not consider the Mediation to be closed and will continue to seek to include additional parties.").)  Indeed, it was the work of the Mediator that led to the two settlements that have been reached since then, including the settlement embodied in the Debtor/Committee/Lender plan that will be considered by the Court at the confirmation hearing.  Moreover, Aurelius itself has participated in additional sessions with the Mediator, including without limitation an in-person meeting with Judge Gross prior to the November 17 session.  For all these reasons, it is difficult to understand how Aurelius can take the position that only face-to-face discussions with Judge Gross on November 17 are protected by the Court's order.  To the extent Aurelius believes that only the November 17 communications are protected, please confirm that Aurelius likewise believes that all prior and subsequent communications

Deborah Newman                              4                        December 20, 2010

between Aurelius and the Mediator, and between Aurelius and other parties concerning the
Mediation, are proper subjects for discovery and the confirmation hearing.

This is by no means an exhaustive list of the issues we need to address, but I hope you will find
this letter to be a helpful data point for our discussions.  We look forward to your response.

Very truly yours,

Elliot Moskowitz

cc:    Benjamin S. Kaminetzky