IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>                      Debtors. | : Chapter 11<br>: Case No. 08-13141 (KJC)<br>: (Jointly Administered)<br>:<br>: **Hearing Date: January 21, 2010 at 10:00 a.m.**<br>: |

**OBJECTION OF MERRILL LYNCH, PIERCE,
FENNER & SMITH, INCORPORATED TO THE MOTION
OF LAW DEBENTURE TRUST COMPANY OF NEW YORK
FOR AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS**

Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch"), by its attorneys Kaye Scholer LLP and Potter Anderson & Corroon LLP, for its objection ("Objection") to the motion (the "Motion to Compel"), dated January 14, 2010, by Law Debenture Trust Company of New York ("Law Debenture") for an order compelling the production documents from Merrill Lynch, respectfully states as follows:

**PRELIMINARY STATEMENT**

The record in these chapter 11 cases clearly demonstrates both that Merrill Lynch has fully complied with all of its discovery obligations and also that Merrill Lynch's prior productions ("Prior Productions") to the Official Committee of Unsecured Creditors ("Creditors' Committee") and Wilmington Trust Company ("Wilmington Trust") were more than reasonable, careful, comprehensive and fully capable of providing Law Debenture with sufficient relevant documents for the material issues to be presented at the confirmation hearings scheduled to commence on March 7, 2011 (the "Confirmation Hearings").

As explained in <u>detail</u> in the Declaration of Joseph M. Drayton ("<u>Drayton Decl.</u>") accompanying this Objection, for the period from June 1, 2006 to December 8, 2008, Merrill Lynch used, with respect to its production to the Creditors' Committee, a search protocol to collect documents that resulted from intense negotiations with the Creditors' Committee and subsequent litigation before this Court. At the December 15, 2009 hearing concerning the discovery dispute between Merrill Lynch and the Creditors' Committee, this Court heard arguments and live testimony from Jennifer Shea, the Vice President - Specialist - Systems and Data Security with the Enterprise Information Management group at Merrill Lynch. Thereafter, the Court ordered Merrill Lynch to search its electronic files, for the period from June 1, 2006 to December 8, 2008, using 12 custodians, 8 business units and 12 search terms. With regard to its production to Wilmington Trust, Merrill Lynch used an additional five search terms applied against documents collected during its negotiations with the Creditors' Committee to identify potentially relevant documents. The Prior Productions comprise over 100,000 documents and more than 1.4 million pages. The documents produced by Merrill Lynch are more than adequate to address the issues that will be before this Court in connection with the Confirmation Hearings.

With respect to the period from December 8, 2008 to December 15, 2010, Merrill Lynch searched the electronic files of Michael O'Brien, a Senior Vice President in the Global Investment Banking Special Assets Group, who has had primary responsibility for the day-to-day management of Merrill Lynch's interests in the above-captioned cases and performance of its obligations, including but not limited to Merrill Lynch's obligations as former administrative agent under the Tribune Bridge Facility

(until Merrill Lynch was replaced by Wells Fargo, N.A. in April 2010); Merrill Lynch's claims against the Debtors; and the claims asserted against Merrill Lynch in connection with these chapter 11 cases. (*See* Declaration of Michael E. O'Brien (the "O'Brien Decl.") at ¶ 3.) Based on input from Mr. O'Brien, Merrill Lynch used three search terms to collect his documents. (O'Brien Decl. at ¶ 7.) Merrill Lynch also searched the files of its in-house counsel, Eric Sieke and two executives, Jeffrey Kaplan and Todd Kaplan, both of whom participated in internal discussions at Merrill Lynch, in October 2010, related to the settlement embodied in the Debtors' proposed plan of reorganization. Merrill Lynch produced over 900 documents to Law Debenture on January 14, 2011. In sum, Merrill Lynch's productions to date amply satisfy its obligations under the applicable legal standards.

The circumstances under which Law Debenture has articulated its request for Merrill Lynch to engage in yet another substantial search of its electronic files for the time period from January 1, 2007 to December 8, 2008 are highly suspicious. Law Debenture's request appears to be driven by a desire to overburden Merrill Lynch, create delay in connection with the Confirmation Hearings or both. Law Debenture first made Merrill Lynch aware that Law Debenture took issue with the search methodology used for Merrill Lynch's prior productions **one day** before Law Debenture's filing of its Motion to Compel.

To the extent that Law Debenture had genuine concerns with the Prior Productions, it should have notified Merrill Lynch on December 15, 2010 when it served its 75 document requests on Merrill Lynch. As set forth in detail in the Drayton Decl., Law Debenture communicated with Merrill Lynch on seven separate occasions prior to

3

the parties' meet and confer telephone conference on January 13, 2010. None of those communications ever hinted or suggested that Law Debenture wanted Merrill Lynch to repeat its prior collection efforts for documents related to the transactions entered into by Tribune Company in 2007 (the "2007 Transactions").

The relief that Law Debenture seeks from the Court would require Merrill Lynch essentially to redo its massive collection and review of documents already completed at the request of the Creditors' Committee approximately a year ago and Wilmington Trust approximately five months ago. Law Debenture's proposed search protocol includes over 25 custodians and over 100 search terms covering a three year period. As set forth more fully below, in the Drayton Decl. and in the O'Brien Decl., in both satisfying its discovery obligations to the Creditors' Committee, Wilmington Trust and now Law Debenture, Merrill Lynch has taken a reasonable and systematic approach, approved by this Court, to the collection of documents based on direct input of employees with knowledge of the relevant groups at Merrill Lynch and their business practices.

Although Law Debenture identified four Merrill Lynch employees who were mentioned in the Examiner's Report that were not among the custodians for Merrill Lynch's collection of documents for the Prior Productions, Law Debenture failed to inform the Court that out of the approximately 58,000 emails produced by Merrill Lynch in the Prior Productions, over 13,000 emails (or one-fourth of the documents in the Document Depository) were sent to or from these four employees. Law Debenture also failed to inform the Court that over 25% of the over 100,000 documents produced by

Merrill Lynch to date contain one or more of the new search terms proposed by Law Debenture for the period prior to December 8, 2008.

In its attempt to challenge Merrill Lynch's search methodologies used to respond to Law Debenture's <u>document</u> requests and the prior discovery requests by the Creditors' Committee and Wilmington Trust, Law Debenture points to lengthy search terms lists as its basis for Merrill Lynch to do more. Law Debenture's lists are not probative as to whether or not Merrill Lynch has conducted a reasonable search for potentially responsive documents. Using its search methodologies, Merrill Lynch has produced over 100,000 documents, consisting of over 1.4 million pages.

Law Debenture should not be rewarded for having engaged in gamesmanship by waiting until **one day** before Merrill Lynch was required to produced documents to inform Merrill Lynch of the relief it seeks through the Motion to Compel. Based on the testimony of Jennifer Shea in connection with the December 15, 2009 hearing held by the Court, both the Court and Law Debenture are aware of the **substantial time** it would take Merrill Lynch to complete the electronic searches and review the resulting pool of documents. Additionally, document discovery is not warranted as demonstrated below and Law Debenture's "sharp practices" should not delay the Confirmation Hearings.

## FACTUAL BACKGROUND

The facts relevant to the Motion to Compel are set forth at length in the accompanying Drayton Decl. <u>and</u> O'Brien Decl., which are incorporated herein by reference. These declarations detail Merrill Lynch's good faith actions in connection

with the Subpoena *Duces Tecum* served by Law Debenture on December 15, 2010 (the "Document Requests").

## MOTION TO COMPEL SHOULD BE DENIED

### I. Merrill Lynch Has Responded in Good Faith to Law Debenture's Document Requests and Produced Non-Privileged Responsive Documents

The facts before the Court demonstrate that Merrill Lynch acted in good faith and in a reasonable manner to meet its discovery obligations under this Court's Discovery and Scheduling Order dated December 20, 2010 (the "CMO"). On December 15, 2010, Law Debenture served 75 Document Requests on Merrill Lynch, seeking information well beyond the scope of the discovery necessary for the Confirmation Hearings. (*See* Drayton Decl. at ¶ 4.) Given Merrill Lynch's limited role in the events leading up to the filing of the three proposed plans of reorganization presently before the Court, the Document Requests were overly broad, unduly burdensome and not narrowly tailored to solicit relevant information in Merrill Lynch's possession. Merrill Lynch is not a proponent of any of the proposed plans before the Court. Moreover, Merrill Lynch was not a party to the mediation ordered by this Court on September 9, 2010, had a minimal role in the mediation and did not become involved in any settlement discussions until October 2010. (*See* O'Brien Decl. at ¶ 8.) Yet, Merrill Lynch was served with essentially the same set of Document Requests that were served by Law Debenture or certain Noteholders on the Debtors, the Creditors' Committee and the other proponents of the Debtors' plan of reorganization.

On December 30, 2010, Merrill Lynch served its objections and responses to the Document Requests (the "Merrill Lynch Response"). (See Drayton Decl. at ¶ 5.) At that time, Merrill Lynch agreed to produce non-privileged documents in response to

49 out of the 75 Document Requests. (See Drayton Decl. at ¶ 5.) The Drayton Decl. explains in detail the bases for Merrill Lynch's objections. (See Drayton Decl. at ¶¶ 6-17 and Ex. B to the Drayton Decl.) Contrary to Law Debenture's assertions, Merrill Lynch agreed in writing in the Merrill Lynch Response to produce certain documents related to "the LBO Causes of Action" and took immediate steps to collect potentially responsive documents. (See Drayton Decl. at ¶ 17.) Merrill Lynch produced 966 non-privileged responsive documents consisting of 7,342 pages on January 14, 2011.

In light of its objections as set forth in the Merrill Lynch Response, discussed in more detail below, Merrill Lynch focused its document collection efforts on the time period from December 8, 2008 to December 15, 2010. Merrill Lynch identified Michael O'Brien as the principal <u>custodian</u> who would have potentially responsive documents because he was responsible for the day-to-day management of Merrill Lynch's interests in the above-captioned cases and performance of its obligations, including but not limited to Merrill Lynch's obligations as former administrative agent under the Tribune Bridge Facility (until Merrill Lynch was replaced by Wells Fargo, N.A. in April 2010); Merrill Lynch's claims against the Debtors; and the claims asserted against Merrill Lynch in connection with these chapter 11 cases (the "<u>Tribune Matter</u>"). (*See* O'Brien Decl. at ¶ 3.) Based on input from Mr. O'Brien, Merrill Lynch identified the following three search terms to use to collect documents related to the Tribune Matter: "Tribune" "Trb" and "Trib!". (*Id.*) In addition to Mr. O'Brien, Merrill Lynch also identified Todd Kaplan and Jeffrey Kaplan as potentially having responsive documents since Messrs. Kaplan and Kaplan participated in October 2010 in internal discussions

related to the settlement embodied in the Debtors' plan of reorganization. (*See* Drayton Decl. at ¶ 33.)

Law Debenture has filed its Motion to Compel, seeking the entry of an order requiring Merrill Lynch to produce documents in response to Document Requests 1-10. Merrill Lynch objected to these Document Requests on the grounds that they were vague, overly broad, unduly <u>burdensome</u> and sought information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Law Debenture suggested it would narrow Document Requests 1-10 but never provided revised requests to Merrill Lynch.

Responding to Document Requests 1-10 would place an extraordinary burden on Merrill Lynch because it does not appear that Merrill Lynch could feasibly determine whether any of its present and former directors, employees and representatives have or had relationships over the <u>past</u> ten years with the thousands of people associated with the companies identified in Document Requests 1-10. For example, the requests seek information from any representative or employee of Merrill Lynch who may have recommended that an employee or representative of any one of more of Tribune, Oaktree, Angelo, Gordon, JP Morgan, Citigroup, Well Fargo or the Zell entities participate in a charitable event ten years ago. Merrill Lynch cannot frame a reasonable search of its systems that would solicit this information in a reliable manner. Nor is it necessary to do so. The records of Michael Costa and Todd Kaplan, historically the Merrill Lynch persons with the most connection to Tribune Company and Sam Zell respectively, were searched long ago in connection with the discovery requests served by the Creditors' Committee herein (discussed below). Moreover, as drafted, Merrill Lynch could not

possibly comply with these requests in the time provided for by the Discovery and Scheduling Order dated December 20, 2010. These requests appear to create an impossible burden to set Merrill Lynch up to fail or to create a basis to delay the Confirmation Hearings. For these reasons, the Court should deny Law Debenture's request for the Court to compel documents in response to Document Requests 1-10.

Law Debenture also <u>requests</u> the Court to compel Merrill Lynch to produce documents that fall squarely within the scope of prior document requests served on Merrill Lynch in these cases. Document Requests 43 and 45-47 seek all documents and communications generally related to "the LBO or actual or proposed financing thereof," the acquisition or disposition by Tribune Individuals, Committee Individuals, Special Committee Individuals or Settling Parties of "an economic interest in or tied to Tribune" including the PHONES notes and "the circumstances under which any Settling Party was selected for, or otherwise became involved in any aspect of the LBO." (*See* Drayton Decl. at 14.) These requests are duplicative of document requests served on Merrill Lynch by the Official Committee of Unsecured Creditors pursuant to Rule 2004 on March 14, 2009 as amended May 26, 2009 (the "<u>UCC Requests</u>") and document requests served by Wilmington Trust Company on May 13, 2010 (the "<u>WT Requests</u>"). (*Id.*) In response to the UCC Requests and the WT Requests, Merrill Lynch produced over 100,000 documents consisting of over 1.4 million pages covering the time period June 1, 2006 to December 8, 2008 to the Document Depository established by Order of this Court on December 15, 2009. (*Id.*)

## II. The Prior Searches and Prior Productions Were Reasonable and Adequate for the Confirmation Hearings.

### A. The Pre-Bankruptcy Time Period, June 1, 2006 - December 8, 2008

Merrill Lynch did not decide on the proper search protocol necessary to respond to the UCC Requests in a vacuum. (*See* Drayton Decl. at ¶ 9.) The Creditors' Committee demanded that Merrill Lynch search 82 custodians using 42 search terms over 24 month period. (*Id.*) Merrill Lynch considered the enormity of the burdens imposed by the Creditors' Committee's demands and the practical considerations associated with compliance with the request -- such as cost and the strain on Merrill Lynch's computer, technology and personnel resources. (*Id.*) Based on these considerations as well as Merrill Lynch's knowledge of its email systems and the composition of its Tribune deal team, Merrill Lynch determined that the Creditors' Committee's request was unreasonable and unduly burdensome. (*Id.*)

In an effort to comply with the UCC Requests in a reasonable manner to meet its discovery obligations, Merrill Lynch took a systematic approach to the collection of potentially responsive emails by identifying the various groups within Merrill Lynch that participated in the transactions entered into by Tribune Company in 2007 (the "2007 Transactions") and identifying one or two custodians per group for email collection. Merrill Lynch identified nine custodians from the following eight groups at Merrill Lynch that worked on the 2007 Transactions: Leveraged Finance, Rating Agency Review, Loan Syndication, Capital Commitments, Chicago Investment Banking, Media Investment Banking, Mergers & Acquisitions and Corporate Credit. (*See* Drayton Decl. at ¶ 10.)

10

After further discussions with the Creditors' Committee, Merrill Lynch proposed a seven step plan aimed at capturing the vast majority of emails responsive to the UCC Requests. (*See* Drayton Decl., Ex. C, Dkt. No. 2849 (setting forth in detail each step of the seven step plan).) The seven step plan, among other things, expanded the list of custodians from 9 to 12, enlarged the date range from a 24 month period to a 30 month period and enabled Merrill Lynch to test the over breadth of certain of the Creditors' Committee's 40 search terms that Merrill Lynch believed were generic. (*Id.*) The Creditors' Committee agreed to Merrill Lynch's seven step plan. (*Id.*)

Ultimately, the Creditors' Committee and Merrill Lynch reached an impasse as to whether Merrill Lynch should use all of the Creditors' Committee search terms or the 28 that were not generic. (*Id.*) The Creditors' Committee moved to compel Merrill Lynch to use all of its search terms and produce documents by January 8, 2010. (Drayton Decl., Ex. D.) At a December 15, 2009 hearing, the Court and parties in interest, including Law Debenture, heard the live testimony of Jennifer Shea, a representative of Merrill Lynch, who described in detail why, even under an expedited process, it takes **three months** and significant resources to search for, process, collect and review electronic documents for 12 custodians using 28 search terms over a 30 month period. (Drayton Decl., Ex. E.)

After hearing the arguments and evidence presented by the Creditors' Committee and Merrill Lynch, the Court entered an order setting forth the search protocol that Merrill Lynch was required to use in connection with the UCC Requests.[1] (*See* Drayton Decl. at ¶ 13.) In accordance with this Court's directive and Merrill Lynch's

---

[1] To the extent Law Debenture or any other party took issue with Merrill Lynch's search methodology, they had an opportunity to challenge the methodology one year ago.

11

seven step plan, Merrill Lynch searched the electronic files of 12 custodians, using 28 search terms over the time period from June 1, 2006 to December 8, 2008. (*Id.*) In addition to searching the electronic files of specific custodians as ordered by the Court, Merrill Lynch also collected and searched the shared electronic drives for June 1, 2007 to December 8, 2008 of each group supporting the 2007 transactions.

In connection with the WT Requests, Merrill Lynch and Wilmington Trust agreed to use five new terms to identify potentially responsive documents. Merrill Lynch applied the five new search terms (<u>for</u> a total of 33 search terms) to the universe[2] of documents that had been pulled before application of the 28 search terms for the 12 custodians previously identified for the UCC production.[3]

Law Debenture argues that the Prior Productions are inadequate because, among other things, the Examiner's Report[4] mentions four Merrill Lynch employees: Caroline Kim, an associate in Leveraged Finance; Nancy Meadows, a vice president in Loan Execution; Stephen Paras, a <u>managing</u> director in Loan Syndication; and David Tuvlin, a managing director in Leveraged Finance. Merrill Lynch searched the shared electronic files of each employee's business unit. Also, three of these employees worked in one of the groups that Merrill Lynch identified as relevant when it selected 12 custodians in connection with its Prior Productions. (*Id.*) Merrill Lynch searched the

---

[2] The universe of documents were the electronic files of the 12 custodians after applying the original 40 search terms proposed by the Creditors' Committee.

[3] The search terms were "PHONES," "Exchangeable Subordinated Debentures due 2029," "Citibank, N.A.," "Indenture Trustee" and "Equity International."

[4] Law Debenture erroneously asserts that the Examiner's Report criticizes Merrill Lynch's prior productions. On the contrary, the Examiner's Report did not point to any deficiencies in or question the search methodology used for Merrill Lynch's Prior Productions.

electronic files of three members of Leverage Finance (Todd Kaplan, Greg Margolies, and Henrik Dahlback) and one member of Loan Syndication (Carl Mayer). (Drayton Decl. at ¶ 36) Ms. Meadows merely played a limited role in connection with the 2007 Transactions as she was responsible for the maintenance and administration of the related loans after they closed. (*Id.*)

The searches performed in connection with the Prior Productions captured a substantial amount of communications of the four employees Law Debenture now seeks. Indeed, over 13,000 of the approximately 58,000 emails produced by Merrill Lynch to the Document Depository were sent to or received by Caroline Kim, Nancy Meadows, Stephen Paras or David Tuvlin, which underscores the reasonableness of Merrill Lynch's search methodology used in connection with its Prior Productions. (*Id.* at ¶ 36.)

Law Debenture also argues that its list of 17 additional search terms is a basis to conclude that the search methodology used for the Prior Productions was inadequate. This argument is belied by the factual record. First, many of the search terms (a) are generic and were identified by Merrill Lynch as generic when the Creditors' Committee proposed that Merrill Lynch use those terms in 2009, and (b) were the subject of litigation before this Court. (*See* Drayton Decl. at ¶¶ 11, 13.) Law Debenture's generic terms "Step 1," "Step One," "First Step," "Step 2," "Step Two," "Second Step," "S-Corp*," "S Corp*," "Tranche B," "Duff & Phelps," "D&P" and "Navigant" were originally proposed by the Creditors' Committee, tested by Merrill Lynch previously and now being asserted as relevant by the Law Debenture despite the fact that this issue was dealt with and resolved in these cases long ago. (*Id.*) Second, the Document Depository currently has over 100,000 documents produced by Merrill Lynch

and over 27,000 (approximately one fourth) contain one or more of the 17 search terms proposed by Law Debenture. (*Id.*)

### B. The Post-Bankruptcy Time Period, December 8, 2008 - December 15, 2010

For the time period after December 8, 2008, Law Debenture requests that this Court order Merrill Lynch to conduct further electronic searching of the custodians identified by Merrill Lynch. This request suffers from the same deficiencies as Law Debenture's request for the preceding time period. Law Debenture has failed to provide the Court with an adequate basis to question Merrill Lynch's search methodology.

As discussed above, Merrill Lynch identified three custodians: Michael O'Brien, Todd Kaplan and Jeffrey Kaplan. Michael O'Brien is the primary source of documents because he has the day-to-day responsibility for the Tribune Matter at Merrill Lynch. (*See* O'Brien Decl. at ¶ 3.) Based on direct input from Mr. O'Brien, Merrill Lynch determined that the search terms "trb," "trib!" and "Tribune" would effectively capture substantially all emails potentially responsive to the Document Requests. (*Id.*) In contrast, Law Debenture has arbitrarily identified 30 search terms for the time period from December 8, 2009 to September 1, 2009 and 76 search terms for the time period from September 1, 2009 to December 3, 2010. Law Debenture has no basis to assert that searching Mr. O'Brien's files using its proposed search terms is more likely to yield responsive documents than using the search terms recommended by Mr. O'Brien.

Todd Kaplan and Jeffrey Kaplan were identified as custodians by Merrill Lynch because they participated in discussions relating to the settlement embodied in the Debtors' Plan in October 2010. (*See* Drayton Decl. at ¶ 38.) The Motion to Compel (at ¶ 37) implies that Merrill Lynch should have searched the files of these employees for the

14

month of September and falsely states that they attended the mediation conducted by Judge Gross in September 2010. As Merrill <u>Lynch</u> communicated to Law Debenture prior to the filing of the Motion to Compel, Messrs. Kaplan and Kaplan have not been involved in matters related to Tribune after December 8, 2008 other than internal discussions in October 2010 about the settlement embodied in the Debtors' plan and preparation with counsel for the Examiner's interview of Mr. Kaplan on July 8, 2010. (*See* Drayton Decl. at ¶ 37.)

Law Debenture also asserts that Merrill Lynch must search its electronic files of Michael Costa and Todd Kaplan for the time period from May 11, 2010 to July 31, 2010. Law Debenture relies on the fact that Messrs. Costa and Kaplan were interviewed by the Examiner. Messrs. Costa and Kaplan were the lead executives handling matters relating to the 2007 Transactions and as a result Merrill Lynch produced their documents for that time period in prior productions. In light of their role, the Examiner interviewed them as part of his investigation. Other than making themselves available to interview with the Examiner, neither Michael Costa nor Todd Kaplan have been involved any Tribune matters after December 8, 2008 other than those described above. Mr. Costa is not even employed by Merrill Lynch and had transitioned from Merrill Lynch long before his interview with the Examiner. For these reasons, Merrill Lynch did not identify either of them as a custodian for the time period of interest to Law Debenture.

The Motion to Compel at ¶ 37 served as Merrill Lynch's first notice that Law Debenture even contemplated having Merrill Lynch search its in-house counsel files for the period from December 8, 2008 to December 3, 2010. Merrill Lynch does not believe that in-house counsel are a proper custodian to search in response to the

Document Requests because any relevant documents would likely be protected from disclosure based on the attorney-client privilege, attorney work product doctrine and common-interest privilege. Nonetheless, out of an abundance of caution and prior to the filing of the Motion to Compel, Merrill Lynch collected and searched the files of its in-house counsel assigned to this matter, Eric Sieke, Esq. (*See* Drayton Decl. at ¶ 42.) Mr. Sieke's files did not contain any non-privileged responsive documents other than public new reports concerning these chapter 11 cases. (*Id.*)

### III. The Relief that Law Debenture Seeks Is Highly Suspect

As demonstrated above in Section I, Merrill Lynch's search methodologies were carefully considered, and Merrill Lynch produced documents more than adequate for the issues to be addressed at the Confirmation Hearings. Despite Merrill Lynch's thorough, careful and comprehensive collection and review of documents in accordance with this Court's order dated December 28, 2009, Law Debenture has requested that this Court compel Merrill Lynch to conduct -- **yet again** -- a substantial collection and review of its electronic documents for the time period prior to December 8, 2008. Law Debenture waited **one month** after the service of its Document Requests to assert that Merrill Lynch's methodology used in the Prior Productions was inadequate. Instead of bringing this issue to Merrill Lynch's attention upon the service of its Document Requests, Law Debenture apparently waited in order to impose burdens on Merrill Lynch that cannot realistically be met within the time frame contemplated by the CMO or to fabricate a reason to delay the presently scheduled Confirmation Hearings.

Law Debenture is the true culprit responsible for any delay resulting from the Motion to Compel. Law Debenture could have provided notice of its proposed search

16

proposal(s) to Merrill Lynch at any time on or after December 15, 2010. Law Debenture sent Merrill Lynch seven written communications after December 15, 2010 up until the first meet and confer teleconference on January 13, 2011. (*See generally* Drayton Decl. at ¶¶ 18-33.) None of the communications provided any indication that Law Debenture questioned the adequacy of the Prior Productions or had specific search terms and custodian lists for Merrill Lynch to consider.[5] (*Id.*)

Law Debenture seeks an order requiring Merrill Lynch to comply with its proposed search protocol, which lists over 25 custodians and over 100 search terms covering a three year period. Law Debenture is well aware that this request would likely require three months or more for Merrill Lynch to produce documents. (*See* Drayton Decl., Ex. E at 29.) It is a matter of public record that the relief that Law Debenture seeks from the Court would create costly discovery obligations on Merrill Lynch that would likely take three months or more to complete. (*See id.*) At the December 15, 2009 hearing, Law Debenture heard the live testimony of Jennifer Shea, the Merrill Lynch employee who described in detail why, even under an expedited process, it takes three months and significant resources to search for, collect, process, and review electronic documents for 12 custodians using 28 search terms over a 30 month period. (*See id.*) Thus, if the relief Law Debenture seeks is ordered, it is an impossible task for Merrill Lynch to complete within the current discovery schedule set by the CMO.

---

[5] The Motion to Compel (at ¶ 11) attempts to deflect the true nature of Law Debenture's conduct by claiming that Merrill Lynch failed to respond to a December 23, 2010 email from Law Debenture seeking to schedule a meet and confer. Law Debenture's representation to the Court is false. Merrill Lynch responded the very next business day in an email addressed to Ms. Christine Montenegro and Mr. Paul Burgo of the Kasowitz Firm and suggested that the parties wait until Law Debenture had an opportunity to review the Merrill Lynch Response, which at that time was due three days later. (*See* Drayton Decl. at ¶ 19.)

## CONCLUSION

The Court should deny Law Debenture's Motion to Compel because the Prior Productions and Merrill Lynch's January 14, 2011 production to Law Debenture adequately respond to the Document Requests. If the Court compels further production by Merrill Lynch, as sought by Law Debenture, Merrill Lynch will need substantial time to comply. Law Debenture should not be rewarded for its machinations and maneuvering by waiting. Accordingly, Merrill Lynch respectfully submits that the relief sought by Law Debenture should under no circumstances delay the Confirmation Hearings.

**WHEREFORE,** Merrill Lynch respectfully requests that this Court (i) deny the Motion to Compel and (ii) grant Merrill Lynch such other and further relief as is just and proper.

Dated: January 19, 2011

POTTER ANDERSON & CORROON LLP

*/s/ Laurie Selber Silverstein*

Laurie Selber Silverstein (DE Bar No. 2396)
R. Stephen McNeill (DE Bar No. 5210)
1313 N. Market Street, 6th Floor
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000

-and-

KAYE SCHOLER LLP
Madlyn Gleich Primoff
Jane W. Parver
Joseph M. Drayton
425 Park Avenue
New York, New York 10022

*Counsel for Merrill Lynch Capital Corporation* and *Merrill Lynch, Pierce, Fenner & Smith Incorporated*

PAC #997518 / 33740