**<u>EXHIBIT A</u>**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, *et al.*, | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## MR. ZELL AND EGI-TRB LLC'S SUPPLEMENT TO
## THEIR LIMITED OBJECTION TO
## THE COMMITTEE'S COMPLAINT CONFIRMATION MOTION

Samuel Zell ("Mr. Zell") and EGI-TRB LLC ("EGI-TRB") respectfully submit this supplemental brief in support of their limited objection (the "Objection")[1] to the Committee's (the "Committee") Motion (the "Committee's Motion").[2]

Mr. Zell and EGI-TRB have made this Objection to preserve their fundamental contention that standing is jurisdictional, may be reexamined at any time, and has not been preclusively determined as to claims the Committee alleges against Mr. Zell and EGI-TRB that the Examiner found are unlikely to succeed. As the Committee's reply brief makes clear, Mr. Zell and EGI-TRB were right to make their Objection. The Committee apparently believes that the Court has held, or should now hold, that Mr. Zell and EGI-TRB are precluded from ever raising a challenge to the Committee's standing to prosecute its alleged claims against them. The Committee is wrong, for at least four reasons:

---

[1] Mr. Zell and EGI-TRB's Limited Objection to the Committee's Motion for Entry of an Order Confirming Standing, filed on December 13, 2010 [Dkt. No. 7164].

[2] The Committee's Motion For Entry Of An Order Confirming That The Court's October 27, 2010 Order Granted The Committee Standing With Respect to All Claims Asserted In the Amended Complaints In Adversarial Proceeding Nos. 10-53963 And 10-54010, filed December 7, 2010 [Dkt. No. 7091].

First, standing is a jurisdictional matter and may be examined—or reexamined—at any time.  *In re Together Dev. Corp.,* 262 B.R. 586 (Bankr. D. Mass. 2001).  The Committee has no answer to that black-letter principle.

Second, the Court's October 27 Order with respect to standing in an adversarial proceeding is interlocutory in nature and may be withdrawn or revised at any time.  Again, the Committee makes no response.

Third, where an issue has been decided without a full adversarial presentation, as the Committee's initial motion for standing was here, that decision does not have preclusive effect in later proceedings, whether as collateral estoppel, law of the case, or any other doctrine.

Fourth, as the Court itself noted at the December 15 hearing, these matters are before the Court now because the Committee filed a motion for "clarification" of the Court's October 27 Order concerning standing.  Having asked the Court to revisit the scope and meaning of that Order, the Committee cannot fairly contend that other parties should be precluded from objecting.

Mr. Zell and EGI-TRB raise this issue of standing, and seek to preserve their ability to contest that issue in the future, because the Committee's claims against them are not colorable or in the Estate's best interests.  The Committee seeks to bring claims against Mr. Zell and EGI-TRB, even though, unlike other named defendants, the Court-appointed Examiner found the claims against Mr. Zell and EGI-TRB unlikely to succeed—including some claims that the Examiner found had "no plausible basis" and were "highly unlikely to succeed."

The contrary arguments of the Committee and Aurelius are not only incorrect but also demonstrate why a full adversarial determination of these standing issues is required.  Only by mischaracterizing the Examiner's Report and the evidentiary record in arguments set forth for

the first time in "reply" and "joinder" briefs can the Committee and Aurelius even attempt to demonstrate that these claims are colorable and beneficial to the Estate. Their last-minute filings—after the Court took the Objection under advisement at the December 15 hearing—demonstrate that the Court has not yet had the benefit of a full adversarial presentation of these issues. Mr. Zell and EGI-TRB should be afforded a fair opportunity to respond.

The Court should hold that its October 27 Order, and any order resulting from the Committee's Motion, does not preclusively determine the issue of standing for purposes of adversary proceedings against Mr. Zell and EGI-TRB. The Court should order the parties to meet and confer on a process, potentially in conjunction with any lifting of the stay, to afford Mr. Zell and EGI-TRB a full and fair opportunity to be heard on this jurisdictional issue. In the interim—and as the parties and the Court discussed at the December 15, 2010 hearing—a tolling agreement and a dismissal without prejudice would preserve all parties' rights until a decision on standing is made.

### **Background**

*Procedural History.*

On the afternoon of October 21, one day before the Committee's motion for standing was heard by this Court, the Committee sent Mr. Zell and EGI-TRB a copy of the draft complaint requesting that they withdraw certain confidentiality designations. In response, counsel for Mr. Zell and EGI-TRB immediately informed the Committee that the claims alleged against them were unfounded and contained allegations that "misstate[] facts and make[] allegations contrary to the findings of the Examiner." (Ex. A, 10/22/10 Email.) The Examiner's conclusions—which generally foreclose the legal theories alleged against them by the Committee—are described in detail in Part II.A of this brief.

At the October 22, 2010 hearing, Mr. Zell and EGI-TRB's counsel appeared by telephone and refrained from objecting to the Committee's motion because of the Committee's stated concern that it faced the possible expiration of the statute of limitations, but *did* object to the commencement of litigation on those claims at that point in the bankruptcy process. (Ex. B, 10/22/10 Hr'g Tr. at 43.) Counsel also stated that "the complaint's allegations against my client[s] are unfounded and contrary to the conclusions of the Examiner." (*Id.*)

During the October 22 hearing, the Committee represented to the Court that it would finalize and file a draft complaint by November 1, 2010 and it also represented that the draft complaint would be circulated to interested parties for further discussion. (Ex. B, 10/22/10 Hr'g Tr. at 56-57.) The Court granted the Committee standing, including overruling Mr. Zell and EGI-TRB objection "[w]ith respect to holding up on the filing of the complaint until mediation is completed." (*Id*. at 66.)

Between October 22 and November 1, 2010, Mr. Zell and EGI-TRB twice offered to enter into a tolling agreement with respect to the Committee's alleged claims against them, notwithstanding Mr. Zell's and EGI-TRB's position that the claims were not colorable. (Ex. A, 10/22/10 and 10/25/10 Emails.) The Committee did not respond to those offers, despite promising to do so. (*Id.*) Mr. Zell and EGI-TRB also asked the Committee on October 29, 2010 whether a draft of the complaint would be forthcoming, as the Committee had represented. (Ex. A, 10/29/10 Email.) Again, counsel for the Committee did not respond.

Instead, on November 1, 2010, the Committee filed its amended complaint. To the disappointment of Mr. Zell and EGI-TRB, the complaint still contained the unfounded claims alleged against them that the Examiner's Report had concluded were unlikely to succeed.

*Committee's Present Motion.*

On December 7, 2010, the Committee filed its instant motion seeking confirmation from this Court that it has standing not only to file the complaint, but also to commence, prosecute and settle the claims alleged in the complaint it has filed.  On December 13,  Mr. Zell and EGI-TRB filed this pending Objection to the Committee's motion.  (Objection [Dkt. No. 7164].)

At the December 15, 2010, hearing, the Committee asked the Court overrule Mr. Zell and EGI-TRB's Objection on the basis that they were purportedly seeking a "do over" of the Court's prior ruling on standing.  (Ex. C, 12/15/10 Hr'g Tr. at 31.)  The Court remarked that "was not something that [it] recall[ed] was discussed at that hearing.  So I don't know if it's really a do over . . ."  (*Id.* at 32.)   In response, Mr. Zell and EGI-TRB replied:

> Your Honor, when this matter came before the Court, it was presented in a context where it was specifically represented to the Court that the purpose of the filing of the complaint was to toll the statute of limitation period.  We wanted to be cooperative with that.  We had offered a tolling agreement even before the complaint was filed and we felt the debtor and committee had properly sought to preserve causes of action and we sought to cooperate with that and did not object and [] expressed that we were not objecting insofar as they sought to commence litigation to preserve these claims.  We did make clear our views which we reiterate today that these claims are unfounded.  The examiner specifically found as to certain of these claims that there was no plausible basis for the claim.  And that's an issue on which we deserve to be heard. . . . we don't think it's necessary to reach those issues right now because the practical purpose of these motions was to preserve the claim for a later determination.

(*Id.* at 37.)

The Court asked the Committee why a tolling agreement would not adequately protect their interests. (*Id.* at 35 ("Well, what about the offer to enter into tolling agreements?").)   The Court then took the matter under advisement.  Thereafter and before Court adjourned for the day, counsel for the Committee and for Mr. Zell and EGI-TRB asked to have the Objection continued, so that they could meet and confer in an effort to resolve the Objection.  (*Id.* at 70-

71.)  Pursuant to that agreement, the Court reserved ruling on the Objection until the next

Omnibus Hearing, now scheduled for January 24, 2011.  (*Id.; see also* Order entered 12/17/10

[Dkt. No. 7223].)

The Committee and Aurelius have used that "meet and confer" interlude not to address

EGI-TRB and Mr. Zell's concerns, but to prepare and file substantial briefing addressing the

merits of the claims and the Examiner's Report.  (Committee Reply Brief ("Comm. Reply Br.")

[Dkt. No. 7542] and Aurelius Joinder of Comm. Reply. Br. ("Joinder") [Dkt. No. 7546].)  As set

forth below, Mr. Zell and EGI-TRB should be afforded a further opportunity to address that

briefing, which mischaracterizes and tells less than half the story.

These claims are not colorable and the Committee cannot sufficiently demonstrate that it

is in the best interest of the Estate to spend millions of dollars litigating the claims that the

Examiner found unlikely to succeed.

## Argument

The Court should hold that Mr. Zell's and EGI-TRB'S Objection is preserved and may be

heard and decided before the claims are prosecuted.

## I.    Standing Jurisdiction In The Adversary Proceeding Was Not Waived Or Irrevocably Determined.

The Court should reject the Committee's apparent position that its standing to prosecute

claims against Mr. Zell and EGI-TRB has been irrevocably determined.

First, whether the Committee may appropriately bring its alleged claims against Mr. Zell

and EGI-TRB is a jurisdictional matter that may be raised at any time and cannot be waived.  *See*

*Pell v. E.I. DuPont de Nemours & Co., Inc.*, 539 F.3d 292, 299 n.3 (3d Cir. 2008); *Johnson v.*

*Geico Cas. Co.*, 673 F. Supp. 2d 244, 255 (D. Del. 2009); *In re Martin*, 64 B.R. 638, 639 (Bankr.

D. Del. 1986).  Federal courts are under an independent obligation to examine their own

jurisdiction, including the doctrine of standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Allen v. Wright*, 468 U.S. 737, 750 (1984).

For those very reasons, a federal bankruptcy court "must" consider a challenge to a creditors' committee's standing "whenever raised, regardless of whether the challenger failed to make an earlier challenge, or whether the court itself sees a standing problem." *In re Together Dev.*, 262 B.R. at 588-89 (citing *United States v. AVX Corp.*, 962 F.2d 108, 116 n.7 (1st. Cir. 1992)); *see also In re Martin*, 64 B.R. at 639 (citing *Nat'l Coal. to Ban Handguns v. Bureau of Alcohol, Tobacco & Firearms*, 715 F.2d 632 (D.C. Cir. 1983)). In *Together Development*, as here, the creditor's committee argued that challenges to its standing to prosecute claims had been waived or precluded in prior proceedings. *Id.* at 588-89. The bankruptcy court, however, held that the defendants "could not have waived their challenge to the Committee's standing" because standing is a jurisdictional matter that cannot be waived. *Id.* at 588-89.

Counsel for Mr. Zell and EGI-TRB referred the Court to *Together Development* at the December 15 hearing, yet the Committee and Aurelius do not even mention the case in their filings and cite no contrary authority. The reason is plain—standing is jurisdictional, may be raised at any stage, and cannot be shielded from review with procedural arguments.

Second, the Court's October 27 order with respect to standing is interlocutory in nature and may be withdrawn or revised at any time, particularly in connection with the adversarial proceeding. A bankruptcy court may reconsider or revise a prior interlocutory order at any time before final judgment. *See In re Piper Aircraft Corp.*, 169 B.R. 766, 771 (Bankr. S.D. Fla.1994). As one court explained, "it is within the Court's discretion whether to vacate the order of May 14, 1980 granting the Committee standing to bring this [adversary] suit" because the court has "plenary power over its interlocutory orders and may modify or vacate them when it is consonant

with justice to do so." *In re Monsour Med. Ctr.*, 5 B.R. 715, 717 (Bankr. W.D. Pa. 1980). "In exercising its discretion the Court is not bound by the restrictions that apply to final orders pursuant to Rule 60(b) of the Federal Rules of Civil Procedure." *Id.*; *see also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities") (applicable via Fed. R. Bankr. P. 7054).

Third, the Court has not had the benefit of an adversarial presentation of the standing issue. Counsel's mere statement of non-objection at the October 22 hearing cannot substitute for evidence and argument on the key questions of whether the Committee's claims are colorable or in the best interests of the Estate. Whether treated as a matter of collateral estoppel, "law of the case," or otherwise, the law is clear that *actual litigation* is required before a determination is given preclusive effect. *E.g.*, *Wilson v. Reliance Ins. Co.*, 138 Fed. Appx. 457, 459 (3d Cir. 2005) (issue preclusion requires "the issues [be] actually litigated"); *In re Broadstripe LLC,* 435 B.R. 245, 255 (Bankr. D. Del. 2010).

Fourth, the Committee itself has reopened the matters addressed by the Court's October 27 order by filing its motion seeking "clarification" of that Order. If the Committee is allowed to revisit the scope and meaning of its prior order, (including by contending that it includes an irrevocable decision on colorability and benefit to the Estate), Mr. Zell and EGI-TRB should be permitted the opportunity to demonstrate otherwise.

## II.    The Committee Has Not Shown That The Alleged Claims Are Colorable Or In The Best Interests Of The Estate.

At the heart of whether these claims are colorable or in the best interest of the Estate is the "likelihood of success" of those claims. *See In re Am.'s Hobby Ctr., Inc.*, 223 B.R. 275, 285

(Bankr. S.D.N.Y. 1998).  In *America's Hobby*, the court held that the creditor's committee did not have derivative standing to prosecute claims against defendants until the court determined their likelihood of success.  *Id.* at 282 (holding that "[t]he mandated cost/benefit analysis involves the weighing of the **probability of success** and financial recovery" and "[a]lthough courts will not conduct a mini-trial on these issues, a sufficient **likelihood of success must be found** to 'justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce.'") (citing *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985)).  The Examiner's Report, which reflects an independent, thorough analysis of these claims, establishes that unlike other putative defendants the Committee names, Mr. Zell and EGI-TRB are the target of claims that the Examiner found unlikely to succeed, including some claims the Examiner found had no "plausible basis" or were "highly unlikely" to succeed.

### A.    The Claims Are Not Colorable Or Beneficial To The Estate.

Because the Committee has not met its burden of establishing by competent evidence that the Examiner was wrong in concluding that alleged claims in the LBO Amended Complaint against Mr. Zell and EGI-TRB are unlikely to succeed, the Court, acting as a gatekeeper, should not put its imprimatur of approval on lottery-ticket litigation.  *See, e.g., In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004) (finding "[i]t is the creditor's burden in the first instance to demonstrate that it has satisfied [the] prerequisites for derivative standing"); *see also In re Copperfield Invs., LLC*, 421 B.R. 604, 612 (E.D.N.Y. 2010) (denying standing because claim was not colorable); *In re Am.'s Hobby*, 223 B.R. at 285 (same).[3]

---

[3] Bankruptcy courts routinely deny, limit, or revoke a committee's motion for standing where the committee has not and cannot demonstrate the claims are colorable and would sufficiently benefit the estate.  *See, e.g., In re Commodore Int'l, Ltd.*, 253 B.R. 336, 339 (S.D.N.Y. 2000) (denying standing); *see also In re Akron Thermal, Ltd. P'ship*, 2010 WL 2991516, at *1-2 (N.D. Ohio July 27, 2010) (same); *In re Berryman Prods.*, 183 B.R. 463, 468-69 (Bankr. N.D. Tex. 1995) (same).

After interviewing key witnesses under oath and reviewing the evidence, the Examiner, in his comprehensive 1200-page report, rejected all nine of the Committee's claims against EGI-TRB and Mr. Zell.[4]  As the Examiner found:

- There is **no "plausible basis**  . . .  to justify equitable subordination of the EGI-TRB Notes" or equitable disallowance of EGI-TRB's claims. (Examiner's Report, Vol. II. at 338-39.)  That finding should preclude the Committee's claims at **Count Twenty-Two** (for Equitable Subordination) and **Count Seventeen** (Recharacterization of EGI-TRB's Exchangeable Note).

- It is **"highly unlikely"** a court would "conclude that any claims for aiding and abetting breach of fiduciary duty could be sustained based on the conduct of any potential defendants [including Mr. Zell and EGI-TRB] at Step One." (*Id*. at 395.)  In addition, it is **"reasonably unlikely"** that any an aiding and abetting claim could succeed as to Step Two because there is no "sufficient basis to conclude that the Zell Group aided and abetted a breach of any fiduciary duties in connection with the Leveraged ESOP Transactions." (*Id*. at 395, 397.)  Those findings should preclude **Count Seven** (Aiding and Abetting).

- Even if satisfaction of the Exchangeable EGI-TRB Note at Step Two could be a preferential transfer, it is **"reasonably likely"** that a court would find that the transaction is **subject to an ordinary course of business defense**. (*Id*. at 311).  That finding should preclude **Count Nineteen** (Preference claim).

- It is **"reasonably unlikely"** that any unjust enrichment claims would be meritorious, including any such claim against Mr. Zell or EGI-TRB.  (*Id*. at 404, 406.)  That finding should preclude **Count Twelve** (Unjust Enrichment).

- It is **"reasonably unlikely"** that a court would find that the Debtors incurred their obligations under the Step One Transactions with the actual intent to delay, hinder, or defraud their creditors.  (*Id*. at 22.)  That finding should preclude **Counts Thirteen** and **Eighteen** (Intentional Fraudulent Transfer) to the extent that those claims are based on conduct related to **Step One**.

- A "court is **reasonably unlikely** to find that a claim for illegal corporate distributions pursuant to [the Delaware code] could be sustained against Tribune's directors based on the Step One Transactions, and is **somewhat unlikely** to find that such a claim could be sustained against Tribune's directors based on the Step Two Transactions." (*Id*. at 411.)  That finding coupled with the fact that Mr. Zell abstained from participating in any Board action on Step Two should preclude **Count Eleven** (Claim for Violations of DGCL Sections 160 and/or 173).

---

[4] The Examiner did not address the preference claim that the Committee asserts against EGI based on alleged preference payments Tribune made to EGI in the 90 days prior to Tribune's bankruptcy petition (Count Twenty).

- It is **"somewhat unlikely"** that a court would find that claims for breach of fiduciary duty could be sustained against the Tribune directors at Step Two.  (*Id*. at 373.)  This finding was directed at all Tribune directors who participated in approving Step Two.  Mr. Zell abstained from and had no role in approving the LBO on behalf of Tribune.  At a minimum, however, that finding coupled with Mr. Zell's abstention should preclude **Count Two** (Breach of Fiduciary Duty).

- As a overriding matter, although the Examiner concluded that there is evidence that certain third parties may not have acted in good faith in connection with the Step Two Transactions, the Report contained no suggestion and identified no evidence that Mr. Zell and EGI-TRB acted with anything other than good faith.  (*Id*. at 74-75, 264, 281, 283, 338, Vol. I at 300.)[5]    Accordingly, those findings should preclude any claims under **Counts Thirteen** and **Eighteen** (Intentional Fraudulent Transfer) to the extent they are based on **Step Two** and directed at Mr. Zell and EGI-TRB.

As those findings demonstrate, the Examiner's Report directly finds the claims asserted by the Committee are unlikely to succeed.  Indeed, the Court instructed the plan proponents to describe accurately to creditors the Examiner's findings regarding claims against EGI-TRB and Mr. Zell, and the Joint Disclosure Statement effectively stipulated that with respect to EGI-TRB LLC and Sam Zell, the Examiner determined that the alleged claims are "unlikely to succeed." (*See* Joint Discl. Statement at 69 [Dkt. No. 7134].)  In their replies, the Committee and Aurelius either ignore the Examiner's actual findings, mischaracterize his findings to suit their purposes, or simply assert that, after the Estate invested over $12 million in the Examiner's investigation, the Examiner was wrong because "reasonable people" could disagree.  The Committee's and Aurelius' belated arguments cannot change the Examiner's clear findings, or the fundamental defects in these claims.

---

[5] The Committee criticizes the fact that EGI-TRB cited portions of the report related to the motivations of the Lenders at Step One, but each of those citations reflects that the Examiner found that in agreeing to Step One, the Lenders were not doing so to curry favor with Mr. Zell or based on any misconduct by Mr. Zell and EGI.  (*See, e.g.*, Examiner's Report, Vol. II at 264, 281, 283, and Vol. I at 300.)

**B.    The Committee and Aurelius' Belated "Reply" Brief Discussion of the Merits Of These Claims Are Incomplete and Misleading.**

In lieu of a full and fair adversarial presentation of whether the claims that the Examiner found unlikely to succeed are colorable and sufficiently beneficial to the Estate, Aurelius and the Committee take pot shots at certain claims and mischaracterizes portions of the Examiner's Report.  As but a few examples:

- The Committee and Aurelius characterize Mr. Zell as the "architect" of a transaction in which fraud was committed (Comm. Reply Br. at 5; Joinder at 2), but ignore that Mr. Zell was across the table from those whom the Examiner concluded may have committed fraud.[6]  If there was fraud, rather than being perpetrators, Mr. Zell and EGI-TRB would be victims.

- The Committee's only basis to claim Mr. Zell and EGI-TRB aided and abetted a breach of fiduciary duty by Tribune's officers and directors is to assert EGI-TRB "dangl[ed] significant financial incentives" to approve the LBO deal.  (*E.g.*, Committee Compl. ¶¶127-29; Comm. Reply Br. at 12.)  But, as the Examiner found, EGI-TRB actually negotiated to *reduce* the benefits that management would receive in the LBO compared to what was otherwise available under Tribune's then-existing change-of-control plans.  (*See, e.g.*, Examiner's Report, Vol. I at 398-399 (citing sworn testimony and interviews of Thomas Whayne, Dennis FitzSimons, Nils Larsen, Chandler Bigelow, and Sam Zell).)

- Both the Committee and Aurelius quote the Examiner's statement that "with the benefit of more time, [the Examiner] would have further investigated the interactions between personnel at the Zell Group and Tribune's senior financial management in relation to the October 2007 projections and the senior financial management's interactions with the Zell Group and VRC."  (*Id.*, Vol. II at 397.)  But they simply ignore the Examiner's admonition that he was "not, by this caveat, casting a shadow of suspicion over the Zell Group personnel" and his conclusion that it was **"highly unlikely"** that the Zell Group aided and abetted at Step One and reasonably unlikely at Step Two.  (*Id.* at 395, 397.)  Additionally, the Committee also ignores that its aiding and abetting claim is not based on any alleged conduct by EGI-TRB or Mr. Zell related to financial projections in October 2007.  (*E.g.*, Committee Compl. ¶¶118-131, 282; Comm. Reply Br. at 12; Joinder at 2.)

- The Committee and Aurelius argue that the Committee's preference claim has merit because the Examiner found it "unclear" whether a court would view satisfaction of the Exchangeable Note a preference.  (*See* Comm. Reply Br. at 16; Joinder at 3.)  But they

---

[6] Indeed, the Examiner found the fact that Mr. Zell "made an investment and wanted to proceed with the transaction . . . is a factor mitigating *against* a finding that the Tribune Entities perpetrated an intentional fraudulent transfer at Step Two."  (Examiner's Report, Vol. II at 74-75 (emphasis added).)  The Committee and Aurelius also ignore, as the Examiner recognized, EGI-TRB "lost a lot of money."  (*Id.* at 338.)

ignore that the Examiner did not find it necessary to resolve that question because he found it **reasonably likely any preference claim would be defeated by an ordinary course defense**. (*See, e.g.*, Examiner's Report, Vol. II at 311-14.)

- The Committee contends that there is a basis to equitably recharacterize the Exchangeable Note EGI-TRB redeemed at Step Two into stock. (Comm. Reply Br. at 15-16.) But the Examiner found there was **no plausible basis** to equitably subordinate or disallow EGI-TRB's Notes. (Examiner's Report, Vol. II at 338-39.) And the Committee and Aurelius also ignore that the parties fully intended to enter into a transaction in which the EGI-TRB Notes were not equity because it would have jeopardized all the substantial benefits of a Subchapter S-Corp election if the Notes could be deemed equity.

The Committee also asserts that the "marginal expense" of pursuing claims, which the Examiner found unlikely to succeed, is limited because the claims relate to the LBO transaction, which it will otherwise litigate. (Comm. Reply Br. at 4.) But the purchase of the EGI-TRB Notes, stock and warrants, to which EGI-TRB contractually committed in April 2007 (before Mr. Zell was a member of the Tribune Board), and which caused the loss of EGI-TRB's $315 million investment, are unique transactions, unrelated to whether Tribune's officers or directors committed an intentional fraudulent transfer in December 2007. And Mr. Zell's conduct in negotiating EGI-TRB's side of the transaction through April 2007, at which time he and EGI-TRB were contractually committed to proceed with the LBO regardless of any change in Tribune's performance, also are unrelated to whether there was fraud when Tribune decided to proceed with Step Two in December 2007.

In touting the "potential benefits" of recovery against EGI-TRB, the Committee (at 13) and Aurelius (at 1) also ignore that EGI-TRB has no assets other than the Notes. Under all pending Plans of Reorganization, EGI-TRB stands to receive nothing from the Estate. Thus, even if the claims were successful, which the Examiner found is unlikely, any material judgment would not be collectible. *See In re Am.'s Hobby,* 223 B.R. at 285 (explaining that courts should consider probability of net recovery).

13

The Committee should not have derivative standing to spend millions of dollars of Estate funds prosecuting claims that the Examiner, after thorough investigation, found unlikely to succeed.  It should confirm that it has not adjudicated the issue of whether these claims are colorable and would benefit the Estate.

*    *    *

EGI-TRB and Mr. Zell respectfully request that the Court confirm that nothing in its prior orders prevents EGI-TRB and Mr. Zell from challenging the committee's standing and to direct the parties to propose a process for resolution of that issue prior to permitting the lifting of the stay it imposed upon prosecution of these claims.

Because Mr. Zell, who serves as Chairman of the Debtor, and EGI-TRB necessarily incur reputational injury from the pendency of these claims and because nothing in the Court's prior orders establishes that these claims have merit, this Court should also direct the Committee to execute a tolling agreement with Mr. Zell and EGI-TRB (and the other Zell Defendants) to protect fully against any limitation defense with respect to these claims and direct that the claims be dismissed without prejudice upon execution of the same.  Allowing the claims to remain pending creates the false impression that this Court found cause to disagree with the Examiner's determination that these claims are unlikely to succeed.  Moreover, the Estate and Committee will incur no injury from the execution of a tolling agreement and a dismissal without prejudice.

### Conclusion

WHEREFORE, for those reasons, Mr. Zell and EGI-TRB respectfully request that this Court (1) confirm that nothing in its prior orders forecloses EGI-TRB and Mr. Zell from challenging the Committee's standing to prosecute claims against Mr. Zell and EGI-TRB and (2) set a schedule for the resolution of that issue.  Pending resolution of the standing issue, Mr. Zell

and EGI-TRB request that this Court authorize and/or direct the Committee to execute an appropriate tolling agreement and dismiss these claims without prejudice.

Respectfully submitted,

By:    /s/ *Alan M. Root*
David W. Carickhoff (DE No. 3715)
Alan M. Root (DE No. 5427)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

and

David J. Bradford (admitted *pro hac vice*)
Catherine L. Steege (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 840-7375

Co-Counsel for Samuel Zell and
EGI-TRB, LLC

# EXHIBIT A

From: Vail, Andrew W [mailto:AVail@jenner.com]
Sent: Friday, October 22, 2010 9:58 AM
To: Goldfarb, Andrew; Bush, Graeme W.; Sottile, James
Cc: Bradford, David J; Sondgeroth, Douglas; Vail, Andrew W

Subject: Your Request

Dear Counsel,

We have received your request of yesterday afternoon asking that we withdraw certain confidentiality designations before 10 a.m. CST today. That request in inappropriate, as set forth below, and should be rescinded.

The request is inappropriate because it does not afford us any opportunity to properly consider, including review any relevant materials, or discuss it with our clients. Any confidentiality designation has been in place for months and your request fails to offer any explanation or justification for asking that it be withdrawn without affording us the opportunity to properly consider the request and the related draft allegations against our clients. We appreciate you providing us that accommodation and professional courtesy. If that is not acceptable, please contact me so that we can meet and confer by telephone.

The request also is inappropriate because paragraph 94 of the draft complaint, among others, misstates facts and makes allegations contrary to the findings and conclusions of the Court appointed Examiner. The draft complaint's allegations against our clients are unfounded and should be withdrawn.

We look forward to promptly working with you to resolve this issue.

Best Regards,

Andrew W Vail

_____

Andrew W. Vail
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel (312) 840-8688
Fax (312) 840-8788
AVail@jenner.com
www.jenner.com<http://www.jenner.com/>

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** "Goldfarb, Andrew" <agoldfarb@zuckerman.com>
**Date:** October 25, 2010 3:43:53 PM CDT
**To:** "Vail, Andrew W" <AVail@jenner.com>
**Cc:** "Bradford, David J" <dbradford@jenner.com>
**Subject: Re: Your Request**

Andrew - Thanks for the quick response on the confi issue. I will get back to you as soon as possible on the larger issue you raise.

Andrew

Sent from my iPhone

On Oct 25, 2010, at 4:20 PM, "Vail, Andrew W" <AVail@jenner.com> wrote:

Andrew,

Thank you for your note.

We are willing to agree to your request to withdraw the confidentiality designation relating to the allegations in Paragraph 94 of the draft complaint, specifically the document you identify below.  Our concern and objection that the draft complaint's claims directed at our clients are unfounded and contrary to the findings of Examiner Klee, however, remain.  We would like to further discuss those concerns with you and would be willing to execute a tolling agreement to preserve the draft complaint's claims against our clients.  Because those alleged claims lack the evidentiary support required by the Federal Rules, and clearly are not colorable, we strongly believe that this approach is reasonable and will best protect the interests of both of our clients.

We look forward to hearing from you.

Best regards,

Andrew

From: Goldfarb, Andrew [agoldfarb@zuckerman.com]
Sent: Monday, October 25, 2010 3:04 PM
To: Vail, Andrew W
Subject: RE: Your Request

Andrew -- Sorry I was not able to get back to you on Friday. The single document at issue about which I wrote on Thursday has Bates number EGI-LAW 00015095. As my note may have indicated, the Committee would like to be in a position to file an unredacted complaint. Since EGI designated much, if not all, of its email production as "confidential," my email was a request that EGI reconsider its designation of that document.

Thanks for the prompt response. Of course, I'm happy to discuss further if you'd like.

Regards,
Andrew

-----Original Message-----
From: Vail, Andrew W [mailto:AVail@jenner.com]
Sent: Friday, October 22, 2010 9:58 AM
To: Goldfarb, Andrew; Bush, Graeme W.; Sottile, James
Cc: Bradford, David J; Sondgeroth, Douglas; Vail, Andrew W
Subject: Your Request

Dear Counsel,

We have received your request of yesterday afternoon asking that we withdraw certain confidentiality designations before 10 a.m. CST today. That request in inappropriate, as set forth below, and should be rescinded.

The request is inappropriate because it does not afford us any opportunity to properly consider, including review any relevant materials, or discuss it with our clients. Any confidentiality designation has been in place for months and your request fails to offer any explanation or justification for asking that it be withdrawn without affording us the opportunity to properly consider the request and the related draft allegations against our clients. We appreciate you providing us that accommodation and professional courtesy. If that is not acceptable, please contact me so that we can meet and confer by telephone.

The request also is inappropriate because paragraph 94 of the draft complaint, among others, misstates facts and makes allegations contrary to the findings and conclusions of the Court appointed Examiner.  The draft complaint's allegations against our clients are unfounded and should be withdrawn.

We look forward to promptly working with you to resolve this issue.

Best Regards,

Andrew W Vail

_____

Andrew W. Vail

Jenner & Block LLP

353 N. Clark Street

Chicago, IL 60654-3456

Tel (312) 840-8688

Fax (312) 840-8788

AVail@jenner.com

www.jenner.com<http://www.jenner.com/>

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

_____

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
                              )
IN RE:                        ) Chapter 11
                              )
TRIBUNE COMPANY, et al.,      ) Case No. 08-13141 (KJC)
                              )
                              ) Courtroom 5
                              ) 824 Market Street
              Debtors.        ) Wilmington, Delaware
```

October 22, 2010
2:05 p.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                BY: JAMES BENDERNAGEL, JR., ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (213) 896-6022

                                Cole, Schotz, Meisel, Forman &
                                Leonard, PA
                                BY:  NORMAN PERNICK, ESQ.
                                1000 North West Street
                                Suite 1200
                                Wilmington, DE 19801
                                (302) 652-3131

ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording; transcript
produced by transcription service

1          Are there any other objections that haven't been

2    articulated?  Oh --

3          MR. VAIL:  Yes, this is Andrew Vail.  May I address

4    the Court, Your Honor, by telephone?

5          THE COURT:  Go ahead.

6          MR. VAIL:  Good afternoon, Your Honor.  I represent

7    EGI-TRB, EGI and Mr. Zell, and I don't object to the UCC's

8    motion for standing.  However, to the extent that the UCC seeks

9    to immediately commence litigation and to take discovery, I do

10   object.  It was my understanding that there would be no

11   litigation during the mediation and here, with pending

12   mediation, there's no valid purpose served by the UCC running

13   to file its complaints.

14         The complaints allegations against my client are

15   unfounded and contrary to the conclusions and findings of the

16   examiner.  I'd ask that they do not go forward with filing the

17   complaints until the mediation has been concluded.  That is my

18   objection, Your Honor.

19         THE COURT:  All right.  Thank you.  Anyone else?

20         MR. GOLDEN:  Your Honor, until -- it was a very

21   difficult session, in the sense that we didn't have enough

22   drafts, they weren't blacklined, so until Mr. Bush tells --

23   answers the Court's question about what was agreed to, I won't

24   know in fact whether there are any other objections.

25         THE COURT:  All right.  Let's do that now then.

1    and blame us, especially if there's evidence that we knew

2    about it and didn't say anything.  And as a consequence -- I

3    don't think anybody is intending this, but I do think that the

4    debtor has to have a role in here, because it does have an

5    obligation to ensure that these claims are preserved.  And

6    that's what we're going to try to do.  And we'll work with the

7    committee any way we can to do that.

8              THE COURT:  Well, let me ask the next question of

9    the committee.  When do you anticipate that a complaint will

10   be filed?

11             MR. BUSH:  I was hoping you would ask that, Your

12   Honor.

13             THE COURT:  Should I authorize the standing?

14             MR. BUSH:  I was going to say that some of these

15   concerns might be obviated by the -- a little information

16   about our expected timing.  We are going to do our level best

17   to file the complaints by the end of next week.  There are

18   these various things that I described before that we're trying

19   to do to get them in final shape to file.  But because of the

20   discovery that I also mentioned previously, we really need to

21   get them on file.

22             So we will -- we would plan to continue the

23   dialogue we've been having with all the parties who've

24   expressed concerns about whether we are doing all the right

25   things in the complaint.  And if possible, we would even share

1   a final or close to final draft before we file it.  And if all

2   else fails, and we file the complaint and they still think

3   that there are things wrong with it, they're going to have

4   four weeks to continue to try and persuade us to do something

5   else or something we -- they haven't even talked to us about

6   before, and ultimately, to come to Your Honor if they think

7   that we've done something so deficient in the complaint that

8   that is warranted.  The idea is not to wait until December 7th

9   to file a complaint, so there would be no time for anybody to

10  do anything.

11          THE COURT:  All right.

12          Does that satisfy your concern?

13          MR. BANDERNAGEL:  Well, I'm not sure, because I

14  have a second issue in this area.  And I think it's important

15  to raise this issue with Your Honor in this regard.  I'm not

16  sure the way this paragraph is being structured is completely

17  consistent with what the case law says as to the role of the

18  Court as the gatekeeper in a derivative standing case, in the

19  sense that it's pretty clear from the case law that -- and I'm

20  not suggesting that this is what people are proposing, but you

21  -- that you couldn't give them cart blanche to just file a

22  complaint on any subject matter at all.

23          And the real question is -- and this may be a

24  resolution of what Mr. Stark is talking about -- to the extent

25  they're in a position after consulting with the various

1  With respect to that issue, looking at the carryover paragraph

2  on page 3, I'm going to end that paragraph in what is now the

3  next to the last line, after the words "are preserved".  I'm

4  not interested in creating a situation -- I used to use the

5  word mischief, but Mr. Stark doesn't like that -- in which

6  we're arguing about the quality of somebody's judgment.

7        With respect to the scope, I think I'd like to

8  address that two ways.  One, I'm authorizing the committee to

9  pursue claims which fall within the parameters of the

10  examiner's reports and the complaints and draft complaints

11  submitted with the motion and the supplement, and no more.  To

12  the extent -- you know, and then I guess it would be -- have

13  to be in fairly short order, somebody wishes more authority or

14  some other party wishes different authority, they will have to

15  come to the Court to ask for further relief.

16        Now in order to aid in speeding the process along,

17  let me ask the committee.  I would like to set a hard deadline

18  for the filing of the complaint.  Now you've indicated you can

19  have it in by the end of next week.  I'd be willing to give

20  you a couple days more if you think you need it.  But I'd like

21  that to be done, so people can make their assessments in time

22  to decide what, if anything, should be done next.

23        MR. BUSH:  We're shooting for Friday.  But if you'd

24  give us until Monday, we'd be happy.

25        THE COURT:  Okay.  You'll have until Monday, which

1    is November -- October 25th.

2              MR. GOLDEN:  No.

3              THE COURT:  I'm sorry.  October.

4              MR. GOLDEN:  Not that Monday.

5              THE COURT:  November 1st.  I'm glad it's Friday.

6    That's all I can say.  November 1st.

7              And I -- look, hopefully, life will allow that, to

8    the extent there are further disputes about what this order

9    means once it's entered, I'll be around to interpret it for

10   you, at least as it has to do with the commencement of

11   litigation.  So I'm not inclined to alter further this -- the

12   proposals about paragraphs concerning settlement or the

13   additional paragraph that's been added at the end.

14             With respect to holding up on the filing of the

15   complaint until mediation is completed, let me put it this

16   way.  I've known Judge Gross long enough that no matter what

17   the outcome of any session, unless there's a complete

18   resolution, he never thinks it's completed.  And you may have

19   begun to discover that already.  So I don't think that's a

20   useful trigger.  So to the extent that objection is

21   outstanding, I will overrule it.

22             Is there an issue that I've failed to address?  Oh.

23   Is there an issue I've failed to address?

24             MR. GOLDEN:  Your Honor, I think there's a concern

25   among the committee and the other pre-LBO holders that the

# EXHIBIT C

```
                 IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE

IN RE:                        )    Chapter 11
                              )
                              )
TRIBUNE COMPANY, et al.,      )    Case No. 08-13141 (KJC)
                              )
                              )    Courtroom 5
                              )    824 Market Street
            Debtors.          )    Wilmington, Delaware
                              )
                              )    December 15, 2010
                              )    10:04 a.m.


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE KEVIN J. CAREY
                 UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For Debtor:              Sidley Austin, LLP
                         BY:  JAMES BENDERNAGEL, ESQ.
                         BY:  KEN KANSA, ESQ.
                         One South Dearborn
                         Chicago, IL  60603
                         (213) 896-6022

                         Cole, Schotz, Meisel, Forman &
                         Leonard, PA
                         BY:  NORMAN PERNICK, ESQ.
                         1000 North West Street
                         Suite 1200
                         Wilmington, DE  19801
                         (302) 652-3131

ECRO:                    AL LUGANO

Transcription Service:   DIAZ DATA SERVICES
                         331 Schuylkill Street
                         Harrisburg, Pennsylvania 17110
                         (717) 233-6664
                         www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1    the Court directed the committee to consult with various

2    interested parties on those issues.  The committee did so

3    both prior to filing its original complaints on November 1

4    and prior to filing the amended complaints about a month

5    later.  And the result of those consultations is that the

6    committee added some additional claims to the complaints.

7          The motion to confirm standing is simply intended

8    to ask the Court to confirm the committees' view that every

9    claim that was added as a result of consulting with other

10   parties, falls within the parameters of the Court's October

11   27, 2010 order.

12

13         The Court on our motion filed last week, agreed

14   to expedite the hearing of the matter so that it could be

15   heard today and to shorten notice.  And permitted parties to

16   present objections, if any, either before this hearing or at

17   the hearing today.

18         The only objection we are aware of, Your Honor,

19   is that filed last night on behalf of Mr. Zell and EGI.

20   Although, I suppose a party might rise to announce some

21   other objection, we're not aware of anything else.

22         Let me speak briefly to the nature of the

23   objection raised by Mr. Zell and EGI.  The objection does

24   not contest that the committee had standing to commence all

25   of the claims asserted in the amended complaints.  So there

1  is no issue here with respect to limitations or other time

2  related bars.  Instead, the tenor of the objection is that

3  the committee does not, should not have standing to actually

4  prosecute those claims without some further opportunity for

5  Mr. Zell and EGI to argue that the claims are not colorable,

6  that the claims, prosecution of the claims is not in the

7  best interests of the estate.

8  So that's the issue that's presented by the

9  objection.  Does the committee, should the committee have

10  standing to prosecute these claims or should Mr. Zell and

11  EGI be permitted to argue later that the committee shouldn't

12  have, doesn't have standing to prosecute the claims because

13  they're not colorable or aren't in the best interest of the

14  estate.

15  

16  Your Honor, I think that what we have here is

17  what my teenage son calls and effort for a do over.  This

18  issue has been resolved by the Court in its October 27, 2010

19  standing order.

20  THE COURT:  Then why must I address it again?

21  MR. SETTILE:  Your Honor, I don't believe that

22  you do need to address the objection that's been raised.

23  The objection does not suggest that any of the claims fall

24  outside of the scope of the Court's order at least as I

25  understand it.  And Mr. Bradford, counsel for Zell and EGI

1    will correct me if I'm wrong.  I don't think the argument is

2    that the Court's order doesn't encompass the claim.

3              THE COURT:  I know, I tend to agree with that.

4              MR. SETTLE:  And that was the tenor of the

5    motion to confirm standing simply to confirm that we feel

6    within the four corners of the Court's order granting

7    standing.  Instead, what the argument is is we get to argue

8    later on that you shouldn't be allowed to prosecute.

9              THE COURT:  Well, in fairness to the objector

10   here, there were claims which were specifically discussed at

11   the hearing.  And those which the parties thought or knew

12   were out there, but weren't specifically the subject of

13   discussion at the hearing and that's why the language that

14   we ended up with ended up in the order.  This was not

15   specifically something that I recall was discussed at that

16   hearing.  So I don't know if it's really a do over, but I

17   guess the question is if -- well, let's deal with a couple

18   different things.

19             MR. SETTLE:  Certainly, Your Honor.

20             THE COURT:  If the issue's really been decided,

21   why are you here?  And then secondly, does it really need to

22   be decided today?

23             MR. SETTLE:  Your Honor, I think the issue has

24   been decided.  I think the Court needs to address it to

1    eliminate any doubt that it's been decided and doubt has

2    been raised now by Mr. Zell and EGI in the form of their

3    opposition as to whether standing was properly granted to

4    the committee to prosecute as opposed to just file lawsuits.

5              The reason I think it is a do over, Your Honor,

6    is that there was a specific reference at the hearing on

7    October 22 to these claims.  In fact, counsel for Mr. Zell

8    and EGI spoke to the issue.  And what they said, Your Honor,

9    on Page 43 of the transcript, Mr. Vale of Jenner and Block

10   rose -- I should say, spoke telephonically, rose

11   metaphorically and said the following.  I represent EGI,

12   TRB, EGI, and Mr. Zell, and I don't object to the UCC's

13   motion for standing.  It is, Your Honor, not surprising that

14   there was no extended discussion of those claims given that

15   counsel for EGI and Zell advised the Court and the parties

16   that they did not object to the committees' motion for

17   standing.

18              Now in fairness, Mr. Vale went on to make another

19   couple of comments that I should bring to the Court's

20   attention.  He said to the extent that the UCC seeks to

21   immediately commence litigation and to take discovery, I do

22   object.  It was my understanding that there would be no

23   litigation during the mediation.  And here with pending

24   mediation, there's no valid purpose served by the UCC

25

1  running to file its complaints.  As to that issue, the Court

2  specifically instructed in its order that the complaints

3  should be filed notwithstanding Judge Gross' view that the

4  mediation continued and notwithstanding the provision of the

5  mediation order.

6      So to the extent there was an objection there

7  about filing, this Court specifically overruled it.  The

8  last comment Mr. Vale made was that the complaint's

9  allegations against my client are unfounded and contrary to

10  the conclusions and findings of the examiner.  I'd ask that

11  they not go forward with filing the complaints until the

12  mediation has been concluded.

13

14      Again, Your Honor, I think what was happening is

15  that EGI and Zell were advising the Court and the parties

16  they didn't object to standing.  Their only objection is

17  that while the mediation is going on, the committee

18  shouldn't file.  This Court specifically overruled that

19  objection as reflected in its order and this matter has been

20  resolved.

21      Now there are opportunities in litigation to seek

22  a do over and they are called things like motions to

23  reconsider, motions to vacate, maybe a motion to dismiss the

24  underlying complaint as and when it's prosecuted and none of

25  those have been presented to the Court by Zell and EGI.  We

1  don't believe that there are any grounds for any of those,

2  but if there are, there are appropriate opportunities to

3  seek such a do over.  It is not on this motion which simply

4  seeks to confirm that this Court after being advised by

5  counsel for Zell and EGI that there was no objection to

6  standing for the committee, correctly granted standing to

7  the committee to commence and prosecute the claims.

8          THE COURT:  So what would be the effect of a

9  denial of your motion?

10         MR. SETTILE:  A denial of the motion, Your Honor,

11 I think would call into question depending on how the Court

12 ruled, whether or not claims asserted against Zell and EGI

13 were ones as to which the committee was granted standing to

14 prosecute the claims.  Counsel for Zell and EGI have agreed

15 that the committee had standing to commence the actions and,

16 therefore, toll any limitations rather time related

17 defenses.  So I think that would be the effect, Your Honor.

18         THE COURT:  Well, what about the offer to enter

19 into tolling agreements?

20         MR. SETTILE:  Your Honor, there was an offer that

21 was expressed in the opposition and that has been the

22 subject of discussion between committee counsel and counsel

23 for Mr. Zell and EGI to enter into an tolling agreement.

24 And, Your Honor, that would address the limitations issues,

1  but the limitations issues, I think are already muted out by

2  virtue of the opposition as its been filed and because I

3  think it's clear that the Court did grant standing to both

4  commence and prosecute the claims.

5          Our concern, Your Honor, is that entering into

6  tolling agreements with parties that as to whom complaints

7  have already been filed, simply imposes another barrier

8  between the claims and their prosecution that whoever brings

9  these claims and prosecutes them would have to go through.

10 Instead of simply proceeding on the existing complaints if

11 tolling agreements were entered into with Mr. Zell and EGI

12 and perhaps other parties who would presumably seek the same

13 relief, then instead of going forward on existing

14 complaints, you'd have to be filing new complaints.  And you

15 might very well face arguments that for whatever reason,

16 tolling agreements aren't effective.  Now we would attempt

17 to draft tolling agreements that foreclosed any such

18 arguments.  I think it's likely we would be able to do that,

19 but you might well open up additional arguments based on

20 time and limitations that aren't available to anyone at

21 present.

22          THE COURT:  Thank you.

23          MR. SETTLE:  Thank you, Your Honor.

24

25

1    MR. BRADFORD:  Thank you, Your Honor.  David

2 Bradford on behalf of EGI, TRB, and Mr. Zell.

3    Your Honor, when this matter came before the

4 Court, it was presented in a context where it was

5 specifically represented to the Court that the purpose of

6 filing the complaint was to toll the limitation period.  We

7 wanted to be cooperative with that.  We had offered a

8 tolling agreement even before the complaint was filed and we

9 felt the debtor and committee had properly sought to

10 preserve causes of action and we sought to cooperate with

11 that and did not object and were expressed that we were not

12 objecting insofar as they south to commence litigation to

13 preserve these claims.

14

15    We did make clear our views which we reiterate

16 today that these claims are unfounded.  The examiner

17 specifically found as to certain of these claims that there

18 was no plausible basis for the claim.  And that's an issue

19 on which we deserve to be heard.

20    With respect to Your Honor's question as to when,

21 we don't think it's necessary to reach those issues right

22 now because the practical purpose of these motions was to

23 preserve the claim for a later determination.  We've tried

24 to be careful in doing that and I am back today to

25 essentially assure the record reflects our continuing

1          MR. GOLDEN:  Thank you.

2          THE COURT:  Well, you never really left, I know.

3                    (Laughter)

4          THE COURT:  Mr. LeMay?

5          MR. LEMAY:  Your Honor, David LeMay for the

6     committee.  Would a tiny bit earlier be convenient for the

7     Court?  There's a creditors' committee meeting tomorrow at

8     11:30 and I think I would be the one handling both of those.

9     So 10:45 that extra 15 minutes would actually be enormously

10    helpful for me.  But if the Court obviously needs to do it

11    at 11:00, we'll make due.

12

13         THE COURT:  10:45 is okay with me.  Is it okay

14    with others?

15         MR. KANSA:  Yes, Your Honor.

16         THE COURT:  All right.  10:45 tomorrow morning

17    conference telephone hearing only.  All right.  Is there

18    anything left for today?

19         MR. KANSA:  I believe that concludes everything

20    on our agenda, Your Honor.

21         THE COURT:  Oh, yes, there is.

22                   (Laughter)

23         MR. SOTTILE:  There is one final matter, Your

24    Honor.  The Court heard argument earlier on the motion to

25    confirm standing.  And stimulated as counsel often are by

1  the Court's reactions to arguments, we've had some further

2  discussions about the issues and would like to make a

3  proposal to the Court about how we might resolve the

4  outstanding issues.

5          THE COURT:  All right.

6          MR. SOTTILE:  And it is as follows, Your Honor.

7  Since the only --

8          THE COURT:  Is this a joint proposal?

9          MR. SOTTILE:  It is a joint proposal, Your Honor.

10         THE COURT:  Okay.

11         MR. SOTTILE:  Since the only objection to the

12 motion to confirm standing is the one that was presented on

13 behalf of Mr. Zell and EGI and the Court I think wished to

14 take some opportunity to review the transcript and to

15 consider the matter further.  We have discussed with counsel

16 for Zell and EGI the following.

17         That we would propose that the Court if it is so

18 minded, enter the order to confirm standing, but carve out

19 of that order the issues raised by Mr. Zell and EGI in their

20 opposition.  And that those issues would be set for a

21 further hearing that would permit the parties an opportunity

22 to have further discussions about whether they can resolve

23 those issues and an opportunity for the Court to further

24 consider the arguments that have been made and for the

1  parties to be heard in response to any concerns the Court

2  may have after it has had an opportunity to consider the

3  transcript.

4       THE COURT:  Do you have a date to suggest?

5       MR. SOTTILE:  Your Honor, I actually do not have

6  present in my mind when the January omnibus hearing is.

7  There was a scheduling issue for Mr. Bradford that may make

8  that not possible depending on when it is.

9       THE COURT:  So January -- well, there's one on

10 the 13th and one on the 20th.  That's the 3018 day and

11 February 9.

12

13      MR. SOTTILE:  Your Honor, the January the 20th

14 would be convenient for both counsel for the committee and

15 for Mr. Bradford, counsel for Mr. Zell and EGI, if that's

16 acceptable to the Court.

17      THE COURT:  Okay.  I don't want to load that day

18 up too much given the 3018 day, but that's fine, you may

19 build that into the order.

20      MR. SOTTILE:  Thank you, Your Honor.  We'll

21 submit by the end of the day, a form of order that carves

22 out those issues, but otherwise grants the motion.

23      THE COURT:  All right, thank you.

24      MR. SOTTILE:  Thank you.

25      MR. BRADFORD:  Thank you very much, Your Honor.

**From:**        Vail, Andrew W
**Sent:**        Friday, October 29, 2010 2:34 PM
**To:**          Adam Landis; Goldfarb, Andrew
**Cc:**          Bradford, David J
**Subject:**     Draft Complaint

Adam or Andrew,

Is a draft complaint going to be circulated?  I have not yet received a copy.   Thanks.

Best regards,
Andrew