IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 Cases |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | Hearing date: January 24, 2011 @ 11:00 am |
---------------------------------------------------------x

**REPLY IN SUPPORT OF DEUTSCHE BANK TRUST COMPANY
AMERICAS' MOTION FOR ESTIMATION AND CLASSIFICATION OF
CLAIM FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018**

Deutsche Bank Trust Company Americas ("DBTCA" or "Indenture Trustee"), successor indenture trustee under the 1992 Indenture[1], the 1995 Indenture and the 1997 Indenture, by and through its undersigned counsel, hereby respectfully submits this reply (the "Reply") in support of its *Motion For Estimation and Classification of Claim For Voting Purposes Pursuant to Bankruptcy Rule 3018 ("Motion")*, and respectfully states as follows:

**REPLY**

1. The DBTCA Expense Claim is the aggregate of DBTCA's reasonably incurred fees and expenses in its capacity as Indenture Trustee under the 1992 Indenture, the 1995 and the 1997 Indenture. Inasmuch as these are DBTCA's actual fees and expenses and there has been no specific dispute as to reasonableness or otherwise, the Court should at the very least temporarily allow the DBTCA Expense Claim in the full amount for the purpose of voting pursuant to Bankruptcy Rule 3018 as a Class 1F Claim "Other Parent Claim."

2. In response, the Debtors and Committee (the "Estate Fiduciaries") assert that, though there is no objection to these actual fees and expenses, (i) the Court should instead temporarily allow the DBTCA Expense Claim in the nominal amount of $1.00 and (ii) classify

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the respective meanings assigned to such terms in the Motion.

the DBTCA Expense Claim as a Class 1E "Senior Noteholder Claim."[2]  Additionally, the Debtors assert that the Court should defer any ruling on the Motion pending expiration of the voting deadline and a determination of whether the relief requested in the Motion could be moot. DBTCA is aware of no other instance or authority in which voting is allowed on the basis of whether "it will make a difference".[3]

### A.     Invoices Support The DBTCA Expense Claim

3.     The DBTCA Expense Claim constitutes the aggregate of DBTCA's invoices to date.  Although no one can reasonably dispute that DBTCA incurred these costs, DBTCA will, at or prior to the hearing on the Motion provide the Estate Fiduciaries with copies of invoices of both DBTCA and its counsel.

4.     Inasmuch as it has been questioned, DBTCA respectfully submits that these actual invoices comply with paragraph 41 of the Solicitation Order regarding evidence of the claim. Certainly DBTCA's actual invoices are the predicate for its allowable claim, temporary or otherwise.

5.     To be clear, the Debtors may at some point challenge the DBTCA Expense Claim under the terms of the Indenture.  Notwithstanding the over $100 million in fees that Estate Fiduciaries have received in connection with this case, that challenge, if any, would be as to reasonableness on the terms allowable in the Indenture.  That challenge has not been made nor would one expect it reasonably could be made in that the efforts of DBTCA brought forward the

---

[2] See Debtors' Consolidated Objection to Motions for Temporary Allowance of Claims for Voting Purposes Pursuant to Federal rule of Bankruptcy Procedure [D.I.. #7490] (the "Debtors' Objection"); Objection of Official Committee of Unsecured Creditors to Motions for Temporary Allowance of Claims for Voting Purposes Pursuant to Federal rule of Bankruptcy Procedure [D.I. #7487] (the "Committee Objection"; collectively, the "Objections").
[3] The fact that the Estate Fiduciaries have opposed the *temporary allowance* of the DBTCA reimbursement claims, while, at the same time, have remained mute for over 2 years and actually paid fees over ten times that amount to the Senior Lenders reflects the story of the Tribune bankruptcy to date.

very issues being litigated by the parties to achieve a fair result – undoing of the leveraged buyout and payment in full to the Senior Noteholders.

6.      Finally, the Debtors' request to delay such determination pending passage of the voting deadline is without merit.  The Debtors assume that they can disenfranchise voting creditors simply on their assumption that Class 1F will accept the Debtors/Committee/Senior Lender Plan regardless of whether the DBTCA Expense Claim votes.  Not only is that not clear, nothing in the Bankruptcy Code permits a plan proponent to create a "recount only" mechanism in the place of proper voting.  Impaired claims vote; that is it.  11 U.S.C. §§ 1126(a), 1129(a)(7) and 1129(a)(8).  Further, there exist a myriad of confirmation issues that might impact the Debtors' current calculus.  Accordingly. DBTCA submits that the issue of the temporary allowance of the DBTCA Expense Claim is ripe, just as it is for any other creditor.  The only issue that may not be ripe would be an objection by the Debtors to the DBTCA Expense Claim.  That has not occurred and, even if it did, it would not be necessary to decide for the purposes of temporary allowance.

### B.  The DBTCA Expense Claim Is Properly Classified As An Other Parent Claim

7.      Erroneously classifying the DBTCA Expense Claim as a Senior Noteholders Claim rather than properly classifying it as an Other Parent Claim in Class 1F results in the material reduction of the potential recovery of holders of Senior Noteholder Claims.  Despite the Debtors' argument that the DBTCA Expense Claim exists by virtue of the Indentures, the language of the Debtors/Committee/Senior Lender Plan and the accompanying disclosure statement appear to provide that such claim is properly classified in Class 1F as an "Other Parent Claim."

8.      In their disclosure statement, the Debtors state that the total amount of Senior Noteholder Claims is $1.28 billion.  This number is not qualified; in contrast, the proponents of the Debtor/Committee/Senior Lender Plan did qualify the total amount of claims in many of the other classes, including those of the Bridge Loan Claims, Other Parent Claims, EGI-TRB LLC Notes Claims and PHONES Notes Claims.[4]  There is no mention that the allowed amount of Senior Noteholders Claims could possibly be any amount other than $1.28 billion.

9.      Without any specific disclosure of the allowance (whether actual or potential) for the fees and expenses incurred by DBTCA and Law Debenture as part of the Senior Noteholders Claims – fees and expenses which undoubtedly, the Debtors are cognizant of (and which were recognized at least as to Law Debenture in a prior plan) – the reasonable and logical conclusion is that the proponents of the Debtor/Committee/Senior Lender Plan did not intend to include the DBTCA Expense Claim in this class.  To the contrary, the information provided in the Debtors/Committee/Senior Lender Plan and the accompanying disclosure statement appear to group the DBTCA Expense Claim with the "Other Parent Claims" class, where the Debtors have provided a range with respect to the total amount of allowed claims.

10.     The importance of this classification lies in the fact that the value of allowed Senior Noteholders Claims directly affects the recovery of holders.  Under the Debtor/Committee/Senior Lenders' plan, the holders of Senior Noteholders Claims will receive, in the aggregate, $420 million in cash on the effective date regardless of the size of the class.  Thus, any increase in the amount of allowed Senior Noteholder Claims through the inclusion of

---

[4] Interestingly, the footnote that seemingly qualifies the Senior Noteholders Claims does not qualify the amount of the Senior Noteholders Claims.  In fact, this footnote provides, without correction, that "the Debtors are paying the fees and expenses of various major constituencies (*including the fees and expenses of the Indenture Trustee under the 1996 Indenture*) . . . ."  While no provision in the Debtors' plan provides for this payment, it is clear that the Debtors have determined that Indenture Trustee claims are different in character from those claims relating to the Senior Notes.

claims of a different character will necessarily dilute the recovery to all holders of Senior Noteholder Claims.

11.     This problem is not solved simply by the filing of a "technical" amendment to the plan as the Estate Fiduciaries both suggest. *See Debtor's Objection* at 7n.5.  Regardless of whether this amendment is contemplated by the Estate Fiduciaries, this so-called amendment is not "technical" due to the adverse affect it will have on recoveries.[5]

12.     Courts have routinely held that a modification to a proposed plan is material if it affects an interest holder's rights and would cause them to reconsider their position about the plan. *In re Dow Corning Corp.*, 237 B.R. 374, 379 (Bankr. E.D. Mich. 1999), *aff'd sub nom.*, *Certain Foreign Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 2000 U.S. Dist. LEXIS 16939 (E.D. Mich. Nov. 13, 2000) (no parallel citation); *In re Frontier Airlines, Inc.*, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988); *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988).

13.     As noted in Collier's, **"[c]learly, a reduction in consideration would be a change in treatment."** 9 COLLIER ON BANKRUPTCY ¶ 3019.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (emphasis added).  Accordingly, the court in *In re Concrete Designers, Inc.* held that distribution of a new disclosure statement and re-solicitation was necessary where the proposed dividend to unsecured creditors was changed from 100% over five years or a lump sum payment of 40% to approximately 80% over four years or a lump sum payment of 50%.  173 B.R. 354, 357 (Bankr. S.D. Ohio 1994).  The court noted that because the distribution scheme

---

[5] DBTCA reserves all of its rights to assert that the "technical amendment" to be proposed by the proponents of the Debtor/Committee/Senior Lender Plan is a material modification which will require a resolicitation of the Senior Noteholder Class under Section 1127(c) and Rule 3019 of the Federal Rules of Bankruptcy Procedure. .

under the plan was modified with respect to unsecured creditors, it could not confirm the modified plan under section 1129(a)(2) of the Bankruptcy Code. *Id.*

14.     Here, an additional $10 million in allowed Senior Noteholder Claims, arising in connection with the DBTCA Expense Claim and any expense claim submitted by Law Debenture, will substantially diminish the recovery currently contemplated by the Debtors/Committee/Senior Lender Plan. Moreover, the lower recovery provided to Senior Noteholder Claims compared to Other Parent Claims will necessarily increase the recovery amount impacted by DBTCA's charging lien, further reducing class recoveries.

15.     Rather than simply file a "technical" amendment, it is clear that the Debtors are instead attempting to correct an error in the Debtors/Committee/Senior Lender Plan and retroactively include the DBTCA Expense Claim as a Senior Noteholder Claim. That is a material change that may not be allowed at this point. Rather, the Debtors and Committee must recognize the DBTCA Expense Claim for what it is, a Class 1F Other Parent Claim.

**WHEREFORE**, for all of the foregoing reasons, DBTCA respectfully requests that the Court enter an order (i) temporarily allowing the DBTCA Expense Claim for voting purposes, (ii) approving the classification of DBTCA's Expense Claim in Class 1F under the Debtor/Lender/Committee plan, and (iii) granting such other and further relief as may be just and proper.

Dated: January 20, 2011　　　　　　　　　　　**McCARTER & ENGLISH, LLP**
　　　　　Wilmington, DE

　　　　　　　　　　　　　　　　　　　By:　/s/ Katharine L. Mayer
　　　　　　　　　　　　　　　　　　　　　Katharine L. Mayer (DE # 3758)
　　　　　　　　　　　　　　　　　　　　　McCarter & English, LLP
　　　　　　　　　　　　　　　　　　　　　405 N. King Street, 8th Floor
　　　　　　　　　　　　　　　　　　　　　P.O. Box 111
　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19899
　　　　　　　　　　　　　　　　　　　　　Telephone: (302) 984-6300
　　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 984-6399

　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　　David J. Adler
　　　　　　　　　　　　　　　　　　　　　245 Park Avenue, 27th Floor
　　　　　　　　　　　　　　　　　　　　　New York, NY  10167
　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 609-6800
　　　　　　　　　　　　　　　　　　　　　Fax: (212) 609-6921
　　　　　　　　　　　　　　　　　　　　　dadler@mccarter.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for Deutsche Bank Trust Company Americas*