IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
| In re: | : | Chapter 11 Cases |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | Hearing date: January 24, 2011 @ 11:00 a.m. (ET) |

------------------------------------------------------x

**REPLY IN SUPPORT OF LAW DEBENTURE TRUST COMPANY OF
NEW YORK'S MOTION FOR ESTIMATION AND CLASSIFICATION OF
CLAIM FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018**

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096 (as amended, the "1996 Indenture"), by and through its undersigned counsel, hereby respectfully submits this reply (the "Reply") in support of its *Motion For Estimation and Classification of Claim For Voting Purposes Pursuant to Bankruptcy Rule 3018* (the "Motion"), and respectfully states as follows:[1]

**REPLY**

1. The Law Debenture Expense Claim is the aggregate of Law Debenture's reasonably incurred fees and expenses in its capacity as Indenture Trustee under the 1996 Indenture. Inasmuch as these are Law Debenture's actual fees and expenses and there has been no specific dispute as to reasonableness or otherwise, the Court should at the very least temporarily allow the Law Debenture Expense Claim in the full amount for the purpose of voting pursuant to Bankruptcy Rule 3018 as a Class 1F Claim "Other Parent Claim."

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the respective meanings assigned to such terms in the Motion.

2.      In response, the Debtors and Committee assert that, though there is no objection to these actual fees and expenses, (i) the Court should instead temporarily allow the Law Debenture Expense Claim in the nominal amount of $1.00 and (ii) classify the Law Debenture Expense Claim as a Class 1E "Senior Noteholder Claim."[2]  Additionally, the Debtors assert that the Court should defer any ruling on the Motion pending expiration of the voting deadline and a determination of whether the relief requested in the Motion could be moot.  Law Debenture is aware of no other instance or authority in which voting is allowed on the basis of whether "it will make a difference".

### A.     Invoices Support The Law Debenture Expense Claim

3.      The Law Debenture Expense Claim constitutes the aggregate of Law Debenture's invoices to date.  Although no one can reasonably dispute that Law Debenture incurred these costs, Law Debenture couples this Reply with the *Declaration of Matthew B. Stein*, dated January 20, 2011, appending each actual invoice that has been sent to Law Debenture.

4.      Inasmuch as it has been questioned, Law Debenture respectfully submits that these actual invoices comply with paragraph 41 of the Solicitation Order regarding evidence of the claim.  Certainly Law Debenture's actual invoices are the predicate for its allowable claim, temporary or otherwise.

5.      To be clear, the Debtors' may at some point challenge the Law Debenture Expense Claim under the terms of the Indenture.  Notwithstanding the over $100 million in fees that estate fiduciaries have received in connection with this case, that challenge, if any, would be as to reasonableness on the terms allowable in the Indenture.  That challenge has not been made

---

[2]     *See Debtors' Consolidated Objection to Motions for Temporary Allowance of Claims for Voting Purposes Pursuant to Federal rule of Bankruptcy Procedure* [D.I.. #7490] (the "Debtors' Objection"); *Objection of Official Committee of Unsecured Creditors to Motions for Temporary Allowance of Claims for Voting Purposes Pursuant to Federal rule of Bankruptcy Procedure* [D.I. #7487] (the "Committee Objection"; collectively, the "Objections").

nor would one expect it reasonably could be made in that the efforts of Law Debenture brought forward the very issues being litigated by the parties to achieve a fair result – undoing of the leveraged buyout and payment in full to the Senior Noteholders.

6. Finally, the Debtors' request to delay such determination pending passage of the voting deadline is without merit. The Debtors assume that they can disenfranchise voting creditors simply on their assumption that Class 1F will accept the Debtors/Committee/Lender Plan regardless of whether the Law Debenture Expense Claim votes. Not only is that not clear, nothing in the Bankruptcy Code permits a plan proponent to create a "recount only" mechanism in the place of proper voting. Impaired claims vote; that is it. 11 U.S.C. §§ 1126(a), 1129(a)(7) and 1129(a)(8). Further, there exist a myriad of confirmation issues that might impact the Debtors' current calculus. Accordingly, Law Debenture submits that the issue of the temporary allowance of the Law Debenture Expense Claim is ripe, just as it is for any other creditor. The only issue that may not be ripe would be an objection by the Debtors to the Law Debenture Expense Claim. That has not occurred and, even if it did, it would not be necessary to decide for the purposes of temporary allowance.

    **B.**     <u>**The Law Debenture Expense Claim Is Properly Classified As An Other Parent Claim**</u>

7. Erroneously classifying the Law Debenture Expense Claim, along with the expense claim of DBTCA, as a Senior Noteholders Claim rather than properly classifying it as an Other Parent Claim in Class 1F results in the material reduction of the potential recovery of holders of Senior Noteholder Claims. Despite the Debtors' argument that the Law Debenture Expense Claim exists by virtue of the 1996 Indenture, the language of the Debtors/Committee/Lender Plan and the accompanying disclosure statement appear to provide that such claim is properly classified in Class 1F as an "Other Parent Claim."

8. In their disclosure statement, the proponents of the Debtors/Committee/Lender Plan state that the total amount of Senior Noteholder Claims is $1.28 billion. This number is not qualified; in contrast, the proponents of the Debtors/Committee/Lender Plan did qualify the total amount of claims in many of the other classes, including those of the Bridge Loan Claims, Other Parent Claims, EGI-TRB LLC Notes Claims and PHONES Notes Claims.[3] There is no mention that the allowed amount of Senior Noteholders Claims could possibly be any amount other than $1.28 billion.

9. Without any specific disclosure of the allowance (whether actual or potential) for the fees and expenses incurred by Law Debenture and DBTCA as part of the Senior Noteholders Claims – fees and expenses which undoubtedly, the Debtors are cognizant of (and which were recognized, at least as to Law Debenture, in a prior plan) – the reasonable and logical conclusion is that the proponents of the Debtors/Committee/Lender Plan did not intend to include the Law Debenture Expense Claim in this class. To the contrary, the information provided in the Debtors/Committee/Lender Plan and the accompanying disclosure statement appear to group the Law Debenture Expense Claim with the "Other Parent Claims" class, where the Debtors have provided a range with respect to the total amount of allowed claims.[4]

10. The importance of this classification lies in the fact that the value of allowed Senior Noteholders Claims directly affects the recovery of holders. Under the Debtors' plan, the

---

[3] Interestingly, the footnote that seemingly qualifies the Senior Noteholders Claims does not qualify the amount of the Senior Noteholders Claims. In fact, this footnote provides that "the Debtors are paying the fees and expenses of various major constituencies (*including the fees and expenses of the Indenture Trustee under the 1996 Indenture*) . . . ." While no provision in the Debtors' plan provides for this payment, it is clear that the Debtors have determined that Indenture Trustee claims are different in character from those claims relating to the Senior Notes.

[4] This issue was not present in the Debtors' prior plan. There, the Debtors specifically provided that the professional fees of Law Debenture would be paid by reorganized Tribune. Under such a framework, it was unnecessary to adjust the amount of the Senior Noteholders Claims to account for Law Debenture's fees and expenses. And there was no reason to classify it differently as is here required. It seems likely that this section of the Debtors' plan was copied from the prior plan without modification.

holders of Senior Noteholders Claims will receive, in the aggregate, $420 million in cash on the effective date regardless of the size of the class. Thus, any increase in the amount of allowed Senior Noteholder Claims through the inclusion of claims of a different character will necessarily dilute the recovery to all holders of Senior Noteholder Claims.

11. This problem is not solved simply by the filing of a "technical" amendment to the plan as the Debtors suggest. *See Debtors' Objection* at 7n.5. Regardless of whether this amendment is contemplated by the Debtors, this so-called amendment is not "technical" due to the adverse affect it will have on recoveries.[5]

12. Courts have routinely held that a modification to a proposed plan is material if it affects an interest holder's rights and would cause them to reconsider their position about the plan. *In re Dow Corning Corp.*, 237 B.R. 374, 379 (Bankr. E.D. Mich. 1999), *aff'd sub nom.*, *Certain Foreign Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 2000 U.S. Dist. LEXIS 16939 (E.D. Mich. Nov. 13, 2000) (no parallel citation); *In re Frontier Airlines, Inc.*, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988); *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988).

13. As noted in Collier's, **"[c]learly, a reduction in consideration would be a change in treatment."** 9 COLLIER ON BANKRUPTCY ¶ 3019.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (emphasis added). Accordingly, the court in *In re Concrete Designers, Inc.* held that distribution of a new disclosure statement and re-solicitation was necessary where the proposed dividend to unsecured creditors was changed from 100% over five years or a lump sum payment of 40% to approximately 80% over four years or a lump sum payment of 50%. 173

---

[5] Law Debenture reserves all of its rights to assert that the "technical amendment" to be proposed by the proponents of the Debtors/Committee/Lender Plan is a material modification which will require a resolicitation of the Senior Noteholder Class under Section 1127(c) and Rule 3019 of the Federal Rules of Bankruptcy Procedure.

B.R. 354, 357 (Bankr. S.D. Ohio 1994). The court noted that because the distribution scheme under the plan was modified with respect to unsecured creditors, it could not confirm the modified plan under section 1129(a)(2) of the Bankruptcy Code. *Id.*

14. Here, an additional $10 million in allowed Senior Noteholder Claims, arising in connection with the Law Debenture Expense Claim and any expense claim submitted by DBTCA, will substantially diminish the recovery currently contemplated by the Debtors/Committee/Lender Plan. Moreover, the lower recovery provided to Senior Noteholders Claims compared to Other Parent Claims will necessarily increase the recovery amount impacted by Law Debenture's charging lien, further reducing class recoveries.

15. Rather than simply file a "technical" amendment, it is clear that the Debtors are instead attempting to correct an error in the Debtors/Committee/Lender Plan and retroactively include the Law Debenture Expense Claim as a Senior Noteholders Claim. That is a material change that may not be allowed at this point. Rather, the Debtors and Committee must recognize the Law Debenture Expense Claim for what it is, a Class 1F Other Parent Claim.

**WHEREFORE**, for all of the foregoing reasons, Law Debenture respectfully requests that the Court enter an order (i) temporarily allowing the Law Debenture Expense Claim for voting purposes, (ii) approving the classification of Law Debenture's Expense Claim in Class 1F under the Debtors/Lender/Committee plan, and (iii) granting such other and further relief as may be just and proper.

Dated:   January 21, 2011
        Wilmington, Delaware         **BIFFERATO GENTILOTTI LLC**

        */s/ Garvan F. McDaniel*
        Garvan F. McDaniel (DE No. 4167)
        800 N. King St., Plaza Level
        Wilmington, DE 19801
        (302) 429-1900

        - and -

        David S. Rosner
        Sheron Korpus
        Matthew B. Stein
        Kasowitz, Benson, Torres & Friedman LLP
        1633 Broadway
        New York, New York 10019
        (212) 506-1700

        *Co-Counsel for Law Debenture Trust*
        *Company of New York*