**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| TRIBUNE COMPANY, *et al.*, | ) | Case No. 08-13141 (KJC) |
| Debtors. | ) | Jointly Administered |

**MR. ZELL AND EGI-TRB LLC'S SUPPLEMENT TO**
**THEIR LIMITED OBJECTION TO**
**THE COMMITTEE'S COMPLAINT CONFIRMATION MOTION**

Samuel Zell ("Mr. Zell") and EGI-TRB LLC ("EGI-TRB") respectfully submit this supplemental brief in support of their limited objection (the "Objection")[1] to the Committee's (the "Committee") Motion (the "Committee's Motion").[2]

Mr. Zell and EGI-TRB have made this Objection to preserve their fundamental contention that standing is jurisdictional, may be reexamined at any time, and has not been preclusively determined as to claims the Committee alleges against Mr. Zell and EGI-TRB that the Examiner found are unlikely to succeed. As the Committee's reply brief makes clear, Mr. Zell and EGI-TRB were right to make their Objection. The Committee apparently believes that the Court has held, or should now hold, that Mr. Zell and EGI-TRB are precluded from ever raising a challenge to the Committee's standing to prosecute its alleged claims against them. The Committee is wrong, for at least four reasons:

---

[1] Mr. Zell and EGI-TRB's Limited Objection to the Committee's Motion for Entry of an Order Confirming Standing, filed on December 13, 2010 [Dkt. No. 7164].

[2] The Committee's Motion For Entry Of An Order Confirming That The Court's October 27, 2010 Order Granted The Committee Standing With Respect to All Claims Asserted In the Amended Complaints In Adversarial Proceeding Nos. 10-53963 And 10-54010, filed December 7, 2010 [Dkt. No. 7091].

First, standing is a jurisdictional matter and may be examined—or reexamined—at any time. *In re Together Dev. Corp.*, 262 B.R. 586 (Bankr. D. Mass. 2001). The Committee has no answer to that black-letter principle.

Second, the Court's October 27 Order with respect to standing in an adversarial proceeding is interlocutory in nature and may be withdrawn or revised at any time. Again, the Committee makes no response.

Third, where an issue has been decided without a full adversarial presentation, as the Committee's initial motion for standing was here, that decision does not have preclusive effect in later proceedings, whether as collateral estoppel, law of the case, or any other doctrine.

Fourth, as the Court itself noted at the December 15 hearing, these matters are before the Court now because the Committee filed a motion for "clarification" of the Court's October 27 Order concerning standing. Having asked the Court to revisit the scope and meaning of that Order, the Committee cannot fairly contend that other parties should be precluded from objecting.

Mr. Zell and EGI-TRB raise this issue of standing, and seek to preserve their ability to contest that issue in the future, because the Committee's claims against them are not colorable or in the Estate's best interests. The Committee seeks to bring claims against Mr. Zell and EGI-TRB, even though, unlike other named defendants, the Court-appointed Examiner found the claims against Mr. Zell and EGI-TRB unlikely to succeed—including some claims that the Examiner found had "no plausible basis" and were "highly unlikely to succeed."

The contrary arguments of the Committee and Aurelius are not only incorrect but also demonstrate why a full adversarial determination of these standing issues is required. Only by mischaracterizing the Examiner's Report and the evidentiary record in arguments set forth for

the first time in "reply" and "joinder" briefs can the Committee and Aurelius even attempt to demonstrate that these claims are colorable and beneficial to the Estate. Their last-minute filings—after the Court took the Objection under advisement at the December 15 hearing—demonstrate that the Court has not yet had the benefit of a full adversarial presentation of these issues. Mr. Zell and EGI-TRB should be afforded a fair opportunity to respond.

The Court should hold that its October 27 Order, and any order resulting from the Committee's Motion, does not preclusively determine the issue of standing for purposes of adversary proceedings against Mr. Zell and EGI-TRB. The Court should order the parties to meet and confer on a process, potentially in conjunction with any lifting of the stay, to afford Mr. Zell and EGI-TRB a full and fair opportunity to be heard on this jurisdictional issue. In the interim—and as the parties and the Court discussed at the December 15, 2010 hearing—a tolling agreement and a dismissal without prejudice would preserve all parties' rights until a decision on standing is made.

## **Background**

*Procedural History.*

On the afternoon of October 21, one day before the Committee's motion for standing was heard by this Court, the Committee sent Mr. Zell and EGI-TRB a copy of the draft complaint requesting that they withdraw certain confidentiality designations. In response, counsel for Mr. Zell and EGI-TRB immediately informed the Committee that the claims alleged against them were unfounded and contained allegations that "misstate[] facts and make[] allegations contrary to the findings of the Examiner." (Ex. A, 10/22/10 Email.) The Examiner's conclusions—which generally foreclose the legal theories alleged against them by the Committee—are described in detail in Part II.A of this brief.

At the October 22, 2010 hearing, Mr. Zell and EGI-TRB's counsel appeared by telephone and refrained from objecting to the Committee's motion because of the Committee's stated concern that it faced the possible expiration of the statute of limitations, but *did* object to the commencement of litigation on those claims at that point in the bankruptcy process. (Ex. B, 10/22/10 Hr'g Tr. at 43.) Counsel also stated that "the complaint's allegations against my client[s] are unfounded and contrary to the conclusions of the Examiner." (*Id.*)

During the October 22 hearing, the Committee represented to the Court that it would finalize and file a draft complaint by November 1, 2010 and it also represented that the draft complaint would be circulated to interested parties for further discussion. (Ex. B, 10/22/10 Hr'g Tr. at 56-57.) The Court granted the Committee standing, including overruling Mr. Zell and EGI-TRB objection "[w]ith respect to holding up on the filing of the complaint until mediation is completed." (*Id*. at 66.)

Between October 22 and November 1, 2010, Mr. Zell and EGI-TRB twice offered to enter into a tolling agreement with respect to the Committee's alleged claims against them, notwithstanding Mr. Zell's and EGI-TRB's position that the claims were not colorable. (Ex. A, 10/22/10 and 10/25/10 Emails.) The Committee did not respond to those offers, despite promising to do so. (*Id.*) Mr. Zell and EGI-TRB also asked the Committee on October 29, 2010 whether a draft of the complaint would be forthcoming, as the Committee had represented. (Ex. A, 10/29/10 Email.) Again, counsel for the Committee did not respond.

Instead, on November 1, 2010, the Committee filed its amended complaint. To the disappointment of Mr. Zell and EGI-TRB, the complaint still contained the unfounded claims alleged against them that the Examiner's Report had concluded were unlikely to succeed.

*Committee's Present Motion.*

On December 7, 2010, the Committee filed its instant motion seeking confirmation from this Court that it has standing not only to file the complaint, but also to commence, prosecute and settle the claims alleged in the complaint it has filed. On December 13, Mr. Zell and EGI-TRB filed this pending Objection to the Committee's motion. (Objection [Dkt. No. 7164].)

At the December 15, 2010, hearing, the Committee asked the Court overrule Mr. Zell and EGI-TRB's Objection on the basis that they were purportedly seeking a "do over" of the Court's prior ruling on standing. (Ex. C, 12/15/10 Hr'g Tr. at 31.) The Court remarked that "was not something that [it] recall[ed] was discussed at that hearing. So I don't know if it's really a do over . . ." (*Id.* at 32.) In response, Mr. Zell and EGI-TRB replied:

> Your Honor, when this matter came before the Court, it was presented in a context where it was specifically represented to the Court that the purpose of the filing of the complaint was to toll the statute of limitation period. We wanted to be cooperative with that. We had offered a tolling agreement even before the complaint was filed and we felt the debtor and committee had properly sought to preserve causes of action and we sought to cooperate with that and did not object and [] expressed that we were not objecting insofar as they sought to commence litigation to preserve these claims. We did make clear our views which we reiterate today that these claims are unfounded. The examiner specifically found as to certain of these claims that there was no plausible basis for the claim. And that's an issue on which we deserve to be heard. . . . we don't think it's necessary to reach those issues right now because the practical purpose of these motions was to preserve the claim for a later determination.

(*Id*. at 37.)

The Court asked the Committee why a tolling agreement would not adequately protect their interests. (*Id.* at 35 ("Well, what about the offer to enter into tolling agreements?").) The Court then took the matter under advisement. Thereafter and before Court adjourned for the day, counsel for the Committee and for Mr. Zell and EGI-TRB asked to have the Objection continued, so that they could meet and confer in an effort to resolve the Objection. (*Id.* at 70-

71.) Pursuant to that agreement, the Court reserved ruling on the Objection until the next Omnibus Hearing, now scheduled for January 24, 2011. (*Id.; see also* Order entered 12/17/10 [Dkt. No. 7223].)

The Committee and Aurelius have used that "meet and confer" interlude not to address EGI-TRB and Mr. Zell's concerns, but to prepare and file substantial briefing addressing the merits of the claims and the Examiner's Report. (Committee Reply Brief ("Comm. Reply Br.") [Dkt. No. 7542] and Aurelius Joinder of Comm. Reply. Br. ("Joinder") [Dkt. No. 7546].) As set forth below, Mr. Zell and EGI-TRB should be afforded a further opportunity to address that briefing, which mischaracterizes and tells less than half the story.

These claims are not colorable and the Committee cannot sufficiently demonstrate that it is in the best interest of the Estate to spend millions of dollars litigating the claims that the Examiner found unlikely to succeed.

## Argument

The Court should hold that Mr. Zell's and EGI-TRB'S Objection is preserved and may be heard and decided before the claims are prosecuted.

### I. Standing Jurisdiction In The Adversary Proceeding Was Not Waived Or Irrevocably Determined.

The Court should reject the Committee's apparent position that its standing to prosecute claims against Mr. Zell and EGI-TRB has been irrevocably determined.

First, whether the Committee may appropriately bring its alleged claims against Mr. Zell and EGI-TRB is a jurisdictional matter that may be raised at any time and cannot be waived. *See Pell v. E.I. DuPont de Nemours & Co., Inc.*, 539 F.3d 292, 299 n.3 (3d Cir. 2008); *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 255 (D. Del. 2009); *In re Martin*, 64 B.R. 638, 639 (Bankr. D. Del. 1986). Federal courts are under an independent obligation to examine their own

jurisdiction, including the doctrine of standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Allen v. Wright*, 468 U.S. 737, 750 (1984).

For those very reasons, a federal bankruptcy court "must" consider a challenge to a creditors' committee's standing "whenever raised, regardless of whether the challenger failed to make an earlier challenge, or whether the court itself sees a standing problem." *In re Together Dev.*, 262 B.R. at 588-89 (citing *United States v. AVX Corp.*, 962 F.2d 108, 116 n.7 (1st. Cir. 1992)); *see also In re Martin,* 64 B.R. at 639 (citing *Nat'l Coal. to Ban Handguns v. Bureau of Alcohol, Tobacco & Firearms*, 715 F.2d 632 (D.C. Cir. 1983)). In *Together Development*, as here, the creditor's committee argued that challenges to its standing to prosecute claims had been waived or precluded in prior proceedings. *Id.* at 588-89. The bankruptcy court, however, held that the defendants "could not have waived their challenge to the Committee's standing" because standing is a jurisdictional matter that cannot be waived. *Id*. at 588-89.

Counsel for Mr. Zell and EGI-TRB referred the Court to *Together Development* at the December 15 hearing, yet the Committee and Aurelius do not even mention the case in their filings and cite no contrary authority. The reason is plain—standing is jurisdictional, may be raised at any stage, and cannot be shielded from review with procedural arguments.

Second, the Court's October 27 order with respect to standing is interlocutory in nature and may be withdrawn or revised at any time, particularly in connection with the adversarial proceeding. A bankruptcy court may reconsider or revise a prior interlocutory order at any time before final judgment. *See In re Piper Aircraft Corp.*, 169 B.R. 766, 771 (Bankr. S.D. Fla.1994). As one court explained, "it is within the Court's discretion whether to vacate the order of May 14, 1980 granting the Committee standing to bring this [adversary] suit" because the court has "plenary power over its interlocutory orders and may modify or vacate them when it is consonant

with justice to do so." *In re Monsour Med. Ctr.*, 5 B.R. 715, 717 (Bankr. W.D. Pa. 1980). "In exercising its discretion the Court is not bound by the restrictions that apply to final orders pursuant to Rule 60(b) of the Federal Rules of Civil Procedure." *Id.*; *see also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities") (applicable via Fed. R. Bankr. P. 7054).

Third, the Court has not had the benefit of an adversarial presentation of the standing issue. Counsel's mere statement of non-objection at the October 22 hearing cannot substitute for evidence and argument on the key questions of whether the Committee's claims are colorable or in the best interests of the Estate. Whether treated as a matter of collateral estoppel, "law of the case," or otherwise, the law is clear that *actual litigation* is required before a determination is given preclusive effect. *E.g., Wilson v. Reliance Ins. Co.*, 138 Fed. Appx. 457, 459 (3d Cir. 2005) (issue preclusion requires "the issues [be] actually litigated"); *In re Broadstripe LLC,* 435 B.R. 245, 255 (Bankr. D. Del. 2010).

Fourth, the Committee itself has reopened the matters addressed by the Court's October 27 order by filing its motion seeking "clarification" of that Order. If the Committee is allowed to revisit the scope and meaning of its prior order, (including by contending that it includes an irrevocable decision on colorability and benefit to the Estate), Mr. Zell and EGI-TRB should be permitted the opportunity to demonstrate otherwise.

## II. The Committee Has Not Shown That The Alleged Claims Are Colorable Or In The Best Interests Of The Estate.

At the heart of whether these claims are colorable or in the best interest of the Estate is the "likelihood of success" of those claims. *See In re Am.'s Hobby Ctr., Inc.*, 223 B.R. 275, 285

(Bankr. S.D.N.Y. 1998). In *America's Hobby*, the court held that the creditor's committee did not have derivative standing to prosecute claims against defendants until the court determined their likelihood of success. *Id.* at 282 (holding that "[t]he mandated cost/benefit analysis involves the weighing of the **probability of success** and financial recovery" and "[a]lthough courts will not conduct a mini-trial on these issues, a sufficient **likelihood of success must be found** to 'justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce.'") (citing *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985)). The Examiner's Report, which reflects an independent, thorough analysis of these claims, establishes that unlike other putative defendants the Committee names, Mr. Zell and EGI-TRB are the target of claims that the Examiner found unlikely to succeed, including some claims the Examiner found had no "plausible basis" or were "highly unlikely" to succeed.

**A. The Claims Are Not Colorable Or Beneficial To The Estate.**

Because the Committee has not met its burden of establishing by competent evidence that the Examiner was wrong in concluding that alleged claims in the LBO Amended Complaint against Mr. Zell and EGI-TRB are unlikely to succeed, the Court, acting as a gatekeeper, should not put its imprimatur of approval on lottery-ticket litigation. *See, e.g., In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004) (finding "[i]t is the creditor's burden in the first instance to demonstrate that it has satisfied [the] prerequisites for derivative standing"); *see also In re Copperfield Invs., LLC*, 421 B.R. 604, 612 (E.D.N.Y. 2010) (denying standing because claim was not colorable); *In re Am.'s Hobby*, 223 B.R. at 285 (same).[3]

[3] Bankruptcy courts routinely deny, limit, or revoke a committee's motion for standing where the committee has not and cannot demonstrate the claims are colorable and would sufficiently benefit the estate. *See, e.g., In re Commodore Int'l, Ltd.*, 253 B.R. 336, 339 (S.D.N.Y. 2000) (denying standing); *see also In re Akron Thermal, Ltd. P'ship*, 2010 WL 2991516, at *1-2 (N.D. Ohio July 27, 2010) (same); *In re Berryman Prods.*, 183 B.R. 463, 468-69 (Bankr. N.D. Tex. 1995) (same).

After interviewing key witnesses under oath and reviewing the evidence, the Examiner, in his comprehensive 1200-page report, rejected all nine of the Committee's claims against EGI-TRB and Mr. Zell.[4] As the Examiner found:

- There is **no "plausible basis** . . . to justify equitable subordination of the EGI-TRB Notes" or equitable disallowance of EGI-TRB's claims. (Examiner's Report, Vol. II. at 338-39.) That finding should preclude the Committee's claims at **Count Twenty-Two** (for Equitable Subordination) and **Count Seventeen** (Recharacterization of EGI-TRB's Exchangeable Note).

- It is **"highly unlikely"** a court would "conclude that any claims for aiding and abetting breach of fiduciary duty could be sustained based on the conduct of any potential defendants [including Mr. Zell and EGI-TRB] at Step One." (*Id*. at 395.) In addition, it is **"reasonably unlikely"** that any an aiding and abetting claim could succeed as to Step Two because there is no "sufficient basis to conclude that the Zell Group aided and abetted a breach of any fiduciary duties in connection with the Leveraged ESOP Transactions." (*Id*. at 395, 397.) Those findings should preclude **Count Seven** (Aiding and Abetting).

- Even if satisfaction of the Exchangeable EGI-TRB Note at Step Two could be a preferential transfer, it is **"reasonably likely"** that a court would find that the transaction is **subject to an ordinary course of business defense**. (*Id*. at 311). That finding should preclude **Count Nineteen** (Preference claim).

- It is **"reasonably unlikely"** that any unjust enrichment claims would be meritorious, including any such claim against Mr. Zell or EGI-TRB. (*Id*. at 404, 406.) That finding should preclude **Count Twelve** (Unjust Enrichment).

- It is **"reasonably unlikely"** that a court would find that the Debtors incurred their obligations under the Step One Transactions with the actual intent to delay, hinder, or defraud their creditors. (*Id*. at 22.) That finding should preclude **Counts Thirteen** and **Eighteen** (Intentional Fraudulent Transfer) to the extent that those claims are based on conduct related to **Step One**.

- A "court is **reasonably unlikely** to find that a claim for illegal corporate distributions pursuant to [the Delaware code] could be sustained against Tribune's directors based on the Step One Transactions, and is **somewhat unlikely** to find that such a claim could be sustained against Tribune's directors based on the Step Two Transactions." (*Id*. at 411.) That finding coupled with the fact that Mr. Zell abstained from participating in any Board action on Step Two should preclude **Count Eleven** (Claim for Violations of DGCL Sections 160 and/or 173).

[4] The Examiner did not address the preference claim that the Committee asserts against EGI based on alleged preference payments Tribune made to EGI in the 90 days prior to Tribune's bankruptcy petition (Count Twenty).

- It is **"somewhat unlikely"** that a court would find that claims for breach of fiduciary duty could be sustained against the Tribune directors at Step Two. (*Id*. at 373.) This finding was directed at all Tribune directors who participated in approving Step Two. Mr. Zell abstained from and had no role in approving the LBO on behalf of Tribune. At a minimum, however, that finding coupled with Mr. Zell's abstention should preclude **Count Two** (Breach of Fiduciary Duty).

- As a overriding matter, although the Examiner concluded that there is evidence that certain third parties may not have acted in good faith in connection with the Step Two Transactions, the Report contained no suggestion and identified no evidence that Mr. Zell and EGI-TRB acted with anything other than good faith. (*Id*. at 74-75, 264, 281, 283, 338, Vol. I at 300.)[5] Accordingly, those findings should preclude any claims under **Counts Thirteen** and **Eighteen** (Intentional Fraudulent Transfer) to the extent they are based on **Step Two** and directed at Mr. Zell and EGI-TRB.

As those findings demonstrate, the Examiner's Report directly finds the claims asserted by the Committee are unlikely to succeed. Indeed, the Court instructed the plan proponents to describe accurately to creditors the Examiner's findings regarding claims against EGI-TRB and Mr. Zell, and the Joint Disclosure Statement effectively stipulated that with respect to EGI-TRB LLC and Sam Zell, the Examiner determined that the alleged claims are "unlikely to succeed." (*See* Joint Discl. Statement at 69 [Dkt. No. 7134].) In their replies, the Committee and Aurelius either ignore the Examiner's actual findings, mischaracterize his findings to suit their purposes, or simply assert that, after the Estate invested over $12 million in the Examiner's investigation, the Examiner was wrong because "reasonable people" could disagree. The Committee's and Aurelius' belated arguments cannot change the Examiner's clear findings, or the fundamental defects in these claims.

---

[5] The Committee criticizes the fact that EGI-TRB cited portions of the report related to the motivations of the Lenders at Step One, but each of those citations reflects that the Examiner found that in agreeing to Step One, the Lenders were not doing so to curry favor with Mr. Zell or based on any misconduct by Mr. Zell and EGI. (*See, e.g.*, Examiner's Report, Vol. II at 264, 281, 283, and Vol. I at 300.)

**B. The Committee and Aurelius' Belated "Reply" Brief Discussion of the Merits Of These Claims Are Incomplete and Misleading.**

In lieu of a full and fair adversarial presentation of whether the claims that the Examiner found unlikely to succeed are colorable and sufficiently beneficial to the Estate, Aurelius and the Committee take pot shots at certain claims and mischaracterizes portions of the Examiner's Report. As but a few examples:

- The Committee and Aurelius characterize Mr. Zell as the "architect" of a transaction in which fraud was committed (Comm. Reply Br. at 5; Joinder at 2), but ignore that Mr. Zell was across the table from those whom the Examiner concluded may have committed fraud.[6] If there was fraud, rather than being perpetrators, Mr. Zell and EGI-TRB would be victims.

- The Committee's only basis to claim Mr. Zell and EGI-TRB aided and abetted a breach of fiduciary duty by Tribune's officers and directors is to assert EGI-TRB "dangl[ed] significant financial incentives" to approve the LBO deal. (*E.g.*, Committee Compl. ¶¶127-29; Comm. Reply Br. at 12.) But, as the Examiner found, EGI-TRB actually negotiated to *reduce* the benefits that management would receive in the LBO compared to what was otherwise available under Tribune's then-existing change-of-control plans. (*See*, *e.g.*, Examiner's Report, Vol. I at 398-399 (citing sworn testimony and interviews of Thomas Whayne, Dennis FitzSimons, Nils Larsen, Chandler Bigelow, and Sam Zell).)

- Both the Committee and Aurelius quote the Examiner's statement that "with the benefit of more time, [the Examiner] would have further investigated the interactions between personnel at the Zell Group and Tribune's senior financial management in relation to the October 2007 projections and the senior financial management's interactions with the Zell Group and VRC." (*Id.*, Vol. II at 397.) But they simply ignore the Examiner's admonition that he was "not, by this caveat, casting a shadow of suspicion over the Zell Group personnel" and his conclusion that it was **"highly unlikely"** that the Zell Group aided and abetted at Step One and reasonably unlikely at Step Two. (*Id*. at 395, 397.) Additionally, the Committee also ignores that its aiding and abetting claim is not based on any alleged conduct by EGI-TRB or Mr. Zell related to financial projections in October 2007. (*E.g.*, Committee Compl. ¶¶118-131, 282; Comm. Reply Br. at 12; Joinder at 2.)

- The Committee and Aurelius argue that the Committee's preference claim has merit because the Examiner found it "unclear" whether a court would view satisfaction of the Exchangeable Note a preference. (*See* Comm. Reply Br. at 16; Joinder at 3.) But they

[6] Indeed, the Examiner found the fact that Mr. Zell "made an investment and wanted to proceed with the transaction . . . is a factor mitigating *against* a finding that the Tribune Entities perpetrated an intentional fraudulent transfer at Step Two." (Examiner's Report, Vol. II at 74-75 (emphasis added).) The Committee and Aurelius also ignore, as the Examiner recognized, EGI-TRB "lost a lot of money." (*Id.* at 338.)

ignore that the Examiner did not find it necessary to resolve that question because he found it **reasonably likely any preference claim would be defeated by an ordinary course defense**. (*See*, *e.g.*, Examiner's Report, Vol. II at 311-14.)

- The Committee contends that there is a basis to equitably recharacterize the Exchangeable Note EGI-TRB redeemed at Step Two into stock. (Comm. Reply Br. at 15-16.) But the Examiner found there was **no plausible basis** to equitably subordinate or disallow EGI-TRB's Notes. (Examiner's Report, Vol. II at 338-39.) And the Committee and Aurelius also ignore that the parties fully intended to enter into a transaction in which the EGI-TRB Notes were not equity because it would have jeopardized all the substantial benefits of a Subchapter S-Corp election if the Notes could be deemed equity.

The Committee also asserts that the "marginal expense" of pursuing claims, which the Examiner found unlikely to succeed, is limited because the claims relate to the LBO transaction, which it will otherwise litigate. (Comm. Reply Br. at 4.) But the purchase of the EGI-TRB Notes, stock and warrants, to which EGI-TRB contractually committed in April 2007 (before Mr. Zell was a member of the Tribune Board), and which caused the loss of EGI-TRB's $315 million investment, are unique transactions, unrelated to whether Tribune's officers or directors committed an intentional fraudulent transfer in December 2007. And Mr. Zell's conduct in negotiating EGI-TRB's side of the transaction through April 2007, at which time he and EGI-TRB were contractually committed to proceed with the LBO regardless of any change in Tribune's performance, also are unrelated to whether there was fraud when Tribune decided to proceed with Step Two in December 2007.

In touting the "potential benefits" of recovery against EGI-TRB, the Committee (at 13) and Aurelius (at 1) also ignore that EGI-TRB has no assets other than the Notes. Under all pending Plans of Reorganization, EGI-TRB stands to receive nothing from the Estate. Thus, even if the claims were successful, which the Examiner found is unlikely, any material judgment would not be collectible. *See In re Am.'s Hobby*, 223 B.R. at 285 (explaining that courts should consider probability of net recovery).

The Committee should not have derivative standing to spend millions of dollars of Estate funds prosecuting claims that the Examiner, after thorough investigation, found unlikely to succeed. It should confirm that it has not adjudicated the issue of whether these claims are colorable and would benefit the Estate.

* * *

EGI-TRB and Mr. Zell respectfully request that the Court confirm that nothing in its prior orders prevents EGI-TRB and Mr. Zell from challenging the committee's standing and to direct the parties to propose a process for resolution of that issue prior to permitting the lifting of the stay it imposed upon prosecution of these claims.

Because Mr. Zell, who serves as Chairman of the Debtor, and EGI-TRB necessarily incur reputational injury from the pendency of these claims and because nothing in the Court's prior orders establishes that these claims have merit, this Court should also direct the Committee to execute a tolling agreement with Mr. Zell and EGI-TRB (and the other Zell Defendants) to protect fully against any limitation defense with respect to these claims and direct that the claims be dismissed without prejudice upon execution of the same. Allowing the claims to remain pending creates the false impression that this Court found cause to disagree with the Examiner's determination that these claims are unlikely to succeed. Moreover, the Estate and Committee will incur no injury from the execution of a tolling agreement and a dismissal without prejudice.

**Conclusion**

WHEREFORE, for those reasons, Mr. Zell and EGI-TRB respectfully request that this Court (1) confirm that nothing in its prior orders forecloses EGI-TRB and Mr. Zell from challenging the Committee's standing to prosecute claims against Mr. Zell and EGI-TRB and (2) set a schedule for the resolution of that issue. Pending resolution of the standing issue, Mr. Zell

and EGI-TRB request that this Court authorize and/or direct the Committee to execute an appropriate tolling agreement and dismiss these claims without prejudice.

Respectfully submitted,

By: /s/ *Alan M. Root*

David W. Carickhoff (DE No. 3715)
Alan M. Root (DE No. 5427)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

and

David J. Bradford (admitted *pro hac vice)*
Catherine L. Steege (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice)*
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 840-7375

Co-Counsel for Samuel Zell and
EGI-TRB, LLC