# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, *et al.*,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF R.T. POLUMBUS IN SUPPORT OF MOTION OF CAPTION COLORADO, L.L.C. FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

I, R.T. Polumbus, hereby declare under penalty of perjury as follows:

1.   I am the President and Chief Executive Officer of Caption Colorado, L.L.C. ("Caption Colorado"). The facts stated herein are within my personal knowledge, whether

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Tribune Company (0355); 435 Production Company (8655); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH, Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxnet Publishing Company (4223); Publishers Forest Brook Productions, Inc. (2598); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, Inc. (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

acquired directly, or through my familiarity with Caption Colorado's books and records in my capacity as President and Chief Executive Officer. If called upon to testify to such facts I could and would testify competently thereto. Where my knowledge is based on information from others, I believe that information to be true.

2. I submit this Declaration in support of Caption Colorado's Motion For Allowance Of Administrative Expense Claim (the "Motion").

3. Caption Colorado and Tribune Company or its subsidiaries ("Tribune") are parties to that certain Agreement, dated as of January 3, 2000, for closed captioning services of live programming to certain television stations (the "Stations") owned and operated by Tribune (as amended, the "Captioning Agreement"). A copy of the Captioning Agreement is attached to the Motion as Exhibit A.

4. On December 8, 2008 (the "Petition Date") Tribune and certain of its affiliates (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. in the United States Bankruptcy Court for the District of Delaware.

5. Since the Petition Date, Caption Colorado has continued to provide the Stations with closed captioning services pursuant to the Captioning Agreement. The Debtors have timely paid for these post-petition services on an on-going basis since the Petition Date.

6. Caption Colorado did not receive written notice from either Tribune or any of the Stations at least ninety days prior to December 31, 2010 apprising Caption Colorado of Tribune's or any of the Stations' intent to terminate the Captioning Agreement at the end of the Initial Term (as that term is defined in the Captioning Agreement).

7. Accordingly, pursuant to its terms, the Captioning Agreement automatically renewed on October 1, 2010, and, at that time, the term of the Captioning Agreement was extended through December 31, 2011.

8. On December 22, 2010, John Irwin, Caption Colorado's Senior Vice President, Sales & Marketing, advised me that he had received a voicemail from Steven Charlier, Tribune's Senior Vice President, News & Operations, that suggested that the Debtors were not aware that the Captioning Agreement had automatically renewed.

9. On the same day, December 22, 2010, John Irwin sent an e-mail to Steven Charlier to make sure that he understood that the Captioning Agreement had automatically renewed approximately 80 days ago. I was copied on that e-mail. A copy of this e-mail is attached to the Motion as Exhibit B.

10. On December 23, 2010, representatives from Caption Colorado and Tribune held a telephonic conference call to discuss the matter. I was present on that call along with John Irwin and Kurt Suppes, Caption Colorado's Chief Financial Officer. Steven Charlier represented Tribune on that call.

11. During that call, Tribune alleged that it had sent a written notice to Caption Colorado apprising Caption Colorado of Tribune's intent to terminate the Captioning Agreement at the end of the Initial Term. In response, during the call, I requested that Tribune provide a copy or evidence of this alleged written notice and Mr. Charlier indicated that he would provide a copy of the alleged written notice.

12. On December 26, 2010, John Irwin received an e-mail from Steven Charlier notifying him that Tribune would no longer be using Caption Colorado's services after December 31, 2010, and claiming that Tribune had provided Caption Colorado with written

notice of its intent to terminate the Captioning Agreement on December 31, 2010. I was copied on that e-mail. A copy of this e-mail is attached to the Motion as Exhibit C.

13. On December 28, 2010, I sent a letter by registered mail to Steven Charlier at Tribune stating that notwithstanding the fact that the Captioning Agreement had legally been extended through December 31, 2011, Mr. Charlier had notified Caption Colorado to terminate services as of December 31, 2010, thereby causing Tribune and the Stations to breach the Captioning Agreement. The letter further stated that Caption Colorado would be terminating services as of December 31, 2010 pursuant to Mr. Charlier's instructions and that "Caption Colorado is ready, willing, and able to fulfill its contractual obligations and is ceasing captioning only to minimize the damages Tribune and/or the Stations will have to pay Caption Colorado." I directed Nikki Shedletsky, Caption Colorado's Director-Realtime Operations, to distribute this letter by e-mail the same day to all of the Stations impacted. A copy of the e-mail and the letter are attached to the Motion as Exhibit D.

14. On December 29, 2010 at 3:39 PM MST, John Irwin and I received an e-mail from Steven Charlier in which he referenced the December 28, 2010 letter and indicated that "Tribune Broadcasting accepts your offer to 'cease all captioning services to all Tribune stations as of 11:59 PM December 31, 2010.'" The e-mail also reasserted that Tribune had provided Caption Colorado with written notice of its intent to terminate the Captioning Agreement on December 31, 2010. A copy of this e-mail is attached to the Motion as Exhibit E.

15. After receiving the December 29, 2010 3:39 PM MST e-mail from Steven Charlier, at 4:44 PM MST on the same day, I sent a return e-mail to Steven Charlier clarifying that Caption Colorado did not offer to terminate services to all Tribune stations and reiterating the content of my December 28, 2010 letter to Mr. Charlier. This e-mail also confirmed to Mr.

Charlier that Caption Colorado had never received any form of written notice from Tribune or anyone else of Tribune's intent to terminate the Captioning Agreement on December 31, 2010, and again requested that Tribune provide a copy or evidence of the alleged written notice apprising Caption Colorado of Tribune's intent to terminate the Captioning Agreement on December 31, 2010. A copy of this e-mail is attached to the Motion as <u>Exhibit F</u>.

16. As of January 1, 2011, the Debtors have ceased accepting closed captioning services from Caption Colorado.

17. On January 7, 2011, I received an e-mail from Steven Charlier regarding the Captioning Agreement. Attached to that e-mail was an unsigned letter dated April 27, 2010, purportedly terminating the Captioning Agreement on December 31, 2010. In his e-mail to me, Steven Charlier represented that he had spoken "to [his] assistant at the time, and she assure[d] him] that she verified receipt of the letter by your company after she sent it." He did not indicate how the letter was sent, how receipt was verified, and with whom it was verified at Caption Colorado. A copy of this e-mail and attached unsigned letter are attached to the Motion as <u>Exhibit G</u>.

18. Neither I nor any of Caption Colorado's employees received the letter dated April 27, 2010 that was attached to Steven Charlier's e-mail of January 7, 2011. Neither I nor any of Caption Colorado's employees ever talked with anyone from Tribune verifying receipt of any such letter, nor did I or any of Caption Colorado's employees ever sign any receipt of certified or registered mail, nor any other type of acknowledgment of receipt of such letter.

19. During the period from January 1, 2011 to December 31, 2011, Caption Colorado expected to make $1,294,916 from the services to be provided pursuant to the Captioning Agreement. In addition, due to the extremely short notice from Tribune to terminate services

-6-

(i.e., e-mail from Steven Charlier to John Irwin dated December 26, 2010), Caption Colorado had to pay its captioners $18,533 for the compensation they lost when Caption Colorado was unable to replace the cancelled services on those captioners' January 2011 schedules. Tribune has not reimbursed Caption Colorado for this expense.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of January, 2011, at Greenwood Village, Colorado.

                                                                                                  R.T. Polumbus