```
                 IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE

IN RE:                         )     Chapter 11
                               )
                               )
TRIBUNE COMPANY, et al.,       )     Case No. 08-13141 (KJC)
                               )
                               )     Courtroom 5
                               )     824 Market Street
          Debtors.            )     Wilmington, Delaware
                               )
                               )     January 24, 2011
                               )     11:09 a.m.


                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE


TELEPHONIC APPEARANCES:

For Debtor:               Sidley Austin, LLP
                          BY:  JAMES BENDERNAGEL, ESQ.
                          BY:  KEVIN LANTRY, ESQ.
                          BY:  JAMES DUCAYET, ESQ.
                          BY:  JESSICA BOELTER, ESQ.
                          One South Dearborn
                          Chicago, IL  60603
                          (213) 896-6022


                          Cole, Schotz, Meisel, Forman &
                          Leonard, PA
                          BY:  NORMAN PERNICK, ESQ.
                          1000 North West Street
                          Suite 1200
                          Wilmington, DE  19801
                          (302) 652-3131


ECRO:                     AL LUGANO

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
 1   APPEARANCES:
     (Continued)
 2
     For The Creditors Committee:   Landis Rath & Cobb
 3                                  BY:  DANIEL B. RATH, ESQ.
                                    BY:  ADAM G. LANDIS, ESQ.
 4                                  919 Market Street Suite 1800
                                    P.O. Box 2087
 5                                  Wilmington, DE 19899
                                    (302) 467-4400
 6
                                    Chadbourne & Parke LLP
 7                                  BY:  DAVID LEMAY, ESQ.
                                    BY:  MARC ASHLEY, ESQ.
 8                                  BY:  HOWARD SEIDE, ESQ.
                                    BY:  THOMAS MCCORMACK, ESQ.
 9                                  30 Rockefeller Plaza
                                    New York, NY 10112
10                                  (212) 408-5100

11                                  Zuckerman Spaeder LLP
                                    BY:  JAMES SOTTILE, ESQ.
12                                  1800 M Street
                                    Suite 1000
13                                  Washington, DC 20036-5807
                                    (202) 778-1800
14
     For JP Morgan Chase:           Davis Polk & Wardwell
15                                  BY:  DONALD BERNSTEIN, ESQ.
                                    BY:  DAMIAN SCHAIBLE, ESQ.
16                                  450 Lexington Avenue
                                    New York, NY 10017
17                                  (212) 450-4000

18                                  Richards Layton & Finger
                                    BY:  ROBERT J. STEARN, JR., ESQ.
19                                  One Rodney King Square
                                    920 North King Street
20                                  Wilmington, DE 19801
                                    (302) 651-7612
21
                                    Wiley Rein, LLP
22                                  BY:  EVE REED, ESQ.
                                    BY:  JAMES R.W. BAYES, ESQ.
23                                  1776 K Street
                                    Washington, DC  20006
24                                  (202) 719-7404

25
```

```
 1   APPEARANCES:
     (Continued)
 2
     For Merrill Lynch:          Potter Anderson & Corroon LLP
 3                               BY: LAURIE SELBER SILVERSTEIN
                                 Hercules Plaza
 4                               1313 North Market Street
                                 6th Floor
 5                               Wilmington, DE 19801
                                 (302) 984-6000
 6
                                 Kaye Scholer, LLP
 7                               BY:  MADLYN GLEICH PRIMOFF, ESQ.
                                 BY:  JOSEPH DRAYTON, ESQ.
 8                               425 Park Avenue
                                 New York, NY  10022-3598
 9                               (212) 836-7042

10   For Wilmington Trust:       Sullivan Hazeltine & Allinson
                                 BY:  WILLIAM SULLIVAN, ESQ.
11                               4 East 8th Street, Suite 400
                                 Wilmington, DE 19801
12                               (302) 250-4357

13                               Brown Rudnick
                                 BY:  ROBERT STARK, ESQ.
14                               BY:  GORDON Z. NOVOD, ESQ.
                                 BY:  MARTIN SIEGEL, ESQ.
15                               Seven Times Square
                                 New York, NY 10036
16                               (212) 209-4800

17   For DBTCA:                  McCarter & English LLP
                                 BY:  DAVID ADLER, ESQ.
18                               BY:  KATHARINE MAYER, ESQ.
                                 245 Park Avenue
19                               27th Floor
                                 New York, NY 10167
20                               (212) 609-6800

21   For Barclays Bank:          Edwards Angell Palmer & Dodge
                                 BY:  R. CRAIG MARTIN, ESQ.
22                               919 North Market Street
                                 15th Floor
23                               Wilmington, DE 19801
                                 (302) 777-7770
24
                                 Latham & Watkins
25                               BY:  ROBERT ROSENBERG, ESQ.
                                 BY:  JASON SANJANA, ESQ.
                                 885 Third Avenue
                                 New York, NY  10022-4834
                                 (212) 906-1370
```

```
 1   APPEARANCES:
     (Continued)
 2
     For Aurelius Capital            Ashby & Geddes, P.A.
 3   Management LP:                  BY:  WILLIAM P. BOWDEN, ESQ.
                                     BY:  AMANDA M. WINFREE, ESQ.
 4                                   500 Delaware Avenue
                                     P.O. Box 1150
 5                                   Wilmington, DE 19899-1150
                                     (302) 654-1888
 6
                                     Akin Gump Strauss Hauer & Feld
 7                                   BY:  DANIEL H. GOLDEN, ESQ.
                                     BY:  DAVID M. ZENSKY, ESQ.
 8                                   BY:  PHILIP C. DUBLIN, ESQ.
                                     BY:  ABID QURESHI, ESQ.
 9                                   One Bryant Park
                                     New York, NY 10036
10                                   (212) 872-1000

11   For Credit Agreement           Young Conaway Stargatt & Taylor
     Lenders:                        BY:  BLAKE CLEARY, ESQ.
12                                   The Brandywine Building
                                     1000 West Street 17th Floor
13                                   P.O. Box 391
                                     Wilmington, DE 19801
14                                   (302) 571-6600

15                                   Hennigan Bennett & Dorman LLP
                                     BY:  JAMES O. JOHNSTON, ESQ.
16                                   BY:  JOSHUA M. MESTER, ESQ.
                                     865 South Figueroa
17                                   Suite 2900
                                     Los Angeles, CA 90017
18                                   (213) 694-1200

19   For Wells Fargo                 Fox Rothschild LLP
     As Bridge Agent:                BY:  ERIC SUTTY, ESQ.
20                                   Citizens Bank Center
                                     919 North Market Street
21                                   Suite 1300
                                     P.O. Box 2323
22                                   Wilmington, DE 19899-2323
                                     (302) 654-7444
23
                                     White & Case LLP
24                                   BY:  SCOTT GREISSMAN, ESQ.
                                     1155 Avenue of the Americas
25                                   New York, NY 10036-2787
                                     (212) 819-8200
```

```
 1   APPEARANCES:
     (Continued)
 2
     For Law Debenture:              Bifferato Gentilotti
 3                                   BY:  GARVAN F. MCDANIEL, ESQ.
                                     800 North King Street
 4                                   Plaza Level
                                     Wilmington, DE 19801
 5                                   (302) 429-1900

 6                                   Kasowitz Benson Torres &
                                     Friedman LLP
 7                                   BY:  SHERON KORPUS, ESQ.
                                     BY:  MATTHEW STEIN, ESQ.
 8                                   1633 Broadway
                                     New York, NY 10019
 9                                   (212) 506-1700

10   For SuttonBrook Capital
     Management, LP:                 Schulte Roth Zabel LLP
11                                   BY:  LAWRENCE GELBR, ESQ.
                                     919 Third Avenue
12                                   New York, NY  10022
                                     (212) 756-2460
13
                                     Klehr Harrison Harvey Branzburg
14                                   BY:  MICHAEL YURKEWICZ, ESQ.
                                     919 Market Street, Suite 1000
15                                   Wilmington, DE  19801-3062
                                     (302) 552-5519
16
     For Barclays Bank:              Edwards Angell Palmer Dodge
17                                   BY:  R. CRAIG MARTIN, ESQ.
                                     919 N. Market Street, 15th Floor
18                                   Wilmington, DE  19801-
                                     (302) 425-7139
19
     For Morgan Stanley:             Barnes & Thornburg
20                                   BY:  DAVID POWLEN, ESQ.
                                     1000 North West St., Suite 1200
21                                   Wilmington, DE  19801-1058
                                     (302)888-4536
22
     For EGI-TRB & Zell:             Jenner & Block
23                                   BY:  DAVID BRADFORD, ESQ.
                                     353 Clark Street
24                                   Chicago, IL  60654-3456
                                     (312) 923-2976
25
```

```
 1   TELEPHONIC APPEARANCES:

 2   For Debtor:                    Tribune Company
                                    BY:   DAVID ELDERSVELD
 3                                  BY:   DON LIEBENTRITT
                                    BY:   GARY WEITMAN
 4                                  BY:   MICHAEL D. O'NEAL
                                    (312) 853-7778
 5
                                    Sidley Austin
 6                                  BY:   JILLIAN LUDWIG, ESQ.
                                    BY:   CANDACE KLINE, ESQ.
 7                                  BY:   DAVID MILES, ESQ.
                                    BY:   BRIAN KRAKAUER, ESQ.
 8                                  BY:   GREG DEMO, ESQ.
                                    BY:   KEN KANSA, ESQ.
 9                                  BY:   ALLICON E. ROSS, ESQ.
                                    BY:   KERRIANN MILLS, ESQ.
10                                  (312) 853-7030

11   For Bank of America:           O'Melveny & Myers
                                    BY:   DANIEL CANTOR, ESQ.
12                                  (212) 326-2000
                                    BY:   DANIEL S. SHAMAH, ESQ.
13                                  (212) 326-2138

14                                  Bank of America
                                    BY:   ESTHER CHUNG
15                                  (646) 855-6705

16   For Wilmington Trust           Camden Asset Management
     Company:                       BY:   MARK HOLLIDAY
17                                  (503) 243-5000

18                                  Brown Rudnick, LLP
                                    BY:   JARED ELLIAS, ESQ.
19                                  (212)209-4889
                                    BY:   KATHERINE BROMBERG, ESQ.
20                                  BY:   ANDREW DASH, ESQ.
                                    (212)209-4929
21

22   For Angelo Gordon & Company:   Wilmer Cutler Pickering Hale &
                                    Dorr
23                                  BY:   ANDREW N. GOLDMAN, ESQ.
                                    (212) 230-8836
24
                                    Angelo Gordon & Co., LP
25                                  BY:   GAVIN BAIERA
                                    (212) 692-0217
```

```
 1   TELEPHONIC APPEARANCES:
     (Continued)
 2
     For EGI-TRB LLC:              Jenner & Block LLP
 3                                 BY:  ANDREW VAIL, ESQ.
                                   (312) 840-8688
 4
 5   For Citigroup:               Paul Weiss Rifkind Wharton &
                                  Garrison LLP
 6                                 BY:  ANDREW LEVY, ESQ.
                                   BY:  ANDREW GORDON, ESQ.
 7                                 BY:  OKSANA LASHKO, ESQ.
                                   BY:  SHANNON PENNOCK, ESQ.
 8                                 (212) 373-3543

 9   For Anna Kalenchits:         BY:  ANNA KALENCHITS
                                   (212) 723-1808
10

11   For JPMorgan Chase Bank:     BY:  KEVIN C. KELLEY
                                   (212) 648-0427
12
     For Barclays:                Mayer Brown LLP
13                                 BY:  MICHAEL L. SIMES, ESQ.
                                   BY:  AMIT K. TREHAN, ESQ.
14                                 BY:  JEAN-MARIE ATAMIAN, ESQ.
                                   (212) 506-2607
15
                                  Barclays Capital, Inc.
16                                 BY:  RICHARD DIVITO, ESQ.
                                   (212)412-6743
17
     For Kramer Levin:            BY:  DAVID E. BLABEY, JR., ESQ.
18                                 (212) 715-9100

19   For SuttonBrook Capital      BY:  CAROL L. BALE
     Management:                   (212) 588-6640
20

21   For David & Kempner:         DK Partners
                                   BY:  EPHRAIM DIAMOND
22                                 (646) 282-5841

23   For Aurelius Capital         Akin Gump Strauss Hauer & Feld
     Management:                   BY:  PHILLIP DUBLIN, ESQ.
24                                 BY:  JASON GOLDSMITH, ESQ.
                                   BY:  KRISTINA WESCH, ESQ.
25                                 (212) 872-1000
```

```
 1  TELEPHONIC APPEARANCES:
    (Continued)
 2
                                Aurelius Capital Management
 3                              BY:  MATTHEW ZLOTO, ESQ.
                                (646) 445-6518
 4
                                The Lerman Senter
 5                              BY:  SALLY A. BUCKMAN, ESQ.
                                (202)416-6762
 6
                                Friedman Kaplan Seller & Adelman
 7                              BY:  KIZZY L. JARASHOW, ESQ.
                                (212)833-1115
 8
 9  For Jefferies & Company:    BY:  JUSTIN BRASS
                                (203) 708-5847
10
11  For Oaktree Capital         BY:  EDGAR LEE
    Management:                 (213) 830-6415
12
    For Alvarez & Marsal Inc.:  BY:  BRIAN WHITTMAN
13                              (312) 601-4227
14  For Brigade Capital         Brigade Capital Management
    Management:                 BY:  NEIL S. LOSQUADRO, PRO SE
15                              (212) 745-9758
16  For George Dougherty:       BY:  GEORGE DOUGHERTY
                                (312) 719-8723
17
    For Great Bank Trust:       Morgan Lewis & Bockius LLP
18                              BY:  RACHEL MAUCERI, ESQ.
                                (215) 963-5000
19
    For Royal Bank of Scotland: BY:  COURTNEY ROGERS
20                              (203) 897-4815
21  For Dow Jones News Wires:   Dow Jones & Co.
                                BY:  PEG BRICKLEY
22                              (215) 462-0953
23  For Goldman Sachs & Co.:    BY:  SCOTT BYNUM
                                (212) 902-8060
24
    For EOS Partners:           BY:  MIKE J. SCHOTT
25                              (212) 593-4046
```

```
 1  TELEPHONIC APPEARANCES:
    (Continued)
 2
    For The Official Committee    Chadbourne & Parke LLP
 3  of Unsecured Creditors:       BY:   DOUGLAS DEUTSCH, ESQ.
                                  BY:   HOWARD SEIFE, ESQ.
 4                                BY:   DAVID LEMAY, ESQ.
                                  BY:   MARC ROITMAN, ESQ.
 5                                (212) 408-5169

 6  For Trade Claim Holders:      Andrew & Kurth LLP
                                  BY:   ABHISHEK MATHUR, ESQ.
 7                                BY:   JEREMY RECKMEYER, ESQ.
                                  BY:   PAUL SILVERSTEIN, ESQ.
 8                                (212) 850-2822

 9  For Katten Muchin Rosenman:   BY:   JOHN SIEGER, ESQ.
                                  BY:   ANDREW L. WOOL, ESQ.
10                                (312) 902-5294

11  For Deutsche Bank:            McCarter & English
                                  BY:   DAVID J. ADLER, ESQ.
12                                (212)609-6800

13
    Credit Agreement Lenders:     Hennigan Bennett & Dorman, LLP
14                                BY:   BRUCE BENNETT, ESQ.
                                  (213_ 694-1012
15
    For Moelis:                   DLA Piper US, LLP, New York
16                                BY:   JASON M. KARAFFA, ESQ.
                                  (212)335-4526
17
    For Special Committee of the
18  Board of Directors:           Jones Day
                                  BY:   BRAD ERENS, ESQ.
19                                BY:   LYNN MARVIN, ESQ.
                                  (312)269-4050
20
    For Wilmington Trust:
21  For Committee of
    Unsecured Creditors:          Zuckerman Spaeder, LLP
22                                BY:   GRAENE BUSH, ESQ.
                                  BY:   ANDREW GOLDFARB, ESQ.
23                                (2020 778-1800

24  For Michael D'Agostino:       Bingham McCutchen, LLP
                                  BY:   MICHAEL D'AGOSTINO, ESQ.
25                                (860) 240-2731
```

1

TELEPHONIC APPEARANCES:
2    (Continued)

3

For Citi Bank:                    Paul Weiss Rifkind Wharton &
4                                   Garrison, LLP
                                   BY:  KIRA DAVIS, ESQ.
5                                   (212) 373-3000

6    For Morgan Stanley:            Weil Gotshal & Manges, LLP
                                   BY:   ASHISH D. GANDHI, ESQ.
7                                   BY:   DAVID LITVACK, ESQ.
                                   (212)310-8024
8

For Debenture Trust Company:   Kasowitz Benson Torres &
9                                   Friedman
                                   BY:   DAVID ROSNER, ESQ.
10                                  (212)506-1726

11   For Wells Fargo:               White & Case, LLP
                                   BY:   SCOTT GREISSMAN, ESQ.
12                                  (212)819-8567

13

14

15

16

17

18

19

20

21

22

23

24

25

1   WILMINGTON, DELAWARE, MONDAY, JANUARY 24, 2011, 11:09 A.M.

2            THE CLERK:  All rise.  Be seated, please.

3            THE COURT:  Good morning, everyone.

4            ALL:  Good morning, Your Honor.

5            MR. PERNICK:  Your Honor, Norman Pernick from

6   Cole Schotz on behalf of the debtor, Tribune.

7            Your Honor, we have three groups of motions that

8   are on for today.  Standing which is Number 1, the

9   committees' motion to confirm standing.  Then Numbers 2

10  through 5 which are the various estimation motions.  And

11  then Numbers 6 through 12 which all relate to discovery.

12           Your Honor, let me just jump to 6 through 12 for

13  a moment because Number 9 is resolved.  And that is the

14  noteholder plan proponents motion to compel.  Number 11 was

15  actually most, just mostly resolved which is Law Debenture's

16  motion to compel vs. Angelo Gordon, Oaktree, and Hennigan

17  Bennett.  That's resolved except for the FCC and the start

18  date issues.  And I understand on Item Number 8 which is Law

19  Debenture's motion to compel vs. the non-proponent credit

20  agreement letters, that that one is close to resolved, but

21  not resolved yet.

22           THE COURT:  Well, except for those matters that

23  are unresolved or in which the parties may wish some further

24  guidance or on which the Court is required to make a ruling,

25

1  would it make any sense to take a recess now or to permit

2  those parties who are involved in those issues to excuse

3  themselves and continue talking or something else?

4         MR. PERNICK:  I think it might make sense to

5  start with Number 1, but let me just check with Mr. Bennett

6  on Number 8 because, Your Honor, he's the one who's sort of

7  leading that discussion.

8         THE COURT:  All right.

9         MR. PERNICK:  Oh, sorry, Mr. Johnson, I

10  apologize.

11                      (Laughter)

12         MR. PERNICK:  Your could be Mr. Bennett today.

13                      (Laughter)

14

15         MR. JOHNSON:  Your Honor, on Number 8, I think we

16  are close, but I'm confident that there will be enough

17  breaks in this hearing before we get to that matter that

18  we'll be able to resolve it in the --

19         THE COURT:  How long do you think we're going

20  today?

21                      (Laughter)

22

23         MR. JOHNSON: I budgeted for the worst, Your Honor

24  and booked a hotel room.  Hopefully, we won't stay that

25  long, but --

                        (Laughter)

1      MR. JOHNSON:  -- I do think that we should begin

2 with the rest of the proceedings and we'll get that resolved

3 to the extent we can at lunch or some other time.

4      THE COURT:  All right, well --

5      MR. JOHNSON:  Thank you.

6      THE COURT:  Okay, thank you.

7      MR. PERNICK:  And Your Honor, just one other

8 thing on Item Numbers 6 through 12 on discovery.  The

9 parties actually discussed and suggest to the Court that we

10 proceed a little bit out of agenda order on those.

11      THE COURT:  Well, I have a line up, too, but let

12 me hear yours first.

13

14      MR. PERNICK:  Your Honor, just like picking the

15 games yesterday. I'm not sure.  Hopefully, I'm more

16 successful.

17                    (Laughter)

18      THE COURT:  Did anyone really think the Jets were

19 going to win?

20                    (Laughter)

21      MR. PERNICK:  I haven't found anybody, Your

22 Honor.  Nobody that will admit it.

23      Now that Number 9 is resolved, we were going to

24 suggest that that go first.  So Number 12 was the next, then

25 Number 6, then Number 11, but those issues as I understand

1    it are involved in the motions before Number 11.  Item

2    Number 8 would go next if it's not resolved.  Then Item

3    Number 10, then Item Number 7.  But obviously, that's just a

4    suggestion to the Court.

5              THE COURT:  Well, pretty close.  Here's what I

6    had.  I hadn't really counted 9 because it was resolved.

7              MR. PERNICK:  Um-hum.

8              THE COURT:  But, I, too, thought we should start

9    with Number 12.  Then I thought maybe Number 7 next.  Then I

10   had 8 and 11 together and then 6 and then 10.  But it's

11   close enough that if the parties wish to proceed in that

12   manner, I'm content to do that.

13

14             MR. PERNICK:  Okay, thank you, Your Honor.

15             THE COURT:  Okay.

16             MR. PERNICK:  We'll proceed with Item Number 1

17   which is the committee's motion on standing.

18             THE COURT:  All right.

19             MR. KORPUS:  Your Honor, if I may just interrupt.

20   Sheron Korpus of Kasowitz Benson for Law Debenture.

21             With respect to Number 11 which is mostly

22   resolved, in addition to the FCC issue and the time period

23   issue which will be raised as part of the global motion

24   today, there is an additional issue that the parties are

25   still talking about and probably will not resolve today, but

1  may resolve over the next few days.  So I would ask that

2  that motion be continued to the next day and Mr. Johnson

3  agreed with that.

4          THE COURT:  And that's Number 11?

5          MR. KORPUS:  Yes, sir.

6          THE COURT:  February 8?

7          MR. JOHNSON:  Thank you, Your Honor.

8          MR. KORPUS:  That's fine.  Thank you, Your Honor.

9          THE COURT:  Okay.  That's at 1:00 in the

10  afternoon.  Okay.  So back to Number 1.

11          MR. SOTTILI:  Good morning, Your Honor.  James

12  Sottili of Zuckerman Spaeder, special counsel to the

13  official committee of unsecured creditors.

14

15          We're here again on the committees' motion to

16  confirm standing which the Court granted at the last hearing

17  on it with respect to all claims other than those involving

18  Mr. Zell and related entities EGI, TRB, and EGI.

19          Your Honor, even thick headed lawyers as like me

20  know when they've been hit on the head as I think the Court

21  did in sending us the *Sentar* [ph] decision for review on

22  Friday.

23          THE COURT:  Well I didn't intend it to be quite

24  that violent.

25                    (Laughter)

1          MR. SOTTILI:  Well, perhaps it will stimulate our

2    response to the Court's concerns.  It appeared to me, Your

3    Honor, that the Court was likely focused on the cost benefit

4    part of the *Sentar* decision.  But before I launch into a

5    discussion of that, I did want to ask whether or not the

6    Court had thoughts about the motion and its concerns that

7    might guide is in presenting argument.

8          THE COURT:  I do.

9          MR. SOTTILI:  I would welcome hearing it, Your

10   Honor.

11         THE COURT:  And let me ask your opposing counsel

12   to come up to the podium as well.  I asked you to -- good

13   morning.

14

15         MR. BRADFORD:  Good morning, Your Honor.  David

16   Bradford of Jenner & Block on behalf of EGI, TRB, and Mr.

17   Zell.  Thank you, Your Honor.

18         THE COURT:  I asked you to read *Sentar* mostly for

19   this to be -- to give you the specifics on where I stood

20   with the standard to be applied.  So I thought of at least

21   three things to which you might agree if you wanted to and

22   if you choose not to, I'll decide where we go from there.

23   And I have an idea about that as well.

24                         (Laughter)

25

1          THE COURT: There was discussion at the earlier

2    hearing about entering into a tolling agreement.

3    Apparently, that's not good for the committee or the

4    committee thinks pretty much moot because the complaint's

5    been filed.

6          Secondly, in light of the committee's position

7    that I've already authorized this anyway, you're free to

8    withdraw your motion, the balance of it without prejudice of

9    course, if you wish.

10          But three, understanding that in undertaking the

11   exercise anew, I would be applying a motion to dismiss

12   standard on the colorability of the claims.  You could enter

13   into an agreement that says whatever order I enter now is

14   without prejudice to the defendants to bring their motion to

15   dismiss.  If you can't agree to any one of those things or

16   something like it, what we will do is set a separate hearing

17   date to have a hearing on the committees' motion if it

18   thinks it needs an order saying specifically that these

19   claims are included and that the committee has standing to

20   bring them.  But my thought is that if we go through that

21   hearing and I decide that the committee does have standing

22   to bring these claims, you've effectively used up your right

23   to file a motion to dismiss when the adversary gets going.

24   So the Zell parties here have a choice to make about that.

25

1        And if counsel wants some time to think about that as

2   I move along to other matters, you're welcome to take that

3   time.

4            MR. SOTTILI:  Your Honor, I think it would most

5   helpful to the parties if we could take some time to reflect

6   on what the Court's told us.

7            THE COURT:  Okay.

8            MR. BRADFORD:  Very good, Your Honor, thank you.

9            THE COURT:  Any questions?

10           MR. BRADFORD:  No, Your Honor.

11           THE COURT:  All right.

12           MR. SOTTILI:  No, thank you, Your Honor.

13           THE COURT:  All right, let's move to the next

14  set.  I understand from -- I'm sorry, introduce yourself,

15  Counsel.

16           MR. NOVOD:  Oh yes, of course, Gordon Novod of

17  the law firm of Brown Rudnick, Your Honor on behalf of

18  Wilmington Trust Company.

19           THE COURT:  Okay.

20           MR. NOVOD:  As successor and for trustee to the

21  phones.

22           THE COURT:  All right.  I understand, I had asked

23  my courtroom deputy to be in touch with debtors' counsel

24  this morning to ask at the latest where things stood.  I was

25

1  told that with respect to the two Wilmington Trust motions

2  that there had been discussions, but the parties had reached

3  no resolution.  Is that still the case?

4          MR. NOVOD:  Your Honor, there had been

5  discussions concerning the 3018 motion.  That is still the

6  case, Your Honor, however, those discussions did not

7  progress and my partner, Robert Stark who handed that

8  particular motion, I rise to handle the 3013 motion and

9  there have been no discussions with the debtor concerning

10  that motion.

11          THE COURT:  Okay.  You may proceed.

12          MR. NOVOD:  Thank you, Your Honor.  Again for the

13  record, Gordon Novod of the law firm of Brown Rudnick.

14          I rise, Your Honor, to actually follow up

15  something that we had talked previously with the Court on

16  December 15 concerning.  And that is the estimation

17  treatment of the PHONES claims for plan purposes.  We had

18  filed the motion on December 30, 2010, seeking Court

19  adjudication of two things.  One is the amount of the PHONES

20  debt.  And B, the classification of such debt for Rule 3013

21  purposes.

22          Now, Your Honor, I'm happy to provide a brief

23  background to the facts which were set forth in our motion

24  if that would be helpful.

25

1          THE COURT:  I've read the papers.

2          MR. NOVOD:  Okay, thank you, Your Honor.  As Your

3    Honor is certainly aware then --

4          THE COURT:  And my law clerk has read the papers.

5          MR. NOVOD:  Excellent.

6          THE COURT:  The intern has read the papers.

7          MR. NOVOD:  Okay.  So there's a material dispute

8    here as to whether or not the PHONES are and the PHONES

9    claim, I should say is $760 million give or take a little

10   bit or $1.2 billion.

11

12         Now, Your Honor, has seen two different pleadings

13   filed by holders of the PHONES.  One filed by SuttonBrook

14   who is the camp that says the PHONES should be allowed at a

15   lessor amount.  And the other is by Barclays and Waterstone

16   that say the PHONES amount should be allowed in the larger

17   amount.

18         THE COURT:  Now in the responses characterized

19   Wilmington Trust's position slightly differently, but I

20   think I guess maybe a fair way to state, you just stated,

21   you can correct me if I'm wrong, is that Wilmington is not

22   taking a definitive position about how the claim should be

23   estimated or classified.  The debtor says look, you know, we

24   don't need to worry about classification now that's a

25   confirmation issue, but as far as we're concerned, they can

1  go to the full amount in which the proof of claim was filed.

2  We're okay with that.

3  　　　　You know the classification issue well, at least

4  from my standpoint and from the papers I think clearly said

5  is the more difficult one.  And it raises some intriguing

6  questions, you know, and it's, you know, does the exchange

7  need to be completed before the rights are locked in or once

8  there's notice and tender is that sufficient to fix rights

9  for this purpose anyway?

10  　　　　The more interesting question might be and the

11  parties I don't think raise it and I don't mean to inject an

12  issue that the parties haven't raised, especially in this

13  case.  But whether, you know, noteholders of the same class

14  

15  can be accorded different treatment.

16  　　　　MR. NOVOD:  Right.

17  　　　　THE COURT:  And there may be more issues out

18  there.

19  　　　　MR. NOVOD:  Well to answer your first question

20  concerning the position of Wilmington Trust, it's simply

21  that Wilmington Trust does not take a position with respect

22  to the motion.  We have noteholders on both sides of the

23  dispute and, therefore, we're unable to do so.  However, it

24  should be noted at least for the record that Wilmington did

25  trial -- file, excuse me, a proof of claim in the full

1  amount of the PHONES at $1.2 billion so as to preserve all

2  rights so that when this issue is ultimately heard such as a

3  day like today, there wouldn't be any prejudice to the

4  position.

5         That being said, Your Honor, I think what you're

6  asking as well is well why does this really matter?  And why

7  does it matter now?  And how does it affect the holders of

8  the PHONES?  And I think there are three different reasons

9  or at least four different reasons that I think of at first.

10 The first is really class voting.  And the status of where

11 these phone actually -- well, I should take a step back.

12 The question is really were the tendering holders, those are

13 the people who the week or two before the debtors filed for

14 bankruptcy attempted to exchange their PHONES and had them,

15 you know, reduced in a claim dollar amount according to the

16 debtors at least.  And the question is whether those are

17 appropriately voted in the PHONES claim class or whether

18 they belong in some other class.

19        THE COURT:  Well, the debtor says they haven't

20 taken that position yet, but they probably will.

21        MR. NOVOD:  Right, well the debtors --

22        THE COURT:  As I read the pleading.

23        MR. NOVOD:  Right.  And the debtors first plan

24 that they put forth back in April and even the plan that

1   they put forth until the very disclosure statement hearing

2   sort of decided the issue that the dollar amount was

3   reduced.  Now the debtors say they don't really need to

4   handle it, but in practice, Your Honor, if you think about a

5   plan reserves, if you think about initial distributions and

6   what pay over needs to be required to be paid to senior

7   holders who are entitled to enforce the terms of the PHONES

8   indenture, those issues go materially to whether this issue

9   can be decided and how it's decided.

10

11          And the last thing, Your Honor, is Your Honor is

12  going to be aware or at least they certainly were already,

13  but the reasonableness of the debtors' committee LBO lender

14  plan that they put forth is very much of an issue that we'll

15  be hearing about in a few short -- well I shouldn't say a

16  few short weeks, in a month and a half or so time.  And this

17  issue will play into that because Your Honor's going to be

18  asked to considered the reasonableness of that settlement.

19  And --

20          THE COURT:  You know, look, everything this

21  connected here.  And I will tend -- I'll tell you, I'll tend

22  to think that the positions that have been expressed that

23  say this really is a confirmation issue I tend to agree

24  with.  Now, you know, from a Trial Court standpoint, there

25  is sometimes a benefit to addressing issues before the main

1    event to further define and tailor and make more efficient

2    the process.  But I will tell you, to do so in this case and

3    I don't mean to overstate it, but to make the point, it

4    would be like death by a thousand cuts.  You know, I think

5    my inclination would be if the parties don't come together,

6    you know, if they don't have that kumbaya moment before

7    confirmation just to address it all then and there.

8            MR. NOVOD:  Well, Your Honor, I certainly respect

9    your views on the topic.  Part of the reason is you remember

10   from the December 15 hearing that we thought this was going

11   to be useful to discuss is we actually had separately

12   represented bond holders to come to Court today to say we're

13   prepared to argue this motion.  And as Your Honor is aware,

14   you've given us a week of Court time --

15           THE COURT:  Oh, I'll hear the arguments.

16           MR. NOVOD:  Okay.  Your Honor, I'm happy to turn

17   it over now to, you know, to the actual holders who've come

18   today to argue each side.

19           THE COURT:  All right.

20           MR. NOVOD:  Thank you, Your Honor.

21           THE COURT:  Thank you.  I'll follow down the

22   agenda, Sutton Brook Capital.

23           MR. GELBER:  Good morning, Your Honor.  Lawrence

24   Gelber of Schulte, Roth & Zabel for Sutton Brook Capital.

25

1            As counsel for Wilmington Trust noted, Sutton

2    Brook did file a response to the Wilmington Trust motion.

3    We do believe that the matter is ripe to be decided now for

4    the same reasons that the indenture trustee believes.  Our

5    client wants to be in a position to know if and when it is

6    involved in any plan negotiations or discussions just

7    exactly what it is that it's discussing and exactly what it

8    is that it's negotiating.  And without knowing the

9    denominator of the claims in the PHONES class, it becomes

10   difficult for our client who is a holder of approximately 4-

11   40 percent of all the PHONES to know exactly what it is that

12   they're talking to other people about.

13            THE COURT:  Actually, that's usually a major

14   incentive to make a resolution.

15

16            MR. GELBER:  Exactly.

17            THE COURT:  So that argument cuts both ways, I

18   think.

19            MR. GELBER:  Understood, Your Honor.  As we

20   pointed out in our papers, we do believe that the -- I think

21   they're called the exchange note claims in some of the other

22   papers should be allowed in the amount of the exchange price

23   or approximately $56 million.  Sutton Brook's view is that

24   the exchanging holders did everything that they needed to do

25   to -- on their side of the transaction.  They issued their

1 notice or they instructed their prime brokers to issue a

2 notice.  The PHONES were DWAC'd at DTC.  DWAC is the deposit

3 withdraw at custodian.  And as Deutsche Bank pointed out in

4 their papers, as soon as the DWAC is issued, the DTC reduces

5 the number of PHONES on its register and credits or debits

6 the issuer.  That's the way DWAC generally works.

7           THE COURT:  And it cancels them.

8           MR. GELBER:  I don't know that it necessarily

9 cancels them, it does reduce the certificate amount.  And

10 since they're held in a non-certificated form, it reduces

11 the book entry amount on DTC system.  I don't know if

12 cancellation is the proper precise term or not.

13           THE COURT:  Okay.  It was the word that was used

14 throughout some of the --

15           MR. GELBER:  I believe people were talking about

16 the indenture, the former indenture trustee having cancelled

17 the notes.  What I'm referring to is the actual DWAC system

18 where DTC itself upon receipt of a DWAC instruction reduces

19 the face amount of the notes on its register, you know, on

20 the book entry that it maintains for that particular issue.

21           THE COURT:  Um-hum.

22           MR. GELBER:  And so as I said, we believe that

23 the exercising holders or the tendering holders did

24 everything they needed to do.  They issued the instruction.

25

1    The notes were DWAC'd through DTC.  Upon the issuance of the

2    DWAC notice, the DTC reduced the face amount of the

3    certificates.  It's similar to a sale of goods, Your Honor.

4    Some -- you have two sides of the contract.  I'm going to

5    sell your widgets and you're going to pay me a price.  Their

6    sale of the widgets they did.  They did everything they

7    needed to do.  They delivered the widgets.  That was the

8    exchange and there was a failure to pay the purchase price.

9    The claim in the context of a failure to pay the purchase

10   price would be for the -- damages claim for that purchase

11   price, contract claim, contract damages.

12

13        THE COURT:  Well, yet you also argue that these

14   are securities and therefore the exchange claim holders

15   should be subordinated.

16        MR. GELBER:  That is correct, Your Honor.  We do

17   believe that the note -- they are -- they fall within the

18   ambit of 510(b).

19        THE COURT:  All right.  So was it a sale of goods

20   or a sale of --

21        MR. GELBER:  Oh, no, I was making an analogy.  I

22   was not saying --

23        THE COURT:  I know you were and what I'm

24   suggesting is --

25

1          MR. GELBER:   -- that this was an actual sale of

2     goods.

3          THE COURT:   -- that maybe it wasn't such a good

4     one.

5          MR. GELBER:   Understood.

6                    (Laughter)

7          MR. GELBER:   And as Your Honor points out, we do

8     believe that they should be subordinated.   They are

9     securities.   We're talking about notes.   510(b) says the

10    Court shall subordinate a claim for damages arising from the

11    purchase or sale of a security.   The PHONES are securities.

12    The exchanged acted as a sale of the security back to the

13    debtor.

14         Unfortunately, the code doesn't define what a

15    sale is, but if you look at Black's it says it's a transfer

16    of an interest in property for a price.   And then if you

17    look at the code, the code does say what a transfer is and

18    that's any direct or indirect mode of disposing of an

19    interest in property.

20         And by tendering the notes, going through the

21    exchange process, the PHONES holders, the exchanging PHONES

22    holders did transfer their interest in the property back to

23    the debtor.   They didn't receive their price.   So we have a

24    security, we have a sale, and then you get the damages.

1          Again, looking at the damages in this context,

2    their damages are what they were not paid.  They were

3    supposed to be paid approximately $56 million based on the

4    formula in the PHONES indentures and the exchange

5    procedures.  They were not paid the $56 million, therefore,

6    their claim is for that $56 million.  That is their contract

7    damages.

8          So going back to 510(b), you have damages arising

9    from a purchase or sale of a security, arising from a

10   purchase or sale of a security.  We think 510(b) is

11   mandatory -- well, we know 510(b) is mandatory because it

12   says shall.  We think this transaction falls within the

13   precise language, the plain language of Section 501(b) and

14   that the claim should be allowed in the $56 amount, the

15   exchange price amount and should be subordinated under

16   501(b).

17        THE COURT:  Thank you.

18        MR. GELBER:  Thank you, Your Honor.

19        THE COURT:  Barclays Bank, PLC, and Waterstone.

20        MR. ROSENBERG:  Good morning, Your Honor.  Robert

21   Rosenberg of Latham & Watkins on behalf of Barclays Bank and

22   Waterstone.  And Your Honor did enter a pro hac order the

23   other day for which I thank you.

24        THE COURT:  You're welcome.

25

1          MR. ROSENBERG:   Your Honor, Barclays and

2    Waterstone hold approximately $70 million of face amount of

3    the PHONES and obviously are interested in the resolution

4    here.  We also agree, probably the only thing we agree with

5    of the other parties that the matter should be decided now.

6    And frankly, Your Honor, that's partially for selfish

7    reasons.  It is very unlikely that the PHONES are going to

8    see a significant recovery here, if any recovery at all.

9    And spending the time, effort, and money to sit through and

10   participate in a confirmation hearing when we were brought

11   here today by Wilmington Trust is not a very efficient use

12   of our time.  But I understand that doesn't address the

13   Court's concerns, but it is a fact.

14

15          Your Honor, needless to say, we do disagree with

16   the position that was just stated.  At least in the case of

17   these notes, the Waterstone and Barclays notes, they were

18   tendered the day before the petition was filed.  Under the

19   terms of the documents, the price let alone the process

20   would not be established for a ten day period following that

21   tender.  So, in fact, not much has happened yet.

22          The indenture and the notes are not overly

23   helpful in terms of answering the question before the Court.

24   No provisions that I could find addressed the issue very

25   directly.  However, the exchange notice does do so.  First

1    of all, the exchange notice which is Exhibit C to the

2    Wilmington Trust motion specifically provides that it

3    supersedes and replaces the procedures set forth in the

4    PHONES which is defined as the notes themselves.  So this is

5    the controlling document and all parties treated it as such.

6    The document, this document specifically provides that the

7    trustee will cancel the tendered PHONES in the trustee's

8    possession -- I have an incomplete copy here, I'm sorry,

9    Your Honor.

10           Let's go to the other provision, Section 3.  The

11   PHONES get withdrawn upon the tender and the trustee is

12   hereby instructed to cancel the PHONES upon confirmation of

13   the exchange.  And Deutsche Bank filed a very helpful

14   pleading to indicate that that's exactly what it would have

15   done and not that it had already cancelled the notes

16   contrary to these provisions.  Wilmington Trust says that it

17   reduced the PHONES upon notice which is what it was supposed

18   to do and they would not have been cancelled until

19   confirmation of the transaction.

20           So this is not a situation per the documents

21   themselves where upon the tender some have title transfer

22   and rights were given up and then you're left with an

23   unsecured claim for what you were supposed to get on the

24   redemption or something to that effect.  The notes were not

25

1 cancelled pursuant to the specific terms of the exchange

2 documentation.

3          So what you have is simply an unconsummated

4 transaction and the ability, therefore, to go back to the

5 original notes because, in fact, nothing happened.

6          With respect to the 510(b) claim, I would point

7 out, Your Honor, as prior counsel suggested that it is

8 claims for damages from the purchase or sale of a security

9 which might be subordinated.  This is not a claim for

10 damages.  This is a claim for the face amount of the

11 security.  510 is designed to reinstate priorities that

12 people bargained for when the securities were issued and not

13 say well, I sold the security and, therefore, I have a

14 higher claim that what the security itself provides for.

15 The case law is clear is that if all you're doing is

16 asserting your right to your claim under the security, that

17 is not a 501(b) situation.

18

19          So, Your Honor, bottom line between documentation

20 which admittedly is less than clear, but clarified very

21 dramatically and specifically in a superseding way, by the

22 exchange notice itself, these notes were not cancelled.  The

23 transaction is void because it never occurred and you're

24 simply left with a claim under the original notes not

25 subordinated under Section 510(b).  Thank you.

1          THE COURT:  Thank you.

2          MR. NOVOD:  Your Honor, again for the record,

3     Gordon Novod of Brown Rudnick for Wilmington Trust.

4          Just one matter of clarification.  I know Mr.

5     Rosenberg probably didn't intend to do so, but the indenture

6     trustee fully believes that the PHONES will be in the money

7     and will have substantial claims here.  And in no way should

8     Mr. Rosenberg's opinion that was expressed that the PHONES

9     are, you know, deeply subordinated and out of the money

10    should that in any way bear on Wilmington Trust's rights

11    here, Your Honor, as we fully believe that the PHONES are

12    going to be in the money as things will be resolved in

13    March.  Thank you, Your Honor.

14

15         THE COURT:  Thank you.

16         MR. ROSENBERG:  Your Honor, I'm more than happy

17    to adopt that position.

18                        (Laughter)

19         THE COURT:  I'll hear from the debtor.

20         MR. LANTRY:  Good morning, Your Honor.  Kevin

21    Lantry on behalf of the debtors.

22         Your Honor, I think this last issue is probably

23    the heart of it.  If $400 million could be in the money and

24    people care about it, it probably deserves a more thoughtful

25    adjudication than what we're trying to do here today.  We

1    feel procedurally that there's been no objection to a claim.

2    And we're not sure that all parties have been noticed.  As I

3    think David LeMay will indicate in a moment, this could

4    impact other general unsecured creditors at the parent

5    company.

6                And so we feel that the position that at least

7    two of the interested parties have taken only ten days ago

8    when, in fact, Wilmington Trust filed the motion that says

9    we really don't take a position on this, has some procedural

10   flaws.  And so again, the debtors are more interested in

11   this being thoughtfully adjudicated rather than anything

12   else.

13

14               And so we simply pause by saying we got here in a

15   funny way procedurally and we're not sure that all parties

16   are adequately represented today by virtue of either the

17   notice or, you know, just the timing how we got here.

18               And so by virtue of that we, I think, appreciate

19   your tentative that probably now isn't the right time and we

20   think that confirmation probably is.  That would certainly

21   allow the parties a little more time to dialogue about this

22   between now and then.  Thank you, Your Honor.

23               THE COURT:  For whatever use that will be.  Thank

24   you.  I'll hear from the committee.

25

1          MR. LEMAY:  Your Honor, good morning.  David

2     LeMay from Chadbourne & Parke for the official committee of

3     unsecured creditors.

4          I actually had not really intended to add much to

5     this, but since I was advertised as about to appear, I will

6     say a word or two.  Mr. Lantry is right that this issue

7     which on first blush seems to be quite a parochial issue

8     between the current holders of the PHONES and those who

9     tendered actually does have broader implications.  Inasmuch

10    as for example the quantum of the PHONES will bear upon the

11    issue of how much of the PHONES notional or nominal recovery

12    gets turned over to the bond holders.

13

14          Mr. Lantry made the point that the motion came in

15    a funny procedural manner and he's right about that in the

16    sense that Wilmington Trust filed its motion not really

17    setting forth arguments pro or con and they were very candid

18    about why they were not and that's fine.  But fundamentally

19    what happened is that the substantive arguments on each side

20    of this quarrel came in on the objection deadline.

21          So unlike the usual setting where you'd have oh,

22    I suppose Sutton Book making a motion and then Mr.

23    Rosenberg's client objecting to that motion and other people

24    have a chance to join in, no one got the sort of substance

25    on either side until the objection deadline at which point

1  it was too late for anyone else be it a bondholder, the

2  committee, or an individual creditor to weigh in.

3          So I think that all argues in favor of Mr.

4  Lantry's suggestion that now may not be the time.  And

5  that's really all I've got to say on this one, Your Honor,

6  unless the Court has questions.

7          THE COURT:  I do not.

8          MR. LEMAY:  Thank you.

9          THE COURT:  All right.  I think that covers

10 everyone who's filed a pleading in connection with this

11 particular motion.  I think what I'm going to do is at some

12 point we'll take a break and I'll make my rulings after a

13 break.  Let's move onto the Number 3.

14

15          MR. STARK:  Good morning, Your Honor.

16          THE COURT:  Good morning.

17          MR. STARK:  Robert Stark from Brown Rudnick also

18 appearing on behalf of Wilmington Trust, the successor

19 indenture trustee for the PHONES.

20          If I may and I'm co-opting other people's

21 motions, it might be useful to consider Agenda Items 3, 4,

22 and 5 together presuming that Deutsche Bank and Law

23 Debenture are in agreement with that since they all

24 essentially say the same thing.

25          THE COURT:  Let me get my original score card.

1          MR. STARK:  I have another if Your Honor would

2    like.

3          THE COURT:  Just a moment.  That's fine with me.

4    How do other parties feel?

5          MR. ADLER:  Acceptable to Deutsche Bank, Your

6    Honor.

7          MR. LANTRY:  Your Honor, there is a fundamental

8    distinction on the Wilmington Trust.  I don't think we

9    dispute about classification, we dispute the amount.  On the

10   other two, we dispute the classification issue.  In fact, I

11   think that's the central point.  So they are

12   distinguishable.

13

14         THE COURT:  Let's take them in order.

15         MR. STARK:  Okay.  All right.  The Wilmington

16   Trust motion, Your Honor is under 3018.  Allowance of the

17   indenture trustee's claims itself is separate and distinct

18   from the underlying notes, the PHONES notes themselves.  And

19   we request Your Honor's entry of an order that enables

20   Wilmington Trust to vote as a creditor of the estate

21   pursuant to other provisions of indenture that are separate

22   and distinct from the rights of the noteholders themselves

23   and are frankly unsubordinated.

24

25         If I may, Your Honor, very quickly walk through

     the indenture.  It's attached to the motion papers.  If Your

1  Honor would like to follow along, otherwise I can just

2  summarize what the provisions are that are applicable.

3            THE COURT:  Summarize them, that will be fine.

4            MR. STARK:  6.07 on Page 39 of the PHONES

5  indenture provides that in addition to obligations that the

6  debtors have vis-a-vis the PHONES noteholders and the

7  underlying security, the debtors are also contractually

8  obligated to pay Wilmington Trust, its successor indenture

9  trustee for its reasonable fees and professional expenses,

10  as well as, other expenses that are incurred in connection

11  with protecting the interest of the PHONES noteholders

12  themselves.  Those are separate and distinct from the actual

13  principal and interest obligations on the underlying notes.

14  14.01 --

15

16            THE COURT:  And the debtor has said we'll amend

17  the plan to put in parallel language.

18            MR. STARK:  Okay.  We --

19            THE COURT:  Allowing reasonable fees.

20            MR. STARK:  I understand.  And, Your Honor, we

21  can walk through all the objections and see what's

22  effectively pertinent in this stage or not.

23            THE COURT:  Okay.

24            MR. STARK:  14.01 on Page 61 of the indenture is

25  the subordination language so Article 14 is the

1    subordination article.  And 14.01 is the primary applicable

2    subordination provision and refers only to the securities

3    capital S securities defined term as the obligation of the

4    indenture which are subordinated to senior indebtedness

5    creating the contractual subordination provisions.  And if

6    those definitions because the way they read aren't otherwise

7    clear enough on the point, 14.13 on Page 68 of the indenture

8    makes it imminently clear that the indenture trustee's fees

9    and expenses themselves, those obligations of the company

10   under 6.07 to pay are not subordinated.

11

12             It couldn't be any clearer and I gather now Mr.

13   Lantry is saying that there's not even a dispute on that.

14   And I believe the case law that we've cited also remains

15   undisputed.  In particular, we cited Judge Walsh's decision

16   in the *Open Homes* case, but there were others cited too,

17   that an indenture trustee like any creditor that reserves in

18   the underlying contract the right to payment of fees and

19   expenses as part of its claim gets added to the claim even

20   if those fees and expenses are accruing and growing post

21   petition.

22             THE COURT:  Okay.  So let's talk about what is

23   disputed here.

24             MR. STARK:  Okay.  There are three -- I'll sort

25   of categorize them as three categories of objections.  The

1    first is that this is all very unnecessary.  The second is

2    that we haven't proven the entitlement at least as far as

3    the quantum of claim is concerned.  And the third, that

4    facially the amount that we've asserted is unreasonable.

5    And I'll take those in turn as much as Your Honor would

6    like.

7            As far as unnecessary, the argument sort of goes

8    like this.  We predict, we the debtors and the committee

9    predict that the general unsecured claim pool at the parent

10   company level will vote in favor of this plan and that's the

11   end of the story and, therefore, our vote is really rather

12   unnecessary.

13

14           I don't think I have to cite to too much in this

15   record to establish -- because I think it's already fairly

16   well established that very little that the debtors have

17   predicted so far in this case has actually proven itself to

18   be a good prognostication.  This case has actually revolved

19   and turned in many different ways and prognostication I

20   think at this point is probably a very thin read if any read

21   at all to sort of hang the hat on the fact that our class

22   vote isn't any relevancy.  But frankly, that's not even

23   legal.  That's not a basis by which somebody who has a

24   properly asserted claim doesn't get to vote or gets

25   disenfranchised because they think it's irrelevant to them.

1          The second is we haven't proven the entitlement.

2    Your Honor, we did submit just the other day an affidavit of

3    my partner, Gordon Novod which actually has the invoices

4    themselves.  And our invoice and that's just for Brown

5    Rudnick's invoices.  We have other counsel and professionals

6    we haven't asked for those to be added onto the $14.16

7    million in fees, time charges, and expenses that Brown

8    Rudnick has accrued and invoiced to Wilmington Trust.  We'll

9    go just with Brown Rudnick.  There have been no discovery

10   requests delivered to us and so we would presume that those

11   invoices facially are sufficient.  If not, Your Honor, I

12   have 14,000 hours of time descriptions, all 600 pages of

13   them ready here for you, Your Honor.  Okay?  It's a stack

14   this big.

15        THE COURT:  Nice to know you have that, Mr.

16   Stark.

17        MR. STARK:  And, Your Honor, if they had actually

18   delivered discovery demands upon us. we would have a very

19   interesting issue because obviously it's an attorney client

20   communication and we're in a hot contested litigation right

21   now.  So we would have a lot of difficulty turning that

22   over, but I'm very happy to give it to Your Honor to look at

23   in camera if Your Honor would be so inclined to look at

24   that.

1          THE COURT:  Well so is your request still to have

2     the claim temporarily allowed in the amount of $10 million

3     or has that gone up now?

4          MR. STARK:  $14.16 that's what the invoice backup

5     is and will be submitted with that affidavit.  It's docket

6     number 7619 for anybody who wants to follow along on the

7     docket.

8          THE COURT:  Yeah, I just received it this

9     morning.  I have not had the opportunity to review it.  I

10    have it here on the bench, but it came in just to my

11    attention moments before I took the bench.

12

13         MR. STARK:  I apologize, Your Honor.

14         THE COURT:  But the narrative part of it is very

15    short.

16         MR. STARK:  Okay.  That takes us to the third

17    objection which is facially unreasonable.  I believe it's

18    the committee that sort of addressed -- aggressively sort of

19    pursued this.  And I gather everything we do to them is

20    facially unreasonable.  We've been sort of counter to their

21    views in this case for a very long time.  So I don't think

22    thematically we can -- we necessarily have to go through all

23    of the categories of stuff that did that they don't view as

24    very reasonable according to their particular case strategy,

25    but suffice it to say we've had differences of opinion.  And

1  fortunately for us, reasonableness is not measured by

2  whether or not it's helpful to their particular case.

3              Our job is to protect the PHONES holders.  And

4  our indenture and our obligation under the indenture is

5  reasonableness in protecting the rights of the PHONES

6  holders.

7              So all of that work we did to get an examiner

8  appointed and being involved in the examination providing

9  extensive briefing and investigation going through all of

10 those documents and giving them to Mr. Clee [ph] are

11 perspectives.  Being a joint plan proponent with Aurelius

12 and the other indenture trustees may be counter to their

13 view of case strategy, but certainly is reasonable from a

14 prospective of what the PHONES noteholders need.

15

16             And I will assure you, Your Honor, since most of

17 my fees are covered by way of charging lien and are

18 therefore somewhat contingent in statutory -- excuse me, in

19 its indenture contractual bases, it's a lien.  We didn't

20 overstaff a case where we're not getting a current fee.

21             So, Your Honor, this has been a hard case as we

22 all know --

23             THE COURT:  Are you saying the opposite would be

24 true?

25                         (Laughter)

1          MR. STARK:  Well, to some, Your Honor, I -- well,

2     it does -- that does pose an interesting point of view, Your

3     Honor.  Reasonableness as far as I've always been told is a

4     comparative context.  Reasonableness in comparison to what?

5     Reasonableness and comparison to the work that you did?

6     Reasonableness and comparison to what everybody else billed

7     for doing similar work across the aisle.

8          I have been told and I read it in the pleadings

9     that the estate professionals whose fee applications are

10    submitted to Your Honor, have billed in excess of $100

11    million in this case.  I have seen four iterations of lender

12    disclosures about what Davis Polk and all the other

13    professionals have billed to this estate and I notice in the

14    latest one if I tally up at least three of those, I get to

15    more than $17 million just on Davis Polk alone.

16

17         This is a hard case.  People have worked very

18    hard.  We have too.  But if reasonableness is measured by

19    way of comparison, I think ours are eminently reasonable

20    compared to what everybody else has done.

21         Your Honor, we'd ask the motion be granted.

22         THE COURT:  Thank you.  Okay.  I'm going down the

23    agenda, I'll hear from the committee.

24         MR. LEMAY:  Good morning, again, Your Honor.

25    David LeMay again for the creditors' committee.

1          First, I think it's important to note and this

2   will become relevant later when we talk about the two other

3   indenture trustees, that we do not dispute the

4   classification of Wilmington Trust's reasonable fees in the

5   other parent class for voting purposes.  That other parent

6   class under the plan that the committee is a co-proponent of

7   was intentionally designed to be in effect a catch all for

8   claims that don't belong anywhere else.

9          And Mr. Stark is right.  I think to the extent

10  reasonable fees are incurred because the indenture does not

11  subordinate those fee claims, the reasonable fee and expense

12  claims of Wilmington Trust counsel do belong in the other

13  parent class.  So that's off the table.  I'm really using it

14  to pre-figure some things that will become relevant later.

15

16          But a number of things were just said, some of

17  which I think are -- bear a little bit of picking apart,

18  unpacking and clarifying.

19          First, it was said that the debtor and the

20  committee urged that this issue was not ripe because the

21  vote will come in a certain way.  And I believe the debtors'

22  papers do say something along those lines.  I just want to

23  point out that that's not anything the committee has said

24  and we've not urged that upon Your Honor and we don't.

25

1          So let's then get to the substance.  And the

2   substance really has to do with the reasonableness of

3   Wilmington Trust's fees.  Mr. Stark has made the point that

4   narrative detail, the kind of narrative detail that one

5   usually asks for and gets in assessing professional fees

6   would be hard to do here because it involves attorney/client

7   privilege.  And he's right.  And we've been handling that

8   with our monthly fee applications since the day the case was

9   filed.  If you want to know how much time David LeMay spent

10  on project X in the course of this case, you can find out.

11  Now does it give all my deep thinking, all my work product,

12  no, of course, it doesn't.  But at least it gives you some

13  measure to know what I and Mr. Seife and our colleagues and

14  what Zuckerman Spaeder and I think the same with the

15  committee have been doing.  How many people, how much time.

16

17         Mr. Stark says that no discovery was requested.

18  Well I guess that's true, but I don't think he'll disagree

19  that we've been chasing him and his colleagues up now since

20  the motion was firs filed last spring to provide detail that

21  would allow us to make an assessment of reasonableness.  I

22  don't know how one can make an assessment of reasonableness

23  even for voting purposes based on what's in front of Your

24  Honor.

25

1            I was looking through these Brown Rudnick

2    invoices and I do think I want to correct, Mr. Stark, they

3    did include the invoices of the Benesch Friedlander firm.

4    But if you look at the invoices, what they say is

5    professional services rendered and then there's on each one

6    a dollar number.  There's no attribution of time to

7    individual professionals.  There's no description even in a

8    summary way of what was spent.

9            So really all you have is dollars.  And what I

10   guess is being said is that $14 million is prima facie

11   reasonable.  I don't take the position that $14 million is

12   prima facie unreasonable.  I don't know if it's reasonable

13   or not.  All I've got is a bunch of one line invoices to

14   look at and I don't know how the Court would form that view.

15

16           I know that in assessing amounts for voting

17   purposes, it certainly is the case in the Bar and I believe

18   possibly also among the Courts that a somewhat looser

19   standard is often applied than in assessing claims for

20   actual allowance purposes.  After all --

21           THE COURT:  Certainly.

22           MR. LEMAY:  -- it's sometimes said it's just

23   voting.  But you need something.  I think the Court needs

24   something and the parties need something.

25

1           An interesting comment happened earlier today and

2    it was a comment by Mr. Rosenberg which I hate to pick on

3    him, but I fear he may be right.  And this was not from our

4    side of the table, it wasn't from the committee, it was from

5    the holder of the funds note saying there's not really much

6    here for the PHONES.  Now I'm sure he wishes to unsay that,

7    but those words were said.  That, Your Honor, goes to the

8    question what level of activity, what level of litigation,

9    what level of legal effort is appropriate and thus

10   reasonable for subordinated constituency.

11          We have not said what they have done is

12   reasonable or unreasonable.  What we've said is we have no

13   basis to assess it and we don't think you do either, Your

14   Honor.  As I say, I think Mr. Rosenberg's comments do expose

15   the elephant in the room here which is that Wilmington Trust

16   counsel have been laboring mightily to produce the recovery

17   for a class that under its constituent documents is deep in

18   the hole.  Will they get a recovery?  Maybe they will.

19   Maybe they won't.  But when you hear one of the funds

20   holders themselves saying that this is a skinny case, I

21   think it gives the Court the pause.  And the Court should, I

22   think require some quantum of meaningful information about

23   who did what and why in order to form a view about

24   reasonableness.

1          I don't think that means that Mr. Stark should be

2    required to give up attorney client privilege just as we

3    don't have to.  But certainly there is a mechanic and it can

4    be done to produce information that the Court could use to

5    assess reasonableness of time.

6          Now it might be said well, gee, that would be

7    tough to go back and do now in retrospect.  Well, I don't

8    know, it's probably not that tough, but if it were, it's

9    also the case that we really have been after our Wilmington

10   Trust counsel since the original motion was filed in the

11   spring of last year on this issue of reasonableness.  And I

12   might have thought that they would have been taking steps,

13   proactive steps between now and then to produce time entries

14   in a form that would permit Your Honor to make that

15   assessment.

16

17         So in sum, Your Honor, we're not saying their

18   claims are facially reasonable or facially unreasonable.

19   What we're saying is that we don't have and we don't think

20   you have any basis whatsoever to allow their claim for

21   voting purposes at $1 or at $14 million.  What our plan says

22   -- I'm sorry, sorry, Your Honor.  What the solicitation

23   procedure order that was entered by Your Honor previously

24   says is that if a claim is by its nature contingent or un-

25   quantified or unknown or un-liquidated, it's allowed and

1    voted at $1.  That's the way that the order proposes to deal

2    with issues like this.  That would be the simple solution.

3    The other solution less simple would be to bring counsel

4    back and actually have a meaningful assessment of what the

5    right amount should be.  Because right now really all we've

6    got is the ipse dixit of the law firms.

7            THE COURT:  Mr. LeMay, even assuming that I

8    agreed with everything that you've just said, this is not

9    the type of matter that should have ever gotten to this

10   point without a resolution.  And I guess it arises out of

11   just the business interests of the respective parties

12   involved here compounded as I'm hearing perhaps by the

13   course of dealing between the parties which has not resulted

14   in an agreement for a number.  But for goodness sake, you

15   ought to be able to pick a number.

16

17           And in one sense yes, it is just for voting and

18   it doesn't seem to me to be material in light of the overall

19   numbers in this case.  Now if it is you can correct me if

20   I'm wrong.  But I don't, you know, I don't know why this

21   wasn't resolved.  I mean, I can understand why many of the

22   issues that weren't resolved in this case and are yet to be

23   resolved haven't yet been resolved.  This one I don't get.

24           MR. LEMAY:  Your Honor, all I can say on that and

25   obviously it would be inappropriate for me to get deep into

1  the conversations between my firm and Mr. Stark's is that

2  we've been -- we have been chasing them up to provide

3  meaningful detail on this issue for a long time.  I won't

4  comment on why.

5         I would like to comment on your materiality point

6  though because Your Honor, I think it might possibly be

7  otherwise.  And that is this.  In the other parent claim

8  class remembering the claims are going to be voted up or

9  down within individual classes and certainly the senior

10  noteholder class has billions and billions of dollars and

11  the bondholder class has a $1.2 billion.  Within the other

12  parent claims class, that's a relatively small class.

13

14         I still think, although I don't know, that the

15  great bulk of the people in that class are going to support

16  the debtor committee lender plan.  I also anticipate,

17  however, based on some advertisements that have come from

18  the bondholder community, that there will be motions to

19  designate and other attempts to in effect whittle down what

20  I anticipate might be the positive vote on our plan from the

21  other parent claims class.

22         I don't know for certain that they'll make those

23  motions, but I won't be shocked if they do.  If they do,

24  this vote, this $15 million or $14 million could become

25  quite relevant to the issue of whether or not the other

1    parent claims class votes yes or no.  I think any motion

2    that's going to be made on that basis will fail, but things

3    remain to be seen.  And Mr. Stark is very correct that the

4    prognostications in this case are not worth a lot.

5              So I actually do think this is a material issue.

6    I agree with Your Honor that it probably should have been

7    settled and perfectly happy to go out and try to settle it.

8    I just need the tools to do so and I think Your Honor does

9    as well.

10             THE COURT:  Thank you.  I'll hear from the

11   debtor.

12             MR. LANTRY:  Your Honor, on this why does it

13   matter issue and why haven't we fixed it.  The voting tally

14   for this other parent claims Class 1F as of this morning was

15   123 claimants voting in favor and only two voting against in

16   the amount of 207 million in favor and only 16,000 against.

17   Based on that, it would appear that this doesn't matter.

18   However, David LeMay, I think has identified why it does

19   matter.

20             We have had threats that -- of various portions

21   of the class, the other parent class will be subject to some

22   challenges at confirmation in terms of designation of votes.

23   So if we could allow these claims now, but still reserve the

24   right to challenge them in some way for voting purposes --

25

1          THE COURT:  But isn't that the nature of the

2   relief that's being requested here?  It's temporary

3   allowance for voting purposes only.  Am I missing something?

4          MR. LANTRY:  It may simply go to, you know, what

5   that temporary allowance language is in the form of an

6   order.  Again, we just don't want this one to have been

7   fully blessed without any evidence, without any supportive

8   detail about its reasonableness.

9          THE COURT:  For voting purposes only.

10         MR. LANTRY:  But --

11         THE COURT:  Only.

12         MR. LANTRY:  -- Your Honor, my point is if most

13  of these 217 million were ultimately designated and their

14  vote was not counted --

15         THE COURT:  Then it might be meaningful.

16         MR. LANTRY:  And that's our issue.  And so we

17  have asked Bob Stark to give us this material and he wrote

18  to my partner on July 1, we also agreed to send you in the

19  next few days invoice backup for the amounts asserted by

20  Wilmington Trust in its 3018 motion which backup may be

21  redacted.  He has not provided that until Friday after the

22  scheduled hearing and then it was no backup, no redactions,

23  it was just the face page.  That doesn't cut it in terms of

24  us making a thoughtful determination about whether we should

1  or shouldn't agree to any amount.  So we just need detail.

2  I think that's the only heart of it.

3         And obviously, if he doesn't want to give us any

4  detail, but gives us the right to reserve and ultimately get

5  this in terms of its allowability is still subject to

6  challenge because it might not be reasonable under the terms

7  of the indenture.  That may be a resolution we could live

8  with.  Thank you, Your Honor.

9         THE COURT:  Mr. Stark?

10        MR. STARK:  Your Honor, I don't want to -- I just

11  want to respond to this whole thing about chasing me and

12  then answer whatever questions Your Honor has for me.

13        THE COURT:  I'd like you to respond to the last

14

15  offer that Mr. Lantry made first if you would.

16        MR. STARK:  That we temporarily will allow the --

17  for voting purposes of the amount requested and then all

18  matters are, you know, further adjudication as to the

19  ultimate allowance of the claim?

20        THE COURT:  Well if --

21        MR. STARK:  That's all we've asked for.

22        THE COURT:  And if it becomes meaningful in terms

23  of the vote for confirmation they can challenge the

24  reasonableness --

25

1          MR. STARK:  The same that I can challenge

2    reasonableness of J.P. Morgan's vote in the case.  It's all

3    subject -- we all vote and we call can figure out before

4    Your Honor what people's rights are if they voted improperly

5    or based upon circumstances that means Your Honor should

6    designate or do it differently.

7          THE COURT:  Let me ask the question another way.

8    Did Mr. Lantry's offer form a basis for drafting a form of

9    order that resolves this matter?

10

11          MR. STARK:  Is that -- I get it allowed, but only

12   sort of if it helps him?  If it doesn't hurt him?

13          THE COURT:  Well, I was contemplating --

14          MR. STARK:  I don't really understand --

15          THE COURT:  -- it wouldn't sound exactly like

16   that.

17                    (Laughter)

18          MR. STARK:  But that's sum and substance what it

19   comes down to, right?  We'll allow it, but if it comes down

20   to being a problem for us in terms of the tally, then we get

21   to come back and re-litigate the issue?  What's the point?

22          THE COURT:  Well, I'm actually trying to help you

23   here a little bit, Mr. Stark.

24

25

1          MR. STARK:  I appreciate that, Your Honor, but I,

2     you know, on this one, I don't see the merit of their

3     position.  I really don't, Your Honor.

4          Your Honor, again, as far as chasing me for the

5     detail, I did file this motion when we had a prior plan.  I

6     think even before we had an examiner's report and a lot has

7     changed.  And the problem is that he didn't sort of quote

8     check give you the next set of emails with his partner that

9     indicate that we agreed to put off the motion ad infinitum

10    until we figure out what the next procedures will be on the

11    particular motion.  Then I resurfaced it again and they

12    never called and asked for the detail and again and I'm --

13    it's not my job to call Your Honor up and say we've got a

14    discovery dispute over a non-issue.

15    

16         THE COURT:  Okay.  Is that your final answer?

17         MR. STARK:  Your Honor, I want to vote.  That's

18    American pie and, you know, good old motherhood and stuff

19    like that.  If that's --

20         THE COURT:  Then during the break, you need to

21    talk to Mr. Lantry.

22         MR. STARK:  Understood, Your Honor.

23         THE COURT:  All right.  Next?  Deutsche Bank

24    motion Number 4.

25

1          MR. ADLER:  Good morning, Your Honor.  David

2   Adler for McCarter & English on behalf of Deutsche Bank

3   Trust Company Americas.

4          We filed a motion for a temporary allowance of

5   the Deutsche Bank reimbursement claim which amount is

6   approximately $2.9 million.  Similar to the arguments that

7   Mr. Stark made, the indentures for the three indentures for

8   which we serve as indenture trustee of, provide that the

9   company shall pay the trustee for its reasonable fees and

10  expenses.  The -- as I stated, the fees and expenses of the

11  indenture trustee and its counsel are $2.9 million to date

12  and we would ask that that be temporarily allowed for voting

13  purposes.

14          One issue that's going to come up that did not

15  come up with the PHONES motion is the plan proponents, the

16  debtor, committee, senior lenders take the position that

17  this claim should be included within the Class 1E claim

18  under their plan which is the senior noteholders claim.

19          We take issue with that, Your Honor, because in

20  their plan, they stated very clearly that that plan will be

21  allowed in the sum of $1.283 billion which is a sum of the

22  principal and unpaid interest of the notes for both Deutsche

23  Bank and Law Debenture.  They did not put an estimate.  They

24  allowed it in a full amount.

25

1          And from our perspective, it appeared that they

2     were allowing the unpaid interest and principal in 1E and

3     that the reimbursement claim would be a 1F claim.  The plan

4     proponents for the debtor, committee, and senior lenders did

5     projections of what bondholders would recover.  And if the

6     indenture trustees are going to have to assert a charging

7     lien, that will obviously effect the recoveries that the

8     bondholders will get.

9          They stated in their response that they're going

10    to do a technical amendment to that section.  Your Honor, we

11    believe that that's not a technical amendment.  That they --

12    that it's going to materially affect the recoveries that the

13    bondholders get.

14

15         And, you know, we think it's pretty clear that

16    from the language of the plan and the disclosure statement

17    that they were allowing the claim in that amount and leaving

18    the reimbursement claim as a separate 1F claim.  Thank you,

19    Your Honor.

20         THE COURT:  I'll hear from the committee.

21         MR. LEMAY:  Your Honor, David LeMay again.  So

22    this motion like the Law Debenture motion, but somewhat

23    unlike the Wilmington Trust motion presents two issues.  One

24    is quantum and reasonableness and there I'll be very brief

25    and simply say I think that Deutsche Bank is in exactly the

1   same position that I put -- well that Wilmington Trust is in

2   in that there's no basis whatsoever to determine the

3   reasonableness of their fees.  And so I won't go on at

4   length about that.  I think I'll incorporate by reference my

5   prior comments with respect to quantification.  There -- the

6   invoices -- no one has produced invoices that allow an

7   assessment. I'm going to focus as to Deutsche Bank more

8   however on the classification issue which I think is an

9   important one.

10         Under the debtor committee lender plan, by

11  specific language of that plan, all claims arising under the

12  relevant indentures namely the unsubordinated indentures for

13  which Deutsche Bank and in a moment Law Debenture act as

14  trustees, all claims arising under those indentures go into

15  the same class.  That's what the plan says.  In contrast,

16  the other parent claims class is in effect a catch all or a

17  default class for claims that really don't fit anywhere else

18  and that are not subordinated.  And that's why we didn't

19  dispute Wilmington Trust's classification into that class

20  because their claim properly, I think fell into that claim.

21         So the question then is do the fee claims of Law

22  Debenture and in a moment -- I'm sorry, Deutsche Bank in a

23  moment Law Debenture, can we properly classify those claims

24  into the same class as the underlying bond claims.  And of

25

1    course, Section 1122(a) gives the Court the basis for

2    analyzing that.  And what Section 1122(a) says is you can

3    put claims in the same class only if they're substantially

4    similar.

5              I would like to note for Your Honor what I

6    believe are four touchstones in this case of substantial

7    similarity that make it very clear that the classification

8    scheme is proper and rational.

9              First, the fee claims arise under the very same

10   indentures as the bond claims.  For each series of bonds,

11   the relevant fee claims arise under the very same indenture

12   document.

13             Second, that they're of the same priority.

14   That's what distinguishes the Deutsche Bank and Law

15   Debenture claims on the one hand from those at Wilmington

16   Trust of the other.  They're of the exact same priority as

17   the underlying bond claims.

18             Third, they are lodged against the exact same

19   obligor.  In each case it's Tribune Company so there's an

20   identity there.

21             And fourth, and some ways most tellingly, those

22   claims were included in the very same proof of claim when

23   Deutsche Bank filed its claim.  It filed its fee claim and

1   its claims for principal and interest on the very same proof

2   of claim which to us bespeaks an absolute identity.

3        I would suggest that the classification of the

4   Wilmington Trust claim under out plan is, in fact, kind of a

5   second proof of the rational of the claims classification

6   system.  I suppose we could have attempted to shove the

7   Wilmington Trust fee claims into some subordinate class or

8   into the PHONES class.  We didn't try to do that because

9   that wouldn't be right and that wouldn't be fair.  We took

10  them for what they were worth and put them into the other

11  parent claims class.

12       The fact that we did that and were willing to do

13  that even though we don't love the idea of having Wilmington

14  Trust fee claims vote in the other parent class, I think

15  speaks to the intellectual honesty and integrity of the

16  process.

17

18       Now Mr. Adler has said that oh, really it's got

19  to be the case that you implicitly took the fee claims and

20  put them into the other parent class because you proposed a

21  quantification of the bond claims at one point $2.83 billion

22  and didn't say $1.283 billion plus whatever indenture

23  trustee fee claims were allowed.  And that's true, the

24  original plan didn't do that.  I would note that the

25  indenture trustees had not submitted $1 of fee claims for

1  consideration at that point.  So it's hardly a surprise that

2  in doing the quantification, we used the $1.283 and didn't

3  add anything for the indenture trustee fees.

4          Nevertheless, when they did raise this issue, we

5  undertook to amend and will amend the plan to provide that

6  the bondholder class will be $1.283 billion, plus any other

7  fee claims that arise under the indentures and that this

8  Court allows.  And I think that takes care of that.  Not so

9  fast says Mr. Adler, no, that's not the case because by

10  doing that, by adding the indenture trustee fee claims into

11  the bondholder class, there will be a material dilution of

12  the bondholders recovery.  And I'd like to pick that one

13  apart a little bit.

14

15          The amount of fee claims sought by Law Debenture

16  and Deutsche Bank in the aggregate between the two of them

17  are about $10 million.  Sorry, Your Honor.  If you add that

18  $10 million to the $1.283 billion of principle and interest

19  claims, you get a possible dilution depending on how you

20  calculate it of certainly no more than 1 percent to the

21  bondholders.  And actually, the way I calculated it, I came

22  out at 2/10ths of a percent.

23

24          Now there's plenty of authority including a case

25  that both indenture trustees has cited that makes it clear

that a dilution of less than a percent is not material.

1    Both trustees cited in their response papers a case called

2    *American Solar King.*

3        In that case, which they cite which is good law

4    says that a dilution factor or a dilution of less than a

5    percent is so insignificant as to be immaterial and wouldn't

6    require re-voting.  We've also found another case.  I have

7    copies.  It's a reported decision, but I have copies of it.

8    It's called *Sentinel Management Group*.  It's reported at *398*

9    *Bankruptcy Reporter 281*.  It's from the Northern District of

10   Illinois in 2008.  I have copies for the Court or parties if

11   they wish.  To the same effect, dilution by 1 percent is not

12   significant.

13

14       So I think that for counsel to state that there

15   is a material dilution of the treatment of the bondholders

16   here is inconsistent with I believe well settled case law

17   and I don't know of any case that goes the other way.  In

18   any event, I think it may be quite a red herring.  It's

19   probably as we all keep saying imprudent to speculate on how

20   various classes will vote.  But this issue will only come up

21   if you think about it if the bondholder class votes in favor

22   of the debtor committee lender plan.  Mr. Adler's point on

23   voting only becomes relevant if that class with a recovery

24   of 32.77 cents cash plus at litigation trust interest thinks

25

1  it's a good plan, but would have cause to reconsider if you

2  diluted that by one percent.

3         I'd like to suggest, Your Honor, we don't know

4  how much about how the voting in this case is going to go,

5  but we do know that the voting of the bonds is sufficiently

6  concentrated in the hands of Aurelius that it is quite

7  possible, maybe even a certainty that the bondholder class

8  is not going to vote up the debtor committee lender class

9  because they think it's a bad plan.  We don't think it's a

10  bad plan, but they're vote.

11

12         And so on that issue, the whole issue with

13  respect to dilution being cause for re-solicitation and re-

14  vote, Your Honor, I think is a sideshow.  I think it's not

15  relevant to what's going on here.

16         What is really going on here?  I think what's

17  really going on here is this.  The bondholders and their co-

18  proponents know that they have enough votes in the

19  bondholder class to make sure that that class more or less

20  comes out where they want it to come.  So now they're left

21  with what you might call surplus or extra voting power that

22  they'd like to reallocate into a class where it could them

23  some good.  Sort of like taking democratic votes out of

24  Massachusetts in a Presidential election and moving them to

25  Ohio or Florida where they might actually do some good.

1          Now, Your Honor, our Presidential election system

2    doesn't work that and I'd suggest that the voting --

3          THE COURT:  Well, it's not supposed to anyway.

4                    (Laughter)

5          MR. LEMAY:  Fair enough, Your Honor.  I'd like to

6    suggest that the voting and the classification of the voting

7    on this plan of reorganization not be allowed to work that

8    way either.  And that's all I've got unless the Court has

9    questions.

10         THE COURT:  I don't, thank you.

11         MR. LEMAY:  Thank you, Your Honor.

12         THE COURT:  I'll hear from the debtor.

13         MR. LANTRY:  Kevin Lantry again, Your Honor.

14         I think the debtors support everything that the

15   committee has said.  I think the only thing we would add is

16   that we so long as this is just a classification issue and

17   that the amount of these claims are allowed for voting

18   purposes only and 1E, do not dispute the amount of the

19   claims and don't need to do the harder lifting in terms of

20   further evidence even though again, no evidence has been

21   provided.

22         So it really is essentially a classification

23   issue and if that's the issue, I think classification should

1  be addressed, if it's inappropriate in confirmation and they

2  should reserve that and challenge it at that point.

3          THE COURT:  Well, will there be a further plan

4  amendment?

5          MR. LANTRY:  Your Honor, we're happy to make this

6  amendment that we've described for clarification purposes.

7  We think it's purely clarification.  As Mr. LeMay says, our

8  plan is crystal clear that 1E includes any and all claims

9  arising under the indenture and there's no dispute that

10  these attorney's fees claims arise solely under the

11  indenture.

12

13          So I wouldn't say we're making an amendment that

14  changes anything.  It just clarifies, but we certainly are

15  happy to make sure that the world is not confused that that

16  number amount is subject to flex in terms of the

17  allowability of attorney's fees.  And we did say so in

18  Footnote 22 of the disclosure statement.

19          So again, I think the world is aware that we knew

20  that there was dispute about the attorney's fees and we put

21  an asterisk in the disclosure statement about this amount

22  that explains that that's an issue that is in dispute.  So I

23  don't think it would go to anything having to do with

24  solicitation, but yes, we will make that amendment.

25          THE COURT:  All right, thank you.

1          MR. LEMAY:  Your Honor, may I have just one

2    further word?

3          THE COURT:  Quickly.

4          MR. LEMAY:  Thank you.  Just to be clear.  We

5    would join in Mr. Lantry's offer.  If the two indenture

6    trustee's fees were to be placed into the bondholder class

7    rather than the other parent claim class, we would be

8    content to let them vote at the stated amount without any

9    further inquiry on amount of a quantification.

10         THE COURT:  All right, thank you.

11         MR. LEMAY:  Thank you, Your Honor.

12         MR. ADLER:  Your Honor, just briefly.  I think

13   the committee is being a little disingenuous because while

14   the bonds may be concentrated at some level, Deutsche Bank

15   is receiving literally dozens and dozens of phone calls from

16   bondholders who hold $5,000, $10,000, $20,000 in an IRA

17   trying to figure out what the distribution is going to be.

18   They're looking at the plan and the disclosure statement and

19   see exactly what the amount is that's being allowed and

20   they're looking at what the projected recovery will be if

21   the debtor committee senior lender plan is confirmed.  I

22   don't think it's a technical amendment.  And what these

23   proponents are forcing the indenture trustees to do frankly

24

25

1  is assert a charging lien at the end of the case which will

2  diminish the recoveries of the senior noteholders.

3          Now one thing to keep in mind that I'm going to

4  allow Law Debenture to speak to this point is Deutsche Bank

5  represents about 5/6 of the amount of outstanding notes.

6  Law Debenture represents about the other 1/6 and the amount

7  of the Law Debenture fee claim would have a material impact

8  on those bondholders if it were asserted.  So I -- Mr. LeMay

9  is not being correct when he says that we're trying to

10  assert our votes in other classes.  What we're trying to do

11  is get the greatest recovery possible for the bondholders

12  depending on how this case comes out.

13

14          We think the noteholder plan should be confirmed,

15  but if Your Honor confirms the other plan, we want to insure

16  that the bondholders receive the greatest recovery.  And

17  it's simply looking at the plan and disclosure statement as

18  it is written, that -- the fee claim is not included and it

19  leads a bondholder who is voting to a conclusion that is

20  incorrect according to the debtors and committee.  Thank

21  you.

22          THE COURT:  Thank you.  All right.  Law

23  Debenture?

24

25

1          MR. STEIN:  Good afternoon, Your Honor.  Matthew

2   Stein, Kasowitz, Benson, Torres, and Friedman on behalf of

3   Law Debenture.

4          I join in Mr. Adler's comments that he made with

5   respect to his client, Deutsche Bank.

6          So as not to repeat many of the arguments that

7   were previously made both by counsel to Deutsche Bank and

8   counsel to the PHONES on this issue, I just as to the

9   temporary allowance issue, I want to address the

10  reasonableness argument that Mr. LeMay had brought up.

11          And Mr. LeMay mentioned that for the purposes of

12  the temporary allowance, we need something, some quantum of

13  evidence that is more than just the law firm's ipse dixit

14  saying this is our claim, this is the amount, please allow

15  it.  But on the other end of the spectrum, this is not a

16  contested matter which respect to allowance.

17          And so the proposal that the committee has stated

18  of being allowed to review line by line the reasonableness

19  of each entry, of each time entry, would then contemplate

20  going through that procedure for the purpose of this

21  temporary allowance motion and then once again for the

22  actual allowance of the claim.  And I submit that that's too

23  much.  That that goes too far.  That in order simply to

24

25

1   determine the reasonableness of the claims, the invoices on

2   their own is sufficient.

3            Turning now to the classification issue.  Mr.

4   Lantry said a moment ago that Footnote 22 of the debtors'

5   committee lender plan was crystal clear.  And in that

6   footnote, it states that the fees and expenses of the

7   indenture trustee under the 1996 indenture which is the

8   indenture that Law Debenture is the trustee for would be

9   paid by the reorganized debtor.  If that's the case, then

10  Law Debenture doesn't have any further dispute with respect

11  to classification.  But I don't suspect that that actually

12  is the case because there's no provision in the plan that

13  provides for the reorganized debtor to be paying the fees of

14  Law Debenture.

15  

16           In fact, Footnote 22 is a relic from the April

17  plan and nothing was ever revised with respect to this

18  footnote in the disclosure statement in the transition

19  between the April plan and the plan that's currently on the

20  table.

21           Another distinction that should be made is that

22  unlike some of the other classes of claims that appear on

23  Pages 13 and 14, et cetera of the disclosure statement, once

24  you take out Footnote 22 and realize Footnote 22 is a relic

25  and is no longer applicable, then there is no indication,

1   there's no distinction as to what is included or excluded

2   from that.  And if you looked just in contrast to Class 1F

3   and compare it -- which is of the parent claims in

4   comparison to Class 1A which is the senior noteholder

5   claims, under the parent claims there is a range and there

6   is a footnote as to what is included and what is excluded.

7           And to now come and say well this can be cured by

8   a technical amendment when the current iteration is far from

9   clear, I think is unreasonable.

10          THE COURT:  So that couldn't be corrected by the

11  form of order that I might enter in connection with this

12  motion?

13

14          MR. STEIN:  Your Honor, I believe that it's

15  without the -- I think it can be corrected by ordering that

16  the senior noteholder claim class as existed in the plan and

17  disclosure statement on file is limited just simply to the

18  senior notes themselves.  And that there's no -- and that

19  the fees and expenses of the indenture trustees are properly

20  -- are excluded from that class.  And that wouldn't mean

21  that they fall into the generic category of other parent

22  claims.

23          Additionally, as Mr. Adler stated, there is the

24  issue of dilution.  Not only because the amount of if the

25  Law Debenture expense claims and the Deutsche Bank expense

1 claims were included in the senior note class, senior

2 noteholder class, not only would the amount of underlying

3 claims would increase, but as Mr. Adler argued, the amount

4 of -- that would need to be -- that Law Debenture would need

5 to assert under the charging lien would also increase.

6          So instead, they have this cure all, this

7 technical amendment.  And whether or not it's a material

8 modification is an issue for another day.  It's not ripe

9 right now. There's been no technical amendment proposed.  We

10 don't know the language and we don't know the effect.  But

11 to cure such an oversight as this and have it, you know,

12 going back to Mr. Lantry's statement that Footnote 22 is

13 crystal clear, that if Footnote 22 is crystal clear, Law

14 Debenture's claims properly should be paid by the

15 reorganized debtor.  And that's exactly what was

16 contemplated by the April plan.  And that's -- sorry, Your

17 Honor.

18          Unless Your Honor has any other questions, I have

19 nothing --

20          THE COURT:  I do not.

21          MR. STEIN:  Thank you.

22          THE COURT:  Thank you.  I'll hear from the

23 committee.

1        MR. LEMAY:  Just a couple of very discreet

2   points, Your Honor.  I don't think on the issue of dilution

3   anyone has taken issue with my calculations which suggest

4   that the dilution the way I did it works out to 2/10ths of a

5   percent, but you could do it another way giving effect to

6   the charging liens and get to 1 percent.  I don't think

7   anyone has taken issue with my proposition that the dilution

8   involved is less than 1 percent.

9        Now as the charging liens, I think there's a red

10  herring there because the indenture trustees are going to

11  assert their charging liens no matter what class their

12  unsecured claim is lodged in.  If their unsecured claim is

13  lodged as they wish in the other parent class, they'll

14  receive some recovery on that.  It will be a percentage

15  recovery, but no matter what class they're in, they're going

16  to pay themselves in full out of the bondholders recovery.

17

18       So I think unless my math is very, very bad, that

19  the existence of the charging liens is a pure neutral.  No

20  matter happens, the indenture trustees are going to have an

21  unpaid claim.  And no matter what happens, they're going to

22  hit their bondholders for that claim as they're entitled to.

23       And so if there's a charging lien, the existence

24  of a charging lien I think is irrelevant to this question of

25  classification.  Moreover, the recovery to the indenture

1  trustee is fundamentally the same whether it's in the other

2  parent class or whether it's in the bondholder class and

3  that's because the other parent claim creditors have the

4  option to opt for in effect pari passu treatment with the

5  bondholder class and get the same recovery.  So this clearly

6  isn't about the recovery to the indenture trustees, that's

7  also the same.  It's really just a question about where the

8  votes, where those votes can do the most good for them.

9          We're entitled as the plan proponent to construct

10  the plan that wrecks the classification system and we --

11  that classification system is to be respected under the

12  statute as long as the claims in the class are substantially

13  similar.  I'll go back to my four touchstones that I

14  identified earlier.  I think there's no serious doubt that

15  the claims are substantially similar.  Thank you, Your

16  Honor.

17

18          THE COURT:  Thank you.  I'll hear from the

19  debtor.

20          MR. LANTRY:  We'd simply recommend, Your Honor,

21  as a bottom line that you allow the claims for voting

22  purposes only in the amount requested and direct us to make

23  the modifications, clarifications to the plan that will make

24  it crystal clear that this -- these attorney's fees are part

25

1  of Class 1E and that it's not just the $1.283 billion, but

2  also attorney's fees.  Thank you, Your Honor.

3           THE COURT:  Thank you.

4           MR. ADLER:  Your Honor, I just rise to respond to

5  Mr. LeMay and his argument about the red herring on the

6  charging lien.

7           Deutsche Bank is a member of the creditors'

8  committee.  The debtors' plan has a reserve set up for the

9  debtor for the committee expenses.  And from Deutsche Bank's

10 view, we are hopeful not to assert a charging lien because

11 we would like to get 35 cents on the dollar from Class 1F

12 and the remainder from the reserve that was set up as

13 committee reimbursement claims.

14

15           So Mr. LeMay is wrong.  We're not intending to

16 assert a charging lien.  Hopefully, if our claim is allowed

17 as a Class 1F claim.  Thank you.

18           MR. STEIN:  Again, Your Honor, Matthew Stein on

19 behalf of Law Debenture.

20           With respect to the substantially similar

21 argument, there was nothing in the April plan that prevented

22 different treatment of the fee and expense component of Law

23 Debenture's claim from the underlying claim of the senior

24 notes.  It was nothing that said well, because the senior

25 notes are in Class 1E in that plan, that those fees and

1    expenses had to also be in that class and couldn't have been

2    paid by the reorganized debtor.

3         So really there is nothing here preventing the

4    fees and expenses from being in a separate class from the

5    underlying senior notes, especially since nothing in the

6    plan or the disclosure statement provides for that.  And

7    again, I turn back to the fact that -- and as part of the

8    April plan, Law Debenture was required to provide the debtor

9    estimates of its fees in the case up until that point.  They

10   provided an estimate from the -- it's first involvement in

11   the case when it filed its 2004 motion back in August of

12   2009, up until the date of the settlement support agreement.

13   And then on one occasion in July as the April plan was

14   moving forward, Law Debenture provided a supplemental

15   estimate as to the fees and expense claims.

16   

17        So it's not the fact that the debtors and the

18   committee simply didn't know what the amount of those claims

19   were or that they existed at all.  The fact is that when it

20   came time to drafting the current plan and providing for the

21   treatment, they simply kept the old treatment in, the old

22   footnote in and decided that was enough for clarity.  And

23   the debtors have now admitted that's not enough and although

24   they haven't stated specifically, the footnote is entirely

25

1    irrelevant and has no connection with the plan that it's

2    supposed to explain.  Thank you, Your Honor.

3              THE COURT:  Thank you.  All right.  We are going

4    to pause here and take a break, but let me frame what I'd

5    like the parties to do in the interim and I will tell you

6    what I intend to do when I return to the bench after the

7    break.

8              I don't know where there is room for resolution

9    on Wilmington Trust's 3013 motion listed at Number 2 on the

10   agenda, but I certainly do think that with respect to the

11   motions at 3, 4, and 5 involving Wilmington Trust, Deutsche

12   Bank, and Law Debenture, there is room for some resolution.

13             I frankly with respect to the latter two anyway

14   at this point I'm thinking that an order which granted

15   temporary allowance in the amounts that debtor and the

16   committee have conceded along with requiring the plan

17   amendment that both have talked about.  But without

18   prejudice to the Deutsche Bank or Law Debenture to argue

19   that their claim was improperly classified with respect to

20   the fees would be still open for confirmation, but for

21   voting purposes, I would be inclined to enter that kind of

22   order, but the parties can talk about that.

23             Let me just make some general comments as a

24   result of my review, our review of the submissions that deal

25

1    with what I'll just generally call the discovery disputes.

2    I've been informed that Number 11 has been mostly resolved

3    and I've continued that to February 8 at 1:00.  I've also

4    been advised that the motion at Number 8 is close to

5    resolution and hopefully during the break the parties can

6    pin that down.

7                With respect to the other motions, I just want to

8    give some general comments.  Many of the requests are indeed

9    too broad and I think those who are seeking more information

10   understand that the Court is going to have to confine them

11   to a certain extent.  So it's now time for the parties, I

12   think on their own to work a little harder at narrowing

13   those things.  But I wanted to give you some overall

14   comments as well about that.

15

16               And as coincidence has it, these present, these

17   various motions in many respects present issues I've only

18   just recently addressed.  And I hope it's not a developing

19   trend or maybe it is a trend and I've just missed it up

20   until now or maybe these are just two unique situations that

21   have come up.  But, you know, there seem to be presented now

22   to the Court new theories of collusion and bias whenever

23   someone presents a settlement plan or says hey, we've agreed

24   on what a plan should say.  I hate to see that develop as a

25

1  trend, but I'll tell you what, it's certainly been asserted

2  here at least in part.

3           With respect to reaching information that was

4  part of either the mediation process and otherwise

5  confidential under our local bankruptcy rule or protected

6  under 408, I am of the view that if you want to get to that

7  information and my last ruling was people couldn't.  You

8  need to meet a higher threshold in order to put the Court in

9  a position where it would agree that such information should

10  be available.  And I ask the parties to take that into

11  account as they might discuss further some of those

12  outstanding motions.

13           We're going to break oh, let's say for an hour to

14  1:35 or so.  Are there any questions before we break?

15

16                    (No audible response heard.)

17           THE COURT:  The Court will stand in recess.

18            (Recess from 12:37 p.m. to 1:41 p.m.)

19           THE CLERK:  All rise.  Be seated, please.

20           THE COURT:  Good afternoon, everyone.

21           ALL:  Good afternoon.

22           THE COURT:  Let's return to matter Number 1.

23           MR. STARK:  Well a number of us I think are going

24  to have a report on discussions and since we were matter

25  Number 1, we thought we would seize the opportunity.

1              Your Honor, following the Court's guidance this

2   morning, we've had substantial discussions including

3   consulting with our clients about the three options laid out

4   by the Court. And unfortunately, while each of us is

5   prepared to agree to one of those options, they're not the

6   same option.  And regretfully, therefore, I think, Your

7   Honor, that we will have to proceed as the Court suggested

8   which is to set a hearing with respect to the issues raised

9   by the objections filed by the Zell parties.

10

11             In that connection, Your Honor, it would be most

12  helpful if the Court could provide us a little clarification

13  on two points, I think.  The first is that we were not

14  entirely clear whether the Court envisioned that hearing

15  dealing only with the additional claims added by the amended

16  complaint of which there are three and we agree what those

17  are.  Or with respect to in addition, those claims that were

18  included in the draft complaint attached to the original

19  motion for standing.  And if the Court could advise what its

20  thinking was, I think that would be helpful to the parties.

21             THE COURT:  I expected the former just the

22  additional.

23             MR. STARK:  That it would only be the additional

24  claims, Your Honor?

25

1          THE COURT:  I understood that's what the request

2     for relief covered.

3          MR. ADLER:  No, Your Honor.  I do believe we're

4     objecting to the complaint in its totality and asking to be

5     heard with respect to standing to assert any of those claims

6     in its totality.  I think the objection as for clarification

7     that the ability to challenge standing as to all claims was

8     not foreclosed by the October order and that standing could

9     be revisited at any time.  And from our perspective, it

10    doesn't make sense to do that piecemeal.

11

12         To the extent that the Court believes the current

13    objection doesn't procedurally raise that issue as to the

14    claims that were identified to us in advance of the October

15    order, we could do that by way of motion to reconsider or

16    motion to lift standing as to those claims, but we think

17    that jurisdictional issue open, needs to get resolved, and

18    that's where we understood the scope of our objection to be.

19         THE COURT:  Does anyone have a copy of the

20    October order with them?

21         MR. STARK:  Yes, Your Honor.

22         MR. ADLER:  Yes, Your Honor.  Excuse me, Your

23    Honor.

24         MR. GOLDEN:  May I approach, Your Honor?

25

1          THE COURT:  Yes, yes.  Thank you, Mr. Golden.

2    Bear with me.  Okay.  Can you point to any specific

3    provision in the order that carves out these particular

4    claims?

5          MR. STARK:  Your Honor, if I might be heard

6    briefly in response to Mr. Bradford's statement.  I think it

7    is undisputed in all candor that the order on its face

8    covers the claim set forth in the draft complaint.  The

9    order as the Court will have noticed in reviewing it, also

10   expressly provided the committee authority to add claims

11   that fell within certain categories.

12

13         And in our motion to confirm standing, all we

14   sought was confirmation that the claims we added, in fact,

15   were within the authority the Court had given us in the

16   order.  If there are grounds to reconsider the Court's

17   order, we're not attempting to preclude that and we don't

18   believe any have been presented.

19         All the -- the only relief we seek on this

20   motion, Your Honor, and perhaps it could be heard today is

21   for the Court to confirm what we think is clear from a fair

22   reading that this order on its face covers the claims.

23         THE COURT:  Well, I'm not going to hear it today

24   and I doubt I'll hear it before confirmation.  It's going to

25   wait.

1          MR. STARK:  I understand.

2          MR. BRADFORD:  Your Honor, if I might just for

3 the record, the procedural history is that literally the day

4 before this motion was presented to the Court, we were given

5 for the first time a complaint.  Their papers suggest that

6 that was filed with the Court sometime before the day before

7 the hearing and that's true, but it was not served on us

8 until the day before the hearing.  So with 24 hours notice,

9 we saw a specific complaint.

10          The complaint now before the Court does not

11 resemble that complaint in many respects other than the

12 addition of the three counts.  There are additional

13 allegations that were peppered into earlier factual

14 allegations and counts and so we have before us a very

15 different complaint then was put before the Court on October

16 22.

17

18          On October 22, we had no real opportunity to be

19 heard on the issues such as best interest of the estate or

20 on the other questions pertinent to standing.  We indicated

21 we had no objection to the motion insofar as it sought to

22 confer standing to toll the statute of limitations.  We've

23 continued to try to cooperate in that vain, but there's been

24 no adversarial determination as to whether any of these

25

1  claims are in the best interest of the estate or colorable.

2  And it's on that issue --

3       THE COURT:  Your issue is going to be colorable.

4  That's going to be the issue.  Argue anything you like, but

5  from my perspective given the nature of the claims that's

6  where I am at the moment subject to whatever I hear.  It

7  will be scheduled for March 22 at 10:00.  There's an omnibus

8  hearing at that time and I'll consider it then.  I'd like

9  counsel to confer and submit a form of order that provides

10  for the setting of that hearing.

11

12       MR. BRADFORD:  Your Honor, I'm due to start a

13  trial March 21 in Chicago.

14       THE COURT:  You mean you won't be done in day?

15                    (Laughter)

16       MR. BRADFORD:  No, unfortunately, it's a three

17  week trial that's been set for sometime starting March 22 or

18  March 21 rather, I think is a Monday.

19       THE COURT:  Then I'll have my courtroom deputy

20  contact you after the hearing to arrange a date.  It will

21  likely go into April then.

22       MR. BRADFORD:  Thank you, Your Honor.

23       THE COURT:  All right.

24       MR. STARK:  Your Honor, just to be absolutely

25  certain what the Court has in mind.  Does the Court envision

1  that that hearing would cover just the additional claims

2  added or all of the claims?

3          THE COURT:  Well I, I don't have the objection in

4  front of me.  I guess -- I can't answer that.  If the

5  objection goes to all of the claims, that's what the --

6  that's how the hearing will be -- that will be the

7  parameters of the hearing.  If it does not, it will go only

8  to the additional claims.

9          MR. STARK:  Thank you, Your Honor.

10         MR. BRADFORD:  Thank you, Your Honor.

11         THE COURT:  All right.  Okay. Working down the

12 agenda or I'm sorry.

13         MR. LANTRY:  Your Honor, Number 2, the debtors,

14

15 the committee and Wilmington Trust have tried to speak with

16 the various noteholders about talking and finding a

17 resolution and so far they're not optimistic that they will

18 have a resolution so I do think it probably comes back to

19 when and how Your Honor might ultimately rule on this

20 estimation.

21         THE COURT:  Well, since it's William Trust's

22 motion which doesn't take a position, I'll make the

23 following ruling.  I'll grant the motion to the extent that

24 Wilmington Trust's motion calls for an estimation of the

25 PHONES claims and it will be in the amount of the proof of

1  claim which the debtor has not disputed for voting purposes.

2  I will defer until confirmation the classification issue.

3          MR. NOVOD:  Thank you, Your Honor.

4          MR. LANTRY:  Your Honor, with respect to --

5          THE COURT:  Please confer and submit an order

6  under certification.

7          MR. LANTRY:  Yes.  With respect to Number 3, I

8  believe we have a resolution.  We're working on the form of

9  order.  I can give you a quick summary or we can simply, you

10  know, tell you later on this afternoon that we've all

11  completely resolved it, but what would be best for you?

12          THE COURT:  I'd like to hear that it's completely

13  resolved.

14

15          MR. LANTRY:  So --

16          THE COURT:  So we'll defer until later the --

17          MR. LANTRY:  Thank you, Your Honor.  With regard

18  to 4 and 5, this also has been resolved.  We're again

19  working on the form of the order, but the gist of this is

20  that the Deutsche Bank and Law Debenture attorney's fees

21  will be allowed for voting purposes in Class 1E in the

22  amount asserted of approximately $10 million without

23  impairing the rights of Law Debenture or Deutsche Bank to

24  challenge the classification.  In addition, the debtors',

25  committee, and lenders shall be directed to amend the plan

1  to clarify the addition of the attorney's fees to Class 1E

2  as we've described.

3           THE COURT:  Okay.

4           MR. LANTRY:  Thank you, Your Honor.

5           THE COURT:  Thank you.  Okay.

6           MR. ZENSKY:  Good afternoon, Your Honor.  For the

7  record, David Zensky of Akin, Gump, Strauss, Hauer & Feld

8  for Aurelius Capital Management and the noteholder group for

9  the motion I'll be speaking to which is the next in line

10  Number 12, Your Honor.

11           Before we do that, I can report and as Mr.

12  Johnston was rising to report, that there was some

13  additional resolutions during the lunch break, none of them

14  affecting Number 12, but affecting some of the other motions

15  that were cued up this afternoon.  Those are Number 8, the

16  Law Debenture motion has been resolved.  And Number 10, I am

17  told by Mr. Korpus is very close to resolution.  And that's

18  the motion with Merrill Lynch.

19           And if the Court has any questions, Mr. Korpus is

20  prepared to address that.  In addition, Item 7 which was the

21  motion regarding crime fraud.  There's an agreement with the

22  debtors to carry that with the Court's permission to the

23  next hearing.  And Mr. Qureshi can speak to that if I can

24  yield the podium for a moment, Your Honor.

1          THE COURT:  Certainly.

2          MR. QURESHI:  Thank you, Your Honor.  Good

3  afternoon.  For the record, Abid Qureshi, Akin, Gump,

4  Strauss, Hauer & Feld on behalf of Aurelius Capital

5  Management.

6          Your Honor, we certainly were prepared to proceed

7  of course with the motion today.  Following the filing of

8  the motion, I believe we filed it on January the 14th,

9  subsequent to that filing, we received from the debtors a

10 more detailed privilege log.  The previous version that we

11 had for the most part had virtually no descriptions of the

12 documents.  Part of our meet and confer process was to

13 obtain a more detailed log which we now have.  The debtors

14 have indicated that in their view, it would be productive to

15 have a dialogue regarding our motion.  I don't expect they

16 will of course agree that there has been a fraud, but

17 nonetheless a dialogue on the privilege log so that we can

18 narrow the issues ultimately before the Court.

19          Your Honor, we're fine with that.  What we would

20 like, however, is the ability to file a reply.  We also --

21 there were a number of new issues that were raised in the

22 debtors' objection that we have not yet had the opportunity

23 to respond to.

24

25

1          And, Your Honor, we also have no objection to the

2     debtors putting in a further brief if that's of course okay

3     with the Court.  So scheduling-wise February 8, I believe is

4     a Tuesday subject to the Court's wishes, we'd certainly be

5     fine with our reply going in on say the Tuesday the week

6     before with the debtors' response on Friday which I believe

7     I February the 4th.

8          THE COURT:  It is, but I'd like it in time to --

9     for it to be included in the binder since it's a Tuesday,

10    the binder would be due noon on that Friday.

11

12         MR. BENDERNAGEL:  We'll do that, Your Honor.

13         THE COURT:  All right.

14         MR. BENDERNAGEL:  May I be heard for a second on

15    this issue?

16         THE COURT:  Yes.

17         MR. BENDERNAGEL:  I don't want to start to argue

18    the motion, but just so it's clear what our position in this

19    regard is.  There are essentially three issues raised by the

20    motion. One had to do whether this stuff is relevant to

21    what's up in the confirmation hearing.

22         The second had to do whether, in fact, there was

23    a prima facie case of fraud.  And the last had to do

24    whether, in fact, there was any identification of documents.

25    There was no identification of specific documents in the

1 motion and based on the, you know, based on the fact that

2 they were going to point to specific documents on the

3 privilege log have seemed to us based on what you had said

4 to put you in a better position to resolve this issue.  It

5 would make sense to kick the date out to February 8 and give

6 you a more fulsome presentation so that you'd be in a

7 position to do something and that's the reason that the

8 debtors agreed to push this out.

9           We're not suggesting on Issues 1 and 2 we're

10 changing our position, but with respect to Issue Number 3

11 and a dialogue as to which documents we're talking about,

12 there is a possibility that we could come to the conclusion

13 that this just isn't worth the fight and we could resolve

14 the issue based on some kind of mutually agreeable approach

15 and we're willing to explore that.

16

17           THE COURT:  Okay.

18           MR. BENDERNAGEL:  Thank you.

19           MR. ZENSKY:  Again, for the record, Your Honor,

20 David Zensky of Akin, Gump, Strauss, Hauer & Feld.

21           Before the lunch break, Your Honor made a comment

22 that goes to the second of the three issues that are

23 contained in the motion docketed that was Number 12 for

24 today.  I was planning to take them in the order they are in

25

1    the motion, but I can switch that up if Your Honor wants me

2    to lead with that one.

3        THE COURT:  Take them in any order that you like.

4        MR. ZENSKY:  Okay.  Your Honor, we had suggested

5    taking this one as the first discovery motion and the Court

6    had that as Number 1 in its hit parade as well because it

7    brings together a discussion of objections that all of the

8    proponents of the debtor, committee, lender plan and other

9    lenders from whom discovery have sought -- has been sought

10   have raised so it made sense to treat it first, I think.

11

12       What also unifies these three issues, Your Honor

13   is that they were all objections that have the affect or

14   would have the affect if upheld of limiting discovery that

15   the noteholders and other parties objecting to the debtor,

16   committee, lender plan will be able to receive that goes to

17   the issue of whether the settlement was the product of arm's

18   length bargaining and not of fraud and collusion.

19       Now to borrow a phrase that Mr. Conlin used

20   earlier in this case probably about a year ago, the

21   noteholders are focused like laser, Your Honor, not just on

22   the strength of the claims that are being compromised here,

23   but and not just on the unreasonableness of the settlement

24   consideration, but on the question of whether this proposed

25

1    settlement is the product of arm's length bargaining and not

2    a fraud and collusion and we have good cause to do so.

3           We touched in your brief, Your Honor, on the law

4    in this area on Pages 2 to 5.  It's obviously not our

5    confirmation brief, but we've given you of course several of

6    the cases that have stressed the importance of this element

7    of the Court's 99 inquiry, including their own decision in

8    this area, Your Honor.  And none of my friends on this side

9    of the room disagree with our presentation of the law and no

10   one disagrees that this is fair game for litigation during

11   the course of the confirmation hearing.

12           Now some of that good cause, Your Honor, I think

13   comes from the aspects of the settlement, the way it

14   unfolded and you'll remember some of the criticisms from the

15   noteholder side from the disclosure statement proceedings

16   and the specific responses that each party was permitted to

17   put in and that includes the way in which the settlement

18   more from a step one only into wrapping in the step two

19   claims with nothing thrown in for step two avoidance and

20   just some additional money thrown in for step two

21   discouragement.

22           But beyond that, Your Honor, and throughout this

23   case, you know, there have been institutional complaints

24   from the noteholder community about the debtors' conflicts,

25

1 the conflicts of their counsel, the conflicts of Chadbourne,

2 the debtors' role or self professed role as an honest broker

3 rather than a vigorous advocate for these claims and so on.

4          And as we know from *Cybergenics*, Your Honor, from

5 both rulings that when the debtor is wearing the hat of

6 estate stay fiduciary and settling claims, claims which

7 include estate law claims that actually are owned by the

8 noteholders and only by virtue of the bankruptcy is the

9 debtor vested with power to prosecute those claims.  But

10 when a debtor is wearing that hat, they're not supposed to

11 be the honest broker.  They're supposed to seek the

12 maximized value to the greatest extent possible for the

13 beneficiaries of the claim.  And the noteholders have every

14 right to expect an un-conflicted fiduciary would pursue

15 those claims as if they were their own.

16

17          What they should not have to expect, they should

18 not have to accept is a settlement that is driven by

19 weariness with the bankruptcy process as we go past the two

20 year mark, Your Honor.  A settlement that was not driven by

21 management desires of appeasing their new owners, a

22 settlement by people who did the deal in the first place and

23 don't think anything wrong was done.  I mean, they cannot be

24 fierce advocates for the claims, Your Honor.  And that's

25 what the noteholders are entitled to and that's what this

1 discovery is supposed to get at.  Whether the settlement was

2 the product of appropriate arm's length bargaining.

3          Now let me turn to the first of the issues which

4 is the objections that have been interposed on the grounds

5 of common interest.  Your Honor, I don't think this is an

6 area where the request themselves are deemed in any way to

7 be overbroad.  That's not the nature of the objection being

8 raised.

9          Our document request to the debtors by way of

10 example is attached as Exhibit 3 to our motion.  And request

11 Number 36 asked for all documents and communications

12 relating to the proposed LBO settlement, including but not

13 limited to all documents relating to the negotiation of the

14 proposed LBO settlement, any part thereof, all drafts of the

15 proposed LBO settlement or any parts thereof and so on.

16 

17          Request 53 of the same document, Your Honor, we

18 asked for all drafts of the debtor, committee, lender plan

19 and specific disclosure statement relating to the debtor,

20 committee, lender plan.  So those were the requests that I

21 think are most centrally implicated by the common interest

22 objection.

23          And funny enough, Your Honor, the debtors asked

24 us for the very same documents.  They asked the noteholder

25 group in request Number 1 for all of our documents relating

1    to the noteholder plan including but not limited to its

2    development, its structure, any potential alternative

3    structure, actual or potential strengths and weaknesses and

4    so on.  And they asked us in Request 2 for all documents and

5    communications relating to all or part of any draft, final,

6    modified or amended specific disclosure statement for the

7    noteholder plan.

8             So both sides want the drafts of how the plans

9    came together.  The difference is that their -- and we're

10   not opposing that discovery, I'm just showing that both

11   sides have asked for it, Your Honor.  Their plan embodies a

12   settlement.  There is no separate settlement agreement.

13   That is the settlement.  It is the debtor, committee, lender

14   plan.  And naturally as in any 9019 hearing, we want to see

15   the evolution of the settlement and that is where this

16   objection comes into play.

17            The preponderance of the debtor, committee,

18   lender plan say that they have a common legal interest that

19   arose as of the date they entered or term sheets were issued

20   where the parties claim that they agreed in principal to the

21   economic terms set forth in the term sheets and those are

22   next to our motion, Your Honor, I believe as Exhibit 7 and

23   8.

1         After receiving those objections as you know,

2   Your Honor, from the paper submitted, the parties had many

3   discussions and negotiations over the propriety of that

4   particular objection.  And the way this has come to your

5   procedurally on this issue is that we have submitted with

6   our proposed form of order on today's motion, a draft common

7   interest stipulation and order which reflects kind of as far

8   as the noteholder group was willing to go in terms of

9   acknowledging and memorializing the type of common interest

10  that the debtor, committee, lender proponents were seeking,

11  but it doesn't go far enough and there are issues and

12  they've submitted a black line and hence we're here to try

13  to figure out how far the privilege goes.  We've asked that

14  you adopt our order and then order them to produce documents

15  not protected by that order.  So that's the procedural

16  posture.

17

18        You have the order attached, Your Honor, the

19  proposed common interest order if you'd like to refer to it.

20  It was attached to our original form of proposed order and

21  we submitted a revised form of order on January 20 to

22  address one objection that we saw in the opposition papers.

23  Do you have that on the bench, Your Honor or --

24        THE COURT:  No.

25        MR. ZENSKY:  -- do you need a copy?

1          THE COURT:  If it's not in the binder, I don't

2   have it.

3          MR. ZENSKY:  Let me get --

4          THE COURT:  If it's in the binder, you can --

5   then you direct me to it.  Okay.

6          MR. ZENSKY:  May I approach, Your Honor?

7          THE COURT:  You may.  Thank you.

8          MR. ZENSKY:  So if you look at the exhibit, Your

9   Honor, to the proposed form of order we just handed up filed

10  on January 20, the way the form of this common interest

11  stipulation order works is we've got the defined terms and

12  Item 4 is one of the matters to be discussed today.  That is

13  what type of common interest communications are entitled to

14  protection under applicable law.

15

16         And then if you flip through, you'll see that

17  under Category C, there are seven types of common interest

18  relationships that the parties have agreed exist to some

19  degree.  The main dispute to be argued in that regard

20  relates to Item 1 and that is the date on which the debtor,

21  committee, lender plan proponents can claim that they're

22  entitled to legal protection under the doctrine of common

23  interest and that's the first issue I intend to discuss.

24         So as I indicated earlier, the gist of the

25  debtor, committee, lender plan proponent's position, Your

1    Honor is they say that once a term sheet was issued during

2    the course of the mediation, that they immediately had an

3    implied common legal interest that insulates any of our

4    communications from that moment going forward from any sort

5    of discovery so that would mean that any of the further plan

6    drafts, negotiations regarding open issues following the

7    term sheets are off limits from any discovery as far as

8    they're concerned whether in writing or at deposition.

9         Now a note, Your Honor, there is no written

10   common interest agreement on that side of the room so

11   they're asking you to find as a matter of federal common law

12   that they don't have to turnover any of that discovery.

13

14        I start with first principals in this area, Your

15   Honor, that the party asserting the privilege has the burden

16   to establish it.  And in this circuit, common interest

17   privilege is construed narrowly if we read the *Teleglobe*

18   decision.  The elements for a common interest privilege are

19   also set forth in that decision and excerpted on Page 12 of

20   our motion papers.

21        And most immediately, I think to address and

22   respond to this contention that the debtors and the

23   committee who are the plaintiffs in this litigation and the

24   banks and credit agreement lenders who are the defendants

25   had a common legal interest based on a term sheet, most

1  immediately to address that and show that it's wrong, Your

2  Honor, we've directed you to Judge Gerber's decision in

3  *Lyondell* which is on point all fours with the issue before

4  the Court here.

5          THE COURT:  And how would you fit that with

6  *Teleglobe*?

7          MR. ZENSKY:  Well, *Teleglobe,* Your Honor has come

8  into play in this case mostly on the issue of who the nature

9  of the common interest communication that can be protected,

10  not the date on when a common interest comes into play.  So

11  I think that the *Lyondell* decision and the *Teleglobe*

12  decision are speaking to two different facets of this.

13          THE COURT:  So it's not inconsistent with

14  *Teleglobe*?

15

16          MR. ZENSKY:  No, not at all, Your Honor.  I don't

17  see any inconsistency between that and I don't see any

18  inconsistency with *Leslie Controls* either.  *Lyondell* is the

19  decision on point here, Your Honor.  It involved a proposed

20  settlement between the debtor and the bank lenders who are

21  being sued for their involvement in a fraudulent transfer.

22  And the argument from the debtor and lender side was that on

23  the date of settlement and principal was reached which was

24  announced in Court to Judge Gerber that a common interest

25  was created and that the debtor and lenders did not have to

1    turnover any further communications, any drafts of the plan,

2    anything to -- in that case it was an actual settlement.

3         So the objection was to turning over drafts of

4    the settlement itself.  And we've attached Judge Gerber's

5    decision and quoted it and I know, Your Honor's read it.

6    And he said that the debtor and the banks do not have a

7    common interest and would never have a common legal interest

8    with respect to the LBO litigation until and unless the

9    Court approved the settlement.

10        Now we're not arguing that position here.  We

11   have said in our motion that the common interest could arise

12   on the date or should arise on the date that the final plans

13   were submitted to the Court for review and submission to

14   sending out to the creditors for a vote.  So our proposed

15   common interest order uses November 23 as the date that the

16   debtor, committee, lender plan proponents and their

17   supporters could claim a common interest and refrain from

18   producing communications between them.

19        Now it's important to understand, Your Honor,

20   this is not bound up with the mediation order issue and it's

21   not an attorney/client privilege question in the sense that

22   the noteholders are seeking materials that never left a

23   particular client and its attorney.  This is only

24   information that went back and forth between the parties.

25

1   The parties who are adverse with respect to the litigation

2   and that litigation is being settled in their plan.

3          So, you know, *Lyondell* speaks directly to this

4   issue, Your Honor, and I see no distinction offered of it in

5   the paper submitted by the debtor, committee, lender plan

6   proponents other than perhaps it's the Southern District and

7   maybe you shouldn't follow it for that reason, but it's dead

8   on point and I think its reasoning is correct.

9          We've cited a few other cases on this point, Your

10  Honor, but I think the principle is clear that if the

11  debtors are in effect on the plaintiff's side of the V and

12  the committee is certainly on the plaintiff's side of the V

13  with respect to this litigation, they cannot claim a common

14  legal interest in the papers by which they're negotiating

15  and writing their settlement with the banks who are on the

16  other side of the V and the credit agreement lenders that

17  are on the other side of the V.

18          Now the opposition to the motion poses *Leslie*

19  *Controls*, Judge Sontchi's decision as the key to this, but

20  that case has nothing to do with a settlement or a plan.  It

21  simply acknowledges that parties can be adverse in certain

22  respects and have a common interest in other respects and

23  I'm sure the Court is familiar with it and there's a

24

25

1  distinction there drawn between fighting over the size of a

2  pie and your -- the allocation of the pie.

3          And the document at issue there, the principal

4  document at issue was an attorney/client memorandum on

5  insurance coverage issues that the debtor shared with the

6  asbestos claimants before any plan was filed.  And the

7  insurers wanted to see that and the Court ruled that there

8  was not a breaking of the privilege with respect to that

9  document when the debtors shared it with the asbestos

10  claimants and the future's committee because they all had a

11  commonality, a kind of legal interest on the question of

12  insurance coverage.

13

14          So if we apply that here, Your Honor, we're not

15  saying that there can be no instance in which the banks and

16  the credit agreement lenders might have a common interest

17  with the debtors.  For example, if a party who had

18  contracted to supply newsprint to Tribune breached that

19  contract creating substantial damages, the debtors would be

20  pursuing that claim and all the creditors would have a

21  common interest with the debtors in that regard, but that is

22  far afield from the situation that we have here where the

23  debtors and the committee are negotiating the settlement

24  with the adverse parties on the other side.  And that

25

1    settlement is the plan and that is the discovery that we are

2    seeking.

3         If the debtors had filed their plan on the 12th,

4    then maybe you could say everything had come to rest and

5    from that moment going forward, there's not a lot to be

6    gained by the discovery, but it hadn't come to rest, Your

7    Honor.  All we had on October 12 was a four page term sheet.

8         And we've listed in our papers all the material

9    issues not plan issues, but settlement issues that had to be

10   worked out after that date and they involved valuation

11   matters, releases, bar order, contribution, all of the

12   things that are important, I'm sure to the defendants and

13   the lenders that were not set forth in detail.  There was

14   nothing set forth in the term sheets about allocation of

15   value, intercompany settlement, preference claims as to who

16   would own them.

17   

18        So there was world of things going on, Your Honor

19   after the term sheets were filed.  So we would ask that the

20   Court use September -- November 23 as the start date for any

21   sort of common interest here and that is the date we have in

22   our order.  As an alternative at the earliest we would say

23   it would be the date that the first plan was put on file

24   which was October 22 and that's a date that the debtor,

25   committee, lender plan proponents acknowledge is a potential

1    alternative in their papers at Footnote 13 of their brief,

2    Your Honor.

3              Now if we use that date, it would put the

4    protection being afforded on even keel with the common

5    interest protection that the parties to the April plan have

6    requested in which the noteholders are not opposing.  The

7    parties to the April plan, Your Honor, have asked that a

8    common interest privilege be recognized from the date the

9    plan was filed until the first of the parties withdrew from

10   the plan support agreement so that's April 12 to August 9

11   and our draft recognizes and adopts those dates.

12

13             So the -- by asking for an earlier date, it's

14   actually the debtor, committee, lender plan proponents that

15   are seeking disparate treatment for the current plan as

16   compared to the earlier plan.

17             So that's the issue on the timing.  Let me turn

18   to the second common interest issue, Your Honor, if I may.

19             THE COURT:  Go ahead.

20             MR. ZENSKY:  This is the issue that implicates

21   *Teleglobe* as Your Honor asked me about earlier.  And this is

22   what type of communications once we have the date resolved

23   and once we know who is within the common interest aura,

24   whose communications are protected.  We had said that it is

25   communications between attorneys for the parties in the

common interest group and it's okay if those communications
include the clients or cc'd to the clients are forwarded to
the clients or if the lawyers have a strategy session about
legal issues about prosecuting their plan, about defending
the LBO litigation and the clients are listening.  That's
all protected.  No one on our side is opposing that.

The issue as it has arisen is whether the
principals, whether the non-lawyers, the clients can speak
to each other and claim common interest legal protection or
whether that type of information is discoverable.  We see
their proposal as being outside the boundaries of what
*Teleglobe* tells us should be the scope of the protection.
We see their proposal as common interest on steroids in
effect, Your Honor.  And it's important to remember that
this issue does not just intersect with the date at which
plan discussions gave rise to a common interest, it goes
throughout the categories that the parties are requesting
common interest protection for.

The law in this is on -- we cite on Page 19 of
our brief which we, of course, rely in *Teleglobe*, Your
Honor, and other District Court cases from this circuit.  I
think most of them are from New Jersey.  But *Leslie Controls*
itself, Your Honor from this district in Footnote 3 cites
*Teleglobe* as the authority for the rule that common interest

1  communications are protected when they are between

2  attorneys.  So to the extent there is an effort on this side

3  to say *Teleglobe* doesn't apply because it was a state law

4  case, well it is being applied in a bankruptcy setting in

5  *Leslie Controls* as the authority on this issue, Your Honor.

6       Beyond that, I'm not sure what the distinction

7  they offer of *Teleglobe* is.  The -- on this issue, the

8  debtor, committee, lender plan proponents rely on cases

9  exclusively that are outside this jurisdiction and none of

10  them are bankruptcy cases.  So I think if I were the Judge,

11  I'd like to say I would take *Teleglobe* as the right

12  authority to look to here, Your Honor, in deciding what

13  communications are subject to protection.

14  
15       THE COURT:  Especially if you sat in the Third

16  Circuit.

17            (Laughter)

18       MR. ZENSKY:  Exactly.  Now two be sure in certain

19  instances, Your Honor, if a business person is talking to a

20  business person that is within a joint legal interest,

21  they're jointly defending legal claims and one tells the

22  other it's attorney/client advice, it's conceivable that

23  that could be protected.  But the problem is when you layer

24  that into a bankruptcy case where what's going on daily are

25  business discussions, it's impossible to untangle one from

1    the other.  And that's why our proposal which we think is a

2    bright line proposal and will not embroil the Court in in

3    camera review or challenges to 45 privilege log entries is

4    who the speaker is.  If the attorneys are speaking to the

5    attorneys about defending the litigation or prosecuting

6    their plan, it's protected.  If the principals are talking

7    to the principals it's not.

8              The problem their proposal is also shown by one

9    of the cases they rely on which is the *IBJ Whitehall Bank*

10   where the Court was compelled to conduct an in camera

11   review.  And there is some similarity there in the sense

12   that it was two banks talking to each other, the employees

13   of two banks about a loan they had made.  And it turned out

14   that most of the documents were business communications, not

15   core legal communications.  And that's what this doctrine

16   protects, Your Honor, legal strategy, not business strategy.

17   

18             So on the second issue which divides the parties,

19   Your Honor, we would ask that you adopt our form of order

20   and specify the common interest communications are between

21   the attorneys.

22             That's the first part of the motion.  Do you want

23   to take them one at time, Your Honor, or do you want me to

24   carry on?  Okay.

25             THE COURT:  Carry on.

1          MR. ZENSKY:  Just give me one moment.

2          THE COURT:  It's all right.

3          MR. ZENSKY:  The second issue is the issue that

4    relates to the comment you made before we broke, Your Honor.

5    And that is the extent -- the interplay of the discovery

6    requests and the mediation order and the depository order.

7    And Your Honor suggested that there should be heightened

8    scrutiny attached to requests that go in that direction, but

9    I would submit for at least three reasons, Your Honor, that

10   heightened scrutiny does not apply on the facts of these

11   case.

12

13          The first is that where a party puts something at

14   issue in the litigation, then it's fair game for discovery.

15   It's first principles.  And if the debtor, committee, lender

16   plan proponents want to waive around at the confirmation

17   hearing that their settlement must be great because it came

18   out of a mediation, then I think they put it at issue and

19   they don't dispute that, Your Honor.  There's not a single

20   response to that point in their brief.

21          The second and I think equally if not more

22   important, Your Honor is that they are also seeking a

23   partial waiver of that.  They want the ability to use some

24   evidence at the hearing that would otherwise be prescribed

25   by the depository order or the mediation order.  But they

don't want to show us all of that.  And that goes to the

sword and shield problem, Your Honor, that a party can't put

something in issue and offer some evidence of its liking,

but obstruct discovery of the full picture.  So that's the

second reason that we don't need to reach the question of

heightened scrutiny, Your Honor.

And, you know, finally, actually I said I had

three, I have two.  I think that if we did have to -- strike

that.  I do have third reason now that I refer to my notes.

This is not a situation where a party is seeking to invade a

settlement dialogue or a mediation to use the evidence to

prove liability which is a purpose that would be prescribed

by Rule 408.

As you know from our papers, we had said the

purpose of this discovery and 9019 makes it independently

relevant is the manner in which the settlement was

negotiated.  That is an element of the proofs that they need

to put on for the confirmation hearing and that we are

entitled to rebut.  So I don't think it implicates the type

of cases where a party is trying to get at a settlement

communication and then is going to try to use it to prove

liability.

THE COURT:  Well, here's my issue and I'll drill

down a little bit farther than I did with my earlier

1  comments.  You know, in large Chapter 11 cases, especially

2  the ones that have some complexity to them as does this one

3  on a number of different levels, it's a good thing that the

4  parties say we want to mediate.  It's a good thing to say we

5  want to try to resolve these things.  The parties in this

6  case haven't yet gotten there, but some have.

7          And on the one hand, I say to myself why would I

8  order anything now that would discourage parties and I think

9  this would, from entering into settlement activities in full

10  and open communications to end up where I think most Judges

11  would tell you they should be and that is with a consensual

12  plan.

13

14          Now we didn't quite get here in this case, but,

15  you know, I'm just horribly reluctant to put a hurdle.  You

16  know, what would that do to mediations?  What would that do

17  to settlement discussions?  I don't know.

18          Now on the other hand, you say to yourself well,

19  if Carey starts ruling this way, people are going to ask for

20  mediation in every case.  So they don't have to tell anybody

21  what happened or why it happened or how it happened or who

22  made what deal that they're not revealing to anybody else.

23          In balancing the two, I guess what I would have

24  to say is that before I'd let you go there, you have to say

25  something other than we don't know and point to something

1   that says, you know, Your Honor, there's something that just

2   -- it just -- the aroma coming from this settlement just

3   ain't right and you should let us go farther.  I don't

4   detect that scent here.  Tell me what I'm missing.

5            MR. ZENSKY:  Okay.  I didn't give you that scent,

6   but let me if I can kind of work my way there, Your Honor.

7   Look, these are -- there's a real policy question here and

8   there is no decision that either side has found that has

9   tried to -- that has even spoken to the tension between the

10  full and fair hearing and transparency that parties are

11  entitled to in opposing a 9019 hearing.  And the equally

12  important policies underlying mediation confidentiality.

13           If it didn't come through in our papers, Your

14  Honor, I want to be clear that our proposal was not to go so

15  far as to invade the truly confidential communications

16  between a party and the mediator, whether written or oral.

17  We were asking for discovery to only go so far as the actual

18  negotiations between opposing parties.  So for example, if

19  there's a written communication just between the debtors and

20  the mediator or just between J.P. Morgan and the mediator,

21  we were not asking for that discovery, Your Honor.  Even

22  though we believe that that side has put the mediation at

23  issue and if they offer evidence about it that everything

24  should be fair game.

25

1          THE COURT:  Well, you know, I -- look, with due

2     respect to any mediator, I just emailed a mediator today

3     telling him I owed him a thousand thanks for resolving a

4     matter.  The fact that a settlement was reached at a

5     mediation, it doesn't seem to me to accord it any particular

6     weight.  And that's not a criticism of the mediator and it's

7     not any kind of view with respect to the fact the parties

8     actually got to the settlement.  I mean, the fact is there's

9     a settlement and it's either passes the standard or it

10    doesn't.  If you're anticipating that they'll argue that

11    well it's cleansed because it happened, you know, with one

12    of my colleagues, I don't see how.

13          MR. ZENSKY:  Okay.  We agree with that

14    completely, Your Honor, and we've cited a case that made

15    that observation that the mediator's job is just to bring

16    the parties together.  There's no statement on how hard

17    either side bargained.  But that is something that they --

18          THE COURT:  Or if he thinks somebody's a creep.

19    It doesn't matter.

20          MR. ZENSKY:  Right.

21          THE COURT:  You know.

22          MR. ZENSKY:  But obviously until this moment, we

23    didn't have the benefit of the Court's reaction to that

24    point.

1          THE COURT:  Okay.

2          MR. ZENSKY:  Nor if this winds up at another

3 level do we know how another Court will evaluate the

4 significance of a settlement claim to have arisen in a

5 mediation.

6          THE COURT:  Yeah.  I tend not to make those

7 predictions.

8          MR. ZENSKY:  Right.  And I'm not making that

9 prediction, Your Honor, but it's conceivable.  So and we're

10 confronted with a role where they are going to argue that

11 the mediation cleanses it.  And you hit it right on the head

12 that if nothing ever said in mediation can be discussed in a

13 9019 hearing, then anyone who wants to get in and out

14 quickly will say let's go mediate.

15

16          I mean, take this example, Your Honor.  If the

17 committee had undertaken to start prosecuting the litigation

18 and the debtors went off and mediated by themselves with the

19 banks and came rushing in and said we have a settlement, I

20 mean, I don't think the Court would want to frustrate the

21 committee's ability to find out what happened just because

22 it happened in a mediation.  We have to remember that 9019

23 makes the process independently relevant to the Court's

24 evaluation whether the settlement is the product or arm's

25

1    length bargaining is a factor that the Court must consider

2    in determining whether to adopt a settlement.

3        THE COURT:  Well, you know, you raised an

4    interesting point.  And when I told you I had this issue

5    recently, I asked -- I made the same observation or asked

6    the same question.  Given the nature of the parties here and

7    the professional representation, the cost of which was

8    discussed at some length earlier, how could you look at it

9    at anything other than an arm's length negotiation.  I mean,

10   how could it be anything other than that?

11

12       MR. ZENSKY:  Well, Your Honor, to me, as I tried

13   to implement earlier that arm's length bargaining and I

14   think the cases support this decision is where someone

15   argues as hard as they can for as much as they can collect

16   for their side, Your Honor.  That is the opposite of what

17   the debtors have said their role in this case is.

18       THE COURT:  Well but, you know, look, that brings

19   into play another Chapter 11 dynamic where equity gets wiped

20   away.  Okay.  And on one level and this is not -- and I've

21   said this many times, not disbarring the role of anybody in

22   management or the debtors' professionals, they've got no

23   stake in the outcome from an economic standpoint.  The state

24   value whatever their is allocated among others.  So I don't

25   -- I think to accept a proposition that you assert without

1   looking at the particular circumstances of the individual

2   Chapter 11 being administered, I don't think you can.

3           MR. ZENSKY:  Okay.  Well, let me address that in

4   two ways, Your Honor.  One is that this is not the situation

5   you just posited where a debtor goes into mediation to try

6   to resolve value claims and there are just plan issues being

7   discussed.  This is the settlement of an adversary.  It's

8   the single most important piece of this entire Chapter 11.

9   The settlement of these claims against the lenders.  They

10  wear a different hat and I submit that they can't act as an

11  honest broker on that type of issue and say or have you

12  conclude that it was the product of arm's length bargaining.

13          THE COURT:  Let me approach it --

14          MR. ZENSKY:  Mr. --

15          THE COURT:  -- another way.  Let's say the debtor

16  just completely folded, just completely folded, gave

17  everything away.  I mean, the deal is either a good one or a

18  bad one.  What does it matter?

19          MR. ZENSKY:  That could be one way to look at it,

20  Your Honor, if we didn't have the cases out there that we do

21  that say arm's length bargaining is one of the aspects that

22  a Court has to look to on 9019.  And I think that it is

23  infinitely tied to the lowest rung of reasonableness test

24  which no doubt will be the argument here.  And I suspect a

25

1  settlement amount was jammed up based on someone's idea of

2  what the least amount they could sell the Court as

3  satisfying that standard.  But the reason --

4           THE COURT:  Well, you know, that's a goal shared

5  by many in this Court, okay?

6                    (Laughter)

7           MR. ZENSKY:  Your Honor, the reason that on 9019

8  analysis that a Court is willing to accord in the proper

9  case a settlement, approve a settlement as long as it is

10 within the range of reasonableness is based in part, I think

11 on the confidence that there were un-conflicted negotiators

12 fighting as hard as they could to get as much money as they

13 could.  It's a completely different dynamic from the

14 situation you asked about where equity is getting wiped out

15 and the debtor is trying to figure out where value lies and

16 has a discussion.  Yes, they have no stake in that, but that

17 is much more of an honest broker role than that which they

18 claim -- which is the role that they claim to have assumed

19 with respect to these claims and that is the antithesis of

20 arm's length bargaining.

21          THE COURT:  But don't we have a known universe

22 here of value?  I mean, I will say, I've never handled a

23 case, okay, which has been so thoroughly scrutinized by an

24 examiner and all of the other parties here.  I mean is there

25

1  something about what might be available in the way of

2  allocable or distributable estate assets that we don't know

3  about?

4          MR. ZENSKY:  No, it's not a question of the

5  availability of value, Your Honor, it's that there are

6  claims which if successful, would result in $3 billion

7  dollars being paid out to the pre-LBO creditors and the

8  settlement is $420 million.  That's the question.

9          THE COURT:  And everybody knows what the claims

10  are and everyone has made their own determination now I

11  would be willing to bet pretty heavily on what's good,

12  what's bad, and what the ranges of possible recoveries are.

13          MR. ZENSKY:  I agree with that, Your Honor, but I

14  can't rewrite the law that says that it's part of their

15  burden to prove to you the validity of this settlement, they

16  must show that it was the product of arm's length

17  bargaining.  Now if --

18          THE COURT:  I agree with you, okay, but the issue

19  in discovery is and it's been raised, given what I've just

20  indicated to you, tell me why it's relevant.  Tell me why

21  you need it when all else that is available is available.

22          MR. ZENSKY:  I need it, Your Honor -- well, we've

23  discussed the mediation issue already whether mediation

24  cleanses things.  I need it because the moment they put a

25

1    witness on the stand to say oh, yeah, we fought very hard,

2    the committee fought hard, we asked for as much as we could,

3    and I get a chopped up picture of what happened in the run

4    up from the release of the examiner's report till the day

5    the settlement was reached, how can I combat that?  I won't

6    have the full picture.

7             If you looked at their proposal on how to mediate

8    the tension, no pun intended, between the mediation order

9    and depository order and the discovery in 9019 issues, they

10   have said, the depository order we can relinquish in its

11   entirety so anything that happened before September 1 is now

12   going to be full and fair game for discovery and used at

13   trial.  So they themselves are asking that you in effect

14   either by virtue of the parties agreement or otherwise

15   override an order.

16

17            On the mediation timeframe, September 1 to

18   October 12, they've got a much more refined proposal.  They

19   want to say yes, we'll provide discovery and we can use at

20   the hearing evidence of negotiations that occurred between

21   the parties so that we can make our burden on arm's length

22   bargaining, but not on certain days and not certain

23   communications and that's set forth on Page 20 of their

24   brief.

25

1          So this is not kind of a black and white like

2    either we're going to have ho discussion of it or complete

3    discussion.  In their mind, they want some discussion of

4    these issues, but not full discussion of these issues.  So

5    their proposal, Your Honor is that any discussion that

6    occurred on a mediation day would not be discoverable.  So

7    that there are --

8          THE COURT:  Well, if I understand the list of

9    that which they want protected are written and oral

10   communications between a mediation party and the mediator,

11   written and oral communications between or among mediation

12   parties, the extent such communications were exchanged on

13   any mediation day, written and oral communications

14   reflecting the substance of any discussion between or among

15   mediation parties on a mediation day or documenting any

16   offers or counter offers exchanged or reached on a mediation

17   day and written or oral communications between the mediator

18   and examiner or the examiner's professionals concerning the

19   mediation.

20         MR. ZENSKY:  So number one in that issue is not

21   in dispute as I told you earlier.  We were not suggesting

22   that in order to have a full hearing and fair opportunity to

23   challenge arm's length bargaining, that we needed

24

25

1  communications between a party and the mediator so we've

2  already discussed that.

3          The second issue, Your Honor is it's a bizarre

4  proposal in the following sense.  What they're saying for

5  example is if Angelo Gordon and Oaktree were meeting with

6  Judge Gross one day which would be a mediation day, but J.P.

7  Morgan and the committee were back in New York negotiating,

8  that's not discoverable, the J.P. Morgan and committee

9  discussions because it happened to be a mediation day?  And

10 that doesn't make any sense at all, Your Honor.  That has --

11 what does that have to do with the mediation process?  And

12 then, you know, the same thing.  You have one party meeting

13 with the mediator and the rest of them are out in the hall

14 or back in New York or in D.C. or somewhere or on the phone

15 negotiating the settlement and that's off limits?

16

17          I mean, I think about this as discovery

18 interruptus, if you will, Your Honor.  The suggestion is

19 we'll be at the depositions and I'll be tracking my way

20 through how the settlement unfolded and most important, how

21 they got from the first term sheet to the second term sheet,

22 and I'll get some answers and then we'll go the next turn of

23 events and they'll be an objection, oh, that was a mediation

24 day, you can't ask about that conversation.  But if you ask

25 about three days later, we'll pick up the story then.

1          That's the record they want us all to come into

2     the hearing with.  So, I think as I said in our paper --

3          THE COURT:  Well, you know, as you stated, it

4     sounds absurd, but in today's age, you know, and I don't

5     know whether it's happened or not and I guess you don't know

6     either, but I would suspect what was happening is that

7     communications not just by, you know, the phone, but by

8     Blackberry and email and texting and, you know, maybe

9     instant messaging, I don't know, we're going on back and

10    forth between and among people who were here and who weren't

11    or wherever the mediation was taking place.  So it's

12    arguably part of the process.

13         MR. ZENSKY:  It certainly is.  And if we were

14    going to have rigid adherence to the mediation order, then

15    none of that would be discoverable and I would submit that

16    they under that set of facts, they can't argue arm's length

17    bargaining or that mediation cleansed anything because you

18    can't put something at issue and withhold discovery.  But

19    they're only coming halfway.  They're sticking their leg in

20    the water, one leg, but not the other.  And say we'll give

21    some discovery so that we can use at the hearing, but not

22    full discovery.

23         And that's why that's another reason I didn't

24    think that the Court needed to kind of treat this as

25

1 heightened scrutiny issue because there's a choice to be

2 made if they want to argue arm's length bargaining is

3 satisfied and put evidence in, we should have a complete

4 record.  If they don't want to make a complete record

5 available, then they shouldn't be allowed to argue it.  I

6 mean, that's kind of basic motion in limine or trial law if

7 you put something at issue, discovery on it is appropriate.

8        But let me make you a little more, I think and

9 I'll wind up on this issue in a moment on some of the policy

10 questions that you were troubled with.  I don't think the

11 parties, I know the parties can't privately contract to

12 modify Rule 9019, Your Honor.

13        And if you think about this hypothetical that the

14 debtor, committee, lender plan proponents entered a contract

15 amongst themselves that we'll go have a mediation or we'll

16 go get in a room and try to settle this.  And we all agree

17 it's completely off limits and will not be discoverable or

18 producible, they come up with a settlement and we wind up in

19 Court as we are today with us seeking discovery of the

20 settlement and how it came about and the parties on the

21 other side raising their agreement that it's all

22 confidential.

23        Well, I think the Court would be in the same

24 position.  It would say no, you can't bury Rule 9019 by a

25

1   private agreement nor, Your Honor, would I say you can bury

2   it by a Court order and I cite the *RDE Industries* case for

3   that proposition.  Or you would say I'll enforce your

4   confidentiality agreement, but you can't argue that the

5   settlement was the product of arm's length bargaining at the

6   hearing.  Either make the discovery available or don't argue

7   the issue.  And where that takes me in my decision as to

8   whether to confirm or not remains to be seen.  But you can't

9   play both sides of the street on this issue, Your Honor.

10          THE COURT:  Well, except that -- I won't ask that

11  question.  I think you've made up your mind on that issue

12  whether to confirm or not, but press on.

13          MR. ZENSKY:  I'm sorry, I didn't mean to suggest

14

15  anything of the sort, Your Honor.

16          THE COURT:  I know you didn't.

17          MR. ZENSKY:  Okay.  So and last is I think that

18  the Court would have to consider the, obviously, the policy

19  and precedential effect of how this is resolved here in

20  terms of what happens in the next Chapter 11 and the Chapter

21  11 after that.  Transparency is a major part of the process.

22  I don't need to tell the Court that.  And the notion that

23  any sort of settlement sweetheart settlement, a get in and

24  get out, I'm weary of bankruptcy, you know, it -- you just

25  can't say that the settlement process is going to be put off

1   limits for so long as 9019 makes the arm's length bargaining

2   and lack of collusion or fraud an element of the Court's

3   inquiry.

4           I can turn to the last issue, if the Court would

5   like?

6           THE COURT:  If you would.

7           MR. ZENSKY:  Okay.  So the last issue will be

8   much briefer, Your Honor, and this is whether there should

9   be a complete blackout on any discovery from the petition

10  date up until December 15, 2009 and the -- that is the

11  nature of the objection.

12          It's we're not asking for all of our discovery

13  requests to be responded to in that timeframe, we've asked

14  for targeted discovery, the beginning of plan discussions,

15  any discussions of the settlement of the claims, and we've

16  offered to limit it to the rational smaller number of

17  custodians and rational smaller number of search terms, but

18  there is a complete opposition on the other side to any

19  discovery of any kind from the petition date to December 15,

20  2009.

21          And if you look at the opposition brief, the

22  basis, the claim basis is at Page 26 all events relevant to

23  the negotiation and settlement of the LBO related claims

24  happened after the Court entered the depository order on

25

1 December 15, 2009.  And they say again, no material

2 settlement discussions respecting the LBO related claims

3 occurred before then.

4          Well, of course, Your Honor, if that was the case

5 there wouldn't be much to produce and this would be a big

6 ta-doo about nothing.  Also, you would think if that was the

7 case, we would have an affidavit of sorts to that effect

8 based on the conference call we had with Your Honor where

9 you suggested that in response to the non-proponent lenders

10 who were claiming they were not involved in settlement

11 discussions.  And you said well, maybe there should be some

12 proof that you aren't involved.  So if there's no affidavit

13 and there is no burden if there aren't that many documents.

14

15          So I got their response and I said, you know, it

16 just can't be right that there was nothing going on for the

17 first year of the bankruptcy and no one was discussing plan

18 issues, plan structures.  No one was discussing the LBO

19 claims.  And it turns out that I was right and their brief

20 is wrong, Your Honor.

21          If we go back to the exclusivity hearing that you

22 held on December 1, 2009, Mr. Conlin got up and told you

23 about all the negotiations and plan, the development of a

24 plan that had been going on.  He told you that the debtors

25 had a firm highly developed view of what the plan will look

1    like.  He talked about the inter-creditor disputes that the

2    LBO claims present and said he had been focused like a laser

3    on those issues since the beginning of the case.  And then

4    he said we've been meeting constantly for months with Mr.

5    Bernstein and his clients, with Mr. Bennett over the phone,

6    with Mr. Mayor who also represents the banks, the Chadbourne

7    firm, et cetera.  We have meeting with everyone constantly.

8    And then Mr. Seife got up and told you the same thing at

9    that December 1 hearing of 2009.

10

11            And then you found in extending exclusivity that

12   I'm satisfied.  I'm reading Your Honor's decision.  It's

13   clear that there are ongoing discussions which may or may

14   not result in a global resolution.  So I saw that.  Then I

15   went back to look at the timesheets which -- or the invoices

16   which you heard Mr. LeMay talk about this morning about how

17   he has to put in invoices.  Well, those invoices show there

18   was plenty going on in 2009 that could well be relevant to

19   the parties debates about an appropriate plan structure and

20   the settlement, Your Honor.

21            THE COURT:  Oh, so you're telling me I was right?

22            MR. ZENSKY:  You were absolutely right, Your

23   Honor.  In February 2009, the Chadbourne timesheets or

24   invoices reflect conference calls between Chadbourne and

25   Sidley they quote plan structures.  We go to June 2009,

1    there are days and days on the Chadbourne invoices of

2    analysis of plan structures and processes from the debtors'

3    draft and multiple calls between Sidley and Chadbourne to

4    discuss plan proposals.  Well, why is that off limits, Your

5    Honor?

6            One of the issues of course as you know, the

7    noteholder plan doesn't settle any litigation and would put

8    the claims into a trust for resolution after the -- after

9    confirmation.  Maybe the debtors were proposing a plan like

10   that at the outset and thought that that was viable and then

11   they're going to come into Court in their plan objection and

12   say our plan's not viable on that grounds.

13

14           The Court might think the evidence is relevant if

15   they previously thought that was a viable plan structure.  I

16   don't know whether they did it and I don't know what

17   importance the Court would attach to it, but that's why it's

18   called discovery, we're not at the trial.

19           If we continue to July 2009, Chadbourne hosted a

20   meeting between Chadbourne and Sidley re: status of plan.

21   And had multiple calls again on plan materials, plan term

22   sheets.  Then we get to August 2009 and meetings with the

23   lenders start and discussions about solvency and the LBO

24   claims.  If we look at the Zuckerman Spaeder timesheets from

25   August 2009, there's a meeting on August 13 and again on

1  September 17, where Chadbourne, Zuckerman Spaeder and the

2  lenders met to discuss solvency and the LBO claims.  Those

3  are adverse parties, Your Honor.  There's no privilege

4  there.  Why are we not entitled to discovery just because it

5  was 2009?  The same in September and October.  And I have

6  copies of all the invoices if Your Honor wants more paper or

7  if anyone at the committee or the debtors wants to review

8  it.

9          Now those are communications that are not

10  privileged that could be relevant and are targeted discovery

11  aspects and that's just what we know about the professionals

12  talking to each other, Your Honor.  If the professionals are

13  talking to each other on plan issues and LBO claims and

14  about solvency issues, it's equally if not more plausible

15  that the principals were talking to each other.  And if the

16  principals are talking to each other, there's no basis for

17  withholding that discovery either, Your Honor.

18  

19          So again, at trial what importance this will have

20  or not I can't say, I haven't seen the documents yet.  But

21  there's no basis to just arbitrarily say there's no

22  discovery to be had in that timeframe.

23          THE COURT:  Well, let me ask this.  Is there

24  anything off limits?

25

1          MR. ZENSKY:  Well, the strictly attorney client

2     communications are off limits of course, Your Honor.  The

3     documents that would be exchanged between the parties after

4     the appropriate common interest date would be off limits.

5     We're not asking for materials about intercompany valuation

6     or allocation issues going back that far.  So I'm not sure.

7     Is that responsive --

8          THE COURT:  It is.

9          MR. ZENSKY:  -- to your request?

10         THE COURT:  Thank you.

11         MR. ZENSKY:  Your question.  Okay.  Thank you,

12    Your Honor.

13         THE COURT:  All right.

14         MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

15    Johnston of Hennigan, Bennett & Dorman.  As you know, I

16    represent Angelo Gordon and Oaktree Capital Management, two

17    of the parties alleged to have colluded in reaching the

18    compromise embodied the debtor, committee, lender plan.

19    Apparently, colluded all the way back to the petition date,

20    even though Oaktree as you know was vehemently opposed to

21    the prior settlement reached in this case with a lot of the

22    same proponents here.

23         I'm going to address the common interest issue,

24    Your Honor, then Mr. Bendernagel will address issues

25

1    respecting the confidentiality of mediation communications

2    and Mr. McCormack will cover the question of the appropriate

3    start date for discovery over plan and settlement

4    negotiations.  They probably will have some other things to

5    say about common interest as well.

6             I think suffice it to say as opening statement

7    that we and I'm sure all of my fellow plan proponents

8    disagree with the litany of alleged and imagined collusion.

9    Your Honor, will see that there is no there there and it's

10   awfully well established that you can't get discovery on the

11   mere suggestion of a fraud.  We also disagree with what I

12   think is Mr. Zensky's very unique interpretation of the term

13   arm's length bargaining in this context.

14

15           More specifically, with respect to common

16   interest, I was struck by the fact that the noteholder

17   motion advances some truly radical ideas.  We've heard this

18   afternoon that they backed off quite a bit from the

19   positions in the motion, but it is useful to consider where

20   they started to understand why the position advanced today

21   is not a compromise and it's not one that's grounded in any

22   reasoned basis in the law.

23           In the motion, the noteholders asserted that

24   there can never be a protectable common interest between

25   parties with an adverse relationship.  Parties on the

1    opposite of the V to use a term that's now become part of

2    the lexicon in this case.  Even when those parties have

3    settled and are seeking Court approval of their settlement.

4    If you look in their motion on Page 9, they say legal

5    adversity between the parties remains to this day and will

6    remain until such time as the Court, if ever approves the

7    proposed LBO settlement.

8           I'd ask that you think about the implications of

9    that statement.  Think about the effect it would have on

10   your docket if it were the law and as I'll get to in a

11   minute, it assuredly is not.  If Mr. Zensky were correct,

12   what would be the likelihood that you would see a proposed

13   settlement of estate causes of action like these between

14   estate representatives and potential defendants?  Certainly,

15   in the context of a settlement that has to be consummated in

16   a plan of reorganization.

17

18          I'd submit the odds are very slim.  At the least,

19   before signing up to such a settlement, parties on all sides

20   would have to think long and hard about becoming co-sponsors

21   of the plan when they knew that every single communication

22   that they have with their fellow plan proponents, the very

23   people they've settled with, all the way through

24   confirmation of the plan would be discoverable by their

25   opponents.

1          Well, it may not seem possible in light of this

2     case, probably in light of bankruptcy cases in general these

3     days.  There's no doubt that this would lead to less

4     compromise, more litigation, and more disputes in the future

5     and that's not a good thing to use the term that Your Honor

6     discussed with Mr. Zensky.

7          It is interesting though that although that's the

8     cornerstone of the position advanced in the motion, you

9     didn't hear a lot about it from Mr. Zensky.  Because I think

10    the noteholders know full well the implications of the

11    position they stakeout.  And so they advance a compromise,

12    but it's a compromise without foundation.  And to get there,

13    let's step back and consider what the common interest

14    doctrine is.

15

16         The most recent discourse on the subject in this

17    discourse -- in this district is, of course, Judge Sontchi's

18    opinion in *Leslie Controls* published just a few months ago.

19    Judge Sontchi tells us that the common interest doctrine

20    expands the reach of the attorney/client privilege by

21    providing that under certain circumstances the sharing of

22    privileged communications with third parties does not

23    constitute a waiver of the privilege.  The doctrine embodies

24    or enables parties who do not share an attorney, but who do

25    share a common legal interest to share information amongst

1  themselves without waiving the privilege applicable to the

2  information in the first place.

3         So when does it apply?  *Leslie Controls* tells us

4  there's at three part test.  It applies when one, the

5  communication was made by separate parties in the course of

6  a matter of common interest.  Two, the communication was

7  designed to further that effort.  And three, the privilege

8  has not otherwise been waived.

9         Our dispute here today centers on the first

10  factor.  Whether communications among the debtors,

11  committees, and lenders as settling plan proponents were

12  made in the course of a matter of common interest.  We

13  believe that the common interest between the debtors, the

14  committee, and the lenders is achieving confirmation of the

15  plan and approval of the settlement embodied in it.

16

17         Mr. Zensky on the other hand, says that there can

18  never be a common legal interest among parties with opposing

19  interest in litigation between a plaintiff and a defendant.

20  And that any commonality regarding a settlement or a

21  proposed settlement is just a commercial interest, not

22  sufficient to invoke the doctrine.  But the cases say that

23  that position is wrong.

24         I turn back to *Leslie Controls*.  There, Judge

25  Sontchi conclusively rejected the argument that there can

1    never be a protectable common legal interest between parties

2    with opposing interest in litigation.  There's a passage at

3    Page 496 to 497, *Bankruptcy Reporter 437* that states the

4    parties need not be in complete accord.  The common interest

5    privilege does not require a complete unity of interest

6    among the participants.  The privilege applies where the

7    interest of the parties are not identical and it even

8    applies where the parties interest are adverse in

9    substantial respects.

10           And here's the important part.  The privilege

11   applies even where a lawsuit is foreseeable in the future

12   between the co-defendants.  So *Leslie Controls* holds that

13   you can have people on the opposite of the V in certain

14   circumstances share a common legal interest.

15

16           THE COURT:  Look, it's not a stretch, I don't

17   think and I'm prepared to find that, you know, with respect

18   to the co-plan proponents there is a common interest

19   privilege.  To me, the open issues are, you know, what's the

20   date it became effective and, you know, does it cover

21   discussions and communications that go beyond the

22   professionals.

23           MR. JOHNSTON:  Okay.  We certainly agree with

24   you.  And I think it puts to the side the issue of *Lyondell*

25

1    which holds that there can never be this common legal

2    interest.

3              THE COURT:  I don't agree with that.  As much as

4    respect as I have for Judge Gerber, I do not agree with that

5    proposition as you've stated it.

6              MR. JOHNSTON:  And so with respect to when the

7    common interest arose.  We take a very straightforward

8    position.  We believe that the common interest between the

9    debtors, committee, and the settling lenders arose on the

10   date that Judge Gross filed our heavily negotiated term

11   sheet reflecting what were very hard fought negotiations

12   among the parties and he filed it on the public docket.

13   That was not an arbitrary date or an arbitrary action.

14

15             You can be assured that Judge Gross did not

16   announce the settlement lightly and he did so only after

17   assuring himself that there was a deal among the parties.

18   Similarly, just as Judge Gross' announcement of the first

19   deal between the debtors, Oaktree and Angelo Gordon was not

20   done lightly.  It was only done after there was a settlement

21   reached between those three parties.

22             The position you heard today from Mr. Zensky is

23   at the opposite end of the spectrum.  He says that there was

24   no common interest after the deal was struck and the term

25   sheet was filed.  There was no common interest after the

1    plan embodying that deal was filed.  And that instead, the

2    common interest arose on November 24 because that was the

3    last -- the filing of the last amendments to the plan.

4    Actually, the day after the filing of the last amendments to

5    the plan.

6             And what they want is they want to access all

7    plan related communications between the debtors, the

8    committee, and the lenders all the way up to that date.  And

9    if you think about that, that would make a whole host of

10   things discoverable.  Communications about the parties

11   responsive statements and drafts of our responsive

12   statements.  Communications and strategies about objections

13   to the competing plans, drafts of disclosure statement

14   objections filed by the other competing plans, and

15   communications about litigation strategy for the

16   confirmation hearing, selection of experts, March lien of

17   evidence and the like.  I'd submit that there's nothing in

18   the law that justifies that position.

19            THE COURT:  Well, here's -- and without making a

20   decision, but here is an attractive aspect to the suggestion

21   that it would be as of the date the plan was filed or with

22   amendments that the terms were finalized.  You know, in an

23   area that's full of gray, it's a nice easy recognizable

24   black letter rule.

25

1          And so yes, you move backwards from that, it gets

2     fuzzier which is probably one of the reasons Mr. Zensky

3     wants that information because it may be that things were

4     still fluid.  Because, you know, without a written agreement

5     among the parties, the only one that the parties themselves

6     and others can rely on or identify would be the terms of the

7     plan as its proposed, not on the mediation summary or a

8     settlement as it was announced by the mediator.

9          MR. JOHNSTON:  Let me suggest that that --

10         THE COURT:  So there's some attractiveness to

11    that.

12         MR. JOHNSTON:  I agree.  And black line rules are

13    attractive for just that reason.  But the fluidity inherent

14    in the process does not destroy the common interest.  And

15    there's some case law to that effect.  I'll again turn first

16    to *Leslie Controls* where the holding was that ongoing plan

17    negotiations did not destroy the common interest among the

18    plaintiffs and the debtor there.  At least as among what

19    Judge Sontchi called the common enemy.  The common enemy in

20    that case was the insurers.

21         We cited a case in our brief called *Sealed Air at

22    253 Federal Rules Decisions 310* which reached the same

23    result as to ongoing merger negotiations once a deal in

24    principle was reached, the Courts hold that the commonality
25

1  of interest was sufficiently firm to give rise to the

2  protection of the doctrine.  Here, you have the firmness of

3  the deal represented by the filing of the term sheets by

4  Judge Gross.

5          THE COURT:  So what if the parties reach an

6  agreement at a mediation, but it's not reduced to term

7  sheets?  When would a common interest privilege begin?

8          MR. JOHNSTON:  That's a harder question.  I think

9  logically and it's hard to say in a world of complex

10  commercial disputes like this that you could ever have an

11  agreement that's not reduced to a writing because there's

12  too much up in the air then.  So it's hard to conceive a

13  situation unless it was a situation where a defendant says I

14  agree to pay you $1 million in satisfaction of the claim and

15  that was it, sum and substance.  I would think a common

16  interest would arise then, but that would be a simple

17  matter.  We're not faced with a simple matter here.

18          I think the key take away from this, Your Honor,

19  is that, in fact, the issue as to which all the people on

20  this side of the aisle have the common interest which is the

21  settlement of the LBO claims hasn't changed.  It hasn't

22  changed from the filing of the term sheet.  So yes, there

23  were plan amendments, there were tweaks, there were changes

24  in languages to, you know, things that you're going to find

25

1    in a 200 page plan, lots of them done to accommodate the

2    objections of some of the noteholders.  But the core deal

3    here, the core deal as to which the common interest arose

4    didn't change.

5              One thing I think is telling in this regard as to

6    the proposition by the noteholders that there was no common

7    interest until the final plan was filed in November and

8    that's their selection and I think it was their selection.

9    It certainly -- we never -- there was never any pushback on

10   it of April 12 as the date on which a common interest arose

11   for the April plan.

12             Remember, that that plan was supported by Law

13   Debenture, supported by Deutsche Bank, supported by Center

14   Bridge at the time represented by Mr. Zensky's firm.  And

15   the plan was filed on April 12. The noteholders now say that

16   the common interest arose on that date, but that wasn't the

17   last word as to the April plan.  The April plan was amended

18   and/or its disclosure statement was amended on May 19. It

19   was amended again on May 24, on May 27, on June 1, and again

20   on June 4.  But it's okay for them, for their purposes to

21   protect the communications as to the settlement they liked

22   to have the common interest arise all the way back to April

23   12.  I think it's a glaring inconsistency.

24

25

1          As to communications within the common interest

2   whenever the common interest arose, I think in light of some

3   recent movement or reconsideration by the noteholders, we're

4   not all that far apart.  Initially, the noteholders took the

5   position that communications covered by the common interest

6   could only include attorneys for the parties with the common

7   interest.

8          They cited the *Teleglobe* case which I'll get to

9   in a minute.  And argued that the presence of any client of

10  such a communication whether as a party on an email or on a

11  phone call would destroy whatever protections or otherwise

12  applicable to the communications.

13         By the time they filed their motion, they had

14  retreated from that position to say the clients could be

15  carbon copied on a letter or listed as cc's on an email

16  between attorneys, but that they couldn't be a direct

17  recipient or a sender of a letter or an email.

18         We pointed out the emptiness of that distinction

19  in our objection and I think they agreed because they then

20  filed their revised proposal and landed in what their

21  current position is which I think is that the presence of

22  clients on communications does not destroy the common

23  interest protection per se, but that there has to be an

1    attorney directly involved in the communications for the

2    protection to apply.

3            And here again, that absolutely has the benefit

4    of a black line rule, but it's a rule that doesn't reflect

5    the law.  As I think Mr. Zensky conceded by acknowledging

6    that yes, in fact, there could be situations in which one

7    principal within a common interest communicated legal advice

8    to another principal within a common interest and that

9    technically the attorney/client and common interest

10   privileges would apply to that as the doctrine has

11   enunciated, but it would be too hard to tell.

12           Well, a black line rule that tramples on the

13   underlying principle of law isn't a very good rule.  As we

14   noted in our brief, the purpose of the common interest

15   doctrine is to expand the parties to whom privileged

16   information may be communicated without waiving the

17   privilege.  What it does it creates a commonality of

18   attorneys and parties within the common interest group as to

19   the common interest matters.

20           THE COURT:  Well, but at bottom, there must be a

21   privilege somewhere.

22           MR. JOHNSTON:  Oh, absolutely.  And the example

23   we go back to is if you conceive of a single client, a

24   corporate client and a single attorney, the attorney gives

25

1  privileged advice to one employee of the client, that

2  employee is then entitled to talk to other employees of the

3  same firm to relay the legal advice given, to relay the

4  privileged communication without waiving the privilege.

5  When you have a common interest, it's simply --

6          THE COURT:  Well, there's no restriction onto

7  whom the employee would be able to speak without waiving the

8  privilege?

9          MR. JOHNSTON:  I think there is.  I think it has

10  to be a decision-maker.  It has to be --

11          THE COURT:  It could be someone in the control

12  group, right?

13          MR. JOHNSTON:  The control group.

14          THE COURT:  Okay.

15          MR. JOHNSTON:  Right.  And I'm not suggesting

16  otherwise here.  The rule that we've espoused is simply that

17  if the communication was privileged to begin with, the

18  communication doesn't lose its privileged nature simply

19  because one party within a common interest communicates it

20  to another so long as, you know, the other requirements of

21  maintaining the privilege apply.

22          THE COURT:  Okay.  And how is anyone to know

23  whether that happened or not?

24

25

1          MR. JOHNSTON:  It's the same way that anyone

2    knows in a discovery context as to whether any communication

3    is privileged.  There's a review. There's a withholding on

4    the grounds of privilege.  There's, you know, a disclosure

5    to the other side that it's been withheld logging in some

6    cases and challenge.  And at bottom, sometimes it gets

7    brought before the Judge for in camera review.  I would hope

8    that we could avoid that in this case, but because that's a

9    burdensome process and I readily admit that it can be a

10   burdensome process if the parties don't work together,

11   doesn't mean that the privilege just goes away.  I don't

12   think that that's the rule and I certainly haven't seen any

13   cases to that effect.

14

15          We did cite a number of cases in our brief that

16   stand for the proposition that communications between two

17   principals without lawyers in a common interest group are

18   still covered by the protection.  We cited the *Zitska [ph]*

19   case *2009 U.S. District Lexus 41801, IBJ Whitehall* which Mr.

20   Zensky mentioned, and most importantly, we cited the

21   *Rembrandt Technologies* case from the Delaware Superior Court

22   here in 2009.

23          *Rembrandt* held that separately represented

24   clients sharing a common legal interest may at least in

25   certain circumstances and under the close supervision of

1    counsel, communicate directly with one another regarding

2    that shared interest.  The Court noted that it was

3    unnecessarily burdensome to require the decision-makers

4    within the community of interest cannot communicate with

5    each other regarding legal advice they receive from their

6    attorneys, but must instead, funnel those communications

7    through the attorneys.

8           Pause on that observation for a second because I

9    think it's especially compelling in bankruptcy cases like

10   this one.  In bankruptcy cases, you have a multitude of

11   professionals who bill the bankruptcy estates for their

12   time.  If the rule was that parties within a common interest

13   were unable to communicate their lawyer's legal strategy and

14   advice directly amongst themselves and instead had to

15   channel everything through the professionals, you know what

16   would result.  The result would be higher legal fees or, you

17   know, for no purpose whatsoever.

18          Now there certainly is dicta in *Teleglobe* that's

19   contrary to this, we admit that.  *Teleglobe* when you dig

20   into it though is distinguishable in a number of ways.

21   First, the circuit itself in Footnote 18 of the decision

22   states that its entire discussion of the common interest

23   privilege is to use its words surplusage.  It's a plain

24   statement of dicta as plain as you could imagine.

1          Second, *Teleglobe* actually stated only that

2    sharing the communication directly with a member of the

3    community may destroy the privilege.  It did not state an

4    unequivocal rule.  And most importantly, *Teleglobe* was

5    interpreting Delaware Law.  And you can find that at *493*

6    *F.3rd 358* where the circuit holds just that.

7          In the *Rembrandt* case which was decided after

8    *Teleglobe*, the Delaware Courts have taken a contrary view,

9    specifically holding that clients may, in fact, share

10   privilege materials directly with each other without

11   destroying the protections of the common interest doctrine.

12

13         THE COURT:  The Superior Court is a Trial Court.

14         MR. JOHNSTON:  It is, Your Honor, yes.  It's a

15   Trial Court, but it's a Delaware Court directly applying

16   Delaware Law.

17         THE COURT:  Yeah, I mean, in struggling with

18   prudential issue in the past, you know, if there's an

19   intermediate Appellant Court decision the state, I might

20   look to that.  Of course, there is none in Delaware which

21   makes the Chancery Court and the Superior Court decisions

22   maybe more important than most.

23         MR. JOHNSTON:  Particularly, in a circumstance

24   like this where you have the Federal Circuit Court one

25

1  agreeing that its entire discussion of the issue was dicta

2  and not stating an unequivocal rule to begin with.

3         So all that is to say that we think the

4  noteholder's formulation of communications protected by the

5  common interest doctrine is too narrow.  The formulation

6  we've advanced is the correct one and we'd ask that Your

7  Honor confirm this by adopting the debtor, committee, lender

8  common interest proposal on this point.

9         THE COURT:  Okay.

10         MR. JOHNSTON:  If you have any other questions,

11  I'd be happy to answer them, otherwise, I'll turn it over to

12  Mr. Bendernagel.

13         THE COURT:  I do not.

14         MR. JOHNSTON:  Thank you.

15

16         MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

17  the debtors.

18         I'm going to address the mediation order section

19  of the argument.  Before I do that though, I would like to

20  raise a couple -- make a couple of observations on the

21  common interest privilege.  And I'm not going to re-trot the

22  ground that has been gone over by Mr. Johnston because we

23  agree with what Mr. Johnston said.

24         I would ask that you take a look though at the

25  language specifically that the noteholders have proposed

1   with respect to the common interest.  And they attempt to

2   limit the parameters more than what's been discussed here.

3   And two specific respects that we have a problem with.  And

4   maybe these are issues that we can work out when we work out

5   the details, but I thought it was important to point them

6   out.

7           One is they say in their motion and they start

8   out by talking about exchanges between counsel.  But as you

9   dig deeper into the paragraph, all of sudden they're talking

10  about outside counsel.  We don't think that there is any

11  justification for limiting the common interest just to

12  outside counsel as opposed to counsel.  They cite nothing

13  for that.  It may be that it's just a slip of words, but we

14  think that there's no justification for that limitation.

15  

16          Similarly, we do not feel that there's a

17  justification for limiting the discussions between non-

18  testifying financial advisors as opposed to financial

19  advisors.  Clearly, if a financial advisor later testifies

20  and he testifies regarding a matter that's been without on

21  privilege grounds, there could be a waiver question.  But

22  the fact that he might someday be a non-testifying financial

23  advisor, it seems to me shouldn't be set forth in the

24  standard because it lead to ridiculous results.

25

1          You could have a situation where, sure, the

2    financial advisor is testifying, but he's testifying to

3    something that has nothing to do with the privileged

4    communication.  As a consequence, the privilege wouldn't be

5    lost in that circumstances.

6          So I sense that those two formulations outside

7    counsel and non-testifying financial advisor are, you know,

8    over the line and I wanted to draw that to your attention.

9          I'd also ask the Judge to be careful when you

10   talk about things like well there's gray, different shades

11   of gray at different points in time.  The one thing that's

12   absolutely clear here is that the day before October 12 and

13   the day after October 12, you had a very, very different

14   situation and that the parties were marching very, very

15   differently on October 12 than they were on October 11.  And

16   that they were marching in the direction, a common direction

17   with a common purpose and that they were trying to implement

18   a plan.

19          And to the extent that you basically say no, no,

20   we're going to allow discovery with that respect, what

21   you're going to do is make it much harder to flesh out the

22   settlement.  And this settlement wasn't the mediator's basic

23   summary of what he thought the deal was.  The mediator was

24

25

1    attaching a term sheet that was negotiated between the

2    parties and that constitutes a settlement.

3           Now you asked the question, well what if there

4    was no term sheet?  A lot of mediators will not allow you to

5    leave the room without you signing a document exactly for

6    that reason because the parties can drift apart.  Here, you

7    have a term sheet, there's an understanding between the

8    parties as to what the parameters of the common interest

9    are.  And that should give you sufficient guidance to be

10   able to move forward.  And there should be some common

11   interest at that juncture.

12          Now to the extent that they can come in and show

13   well, this particular issue was not negotiated to that point

14   and we want to inquire on that, that's fine, but I think

15   that that's how the burden ought to be allocated that they -

16   - the parties seeking the discovery in that instance ought

17   to be able to make a particularized request and not invade

18   the settlement generally, otherwise, it just makes it

19   harder.

20          Moving to the mediation order.  Your Honor,

21   entered two separate orders in this case to try and

22   facilitate settlement in this case.  The one was a

23   depository order back in December, the other is the

24   mediation order.  Both orders were negotiated ahead of time

25

1   with the parties.  Both orders had very strong language

2   protecting the material's use at a later point in time.

3   Notwithstanding that language, the noteholders have sought

4   broad discovery with respect to these issues.

5           As initially enunciated, there was only on

6   mediation day, November 17 for some reason that was going to

7   be exempted from discovery.  Now they backed off from that

8   initial position, but they basically sought broad ranging

9   discovery with respect to the mediation and the settlement

10  on the explanation that they feel that there was something

11  untoward or that the negotiations weren't in good faith.

12

13          You asked the question of Mr. Zensky when he was

14  up here, well what specifically do you have in mind?  He

15  never answered that question.  He never gave you specific

16  information that suggested this is what we're going after.

17  It's just a fishing expedition and that's troubling in this

18  situation.

19          Now they say there's a binary choice here.  You

20  either waive any protection or you are precluded from making

21  reference to the mediation.  And somehow, they suggest there

22  would still be an incentive to mediate that situation, but

23  they don't cite any case law for that and for good reason.

24  If, in fact, that was the choice, it would put a chill on

25  the ability to mediate and that is recognized in the cases

1  that we've cited to you and that is an important public

2  policy. And given the fact that the policy or statements

3  underlying this whole goodwill notion are pretty fuzzy in

4  the law and the Court -- their language in decisions talking

5  about gut reaction and the like, it seems to me that the

6  policy and balance runs in favor of protecting the mediation

7  privilege.

8          Now we've been taking a hard line here saying

9  hey, we signed the depository order, you signed the

10  mediation order, no access to this information.  We've tried

11  to strike a balance.  We basically said we would not try to

12  enforce a Rule 408 order.  We wouldn't force the depository

13  order.

14          And with respect to the mediation order, we

15  proposed the items that you identified and they're better

16  articulated in the attachment which is Exhibit 5 to the

17  motion where it's articulated as five separate items.  And

18  what we were trying to do was come up with a reasonable

19  balance that will allow them to have access to the

20  settlement negotiations without jeopardizing the mediation

21  itself.

22          And Mr. Zensky talked about the concept of a

23  mediation day and he made it sound like there would be

24  mediation with one party and that there might be all these

25

1  other communications going on and there would be this

2  confusion.

3         Well, that's not what the term mediation day is

4  defined as.  The term mediation day in our proposal is

5  identified as specific days and these were days in which

6  Judge Gross had preliminary sessions where most, if not all

7  of the parties were invited by Judge Gross to come and

8  negotiate.

9         And in these negotiations which is not unusual in

10  a multi-party situation, you have shuttle diplomacy going

11  on.  The mediator can't be in all places at all times.  So

12  he will say you guys carryon talking, I'm going down the

13  hall.  And they would say once he's out of the room, the

14  mediation somehow takes a separate turn.

15

16         That seems to me to put a real damper on the

17  mediation process and it makes it almost imperative that the

18  mediator sit in every session and it's going to take much

19  longer and it cramps the mediator's style and I don't think

20  that's a good idea.  What we were trying to do was come up

21  with a balance and that's what our proposal tries to

22  reflect.

23         THE COURT:  So now when somebody says, Your

24  Honor, I'd like you to send us to plan mediation and despite

25  the fact that this mediation order was more negotiated than

1  any other I've ever entered, there's now yet another layer

2  of dispute to be added at that stage when someone stands up

3  and says, well, if there is a settlement, what am I going to

4  be able to learn about it?  And those seeking mediation say

5  nothing.  What am I supposed to do?

6          MR. BENDERNAGEL:  Well, I think at that juncture,

7  I think the question is the parties -- I think that you --

8  well, I think you try to come up with a balance like we

9  basically did here.

10         I mean, think about this for a minute.  We're not

11 saying forever that you're not going to be able to get

12 discovery with respect to the mediation, go back to your

13 statement that there has to be a greater showing.  We're

14 essentially allowing them to take discovery from December 15

15 through the April settlement, then through essentially the

16 examiner report up until the first mediation sessions and

17 then alternatively during the mediation session, but not

18 with respect to the mediation day.

19         The question is if they cannot find as a result

20 of that evidence, evidence of collusion, evidence of bad

21 faith, the chances of them finding it on those few days that

22 have been exempted are very, very small if they exist at

23 all.  And if, in fact, but, if in fact, they find --

1          THE COURT:  Well are you telling me it might

2   exist?

3          MR. BENDERNAGEL:  No.

4          THE COURT:  No.

5          MR. BENDERNAGEL:  Well in the mind of who?  I am

6   quite sure that the plaintiffs will tell you it exists no

7   matter whether it exists or not.  I'm not suggesting from

8   our prospective that's the case, but beauty is in the eye of

9   the beholder and well I don't need to tell that parties see

10  things differently in this case.

11

12         The situation it seems to me though that is if

13  they don't find it in the material that we proposed, then

14  they can't make a showing that they need to invade the

15  mediation privilege and that the mediation privilege ought

16  to be honored.

17         And that's essentially the balance that we're

18  trying to strike with respect to the mediation order.  And I

19  think we've hit the right balance.  I think it accommodates

20  their need for discovery with respect to the process.  It

21  gives them the possibility down the road of coming back to

22  you and saying, Judge, look at this, we need to investigate

23  more.  But it essentially at the same time preserves the

24  mediation privilege.

25

1        And, you know, life's a balance in this kind of

2   thing and I think that you need to strike a balance here,

3   otherwise you have the possibility where a party is going to

4   say the opposite to the question you asked.  So let me get

5   this straight, I go to the mediation, I bare my soul, and if

6   I want to get the mediation approved, I've got to

7   essentially admit everything.  And the Judge says no, I'm

8   not going to approve this settlement, then all of that is

9   part of the public record.  I don't think I'm interested in

10  this mediation.  And that's not a good thing.

11       A final comment on the 12/15 date and I know Mr.

12  McCormack is going to address this, but I think it's

13  important since Mr. Zensky decided to quote Mr. Colin that I

14  stand up and explain what Mr. Conlin was about at that

15  juncture.

16

17       Remember, what we were talking about at that

18  point in time was the need for an extension of exclusivity.

19  And part of what we were proposing at the juncture was

20  establishing the document depository.  And that's the date

21  we're utilizing for discovery.  And the document depository

22  was put into place to facilitate the discovery process.

23       One of the things that became very apparent in

24  the Fall of 2009 and this was explained in our papers at

25  that juncture is parties were reluctant to negotiate on the

1  LBO.  Sure, there were some starts and stops on settlement

2  negotiation earlier, but the basic refrain was I haven't

3  sufficient time to study the documents.  The documents

4  haven't been produced.

5          The committee worked hard with the assistance of

6  the debtors and others to try and get the record fleshed out

7  in the Fall of 2009.  The reason for the document depository

8  is in working that out, we had all of these separate

9  confidentiality agreements that said some people could look

10  at it, some people couldn't.

11          The question was well how could anybody get a

12  view in this thing.  And we decided to put the document

13  depository, have a common protective order to facilitate

14  settlement negotiations.  And the reason we did it at that

15  juncture is because people were telling us that they would

16  be ready to negotiate in January.

17          There was a kickoff of those settlement

18  negotiations at Chadbourne in the first week of January and

19  the negotiations rolled forward from that.  That's the

20  rational.  Now the question is is there earlier stuff that

21  could be relevant?  Sure.  But again, you've got to make

22  determinations as to what is a reasonable compromise here if

23  we're going to get done given the amount of time that's been

24  allotted for this discovery.  And 12/15 seemed to work for

25

1  people with respect to the April plan, but it doesn't seem

2  to work for a later time period.

3          My sense is that the balance favors the proposal

4  we've made on that issue as well and I'll let Mr. McCormack

5  explain in more detail that issue.  I don't have anything

6  further, unless you have a question, Your Honor.

7          THE COURT:  I do not, thank you.

8          MR. MCCORMACK:  Good afternoon, Your Honor.  Tom

9  McCormack from Chadbourne on behalf of the official

10  committee of unsecured creditors.

11          I want to briefly mention something before I

12  specifically turn to the subject matter that has been

13  assigned to me.  And that is just so you know, the parties

14  engaged in an immense amount of negotiations.  I mean, many

15  of this in this room were on phone calls all through the

16  holidays.  We made efforts to reach compromises on so many

17  different subject matters, many of which are not even before

18  Your Honor.  So I wouldn't you want to think we hadn't

19  worked extremely hard to resolve an endless number of

20  problems because we have.  And I say that for this reason.

21          On the mediation front, you've heard the details

22  of that.  But we tried to make a compromise that balanced

23  those public policies that you've talked about with the

24  Aurelius' desire to have detail about some of the settlement

25

1    negotiations and the sequential development of that October

2    plan.  And I think that that compromise was reflected in the

3    proposal that you've seen from us.  And I hope that you will

4    see that that was a major compromise on our part because we

5    could have said that the public policy suggested none of

6    that stuff would be available.  But we thought there was an

7    appropriate --

8               THE COURT:  But you knew that wouldn't be a

9    winner so --

10               MR. MCCORMACK:  Well, we knew it wasn't going to

11   be a winner, but we -- I think that our point was simply

12   that we tried to come up with a balance and it -- and there

13   was, I don't know how many conversations we had on that, but

14   many, many hours worth.

15

16               Let me turn quickly, Your Honor, to the debtor,

17   committee, lender's position on the appropriate date for

18   discovery here.  It is of course our view that the December

19   15, '09 date for purposes of plan hearing, discovery as of

20   that date is fair and reasonable.  And, in fact, I think

21   given the case law in this district and this circuit, I

22   think you could argue that that is an overbroad amount of

23   discovery that we would be giving in this case given the

24   facts of the case.

25

1          As you may or may not know, in the last two or

2     three weeks, we have produced hundreds of thousands of

3     documents that relate to the settlement process and

4     otherwise and argue is that the Aurelius effort to move this

5     thing back before December 15, 2009 should be denied.

6          Let me quickly give you facts which you know, but

7     just let me put them on table and then I'll move to the

8     legal issue.

9          First of all, as you know, we've talked very

10    heavily about the October term sheet that was filed on

11    October 12, 2010 which is on which the plan is based.  And

12    then on October 22, the plan was formally filed with the

13    Court.

14

15          And of course as you've heard, it was the product

16    of a Court ordered mediation that commenced on September 26,

17    2010.  And of course all of that came about because of the

18    abandonment of the April plan in August of 2010, which in

19    itself arose as a result of the examiner's report being

20    filed in July of 2010.  So a great deal of activity began at

21    the examiner's report and then moved forward.

22          With regard to the relevant case law in this

23    district, Your Honor, I've read a lot the cases and of

24    course I've read very carefully the cases that you've

25    decided trying to get a sense of how Your Honor might react

1    to the standards that go into plan confirmation and the

2    discovery that relates to it.

3              THE COURT:  Well, good, tell me how I come out.

4                        (Laughter)

5              MR. MCCORMACK:  Well, I looked very carefully at

6    -- I'm never quite sure how to say it, *Abitibi* [ph].

7              THE COURT:  *Abitibi.*

8              MR. MCCORMACK:  Thank you, *Abitibi Bowater* and I

9    saw that you struggled with in that case whether a 9019 or

10   whether the 1129 standard would be applicable when you were

11   looking at the question of a plan that had a major

12   settlement built into it, if you will, much like ours will.

13             THE COURT:  Well, so the parties said.

14             MR. MCCORMACK:  Yes.  And a --

15             THE COURT:  This is -- I don't have that dilemma

16   here, this is a settlement plan.

17

18             MR. MCCORMACK:  All right.  So and my point, I

19   guess was essentially that with regard to the 9019

20   standards, I read your cases on that front as well and

21   ultimately the question of the good faith of the parties and

22   the arm's length nature of the negotiations would be

23   relevant to that purpose.

24             The question I would then say is relying on the

25   Third Circuit case law and on the other case law, especially

1    when it comes to the good faith requirements, they focused

2    primarily on the plan and they focused on the here the

3    settlement as well, the 9019 issues.  And relying on those,

4    it suggests that we wouldn't have really had to go back

5    farther giving the very significant events that occurred

6    after the examiner's report was filed to put on the table a

7    great deal of information with regard to the development of

8    that plan, the good faith of the parties, and all of the

9    people in it.

10            And as you know, one would be able to show, I

11   think we will be able to demonstrate that just from the date

12   of the examiner's report forward, there has been to quote

13   your case a lengthy sometimes a contentious plan negotiation

14   process involving many sophisticated well represented

15   constituencies.  And that goes to your point earlier, I

16   think about the nature of what's really taking place here

17   and the various parties and efforts that are underway.

18            But so we could have made a good faith position,

19   Your Honor, that the focus of the settlement negotiations,

20   the focus of the settlement process should have been from

21   the examiner's report forward, because quite frankly, things

22   changed pretty significantly after the examiner's report was

23   filed.  But we didn't do that.  Instead, we agreed to

24   produce documents all the way back to December 9, 2009.

25

1          And as Mr. Bendernagel said, the reason for that

2     date was a very logical, hopefully compelling from your

3     perspective view that it was that date that set up the

4     depository and also the date by which all the parties began

5     effectively, the settlement negotiations began the trading

6     of documents and the opening of the komodo, if you will,

7     with regard to all of the issues that started the heavy duty

8     settlement negotiations in this case.  So that is a logical

9     date and we could as I said have picked another date, but we

10    all concluded we should go back to the beginning and the

11    beginning is the date of the order, 12/15/09.

12          Now it's not as though that is a unique date or

13    time from the perspective of virtually everybody in the room

14    here because some of the parties were saying that that date

15    isn't good enough today or had a very different tune back at

16    that time.  And I think that the old statement that where

17    you stand depends on where you sit, people have moved around

18    in their seats a little bit and they've changed some of

19    their positions.

20          Originally, when we were looking in the April

21    plan, all of the parties essentially agreed that December of

22    '09 forward was the relevant period for looking at the

23    discussion of settlement negotiations, et cetera that would

1    have been looked at for the plan confirmation for that

2    hearing.

3              And, in fact, that has been confirmed recently in

4    a letter that Akin Gump sent on January 10, 2011, which

5    indicated that back when it represented Center Bridge which

6    of course was the precursor to Aurelius in this, but the

7    discovery that they gave up for the April period was from

8    the December '09 period forward, nothing back.

9              So that was the position they took at that time

10   as to what would be relevant to the April period and that

11   letter is cited in our brief.  I won't say I wasn't

12   positive, I tried to find the cite of it in the record, Your

13   Honor, and I wasn't sure that it had made it into the

14   record.  I don't know if Your Honor would like to have me

15   hand that up or simply file it with the Court, your

16   preference.

17   

18              THE COURT:  Thank you.

19              MR. MCCORMACK:  Well and so this is a letter that

20   indicates that with regard to the prior discovery on the

21   April plan, Akin Gump on behalf of Center Bridge said that

22   December '09 forward is the relevant timeframe and they

23   didn't produce documents before that date.  Now that was for

24   the April plan.

25

1        For all the reasons I'm talking about now, that's

2   doubly relevant to this October plan because they're now

3   saying it should go before December 9, not for the April

4   plan which they thought it should be limited that date, but

5   it should go all the way backward not for the April plan,

6   but for the October plan which is obviously the result of a

7   lot of dynamic behavior activity after the examiner's report

8   forward.

9        So they have a different position today.  Okay, I

10  got it, they're representing a different client, but the

11  logic of the December 15 date, the logic of starting this in

12  December '09 wasn't lost on them as a litigant previously.

13  And to me, it's even more relevant in light of the fact

14  we're not talking about April, we're now talking about the

15  October period and things that have flowed after that.

16

17        Now I guess my favorite part of their

18  presentation and this goes to something that you said

19  earlier.  My favorite part of your presentation or of their

20  presentation was their effort to try to establish collusion

21  or establish bad behavior that would justify going back

22  before even this generous timeframe.  And if you read their

23  brief, they do it by suggesting made up emails and made up

24  documents.  And I just admit, some of them, at least from

25  our perspective were pretty nasty in terms of what they were

1  suggesting could exist in these imagined hypothetical

2  emails.  But as you said yourself, what evidence is there is

3  that it would make sense to expand this date beyond what had

4  previously been understood by everybody to be a logical

5  break?  It certainly can't be based upon made up evidence.

6  It can't be made up on hypotheticals.  And I think that

7  their made up evidence in their listing of hypotheticals is

8  irrelevant, should be considered irrelevant to this

9  question.

10       It would be -- I was kind of having fun

11  yesterday.  I was writing up -- and I said well I could come

12  up with hypotheticals of my own if that was evidence and

13  I've got one, but I won't bother with it because it's a

14  little mean, but in reality, it would be silly for me to

15  cite a hypothetical and it wouldn't be fair and it would be

16  nasty and it wouldn't have anything to do with the issues

17  before Your Honor in terms of evidence or what's equitable

18  or right.

19       Let me just get more to the point on that.  And

20  I'm repeating myself slightly.  Which is that to date, over

21  40 million pages of documents have been produced in the LBO

22  related causes of action.  Hundreds of thousands of pages

23  have been produced in the last two or three weeks.  As you

24  could imagine, there are lots of people doing lots of

25

1    things.  And they haven't cited anything in that

2    documentation that suggests collusion or anything else.

3         And as you said in the *Abitibi-Bowater* case, when

4    you were talking about the allegations that came from the

5    noteholders against Fairfax and as the other Judge here said

6    in the *WaMu* case when they were talking about allegations

7    against counsel, et cetera, innuendo and accusations is not

8    enough and what you need is evidence and made up evidence is

9    not that and so, therefore, that can't be the basis to go

10   back or forward no matter how much creatively they did it.

11        And then my other point would be even if they

12   did, I mean, we've gone back to December of '09.  And even

13   if they had any desire to look into those subject matters,

14   that would be sufficient time.  It's plenty for them to have

15   uncovered the things that they claim should be in there if

16   they only had a chance to turn every single stone upside

17   down.  You said it yourself a moment ago and I wrote it down

18   in my notes myself as to what is not relevant to their

19   approaches?  Everything is relevant to them.  They want

20   everything from the beginning of time forward.

21        And that really comes to my last point which is

22   this is not about the ultimate merits of the case.  This is

23   obviously and nobody knows it better than you, a 9019 that

24   has its own standards for what you review.  And there has

25

1  been an immense amount of activity done.  And I agree with

2  you that the examiner's report is as comprehensive an

3  examiner's report as you're ever going to find, four new

4  pages of documents, an examination by the committee and it's

5  counsel, Zuckerman Spaeder, and also millions of pages

6  documents.

7          And so ultimately, I don't see the need when you

8  balance the marginal value of what they might find if they

9  go back before the date they previously acknowledged was the

10  right date.  I don't see the need to open up that headache

11  in a situation where we're working for a March 7 date.

12          And, therefore, Your Honor, I would say Aurelius'

13  motion to compel production before the December 15 '09 date

14  should be denied.  Unless you have any questions from me,

15  Your Honor, I appreciate your time.

16          THE COURT:  I don't, thank you.

17          MR. MCCORMACK:  Thank you.

18          MR. ZENSKY:  I have just five minutes or less,

19  Your Honor.  Thank you.

20          Just as an aside, Mr. McCormack's right there

21  were lots of hours of conversations over the holidays.  I

22  was on most if not all those calls.  And we did make a lot

23  of progress.  There were an enormous amount of issues that

24  were resolved.  And what I find surprising is that we got

25

1    beaten up by if you go by Mr. Johnston and Mr. Bendernagel

2    for having moved on issues and tried to reach common ground

3    and make concession --

4            THE COURT:  I don't hold that against you.

5            MR. ZENSKY:  I would think not anymore than if I

6    got up and said how much J.P. Morgan or Angelo or Oaktree

7    had moved as a result of the motion practice that you would

8    hold it against them.  So I don't think that was relevant or

9    appropriate, Your Honor.

10           I'll take the issues in reverse order.  On this

11   last issue, the one that Mr. McCormack addressed, I think he

12   was confused about part of our dialogue earlier.  I don't

13   think you challenged me to point to any sort of aura or

14   stench that would justify the earlier discovery.  I --

15           THE COURT:  I told you I didn't see it here.

16           MR. ZENSKY:  Yeah, I understood and I took that

17   to be related to the issues of the mediation order, at least

18   that's the way it was posited.

19           THE COURT:  Well, I guess it cuts across the

20   board on any of the confidentiality issues.  Crime fraud,

21   you know, the whole bit.  I just -- there's nothing here.

22           MR. ZENSKY:  Right.  Well, Your Honor, we

23   disagree.  I'm not going to go over ground we've tread

24   already, but there are conflicts all over the case and

25

1    evidence of just a lack of vigor in maximizing the

2    recoveries on these claims.  And Your Honor may not consider

3    that stench or whatever the right metaphor is, but the

4    people who did the deal negotiating the settlement counseled

5    by the law firm that they did the deal and doesn't think

6    they did anything wrong, that is in my book, Your Honor, a

7    big question mark as to the validity of how the settlement

8    came about.

9              In any event, Your Honor, the letter that was

10   submitted, as you know, we did formally represent Center

11   Bridge.  Whatever position they're taking in discovery at

12   this point they are being pursued as a third party.  Is

13   being determined by their counsel.  We don't represent them.

14   We couldn't.  And Aurelius has never taken an inconsistent

15   position on this issue so I don't know what mileage the

16   committee seeks to get out of that.

17

18             On the issue that Mr. Bendernagel addressed in

19   the mediation order, Your Honor, I've been to many

20   mediations in my time and I may have bared my soul or others

21   may have bared their soul to the mediator privately. I've

22   yet to be in a mediation where my adversary has bared his

23   soul to me.  So the -- let's get real as --

24             THE COURT:  Well, at least not at the beginning

25   anyway.

1          MR. ZENSKY:  Yeah.  As to how mediation's

2    function.  But the most confidential communications are with

3    the mediator himself and not with the other parties.  And

4    there is shuttle diplomacy, yes.  And our proposal was not

5    asking the Court to order discover of those confidential

6    communications.

7          The, you know, as far as what -- the message it

8    sends out depending on how the Court rules, you go into

9    mediation, you strive for a global settlement.  We don't

10   think that was the object here.  We were left on the side of

11   the highway, Your Honor, at best.  That -- and the only kind

12   of mediations or settlements that will be deterred are ones

13   that shouldn't be approved in the first place that don't

14   deserve any sort of confidentiality attached to them.

15

16          And if the parties in good faith with a debtor

17   fighting as hard as they can or a committee fighting as hard

18   they can, go into a mediation and produce a settlement that

19   is not universal, then the -- there's no -- there shouldn't

20   be any reluctance to have that aired insofar as they need to

21   satisfy an arm's length bargaining requirement.

22          And the last issue, Your Honor, excuse me, one

23   second.  Going back to where we started on the common

24   interest area.  Your Honor is quite right when you said this

25   is a gray area.  You were also quite right when you said

1  maybe it was fluid after the term sheet, but I would submit,

2  Your Honor, it wasn't may, might have been fluid, it was

3  fluid and we've set forth in our brief at Pages 15 to 16,

4  all of the issues or the key issues that at least we could

5  tell at this point were still under discussion between

6  adverse parties, between the term sheet and at least the

7  filing of the first plan, Your Honor.

8          And in an area where the Third Circuit says you

9  should construe the privilege narrowly because it does

10  interfere with the truth finding function, you can't find

11  that the -- everything had had come to rest based on the

12  term sheet.  And those issues include the releases of the

13  shareholders.  There's no mention of the shareholders being

14  released in the October 12 term sheet and then that appears

15  down the road as just being tossed in for no consideration.

16  The value of the settlement actually went down between the

17  term sheet and the plan, Your Honor, because the value of

18  the company went up.

19          So the natural waterfall recoveries to the

20  noteholders went up, but the settlement remained the same or

21  the plan distributions remained the same.  So the amount of

22  consideration associated with the settlement, the true

23  settlement went down between the term sheet and the plan,

24  Your Honor, so not everything was set in stone by the term

25

1    sheet.  And using the plan filing date or the final plan is

2    indeed a black line test.

3            Mr. Johnston said that in a Chapter 11 that our

4    proposal on who can be the communicator is ill-advised

5    because it forces the lawyers who are on the payroll to have

6    the discussions.  Your Honor, this is another area where we

7    need a reality check.  Are the clients getting together that

8    often to tell each other what their lawyers are telling

9    them?  That was the hypothetical that instead of --

10           THE COURT:  It frightens you, doesn't it?

11                       (Laughter)

12           MR. ZENSKY:  Many things do, Your Honor.  But or

13   that a client is getting together to discuss business

14   issues.  The common interest privilege does not protect

15   business communications, it protects legal communications.

16   And who is it in a Chapter 11 who is going to be sharing

17   legal advice and legal strategies, the lawyers or the

18   clients, Your Honor?  So I don't think this hypothetical was

19   well taken.

20           THE COURT:  Well, I don't know.  I mean, maybe.

21           MR. ZENSKY:  All right.  And finally, there was a

22   discussion about *Teleglobe*.  I think it would be fair to say

23   that that part of the decision is dicta, but it is the only

24

25

1    dicta we have in the Third Circuit, Your Honor, on this

2    issue.

3            And when Judge Sontchi went to discuss this issue

4    in *Leslie Controls*, he didn't cite *Rembrandt*, the Delaware

5    Trial Court decision as his authority for common interest

6    privilege.  He cited *Teleglobe* in Footnote 3.  So I would

7    submit that that is the best authority that this Court has

8    to follow on these issues and not *Rembrandt.*   And that's

9    all I have, Your Honor unless you have any questions.

10           THE COURT:  Thank you.  I'm going to take this

11   matter under advisement.  I may even write on it.  I will do

12   so just as quickly as I can.  Okay.  What other unfinished

13   business do we have?

14           MR. MOSKOWITZ:  Your Honor, Elliott Moskowitz of

15   Davis Polk for J.P. Morgan.  Perhaps others will have

16   something more to say than this, but I believe that I think

17   it's Item Number 6 with regard to the FCC issues is still

18   subject to further discussion and I think the parties have

19   agreed to carry that motion forward I think to February 8,

20   but others can -- others have more to say.

21           THE COURT:  Well, okay.

22           MR. FRIEDMAN:  Your Honor, may it please the

23   Court, Edward Friedman with Friedman, Kaplan, Seiler &

24   Adelman representing Aurelius with respect to the motion to

1  compel production of the FCC related documents from J.P.

2  Morgan.

3         It is correct that we have spent the last few

4  hours talking, but we are not yet at a point where have

5  agreed to put anything over until February 8.  So if, Your

6  Honor, wanted to take a short recess, we would try to

7  conclude our discussions and then report to the Court either

8  with some sort of agreement or not as the case may be.

9         THE COURT:  Okay.  I am going to take a short

10  break, but before I do, let's -- let me review are there any

11  other open issues to be addressed?

12         MR. KORPUS:  Your Honor, Sheron Korpus for

13  Kasowitz Benson for Law Debenture.

14

15         Item Number 10 on the agenda, Law Debenture's

16  motion concerning Merrill Lynch.  We have made substantial

17  progress and there are some extending issues but if we could

18  continue that until February 8, we're hoping that we'll be

19  in a better position at that point to resolve the motion.

20         THE COURT:  Okay.  February 8 at 1:00 p.m.  The

21  only other thing then besides the Item Number 6 is the

22  Wilmington Trust motion.

23         MR. LANTRY:  Your Honor, the debtors and

24  Wilmington Trust have reached an agreement on the language.

25

1  And because we didn't want to interrupt the proceedings, the

2  committee is looking at it right now.

3           THE COURT:  Okay.

4           MR. LANTRY:  So we're very much in the zone.  I

5  think I just want as you said to give you complete certainty

6  so maybe a few minutes on that.

7           THE COURT:  Okay.  So when I return, we'll

8  address Number 6 and Number 3 and that covers what is

9  remaining on the agenda today?

10          MR. LANTRY:  Your Honor, the committee has now

11 said it's fine.

12          THE COURT:  Oh.

13          MR. LANTRY:  Should I approach with the order or

14 would it be easier to read in the record?

15

16          THE COURT:  I'll read -- can you and up the

17 order?

18          MR. LANTRY:  Thank you, Your Honor.

19          THE COURT:  Has everyone who wishes to see it had

20 the opportunity to take a look at it?

21               (No audible response heard.)

22          THE COURT:  That order has been signed.

23          MR. LANTRY:  Thank you, Your Honor.

24

25

1          THE COURT:  Okay.  So then just Number 6 to

2    address when we return.  We'll take a break till 4:00.

3    Court will stand in recess.

4               (Recess from 3:49 p.m. to 4:05 p.m.)

5          THE CLERK:  All rise.  Please be seated.

6          THE COURT:  Somebody step up and tell me

7    something.

8          MR. FREIDMAN:  Your Honor, Edward Friedman.  With

9    respect to Motion Number 6, J.P. Morgan to compel, we have

10   agreed to put it over to February 8 and the hope and

11   expectation is that we will be able to report a resolution

12   prior to them before Your Honor.

13

14         THE COURT:  Okay, thank you.

15         MR. SCHIEBEL:  Your Honor, Damian Schiebel of

16   Davis Polk representing J.P. Morgan.

17         Just to clarify further on the record.

18   Obviously, our clients have not yet come to full agreement

19   on what we'll be providing, but from J.P. Morgan's

20   perspective and I think this was agreed by counsel to

21   Aurelius, we're putting this over with the expectation

22   understanding that there are, you know, a delineated number

23   of items that we've talked about and that's really what

24   we're down to on this agreement.  Because if we were wide

25   open on everything that was requested, frankly, we would ask

1    Your Honor to rule today.  But the understanding is subject

2    to talking with clients and documents and language, that

3    there's really four items we've been talking about and

4    that's all we're talking about.

5                    THE COURT:  Okay.

6                    MR. SCHIEBEL:  Thank you, Your Honor.

7                    THE COURT:  Is there anything further for today?

8                    UNKNOWN SPEAKER:  Can we have one minute, Your

9    Honor?

10                   THE COURT:  Certainly.

11                   UNKNOWN SPEAKER:  We're fine, Your Honor, thank

12   you.

13

14                   THE COURT:  Thank you all very much.  That

15   concludes this hearing.  Court will stand adjourned.

16        (Whereupon at 4:07 p.m., the hearing was adjourned.)

17

18                         CERTIFICATION

19        I certify that the foregoing is a correct

20   transcript from the electronic sound recording of the

21   proceedings in the above-entitled matter.

22

23

24   _____        25 January 2011
     Traci L. Calaman                            Date
25   Transcriber

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**2/10ths**(2) 62:21 73:4
**a.m**(2) 11:14 11:1
**abandonmen**(1) 159:17
**abhishek**(1) 9:12
**abid**(2) 4:16 88:3
**ability**(6) 32:4 81:7 88:20 108:22 113:20 150:24

**abitibi**(3) 160:6 160:7 160:8
**abitibi-bowater**(1) 166:3
**able**(11) 12:17 50:15 91:15 142:7 149:10 149:17 153:4 153:11 161:10 161:11 176:1

**about**(108) 14:21 16:6 16:22 17:2 17:24 18:1 20:21 20:23 23:4 23:5 23:14 25:12 26:15 28:9 33:23 34:20 35:5 35:14 35:17 37:9 39:21 44:12 45:2 48:22 48:23 53:8 53:24 54:11 59:4 62:16 63:20 64:4 66:19 66:20 68:5 68:6 74:6 74:7 75:5 77:17 77:22 78:14 80:3 85:15 90:11 91:19 92:2 103:14 104:20 105:3 105:4 105:4 107:5 107:13 111:23 116:14 117:1 117:3 120:16 120:23 120:24 122:13 122:20 125:6 125:2 126:1 126:15 126:15 126:18 127:22 128:11 128:14 129:5 130:8 131:8 131:9 131:19 132:9 136:9 136:10 136:12 136:15 147:8 147:10 148:10 151:5 151:22 153:4 153:10 155:14 155:16 157:23 157:24 159:10 159:16 161:16 164:1 164:14 164:1 166:4 166:6 166:22 168:12 169:8 172:22 176:22 177:3 177:4

**aboveentitled** (1) 177:20
**absolute**(1) 61:2
**absolutely**(5) 84:23 126:21 141:3 141:22 148:12

**absurd**(1) 121:4
**accept**(2) 93:17 114:24
**acceptable**(1) 37:5
**access**(3) 136:6 151:10 151:19
**accommodat**(1) 139:1
**accommodates**(1) 154:18
**accord**(3) 112:5 116:8 134:4
**accorded**(1) 21:14
**according**(3) 22:15 42:23 68:19
**account**(1) 79:11
**accrued**(1) 41:8
**accruing**(1) 39:19
**accusations**(1) 166:7
**achieving**(1) 133:14
**acknowledge**(1) 103:24
**acknowledged**(1) 167:9
**acknowledges**(1) 101:21
**acknowledging**(2) 96:9 141:5
**across**(2) 44:7 168:19
**act**(2) 59:13 115:10
**acted**(1) 28:12
**action**(3) 131:13 135:13 165:22
**activities**(1) 110:9
**activity**(4) 48:8 159:19 164:7 167:1
**actual**(9) 24:17 26:17 28:1 38:12 47:19 69:22 95:3 100:2 111:17

**actually**(25) 11:15 13:9 19:14 22:11 24:11 25:13 35:4 35:9 40:16 40:17 41:3 41:17 50:4 52:5 55:21 62:20 64:24 70:11 93:7 104:13 109:7 112:8 136:4 145:1 171:16

**adam**(1) 2:6
**add**(5) 35:4 62:3 62:16 65:15 82:10
**added**(6) 39:18 41:6 80:14 82:13 85:2 153:2

**adding**(1) 62:10
**addition**(7) 14:21 38:5 80:16 83:12 86:23 87:1 87:20

**additional**(9) 14:23 80:14 80:21 80:22 83:12 85:1 85:8 87:13 92:20

**additionally**(1) 71:22
**address**(14) 24:7 30:12 69:9 87:20 96:21 98:20 99:1 115:3 129:23 129:24 146:17 155:12 175:8 176:2

**addressed**(7) 30:23 42:17 66:1 78:17 168:11 169:17 174:11

**addressing**(1) 23:24
**adelman**(2) 8:12 173:24
**adequately**(1) 34:15
**adherence**(1) 121:14
**adjourned**(2) 177:14 177:15
**adjudicate**(1) 34:11
**adjudication**(3) 19:19 33:24 54:17
**adler**(13) 3:34 9:22 37:5 57:1 57:2 61:17 62:9 67:12 71:22 72:3 75:4 81:3 81:21

**adler's**(2) 63:21 69:4
**admit**(5) 13:21 143:9 144:19 155:7 164:23
**admitted**(1) 76:22
**admittedly**(1) 32:19
**adopt**(4) 33:16 96:14 107:18 114:2
**adopting**(1) 146:7
**adopts**(1) 104:11
**advance**(2) 81:13 132:11
**advanced**(3) 130:19 132:8 146:6
**advances**(1) 130:16
**adversarial**(1) 83:23
**adversary**(5) 17:23 115:7 169:21
**adverse**(7) 101:1 101:21 102:23 128:3 130:24 134:8 171:6

**adversity**(1) 131:5
**advertised**(1) 35:5
**advertisements**(1) 51:16
**advice**(7) 106:21 141:7 142:1 142:3 144:5 144:14 172:17

**advise**(1) 80:18
**advised**(1) 78:4
**advisement**(1) 173:11
**advisor**(4) 147:18 147:22 148:2 148:7
**advisors**(2) 147:17 147:18
**advocate**(1) 93:3
**advocates**(1) 93:23
**affect**(4) 22:7 58:12 91:12 91:13
**affecting**(2) 87:14 87:14
**affidavit**(4) 41:2 42:5 125:7 125:12
**afforded**(1) 104:4
**afield**(1) 102:21
**after**(27) 36:12 47:19 49:9 53:21 77:6 84:19 96:1 103:10 103:18 123:20 124:24 127:8 127:8 129:3 135:1 135:19 135:23 135:24 136:4 145:7 148:13 150:15 161:6 161:22 164:7 164:15 171:1

**afternoon**(11) 15:10 69:1 79:19 79:20 86:10 87:6 87:15 88:3 129:14 130:17 157:8

**again**(29) 15:14 19:12 29:1 33:2 34:10 44:23 44:24 53:6 56:4 56:1 58:20 65:13 65:20 66:18 69:21 75:17 76:7 86:1 90:18 125:1 127:20 127:24 128:18 137:15 139:19 139:19 141:3 156:21

**against**(8) 52:15 52:16 60:18 115:9 166:5 166:7 168:4 168:8

**age**(1) 121:4
**agenda**(8) 13:10 24:22 36:20 44:22 77:10 85:12 174:14 175:9

**agent**(1) 4:38
**aggregate**(2) 62:15

**aggressively**(1) 42:17
**ago**(5) 34:7 70:4 91:19 132:17 166:17
**agree**(22) 16:20 17:15 23:22 30:4 30:4 52:6 54:1 79:9 80:5 80:15 88:16 112:13 117:13 117:18 122:16 134:22 135:3 135:4 137:12 138:14 146:22 167:1

**agreeable**(1) 90:14
**agreed**(15) 15:3 50:8 53:18 56:9 78:22 90:8 95:20 97:17 140:19 161:23 162:21 173:19 174:5 176:10 176:19

**agreeing**(1) 146:1
**agreement**(26) 4:21 9:26 11:20 17:2 17:13 36:22 50:14 76:12 87:21 95:12 98:10 98:23 101:16 102:15 104:10 118:14 122:2 123:1 123:4 137:4 138:6 138:11 174:8 174:23 176:17 176:23

**agreements**(1) 156:9
**ahead**(2) 104:18 149:24
**ain't**(1) 111:3
**air**(2) 137:21 138:12
**aired**(1) 170:19
**aisle**(2) 44:7 138:20
**akin**(7) 4:12 7:45 87:7 88:3 90:19 163:4 163:20

**all**(140) 11:2 11:4 11:11 12:8 13:4 14:17 15:16 18:11 18:13 18:22 22:1 24:7 24:19 25:11 27:18 30:8 31:1 31:5 32:15 34:2 34:14 36:3 36:5 36:9 36:22 37:14 38:20 40:1 40:20 41:12 42:21 43:7 43:9 43:21 44:12 45:7 46:11 46:11 47:9 47:13 47:19 50:5 50:23 54:16 54:20 55:2 55:3 56:22 59:11 59:14 59:16 63:18 65:8 66:8 66:24 67:10 68:21 72:6 76:18 77:3 79:18 79:20 81:7 82:7 82:12 82:18 84:22 85:2 85:5 85:11 86:10 89:12 91:7 91:12 94:11 94:13 94:14 94:17 94:24 95:4 95:5 99:3 99:15 102:10 102:19 103:7 103:8 103:11 105:6 108:2 109:1 116:24 117:21 120:10 121:1 122:16 122:21 124:12 124:22 125:2 128:1 129:13 129:19 130:7 131:18 131:22 136:6 136:8 138:19 139:22 140:4 146:3 147:9 151:24 152:6 152:11 152:11 153:23 155:8 156:8 157:15 159:9 159:16 160:17 161:8 161:24 162:4 162:7 162:10 162:21 164:1 164:5 167:22 168:24 171:4 172:21 173:9 176:5 177:4 177:13

**allegations**(4) 83:13 83:14 166:4 166:6
**alleged**(2) 129:17 130:8
**allicon**(1) 6:17
**allinson**(1) 3:19
**allocable**(1) 117:2
**allocated**(2) 114:23 149:15
**allocation**(3) 102:2 103:14 129:6
**allotted**(1) 156:24
**allow**(13) 34:20 46:20 49:19 52:23 54:15 55:18 59:6 68:4 69:14 74:20 148:20 149:4 151:19

**allowability**(2) 54:5 66:16
**allowance**(12) 37:15 47:19 53:3 53:5 54:18 57:4 69:9 69:12 69:16 69:21 69:22 77:15

**allowed**(18) 20:13 20:15 25:21 29:14 42:2 49:24 55:10 57:12 57:21 57:24 61:22 65:7 65:17 67:19 69:18 75:15 86:20 122:5

**allowing**(4) 38:18 58:2 58:16 153:14
**allows**(1) 62:8
**almost**(1) 152:16
**along**(5) 18:2 38:1 42:6 45:21 77:16
**already**(7) 17:7 23:11 31:15 40:14 117:23 120:2 168:24

**also**(30) 27:12 30:4 36:16 38:7 39:13 47:17 49:9 51:15 53:18 63:6 72:5 74:7 75:2 76:1 78:3 82:9 86:17 88:20 89:1 91:11 98:18 107:8 108:21 125:6 126:6 130:11 148:9 162:4 167:5 170:24

**alternative**(3) 95:2 103:21 104:1
**alternatively**(1) 153:17
**although**(3) 51:13 76:22 132:7
**alvarez**(1) 8:24
**always**(1) 44:3
**amanda**(1) 4:6
**ambit**(1) 27:17
**amend**(4) 38:15 62:5 62:5 86:24
**amended**(5) 80:14 95:6 139:17 139:18 139:19

**amendmen**(11) 58:10 58:11 66:4 66:6 66:12 66:23 67:22 71:8 72:7 72:9 77:17

**amendments**(4) 136:3 136:4 136:22 138:23
**america**(2) 6:21 6:27
**american**(2) 56:17 63:2
**americas**(2) 4:48 57:3
**amit**(1) 7:26
**among**(13) 47:17 114:23 119:11 119:14 121:10 133:10 133:17 134:6 135:12 135:1 137:5 137:17 137:18

**amongst**(3) 122:15 132:24 144:14
**amount**(53) 19:19 20:14 20:15 20:16 21:1 22:1 22:15 23:2 25:21 26:9 26:11 26:19 27:2 29:14 29:15 30:2 32:10 37:9 40:4 42:2 50:5 52:16 54:1 54:16 57:5 57:24 58:16 62:14 65:17 65:18 66:15 66:20 67:8 67:9 67:19 68:5 68:6 69:14 71:23 72:2 72:3 74:21 76:17 85:24 86:21 116:1 116:12 156:23 157:14 158:21 167:1 167:23 171:21

**amounts**(3) 47:15 53:19 77:15
**analogy**(1) 27:20
**analysis**(2) 116:8 127:2
**analyzing**(1) 60:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 11:10 11:13 11:16 11:17 11:18 12:3 12:22 13:2 13:7 13:9 14:10 14:10 14:10 14:21 14:24 15:2 15:4 15:17 15:17 16:6 16:11 16:15 16:20 16:22 17:19 17:25 18:1 18:20 19:7 19:8 19:16 19:20 20:4 20:8 20:14 20:14 21:4 21:5 21:6 21:8 21:10 21:11 21:16 21:22 22:6 22:7 22:8 22:10 22:14 22:16 22:23 22:24 23:5 23:9 23:10 23:15 23:15 23:18 23:20 24:1 24:1 24:2 24:7 24:13 25:5 25:7 25:8 26:3 26:5 26:7 26:9 26:22 27:5 27:8 27:13 27:22 28:7 28:16 28:17 28:20 28:24 29:4 29:13 29:15 29:19 29:21 29:22 30:1 30:3 30:6 30:9 30:9 30:9 30:16 30:21 31:3 31:5 31:11 31:13 31:15 31:18 31:22 31:22 32:12 32:13 32:20 32:22 33:7 33:7 33:9 33:22 34:2 34:6 34:10 34:13 34:14 34:17 34:18 34:21 35:14 35:16 35:17 35:22 35:22 36:4 36:12 36:19 36:21 36:21 37:7 37:17 37:21 37:22 38:6 38:9 38:12 38:13 38:15 38:19 38:20 39:1 39:2 39:5 39:9 39:11 39:13 39:17 39:19 39:19 40:3 40:5 40:8 40:10 40:11 40:11 40:18 40:18 41:4 41:4 41:5 41:7 41:8 41:10 41:17 41:20 42:5 42:18 42:24 43:3 43:4 43:8 43:9 43:10 43:12 43:15 43:16 44:5 44:6 44:8 44:12 44:13 45:1 45:9 45:11 45:17 45:18 45:20 45:23 45:23 46:1 46:5 46:7 46:7 46:13 46:13 46:14 46:18 47:2 47:5 47:9 47:14 47:16 47:23 48:1 48:3 48:9 48:13 48:21 48:23 49:3 49:7 49:11 49:13 49:18 49:24 50:4 50:10 50:16 50:16 50:21 50:23 51:1 51:7 51:9 51:10 51:10 51:18 52:3 52:7 52:7 52:8 52:13 52:15 52:16 53:13 53:16 53:16 53:17 53:22 54:3 54:4 54:11 54:16 54:21 55:3 55:17 55:20 56:6 56:7 56:11 56:12 56:12 56:12 56:13 56:17 56:17 57:9 57:10 57:11 57:12 57:22 57:23 58:1 58:2 58:2 58:4 58:5 58:14 58:15 58:16 58:23 58:23 58:24 59:3 59:13 59:15 59:18 59:22 59:24 60:2 60:8 60:14 60:21 60:21 61:1 61:9 61:10 61:12 61:15 61:18 61:21 61:22 62:2 62:5 62:7 62:8 62:12 62:15 | | **and**(301) 62:17 62:20 63:5 63:16 64:11 64:12 64:16 64:23 65:2 65:6 65:8 65:16 65:18 65:19 65:23 66:1 66:2 66:8 66:9 66:16 66:19 67:15 67:18 67:18 67:19 67:22 68:6 68:15 68:16 68:17 68:19 69:2 69:7 69:11 69:17 69:21 69:22 70:5 70:6 70:16 70:18 70:22 70:23 70:24 71:2 71:3 71:5 71:6 71:7 71:7 71:15 71:17 71:17 71:18 71:19 71:24 72:7 72:10 72:11 72:15 72:16 73:6 73:20 73:22 74:2 74:5 74:10 74:21 75:1 75:5 75:9 75:12 75:21 75:24 76:1 76:4 76:6 76:7 76:13 76:15 76:16 76:19 76:21 76:21 76:22 77:1 77:4 77:5 77:11 77:12 77:15 78:3 78:5 78:9 78:15 78:17 78:18 78:21 79:4 79:7 79:10 79:23 80:4 80:6 80:15 80:18 81:4 81:8 81:9 81:16 82:12 82:16 82:19 82:23 83:7 83:14 83:14 84:2 84:8 84:9 85:14 85:15 85:16 85:18 85:24 86:5 86:17 86:19 86:24 87:8 87:11 87:16 87:17 87:19 87:23 88:12 89:22 89:22 90:1 90:5 90:7 90:9 90:11 90:13 90:15 91:5 91:8 91:14 91:17 91:17 91:22 92:1 92:2 92:2 92:8 92:9 92:14 92:16 92:17 92:19 92:22 93:3 93:4 93:6 93:8 93:13 93:21 93:23 93:24 94:10 94:11 94:15 94:18 94:22 95:3 95:3 95:4 95:4 95:9 95:14 95:15 95:21 95:22 96:3 96:4 96:7 96:9 96:11 96:11 96:14 96:16 96:19 97:11 97:15 97:19 97:22 98:15 98:18 98:20 98:20 98:21 98:22 98:23 99:1 99:5 99:11 99:16 99:19 99:19 99:21 99:22 99:24 99:24 100:4 100:5 100:5 100:6 100:6 100:7 100:8 100:13 100:16 100:17 100:20 100:23 100:24 101:2 101:4 101:6 101:8 101:11 101:15 101:16 101:22 101:2 101:23 102:2 102:3 102:6 102:7 102:10 102:14 102:19 102:22 102:23 103:1 103:4 103:8 103:10 103:12 103:20 103:23 104:1 104:11 104:20 104:22 105:1 105:5 105:9 105:14 105:21 106:9 106:20 107:1 107:2 107:11 107:13 107:19 107:19 108:5 108:6 108:7 108:14 108:17 108:18 108:20 109:1 109:2 109:3 109:7 109:15 109:18 109:21 109:23 110:7 110:8 110:10 110:11 110:24 111:3 111:7 111:10 111:10 111:11 111:16 111:19 111:20 111:23 112:6 112:6 112:9 | | **and**(301) 112:14 113:8 113:9 113:11 113:13 113:17 113:17 113:18 113:18 114: 114:6 114:12 114:19 114:19 114:19 115: 115:10 115:11 115:22 115:24 116:15 116:15 116:19 116:24 117:7 117:9 117:10 117:12 117:19 118:3 118:9 118:9 118:12 118:12 118:18 118:21 118:22 119:1 119:9 119:10 119:11 119:13 119:17 119:18 119:22 120:1 120:5 120:7 120:8 120:9 120:11 120:13 120:15 120:18 120:19 120:21 120:21 120:22 121:4 121:5 121:8 121:8 121:8 121:9 121:10 121:10 121:13 121:15 121:18 121:20 121:23 122:3 122:8 122:13 122:16 122:16 122:17 122:18 122:20 122:20 123:2 123:7 123:16 123:18 123:19 123:21 123:22 124:2 124:8 124:10 124:15 124:17 124:21 124:23 125:1 125:5 125:11 125:13 125:14 125:16 125:18 125:18 125:21 125:22 126:2 126:3 126:5 126:8 126:8 126:10 126:18 126:23 127:11 127:2 127:3 127:3 127:7 127:10 127:10 127:11 127:15 127:19 127:20 127:21 127:22 127:22 127:24 128:1 128:2 128:5 128:5 128:10 128:11 128:13 128:13 128:1 129:16 130:2 130:3 130:7 130:8 130:9 130:20 131:3 131:5 131:10 131:14 131:19 132:4 132:5 132:11 132:12 132:13 133:7 133:11 133:14 133:15 133:18 133:19 134: 134:10 134:16 134:19 134:20 134:23 135:5 135:9 135:12 135:15 135:18 135:23 136:1 136:6 136:8 136:8 136:11 136:12 136:14 136:17 136:19 137:1 137:6 137:2 137:14 137:18 138:9 138:14 138:15 139:7 139:8 139:14 139:19 140:9 140:10 140:12 141:3 141:8 141:9 141:18 141:22 141:24 142:15 142:22 143:6 143:9 143:12 143:19 143:24 144:13 144:14 145:4 145:5 145:20 146:2 146:6 146:21 147:3 147:3 147:7 147:19 148:7 148:8 148:12 148:14 148:15 148:17 148:19 148:22 149: 149:10 149:12 149:14 149:17 149:21 150:9 150:16 150:20 150:22 150:2 151:1 151:2 151:4 151:5 151:6 151:14 151:15 151:17 151:22 151:23 151:24 152: 152:5 152:7 152:9 152:13 152:16 152:17 152:18 152:18 152:22 152:23 153:3 153: 153:16 153:23 154:9 154:14 154:16 154: 154:21 155:1 155:2 155:5 155:7 155:10 155:11 155:14 155:18 155:19 155:20 155:23 156:1 156:6 156:6 156:12 156:14 156:18 156:24 157:4 157:13 157:20 158: 158:2 158:3 158:12 158:12 158:19 158:19 | | **anew**(1) 17:11<br>**angeles**(1) 4:34<br>**angell**(2) 3:41 5:32<br>**angelo**(7) 6:43 6:48 11:16 120:5 129:16 135:18 168:6<br><br>**anna**(2) 7:17 7:17<br>**announce**(1) 135:15<br>**announced**(2) 99:23 137:8<br>**announcemen**(1) 135:17<br>**another**(17) 37:1 55:7 63:6 70:20 72:8 73:5 113:2 113:3 114:18 115:15 121:23 141:8 142:20 144:1 153:1 162:9 172:6<br><br>**answer**(5) 21:18 54:12 56:15 85:4 146:11<br>**answered**(1) 150:14<br>**answering**(1) 30:22<br>**answers**(1) 120:21<br>**anticipate**(2) 51:15 51:19<br>**anticipating**(1) 112:10<br>**antithesis**(1) 116:19<br>**any**(85) 12:1 17:15 18:9 22:3 25:6 28:18 30:8 33:10 39:11 39:16 40:19 40:21 49:19 52:1 53:7 53:7 54:1 54:3 62:6 63:16 63:17 66:8 67:8 70:10 72:18 79:14 81:5 81:9 82:2 82:17 83:23 87:19 89:23 91:3 94:6 94:14 94:15 95:2 95:5 95:14 98:3 98:4 98:5 98:7 98:12 99:6 99:16 100:1 100:1 102:6 103:9 112:2 112:5 112:7 119:5 119:13 119:14 119:15 120:10 123:22 124:9 124:15 124:18 124:19 127:7 130:20 133:19 139:9 140:9 143:2 143:12 146:10 147:10 150:19 150:22 153:1 166:13 167:14 168:13 168:20 169:9 170:14 170:19 173:9 174:10<br><br>**anybody**(6) 13:20 42:6 110:19 110:21 114:20 156:11<br><br>**anymore**(1) 168:5<br>**anyone**(9) 13:17 36:1 73:3 73:7 81:18 113:13 128:7 142:22 143:1<br><br>**anything**(22) 34:11 45:22 62:3 66:13 66:22 84:4 93:22 100:2 110:8 114:9 114:10 118:11 121:17 123:14 128:23 157:5 165:16 166:1 166:2 169:6 174:5 177:7<br><br>**anyway**(5) 17:7 21:9 65:3 77:13 169:24<br>**anywhere**(2) 45:8 59:17<br>**apart**(4) 45:16 62:13 140:4 149:6<br>**apologize**(2) 12:10 42:12<br>**apparent**(1) 155:22<br>**apparently**(2) 17:3 129:19<br>**appear**(3) 35:5 52:17 70:21<br>**appearances**(6) 1:20 6:1 7:1 8:1 9:1 10:2<br>**appeared**(2) 16:2 58:1<br>**appearing**(1) 36:17<br>**appears**(1) 171:14<br>**appeasing**(1) 93:20<br>**appellant**(1) 145:18<br>**applicable**(7) 38:2 39:1 70:24 97:14 133:1 140:12 160:10<br><br>**applications**(2) 44:9 46:8<br>**applied**(3) 16:19 47:18 106:4<br>**applies**(4) 133:4 134:6 134:8 134:11<br>**apply**(7) 102:13 106:3 108:10 133:3 141:2 141:10 142:21<br><br>**applying**(2) 17:11 145:14<br>**appointed**(1) 43:8<br>**appreciate**(3) 34:17 56:1 167:15<br>**approach**(5) 81:23 90:14 97:6 115:13 175:13<br><br>**approaches**(1) 166:19<br>**appropriat**(9) 48:9 94:2 122:7 126:18 129:4 130:2 158:7 158:16 168:9 |
| | | | | **and**(115) 158:20 159:3 159:4 159:7 159:1 159:14 159:16 159:20 159:22 160:1 160: 160:14 160:17 160:19 160:20 160:24 161: 161:3 161:8 161:10 161:15 161:17 161:1 162:1 162:4 162:6 162:9 162:10 162:16 162:18 163:3 163:10 163:13 163:18 163:2 164:13 164:15 164:17 164:21 164:22 164:23 165:6 165:11 165:12 165:15 165:1 165:16 165:19 166:1 166:3 166:5 166:7 166:8 166:8 166:9 166:11 166:12 166:17 166:21 166:23 166:24 167:1 167:4 167:5 167:7 167:12 167:22 167:24 168:1 168:2 168:3 168:6 168:16 168:24 169:2 169:5 169:14 169:19 170:3 170:3 170:4 170:11 170:15 170:17 170:21 171:3 171:6 171:8 171:12 171:14 171:17 171:23 172:1 172:17 172:21 173:3 173:8 173:8 173:18 174:7 174:16 174:22 175:1 175:8 175:8 175:15 175:6 176:10 176:10 176:19 176:2 177:2 177:2 177:3<br><br>**and/or**(1) 139:18<br>**anderson**(1) 3:4<br>**andrew**(8) 6:39 6:45 7:5 7:11 7:12 9:11 9:18 9:44 | | | |

| Word | Page:Line |
|------|-----------|

appropriately(1) 22:17
approval(2) 131:3 133:15
approve(2) 116:9 155:8
approved(3) 100:9 155:6 170:13
approves(1) 131:6
approximately(6) 25:10 25:22 29:3 30:2 57:6 86:21

april(28) 22:24 70:15 70:18 72:16 75:20 76:8 76:13 84:20 104:5 104:7 104:10 139:10 139:11 139:15 139:17 139:17 139:22 153:15 157:1 159:17 162:20 163:7 163:10 163:20 163:23 164:3 164:5 164:8

arbitrarily(1) 128:20
arbitrary(2) 135:13 135:13
are(181) 11:18 11:10 11:23 12:2 12:15 14:1 14:23 17:19 20:8 21:7 22:8 22:12 22:16 23:7 27:13 27:16 28:8 28:11 29:2 30:3 37:11 37:20 37:22 38:2 38:2 38:7 38:10 38:12 39:4 39:10 39:19 39:23 41:11 43:10 43:16 43:16 43:22 44:9 44:18 45:10 45:16 49:17 50:21 51:8 51:14 52:4 54:17 55:4 57:11 58:6 59:18 60:6 60:18 62:16 65:17 66:13 67:23 71:18 71:19 73:10 73:19 74:12 74:15 74:23 75:10 75:24 77:3 78:8 83:12 84:1 87:15 89:18 90:21 90:23 91:20 91:21 93:7 93:24 94:6 94:20 95:21 96:11 97:13 97:16 98:7 98:17 98:22 98:23 99:11 99:19 100:22 101:1 101:11 101:15 101:17 102:22 103:1 103:12 104:6 104:14 104:23 105:2 105:5 105:17 105:22 106:1 106:1 106:9 106:16 106:13 106:23 107:4 107:6 107:19 108:21 109:18 110:18 111:7 111:1 113:10 115:6 117:5 117:10 117:12 118:12 119:7 119:9 120:13 122:19 126:12 127:1 128:3 128:4 128:9 128:9 128:10 128:12 128:16 129:2 131:3 131:17 134:7 134:8 134:18 137:12 143:16 147:4 148:7 149:9 150:19 151:3 153:22 154:1 157:17 161:17 165:24 168:24 169:12 170:2 170:12 170:23 172:7 172:8 174:4 174:10 174:16 176:21

area(9) 92:4 92:8 94:6 98:13 136:23 170:23 170:24 171:8 172:6

aren't(3) 39:6 125:12 125:13
arguably(1) 121:12
argue(15) 24:13 24:18 27:12 77:18 84:4 89:16 112:10 113:10 121:16 122:2 122:5 123:4 123:6 158:21 159:4

argued(3) 72:3 97:18 140:9
argues(2) 36:3 114:14
arguing(1) 100:10
argument(10) 16:7 25:16 40:7 69:10 75:5 75:20 99:21 115:24 133:24 146:18

arguments(5) 24:15 35:16 35:18 57:6 69:6
arise(8) 60:9 60:11 62:7 66:10 100:11 100:12 138:16 139:22

arisen(2) 105:7 113:4
arises(1) 50:10
arising(6) 28:10 29:8 29:9 59:11 59:14
arm's(19) 91:16 92:1 94:2 113:23 114:9 114:12 115:12 115:21 116:20 117:16 118:20 119:23 121:16 122:2 123:5 124:1 130:13 160:21 170:20

aroma(1) 111:2
arose(9) 95:19 135:7 135:9 136:2 139:3 139:10 139:16 140:2 159:18
around(2) 108:15 162:17
arrange(1) 84:19
article(2) 38:24 39:1

articulated(2) 151:16 151:17
asbestos(2) 102:6 102:9
ashby(1) 4:4
ashish(1) 10:12
ashley(1) 2:14
aside(1) 167:20
ask(20) 15:1 16:5 16:11 18:24 44:20 55:7 57:12 79:10 103:18 107:18 110:18 120:23 120:23 123:10 128:22 131:8 146:6 146:23 148:9 176:24

asked(25) 16:12 16:17 18:22 23:17 41:6 53:17 54:20 56:12 94:11 94:17 94:22 94:23 95:4 95:11 96:13 104:7 104:20 114:5 114:5 116:14 118:2 124:13 149:3 150:12 155:4

asking(10) 22:6 81:4 98:11 104:12 111:17 111:21 118:13 124:12 129:5 170:5

asks(1) 46:5
aspect(1) 136:20
aspects(3) 92:13 115:21 128:11
assert(9) 58:6 68:1 68:10 72:5 73:11 75:10 75:15 81:5 114:24

asserted(7) 40:4 40:23 53:19 68:8 79:1 86:21 130:22

asserting(2) 32:16 98:14
assess(2) 48:13 49:5
assessing(3) 46:5 47:15 47:18
assessment(5) 46:20 46:21 49:15 50:4 59:7

asset(1) 6:31
assets(1) 117:2
assigned(1) 157:13
assistance(1) 156:5
associated(1) 171:22
assumed(1) 116:18
assuming(1) 50:7
assure(1) 43:15
assured(1) 135:14
assuredly(1) 131:11
assuring(1) 135:16
asterisk(1) 66:20
atamian(1) 7:27
attach(1) 127:16
attached(8) 37:24 80:17 94:10 96:17 96:15 100:4 108:8 170:14

attaching(1) 149:1
attachment(1) 151:16
attempt(1) 147:1
attempted(2) 22:14 61:6
attempting(1) 82:16
attempts(1) 51:18
attention(2) 42:11 148:8
attorney(8) 41:19 49:2 100:23 129:1 132:23 141:1 141:24 141:24

attorney's(7) 66:10 66:16 66:19 74:23 75:2 86:19 87:1

attorney/client(6) 46:6 100:21 102:4 106:21 132:19 141:9

attorneys(10) 104:24 106:2 107:4 107:5 107:20 140:6 140:16 141:18 144:6 144:7

attractive(2) 136:20 137:13
attractiveness(1) 137:10
attribution(1) 47:6
audible(2) 79:15 175:20
august(6) 76:11 104:10 127:21 127:24 127:24 159:17

aura(2) 104:22 168:13

aurelius(14) 4:4 7:45 8:4 43:11 64:6 87:8 88:4 157:24 159:4 163:6 167:12 169:14 173:24 176:20

austin(2) 1:22 6:10
authority(8) 62:22 82:10 82:14 105:24 106:5 106:12 173:5 173:7

authorized(1) 17:7
availability(1) 17:5
available(7) 79:10 117:1 117:21 117:21 122:5 123:6 158:6

avenue(7) 2:31 3:15 3:36 3:51 4:7 4:48 5:22

avoid(1) 143:8
avoidance(1) 92:19
aware(4) 20:3 23:11 24:13 66:18
away(4) 114:19 115:17 138:18 143:11
awfully(1) 130:10
back(42) 15:10 22:11 22:24 28:12 28:22 29:8 32:4 49:7 50:4 55:2 72:12 74:13 76:7 76:11 85:17 100:24 120:7 120:14 121:9 125:20 126:14 129:6 129:19 132:13 133:23 139:22 141:23 149:23 153:12 154:20 159:5 161:4 161:24 162:10 162:16 163:5 163:8 164:20 166:10 166:12 167:9 170:22

backed(2) 130:17 150:7
background(1) 19:23
backup(4) 42:4 53:19 53:20 53:22
backward(1) 164:5
backwards(1) 137:1
bad(7) 64:9 64:10 73:17 115:18 117:12 153:20 164:20

baiera(1) 6:49
balance(13) 17:8 151:6 151:11 151:19 152:20 153:8 154:16 154:18 155:1 155:2 157:3 158:12 167:8

balanced(1) 157:22
balancing(1) 110:22
bale(1) 7:37
bank(40) 3:41 4:39 5:32 6:21 6:27 7:21 8:34 8:38 9:21 10:6 26:3 29:19 29:21 31:13 36:21 37:5 56:22 57:2 57:5 57:23 58:24 59:7 59:13 59:22 60:14 60:23 62:15 67:14 68:4 69:5 69:7 71:24 75:7 77:12 77:18 86:19 86:22 99:19 107:9 139:13

bank's(1) 75:9
bankruptcy(17) 1:1 1:18 22:14 63:9 79:5 93:8 93:18 106:4 106:10 106:23 123:23 125:16 132:2 134:3 144:9 144:10 144:11

banks(8) 98:23 100:6 101:15 102:14 107:12 107:13 113:18 126:6

bar(2) 47:16 103:11
barclays(5) 3:41 5:32 7:24 7:30 20:14 29:19 29:21 30:1 30:16

bare(1) 155:5
bared(3) 169:19 169:20 169:21
bargained(2) 32:12 112:17
bargaining(17) 91:17 92:1 94:2 114:1 114:12 115:12 115:21 116:20 117:17 118:21 119:23 121:17 122:2 123:5 124:1 130:13 170:20

barnes(1) 5:38
based(16) 29:3 46:22 51:16 52:17 55:5 90:1 90:1 90:3 90:14 98:24 116:1 116:10 125:8 159:11 165:5 171:11

bases(1) 43:18
basic(3) 122:6 148:22 156:2
basically(4) 148:19 150:8 151:11 153:9

basis(13) 40:22 48:13 49:19 52:2 55:8 59:2 60:1 124:22 124:22 128:16 128:20 130:21 166:9

bayes(1) 2:44
bear(4) 33:10 35:10 45:16 82:2
beaten(1) 168:1
beauty(1) 154:8
became(2) 134:19 155:22
because(67) 11:13 12:6 14:6 17:4 23:16 29:11 32:5 32:23 39:6 40:14 40:24 41:19 45:10 45:19 46:6 50:5 51:6 54:6 57:19 59:20 61:8 61:19 62:9 64:9 67:13 70:12 71:23 73:10 74:3 75:10 75:23 91:6 102:10 106:3 108:16 112:11 113:20 117:24 120:9 121:17 122:1 128:4 132:9 136:2 137:3 137:4 138:11 140:19 142:19 143:8 144:8 146:21 147:23 149:6 156:15 157:20 158:4 159:16 161:21 162:14 164:2 165:13 171:9 171:17 172:5 175:1 176:23

become(4) 45:2 45:14 51:23 131:1
becomes(3) 25:9 54:21 63:22
becoming(1) 131:19
been(68) 15:19 17:5 19:2 19:4 19:9 23:21 31:18 34:1 34:2 41:9 42:19 43:20 44:3 44:8 46:7 46:15 46:18 48:16 49:9 49:12 50:22 51:2 51:2 52:6 53:6 65:20 72:9 76:1 78:2 78:2 78:4 79:1 82:17 83:22 84:16 86:17 87:16 88:16 91:9 92:23 94:4 116:23 117:19 125:23 126:2 126:4 133:8 143:5 146:21 147:2 147:19 151:8 153:22 156:4 156:23 157:12 161:12 161:20 163:1 163:3 165:4 165:21 165:23 167:1 169:18 171:2 175:21 177:3

before(47) 1:17 12:16 14:1 16:4 21:7 22:13 23:24 24:6 30:17 30:22 42:11 55:3 56:6 79:14 82:23 83:4 83:6 83:6 83:8 83:10 83:14 83:15 87:11 88:18 89:6 90:20 99:3 102:6 108:4 110:23 118:11 125:3 131:18 143:7 146:18 148:12 157:11 157:17 159:5 163:22 164:3 164:21 165:17 167:9 167:13 174:10 176:12

began(3) 159:19 162:4 162:5
begin(4) 13:1 138:7 142:17 146:2
beginning(6) 124:14 126:3 162:10 162:11 166:20 169:23

behalf(12) 11:6 16:15 18:17 29:21 33:20 36:17 57:2 75:18 88:4 157:9 163:20

behavior(2) 164:7 164:20
beholder(1) 154:9
being(87) 22:5 34:11 43:8 43:11 47:10 53:2 55:19 64:12 67:13 67:19 68:9 69:18 76:4 91:21 94:7 99:20 101:2 104:4 105:11 106:4 115:2 115:6 117:7 159:18 169:12 169:13

believe(26) 25:3 25:19 26:15 26:22 27:16 28:8 33:11 39:13 42:16 45:20 47:16 58:11 60:6 63:15 71:13 81:3 82:17 86:8 88:8 89:3 89:6 95:22 111:22 133:13 135:3 173:16

believes(3) 25:4 33:6 81:11
belong(3) 22:18 45:8 45:12
bench(4) 42:10 42:11 77:6 96:22
bendernagel(15) 1:23 89:11 89:13 89:16 90:17 129:24 146:12 146:15 146:15 153:6 154:3 154:5 162:1 168:1 169:17

beneficiaries(1) 93:13
benefit(4) 16:3 23:24 112:23 141:3
benesch(1) 4:17
bennett(8) 4:29 9:26 9:27 11:17 12:5 12:12 126:5 129:15

benson(5) 5:11 10:16 14:19 69:2 174:13
bernstein(2) 2:29 126:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| besides(1) 174:20 | | brass(1) 8:17 | | but(208) 11:20 12:5 12:15 12:23 13:11 | | capital(15) 4:4 5:19 7:30 7:37 7:45 8:4 |
| bespeaks(1) 61:2 | | breached(1) 102:17 | | 13:24 14:3 14:8 14:10 14:24 16:4 17:10 | | 8:21 8:27 8:27 24:22 24:24 39:3 87:8 |
| best(5) 83:18 84:1 86:11 170:11 173:7 | | break(13) 36:12 36:13 56:19 77:4 77:7 | | 17:20 19:2 20:18 20:24 21:13 22:20 23:4 | | 88:4 129:16 |
| bet(1) 117:11 | | 78:5 79:13 79:14 87:13 90:20 165:5 | | 23:12 24:2 24:3 28:15 30:12 30:13 32:19 | | carbon(1) 140:15 |
| better(4) 90:4 151:15 166:23 174:18 | | 174:10 176:2 | | 33:5 35:5 35:17 39:15 40:21 41:22 42:10 | | card(1) 36:24 |
| between(54) 32:18 34:21 35:8 49:13 50:13 | | breaking(1) 102:8 | | 42:13 42:24 43:13 44:17 45:15 46:12 | | care(2) 33:23 62:8 |
| 51:1 62:15 70:18 99:16 99:19 100:18 | | breaks(1) 12:16 | | 46:17 47:4 47:22 48:3 48:7 48:19 49:3 | | careful(1) 148:9 |
| 100:24 102:1 104:24 106:1 107:19 111:9 | | brian(2) 6:14 8:24 | | 49:8 50:14 50:19 51:22 52:2 52:23 53:1 | | carefully(2) 159:23 160:5 |
| 111:16 111:18 111:19 111:20 118:8 118:1 | | brickley(1) 8:42 | | 53:10 54:4 55:10 55:17 55:18 56:1 58:21 | | carey(2) 1:17 110:18 |
| 119:10 119:11 119:14 119:17 120:1 | | bridge(5) 4:38 139:14 163:5 163:20 169:1 | | 63:7 63:19 64:1 64:5 64:10 66:13 66:23 | | carol(1) 7:37 |
| 121:10 126:23 127:3 127:19 129:3 130:23 | | brief(17) 19:22 58:23 89:2 92:3 92:5 | | 68:14 69:15 70:11 72:3 72:10 73:5 73:15 | | carry(4) 87:22 107:23 107:24 173:19 |
| 131:5 131:13 133:13 133:18 134:1 134:12 | | 104:1 105:20 108:19 118:23 124:21 125:1 | | 75:1 77:4 77:10 77:17 77:20 77:22 78:13 | | carryon(1) 152:12 |
| 135:8 135:18 135:20 136:7 140:16 143:15 | | 137:21 141:14 143:14 163:11 164:22 | | 78:20 79:1 81:15 83:7 83:22 84:4 86:11 | | carves(1) 82:3 |
| 147:8 147:16 149:1 149:7 171:5 171:6 | | 171:3 | | 86:18 87:14 88:16 89:8 89:17 90:10 91:1 | | cas,e(97) 1:7 4:46 10:21 19:3 19:6 21:13 |
| 171:16 171:23 | | briefer(1) 124:8 | | 91:22 91:23 92:5 92:22 93:9 94:12 95:1 | | 24:2 30:15 32:15 39:13 39:15 40:16 40:17 |
| | | briefing(1) 43:9 | | 96:11 101:7 101:10 101:19 102:20 103:6 | | 42:20 42:23 43:2 43:13 43:19 43:20 44:11 |
| beyond(4) 92:22 106:6 134:20 165:3 | | briefly(5) 67:12 82:6 157:11 | | 103:9 105:22 106:22 108:8 108:24 109:4 | | 44:16 46:8 46:10 47:16 48:20 49:9 50:18 |
| bias(1) 78:21 | | brigade(2) 8:27 8:27 | | 110:6 110:13 111:6 112:17 112:22 113:9 | | 50:21 52:4 55:2 60:6 60:19 61:18 62:9 |
| bifferato(1) 5:4 | | bright(1) 107:2 | | 114:17 116:3 116:16 116:21 117:13 117:1 | | 62:22 63:1 63:3 63:6 63:15 63:16 64:4 |
| big(3) 41:14 125:5 169:7 | | bring(5) 17:14 17:20 17:22 50:3 112:15 | | 118:21 119:4 120:6 120:23 121:4 121:6 | | 68:1 68:12 70:9 70:12 76:9 76:11 89:22 |
| bill(1) 144:11 | | brings(2) 91:7 114:17 | | 121:7 121:18 121:20 121:21 122:8 123:4 | | 91:19 92:23 99:8 100:2 101:20 106:4 |
| billed(3) 44:6 44:10 44:13 | | broad(3) 78:9 150:4 150:8 | | 123:8 123:12 124:17 127:16 128:19 130:1 | | 106:23 108:11 110:6 110:13 110:19 112:14 |
| billion(10) 20:10 22:1 51:11 57:21 61:20 | | broader(1) 35:9 | | 132:12 132:23 133:21 136:20 137:13 | | 114:16 116:9 116:23 123:2 125:4 125:7 |
| 61:21 62:6 62:17 75:1 117:6 | | broadway(1) 5:15 | | 138:6 138:16 139:2 139:16 139:20 140:16 | | 126:3 129:21 131:2 132:2 137:15 137:20 |
| | | broke(1) 108:4 | | 140:23 141:4 141:11 141:20 143:8 144:6 | | 137:21 140:8 143:8 143:18 143:20 145:7 |
| billions(2) 51:10 51:10 | | broker(4) 93:2 93:11 115:11 116:17 | | 145:14 147:5 147:8 147:13 147:20 148:2 | | 149:21 149:22 150:22 154:8 154:10 158:20 |
| binary(1) 150:18 | | brokers(1) 26:1 | | 149:14 150:8 150:21 153:17 153:23 154:8 | | 158:22 158:23 159:21 160:9 160:24 |
| binder(4) 89:9 89:10 97:1 97:4 | | bromberg(1) 6:38 | | 154:22 155:12 156:2 156:21 157:1 157:22 | | 160:24 161:13 162:8 166:3 166:6 166:22 |
| bingham(1) 9:47 | | brook(3) 24:22 24:24 25:2 | | 158:6 158:8 158:11 158:13 159:6 161:18 | | 168:24 174:8 |
| bit(9) 13:10 20:10 45:16 55:22 62:13 | | brook's(1) 25:22 | | 161:23 162:9 163:6 164:4 164:6 164:10 | | |
| 109:24 130:17 162:18 168:21 | | brought(3) 30:10 69:10 143:7 | | 165:2 165:13 165:14 168:24 169:3 170:2 | | cases(21) 92:6 101:9 105:21 106:8 106:10 |
| | | brown(11) 3:25 6:35 7:24 18:17 19:13 | | 171:1 171:20 172:12 172:23 173:16 173:2 | | 107:9 109:20 110:1 114:13 115:20 132:2 |
| bizarre(1) 120:3 | | 33:3 36:16 41:4 41:7 41:9 47:1 | | 174:4 174:10 174:16 176:18 177:1 | | 133:21 143:6 143:13 143:14 144:9 144:10 |
| blabey(1) 7:34 | | | | | | 150:24 159:22 159:23 160:19 |
| black(7) 96:12 119:1 136:24 137:12 141:4 | | bruce(1) 9:27 | | bynum(1) 8:45 | | |
| 141:12 172:2 | | bryant(1) 4:17 | | calaman(1) 177:24 | | cash(1) 63:23 |
| | | buckman(1) 8:9 | | calculate(1) 62:19 | | catch(2) 45:7 59:16 |
| black's(1) 28:15 | | budgeted(1) 12:21 | | calculated(1) 62:20 | | categories(4) 39:24 42:22 82:11 105:17 |
| blackberry(1) 121:8 | | building(1) 4:23 | | calculations(1) 73:3 | | categorize(1) 39:24 |
| blackout(1) 124:9 | | built(1) 160:12 | | call(6) 55:3 56:13 64:20 78:1 125:8 140:1 | | category(1) 71:20 97:16 |
| blake(1) 4:22 | | bulk(1) 51:14 | | called(7) 25:20 56:12 63:1 63:8 127:17 | | cause(4) 64:1 64:12 92:2 92:12 |
| blessed(1) 53:7 | | bunch(1) 47:13 | | 137:19 137:21 | | causes(2) 131:13 165:22 |
| block(3) 5:44 7:4 16:15 | | burden(5) 98:14 117:15 118:20 125:13 | | | | cc'd(1) 105:2 |
| blush(1) 35:7 | | 149:15 | | calls(7) 67:15 85:23 126:23 127:3 127:20 | | cc's(1) 140:15 |
| board(2) 9:35 168:20 | | | | 157:15 167:22 | | center(5) 4:39 139:13 163:5 163:20 169:10 |
| bob(1) 53:17 | | burdensome(3) 143:9 143:10 144:3 | | | | centers(1) 133:9 |
| bockius(1) 8:34 | | bury(2) 122:24 123:1 | | camden(1) 6:31 | | central(1) 37:11 |
| boelter(1) 1:26 | | bush(1) 9:43 | | came(12) 35:13 35:19 42:10 62:20 76:19 | | centrally(1) 94:20 |
| bond(6) 24:12 35:12 59:24 60:10 60:17 | | business(9) 50:11 106:18 106:19 106:24 | | 95:9 108:16 113:18 122:20 159:16 166:4 | | cents(2) 63:23 75:11 |
| 61:20 | | 107:14 107:16 172:13 172:15 173:13 | | 169:8 | | certain(12) 45:20 50:21 78:11 82:11 84:24 |
| | | | | camera(4) 41:23 107:3 107:10 143:7 | | 101:21 106:17 118:21 118:21 132:20 |
| bondholder(12) 36:1 51:11 51:17 62:5 | | | | camp(1) 20:13 | | 134:13 143:24 |
| 62:11 63:20 64:7 64:18 67:6 68:18 74:2 | | | | can(69) 13:3 20:20 20:24 21:14 23:9 38:1 | | |
| 74:5 | | | | 38:20 42:21 46:10 46:21 49:3 50:18 50:20 | | certainly(25) 20:3 23:11 24:8 34:19 43:13 |
| bondholders(13) 58:5 58:8 58:13 62:12 | | | | 50:23 54:22 55:1 55:5 59:23 60:2 71:7 | | 47:16 47:20 49:3 51:9 62:19 66:13 77:10 |
| 62:20 63:14 64:16 67:16 68:8 68:11 68:15 | | | | 71:14 74:8 77:22 78:5 82:2 86:9 86:9 | | 79:1 88:1 88:6 89:4 101:12 121:13 131:14 |
| 73:16 73:21 | | | | 87:11 87:23 87:23 88:17 91:1 97:4 97:20 | | 134:22 139:9 143:12 144:18 165:5 177:10 |
| | | | | 99:9 101:21 102:14 105:8 111:6 113:12 | | |
| bonds(3) 60:10 64:5 67:14 | | | | 114:14 114:14 115:2 118:5 118:10 118:18 | | certainty(2) 64:7 175:5 |
| book(4) 26:11 26:20 35:21 169:6 | | | | 118:20 121:21 123:1 124:4 130:23 133:16 | | certificate(1) 26:9 |
| booked(1) 12:22 | | | | 133:24 134:13 135:1 135:14 137:6 143:9 | | certificates(1) 27:3 |
| borrow(1) 91:18 | | | | 145:5 147:4 149:6 149:12 170:16 170:17 | | certification(2) 86:6 177:17 |
| both(13) 21:21 25:16 57:22 62:23 63:1 | | | | 172:4 173:12 173:20 175:15 177:8 | | certify(1) 177:18 |
| 69:7 77:17 93:5 95:8 95:10 123:9 149:24 | | | | | | cetera(4) 70:22 126:7 162:23 166:7 |
| 150:1 | | | | can't(22) 17:15 85:4 109:2 115:10 117:14 | | chadbourn(14) 2:12 9:4 35:2 93:1 126:6 |
| bother(1) 165:13 | | | | 120:23 121:16 121:18 122:11 122:24 123: | | 126:22 126:23 127:1 127:3 127:18 127:19 |
| bottom(4) 32:18 74:20 141:20 143:6 | | | | 123:8 123:24 125:15 128:19 130:10 | | 128:1 156:18 157:9 |
| bound(1) 100:20 | | | | 152:11 154:13 165:5 165:6 166:9 171:10 | | |
| boundaries(1) 105:11 | | | | | | challenge(9) 52:24 54:6 54:22 55:1 66:2 |
| bowater(1) 160:8 | | | | | | 81:7 86:23 119:23 143:6 |
| bowden(1) 4:5 | | | | cancel(2) 31:7 31:12 | | |
| box(4) 2:8 4:8 4:25 4:42 | | | | cancellation(1) 26:12 | | challenged(1) 168:13 |
| brad(1) 9:36 | | | | cancelled(5) 26:16 31:15 31:18 32:1 32:21 | | challenges(2) 52:22 107:3 |
| bradford(10) 5:45 16:14 16:15 18:8 18:10 | | | | cancels(2) 26:7 26:9 | | chance(2) 35:23 166:16 |
| 83:2 84:11 84:15 84:21 85:10 | | | | candace(1) 6:12 | | chancery(1) 145:20 |
| | | | | candid(1) 35:16 | | chances(1) 153:21 |
| bradford's(1) 82:6 | | | | candor(1) 82:7 | | change(1) 39:4 |
| brandywine(1) 4:23 | | | | cannot(4) 93:22 101:13 144:4 153:19 | | changed(5) 56:7 138:21 138:22 161:22 |
| branzburg(1) 5:26 | | | | cantor(1) 6:22 | | 162:18 |

| Word | Page:Line |
|---|---|
| changes(2) 66:13  138:23 | |
| changing(1) 90:10 | |
| channel(1) 144:15 | |
| chapter(9) 1:4  110:1  114:18  115:2  115:8 | |
| 123:19  123:19  172:3  172:16 | |
| characterized(1) 20:17 | |
| charges(1) 41:7 | |
| charging(13) 43:16  58:6  68:1  72:5  73:6 | |
| 73:9  73:11  73:18  73:22  73:23  75:6  75:10 | |
| 75:15 | |
| chase(2) 2:28  7:21 | |
| chasing(4) 46:18  51:2  54:11  56:4 | |
| check(3) 12:5  56:8  172:7 | |
| chicago(3) 1:28  5:47  84:12 | |
| chill(1) 150:23 | |
| choice(4) 17:24  122:1  150:18  150:23 | |
| choose(1) 16:21 | |
| chopped(1) 118:3 | |
| chung(1) 6:28 | |
| circuit(10) 98:15  105:21  106:15  144:21 | |
| 145:6  145:23  158:20  160:24  171:8  173:1 | |
| circumstance(1) 145:22 | |
| circumstances(6) 55:5  115:1  132:20 | |
| 134:14  143:24  148:5 | |
| cite(10) 40:13  63:3  105:19  123:2  143:14 | |
| 147:12  150:22  163:12  165:15  173:4 | |
| cited(15) 39:13  39:14  39:15  62:23  63:1 | |
| 101:9  112:14  137:21  140:8  143:17  143:19 | |
| 151:1  163:11  166:1  173:6 | |
| cites(1) 105:23 | |
| citi(1) 10:6 | |
| citigroup(1) 7:9 | |
| citizens(1) 4:39 | |
| claim(79) 9:11  20:9  20:21  21:1  21:24 | |
| 22:15  22:17  27:10  27:11  27:13  28:10 | |
| 29:6  29:14  31:23  32:6  32:9  32:10  32:14 | |
| 32:16  32:23  34:1  39:18  39:18  40:3  40:9 | |
| 40:23  42:2  49:19  49:23  51:7  54:8  57:7 | |
| 57:17  57:17  57:18  58:3  58:3  58:16  58:17 | |
| 58:17  59:20  59:20  60:22  60:23  60:23  61:2 | |
| 61:4  67:7  68:17  68:17  69:14  69:22  71:15 | |
| 73:12  73:12  73:20  73:21  74:3  75:15  75:16 | |
| 75:22  75:22  77:19  82:8  86:1  93:13  95:20 | |
| 97:20  100:17  101:13  102:19  105:9  113:4 | |
| 116:18  116:18  124:22  138:14  166:15 | |
| claimants(3) 52:15  102:6  102:10 | |
| claiming(1) 125:10 | |
| claims(113) 15:16  17:12  17:19  17:22 | |
| 19:17  25:9  25:20  32:8  33:7  37:16  45:8 | |
| 45:11  45:12  47:18  49:17  51:8  51:12  51:20 | |
| 52:1  52:14  52:23  59:11  59:14  59:16  59:21 | |
| 59:21  59:23  59:24  60:3  60:9  60:10  60:11 | |
| 60:15  60:17  60:22  61:1  61:5  61:7  61:11 | |
| 61:14  61:18  61:20  61:22  62:7  62:7  62:10 | |
| 62:14  62:18  65:17  65:19  66:8  66:10  70:1 | |
| 70:21  71:3  71:5  71:5  71:21  71:24  72:1 | |
| 72:3  72:14  74:12  74:15  74:20  75:16  76:15 | |
| 76:17  80:14  80:16  80:23  81:5  81:7  81:13 | |
| 81:15  82:4  82:10  82:13  82:21  84:1  84:5 | |
| 85:1  85:2  85:5  85:8  85:24  91:21  92:19 | |
| 93:3  93:6  93:6  93:7  93:9  93:13  93:23 | |
| 103:15  106:20  115:6  115:9  116:19  117:6 | |
| 117:9  124:15  124:23  125:2  125:18  126:2 | |
| 127:8  127:23  128:2  128:13  138:21  169:2 | |
| clarification(5) 33:4  66:6  66:7  80:11  81:6 | |
| clarifications(1) 74:22 | |
| clarified(1) 32:19 | |
| clarifies(1) 66:13 | |
| clarify(2) 87:1  176:16 | |
| clarifying(1) 45:17 | |
| clarity(1) 76:21 | |
| clark(1) 5:46 | |

| Word | Page:Line |
|---|---|
| class(65) 21:13  22:10  22:17  22:18  25:9 | |
| 40:20  45:5  45:6  45:13  48:17  51:8  51:10 | |
| 51:11  51:12  51:12  51:14  51:20  52:1  52:1 | |
| 52:21  52:21  57:17  59:15  59:16  59:17 | |
| 59:19  59:24  60:3  61:7  61:8  61:11  61:14 | |
| 61:19  62:6  62:11  63:20  63:22  64:7  64:8 | |
| 64:18  64:18  64:21  67:6  67:7  71:2  71:4 | |
| 71:15  71:19  72:1  72:2  73:11  73:13  73:15 | |
| 74:2  74:2  74:5  74:12  75:1  75:11  75:16 | |
| 75:24  76:1  76:4  86:20  87:1 | |
| classes(4) 51:9  63:19  68:10  70:21 | |
| classification(22) 19:20  20:23  21:3  37:9 | |
| 37:10  45:4  59:8  59:19  60:7  61:3  61:5 | |
| 65:6  65:16  65:22  65:23  70:3  70:11  73:24 | |
| 74:10  74:11  86:2  86:23 | |
| classified(2) 20:22  77:19 | |
| classify(1) 59:23 | |
| cleansed(2) 112:11  121:17 | |
| cleanses(2) 113:11  117:24 | |
| clear(21) 32:15  32:19  39:7  39:8  58:14 | |
| 60:7  62:23  66:8  67:4  70:5  71:9  72:13 | |
| 72:13  74:23  80:13  82:20  89:17  101:10 | |
| 111:14  126:12  148:12 | |
| clearer(1) 39:11 | |
| clearly(4) 21:4  57:20  74:5  147:18 | |
| cleary(1) 4:22 | |
| clee(1) 43:10 | |
| clerk(4) 1:12  20:4  79:18  176:5 | |
| client(14) 25:5  25:10  35:22  41:19  49:2 | |
| 69:5  100:23  129:1  140:9  141:23  141:24 | |
| 142:1  164:10  172:13 | |
| clients(15) 80:3  105:2  105:2  105:3  105:5 | |
| 105:8  126:5  140:14  140:22  143:23  145:9 | |
| 172:7  172:18  176:17  177:2 | |
| close(7) 11:20  12:15  14:5  14:11  78:4 | |
| 87:17  143:24 | |
| co-defendants(1) 134:12 | |
| co-opting(1) 36:19 | |
| co-plan(1) 134:17 | |
| co-proponent(1) 45:6 | |
| co-sponsors(1) 131:19 | |
| cobb(1) 2:4 | |
| code(3) 28:14  28:17  28:17 | |
| coincidence(1) 78:15 | |
| cole(2) 1:31  11:6 | |
| colin(1) 155:13 | |
| colleagues(3) 46:13  46:18  112:12 | |
| collect(1) 114:14 | |
| colluded(2) 129:17  129:19 | |
| collusion(8) 78:21  91:17  92:2  124:2  130:8 | |
| 153:20  164:19  166:2 | |
| colorability(1) 17:12 | |
| colorable(2) 84:1  84:3 | |
| combat(1) 118:5 | |
| come(32) 16:12  24:5  24:12  24:17  45:20 | |
| 51:16  55:20  57:14  57:15  63:19  64:19  71:7 | |
| 78:20  90:12  96:4  99:7  103:4  103:6  111:14 | |
| 121:1  122:18  127:11  149:12  151:18  152:7 | |
| 152:19  153:8  158:12  160:3  165:11  171:11 | |
| 176:17 | |
| comes(10) 55:18  55:18  64:19  68:12  85:17 | |
| 92:13  95:16  99:10  161:1  166:21 | |
| coming(3) 111:2  121:19  154:20 | |
| commenced(1) 159:15 | |
| comment(7) 48:1  48:2  51:4  51:5  90:20 | |
| 108:4  155:11 | |
| comments(7) 48:14  59:5  69:4  77:23  78:8 | |
| 78:14  110:1 | |
| commercial(2) 133:20  138:10 | |

| Word | Page:Line |
|---|---|
| committee(82) 2:4  9:4  9:34  9:41  15:13 | |
| 17:3  17:4  17:19  17:21  23:12  34:23  35:2 | |
| 36:2  40:8  42:17  44:22  44:24  45:6  45:19 | |
| 45:22  46:15  48:4  51:15  57:16  58:4  58:19 | |
| 59:10  63:21  64:8  65:15  67:13  67:21  68:15 | |
| 69:17  70:5  72:23  75:8  75:9  75:13  76:17 | |
| 77:16  82:10  85:14  86:24  91:8  91:15  94:1 | |
| 94:19  95:13  95:17  96:10  97:20  97:24 | |
| 98:22  100:16  101:5  101:12  102:10  102:22 | |
| 103:24  104:13  106:8  108:14  113:16  118:2 | |
| 120:7  120:8  122:14  128:7  129:18  133:14 | |
| 135:9  136:8  146:7  156:5  157:10  158:16 | |
| 167:4  169:16  170:16  175:2  175:10 | |
| committee's(3) 14:16  17:6  113:20 | |
| committees(4) 11:9  15:14  17:17  133:11 | |
| common(106) 94:5  94:20  95:18  96:6  96:9 | |
| 96:18  97:10  97:13  97:16  97:21  98:3  98:10 | |
| 98:11  98:15  98:17  98:24  99:9  99:10  99:23 | |
| 100:7  100:7  100:11  100:15  100:17  101:13 | |
| 101:22  102:15  102:20  103:20  104:4  104:8 | |
| 104:17  104:22  105:1  105:9  105:13  105:16 | |
| 105:18  105:24  107:19  129:4  129:23  130:5 | |
| 130:14  130:23  132:13  132:18  132:24  133:1 | |
| 133:12  133:13  133:17  134:1  134:4  134:14 | |
| 134:17  135:1  135:7  135:8  135:23  135:24 | |
| 136:2  137:14  137:17  137:19  137:19  138:7 | |
| 138:15  138:20  139:3  139:6  139:10  139:16 | |
| 139:22  140:1  140:2  140:5  140:6  140:22 | |
| 141:7  141:8  141:9  141:14  141:18  141:19 | |
| 142:5  142:19  143:16  143:23  144:12  144:22 | |
| 145:11  146:5  146:8  146:20  147:1  147:11 | |
| 148:16  148:17  149:8  149:10  156:13  168:2 | |
| 170:22  172:14  173:5 | |
| commonality(4) 102:11  133:19  137:24 | |
| 141:17 | |
| communicat(3) 144:1  144:4  144:13 | |
| communicated(2) 141:7  141:16 | |
| communicates(1) 142:19 | |
| communication(14) 41:20  99:9  109:21 | |
| 111:19  131:20  133:5  133:6  140:10  142:4 | |
| 142:17  142:18  143:2  145:2  148:4 | |
| communication(49) 94:11  95:5  97:13 | |
| 98:4  100:1  100:18  104:21  104:23  104:24 | |
| 105:1  106:1  106:13  107:14  107:15  107:19 | |
| 110:10  111:15  118:22  119:10  119:11 | |
| 119:12  119:13  119:17  120:1  121:7  128:9 | |
| 129:2  130:1  132:21  133:11  134:20  136:7 | |
| 136:10  136:12  136:15  139:21  140:1  140:5 | |
| 140:12  140:22  141:1  143:15  144:6  146:4 | |
| 152:1  170:2  170:6  172:12  172:15 | |
| communicator(1) 172:4 | |
| community(4) 51:17  92:24  144:4  145:3 | |
| company(15) 1:7  6:3  6:32  6:43  8:17  10:16 | |
| 18:18  34:5  39:9  40:10  57:3  83:8  91:10 | |
| 171:18 | |
| comparative(1) 44:4 | |
| compare(1) 71:3 | |
| compared(2) 44:19  104:15 | |
| comparison(5) 44:4  44:5  44:6  44:18  71:4 | |
| compel(6) 1:14  11:1  11:19  167:13  174:1 | |
| 176:9 | |
| compelled(1) 107:10 | |
| compelling(2) 144:9  162:2 | |
| competing(2) 136:13  136:14 | |
| complaint(9) 80:15  80:17  81:4  82:8  83:5 | |
| 83:9  83:10  83:11  83:15 | |
| complaint's(1) 17:4 | |
| complaints(1) 92:23 | |
| complete(8) 119:2  122:1  122:3  122:4  124:9 | |
| 124:18  134:4  134:5  175:5 | |
| completed(1) 21:7 | |

| Word | Page:Line |
|---|---|
| completely(7) 86:11  86:12  112:14  115:16 | |
| 115:16  116:13  122:17 | |
| complex(1) 138:9 | |
| complexity(1) 110:2 | |
| component(1) 75:21 | |
| compounded(1) 50:12 | |
| comprehensiv(1) 167:2 | |
| compromis(9) 129:18  130:20  132:4 | |
| 132:11  132:12  156:22  157:22  158:2  158:4 | |
| compromised(1) 91:21 | |
| compromises(1) 157:16 | |
| con(1) 35:16 | |
| conaway(1) 4:21 | |
| conceded(2) 77:16  141:5 | |
| conceivable(2) 106:21  113:9 | |
| conceive(2) 138:12  141:23 | |
| concentrated(2) 64:6  67:14 | |
| concept(1) 151:22 | |
| concerned(3) 20:24  40:3  98:8 | |
| concerning(6) 19:5  19:9  19:16  21:19 | |
| 119:18  174:15 | |
| concerns(3) 16:2  16:6  30:13 | |
| concession(1) 168:3 | |
| conclude(2) 115:12  174:7 | |
| concluded(1) 162:10 | |
| concludes(1) 177:14 | |
| conclusion(2) 68:18  90:12 | |
| conclusively(1) 133:24 | |
| conduct(1) 107:10 | |
| confer(4) 83:21  84:9  86:5  88:12 | |
| conference(2) 125:8  126:23 | |
| confidence(1) 116:11 | |
| confident(1) 12:15 | |
| confidential(5) 79:5  111:15  122:22  170:2 | |
| 170:5 | |
| confidentiality(6) 111:12  123:4  130:1 | |
| 156:9  168:20  170:14 | |
| confine(1) 78:10 | |
| confirm(7) 11:9  15:15  82:12  82:20  123:8 | |
| 123:12  146:7 | |
| confirmation(25) 20:24  23:22  24:7  30:10 | |
| 31:12  31:19  34:19  52:22  54:22  66:1  77:20 | |
| 82:13  82:23  86:2  89:20  92:5  92:11  98:15 | |
| 109:18  127:9  131:23  133:14  136:16  160:1 | |
| 163:1 | |
| confirmed(3) 67:21  68:13  163:3 | |
| confirms(1) 68:14 | |
| conflicts(4) 92:24  93:1  93:1  168:24 | |
| confronted(1) 133:16 | |
| confused(2) 66:14  168:12 | |
| confusion(1) 152:2 | |
| conlin(3) 91:18  125:21  155:14 | |
| connected(1) 23:20 | |
| connection(5) 36:10  38:10  71:11  77:1 | |
| consensual(1) 110:11 | |
| consequenc(2) 148:4 | |
| consider(7) 36:20  84:8  114:1  123:17 | |
| 130:18  132:13  169:2 | |
| consideration(4) 62:1  91:23  171:15  171:22 | |
| considered(2) 23:17  165:8 | |
| constantly(2) 126:4  126:7 | |
| constituencies(1) 161:15 | |
| constituency(1) 48:10 | |
| constituent(1) 48:17 | |
| constitute(1) 132:22 | |
| constitutes(1) 149:2 | |
| construct(1) 74:9 | |
| construe(1) 171:9 | |
| construed(1) 98:16 | |
| consulting(1) 80:3 | |
| consummate(1) 131:15 | |

| Word | Page:Line |
|---|---|

**contact**(1) 84:19
**contained**(1) 90:22
**contemplate**(1) 69:19
**contemplated**(1) 72:16
**contemplating**(1) 55:12
**content**(2) 14:12 67:8
**contention**(1) 98:21
**contentious**(1) 161:13
**contested**(2) 41:20 69:16
**context**(6) 27:9 29:1 44:4 130:13 131:15 143:2
**contingent**(2) 43:17 49:23
**continue**(3) 12:3 127:18 174:17
**continued**(11) 2:2 3:2 4:2 5:2 7:2 8:2 9:2 10:3 15:2 78:3 83:22
**contract**(8) 27:4 27:11 27:11 29:6 39:17 102:18 122:11 122:14
**contracted**(1) 102:17
**contractual**(2) 39:5 43:18
**contractually**(1) 38:7
**contrary**(3) 31:16 144:19 145:8
**contrast**(2) 59:15 71:2
**contribution**(1) 103:11
**control**(2) 142:11 142:13
**controlling**(1) 31:5
**controls**(10) 99:17 100:11 105:22 106:5 132:17 133:3 133:23 134:12 137:16 173:4
**conversation**(1) 120:23
**conversations**(3) 51:1 158:13 167:21
**cooperate**(1) 83:22
**copied**(1) 140:15
**copies**(4) 63:7 63:7 63:10 128:6
**copy**(3) 31:8 81:18 96:24
**core**(3) 107:15 139:2 139:3
**cornerstone**(1) 132:8
**corporate**(1) 141:24
**correct**(11) 20:20 27:15 47:2 50:18 52:3 68:9 101:8 131:11 146:6 174:3 177:18
**corrected**(2) 71:10 71:14
**corroon**(1) 3:4
**cost**(2) 16:3 114:7
**could**(54) 12:12 17:12 18:5 30:23 33:22 34:3 49:4 51:23 52:23 54:7 61:6 64:21 73:5 80:11 80:18 81:8 81:14 82:19 90:12 90:13 100:11 100:17 103:4 106:22 114:8 114:10 115:19 116:2 116:12 116:13 118:2 116:17 128:10 138:10 140:6 140:14 141:6 142:11 143:8 144:24 147:20 148:1 156:9 156:11 156:21 158:5 158:21 161:18 162:9 165:1 165:11 165:24 171:4 174:16
**couldn't**(7) 39:11 71:10 76:1 79:7 140:16 156:10 169:14
**counsel**(28) 15:12 16:11 18:1 18:15 18:23 25:1 32:7 41:5 45:12 48:16 49:10 50:3 57:11 63:13 69:7 69:8 84:9 93:1 144:1 147:8 147:10 147:12 147:12 148:7 166:7 167:5 169:13 176:19
**counseled**(1) 169:4
**counted**(2) 14:6 53:14
**counter**(3) 42:19 43:12 119:16
**counts**(2) 83:12 83:14
**couple**(3) 73:1 146:19 146:19
**course**(25) 17:9 18:16 46:10 46:12 50:13 60:1 88:7 88:16 89:2 92:5 92:1 98:2 105:20 125:4 127:6 129:2 132:16 133:5 133:12 145:19 158:17 159:14 159:16 159:23 163:6

**court**(301) 1:1 11:3 11:22 11:24 12:8 12:18 13:4 13:6 13:9 13:11 13:17 14:4 14:5 14:8 14:14 14:17 15:4 15:6 15:9 15:15 15:19 15:22 16:3 16:6 16:8 16:11 16:17 17:1 18:7 18:9 18:11 18:13 18:19 18:22 19:11 19:15 19:18 20:1 20:4 20:6 20:17 21:16 22:19 22:22 23:19 23:23 24:12 24:14 24:15 24:19 24:21 25:13 25:16 26:7 26:13 26:21 27:12 27:18 27:22 28:3 28:10 29:17 29:19 29:24 30:22 33:1 33:14 34:22 36:6 36:7 36:9 36:15 36:24 37:3 37:13 38:3 38:15 38:18 38:22 39:21 41:15 42:1 42:8 42:13 43:22 44:21 47:14 47:20 47:22 48:21 48:21 49:4 50:7 52:10 53:1 53:9 53:11 53:15 54:9 54:13 54:21 55:1 55:7 55:12 55:14 55:21 56:17 56:19 56:22 58:19 60:1 62:8 63:10 65:3 65:8 65:10 65:12 66:3 66:4 67:10 68:21 71:10 72:20 72:22 74:17 75:3 77:3 78:10 78:21 79:9 79:16 79:16 79:19 79:2 80:4 80:7 80:11 80:13 80:18 80:20 81:1 81:11 81:18 82:1 82:9 82:14 82:20 82:22 83:4 83:6 83:10 83:15 84:3 84:13 84:18 84:22 84:24 84:24 85:3 85:11 85:20 86:5 86:12 86:15 87:3 87:5 87:19 88:1 88:18 89:3 89:8 89:12 89:15 90:16 91:3 91:5 96:23 97:1 97:4 97:7 99:4 99:5 99:15 99:23 100:9 100:13 101:23 102:7 103:19 104:18 105:21 106:14 107:2 107:10 107:2 108:2 109:23 112:1 112:18 112:21 113:1 113:3 113:6 113:9 114:1 114:3 114:17 115:13 115:15 115:22 116:2 116:4 116:5 116:8 116:21 117:9 117:18 119:8 121:3 121:24 122:19 122:23 123:2 123:10 123:1 123:17 123:21 124:4 124:6 124:24 126:20 127:11 127:13 127:16 128:22 129:8 129:10 129:13 131:3 131:6 134:15 135:3 136:19 137:10 138:5 141:20 142:6 142:11 142:14 142:22 143:20 144:2 145:12 145:12 145:1 145:14 145:14 145:16 145:18 145:20 145:20 145:23 146:9 146:13 151:4 152:22 154:1 154:4 157:7 158:8 159:13 159:15 160:3 160:7 160:13 160:15 163:15 163:17 167:16 168:4 168:15 168:19 169:23 170:5 170:8 172:10 172:20 173:5 173:7 173:10 173:21 173:23 174:7 174:9 174:19 174:19 175:3 175:7 175:12 175:15
**court**(11) 175:18 175:21 176:1 176:3 176:6 176:13 177:5 177:7 177:10 177:13 177:14
**court's**(11) 16:2 18:6 30:13 80:1 82:15 87:22 89:4 92:7 112:23 113:22 124:2
**courtney**(1) 8:38
**courtroom**(1) 19:18 23 84:18
**courts**(3) 47:17 137:24 145:8
**cover**(5) 85:1 130:2 134:19
**coverage**(2) 102:5 102:12
**covered**(4) 43:16 81:2 140:5 143:17
**covers**(4) 36:9 82:8 82:21 175:8
**craig**(3) 3:42 5:33
**cramps**(1) 152:18
**created**(1) 99:24
**creates**(1) 141:17
**creating**(2) 39:5 102:18
**creatively**(1) 166:10
**credit**(6) 4:21 9:26 11:19 98:23 101:16 102:15
**creditor**(3) 36:2 37:19 39:16
**creditors**(13) 2:4 9:5 9:42 15:13 34:4 35:5 44:24 74:3 75:7 100:14 102:19 117:7 157:10
**credits**(1) 26:5
**creep**(1) 112:18
**crime**(2) 87:21 168:20
**criticism**(1) 112:6
**criticisms**(1) 92:14
**crystal**(5) 66:8 70:5 72:13 72:13 74:23

**cued**(1) 87:15
**cure**(2) 72:6 72:11
**cured**(1) 71:7
**current**(7) 35:8 43:19 71:8 76:19 81:11 104:14 140:21
**currently**(1) 70:18
**custodian**(1) 26:3
**custodians**(1) 124:17
**cut**(1) 53:23
**cutler**(1) 6:43
**cuts**(3) 24:4 25:16 168:19
**cybergenics**(1) 93:4
**d.c**(1) 120:14
**daily**(1) 106:23
**damages**(11) 27:10 27:11 28:10 28:24 29:1 29:2 29:7 29:8 32:8 32:10 102:18
**damian**(2) 2:30 176:14
**damper**(1) 152:15
**daniel**(4) 2:5 4:13 6:22 6:24
**dash**(1) 6:39
**data**(1) 1:41
**date**(60) 18:18 17:17 57:11 76:12 84:19 90:5 95:19 97:19 99:10 99:22 100:12 100:12 103:10 103:19 103:20 103:22 103:23 104:3 104:8 104:12 104:22 105:15 124:10 124:19 124:24 129:14 129:19 130:3 134:19 135:10 135:13 136:8 136:21 139:1 139:16 155:11 155:19 158:16 158:18 158:19 161:11 162:4 162:6 162:9 162:9 161:21 162:12 162:14 162:12 164:2 164:11 165:3 165:20 167:9 167:10 167:11 167:13 172:1 177:24
**dates**(1) 104:11
**david**(3) 2:13 3:34 4:14 5:39 5:45 6:4 6:13 7:34 7:41 9:7 9:22 10:13 10:18 16:14 34:3 35:1 44:24 46:9 52:18 57:1 58:20 87:7 90:19
**davis**(6) 2:28 10:8 44:12 44:15 173:15 176:15
**day**(31) 9:35 15:2 22:3 29:23 30:17 30:19 41:2 46:8 72:8 83:3 83:6 83:8 84:13 118:4 119:6 119:13 119:15 119:17 120:6 120:6 120:9 120:23 131:5 136:4 148:12 148:13 150:6 151:23 152:3 152:4 153:18 169:5
**days**(11) 15:1 34:7 53:19 118:21 120:24 127:1 127:1 132:1 132:5 152:5 153:21
**dbtca**(1) 3:33
**dead**(1) 101:7
**deadline**(2) 35:19 35:24
**deal**(18) 50:1 77:24 93:21 110:21 115:17 135:16 135:18 135:23 136:1 137:23 138:3 139:2 139:3 148:23 159:19 161:7 169:4 169:5
**dealing**(2) 50:13 80:14
**dearborn**(1) 1:27
**death**(1) 24:4
**debates**(1) 126:18
**debenture**(31) 5:4 10:16 14:19 36:22 57:23 58:21 59:13 59:22 59:23 60:15 62:14 68:4 68:6 68:7 68:22 69:3 70:8 70:10 70:14 71:24 72:14 75:8 76:8 76:14 77:12 77:18 86:19 86:22 87:16 139:13 174:13
**debenture's**(15) 11:15 11:19 72:14 75:22 174:14
**debits**(1) 26:5
**debt**(2) 19:20 19:20

**debtor**(61) 1:22 6:3 11:6 19:9 20:22 22:19 28:13 28:23 33:18 38:15 45:18 51:15 52:11 57:16 58:4 59:10 63:21 64:8 65:12 67:21 70:9 70:13 72:15 74:18 75:9 76:2 76:8 77:15 86:1 91:8 91:14 93:5 93:9 93:10 94:17 94:18 95:13 95:17 96:10 97:19 97:24 99:19 99:21 99:24 100:6 100:16 101:5 102:5 103:23 104:13 106:8 108:14 115:5 115:15 116:15 122:14 129:18 137:18 146:7 158:15 170:15
**debtors**(58) 1:11 18:23 22:13 22:16 22:21 22:23 23:3 23:12 33:20 34:10 38:6 38:7 40:8 40:15 45:20 65:14 68:19 70:4 75:8 76:16 76:22 85:13 86:23 87:22 88:9 88:13 88:22 89:2 89:6 90:8 92:24 93:2 94:9 94:22 98:21 101:11 102:9 102:16 102:18 102:20 102:22 103:3 111:19 113:17 114:15 114:21 125:23 127:2 127:19 128:7 133:10 133:13 135:9 135:18 136:7 146:16 156:6 174:22
**december**(21) 19:16 19:18 24:10 124:10 124:19 125:1 125:21 126:9 149:23 153:14 158:17 159:5 161:24 162:21 163:8 163:21 164:3 164:11 164:12 166:12 167:13
**decide**(2) 16:21 17:21
**decided**(10) 23:2 23:9 23:9 25:3 30:5 76:21 145:7 155:13 156:12 159:24
**deciding**(1) 16:12
**decision**(22) 15:20 16:4 39:14 63:7 92:7 98:17 98:18 99:2 99:11 99:12 99:18 100:5 101:19 111:8 114:13 123:7 126:11 136:20 144:21 145:18 172:23 173:5
**decision-maker**(1) 142:10
**decision-makers**(1) 144:3
**decisions**(3) 137:22 145:20 151:4
**deemed**(1) 94:6
**deep**(3) 46:11 48:17 50:24
**deeper**(1) 147:9
**deeply**(1) 33:9
**default**(1) 59:17
**defendant**(2) 133:18 138:13
**defendants**(4) 17:14 98:23 103:12 131:14
**defending**(3) 105:4 106:20 107:5
**defer**(2) 86:2 86:15
**define**(2) 24:1 28:14
**defined**(4) 31:4 39:3 97:11 152:4
**definitions**(1) 39:6
**definitive**(1) 20:21
**degree**(1) 97:18
**delaware**(11) 1:2 1:11 4:7 11:1 143:20 145:5 145:18 145:14 145:13 145:19 173:4
**delineated**(1) 176:21
**delivered**(3) 27:7 41:10 41:18
**demands**(1) 41:18
**demo**(1) 6:15
**democratic**(1) 64:22
**demonstrate**(1) 161:11
**denied**(2) 159:5 167:14
**denominator**(1) 25:9
**depending**(3) 62:18 68:12 170:8
**depends**(1) 162:17
**deposit**(1) 26:2
**deposition**(1) 98:8
**depositions**(1) 120:18
**depository**(13) 108:6 108:24 118:9 118:10 124:24 149:23 151:9 151:12 155:19 155:20 156:7 156:13 162:4
**deputy**(2) 18:23 84:18
**described**(2) 66:6 87:2
**description**(1) 47:7
**descriptions**(2) 41:12 88:11
**deserve**(1) 170:14
**deserves**(1) 33:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| designate(2) 51:18  55:6 | | disagree(6) 30:14  46:17  92:9  130:8  130:11 | | document(14) 31:5  31:6  31:6  60:12  94:9 | | dtc(6) 26:2  26:4  26:11  26:18  27:1  27:2 | |
| designated(1) 53:13 | | 168:23 | | 94:16  102:3  102:4  102:9  149:5  155:19 | | dublin(2) 4:15  7:46 | |
| designation(1) 52:22 | | | | 155:20  156:7  156:12 | | ducayet(1) 1:25 | |
| designed(3) 32:11  45:7  133:7 | | disagrees(1) 92:10 | | | | due(3) 84:11  89:10  112:1 | |
| desire(2) 157:24  166:13 | | disbarring(1) 114:20 | | documentation(3) 32:2  32:18  166:2 | | during(6) 56:19  78:5  87:13  92:10  98:1 | |
| desires(1) 93:20 | | disclosure(16) 23:1  58:15  66:17  66:20 | | documenting(1) 119:15 | | 153:17 | |
| despite(1) 152:23 | | 67:18  68:16  70:17  70:22  71:16  76:6  92:15 | | documents(31) 30:18  31:20  43:10  48:17 | | | |
| destroy(5) 137:14  137:17  140:11  140:22 | | 94:18  95:6  136:13  139:18  143:4 | | 88:12  89:23  89:24  90:2  90:11  94:11  94:13 | | duty(1) 162:7 | |
| 145:3 | | | | 94:23  94:24  95:4  96:14  107:14  125:13 | | dwac(6) 26:2  26:4  26:6  26:17  26:18  27:2 | |
| | | disclosures(1) 44:12 | | 128:19  129:3  156:3  156:3  159:3  161:24 | | dwac'd(2) 26:2  27:1 | |
| destroying(1) 145:11 | | discourage(1) 110:8 | | 162:6  163:22  164:23  165:21  167:4  167:6 | | dynamic(3) 114:18  116:13  164:7 | |
| detail(12) 46:4  46:4  46:19  51:3  53:8  54:1 | | discouragement(1) 92:21 | | 174:1  177:2 | | d'agostino(2) 9:47  9:48 | |
| 54:4  56:5  56:12  103:13  157:5  157:24 | | discourse(2) 132:15  132:16 | | | | each(18) 24:18  35:18  47:5  60:10  60:19 | |
| | | discover(1) 170:5 | | dodge(2) 3:41  5:32 | | 69:19  69:19  80:4  92:16  105:9  107:12 | |
| detailed(2) 88:10  88:13 | | discoverable(7) 105:10  119:6  120:8  121:5 | | does(35) 17:21  21:6  21:20  22:6  22:7  22:7 | | 128:12  128:13  128:15  128:16  144:5  145:10 | |
| details(2) 147:5  157:21 | | 122:17  131:23  136:10 | | 26:9  28:17  30:24  35:9  44:2  44:2  45:10 | | 172:8 | |
| detect(1) 111:4 | | | | 46:11  52:8  52:12  52:18  81:18  83:10  84:24 | | | |
| determination(3) 53:24  83:23  117:10 | | discovery(65) 45:11  13:18  41:9  41:18  46:16 | | 85:7  105:15  108:10  110:2  115:18  120:11 | | earlier(19) 17:1  48:1  74:14  83:13  91:19 | |
| determinations(1) 156:22 | | 56:14  78:1  91:5  91:9  91:13  94:1  95:10 | | 132:21  133:3  134:5  134:19  137:14  140:22 | | 97:23  104:12  104:15  104:20  104:24  114:8 | |
| determine(2) 59:2  70:1 | | 98:5  98:7  98:12  103:1  103:6  108:5  108:11 | | 141:17  171:9  172:14 | | 114:12  119:21  156:2  156:20  161:15  164:18 | |
| determined(1) 169:13 | | 109:4  109:15  111:17  111:21  117:19  118:9 | | | | 168:12  168:14 | |
| determining(1) 114:2 | | 118:12  118:18  120:16  121:18  121:21 | | doesn't(27) 28:14  30:12  40:23  46:12  50:17 | | | |
| deterred(1) 170:12 | | 121:22  122:7  122:19  123:6  124:9  124:12 | | 52:17  53:23  54:3  55:11  65:2  70:10  81:10 | | earliest(1) 103:21 | |
| deutsch(1) 9:5 | | 124:14  124:19  127:17  128:4  128:10  128:1 | | 81:12  85:21  96:11  106:3  112:5  112:10 | | easier(1) 175:14 | |
| deutsche(28) 9:21  26:3  31:13  36:21  37:5 | | 128:21  130:3  130:10  143:2  148:20  149:16 | | 112:19  120:10  127:7  141:4  142:18  143:11 | | east(1) 3:21 | |
| 56:22  57:2  57:5  57:22  58:24  59:7  59:13 | | 150:4  150:7  150:9  153:12  153:14  154:19 | | 157:1  169:5  172:10 | | easy(1) 136:23 | |
| 59:22  60:14  60:23  62:15  67:14  68:4  69:5 | | 155:20  155:21  156:24  158:17  158:18 | | | | economic(2) 95:21  114:22 | |
| 69:7  71:24  75:7  75:9  77:11  77:18  86:19 | | 158:22  160:2  163:7  163:19  168:14  169:11 | | doing(6) 32:15  44:7  46:15  62:2  62:10 | | ecro(1) 1:39 | |
| 86:22  139:13 | | | | 165:24 | | edgar(1) 8:21 | |
| | | discreet(1) 73:1 | | | | edward(2) 173:23  176:8 | |
| develop(1) 78:23 | | discuss(7) 24:11  79:11  97:22  127:4  128:2 | | dollar(4) 22:15  23:2  47:6  75:11 | | edwards(2) 3:41  5:32 | |
| developed(1) 125:24 | | 172:13  173:3 | | dollars(3) 47:9  51:10  117:7 | | effect(17) 31:24  45:7  51:18  58:7  59:16 | |
| developing(1) 78:17 | | | | don(1) 6:5 | | 63:11  72:10  73:5  74:4  101:11  105:14 | |
| development(4) 95:2  125:22  158:1  161:7 | | discussed(9) 13:9  97:12  113:12  114:8 | | don't(111) 20:23  21:11  21:11  23:3  24:3 | | 118:13  123:18  125:7  131:9  137:15  143:13 | |
| dialogue(6) 34:20  88:15  88:17  90:11 | | 115:7  117:23  120:22  134:12  147:2 | | 24:5  24:6  26:8  26:11  34:9  37:8  40:13 | | | |
| 109:11  168:12 | | | | 42:20  42:22  44:8  45:23  46:17  46:21  47:1 | | effective(1) 134:19 | |
| | | discussing(3) 25:7  125:16  125:17 | | 47:12  47:14  48:13  49:1  49:3  49:7  49:18 | | effectively(3) 17:22  38:21  162:5 | |
| diamond(1) 7:42 | | discussion(17) 12:7  16:5  17:1  91:7  116:16 | | 49:18  50:19  50:19  50:22  51:13  51:21  53:6 | | efficient(2) 24:1  30:11 | |
| diaz(1) 1:41 | | 19:12  119:3  119:3  119:4  119:5  119:14 | | 54:10  55:13  56:2  56:3  59:17  61:13  63:16 | | effort(6) 30:9  48:9  106:2  133:7  159:4 | |
| dicta(5) 144:18  144:24  146:1  172:23  173:1 | | 144:22  146:1  162:23  171:5  172:22  173:18 | | 64:3  64:9  65:10  65:19  66:22  67:22  70:11 | | 164:19 | |
| did(6) 13:17  15:20  16:5  19:6  21:23  25:2 | | | | 72:10  72:10  73:2  73:6  77:8  82:16  85:3 | | | |
| 25:23  26:23  27:6  27:6  28:20  29:22  41:2 | | discussions(22) 19:2  19:5  19:6  19:9  25:6 | | 88:15  89:16  93:22  94:5  97:1  98:12  99:15 | | efforts(2) 157:16  161:17 | |
| 42:22  43:7  44:5  47:3  48:23  55:8  56:5 | | 79:23  80:2  96:3  105:16  106:24  110:16 | | 99:16  108:18  109:1  109:5  109:19  110:16 | | egi-trb(2) 5:44  7:4 | |
| 57:14  57:23  58:4  61:12  62:4  66:5  73:4 | | 120:9  124:14  124:15  125:2  125:11  126:12 | | 110:19  110:24  111:3  112:12  113:19  114:2 | | egi-trb(2) 5:44  7:4 | |
| 93:21  99:24  109:8  109:24  127:15  135:14 | | 127:22  134:20  147:16  172:6  174:7 | | 115:2  116:21  117:2  121:4  121:5  121:9 | | either(17) 34:15  35:24  48:13  65:8  79:4 | |
| 135:15  137:17  143:14  145:3  153:9  156:14 | | | | 122:4  122:10  123:6  123:21  127:15  127:15 | | 99:17  111:8  112:9  112:17  115:17  118:14 | |
| 166:10  166:12  167:22  169:4  169:5  169:6 | | disenfranchised(1) 40:24 | | 134:15  135:3  143:10  143:11  147:10  150:2 | | 119:2  121:6  123:6  128:17  150:19  174:7 | |
| 169:10 | | disingenuous(1) 67:13 | | 152:18  154:9  154:12  155:9  157:5  158:13 | | | |
| didn't(26) 15:22  28:23  33:5  43:18  56:7 | | dismiss(3) 17:11  17:15  17:23 | | 160:15  163:14  167:1  167:10  167:16  168:4 | | eldersveld(1) 6:8 | |
| 59:18  61:8  61:21  61:23  62:2  76:17  110:1 | | disparate(1) 104:14 | | 168:8  168:12  169:13  169:15  170:9  170:13 | | election(2) 64:23  65:1 | |
| 111:5  111:13  112:23  115:20  121:23  123:1 | | disposing(1) 28:18 | | 172:18  172:20 | | electronic(2) 1:47  177:19 | |
| 123:15  132:9  139:4  161:23  163:22  168:1 | | dispute(19) 20:7  21:22  37:9  37:9  37:10 | | | | element(3) 92:6  109:17  124:2 | |
| 173:4  175:1 | | 39:12  45:3  56:14  59:19  65:18  66:9  66:19 | | donald(1) 2:29 | | elements(1) 98:17 | |
| | | 66:21  70:10  97:18  108:18  119:21  133:9 | | done(11) 31:15  44:19  48:11  49:4  84:13 | | elephant(1) 48:15 | |
| difference(1) 95:9 | | 153:2 | | 93:22  135:19  135:19  139:1  156:23  167:1 | | ellias(1) 6:36 | |
| differences(1) 42:24 | | disputed(2) 39:22  86:1 | | | | elliott(1) 173:14 | |
| different(18) 20:11  21:14  22:8  22:9  40:18 | | disputes(4) 78:1  126:1  132:4  138:10 | | dorman(3) 4:29  9:26  129:15 | | else(10) 12:3  34:12  36:1  44:6  44:19  45:8 | |
| 75:21  83:15  99:12  110:3  115:10  116:13 | | distinct(3) 37:16  37:21  38:12 | | dorr(1) 6:44 | | 59:17  110:21  117:21  166:2 | |
| 148:10  148:11  148:13  157:17  162:15  164:2 | | distinction(7) 37:8  70:20  71:1  101:4  102:1 | | doubly(1) 164:2 | | | |
| 164:10 | | 106:6  140:18 | | doubt(4) 74:14  82:23  115:24  132:3 | | email(4) 121:8  140:10  140:15  140:17 | |
| | | | | dougherty(2) 8:31  8:31 | | emailed(1) 112:2 | |
| differently(4) 20:18  55:6  148:15  154:10 | | distinguishable(2) 37:12  144:20 | | douglas(1) 9:5 | | emails(3) 56:8  164:22  165:2 | |
| difficult(2) 21:5  25:10 | | distinguishes(1) 60:14 | | dow(2) 8:41  8:41 | | embodied(2) 129:18  133:15 | |
| difficulty(1) 41:21 | | distributable(1) 117:2 | | down(17) 24:21  44:21  51:9  51:18  55:18 | | embodies(2) 95:11  132:22 | |
| dig(2) 144:19  147:9 | | distribution(1) 67:17 | | 55:18  78:6  85:11  109:24  152:12  154:20 | | embodying(1) 136:1 | |
| dilemma(1) 160:15 | | distributions(2) 23:5  171:21 | | 166:17  166:17  171:15  171:16  171:23 | | embroil(1) 107:2 | |
| diluted(1) 64:2 | | district(9) 1:2  63:9  101:6  105:21  105:23 | | 176:23 | | eminently(1) 44:18 | |
| dilution(12) 62:11  62:18  62:24  63:4  63:4 | | 132:16  143:18  158:20  159:22 | | dozens(2) 67:15  67:15 | | employee(3) 142:1  142:2  142:7 | |
| 63:11  63:14  64:12  71:23  73:2  73:4  73:7 | | divides(1) 107:17 | | draft(6) 80:17  82:8  95:5  96:6  104:11 | | employees(2) 107:12  142:2 | |
| | | divito(1) 7:31 | | drafting(2) 55:8  76:19 | | emptiness(1) 140:16 | |
| diminish(1) 68:2 | | dixit(2) 50:6  69:13 | | drafts(8) 94:14  94:17  95:8  98:6  100:1 | | enables(2) 37:18  132:23 | |
| diplomacy(2) 152:10  170:4 | | dla(1) 9:30 | | 100:3  136:11  136:13 | | end(5) 40:11  68:1  69:15  110:10  135:22 | |
| direct(4) 28:18  74:21  97:5  140:16 | | docket(4) 42:5  42:7  131:10  135:12 | | | | endless(1) 157:19 | |
| directed(2) 86:24  99:2 | | docketed(1) 90:22 | | dramatically(1) 32:20 | | enemy(2) 137:19  137:19 | |
| direction(3) 108:8  148:16  148:16 | | doctrine(11) 97:21  107:15  132:14  132:18 | | draw(1) 148:8 | | enforce(3) 23:7  123:3  151:12 | |
| directly(8) 30:24  101:3  141:1  141:1 | | 132:22  133:21  138:2  141:10  141:15  145:1 | | drawn(1) 102:1 | | engaged(1) 157:14 | |
| 144:14  145:2  145:10  145:14 | | 146:5 | | drayton(1) 3:14 | | english(3) 3:33  9:21  57:2 | |
| | | | | drift(1) 149:6 | | enormous(1) 167:23 | |
| directors(1) 9:35 | | | | drill(1) 109:23 | | | |
| | | | | driven(2) 93:17  93:19 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**enough(11)** 12:15 14:11 39:7 64:17 65:5 76:21 76:22 94:22 96:11 162:15 166:8

**enter(5)** 17:12 17:13 29:22 71:11 77:21
**entered(6)** 49:22 95:19 122:14 124:24 149:21 153:1

**entering(2)** 17:2 110:9
**entire(3)** 115:8 144:22 146:1
**entirely(2)** 76:23 80:13
**entirety(1)** 118:11
**entities(1)** 15:17
**entitled(10)** 23:7 73:21 74:9 93:24 97:13 97:21 109:19 111:11 128:4 142:2

**entitlement(2)** 40:2 41:1
**entries(2)** 49:13 107:3
**entry(5)** 26:11 26:20 37:18 69:19 69:19
**enunciated(2)** 141:11 150:5
**envision(1)** 84:24
**envisioned(1)** 80:13
**eos(1)** 8:48
**ephraim(1)** 7:42
**equally(3)** 108:20 111:11 128:14
**equitable(1)** 165:17
**equity(2)** 114:18 116:14
**erens(1)** 9:36
**eric(1)** 4:38
**especially(6)** 21:12 76:5 106:14 110:1 144:9 160:24

**espoused(1)** 142:16
**esq(100)** 1:23 1:24 1:25 1:26 1:33 2:5 2:6 2:13 2:14 2:15 2:16 2:22 2:29 2:30 2:36 2:43 2:44 3:13 3:14 3:20 3:26 3:27 3:28 3:34 3:35 3:42 3:49 3:50 4:5 4:6 4:13 4:14 4:15 4:16 4:22 4:30 4:31 4:40 4:47 5:5 5:13 5:14 5:21 5:27 5:33 5:39 5:45 6:11 6:12 6:13 6:14 6:15 6:16 6:17 6:18 6:22 6:24 6:36 6:38 6:39 6:45 7:5 7:11 7:12 7:13 7:14 7:25 7:26 7:27 7:31 7:34 7:46 7:47 7:48 8:5 8:9 8:13 8:35 9:5 9:6 9:7 9:8 9:12 9:13 9:14 9:17 9:18 9:22 9:27 9:31 9:36 9:37 9:43 9:44 9:48 10:8 10:12 10:13 10:18 10:22

**essentially(10)** 36:23 65:22 89:18 153:14 153:15 154:16 154:22 155:7 160:18 162:3

**establish(4)** 40:14 98:15 164:19 164:20
**established(3)** 30:19 40:15 130:10
**establishing(1)** 155:19
**estate(10)** 37:19 44:9 44:13 83:18 84:1 93:6 93:17 131:13 131:14

**estates(1)** 144:11
**esther(1)** 6:28
**estimate(3)** 57:23 76:10 76:15
**estimated(1)** 20:22
**estimates(1)** 76:9
**estimation(4)** 11:10 19:16 85:19 85:23
**evaluate(1)** 113:3
**evaluation(1)** 113:23
**eve(1)** 2:43
**even(25)** 15:18 22:24 39:12 39:18 40:21 46:22 47:7 50:7 56:6 61:13 64:7 65:20 104:4 111:9 111:21 129:20 131:2 134:7 134:11 157:17 164:13 164:21 166:11 166:12 173:11

**event(3)** 24:1 63:17 169:9
**events(3)** 120:22 124:22 161:5
**ever(7)** 50:9 70:16 113:12 131:6 138:10 153:1 167:3

**every(5)** 93:13 110:19 131:20 152:17 165:4
**everybody(5)** 44:6 44:19 117:9 162:13 165:4

**everyone(6)** 11:3 36:10 79:19 117:10 126:7 175:18

**everything(17)** 23:19 25:23 26:24 27:6 42:18 50:8 65:14 103:4 111:23 115:17 144:15 155:7 166:19 166:20 171:11 171:2 176:24

**evidence(23)** 53:7 65:20 65:20 69:13 108:23 109:3 109:11 111:23 118:19 122:3 127:13 136:17 153:20 153:20 153:20 165:5 165:17 165:12 165:17 166:8 166:8 169:1

**evolution(1)** 95:15
**exact(2)** 60:16 60:18
**exactly(11)** 25:7 25:7 25:11 25:15 31:14 55:14 58:24 67:19 72:15 106:17 149:5

**examination(2)** 43:8 167:4
**examiner(4)** 43:7 116:24 119:18 153:16
**examiner's(12)** 56:6 118:4 119:18 159:18 159:20 161:6 161:12 161:21 161:22 164:7 167:2 167:3

**example(7)** 35:10 94:10 102:16 111:18 113:15 120:5 141:22

**excellent(1)** 20:5
**except(3)** 11:17 11:22 123:10
**excerpted(1)** 98:18
**excess(1)** 44:10
**exchange(14)** 21:6 22:14 25:20 25:21 27:8 27:13 28:21 29:4 29:15 30:24 31:1 31:13 32:1 32:21

**exchanged(4)** 28:12 119:12 119:16 129:3
**exchanges(1)** 147:8
**exchanging(2)** 25:23 28:21
**excluded(3)** 71:1 71:6 71:19
**exclusivity(1)** 106:9
**exclusivity(5)** 125:20 126:10 155:17
**excuse(5)** 12:2 21:24 43:17 81:21 170:21
**exempted(2)** 150:7 153:22
**exercise(1)** 17:11
**exercising(1)** 26:23
**exhibit(5)** 31:1 94:10 95:22 97:8 151:16
**exist(4)** 97:17 153:22 154:2 165:1
**existed(2)** 71:15 76:18
**existence(2)** 73:18 73:22
**exists(2)** 154:6 154:7
**expand(2)** 141:15 165:3
**expands(1)** 132:19
**expect(3)** 88:15 93:14 93:16
**expectation(2)** 176:11 176:20
**expected(1)** 80:20
**expedition(1)** 150:16
**expense(5)** 45:11 71:24 71:24 75:21 76:15
**expenses(10)** 38:9 38:10 39:9 39:18 39:19 41:7 57:10 57:10 70:6 71:18 75:9 76:1 76:4

**experts(1)** 136:16
**explain(3)** 77:2 155:14 157:5
**explained(1)** 155:23
**explains(1)** 66:21
**explanation(1)** 150:10
**explore(1)** 90:15
**expose(1)** 48:14
**expressed(2)** 23:21 33:8
**expressly(1)** 82:10
**extending(2)** 126:10 174:16
**extension(1)** 155:17
**extensive(1)** 43:9
**extent(11)** 13:3 45:9 78:11 81:11 85:22 93:12 106:2 108:5 119:12 148:19 149:12

**extra(1)** 64:20
**extremely(1)** 157:19
**eye(1)** 154:8
**f.3rd(1)** 145:6

**face(7)** 26:19 27:2 30:2 32:10 53:23 82:7 82:21

**faced(1)** 138:17
**facets(1)** 99:12
**facially(6)** 40:4 41:11 42:16 42:19 49:17 49:17

**facie(3)** 47:10 47:12 89:22
**facilitate(3)** 149:22 155:21 156:13
**fact(32)** 30:13 30:20 32:5 34:8 37:10 40:20 61:4 61:12 70:15 76:6 76:18 82:13 89:21 89:23 90:1 112:4 112:7 112:17 130:15 138:19 144:6 145:9 147:21 150:23 151:2 152:24 153:23 153:23 158:19 163:3 164:13

**factor(3)** 63:4 114:1 133:10
**facts(5)** 19:23 108:10 121:16 158:23 159:6
**factual(1)** 83:13
**fail(1)** 52:2
**failure(2)** 27:8 27:9
**fair(13)** 20:19 61:9 65:5 82:20 92:10 108:13 111:10 111:24 118:12 119:22 158:19 165:15 172:22

**fairfax(1)** 166:5
**fairly(1)** 40:14
**faith(7)** 150:11 153:21 160:20 161:1 161:8 161:18 170:15

**fall(4)** 27:16 71:20 155:23 156:7
**falls(1)** 29:12
**familiar(1)** 101:23
**far(19)** 20:24 40:2 40:7 40:16 44:3 56:4 69:23 71:8 85:16 96:7 96:11 96:13 98:7 102:21 111:15 111:17 129:6 140:4 170:7

**fargo(2)** 4:37 10:21
**farther(3)** 109:24 111:3 161:5
**fast(1)** 62:9
**favor(6)** 36:3 40:10 52:15 52:16 63:20 151:6

**favorite(2)** 164:16 164:18
**favors(1)** 157:3
**fcc(4)** 11:17 14:21 173:17 174:1
**fear(1)** 48:17
**february(11)** 15:6 78:3 89:3 89:7 90:5 126:22 173:19 174:5 174:17 174:19 176:1

**federal(3)** 98:11 137:22 145:23
**fee(20)** 43:19 44:9 45:11 45:11 46:8 59:21 60:9 60:11 60:23 61:7 61:10 61:18 61:22 61:24 62:7 62:10 62:14 68:7 68:17 75:21

**feel(5)** 34:1 34:6 37:4 147:15 150:10
**fees(32)** 38:9 38:18 39:8 39:17 39:19 41:7 43:16 45:4 45:10 46:3 46:5 57:9 57:10 59:3 62:3 66:10 66:16 66:19 67:6 70:6 70:13 71:18 74:23 75:2 75:24 76:4 76:9 76:15 77:20 86:19 87:1 144:16

**feld(5)** 4:12 7:45 87:7 88:4 90:19
**fell(1)** 59:20 82:11
**fellow(2)** 130:7 131:21
**few(9)** 15:1 23:14 23:15 53:19 101:9 132:17 153:21 174:3 175:6

**fiduciary(2)** 93:6 93:14
**fierce(1)** 93:23
**fight(1)** 90:13
**fighting(4)** 102:1 116:12 170:16 170:16
**figueroa(1)** 4:32
**figure(5)** 55:3 56:10 67:17 96:13 116:15
**file(8)** 17:23 21:24 25:2 56:5 71:16 88:20 103:22 163:15

**filed(41)** 17:5 19:18 20:12 20:12 21:1 22:13 30:17 31:13 34:8 35:15 36:10 46:9 46:19 49:10 57:4 60:23 60:23 76:11 80:9 83:6 88:8 97:9 102:6 103:3 103:18 104:9 135:10 135:12 135:24 136:1 136:14 136:21 139:7 139:15 140:13 140:20 159:10 159:12 159:19 161:6 161:23

**filing(8)** 88:7 88:9 136:3 136:4 138:3 138:22 171:7 172:1

**final(6)** 56:15 95:5 100:12 139:7 155:11 172:1

**finalized(1)** 136:22
**finally(2)** 109:7 172:21
**financial(6)** 147:17 147:17 147:18 147:21 148:2 148:7

**find(15)** 30:23 46:10 98:11 113:20 134:16 138:24 145:5 153:19 153:23 154:12 163:12 167:3 167:8 167:24 171:10

**finding(5)** 85:15 153:21 171:10
**fine(9)** 15:8 35:17 37:3 38:3 88:19 89:5 149:14 175:11 177:11

**finger(1)** 2:35
**firm(10)** 18:17 19:13 47:3 51:1 125:24 126:7 138:1 139:14 142:3 169:5

**firm's(1)** 69:13
**firmness(1)** 138:2
**firms(1)** 50:6
**firs(1)** 46:19
**first(39)** 13:12 13:23 21:18 22:9 22:10 22:23 30:24 35:7 40:1 45:1 45:18 54:14 60:9 76:10 80:12 83:5 91:5 91:10 93:21 94:3 97:22 98:13 103:22 104:9 107:21 108:12 108:14 120:20 125:16 133:2 133:9 135:17 137:15 144:21 153:16 156:18 159:9 170:13 171:7

**fishing(1)** 150:16
**fit(2)** 59:17 99:5
**five(2)** 151:17 167:18
**fix(1)** 21:8
**fixed(1)** 52:13
**flaws(1)** 34:10
**flesh(1)** 148:21
**fleshed(1)** 156:6
**flex(1)** 66:15
**flip(1)** 97:15
**floor(5)** 3:8 3:37 3:44 4:24 5:34
**florida(1)** 64:24
**flowed(1)** 164:15
**fluid(4)** 137:4 171:1 171:2 171:3
**fluidity(1)** 137:13
**focus(3)** 59:7 161:19 161:20
**focused(5)** 16:3 91:20 126:2 161:1 161:2
**folded(2)** 115:16 115:16
**follow(6)** 19:14 24:21 38:1 42:6 101:7 173:8

**following(6)** 30:19 80:1 85:22 88:7 98:6 120:4

**footnote(16)** 66:17 70:4 70:6 70:15 70:17 70:23 70:23 71:6 72:12 72:13 76:21 76:23 104:1 105:23 144:21 173:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**for**(301) 1:2 1:22 2:4 2:28 3:4 3:19 3:33 3:41 4:4 4:21 4:37 5:4 5:19 5:32 5:38 5:44 6:3 6:21 6:31 6:43 7:4 7:9 7:17 7:21 7:24 7:34 7:37 7:41 7:45 8:17 8:21 8:24 8:27 8:31 8:34 8:38 8:41 8:45 8:48 9:4 9:11 9:17 9:21 9:30 9:34 9:40 9:47 10:6 10:11 10:16 10:21 11:8 11:12 11:17 11:22 12:21 14:19 15:20 16:17 17:3 18:24 19:12 19:17 19:20 21:9 21:23 22:13 24:20 25:1 25:3 25:10 26:20 27:10 27:10 28:10 28:16 29:6 29:23 30:6 30:19 31:23 32:8 32:9 32:10 32:12 32:14 33:3 34:22 35:2 35:10 36:1 36:18 38:9 41:4 41:6 41:13 42:6 42:20 43:1 44:7 44:24 45:5 45:7 46:5 46:22 47:15 47:18 48:6 48:10 48:17 49:19 50:14 50:14 50:16 50:24 51:21 52:14 52:24 53:3 53:9 53:19 54:12 54:16 54:20 54:22 55:8 55:19 56:4 56:12 57:2 57:4 57:7 57:7 57:9 57:12 57:22 58:4 59:12 59:17 60:1 60:5 60:10 61:1 61:10 61:24 62:3 63:10 63:13 64:12 65:17 66:6 68:11 69:11 69:20 69:21 70:8 70:13 72:8 73:21 74:4 74:8 74:20 75:8 75:9 76:6 76:19 76:21 77:8 77:12 77:20 78:11 79:13 80:18 81:2 81:6 82:20 83:2 83:5 84:7 84:10 84:16 85:23 86:1 86:20 87:6 87:18 87:24 88:3 88:11 89:9 89:13 90:18 90:22 92:10 92:19 92:20 93:3 93:12 93:23 94:11 94:17 94:23 94:24 95:4 95:6 95:11 98:17 99:20 100:13 100:14 101:7 102:16 103:19 104:12 104:1 104:24 105:18 105:24 108:9 108:13 109:18 110:18 111:17 111:18 111:21 112:14 114:14 114:15 118:12 120:4 123:2 124:1 124:12 124:14 125:15 126:4 127:8 128:16 129:5 130:3 135:4 136:15 137:13 139:11 139:20 139:20 140:6 141:1 143:7 143:15 144:8 144:11 144:17 146:15 147:1 147:13 147:14 147:16 149:5 150:6 150:22 150:22 153:10 154:19 155:17 155:20 156:1 156:24 156:24 157:2 157:20 158:16 158:18 162:1 162:22 163:1 163:1 163:7 163:22 164:1 164:3 164:5 164:6 165:14 166:14 166:24 167:11 168:2 170:9 171:15 173:5 173:15 174:12 174:13

**for**(1) 177:7
**force**(1) 151:12
**forces**(1) 172:5
**forcing**(1) 67:23
**foreclosed**(1) 81:8
**foregoing**(1) 177:18
**foreseeable**(1) 134:11
**forever**(1) 153:11
**form**(17) 26:10 47:14 48:23 49:14 53:5 55:8 55:8 71:3 84:9 86:8 86:18 96:6 96:19 96:20 97:9 97:10 107:18

**formally**(2) 159:12 169:10
**forman**(1) 1:31
**former**(2) 26:16 80:20
**formula**(1) 29:4
**formulation**(2) 146:4 146:5
**formulations**(1) 148:6
**forth**(16) 19:23 22:24 23:1 23:13 31:3 35:16 82:8 95:21 98:18 100:24 103:13 103:14 118:22 121:10 147:22 171:3

**fortunately**(1) 43:1
**forward**(15) 76:14 98:4 103:5 149:10 156:19 159:20 161:12 161:21 162:22 163: 163:21 164:8 166:10 166:20 173:19

**forwarded**(1) 105:2
**fought**(3) 118:1 118:2 135:11
**found**(4) 13:20 63:6 111:8 126:10
**foundation**(1) 132:12

**four**(7) 22:9 44:11 60:6 74:13 103:7 167: 177:3

**fours**(1) 99:3
**fourth**(1) 60:21
**fox**(1) 4:37
**frame**(1) 77:4
**frankly**(7) 30:6 37:22 40:21 67:23 77:13 161:21 176:24

**fraud**(8) 87:21 88:16 89:22 91:17 92:2 124:2 130:11 168:20

**fraudulent**(1) 99:20
**free**(1) 17:7
**freidman**(1) 176:8
**friday**(4) 15:21 53:21 89:6 89:10
**friedlander**(1) 47:3
**friedman**(8) 5:12 8:12 10:17 69:2 173:22 173:23 173:23 176:8

**friends**(1) 92:8
**frighten**(1) 172:10
**frightens**(1) 172:10
**from**(114) 11:5 16:21 18:14 21:4 21:4 23:23 24:10 28:10 29:9 29:9 32:8 33:18 34:23 35:2 36:16 37:17 37:21 38:12 43:1 44:22 48:3 48:4 48:4 51:16 51:9 52:6 52:15 58:1 58:15 58:19 60:15 63:9 65:12 67:15 70:15 71:12 71:8 71:19 72:22 74:17 75:9 75:11 75:12 75:22 76:4 76:4 76:10 79:17 81:9 82:20 84:5 88:9 91:9 92:13 92:14 92:15 92:18 92:24 93:4 93:4 96:2 98:4 98:4 98:7 99:21 100:17 102:21 103:5 104:8 104:9 105:21 105:22 105:23 106:24 109:14 110:9 111:12 116:12 116:13 118:4 120:20 124:19 124:19 127:2 127:23 130:17 132:9 135:21 137:1 138:18 138:22 140:14 143:20 144:5 150:7 150:17 150:19 153:14 154:7 156:19 157:9 158:3 161:11 161:20 162:2 162:13 163:7 164:23 166:4 166:20 167:14 174:1 176:14 176:18 177:19

**front**(4) 46:22 85:4 157:21 160:19
**frustrate**(1) 113:19
**full**(15) 21:1 21:24 57:24 73:16 109:4 110:9 111:10 118:6 118:12 119:4 121:22 122:10 132:10 136:23 176:17

**fully**(3) 33:6 33:11 53:7
**fulsome**(1) 90:6
**fun**(1) 165:10
**function**(2) 170:2 171:10
**fundamental**(1) 37:7
**fundamentally**(2) 35:17 74:1
**funds**(2) 48:5 48:19
**funnel**(1) 144:6
**funny**(3) 34:14 35:14 94:22
**further**(17) 11:23 24:1 54:17 65:20 66:3 67:2 67:9 70:10 79:11 89:2 98:5 100:1 133:7 157:6 173:18 176:16 177:7

**future**(2) 132:4 134:11
**future's**(1) 102:10
**fuzzier**(1) 137:2
**fuzzy**(1) 151:3
**gained**(1) 103:6
**game**(4) 92:10 108:13 111:24 118:12
**games**(1) 13:14
**gandhi**(1) 10:12
**garrison**(2) 7:10 10:7
**garvan**(1) 5:5
**gary**(1) 6:6
**gather**(2) 39:11 42:18
**gave**(4) 105:16 115:16 150:14 163:7
**gavin**(1) 6:49
**geddes**(1) 4:4
**gee**(1) 49:6
**gelber**(8) 24:23 24:24 25:3 26:8 26:15 26:22 27:15 27:20 28:1 28:5 28:7 29:18

**gelbr**(1) 5:21
**general**(5) 34:4 40:9 77:23 78:8 132:2
**generally**(3) 26:6 78:1 149:18
**generic**(1) 71:20
**generous**(1) 164:21
**gentilotti**(1) 5:4
**george**(2) 8:31 8:31
**gerber**(2) 99:23 135:4
**gerber's**(2) 99:2 100:4
**get**(51) 12:16 13:2 28:24 31:11 31:23 36:24 40:23 43:7 44:14 46:1 48:18 50:22 50:24 54:4 55:10 55:19 58:8 58:13 62:18 68:11 73:6 74:5 75:11 79:6 81:16 94:1 97:3 109:20 110:13 113:13 116:12 118:3 120:21 122:16 123:22 123:23 127:21 130:10 131:10 132:12 140:8 153:11 155:4 155:6 156:6 156:11 156:23 159:24 165:19 169:16 169:22

**gets**(8) 17:23 35:12 39:18 40:23 46:5 114:18 137:1 143:6

**getting**(4) 43:19 116:14 172:7 172:13
**gist**(2) 86:18 97:23
**give**(19) 16:18 20:9 41:22 46:11 49:2 53:17 54:3 56:8 78:8 78:13 86:9 90:5 108:1 111:5 121:20 138:1 149:9 159:6 175:5

**given**(13) 24:14 31:22 82:14 83:4 84:5 92:5 114:6 117:19 142:3 151:2 156:23 158:20 158:22

**gives**(6) 46:12 48:21 54:4 60:1 141:24 154:20

**giving**(4) 43:10 73:5 158:22 161:5
**glaring**(1) 139:23
**gleich**(1) 3:13
**global**(3) 14:22 126:13 170:9
**goal**(1) 116:4
**goes**(14) 40:7 48:7 63:16 69:23 85:5 90:21 91:15 96:13 105:16 109:1 115:5 143:11 161:15 164:17

**going**(90) 12:18 13:18 13:22 17:23 23:11 23:16 24:10 27:4 27:5 28:20 29:8 30:7 33:12 36:11 43:9 44:21 51:8 51:14 52:2 57:14 58:6 58:9 58:12 59:7 64:4 64:8 64:14 64:15 64:16 67:17 68:3 69:20 72:17 73:10 73:15 73:19 73:22 78:10 79:10 79:22 82:22 82:23 84:3 84:4 88:9 90:2 98:4 103:5 103:17 106:23 109:21 110:18 113:10 118:12 119:2 121:9 121:14 123:24 125:15 125:23 126:17 127:11 129:6 129:2 138:24 146:17 146:20 148:20 148:21 150:6 150:15 152:1 152:10 152:12 152:17 153:3 153:11 155:3 155:8 155:12 156:23 158:10 164:20 167:3 168:23 170:22 172:1 173:10 174:9

**golden**(3) 4:13 81:23 82:1
**goldfarb**(1) 9:44
**goldman**(2) 6:45 8:45
**goldsmith**(1) 7:47
**gone**(3) 42:3 146:21 166:12
**good**(49) 11:3 11:4 15:11 16:12 16:14 17:3 18:8 24:23 28:3 29:20 33:19 35:1 36:14 36:15 40:17 44:23 56:17 57:1 63:3 64:1 64:22 64:24 69:1 74:8 79:19 79:20 87:6 88:2 92:2 92:12 110:3 110:4 115:17 117:11 129:14 132:5 141:13 150:11 150:2 152:19 155:10 157:8 160:3 160:20 161:2 161:8 161:18 162:15 170:15

**goodness**(1) 50:14
**goods**(3) 27:3 27:18 28:2
**goodwill**(1) 151:3
**gordon**(12) 3:27 6:43 6:48 7:12 11:16 18:16 19:13 33:3 41:3 120:5 129:16 135:18

**gelbr**(1) 5:21

**got**(23) 34:13 34:16 35:23 36:5 47:13 50:6 56:13 61:17 65:8 97:11 112:8 114:21 118:17 120:20 125:14 125:21 126:8 155:6 156:21 164:10 165:13 167:24 168:6

**gotshal**(1) 10:11
**gotten**(2) 50:9 110:6
**graene**(1) 9:43
**grant**(1) 85:22
**granted**(3) 15:15 44:20 77:14
**gray**(4) 136:23 148:10 148:11 170:24
**great**(5) 8:34 51:14 108:16 159:19 161:7
**greater**(1) 153:13
**greatest**(3) 68:11 68:15 93:12
**greg**(1) 6:15
**greissman**(2) 4:47 10:22
**gross**(7) 120:16 135:10 135:14 135:17 138:4 152:6 152:7

**ground**(3) 146:21 168:2 168:23
**grounded**(1) 130:20
**grounds**(5) 82:15 94:4 127:12 143:4 146:18 142:12 142:13 143:16
**group**(9) 63:8 87:8 94:24 96:8 105:1

**groups**(1) 11:7
**growing**(1) 39:19
**guess**(10) 20:19 46:17 47:10 50:10 85:4 110:22 121:5 160:18 164:16 168:19

**guidance**(1) 11:24 80:1 149:9
**guide**(1) 16:7
**gump**(7) 4:12 7:45 87:7 88:3 90:19 163:4 163:20

**gut**(1) 151:5
**guys**(1) 152:12
**hac**(1) 29:22
**had**(74) 14:6 14:10 16:6 18:22 19:2 19:2 19:4 19:15 19:17 22:14 24:11 31:15 35:4 41:17 42:9 42:24 52:20 52:20 56:5 56:6 61:24 69:10 76:1 80:2 82:14 83:17 83:20 88:11 88:11 88:22 89:19 89:21 89:22 90:3 91:4 91:6 96:2 98:2 98:24 102:10 102:16 103:3 103:4 103:7 103:9 104:23 107:3 109:7 109:14 113:16 114:4 125:8 125:23 125:24 162:15 163:13 165:3 166:13 166:16 168:7 171:11 171:11 175:18

**hadn't**(3) 14:6 103:6 157:18
**hale**(1) 6:43
**half**(1) 23:15
**halfway**(1) 121:19
**hall**(2) 120:13 152:13
**hand**(5) 60:15 110:7 110:17 133:16 163:15
**handed**(2) 19:7 97:9
**handle**(2) 19:8 23:4
**handled**(1) 116:22
**handling**(1) 46:7
**hands**(1) 64:6
**hang**(1) 40:20
**happened**(16) 30:20 32:5 35:18 48:1 110:20 110:20 110:20 112:11 113:20 113:21 118:3 118:11 120:9 121:5 124:24 142:23

**happening**(1) 121:6
**happens**(3) 73:19 73:20 123:19
**happy**(8) 19:22 24:16 33:15 41:22 52:7 66:5 66:14 146:11

**hard**(19) 43:20 44:16 44:17 46:6 112:16 114:14 116:12 118:1 118:2 131:19 133:11 138:9 138:12 141:11 151:8 156:5 157:19 170:16 170:16

**harder**(5) 65:19 78:12 138:8 148:21
**hardly**(1) 62:1
**harrisburg**(1) 1:43

| Word | Page:Line |
|---|---|
| **harrison**(1) 5:26 | |
| **harvey**(1) 5:26 | |
| **has**(83) 17:19 20:4 20:6 20:11 30:20 34:9 36:6 38:15 40:16 40:17 40:22 41:3 41:8 42:3 43:20 44:19 45:22 46:2 46:3 50:13 51:10 51:11 52:18 53:21 54:12 56:6 59:6 61:17 62:23 65:8 65:15 65:20 69:17 72:18 73:3 73:7 75:8 77:1 78:2 78:15 84:24 86:1 86:17 87:16 87:19 88:16 91:9 96:4 98:14 99:7 101:20 105:7 111:8 111:8 111:9 111:22 115:22 116:16 116:23 117:1 120:10 126:16 131:15 133:8 140:23 141:1 141:10 142:9 142:10 146:21 148:3 153:13 157:12 161:12 163:3 166:24 166:24 169:1 169:21 173:7 175:10 175:18 175:21 | |
| **hasn't**(2) 138:21 138:21 | |
| **hat**(4) 40:20 93:5 93:10 115:10 | |
| **hate**(2) 48:2 78:23 | |
| **hauer**(5) 4:12 7:45 87:7 88:4 90:19 | |
| **have**(237) 11:7 13:11 16:22 17:17 17:21 17:24 19:9 21:21 23:21 24:6 27:4 28:23 28:24 29:8 31:8 31:14 31:18 31:21 32:3 32:13 33:7 34:2 34:7 35:9 35:20 35:23 37:1 38:6 40:13 40:15 41:5 41:9 41:12 41:15 41:18 41:21 42:1 42:9 42:10 42:21 44:8 44:10 44:11 44:13 44:16 44:17 46:15 47:9 48:11 48:11 48:12 48:16 49:3 49:9 49:12 49:12 49:18 49:19 50:4 50:9 51:2 51:16 52:6 52:20 53:6 53:17 58:6 61:6 63:6 63:7 63:10 64:1 64:17 67:1 68:7 70:10 72:6 72:11 72:18 73:19 74:3 76:1 76:22 77:16 77:17 77:18 78:20 79:23 80:7 81:18 82:9 82:17 83:14 84:18 85:3 85:14 85:17 86:8 88:13 88:14 88:15 88:22 89:1 90:3 91:9 91:10 91:12 91:13 92:2 92:6 92:23 93:13 93:16 93:17 94:4 95:11 95:5 96:5 96:12 96:22 97:2 97:17 98:12 99:24 100:6 100:7 100:11 101:22 102:15 102:19 102:21 103:20 104:5 104:7 104:21 105:3 109:8 109:8 109:9 110:2 110:6 110:19 110:22 110:23 112:23 113:4 113:18 113:2 114:16 115:11 115:20 116:16 116:18 116:21 118:6 118:10 119:2 119:22 120:11 120:12 121:14 122:3 122:15 127:7 126:7 128:5 128:18 129:17 130:4 131:2 131:9 131:19 131:21 134:13 135:4 138:2 138:10 138:20 139:22 142:5 144:10 145:8 145:23 146:10 146:24 147:3 148:1 149:7 150:3 150:13 151:19 152:10 153:22 155:3 156:13 157:5 157:6 157:20 157:24 158:5 159:2 160:15 161:4 161:18 161:20 162:9 162:17 163:1 163:14 164:9 164:15 165:16 165:21 165:23 166:14 167:14 167:18 169:19 169:20 170:19 171:2 172:5 173:1 173:9 173:9 173:13 173:15 173:18 173:20 174:3 174:4 174:15 174:23 176:9 176:17 177:8 | |
| **haven't**(15) 13:20 21:12 22:19 40:2 41:1 41:6 50:22 52:13 76:23 110:6 128:19 143:12 156:2 156:4 166:1 | |
| **having**(5) 26:16 61:13 66:22 165:10 168:2 | |
| **hazeltine**(1) 3:19 | |
| **he'll**(1) 46:17 | |
| **he's**(5) 12:6 35:14 46:7 148:2 152:13 | |
| **head**(2) 15:19 113:11 | |
| **headache**(1) 167:10 | |
| **headed**(1) 15:18 | |
| **hear**(16) 13:12 24:15 33:18 34:23 44:22 48:19 52:10 58:19 65:12 72:22 74:17 82:22 82:23 84:6 86:12 132:9 | |
| **heard**(13) 22:7 79:15 81:5 82:5 82:19 83:18 89:13 126:15 130:16 135:21 157:21 159:14 175:20 | |

| Word | Page:Line |
|---|---|
| **hearing**(45) 12:16 15:15 16:9 17:2 17:16 17:17 17:21 23:1 23:14 24:10 30:10 50:21 53:22 80:8 80:13 83:7 83:8 84:8 84:10 84:19 85:1 85:6 85:7 87:23 89:20 92:11 95:14 108:16 108:23 109:18 111:10 111:1 113:13 118:19 119:22 121:2 121:21 123:2 125:20 126:9 136:16 158:18 163:2 177:14 177:15 | |
| **heart**(2) 33:22 54:2 | |
| **heavily**(3) 117:11 135:10 159:10 | |
| **heavy**(1) 162:7 | |
| **heightened**(4) 108:7 108:10 109:6 122:1 | |
| **held**(3) 26:10 125:21 143:22 | |
| **help**(1) 55:21 | |
| **helpful**(7) 18:5 19:24 30:22 31:13 43:2 80:11 80:19 | |
| **helps**(1) 55:11 | |
| **hence**(1) 96:12 | |
| **hennigan**(4) 4:29 9:26 11:16 129:15 | |
| **hercules**(1) 3:6 | |
| **here**(74) 15:14 17:24 20:8 23:20 30:4 30:5 30:11 31:8 33:7 33:11 33:24 34:13 34:16 39:22 41:13 42:10 46:6 48:8 48:15 50:12 53:2 55:22 63:15 64:14 64:15 64:16 76:3 77:4 79:2 91:21 96:14 99:18 100:16 103:22 112:9 116:2 116:24 116:24 146:17 118:23 122:13 123:18 129:22 133:9 136:20 138:2 138:17 139:3 141:3 142:16 143:21 147:2 148:12 149:6 150:13 150:18 151:8 153:9 155:2 156:22 158:17 160:16 161:2 161:16 162:3 166:5 168:15 168:21 170:10 | |
| **here's**(4) 14:5 109:23 134:10 136:19 | |
| **hereby**(1) 31:12 | |
| **herring**(3) 63:17 73:10 75:5 | |
| **hey**(2) 78:22 151:9 | |
| **higher**(3) 32:14 79:8 144:16 | |
| **highly**(1) 125:24 | |
| **highway**(1) 170:11 | |
| **him**(6) 46:18 48:3 55:11 55:11 112:3 112:3 | |
| **himself**(2) 135:16 170:3 | |
| **his**(7) 46:18 56:8 69:5 75:5 126:5 169:21 173:5 | |
| **history**(1) 83:3 | |
| **hit**(5) 11:19 31:21 91:6 113:11 154:18 | |
| **hold**(5) 30:2 67:16 137:24 168:4 168:8 | |
| **holder**(2) 25:10 48:5 | |
| **holders**(18) 9:11 20:12 22:7 22:12 23:7 24:12 24:17 25:23 26:23 26:23 27:13 28:21 28:22 35:8 43:2 43:3 43:6 48:20 | |
| **holding**(2) 137:16 145:9 | |
| **holds**(3) 134:12 135:1 145:6 | |
| **hole**(1) 48:18 | |
| **holidays**(2) 157:16 167:21 | |
| **holliday**(1) 6:32 | |
| **homes**(1) 39:15 | |
| **honest**(4) 93:2 93:11 115:11 116:17 | |
| **honesty**(1) 61:15 | |

| Word | Page:Line |
|---|---|
| **honor**(301) 11:4 11:5 11:7 11:12 12:6 12:14 12:21 13:7 13:13 13:21 14:13 14:18 15:7 15:8 15:11 15:18 16:3 16:10 16:14 16:16 18:4 18:8 18:10 18:12 18:17 19:4 19:6 19:12 19:14 19:22 20:2 20:3 20:11 22:5 23:4 23:10 23:10 24:8 24:13 24:16 24:20 24:23 25:18 27:3 27:15 28:7 29:18 29:20 29:22 30:1 30:6 30:14 31:9 32:7 32:18 33:2 33:11 33:13 33:15 33:19 33:22 34:21 35:1 36:5 36:14 37:1 37:6 37:7 37:15 37:23 38:1 38:19 40:5 41:2 41:11 41:13 41:17 41:22 41:23 42:12 43:15 43:20 44:1 44:3 44:10 44:20 44:23 45:23 46:23 48:7 48:14 49:4 49:16 49:21 49:22 50:23 51:6 52:6 52:8 52:12 53:2 54:8 54:10 54:12 55:4 55:5 56:1 56:3 56:4 56:13 56:16 56:21 57:1 57:19 58:10 58:18 58:20 60:5 62:16 64:3 64:13 65:1 65:5 65:11 65:13 66:5 67:1 67:11 67:12 68:14 69:1 71:13 72:17 72:18 73:2 74:16 74:19 75:2 75:4 75:17 77:2 80:1 80:7 80:10 80:23 81:3 81:20 81:22 81:23 82:5 82:19 83:2 84:11 84:21 84:23 85:9 85:10 85:13 85:18 86:4 86:16 87:4 87:6 87:10 87:24 88:2 88:6 88:19 89:1 89:11 90:18 90:20 91:1 91:4 91:11 91:20 92:3 92:8 92:12 92:22 93:4 93:19 93:23 94:5 94:16 94:22 95:11 95:22 96:2 96:17 96:22 97:6 97:9 98:1 98:9 98:14 99:2 99:7 99:15 99:18 100:19 101:4 101:10 102:13 103:7 103:17 104:2 104:7 104:17 104:20 105:14 105:21 105:23 106:5 106:12 106:17 107:16 107:18 107:22 108:4 108:7 108:9 108:18 108:21 109:2 109:6 111:1 111:6 111:14 111:21 112:14 113:9 113:15 114:1 114:15 115:4 115:20 116:7 117:5 117:13 117:22 119:5 120:3 120:10 120:17 122:12 123:1 123:9 123:14 124:8 125:4 125:8 125:19 126:19 126:22 127:5 128:3 128:6 128:12 128:17 129:2 129:12 129:14 129:22 130:9 132:5 138:18 145:13 146:7 146:15 149:20 152:23 157:6 157:8 157:18 158:15 159:22 159:24 161:19 163:13 163:14 165:17 167:12 167:15 167:19 168:9 168:22 169:2 169:6 169:9 169:18 170:11 170:21 170:23 171:2 171:7 171:17 171:24 172:6 | |
| **honor**(19) 172:12 172:18 173:1 173:9 173:14 173:22 174:6 174:12 174:22 175:17 175:17 175:22 176:8 176:12 176:14 177:6 177:9 177:11 | |
| **honor's**(4) 23:16 37:18 100:5 126:11 | |
| **honorable**(1) 1:17 | |
| **honored**(1) 154:15 | |
| **hope**(4) 78:17 143:7 158:3 176:10 | |
| **hopeful**(1) 75:10 | |
| **hopefully**(5) 12:22 13:14 75:15 78:5 162:2 | |
| **hoping**(1) 174:17 | |
| **horribly**(1) 110:14 | |
| **host**(1) 136:9 | |
| **hosted**(1) 127:18 | |
| **hot**(1) 41:20 | |
| **hotel**(1) 122:22 | |
| **hour**(1) 79:13 | |
| **hours**(5) 41:3 83:8 158:14 167:21 174:4 | |
| **how**(47) 12:18 20:21 22:7 23:9 34:16 35:11 37:4 46:9 46:15 46:15 46:21 47:14 62:18 63:18 64:4 64:4 68:12 85:6 85:18 95:8 96:13 99:5 110:20 112:12 112:16 113:3 114:8 114:10 118:5 118:7 120:19 120:19 122:20 123:18 126:15 142:22 149:15 156:11 158:13 159:24 160:3 160:6 166:10 168:6 169:7 170:1 170:8 | |
| **howard**(2) 2:15 9:6 | |
| **however**(7) 19:6 21:22 30:24 51:16 52:18 59:8 88:20 | |
| **hundreds**(2) 159:2 165:22 | |

| Word | Page:Line |
|---|---|
| **hurdle**(1) 110:14 | |
| **hurt**(1) 55:11 | |
| **hypothetical**(5) 122:13 165:1 165:15 172:9 172:18 | |
| **hypotheticals**(3) 165:6 165:7 165:12 | |
| **i'd**(17) 54:13 62:12 64:3 65:2 65:5 77:4 84:8 86:12 89:8 106:11 110:23 131:8 131:17 136:17 146:11 148:9 152:23 | |
| **i'll**(40) 16:21 23:20 23:20 24:15 24:21 33:18 34:23 36:12 39:23 40:5 44:22 52:10 58:19 58:23 59:4 65:12 72:22 74:13 74:17 78:1 79:1 82:23 84:8 84:18 85:21 85:22 87:9 109:23 120:18 120:21 122:9 123:3 131:10 137:15 140:8 146:11 157:4 159:7 168:10 175:15 | |
| **i'm**(58) 12:15 13:14 13:14 14:12 18:14 19:22 20:20 24:16 26:17 27:4 27:22 31:8 33:15 36:11 36:19 41:22 44:21 45:13 48:6 49:21 50:12 50:19 55:21 56:12 59:7 59:22 68:3 77:14 82:22 84:11 85:12 95:10 101:23 103:12 106:6 110:14 111:4 113:8 123:13 123:23 126:11 126:11 129:6 129:23 130:7 134:16 142:15 146:17 146:24 152:12 154:7 155:7 155:9 160:6 164:1 165:20 168:23 173:10 | |
| **i've**(21) 17:7 20:1 36:5 44:3 47:13 65:8 78:2 78:3 78:3 78:16 78:18 114:19 116:22 117:19 153:1 155:6 159:22 159:23 165:13 169:18 169:20 | |
| **ibj**(2) 107:9 143:18 | |
| **idea**(4) 16:22 61:13 116:1 152:19 | |
| **ideas**(1) 130:16 | |
| **identical**(1) 134:7 | |
| **identification**(2) 89:23 89:24 | |
| **identified**(5) 52:18 74:14 81:13 151:15 152:5 | |
| **identify**(1) 137:6 | |
| **identity**(2) 60:20 61:2 | |
| **ill-advised**(1) 172:4 | |
| **illinois**(1) 63:10 | |
| **imagine**(2) 144:24 165:24 | |
| **imagined**(2) 130:8 165:1 | |
| **immaterial**(1) 63:5 | |
| **immediately**(3) 98:2 98:20 99:1 | |
| **immense**(2) 157:14 167:1 | |
| **imminently**(1) 39:8 | |
| **impact**(2) 34:4 68:7 | |
| **impairing**(1) 86:22 | |
| **imperative**(1) 152:16 | |
| **implement**(2) 114:12 148:17 | |
| **implicated**(1) 94:20 | |
| **implicates**(2) 104:19 109:19 | |
| **implications**(3) 35:9 131:8 132:10 | |
| **implicitly**(1) 61:18 | |
| **implied**(1) 98:3 | |
| **importance**(3) 92:6 127:16 128:18 | |
| **important**(14) 45:1 59:9 100:19 103:12 105:14 108:21 111:12 115:8 120:19 134:10 145:21 147:5 151:1 155:13 | |
| **importantly**(2) 143:19 145:4 | |
| **impossible**(1) 106:24 | |
| **improperly**(2) 55:4 77:19 | |
| **imprudent**(1) 63:18 | |
| **inappropriate**(2) 50:24 66:1 | |
| **inasmuch**(1) 35:9 | |
| **inc**(2) 7:30 8:24 | |
| **incentive**(2) 25:14 150:21 | |
| **inclination**(1) 24:5 | |
| **inclined**(2) 41:23 77:21 | |
| **include**(5) 47:3 93:7 105:2 140:6 171:12 | |
| **included**(9) 17:19 57:17 60:22 68:17 71:1 71:6 72:1 80:17 89:9 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| includes(2) 66:8 92:17 | | interest(122) 28:16 28:19 28:22 38:11 38:13 57:22 58:2 61:1 62:17 63:23 84:1 94:5 94:20 95:18 96:7 96:9 96:18 97:10 97:13 97:16 97:22 98:8 98:10 98:1 98:17 98:24 99:9 99:10 99:23 100:7 100:1 100:11 100:15 100:17 101:14 101:22 102:11 102:15 102:20 103:20 104:5 104:8 104:17 104:22 105:1 105:9 105:13 105:16 105:18 105:24 106:19 107:19 129:4 129:2 130:5 130:15 130:23 132:13 132:18 132:24 133:6 133:12 133:13 133:17 133:1 133:20 134:1 134:2 134:4 134:5 134:7 134:8 134:14 134:17 135:2 135:7 135:8 135:23 135:24 136:2 137:14 137:17 138:1 138:7 138:16 138:20 139:3 139:7 139:10 139:16 139:22 140:1 140:2 140:5 140:7 140:23 141:7 141:8 141:9 141:14 141:18 141:19 142:5 142:19 143:16 143:23 144:2 144:4 144:12 144:22 145:11 146:5 146:8 146:20 147:1 147:11 149:8 149:11 170:23 172:14 173:5 | issue(112) 14:21 14:22 14:23 20:24 21:3 21:12 22:2 23:2 23:8 23:13 23:16 23:22 26:1 26:20 30:23 33:21 35:6 35:7 35:11 37:10 41:19 45:19 49:11 51:3 51:24 52:5 52:13 53:16 55:20 57:14 57:19 59:8 62:4 63:19 64:11 64:11 65:16 65:23 65:23 66:21 69:8 69:9 70:3 71:23 72:8 73:2 73:3 73:7 81:12 81:16 84:2 84:3 84:4 86:2 89:14 90:4 90:10 90:14 91:16 96:5 97:22 99:3 99:8 100:20 101:4 102:3 102: 104:16 104:17 104:19 105:7 105:15 106:7 106:7 107:17 108:3 108:3 108:13 108:17 109:3 109:23 111:23 114:4 115:11 117:18 117:23 119:20 120:3 121:18 122:1 122:7 122:9 122:17 123:9 123:11 124:4 124:7 129:23 134:23 138:19 145:17 146:1 149:1 157:4 157:5 159:8 168:11 169:15 169:17 170:21 173:2 173:3 | jared(1) 6:36 jason(3) 3:50 7:47 9:31 jean-marie(1) 7:27 jefferies(1) 8:19 jenner(3) 5:44 7:4 16:15 jeopardizing(1) 151:20 jeremy(1) 9:13 jersey(1) 105:22 jessica(1) 1:26 jets(1) 13:17 jillian(1) 6:11 jim(2) 129:14 146:15 job(3) 43:3 56:13 112:15 john(1) 9:17 johnson(7) 12:9 12:14 12:21 13:1 13:5 15:2 15:7 |
| including(5) 62:22 80:2 92:7 94:12 95:1 | | | | | | johnston(22) 4:30 87:12 129:14 129:15 134:22 135:6 137:9 137:12 138:8 141:22 142:9 142:13 142:15 143:1 145:13 145:22 146:14 146:16 146:21 146:22 168:1 172:3 | |
| incomplete(1) 31:8 | | | | | | | |
| inconsistency(3) 99:16 99:17 139:23 | | | | | | | |
| inconsistent(3) 63:15 99:13 169:14 | | | | | | | |
| incorporate(1) 59:4 | | | | | | | |
| incorrect(1) 68:19 | | | | | | | |
| increase(2) 72:3 72:5 | | | | | | | |
| incurred(2) 38:10 45:10 | | | | | | | |
| indebtedness(1) 39:4 | | | | | | | |
| indeed(2) 78:8 172:2 | | | | | | | |
| indenture(45) 23:8 25:4 26:16 26:16 30:21 33:5 36:18 37:16 37:20 37:24 38:5 38:8 38:23 39:4 39:7 39:8 39:16 43:4 43:4 43:12 43:18 45:3 45:10 54:7 57:8 57:11 58:6 60:11 61:21 61:24 62:3 62:10 62:23 66:9 66:11 67:5 67:23 70:7 70:7 70:8 71:18 73:10 73:19 73:24 74:6 | | | | | | | |
| indentures(8) 29:4 57:7 57:7 59:12 59:12 59:14 60:10 62:7 | | | | interested(4) 30:3 34:7 34:10 155:9 | | | |
| | | | | interesting(6) 21:10 41:19 44:2 48:1 114:4 132:7 | | joint(2) 43:11 106:19 jointly(1) 106:20 jones(3) 8:41 8:41 9:35 joseph(1) 3:14 joshua(1) 4:31 jpmorgan(1) 7:21 judge(25) 1:18 39:14 99:2 99:23 100:4 101:19 106:10 120:6 132:16 132:18 133:23 135:4 135:10 135:14 135:17 137:19 138:4 143:7 148:9 152:6 152:7 154:21 155:7 166:5 173:3 | |
| independently(2) 109:15 113:22 | | | | | | | |
| indicate(3) 31:14 34:3 56:9 | | interests(1) 50:11 | | issued(6) 25:24 26:4 26:24 32:12 95:19 98:1 | | | |
| indicated(5) 83:19 88:14 97:23 117:20 163:5 | | interfere(1) 171:10 | | | | | |
| | | interim(1) 77:5 | | issuer(1) 26:6 | | | |
| indicates(1) 163:19 | | intermediate(1) 145:18 | | issues(56) 11:18 12:2 13:24 21:16 23:8 23:24 50:2 50:21 58:22 78:16 80:8 83:18 88:18 88:21 89:18 90:9 90:21 91:11 94:3 96:11 98:6 102:5 103:9 103:9 103:9 115:6 118:9 119:4 119:4 125:17 126:3 127:6 128:13 128:14 129:6 129:24 134:18 147:4 150:4 161:3 162:7 165:16 167:23 168:2 168:10 168:17 168:20 171:4 171:4 171:12 172:14 173:8 173:17 174:11 174:1 | | judges(1) 110:10 | |
| indication(1) 70:24 | | intern(1) 20:6 | | | | | |
| indirect(1) 28:18 | | interplay(1) 108:5 | | | | july(4) 53:18 76:13 127:18 159:19 | |
| individual(4) 36:2 47:7 51:9 115:1 | | interposed(1) 94:4 | | | | jump(1) 11:12 | |
| industries(1) 123:2 | | interpretation(1) 130:12 | | | | juncture(6) 149:11 153:6 155:15 155:18 155:24 156:15 | |
| infinitely(1) 115:23 | | interpreting(1) 145:5 | | | | | |
| infinitum(1) 56:9 | | interrupt(2) 14:18 175:1 | | | | | |
| information(15) 48:22 49:4 78:9 79:3 79:7 79:9 100:24 105:10 132:24 133:2 137:3 141:16 150:15 151:10 161:7 | | interruptus(1) 120:17 | | | | june(3) 126:24 139:19 139:20 jurisdiction(1) 106:9 jurisdictional(1) 81:16 just(109) 11:12 11:15 12:5 13:7 13:13 14:3 14:18 20:19 24:7 25:6 30:15 33:4 34:16 37:3 38:1 41:2 41:4 41:9 42:8 42:10 44:15 45:15 45:21 47:21 49:2 50:8 50:11 50:16 52:8 53:6 53:23 54:1 54:10 65:16 66:13 67:1 67:4 67:12 69:8 69:13 71:2 71:16 73:1 74:7 75:1 75:4 77:23 78:1 78:7 78:17 78:18 78:19 80:20 83:2 84:23 85:1 89:17 90:3 91:20 91:22 92:20 95:10 97:9 105:15 108:1 110:14 111:1 111:2 111:2 111:19 111:20 112:2 112:15 113:20 115:5 115:6 115:6 115:16 117:19 121:7 123:23 125:15 128:4 128:11 128:20 132:17 133:20 135:17 137:13 143:11 145:5 147:11 147:13 149:18 150:16 157:13 159:7 161:11 164:23 165:19 167:18 167:20 168:21 169:1 171:15 173:12 175:5 176:1 176:16 | |
| | | intersect(1) 105:15 | | | | | |
| informed(1) 78:2 | | into(40) 16:4 17:2 17:13 23:16 50:24 59:14 59:19 59:20 59:24 61:7 61:8 61:10 61:19 62:10 64:21 67:6 71:20 79:10 83:1 84:20 92:18 95:16 99:8 99:10 106:23 110:9 114:18 115:5 121:1 127:8 127:11 144:20 147:9 155:21 160:1 162:12 163:13 166:13 170:8 170:17 | | it's(139) 14:2 14:10 21:6 21:19 23:9 25:7 25:8 27:3 28:13 30:17 38:24 40:14 40:24 41:13 41:19 42:5 42:16 43:2 43:18 45:1 47:12 47:21 47:21 49:8 49:8 49:24 53:2 55:2 56:13 58:12 58:14 60:19 61:17 62:1 63:7 63:8 63:8 63:9 63:17 64:1 64:9 64:9 64:13 65:3 66:1 66:7 67:22 68:16 71:13 72:7 72:8 74:1 74:2 74:7 75:1 76:10 76:16 77:1 78:11 78:17 79:1 82:8 84:2 84:15 85:20 86:12 89:9 89:17 92:4 97:1 97:4 99:1 99:13 100:19 100:20 101:6 101:7 104:12 105:1 105:14 106:21 106:21 106:24 107:6 107:7 108:2 108:13 108:14 110:3 110:4 110:6 112:9 112:11 113:9 115:7 116:13 117:4 117:5 117:14 117:19 117:20 120:3 121:5 121:11 122:17 122:21 124:12 126:11 127:16 128:14 129:6 130:2 132:12 134:15 136:23 138:6 138:9 138:7 139:20 139:23 141:4 142:5 143:1 143:5 144:9 144:23 145:13 145:14 147:13 150:17 151:17 152:17 155:12 162:12 164:13 165:13 166:14 167:4 173:17 175:11 | | |
| inherent(1) 137:13 | | | | | | | |
| initial(2) 23:5 150:8 | | | | | | | |
| initially(2) 140:4 150:5 | | | | | | | |
| inject(1) 21:11 | | | | | | | |
| innuendo(1) 166:7 | | | | | | | |
| inquire(1) 149:14 | | | | | | | |
| inquiry(3) 67:9 92:7 124:3 | | | | | | | |
| insignificant(1) 63:5 | | | | | | | |
| insofar(2) 83:20 170:19 | | intriguing(1) 21:5 | | | | | |
| instance(2) 102:14 149:16 | | introduce(1) 18:14 | | | | | |
| instances(1) 106:18 | | invade(4) 109:10 111:15 149:17 154:13 | | | | justification(3) 147:11 147:14 147:16 | |
| instant(1) 121:9 | | investigate(1) 154:21 | | | | justifies(1) 136:18 | |
| instead(6) 72:6 136:1 144:6 144:14 161:23 172:9 | | investigation(1) 43:9 | | | | justify(2) 164:20 168:14 | |
| | | invited(1) 152:7 | | | | justin(1) 8:17 | |
| institutional(1) 92:23 | | invoice(3) 41:4 42:4 53:19 | | item(12) 11:18 13:8 14:1 14:2 14:3 14:15 87:20 97:12 97:19 173:17 174:14 174:20 | | kalenchits(2) 7:17 7:17 | |
| instructed(2) 26:1 31:12 | | invoiced(1) 41:8 | | | | kansa(1) 6:16 | |
| instruction(2) 26:18 26:24 | | invoices(16) 41:3 41:5 41:11 47:2 47:3 47:4 47:13 59:6 59:6 70:1 116:24 116:24 126:16 126:23 127:1 128:6 | | | | kaplan(2) 8:12 173:23 | |
| insulates(1) 98:3 | | | | items(5) 36:20 151:15 151:17 176:22 177: | | karaffa(1) 9:31 | |
| insurance(2) 102:5 102:12 | | | | iteration(1) 71:8 | | kasowitz(5) 5:11 10:16 14:19 69:2 174:13 | |
| insure(1) 68:14 | | invoke(1) 133:21 | | iterations(1) 44:11 | | katharine(1) 3:35 | |
| insurers(2) 102:7 137:20 | | involved(11) 12:2 14:1 25:6 43:8 50:12 73:8 99:18 103:10 125:10 125:12 141:1 | | its(39) 16:6 26:5 26:19 35:15 38:8 38:9 39:18 43:18 48:17 49:23 53:8 53:20 54:5 57:9 57:11 60:23 60:23 61:1 76:9 76:11 80:18 81:4 81:6 82:7 82:21 91:6 95:1 95:2 100:23 101:8 109:3 118:10 137:7 139:18 142:18 144:22 144:23 146:1 166:2 | | katherine(1) 6:38 | |
| integrity(1) 61:15 | | | | | | katten(1) 9:17 | |
| intellectual(1) 61:15 | | | | | | kaye(1) 3:12 | |
| intend(4) 15:22 33:5 77:6 97:22 | | involvement(2) 76:10 99:20 | | | | keel(1) 104:4 | |
| intended(2) 35:4 118:8 | | involves(1) 46:6 | | | | keep(2) 63:18 68:3 | |
| intending(1) 75:14 | | involving(3) 15:16 77:11 161:14 | | itself(10) 26:18 32:14 32:21 37:16 40:16 100:4 105:23 144:21 151:21 159:18 | | kelley(1) 7:21 | |
| intentionally(1) 45:7 | | ipse(2) 50:6 69:13 | | | | | |
| inter-creditor(1) 126:1 | | ira(1) 67:16 | | | | | |
| intercompany(2) 103:15 129:5 | | irrelevant(5) 40:24 73:23 77:1 165:8 165:8 | | | | | |
| | | isn't(7) 34:18 40:21 53:1 74:6 90:13 141:13 162:15 | | j.p(10) 55:2 111:20 120:6 120:8 168:6 173:15 174:1 176:9 176:15 176:18 | | | |
| | | | | | | | |
| | | issuance(1) 27:1 | | james(6) 1:23 1:25 2:22 2:44 4:30 15:11 | | | |
| | | | | jammed(1) 116:1 | | | |
| | | | | january(9) 1:13 11:1 88:8 96:20 97:10 156:16 156:18 163:4 177:23 | | | |
| | | | | jarashow(1) 8:13 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**kempner**(1) 7:41
**ken**(1) 6:16
**kept**(1) 76:20
**kerriann**(1) 6:18
**kevin**(5) 1:17 1:24 7:21 33:19 65:13
**key**(3) 101:19 138:18 171:4
**kick**(1) 90:5
**kickoff**(1) 156:17
**kind**(15) 46:4 61:4 77:21 90:14 96:7 102:11 111:6 112:7 119:1 121:24 122:6 124:19 155:1 165:10 170:11

**king**(4) 2:37 2:38 5:6 63:2
**kira**(1) 10:8
**kizzy**(1) 8:13
**kjc**(1) 1:7
**klehr**(1) 5:26
**kline**(1) 6:12
**knew**(4) 66:18 131:20 158:8 158:10
**know**(121) 15:19 20:22 21:3 21:6 21:6 21:13 22:15 23:19 23:23 24:4 24:6 24:7 25:5 25:11 26:8 26:11 26:19 27:22 29:11 33:4 33:9 34:6 41:15 43:21 46:9 46:13 46:21 47:12 47:14 47:15 49:8 50:19 50:19 51:13 51:21 53:4 54:17 56:2 56:17 58:14 63:16 64:3 64:5 64:17 72:10 72:10 72:11 76:17 77:8 78:20 86:10 90:1 92:23 93:4 96:1 100:5 101:3 104:22 109:7 109:14 110:1 110:14 110:15 110:16 110:24 111:1 112:1 112:11 112:21 113:3 114:3 114:17 116:4 117:2 120:12 121:3 121:4 121:5 121:5 121:7 121:8 121:9 122:11 123:15 123:23 125:14 127:6 127:15 127:15 128:1 129:15 129:20 132:10 134:16 134:18 134:19 136:22 137:4 138:24 142:20 142:2 143:4 144:15 144:17 145:17 148:7 155:1 155:11 157:13 158:13 159:1 159:6 159:9 161:10 163:14 168:21 169:10 169:15 170:2 172:20 176:21

**knowing**(1) 25:8
**known**(1) 116:21
**knows**(3) 117:9 143:2 166:23
**komodo**(1) 162:6
**korpus**(9) 5:13 14:18 14:19 15:5 15:8 87:17 87:19 174:12 174:12

**krakauer**(1) 6:14
**kramer**(1) 7:34
**kristina**(1) 7:48
**kumbaya**(1) 24:6
**kurth**(1) 9:11
**laboring**(1) 48:16
**lack**(2) 124:2 169:1
**laid**(1) 80:3
**landed**(1) 140:20
**landis**(2) 2:4 2:6
**language**(14) 29:13 29:13 38:16 38:24 53:5 58:15 59:11 72:10 146:24 150:1 150:3 151:4 174:23 177:2

**languages**(1) 138:24
**lantry**(31) 1:24 33:19 33:20 35:6 35:13 37:7 39:12 52:12 53:4 53:10 53:12 53:16 54:14 56:20 65:13 65:13 66:5 70:4 74:19 85:13 86:4 86:7 86:14 86:16 87:4 174:22 175:4 175:10 175:13 175:17 175:22

**lantry's**(4) 36:4 55:8 67:5 72:12
**large**(1) 110:1
**larger**(1) 20:15
**laser**(2) 91:20 126:2
**lashko**(1) 7:13
**last**(21) 15:15 23:10 33:21 46:19 49:11 54:13 79:7 89:22 123:16 123:24 124:7 136:3 136:3 136:4 139:17 159:1 165:23 166:21 168:11 170:21 174:3

**late**(1) 36:1

**later**(8) 45:2 45:14 86:10 86:15 120:24 147:18 150:2 157:2

**latest**(2) 18:24 44:14
**latham**(2) 3:48 29:21
**latter**(1) 77:13
**laughter**(18) 12:11 12:13 12:20 12:24 13:16 13:19 15:24 16:23 28:6 33:17 43:24 55:16 65:4 84:14 106:16 116:6 160:4 172:11

**launch**(1) 16:4
**laurie**(1) 3:5
**law**(68) 5:4 11:15 11:18 14:19 18:17 19:13 20:4 32:15 36:21 39:13 50:6 57:23 58:21 59:13 59:21 59:23 60:14 62:14 63:3 63:15 68:4 68:6 68:7 68:21 69:3 69:13 70:8 70:10 70:14 71:24 72:4 72:13 75:18 75:21 76:8 76:14 77:12 77:18 86:19 86:22 87:16 92:3 92:9 93:7 97:14 98:11 105:19 106:3 117:14 122:6 130:21 131:10 136:18 137:15 139:12 141:5 141:13 145:5 145:15 150:22 151:4 158:20 159:21 160:24 160:24 169:5 174:13 174:14

**lawrence**(2) 5:21 24:23
**lawsuit**(1) 134:11
**lawyer's**(1) 144:13
**lawyers**(6) 15:18 105:3 143:16 172:5 172:8 172:17

**layer**(2) 106:22 153:1
**layton**(1) 2:35
**lbo**(17) 23:12 94:12 94:14 94:15 100:8 105:5 124:23 125:2 125:17 126:2 127:22 128:2 128:13 131:7 138:21 156:1 165:21

**lead**(3) 91:2 132:3 147:23
**leading**(1) 12:7
**leads**(1) 68:18
**learn**(1) 153:4
**least**(22) 16:19 21:3 21:23 22:9 22:16 23:11 30:15 34:6 40:2 44:14 46:12 79:2 108:9 116:2 131:17 137:18 143:23 164:23 168:17 169:23 171:4 171:6

**leave**(1) 149:5
**leaving**(1) 58:16
**lee**(1) 8:21
**left**(5) 31:22 32:23 64:19 100:22 170:10
**leg**(2) 121:19 121:20
**legal**(31) 40:22 48:9 95:18 97:21 98:3 98:24 100:7 101:14 102:11 105:4 105:9 106:19 106:20 107:15 107:16 131:4 132:2 133:17 134:1 134:14 135:1 141:7 142:3 143:23 144:5 144:13 144:16 159:8 172:15 172:17 172:17

**lemay**(28) 2:13 9:7 34:3 35:1 35:2 36:8 44:23 44:24 46:9 47:21 50:7 50:23 52:18 58:20 58:20 65:5 65:11 66:7 67:1 67:4 67:11 68:8 69:10 69:11 73:1 75:5 75:14 126:15

**lender**(27) 23:12 44:11 51:15 59:10 63:21 64:8 67:21 70:5 91:8 91:15 94:17 94:19 95:13 95:18 96:10 97:20 97:24 99:21 100:16 101:5 103:24 104:13 106:8 108:13 122:14 129:18 146:7

**lender's**(1) 158:16
**lenders**(20) 4:22 9:26 57:16 58:4 86:24 91:9 98:23 99:19 99:24 101:16 102:15 103:13 115:9 125:9 127:22 128:2 133:11 133:14 135:9 136:8

**length**(21) 59:4 91:17 92:1 94:2 114:1 114:8 114:9 114:12 115:12 115:21 116:20 117:16 118:20 119:23 121:16 122:2 123:5 124:1 130:13 160:21 170:20

**lengthy**(1) 161:13

**leonard**(1) 1:32
**lerman**(1) 8:8
**leslie**(10) 99:17 101:18 105:22 106:5 132:17 133:3 133:23 134:12 137:16 173:4

**less**(8) 32:19 50:3 62:24 63:4 64:18 73:8 132:3 167:18

**lessor**(1) 20:14
**let**(28) 11:12 12:5 13:11 16:11 30:18 36:24 55:7 67:8 77:4 77:23 94:3 97:3 104:16 110:23 111:3 111:6 115:3 115:13 122:8 128:22 137:9 155:4 157:4 158:15 159:6 159:7 165:19 174:10

**let's**(13) 18:13 31:10 36:13 37:13 39:21 46:1 79:13 79:21 113:14 115:15 132:13 169:22 174:10

**letter**(7) 136:24 140:15 140:17 163:4 163:11 163:18 169:9

**letters**(1) 11:20
**level**(8) 5:7 40:10 48:8 48:8 48:9 67:14 113:3 114:19

**levels**(1) 110:3
**levin**(1) 7:34
**levy**(1) 7:11
**lewis**(1) 8:34
**lexicon**(1) 131:2
**lexington**(1) 2:31
**lexus**(1) 143:18
**liability**(2) 109:12 109:22
**liebentritt**(1) 6:5
**lien**(11) 43:16 43:18 58:7 68:1 72:5 73:22 73:23 75:6 75:10 75:15 136:16

**liens**(4) 73:6 73:9 73:11 73:18
**lies**(1) 116:15
**life's**(1) 155:1
**lift**(1) 81:15
**lifting**(1) 65:19
**light**(6) 17:6 50:17 132:1 132:2 140:2 164:13

**lightly**(2) 135:15 135:19
**like**(51) 13:13 15:18 17:16 22:3 24:4 37:2 38:1 39:16 40:6 40:8 50:2 51:5 54:13 55:14 56:18 58:21 60:5 62:12 64:3 64:21 64:22 65:5 75:11 77:5 84:4 84:8 86:12 88:20 89:8 91:3 91:20 96:18 106:11 119:7 138:10 144:9 145:23 146:18 148:10 151:5 151:23 152:23 153:8 160:12 163:14

**liked**(1) 139:21
**likelihood**(1) 131:12
**likely**(2) 16:3 84:20
**liking**(1) 109:3
**limine**(1) 122:6
**limit**(2) 124:16 147:2
**limitation**(1) 147:14
**limitations**(1) 83:21
**limited**(4) 71:16 94:13 95:1 164:4
**limiting**(3) 91:13 147:11 147:16
**limits**(8) 98:7 120:15 122:17 124:1 127:4 128:23 129:2 129:4

**line**(15) 13:11 32:18 47:13 69:18 69:18 74:20 87:9 96:12 107:2 137:12 141:4 141:12 148:8 151:8 172:2

**lines**(1) 45:21
**list**(1) 119:8
**listed**(3) 77:9 103:8 140:15
**listening**(1) 105:5
**listing**(1) 165:7
**litany**(1) 130:8
**literally**(2) 67:15 83:3

**litigant**(1) 164:12
**litigation**(18) 41:20 48:8 63:23 92:10 98:22 100:8 101:1 101:2 101:13 105:5 107:5 108:13 113:16 127:7 132:4 133:18 134:2 136:15

**little**(14) 13:10 20:9 34:20 40:15 45:16 55:22 62:13 67:13 78:12 80:11 109:24 122:8 162:18 165:14

**litvack**(1) 10:13
**llc**(1) 7:4
**llp**(26) 1:22 2:12 2:21 2:42 3:4 3:12 3:33 4:29 4:37 4:46 5:12 5:20 6:35 7:4 7:10 7:24 8:34 9:4 9:11 9:26 9:30 9:42 9:47 10:7 10:11 10:21

**loan**(1) 107:13
**local**(1) 79:5
**locked**(1) 21:7
**lodged**(3) 60:18 73:12 73:13
**log**(5) 50:10 88:13 88:17 90:3 107:3
**logging**(1) 143:5
**logic**(2) 164:11 164:11
**logical**(3) 162:2 162:8 165:4
**logically**(1) 138:9
**long**(10) 12:18 12:23 42:20 51:3 65:16 74:12 116:9 124:1 131:19 142:20

**longer**(2) 70:24 152:18
**look**(28) 20:22 23:19 28:15 28:17 41:22 41:23 47:4 47:14 97:8 106:12 111:7 112:1 114:8 114:17 115:19 115:22 124:21 125:24 126:14 127:23 131:4 134:15 145:19 146:23 154:21 156:9 166:13 175:19

**looked**(4) 71:2 118:7 160:5 163:1
**looking**(10) 29:1 47:1 67:18 67:20 86:16 115:1 160:11 162:20 162:22 175:2

**looser**(1) 47:17
**los**(1) 4:34
**lose**(1) 142:18
**losquadro**(1) 8:28
**lost**(2) 148:5 164:12
**lot**(10) 41:21 52:4 56:6 103:5 129:21 132:9 149:4 159:22 164:7 167:22

**lots**(4) 139:1 165:24 165:24 167:21
**love**(1) 61:13
**lowest**(1) 115:23
**ludwig**(1) 6:11
**lugano**(1) 1:39
**lunch**(3) 13:3 87:13 90:20
**lynch**(3) 3:4 87:18 174:15
**lynn**(1) 9:37
**lyondell**(5) 99:3 99:11 99:17 101:3 134:23
**made**(32) 35:13 46:3 52:2 54:14 57:7 69:4 69:7 70:20 90:20 91:10 107:13 108:4 110:21 112:14 114:5 117:10 122:12 123:11 133:5 133:12 151:23 157:8 157:16 161:18 163:13 164:22 164:22 165:5 165:6 165:7 166:8 174:15

**madlyn**(1) 3:13
**main**(2) 23:24 97:18
**maintaining**(1) 142:21
**maintains**(1) 26:20
**major**(4) 25:13 123:20 158:4 160:11
**make**(39) 11:24 12:1 12:4 17:24 24:1 24:3 25:14 36:12 46:20 46:21 49:14 51:21 60:7 64:18 66:5 66:14 66:23 74:21 74:22 77:23 81:10 85:21 90:5 113:6 118:20 120:10 122:4 122:8 123:6 136:9 146:19 148:21 149:17 154:13 156:21 157:22 165:3 167:22 168:3

**makes**(8) 39:8 62:23 109:15 113:22 121:1 145:20 149:18 152:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| making(7) 27:20 35:21 53:24 66:12 113:8 136:19 150:19 | | measure(1) 46:13 | | modified(1) 95:6 | | narrative(3) 42:13 46:4 46:4 | |

**making**(7) 27:20 35:21 53:24 66:12 113:8 136:19 150:19

**management**(15) 4:5 5:20 6:31 7:38 7:46 8:4 8:22 8:27 8:28 63:8 87:8 88:5 93:20 114:21 129:16

**mandatory**(2) 29:11 29:11

**manges**(1) 10:11

**manner**(3) 14:12 35:14 109:16

**many**(20) 40:18 46:15 50:20 69:6 78:8 78:16 83:11 96:2 114:20 116:5 125:13 157:14 157:16 157:17 158:13 158:14 158:14 161:14 169:18 172:12

**marc**(2) 2:14 9:8

**march**(7) 33:13 84:7 84:12 84:16 84:17 136:16 167:11

**marching**(2) 148:14 148:16

**marginal**(1) 167:8

**mark**(3) 6:32 93:19 169:7

**market**(7) 1:10 2:7 3:7 3:43 4:40 5:28

**marsal**(1) 8:24

**martin**(3) 3:28 3:42 5:33

**marvin**(1) 9:37

**massachusetts**(1) 64:23

**material**(12) 20:7 50:17 52:5 53:17 62:11 62:24 63:14 68:7 72:7 103:8 125:1 154:12

**material's**(1) 150:2

**materiality**(1) 51:5

**materially**(2) 23:8 58:12

**materials**(4) 100:22 127:20 129:5 145:10

**math**(1) 73:17

**mathur**(1) 9:12

**matter**(32) 12:16 22:6 22:7 25:3 30:5 33:3 50:9 52:13 52:17 52:19 55:9 69:16 73:11 73:15 73:19 73:20 79:21 79:23 98:11 112:4 112:19 115:18 133:6 133:12 138:17 138:17 147:19 154:7 157:12 166:10 173:10 177:20

**matters**(8) 11:22 18:2 54:17 97:12 103:11 141:19 157:17 166:13

**matthew**(5) 5:14 8:5 69:1 75:17

**mauceri**(1) 8:35

**maximized**(1) 93:12

**maximizing**(1) 169:1

**may**(42) 11:23 14:18 15:1 19:11 21:16 36:4 36:19 37:23 43:12 48:3 53:4 53:20 54:7 63:17 67:1 67:14 81:23 89:13 97:6 97:7 104:17 126:12 126:12 132:1 137:3 139:18 139:19 139:19 141:16 143:23 145:9 145:9 147:13 159:1 159:1 169:2 169:19 169:20 171:2 173:11 173:22 174:8

**maybe**(18) 14:9 20:19 28:3 48:18 48:19 64:7 78:18 78:19 101:7 103:4 121:8 125:11 127:9 145:21 147:4 171:1 172:20 175:6

**mayer**(2) 3:35 7:24

**mayor**(1) 126:6

**mccarter**(3) 3:33 9:21 57:2

**mccormack**(14) 2:16 130:2 155:12 157:4 157:8 157:9 158:10 160:5 160:8 160:14 160:17 163:18 167:17 168:11

**mccormack's**(1) 167:20

**mccutchen**(1) 9:47

**mcdaniel**(1) 5:5

**mean**(24) 21:11 24:3 50:20 71:19 84:13 93:22 98:5 112:8 113:15 113:19 114:9 115:17 116:22 116:24 120:16 122:6 123:1 143:11 145:16 153:10 157:14 165:14 166:12 172:20

**meaningful**(5) 48:22 50:4 51:3 53:15 54:2

**means**(2) 49:1 55:5

**measure**(1) 46:13

**measured**(2) 43:1 44:17

**mechanic**(1) 49:3

**mediate**(5) 110:4 113:14 118:7 150:21 150:24

**mediated**(1) 113:17

**mediation**(76) 79:4 98:2 100:20 108:6 108:17 108:24 109:11 110:19 111:12 111:22 112:5 113:15 113:11 113:12 113:21 115:5 117:23 117:23 118:8 118:16 119:6 119:10 119:11 119:13 119:15 119:15 119:16 119:19 120:6 120:9 120:11 120:22 121:11 121:14 121:17 122:15 130:1 137:7 138:6 146:17 149:20 149:24 150:6 150:9 150:20 151:6 151:10 151:14 151:20 151:21 151:24 152:3 152:4 152:14 152:16 152:22 152:24 153:4 153:12 153:16 153:17 153:21 154:14 154:14 154:17 154:23 155:5 155:7 155:10 157:21 159:15 168:17 169:18 169:21 170:9 170:17

**mediation's**(1) 170:1

**mediations**(3) 110:15 169:19 170:12

**mediator**(16) 111:16 111:20 111:20 112:2 112:2 112:6 119:10 119:17 120:1 120:13 137:18 148:23 152:11 152:17 169:20 170:3

**mediator's**(3) 112:15 148:22 152:18

**mediators**(1) 149:4

**meet**(2) 79:8 88:12

**meeting**(6) 120:5 120:12 126:4 126:7 127:19 127:24

**meetings**(1) 127:21

**meisel**(1) 1:31

**member**(2) 75:7 145:2

**memorandum**(1) 102:4

**memorializing**(1) 96:9

**mention**(2) 157:11 171:13

**mentioned**(2) 69:11 143:19

**mere**(1) 130:11

**merger**(1) 137:23

**merit**(1) 56:2

**merits**(1) 166:22

**merrill**(3) 3:4 87:18 174:15

**message**(1) 170:7

**messaging**(1) 121:9

**mester**(1) 4:31

**met**(1) 128:2

**metaphor**(1) 169:3

**michael**(5) 5:27 6:7 7:25 9:47 9:48

**might**(29) 12:24 16:7 16:20 21:10 32:9 36:20 49:6 49:12 51:6 51:19 53:15 54:6 64:20 64:24 71:11 79:11 82:5 83:2 85:18 102:15 117:1 127:13 145:18 147:21 151:24 154:1 159:24 167:8 171:2

**mightily**(1) 48:16

**mike**(1) 8:48

**mileage**(1) 169:15

**miles**(1) 6:13

**million**(26) 20:9 25:22 29:3 29:5 29:6 30:2 33:22 41:7 42:2 44:11 44:15 47:10 47:11 49:20 51:23 51:23 52:16 53:13 57:11 62:16 62:17 86:21 117:8 138:14 165:21

**millions**(1) 167:5

**mills**(1) 6:18

**mind**(6) 68:3 84:24 119:3 123:11 150:13 154:5

**minute**(4) 131:11 140:9 153:10 177:8

**minutes**(2) 167:18 175:6

**missed**(1) 78:18

**missing**(2) 53:3 111:4

**mode**(1) 28:18

**modification**(1) 72:8

**modifications**(1) 74:22

**modified**(1) 95:6

**modify**(1) 122:12

**moelis**(1) 9:30

**moment**(17) 11:13 24:6 34:3 37:3 59:13 59:22 59:23 70:4 84:6 87:24 98:4 103:5 108:1 112:22 117:24 122:9 166:17

**moments**(1) 42:11

**monday**(1) 11:1 84:17

**money**(7) 30:9 33:6 33:9 33:12 33:22 92:20 116:12

**month**(1) 23:15

**monthly**(1) 46:8

**months**(2) 126:4 132:17

**moot**(1) 17:4

**more**(37) 13:14 21:5 21:10 21:16 24:1 33:15 33:23 34:10 34:20 44:15 59:7 62:19 64:18 69:13 78:9 88:10 88:13 90:6 92:18 108:20 116:17 118:17 122:8 128:6 128:14 130:14 132:4 132:4 145:21 147:2 152:24 154:22 157:5 164:13 165:19 173:16 173:2

**moreover**(1) 73:24

**morgan**(12) 2:28 5:38 8:34 10:11 110:20 120:7 120:8 168:6 173:15 174:2 176:9

**morgan's**(2) 55:2 176:18

**morning**(18) 11:3 11:4 15:11 16:13 16:14 18:24 24:23 29:20 33:19 35:1 36:14 36:15 42:9 44:23 52:14 57:1 80:2 126:15

**moskowitz**(2) 173:14 173:14

**most**(23) 11:15 18:4 43:15 53:12 60:21 74:8 80:10 88:11 94:20 98:20 98:24 105:22 107:14 110:10 115:8 120:19 132:1 143:19 145:4 145:21 152:6 167:22 170:2

**mostly**(5) 11:15 14:20 16:17 78:2 99:8

**motherhood**(1) 56:17

**motion**(98) 11:19 11:14 11:16 11:19 14:16 14:22 15:2 15:14 16:6 17:8 17:11 17:14 17:17 17:23 19:5 19:8 19:17 19:19 19:23 21:21 24:13 25:2 31:2 34:8 35:13 35:15 35:21 35:22 36:11 37:15 37:24 44:20 46:19 49:10 52:1 53:20 56:5 56:9 56:11 56:23 57:4 57:15 58:21 58:21 58:22 69:21 71:12 76:11 77:9 78:4 80:18 81:14 81:15 82:12 82:19 83:4 83:20 85:21 85:22 85:23 87:9 87:16 87:18 87:21 88:7 88:8 88:15 89:17 89:19 90:1 90:21 91:1 91:5 94:10 95:22 96:6 98:19 100:11 101:18 107:21 122:6 130:16 130:18 130:22 131:4 132:8 140:13 147:7 151:17 167:13 168:7 173:19 173:24 174:11 174:14 174:21 176:9

**motions**(12) 11:7 11:10 14:1 19:1 36:20 51:17 51:22 77:11 78:7 78:16 79:12 87:14

**move**(7) 18:2 18:13 36:13 137:1 149:10 159:4 159:7

**moved**(4) 159:20 162:17 168:2 168:7

**movement**(1) 140:3

**moving**(3) 64:23 76:14 149:20

**much**(28) 17:4 23:13 30:20 35:4 35:11 40:5 40:13 46:9 46:15 48:5 64:4 69:23 114:14 116:12 116:17 118:2 118:17 124:18 125:5 135:3 138:12 148:21 152:17 160:12 166:10 168:6 175:4 177:13

**muchin**(1) 9:17

**multi-party**(1) 152:10

**multiple**(2) 127:3 127:20

**multitude**(1) 144:10

**must**(5) 108:16 114:1 117:16 141:20 144:6

**mutually**(1) 90:14

**myers**(1) 6:21

**myself**(3) 110:7 165:20 166:18

**namely**(1) 59:12

**narrative**(3) 42:13 46:4 46:4

**narrow**(2) 88:18 146:5

**narrowing**(1) 78:12

**narrowly**(2) 98:16 171:9

**nasty**(2) 164:24 165:16

**natural**(1) 171:19

**naturally**(1) 95:14

**nature**(10) 49:23 53:1 84:5 94:7 99:8 114:6 124:11 142:18 160:21 161:16

**necessarily**(2) 26:8 42:21

**need**(33) 20:23 21:7 23:3 43:14 47:22 47:23 52:8 54:1 56:19 65:19 69:12 72:4 72:4 79:8 96:24 109:5 109:17 117:21 117:22 117:24 123:21 134:4 154:9 154:13 154:19 154:21 155:2 155:17 166:8 167:7 167:10 170:19 172:7

**needed**(5) 25:23 26:24 27:7 119:23 121:24

**needless**(1) 30:14

**needs**(4) 17:18 23:6 47:22 81:16

**negotiate**(3) 152:8 155:24 156:16

**negotiated**(6) 109:17 135:10 149:1 149:13 149:24 152:24

**negotiating**(6) 25:8 101:14 102:22 120:7 120:15 169:4

**negotiation**(5) 94:13 114:9 124:23 156:2 161:13

**negotiations**(23) 25:6 96:3 98:6 111:18 118:19 125:22 130:4 135:11 137:17 137:23 150:11 151:20 152:9 156:14 156:18 156:19 157:14 158:1 160:21 161:19 162:5 162:8 162:23

**negotiators**(1) 116:11

**neil**(1) 8:28

**neutral**(1) 73:18

**never**(15) 32:22 56:12 100:7 100:22 116:22 130:23 133:17 134:1 135:1 139:9 139:9 150:14 150:14 160:6 169:14

**nevertheless**(1) 62:4

**new**(18) 2:18 2:32 3:16 3:30 3:38 3:52 4:18 4:49 5:16 5:23 9:30 78:21 88:21 93:20 105:22 120:7 120:14 167:3

**news**(1) 8:41

**newsprint**(1) 102:17

**next**(15) 13:23 14:2 14:9 15:1 15:2 18:13 53:19 56:8 56:10 56:22 87:9 87:23 95:22 120:21 123:19

**nice**(2) 41:15 136:23

**nobody**(2) 13:21 166:23

**nominal**(1) 35:11

**non**(1) 147:16

**non-certificated**(1) 26:10

**non-issue**(1) 56:14

**non-lawyers**(1) 105:8

**non-proponent**(2) 11:19 125:9

**non-testifying**(2) 147:21 148:7

**none**(6) 87:13 92:8 106:9 121:15 145:19 158:5

**nonetheless**(1) 88:17

**noon**(1) 89:10

**nor**(2) 113:2 123:1

**norman**(1) 1:33 11:5

**north**(7) 1:34 2:38 3:7 3:43 4:40 5:6 5:40

**northern**(1) 63:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **not**(253) 11:21 13:14 14:2 14:24 16:5 16:21 17:3 19:6 20:8 20:20 21:20 26:12 27:21 29:2 29:5 30:11 30:19 30:20 30:21 31:15 31:18 31:20 31:24 32:9 32:12 32:21 32:23 34:2 34:14 35:4 35:15 35:17 36:4 36:7 38:21 39:10 39:12 40:21 40:22 41:11 42:9 43:1 43:2 43:19 45:3 45:10 45:19 45:22 45:23 47:13 48:3 48:5 48:11 49:8 49:16 50:8 50:13 51:24 52:4 53:14 53:21 54:6 56:13 57:14 57:23 58:11 59:18 61:24 62:8 62:9 62:24 63:11 64:8 64:13 65:3 65:7 65:18 66:14 68:9 68:17 69:6 69:15 71:23 72:2 72:7 72:8 72:20 75:1 75:10 75:14 76:16 76:22 78:17 80:5 80:12 81:8 82:16 82:22 83:7 83:10 85:7 85:16 86:1 88:22 90:9 91:17 91:20 91:22 92:1 92:4 93:10 93:16 93:17 93:19 94:7 94:12 95:1 95:10 96:15 97:1 99:10 99:13 99:15 99:24 100:6 100:10 100:20 100:21 102:8 102:13 103:5 103:9 103:13 104:6 105:15 106:5 107:2 107:7 107:14 107:16 108:10 108:18 108:20 109:10 110:21 111:14 111:21 112:6 112:7 113:6 113:8 114:19 114:20 115:4 117:4 118:21 118:21 119:1 119:4 119:6 119:20 119:21 120:8 121:5 121:7 121:20 121:21 122:17 123:8 123:12 124:12 125:10 126:13 127:12 127:17 128:9 128:14 128:19 129:5 129:6 130:20 130:20 131:11 132:1 132:5 132:21 132:23 133:8 133:20 134:4 134:5 134:7 134:15 135:4 135:13 135:14 135:18 137:7 137:14 137:17 138:6 138:11 138:17 140:4 140:22 142:15 142:23 145:3 146:2 146:13 146:20 147:15 149:4 149:13 149:17 151:11 152:3 152:6 152:9 153:10 153:11 153:17 154:7 154:7 155:8 155:10 157:7 157:17 159:1 162:12 164:3 164:5 164:14 166:7 166:9 166:18 166:22 167:22 168:5 168:23 169:2 169:23 170:3 170:4 170:18 171:24 172:14 173:8 174:4 174:8 176:17 | | **now**(79) 12:1 13:22 17:13 19:22 20:11 20:17 20:23 22:7 23:3 23:23 24:17 25:3 30:5 34:18 34:21 36:4 39:11 41:21 42:3 46:16 46:18 48:6 49:6 49:7 49:13 50:5 50:18 52:23 61:17 62:22 64:19 65:1 68:3 70:3 71:7 72:9 73:9 76:22 78:11 78:19 78:20 83:10 88:13 91:18 92:12 94:3 98:9 100:10 100:19 101:18 104:3 106:17 109:9 110:8 110:13 110:17 117:10 117:17 118:1 128:9 131:1 139:15 144:18 149:3 149:12 150:7 150:18 151:8 151:22 153:1 156:20 162:12 163:22 164:1 164:2 164:14 164:16 175:2 175:10 | | **okay**(58) 13:6 14:13 14:14 15:9 15:10 18:7 18:19 19:11 20:1 20:7 21:2 24:16 26:13 37:14 38:17 38:22 39:21 39:23 87:5 89:2 90:16 91:4 97:5 105:1 107:23 111:5 112:13 113:1 114:19 115:3 116:5 116:23 117:18 123:16 124:7 129:11 134:2 139:20 142:14 142:22 146:9 164:9 173:12 173:21 174:9 174:19 175:3 175:7 176:1 176:13 177:5 | | **ordering**(1) 71:14<br>**orders**(3) 149:21 149:24 150:1<br>**original**(7) 32:5 32:23 36:24 49:10 61:23 80:17 96:19<br><br>**originally**(1) 162:20<br>**other**(101) 13:3 13:7 15:16 18:2 20:14 22:18 25:12 25:20 29:23 30:5 30:11 30:14 35:22 36:19 37:4 37:10 37:20 38:10 41:2 41:5 43:12 44:12 45:2 45:5 45:5 45:12 50:3 51:7 51:11 51:18 51:20 51:24 52:14 52:21 59:16 60:16 61:10 61:14 61:19 62:6 63:16 67:7 68:6 68:10 68:14 69:15 70:21 71:20 72:18 73:13 74:1 74:3 78:7 83:11 83:19 87:14 91:8 91:14 101:6 101:9 101:16 101:17 101:22 102:23 105:9 105:22 106:21 107:1 107:12 110:17 110:24 114:9 114:10 116:24 121:20 122:21 124:18 128:12 128:13 128:15 128:16 130:4 133:15 136:14 142:2 142:20 143:5 144:5 145:10 146:10 149:23 152:1 153:1 160:24 166:5 166:11 170:3 172:8 173:12 174:11 174:20 |
| | | **number**(63) 11:8 11:13 11:14 11:18 12:5 12:6 12:14 13:22 13:23 13:24 13:24 14:1 14:2 14:3 14:3 14:9 14:9 14:15 14:20 15:4 15:10 26:5 36:13 42:6 45:15 47:6 50:14 50:15 56:23 66:15 77:9 78:2 78:4 79:21 79:22 79:24 85:13 86:7 87:10 87:14 87:15 87:16 88:21 90:10 90:22 91:6 94:1 94:24 110:3 119:20 124:16 124:17 143:14 144:20 157:19 173:17 174:14 174:20 175:8 176:1 176:9 176:21 | | **one**(87) 1:27 2:37 4:17 11:20 12:6 13:7 13:19 17:10 20:12 21:5 28:4 33:4 35:23 36:5 44:14 46:4 46:21 47:5 47:13 48:19 50:16 50:22 53:6 56:2 57:14 58:22 59:6 59:9 60:15 61:20 62:12 64:2 67:1 68:3 76:13 80:5 89:19 91:2 91:5 92:10 92:18 96:21 97:12 105:6 106:20 106:24 107:8 107:22 108:1 110:2 110:7 112:11 114:19 115:4 115:17 115:18 115:19 115:21 119:21 120:6 120:12 121:20 125:16 125:17 127:6 130:20 133:4 137:23 137:5 139:5 141:6 142:1 142:19 144:1 144:10 145:23 146:6 147:7 148:11 149:22 151:24 155:22 161:1 165:13 168:11 170:21 177:8 | | **oksana**(1) 7:13<br>**old**(4) 56:17 76:20 76:20 162:16<br>**omnibus**(1) 84:7<br>**once**(8) 21:7 69:21 70:22 98:1 104:21 104:22 137:23 152:13 | | **others**(8) 39:15 114:23 137:6 156:6 169:19 173:15 173:20 173:20<br><br>**otherwise**(13) 38:11 39:6 51:7 79:4 108:23 118:14 133:8 140:11 142:16 146:11 149:18 155:3 159:4<br><br>**ought**(4) 50:15 149:15 149:16 154:14<br>**our**(85) 16:1 19:23 25:4 25:10 25:19 30:12 40:11 40:20 41:4 43:3 43:4 43:4 46:8 46:13 48:3 49:9 49:20 51:19 53:16 58:1 65:1 66:7 68:10 69:14 75:15 77:24 79:5 80:3 81:9 81:17 82:12 88:12 88:15 89:5 89:17 90:10 92:4 92:9 94:9 94:10 94:24 95:22 96:6 96:14 96:19 98:3 98:19 100:11 100:14 103:8 103:21 104:11 105:6 105:20 107:1 107:18 109:14 111:13 111:14 118:20 121:2 124:12 127:12 133:9 135:10 136:11 137:21 140:19 141:14 143:14 152:4 152:20 154:8 155:23 158:4 158:11 158:17 163:11 164:24 168:12 170:4 171:3 172:3 174:7 176:17 |
| **note**(8) 25:20 27:16 45:1 48:5 60:5 61:23 72:1 98:9 | | **object**(1) 170:10<br>**objecting**(3) 35:22 81:4 91:14<br>**objection**(22) 34:1 35:19 35:24 42:16 81:6 81:12 81:17 83:20 85:3 85:5 88:22 89:1 94:7 94:21 95:16 96:4 96:21 100:3 120:22<br>124:11 127:11 140:19 | | **ones**(2) 110:2 170:12<br>**ongoing**(2) 126:12 137:16 137:23<br>**only**(38) 30:4 34:7 39:2 52:15 52:16 53:3 53:9 53:11 54:2 55:10 60:3 63:19 63:22 65:15 65:18 71:23 72:2 74:21 78:16 80:19 80:22 82:18 85:7 92:18 93:8 100:23 111:17 121:19 135:15 135:19 137:5 140:6 145:1 150:5 166:16 170:11 172:23 174:20 | | | |
| **noted**(4) 21:23 25:1 141:14 144:2 | | **objections**(10) 38:20 39:24 80:9 91:7 91:12 94:4 96:1 136:12 136:14 139:2 | | | | **ours**(2) 44:18 160:12<br>**out**(52) 13:10 21:16 25:19 26:3 28:7 32:7 33:9 45:22 46:10 50:10 52:7 55:3 56:10 61:4 62:21 64:19 64:22 67:17 68:12 70:23 73:4 73:16 80:3 82:3 90:5 90:8 96:13 100:14 103:10 107:13 108:17 113:13 113:20 115:20 116:14 116:15 117:7 120:18 123:23 125:18 140:18 147:4 147:4 147:6 147:8 148:21 152:13 156:6 156:8 160:3 169:16 170:8 |
| **noteholder**(15) 11:14 51:10 68:13 71:4 71:15 72:2 87:8 92:15 92:24 94:23 95:1 95:7 96:8 127:7 130:15 | | **obligated**(1) 38:8<br>**obligation**(2) 39:3 43:4<br>**obligations**(3) 38:5 38:13 39:9<br>**obligor**(1) 60:19 | | **onto**(3) 36:13 41:6 142:6<br>**open**(9) 39:15 77:20 81:16 98:6 110:10 134:18 167:10 174:11 176:24 | | |
| **noteholder's**(1) 146:4 | | **observation**(3) 112:15 114:5 114:8 | | | | |
| **noteholders**(27) 21:13 21:21 37:21 38:6 38:11 43:14 57:18 68:2 85:15 91:14 91:20 93:8 93:13 93:24 100:22 104:6 130:22 132:10 139:2 139:6 139:15 140:3 140:4 146:24 150:3 166:5 171:20 | | **observations**(1) 146:19<br>**obstruct**(1) 109:4<br>**obtain**(1) 88:13<br>**obviously**(12) 14:3 30:3 41:19 50:24 54:3 58:7 92:4 112:22 123:17 164:6 166:23 176:17 | | **opening**(2) 130:6 162:6<br>**opinion**(3) 33:8 42:24 132:17<br>**opponents**(1) 131:24<br>**opportunity**(6) 42:9 79:24 83:17 88:22 119:22 175:19 | | **outcome**(1) 114:22<br>**outset**(1) 127:10<br>**outside**(5) 105:11 106:9 147:10 147:12 148:6 |
| **notes**(25) 26:17 26:19 27:1 28:9 28:20 30:16 30:16 30:21 31:4 31:15 32:4 32:5 32:21 32:23 37:17 37:17 38:13 57:22 68:5 71:17 75:23 75:24 76:5 109:9 166:18 | | **occasion**(1) 76:13<br>**occurred**(21) 81:8 81:13 81:19 83:15 83:17 103:7 103:23 118:17 128:5 148:12 148:13 148:15 148:15 139:10 159:11 159:11 164:2 164:6 164:15 171:14 | | **opposed**(3) 129:20 147:12 147:17<br>**opposing**(8) 16:11 95:10 104:6 105:6 111:11 111:18 133:17 134:2 | | **outstanding**(2) 68:5 79:12<br>**over**(21) 15:1 23:6 24:17 35:12 41:22 56:14 96:3 100:3 102:1 126:5 130:3 146:11 146:21 148:8 165:20 167:21 168:23 168:24 174:5 176:10 176:20 |
| **nothing**(19) 32:5 70:16 72:19 75:20 75:23 76:3 76:5 92:19 101:20 103:14 113:12 125:6 125:13 136:17 147:12 148:3 153:5 163:8 168:21 | | **odds**(1) 131:17<br>**off**(13) 45:13 56:9 98:7 113:17 120:15 122:17 123:24 127:4 128:23 129:2 129:4 130:17 150:7 | | **opposite**(6) 43:22 114:15 131:1 134:13 135:22 155:4 | | |
| | | **offer**(6) 54:14 55:8 67:5 106:7 109:3 | | **opposition**(4) 96:21 101:18 124:18 124:21 | | **overall**(2) 50:17 78:13 |
| **notice**(11) 21:8 26:1 26:2 27:2 30:24 31:1 31:17 32:21 34:16 44:13 83:8 | | **offered**(2) 101:4 124:16<br>**offers**(2) 119:16 119:16 | | **opt**(1) 74:4<br>**optimistic**(1) 85:16 | | **overbroad**(2) 94:7 158:21<br>**overly**(1) 30:21<br>**override**(1) 118:15 |
| **noticed**(2) 34:2 82:9<br>**notion**(2) 123:21 151:3<br>**notional**(1) 35:11<br>**notwithstanding**(1) 150:3 | | **official**(4) 9:4 15:13 35:2 157:9<br>**often**(2) 47:18 172:8<br>**ohio**(1) 64:24 | | **option**(2) 74:4 80:6<br>**options**(2) 80:3 80:5<br>**oral**(5) 111:16 119:9 119:11 119:13 119:1<br>**order**(80) 13:10 17:13 17:18 29:22 37:13 37:18 48:23 49:22 50:1 53:6 55:9 69:23 71:11 77:14 77:22 79:8 81:8 81:14 81:19 82:3 82:7 82:9 82:15 82:16 82:21 84:9 86:5 86:9 86:18 90:23 91:3 96:6 96:7 96:14 96:14 96:15 96:17 96:18 96:19 96:20 97:9 97:11 100:15 100:20 103:11 103:21 107:18 108:6 108:6 108:24 108:24 110:8 118:8 118:9 118:10 118:15 119:22 121:14 123:2 124:24 146:17 149:20 149:22 149:24 151:9 151:10 151:12 151:13 151:14 152:24 154:17 156:13 162:11 168:10 168:17 169:18 170:5 175:13 175:1 175:21 | | **oversight**(1) 72:11<br>**overstaff**(1) 43:19<br>**overstate**(1) 24:3<br>**own**(8) 70:2 78:12 92:7 93:15 103:16 117:10 165:12 166:24 |
| **november**(5) 100:15 103:19 136:2 139:7 150:6 | | | | | | |
| **novod**(21) 3:27 18:16 18:16 18:20 19:4 19:12 19:13 20:2 20:5 20:7 21:15 21:18 22:21 22:23 24:8 24:16 24:20 33:2 33:3 41:3 86:3 | | | | **ordered**(1) 159:15 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| owned(1) 93:7 | | paul(3) 7:9 9:14 10:6 | | plan(169) 11:14 19:17 22:23 22:24 23:5 | | possible(6) 62:18 64:7 68:11 93:12 117:12 |
| owners(1) 93:20 | | pause(3) 34:13 48:21 77:4 144:8 | | 23:13 25:6 38:16 40:10 43:11 45:6 49:20 | | 132:1 |
| pa.(1) 4:4 | | pay(9) 23:6 27:5 27:8 27:9 38:8 39:10 | | 51:15 51:19 56:5 57:15 57:18 57:20 57:20 | | |
| p.m(6) 79:17 79:17 174:19 176:4 176:4 | | 57:9 73:16 138:14 | | 58:3 58:15 59:10 59:11 59:15 61:4 61:23 | | possibly(2) 47:17 51:6 |
| 177:15 | | | | 62:5 63:21 64:1 64:9 64:10 65:7 66:3 | | post(1) 39:19 |
| | | paying(1) 70:13 | | 66:8 67:18 67:21 68:13 68:14 68:16 70:5 | | posture(1) 96:16 |
| p.o.(4) 2:8 4:8 4:25 4:42 | | payment(1) 39:17 | | 70:12 70:16 70:18 70:18 71:15 72:16 74:9 | | potential(4) 95:2 95:3 103:24 131:14 |
| page(12) 38:4 38:23 39:7 53:23 98:18 | | payroll(1) 172:5 | | 74:10 74:22 75:8 75:20 75:24 76:6 76:8 | | potter(1) 3:4 |
| 103:7 105:19 118:22 124:22 131:4 134:3 | | peg(1) 8:42 | | 76:13 76:19 77:1 77:16 78:22 78:23 86:2 | | power(2) 64:20 93:9 |
| 139:1 | | pennock(1) 7:14 | | 91:8 91:15 94:17 94:19 95:1 95:7 95:11 | | powlen(1) 5:39 |
| pages(8) 41:12 70:22 92:4 165:21 165:22 | | pennsylvania(1) 1:43 | | 95:14 95:18 97:20 97:24 98:5 100:1 | | ppearances(4) 2:1 3:1 4:1 5:1 |
| 167:4 167:5 171:3 | | people(24) 22:13 25:12 26:15 32:12 33:23 | | 100:16 101:2 101:5 101:20 102:6 103:1 | | practice(2) 23:4 168:7 |
| | | 35:22 44:16 46:15 51:14 79:7 93:21 | | 103:3 103:9 103:22 103:24 104:5 104:7 | | pre-figure(1) 45:14 |
| paid(8) 23:6 29:2 29:3 29:5 70:9 72:14 | | 110:18 121:10 131:22 134:13 138:19 156: | | 104:9 104:10 104:13 104:14 104:15 105:4 | | pre-lbo(1) 117:7 |
| 76:2 117:7 | | 156:10 156:15 157:1 161:9 162:17 165:24 | | 105:16 106:8 107:6 108:15 110:12 115:6 | | precedential(1) 123:18 |
| palmer(2) 3:41 5:32 | | 169:4 | | 112:14 124:14 125:16 125:17 125:22 | | precise(2) 26:12 29:13 |
| paper(4) 96:2 101:5 121:2 128:6 | | | | 125:23 125:24 126:18 126:24 127:2 127:4 | | preclude(1) 82:16 |
| papers(19) 20:1 20:4 20:6 21:4 25:19 | | people's(2) 36:19 55:4 | | 127:7 127:9 127:11 127:14 127:19 127:20 | | precluded(1) 150:19 |
| 25:21 26:4 37:24 45:21 63:1 83:5 96:21 | | peppered(1) 83:13 | | 127:20 128:13 129:18 130:3 130:7 131:16 | | precursor(1) 163:6 |
| 98:19 101:14 103:8 104:1 109:14 111:13 | | per(2) 31:20 140:23 | | 131:20 131:21 131:23 133:11 133:15 136: | | predict(2) 40:8 40:9 |
| 155:23 | | percent(10) 25:11 62:19 62:21 62:24 63:5 | | 136:3 136:5 136:7 136:21 137:7 137:16 | | predicted(1) 40:16 |
| parade(1) 91:6 | | 63:11 64:2 73:5 73:6 73:8 | | 138:23 139:1 139:3 139:11 139:12 139:15 | | prediction(1) 113:9 |
| paragraph(1) 147:9 | | | | 139:17 139:17 148:18 152:23 157:1 158:2 | | predictions(1) 113:7 |
| parallel(1) 38:16 | | percentage(1) 73:14 | | 158:18 159:11 159:12 159:17 160:1 160:7 | | preference(2) 103:15 163:16 |
| parameters(3) 85:7 147:2 149:8 | | perfectly(1) 52:7 | | 160:16 161:2 161:8 161:13 162:21 163:1 | | prejudice(4) 17:8 17:14 22:3 77:18 |
| parent(22) 34:4 40:9 45:5 45:5 45:13 51:7 | | perhaps(5) 16:1 50:12 82:19 101:6 173:15 | | 163:20 163:23 164:2 164:4 164:5 164:6 | | preliminary(1) 152:6 |
| 51:12 51:20 52:1 52:14 52:21 59:16 61:1 | | period(8) 14:21 30:19 157:2 162:22 163:7 | | 171:7 171:17 171:21 171:23 172:1 172:1 | | prepared(5) 24:13 80:5 87:20 88:6 134:16 |
| 61:14 61:19 67:7 71:3 71:5 71:20 73:13 | | 163:8 163:10 164:15 | | | | preponderanc(1) 95:17 |
| 74:2 74:3 | | | | plan's(1) 127:12 | | prescribed(2) 108:23 109:12 |
| | | permission(1) 87:22 | | planning(1) 90:23 | | presence(2) 140:9 140:21 |
| pari(1) 74:4 | | permit(2) 12:1 49:14 | | plans(4) 95:8 100:12 136:13 136:14 | | present(3) 78:15 78:16 126:2 |
| park(3) 3:15 3:36 4:17 | | permitted(1) 92:16 | | plausible(1) 128:14 | | presentation(5) 90:6 92:9 164:17 164:18 |
| parke(3) 2:12 9:4 35:2 | | pernick(12) 1:33 11:5 11:5 12:4 12:9 | | play(3) 23:16 95:16 99:8 99:10 114:18 | | 164:19 |
| parochial(1) 35:7 | | 12:12 13:7 13:13 13:20 14:7 14:13 14:15 | | 123:9 | | |
| part(28) 14:22 16:4 24:9 39:18 42:13 | | | | | | presented(3) 78:20 82:17 83:4 |
| 74:23 76:7 79:2 79:4 88:11 88:12 94:14 | | person(2) 106:18 106:19 | | plaza(3) 2:17 3:6 5:7 | | presenting(1) 16:7 |
| 95:5 107:21 116:10 117:14 121:12 123:20 | | perspective(7) 58:1 81:9 84:5 162:3 | | plc(1) 29:19 | | presents(2) 58:22 78:22 |
| 131:1 133:4 134:10 155:9 155:18 158:4 | | 162:13 164:24 176:19 | | pleading(3) 22:22 31:14 36:10 | | preserve(1) 22:1 |
| 164:16 164:18 168:12 172:23 | | | | pleadings(2) 20:11 44:8 | | preserves(1) 154:22 |
| | | perspectives(1) 43:11 | | please(6) 11:2 69:14 79:18 86:5 173:22 | | presidential(2) 64:23 65:1 |
| partial(1) 108:22 | | pertinent(2) 38:21 83:19 | | 176:5 | | press(1) 123:12 |
| partially(1) 30:6 | | petition(5) 30:17 39:20 124:9 124:19 | | | | presume(1) 41:10 |
| participants(1) 134:6 | | philip(1) 4:15 | | plenty(3) 62:22 126:17 166:14 | | presuming(1) 36:21 |
| participate(1) 30:10 | | phillip(1) 7:46 | | plus(3) 61:21 67:15 120:14 121:7 126:5 | | pretty(7) 14:5 17:4 58:14 117:11 151:3 |
| particular(13) 19:8 26:20 36:11 39:14 | | phone(7) 22:11 67:15 120:14 121:7 126:5 | | podium(2) 16:12 87:24 | | 161:22 164:24 |
| 42:23 43:2 56:11 82:3 96:4 100:23 112:5 | | 140:11 157:15 | | point(48) 24:3 32:6 35:13 35:24 36:12 | | |
| 115:1 149:13 | | | | 37:11 39:7 40:19 44:2 45:22 46:3 50:10 | | prevented(1) 75:20 |
| particularized(1) 149:17 | | phones(47) 18:21 19:17 19:19 20:8 20:8 | | 51:5 53:12 55:20 61:20 62:1 63:21 66:2 | | preventing(1) 76:3 |
| particularly(1) 145:22 | | 20:12 20:13 20:15 22:1 22:8 22:14 22:17 | | 68:4 76:9 77:14 82:2 90:2 99:3 99:18 | | previous(1) 88:10 |
| parties(110) 11:23 12:2 13:9 14:11 14:23 | | 23:7 25:9 25:11 26:2 26:5 28:11 28:21 | | 101:8 101:9 108:19 110:24 112:24 114:4 | | previously(7) 19:15 49:20 69:7 127:14 |
| 17:24 18:5 19:2 21:11 21:12 24:5 30:5 | | 28:21 29:4 30:3 30:7 31:4 31:7 31:11 | | 146:8 147:5 149:13 150:2 155:17 158:11 | | 164:12 165:4 167:9 |
| 31:5 34:2 34:7 34:14 34:20 37:4 47:23 | | 31:12 31:17 33:6 33:8 33:11 35:8 35:10 | | 160:17 161:15 166:19 166:11 166:21 | | |
| 50:11 50:13 63:10 77:5 77:22 78:5 78:11 | | 37:22 41:8 44:5 44:6 44:8 44:9 | | 168:13 169:12 171:5 174:4 174:18 | | price(9) 25:21 27:5 27:8 27:10 27:11 |
| 79:10 80:9 80:19 91:14 95:20 96:2 97:17 | | 43:5 43:14 48:6 57:15 61:8 69:8 85:24 | | | | 28:16 28:23 29:15 30:18 |
| 100:24 101:1 101:21 102:23 104:5 104:7 | | | | pointed(3) 25:19 26:3 140:18 | | |
| 104:9 104:24 105:21 107:17 110:4 110:5 | | phrase(1) 91:18 | | points(4) 28:7 73:2 80:12 148:11 | | prima(3) 47:10 47:12 89:22 |
| 110:8 111:10 111:18 112:7 112:16 114:6 | | pick(4) 48:2 50:15 62:12 120:24 | | policies(2) 111:12 157:23 | | primarily(1) 161:2 |
| 116:24 118:14 118:20 119:12 119:15 | | picked(1) 162:9 | | policy(7) 111:7 122:9 123:17 151:2 151:2 | | primary(1) 39:1 |
| 122:11 122:11 122:20 126:18 128:3 129:3 | | pickering(1) 6:43 | | 151:6 158:5 | | prime(1) 26:1 |
| 129:17 130:24 130:24 131:2 131:5 131:18 | | picking(2) 13:13 45:16 | | | | primof(1) 3:13 |
| 132:21 132:23 133:5 133:17 134:1 134:4 | | picture(3) 109:4 118:3 118:6 | | polk(5) 2:28 44:12 44:15 173:15 176:15 | | principal(9) 38:13 57:22 58:2 61:1 95:20 |
| 134:7 134:8 135:12 135:16 135:20 136:10 | | pie(3) 56:17 102:2 102:2 | | pool(1) 40:9 | | 99:22 102:3 141:7 141:8 |
| 137:5 137:5 138:5 140:6 141:15 141:18 | | piece(1) 115:8 | | portions(1) 52:20 | | |
| 143:10 144:12 148:14 149:2 149:6 149:8 | | piecemeal(1) 81:10 | | pose(1) 44:2 | | principals(7) 98:13 105:8 107:6 107:7 |
| 149:16 150:1 152:7 153:7 154:9 155:24 | | pin(1) 78:6 | | poses(1) 101:18 | | 128:15 128:18 143:16 |
| 157:13 160:13 160:20 161:8 161:17 162:4 | | piper(1) 9:30 | | posited(2) 115:5 168:18 | | |
| 162:14 162:21 170:3 170:15 171:6 173:18 | | place(6) 93:21 121:11 133:2 155:21 | | position(43) 17:6 20:18 20:21 21:19 21:20 | | principle(4) 62:17 101:10 137:24 141:13 |
| | | 161:16 170:13 | | 22:4 22:20 25:5 30:15 33:16 34:6 34:9 | | principles(1) 108:14 |
| partner(4) 19:7 41:3 53:18 56:8 | | | | 47:11 56:3 57:16 59:1 79:9 85:21 89:17 | | prior(6) 32:7 56:5 59:5 129:21 163:19 |
| partners(2) 7:41 8:48 | | placed(1) 67:6 | | 90:4 90:7 90:10 97:24 100:10 122:24 | | 176:12 |
| parts(1) 94:15 | | places(1) 152:11 | | 130:19 132:8 132:11 133:22 135:8 135:21 | | |
| party(16) 92:16 98:14 102:16 108:12 | | plain(3) 29:13 144:23 144:24 | | 136:18 140:5 140:14 140:21 150:8 158:16 | | priorities(1) 32:11 |
| 109:2 109:10 109:20 111:16 119:10 120:1 | | plaintiff(1) 133:18 | | 161:18 163:9 164:9 169:11 169:15 174:18 | | priority(2) 60:13 60:16 |
| 120:12 140:10 142:19 151:24 155:3 169:1 | | plaintiff's(2) 101:11 101:12 | | | | private(1) 123:1 |
| | | plaintiffs(3) 98:22 137:18 154:6 | | positions(3) 23:21 130:18 162:19 | | privately(2) 122:11 169:20 |
| passage(1) 134:2 | | | | positive(2) 51:19 163:12 | | |
| passes(1) 112:9 | | | | possession(1) 31:8 | | |
| passu(1) 74:4 | | | | possibility(3) 90:12 154:20 155:3 | | |
| past(2) 93:18 145:17 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **privilege**(43) 46:7 49:2 88:10 88:17 90:3 96:13 98:14 98:16 98:17 100:21 102:8 104:8 107:3 128:3 132:19 132:22 133:1 133:7 134:5 134:6 134:10 134:18 138:7 141:17 141:21 142:4 142:8 142:21 143:4 143:11 144:23 145:3 145:10 146:20 147:2 148:4 151:7 154:14 154:14 154:23 171:9 172:14 173:6 | | **proposal**(19) 69:17 105:11 105:13 107:1 107:22 107:8 111:14 118:7 118:17 119:5 120:4 140:20 146:8 152:4 152:20 157:3 158:3 170:4 172:4 | | **quarrel**(1) 35:19 **question**(37) 21:10 21:18 22:12 22:16 30:22 48:8 55:7 59:21 73:23 74:7 91:23 100:21 102:11 109:5 111:7 114:6 117:4 117:8 123:11 129:11 130:2 138:8 147:20 149:3 150:12 150:14 153:7 153:19 155:4 156:11 156:20 157:6 160:11 160:20 162:2 165:9 169:7 | | **reasoning**(1) 101:8 **reasons**(7) 22:8 22:9 25:4 30:7 108:9 137:2 164:1 **rebut**(1) 109:19 **receipt**(1) 26:18 **receive**(5) 28:23 68:15 73:14 91:15 144:5 **received**(2) 42:8 88:9 **receiving**(2) 67:15 96:1 |
| **privileged**(9) 128:10 132:21 141:15 142:1 142:4 142:17 142:18 143:3 148:3 | | **proposals**(1) 127:4 **proposed**(19) 61:19 72:9 91:23 94:12 94:14 94:15 96:6 96:18 96:19 97:9 99:8 100:14 131:7 131:12 133:20 137:7 146:24 151:15 154:12 | | **questions**(13) 18:9 21:6 36:6 54:12 65:9 72:18 79:14 83:19 87:19 122:10 146:10 167:14 173:9 | | **recent**(2) 132:15 140:3 **recently**(3) 78:17 114:5 163:3 **recess**(6) 12:1 79:16 79:17 174:6 176:3 176:4 |
| **privileges**(1) 141:10 **pro**(3) 8:28 29:22 35:16 **proactive**(1) 49:13 | | **proposes**(1) 50:1 **proposing**(2) 127:9 155:18 **proposition**(6) 73:7 114:24 123:3 135:5 139:6 143:15 | | **quick**(1) 86:9 **quickly**(6) 37:23 67:3 113:14 158:15 159:6 173:12 | | **recipient**(1) 140:17 **reckmeyer**(1) 9:13 **recognizable**(1) 136:23 **recognized**(2) 104:8 150:24 |
| **probably**(17) 14:24 22:20 30:4 33:5 33:21 33:23 34:18 34:19 40:19 49:8 52:6 63:21 85:17 91:19 130:4 132:2 137:2 | | **propriety**(1) 96:3 **prosecute**(1) 93:9 **prosecuting**(3) 105:4 107:5 113:16 **prospective**(2) 43:14 154:8 | | **quite**(12) 15:22 35:7 51:24 63:17 64:6 110:13 130:17 154:6 160:6 161:21 170:23 170:24 **quote**(4) 56:7 126:24 155:13 161:12 **quoted**(1) 100:5 | | **recognizes**(1) 104:11 **recommend**(1) 74:19 **reconsider**(3) 64:1 81:14 82:15 **reconsideration**(1) 140:3 |
| **problem**(6) 55:19 56:7 106:22 107:8 109:2 147:3 | | **protect**(3) 43:3 139:21 172:14 **protectable**(2) 130:23 134:1 **protected**(10) 79:5 96:15 99:9 104:23 105:6 106:1 106:22 107:6 119:9 146:4 | | **qureshi**(4) 4:16 87:23 88:2 88:3 **r.w**(1) 2:44 **rachel**(1) 8:35 **radical**(1) 130:16 | | **record**(17) 19:13 21:23 33:2 40:14 83:5 87:7 88:3 90:18 121:1 122:4 122:4 155:9 156:6 163:12 163:14 175:14 176:16 |
| **problems**(1) 157:20 **procedural**(4) 34:9 35:14 83:3 96:15 **procedurally**(4) 34:1 34:14 81:12 96:5 **procedure**(2) 49:22 69:20 | | **protecting**(4) 38:11 43:5 150:2 151:6 **protection**(13) 97:14 97:21 104:4 104:5 105:9 105:12 105:18 106:13 138:2 140:23 141:2 143:17 150:9 | | **raise**(4) 21:11 62:4 81:12 146:19 **raised**(9) 14:22 21:12 80:8 88:21 89:18 91:10 94:8 114:3 117:19 | | **recorded**(1) 1:47 **recording**(2) 1:47 177:19 **recover**(1) 58:5 **recoveries**(6) 58:7 58:12 68:2 117:12 169:2 171:19 |
| **procedures**(3) 29:5 31:3 56:10 **proceed**(6) 13:10 14:11 14:16 19:11 80:7 88:6 | | **protections**(2) 140:11 145:11 **protective**(1) 156:13 | | **raises**(1) 21:5 **raising**(1) 122:21 **range**(2) 71:5 116:10 | | **recovery**(16) 30:8 30:8 35:11 48:16 48:18 62:12 63:22 67:20 68:11 68:15 73:14 73:15 73:16 73:24 74:5 74:6 |
| **proceedings**(6) 1:16 1:47 13:2 92:15 175:1 177:20 | | **protects**(2) 107:16 172:15 **prove**(3) 109:12 109:21 117:15 **proven**(3) 40:2 40:16 41:1 | | **ranges**(1) 117:12 **ranging**(1) 150:8 **rath**(2) 2:4 2:5 | | **red**(3) 63:17 73:9 75:5 **redacted**(1) 53:21 **redactions**(1) 53:22 |
| **process**(21) 24:2 28:21 30:18 61:16 79:4 88:12 93:18 113:22 120:11 121:12 123:20 123:24 137:14 143:9 143:10 152:16 154:1 155:21 159:3 161:14 161:20 | | **provide**(8) 19:22 46:19 51:2 57:8 62:5 76:8 80:11 118:18 | | **rather**(5) 34:11 40:11 67:7 84:17 93:3 **rational**(5) 60:8 61:5 124:16 124:17 156:2 **rde**(1) 123:2 | | **redemption**(1) 31:24 **reduce**(1) 26:9 **reduced**(6) 22:15 23:3 27:2 31:17 138:6 138:11 |
| **processes**(1) 127:2 **produce**(8) 48:16 49:4 49:13 96:14 125:5 161:24 163:22 170:17 | | **provided**(5) 53:21 65:21 76:10 76:14 82:16 **provides**(7) 31:2 31:6 32:14 38:5 70:13 76:6 84:9 | | **re-litigate**(1) 55:20 **re-solicitation**(1) 64:12 **re-trot**(1) 146:20 **re-voting**(1) 63:6 | | **reduces**(3) 26:4 26:10 26:18 **reed**(1) 2:43 **refer**(2) 96:18 109:9 **reference**(2) 59:4 150:20 |
| **produced**(6) 1:48 59:6 156:4 159:2 165:21 165:23 | | **providing**(4) 43:8 76:19 132:20 176:18 **provision**(4) 31:10 39:2 70:12 82:3 **provisions**(5) 30:23 31:16 37:20 38:2 39:5 | | **reach**(5) 109:5 132:19 138:5 157:16 168:2 **reached**(6) 19:2 99:22 112:4 118:5 119:16 129:21 135:20 137:22 137:24 174:23 | | **referring**(1) 26:17 **refers**(1) 39:2 **refined**(1) 118:17 **reflect**(4) 18:5 126:23 141:4 152:21 **reflected**(1) 158:2 |
| **producible**(1) 122:18 **producing**(1) 100:8 **product**(9) 46:11 91:16 92:1 94:2 113:23 115:12 117:16 123:5 159:14 | | **prudential**(1) 145:17 **public**(5) 135:12 151:1 155:9 157:23 158:5 **published**(1) 132:17 **pun**(1) 118:8 **purchase**(7) 27:8 27:9 27:10 28:11 29:9 29:10 32:8 | | **reaching**(2) 79:3 129:17 **react**(1) 159:24 **reaction**(2) 112:23 151:5 **read**(17) 16:17 20:1 20:4 20:6 22:22 39:6 40:19 40:19 44:8 98:16 100:5 159:22 159:23 160:19 164:21 175:14 175:15 | | **reflecting**(2) 119:14 135:11 **reflects**(1) 96:7 **refrain**(2) 100:17 156:2 **regard**(11) 86:16 89:18 97:18 102:20 139:5 159:21 160:18 161:7 162:7 163:19 173:17 |
| **production**(2) 167:13 174:1 **productive**(1) 88:14 **professed**(1) 93:2 **professional**(4) 38:9 46:5 47:5 114:7 **professionals**(11) 41:5 44:9 44:13 47:7 114:21 119:18 128:11 128:12 134:21 144:11 144:15 | | **pure**(1) 73:18 **purely**(1) 66:7 **purpose**(8) 21:9 69:20 109:12 109:15 141:14 144:17 148:17 160:22 | | **readily**(1) 143:9 **reading**(2) 82:21 126:11 **ready**(2) 41:13 156:16 **real**(4) 83:17 111:7 152:15 169:22 **reality**(2) 165:14 172:7 **realize**(1) 70:23 **reallocate**(1) 64:21 | | **regarding**(9) 87:21 88:15 98:6 133:19 144:1 144:5 147:19 **register**(2) 26:5 26:19 **regretfully**(1) 80:6 **reimbursement**(4) 57:5 58:3 58:17 75:13 **rein**(1) 2:42 |
| **prognostication**(2) 40:17 40:18 **prognostications**(1) 52:4 **progress**(3) 19:7 167:23 174:16 **project**(1) 46:10 **projected**(1) 67:20 **projections**(1) 58:5 **proof**(7) 21:1 21:24 60:22 61:1 61:5 85:24 125:12 | | **purposes**(21) 19:17 19:21 45:5 46:22 47:16 47:19 49:20 52:24 53:3 53:9 54:16 57:13 65:18 66:6 69:11 74:21 77:21 86:1 86:20 139:20 158:18 | | **really**(32) 13:17 14:6 22:6 22:10 22:12 23:3 23:22 34:9 35:4 35:15 36:5 40:11 45:13 46:2 47:9 48:5 49:9 50:5 55:13 56:3 59:17 61:17 64:15 64:16 65:22 74:7 76:3 161:4 161:16 166:21 176:22 177:3 | | **reinstate**(1) 32:11 **rejected**(1) 133:24 **relate**(2) 11:11 159:3 **related**(7) 15:17 124:23 125:2 136:7 165:22 168:17 174:1 |
| **proofs**(1) 109:17 **proper**(3) 26:12 60:8 116:8 **properly**(5) 40:23 59:20 59:23 71:18 72:14 **property**(3) 28:16 28:19 28:22 **proponent**(2) 43:11 74:9 **proponent's**(1) 97:24 **proponents**(20) 11:14 57:15 58:4 64:17 67:23 91:8 96:10 97:20 100:16 101:6 103:24 104:13 106:8 108:15 122:14 129:2 130:7 131:21 133:11 134:17 | | **pursuant**(2) 32:1 37:20 **pursue**(1) 93:14 **pursued**(2) 42:18 169:12 **pursuing**(1) 102:19 **push**(1) 90:8 **pushback**(1) 139:9 **put**(37) 22:24 23:1 23:13 38:16 56:9 57:23 59:1 60:3 61:10 61:19 66:19 79:8 83:15 90:4 92:17 103:22 104:3 108:17 109:2 109:18 110:14 111:22 117:24 121:1 122:3 122:7 123:24 126:16 127:7 150:23 152:15 155:21 156:12 159:7 161:6 174:5 176:10 | | **reason**(16) 24:9 90:7 101:7 109:5 109:9 116:3 116:7 121:23 137:13 149:6 150:6 150:22 156:7 156:14 157:20 162:1 **reasonable**(18) 38:9 38:18 42:23 43:13 44:18 45:4 45:10 45:11 47:11 47:12 48:10 48:12 49:17 54:6 57:9 151:18 156:22 158:9 **reasonableness**(25) 23:12 23:17 43:1 43:5 44:3 44:4 44:5 44:6 44:7 46:2 46:20 46:21 48:24 49:5 49:11 53:8 54:23 55:2 58:23 59:3 69:10 69:18 70:1 115:23 116:10 | | **relates**(3) 97:19 108:4 160:2 **relating**(5) 94:12 94:13 94:18 94:24 95:5 **relationship**(1) 130:24 **relationships**(1) 97:17 **relatively**(1) 51:12 **relay**(2) 142:3 142:3 **release**(1) 118:4 |
| | | **puts**(2) 108:12 134:23 **putting**(1) 89:2 176:20 **quantification**(4) 59:5 61:20 62:2 67:9 **quantified**(1) 49:24 **quantum**(5) 35:10 40:3 48:22 58:23 69:12 | | **reasoned**(1) 130:21 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **released**(1) 171:14 | | **resolved**(24) 11:13  11:15  11:17  11:20 | | **rogers**(1) 8:38 | | **saying**(18) 17:18  27:21  34:13  39:12  43:22 | |

released(1) 171:14
releases(2) 103:11  171:12
relevancy(1) 40:21
relevant(26) 45:2  45:14  51:24  59:12  60:11
63:22  64:14  89:19  109:16  113:22  117:20
124:22  126:17  127:13  128:10  156:21
159:21  160:22  162:22  163:10  163:21  164:
164:13  166:18  166:19  168:8

relic(2) 70:15  70:23
relief(3) 53:2  81:2  82:18
relinquish(1) 118:10
reluctance(1) 170:19
reluctant(2) 110:14  155:24
rely(4) 105:20  106:8  107:9  137:6
relying(2) 160:23  161:3
remain(2) 52:3  131:6
remainder(1) 75:12
remained(2) 171:20  171:21
remaining(1) 175:9
remains(3) 39:13  123:8  131:5
rembrandt(5) 143:20  143:22  145:7  173:4
173:8

remember(6) 24:9  92:14  105:14  113:21
139:12  155:16

remembering(1) 51:8
rendered(1) 47:5
reorganization(2) 65:7  131:16
reorganized(4) 70:9  70:13  72:15  76:2
repeat(1) 69:6
repeating(1) 165:20
replaces(1) 31:3
reply(2) 88:20  89:5
report(17) 56:6  79:23  87:11  87:12  118:4
153:16  159:18  159:20  161:6  161:12  161:2
161:22  164:7  167:2  167:3  174:7  176:11

reported(2) 63:7  63:8
reporter(2) 63:9  134:3
represent(3) 129:16  169:10  169:13
representation(1) 114:7
representative(1) 131:14
represented(7) 24:12  34:15  138:3  139:14
143:22  161:14  163:5

representing(3) 164:10  173:24  176:15
represents(3) 68:5  68:6  126:6
request(11) 37:18  42:1  81:1  94:6  94:9
94:10  94:16  94:24  95:4  129:9  149:17

requested(6) 46:16  53:2  54:16  74:21  104:
176:24

requesting(1) 105:17
requests(6) 41:10  78:8  94:19  108:6  108:8
124:13

require(4) 48:22  63:6  134:5  144:3
required(4) 11:24  23:6  49:2  76:8
requirement(1) 170:20
requirements(2) 142:20  161:1
requiring(1) 77:16
resemble(1) 83:11
reserve(5) 52:23  54:4  66:2  75:8  75:12
reserves(2) 23:5  39:16
resolution(15) 19:3  25:14  30:3  50:10  54:7
77:8  77:12  78:5  85:16  85:17  86:8  87:17
126:13  127:8  176:11

resolutions(1) 87:13
resolve(9) 12:17  14:24  15:1  90:4  90:13
110:5  115:6  157:19  174:18

resolved(24) 11:13  11:15  11:17  11:20
11:21  13:2  13:22  14:2  14:6  14:21  33:12
50:20  50:21  50:22  50:22  78:2  81:16  86:1
86:13  86:17  87:16  104:21  123:18  167:24

resolves(1) 55:9
resolving(1) 112:3
respect(47) 14:20  15:16  19:1  21:20  24:8
32:6  59:5  64:12  69:5  69:16  70:10  70:16
75:19  77:10  77:13  77:19  78:7  79:3  80:8
80:16  81:5  86:4  86:7  90:10  100:8  101:1
101:13  102:8  112:2  112:7  116:19  130:14
134:16  135:4  135:6  147:1  148:20  150:4
150:9  151:14  153:12  153:18  154:17  154:1
157:1  173:24  176:9

respected(1) 74:11
respecting(2) 125:2  130:1
respective(1) 50:11
respects(6) 78:16  83:11  101:22  101:22
134:9  147:3

respond(5) 54:11  54:13  75:4  88:23  98:21
responded(1) 124:13
response(11) 16:2  25:2  58:9  63:1  79:15
82:6  89:6  108:19  125:9  125:14  175:20

responses(2) 20:17  92:16
responsive(3) 129:7  136:11  136:11
rest(5) 13:2  103:4  103:6  120:13  171:11
restriction(1) 142:6
result(10) 77:24  117:6  126:13  137:23
144:16  144:16  153:19  159:18  164:6  168:7

resulted(1) 50:13
results(1) 147:23
resurfaced(1) 56:11
retreated(1) 140:14
retrospect(1) 49:7
return(4) 77:6  79:21  175:7  176:2
revealing(1) 110:21
reverse(1) 168:10
review(13) 15:20  42:9  69:18  77:24  77:24
100:13  107:3  107:11  128:7  143:3  143:7
166:24  174:10

reviewing(1) 82:9
revised(3) 70:16  96:20  140:20
revisited(1) 81:9
revolved(1) 40:17
rewrite(1) 117:14
richard(1) 7:31
richards(1) 2:35
ridiculous(1) 147:23
rifkind(2) 7:9  10:6
right(63) 12:8  13:4  14:17  17:22  18:11
18:13  18:22  21:15  22:21  22:23  24:19
27:18  32:16  34:18  35:6  35:14  36:9  37:14
39:17  41:20  45:9  46:7  48:3  50:5  50:5
52:24  54:4  55:18  56:22  61:9  66:24  67:10
68:21  72:9  77:3  84:22  85:11  89:12  93:14
106:11  108:2  111:3  112:20  113:8  113:11
125:15  125:18  126:20  126:21  129:13
142:12  142:15  154:18  160:17  165:18
167:10  167:20  168:22  169:3  170:23  170:2
172:21  175:2

rights(9) 21:7  21:8  22:1  31:22  33:10
37:21  43:5  55:4  86:22

rigid(1) 121:14
ripe(3) 25:3  45:19  72:8
rise(8) 11:2  19:8  19:14  75:4  79:18  105:16
138:1  176:5

rising(1) 87:12
road(2) 154:20  171:15
robert(6) 2:36  3:26  3:49  19:7  29:20  36:16
rockefeller(1) 2:17
rodney(1) 2:37

rogers(1) 8:38
roitman(1) 9:8
role(7) 93:2  93:2  113:10  114:16  114:20
116:17  116:18

rolled(1) 156:19
room(11) 12:22  48:15  77:8  77:12  92:9
98:10  122:16  149:5  152:13  157:15  162:13

rosenberg(7) 3:49  29:20  29:21  30:1  33:5
33:15  48:2

rosenberg's(3) 33:8  35:22  48:14
rosenman(1) 9:17
rosner(1) 10:18
ross(1) 6:17
roth(2) 5:20  24:24
rothschild(1) 4:37
royal(1) 8:45
rudnick(9) 3:25  6:35  18:17  19:13  33:3
44:9  44:19  47:1

rudnick's(1) 41:5
rule(19) 19:20  79:5  85:18  105:24  109:13
122:12  122:24  136:24  141:4  141:4  141:12
141:13  142:16  143:12  144:12  145:4  146:2
151:12  177:1

ruled(1) 102:7
rules(3) 137:12  137:22  170:8
ruling(4) 11:24  79:7  85:22  110:18
rulings(2) 36:12  93:5
run(1) 118:3
rung(1) 115:23
runs(1) 151:6
rushing(1) 113:18
sachs(1) 8:45
said(54) 21:4  22:5  26:22  38:15  45:15
45:18  45:22  47:10  47:21  48:7  48:11  48:12
49:6  50:8  61:17  65:15  70:4  75:23  90:3
100:6  100:11  104:23  109:7  109:14  113:12
113:18  114:16  114:20  118:10  121:2  125:11
125:14  126:2  126:4  146:22  151:11  156:9
158:5  160:13  162:1  162:9  163:20  164:17
165:2  165:11  166:3  166:5  166:17  168:6
170:23  170:24  172:3  175:5  175:11

sake(1) 50:14
sale(12) 27:3  27:6  27:18  27:19  28:1  28:11
28:12  28:15  28:24  29:9  29:10  32:8

sally(1) 8:9
same(36) 21:13  25:4  36:23  46:14  55:1
59:1  59:15  59:24  60:3  60:9  60:11  60:13
60:16  60:18  60:22  61:1  63:11  74:1  74:5
74:7  80:6  94:16  94:23  114:5  114:6  120:17
122:23  126:8  128:5  129:22  137:22  142:3
143:1  154:22  171:20  171:21

sanjana(1) 3:50
sat(1) 106:14
satisfaction(1) 138:14
satisfied(2) 122:3  126:11
satisfy(1) 170:20
satisfying(1) 116:3
saw(4) 83:9  96:21  126:13  160:9
say(77) 20:9  20:15  23:3  23:14  23:22  24:1
28:17  30:14  32:13  35:6  36:5  36:23  42:24
45:21  47:4  48:14  50:23  56:13  58:24  61:2
66:12  66:16  71:7  78:23  79:13  89:5  95:18
98:1  103:4  103:21  106:3  106:11  110:4
110:4  110:7  110:17  110:23  110:23  113:14
115:11  115:15  115:21  116:22  118:1  118:1
121:20  122:24  123:1  123:3  123:24  125:21
127:12  128:19  128:20  130:5  130:6  131:4
133:21  138:9  139:15  140:14  146:3  147:7
148:19  150:18  152:12  152:13  153:4  155:4
157:20  160:6  160:23  163:11  167:12  172:22
173:16  173:20

saying(18) 17:18  27:21  34:13  39:12  43:22
48:5  48:20  49:16  49:18  63:18  69:14
102:14  120:4  151:8  153:11  154:21  162:14
164:3

says(28) 17:13  20:13  20:22  22:19  28:9
28:15  29:12  31:16  34:8  46:16  49:20  49:23
59:15  60:2  62:9  63:4  66:7  68:9  78:22
111:1  117:14  133:16  135:22  138:13  152:22
153:3  155:7  171:8

scent(2) 111:4  111:5
schaible(1) 2:30
scheduled(2) 53:22  84:7
scheduling-wise(1) 89:3
scheme(1) 60:8
schiebel(3) 176:14  176:14  177:6
scholer(1) 3:12
schott(1) 8:48
schotz(2) 1:31  11:6
schulte(2) 5:20  24:24
schuylkill(1) 1:42
scope(2) 81:17  105:12
score(1) 36:24
scotland(1) 8:38
scott(3) 4:47  8:45  10:22
scrutinized(1) 116:23
scrutiny(4) 108:8  108:10  109:6  122:1
sealed(1) 137:21
search(1) 124:17
seated(3) 11:2  79:18  176:5
seats(1) 162:18
second(17) 40:1  41:1  60:13  61:5  89:13
89:21  90:21  104:17  107:17  108:3  108:20
109:5  120:3  120:20  144:8  145:1  170:22

secondly(1) 17:6
section(7) 29:13  31:10  32:24  58:10  60:1
60:2  146:17

securities(6) 27:13  28:9  28:11  32:12  39:2
39:3

security(11) 28:11  28:12  28:24  29:9  29:10
32:8  32:11  32:13  32:14  32:16  38:7

see(22) 30:8  38:20  56:2  67:19  78:23  95:14
97:15  99:16  99:16  101:4  102:7  105:10
105:13  112:12  130:9  131:12  154:9  158:4
167:7  167:10  168:15  175:18

seek(2) 82:18  93:11
seeking(12) 19:18  78:9  96:10  100:22  103:2
104:14  108:21  109:10  122:19  131:3
149:16  153:4

seeks(1) 169:16
seem(5) 50:17  78:20  112:5  132:1  157:1
seemed(2) 90:3  156:24
seems(5) 35:7  147:22  151:5  152:15  154:11
seen(7) 20:11  44:11  52:3  123:8  128:19
143:12  158:3

seide(1) 2:15
seife(3) 9:6  46:13  126:8
seiler(1) 173:23
seize(1) 79:24
selber(1) 3:5
selection(3) 136:16  139:8  139:8
self(1) 93:2
selfish(1) 30:6
sell(2) 27:5  116:2
seller(1) 8:12
send(2) 53:18  152:23
sender(1) 140:17
sending(2) 15:20  100:14
sends(1) 170:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **senior**(16) 23:6 39:4 51:9 57:16 57:18 58:4 67:21 68:2 71:4 71:15 71:17 72:1 72:1 75:22 75:23 76:5 | | **short**(5) 23:14 23:15 42:14 174:6 174:9 | | **some**(69) 11:23 13:3 18:1 18:5 21:5 22:18 25:20 26:14 27:4 31:21 34:9 36:11 44:1 45:14 45:15 46:12 48:22 51:16 52:21 52:24 60:21 61:7 64:22 64:24 67:14 69:13 70:21 73:14 77:12 77:23 78:8 78:13 79:11 87:12 87:14 90:14 92:12 92:14 92:20 97:17 107:11 108:22 109:3 110:2 110:6 114:8 119:3 120:21 121:21 122:9 125:11 130:2 130:16 137:10 137:15 139:2 140:2 143:5 149:10 150:6 156:1 156:9 156:10 157:24 162:14 162:18 164:23 174:8 174:16 | | **stand**(7) 79:16 118:1 143:15 155:14 162:17 176:3 177:14 |
| | | **should**(5) 13:1 14:8 20:9 20:13 20:15 20:21 21:23 22:11 25:21 27:14 28:8 29:14 29:15 30:5 33:7 33:10 48:21 49:1 50:5 50:9 52:4 53:24 55:5 57:17 65:23 66:2 68:13 70:20 72:14 78:23 79:9 93:16 93:23 100:12 105:12 108:7 110:11 111:3 111:24 122:3 124:8 125:11 149:9 149:10 159:5 161:20 162:10 164:3 164:4 164:5 165:8 166:15 167:14 171:9 175:13 | | | | **standard**(7) 16:19 17:12 47:18 112:9 116:3 147:23 160:10 |
| **sense**(15) 12:1 12:4 35:15 50:16 81:10 90:5 91:10 100:21 107:11 120:4 120:10 148:6 157:3 159:24 165:3 | | | | | | **standards**(3) 160:1 160:19 166:24 |
| | | | | | | **standing**(14) 11:8 11:9 14:16 15:15 17:19 17:21 80:18 81:5 81:7 81:8 81:15 82:12 83:19 83:21 |
| **sent**(1) 163:4 | | | | | | |
| **sentar**(3) 15:20 16:4 16:17 | | **shouldn't**(7) 23:14 54:1 101:7 122:5 147:22 170:13 170:18 | | | | **standpoint**(3) 21:4 23:23 114:22 |
| **senter**(1) 8:8 | | | | | | **stands**(1) 153:2 |
| **sentinel**(1) 63:8 | | **shove**(1) 61:6 | | **somebody**(3) 40:22 152:22 176:6 | | **stanley**(2) 5:38 10:11 |
| **separate**(12) 17:16 37:16 37:20 38:12 58:17 76:4 95:12 133:5 149:21 151:17 152:14 156:8 | | **show**(6) 99:1 109:1 117:16 126:16 149:12 161:10 | | **somebody's**(1) 112:18 **someday**(1) 147:21 **somehow**(1) 150:20 152:14 | | **stargatt**(1) 4:21 **stark**(45) 3:26 19:7 36:14 36:16 36:16 37:1 37:14 38:4 38:17 38:19 38:23 39:23 41:16 41:17 42:4 42:12 42:15 44:1 45:9 46:3 46:16 47:2 49:1 52:3 53:17 54:9 54:10 54:15 54:20 55:1 55:10 55:13 55:17 55:22 56:1 56:16 56:21 57:7 79:22 80:22 81:20 82:5 83:1 84:23 85:9 |
| **separately**(2) 24:11 143:22 | | | | | | |
| **september**(6) 103:19 118:11 118:16 128:1 128:5 159:15 | | **showing**(3) 95:10 153:13 154:13 | | **someone**(4) 78:22 114:13 142:11 153:2 **someone's**(1) 116:1 | | |
| | | **shown**(1) 107:8 | | | | |
| | | **shuttle**(2) 152:10 170:4 | | **something**(26) 12:3 17:16 19:15 31:24 45:21 47:22 47:23 47:23 53:3 69:12 90:7 108:12 109:3 110:24 110:24 111:1 112:17 117:1 121:18 122:7 148:3 150:10 157:11 164:17 173:16 176:7 | | **stark's**(1) 51:1 |
| **sequential**(1) 158:1 | | **side**(26) 24:18 25:24 35:18 35:24 48:4 92:8 92:15 98:10 99:21 101:11 101:12 101:16 101:17 102:23 105:6 106:2 111:8 111:22 112:17 114:15 122:21 124:18 134:23 138:20 143:5 170:10 | | | | **start**(11) 11:17 12:5 14:8 84:11 89:16 98:13 103:19 113:16 127:22 130:3 147:7 |
| **series**(1) 60:10 | | | | | | |
| **serious**(1) 74:14 | | | | | | |
| **serve**(1) 57:8 | | | | **sometime**(2) 83:6 84:16 | | **started**(3) 130:19 162:7 170:22 |
| **served**(1) 83:7 | | | | **sometimes**(4) 23:24 47:21 143:6 161:13 | | **starting**(2) 84:16 164:11 |
| **service**(2) 1:41 1:48 | | **sides**(6) 21:21 27:4 95:8 95:11 123:9 | | **somewhat**(3) 43:17 47:17 58:21 | | **starts**(2) 110:18 156:1 |
| **services**(2) 1:41 47:5 | | **sideshow**(1) 64:13 | | **somewhere**(2) 120:14 141:21 | | **state**(6) 20:19 63:13 106:3 114:22 145:3 145:18 |
| **session**(3) 105:3 152:17 153:17 | | **sidley**(5) 1:22 6:10 126:24 127:3 127:3 | | **sontchi**(4) 132:18 133:24 137:19 173:3 | | |
| **sessions**(2) 152:6 153:16 | | **siegel**(1) 3:28 | | **sontchi's**(2) 101:19 132:16 | | **stated**(12) 20:19 30:15 57:10 57:20 58:9 67:8 69:17 71:22 76:23 121:13 135:5 145:1 |
| **set**(20) 17:16 18:14 19:23 31:3 56:8 75:8 75:12 80:8 82:8 84:16 95:21 98:18 103:1 103:14 118:22 121:16 147:22 162:3 171:3 171:24 | | **sieger**(1) 9:17 | | **soon**(1) 26:4 | | |
| | | **signed**(3) 151:9 151:9 175:21 | | **sophisticated**(1) 161:14 | | **statement**(23) 23:1 58:15 66:17 66:20 67:18 68:16 70:17 70:22 71:16 72:12 76:6 82:6 92:15 94:18 95:6 112:16 130:6 131:9 136:13 139:18 144:24 153:13 162:16 |
| | | **significance**(1) 113:4 | | **sorry**(10) 12:9 18:14 31:8 49:21 49:21 59:22 62:16 72:16 85:12 123:13 | | |
| | | **significant**(3) 30:8 63:12 161:5 | | | | |
| | | **significantly**(1) 161:22 | | **sort**(19) 12:6 23:2 35:23 39:23 40:7 40:20 42:17 42:17 42:19 55:11 56:7 64:22 98:4 103:20 123:14 123:22 168:13 170:14 174:5 | | |
| **setting**(4) 35:16 35:20 84:10 106:4 | | **signing**(2) 131:18 149:5 | | | | |
| **settle**(3) 52:7 122:16 127:7 | | **silly**(1) 165:14 | | | | **statements**(3) 136:11 136:12 151:2 |
| **settled**(5) 52:7 63:15 101:2 131:3 131:22 | | **silverstein**(2) 3:5 9:14 | | | | **states**(5) 1:1 1:18 70:6 134:3 144:22 |
| **settlement**(111) 23:17 76:12 78:22 91:16 91:22 92:11 93:17 93:19 93:2 94:1 94:12 94:14 94:15 95:12 95:21 95:1 95:15 99:19 99:22 100:2 100:4 100:9 101:15 101:20 102:22 103:1 103:9 103:15 108:16 109:11 109:16 109:20 110:9 110:17 111:2 112:4 112:8 112:9 113:4 113:18 113:23 114:2 115:7 115:9 116:1 116:9 116:9 117:8 117:15 118:5 120:15 120:19 122:18 122:20 123:5 123:22 123:22 124:15 124:23 125:2 125:10 126:19 129:21 130:3 131:3 131:7 131:13 131:15 131:18 133:15 133:19 133:19 135:15 135:19 137:8 138:21 139:21 148:22 149:2 149:18 149:22 150:9 151:20 153:3 153:15 155:8 156:1 156:14 156:17 157:24 159:3 160:12 160:16 161:13 161:20 162:5 162:8 162:23 169:4 169:7 170:9 170:17 171:16 171:20 171:22 171:23 | | **similar**(7) 27:3 44:7 57:6 60:4 74:13 74:15 75:19 | | **sorts**(1) 125:7 | | |
| | | | | **sottile**(1) 2:22 | | **stating**(1) 146:2 |
| | | | | **sottili**(6) 15:11 15:12 16:1 16:9 18:4 18:11 | | **status**(2) 22:10 127:19 |
| | | | | **sought**(7) 62:14 82:13 83:20 91:9 91:9 150:3 150:8 | | **statute**(2) 74:12 83:21 |
| | | **similarity**(2) 60:7 107:11 | | | | **statutory**(1) 43:17 |
| | | **simes**(1) 7:25 | | | | **stay**(2) 12:22 93:6 |
| | | **simple**(4) 50:2 50:3 138:16 138:17 | | **soul**(4) 155:5 169:19 169:20 169:22 **sound**(4) 1:47 55:14 151:23 177:19 | | **stearn**(1) 2:36 |
| | | **simply**(19) 21:19 32:3 32:23 34:13 53:4 58:24 68:16 69:23 71:16 74:19 76:17 76:20 86:9 101:21 142:5 142:16 142:18 158:11 163:15 | | | | **stein**(7) 5:14 69:1 69:2 71:13 72:21 75:17 75:17 |
| | | | | **sounds**(1) 121:4 | | |
| | | | | **south**(1) 1:27 4:32 | | **stench**(2) 168:14 169:3 |
| **settlements**(1) 170:12 | | **since**(13) 26:10 35:5 36:22 43:15 46:8 46:18 49:10 76:5 79:23 85:20 89:9 126:3 155:13 | | **southern**(1) 101:10 | | **step**(7) 22:11 92:18 92:18 92:19 92:20 132:13 176:6 |
| **settling**(3) 93:6 133:11 135:9 | | | | **spaeder**(7) 2:21 9:42 15:12 46:14 127:23 128:1 167:5 | | |
| **seven**(2) 32:9 97:16 | | | | | | |
| **several**(1) 92:5 | | **single**(6) 108:18 115:8 131:20 141:23 141:24 166:16 | | **speak**(3) 68:4 85:14 87:23 105:8 142:7 **speaker**(3) 107:4 177:8 177:11 | | **steps**(2) 49:12 49:13 **steroids**(1) 105:13 |
| **shades**(1) 148:10 | | | | | | **sticking**(1) 121:19 |
| **shall**(4) 28:10 29:12 57:9 86:24 | | **sir**(1) 15:5 | | **speaking**(3) 87:9 99:12 107:4 | | **still**(13) 14:24 19:3 19:5 42:1 51:3 52:23 54:5 77:20 137:4 143:17 150:21 171:5 173:17 |
| **shamah**(1) 6:24 | | **sit**(3) 30:9 152:17 162:17 | | **speaks**(2) 61:15 101:3 | | |
| **shannon**(1) 7:14 | | **situation**(15) 31:20 32:17 102:21 109:10 115:4 116:14 138:13 138:13 148:1 148:14 150:17 150:21 152:10 154:11 167:11 | | **special**(2) 9:34 15:12 | | |
| **share**(5) 132:23 132:24 132:24 134:14 | | | | **specific**(12) 32:1 59:11 82:2 83:9 89:24 90:2 92:16 94:18 95:6 147:3 150:14 152:1 | | **stimulate**(1) 16:1 |
| **shared**(4) 102:5 102:9 116:4 144:2 | | | | | | **stipulation**(2) 96:7 97:11 |
| **shareholders**(2) 171:13 171:13 | | | | | | **stone**(2) 166:16 171:24 |
| **sharing**(4) 132:20 143:23 145:2 172:16 | | **situations**(2) 78:19 141:6 | | **specifically**(10) 17:18 31:2 31:6 32:20 76:23 130:14 145:9 146:24 150:13 157:12 | | **stood**(2) 16:18 18:24 |
| **sheet**(19) 98:1 98:24 103:7 120:20 120:20 135:11 135:24 138:22 149:1 149:4 149:7 159:10 171:1 171:16 171:12 171:14 171:17 171:23 172:1 | | **size**(1) 102:1 | | | | **stops**(1) 156:1 |
| | | **skinny**(1) 48:20 | | | | **story**(2) 40:11 120:24 |
| | | **slightly**(2) 20:18 165:20 | | **specifics**(1) 16:18 | | **straight**(1) 155:5 |
| | | **slim**(1) 131:17 | | **specify**(1) 107:19 | | **straightforward**(1) 135:7 |
| | | **slip**(1) 147:13 | | **spectrum**(2) 69:15 135:22 | | **strategies**(2) 136:12 172:17 |
| | | **small**(2) 51:12 153:22 | | **speculate**(1) 63:18 | | **strategy**(7) 42:23 43:13 105:3 107:16 107:16 136:15 144:13 |
| | | **smaller**(2) 124:16 124:17 | | **spending**(1) 30:9 | | |
| | | **solar**(1) 63:2 | | **spent**(3) 46:9 47:8 174:3 | | |
| **sheets**(8) 95:19 95:21 98:7 103:14 103:18 127:21 138:3 138:7 | | **sold**(1) 32:13 | | **spoken**(1) 111:9 | | **strauss**(5) 4:12 7:45 87:7 88:4 90:19 |
| | | **solely**(1) 66:10 | | **spring**(2) 46:19 49:11 | | **street**(17) 1:10 1:34 1:42 2:7 2:23 2:38 2:45 3:7 3:21 3:43 4:24 4:40 5:6 5:28 5:34 5:46 123:9 |
| | | **solicitation**(2) 49:21 66:23 | | **square**(2) 2:37 3:29 | | |
| **sheron**(3) 5:13 14:19 174:12 | | **solution**(2) 50:2 50:3 | | **stack**(1) 41:13 | | |
| **shield**(1) 109:2 | | **solvency**(3) 127:22 128:2 128:14 | | **stage**(2) 38:21 153:2 | | |
| **shocked**(1) 51:22 | | | | **stake**(2) 114:22 116:16 | | |
| | | | | **stakeout**(1) 132:11 | | **strength**(1) 91:21 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| strengths(1) 95:3 | | support(5) 51:14 65:14 76:12 104:10 | | temporary(7) 53:2 53:5 57:4 69:9 69:12 | | that(301) 11:7 11:13 11:20 11:20 11:22 |
| stressed(1) 92:6 | | supported(3) 139:12 139:13 139:13 | | 69:21 77:15 | | 12:7 12:15 12:16 12:16 12:22 13:1 13:2 |
| stretch(1) 134:15 | | supporters(1) 100:17 | | | | 13:9 13:21 13:22 13:23 13:23 14:11 14:11 |
| strictly(1) 129:1 | | supportive(1) 53:7 | | ten(2) 30:19 34:7 | | 14:12 14:23 15:1 15:2 15:3 15:23 16:3 |
| strike(4) 109:8 151:11 154:17 155:2 | | suppose(2) 35:21 61:6 | | tend(4) 23:20 23:20 23:22 113:6 | | 16:5 16:6 16:22 17:7 17:10 17:13 17:18 |
| strive(1) 170:9 | | supposed(9) 29:3 31:17 31:23 65:3 77:2 | | tender(4) 21:8 30:20 31:11 31:21 | | 17:19 17:20 17:20 17:21 17:24 18:1 18:2 |
| strong(1) 150:1 | | 93:10 93:11 94:1 153:5 | | tendered(3) 30:17 31:7 35:9 | | 19:1 19:2 19:3 19:5 19:7 19:10 19:15 |
| struck(2) 130:15 135:23 | | | | tendering(3) 22:12 26:23 28:20 | | 19:16 19:24 20:13 20:15 20:20 21:2 21:8 |
| structure(4) 95:2 95:3 126:18 127:14 | | sure(18) 13:14 34:2 34:14 48:6 64:18 | | tension(2) 111:9 118:8 | | 21:12 21:20 21:23 22:2 22:5 22:9 22:20 |
| structures(3) 125:17 126:24 127:2 | | 66:14 101:23 103:12 106:6 106:17 129:6 | | tentative(1) 34:18 | | 22:24 22:24 23:2 23:13 23:13 23:16 23:17 |
| struggled(1) 160:9 | | 130:7 148:1 154:6 156:1 156:21 160:6 | | term(34) 26:12 39:3 95:19 95:21 98:1 | | 23:21 23:21 23:21 24:6 24:10 25:3 25:4 |
| struggling(1) 145:16 | | 163:13 | | 98:7 98:24 103:7 103:14 103:18 120:20 | | 25:7 25:8 25:11 25:16 25:19 25:22 25:23 |
| study(1) 156:3 | | surplus(1) 64:20 | | 120:20 127:20 130:12 131:1 132:5 135:10 | | 26:8 26:13 26:20 26:20 26:22 27:7 27:10 |
| stuff(5) 42:22 56:17 89:19 156:20 158:6 | | surplusage(1) 144:23 | | 135:23 138:3 138:6 138:22 149:1 149:4 | | 27:12 27:15 27:16 28:1 28:3 28:8 29:6 |
| style(1) 152:18 | | surprise(1) 62:1 | | 149:7 152:3 152:4 159:10 171:1 171:6 | | 29:6 29:14 30:5 30:7 30:12 30:15 30:19 |
| subject(13) 52:21 54:5 55:3 66:15 84:6 | | surprising(1) 167:24 | | 171:12 171:14 171:17 171:23 171:24 | | 30:23 31:2 31:6 31:14 31:15 31:16 31:24 |
| 89:4 106:13 132:15 157:12 157:17 166:13 | | suspect(3) 70:11 115:24 121:6 | | | | 32:7 32:11 32:14 32:15 32:16 33:6 33:8 |
| 173:18 177:1 | | sutton(5) 24:22 24:24 25:1 25:22 35:21 | | terms(21) 23:7 30:18 30:22 32:1 52:22 | | 33:8 33:10 33:11 33:16 34:1 34:2 34:6 |
| | | suttonbrook(5) 5:19 7:37 20:12 | | 53:23 54:5 54:6 54:21 55:19 65:19 66:15 | | 34:6 34:8 34:14 34:17 34:18 34:19 34:19 |
| submission(1) 100:13 | | sutty(1) 4:38 | | 95:21 96:8 97:11 123:19 124:17 136:22 | | 34:22 35:6 35:13 35:14 35:15 35:18 35:22 |
| submissions(1) 77:24 | | sweetheart(1) 123:22 | | 137:6 164:24 165:17 | | 36:3 36:4 36:9 36:21 36:22 37:18 37:20 |
| submit(11) 41:2 69:22 84:9 86:5 108:9 | | switch(1) 91:1 | | | | 38:2 38:3 38:5 38:10 39:8 39:12 |
| 115:10 121:15 131:17 136:17 171:17 173:7 | | sword(1) 109:2 | | test(3) 115:23 133:4 172:2 | | 39:12 39:13 39:16 39:16 40:1 40:2 40:3 |
| | | system(6) 26:11 26:17 61:6 65:1 74:10 | | testifies(2) 147:18 147:19 | | 40:4 40:9 40:15 40:15 40:20 41:7 41:10 |
| submitted(10) 42:5 44:10 61:24 96:2 96:5 | | 74:11 | | testifying(3) 147:17 148:2 148:2 | | 41:15 41:21 41:24 42:3 42:5 42:15 42:17 |
| 96:12 96:20 100:13 101:5 169:10 | | | | texting(1) 121:8 | | 42:22 42:22 43:7 44:2 44:5 44:9 45:3 |
| | | ta-doo(1) 125:6 | | than(28) 15:16 32:19 33:15 33:24 34:11 | | 45:5 45:6 45:14 45:18 45:19 45:22 |
| subordinate(3) 28:10 45:11 61:7 | | table(5) 45:13 48:4 70:19 159:7 161:6 | | 44:15 47:18 62:19 62:24 63:4 67:7 69:13 | | 45:23 46:3 46:4 46:7 46:16 46:18 46:19 |
| subordinated(10) 27:14 28:8 29:15 32:9 | | tailor(1) 24:1 | | 73:8 83:11 93:3 101:6 109:24 110:24 | | 47:10 47:11 47:14 47:15 47:17 48:6 48:7 |
| 32:24 33:9 39:4 39:10 48:10 59:18 | | take(33) 12:1 18:2 18:5 20:9 21:20 22:11 | | 114:9 114:10 116:17 145:21 147:2 148:15 | | 48:15 48:17 48:20 49:1 49:1 49:4 49:6 |
| | | 34:9 36:12 37:3 40:5 47:11 57:16 57:19 | | 152:24 166:23 168:5 173:16 | | 49:8 49:9 49:9 49:14 49:14 49:18 49:22 |
| subordination(4) 38:24 39:1 39:2 39:5 | | 70:23 77:4 79:10 85:21 90:23 91:3 106:11 | | | | 49:23 50:1 50:2 50:7 50:8 50:9 50:21 |
| subsequent(1) 88:9 | | 107:22 113:15 135:7 138:18 146:23 152:1 | | thank(70) 13:5 13:6 14:13 15:7 15:8 | | 50:23 51:1 51:7 51:13 51:14 51:16 51:17 |
| substance(6) 35:23 46:1 46:2 55:17 119:14 | | 153:14 168:10 173:10 174:6 174:9 175:19 | | 16:16 18:8 18:12 19:12 20:2 24:20 24:21 | | 51:21 52:2 52:3 52:6 52:17 52:17 52:20 |
| 138:15 | | 176:2 | | 29:17 29:18 29:23 32:24 33:1 33:13 33:14 | | 53:1 53:5 53:21 53:23 54:7 54:14 54:15 |
| | | | | 65:10 65:11 66:24 67:4 67:10 67:11 68:19 | | 55:1 55:5 55:9 55:10 55:15 56:1 56:7 |
| substantial(6) 33:7 60:6 80:2 102:18 134:9 | | taken(7) 22:20 34:7 73:3 73:7 145:8 | | 68:21 72:21 72:22 74:15 74:17 75:2 75:3 | | 56:8 56:9 56:15 56:18 57:6 57:8 57:12 |
| 174:15 | | 169:14 172:19 | | 75:16 77:2 77:3 82:1 84:21 85:9 85:10 | | 57:12 57:14 57:16 57:19 57:20 57:20 58:1 |
| | | | | 86:3 86:16 87:4 87:5 88:2 90:17 97:7 | | 58:3 58:7 58:7 58:9 58:10 58:11 58:11 |
| substantially(4) 60:3 74:12 74:15 75:19 | | takes(4) 42:15 62:8 123:7 152:14 | | 129:10 129:11 146:14 157:7 160:8 163:17 | | 58:12 58:12 58:14 58:16 58:24 58:24 59:1 |
| substantive(1) 35:18 | | taking(8) 20:21 49:12 64:22 91:5 121:11 | | 167:16 167:17 167:19 173:10 175:17 | | 59:1 59:2 59:4 59:6 59:11 59:17 59:18 |
| successful(2) 13:15 117:6 | | 151:8 161:16 169:11 | | 175:22 176:13 177:6 177:11 177:13 | | 59:19 59:20 60:2 60:7 60:7 60:13 61:3 |
| successor(3) 18:20 36:17 38:8 | | | | | | 61:8 61:9 61:9 61:12 61:13 61:17 |
| such(11) 19:20 22:2 28:3 31:5 72:11 79:9 | | talk(7) 39:21 45:2 56:20 77:22 126:15 | | thanks(1) 112:3 | | 61:18 61:23 |
| 83:18 119:12 131:6 131:18 140:10 | | 142:2 148:10 | | | | |
| | | | | | | |
| sudden(1) 147:9 | | talked(7) 19:15 77:17 126:1 151:22 157:23 | | | | |
| sued(1) 99:20 | | 159:9 176:22 | | | | |
| suffice(2) 42:24 130:6 | | | | | | |
| sufficient(7) 21:8 41:11 70:2 133:21 149:9 | | talking(28) 12:3 14:24 25:12 26:15 28:9 | | | | |
| 156:3 166:14 | | 85:15 90:11 106:18 107:6 107:12 128:12 | | | | |
| | | 128:13 128:15 128:16 147:8 147:9 151:4 | | | | |
| sufficiently(2) 64:5 138:1 | | 152:12 155:16 164:1 164:14 164:14 166:4 | | | | |
| suggest(11) 13:9 13:23 61:3 64:3 65:2 | | 166:6 174:4 177:2 177:3 177:4 | | | | |
| 65:6 73:3 83:5 123:13 137:9 150:20 | | | | | | |
| | | tally(3) 44:14 52:13 55:19 | | | | |
| suggested(7) 32:7 80:7 91:4 108:7 125:9 | | targeted(2) 124:14 128:10 | | | | |
| 150:15 158:5 | | taylor(1) 4:21 | | | | |
| | | technical(6) 58:10 58:11 67:22 71:8 72:7 | | | | |
| suggesting(7) 27:23 90:9 119:21 142:15 | | 72:9 | | | | |
| 154:7 164:22 165:1 | | | | | | |
| | | technically(1) 141:9 | | | | |
| suggestion(5) 14:4 36:4 120:17 130:11 | | technologies(1) 143:20 | | | | |
| 136:20 | | teleglobe(20) 98:16 99:6 99:7 99:11 99:14 | | | | |
| | | 104:20 105:12 105:20 105:24 106:3 106:7 | | | | |
| suggests(2) 161:4 166:2 | | 106:11 140:8 144:18 144:19 145:1 145:4 | | | | |
| suite(8) 1:35 2:7 2:24 3:21 4:33 4:41 5:28 | | 145:8 172:22 173:6 | | | | |
| 5:40 | | | | | | |
| | | telephonic(6) 1:20 6:1 7:1 8:1 9:1 10:2 | | | | |
| sullivan(2) 3:19 3:20 | | tell(18) 23:20 24:2 77:5 79:1 86:10 110:11 | | | | |
| sum(5) 49:16 55:17 57:21 57:21 138:15 | | 110:19 111:4 117:20 117:20 123:21 | | | | |
| summarize(2) 38:2 38:3 | | 141:11 154:6 154:9 160:3 171:5 172:8 | | | | |
| summary(4) 47:8 86:9 137:7 148:23 | | 176:6 | | | | |
| superior(3) 143:20 145:12 145:20 | | | | | | |
| supersedes(1) 31:3 | | telling(6) 112:3 126:20 139:5 154:1 156:15 | | | | |
| superseding(1) 32:20 | | 172:8 | | | | |
| supervision(1) 143:24 | | | | | | |
| supplemental(1) 76:14 | | tellingly(1) 60:21 | | | | |
| supply(1) 102:17 | | tells(4) 105:12 106:20 132:18 133:3 | | | | |
| | | temporarily(3) 42:2 54:15 57:12 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **that**(301) | 61:23 62:1 62:1 62:5 62:7 62:7 62:8 62:8 62:10 62:12 62:16 62:23 62:23 62:24 63:3 63:4 63:13 63:13 63:16 63:22 64:2 64:5 64:6 64:7 64:11 64:17 64:18 64:18 64:20 65:2 65:2 65:6 65:7 65:14 65:16 65:17 66:2 66:2 66:6 66:8 66:9 66:12 66:14 66:14 66:14 66:18 66:19 66:21 66:21 66:21 66:23 68:3 68:9 68:15 68:17 68:18 69:4 69:6 69:10 69:11 69:13 69:17 69:20 69:22 69:23 69:23 70:4 70:5 70:6 70:8 70:11 70:11 70:12 70:20 70:20 70:21 71:2 71:10 71:11 71:13 71:14 71:17 71:17 71:19 71:19 71:20 72:4 72:4 72:12 72:13 73:4 73:7 73:14 73:17 73:21 74:10 74:11 74:13 74:14 74:20 74:22 74:23 75:1 75:12 75:20 75:23 75:24 75:24 76:1 76:6 76:7 76:9 76:16 76:18 76:18 76:21 77:1 77:10 77:14 77:15 77:17 77:21 77:22 77:24 78:2 78:3 78:4 78:6 78:10 78:14 78:19 78:23 79:3 79:6 79:6 79:9 79:10 80:7 80:10 80:12 80:13 80:16 80:19 80:22 81:7 81:8 81:10 81:11 81:12 81:13 81:14 81:16 82:3 82:7 82:11 82:13 82:16 82:21 83:3 83:5 83:6 83:11 83:13 83:22 84:2 84:8 84:9 84:10 85:1 85:1 85:4 85:6 85:16 85:22 86:10 86:12 86:19 87:11 87:12 87:15 87:20 87:22 87:23 88:5 88:10 88:14 88:16 88:17 88:19 88:21 88:22 89:10 89:11 90:1 90:6 90:7 90:12 90:13 90:15 90:21 90:21 90:22 91:1 91:2 91:3 91:6 91:7 91:12 91:12 91:13 91:15 91:18 91:21 92:6 92:10 92:12 92:16 92:17 92:22 93:5 93:7 93:10 93:17 93:19 94:4 94:19 95:9 95:10 95:10 95:13 95:15 95:18 95:18 95:20 96:3 96:5 96:10 96:13 96:15 96:21 96:22 97:12 97:15 97:17 97:19 97:20 98:1 98:2 98:3 98:4 98:5 98:5 98:10 98:12 98:12 98:14 98:18 98:21 99:1 99:1 99:5 99:9 99:11 99:16 99:21 99:23 99:24 100:2 100:6 100:10 100:11 100:12 100:15 100:21 100:22 100:24 101:1 101:7 101:10 101:16 101:20 101:21 102:5 102:7 102:7 102:8 102:13 102:14 102:17 102:19 102:20 102:20 102:21 102:23 103:1 103:1 103:5 103:9 | **that**(301) | 103:10 103:12 103:13 103:18 103:20 103:22 103:23 104:3 104:5 104:7 104:13 104:19 104:23 105:6 105:10 105:1 105:17 105:24 106:6 106:9 106:19 106:21 106:22 106:23 107:12 107:14 107:18 108:5 108:5 108:7 108:8 108:8 108:9 108:12 108:16 108:18 108:19 108:21 108:22 108:23 109:1 109:1 109:2 109:5 109:8 109:9 109:9 109:12 109:17 109:17 109:18 110:2 110:3 110:8 110:11 110:15 110:15 110:21 111:1 111:1 111:1 111:4 111:5 111:8 111:8 111:9 111:10 111:14 111:21 111:22 111:22 111:23 112:4 112:10 112:1 112:13 112:14 112:15 112:15 112:17 112:17 112:23 113:8 113:10 113:12 113:2 114:1 114:10 114:12 114:14 114:15 114:17 114:24 115:3 115:4 115:10 115:11 115:12 115:19 115:20 115:21 115:21 115:22 116:1 116:7 116:8 116:11 116:16 116:16 116:17 116:18 116:19 117:2 117:5 117:13 117:14 117:14 117:16 117:17 117:21 118:5 118:11 118:1 118:18 118:20 119:5 119:5 119:7 119:9 119:20 119:22 119:23 120:2 120:10 120:10 120:11 120:22 120:23 121:6 121:15 121:15 121:16 121:17 121:21 121:24 122:10 122:13 122:15 122:21 123:3 123:4 123:7 123:10 123:10 123:11 123:16 123:2 123:21 123:21 123:24 124:10 124:13 125:4 125:6 125:7 125:9 125:12 125:13 125:15 125:18 125:20 125:23 125:23 126: 126:9 126:10 126:12 126:13 126:17 127: 127:10 127:10 127:12 127:14 128:1 128:10 128:15 128:17 128:21 129:3 129:6 129:7 130:7 130:9 130:10 130:15 130:17 130:22 131:8 131:9 131:12 131:15 131:20 131:21 132:3 132:7 132:18 132:20 133:7 133:13 133:16 133:19 133:21 133:2 133:24 134:3 134:12 134:16 134:20 135:3 135:4 135:8 135:10 135:13 135:14 136:9 136:9 136:17 136:18 136:18 136:21 136:22 137:1 137:3 137:3 137:5 137:9 137:9 137:11 137:13 137:13 137:16 137:20 137:24 138:10 138:15 138:16 138:19 138:24 139:6 139:12 139:12 139:15 139:1 139:16 140:4 140:5 140:9 140:14 140:16 140:18 140:21 140:23 141:3 141:4 141:6 141:8 141:10 141:12 142:1 142:16 142:1 142:23 143:1 143:5 143:8 143:8 143:9 143:11 143:12 143:13 143:14 143:15 143:22 144:2 144:2 144:8 144:12 144:19 144:22 145:1 145:5 145:6 145:9 | **that**(239) | 145:19 146:1 146:3 146:3 146:6 146:18 146:21 146:23 146:24 147:3 147:4 147:10 147:13 147:13 147:14 147:14 147:15 147:21 148:3 148:5 148:6 148:8 148:12 148:14 148:16 148:17 148:19 148:20 149:1 149:2 149:6 149:9 149:11 149:12 149:13 149:14 149:15 149:15 149:16 150:3 150:6 150:7 150:10 150:10 150:11 150:14 150:15 150:21 150:22 150:23 150:24 151:1 151:1 151:2 151:5 151:15 151:19 151:24 152:15 152:16 152:24 153:2 153:6 153:7 153:11 153:13 153:20 153:21 154:6 154:9 154:11 154:12 154:13 154:14 154:16 155:2 155:13 155:14 155:16 155:22 155:24 156:8 156:9 156:14 156:15 156:19 156:20 157:3 157:4 157:5 157:12 157:13 157:20 157:22 157:2 157:23 158:1 158:2 158:3 158:3 158:4 158:5 158:6 158:8 158:8 158:11 158:12 158:13 158:17 158:19 158:21 158:21 158:22 159:3 159:4 159:10 159:15 159:16 159:23 160:1 160:2 160:9 160:9 160:11 160:15 160:18 160:19 160:22 161:5 161:8 161:11 161:11 161:15 161:17 161:19 161:23 162:1 162:3 162:3 162:3 162:7 162:8 162:12 162:14 162:14 162:16 162:16 162:21 162:23 163:1 163:3 163:4 163:5 163:7 163:9 163:9 163:10 163:13 163:15 163:18 163:19 163:20 163:22 163:22 164:4 164:15 164:15 164:17 164:24 165:3 165:6 165:12 165:19 165:20 166:1 166:2 166:4 166:9 166:9 166:14 166:15 166:21 166:23 167:2 167:10 167:23 168:4 168:7 168:8 168:11 168:14 168:16 169:3 169:5 169:6 169:9 169:16 169:17 170:10 170:11 170:12 170:13 170:13 170:17 170:19 171:4 171:11 171:14 172:3 172:7 172:9 172:12 172:13 172:23 172:23 173:7 173:7 173:7 173:16 173:19 174:3 174:17 174:17 174:18 175:6 175:8 175:21 176:11 176:21 176:22 176:24 177:13 177:18 | **the**(301) | 1:1 1:2 1:17 2:4 4:23 4:48 8:8 9:4 9:34 11:2 11:3 11:6 11:8 11:10 11:13 11:17 11:17 11:19 11:22 11:23 11:24 12:6 12:8 12:17 12:18 12:21 13:2 13:2 13:3 13:4 13:6 13:8 13:9 13:11 13:13 13:17 13:17 13:23 14:1 14:4 14:5 14:8 14:11 14:14 14:16 14:17 14:21 14:21 14:22 14:23 15:1 15:2 15:4 15:6 15:9 15:9 15:12 15:14 15:15 15:15 15:19 15:19 15:20 15:22 16:2 16:3 16:3 16:4 16:5 16:6 16:8 16:11 16:12 16:17 16:18 16:19 17:1 17:1 17:3 17:3 17:4 17:6 17:8 17:10 17:12 17:12 17:14 17:17 17:19 17:21 17:23 17:24 18:5 18:6 18:7 18:9 18:11 18:13 18:13 18:17 18:19 18:20 18:22 18:24 19:1 19:2 19:3 19:5 19:5 19:8 19:9 19:11 19:12 19:13 19:15 19:16 19:17 19:18 19:19 19:19 19:20 19:23 20:1 20:1 20:4 20:4 20:6 20:6 20:8 20:8 20:12 20:13 20:13 20:14 20:15 20:15 20:17 20:17 20:21 20:22 21:1 21:1 21:3 21:4 21:5 21:6 21:7 21:10 21:10 21:12 21:13 21:16 21:19 21:21 21:21 21:23 21:24 22:1 22:3 22:7 22:8 22:10 22:12 22:12 22:13 22:13 22:13 22:15 22:16 22:17 22:19 22:19 22:21 22:22 22:22 22:23 22:24 23:1 23:2 23:2 23:3 23:7 23:7 23:10 23:12 23:12 23:17 23:19 23:21 23:24 24:2 24:3 24:5 24:9 24:9 24:10 24:15 24:15 24:17 24:19 24:21 24:24 25:2 25:3 25:4 25:4 25:8 25:9 25:9 25:11 25:13 25:16 25:19 25:20 25:20 25:21 25:21 25:23 25:24 26:2 26:2 26:4 26:4 26:5 26:6 26:6 26:7 26:9 26:11 26:12 26:13 26:13 26:14 26:16 26:16 26:17 26:17 26:19 26:19 26:20 26:22 26:23 26:24 27:1 27:1 27:1 27:2 27:2 27:2 27:4 27:6 27:7 27:7 27:8 27:9 27:9 27:9 27:10 27:12 27:13 27:16 27:16 27:18 27:22 28:3 28:9 28:10 28:11 28:12 28:12 28:12 28:14 28:17 28:17 28:20 28:20 28:21 28:21 28:22 28:23 28:24 29:1 29:3 29:4 29:4 29:5 29:12 29:13 29:14 29:14 29:14 29:17 29:19 29:19 29:22 29:24 30:3 30:3 30:4 |
| **that's**(119) | 11:17 14:3 15:4 15:8 15:9 17:17 20:23 25:13 26:6 28:18 30:6 31:14 35:17 36:5 37:3 37:11 40:10 40:21 40:22 41:4 42:4 45:13 45:22 46:17 50:1 51:12 52:2 53:2 53:16 54:2 54:20 55:17 56:16 56:18 57:14 58:11 59:15 59:18 60:14 61:22 62:9 65:5 65:23 66:21 67:19 69:22 70:9 70:18 72:15 72:16 74:3 74:6 76:22 81:1 81:17 83:7 84:4 84:5 84:16 85:5 85:6 87:17 89:2 90:7 93:23 93:24 94:7 96:15 97:22 103:23 104:10 104:16 105:5 107:1 107:15 107:21 109:4 112:6 116:4 117:8 118:22 120:8 120:15 121:1 121:23 121:23 122:6 127:16 128:11 130:20 131:1 132:5 132:7 136:23 138:8 138:11 139:8 143:8 143:12 144:18 147:19 148:11 149:14 149:15 150:16 152:3 152:19 152:20 154:8 154:16 155:10 155:19 156:19 156:23 164:1 168:18 173:8 176:22 177:4 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) | | the(301) | | the(301) | | the(301) | |

**Column 1 — the(301):**
30:5 30:5 30:7 30:9 30:12 30:15 30:15 30:16 30:17 30:17 30:17 30:18 30:18 30:18 30:21 30:21 30:22 30:22 30:23 30:24 31:1 31:1 31:3 31:4 31:5 31:6 31:6 31:7 31:7 31:10 31:10 31:11 31:11 31:12 31:13 31:15 31:17 31:19 31:20 31:21 31:23 31:24 32:1 32:1 32:4 32:4 32:6 32:8 32:10 32:10 32:12 32:13 32:14 32:15 32:16 32:20 32:21 32:23 33:1 33:2 33:5 33:6 33:6 33:8 33:9 33:11 33:12 33:14 33:18 33:18 33:20 33:22 33:22 34:4 34:6 34:7 34:8 34:10 34:15 34:16 34:18 34:20 34:22 34:23 35:2 35:8 35:8 35:10 35:10 35:10 35:11 35:12 35:13 35:13 35:14 35:18 35:19 35:20 35:23 35:24 36:1 36:4 36:6 36:7 36:9 36:13 36:15 36:17 36:18 36:23 36:24 37:1 37:8 37:9 37:9 37:10 37:11 37:13 37:14 37:15 37:17 37:17 37:19 37:21 37:21 37:24 37:24 38:2 38:3 38:4 38:5 38:6 38:6 38:7 38:11 38:11 38:12 38:13 38:15 38:15 38:16 38:18 38:20 38:22 38:23 38:24 38:24 39:1 39:2 39:3 39:3 39:5 39:6 39:7 39:7 39:8 39:9 39:13 39:15 39:17 39:17 39:18 39:21 39:24 40:1 40:2 40:3 40:3 40:4 40:7 40:8 40:8 40:9 40:9 40:10 40:11 40:15 40:20 40:20 41:1 41:1 41:2 41:3 41:6 41:15 42:1 42:2 42:2 42:4 42:6 42:8 42:9 42:10 42:11 42:13 42:13 42:15 42:17 42:22 43:3 43:4 43:5 43:5 43:8 43:12 43:14 43:22 43:22 44:5 44:7 44:8 44:9 44:12 44:13 44:20 44:21 44:21 44:22 44:24 45:2 45:3 45:4 45:6 45:6 45:9 45:10 45:11 45:12 45:13 45:18 45:18 45:19 45:20 45:22 46:1 46:1 46:2 46:3 46:4 46:8 46:8 46:10 46:14 46:14 46:19 47:3 47:3 47:4 47:11 47:14 47:16 47:16 47:17 47:20 47:22 47:23 48:4 48:4 48:5 48:5 48:6 48:7 48:15 48:15 48:16 48:18 48:19 48:21 48:21 48:21 49:4 49:9 49:10 49:10 49:21 50:1 50:1 50:2 50:3 50:4 50:6 50:6 50:7 50:9 50:11 50:11 50:12 50:13 50:17 50:20 51:1 51:7 51:8 51:9 51:11 51:11 51:13 51:14 51:15 51:17

**Column 2 — the(301):**
51:19 51:19 51:24 51:24 52:3 52:8 52:10 52:10 52:13 52:16 52:21 52:22 52:23 53:1 53:1 53:1 53:5 53:9 53:11 53:15 53:18 53:19 53:21 53:23 54:2 54:4 54:6 54:7 54:9 54:13 54:13 54:15 54:16 54:17 54:18 54:19 54:21 54:22 54:22 55:1 55:2 55:7 55:7 55:12 55:14 55:19 55:20 55:20 55:21 56:2 56:4 56:7 56:8 56:9 56:10 56:10 56:12 56:15 56:19 56:19 56:22 57:5 57:6 57:7 57:7 57:8 57:9 57:10 57:10 57:15 57:15 57:15 57:16 57:17 57:18 57:21 57:21 57:22 58:2 58:3 58:3 58:4 58:5 58:7 58:7 58:12 58:12 58:15 58:15 58:16 58:17 58:19 58:19 58:21 58:22 58:24 59:2 59:5 59:10 59:11 59:12 59:15 59:15 59:20 59:21 59:21 59:24 59:24 60:1 60:1 60:3 60:7 60:9 60:9 60:10 60:11 60:11 60:13 60:14 60:15 60:16 60:16 60:17 60:18 61:1 61:3 61:3 61:5 61:5 61:6 61:6 61:8 61:10 61:12 61:13 61:14 61:15 61:15 61:16 61:19 61:20 61:22 61:23 62:2 62:3 62:5 62:6 62:7 62:9 62:10 62:12 62:12 62:14 62:15 62:17 62:19 62:20 63:9 63:10 63:11 63:14 63:14 63:16 63:20 63:21 64:4 64:5 64:5 64:6 64:7 64:8 64:11 64:16 64:17 65:2 65:3 65:6 65:6 65:8 65:10 65:12 65:12 65:14 65:15 65:17 65:18 65:23 66:3 66:9 66:10 66:17 66:18 66:19 66:20 66:24 67:3 67:5 67:6 67:7 67:8 67:10 67:13 67:14 67:17 67:18 67:18 67:19 67:20 67:21 67:23 68:2 68:5 68:6 68:6 68:7 68:11 68:11 68:13 68:14 68:15 68:15 68:16 68:17 68:19 68:21 69:6 69:8 69:9 69:11 69:12 69:13 69:14 69:15 69:15 70:1 70:1 70:3 70:4 70:6 70:6 70:7 70:9 70:9 70:12 70:12 70:13 70:13 70:15 70:17 70:17 70:18 70:18 70:21 70:22 71:3 71:4 71:5 71:8 71:10 71:10 71:14 71:15 71:15 71:16 71:18 71:20 71:22 71:23 71:23 71:24 72:2 72:3 72:5

**Column 3 — the(301):**
72:10 72:10 72:14 72:16 72:20 72:22 72:22 73:2 73:4 73:4 73:6 73:7 73:9 73:10 73:13 73:16 73:18 73:18 73:19 73:22 73:24 73:24 74:1 74:1 74:2 74:3 74:3 74:4 74:5 74:6 74:6 74:7 74:7 74:8 74:9 74:10 74:10 74:11 74:12 74:12 74:19 74:17 74:17 74:20 74:21 74:22 74:22 75:3 75:5 75:5 75:7 75:8 75:8 75:9 75:11 75:12 75:12 75:19 75:20 75:21 75:22 75:22 75:23 76:2 76:3 76:4 76:5 76:6 76:7 76:7 76:8 76:9 76:10 76:11 76:12 76:12 76:13 76:15 76:16 76:16 76:16 76:17 76:18 76:19 76:19 76:20 76:20 76:22 76:23 77:1 77:3 77:5 77:5 77:6 77:6 77:9 77:10 77:13 77:15 77:15 77:16 77:18 77:20 77:22 77:24 78:1 78:4 78:5 78:5 78:7 78:8 78:10 78:11 78:21 79:4 79:6 79:8 79:10 79:16 79:16 79:18 79:19 79:21 79:24 80:1 80:3 80:4 80:5 80:7 80:8 80:9 80:9 80:11 80:12 80:13 80:14 80:14 80:17 80:17 80:18 80:19 80:20 80:20 80:22 81:1 81:1 81:4 81:6 81:7 81:8 81:11 81:11 81:11 81:12 81:13 81:17 81:18 81:18 82:1 82:3 82:7 82:8 82:8 82:9 82:10 82:13 82:14 82:14 82:14 82:15 82:18 82:18 82:20 82:21 82:22 83:3 83:3 83:3 83:4 83:5 83:6 83:6 83:7 83:8 83:8 83:10 83:10 83:11 83:12 83:13 83:18 83:19 83:20 83:21 84:1 84:3 84:4 84:5 84:6 84:10 84:13 84:18 84:19 84:22 84:24 84:24 85:1 85:2 85:3 85:4 85:5 85:5 85:6 85:6 85:7 85:8 85:11 85:11 85:13 85:14 85:15 85:20 85:21 85:22 85:22 85:23 85:24 85:24 86:1 86:2 86:5 86:8 86:12 86:15 86:15 86:16 86:18 86:19 86:20 86:22 86:23 86:23 86:24 87:1 87:1 87:3 87:5 87:6 87:8 87:9 87:9 87:13 87:14 87:15 87:18 87:19 87:20 87:21 87:22 87:22 87:24 88:1 88:3 88:7 88:7 88:8 88:9 88:10 88:11 88:11 88:13 88:17 89:3 89:4 89:5 89:6 89:7 89:8 89:9 89:10 89:12 89:15 89:17 89:18 89:20

**Column 4 — the(301):**
89:21 89:22 89:24 90:1 90:1 90:2 90:5 90:7 90:7 90:12 90:13 90:14 90:16 90:18 90:20 90:21 90:21 90:22 90:23 91:1 91:3 91:5 91:5 91:7 91:8 91:12 91:13 91:14 91:14 91:16 91:16 91:16 91:19 91:21 91:21 91:22 91:22 91:23 92:1 92:3 92:6 92:6 92:7 92:9 92:9 92:9 92:11 92:11 92:13 92:13 92:13 92:14 92:14 92:15 92:16 92:17 92:17 92:18 92:24 92:24 93:1 93:1 93:2 93:5 93:5 93:7 93:8 93:8 93:11 93:11 93:12 93:12 93:13 93:13 93:18 93:18 93:21 93:21 93:23 93:24 94:1 94:2 94:3 94:3 94:4 94:4 94:4 94:6 94:7 94:7 94:9 94:12 94:13 94:13 94:14 94:16 94:17 94:18 94:19 94:20 94:22 94:23 94:23 95:1 95:6 95:8 95:8 95:9 95:13 95:13 95:13 95:15 95:15 95:17 95:17 95:19 95:20 95:20 95:21 96:2 96:2 96:3 96:4 96:8 96:9 96:10 96:13 96:15 96:17 96:17 96:21 96:22 96:23 97:1 97:1 97:4 97:4 97:7 97:8 97:9 97:9 97:10 97:11 97:12 97:17 97:18 97:19 97:19 97:21 97:22 97:23 97:23 98:2 98:2 98:5 98:6 98:10 98:14 98:14 98:14 98:16 98:17 98:21 98:22 98:22 98:23 99:3 99:4 99:5 99:8 99:8 99:9 99:10 99:11 99:11 99:13 99:17 99:17 99:19 99:19 99:21 99:21 99:22 99:24 100:1 100:3 100:6 100:6 100:8 100:8 100:9 100:11 100:12 100:12 100:13 100:14 100:15 100:15 100:20 100:21 100:22 100:24 101:1 101:1 101:5 101:5 101:6 101:10 101:10 101:10 101:11 101:11 101:12 101:12 101:12 101:14 101:15 101:15 101:16 101:16 101:17 101:17 101:18 101:18 101:19 101:23 102:1 102:2 102:2 102:3 102:3 102:5 102:5 102:6 102:7 102:8 102:9 102:9 102:10 102:11 102:14 102:15 102:16 102:18 102:19 102:20 102:21 102:21 102:22 102:22 102:23 102:23 103:1 103:3 103:3 103:6 103:8 103:11 103:12 103:13 103:14 103:18 103:18 103:19 103:20 103:21 103:22 103:22 103:23 103:23 104:3 104:4 104:5 104:5 104:6 104:6 104:7 104:8 104:8 104:9 104:9 104:10 104:12 104:13 104:14 104:15 104:16 104:16 104:17 104:18 104:19 104:21 104:22 104:24 104:24 105:2 105:2 105:3 105:3 105:5 105:5 105:7 105:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 105:8 105:8 105:11 105:12 105:12 105:15 105:17 105:17 105:19 105:24 105:24 106:2 106:5 106:6 106:7 106:7 106:10 106:11 106:14 106:14 106:2 106:22 107:1 107:2 107:4 107:4 107:4 107:5 107:6 107:7 107:8 107:9 107:9 107:10 107:11 107:12 107:14 107:17 107:17 107:19 107:20 107:21 107:21 107:24 108:2 108:3 108:3 108:4 108:5 108:5 108:5 108:6 108:6 108:10 108:12 108:13 108:14 108:15 108:20 108:22 108:23 108:24 108:24 109:1 109:4 109:4 109:5 109:11 109:14 109:16 109:16 109:1 109:18 109:19 109:23 110:2 110:3 110:5 110:7 110:17 110:22 111:2 111:9 111:9 111:11 111:15 111:16 111:17 111:19 111:20 111:20 111:22 112:1 112:4 112:6 112:7 112:7 112:8 112:8 112:9 112:15 112:16 112:18 112:21 112:23 112:23 113: 113:3 113:6 113:11 113:11 113:15 113:16 113:17 113:17 113:19 113:19 113:22 113:22 113:23 113:23 114:1 114:3 114:5 114:6 114:6 114:6 114:7 114:7 114:13 114:15 114:16 114:17 114:20 114:21 114:22 114:22 115:1 115:1 115:4 115:7 115:8 115:9 115:9 115:12 115:13 115:15 115:15 115:17 115:20 115:21 115:23 115:24 116:2 116:2 116:3 116:4 116:7 116:8 116:10 116:11 116:13 116:15 116:1 116:19 116:21 116:24 117:1 117:4 117:7 117:7 117:8 117:9 117:9 117:12 117:14 117:15 117:16 117:18 117:18 117:23 117:24 118:1 118:2 118:3 118:4 118:4 118:4 118:5 118:6 118:8 118:8 118:9 118:10 118:14 118:16 118:19 118:20 119: 119:8 119:10 119:12 119:14 119:17 119:18 119:18 120:1 120:3 120:4 120:7 120:8 120:11 120:12 120:13 120:13 120:1 120:14 120:15 120:17 120:18 120:19 120:20 120:20 120:21 120:24 121:1 121:2 121:3 121:7 121:11 121:12 121:14 121:20 121:20 121:21 121:24 122:9 122:10 122:1 122:13 122:19 122:20 122:20 122:23 122:23 123:2 123:4 123:5 123:5 123:6 123:7 123:9 123:10 123:14 123:15 123:17 123:17 123:17 123:19 123:19 123:20 123:21 123:21 123:24 124:1 124:2 124:4 124:4 124:6 124:7 124:9 124:10 124:10 124:11 124:14 124:15 124:15 124:16 124:18 124:19 124:21 124:21 124:22 124:23 124:23 124:24 124:24 125:2 125:4 125:6 125:8 125:9 125:15 125:16 125:17 125:20 125:22 125:22 125:23 125:24 126:

**the**(301) 126:1 126:3 126:3 126:5 126:6 126:6 126:8 126:14 126:14 126:18 126:19 126:20 126:22 127:1 127:2 127:6 127:6 127:8 127:8 127:9 127:10 127:13 127:13 127:16 127:17 127:21 127:22 127:23 128: 128:2 128:5 128:6 128:7 128:7 128:11 128:12 128:15 128:15 128:19 128:22 129: 129:2 129:3 129:4 129:8 129:10 129:13 129:17 129:17 129:18 129:19 129:19 129:21 129:21 129:23 130:1 130:2 130:2 130:8 130:10 130:12 130:15 130:15 130:1 130:18 130:19 130:21 130:22 130:22 130:24 131:1 131:2 131:3 131:6 131:6 131:8 131:9 131:10 131:12 131:15 131:17 131:17 131:20 131:21 131:22 131:23 132: 132:5 132:7 132:8 132:8 132:10 132:10 132:10 132:13 132:15 132:15 132:18 132:19 132:19 132:20 132:22 132:22 133: 133:1 133:2 133:4 133:5 133:6 133:7 133:9 133:10 133:12 133:13 133:13 133:13 133:14 133:14 133:15 133:16 133:21 133:22 133:24 134:3 134:4 134:6 134:6 134:6 134:7 134:8 134:10 134:10 134:11 134:12 134:13 134:13 134:15 134:17 134:18 134:18 134:20 134:23 134:23 135: 135:6 135:8 135:8 135:9 135:9 135:12 135:12 135:15 135:16 135:17 135:18 135:21 135:22 135:22 135:23 135:23 135:24 136:1 136:2 136:3 136:3 136:3 136:4 136:4 136:5 136:7 136:7 136:8 136:8 136:10 136:13 136:14 136:15 136:17 136:18 136:19 136:20 136:21 136:21 136:22 137:2 137:5 137:5 137:5 137:6 137:6 137:7 137:8 137:10 137:13 137:14 137:17 137:17 137:17 137:18 137:19 137:19 137:20 137:22 137:24 137:24 138:1 138:2 138:2 138:3 138:3 138:3 138:5 138:5 138:12 138:14 138:18 138:19 138:19 138:20 138:20 138:20 138:21 138:22 138:22 139:1 139:2 139:2 139:3 139:3 139:3 139:6 139:6 139:7 139:10 139:11 139:14 139:15 139:15 139:16 139:16 139:17 139:17 139:21 139:21 139:22 139:22 140:1 140:2 140:3 140:4 140:4 140:5 140:6 140:6 140:8 140:9 140:12 140:13 140:14 140:18 140:22 140:22 141:1 141:1 141:3 141:5 141:9 141:10 141:12 141:4 141:14 141:14 141:15 141:16 141:18 141:19 141:20 141:22 142:1 142:2 142:3 142:4 142:6 142:7 142:7 142:11 142:11 142:13 142:14 142:16 142:17 142:17 142:20 142:21 142:22 143:1 143:4 143:5 143:7

**the**(301) 143:10 143:11 143:12 143:15 143:17 143:17 143:19 143:20 143:24 144: 144:3 144:4 144:7 144:11 144:12 144:15 144:16 144:21 144:21 144:22 145:2 145:2 145:3 145:6 145:7 145:8 145:11 145:11 145:12 145:12 145:14 145:17 145:18 145:20 145:20 145:23 146:1 146:3 146:4 146:5 146:6 146:7 146:9 146:13 146:16 146:17 146:18 146:19 146:20 146:23 146:24 147:1 147:2 147:5 147:9 147:11 147:16 147:22 147:22 148:1 148:3 148:4 148:8 148:9 148:11 148:12 148:13 148:14 148:18 148:19 148:21 148:22 148:23 148:23 149:1 149:3 149:5 149:6 149:7 149:8 149:8 149:12 149:15 149:16 149:16 149:18 149:20 149:22 149:23 149:23 150: 150:2 150:3 150:9 150:9 150:10 150:11 150:12 150:20 150:23 150:24 150:24 151: 151:2 151:4 151:4 151:5 151:5 151:6 151:9 151:9 151:12 151:14 151:15 151:16 151:16 151:19 151:20 151:22 152:3 152:4 152:7 152:11 152:12 152:13 152:13 152:1 152:16 152:18 152:22 152:24 153:7 153: 153:12 153:15 153:15 153:16 153:17 153:18 153:19 153:21 154:1 154:4 154:5 154:6 154:8 154:9 154:11 154:12 154:13 154:14 154:16 154:17 154:18 154:19 154:20 154:20 154:22 154:22 155: 155:4 155:5 155:6 155:7 155:9 155:11 155:17 155:18 155:19 155:19 155:20 155:21 155:22 155:23 155:24 156: 156:3 156:3 156:5 156:5 156:6 156:6 156:7 156:7 156:7 156:11 156:12 156:14 156:18 156:19 156:19 156:20 156:23 157: 157:3 157:3 157:7 157:9 157:12 157:13 157:15 157:21 157:21 157:23 157:24 158: 158:2 158:5 158:8 158:15 158:16 158:17 158:20 158:22 158:23 159:1 159:3 159:4 159:7 159:10 159:11 159:12 159:12 159:1 159:16 159:17 159:18 159:20 159:21 159:22 159:23 160:1 160:1 160:3 160:7 160:10 160:11 160:13 160:13 160:15 160:18 160:20 160:20 160:20 160:21 160:21 160:23 160:23 160:24 161:1 161:2 161:2 161:3 161:5 161:6 161:6 161:7 161:8 161:8 161:11 161:12 161:16 161:17 161:19 161:19 161:20 161:20 161:21 161:22 161:24 162:1 162:3 162:4 162:4 162:5 162:5 162:6 162:6 162:7 162:7 162:10 162:10 162:11 162:11 162:13 162:13 162:14 162:16 162:20 162:21 162:22 162:22 163:1 163:6 163:6 163:7 163:8

**the**(197) 163:9 163:10 163:12 163:12 163:13 163:15 163:17 163:19 163:19 163:21 163:23 164:1 164:3 164:5 164:5 164:6 164:6 164:7 164:10 164:11 164:11 164:13 164:14 165:16 165:19 165:21 165:23 166:3 166:4 166:4 166:5 166:6 166:9 166:15 166:20 166:22 166:22 167:2 167:4 167:7 167:8 167:9 167:9 167:10 167:13 167:16 167:21 168:4 168:7 168:10 168:11 168:14 168:15 168:17 168:17 168:18 168:19 168:19 168:20 168:21 168:24 169:1 169:3 169:3 169:4 169:4 169:5 169:5 169:7 169:7 169:9 169:15 169:17 169:18 169:20 169:22 169:23 169:23 170:2 170:3 170:3 170:5 170:7 170:7 170:8 170:10 170:10 170:11 170:11 170:13 170:15 170:18 170:21 170:22 171:1 171:4 171:4 171:6 171:6 171:7 171:8 171:9 171:10 171:11 171:11 171:12 171:12 171:13 171:14 171:15 171:16 171:16 171:16 171:17 171:17 171:18 171:19 171:21 171:22 171:22 171:23 171:23 171:24 172:1 172:1 172:4 172:5 172:5 172:6 172:7 172:9 172:10 172:14 172:17 172:17 172:20 172:23 172:23 173:1 173:4 173:7 173:10 173:17 173:18 173:21 173:22 173:24 174:1 174:3 174:7 174:8 174:9 174:14 174:18 174:19 174:19 174:20 174:20 174:22 174:23 175:1 175:1 175:3 175:4 175:7 175:9 175:10 175:12 175:13 175:14 175:15 175:15 175:18 175:19 175:21 176:1 176:5 176:6 176:10 176:13 176:16 176:20 177:1 177:5 177:7 177:10 177:13 177:15 177:18 177:19 177:19 177:20

**their**(98) 17:14 22:14 25:24 25:24 26:1 26:4 27:5 28:22 28:23 29:2 29:6 29:6 42:19 42:23 43:2 43:12 49:16 49:19 53:13 56:2 57:18 57:20 58:9 59:3 59:20 63:1 64:16 70:2 73:11 73:11 73:12 73:21 77:19 78:12 83:5 88:14 92:7 93:1 93:15 93:20 95:9 95:11 99:20 100:16 101:2 101:15 103:3 104:1 104:1 105:4 105:11 105:13 107:6 107:8 108:16 108:19 114:5 114:16 114:23 117:10 117:14 118:7 118:22 119:3 119:5 121:19 122:21 125:14 125:18 127:11 131:3 131:4 131:21 131:23 139:8 139:8 139:20 140:13 140:20 140:24 144:5 144:1 144:13 147:7 151:4 154:19 162:18 162:19 164:16 164:18 164:19 164:24 165:7 165:7 166:18 169:13 169:20 172:8

**them**(52) 17:20 22:14 26:7 26:9 37:13 38:3 39:24 40:24 41:13 42:18 43:10 51:2 52:24 61:10 61:10 61:19 62:15 64:21 64:23 67:8 74:8 78:10 81:19 87:13 90:23 91:3 96:14 100:18 103:16 105:22 106:10 107:22 110:2 120:13 139:20 146:11 147:5 151:19 153:14 153:21 154:20 159:7 164:12 164:23 166:14 166:19 168:8 169:13 170:14 172:9 176:12

**thematically**(1) 42:21
**themselves**(18) 12:3 31:4 31:21 37:17 37:21 38:12 39:9 41:4 48:20 71:17 73:16 94:6 113:17 118:13 122:15 133:1 137:5 144:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**then**(76) 11:9  11:11  13:23  13:24  14:2  14:3  14:9  14:9  14:10  14:10  20:3  24:7  28:16  28:24  31:22  34:21  35:21  46:1  47:5  49:13  53:15  53:22  54:12  54:16  55:19  56:11  56:19  59:21  69:19  69:21  70:9  70:24  76:1  83:15  84:8  84:18  84:20  96:14  97:5  97:15  103:4  108:13  108:17  109:21  113:13  120:1  120:21  120:24  121:14  122:5  125:3  126:3  126:8  126:10  126:13  127:10  127:21  129:2  138:12  138:16  140:19  142:2  153:15  153:17  154:12  155:8  159:7  159:12  159:20  160:23  166:11  170:18  171:14  174:7  174:7  176:1

**theories**(1) 78:21

**there**(144) 12:15  14:23  16:21  17:1  19:2  19:4  19:9  21:16  21:17  22:3  22:8  23:23  24:7  27:8  37:7  39:15  39:23  41:9  49:3  51:17  58:23  59:5  60:20  62:11  63:13  66:3  66:19  70:24  71:5  71:21  72:12  73:10  75:20  76:3  77:8  77:12  78:20  79:14  80:15  82:15  83:12  87:12  88:16  88:21  89:18  89:2  89:23  89:24  90:12  92:23  95:12  96:11  97:16  98:9  102:1  102:3  102:7  102:14  103:13  103:17  106:2  107:11  107:11  108:7  110:6  110:23  111:6  111:8  115:6  115:20  116:11  116:24  117:5  119:7  124:8  124:18  125:5  125:11  125:13  125:13  125:15  126:1  126:16  127:1  128:4  128:22  130:9  130:9  130:9  130:23  132:12  133:16  133:23  133:2  134:17  135:1  135:16  135:19  135:22  135:24  137:18  138:22  138:23  138:23  139:1  139:9  140:23  141:6  141:20  142:9  144:18  145:19  147:10  147:20  149:3  149:10  150:5  150:10  150:20  151:23  151:24  152:1  153:3  153:13  156:1  156:17  156:20  158:6  158:12  161:12  165:2  165:24  166:15  166:24  167:2  167:23  168:24  170:4  170:18  172:21  174:10  174:16  176:21  177:7

**there's**(59) 20:7  21:8  34:1  39:12  47:5  47:7  47:5  48:5  59:2  60:19  62:22  66:9  70:12  71:1  71:17  72:9  73:9  73:22  74:14  83:22  84:7  87:21  101:23  103:5  108:18  111:1  111:7  111:19  112:8  112:16  122:1  125:12  127:24  128:3  128:16  128:20  128:20  132:3  133:4  134:2  136:17  137:10  137:15  138:11  142:6  143:3  143:3  143:4  145:17  147:14  147:15  148:10  149:7  150:18  153:1  168:21  170:18  171:13  177:3

**therefore**(10) 21:22  27:13  29:5  32:4  32:13  40:11  43:17  80:6  166:9  167:12

**thereof**(2) 94:14  94:15

**these**(39) 17:18  17:22  22:11  27:12  30:16  31:16  32:21  47:1  52:23  53:13  65:17  66:10  67:22  74:23  78:15  78:15  78:19  82:3  83:23  91:11  93:3  108:10  110:5  111:7  115:9  116:19  119:4  119:4  131:13  132:2  147:4  150:4  151:24  152:5  152:9  156:8  165:1  169:2  173:8

**they**(206) 20:24  22:18  22:19  22:20  22:24  23:1  23:3  23:11  23:13  24:6  25:23  25:24  26:1  26:24  26:24  27:6  27:6  27:6  27:7  27:16  27:16  28:8  28:8  28:23  29:2  29:2  29:5  30:16  31:18  35:16  35:17  36:22  37:1  39:6  40:24  41:17  42:22  47:2  47:4  48:11  48:18  48:18  48:19  49:12  51:22  51:22  54:22  55:4  56:11  57:20  57:23  58:1  58:9  58:11  58:16  60:18  61:10  62:4  63:3  63:11  64:9  64:17  64:19  64:24  66:1  71:20  72:6  73:13  76:9  76:18  76:20  76:23  79:11  85:16  88:15  90:2  90:23  91:12  93:15  93:1  93:16  93:22  94:23  95:4  95:18  95:19  95:2  98:1  98:2  98:12  101:13  102:10  103:10  106:1  106:7  107:9  107:13  108:17  108:18  108:21  108:22  108:24  109:17  110:11  110:19  111:23  112:17  113:10  114:14  114:14  115:9  115:10  116:2  116:12  116:12  116:16  116:17  116:18  117:5  117:24  118:1  118:13  118:17  119:3  119:9  120:20  121:1  121:16  121:16  122:2  122:4  122:5  122:18  125:1  125:10  126:24  127:14  127:15  130:4  130:17  130:19  131:4  131:20  131:21  132:1  132:11  136:6  136:6  139:21  140:8  140:13  140:13  140:16  140:19  140:19  144:5  147:1  147:7  147:7  147:12  148:15  148:16  148:17  149:12  149:15  150:7  150:8  150:10  150:18  150:20  152:13  153:19  153:22  153:24  154:12  154:13  154:13  156:15  161:3  161:2  163:7  163:9  163:21  164:4  164:9  164:22  164:24  166:1  166:6  166:10  166:11  166:15  166:16  166:19  167:8  167:8  167:9  169:5  169:6  169:12  170:16  170:17

**they'd**(1) 64:21

**they'll**(4) 51:21  73:13  112:10  122:10

**they're**(34) 25:12  25:20  26:10  58:9  60:3  60:13  60:16  64:10  64:19  67:18  67:20  73:15  73:15  73:20  73:21  80:5  85:16  93:10  93:11  97:20  98:8  98:11  101:14  106:20  110:21  120:4  121:19  121:19  127:11  147:9  151:15  164:2  164:10  169:11

**they've**(6) 15:19  96:12  114:21  118:17  131:22  162:18

**thick**(1) 15:18

**thin**(1) 40:19

**thing**(19) 13:23  23:10  30:4  36:23  54:11  65:15  68:3  110:3  110:4  120:12  126:8  132:5  139:5  148:11  155:2  155:10  156:12  159:5  174:20

**things**(25) 16:20  17:15  18:24  19:19  33:12  45:14  45:15  52:2  78:13  103:12  103:17  110:5  117:24  130:4  136:10  137:3  138:24  148:10  154:10  155:22  161:21  164:15  166:1  166:15  172:12

**think**(198) 12:4  12:14  12:18  13:1  13:17  15:19  18:1  18:4  20:19  21:4  21:11  22:5  22:8  22:9  23:4  23:5  23:21  24:4  25:17  25:19  29:10  29:12  33:21  34:3  34:17  34:19  36:3  36:9  36:11  37:8  37:11  40:13  40:14  40:19  40:24  42:20  44:18  45:1  45:9  45:16  46:14  46:17  47:2  47:22  48:13  48:14  48:2  48:22  49:1  49:18  51:6  51:3  52:1  52:8  52:18  54:2  56:6  58:14  58:24  59:4  59:8  59:20  61:14  62:8  63:13  64:9  64:24  64:9  64:9  64:13  64:13  64:15  65:14  65:15  65:3  66:6  66:18  66:22  67:12  67:22  68:1  71:9  71:14  73:2  73:6  73:9  73:17  73:23  74:14  77:10  78:9  78:12  79:22  80:6  80:12  81:20  91:10  92:12  93:22  94:5  94:20  98:20  99:1  101:8  101:10  105:2  106:10  107:1  108:17  108:20  109:9  110:8  110:10  113:19  114:13  114:24  115:2  115:22  116:10  120:10  121:2  121:24  122:8  122:10  122:13  122:23  123:11  123:16  125:6  127:13  130:6  130:12  131:8  131:9  131:19  132:9  134:16  134:23  139:23  140:2  140:19  140:21  141:5  142:9  142:9  143:12  144:9  146:3  147:10  147:14  149:14  152:18  153:6  153:7  153:7  153:8  153:10  154:18  154:18  155:2  155:9  155:12  157:18  158:2  158:11  158:19  158:21  161:16  162:16  165:6  168:5  168:8  168:11  168:13  169:5  170:10  172:18  172:22  173:18  173:19  175:5  176:19

**thinking**(3) 46:11  77:14  80:19

**thinks**(4) 17:4  17:18  63:23  112:18

**third**(12) 3:51  5:22  40:3  42:15  60:18  106:14  109:9  132:21  160:24  169:12  171:8  173:1

**this**(273) 12:16  16:18  17:7  18:24  21:9  21:12  22:2  22:6  23:8  23:15  23:19  23:22  24:2  24:10  24:13  28:1  29:1  29:12  31:4  31:6  31:20  32:9  32:10  33:21  34:3  34:9  34:11  34:20  35:5  35:6  35:19  36:5  36:10  38:21  40:1  40:8  40:10  40:13  40:16  40:17  40:19  41:14  42:8  42:18  42:20  43:20  44:1  44:13  44:16  45:1  45:19  46:10  48:3  48:20  49:11  50:2  50:8  50:9  50:18  50:19  50:21  50:22  51:3  51:7  51:23  51:23  52:4  52:5  52:12  52:14  52:14  52:17  53:6  53:17  54:5  54:11  55:9  56:2  56:5  57:17  58:21  60:6  62:4  62:7  63:19  64:4  64:16  65:7  65:16  66:5  66:20  68:4  68:9  69:14  69:14  69:15  69:20  70:16  71:7  71:11  72:6  72:6  72:11  73:23  74:5  74:23  77:14  80:1  82:18  82:21  83:4  85:18  86:10  86:17  86:18  87:15  89:14  89:17  89:19  90:4  90:8  90:13  91:5  91:19  91:23  92:4  92:6  92:8  92:8  92:10  92:22  93:24  94:5  95:15  96:4  96:5  97:10  98:13  98:15  98:21  98:22  99:8  99:12  100:20  100:23  101:3  101:9  101:13  101:19  104:19  104:20  105:15  105:19  105:21  105:23  106:2  106:5  106:7  106:9  107:15  109:10  109:15  110:2  110:5  110:9  110:13  110:18  111:2  112:22  113:2  113:15  114:4  114:13  114:16  114:19  114:20  115:4  115:7  115:8  116:5  117:15  119:1  120:16  121:24  122:9  122:13  122:16  123:9  123:18  124:8  125:5  126:15  128:18  128:22  129:21  130:18  130:16  131:2  131:5  132:1  132:3  132:15  132:16  135:1  138:10  138:18  138:20  139:5  143:8  144:10  144:19  145:23  146:7  146:8  148:22  149:13  149:21  149:22  150:15  150:16  151:3  151:10  152:1  152:24  153:10  154:10  154:21  155:1  155:5  155:8  155:10  155:12  155:23  156:12  156:24  157:15  157:15  157:20  158:20  158:22  159:4  159:21  160:15  160:16  162:8  163:6  163:18  164:2  164:11  164:17  164:21  165:3  165:8  166:22  166:22  168:10  169:12  169:15  170:23  171:5  172:6  172:18  173:1  173:3  173:7  173:10  173:16  176:19  176:20  176:23  177:14

**thomas**(1) 2:16
**thornburg**(1) 5:38
**thoroughly**(1) 116:23
**those**(67) 11:22  12:2  12:2  13:10  13:24  15:16  17:15  19:6  22:12  22:16  23:8  35:8  38:12  39:6  39:9  39:19  40:5  41:6  41:10  43:10  44:14  45:11  45:21  48:7  51:21  59:14  59:23  60:15  60:21  68:8  74:8  75:24  76:17  78:9  78:13  79:11  80:3  80:15  80:16  81:5  81:15  87:15  93:9  93:15  94:19  95:21  96:1  104:11  105:1  113:6  126:3  126:16  128:2  128:9  131:2  135:20  144:6  148:6  153:4  153:21  156:17  157:23  161:3  166:13  167:22  170:5  171:12

**though**(11) 51:6  61:13  65:20  111:22  129:20  132:7  144:20  146:18  146:23  154:11  162:12

**thought**(13) 14:8  14:9  16:19  17:20  24:10  49:12  79:24  127:10  127:14  147:5  148:23  158:6  164:4

**thoughtful**(2) 33:23  53:24
**thoughtfully**(1) 34:11
**thoughts**(1) 16:6
**thousand**(2) 24:4  112:3
**thousands**(2) 159:2  165:22
**threats**(1) 52:20
**three**(23) 11:7  16:20  17:10  22:8  39:23  39:24  44:14  57:7  80:3  80:15  83:12  84:15  89:18  90:21  91:11  108:9  109:8  120:24  133:4  133:7  135:20  159:2  165:23

**threshold**(1) 79:8

| Word | Page:Line |
|---|---|

**through**(23) 11:10  11:11  11:12  13:8  17:20  27:1  28:20  30:9  37:23  38:20  42:21  43:9  47:1  69:20  97:15  111:13  120:19  131:22  144:7  144:15  153:15  153:15  157:15

**throughout**(3) 26:14  92:22  105:17
**thrown**(2) 92:19  92:20
**thus**(1) 48:9
**tied**(1) 115:23
**till**(2) 118:4  176:2
**time**(48) 13:3  14:21  18:1  18:3  18:5  23:15  24:14  30:9  30:12  34:18  34:20  36:4  41:7  41:12  42:20  46:9  46:15  47:6  49:5  49:13  51:3  69:19  76:19  78:11  81:9  83:5  84:8  89:8  107:22  131:6  139:14  140:13  144:12  148:11  149:24  150:2  154:22  155:17  156:3  156:23  157:2  162:13  162:16  163:9  166:14  166:20  167:15  169:19

**timeframe**(5) 118:16  124:13  128:21  163:21  164:21

**times**(3) 3:29  114:20  152:11
**timesheets**(3) 126:14  126:22  127:23
**timing**(2) 34:16  104:16
**title**(1) 31:21
**today**(27) 11:8  12:12  12:19  14:23  14:24  22:3  24:12  24:18  30:11  33:24  34:15  48:1  82:19  82:22  88:7  90:23  97:12  112:2  122:19  130:19  133:9  135:21  162:15  164:9  175:9  177:1  177:7

**today's**(2) 96:6  121:4
**together**(9) 14:10  24:5  36:21  91:7  95:9  112:16  143:10  172:7  172:13

**told**(11) 18:6  19:1  44:3  44:8  87:17  114:4  119:21  125:21  125:23  126:8  168:15

**toll**(1) 83:21
**tolling**(1) 17:2
**tom**(1) 157:8
**too**(12) 13:11  14:8  36:1  39:15  40:13  44:17  69:22  69:23  78:9  138:12  141:11  146:5

**took**(6) 42:11  61:9  61:18  140:4  163:9  168:16

**tools**(1) 52:8
**topic**(1) 24:9
**torres**(3) 5:11  10:16  69:2
**tossed**(1) 171:15
**totality**(2) 81:4  81:6
**touch**(1) 18:23
**touched**(1) 92:3
**touchstones**(2) 60:6  74:13
**tough**(2) 49:7  49:8
**traci**(1) 177:24
**tracking**(1) 120:18
**trade**(1) 9:11
**trading**(1) 162:5
**tramples**(1) 141:12
**transaction**(5) 25:24  29:12  31:19  32:4
**transcript**(3) 1:16  1:48  177:19
**transcription**(2) 1:41  1:48
**transfer**(5) 28:15  28:17  28:22  31:21  99:20
**transition**(1) 70:17
**transparency**(2) 111:10  123:20
**trb**(2) 15:17  16:15
**tread**(1) 168:23
**treat**(2) 91:10  121:24
**treated**(1) 31:5
**treatment**(8) 19:17  21:14  63:14  74:4  75:21  76:20  76:20  104:14

**trehan**(1) 7:26
**trend**(3) 78:18  78:18  79:1

**trial**(11) 21:24  23:23  84:12  84:16  118:13  122:6  127:17  128:18  145:12  145:14  173:5

**tribune**(5) 1:7  6:3  11:6  60:19  102:17
**tried**(8) 85:14  111:9  114:11  151:10  157:22  158:12  163:12  168:2

**tries**(1) 152:20
**troubled**(1) 122:10
**troubling**(1) 150:16
**true**(5) 43:23  46:17  61:22  83:7  171:22
**truly**(2) 111:15  130:16
**trust**(40) 3:19  6:31  8:34  9:40  10:16  18:18  19:1  21:19  21:20  25:1  25:2  30:11  31:2  31:16  33:3  34:8  35:15  36:17  37:8  37:15  37:19  38:8  44:18  45:12  48:15  49:10  53:20  57:3  58:22  59:1  60:16  61:4  61:7  61:14  63:23  77:11  85:14  127:8  174:21  174:23

**trust's**(8) 20:18  33:10  45:4  46:3  59:19  77:9  85:20  85:23

**trustee**(18) 18:20  25:4  26:16  31:7  31:11  33:6  36:18  38:9  39:16  57:8  57:9  57:11  61:22  62:3  62:10  70:7  70:8  74:1

**trustee's**(4) 31:7  37:16  39:8  67:6
**trustees**(12) 43:12  45:3  58:6  59:14  61:24  62:23  63:1  67:23  71:18  73:10  73:19  74:6

**truth**(1) 171:10
**try**(14) 52:7  61:8  83:22  96:12  109:21  110:5  115:5  122:16  149:21  151:11  153:8  156:6  164:19  174:6

**trying**(12) 33:24  55:21  67:17  68:9  68:10  109:20  116:15  148:17  151:18  152:19  154:17  159:24

**tuesday**(3) 89:4  89:5  89:9
**tune**(1) 162:15
**turn**(14) 24:16  40:5  76:7  94:3  104:16  120:21  124:4  133:23  137:15  146:11  152:1  157:12  158:15  166:16

**turned**(3) 35:12  40:18  107:13
**turning**(3) 41:21  70:3  100:3
**turnover**(2) 98:12  100:1
**turns**(1) 125:18
**tweaks**(1) 138:23
**two**(50) 19:1  19:19  20:11  22:13  27:4  34:7  35:6  37:10  45:2  52:15  58:22  62:15  67:5  77:13  78:19  80:12  92:18  92:19  92:20  93:18  99:12  106:17  107:12  107:13  109:8  110:22  115:4  129:16  133:6  143:15  147:3  148:6  149:21  159:1  165:23

**type**(7) 50:9  96:9  97:13  104:21  105:10  109:19  115:11

**types**(1) 97:16
**u.s**(1) 143:18
**ultimate**(2) 54:18  166:22
**ultimately**(7) 22:2  53:13  54:4  85:18  88:18  160:20  167:7

**um-hum**(2) 14:7  26:21
**un-conflicted**(2) 93:14  116:11
**un-liquidated**(1) 49:24
**unable**(2) 21:22  144:13
**unconsummate**(1) 32:3
**uncovered**(1) 166:15
**under**(36) 29:15  30:17  32:16  32:23  32:24  37:15  39:10  43:4  45:6  48:17  54:6  57:18  59:10  59:11  59:14  60:9  60:11  61:4  62:7  66:9  66:10  70:7  71:5  72:5  74:11  79:5  79:6  86:6  97:14  97:16  97:21  121:16  132:20  143:24  171:5  173:11

**underlying**(12) 37:17  38:7  38:13  39:17  59:24  60:17  72:2  75:22  76:5  111:12  141:13  151:3

**understand**(13) 11:18  13:24  18:14  18:22  30:12  38:19  50:20  55:13  78:10  83:1  100:19  119:8  130:19

**understanding**(4) 17:10  149:7  176:21
**understood**(7) 25:18  28:5  56:21  81:1  81:17  165:4  168:16

**undertaken**(1) 113:16
**undertaking**(1) 17:10
**undertook**(1) 62:5
**underway**(1) 61:17
**undisputed**(2) 39:14  82:7
**unequivocal**(2) 145:4  146:2
**unfinished**(1) 173:12
**unfolded**(2) 92:14  120:19
**unfortunately**(3) 28:14  80:4  84:15

**unifies**(1) 91:11
**unique**(3) 78:19  130:12  162:12
**united**(2) 1:1  1:18
**unity**(1) 134:5
**universal**(1) 170:18
**universe**(1) 116:21
**unknown**(3) 49:24  177:8  177:11
**unless**(9) 36:6  65:8  72:18  73:17  100:8  138:13  157:6  167:14  173:9

**unlike**(3) 35:20  58:22  70:21
**unlikely**(1) 30:7
**unnecessarily**(1) 144:3
**unnecessary**(3) 40:1  40:7  40:12
**unpacking**(1) 45:17
**unpaid**(3) 57:22  58:2  73:20
**unreasonable**(7) 40:4  42:16  42:19  47:12  48:12  49:17  71:9

**unreasonableness**(1) 91:22
**unresolved**(1) 11:23
**unsay**(1) 48:6
**unsecured**(10) 9:5  9:42  15:13  31:23  34:4  35:3  40:9  73:12  73:12  157:10

**unsubordinated**(2) 37:22  59:12
**untangle**(1) 106:24
**until**(20) 23:1  31:18  35:24  53:21  56:10  76:9  76:12  78:19  83:8  86:2  86:15  100:8  104:9  112:22  124:10  131:6  139:7  153:16  174:5  174:17

**untoward**(1) 150:11
**unusual**(1) 152:9
**upheld**(1) 91:13
**upon**(11) 26:18  27:1  31:11  31:12  31:17  31:21  35:10  41:18  45:23  55:5  165:5

**upside**(1) 166:16
**urged**(2) 45:19  45:23
**use**(14) 30:11  34:22  49:4  103:19  104:3  108:22  109:11  109:21  118:18  121:21  131:2  132:5  144:23  150:2

**used**(5) 17:22  26:13  62:2  91:18  118:12
**useful**(3) 34:11  36:20  130:18
**uses**(1) 100:15
**using**(3) 143:3  172:1
**usual**(1) 35:20
**usually**(2) 25:13  46:5
**utilizing**(1) 155:20

**vail**(1) 7:5
**vain**(1) 83:22
**validity**(2) 117:15  169:7
**valuation**(2) 103:10  129:5
**value**(10) 93:12  103:15  114:23  115:6  116:15  116:22  117:5  167:8  171:16  171:17

**various**(6) 11:10  52:20  63:19  78:16  85:15  161:17

**vehemently**(1) 129:20
**version**(1) 88:10
**very**(56) 18:8  23:1  23:13  30:7  30:11  30:23  31:13  32:19  35:16  37:23  40:1  40:15  40:19  41:18  41:22  42:13  42:20  42:23  44:16  52:3  57:20  58:23  60:7  60:9  60:11  60:22  61:1  73:1  73:17  73:17  83:14  87:17  94:23  118:1  130:12  131:17  131:21  135:7  135:11  141:13  148:13  148:13  148:14  148:14  150:1  153:22  153:22  155:22  159:9  159:23  160:5  161:5  162:2  162:15  175:4  177:13

**vested**(1) 93:9
**viable**(3) 127:10  127:12  127:14
**view**(15) 25:22  42:22  43:13  44:2  47:14  48:23  75:10  79:6  88:14  112:7  125:24  145:8  156:12  158:17  162:3

**views**(2) 24:9  42:20
**vigor**(1) 169:1
**vigorous**(1) 93:3
**violent**(1) 15:23
**virtually**(2) 88:11  162:13
**virtue**(4) 34:15  34:17  93:8  118:14
**vis-a-vis**(1) 38:6
**void**(1) 32:22
**vote**(20) 37:19  40:10  40:11  40:21  40:23  45:20  51:19  51:23  53:14  54:22  55:2  55:3  56:16  61:16  63:19  64:8  64:10  64:13  67:8  100:14

**voted**(4) 22:17  50:1  51:8  55:4
**votes**(8) 52:1  52:22  63:20  64:17  64:22  68:10  74:8  74:8

**voting**(28) 22:10  45:5  46:22  47:15  47:22  49:20  50:16  52:13  52:15  52:24  53:3  53:9  54:16  57:12  63:22  64:4  64:5  64:20  65:2  65:6  65:6  65:17  68:18  74:20  77:21  86:1  86:20

**wait**(1) 82:24
**waive**(2) 108:15  150:19
**waived**(1) 133:8
**waiver**(3) 108:22  132:22  147:20
**waiving**(4) 133:1  141:16  142:4  142:7
**walk**(2) 37:23  38:20
**walsh's**(1) 39:14
**wamu**(1) 166:6
**want**(41) 16:5  45:21  46:9  47:2  53:6  54:3  54:10  54:11  56:16  64:19  68:14  69:9  78:7  79:6  89:16  95:8  95:14  107:21  107:22  108:15  108:22  109:1  110:4  110:5  111:14  113:19  118:18  119:3  119:9  121:1  122:2  122:4  136:6  136:6  149:14  155:6  157:11  157:18  166:19  175:1  175:5

**wanted**(5) 16:20  78:13  102:7  148:8  174:6
**wants**(8) 18:1  25:5  42:6  91:1  113:13  128:6  128:7  137:3

**wardwell**(1) 2:28

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| was(219) | | wear(1) 115:10 | | what(161) 14:5 17:16 18:6 22:5 23:6 25:7 | | which(113) 11:8 11:10 11:11 11:15 11:18 | |

was(219) 11:14 13:23 14:6 16:3 17:1 18:24 21:1 23:2 24:10 26:13 26:13 27:7 27:8 27:18 27:20 27:21 28:1 30:15 30:17 31:17 33:8 35:5 36:1 45:7 45:18 45:19 46:8 46:16 46:19 47:1 47:8 48:2 48:3 48:4 49:10 49:22 52:14 53:14 53:22 53:23 55:12 66:19 70:5 70:16 72:15 75:12 75:20 75:23 76:8 76:13 76:21 77:19 79:3 79:7 80:19 81:7 82:13 83:4 83:6 83:7 83:15 87:12 87:12 87:20 88:12 89:21 89:23 89:24 90:22 90:23 91:16 92:16 93:19 93:22 94:1 96:8 96:19 98:1 99:21 99:22 99:22 99:24 100:2 100:3 102:4 102:6 102:8 103:7 103:13 103:17 103:22 103:23 104:9 106:3 107:10 107:12 109:16 111:14 112:4 114:7 115:12 116:1 117:16 118:5 120:22 121:6 121:11 123:5 125:4 125:6 125:15 125:16 125:17 125:18 126:17 126:20 127:10 127:14 128:5 129:20 130:1 133:5 133:6 135:13 135:16 135:18 135:19 135:19 135:22 135:23 135:24 135:24 136:2 136:21 137:8 137:16 137:20 137:24 138:1 138:13 138:15 139:6 139:7 139:8 139:9 139:12 139:15 139:17 139:18 139:1 142:17 144:2 144:12 145:4 145:7 146:1 147:5 148:23 148:23 149:1 149:4 149:13 149:22 150:5 150:6 150:10 150:12 150:23 151:18 152:19 152:24 155:14 155:17 155:18 155:21 155:23 156:2 156:11 156:1 158:2 158:4 158:6 158:11 158:13 159:10 159:12 159:14 160:18 161:6 161:22 162:2 162:3 162:22 163:6 163:7 163:9 163:22 164:19 165:10 165:11 165:12 167:9 167:2 168:8 168:12 168:18 169:9 170:4 170:10 171:1 171:2 171:24 172:9 172:18 172:21 176:19 176:24 177:15

washington(2) 2:25 2:46

wasn't(10) 28:3 48:4 50:20 139:16 148:22 158:10 163:11 163:13 164:12 171:2

water(1) 121:20
waterfall(1) 171:19
waterstone(5) 20:14 29:19 29:22 30:2
watkins(2) 3:48 29:21
way(40) 20:19 26:6 32:20 33:7 33:10 34:14 39:6 43:16 44:18 45:20 47:8 50:1 52:24 55:7 62:20 63:16 65:8 73:4 73:5 81:14 92:13 92:17 94:6 94:9 96:4 97:10 110:18 111:6 115:15 115:19 117:1 120:18 129:19 131:22 136:8 139:22 143:1 161:24 164:5 168:18
ways(5) 25:16 40:18 60:21 115:4 144:20
we'd(4) 44:20 74:19 89:4 146:6
we'll(21) 12:17 13:2 14:15 23:13 36:12 38:15 41:8 55:18 86:15 89:11 118:18 120:18 120:21 120:24 121:20 122:15 122:15 174:17 175:7 176:2 176:18

we're(58) 12:18 15:14 20:24 21:2 21:22 24:12 28:9 33:24 34:2 34:14 41:20 43:19 49:16 49:18 66:5 66:12 68:9 68:10 74:9 75:14 79:13 81:3 82:16 86:3 86:17 88:19 90:9 90:9 90:11 90:15 95:9 96:12 100:10 102:13 113:9 119:2 121:9 124:12 127:17 129:5 138:17 140:3 148:20 150:15 153:10 153:13 154:16 155:20 156:23 164:14 164:14 167:11 174:17 175:4 176:20 176:23 177:4 177:11

we've(46) 39:13 40:4 42:19 42:24 45:23 46:7 46:18 48:12 50:5 51:2 54:20 56:13 63:6 66:6 78:22 80:2 83:21 86:10 87:2 92:5 96:13 97:11 99:2 100:4 101:9 103:8 112:14 117:22 120:1 124:13 124:15 126:4 130:16 142:16 146:6 151:1 151:8 151:10 154:18 157:4 159:9 166:12 168:23 171:3 176:22 177:3

weaknesses(1) 95:3

weariness(1) 93:18
wearing(2) 93:5 93:10
weary(1) 123:23
week(5) 22:13 24:14 84:16 89:5 156:18
weeks(3) 23:15 159:2 165:23
weigh(1) 36:2
weight(1) 112:6
weil(1) 10:11
weiss(2) 7:9 10:6
weitman(1) 6:6
welcome(3) 16:9 18:2 29:24
well(103) 11:22 13:4 13:11 14:5 15:22 16:1 16:12 16:22 21:3 21:18 22:6 22:6 22:11 22:19 22:21 23:14 24:8 27:12 29:7 32:13 38:10 40:15 42:1 44:1 44:1 46:17 49:6 49:7 52:9 54:19 55:12 55:21 59:1 63:15 65:3 66:3 71:7 75:23 78:14 79:22 82:22 85:3 85:20 91:6 99:7 106:4 109:23 110:17 112:1 112:11 114:3 114:11 114:17 115:3 116:4 117:22 119:8 121:3 122:23 123:10 125:4 125:11 126:16 126:17 127:4 128:22 129:1 130:5 130:10 132:1 132:10 136:19 141:12 141:20 142:6 148:10 149:3 149:13 150:13 152:3 153:5 153:6 153:8 154:1 154:5 154:9 156:11 157:4 158:10 160:3 160:5 160:13 160:19 161:3 161:14 163:18 165:11 168:19 168:22 169:23 172:19 172:20 173:21

wells(2) 4:37 10:21
went(8) 100:24 113:17 126:14 171:16 172:17 172:18 176:21 176:23

were(113) 13:17 13:22 19:23 22:12 23:11 26:2 26:15 27:1 27:22 29:2 29:2 29:5 30:10 30:16 31:22 31:23 31:24 32:12 32:21 35:16 35:17 39:15 45:15 48:7 49:8 53:13 58:2 58:16 60:22 61:10 61:12 61:27 67:6 68:8 69:7 72:1 76:18 79:23 80:12 80:16 81:13 82:14 83:4 83:13 87:15 88:6 88:21 88:21 90:2 91:12 93:15 94:19 95:15 96:10 100:13 103:13 103:18 106:10 107:1 111:17 111:21 116:11 119:12 119:21 120:5 120:7 121:10 121:13 122:10 125:10 125:10 126:21 127:9 128:15 131:10 131:1 133:11 135:11 136:22 137:3 138:23 138:23 138:23 144:13 148:14 148:15 148:16 148:17 149:24 151:18 152:5 152:7 152:19 155:16 155:18 155:24 156:1 156:1 157:15 160:10 162:14 162:20 164:24 164:24 166:4 166:6 167:21 167:23 167:24 170:10 170:24 171:5 176:23

weren't(4) 50:21 121:10 150:11
wesch(1) 7:48
west(3) 1:34 4:24 5:40
wharton(2) 7:9 10:6

what(161) 14:5 17:16 18:6 22:5 23:6 25:7 25:7 25:11 26:17 27:22 28:14 28:17 29:2 31:14 31:17 31:23 32:3 32:14 33:24 35:5 35:10 36:11 38:2 39:21 42:4 43:14 44:4 44:6 44:12 44:19 46:13 46:14 47:4 47:8 47:9 48:8 48:8 48:9 48:11 48:12 48:23 49:18 49:20 49:21 50:4 51:18 53:4 55:4 55:17 56:10 58:5 59:15 60:2 60:5 60:14 61:10 64:15 64:20 67:17 67:19 67:20 67:22 68:10 71:1 71:6 71:6 72:15 73:11 73:15 73:20 76:17 77:4 77:6 78:1 78:23 79:1 80:15 80:18 81:1 82:20 84:24 85:5 86:11 88:19 89:17 90:3 91:11 93:16 93:24 93:24 97:13 104:21 105:11 106:6 106:12 107:15 110:15 110:15 110:20 110:21 110:22 111:1 113:20 114:15 115:18 116:2 117:1 117:17 117:17 117:19 118:3 120:4 120:11 121:6 123:19 125:24 127:15 128:11 128:18 130:11 131:12 132:13 135:11 136:6 137:18 138:5 140:20 141:17 144:15 146:22 148:20 148:23 149:3 149:8 150:13 150:15 151:18 152:3 152:19 152:20 153:3 153:5 155:14 155:16 155:18 156:22 163:10 164:24 165:2 165:3 166:8 166:18 166:24 167:8 167:24 169:15 170:7 172:8 173:12 175:18 176:18 176:22

what's(13) 38:20 46:22 55:20 64:14 64:15 89:20 106:23 117:11 117:12 134:18 147:2 161:16 165:17

whatever(9) 17:13 34:22 54:12 61:21 84:6 114:23 140:11 169:3 169:11

whatsoever(3) 49:19 59:2 144:17
when(51) 15:19 17:23 22:2 25:5 30:10 32:12 34:8 45:2 48:19 56:5 60:22 62:4 68:9 71:8 76:11 76:18 77:6 85:18 93:5 93:10 99:10 102:9 106:1 106:22 114:4 117:21 131:2 131:20 133:3 133:4 135:6 138:7 142:5 144:19 147:4 148:9 150:12 152:22 153:2 160:10 161:1 162:20 163:5 166:3 166:6 167:7 170:23 170:24 173:3 175:7 176:2
whenever(2) 78:21 140:2
where(56) 16:18 16:21 18:24 22:10 26:18 31:21 35:20 43:19 64:19 64:21 64:24 74:1 74:8 77:8 79:9 81:17 84:6 94:6 95:15 95:20 102:21 106:23 107:10 108:12 109:1 109:20 110:10 113:10 114:13 114:18 115:5 116:14 116:15 123:7 125:8 128:1 130:18 134:6 134:8 134:11 137:16 138:13 145:6 145:23 148:1 151:17 152:6 155:3 162:16 162:17 167:11 169:21 170:22 171:2 172:6 174:4

whereupon(1) 177:15
wherever(1) 121:11
whether(40) 16:5 20:8 21:13 22:16 22:17 23:8 43:2 51:24 53:24 72:7 74:1 74:2 80:13 83:23 89:19 89:21 89:23 91:16 91:23 94:1 98:8 105:7 105:8 105:10 111:16 113:23 114:2 117:22 121:5 123:8 123:12 124:8 127:15 133:10 140:10 142:2 143:2 154:7 160:9 160:10

which(113) 11:8 11:10 11:11 11:15 11:18 11:23 11:24 14:16 14:20 14:22 15:15 16:20 19:23 21:1 29:23 31:1 31:4 31:17 32:9 32:19 35:7 35:24 39:4 40:22 41:3 42:16 45:16 48:2 48:15 50:13 53:20 57:5 57:8 57:18 57:21 59:8 59:13 61:2 63:3 63:3 68:1 69:16 70:7 71:3 71:4 73:3 77:14 80:8 80:15 85:21 86:1 87:9 87:20 88:13 89:6 90:11 92:17 93:6 94:3 96:7 97:19 99:3 99:22 101:14 102:14 103:23 104:6 105:15 105:20 107:1 107:9 107:17 109:12 109:16 114:7 115:24 116:17 116:18 116:23 117:6 119:9 120:6 126:12 126:14 126:15 135:1 137:2 137:22 138:19 138:20 139:3 139:10 140:8 140:21 141:6 143:18 145:7 145:19 151:16 152:5 152:9 157:17 159:6 159:11 159:11 159:17 162:4 163:4 163:5 164:4 164:6 165:20 166:21

while(2) 67:13 80:4
white(3) 4:46 10:21 119:1
whitehall(2) 107:9 143:18
whittle(1) 51:18
whittman(1) 8:24
who(40) 12:2 19:7 20:13 22:13 23:7 25:10 35:8 40:22 42:6 48:23 67:8 66:18 78:9 93:21 98:22 98:23 99:8 99:19 101:1 101:15 102:16 103:15 104:22 107:4 110:20 113:13 121:10 121:10 121:10 126:6 132:23 132:23 144:11 154:5 169:4 172:4 172:5 172:16 172:16 175:18

who's(2) 12:6 36:10
who've(2) 24:17
whole(5) 54:11 64:11 136:9 151:3 168:21
whom(3) 91:9 141:15 142:7
whose(2) 44:9 104:23
why(21) 22:6 22:6 35:17 48:23 50:19 50:20 51:4 52:12 52:13 52:18 59:18 107:1 110:7 110:20 117:20 117:20 121:23 127:4 127:16 128:4 130:19

wide(1) 176:23
widgets(3) 27:5 27:6 27:7
wiley(1) 2:42
will(91) 12:15 13:21 14:22 14:24 16:1 17:16 22:20 23:16 23:20 24:2 31:7 33:6 33:7 33:12 34:3 34:22 35:5 35:10 38:3 40:10 42:5 43:15 45:2 45:14 45:20 48:18 48:18 51:17 52:2 52:21 54:15 56:10 57:20 58:7 58:8 62:5 62:6 62:11 63:19 63:19 66:3 66:23 67:20 68:1 73:14 74:22 77:5 79:16 80:7 82:9 84:7 84:19 85:6 85:6 85:7 85:16 85:24 86:2 86:20 88:16 91:15 107:2 113:3 113:14 115:24 116:22 120:17 122:17 124:7 125:24 128:18 129:24 130:2 130:4 130:9 131:5 149:4 151:19 152:12 154:6 158:3 160:12 160:12 161:11 162:6 170:12 173:11 173:15 176:3 176:11 177:14

william(3) 3:20 4:5 85:20
willing(5) 61:12 90:15 96:8 116:8 117:11
wilmer(1) 6:43
wilmington(59) 1:11 1:36 2:9 2:39 3:9 3:19 3:22 3:45 4:9 4:26 4:43 5:8 5:29 5:35 5:41 6:31 9:40 11:1 18:18 19:1 20:18 20:20 21:19 21:20 21:23 25:1 25:2 30:11 31:2 31:16 33:3 33:10 34:8 35:15 36:17 37:8 37:14 37:19 38:8 41:8 45:4 45:12 46:3 48:15 49:9 53:20 58:22 59:1 59:19 60:15 61:4 61:7 61:13 77:9 77:11 85:14 85:23 174:21 174:23

win(1) 13:18
wind(2) 122:9 122:18
winds(1) 113:2
winfree(1) 4:6
winner(2) 158:9 158:11
wiped(2) 114:18 116:14
wires(1) 8:41

| Word | Page:Line |
| --- | --- |

**wish(5)** 11:23 14:11 17:9 63:11 73:13
**wishes(3)** 48:6 89:4 175:18
**with(205)** 12:5 12:5 13:2 14:9 14:15
14:20 15:3 15:16 16:19 18:23 19:1 19:9
19:15 21:2 21:20 23:23 30:4 30:14 31:22
32:6 32:23 36:10 36:22 37:3 38:11 41:9
42:5 43:11 46:2 46:8 46:14 50:2 50:8
52:6 54:8 56:8 57:15 57:19 59:5 63:15
63:22 64:11 64:20 66:22 69:4 70:10 70:16
71:11 73:3 73:7 74:4 75:19 77:1 77:10
77:13 77:16 77:19 78:1 78:7 79:3 80:3
80:8 80:14 80:16 81:5 81:19 82:2 83:6
83:8 85:14 86:4 86:7 86:16 87:18 87:21
87:22 88:7 88:19 89:3 89:5 89:6 90:10
91:2 92:9 92:19 93:9 93:18 96:5 98:13
99:3 99:5 99:13 99:17 100:8 100:20 101:
101:13 101:15 101:20 101:23 102:5 102:8
102:9 102:16 102:20 102:23 104:4 105:15
109:24 110:11 112:1 112:7 112:11 112:13
113:10 113:17 116:19 117:13 117:18 120:
120:11 120:13 121:2 122:10 122:18
122:19 125:8 126:4 126:5 126:6 126:7
127:21 129:21 130:8 130:11 130:14 130:2
131:21 131:22 132:6 132:21 133:17 134:
134:16 134:22 135:3 135:4 135:6 136:21
138:17 140:6 142:17 144:1 144:4 145:2
145:10 145:16 146:2 146:22 147:1 147:3
148:3 148:17 148:20 150:1 150:4 150:9
151:14 151:18 151:24 152:20 153:8 153:12
153:18 154:17 154:19 156:5 157:1 157:2?
158:12 159:12 159:21 160:9 160:18 161:?
162:7 163:15 163:19 165:12 165:13 165:1?
167:1 170:2 170:3 170:15 171:10 171:22
173:17 173:23 173:24 174:8 175:13 176:8
176:20 177:2

**withdraw(2)** 17:8 26:3
**withdrawn(1)** 31:11
**withdrew(1)** 104:9
**withheld(1)** 143:5
**withhold(1)** 121:18
**withholding(2)** 128:17 143:3
**within(17)** 27:16 29:12 51:9 51:11 57:17
82:11 82:14 104:22 106:19 116:10 140:1
141:7 141:8 141:18 142:19 144:4 144:12
**without(23)** 17:8 17:14 25:8 50:10 53:7
53:7 67:8 71:14 77:17 86:21 114:24
132:12 133:1 136:19 137:4 141:16 142:4
142:7 143:16 145:10 147:19 149:5 151:20

**witness(1)** 118:1
**won't(10)** 12:22 48:19 51:3 51:22 59:3
84:13 118:5 123:10 163:11 165:13

**wool(1)** 9:18
**word(4)** 26:13 35:6 67:2 139:17
**words(3)** 48:7 144:23 147:13
**work(15)** 43:7 44:5 44:7 46:11 65:2 65:7
78:12 111:6 143:10 147:4 147:4 156:24
157:2
**worked(4)** 44:16 103:10 156:5 157:19
**working(5)** 85:11 86:8 86:18 156:8 167:11
**works(3)** 26:6 73:4 97:11
**world(4)** 66:14 66:18 103:17 138:9
**worry(1)** 20:23
**worst(1)** 12:21
**worth(4)** 52:4 61:10 90:13 158:14

**would(169)** 12:1 14:2 15:1 16:9 17:11
18:4 19:24 24:4 24:5 27:10 30:19 31:14
31:18 32:6 34:19 37:1 38:1 40:5 41:10
41:18 41:21 41:23 43:22 46:6 46:20 47:1
49:6 49:12 49:14 50:2 50:3 50:24 51:5
52:17 54:14 57:12 58:3 58:5 60:5 61:3
61:23 64:1 65:15 66:22 67:5 67:7 68:7
69:19 70:8 72:2 72:3 72:4 72:4 72:5
75:11 77:20 77:21 79:9 79:24 80:10 80:19
80:22 85:1 86:11 88:14 88:19 90:10 90:5
91:13 93:14 98:5 99:5 100:7 102:18
102:19 103:16 103:18 103:21 103:22 104:
106:11 107:18 108:9 108:23 109:12 110:7
110:8 110:9 110:11 110:15 110:15 110:22
113:19 117:6 117:11 119:6 120:6 121:6
121:15 121:15 122:23 122:24 123:1 123:3
123:17 124:4 124:6 125:5 125:6 125:7
127:17 127:16 129:3 129:4 131:9 131:12
131:12 131:19 131:23 132:3 136:9 136:21
137:6 138:7 138:15 138:16 138:16 140:11
141:10 141:11 142:7 143:7 144:16 144:16
144:18 146:23 150:21 150:23 151:11
151:23 152:1 152:13 156:15 158:6 158:22
160:10 160:21 160:23 161:10 162:23
163:10 163:14 164:20 165:3 165:10 165:?
165:15 166:11 166:14 167:12 168:5 168:?
168:14 171:1 171:22 172:22 173:6 174:6 174:14
176:24

**wouldn't(15)** 22:3 55:14 61:9 61:9 63:5
66:12 71:19 125:5 148:4 151:12 157:18
158:8 161:4 165:15 165:16

**wrapping(1)** 92:18
**wrecks(1)** 74:10
**write(1)** 173:11
**writing(4)** 98:8 101:15 138:11 165:11
**written(9)** 68:17 98:9 111:16 111:19 119:9
119:11 119:13 119:17 137:4

**wrong(8)** 20:20 50:19 75:14 93:22 99:1
125:19 133:22 169:6

**wrote(2)** 53:17 166:17
**www.diazdata.com(1)** 1:45
**yeah(6)** 42:8 113:6 118:1 145:16 168:16
170:1

**year(4)** 49:11 91:19 93:19 125:16
**yes(19)** 15:5 18:16 50:16 52:1 66:23 81:2?
81:21 82:1 82:1 86:7 89:15 116:16 118:?
137:1 138:22 141:6 145:13 160:14 170:4

**yesterday(2)** 13:14 165:11
**yet(5)** 11:21 22:20 27:12 30:20 50:21
50:22 88:22 110:6 128:19 153:1 169:21
174:4 176:17
**yield(1)** 87:24
**york(13)** 2:18 2:32 3:16 3:30 3:38 3:52
4:18 4:49 5:16 5:23 9:30 120:7 120:14

**you(301)** 12:18 13:5 13:6 14:13 15:7 15:8
16:12 16:16 16:17 16:18 16:20 16:20
16:21 17:9 17:12 17:15 18:8 18:12 19:11
19:12 20:2 20:9 20:20 20:22 21:3 21:6
21:6 21:13 22:15 23:4 23:5 23:19 23:20
23:23 24:2 24:4 24:6 24:9 24:17 24:20
24:21 26:19 27:4 27:12 27:22 28:15 28:1?
28:24 29:8 29:17 29:18 29:23 31:23 32:3
32:24 33:1 33:9 33:13 33:14 34:16 34:21
34:23 36:8 41:13 41:15 43:15 43:22 44:5
44:21 46:9 46:10 46:12 47:4 47:9 47:22
48:13 48:19 49:19 50:14 50:18 50:19
52:10 53:4 53:18 54:8 54:13 54:14 54:17
55:21 56:2 56:8 56:17 56:19 58:4 58:17
60:2 61:18 61:19 62:16 62:18 62:18 63:24
64:4 64:20 65:10 65:11 66:24 67:4 67:10
67:11 68:20 68:21 70:23 71:2 72:11 72:21
72:22 73:5 74:15 74:17 74:20 75:2 75:3
75:16 77:2 77:3 77:5 78:13 78:20 79:1
79:6 79:7 82:1 82:2 84:4 84:13 84:13
84:19 84:21 85:9 85:10 86:3 86:9 86:9
86:10 86:11 86:16 87:4 87:5 88:2 90:1
90:3 90:4 90:6 90:17 91:3 92:5 92:23
96:1 96:14 96:17 96:22 96:24 97:4 97:5
97:7 97:7 97:8 97:15 98:11 99:2 99:5
101:3 101:17 103:4 106:14 106:22 107:18
107:21 107:22 108:4 109:7 109:14 110:1
110:11 110:14 110:14 110:17 110:23
112:21 113:11 113:13 114:3 114:4 114:8
114:17 114:24 115:2 115:5 115:11 116:4
116:14 117:15 117:18 117:20 117:21 118:?
118:13 119:21 120:12 120:12 120:17
120:23 120:23 121:3 121:3 121:4 121:5
121:7 121:8 121:17 122:7 122:8 122:10
122:13 122:24 123:1 123:3 123:4 123:8
123:15 123:23 123:23 124:6 124:21 125:6
125:9 125:11 125:12 125:14 125:20 125:2
125:23 126:8 126:10 126:15 126:21 127:0?
129:10 129:11 129:15 129:20 130:10 131:?
131:8 131:12 132:8 134:13 134:16 134:18
134:19 134:23 135:14 135:21 136:9 136:2
137:1 137:4 138:2 138:10 138:14 138:24
141:23 142:5 142:20 143:4 144:10 144:15
144:16 144:19 144:23 147:8 148:1 148:7
148:9 148:13 148:19 149:3 149:4

**you(87)** 149:5 149:6 149:9 150:12 150:13
150:14 150:18 150:19 151:1 151:9 151:15
152:10 152:12 152:23 153:7 153:8 154:1
154:6 154:21 155:1 155:2 155:3 155:4
157:6 157:7 157:13 157:18 158:3 158:8
158:21 159:1 159:6 159:6 159:9 160:8
162:10 162:10 162:11 162:16 162:16 162:?
163:3 166:4 166:8 166:17 166:23 166:24
167:2 167:7 167:14 167:16 167:17 167:19
168:1 168:4 168:7 168:13 168:15 168:21
169:10 170:7 170:8 170:9 170:23 170:24
170:24 171:8 171:10 172:10 173:9 173:10
175:5 175:5 175:15 175:17 175:22 176:13
176:21 177:6 177:12 177:13

**you'd(3)** 35:20 90:6 96:18
**you'll(2)** 92:14 97:15
**you're(14)** 17:7 18:2 22:5 27:5 29:24
31:22 32:15 32:22 112:10 126:20 138:24
148:21 153:11 167:3

**you've(11)** 17:22 24:14 50:8 123:11 135:5
156:21 157:21 157:23 158:3 159:14 159:2

**young(1)** 4:21

**your(301)** 11:4 11:5 11:7 11:12 12:6
12:12 12:14 12:21 13:7 13:13 13:20 14:13
14:18 15:7 15:8 15:11 15:18 16:2 16:9
16:11 16:14 16:16 17:8 17:22 18:4 18:8
18:10 18:12 18:17 19:4 19:6 19:12 19:14
19:22 20:2 20:2 20:11 21:18 22:5 23:4
23:10 23:10 23:16 24:8 24:9 24:13 24:16
24:20 24:23 25:18 27:3 27:5 27:15 28:7
29:18 29:20 29:22 30:1 30:6 30:14 31:9
32:7 32:16 32:16 32:18 33:2 33:11 33:13
33:15 33:19 33:21 34:18 34:21 35:1 36:5
36:14 37:1 37:5 37:7 37:15 37:18 37:23
37:24 38:19 40:5 41:2 41:11 41:13 41:17
41:22 41:23 42:1 42:12 43:15 43:20 44:1
48:13 49:14 49:16 49:21 49:22 50:23 51:5
51:6 52:6 52:8 52:12 53:12 54:8 54:10
54:12 55:4 55:5 56:1 56:3 56:4 56:13
56:15 56:16 56:21 57:1 57:19 58:10 58:18
58:20 60:5 62:16 64:3 64:13 65:1 65:5
65:11 65:13 66:5 67:1 67:11 67:12 68:14
69:1 71:13 72:16 72:18 73:2 74:15 74:19
75:2 75:4 75:17 77:2 80:1 80:6 80:10
80:23 81:3 81:20 81:21 81:21 81:23 82:5
82:19 83:2 84:3 84:11 84:21 84:23 85:9
85:10 85:13 85:18 86:3 86:4 86:16 87:4
87:6 87:10 87:24 88:2 88:6 88:19 89:1
89:11 90:18 90:20 91:1 91:4 91:11 91:20
92:3 92:3 92:8 92:12 92:22 93:4 93:19
93:23 94:5 94:16 94:22 95:11 95:22 96:2
96:4 96:17 96:22 97:6 97:8 97:24 98:9
98:13 99:1 99:7 99:15 99:18 100:5 100:19
101:4 101:9 102:2 102:13 103:6 103:17
104:2 104:7 104:17 104:20 105:14 105:20
105:23 106:5 106:12 106:18 107:16 107:18
107:22 108:4 108:7 108:9 108:18 108:21
109:2 109:6 111:1 111:6 111:13 111:21
112:14 113:9 113:15 114:11 114:15 115:4
115:20 116:7 117:5 117:13 117:22 119:5
123:9 123:11 123:14 124:8 125:4 125:8
125:19 126:11 126:19 126:21 127:4 128:3
128:6 128:12 128:17 129:2 129:9 129:11
129:12 129:14 129:24 130:9 131:10 132:5
138:18 145:13 146:6 146:15 148:8 149:20
152:22

**your(54)** 153:12 157:6 157:8 157:18
158:15 159:22 159:24 160:19 161:13
161:15 161:19 162:2 163:12 163:14 163:15
164:18 165:17 167:12 167:15 167:15
167:19 168:9 168:22 169:2 169:6 169:9
169:18 170:11 170:21 170:23 171:2 171:7
171:17 171:24 172:6 172:12 172:18 173:1
173:9 173:14 173:22 174:5 174:12 174:22
175:10 175:17 175:22 176:8 176:12 176:14
177:1 177:6 177:8 177:11

**yours(1)** 13:12
**yourself(4)** 18:14 110:17 165:2 166:17
**yurkewicz(1)** 5:27
**zabel(2)** 5:20 24:24
**zell(5)** 5:44 15:17 16:16 17:24 80:9
**zensky(57)** 4:14 87:6 87:7 90:18 90:19
91:4 96:24 97:3 97:9 97:9 99:7 99:15
104:19 106:17 108:1 108:3 111:5 112:13
112:20 112:22 113:2 113:8 114:11 115:3
115:14 115:19 116:7 117:4 117:13 117:22
119:20 121:13 123:13 123:16 124:7 126:21
129:1 129:9 129:11 131:11 132:6 132:9
133:16 135:21 137:2 141:5 143:19 150:12
151:22 155:13 167:18 168:5 168:16 168:22
170:1 172:12 172:21

**zensky's(2)** 130:12 139:14
**zitska(1)** 143:17
**zloto(1)** 8:5
**zone(1)** 175:4
**zuckerman(7)** 2:21 9:42 15:12 46:14
127:23 128:1 167:5