# EXHIBIT A

## BRIDGE LOAN SETTLEMENT TERM SHEET

1. On the Effective Date of the Plan (as defined below), the Bridge Lenders will receive their pro rata share of $64.5 million in cash. The remaining $13,319,000 balance of the Bridge Loan Reserve established under the Debtor/Committee/Lenders Plan (as amended as set forth herein, and as may be further amended, supplemented or otherwise modified in accordance with Paragraph 8 below, the "Plan"), i.e., the $77,819,000 Bridge Loan Reserve minus $64,500,000, will be distributed under the Plan ratably to holders of Class IE (Senior Noteholder) Claims and Class 1F (Other Parent) Claims.

2. On the Effective Date of the Plan, the Bridge Lenders will also receive their pro rata share of the LBO Lenders' share, as provided under the Plan (as in effect on the date hereof), of the Litigation Trust Interests and Creditors' Trust Interests.

3. The reasonable professional fees and expenses of the proponents of the Bridge Plan (the "Bridge Plan Proponents") and/or the current Bridge Loan Agent will be reimbursed by Reorganized Tribune up to a maximum amount of $7 million subject to the same standards applicable to the payments of Senior Lender Fee/Expense Claims and Creditors' Committee Member Fee/Expense Claims by Reorganized Tribune under Section 9.1 of the Plan, and in no event shall such fees/expenses be subject to a standard other than reasonableness of invoices (which may be redacted to prevent public disclosure of privileged, confidential or commercially sensitive information).

4. The Plan will be amended to provide that the Bridge arrangers, or their affiliates, holding Bridge Loan Claims for their own accounts (as of the date of this Term Sheet), namely JPMorgan, Citibank, Merrill Lynch and Bank of America, and their respective affiliates (each such entity, together with its affiliates, an "Arranger" and, collectively, the "Arrangers"), shall have the option to either (a) receive their pro rata shares of the $64.5 million to be distributed to the Bridge Lenders and receive no additional releases from the other Bridge Lenders or (b) exchange mutual releases with the other Bridge Lenders and the current Bridge Loan Agent, in form and substance reasonably satisfactory to the Arrangers, providing for the unconditional release of any and all claims related to Tribune, the LBO transactions, the financings related thereto and the Chapter 11 proceedings in lieu of receiving (i) their pro rata share of the $64.5 million cash distribution on account of their Bridge Loan Claims held for their own accounts and (ii) their pro rata share of the Litigation Trust Interests and Creditors' Trust Interests as provided under the Plan on account of their Bridge Loan Claims held for their own accounts (as of the date of this Term Sheet) (the option in this clause (b), the "Bridge Release Option").[*] To the extent any Arranger irrevocably elects, prior to the date of the confirmation hearing for the Plan, the Bridge Release Option, and the related releases shall have become final and irrevocable, its pro rata share of the $64.5 million Bridge Lender cash distribution and the Litigation Trust Interests and Creditors' Trust Interests otherwise to be provided to such Arranger under the Plan on account of its Bridge Lender claims held for its own accounts will be reallocated and distributed ratably among those Bridge Lenders who are not Arrangers. If three or more of the Arrangers do not elect the Bridge Release Option, then: (i) the cash distribution to the Bridge

---

[*] JPMorgan has advised the current Bridge Loan Agent that it intends to elect the Bridge Release Option.

Lenders on the Effective Date of the Plan shall be increased to $65.5 million with the remaining $12,319,000 of the Bridge Loan Reserve being distributed ratably to holders of Class IE Claims and Class IF Claims; and (ii) the maximum amount of reasonable professional fees and expenses of the Bridge Plan Proponents and/or the current Bridge Loan Agent to be reimbursed by Reorganized Tribune shall be increased to $8 million.

5.   Acceptance of the distributions provided for in this term sheet by each Bridge Lender shall constitute irrevocable consent to the Guarantor Non-Debtor Release (as defined in the Plan) and a direction to the current Bridge Loan Agent to release all such guarantee claims on behalf of all Bridge Lenders.

6.   As conditions to receipt of the treatment set forth herein, the group of Bridge Lenders that have been actively communicating with the current Bridge Loan Agent (such group, including the Bridge Plan Proponents, and constituting approximately 50% of the outstanding principal amount of the Bridge Loan Claims, the "Bridge Lender Group") shall (a) support the Plan and, from the date of this Term Sheet, take no further actions inconsistent with confirmation of the Plan and (b) vote all Bridge Loan Claims held by them (or by funds under common management) in their capacities as Holders of Bridge Loan Claims to accept the Plan. Nothing in this Term Sheet shall be construed to limit or otherwise affect in any way any rights or remedies of the Bridge Lenders against any Arranger (including the Former Bridge Loan Agent) that does not elect the Bridge Release Option.

7.   The proponents of the Plan shall file an amendment to the Plan consistent with the terms hereof and in form reasonably satisfactory to the parties within one week of the date of this Term Sheet. For the avoidance of doubt, the Plan amendment shall make clear that: (i) the Bridge Lenders and the current Bridge Loan Agent shall receive all the benefit of being "Released Parties" as that term is (and will be) defined in the Plan and (ii) no Arranger shall receive a third-party release by any of the Bridge Lenders or the current Bridge Loan Agent unless such Arranger exercises the Bridge Release Option. Upon the filing of the Plan amendment referred to in this Paragraph, the Bridge Plan Proponents shall withdraw the Bridge Lenders' proposed Plan of Reorganization and all of the current Bridge Loan Agent's discovery requests issued to the Debtors and the other Plan proponents. At such time, the Debtors and the other Plan proponents shall withdraw, and shall not serve going forward, discovery requests issued to any of the Bridge Plan Proponents, any other Bridge Lender (other than any of the Arrangers), the current Bridge Loan Agent or any of their respective professionals.

8.   The Plan shall not be amended, supplemented or otherwise modified in a manner materially adverse to the Bridge Lenders' distributions (whether in cash or trust interests) or releases, or in any way which is materially inconsistent with this Term Sheet, except with the express written consent of the Bridge Plan Proponents; <u>provided, however</u>, that the following modifications shall not be considered materially adverse to the Bridge Lenders or materially inconsistent with this Term Sheet: (a) modifications to the contents, control and/or operations of the Litigation Trust and/or the Creditors' Trust, so long as: (i) the Bridge Lenders' percentage interests in the Litigation Trust and the Creditors' Trust are not altered and (ii) the priority of the Bridge Lenders' interests and distribution rights, including in respect of any settlement, are unaffected and (b) generally applicable modifications to releases provided in the Plan.

9. For the avoidance of doubt, the terms of the Litigation Trust Agreement and the Creditors' Trust Agreement, in respect of the trust interests of the Bridge Lenders, shall be consistent with the terms of this Term Sheet.

10. The Plan Proponents will support entry of an order relieving the Bridge Lenders of any obligation to pay any of the costs of plan solicitation.

11. The provisions of this Term Sheet shall be binding on any subsequent holders of Bridge Loans now held by the Bridge Lender Group.


This Term Sheet has been agreed among the Plan Proponents and the Bridge Lender Group.


Dated: January 28, 2011

2864859.1