# EXHIBIT A

46429/0001-7341898v1

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

### NOTICE OF DEPOSITION OF AURELIUS CAPITAL MANAGEMENT, LP

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure (made applicable to the above-captioned chapter 11 cases by Rules 7026, 7030 and 9014 of the Federal Rules of Bankruptcy Procedure), and the case management order entered by the Court in the above-captioned chapter 11 cases, the debtors and the debtors in possession in the above-captioned chapter 11 cases, by and through their undersigned attorneys, will take the deposition upon oral examination of Aurelius Capital Management, LP at the offices of Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, beginning on February 17, 2011 at 9:00 a.m. Eastern Standard Time and in accordance with the terms of Paragraph 12 of the Case Management Order dated December 20, 2010. The deposition shall be taken before a notary public or other officer authorized by law to administer oaths, shall be recorded by stenographic means, and will be videotaped. Testimony will be taken for all purposes permitted by the Federal Rules of Civil Procedure.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Aurelius Capital Management, LP shall designate one or more officers, directors, managing agents, or other people who consent to testify on its behalf regarding the matters set forth in Exhibit A attached hereto.

Dated: Wilmington, Delaware
January 26, 2011

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ Patrick J. Reilley
―――――――――――――――――
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Ave, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Attorneys For The Debtors And
Debtors-In-Possession

## **EXHIBIT A**

## **DEFINITIONS**

A. "April Plan" means the Plan of Reorganization filed by the Debtors and others with the Bankruptcy Court on April 12, 2010.

B. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

C. "Bridge Loan Agreement" means that certain Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, among Tribune, Merrill Lynch Capital Corporation as administrative agent, JP Morgan Chase Bank, N.A. as syndication agent, Citicorp North America, Inc. and Bank of America, N.A. as co-documentation agents, and various other financial institutions, as amended, restated, supplemented or otherwise modified from time to time.

D. "Bridge Lender Plan" means the Amended Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management, L.P., dated December 7, 2010 as may be amended or modified, and all prior versions of such Plan as well as all drafts of any of the foregoing.

E. "Bridge Lenders" means all persons who lent money or purchased interests in the Bridge Loans.

F. "Bridge Loans" means the indebtedness issued pursuant to the Bridge Loan Agreement.

G. "Complaints" means the original and any amended complaints filed in the adversary proceedings commenced by the Official Committee of Unsecured Creditors on

November 1, 2010 asserting LBO-Related Causes of Action against various participants in the Leveraged ESOP Transactions.

H. "Creditors Trust" means the trust to which certain LBO-Related Causes of Action will be assigned for prosecution or settlement.

I. "Debtor/Committee/Lender Plan" means the First Amended Chapter 11 Joint Plan of Reorganization For Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, LP., Angelo, Gordon & Co., L.P., and JP Morgan Chase Bank, N.A., filed with the Bankruptcy Court on December 10, 2010, as may be amended or modified, and all prior versions of such Plan as well as all drafts of any of the foregoing, including as described in the press release issued by Tribune on October 12, 2010.

J. "Distribution Trust Reserve" has the meaning assigned to that term in the Noteholder Plan.

K. "Effective Date" means the first Business Day on which all of the conditions to the Effective Date specified in the relevant Plan have been satisfied or waived in accordance with the Plan.

L. "Examiner's Report" means "Report of Kenneth N. Klee, As Examiner", *In Re: Tribune Company et. al,* Debtors, Chapter 11, Case Number 08-12141 (KJC) (Jointly Administered), July 26, 2010.

M. "LBO-Related Causes of Action" means any and all actual or potential pre-petition, post-petition and/or post-emergence claims, obligations, suits, judgments, damages, debts, rights, causes of action, avoidance powers or rights, liabilities of any nature whatsoever arising from or relating to the Leveraged ESOP Transactions that occurred in 2007, including,

without limitation, the claims asserted in the Complaints and any and all potential legal or equitable remedies associated with any such claims.

N. "Leveraged ESOP Transactions" means the transactions culminating in the leveraged buy-out of Tribune that occurred in December 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007 and the merger and related transactions involving Tribune on or about December 20, 2007.

O. "Litigation Trust" means the trust to which all LBO-Related Causes of Action preserved under the applicable Plan, other than those assigned to the Creditors Trust, will be assigned for prosecution or settlement pursuant to the applicable Plan.

P. "Noteholder Plan" means the Joint Plan of Reorganization for Tribune Company and its Subsidiaries proposed by Aurelius Capital Management, LP, on behalf of its managed entities, Deutsche Bank Trust Company Americas, in its capacity as the successor indenture trustee for certain series of senior notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of senior notes and Wilmington Trust Company, in its capacity as the successor indenture trustee for the PHONES Notes dated December 9, 2010 as may be amended or modified, and all prior versions of such Plan as well as all drafts of any of the foregoing.

Q. "PHONES Notes" means the issued and outstanding notes under the indenture, dated as of April 1, 1999, between Tribune and Wilmington Trust Company, as successor indenture trustee, as amended, restated or otherwise modified from time to time, including but not limited to any such PHONES Notes which were put to Tribune prior to but not paid as of the Petition Date.

R.   "Plan" means one of the Debtor/Committee/Lender Plan, the Noteholder Plan, and the Bridge Lender Plan, as the context indicates.

S.   "Preserved Causes of Action" means the causes of action that will or may be transferred to the Litigation Trust and the Creditors Trust for prosecution under the Noteholder Plan.

T.   "Professional" means any counsel, consultant, advisor, testifying expert, non-testifying expert, agent, representative or other Person engaged to provide or involved in providing at any time any services relating to the Leveraged ESOP Transactions, the LBO-Related Causes of Action, the Plans, the Complaints, the Examiner, the Examiner Report, settlement analysis and/or the settlement process.

U.   "Reorganized Debtors" means Reorganized Tribune and the other reorganized Debtors or any successors thereto by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the transactions occurring on or prior to the Effective Date in accordance with the Noteholder Plan.

V.   "Reorganized Tribune" means reorganized Tribune or any successors thereto by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the transactions occurring on or prior to the Effective Date in accordance with the Noteholder Plan.

W.   "Senior Lenders" means all persons who lent money under or purchased interests in the Senior Loans.

X.   "Senior Loan Agreement" means, collectively, (a) that certain Credit Agreement, dated as of May 17, 2007, among Tribune, the Senior Lenders, JPMorgan Chase Bank, N.A., as administrative agent, Merrill Lynch Capital Corporation, as syndication agent, and Citicorp North America, Inc. and Bank of America, N.A., as co-documentation agents, as

amended, restated, supplemented or otherwise modified from time to time and (b) those certain Increase Joinders, dated as of December 20, 2007, among Tribune, certain of the Senior Lenders and JPMorgan Chase Bank, N.A., as administrative agent, as amended, restated, supplemented or otherwise modified from time to time.

Y.   "Senior Loans" means the indebtedness issued pursuant to the Senior Loan Agreement.

Z.   "Tribune" means (i) the entity known as Tribune Company and its direct and indirect subsidiaries, including but not limited to each of the Debtors in the captioned bankruptcy case; (ii) any of their past, present or future officers, directors, partners, members, employees, or managers; (iii) any past, present or future board of directors, board of managers or similar body and any committee or subcommittee thereof of any Person within (i) above, including but not limited to the Special Committee; and (iv) Professionals of any Person within (i), (ii) or (iii) of this Definition of Tribune.

## DEPOSITION TOPICS

1.   Any analysis, evaluation, and valuation of the LBO-Related Causes of Action and any other causes of action or claims preserved under the Debtor/Committee/Lender Plan, the Noteholder Plan, or the Bridge Lender Plan.

2.   The analysis, evaluation, negotiation, and communications concerning the Debtor/Committee/Lender Plan, including, without limitation, the confirmation of the Plan, the good faith of the proponents in propounding such Plan, the feasibility of the Plan, the compliance of such Plan with Section 1129 of the Bankruptcy Code, any tax issue relating to the Plan, potential creditor recoveries, classification of claims, voting processes, Preserved Causes of Action, including, but not limited to, the merits of such claims, potential defendants, and potential

recoveries, and the decision to oppose the Plan.

    3. The analysis, evaluation, negotiation, and communications concerning the Noteholder Plan including, without limitation, the confirmation of the Plan, the good faith of the proponents in propounding such Plan, the feasibility of the Plan, the compliance of such Plan with Section 1129 of the Bankruptcy Code, any tax issue relating to the Plan potential creditor recoveries, classification of claims, voting processes, put-options, distribution of funds pursuant to the Creditors Trust, post-emergence governance, including, but not limited to, any impact that the structure of the Distribution Trust Reserve under the Noteholder Plan may have on the operations or corporate governance of the Reorganized Debtors, either as a whole or individually, exit financing, including, but not limited to, sources and terms for such financing and any communications with any party regarding possible exit financing, amounts of claims, cost and time to litigate non-settled claims, tax impact on creditors of value/claims reserve, basis of $40 million grant to the Litigation Trust, and the decision to support or oppose the Plan.

    4. The analysis, evaluation, negotiation, and communications concerning the Bridge Lender Plan including, without limitation, the confirmation of the Plan, the good faith of the proponents in propounding such Plan, the feasibility of the Plan, the compliance of such Plan with Section 1129 of the Bankruptcy Code, any tax issue relating to the Plan, potential creditor recoveries, classification of claims, voting processes, put-options, distribution of funds pursuant to the Creditors Trust, post-emergence governance, including, but not limited to, any impact that the structure of the Distribution Trust Reserve under the Noteholder Plan may have on the operations or corporate governance of the Reorganized Debtors, either as a whole or individually, exit financing, including, but not limited to, sources and terms for such financing and any communications with any party regarding possible exit financing, amounts of claims, cost and

time to litigate non-settled claims, tax impact on creditors of value/claims reserve, basis of $40 million grant to the Litigation Trust, and the decision to support or oppose the Plan.

5. The analysis, evaluation, negotiation, and communications concerning the April Plan, including, without limitation, the settlement of LBO-Related Causes of Action in the April Plan.

6. Nature of specific economic interests in, or claims against, all Debtors, including, without limitation, the type and amount of such interests or claims, the date and purchase price paid for such interests or claims, the reasons for the purchase or holding of such interest or claims, and the terms and conditions of any purchase of such interest or claims, and any and all communications or contacts between the purchaser and seller of any such interest or claims with respect to such purchase.

7. Any communications between any of the proponents of the Noteholder Plan and Centerbridge Partners, LLP regarding the sale of Centerbridge Partners, LLP's Tribune position to Aurelius Capital Management, LP in or around September 2010.

8. All persons who have access to Tribune confidential information and all ethical screens, procedures or practices designed to maintain the confidentiality of that information and to prevent access to confidential information by persons making decisions concerning trading in the claims or securities of Debtors.

9. Analysis or evaluation of the Examiner's Report including, without limitation, any economic model used or developed in connection with such analysis or evaluation.

10. Basis for and analysis of allegations that the Official Committee of Unsecured Creditors or any proponent of the Debtor/Committee/Lender Plan did not engage in arm's-length and good-faith negotiations with settling parties.

11. The allowance of claims against any of the Debtors, including, without limitation, the allowance, priority and amount of the claims of the Senior Lenders, the Bridge Lenders, the Noteholders, and the holders of the PHONES Notes.