# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## FIFTH INTERIM FEE APPLICATION OF ALVAREZ & MARSAL NORTH AMERICA, LLC

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Fifth Interim Fee Application of Alvarez & Marsal North America, LLC* [Docket No. 4036] (the "**Fee Application**"). The Fee Application seeks approval of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

fees that total $1,685,927.50 and reimbursement of expenses that total $7,439.98 for the period from

December 1, 2009 through February 28, 2010.  Alvarez & Marsal North America, LLC ("**A&M**") acts

as restructuring advisors to the Debtors and Debtors-in-Possession.

### Background

1.      On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed

subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**"), each filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code.  On December 10, 2008, the Bankruptcy

Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2.      On December 26, 2008, the Debtors filed the *Application of the Debtors Pursuant to*

*11 U.S.C. § 327(a) for Entry of an Order Authorizing the Employment and Retention of Alvarez &*

*Marsal North America, LLC as Restructuring Advisors, Nunc Pro Tunc to the Petition Date* [Docket

No. 140] (the "**Retention Application**").  By order dated February 11, 2009, this Court approved the

retention of A&M (see Docket No. 362) (the "**Retention Order**").

3.      A&M submitted the Fee Application pursuant to the *Order Establishing Procedures for*

*Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members under*

*11 U.S.C. §§ 105(a) and 331* [Docket No. 225] (the "**Interim Compensation Order**").

### Applicable Standards

4.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the

Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and

review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish

uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals

to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and

guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and

331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.    Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A).* In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F).*

7.    A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee

applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.    The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to A&M for review and comment.    The firm submitted to the Fee Examiner a written response to the Preliminary Report.    After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### Technical Requirements

9.    <u>Reconciliation of Fees and Expenses.</u>    The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").    The Fee Examiner determined that the Fees Computed exceed the Fees Requested by $70.00, resulting in an apparent undercharge.    The discrepancy is the result of task hours within one entry that do not equal the time billed for the entry as a whole, as displayed in the table below:

| Invoice Number | Entry Number | Name | Entry Date | Rate | Hours Billed | Hours Computed | Hours Difference | Fees Difference |
|---|---|---|---|---|---|---|---|---|
| 022810-60 | 1218 | Hough | 02/03/10 | $350.00 | 1.60 | 1.80 | (0.20) | ($70.00) |
| | | | | **Total Discrepancy (Undercharge)** | | | (0.20) | ($70.00) |

In response to the Preliminary Report, A&M confirmed the undercharge.    The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the

Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

10.    **Block Billing.**[2]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines ¶(b)(4)(v)*.[3] A&M's prior fee applications included significant instances of block billed time. The current Fee Application demonstrated a substantial decrease in the practice of block billing time entries. The Fee Examiner provided the blocked billed entries -- generally involving the review or drafting of materials coupled with related communication activity – in **Exhibit A** to the Preliminary Report totaling 12.00 hours with associated fees of $4,327.50. The Fee Examiner appreciates A&M's active efforts in attempting to eliminate block billing and makes no recommendation for a fee reduction for this interim period. Exhibit A is omitted from this report.

11.    **Time Increments.**  The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

hour." *UST Guidelines ¶(b)(4)(v)*. The Fee Examiner confirmed that the firm recorded time entries in tenths of an hour.

**Review of Fees**

12.    **Firm Staffing.**  The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names, positions, and hourly rates of the 17 A&M professionals and paraprofessionals who billed to this matter, consisting of 3 managing directors, 3 directors, 1 manager, 2 senior associates, 2 associates, 4 consultants, 1 analyst, and 1 paraprofessional.[4] A summary of hours and fees billed by each timekeeper is displayed in **Exhibit B**.[5]

The firm billed a total of 3,845.20 hours with associated fees of $1,685,997.50.[6] The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 698.20 | 18% | $  483,930.00 | 29% |
| Director | 839.70 | 22% | 369,207.50 | 22% |
| Manager | 23.10 | * | 7,507.50 | * |
| Senior Associate | 974.70 | 25% | 397,942.50 | 24% |
| Associate | 716.20 | 19% | 250,670.00 | 15% |

---

[4] Five timekeepers changed positions during this interim period (Richard Stone, Matt Frank, Mark Berger, Sean Hough, and Elizabeth Johnston). The timekeepers are included in their current position.

[5] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[6] This figure reflects the Fees Computed.

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Consultant | 296.50 | 8% | 96,685.00 | 6% |
| Analyst | 263.00 | 7% | 73,585.00 | 4% |
| Paraprofessional | 33.80 | * | 6,470.00 | * |
| TOTAL | 3,845.20 | 100% | $1,685,997.50 | 100% |

* Less than 1%

The blended hourly rate for the A&M professionals is $440.66 and the blended hourly rate for professionals and paraprofessionals is $438.47.

13.    **Hourly Rate Increases.**    The Fee Application included time entries from December 1, 2009 through February 28, 2010.    A&M increased the hourly rates of several firm timekeepers effective January 1, 2010.    The Fee Application did not acknowledge or explain the increase in billing rates.    In responding to the Preliminary Report, A&M stated that the firm's engagement letter provides for annual adjustment of rates and the firm's rates had not been adjusted since the engagement on November 8, 2008.    A&M further stated that the rate increases reflected a combination of market adjustments and the promotion of several individuals.

14.    **Potential Double Billing.**    The Fee Examiner examined the Fee Application for billing entries or entry activities that appear to be duplicated (*i.e.*, on the same date by the same timekeeper with identical or nearly identical descriptions and time increments).    The Fee Examiner identified two sets of entries that apparently were inadvertently invoiced twice.    The questioned tasks, totaling 2.80 hours with $1,177.50 in associated fees, were highlighted in bold and marked with an ampersand [&] in **Exhibit C** to the Preliminary Report.    The Fee Examiner requested that the firm review the entries and provide an explanation for the duplications.

In response to the Preliminary Report, A&M stated that one instance was not a duplicate entry but instead a follow up to a previous telephone call.    The firm acknowledged the other entry was inadvertently billed twice, and agreed to a voluntary fee reduction in the amount of $977.50. Exhibit C is omitted from this report.

- 7 -

15.    **Timekeepers' Roles.**  A court may not allow compensation of fees for duplicative or unnecessary services.  *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  On the whole, each A&M timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

16.    **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *(Local Rule 2016-2(d)(ix))*, and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more A&M timekeepers attended the same meeting, conference, hearing, or other event.  Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees.  The entries, totaling 207.70 hours with $118,432.50 in associated fees, were provided to the firm in **Exhibit D** to the Preliminary Report.  In each instance where multiple timekeepers attended a meeting, conference, hearing or other event, we identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the individual leading rather than observing a conference).  The potentially duplicative and unnecessary timekeepers' entries total 126.90 hours with $64,490.00 in associated fees, and are highlighted in bold and marked with an ampersand [&] in the exhibit.  The Fee Examiner requested that the firm provide what the Local Rules

and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response, A&M stated that the firm endeavors to minimize the number of attendees at any meeting but balances that goal against the scope of each meeting and in light of requests of the Debtors' management. A&M then provided additional context regarding the complexities of the cases and the firm's duties, as well as additional information on the experience, expertise, and role of the individuals who appeared prominently in the exhibit. After consideration of all the information provided by A&M, the Fee Examiner makes no recommendation for a fee reduction. Exhibit D is omitted from this report.

17.    **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified intraoffice conferences totaling 183.30 hours with $82,005.00 in associated fees, or approximately 5% of the Fees Computed, as displayed in **Exhibit E** to the Preliminary Report. The Fee Examiner observed that in certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel total 111.20 hours with $51,802.50 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm provide an explanation for the necessity of more than one participant billing for the same intraoffice conference.

In response to the Preliminary Report, A&M explained the complicated nature of the firm's engagement and the resulting need for multiple firm individuals to work on different portions and coordinate their efforts. The firm's response included an explanation of the large projects underway during the time period covered by the Fee Application. Finally, A&M asserted the firm's intent to minimize intraoffice conferences to the extent possible given the responsibilities and work A&M in engaged to perform. The Fee Examiner reviewed the firm's response and the underlying fee entries,

and makes no recommendation for a fee reduction arising from intrafirm communication. Exhibit E is omitted from this report.

18.    **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary."  The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*.  The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.  With limited exceptions, A&M sufficiently described the activities performed.  The Fee Examiner requested that A&M provide supplemental information regarding the fee entries identified in **Exhibit F** to the Preliminary Report.

In response, A&M provided an explanation of the role and duties of the timekeeper whose entries were in question, and the reasons (primarily the public nature of bankruptcy filings) behind his use of a rote activity description.  In light of the additional information provided, the Fee Examiner makes no recommendation for a fee reduction, and Exhibit F is omitted from this report.

19.    **Administrative Activities.**  Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm.  The Fee Examiner did not identify any time entries describing administrative activities.

20.    **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel.[7] The Fee Application did not contain any activities that appeared clerical in nature.

21.    **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Fee Application included six entries describing non-working travel activities, all of which were billed at either one-half of the timekeepers' regular hourly rate or one-half of the travel time in compliance with the Local Rules.

22.    **A&M Retention/Compensation.** A&M billed 35.20 hours with associated fees of $7,397.50 to prepare the firm's retention documents and applications for compensation, which is less than 1% of the Fees Computed. The fee entries describing A&M's retention/compensation activities are displayed in **Exhibit G**, which is included in this Final Report for the Court's reference.

### Review of Expenses

23.    **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*. The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be

---

[7] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.  A&M provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

24.    **Working Meals.**  A&M requested reimbursement of $1,210.02 for working meals for which the descriptions did not indicate the location of the meal or whether the meal related to a meeting with non-firm personnel.  The Fee Examiner requested from A&M an explanation for the purpose of the meal charges displayed in **Exhibit H** to the Preliminary Report.

In response, A&M stated that the meals all occurred at the client site and not at A&M's offices.  Accordingly, the Fee Examiner makes no recommendation for an expense reduction, and Exhibit H is omitted from this report.

25.    **Overtime Expenses.**  A&M requested reimbursement of overtime meals totaling $91.88.  Although a firm may have a policy that personnel may be reimbursed for meals for employees while working late, such charges are generally considered part of the firm's overhead.  The charges at issue were provided to the firm in **Exhibit I** to the Preliminary Report.

A&M responded by stating that the expenses in question were actually meal charges incurred at the client site rather than overtime meals at the firm's offices.  Given the firm's assertion, the Fee Examiner makes no recommendation for an expense reduction.  Exhibit I is omitted from this report.

26.    **Travel – Lodging.**  The Fee Examiner applies a ceiling for lodging of $350.00 per night (domestic).  A&M requested reimbursement for lodging costs in the amount of $1,414.08.  The description for one charge, in the amount of $547.47, states that it was for one night of lodging in New York, New York for managing director Brian Whittman.

In response to the Preliminary Report, A&M explained that Mr. Whittman stayed in the same hotel as members of the Debtors' management in order to prepare for a creditor meeting the next

day.  Nonetheless, the firm agreed to a voluntary expense reduction of $197.47, the amount in excess of the lodging ceiling.

<u>**Conclusion**</u>

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above.  The Fee Examiner recommends the approval of fees in the amount of $1,685,020.00 ($1,685,927.50 minus $907.50) and reimbursement of expenses in the amount of $7,242.51 ($7,439.98 minus $197.47) for the period from December 1, 2009 through February 28, 2010.  The findings are summarized in the attached Appendix A.

Respectfully submitted,

**STUART MAUE**

By:

W. Andrew Dalton
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:  (314) 291-3030
Facsimile:  (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

# APPENDIX A

## ALVAREZ & MARSAL NORTH AMERICA, LLC
### SUMMARY OF FINDINGS
#### Fifth Interim Fee Application (December 1, 2009 through February 28, 2010)

##### A.    Amounts Requested and Computed

| | | |
|---|---|---|
| Fees Requested | $1,685,927.50 | |
| Expenses Requested | 7,439.98 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $1,693,367.48 |
| | | |
| Fees Computed | $1,685,997.50 | |
| Expenses Computed | 7,439.98 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $1,693,437.48 |
| | | |
| Discrepancy in Fees | ($ 70.00) | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($ 70.00) |

##### B.    Recommended Fee Allowance and Expense Reimbursement

| | | | |
|---|---|---|---|
| Fees Requested | $1,685,927.50 | | |
| *Discrepancy in Fees* | | *$ 70.00* | |
| *Agreed Reduction for Potential Double Billing* | | *(977.50)* | |
| Subtotal | | *($907.50)* | |
| | | | |
| RECOMMENDED FEE ALLOWANCE | | | $1,685,020.00 |
| | | | |
| Expenses Requested | $7,439.98 | | |
| *Agreed Reduction for Travel - Lodging* | | *($197.47)* | |
| Subtotal | | *($197.47)* | |
| | | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 7,242.51 |
| | | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $1,692,262.51 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 4th day of February, 2011.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard,
P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Thomas E. Hill, Esq.
Alvarez & Marsal North America, LLC
55 West Monroe Street, Suite 4000
Chicago, IL 60603

_____
W. Andrew Dalton

- 15 -

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

### COMPUTED AT STANDARD RATES

#### Alvarez & Marsal North America, LLC

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| BWHI | Whittman, Brian | MANAG DIRECTOR | $650.00 | $675.00 | 393.20 | $262,222.50 |
| THIL | Hill, Tom | MANAG DIRECTOR | $700.00 | $750.00 | 286.10 | $211,120.00 |
| SKOT | Kotarba, Steve | MANAG DIRECTOR | $475.00 | $575.00 | 18.90 | $10,587.50 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $693.11 | | 698.20 | $483,930.00 |
| | | | | | % of Total: 18.16% | % of Total: 28.70% |
| RSTO | Stone, Richard | DIRECTOR | $475.00 | $475.00 | 354.40 | $168,340.00 |
| JEHR | Ehrenhofer, Jodi | DIRECTOR | $375.00 | $425.00 | 404.90 | $167,087.50 |
| MZEI | Zeiss, Mark | DIRECTOR | $350.00 | $450.00 | 80.40 | $33,780.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $439.69 | | 839.70 | $369,207.50 |
| | | | | | % of Total: 21.84% | % of Total: 21.90% |
| RSPI | Spigner, Robert | MANAGER | $325.00 | $325.00 | 23.10 | $7,507.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $325.00 | | 23.10 | $7,507.50 |
| | | | | | % of Total: 0.60% | % of Total: 0.45% |
| SKAU | Kaufman, Stuart | SR. ASSOCIATE | $400.00 | $425.00 | 453.40 | $189,422.50 |
| MFRA | Frank, Matt | SR. ASSOCIATE | $400.00 | $400.00 | 373.00 | $149,200.00 |
| RSTO | Stone, Richard | SR. ASSOCIATE | $400.00 | $400.00 | 148.30 | $59,320.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $408.27 | | 974.70 | $397,942.50 |
| | | | | | % of Total: 25.35% | % of Total: 23.60% |
| MBER | Berger, Mark | ASSOCIATE | $350.00 | $350.00 | 311.40 | $108,990.00 |
| SHOU | Hough, Sean | ASSOCIATE | $350.00 | $350.00 | 261.40 | $91,490.00 |
| MFRA | Frank, Matt | ASSOCIATE | $350.00 | $350.00 | 143.40 | $50,190.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $350.00 | | 716.20 | $250,670.00 |
| | | | | | % of Total: 18.63% | % of Total: 14.87% |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Alvarez & Marsal North America, LLC**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| EJOH | Johnston, Elizabeth | CONSULTANT | $325.00 | $325.00 | 229.70 | $74,652.50 |
| LHOE | Hoeflich, Lauren | CONSULTANT | $325.00 | $325.00 | 59.90 | $19,467.50 |
| DLEW | Lewandowski, Doug | CONSULTANT | $375.00 | $375.00 | 6.00 | $2,250.00 |
| RNIE | Niemerg, Richard | CONSULTANT | $350.00 | $350.00 | 0.90 | $315.00 |
| | No. of Billers for Position: 4 | Blended Rate for Position: | $326.09 | | 296.50 | $96,685.00 |
| | | | | | % of Total: 7.71% | % of Total: 5.73% |
| MBER | Berger, Mark | ANALYST | $300.00 | $300.00 | 107.00 | $32,100.00 |
| EJOH | Johnston, Elizabeth | ANALYST | $250.00 | $250.00 | 100.90 | $25,225.00 |
| SHOU | Hough, Sean | ANALYST | $300.00 | $300.00 | 44.30 | $13,290.00 |
| DTOR | Torres, Diego | ANALYST | $275.00 | $275.00 | 10.80 | $2,970.00 |
| | No. of Billers for Position: 4 | Blended Rate for Position: | $279.79 | | 263.00 | $73,585.00 |
| | | | | | % of Total: 6.84% | % of Total: 4.36% |
| MNAP | Napoliello, Mary | PARAPROFESSIONA | $185.00 | $195.00 | 33.80 | $6,470.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $191.42 | | 33.80 | $6,470.00 |
| | | | | | % of Total: 0.88% | % of Total: 0.38% |
| | Total No. of Billers: 17 | Blended Rate for Report: | $438.47 | | 3,845.20 | $1,685,997.50 |

EXHIBIT G

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Napoliello, M | 33.80 | 6,470.00 |
| Whittman, B | 1.40 | 927.50 |
| | 35.20 | $7,397.50 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Fee Application | 35.20 | 7,397.50 |
| | 35.20 | $7,397.50 |

EXHIBIT G

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | | DESCRIPTION |
|------|-----------------|-------------|-------|------|---|-------------|
| 12/02/09 Wed | Napoliello, M 123109-130/644 | 0.40 | 0.40 | 74.00 | 1 | MATTER NAME: *Fee Application*<br>REVIEW CASE DOCKET. |
| 12/14/09 Mon | Napoliello, M 123109-130/645 | 2.30 | 2.30 | 425.50 | 1 | MATTER NAME: *Fee Application*<br>WORK ON EXHIBITS FOR OCTOBER FEE STATEMENT. |
| 12/15/09 Tue | Napoliello, M 123109-130/646 | 2.90 | 2.90 | 536.50 | 1 | MATTER NAME: *Fee Application*<br>DRAFT EXHIBITS FOR OCTOBER APPLICATION. |
| 12/15/09 Tue | Napoliello, M 123109-130/647 | 3.10 | 3.10 | 573.50 | 1 | MATTER NAME: *Fee Application*<br>FINALIZE FIRST DRAFT OF EXHIBITS FOR OCTOBER STATEMENT. |
| 12/17/09 Thu | Whitman, B 123109-130/1040 | 0.30 | 0.30 | 195.00 | 1 | MATTER NAME: *Fee Application*<br>REVIEW DRAFT FEE APPLICATION FOR NOVEMBER. |
| 12/28/09 Mon | Napoliello, M 123109-130/648 | 1.70 | 1.70 | 314.50 | 1 | MATTER NAME: *Fee Application*<br>PREPARE DRAFT OF COVER SHEET AND APPLICATION. |
| 12/28/09 Mon | Napoliello, M 123109-130/649 | 1.40 | 1.40 | 259.00 | 1 | MATTER NAME: *Fee Application*<br>INCORPORATE EDITS TO OCTOBER STATEMENT. |
| 12/28/09 Mon | Napoliello, M 123109-130/650 | 0.30 | 0.30 | 55.50 | 1 | MATTER NAME: *Fee Application*<br>REVIEW CASE DOCKET FOR CNO DATA. |
| 12/31/09 Thu | Whitman, B 123109-130/1041 | 0.40 | 0.40 | 260.00 | 1 | MATTER NAME: *Fee Application*<br>REVIEW OCTOBER FEE APPLICATION. |
| 01/04/10 Mon | Napoliello, M 013110-130/33 | 0.30 | 0.30 | 58.50 | 1 | MATTER NAME: *Fee Application*<br>PREPARE REVISIONS TO OCTOBER APPLICATION. |
| 01/04/10 Mon | Napoliello, M 013110-130/34 | 0.80 | 0.80 | 156.00 | 1 | MATTER NAME: *Fee Application*<br>WORK ON EXHIBITS FOR NOVEMBER STATEMENT. |
| 01/11/10 Mon | Napoliello, M 013110-130/299 | 3.40 | 3.40 | 663.00 | 1 | MATTER NAME: *Fee Application*<br>PREPARE DRAFT OF EXHIBITS FOR NOVEMBER STATEMENT. |
| 01/11/10 Mon | Napoliello, M 013110-130/300 | 2.80 | 2.80 | 546.00 | 1 | MATTER NAME: *Fee Application*<br>PREPARE FIRST DRAFT OF APPLICATION AND COVER SHEET FOR NOVEMBER STATEMENT. |

EXHIBIT G

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | | DESCRIPTION |
|------|-----------------|-------------|-------|------|---|-------------|
| 01/12/10 Tue | Napoliello, M 013110-130/364 | 1.50 | 1.50 | 292.50 | 1 | MATTER NAME: Fee Application<br>INCORPORATE EDITS TO NOVEMBER APPLICATION AND EXHIBITS. |
| 01/12/10 Tue | Whittman, B 013110-130/379 | 0.20 | 0.20 | 135.00 | 1 | MATTER NAME: Fee Application<br>REVIEW NOVEMBER FEE STATEMENT. |
| 01/13/10 Wed | Napoliello, M 013110-130/430 | 2.10 | 2.10 | 409.50 | 1 | MATTER NAME: Fee Application<br>PREPARE FIRST DRAFT OF 4TH INTERIM APPLICATION AND EXHIBITS. |
| 01/13/10 Wed | Whittman, B 013110-130/449 | 0.20 | 0.20 | 135.00 | 1 | MATTER NAME: Fee Application<br>REVIEW 4TH INTERIM FEE APPLICATION. |
| 02/13/10 Sat | Napoliello, M 022810-130/280 | 1.20 | 1.20 | 234.00 | 1 | MATTER NAME: Fee Application<br>WORK ON EXHIBITS FOR DECEMBER STATEMENT. |
| 02/16/10 Tue | Napoliello, M 022810-130/281 | 2.60 | 2.60 | 507.00 | 1 | MATTER NAME: Fee Application<br>REVIEW DATA AND PREPARE EXHIBITS FOR DECEMBER STATEMENT. |
| 02/16/10 Tue | Napoliello, M 022810-130/282 | 2.80 | 2.80 | 546.00 | 1 | MATTER NAME: Fee Application<br>FINALIZE FIRST DRAFT OF DECEMBER EXHIBITS AND FORWARD TO B. WHITTMAN (A&M). |
| 02/18/10 Thu | Napoliello, M 022810-130/283 | 1.30 | 1.30 | 253.50 | 1 | MATTER NAME: Fee Application<br>INCORPORATE EDITS TO DECEMBER EXHIBITS. |
| 02/18/10 Thu | Napoliello, M 022810-130/284 | 2.60 | 2.60 | 507.00 | 1 | MATTER NAME: Fee Application<br>PREPARE DRAFT OF DECEMBER COVER SHEET AND APPLICATION. |
| 02/18/10 Thu | Napoliello, M 022810-130/285 | 0.30 | 0.30 | 58.50 | 1 | MATTER NAME: Fee Application<br>REVIEW CASE DOCKET FOR CNO DATA. |
| 02/19/10 Fri | Whittman, B 022810-130/286 | 0.30 | 0.30 | 202.50 | 1 | MATTER NAME: Fee Application<br>REVIEW DECEMBER FEE APPLICATION. |
| Total | | | 35.20 | $7,397.50 | | |
| Number of Entries: | 24 | | | | | |

EXHIBIT G

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Napoliello, M | 33.80 | 6,470.00 |
| Whittman, B | 1.40 | 927.50 |
| | 35.20 | $7,397.50 |

SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Fee Application | 35.20 | 7,397.50 |
| | 35.20 | $7,397.50 |