**<u>Attachment A</u>**

**Exhibit 1.1.27**

**Claims Purchase Agreement**

**NOTEHOLDER PLAN EXHIBIT 1.1.27**

<u>CLAIMS PURCHASE AGREEMENT</u>

This Exhibit is subject to all of the provisions of the Noteholder Plan, including, without limitation, Section 13.8, pursuant to which the Proponents have reserved the right, subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, to alter, amend or modify the Noteholder Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to substantial consummation of the Noteholder Plan.

CLAIMS PURCHASE AGREEMENT

THIS CLAIMS PURCHASE AGREEMENT (this "Agreement") is made as of [ ], 2011 by and among [ ] (the "Claims Purchase Agent") and [the entities managed by and/or otherwise designated by Aurelius Capital Management, LP] (the "Claims Purchaser"). The signatories to this Agreement are sometimes collectively referred to herein as the "Parties" and individually as a "Party." Capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in Its Capacity as Successor Indenture Trustee for the PHONES Notes (as such may be amended, modified or supplemented from time to time and including the Noteholder Plan Supplement, the "Noteholder Plan").

WHEREAS, pursuant to Section 5.14 of the Noteholder Plan, Holders of Other Parent Claims and Other Guarantor Claims whose Claims are Allowed as of the Voting Deadline and whose Class voted to accept the Noteholder Plan had the opportunity to elect to have the Claims Purchaser purchase their Other Parent Claims and Other Guarantor Claims for Cash subject to the conditions set forth herein and in the Noteholder Plan (the "Claims Purchase").

WHEREAS, pursuant to Section 5.14 of the Noteholder Plan, the Claims Purchaser has agreed to purchase Other Parent Claims Allowed as of the Voting Deadline for up to 15% of the Allowed amount of each Other Parent Claim, subject to (i) the Noteholder Plan being confirmed and the occurrence of the Effective Date, (ii) an aggregate purchase price of $24.25 million, unless otherwise increased in the sole discretion of the Claims Purchaser (the "Other Parent Claims Purchase Price Cap"), (iii) the Other Parent Claims Class voting to accept the Noteholder Plan, (iv) the applicable Holder of an Other Parent Claim whose Other Parent Claim was Allowed of the Voting Deadline having elected on its Ballot to exercise the Other Parent Claims Put Option and (v) the applicable Holder of an Allowed Other Parent Claim not electing the Non-Contribution Election.

WHEREAS, pursuant to Section 5.14 of the Noteholder Plan, the Claims Purchaser has agreed to purchase Other Guarantor Debtor Claims Allowed as of the Voting Deadline for up to 25% of the Allowed amount of each Other Guarantor Debtor Claim, subject to (i) the Noteholder Plan being confirmed and the occurrence of the Effective Date, (ii) an aggregate purchase price of $20.75 million, unless otherwise increased in the sole discretion of the Claims Purchaser (the "Other Guarantor Debtor Claims Purchase Price Cap"), (iii) the applicable Other Guarantor Debtor Claims Class voting to accept the Noteholder Plan and (iv) the applicable Holder of an Other Guarantor Debtor Claim whose Other Guarantor Debtor Claim was Allowed as of the Voting Deadline having elected on its Ballot to exercise the Other Guarantor Debtor Claims Put Option.

WHEREAS, pursuant to Section 5.14 of the Noteholder Plan, if the conditions precedent for the applicable Claims Purchase are satisfied, each Holder, subject to the respective Claims Purchase Price Cap, of an Other Parent Claim or Other Guarantor Debtor Claim that was

Allowed as of the Voting Deadline and elected the applicable Put Option will receive its share of the Other Parent Claims Purchase Funds and Other Guarantor Debtor Claims Purchase Funds, respectively, and, the consideration such Holder would have received under the Plan, had it not elected the Put Option, shall be distributed to the Claims Purchaser; *provided, however*, that, to the extent the aggregate consideration necessary to purchase Other Parent Put Claims or Other Guarantor Debtor Put Claims, as applicable, exceeds the Other Parent Claims Purchase Price Cap or Other Guarantor Debtor Claims Purchase Price Cap, as applicable, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims or Other Guarantor Debtor Put Claims in the applicable Class, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price or Other Guarantor Debtor Purchase Price, as applicable, and the remaining portion of the applicable Other Parent Put Claims or Other Guarantor Debtor Put Claims shall receive their Pro Rata share of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests, as applicable, on account of such remaining amount of the applicable Other Parent Put Claims and Other Guarantor Debtor Put Claims.

WHEREAS, the Other Parent Put Claims are listed on schedule <u>Exhibit A</u> hereto (the "<u>Other Parent Put Claims Schedule</u>");

WHEREAS, the Other Guarantor Debtor Put Claims are listed on schedule <u>Exhibit B</u> hereto (the "<u>Other Guarantor Debtor Put Claims Schedule</u>" and, together with the Other Parent Put Claims Schedule, the "<u>Claims Purchase Schedule</u>");

WHEREAS, in order to effect the Claims Purchase, the Claims Agent and the Claims Purchaser desire to enter into this Agreement to govern the administration of, and payments in connection with, the Claims Purchase; and

WHEREAS, pursuant to the terms of the Noteholder Plan, the Claims Purchase Funds shall constitute the exclusive source of funds for the satisfaction of amounts that are or may become payable pursuant to the Claims Purchase.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties to this Agreement hereby agree as follows:

1. <u>Appointment of the Claims Purchase Agent</u>.  The Claims Purchase Agent is hereby appointed as the sole agent in connection with the Claims Purchase under and pursuant to the terms, conditions and provisions of this Agreement and the Noteholder Plan, and the Claims Purchase Agent hereby accepts such appointment and agrees to perform the duties thereof subject to the terms, conditions and provisions of this Agreement and the Noteholder Plan.

2. <u>Claims Purchase Funding</u>.  On the Initial Distribution Date for the applicable Class of Claims, the Claims Purchaser shall transfer Cash in the amount of the applicable Claims Purchase Price to the Claims Purchase Agent. The Claims Purchase Agent hereby agrees to hold the Claims Purchase Price, together with all products and proceeds thereof (including all interest earned with respect thereto (collectively, the "<u>Claims Purchase Funds</u>")), in a separate and distinct account (the "<u>Escrow Account</u>"), subject to the terms and conditions of

2

this Agreement. The Claims Purchase Agent shall not distribute or release the Claims Purchase Funds except in accordance with the express terms and conditions of this Agreement and the Noteholder Plan. All products and proceeds of the Claims Purchase Price (including all interest earned with respect thereto) shall revert to the Claims Purchaser upon termination of this Agreement in accordance with the terms of Section 3(c) of this Agreement.

3. <u>Payments of the Claims Purchase Funds/Transfer of Put Claims</u>. The Claims Purchase and the transfer of the Put Claims to the Claims Purchaser shall occur contemporaneously with the Initial Distributions that are made to the applicable Class of Claims. The Claims Purchase Agent shall dispose of the Claims Purchase Funds as follows:

(a) <u>Claims Purchase</u>. The Claims Purchaser, through the Claims Purchase Agent, shall pay each Holder of a Put Claim the identified amount set forth in the Claims Purchase Schedule in accordance with Sections 7.5 and 7.6 of the Noteholder Plan in exchange for the applicable Put Claims. In the event that any modifications are made to the Claims Purchase Schedule, the Claims Purchaser, either directly or through its legal advisors, shall provide the Claims Purchase Agent with any such modifications and the Claims Purchase Agent shall follow any such directions (to the extent the applicable payment has not already been distributed).

(b) <u>Put Claims Transfer</u>. The applicable Holders of Put Claims shall be deemed to have transferred their respective Put Claims to the Claims Purchaser upon their receipt from the Claims Purchase Agent of the applicable Claims Purchase Price; *provided, however*, that, to the extent the aggregate consideration necessary to purchase Other Parent Put Claims or Other Guarantor Debtor Put Claims, as applicable, exceeds the Other Parent Claims Purchase Price Cap or Other Guarantor Debtor Claims Purchase Price Cap, as applicable, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims or Other Guarantor Debtor Put Claims in the applicable Class, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price or Other Guarantor Debtor Purchase Price, as applicable, and the remaining portion of the applicable Other Parent Put Claims or Other Guarantor Debtor Put Claims shall receive their Pro Rata share of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests, as applicable, on account of such remaining amount of the applicable Other Parent Put Claims and Other Guarantor Debtor Put Claims.

(c) <u>Release of Remaining Funds</u>. No later than five (5) Business Days following the purchase of the last Put Claim set forth on the Claims Purchase Schedule, the Claim Purchase Agent shall release to the Claims Purchaser all products and proceeds of the Claims Purchase Price (including all interest thereon) earned while such amounts were held in the Escrow Account.

4. <u>Termination</u>. This Agreement shall terminate when all of the Claims Purchase Funds in the Escrow Account have been released and distributed in accordance with this Agreement and the Noteholder Plan. Upon such termination, this Agreement shall have no further force and effect, except that the provisions of <u>Sections 3(c)</u>, <u>5</u>, <u>6</u>, <u>8</u> through <u>15</u>, and <u>17</u> through <u>19</u> of this Agreement shall survive such termination.

3

5. <u>Conditions to Agency</u>. The acceptance by the Claims Purchase Agent of its responsibilities hereunder is subject to the following terms and conditions which the Claims Purchase Agent and Claims Purchaser agree shall govern and control with respect to the Claims Purchase Agent's rights, duties and liabilities hereunder:

(a) <u>Documents</u>. The Claims Purchase Agent shall be protected in acting upon any written notice, request, waiver, consent, receipt or other paper or document furnished to it, not only as to its due execution and validity and the effectiveness of its provisions, but also as to the truth and accuracy of any information therein contained, which the Claims Purchase Agent in good faith believes to be genuine and what it purports to be. Should it be necessary for the Claims Purchase Agent to act upon any instructions, directions, documents or instruments issued or signed by or on behalf of any Person acting on behalf of the Claims Purchaser, it shall not be necessary for the Claims Purchase Agent to inquire into such Person's authority. The Claims Purchase Agent is also relieved from the necessity of satisfying itself as to the authority of the Persons executing this Agreement in a representative capacity on behalf of the Claims Purchaser.

(b) <u>Liability</u>. The Claims Purchase Agent shall not be liable for any act or omission taken or suffered in good faith with respect to this Agreement unless such act or omission is the result of the gross negligence, willful misconduct or fraud of the Claims Purchase Agent.

(c) <u>Legal Counsel</u>. The Claims Purchase Agent may consult with, and obtain advice from, legal counsel in the event of any question as to any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in good faith in accordance with the opinion and instructions of such counsel.

(d) <u>Limitation of Duties</u>. The Claims Purchase Agent shall have no duties in its capacity as Claims Purchase Agent hereunder, except those which are expressly set forth herein. The duties of the Claims Purchase Agent shall be ministerial and administrative in nature, and the Claims Purchase Agent shall not have a fiduciary or trust relationship with the Claims Purchaser, any Other Parent Claim Holder or Other Guarantor Debtor Claim Holder set forth on the Claims Purchase Schedule or any other person by reason of this Agreement.

(e) <u>Discharge of the Claims Purchase Agent</u>. Upon delivery of all of the Claims Purchase Funds pursuant to the terms of <u>Section 3</u> above and Sections 5.14, 7.5 and 7.6 of the Noteholder Plan, the Claims Purchase Agent (in the case of distributions pursuant to <u>Section 3</u> above) shall thereafter be discharged from any further obligations hereunder. The Claims Purchase Agent is hereby authorized, in any and all events, to comply with and obey any and all final judgments, orders and decrees of any court of competent jurisdiction which may be filed, entered or issued, and all final arbitration awards and, if it shall so comply or obey, it shall not be liable to any other Person by reason of such compliance or obedience.

6. <u>Indemnification</u>. The Claims Purchaser hereby agrees to indemnify the Claims Purchase Agent and its directors, officers, members, managers, and employees (collectively, the "<u>Indemnified Persons</u>") for and to hold the Indemnified Persons harmless against any damages, liability or reasonable expenses (including reasonable attorneys' fees and documented out-of-pocket expenses) incurred without gross negligence, willful misconduct or

4

fraud on the part of such Indemnified Person arising out of or in connection with the Claims Purchase Agent's performance under this Agreement. The Claims Purchaser shall have the exclusive right to conduct the defense or settlement of any claim under the Indemnity at its sole expense, and the Indemnified Persons shall cooperate.  The Indemnified Persons shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages by the Claims Purchaser.

7. Claims Purchase Agent's Costs.  The reasonable fees and expenses of the Claims Purchase Agent (including fees and expenses of outside counsel) in discharging its duties under this Agreement and the Noteholder Plan shall be paid by the Claims Purchaser.

8. Notices.  All notices, requests, claims, demands and other communications under this Agreement shall be in writing and shall be delivered by hand or overnight courier service or by facsimile to the Parties at the following addresses:

If to the Claims Purchase Agent, to:

[ ]
Attention:  [ ]
Facsimile:  [ ]
Telephone:  [ ]

If to the Claims Purchaser, to:


Attention:
Facsimile:
Telephone:


or to such other Persons, addresses or facsimile numbers as may be designated in writing by the Person entitled to receive such communication as provided above.  Each such communication shall be effective (a) if delivered by hand, when such delivery is made at the address specified in this Section 8, (b) if delivered by overnight courier service, the next business day after such communication is sent to the address specified in this Section 8 or (c) if delivered by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section 8 and appropriate confirmation is received.

9. Entire Agreement; Amendments.  This Agreement, together with the Noteholder Plan, contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes any prior understandings or agreements by or among the Parties, whether written or oral, which may have related to the subject matter hereof in any way.  This Agreement shall in no way be construed to modify the obligations of the Debtors or any other entity under the terms of the Noteholder Plan.  This Agreement may be amended, or any provision of this Agreement may be waived, so long as such amendment or waiver is set forth in a writing executed by each of the Parties hereto, except as provided in Section 3(a) with respect to the Claims Purchase Schedule.  Any amendment to this Agreement shall be reasonably

5

acceptable to the Claims Purchase Agent and the Claims Purchaser. No course of dealing between or among the Parties shall be deemed effective to modify, amend or discharge any part of this Agreement of any rights or obligations of any Party under or by reason of this Agreement.

10. <u>Inconsistencies</u>. To the extent of any inconsistencies between the information contained in this Agreement and the terms and provisions of the Noteholder Plan, the terms and provisions of the Noteholder Plan shall govern.

11. <u>Assigns and Assignment</u>. This Agreement and all actions taken hereunder shall inure to the benefit of and shall be binding upon the Claims Purchaser and upon its successors and assigns. The Claims Purchase Agent shall not be permitted to transfer or assign its obligations hereunder.

12. <u>Interpretation</u>. The headings in this Agreement are inserted for convenience of reference only and shall not be a part of or control or affect the meaning hereof.

13. <u>No Waiver</u>. No failure or delay by a Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, and no single or partial exercise thereof shall preclude any right of further exercise or the exercise of any other right, power or privilege.

14. <u>Severability</u>. The Parties agree that (a) the provisions of this Agreement shall be severable in the event that for any reason whatsoever the provisions hereof are invalid, void or otherwise unenforceable, (b) such invalid, void or otherwise unenforceable provisions shall be automatically replaced by other provisions which are as similar as possible in terms to such invalid, void or otherwise unenforceable provisions, but are valid and enforceable and (c) the remaining provisions shall remain enforceable to the fullest extent permitted by law.

15. <u>No Strict Construction</u>. The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their collective mutual intent, and no rule of strict construction shall be applied against any person. The term "including" as used herein shall be by way of example, and shall not be deemed to constitute a limitation of any term or provision contained herein. Each defined term used in this Agreement has a comparable meaning when used in its plural or singular form.

16. <u>Releases on Non-Business Days</u>. In the event that a release of Claims Purchase Funds hereunder is required to be made on a date that is not a business day, such release may be made on the next succeeding business day with the same force and effect as if made when required.

17. <u>Governing Law</u>. All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York. In furtherance of the foregoing, the internal law of the State of New York shall control the interpretation and construction of this Agreement, even though under that jurisdiction's choice of law or conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply. THE PARTIES WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT

OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE BETWEEN THE PARTIES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

18. <u>Counterparts</u>.  This Agreement may be executed by the Parties individually or in any combination, in one or more counterparts (including by means of telecopied, e-mailed or other means of electronically transmitted signature pages), each of which shall be an original and all of which shall together constitute one and the same agreement.

19. <u>Identifying Information</u>.  To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.  For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Claims Purchase Agent will ask for documentation to verify its formation and existence as a legal entity.  The Claims Purchase Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first written above.

**CLAIMS PURCHASER**

By: _____
    Name:
    Title:

**CLAIMS PURCHASE AGENT**

By: _____
    Name:
    Title:

## Exhibit A

**Other Parent Claims Purchase Schedule**

## Exhibit B

**Other Guarantor Debtor Claims Purchase Schedule**