**<u>Attachment K</u>**

**Exhibit 7.16.1**

**Distribution Trust Agreement**

**NOTEHOLDER PLAN EXHIBIT 7.16.1**

<u>DISTRIBUTION TRUST AGREEMENT</u>

This Exhibit is subject to all of the provisions of the Noteholder Plan, including, without limitation, Section 13.8, pursuant to which the Proponents have reserved the right, subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, to alter, amend or modify the Noteholder Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to substantial consummation of the Noteholder Plan.

## TRIBUNE DISTRIBUTION TRUST AGREEMENT

This Tribune Distribution Trust Agreement (the "**Distribution Trust Agreement**") is made this \_\_\_\_ day of _____ 2011 by and between Tribune Company ("**Tribune**"), on behalf of itself and the other Debtors, and the Person identified on <u>Exhibit A</u>, as trustee (such Person and each successor trustee, the "**Distribution Trustee**"), and creates and establishes the distribution trust (the "**Distribution Trust**") referenced herein in order to facilitate the implementation of the Joint Chapter 11 Plan of Reorganization for the Debtors proposed by Aurelius Capital Management, LP, on behalf of its managed entities, Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes, dated December 9, 2010 (as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, the "**Plan**"). Each of the Debtors (or, after the Effective Date, the Reorganized Debtors) and the Distribution Trustee are sometimes referred to herein individually as a "**Party**" and, collectively, as the "**Parties**."

## RECITALS

WHEREAS, Tribune and certain of the other Debtors filed voluntary petitions for relief (collectively, the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on December 8, 2008 (the "**Petition Date**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"); and

WHEREAS, on _____, 2011, the Bankruptcy Court entered its order confirming the Plan (the "**Confirmation Order**"); and

WHEREAS, the Plan provides, among other things, as of the effective date of the Plan (the "**Effective Date**"), for (a) the creation and establishment of the Distribution Trust and the creation and distribution of the Distribution Trust Interests to the beneficiaries thereof (the "**Beneficiaries**"), (b) the transfer to the Distribution Trust of the Distribution Trust Assets, (c) the administration and liquidation of the Distribution Trust Assets and the distribution of the proceeds therefrom to the holder of the Distribution Trust Interests, in accordance with this Distribution Trust Agreement, the Plan, the Confirmation Order, the Litigation Distribution Orders and the PHONES Notes Claims Resolution (collectively, the "**Directives**"); and

WHEREAS, the Distribution Trust is intended to qualify as a "liquidating trust" under the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder ("Treasury Regulations"), specifically Treasury Regulation section 301.7701-4(d), and as a grantor trust pursuant to IRC Sections 671-677 for United States federal income tax purposes; provided that the Distribution Trustee may, in consultation with the Distribution Trust Advisory Board, initially elect to treat a portion of the assets of the Distribution Trust attributed to certain Disputed Claims to be resolved

by the Distribution Trustee hereunder as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9(c)(2)(ii), or, upon obtaining a private letter ruling, may treat such Disputed Claims as held by a trust described in IRC Section 641.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

ARTICLE I
**DEFINITIONS**

For all purposes of this Distribution Trust Agreement, capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Plan. Unless otherwise specified, Article, Section and Paragraph references herein are to Articles, Sections and Paragraphs of this Distribution Trust Agreement.

ARTICLE II
**ESTABLISHMENT OF THE DISTRIBUTION TRUST**

2.1     Establishment of Distribution Trust and Appointment of Distribution Trustee.

(a)     Pursuant to the Plan and the Confirmation Order, the Parties hereby establish a trust which shall be known as the "Tribune Distribution Trust."

(b)     The Distribution Trustee is hereby appointed as trustee of the Distribution Trust effective as of the Effective Date and agrees to accept and hold the assets of the Distribution Trust in trust for the Beneficiaries subject to the provisions hereof and the Directives. The Distribution Trustee and each successor trustee serving from time to time hereunder shall have all the rights, powers and duties set forth herein.

(c)     Any action by the Distribution Trustee and/or the Distribution Trust Advisory Board which affects the interests of more than one Beneficiary shall be binding and conclusive on all Beneficiaries, even if such Beneficiaries have different or conflicting interests.

(d)     The Distribution Trustee and the members of the Distribution Trust Advisory Board (each, a "**Member**") shall serve without bond.

(e)     For the avoidance of doubt, none of the Distribution Trustee or any Member is an officer, director or fiduciary of any of the Reorganized Debtors.

2.2     Transfer of Distribution Trust Assets.

(a)     Pursuant to the Plan, as of the Effective Date, (i) the Debtors and the Estates hereby transfer, assign, and deliver to the Distribution Trust, without recourse, all of their respective rights, title, and interest in and to the Distribution Trust Reserve,

2

the New Class C Common Stock and the Distribution Trust Initial Funding, in each case free and clear of any and all Claims and Liens in such property (except to the extent provided in Section 2.3(a) below in respect of the Distribution Trust Initial Funding), and (ii) the Debtors and the Estates shall transfer, assign and deliver to the Litigation Trust, without recourse, all of their respective rights, title, and interest in and to all Litigation Trust Causes of Action and the Distribution Trust shall become the sole Beneficiary of the Litigation Trust, entitled to all of the rights, title, and interest in and to any proceeds from the Litigation Causes of Action, in accordance with the Litigation Trust Agreement and the Directives (all property held or to be held by the Distribution Trust for the benefit of the Beneficiaries, including, without limitation, such property described in (i) and (ii) above, the "**Distribution Trust Assets**").  On or as reasonably practicable following the Effective Date, the Distribution Trust shall also receive the Initial Distributions Property, as set forth in Section 2.4 below.  The Initial Distributions Property shall not be part of the Distribution Trust Assets.

(b)     It is intended that such transfers, assignments and deliveries shall be exempt from all stamp taxes, real estate transfer, mortgage reporting, sales, use or other similar taxes pursuant to section 1146(a) of the Bankruptcy Code.

2.3     Funding of the Distribution Trust.

(a)     On the Effective Date, the Reorganized Debtors shall provide the Distribution Trust Initial Funding to the Distribution Trust and the Distribution Trust shall establish an expense fund (the "**Trust Expense Fund**") therewith to fund the costs and expenses involved in the administration and operation of the Distribution Trust, the Litigation Trust and the Creditors' Trust (in the form of the Creditors' Trust Initial Funding, as set forth below), as set forth herein and in the Plan.  To the extent that any of such Distribution Trust Initial Funding is not used, and no longer reserved, to fund such costs and expenses (as determined, respectively, by the Distribution Trust Advisory Board, the Litigation Trust Advisory Board and the Creditors' Trust Advisory Board), such unused Distribution Trust Initial Funding (but not any other Trust Expense Funding) shall revert and be returned to the Reorganized Debtors promptly following the Final Distribution Date.  Further, the Distribution Trustee shall have the power and authority, with the approval of the Distribution Trust Advisory Board, to retain proceeds from any of the  Distribution Trust Assets and to add such proceeds to the Trust Expense Fund, at any time and from time to time, in such amounts as the Distribution Trustee, with the approval of the Distribution Trust Advisory Board, deems reasonable and appropriate to ensure that the Trust Expense Fund will be adequate to meet the applicable costs and expenses of the Distribution Trust, and to arrange for other sources of financing, as the Distribution Trustee deems necessary or desirable in its sole discretion, subject to the approval of the Distribution Trust Advisory Board.  Any amounts used by the Distribution Trustee to fund the Trust Expense Fund are hereinafter referred to as "**Trust Expense Funding**."  Notwithstanding the foregoing or any other provision in this Distribution Trust Agreement to the contrary, all costs and expenses incurred by or on behalf of the Distribution Trust and/or the Distribution Trustee in connection with the administration of the Initial Distributions Account (including, without limitation, the cost of objecting to and resolving Disputed Claims in respect of Initial Distributions) shall be

reimbursed to the Distribution Trust by the Reorganized Debtors promptly upon receipt of written invoices therefor from the Distribution Trustee.

(b)     On or as soon as practicable following the Effective Date, the Distribution Trust shall provide the Creditors' Trust Initial Funding to the Creditors' Trust in the form of a loan in the amount of $5 million, or such other amount as may be determined by the Distribution Trust Advisory Board, on such terms and conditions as determined by the Distribution Trust Advisory Board, which amount shall be repaid in full by the Creditors' Trust from the proceeds of the State Law Avoidance Claims, prior to any beneficiary of the Creditors' Trust receiving any of such proceeds.

(c)     Any failure or inability of the Distribution Trust to obtain Trust Expense Funding will not affect the enforceability of the Distribution Trust.

2.4     Establishment of Initial Distributions Account and Disputed Ownership Fund.

(a)     On or as soon as reasonably practicable following the Effective Date, an account shall be created by the Distribution Trustee (the "**Initial Distributions Account**") and funded by the Debtors and/or Reorganized Debtors depositing therein such property as is necessary to make the Initial Distributions on the Initial Distributions Date in accordance with the Plan.  The property deposited into the Initial Distributions Account (the "**Initial Distributions Property**") shall be sufficient to satisfy all Allowed Claims in respect of Initial Distributions as of the Effective Date  as well as to constitute a reserve (the "**Disputed Claims Reserve**") sufficient to satisfy Disputed Claims that become Allowed Claims, following the Effective Date in respect of Initial Distributions in accordance with the Plan, including, without limitation, the Claims of holders of (i) Disputed Other Parent Claims, (ii) Disputed Other Guarantor Debtor Claims, (iii) Disputed Other Non-Guarantor Debtor Claims and (iv) Class 1D Claims (to the extent entitled to such amounts under the Senior Loan Claim Sharing Resolution), in each case, that become Allowed Claims following the Effective Date in accordance with the Plan. The Initial Distributions Account shall be for the benefit of all holders of Allowed Claims entitled to Initial Distributions under the Plan (the "**Initial Distributions Claimants**"), and for those that become Allowed Claims and for which the reserve has been established.  The Debtors and Reorganized Debtors shall transfer, assign, and deliver to the Distribution Trust, without recourse, all of their respective rights, title, and interests in and to the Initial Distributions Property free and clear of any and all Claims and Liens in such property.

(b)     On the Initial Distribution Date, the Distribution Trustee, acting as Disbursing Agent, shall make distributions of the Initial Distributions Property to the Initial Distributions Claimants as of such date in accordance with the Plan and the Confirmation Order.

(c)     On or as soon as reasonably practicable following the Effective Date, a reserve shall be created by the Distribution Trustee (the "**Disputed Ownership Fund**" or "**DOF**") which shall include the Disputed Claims Reserve after being funded

by the Debtors and/or Reorganized Debtors as described in Section 2.4(a).  As Disputed Claims described in Section 2.4(a) are resolved and become Allowed Claims, the Distribution Trustee shall make distributions of the Initial Distributions Property to the holders of such Allowed Claims from the DOF in accordance with the Plan and Confirmation Order.

(d)    Any Distribution Trust Assets held in the DOF that are allocated to Claims that are Disallowed Claims and any Initial Distributions Property remaining in the Initial Distributions Account following the payment in full of all Allowed Initial Distributions shall thereafter be distributed by the Distribution Trust to the holders of Allowed Claims in accordance with the Directives.  For the avoidance of doubt, the Initial Distribution Property shall not be part of the Distribution Trust Assets and Initial Distributions Claimants shall not, as such, be Beneficiaries or holders of Distribution Trust Assets.

(e)    The Distribution Trustee shall have the sole power and authority, with the approval of the Distribution Trust Advisory Board, to (i) object to the allowance of, allow, or settle and compromise all General Unsecured Claims, except for General Unsecured Claims related to the Litigation Trust Causes of Action, and (ii) seek to have the PHONES Notes Claims Resolution adjudicated in the event that the PHONES Notes Claims Resolution has not been obtained prior to the Effective Date, in each case as provided in, and in accordance with, the Plan.

2.5    Title to the Distribution Trust Assets.  The transfer of the Distribution Trust Assets to the Distribution Trust pursuant to Section 2.2 hereof is being made for the sole benefit, and on behalf of, the Beneficiaries. Upon the transfer of the Distribution Trust Assets to the Distribution Trust, the Distribution Trust shall succeed to all of the Debtors', Estates', Litigation Trust's and Beneficiaries' rights, title and interest in the Distribution Trust Assets and no other entity shall have any interest, legal, beneficial, or otherwise, in the Distribution Trust or the Distribution Trust Assets upon their assignment and transfer to the Distribution Trust (other than as provided herein or in the Plan).

2.6    Nature and Purpose of the Distribution Trust.

(a)    Purpose.  The Distribution Trust is organized and established as a trust pursuant to which the Distribution Trustee, subject to the terms and conditions contained in the Directives and subject to the approval of the Distribution Trust Advisory Board, shall (i) hold and administer the Distribution Trust Assets, resolve Claims in the Disputed Ownership Fund, and distribute to the Beneficiaries the Distribution Trust Assets in a timely fashion in accordance with the Directives and in accordance, with Treasury Regulation section 301.7701-4(d) for the liquidating trust and in accordance with Treasury Regulation section 1.468B-9(c)(2)(ii) for the DOF, (ii) hold the Initial Distributions Property and distribute the same to the Initial Distributions Claimants, and (iii) resolve Claims in the DOF as set forth herein and in the Plan.  The primary purposes of the Distribution Trust are to resolve the Claims in the DOF and liquidate the assets held thereby with no objective to continue or engage in the conduct of, or to further, any

trade or business.  The Distribution Trustee shall be under an obligation to make continuing reasonable efforts to distribute the Distribution Trust Reserve and proceeds of the Litigation Trust Causes of Action timely in accordance with the Directives, and not unreasonably prolong the duration of the Distribution Trust.

(b)    Relationship.  This Distribution Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Distribution Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Distribution Trustee, the Distribution Trust Advisory Board (or any of its Members), the Beneficiaries, Initial Distribution Claimants or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Distribution Trustee and the Distribution Trust Advisory Board shall be solely that of beneficiaries of a trust and shall not be deemed a principal and agency relationship.  The rights of the Beneficiaries and the Initial Distribution Claimants shall be limited to those conferred upon them by this Distribution Trust Agreement.

2.7    Cooperation of Reorganized Debtors.  The Reorganized Debtors and each employee, officer and director of the Reorganized Debtors shall be required to cooperate in all respects, at the Reorganized Debtors' sole cost and expense, with the Distribution Trustee in the administration of the Distribution Trust and shall not take any action that could interfere with or fail to take any action within the Reorganized Debtors' control if such failure could interfere with, the Distribution Trustee's administration of the Distribution Trust.  The Distribution Trustee shall have the right to seek relief from the Bankruptcy Court, including seeking an order of contempt of the Directives, if, in the Distribution Trustee's judgment, the Reorganized Debtors or any employee, officer or director of the Reorganized Debtors fails to cooperate in accordance with the provisions of this Section.  The Reorganized Debtors shall preserve (at their sole cost and expense) all records and documents (including all electronic records or documents) related to the Distribution Trust Assets for a period of five (5) years after the Effective Date, or if any Claims in the Distribution Trust (including within the DOF) are then still unresolved, then until such later time as the Distribution Trustee notifies the Reorganized Debtors in writing that such records are no longer required to be preserved.  The Distribution Trustee shall be permitted to use all such records and documents in connection with the administration of the Distribution Trust.  Without limiting the foregoing, the Debtors and the Reorganized Debtors shall cooperate with the Distribution Trustee (at the Debtors' and the Reorganized Debtors' sole cost and expense) in connection with (a) the issuance and distribution of New Common Stock and New Warrants (and the issuance of New Common Stock upon the exercise of the New Warrants), in each case consistent with the elections of the recipients thereof, and all other instruments, certificates and other documents required to be issued or distributed pursuant to the Directives, and (b) the resolution of Claims in the Distribution Trust (including the DOF),(and, as necessary, seeking to have the PHONES Notes Claims Resolution adjudicated, by the Distribution Trustee as set forth herein and in the Plan, including, without limitation, delivering or causing to be delivered to the Distribution Trustee any information and documents (including those maintained in electronic format

and original documents), whether held by the Debtors or Reorganized Debtors, their agents, advisors, attorneys, accountants or any other professional hired by the Debtors or Reorganized Debtors, that the Distribution Trustee believes are reasonably necessary or desirable in assisting the Distribution Trustee in resolving such Disputed Claims and, as necessary, seeking to have the PHONES Notes Claims Resolution adjudicated. The Debtors and the Reorganized Debtors shall not be permitted to invoke any privilege, including, but not limited to, attorney/client privileges, work product privileges, accountant/client privileges or any other evidentiary privileges to prevent the Distribution Trustee from using such records and documents for the purpose of administering the Distribution Trust.

2.8     Relationship to, and Incorporation of, the Directives.  The principal purpose of this Distribution Trust Agreement is to aid in the implementation of the Directives, and therefore this Distribution Trust Agreement incorporates the provisions thereof by this reference. To that end, the Distribution Trustee shall have full power and authority to take any action consistent with the purpose and provisions of all of the Directives, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan that directly affect the interests of the Distribution Trust, and to seek any orders from the Bankruptcy Court solely in furtherance of this Distribution Trust Agreement.  As among the Distribution Trust, the Distribution Trustee, the Distribution Trust Advisory Board, the Beneficiaries, the Initial Distribution Claimants, the Debtors and the Reorganized Debtors, if any provisions of this Distribution Trust Agreement are found to be inconsistent with the provisions of the Plan, the Confirmation Order or the Litigation Distribution Orders, each such document shall have controlling effect in the following rank order: Litigation Distributions Orders, Confirmation Order, the Plan and this Distribution Trust Agreement.

## ARTICLE III
## DISTRIBUTION TRUST INTERESTS

3.1     Distribution Trust Interests.    The Distribution Trust Interests will be represented by book entries on the books and records of the Distribution Trust.  The Distribution Trust will not issue any certificate or certificates to evidence any Distribution Trust Interests.  The Distribution Trust will be permitted to issue Distribution Trust Interests divided into such number of classes and with such numerical and/or alphabetical designations as necessary or advisable to give effect to the distributions contemplated in the Plan.

3.2     Allocation of Distribution Trust Interests.  The allocation of the Distribution Trust Interests among the Beneficiaries shall be accomplished as set forth in the Plan, including, without limitation, Article 3 and Article 8 of the Plan, with each separate Class of Claims being entitled to receive a distribution of the particular Class or Classes of Distribution Trust Interest set forth therein.

3.3     Interests Beneficial Only.  The ownership of a Distribution Trust Interest shall not entitle any Beneficiary to any title in or to the Distribution Trust Assets as such

(which title shall be vested in the Distribution Trust) or to any right to call for a partition or division of the Distribution Trust Assets or to require an accounting.

3.4 <u>Identification of Holders of Distribution Trust Interests</u>. The record holders of Distribution Trust Interests shall be recorded and set forth in a register maintained by the Distribution Trustee expressly for such purpose ("**Register**"). All references in this Distribution Trust Agreement to holders of Distribution Trust Interests shall be read to mean holders of record as set forth in the official Register maintained by the Distribution Trustee and shall not mean any beneficial owner not recorded on such official registry.

3.5 <u>Transferability of Distribution Trust Interests</u>. The Distribution Trust Interests shall be transferable in accordance with and subject to applicable law; *provided*, *however*, that (i) if the Distribution Trust Interests are at any time certificated, the form of certificate may carry a legend, in substance and form reasonably satisfactory to the Distribution Trustee (with the approval of the Distribution Trust Advisory Board) that shall set forth that the interests represented thereby, and the holder thereof, are subject to the terms of the Directives, and (ii) if the Distribution Trustee, with approval of the Distribution Trust Advisory Board and upon advice of counsel, determines that any or all of the Distribution Trust Interests are subject to registration pursuant to Section 12 of the Securities Exchange Act of 1934, as amended, the Distribution Trustee shall, as directed by the Distribution Trust Advisory Board, pursue relief from such registration by obtaining either an exemptive order, a no-action letter or an interpretive letter from the Securities and Exchange Commission or its staff or, absent its ability to achieve that objective or in lieu thereof, shall register such class pursuant to Section 12 of such statute (it being understood and agreed that the Distribution Trustee shall be authorized (with the approval of the Distribution Trust Advisory Board), among other things, to register such class and to seek relief from one or more of the requirements then applicable subsequent to such registration and to de-register such class).

3.6 <u>Change of Address</u>. A Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Distribution Trustee identifying such alternative distribution address. Such notification shall be effective only upon receipt by the Distribution Trustee. Absent actual receipt of such notice by the Distribution Trustee, the Distribution Trustee shall not recognize any such change of distribution address.

ARTICLE IV
**RIGHTS, POWERS AND DUTIES OF DISTRIBUTION TRUSTEE**

4.1 <u>Role of the Distribution Trustee</u>. In furtherance of and consistent with the purpose of the Distribution Trust and the Plan, subject to the terms and conditions contained in the Directives, the Distribution Trustee shall, subject to the approval of the Distribution Trust Advisory Board (i) receive, manage, supervise and protect the Distribution Trust Assets upon its receipt of same on behalf of and for the Beneficiaries; (ii) calculate and implement all distributions to be made to holders of Distribution Trust Interests in accordance with the Directives; (iii) subject to the provisions of Section 4.2,

8

determine a method for allocating all items of income, gain, loss, deduction and credit among the Beneficiaries and the DOF in accordance with the Distribution Trust's treatment as a grantor trust, (iv) file all required tax returns and pay taxes and all other obligations of the Distribution Trust; (v) hold the Initial Distributions Property in the Initial Distributions Account, maintain the Disputed Claims Reserve and object to and/or resolve Disputed Claims in the DOF in respect thereof and make Initial Distributions from the Initial Distributions Account to the Initial Distributions Claimants; and (vi) have all such other responsibilities as may be vested in the Distribution Trustee pursuant to the Directives and all other orders of the Bankruptcy Court.  The Distribution Trustee in consultation with, and subject to the approval of, the Distribution Trust Advisory Board, shall be responsible for all decisions and duties with respect to the Distribution Trust and the Distribution Trust Assets and the Initial Distributions Account and the Initial Distributions Account Property, such decisions and duties to be carried out in accordance with the Directives. In all circumstances, the Distribution Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Distribution Trust, and shall use commercially reasonable efforts to dispose of the Distribution Trust Assets and the Initial Distributions Property and to make timely distributions and not unreasonably prolong the duration of the Distribution Trust.  The Distribution Trustee shall have fiduciary duties to the Beneficiaries consistent with the fiduciary duties that a member of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her or its responsibilities accordingly.

4.2    <u>Apportionment of Taxable Items to Beneficiaries</u>.  Prior to the resolution of the Litigation Trust Causes of Action and the entry of the Litigation Distribution Orders, the Distribution Trustee shall, subject to the approval of the Distribution Trust Advisory Board, but without necessity for review or approval by the Bankruptcy Court or any other Person, on or before the Effective Date, determine an appropriate method for allocating all items of income, gain, loss, deduction and credit among the Beneficiaries and the DOF in accordance with the Distribution Trust's treatment as a grantor trust, and report in accordance with such method.  In determining an appropriate allocation, the Distribution Trustee and the Distribution Trust Advisory Board shall consult with the Litigation Trustee and the Creditors' Trustee and their respective trust advisory boards. The relative interests of each class of Interests in the Distribution Trust shall be adjusted to reflect the outcome of the Litigation Trust Causes of Action and the entry of the Litigation Distribution Orders.  All members of a class of Interests shall be treated in the same manner as other members of such class, except as otherwise provided by any judicial order.  The determination made by the Distribution Trustee and the Distribution Trust Advisory Board under this Section 4.2 shall not be subject to challenge or review.

4.3    <u>Retention of Counsel and Other Professionals</u>.  The Distribution Trustee may, subject to the approval of the Distribution Trust Advisory Board, but without necessity for review or approval by the Bankruptcy Court or any other Person (a) retain such independent experts, advisors and other third parties (including, but not limited to, counsel, tax advisors, consultants, or other professionals) as the Distribution Trustee deems necessary to aid it in the performance of its duties and responsibilities hereunder and under the Plan and to perform such other functions as may be appropriate in

furtherance of the intent and purpose of this Distribution Trust Agreement, and (b) commit and cause the Distribution Trust to provide such professional persons or entities reasonable compensation (including contingency fee based compensation) and reimbursement from the Trust Expense Fund for services rendered and expenses incurred. The Distribution Trustee may, with the approval of the Distribution Trust Advisory Board, agree with the Litigation Trustee and/or the Creditors' Trustee to share the services of legal counsel and other experts, advisors and third party service providers (for example and without limitation, e-discovery, document hosting and document storage services) as the Distribution Trustee may deem appropriate and desirable in administering the Distribution Trust as set forth herein.  The costs and expenses related to any such shared services shall be equitably allocated among the parties so sharing such services as such parties shall determine, with, in the case of the Distribution Trust, the approval of the Distribution Trust Advisory Board.  Notwithstanding the foregoing, in no event shall any attorney/client privilege, work product privilege, accountant/client privilege or any other evidentiary privilege of the Distribution Trust, the Litigation Trust or the Creditors' Trust be, or be deemed to have been, waived or otherwise compromised as the result of any such sharing arrangement.

4.4    Distribution Trust Expenses.  Except as otherwise provided for herein or in any Directive, the Distribution Trustee may incur any reasonable and necessary fees, expenses and costs in liquidating the Distribution Trust Assets, distributing the Initial Distributions Property and performing the duties and obligations of the Distribution Trustee pursuant to the terms and conditions of this Distribution Trust Agreement and such other actions that are necessary or advisable in connection therewith or in furtherance thereof.  All such fees, expenses, and costs shall be paid by, and solely be the obligation of, the Distribution Trust.  For avoidance of doubt, in no event shall the Reorganized Debtors be required to provide any Trust Expense Funding to the Distribution Trust other than as provided in Section 2.3(a).

(a)    The Trust Expense Funding in the Trust Expense Fund may be used by the Distribution Trustee, with the approval of the Distribution Trust Advisory Board (i) as the Distribution Trustee determines is reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Distribution Trust during liquidation, (ii) to pay reasonable administrative expenses (including but not limited to, the costs and expenses of the Distribution Trustee (including reasonable fees, costs, and expenses of professionals and other third parties) and the Members (including reasonable fees, costs, and expenses of legal counsel)), any taxes imposed on the Distribution Trust or in respect of the Distribution Trust Assets or fees and expenses in connection with, arising out of or related to the Distribution Trust Assets, (iii) in respect of the Litigation Trust and the Creditors' Trust as set forth in Section 2.3 of this Distribution Trust Agreement, and (iv) to satisfy other liabilities incurred or assumed by the Distribution Trust (or to which the assets are otherwise subject) in accordance with the Plan.

(b)    The Distribution Trustee may, with the approval of the Distribution Trust Advisory Board, retain proceeds from the Distribution Trust Assets and add such proceeds to the Trust Expense Fund, at any time and from time to time, in such amounts

as the Distribution Trustee deems reasonable and appropriate to ensure that the Trust Expense Fund will be adequate to meet the expenses and liabilities described in Section 4.4(a) above and to arrange for other sources of financing, as the Distribution Trustee deems necessary or desirable in his sole discretion, subject to the approval of the Distribution Trust Advisory Board.

(c)     Notwithstanding any other provision of this Distribution Trust Agreement to the contrary, the Distribution Trustee shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Distribution Trust unless it shall have sufficient funds in the Trust Expense Fund for that purpose.

4.5     Distributions.

(a)     The distribution of the Distribution Trust Assets to the Beneficiaries shall be accomplished as set forth in the Directives, including, without limitation, Articles 3, 5, 7 and 8 of the Plan (including such provisions in respect of interest on Claims and allocation of distributions between principal and interest, undeliverable and unclaimed distributions, Distribution Records Dates, means of Cash payments, setoffs, fractional shares, *de minimis* distributions, unimpaired claims and subordination).

(b)     In the reasonable discretion of the Distribution Trustee and subject to the requirements of Revenue Procedure 94-45, 1994-2 C.B. 684 and the direction of the Distribution Trust Advisory Board, the Distribution Trustee shall distribute all Cash on hand (including, but not limited to, the Distribution Trust's net income and net proceeds from any sale of assets, any Cash received on account of or representing proceeds, and treating as Cash for purposes of this Section 4.5 any permitted investments under Section 4.8 below), except such amounts (i) as are reserved for distribution to holders of Disputed Claims (as of the time of such distribution but only until such Disputed Claim is resolved), and (ii) as are reasonably necessary for the Trust Expense Fund or otherwise to meet contingent liabilities (including professional fees) and to maintain the value of the Distribution Trust Assets.  The Distribution Trustee shall make all such distributions as set forth in the Directives; in accordance with the provisions of IRC Section 677 (to the extent the Distribution Trust is taxable as a grantor trust), the income of the Distribution Trust shall be distributed or held or accumulated for future distribution pursuant to the Directives.

(c)     The Distribution Trustee may retain a distribution agent for the effective administration and distribution of amounts payable to the Beneficiaries and all costs and expenses of such distribution agent shall be paid from Trust Expense Fund.

(d)     The Distribution Trustee will require, as a condition to any distribution of New Common Stock or Warrants, that the Beneficiary file an election to receive New Common Stock and/or New Warrants.  For any Beneficiary that elects to receive New Common Stock, prior to exchanging any Warrants for New Common Stock for distribution to a Beneficiary, the Distribution Trustee shall require the Beneficiary to

submit a Foreign Ownership Certification and to submit a Media Ownership Certification or to confirm the absence of any changes to a Foreign Ownership Certification and Media Ownership Certification previously submitted. Any Beneficiary that fails to submit a Foreign Ownership Certification and Media Ownership Certification or to confirm the absence of any changes to a previously submitted Foreign Ownership Certification and Media Ownership Certification shall be deemed to be an entity that is foreign-owned and controlled and/or otherwise subject to FCC media ownership requirements and qualifications reporting requirements. Notwithstanding anything in this Distribution Trust Agreement to the contrary, neither the Distribution Trustee nor any Member will take any action pursuant to this Distribution Trust Agreement if such action would result in a violation of the Communications Act or the FCC's Rules, or would constitute or result in any assignment or transfer of control of any license issued by the FCC, whether de jure or de facto, if such assignment or transfer of control would require the prior approval of the FCC, without first obtaining such approval.

4.6    Management of Distribution Trust Assets; Administration of Initial Distributions Property.

(a)    Except as otherwise provided in this Distribution Trust Agreement or any other Directive, and subject to Treasury Regulations governing liquidating trusts and disputed ownership funds and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Distribution Trustee may, subject to the direction of the Distribution Trust Advisory Board, control and exercise authority over the Distribution Trust Assets and the Initial Distributions Property, over the acquisition, management and disposition thereof and over the management and conduct of the Distribution Trust, in each case, as necessary or advisable to enable the Distribution Trustee to fulfill the intents and purposes of this Distribution Trust Agreement. No person dealing with the Distribution Trust will be obligated to inquire into the authority of the Distribution Trustee in connection with the acquisition, management or disposition of the Distribution Trust Assets and the Initial Distributions Property.

(b)    In connection with the management and use of the Distribution Trust Assets and the Initial Distributions Property and except as otherwise expressly limited in this Distribution Trust Agreement or any other Directive, the Distribution Trustee will have, subject to the approval of the Distribution Trust Advisory Board, in addition to any powers conferred upon the Distribution Trustee by any other provision of this Distribution Trust Agreement, the power to take any and all actions as, in the Distribution Trustee's discretion, are necessary or advisable to effectuate the primary purposes of the Distribution Trust, including, without limitation, the power and authority (i) to distribute the Distribution Trust Assets to Beneficiaries and the Initial Distributions Property to the Initial Distributions Claimants in accordance with the terms of the Directives, (ii) to pay all expenses of the Distribution Trust, (iii) to sell, convey, transfer, assign or liquidate the Distribution Trust Assets, or any part thereof or any interest therein, upon such terms and for such consideration as may be commercially reasonable, (iv) to endorse the payment of notes or other obligations of any Person or to make contracts with respect thereto, (v) to borrow such sums of money, at any time and from

time to time, for such periods of time, upon such terms and conditions, from such Persons, for such purposes as may be commercially reasonable, (vi) to provide funding to the Litigation Trust and the Creditors' Trust as provided in Section 2.3 hereof, and (vii) to object to and resolve Disputed Claims as set forth in Section 2.4 hereof. The Distribution Trustee will not at any time, on behalf of the Distribution Trust or the Beneficiaries, enter into or engage in any trade or business, and no part of the Distribution Trust Assets or the Initial Distributions Property will be used or disposed of by the Distribution Trustee in furtherance of any trade or business.

4.7    <u>Investment of Cash</u>.  The Distribution Trustee may, upon approval of the Distributions Trust Advisory Board, invest any Cash (including any earnings thereon or proceeds therefrom) held by the Distribution Trust in United States Treasury bills and notes, institutional money market funds, commercial paper and time deposits and certificates of deposit with commercial banks, in each case, with a maturity of twelve months or less; *provided, however,* that the scope of any such investments shall be limited to investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) or under applicable IRS guidelines, rulings or other controlling authorities; *provided, further, however,* that sections 11-2.3, 11-2.3-A and 11-2.4 of the Estates, Powers and Trusts Law of New York shall be inapplicable to the Distribution Trust herein.

4.8    <u>Additional Powers of the Distribution Trustee</u>.  In addition to any and all of the powers enumerated above, and except as otherwise provided in this Distribution Trust Agreement or any other Directive, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, the Distribution Trustee, subject to the approval of the Distribution Trust Advisory Board, shall be empowered to:

(a)    hold legal title to any and all rights of the Beneficiaries in or arising from the Distribution Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Distribution Trust;

(b)    perform the duties, exercise the powers, and assert the rights of a Trustee under sections 704 and 1106 of the Bankruptcy Code with respect to the Distribution Trust Assets, including assert claims, defenses, offsets, and privileges;

(c)    protect and enforce the rights of the Distribution Trust to the Distribution Trust Assets and in respect of the Initial Distributions Property by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(d)    determine and satisfy any and all liabilities created, incurred or assumed by the Distribution Trust;

(e)    assert or waive any privilege or defense on behalf of the Distribution Trust;

(f)    make all payments relating to the Distribution Trust Assets;

(g)    obtain insurance coverage with respect to the potential liabilities and obligations of the Distribution Trust, the Distribution Trustee, the Distribution Trust Advisory Board and the Members under this Distribution Trust Agreement (in the form of a directors and officers policy, an errors and omissions policy or otherwise);

(h)    prepare, or have prepared, and file, if necessary, with the appropriate Tax Authority any and all tax returns, information returns, and other required documents with respect to the Distribution Trust (including, without limitation, United States federal, state, local or foreign tax or information returns required to be filed by the Distribution Trust) and pay taxes properly payable by the Distribution Trust, if any, and cause all taxes payable by the Distribution Trust, if any, to be paid exclusively out of the Distribution Trust Assets;

(i)    request any appropriate tax determination with respect to the Distribution Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code or a private letter ruling regarding the tax treatment of the Distribution Trust and its Beneficiaries;

(j)    retain and reasonably compensate for services rendered and expenses incurred an accounting firm or financial consulting firm and other advisory firms to perform such reviews and/or audits of the financial books and records of the Distribution Trust as may be appropriate in the Distribution Trustee's discretion and to prepare and file any tax returns or informational returns for the Distribution Trust as may be required;

(k)    take or refrain from taking any and all actions the Distribution Trustee reasonably deems necessary for the continuation, protection, and maximization of the Distribution Trust Assets and the Initial Distributions Property consistent with the purposes hereof;

(l)    take all steps and execute all instruments and documents the Distribution Trustee reasonably deems necessary to effectuate the Distribution Trust;

(m)    take all actions the Distribution Trustee reasonably deems necessary to comply with the Directives and the obligations thereunder; and

(n)    exercise such other powers as may be vested in the Distribution Trustee pursuant to any Directive or an order of the Bankruptcy Court or as otherwise determined by the Distribution Trustee to be necessary and proper to carry out the obligations of the Distribution Trustee and the Distribution Trust.

4.9    Limitations on Power and Authority of the Distribution Trustee. Notwithstanding anything in this Distribution Trust Agreement to the contrary, the Distribution Trustee will not have the authority to do any of the following:

(a)    take any action in contravention of any Directive;

14

(b)    take any action which would make it impossible to carry on the activities of the Distribution Trust;

(c)    possess property of the Distribution Trust or assign the Distribution Trust's rights in specific property for other than Distribution Trust purposes and as provided herein;

(d)    cause or permit the Distribution Trust to engage in any trade or business;

(e)    permit the Distribution Trust to receive or retain cash or cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities (including, without limitation, expected expenses) or to maintain the value of its assets during liquidation;

(f)    receive transfers of any listed stocks or securities, or any readily-marketable assets or any operating assets of a going business, except as is necessary or required under the Plan and the Confirmation Order; *provided, however,* so long as the Distribution Trust Assets are held as part of a liquidating trust, that in no event shall the Distribution Trustee receive any such investment that would jeopardize treatment of the Distribution Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(g)    exercise the investment power provided in Section 4.7 hereof;

(h)    receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is necessary or required under the Plan and the Confirmation Order; *provided, however,* so long as the Distribution Trust Assets are held as part of a liquidating trust, in no event shall the Distribution Trustee receive or retain any such asset or interest that would jeopardize treatment of the Distribution Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(i)    consummate or implement or cause the Distribution Trust to consummate or implement any transaction involving the sale or other transfer of a Distribution Trust Asset with respect to any asset valued at over $1,000,000 unless and until the Bankruptcy Court authorizes and approves such transaction upon motion by the Distribution Trustee.  The Distribution Trustee shall provide notice of, and the opportunity for, a hearing on all such motions to all entities who request notice of such matters in the manner prescribed in the Notice of the Effective Date mailed pursuant to Section 13.13 of the Plan; or

(j)    take any other action that would jeopardize treatment of the Distribution Trust as a liquidating trust for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof, unless and to the extent it obtains a ruling from the IRS that will enable the Distribution Trust and its

15

Beneficiaries to avoid double taxation on its income, excluding amounts allocable to the DOF pursuant to Section 2.4(c).

4.10    <u>Books and Records</u>.  The Distribution Trustee shall maintain in respect of the Distribution Trust books and records relating to the Distribution Trust Assets and the Initial Distributions Property and income of the Distribution Trust and the payment of, expenses of, and liabilities of claims against or assumed by, the Distribution Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Distribution Trust. Nothing in this Distribution Trust Agreement requires the Distribution Trustee to file any accounting or seek approval of any court with respect to the administration of the Distribution Trust, or as a condition for managing any payment or distribution out of the Distribution Trust Assets or the Initial Distributions Property.

4.11    <u>Reports</u>

(a)    <u>Financial and Status Reports</u>.  The fiscal year of the Distribution Trust shall be the calendar year.  Within 90 days after the end of each calendar year during the term of the Distribution Trust, and within 45 days after the end of each calendar quarter during the term of the Distribution Trust, and as soon as practicable upon termination of the Distribution Trust, the Distribution Trustee shall make available upon request to the Reorganized Debtors and to each Beneficiary appearing on its records as of the end of such period or such date of termination a written report including: (i) financial statements of the Distribution Trust for such period, and, if the end of a calendar year, a report (which may be prepared by an independent certified public accountant employed by the Distribution Trustee) reflecting the result of such agreed upon procedures relating to the financial accounting administration of the Distribution Trust as proposed by the Distribution Trustee; (ii) a summary description of any action taken by the Distribution Trust which, in the judgment of the Distribution Trustee, materially affects the Distribution Trust and of which notice has not previously been given to the Beneficiaries; and (iii) a description of resolving the Claims in the DOF, the progress of liquidating Distribution Trust Assets and making distributions to Beneficiaries and any other material information relating to the Distribution Trust Assets and the administration of the Distribution Trust.

(b)    <u>Annual Plan and Budget</u>.  If instructed by the Distribution Trust Advisory Board, the Distribution Trustee shall prepare and submit to the Distribution Trust Advisory Board for approval an annual plan and budget in such detail as is reasonably requested.

4.12    <u>Estimation of Claims</u>.  At any time, the Distribution Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated unsecured Claim which does not relate to any Litigation Trust Causes of Action to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Distribution Trust shall have previously objected to such Claim or whether the Bankruptcy Court shall have ruled on any such objection, and the Bankruptcy Court shall

have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Distribution Trust may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.    All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.13    New Class C Common Stock.  The Distribution Trustee, at the direction of the Distribution Trust Advisory Board, and on behalf of the Distribution Trust as owner of the New Class C Common Stock, shall exercise the right to appoint two members to the board of directors of Reorganized Tribune so long as the Distribution Trust has not been wound down and dissolved, and shall exercise all other rights incident to the ownership of the New Class C Common Stock, all in accordance with the Plan and the powers, preferences, rights, limitations, qualifications and restrictions in respect of such New Class C Common Stock set forth in the Certificate of Incorporation of Reorganized Tribune.

## ARTICLE V
## THE DISTRIBUTION TRUSTEE GENERALLY

5.1    Independent Trustee.  The Distribution Trustee (a) must be independent of Aurelius, (b) may not be a Beneficiary, (c) must be a United States Person (within the meaning of IRC section 7701(a)(30)), and (d) must be in compliance with all applicable requirements concerning foreign ownership and multiple ownership under the Communications Act and the FCC's Rules.  The Distribution Trustee may not be a Member of the Distribution Trust Advisory Board, the Litigation Trust Advisory Board or the Creditors' Trust Advisory Board and may not be the Litigation Trustee or the Creditors' Trustee.

5.2    Trustee's Compensation and Reimbursement.

(a)    Compensation.    The Distribution Trustee shall receive compensation from the Distribution Trust as provided on Exhibit C.  The compensation of the Distribution Trustee may be modified from time to time by the Distribution Trust Advisory Board; *provided*, *that* any such modification outside the parameter of the compensation set forth on Exhibit C must be approved by the Bankruptcy Court; *provided*, *further*, that during the period from delivery of notice of resignation by the Distribution Trustee or delivery of notice of removal of the Distribution Trustee by the Distribution Trust Advisory Board until the effective date of any such resignation or removal, as applicable, the compensation of the Distribution Trustee may not be decreased from the compensation in effect at the time such notice of resignation or removal is delivered.

Notice of any modification of the Distribution Trustee's compensation shall be filed with the Bankruptcy Court promptly.

(b)    Expenses.  In addition, the Distribution Trust will reimburse the Distribution Trustee for all actual, reasonable, out-of-pocket expenses incurred by the Distribution Trustee in connection with the performance of the duties of the Distribution Trustee hereunder or under the other Directives, including but not limited to, fees and disbursements of the Distribution Trustee's legal counsel incurred in connection with the preparation, execution and delivery of this Distribution Trust Agreement and related documents.

(c)    Payment.  The fees and expenses payable to the Distribution Trustee shall be paid to the Distribution Trustee upon approval of such fees by the Distribution Trust Advisory Board without necessity for review or approval by the Bankruptcy Court or any other Person. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Distribution Trustee and the Distribution Trust Advisory Board regarding the fees, compensation, and expenses of the Distribution Trustee.  The Distribution Trust Initial Funding and any subsequent Trust Expense Funding shall be the source of the payments referred to in this Section 5.2.

5.3    Resignation.  The Distribution Trustee may resign by giving not less than ninety (90) days' prior written notice thereof to the Distribution Trust Advisory Board. Such resignation shall become effective on the later to occur of: (a) the day specified in such notice, and (b) the appointment of a successor by a majority of the Members and the acceptance by such successor of such appointment. If a successor Distribution Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Distribution Trustee may petition any court of competent jurisdiction for the appointment of a successor Distribution Trustee, during which time, the Distribution Trustee shall be entitled to receive the fees provided for in Section 5.2(a) hereof.  Notwithstanding the foregoing, upon the Termination Date, the Distribution Trustee shall be deemed to have resigned, except as otherwise provided for in Section 9.2 herein.

5.4    Removal.

(a)    The Distribution Trustee may be removed by the Distribution Trust Advisory Board for Cause (as defined in Section 6.7 herein), immediately upon notice thereof, or without Cause, upon 90 days prior written notice.

(b)    To the extent there is any dispute regarding the removal of a Distribution Trustee (including any dispute relating to any compensation or expense reimbursement due under this Distribution Trust Agreement), the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute. Notwithstanding the foregoing, the Distribution Trustee will continue to serve as the Distribution Trustee after his removal until the earlier of (i) the time when appointment of a successor Distribution Trustee will become effective in accordance with Section 5.5 of

this Distribution Trust Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

5.5    <u>Appointment of Successor Distribution Trustee</u>.  In the event of the death (in the case of a Distribution Trustee that is a natural person), dissolution (in the case of a Distribution Trustee that is not a natural person), resignation, incompetency, or removal of the Distribution Trustee, the Distribution Trust Advisory Board shall designate a successor Distribution Trustee. Such appointment shall specify the date on which such appointment shall be effective. Every successor Distribution Trustee appointed hereunder shall execute, acknowledge, and deliver to the Distribution Trust Advisory Board an instrument accepting the appointment under this Distribution Trust Agreement and agreeing to be bound thereto, and thereupon the successor Distribution Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Distribution Trustee; *provided, however*, that a removed or resigning Distribution Trustee shall, nevertheless, when requested in writing by the successor Distribution Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Distribution Trustee under the Distribution Trust all the estates, properties, rights, powers, and trusts of such predecessor Distribution Trustee.

5.6    <u>Effect of Resignation or Removal</u>.  The death, dissolution, resignation, incompetency or removal of the Distribution Trustee, as applicable, shall not operate to terminate the Distribution Trust created by this Distribution Trust Agreement or to revoke any existing agency created pursuant to the terms of this Distribution Trust Agreement or invalidate any action theretofore taken by the Distribution Trustee or any prior Distribution Trustee. In the event of the resignation or removal of the Distribution Trustee, such Distribution Trustee will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court or reasonably requested by Distribution Trust Advisory Board or the successor Distribution Trustee to effect the termination of such Distribution Trustee's capacity under this Distribution Trust Agreement, (b) deliver to the Bankruptcy Court (if required), the Distribution Trust Advisory Board or the successor Distribution Trustee all documents, instruments, records and other writings related to the Distribution Trust as may be in the possession of such Distribution Trustee (provided that such Distribution Trustee may retain one copy of such documents for archival purposes) and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Distribution Trustee.

5.7    <u>Confidentiality</u>.  The Distribution Trustee shall, during the period that the Distribution Trustee serves as Distribution Trustee under this Distribution Trust Agreement and following the termination of this Distribution Trust Agreement or following its removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Distribution Trust Assets relates or of which the Distribution Trustee has become aware in the Distribution Trustee's capacity as Distribution Trustee, except as otherwise required by law.

# ARTICLE VI
## TRUST BOARD

6.1     The Distribution Trust Advisory Board.  On the Effective Date, a governing board of three (3) persons or entities shall commence serving as directors of the Distribution Trust (the "**Distribution Trust Advisory Board**"). The Distribution Trust Advisory Board shall initially consist of the Members listed on Exhibit B hereto, as approved by the Bankruptcy Court and the Confirmation Order.  Each Member (including successor Members) (a) must be independent of Aurelius, (b) may not be a Beneficiary, (c) must be a United States Person (within the meaning of IRC section 7701(a)(30)), and (d) must be in compliance with all applicable requirements concerning foreign ownership and multiple ownership under the Communications Act and the FCC's Rules.   No Member of the Distribution Trust Advisory Board may be a member of the Litigation Trust Advisory Board or the Creditors' Trust Advisory Board and may not be the Distribution Trustee, Litigation Trustee or the Creditors' Trustee.  The Distribution Trust Advisory Board shall, as and when requested by the Distribution Trustee, the Members otherwise deem it to be appropriate or as is otherwise required under the Directives, consult with and advise the Distribution Trustee as to the administration and management in accordance with the Directives of the Distribution Trust and shall have the other responsibilities and powers as set forth herein.

6.2     Authority and Responsibilities.  The Distribution Trust Advisory Board shall have the authority and responsibility to oversee, govern, and, as specifically set forth herein, to direct the activities of the Distribution Trust and the performance of the Distribution Trustee and shall have the authority to remove the Distribution Trustee in accordance with Section 5.4 hereof.  The Distribution Trust Advisory Board shall also (a) monitor and oversee the administration of the Distribution Trust and the Distribution Trustee's performance of its responsibilities under the Directives and Section 4.2 hereof, and (b) perform such other tasks as are set forth in the Directives, including, without limitation, exercising its rights and complying with its obligations under Section 4.13 hereof.  In all circumstances, except as explicitly provided herein, the Distribution Trust Advisory Board shall have fiduciary duties to the Beneficiaries consistent with the fiduciary duties that the members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have to the creditor constituents represented by such committee and shall exercise its responsibilities accordingly. In all circumstances, the Distribution Trust Advisory Board shall act in the best interests of the Beneficiaries and in furtherance of the purpose of the Distribution Trust. The Distribution Trustee shall consult with and provide information to the Distribution Trust Advisory Board in accordance with and pursuant to the terms of this Distribution Trust Agreement and the other Directives to enable the Distribution Trust Advisory Board to meet its obligations hereunder.   Any provision of this Distribution Trust Agreement to the contrary notwithstanding, the Distribution Trustee shall not be required to obtain the approval or follow the directions of the Distribution Trust Advisory Board to the extent that (i) the Distribution Trust Advisory Board has not authorized the Distribution Trustee to take any action that the Distribution Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is required to be taken by applicable law or (ii) the Distribution

Trust Advisory Board directs the Distribution Trustee to take action that the Distribution Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is prohibited by applicable law.

6.3    Meetings of the Distribution Trust Advisory Board.  Meetings of the Distribution Trust Advisory Board are to be held not less often than quarterly.  Special meetings of the Distribution Trust Advisory Board may be held whenever and wherever called for by the Distribution Trustee or any Member; *provided that* notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Members). Any action required or permitted to be taken by the Distribution Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Distribution Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by all Members and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Distribution Trust Advisory Board.  Unless the Distribution Trust Advisory Board decides otherwise (which decision shall rest in the reasonable discretion of the Distribution Trust Advisory Board), the Distribution Trustee and the Distribution Trustee's designated advisors may attend meetings of the Distribution Trust Advisory Board.

6.4    Manner of Acting.  Two Members shall constitute a quorum for the transaction of business at any meeting of the Distribution Trust Advisory Board.  The affirmative vote of a majority of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Distribution Trust Advisory Board except as otherwise required by law or as provided in this Distribution Trust Agreement. Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may, if approved by the Members at a meeting, be conducted by electronic mail or individual communications by the Distribution Trustee and each Member.

6.5    Tenure of the Members of the Distribution Trust Advisory Board.  The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Distribution Trust is terminated in accordance with Article IX hereof. The Members will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 6.6 below, or removal pursuant to Section 6.7 below.

6.6    Resignation.  A Member may resign by giving not less than ninety (90) days' prior written notice thereof to the Distribution Trustee and the other Members. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with Section 6.8 below.

6.7     Removal.    A majority of the Distribution Trust Advisory Board may remove any Member for Cause. Notwithstanding the foregoing, upon the occurrence of the Termination Date, any or all of the Members shall be deemed to have resigned.  For purposes of this Section 6.7 "Cause" shall mean (i) a Person's willful failure to perform his material duties hereunder, which is not remedied within thirty (30) days of notice; (ii) a Person's commission of an act of fraud, theft or embezzlement during the performance of his duties hereunder; or (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed.

6.8     Appointment of a Successor Member.

(a)     In the event of a vacancy on the Distribution Trust Advisory Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position either by (i) in the case of Members originally appointed by Aurelius (or the successor to such Members appointed under this subsection), Aurelius or (ii) in the case of the Member originally appointed by the PHONES Notes Indenture Trustee (or the successor to such Member appointed under this subsection), the PHONES Notes Indenture Trustee. The appointment of a successor Member will be further evidenced by the Distribution Trustee's filing with the Bankruptcy Court of a notice of appointment, at the direction of the Distribution Trust Advisory Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, all rights, powers, duties, authority, and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act; and the successor Member will not be liable personally for any act or omission of the predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge and deliver to the Distribution Trustee and other Members an instrument accepting the appointment under this Distribution Trust Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Member.

6.9     Compensation and Reimbursement of Expenses.   Each Member shall be compensated for his or her time expended in Distribution Trust matters as provided on Exhibit D. The Distribution Trust will reimburse the Members for all reasonable, out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties hereunder (including reasonable fees, costs, and expenses of legal counsel). The Distribution Trust Initial Funding and any subsequent Trust Expense Funding shall be the source of the payments referred to in this Section 6.9.

6.10    Confidentiality. Each Member shall, during the period that such Member serves as a Member under this Distribution Trust Agreement and following the termination of this Distribution Trust Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-

public information of or pertaining to any entity to which any of the Distribution Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member, except as otherwise required by law.

## ARTICLE VII
## LIABILITY AND INDEMNIFICATION

7.1    No Further Liability.  Each of the Distribution Trustee and the Members shall have no liability for any actions or omissions in accordance with this Distribution Trust Agreement unless arising out of such Person's own fraud, self-dealing, intentional misrepresentation or willful misconduct.  In performing its duties under this Distribution Trust Agreement, the Distribution Trustee or the Member (as applicable) shall have no liability for any action taken by the Distribution Trustee and the Members in accordance with the advice of counsel, accountants, appraisers and/or other professionals retained by the Members or the Distribution Trust. Without limiting the generality of the foregoing, the Distribution Trustee and the Members may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by the Distribution Trustee or the Member (as applicable) to be genuine, and shall have no liability for actions taken in reliance thereon. None of the provisions of this Distribution Trust Agreement shall require the Distribution Trustee or the Members to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers. Each of the Distribution Trustee and the Members may rely without inquiry upon writings delivered to it under the Plan which the Distribution Trustee or the Member (as applicable) reasonably believes to be genuine and to have been given by a proper Person. Notwithstanding the foregoing, nothing in this Section 7.1 shall relieve the Distribution Trustee or the Members from any liability for any actions or omissions arising out of such Person's own fraud, self-dealing, intentional misrepresentation or willful misconduct.  Any action taken or omitted to be taken in the case of the Distribution Trustee or the Distribution Trust Advisory Board with the express approval of the Bankruptcy Court and, in the case of the Distribution Trustee, with the express approval of the Distribution Trust Advisory Board will conclusively be deemed not to constitute fraud, self-dealing, intentional misrepresentation or willful misconduct.

7.2    Indemnification of the Distribution Trustee and Distribution Trust Advisory Board.

(a)    From and after the Effective Date, each Distribution Trust Indemnified Party shall be, and hereby is, indemnified by the Distribution Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Distribution Trust Indemnified Party's exercise of what such Distribution Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Distribution Trust Indemnified Party reasonably understands to be its duties conferred by any of the Directives, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or

omissions to act to the extent determined by a Final Order to be due to such Person's own fraud, self-dealing, intentional misrepresentation or willful misconduct) on and after the Effective Date.  The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to:  (i) the Distribution Trust Agreement; (ii) the services to be rendered pursuant to the Distribution Trust Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Distribution Trustee; or (iv) proceedings by or on behalf of any creditor.  The Distribution Trust shall, on demand, advance or pay promptly, at the election of the Distribution Trust Indemnified Party, out of the Trust Expense Fund, on behalf of each Distribution Trust Indemnified Party, attorneys' fees and other expenses and disbursements to which such Distribution Trust Indemnified Party would be entitled pursuant to the foregoing indemnification provision; *provided, however*, that any Distribution Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction, by Final Order, ultimately determines by Final Order that such Distribution Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, self-dealing, intentional misrepresentation or willful misconduct. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Distribution Trust's expense, subject to the foregoing terms and conditions.  In addition, the Distribution Trust shall purchase insurance coverage as set forth in Section 4.8(g) hereof, including fiduciary liability insurance using funds from the Trust Expense Fund for the benefit of the Distribution Trustee and the Members.  Further, the Distribution Trust hereby agrees: (i) that the Distribution Trust is the indemnitor of first resort (i.e., in the event any Indemnified Person has the right to receive indemnification from one or more sponsors, affiliates or third parties, the Distribution Trust's obligations to such Indemnified Person are primary); (ii) that the Distribution Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such Indemnified Person in connection with any proceeding as to which the Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding, without regard to (A) any rights such Indemnified Person may have, or the exercise of any such rights by such Indemnified Person, against any other sponsors, affiliates or third parties or (B) any advance or payment made by such sponsors, affiliates or third parties on behalf of such Indemnified Person with respect to any claim for which such Indemnified Person is entitled to indemnification hereunder; (iii) that the Distribution Trust irrevocably waives, relinquishes and releases such sponsors or affiliates from any and all claims by the Distribution Trust against such sponsors or affiliates for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no Indemnified Person shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such Indemnified Person prior to the Distribution Trust's satisfaction of its indemnification obligations hereunder.

(b)     The foregoing indemnity in respect of any Indemnified Person shall survive the termination of such Distribution Trust Indemnified Party from the

capacity for which such party is indemnified.   Termination or modification of this Distribution Trust Agreement shall not affect any indemnification rights or obligations.

(c)     The Distribution Trust may, with the approval of the Members, indemnify any Person who is not a Distribution Trust Indemnified Party for any loss, cost, damage, expense or liability for which an Indemnified Person would be entitled to mandatory indemnification under this Section 7.2.

(d)     Any Distribution Trust Indemnified Party may waive the benefits of indemnification under this Section 7.2, but only by an instrument in writing executed by such Distribution Trust Indemnified Party.

(e)     The rights to indemnification under this Section 7.2 are not exclusive of other rights which any Distribution Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.  Further, the Distribution Trust hereby agrees: (i) that the Distribution Trust is the indemnitor of first resort (i.e., in the event any Indemnified Person has the right to receive indemnification from one or more sponsors, affiliates or third parties, the Distribution Trust's obligations to such Indemnified Person are primary); (ii) that the Distribution Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually and reasonably incurred by such Indemnified Person in connection with any proceeding as to which the Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding, without regard to (A) any rights such Indemnified Person may have, or the exercise of any such rights by such Indemnified Person, against any other sponsors, affiliates or third parties or (B) any advance or payment made by such sponsors, affiliates or third parties on behalf of such Indemnified Person with respect to any claim for which such Indemnified Person is entitled to indemnification hereunder; (iii) that the Distribution Trust irrevocably waives, relinquishes and releases such sponsors or affiliates from any and all claims by the Distribution Trust against such sponsors or affiliates for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no Indemnified Person shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such Indemnified Person prior to the Distribution Trust's satisfaction of its indemnification obligations hereunder.  For the avoidance of doubt, each Distribution Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Distribution Trust Party may incur in connection with enforcing any of its rights under this Article 7.

7.3     <u>Distribution Trust Liabilities</u>.   All liabilities of the Distribution Trust, including, without limitation, indemnity obligations under Section 7.2 of this Distribution Trust Agreement, will be liabilities of the Distribution Trust as an entity, and will be paid or satisfied from the Trust Expense Fund. No liability of the Distribution Trust will be payable in whole or in part by any Beneficiary individually or in the Beneficiary's

capacity as a Beneficiary, by the Distribution Trustee individually or in the Distribution Trustee's capacity as Distribution Trustee, by any Member individually or in the Member's capacity as Member, or by any member, partner, shareholder, director, officer, professional, employees, agent, affiliate or advisor of any Beneficiary, any Member, the Distribution Trustee or their respective affiliates.

7.4    <u>Limitation of Liability</u>.  Neither the Distribution Trustee, the Members nor any of their respective Related Persons shall be liable for punitive, exemplary, consequential, special or other damages for a breach of this Distribution Trust Agreement under any circumstances.

7.5    <u>Burden of Proof</u>.  In making a determination with respect to entitlement to exculpation or indemnification hereunder, the person, persons or entity making such determination shall presume that the Distribution Trust Indemnified Party is entitled to exculpation and indemnification under this Distribution Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE VIII
## TAX MATTERS

8.1    <u>Income Tax Status</u>.

(a)    For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable), this Distribution Trust is intended to be treated as a liquidating trust pursuant to Treasury Regulation section 301.7701-4(d) and as a grantor trust pursuant to IRC sections 671-677.  To the extent consistent with Revenue Procedure 94-45, 1994-2 C.B. 684 and not otherwise inconsistent with this Distribution Trust Agreement, this Distribution Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.  Except as provided in Section 8.1(b) and (c), (i) the Beneficiaries will be treated as both the grantors and the deemed owners of the Distribution Trust, and (ii) any items of income, deduction, credit and loss of the Distribution Trust shall be allocated for federal income tax purposes to the Beneficiaries in accordance with Section 8.3.  The Distribution Trust shall at all times be administered so as to constitute a domestic trust for United States federal income tax purposes.

(b)    The Distribution Trustee, in consultation with the Distribution Trust Advisory Board, shall have the authority to allocate a portion of the Initial Distribution Property and the Distribution Trust Assets to the DOF pursuant to Sections 2.4 and 2.5.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Distribution Trustee of a private letter ruling if the Distribution Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Distribution Trustee), the Distribution Trustee may (i) either (I) timely elect to treat the DOF as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9(c)(2)(ii), or (II) seek a ruling to treat the DOF as a trust pursuant to IRC Section 641, and (ii) to the extent

permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

(c)     Notwithstanding the foregoing provisions of this Section 8.1, in the event that the IRS advises the Distribution Trustee that the Distribution Trust does not qualify as a grantor trust in whole or in part, or that the DOF must include the portion of the Distribution Trust Assets (and, indirectly, the Litigation Trust Assets) allocable to claims for which there is disputed ownership, the Distribution Trustee shall, for tax reporting purposes, treat the Distribution Trust in a manner consistent with such Internal Revenue Service advice; *provided*, that the Distribution Trust, in consultation with the Distribution Trust Advisory Board, may seek a private letter ruling or other determination from the IRS to the effect that such portion of the Distribution Trust (and the DOF) should be treated for United States federal tax purposes as a trust described in IRC Section 641 or a disputed ownership fund under Treasury Regulation 1.468B-9, rather than as a grantor trust under IRC Sections 671-677.

8.2     Treatment of Distribution Trust Assets Transfer.  For all federal income tax purposes, except to the extent Section 8.1(c) applies, all parties (including, without limitation, the Debtors, the Reorganized Debtors and the Distribution Trustee) shall treat the transfer of the Distribution Trust Assets to the Distribution Trust, including any amounts or other assets subsequently transferred to the Distribution Trust (but only at such time as actually transferred) for the benefit of the holders entitled to receive proceeds from the Distribution Trust Assets, and such other beneficiaries as described in the Directives as (a) a transfer of the Distribution Trust Assets directly to the Beneficiaries and, to the extent the Distribution Trust Assets are allocable to Claims of the DOF, to the DOF, followed by (b) the transfer by such Beneficiaries to the Distribution Trust of the Distribution Trust Assets (other than the portion of the Distribution Trust Assets allocable to the Disputed Claims Reserve) in exchange for beneficial interest in the Distribution Trust in accordance with the Plan. Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Distribution Trust (other than such portion of the Distribution Trust Assets as is allocable to the DOF). The Beneficiaries as described in the Directives shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the applicable Distribution Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.  In determining the Beneficiaries' respective shares of the Distribution Trust Assets, the Distribution Trustee shall follow the methodology determined pursuant to Section 4.2.

8.3     Tax Reporting.

(a)     Except with respect to the DOF (and in the absence of obtaining a ruling to the contrary as described in Section 8.1(b) or (c)), the Distribution Trustee shall file tax returns for the Distribution Trust treating the Distribution Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Article VIII.  In addition, the Distribution Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon.  Within a reasonable time following the end of the

taxable year, the Distribution Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable U.S. federal income tax return.

(b)     After making the determinations set forth in Section 4.2, the Distribution Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Distribution Trust with respect to each Beneficiary as follows:  (a) allocations of Distribution Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein or in the Plan) if, immediately prior to such deemed distribution, the Distribution Trust had distributed all of its other assets (valued at their tax book value) to the Beneficiaries in accordance with the Directives (treating all Claims held by the DOF as if they were Allowed Claims), in each case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Distribution Trust; and (b) allocations of taxable loss of the Distribution Trust shall be determined by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Distribution Trust Assets.  For these purposes, the tax book value of the Distribution Trust Assets shall equal the fair market value of the Distribution Trust Assets on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.  All Parties and Beneficiaries shall be bound by, and shall report consistently with, such income tax treatment.

(c)     The Distribution Trustee shall be responsible for payment, out of the Distribution Trust Assets, of any taxes imposed on the Distribution Trust or its assets, including the DOF.  In the event, and to the extent, any Cash retained on account of Claims in the DOF is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Claims in the DOF, or (ii) to the extent such Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Distribution Trustee as a result of the resolution of such Claims.

8.4    <u>Withholding of Taxes</u>**.**  The Distribution Trustee may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Distribution Trust Interest (including, without limitation, tax withholding relating to wage claims).  All such amounts withheld and paid to the appropriate Tax Authority shall be treated as amounts distributed to such holders of Distribution Trust Interests for all purposes of this Distribution Trust Agreement.  The Distribution Trustee shall be authorized to collect such tax information from the holders of Distribution Trust Interests (including, without limitation, social security numbers or other tax identification) as in its sole discretion the Distribution Trustee deems necessary to effectuate the Plan, the Confirmation Order, and this Distribution Trust Agreement.  In

order to receive distributions under the Plan, all holders of Distribution Trust Interests will need to identify themselves to the Distribution Trustee and provide tax information and the specifics of their holdings, to the extent the Distribution Trustee deems appropriate. This identification requirement may extend to holders who hold their securities in street name. The Distribution Trustee may refuse to make a distribution to any holder of a Distribution Trust Interest that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a holder of a Distribution Trust Interest, the Distribution Trustee shall make such distribution to which the holder of the Distribution Trust Interest is entitled, without interest; and, provided further that, if the Distribution Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Distribution Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Distribution Trustee for such liability. Notwithstanding the foregoing, in the event that any Beneficiary fails to provide the requested information to the Distribution Trustee within six (6) months from the date of the Distribution Trustee's written notice requesting such information, the Beneficiary's right to any such distribution shall be automatically discharged and forever barred, and the related property shall revert to the Distribution Trust for distribution in accordance with the terms of the Directives.

8.5    Valuation. The valuation of the Distribution Trust Assets agreed by the Distribution Trustee (with the approval of the Distribution Trust Advisory Board), the Litigation Trustee and the Creditors' Trustee shall be used consistently by all parties (including, without limitation, the Distribution Trust, the Litigation Trust and the Creditors' Trust (and their respective beneficiaries), the Reorganized Debtors and the Beneficiaries) for all federal income tax purposes. Similarly, the apportionment of Interests pursuant to Section 4.2 and reporting for tax purposes pursuant to Section 8.3 shall be used consistently by the Distribution Trust and all Beneficiaries for all federal income tax purposes. The Distribution Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Distribution Trust that are required by any governmental unit. The Distribution Trust shall accept and use, for all purposes, the valuations announced by the Litigation Trust and the Creditors' Trust, respectively, of the Litigation Trust Assets (as defined in the Litigation Trust Agreement) and the Creditors' Trust Assets.

8.6    Expedited Determination of Taxes. The Distribution Trustee may request an expedited determination of taxes of the Distribution Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Distribution Trust for all taxable periods through the termination of the Distribution Trust.

ARTICLE IX
**TERMINATION OF DISTRIBUTION TRUST**

9.1    Termination.

(a)    The Disputed Claims Reserve and, to the extent applicable, the DOF shall be treated as dissolved at such a time as (i) ownership of all Claims in each of

the Disputed Claims Reserve and DOF is resolved and (ii) no other transfers to the Disputed Claims Reserve or DOF are anticipated. Both before and in connection with termination, the DOF and Disputed Claims Reserve may retain a reasonable reserve for potential tax liabilities (including tax liabilities that would result from the treatment of the Distribution Trust as other than a grantor trust) and related professional fees.

(b)     The Distribution Trust shall be dissolved at such time as (i) (a) all of the Distribution Trust Assets and all Initial Distribution Property have been distributed pursuant to the Directives, or (b) the Distribution Trustee, with the consent of the Distribution Trust Advisory Board, determines that the administration of any remaining Distribution Trust Assets is not likely to yield sufficient additional Distribution Trust proceeds to justify further pursuit, (ii) all distributions required to be made by the Distribution Trustee under the Directives have been made, and (iii) all Litigation Trust Causes of Action have been resolved; *provided*, *however*, in no event shall the Distribution Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years) together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Distribution Trustee and the Distribution Trust Advisory Board that any further extension would not adversely affect the status of the trust as a Distribution Trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Distribution Trust Assets. If at any time the Distribution Trustee determines, in reliance upon such professionals as the Distribution Trustee may retain, that the expense of administering the Distribution Trust so as to make a final distribution to the Beneficiaries is likely to exceed the value of the assets remaining in the Distribution Trust, the Distribution Trustee may apply to the Bankruptcy Court for authority to (1) reserve any amount necessary to dissolve the Distribution Trust, (2) donate any balance to a charitable organization (a) described in section 501(c)(3) of the IRC, (b) exempt from United States federal income tax under section 501(a) of the IRC, (c) not a "private foundation," as defined in section 509(a) of the IRC, and (d) that is unrelated to the Debtors, Reorganized Debtors, the Distribution Trust, and any insider of the Distribution Trustee, and (3) dissolve the Distribution Trust. Such date upon which the Distribution Trust shall finally be dissolved shall be referred to herein as the "**Termination Date**."

9.2     <u>Continuance of Distribution Trust for Winding Up</u>.  After the termination of the Distribution Trust and solely for the purpose of liquidating and winding up the affairs of the Distribution Trust, the Distribution Trustee shall continue to act as such until its duties have been fully performed and shall continue to be entitled to receive the fees called for by Section 5.2(a) hereof.  Upon distribution of all the Distribution Trust Assets, the Distribution Trustee shall retain the books, records and files that shall have been delivered or created by the Distribution Trustee.  At the Distribution Trustee's discretion, all of such records and documents may be destroyed at any time following the date of final distribution of Distribution Trust Assets as the Distribution Trustee deems appropriate (unless such records and documents are necessary to fulfill the Distribution Trustee's obligations hereunder) subject to the terms of any joint prosecution and

common interest agreement(s) to which the Distribution Trustee may be a party.  Except as otherwise specifically provided herein, upon the final distribution of Distribution Trust Assets, the Distribution Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Beneficiaries as provided herein, the Distribution Trust Interests shall be cancelled and the Distribution Trust will be deemed to have dissolved.

## ARTICLE X
## AMENDMENT AND WAIVER

Except for any technical amendment of this Distribution Trust Agreement, no provision of this Distribution Trust Agreement may be amended or waived without the approval by the Distribution Trust Advisory Board and approval of the Bankruptcy Court and provision of reasonable notice to the Reorganized Debtors.  Technical amendments to this Distribution Trust Agreement may be made, as necessary to clarify this Distribution Trust Agreement or enable the Distribution Trustee to effectuate the terms of this Distribution Trust Agreement, by the Distribution Trustee with approval by the Distribution Trust Advisory Board; *provided, however,* that all amendments of this Distribution Trust Agreement shall be consistent with the purpose and intention of the Distribution Trust to liquidate in an expeditious but orderly manner the Liquidation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 2.5 hereof and *provided, further,* that a blacklined copy of the Distribution Trust Agreement, as modified by such technical amendment or amendments (marked to reflect such modification(s)), shall be filed with the Bankruptcy Court promptly after the approval thereof by the Distribution Trust Advisory Board.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    <u>Intention of Parties to Establish Liquidating Trust</u>.  This Distribution Trust Agreement is intended to create for federal income tax purposes a "liquidating trust" that satisfies the requirements of Revenue Procedure 94-45 and, to the extent provided by law, shall be governed and construed in all respects as such a liquidating trust, provided that the Distribution Trustee, in consultation with the Distribution Trust Advisory Board, shall have the ability subject to Sections 2.4, 2.5. 8.1(b) and (c), to determine the portion of the Distribution Trust Assets to be allocated to the DOF and elect to treat the DOF as a disputed ownership fund or as a trust pursuant to IRC Section 641 for federal income tax purposes. Notwithstanding anything to the contrary contained herein, any ambiguity herein shall be construed consistent herewith and, if necessary, this Distribution Trust Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

11.2    <u>Effectiveness</u>.  This Distribution Trust Agreement shall become effective on the Effective Date.

11.3    <u>Counterparts</u>.  This Distribution Trust Agreement may be executed in two or more counterparts, all of which shall be taken together to constitute one and the same instrument.

11.4    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Federal Rules of Bankruptcy Procedure are applicable, this Distribution Trust Agreement shall be governed by, and construed and enforced in accordance with, the federal laws of the United States and, to the extent there is no applicable federal law, the domestic laws of the state of New York, without giving effect to the principles of conflicts of law thereof.

11.5    <u>Headings</u>.    Sections, subheadings and other headings used in this Distribution Trust Agreement are for convenience only and shall not affect the construction or interpretation of this Distribution Trust Agreement or any provision thereof.

11.6    <u>Severability</u>.  If any provision of this Distribution Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Distribution Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provisions of this Distribution Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.7    <u>Notices</u>.    All notices, requests or other communications, required or permitted to be made in accordance with this Distribution Trust Agreement including any change of address of any Beneficiary for the purposes of receiving distributions from the Distribution Trust shall be in writing and shall be delivered personally or by first class or express mail, return receipt requested or fax with confirmation of receipt or email with receipt acknowledgement.  Notices should be directed to:

(a)    If to the Distribution Trust or the Distribution Trustee:

as specified on <u>Exhibit A</u>

If to the Distribution Trust Advisory Board:

as specified on <u>Exhibit B</u>

(b)    If to the Reorganized Debtors:  to such persons as the Reorganized Debtors may designate from time to time.

(c)    If to a Beneficiary: To the name and address set forth on the registry maintained by the Distribution Trustee, provided that general notices to all Beneficiaries may be made by posting such notice to a web-site identified in advance for communication with Beneficiaries.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Distribution Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

TRIBUNE COMPANY
On behalf of itself and the other Debtors


By: _____
Name:
Title:




_____, DISTRIBUTION TRUSTEE OF THE TRIBUNE LITIGATION TRUST ESTABLISHED UNDER THE DISTRIBUTION TRUST AGREEMENT DATED _____, 2011 PURSUANT TO THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND THE OTHER DEBTORS NAMED THEREIN


_____
Name:

## Exhibit A

### Trustee for the Distribution Trust

Quest Turnaround Advisors, LLC

Quest Turnaround Advisors, LLC ("Quest") was formed in 2000 and provides turnaround and crisis management services to Boards of Directors, management, creditors and shareholders of companies experiencing financial and operational difficulties.  In addition, Quest has served as a fiduciary for Estates and Litigation Trusts upon exit from Chapter 11. Quest's professionals are objective and have the experience necessary to streamline the process and achieve productive results quickly.

Quest presently serves as the Plan Administrator of Adelphia Communications Corp. where it has overseen the implementation of Adelphia's Plan of Reorganization and the distribution of approximately $18 billion of assets. Additionally, Quest serves as the Trust Administrator of the Adelphia Recovery Trust which is responsible for prosecuting all of the affirmative litigation that was transferred to it upon Adelphia's exit from Chapter 11 in January 2007 and distributing the proceeds to the Adelphia Recovery Trust beneficiaries.

Previously, Quest was engaged to provide the services of its professionals to serve as senior management of PTV, Inc ("PTV" formerly NTL Incorporated).  PTV completed its plan to maximize value for its stakeholders and was dissolved in October 2010.  Upon emergence from Chapter 11 in January 2003, PTV's preferred shares had a market value of $2.50 per share. Through October 2010, approximately $23.50 per share was distributed to preferred shareholders.

Mr. Jeffrey A. Brodsky is a co-founder and Managing Director of Quest and brings to his assignments over 22 years of hands-on financial and operational experience with an extensive background in crisis and turnaround management within a variety of industries. Mr. Brodsky is a co-founder and Managing Director of Quest where he provides advisory and interim management services to Boards of Directors, senior management and creditors of companies.

Currently, Mr. Brodsky is leading Quest's role as Plan Administrator of Adelphia Communications Corporation where he has overseen the implementation of Adelphia's Plan of Reorganization and supervising management and the distribution of approximately $18 billion of assets.  Additionally, Mr. Brodsky is leading Quest's role at Trust Administrator of the Adelphia Recovery Trust which is responsible for prosecuting all of the affirmative litigation that was transferred to it and distributing the proceeds to the Adelphia Recovery Trust beneficiaries.

Previously, he served as Chairman, President and CEO of PTV, Inc ("PTV" formerly NTL Incorporated).  PTV completed its plan to maximize value for its stakeholders and was dissolved in October 2010.  In connection with this case, Mr. Brodsky also served as

Chairman of Cablecom GmbH, the largest cable provider in Switzerland and completed a restructuring of CHF 3.8 billion of bank debt held by a 38 member bank group and sale of PTV's interests in Cablecom to a consortium of investors.  Upon emergence from Chapter 11 in January 2003, PTV's preferred shares had a market value of $2.50 per share.  Through January 2010, approximately $23.50 per share has been distributed to preferred shareholders.

Prior to joining Quest, Mr. Brodsky provided his services as an independent crisis management consultant and worked with Jay Alix & Associates and Alvarez & Marsal, Inc. on various engagements.  Representative assignments included (a) advising FINOVA Capital Corporation in connection with its restructuring of $11.1 billion of debt; (b) serving as interim management of Physician Computer Network, Inc. following the discovery of accounting irregularities; and (c) managing the shutdown of the national operations of Viking Freight, Inc. on behalf of Caliber System.

Previously, Mr. Brodsky was a member of senior management of Integrated Resources, Inc., ("Integrated") a diversified financial services firm listed on the NYSE, where he was responsible for managing Integrated's equipment leasing business, its portfolio of operating companies acquired through leveraged buyouts and as a member of senior management was actively involved in all aspects of Integrated's Chapter 11 reorganization from 1989 through 1995 working closely with creditors and advisors to maximize the value of the assets and work through a complex claims resolution and litigation process among banks, bondholders and unsecured creditors.

Mr. Brodsky started his career at Coopers & Lybrand of New York City where he specialized in banking and securities brokerage clients.  Mr. Brodsky graduated from New York University College of Business and Public Administration (BS) and New York University Graduate School of Business (MBA).  Mr. Brodsky is a Certified Public Accountant, and currently serves as Non-Executive Chairman of the Board of AboveNet, Inc., a director of Euramax Holdings, Inc. and a director of inMotion, Inc. Previously, Mr. Brodsky served as Non-Executive Chairman of the Board of Motor Coach Industries International, Inc., a director of EBG Holdings, LLC, Titan Energy Partners, LP, TVMAX, Inc., Morris Material Handling, Inc., Comdisco Holdings, Inc.  and Hawaiian Airlines.

**Contact Information for the Distribution Trust and the Distribution Trustee**

[To be provided]

**Exhibit B**

**Initial Members of the Distribution Trust Advisory Board**

**Aurelius Designees**

Jon Lukomnik – Managing Partner, Sinclair Capital LLC

Jon Lukomnik is a managing partner of Sinclair Capital LLC, a strategic consultancy in asset management and the asset management industry, corporate governance and risk management.  Mr. Lukomnik has advised a number of Fortune 100 companies, as well as top asset management firms on four continents and has an extensive background in asset management.

Mr. Lukomnik has also served as deputy comptroller for New York City, where he was designated as the investment advisor for the city's defined benefit pension plans, which encompassed over $80 billion in assets. During his tenure, the city's pension funds materially outperformed the average large pension fund in America. He was also in charge of investing the City's own treasury.

Currently, Mr. Lukomnik serves as a trustee for the Van Eck family of mutual funds and investment trusts, as a trustee on two litigation trusts, and on investment committees for three not-for-profit organizations. He served on the official creditors committees in the restructurings of Worldcom and Adelphia, as well as on the International Advisory Board of NYSE-Euronext.

In addition, Mr. Lukomnik is a former board member at Sears Canada (where he chaired both the investment and corporate governance committees), Auto Europe, and GovernanceMetrics International, which he co-founded.  He is a co-founder of the International Corporate Governance Network and a former chair of the Executive Committee of the Council of Institutional Investors. He also serves as the program director of the IRRC Institute, which sponsors research on corporate governance, corporate responsibility, capital market structure, and investor practices.

Kurt N. Schacht – Managing Director, CFA

Kurt N. Schacht, JD, CFA, is the Managing Director for CFA Institute's advocacy and policy area. (www.cfainstitute.org).  He is responsible for all aspects of the development, promulgation and promotion of the high ethical standards within the various professional standards developed by CFA Institute including,  the Code of Ethics and Standards of Professional Conduct for CFA charter holders, the Global Investment Performance Standards®, the Asset Manager Code of Professional Conduct.  Mr. Schacht also directs CFA Institute's government affairs efforts to represent the views of members and other investment professionals to standard setters, regulatory authorities, and legislative bodies worldwide. A major focus of these efforts is on professional and ethical conduct of financial service practitioners worldwide.

Prior to joining CFA Institute Mr. Schacht has been involved in the investment management business since 1990, serving as chief operating officer for a retail mutual complex in White Plains, NY, general counsel and COO for a Manhattan based hedge fund and as chief legal officer for the State of Wisconsin Investment Board (SWIB).  Mr. Schacht has an extensive background in securities law and regulation, alternative investments, hedge funds, financial reporting and corporate governance matters.
Mr. Schacht is a member of the newly created Investor Advisory Committee of the U.S. Securities and Exchange Commission (SEC).  He is currently serving a two year term as member of the PCAOB's (Public Company Accounting Oversight Board) standing advisory group. He also served on the Advisory Committee for Smaller Public Companies to the SEC and the Expert's Group for Principles for Responsible Investment of the United Nations Environment Programme (UNEP).  He was the New York Society of Security Analysts 2004 Volunteer of the Year.  Mr. Schacht received a Bachelor of Science degree in Chemistry and a JD from the University of Wisconsin-Madison.  He attained the Chartered Financial Analyst (CFA®) designation in 1998.

**PHONES Notes Indenture Trustee Designee**

<u>Adam K. Berman – Vice President, Wilmington Trust FSB</u>

Mr. Berman is responsible for introducing Wilmington Trust's full array of trust and agency services to corporations, municipalities and financial institutions throughout the world, specializing in global bond issuances, debt restructurings, default/bankruptcy administration, project finance, and loan syndications.

Prior to joining Wilmington Trust, Mr. Berman worked for Law Debenture Trust Company of New York where he served as Vice President, specialized in developing their global bond agency business, and worked on numerous high profile debt restructurings in Latin America.  His responsibilities included business development, client relationship management, marketing, and product development, and he was instrumental in the development of the firm's escrow and agency businesses.  Earlier in his career, Mr. Berman held various corporate trust positions at U.S. Bank, The Bank of Tokyo Mitsubishi, Bankers Trust, Deutsche Bank, and The Bank of New York.

Adam holds a BBA in Banking and Finance from Hofstra University.

### Contact Information for the Distribution Trust Advisory Board

[To be provided]

## Exhibit C

**Compensation for Distribution Trustee**

**Compensation for the Distribution Trustee shall be on an hourly basis as follows:**

**Quest Turnaround Advisors, LLC**
**Billing Rates**

| | |
|---|---|
| **Managing Director** | **$775** |
| **Director** | **$615** |
| **Associate** | **$350** |
| **Paralegal** | **$240** |
| **Administrative** | **$150** |

## Exhibit D

### Compensation for Members

Each Member of the Distribution Trust Advisory Board (the "**Board**") shall receive an annual aggregate fee equal to $60,000 to serve on the Board, to be paid in quarterly increments and shall include attendance at all Board meetings.