AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━  Attorneys at Law

DAVID M. ZENSKY
212 872 1075/1 212.872.1002
dzensky@akingump.com

February 7, 2011

**BY ECF AND HAND DELIVERY**

Chief Judge Kevin J. Carey
U.S. Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, DE 19801

Re:    In re Tribune Co., Case No. 08-13141 (KJC)

Dear Chief Judge Carey:

We write on behalf of the Noteholder Plan proponents (the "Noteholders") in response to four separate letter briefs filed with the Court by counsel to the Debtor/Committee/Lender Plan proponents (the "DCL Group") [Docket Nos. 7752, 7778, 7783, 7799] seeking to quash deposition subpoenas served by the Noteholders on attorneys who were directly involved in the negotiation of the proposed LBO settlement and Debtor/Committee/Lender Plan.[1]

The letters submitted by the DCL Group inaccurately describe the facts and the law. It is well-settled in the Third Circuit and elsewhere that attorneys are not immune from sitting for a deposition, especially in cases where they were directly involved in nonprivileged discussions and negotiations with adverse parties relating directly to matters that will be addressed at the upcoming Confirmation Hearing. Numerous decisions, including one relied upon by the Debtors, support a party's right to depose an attorney. See Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352-53 (D.N.J. 1990) (permitting the defendants to take the depositions of two of plaintiffs' attorneys).

The Noteholders believe that they are entitled to take the depositions of all the attorneys whom they subpoenaed because those attorneys played central roles in negotiations related to the Debtor/Committee/Lender Plan. Nevertheless, the Noteholders are willing to defer the depositions of James Conlan (counsel to Debtors) and Donald Bernstein (counsel to JPMorgan).[2]

---

[1] Counsel to the Debtors and counsel to the Official Committee of Unsecured Creditors (the "Committee") filed their letter briefs on Thursday, February 3. Counsel to JPMorgan and counsel to certain credit agreement lenders filed their letter briefs on Friday, February 4. Because the arguments raised by all four letters are similar, this response addresses them collectively.

[2] Law Debenture Trust Company of New York will be submitting a separate letter agreeing to postpone the depositions of Bruce Bennett (counsel to certain credit agreement lenders), and Jay Teitelbaum (counsel to William Niese, a member of the Committee) on the same basis.

Honorable Kevin J. Carey
February 7, 2011

In his letter, Mr. Bendernagel represents that "[t]he information that Mr. Conlan possesses relating to these proceedings is known by other individuals who be [sic] deposed in the coming weeks," (Docket No. 7752). Mr. Kaminetzky states in his letter to the Court that "[t]he information that Mr. Bernstein possesses relating to the bankruptcy proceedings has already been, or will be, learned from other individuals who have already been, or will be, deposed." (Docket No. 7783.) Based on these statements, and for various other reasons, the Noteholders are willing to complete the depositions of the Debtors' and JPMorgan's business representatives first, but reserve their right to oppose the motion to quash the depositions of Messrs. Conlan and Bernstein at a later date, depending on testimony elicited in future depositions and/or the content of subsequent document discovery.

The Noteholders do, however, intend to proceed with the deposition of Howard Seife, of Chadbourne & Parke LLP, and Graeme Bush, of Zuckerman Spaeder LLP, both of whom represent the Committee, and ask the Court to deny the Committee's request to block these depositions. Tellingly, the Committee's letter seeking to quash these subpoenas (Docket No. 7778) does not contain any representation by counsel that the testimony of Messrs. Seife and Bush would be wholly duplicative of testimony provided by other witnesses.[3]  In fact (and as one would expect with respect to Committee representation), documents produced in discovery show that Mr. Seife and other Chadbourne lawyers were heavily involved in ███████████ ██████████████████████████████████████████████████████ A sampling of such documents are attached hereto as Exhibit A.  Further, the DCL Group has listed both Mr. Seife and Mr. Bush as potential fact witnesses at the Confirmation Hearing.[4]

As counsel to the Committee, Mr. Seife and Mr. Bush owe fiduciary duties to all unsecured creditors, including the Noteholders, to ensure that the Plan proposed by the Committee is in the best interests of all unsecured creditors.  Given the many unique issues presented by this case and confirmation hearing, including the Examiner's conclusions respecting the merits of the LBO-related claims, Chadbourne's ongoing representation in other matters of the same banks that are defendants in the Committee's lawsuits relating to the LBO, the makeup of the Committee and the role played by Mr. Bush (special litigation counsel), it is imperative that the Noteholders have the opportunity to discover whether the Committee vigorously pursued maximum recoveries and a settlement advantageous to all non-LBO creditors, and the rationale for its endorsement of the plan—a point the DCL Group has stressed.

---

[3] Incredibly, Chadbourne suggests in its letter that the Noteholders can obtain "Committee-related information" from Miriam Kulnis of JPMorgan.  Kulnis, who was JPMorgan's representative on the Committee, was supposedly walled off from such discussions because of her obvious conflict of interest.

[4] A true and correct copy of the DCL Group's preliminary fact witness list is attached hereto as Exhibit B. The DCL Group's witness list purports to "reserve[] the right to call any witness identified on the preliminary list of deponents circulated by the Noteholder Plan Proponent Group," which included Messrs. Seife and Bush.

Honorable Kevin J. Carey
February 7, 2011

At bottom, the Noteholders are entitled to discovery relating to negotiations leading to the Committee's ultimate endorsement of the Debtor/Committee/Lender Plan and the overall fairness of that Plan to all unsecured creditors.

## The DCL Group Applies the Wrong Burden of Proof and the Wrong Legal Standard

In their letters, the members of the DCL Group have the burden of proof backwards and apply the wrong legal standard respecting depositions of attorneys. As the parties seeking the order to preclude the attorney depositions, the DCL Group bears the burden of demonstrating good cause to preclude or limit the testimony. Johnston Dev. Grp., 130 F.R.D. at 352-53 ("The preclusion of attorney depositions is to be analyzed with the same standards as any other protective order motion, with the movant bearing the burden of persuasion"); Falkenberg Capital Corp. v. Dakota Cellular, Inc., No. 95-351, 1998 WL 552966, at *4 (D. Del. Aug. 4, 1998) (same). As explained in more detail herein, the DCL Group has not carried its burden.

The DCL Group also improperly relies on the Eighth Circuit's test in Shelton v. American Motors Corp., which applies to depositions of *litigation and trial counsel*, not attorneys directly involved in negotiating a proposed Chapter 11 Plan of Reorganization with other potential plan proponents. See Allergan, Inc. v. Pharmacia Corp., No. Civ. A. 01-141-SLR, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) ("As a general principle, depositions of *trial counsel* are limited to those circumstances where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.") (emphasis supplied; internal quotations omitted); Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1987) (precluding deposition of the Defendant's in-house *litigation* counsel); see also In re Interactive Network, Inc., 243 B.R. 766, 767 (Bankr. N.D. Cal. 2000) (citing Johnston with approval, declining to follow Shelton, and drawing a distinction between depositions of *litigation* counsel as opposed to counsel involved in the "underlying transaction" that may be called as a fact witness).

Federal Rule of Civil Procedure 26 does not contain any exception for discovery sought from attorneys, especially where those attorneys are in possession of nonprivileged information that is relevant to the matters at issue. See Fed. R. Civ. P. 26; see also In re Penn Cent. Commercial Paper Litig., 61 F.R.D. 453, 463 (S.D.N.Y. 1973) ("It is well established that an attorney for a party may be deposed.") "In light of the general philosophy supporting full discovery of relevant facts, courts rarely order that a deposition not be taken." Cooper v. Welch Foods, Inc., 105 F.R.D. 4, 6 (W.D.N.Y. 1984) (denying defendant's motion for a protective order precluding plaintiff from deposing defendant's counsel).

In Johnston Development Group, a case relied upon by the Debtors, the district court *permitted* the defendant to depose the plaintiff's attorneys on relevant matters. Johnston Dev. Grp., 130 F.R.D. at 353-56. In reaching that conclusion, the Johnston court explained that the plaintiff did not meet its burden to establish undue burden or oppression measured by (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from

Honorable Kevin J. Carey
February 7, 2011

other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony. Id. at 353.

The Johnston court explained that the deposition of an attorney may be both "necessary and appropriate" where the attorney may be a fact witness. Id. at 352. As noted above, both the Debtors and the Noteholders have listed Messrs. Seife and Bush as potential fact witnesses at the Confirmation Hearing because they have personal knowledge of plan negotiations that others do not.[5]

Documents produced by the DCL Group support the Noteholders' right to take the depositions of Mr. Seife and Mr. Bush. Numerous emails produced by the DCL Group, which are attached as Exhibit A, show that ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████ Thus, the only way that the Noteholders can gain access to such non-privileged discussions and negotiations is through depositions of the attorneys involved in the negotiations. Similarly, only Mr. Seife and/or Mr. Bush can address the degree to which Mr. Bush or other Zuckerman Spaeder attorneys have participated in attorney-only meetings and negotiations.

The Noteholders have no desire to depose Messrs. Seife and Bush—or any other attorney for that matter—on any matter for which the DCL Group intends to invoke a valid privilege objection. Nothing prevents counsel defending Mr. Seife's or Mr. Bush's deposition from making good faith, valid objections on the basis of attorney-client privilege, the work product doctrine or common interest protection during the deposition. See, e.g., Scovill Mfg. Co. v. Sunbeam Corp., 61 F.R.D. 598, 603 (D. Del. 1973) (rejecting motion to prevent deposition of in-house counsel and requiring any objections to improper questions to be made during noticed deposition). The Noteholders have respected the DCL Group's privilege assertions at depositions of other witnesses in this case, and will continue to do so. However, the DCL Group cannot preclude the depositions of Messrs. Seife and Bush solely on the grounds that some of the information they possess may be covered by one or more privileges. The DCL Group's argument would create a de facto ban on depositions of any attorney.

Respectfully submitted,

David M. Zensky

---

[5] It certainly is not unheard of for attorneys to be deposed in bankruptcy matters. For example, we have been advised that Mr. Bendernagel himself was deposed in the Excite@Home bankruptcy case, and numerous attorneys were deposed in the Lyondell bankruptcy matter, including firms and attorneys involved in this case. ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

# EXHIBIT A

**[Filed Under Seal]**

## **EXHIBIT B**

## Carney, Brian

| | |
|---|---|
| **From:** | Miles, David M. [dmiles@Sidley.com] |
| **Sent:** | Wednesday, December 22, 2010 6:08 PM |
| **To:** | drosner@kasowitz.com; Goldberg.Elizabeth@dol.gov; hobartd@hbdlawyers.com; jellias@brownrudnick.com; johnstonj@hbdlawyers.com; SKorpus@kasowitz.com; agoldfarb@zuckerman.com; agordon@paulweiss.com; ahammond@whitecase.com; alevy@paulweiss.com; andrew.goldman@wilmerhale.com; Qureshi, Abid; bberens@jonesday.com; bbutwin@omm.com; Carney, Brian; bfritz@ny.whitecase.com; Bierman, Steven; bkrakaue@sidley.com; Doniak, Christine; Charles.Platt@wilmerhale.com; ckenney@sidley.com; cmontenegro@kasowitz.com; Conlan, James F.; dadler@mccarter.com; dahall@JonesDay.com; Dawn.wilson@wilmerhale.com; dbrown@paulweiss.com; dcantor@omm.com; Golden, Daniel; dhille@whitecase.com; Newman, Deborah; DLeMay@chadbourne.com; donald.bernstein@davispolk.com; dshamah@omm.com; Ducayet, James W.; Zensky, David; Elliot.moskowitz@davispolk.com; emccolm@paulweiss.com; Evan.Flaschen@bgllp.com; Flagg, Ronald S.; gbush@zuckerman.com; Gerson.Leonard@dol.gov; gnovod@brownrudnick.com; Heri.Christine@dol.gov; hkaplan@arkin-law.com; HSeife@chadbourne.com; jbendern@sidley.com; jdrayton@kayescholer.com; Goldsmith, Jason; Jonathan.Agudelo@kayescholer.com; JParver@kayescholer.com; jsottile@zuckerman.com; JYEH@ARKIN-LAW.COM; KBromberg@brownrudnick.com; Lantry, Kevin T.; lmarvin@JonesDay.com; lsilverstein@potteranderson.com; mashley@chadbourne.com; MesterJ@hbdlawyers.com; Hurley, Mitchell; Michael.russano@davispolk.com; Miles, David M.; MPrimoff@kayescholer.com; msiegel@brownrudnick.com; mstein@kasowitz.com; Chung, Nancy; Peltz, Jen; sasha.polonsky@davispolk.com; schannej@pepperlaw.com; Schloss.Michael@dol.gov; Gulati, Sunny; Stratton, David; Thomas, Dale E.; TMcCormack@chadbourne.com; Wackerly, Patrick |
| **Subject:** | Preliminary Witness List |

Pursuant to paragraph 10 of the Discovery and Scheduling Order for Plan Confirmation entered in this case on December 20, 2010 (the "CMO"), the Plan Proponent Group for the Debtor/Committee/Lender Plan hereby provides a preliminary list of fact witnesses that the Plan Proponent Group for the Debtor/Committee/Lender Plan may call to provide testimony at the Confirmation Hearing: (1)  Eddy Hartenstein, Tribune (2) David Kurtz, Lazard (3) Brian Whittman, Alvarez & Marsal (4) Don Liebentritt, Tribune and (5) Mark Shapiro, Tribune.   The Plan Proponent Group for the Debtor/Committee/Lender Plan also reserves the right to call any witness identified on the preliminary list of deponents circulated by the Noteholder Plan Proponent Group (in consultation with the other Plan Proponent Groups) in an email from Deborah Newman dated December 12, 2010, as supplemented by an email from Sheron Korpus dated December 13, 2010.  The Plan Proponent Group for the Debtor/Committee/Lender Plan will supplement or amend this list as required by paragraph 10 of the CMO, including without limitation in the event the Noteholder Plan Proponent Group or the Bridge Plan Proponent Group declines to depose any of the witnesses listed on the December 12-13 preliminary list of deponents.

David M. Miles
Sidley Austin LLP
1501 K Street, NW
Washington DC 20005
(202) 736-8556 (phone)
(202) 736-8711 (fax)
www.sidley.com

---------------------------------------------------------------------------------

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such

taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

**************************************************************************************

**********

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.