# Davis Polk

New York     Madrid
Menlo Park   Tokyo
Washington DC Beijing
London       Hong Kong
Paris

Benjamin S. Kaminetzky

Davis Polk & Wardwell LLP    212 450 4259 tel
450 Lexington Avenue         212 701 5259 fax
New York, NY 10017           ben.kaminetzky@davispolk.com

February 8, 2011

Re: *In re Tribune Company, et al.*, Case No. 08-13141 (Bankr. D. Del.) (KJC)

The Honorable Kevin J. Carey
824 North Market Street, 5th Floor
Wilmington, DE 19801

Chief Judge Carey:

We are counsel to JPMorgan Chase Bank N.A. ("JPMorgan") in the above-captioned cases, and write on behalf of the Debtor/Committee/Lender Plan Proponent Group (the "DCL Plan Proponents"). We write pursuant to Paragraph 14 of the Discovery and Scheduling Order for Plan Confirmation [D.I. 7239] in order to bring to this Court's attention a discovery dispute between the DCL Plan Proponents, on the one hand, and Aurelius Capital Management, LP ("Aurelius") and Akin Gump Strauss Hauer & Feld LLP ("Akin"), on the other.

In light of the impending discovery cut-off, the DCL Plan Proponents respectfully request urgent Court intervention as to two issues. First, because their document productions are facially deficient, Aurelius and Akin should be required to review certain documents that are purportedly being withheld on the basis of privilege and provide the DCL Plan Proponents with a document by document privilege log as to such documents. Second, Aurelius and Akin should be required to produce documents regarding Aurelius' acquisition of its Tribune interests. Each dispute is discussed in detail below.

1.  **The Productions are Deficient on their Face and the DCL Plan Proponents are Entitled to Information Regarding Questionable Privilege Assertions**

On December 19, 2010, the Debtors served on behalf of the DCL Plan Proponents document requests on Aurelius and a subpoena on Akin Gump requesting the production of documents relevant to the March 7th confirmation hearing. On January 18, 2011, Aurelius and Akin Gump produced documents in response to the requests.

Upon receiving the productions, the DCL Plan Proponents immediately began the process of reviewing what initially appeared to be a voluminous production of over 70,000 pages. However,

The Honorable Kevin J. Carey      2      February 8, 2011

looks can be deceiving, and it has since become apparent that the productions are wholly inadequate.[1]

Despite Aurelius having been involved and active in these cases for nearly one year, Aurelius has produced *only 88 e-mails*. Incredibly, Aurelius has produced *only 5 e-mails from Dan Gropper* and *only 12 e-mails from Mark Brodsky*. These sparse productions are particularly suspicious given that Mr. Gropper is the only Aurelius principal designated as a trial witness, presumably because of his depth of knowledge and involvement in these Cases, and given the direct personal attention these Cases have garnered from Mr. Brodsky, the most recent example being the incendiary "personal appeal" that he sought to have included in the disclosure packages sent to voters before it was stricken by this Court. In addition, Aurelius produced only 2 e-mails for the period after the DCL Plan was filed, no emails prior to December 28, 2009, and no emails after November 10, 2010. Put simply, at a time when e-mails are ubiquitous and constitute the primary form of communication for most businesses, Aurelius' production defies all logic.

Likewise, Akin Gump has only produced a total of *54 e-mails* and, of those, nearly a third relate to discussions among the parties regarding which name to use for each competing plan. Akin Gump has been involved in these Cases for almost the entirety of their over two-year history, and it is difficult to believe that the universe of relevant non-privileged emails is limited to those few that have been produced to date.

The clear inadequacy (and inequity) of Aurelius' and Akin Gump's productions are further laid bare when contrasted against the extensive productions made by the DCL Plan Proponents, much of which was made in response to discovery requests served by Aurelius. For example, JPMorgan has produced, in connection with the prior and current proposed settlements, more than 4,400 emails on behalf of itself and its professional advisors.[2] The production numbers are exponentially higher when accounting for productions made by the other DCL Plan Proponents.

When questioned about the deficiencies in their productions, Aurelius' and Akin Gump's response is a simple one – all other responsive documents are privileged. In meet-and-confer discussions, counsel for Aurelius indicated that, in contrast to the 88 e-mails that were produced, as many as 15,000 e-mails are being withheld on the basis of attorney-client privilege.[3] The volume of withheld documents constitutes powerful circumstantial evidence that Aurelius and Akin are improperly shielding from discovery relevant documents on the basis of specious assertions of privilege.

Accordingly, the DCL Plan Proponents request additional information in order to test whether Aurelius and Akin Gump have improperly withheld documents on the basis of attorney-client privilege. We therefore respectfully request that the Court require, within 3 days of resolving this dispute, Aurelius and Akin to (1) complete a relevance review of all documents that are being

---

[1] The total page count of the production is grossly inflated by Aurelius and Akin having produced numerous versions of the publicly-filed Plan documents, the Examiner's Report, and lengthy spreadsheet printouts.

[2] Including all productions in these matters, JPMorgan has produced 36,245 e-mails.

[3] Counsel for Aurelius indicated that they have not conducted a relevance review of the approximately 15,000 e-mails and that, should they do so, the actual number of relevant documents being withheld on privilege grounds could be less, perhaps substantially less, than 15,000.

The Honorable Kevin J. Carey                          3                          February 8, 2011

withheld on privilege grounds, and (2) with respect to any relevant documents that continue to be withheld, provide a complete document by document log setting forth the basis for such withholding.[4]

## 2. Aurelius has Failed to Produce Responsive Non-Privileged Documents

In addition to withholding documents based on questionable privilege assertions, Aurelius has simply refused to produce any relevant documents that fall within certain defined categories.[5] Specifically, Aurelius has refused to produce documents regarding Aurelius' acquisition or disposition of its interests in Tribune (*see* Requests 34-37, 45, 50-51, attached as Exhibit A).

As the Court is well aware, Aurelius is the primary proponent of the Noteholder Plan, and a bedrock requirement under 11 U.S.C. § 1129(a) is that all plans must be proposed in good faith. Aurelius has been given wide latitude to test the DCL Plan Proponent's good faith, as evidenced by their service of hundreds of document requests on the DCL Plan Proponents that aim to uncover (nonexistent) evidence that the DCL Plan was the product of bad-faith and collusive conduct. And despite the false and baseless premise of such requests, the DCL Plan Proponents have worked tirelessly to produce thousands of documents responsive to such requests within the tight deadlines established by the CMO.

Yet Aurelius has steadfastly refused to produce any documents regarding the circumstances in which it acquired its significant holdings in these Cases, thereby denying the DCL Plan Proponents with information that is necessary to assess whether Aurelius proposed the Noteholder Plan in good faith, or whether the Noteholder Plan is merely another tool in Aurelius' litigation arsenal designed to extract hold-up value to the detriment of the Debtors, their estates and the creditor body as a whole.

Discovery into these issues is particularly important here where unique factual circumstances raise serious questions as to whether the Noteholder Plan was proposed in good faith. Centerbridge Partners, L.P. ("Centerbridge"), at the time the largest holder of pre-LBO notes (the "Notes"), was a co-proponent of a plan of reorganization that provided a lower recovery to Noteholders than that provided for in the DCL Plan. The DCL Plan Proponents were not aware of any objection Aurelius had to the prior Plan. Nonetheless, at some point following issuance of the Examiner's Report, Aurelius decided to gamble tens of millions of dollars by purchasing Centerbridge's entire claim at a reportedly inflated, and seemingly illogical, price. Upon information and belief, Aurelius has also purchased a significant position in the PHONES notes, which even under the Noteholder Plan receive no initial distributions at all due to their deep structural and contractual subordination.

The following are just a few of the unanswered questions for which the DCL Plan Proponents are entitled to answers:

- Was the acquisition from Centerbridge, or any accompanying side deal, dependent on or impacted by a given litigation outcome such that Aurelius' incentives are to litigate rather than propose a Plan that is in the best interests of creditors?

- Did Aurelius execute any agreements, understandings, or handshakes in connection with its acquisition or disposition of Tribune interests regarding the terms of any plan Aurelius might propose, including whether Aurelius would hire Centerbridge's counsel, Akin Gump, and

---

[4] Upon receipt and review of such log, the DCL Plan Proponents reserve all rights to seek any additional relief from this Court as warranted.

[5] Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P. do not join in this portion of the letter.

The Honorable Kevin J. Carey                    4                    February 8, 2011

whether Akin Gump's fees in connection with its representation of Centerbridge would be paid, or whether Law Debenture's or Deutsche Bank's fees for actions taken on behalf of Centerbridge would be paid?

- Did Aurelius acquire its position in coordination with one or more other hedge funds, as has been rumored, and, if so, who are those funds and what promises and agreements were made in connection with their joint investment? What role, if any, did such funds play in connection with the Noteholder Plan, and what role would they play in the event such Plan is confirmed?

- Has Aurelius negotiated any voting or lock-up agreements with any other stakeholders?

- Has Aurelius entered into any agreements with holders of other claims, such as the PHONES Notes, and, if so, what do those agreements promise?

- What were Aurelius' motives in purchasing its reportedly large PHONES position, given the seeming unlikelihood of material recoveries to that class (including under the Noteholder Plan)?

Aurelius has not simply objected to the DCL Plan, but has proposed and seeks confirmation of its own Plan. Having done so, it has affirmatively put at issue its own tactics, strategy and intentions. As a proponent of the Noteholder Plan, Aurelius must demonstrate that it has proposed that Plan in good faith, and discovery as to the above questions is unquestionably relevant to that fundamental issue.

Aurelius has repeatedly argued to this Court that it is entitled to discovery into the motives of the DCL Plan Proponents, yet it and its counsel have refused legitimate reciprocal inquiries based on vague and ill-defined relevance objections. For these reasons, the DCL Plan Proponents respectfully request that the Court enter an order requiring Aurelius to produce all documents that it has previously withheld based on its specious objections.

*    *    *

Counsel have met and conferred on these issues, and will continue to do so in an effort to narrow the issues, but in light of the fast approaching discovery cut-off and March confirmation hearing, the DCL Plan Proponents have no choice but to raise these issues with the Court at this time. Aurelius and Akin Gump have in effect drawn a line in the sand saying that their production is complete because everything else is either privileged or objectionable. In an effort to avoid burdening the Court with unnecessary briefing on these relatively discreet disputes, the DCL Plan Proponents respectfully request that the Court schedule these disputes for resolution at the February 15th conference or at a time of the Court's convenience, and that the parties to the disputes rest on their respective letter submissions to the Court without the need for additional briefing.

Respectfully submitted,

*Benjamin S. Kaminetzky /LB*

Benjamin S. Kaminetzky

Enclosures
cc w/ enc:    All Counsel Entitled to Notice Pursuant to
              Paragraph 35 of the CMO
<u>By Electronic Filing</u>