**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al.*, | : | Case No. 08-13141 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing Date: March 1, 2011 at 10:00 a.m.** |
| | : | **Objection Deadline: February 22, 2011 at 4:00 p.m.** |
| | : | |

## MOTION OF STEVEN GELLMAN TO ALLOW PROOF OF CLAIM

Steven Gellman ("Gellman") hereby moves this Court for the allowance of his administrative expense claim pursuant to 11 U.S.C. § 503 and the Court's equitable powers under 11 U.S.C. § 105.  In support thereof, Gellman respectfully states:

### JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### RELIEF REQUESTED

Gellman respectfully requests that this Court enter an order granting allowance of his administrative claim, as his post-petition termination benefitted the Estate, and in any event his termination was wrongful and, having occurred post-petition, gives rise to administrative priority of his claim.

### BACKGROUND

Debtor Tribune Company ("Tribune"), headquartered in Chicago, Illinois, is one of the largest media companies in the United States and is the parent company of the each of the Debtors.  Together, the Debtors operate businesses in broadcasting and publishing.  The publishing arm of the Debtor ranks among the nation's largest in its circulation and revenue, and oversees publication of daily newspapers across the country, including the *Los Angeles Times*.

On December 8, 2008, Tribune and certain of its subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. In all, the Debtors comprise 111 entities.  These cases are

{00006039. }

being jointly administered.  The Court established a Claims Bar Date of June 12, 2009 by an Order dated March 25, 2009 [Doc. No. 489].  After multiple plans of reorganization were submitted, by Court Order on December 9, 2010 [Doc. No. 7126], it was established that January 28, 2011 would be the voting deadline for ballots on the plans, with a Confirmation Hearing scheduled to be held March 7, 2011.

The Los Angeles Times Media Group ("the LA Times") prints and distributes the *LA Times Magazine* (the "Magazine").  From July 27, 2009 to March 10, 2010, Steven Gellman was employed by the LA Times as a publisher.

The Magazine was losing money in 2010, and its revenues were not trending upwards.  Management of the Debtor indicated that the Magazine could not post losses for the second half of the year.  Gellman was terminated as Publisher on March 10, 2010.  Gellman's position was not replaced, and so his compensation was not paid out to anyone.

## DISCUSSION

Bankruptcy Code § 503 provides that: "(b) After Notice and a hearing, there shall be allowed administrative expenses, . . . , including – (1)(A) the actual, necessary costs and expenses of preserving the estate including – (i) wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A)(i).

Further, 11 U.S.C. §503(a) provides that an entity "may tardily file such request [for payment of an administrative expense] if permitted by the court for cause."

Gellman's tenure as publisher with the Magazine began in July 27, 2009.  As a publisher, Gellman was charged with ensuring quality publication of regular editions of the Magazine, widely distributed across the greater Los Angeles area.  Gellman received no significant discipline for his performance, but was terminated wrongfully as retaliation for his disagreement with distribution policy of the Magazine.

The primary inquiry in the allowance of administrative claims is the timing of the claim; for a employment termination action, the predicate act of termination can occur either pre- or post-petition.  See, e.g., Former Emples. of Builders Square Retail Stores v. Hechinger Inv. Co. (In re Hechinger Inv. Co.), 298 F.3d 219 (3d Cir. Del. 2002); NLRB v. Walsh (In re Palau Corp.), 18 F.3d 746 (9th Cir. 1994) ("Put simply, the Bankruptcy Code divides wage claims into categories of pre- and post-petition, and accords varying levels of priority to those claims").  Indeed, wage claims that incur post-petition are "necessary for the

{00006039. }

preservation of the estate . . . [creating an incentive] continue to work for an employer who has filed a petition for Chapter 11 . . . and thus are an administrative priority." In re Continental Airlines, 148 B.R. 207, 212 (D. Del. 1992).  In this instance, the timeline is clear: the Debtor filed for bankruptcy protection on December 8, 2008; the Court set a claims bar date of June 12, 2009; Gellman began his employment July 27, 2009 through March 10, 2010.  The start date and total duration of Gellman's employment was not only post-petition, but also post-claims bar date.  The wages that Gellman has not earned since his termination nearly a full year ago have all obviously accrued post-petition.

Significantly, Gellman's role as publisher was not replaced subsequent to his termination.  Thus, the money saved by firing Mr. Gellman went straight to the Magazine's bottom line, bringing it close to neutral by significantly reducing costs.  Salary savings were undoubtedly important to the Magazine, which realized this substantial expense reduction as a direct result of Gellman's termination.  This expense reduction was critical to keeping the Magazine operational, and in granting a sure benefit to the estate of the operating debtor-in-possession it should qualify as "necessary" to preserving the estate as envisioned under § 503(b)(1)(A) of the Bankruptcy Code.

In the alternative, these cost savings are the result of wrongful termination, in violation of Federal and California state law – and deserve the sort of remuneration anticipated in § 503(b)(1)(A)(ii) for this kind of "post-petition tort-like conduct" that cases have recognized as deserving of administrative priority. See, e.g., Department of Human Resources v. Witcosky (In re Allen Care Ctrs.), 96 F.3d 1328 (9th Cir. Or. 1996) (citing NLRB v. Walsh (In re Palau Corp.), 18 F.3d 746 (9th Cir. 1994), interpreting the doctrine articulated by the Supreme Court in Reading Co. v. Brown, 391 U.S. 471 (U.S. 1968)).  Wage claims related to statutory violations are entitled to such priority. See, e.g., Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.), 394 B.R. 765, 778 (Bankr. D. Del. 2008) (saying that "wage claims are administrative expenses when they are attributable to a postpetition period of time").

Finally, Gellman further submits that there is cause to allow his administrative claim at this time, as his employment began more than a month *after* the claims bar date in this case passed.  Accordingly, it was impossible for Gellman to file an administrative claim prior to the bar date.

{00006039. }

## CONCLUSION

Based upon the foregoing multiple grounds, whether because his termination benefitted the bottom line of the Estate, or because his wrongful termination gives rise to the priority status, Gellman respectfully requests that the Court enter an Order allowing its administrative expense claim pursuant to Bankruptcy Code § 503.


Dated:  February 9, 2011
　　　　 Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

/s/ Frederick B. Rosner
Frederick B. Rosner (#3995)
824 Market Street, Suite 810
Wilmington, DE 19801
302-777-1111
rosner@teamrosner.com


                    -and-

Leslie Cohen, Esquire
**Leslie Cohen Law**
506 Santa Monica Boulevard, Suite 200
Santa Monica, CA 90401
310-394-5900
leslie@lesliecohenlaw.com

*Counsel to Steven Gellman*