


Martin S. Siegel, Esq.
direct dial: 212-209-4829
msiegel@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

February 10, 2011

**VIA E-MAIL AND U.S. MAIL**

Honorable Kevin J. Carey
Chief United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 Market Street, Fifth Floor
Wilmington, Delaware 19801

**Re: In re Tribune Company, Case No. 08-13141 (KJC)**

Dear Chief Judge Carey:

This firm represents Wilmington Trust Company ("Wilmington Trust"), as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, generally referred to as the PHONES. We write on behalf of the proponents of the Noteholder Plan, on issues relating to discovery from Citigroup Global Markets Inc. ("Citigroup").[1] While not a proponent of the Debtor/Committee/Lender Plan, Citigroup is a supporter of the plan, and a recipient of a release pursuant to the terms therein.

On December 9, 2010, Aurelius Capital Management, LP ("Aurelius"), acting on behalf of its managed entities and the other Noteholder Plan proponents, issued a subpoena (the "Subpoena") to Citigroup. On January 12, 2011, the Noteholder Plan proponents provided Citigroup with an initial list of custodians and search terms that the Noteholder Plan proponents requested Citigroup to run for the LBO time period in response to the Subpoena. Citigroup and the Noteholder Plan Proponents participated in a meet and confer on that same day. On January 13, 2011, Citigroup sent a letter detailing the searches it had conducted in connection with its responses to the Subpoena, as well as prior discovery requests it had previously received in these cases. (Ex. A.) The letter revealed that, in response to the prior discovery requests seeking information from the time period of the LBO, Citigroup searched electronic information maintained by only six custodians, only one of whom – Julie Persily – was in Citigroup's Leveraged Finance group, the group with primary responsibility for providing financing for the LBO. Additionally, Citigroup disclosed for the first time in that letter that it had determined unilaterally not to conduct any additional searches from the LBO time period, even of persons who were directly involved in the LBO.

[1] Wilmington Trust writes under separate cover regarding discovery it seeks in its individual capacity only from Citibank, N.A.



brownrudnick.com




On February 4, 2011, the Noteholder Plan Proponents provided Citigroup (through its counsel) with a revised proposed search methodology. (Ex. B.) The Noteholder Plan proponents subsequently requested that Citigroup also search, for a two-month period, electronic information maintained by one additional custodian ([redacted]). The revised proposal was carefully designed to capture highly relevant information that had not previously been searched for, and about which Ms. Persily was unable to testify at her deposition on February 1, 2011. Citigroup's counsel, Paul Weiss, however, did not respond to the Noteholder Plan Proponents' repeated requests for Citigroup's position on the revised proposal in advance of a meet and confer call scheduled for February 8, 2011. During that call, Citigroup's counsel informed the Noteholder Plan Proponents that, while it had made no efforts to comply with the requests and was unlikely to do so, it would notify the Noteholder Plan Proponents of its position the following day. The response actually came on February 10, 2011, when Paul Weiss stated that Citigroup was "willing to collect and *then consider* the burden of reviewing the emails during the time periods you requested for Chad Leat and Frank Yeary." (Emphasis added). (Ex. C). Citigroup refused to conduct any searches for the additional custodians set forth in the Noteholder Plan proponents' revised proposal.

The Noteholder Plan proponents respectfully request that Citigroup be ordered to comply in full with the revised proposal, which is narrowly tailored to elicit information bearing directly upon Citigroup's knowledge regarding Tribune's financial condition at the time of the LBO. Such information is critical to the Court's assessment of the settlement proposed by the Debtor/Committee/Lender Plan, as the settlement is premised on the notion that the banks' Step One claims would not be avoided in litigation, and that the Step One lenders would be able to share in the benefit of any Step Two avoidance or recoveries. *See* Debtor/Committee/Lender Plan Disclosure Statement at 21. As the Examiner correctly found, however, the likelihood that the lending banks' claims are subject to equitable subordination or disallowance, or that the Step One lenders will be precluded from sharing in the benefit of Step Two avoidance or recoveries, is significantly increased if the banks "proceeded with the Step Two funding knowing that this would render Tribune insolvent." Examiner's Report. Vol. Two at 298-301, 332-38. The Examiner also found that "further investigation" on this issue is "merited." *Id.* at 337.

The search methodology proposed by the Noteholder Plan proponents is expressly intended to accomplish such "further investigation," without placing an undue burden on Citigroup. For example, the Noteholder Plan Proponents request that Citigroup run the terms "Trib!" and "TRB" through information maintained by only three custodians -- [redacted], [redacted] and [redacted] for a period of only nine days -- March 25, 2007 through April 2, 2007, the day after Citigroup committed to participating in the LBO. [redacted] (Ex. D.) [redacted]





[redacted] Yet, Citigroup is refusing to search for or produce electronic information from this short timeframe maintained by [redacted]

Citigroup is also refusing to run, for a two-month period only, the terms "Trib!" and "TRB" through electronic documents maintained by (i) [redacted], (ii) [redacted], and (iii) [redacted]

- [redacted] (Ex. F);
- [redacted]' (Ex. G.);
- [redacted]' (Ex. H); and
- [redacted] (Ex. I.)

[redacted]. (Ex. E.)

Finally, the Noteholder Plan proponents request that Citigroup run the search terms "Trib!" and "TRB" through electronic information maintained by [redacted], for the period February 1, 2007 – December 31, 2007. [redacted] (Ex. E.)




The documents sought by the Noteholder Plan Proponents are highly relevant to the question of whether a fraudulent transfer occurred, and Citigroup's knowledge immediately preceding Citigroup's decision to participate in the LBO on April 1, 2007, and the months leading up to the Step Two closing on December 20, 2007. There is no basis for Citigroup's refusal to run the narrow searches requested.

In sum, the parties are at an impasse and require the Court's intervention on this issue. We are prepared to address this issue in a telephonic conference or in person at the February 15, 2011 hearing if the Court desires.[2]

Respectfully,

Martin S. Siegel

cc: Paul, Weiss, Rifkind, Wharton & Garrison LLP
All Counsel Entitled to Notice Pursuant to
Paragraph 35 of the CMO (*via email*)

[2] This morning, Citigroup's counsel, Paul Weiss, offered yet a further meet and confer on these issues, but eventually indicated that the earliest it would be able to do so was on February 11. Because of the need to begin the process to obtain a resolution of the dispute pursuant to the terms of the CMO, and the next hearing date for this matter, February 15, 2011, we were compelled to proceed with the submission of this letter today.