# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF STEPHENIE KJONTVEDT ON BEHALF OF EPIQ BANKRUPTCY SOLUTIONS, LLC REGARDING VOTING AND TABULATION OF BALLOTS ACCEPTING AND REJECTING THE JOINT PLANS OF REORGANIZATION PROPOSED FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES

Stephenie Kjontvedt, being duly sworn, declares, under penalty of perjury:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

1.      I am a Vice President, Senior Consultant of Epiq Bankruptcy Solutions, LLC ("Epiq"), located at 757 Third Avenue, 3rd Floor, New York, New York 10017.  I am authorized to submit this Declaration on behalf of Epiq.  I am over the age of 18 years and not a party to the within action.

2.      I submit this Declaration with respect to the *First Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.* (the "Debtor/Committee/Lender Plan") dated December 8, 2010 [Docket No. 7136] and the *Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes,* (the "Noteholder Plan") dated December 9, 2010 [Docket No. 7127] (together, and as may be amended or modified, the "Plans").[2] Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge or my review of relevant documents.  If I were called upon to testify, I could and would testify competently as to the facts set forth herein.

3.      In accordance with the (a) *Order Authorizing the Debtors and Debtors in Possession to Retain and Employ Epiq Bankruptcy Solutions, LLC as Claims, Noticing, and Balloting Agent Pursuant to 28 U.S.C. § 156(C), Rule 2002(F) of the Federal Rules of Bankruptcy*

---

[2]     Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Plans or the Solicitation Order as defined below.  Reference is also made to the Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P, and Marathon Asset Management (the "Bridge Lender Plan") dated December 7, 2010 [Docket No. 7089].  The Bridge Lender Plan was withdrawn by the Bridge Lender Plan Proponents on February 7, 2010 [Docket No. 7821].  Accordingly, tabulation results of the Bridge Lender Plan are not included in this Declaration.

*Procedure and Local Rule 2002-1(F) as of the Petition Date*, dated December 10, 2008 [Docket No.

44] and (b) *Order (I) Approving General Disclosure Statement and Specific Disclosure Statements;*

*(II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of*

*Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV)*

*Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice*

*Materials; (V) Fixing Voting Record Date: (VI) Establishing Notice and Objection Procedures in*

*Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on*

*Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership*

*Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agent's Retention and*

*Allocation of Costs of Same: and (X) Granting Related Relief,* dated December 9, 2010, [Docket

No. 7126] (the "<u>Solicitation Order</u>") Epiq was appointed to assist the Debtor/Committee/Lender

Plan Proponents and the Noteholder Plan Proponents in connection with, *inter alia*, soliciting,

receiving, and tabulating Ballots accepting or rejecting the Plans.

4.      Pursuant to the Plans, only Holders of Claims in the following Classes were

entitled to vote to accept or reject the Plans:

**<u>Debtor/Committee/Lender Plan Classes Entitled to Vote</u>**

| DCL Class | DCL Class Description |
|-----------|----------------------|
| 1C | Senior Loan Claims against Tribune |
| 1D | Bridge Loan Claims against Tribune |
| 1E | Senior Noteholder Claims against Tribune |
| 1F | Other Parent Claims against Tribune |
| 1I | EGI-TRB LLC Notes Claims against Tribune |
| 1J | PHONES Notes Claims against Tribune |
| 50C-111C | Senior Loan Guaranty Claims against Guarantor Debtors |
| 2E-111E | General Unsecured Claims against Filed Subsidiary Debtors |

**Noteholder Plan Classes Entitled to Vote**

| Noteholder Class | Noteholder Class Description |
|---|---|
| 1C | Step One Senior Loan Claims |
| 1D | Step Two Senior Loan Claims |
| 1E | Bridge Loan Claims |
| 1F | Senior Noteholder Claims |
| 1G | Other Parent Claims |
| 1H | EGI-TRB LLC Notes Claims |
| 1I | PHONES Notes Claims |
| 1K | Subordinated Securities Claims |
| 50C-111C | Step One Senior Loan Guaranty Claims |
| 50D-111D | Step Two Senior Loan Guaranty Claims |
| 50E-111E | Bridge Loan Guaranty Claims |
| 50G-111G | Other Guarantor Claims |

(collectively, the "Voting Classes").

5.      The procedures for the solicitation and tabulation of votes on the Plans are outlined in the Solicitation Order.  Epiq was instructed to solicit the Holders of Claims in the Voting Classes and to review, determine the validity of, and tabulate Ballots voted to accept or reject the Plans by the Holders of Claims in the Voting Classes.

6.      As specified in the Solicitation Order, December 6, 2010 (the "Record Date") was established as the record date for determining the holders of Claims in the Voting Classes who would be entitled to vote on the Plans.  In accordance with the Solicitation Order, Epiq solicited the holders of Claims in the Voting Classes as of the Record Date, and provided certain non-voting materials to the holders of Claims in classes not entitled to vote on the Plans, as described further in

Epiq's *Affidavit of Solicitation Mailing*, [Docket No. 7813], which was filed with this Court on February 7, 2011.

7.        Ballots returned by mail, hand delivery, or overnight courier were received by personnel of Epiq at the offices of Epiq in New York, New York.  All Ballots received by Epiq were date stamped upon receipt and were processed in accordance with the Solicitation Order.

8.        In order for a Ballot to be counted as valid, the Ballot must have been properly completed in accordance with the Solicitation Order and executed by the relevant holder, or such holder's authorized representative, and must have been received by Epiq by 4:00 p.m. Eastern time on January 28, 2011 (the "Voting Deadline").[3]  Each Ballot received by Epiq was opened and then inspected at Epiq's offices.  Ballots were then entered into a computer database reserved exclusively for recording votes on the Plans.  All validly executed Ballots cast by Holders of Claims in the Voting Classes and received by Epiq pursuant to the Voting Deadline were accepted and tabulated as outlined in the Solicitation Order.

9.        I hereby declare that the results of the voting by Holders of Claims in the Voting Classes for the Debtor/Committee/Lender Plan and the Noteholder Plan are as set forth on the exhibits[4] attached hereto, as follows:

---

[3]    Severe weather conditions delayed delivery of some Ballots that presumably would have been received by the Voting Deadline. The proponents of the Debtor/Committee/Lender Plan and the Noteholder Plan waived in writing the Voting Deadline for  Ballots that were sent by courier service and scheduled for delivery on or before the Voting Deadline, but were received after the Voting Deadline, and such Ballots are included in the tabulation and counted as timely.  Additionally, one creditor with a change of address did not receive Ballots until the day of the Voting Deadline.  Both the Debtor/Committee/Lender Plan Proponents and Noteholder Plan Proponents agreed to accept such creditor's Ballots as timely.  The Ballots for this creditor were received by Epiq on January 31, 2010 and are counted and included in the tabulation.

[4]    The Ballots provided voters with the option to rank their preferences among the Plans they voted to accept with a 1, 2 or 3, with 1 being the most preferred Plan.  Any preference ranking for the Bridge Lender Plan is not included in the tabulation detail reports and reporting on ranked preferences is modified from 1, 2 or 3, to 1 and 2.  If a creditor voted to accept both the DCL Plan and the Noteholder Plan, and opted to rank the Plans, the preference ranking is reported on Exhibits A-2 and B-2 with the highest ranked Plan indicated with a 1 and the lowest ranked Plan indicated with a 2.

## **Debtor/Committee/Lender Plan**

a.  <u>Exhibit A-1</u> is a summary report by Class of all Ballots tabulated for the Debtor/Committee/Lender Plan;

b.  <u>Exhibit A-2(a)</u> is a detailed report of all votes included in the Debtor/Committee/Lender Plan tabulation with the exception of the debt securities;

c.  <u>Exhibit A-2(b)</u> is a detailed report of all votes included in the Debtor/Committee/Lender Plan tabulation from holders of Class 1E Senior Noteholder Claims and Class 1J PHONES Notes Claims;

d.  <u>Exhibit A-3(a)</u> is a report of all votes not included in the Debtor/Committee/Lender Plan tabulation, with the exception of the debt securities, and the reasons for exclusion of such Ballots;

e.  <u>Exhibit A-3(b)</u> a report of all votes not included in the Debtor/Committee/Lender Plan tabulation from holders of Class 1E Senior Noteholder Claims and Class 1J PHONES Notes Claims and the reasons for exclusion of such Ballots; and

f.  <u>Exhibit A-4</u> is a report of the Class 1G Convenience Claims making the Release Election.

## **Noteholder Plan**

a.  <u>Exhibit B-1</u> is a summary report by Class of all Ballots tabulated for the Noteholder Plan;

b.  <u>Exhibit B-2(a)</u> is a detailed report of all votes included in the Noteholder Plan tabulation with the exception of the debt securities;

c.  Exhibit B-2(b) is a detailed report of all votes included in the Noteholder Plan

tabulation from holders of Class 1F Senior Noteholder Claims and Classes 1I

PHONES Notes Claims;

d.  Exhibit B-3(a) is a report of all votes not included in the Noteholder Plan tabulation,

with the exception of the debt securities, and the reasons for exclusion of such

Ballots; and

e.  Exhibit B-3(b) is a report of all votes not included in the Noteholder Plan tabulation

from holders of Class 1F Senior Noteholder Claims and Classes 1I PHONES Notes

Claims and the reasons for exclusion of such Ballots.


I declare under penalty of perjury that the foregoing is true and correct to the best of

my knowledge, information, and belief.

Dated:  New York, New York
        February ⏐⏐ , 2011

                                        Stephenie Kjontvedt
                                        Vice President, Senior Consultant
                                        Epiq Bankruptcy Solutions, LLC