# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: March 1, 2011 at 10:00 a.m. ET<br>Objection Deadline: February 22, 2011 at 4:00 p.m. ET |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(A) AUTHORIZING NON-DEBTOR TRIBUNE (FN) CABLE VENTURES, INC.'S CONTRIBUTION TO TELEVISION FOOD NETWORK, G.P.

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, to the extent Bankruptcy Court authorization is required, hereby move this Court (the "Motion") for entry of an order pursuant to section 105(a) of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Code") permitting Tribune Company to cause non-Debtor Tribune (FN) Cable Ventures, Inc. ("TCV") to make a capital contribution to Television Food Network, G.P. ("TFN"), in accordance with the terms of the TFN partnership agreement, to which TCV is a party. In support of this Motion, the Debtors rely on the declaration of Nils E. Larsen, Co-President and Chief Investment Officer of Tribune Company (the "Larsen Declaration"), a copy of which is attached hereto as Exhibit A, and the declaration of Suneel Mandava, Director of Lazard Frères & Co. LLC (the "Mandava Declaration"), a copy of which is attached hereto as Exhibit B. In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5. To the extent the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicate for the relief sought herein is section 105(a) of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

6. Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors and TCV. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting. Tribune's broadcasting segment owns 23 network-affiliated television stations, "superstation" WGN America, radio station WGN-AM, and Chicago cable news channel CLTV, which together reach more than 80% of television households in the United States. (*See* Larsen Dec. § 3.)

7. Formed as a Delaware general partnership in 1993, TFN owns and operates "Food Network", a 24-hour lifestyle cable television channel focusing on food and related topics. As of the commencement of these chapter 11 cases, TCV, a non-Debtor subsidiary of Tribune Broadcasting Company and an indirect subsidiary of Tribune, owned a 31.3% partnership interest in TFN, and Scripps Networks, LLC ("Scripps") and Cable Program Management Co., G.P. ("CPMC" and together with Scripps, the "Scripps Parties") collectively held the remaining 68.7% partnership interest in TFN. (*See* Larsen Dec. § 4.) Food Network has enjoyed substantial commercial success and is recognized as a leader in food content and programming. Food Network's ratings have increased approximately 25% in the last three years, according to Nielsen Co. figures, reaching 707,000 viewers overall and 1.13 million in prime time, with commercial time often sold out. TCV's investment in TFN is an important and valuable asset, generating in excess of $110 million in distributions to TCV in fiscal year 2010. (*Id.*)

8.  In May 2010, Scripps commenced a new cable television channel, "The Cooking Channel," primarily devoted to cooking instruction, food information, and other directly related topics. The Cooking Channel is currently available in approximately 57 million households with a lineup consisting of new, original programming, as well as syndicated content and programming from Food Network's library that explores the food content genre at a more detailed level, including expert advice and techniques. (*See* Larsen Dec. § 5.) It was intended by the Scripps Parties at the time The Cooking Channel was launched that The Cooking Channel would be integrated into TFN to create a unique pair of food-focused channels operating efficiently under one infrastructure.[3] (*Id.*)

9.  The Debtors retained Lazard Freres & Co. LLC ("Lazard") to provide a financial analysis of the investment opportunity presented to TCV and the Debtors in connection with the launch and operation of The Cooking Channel as a flanker brand to Food Network. (*See* Order Modifying the Scope of the Retention of Lazard Frères & Co. LLC to Include Investment Banking and Financial Advisory Services Relating to Certain Transactions entered on May 14, 2010 (Docket No. 4409).)

10. On August 27, 2010, Scripps made a capital contribution of all of the outstanding membership interests of Cooking Channel, LLC, the entity owning the assets comprising The Cooking Channel, to TFN, resulting in Cooking Channel, LLC becoming a wholly-owned subsidiary of TFN (the "CC Contribution"). (*See* Larsen Dec. § 6.) Based upon due diligence, the analysis performed by Lazard, and extensive negotiations, TCV has agreed that the fair market value of the CC Contribution is $350,000,000. (*See* Larsen Dec. § 6.) The

---

[3] The Cooking Channel succeeded and replaced the Fine Living Network, another Scripps cable network, which Scripps rebranded as The Cooking Channel. Scripps launched The Cooking Channel on May 30, 2010, with the parties having agreed that the economic benefits and burdens of operating The Cooking Channel would be shared by the TFN partners.

Debtors' financial advisors at Lazard have reviewed and analyzed the CC Contribution and have advised the Debtors that the valuation of the CC Contribution is fair and reasonable. (*See* Mandava Dec. § 5.)

11. TCV wishes to make a capital contribution to TFN so that it may continue to participate in the economic benefits of TFN without a dilution of its percentage interest as a result of the CC Contribution. (*See* Larsen Dec. § 7.) The Debtors, together with their legal and financial advisors, reviewed the applicable provisions of the TFN partnership agreement relating to the parties' respective ownership interests, analyzed the impact of the CC Contribution on such interests, and have determined that TCV must make a capital contribution of $52,803,821 in order to avoid a dilution of its ownership interest (the "TCV Contribution"). (*Id.*; Mandava Dec. § 6.) To avoid the dilution of its interest in TFN by approximately 5.8% from the date of the CC Contribution, TCV must timely make the TCV Contribution; such dilution is disproportionate to the size of the required capital contribution. (*See* Mandava Dec. § 6.) The Debtors' financial projections and asset valuations contained in the disclosure statement accompanying the presently-pending plan of reorganization anticipate that the TCV Contribution will be made and therefore do not reflect TCV's interest in TFN as being diluted. (*Id.*) Failure to make the TCV Contribution would, in the opinion of both the Debtors and Lazard, negatively impact the distributable value available to creditor constituencies in these chapter 11 cases. (*See* Larsen Dec. § 7; Mandava Dec. § 6.) TCV itself presently has a sufficient amount of its own cash, obtained from previous cash distributions from TFN received subsequent to the Debtors' Petition Date, to fund the TCV Contribution. (*See* Larsen Dec. § 7.) The Debtors and TCV do not contemplate using assets of the Debtors' estates to make the TCV Contribution. (*Id.*)

12. The Debtors believe that the TCV Contribution represents a prudent and advantageous investment. (*See* Larsen Dec. § 8.) The Cooking Channel has enjoyed strong ratings since its launch, experiencing double-digit ratings increases over the prior year.[4] (*Id.*) Lazard analyzed confidential financial information relating to TFN and also reviewed the benefits of the flanker brand concept and concluded that operating performance of Food Network would most likely be stronger as a result of the launch of The Cooking Channel as a flanker brand and financial results to date have confirmed this expectation. (*See* Mandava Dec. § 7.) In fact, the combined operating performance of Food Network and The Cooking Channel has greatly exceeded projections. The increasing popularity of food-related programming among consumers has generated significant advertiser interest as well as increased competition. The Debtors believe that the launch of The Cooking Channel as a flanker brand to Food Network capitalizes on the substantial success of Food Network, represents a substantial "upside" opportunity to capture greater market share in this lucrative programming sector, leverages the synergies and competitive advantages created by two complimentary networks within TFN, and protects and enhances the value of the TFN brand. (*See* Larsen Dec. § 8.) Moreover, the operating structure takes advantage of the partnership structure already in place—and already successful—in connection with Food Network. (*Id.*)

13. In evaluating whether TCV should make the TCV Contribution, the Debtors' financial advisors at Lazard reviewed and analyzed the proforma combined financial projections of The Cooking Channel and Food Network. (*See* Mandava Dec. § 7.) Lazard's analysis compared the projected cash distributions flowing to TCV from its ownership interest in TFN if that interest were diluted or remained constant, and calculated the estimated returns on

---

[4] Compared to the prior year's ratings of the Fine Living Network.

the proposed investment. (*Id.*) Lazard's analysis concluded that the TCV Contribution would yield a very attractive investment return for TCV and Lazard therefore recommended that TCV make the TCV Contribution. (*Id.*) Lazard further determined that those conclusions remained valid at a range of assumptions regarding the value of the CC Contribution. (*Id.*) Based upon Lazard's favorable recommendation and their own analysis, the Debtors believe it is in the best interests of both TCV and the Debtors for TCV to make the TCV Contribution to avoid the significant economic dilution of Tribune's ownership stake in one of its most valuable assets. (*See* Larsen Dec. § 9.)

14.  Because TCV is a non-Debtor entity, and would be funding the TCV Contribution solely with its own assets, the TCV Contribution is not a contemplated use of property of the estate as to which Court authorization is required under section 363. But out of an abundance of caution given the amounts involved, the Debtors are seeking Court authorization for Tribune to cause TCV to make the TCV Contribution, to the extent any such Court authorization is required.

### RELIEF REQUESTED

15.  By this Motion, the Debtors request that the Court enter an order pursuant to section 105 of the Bankruptcy Code authorizing Tribune to cause TCV, to the extent such Court authorization is necessary, to remit the TCV Contribution to TFN. The Debtors further request that the Court waive the 14-day stay provided for in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, to facilitate the prompt remittance of the TCV Contribution upon entry of the order by this Court.

### BASIS FOR RELIEF

16.  Inasmuch as TCV is not a debtor subject to the jurisdiction of this Court and no use of assets of any Debtor are contemplated by this Motion, Court authorization is not

required under section 363 in order for TCV to remit the TCV Contribution to TFN. Nevertheless, for the reasons set forth above, the Debtors are seeking the authorization of this Court.

17.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. The Debtors submit that the Court may grant such relief pursuant to section 105(a), to the extent Court authorization is required, using the same principles and standards that the Court would use to approve a transaction outside the ordinary course of a debtor's business under section 363(b) of the Bankruptcy Code. To the extent applicable, section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

18.     Although sections 105, and to the extent applicable by analogy, 363 of the Bankruptcy Code do not specify a standard for determining when it is appropriate for a court to authorize such a transaction, courts routinely authorize debtors to use assets outside the ordinary course of business if such use is based upon the sound business judgment of the debtor. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (same); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363).

19. Courts typically consider the following factors in determining whether a proposed transaction outside the ordinary course of business satisfies this standard: (a) whether a sound business justification exists for the transaction, (b) whether adequate and reasonable notice of the transaction has been given to interested parties, (c) whether the transaction will produce a fair and reasonable price for the property, and (d) whether the parties to the transaction have acted in good faith. *See, e.g., Delaware & Hudson Ry.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

20. A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner outside the ordinary course of business. *See Lionel Corp.*, 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). In other words, the business judgment rule essentially shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or gross abuse of discretion. *See In re Global Crossing*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

21. The standards under section 363(b), to the extent applicable by analogy, would be satisfied with respect to the proposed TCV Contribution by non-Debtor TCV and Court approval is appropriate pursuant to section 105(a) of the Bankruptcy Code to the extent such

approval is required. The CC Contribution and the resulting decision by TCV to make the TCV Contribution are the products of arms-length, good-faith negotiations between the parties that commenced over a year prior to the date of this Motion. (*See* Larsen Dec. § 9.) The TCV Contribution represents the informed business judgment of TCV and should be approved as to TCV, to the extent such approval is required. The parties' ongoing business relationship is important and valuable to TCV (and to the Debtors as owners of TCV). (*See* Larsen Dec. § 9.) After extensive evaluation, the Debtors believe that the TCV Contribution is fair and reasonable, consistent with the terms and conditions of the TFN partnership agreement and industry practice, and economically favorable to Debtors and TCV. (*See* Larsen Dec. § 9.) Specifically, the Debtors believe that the valuation of the CC Contribution is fair and reasonable in light of the strong launch of The Cooking Channel. The Debtors further believe that the proposed TCV Contribution to TFN is reasonable and necessary so that TCV may continue to participate in the economics of the TFN partnership without dilution and is justified by the potential return on this investment. (*Id.*)

22.     Finally, the Debtors have provided adequate and reasonable notice of the proposed capital contribution to interested parties. Over the past several months, the Debtors have apprised the Committee and certain of the Debtors' key creditor constituencies of the terms of the CC Contribution and proposed TCV Contribution. In addition, the launch and operation of The Cooking Channel as a flanker brand to Food Network has been well-publicized.[5] Although there are grounds to suggest that TCV's contribution of the TCV Contribution Amount to TFN is outside the scope of transactions requiring Court approval under the Bankruptcy Code because the transaction is entered into by a non-Debtor and because no estate assets are proposed

---

[5] *See, e.g.*, Brian Stelter, *Another Cable Helping for Food Lovers*, N.Y. Times, Feb. 19, 2010; Howard Kurtz, *Cooking Channel Hopes America Has an Appetite For Even More Food Shows*, Wash. Post, May 2, 2010; Scripps Network Interactive, Inc., Quarterly Report (Form 10-Q), at F-14, F-18-19 (Nov. 4, 2010).

to be used, the Debtors have filed this Motion in the interests of transparency to give notice to all parties having requested notices in the Debtors' chapter 11 cases.

## NOTICE

23. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) the administrative agents for Tribune's prepetition loan facilities; (iv) the administrative agent for the Debtors' postpetition loan facility; (v) counsel to the Scripps Parties; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

24. Tribune has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, authorizing TCV to contribute the TCV Contribution to TFN; and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
February 11, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION