# EXHIBIT A

# LARSEN DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**DECLARATION OF NILS E. LARSEN IN SUPPORT OF MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(A) AUTHORIZING NON-DEBTOR TRIBUNE (FN) CABLE VENTURES, INC.'S CONTRIBUTION TO TELEVISION FOOD NETWORK, G.P.**

I, Nils E. Larsen, declare as follows:

1. I am Co-President and Chief Investment Officer of Tribune Company ("Tribune"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each, a "Debtor" and collectively, the "Debtors"). In my position as Chief Investment Officer I am responsible for, among other things, managing Tribune's various investments,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

including its investment in Television Food Network, G.P. ("TFN"), which is held through its indirect subsidiary, non-Debtor Tribune (FN) Cable Ventures, Inc. ("TCV"). In this capacity, I serve as Tribune's representative on TFN's management committee and am the principal point of contact for business dealings between Tribune and Scripps Networks, LLC ("Scripps") and Cable Program Management Co., G.P. ("CPMC" and together with Scripps, the "Scripps Parties"). I have read the Motion for an Order Pursuant to § 105(a) Authorizing Non-Debtor Tribune (FN) Cable Ventures, Inc.'s Contribution to Television Food Network, G.P. (the "Motion")[2] and am directly, or by and through the Debtors' personnel and advisors, familiar with the transactions described therein. I am authorized to submit this declaration (the "Declaration") in support of the Motion.

2. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) my view, based on my experience and knowledge of the Debtors' operations and personnel, (d) information supplied to me by others at the Debtors' request, or (e) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel or other advisors to the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

3. Tribune is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors and TCV. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting. Tribune's broadcasting segment owns 23 network-affiliated television stations, "superstation" WGN America, radio station WGN-AM, and Chicago cable news channel CLTV, which together reach more than 80% of television households in the United States.

---

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

4.  Formed as a Delaware general partnership in 1993, TFN owns and operates "Food Network", a 24-hour lifestyle cable television channel focusing on food and related topics. As of the commencement of the Debtors' chapter 11 cases, TCV, a non-Debtor subsidiary of Tribune Broadcasting Company and an indirect subsidiary of Tribune, owned a 31.3% partnership interest in TFN, and the Scripps Parties collectively held the remaining 68.7% partnership interest in TFN. Food Network has enjoyed substantial commercial success and is recognized as a leader in food content and programming. Food Network's ratings have increased approximately 25% in the last three years, according to Nielsen Co. figures, reaching 707,000 viewers overall and 1.13 million in prime time, with commercial time often sold out. TCV's investment in TFN is an important and valuable asset, generating in excess of $110 million in distributions to TCV in fiscal year 2010.

5.  In May 2010, Scripps commenced a new cable television channel, "The Cooking Channel," primarily devoted to cooking instruction, food information, and other directly related topics. The Cooking Channel is currently available in approximately 57 million households with a lineup consisting of new, original programming, as well as syndicated content and programming from Food Network's library that explores the food content genre at a more detailed level, including expert advice and techniques. It was intended by the Scripps Parties at the time The Cooking Channel was launched that The Cooking Channel would be integrated into TFN to create a unique pair of food-focused channels operating efficiently under one infrastructure.[3]

---

[3] The Cooking Channel succeeded and replaced the Fine Living Network, another Scripps cable network, which Scripps rebranded as The Cooking Channel. Scripps launched The Cooking Channel on May 30, 2010, with the parties having agreed that the economic benefits and burdens of operating The Cooking Channel would be shared by the TFN partners.

4

6.    On August 27, 2010, Scripps made a capital contribution of all of the outstanding membership interests of Cooking Channel, LLC, the entity owning the assets comprising The Cooking Channel, to TFN, resulting in Cooking Channel, LLC becoming a wholly-owned subsidiary of TFN (the "CC Contribution"). Based upon due diligence, the analysis performed by the Debtors' financial advisors at Lazard Freres & Co. LLC ("Lazard"), and extensive negotiations, TCV has agreed that the fair market value of the CC Contribution is $350,000,000.

7.    TCV wishes to make a capital contribution to TFN so that it may continue to participate in the economic benefits of the TFN partnership without a dilution of its percentage interest as a result of the CC Contribution. The Debtors, together with their legal and financial advisors, reviewed the applicable provisions of the TFN partnership agreement relating to the parties' respective ownership interests, analyzed the impact of the CC Contribution on such interests, and have determined that TCV must make a capital contribution of $52,803,821 in order to avoid a dilution of its ownership interest (the "TCV Contribution"). The Debtors' financial projections and asset valuations contained in the disclosure statement accompanying the presently-pending plan of reorganization anticipate that the TCV Contribution will be made and therefore do not reflect TCV's interest in TFN as being diluted. In my opinion, failure to make the TCV Contribution would negatively impact the distributable value available to creditor constituencies in the Debtors' chapter 11 cases. TCV itself presently has a sufficient amount of its own cash, obtained from past cash TFN distributions, to remit the TCV Contribution to TFN. The Debtors and TCV do not contemplate using assets of the Debtors' estates to make the TCV Contribution.

8.    The Debtors believe, and I agree, that the TCV Contribution represents a prudent and advantageous investment. The Cooking Channel has enjoyed strong ratings since its launch,

experiencing double-digit ratings increases over the prior year.[4] The Debtors believe, and I agree, that the launch of The Cooking Channel as a flanker brand to Food Network capitalizes on the substantial success of Food Network, represents a substantial "upside" opportunity to capture greater market share in this lucrative programming sector, leverages the synergies and competitive advantages created by two complimentary networks within TFN, and protects and enhances the value of the TFN brand. Moreover, the operating structure takes advantage of the partnership structure already in place—and already successful—in connection with the Food Network.

9. Based upon the favorable recommendation of Lazard and their own analysis, the Debtors believe, and I agree, it is in the best interests of both TCV and the Debtors for TCV to make the TCV Contribution to avoid the significant economic dilution of Tribune's ownership stake in one of its most valuable assets. The CC Contribution and the resulting decision by TCV to make the TCV Contribution are the products of arms-length, good-faith negotiations between the parties that commenced over a year prior to the date of the Motion. The parties' ongoing business relationship is important and valuable to TCV (and to the Debtors as owners of TCV). After extensive evaluation, the Debtors believe, and I agree, that the TCV Contribution is fair and reasonable, consistent with the terms and conditions of the TFN partnership agreement and industry practice, and economically favorable to Debtors and TCV. Specifically, the Debtors believe, and I agree, that the valuation of the CC Contribution is fair and reasonable in light of the strong launch of The Cooking Channel and that the proposed TCV Contribution to TFN is reasonable and necessary so that TCV may continue to participate in the economics of the TFN partnership without dilution and is justified by the potential return on this investment.

---

[4] Compared to the prior year's ratings of the Fine Living Network.

6

10. For all of these reasons, I submit on behalf of the Debtors that there are strong business justifications for having TCV make the TCV Contribution.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of February 2011.

_____
By: Nils E. Larsen