# AKIN GUMP
## STRAUSS HAUER & FELD LLP
Attorneys at Law

JOHN W. BERRY
212.872.8075/212.872.7512
johnberry@akingump.com

February 11, 2011

VIA ELECTRONIC FILING

The Honorable Kevin J. Carey
824 N. Market Street, Fifth Floor
Wilmington, DE 19801

    Re: *In re Tribune Company, et al.*, Case No. 08-13141 Bankr. D. Del (KJC)

Chief Judge Carey:

    We are counsel to Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius") in the above-captioned cases, and we write in response to the letter filed with the Court by Benjamin Kaminetzky on February 8, 2011.[1] In his letter, Mr. Kaminetzky, on behalf of the Debtor/Committee/Lender Plan Proponent Group (the "DCL Plan Proponents"), requests "urgent" Court intervention with regard to alleged inadequacies in the document production (the "Productions") made on behalf of Aurelius and our firm, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump").

1. The meet and confer process was not completed and had only just begun

    In Mr. Kaminetzky's letter, the DCL Plan Proponents imply that the parties had engaged in substantial meet and confer "discussions" regarding the Productions and allege that we have somehow "drawn a line in the sand" regarding the issues they have raised. That is not correct. Only one meet and confer conference took place before Mr. Kaminetzky's letter, and as was clear to all participating in that call, further discussions were expected to take place. Instead of continuing with that process—as the CMO requires—the DCL Plan Proponents prematurely sought Court intervention before there was any real chance for the parties to resolve the discovery dispute. In contrast, we have consistently engaged in multiple meet and confers with the DCL Plan Proponents and other parties before seeking the Court's assistance.

    After Mr. Kaminetzky's letter was sent to the Court, counsel have continued to meet and confer in good faith on the issues raised in his letter. Through these conferences, counsel for the DCL Plan Proponents have learned the information provided below. Moreover, as we informed them before and after they sent their letter to the Court, we—like most other parties in these cases—have been re-reviewing documents withheld on the basis of privilege in light of the

---

[1] Although the CMO calls for us to respond to Mr. Kaminetzky's letter in two business days (CMO ¶ 14(a)), counsel for the DCL Plan Proponents agreed to allow us three days to submit our letter response.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

The Honorable Kevin J. Carey
February 11, 2011
Page 2

Court's February 3, 2011 order and will be making a supplemental production on behalf of Aurelius. We expect that this supplemental production will be made tomorrow, February 12, 2011, and will comprise about 100 documents.

2. The Productions are not "facially deficient"

In Mr. Kaminetzky's letter, the DCL Plan Proponents allege that "[t]he volume of withheld documents" somehow shows that "Aurelius and Akin are improperly shielding from discovery relevant documents on the basis of a specious assertions of privilege." That is also not correct. His letter omits the legitimate basis for Aurelius's privilege assertions, which we provided the DCL Plan Proponents' counsel during our meet and confer discussions and correspondence. Namely, for most of the period for which the Debtors sought documents from Aurelius, Aurelius was represented by multiple law firms, and was actively investigating and pursuing potential avenues of litigation in connection with the Tribune bankruptcy. As such, Aurelius has been relying on and conferring with its lawyers on just about every issue that is germane to this litigation. Thus, it is not at all surprising that the overwhelming vast majority of Aurelius's communications that concern Tribune and that would be responsive to the Debtors' document requests are privileged.

Moreover, Mr. Kaminetzky suggests in his letter that Aurelius produced only "88 emails" out of "as many as 15,000 emails … withheld on the basis of attorney-client privilege." That is also wrong. As the DCL Plan Proponents now know through subsequent discussions and communications, Aurelius has withheld about 5,700 emails responsive to the Debtors' document requests on account of a privilege. Given that Aurelius has been represented by counsel in connection with this case for most of the twelve-month period for which documents were sought, this number of privileged emails is not large. In fact, the privilege log produced on behalf of a *single* Debtor custodian, Mr. Liebentritt, contained almost 1,500 documents for just a *three-month period* (late August to November, 2010). Thus, Mr. Liebentritt alone has withheld about the same amount of privileged documents per month that Aurelius has withheld for all *four* of its custodians.

In addition, as we explained to counsel for the DCL Plan Proponents, discussions regarding the Aurelius recovery models—which is the analysis that they said they were the most interested in—were primarily held with counsel or verbally among individuals at Aurelius who sit in close proximity to one another. Also, these individuals have access to their models via a "shared" computer drive, which obviates the need for them to send versions to each other by email. In fact, almost 1,000 responsive documents, totaling over 65,000 pages, were produced from this shared drive in Aurelius's production to the Debtors. In any event, counsel for the DCL

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
Attorneys at Law

The Honorable Kevin J. Carey
February 11, 2011
Page 3

Proponents are free to explore any non-privileged discussions about these recovery models at the upcoming Aurelius depositions.

Lastly, in Mr. Kaminetzky's letter, the DCL Plan Proponents attack the propriety of our firm's document production of 54 non-privileged emails, which he claims "is difficult to believe" given Akin Gump's "two-year history" in these cases. But this production was not for a "two-year" period. Instead it covers less than three months from late September to early December 2010, when Akin Gump represented Aurelius. In fact, since October 12, 2010, when the DCL Plan term sheet was signed, just about every Akin Gump email communication is protected under an attorney-client privilege or the common interest privilege Aurelius shares with the other parties opposing that Plan.

In any event, the DCL Plan Proponents' letter only requests the Court to compel us: (1) to review our privileged documents for relevancy and (2) to provide a document-by-document privilege log. But, as counsel for the DCL Plan Proponents now know, the first item has already been resolved since we have completed our re-review of the privileged Aurelius documents and informed them how many responsive documents are privileged. As to the request for a document-by-document privilege log, we continue to object to that untimely request. Mr. Kaminetzky's client has always been adamantly opposed to providing the kind of document-by-document log it now seeks from Aurelius for any post-petition period. Indeed, the timing of this is suspect. Since December 2010, the parties have been meeting and conferring about a number of issues, including privilege logs. As alluded to in Mr. Kaminetzky's letter, the DCL Plan Proponents have been fully aware of Aurelius's focus on litigation to oppose what it believes is an unfair Plan. Yet, even though Aurelius made its document production three weeks ago on January 18, 2011 (with a category log of privileged documents), not once have counsel for the DCL Plan Proponents requested a privilege log from Aurelius. In fact, the *first* time we heard of such a request was in Mr. Kaminetzky's letter to the Court.

3. Aurelius' Trading Records Are Irrelevant

The DCL Plan Proponents also ask the court to compel Aurelius to produce documents responsive to a series of document requests seeking extensive but irrelevant information concerning Aurelius's trading data and history. As an initial matter, a significant amount of this information is already public. Creditor positions at the commencement of these cases were disclosed in the Debtor's schedules of assets and liabilities, notices of transfer of claims recorded any subsequent transfer of legal title of claims and the approximate date thereof, and Aurelius' specific holdings (including the face value of the Senior Notes and PHONES Notes beneficially owned by Aurelius) were disclosed in the Specific Disclosure Statement filed by the Noteholder Plan Proponents. (*See* Specific Disclosure Statement at 5 n.4.)

AKIN GUMP
STRAUSS HAUER & FELD LLP

The Honorable Kevin J. Carey
February 11, 2011
Page 4

    What is not public, however, is information that would reveal Aurelius' proprietary and highly confidential methodologies for determining which securities they will buy and the timing and price for these purchases.[2]  With good reason, no other party in this bankruptcy has produced such information.  In fact, DCL Plan Proponents Angelo, Gordon & Co. L.P. and Oaktree Capital Management, L.P. have specifically refused to produce this information.  Presumably for that very reason, Angelo Gordon and Oaktree "do *not* join" in that part of Mr. Kaminetzky's letter demanding disclosure of this irrelevant information.  (*See* Kaminetzky Letter at 3, n.5.)  The DCL Plan Proponents cannot have it both ways on this issue.

    The DCL Plan Proponents also do not identify any legitimate use for this information.  Instead, on pages 3 and 4 of Mr. Kaminetzky's letter, they concoct several "unanswered questions" such as whether Aurelius executed any "agreements, understandings or handshakes" in connection with its purchases.  Putting aside the irrelevance of these questions, Aurelius has agreed, as part of the good faith meet and confer process that has taken place after Mr. Kaminetsky's letter was sent to the Court, to produce any non-privileged documents, to the extent they exist, responsive to these supposedly "unanswered questions."  We believe this is more than sufficient to resolve this issue.

    In any event, we have been and continue to be willing to meet and confer with the DCL Plan Proponents' counsel in an attempt to resolve this dispute in good faith.

    The Court's consideration is appreciated.

Respectfully submitted,

John W. Berry

cc:    All counsel entitled to notice under CMO ¶ 35

---

[2] Incredibly, the DCL Plan Proponents seek this information not only with respect to Aurelius' Tribune interests, but also with respect to any claims, notes, equity, debt or other direct or economic interest held by Aurelius in connection with any other bankruptcy. (*See* Document Requests 50-51.)

One Bryant Park / New York, New York 10036-6745 / 212.872.1000 / fax: 212.872.1002 / akingump.com