

| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | NEW YORK |
| 1501 K STREET, N.W. | BRUSSELS | PALO ALTO |
| WASHINGTON, D.C. 20005 | CHICAGO | SAN FRANCISCO |
| (202) 736 8000 | DALLAS | SHANGHAI |
| (202) 736 8711 FAX | FRANKFURT | SINGAPORE |
| | GENEVA | SYDNEY |
| | HONG KONG | TOKYO |
| | LONDON | WASHINGTON, D.C. |
| | LOS ANGELES | |
| jbendernagel@sidley.com | | |
| (202) 736 8136 | FOUNDED 1866 | |

February 14, 2011

**By Hand**

The Honorable Chief Judge Kevin J. Carey
United States Bankruptcy Court
for the District of Delaware
824 N. Market St., 5th Floor
Wilmington, Delaware 19801

      Re:    *In re Tribune Company, et al.*, Case No. 08-13141 (Bankr. D. Del.) (KJC)

Dear Chief Judge Carey:

      We are counsel to Debtors in the above-captioned cases. We write in connection with the February 11, 2011 Letter from David M. Zensky on behalf of the Noteholder Plan Proponents ("Noteholders") regarding the depositions of Dan Kazan and others. Although we do not represent any of the individuals that the Noteholders are seeking to depose, we wish to briefly respond to certain of the Noteholders' comments regarding the Debtors.

      As an initial matter, any suggestion that Debtors have been dilatory in this matter is wholly lacking in merit. As explained below, upon receipt of the notices of deposition, the Debtors promptly took steps to inform the individuals, or their counsel, of the notices and to determine their availability. By contrast, it is the Noteholders, despite having had over two months to notice and subpoena witnesses for deposition, who waited until virtually the last minute to do so.[1] As the Court will recall, in December, the Noteholders successfully argued for right to take up to 40 depositions. Having been granted that right, however, the Noteholders then waited *five weeks* before noticing even a single deposition, and then waited another week and half, until late Friday evening, January 28, 2011, to notice up any witnesses affiliated with the Debtors.

      Likewise puzzling is the Noteholders' feigned surprise that Debtors' counsel is not representing Messrs. Kazan, Bellack, Knapp or Ms. Waltz. As the Noteholders are well aware, each of these individuals has been named as a defendant in preference actions filed in early December 2010 by the Committee of Unsecured Creditors, acting on a grant of standing to bring

---

[1] Indeed, even though the hearing is only a few weeks away, the Noteholders continue to notice up depositions, serving a Rule 30(b)(6) deposition notice on JPMorgan on the same day they sent their letter to the Court.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



The Honorable Chief Judge Kevin J. Carey
February 14, 2011
Page 2

these claims on behalf of the Debtors. Given their status as defendants in actions filed on behalf of the Debtors, it is not surprising that Debtors' counsel is not representing them. Nor is it surprising that some of these individuals have retained or will be retaining their own counsel. And it cannot have been unanticipated that these individuals would be reluctant to voluntarily appear for a deposition given their status as defendants in the pending preference actions. Any deposition now would simply expose them to "free discovery" that could be used against them in those actions, which, as counsel for Ms. Waltz points out, is not consistent with the current stay of those cases.

In any event, the facts do not support any claim that Debtors unreasonably delayed with respect to these depositions. As to Mr. Kazan, the Notice was served on Debtors' counsel on Friday evening, January 28, 2011 and requested the deposition take place on February 22, 2011. Debtors' counsel promptly forwarded the Notice to Mr. Kazan's counsel that evening, and, on February 3, 2011, Debtors counsel informed the Noteholders that Mr. Kazan's lawyer had advised that Mr. Kazan was available on February 22 but that he reserved all his rights in this matter. The next day, Mr. Kazan's attorney communicated that position directly to the Noteholders. The Noteholders' letter indicates that the parties met and conferred last week, and the Noteholders have been able to bring this matter to the Court's attention well before the February 22, 2011 noticed deposition date. Under these circumstances, any claim that Debtors have acted improperly with respect to this matter is without merit. To the contrary, the fact that this issue is being brought to the Court's attention at this point is simply attributable to the Noteholders' decision to wait until the last minute to pursue this deposition.

With respect to Bellack and Knapp, the Noteholders claim that they were "under the impression that each was still employed by the Debtors." What the source of that impression was is not stated, however, it was clearly not the Debtors. Aurelius' counsel and professionals were provided with a schedule last Fall from the Debtors that clearly indicated which potential preference defendants were current versus former employees. In fact, with respect to other witnesses who are former employees (Messrs. Grenesko and Landon), the Noteholders asked Debtors' counsel whether they were authorized to accept service before attempting to serve subpoenas.

In any event, after receiving the January 29, 2011 notices, Debtors attempted to locate both Messrs. Bellack and Knapp and advise them of the fact that the Noteholders were seeking to take their depositions. Both indicated that they needed to determine if they should retain counsel, which Debtors promptly reported back to the Noteholders on February 3. It is Debtors' further understanding that both have now retained counsel and are in discussions with Noteholders' counsel. Indeed, the Noteholders themselves make clear that this dispute is not yet ripe but warn that they may seek the Court's relief at some point in the future. Once again,


**SIDLEY AUSTIN LLP**
**SIDLEY**

The Honorable Chief Judge Kevin J. Carey
February 14, 2011
Page 3

however, the timing here is attributable to the Noteholders' delay in seeking these depositions, not to any actions of the Debtors.[2]

Finally, it remains entirely unclear from the Noteholders' letter why the Noteholders need to take any of these depositions. None of these individuals were identified either on the Noteholders' initial list of deponents provided by email dated December 12, 2010 or on the Noteholders' preliminary list of witnesses served on December 22, 2010. That was not surprising, since none had any significant role in the LBO. Mr. Bellack's and Ms. Waltz's names appear in the Examiner's Report only to identify them as one of numerous directors and officers of the Company's many subsidiaries. And while the Examiner briefly refers to a handful of emails to or from Mr. Kazan or Mr. Knapp, there is absolutely no suggestion that either acted inappropriately in connection with the LBO or that either had a material role in the underlying events. In fact, neither Mr. Kazan's nor Mr. Knapp's name *appears at all* in Volume 2 of the Examiner's Report, which sets forth in extensive detail the Examiners' opinions and findings. Of course, to the extent that there might be any possible LBO-related claims that might be asserted against any of these individuals, those claims are preserved in both Plans.

In short, the Noteholders' eleventh-hour efforts to procure the depositions of individuals who are, at best, peripheral players in the LBO appears to be yet another sideshow that distracts from the real issues in this matter. If these depositions were, in fact, central to anything the Court must determine at the confirmation hearing to begin on March 7, 2011, the Noteholders would not have waited so long to seek them. Their delay in this regard certainly does not justify an extension of the discovery cut-off date.

Respectfully submitted,

*James F. Bendernagel Jr.*
James F. Bendernagel Jr.

cc:    All counsel entitled to notice pursuant to Paragraph 35 of the CMO

---

[2] The situation with Ms. Waltz is even more perplexing. While the Noteholders argue that her knowledge of the Orlando Sentinel's financial performance and business projections is "highly relevant," Ms. Waltz was not identified as a potential witness and she was not subpoenaed until February 3, 2011.

CH1 5722716v.1