**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946-1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
212-373-3543

WRITER'S DIRECT FACSIMILE
212-492-0543

WRITER'S DIRECT E-MAIL ADDRESS
agordon@paulweiss.com

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846 0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2 CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

2001 K STREET, NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223 7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899 0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
ALLAN J ARFFA
ROBERT A ATKINS
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON*
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
HENK BRANDS
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
JAMES M DUBIN
ALICE BELISLE EATON
ANDREW J EHRLICH
LESLIE GORDON FAGEN
MARC FALCONE
ANDREW C FINCH
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
KENNETH A GALLO
MICHAEL E GERTZMAN
PAUL D GINSBERG
ROBERT D GOLDBAUM
NEIL GOLDMAN
ERIC S GOLDSTEIN
ERIC GOODISON
CHARLES H GOOGE, JR
ANDREW G GORDON
BRUCE A GUTENPLAN
GAINES GWATHMEY, III
ALAN S HALPERIN
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
ROBERT M HIRSH
MICHELE HIRSHMAN
JOYCE S HUANG
DAVID S HUNTINGTON
MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
JOHN C KENNEDY
ALAN W KORNBERG

DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
TOBY S MYERSON
JOHN E NATHAN
CATHERINE NYARADY
ALEX YOUNG K OH
JOHN J O'NEIL
KELLEY D PARKER
ROBERT P PARKER*
MARC E PERLMUTTER
MARK F POMERANTZ
VALERIE E RADWANER
CAREY R RAMOS
CARL L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
PETER J ROTHENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JAMES H SCHWAB
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
MARILYN SOBEL
AUDRA J SOLOWAY
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
DANIEL J TOAL
MARK A UNDERBERG
LIZA M VELAZQUEZ
MARIA T VULLO
LAWRENCE G WEE
THEODORE V WELLS, JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
JULIA T M WOOD
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

February 14, 2011

<u>Via E-Mail & Electronic Filing</u>

Honorable Kevin J. Carey
Chief United States Bankruptcy
United States Bankruptcy Court for the District of Delaware
824 Market Street, Fifth Floor
Wilmington, Delaware 19801

*In re Tribune Company*, Case No. 08-13141 (KJC)

Dear Chief Judge Carey:

   We represent Citigroup Global Markets Inc. ("CGMI"), non-plan proponents, in the above-captioned matter. We respectfully submit this letter in response to the Noteholder Plan Proponents' letter, dated February 10, 2011, to this Court (the "Letter"), which purports to describe various "deficiencies" in CGMI's prior document productions. But, as we describe below, there are no such "deficiencies." On the contrary, it is the Noteholder Plan Proponents' last-minute and newly minted requests that are unreasonable. As such, they should be rejected.

   The Noteholder Plan Proponents' submission to this Court grossly misstates the record in several key respects. Here are the facts.

   1. On December 9, 2010, CGMI – who had already produced over 273,000 of pages to the depository in response to the UCC's and Wilmington Trust's prior document requests – received brand new document requests from Aurelius Capital Management on behalf of the Noteholder Plan Proponents. Thereafter, CGMI timely filed its Objections and Responses on December 23, 2010, making clear that it believed it would be unduly burdensome to require CGMI to conduct a search and review of its

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Kevin J. Carey                                                                                              2

electronic files for yet additional responsive documents relating to the Tribune LBO *for what would now be the third time.*

        2.    CGMI heard nothing from the Noteholder Plan Proponents until January 10, 2011, at which point counsel for the Noteholder Plan Proponents requested a meet and confer to discuss CGMI's responses. In advance of that scheduled meet-and-confer call, counsel for Wilmington Trust sent a memorandum to us detailing its understanding of the scope CGMI's prior productions. In addition, counsel for Wilmington Trust also provided us with its list of additional searches it wanted CGMI to conduct. (*See* Ex. A.)

        3.    Because that memo seriously underappreciated CGMI's efforts at collecting hard copy and electronic documents in response to the prior document requests, we agreed to provide a detailed description of CGMI's prior document collections and productions, and did so within 24 hours. (*See* Ex. B.) As we explained in our letter, CGMI, after extensive negotiations with the UCC, collected, reviewed and produced hard-copy documents from 10 custodians and electronic documents from six custodians. Following further negotiations with Wilmington Trust, CGMI did the same for two additional custodians. Notably, these productions included the files of Christina Mohr and Julie Persily, the two individuals at CGMI with the most knowledge about the Tribune LBO.

        4.    It was our hope that our letter of January 13 would enable the parties to discuss any further searches in a timely and efficient manner, with an eye towards minimizing the burdens on CGMI in collecting documents yet again for the third time. This was especially true given that CGMI had already produced documents from the files of Ms. Mohr and Ms. Persily.

        5.    Inexplicably, and notwithstanding the Noteholder Plan Proponents' current claim that the information they seek is "critical to the Court's assessment of the settlement proposed by the Debtor/Committee/Lender Plan," CGMI heard nothing whatsoever from the Noteholder Plan Proponents for over three weeks.

        6.    Indeed, it was not until February 4, which was a mere three weeks prior to the close of all fact discovery, that the Noteholder Plan Proponents suddenly contacted us about our document searches – this time presenting a totally *new* set of requests and custodians to search. (*See* Ex. C.) Although the Noteholder Plan Proponents characterize their recent document request as "a revised proposed search methodology," thus implying that the request is simply a narrowing of their prior demands, it is no such thing. Indeed, ten of the eleven custodians are totally new and the search terms themselves – TRIB! and TRB – are designed to pick up every single document relating to Tribune, whether they relate to the LBO or not. In short, while the Noteholder Plan Proponents try to paint these requests as limited and presenting minimal burden on CGMI, they in fact have the potential for generating an enormous volume of

Honorable Kevin J. Carey                                                                                         3

documents to review in a relatively short time, while, at the same time, promising to yield very little in terms of new documents that the Noteholder Plan Proponents have not seen already given the extensive document productions done to date by CGMI.

       7.     In particular, the Noteholder Plan Proponents assert that the scope of CGMI's prior document productions was in some way a surprise. It was not. Dating back to May 2009, CGMI engaged in extensive negotiations with counsel for the UCC, of which Wilmington Trust is a member, concerning its document production. As a result of those discussions, CGMI produced to the Document Depository over 273,000 pages of documents. Later, on May 13, 2010, Wilmington Trust served its First Request for the Production of Documents on CGMI, seeking, among other things, additional documents concerning the LBO. In the course of the subsequent meet and confer process, the parties discussed CGMI's prior efforts and eventually agreed that CGMI would collect and produce additional documents from Julie Persily and others. Wilmington Trust was thus well aware of the scope of CGMI's prior productions.

       8.     The aforementioned request came in at 5:23 p.m. on a Friday; counsel for CGMI agreed to meet and confer with counsel for the Noteholder Plan Proponents the following Tuesday. As counsel for CGMI tried to explain, the collection and review process is a lengthy one and it was doubtful it could be done by the close of discovery. Considering that fewer than three weeks remained before the close of fact discovery, and that the requests were nearly all new, CGMI first asked the Noteholder Plan Proponents to limit their requests. When they declined to do so, CGMI proposed what it believed would be possible to accomplish in the time remaining. Specifically, CGMI agreed to collect and, depending on the volume involved, review emails from the following additional custodians and time periods: Chad Leat for the requested periods of March 25–April 2, 2007 and November 1– December 30, 2007, and from Frank Yeary for the requested period of March 25–April 2, 2007. CGMI indicated its willingness to discuss the issue further.

       9.     The Noteholder Plan Proponents response to this proposal was to request yet *another* 2 months of e-mails from a custodian, and then, without completing the meet-and-confer process[1], to file their submission to the Court, prematurely and inappropriately.

---

[1] As an initial matter, by submitting its letter when it did, the Noteholder Plan Proponents improperly cut short the meet and confer process. The letter's claim that the parties were at an "impasse" is true only insofar as CGMI did not immediately agree to the Noteholder Plan Proponents' demands in full. But that is not the test for a good-faith meet-and-confer. Nor is the Noteholder Plan Proponents' gun-jumping a mere technical violation: in the meet-and-confer that immediately preceded the February 10 submission, CGMI did not refuse to produce additional documents; rather, CGMI presented a counterproposal and indicated a willingness to continue negotiations. As described below, the Noteholder Plan Proponents' response was, not to consider a compromise, but to actually *increase* the extent of their demands.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Kevin J. Carey                                                                                              4

\* \* \*

In short, against this backdrop, there is simply no legitimate basis to permit the Noteholder Plan Proponents to put forward new requests for electronic searches, coming as they do at this late date. To require more of CGMI at this late date would be unreasonable and place an undue burden on CGMI. Moreover, as the Noteholder Plan Proponents' failure to complete the meet and confer process confirms, it appears that their true motivation is to create an issue that will permit them to seek an extension of the close of fact discovery and with it, the confirmation hearing.

CGMI therefore asks that this Court deny the Noteholder Plan Proponents' requests.

Respectfully,

Andrew Gordon

cc:    Brown Rudnick LLP
       All Counsel Entitled to Notice Pursuant to Paragraph 35 of the CMO