## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Re: Dkt. No. 7801 |
| | Hearing: March 7, 2011 at 10:00 a.m. |

## LIMITED OBJECTION OF CALIFORNIA FRANCHISE TAX BOARD
## TO CONFIRMATION OF THE SECOND AMENDED JOINT PLAN
## OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
## PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P.,
## ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.

The State of California Franchise Tax Board ("**FTB**"), the agency that administers income and franchise tax for the State of California, through its undersigned attorneys, hereby objects to confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (the "**Plan**") Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (collectively, the "**Proponents**") [Dkt. No. 7801].[1] In support of this objection, FTB respectfully states as follows:

### BACKGROUND

1.    On or about December 8, 2008, Tribune Company and certain of its affiliated entities (the "**Debtors**") each filed voluntary petitions for relief under chapter 11 of title 11 of the

---

[1]    FTB previously brought most of its objections to the attention of the Debtors' counsel by letter, dated January 24, 2011. When FTB did not receive a response to its letter, FTB left a voice message on the automated answering system of the Debtors' counsel on January 31, 2011. As of the filing of this objection, FTB has not received a response to either its letter or its voice message.

United States Code (the "**Bankruptcy Code**").  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.     FTB, whose mailing address is Bankruptcy Section MS A340, P.O. Box 2952, Sacramento, CA  95812-2952, is an agency of the State of California and is authorized to act on behalf of the State of California to administer and collect income and franchise taxes for the State of California.  In this capacity, FTB is an interested party in these Chapter 11 Cases.[2]  FTB holds several General Unsecured Claims, Priority Tax Claims, and Secured Claims (due to setoff rights) against the Debtors for unpaid corporate income and franchise taxes, including a General Unsecured Claim in the current amount of $27,782,334.00 and a Priority Tax Claim in the current amount of $51,750,072.01 against Tribune Company, which are jointly designated as claim number 3558 on the official claims register,[3] and may hold Administrative Expense Claims against the Debtors for unpaid corporate income and franchise taxes as well.

## OBJECTION

3.     Under section 1129(a)(1) of the Bankruptcy Code, the Plan cannot be confirmed unless it complies with all other applicable provisions of the Bankruptcy Code.

4.     In its current form, the Plan contravenes the Bankruptcy Code in at least four material respects:  (1) the Plan unlawfully restricts allowance of properly filed proofs of claim to which no objection has been filed in violation of section 502(a) and Rule 3003(c) of the Federal Rules of Bankruptcy Procedure; (2) the Plan provides for improper treatment of Holders of Priority Tax Claims (i.e., claims under section 507(a)(8)) that is less favorable than the treatment

---

[2]     Capitalized terms that are not otherwise defined in this limited objection have the meanings ascribed to them in the Plan.

[3]     FTB is in the process of amending these Claims and its other Claims.

prescribed by sections 511 and 1129(a)(9)(C); (3) the Plan wrongfully provides for the categorical disallowance or subordination of claims for penalties related to taxes without any supporting authority; and (4) the Plan provides for a discharge of the Debtors' debts and a corresponding discharge injunction that exceed the authority granted by sections 524 and 1141. In addition, the Plan (5) may impose unlawful restrictions on allowance of administrative expenses for taxes incurred by the Debtors' Estates; (6) may unjustly deny administrative expenses for tax periods that span the Petition Date; (7) may improperly release claims against non-debtors without justification; and (8) fails to provide an adequate remedy for Holders of Claims in the event that the Debtors' default on their payment obligations under the Plan.

5.    Absent the Proponents agreeing to modify the Plan so that it complies with the Bankruptcy Code, FTB respectfully requests that the Court deny confirmation of the Plan.

## I.    THE PLAN UNLAWFULLY RESTRICTS ALLOWANCE OF PROPERLY FILED PROOFS OF CLAIM

6.    In their schedules, the Debtors list FTB as the holder of several unliquidated Claims. FTB has since filed several Proofs of Claim in the Chapter 11 Cases. Section 1.1.5(a) of the Plan provides, however, that such Claims will not be "Allowed" if they are "listed as . . . unliquidated on the pertinent Debtor's schedules." This restriction conflicts with section 502(a) of the Bankruptcy Code and Rule 3003(c) of the Federal Rules of Bankruptcy Procedure.

7.    Under section 502(a), a proof of claim filed in a debtor's case is "deemed allowed" unless a party in interest objects to the proof of claim. Rule 3003(c) clarifies that a proof of claim "supersede[s] any scheduling of that claim" by the debtor. Thus, a debtor cannot prevent allowance of a properly filed proof of claim merely by listing the claim as unliquidated on its schedules.

8.      Section 1.1.5 of the Plan, therefore, must be amended to conform the definition of "Allowed" to section 502(a).  As an aid to the Proponents and the Court, FTB submits that the Plan can be remedied by striking the phrase "and is not listed as disputed, contingent or unliquidated on the pertinent Debtor's schedules" in section 1.1.5(a).

## II.    THE PLAN PROVIDES FOR IMPROPER TREATMENT OF HOLDERS OF PRIORITY TAX CLAIMS

9.      Section 2.3 of the Plan provides that, unless the parties otherwise agree, Holders of Allowed Priority Tax Claims will receive either (a) payment "in full" in Cash after their Priority Tax Claims become Allowed Claims or (b) regular installment payments in Cash equal to the Allowed amount of their Claims over a period ending not later than the fifth anniversary of the Petition Date, together with interest compounded annually from the Effective Date.  The first of these options potentially conflicts with section 1129(a)(9)(C) of the Bankruptcy Code.  The second option conflicts with section 511 of the Bankruptcy Code.

10.     Under section 1129(a)(9)(C), holders of Allowed Priority Tax Claims must receive payments "of a total value, *as of the effective date of the plan*, equal to the allowed amount of such claim[s]."  (emphasis added).  It is unclear whether the first treatment option in section 2.3 of the Plan—payment of Priority Tax Claims "in full" after such Claims become Allowed Claims—provides for payment of interest between the Effective Date and the date on which such Claims are ultimately paid.  Cf. United States v. Arrow Air, Inc. (In re Arrow Air, Inc.), 101 B.R. 332, 334-35 (S.D. Fla. 1989) (holding language in plan providing for payment "in full" was ambiguous and would be construed against debtor such that governmental unit was entitled to receive interest between the effective date and the date of payment).  If it does not, the first treatment option does not satisfy section 1129(a)(9)(C) with respect to Claims that are not Allowed on or before the Effective Date.  See id. at 335-36 (holding governmental unit was

- 4 -

entitled to interest under section 1129(a)(9)(C) where governmental unit received single lump payment after bankruptcy court overruled debtor's objection to its priority tax claim); see also In re Burgess Wholesale Mfg. Opticians, Inc., 721 F.2d 1146, 1146 (7th Cir. 1983) (holding that governmental units are entitled to interest under section 1129(a)(9)(C) through payment period).[4] The present value of the payment a Holder of such a Claim ultimately will receive after the Effective Date—the full amount of their Claim—is necessarily less than the value of their Claim "as of the effective date of the plan." Cf. In re Szostek, 886 F.2d 1405, 1406 n.1 (3d Cir. 1989) (noting "a dollar received today is worth more than a dollar to be received in the future").

11.     The second treatment option in section 2.3 of the Plan—installment payments with interest—is also problematic when applied to FTB's Claims.  Under section 511 of the Bankruptcy Code, the rate of interest for tax claims must be determined under applicable non-bankruptcy law.  California law provides that interest on claims for unpaid corporate franchise and income taxes compounds daily. Cal. Rev. & Tax Code § 19521(b)(1).  Section 2.3 of the Plan, however, currently provides that interest only will compound annually.  Thus, the Plan currently provides for a lesser rate of interest on FTB's Priority Tax Claims than FTB is entitled to under section 511.

12.     Section 2.3 of the Plan, therefore, must be amended to provide proper treatment to FTB and other Holders of Allowed Priority Tax Claims.  As an aid to the Proponents and the Court, FTB submits that the Plan can be remedied by replacing the two treatment options described in section 2.3 of the Plan with the following:

---

[4]     Cf. Terex Corp. v. Metropolitan Life Ins. Co. (In re Terex Corp.), 984 F.2d 170, 174 (6th Cir. 1993) (finding bankruptcy court's award of post-confirmation interest where payment to priority claimant was delayed due to debtor's objection to claim was consistent with section 1129(a)(9)(B)).

- 5 -

(a) payment in full in Cash after such Priority Tax Claim becomes an Allowed Claim, together with interest from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, (b) equal monthly installment payments in Cash equal to the Allowed amount of such Claim over a period ending not later than the fifth anniversary of the Petition Date, together with interest payable in full with each monthly installment payment from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, which installment payments shall commence after such Priority Tax Claim becomes an Allowed Claim.

III.    **THE PLAN WRONGFULLY PROVIDES FOR THE CATEGORICAL DISALLOWANCE OR SUBORDINATION OF CLAIMS FOR PENALTIES RELATED TO TAXES**

13.    Section 11.4 of the Plan provides that the Confirmation Order shall constitute an Order "disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties." This provision conflicts with sections 503(b)(1)(C) and 507(a)(8)(G) of the Bankruptcy Code and controlling precedent from the United States Supreme Court.

14.    Under the Bankruptcy Code, claims for penalties that relate to taxes are allowable and, in certain cases, are entitled to heightened priority. Section 503(b)(1)(C), for example, provides that governmental units are entitled to first priority administrative expenses for penalties that relate to taxes incurred by the estate. Section 507(a)(8)(G) similarly provides that governmental units are entitled to eighth priority claims for penalties that relate to certain pre-petition tax claims and are imposed in compensation for actual pecuniary loss. Additionally, claims for penalties related to pre-petition taxes that are not imposed in compensation for actual pecuniary loss are allowable as general unsecured claims. See United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 226 (1996) (holding claim for non-compensatory penalty was an "ordinary, unsecured claim").

15.    There is no authority that permits the Confirmation Order to subordinate Claims for penalties related to taxes and deny such Claims the priority they are entitled to under the

- 6 -

Bankruptcy Code. Indeed, the United States Supreme Court has twice held that bankruptcy courts cannot reorder the priorities to which claims for penalties related to taxes are entitled under the guise of equitable subordination under section 510(c) of the Bankruptcy Code. See United States v. Noland, 517 U.S. 535, 540-42 (1996) (holding bankruptcy court could not categorically subordinate administrative expenses allowed under section 503(b)(1)(C) to other administrative expenses); Reorganized CF & I Fabricators of Utah, 518 U.S. at 229 (holding bankruptcy court could not categorically subordinate ordinary, unsecured claims for non-compensatory penalties to other unsecured claims). In both cases, the Supreme Court concluded that any categorical reordering of the priorities of claims would be tantamount to a legislative act and, therefore, beyond the bankruptcy court's authority. Id.

16. By the same logic, claims for penalties related to tax claims cannot be disallowed under the guise of equitable disallowance either, assuming *arguendo* that bankruptcy courts have authority to equitably disallow claims at all. Cf. Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.), 554 F.3d 382, 414 (3d Cir. 2009) (holding that under section 510(c) "a creditor's claim can be subordinated only to the claims of other creditors, not equity interests"); Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims, 160 F.3d 982, 991 n.7 (3d Cir. 1998) (declining to decide whether equitable disallowance remains an available remedy under the Bankruptcy Code).

17. Section 11.4 of the Plan, therefore, must be amended to clarify that Claims held by governmental units, including FTB, for penalties related to taxes will not be disallowed or subordinated to other Claims by the Confirmation Order.

## IV.    THE DISCHARGE PROVISIONS OF THE PLAN ARE OVERBROAD

### A.    The Plan Unlawfully Strips Creditors of their Rights of Setoff and/or Recoupment.

18.    Section 11.1.2 of the Plan provides in part that Holders of Claims that are discharged upon confirmation of the Plan will be permanently enjoined from "asserting any setoff . . . or recoupment of any kind against any debt, liability or obligation due the Debtors, the Reorganized Debtors or their respective property." This provision exceeds the scope of the discharge injunction authorized by section 524(a)(2) of the Bankruptcy Code and conflicts with section 553 of the Bankruptcy Code and case law regarding creditors' recoupment rights.

19.    This Court and others have recognized that where a creditor timely asserts their rights to setoff prior to confirmation, section 553 preserves the creditor's setoff rights and such rights cannot be eliminated or enjoined post-confirmation under section 524. In re Alta+Cast, LLC, No. 02-12982, 2004 WL 4814881, at *6 (Bankr. D. Del. Mar. 2, 2004) ("[T]here is no basis in the [Bankruptcy Code] to eliminate [a creditor's] setoff rights. In fact section 553 expressly preserves whatever setoff rights [a creditor] may have under state law.") (distinguishing In re Continental Airlines, 134 F.3d 536 (3d Cir. 1998), and other cases in which creditors' setoff rights were extinguished because the creditors failed to assert their setoff rights prior to confirmation); see also I.R.S. v. Luongo (In re Luongo), 259 F.3d 323, 333 (5th Cir. 2001) ("We agree with the vast majority of courts considering the relationship between § 524(a) and § 553 that a debtor's discharge in bankruptcy does not bar a creditor from asserting its right to setoff.") (collecting cases); 5 Collier on Bankruptcy ¶ 553.08 (15th ed. rev. 2010) ("If a claim has been discharged, the better view is that, notwithstanding the discharge, the creditor should be entitled to assert the claim defensively in an action brought by the debtor to collect on a debt.").

20.     Similarly, no provision of the Bankruptcy Code allows the Confirmation Order to enjoin creditors from asserting recoupment. Cf. 11 U.S.C. § 524(a)(2) (omitting recoupment from scope of discharge injunction). Bankruptcy courts have consistently recognized that where a creditor timely asserts their rights to recoupment prior to confirmation, a discharge of the debtor's debts does not extinguish the creditor's right to assert a defense of recoupment. See, e.g., Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan), 270 B.R. 749, 754 (B.A.P. 9th Cir. 2001) ("Since recoupment is neither a claim nor a debt, it is unaffected by . . . the debtor's discharge."); cf. Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 261 (3d Cir. 2000) (finding that a right of recoupment is a defense rather than an interest in property and therefore is not extinguished by a sale of the debtor's property free and clear of interests pursuant to section 363(f) of the Bankruptcy Code).

21.     As discussed *supra*, FTB holds several Claims against the Debtors for unpaid corporate franchise and income taxes. To the extent that the Debtors hold claims against FTB, FTB hereby reserves its right to set off or recoup the amount of its Claims against any amounts ultimately due to the Debtors.[5] Section 11.1.2 of the Plan must be amended, therefore, to clarify that FTB will not be enjoined from asserting its setoff and recoupment rights post-confirmation.

### B.     The Plan Fails to Incorporate the Statutory Exceptions to Discharge.

22.     Section 11.1.1 of the Plan provides that confirmation of the Plan will "discharge the Debtors from all Claims or other debts that arose before the Effective Date." This provision exceeds the scope of the discharge authorized by section 1141 of the Bankruptcy Code. Section 1141(d)(6) of the Bankruptcy Code specifically provides that confirmation of a plan *does not* discharge a debtor from any debt for a tax that the debtor willfully attempted to evade or defeat

---

[5]     FTB expects that its amended claims will assert substantial setoff rights.

or for which the debtor made a fraudulent return.  Section 11.1.1 of the Plan, therefore, must be amended to incorporate these exceptions from the Debtors' discharge.

       23.    As an aid to the Proponents and to the Court, FTB submits that the Plan can be remedied by adding the following language after section 11.1.1(b):

> Notwithstanding section 11.1.1(a) and (b), the provisions of this Plan shall not operate to discharge any Claims, debts, rights, causes of action or liabilities that are not discharged under 11 U.S.C. § 1141(d), and no Person is precluded from asserting any Claim, debt, right, cause of action or liability that is not discharged under 11 U.S.C. § 1141(d).

## V.    THE PLAN MAY IMPOSE UNLAWFUL RESTRICTIONS ON ALLOWANCE OF ADMINISTRATIVE EXPENSES FOR TAXES INCURRED BY THE ESTATE

### A.    The Plan May Improperly Require Governmental Units to File Requests for Payment of Administrative Expenses for Taxes Incurred by the Estate.

       24.    Section 2.2 of the Plan provides for payments to Holders of "Allowed" Administrative Expense Claims, including governmental units that hold Allowed Administrative Expense Claims under sections 503(b)(1)(B) and/or 503(b)(1)(C) of the Bankruptcy Code.  The definition of "Allowed" in section 1.1.5 of the Plan, however, could be construed as requiring governmental units that hold Administrative Expense Claims to file a Proof of Claim or other request for payment in order for their Administrative Expense Claims to be Allowed.

       25.    This requirement would conflict with section 503(b)(1)(D) of the Bankruptcy Code, which expressly provides that "a governmental unit *shall not* be required to file a request for the payment of [an administrative expense for taxes incurred by the estate] as a condition of its being an allowed administrative expense." (emphasis added).  The Plan, therefore, should be amended to further clarify that governmental units are not required to file a Proof of Claim or other request for payment in order for their Administrative Expense Claims under section

503(b)(1)(B) and/or 503(b)(1)(C) to be Allowed under the Plan.  FTB's proposed language is set forth in section IV.C. *infra*.

**B.    The Plan May Improperly Bar Allowance of Administrative Expense Claims for Interest that Accrues on Taxes Incurred by the Estate.**

26.    Section 7.4 of the Plan provides that Holders of Claims will not be paid interest that accrues on their Claims on or after the Petition Date unless the Plan provides otherwise or "applicable bankruptcy law" requires that such interest be paid.  Section 2.2 of the Plan does not expressly provide for payment of post-petition interest to governmental units that hold Administrative Expense Claims under section 503(b)(1)(B) of the Bankruptcy Code and the phrase "applicable bankruptcy law" is ambiguous.   It is unclear, therefore, whether governmental units that hold Administrative Expense Claims under section 503(b)(1)(B) will be paid interest on such Claims.

27.    Courts interpreting sections 503(b)(1)(B) and 503(b)(1)(C) have recognized that governmental units are entitled to allowed administrative expenses for any interest that accrues on taxes incurred by the estate.  See, e.g., United States v. Ledlin (In re Mark Anthony Constr., Inc.), 886 F.2d 1101, 1101-08 (9th Cir. 1989) (recognizing that sections 503(b)(1)(B) and 503(b)(1)(C) do not specifically address interest but finding that Congress did not express its intent to depart from past practice and that denying administrative expenses for interest would be inconsistent with the general treatment of interest in the Bankruptcy Code and tax laws); United States v. Friendship Coll., Inc. (In re Friendship Coll.), 737 F.2d 430, 433 (4th Cir. 1984) (citing legislative history as evidence that interest and penalties should be treated consistently).[6]  The

---

[6]    See also United States v. Yellin (In re Weinstein), 272 F.3d 39, 48 (1st Cir. 2001) (holding that governmental units are entitled to administrative expenses for interest that accrues on post-petition taxes incurred by the estate); United States v. Flo-Lizer, Inc. (In re Flo-Lizer, Inc.), 916 F.2d 363, 366-67 (6th Cir. 1990) (same); United States v. Cranshaw (In re Allied Mechanical Servs., Inc.), 885 F.2d 837, 839 (11th Cir. 1989) (same); In re Venable, 48 B.R. 853,

Plan, therefore, should be amended to further clarify that governmental units that hold

Administrative Expense Claims under section 503(b)(1)(B) and/or 503(b)(1)(C) will be paid

interest on such Claims.  FTB's proposed language is set forth in section IV.C. *infra*.

C.      **For the Avoidance of Doubt, the Plan Should Be Amended.**

28.      As an aid to the Proponents and to the Court, FTB submits that the Plan can be

remedied to address the objections set forth in sections IV.A. and IV.B. of this limited objection

by adding the following language to the end of Section 2.2 of the Plan:

> Notwithstanding anything to the contrary in the Plan or in the
> Confirmation Order, an Administrative Expense Claim that is an
> expense under sections 503(b)(1)(B) and/or 503(b)(1)(C) of the
> Bankruptcy Code, including interest due thereon under applicable
> non-bankruptcy law, shall be timely paid in the ordinary course of
> business without the need of any governmental unit to file a
> request for payment of such Administrative Expense Claim or any
> other document, including a Proof of Claim.

VI.      **THE PLAN MAY UNJUSTLY DENY ADMINISTRATIVE EXPENSE CLAIMS
FOR TAX PERIODS THAT SPAN THE PETITION DATE**

29.      Certain of FTB's Claims relate to tax periods that commenced prior to the Petition

Date but did not end until after the Petition Date (i.e., they span the Petition Date).  Section

1.1.1(a) of the Plan provides that "Claims related to tax periods, or portions thereof, ending on or

before the Petition Date" are excluded from the definition of "Administrative Expense Claim."

FTB interprets this provision as excluding Claims only when the entire tax period ends on or

before the Petition Date, and not when merely "a portion" of the tax period ends on or before the

Petition Date, such that FTB's Claims based on tax periods that span the Petition Date would not

be excluded and, thus, would be properly classified as Administrative Expense Claims.

---

857 (Bankr. S.D.N.Y. 1985) (same).  Accord 4 Collier on Bankruptcy ¶ 503.08 (15th ed. rev.
2010) ("[T]he courts generally and properly treat interest on post-petition taxes as an
administrative expense.").

PHIL1 1395873-1

30.    Assuming *arguendo* that the definition of Administrative Expense Claim in section 1.1.1(a) excludes all or part of Claims based on tax periods that span the Petition Date, however, such definition unjustly denies FTB Administrative Expense Claims.    Section 503(b)(1)(B) of Bankruptcy Code provides that governmental units are entitled to administrative expenses for any tax "incurred by the estate" (i.e., incurred post-petition).    For purposes of section 503(b)(1)(B), a tax on income is "incurred" on the last day of a taxable period.    See Towers v. United States (In re Pacific-Atlantic Trading Co.), 64 F.3d 1292, 1301 (9th Cir. 1995) (finding that "the drafters of § 503(b)(1)(B)(i) intended that a tax on income should be treated as 'incurred' on the last day of the taxable period").    For tax periods that span the Petition Date, therefore, corporate franchise and income taxes necessarily would be "incurred" after the Petition Date by the Debtors' Estates.    As a result, FTB's Claims based on such tax periods qualify as administrative expenses under section 503(b)(1)(B).

31.    For the avoidance of doubt, therefore, section 1.1.1(a) should be amended to clarify that Claims based on tax periods that span the Petition Date, including those Claims held by FTB, are not excluded from the definition of "Administrative Expense Claim."    As an aid to the Proponents and to the Court, FTB submits that the Plan can be remedied by replacing the phrase "excluding Claims related to tax periods*, or portions thereof, ending on or before* the Petition Date" with "excluding Claims related to tax periods *ending before* the Petition Date."

**VII.    THE PLAN MAY IMPROPERLY RELEASE CLAIMS AGAINST NON-DEBTOR ENTITIES WITHOUT SUFFICIENT JUSTIFICATION**

32.    Section 11.2.2 of the Plan provides that Holders of Claims will be deemed to release the Holder Released Claims if the Holder (a) votes to accept the Plan and does not opt out of the releases, (b) votes to reject the Plan but opts to grant the releases, (c) is deemed to accept the Plan and does not opt out of the releases despite having been provided an opportunity to do

- 13 -

so, or (d) otherwise agrees to grant such releases. This provision is ambiguous in two material respects: (1) it does not specify whether Holders will be deemed to release the Holder Released Claims if they are entitled to vote on the Plan but do not; and (2) it does not specify whether Holders will be deemed to release the Holder Released Claims if they hold Priority Tax Claims and/or Administrative Tax Claims that are not classified under the Plan.

33.      As discussed *supra*, FTB holds General Unsecured Claims against the Debtors on account of which FTB is entitled to vote to accept or reject the Plan. (Plan, at §§ 3.2.6(f), 3.3.5(c).)  FTB, however, does not intend to vote such Claims.  FTB also holds Priority Tax Claims and may hold Administrative Tax Claims that are not classified in a Class under the Plan. (Plan, at *32).  Under the Plan, therefore, FTB is neither entitled to vote on account of such Claims nor presumed to have voted to accept the Plan.  (Cf. Plan, at §§ 4.1 (providing that Holders of Claims are entitled to vote to accept or reject the Plan if their Claims are in an Impaired *Class*); 4.4 (providing that Claims are presumed to have voted to accept the Plan if they are in *Classes* designated as Unimpaired).)

34.      FTB interprets section 11.2.2 as providing for consensual "opt in" releases that will not apply to FTB.  See Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A., Dkt. No. 7135, at *35 (describing releases in section 11.2.2 as "consensual releases . . . by Persons who elect to provide such releases").  For the avoidance of doubt, FTB hereby provides notice that it does not consent to the releases in section 11.2.2 of the Plan.

35.     Assuming *arguendo* that section 11.2.2 provides for non-consensual releases that apply to FTB even without its consent, however, such releases are inappropriate because the Proponents cannot prove that FTB's releasing the Holder Released Claims is necessary to confirmation.  See Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 214 (3d Cir. 2000) (holding that "[t]he hallmarks of permissible non-consensual releases" are "fairness" and "necessity to the reorganization"); accord Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 142, 143 (2d Cir. 2005) (recognizing that "a non[-]debtor release is a device that lends itself to abuse" and that "[a] non[-]debtor release in a plan of reorganization should not be approve absent the finding that truly unusual circumstances render the release terms important to success of the plan").[7]

## VIII.    THE PLAN FAILS TO PROVIDE AN ADEQUATE REMEDY IN THE EVENT THE DEBTORS DEFAULT ON THEIR OBLIGATIONS UNDER THE PLAN

36.     In addition to the foregoing, the Plan fails to provide Holders of Claims with an adequate remedy in the event that the Debtors default on their payment obligations under the Plan.    Under the Plan, FTB would be required to pursue collection proceedings in the Bankruptcy Court.  FTB submits that the Plan should provide that all obligations due FTB under the Plan are accelerated and fully due and payable and that FTB can pursue its state law remedies if a default continues after reasonable notice and the expiration of a reasonable cure period.

---

[7]     Sections 11.2.4 and 11.3 of the Plan—which provide that Holders are enjoined from pursuing the Holder Release Claims and the Barred Claims against the Released Parties or their property—are also inappropriate for the same reasons.

## CONCLUSION

WHEREFORE, FTB respectfully requests that, absent the Proponents agreeing to modify

the Plan to make the changes requested herein, the Court enter an order denying confirmation of

the Plan and granting such other relief as the Court deems just and proper.

Dated: February 15, 2010
     Wilmington, DE           Respectfully submitted,


**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Richard M. Beck*
Richard M. Beck (DE Bar No. 3370)
Sally E. Veghte (DE Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, DE  19801
Telephone: 302.426.1189
Facsimile:  302.426.9193
Email: rbeck@klehr.com

- and -

**ORRICK HERRINGTON & SUTCLIFFE LLP**

Jonathan P. Guy
1152 15th Street, NW
Washington, DC  20005-1706
Telephone: 202.339.8400
Facsimile:  202.339.8500
Email: jguy@orrick.com

Counsel for California Franchise Tax Board

PHIL1 1395873-1