IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **TRIBUNE COMPANY, et al.**[1] | : | **Case No. 08-13141 (KJC)** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |

## LIMITED OBJECTION OF THE ACE COMPANIES TO THE PLANS

ACE American Insurance Company, ACE Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, Bankers Standard Insurance Company, Century Indemnity Company, Indemnity Insurance Company of North America, Insurance Company of North America, Illinois Union Insurance Company, INA

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Surplus Insurance Company, Pacific Employers Insurance Company, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company (collectively and together with each of their affiliates, the "ACE Companies"), by and through their attorneys, Duane Morris LLP, hereby file this Limited Objection to the Plans (as defined herein) and in support hereof, respectfully state as follows:

## BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. Since the Petition Date, the Debtors have continued in possession of their property and the operation of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Code.

3. On December 18, 2008, an official committee of unsecured creditors (the "Committee") was appointed.

4. On or about October 22, 2010, the Debtors filed the Joint Disclosure Statement for the Following Plans of Reorganization (the "General Disclosure Statement") [DI No. 6090].

5. On or about December 9, 2010, the Court approved the General Disclosure Statement and the specific disclosure statements relating to the each of the then-pending Plans[2].

6. On or about December 9, 2010, the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor

---

[2]  The Bridge Lender Plan and the Step One Plan have been withdrawn.

Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Aurelius Plan") was filed [DI No. 7127].

7. On or about February 4, 2011, the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P. and JP Morgan Chase Bank, N.A. (the "Debtors' Plan") was filed [DI No. 7801].

8. The Debtors' Plan and the Aurelius Plan are collectively referred to herein as the "Plans."

9. The Debtors' Plan and the Aurelius Plan contain the following language regarding insurance (the "Proposed Provision"):

> Insurance policies issued to, or insurance agreements entered into by, any of the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date. To the extent that such insurance policies or agreements (including without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approve of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement. To the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Proponents reserve the right to seek the

rejection of such insurance policy or agreement or other available relief.

*See* Debtors' Plan § 6.9; Aurelius Plan § 6.9.

10. Section II.F.1.a of the Debtors' Disclosure Statement contains the following provision (the "ACE Provision"):

> The Settlement Plan Proponents have not yet determined how to treat certain insurance policies issued by ACE American Insurance Company and/or its affiliates (collectively, "ACE") to or on behalf of the Debtors and any related agreements (hereinafter, the "ACE Policies and Agreements"), including whether or not such agreements are executory and whether they will be assumed. Subject to the Debtors' rights, if any, to assume or to reject such contracts, nothing contained in this Settlement Plan Disclosure Statement, the Settlement Plan, the Confirmation Order, any exhibit to the Settlement Plan, any Plan Supplement or any other Settlement Plan document (including any provision that purports to be peremptory or supervening), shall in any way operate to, or have the effect of, waiving or impairing in any respect the legal, equitable or contractual rights or defenses of the parties to the ACE Policies and Agreements. For the avoidance of doubt, nothing in this Settlement Plan Disclosure Statement or in the Settlement Plan shall be read to authorize the unilateral amendment by the Debtors of any of the terms of the ACE Policies and Agreements. In any event, ACE has reserved all of its rights and defenses under the ACE Policies and Agreements and applicable non-bankruptcy law with respect to the ACE Policies and Agreements.

## THE ACE INSURANCE PROGRAM

11. Prior to the Petition Date, the ACE Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to certain Debtors and their non-debtor affiliates as named insureds.

12. Prior to the Petition Date, the ACE Companies and certain Debtors and/or their non-debtor affiliates also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

13. Pursuant to the Policies and Insurance Agreements (the "ACE Insurance Program"), the ACE Companies provide, *inter alia*, certain workers' compensation, general liability, products liability, directors and officers liability, automobile liability, and certain other liability insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the ACE Companies assert that the insureds, including one or more of the Debtors, are required to pay to the ACE Companies certain amounts including, but not limited to, insurance premiums and deductibles, as more particularly described in the ACE Insurance Program (the "Obligations").

14. The Obligations are secured by the following letters of credit and the proceeds thereof (collectively, as amended, confirmed, supplemented or replaced, the "Letters of Credit"):

    a. Letter of Credit No. TPTS-350275 in the amount of $4,881,802 issued by JPMorgan Chase Bank, N.A.;

    b. Letter of Credit No. TPTS-350116 in the amount of $11,988,631.00 issued by JPMorgan Chase Bank, N.A.;

    c. Letter of Credit No. 00326659 in the amount of $7,516,464.00 issued by Bank One, NA n/k/a JPMorgan Chase Bank, N.A.;

    d. Letter of Credit No. 33546900 in the amount of $8,523,127.00 issued by Bank One, NA n/k/a JPMorgan Chase Bank, N.A.; and

    e. Letter of Credit No. TPTS-350107 in the amount of $227,734.00 issued by JPMorgan Chase Bank, N.A.

15. The Obligations may also be secured by cash collateral, paid loss deposit funds, loss reimbursement funds and/or other amounts provided by the Debtors and held by, or under the control of, the ACE Companies, as security.

16. On or about June 12, 2009, ACE American Insurance Company on its own behalf and on behalf of all of its affiliates filed a proof of claim against the Debtors in the bankruptcy

case of Tribune Company pursuant to the Stipulation and the Order[3] for the claims arising under the ACE Insurance Program (the "ACE Claims").

## OBJECTION

A. **The Reorganized Debtors' Cannot Continue To Receive The Benefits Of The ACE Insurance Program Without Remaining Liable For The Debtors' Obligations Thereunder.**

17. Pursuant to the Plans, the Proponents seek to continue to receive the benefits of the Debtors' insurance programs either by "continu[ing them] in effect after the Effective Date" or assuming them. *See* Plans § 6.9.

18. It is well-established that debtors cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owner's Association, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in

---

[3] On or about June 9, 2009, the Court (as defined herein) entered an order (the "Order") approving that certain stipulation (the "Stipulation") dated as of June 5, 2009 by and between the Debtors and the ACE Companies which provides, *inter alia*, that notwithstanding anything to the contrary set forth in the Bar Date Order (as defined therein) or notice thereof, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures and/or local bankruptcy rules, (i) the Claimant on its own behalf and on behalf of all of the ACE Companies shall be permitted to file a single proof of claim and (ii) such claim shall be filed in the case of Tribune Company (Case No. 08-13141) but shall be deemed to have been filed by each of the ACE Companies.

DM3\1701277.2

possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'").

19. Accordingly, whether the ACE Insurance Program is continued in effect or assumed, the Plans must clearly provide that the ACE Insurance Program is continued or assumed pursuant to all of its terms and conditions.

20. Specifically, the Plans must expressly provide that the ACE Companies' claims arising under the ACE Insurance Program are not released or discharged and that the Reorganized Debtors shall remain liable for the Debtors' obligations under the ACE Insurance Program and pay and perform such obligations regardless of when they arise[4].

21. Further, the Plans must expressly provide that the collateral and security provided by the Debtors to the ACE Companies also continues unaltered by the Plan.

B. **Proposed Resolution of Objection**

22. Using the Proposed Provision as a basis (with additions noted in italicized text and deletions noted with ~~strikethrough text~~), the ACE Companies hereby request that the following language be added to each Plan to resolve the Objection:

> *Notwithstanding anything to the contrary in the Disclosure Statements, Plan, any other Plan document, the Confirmation Order or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release), the* insurance policies *(including, without limitation, any policies covering directors' or officers' conduct)* issued to, or insurance agreements entered into by, any *one or more of* the Debtors prior

---

[4] To the extent that the Debtors seek to assume any of the Policies or Insurance Agreements, the Debtors must satisfy the requirements of § 365 of the Bankruptcy Code. Specifically, the Debtors must: (a) cure any defaults, (b) compensate the ACE Companies for any actual pecuniary loss resulting from any defaults, and (c) provide adequate assurance of future performance (collectively, the "Assumption Requirements"). 11 U.S.C. § 365. The Proposed Provision which provides that no payments shall be required to cure any defaults does not satisfy the Assumption Requirements.

to the Petition Date *and all collateral and security relating thereto* (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date *pursuant to their respective terms and conditions, and the Reorganized Debtors shall honor the Debtors' obligations thereunder regardless of whether such obligations arise prior to or after the Effective Date.* To the extent that *any* such insurance policies or agreements (including without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approve *approval* of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement *assumed by the Debtors.* To the extent that the Bankruptcy Court determines *that a cure payment is required* otherwise as to any such insurance policy or agreement, the Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief.

## CONCLUSION

WHEREFORE, the ACE Companies respectfully request that this Court (a) either (i) condition confirmation of either Plan on the inclusion of the modifications requested herein or (ii) deny confirmation of the Plans and (b) grant such other relief as the Court deems appropriate.

DUANE MORRIS LLP

Dated: February 15, 2011

By: /s/ Richard W. Riley
Richard W. Riley, Esquire (DE 4052)
Suite 1600
222 Delaware Avenue
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
rwriley@duanemorris.com

and

8

DM3\1701277.2

Margery N. Reed, Esquire
Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
mreed@duanemorris.com
wmsimkulak@duanemorris.com

Counsel to the ACE Companies