# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TRIBUNE COMPANY, *et al.*, | ) Case No. 08-13141 (KJC) |
| | ) |
| Debtors[1]. | ) Jointly Administered |
| | ) |
| | ) **Related to Docket Nos. 7127, 7136 and 7801** |
| | ) |

## LIMITED OBJECTION OF GREATBANC TRUST COMPANY TO CONFIRMATION OF (I) SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.; AND (II) JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES AND WILMINGTON TRUST COMPANY, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES

GreatBanc Trust Company ("GreatBanc" or the "Trustee"), in its capacity as the trustee for the Employee Stock Ownership Program (the "ESOP") of the Tribune Company ("Tribune"), by and through its undersigned counsel, K&L Gates LLP and Womble Carlyle Sandridge & Rice, PLLC, hereby files this limited objection (the "Objection") to confirmation of the Second Amended Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket Nos. 7136 and 7801) (the "Debtors Plan") and the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed By Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for

---

[1] The Debtors in these jointly administered Chapter 11 Cases are set forth in the Debtor Plan.

Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the Phones Notes (Docket No. 7127) (the "Noteholders Plan"; together with the Debtors Plan, the "Competing Plans"), and in support thereof, respectfully states as follows:

## BACKGROUND

### I.    Bankruptcy Background

1.      On December 8, 2008 (the "Petition Date"), Tribune and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").  The Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") in these Chapter 11 Cases.

3.      On December 9, 2010, Aurelius Capital Management, LP, on behalf of its managed entities, Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of senior notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of senior notes and Wilmington Trust Company, in its capacity as successor indenture trustee for the Phones Notes (collectively, the "Noteholders Plan Proponents") filed the Noteholders Plan.

4.       On February 4, 2011, the Debtors, the Creditors Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (collectively, the "Debtors Plan Proponents") filed the Debtors Plan.

2

5.      A hearing on the confirmation of the Competing Plans is currently scheduled to take place on March 7, 2011.

**II.    GreatBanc's Contingent Claims Against the Debtors**

6.      GreatBanc and Tribune entered into a Trustee Engagement Agreement dated as of February 26, 2007 (the "Trustee Agreement") and related documents and agreements which contemplated the creation of the ESOP for the benefit of Tribune's employees.  See Trustee Agreement.  Pursuant to the terms of the Trustee Agreement, GreatBanc was appointed as the sole trustee of a trust (the "Trust") created to hold contributions made by Tribune to the ESOP. See id.  A copy of the Trustee Agreement is annexed hereto as **Exhibit A**.

7.      Among other things, the Trustee Agreement provided indemnification rights for GreatBanc and its officers, directors and employees from Tribune and all of its subsidiaries for any loss, cost, expense or damage resulting from, or incurred with respect to, the Trustee's performance of services under the Trustee Agreement and related documents.  See Trustee Agreement ¶ 14 (the "Indemnification Provision").

8.      Specifically, the Indemnification Provision provided that Tribune and its subsidiaries shall:

> jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not limited to) attorney's fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust (the "Right of Indemnification").  The Right of Indemnification provided for in this Section 14 shall extend to . . . (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. . .

Trustee Agreement ¶ 14.

9.      Therefore, to the extent that the Trustee incurs any liability for performing its services under the Trustee Agreement and related documents, the Trustee has claims for

indemnification against the Debtors and any non-debtor subsidiaries of the Debtors (the "Non-Debtor Subsidiaries") that may become Debtors.

10.     On January 31, 2011, the Debtors Plan Proponents filed a Plan Supplement (Docket No. 7701) pursuant to which the Debtors seek to reject the Trustee Agreement and related documents and agreements as of the Effective Date of the Debtors Plan.  See Exhibit 6.3 to Debtors Plan.  Section 6.4 of the Debtors Plan requires that any claim for damages arising from the Debtors' rejection of an executory contract must be filed within thirty (30) days after service of the notice that the executory contract has been rejected.  See Debtors Plan §6.4.

11.     The Noteholders Plan also seeks to reject the Trustee Agreement and related documents and agreements to which GreatBanc is a party as of the Effective Date of the Noteholders Plan.  See Noteholders Plan §6.1.1.  Section 6.4 of the Noteholders Plan also requires that any claim for damages arising from the Debtors' rejection of an executory contract be filed within thirty (30) days after service of the notice that the executory contract has been rejected.  See Noteholders Plan §6.4.

12.     As a rejection claim would be premature, GreatBanc has not yet filed a proof of claim on account of any damages it may incur under the Trustee Agreement and related documents.

### III.   The ESOP Transaction and Related Litigation

13.     In 2007, Tribune's board of directors approved a series of transactions (the "ESOP Transaction") with, among other entities, the newly formed ESOP, which allowed Tribune to return to private ownership.

14.     GreatBanc, in its capacity as Trustee of the Trust, was named as a defendant in a lawsuit, captioned as Neil v. Zell, Case No. 08-6833 (RBB) (the "Zell Action"), pending before the United States District Court for the Northern District of Illinois.  See Third Amended Complaint in the Zell Action dated May 7, 2010 (the "Zell Complaint").  In the Zell Complaint,

4

the plaintiffs assert, among other things, that GreatBanc did not act in the best interests of the

ESOP participants during the ESOP Transaction and, therefore, violated GreatBanc's fiduciary

duties to the ESOP participants.

15.    On November 1, 2010, the Creditors Committee commenced an adversary

proceeding, captioned as The Official Committee of Unsecured Creditors of Tribune Company v.

Dennis J. Fitzsimons, et al., Adv. Pro. No. 10-54010 (KJC) (Bankr. D. Del. Nov. 1, 2010) (the

"Adversary Proceeding"), against, among other defendants, GreatBanc.

16.    In its complaint (the "Committee Complaint"), the Creditors Committee alleges

that Tribune and its directors and officers breached their duties of good faith, care and loyalty to

Tribune's stakeholders, including its creditors, by engaging in the ESOP Transaction which

either rendered Tribune insolvent or placed Tribune in the zone of insolvency and by engaging in

self-dealing at the expense of Tribune's stakeholders.  See Committee Complaint at ¶¶ 298-304.

The Creditors Committee alleges that GreatBanc colluded in, or aided and abetted, the breach of

fiduciary duties of certain officers and directors of Tribune with respect to the ESOP Transaction

and claims that GreatBanc was an active and knowing participant in those breaches.

17.    Both the Zell Complaint and Committee Complaint allege causes of action against

GreatBanc that relate to the Trustee's performance of services under the Trustee Agreement and

related documents and agreements and any damages incurred by GreatBanc in the related

litigations are covered by the Indemnification Provision of the Trustee Agreement.  Accordingly,

at this time, the Trustee has contingent claims for indemnification against both the Debtors and

any Non-Debtor Subsidiaries that may become Debtors to the extent that the Trustee is found

liable in either the Zell Action or the Adversary Proceeding for services performed under the

Trustee Agreement and related documents and agreements.

### LIMITED OBJECTION AND REQUEST FOR CLARIFICATION

**I.    Limited Objections to the Debtors Plan[2] and Request for Clarification**

**A.    GreatBanc's Rights to Assert Setoff, Recoupment or Similar Defenses Against the Debtors Should Be Preserved**

18.     It is unclear whether sections 11.1. and 11.2 of the Debtors Plan, as currently written, are intended to foreclose GreatBanc's rights to assert setoff, recoupment or similar defenses against the Debtors in the Adversary Proceeding.

19.     Section 11.1 of the Debtors Plan (the "Discharge Provision") provides that as of the Effective Date, confirmation of the Debtors Plan shall "discharge the Debtors from all Claims or other debts that arose before the Effective Date."  Debtors Plan §11.1.1(a).

20.     Moreover, the Discharge Provision also precludes all persons

> from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, debts, rights, causes of action, liabilities or Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.

Debtors Plan §11.1.1(b).

21.     Section 11.1.2 of the Debtors Plan (the "Discharge Injunction") enjoins all persons that hold a claim, debt or liability that is discharged under the Debtors Plan from "asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, the Reorganized Debtors or their respective property" from and after the Effective Date.  Debtors Plan §11.1.2.

22.     The Discharge Provision, as currently written, may have the effect of discharging both (i) GreatBanc's contractual indemnification and contribution claims against the Debtors, or any Non-Debtor Subsidiaries that may become Debtors, under the Trustee Agreement, as well as

---

[2] Capitalized terms set forth in Section I of this Objection that are not otherwise defined herein shall have the meanings attributed to them in the Debtors Plan.

6

(ii) any non-contractual claims GreatBanc may have against the Debtors, or any Non-Debtor Subsidiaries that may become Debtors, for contribution and indemnification, arising in connection with the Adversary Proceeding.

23.     If the Discharge Provision and the Discharge Injunction are not intended to foreclose GreatBanc from asserting setoff or other similar defenses against the Debtors, or any Non-Debtor Subsidiaries that may become Debtors, in the Adversary Proceeding, GreatBanc requests the Debtors to so state.

24.     To the extent that the Discharge Provision and the Discharge Injunction are, in fact, intended to discharge GreatBanc's contractual and non-contractual indemnification and/or contribution claims against the Debtors or any Non-Debtor Subsidiaries that may become Debtors, GreatBanc submits that such provisions should not foreclose GreatBanc's ability to assert defenses in the Adversary Proceeding, by means of setoff or other similar defenses, against the Debtors or any Non-Debtor Subsidiaries that may become Debtors.

25.     Section 553(a) of the Bankruptcy Code expressly preserves a creditor's right to setoff a mutual pre-petition debt owing between the debtor and the creditor by providing that:

> [t]his title does not affect any right of any creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. §553(a).

26.     Setoff allows entities that owe a mutual debt to each other to apply their mutual debts against each other.  Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995); In re Anes, 195 F.3d 177, 182 (3d Cir. 1999).  Setoff essentially elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. See 11 U.S.C. § 506(a); Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984).  Setoff is limited, however, by the provisions of section 553 of the Bankruptcy Code and requires that the debts be in the

same right and between the same parties standing in the same capacity.  <u>Matter of Bevill, Bresler</u> <u>& Schulman Asset Management Corp.</u>, 896 F.2d 54, 57 (3d Cir. 1990).

27.    Here, whatever claims the Debtors may assert against GreatBanc would likely result from GreatBanc's pre-petition conduct and GreatBanc's claims against the Debtors would also arise from the Debtors' pre-petition obligations to indemnify GreatBanc pursuant to the Indemnification Provision in the Trustee Agreement.  As such, GreatBanc may be entitled to assert both rights of setoff and recoupment against the Debtors.

28.    Accordingly, GreatBanc requests that any rights to setoff or recoupment that GreatBanc may have against the Debtors or any Non-Debtor Subsidiaries that may become Debtors be preserved.

**B.    Holders of General Unsecured Claims Against Guarantor Non-Debtors Should Be Entitled to Vote on the Debtors Prepackaged Plan Because They Are Impaired**

29.    Section 3.4 of the Debtors Plan sets forth the treatment of Claims against Guarantor Non-Debtors that may become Debtors as a part of a prepackaged plan.  <u>See</u> Debtors Plan §3.4 (the "<u>Debtors Prepackaged Plan</u>").

30.    The Debtors Prepackaged Plan asserts that holders of Allowed Claims against Guarantor Non-Debtors that may become Debtors are unimpaired and such holders are, therefore, conclusively deemed to have accepted the Debtors Plan.  <u>Id.</u>  The Debtors Plan also provides that Allowed Claims against Guarantor Non-Debtors shall be classified similarly to Allowed Claims against the Filed Subsidiary Debtors as set forth in section 3.3 of the Debtors Plan.  <u>See</u> Debtors Plan §3.4.

31.    Under section 3.3 of the Debtors Plan, General Unsecured Claims against the Filed Subsidiary Debtors are "impaired" because Holders of General Unsecured Claims against the Filed Subsidiary Debtors may receive less than 100 percent of the value of their Allowed General Unsecured Claims against Filed Subsidiary Debtors.  <u>See</u> Debtors Plan §3.3.5.

Therefore, under the Debtors Prepackaged Plan, General Unsecured Claims against Guarantor Non-Debtors that may become Debtors would also be impaired and holders of General Unsecured Claims against Guarantor Non-Debtors should be entitled to vote on the Debtors Prepackaged Plan.

> **C.**     **The Release Set Forth in Section 11.2.2 of the Debtors Plan Should Not Preclude GreatBanc From Asserting Indemnification and Contribution Claims Against the Debtors, Any Non-Debtor Subsidiaries That May Become Debtors or Other Applicable Released Parties**

32.     Under section 3.3.2 of the Debtors Plan, "Other Secured Claims" are classified as unimpaired and, therefore, conclusively deemed to have accepted the Debtors Plan.  See Debtors Plan §3.3.2.

33.     Section 11.2.2 of the Debtors Plan, in turn, provides that any person that is deemed to accept the Debtors Plan and has been provided an opportunity to opt out of the releases provided for in Section 11.2.2 of the Debtors Plan (the "Holders Release"), but has not opted out of granting the Holders Release, shall unconditionally release the Released Parties from all claims and actions, including the LBO-Related Causes of Action.  Debtors Plan §11.2.2.

34.     Since the definitions of "Other Secured Claims" includes the right of setoff, GreatBanc may be deemed to have an Other Secured Claim and, therefore, to have released the Debtors, any Subsidiary Non-Debtors and third parties under the Holders Release from any indemnification and/or contribution claims that GreatBanc may have against such parties.  See Debtors Plan §§ 1.1.171, 1.1.206 and 3.2.2.  GreatBanc does not believe that such was the Debtors' intention.  Therefore, GreatBanc seeks clarification that it will not be precluded from asserting indemnification and/or contribution claims against the Released Parties as a result of the Holders Release.  GreatBanc does not believe it is necessary to determine, at this juncture, whether it has, and GreatBanc neither admits nor denies that it has, an Other Secured Claim.

**D.    Securities Litigation Claims Should Be Subordinated
Pursuant to 11 U.S.C. §510(b) and Not Extinguished**

35.    Pursuant to section 3.2.11 of the Debtors Plan, Securities Litigation Claims will be extinguished on the Effective Date and holders of such Securities Litigation Claims will not receive or retain any property under the Debtors Plan on account of such claims.  Debtors Plan §3.2.11.

36.    Section 510(b) of the Bankruptcy Code expressly subordinates various claims for rescission or damages asserted by purchasers or sellers of a debtor's securities and has also been found to subordinate indemnification claims of officers, directors and other fiduciaries for liabilities and expenses incurred in connection with claims for rescission or damages asserted by purchasers or sellers of a debtor's securities.  See 11 U.S.C. §510(b); see also, In re Touch America Holdings, Inc., 381 B.R. 95, 104- 107 (Bankr. D. Del. 2008); In re Mid-Amer. Waste Sys., Inc., 228 B.R. 816, 823-24 (Bankr. D. Del. 1999); In re Walnut Equipment Leasing Co., Inc., No. 97-19699DWS, 1999 WL 1271762 at *10-*12 (Bankr. E.D. Pa. Dec. 28, 1999); In re Jacom Computer Servs., Inc., 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002).

37.    Therefore, to the extent that GreatBanc's claims for indemnification against the Debtors can be classified as Securities Litigation Claims, without conceding to any such classification, GreatBanc objects to the extinguishment of the Securities Litigation Claims and submits that such claims should instead be subordinated under 11 U.S.C. §510(b).

## II.   Limited Objection to the Noteholders Plan[3] and Request for Clarification

### A.   GreatBanc's Rights to Assert Setoff, Recoupment or Similar Defenses Against the Debtors Should Be Preserved

38.     GreatBanc seeks clarification from the Noteholders Plan Proponents regarding the applicability of the discharge provision and discharge injunction set forth in Sections 11.1.1 and 11.1.2 of the Noteholders Plan (together, the "Noteholders Discharge Provisions") to (i) GreatBanc's contractual indemnification and contribution claims against the Debtors, or any Subsidiary Non-Debtors that may become Debtors, under the Trustee Agreement and (ii) any non-contractual claims GreatBanc may have against the Debtors, or Subsidiary Non-Debtors that may become Debtors, for contribution and indemnification, arising in connection with the Adversary Proceeding.

39.     If the Noteholders Discharge Provisions are not intended to foreclose GreatBanc from asserting setoff or other similar defenses against the Debtors in the Adversary Proceeding, the Noteholders Plan Proponents should so state.

40.     To the extent that the Noteholders Discharge Provisions are, in fact, intended to discharge GreatBanc's contractual and non-contractual indemnification and/or contribution claims against the Debtors or any Subsidiary Non-Debtors that may become Debtors, GreatBanc submits that such provisions should not foreclose GreatBanc's ability to assert defenses in the Adversary Proceeding, by means of setoff or other similar defenses, against the Debtors, or any Subsidiary Non-Debtors that may become Debtors, for the reasons set forth in section I (a) above.

---

[3] Capitalized terms set forth in Subsection II of this Objection that are not otherwise defined herein shall have the meanings attributed to them in the Noteholders Plan.

   **B.**  **Holders of Other Guarantor Debtor Claims Against Any Subsidiary**
     **Non-Debtors that May Become Debtors Should Be Entitled to Vote on**
     **the Noteholders Prepackaged Plan Because They Are Impaired**

   41.  Section 3.5 of the Noteholders Plan sets forth the treatment of Claims against

Subsidiary Non-Debtors that may become Debtors as a part of a prepackaged plan.  <u>See</u>

Noteholders Plan §3.5 (the "<u>Noteholders Prepackaged Plan</u>").

   42.  Section 3.5.2 of the Noteholders Plan indicates that holders of Claims against any

Subsidiary Non-Debtors that may become Debtors are unimpaired and such holders are,

therefore, conclusively deemed to have accepted the Noteholder Prepackaged Plan and are not

entitled to vote to accept or reject the relevant Noteholders Prepackaged Plan.  <u>Id.</u>  The

Noteholders Plan also provides that such claims shall be classified similarly to Allowed Claims

against the Filed Subsidiary Debtors under sections 3.3 and 3.4 of the Noteholders Plan, as

applicable.  <u>See</u> Noteholders Plan §3.5.1.

   43.  Under section 3.4.6 of the Noteholders Plan, however, certain claims against

Guarantor Debtors referred to as "Other Guarantor Debtor Claims," are "impaired" because it is

possible that holders of Other Guarantor Debtor Claims may receive less than 100 percent of the

value of their Allowed Claims against the Guarantor Debtors.  <u>See</u> Noteholders Plan §3.4.6.

   44.  "Other Guarantor Debtor Claims" are defined in section 1.1.185 of the

Noteholders Plan as follows:

> the General Unsecured Claims against the Guarantor Debtors and
> any Claim against a Guarantor Debtor by or on behalf of the ESOP
> and/or any present or former participants in the ESOP in their
> capacity as such, to the extent that the Bankruptcy Court
> determines that the ESOP and/or any present or former participants
> in the ESOP in their capacity as such has an Allowed Claim
> against the Guarantor Debtor.

Noteholders Plan §1.1.185.  GreatBanc, therefore, may have an Other Guarantor Debtor Claim

against any Subsidiary Non-Debtor that becomes a Debtor.

45.     Because claims that may be asserted against Guarantor Non-Debtors that may become Debtors may be treated as "Other Guarantor Debtor Claims" under the Prepackaged Noteholders Plan, holders of such claims would be impaired and should be entitled to vote on the Noteholders Plan.  See Noteholders Plan §§ 3.4.6 and 3.5.

WHEREFORE GreatBanc requests that  (A) (i) the Debtors clarify whether, under the Debtors Plan, GreatBanc's rights to setoff any mutual pre-petition debts between GreatBanc and any of the Debtors, or any Non-Debtor Subsidiaries (as defined in the Debtors Plan) that may become Debtors, under section 553 of the Bankruptcy Code are preserved, failing which GreatBanc requests that the Court enter an order to such affect, (ii) the Debtors clarify whether, under the Debtors' Plan, any rights of recoupment that GreatBanc may have against the Debtors or any Non-Debtor Subsidiaries (as defined in the Debtors Plan) that may become Debtors are preserved, failing which GreatBanc requests that the Court enter an order to such affect, (iii) the Court find and enter an order that provides that if holders of General Unsecured Claims against Guarantor Non-Debtors (as defined under the Debtors Plan) that may become Debtors are, or may be, impaired under the Debtors Prepackaged Plan, such holders be allowed to vote on the Debtors Prepackaged Plan in accordance with the terms and provisions of the Bankruptcy Code, (iv) the Debtors clarify whether, under the Debtors Plan, GreatBanc's rights to assert any applicable indemnification or contribution claims against appropriate Released Parties (as defined in the Debtors Plan) are preserved, failing which GreatBanc requests that the Court enter an order to such affect, and (v) the Court enter an Order that, to the extent, if any, that GreatBanc's claims, as Trustee, for indemnification are found to be properly classified as Securities Litigation Claims, such claims are subordinated pursuant to 11 U.S.C. §510(b) and not extinguished; (B) (i) the Noteholders Plan Proponents clarify whether, under the Noteholders Plan, GreatBanc's rights to setoff any mutual pre-petition debts between GreatBanc and any of the Debtors or Subsidiary Non-Debtors (as defined in the Noteholders Plan) that may become

Debtors, under section 553 of the Bankruptcy Code are preserved, failing which GreatBanc

requests that the Court enter an order to such affect, (ii) the Noteholders Plan Proponents clarify

whether, under the Noteholders Plan, any rights of recoupment that GreatBanc may have against

the Debtors or any Subsidiary Non-Debtors (as defined in the Noteholders Plan) that may

become Debtors are preserved, failing which GreatBanc requests that the Court enter an order to

such affect, and (iii) the Court enter an Order that, to the extent that holders of "Other Guarantor

Debtor Claims" against any Guarantor Non-Debtors that may become Debtors are, or may be,

impaired under the Noteholders Prepackaged Plan, such holders be allowed to vote on the

Noteholders Prepackaged Plan; and (C) the Court grant such other relief as it deems just and

proper.

Dated: February 15, 2011

/s/ Francis A. Monaco, Jr.
WOMBLE CARLYLE SANDRIDGE
& RICE PLLC
Francis A. Monaco, Jr. (Bar No. 2078)
Thomas M. Horan (Bar No. 4641)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4340
Facsimile: (302) 661-7730

-and-

K&L GATES LLP
Jeffrey N. Rich
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Counsel for GreatBanc Trust Company*