# GREATBANC TRUST COMPANY

## TRUSTEE ENGAGEMENT AGREEMENT

This Agreement is made and entered into this 26th day of February 2007 (the "Effective Date"), by and between GreatBanc Trust Company, an Illinois corporation (the "Trustee"), and Tribune Company, a Delaware corporation (the "Company"), tax identification number 36-1880355.

## RECITALS

The Company is exploring a possible merger (the "Merger") with a merger subsidiary (the "Merger Subsidiary") of a Delaware limited liability company that has a natural person as its sole member (the "Acquirer"). If the Merger takes place, the Merger Subsidiary will merge into the Company, with the Company being the surviving entity following the consummation of the Merger.

The Company intends to establish an employee stock ownership plan (the "Plan") for the benefit of its employees. All contributions made by the Company to the Plan will be held in a trust (the "Trust"), which will be established pursuant to a written agreement (the "Trust Agreement") between the Company and the trustee of the Trust.

The Trust will be offered the opportunity, immediately following the consummation of the Merger, to purchase from the Company at a set price a number of shares that will result in the ESOP owning a majority of the Company's outstanding common stock measured on a fully diluted basis (the "Offer").

If the Trustee accepts the Offer, the Company will lend to the Trust the funds needed to finance the purchase. It is anticipated that the sale of such shares to the Trust will close (the "Closing") on or before November 30, 2007, although the Trust will likely be asked to sign an executory purchase agreement as to its purchase of the Company shares described in the Offer on or about March 19, 2007.

The Company desires to retain the Trustee to act as the trustee of the Trust, and the Trustee is willing to serve as the trustee of the Trust, on the terms and subject to the conditions set forth in this Agreement.

## AGREEMENT

In consideration of the mutual covenants and agreements set forth in this Agreement, the parties agree as follows:

## APPOINTMENT AND DUTIES

1. <u>Appointment of Trustee.</u> The Company hereby appoints the Trustee to serve as the sole trustee of the Trust, and the Trustee hereby accepts this appointment. The Company represents and warrants to the Trustee that such appointment has been approved and ratified by the Special Committee of Board of Directors (the "Board"). The Trustee's initial engagement shall consist of an evaluation of the Offer and a determination as to whether to accept the Offer on behalf of the Plan.

2. <u>Continuing Service.</u> At the option of the Company and as agreed by the Trustee, the Trustee will continue to serve as the trustee of the Trust after it has completed its evaluation of the Offer. If the Company elects to retain the Trustee after completion of its initial engagement, the Trustee will continue to serve as the trustee of the Trust until it resigns or is removed by the Company. The Trustee may resign at any time by providing 30 days advance written notice to the Company. Subject to the terms of the Trust Agreement, the Company may remove the Trustee by providing the Trustee with 30 days advance written notice, subject to providing the Trustee with satisfactory written evidence of the appointment of a successor trustee and of the acceptance of the appointment by the successor trustee.

3. <u>Duties of the Trustee.</u> (a) The Trustee shall have <u>no</u> liability for, or duty to investigate (i) the acts of the predecessor trustees or successors, for the acts or omissions of any predecessors or successors to the Trustee, and (ii) the adequacy of the assets of the Trust to meet and discharge any liabilities under the Plan and Trust. The Company or a committee so designated for such purpose shall solely be responsible for enforcing payment of any contribution or for the timing and amount thereof and for funding standards adopted for the Trust and Plan, and for refunding any repurchase liability created by the Trust and Plan.

(b) The Trustee shall hold and manage all assets of the Trust in accordance with the terms of the Trust Agreement to the extent that they are consistent with the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Trustee will exercise its independent discretionary judgment in connection with the acquisition and custody of Trust assets (under the Offer and otherwise) in accordance with the requirements of part 4 of Title I of ERISA, unless the Trust provides for a committee or other entity to direct the Trustee to take any such action. If Trustee is a directed trustee, Trustee shall not be under any duty to act and shall have no liability in following the direction of such committee or other entity. Trustee shall not have any duty to require the payment of any contributions or dividends to the Trust or to see that any payment made to it is computed in accordance with the provisions of the Plan, or otherwise be responsible for the adequacy of the Trust to meet and discharge any liabilities under the Plan.

(c) The Trustee will maintain accurate records regarding the acquisition and holding of Company stock and of any other Trust investments and regarding distributions of those investments to Plan participants. Trustee will not provide

recordkeeping, accounting, tax or other reporting services for the Plan. These services will be provided by the Plan Administrator or its agent. The Company or the Plan Administrator will provide periodic reports to the Trustee demonstrating that these services are being provided by the Plan Administrator or its agent. If requested by the Company, the Trustee will prepare Internal Revenue Service Form 1099-R for delivery to Plan Participants, beneficiaries and alternate payees when their benefits are distributed.

4. <u>Due Diligence Investigation</u>. In order to enable the Trustee to properly evaluate the Offer, the Company shall deliver to the Trustee all information regarding the finances and operations of the Company that the Trustee shall reasonably request. In addition, the Company shall grant to the Trustee and its advisors reasonable access to the officers and directors of the Company and shall provide to the Trustee all information requested by the Trustee relating to the actions of the Company's Board of Directors relating to past, present, and projected business affairs of the Company and all legal documents and other pertinent materials directly or indirectly relating to the transactions contemplated by the Offer.

5. <u>Retention of Financial Advisor</u>. The Trustee will engage the services of Duff & Phelps, LLC ("D&P") to serve as its qualified independent financial advisor, with D&P and any successor independent financial advisor reporting directly to the Trustee and not to the Company or its shareholders (other than the Trust). The Trustee or the financial advisor will be entitled to timely periodic payment by the Company of all fees and expenses of the financial advisor. All fees and expenses of the financial advisor that are incurred by the Trustee up to and including the Closing shall be paid by the Company at or before the Closing.

6. <u>Retention of Legal Counsel</u>. The Trustee will engage its own independent legal counsel. The Trustee and its legal counsel shall be entitled to timely periodic payment by the Company for all fees and expenses of the Trustee's legal counsel. All legal fees and expenses which are incurred by the Trustee up to and including the Closing shall be paid by the Company at or before the Closing.

7. <u>Confidentiality</u>. The Trustee shall use the information disclosed to it by the Company only for the purpose of evaluating the Offer and to discharge its fiduciary duties under ERISA. The Trustee shall restrict disclosure of the information that it obtains from the Company to those persons who require knowledge of the information in order to help the Trustee to evaluate the Offer (including, but not limited to, officers, directors, employees, and professional advisors of the Trustee). Neither the Trustee nor any of its agents or advisors shall disclose any confidential information regarding the Company to any third party, except as may be required by ERISA or other laws or as may be requested by the Department of Labor, the Internal Revenue Service, the Securities and Exchange Commission, or any other federal or state agencies. Neither the Trustee nor any of its agents or employees shall be obligated to maintain the confidentiality of any information that is publicly available or that becomes publicly available without violation by the Trustee or any of its agents or employees of the terms of this Section 7. If the Trustee for any reason fails to sign the Trust Agreement or if the Trustee resigns or is

removed after signing the Trust Agreement, the Trustee shall remain subject to the confidentiality provisions of this Agreement. The language in this section shall supersede any and all other prior agreements, written or oral, between the Company and the Trustee with respect to the confidentiality of any information provided to the Trustee.

## COMPENSATION

8. <u>Transaction Responsibility Fee</u>. The Company shall pay to the Trustee the sum of $1,000,000 as compensation for the exercise by the Trustee of its fiduciary responsibility in connection with the evaluation of the Offer. This fee shall be paid in four installments. A first installment of $250,000 shall be due and payable upon the signing of this Agreement. A second installment of $250,000 shall be paid on or before the date that the Trustee meets, at the request of the Board, with the GreatBanc Trust Company ESOP Committee to consider the Offer. A third installment of $200,000 shall be paid on the date of the shareholder vote with respect to the Merger (the "Shareholder Vote") and a fourth installment of $300,000 shall be paid on the earlier of the Closing, or November 30, 2007. Subject to the next succeeding sentence, the fees heretofore described shall be payable to the Trustee in full whether or not the Trustee accepts the Offer. Notwithstanding anything heretofore stated in this Section 8, however, the third installment of $200,000 shall *not* be payable in the event that a vote of the Company's shareholders pursuant to the Shareholder Vote is not undertaken and the fourth installment of $300,000 shall *not* be payable in the event that the Company's shareholders fail to approve the Merger in the Shareholder Vote.

9. <u>Additional Fees and Fiduciary Insurance</u>

(a) <u>Fees for Extraordinary Services</u>. In addition to the fees due and payable to the Trustee under Section 8 and fees which may be payable for continuing services under Section 2 above, the Company agrees to pay additional fees to the Trustee for any services performed by the Trustee in addition to those provided for in this Agreement. Examples of additional services that may be provided by the Trustee from time to time include (but are not limited to): providing counsel or testimony in connection with, or involvement in, litigation relating to the Plan or Trust; responding to hostile, contested, or unsolicited tender offers for shares of the Company's stock held by the Trustee; and, evaluating and responding to proposed mergers, acquisitions, divestitures, public offerings, reorganizations, or similar transactions involving the Company. The Trustee will charge for its extraordinary services based on a negotiated fee for the particular matter in question. Fees for all other extraordinary additional services as to which a negotiated fee cannot be reached shall be charged at the Trustee's normal hourly rates then in effect. The hourly rate of the officers and employees of the Trustee currently in effect are as follows: senior officers, $500.00 per hour; other officers, $300.00 per hour; staff, $150.00 per hour.

(b) <u>Fiduciary Insurance</u>. The Company will purchase fiduciary insurance coverage (the "Fiduciary Insurance") with limits of at least $50 million (the "Limits") as to which GreatBanc Trust Company (not in its individual or corporate capacity but solely

as the Trustee) shall be a named insured. Fiduciary Insurance coverage for Ten Million Dollars ($10,000,000.00) of the Limits will be in effect as of the Effective Date. Fiduciary Insurance coverage for the remainder of the Limits will be procured as soon as reasonably practicable.

10. <u>Reimbursement of Expenses</u>. The Company shall reimburse the Trustee for all expenses incurred by the Trustee in connection with the performance of its services pursuant to this Agreement. Expenses for which the Trustee shall be entitled to reimbursement shall include, but are not limited to, charges for fees and expenses of the Trustee's financial advisors and legal counsel and out-of-pocket expenses incurred by officers or employees of the Trustee, such as charges for copying, postage, facsimile transmissions, private express mail deliveries, and travel expenses.

11. <u>Reimbursement from Trust</u>. To the extent that the Company shall fail to pay the fees or to reimburse the Trustee for its expenses on a timely basis, the Company agrees that the Trustee shall be paid the amounts due to it from the Trust. If there is not sufficient cash in the Trust to pay the amounts due to the Trustee, then the Trustee shall have the right to offset the amounts due to it against the assets of the Trust, and the Trustee shall be authorized to sell assets of the Trust to the extent necessary to obtain sufficient cash to pay the amounts due to the Trustee. To the extent that the Trust is unable to pay all amounts owed to Trustee under this Agreement for any reason, the unpaid amounts shall become the legal obligation of the Company and shall be paid by the Company as soon as possible after its receipt of written notice from Trustee of the amounts due.

<u>TAX QUALIFICATION OF PLAN</u>

12. <u>Representations and Warranties of the Company</u>. The Company hereby represents and warrants to the Trustee as follows:

(a) The Plan will be qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and shall qualify as an "employee stock ownership plan" within the meaning of Section 4975 (e)(7) of the Code and Section 407 (d)(6) of ERISA;

(b) The Trust will be exempt from taxation under Section 501(a) of the Code; and

(c) The shares of the common stock of the Company will constitute "employer securities" within the meaning of Section 409(l) of the Code and "qualifying employer securities" within the meaning of Section 407(d)(5) of ERISA.

13. <u>Tax Ruling</u>. The Company shall apply to the Internal Revenue Service ("IRS") within the current remedial amendment period promulgated under Section 401(b) of the Code and the regulations interpreting that section of the Code for a letter of determination that: (a) the Plan constitutes an "employee stock ownership plan" within

the meaning of Section 4975 (e) (7) of the Code; (b) the Plan is qualified under Section 401(a) of the Code; and (c) the Trust is exempt from taxation under Section 501(a) of the Code. The Company will adopt on a timely basis any amendment required by the IRS as a condition for the issuance of the letter of determination.

## INDEMNIFICATION

14. <u>Indemnification</u>. For purposes of this Agreement, the term "Indemnitees" shall mean the Trustee and its officers, directors, employees and agents. Subject to the applicable provisions of ERISA, the Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not limited to) attorney's fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust (the "Right of Indemnification"). The Right of Indemnification provided for in this Section 14 shall extend to: (a) any action taken or not taken in good faith by any of the Indemnitees; and (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. However, the Right of Indemnification shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence or from the willful misconduct of one or more of the Indemnitees.

15. <u>Defense of Actions</u>.

(a) <u>Notice.</u> If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Indemnitors pursuant to Section 14 (a "Proceeding"), an Indemnitee shall notify the Company of the Proceeding in writing within 30 days of the commencement of the Proceeding. However, the failure to so notify the Company shall not relieve the Indemnitors from their Right of Indemnification obligations, except to the extent that the failure to so notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

(b) <u>Reimbursement of Expenses</u>. The Indemnitors shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including (but not limited to) costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Indemnitors or the attorneys for the Indemnitors. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the fees and expenses of the Indemnitees' counsel shall

be paid by the Indemnitors as they are incurred, if any one or more of the following conditions are satisfied:

    (i)    the employment by the Indemnitees of their own counsel shall be authorized by the Company;

    (ii)    the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

    (iii)    the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

    (iv)    the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

16.     <u>Governmental Investigations</u>. The provisions of this Section 16 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify in any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Agreement. Investigations covered by this Section 16 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Indemnitors shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. The Trustee agrees that it shall reasonably cooperate with the Company in connection with any investigation.

17.     <u>Limitation</u>. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Indemnitors for any reason other than their gross negligence or willful misconduct, the Indemnitees shall nevertheless have a right of contribution against the Indemnitors, which shall accordingly reimburse the affected Indemnitees consistent with this Agreement, but taking into account the basis for the denial of full indemnification by the court.

<u>MISCELLANEOUS</u>

18.     <u>Successors and Assigns</u>. The provisions of this Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the Indemnitors and of the Trustee. Neither termination nor completion of the

engagement of the Trustee or of any of the Indemnitees shall affect the Right of Indemnification provisions of this Agreement, which shall remain operative and in full force and effect after the termination or completion of the engagement. The Company shall not merge or consolidate with any other corporation or entity in a transaction after which the Company is not the surviving entity, and the Company (nor its subsidiary) shall not sell all or substantially all of its assets to any other person, corporation, or entity, unless the other person, corporation, or entity expressly assumes the duties and obligations of the Company as set forth in this Agreement. Moreover, the Company may not be liquidated or distribute a material portion of its assets to its shareholders unless provisions satisfactory to the Trustee have been made to continue the duties and obligations of the Indemnitors as set forth in this Agreement.

19. <u>Notice</u>. Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by certified or by private express mail, postage prepaid, and properly addressed as follows:

To the Company:   Tribune Company
                  435 North Michigan Avenue
                  Chicago, Illinois 60611
                  Attention: General Counsel

With a copy to:   McDermott Will & Emery LLP
                  227 West Monroe Street
                  Chicago, Illinois 60606
                  Attention: William W. Merten
                  and Paul J. Compernolle

To the Trustee:   GreatBanc Trust Company
                  1301 W. 22ND Street, Suite 800
                  Oak Brook, Illinois 60523
                  Attention: Marilyn Marchetti

with a copy to:

20. **Partial Invalidity.** If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

21. **Waivers.** Either the Company or the Trustee may, by written notice to the other party: (a) extend the time for the performance of any of the obligations or other actions of the other party under this Agreement; or (b) waive or modify performance of any of the obligations of the other party under this Agreement. Except as provided in the preceding sentence, no action taken pursuant to this Agreement shall be deemed to constitute a waiver by that party of compliance with any of the obligations contained in this Agreement. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

22. **Governing Law.** This Agreement shall be interpreted and enforced in accordance with, and governed by, the internal laws of the State of Illinois (without regard to its conflict of laws provisions).

23. **Interpretation and Construction.** Section captions used in this Agreement are for convenience only and shall not affect or influence the construction of this Agreement. Each party has been represented by its own legal counsel in connection with the preparation, review, execution and delivery of this Agreement. Accordingly, the parties agree that the fact that one party may be considered to be the primary drafter of this Agreement shall not be a factor in construing any particular provision of this Agreement against that party.

24. **Entire Agreement.** This Agreement supersedes all prior agreements and understandings between the parties and may not be changed or terminated orally. No attempted change, termination, or waiver of any of the provisions of this Agreement shall be binding, unless in writing and signed by the party against whom the change, termination, or waiver is sought to be enforced.

IN WITNESS WHEREOF, the Company and the Trustee have caused this Agreement to be signed as of the day and year first written above, and hereby acknowledge delivery and receipt of GreatBanc Trust Company's Privacy Notice and USA PATRIOT Act Notice (see Appendix A & B).

**GREATBANC TRUST COMPANY**

By: *Marilyn Marchetti* (signature)

Its: Senior Vice President

**TRIBUNE COMPANY**

By: (signature)

Its: SVP

CHI99 4790235-5.020336.0136