UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al.*,[1] | : | Case No. 08-13141 (KJC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Hearing Date: March 7-11, 2011 |
| | : | Objection Deadline: February 15, 2011 |
| | : | |
| | : | Re: Docket No. 7801 |

## UNITED STATES TRUSTEE'S OBJECTION TO SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDON & CO., L.P., AND JP MORGAN CHASE BANK, N.A.

In support of her objection (the "Objection") to the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "DCL Plan") proposed by the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8655); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH, Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); new River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxnet Publishing Company (4223); Publishers Forest Brook Productions, Inc. (2598); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, Inc. (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JP Morgan Chase Bank, N.A. (collectively referred to as the "DCL Plan Proponents"), Roberta A. DeAngelis, the United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned counsel, states as follows:

### Introduction

1. This Court has jurisdiction to hear the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the above-referenced Objection.

### Background

4. On December 8, 2008 (the "Petition Date"), the Debtors[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their business and manage their

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the DCL Plan.

2

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On December 18, 2008, the U.S. Trustee appointed the official committee of unsecured creditors in this case (the "Committee").

6.  The DCL Plan is a joint plan of reorganization filed by the DCL Plan Proponents.

7.  One other plan of reorganization is currently on file and set for a confirmation hearing at the same time as the DCL Plan. That plan has been filed by a noteholder group made up of Aurelius Capital Management, L.P., Wilmington Trust Company, Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas.

### Preliminary Statement

8.  A chapter 11 plan may not be confirmed unless the Court can find that the plan complies with the provisions of 11 U.S.C. § 1129 (a). A plan proponent bears the burden of proof with respect to each and every element of 11 U.S.C. § 1129 (a). *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001). As discussed below, the DCL Plan is not confirmable because it contains certain release provisions that are contrary to applicable law in this District.

### Basis for Objection

*Relevant Release and Exculpation Provisions in the DCL Plan*

9.  Sections 11.2.1 (Releases by Debtors and Estates) and 11.2.2 (Releases by Holders of Claims and Interests) of the DCL Plan contain the prepetition release provisions. Section 11.5 of the DCL Plan is the Exculpation Clause, which purportedly relates to a release of certain conduct on a postpetition basis[3]. The parties for whom these provisions are in favor of are defined as

---

[3] Because of the lengthy and complex nature of the Release and Exculpation provisions, the U.S. Trustee does not recite these specific plan provisions in the Objection. The DCL Plan should be reviewed to see these provisions in their entirety.

Released Parties and Related Persons.

10. Section 1.1.197 of the Plan defines "Released Parties" as:

each of (a) the Debtors, their non-Debtor Affiliates, including the Subsidiary Non-Debtors, and the Reorganized Debtors; (b) the current and former Senior Lenders in all capacities except their capacities, if any, as (i) Step Two Selling Stockholders, (ii) Non-Settling Step Two Payees, and (iii) Advisors; (c) the current and former Bridge Lenders, each in all capacities except their capacities, if any, as (i) Step Two Selling Stockholders, (ii) Non-Settling Step Two Payees, and (iii) Advisors; (d) the Step Two Payees in all capacities except their capacities, if any, as (i) Step Two Selling Stockholders and (ii) Advisors; (e) each of the following, solely in their capacities as such: (i) the Creditors' Committee, (ii) the present and former members of the Creditors' Committee, (iii) the Senior Loan Agent, the Bridge Loan Agent and the Former Bridge Loan Agent, (iv) the Step One Selling Stockholders, (v) the Proponents, and (vi) the Released Step Two Stockholder Parties; (f) Related Persons of Released Parties listed in clause (a) of this paragraph to the extent a claim arises from the Related Person's relationship to one of the foregoing "Released Parties" listed in clause (a) and is not a LBO-Related Cause of Action, and (f) Related Persons of Persons listed in clauses (b), (c), (d) and (e) of this paragraph and is released against the party as to which they are a Related Person. Notwithstanding anything to the contrary in this definition, none of the following, solely in their capacities as such, shall be Released Parties with respect to LBO-Related Causes of Action or Morgan Stanley Claims: (a) Related Persons of the Debtors, (b) Advisors, (c) Step Two Selling Stockholders (with the exception of Released Step Two Stockholder Parties), (d) MSCS, (e) Non-Settling Step Two Payees, (f) EGI-TRB LLC, (g) Samuel Zell, and (h) Valuation Research Corporation.

11. Section 1.1.188 of the Plan defines "Related Persons" as:

with respect to an Person, such Person's Affiliates, predecessors, successors and assigns (whether by operation of law or otherwise), and with respect to any of the foregoing their respective present and former Affiliates and each of their respective current and former members, partners, shareholders, equity-holders, officers, directors, employees, managers, trustees, trust beneficiaries, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, or other representatives, nominees or investment managers, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, trustees, trust beneficiaries, shareholders, partners, employees, members and professionals).

### *Section 11.2.1 - Releases by Debtors and Estates*

12. The provision of the DCL Plan titled Releases by Debtors and Estates (referred herein

as the "Debtor Releases") calls for the release of claims by the Debtors and the Debtors' bankruptcy estates against various non-Debtors, i.e., the Released Parties. This Court in *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del 1999), adopted a five part test enunciated in *Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994) to determine whether a release by a debtor of a third party as part of a plan of reorganization is permissible. These factors are:

> "...(1) an identity of interest between the debtor and the third party...; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction." *Id.* at 937.

13. As articulated by this Court in *Zenith*, the party who is receiving the benefit of the release must have provided a substantial contribution to the reorganization. The court in *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), examined a similar provision and tested its applicability as to each party to be affected by the provision. For example, the attempt in *Genesis* to release the debtor's post-petition management was rejected, the Court stating: "As to the debtor's management personnel here, there is no showing that the individual releases have made a substantial contribution of assets to the reorganization." *Id* at 606.

14. The Debtor Releases in the DCL Plan, which are very extensive and contemplate releases of the oft-discussed LBO-Related Causes of Action, are subject to review under the factors articulated in *Zenith* and *Master Mortgage*. The DCL Plan Proponents must justify the validity of the Debtor Releases for each and every party that is listed in the definition of Released Parties or

Related Persons[4]. The *Zenith/Master Mortgage* factors must be satisfied in their entirety for the Debtor Releases to be approved. *See In re Washington Mutual, Inc.*, 2011 WL 57111, *24 (Bankr. D. Del. 2011); *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010).

15.    In particular, the Debtor Releases in favor of the Debtors' Related Persons, including current and former officers, directors and professionals are problematic. It has not been demonstrated that current and former officers, directors, and professionals provided a substantial contribution of assets to the reorganization. As Judge Walrath recently ruled in *Washington Mutual*, there was no basis to approve a release to either current or former officers, directors and professionals of the Debtors because the *Zenith/Master Mortgage* factors have not been met, including no evidence of a substantial contribution of assets to the reorganization. *See In re Washington Mutual, Inc.*, 2011 WL 57111, *28. The same rationale applies in this case and without evidence to support that the *Zenith* and *Master Mortgage* factors have been met, it is axiomatic that the releases cannot be approved. *See Genesis*, 266 B.R. at 606; *In re Exide Technologies*, 303 B.R. 48, 73-74 (Bank. D. Del. 2003) (both cases finding director and officer releases impermissible under the *Zenith* standard).

16.    Again, it should be emphasized that the DCL Plan Proponents must meet the relevant standard for each of the Released Parties and Related Persons. Because an evidentiary predicate is necessary to approve the Debtor Releases, the U.S. Trustee reserves argument on the Debtor Releases granted to all other parties until the record at the confirmation hearing is closed.

---

[4/] As recited herein, the definitions of Released Parties and Related Persons, who are the beneficiaries of the Debtor Releases, contain a multitude of individual and categories of persons and entities.

*Section 11.2.2 - Releases by Holders of Claims and Interests*

17.     The provision titled Releases by Holders of Claims and Interests (the "Third-Party Releases") is a release of claims by non-Debtors (in this instance claimants and interest holders) against Debtors and non-Debtors.  In *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the Third Circuit noted that a permanent injunction in favor of non-debtors is a "rare thing" that should not be considered absent a showing of exceptional circumstances in which certain key factors are present.  The Third Circuit determined that fairness requires a showing that sufficient consideration was given to creditors whose claims were to be released and that such consideration renders the plan feasible.  *Id*. at 213-214.  The Third Circuit noted that the success of the plan must be based on the releases, and that there be an identity of interest between the debtor and the non-debtor so that the debtor would likely bear the cost of the litigation against the non-debtor.  *Id* at 216.

18.     To the extent that the Third-Party Releases are truly consensual and a creditor or interest holders voluntarily agrees to grant the release (by being granted the opportunity to opt out of the release, the U.S. Trustee does not object to the Third-Party Releases.  The U.S. Trustee does reserve her rights pending the presentation of the evidence at the confirmation hearing.

*Section 11.5 - Exculpation*

19.     The Exculpation clause of the DCL Plan is subject to the Third Circuit's decision in *PWS Holding Corp*, 228 F.3d 224  (3d Cir. 2000).  A typical exculpation clause is meant to insulate liability for postpetition conduct of estate fiduciaries, except gross negligence and willful misconduct.

20.     In *PWS*, the Third Circuit examined the question of whether limited exculpation for official committee members and professionals retained by the debtors was appropriate.  The Third Circuit ruled that the exculpation was appropriate because the provision at issue correctly stated the

standard of liability for fiduciaries including official committee members and debtor professionals. *See also In re Coram Healthcare Corp.*, 315 B.R. 321, 337 (Bankr. D. Del. 2004) (stating that "[third party release provisions against Trustee, Equity Committee and their respective agents and professionals] are not permissible except to the extent they are limited to post-petition activity which does not constitute gross negligence or willful misconduct.").

21. The *PWS* decision does not contemplate the use of an exculpation clause to insulate prepetition conduct. As such, the Exculpation Clause should be narrowly defined to include only postpetition actions. The Exculpation Clause in the DCL Plan does not contain an express distinction for postpetition conduct. Moreover, the Exculpation Clause as drafted could be construed to insulate prepetition conduct that may otherwise not be released under a release provision in the DCL Plan. For instance, Related Persons are exculpated from liability for any act or omission in connection with, relating to, or arising out of the "management or operation of the Debtors". Because of the broad definition of Related Persons, including all current and former officers and directors, and the absence of a distinction between pre- and postpetition conduct, it could be construed that the Exculpation Clause acts a release of prepetition conduct, which otherwise would not be permitted.

22. The beneficiaries of the Exculpation Clause contain persons and entities that are not estate fiduciaries, therefore not entitled to exculpation under the *PWS* standard. As stated in *Washington Mutual* when assessing that exculpation clause against the *PWS* standard, an "exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceedings: estate professionals, the Committee and their members, and the Debtors' directors and officers. *See In re Washington Mutual, Inc.*, 2011 WL 57111, *29.

***Miscellaneous Provisions of the DCL Plan***

23. Section 9.1 of the DCL Plan contains provisions related to the payment of fee and expense claims of certain creditor groups, including a number of the DCL Plan Proponents. These fee and expense claims are subject to approval under a reasonableness standard as a confirmation requirement. *See* 11 U.S.C. § 1129(a)(4). The fee and expense provisions may also be subject to approval under a substantial contribution standard. *See* 11 U.S.C. § 503(b)(4). The DCL Plan contains no provisions for the Court, or parties in interest, including the U.S. Trustee, to test the reasonableness of those fees and expenses. Without such provisions, the DCL Plan cannot be confirmed.

24. Section 15.7 of the DCL Plan sets forth the statutory requirement that all fees payable pursuant to 28 U.S.C. § 1930 will be paid on the Effective Date. While that provision is proper, the DCL Plan contains no provision addressing the requirement to file post-confirmation reports and pay post-confirmation fees until all cases are closed, converted or dismissed.

WHEREFORE the U.S. Trustee requests that this Court sustain the Objection and issue an order granting such relief as this Court deems appropriate, fair and just.

    Respectfully submitted,

    **ROBERTA A. DEANGELIS**
    **United States Trustee**

    **By:**   */s/ David M. Klauder*
       David M. Klauder, Esquire
       Trial Attorney
       J. Caleb Boggs Federal Building
       844 King Street, Suite 2207, Lockbox 35
       Wilmington, DE 19801
       (302) 573-6491
       (302) 573-6497 (Fax)

Dated: February 15, 2011