IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>                Debtors | Chapter 11<br><br>Case No. 08-13141 (KJC)<br>Jointly Administered<br><br>Objection Deadline:  02/15/11<br>Hearing Date:  03/07/11<br>Related to Docket Nos.  7127 and 7801 |

**OBJECTION OF CERTAIN CURRENT AND FORMER OFFICERS AND DIRECTORS TO: (I) SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P. , AND JP MORGAN CHASE BANK, N.A., AND (II) JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES AND WILMINGTON TRUST COMPANY, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES**

In accordance with this Court's December 9, 2010 order [Docket No. 7126], certain current and former directors and officers of the Debtors[1] (collectively "Certain Directors and Officers") submit the following objections to (I) the *Second Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P. Angelo, Gordon & Co., L.P., and JP Morgan Chase Bank, N.A.* [Docket No. 7801] ("DCL Plan"); and (II) *Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, LP, On Behalf Of Its Managed Entities, Deutsche Bank Trust Company*

---

[1] Harry Amsden, Dennis FitzSimons, Bob Gremillion, Don Grenesko, David Hiller, Tim Landon, Tom Leach, Luis Lewin, Mark Mallory, Dick Malone, Ruthellyn Musil, John Reardon, Scott Smith, John Vitanovec, Kathy Waltz, and David Williams.

*Americas, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes, Law Debenture Trust Company Of New York, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes And Wilmington Trust Company, In Its Capacity As Successor Indenture Trustee For The Phones Notes* [Docket No. 7127] ("Noteholder Plan" and jointly with the DCL Plan, the "Plans").

## I.     BACKGROUND

On December 8, 2008 ("Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") before this Court. All of Certain Directors and Officers served as directors or officers of various Debtors before the Petition Date. Pursuant to the Bylaws of certain of the Debtors, the Articles of Incorporation of certain of the Debtors, and certain statutory provisions of the laws of applicable states, Debtors are obligated to indemnify and hold Certain Directors and Officers harmless from and against any and all liability, expenses, etc. arising from or relating to Certain Directors and Officers' service as officers and/or directors of the Debtors ("Indemnity Obligations").

All of Certain Directors and Officers are named defendants in Adversary Proceeding No. 10-54010 ("LBO Adversary Proceeding") filed by the Official Committee of Unsecured Creditors ("Committee"). Committee seeks billions of dollars in recoveries from Certain Directors and Officers based on alleged (1) breaches of fiduciary duties, (2) receipt of transfers under sections 547 and 548 of the Bankruptcy Code, (3) violations of sections 160 and 173 of the Delaware Corporation Law, and (4) various common law tort theories. Almost all of the Certain Directors and Officers are defendants in separate, individual adversary proceedings wherein the Committee has asserted claims against them under 11 U.S.C. §§ 547 and 548 ("Avoidance Actions"). On October 27 and November 29, 2010, this Court stayed the LBO Adversary Proceeding and the Avoidance Actions (collectively, "Actions"), prohibiting Certain Directors

and Officers (and all other defendants) from moving to dismiss the complaint or take discovery, and stating that "[a]ll rights of such defendants . . . shall be fully preserved." [Docket Nos. 6150 and 6658.]

## II. CONFIRMATION REQUIREMENTS UNDER SECTION 1129 OF THE BANKRUPTCY CODE

Section 1129(a) of the Bankruptcy Code contains the statutory requirements which must be met as a prerequisite to confirmation of a plan of reorganization. 11 U.S.C. § 1129. Each requirement of section 1129(a) must be met prior to confirmation of a plan. *See id.* A party seeking approval of a plan of reorganization bears the burden of proving by a preponderance of the evidence that each of section 1129(a)'s requirements are satisfied. *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 598 (Bankr. D. Del. 2001).

## III. OBJECTIONS TO THE PLANS

Certain Directors and Officers object to the Plans[2] in that each fails to comply with the requirements of section 1129 of the Bankruptcy Code, and include provisions that cannot be approved in equity and under applicable law. Therefore, each of the Plans cannot be confirmed.

### A. The DCL Plan's Proposed Bar Order.

Section 11.3 of the DCL Plan describes its proposed Bar Order. The Bar Order is not proposed in good faith and is not consistent with Title 11 of the United States Code. 11 U.S.C. §§ 1129(a)(1) and (3). It contains impermissible releases and injunctions, proposes incomprehensible and illusory judgment reduction procedures, unlawfully eviscerates claims and is otherwise neither fair nor equitable.

---

[2] *See* 11 U.S.C. § 1128(b).

1. **Bar Orders Are Disfavored In The Third Circuit.**

Section 524(e) of the Bankruptcy Code provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Any attempt to release or enjoin a non-debtor's claim against another non-debtor in a plan calls for special scrutiny under section 524(e). *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 212 (3d Cir. 2000) (noting that "quite a few courts" have followed the lead of the Ninth and Tenth Circuits in refusing to permit bar orders that contain non-debtor releases and injunctions and finding that such bar orders should be allowed, if at all, only in "extraordinary cases"); *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 144 (Bankr. D. Del. 2010) (a permanent injunction limiting the liability of nondebtor parties is a "rare thing" that should not be considered absent a showing of exceptional circumstances) (citing and quoting *In re Genesis*, 266 B.R. at 608; *In re Exide*, 303 B.R. at 72-75 (refusing to approve certain non-consensual releases of claims against third party directors and officers of the debtor and pre-petition lenders). Only where (i) a non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is "fair" to non-consenting creditors (judged by whether non-consenting creditors received reasonable compensation in exchange for the release) should such a bar order provision even arguably be allowed. *In re Spansion*, 426 B.R. at 144.

Despite this Court's October 27 and November 29, 2010 Orders, the plain language of section 524(e) of the Bankruptcy Code, and the above-cited case law, section 11.3 of the DCL Plan seeks entry of that proposed Bar Order which precludes Certain Directors and Officers from asserting claims, including for contribution and indemnity, against numerous parties, including, but not limited to, Senior Lenders, Settling Step Two Payees, the Bridge Lenders,

Agents for the Senior and Bridge Lenders and all "Related Persons" of such entities ("Released Parties").[3] Certain Directors and Officers object to the proposed Bar Order, which should not be approved as part of any Plan.

### 2. Debtors Cannot Meet The Heavy Burden Required For Entry Of The Proposed Bar Order.

Debtors cannot meet the above-stated *Spansion* criteria. First, no showing has been made by Debtors that the broad release found in the DPL Plan is "necessary" to the success of Debtors' proposed reorganization. *Continental* held that protecting directors and officers of a reorganized company from lawsuits was not a sufficient basis for ignoring the dictates of section 524(e). *In re Continental*, 203 F.3d at 216-17. The DCL Plan goes further, seeking to protect the Released Parties (*e.g.*, the Senior and Bridge Lenders, their Agents and others), and each of their respective Related Persons, from Certain Directors and Officers' claims in the Actions. But no showing can be made that forcing Certain Directors and Officers to release their claims against these parties is "necessary" to Debtors' reorganization success. Some parties are contributing to Debtors' Estate in exchange for a release; other proposed releasees are contributing nothing to the Estate. But in every bankruptcy a settling corporate defendant will likely want the broadest release possible, including for its "Related Persons," and will claim that, absent such relief, it would not have agreed to settle or otherwise participate in the reorganization. Finding such circumstances sufficient to justify a non-consensual non-debtor release would undercut the limitations imposed on such releases in *Continental* and certainly not make permanent injunctions or releases of non-debtor parties "rare thing[s] that should not be considered absent a

---

[3] Sections 1.1.194 and 1.1.197 of the Proposed Plan are some of the provisions that purport to define these terms. On their vagueness, please see p. 12, below. Released Parties include, but are not limited to, in addition to Debtors and their non-Debtor affiliates, current and former Senior Lenders, Settling Step Two Payees, the Bridge Lender, Agents for both the Senior and Bridge Lenders, and "Related Persons" of these entities. A "Related Person" includes all predecessors, successors, and assigns of the entity and with respect to each such entity, all members, equity holders, partners, officers, directors, financial advisors, agents and other representatives.

showing of exceptional circumstances." *Id.* at 213 n.9 (citations and quotations omitted). Unless Debtors show that each provided-for release is truly necessary to reorganization success, including those to be given to "Related Parties," the proposed Bar Order must be rejected.

Second, the adequacy of the financial contributions that some (but not all) released non-debtors may provide is the subject of much debate and contention. *See Responsive Statement of Proponents of the Noteholders' Plan* at 6. Nevertheless, the proposed Bar Order benefits both paying and non-paying Released Parties to the same extent. After saddling Certain Directors and Officers with the entire expense of defending the Actions, the DCL Plan allows certain Released Parties to share in any recoveries that may be obtained as beneficiaries of the Litigation Trust and Creditors' Trust. This Court should consider the inequities of such an arrangement, including the impact that the arrangement may have on the Actions, including, but not limited to, the incentives that it creates for Released Party witnesses that may be called in the Actions.

Finally, Certain Directors and Officers have not consented to the proposed Bar Order, and will not receive reasonable compensation under the DCL Plan for having their claims released and enjoined. *In re Continental*, 203 F.3d at 215 (where the non-debtor third parties received no consideration in exchange for having their lawsuits permanently enjoined, this fact alone rendered various cases allowing for third party releases and injunctions "inapplicable"). Certain Directors and Officers want and are entitled to their claims.[4]

---

[4] Debtors may rely on *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F. 3d 449 (11th Cir. 1996) in support of their Plan. In addition to not mentioning section 524(e), the District Court in *Munford* found that the released third party had paid almost all of its greatest assets to the Debtor in exchange for the Bar Order. *Id.* at 455-56. No analogous showing will be made in this matter, either with respect to the parties who are paying money and certainly not with respect to those who are paying nothing.

### 3. The Proposed Bar Order Is Not Fair And Equitable.

To be approved by this Court, the proposed Bar Order must be fair and equitable. *See Eichenholtz v. Brennan*, 52 F.3d 478, 486-87 (3d Cir. 1995). This Court has stayed the Actions against Certain Directors and Officers, preserving all their rights, while Plan confirmation issues are addressed. The DCL Plan seeks to undo this process by eliminating Certain Directors and Officers' right to sue third parties whose actions contributed to Debtors' alleged losses. Debtors should not be allowed to use this Court's equitable power to impact litigation that has not yet begun, especially with respect to parties who have paid inadequate or no consideration for the proposed releases.

#### a) *The Purported Judgment Reduction Provisions In The Proposed Bar Order Are Illusory And, Even If Applied, Unfair And Inequitable.*

The Proponents of the DCL Plan are surely aware that any Plan forthrightly stating that its effect would be to extinguish claims of third parties against non-debtors without fair consideration is unconfirmable on its face. *In re Continental*, 203 F.3d at 213-14; *Walsh v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt. Inc.)*, 261 B.R. 619, 625-26 (Bankr. W.D. Pa. 2001). The proposed Bar Order of the DCL Plan has precisely that effect but tries to cloud the picture in a bid to avoid rejection on such grounds. The bid should not be allowed to succeed.

The clouding device used by the DCL Plan is a so-called "judgment reduction" provision set forth in the second substantive paragraph of the proposed Bar Order (DPL Plan, section 11.3). Whether by accident or design, the paragraph is at best only semi-comprehensible. With some careful attention and parsing, however, the "judgment reduction" provision emerges as illusory, and, even if applied, unfair and inequitable. In operation, the proposed Bar Order would essentially eliminate, *inter alia*, contribution claims of Certain Directors and Officers against

settling non-parties, without their consent and without consideration. The DCL Plan is therefore non-confirmable under sections 1129(a)(1) and (3).

First, the proposed judgment reduction scheme is illusory because (a) the Bankruptcy Court has no jurisdiction over any subsequent litigation court, making application of the scheme entirely discretionary on the part of such litigation courts and (b) the only required exercise by a subsequent Litigation Trustee or Creditors' Trustee is the requirement that he or she notify the litigation court of the Bar Order. If the Trustee fails to do so, or if it does so and the litigation court does not apply the reduction scheme, there are no negative consequences to the Trustee (in fact, the Trustee likely does better). Second, the judgment reduction scheme would be unfair and inequitable even if the litigation court applied it because the proceeding to determine the Barred Person's claim for contribution would be split entirely from the Trustee's related claim against the Barred Person.

In relevant part, the proposed scheme works as follows:

    a)    The provision is triggered "in the event" a Plaintiff "obtains a judgment" against a Barred Person "related to the facts, allegations or transactions underlying any Released Claims." DCL Plan § 11.3. (In this case, assume the Plaintiff is the Litigation Trustee, the Released Claims are contribution claims held by Certain Directors and Officers against non-debtors, and the case is brought in a court (the "Litigation Court") other than the instant one.) The triggering event –the Trustee "obtains a judgment" – is wholly imprecise but would likely occur, insofar as we know, only upon entry of a judgment. *See, e.g.*, Fed. R. Civ. P. 58.

    b)    Once the Trustee "obtains a judgment," its sole duty kicks in under this scheme – the Trustee "shall provide notice of this Bar Order to the [Litigation] Court in

which such Judgment was obtained." DCL Plan § 11.3. Thus, the Trustee would have concluded the case against the Certain Directors and Officers and "obtained a judgment" without any part of their contribution claim having been heard or decided. If the Trustee has failed to provide notice of the Bar Order, it would suffer no negative consequence.

        c)       With the Trustee having "obtained a judgment" against the Barred Person, the Litigation Court is then supposed to "determine whether the Judgment gives rise to Barred Claims on which Released Parties would have been liable to the Barred Persons in the absence of this Bar Order," *e.g.*, whether the Barred Person had a good contribution claim against a Released Party. *Id.* There are multiple problems with this provision. First, the Bankruptcy Court lacks jurisdiction to require the Litigation Court to follow these procedures, making them wholly discretionary. *See, e.g., Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 177 n.5 (3d Cir. 1982) (while bankruptcy courts can enjoin proceedings in other courts by enjoining the litigants, bankruptcy courts lack jurisdiction to directly enjoin state courts or other federal courts). Second, there are no negative consequences to the Trustee if the Litigation Court declines to apply these procedures, leaving the Trustee without any incentive to seek their application. Third, even if the Litigation Court elected to follow the procedures, the trial of the Barred Person's liability would already have occurred, leaving it divorced from the Court's later determination of his or her contribution claim. Thus, the Barred Person would likely be required to face different triers of fact (*e.g.*, jury in one and judge in the other), different procedures, different evidence, etc.

        d)       If the Litigation Court does determine that the Released Parties would have been liable to the Barred Person in the absence of this Bar Order, it is supposed to

reduce the amount of judgment against the Barred Person according to a formula. All of the issues identified in (c), above, are present here as well. Moreover, the postponement of the judgment reduction until after the entry of a full judgment against Certain Directors and Officers, in addition to forcing them to bear all of the risk, deprives them of the ability to make relative fault arguments to the jury or court in connection with the actual case. Making these arguments after such a judgment has been entered may be impossibly vague and hypothetical.

   e)  Finally, the Bar Order imposes *all* these risks, including the risk of non-compliance, on the Barred Person. If the specified procedures are not followed for any reason, the Bar Order provides that the Barred Person's otherwise valid contribution claim against a Released Party would be wiped out. (No provision of the Bankruptcy Code allows for a claim to simply be extinguished, as opposed to enjoined or released.) The Trustee would suffer no negative consequences. Indeed, the Trustee and/or its beneficiaries would enjoy a double recovery – they would keep 100% of the original settlement *and* collect in full from the Barred Party with no set-off for contribution.

The DCL Plan stands in marked contrast to the provisions applied in *Eichenholtz*, 52 F.3d 478. In that case, the requirements and burdens of the bar order were imposed directly on the plaintiff, not the barred person. In addition, determination of the barred person's contribution claim, in terms of both liability and amount, would occur in the same trial before the same trier of fact and *prior* to any judgment being obtained by the plaintiff. Finally, the judgment reduction injunction at issue in *Eichenholtz* "expressly barred *plaintiffs* 'from seeking from the non-settling defendants any amounts *greater* than the proportionate liability, if any, of the non-

settling defendants for any damages, if any, determined at trial.'" *Id.* at 481 (emphasis added). As the Third Circuit explained:

> Under the proportionate judgment reduction method, the jury, in the non-settling defendants' trial, will assess the relative culpability of both settling and non-settling defendants, and the non-settling defendants will pay a commensurate percentage of the judgment.[] The risk of a "bad" settlement falls on the plaintiffs, who have a financial incentive to make certain that each defendant bears its share of the damages. . . . The proportionate fault rule is the equivalent of a contribution claim; the non-settling defendants are only responsible for their portion of the liability.

*Id.* at 487 (citations omitted).

In contrast to *Eichenholtz*, the Bar Order proposed here does not enjoin the Trustee in any meaningful way. Instead, it places on Certain Directors and Officers all of the risk that the Litigation Court will not apply the "judgment reduction" provision. Because plaintiff would have a full judgment in hand before the "judgment reduction" provision is even triggered, the Trustee would have incentives to avoid application of the "judgment reduction" scheme.

In sum, the proposed Bar Order's "judgment reduction" scheme is illusory and, even if applied, unfair and inequitable. For these additional reasons, the proposed Bar Order renders the DCL Plan non-confirmable under sections 1129(a)(1) and (3).

### b) *The Proposed Plan May Impermissibly Extinguish Certain Directors And Officers' Contribution Claims In Another Way.*

As noted, a bankruptcy court lacks jurisdiction simply to extinguish claims held by non-debtors against other non-debtors. *See* 11 U.S.C. § 524(e); *In re Sportstuff, Inc.*, 430 B.R. 170, 179 (B.A.P. 8th Cir. 2010). As written, the proposed Bar Order could result in the elimination of Certain Directors and Officers' contribution claims at the very outset.

Specifically, the first sentence of the "judgment reduction" scheme provides that the reduction process is to take place, if at all, *after* the Plaintiff obtains a judgment. DCL Plan

§ 11.3. To the extent that "obtained" (which is not a defined term in the Federal Rules) is read to mean "entered" (a judgment is "obtained" by being "entered"), claims for contribution might be read to be barred from the start: "if judgment has been entered against any Barred Person *without a prior or concurrent determination as to the existence of a Barred Claim and the Released party's liability on such Barred Claim*, then such Judgment shall be deemed not to give rise to a Barred Claim." (Emphasis added.) By these terms, the judgment reduction process could never be triggered. As written, this provision might be seen to extinguish all otherwise good claims for contribution or non-contractual indemnity.

### 4. Other Issues With The Proposed Bar Order.

In addition to the above, the proposed Bar Order has at least two additional problems.

First, Paragraph 1 of the proposed Bar Order (section 11.3) purportedly describes, among other things, the claims that a Barred Person may not bring against a Released Party. *See* DCL Plan § 11.3. (The language is quite expansive and vague, likely impermissibly so.) Paragraph 3 purportedly recognizes the right of Barred Persons to bring other claims, including claims against Released Parties. One might fairly assume that Paragraph 3 would state that Barred Persons are free to bring all Claims against Released Parties, except for those specified in Paragraph 1. But it does not. Instead, it states that the Bar Order shall not apply to "(ii) any claim for which a court determines joint liability does not exist as a matter of law, equity or fact as between any Barred Person and any Released Party." This language is plainly intended to limit the rights of Barred Parties and impose additional burdens upon them, all in the service of non-debtors. To the extent that it does, it is improper.

Second, the term "Released Parties" is tremendously broad and undefined. Once again, the Bar Order would intrude on the rights of Certain Directors and Officers, to the benefit of unnamed and unknown Released Parties who seem to have provided nothing to the settlement.

Nonetheless, they would receive non-consensual releases from the Certain Directors and Officers.

B. **The Creditors' Trust.**

Both Plans propose a scheme whereby certain "state law" causes of action will be disclaimed and/or abandoned, and assigned to a Creditors' Trust from non-debtor third parties who gave no affirmative consent to such assignment. This scheme is clearly designed to circumvent, limit, eliminate and otherwise prejudice defenses, cross-claims and third-party claims arising from and relating to the Avoidance Actions that are otherwise available to the Certain Directors and Officers. Nothing in the Bankruptcy Code authorizes either the proposed disclaimer or the proposed assignment from non-debtor third parties. This scheme is unlawful, inequitable, not proposed in good faith and not consistent with Title 11 of the United States Code. Accordingly, it cannot be approved and the Plans cannot be confirmed. Certain Directors and Officers join in the Plan Objection filed by Robert R. McCormick Tribune Foundation and Cantigny Foundation.[5]

C. **Additional Objections.**

The Plans contain provisions that may purport to prejudice the Certain Directors and Officers' rights and claims beyond that already addressed above. Accordingly, Certain Directors and Officers further object to the Plans as follows:

---

[5]  The Objection is titled "Objection of Robert R. McCormick Tribune Foundation and Cantigny Foundation to (I) Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. and (II) Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in Its Capacity as Successor Indenture Trustee for the Phones Notes."

First, Certain Directors and Officers object to the Noteholder Plan to the extent that § 6.5 and/or § 6.7 thereof would serve to nullify or otherwise modify the exculpation provided to Certain Directors and Officers under the Debtors' corporate documents and/or applicable law.

Second, notwithstanding any provisions of the Plans to the contrary, this Court must retain jurisdiction over any Litigation Trust and the Creditors' Trust that may be created to assure that their conduct is consistent with any confirmed Plan, the confirmation order and this Court's other orders.

Finally, since these lengthy, complex Plans have been drafted and proposed with the intent to prejudice the rights, claims and defenses of Certain Directors and Officers, any confirmation order must expressly preserve all rights claims, and defenses that are otherwise not *expressly* affected by such confirmation order.

## IV. RESERVATION OF RIGHTS AND JOINDER

Certain Directors and Officers hereby reserve their right to amend and/or supplement this Objection. They hereby join objections raised by other parties-in-interest to the extent such objections are not inconsistent with Certain Directors and Officers' interests, and the positions set forth herein. Further, Certain Directors and Officers reserve their right to object to any amendment to or modification of the Plans on any grounds. Finally, Certain Directors and Officers reserve their right to file additional objections and/or replies based on submissions filed by other parties-in-interest.

## V. CONCLUSION

WHEREFORE, for all of the foregoing reasons, Certain Directors and Officers respectfully request that the Court deny confirmation of the proposed Plans and grant Certain Directors and Officers such further and additional relief and the Court may deem just and proper.

Dated: February 15, 2011                                              Respectfully submitted,

                                                                      CONNOLLY BOVE LODGE & HUTZ LLP

                                                                      By: _____
Of Counsel:                                                           Jeffrey C. Wisler (#2795)
                                                                      Marc J. Phillips (#4445)
John R. McCambridge                                                   The Nemours Building
George R. Dougherty                                                   1007 N. Orange Street
Michael W. Kazan                                                      P.O. Box 2207
**GRIPPO & ELDEN LLC**                                                Wilmington, DE  19899
111 S. Wacker Drive                                                   Telephone: (302) 658-9141
Chicago, IL 60606                                                     Facsimile:  (302) 658-0380
Telephone: (312) 704-7700
Facsimile:  (312) 558-1195                                            Attorneys for Certain Directors and Officers