**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>                          Debtors. | ) Chapter 11<br>)<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>) Re: Dkt. Nos. 7801 & 7127<br>)<br>) |

**SAMUEL ZELL'S OBJECTION TO CONFIRMATION OF (A) THE SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDON & CO., AND JPMORGAN CHASE BANK N.A. AND (B) THE JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRSUTEE FOR CERTAIN SERIES OF SENIOR NOTES AND WILMINGTON TRUST COMPANY, IN ITS <u>CAPACITY AS INDENTURE TRUSTEE FOR THE PHONES NOTES</u>**

Samuel Zell ("Mr. Zell") respectfully submits this Objection to confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries filed by the Debtors and certain other creditors (the "Debtors' Plan," Bankr. Doc. 7801), and the Joint Plan filed by Aurelius Capital Management, LP and certain creditors ("Aurelius's Plan," Bankr. Doc. 7127), and states as follows in support:

**INTRODUCTION**

Mr. Zell joins, in part, EGI-TRB's objections (the "EGI-TRB Objection") to confirmation of the Debtors' Plan and to confirmation of Aurelius's Plan. Specifically, Mr. Zell joins EGI-TRB in objecting to those aspects of the Debtors' Plan and Aurelius's Plan that: (1) violate 11 U.S.C. §§1129(a)(1) and 1129(a)(3) by improperly structuring

certain litigation trusts in an effort to create an end-around the safe harbor provisions of Section 546 of the Bankruptcy Code; (2) are not fair and equitable to junior claim holders who the Plan proponents will cause to bear the burden of the Plan proponents' insistence on bringing claims that the Court-appointed Examiner already has found unlikely to succeed; (3) purport to provide an impermissible third-party release; and (4) are not fair and equitable because they contain provisions that have the potential to dilute distributions to junior creditors.

For the reasons set forth in the EGI-TRB objection, this Court should not authorize the pursuit of frivolous litigation, including the claims against Mr. Zell that the Examiner found unlikely to succeed.  However, in the event that this Court permits such litigation, then Mr. Zell raises an additional objection to the confirmation of the Debtors' Plan and Aurelius's Plan—that they foreclose appropriate rights of indemnification.

Both Plans seek the broad settlement of causes of action that may be asserted against certain preferred third parties.  Other parties, like Mr. Zell, however, remain exposed to the costs of defending frivolous litigation that the Examiner found unlikely to succeed.  Not satisfied with the specter of pursuing claims that the Examiner already has found unlikely to succeed, the Debtors and Aurelius also seek to strip Mr. Zell and others of their rights to seek indemnification from the Debtors for costs incurred in mounting their defense.  Not only do these provisions of the Debtors' Plan and Aurelius's Plan violate specific provisions of the Bankruptcy Code, they also directly contradict the underlying purpose of Delaware's indemnification law.  For those reasons, neither Plan is confirmable, without appropriate modification to permit that indemnification.

**ARGUMENT**

I. **The Debtors' Plan and Aurelius' Plan Fail To Comply With 11 U.S.C. § 365 And Therefore Cannot Be Confirmed Under 11 U.S.C. §§ 1129(a)(1) and 1129(a)(3).**

Both Plans state that the reorganized Debtor will not honor pre-petition indemnification obligations related to director and officer liability in connection with the 2007 LBO. That provision violates 11 U.S.C. §365, as it represents a selective effort to "pick-and-choose" which aspects of the Debtors' pre-petition indemnification obligations the Debtors will honor, rather than accepting or rejecting those obligations in total. The provision further violates Delaware corporate law and public policy. Those defects prevent confirmation under 11 U.S.C. § 1129(a)(1) and such provisions are proposed in bad faith in violation of 11 U.S.C. § 1129(a)(3).

The Debtors' existing certificate of incorporation obligates the Debtors to indemnify its directors and officers "to the fullest extent permitted by applicable law" for liabilities and expenses incurred as a result of conduct undertaken as a director or officer. (Debtors' Certificate of Incorporation at § 8.1, Ex. A hereto.) This indemnification obligation applies "in *any* action suit or proceeding, whether civil, criminal, administrative or investigative." (*Id*., emphasis added.) There is no distinction or exception for claims related to the 2007 LBO or any other event.

Both the Debtors' Plan and Aurelius's Plan propose to amend the certificate of incorporation, but critically both continue to provide that the indemnification offered to both present and former officers and directors will be "to the fullest extent permitted by law." (*See* Debtors' Plan Supplement at Attachment E at § 8.A [Dkt. No. 7701]; Aurelius's Plan Supplement at Attachment E at § 8.A [Dkt. No. 7701].) Again, there is

no distinction or exception for claims arising from the 2007 LBO or from some other event.

Nevertheless, despite those broad indemnification obligations, both proposed Plans state that the Debtors will continue to honor all pre-petition indemnification obligations *except* those related to the 2007 LBO. In particular, the Debtors' Plan purports to deprive indemnification for claims "related to, based upon, or in connection with any LBO-Related Causes of Action arising prior to the Petition Date." (Debtors' Plan at § 11.6.1.) Likewise, Aurelius's Plan also specifically excludes the Debtors' "prepetition obligation to indemnify any target of any Litigation Trust Causes of Action." (Aurelius's Plan at § 6.1.1.) Simply put, the Plan proponents seek to keep intact the Debtors' indemnification provisions for their own benefit, while simultaneously denying the same benefits to those who served the Debtors post-petition in reliance on the standard protections under Delaware corporate law.

The Plan proponents cannot have it both ways. It is well-established that a debtor's certificate of incorporation constitutes an executory contract that may be assumed or rejected pursuant to section 365 of the Bankruptcy Code. *In re Panolam Holdings Co.*, 2009 WL 7226968, at * 20 (Bankr. D. Del. Dec. 10, 2009) (approving plan where debtor assumed its obligations to indemnify its officers and directors under its certificate of incorporation and treating these obligations as executory contracts*); In re NII Holdings, Inc.*, 288 B.R. 356, 376 (Bankr. D. Del. 2002) (same); *In re Crabtreee & Evelyn, Ltd.*, 2010 WL 3638369, at *14 (Bankr. S.D.N.Y. Jan. 14, 2010) (same).[1]

---

[1] In addition, the presence of an indemnification provision in an agreement or contract strongly suggests that the contract is executory. *See, e.g.*, *In re Safety-Kleen Corp.*, 410 B.R. 164, 168 (Bankr. D. Del. 2009); *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009).

Therefore, while a plan might assume or reject a debtor's certificate of incorporation in full, it may not selectively pick and chose provisions to assume or reject. *E.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 41 (3d Cir. 1989) (an executory contract must be assumed or rejected in total). In other words, "[a] contract will not be bifurcated into parts that will be rejected and those that will not." *AbitibiBowater*, 418 B.R. at 823.[2]

The Plan proponents' attempt to selectively honor the Debtors' indemnification obligations thus runs afoul of 11 U.S.C. § 365. Both Plans therefore fail to comply with the applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) and may not be confirmed.

Further, the result the plan proponents seek is inconsistent with Delaware corporate law and sound public policy. The Delaware Supreme Court has explained:

> We have long recognized that Section 145 [which allows corporate indemnification] serves the dual policies of: (a) allowing corporate officials to resist unjustified lawsuits, secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation; and (b) encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity. We eschew narrow construction of the statute where an overliteral reading would disserve these policies.

*VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998). Thus, "[t]he indemnification statute should be broadly interpreted to further the goals it was enacted to achieve, which are . . . [to] encourage capable persons to serve as corporate directors . . . ." *Jackson*

---

[2] *See also In re Philip Servs. (Del.), Inc.*, 303 B.R. 574, 576-77 (D. Del. 2003) ("If the debtor decides to assume a [executory contract], however, it must generally assume all the terms . . . and may not pick and choose only favorable terms to be assumed."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008)).

*Walker L.L.P. v. Spira Footwear, Inc.*, Civil Action No. 3150-VCP, 2008 WL 2487256, at *4 (Del. Ch. June 23, 2008).

Here, depriving Mr. Zell of indemnification would be particularly inappropriate given that, after a comprehensive examination, the Examiner soundly rejected the claims that have been filed against Mr. Zell. As the Examiner found:

- It is **"highly unlikely"** a court would "conclude that any claims for aiding and abetting breach of fiduciary duty could be sustained based on the conduct of any potential defendants [including Mr. Zell and EGI-TRB] at Step One." (Examiner's Report, Vol. II. at 395.) In addition, it is **"reasonably unlikely"** that any aiding and abetting claim could succeed as to Step Two because there is no "sufficient basis to conclude that the Zell Group aided and abetted a breach of any fiduciary duties in connection with the Leveraged ESOP Transactions." (*Id*. at 395, 397.)

- It is **"reasonably unlikely"** that any unjust enrichment claims would be meritorious, including any such claim against Mr. Zell or EGI-TRB. (*Id*. at 404, 406.)

- It is **"reasonably unlikely"** that a court would find that the Debtors incurred their obligations under the Step One Transactions with the actual intent to delay, hinder, or defraud their creditors. (*Id*. at 22.)

- A "court is **reasonably unlikely** to find that a claim for illegal corporate distributions pursuant to [the Delaware code] could be sustained against Tribune's directors based on the Step One Transactions, and is **somewhat unlikely** to find that such a claim could be sustained against Tribune's directors based on the Step Two Transactions." (*Id*. at 411.) That finding coupled with the fact that Mr. Zell abstained from participating in any Board action on Step Two should preclude any finding against him for violation of DGCL Sections 160 and/or 173.

- It is **"somewhat unlikely"** that a court would find that claims for breach of fiduciary duty could be sustained against the Tribune directors at Step Two. (*Id*. at 373.) This finding was directed at all Tribune directors who participated in approving Step Two. Mr. Zell abstained from and had no role in approving the LBO on behalf of Tribune. At a minimum, therefore, the Examiner's finding coupled with Mr. Zell's abstention should preclude any claim for breach of fiduciary duty. *See, e.g., In re Tri-Star Pictures, Inc. Litig.*, Civ. A. No. 9477, 1995 WL 106520 at *2 (Del. Ch. Mar. 9, 1995) (where director's "deliberately removed themselves from the decision making process there is no liability.").

- As a overriding matter, although the Examiner concluded that there is evidence that certain third parties may not have acted in good faith in connection with the Step Two Transactions, the Report contained no suggestion and identified no evidence that Mr. Zell and EGI-TRB acted with anything other than good faith. (Examiner's Report Vol. I at 74-75, 264, 281, 283, 338, Vol. I at 300.) Accordingly, those findings should preclude any claims for Intentional Fraudulent Transfer to the extent they are based on **Step Two** and directed towards Mr. Zell and EGI-TRB.

As those findings demonstrate, the claims on file against Mr. Zell are unlikely to succeed. Indeed, the Court instructed the Plan proponents to describe accurately to creditors the Examiner's findings regarding claims against Mr. Zell and EGI-TRB, and the Joint Disclosure Statement effectively stipulated that with respect to EGI-TRB and Mr. Zell, the Examiner determined that the alleged claims are "unlikely to succeed." (*See* Joint Disclosure Statement at 63 [Dkt. No. 7134].)

Given the frivolous nature of the claims asserted against Mr. Zell, it is all the more important that the Court require the Debtors to honor their indemnification obligations to Mr. Zell. Mr. Zell has served these Debtors admirably both pre- and post-petition and, as the Examiner found, has done nothing wrong. He has continued to serve in reliance on his right to be protected under Delaware law.

The intrinsic unfairness of the proposed retroactive removal of indemnification obligations renders the Plans unconfirmable under 11 U.S.C. § 1129(a)(3), as such provisions are not proposed in good faith.

If creditors choose to proceed with these meritless claims, they should not be immunized from the risk that, if they do not prevail, Mr. Zell will be entitled to indemnification under the ordinary application of Delaware law. *Cf. In re CB Holding Corp.*, 2010 WL 5271870 at *2 (Case No. 10-13683) (Bankr. D. Del. Dec. 13, 2010); *In re Gencor Indus., Inc.*, 2007 WL 1468695, at *2-3 (Case No. 06-03597) (Bankr. M.D.

Fla. May 18, 2007); *In re Adelphia Communications Corp.*, 368 B.R. 140, 268, 276-77 (Bankr. S.D.N.Y. 2007); *In re WorldSpace, Inc.*, 2008 WL 8153639, at * 14 (Case No. 08-12412) (Bankr. D. Del. Oct. 20, 2008).

## CONCLUSION

For all of the foregoing reasons, Mr. Zell respectfully requests that confirmation of both Plans be denied and that the Court grant such other relief as may be just.

Dated: February 15, 2011

                        Respectfully submitted,

                    By:    /s/ *David W. Carickhoff*
                           David W. Carickhoff (DE No. 3715)
                           BLANK ROME LLP
                           1201 Market Street, Suite 800
                           Wilmington, DE 19801
                           Telephone: (302) 425-6400
                           Facsimile: (302) 425-6464

                                  and

                           David J. Bradford (admitted *pro hac vice)*
                           Catherine L. Steege (admitted *pro hac vice*)
                           Andrew W. Vail (admitted *pro hac vice*)
                           JENNER & BLOCK LLP
                           353 N. Clark St.
                           Chicago, IL 60654
                           Telephone: (312) 222-9350
                           Facsimile: (312) 527-04844

                           *Counsel for Samuel Zell*