IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

————————————————X
In re:                              :        **Chapter 11 Cases**
                                    :        **Case No. 08-13141 (KJC)**
**TRIBUNE COMPANY, et al.,**        :        **(Jointly Administered)**
                                    :
        **Debtors.**                :        **Confirmation Hearing Date:**
                                    :        **March 7, 2011**
                                    :
————————————————X          **Related to Docket Nos. 7136, 7801**

### OBJECTION OF WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES, TO THE SECOND AMENDED DEBTOR/COMMITTEE/LENDER PLAN

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2 billion (generally referred to as the "PHONES") issued in April 1999 by Tribune Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the "Company"), by and through its undersigned counsel, hereby respectfully submits this objection (the "PHONES Objection") to the Plan of Reorganization proposed by the Debtors, the Official Committee of Unsecured Creditors of the Debtors and certain LBO Lenders[1] (the "D/C/L Plan"). In support of the PHONES Objection, Wilmington Trust respectfully states as follows:[2]

---

[1]   All capitalized terms not otherwise defined herein shall have the meaning in the *Report of Kenneth N. Klee, as Examiner*, dated July 26, 2010 [Docket Nos. 5130; 5131; 5132; 5133 (collectively, the "Examiner's Report"). The "D/C/L Plan" is the *Second Amended Debtor/Committee/Lender Plan (Without Appendices and Exhibits)*, Exhibit A, dated February 4, 2011 [Docket No. 7801].

[2]   This Objection is limited to issues solely concerning the treatment of the PHONES under the D/C/L Plan and claims arising from the PHONES Indenture. Wilmington Trust, in its capacity as a proponent of the Noteholder Plan, is also a signatory to the separate *Objection of the Noteholder Group* filed contemporaneously herewith (the "Noteholder Objection"). Wilmington Trust has the right to file this separate objection concerning PHONES-specific issues pursuant to the *Discovery and Scheduling Order for Plan Confirmation*, dated December 20, 2010 [Docket No. 7239] at ¶ 24. Similarly, this objection does not address the dispute over the PHONES Exchange Claims, which matter already is *sub judice* before the Court.

## PRELIMINARY STATEMENT

1.    The D/C/L Plan must fail, as a matter of law, for all of the reasons discussed by Wilmington Trust and its fellow Noteholder Plan Proponents in the Noteholder Objection. However, the Court should recognize at least four additional infirmities in the D/C/L Plan concerning its treatment of the PHONES that doom any attempt to achieve its confirmation:

- First, the D/C/L Plan wrongly assumes that the PHONES are subordinated to the LBO Lenders at the parent company level. As further discussed below, the PHONES Indenture contains protections against the very sort of wrongful conduct perpetrated by the LBO Lenders, including their failure to act in good faith. This contractual protection means that the PHONES should share pro rata in any recovery received by the LBO Lenders at the parent level with no pay over obligation, which is not the distribution scheme used by the Plan;

- Second, the D/C/L Plan provides the PHONES with a lower recovery than it would receive in a Chapter 7 liquidation by (A) subordinating the PHONES to (i) trade indebtedness and retiree claims against Tribune Company and (ii) intercompany claims of Tribune Company's subsidiaries; and (B) wrongly assuming that the PHONES are subordinated for the purpose of allocating distributions from the creditor trust contained in that plan (the "D/C/L Creditors' Trust"), when the purported payment subordination of the PHONES does not extend to payments from entities other than the Tribune Company;

- Third, the D/C/L Plan fails to provide proper treatment for the fees and expenses of Wilmington Trust, which constitute an unsubordinated, separate and distinct claim from the principal amount of the PHONES; and

- Finally, the D/C/L Plan makes distributions to the LBO Lenders despite the fact that such distributions are still at issue under the claims and causes of actions asserted by Wilmington Trust in its *Complaint for Equitable Subordination and Disallowance of Claims, Damages, and Constructive Trust* [Adv. No. 10-50732, Docket No. 1] (the "PHONES Complaint").[3]

2.    For these reasons, as well as those in the Noteholder Objection, the Court should deny confirmation of the D/C/L Plan.

---

[3]    The Wilmington Trust Complaint was asserted against non-debtors, including certain of the LBO Lenders. See PHONES Complaint. The full list of defendants includes JP Morgan Chase Bank, N.A., individually and as Administrative Agent, J.P. Morgan Securities Inc., Merrill Lynch Capital Corporation, individually and as Administrative Agent, Merrill, Lynch, Pierce, Fenner & Smith Incorporated, Citicorp North America, Inc., individually and as Administrative Agent, Citibank, N.A., Citigroup Global Markets, Inc., Bank of America, N.A., Banc of America Securities, LLC, Barclays Bank PLC, Morgan Stanley & Co. Inc. (collectively, the "PHONES Complaint Defendants").

## ARGUMENT

I.          **The D/C/L Plan Erroneously Assumes that the PHONES are**
           **Subordinated to the LBO Lenders at the Parent Company Level**

3.          The rights of the PHONES were established in that certain indenture dated as of

April 1, 1999 (the "PHONES Indenture"), attached hereto as Exhibit A. Section 14.09 of the

PHONES Indenture protected the PHONES from actions of purportedly senior debtholders who

do not act in good faith. The PHONES subordination is only effective if the senior creditor acts

in good faith. Section 14.09 of the PHONES Indenture states in pertinent part:

> **No right of any present or future holder of any Senior Indebtedness to enforce**
> **subordination** as herein provided **shall at any time in any way be prejudiced** or
> impaired by any act or failure to act on the part of the Company **or by any act or**
> **failure to act, in good faith, by any such holder,** or by any noncompliance by the
> Company with the terms, provisions and covenants of this Indenture, regardless of
> any knowledge thereof any such holder may have or be otherwise charged with.
> (emphasis added).

Thus, it cannot be disputed that the subordination provisions contained in the PHONES

Indenture are ineffective to the extent that the holders of purportedly senior debt fail to act in

good faith. The plain terms of the PHONES Indenture require this finding.[4]

4.          At confirmation, the evidence will overwhelmingly establish that the LBO

Lenders acted without good faith and have no standing to enforce any purported subordination of

the PHONES. While many instances of the LBO Lenders' lack of good faith will be offered at

confirmation, the Examiner noted several, including, *inter alia*:

---

[4]          In accordance with Illinois law, which is the law governing the interpretation of the PHONES Indenture, courts
will enforce agreements according to their plain and unambiguous terms. See City of Chicago v. Comcast
Cable Holdings, L.L.C., 375 Ill. App. 3d 595, 600-01 (Ill. App. Ct. 2007) ("'Illinois courts consistently hold that
words used in a contract must be given their plain and ordinary meaning' and that 'clear and unambiguous
contract terms control the rights of the parties.'") (citing Johnstowne Centre P'ship v. Chin, 99 Ill. 2d 284, 287-
88 (1983)) ("a contract's meaning must be determined from the words or language used, and a court cannot
place a construction on the contract which is contrary to the plain and obvious meaning of the language"); Hunt
v. Farmers Ins. Exch., 357 Ill. App. 3d 1076 (2005); Golden Rule Ins. Co. v. Schwartz, 203 Ill. 2d 456 (2003);
Srivastava v. Russell's Barbecue, Inc., 168 Ill. App. 3d 726 (1988).

- Funding the Leveraged ESOP Transactions despite knowing that it would lead to Tribune's certain bankruptcy;[5]

- Funding the Leveraged ESOP Transactions without performing adequate due diligence;[6] and

- Funding the Leveraged ESOP Transactions knowing that such incremental indebtedness would leave Tribune insolvent.[7]

5.      As a consequence of the foregoing, any plan of reorganization must provide equal priority to the recoveries of the LBO Lenders and the PHONES at the parent-company level. Instead, the D/C/L Plan allocates value as if the PHONES were fully subordinated to the LBO Lenders, providing a recovery valued at roughly $85.71 million dollars in consideration to the LBO Lenders but no initial distribution to the PHONES.[8]  See D/C/L Disclosure Statement, dated Dec. 10, 2010 [Docket No. 7135] at §II(C)(2).  Furthermore, Section 7.15 of the D/C/L Plan provides that:

> The distributions and treatments provided to Claims and Interests under this Plan take into account and/or confirm to the relative priority and rights of such Claims and Interests under any applicable subordination and turnover provisions in any applicable contracts, including, without limitations, the PHONES Notes Indenture . . . and nothing in [the] Plan shall be deemed to impair, diminish, eliminate or otherwise adversely affect the rights or remedies of beneficiaries . . . of any such contractual subordination and turnover provisions.

6.      Thus, the D/C/L Plan settles the issue of the enforcement of the PHONES subordination in the LBO Lenders' favor, without any legal determination by this Court as to the

---

[5]   See, e.g., Examiner's Report, Vol. I at pg. 266 (quoting JPMorgan internal email) ("[t]here is a wide speculation that the company might have put so much debt that all of its assets aren't gonna cover the debt in case of (knock, knock) you-know-what [bankruptcy]."); id. at 304 (quoting Citigroup internal e-mail) ("[g]iven that the interest expense will be a lot higher, the Company may not be able to handle this much debt.").

[6]   See, e.g., Examiner's Report, Vol. I. at pg. 627-28 (discussing Merrill Lynch's failure to properly apply valuation methodology to the Debtors in performing their duties).

[7]   See, e.g., Examiner's Report, Vol. I at pg. 629 (reviewing documents from Merrill Lynch and finding that "Handwritten notes . . . appear to reflect Merrill's belief that Tribune was 'not a solvent company,' yet Merrill was 'not planning on being [the] lone wolf' that did not close.").

[8]   While the PHONES are purportedly subordinated to certain other funded indebtedness at the parent company level, a proper allocation of value at the parent level will, at the least, reduce the amount of other purportedly senior debt outstanding, hastening the recovery of the PHONES from post-effective date litigation.

enforceability of subordination under Section 14.09.  This flies in the face of the rights of the PHONES under the PHONES Indenture, and thus the D/C/L Plan cannot be confirmed.

II.        **The D/C/L Plan Provides the PHONES with Less**
           **Value than they Would Receive in a Chapter 7 Liquidation**

           7.        The D/C/L Plan may not be confirmed if the PHONES are receiving less than the liquidation value of their claims.  See 11 U.S.C. §1129(a)(7);  see also In re PWS Holding Corp., 228 F.3d 224, 230 (3d Cir. 2000) ("a court shall confirm a plan only if the debtor demonstrate[s] . . . that creditors rejecting the plan would not receive a greater recovery in Chapter 7 liquidation"); Top Hat, Ltd. v. Aurora Foods, Inc. (In re Aurora Foods, Inc.), 2006 U.S. Dist. LEXIS 91659, at *24 (D. Del. Dec. 19, 2006) (same).  In order to determine whether a plan of reorganization supplies all parties with the liquidation value of their claims, a court looks to each creditor's rights in a liquidation under state law.  See Butner v. U.S., 440 U.S. 48, 54 (1979). The D/C/L Plan impermissibly enforces contractual subordination of the PHONES in at least two instances, resulting in the PHONES receiving less under the D/C/L Plan than in a liquidation.

           8.        First, Section 14.01 of the PHONES Indenture states, that the PHONES "shall be subordinated to Senior Indebtedness as set forth in . . . Article Fourteen" of the PHONES Indenture.  Section 14.01 defines "Senior Indebtedness" to be "the principal of (and premium, if any) and interest on . . . and other amounts due on or in connection with any Indebtedness of the Company incurred . . . on the date of [the PHONES Indenture] or hereafter incurred."  Section 14.01 defines "Indebtedness" to be:

> (i) all obligations represented by notes, bonds, debentures or similar evidences of indebtedness; (ii) all indebtedness for borrowed money or for the deferred purchase price of property or services other than, in the case of any such deferred purchase price, on normal trade terms; . . . and (iv) all Indebtedness of others for the payment of which such Person is responsible or liable as obligor or guarantor.

5

The PHONES Indenture, however, excludes a number of different types of "Indebtedness" from "Senior Indebtedness." See PHONES Indenture §14.01. In particular, the PHONES Indenture excludes from "Senior Indebtedness" "(C)any Indebtedness of the Company constituting trade accounts payable arising in the ordinary course of business; and (D) any Indebtedness of the Company to any Subsidiary of the Company." See id.

9.      Notwithstanding the foregoing provisions, the D/C/L Plan permits holders of Class 1F Other Parent Claims to benefit from the subordination provisions in the PHONES Indenture, even though a substantial amount of claims in Class 1F do not constitute "Senior Indebtedness" under the PHONES Indenture. Specifically, virtually all trade claims against Tribune Company "constitut[e] trade accounts payable arising in the ordinary course of business" and therefore are excluded from the definition of "Senior Indebtedness." Similarly, "Retiree Claims" (as defined in the D/C/L Plan) do not fall within the definition of "Indebtedness." Accordingly, by requiring the PHONES to turn over their plan distributions to trade creditors and retirees, the D/C/L Plan contravenes the subordination provisions in the PHONES Indenture and thereby deprives the PHONES of their rightful recoveries.



9

10. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Thus, the D/C/L Plan improperly subordinates the PHONES to recoveries on intercompany claims.

11.    Second, the D/C/L Plan, in Section 14.2, proposes to establish the D/C/L Creditors' Trust. The intended goal of the D/C/L Creditors' Trust is to facilitate the resolution of the "Disclaimed State Law Causes of Action" as such claims are defined in the D/C/L Plan, §1.1.80. Mechanically, the D/C/L Creditors' Trust operates as follows. First, on the effective date, the Debtors "disclaim all rights to pursue or prosecute the Disclaimed State Law Avoidance Claims," such that all rights to pursue Disclaimed State Law Avoidance Claims "revert to those entities who could have pursued such Disclaimed State Law Avoidance Claims prior to the Petition Date." See D/C/L Plan, §14.1. In other words, the intent of the D/C/L Plan is to assign all Disclaimed State Law Avoidance Actions to the parties harmed by the Leveraged ESOP Transactions: the Pre-LBO Creditors, including the PHONES. Once the Disclaimed State Law Avoidance Claims are discontinued, the D/C/L Plan contemplates that creditors will have the option to either transfer their claims to the D/C/L Creditors' Trust[10] or to opt-out of the D/C/L Creditors' Trust and retain their own claims by making a ballot election. See D/C/L Plan,

---

[10]    Once these claims are contributed to the D/C/L Creditors' Trust, the D/C/L Creditors' Trust is set up to operate as a grantor trust (as opposed to a liquidating trust), for the purpose of prosecuting the claims as well as facilitating the distribution of any proceeds from the transferred state law avoidance claims to creditors with interests in the D/C/L Creditors' Trust. See D/C/L Plan §14.1.

§14.3.1.[11] Holders of PHONES who did not opt of the D/C/L Creditors' Trust, however, receive less than they would receive under a chapter 7 liquidation.[12]  Specifically, the D/C/L Creditors' Trust distributes trust proceeds to trust beneficiaries pursuant to the same misreading of the subordination provisions in the PHONES Indenture set forth above.  This means that holders of PHONES that contribute their claims to the D/C/L Creditors' Trust will share only in the proceeds of the actions once certain funded indebtedness of Tribune Company, including that of the LBO Lenders, is paid in full.  See D/C/L Plan, §7.15; but see D/C/L Plan §1.1.172 (PHONES recovery from D/C/L Creditors' Trust are not subordinated to recoveries LBO Lenders).

12.    Furthermore, this structure ignores the limited nature of the PHONES' purported subordination.  Section 14.01 of the PHONES Indenture provides that subordination of the PHONES is expressly limited to the "extent and in the manner . . . set forth in . . . Article Fourteen."  The PHONES Indenture is very specific in dictating the contours of the purported contractual subordination bankruptcy proceeding.  Pursuant to Section 14.02 of the PHONES Indenture, the parties agreed that:

> Upon any distribution of **assets of the Company** in the event of any . . . bankruptcy case or proceeding . . . any payment or distribution of **assets of the Company** of any kind or character . . . which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the [PHONES], shall be paid . . . directly to the holders of Senior Indebtedness . . . to the extent necessary to make payment in full of all [unpaid] Senior Indebtedness . . .

---

[11]  Despite what the proponents of the D/C/L Plan may have intended, a careful reading of the D/C/L Plan reveals that Disclaimed State Law Avoidance Claims (as defined in the D/C/L Plan) ceased to exist upon the expiration of the section 546(a) statute of limitations and, therefore, such claims cannot be assigned to the D/C/L Creditors' Trust.  Wilmington Trust and the other proponents of the Noteholder Plan intend to advance this argument in connection with confirmation and nothing contained herein shall prejudice the Noteholder Plan proponents' ability to advance any such argument.

[12]  The tabulation declaration filed by Stephenie Kjontvedt on February 11, 2011 declines to disclose whether any holders of PHONES opted-out of the D/C/L Creditors' Trust, with their Disclaimed State Law Avoidance Actions being contributed to the D/C/L Creditors' Trust.  See *Declaration of Stephie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Joint Plans of Reorganization Proposed for Tribune Company and its Subsidiaries*, Exhibit A-2(b) at 27-28, dated Feb. 11, 2011 [Docket No. 7918].

PHONES Indenture, §14.02 (emphasis added).

13.    Under the definitions in the PHONES Indenture, "Company" is defined as "the Person named as the 'Company' in the first paragraph of this Indenture." Id. at §1.01 (definition of the "Company"). The first paragraph of the PHONES Indenture the "Company" is Tribune Company. Id. at pg. 1. Based on this provision, the PHONES are only purportedly subordinated to "Senior Indebtedness" when the assets of the Tribune Company are being distributed, but not otherwise. Thus, the PHONES are not subordinated with respect to distributions from the D/C/L Creditors' Trust (or any direct litigation by the PHONES Indenture Trustee or PHONES holders) because they are not "assets of the Company." Instead, such proceeds belong to the PHONES holders, and the PHONES purported payment subordination cannot apply.

14.    In Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.), the Third Circuit held that fraudulent transfer claims are not "assets" of the debtor. 226 F.3d 237, 239 (3d. Cir. 2000). Such claims *"[belong] to [the debtor's] creditors* as of the time of the bankruptcy filing," and that the debtor's avoidance power "simply enables a debtor-in-possession to carry out its trustee-related duties." Id. at 243, 247, n.16 (emphasis added).

15.    The mechanics of the D/C/L Creditors' Trust reinforce this proposition. Unlike in the litigation trust, where Tribune agrees to transfer, assign and deliver, without recourse, all of their respective rights, title and interests in and to the preserved causes of action, for the D/C/L Creditors' Trust, the D/C/L Plan purports that Tribune "will disclaim all rights to pursue or prosecute the Disclaimed State Law Avoidance Claims." D/C/L Plan, §14.1; see also Notice of Filing of D/C/L Plan Supplement, Attachment L, dated Jan. 31, 2011 [Docket No. 7701].

16.    Accordingly, the subordination provision in the D/C/L Creditors' Trust Agreement does not apply to those holders of PHONES who purportedly contributed their

individual claims to the D/C/L Creditors' Trust, and are entitled to receive their unencumbered pro rata share of the D/C/L Creditors' Trust, along with other creditors holding state law constructive fraudulent conveyance claims who contribute claims to the D/C/L Creditors' Trust **with no** pay over obligation.

17.    Since the D/C/L Plan proposes to enforce contractual subordination of the PHONES notwithstanding the fact that distributions from the D/C/L Creditors' Trust are effectively a return of the proceeds of direct litigation on behalf of the PHONES holders, it fails the "best interests of creditors" test by providing the PHONES with less than they would receive in a Chapter 7 liquidation, and as such cannot be confirmed.

III.    **The D/C/L Plan Fails to Classify the PHONES**
          **Indenture Trustee Fee Claim in Class 1F Other Parent Claims**

18.    The D/C/L Plan also errs by failing to provide the appropriate treatment of all of Wilmington Trust's claims. As this Court will recall from the January 24, 2011 hearing on Wilmington Trust's Rule 3018(a) Motion [Docket Nos. 4886, 7401, 7618], and the order entered in connection therewith [Docket No. 7626], Wilmington Trust holds two separate claims: (i) the principal amount owed to the bondholders under the PHONES Indenture; and (ii) Indenture Trustee Fees and Expenses of Wilmington Trust (including all attorney's fees). Notwithstanding the entry of the Rule 3018 Order, the second type of claims still are improperly classified under the D/C/L Plan as Class 1J PHONES Notes Claims rather than Class 1F Other Parent Claims.

19.    Section 6.07 of the PHONES Indenture provides that Tribune agrees to pay the PHONES Indenture Trustee "reasonable compensation in Dollars for all services rendered" (the "Indenture Trustee Fees"). The PHONES Indenture further obligates the Debtors to "reimburse the [Indenture] Trustee in Dollars upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of [the] Indenture

(including the reasonable compensation and the expenses and disbursements of its agents and counsel)." Id. The PHONES Indenture also obligates Tribune to indemnify the Indenture Trustee for expenses incurred arising out of or in connection with the administration of the trust, including the performance of any of its powers under the Indenture. Id. Under the express terms of the PHONES Indenture, these fees and expenses are **not** purportedly subordinated to any "Senior Indebtedness." Instead, they are *pari passu* with the other unsecured debt of Tribune. See PHONES Indenture, §14.13 (subordination provisions do not "apply to claims of, or payments to, the Trustee under or pursuant to Section 6.07 [the trustee compensation section]").

20.     Wilmington Trust's claim for post-petition fees and indemnity is enforceable, and as expenses incur they are added to Wilmington Trust's claim for fees and expenses. See In re Oakwood Homes Corp., 394 B.R. 352, 356 (Bankr. D. Del. 2008) ("in the bankruptcy context, . . . attorneys' fees authorized by prepetition contracts may be awarded even if they are incurred in post-petition litigation"); Ogle v. Fidelity & Deposit Co. of Md., 586 F.3d 143 (2d Cir. 2009) (unsecured creditor can recover attorneys fees incurred postpetition under prepetition credit documents); In re SNTL Corp., 571 F.3d 826 (9th Cir. 2009) (same). A plan must provide for the treatment of all claims by specifying the classes of claims that are not impaired and by specifying the treatment of claims that are impaired. See 11 U.S.C. §1123(a)(2), §1123(a)(3); see, e.g., In re EBHI Holdings, Inc., No. 09-12099, 2010 WL 3493027, at *2 (Bankr. D. Del. Mar. 18, 2010); In re Rubicon U.S. REIT, Inc., 434 B.R. 168, 175 (Bankr. D. Del. 2010).

21.     Further, claims must be classified with substantially similar claims. See 11 U.S.C. §1122 ("a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar"); see also In re G-I Holdings, Inc., 420 B.R. 216, 258 (D.N.J. 2009) ("[s]ection 1122 requires that all claims which are together be substantially similar, which

'insures that large claims of differing legal natures do not dictate other claims within a class'")
(quoting In re Resorts Int'l, Inc., 145 B.R. 412, 447 (Bankr. D.N.J. 1990)); In re Armstrong
World Indus., Inc., 348 B.R. 136, 159 (Bankr. D. Del. 2006) (same).

22.     Unfortunately, the D/C/L Plan leaves open the treatment of Wilmington Trust's
fees and fails to properly classify them in the D/C/L Plan, Class 1F Other Parent Claims.  In
Section 1.1.179 of the D/C/L Plan, "PHONES Note Claim" is defined as:

> . . . a Claim arising under or evidenced by the PHONES Notes Indenture and related
> documents, **except any claim made by Wilmington Trust Company**, as successor
> indenture trustee, **for reasonable compensation for services under the PHONES
> Notes Indenture or for reimbursement of reasonable expenses, disbursements,
> and advances incurred or made by Wilmington Trust Company** in accordance
> with any provision of the PHONES Notes Indenture, **only to the extent that the
> Bankruptcy Court determines that any such claim should not be a PHONES
> Notes Claim** and should instead be classified as and afforded the treatment provided
> to a General Unsecured Claim against Tribune. (emphasis added).

23.     On January 24, 2011, the Court heard argument from the parties concerning the
amount of the Indenture Trustee Fees that should be allowed for voting purposes.  Neither the
Debtors nor the Committee disputed that the PHONES Indenture Trustee Fees should be
classified in Class 1F Other Parent Claims.  In fact, Kevin Lantry of Sidley Austin stated in
relevant part ". . . there is a fundamental distinction on the Wilmington Trust. I don't think we
dispute about classification, we dispute the amount."  Hearing Tr. Jan. 24, 2011, at 37:7-13
(Attached as Exhibit B).  David LeMay of Chadbourne & Parke for the Committee also stated in
relevant part:

> . . . I think it's important to note . . . that we do not dispute the classification of
> Wilmington Trust's reasonable fees in the other parent class for voting purposes . . . I
> think to the extent reasonable fees are incurred because the indenture does not
> subordinate those fee claims, the reasonable fee and expense claims of Wilmington
> Trust counsel do belong in the other parent class.

Hearing Tr. Jan. 24, 2011, at 45:1-14.  Nevertheless, the D/C/L Plan filed almost two weeks
later, on February 4, 2011, did not correct this issue.  Instead, the D/C/L Plan continues to treat

the Indenture Trustee Fees in the same manner as it did prior to the joint admission at the January 24, 2011 hearing that the Indenture Trustee Fees were properly classified in Class 1F.

24.     Thus, the Debtors still contemplate that the Court will make findings to determine the proper classification of the Indenture Trustee Fees.  This Court should affirm the prior concession of the Debtors and the Committee that the Indenture Trustee Fees are separate and distinct from the PHONES Claims and entitled to the same treatment as other general unsecured obligations in Class 1F Other Parent Claims.  Failure to correct this substantial error renders the D/C/L Plan unconfirmable.  See In re Combustion Eng'g, Inc., 391 F.3d 190, 239-42 (3d Cir. 2004) (noting that discrimination against creditors violates the fundamental bankruptcy policy of equality of distribution among creditors); see also In re New Century TRS Holdings, Inc., 407 B.R. 576, 592 (D. Del. 2009) (". . . if claims within the same class are not receiving the same treatment, and the holders of those claims being treated less favorably have not consented to the discrimination, the plan is not confirmable").

IV.     **The D/C/L Plan Renders the PHONES Complaint Futile**

25.     On March 4, 2010, Wilmington Trust, as Indenture Trustee, filed the PHONES Complaint, seeking relief against the PHONES Complaint Defendants for causes of action including equitable disallowance, equitable subordination and the imposition of a constructive trust.  See PHONES Complaint at ¶ 2.  Despite the serious and substantial questions raised by the PHONES Complaint as to the recovery rights of the PHONES Complaint Defendants, the D/C/L Plan treats the PHONES Complaint like it never happened and settles these claims with the PHONES Complaint Defendants with no direct compensation to the PHONES.  See D/C/L Plan at §3.2.3 (providing substantial recoveries to the LBO Lenders, without "reduction, disallowance, subordination, set off, or counterclaim").  The D/C/L Plan even provides in

Section 11.3 for a Bar Order, which operates to prohibit the PHONES from receiving any recoveries against the settling defendants.

26.     Distribution of proceeds to, and satisfaction of the claims of, the PHONES Complaint Defendants will effectively render futile several causes of action in the PHONES Complaint, including equitable disallowance and equitable subordination. See, e.g., In re Levitz Furniture, Inc., 267 B.R. 516 (Bankr. D. Del. 2000) (addressing concern that confirmation of the plan of reorganization would moot the equitable relief sought by the Defendants); In re Big Wheel Holding Co., Inc., 214 B.R. 945 (D. Del. 1997) (addressing plaintiffs concern that disbursements of monies would moot their equitable subordination action).

27.     This attempt to run an "end-around" the PHONES' right to receive redress for their grievances should not be sanctioned by this Court.   As the Third Circuit has said, distributions to creditors should not be made until the amount of claims and their relative priority are fixed. See, e.g., In re Penn Central Transportation Co., 596 F.2d 1155, 1165 (3d Cir. 1979) ("[u]ntil the validity and priority of the . . . claims were finally determined through litigation, no distributions of any kind could be made"); see also In re Northwestern Corp., 362 B.R. 131, 134 (D. Del. 2007) (remanding case to bankruptcy court to avoid distributions before resolution of disputed claims).  The D/C/L Plan does not provide a mechanic to facilitate the resolution of the PHONES Complaint **without prejudice** to holders of PHONES. See, e.g., In re Wile, 304 B.R. 198, 202 (Bankr. E.D. Pa. 2004) (adjourning confirmation multiple times pending resolution of two adversary proceedings); In re Eastern Steel Barrel Corp., 164 B.R. 477, 479 (Bankr. D.N.J. 1994) (adjourning confirmation hearing pending resolution of adversary proceeding).  Though the Debtors and the Committee are settling **estate claims** against the LBO Lenders, this does not entitle them to purport to settle individual claims against the LBO Lenders, including those held

by the PHONES.  Accordingly, the Plan should not be confirmed absent proper preservation of

the PHONES individual causes of action.

     **WHEREFORE,** for the reasons set forth herein, PHONES Indenture Trustee, requests

that this Court: (a) find that the D/C/L Plan is not confirmable as a matter of law; (b) find that the

Indenture Trustee Fees are Class 1F Other Parent Claims; (c) declare that the PHONES are not

subordinated for purposes of distributions from the D/C/L Creditors' Trust; and (d) grant such

other and further relief to Wilmington Trust as is just and proper under the circumstances.

Dated:   Wilmington, Delaware          Respectfully submitted,
        February 15, 2011

                                    **SULLIVAN HAZELTINE ALLINSON LLC**

            By:      */s/ William D. Sullivan*
                       William D. Sullivan, Esq. (Del. Bar No. 2820)
                       Elihu E. Allinson, Esq. (Del. Bar No. 3476)
                       4 East 8th Street, Suite 400
                       Wilmington, DE 19801
                       Telephone:  (302) 428-8191
                       Facsimile: (302) 428-4195
                       Email: bsullivan@sha-llc.com
                       Email: zallinson@sha-llc.com

                       -and-

                       **BROWN RUDNICK LLP**
                       Robert J. Stark, Esq.
                       Martin S. Siegel, Esq.
                       Gordon Z. Novod, Esq.
                       Katherine S. Bromberg, Esq.
                       Seven Times Square
                       New York, New York 10036
                       Telephone:  (212) 209-4800
                       Facsimile:  (212) 209-4801
                       Email: rstark@brownrudnick.com
                       Email: msiegel@brownrudnick.com
                       Email: gnovod@brownrudnick.com
                       Email: kbromberg@brownrudnick.com

                       *Counsel to Wilmington Trust Company, as*
                       *Successor Indenture Trustee for the $1.2 Billion*
                       *Exchangeable Subordinated Debentures Due 2029,*
                       *Generally Referred to as the PHONES*