# EXHIBIT B

```
                 IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE

IN RE:                          )    Chapter 11
                                )
                                )
TRIBUNE COMPANY, et al.,        )    Case No. 08-13141 (KJC)
                                )
                                )    Courtroom 5
                                )    824 Market Street
            Debtors.            )    Wilmington, Delaware
                                )
                                )    January 24, 2011
                                )    11:09 a.m.
```

```
                     TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE KEVIN J. CAREY
                  UNITED STATES BANKRUPTCY JUDGE
```

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For Debtor: | Sidley Austin, LLP<br>BY:  JAMES BENDERNAGEL, ESQ.<br>BY:  KEVIN LANTRY, ESQ.<br>BY:  JAMES DUCAYET, ESQ.<br>BY:  JESSICA BOELTER, ESQ.<br>One South Dearborn<br>Chicago, IL  60603<br>(213) 896-6022 |
| | Cole, Schotz, Meisel, Forman &<br>Leonard, PA<br>BY:  NORMAN PERNICK, ESQ.<br>1000 North West Street<br>Suite 1200<br>Wilmington, DE  19801<br>(302) 652-3131 |
| ECRO: | AL LUGANO |
| Transcription Service: | DIAZ DATA SERVICES<br>331 Schuylkill Street<br>Harrisburg, Pennsylvania 17110<br>(717) 233-6664<br>www.diazdata.com |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

```
 1  APPEARANCES:
    (Continued)
 2
    For The Creditors Committee:    Landis Rath & Cobb
 3                                  BY:   DANIEL B. RATH, ESQ.
                                    BY:   ADAM G. LANDIS, ESQ.
 4                                  919 Market Street Suite 1800
                                    P.O. Box 2087
 5                                  Wilmington, DE 19899
                                    (302) 467-4400
 6
                                    Chadbourne & Parke LLP
 7                                  BY:   DAVID LEMAY, ESQ.
                                    BY:   MARC ASHLEY, ESQ.
 8                                  BY:   HOWARD SEIDE, ESQ.
                                    BY:   THOMAS MCCORMACK, ESQ.
 9                                  30 Rockefeller Plaza
                                    New York, NY 10112
10                                  (212) 408-5100

11                                  Zuckerman Spaeder LLP
                                    BY:   JAMES SOTTILE, ESQ.
12                                  1800 M Street
                                    Suite 1000
13                                  Washington, DC 20036-5807
                                    (202) 778-1800
14
    For JP Morgan Chase:            Davis Polk & Wardwell
15                                  BY:   DONALD BERNSTEIN, ESQ.
                                    BY:   DAMIAN SCHAIBLE, ESQ.
16                                  450 Lexington Avenue
                                    New York, NY 10017
17                                  (212) 450-4000

18                                  Richards Layton & Finger
                                    BY:   ROBERT J. STEARN, JR., ESQ.
19                                  One Rodney King Square
                                    920 North King Street
20                                  Wilmington, DE 19801
                                    (302) 651-7612
21
                                    Wiley Rein, LLP
22                                  BY:   EVE REED, ESQ.
                                    BY:   JAMES R.W. BAYES, ESQ.
23                                  1776 K Street
                                    Washington, DC  20006
24                                  (202) 719-7404

25
```

```
 1  APPEARANCES:
    (Continued)
 2
    For Merrill Lynch:              Potter Anderson & Corroon LLP
 3                                  BY: LAURIE SELBER SILVERSTEIN
                                    Hercules Plaza
 4                                  1313 North Market Street
                                    6th Floor
 5                                  Wilmington, DE 19801
                                    (302) 984-6000
 6
                                    Kaye Scholer, LLP
 7                                  BY:  MADLYN GLEICH PRIMOFF, ESQ.
                                    BY:  JOSEPH DRAYTON, ESQ.
 8                                  425 Park Avenue
                                    New York, NY  10022-3598
 9                                  (212) 836-7042

10  For Wilmington Trust:           Sullivan Hazeltine & Allinson
                                    BY:  WILLIAM SULLIVAN, ESQ.
11                                  4 East 8th Street, Suite 400
                                    Wilmington, DE 19801
12                                  (302) 250-4357

13                                  Brown Rudnick
                                    BY:  ROBERT STARK, ESQ.
14                                  BY:  GORDON Z. NOVOD, ESQ.
                                    BY:  MARTIN SIEGEL, ESQ.
15                                  Seven Times Square
                                    New York, NY 10036
16                                  (212) 209-4800

17  For DBTCA:                      McCarter & English LLP
                                    BY:  DAVID ADLER, ESQ.
18                                  BY:  KATHARINE MAYER, ESQ.
                                    245 Park Avenue
19                                  27th Floor
                                    New York, NY 10167
20                                  (212) 609-6800

21  For Barclays Bank:              Edwards Angell Palmer & Dodge
                                    BY:  R. CRAIG MARTIN, ESQ.
22                                  919 North Market Street
                                    15th Floor
23                                  Wilmington, DE 19801
                                    (302) 777-7770
24
                                    Latham & Watkins
25                                  BY:  ROBERT ROSENBERG, ESQ.
                                    BY:  JASON SANJANA, ESQ.
                                    885 Third Avenue
                                    New York, NY  10022-4834
                                    (212) 906-1370
```

4

```
 1   APPEARANCES:
     (Continued)
 2
     For Aurelius Capital              Ashby & Geddes, P.A.
 3   Management LP:                    BY:   WILLIAM P. BOWDEN, ESQ.
                                       BY:   AMANDA M. WINFREE, ESQ.
 4                                     500 Delaware Avenue
                                       P.O. Box 1150
 5                                     Wilmington, DE 19899-1150
                                       (302) 654-1888
 6
                                       Akin Gump Strauss Hauer & Feld
 7                                     BY:   DANIEL H. GOLDEN, ESQ.
                                       BY:   DAVID M. ZENSKY, ESQ.
 8                                     BY:   PHILIP C. DUBLIN, ESQ.
                                       BY:   ABID QURESHI, ESQ.
 9                                     One Bryant Park
                                       New York, NY 10036
10                                     (212) 872-1000

11   For Credit Agreement             Young Conaway Stargatt & Taylor
     Lenders:                         BY:   BLAKE CLEARY, ESQ.
12                                     The Brandywine Building
                                       1000 West Street 17th Floor
13                                     P.O. Box 391
                                       Wilmington, DE 19801
14                                     (302) 571-6600

15                                     Hennigan Bennett & Dorman LLP
                                       BY:   JAMES O. JOHNSTON, ESQ.
16                                     BY:   JOSHUA M. MESTER, ESQ.
                                       865 South Figueroa
17                                     Suite 2900
                                       Los Angeles, CA 90017
18                                     (213) 694-1200

19   For Wells Fargo                  Fox Rothschild LLP
     As Bridge Agent:                 BY:   ERIC SUTTY, ESQ.
20                                     Citizens Bank Center
                                       919 North Market Street
21                                     Suite 1300
                                       P.O. Box 2323
22                                     Wilmington, DE 19899-2323
                                       (302) 654-7444
23
                                       White & Case LLP
24                                     BY:   SCOTT GREISSMAN, ESQ.
                                       1155 Avenue of the Americas
25                                     New York, NY 10036-2787
                                       (212) 819-8200
```

5

```
 1   APPEARANCES:
     (Continued)
 2
     For Law Debenture:            Bifferato Gentilotti
 3                                 BY:  GARVAN F. MCDANIEL, ESQ.
                                   800 North King Street
 4                                 Plaza Level
                                   Wilmington, DE 19801
 5                                 (302) 429-1900

 6                                 Kasowitz Benson Torres &
                                   Friedman LLP
 7                                 BY:   SHERON KORPUS, ESQ.
                                   BY:   MATTHEW STEIN, ESQ.
 8                                 1633 Broadway
                                   New York, NY 10019
 9                                 (212) 506-1700

10   For SuttonBrook Capital
     Management, LP:               Schulte Roth Zabel LLP
11                                 BY:   LAWRENCE GELBR, ESQ.
                                   919 Third Avenue
12                                 New York, NY  10022
                                   (212) 756-2460
13
                                   Klehr Harrison Harvey Branzburg
14                                 BY:   MICHAEL YURKEWICZ, ESQ.
                                   919 Market Street, Suite 1000
15                                 Wilmington, DE  19801-3062
                                   (302) 552-5519
16
     For Barclays Bank:            Edwards Angell Palmer Dodge
17                                 BY:   R. CRAIG MARTIN, ESQ.
                                   919 N. Market Street, 15$^{th}$ Floor
18                                 Wilmington, DE  19801-
                                   (302) 425-7139
19
     For Morgan Stanley:           Barnes & Thornburg
20                                 BY:   DAVID POWLEN, ESQ.
                                   1000 North West St., Suite 1200
21                                 Wilmington, DE  19801-1058
                                   (302)888-4536
22
     For EGI-TRB & Zell:           Jenner & Block
23                                 BY:   DAVID BRADFORD, ESQ.
                                   353 Clark Street
24                                 Chicago, IL  60654-3456
                                   (312) 923-2976
25
```

6

```
 1 | TELEPHONIC APPEARANCES:

 2 | For Debtor:                    Tribune Company
   |                                BY:  DAVID ELDERSVELD
 3 |                                BY:  DON LIEBENTRITT
   |                                BY:  GARY WEITMAN
 4 |                                BY:  MICHAEL D. O'NEAL
   |                                (312) 853-7778
 5 |
   |                                Sidley Austin
 6 |                                BY:  JILLIAN LUDWIG, ESQ.
   |                                BY:  CANDACE KLINE, ESQ.
 7 |                                BY:  DAVID MILES, ESQ.
   |                                BY:  BRIAN KRAKAUER, ESQ.
 8 |                                BY:  GREG DEMO, ESQ.
   |                                BY:  KEN KANSA, ESQ.
 9 |                                BY:  ALLICON E. ROSS, ESQ.
   |                                BY:  KERRIANN MILLS, ESQ.
10 |                                (312) 853-7030

11 | For Bank of America:           O'Melveny & Myers
   |                                BY:  DANIEL CANTOR, ESQ.
12 |                                (212) 326-2000
   |                                BY:  DANIEL S. SHAMAH, ESQ.
13 |                                (212) 326-2138

14 |                                Bank of America
   |                                BY:  ESTHER CHUNG
15 |                                (646) 855-6705

16 | For Wilmington Trust           Camden Asset Management
   | Company:                       BY:  MARK HOLLIDAY
17 |                                (503) 243-5000

18 |                                Brown Rudnick, LLP
   |                                BY:  JARED ELLIAS, ESQ.
19 |                                (212)209-4889
   |                                BY:  KATHERINE BROMBERG, ESQ.
20 |                                BY:  ANDREW DASH, ESQ.
   |                                (212)209-4929
21 |

22 | For Angelo Gordon & Company:   Wilmer Cutler Pickering Hale &
   |                                Dorr
23 |                                BY:  ANDREW N. GOLDMAN, ESQ.
   |                                (212) 230-8836
24 |
   |                                Angelo Gordon & Co., LP
25 |                                BY:  GAVIN BAIERA
   |                                (212) 692-0217
```

```
1  TELEPHONIC APPEARANCES:
   (Continued)
2
   For EGI-TRB LLC:            Jenner & Block LLP
3                              BY:  ANDREW VAIL, ESQ.
                               (312) 840-8688
4
5  For Citigroup:             Paul Weiss Rifkind Wharton &
                               Garrison LLP
6                              BY:  ANDREW LEVY, ESQ.
                               BY:  ANDREW GORDON, ESQ.
7                              BY:  OKSANA LASHKO, ESQ.
                               BY:  SHANNON PENNOCK, ESQ.
8                              (212) 373-3543

9  For Anna Kalenchits:       BY:  ANNA KALENCHITS
                               (212) 723-1808
10
11 For JPMorgan Chase Bank:   BY:  KEVIN C. KELLEY
                               (212) 648-0427
12
   For Barclays:              Mayer Brown LLP
13                             BY:  MICHAEL L. SIMES, ESQ.
                               BY:  AMIT K. TREHAN, ESQ.
14                             BY:  JEAN-MARIE ATAMIAN, ESQ.
                               (212) 506-2607
15
                               Barclays Capital, Inc.
16                             BY:  RICHARD DIVITO, ESQ.
                               (212)412-6743
17
   For Kramer Levin:          BY:  DAVID E. BLABEY, JR., ESQ.
18                             (212) 715-9100

19 For SuttonBrook Capital    BY:  CAROL L. BALE
   Management:                 (212) 588-6640
20
21 For David & Kempner:       DK Partners
                               BY:  EPHRAIM DIAMOND
22                             (646) 282-5841

23 For Aurelius Capital       Akin Gump Strauss Hauer & Feld
   Management:                 BY:  PHILLIP DUBLIN, ESQ.
24                             BY:  JASON GOLDSMITH, ESQ.
                               BY:  KRISTINA WESCH, ESQ.
25                             (212) 872-1000
```

```
 1   TELEPHONIC APPEARANCES:
     (Continued)
 2
                            Aurelius Capital Management
 3                          BY:  MATTHEW ZLOTO, ESQ.
                            (646) 445-6518
 4
                            The Lerman Senter
 5                          BY:  SALLY A. BUCKMAN, ESQ.
                            (202)416-6762
 6
                            Friedman Kaplan Seller & Adelman
 7                          BY:  KIZZY L. JARASHOW, ESQ.
                            (212)833-1115
 8
 9   For Jefferies & Company:   BY:  JUSTIN BRASS
                                (203) 708-5847
10
11   For Oaktree Capital        BY:  EDGAR LEE
     Management:                (213) 830-6415
12
     For Alvarez & Marsal Inc.: BY:  BRIAN WHITTMAN
13                              (312) 601-4227

14   For Brigade Capital        Brigade Capital Management
     Management:                BY:  NEIL S. LOSQUADRO, PRO SE
15                              (212) 745-9758

16   For George Dougherty:      BY:  GEORGE DOUGHERTY
                                (312) 719-8723
17
     For Great Bank Trust:      Morgan Lewis & Bockius LLP
18                              BY:  RACHEL MAUCERI, ESQ.
                                (215) 963-5000
19
     For Royal Bank of Scotland: BY:  COURTNEY ROGERS
20                               (203) 897-4815

21   For Dow Jones News Wires:  Dow Jones & Co.
                                BY:  PEG BRICKLEY
22                              (215) 462-0953

23   For Goldman Sachs & Co.:   BY:  SCOTT BYNUM
                                (212) 902-8060
24
     For EOS Partners:          BY:  MIKE J. SCHOTT
25                              (212) 593-4046
```

```
 1  TELEPHONIC APPEARANCES:
    (Continued)
 2
    For The Official Committee      Chadbourne & Parke LLP
 3  of Unsecured Creditors:         BY:   DOUGLAS DEUTSCH, ESQ.
                                    BY:   HOWARD SEIFE, ESQ.
 4                                  BY:   DAVID LEMAY, ESQ.
                                    BY:   MARC ROITMAN, ESQ.
 5                                  (212) 408-5169

 6  For Trade Claim Holders:        Andrew & Kurth LLP
                                    BY:   ABHISHEK MATHUR, ESQ.
 7                                  BY:   JEREMY RECKMEYER, ESQ.
                                    BY:   PAUL SILVERSTEIN, ESQ.
 8                                  (212) 850-2822

 9  For Katten Muchin Rosenman:     BY:   JOHN SIEGER, ESQ.
                                    BY:   ANDREW L. WOOL, ESQ.
10                                  (312) 902-5294

11  For Deutsche Bank:              McCarter & English
                                    BY: DAVID J. ADLER, ESQ.
12                                  (212)609-6800

13
    Credit Agreement Lenders:       Hennigan Bennett & Dorman, LLP
14                                  BY:  BRUCE BENNETT, ESQ.
                                    (213_ 694-1012
15
    For Moelis:                     DLA Piper US, LLP, New York
16                                  BY:  JASON M. KARAFFA, ESQ.
                                    (212)335-4526
17
    For Special Committee of the
18  Board of Directors:             Jones Day
                                    BY:  BRAD ERENS, ESQ.
19                                  BY:  LYNN MARVIN, ESQ.
                                    (312)269-4050
20
    For Wilmington Trust:
21  For Committee of
    Unsecured Creditors:            Zuckerman Spaeder, LLP
22                                  BY:  GRAENE BUSH, ESQ.
                                    BY:  ANDREW GOLDFARB, ESQ.
23                                  (2020 778-1800

24  For Michael D'Agostino:         Bingham McCutchen, LLP
                                    BY:  MICHAEL D'AGOSTINO, ESQ.
25                                  (860) 240-2731
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)

 3
     For Citi Bank:                Paul Weiss Rifkind Wharton &
 4                                 Garrison, LLP
                                   BY:  KIRA DAVIS, ESQ.
 5                                 (212) 373-3000

 6   For Morgan Stanley:           Weil Gotshal & Manges, LLP
                                   BY:  ASHISH D. GANDHI, ESQ.
 7                                 BY:  DAVID LITVACK, ESQ.
                                   (212)310-8024
 8
     For Debenture Trust Company:  Kasowitz Benson Torres &
 9                                 Friedman
                                   BY:  DAVID ROSNER, ESQ.
10                                 (212)506-1726

11   For Wells Fargo:              White & Case, LLP
                                   BY:  SCOTT GREISSMAN, ESQ.
12                                 (212)819-8567

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    WILMINGTON, DELAWARE, MONDAY, JANUARY 24, 2011, 11:09 A.M.

2          THE CLERK:  All rise.  Be seated, please.

3          THE COURT:  Good morning, everyone.

4          ALL:  Good morning, Your Honor.

5          MR. PERNICK:  Your Honor, Norman Pernick from

6 Cole Schotz on behalf of the debtor, Tribune.

7          Your Honor, we have three groups of motions that

8 are on for today.  Standing which is Number 1, the

9 committees' motion to confirm standing.  Then Numbers 2

10 through 5 which are the various estimation motions.  And

11 then Numbers 6 through 12 which all relate to discovery.

12

13          Your Honor, let me just jump to 6 through 12 for

14 a moment because Number 9 is resolved.  And that is the

15 noteholder plan proponents motion to compel.  Number 11 was

16 actually most, just mostly resolved which is Law Debenture's

17 motion to compel vs. Angelo Gordon, Oaktree, and Hennigan

18 Bennett.  That's resolved except for the FCC and the start

19 date issues.  And I understand on Item Number 8 which is Law

20 Debenture's motion to compel vs. the non-proponent credit

21 agreement letters, that that one is close to resolved, but

22 not resolved yet.

23          THE COURT:  Well, except for those matters that

24 are unresolved or in which the parties may wish some further

25 guidance or on which the Court is required to make a ruling,

1  it was too late for anyone else be it a bondholder, the

2  committee, or an individual creditor to weigh in.

3           So I think that all argues in favor of Mr.

4  Lantry's suggestion that now may not be the time.  And

5  that's really all I've got to say on this one, Your Honor,

6  unless the Court has questions.

7           THE COURT:  I do not.

8           MR. LEMAY:  Thank you.

9           THE COURT:  All right.  I think that covers

10 everyone who's filed a pleading in connection with this

11 particular motion.  I think what I'm going to do is at some

12 point we'll take a break and I'll make my rulings after a

13 break.  Let's move onto the Number 3.

14

15          MR. STARK:  Good morning, Your Honor.

16          THE COURT:  Good morning.

17          MR. STARK:  Robert Stark from Brown Rudnick also

18 appearing on behalf of Wilmington Trust, the successor

19 indenture trustee for the PHONES.

20          If I may and I'm co-opting other people's

21 motions, it might be useful to consider Agenda Items 3, 4,

22 and 5 together presuming that Deutsche Bank and Law

23 Debenture are in agreement with that since they all

24 essentially say the same thing.

25          THE COURT:  Let me get my original score card.

1        MR. STARK:   I have another if Your Honor would

2   like.

3        THE COURT:   Just a moment.   That's fine with me.

4   How do other parties feel?

5        MR. ADLER:   Acceptable to Deutsche Bank, Your

6   Honor.

7        MR. LANTRY:   Your Honor, there is a fundamental

8   distinction on the Wilmington Trust.   I don't think we

9   dispute about classification, we dispute the amount.   On the

10  other two, we dispute the classification issue.   In fact, I

11  think that's the central point.   So they are

12  distinguishable.

13

14       THE COURT:   Let's take them in order.

15       MR. STARK:   Okay.   All right.   The Wilmington

16  Trust motion, Your Honor is under 3018.   Allowance of the

17  indenture trustee's claims itself is separate and distinct

18  from the underlying notes, the PHONES notes themselves.   And

19  we request Your Honor's entry of an order that enables

20  Wilmington Trust to vote as a creditor of the estate

21  pursuant to other provisions of indenture that are separate

22  and distinct from the rights of the noteholders themselves

23  and are frankly unsubordinated.

24

25       If I may, Your Honor, very quickly walk through

    the indenture.   It's attached to the motion papers.   If Your

1  Honor would like to follow along, otherwise I can just

2  summarize what the provisions are that are applicable.

3            THE COURT:  Summarize them, that will be fine.

4            MR. STARK:  6.07 on Page 39 of the PHONES

5  indenture provides that in addition to obligations that the

6  debtors have vis-a-vis the PHONES noteholders and the

7  underlying security, the debtors are also contractually

8  obligated to pay Wilmington Trust, its successor indenture

9  trustee for its reasonable fees and professional expenses,

10 as well as, other expenses that are incurred in connection

11 with protecting the interest of the PHONES noteholders

12 themselves.  Those are separate and distinct from the actual

13 principal and interest obligations on the underlying notes.

14 14.01 --

15            THE COURT:  And the debtor has said we'll amend

17 the plan to put in parallel language.

18            MR. STARK:  Okay.  We --

19            THE COURT:  Allowing reasonable fees.

20            MR. STARK:  I understand.  And, Your Honor, we

21 can walk through all the objections and see what's

22 effectively pertinent in this stage or not.

23            THE COURT:  Okay.

24            MR. STARK:  14.01 on Page 61 of the indenture is

25 the subordination language so Article 14 is the

1  subordination article.  And 14.01 is the primary applicable

2  subordination provision and refers only to the securities

3  capital S securities defined term as the obligation of the

4  indenture which are subordinated to senior indebtedness

5  creating the contractual subordination provisions.  And if

6  those definitions because the way they read aren't otherwise

7  clear enough on the point, 14.13 on Page 68 of the indenture

8  makes it imminently clear that the indenture trustee's fees

9  and expenses themselves, those obligations of the company

10  under 6.07 to pay are not subordinated.

11

12          It couldn't be any clearer and I gather now Mr.

13  Lantry is saying that there's not even a dispute on that.

14  And I believe the case law that we've cited also remains

15  undisputed.  In particular, we cited Judge Walsh's decision

16  in the *Open Homes* case, but there were others cited too,

17  that an indenture trustee like any creditor that reserves in

18  the underlying contract the right to payment of fees and

19  expenses as part of its claim gets added to the claim even

20  if those fees and expenses are accruing and growing post

21  petition.

22          THE COURT:  Okay.  So let's talk about what is

23  disputed here.

24          MR. STARK:  Okay.  There are three -- I'll sort

25  of categorize them as three categories of objections.  The

1    first is that this is all very unnecessary.  The second is

2    that we haven't proven the entitlement at least as far as

3    the quantum of claim is concerned.  And the third, that

4    facially the amount that we've asserted is unreasonable.

5    And I'll take those in turn as much as Your Honor would

6    like.

7              As far as unnecessary, the argument sort of goes

8    like this.  We predict, we the debtors and the committee

9    predict that the general unsecured claim pool at the parent

10   company level will vote in favor of this plan and that's the

11   end of the story and, therefore, our vote is really rather

12   unnecessary.

13

14             I don't think I have to cite to too much in this

15   record to establish -- because I think it's already fairly

16   well established that very little that the debtors have

17   predicted so far in this case has actually proven itself to

18   be a good prognostication.  This case has actually revolved

19   and turned in many different ways and prognostication I

20   think at this point is probably a very thin read if any read

21   at all to sort of hang the hat on the fact that our class

22   vote isn't any relevancy.  But frankly, that's not even

23   legal.  That's not a basis by which somebody who has a

24   properly asserted claim doesn't get to vote or gets

25   disenfranchised because they think it's irrelevant to them.

1          The second is we haven't proven the entitlement.

2   Your Honor, we did submit just the other day an affidavit of

3   my partner, Gordon Novod which actually has the invoices

4   themselves.  And our invoice and that's just for Brown

5   Rudnick's invoices.  We have other counsel and professionals

6   we haven't asked for those to be added onto the $14.16

7   million in fees, time charges, and expenses that Brown

8   Rudnick has accrued and invoiced to Wilmington Trust.  We'll

9   go just with Brown Rudnick.  There have been no discovery

10  requests delivered to us and so we would presume that those

11  invoices facially are sufficient.  If not, Your Honor, I

12  have 14,000 hours of time descriptions, all 600 pages of

13  them ready here for you, Your Honor.  Okay?  It's a stack

14

15  this big.

16          THE COURT:  Nice to know you have that, Mr.

17  Stark.

18          MR. STARK:  And, Your Honor, if they had actually

19  delivered discovery demands upon us. we would have a very

20  interesting issue because obviously it's an attorney client

21  communication and we're in a hot contested litigation right

22  now.  So we would have a lot of difficulty turning that

23  over, but I'm very happy to give it to Your Honor to look at

24  in camera if Your Honor would be so inclined to look at

25  that.

1          THE COURT:  Well so is your request still to have

2    the claim temporarily allowed in the amount of $10 million

3    or has that gone up now?

4          MR. STARK:  $14.16 that's what the invoice backup

5    is and will be submitted with that affidavit.  It's docket

6    number 7619 for anybody who wants to follow along on the

7    docket.

8          THE COURT:  Yeah, I just received it this

9    morning.  I have not had the opportunity to review it.  I

10   have it here on the bench, but it came in just to my

11   attention moments before I took the bench.

12

13         MR. STARK:  I apologize, Your Honor.

14         THE COURT:  But the narrative part of it is very

15   short.

16         MR. STARK:  Okay.  That takes us to the third

17   objection which is facially unreasonable.  I believe it's

18   the committee that sort of addressed -- aggressively sort of

19   pursued this.  And I gather everything we do to them is

20   facially unreasonable.  We've been sort of counter to their

21   views in this case for a very long time.  So I don't think

22   thematically we can -- we necessarily have to go through all

23   of the categories of stuff that did that they don't view as

24   very reasonable according to their particular case strategy,

25   but suffice it to say we've had differences of opinion.  And

1  fortunately for us, reasonableness is not measured by

2  whether or not it's helpful to their particular case.

3         Our job is to protect the PHONES holders.  And

4  our indenture and our obligation under the indenture is

5  reasonableness in protecting the rights of the PHONES

6  holders.

7         So all of that work we did to get an examiner

8  appointed and being involved in the examination providing

9  extensive briefing and investigation going through all of

10  those documents and giving them to Mr. Clee [ph] are

11  perspectives.  Being a joint plan proponent with Aurelius

12  and the other indenture trustees may be counter to their

13  view of case strategy, but certainly is reasonable from a

14  prospective of what the PHONES noteholders need.

15

16         And I will assure you, Your Honor, since most of

17  my fees are covered by way of charging lien and are

18  therefore somewhat contingent in statutory -- excuse me, in

19  its indenture contractual bases, it's a lien.  We didn't

20  overstaff a case where we're not getting a current fee.

21         So, Your Honor, this has been a hard case as we

22  all know --

23         THE COURT:  Are you saying the opposite would be

24  true?

25                      (Laughter)

1          MR. STARK: Well, to some, Your Honor, I -- well,

2     it does -- that does pose an interesting point of view, Your

3     Honor.  Reasonableness as far as I've always been told is a

4     comparative context.  Reasonableness in comparison to what?

5     Reasonableness and comparison to the work that you did?

6     Reasonableness and comparison to what everybody else billed

7     for doing similar work across the aisle.

8          I have been told and I read it in the pleadings

9     that the estate professionals whose fee applications are

10    submitted to Your Honor, have billed in excess of $100

11    million in this case.  I have seen four iterations of lender

12    disclosures about what Davis Polk and all the other

13    professionals have billed to this estate and I notice in the

14    latest one if I tally up at least three of those, I get to

15    more than $17 million just on Davis Polk alone.

16

17         This is a hard case.  People have worked very

18    hard.  We have too.  But if reasonableness is measured by

19    way of comparison, I think ours are eminently reasonable

20    compared to what everybody else has done.

21         Your Honor, we'd ask the motion be granted.

22         THE COURT:  Thank you.  Okay.  I'm going down the

23    agenda, I'll hear from the committee.

24         MR. LEMAY:  Good morning, again, Your Honor.

25    David LeMay again for the creditors' committee.

1       First, I think it's important to note and this

2  will become relevant later when we talk about the two other

3  indenture trustees, that we do not dispute the

4  classification of Wilmington Trust's reasonable fees in the

5  other parent class for voting purposes.  That other parent

6  class under the plan that the committee is a co-proponent of

7  was intentionally designed to be in effect a catch all for

8  claims that don't belong anywhere else.

9

10      And Mr. Stark is right.  I think to the extent

11 reasonable fees are incurred because the indenture does not

12 subordinate those fee claims, the reasonable fee and expense

13 claims of Wilmington Trust counsel do belong in the other

14 parent class.  So that's off the table.  I'm really using it

15 to pre-figure some things that will become relevant later.

16      But a number of things were just said, some of

17 which I think are -- bear a little bit of picking apart,

18 unpacking and clarifying.

19      First, it was said that the debtor and the

20 committee urged that this issue was not ripe because the

21 vote will come in a certain way.  And I believe the debtors'

22 papers do say something along those lines.  I just want to

23 point out that that's not anything the committee has said

24 and we've not urged that upon Your Honor and we don't.

25

1            So let's then get to the substance.  And the

2    substance really has to do with the reasonableness of

3    Wilmington Trust's fees.  Mr. Stark has made the point that

4    narrative detail, the kind of narrative detail that one

5    usually asks for and gets in assessing professional fees

6    would be hard to do here because it involves attorney/client

7    privilege.  And he's right.  And we've been handling that

8    with our monthly fee applications since the day the case was

9    filed.  If you want to know how much time David LeMay spent

10    on project X in the course of this case, you can find out.

11    Now does it give all my deep thinking, all my work product,

12    no, of course, it doesn't.  But at least it gives you some

13    measure to know what I and Mr. Seife and our colleagues and

14    what Zuckerman Spaeder and I think the same with the

15    committee have been doing.  How many people, how much time.

16

17            Mr. Stark says that no discovery was requested.

18    Well I guess that's true, but I don't think he'll disagree

19    that we've been chasing him and his colleagues up now since

20    the motion was firs filed last spring to provide detail that

21    would allow us to make an assessment of reasonableness.  I

22    don't know how one can make an assessment of reasonableness

23    even for voting purposes based on what's in front of Your

24    Honor.

25

1    I was looking through these Brown Rudnick

2  invoices and I do think I want to correct, Mr. Stark, they

3  did include the invoices of the Benesch Friedlander firm.

4  But if you look at the invoices, what they say is

5  professional services rendered and then there's on each one

6  a dollar number.  There's no attribution of time to

7  individual professionals.  There's no description even in a

8  summary way of what was spent.

9

10    So really all you have is dollars.  And what I

11  guess is being said is that $14 million is prima facie

12  reasonable.  I don't take the position that $14 million is

13  prima facie unreasonable.  I don't know if it's reasonable

14  or not.  All I've got is a bunch of one line invoices to

15  look at and I don't know how the Court would form that view.

16    I know that in assessing amounts for voting

17  purposes, it certainly is the case in the Bar and I believe

18  possibly also among the Courts that a somewhat looser

19  standard is often applied than in assessing claims for

20  actual allowance purposes.  After all --

21            THE COURT:  Certainly.

22            MR. LEMAY:  -- it's sometimes said it's just

23  voting.  But you need something.  I think the Court needs

24  something and the parties need something.

25

1          An interesting comment happened earlier today and

2   it was a comment by Mr. Rosenberg which I hate to pick on

3   him, but I fear he may be right.  And this was not from our

4   side of the table, it wasn't from the committee, it was from

5   the holder of the funds note saying there's not really much

6   here for the PHONES.  Now I'm sure he wishes to unsay that,

7   but those words were said.  That, Your Honor, goes to the

8   question what level of activity, what level of litigation,

9   what level of legal effort is appropriate and thus

10  reasonable for subordinated constituency.

11

12         We have not said what they have done is

13  reasonable or unreasonable.  What we've said is we have no

14  basis to assess it and we don't think you do either, Your

15  Honor.  As I say, I think Mr. Rosenberg's comments do expose

16  the elephant in the room here which is that Wilmington Trust

17  counsel have been laboring mightily to produce the recovery

18  for a class that under its constituent documents is deep in

19  the hole.  Will they get a recovery?  Maybe they will.

20  Maybe they won't.  But when you hear one of the funds

21  holders themselves saying that this is a skinny case, I

22  think it gives the Court the pause.  And the Court should, I

23  think require some quantum of meaningful information about

24  who did what and why in order to form a view about

25  reasonableness.

1       I don't think that means that Mr. Stark should be

2   required to give up attorney client privilege just as we

3   don't have to.  But certainly there is a mechanic and it can

4   be done to produce information that the Court could use to

5   assess reasonableness of time.

6       Now it might be said well, gee, that would be

7   tough to go back and do now in retrospect.  Well, I don't

8   know, it's probably not that tough, but if it were, it's

9   also the case that we really have been after our Wilmington

10  Trust counsel since the original motion was filed in the

11  spring of last year on this issue of reasonableness.  And I

12  might have thought that they would have been taking steps,

13  proactive steps between now and then to produce time entries

14  in a form that would permit Your Honor to make that

15  assessment.

16

17      So in sum, Your Honor, we're not saying their

18  claims are facially reasonable or facially unreasonable.

19  What we're saying is that we don't have and we don't think

20  you have any basis whatsoever to allow their claim for

21  voting purposes at $1 or at $14 million.  What our plan says

22  -- I'm sorry, sorry, Your Honor.  What the solicitation

23  procedure order that was entered by Your Honor previously

24  says is that if a claim is by its nature contingent or un-

25  quantified or unknown or un-liquidated, it's allowed and

1  voted at $1.  That's the way that the order proposes to deal

2  with issues like this.  That would be the simple solution.

3  The other solution less simple would be to bring counsel

4  back and actually have a meaningful assessment of what the

5  right amount should be.  Because right now really all we've

6  got is the ipse dixit of the law firms.

7        THE COURT:  Mr. LeMay, even assuming that I

8  agreed with everything that you've just said, this is not

9  the type of matter that should have ever gotten to this

10  point without a resolution.  And I guess it arises out of

11  just the business interests of the respective parties

12  involved here compounded as I'm hearing perhaps by the

13  course of dealing between the parties which has not resulted

14  in an agreement for a number.  But for goodness sake, you

15  ought to be able to pick a number.

16

17        And in one sense yes, it is just for voting and

18  it doesn't seem to me to be material in light of the overall

19  numbers in this case.  Now if it is you can correct me if

20  I'm wrong.  But I don't, you know, I don't know why this

21  wasn't resolved.  I mean, I can understand why many of the

22  issues that weren't resolved in this case and are yet to be

23  resolved haven't yet been resolved.  This one I don't get.

24        MR. LEMAY:  Your Honor, all I can say on that and

25  obviously it would be inappropriate for me to get deep into

1   the conversations between my firm and Mr. Stark's is that

2   we've been -- we have been chasing them up to provide

3   meaningful detail on this issue for a long time.  I won't

4   comment on why.

5           I would like to comment on your materiality point

6   though because Your Honor, I think it might possibly be

7   otherwise.  And that is this.  In the other parent claim

8   class remembering the claims are going to be voted up or

9   down within individual classes and certainly the senior

10  noteholder class has billions and billions of dollars and

11  the bondholder class has a $1.2 billion.  Within the other

12  parent claims class, that's a relatively small class.

13

14          I still think, although I don't know, that the

15  great bulk of the people in that class are going to support

16  the debtor committee lender plan.  I also anticipate,

17  however, based on some advertisements that have come from

18  the bondholder community, that there will be motions to

19  designate and other attempts to in effect whittle down what

20  I anticipate might be the positive vote on our plan from the

21  other parent claims class.

22          I don't know for certain that they'll make those

23  motions, but I won't be shocked if they do.  If they do,

24  this vote, this $15 million or $14 million could become

25  quite relevant to the issue of whether or not the other

1  parent claims class votes yes or no.  I think any motion

2  that's going to be made on that basis will fail, but things

3  remain to be seen.  And Mr. Stark is very correct that the

4  prognostications in this case are not worth a lot.

5         So I actually do think this is a material issue.

6  I agree with Your Honor that it probably should have been

7  settled and perfectly happy to go out and try to settle it.

8  I just need the tools to do so and I think Your Honor does

9  as well.

10

11         THE COURT:  Thank you.  I'll hear from the

12  debtor.

13         MR. LANTRY:  Your Honor, on this why does it

14  matter issue and why haven't we fixed it.  The voting tally

15  for this other parent claims Class 1F as of this morning was

16  123 claimants voting in favor and only two voting against in

17  the amount of 207 million in favor and only 16,000 against.

18  Based on that, it would appear that this doesn't matter.

19  However, David LeMay, I think has identified why it does

20  matter.

21         We have had threats that -- of various portions

22  of the class, the other parent class will be subject to some

23  challenges at confirmation in terms of designation of votes.

24  So if we could allow these claims now, but still reserve the

25  right to challenge them in some way for voting purposes --