## Appendix A: Inconsistent and Incorrect Provisions of the Noteholder Plan

In addition to the confirmation infirmities set forth above, the Noteholder Plan contains numerous simple technical defects and inappropriate provisions the Debtors believe must be addressed. The Debtors have raised these issues with the Noteholders but have received no commitment that they will be corrected. The Debtors raise these issues here to the extent they are not corrected by amendment of the Noteholder Plan. These provisions, which either inappropriately require the Reorganized Debtors to shoulder certain costs and expenses, impair the Reorganized Debtors' ability to manage their businesses or are ambiguous or inconsistent with the other terms of the Noteholder Plan, include the following:

- Section 3.2.6 of the Noteholder Plan improperly provides for the full allowance of the Senior Noteholder Claims without providing any mechanism for reduction to reflect the potential outcome of the causes of action asserted in the Committee's Complaint against Morgan Stanley Capital Services Inc. ("MSCS"), an affiliate of Morgan Stanley & Co., Inc. ("Morgan Stanley"). The Committee's Complaint seeks to recover damages from Morgan Stanley and MSCS in an amount to be determined at trial. MSCS has filed a proof of claim in the principal amount of $38,365,000 which, among other claims also asserts a protective claim therein of not less than $41,074,528. In light of the fact that the pending causes of action asserted against MSCS in the Committee's Complaint may result in the disallowance of the Senior Noteholder Claims held by MSCS, the Noteholder Plan must be amended to incorporate a mechanism for reducing the total allowed amount of the Senior Noteholder Claims by an amount equal to the Senior Noteholder Claims held by MSCS and its affiliates, including Morgan Stanley.

- Section 8.1 of the Noteholder Plan improperly provides the Litigation Trustee with the power and authority to settle virtually all Disputed Claims. While this provision purports to enable the Litigation Trustee to settle or compromise, for example, disputed trade claims, the Noteholder Plan provides no mechanism for transferring all of the defenses necessary to liquidate such Claims to the Litigation Trust. Indeed, the "Litigation Trust Causes of Action" that will be transferred to the Litigation Trust do not refer to or include disputed trade claims. This omission is particularly problematic in light of the fact that the Noteholder Plan prohibits the Reorganized Debtors from settling or compromising such claims, and, further, does not provide any reserve that could be utilized by the Reorganized Debtors in connection with doing so. Instead, pursuant to section 7.2.1 of the Noteholder Plan, such Disputed Claims Reserves will be held by the Distribution Trust. The Debtors believe they are the appropriate party to resolve disputed trade claims. Nevertheless, if the Noteholders would rather convey this right to the Litigation Trustee, the Noteholder Plan must not only be revised to implement the appropriate

1

procedures for transferring the relevant facts and information from the Debtors to the Litigation Trustee, but must also be modified to require reimbursement of all reasonable costs and expenses incurred by the Debtors in connection with doing so.

- Section 5.11 of the Noteholder Plan provides that, "[a]t the discretion of the board of directors of Reorganized Tribune, after the Effective Date, the Reorganized Debtors may adopt an Equity Incentive Plan for the purpose of granting awards over time to directors, officers and employees of Reorganized Tribune and the other Reorganized Debtors." This section and Section 6.5 of the Noteholder Plan, however, restrict the board of directors of Tribune Company from distributing any equity grants or bonus awards, even if earned or otherwise warranted in the board's judgment, to directors, officers or employees that are named as defendants in the Committee's Complaint. See Noteholder Plan §§ 5.11, 6.5. Instead, any such distributions must be placed in trust pending the resolution of the causes of action against such directors, officers or employees. *Id.* These provisions inappropriately infringe on the Reorganized Debtors' discretion and ability to grant equity and bonus awards to their directors, officers and employees for their post-Effective Date services in the manner they determine to be in the best interests of the Reorganized Debtors' business operations and, as such, should be deleted.

- Section 1.1.217 of the Noteholder Plan provides that Postpetition Interest will be paid at either the reasonable contract rate or the federal judgment rate as of the Petition Date. According to the Noteholder Plan, the Holders of Other Non-Guarantor Debtor Claims will receive Post Petition Interest, and the Holders of Senior Notes Claims, PHONES Notes Claims, Other Parent Claims, and Other Guarantor Debtor Claims may receive Postpetition Interest. *See* Noteholder Plan §§ 1.175, 1.1.218 and 3.3.3. The Debtors believe that the Noteholders intend to apply the reasonable contract rate of interest if the applicable contract specifies an interest rate, and the federal judgment rate if there is no contract or contractual provision specifying the interest rate. The Noteholder Plan should be amended to clarify this approach, which will assist the Debtors and other parties in interest in better calculating and estimating the potential Postpetition Interest Claims.

- Section 5.3.2 of the Noteholder Plan provides that the board of directors shall have seven members, two of which shall initially be designated by Aurelius. Requiring a fixed number of directors inappropriately divests the Company of needed flexibility. For example, the Reorganized Debtors might need to offer board representation to a significant new investor in the Company if there were to be a primary equity offering or for diversity or other social responsibility reasons. The Noteholder Plan must be amended to enable the Reorganized Debtors to increase the number of board seats if necessary. Moreover, the Noteholder Plan must be revised to reduce the disproportionate share of board seats that will be held by Aurelius if resolution of the Litigation Causes of Action results in no additional recovery to the Senior Noteholders or in the event the Senior Noteholders receive a substantial portion of the distributions to which they are entitled under the Noteholder Plan.

- Sections 5.17.15 and 5.18.17 of the Noteholder Plan require the Reorganized Debtors to pay costs associated with preserving records and documents related to the Litigation

Trust Causes of Action and the State Law Avoidance Claims. These provisions are inconsistent with Sections 5.17.2 and 5.18.2 of the Noteholder Plan, which require the Debtors to transfer and assign to the applicable Trust all rights with respect to the Debtors' assets and information related to the Litigation Trust Causes of Action and the right to pursue any Abandoned Claims. In light of these required transfers, the Noteholder Plan must be amended to require each Trust to pay the costs associated with preserving the necessary records and documents associated with the causes of action to be pursued by the applicable Trust.

- Section 5.6.1 of the Noteholder Plan provides that all Reorganized Subsidiary Debtors and U.S. Subsidiary Non-Debtors shall serve as guarantors of the New Senior Secured Term Loan, if issued. However, the Terms of Exit Facility set forth in Exhibit 5.10 to the Noteholder Plan provides, *inter alia,* that the Company and the Noteholders may agree to exclude certain entities from serving as guarantors for the New Senior Secured Term Loan. Section 5.6.1 of the Noteholder Plan must be revised to reflect that the Company and Noteholder Proponents may agree to exclude any Reorganized Subsidiary Debtors and/or U.S. Subsidiary Non-Debtors from guaranteeing the New Senior Secured Term Loan as more appropriately set forth in Exhibit 5.10 to the Noteholder Plan.