# FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
WILLIAM P. WEINTRAUB
RICHARD M. HOFFMAN
SCOTT M. BERMAN
GERALD ADLER
ERIC CORNGOLD
HAL NEIER
PHILIPPE ADLER
LANCE J. GOTKO
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN
ANNE E. BEAUMONT
MARY E. MULLIGAN
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
MALA AHUJA HARKER
RICARDO SOLANO JR.
JOHN N. ORSINI
JEFFREY R. WANG

1633 BROADWAY
NEW YORK, NY 10019-6708
TELEPHONE (212) 833-1100
FACSIMILE (212) 833-1250
WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1102

WRITER'S DIRECT FAX
(212) 373-7902

E-MAIL
EFRIEDMAN@FKLAW.COM

NORMAN ALPERT
ANDREW A. QUARTNER
ASAF REINDEL
    COUNSEL

JESSICA A. MURZYN
JEFFREY C. FOURMAUX
CHAD M. LEICHT
JASON C. RUBINSTEIN
MICHAEL A. GORDON
ROBERT S. LANDY
RICKIE M. SONPAL
STEVEN E. FRANKEL
L. REID SKIBELL
EAMONN O'HAGAN
DANIEL R. GREENBERG
SHEELA V. PAI
JESSICA RICHMAN SMITH
KEVIN L. OBERDORFER
TIMOTHY M. HAGGERTY
JOHN C. LIN
ANDREW S. PAK
PHILIP A. WELLNER
AMY K. PENN
GREGORY W. FOX
RAHUL AGARWAL
CHRISTOPHER M. COLORADO
KENNETH N. EBIE
KIZZY L. JARASHOW
CARI FAIS
SAUMYA MANOHAR
BENJAMIN S. HOLZER

February 20, 2011

The Honorable Kevin J. Carey
Chief Judge, United States Bankruptcy Court
824 North Market Street, Fifth Floor
Wilmington, Delaware 19801

    Re:  *In re Tribune Company, et al.*, Case No. 08-013161 (Bankr. D. Del.) (KJC)
          Discovery Dispute re: Depositions of Novod and Adler

Dear Chief Judge Carey:

      This firm represents Aurelius Capital Management, LP ("Aurelius"), one of the proponents of the "Noteholder Plan." I write to oppose the request by the Official Committee of Unsecured Creditors (the "Committee") that the Court quash the subpoenas (the "Subpoenas") served by Aurelius upon Gordon Z. Novod, who has attended Committee meetings on behalf of Committee member Wilmington Trust Company ("Wilmington Trust"), and David Adler, who has attended Committee meetings on behalf of Committee member Deutsche Bank Trust Company Americas ("Deutsche Bank").

      Although cloaked as an effort to protect the interests of Wilmington Trust and Deutsche Bank, the Committee's request is little more than a tactic to block legitimate discovery into the Committee's deliberations and negotiations, and to prevent Aurelius from obtaining evidence that would be damaging to the prospect of the DCL Plan being confirmed. The Committee's request is premised on the notion that Aurelius' discovery is to be limited to those persons on its adversaries' witness list. Through the instant request as well as others made with respect to the other witnesses Aurelius has subpoenaed, the Committee seeks to block depositions of any witnesses other than the Committee's trial witnesses, who have been handpicked to provide testimony in support of the Committee's position. But Aurelius is entitled to take discovery not only to

961712.1

**Friedman Kaplan Seiler & Adelman LLP**

The Honorable Kevin J. Carey          - 2 -          February 20, 2011

preview trial witness testimony but also to test the veracity and credibility of Committee members who already have been deposed, including through the testimony of other witnesses, whether they will testify at trial or not and regardless of whether they will support the Committee's contentions. Moreover, the DCL Plan proponent representatives on the Committee who have been deposed to date have largely been unable to remember details of Committee deliberations or settlement negotiations, have ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ or have been instructed not to answer (and have not answered) questions about significant deliberations and negotiations allegedly on the basis of privilege. For example, Committee chair Wayne Smith ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



\* \* \*

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

(Smith Tr. 177:15-25; 185:7-13.) Because this type of unproductive testimony has pervaded the Committee member depositions to date, Aurelius has been forced to broaden, rather than narrow, its discovery of the Committee in order to obtain meaningful evidence about those deliberations and negotiations. Moreover, the testimony of Messrs. Novod and Adler is unlikely to be cumulative of those Committee members who have already testified, since Wilmington Trust and Deutsche Bank do not support the DCL Plan.

       The Committee's request to quash the Subpoenas should be denied for several additional reasons. First, Messrs. Novod and Adler conspicuously have not joined in the Committee's request. To the contrary, these witnesses have indicated that they will appear for their depositions pursuant to the Subpoenas and, to the extent there are to be depositions of Committee members Wilmington Trust and Deutsche Bank, counsel for those members have indicated that Messrs. Novod and Adler are the appropriate witnesses, because they have the most complete, first-hand knowledge about Committee deliberations and negotiations. The Committee thus seeks protection for parties that have not asked for it and relief that those parties have not sought. The Committee does not seek to quash the Subpoenas on the basis of privilege, which is the

961712.1

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Kevin J. Carey        - 3 -                February 20, 2011

only basis mentioned in the Committee Bylaws for the Committee to make such a request. *See* Committee Bylaws VIII.B. Rather, the principal basis for the Committee's request appears to be a disagreement with Aurelius' choice of witnesses which is calculated to prevent the depositions entirely, consistent with the Committee's efforts to prevent discovery of Committee members that do not support the DCL Plan. That is not a proper basis to quash the Subpoenas.

The Committee's request also should be denied because, contrary to the Committee's characterization of the Subpoenas as presenting an "attorney deposition issue," the Subpoenas do not seek depositions of these witnesses in their capacity as counsel. Indeed, the fact that Messrs. Novod and Adler are attorneys is entirely beside the point; they participated in Committee meetings as *representatives* of Committee members Wilmington Trust and Deutsche Bank and are to be deposed in that capacity.[1] That those Committee members chose to deploy attorneys as their representatives to attend, and often vote at, meetings does not turn depositions of those representatives into "attorney depositions."[2] Indeed, at the critical October 9, 2010 meeting at which the Committee voted on the proposed settlement, Wilmington Trust was present *only* through counsel.

The Committee's request also conveniently ignores the fact that the Subpoenas are necessitated by the Committee's bylaws, which effectively prohibit Committee members Wilmington Trust and Deutsche Bank from discussing Committee deliberations with Aurelius without a subpoena. *See* Committee Bylaws § VIII.B.[3] In fact, I proposed to the Committee's counsel that the Committee waive this provision so that formal depositions would not be necessary. As of this writing, the Committee has not agreed to do that, except on self-serving terms not acceptable to Aurelius, such as requiring that Committee counsel participate in any conversation pursuant to such a waiver.

Finally, it is premature to consider the purported attorney-witness problem the Committee raises. Rule 3.7(a) concerns the propriety of a lawyer acting as an advocate "at a trial" in which he or she personally will be a "necessary witness." The Subpoenas are for deposition testimony, not trial testimony, and the potential application

---

[1] Committee membership is in the name of the creditor, not a particular individual, and the Committee's bylaws expressly permit an attorney to serve as a member's representative on the Committee. *See* Committee Bylaws § I.A-B.

[2] Contrary to the assertion in the Committee's letter, the "attorney deposition issue" was not "summarily disposed of" at the February 15, 2011 hearing. Rather, the Court declined to rule on the question whether Aurelius may depose Messrs. Seife and Bush, and, as the transcript quoted by the Committee confirms, those depositions were "just adjourned to an open date." In all events, the subpoenas to Messrs. Seife and Bush have not been withdrawn or quashed, and Aurelius has asked the Court to decide whether it may take these depositions.

[3] The relevant excerpts from the Committee Bylaws are attached hereto as Exhibit A.

961712.1

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Kevin J. Carey        - 4 -        February 20, 2011

of Rule 3.7(a) at trial is not a proper basis to bar a deposition. *See Macario v. Pratt & Whitney Canada, Inc.*, No. 90-3906, 1991 U.S. Dist. LEXIS 7156, *14-15 (E.D. Pa. May 28, 1991) (overruling Magistrate's denial of motion to compel deposition of party's counsel). In any event, as one of the cases cited by the Committee confirms, an adversary can object under Rule 3.7(a) only if it can show it will be prejudiced. *See Cannon Airways, Inc. Franklin Holdings Corp.*, 669 F. Supp. 96, 99 (D. Del. 1987) (quoting official comment to the rule and denying motion to disqualify counsel where his testimony did not meet Rule 3.7(a) strict meaning of "necessary"). Quite apart from its failure to satisfy the express requirements of the rule, the Committee is unable to articulate what prejudice it might suffer from the depositions called for by the Subpoenas.

       For these reasons, the Subpoenas to Messrs. Novod and Adler should not be quashed, and the depositions should go forward without further delay.[4]

Respectfully submitted,

Edward A. Friedman

Attachment

cc:    All counsel entitled to notice under the Discovery and Scheduling Order (by e-mail w/attachment)

---

[4] We also note that it is important that Mr. Novod's deposition occur promptly, because his wife is due to give birth imminently, and his availability beyond the end of the discovery period therefore is doubtful.

961712.1

**EXHIBIT A**

## Exhibit A

### BYLAWS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL., CASE NO. 08-13141 (KJC)

### I. MEMBERSHIP

A.      Membership on the Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company., et al. (collectively, the "**Debtors**") shall be held in the name of the creditor appointed to the Committee (each such creditor, a "**Member**") by the United States Trustee for Region 3 (the "**U.S. Trustee**"). Except as provided in Article VII of these Bylaws, each Member shall have one vote on all matters submitted to the Committee for its consideration.

B.      Any Member of the Committee may designate a representative and one or more alternate representatives to attend Committee meetings, provided (i) such representative and alternates are officers of the Member, employees of the Member, attorney or an attorney-in-fact for, or other professional retained by, the Member, (ii) such designation is made to the Committee Chairs (as defined below) or Committee counsel prior to the relevant meeting, and (iii) such representative and alternates, as applicable, have agreed to abide by these bylaws, including, without limitation, with respect to duties of confidentiality, as applicable to such Member. The initial designation of the primary representative and the alternate representative(s) for each Member is set forth in Schedule I attached hereto. An alternate shall have all of the powers and duties of a Member for all purposes of the meetings in the absence of the primary representative.

1

D.  In any instance where a Member voluntarily abstains or is required to abstain due to an actual or alleged conflict of interest, the minutes of the applicable meeting shall reflect such abstention.

### VIII. CONFIDENTIALITY OF INFORMATION

A.  Each Member of the Committee is aware of the fiduciary duty that it has to unsecured creditors of the Debtors and agrees that it will act in accordance with such duty in dealing with confidential information.

B.  Confidential information shall mean all matters discussed at Committee meetings (whether or not memorialized in any minutes thereof), any information or material (whether written, electronic or oral) distributed to a Member or its representatives by or through the Committee and any information or material received from the Debtors or their representatives, in each instance, that is not generally available to the public; provided, however, that confidential information shall not include information (i) that is available to or was in the possession of a Member on a non-confidential basis prior to the receipt of such information in its capacity as a Member, (ii) that is separately received by a Member outside of that Member's capacity as a Committee Member, (iii) that is or becomes available to the public generally other than as a result of a breach of any of the provisions of this Article VIII, or (iv) that becomes independently available to a Member by a means other than service on or in connection with its membership on the Committee so long as the Member's receipt of such information is not governed by any other confidentiality provisions or agreements; and provided further, however, that with respect to clauses (i) or (iii) above, such information became available to the public or was obtained from a source that the Member believes, after

12

reasonable inquiry, was not prohibited from disclosing such information publicly. Confidential information of the Committee (that does not involve Company Information (as defined below)) shall not be disclosed or revealed to third parties (including the media) unless authorized by vote of a majority of the Committee. Confidential information provided by (or based on information provided by) the Debtors or their respective non-Debtor subsidiaries and affiliates ("**Company Information**") may only be disclosed or revealed to third parties in compliance with these Bylaws and, to the extent applicable, the provisions of the Unanimous Written Consent and Acknowledgement, dated as of January 26, 2009, pursuant to which these Bylaws were adopted (the "**Consent and Acknowledgement**"). Notwithstanding the foregoing, a Member may share any confidential information covered by these Bylaws: (a) with other Members of the Committee and such Members' representatives to the Committee (except as the Company (as that term is defined in the Consent and Acknowledgement) may otherwise specify in writing with respect to specific items of Company Information that the Company has in good faith and for a valid business purpose determined should not be shared with one or more Committee members specifically identified by the Company); (b) with the Committee's professionals; (c) in the context of court proceedings, after the Member has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors' counsel and the Committee counsel; (d) with the Member's regulators and with the Member's attorneys, financial consultants, outside auditors, other professionals, affiliates, directors, officers, employees or agents who require such information in order to discharge the responsibilities of the Member as a Committee Member, provided that the person or entity (other than a regulator) receiving such disclosure agrees (via oral or written communication) to be and is bound by this obligation of confidentiality; (e) when required by

13

law, rule, auditor, or any regulatory authority, provided, however, that when a Member is served with a subpoena or other process requiring production of documents or disclosure of information that is privileged as to the Committee, such Member must provide written notice to the Chairs and the Committee Counsel as promptly as is practicable, and if possible in light of the deadlines required by such subpoena or other process, as far as possible in advance of such deadlines in order to enable the Committee to seek to have such process quashed or to attempt to obtain a protective order or other appropriate relief and such Member shall cooperate insofar as is reasonable with such efforts by the Committee; and (f) with third parties, provided that confidentiality agreements acceptable to the Committee and, to the extent that any Company Information is involved, the Debtors, are duly executed with such other persons, and approved by the affirmative vote of a majority of the Committee, with a copy of said agreement delivered to the Debtors to the extent that any Company Information is involved. Subject to the provisions hereof, it is understood that the mere possession of confidential information by a Member or its representatives as a result of the Member's membership on the Committee is not and would not, in and of itself, constitute a breach of this provision at any time that such Member or its representative take any action with respect to such Member's claim. Members and their representatives shall advise any party with whom they are permitted to communicate confidential information of the confidential nature of the material and the business of the Committee.

    C.    Nothing contained in these bylaws shall preclude Committee Members, including, without limitation, Committee Members that are financial institutions pursuant to bank credit facilities, or agents for or representatives of specific creditor constituencies, such as retirees or labor unions, from making disclosures of non-confidential information to third

14