# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Related to D.I. 7876<br>Hearing Date: March 1, 2011 at 10:00 a.m. ET<br>Obj. Deadline: February 22, 2011 at 4:00 p.m. ET[2] |

## DEBTORS' OBJECTION TO MOTION OF STEVEN GELLMAN
## TO ALLOW PROOF OF CLAIM [D.I. 7876]

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the Motion of Steven Gellman to Allow Proof of Claim (D.I. 7876) (the "Gellman Motion"), in which Mr. Gellman, a former employee of Los

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Extended as to the Debtors and the Official Committee of Unsecured Creditors to February 24, 2011.

CH1 5729476v.10
46429/0001-7397578v1

Angeles Times Communications LLC ("LATC"), requests allowance of an administrative claim in the amount of $1,750,000, based on a wide range of theories related to his short term of employment with LATC. A copy of Mr. Gellman's proof of claim, Claim No. 6669 (the "Gellman Claim"), to which the Debtors also object, is attached hereto as Exhibit A. In support of this Objection, the Debtors rely on the Declaration of Amy M. Foran, Senior Labor and Employment Counsel of Tribune Company (the "Foran Declaration"), attached hereto as Exhibit B. In further support of the Objection, the Debtors respectfully state as follows:

## INTRODUCTION

The Court should deny the Gellman Motion without prejudice to Mr. Gellman's right to adjudicate the Gellman Claim – which is an ordinary-course, post-petition employment dispute – in a non-bankruptcy forum. The Debtors are aware of no circumstances that suggest the Gellman Claim should be adjudicated in the Bankruptcy Court, and Mr. Gellman has articulated none in the Gellman Motion or the Gellman Claim. Indeed, the Debtors have proposed to Mr. Gellman's counsel that the Gellman Motion be resolved consensually on this basis, but such proposal has been rejected.

If this Court does entertain the Gellman Motion on the merits, it should be denied.[3] Mr. Gellman was a employee of LATC for only 7 ½ months, from late July 2009 until his termination in March 2010. Mr. Gellman was terminated for cause, which eliminated his entitlement to severance, lost wages, bonus, or benefits.[4] The remaining theories on which Mr. Gellman bases his claim – that the cost savings from his termination somehow benefited the estate and that he is entitled to an administrative claim because his termination was somehow in

---

[3] In either a non-bankruptcy proceeding or further proceedings before the Bankruptcy Court, the Debtors reserve all rights to present evidence, take discovery, and make all arguments in opposition to Mr. Gellman's claims.

[4] As discussed below, LATC has investigated the circumstances surrounding Mr. Gellman's termination and the allegations he made concerning his employment with LATC, and has found them to be meritless.

2

46429/0001-7397578v1

violation of Federal or state law – are each facially inapplicable. Put simply, Mr. Gellman has not met his burden of showing that his services, including the termination thereof, conferred any benefit on LATC's estate, much less the $1,750,000 he alleges. This Court should not permit Mr. Gellman to receive a wholly unsupported windfall at the expense of legitimate creditors, and should deny the Gellman Motion.

## FACTUAL BACKGROUND CONCERNING THE GELLMAN CLAIM

1.    The Gellman Claim was received on November 1, 2010 and recorded as Claim No. 6669 on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent"). The Gellman Claim is purportedly based on "wrongful termination" and is asserted against Tribune Company in the amount of $1,750,000.00. See Claim No. 6669. Mr. Gellman calculated this amount to include two years' salary, "emotional distress" and estimated amounts for both his attorney's fees and, implausibly, the Debtors' defense attorney's fees.[5] Id. at App. p. 4. Mr. Gellman did not, however, set the Gellman Claim for a hearing until after the filing of the Gellman Motion.

2.    Appended to the Gellman Claim is a letter sent by Mr. Gellman's attorney to Eddy Hartenstein, Publisher of LATC, dated April 28, 2010 (the "April 28 Letter"). See Claim No. 6669 at App. p. 1–4. The April 28 Letter detailed alleged actions committed by Mr. Gellman's co-workers that Mr. Gellman allegedly complained about to his superiors and human resources personnel. Id. The April 28 Letter asserts that Mr. Gellman was terminated based on these complaints, and that as a result he has claims and causes of action against LATC for

---

[5] The Debtors cannot be certain why the Debtors' defense fees, which have not been incurred, were included in this calculation, but speculate that Mr. Gellman's counsel, in an attempt to justify their view of an appropriate settlement, alleges that some benefit would be conferred on LATC's estate by not incurring those fees and instead paying the amount thereof to Mr. Gellman. Needless to say, this confers no benefit on LATC's estate.

3

46429/0001-7397578v1

"defamation, retaliation for asserting violations of the California Fair Employment and Housing Act ("FEHA") and wrongful termination in violation of public policy." Id. Other than the April 28 Letter, no support for the Gellman Claim has ever been provided to the Debtors.

3. Upon receipt of the April 28 Letter, LATC's human resources personnel and legal advisors conducted an internal review and investigation regarding the allegations of incidents of harassment and FEHA violations to determine whether any of these allegations had merit and, independently, whether Mr. Gellman's complaints about these alleged incidents were the actual reason for Mr. Gellman's termination from LATC. See Foran Decl. at ¶ 6–8. LATC determined that there were no facts to support any claims of misconduct. Id. at ¶ 8. Following that review and determination, LATC promptly responded to Mr. Gellman's allegations by a letter from Ms. Foran to counsel to Mr. Gellman dated May 27, 2010. See Foran Dec. at ¶ 9 and Attachment 1 thereto. Ms. Foran stated that Mr. Gellman was terminated due to "serious performance deficiencies – specifically, the decline in revenues among his sales team, his inability to manage his direct reports, his disrespect of other executives and his failure to deal effectively with clients." Id. Ms. Foran additionally stated that "[m]oreover, the issues regarding Mr. Gellman's performance as well as management's expectations were discussed with him on numerous occasions and are well documented. Mr. Gellman's refusal or inability to improve finally resulted in the termination of his employment." Id.

4. The Debtors, after reasonable inquiry, are not aware of any actions for wrongful termination filed by Mr. Gellman in state or federal court nor of any complaints filed by Mr. Gellman with the California Division of Labor Standards Enforcement, the California Department of Fair Employment and Housing, or the U.S. Department of Labor. Id. at ¶ 11. On

February 9, 2011, the Gellman Motion was filed seeking to allow the Gellman Claim as an administrative expense.

## ARGUMENT

### A. Mr. Gellman's Termination Provided No Compensable Post-Petition Benefit to LATC's Estate, Nor Has Mr. Gellman Demonstrated Any

5. Pursuant to section 503(b)(1)(A)(i) of the Bankruptcy Code,[6] "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate – including wages, salaries, and commissions for services rendered after the commencement of the case . . . ." 11 U.S.C. § 503(b)(1)(A)(i). Priority statutes, such as section 503 of the Bankruptcy Code, are to be strictly construed to keep administrative expenses at a minimum so as to preserve the estate for the benefit of legitimate creditors. See In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001); see also In re Enron, 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002) (recognizing that courts strictly construe the terms "actual" and "necessary" to minimize "administrative expense claims thereby preserving the estate to benefit all creditors").

6. Courts have developed a two-part test to determine whether claims should be entitled to administrative priority, which requires (1) the claim to arise out of a post-petition transaction between the creditor and debtor in possession, and (2) the consideration supporting the claimant's right to payment to be both supplied and beneficial to the post-petition estate and operation of the post-petition business. See In re Unidigital, Inc., 262 B.R. at 288; see also In re Valley Media, Inc., 279 B.R. 105, 140-41 (Bankr. D. Del. 2002); In re N.Y. Trap Rock Corp., 137 B.R. 568, 572 (Bankr. S.D.N.Y. 1992) (same). A claimant seeking entitlement to administrative expense priority carries the "heavy burden of demonstrating that the costs and

---

[6] Gellman cites specifically to § 503(b)(1)(A)(i) as the basis for his claim. See Mot. p. 2.

5

46429/0001-7397578v1

fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999); In re Goody's Family Clothing, Inc., 401 B.R. 656, 662 (D. Del. 2009); In re Valley Media, Inc., 279 B.R. at 140-41.

7.  Although Mr. Gellman's entire tenure as an employee of LATC occurred post-petition, his claim does not seek any "wages, salaries, and commissions for services *rendered*" during that time period, as section 503(b)(1)(A)(i) requires. See Mot. p. 3. In fact, the Gellman Claim is premised on the exact opposite of Mr. Gellman rendering services, as Mr. Gellman alleges that LATC's estate was conferred a benefit by not continuing to pay him after his termination. Id. The Gellman Claim alleges that Mr. Gellman is entitled to this money. Id. This argument is self-evidently illogical – even assuming for argument's sake that LATC's estate received a benefit by not paying an employee it had terminated, that benefit is extinguished at such time as LATC has to pay the money. Mr. Gellman does not allege that he rendered any services post-petition that provided a benefit to LATC's estate for which he was not compensated and as such the Gellman Motion should be denied.

8.  The case law is clear that a claimant seeking administrative priority carries the burden of providing sufficient evidence to support such an entitlement. See O'Brien, 181 F.3d at 533; In re Phila. Newspapers, LLC, 433 B.R. 164, 175 (Bankr. E.D. Pa. 2010) ("the party seeking the payment of an administrative expense claim . . . 'has the burden of proving that his claim constitutes an administrative expense.'"); Goody's, 401 B.R. at 662. Mr. Gellman has produced absolutely no evidence in support of the Gellman Claim, much less evidence to bear

his considerable burden. Instead, he has produced only unsubstantiated assertions and uncorroborated personal opinions.

**B.     Mr. Gellman's Termination Was Lawful and Proper**

9.     Mr. Gellman has no cognizable claim, and certainly not an administrative claim for $1,750,000, because his termination was lawful and proper.[7] Mr. Gellman presents no evidence or facts sufficient to prove otherwise. Mr. Gellman's employment by LATC was not governed by an employment agreement and was "at will." See Foran Decl. at ¶ 4. The State of California recognizes that absent a clear and unambiguous agreement to the contrary, an "at will" employment arrangement "conveys an intent employment may be ended by either party at any time without cause." Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 392 (Cal. 2006). Thus, LATC was free to terminate Mr. Gellman's employment with or without cause at any time. Mr. Gellman's employment was terminated for his inability or unwillingness to remedy certain deficiencies in his work performance of which he had been notified of on numerous occasions. Id. at ¶ 5.

10.    The Debtors received Mr. Gellman's allegations, properly investigated them and determined that there were no grounds for Mr. Gellman to receive any amount, let alone the $1,7500,00 he demands. Id. at ¶ 7-8. Mr. Gellman's allegation that his termination was based on a retaliatory motive was given due attention and determined to be completely unfounded. Id. Accordingly, the Gellman Motion should be denied and the Gellman Claim

---

[7] Mr. Gellman asserts that he is alternatively entitled to administrative priority under section 503(b)(1)(a)(ii). This subsection, and Reading Co. v. Brown, 391 U.S. 471 (1968), on which Mr. Gellman relies, is inapplicable to the case at bar, because Mr. Gellman's termination for cause does not give rise to a claim for wrongful termination. Courts have actively limited Reading to tort cases or cases of intentional misconduct on the part of the trustee or debtor in possession. See, e.g., In re Economy Lodging Sys., 234 B.R. 691, 697-98 (6th Cir. B.A.P. 1999); In re Hayes Lemmerz Int'l, Inc., 340 B.R. 461, 480 (Bankr. D. Del. 2006); In re Beverage Enters., 225 B.R. 111, 114 (Bankr. E.D. Pa. 1998).

should be disallowed and expunged to the extent it seeks any recovery against LATC based on "wrongful termination."[8]

11. Moreover, if a severance argument is at the root of Mr. Gellman's claim, LATC similarly determined that because Mr. Gellman's termination was for cause, he did not qualify for severance, bonus, or benefits.[9] Such an entitlement was determined by LATC in accordance with the "Non-Union Severance Policy" described in detail in the Debtors' Motion for an Order Authorizing the Debtors to (I) Implement a Severance Policy for Non-Union Employees and (II) Continue Severance Arrangements in Accordance with Collective Bargaining Agreements (D.I. 208), which was approved by this Court by Order entered on February 4, 2009 (D.I. 340) (the "Severance Order"). The Severance Order was in effect at the time of Gellman's termination, and was thus applicable to him. There is nothing under California law that would require the payment of severance where an employee was terminated for cause, particularly if the policy expressly excludes employees terminated for cause, and Mr. Gellman has not argued otherwise.

## CONCLUSION

12. For all of the reasons set forth herein, the Gellman Motion should be denied and the Gellman Claim, Claim No. 6669, should be disallowed in full and expunged. The Gellman Motion and the underlying Gellman Claim seek allowance and payment of a substantial sum from LATC but offer scant legal or factual support for such a demand. Mr. Gellman offers no basis why the Gellman Claim should be adjudicated in the Bankruptcy Court, as it represents

---

[8] With respect to claims asserted against the Debtors' estates, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C. § 558.

[9] Although Mr. Gellman did not claim "severance" in his motion, his assertions for wages not paid to him may be so construed.

8

an ordinary course, post-petition employment dispute concerning issues that arise under state law, which may be efficiently resolved in a non-bankruptcy forum. However, if this Court entertains the Gellman Motion on the merits, the Debtors urge the Court to deny the Motion.

Dated: Wilmington, Delaware
February 24, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
Michael T. Gustafson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-7397578v1