# EXHIBIT A

## Gellman Claim

CH1 5729476v.10
46429/0001-7397578v1

USE ONLY FOR ADMINISTRATIVE EXPENSE CLAIMS THAT AROSE AFTER
DECEMBER 8, 2008

| UNITED STATES BANKRUPTCY COURT  DISTRICT OF DELAWARE | ADMINISTRATIVE EXPENSE PROOF OF CLAIM FORM |
|---|---|
| In Re:                . et al. Case No. 09- | Administrative Expense Claim Request |
| Name of Debtor Against Which Claim is Held: Tribune Company, et al. | Case No. of Debtor: 09-13141 |
| NOTE: This Administrative Expense Claim Request form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of these cases pursuant to 11 U.S.C. § 503. | THIS SPACE IS FOR COURT USE ONLY. |
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Steven Gellman | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: c/o Leslie Cohen / Leslie Cohen Law PC / 506 Santa Monica Blvd., Suite 200 / Santa Monica, CA 90401   T: 310.394.5900 <br> c/o Fred Rosner / The Rosner Law Group LLC / 1000 N. West Street, Suite 1200 / Wilmington, DE 19801 <br> Telephone number: 302-777-1111 | Court Claim Number: _____ (If known) <br> Filed on: _____ |
| Name and address where payment should be sent (if different from above): c/o Leslie Cohen / Leslie Cohen Law PC / 506 Santa Monica Blvd, Suite 200 / Santa Monica, CA 90401 <br> Telephone number: (310) 394-5900 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. <br> ☐ Check this box if you are the debtor or trustee in this case. |
| IMPORTANT: Please list the name and address of any property related to your claim (if applicable). <br> Property Name: _____ <br> Property Address: _____ | |

1. Basis for Claim: Wrongful termination
(See instruction #1 on reverse side.)

2. Last four digits of any number by which creditor identifies debtor: _____

3. TOTAL AMOUNT OF ADMINISTRATIVE EXPENSE CLAIM: $ $1,750,000 (Total)
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

4. BRIEF DESCRIPTION OF CLAIM (attach any additional information):
See attachment

5. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
6. Supporting Documents: Attach redacted copies of any do[cuments that support the claim, such as promissory notes, purchase] orders, invoices, itemized statements or running accounts, con[tracts, judgments, mortgages, and security agreements. You m]ay also attach a summary. Attach redacted copies of documents [providing evidence of perfection of a security interest. You m]ay also attach a summary. (See definition of "redacted" on rever[se side.)]
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED [documents may be destroyed after scanning.]
If the documents are not available, please explain:
DATE-STAMPED COPY: To receive an acknowledgment [of the filing of your claim, enclose a self-addressed] stamped, self-addressed envelope and copy of this administra[tive expense claim request. You may also obtain this] information by visiting the website of the Claims Agent (www.kccllc.net/STMG).

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)                      0000006669

THIS SPACE IS FOR COURT USE ONLY.

IF PROOF OF CLAIM IS SENT BY MAIL, SEND TO:
Tribune Company Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5069
New York, NY 10150-5069
Please see instructions on back of Proof of Claim

FILED / RECEIVED
NOV - 1 2010
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 10/27/10
Signature: /s/ Steven Gellman — the person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.


**ALEXANDER KRAKOW + GLICK**

April 28, 2010

**VIA ELECTRONIC MAIL AND OVERNIGHT DELIVERY**

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

Mr. Eddy W. Hartenstein
Publisher and Chief Executive Officer
Los Angeles Times Media Group
202 West First Street
Los Angeles, California 90012

        Re:    Steven Gellman/Los Angeles Times Media Group

Dear Mr. Hartenstein:

**The text set forth below, excluding the footnotes, is a privileged settlement communication within the meaning of state and federal law. See, e.g., Cal. Evid. Code § 1152.**

This office represents Steven Gellman in connection with the termination of his employment at the Los Angeles Time Media Group ("LA Times"). We believe the LA Times retaliated against Mr. Gellman in violation of California's Fair Employment and Housing Act and Unruh Act. The LA Times's conduct gives rise to claims of defamation, wrongful termination, and unfair business practices under Section 17200 of the California Business and Professions Code, as well.[1]

To summarize the facts, Mr. Gellman was employed at the LA Times from July 27, 2009 to March 10, 2010 as Publisher of the LA Times Magazine. He did a fine job and did not receive any significant discipline for his performance.

---

[1] By this letter, I am making a formal request on behalf of Mr. Gellman to obtain a copy of his personnel file or files, including all files and records on which the company has relied in making decisions relating to his discipline. See Wellpoint Health Networks, Inc. v. Superior Ct., 68 Cal. App. 4th 844 (1997). I ask that you supply me with these documents no later than May 19, 2010.

401 Wilshire Boulevard
Suite 1000
Santa Monica
California 90401

T: 310.394.0888
F: 310.394.0811
www.akgllp.com

Employee Justice.



Employee Justice.

During his employment, in about October, 2009, Gellman observed and complained about the LA Times's policy of excluding approximately 40% of its readership who reside in less affluent and demographically black and Latino neighborhoods in Los Angeles from receiving the LA Times Magazine. Gellman told John T. O'Loughlin that he had a stack of complaints from customers who lived in these zip codes designated by O'Loughlin, and forwarded him e-mails from customers complaining of discrimination. O'Loughlin shrugged off Gellman's concerns, but Gellman would not let the issue rest.

California's Unruh Civil Rights Act declares:

> "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

Cal. Civ. Code § 51(b). The California Fair Employment and Housing Act ("FEHA") declares that "[i]t is an unlawful practice...for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section 51...." Cal. Gov't Code § 12948. To deny the LA Times's customers of color a portion of the newspaper that it provides to its white customers in more affluent neighborhoods is a violation of the Unruh Act and FEHA.

In addition, the LA Times is engaging in false advertising by charging the same price to all customers in Los Angeles but refraining from distributing the LA Times Magazine to only certain zip codes. This is an unfair business practice, as well. Cal. Bus. & Profs. Code § 17200.

Around the same time, on November 9, 2009, Gellman participated in a liquor strategy meeting with Scott Pompe, Anna Magzanyan, Andy Vogel, Marcie Maxfield, and Heidi Linnebach. Pompe made offensive, sexist remarks to Maxfield and Linnebach during this meeting, and Gellman and Pompe disagreed on Pompe's decision to favor the younger woman, who Pompe described as a "flower who is just ready to bloom," over the older woman for lucrative liquor sales assignments. After that meeting, Gellman complained to O'Loughlin that Pompe had engaged in inappropriate sexist and sexually harassing behavior towards Maxfield and Linnebach, their subordinate, female employees. Further,

2



Gellman told O'Loughlin that Maxfield was considering complaining to human resources and that he wished to speak to human resources ("HR") about it himself. O'Loughlin was annoyed that Gellman was making waves about harassment and discrimination, as well as the false distribution issues, and prohibited Gellman from reporting anything to HR. In retaliation, O'Loughlin reassigned Gellman to report to a new supervisor.

O'Loughlin asked Gellman whether he wished to report to Pompe or Lynne Segall as his new supervisor. In light of his recent conflicts with Pompe and his complaint to O'Loughlin about Pompe, Gellman told O'Loughlin that he wished to work under Segall. Evincing a retaliatory motive, although Gellman emphatically preferred Segall over Pompe and told O'Loughlin as much, O'Loughlin assigned him to report to Pompe, beginning in mid-December, 2009.

On February 2, 2010, Marcie Maxfield left work for a medical/psychological disability leave of absence. Maxfield's departure was, in part, due to her negative interactions with Pompe and O'Loughlin's refusal to take appropriate steps to remedy the situation with HR as Gellman had urged in November, 2009. In late February, Pompe began to defame Gellman maliciously by publishing untrue statements about Gellman's abilities in his role as a Publisher to people who did not have a need to know.

In early March, 2010, Gellman scheduled a meeting with Erin Frey in HR and Scott Pompe to attempt to discuss Pompe's mistreatment of Gellman. Pompe claimed that Gellman had "damaged relationships," but Pompe was not able to offer Gellman any legitimate examples. On March 8, 2010, Gellman wrote an e-mail to HR in follow-up to this meeting. He complained about defamation, a hostile work environment, stress, anxiety, and depression. In response, two days later, on March 10, 2010, the LA Times terminated Gellman, citing: "poor revenue, damaged relationships, and inability to manage the situation with his direct reports," i.e., Marcia Maxfield's stress leave of absence.

These facts give rise to claims of defamation, retaliation for asserting violations of the California Fair Employment and Housing Act ("FEHA"), and wrongful termination in violation of public policy. In addition, the LA Times failed to prevent discrimination and retaliation from occurring at work. Each of these is a distinct violation of the FEHA, Title VII of the Civil Rights Act of 1964, and California common law.

Employee Justice.

3



**ALEXANDER KRAKOW + GLICK**

Employee Justice.

The injury that Mr. Gellman has suffered as a result of the LA Times's conduct entitles him to economic damages, emotional distress damages, and, potentially, punitive damages. Mr. Gellman will recover his attorney's fees, as well, if he were to pursue his claims under the FEHA.

The following is a conservative, rough breakdown of Mr. Gellman's potential damages and your potential defense costs by the time of trial if he were to proceed with a lawsuit. (Please note that we have not included a figure for punitive damages, despite the LA Times's reckless disregard of Mr. Gellman's rights.):

| Description | Dollar Amount |
|---|---|
| Two Years' Lost Wages, Bonus, and Benefits ($350,000/year) | $700,000.00 |
| Emotional Distress | $350,000.00 |
| Our Attorney's fees through Trial | $350,000.00 |
| Attorney's fees for Defense Side | $350,000.00 |
| TOTAL: | $1,750,000.00 |

Before pursuing litigation of Mr. Gellman's claims, we wanted to contact you to give the parties an opportunity to resolve this dispute without the assistance of the courts. If the LA Times is interested in discussing a settlement of this matter prior to our filing a lawsuit, I invite you (or your counsel) to contact me.[2]

///

///

///

---

[2] Regardless of whether the LA Times decides it will engage in early settlement discussions with us, please note that with the potential for litigation of Mr. Gellman's dispute, the LA Times and its officers, directors, employees, and representatives have a legal duty to preserve all potential evidence relating to his employment, including, but not limited to, all electronic mails. Please ensure that the LA Times instructs all employees to maintain such documentation and that a system is in place that will preserve all electronic evidence.

4



**ALEXANDER KRAKOW + GLICK**

Both Mr. Gellman and I are hopeful that this matter can be resolved informally. If we do not hear from you with a serious proposal to settle this matter by Wednesday, May 19, 2010, however, we will not hesitate to pursue it with the appropriate agencies and courts.

Very truly yours,

Gail A. Glick
Alexander Krakow + Glick LLP

cc:   Mr. Steven Gellman

Employee Justice.

5

