## <u>EXHIBIT B</u>

**Objection Chart**

***Summary of Confirmation Objections Lodged Against the Noteholder Plan (the "Noteholder Plan") and the Noteholder Plan Proponents' Responses Thereto***[1, 2]

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **1) Objection of New York State Department of Taxation & Finance (the "<u>DTF</u>") [Docket No. 7731]** ||
| i) The Noteholder Plan fails to provide priority tax creditors with an adequate remedy in the event the Debtors default in making payments required under the Noteholder Plan.  The Noteholder Plan should provide that, if the Debtors default in making tax payments required under the Noteholder Plan, the DTF will be permitted to pursue remedies in state court rather than the Bankruptcy Court.  *See* ¶ 4 at p. 2. | i) **Incorrect**.  As a threshold matter, the DTF cites no authority in support of its objection. Further, the law is well-established that a plan of reorganization is akin to a contract. *See, e.g., In re NVF Co.*, 309 B.R. 698, 701 (Bankr. D. Del. 2004); *In re Karathansis v. THCR/LP Corp.*, No. 06-1591 (RMB), 2007 WL 1234975, at *8 (D. N.J. Apr. 25, 2007) ("[A] confirmed plan of reorganization is a contract binding on all parties, including the debtor and creditors."); *see also In re Turek*, 346 B.R. 350, 354-55 (Bankr. M.D. Pa. 2006) ("It is well established that a . . . plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed.") (internal quotations and citations omitted)).  As such, once a plan is confirmed, creditors' rights are "governed exclusively by the terms of that plan."  *In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 494 (Bankr. D. Del. 2004); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."); *In re Northwestern Corp.*, Nos. 03-12872, 05-52525 (JLP), 2005 WL 2847228, *5 (Bankr. D. Del. Oct. 25, 2005) ("[I]t is axiomatic that a bankruptcy court possesses the inherent authority to enforce its own orders, such as an order confirming a chapter 11 plan of reorganization."); *In re eToys, Inc.*, 331 B.R. 176, 185 (Bankr. D. Del. 2005) ("The Bankruptcy Court . . . does retain jurisdiction post-confirmation to enforce the Plan.  'The court may direct the debtor and any other necessary party . . . to perform any . . . act . . . that is necessary for the consummation of the plan.'") (quoting 11 U.S.C. § 1142(b)). |

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Noteholder Plan.

[2] Virtually all of the objections lodged against the Noteholder Plan were also lodged against the Debtor/Committee/Lender Plan (hereinafter, the "<u>DCL Plan</u>").  If and to the extent the proponents of the DCL Plan (the "<u>DCL Plan Proponents</u>") amend the DCL Plan in an attempt to resolve these objections, the proponents of the Noteholder Plan (the "<u>Noteholder Plan Proponents</u>") reserve the right to make the same amendments to the Noteholder Plan.  The Noteholder Plan Proponents have placed an asterisk wherever applicable to demarcate the few objections that were lodged against the Noteholder Plan, but not the DCL Plan.

*In re Tribune Company, et al.*: Summary of Objections Lodged Against the Noteholders' Plan of Reorganization and Noteholders' Responses Thereto

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| ii) The injunction provisions in Section 11.1.2 of the Noteholder Plan improperly attempt to enjoin creditors from exercising their rights of setoff and recoupment under Bankruptcy Code section 553. *See* ¶ 6 at pp. 2-3. | ii) Sections 11.1.1 and 11.1.2 of the Noteholder Plan have been revised to include the following language: "*Notwithstanding anything contained in Sections 11.1.1 and 11.1.2 of the Noteholder Plan, to the extent . . . the New York State Dept. of Taxation & Finance . . . has setoff or other recoupment rights against the Debtors under the Bankruptcy Code, such rights are preserved.*" |
| **2)  Objection of Commonwealth of Pennsylvania, Department of Revenue (the "Commonwealth") [Docket No. 7910]** | |
| i) The Noteholder Plan eliminates setoff and recoupment rights in violation of Bankruptcy Code sections 553(a) and 524(a). *See* ¶¶ 2-4 at p. 2. | i) Sections 11.1.1 and 11.1.2 of the Noteholder Plan have been revised to include the following language: "*Notwithstanding anything contained in Sections 11.1.1 and 11.1.2 of the Noteholder Plan, to the extent . . . the Commonwealth of Pennsylvania, Department of Revenue has setoff or other recoupment rights against the Debtors under the Bankruptcy Code, such rights are preserved.*" |
| ii) The Noteholder Plan fails to provide that tax debts are not discharged until paid in full pursuant to Bankruptcy Code section 1129(b)(2)(A)(i)(1). *See* ¶ 5 at p. 2. | ii) **Inaccurate**. All Priority Tax Claims will be paid in full under the Noteholder Plan prior to being discharged. *See* Noteholder Plan, § 2.3. Section 11.1.1 of the Noteholder Plan conditions the discharge upon the distributions afforded and treatment of claims under the Noteholder Plan. *See* Noteholder Plan, § 11.1.1. |
| **3)  Objection of Illinois Secretary of State (the "Illinois SOS") [Docket No. 7914]** | |
| a) **Section 13.6 of the Noteholder Plan – Relating to Paid-in-Capital – Is Overly Broad and Ambiguous** | |
| i) Section 13.6 of the Noteholder Plan sets forth a proposed reduction in paid-in capital under the Business Corporation Act of 1983 (the "BCA") that is unclear and not properly limited in scope. *See* ¶ 2 at p. 2.  Specifically: <br><br> a. Section 13.6 of the Noteholder Plan creates an ambiguity as to the timing at which the taxing authority would reduce the paid-in capital of the Debtors for purposes of the BCA by providing | i) If and to the extent the DCL Plan Proponents amend the DCL Plan in an attempt to resolve the objection of the Illinois SOS, the Noteholder Plan Proponents currently intend to make the same amendments to the Noteholder Plan. |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| that the reduction shall occur "on the Effective Date, after all other transactions necessary to effect this Plan have been consummated."  *See* ¶ 3 at p. 2.  The Noteholder Plan should remove the second clause and specify that the reduction of paid-in capital occurs on the Effective Date. *See* ¶ 3 at p. 2. <br><br> b.  Section 13.6 of the Noteholder Plan improperly limits the capital stock to be included in the calculation of the Debtors' reduced paid-in capital to issued and outstanding shares of capital stock, thereby excluding the value of treasury shares in violation of BCA §§ 9.05 and 9.20.  *See* ¶ 4 at p. 3.  The limitation to "outstanding" shares should be stricken.  *See* ¶ 4 at p. 3. <br><br> c.  The following clause in Section 13.6 of the Noteholder Plan is overly broad and should be stricken in its entirety:  "Any capital of each corporate Reorganized Debtor remaining in excess of its Article XIII Paid-in-Capital Amount shall not be treated as Paid-in-Capital for purposes of the BCA."  *See* ¶ 5 at p. 3.  The following language should be included in Section 13.6 of the Noteholder Plan:  "*This Section 13.6 shall only apply to capital stock of Reorganized Tribune and Reorganized Debtors that is contemplated to be issued pursuant to the Plan.*"  *See* ¶ 5 at p. 3. |  |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **4)   Limited Objection of Caption Colorado, L.L.C. ("<u>Caption Colorado</u>") [Docket No. 7956]** | |
| i)   The Noteholder Plan must provide for the payment in full of all administrative expense claims owed to Caption Colorado.  Caption Colorado objects to the Noteholder Plan to the extent that the Noteholder Plan Proponents' calculation of the total amount of administrative expense claims to be paid under the Noteholder Plan do not take into account Caption Colorado's administrative expense claim (in the amount of $1,313,449) relating to the Debtors' postpetition breach of a contract with Caption Colorado.  Further, Caption Colorado requests that the Debtors be ordered to place sufficient funds in escrow to pay the foregoing administrative expense claim in full.  *See* ¶¶ 1-3 at p. 3. | i)   To the extent that Caption Colorado has an allowed administrative expense claim under Bankruptcy Code section 507(a)(2), the Noteholder Plan cannot be confirmed unless such claim is paid in full.  *See* 11 U.S.C.  § 1129(a)(9).  Moreover, Section 2.2 of the Noteholder Plan provides that all allowed administrative claims will be paid in full in cash.  *See* Noteholder Plan, § 2.2.  Accordingly, it is not necessary for the Debtors to place sufficient funds in escrow to pay Caption Colorado's alleged administrative expense claim.  Further, the Debtors have more than sufficient cash on hand to pay Caption Colorado's administrative expense claim in full to the extent such claim is allowed by order of the Bankruptcy Court. |
| **5)   Objection of the United States on behalf of Environmental Protection Agency (the "<u>EPA</u>") [Docket No. 7960]** | |
| **a)   <u>The Noteholder Plan's Discharge Provisions Are Overbroad and Contrary to the Bankruptcy Code</u>** | |
| i)   Section 11.1.1(a) of the Noteholder Plan could be construed to inappropriately discharge the Debtors from environmental liabilities that are not within the definition of "claim" in section 101(5) of the Bankruptcy Code.  *See* ¶ 3 at pp. 2-3. | i)   Section 11.6 has been added to the Noteholder Plan and includes language that is substantially identical to the language proposed by the EPA:  *"Nothing in the Confirmation Order or Noteholder Plan shall operate to discharge, release, or preclude: (i) any environmental liability to a governmental unit as defined in section 101(27) of the Bankruptcy Code ("<u>Governmental Unit</u>") that is not a Claim; (ii) any Claim of a Governmental Unit for environmental liability arising on or after the Effective Date; or (iii) any environmental liability to a Governmental Unit on the part of any entity as the owner or operator of real property after the Effective Date. Further, nothing in the Confirmation Order or the Noteholder Plan shall operate to enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.  Notwithstanding any other provision in the Confirmation Order or the Noteholder Plan, nothing in the* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| | *Noteholder Plan or Confirmation Order shall divest any court or administrative agency or tribunal of its valid jurisdiction, or enjoin any governmental unit from proceeding before such court or administrative agency or tribunal, with respect to a Claim or other action by a Governmental Unit for environmental liability."* |
| ii) Sections 5.7 and 11.1.1(a) of the Noteholder Plan could be construed to discharge the Debtors inappropriately from environmental liabilities that arise on or after the confirmation date.  *See ¶¶ 4-5 at pp. 3-4.* | ii)  This objection should be resolved with the inclusion of the language proposed above. |
| iii) The Noteholder Plan could inappropriately frustrate governmental enforcement of environmental law.  Section 11.1.2 of the Noteholder Plan contains injunctive language that might be construed to inappropriately preclude the government from enforcing environmental law.  Similarly, Section 12.1 of the Noteholder Plan contains language that could be construed as giving the Bankruptcy Court exclusive jurisdiction over certain actions that represent the government's exercise of its police or regulatory powers, and that should properly be heard in other jurisdictions.  *See ¶¶ 6- 7 at pp. 4-5.*<br><br>To resolve the foregoing objection, the EPA requests that the following language be added to the Noteholder Plan: "*Nothing in this Order or the [Debtors' Plan] [Pre-LBO Debtholder Plan] discharges, releases, or precludes: (i) any environmental liability to a governmental unit as defined in section 101(27) of the Bankruptcy Code ("Governmental Unit") that is not a Claim; (ii) any environmental Claim of a Governmental Unit arising on or after the Confirmation Date; or (iii) any environmental liability to a Governmental Unit on the part of any entity as the owner or operator of real property after the Confirmation Date. Nor shall anything in this Order* | iii)  This objection should be resolved with the inclusion of the language proposed above. |

*In re Tribune Company, et al.:* **Summary of Objections Lodged Against the Noteholders' Plan of Reorganization and Noteholders' Responses Thereto**

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| *or the [Debtors' Plan] [Pre-LBO Debtholder Plan] enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any other provision in this Order or the [Debtors' Plan] [Pre-LBO Debtholder Plan], nothing in the [Debtors' Plan] [Pre-LBO Debtholder Plan] or Confirmation Order shall divest any court or administrative agency or tribunal of its valid jurisdiction, or enjoin any governmental unit from proceeding before such court or administrative agency or tribunal." See ¶ 8 at pp. 5-6.* | |

| **6)   Limited Objection and Reservation of Rights of CCI Europe ("<u>CCI</u>") [Docket No. 7963]** | |
|---|---|
| i)   CCI objects to the proposed assumption of its contracts to the extent that the requisite cure payments are not made.  Because no cure schedule has been filed, CCI must assume that the Noteholder Plan Proponents believe that the requisite cure amount is zero.  However, cure amounts are in fact owed.  *See* ¶¶ 2-4 at pp. 1-3. | i)   **Inaccurate**.  The Noteholder Plan provides that no executory contract will be assumed unless, among other things, all cure amounts have been paid in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123.  *See* Noteholder Plan, § 6.1.1. |
| ii)   To the extent that any cure dispute is not fully resolved prior to the confirmation hearing, CCI requests that the Noteholder Plan and/or Confirmation Order include (a) a specific process by which the Debtors and contract counterparties will resolve or litigate outstanding cure disputes that arise in connection with the assumption of executory contracts and (b) the timing of payment of any cure amounts due in connection with such assumption.  *See* ¶ 5 at p. 3 (citing Section 6.2 of the Noteholder Plan). | ii)   The Confirmation Order will include procedures that provide executory contract counterparties with notice and an opportunity to be heard in respect of cure disputes. |

*In re Tribune Company, et al.:* **Summary of Objections Lodged Against the Noteholders' Plan of Reorganization and Noteholders' Responses Thereto**

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **7) Objection of the State of California Franchise Tax Board (the "<u>CFTB</u>") [Docket No. 7964]** | |
| **a)  <u>The Noteholder Plan Unlawfully Restricts Allowance of Properly Filed Proofs of Claim</u>** | |
| i)    The Noteholder Plan unlawfully disallows properly filed proofs of claim if a claim is listed as unliquidated on the Debtors' schedules. *See* ¶ 6 at p. 3.  Section 1.1.4 of the Noteholder Plan must be amended so that the Noteholder Plan's definition of "Allowed" complies with the requirements of Bankruptcy Code section 502(a).  Specifically, the CFTB requests that the Noteholder Plan be amended by striking the phrase "and is not listed as disputed, contingent or unliquidated" from the definition of "Allowed" in the Noteholder Plan. *See* ¶ 8 at p. 3. | i)    **Incorrect**.  The CFTB is, in essence, seeking to have its claims allowed simply because it filed proofs of claim in a liquidated amount.  Any such request is contrary to well-established bankruptcy law.  Because the CFTB's claims were listed as unliquidated on the Debtors' schedules, the CFTB's claims are correctly classified as "Disputed Claims" under the Noteholder Plan. *See* Noteholder Plan, § 1.1.72.  The CFTB's claims should not be "Allowed" unless and until a Final Order has been entered allowing such claims. *See* Noteholder Plan, § 1.1.4. |
| **b)  <u>The Noteholder Plan Provides for Improper Treatment of Holders of Priority Tax Claims</u>** | |
| i)    The two treatment options provided to Holders of Priority Tax Claims under Section 2.3 of the Noteholder Plan conflict with Bankruptcy Code section 1129(a)(9)(C) and Bankruptcy Code section 511, respectively.  Accordingly, Section 2.3 of the Noteholder Plan should be amended to provide as follows: (i) option 1 (where Holders receive payment in full in Cash after their Priority Tax Claims become Allowed Claims) must provide for the payment of interest between the Effective Date and the date on which the Claim is ultimately paid; and (ii) option 2 (where the Holders receive regular installment payments in Cash equal to the Allowed | i)    Section 2.3 of the Noteholder Plan has been revised to include language that is substantially identical to the language proposed by the CFTB (with new language italicized and deletions noted with a strike through):  "Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive either, at the sole option of the Reorganized Debtors (i) payment in full in Cash after such Priority Tax Claim becomes an Allowed Claim, *together with interest from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code*, (ii) except as otherwise determined by the Bankruptcy Court at the Confirmation Hearing, *equal monthly* ~~regular~~ installment payments in Cash equal to the Allowed amount of such Claim over a period ending not later than the fifth anniversary of the Petition Date, together with interest *payable in full with each monthly* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| amount of their Claims over a period ending not later than the fifth anniversary of the Petition Date) must provide compounding interest in accordance with Bankruptcy Code section 511.  *See* ¶¶ 9-12 at pp. 4-6.  The CFTB proposes the following language:  "*(i) payment in full in Cash after such Priority Tax Claim becomes an Allowed Claim, together with interest from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, (ii) equal monthly installment payments in Cash equal to the Allowed amount of such Claim over a period ending not later than the fifth anniversary of the Petition Date, together with interest payable in full with each monthly installment payment from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, which installment payments shall commence after such Priority Tax Claim becomes an Allowed Claim.*"  *See* ¶ 12 at p. 6. | *installment payment* ~~compounded annually~~ from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, which installment payments shall commence after such Priority Tax Claim becomes an Allowed Claim or (iii) such other treatment as agreed to by the Holder of an Allowed Priority Tax Claim and the Reorganized Debtors." |
| **c)  The Noteholder Plan Wrongfully Provides for the Categorical Disallowance or Subordination of Claims for Penalties Related to Taxes** | |
| i)  Section 11.4 of the Noteholder Plan must be amended to clarify that Claims held by governmental units, including the CFTB, for penalties related to taxes will not be disallowed or subordinated to other Claims.  *See* ¶ 17 at p. 8. | i)  **Incorrect**.  The Noteholder Plan contemplates subordination of tax penalties pursuant to Bankruptcy Code section 510(c).  The U.S. Supreme Court and the Third Circuit have squarely held that, pursuant to section 510(c), a bankruptcy court has authority to equitably subordinate non-pecuniary loss tax penalties.  *See United States v. Noland, 517 U.S. 535, 540-41 (1996); Burden v. United States*, 917 F.2d 115, 118 -119 (3d Cir. 1990) ("[W]e conclude that § 510(c) permits bankruptcy courts to subordinate nonpecuniary loss tax penalties"). |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **d)  The Discharge Provisions of the Noteholder Plan Are Overbroad** | |
| i)  The injunction provisions of the Noteholder Plan improperly attempt to enjoin creditors from exercising their rights of setoff and recoupment. The Noteholder Plan must be amended to clarify that the CFTB will not be enjoined from asserting its setoff and recoupment rights post-confirmation. *See* ¶¶ 18-21 at pp. 8-9. | i)  Sections 11.1.1 and 11.1.2 of the Noteholder Plan have been revised to include the following language:  "*Notwithstanding anything contained in Sections 11.1.1 and 11.1.2 of the Noteholder Plan, to the extent . . . the California Franchise Tax Board . . . has setoff or other recoupment rights against the Debtors under the Bankruptcy Code, such rights are preserved.*" |
| ii)  Section 11.1.1 of the Noteholder Plan must be amended to clarify that the Noteholder Plan does not discharge the Debtors from any tax that the Debtor willfully attempted to evade or defeat or for which the debtor made a fraudulent return.  *See* ¶¶ 22-23 at pp. 9-10.  The CFTB proposes the following language:  "*Notwithstanding section 11.1.1(a) and (b), the provisions of this Plan shall not operate to discharge any Claims, debts, rights, causes of action or liabilities that are not discharged under 11 U.S.C. § 1141(d), and no Person is precluded from asserting any Claim, debt, right, cause of action or liability that is not discharged under 11 U.S.C. § 1141(d)."  See* ¶ 23 at p. 10. | ii)  Section 11.1.1 of the Noteholder Plan has been revised to include language that is substantially identical to the language proposed by the CFTB:  "*Notwithstanding section 11.1.1(a) and (b), the provisions of this Noteholder Plan shall not operate to discharge any Claims, debts, rights, causes of action or liabilities that are not discharged under section 1141(d) of the Bankruptcy Code, and no Person is precluded from asserting any Claim, debt, right, cause of action or liability that is not discharged under section 1141(d) of the Bankruptcy Code.*" |
| **e)  The Noteholder Plan May Impose Unlawful Restrictions on Allowance of Administrative Expenses for Taxes Incurred by the Estate** | |
| i)  In contravention of Bankruptcy Code section 503(b)(1)(D), Section 2.2 of the Noteholder Plan could be construed as requiring governmental units | i)  Section 2.2 of the Noteholder Plan has been revised to include the following language:  "*Notwithstanding the foregoing, a governmental unit shall not be required to file a Proof of Claim or other request for payment of any Allowed Administrative Expense*" |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| to file requests for payment of administrative expenses for taxes. *See ¶¶* 24-25 at pp. 10-11. | *Claim."* |
| ii) The Noteholder Plan may improperly bar allowance of administrative expense claims for interest that accrues on taxes incurred by the Debtors' Estates. Sections 7.4 or 2.2 of the Noteholder Plan are unclear as to whether governmental units that hold allowed administrative expense claims under section 503(b)(1)(B) of the Bankruptcy Code will be paid interest on such claims. *See ¶¶* 26-27 at pp. 11-12. The CFTB proposes that the following language to be added to the end of Section 2.2 of the Noteholder Plan: *"Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, an Administrative Expense Claim that is an expense under sections 503(b)(1)(B) and/or 503(b)(I)(C) of the Bankruptcy Code, including interest due thereon under applicable non-bankruptcy law, shall be timely paid in the ordinary course of business without the need of any governmental unit to file a request for payment of such Administrative Expense Claim or any other document, including a Proof of Claim." See ¶* 28 at p. 12. | ii) Section 2.2 of the Noteholder Plan has been revised to include language that is substantially identical to the language proposed by the CFTB: *"Notwithstanding anything to the contrary in the Noteholder Plan or in the Confirmation Order, an Allowed Administrative Expense Claim that is an expense under sections 503(b)(1)(B) and/or 503(b)(I)(C) of the Bankruptcy Code, including interest due thereon under applicable non-bankruptcy law, shall be timely paid in the ordinary course of business without the need of any governmental unit to file a request for payment of such Allowed Administrative Expense Claim or any other document, including a Proof of Claim."* |
| iii) The Noteholder Plan may unjustly deny administrative expense claims for tax periods that commenced prior to the Petition Date but did not end until after the Petition Date. Section 1.1(2)(i) of the Noteholder Plan should be amended to clarify that such claims that are based on tax periods that span the Petition Date are not excluded from the definition of "Administrative Expense Claim." *See* | iii) Section 1.1.2(i) of the Noteholder Plan (now section 1.1.1(i) of the amended Noteholder Plan) contains language virtually identical to the language requested by the CFTB. Specifically, Section 1.1.2(i) of the Noteholder Plan (now section 1.1.1(i) of the amended Noteholder Plan) provides: "(i) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims) related to tax years ending on or after the Petition Date or commencing |

*In re Tribune Company, et al.:* **Summary of Objections Lodged Against the Noteholders' Plan of Reorganization and Noteholders' Responses Thereto**

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| ¶¶ 30-31 at p. 13.  The CFTB proposes the following language to replace part of Section 1.1(2)(i) of the Noteholder Plan:  *"excluding claims related to tax periods ending before the Petition Date."  See id.* | after the Petition Date, ***but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date.***" (emphasis added).   The language in bold is virtually identical to the language requested by the CFTB. |
| **f)   The Noteholder Plan Fails to Provide an Adequate Remedy in the Event the Debtors Default on Their Obligations Under the Noteholder Plan** | |
| i)   The Noteholder Plan should provide that, if a default under the Noteholder Plan occurs and continues after reasonable notice and the expiration of a cure period, all obligations due to the CFTB under the Noteholder Plan are accelerated and fully due and payable, and that the CFTB can pursue its state law remedies.  *See ¶ 32 at p. 13.* | i)   **Incorrect**.  As a threshold matter, the CFTB cites no authority in support of its objection.  Further, the law is well-established that a plan of reorganization is akin to a contract.  *See, e.g., In re NVF Co.*, 309 B.R. 698, 701 (Bankr. D. Del. 2004); *In re Karathansis v. THCR/LP Corp.*, No. 06-1591 (RMB), 2007 WL 1234975, at *8 (D. N.J. Apr. 25, 2007) ("[A] confirmed plan of reorganization is a contract binding on all parties, including the debtor and creditors."); *see also In re Turek*, 346 B.R. 350, 354-55 (Bankr. M.D. Pa. 2006) ("It is well established that a . . . plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed.") (internal quotations and citations omitted)).  As such, once a plan is confirmed, creditors' rights are "governed exclusively by the terms of that plan."  *In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 494 (Bankr. D. Del. 2004); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."); *In re Northwestern Corp.*, Nos. 03-12872, 05-52525 (JLP), 2005 WL 2847228, *5 (Bankr. D. Del. Oct. 25, 2005) ("[I]t is axiomatic that a bankruptcy court possesses the inherent authority to enforce its own orders, such as an order confirming a chapter 11 plan of reorganization."); *In re eToys, Inc.*, 331 B.R. 176, 185 (Bankr. D. Del. 2005) ("The Bankruptcy Court . . . does retain jurisdiction post-confirmation to enforce the Plan.  'The court may direct the debtor and any other necessary party . . . to perform any . . . act . . . that is necessary for the consummation of the plan.'") (quoting 11 U.S.C. § 1142(b)). |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **8) Limited Objection and Reservation of Rights of Comcast Corporation and Comcast Cable (collectively, "<u>Comcast</u>") [Docket No. 7966]** | |
| i) Comcast objects to the proposed assumption of its contracts to the extent that the requisite cure payments are not made.  Because no cure schedule has been filed, Comcast must assume that the Noteholder Plan Proponents believe that the requisite cure amount is zero.  However, cure amounts are in fact owed.  *See* ¶¶ 2-4 at pp. 2-3. | i) **Inaccurate**.  The Noteholder Plan provides that no executory contract will be assumed unless, among other things, all cure amounts have been paid in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123.  *See* Noteholder Plan, § 6.1.1. |
| ii) To the extent that any cure dispute is not fully resolved prior to the confirmation hearing, Comcast requests that the Noteholder Plan and/or Confirmation Order include (a) a specific process by which the Debtors and contract counterparties will resolve or litigate outstanding cure disputes that arise in connection with the assumption of executory contracts and (b) the timing of payment of any cure amounts due in connection with such assumption.  *See* ¶ 5 at p. 3 (citing Section 6.2 of the Noteholder Plan). | ii) The Confirmation Order will include procedures that provide executory contract counterparties with notice and an opportunity to be heard in respect of cure disputes. |

| **Adversary's Objection** | **Noteholder Plan Proponents' Response** |
|---|---|
| **9)  Limited Objection of Ace American Insurance Company ("ACE") [Docket No. 7968]** | |

| | |
|---|---|
| i)  The Reorganized Debtors cannot continue to receive the benefits of the insurance programs provided by ACE without remaining liable for the Debtors' obligations thereunder.  The Noteholder Plan must expressly provide that (a) the ACE Insurance Program (as defined in the objection) is continued or assumed pursuant to all of its terms and conditions, (b) no claim arising under the ACE Insurance Program is discharged or released and that the Reorganized Debtors shall remain liable for the Debtors' obligations under the ACE Insurance Program, and (c) the collateral and security provided to ACE is unaltered by the Noteholder Plan.  *See ¶¶ 17-21 at pp. 6-7* (citing Section 6.9 of the Noteholder Plan).<br><br>To resolve the foregoing objections, ACE proposes the following amended language to Section 6.9 of the Noteholder Plan (with new language italicized and deletions noted with a strike through):<br><br>*"Notwithstanding anything to the contrary in the Disclosure Statements, Plan, any other Plan document, the Confirmation Order or any other order of the Bankruptcy Court (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction or release), the insurance policies (including, without limitation, any policies covering directors' or officers' conduct)* ~~Insurance policies~~ issued to, or insurance agreements entered into by, any one or more of the Debtors prior to the Petition Date *and all collateral and security relating thereto (~~including~~* | i)  Section 6.9 of the Noteholder Plan has been revised to include language that is substantially identical to the language proposed by ACE (with new language italicized and deletions noted with a strike through):  *"Notwithstanding anything to the contrary in the Noteholder Specific Disclosure, Noteholder Plan, any other Noteholder Plan document, the Confirmation Order or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release), the insurance policies (including, without limitation, any policies covering directors' or officers' conduct)* ~~Insurance policies~~ issued to, or insurance agreements entered into by, any one or more of the Debtors prior to the Petition Date *and all collateral and security relating thereto* ~~(including without limitation, any policies covering directors' or officers' conduct)~~ shall continue in effect after the Effective Date *pursuant to their respective terms and conditions, and the Reorganized Debtors shall honor the Debtors' obligations thereunder regardless of whether such obligations arise prior to or after the Effective Date.*  To the extent that *any* ~~such~~ insurance policies or agreements (including without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary in the *Noteholder* Plan, the *Noteholder* Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute ~~approve~~ approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement *assumed by the Debtors.*  To the extent that the Bankruptcy Court determines *that a cure payment is required* ~~otherwise~~ as to any such insurance policy or agreement, the Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief."* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| ~~without limitation, any policies covering directors' or officers' conduct)~~ shall continue in effect after the Effective Date *pursuant to their respective terms and conditions, and the Reorganized Debtors shall honor the Debtors' obligations thereunder regardless of whether such obligations arise prior to or after the Effective Date.* To the extent that *any* ~~such~~ insurance policies or agreements (including without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute ~~approve~~ approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement *assumed by the Debtors*. To the extent that the Bankruptcy Court determines *that a cure payment is required* ~~otherwise~~ as to any such insurance policy or agreement, the Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief." *See ¶* 22 at pp. 7-8. | |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **10) Limited Objection of Cook County Department of Revenue ("<u>Cook County</u>") [Docket No. 7971]** | |
| i)  Cook County filed a priority tax claim (in the amount of $1,519,196.85) after the bar date for filing general unsecured claims.  Pursuant to Bankruptcy Code sections 502(b)(9) and 726(a)(1), late-filed priority tax claims must be paid before any distributions are made to general unsecured creditors.  *See* ¶ 4 at p. 2.  Accordingly, Cook County objects to the Noteholder Plan unless the Noteholder Plan is clarified to provide for the payment of Cook County's tax claim.  *See* ¶¶ 4-6 at pp. 2-3. | i)  To the extent Cook County is entitled to an allowed claim, the claim will be paid in accordance with the Noteholder Plan and the Bankruptcy Code.  *See* Noteholder Plan, § 2.3. |
| **11) Objection of Robert R. McCormick Tribune Foundation and Cantigny Foundation (collectively, the "<u>Foundations</u>") [Docket No. 7972]** | |
| a)  <u>**The Creditors' Trust Lacks Standing to Assert Constructive Fraudulent Transfer Claims**</u> | |
| i)  Litigation trusts, like the Creditors' Trust established under the Noteholder Plan, do not have standing to pursue creditor claims, even when those claims are purportedly transferred from the creditor to a trust.  *See* ¶ 34 at p. 11. | i)  **Incorrect**.  As a threshold matter, the Foundations lack standing to object to confirmation of the Noteholder Plan.  *See, e.g., In re Provident Royalties*, No. 09-33886 (HDH), 2010 WL 2404278, at *8 (Bankr. N.D. Tex. June 10, 2010) ("QA3 lacks standing to object to the Plan.  QA3 is not a creditor or equity interest holder, and is appearing as a defendant or potential defendant . . . . QA3's assertions regarding the potential impact of the Plan, through the Assignment Mechanism [pursuant to which litigation claims were assigned to a trust established under the plan], of its defensive arguments, positions and costs, are not the type of direct pecuniary interests or sufficient stake in the confirmation of the Plan itself that can confer standing to be heard with respect thereto."); *In re AbitibiBowater Inc.*, No. 09-11296 (KJC), 2010 WL 4823839, at *8 (Bankr. D. Del. Nov. 22, 2010) (where employees asserted that they were bearing a disproportionate share of the debtors' labor cost-cutting initiatives and that a potential labor strike would impact the feasibility of the plan, the court found that the employees lacked standing because a party in interest is limited to objecting only to provisions of a |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| | plan "that directly or adversely affects the pecuniary interests of" the party in interest). Furthermore, contrary to the Foundations' argument, a creditors' trust has standing to pursue creditor claims assigned to the trust pursuant to a plan of reorganization. *See Trustee of the Investor Claim Trust v. Wells Fargo Bank, N.A. & Wells Fargo Bank of Texas, N.A. (In re I.G. Services, Ltd, IWG Services, Ltd.)*, No. 04-5041 (LMC), 2007 WL 2229650, at \*1 (Bankr. W.D. Tex. July 31, 2007) (stating that a post-confirmation trust holding individual creditor claims pursuant to a plan of reorganization had "survived a number of motions to dismiss, including a motion claiming that the trustee lacked standing to pursue the action."). Similarly, a number of bankruptcy courts have approved plans of reorganization that created creditors' trusts substantially identical to the Creditors' Trust established under the Noteholder Plan. *See, e.g., In re Lyondell Chemical Company, et al.*, No. 09-10023 (Bankr. S.D.N.Y. Apr. 23, 2010); *In re Falcon Prods., Inc.*, No. 05-41108-399 (Bankr. E.D. Mo. Oct. 17, 2005); *In re Heritage Org., LLC*, 413 B.R. 438, 456 (Bankr. N.D. Tex. 2009); *In re I.G. Servs., Ltd., IWG Servs., Ltd.,* No. 99-53170, 99-53171 (LMC), (Bankr. W.D. Tex. May 19, 2003). Finally, if and to the extent the Creditors' Trust lacks standing to prosecute the claims assigned to the Creditors' Trust under the Noteholder Plan, nothing in the Noteholder Plan deprives defendants in any such litigation from arguing that the Creditors' Trust lacks standing to prosecute such claims. |
| ii)  Even if the claims could be assigned, the Creditors' Trust's standing only extends as far as the standing of creditors, and an individual creditor may not assert a general claim belonging to all creditors. *See* ¶¶ 35-36 at pp. 12-13. | ii)  **Incorrect**. The Foundations' argument rests on the mistaken premise that the Creditors' Trust will prosecute "general claim[s] belonging to all creditors." To the contrary, as expressly set forth in the Noteholder Plan, the Creditors' Trust will prosecute claims assigned to the Creditors' Trust by *individual* creditors. *See* Noteholder Plan, § 5.18.2. Furthermore, if and to the extent the Foundations' argument is correct, nothing in the Noteholder Plan deprives defendants in any litigation commenced by the Creditors' Trust from arguing that the Creditors' Trust lacks standing to prosecute the litigation. Finally, the Noteholder Plan expressly provides that "[t]o the extent that any State Law Avoidance Claims cannot be transferred to the Creditors' Trust because of a restriction on transferability under applicable law, such Creditors' Trust Assets shall be deemed to have been retained by the Creditors' Trust Beneficiary, and the Creditors' Trust shall be deemed to have been designated as a representative of such Creditors' Trust Beneficiary to enforce and pursue such State |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| | Law Avoidance Claims on behalf of such Creditors' Trust Beneficiary." *Id.* at § 5.18.3. |
| iii) The only method by which an individual creditor could be vested with standing to assert any state law claim would be the Debtors' total abandonment of any and all claims related to the LBO. *See* ¶ 37 at p. 13. | iii) **Incorrect**. The law is well-settled that, once the two-year statute of limitations under Bankruptcy Code section 546(a) expires, if the estate has not commenced an applicable claim, creditors regain the right to prosecute their individual state law fraudulent conveyance claims to the same extent as if the bankruptcy had never been commenced. *See, e.g., In re Integrated Agri, Inc.*, 313 B.R. 419, 427-28 (Bankr. C.D. Ill. 2004) ("A creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit, once the statute of limitations expires on the bankruptcy trustee's right to bring the claim. At that point, the bankruptcy court ordinarily would have no jurisdiction to hear the creditor's suit to recover from a third party transferee.") (citation omitted); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) ("[T]he commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors. However, the trustee does not retain this exclusive right in perpetuity. The trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action . . . . [O]nce a trustee's statutory time period has expired, an unsecured creditor can bring an action against a fraudulent transferee under state law, provided the state statute of limitations has not yet expired.") (internal citations and quotations omitted). Here, the section 546(a) statute of limitations for an Estate representative to commence state law constructive fraudulent conveyance claims against shareholders expired on December 8, 2010. Such claims, therefore, revested in creditors when the Debtors and their Estates failed to commence these claims on or before December 8, 2010. Accordingly, the Foundations' allegation – i.e., that the only method by which an individual creditor could be vested with standing to assert any state law claim would be the Debtors' total abandonment of any and all claims related to the LBO – is belied by the foregoing authorities. Indeed, the Debtors cannot, as a result of the passing of the section 546(a) statute of limitations, abandon state law constructive fraudulent conveyance claims against shareholders because such claims no longer belong to the Debtors or their Estates. |

*In re Tribune Company, et al.:* **Summary of Objections Lodged Against the Noteholders' Plan of Reorganization and Noteholders' Responses Thereto**

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| b) **The Creditors' Trust Circumvents Federal Law** | |
| i)   The Creditors' Trust is barred by Bankruptcy Code section 546(e) from pursuing claims for constructive fraud.  The Creditors' Trust circumvents federal law, frustrates Congress' deliberate efforts to exclude settlement payments from a debtor's avoidance powers, and violates the Supremacy Clause.  The Noteholder Plan cannot avoid preemption by disclaiming or abandoning the constructive fraud claims because the claims are not property of the estate and doing so would frustrate the intent behind Bankruptcy Code section 546(e). *See ¶¶ 54-73 at pp. 18-24.* | i)   **Incorrect**.  As a threshold matter, Bankruptcy Code section 546(e), by its plain terms, applies only to actions undertaken by the "trustee," not by individual creditors.  11 U.S.C. § 546(e).  Furthermore, consistent with the plain meaning of the statute, courts have held that Bankruptcy Code section 546(e) applies only to causes of action that belong to a debtor's estate and does not apply to causes of action belonging to individual creditors and assigned to a creditors' trust.  *See, e.g. PHP Liquidating, LLC v. Charles H. Robbins, et al.*, 291 B.R. 603, 607 (D. Del. 2003) ("Thus, the Court concludes that if the avoidance action were brought by a trustee or a debtor-in-possession (or the successor to a debtor-in-possession), the avoidance action would be barred by Section 546(e) of the Bankruptcy Code.  However, in this case, PHP LLC has not asserted its claims against Movants in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession.  Rather, PHP LLC is bringing the instant claims as a direct assignee of the unsecured creditors.  As such, Section 546(e) is not a bar to PHP LLC's claims.").  Not surprisingly, each of the section 546(e) cases cited in the Foundations' objection involved actions commenced by estate representatives, not individual creditors.  Accordingly, those cases have no application here.  Finally, if and to the extent the Foundations' arguments are correct, nothing in the Noteholder Plan deprives defendants in any such litigation from arguing that Bankruptcy Code section 546(e) should apply. |
| c) **The Noteholder Plan Has Not Been Proposed in Good Faith** | |
| i)   The Litigation Trust and the Creditors' Trust will sue virtually the same parties, assert virtually the same claims, and attempt to recover from the very same pool of potential damages. *See ¶¶ 38-39 at pp. 13-14.* | i)   **Inaccurate**.  The Noteholder Plan expressly provides that the Creditors' Trust will pursue only the Disclaimed State Law Avoidance Actions.  *See* Noteholder Plan, § 5.18.2.  The Litigation Trust, by contrast, will pursue all other LBO-Related Causes of Action other than the Disclaimed State Law Avoidance Actions.  *See id.*, at § 5.17.  As set forth in the accompanying Memorandum of Law in Support of Confirmation of the Noteholder Plan ("Noteholder Confirmation Brief"), the Noteholder Plan has been proposed in good faith. |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **d)  The Foundations Join the Objection of Certain Current and Former Officers and Directors [Docket No. 7981]** | • *See* Response to the Objection of Certain Current and Former Directors, Officers and Employees, *infra* at pp. 23-25. |
| **12) Objection of the Secretary of the United States Department of Labor (the "DOL") [Docket No. 7975]** | |
| i)  The Noteholder Plan wrongly seeks to subordinate the claims asserted by the DOL (the "DOL Claims") under Bankruptcy Code Section 510(b). | i)  While the Noteholder Plan Proponents believe that the DOL Claims are properly classified as Subordinated Securities Claims and dispute the arguments made in the DOL's objection and reserve all rights with respect to such arguments, the Noteholder Plan has been revised to provide for the placement of a reserve in an amount equal to whatever amount is required by the Bankruptcy Court.  Accordingly, if the Bankruptcy Court determines that the DOL Claims are not subject to subordination under Bankruptcy Code section 510(b), the DOL will not suffer any prejudice. |
| **13) Limited Objection of GreatBanc Trust Company ("GreatBanc") [Docket No. 7977]** | |
| **a)  GreatBanc's Rights to Assert Setoff, Recoupment or Similar Defenses Against the Debtors Should Be Preserved** | |
| i)  GreatBanc seeks clarification as to whether the discharge and injunction provisions in Sections 11.1.1 and 11.1.2 of the Noteholder Plan apply to (a) GreatBanc's contractual indemnification and contribution claims against the Debtors, or any Subsidiary Non-Debtors that may become Debtors, under that certain trustee agreement pursuant to which GreatBanc was appointed as trustee to hold contributions made by Tribune to the ESOP; and (b) any non-contractual claims GreatBanc may have against the Debtors, or Subsidiary Non-Debtors that may become Debtors, for contribution and indemnification, arising in connection with the | i)  While no proof of claim has been filed on account of the GreatBanc Claims (notwithstanding the passing of the bar date for filing such claims), to the extent such a claim is later filed by GreatBanc, the Noteholder Plan Proponents reserve all of their rights to object to any such proof of claim on the grounds, *inter alia*, that it is time-barred and disallowed pursuant to Bankruptcy Code section 502(e). |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| Creditors' Committee's adversary proceeding (the "<u>Adversary Proceeding</u>") against certain third parties defendants, including Tribune and GreatBanc (collectively, the "<u>GreatBanc Claims</u>"). *See* ¶ 38 at p. 11. | |
| ii) To the extent the discharge provisions in Sections 11.1.1 and 11.1.2 of the Noteholder Plan are intended to foreclose the GreatBanc Claims, GreatBanc objects and argues that such provisions should not foreclose GreatBanc's ability to assert defenses in the Adversary Proceeding, by means of setoff or other similar defenses. *See* ¶ 39 at p. 11; *see also* ¶¶ 25-28 at pp. 7-8. | ii) Sections 11.1.1 and 11.1.2 of the Noteholder Plan have been revised to include the following language: "*Notwithstanding anything contained in Sections 11.1.1 and 11.1.2 of the Noteholder Plan, to the extent . . . GreatBanc Trust Company . . . has setoff or other recoupment rights against the Debtors under the Bankruptcy Code, such rights are preserved.*" |
| **b) <u>Holders of Other Guarantor Debtor Claims Against Any Subsidiary Non-Debtors that May Become Debtors Should Be Entitled to Vote on the Noteholders Prepackaged Plan Because They Are Impaired</u>** | |
| i) Because claims that may be asserted against Guarantor Non-Debtors that could become Debtors may be treated as "Other Guarantor Debtor Claims" pursuant to Sections 3.4.6 and 3.5 of the Noteholder Plan, holders of such claims would be impaired and should therefore be entitled to vote on the Noteholder Plan. *See* ¶¶ 41-45 at pp. 12-13. | i) **Inaccurate**. The Noteholder Plan provides that, to the extent there are any claims against a Subsidiary Non-Debtor (including a Guarantor Non-Debtor) that becomes a Debtor, any such claims (except Loan Guaranty Claims and Intercompany Claims) shall be reinstated. *See* Noteholder Plan, § 3.5.2. Accordingly, all claims (except for Loan Guaranty Claims and Intercompany Claims) against any Subsidiary Non-Debtor that becomes a Debtor are Unimpaired under the Noteholder Plan and therefore not entitled to vote. *See id.* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **14) Limited Objection of Iron Mountain Information Management, Inc. ("<u>Iron Mountain</u>") [Docket No. 7978]** | |
| i)    The Noteholder Plan must provide for the payment of all requisite cure amounts to comply with the Bankruptcy Code.  Iron Mountain argues that the first two sentences of Section 6.2 of the Noteholder Plan should be stricken because they could be interpreted as allowing for assumption of contracts without paying the necessary cure costs in connection therewith.  Those sentences could be interpreted to mean that executory contracts not listed in the Noteholder Cure Schedule or similar filing could be assumed without paying known cure obligations.  *See* ¶¶ 4-6 at pp. 2-3. | i)    **Inaccurate**.  The Noteholder Plan provides that no executory contract will be assumed unless, among other things, all cure amounts have been paid in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123. *See* Noteholder Plan, § 6.1.1. |
| ii)    The foregoing sentences deprive executory contract counterparties with notice and an opportunity to be heard in the event that there are last minute unilateral modifications made by the Noteholder Plan Proponents.  *See* ¶¶ 4-6 at pp. 2-3. | ii)    The Confirmation Order will include procedures that provide executory contract counterparties with notice and an opportunity to be heard in respect of cure disputes. |
| **15) Limited Objection of Warren Beatty ("<u>Beatty</u>") [Docket No. 7979]** | |
| i)    The vesting provisions in the Noteholder Plan are inappropriate.  Beatty objects to Section 5.7 of the Noteholder Plan to the extent it vests the Dick Tracy Rights (defined below) in the Reorganized Debtors free and clear of Beatty's interests or rights.  *See* ¶¶ 14-15 at p. 5.<br><br>The "<u>Dick Tracy Rights</u>" are certain motion picture, television and other rights and interests in the Dick Tracy cartoon character that were granted by Tribune Media Services, Inc. to Beatty pursuant to a written agreement on or about August 28, | i)    Section 5.7 of the Noteholder Plan has been revised to include language that is substantially identical to the language proposed by Beatty:  *"Notwithstanding anything to the contrary in the Noteholder Plan, the Noteholder Plan Supplement, any document filed in connection with the Noteholder Plan or Confirmation thereof, or the Confirmation Order, such documents do not and shall not affect, impair, or otherwise alter the rights or remedies, if any, of Warren Beatty to or interests in motion picture, television and other rights to and interests in the Dick Tracy character (in each case, if any, the "<u>Dick Tracy Rights</u>") granted to Mr. Beatty pursuant to an agreement dated August 28, 1985, between Mr. Beatty and Tribune Media Services, Inc.; provided, further, that nothing in such documents shall in any way modify or alter or be deemed* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| 1985. | *to modify or alter the following Bankruptcy Court orders: (i) Order Denying Motion to Dismiss Adversary Proceeding dated November 9, 2009, Case No. 08-13141 (KJC) (Bankr. D. Del. 2008) (Bankr. Ct. ECF No. 2535) and (ii) Stipulated Order Staying Adversary Proceeding dated December 23, 2009, Case No. 09-50486 (KJC) (Bankr. D. Del. 2009) (Adv. Proc. ECF No. 42). All of Mr. Beatty's rights, interests, and remedies in and to the Dick Tracy Rights, if any, are expressly reserved and are not waived, modified impaired, or otherwise altered in any way by the Noteholder Plan."* |
| ii) Beatty objects to Sections 11.1.1 and 11.1.2 of the Noteholder Plan to the extent they are intended to discharge Beatty's interest in the Dick Tracy Rights and enjoin the continuation of the California Action (defined below). *See* ¶¶ 16-18 at pp. 5-7.<br><br>The "California Action" is litigation commenced by Beatty on November 20, 2008 in the United States District Court of the Central District of California, which seeks a declaratory judgment that the Dick Tracy Rights belong to him. | ii) This objection should be resolved with the inclusion of the language proposed above. |
| To resolve each of the foregoing objections, Beatty requests that the following language be added to the Noteholder Plan:<br><br>*"Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any document filed in connection with the Plan or confirmation thereof, or this Order (collectively, the "Plan and Confirmation Documents"), the Plan and Confirmation Documents do not and shall not affect, impair, or otherwise alter Mr. Warren Beatty's rights or remedies to or interests in motion picture, television and other rights to and interests in the Dick Tracy character (the "Dick Tracy Rights") granted to Mr. Beatty pursuant to an agreement dated August 28, 1985, between Mr. Beatty and Tribune Media Services, Inc.; provided, further, that nothing in the Plan and Confirmation Documents shall in any way modify or alter or be deemed to modify or alter this Court's orders dated (i) November 9, 2009, modifying the automatic stay for the purpose of allowing the civil case styled Warren Beatty v.* | |

| **Adversary's Objection** | **Noteholder Plan Proponents' Response** |
|---|---|
| *Tribune Media Services, Inc., No. 08-cv-07662-DDP-SS (C.D. Ca. 2008) (the "California Action") "to continue and proceed in all respects, including (without limitation) dispositive motions, pleadings, discovery, trial, entry of judgment and post-judgment proceedings of the California District Court only[,]" (Bankr. Ct. Dkt. No. 2535), and (ii) December 23, 2009, staying the adversary proceeding styled Tribune Media Services, Inc. v. Warren Beatty, No. 09-50486 (KJC) (Bankr. D. Del. 2009) to allow the Mr. Beatty and Tribune Media Services, Inc. to proceed with the California Action (Adv. Proc. D.I. 42). All of Mr. Beatty's rights, interests, and remedies in and to the Dick Tracy Rights are expressly reserved and are not waived, modified impaired, or otherwise altered in any way." See* ¶ 11 at p. 4. | |
| **16) Objection of Certain Current and Former Directors, Officers and Employees (collectively, the "D&O Objectors") [Docket No. 7981]** | |
| a) **The Creditors' Trust Is Inappropriate** | |
| i)  The Creditors' Trust impermissibly circumvents, limits, eliminates and otherwise prejudices defenses, cross-claims and third-party claims otherwise available to the D&O Objectors.  *See* p. 13. | i)  **Inaccurate**.  As a threshold matter, the D&O Objectors provide no basis in support of this allegation.  Moreover, the Noteholder Plan does not deprive the D&O Objectors of any defenses, cross-claims and/or other third-party claims that may be available to the D&O Objectors to the extent such claims are valid. |
| ii)  The Bankruptcy Code does not authorize the proposed disclaimer or assignment of the Avoidance Actions (as defined in the objection) to the Creditors' Trust.  *See* p. 13. | ii)  **Incorrect**.  The D&O Objectors cite no authority for the argument that a plan of reorganization is barred from creating a creditors' trust to which creditors assign certain causes of action.  Indeed, a number of bankruptcy courts have approved plans of reorganization that establish such trusts.  *See, e.g., In re Lyondell Chemical Company, et al.*, No. 09-10023 (Bankr. S.D.N.Y. Apr. 23, 2010); *In re Falcon Prods., Inc.*, No. 05-41108-399 (Bankr. E.D. Mo. Oct. 17, 2005); *In re Heritage Org.*, LLC, 413 B.R. 438, 456 (Bankr. N.D. Tex. 2009); *In re I.G. Servs., Ltd., IWG Servs., Ltd.*, No. 99-53170, 99-53171 (LMC), (Bankr. W.D. Tex. May 19, 2003). |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| iii) This scheme is unlawful, inequitable, not proposed in good faith and not consistent with the Bankruptcy Code. *See* p. 13. | iii) **Incorrect**.  The D&O Objectors cite no authority for the argument that the Noteholder Plan is unlawful and inequitable, nor do they put forth any facts supporting their allegations.  Furthermore, as set forth in the accompanying Noteholder Confirmation Brief, the Noteholder Plan has been proposed in good faith. |
| **b)  Other Miscellaneous Objections** | |
| i)  The D&O Objectors object to the extent that Sections 6.5 and 6.7 nullify or otherwise modify the exculpation provided to the D&O Objectors under the Debtors' corporate documents and/or applicable law. *See* p. 14. | i)  Sections 6.5 and 6.7 of the Noteholder Plan have been revised to include the following language:  *"For the avoidance of doubt, nothing contained in this article shall affect (i) any prepetition Claim against the Debtors or their Estates for indemnification arising out of the prepetition conduct of any director, officer or employee of the Tribune Entities, including any challenge to the classification and treatment of any such Claims under the Noteholder Plan or (ii) the exculpation provisions in the Debtors' certificates of incorporation or analogous documents, including, without limitation, Tribune's amended and restated certificate of incorporation dated June 12, 2000, and Tribune's amended and restated certificate of incorporation dated December 20, 2007, to the extent, if any, that such provisions shield any such director, officer or employee from liability arising out of the pre-Effective Date conduct of any such director, officer or employee; provided, however, nothing in the Noteholder Plan shall affect (x) the Debtors' or the Reorganized Debtors' rights and defenses with respect to such Claims or such provisions, including, but not limited to, any counterclaim, cross claim, right of setoff, recoupment or other defense, whether legal or equitable, and all such rights and defenses shall be fully preserved and enforceable to the fullest extent allowed under applicable law or (y) any party's rights to object to such Claims or such provisions (including, without limitation, their enforceability) on any grounds which shall be fully preserved; provided further that the Reorganized Debtors shall have no liability for such Claims."* |
| ii)  The Bankruptcy Court must retain jurisdiction over the Litigation Trust and the Creditors' Trust.  *See* p. 14. | ii)  **Inaccurate**.  As a threshold matter, the Noteholder Plan expressly provides that the Bankruptcy Court retains jurisdiction over any and all matters related to the Litigation Trust.  *See* Noteholder Plan, § 12.1.12.  With respect to the Creditors' Trust, however, the Bankruptcy Court should not retain jurisdiction because the State Law Avoidance Claims ceased to belong to the Debtors and/or their Estates upon the expiration of the |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| | statute of limitations under Bankruptcy Code section 546(a).  Accordingly, the State Law Avoidance Claims belong to individual creditors who may pursue such claims outside of the Bankruptcy Court.  *See* Noteholder Plan, §§ 5.14.3 and 5.18.4. |
| iii)  The Confirmation Order must expressly preserve all rights, claims and defenses that are otherwise not expressly affected by such Confirmation Order.  *See* p. 14. | iii)  **Incorrect.**  The Confirmation Order can only address what is within the purview of the Bankruptcy Court and cannot include a preservation of rights with respect to matters that are not expressly before the Bankruptcy Court. |
| **17) Objection of the United States Trustee (the "<u>UST</u>") [Docket No. 7982]** | |
| i)  Section 9.1.1 of the Noteholder Plan must contain provisions for the Bankruptcy Court, or parties in interest (including the UST), to test the reasonableness of the fees and expenses of the Noteholder Plan Proponents' professionals in order to comply with Bankruptcy Code section 1129(a)(4).  *See* ¶ 9 at pp. 3-4. | i)  Section 9.1.1 of the Noteholder Plan has been revised to provide as follows:  *"Within ninety (90) days of the Effective Date, each of the professionals retained by the Plan Proponents shall file with the Bankruptcy Court an application, together with detailed invoices annexed thereto, requesting payment for reasonable fees and expenses incurred during the period from the Petition Date through and including the Effective Date, in connection with the Chapter 11 Cases, the Noteholder Plan, or the transactions contemplated therein (including, without limitation, investigating, negotiating, documenting, and completing such transactions and enforcing, attempting to enforce, and preserving any right or remedy contemplated under in the Chapter 11 Cases). Within ten (10) Business Days of the entry of a Final Order by the Bankruptcy Court approving the payment thereof, in whole or in part, the Disbursing Agent shall pay such fees and expenses so approved."* |
| ii)  Section 13.7 of the Noteholder Plan fails to include a provision addressing the requirement to file post-confirmation reports and pay post-confirmation fees until all cases are closed, converted or dismissed. *See* ¶ 10 at p. 4. | ii)  Section 13.7 of the Noteholder Plan has been revised to include the following language: *"In addition, the Reorganized Debtors shall file post-confirmation reports and pay post-confirmation fees in accordance with Bankruptcy Code section 1106(a)(7) and the Office of the United States Trustee, District of Delaware, Operating Guidelines for Chapter 11 Cases."* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **18) Objection of Sam Zell ("Zell") [Docket No. 7983]** | |
| i) The Noteholder Plan violates Bankruptcy Code section 365 by providing that it will not honor prepetition indemnification obligations related to director and officer liability in connection with the LBO. *See* p. 3. Accordingly, the Noteholder Plan contravenes Bankruptcy Code section 1129(a)(1). *See id.* | i) Sections 6.5 and 6.7 of the Noteholder Plan have been revised to include the following language: *"For the avoidance of doubt, nothing contained in this article shall affect (i) any prepetition Claim against the Debtors or their Estates for indemnification arising out of the prepetition conduct of any director, officer or employee of the Tribune Entities, including any challenge to the classification and treatment of any such Claims under the Noteholder Plan or (ii) the exculpation provisions in the Debtors' certificates of incorporation or analogous documents, including, without limitation, Tribune's amended and restated certificate of incorporation dated June 12, 2000, and Tribune's amended and restated certificate of incorporation dated December 20, 2007, to the extent, if any, that such provisions shield any such director, officer or employee from liability arising out of the pre-Effective Date conduct of any such director, officer or employee; provided, however, nothing in the Noteholder Plan shall affect (x) the Debtors' or the Reorganized Debtors' rights and defenses with respect to such Claims or such provisions, including, but not limited to, any counterclaim, cross claim, right of setoff, recoupment or other defense, whether legal or equitable, and all such rights and defenses shall be fully preserved and enforceable to the fullest extent allowed under applicable law or (y) any party's rights to object to such Claims or such provisions (including, without limitation, their enforceability) on any grounds which shall be fully preserved; provided further that the Reorganized Debtors shall have no liability for such Claims."* |
| ii) The unfairness of the proposed retroactive removal of indemnification obligations renders the Noteholder Plan unconfirmable on the grounds that it was not proposed in good faith in violation of Bankruptcy Code section 1129(c)(3). *See* p. 7. | ii) **Incorrect**. As set forth in the accompanying Noteholder Confirmation Brief, the Noteholder Plan has been proposed in good faith. |
| iii) Zell joins in the Objection of EGI-TRB LLC [Docket No. 7988] *See* pp. 1-2. | iii) *See* Response to EGI-TRB LLC Objection, *supra* at pp. 28-31. |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **19) Objection of Neil Plaintiffs [Docket No. 7984]** | |
| a) **Section 6.8 of the Noteholder Plan Is Unnecessary and Improper** | |
| Section 6.8 of the Noteholder Plan provides that the Debtors or the Noteholder Plan Proponents will seek, in their sole discretion, *inter alia*: "a determination of . . . the legal effect of the forgiveness of the ESOP note." In at least three respects, Section 6.8 of the Noteholder Plan may be an inappropriate attempt to preempt jurisdiction from the Northern District of Illinois, which is considering this very issue in a pending motion for partial summary judgment filed by GreatBanc in the *Neil v. Zell* litigation: | |
| i) The Northern District of Illinois is poised to rule on the issue of the legal effect of the forgiveness of the ESOP note. Given that the Northern District of Illinois has already found GreatBanc liable for a prohibited transaction, the damages flowing from that liability should be decided by that court. The Bankruptcy Court should defer to the Northern District of Illinois' ruling. *See* p. 6. | Section 6.8 of the Noteholder Plan has been revised to include the following language: *"Notwithstanding anything contained herein, the plaintiffs in that certain lawsuit styled Neil v. Zell et al., No. 08-6833 (N.D. Ill) reserve all of their rights to argue that the District Court for the Northern District of Illinois has exclusive jurisdiction to determine the legal effect of the forgiveness of the ESOP Note, and the Proponents, Debtors and Reorganized Debtors reserve all of their rights to argue that the District Court for the Northern District of Illinois does not have exclusive jurisdiction to determine the legal effect of the forgiveness of the ESOP Note."* |
| ii) The Debtors are not a party in the *Neil v. Zell* action and have no direct stake in the outcome of the litigation. Accordingly, the Bankruptcy Court has no occasion to rule on the potential damages in the *Neil v. Zell* action. *See* p. 6. | |
| iii) The ESOP has not filed a claim in these chapter 11 cases, and the ESOP trust is not part of the Debtors' Estates. Accordingly, the Bankruptcy Court has no reason to determine the ESOP's losses in allocating | |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| Estate assets among competing claimants. *See* p. 6. | |
| **b)** **The Neil Plaintiffs Join in the Objection of the Secretary of Labor [Docket No. 7975].** | *See* Response to Objection of the Secretary of Labor, *supra* at p. 19. |
| **20) Joinder of Hianik, Birmingham, and Ehlmann [Docket No. 7986]** | |
| i)   Joins the Objection of Certain Current and Former Directors, Officers and Employees [Docket No. 7981] | i)   *See* Response to the Objection of Certain Current and Former Directors, Officers and Employees, *supra* at pp. 23-25. |
| **21) Joinder of Robert R. McCormick Tribune Foundation and Cantigny Foundation to Objection of Certain Current and Former Officers and Directors [Docket No. 7987]** | |
| i)   Joins the Objection of Certain Current and Former Directors, Officers and Employees [Docket No. 7981] | i)   *See* Response to the Objection of Certain Current and Former Directors, Officers and Employees, *supra* at pp. 23-25. |
| **22) Objection of EGI-TRB LLC ("EGI") [Docket No. 7988]** | |
| **a)** **The Noteholder Plan Is Not Fair or Equitable Nor in the Best Interests of the Debtors' Estates to the Extent the Noteholder Plan Authorizes the Prosecution of Litigation that the Examiner Found Unlikely to Succeed**. | |
| i)   It is appropriate to allow a debtor to abandon causes of action where those claims are unlikely to succeed and potentially costly to the debtors to pursue. *See* pp. 4-5. | i)   Not surprisingly, EGI cites no authority in support of its self-serving position that the Noteholder Plan inappropriately preserves causes of action against EGI, which, in EGI's view, are unlikely to succeed. This determination should not be made by the proposed defendant in this proposed litigation. Moreover, the Examiner has determined that constructive fraudulent conveyance claims at Step 2 (which implicate EGI) have a high likelihood of success, rendering such causes of action extremely valuable. |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| ii) To the extent the Creditors' Committee lacked standing to file suit against EGI, such claims are now time-barred and unavailable for assignment. Accordingly, the Bankruptcy Court should defer authorizing the assignment of claims against EGI until the issue of standing is determined. *See* pp. 5-6. | ii) **Incorrect**. This is not a confirmation objection. The issue of whether the Creditors' Committee had standing to file suit against EGI was determined by order of this Court dated October 27, 2010. |
| **b) The Noteholder Plan Violates Bankruptcy Code Sections 1129(a)(1) and 1129(a)(3) Because It Seeks to Eliminate the Safe Harbor Defense** | |
| i) The Noteholder Plan improperly seeks to deprive EGI and other defendants of the benefit of the safe harbor defense in Bankruptcy Code section 546(e) and, therefore, is unconfirmable under Bankruptcy Code sections 1129(a)(1) and 1129(a)(3). *See* pp. 6-8. | i) **Inaccurate**. The Noteholder Plan does not deprive defendants in any LBO-Related Causes of Action of any potential defenses. To the contrary, the Noteholder Plan is silent as to whether Bankruptcy Code section 546(e) applies to claims and causes of action commenced by the Creditors' Trust. Furthermore, as will be demonstrated when the issue is ripe for adjudication, Bankruptcy Code section 546(e) does not apply to the claims held by the Creditors' Trust. Bankruptcy Code section 546(e), by its plain terms, does not apply to intentional fraudulent conveyance claims. *See* 11 U.S.C. § 546(e). Moreover, while Bankruptcy Code section 546(e) applies to constructive fraudulent conveyance commenced by a debtor's estate under the Bankruptcy Code, it does not apply to state law constructive fraudulent claims commenced by individual creditors solely under state law. *See, e.g. PHP Liquidating, LLC v. Charles H. Robbins, et al.*, 291 B.R. 603, 607 (D. Del. 2003) ("Thus, the Court concludes that if the avoidance action were brought by a trustee or a debtor-in-possession (or the successor to a debtor-in-possession), the avoidance action would be barred by Section 546(e) of the Bankruptcy Code. However, in this case, PHP LLC has not asserted its claims against Movants in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession. Rather, PHP LLC is bringing the instant claims as a direct assignee of the unsecured creditors. As such, Section 546(e) is not a bar to PHP LLC's claims."). Finally, nothing in the Noteholder Plan deprives EGI or any other defendants from asserting Bankruptcy Code section 546(e) as a defense to any claims brought by the |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
|  | Creditors' Trust. |
| **c) The Noteholder Plan Contravenes the Absolute Priority Rule** |  |
| i)  The Noteholder Plan violates the absolute priority rule because it fails to account for the fact that EGI is a creditor of the Debtors with priority over the PHONES Notes.  *See* pp. 12-17. | i)  **Incorrect**.  Under the EGI-TRB Subordination Agreement, the EGI-TRB LLC Notes are subordinated to "all obligations, indebtedness and other liabilities of [Tribune] other than (i) any such obligations, indebtedness or liabilities that by their express terms rank *pari passu* or junior to" the EGI-TRB LLC Notes.  The PHONES Notes Indenture, however, does not expressly reference the EGI-TRB LLC Notes.  Accordingly, the EGI-TRB LLC Notes are, at best, *pari passu* with but more likely subordinated to the PHONES Notes pursuant to the plain meaning of the EGI-TRB Subordination Agreement.  Moreover, if the parties to the EGI-TRB Subordination Agreement had intended for the EGI-TRB LLC Notes to rank senior to the PHONES Notes, they would have specifically listed the PHONES Notes in the litany of exceptions to the definition of "Senior Obligations." |
| **d) Miscellaneous Objections to the Noteholder Plan** |  |
| i)  The Noteholder Plan inappropriately indemnifies the trustees of the Litigation Trust and Creditors' Trust.  The Noteholder Plan should provide that liability may be imposed on the trustees and related parties individually if they improperly pursue litigation that is determined to be without merit.  *See* p. 18 (citing Sections 5.17.10, 5.18.4, 7.16.10 of the Noteholder Plan). | i)  **Inaccurate**.  The indemnification provisions afforded to the trustees of the Litigation Trust and Creditors' Trust are customary and appropriate. |
| ii)  The Noteholder Plan improperly gives Aurelius control over the Litigation Trust and Creditors' Trust.  Further, the members of the trust advisory boards will not owe any fiduciary duties to the | ii)  **Inaccurate**.  The respective trust advisory boards will be comprised of three members, two of which are appointed by Aurelius and the other of which will be appointed by the PHONES Notes Indenture Trustee.  Further, the trust advisory boards will have a fiduciary duty to all holders of the applicable Trust Interests; provided that the |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| creditors that are named defendants in the actions brought by the Trusts. *See* pp. 18-19 (citing *inter alia* Noteholder Plan §§ 5.17.3, 5.18.4, 7.16.4 of the Noteholder Plan).* | respective trust advisory boards will not owe fiduciary obligations to a defendant of a Litigation Trust Cause of Action or State Law Avoidance Claim, as applicable, in the defendant's capacity as such. As set forth in the Noteholder Plan, the intent of this provision is to maximize the value of the assets of the respective Trusts. *See* Noteholder Plan, §§ 5.17.3, 5.18.4. |
| iii) The Noteholder Plan fails to provide for any Bankruptcy Court oversight or notice to beneficiaries of the retention of professionals by the trusts. *See* p. 19 (citing Sections 5.17.6(ii), 5.18.7(ii), 7.16.6(a)(ii)). | iii) The professionals retained by the Trusts are not retained by the Debtors' Estates and, therefore, such professionals may be paid without Bankruptcy Court approval. In any event, the Noteholder Plan and respective Trust Agreements expressly provide that the Trustees are required to pay only the reasonable fees and expenses of their retained professionals. *See* Noteholder Plan, §§ 5.17.9, 5.18.10, 7.16.8. |
| **23) Joinder of Crane Kenney [Docket No. 7991]** | |
| i) Joins the Objection of Certain Current and Former Directors, Officers and Employees [Docket No. 7981]. | i) *See* Response to the Objection of Certain Current and Former Directors, Officers and Employees, *supra* at pp. 23-25. |
| ii) Joins the Objection of Robert R. McCormick Tribune Foundation and Cantigny Foundation [Docket No. 7972] | ii) *See* Response to the Foundations' Objection, *supra* at pp. 15-19. |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| **24) Objection of the State of Illinois, Department of Revenue and Employment Security (the "<u>Illinois Taxing Agency</u>") [Docket No. 7994]** | |
| a) **<u>The Discharge Provisions of the Noteholder Plan Are Overly Broad</u>** | |
| i) The Illinois Taxing Agency objects to Section 11.1.2 of the Noteholder Plan to the extent it attempts to enjoin creditors from exercising their rights of setoff and recoupment.  The Illinois Taxing Agency reserves its right to setoff or recoup its claims against any amounts due the Debtors.  See ¶ 3 at p. 2. | i) Sections 11.1 and Sections 11.1.2 of the Noteholder Plan have been revised to include the following language:  "*Notwithstanding anything contained in Sections 11.1.1 and 11.1.2 of the Noteholder Plan, to the extent . . . the State of Illinois, Department of Revenue and Employment Security . . . has setoff or other recoupment rights against the Debtors under the Bankruptcy Code, such rights are preserved.*" |
| b) **<u>The Illinois Taxing Agencies Join in the Objection of the California Franchise Tax Board [Docket No. 7964]</u>** | • *See* Response to the Objection of the California Franchise Tax Board, *supra* at pp. 7-11. |
| **25) Opposition and Reservation of Rights Filed by Oracle America, Inc. ("<u>Oracle</u>") [Docket No. 7995]** | |
| i) Oracle objects to the proposed assumption of its contracts to the extent that the requisite cure payments are not made.  Because no cure schedule has been filed, Oracle must assume that the Noteholder Plan Proponents believe that the requisite cure amount is zero.  However, cure amounts are in fact owed.  *See* ¶¶ 14-18 at p. 3. | i) **Inaccurate**.  The Noteholder Plan provides that no executory contract will be assumed unless, among other things, all cure amounts have been paid in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123.  *See* Noteholder Plan, § 6.1.1. |
| ii) The proposed Oracle contract assumptions should be denied because the Debtors fail to provide adequate assurance of prompt payment of all sums owed and of future performance under the contracts.  Oracle is unable to determine whether the Debtors | ii) **Inaccurate**.  The Noteholder Plan provides that no executory contract will be assumed unless, among other things, all cure amounts have been paid in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123.  *See* Noteholder Plan, § 6.1.1. |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| have complied, or will comply, with Bankruptcy Code section 365(b)(1) because, among other things, there is a discrepancy in the Debtors' and Oracle's records regarding the appropriate cure amount owed to Oracle.  *See* ¶¶ 19-20 at p. 4. | |
| **26) Objection of the United States on Behalf of the Internal Revenue Service (the "IRS") [Docket No. 8002]** | |
| i)   The IRS objects to Section 1.1.259 of the Noteholder Plan to the extent it defines the IRS's claim in the amount of $37.5 million for tax penalties associated with the ESOP as subject to subordination under Section 510(b).  *See* ¶ 1 at pp. 1-2. | i)   **Inaccurate**.  The IRS's objection is premised on Bankruptcy Code section 510(b), which is the incorrect statutory predicate for subordination of tax penalties.  The Noteholder Plan contemplates the possible subordination of tax penalties pursuant to Bankruptcy Code section 510(c).  The U.S. Supreme Court and the Third Circuit have squarely held that, pursuant to section 510(c), a bankruptcy court has authority to equitably subordinate non-pecuniary loss tax penalties.  *See United States v. Noland, 517 U.S. 535, 540-41 (1996); Burden v. United States,* 917 F.2d 115, 118 -119 (3d Cir. 1990)* ("[W]e conclude that § 510(c) permits bankruptcy courts to subordinate nonpecuniary loss tax penalties"). |
| ii)   The IRS objects to the provisions in the Noteholder Plan regarding payment of priority tax claims (including but not limited to Section 2.3) because the Noteholder Plan fails to provide for full payment of the IRS's priority tax claim in monthly or quarterly distributions.  *See* ¶ 2 at pp. 1-2. | ii)   **Incorrect.**  Section 2.3 of the Noteholder Plan complies with Bankruptcy Code section 1129(a)(9)(C), which requires that all priority claims under Bankruptcy Code section 507(a)(8) receive "regular installment payments in cash – (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the day of the order for relief under section 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided by the plan (other than cash payments made to a class of creditors under section 1122(b))."  11 U.S.C. § 1129(a)(9)(C). |
| iii)   The Noteholder Plan calls for any interest on deferred tax payments to compound annually, whereas applicable nonbankruptcy law, requires that the interest compound daily.  *See* ¶ 3 at p. 3 (citing Section 2.3 of the Noteholder Plan). | iii)   Section 2.3 of the Noteholder Plan has been revised to provide as follows:  *"Notwithstanding anything contained herein, interest on deferred tax payments shall compound in accordance with section 511 of the Bankruptcy Code."* |

*In re Tribune Company, et al.:* **Summary of Objections Lodged Against the Noteholders' Plan of Reorganization and Noteholders' Responses Thereto**

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| iv) The IRS objects to the provisions of the Noteholder Plan concerning releases (including but not limited to Section 11.2 of the Noteholder Plan) because the Noteholder Plan would preemptively bar the IRS from asserting valid claims against third parties, including but not limited to the IRS's claim for excise taxes resulting from the LBO transaction. *See* ¶ 4 at p. 3. | iv) Section 11.1.2 of the Noteholder Plan has been revised to include the following language: *"For the avoidance of doubt, no provision contained herein shall operate to preemptively bar the IRS from asserting valid claims against third parties, including but not limited to the IRS's claim for excise taxes resulting from the Leveraged ESOP Transaction."* |
| v) The IRS objects to Section 11.1 of the Noteholder Plan to the extent it would bar the IRS from assessing and collecting taxes resulting from any taxable transactions that occurred prior to the Petition Date, or any other tax liabilities relating to events that occurred prepetition, but that did not become assessable or "arise" until after the Petition Date. *See* ¶ 5 at p. 3. | v) Section 11.1 is not intended to bar the actions contemplated by the IRS. Nonetheless, the Noteholder Plan Proponents have agreed to amend Section 11.1 to include the following language: *"Notwithstanding anything contained herein, the Noteholder Plan shall not bar the IRS, subject to applicable law, from assessing and collecting taxes resulting from any taxable transactions that occurred prior to the Petition Date, or any other tax liabilities relating to events that occurred prepetition, but that did not become assessable or arise until after the Petition Date."* |
| vi) The IRS objects to any provisions of the Noteholder Plan (including but not limited to Section 2.2) to the extent the Noteholder Plan would deprive the IRS of the right to interest on taxes entitled to administrative priority, as it has the right to receive underpayment interest on such taxes to the extent they are not timely paid. *See* ¶ 6 at p. 4. | vi) **Inaccurate**. Priority Tax Claims are unimpaired under the Noteholder Plan and are entitled to postpetition interest to the extent permitted under applicable non-bankruptcy law pursuant to Bankruptcy Code section 511. Nonetheless, the Noteholder Plan Proponents have agreed to amend Section 2.3 of the Noteholder Plan to include the following clarifying language: *"Notwithstanding anything to the contrary contained in the Noteholder Plan, any Priority Tax Claims asserted by the IRS shall be entitled to postpetition interest to the extent the IRS is entitled to receive postpetition interest on account of such claim."* |
| vii) The IRS objects to those portions of the Noteholder Plan (including but not limited to Section 11.1.2) which prohibit the setoff and recoupment rights of the IRS. *See* ¶ 7 at p. 4. | vii) Sections 11.1.1 and 11.1.2 of the Noteholder Plan have been revised to include the following language: *"Notwithstanding anything contained in Sections 11.1.1 and 11.1.2 of the Noteholder Plan, to the extent . . . the IRS . . . has setoff or other recoupment rights against the Debtors under the Bankruptcy Code, such rights are preserved".* |

| Adversary's Objection | Noteholder Plan Proponents' Response |
|---|---|
| viii)     The IRS objects to the extent the Noteholder Plan seeks to confer jurisdiction on the Bankruptcy Court to determine the tax consequences of the plan or the tax liability of a non-debtor. *See* ¶ 8 at p. 5 (citing Sections 5.17.12, 5.18.1, and 5.18.11 of the Noteholder Plan). | viii) Section 12.2 of the Noteholder Plan has been revised to include the following language:  *"For the avoidance of doubt, the Noteholder Plan does not seek to confer jurisdiction on the Bankruptcy Court to determine the tax consequences of the Noteholder Plan or otherwise determine the tax liability of a non-debtor, in each case unless it has jurisdiction to do so."* |
| **27) Joinder of Timothy P. Knight [Docket No. 8016]** | |
| a)  **Timothy P. Knight Joins the Objection of Certain Current and Former Directors, Officers and Employees [Docket No. 79810]** | • *See* Response to the Objection of Certain Current and Former Directors, Officers and Employees, *supra* at pp. 23-25. |
| **28) Joinder of Tribune Company Employee Compensation Defendants Group [Docket No. 8019]** | |
| a)  **The Employee Compensation Defendants Group Joins the Debtor/Committee/Lender Objection to the Noteholder Plan [Docket No. 8011]** | • *See* Noteholder Confirmation Brief. |