## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) |
| TRIBUNE COMPANY, *et al.*,[1] | ) Chapter 11 |
| | ) Case No. 08-13141 (KJC) |
| Debtors. | ) Jointly Administered |
| | ) |

## DECLARATION OF DAN GROPPER IN SUPPORT
## OF CONFIRMATION OF THE NOTEHOLDER PLAN

---

[1]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the following page.

The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com Corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WCCT Inc., f/k/a WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611**.**

DAN GROPPER, pursuant to 28 U.S.C. § 1746, declares:

1.      I am a Managing Director at Aurelius Capital Management, LP. Aurelius Capital Management, LP, on behalf of its managed entities (collectively, "<u>Aurelius</u>"), is a co-proponent of the *Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes* (as may be amended from time to time, the "<u>Noteholder Plan</u>"). I submit this declaration in support of confirmation of the Noteholder Plan. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Noteholder Plan, the Noteholder Specific Disclosure Statement (as defined below) or the Memorandum of Law of Noteholder Plan Proponents (I) In Support of the Noteholder Plan and (II) In Response to Objections to the Noteholder Plan (the "<u>Memorandum</u>"), as applicable. Except as otherwise noted, I have personal knowledge as to all of the information set forth below.

## I.      BACKGROUND AND QUALIFICATIONS

2.      I am a member of the team with responsibility for managing Aurelius's investment in Tribune.

3.      I have served on many official and ad hoc creditor committees, often in a leadership role. Prior to joining Aurelius in 2008, I spent two years as a Managing Director of the Drawbridge Special Opportunities Fund of Fortress Investment Group. From 1995 through

2004, I worked at Elliott Management, where I became a Portfolio Manager.  I hold a B.S. in Commerce, with distinction, with a Finance concentration from the University of Virginia.

## II.    EVENTS LEADING UP TO COMPETING PLAN PROCESS

4.    On December 8, 2008 (the "Petition Date"), Tribune and certain of its Subsidiaries filed voluntary petitions for relief (collectively, the "Chapter 11 Cases") under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2]  The Debtors comprise 111 entities.

5.    The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.    On October 18, 2010, the Bankruptcy Court established a schedule to file and solicit competing plans of reorganization.  *See* Order Scheduling a Hearing and Establishing Certain Deadlines to Consider Approval of Certain Disclosure Documents (the "Plan Timeline Order") *[ECF No. 6022].*   Pursuant to the Plan Timeline Order, the Bankruptcy Court ordered the Debtors to file their proposed reorganization plan on October 22, 2010, and any other party in interest to file a competing reorganization plan by October 29, 2010.

7.    By the Plan Timeline Order, the Bankruptcy Court also directed (i) the Debtors to file the Joint Disclosure Statement relating to, among other things, the Debtors' businesses, properties, prepetition liabilities and events leading up to the Chapter 11 Cases, (ii) the plan proponents to submit their respective Specific Disclosure Statements describing their

---

[2] On October 12, 2009, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC), Tribune's subsidiary that held the majority of the assets related to the business of the Chicago Cubs Major League Baseball franchise (the "Chicago Cubs"), commenced a Chapter 11 Case as one of the steps necessary to complete a transaction involving the Chicago Cubs and certain related assets.

plans of reorganization and (iii) the plan proponents to file their respective responsive statements in support of their plans to be included in the solicitation packages for those creditors entitled to vote.

## III.    THE NOTEHOLDER PLAN AND NOTEHOLDER SPECIFIC DISCLOSURE STATEMENT

8.    On October 22, 2010, the Debtors filed the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as amended from time to time, the "DCL Plan") [ECF No. 6089].[3] In accordance with the Plan Timeline Order, on October 29, 2010, three competing reorganization plans were filed: (i) the Noteholder Plan;[4] (ii) the Chapter 11 Plan of Reorganization for Tribune and its Subsidiaries Proposed by King Street Acquisition Company, L.L.C., King Street Capital, L.P. and Marathon Asset Management (the "Bridge Lender Plan") [ECF No. 6186]; and (iii) the Chapter 11 Plan of Reorganization For Tribune Company and its Subsidiaries Proposed by Certain Holders of Step One Senior Loan Claims (the "Step One Lender Plan" and, together with the DCL Plan, the Noteholder Plan and the Bridge Lender Plan, the "Competing Plans") [ECF No. 6185].  On December 14, 2010, the Step One Lenders filed a Notice of Withdrawal of the Step One Lender Plan [ECF No. 7190].  On February 7, 2011, the proponents of the Bridge Lender Plan filed a Notice of Withdrawal of the Bridge Lender Plan

---

[3] On January 31, 2011, the Debtors filed the DCL Plan Supplement [ECF No. 7701].

[4] In accordance with the terms of the Noteholder Plan, the Noteholder Plan Proponents filed the Noteholder Plan Supplement on February 4, 2011 [ECF No. 7802].  The Noteholder Plan Supplement identified or otherwise provided information regarding the following: (i) the Claims Purchase Agreement; (ii) a non-exclusive list of LBO-Related Causes of Action and defendants; (iii) the terms of the New Warrant Agreement; (iv) the Restructuring Transactions; (v) the Certificate of Incorporation of Reorganized Tribune; (vi) the By-Laws of Reorganized Tribune; (vii) the terms of the New Senior Secured Term Loan; (viii) the terms of the Exit Facility; (ix) the Litigation Trust Agreement (including the identity of the Litigation Trustee and members of the Litigation Trust Advisory Board); (x) the Creditors' Trust Agreement (including the identity of the Creditors' Trustee and the members of the Creditors' Trust Advisory Board); and (xi) the Distribution Trust Agreement (including the identity of the Distribution Trustee and the members of the Distribution Trust Advisory Board).

*[ECF No. 7821]*.  Accordingly, there now remain only two plans for the Bankruptcy Court to consider for confirmation – the Noteholder Plan and the DCL Plan.

9.    Following a hearing before the Bankruptcy Court on November 29, 2010, the Bankruptcy Court entered the Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agent's Retention and Allocation of Costs of Same; and (X) Granting Related Relief (as amended, the "Disclosure Statement Order") *[ECF No. 7126]*.[5] Pursuant to the Disclosure Statement Order, the Bankruptcy Court approved, among other things, the General Disclosure Statement, specific disclosure statements and other materials to be transmitted to Holders of Allowed Claims in Classes entitled to vote on each of the Competing Plans (the "Solicitation Package"), along with the procedures for soliciting acceptances and rejections of the Competing Plans (the "Solicitation Procedures").  On December 9, 2010, the Noteholder Plan Proponents filed the specific disclosure statement for the Noteholder Plan (the "Noteholder Specific Disclosure Statement") *[ECF No. 7128]*.

10.    I am familiar with the terms and provisions of the Noteholder Plan, the Noteholder Specific Disclosure Statement, and the various exhibits, schedules and ancillary

---

[5] The confirmation schedule and parameters on confirmation-related discovery are the subject of a separate order, entered on December 20, 2010 (*see* the Discovery and Scheduling Order for Plan Confirmation) *[ECF No. 7239]*.

documents related thereto, including those included in the Noteholder Plan Supplement.  I was personally involved in the development of, and substantive negotiations and discussions regarding, the Noteholder Plan and the Noteholder Specific Disclosure Statement.

## IV.    THE NOTEHOLDER PLAN SHOULD BE CONFIRMED

11.    I believe that the Noteholder Plan is fair, reasonable and in the best interests of the Debtors' Estates and all Creditors.  The Noteholder Plan will enable the Debtors to reorganize successfully and accomplish the objectives of chapter 11 while at the same time, through the preservation of the LBO-Related Causes of Action, ensure that all Creditors receive the recoveries to which they are legally entitled.  For this reason and the reasons described below, I believe the Noteholder Plan should be confirmed.

### A.    The Noteholder Plan's Classification of Claims is Appropriate (Section 1122)

12.    In general, I believe the Noteholder Plan's classification scheme mirrors the Debtors' capital structure.  For each Debtor, the various types of bank and, where applicable, bond debt are classified separately to give effect to relative rights, priorities and legal attributes of each type of debt.  To my knowledge, the Claims or Interests in each Class are substantially similar to the other Claims or Interests in such Class, and all Claims or Interests in each Class differ from the Claims and Interests in each other Class in a legal or factual nature, or based on other relevant criteria.  Further, under the Noteholder Plan, secured debt is classified separately from unsecured debt, and Claims and Interests in each Debtor are separately classified.

13.    I am advised and believe that the separate classification of the Step One Lender Claims and Step Two Lender Claims is appropriate.  The Step One Lender Claims and Step Two Lender Claims are each the subject of significant dispute under the Noteholder Plan and the Litigation Trust that will be established on the Effective Date will prosecute LBO-Related Causes of Action against, among others, the Step One Lenders and the Step Two Lenders.

Such disputes are premised on varying legal and factual arguments with respect to each group of Senior Lenders, and the resolution of such disputes (in tandem with the outcome of the Senior Loan Claims Sharing Resolution) could ultimately result in different recoveries for Step One Lenders and Step Two Lenders.  I am also advised and believe that the classification of the Swap Claim as a Senior Lender Claim is appropriate because the Swap Claim and the Step One Senior Loan Claims are substantially similar.

14.     I believe valid business, factual and legal reasons exist for classifying the Claims and Interests into the applicable Classes under the Noteholder Plan.  Accordingly, I believe that the Noteholder Plan satisfies Bankruptcy Code section 1122.

**B.     The Noteholder Plan Satisfies the Seven Mandatory Provisions of Section 1123**

15.     I believe the Noteholder Plan satisfies the seven mandatory requirements of Bankruptcy Code section 1123(a).  I believe that Articles 2 and 3 of the Noteholder Plan satisfy the first three requirements of this section by: (i) designating Classes of Claims and Interests, as required by section 1123(a)(1); (ii) specifying the Classes of Claims and Interests that are Unimpaired under the Noteholder Plan, as required by section 1123(a)(2); and (iii) specifying the treatment of each Class of Claims and Interests that is Impaired under the Noteholder Plan, as required by section 1123(a)(3).  The Noteholder Plan also satisfies Bankruptcy Code section 1123(a)(4) because the treatment of each Claim or Interest within a Class is the same as the treatment of each other Claim or Interest within that Class.

16.     I believe that Articles 5 and 7 of the Noteholder Plan and various other provisions of the Noteholder Plan provide adequate means for the Noteholder Plan's implementation, thus satisfying the fifth requirement of Bankruptcy Code section 1123(a).  Specifically, Articles 5 and 7 of the Noteholder Plan provide for, among other things: (i) the

Debtors' entry into the Restructuring Transactions; (ii) the post-Effective Date corporate governance and management of the Reorganized Debtors; (iii) disbursement of Initial Distributions and Trust Interests; (iv) creation, funding and administration of the Creditors' Trust, the Distribution Trust and the Litigation Trust; (v) post-Effective Date financing of Reorganized Tribune, including execution and implementation of the New Senior Secured Term Loan and the Exit Facility, to the extent necessary; (vi) issuance of the New Common Stock; and (vii) cancellation and, where applicable, surrender of existing securities and agreements. I believe that the proposed implementation steps have been carefully developed to, among other things, ensure that the Debtors have sufficient financial ability to fund their obligations under the Noteholder Plan and operate as a viable going concern after emergence. I believe that the Noteholder Plan Proponents have worked diligently to ensure that the proposed means for implementation will facilitate the Debtors' timely emergence from chapter 11 in a fair and efficient way and believe that the proposed transactions, Trusts and implementation of the various agreements and other documents contemplated under the Noteholder Plan will enable the effective consummation of the Noteholder Plan. I believe that, through these steps and transactions, the Noteholder Plan provides more than adequate means for its implementation.

17.    I believe that the sixth requirement of Bankruptcy Code section 1123(a) (*i.e.*, that a plan prohibit the issuance of nonvoting equity securities) is satisfied because Section 5.3.1 of the Noteholder Plan provides that the New Common Stock will be voting securities. Section 5.3.1 of the Noteholder Plan specifically provides that the Reorganized Debtors' organizational documents will include a provision prohibiting the issuance of non-voting equity securities. Accordingly, the form Amended and Restated Certificate of Incorporation filed with the Noteholder Plan Supplement explicitly prohibits the issuance of non-voting equity securities

to the extent required by Bankruptcy Code section 1123(a)(6). *See* Noteholder Plan Supplement, Exhibit 5.3.1(1) at ¶4. Based on the foregoing, I believe the Noteholder Plan satisfies the requirements of Bankruptcy Code section 1123(a)(6).

18.    Finally, I believe that the Noteholder Plan satisfies Bankruptcy Code section 1123(a)(7) by properly and adequately disclosing or otherwise identifying the procedures for determining the identity and affiliations of all individuals or entities proposed to serve as officers or members of the boards of directors of Reorganized Tribune. Specifically, Section 5.3.2 of the Noteholder Plan provides that the initial board of directors of Reorganized Tribune will be composed of seven members, one of which shall be the chief executive officer of Reorganized Tribune (to the extent the position is not vacant and only in the event that the employment agreement with such chief executive officer so provides). Four of the remaining members will be designated by the Senior Lenders, who will hold a majority of the New Common Stock issued on the Effective Date. The remaining two members will initially be designated by Aurelius. The designation of all members of the initial board of directors of Reorganized Tribune shall be subject to Bankruptcy Court approval. Those members designated by Aurelius (i) must be independent of Aurelius and (ii) until the Distribution Trust is wound down or otherwise liquidated, (a) may be replaced at any time with or without cause by the Distribution Trustee, with the approval of the Distribution Trust Advisory Board, and (b) upon the expiration of their terms will have their successors selected by the Distribution Trustee, with the approval of the Distribution Trust Advisory Board. Additionally, Section 5.3.2 of the Noteholder Plan provides for the contingency in the event that the Senior Lenders, who do not support the Noteholder Plan, fail to designate the four initial members of the board of directors of Reorganized Tribune allotted to them prior to the deadline for the Noteholder Plan Proponents

to disclose the proposed initial board members with the Bankruptcy Court.  In such event, Reorganized Tribune shall, as soon as practicable after the Effective Date, hold a special election to appoint the four initial board members otherwise allocable to the Senior Lenders, and the members elected to the initial board in connection with such special election shall be deemed to be the designees of the Senior Lenders under the Noteholder Plan.  Pursuant to the Noteholder Plan, the identities of the initial directors of Reorganized Tribune will be filed with the Bankruptcy Court no later than five days prior to the commencement of the Confirmation Hearing and, to the extent any such director is an insider (as defined in Bankruptcy Code section 101(31)) other than by virtue of being a director, the nature of any compensation for such person will also be disclosed.

19.    I believe that Section 5.3.2 of the Noteholder Plan also complies with Bankruptcy Code section 1123(a)(7) with respect to the appointment of officers of Reorganized Tribune.  The Noteholder Plan Proponents intend to adopt the officers disclosed by the Debtors in Exhibit 5.3.2(1) of the DCL Plan Supplement (as may be modified by the Noteholder Plan Proponents in their sole discretion, provided that the Noteholder Plan Proponents shall file an amended Exhibit 5.3.2(1) with the Bankruptcy Court in the event they make any such modifications).  The Noteholder Plan Proponents intend to rely on Exhibit 5.3.2(1) of the DCL Plan Supplement to disclose whether any such officer is an insider (as defined in Bankruptcy Code section 101(31)) other than by virtue of being an officer (provided that, to the extent the Noteholder Plan Proponents modify Exhibit 5.3.2(1) of the DCL Plan Supplement, they shall make a separate disclosure as to any Person listed on such modified Exhibit).

20.    Based on the foregoing, I believe that the Noteholder Plan satisfies the requirements of Bankruptcy Code section 1123(a)(7).

**C.      The Discretionary Contents of the Noteholder Plan are Appropriate (Section 1123(b))**

21.      The Noteholder Plan includes several discretionary provisions that I am advised and believe are appropriate pursuant to Bankruptcy Code section 1123(b).  Among other things, the Noteholder Plan (a) leaves several Classes of Claims Unimpaired pursuant to Articles 3 and 4, (b) provides for the treatment of unexpired leases and executory contracts in Sections 6.1.1 and 6.3, as well as the Noteholder Plan Supplement,[6] (c) provides for the retention of certain Litigation Claims by the Estates, while transferring the Litigation Trust Causes of Action and the State Law Avoidance Claims to the Litigation Trust and the Creditors' Trust, respectively and (d) provides for the retention of jurisdiction by the Bankruptcy Court over matters arising in, arising under and related to the Chapter 11 Cases, the Noteholder Plan, the Litigation Trust and the Distribution Trust.  It is my understanding that the Noteholder Plan does not contain any provision that is inconsistent with applicable provisions of the Bankruptcy Code.  Based upon the forgoing, I believe the Noteholder Plan satisfies the requirements of Bankruptcy Code section 1123(b).

**D.      The Noteholder Plan Proponents Have Complied With the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))**

22.      The Affidavit of Solicitation Mailing of Stephenie Kjontvedt (the "Solicitation Affidavit") *[ECF No. 7813]* shows that, on or about December 23, 2010, Epiq Systems Inc. (the "Voting Agent") caused the Solicitation Packages to be mailed to Holders of Claims entitled to vote under the Competing Plans, including the Noteholder Plan.  The Joint Disclosure Statement, the Competing Plans, the responsive statements filed by the respective plan proponents and the Disclosure Statement Order contained in the Solicitation Package were

---

[6] I am advised that the Confirmation Order will contain provisions for the resolution of cure claims that may be asserted by non-Debtor parties to contracts that are to be assumed.

also made available at http://chapter11.epiqsystems.com/tribune.  In addition, the Solicitation Affidavit indicates that timely notice of the Confirmation Hearing, as well as a copy of the Disclosure Statement Order, were mailed to non-voting Creditors and other parties entitled to receive such notice as described in the Solicitation Procedures.  Further, as reflected in the Certification of Publication of Notice of Confirmation Hearing (the "Publication Affidavit") *[ECF No. 7639]*, and as required by the Disclosure Statement Order, notice of the Confirmation Hearing was published in *The Wall Street Journal*, *The New York Times*, the *Los Angeles Times* and the *Chicago Tribune*.  I am advised that the Noteholder Plan Proponents did not solicit the acceptance or rejection of the Noteholder Plan from any Creditor prior to approval of the Joint Disclosure Statement and the transmission of the Solicitation Packages.  Based on the foregoing, I believe the Noteholder Plan Proponents satisfied Bankruptcy Code section 1125.

23.     According to the Noteholder Plan, (i) Holders of Claims in Classes 1A-111A (Priority Non-Tax Claims), 1B-111B (Other Secured Claims), 2G-49G (Other Non-Guarantor Debtor Claims), 2L-49L (Interests in Non-Guarantor Debtors) and 50L-111L (Interests in Guarantor Debtors) are Unimpaired under the Noteholder Plan, and are conclusively presumed to have accepted the Noteholder Plan pursuant to Bankruptcy Code section 1126(f), (ii) Holders of Interests in Class 1L (Tribune Interests) will neither receive nor retain any property under the Noteholder Plan on account of such Interests and are accordingly deemed to have rejected the Noteholder Plan pursuant to Bankruptcy Code section 1126(g) and (iii) Holders of Claims in the following Classes are Impaired under the Noteholder Plan and were entitled to vote to accept or reject the Noteholder Plan: 1C (Step One Senior Loan Claims); 50C-111C (Step One Senior Loan Guaranty Claims); 1D (Step Two Senior Loan Claims); 50D-111D (Step Two Senior Loan Guaranty Claims); 1E (Bridge Loan Claims); 50E-111E (Bridge Loan Guaranty Claims); 1F

(Senior Noteholder Claims); 1G (Other Parent Claims); 50G-111G (Other Guarantor Debtor

Claims); 1H (EGI-TRB LLC Notes Claims); 1I (PHONES Notes Claims); and 1K (Subordinated

Securities Claims) (collectively, the "Noteholder Plan Voting Classes").

        24.     As set forth in the Noteholder Specific Disclosure Statement and in the

Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding

Voting and Tabulation of Ballots Accepting and Rejecting the Joint Plans of Reorganization

Proposed for Tribune Company and Its Subsidiaries (the "Final Voting Tabulation Report") *[ECF

No. 7918]*, in accordance with Bankruptcy Code section 1126, acceptances or rejections of the

Noteholder Plan were solicited from the Holders of all Allowed Claims in the Noteholder Plan

Voting Classes.  As described in the Final Tabulation Voting Report, Class 1F (Senior Noteholder

Claims), Class 1I (PHONES Notes Claims) and Class 93G (Other Guarantor Debtor Claims

against CNLBC, LLC) affirmatively voted to accept the Noteholder Plan.

        25.     I believe that, as of the date hereof, Holders of Claims in Classes 1J-111J

(Intercompany Claims) have not voted on the Noteholder Plan.  Pursuant to Section 4.3 of the

Noteholder Plan, the Bankruptcy Court will determine in connection with Confirmation whether

Holders of Intercompany Claims will be entitled to vote to accept or reject the Noteholder Plan.

Accordingly, as reflected by the Solicitation Affidavit, acceptances or rejections of the

Noteholder Plan were not solicited from Holders of Intercompany Claims.[7]

        26.     According to the Final Voting Tabulation Report, Class 1C (Step One

Senior Loan Claims), Classes 50C-111C (Step One Senior Loan Guaranty Claims), Class 1D

(Step Two Senior Loan Claims), Classes 50D-111D (Step Two Senior Loan Guaranty Claims),

---

[7] The Noteholder Plan Proponents have implemented and incorporated the Intercompany Claims Settlement into the Noteholder Plan for purposes of (i) allocating DEV among Tribune and its Subsidiaries (on a consolidated basis) and (ii) setting the Allowed amounts of Intercompany Claims.  Notwithstanding the foregoing, the Noteholder Plan Proponents do not adopt the Intercompany Claims Settlement for any other purposes and, should the Noteholder Plan fail to be confirmed, reserve all of their rights to challenge the Intercompany Claims Settlement on any ground.

Class 1E (Bridge Loan Claims), Classes 50E-111E (Bridge Loan Guaranty Claims), Class 1G (Other Parent Claims), Classes 50G-57G, 59G, 61G-63G, 65G-66G, 68G-78G, 80G-84G, 88G-90G, 93G-95G, 97G, 99G-101G and 103G-111G (Other Guarantor Debtor Claims against various Guarantor Debtors), Class 1H (EGI-TRB LLC Notes Claims) and Class 1K (Subordinated Securities Claims) voted to reject the Noteholder Plan.

27.    Additionally, as described in the Final Tabulation Voting Report, no Holders of Claims in the following thirteen Classes voted to accept or reject the Noteholder Plan and are therefore deemed to have rejected the Noteholder Plan: Class 58G (Other Guarantor Debtor Claims against Distribution Systems of America, Inc.); Class 60G (Other Guarantor Debtor Claims against Eagle Publishing Investments, LLC); Class 64G (Other Guarantor Debtor Claims against Homeowners Realty, Inc.); Class 67G (Other Guarantor Debtor Claims against Internet Foreclosure Service, Inc.); Class 79G (Other Guarantor Debtor Claims against Stemweb, Inc.); Class 85G (Other Guarantor Debtor Claims against TMLH 2, Inc.); Class 86G (Other Guarantor Debtor Claims against TMLS I, Inc.); Class 87G (Other Guarantor Debtor Claims against TMS Entertainment Guides, Inc.); Class 91G (Other Guarantor Debtor Claims against Tribune Broadcasting Holdco, LLC); Class 92G (Other Guarantor Debtor Claims against Tribune California Properties, Inc.); Class 96G (Other Guarantor Debtor Claims against Tribune Finance, LLC); Class 98G (Other Guarantor Debtor Claims against Tribune Manhattan Newspaper Holdings, Inc.); and Class 102G (Other Guarantor Debtor Claims against Tribune NM, Inc.) (the above listed Classes, together with Class 1L (Tribune Interests) and the Classes listed in paragraph 26, are collectively referred to as the "Rejecting Classes").

28.    Nevertheless, as discussed below, I believe that pursuant to Bankruptcy Code section 1129(b), the Noteholder Plan may be confirmed over the rejection of the Rejecting

Classes because the Noteholder Plan does not discriminate unfairly and is fair and equitable with respect to such Rejecting Classes.

29.     Based on the foregoing, I believe the Noteholder Plan satisfies Bankruptcy Code section 1129(a)(2).

**E.     The Noteholder Plan Was Proposed in Good Faith (Section 1129(a)(3))**

30.     I believe the Noteholder Plan's purpose and contents are honest, legitimate and viable.  I believe that the Noteholder Plan has been proposed with good intentions and a desire to effectuate a full and feasible financial restructuring of the Debtors' enterprise while maximizing value for the benefit of stakeholders and, unlike the DCL Plan, ensuring that all Creditors receive the recoveries to which they are legally entitled.  The Noteholder Plan accomplishes this by striking a balance – the balance between the Debtors' ability to emerge from chapter 11 with a restructured, viable capital structure and the preservation of the LBO-Related Causes of Action.  I believe these objectives are accomplished in a manner that leaves the Estates themselves unencumbered by litigation regarding the LBO-Related Causes of Action (with such litigation being prosecuted by a Litigation Trust). I believe that once the Debtors emerge from bankruptcy with a capital structure that will afford them with sufficient liquidity and capital resources to satisfy their obligations and otherwise conduct their businesses, the Debtors will have a strong foundation to operate as a profitable enterprise.

31.     I believe that the Noteholder Plan does not, in any way, attempt to abuse judicial process, or delay or frustrate the legitimate efforts of Creditors to enforce their rights. Accordingly, because the Noteholder Plan has been proposed in good faith to promote the objectives and purposes of the Bankruptcy Code and not by any means forbidden by law, I believe the Noteholder Plan satisfies Bankruptcy Code section 1129(a)(3).

F.    **The Noteholder Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (Section 1129(a)(4))**

32.    I believe that the Noteholder Plan complies with Bankruptcy Code section 1129(a)(4), as pursuant to Section 9.2 of the Noteholder Plan, and except as otherwise provided for in Section 9.1 of the Noteholder Plan, all payments made or to be made by the Debtors for compensation or reimbursement of fees of any professional employed pursuant to Bankruptcy Code sections 327 or 1103, or otherwise in the Chapter 11 Cases, including any Claims for making a substantial contribution under Bankruptcy Code section 503(b)(4), will be paid only after allowance of such Claims by the Bankruptcy Court to the extent not already approved and paid in accordance with orders of the Bankruptcy Court.  In addition, the Noteholder Plan provides that the fee examiner appointed in the Chapter 11 Cases will continue to perform its services after the Effective Date and the Bankruptcy Court will retain jurisdiction after the Effective Date to grant or deny applications for allowance of Claims for professional fees or reimbursement of expenses authorized pursuant to orders of the Bankruptcy Court.

G.    **The Noteholder Plan Complies with Section 1129(a)(5)**

33.    I believe the Noteholder Plan, together with the Noteholder Plan Supplement, satisfies Bankruptcy Code section 1129(a)(5) because it provides for the disclosure of the identities and affiliations of any Person designated to serve as an officer or director of the Reorganized Debtors.  In accordance with Section 5.3.2 of the Noteholder Plan, the Noteholder Plan Proponents will provide the identity of directors and officers of the Reorganized Debtors at

least five days prior to the Confirmation Hearing.[8]  I am advised and believe that none of the initial directors proposed under the Noteholder Plan will be "insiders" within the meaning of the Bankruptcy Code, nor will any initial director, other than the chief executive officer (to the extent the position is not vacant on the Effective Date and only in the event that the employment agreement with such chief executive officer so provides) be a prior officer or director of Tribune. I am also advised that the initial directors appointed under the Noteholder Plan are independent of Aurelius.

34.    The Noteholder Plan Proponents intend to adopt the officers for Reorganized Tribune that will be disclosed by the Debtors in Exhibit 5.3.2(1) of the DCL Plan Supplement (as may be modified by the Noteholder Plan Proponents in their sole discretion, provided that the Noteholder Plan Proponents shall file an amended Exhibit 5.3.2(1) with the Bankruptcy Court in the event they make any such modifications).  Upon information and belief, many of the Persons to be listed in Exhibit 5.3.2(1) of the DCL Plan Supplement may be prior officers and/or directors of the Debtors.  Further, to the extent any such officers qualify as "insiders" within the meaning of Bankruptcy Code section 101(31), the Noteholder Plan Proponents intend to rely on the disclosure of such insider status as may be set forth in Exhibit 5.3.2(1) of the DCL Plan Supplement (unless modified by the Noteholder Plan Proponents, in which case the Noteholder Plan Proponents shall make any relevant disclosure in the amended Exhibit 5.3.2(1)).

---

[8] Notwithstanding the above, Section 5.3.2 of the Noteholder Plan explicitly provides for the contingency if the Senior Lenders fail to designate the four initial members of the board of directors of Reorganized Tribune allotted to them under the Noteholder Plan prior to the deadline for the Noteholder Plan Proponents to disclose the proposed initial board members of Reorganized Tribune with the Court.  In such an event, Reorganized Tribune shall, as soon as practicable after the Effective Date, hold a special election to appoint the four initial board members otherwise allocable to the Senior Lenders, and the members elected to the initial board in connection with such special election shall be deemed to be the designees of the Senior Lenders under the Noteholder Plan.

35.     I believe that the process for the appointment of each of the proposed initial directors and officers under the Noteholder Plan is consistent with the best interests of creditors and conforms to public policy.  Based upon the forgoing, I believe the Noteholder Plan satisfies the requirements of Bankruptcy Code section 1129(a)(5).

**H.      The Noteholder Plan Does Not Require Governmental Regulatory Approval (Section 1129(a)(6))**

36.     Because the Debtors' businesses do not involve the establishment of rates subject to approval of any governmental regulatory commission, I understand that Bankruptcy Code section 1129(a)(6) is inapplicable to these Chapter 11 Cases.

**I.      The Noteholder Plan Is in the Best Interests of Creditors and Interest Holders (Section 1129(a)(7))**

37.     I believe that the Noteholder Plan satisfies the best interests test under Bankruptcy Code section 1129(a)(7) as demonstrated by comparing (i) the illustrative recovery charts set forth in the Noteholder Specific Disclosure Statement (the "Illustrative Recovery Charts") and the revised estimated recovery charts attached as Exhibit A to the Memorandum (the "Revised Estimated Recovery Charts"), (ii) the estimated liquidation recoveries under the Noteholder Plan, as set forth in Article IV of the Noteholder Specific Disclosure Statement and (iii) the Liquidation Analysis set forth in Exhibit D to the General Disclosure Statement.  I have reviewed the foregoing analyses, and believe that such comparison reveals that Holders of Claims and Interests in all Classes that are Impaired under the Noteholder Plan likely would realize significantly less upon disposition of the Debtors' assets in a hypothetical chapter 7 liquidation than the value of the recoveries to such Classes provided for under the Noteholder Plan and that, in fact, the Noteholder Plan provides a higher ultimate distribution to Impaired Classes in either a high or low value liquidation scenario.  Accordingly, it is my understanding that Creditors in each of the Impaired Classes would not receive less under the Noteholder Plan

than they would receive in a hypothetical chapter 7 liquidation.  For this reason, I believe that the Noteholder Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

### J.    Acceptance of Impaired Classes (Section 1129(a)(8))

38.    The Final Voting Tabulation Report reflects that the Rejecting Classes either voted to reject, or are deemed to reject, the Noteholder Plan.  Accordingly, I believe Bankruptcy Code section 1129(a)(8) is not satisfied with respect to the Rejecting Classes, and the Noteholder Plan must satisfy the "cram down" requirements of Bankruptcy Code section 1129(b) to be confirmed.

### K.    The Noteholder Plan Provides for Payment in Full of All Allowed Priority Claims (Section 1129(a)(9))

39.    Section 2.1 of the Noteholder Plan provides that all Allowed DIP Facility Claims shall be paid in full, in Cash, on or as soon as reasonably practicable after the Effective Date.[9]  Section 2.2 of the Noteholder Plan provides that each Allowed Administrative Expense Claim will be paid in full, in Cash on the later of (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Expense Claim becomes an Allowed Claim, (iii) such time as the Administrative Expense Claim becomes due in the ordinary course of business or (iv) such other date that is agreed upon by the Holder of an Administrative Expense Claim and the Reorganized Debtors.  Section 2.3 of the Noteholder Plan provides that each Holder of an Allowed Priority Tax Claim will receive, at the Reorganized Debtors' option, either (i) payment in full, in Cash, (ii) regular installment payments in Cash equal to the Allowed amount of such Priority Tax Claim over a period ending not later than the fifth anniversary of the

---

[9] Section 2.2 of the Noteholder Plan further provides that any unexpired letters of credit outstanding under the DIP Facility shall be, at Reorganized Tribune's option (i) returned to the issuer undrawn and marked canceled, (ii) collateralized with cash in an amount equal to 105% of the face amount of such outstanding letter of credit, (iii) collateralized with back to back letters of credit issued under the Exit Facility in an amount equal to 105% of the face amount of such outstanding letter of credit or (iv) otherwise deemed to be subject to reimbursement pursuant to the terms and conditions of the Exit Facility.

Petition Date (as permitted by Bankruptcy Code section 1129(a)(9)(C)) or (iii) such other treatment as agreed to by the Holder of an Allowed Priority Tax Claim and the Reorganized Debtors.   Based on the foregoing, I believe the Noteholder Plan satisfies Bankruptcy Code section 1129(a)(9).

L.      **At Least One Impaired Class of Claims has Accepted the Noteholder Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10))**

40.     Based upon the Final Voting Tabulation Report, I believe that at least one Class of Claims that is Impaired under the Noteholder Plan voted to accept the Noteholder Plan, excluding any votes cast by insiders.   According to the Final Voting Tabulation Report, the following three Impaired Classes of Claims affirmatively voted to accept the Noteholder Plan: Class 1F (Senior Noteholder Claims); Class 1I (PHONES Notes Claims); and Class 93G (Other Guarantor Debtor Claims against Tribune CNLBC, LLC).   Accordingly, I am advised and believe that the Noteholder Plan complies with Bankruptcy Code section 1129(a)(10).

M.      **The Noteholder Plan Is Feasible (Section 1129(a)(11))**

41.     I have reviewed the Noteholder Plan and the Debtors' financial forecasts attached to the General Disclosure Statement as Exhibit E (the "Financial Projections"), and believe that the Noteholder Plan presents a feasible, effective and expeditious reorganization of the Debtors.   Based on my review of the Financial Projections, I believe that the Debtors have and will have, on the Effective Date and thereafter, the resources necessary to satisfy their obligations under the Noteholder Plan and that confirmation of the Noteholder Plan is not likely to be followed by the liquidation, or the need for further financial reorganization.

42.     I am advised that the Reorganized Debtors, as they would emerge under the Noteholder Plan are, in form and substance, identical to the Reorganized Debtors that would emerge under the DCL Plan, and that the Noteholder Plan, in fact, mirrors the DCL Plan in every

respect that could arguably affect the post-Effective Date viability of the Debtors.  Further, both the Senior Secured Term Loan and the Exit Facility (to the extent it is determined necessary) under the two plans are identical.  Therefore, I believe the Financial Projections and the assumptions, assets, liabilities, operations and internal Tribune organizational structure relied upon therein, are equally as relevant in determining the feasibility of the Noteholder Plan as they are in determining the feasibility of the DCL Plan.

43.    I believe that the Debtors will be able to satisfy their postpetition obligations, as well as their obligations under the Noteholder Plan to fund, among other things, the payment of Allowed Priority and Administrative Expense Claims, the payment of cure amounts related to assumed executory contracts, professional compensation obligations, the Initial Distributions and the Distribution Trust Initial Funding, all while maintaining more than sufficient liquidity for the ongoing operations of the Reorganized Debtors.  I believe the elimination of over $10 billion of debt obligations of the Debtors, combined with the Debtors' ability to generate revenue in a manner consistent with that reflected in the Financial Projections, will enable the Debtors' enterprise to be strategically positioned for future growth and long term viability.

44.    I believe that confirmation of the Noteholder Plan is not likely to be followed by liquidation or the need for further reorganization of any or all of the Reorganized Debtors, and that the Noteholder Plan has a more than reasonable likelihood of success.  I also believe, based on advice of counsel, that the Noteholder Plan will be approved by the Federal Communications Commission (the "FCC") and will not encounter the same issues and delays before the FCC as the DCL Plan would encounter.   As the Noteholder Plan Proponents have indicated in their objections to the DCL Plan, the Noteholder Plan Proponents currently intend to

exercise their discretion under Section 5.4.2(b) of the Noteholder Plan to limit the amount of New Class A Common Stock allocated to JPMorgan, Angelo Gordon and Oaktree to less than 5% each in order to ensure compliance with the Communications Act and the FCC's rules and avoid substantial delay in obtaining FCC Approval (as defined in the Noteholder Plan).  Thus, under the Noteholder Plan, only the Distribution Trustee, the members of the Distribution Trust Advisory Board, and the officers and directors of Reorganized Tribune would have "attributable interests" in Reorganized Tribune under the FCC's rules.  I have been advised that the Distribution Trustee, the members of the Distribution Trust Advisory Board and the independent directors to be initially designated by Aurelius, are in the process of being vetted to ensure that such persons do not raise any FCC issues.  Therefore, I believe that the Noteholder Plan will not introduce new parties with conflicting or potentially conflicting media interests to the ownership or governance structure of Reorganized Tribune.  As a consequence, I believe that the FCC will grant the FCC Approval for the Noteholder Plan, including the waivers of the ownership rules that are required in order for Reorganized Tribune to retain its current broadcast and newspaper properties, Accordingly, I believe that the Noteholder Plan satisfies Bankruptcy Code section 1129(a)(11).

### N.    The Noteholder Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12))

45.    Section 13.7 of the Noteholder Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on the Effective Date.  I believe the Debtors have adequate means to make such payments, and therefore, the Noteholder Plan satisfies Bankruptcy Code section 1129(a)(12).

**O.    The Noteholder Plan Provides for Appropriate Treatment of Retiree Benefits (Section 1129(a)(13))**

46.    Section 6.5 of the Noteholder Plan provides that all Employee Benefit Plans shall be assumed by the applicable Reorganized Debtors and the applicable Reorganized Debtors will continue to perform their obligations under such Employee Benefit Plans. Accordingly, I believe that the Noteholder Plan satisfies Bankruptcy Code section 1129(a)(13).

**P.    The Noteholder Plan Satisfies the "Cram Down" Requirements (Section 1129(b))**

47.    I believe the Noteholder Plan satisfies the "cram down" requirements as it does not discriminate unfairly, and is fair and equitable, with respect to the Rejecting Classes. I believe that the Noteholder Plan does not discriminate unfairly because, other than the Classes under the Noteholder Plan that are not entitled to receive any distribution at all, all Classes of similarly situated Creditors will receive substantially similar treatment, irrespective of their Class, subject only to a holdback pending resolution of those Claims which are Disputed under the Noteholder Plan. Notwithstanding the objection to the Noteholder Plan filed by the DCL Plan Proponents, I am advised and believe that it is entirely appropriate that the Step Two Lenders are separately classified from the Step One Lenders under the Noteholder Plan, that the Swap Claim is classified as a Senior Loan Claim at Tribune and the classification and varying treatment of these Classes are justified under the particular facts and circumstances of the Chapter 11 Cases.

48.    I believe that the Noteholder Plan is fair and equitable with respect to the Rejecting Classes because, as evidenced by the valuations and estimates contained in the General Disclosure Statement, the Noteholder Specific Disclosure Statement, and the Revised Estimated Recovery Charts, no Class of Claims senior to the Rejecting Classes is receiving more than payment in full on account of such Claims and no Class of Claims or Interests junior to the Rejecting Classes will receive any distribution under the Noteholder Plan. Based on the

foregoing, I believe the Noteholder Plan satisfies the "cram down" requirements of Bankruptcy Code section 1129(b).

[Remainder of Page Intentionally Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated:    February 25, 2011
          New York, New York

_____
DAN GROPPER

Signature Page for the Dan Gropper Declaration In Support of Confirmation of the Noteholder Plan