IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| TRIBUNE COMPANY., et al.,[1] | : | Case No. 08-13141 (KJC) |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Objections due: February 28, 2011 @ 4:00 p.m.
Hearing dates: March 2, 2011 @ 1:30 p.m.
and March 7, 2011 @ 10:00 a.m.**

**OBJECTION OF CHICAGO TRIBUNE COMPANY
TO MOTION FOR AUTHORIZATION TO SEAL THE OBJECTION OF THE
NOTEHOLDER PLAN PROPONENTS TO CONFIRMATION OF THE
DEBTOR/COMMITTEE/LENDER PLAN OF REORGANIZATION AND TO MOTION
FOR AUTHORIZATION TO SEAL DOCUMENTS AT DOCKET NOS. 8164, 8165 &
8166 FILED BY AURELIUS CAPITAL MANAGEMENT, L.P.
<u>RE: D.I. # 8014 and D.I. # 8168</u>**

Chicago Tribune Company ("**Chicago Tribune**"), as publisher of the *Chicago Tribune*, by and through its undersigned counsel, hereby submits this Objection to the Motion of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicagoland Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FOIL/M Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Steamweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting New Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment production Company (5393); Tribune Finance, LLC (2537; Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago Illinois 60611.

Noteholder Plan Proponents to file Objections to Debtor/Committee/Lender Reorganization Plan ("the DCL Plan") under seal (Dkt. Nos. 7801, 8013, 8014) and their Motion for Authorization to Seal Documents (Dkt. Nos. 8162-8168). In support hereof, Chicago Tribune respectfully states as follows:

1. By seeking to shield from public view in their entirety the Noteholder Plan Proponents' (the NPPs) Objections to the DCL Plan and all or portions of documents supporting their Motions in Limine (collectively referred to herein as "the Objections, Motions and Documents"), the NPPs ask the Court to conduct its business under a cloak of secrecy, without demonstrating any basis for doing so. On the other hand, transparency both ensures the integrity of the bankruptcy process and promotes the appearance of fairness that is essential to public confidence in the operations of our Courts. Section 107 of title 11 of the United States Code (the "**Bankruptcy Code**") embodies this deep-seated interest by providing a presumption of public access, in addition to the qualified constitutional right of access to judicial proceedings, which fully extends to the documents at issue here. Under the governing standards, a judicial document may be sealed only where there is a specific showing pursuant to section 107(b) of the Bankruptcy Code that the information sought to be protected is a bona fide trade secret or confidential business information, the disclosure of which would cause its members actual, tangible competitive harm, *and* that, consistent with the constitutional presumption of access applicable here, the sealing order is both supported by evidence demonstrating its compelling necessity and is narrowly tailored to serve that interest and prevent the specific injury. The NPPs have made no such showing, nor can they.

2. Chicago Tribune publishes the daily *Chicago Tribune*, which is circulated nationwide and reports on numerous topics and events in the Chicago metropolitan area and

Illinois, as well as globally. For more than a century, *Chicago Tribune* has worked painstakingly to provide comprehensive, accurate accounts of newsworthy events and matters of interest to the public. Since 1932, its journalists have won twenty-four Pulitzer Prizes and numerous accolades for their investigative journalism and other important reporting to the public. Chicago Tribune is a party to this proceeding as Debtor but, as publisher of the *Chicago Tribune,* has unique and significant interests in this proceeding, independent of those held by other Debtors.

## ARGUMENT

3. The sealing of a court record is an extraordinary remedy that should not be lightly granted. The NPPs, it is respectfully submitted, have failed to meet the substantial burden the law imposes on them as a precondition to withholding these judicial records from public scrutiny.

4. This Court has previously dealt with the issue of blanket sealing in this matter and concluded that it should follow the recommendation of the Examiner to allow public filing of documents previously sealed *en masse*. As the Court is aware, as the Examiner was finalizing his Report, he faced the predicament of writing a public report based on extensive interviews and documents that were the subject of claims of confidentiality, which sometimes "verged on the absurd." Motion of Examiner for Order (1) Temporarily Authorizing the Filing of the Examiner's Entire Report and Certain Documents Under Seal and (2) Overruling the Claims of Confidentiality with Respect to the Report and Its Exhibits" ("**Examiner's Motion**") ¶ 18. (Dkt. No. 5114) The Court agreed with the Examiner that the claims of confidentiality were unsupportable and directed that the Report and its Exhibits be unsealed in their entirety. (Dkt. No. 5252)

5.      The Examiner's Motion set out the strong legal grounds supporting public disclosure of the entire contents of the Report, including its extensive exhibits, and those same arguments apply to the Objections, Motions and Documents now filed under seal by the NPPs. *See* Examiner's Motion ¶¶ 45-54.  The Examiner's Motion reflected his view that many of the claims of confidentiality were not "well-founded or asserted in good faith." *Id*. ¶ 31.  Indeed, the Examiner left no doubt that the claims of confidentiality materially impaired the public's understanding of his conclusions, which was in turn critical to the public's appreciation of the fairness of the proceeding.  *Id*. ¶ 30 (emphasis added).

6.      The same is true here.  As explained below, the blanket sealing of the Objections, Motions and Documents, without providing any basis for the sealing, blatantly violates the established law of access to judicially filed documents.

7.      The Examiner's Motion sets out the well-established common law and rule-based jurisprudence supporting public disclosure here.  Examiner's Motion, ¶¶ 45-54.  In addition, now that the Motions and Documents have been filed, they are judicial documents subject to the constitutional presumption of access.  *See N. Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 206 (3rd Cir. 2002) ("First Amendment implicitly incorporates a right of access to civil trials"); *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) ("well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records"); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (both First Amendment and common law "protect the public's right of access" to judicial records); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1066, 1070-71 (3d Cir. 1984) (finding that the "First Amendment guarantees to the public and to the press the right of access . . . to civil proceedings" and that the common law right of access is "beyond dispute").  These rights of

4

access extend with full force to documents filed in connection with Bankruptcy proceedings. *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) (noting strong presumption of access to bankruptcy records "rooted in the public's [F]irst [A]mendment right to know about the administration of justice");[2] *In re Mid-Valley, Inc.*, 288 F. App'x 784, 785 (3d Cir. 2008) (recognizing common law right of access to judicial records as "well-settled"); *In re Continental Airlines*, 150 B.R. 334, 341 (D. Del. 1993) ("strong presumption in favor of public access to judicial records and papers . . . . has statutory, common law and First Amendment underpinnings").

8.      Moreover, the right of access to these proceedings is embodied in Section 107(a) of the Bankruptcy Code, which directs that *any* "paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."  11 U.S.C. § 107(a).  The "policy of open inspection" embraced in Section 107 "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) ("*Orion*"); *see also In re Joyce*, 399 B.R. 382, 385 (Bankr. D. Del. 2009) ("Pursuant to 11 U.S.C. § 107(a), . . . all papers filed in bankruptcy cases . . . are public documents subject to examination by members of the public"); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) ("section 107(a) creates a presumption that papers filed in bankruptcy court are public records"); *In re Accuride Corp.*, No. 09-13449 (BLS), Dkt. No. 968, Slip Op. ¶ 11 (Bankr. D. Del. Nov. 16, 2010) (citing and quoting *Alterra* and noting, "Sealing

---

[2] The Second Circuit also has observed that there are "purely practical" reasons for avoiding the sealing of bankruptcy court records: "Mechanical and logistical problems of sealing the files, finding extra space in the vault, satisfying all the handling requirements, plus the related direct and indirect costs, impose substantial burdens on the clerk's office and on a judge's staff" and thus provide further justification "for open access to court records in the bankruptcy court." *Id.*

documents and proceedings in bankruptcy cases is appropriate in limited circumstances and '[t]here is a strong presumption in favor of public access to bankruptcy proceedings and records.' Section 107(a) specifically provides for public access to bankruptcy filings."). A copy of this opinion is attached hereto as Exhibit A.

9. Courts in this District have interpreted "[c]ommercial information" as used in Section 107(b), which provides the limited circumstances in which some sealing may be permitted, as "information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Alterra*, 353 B.R. at 75 (quoting *Orion*, 21 F.3d at 27-28); *In re Muma Servs., Inc.*, 279 B.R. at 484 (quoting *In re Itel Corp.*, 17 B.R. at 944). The party opposing disclosure must demonstrate with "persuasive evidence" that such public disclosure would place it "at a competitive disadvantage with its 'competitors,'" thereby causing a "serious injury." *In re Found. for New Era Philanthropy*, 1995 WL 478841, at *5; *Alterra*, 353 B.R. at 75-76 ("the Court must find that information . . . 'is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors.'") (quoting *In re Barney's, Inc.*, 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996)). Where a party seeks to have court records sealed because of the purported economic consequences of disclosure, courts have demanded more than mere argument and speculation. *See, e.g.*, *Republic of the Philippines*, 949 F.2d at 663 (noting party must offer "evidence . . . to substantiate its claim that the disclosure of . . . records . . . would result in any type of competitive disadvantage"); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (holding that report filed in court in connection with a shareholder derivative action could not be sealed based on "a naked conclusory statement that publication of the Report will injure the bank in the industry"); *In re Barney's, Inc.*, 201 B.R. at 708 ("speculat[ion] that the public disclosure of . . .

letter will adversely impact debtors' reorganization efforts" insufficient to justify sealing record); *In re Fibermark, Inc.*, 330 B.R. at 506 ("That information might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents"); *accord Publicker Indus., Inc.*, 733 F.2d at 1071-73 (court must make "specific findings;" closure cannot be based on speculation).

10. The NPPs have made no effort to meet its burden in these cases. They have not offered even a scintilla of evidence supporting the need for confidentiality of any Objection, Motion or Document, let alone the entire bulk of their filings. This utter failure of proof in and of itself dooms their Motions. *See, e.g., In re Accuride*, Slip Op ¶ 13 ("Other than the Group's vague statements that the release of the information in Schedule C would place the Group's members at a commercial disadvantage, the Group has provided no evidence from which the Court could distill *particularized competitive harm*.") (emphasis added).

## CONCLUSION

Given the well-established jurisprudence supporting disclosure, the importance of the underlying Objections, Motions and Documents to the public, Chicago Tribune respectfully requests that the Objections, Motions and Documents be unsealed in their entirety.

Dated: February 28, 2011                                Respectfully submitted,

                                                        MARGOLIS EDELSTEIN

                                                        /s/ Amy D. Brown
                                                        Amy D. Brown (#4077)
                                                        750 Shipyard Drive
                                                        Suite 102
                                                        Wilmington, DE 19801
                                                        302.888.1112 (phone)
                                                        302.888.1119 (fax)

                                                        - and -

7

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
Gayle C. Sproul (admitted *pro hac vice*)
2112 Walnut Street, Third Floor
Philadelphia, PA 19103
Tel: (215) 988-9778
Fax: (215) 988-9750

*Counsel for Chicago Tribune Company*