# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ACCURIDE CORPORATION, et al., | ) | Case No. 09-13449 (BLS) |
| | ) | |
| Debtors. | ) | Docket Reference No. 968 |

**ORDER GRANTING MOTION OF DOW JONES & COMPANY, INC. TO INTERVENE AND UNSEAL *AD HOC* NOTEHOLDER GROUP'S RULE 2019(a) DISCLOSURES**

Upon consideration of the Motion of Dow Jones & Company Inc. ("Dow Jones") to Intervene and Unseal *Ad Hoc* Noteholder Group's Rule 2019(a) Disclosure (the "Motion") [Docket No. 968] and the declarations filed in connection therewith [Docket No. 969, 970]; and the Court having reviewed and considered the objection of the *Ad Hoc* Noteholder Group (the "Group") to the Motion [Docket No. 1043], the response of the United States Trustee to the Motion [Docket No. 1053], and Dow Jones' reply in support of the Motion [Docket No. 1054]; and the Court having conducted a hearing (the "Hearing") on the Motion on May 12, 2010; and upon the record of the Hearing and after due deliberation, the Court hereby FINDS as follows:

1. On October 8, 2008 (the "Petition Date"), Accuride Corporation and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, counsel for the Group filed a notice of appearance and request for service [Docket No. 26].

2. On January 4, 2010, the official committee of equity security holders appointed in the Debtors' cases moved the Court to require the Group to comply with Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019"). On January 22, 2010, the Court entered an Order (the "2019 Order") [Docket No. 633] granting such motion, in part, and compelling the Group to comply

with Rule 2019. Thereafter, the Group filed a notice of appeal of the 2019 Order [Docket No. 668] and an emergency motion to stay the effectiveness of the 2019 Order pending appeal (the "Stay Motion") [Docket No. 669].

3. At a hearing on February 8, 2010, the Court denied the Stay Motion and ordered the Group to file a statement pursuant to Rule 2019 (the "2019 Statement"). In so ruling, the Court reiterated that, on the issue of the applicability of Rule 2019 to the Group, the Court had "considered carefully and agreed with Judge Gropper's ruling and Judge Walrath's conclusion in the Northwest and the Washington Mutual cases" and also noted that "in Northwest II, Judge Gropper specifically said that he did not believe that sealing information was appropriate and consistent with his prior ruling on the approach of Bankruptcy Rule 2019." Transcript of Stay Motion Hearing at 135, Case No. 09-13449 (BLS) (Feb. 8, 2010) [Docket No. 874].

4. To preserve the parties' appeal rights, however, this Court directed that "Schedule C" of the 2019 Statement, which contained information related to the individual Group members' purchases and sales of the Debtors' debt securities, be filed under seal pending appeal of the 2019 Order. More specifically, the Court stated that "the sealing of the pricing and timing of acquisition information is actually directly responsive to the concerns and allegations raised in the [Stay Motion]." Id.

5. Several weeks later, following the entry of an order (the "Confirmation Order") [Docket No. 856] confirming the Debtors' chapter 11 plan of reorganization (the "Plan"), the Group withdrew its appeal of the 2019 Order by filing a notice (the "Withdrawal Notice") [Docket No. 884] that included the following statement: "[t]he withdrawal of the Appeal is not intended to be, and should not be construed as, a direct or indirect waiver of the right of the

Group to have Schedule "C" to the [2019 Statement], filed under seal or remain under seal as directed by the Court and treated as confidential . . . ." The Group did not file a motion or otherwise seek an order of the Court regarding the continued sealing of Schedule C.

6. Over a month later, on April 8, 2010, Dow Jones filed the Motion, therein seeking to intervene and unseal Schedule C of the 2019 Statement. By the Motion, Dow Jones argues that it should be allowed to intervene pursuant to Federal Rule of Bankruptcy Procedure 2018(a) ("Rule 2018(a)"). Intervention is appropriate, argues Dow Jones, for members of the press seeking to enforce the qualified constitutional right of public access to judicial documents embodied in Bankruptcy Code section 107 ("Section 107"). More specifically, Dow Jones argues that Section 107(a) provides that bankruptcy filings are generally public documents, and that the Group has not submitted any evidence to support a finding that Schedule C should be sealed as "confidential commercial information" pursuant to Section 107(b)(1). Dow Jones also contends that the constitutional presumption of public access to judicial documents requires evidence that sealing is a compelling necessity and narrowly tailored. In addition, Dow Jones posits that Rule 2019 contemplates public disclosure of the type of information contained in Schedule C and that Section 107 should not be used to end-run the specific mandate of Rule 2019. Finally, Dow Jones argues that here, Schedule C was sealed for the limited, and now inapt, purpose of allowing the Group to prosecute its appeal and unsealing is appropriate. The Office of the United States Trustee supports the relief requested in the Motion.

7. The Group opposes the Motion on procedural and substantive grounds. The Group first argues that Dow Jones' intervention is improper at this late stage when the Debtors' confirmed Plan has mooted the underlying issues and unsealing will prejudice the settled rights

3

of the parties. The Group asserts that it relied on the release and injunction provisions of the Plan and Confirmation Order when it withdrew its appeal of the 2019 Order. Unsealing Schedule C, according to the Group, would prejudice the Group by depriving it of the ability to pursue an appellate challenge to the application of Rule 2019. In addition to the impropriety of intervention, the Group argues that Dow Jones does not have standing to pursue the Motion because Dow Jones is not an "aggrieved party." The Group further argues that Schedule C contains confidential commercial information to which no constitutional, bankruptcy, common law, or other right of access applies. The Group finally contends that disclosure of Schedule C at this time does not vindicate the purpose behind Rule 2019, and that the Motion is really an improper request for the Court to reconsider the 2019 Order and the Confirmation Order.

8. First, the Court agrees with Dow Jones that it has standing to intervene to assert public access rights to judicial documents. See Pansy v. Borough of Stroudsburg, 23 F.3d 773, 777 (3d Cir. 1994) ("We have routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings."); Alterra Healthcare Corp., 353 B.R. 66, 71 (Bankr. D. Del. 2006) ("To find standing, the Court must only find that the Order . . . being challenged presents an obstacle to the Newpapers' attempt to obtain access and that a decision to unseal the agreements would remedy the injury.") (internal quotations removed). Although Dow Jones seeks intervention to vindicate rights that belong to the public at large, Dow Jones has sufficiently alleged a direct injury to itself caused by non-disclosure. See Pansy, 23 F.3d at 777.

9. The Court also agrees with Dow Jones that it should be permitted to intervene under Rule 2018(a) which states: "[i]n a case under the Code, after hearing on such notice as the court

directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Fed. R. Bankr. P. 2018(a). Dow Jones has requested permission to intervene for the limited purpose of vindicating the right of public access to civil judicial documents. Dow Jones has sufficiently demonstrated that it is an interested entity and the cause for its intervention - the advancement of transparency in bankruptcy proceedings and public right to access bankruptcy documents.

10. The Group's argument that the relief requested in the Motion is mooted by the Group's reliance on the release and injunction provisions of the Confirmation Order and Plan is distracting and unavailing. The Plan and Confirmation Order do not address or preclude the relief requested in the Motion. To the extent that the Group relied on the Plan provisions to maintain the sealed nature of Schedule C after the withdrawal of the appeal, in light of the Court's statements at the February 8, 2010 hearing, the Group was not justified in its reliance. However, even if the Plan and Confirmation Order dealt with the sealing of Schedule C, which they do not, courts have permitted third party intervention to vindicate public access rights, despite settlement of underlying issues by litigation parties. See In re Peregrine Sys., Inc., 311 B.R. 679, 688-92 (D. Del. 2004). Mootness is therefore not applicable. See id. at 686-87 (finding third party appeal of motion to unseal was not mooted by litigation parties' resolution of underlying issues). Accordingly, Dow Jones may intervene for the limited purpose of seeking to unseal the Group's 2019 Statement.

11. Sealing documents and proceedings in bankruptcy cases is appropriate in limited circumstances and "[t]here is a strong presumption in favor of public access to bankruptcy proceedings and records." Alterra, 353 B.R. at 73. Section 107(a) specifically provides for

5

public access to bankruptcy filings, stating that, subject to certain enumerated exceptions, "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). One enumerated exception applies to "trade secret[s] or confidential research, development, or commercial information." 11 U.S.C. §107(b)(1).

12. "Confidential commercial information," as the term is used in Section 107, is generally understood to be information that if disclosed would unfairly advantage an entity's competitors. See Alterra, 353 B.R. at 75-76. In its response to the Motion, the Group contends that disclosure of the trading information contained in Schedule C would place the members of the Group at a competitive disadvantage. Regardless of the merit of this argument, the Court did not hold a hearing pursuant to Section 107(b) and has never determined that Schedule C constitutes confidential commercial information.

13. Instead, the Court has twice ruled that the Group is required to submit a statement pursuant to Rule 2019(a).[1] Although a tension between the clear public disclosure requirement

---

[1] Rule 2019(a) states, in relevant part:
> In a . . . chapter 11 reorganization case, . . . every entity or committee representing more than one creditor or equity security holder . . . shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) . . . in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, . . . the committee was organized or agreed to act; and (4) with reference to the time of . . . the organization or formation of the committee . . . the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof.

6

of Rule 2019 and the Court's power to seal documents pursuant to Section 107 may arise in certain circumstances, the Court need not undertake such reconciliation in this case. Here, the Court has not received sufficient evidence showing that Schedule C is confidential commercial information pursuant to Section 107. Other than the Group's vague statements that the release of the information in Schedule C would place the Group's members at a commercial disadvantage, the Group has provided no evidence from which the Court could distill particularized competitive harm.[2]

14. More importantly, however, the harm that the Court expressly sought to prevent by temporarily sealing Schedule C was irreparable damage to the Group's ability to obtain effective consideration of its appellate arguments. The fact that the Court did not seal Schedule C indefinitely pursuant to a commercial business information finding under Section 107 is not subject to reasonable dispute. Simply stated, the Court sealed Schedule C for the limited purpose of permitting a meaningful appeal, and in the absence of a pending appeal, there is no supported justification for continued sealing. Neither the Group's attempt to preserve the sealed status of Schedule C by the filing the Withdrawal Notice nor the provisions of the Plan and Confirmation Order operate to supplement, enlarge, or alter the scope of the Court's February 8, 2010 ruling.

Accordingly, based on the foregoing, it is hereby

---

Fed. R. Bankr. P. 2019(a).

[2] Even if the Court were required to reconcile Rule 2019 with Section 107, it would determine that the Court's sealing powers, as delineated by Section 107(b) should not be used to undermine the disclosures specifically contemplated by Rule 2019. See In re Northwest Airlines Corp., 363 B.R. 704, 708 (Bankr. S.D.N.Y. 2007) (denying a request to seal Rule 2019 disclosures and stating that "there is no reason to assume that the drafters believed that the goals of the Rule could be achieved if the required information were filed secretly.").

7

ORDERED, that the Motion is GRANTED; it is further

ORDERED, that pursuant to 2018(a), Dow Jones is permitted to intervene as an "interested entity" for the limited purpose of enforcing the public's right of access to information in these cases; it is further

ORDERED, that the Group shall file a complete unredacted statement pursuant to Rule 2019(a) within 10 days of the issuance of this Order; and it is further

ORDERED, that the Court shall retain jurisdiction to hear and determine all matters arising from and related to the implementation and/or interpretation of this Order.

Dated: Wilmington, Delaware
November 16, 2010

Brendan Linehan Shannon
United States Bankruptcy Court