# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>                 Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>**Related to Docket No. 8098** |

## DEBTOR/COMMITTEE/LENDER PLAN PROPONENTS' OBJECTION TO THE MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF JOHN CHACHAS, SUNEEL MANDAVA AND DAVID KURTZ

-7407491v

# TABLE OF CONTENTS

Table of Contents

| | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| ARGUMENT | 5 |
|     I. THE OPINIONS OR TESTIMONY OF MESSRS. CHACHAS, MANDAVA AND KURTZ SHOULD NOT BE EXCLUDED UNDER FRE 403 BECAUSE THEIR TESTIMONY IS NOT NEEDLESSLY CUMULATIVE. | 5 |
|     II. THE NOTEHOLDERS HAVE SHOWN NO BASIS FOR STRIKING THE OPINION OF MR. CHACHAS RELATING TO THE JANUARY 2011 SUPPLEMENTAL VALUATION | 9 |
| CONCLUSION | 10 |

-7407491v

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alexander v. Provident Life and Accident Insurance Co.,*
2003 WL 2567992 (M.D. Pa. 2003) ..................................................................................7

*Blancha v. Raymark Industries,*
972 F.2d 507 (3rd Cir. 1992) .............................................................................................6

*Coleman v. Home Depot, Inc.,*
306 F.3d 1333 (3rd Cir. 2002) ...........................................................................................6

*Coles v. Jenkins,*
1998 WL 964506 (W.D. Va. 1998) ...................................................................................9

*Czarnecki v. Home Depot USA, Inc.,*
2009 WL 1706582 (E.D. Pa. 2009) ...................................................................................9

*Daichi Pharmaceutical Co., Ltd v. Apotex, Inc.,*
2006 WL 2088310 (D.N.J. 2006) ......................................................................................6

*Harbor Insurance Co. v. Allstate Insurance Co.,*
1991 U.S. Dist. LEXIS 15272 (N.D. Ill. 1991) .................................................................7

*In re Jacoby Airplane Crash Litigation,*
2007 WL 2746833 (D. N. J. 2007) ....................................................................................9

*In re Paoli R.R. Yard PCB Litigation,*
35 F.3d 717 (3rd Cir.), *cert. denied*, 513 U.S. 1190 (1995)("*Paoli II*") .........................7

*Keller v. Feasterville Family Health Care,*
557 F. Supp.2d 671 (E.D. Pa. 2008) ..................................................................................8

*McQueeney v. Wilmington Trust Co.,*
779 F.2d 916 (3rd Cir. 1985) .............................................................................................7

*Olson v. Ford Motor Co.,*
411 F. Supp. 2d 1149 (D. N. Dakota 2006) ....................................................................6, 9

*Rice v. Swift Transportation Co., Inc.,*
2010 WL 4537059 (W.D. Pa. 2010) ..................................................................................6

*Speer v. Kavic,*
2009 WL 3447415 (W.D.Pa. 2009) ...................................................................................9

*United States v. Cross*,
   308 F.3d 308 (3rd Cir. 2002) ............................................................................................6

*United States v. Mathis*,
   264 F.3d 321 (3rd Cir. 2000) ............................................................................................5

*United States v. Universal Rehabilitation Services (PA), Inc.*,
   205 F.3d 657 (3rd Cir. 2000)(en banc) ............................................................................6

*Walden v. Georgia Pacific Corp.*,
   126 F (3rd Cir. 1997) ........................................................................................................7

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 .................................................................................................5, 6

Rule 403 ............................................................................................................................. passim

## INTRODUCTION

The Noteholders' motion to exclude the expert testimony of David Kurtz, Suneel Mandava and John Chachas should be denied because the Noteholders have not and cannot meet their burden as required by Rule 403. The testimony of these three experts is not duplicative, much less so needlessly cumulative as to substantially outweigh its probative value. Mr. Chachas, who is the only publishing and broadcasting industry expert that will testify at the Confirmation Hearing, as well as a seasoned professional with extensive valuation experience, will provide in-depth industry insight as it relates to market factors, including especially the comparable companies and market multiples, underlying Lazard's valuation of the Debtors. Mr. Mandava, a Director at Lazard, is an experienced and accomplished valuation expert who will testify concerning the manner in which Lazard performed its valuation of the Debtors and the related opinions reached by Lazard. Mr. Kurtz is a Managing Director at Lazard and the leader of the Lazard engagement team who is primarily a fact witness but will also testify concerning certain major assumptions that underlie Lazard's opinion. Because the three experts' testimony will not be duplicative, much less so needlessly cumulative as to substantially outweigh its probative value, the motion to exclude should be denied.[1]

## BACKGROUND

A. <u>The Valuation Work</u>

The Debtors engaged Lazard in late 2008 to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization and/or recapitalization and to prepare for the commencement of these Chapter 11

---

[1] Unless otherwise defined, the capitalized terms used in this memorandum of law have the meaning ascribed to them in the Joint Objection of the Debtors, the Official Committee of Unsecured Creditors, Angelo, Gordon & Co, L.P., Oaktree Capital Management, L.P. and JPMorgan Chase Bank, N.A. to Confirmation of the Noteholder Plan dated February 15, 2011. *See* Dkt. No. 8011.

-7407491v

cases. Following the Petition Date, the Debtors engaged Lazard to provide a variety of financial and strategic advisory services throughout these cases, including evaluating the Debtors' debt capacity; assessing and helping to implement potential financing transactions; assisting the Debtors in their consideration of a plan of reorganization, and assisting in determining the range of consolidated enterprise values for the Debtors on a going concern basis.

As explained in the Lazard Expert Report, Lazard initially prepared a valuation in March 2010 in connection with the Company's disclosure statement dated June 4, 2010. *See* Lazard Expert Report at 1 (Berry Aff. Ex. B). Work on this valuation began earlier in 2010 with significant input from Mr. Chacas who, at the time, was a Managing Director and Group Co-Head of the Media and Digital Content Group at Lazard Ltd with decades of experience in the publishing and broadcasting industries and in valuations. *See* Chachas Expert Report ¶¶ 2-6 (Berry Aff., Ex. C).[2] Among other things, it was Mr. Chachas who designed the valuation framework, identified the comparable companies, selected the precedent transactions and chose appropriate multiple ranges for both comparable company and DCF analyses, which are fundamental to the valuation. The March 2010 Lazard valuation work resulted in a mid-point valuation estimate for the Debtors as of December 27, 2010 of $6.1 billion.

In October 2010, in connection with the disclosure statement dated October 22, 2010, Lazard prepared an updated valuation. *See* Lazard Expert Report at 1 (Berry Aff. Ex. B). Mr. Chachas was no longer with Lazard, having left the firm first to run for the Senate in his home state of Nevada and then to serve as Managing Partner of Methuselah Associates, an

---

[2] While he was at Lazard, Mr. Chachas was the senior calling officer responsible for the firm's relationships with several newspaper publishing organizations and was involved in a variety of newspaper publishing advisory engagements. He also was involved in numerous advisory transactions in the broadcasting arena and in the cable programming sector during that time. See Chachas Expert Report at 4-5 (Berry Aff. Ex. C). In addition, over the course of his career, Mr. Chachas has worked on a broad range of assignments relating to valuation and restructuring of distressed corporations, including media companies and highly leveraged companies. *See id.* at 6.

investment banking and asset management firm he founded to specialize in the media and digital content industries. *See* Chachas Expert Report at 2 (Berry Aff. Ex. C). The October 2010 valuation was performed at the direction and under the oversight of Mr. Mandava, a Director in Lazard's Financial Restructuring Group who had worked with Mr. Chachas on the March 2010 valuation work, and Mr. Kurtz, a Managing Director and the Global Co-Head of the Restructuring Group at Lazard and the leader of the Lazard engagement team on the Tribune matter. Based on Tribune's then-current business projections, the October 2010 Lazard valuation work produced a mid-point valuation estimate for the Debtors as of December 27, 2010 of $6.7 billion.

Tribune's final 2010 results were available in mid-January. Further, the capital markets had improved slightly in the publishing and broadcasting industries during the intervening 3 months. In order to determine whether the October valuation was still reasonable and appropriate, Lazard performed supplemental work or a "refresh" of its October valuation using updated Tribune results and then-current market data. *See* Supplemental Valuation Materials at TRB-LAZARD0000882 to TRB-LAZARD0000912; Peer & Market Data Analysis at TRB-LAZARD0000844 to TRB-LAZARD0000865. As part of that process, Mr. Chachas was retained to review both Lazard's October 2010 valuation and the January Supplemental Valuation Materials. Although seasoned and experienced investment bankers, neither Mr. Mandava nor Mr. Kurtz have the depth and breadth of expertise in the publishing and broadcasting industries possessed by Mr. Chachas.[3] Mr. Chachas and Lazard reviewed events

---

[3] Mr. Mandava has been with Lazard in the Financial Restructuring Group since 2003. Prior to that time, Mr. Mandava worked as a business analyst for the Chief Operating Officer and Senior Vice President of Corporate Development and as an associate at private equity fund Capital Z. Partners, as a financial analyst in the Financial Institutions Group of Merrill Lynch & Co. and Lazard, and as a tax consultant at KPMG Peat Marwick. See Lazard Expert Report at 112 (Berry Aff. Ex. B).

3

-7407491v

and conditions from October 2010 through January 2011 and determined that these events and conditions did not materially change the results of Lazard's October 2010 valuation.

B.   The Expert Reports

The valuation work done by Lazard and Mr. Chachas is set forth in the expert reports filed by Lazard and Mr. Chachas on February 8, 2011. For example, on the very first page of the Lazard Expert Report in bold print under the heading "Important Information," there is an outline of the history described above as well as language directing the reader to Appendix G of the Lazard Expert Report. In Appendix G, Lazard sets forth the factors it analyzed in connection with the January 2011 valuation work and explains that it took into consideration the "business and capital market developments that have occurred between October 2010 and January 2011." *See* Lazard Expert Report at 9 (Berry Aff. Ex. B).

These matters also are set forth in the Chachas Expert Report. In his report, Mr. Chachas opines that the valuation performed by Lazard with an assumed Effective Date of June 30, 2011 and set forth in the Supplemental Valuation Materials is based upon customary and reasonable methodologies for valuing the Debtors on a going concern basis. *See* Chachas Expert Report at 15 (Berry Aff. Ex. C). Mr. Chachas also expresses the view that Lazard's October 2010 valuation does not differ materially from the results set forth in the Supplemental Valuation Materials and that the work reflected in the Supplemental Valuation Materials supports the reasonableness of the October 2010 valuation. *Id.* at 19. The Chachas Expert Report further spells out the work Mr. Chachas did to enable him to reach these opinions, including his contacts with senior executives of numerous private and public publishing and broadcasting companies

---

Mr. Kurtz for his part has more than thirty years of restructuring experience. He has been with Lazard in the Restructuring Group since 2002. Prior to that time, Mr. Kurtz was a senior partner in the Restructuring Department at Skadden, Arps, Slate, Meagher & Flom. Prior to that, Mr. Kurtz was a partner at Jones, Day, Reavis & Pogue and a partner at Mayer, Brown, Roe & Maw. Mr. Kurtz has been involved in a broad large range of the largest corporate restructurings and is a frequent lecturer on bankruptcy and reorganization related topics. *See id.* at 110.

4

other than Tribune in order to gain first hand information about the general condition and outlook for each of the core businesses of the companies in the broadcasting and publishing industries. *See id.* at 12.

On February 21, 2011, the Noteholders submitted a rebuttal report of Raj Singh of Raymond James Associates taking issue with the Lazard valuation and asserting that, when properly valued, the mid point of the Debtors' value was $8.3 billion – $1.6 billion higher than the Lazard analysis that is the subject of the reports submitted by Mr. Chachas and Lazard. The Noteholders have also submitted a report from Shannon Pratt commenting on the Lazard valuation work. Neither Mr. Singh nor Mr. Pratt have expertise in the publishing and broadcast industries.

The parties are poised to commence expert depositions. The current schedule for the depositions of the experts for the DCL Plan Proponents relevant to this Motion is as follows: Mr. Chachas, March 4, 2010; Mr. Mandava, March 3, 2010, and Mr. Kurtz, February 28 and March 1, 2011. The depositions of Messrs. Singh and Pratt are both scheduled to take place on March 3, 2011.

## ARGUMENT

### I. THE OPINIONS OR TESTIMONY OF MESSRS. CHACHAS, MANDAVA AND KURTZ SHOULD NOT BE EXCLUDED UNDER FRE 403 BECAUSE THEIR TESTIMONY IS NOT NEEDLESSLY CUMULATIVE.

Federal Rule of Evidence 702 sets forth the standards governing the admissibility of expert testimony. Rule 702 allows expert testimony "where it will assist the trier of fact to understand the evidence or to determine a fact in issue" – a standard that is essentially one of relevance. *See United States v. Mathis*, 264 F.3d 321, 335 (3rd Cir. 2000)(*citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). The Noteholders concede by their silence that the testimony of Messrs. Chachas, Mandava and Kurtz satisfies all the requirements of Rule 702

and that that the opinions will assist the Court in its role as the trier of fact. *See* Noteholder Motion at 3-4.

Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time or needless presentation of cumulative evidence." As the wording and structure of the Rule makes clear, Rule 403 creates a "strong presumption" of admissibility. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3rd Cir. 2002); *see United States v. Cross*, 308 F.3d 308, 323 (3rd Cir. 2002); *United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 664 (3rd Cir. 2000)(en banc). The text of the Rule also demonstrates that "[c]umulative evidence is not bad per se; it is the 'needless presentation' that is to be avoided", *Olson v. Ford Motor Co.*, 411 F. Supp. 2d 1149, 1157 (D. N. Dakota 2006)(quoting 22A Charles A Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5220 (1978), and even then only when it substantially outweighs the probative value of the evidence at issue. *See Universal Rehabilitation*, 205 F.3d at 664; *Rice v. Swift Transportation Co., Inc.*, 2010 WL 4537059 at *4 (W.D. Pa. 2010).

As a result of all the foregoing, "district courts may utilize the rule [403] only rarely to cause the exclusion of evidence." *Universal Rehabilitation*, 205 F.3d at 664. *See also Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3rd Cir. 1992) ("[e]vidence should be excluded under Rule 403 only sparingly"); *Daichi Pharmaceutical Co., Ltd v. Apotex, Inc.*, 2006 WL 2088310 at *2 (D.N.J. 2006)(same). This injunction applies with full force in the area of expert testimony. "[T]he fact that *Daubert* [v. *Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993)] held that Rule 702 is the primary locus of a court's gatekeeping role indicates that

-7407491v

exclusion [of expert testimony] under Rule 403 should be rare." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 747 n. 16 (3rd Cir.), *cert. denied*, 513 U.S. 1190 (1995)("*Paoli II*").

The party seeking to exclude evidence under the Rule bears the burden of making a "particularized showing" as to why exclusion is required under the Rule. *See McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923 (3rd Cir. 1985); *Alexander v. Provident Life and Accident Insurance Co.*, 2003 WL 2567992 at *2 (M.D. Pa. 2003). In addition, "rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*." *Walden v. Georgia Pacific Corp.*, 126 F,3d 506, 518 n. 10 (3rd Cir. 1997)(*citing In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 859 (3rd Cir. 1990)("*Paoli I*"); *Alexander*, 2003 WL 2567992 at *2 (M.D. Pa. 2003). This limitation on the use of Rule 403 *in limine* is eminently sensible and practical, because the Court has the power at trial to limit the presentation of evidence through sustained objections. Indeed, it is precisely because courts have this power at trial that "evidence must clearly be inadmissible on all possible grounds" before it may be excluded *in limine*. *See, e.g., Harbor Insurance Co. v. Allstate Insurance Co.*, 1991 U.S. Dist. LEXIS 15272 at *3, 4 (N.D. Ill. 1991).

In this case, the Noteholders have not come close to satisfying their burden of excluding the testimony of Messrs. Chachas, Mandava or Kurtz through the vehicle of a motion in limine. Most importantly, the testimony of these three experts will not be duplicative, much less so needlessly cumulative as to outweigh its probative value.

For example, Mr. Chachas has particular experience and expertise in valuing companies in the publishing and broadcasting businesses which is not shared by Messrs. Mandava and Kurtz (or any of the Noteholders' experts). Mr. Chachas used his industry knowledge to design the valuation framework, to identify the appropriate peer comparable companies, to select

7

-740749 lv

precedent transactions and to determine the related multiple ranges to be used in the March 2010 valuation. It was because of this expertise and experience that the Debtors retained Methuselah Associates in January 2011 to review the October 2010 valuation and to participate in the January 2011 supplemental valuation work.

Mr. Chachas' industry expertise in both the publishing and broadcasting industries will allow him to provide the Court with unique and valuable insight into the valuation issues in this case. Mr. Chachas' perspective is even more important now that the Noteholders have presented a rebuttal valuation report asserting that Lazard's valuation is approximately $1.6 billion too low based primarily on the market information of the Debtors' competitors in the publishing and broadcasting industries.[4] Mr. Chachas, using his industry knowledge and experience, will also provide testimony to explain why the peer company multiples and precedent transactions selected by the Noteholders' valuation witness are inappropriate and result in an inflated valuation.

The testimony of Messrs. Mandava and Kurtz also is separate and distinct. Mr. Mandava will be the primary witness testifying to the financial analyses performed by Lazard and the opinions reached by Lazard on the basis of those analyses. Mr. Mandava oversaw and will testify concerning the detailed work performed by Lazard both in October 2010 and in January 2011. Further, Mr. Mandava is best suited to respond to many of the criticisms leveled against the Lazard valuation by the Noteholders' valuation witness. Mr. Kurtz is primarily a fact witness who is familiar with the overall work done and conclusions reached by Lazard and who will testify concerning certain major assumptions underlying Lazard's opinions, including:

---

[4] The Noteholders' complaint (Noteholder Motion at 2) that Mr. Chachas refers to and relies upon the Lazard Expert Report is meritless. "No support exists in the text or history of the Federal Rules of Evidence, or case law to limit an expert from reviewing and referring to the opinions of other experts." *Keller v. Feasterville Family Health Care,* 557 F. Supp.2d 671, 681 (E.D. Pa. 2008)(citing *Holbrook v. Lykes Bros. Steamship co., Inc.,* 80 F.3d 777, 781-82 (3rd Cir. 1996).

- The reasonableness of using the valuation range and point estimate prepared by Lazard in October 2010 given the changes in market conditions, forecasts and potential downside risks existing as of January 2011;

- Assumptions regarding the weight given to a comparable company valuation methodology versus a discounted cash flow valuation methodology in estimating the publishing segment's enterprise value, and

- Feasibility.

In short, the testimony of Messrs. Chachas, Mandava and Kurtz is not duplicative, much less so needlessly cumulative that its probative value is substantially outweighed. As a result, the motion to exclude should be denied.[5]

## II. THE NOTEHOLDERS HAVE SHOWN NO BASIS FOR STRIKING THE OPINION OF MR. CHACHAS RELATING TO THE JANUARY 2011 SUPPLEMENTAL VALUATION

Mr. Chachas will testify that the results contained in Lazard's October 2010 valuation do not differ materially from the results as set forth in the Supplemental Valuation Materials. Mr. Chachas will also testify that the work reflected in the Supplemental Valuation Materials supports the reasonableness of the October 2010 valuation. The Noteholders claim that the Court should exclude this testimony because the opinion is "entirely unverified and unsupported" and because Mr. Chachas provides no information in his report about the opinion or the "methodologies", "assumptions, calculations and conclusions" supporting it. *See* Noteholder Motion at 6.

This argument is meritless. As described above, Mr. Chachas disclosed the opinion in his expert report and also expressly referred to sections of the Lazard Expert Report which discussed

---

[5] *See, e.g., Speer v. Kavic*, 2009 WL 3447415 at *2 (W.D.Pa. 2009)(denying motion to exclude where each of three experts "hails from a different specialty" and approaches the issue "from a different perspective"); *Czarnecki v. Home Depot USA, Inc.*, 2009 WL 1706582 at *2 (E.D. Pa. 2009) (motion to excluded denied where the testimony of two experts " focused on different aspects" of an allegedly defective design); *Olson*, 411 F. Supp. 2d at 1157-58 (denying motion to exclude where Ford's three experts had different "expertise"); *Coles v. Jenkins*, 1998 WL 964506 at *1 (W.D. Va. 1998)(denying motion to exclude under Rule 403 where each of the three experts had "a slightly different area of expertise"); *In re Jacoby Airplane Crash Litigation*, 2007 WL 2746833 at *11 (D. N. J. 2007).

9

-7407491v

the opinion as well. The Lazard Expert Report in turn prominently featured this opinion and explained in Appendix G the manner in which the events and conditions from October 2010 through January 2011 had been used as inputs or given consideration in determining whether the events and conditions had a material impact on Lazard's October 2010 valuation. And the Supplemental Valuation Materials set forth the financial analyses, assumptions, calculations and conclusions supporting the opinion as well. *See* Supplemental Valuation Materials at TRB-LAZARD0000885 throughTRB-LAZARD0000912; Peer & Market Data Analysis at TRB-LAZARD0000847 through TRB-LAZARD0000865.

Moreover, Mr. Chachas identified the extensive work he has done to verify Lazard's work both through his interviews with Debtors' management, his review of documents and his discussions with other industry executives. See Chachas Expert Report at 11-13 (Berry Aff. Ex. C). Accordingly, there is no basis for this aspect of the Noteholders' motion.

## CONCLUSION

For the reasons set forth above, the instant motion to exclude should be denied.

Dated:  Wilmington, Delaware
        February 28, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin Lantry
James W. Ducayet
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

SIDLEY AUSTIN LLP
James F. Bendernagel
David M. Miles
1501 K Street, N.W.
Washington, DC  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711

-and-

/s/ Patrick J. Reilley
COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

Counsel for Debtors and Debtors in Possession

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
Thomas J. McCormack
30 Rockefeller Plaza
New York, NY  10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

/s/ Matthew B. McGuire
LANDIS RATH & COBB LLP
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

Counsel for the Official Committee of Unsecured Creditors

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

Special Counsel to the Official Committee of Unsecured Creditors

| | |
|---|---|
| DAVIS POLK & WARDWELL LLP<br>Benjamin S. Kaminetzky<br>Elliot Moskowitz<br>Michael Russano<br>450 Lexington Avenue<br>New York, New York  10017<br>Telephone: (212) 450-4500 | */s/ Robert J. Stearn, Jr.*<br>RICHARDS, LAYTON & FINGER, P.A.<br>Mark D. Collins (No. 2981)<br>Robert J. Stearn, Jr. (No. 2915)<br>Drew G. Sloan (No. 5069)<br>One Rodney Square, 920 N. King Street<br>Wilmington, DE  19801<br>Telephone:  (302) 651-7700<br>Facsimile:  (302) 651 7701 |

Counsel for JPMorgan Chase Bank, N.A.

Wilmer Cutler Pickering
Hale & Dorr LLP
Andrew N. Goldman
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800

Counsel for Angelo, Gordon & Co., L.P.

| | |
|---|---|
| DEWEY & LEBOEUF LLP<br>James O. Johnston<br>Joshua M. Mester<br>333 South Grand Avenue<br>Suite 2600<br>Los Angeles, CA  90071-1530<br>United States<br>213 621 6000 (phone)<br>213 621 6100 (fax) | */s/ Robert S. Brady*<br>YOUNG CONAWAY<br>STARGATT & TAYLOR, LLP<br>Robert S. Brady (No. 2847)<br>M. Blake Cleary (No. 3614)<br>The Brandywine Building – 17th Floor<br>1000 West Street, Post Office Box 391<br>Wilmington, DE  19899<br>Telephone:  (302) 571-6600<br>Facsimile:  (302) 571-1253 |

Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.