IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | ) Case No. 08-13141 (KJC) |
|  | ) Jointly Administered |
| Debtors. | ) Related to D.I. No. 8201 |

**DECLARATION OF MEREDITH S. SENTER, JR. IN SUPPORT OF MOTION OF AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, FOR ENTRY OF ORDER (I) DETERMINING THAT CREDITORS HAVE RETAINED THEIR STATE LAW CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS TO RECOVER STOCK REDEMPTION PAYMENTS MADE TO STEP ONE SHAREHOLDERS AND STEP TWO SHAREHOLDERS PURSUANT TO 11 U.S.C. § 546(A); (II) DETERMINING THAT AUTOMATIC STAY DOES NOT BAR COMMENCEMENT OF LITIGATION ON ACCOUNT OF SUCH CLAIMS AGAINST SUCH SHAREHOLDERS OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM AUTOMATIC STAY TO PERMIT COMMENCEMENT OF SUCH LITIGATION; AND**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## (III) GRANTING LEAVE FROM MEDIATION ORDER TO PERMIT COMMENCEMENT OF SUCH LITIGATION

I, MEREDITH S. SENTER, JR., hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a member of the law firm of Lerman Senter PLLC, counsel for Aurelius Capital Management, LP, on behalf of its managed entities, in the above-referenced matter. I make this declaration in support of the Motion Of Aurelius Capital Management, LP, On Behalf Of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes, and Law Debenture Trust Company Of New York, In Its Capacity As Successor Indenture Trustee For Certain Series Of Senior Notes, For Entry Of Order (I) Determining That Certain State Law Fraudulent Conveyance Claims Have Revested in Creditors Pursuant To 11 U.S.C. § 546(a); (II) Determining That Automatic Stay Does Not Bar Commencement Of Such Claims Or, In The Alternative, Granting Relief From Automatic Stay To Permit Commencement Of Such Claims; And (III) Granting Leave From Mediation Order To Permit Commencement Of Such Claims (the "Motion").[2]

2. One of the Debtors' principal businesses is the ownership and operation of broadcast television and radio stations pursuant to licenses issued by the Federal Communications Commission (the "FCC"). The FCC's approval is required under Section 310(d) of the Communications Act of 1934, as amended, 47 U.S.C. § 310(d), prior to a change in control or the assignment of broadcast licenses, including the change in control that will necessarily result if either of the Competing Plans goes effective. Therefore, each of the Competing Plans provides that receipt of the FCC's consent is a condition precedent to the

---

[2] Each capitalized term used but not defined herein shall bear the meaning ascribed to such term in the Motion.

{00492764;v1}2

100600967 v36

effectiveness of the plan. For the reasons set forth below, it is highly possible that the FCC will not have granted its approval prior to June 4, 2011.

3. The Debtors filed applications with the FCC on April 28, 2010, seeking the FCC's approval of Debtors' April 2010 Plan of Reorganization. Although that application remains pending at the FCC, it is essentially moot because it seeks approval of a now-abandoned plan of reorganization. Therefore, both of the Competing Plans contemplate that upon confirmation of the plan, the Debtors and the relevant plan proponents will amend the pending FCC applications in order to seek approval of the confirmed plan. The amendment will include information regarding parties that will hold attributable interests in the Reorganized Debtors, including their officers, directors and five percent or greater voting stockholders. Given that the confirmation hearing begins March 7, 2011, it is not likely that the FCC applications will be amended to reflect the ownership proposed by whichever Competing Plan is confirmed until April 2011 at the earliest. The FCC will be unable to review the applications necessitated by the confirmed plan until the amendments are filed.

4. As a general matter, the FCC may not act on applications for approval of a change in control until it has provided the public with notice and at least a 30-day opportunity to comment. 47 U.S.C. § 309(b). The FCC gave notice of the applications filed by the Debtors in April 2010, and a number of parties filed petitions to deny or oppositions during the 30-day comment period. While neither the proponents of the Noteholder Plan nor the proponents of the DCL Plan have indicated that they believe that the amendments to the FCC applications that need to be filed following confirmation of one of the Competing Plans will require an additional 30-day notice-and-comment period, the FCC may disagree or may in the exercise of its discretion, solicit comments on the amended applications.

{00492764;v1}3

5.    In any event, the FCC's review of the FCC applications will not be pro forma. In addition to having to review the ownership proposed by a confirmed plan, the FCC must also rule on seven requests for waiver of the FCC's ownership rules that the Debtors have sought. The FCC's grant of these waivers is necessary in order for the Debtors to continue to own existing combinations of broadcast stations and/or daily newspapers in six markets in which the Debtors operate. In the absence of these waivers, the Debtors would be required to divest broadcast stations or newspapers in order to comply with the FCC's ownership rules.

6.    Although the FCC's Media Bureau may currently be considering the merits of the waiver requests, the information to be included in the requisite amendments to the applications may impact the waiver requests. In addition, any decision on the waiver requests is likely to require a vote by the full five-person Commission itself. The FCC's 2007 decision approving Step Two of the LBO was a decision of the full Commission. Shareholders of Tribune Co., 22 FCC Rcd 21,266 (2007), appeal pending sub nom. Tribune Co. v. FCC, Nos. 07-1488, 07-1489 (D.C. Cir. filed December 3, 2007). Actions by the full Commission routinely take longer than actions by the FCC's staff on delegated authority. The Commission, for example, took seven months to reach a decision on the applications for approval of Step Two of the LBO.

7.    The Debtors' requests for waivers have been vigorously opposed by a coalition of public interest groups and the International Brotherhood of Teamsters. A decision on the waiver requests is further complicated by pending litigation concerning the FCC's ownership rules themselves. The FCC's ownership rules, particularly the broadcast-newspaper cross-ownership rule, which is the subject of five of the Debtors' waiver requests, are the subject of petitions for review currently pending before the United States Court of Appeals for the Third Circuit. Prometheus Radio Project v. FCC, No. 08-3078 (3d Cir.) Oral argument in that case is

scheduled for February 24, 2011. It is not improbable that the Third Circuit may issue a decision in the Prometheus case prior to the FCC's action on the pending applications, and the Third Circuit's decision may cause a change to the FCC's ownership rules or affect its consideration of the waiver requests. Indeed, in 2009, the FCC asked the Third Circuit to leave in place a stay on the effectiveness of the current broadcast/newspaper cross-ownership rule, which creates a presumption in favor of a waiver in three of Tribune's five markets where Tribune has requested waivers. The FCC noted, among other things, that three of the five then-members of the FCC (including the Chairman) were not members of the FCC at the time that the rule was adopted, and that a fourth member had dissented from the order adopting the new rule. In the alternative, the FCC asked the Third Circuit to remand the case so that the current Commissioners could "revisit the order's conclusions." FCC, Response to the Court's Order of November 4, 2009, Prometheus Radio Project v. FCC, No. 08-3708 (3d Cir. filed November 25, 2009).

8. Based on the current confirmation schedule, the need to amend the pending FCC applications after a plan is confirmed, the opposition to the Debtors' requests for waivers of the FCC's ownership rules, and the pendency of litigation in the Third Circuit on the very rules that the FCC must apply in ruling on the waiver requests, it is highly possible that the FCC will not have granted the requisite approvals necessary for either of the Competing Plans to go effective prior to June 4, 2011.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 1, 2011
Wilmington, Delaware

/s/ Meredith S. Senter Jr.
Meredith S. Senter Jr.
LERMAN SENTER PLLC