**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: March 22, 2011 at 10:00 a.m.**<br>**Objection Deadline: March 15, 2011 at 4:00 p.m.** |

**MOTION OF DEBTOR TRIBUNE COMPANY FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW PAYMENT AND ADVANCEMENT OF DEFENSE COSTS, FEES, AND EXPENSES UNDER DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICIES**

Tribune Company, one of the above-captioned debtors and debtors in possession ("Tribune" or the "Debtor" and collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order pursuant to Sections 105(a) and 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") granting relief

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

from the automatic stay, to the extent it applies, to allow payment and advancement by its primary and excess directors and officers liability insurance providers (the "Insurance Providers") of past and future defense costs, fees, and expenses incurred by individual insured persons relating to (1) the adversary proceeding filed in this case captioned The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al. v. FitzSimons, et al., Adv. Proc. No. 10-54010 (KJC) (the "FitzSimons Lawsuit"), and (2) individual lawsuits filed in this case to avoid allegedly preferential transfers to certain named defendants (collectively, the "Preference Lawsuits"). In support of this Motion, Tribune respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[2] In all, the Debtors comprise 111 entities.

2. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). The Committee is the

[2] An additional Debtor, Tribune CNLBC, LLC, formerly known as Chicago National League Ball Club, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

named plaintiff in both the FitzSimons Lawsuit and the Preference Lawsuits. The Committee has been apprised of the relief requested herein.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are Sections 105(a) and 362(d) of the Bankruptcy Code and Rule 4001(a)(3) of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

6. Tribune is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. Tribune is a Delaware corporation.

### A. The FitzSimons Lawsuit and the Preference Lawsuits

7. Various individuals are named as defendants in the FitzSimons Lawsuit and/or the Preference Lawsuits (collectively, the "Individual Defendants").

8. The FitzSimons Lawsuit was originally filed in this Bankruptcy Court on November 1, 2010, and an amended complaint was filed on December 7, 2010.

9. The Preference Lawsuits were filed in this Bankruptcy Court between December 3 and December 7, 2010.

10. In connection with defending against the FitzSimons Lawsuit and the Preference Lawsuits, the Individual Defendants have incurred and will continue to incur defense costs, fees, and expenses. The Individual Defendants are seeking payment and/or advancement of such defense costs, fees, and expenses from the Insurance Providers.

11. Through an order dated October 27, 2010, the Bankruptcy Court directed that any pursuit of the causes of action set forth in the FitzSimons Lawsuit be stayed until the earliest of

April 1, 2011 or various other possible termination events. Through an order dated November 29, 2010, the Bankruptcy Court also directed that any pursuit of the causes of action set forth in the Preference Lawsuits be stayed until the earliest of April 1, 2011 or various other possible termination events. Both of these orders also directed that during this same period of time where the aforementioned litigation is stayed, neither the Debtors nor the Committee could settle any of the aforementioned causes of action without the other's consent.

**B. The Insurance Policies**

12. Tribune purchased a primary directors and officers liability insurance policy from Federal Insurance Company ("Federal"), a member of Chubb Group of Insurance Companies, with an original Policy Period of August 31, 2007 to August 31, 2008 (the "2007 D&O Policy"). Upon closing of the LBO Transaction, the 2007 D&O Policy was converted to a run-off policy which provides coverage for "Loss"[3] (including defense costs, settlement and judgments) from "Claims" made during the Policy Period of August 31, 2007 to December 20, 2013 with respect to "Wrongful Acts" occurring or allegedly occurring prior to December 20, 2007. The 2007 D&O Policy, subject to its terms, conditions, limitations, and exclusions, provides $15,000,000 of insurance coverage to the "Insureds," which include Tribune, its Subsidiaries, and individual "Insured Persons." The Insureds under the 2007 D&O Policy include each of the Individual Defendants who were named as defendants in the FitzSimons Lawsuit or the Preference Lawsuits.

13. Tribune also purchased a primary directors and officers liability insurance policy from Federal with a $15,000,000 limit of liability for the Policy Period of December 20, 2007 to December 20, 2008, which was subsequently extended to December 20, 2011 (the "2008 D&O Policy"). The 2008 D&O Policy applies, subject to its terms, conditions, limitations and

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the respective Policy.

exclusions, to Claims made during the Policy Period for Wrongful Acts occurring or allegedly occurring on or after December 20, 2007. Like the 2007 D&O Policy, the "Insureds" under the 2008 D&O Policy include Tribune, its Subsidiaries and individual "Insured Persons," so each of the Individual Defendants also is an Insured under the 2008 D&O Policy.

14. The terms of the 2007 and 2008 D&O Policies are typical of those that are commonly obtained by companies such as Tribune. In relevant part, the 2007 and 2008 D&O Policies contain three insuring clauses, designated herein as "Insuring Clause 1," "Insuring Clause 2," and "Insuring Clause 3."

15. Insuring Clause 1 provides specified liability coverage directly to "Insured Persons" for any Loss resulting from a Claim first made against them during the Policy Period for a Wrongful Act for which Tribune does not indemnify them. Because of Tribune's pending Chapter 11 petition, the coverage of Insuring Clause 1 is implicated.

16. Insuring Clause 2 provides specified liability coverage to Tribune to reimburse it for indemnification provided to the Insured Persons for any Loss resulting from a Claim first made against them during the Policy Period for a Wrongful Act.

17. Insuring Clause 3 provides specified liability coverage to Tribune for Loss resulting from any "Securities Claim" first made against it during the Policy Period for a Wrongful Act.

18. The 2007 and 2008 D&O Policies contain identical, unambiguous "Order of Payments" endorsements that expressly subordinate the rights of Tribune to the proceeds payable under the Policies to the rights of the Individual Defendants. (See Endorsement 18 to 2007 D&O Policy at ¶ 1; Endorsement 21 to the 2008 D&O Policy at ¶1.) Specifically, the 2007 and 2008 D&O Policies provide:

> 1. Whenever payment of Loss is due under this coverage section the [Insurer] shall:
>
> (a) first pay such Loss for which coverage is provided under Insuring Clause 1 of this coverage section; then
>
> (b) to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such Loss for which coverage is provided under any other Insuring Clause of this coverage section; provided, however, that the [Insurer] shall withhold payment of such Loss for which coverage is provided under Insuring Clause 2 or 3 of this coverage section if, before making such payment, the [Insurer] receives a written request signed by the Chief Executive Officer of the Parent Organization requesting that the payment be withheld.

19. The 2007 and 2008 D&O Policies also contain endorsements providing that the Insurer's obligations to the Insured Persons will not be affected by bankruptcy or insolvency of Tribune:

> 1. Bankruptcy or insolvency of an Insured shall neither relieve the [Insurer] of its obligations nor deprive the [Insurer] of its rights under this coverage section.
>
> 2. It is understood that the coverage provided under this policy is intended to protect and benefit the Insured Persons. If a liquidation or reorganization proceeding is commenced by or against the Organization pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the Insureds hereby (a) waive and release any automatic stay or injunction which may apply in such proceeding to this coverage section or its proceeds under such Bankruptcy Code or law, and (b) agree not to oppose or object to any efforts by the [Insurer] or any Insureds to obtain relief from any such stay or injunction.

(See Endorsement 26 to 2007 D&O Policy; Endorsement 29 to the 2008 D&O Policy.)

20. Tribune also purchased excess directors and officers liability insurance policies totaling $185,000,000 in the aggregate for both the August 31, 2007 to December 20, 2013 Policy Period and the December 20, 2007 to December 20, 2011 Policy Period, for a total directors and officers liability coverage amount of $200,000,000 each Policy Period (the "Excess Policies" and together with the 2007 and 2008 D&O Policies, the "Policies").

21. Tribune's Policies make up two "towers" of directors and officers liability insurance coverage for each Policy Period. The first tower of directors and officers liability insurance coverage includes the primary 2007 or the primary 2008 D&O Policy and the Excess Policies that provide the first $85,000,000 in excess coverage for that Policy Period. These Excess Policies follow the form of the 2007 or 2008 D&O Policy and provide coverage pursuant to Insuring Clauses 1, 2 and 3 therein (the "Follow Form Excess Policies"). Each of the terms described herein relating to the 2007 and 2008 D&O Policies also applies to the Follow Form Excess Policies.[4]

22. The Excess Policies providing the remaining $100,000,000 in directors and officers liability coverage make up the second tower of coverage for each Policy Period. These Excess Policies apply only to Loss resulting from Claims made against Insured Persons for which Tribune does not indemnify them. These Excess Policies do not provide any coverage to Tribune – i.e., they do not reimburse Tribune for its indemnification of Insured Persons, nor do they provide any coverage for Securities Claims asserted against Tribune. This type of directors and officers liability insurance is commonly referred to as "Side A Only" coverage.

23. Illinois National Insurance Company, a member of Chartis,[5] issued the first $10,000,000 of Side A Only coverage for the Policy Period of August 31, 2007 to December 20,

---

4 The Excess Policies that provide the first $85,000,000 in excess directors and officers liability insurance coverage for the August 31, 2007 to December 20, 2013 Policy Period were issued by the following insurers, in the following amounts: Illinois National Insurance Company (Chartis/AIG), $15,000,000; ACE American Insurance Company, $15,000,000; Zurich American Insurance Company, $15,000,000; Great American Insurance Company, $15,000,000; Axis Insurance Company, $10,000,000; U.S. Specialty Insurance Company (HCC), $10,000,000; RSUI Indemnity Company, $5,000,000.

The Excess Policies that provide the first $85,000,000 in excess directors and officers liability insurance coverage for the December 20, 2007 to December 20, 2011 Policy Period were issued by the following insurers, in the following amounts: Illinois National Insurance Company (Chartis/AIG), $15,000,000; Zurich American Insurance Company, $15,000,000; ACE American Insurance Company, $15,000,000; U.S. Specialty Insurance Company (HCC), $10,000,000; Great American Insurance Company, $15,000,000; Axis Insurance Company, $10,000,000; RSUI Indemnity Company, $5,000,000.

5 Formerly known as American International Underwriters, successor-in-interest to American International Group, Inc.

2013 (the "2007 Side A Only Policy") and the first $15,000,000 of Side A Only coverage for the Policy Period of December 20, 2007 to December 20, 2011 (the "2008 Side A Only Policy"). Additional Excess Policies follow the form of the 2007 and 2008 Side A Only Policies, (the "Excess Side A Only Policies" and together with the 2007 and 2008 Side A Only Policies, the "Side A Only Policies").[6]

24. The claims made against the Individual Defendants in the FitzSimons Lawsuit and the Preference Lawsuits have been noticed and tendered to Federal and the other Insurance Providers. Federal has orally advised Tribune that it will advance defense costs with respect to the FitzSimons Lawsuit. Federal recently denied coverage for the Preference Defendants via a letter dated February 18, 2011. Tribune (and possibly other Insureds) intends to challenge Federal's denial of coverage with respect to the Preference Lawsuits.

25. Federal has indicated that its payment of defense costs, fees or expenses will be subject to the entry of an order that provides that if the automatic stay provided for in section 362(a) of the Bankruptcy Code applies to such payments, the automatic stay is modified to allow such payments and advancements to be made. By this Motion, Tribune seeks entry of the order requested by Federal.

26. If Federal does not provide coverage for the Preference Lawsuits, then the Side A Policies are triggered and must provide coverage for the Preference Lawsuits. Therefore,

---

[6] The Excess Policies that follow the 2007 Side A Only Policy were issued by the following insurers, in the following amounts: The St. Paul Mercury Insurance Company (Travelers), $10,000,000; Twin City Fire Insurance Company (Hartford), $10,000,000; Federal Insurance Company (Chubb), $10,000,000; U.S Specialty Insurance Company (HCC), $10,000,000; Liberty Mutual Insurance Company, $10,000,000; XL Specialty Insurance Company, $10,000,000; Allied World Assurance Co. Ltd. (AWAC), $15,000,000; Corporate Officers & Directors Assurance Ltd. (CODA), $15,000,000.

The Excess Policies that follow the 2008 Side A Only Policy were issued by the following insurers, in the following amounts: Twin City Fire Insurance Company (Hartford), $15,000,000; Federal Insurance Company (Chubb), $10,000,000; U.S Specialty Insurance Company (HCC), $10,000,000; Liberty Mutual Insurance Company, $10,000,000; AIG Casualty Company, $15,000,000; Axis Insurance Company, $10,000,000; Allied World Assurance Co. Ltd. (AWAC), $15,000,000.

Tribune requires that this Motion and its related Order remain broad with respect to all claims, all Individual Defendants and all Insurance Providers.

**RELIEF REQUESTED**

27. The purpose of this Motion is to remove any impediments to the ability of the Insurance Providers to immediately commence payment of the outstanding and ongoing defense costs, fees, and expenses that the Individual Defendants have incurred and will incur in the future in the FitzSimons Lawsuit and the Preference Lawsuits. Tribune seeks the entry of an order modifying the automatic stay provided for in Section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by its Insurance Providers of defense costs, fees, and expenses that are, or will become, owing to the Individual Defendants under the Policies. Tribune further requests that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

28. In this present Motion, Tribune is not requesting a determination of any of the Insurance Providers' obligation to pay any particular expense or claim of the Individual Defendants. Nothing in this Motion is intended to modify or alter the rights and obligations provided for under the terms and conditions of the Policies, and all parties to the Policies retain and reserve all rights and defenses that they would otherwise have under the Policies. Rather, Tribune seeks only the entry of an order modifying the automatic stay, to the extent it applies, to allow the Insurance Providers to fulfill their obligations, whatever they may be, to pay claims and expenses of the Individual Defendants under the terms of the Policies, in connection with defending against the FitzSimons Lawsuit and the Preference Lawsuits.

**BASIS FOR RELIEF**

29. Tribune respectfully submits that the proceeds of the Policies are not property of Tribune's bankruptcy estate under Section 541 of the Bankruptcy Code, and therefore the

automatic stay does not apply to the Insurance Providers' advancement of defense costs, fees, and expenses incurred by the Individual Defendants in the FitzSimons Lawsuit and the Preference Lawsuits. Alternatively, even if the proceeds were deemed estate property, sufficient cause exists to lift the automatic stay to permit the Insurance Providers to use the proceeds to advance the defense costs, fees, and expenses incurred by the Individual Defendants in the FitzSimons Lawsuit and the Preference Lawsuits.

**C. The Proceeds of the Policies are Not Estate Property**

30. Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate. 11 U.S.C. § 362(a)(3). It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code. See MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 92 (2d Cir 1988). This Court, however, has held that the proceeds of directors and officers liability policies, like the Policies in this case, are not estate property. Miller v. McDonald (In re World Health Alternatives, Inc.), 369 B.R. 805, 810 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); In re Allied Digital Techs., Corp., 306 B.R. 505, 512 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical). Courts from other jurisdictions have reached similar conclusions. See, e.g., La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.), 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); In re Adelphia Commc'ns Corp., 298 B.R. 49, 53-54 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested

that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

31. In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." Allied Digital, 306 B.R. at 509. Here, the 2007 and 2008 D&O Policies contain unambiguous "Order of Payments" endorsements that expressly subordinate the rights of Tribune to the proceeds payable under that Policy to the rights of the Individual Defendants. (See Endorsement 18 to 2007 D&O Policy at ¶ 1.) The Follow Form Excess Policies incorporate this provision. In addition, Tribune has no right whatsoever to the proceeds of the Side A Only Policies, since those Policies only provide coverage for Insured Persons, not for Tribune.

32. The 2007 and 2008 D&O Policies, by virtue of the Order of Payments endorsements, provide for the immediate payment of the Individual Defendants' defense costs, fees and expenses ahead of any payment that may be made to Tribune, such that the interests of Tribune, if any, in the proceeds of the 2007 and 2008 D&O Policies is contractually subordinated to the interests of the Individual Defendants in those proceeds and may never mature.

33. The Order of Payments endorsement confirms the parties' intent to give priority to the right to payment of individual Insured Persons. In re World Health Alternatives, Inc., 369 B.R. 805, 811 (finding that priority of payments provision "requires that payments first be made to Coverage A insureds"); In Re Laminate Kingdom LLC, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008). As the court explained in In Re Laminate Kingdom LLC:

> [T]he Court believes the depletion of proceeds to pay the Costs of Defense incurred by the officers and directors does not diminish the protection afforded the estate's assets under the terms of the Policy. The Policy's "Priority of Payments Endorsement" specifically requires that the proceeds be used first to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the [officer's and director's costs of defense]. Then, only after such payments are made, and only if proceeds remain after payment of such Costs of Defense, will the Trustee or the estate be paid any proceeds. Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the Costs of Defense are paid.

No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008).

34. Similarly, Tribune purchased the Policies with the primary purpose of providing insurance coverage to individual Insured Persons, including the Individual Defendants. See In re First Cen. Fin. Corp., 238 B.R. at 16 ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). Tribune's speculative right to any residual proceeds of the 2007 or 2008 D&O Policy and the Follow Form Excess Policies, which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of Tribune's estate.

35. This Court's decision in the In re World Health Alternatives case is instructive. In that case, the Court refused to grant an injunction requested by a trustee to prevent the debtor's directors and officers from consummating a settlement that would exhaust the available directors and officers liability policy proceeds. In re World Health Alternatives, 369 B.R. at 811. Like the 2007 and 2008 D&O Policies, the policy at issue in In re World Health Alternatives contained an order of payments provision, which gave priority to payments made for coverage directly to the directors and officers of the debtor. Id. at 808. The In re World Health

Alternatives court held that the policy proceeds were not property of the estate because there were no pending claims against the debtor that would be covered by the policy and the settlement was being funded pursuant to the policy's coverage directly to the directors and officers. Id. at 811.

36. As in In re World Health Alternatives, Tribune faces no direct claims for which it could seek coverage under any of the 2007 or 2008 D&O Policy's coverage sections that are senior to the rights of the Individual Defendants. Therefore, Tribune's interest (if any) in the proceeds is merely hypothetical and subordinate to the Individual Defendants' right to coverage for defense costs, fees, and expenses incurred with the FitzSimons Lawsuit and the Preference Lawsuits. This conclusion is confirmed by the Order of Payments provision in the 2007 and 2008 D&O Policies.

37. Accordingly, the Insurance Providers' payment of defense costs, fees, and expenses is not subject to the automatic stay because of Tribune's lack of any interest in the proceeds of the 2007 or 2008 D&O Policy and the Follow Form Excess Policies and by operation of the Order of Payments provision. In addition, as stated above, Tribune has no interest whatsoever in the Side A Only Policies, as those Policies provide coverage solely for Insured Persons, and do not provide any coverage for Tribune.

**D. Cause Exists to Modify the Automatic Stay**

38. Even if the proceeds from the Policies are determined to be property of the estate, "cause" exists under Section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow the payment of defense costs, fees, and expenses under the Policies. It is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to individual insureds. See Allied Digital, 306 B.R. at 513.

39. Section 362(d) of the Bankruptcy Code provides that at the request of an interested party, the court shall grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define cause, but courts are given broad discretion to provide appropriate relief from the automatic stay based upon the "totality of the circumstances in each particular case." Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted); see also Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992) ("'Cause' is not defined in the Code; it must be 'determined on a case-by-case basis.'") (citations omitted).

40. This Court has identified three criteria that courts should consider in determining whether to grant relief from the automatic stay:

1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

3. The probability of the creditor prevailing on the merits.

Save Power Ltd. V. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.), 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing Izzarelli, 141 B.R. at 576); see also Levitz Furniture Inc. v. T. Rowe Price Recovery Fund, L.P. (In re Levitz Furniture Inc.), 267 B.R. 516, 523 (Bankr. D. Del. 2000); Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993). This Court has explained that "the required showing" for the third criterion is "very slight," Izzarelli, 141 B.R. at 578, and that the non-bankrupt party need only show that "their claim is not frivolous." Levitz Furniture Inc., 267 B.R. at 523.

41. The request made here easily satisfies the three criteria. First, neither Tribune nor its estate will suffer any prejudice if the Court grants relief from the automatic stay with respect

to the Policies. Tribune's estate faces no direct exposure in connection with the FitzSimons Lawsuit and the Preference Lawsuits.

42. Confirming the Insurance Providers' ability to pay the Individual Defendants' defense costs, fees, and expenses is in the best interests of Tribune's estate and creditors. In connection with the FitzSimons Lawsuit and the Preference Lawsuits, the Individual Defendants have incurred and will continue to incur defense costs. If these defense costs are unsatisfied, the Individual Defendants may seek to assert indemnification claims against Tribune's estate for such amounts. Consequently, if the requested relief is granted, it would relieve Tribune's estate of the potentially significant burden of indemnity claims that may otherwise be asserted by the Individual Defendants in the absence of such relief. In addition, granting the requested relief would remove some of the ongoing uncertainty being experienced by the Individual Defendants who are current Tribune employees, thus allowing them to more fully focus on the success of Tribune.

43. Furthermore, as discussed above, the interest of the Tribune's estate, if any, in the proceeds of the 2007 and 2008 D&O Policies and the Follow Form Excess Policies is expressly subordinate to the interests of the Individual Defendants. Specifically, the 2007 and 2008 D&O Policies provide that Tribune has a right to the insurance proceeds only after the insured individuals are fully reimbursed for any Loss, including defense costs. Moreover, as also discussed above, Tribune has no interest in the proceeds of the Side A Only Policies.

44. Second, the Individual Defendants will suffer significant hardship if they are deprived of the ability to access the proceeds to fund defense costs, fees, and expenses incurred in connection with the FitzSimons Lawsuit and the Preference Lawsuits. See, e.g., In re Cybermedica, Inc., 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (cause existed to lift the automatic stay to permit the advancement of defense costs because the directors would be "irreparably

harmed" if they were not permitted to exercise their contractual right to the advancement of defense costs); see also In re Arter & Hadden, L.L.P., 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (holding that although proceeds from a "Management Liability Policy" issued to a bankrupt law firm were property of the debtor's estate, cause existed to lift the automatic stay to allow the insurer to pay defense fees because the individual insureds "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense of the trustee's complaint" and any harm to the debtor was merely "speculative").

45. Importantly, as discussed above, the Order of Payments endorsements on the 2007 and 2008 D&O Policies confirm the parties' intent to weigh the Individual Defendants' interests in the proceeds over the interests (if any) of the Debtors. See In re World Health Alternatives, 369 B.R. at 811. The 2007 and 2008 D&O Policies also specifically provide that the Insurance Providers' obligations to the Insured Persons will not be affected by bankruptcy or insolvency of Tribune. (See Endorsement 26 to 2007 D&O Policy.) In addition, the Side A Only Policies, which provide coverage only for Claims against Insured Persons for which Tribune cannot indemnify them, is expressly designed to provide coverage to the Insured Persons in this very situation.

46. Third, to the extent the third criterion even applies to the present circumstances, the operative creditors are the Individual Defendants on whose behalf the Insurance Providers would use the proceeds. The Individual Defendants have sought coverage under the Policies for the FitzSimons Lawsuit and the Preference Lawsuits. Accordingly, the Individual Defendants' claims to the proceeds are not frivolous.

47. As set forth herein, ample cause exists to justify the Court's grant of relief to permit the Insurance Providers to use the proceeds of the Policies to reimburse past and advance

future defense costs, fees, and expenses incurred by Individual Defendants in connection with the FitzSimons Lawsuit and the Preference Lawsuits.

48. This Court previously granted similar relief in this case. On August 17, 2009, Tribune filed a motion for an order modifying the automatic stay to allow certain insurers to advance defense costs under a fiduciary liability insurance policy in connection with the case captioned Dan Neil, Corrie Brown, Henry Weinstein, Walter Roche, Jr., Myron Levin and Julie Makinen, individuals, on behalf of themselves and on behalf of all others similarly situated v. Samuel Zell, GreatBanc Trust Company, EGI-TRB, LLC et al., No. 08-cv-06833 (RJP) (the "Neil Lawsuit"). See Docket No. 1970. In that motion, Tribune requested nearly identical relief as it is seeking here. There were no objections raised by any party to that motion. See Docket No. 2062. The Court granted Tribune's previous motion on September 2, 2009. See Docket No. 2077.

49. Further, similar relief has been granted in this and other districts. See In re Washington Mutual, Inc., No. 08-12229 (MFW) (Bankr. D. Del. Dec. 16, 2008) [Docket No. 445]; In re Lehman Bros. Holdings Inc., No. 08-13555 (JMP) (Bankr. S.D.N.Y. Mar. 25, 2009) [Docket No. 3220]; In re Enron Corp., No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 17, 2002) [Docket No. 3792].

**NOTICE**

50. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for the Debtors' pre-petition loan facilities; (iv) counsel for the administrative agent for the Debtors' post-petition financing facility; (v) the Insurance Providers; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Tribune submits no other or further notice is necessary.

## NO PRIOR REQUEST

51. Tribune has not previously sought the relief requested herein from this or any other court in connection with the FitzSimons Lawsuit or the Preference Lawsuits. As noted above, Tribune did file a motion seeking similar relief with respect to different policies in connection with the Neil Lawsuit.

## CONCLUSION

WHEREFORE, Tribune respectfully requests that the Court enter an order (i) authorizing the Insurance Providers' payment of past defense costs, fees, and expenses and advancement of future defense costs, fees, and expenses in connection with the FitzSimons Lawsuit and the Preference Lawsuits, and (ii) granting such other and further relief as is just and proper.

Dated: Wilmington, Delaware
March 1, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Kevin T. Lantry
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

REED SMITH LLP
John D. Shugrue
Lana J. Raines
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

- and -

COLE, SCHOTZ, MEISEL
FORMAN & LEONARD, P.A.

By: /s/ J. Kate Stickles
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTOR AND
DEBTORS IN POSSESSION