# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Related to Docket Nos. 233, 878, 3808**<br>**Proposed Hearing Date: March 22, 2011 at 10:00 a.m. ET**<br>**Proposed Objection Deadline: March 15, 2011 at 4:00 p.m. ET** |

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING DEBTORS TO AMEND THE LETTER OF CREDIT FACILITY PURSUANT TO SECTIONS 105, 362(d), 363(b)(1), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) AND 365 OF THE BANKRUPTCY CODE AND GRANTING OTHER RELATED RELIEF

The above-captioned debtors and debtors in possession (each a "Debtor" and

collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order (the

"Order") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") authorizing Debtor Tribune Company and the other Debtors to enter into an Amendment

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

No. 4 to Letter of Credit Agreement ("Amendment No. 4") which shall amend that certain Post-Petition Letter of Credit Agreement dated as of December 8, 2008 (as amended, supplemented or otherwise modified from time to time, and as amended pursuant to Amendment No. 1 to Letter of Credit Agreement dated as of March 6, 2009, Amendment No. 2 to Letter of Credit Agreement dated as of April 6, 2009, Amendment No. 3 to Letter of Credit Agreement dated as of March 22, 2010 and together with Amendment No. 4, the "Amended Letter of Credit Agreement") among Barclays, as administrative agent (in such capacity, the "LC Agent") and issuing bank (in such capacity, the "Issuing Bank") and, if applicable, a syndicate of other financial institutions (including Barclays, the "Lenders") and the Debtors; and granting other related relief. In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008, the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code"), except Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC, which filed on October 12, 2009 (each date, as applicable, the "Petition Date"). The Debtors' chapter 11 cases are jointly administered for procedural purposes only.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On December 11, 2008, this Court entered its Interim Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and For Certain Debtors to Continue Selling Receivables and Related

Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter Into a Letter of Credit Facility, (3) Modifying the Automatic Stay and (4) Granting Other Related Relief (the "Interim Financing Order") (Docket No. 67).

4.      On December 18, 2008, the United States Trustee appointed the official committee of unsecured creditors (the "Committee").

5.      On January 15, 2009, this Court entered its Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter into a Letter of Credit Facility, (3) Modifying the Automatic Stay and (4) Granting Other Related Relief (the "Final Financing Order") (Docket No. 233).

6.      On April 8, 2009, this Court entered its Order (A) Approving Amendments to Securitization Facility and Letter of Credit Facility and (B) Modifying the Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter into a Letter of Credit Facility, (3) Modifying the Automatic Stay, and (4) Granting Other Related Relief (the "Second Financing Order") (Docket No. 878).

7.      On March 22, 2010, this Court entered its Order Authorizing Debtors to Amend the Letter of Credit Facility Pursuant to Sections 105, 362(d), 363(b)(1), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code and Granting Other Related

46429/0001-7417743v1

3

Relief (the "Third Financing Order" and together with the Final Financing Order and Second Financing Order, the "Financing Orders") (Docket No. 3808).

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 362(d), 363(b)(1), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of title 11 of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

9.    The Debtors' letter of credit facility pursuant to the Amended Letter of Credit Agreement, as amended and authorized pursuant to the Third Financing Order,[2] terminates on April 10, 2011. The Amended Letter of Credit Agreement provides a letter of credit facility in an amount up to $30 million (the "Letter of Credit Facility").

10.    The Debtors issue letters of credit under the Amended Letter of Credit Agreement and need to ensure continued access to the Letter of Credit Facility to adequately support their insurance programs and business operations. Accordingly, the Debtors intend to further amend and extend the Amended Letter of Credit Agreement according to the terms provided for in Amendment No. 4 to Letter of Credit Agreement attached hereto as Exhibit B and described below. Liens or interests of the Administrative Agent and the Lenders in the LC Cash Collateral (as defined in the Financing Orders) shall continue in full force and effect.

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings assigned in any Financing Order referenced herein, the Amended Letter of Credit Agreement and the Amendment No. 4 to Letter of Credit Agreement.

## RELIEF REQUESTED

11.   By this Motion, the Debtors request authority to:

    a.   enter into Amendment No. 4 to Letter of Credit Agreement, which shall, among other things, extend the Termination Date to the earlier to occur of (a) April 10, 2012, (b) the effective date of a plan of reorganization under the Chapter 11 Cases or (c) such other date on which the Commitments terminate pursuant to Section 9 of the Amended Letter of Credit Agreement;

    b.   continue to perform their reimbursement and other obligations under, and provide the required LC Cash Collateral (as defined below) under, the Amended Letter of Credit Agreement, in an amount at least equal to 105% of the aggregate amount of Letter of Credit Liabilities;

    c.   grant to the LC Agent, the Issuing Bank and the Lenders priority in payment with respect to the obligations of Debtor Tribune Company and the other Debtors under the Amended Letter of Credit Agreement over any and all administrative expenses of the kind as specified in sections 503(b) and 507(b) of the Bankruptcy Code other than in respect of the Carve-Out;

    d.   continue the prior relief granted under the Financing Orders pertaining to the Letter of Credit Facility;

    e.   seek other related relief described in the proposed Order; and

    f.   pursuant to Bankruptcy Rule 4001(c)(2), have this Motion heard at a final hearing and the final proposed Order entered thereto.

## I.   Request for Authority to Extend and Amend Letter of Credit Facility and Related Rights Pursuant Thereto

12.   The Debtors seek access to the financing proposed to be provided by the Letter of Credit Facility, as extended and amended, to permit Debtor Tribune Company to obtain standby letters of credit necessary in the ordinary course of its, and certain of its subsidiaries', businesses. In the absence of the proposed extension of the Letter of Credit Facility as amended herein, serious harm to the Debtors and their estates could occur, which may include third parties and insurers declining to conduct business dealings with the Debtors. The preservation, maintenance and enhancement of the going concern value of the Debtors are significant to the

Debtors' successful reorganization. This facility is important to the Debtors ability to maintain workers' compensation and other required insurance or other obligations in support of their normal business operations.

13.     The significant elements of the Letter of Credit Facility remain largely unchanged under Amendment No. 4 to Letter of Credit Agreement, except for the Termination Date. The major components of the Letter of Credit Facility are summarized below.

a) Type of Facility: A Letter of Credit Facility, as amended, in the amount of up to $30,000,000

b) LC Agent: Barclays Bank PLC

c) Lenders: Barclays and the other lenders from time to time party to the Letter of Credit Agreement

d) Account Parties: Debtor Tribune Company and the Debtor Subsidiaries that are signatories to Amendment No. 4 to Letter of Credit Agreement

e) Guarantors: The Debtor Subsidiaries that are signatories to Amendment No. 4 to Letter of Credit Agreement

f) Commitment Amount: $30,000,000

g) Interest Rate: A letter of credit fee in respect of each Letter of Credit of 3% per annum of the daily average undrawn face amount of such Letter of Credit, which remains unchanged.

h) Collateral: The "LC Cash Collateral" (as that term is defined in the Final Financing Order), means the amounts deposited into the collateral account from time to time pursuant to Section 8.2.4 of the Amended Letter of Credit Agreement. The applicable account party is obligated to cash collateralize each outstanding obligation in an amount at least equal to 105% of such obligation.

i) Termination Date: The termination date means the earlier of (a) April 10, 2012, (b) the effective date of a plan of reorganization under the Chapter 11 Cases or (c) such other date on which the Commitments terminate pursuant to Section 9 of the Amended Letter of Credit Agreement.

j) Tenor of Letters of Credit: Each letter of credit shall expire on a date no later than the first anniversary of the issuance date of such letter of

credit (or, in the case of any renewal or extension thereof, no later than one year after such renewal or extension), and any letter of credit that provides for automatic extension or renewal shall provide that such extension or renewal may be terminated by notice from the Issuing Bank of not less than 60 days prior to the date of such renewal or extension.

k) Security: The facility will be secured by a first priority, perfected, security interest in, and lien on, the LC Cash Collateral pursuant to section 364(d) of the Bankruptcy Code, with priority over (i) any other lien or security interest under section 364(d) of the Bankruptcy Code, (ii) any and all other liens and claims against the property of the Company or of the Debtor Subsidiaries or the Collateral existing on the Petition Date, and (iii) priority claims (including administrative expenses) alleging priority pursuant to section 503, section 506(c) or section 507 of the Bankruptcy Code, heretofore or hereafter arising or incurred in the chapter 11 cases or in any converted or superseding case or cases under any chapter of the Bankruptcy Code.

l)  Representations and Warranties: Usual and customary for a facility of this type.

m) Covenants: Usual and customary for a facility of this type, including but not limited to:  (i) the furnishing of certain financial reports, notices of default, and chapter 11 filings to the LC Agent and (ii) a covenant not to permit to exist any claims entitled to a superpriority under section 364(c)(1) of the Bankruptcy Code, other than those of the LC Agent and the Lenders.

n) Events of Default: Usual and customary for a facility of this type, including but not limited to:  (i) non-payment of reimbursement obligations under the Amended Letter of Credit Agreement, (ii) non-compliance with the provisions of the Amended Letter of Credit Agreement, as amended, (iii) dismissal or conversion of the chapter 11 cases, (iv) the modification or failure to enter into effect of the financing orders, or the Debtors' failure to comply with the financing orders, (v) the contest or disallowance of any Lender's claim related to the Receivables or LC facilities, and (vi) other events of default as discussed in Section 9.1 of the Amended Letter of Credit Agreement.

**Principal Order Terms**

14:     The principal terms set forth in the proposed Order:

a)  Authorize Debtor Tribune Company and the Debtor Subsidiaries to enter into Amendment No. 4 to Letter of Credit Agreement with Barclays;

b)  Authorize Debtor Tribune Company and the Debtor Subsidiaries to perform and do all acts that may be required in connection with the Amended Letter of Credit Agreement and the transactions contemplated thereby; and

c)  Except to the extent specifically modified in the Financing Orders, and the documents and agreements approved pursuant thereto, as amended, amended and restated or otherwise modified, are hereby ratified and shall remain in full force and effect.

15.     Finally, Barclays, as the LC Agent, Issuing Bank and Lender, has determined that the relief requested in this Motion is acceptable to it.

## II.    Modification of the Automatic Stay

16.     As is customary in commercial transactions of this nature, Debtor Tribune Company is required (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay or reimburse the LC Agent, the Issuing Bank and the Lenders and their respective affiliates and agents, respectively, for the payment of certain fees and expenses pursuant to the Letter of Credit Facility (the "Fees"). In addition, pursuant to the fee letter (the "Fee Letter"), Debtor Tribune Company has agreed (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay the fees referred to in the Fee Letter in consideration of the LC Agent's services in structuring and negotiating the Amended Letter of Credit Agreement.

17.     Therefore, the automatic stay provisions of section 362 of the Bankruptcy Code should continue to be vacated and modified to the extent necessary to permit the LC Agent to exercise, upon the occurrence of any Event of Default (as defined in the Letter of Credit Agreement), all rights and remedies provided for in the Amended Letter of Credit Agreement, and to take any or all of the following actions pursuant to the Amended Letter of Credit Agreement without further order of or application to this Court: (a) cease to make any extensions of credit or loans or advances to the Debtors; (b) terminate the commitments and declare all

46429/0001-7417743v1

obligations to be immediately due and payable; (c) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the LC Agent against the obligations, and otherwise enforce rights against the LC Cash Collateral in the possession of the LC Agent for application towards the obligations; and (d) take any other actions or exercise any other rights or remedies permitted under the proposed Order, the Amended Letter of Credit Agreement or applicable law to effect the repayment and satisfaction of the Obligations; provided, that the LC Agent shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the United States Trustee, counsel to the Debtors and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the LC Collateral (other than the rights described above to the extent they might be deemed remedies in respect of the LC Collateral) and other than with respect to freezing any deposit accounts or securities accounts; provided, further, that the Debtors shall have the right during such five (5) day period to seek continuation of the automatic stay solely on the basis that no Event of Default has occurred. Notwithstanding anything herein or in the Order to the contrary, no extensions of credit, LC Cash Collateral, or any portion of the Carve-Out may be used to object to, or contest, in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the letter of credit obligations, or to assert any claims or causes of action against the LC Agent, the Issuing Bank, the Lenders, or any agent of any of the foregoing.

## DISCLOSURE UNDER LOCAL RULE 4001-2

18.    The Debtors provided disclosures in accordance with Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") in the Debtors' Motion to Approve an Order (I) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and

Related Rights Pursuant Thereto, (II) Authorizing the Debtors to Enter Into a Letter of Credit

Facility, (III) Modifying the Automatic Stay and (IV) Granting Other Related Relief Pursuant to

Sections 105,362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e)

and 365 of the Bankruptcy Code (Docket No. 19).

## APPLICABLE AUTHORITIES

19.    The continuation of the Letter of Credit Facility is vital to the success of

the Debtors' reorganization efforts and is an appropriate vehicle for the Debtors to access

standby letter of credit financing for their operations.  The preservation of the Debtors'

businesses and ability to reorganize successfully depend upon the approval of this Motion.

Absent this Court's approval of the relief sought herein, the Debtors face a substantial risk of

severe disruption to their business operations by an inability to issue standby letters of credit.

20.    This Court should therefore approve the relief sought in this Motion

because the Debtors are unable to obtain standby letter of credit financing on an unsecured basis

and continuation of the Amended Letter of Credit Agreement is in the best interests of the

Debtors' estates.

### A.    Authorizing a Lien under § 364(c)(2) of the Bankruptcy Code

21.    The Bankruptcy Code permits post-petition credit under section 364(c) of

the Bankruptcy Code if the court makes a finding, made after notice and a hearing, that the

debtors in possession are "unable to obtain unsecured credit allowable under section 503(b)(1) of

[the Bankruptcy Code] as an administrative expense."[3]  See In re Garland Corp., 6 B.R. 456, 461

---

[3] Section 364(c) of the Bankruptcy Code provides that:
> (c) If the trustee [or debtor-in-possession] is unable to obtain unsecured credit allowable under § 503(b)(1)
> of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining
> of credit or the incurring of debt –
>> (1) with priority over any and all administrative expenses of the kind specified in § 503(b) or
>> 507(b) of this title;

n.11 (1st Cir. B.A.P. 1980) (secured credit under section 364(c)(2) is authorized, after notice and

a hearing, upon showing that unsecured credit cannot be obtained); In re Crouse Group, Inc., 71

B.R. 544, 549 (Bankr. E.D. Pa.), modified on other grounds, 75 B.R. 553 (1987) (debtor seeking

unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to

obtain unsecured credit pursuant to 364(b) of the Bankruptcy Code); In re Ames Dept. Stores,

Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable

effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

The Debtors previously described the difficult credit market conditions and their inability to

secure unsecured credit in the Affidavit of Chandler Bigelow III, Senior Vice President and

Chief Financial Officer of Tribune Company in Support of First Day Motions (Docket No. 3).

For these reasons, the Debtors are unable to acquire additional financing to support their

operations, including alternative letter of credit financing arrangements.

　　　　22.　　To show that the credit required is not obtainable on an unsecured basis,

the debtor need only demonstrate "by a good faith effort that credit was not available" without

the protections afforded to potential lenders by sections 364(c) or 364(d) of the Bankruptcy

Code. Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088

(4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender

before concluding that such credit is unavailable." Id. at 1088; see also In re Ames Dept. Stores,

Inc., 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it

selected the least onerous financing option from the remaining two lenders); In re Reading Tube

Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of

this type of financing, we would not require this or any debtor to contact a seemingly infinite

---

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.

46429/0001-7417743v1

number of possible lenders."). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

23.     The Debtors have satisfied the requisite showing that credit was not available on an unsecured or subordinate basis and that the proposed continuation of the Letter of Credit Facility is the best available standby letter of credit facility under the circumstances. The efforts by the Debtors constitute a good faith effort and satisfy section 364(c) of the Bankruptcy Code.

24.     The Debtors are entitled to financing under section 364(c) because the Debtors are unable to obtain unsecured credit under section 364(b), the financing is necessary to preserve the assets of the Debtors' estates, and the terms of the transaction are fair, reasonable, and adequate given the circumstances. In re Ames Dept. Stores, Inc., 115 B.R. at 37-39. The terms of the Amended Letter of Credit Agreement are fair, reasonable, and in the best interests of the Debtors and their estates. Likewise, the fees and charges required under the Amended Letter of Credit Agreement are reasonable and appropriate under the circumstances and the result of good faith, arm's length negotiations.

**B.     Adequate Protection and Other Related Relief**

25.     The Debtors and Barclays as LC Agent agreed to the following adequate protection provisions as granted by the Final Financing Order and required by the Amended Letter of Credit Agreement: (a) that the Debtors acknowledge that the Debtors, the LC Agent, the Issuing Bank and the Lenders have negotiated the terms and conditions of the Amended Letter of Credit Agreement and the proposed Order in good faith and at arms length, and (b) that

the Lenders are entitled, pursuant to Bankruptcy Code section 364(c)(1), to receive a superpriority administrative expense claim (the "Superpriority Claim") subordinate only to the postpetition lenders' superpriority administrative expense claims. In addition, the Superpriority Claims are due immediately: (a) if the Order is entered and then modified in any respect without the LC Agent's consent or (b) upon the effective date of any confirmed plan of reorganization in these cases. Finally, as part of the adequate protection, the stipulations and admissions described above become binding on all parties in interest upon entry of the Order by this Court.

III.    **Authorization Is in the Best Interests of the Debtors' Estates**

26.    A denial of the Debtors' requested relief may cause immediate harm to the Debtors and their estates. Absent access to the financing available by the Letter of Credit Facility, the Debtors may experience difficulties in continuing their operations while also meeting their ongoing obligations to suppliers, vendors, employees, and other creditors. If the Debtors are unable to fulfill their ongoing obligations, they will face operational constraints that would jeopardize their successful reorganizations and value of their estates. In contrast, the Debtors' access to the Letter of Credit Facility will ensure that the "going concern" value of the assets are preserved and substantially greater than the value of the assets if such funding were denied.

27.    Bankruptcy courts consistently defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment ... [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); cf. Group of Inst. Investors v. Chicago, Mil., St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions

regarding assumption or rejection of leases are left to the business judgment of the debtor); In re

Simasko Prods. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to

the board room and not to this Court."). In fact, "[m]ore exacting scrutiny [of the debtor's

business decisions] would slow the administration of the debtor's estate and increase its cost,

interfere with the Bankruptcy Code's provision for private control of administration of the estate,

and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital

Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

28.     The Debtors submit for all these reasons that ample justification exists for

the relief requested herein.

## NOTICE

29.     Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) counsel for the Committee; (iii) counsel to the administrative agents for

Tribune's prepetition loan facilities; (iv) counsel to the administrative agent and LC Agent for

the Debtors' post-petition loan facility; (v) the indenture trustees for Tribune Company's

prepetition notes; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.

In light of the nature of the relief requested herein, the Debtors submit that no other or further

notice is necessary.

[Remainder of page intentionally left blank.]

WHEREFORE, the Debtors respectfully request this Court enter an Order, in substantially the form attached hereto as Exhibit A, authorizing Debtor Tribune Company and the other Debtors to enter into Amendment No. 4 to Letter of Credit Agreement among the Debtors, the LC Agent, the Issuing Bank and the Lenders, and granting other related relief described in the proposed Order and any further relief this Court may deem just and proper.

Dated: Wilmington, Delaware
        March 3, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Candice L. Kline
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION