## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Hearing Date: March 22, 2011 at 10:00 a.m. (ET)**<br>**Obj. Deadline: March 15, 2011 at 4:00 p.m. (ET)** |

**THIRD SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF ERNST & YOUNG LLP TO INCLUDE ADVISORY SERVICES RELATING TO SALES AND USE TAX AND PERSONAL PROPERTY TAX PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107 NUNC PRO TUNC TO FEBRUARY 17, 2011**

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors") hereby submit this Third Supplemental

Application (the "Third Supplemental Application") for entry of an order, in the form submitted

herewith, modifying the scope of the Debtors' already-authorized employment of Ernst & Young

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5257); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

LLP ("E&Y") to encompass professional services to be provided by E&Y to the Debtors in connection with certain personal property tax and sales and use tax matters (collectively, the "Tax Services"), pursuant to sections 327(a) and 1107 of the title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), nunc pro tunc to February 17, 2011. In support of this Third Supplemental Application, the Debtors submit the Second Supplemental Affidavit of Matthew Howley (the "Second Supplemental Howley Affidavit"), a copy of which is attached as Exhibit A and is incorporated herein by reference. In further support of this Third Supplemental Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

CH1 5749345v.2

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND TO THE THIRD SUPPLEMENTAL APPLICATION

6.      E&Y is currently retained by the Debtors to provide (i) valuation and business modeling services, (ii) market survey services, (iii) valuation services for certain FCC licenses held by the Debtors, and (iv) valuation services related to the application of fresh start accounting.  The terms of E&Y's existing retention by the Debtors are summarized in (a) the Debtors' Application for an Order Authorizing Debtors to Retain and Employ Ernst & Young LLP to provide (i) valuation and business modeling services and (ii) market survey services to the Debtors, which was filed on June 5, 2009 [Docket No. 1298] (the "Application") and subsequently approved by an order of this Court on July 21, 2009 [Docket No. 1783] (the "Original Retention Order"); (b) the Debtors' Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to include continued performance of valuation services relating to FCC licenses, which was filed on February 22, 2010 [Docket No. 3516] (the "Supplemental Application") and subsequently approved by an order of this Court on March 22, 2010 [Docket No. 3804] (the "Supplemental Retention Order"); and (c) the Debtors' Second Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to encompass certain valuation services related to the application of fresh start accounting and plan of reorganization adjustments upon the Debtors' emergence from bankruptcy, which

CH1 5749345v.2

was filed on May 24, 2010 [Docket No. 4594] (the "Second Supplemental Application" and

together with the Application and the Supplemental Application, the "Prior Applications") and

subsequently approved by an order of this Court on June 14, 2010 [Docket No. 4779] (the

"Second Supplemental Retention Order" and together with the Original Retention Order and the

Supplemental Retention Order, the "Prior Retention Orders").  The Prior Applications are hereby

incorporated by reference.[3]

       7.    The Debtors now desire to retain and employ E&Y to provide advisory

services relating to certain personal property tax and sales and use tax matters to the Debtors in

these chapter 11 cases.  Tribune directly or indirectly owns all (or virtually all) of the equity in

127 subsidiaries, of which 110 subsidiaries are Debtors in these cases.  The Debtors and their

non-debtor affiliates operate approximately 53 revenue-generating business units, including

those in the subsidiary Debtors' publishing and broadcasting business segments.  There is

currently considerable variation as to how these various business units process their personal

property tax and sales and use tax obligations; for example, some business units process all tax

matters in-house, while others outsource to one or more tax professionals.

       8.    In an exercise of their business judgment, the Debtors have determined

that it is necessary and appropriate to consolidate all personal property tax and sales and use tax

processing and compliance activities, and have selected E&Y to provide such Tax Services on a

company-wide basis.  This engagement will enable the Debtors to establish a uniform set of tax

process and compliance procedures, which will streamline data flow, enhance accounting

information and analysis, ensure timely tax compliance and payment, and reduce overall risk, all

of which the Debtors believe will result in a net cost savings.

---

[3] The Debtors also incorporate herein by reference the Affidavit of Matthew Howley in Support of the Application, which was filed on June 5, 2009 [Docket No. 1298] and the Supplemental Affidavit of Matthew Howley in Support of the Application, which was filed on July 13, 2009 [Docket No. 1712].

CH1 5749345v.2

9.     The Tax Services that are the subject of this Third Supplemental Application are to be performed by E&Y pursuant to the terms and conditions set forth in the engagement agreement (the "Tax Services Engagement Agreement") and three related Statements of Work (the "SOWs") dated February 1, February 25, and March 2, respectively, between the Debtors and E&Y (collectively, the "Engagement Letters"), which are attached hereto as Exhibit B. Assistance with the Tax Services was not among the services that E&Y or the Debtors contemplated under their existing engagement letters and statements of work that were the basis of the Prior Applications.  Accordingly, the Debtors submit this Third Supplemental Application to encompass the Tax Services and obtain Court approval for the Engagement Letters.  E&Y has agreed to provide, subject to the terms of the Engagement Letters, the Tax Services set forth in the Engagement Letters.  These Tax Services include, but are not limited to, the following:[4]

### A.     SOW – Property Tax Compliance and Advisory Services in Bankruptcy

- E&Y will perform the following property tax compliance services for the 2011, 2012 and 2013 property tax years with respect to the properties identified in Appendix 1 to the SOW:

  o  Develop a property tax calendar for calendar years 2011-2013;

  o  Prepare business personal property returns/renditions using data from the highest level of General Ledger accounts consistent with state statute and local practice. E&Y will neither review nor reclassify individual fixed assets except where authorized under a specific separate scope of services as part of an Advisory Agreement;

  o  Review the tax assessments assigned by the taxing authorities (Notices of Valuation) for those personal property accounts where renditions were prepared and filed by E&Y or for real property tax accounts assigned under Appendix 1 to the SOW;

  o  As directed and authorized by the Debtors' management, evaluate tax notices for escalation of tax assessments (Notices of Valuation or tax bills that act as Notices

---

[4] In the event of any conflict between the summary of the Services provided herein and the terms of the respective Engagement Letters, the terms of the Engagement Letters shall govern.

of Valuation) that exceed the pre-determined materiality threshold as set forth in Appendix 2 to the SOW, and notifying the Debtors;

- o  Reconcile tax bills and tax statements within the parameters of a mutually agreed materiality threshold (as documented in Appendix 2 to the SOW) and forward to the Debtors or third party entity for payment;

- o  Prepare a summary of estimated property taxes for each calendar year, based upon data received on or before 30 days prior to the delivery date;

- o  Prepare standard property tax reports (e.g., number of renditions filed, rendered value-to-assessed value variance reports) as mutually agreed to by E&Y and the Debtors;

- o  Answer routine questions from the Debtors' personnel and routine questions from taxing jurisdictions; and

- o  Upon the request of the Debtors, coordinate and, where permissible, represent Tribune Company in property tax appeal processes or audits conducted by a taxing jurisdiction.

- •  The Debtors may request that E&Y perform the following Advisory Services for the 2011, 2012 and/or 2013 contract years, subject to Bankruptcy Court approval and mutually agreed in writing:

- o  Review the individual line item fixed assets for property tax filing purposes to identify potential unrecorded disposals, misclassifications, non-taxable items, intangible assets or assets with incorrect situs;

- o  Review the individual line item fixed assets for property tax purposes to identify exemption, abatement or nontaxable items due to issues of Freeport, foreign trade zone, pollution control, green technology programs or inventory issues;

- o  Review the properties assigned on Appendix 1 to the SOW for property tax purposes to identify issues of excess physical depreciation and functional and/or economic obsolescence;

- o  When permissible and authorized by management, and in bankruptcy or appellate forums where it is permissible for E&Y to represent the Debtors, initiate the appeals process with respect to assessments that are jointly selected for appeal by E&Y and the Debtors and confirmed in writing;

- o  When permissible and authorized by management, and in appellate forums where it is permissible for E&Y to represent the Debtors, represent the Debtors in assessment appeals, discussions, negotiations, or informal hearings with the respective taxing jurisdictions or their authorized representatives. The Debtors will approve any settlement offer before it is accepted; and

    o   Support client needs in property tax audits or bankruptcy claim resolutions as agreed to by the Debtors.

- The Debtors may request that E&Y perform the following Out-of-Scope Services for the 2011, 2012 and/or 2013 contract years, subject to Bankruptcy Court approval and mutually agreed upon in writing:

    o   Review, verify or process tax bills resulting from periods/years prior to E&Y's engagement date;

    o   Review and verify or process delinquent tax bills from years prior to E&Y's engagement date;

    o   Discuss assessment and/or valuation of properties relating to years prior to the engagement of E&Y with Audit, Assessment or Collection Authorities;

    o   Assume work on appeal filings in place prior to the engagement of E&Y;

    o   Assume work on audits in place prior to the engagement of E&Y;

    o   Research assessments or tax issues for years prior to the engagement of E&Y;

    o   Perform work necessary to meet tax payment specifications for incorporation into the Debtors' accounts payable system;

    o   Prepare and file amended returns required due to the Debtors' cause, including but not limited to the receipt of additional asset information or resulting from systemically poor or inaccurate data issues, data quality or data timing issues;

    o   Perform the Debtors' data remediation;

    o   Perform bankruptcy related advisory services;

    o   Prepare and provide enhanced or specialized reports; and

    o   Assist the Debtors' counsel when appeals are litigated in administrative or bankruptcy venues.

### B.    SOW – Sales and Use Tax Process Evaluation and Advisory Services in Bankruptcy

- E&Y will perform an evaluation of Tribune Company's state sales and use tax compliance process(es) for the entities and jurisdictions selected by Tribune Company. The overall objective of the evaluation will be to identify high-level opportunities to improve Tribune Company's current sales and use tax compliance process(es) by focusing on the following operating dimensions: Operational Efficiencies, Technology and Data Flow, Process and Policy, Recovery of Overpayments, and Mitigation of Risk. An additional emphasis will be on work flow and processes which make up a significant

portion of the "Sales and Use Tax Life Cycle": Taxability Determinations, Data Flow and Availability, Sales/Use Tax Compliance Process Efficiencies, Exemption Certificate Documentation and Maintenance, Indirect Tax Planning, and Audit Support.

- After completion of the Preliminary Assessment phase of the Services, E&Y will communicate the findings of its analysis including, if applicable, a high-level quantification of value to assist Tribune Company in determining what recommendations should be pursued. Tribune Company and E&Y will mutually agree upon which proposed recommendations will be pursued, including one or more of the following:

- Sales and Use Tax Advisory Services - These Services help Tribune Company determine its sales and use tax liabilities and improve its overall sales and use tax functions. The Services include general consulting, taxability matrices, assistance with M&A due diligence, systematic reviews of bad debt expenses, nexus analyses, assistance with Sarbanes-Oxley documentation and compliance requirements; and assistance with transaction tax software selection and implementation.

  o Sales and Use Tax Recovery Services - these Services involve generating a detailed review of sales and use tax overpayments, and assisting with filing appropriate refund claims. Sales and Use Tax Recovery Services include: Reverse SUT Audits; Bad Debt Review; and Telecommunications Tax Reviews.

  o Sales and Use Tax Structure Review - these Services involve identifying potential sales and use tax benefits that may arise from Tribune Company re-aligning its business structures, purchasing processes, and business objectives. E&Y will analyze the tax consequences of a centralized procurement process, a leasing operation, or other business-driven alternatives, and assist Tribune Company with its research, analysis, design, and implementation of the alternative that best matches its goals and objectives. Sales and Use Tax Structure Reviews include: Procurement, Leasing and Trade-In Transaction Services; Transportation Company-Related Services; and Internet Sales Advisory Services.

  o Risk Assessment and Mitigation - these Services involve assisting Tribune Company in complying with various amnesty programs, voluntary disclosures, or other state and local agreements and settlements. E&Y also can assist with audit defense by providing representation to manage audits with state and local auditors as the audit progresses, or performing "second looks" to help reduce existing audit assessments and penalties associated with noncompliance. Risk Assessment and Mitigation services include: Due Diligence Services; Voluntary Disclosure Agreements; Managed Audits; assistance with Managed Compliance Agreements; and Audit Defense.

  o Sales and Use Tax Compliance - this Service involves preparing and processing sales and use tax returns, using a fully automated system which provides comprehensive reporting, whether through our standard suite of reports, or using custom reports tailored to Tribune Company's specific needs. Additionally, E&Y can assist clients who are contemplating the full outsourcing of their sales tax

function which in addition to return preparation will also include the planning, audit and day to day operational aspects of the function.

- E&Y may also perform the following Out-of-Scope Advisory Services: bankruptcy claim review and provision of claim resolution assistance, and provide bankruptcy-related advisory support.

### C.    SOW – Sales and Use Tax Compliance and Advisory Services in Bankruptcy

- E&Y will prepare the sales and use tax returns that the Debtors are required to file with state taxing agencies, as noted on Attachment A to the SOW. The term of this engagement is expected to be from April 1, 2011 to March 31, 2014.

- E&Y will assist the Debtors with registrations in new jurisdictions and add or drop locations from existing sales and use tax registrations as directed.

- E&Y will create standard validation, exception and trend reports for the Debtors and will provide the Debtors with a schedule summarizing the tax data by state, validation report, exception report, and end of the month reconciliation of source data to tax paid.

- As directed and authorized by the Debtors' management, E&Y will review and attempt to resolve routine taxing agency inquiries and notices related to returns filed by E&Y.

- E&Y will provide the Debtors with a CD at the end of each month containing copes of all tax returns and reports prepared by E&Y on behalf of the Debtors.

- E&Y may also perform the following Advisory and Out-of-Scope Compliance Services:

  o Provide examination defense for compliance period return audits;

  o Provide advisory support or examination defense for audit period prior to the engagement;

  o Perform sales and use tax overpayment reviews;

  o Perform bankruptcy claim review and provide claim resolution assistance;

  o Provide bankruptcy-related advisory support;

  o Perform sales and use tax process improvement projects;

  o Respond to special requests of the Debtors or tax jurisdictions for mining of transaction detail;

  o Prepare amended returns required by tax authorities as a result of erroneous information provided by the Debtors;

   o  Provide customized process modifications that are requested by the Debtors after the initial implementation period;

   o  Prepare custom reports and/or schedules requiring manual compilation at the Debtors' request; and

   o  Compile or prepare custom accounting information (e.g., detailed journal entries, check requests, etc.) at client's request.

10.    The Tax Services contemplated in the Engagement Letters will not be duplicative of those services provided by any other of the Debtors' professionals, including PricewaterhouseCoopers LLP, the Debtors' auditors. The Debtors will coordinate any services performed by E&Y at the Debtors' request with the Debtors' other professionals, as appropriate, to avoid duplication of effort.

## RELIEF REQUESTED

11.    By this Third Supplemental Application, the Debtors seek authorization to employ and retain E&Y nunc pro tunc to February 17, 2011, to provide the Tax Services in accordance with the Engagement Letters between Tribune and E&Y. At the Debtors' request, E&Y began providing the Tax Services under the Engagement Letters on or about February 18, 2011, pending the filing of this Third Supplemental Application and Court approval hereof.

12.    Subject to the Court's approval, E&Y will charge the Debtors for its performance of the Tax Services on the basis described in the Engagement Letters, in accordance with the applicable orders of this Court concerning the compensation of professionals in the Debtors' chapter 11 cases. The applicable fees and hourly rates that E&Y will charge the Debtors in connection with the Tax Services are set forth in each of the SOWs. See Exhibit B. Specifically, for the personal property tax compliance and advisory services, E&Y will charge an annual base fee of $50,800 for the 2011 tax year, an annual base fee of $36,400 for the 2012 tax year, and a $33,600 annual base fee for the 2013 tax year. With respect to advisory services

CH1 5749345v.2

performed that result in net tax savings, E&Y will charge a findings-based fee of 35% of the tax savings achieved (or hourly fees in those jurisdictions that do no permit findings-based fees). E&Y will additionally charge hourly fees for any out-of-scope services (ranging from $500 per hour for partners/executive directors to $175 per hour for staff), a one-time set up fee of $8,100, and an annual technology fee of $4,500. For the sales and use tax process evaluation and advisory services, E&Y will charge hourly fees (ranging from $500 per hour for partners/executive directors to $175 per hour for staff) plus direct expenses incurred in connection with those services. For the sales and use tax compliance and advisory services, E&Y will charge monthly fees of $2,085 for the first contract year ($25,020 annually), $2,230 for the second contract year ($26,760 annually), and $2,375 for the third contract year ($28,500 annually), plus direct expenses incurred in connection with those services. With respect to advisory services performed that result in net tax savings, E&Y will charge a findings-based fee of 30% of the refunds recovered (or hourly fees in those jurisdictions that do no permit findings-based fees). E&Y will additionally charge hourly fees for any out-of-scope services (ranging from $500 per hour for partners/executive directors to $175 per hour for staff), a one-time transition fee of $7,500, and an annual technology fee of $3,000.[5]

## LEGAL AUTHORITY

13.    The Debtors' existing retention of E&Y, and the proposed modification of that retention described herein, are pursuant to section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see

[5] To the extent that any summary of terms herein differs from the terms of the Engagement Letter, the terms of the Engagement Letters shall control.

11

also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc.,

81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must

'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'). A

"disinterested person" is defined as one who does not have an interest materially adverse to the

interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any

other reason. See 11 U.S.C. § 101(14)(e).

14.    To the best of the Debtors' knowledge, information and belief, and based

on E&Y's representations in the Second Supplemental Howley Affidavit, E&Y remains a

"disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible for

retention and employment in these cases. See Second Supplemental Howley Affidavit at ¶ 13.

15.    In the instant case, modifying the scope of E&Y's representation to

include the Tax Services is in the best interests of the Debtors' estates, and satisfies all other

standards for retention under sections 327(a) and 1107 of the Bankruptcy Code. E&Y is best

positioned to perform the needed services efficiently and economically on behalf of the Debtors.

The partners, managers and staff of E&Y, through E&Y's prior work for the Debtors, are very

familiar with the Debtors and their business operations, and have significant experience in the

personal property tax and sales and use tax advisory and compliance services to be performed

pursuant to the Engagement Letters. The Debtors believe that the centralization of their personal

property tax and sales and use tax processing and compliance activities is far more efficient than

the current decentralization of such activities across the Debtors' various business units, and will

ultimately result in cost savings to the Debtors due to greater efficiencies, streamlined processes,

and reduced risk, among other things. The Debtors therefore request this Court's authorization

to approve the expansion of E&Y's Application to include the Tax Services pursuant to the terms of the Engagement Letters, nunc pro tunc to February 17, 2011.

16.    Tribune seeks to retain E&Y nunc pro tunc to February 17, 2011, the point at which E&Y first began providing the Tax Services to the Debtors. It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28, 2002). In determining whether the court should exercise its discretion to grant retroactive approval the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327(a), and may consider additional factors such as (1) whether the applicant was under time pressure to begin service without approval; (2) the amount of delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties. In re Arkansas Co., Inc., 798 F.2d at 650.

17.    The Debtors and E&Y have begun to undertake the initial planning and prepatory steps related to the transition of the Tax Services from the Debtors' business units and local tax professionals to E&Y on a company-wide basis, and the services rendered by E&Y prior to the date of this Third Supplemental Application are preliminary in nature and on a limited basis. Meanwhile, Tribune and E&Y have been negotiating the terms of two of the three SOWs (the completion of which was necessary in advance of the filing of this Third Supplemental Application) and preparing this Third Supplemental Application. The Debtors therefore request that the Court approve E&Y retention on a nunc pro tunc basis.

## NOTICE

18.    Notice of this Third Supplemental Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured

Creditors; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to E&Y; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

19.  The Debtors have not previously sought the relief requested herein from this or any other Court.

CH1 5749345v.2

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors' Third Supplemental Application and retention of E&Y to perform the Tax Services in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code nunc pro tunc to February 17, 2011, pursuant to the terms of the Engagement Letters, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated:  March  4, 2011

                                        TRIBUNE COMPANY
                                        (for itself and on behalf of each Debtor)


                                        Patrick Shanahan
                                        Vice President/Tax