# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
|  | **Hearing Date: March 22, 2011 at 10:00 a.m. ET**<br>**Obj. Deadline: March 15, 2011 at 4:00 p.m. ET** |

## MOTION OF THE DEBTORS FOR AN ORDER ESTABLISHING PROCEDURES FOR (I) FIXING CURE AMOUNTS AND (II) PROVIDING NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES BY A SUCCESSOR REORGANIZED DEBTOR PURSUANT TO SECTIONS 365, 1123, AND 1129 OF THE BANKRUPTCY CODE

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>"), by and through their undersigned counsel,

hereby move this Court (the "<u>Global Contract Motion</u>") for entry of an order pursuant to sections

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

365, 1123(a) and (b), and 1129 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to establish

procedures to (i) fix cure amounts with respect to the assumption of certain executory contracts

and unexpired leases that the Debtors anticipate assuming pursuant to the

Debtor/Committee/Lender Plan[2] upon the Effective Date of the Plan, and (ii) provide notice of

the proposed assumption of certain executory contracts and unexpired leases by a successor to a

Debtor, including by an affiliated Reorganized Debtor, and/or potential assignment to a successor

to a Debtor, including to an affiliated Reorganized Debtor, after giving effect to the Restructuring

Transactions (as defined below) that are contemplated to occur pursuant to the

Debtor/Committee/Lender Plan.  In support of this Global Contract Motion, the Debtors rely on

declaration of Brian Whittman, managing director of Alvarez & Marsal North America LLC (the

"Whittman Declaration"), a copy of which is filed concurrently herewith.  In further support of

the Global Contract Motion, the respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor,

Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code on October 12, 2009.  In all, the Debtors comprise 111 entities.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Second
Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the
Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and
JPMorgan Chase Bank, N.A. [Docket No. 7801] (as such has been or may be further amended, modified or
supplemented from time to time, the "Debtor/Committee/Lender Plan") or related Specific Disclosure Statement for
the First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors,
the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P.,
and JPMorgan Chase Bank, N.A. [Docket No. 7135] (the "Debtor/Committee/Lender Plan Specific Disclosure
Statement"), as appplicable.

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 365(b), 1123(a) and (b), and 1129(a) of the Bankruptcy Code and Bankruptcy Rule 6006.

## BACKGROUND TO RELIEF REQUESTED

I.      **The Debtors' Executory Contracts and Unexpired Leases**

   A.      **Background to the Debtors' Executory Contracts and Unexpired Leases**

6.      Prior to the Petition Date, the Debtors, in the ordinary course of their businesses, entered into thousands of contracts and leases, to which, as of the Petition Date, they were still a party and were executory or unexpired within the meaning of section 365 of the Bankruptcy Code (collectively, as applicable, the "Executory Contracts" and the "Unexpired Leases").  In the aggregate, the Debtors identified approximately 45,000 of such Executory Contracts and Unexpired Leases on Schedule G to their respective schedules of assets and

liabilities (as amended, collectively, the "Schedules").[4]  As described in the Global Notes accompanying the Schedules, although reasonable efforts were made by the Debtors and their financial advisors to ensure the accuracy of Schedule G regarding the contracts and leases listed therein, inadvertent omissions or over-inclusion may have occurred.  The listing of an agreement on Schedule G does not constitute an admission by the Debtors that such agreement is an Executory Contract or Unexpired Lease within the meaning of section 365 of the Bankruptcy Code, or that such agreement was in effect on the Petition Date or is valid or enforceable.  Similarly, the omission of an agreement from Schedule G does not constitute an admission that such omitted agreement is not an Executory Contract or Unexpired Lease.

7.      For example, the Debtors may have entered into various other types of agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not have been set forth in Schedule G.  (See Whittman Dec. at ¶ 5.)  In addition, Schedule G did not include certain confidential agreements which, by their terms, prohibit disclosure of the existence of such agreements.  (Id.)  The Debtors also did not list on Schedule G any obligations relating to Customer Programs for which the Debtors have been granted authority to pay pursuant to the Court's Order Authorizing, but Not Requiring, the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue Prepetition Customer Programs and

---

[4] On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [Docket Nos. 567-789], which were subsequently amended on April 13, 2009 [Docket Nos. 894-957], on June 12, 2009 [Docket Nos. 1343-1453], on March 2, 2010 [Docket Nos. 3548-3599], on May 14, 2010 [Docket No. 4388], and on January 28, 2011 [Docket Nos. 7661 – 7671].  Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009 [CNLBC Docket Nos. 8 and 9], which were subsequently amended on December 9, 2009 [Docket No. 2779] May 14, 2010 [Docket No. 4389], and January 28, 2011 [Docket No. 7665].

Practices in the Ordinary Course of Business [Docket No. 50] (the "Customer Programs Order").

(Id.)[5]

8.      Since the Petition Date, as part of their ongoing restructuring efforts, the

Debtors have been working diligently with their financial and legal advisors to identify those

Executory Contracts and Unexpired Leases which, on one hand, are necessary or useful, in the

Debtors' business judgment, to sustain their business operations through and after their

emergence from chapter 11, and which, on the other hand, may be burdensome and/or no longer

beneficial to the Debtors' estates.  As a result of these extensive efforts, the Debtors previously

filed twelve (12) motions to assume Executory Contracts and Unexpired Leases that are not the

subject of this Global Contract Motion, including three (3) omnibus motions to assume non-

residential real property leases (collectively, the "Previously Assumed Contracts/Leases").  Each

of the previously-filed motions to assume Executory Contracts and Unexpired Leases have been

approved by orders entered by this Court.  [See Docket Nos. 1321, 1628, 1724, 1822, 1925,

2075, 2076, 2656, 2834, 3191, 3825, and 5010].  The Debtors have also filed seven (7) motions

to reject Executory Contracts and Unexpired Leases that are not the subject of this Global

Contract Motion, including five (5) omnibus motions to reject non-residential real property leases

(the "Previously Rejected Contracts/Leases").  Each of the previously-filed motions to assume

Executory Contracts and Unexpired Leases have been approved by orders entered by this Court.

[See Docket Nos. 226, 430, 791,1612 (as amended by 1629), 2073, 2658, and 4412.]  In addition,

since the Petition Date, in the ordinary course of their businesses, the Debtors have negotiated

---

[5] As used herein, "Customer Programs" means any of the Debtors' customer programs and practices designed to
develop and sustain a positive reputation for their publications, syndicated content offerings, broadcast stations,
cable networks, and interactive websites with their subscribers and advertisers, including the Advertising Programs,
the Delivery Service Program, the Direct Mail Program, Billing Adjustments, Customer Service Program, and
Prepayments, as those terms are defined in the Motion of the Debtors for an Order Authorizing, but not Requiring,

numerous new contracts and leases, including replacing prepetition executory contracts and

unexpired leases with new postpetition contracts and leases under more favorable terms (the

"Postpetition Contracts/Leases").

    **B.**      **Treatment of Executory Contracts and Unexpired Leases Under the Debtor/Committee/Lender Plan**

        9.     As provided for in Section 6.1 of the Debtor/Committee/Lender Plan, all

Executory Contracts and Unexpired Leases that are not otherwise assumed or rejected, or

otherwise treated in accordance with the terms of the Plan, will be deemed to be assumed on the

Effective Date pursuant to and in accordance with sections 365 and 1123 of the Bankruptcy

Code.[6] Thus, except for (i) the Previously Assumed Contracts/Leases, (ii) the Previously

Rejected Contracts/Leases, and (iii) the Executory Contracts and Unexpired Leases listed on the

Rejected Contract Exhibit that was filed by the Debtor/Committee/Lender Plan Proponents on

January 31, 2011 [Docket No. 7701],[7] each of the Debtors' remaining Executory Contracts and

Unexpired Leases (collectively, the "Assumed Contracts and Leases") will be deemed assumed

---

the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue Prepetition Customer Programs and Practices in the Ordinary Course of Business.  [Docket No. 8.]

[6] Section 6.1 of the Debtor/Committee/Lender Plan provides that "[o]n the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of section 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is an executory contract or unexpired lease that is included in the Global Contract Motion, (iv) is an executory contract or unexpired lease that is expressly excluded from assumption as set forth in Section 6.5 hereto or is set forth on Exhibit 6.3, to be filed with the Plan Supplement [(the "Rejected Contract Exhibit")], or (v) is an executory contract or unexpired lease that is included in a pending motion to reject such executory contract or unexpired lease."

[7] The Rejected Contract Exhibit indicated that there are 48 contracts, other than the Previously Rejected Contracts/Leases, being rejected pursuant to the Debtor/Committee/Lender Plan.  The Debtors expressly reserve the right, at any time prior to the Effective Date, to amend the Rejected Contract Exhibit to delete any Executory Contract or Unexpired Lease therefrom or to add any Executory Contract or Unexpired Lease thereto.  (See Debtor/Committee/Lender Plan § 6.3.)

upon the occurrence of the Effective Date of the Debtor/Committee/Lender Plan.[8]  Additionally,

as of the Effective Date, all refund and subscriber credit programs or similar obligations of the

Debtors to advertisers, subscribers, or former subscribers to any of the Debtors' publications

under the Customer Programs shall be deemed assumed on the Effective Date.  (See

Debtor/Committee/Lender Plan § 6.1.2.)  The proposed treatment of Executory Contracts and

Unexpired Leases in the Debtor/Committee/Lender Plan is predicated, in part, on the treatment of

general unsecured claims, including rejection damages claims, under the

Debtor/Committee/Lender Plan.

   10. For the avoidance of doubt, any modifications, amendments, or

supplements to prepetition executory contracts and unexpired leases that have been entered into

by the Debtors during the chapter 11 cases, and actions taken in accordance therewith, shall not

affect the prepetition nature of such executory contract and unexpired lease or the treatment of

any claims against the Debtors arising under the same.  In the event that an Assumed Contract or

Lease has been modified, amended, or supplemented from time to time by various amendments,

restatements, waivers, estoppel certificates, letters and other documents, instruments and

agreements, including during the pendency of these chapter 11 cases, in the ordinary course of

business and in accordance with the terms of such Assumed Contract or Lease, then such

Assumed Contract or Lease shall be deemed assumed on the Effective Date as modified,

amended, or supplemented.

---

[8] For the avoidance of doubt, to the extent an Assumed Contract or Lease may expire or is terminated, in either case pursuant to the terms of such contract or lease, prior to the Effective Date, such Assumed Contract or Lease shall not be deemed assumed on the Effective Date pursuant to Section 6.1 of the Debtor/Committee/Lender Plan.

C.      **Cure of Defaults of Assumed Contracts and Leases**

11.      In order to comply with the requirements of sections 365(b)(1) and

1123(a)(5)(G) of the Bankruptcy Code, the Debtors must satisfy or cure all monetary defaults

under each of the Assumed Contracts and Leases that will be deemed assumed by operation of

the Debtor/Committee/Lender Plan.  The Debtor/Committee/Lender Plan provides that, as a

default, the proposed cure amount for the Assumed Contracts and Leases will be zero dollars,

unless otherwise indicated.  (See Debtor/Committee/Lender Plan § 6.2.)  The

Debtor/Committee/Lender Plan further provides that any monetary amounts by which each of the

Assumed Contracts and Leases is in default and not subsequently cured shall be satisfied,

pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in cash

on the Effective Date or on such other terms as the parties to each such Assumed Contract and

Lease may otherwise agree.  (Id.)[9]  Section 6.1.2 of the Debtor/Committee/Lender Plan provides

that the proposed cure amount with respect to the Customer Programs shall be zero dollars.

12.      The Debtors have undertaken substantial logistical efforts to reconcile the

Assumed Contracts and Leases against their books and records and the timely-filed proofs of

claim asserted against the Debtors in these chapter 11 cases (the "Proofs of Claim") in order to

determine the payments to counterparties that will be required to be made to cure existing

monetary defaults under the Assumed Contracts and Leases (the "Proposed Cure Amounts").

---

[9] The Debtor/Committee/Lender Plan Proponents received four (4) objections to, and reservations of rights with respect to, the treatment of executory contracts and unexpired leases in Section 6.2 of the Debtor/Committee/Lender Plan, from (i) CCI Europe A/S Limited; (ii) Comcast Corporation and Comcast Cable; (iii) Iron Mountain Information Management, Inc.; and (iv) Oracle America Inc. (collectively, the "Contract Objectors").  Each of the foregoing Contract Objectors is a counterparty to one or more executory contracts with one or more of the Debtors, and each asserts that cure amounts are due on account of their respective contracts as a precondition of assumption. The Debtors believe that this Global Contract Motion, and the exhibits attached hereto, address and resolve the objections of the Contract Objectors to the Debtor/Committee/Lender Plan.  No other party objected to the proposed treatment of executory contracts and unexpired leases in Section 6.2 of the Debtor/Committee/Lender Plan, including that the proposed cure amount for any such executory contract or unexpired lease shall be zero dollars unless otherwise indicated.

(See Whittman Dec. at ¶ 6.)  To that end, the Debtors, in coordination with their financial

advisors, have divided the universe of Assumed Contracts and Leases into three categories: (i)

"Tribune Assumed Contracts/Leases," representing those Assumed Contracts and Leases to

which Tribune Company ("Tribune") is party; (ii) "Subsidiary Assumed Contracts/Leases,"

representing those Assumed Contracts and Leases to which the Subsidiary Debtors are party; and

(iii) "Assumed Customer Program Obligations," representing certain ongoing obligations arising

under the Customer Programs.  (See Whittman Dec. at ¶ 7.)

        13.    The reconciliation of the Assumed Contracts and Leases to determine

Proposed Cure Amounts was made subject to aggregate monetary thresholds—determined by the

Debtors to be material in consideration of the claims treatment proposed in the

Debtor/Committee/Lender Plan—of $1,000 or more for Tribune Assumed Contracts/Leases and

$25,000 or more for Subsidiary Assumed Contracts/Leases.  Specifically, the Debtors' personnel

and financial advisors performed a claims-to-contract analysis for the purposes of (i) relating

scheduled claims or filed Proofs of Claim (in amounts in the aggregate per creditor greater than

the applicable thresholds) to prepetition contracts and leases appearing on Schedule G, (ii)

determining if the contracts or leases that were the subject of the claims in fact remained

Executory Contracts or Unexpired Leases within the meaning of section 365 of the Bankruptcy

Code, and (iii) determining the validity of the amount of the asserted claims to arrive at a

Proposed Cure Amount.[10]  (See Whittman Dec. at ¶ 9.)

---

[10] In some instances, the claims-to-contract reconciliation resulted in situations where it was determined that a
counterparty's claim was scheduled or filed in part on account of a contract or lease that was no longer executory in
nature under section 365 of the Bankruptcy Code and in part on account of a contract or lease that remained
executory.  In such cases, the Proposed Cure Amount reflects only the portion of the claim that relates to an
Assumed Executory Contract or Lease.  The balance of the claim that does not relate to an executory contract or
unexpired lease would be independently reconciled and paid in accordance with the treatment of claims set forth in
the Debtor/Committee/Lender Plan.

14.     Based on their reconciliation efforts to date, the Debtors have determined that for the vast majority of the Assumed Contracts and Leases, there are no associated prepetition defaults and there are little to no postpetition defaults because the Debtors have been timely paying and will continue to timely pay and otherwise honor their postpetition obligations in the ordinary course of business.  The Debtors also believe that the substantial majority of the Assumed Contracts and Leases that may have associated monetary defaults are de minimis in amount and will not be entitled to recovery pursuant to Section 7.13 of the Debtor/Committee/Lender Plan.[11] (See Whittman Dec. at ¶ 10.)

15.     On Exhibits A-C hereto (the "Contract Exhibits"), the Debtors have identified (i) certain Tribune Assumed Contracts/Leases and Subsidiary Assumed Contracts/Leases with Proposed Cure Amounts that exceed the monetary thresholds determined by the Debtors to be material, and (ii) certain of the Assumed Customer Program Obligations that the Debtors have determined have cure amounts greater than zero dollars as provided for in Section 6.1.2 of the Debtor/Committee/Lender Plan.[12]  The Debtors expressly reserve the right to amend or modify the Contract Exhibits prior to the Effective Date of the Debtor/Committee/Lender Plan, as may be necessary to modify Proposed Cure Amounts as the Debtors' claims reconciliation efforts continue, to add or remove Assumed Contracts and Leases from the Contract Exhibits, or to amend proposed assignments pursuant to the Restructuring Transactions (as discussed below) prior to such date, upon notice to any contract or lease counterparty affected by such amendment or modification.

---

[11] For example, of the approximately 400,000 creditors holding credits relating to the Debtors' Customer Programs, approximately 90% have a credit balance below $25.00, which would not be entitled to a distribution pursuant to Section 7.13 of the Debtor/Committee/Lender Plan.

[12] To the extent there is more than one Debtor counterparty to an Assumed Contract or Lease, the Debtors have used their best efforts to include such Assumed Contract or Lease on the Contract Exhibit of the Debtor that listed the Assumed Contract or Lease on its Schedule G, as amended.

## II.    The Restructuring Transactions

16.    The Debtors' assumption of the Assumed Contracts and Leases pursuant to the Debtor/Committee/Lender Plan may be impacted by the transactions described in detail in Section 5.2 of the Debtor/Committee/Lender Plan[13] and in Exhibit 5.2 filed with the Plan Supplement (collectively, the "Restructuring Transactions") proposed to be undertaken by the Debtors on or prior to the Effective Date.[14] The Debtors intend to consummate the Restructuring Transactions in connection with the emergence of the Debtors from bankruptcy to accomplish several tax, administrative and strategic business objectives.  (See Debtor/Committee/Lender Plan Disclosure Statement § II.F.3.)  In general, the effect of the Restructuring Transactions will be to reduce the overall number of Subsidiary Debtors through merger, consolidation, restructuring, or otherwise, and to effect the conversion of the Subsidiary Debtors into Delaware limited liability companies.

17.    Specifically, the Restructuring Transactions will realign the Debtors' organizational structure so that substantially all of Tribune's wholly-owned subsidiaries will be held under three holding companies owned directly by Tribune.  All of Tribune's broadcasting-related and publishing-related subsidiaries will be aligned under Tribune Broadcasting Company, LLC and Tribune Publishing Company, LLC, respectively, and Tribune's joint venture interests and other corporate subsidiaries will be aligned under Tribune Investments, LLC.  In general,

---

[13] This section is intended solely to be a summary of certain of the material terms and provisions of Section 5.2 of the Debtor/Committee/Lender Plan and is subject to, and is qualified in its entirety by, (i) Section 5.2 of the Debtor/Committee/Lender Plan; and (ii) any related materials in Exhibit 5.2 to the Debtor/Committee/Lender Plan (the "Restructuring Transactions Exhibit").  Subject to Section 15.8 of the Debtor/Committee/Lender Plan, the Debtor/Committee/Lender Plan Proponents reserve the right to supplement, modify, or revise the Restructuring Transactions Exhibit at any time prior to or after the Confirmation Date and may determine subsequent thereto not to pursue any or all of the Restructuring Transactions.

[14] As permitted under the Debtor/Committee/Lender Plan, the Debtors presently anticipate that most, if not all, of the Restructuring Transactions shall occur (1) subsequent to the entry of the Confirmation order and the requisite FCC

Subsidiary Debtors with little or no operations will be merged with and into an existing entity. Also, as a result of the Restructuring Transactions, each of Tribune's television stations will be owned by a separate limited liability company. For the most part, each of Tribune's television stations are currently held by a distinct and separate legal entity. However, three Tribune subsidiaries, Tribune Broadcast Holdings, Inc., Tribune Television Holdings, Inc. and Tribune Television Company (collectively, the "Multiple Station Entities"), own more than one television station in different markets. The Restructuring Transactions contemplate that the Multiple Station Entities will contribute the business of each television station that they own into a newly formed limited liability company, held under Tribune Broadcasting Company, LLC.[15]

18.    To effectuate the Restructuring Transactions, the Debtor/Committee/Lender Plan contemplates that certain Debtors and Reorganized Debtors (each a "Predecessor Debtor") will be merged into certain surviving, affiliated Reorganized Debtors with no less than substantially the same assets as held by the applicable pre-merger or pre-conversion Debtor entities. In certain other instances, such as with respect to the Multiple Station Entities, the operating business units within a single Debtor entity will be spun off into new subsidiaries with substantially the same assets and ongoing business operations of the applicable pre-spin-off business units.

19.    As part of these Restructuring Transactions, some or all of the Assumed Contracts and Leases will be assumed by, assigned to, and/or vest in a surviving, resulting, or acquiring entity, including affiliated Reorganized Debtors that will be successors to the existing

---

Approval of the Plan and Restructuring Transactions but (2) prior to the Effective Date, subject to the conditions set forth on Exhibit 5.2 of the Plan.

Debtor parties to such contracts (collectively, the "Successor Reorganized Debtors"). The

Successor Reorganized Debtors shall become party to the applicable Assumed Contract or Lease

as successor to their respective Predecessor Debtors, and the terms of such Assumed Contract or

Lease shall remain in full force and effect. Similarly, certain of the Previously Assumed

Contracts/Leases will be assigned to a Successor Reorganized Debtor pursuant to the

Debtor/Committee/Lender Plan as of the Effective Date upon consummation by the Debtors of

the Restructuring Transactions. In addition, the Postpetition Contracts/Leases entered into by the

Debtors will be assigned to a Successor Reorganized Debtor as of the Effective Date upon

consummation by the Debtors of the Restructuring Transactions. None of the Assumed

Contracts and Leases or Previously Assumed Contracts/Leases shall be assigned to an unrelated

third party pursuant to the Debtor/Committee/Lender Plan. For the avoidance of doubt, each

Successor Reorganized Debtor will perform the obligations of the applicable Predecessor Debtor

to pay or otherwise satisfy the Allowed Claims against such Debtor or Reorganized Debtor

(unless the Restructuring Transactions provide for such obligations to be performed by another

Debtor or Reorganized Debtor ). (See Debtor/Committee/Lender Plan § 5.2.)

      20.      Attached hereto as Exhibit D is a table that identifies each of the current

Debtors (under the column titled "Pre-Emergence Entity") and the corresponding Successor

Reorganized Debtor (under the column titled "Post-Emergence Entity"). To the extent that a

Predecessor Debtor listed in the left column on the table is party to an Assumed Contract or

Lease, such Predecessor Debtor's rights and obligations under such Assumed Contract or Lease

---

[15] For example, Tribune Broadcast Holdings, Inc. owns the WTTV-TV (Indianapolis) and KRCW-TV (Portland) television stations. Pursuant to the Restructuring Transactions, two new Delaware limited liability companies named WTTV, LLC and KRCW, LLC will be formed, Tribune Broadcast Holdings, Inc. will contribute the assets and liabilities of WTTV and KRCW, respectively, to these new limited liability companies, and each new limited liability company will continue to operate the business activities of the pre-spin off business units.

shall revest in, and shall be assumed by, the Successor Reorganized Debtor listed in the right

column on the table pursuant to the Debtor/Committee/Lender Plan, as of the Effective Date.

Similarly, to the extent that a Predecessor Debtor listed in the left column on the table is party to

a Previously Assumed Contract/Lease or a Postpetition Contract/Lease, such Predecessor

Debtor's rights and obligations under such Previously Assumed Contract/Lease or Postpetition

Contract/Lease shall be assigned to the Successor Reorganized Debtor listed in the right column

on the table pursuant to the Debtor/Committee/Lender Plan, as of the Effective Date.

## RELIEF REQUESTED

21.     By this Global Contract Motion, the Debtors seek to establish procedures

to (i) fix the cure amounts due by the Debtors to the counterparties to the Assumed Contracts and

Leases, in accordance with sections 365, 1123, and 1129 of the Bankruptcy Code with respect to

each of the Assumed Contracts and Leases being assumed pursuant to the terms of the

Debtor/Committee/Lender Plan; and (ii) provide notice of the potential assumption by and/or

assignment of certain of the Assumed Contracts and Leases, Previously Assumed

Contracts/Leases, and Postpetition Contracts/Leases to a Successor Reorganized Debtor, as

successor to the existing Debtor party, pursuant to the terms of the Debtor/Committee/Lender

Plan upon the Effective Date, after giving effect to the Restructuring Transactions that are

contemplated to occur pursuant to the Debtor/Committee/Lender Plan.

22.     The Debtors are exclusively seeking the entry of an order granting the

relief requested by this Global Contract Motion provided that an order confirming the

Debtor/Committee/Lender Plan has been entered authorizing and approving the assumption of

the Assumed Contracts and Leases and the consummation of the Restructuring Transactions on

the terms provided for in the Debtor/Committee/Lender Plan.  For the avoidance of doubt, the

Debtors reserve the right to withdraw this Global Contract Motion if the

Debtor/Committee/Lender Plan is not confirmed, and any order granting the relief requested by

this Global Contract Motion shall not be effective unless and until an order confirming the

Debtor/Committee/Lender Plan has been entered.

**I.      Procedures for Fixing Cure Amounts**

23.     In order to comply with section 365 of the Bankruptcy Code, the Debtors

must satisfy all reasonable monetary defaults under the Assumed Contract and Leases.  Due to

the large number of Assumed Contracts and Leases that will be assumed pursuant to the

Debtor/Committee/Lender Plan, which may number in the tens of thousands, the Debtors desire

to establish protocols and procedures to efficiently and fairly resolve any and all potential

disputes regarding the Proposed Cure Amounts, as set forth in this Global Contract Motion, in

order to facilitate the Debtors' ongoing reorganization efforts and to minimize the costs and

burdens to the Debtors' estates and to their contract counterparties.  Set forth below is the

Debtors' proposed protocol for determining the Proposed Cure Amounts with respect to each of

the categories of Assumed Contracts and Leases that are identified on the Contract Exhibits as

well as with respect to those Assumed Contracts and Leases that are not identified on the

Contract Exhibits.[16]

24.     To the extent that the Debtors make any additional payments on any of the

Assumed Contracts and/or Leases on account of the Proposed Cure Amounts after the date of this

Global Contract Motion but prior to the Effective Date, the Debtors request authority to reduce

such Proposed Cure Amounts with respect to such Assumed Contract and/or Lease by the

amount of any such payments.

**A.    Procedures for Fixing Cure Amounts for Contracts and Leases Listed on the Contract Exhibits**

(i)    Tribune Assumed Contracts/Leases

25.    Attached hereto as Exhibit A is a non-exhaustive list of the Tribune Assumed Contracts/Leases, organized alphabetically by contract or lease counterparty.  The parties identified on Exhibit A are those parties that have claims against Tribune on account of the Tribune Assumed Contracts/Leases in excess of $1,000 in the aggregate by contract or lease counterparty.  (See Whittman Dec. at ¶ 11.)  The Proposed Cure Amount listed in the column titled "Cure Amount" reflects the cure amount that (i) after reasonable investigations, the Debtors have determined that Tribune may owe pursuant to the terms of each respective Tribune Assumed Contract/Lease according to Tribune's books and records as of the date of this Global Contract Motion, including the Schedules and all timely-filed Proofs of Claim, and (ii) Tribune is willing to pay on the Effective Date, or on such other terms as the parties to each such Tribune Assumed Contract/Lease may otherwise agree, in accordance with Section 6.2 of the Debtor/Committee/Lender Plan.[17]  (Id.)

(ii)    Subsidiary Assumed Contracts/Leases

26.    Attached hereto as Exhibit B is a non-exhaustive list of the Subsidiary Assumed Contracts/Leases, organized alphabetically by contract or lease counterparty.  The parties included in Exhibit B are those parties that have claims against the Subsidiary Debtors on

---

[16] The inclusion of a Proposed Cure Amount on any exhibit hereto is not an admission by the Debtors of a default under any Assumed Contract or Lease.

[17] As of the date of this Global Contract Motion, the Debtors have been unable to reach a final determination as to the Proposed Cure Amounts relating to the contracts of AT&T Corporation, Iron Mountain Information Management Inc., Oracle America Inc., SBC Global Services, Inc., Sprint Nextel, T-Mobile USA, Inc., Verizon Communications, Inc., Verizon Wireless, or Xerox.  The Debtors estimate that the Proposed Cure Amounts for each of these contracts may exceed the $1,000 aggregate threshold.  The Debtors will continue to cooperate with such parties to determine the Proposed Cure Amounts and all rights of the Debtors and the foregoing parties with respect to the Proposed Cure Amounts are reserved.

account of the Subsidiary Assumed Contracts/Leases in excess of $25,000 in the aggregate by

contract or lease counterparty. (See Whittman Dec. at ¶ 12.) The Proposed Cure Amount with

respect to such Subsidiary Assumed Contract/Lease is listed in the column titled "Cure Amount"

reflects the cure amount that (i) after reasonable investigations, the Debtors have determined that

the respective Subsidiary Debtor may owe pursuant to the terms of each corresponding

Subsidiary Assumed Contract/Lease according to each such Subsidiary Debtor's books and

records as of the date of this Global Contract Motion, including the Schedules and all timely-

filed Proofs of Claim, and (ii) the respective Subsidiary Debtors are willing to pay on the

Effective Date, or on such other terms as the parties to each such Subsidiary Assumed

Contract/Lease may otherwise agree, in accordance with Section 6.2 of the

Debtor/Committee/Lender Plan.[18] (Id.)

       (iii)     Assumed Customer Program Obligations

    27.    Section 6.1.2 of the Debtor/Committee/Lender Plan provides that, subject

to Section 6.1.1 and except for any Customer Program designated on the Rejected Contract

Exhibit, all refund, advertiser, and subscriber credit programs or similar obligations of the

Debtors to subscribers or former subscribers to any of the Debtors' publications under the

Customer Programs shall be deemed assumed effective as of the Effective Date and the proposed

cure amount with respect to each shall be zero dollars.[19]

---

[18] As of the date of this Global Contract Motion, the Debtors have been unable to reach a final determination as to the Proposed Cure Amounts relating to the contracts of CCI Europe International Inc. Comcast, Constellation New Energy, Oracle America, Inc., Ryder Truck Rental, and Xerox. The Debtors estimate that the Proposed Cure Amounts for each of these contracts may exceed the $25,000 aggregate threshold. The Debtors will continue to cooperate with such parties to determine the Proposed Cure Amounts and all rights of the Debtors and the foregoing parties with respect to the Proposed Cure Amounts are reserved.

[19] The Solicitation Order approved the form of Credit/Refund Notice (as defined therein) that was distributed to holders of Customer Program Obligations. Of the approximately 400,0000 Credit/Refund Notices that were distributed, the Debtors' Claims and Noticing Agent has received approximately 103,000 returned Notices. In addition, the Debtors' Claims and Noticing Agent and the Debtors' counsel have received approximately 1,000

28.     Of the approximately 400,000 known Assumed Customer Program Obligations, approximately 1,000 relate to prepetition obligations arising under the Advertising Programs.  The Debtors have determined that certain of these obligations, which, as discussed above were not included in the Debtors' Schedules, have amounts due and owing that the Debtors would be required to cure as a condition of assumption. (See Whittman Dec. at ¶ 13.)

29.     Attached hereto as Exhibit C is a non-exhaustive list of the Assumed Customer Program Obligations, organized alphabetically by contract counterparty, for which the Proposed Cure Amount is proposed by the Debtors to be greater than zero dollars.  The Proposed Cure Amount reflects the cure amount that (i) after reasonable investigations, the Debtors have determined that the applicable Debtor may owe pursuant to the terms of each respective Assumed Customer Program Obligations according to the Debtors' books and records as of the date of this Global Contract Motion, including the Schedules and all timely-filed Proofs of Claim, and (ii) the respective Debtors are willing to pay on the Effective Date, or on such other terms as the parties to each such Assumed Customer Program Obligations may otherwise agree, in accordance with Section 6.2 of the Debtor/Committee/Lender Plan. (Id.)

**B.    Procedures for Establishing Cure Amounts for Assumed Contracts and Leases Not Listed on the Contract Exhibits**

30.     The Debtors have not individually listed each and every one of the Assumed Contracts and Leases on the Contract Exhibits together with the amounts that the applicable Debtor may owe under each such Assumed Contract and Lease.  Specifically, the Debtors have not listed the Tribune Assumed Contracts/Leases with associated prepetition claims of less than $1,000 or the Subsidiary Assumed Contracts/Leases with associated prepetition

---

inquiries (approximately 0.25% of the total population noticed) from holders of Customer Program Obligations regarding the Notice and/or requesting payment pursuant to the Customer Programs Order.

claims of less than $25,000 on the Contract Exhibits. For the foregoing reasons, the Debtors

believe that they are able to satisfy all requirements for assumption of contracts pursuant to

section 365 of the Bankruptcy Code, including the requirement that pre-assumption defaults be

cured, notwithstanding that such Assumed Contracts and Leases do not appear on the Cure

Exhibits.

    31.  The Debtors are continuing their efforts to review and reconcile all Proofs

of Claim filed in these chapter 11 cases, including claims filed on account of Assumed Contracts

and Leases, and the claims resolution process is very well advanced.[20] (See Whittman Dec. at ¶

14.)  Proportionately few of the claims of counterparties to Assumed Contracts or Leases remain

to be resolved as to validity or amount.  (Id.)  The more substantial logistical obstacle faced by

the Debtors at this time is to relate those Proofs of Claim and the claims scheduled by the

Debtors to particular Executory Contracts and Unexpired Leases.  (Id.)  There are approximately

30,000 scheduled claims and Proofs of Claim in the aggregate asserted against the Debtors in

these Chapter 11 cases and approximately 45,000 Schedule G records identifying the Debtors'

Executory Contracts and Unexpired Leases as of the Petition Date.  Although the Debtors'

claims-to-contract reconciliation is ongoing, as of the date of this Global Contract Motion, the

Debtors have not yet related each of the scheduled claims and Proofs of Claim that were filed by

parties that were also identified as potential counterparties to Executory Contracts or Unexpired

Leases on the Debtors' Schedule G to determine which of the scheduled claims and Proofs of

Claim definitively relate to the Assumed Contracts and Leases.  (Id.)  The Debtors believe that

---

[20] To date, the Debtors have objected to or provided a notice of satisfaction for 2,487 claims asserted against the Debtors' estates, contained in forty-two (42) omnibus objections to claims, multiple objections to individual claims, and one notice of satisfied claims.  In total, the asserted amount of the claims subject to objection or satisfaction was $2,448,341,185.94, including unliquidated amounts, for a total reduction of $2,434,319,298.58.  In addition, the Debtors objected to two (2) claims of a single creditor totaling $100,000,000,000, which have each been expunged.

the process of reconciling the Tribune Assumed Contracts/Leases with associated prepetition claims of less than $1,000 and the Subsidiary Assumed Contracts/Leases with associated prepetition claims of less than $25,000 would be a substantial undertaking that would consume substantial estate resources and would not be in the best interests of their estates and creditors given the 100% recovery rate on Convenience Claims against Tribune Company (i.e., claims equaling $1,000 or less) and on claims asserted against the Subsidiary Debtors. (Id.) Such a process would require (i) comparing the approximately 30,000 scheduled claims and Proofs of Claim with the approximately 45,000 individual contracts and leases listed on the Debtors' Schedule G (and the contracts and leases specifically excluded from Schedule G, for the reasons discussed above), (ii) matching each contract and lease to corresponding schedule records or Proofs of Claim filed on account of prepetition defaults under such contract or lease (if any), (iii) determining whether such contracts and leases remain executory and/or unexpired, and (iv) reconciling the validity and amount of such Proofs of Claim, to arrive at the Proposed Cure Amounts. (Id.)

32.    The Debtors nonetheless submit that the counterparties to an Assumed Contract or Lease that is not listed on the Contract Exhibits for the reason that each such party's claims, in the aggregate, assert amounts below the materiality thresholds of $1,000 for the Tribune Assumed Contracts/Leases and $25,000 for the Subsidiary Assumed Contracts/Leases will not be prejudiced by the omission, because the Debtor/Committee/Lender Plan provides for the payment in full of Convenience Claims against Tribune Company and payment in full of general unsecured claims against the Subsidiary Debtors (subject to the terms and conditions of the  Debtor/Committee/Lender Plan).  Thus, such claims will be paid in full and satisfied as

required by section 365 of the Bankruptcy Code regardless of whether they are reflected in the Contract Exhibits or not.

33.      Accordingly, the Debtors request that this Court authorize the following procedures for the satisfaction of  Assumed Contracts and Leases that are not listed on the Contract Exhibits for the reason that the associated claims fall below the applicable materiality thresholds: (i) with respect to any counterparty to a Tribune Assumed Contract/Lease holding a scheduled claim or a Proof of Claim in an amount that is equal to or less than $1,000, on account of monetary defaults under such Tribune Assumed Contract/Lease that would otherwise be required to be cured as a condition of assumption, such claims will be treated as Convenience Claims and will be paid in full pursuant to Section 3.2.7(b) of the Debtor/Committee/Lender Plan; and (ii) with respect to any counterparty to a Subsidiary Assumed Contract/Lease holding a scheduled claim or a Proof of Claim in an amount that is equal to or less than $25,000 on account of monetary defaults under such Subsidiary Assumed Contract/Lease that is otherwise required to be cured as a condition of assumption, the Debtors propose to satisfy all such scheduled or filed claims in full at the Initial Distribution Date (or as soon as practicable after any Disputed claim becomes an Allowed claim, in accordance with and subject to the Debtors' ongoing claims reconciliation and objection process).

34.      With respect to prepetition defaults, counterparties to the Subsidiary Assumed Contracts/Leases that are not listed on Exhibit B because they hold prepetition claims of less than $25,000 may refer to the official claims register maintained in these chapter 11 cases to determine the amount that the Debtors have scheduled as being due and/or the amount asserted as being due by a timely-filed Proof of Claim on account of such Assumed Contract or Lease. All of the parties' respective rights in connection with the Debtors' claims reconciliation process

are expressly reserved and shall not be affected by this Global Contract Motion.  With respect to

post-petition defaults, such amounts will be satisfied by the Debtors in their ordinary course of

business and all of the parties' respective rights are similarly reserved.  Any amounts determined

to be owed by the Debtors to cure monetary defaults as a condition of assumption will be

Allowed and paid in full pursuant to the Debtor/Committee/Lender Plan.

35.    The Debtors respectfully submit that with respect to holders of Customer

Program Obligations that are not listed on Exhibit C, no further notice of the Proposed Cure

Amount is necessary, as such holders have received adequate notice of the terms of the

Debtor/Committee/Lender Plan in the Credit/Refund Notice that was approved by this Court

pursuant to the solicitation of the Debtor/Committee/Lender Plan.  With respect to holders of

Customer Program Obligations that are listed on Exhibit C, the Debtors will provide notice of

this Global Contract Motion.

### C.    Procedures for Responding to Proposed Cure Amounts and Resolving Disputes Relating Thereto

36.    The Debtors request that if any party disagrees with the Proposed Cure

Amount as set forth on the Contracts Exhibits, such party shall be required to submit a written

response (a "Response") within 21 days from the date of the entry of an Order approving the

procedures requested herein (the "Response Deadline").  Each such Response must:

(a)    be in writing;

(b)    state with specificity the grounds for the disagreement and the fully-liquidated Cure Amount which such party believes is required under section 365 of the Bankruptcy Code;

(c)    include any supporting documentation of the foregoing, including the specific nature and dates of any alleged defaults, the pecuniary losses resulting therefrom and the conditions giving rise thereto; and

(d)    be served on counsel to the Debtors so as to be actually received on or before the Response Deadline, at the following addresses:

Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Attn: Jillian K. Ludwig
Email: jillian.ludwig@sidley.com

Cole, Schotz, Meisel, Forman &
Leonard, P.A.
1500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Attn: Norman L. Pernick

37.    The Debtors will then make a reasonable effort to review the particular
Assumed Contract or Lease and associated Proofs of Claim, schedules, and/or supporting
documentation identified in the Response to determine whether any asserted defaults have not, in
fact, been satisfied by the Proposed Cure Amounts.  In the event that the parties are unable to
reach a resolution as to the Proposed Cure Amounts, the Debtors will request that a hearing be
held to resolve the matter at a date and time to be determined by the Debtors in their discretion,
subject to the Court's availability.  In the event that a Response requires a hearing before the
Bankruptcy Court, such hearing may, after appropriate notice, be scheduled after the
Confirmation Date, but shall be scheduled prior to the Effective Date.

38.    The Debtors request that, notwithstanding anything to the contrary in an
Assumed Contract or Lease or any Proof of Claim (whether formal or informal) that has been
filed or may be filed by the applicable counterparty to an Assumed Contract or Lease or any other
document or instrument, if no Response is timely received, or if a timely Response is received
but does not comply with the foregoing requirements then, without any further notice to or
action, approval or order by, the Bankruptcy Court, (i) each counterparty to each such Assumed
Contract or Lease shall be bound by and subject to, and shall be deemed to have consented to, the
Proposed Cure Amount listed in the Contract Exhibits, and (ii) the applicable Cure Amount shall
be fixed, for purposes of satisfying the requirements of sections 365 and 1123 and the terms of
the Debtor/Committee/Lender Plan, at the amount set forth on the Contract Exhibits attached
hereto, subject to any payments the Debtors may have made prior to the Effective Date, and any

obligation the Debtors or the Reorganized Debtors may have under section 365 in excess of the applicable Cure Amount shall be deemed fully satisfied, released and discharged, notwithstanding any amount or information included in the Schedules or any Proof of Claim.

39.    In the event that a Response regarding the Proposed Cure Amount must be resolved by the Bankruptcy Court, then payment of any such Cure Amounts shall be made following the entry of a Final Order by the Bankruptcy Court resolving the Response or pursuant to any agreement by the parties resolving the Response.  In the event that a Response regarding the Proposed Cure Amount remains unresolved as of the Effective Date, in accordance with Section 6.2 of the Debtor/Committee/Lender Plan, the applicable Assumed Contract or Lease shall be deemed assumed by the Reorganized Debtors, including the Successor Reorganized Debtors, unless otherwise ordered by the Bankruptcy Court pending resolution of such Response, provided that the Debtors reserve the right, at any time prior to the Effective Date, to add the relevant Assumed Contract or Lease to the Rejected Contract Exhibit.

40.    The Debtors expressly reserve the right, at any time prior to the Effective Date, to supplement, modify, or amend the Contract Exhibits to, among other things, add or remove Assumed Contracts and Leases, as well as alter any of the Proposed Cure Amounts.  If, on or after the date of the entry of an Order approving this Global Contract Motion, the Debtors supplement, modify, or amend the Contract Exhibits, the Debtors shall provide notice to the counterparties to any Assumed Contract or Lease affected by such amendment and such party shall have 21 days from such notice to serve a written Response consistent with the procedures set forth herein (the "Supplemental Response Deadline").

II.    **Procedures for Providing Notice of Assignment of Executory Contracts and Unexpired Leases Pursuant to the Restructuring Transactions Contemplated by the Debtor/Committee/Lender Plan**

41.    Section 5.2 of the Debtor/Committee/Lender Plan provides that "[t]he Restructuring Transactions shall be authorized and approved by the Confirmation Order pursuant to, among other provisions, section 1123 and 1141 of the Bankruptcy Code and section 303 of title 8 of the Delaware Code, if applicable, without any further notice, action, third-party consents, court order or process of any kind, except as otherwise set forth [in the Plan] or in the Confirmation Order." (Debtor/Committee/Lender Plan, § 5.2.)  The Debtors believe that Section 5.2 of the Debtor/Committee/Lender Plan authorizes them to consummate the Restructuring Transactions, including the resulting assumption and/or assignment of the Assumed Contracts and Leases, Previously Assumed Contracts/Leases, and Postpetition Contracts/Leases without further notice or need for Court approval.

42.    However, out of an abundance of caution, and to facilitate the post-Effective Date administration of all contracts and leases to which the Debtors and Reorganized Debtors are party, the Debtors propose to serve a notice of the assumption and/or assignment of contracts and leases pursuant to the Restructuring Transactions to each of their known contract and lease counterparties (the "Restructuring Transactions Notice") promptly after the entry of an order granting this Global Contract Motion.  Attached hereto as Exhibit E is the proposed Restructuring Transactions Notice.  The Debtors submit that service of the Restructuring Transactions Notice on counterparties to the Assumed Contracts and Leases, Previously Assumed Contracts/Leases, and Postpetition Contracts/Leases constitutes due and adequate notice of the consequences of the Restructuring Transactions for such contracts and leases and the respective parties' continuing rights and obligations thereunder.

25

43.    As discussed above, the net effect of the Restructuring Transactions will be that (i) the Assumed Contracts and Leases (and the rights and obligations thereunder) of any Predecessor Debtor being merged into a Successor Reorganized Debtor, or any Predecessor Debtor that is spun off into one or more new Successor Reorganized Debtors, will be assumed by, and shall vest in, the applicable Successor Reorganized Debtor, (ii) the Previously Assumed Contracts/Leases of any Predecessor Debtor being merged into a Successor Reorganized Debtor, or any Predecessor Debtor that is spun off into one or more new Successor Reorganized Debtors, will be assigned to the applicable Successor Reorganized Debtor, and (iii) the Postpetition Contracts/Leases of any Predecessor Debtor being merged into a Successor Reorganized Debtor, or any Predecessor Debtor that is spun off into one or more new Successor Reorganized Debtors, will be assigned to the applicable Successor Reorganized Debtor, in each instance in accordance with the applicable provisions of the Bankruptcy Code and the terms of the Debtor/Committee/Lender Plan as of the Effective Date.

44.    Pursuant to the terms of the Debtor/Committee/Lender Plan, each Successor Reorganized Debtor will perform the obligations of the applicable Predecessor Debtor. The Successor Reorganized Debtors will become a party to the applicable Assumed Contract or Lease to which the corresponding Predecessor Debtor is currently a party, and the terms of such Assumed Contract or Lease shall remain in full force and effect.  None of the Assumed Contracts and Leases will be assumed by, or assigned to, an unrelated third-party.  Thus, the Debtors and the Reorganized Debtors have assured all counterparties to the Assumed Contracts and Leases and Previously Assumed Contracts/Leases of the future performance by the Successor Reorganized Debtors of each of the Assumed Contracts and Leases and Previously Assumed Contracts/Leases.

## BASIS FOR RELIEF REQUESTED

45.    Section 1123(a)(5)(G) of the Bankruptcy Code requires that a plan

proposed under chapter 11 of the Bankruptcy Code shall "provide adequate means for the plan's

implementation, such as … curing or waiving any default." Under section 365(b)(1) of the

Bankruptcy Code, if the debtor is in default under an executory contract or unexpired lease, a

debtor in possession may not assume or assume and assign such executory contract or unexpired

lease unless, at the time of assumption or assumption and assignment, the debtor in possession,

among other things, (1) cures or provides adequate assurance that it will promptly cure any

defaults; and (2) compensates or provides adequate assurance of prompt future compensation for

actual pecuniary loss resulting from any defaults. 11 U.S.C. § 365(b)(1)(A)-(C); see also

Kimmelman v. Port Auth. Of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318

(3d Cir. 2003) (holding that 365(b) requires prompt cure of any default under an unexpired lease

or contract and provision of the necessary adequate assurances before a trustee or debtor in

possession can assume and assign such lease or contract); L.R.S.C. Co. v. Rickel Home Ctrs.,

Inc. (In re Rickel Home Ctrs., Inc), 209 F.3d 291, 298 (3d Cir. 2000) (requiring a debtor in

possession to cure defaults under lease agreement before lease can be assumed and assigned and

provide adequate assurance of future performance). Section 365(f) of the Bankruptcy Code

provides that a debtor may assign an executory contract or unexpired lease if such contract or

lease is assumed in accordance with the provisions of section 365 and provides adequate

assurance of future performance by the assignee. 11 U.S.C. § 365(f)(2).

46.    As discussed above, by this Global Contract Motion the Debtors are

seeking to (i) fix any cure amounts due with respect to each Assumed Contract and Lease that is

currently anticipated to be assumed pursuant to the terms of the Debtor/Committee/Lender Plan

as of the Effective Date; and (ii) provide notice of the proposed assumption and/or assignment by certain Successor Reorganized Debtors of certain Assumed Contracts and Leases, Previously Assumed Contracts/Leases, and Postpetition Contracts/Leases, as applicable, pursuant to the terms of the Debtor/Committee/Lender Plan as of the Effective Date. The Debtors submit that the Proposed Cure Amounts appearing on the Contract Exhibits accurately reflect, to the best of their knowledge, the Debtors' books and records with respect to all amounts owing under the Assumed Contracts and Leases. In order to facilitate prompt payment of the Proposed Cure Amounts upon the Effective Date of the Debtor/Committee/Lender Plan, the Debtors desire to address and reconcile any disputes with respect to Proposed Cure Amounts in accordance with the procedures set forth herein. To that end, and in light of the large number of Assumed Contracts and Leases, the Debtors submit that the notice and response procedures proposed herein for the determination of Proposed Cure Amounts for Assumed Contracts and Leases that appear on the Contract Exhibits, represent an efficient method for addressing the Proposed Cure Amounts.

47.    The Debtors likewise submit that the notice provided herein regarding assumption and/or assignment of the Assumed Contracts and Leases, Previously Assumed Contracts/Leases, and Postpetition Contracts/Leases by certain Successor Reorganized Debtors, as applicable, in connection with the assumption and/or assignment of the Assumed Contracts and Leases, Previously Assumed Contracts/Leases, and Postpetition Contracts/Leases is adequate under the circumstances. The counterparties to each of the Assumed Contracts and Leases, Previously Assumed Contracts/Leases, and Postpetition Contracts/Leases are assured of the future performance or the Reorganized Debtors and/or Successor Reorganized Debtors that will be the successor, surviving, resulting, or acquiring entity to the existing Debtor party to such

Assumed Contract or Lease, Previously Assumed Contract/Lease, or Postpetition Contract/Lease based upon the terms of the Debtor/Committee/Lender Plan. As such, the Debtors respectfully submit that the relief requested herein is in the best interest of the Debtors' estates and will facilitate the Debtors' consensual reorganization efforts.

## NO PRIOR REQUEST

48.     No prior request for the relief sought herein has been made by the Debtors to this or any other Court.

## NOTICE

49.     Notice of this Global Contract Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) all parties listed on the Contract Exhibits; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      March 7, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C. K. Boelter
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
  500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION