## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF THE MOTION OF THE DEBTORS FOR AN ORDER ESTABLISHING PROCEDURES FOR (I) FIXING CURE AMOUNTS AND (II) PROVIDING NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES BY A SUCCESSOR REORGANIZED DEBTOR PURSUANT TO SECTIONS 365, 1123, AND 1129 OF THE BANKRUPTCY CODE**

I, Brian Whittman, declare as follows:

1.     I am a Managing Director at Alvarez & Marsal North America, LLC

("A&M"), a limited liability corporation.  A&M was retained by the above-captioned debtors

and debtors in possession (collectively, the "Debtors") to advise them in connection with their

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune News Network, Inc. (not applicable); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

restructuring with the approval of this Court on February 11, 2009. I am familiar with the work performed by A&M for the Debtors and am competent to testify to the facts set forth herein. I have over fifteen (15) years of financial restructuring and bankruptcy experience and have been working with the Debtors since November 2008. A&M is a leading independent global professional services firm with significant experience in advising debtors in complex bankruptcy cases, including its current retention in the Lehman Brothers bankruptcy.

2.       I have read the Motion of the Debtors for an Order Establishing Procedures for (I) Fixing Cure Amounts and (II) Providing Notice of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases by a Successor Reorganized Debtor Pursuant to Sections 365, 1123, and 1129 of the Bankruptcy Code (the "Global Contract Motion"), and am familiar with the facts stated therein and the exhibits attached thereto. At the Debtors' direction and under my supervision, A&M prepared Exhibits A-C to the Global Contract Motion.

3.       I am familiar with the Debtors' books and records, including the contracts and leases entered into by the Debtors both prior to December 8, 2008 (the "Petition Date") and since the Petition Date, the Debtors' schedules of assets and liabilities (as amended, collectively, the "Schedules"), and the proofs of claim asserted against the Debtors in these chapter 11 cases (the "Proofs of Claim"). I am also generally familiar with the Debtors' day-to-day operations, financing arrangements, and business affairs.

4.       I am also familiar with the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. [Docket No. 7801] (as such has been or may be further amended,

modified or supplemented from time to time, the "Debtor/Committee/Lender Plan") and the related Specific Disclosure Statement for the First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 7135] (the "Debtor/Committee/Lender Plan Specific Disclosure Statement"), including the provisions therein relating to the classification and treatment of creditors' claims, the estimated recoveries on account of such claims, and the treatment of executory contracts and unexpired leases to be assumed under the Debtor/Committee/Lender Plan (collectively, the "Assumed Contracts and Leases").

5.       All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) my view, based on my experience and knowledge of the Debtors' operations and personnel, (d) information supplied to me by others at the Debtors' request, or (e) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel or other advisors to the Debtors.  If called as a witness I would testify competently to the facts herein.

6.       In the aggregate, the Debtors identified approximately 45,000 contracts and leases on Schedule G to their respective Schedules.  Certain contracts and leases were excluded from Schedule G, including certain indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements, certain confidential agreements which, by their terms, prohibit disclosure of the existence of such agreements. The Debtors also did not list on Schedule G any obligations relating to Customer Programs for which the Debtors have been granted authority to pay pursuant to the Court's Order Authorizing, but Not Requiring, the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue

Prepetition Customer Programs and Practices in the Ordinary Course of Business [Docket No. 50] (the "Customer Programs Order").[2]

7.     On behalf of the Debtors, and with the support of the Debtors' counsel on certain legal matters, A&M has undertaken substantial logistical efforts to reconcile the Assumed Contracts and Leases against their books and records and the timely-filed Proofs of Claim asserted against the Debtors in these chapter 11 cases in order to determine the payments to counterparties that will be required to be made to cure existing monetary defaults under the Assumed Contracts and Leases (the "Proposed Cure Amounts").

8.     To that end, A&M, in coordination with the Debtors, has divided the universe of Assumed Contracts and Leases into three categories: (i) "Tribune Assumed Contracts/Leases," representing those Assumed Contracts and Leases to which Tribune Company ("Tribune") is party; (ii) "Subsidiary Assumed Contracts/Leases," representing those Assumed Contracts and Leases to which the Subsidiary Debtors are party; and (iii) "Assumed Customer Program Obligations," representing certain ongoing obligations arising under the Customer Programs.

9.     The reconciliation of the Assumed Contracts and Leases to determine Proposed Cure Amounts was made subject to aggregate monetary thresholds—determined by the Debtors and A&M to be material in consideration of the claims treatment proposed in the Debtor/Committee/Lender Plan—of $1,000 or more for Tribune Assumed Contracts/Leases and $25,000 or more for Subsidiary Assumed Contracts/Leases.  Specifically, A&M, together with

---

[2] As used herein, "Customer Programs" means any of the Debtors' customer programs and practices designed to develop and sustain a positive reputation for their publications, syndicated content offerings, broadcast stations, cable networks, and interactive websites with their subscribers and advertisers, including the Advertising Programs, the Delivery Service Program, the Direct Mail Program, Billing Adjustments, Customer Service Program, and Prepayments, as those terms are defined in the Motion of the Debtors for an Order Authorizing, but not Requiring, the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue Prepetition Customer Programs and Practices in the Ordinary Course of Business.  [Docket No. 8.]

the Debtors' personnel, performed a claims-to-contract analysis for the purposes of (i) relating scheduled claims or filed Proofs of Claim (in amounts in the aggregate per creditor greater than the applicable thresholds) to prepetition contracts and leases appearing on Schedule G, (ii) determining if the contracts or leases that were the subject of the claims in fact remained Executory Contracts or Unexpired Leases within the meaning of section 365 of the Bankruptcy Code, and (iii) determining the validity of the amount of the asserted claims to arrive at a Proposed Cure Amount.[3]

10.    Based on their reconciliation efforts to date, A&M has determined that for the vast majority of the Assumed Contracts and Leases, there are no associated prepetition defaults and there are little to no postpetition defaults because the Debtors have been timely paying and will continue to timely pay and otherwise honor their postpetition obligations in the ordinary course of business. The Debtors believe and I agree that the substantial majority of the Assumed Contracts and Leases that may have associated monetary defaults are de minimis in amount and will not be entitled to recovery pursuant to Section 7.13 of the Debtor/Committee/Lender Plan.[4]

11.    The parties identified on Exhibit A to the Global Contract Motion are those parties that have claims against Tribune on account of the Tribune Assumed Contracts/Leases in excess of $1,000 in the aggregate by contract or lease counterparty. The Proposed Cure Amount listed in the column titled "Cure Amount" reflects the cure amount that

---

[3] In some instances, the claims-to-contract reconciliation resulted in situations where it was determined that a counterparty's claim was scheduled or filed in part on account of a contract or lease that was no longer executory in nature under section 365 of the Bankruptcy Code and in part on account of a contract or lease that remained executory. In such cases, the Proposed Cure Amount reflects only the portion of the claim that relates to an Assumed Executory Contract or Lease. The balance of the claim that does not relate to an executory contract or unexpired lease would be independently reconciled and paid in accordance with the treatment of claims set forth in the Debtor/Committee/Lender Plan.

[4] For example, of the approximately 400,000 creditors holding credits relating to the Debtors' Customer Programs, approximately 90% have a credit balance below $25.00, which would not be entitled to a distribution pursuant to Section 7.13 of the Debtor/Committee/Lender Plan.

(i) after reasonable investigations conducted  by A&M and the Debtors, the Debtors determined

that Tribune may owe pursuant to the terms of each respective Tribune Assumed Contract/Lease

according to Tribune's books and records as of the date of this Global Contract Motion,

including the Schedules and all timely-filed Proofs of Claim, and (ii), upon information and

belief, Tribune is willing to pay on the Effective Date, or on such other terms as the parties to

each such Tribune Assumed Contract/Lease may otherwise agree.[5]

12.    The parties included in <u>Exhibit B</u> to the Global Contract Motion are those

parties that have claims against the Subsidiary Debtors on account of the Subsidiary Assumed

Contracts/Leases in excess of $25,000 in the aggregate by contract or lease counterparty.  The

Proposed Cure Amount with respect to such Subsidiary Assumed Contract/Lease is listed in the

column titled "Cure Amount" reflects the cure amount that (i) after reasonable investigations by

A&M and the Debtors, the Debtors determined that the respective Subsidiary Debtor may owe

pursuant to the terms of each corresponding Subsidiary Assumed Contract/Lease according to

each such Subsidiary Debtor's books and records as of the date of this Global Contract Motion,

including the Schedules and all timely-filed Proofs of Claim, and (ii), upon information and

belief, the respective Subsidiary Debtors are willing to pay on the Effective Date, or on such

other terms as the parties to each such Subsidiary Assumed Contract/Lease may otherwise agree.

13.    The parties included in <u>Exhibit C</u> to the Global Contract Motion are those

parties that have Assumed Customer Program Obligations arising under the Advertising

Programs, which A&M and the Debtors determined have amounts due and owing that the

---

[5] As of the date of this Global Contract Motion, A&M and the Debtors have been unable to reach a final determination as to the Proposed Cure Amounts relating to the contracts of AT&T Corporation, Iron Mountain Information Management Inc., Oracle America Inc., SBC Global Services, Inc., Sprint Nextel, T-Mobile USA, Inc., Verizon Communications, Inc., Verizon Wireless, or Xerox.  A&M and the Debtors estimate that the Proposed Cure Amounts for each of these contracts may exceed the $1,000 aggregate threshold.  A&M and the Debtors  will continue to cooperate with such parties to determine the Proposed Cure Amounts.

Debtors would be required to cure as a condition of assumption. The Proposed Cure Amount reflects the cure amount that (i) after reasonable investigations, A&M and the Debtors determined that the applicable Debtor may owe pursuant to the terms of each respective Assumed Customer Program Obligations according to the Debtors' books and records as of the date of this Global Contract Motion, including the Schedules and all timely-filed Proofs of Claim, and (ii), upon information and belief, the respective Debtors are willing to pay on the Effective Date, or on such other terms as the parties to each such Assumed Customer Program Obligations may otherwise agree.

14.    A&M and the Debtors are continuing their efforts to review and reconcile all Proofs of Claim filed in these chapter 11 cases, including claims filed on account of Assumed Contracts and Leases, and the claims resolution process is very well advanced.[6] Proportionately few of the claims of counterparties to Assumed Contracts or Leases remain to be resolved as to validity or amount. The more substantial logistical obstacle faced by the Debtors at this time is to relate those Proofs of Claim and the claims scheduled by the Debtors to particular Executory Contracts and Unexpired Leases. There are approximately 30,000 scheduled claims and Proofs of Claim in the aggregate asserted against the Debtors in these Chapter 11 cases and approximately 45,000 Schedule G records identifying the Debtors' Executory Contracts and Unexpired Leases as of the Petition Date. Although this claims-to-contract reconciliation is ongoing, as of the date of this Global Contract Motion, A&M and the Debtors have not yet related each of the scheduled claims and Proofs of Claim that were filed by parties that were also identified as potential counterparties to Executory Contracts or Unexpired Leases on the

---

[6] To date, the Debtors have objected to or provided a notice of satisfaction for 2,487 claims asserted against the Debtors' estates, contained in forty-two (42) omnibus objections to claims, multiple objections to individual claims, and one notice of satisfied claims. In total, the asserted amount of the claims subject to objection or satisfaction was $2,448,341,185.94, including unliquidated amounts, for a total reduction of $2,434,319,298.58. In addition, the Debtors objected to two (2) claims of a single creditor totaling $100,000,000,000, which have each been expunged.

Debtors' Schedule G to determine which of the scheduled claims and Proofs of Claim definitively relate to the Assumed Contracts and Leases. The Debtors believe and I agree that the process of reconciling the Tribune Assumed Contracts/Leases with associated prepetition claims of less than $1,000 and the Subsidiary Assumed Contracts/Leases with associated prepetition claims of less than $25,000 would be a substantial undertaking that would consume substantial estate resources and would not be in the best interests of their estates and creditors given the 100% recovery rate on Convenience Claims against Tribune Company (i.e., claims equaling $1,000 or less) and on claims asserted against the Subsidiary Debtors. Such a process would require (i) comparing the approximately 30,000 scheduled claims and Proofs of Claim with the approximately 45,000 individual contracts and leases listed on the Debtors' Schedule G (and the contracts and leases specifically excluded from Schedule G, for the reasons discussed above), (ii) matching each contract and lease to corresponding schedule records or Proofs of Claim filed on account of prepetition defaults under such contract or lease (if any), (iii) determining whether such contracts and leases remain executory and/or unexpired, and (iv) reconciling the validity and amount of such Proofs of Claim, to arrive at the Proposed Cure Amounts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of March, 2011

Brian Whittman
Managing Director
Alvarez & Marsal North America, LLC