```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF DELAWARE


IN RE:                            )      Case No. 08-13141-KJC
                                  )
TRIBUNE COMPANY,                  )
                                  )      Chapter 11
                                  )
                                  )      Courtroom 5
                                  )      824 Market Street
              Debtors.            )      Wilmington, Delaware
                                  )
                                  )      March 9, 2011
                                  )      10:00 a.m.


                      TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE KEVIN J. CAREY
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:              Sidley Austin, LLP
                              BY: JAMES CONLAN, ESQ.
                              BY: JAMES BENDERNAGEL, ESQ.
                              BY: KEVIN LANTRY, ESQ.
                              BY: JAMES DUCAYET, ESQ.
                              One South Dearborn
                              Chicago, IL 60603
                              (312) 853-7000


                              Cole, Schotz, Meisel, Forman
                              & Leonard, P.A.
                              BY: NORMAN PERNICK, ESQ.
                              500 Delaware Ave., Ste. 1410
                              Wilmington, DE 19801
                              (302) 652-3131


ECRO:                         AL LUGANO

Transcription Service:        DIAZ DATA SERVICES
                              331 Schuylkill Street
                              Harrisburg, Pennsylvania 17110
                              (717) 233-6664
                              www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
 1  APPEARANCES:
 2  (Continued)
 3
 4  For JP Morgan:                Davis Polk & Wardwell
 5                                BY: ELLIOT MOSKOWITZ, ESQ.
 6                                BY: BENJAMIN KAMINETZKY, ESQ.
 7                                BY: DONALD S. BERNSTEIN, ESQ.
 8                                450 Lexington Avenue
 9                                New York, NY 10017
10                                (212) 450-4000
11
12                                Richards Layton & Finger
13                                BY: BOB STEARN, ESQ.
14                                One Rodney Square
15                                920 North King Street
16                                Wilmington, DE  19801
17                                (302) 651-7700
18
19  For Aurelius Capital:         Akin Gump Strauss Hauer & Feld
20                                BY: DAVID ZENSKY, ESQ.
21                                BY: DANIEL GOLDEN, ESQ.
22                                BY: DEBORAH NEWMAN, ESQ
23                                BY: PHILIP DUBLIN, ESQ.
24                                BY: NANCY CHUNG, ESQ.
25                                BY: ABID QURESHI, ESQ.
26                                BY: MITCH HURLEY, ESQ.
27                                One Bryant Park
28                                New York, NY 10036
29                                (212) 872-1000
30
31  For Merrill Lynch:            Potter, Anderson & Corroon
32                                BY: LAURIE S. SILVERSTEIN, ESQ
33                                BY: R. STEPHEN MCNEILL, ESQ.
34                                Hercules Plaza
35                                1313 North Market Street
36                                6th Floor
37                                Wilmington, DE 19801
38                                (302) 984-6000
39
40                                Kay Scholer
41                                BY: MADLYN GLEICH PRIMOFF, ESQ
42                                BY: JANE PARVER, ESQ.
43                                425 Park Avenue
44                                New York, NY  10022-3598
45                                (212) 836-7042
46
47
48
49
50
51
52
53
```

```
 1  APPEARANCES:
 2  (Continued)
 3
 4  For Law Debenture:              Bifferato Gentilotti
 5                                  BY: GARVAN MCDANIEL, ESQ.
 6                                  800 North King Street
 7                                  Plaza Level
 8                                  Wilmington, DE 19801
 9                                  (302) 429-1900
10
11  For Official Committee
12  of Unsecured Creditors:         Chadbourne & Parke, LLP
13                                  BY: DAVID LEMAY, ESQ.
14                                  BY: THOMAS MCCORMACK, ESQ.
15                                  BY: HOWARD SEIFE, ESQ.
16                                  BY: ANDREW ROSENBLATT, ESQ.
17                                  BY: ROBERT SCHWINGER, ESQ.
18                                  BY: MARC ASHLEY, ESQ.
19                                  BY: BOB KIRBY, ESQ.
20                                  BY: DOUGLAS DEUTSCH. ESQ.
21                                  30 Rockefeller Plaza
22                                  New York, NY 10112
23                                  (212) 408-5100
24
25                                  Landis, Rath & Cobb
26                                  BY: ADAM G. LANDIS, ESQ.
27                                  BY: DANIEl B. RATH, ESQ.
28                                  919 Market Street, Suite 1800
29                                  Wilmington, DE 19801
30                                  (302) 467-4400
31
32                                  Zuckerman Spaeder
33                                  BY: GRAEM BUSH, ESQ.
34                                  BY: ANDREW GOLDFARB, ESQ.
35                                  BY: JAMES SOTTILE, ESQ.
36                                  1800 M Street, NW
37                                  Suite 1000
38                                  Washington, DC 20036
39                                  (202) 778-1800
40
41  For Special Committee of the
42  Board of Directors:             Jones Day
43                                  BY: LYNN MARVIN, ESQ.
44                                  77 West Wacker
45                                  Chicago, Illinois 60601
46                                  (312) 782-3939
47
48
49
50
51
52
```

```
 1  APPEARANCES:
 2  (Continued)
 3
 4  For Credit Agreement Lenders: Young, Conaway, Stargatt &
 5                                Taylor
 6                                BY: BLAKE N. CLEARY, ESQ.
 7                                The Brandywine Building
 8                                1000 West Street, 17th Floor
 9                                Wilmington, DE 19801
10                                (302) 571-6600
11
12                                Dewey LeBouef
13                                BY: BRUCE BENNETT, ESQ.
14                                BY: JAMES JOHNSTON, ESQ.
15                                BY: JOSHUA MESTER, ESQ.
16                                333 South Grand Avenue
17                                Suite 2600
18                                Los Angeles, CA 90071
19                                (213) 621-6000
20
21  For DBTCA:                    McCarter & English
22                                BY: KATHARINE MAYER, ESQ.
23                                BY: DAVID ADLER, ESQ.
24                                405 N. King Street, 8$^{th}$ Fl.
25                                Wilmington, DE  19801
26                                (302) 984-6312
27
28  For U. S. Trustee:            Office of the U. S. Trustee
29          `                     BY:  DAVID KLAUDER, ESQ.
30                                844 King Street, Ste. 2207
31                                Wilmington, DE  19801
32                                (302) 573-6491
33
34  For Morgan Stanley:           Barnes & Thornburg
35                                BY: DAVID POWLEN, ESQ.
36                                1000 North West St., Ste. 1200
37                                Wilmington, DE  19801-1058
38                                (302)868-4536
39
40  For Barclays:                 Edwards Angell Palmer & Dodge
41                                BY: MICHELE MARINO, ESQ.
42                                919 N. Market Street, 15$^{th}$ Fl.
43                                Wilmington, DE  19801
44                                (302) 425-7105
45
46  For Tribune:                  Tribune Company
47                                BY: DON LIEBENTRITT, ESQ.
48                                435 North Michigan Avenue
49                                Chicago, IL 60611
50                                (312) 222-9100
51
52
53
```

```
 1   APPEARANCES:
 2   (Continued)
 3
 4   For EGI-TRB & Sam Zell:        Jenner & Block
 5                                  BY:  CATHERINE STEEGE, ESQ.
 6                                  BY: ANDREW VAIL, ESQ.
 7                                  353 North Clark Street
 8                                  Chicago, IL  60654-3456
 9                                  (312) 923-2952
10
11                                  Blank Rome, LLP
12                                  BY: DAVID CARIKOFF, ESQ.
13                                  1201 Market Street, Ste. 800
14                                  Wilmington, DE  19801
15                                  (302) 425-6434
16
17   TELEPHONIC APPEARANCES:
18
19   For Jason D Abbruzzese:        Realm Partners
20                                  BY: JASON D. ABBRUZZESE
21                                  (212) 612-1441
22   For Official Committee of
23   Unsecured Creditors:           Chadbourne & Park, LLP
24                                  BY:  MARC D. ASHLEY, ESQ.
25                                  (212) 408-5194
26                                  BY: DOUGLAS DEUTSCH, ESQ.
27                                  (212) 408-5169
28                                  BY: JESSICA MARRERO, ESQ.
29                                  (212)408-5100
30                                  BY: MARC ROITMAN, ESQ.
31                                  (212)408-5271
32                                  BY: FRANK VAZQUEZ, ESQ.
33                                  (212)408-5111
34                                  BY: HOWARD SEIFE, ESQ.
35                                  (212) 408-5361
36
37                                  Zuckerman & Spaeder, LLP
38                                  BY: GRAEM BUSH, ESQ.
39                                  BY: JAMES SOTTILE, ESQ.
40                                  BY: ANDREW GOLDFARB, ESQ.
41                                  BY: ANDREW CARIDAS, ESQ.
42                                  (202) 778-1800
43
44                                  Landis Rath & Cobb, LLP
45                                  BY: MATTHEW B. MCGUIRE, ESQ.
46                                  (302)467-4431
47
48
49
50
51
52
53
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)
 3
 4   For Barclays:                Mayer Brown, LLP
 5                                BY: JEAN-MARIE ATAMIAN, ESQ.
 6                                (212)506-2678
 7                                BY: MICHAEL L. SIMES, ESQ.
 8                                (212) 506-2607
 9                                BY: AMIT TREHAN, ESQ.
10                                (212) 506-2198
11
12                                Barclays Capital, Inc.
13                                BY: BEN WILSON
14                                (212)412-7642
15   For Credit Agreement
16   Lenders:                     Angelo Gordon & Co., LP
17                                BY: GAVIN BAIERA, ESQ.
18                                (212)692-0217
19
20                                Wilmer Cutler Pickering Hale &
21                                Dorr
22                                BY: MICHELLE GOLDIS, ESQ.
23                                (212) 295-6329
24                                ANDREW N. GOLDMAN, ESQ.
25                                (212)230-8836
26
27   For SuttonBrook Capital:     SuttonBrook Capital
28                                Management, LP
29                                BY: CAROL L. BALE, ESQ.
30                                (212) 588-6640
31   For Monarch Alternative
32   Capital, LP:                 Monarch Alternative Capital LP
33                                BY: ROBERT G. BURNS, ESQ.
34                                (212) 554-1768
35
36   For Bank of America:         O'Melveny & Myers
37                                BY: DANIEL CANTOR, ESQ.
38                                (212) 326-2000
39                                BY: DANIEL S. SHAMAH, ESQ.
40                                (212)326-2138
41
42                                Bank of America
43                                BY: ESTHER CHUNG, ESQ.
44                                (646) 855-6705
45
46   For Jefferies & Company:     Jefferies & Company
47                                BY: JUSTIN BRASS, ESQ.
48                                (203) 708-5847
49
50
51
52
53
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)
 3
 4   For Tribune:                  DK Partners
 5                                 BY: EPHRAIM DIAMOND, ESQ.
 6                                 (646) 282-5841
 7                                 BY: DAVE ELDERSVELD, ESQ.
 8                                 (312)222-4707
 9
10                                 Sidley Austin
11                                 BY: GREG DEMO, ESQ.
12                                 (312) 853-7758
13                                 BY: KEN KANSA, ESQ.
14                                 (312) 853-7163
15                                 BY: SOPHIA MULLEN, ESQ.
16                                 (212) 839-5884
17                                 BY: JILLIAN LUDWIG, ESQ.
18                                 (312) 853-7523
19                                 BY: BRETT MYRICK, ESQ.
20                                 (312) 853-1049
21                                 BY: ALLISON E. STROMBERG, ESQ.
22                                 (312) 853-0497
23
24                                 Tribune Company
25                                 BY: GARY WEITMAN, ESQ.
26                                 (312) 222-3394
27
28
29   For Wilmington Trust:         Brown Rudnick, LLP
30                                 BY:  KATHERINE BROMBERG, ESQ.
31                                 (212) 209-4929
32                                 BY: ROBERT STARK, ESQ.
33                                 (212)209-4862
34
35   For Goldman Sachs & Co.:      Goldman Sachs & Company
36                                 BY: SCOTT BYNUM, ESQ.
37                                 (212) 902-8060
38
39   For Citibank:                 Paul Weiss Rifkind Wharton
40                                 BY: KIRA DAVIS, ESQ.
41                                 (212) 373-3000
42                                 BY: ANDREW GORDON, ESQ.
43                                 (212)373-3543
44                                 BY: ANDREW LEVY, ESQ.
45                                 (202)223-7328
46                                 BY: SHANNON PENNOCK, ESQ.
47                                 (212) 373-3000
48                                 BY: ELIZABETH MCCOLM, ESQ.
49                                 (212) 373-3000
50
51
52
53
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)
 3
 4   For Arrowgrass Management:      Arrowgrass Capital Partners,
 5                                   U.S., LP
 6                                   BY: ARIF GANGAT, ESQ.
 7                                   (212) 584-1160
 8
 9   For Aurelius Capital
10   Managemeent:                   Aurelius Capital Management LP
11                                   BY: MATTHEW A. ZLOTO, ESQ.
12                                   (646) 445-6518
13
14                                   Akin Gump Strauss Hauer & Feld
15                                   BY: SHAYA ROCHESTER, ESQ.
16                                   (212) 872-1076
17                                   BY: JOHN BERRY, ESQ.
18                                   (212) 872-8075
19
20                                   Friedman Kaplan Seiler &
21                                   Adelman
22                                   BY: KIZZY JARASHOW, ESQ.
23                                   (212) 833-1115
24
25   For George Dougherty:          Grippo & Elden, LLC
26                                   BY: GEORGE DOUGHERTY, ESQ.
27                                   (312) 704-7700
28
29   For Mina Faltas:               Viking Global Investors
30                                   BY: MINA FALTAS
31                                   (212) 672-7011
32
33   For Bennett Management:        Lucy Galbraith
34                                   BY: LUCY GALBRAITH, ESQ.
35                                   (203) 353-3101
36
37   For Morgan Stanley:            Weil Gotshal & Manges, LLP
38                                   BY: ASHISH D. GANDHI, ESQ.
39                                   (212) 310-8024
40                                   BY: DAVID LITVACK, ESQ.
41                                   (212)310-8361
42                                   BY: ANDREA SAAVEDRA, ESQ.
43                                   (212) 310-8544
44   For Serengeti Asset
45   Management:                    Serengeti Asset Management
46                                   BY: NICHOLAS HEILBUT, ESQ.
47                                   (212) 466-2167
48
49   For Anna Kalenchits:           Anna Kalenchits
50                                   (212)723-1808
51
52
53
```

```
1   TELEPHONIC APPEARANCES:
2   (Continued)
3
4   For JPMorgan Chase Bank:      Davis Polk & Wardwell, LLP
5                                 BY: PETER KIM, ESQ.
6                                 (212) 450-3028
7                                 BY: LESLIE BANK, ESQ.
8                                 (212)450-4175
9
10                                Richards Layton & Finger
11                                BY: MARK D. COLLINS, ESQ.
12                                (302) 651-7531
13
14  For Partner Fund Management:  Vinson & Elkins, LLP
15                                BY: LANCE A. MULHERN, ESQ.
16                                (212) 237-0184
17  For Oaktree Capital
18  Management:                   Oaktree Capital Management
19                                BY: KENNETH C. LIANG, ESQ.
20                                (213) 830-6422
21  For Brigade Capital
22  Management:                   Brigade Capital Management
23                                BY: NEIL LOSQUADRO
24                                (212) 745- 9758
25
26  For Royal Bank of Scotland:   Royal Bank of Scotland
27                                BY: COURTNEY ROGERS, ESQ.
28                                (203) 897-4815
29
30  For Eos Partners:             Eos Partners
31                                BY: MIKE J. SCHOTT, ESQ.
32                                (212) 593-4046
33
34  For Prof. Expert:             Raymond James
35                                BY: ROBERT SCHWARTZ, ESQ.
36                                (212) 872-7441
37
38  For Contrarian Capital
39  Management:                   Contrarian Capital Management
40                                BY: JOSHUA TRUMP, ESQ.
41                                (203) 862-8299
42
43  For Alvarez & Marsal, Inc.:   Alvarez & Marsal, Inc.
44                                BY: BRIAN WHITTMAN, ESQ.
45                                (312) 601-4227
46
47  For Insured:                  Smith Management
48                                BY: JENNIFER WILD, ESQ.
49                                (212) 418-6877
50
51  For Macquarie Capital:        Macquarie Capital (USA)
52                                BY: RUSHABH VORA, ESQ.
53                                (212) 231-6311
```

```
1   TELEPHONIC APPEARANCES:
2   (Continued)
3
4   For Kramer Levin:              Kramer Levin Neftalis &
5                                  Frankel, LLP
6                                  BY: JORDAN KAYE, ESQ.
7                                  (212) 715-9489
8
9   For Deutsche Bank AG:          Bingham McCutchen, LLP
10                                 BY: JEFFREY OLINSKY
11                                 BY: CHAD VALERIO
12                                 (212) 705-7857
13
14  For Law Debenture Trust:       Kasowitz Benson Torres & Park
15                                 BY: SHERON KORPUS, ESQ.
16                                 (212) 506-1700
17                                 BY: DAVID ROSNER, ESQ.
18                                 (212) 506-1726
19
20  For Merrill Lynch:             Kay Scholer, LLP
21                                 BY: JONATHAN AGUDELO, ESQ.
22                                 (212) 836-8369
23
24  For Cooperstown Capital
25  Management:                    Cooperstown Capital Management
26                                 BY: PETER COURI, ESQ.
27                                 (203) 552-6900
28
29  For Wells Fargo:               White & Case
30                                 BY: SCOTT GREISSMAN, ESQ.
31                                 (212) 819-8567
32
33  For Credit Agreement Lenders:  Wilmer Cutler Pickering Hale
34                                 & Dorr
35                                 BY: ANDREW N. GOLDMAN, ESQ.
36                                 (212) 230-8836
37  For Robert R. McCormick
38  Foundation:                    Katten Muchin Rosenman, LLP
39                                 BY: JOHN SIEGER, ESQ.
40                                 (312) 902-5294
41
42  For Interested Party:          Canyon Partners
43                                 BY: CHANEY M. SHEFFIELD, ESQ.
44                                 (310) 272-1062
45
46                                 One East Partners
47                                 BY: SINA TOUSSI, ESQ.
48                                 (212) 230-4510
49
50  For Non-Party:                 Duff & Phelps
51                                 BY: JOE LIEWANT
52                                 (973) 775-8336
53
```

1  WILMINGTON, DELAWARE, WEDNESDAY, MARCH 9, 2011, 10:03 A.M.

2          THE CLERK:  Be seated, please.

3          THE COURT:  Good morning, everyone.

4          ALL:  Good morning, Your Honor.

5          MR. MOSKOWITZ:  Good morning, Your Honor.  Elliot

6  Moskowitz with the law firm of Davis, Polk & Wardwell

7  representing JP Morgan Chase.

8          Your Honor, the DCL Plan Proponents calls our

9  next witness, Miriam Kulnis of JP Morgan Chase Bank.

10         THE COURT:  Very well.

11         MR. MOSKOWITZ:  And, Your Honor, I have a tiny

12 exhibit binder, if I may hand that up to the bench.  This

13 will be the thinnest exhibit binder in the case, I suspect.

14         THE COURT:  Sorry, no stars for that, but thank

15 you for letting me know.

16 (Laughter)

17         THE COURT:  I know, it's crowded.  Thank you.

18      MIRIAM KULNIS, DCL PLAN PROPONENTS WITNESS, SWORN

19                    DIRECT EXAMINATION

20 BY MR. MOSKOWITZ:

21 Q    Good morning, Ms. Kulnis.

22 A    Good morning.

23 Q    Ms. Kulnis, where are you currently employed?

24 A    JP Morgan Chase Bank.

25 Q    And what is your work address?

1   A      383 Madison Avenue in New York.

2   Q      Ms. Kulnis, can you briefly tell us your educational

3   background?

4   A      Sure.  I went to grade school at Our Lady of Mt.

5   Carmel.  High school at Holy Family Academy.  And then I got

6   my bachelor's degree in education at King College and later

7   my master's degree in education also at King College.

8   Q      And Ms. Kulnis, prior to joining JP Morgan, where were

9   you employed?

10  A      I was a special education teacher in Bayonne, New

11  Jersey.

12  Q      And how long did you do that for?

13  A      For five years.

14  Q      And how long have you been employed with JP Morgan?

15  A      In May it will be 26 years.

16  Q      Ms. Kulnis, what is your current position at JP

17  Morgan?

18  A      I'm an executive director in the special credits

19  group.

20  Q      And how long have you held this position?

21  A      Well, I've been an executive director for about two

22  years and I've been in the special credits group for

23  approximately ten years.

24  Q      And what position did you hold in the special credits

25  group before you were an executive director?

1   A      I was a vice president.

2   Q      Ms. Kulnis, can you describe what the special credits

3   group does?

4   A      Sure.  We're part of the credit risk management group

5   at JP Morgan and we serve a couple of different roles.

6   Sometimes we advise the line on credits and there are other

7   times that we manage credits that have a higher risk

8   profile.

9   Q      And Ms. Kulnis, what are your own personal

10  responsibilities as an executive director in the special

11  credits group?

12  A      I'm what you would call a portfolio manager.  I have a

13  group of loans that I have to day to day responsibility for.

14  Q      And are all those loans for companies that are in

15  bankruptcy?

16  A      No, they're not.  Some are in bankruptcy, some are

17  out.

18  Q      And Ms. Kulnis, do you report to anyone in your

19  capacity as an executive director in the special credits

20  group?

21  A      Yes, I report to Ann Karinskis [ph].

22  Q      And what is her title?

23  A      She is a managing director.

24  Q      Ms. Kulnis, other than your time in the special

25  credits group, have you held any other positions at JP

1    Morgan?

2    A     Yes, I started out as a construction loan

3    administrator in Manufacturers Hanover which through many

4    mergers became JP Morgan and that was in the commercial real

5    estate group.  And then I went through the credit training

6    program and became a credit officer in the commercial real

7    estate group and moved into the workout group at

8    Manufacturers Hanover and then ultimately later, into the

9    special credits group at JP Morgan.

10   Q     Ms. Kulnis, fast forwarding to today, is there someone

11   at JP Morgan with principal day to day responsibility for

12   managing the Tribune matter?

13   A     Yes, that would be me.

14   Q     And Ms. Kulnis, when did special credits first get

15   involved in the Tribune matter?

16   A     We first got involved prior to the -- just prior to

17   the closing of Step 2 in December of '07.

18   Q     And when did special credits begin to formally manage

19   the Tribune matter?

20   A     We took over management in December of '08, when the

21   company filed for bankruptcy.

22   Q     Ms. Kulnis, when did you first become aware that

23   Tribune was going to file for bankruptcy?

24   A     Well, in about November of '08, we met with the

25   company and they had concerns because their performance was

1    beginning to deteriorate and they had some payments due to

2    subordinated noteholders.  There were concerns that they

3    were potentially going to breach a covenant.  So we met with

4    them and we talked about a number of options.  We talked

5    about potentially amending the credit agreement to prevent

6    the default.  And we also talked about a potential

7    bankruptcy filing.  But we, in fact, didn't really know that

8    they were going to file for sure until a day or two before

9    they actually did.

10   Q    And Ms. Kulnis, do you have an understanding as to who

11   made the decision to file Tribune for bankruptcy?

12   A    It's my understanding that the Tribune board of

13   directors made that decision.

14   Q    Ms. Kulnis, after the bankruptcy filing, did there

15   come a time when JP Morgan sought a position on the

16   creditors' committee?

17   A    Yes.  A week or two the company filed, there was the

18   first organizational meeting of the unsecured creditors'

19   committee down in Delaware and we came down here and sought

20   to have -- get a position on the committee.

21   Q    And was JP Morgan selected to serve on the committee?

22   A    Yes, we were.

23   Q    Ms. Kulnis, who are the chairs of the committee?

24   A    JP Morgan and Warner Brothers are co-chairs of the

25   committee.

1    Q    Ms. Kulnis, were you aware of any potential conflicts

2    of interest at that time associated with JP Morgan's role of

3    serving on the committee?

4    A    Yes, I knew that the committee was likely going to do

5    an investigation of potential claims against the LBO

6    lenders.

7    Q    So Ms. Kulnis, how did you deal with that potential

8    conflict of interest while serving on the committee?

9    A    Well, JP Morgan offered to recuse itself from any

10   discussions around the LBO claims or the investigation of

11   the LBO claims.

12   Q    And, in fact, did JP Morgan recuse itself from those

13   discussions?

14   A    Yes, we did.

15   Q    Let's just be specific for a couple of minutes, Ms.

16   Kulnis.  Has JP Morgan participated in any committee

17   deliberations regarding the merits of the LBO claims?

18   A    No, we have not.

19   Q    Has JP Morgan participated in the committee's

20   investigation of the LBO claims as a committee member?

21   A    As a committee member we have not.  JP Morgan as a

22   potential Defendant in the action was on the receiving end

23   of some discovery requests.

24   Q    We'll get to that in a minute.  Did JP Morgan have any

25   access to the committee's internal legal memoranda analyzing

1  the LBO claims?

2  A     No, we did not.

3  Q     Ms. Kulnis, were you involved in the selection of

4  counsel for the committee?

5  A     Yes.

6  Q     And who did the committee select?

7  A     Chadbourne & Parke.

8  Q     Did JP Morgan propose Chadbourne & Parke?

9  A     No, we didn't.

10 Q     Did there come a time where the company -- where the

11 committee retained additional counsel?

12 A     Yes.

13 Q     And who was that?

14 A     Zuckerman Spaeder.

15 Q     Do you have an understanding of what Zuckerman Spaeder

16 was retained to do?

17 A     It's my understanding that they were retained to

18 assist the committee in the investigation of the LBO claims.

19 Q     And Ms. Kulnis, were you involved in the decision to

20 retain Zuckerman Spaeder?

21 A     No, I wasn't.

22 Q     Were you recused from those discussions?

23 A     I was.

24 Q     Ms. Kulnis, do you have an understanding as to what,

25 if anything, the committee did to actually investigate the

1  LBO -- the potential LBO claims?

2  A    Well, it's my understanding they made discovery

3  requests, requested documents from a number of parties from

4  the LBO lenders, from the debtor, from some other parties.

5  And they also conducted some depositions.

6  Q    Now, Ms. Kulnis, you speak of document in the

7  discovery request was JP Morgan a recipient of those

8  requests?

9  A    Yes, we were.

10  Q    And can you please describe JP Morgan's discovery

11  efforts in response to those committee investigation

12  requests?

13  A    We turned over lots of documents, probably a couple of

14  hundred thousand pages of documents to the committee.  And

15  as I recall, the committee deposed a couple of current

16  and/or former employees of JP Morgan.

17  Q    Did JP Morgan cooperate with the committee's

18  investigation?

19  A    Yes, we did.

20  Q    Ms. Kulnis, there ever come a time where the parties

21  to these bankruptcy cases began to negotiate with one

22  another about the LBO related causes of action?

23  A    Yes.  In early January of 2010, I think it was, there

24  was a meeting at Chadbourne and it was what I think was the

25  first, you know, real negotiating session.

1  Q      And Ms. Kulnis, who participated in those discussions?

2  A      Oh, there were a lot of participants.  I remember

3  Chadbourne was there and certain members of the committee

4  were there, if not the whole committee.  JP Morgan, Angelo

5  Gordon, Oaktree was there.  I remember Law Debenture was

6  there and Centerbridge and I think the PHONES were there.

7  Q      Ms. Kulnis, can you generally describe the nature of

8  those discussions that occurred at that time?

9  A      Well, it's my recollection that the noteholders made a

10 presentation to the group describing their view of the LBO

11 claims.  The senior lenders made a presentation to the group

12 about our view of the value of the LBO claims.  And then

13 there was -- there came a time when there was I guess offers

14 made, Centerbridge made an offer to settle the claims for to

15 my recollection $975 million.  And then the senior lenders

16 offered $75 million to settlement claims.

17 Q      So the parties were far apart?

18 A      Yes, we were.

19 Q      Ms. Kulnis, what was the role of the debtors at that

20 time?

21 A      Well, the debtors were facilitating discussions

22 amongst the party.  It's my recollection that they were

23 meeting individually with various parties and then with some

24 of us in groups.  And they were trying to encourage us to

25 meet with each other and trying to basically get us to come

1    closer together and to bridge that gap.

2    Q    Ms. Kulnis, what happened next in those discussions?

3    A    Well, after that meeting, the parties continued to

4    meet.  We met with the debtors.  The various groups of

5    senior lenders met a couple of times.  We met with

6    Centerbridge and ultimately in April of 2010, we reached an

7    agreement with Centerbridge on settlement of the LBO claims.

8    Q    And Ms. Kulnis, can you generally describe the terms

9    of that settlement?

10   A    It was a payment of $450 million to the senior

11   noteholders.  It settled Steps 1, 2, and disgorgement.  And

12   it provided for a payment in full of the creditors at the

13   subsidiary and payment of, I think around $.32 or $.34 to

14   the parents at the -- to the unsecured creditors of the

15   parent.

16   Q    Ms. Kulnis was there a litigation trust component to

17   that settlement?

18   A    No.  As part of that settlement, all the claims were

19   settled.

20   Q    And Ms. Kulnis, can you describe the -- can you

21   identify the parties who supported that settlement?

22   A    JP Morgan and Angelo Gordon supported it.

23   Centerbridge and Law Debenture and the debtor and the

24   creditors' committee.

25   Q    And can you identify any parties who were opposed to

1  that settlement?

2  A     Yes, Oaktree and a group of credit agreement lenders

3  who were part of the senior lend group opposed it.  And it's

4  my recollection that the PHONES opposed that as well.

5  Q     Ms. Kulnis, did you have an understanding of why

6  certain credit agreement lenders opposed the settlement?

7  A     Yes.  They thought that the payment of $450 million to

8  the bonds was too high a payment.  They didn't think the

9  claims were worth that much.  They were upset that it was

10  too high a payment.

11  Q     And, Ms. Kulnis, do you have an understanding of why

12  the PHONES opposed the settlement?

13  A     Well, there was provision for any payment going to the

14  PHONES in this settlement, so they thought the settlement

15  was too low and that there should be some value given to

16  them.

17  Q     And Ms. Kulnis was this settlement ever embodied in a

18  plan of reorganization?

19  A     Yes, it was.

20  Q     And when was that?  Was that plan filed?

21  A     Yes, it was.

22  Q     This is the April plan?

23  A     That was the April plan.

24  Q     Okay.  Now, Ms. Kulnis, you mentioned a moment ago

25  that Oaktree and certain credit agreement lenders didn't

1  support the settlement.  Did JP Morgan take any steps to get

2  Oaktree to support the April plan?

3  A    Yes.  I spoke to them a number of times.  Had a number

4  of conversations with them.  I tried to convince them that

5  the 450 settlement was reasonable.  That it was the way to

6  get us quickly out of bankruptcy, but I was ultimately

7  unsuccessful in convincing them of that.

8  Q    Okay.  And leaving Oaktree aside, did JP Morgan speak

9  to other lenders about the April plan?

10  A    Yes, we did.  After the company filed its disclosure

11  statement, I called around to a number of senior lenders

12  like we normally do when there's an amendment to be approved

13  or there's a plan on the table that we're going to be asking

14  for a vote on.  I called around to a number of lenders to

15  try to get their support for the plan.

16  Q    And what was the result of all of those discussions?

17  A    Well, I felt pretty good that a lot of the lenders

18  supported the settlement, but frankly, I was still concerned

19  that Oaktree and their credit agreement lender group might

20  have a block.

21  Q    And were you ultimately successful in getting Oaktree

22  to support the April plan?

23  A    No, they never supported the April plan.

24  Q    Ms. Kulnis, were there any other significant

25  developments around the time of the filing of the April

1  plan?

2  A      Yes, the Court appointed an examiner.

3  Q      And do you know who that examiner was?

4  A      Ken Klee [ph].

5  Q      Ms. Kulnis, can you describe the nature of JP Morgan's

6  involvement in the examiner's investigation?

7  A      Well, I remember that we met with Mr. Klee a few

8  times.  We turned over some documents to him.  And I believe

9  he interviewed a number of current and former employees at

10  JP Morgan as part of that investigation.

11  Q      Did JP Morgan cooperate with the investigation of the

12  examiner?

13  A      We did.

14  Q      Ms. Kulnis, what happened next?

15  A      A couple of months later, I think it was in July of

16  2010, he issued a lengthy report.

17  Q      Do you recall how long?

18  A      Over a thousand pages, I think, yeah.

19  Q      And Ms. Kulnis, did you have the good fortune to read

20  that report?

21  A      I did, though I'll confess I didn't do it one sitting.

22  Q      Neither did I.  Ms. Kulnis, how if at all, did the

23  examiner's report impact the settlement embodied in the

24  April plan?

25  A      Well, it made it difficult to keep the April plan in

1   place.  A lot of lenders viewed Mr. Klee's findings with

2   respect to Step 1 as sort of a vindication that Step 1 was

3   good and, therefore, the settlement was too high.  So I was

4   starting to hear that a lot of lenders, you know, might not

5   be supporting the April settlement.

6           MR. HURLEY:  Your Honor, I just object and move

7   to strike, except to the extent counsel can establish a

8   foundation for that testimony.

9           MR. MOSKOWITZ:  Your Honor, I think that she just

10  -- in her testimony, she just indicated that these were her

11  discussions with lenders.

12          THE COURT:  I agree, overruled.

13  BY MR. MOSKOWITZ:

14  Q    Moving on.  Ms. Kulnis, you just talked about your

15  discussions with other lenders.  What was JP Morgan's own

16  view as to the impact of the examiner's report on the

17  settlement?

18  A    We also thought that given the findings on Step 1,

19  that it was likely that 450 was probably too high a price

20  for that settlement.

21  Q    Ms. Kulnis, did you have any conversations with

22  Centerbridge about whether the April plan could succeed in

23  light of the examiner's report?

24  A    Yes, I did.  I spoke to Biv Milwany [ph] at

25  Centerbridge a number of times.

1    Q      And what was the nature of those discussions?

2    A      Well, it was my impression that he was a little

3    nervous about the settlement.  He had a different view of

4    the examiner's findings on Step 1 than I did.  But he wanted

5    to go ahead with the settlement and just to attach a

6    litigation trust with respect to the Step 2 claims on top of

7    that settlement and to move forward.

8    Q      But he wanted the deal to stay in place with the

9    litigation trust component.  Is that your testimony?

10              MR. HURLEY:  Objection, leading, Your Honor.

11              THE COURT:  Sustained.

12              MR. MOSKOWITZ:  Did you have an understanding of

13   what Mr. Milwany's view was as to whether the settlement

14   should stay in place?

15              MR. HURLEY:  Objection, Your Honor.  I think if

16   the question is did Mr. Milwany tell you something about his

17   view that's not an objectionable question, but whether she

18   had an understanding, I think we have to know what the basis

19   for understanding is.

20              MR. MOSKOWITZ:  I think the basis is her

21   discussion with Mr. Milwany.

22              MR. HURLEY:  It has to be established.

23              THE COURT:  I think Mr. Hurley made a good

24   suggestion.

25              MR. MOSKOWITZ:  Okay.

1    (Laughter)

2              MR. MOSKOWITZ:   Fair enough, Your Honor.

3    BY MR. MOSKOWITZ:

4    Q     Did you have discussions with Mr. Milwany?

5    A     I did.

6    Q     And in those discussions, did he indicate to you what

7    his views were with respect to the settlement?

8    A     Yes.  He told me that he wanted the settlement to go

9    forward.  He was concerned about whether Oaktree really did

10   have a block.  Did we think that the settlement would still

11   get approved?  And he wanted a litigation trust attached to

12   it, but he wanted essentially to just modify the plan, at a

13   litigation trust to it, and then go forward with that

14   settlement.

15   Q     And, Ms. Kulnis, did the deal stay in place following

16   the examiner's -- following the issuance of the examiner's

17   report?

18   A     No, it fell apart.

19   Q     And what happened, Ms. Kulnis?

20   A     Well, the company took certain actions and filed

21   certain plan supplements that we viewed as being in

22   violation of the settlement support agreement.  So Angelo

23   with -- Angelo Gordon withdrew their support and then

24   shortly thereafter, JP Morgan withdrew its support and the

25   deal fell apart.

1  Q     Ms. Kulnis, can you describe for the Court what

2  happened after JP Morgan and Angelo Gordon withdrew from the

3  settlement support agreement?

4  A     Well, new discussions arose around another potential

5  settlement with the bonds that was less than the April

6  settlement.  And there were discussions among the parties of

7  offering the bonds about $375 million in settlement of the

8  claims.

9  Q     And would JP Morgan have been supportive of a

10 settlement at that level?

11 A     Yes, we would have.

12 Q     And what ultimately happened with those discussions

13 about the settlement at 375?

14 A     Well, there were some stops and starts, but

15 ultimately, we couldn't get enough support.  It's my

16 recollection that the committee wasn't really onboard and it

17 didn't go anywhere.

18 Q     Did any plan get filed?

19 A     No, no plan was filed for that.

20 Q     Ms. Kulnis, did negotiations breakdown entirely at

21 that time?

22 A     No, there were some discussions.  I mean, we were

23 trying hard to try to find some sort of area of consensus

24 where the people would agree, where people would agree, the

25 notes and the senior lenders on what an appropriate

1   settlement would be.

2   Q      And what happened next?

3   A      The Court appointed Judge Gross as mediator in the

4   cases.

5              MR. MOSKOWITZ:  And, Your Honor, I'll waive the

6   red flag right now.  I'm going to ask a couple questions

7   about mediation.  I've conferred with counsel before the

8   examination.  I think that my questions won't be

9   objectionable, but I do want to at least note that for the

10  moment in terms of the questions I'm about to ask.

11             THE COURT:  Okay, then, Ms. Kulnis, I'll just ask

12  you to be particularly sensitive if you see motion from this

13  side --

14  (Laughter)

15             THE COURT:  -- hold your answer.

16             MS. KULNIS:  Yes, Your Honor.

17             THE COURT:  All right, thank you.

18  BY MR. MOSKOWITZ:

19  Q    Very well.  Ms. Kulnis, who participated in the

20  mediation?

21  A      It's my recollection that at the first mediation

22  session, all of the major constituents in the cases were

23  there, JP Morgan, Angelo Gordon, and Oaktree were there, the

24  committee was there, the bridge lenders, the debtor.  There

25  was a group of Step 1 only credit agreement lenders there,

1  and Aurelius was there.

2  Q    Now, Ms. Kulnis, you just mentioned Aurelius.   When

3  did Aurelius become an active participant in these

4  bankruptcy cases to your knowledge?

5  A    It's my recollection that after the 450 settlement

6  fell apart, sometimes after that, Aurelius bought, I believe

7  all of Centerbridge's debt and then they became more active

8  in the cases.

9  Q    Now, Ms. Kulnis, during the mediation sessions that

10  you just described, did you on behalf of JP Morgan, meet

11  with representatives from Aurelius?

12            MR. HURLEY:  Objection, Your Honor.  Your Honor,

13  obviously as you know, we haven't been allowed to inquire in

14  discovery about what happened at the mediation.   There

15  hasn't been any disclosure of substantive communications.

16  So to the extent the question elicits whether there was a

17  particular conversation and we're not allowed to explore

18  whether that conversation was in any sense substantive or in

19  any other way material to the issues that are being raised

20  on this in this confirmation hearing, we think it's

21  inappropriate for that conversation to be permitted and the

22  answer to be allowed.

23            THE COURT:  Well, so far the question could call

24  for just a yes or no answer.  It's the next question I know

25  that you may be concerned about or if the witness goes to

1    the next questions without it having been asked.

2            MR. HURLEY:  We're actually somewhat concerned

3    about even just the yes or no answer, Your Honor.

4            THE COURT:  Tell me why.

5            MR. HURLEY:  To the extent that it suggests that

6    there may have been substantive conversations and we're

7    unable to demonstrate for Your Honor whether that's true or

8    not.

9            THE COURT:  I don't think whether there was a

10    meeting or not falls within the confidentiality order.  So

11    you may answer that question, Ms. Kulnis yes or no.

12    Remember the question?

13            MS. KULNIS:  Can you please repeat it?

14            MR. MOSKOWITZ:  During those mediation sessions,

15    did you, Ms. Kulnis on behalf of JP Morgan, meet with

16    representatives from Aurelius?

17            MS. KULNIS:  Yes, we did.

18            MR. MOSKOWITZ:  And I don't know if this is the

19    next question Your Honor had in mind, but I'll try to be

20    careful.  The question is simply this.  Did you meet with

21    them on more than one occasion?

22            MR. HURLEY:  Same objection.

23            THE COURT:  Overruled.

24            MS. KULNIS:  Yes, we met with them a couple of

25    times.

1   BY MR. MOSKOWITZ:

2   Q     Ms. Kulnis was a settlement reached as a result of the

3   mediation?

4   A     There were a couple of settlements reached.

5   Q     Let's take them one a time.  Who were the parties to

6   the first settlement that was reached as a result of

7   mediation?

8   A     The debtors, Angelo Gordon, and Oaktree.

9   Q     And Ms. Kulnis was that settlement reduced to a

10  writing in the first instance?

11  A     Yes, there was a term sheet.

12  Q     Ms. Kulnis, let me show you a document that is

13  identified as DCL Exhibit 383 and it's the first item in

14  your binder.  Let me know when you have that.

15  A     Yes.

16  Q     Ms. Kulnis is this a copy of the term sheet that you

17  just referred to in your testimony?

18  A     It is.

19  Q     Okay.  Ms. Kulnis, can you describe generally the

20  settlement consideration provided to the non-LBO creditors

21  under this term sheet?

22  A     It provided a payment of $300 million in cash to the

23  senior notes and a payment to the unsecured creditors of I

24  believe 50 -- unsecured creditors of the subsidiary of, I

25  believe 50 percent if they approved the plan.  And to the

1  unsecured creditors of the parent roughly 23 or 24 cents.

2  Q    Ms. Kulnis was there a litigation trust component of

3  the settlement?

4  A    Yes, there was.  And all the claims not settled by

5  this term sheet were put into a litigation trust and the

6  proceeds of that were split between the -- pro-rata between

7  the noteholders and the senior loans such that roughly 85

8  percent of the proceeds beginning with dollar one went to

9  the senior loans and roughly 15 percent went to the

10 noteholders.

11 Q    And Ms. Kulnis, you say all the claims not settled,

12 which claims were settled and which claims were not settled

13 as a result of the settlement?

14 A    The only claim settled by this were the Step 1 LBO

15 claims.

16 Q    Were the Step 2 claims settled?

17 A    No, they weren't.

18 Q    Ms. Kulnis, did JP Morgan support the settlement that

19 was reflected in this September term sheet?

20 A    We did not.

21 Q    and why not?

22 A    Well, we always thought it made sense to settle all of

23 the claims, Step 1, Step 2, and disgorgement.  We also felt

24 that this term sheet didn't have very much support.  It

25 didn't have broad support.  We wanted the creditors'

1  committee onboard, we wanted the bridge onboard, and we

2  wanted the noteholders onboard for a settlement.

3  Q    Ms. Kulnis were any additional settlements reached

4  after this first settlement?

5  A    Yes, there were two more.

6  Q    Okay.  Let's go to the next settlement, Ms. Kulnis.

7  Who were the parties to the second settlement?

8  A    It was JP Morgan, Angelo, Oaktree -- I'm sorry, JP

9  Morgan, Angelo Gordon, and Oaktree, the debtors, and the

10 creditors' committee.

11 Q    Now Ms. Kulnis, was that settlement reduced to a

12 writing in the first instance?

13 A    Yes.  There was a term sheet.

14 Q    And, Ms. Kulnis, let me ask you to turn to the second

15 exhibit in your binder.  This is a document marked as --

16 identified as DCL Exhibit 384.  Let me know when you've got

17 that.

18 A    Yeah, I have it.

19 Q    You've got that in front of you?

20 A    Yes.

21 Q    Ms. Kulnis is the term sheet that you just referred to

22 in your testimony?

23 A    Yes, it is.

24 Q    Okay.  And we'll talk about the details of this

25 settlement in a minute.  But before we get there, Ms. Kulnis

1  were there any additional settlements reached as a result of

2  the mediation?

3  A     Yes.  A few weeks or months later, there was a

4  settlement reached with the bridge lenders.

5  Q     Okay.  And do you have a general understanding of what

6  that settlement provided?

7  A     It's my recollection that they're -- they paid an

8  additional $11 million in cash to the noteholders to settle

9  those claims.

10  Q     Okay.  Ms. Kulnis, returning to the settlement we were

11  just talking about a moment ago, did the debtors file a plan

12  incorporating the settlements that were reached in

13  mediation?

14  A     Yes.  That's the DCL plan.

15  Q     That's the DCL plan that's on file with the Court?

16  A     Yes.

17  Q     Okay.  And, Ms. Kulnis, can you describe the basic

18  terms of the settlement embodied in the DCL plan?

19  A     Well, it settles Step 1, Step 2, and disgorgement.  It

20  provides a cash payment of $420 million to the senior notes,

21  as well as, the majority of the litigation -- proceeds of

22  the litigation trust.  They now get the first $90 million in

23  proceeds from the litigation trust.  And then after

24  repayment of the loan of around $20 million, they split then

25  the remaining proceeds of the litigation trust, I believe

1  it's roughly 65 percent to the senior notes and 35 percent

2  to the senior lenders.  And then also the GOC's at the

3  subsidiaries get paid in full and the general unsecured

4  creditors at the parent get around 33 cents.

5  Q    And did you mention also a disgorgement component of

6  the settlement?

7  A    Yeah, disgorgement is settled for a payment of $120

8  million to the senior notes.

9  Q    Ms. Kulnis, does JP Morgan support the settlement that

10  is embodied in the DCL plan?

11  A    We do support it.  I think it's a little bit rich, but

12  we do support it.  We think that it's the best way to get

13  the company out of bankruptcy.

14  Q    Ms. Kulnis, I think there's been a lot of testimony at

15  this point about comparing one settlement to another.  There

16  could be some more of that on cross, but Ms. Kulnis, let me

17  ask you then, starting with the April plan, do you believe

18  that the settlement in the DCL plan provides more value to

19  the non-LBO creditors than the settlement embodied in the

20  April plan?

21  A    Yes, I think it does.  It provides them with a short

22  at getting a big recovery from the litigation trust so they

23  have the potential to get a much larger recovery in my view,

24  in the litigation trust.  Whereas, in the April plan, there

25  was no litigation trust.

1              MR. HURLEY:  Your Honor, objection and move to

2    strike the testimony about of whether or not there would be

3    a lot of recovery associated with the litigation trust.  The

4    witnesses isn't a lawyer.  There's no foundation for having

5    a view about whether there's any value in that litigation

6    trust at all.  So I think that's inappropriate testimony.

7              THE COURT:  Any response?

8              MR. MOSKOWITZ:  I think I can get the witness to

9    establish the basis for her opinion that there's great value

10   in the litigation trust.

11             THE COURT:  All right.

12             MR. MOSKOWITZ:  Or at least to found that

13   statement.  Ms. Kulnis, have you ever heard -- do you have

14   an understanding of what the view is of whether -- of the

15   noteholders as to the value of the litigation trust?

16             THE COURT:  You may answer.

17             MS. KULNIS:  Okay, thank you.  From what I've

18   read in their writings and what I've heard them say in

19   Court, it's my understanding that they place great value on

20   that litigation trust.  They think those claims are really

21   valuable.

22   BY MR. MOSKOWITZ:

23   Q    Okay.  Now, Ms. Kulnis, let's move to the September

24   term sheet.  How would you compare the treatment of the non-

25   LBO creditors under the September term sheet to the

1 settlement in the DCL plan?

2 A    Well, it's not really fair to compare the two.

3 They're very different.  The September term sheet didn't

4 have a lot of support and in my view, was only a partial

5 settlement.  But in the October term sheet which is the

6 second one, the senior noteholders get significantly more

7 recovery than they would have in the first term sheet.

8 Q    And can you elaborate, please?

9 A    They get -- well because more causes of action are

10 settled, they get a larger upfront cash payment and then

11 they have a larger piece of the litigation trust in the

12 second term sheet.

13 Q    And when you --

14 A    I'm sorry, I'm sorry, they don't have to share.  In

15 the first term sheet, dollar one they had to share with the

16 senior lenders.  In the second term sheet, they don't, they

17 get the first $90 million just to themselves.

18 Q    Is there a difference in general unsecured creditor

19 recovery as between the two settlements?

20 A    Yes.  It's my recollection that the second settlement

21 provided roughly an additional $70 million to the GOC's at

22 the parent in the subsidiary.

23 Q    And is there a difference in disgorgement recoveries

24 as between the two settlements?

25 A    Yes.  There's $120 million paid in settlement of

1  disgorgement in the second term sheet and that wasn't

2  settled in the first one.

3  Q    Ms. Kulnis, you testified a moment ago that the

4  September term sheet did not settle Step 2 avoidance claims.

5  Do you recall that testimony?

6  A    Yes.

7  Q    Ms. Kulnis, how did the -- how much did the September

8  term sheet reserve for Step 2 avoidance claims?

9  A    There was no reserve set up as part of that term

10 sheet.

11 Q    And why wasn't there a reserve for the Step 2 claims

12 in the September term sheet?

13 A    Well, I believe the avoidance of the Step 2 claims

14 really doesn't bring any additional value to the senior

15 noteholders.  If Step 2 went away, the size of the Step 1

16 claims alone soaks up most of the value because the Step 1

17 lenders have guarantees.  It soaks up most of the value in

18 the enterprise.  So doing away with Step 2 doesn't really do

19 much for the noteholders.

20 Q    And Ms. Kulnis, I've asked you a whole serious of

21 questions about the different components of each deal, but

22 let me ask you this.  When the deal was being negotiated,

23 did people think about the deal in those terms?

24 A    No, we looked at it as a package.  I think the

25 committee considered it a package.  We considered it a

1  package.  We never would have agreed for instance to pay

2  $120 million for disgorgement if it wasn't part of a broader

3  settlement.  We looked at it as part of an entire package

4  settling all the claims.

5  Q    And Ms. Kulnis, just a couple more questions about the

6  DCL plan.  Does the DCL plan include releases for Step 1

7  selling shareholders?

8  A    Yes, it does.

9  Q    And Ms. Kulnis, did JP Morgan seek to include those

10  releases in the DCL plan?

11  A    No, we did not.

12  Q    Would JPM have done a deal without those releases?

13  A    Yes, we would.

14  Q    Ms. Kulnis, there's been some testimony in these

15  proceedings so far about natural recovery.  Do you have an

16  understanding of what the words natural recovery means?

17  A    Yes.  It's the recovery afforded to the parties

18  without any consideration of the LBO claims.

19  Q    Ms. Kulnis, do you know the natural recovery of the

20  noteholders?

21  A    I think it's around $65 to $70 million.

22  Q    And Ms. Kulnis, what would happen to the natural

23  recovery of the noteholders if the enterprise value of the

24  debtors goes up?

25  A    Almost nothing.  It really doesn't increase very much

1  when enterprise value increases because the value really is

2  in the subsidiaries and the senior loans have the

3  guarantees.  So if the senior loan claims are good, not much

4  -- no value really rises to the parent.  It's my

5  recollection that there's one small asset at the parent that

6  would increase in value if the enterprise value increased,

7  but otherwise, the senior loans would get the benefit of the

8  rise in enterprise value because of the guarantees.

9  Q     And so just help me with one concrete hypothetical.

10  If the value of the debtors went up by a $1 billion, how

11  much would the value -- the natural recovery of the

12  noteholders rise, $1 billion?

13           MR. HURLEY:  Objection, Your Honor.

14           THE COURT:  Basis?

15           MR. HURLEY:  It's a hypothetical.

16           THE COURT:  Certainly -- it certainly is.

17           MR. HURLEY:  You can't be concrete with a

18  hypothetical.

19           THE COURT:  Mr. Moskowitz?

20           MR. MOSKOWITZ:  I'm not aware of a blanket

21  preclusion against hypothetical's.  I also think it's a

22  concrete example of -- that goes to the core of arguments

23  that they are making in these cases.

24           THE COURT:  Well, maybe you ought to put it all

25  the way into the concrete, sustained.

1          MR. MOSKOWITZ:  I'm sorry, Your Honor --

2          THE COURT:  Put it --

3          MR. MOSKOWITZ:  Make it concrete?

4          THE COURT:  Yeah.

5          MR. MOSKOWITZ:  Got it.

6          THE COURT:  I mean, you're close enough.

7  (Laughter)

8          THE COURT:  You don't have much farther to go to

9  get there.

10         MR. MOSKOWITZ:  I'll try to make that leap, Your

11  Honor.

12  BY MR. MOSKOWITZ:

13  Q    If the value of the debtors rose by $1 billion, do you

14  know what the value of the noteholder's natural recovery

15  would be?

16  A    The increase in value to the noteholders if the value

17  of the enterprise went up $1 billion is minimal.  I think

18  it's less than $5 million is my recollection.

19  Q    Ms. Kulnis, have you ever been involved in other

20  settlement negotiations besides for the Tribune matter?

21  A    I have.

22  Q    Have those all been in the context of bankruptcy?

23  A    Some in bankruptcy, some outside of it.

24  Q    Ms. Kulnis, based on your experience, how would you

25  compare the Tribune settlement negotiations to other

1  settlement negotiations in which you've been involved?

2  A    These have been much more difficult.  They've taken a

3  lot longer.  The parties have been much more contentious

4  than any other settlements I've had the pleasure of

5  participating in.

6  Q    And Ms. Kulnis, why is that to your knowledge?

7  A    Well, I think the parties feel really strongly about

8  their views.  They're very entrenched.  We started out very

9  far apart in negotiations.  And as time has gone on and the

10  debt has traded and new creditors come into the picture, the

11  dynamic has changed and that's made it very difficult.

12  Q    Ms. Kulnis were there ever times during this long

13  tortured path that you thought that a settlement would not

14  be reached?

15  A    Yeah, there were a couple of times when I was really

16  concerned we weren't going to reach settlement.

17  Q    And Ms. Kulnis are you satisfied with the current

18  settlement?

19  A    Well, as I said, I think it's a little rich in terms

20  of the payment to the notes, but we stretched to get there

21  and ultimately, I think it's the best way to get the company

22  out of bankruptcy right now.

23        MR. MOSKOWITZ:  Thank you, Ms. Kulnis.

24        THE COURT:  Cross examination?  Mr. Hurley, any

25  estimate of how much time you will need for cross?

1          MR. HURLEY:  I think somewhere in the 15, 20

2   minute range.

3          THE COURT:  Okay.

4          MR. HURLEY:  Your Honor, I have some binders, if

5   I could approach, please?

6          THE COURT:  Certainly.  Thank you.

7          MR. HURLEY:  Good morning, Ms. Kulnis.

8          MS. KULNIS:  Good morning.

9          MR. HURLEY:  My name is Mitch Hurley.  I'm with

10  Akin Gump.  We represent Aurelius.  Ms. Kulnis, I want to

11  start just talking briefly about the litigation trust issue

12  that came up in your direct.  You mention that the basis for

13  your belief that the litigation trust claims were valuable

14  is that you were here in Court and you heard testimony

15  concerning whether or not my client thought those claims

16  were valuable.  Do you remember that?

17         MR. MOSKOWITZ:  Objection, misstates the

18  testimony, Your Honor.  I do not believe she said that.

19         THE COURT:  Well, you may answer the question if

20  you are able.

21         MS. KULNIS:  I wasn't actually -- I didn't hear

22  that testimony in Court.  I think technically I had dialed

23  into some calls, but also from reading the pleadings I got

24  the -- I arrived at the view that Aurelius thought that

25  these claims were really valuable.

1                          CROSS EXAMINATION

2  BY MR. HURLEY:

3  Q     Do you have an understanding that Aurelius did a model

4  where it attempted to determine the expected value of

5  certain claims?

6  A     Yes, I've heard about that.

7  Q     Okay.  And were you present or listening to the

8  testimony yesterday that the expected value of those claims

9  was in the neighborhood of $1.8 billion?

10 A     Yes.

11 Q     Okay.  Is that part of what you based your view on

12 that the litigation trust claims were valuable?

13 A     No, frankly, it's not.

14 Q     Okay.  You understand that the valuation that Aurelius

15 has done of the claims relates solely to the claims that the

16 DCL plan proponents propose to release?

17 A     I didn't know that, but that, I guess that that makes

18 sense, I guess.

19 Q     Okay.  You mentioned you're part of a special credits

20 group, right?

21 A     Yes.

22 Q     And the special credits group assists credit officers

23 and manages various distressed credits.  Correct?

24 A     Yes.

25 Q     And it's always distressed credits where the special

1  credit unit gets involved.  Isn't that right?

2  A      No, that's not true at all.

3  Q      Okay.  Do you remember that your deposition was taken

4  on February 16, 2011?

5  A      Yes.

6  Q      Okay.  And you understood in your deposition that you

7  were under oath?

8  A      Yes.

9  Q      Just as you are today?

10  A      Yes.

11  Q      Okay.  Can you do MKO 3, please, and we have a video.

12  A      I don't look very good in that video.

13  (Laughter)

14          MR. HURLEY:  Can you see it?

15          MS. KULNIS:  Yeah, I can.

16          MR. HURLEY:  Okay.

17  (Video deposition playback)

18  BY MR. HURLEY:

19  Q      No, ma'am, the special credits unit became involved in

20  Tribune as you said shortly before Step 2 closed.  Is that

21  right?

22  A      That's correct.

23  Q      And I guess it became involved sometime in November?

24  A      I don't remember if it was November or December.

25  Q      Okay.  I thought you testified on direct that you were

1  involved in discussions concerning Tribune in November.

2  A     We were involved in November of '08 with respect to

3  the bankruptcy filing.  We first became involved in -- the

4  first time I ever, you know, heard about Tribune or got

5  involved in discussions around Tribune were before the step

6  to close.  I don't remember if it was November of December.

7  Q     Okay.  And Step 2 closed on or -- or Step 2 closed on

8  December 20, 2007, right?

9  A     I believe that's true.

10  Q     You were assigned to the Tribune matter by Jeff Zell?

11  A     Yes.

12  Q     And Mr. Zell at the time was the head of the special

13  credit unit?

14  A     Yes.

15  Q     And Mr. Zell instructed you to get in touch with

16  someone named Mr. Kowalczyk [ph] is that right?

17  A     Yes.

18  Q     Mr. Kowalczyk was the banker on the Tribune deal?

19  A     He was the credit risk banker, yes.

20  Q     Okay.  And Mr. Zell instructed you to get in touch

21  with Mr. Kowalczyk to get up to speed on Tribune.  Isn't

22  that right?

23  A     Yes.

24  Q     And you did so?

25  A     Yes.

1  Q     Who is Rog Capadia [ph]?

2  A     He's the managing director in the syndicated and

3  leveraged finance group.

4  Q     And Mr. Capadia had an involvement with Tribune as

5  well.  Is that right?

6  A     Yes.

7  Q     And what was his role?

8  A     He -- I think the syndicated and leveraged finance is

9  handling the syndications of the loans so when the loan was,

10 you know, closed, he was -- he had contact with the company

11 and he dealt with investors who were potentially going to

12 buy into the Tribune debt.

13 Q     Okay.  JP Morgan has an internal risk rating system

14 for credits.  Isn't that right?

15 A     Yes.

16 Q     And the rating system ranges from one to ten ?

17 A     Yes.

18 Q     Ten being the worst, one being the best?

19 A     Yes.

20 Q     And the JPM credit policy requires the special credit

21 unit to get involved when a credit gets to a rating of six

22 or worse.  Is that right?

23 A     I believe that's true in the investment bank, yes.

24 Q     And when a credit gets to a seven, it becomes a

25 criticized credit.  Is that right?

1   A    I believe that's true, yes.

2   Q    And when it becomes a criticized credit, there are

3   reporting requirements that JP Morgan then has to fulfill.

4   Is that your understanding?

5   A    Yes.

6   Q    So it has report publicly with respect to those debts

7   or those credits?

8   A    I think so, yes.

9   Q    Okay.  Now when you became involved with Tribune, do

10  you recall what the rating was assigned to the Tribune

11  credit?

12  A    No, I don't recall.

13  Q    Okay.  In the binder that I've handed you there is a

14  document that is Noteholder Exhibit 670.  I think it's --

15  should be the first page.

16  A    I see, yes.

17  Q    Okay.  And ma'am, this document is an email chain.

18  And I want to start by referring your attention to the

19  second page of NH 670.  And you'll see at the bottom there

20  is an email from Mr. Kowalczyk dated December 21, 2007, 2:28

21  p.m.  Do you see where I am?

22  A    Yes.  Oh, well, I'm sorry, what's the time on that?

23  Q    2:28 p.m.

24  A    Yes.

25  Q    Okay.  You with me?  Now Mr. Kowalczyk is forwarding

1  two you an email that was sent on August 14.  Correct, of

2  the same year?

3  A     That's what it looks like, yes.

4  Q     Okay.  And the email that he's forwarding to you on

5  August 14 is from himself to some other JP Morgan employees.

6  Is that right?

7  A     Yes.

8  Q     Okay.  That email reads Sheila or Stella, please

9  downgrade the ratings from Tribune from a 5- to a 6+.  A

10  downgrade as a result of the most recent quarterly results

11  that are off the bank plan the company provided in April.

12  In addition, the company has provided us with a revised

13  projection for Q3 and for the full year '07, both of which

14  are down from the original plan.  Tim, please put the

15  company on a vulnerable list as well.  Do you see that?

16  A     Yes.

17  Q     And the vulnerable list is a list of credits where the

18  credit was vulnerable to a further downgrade.  Is that

19  right?

20  A     Yes, generally.

21  Q     Okay.  And in Mr. Kowalczyk's email to you in which

22  he's forwarding this earlier 8/14 email, he writes and this

23  is on 12/21/07 which is the day after Step 2 closed, right?

24  A     Right.

25  Q     Mr. Kowalczyk writes to you I wanted to put the Trib

1  down on Grade 3, but wanted to check with you first.  The

2  current ratings Jeff and I had set.  And you understand that

3  was Jeff Zell he was referring to?

4  A     Yes.

5  Q     Head of the special credits unit.  The current ratings

6  Jeff and I have set were 5- post-step loan and 6- post-step

7  2. In July, 23 downgrade Trib to a 6+ when they revised

8  their plan, see below.  Does that refresh your recollection

9  as to what the JP Morgan risk rating was of Tribune when you

10 became involved?  Was it a 6+?

11 A     You know, I don't know.  He says he wasn't to put it -

12 - in July, we downgraded to 6+.  It seems like it is.  I

13 just really don't recall.

14 Q     Mr. Kowalczyk continues in his 12/21 email the day

15 after Step 2 closed and writes, I thought that a risk Grade

16 7 was correct now when Step 2 closed.  Can you let me know

17 if you agree or want to check with Jeff.  Do you see that?

18 A     Yes.

19 Q     And again, that's a reference to Mr. Zell.  Correct?

20 A     Yes.

21 Q     Okay.  And 7 is the grade where it becomes a

22 criticized risk and you have to start reporting.  Isn't that

23 right?

24 A     I believe so, yes.

25 Q     Okay.  Now you write back on the same day, still out

1  sick, do you really think 7 is right with this much leverage

2  and given that we were debating solvency?  I will talk to

3  Jeff, but I think he's out next week.  Do you see that?

4  A     Yes.

5  Q     Okay.  Now you testified in your deposition that you

6  didn't remember writing this email.  Do you remember that?

7  A     Yes.

8  Q     Okay.  But you'd agree that a fair interpretation of

9  that email, ma'am, is that you were suggesting that 7 might

10 actually be too good a rating for this debt as of 12/21/07?

11            MR. MOSKOWITZ:  Objection.

12            THE COURT:  Basis?

13            MR. MOSKOWITZ:  There's no recollection of the

14 email.  He's asking her to speculate as to what it might

15 mean.

16            THE COURT:  Overruled.  You may answer if you are

17 able.

18            MS. KULNIS:  You know, I think I said on my

19 deposition, I don't remember what I meant by this.  I really

20 don't remember this, you know.  It was the end of the year.

21 It was kind of crazy time in the economic cycle.  A lot of

22 stuff was going on.  I don't really remember this particular

23 downgrade or discussion about a downgrade.

24            MR. HURLEY:  Can you please play MK-08?

25 (Video deposition playback)

1  BY MR. HURLEY:

2  Q     And one reason that you gave for the downgrade in your

3  email is that we were debating solvency.  Do you see that in

4  the email?

5  A     Um-hum, yes.

6  Q     Okay.  And it's no secret that prior to Step 2

7  closing, the underwriters including personnel from JP

8  Morgan, were debating whether the company was solvent.

9  Isn't that right?

10 A     It's no secret that we were concerned about this

11 company's solvency, yes.

12 Q     Okay.  You were involved in some of those

13 conversations.  Correct?

14 A     Maybe one or two, but I had just become involved in

15 the case and I don't really have a strong recollection of

16 them.

17 Q     Mr. Kowalczyk was involved in some of those

18 conversations with you though wasn't he?

19 A     I think he probably was.

20 Q     And Mr. Capadia?

21 A     I think probably, as well as, counsel.

22 Q     Okay.  And some other people from other underwriting

23 institutions as well were involved in those conversations

24 about whether the company was solvent before Step 2 closed.

25 Isn't that right?

1   A     I think I participated in one discussion to the best

2   of my recollection, with people from other institutions

3   around solvency.

4   Q     Okay.  And that was before Step 2 closed, right?

5   A     Yes.

6   Q     Now to -- let's see.  The underwriters retained a

7   company called Murray Divine to look at the issue of

8   solvency, didn't they?

9   A     I think maybe counsel for the underwriters retained

10  him, but yes.

11  Q     Okay.  Was it your understanding that Murray Devine

12  never retained by counsel or otherwise was on behalf of the

13  underwriters, assessing whether or not the company was

14  solvent before Step 2 closed, right?

15  A     I don't know that they were assessing whether the

16  company was solvent.  I think that they were looking at the

17  VRC's solvency work.  I'm not sure that they did an

18  independent review of the company's solvency.

19  Q     They were doing some work around the solvency issue on

20  behalf of the underwriters.  Isn't that right?

21           MR. MOSKOWITZ:  Objection, Your Honor.

22           THE COURT:  Basis?

23           MR. MOSKOWITZ:  Beyond the scope of the direct

24  testimony.  I think well beyond.

25           THE COURT:  You may answer if you're able.

1          MS. KULNIS:  As I said, I think they were working

2    on behalf of the underwriters looking at the VRC solvency

3    opinion and trying to help us work through it.

4          MR. HURLEY:  And to your knowledge, Murray Divine

5    never reached a conclusion about solvency.  Is that right?

6          MR. MOSKOWITZ:  Objection, Your Honor.  I just

7    want to caution the witness not to divulge any

8    communications that she may have had with counsel on the

9    subject.  That's one caution for the witness.

10         THE COURT:  All right.  Ms. Kulnis, you

11   understand that?

12         MS. KULNIS:  Yes.

13         THE COURT:  All right.  You may answer

14   accordingly, if you're able.

15         MS. KULNIS:  You know, I only remember talking to

16   him about or hearing from Murray Divine on the VRC solvency

17   opinion.  I don't remember having any discussions or if, in

18   fact, he, Murray Divine, they reached their own conclusion

19   about solvency.

20   BY MR. HURLEY:

21   Q    So you have no recollection one way or the other as to

22   whether Murray Divine reached a conclusion about solvency?

23   A    Yeah, I don't recall.

24   Q    Okay.  Now returning to the exhibit we were looking at

25   before, Ms. Kulnis which is NH-670 and it's the first

1  document in your binder.  You write back -- or I'm sorry.

2  You finished your 12/21 email to Mr. Kowalczyk and you say I

3  suppose we can revise it in the new year.  Do you see that?

4  A     Yes.

5  Q     Okay.  And that's a reference to revising downward the

6  JP Morgan rating of the Tribune credit.  Correct?

7  A     I think it's revising the risk rating.  I'm not -- it

8  seems like I'm saying revise it downward here.

9  Q     Okay.  And Mr. Kowalczyk writes back, okay, but I

10 think it would be better to figure it out as soon as

11 possible.  I hope you feel better.  And you respond, it's

12 all in the same day.  You respond at 5:11 p.m.  I agree.  We

13 don't want to be downgrading a week into the credit.  I'll

14 reach out to Jeff.  Do you see that?

15 A     Yes.

16 Q     And again, that's a reference to Mr. Zell, isn't it?

17 A     Yes.

18 Q     Okay.  Now you don't remember whether, in fact, you

19 ever did reach out to Mr. Zell is in this regard.  Isn't

20 that right?

21 A     I don't remember.

22 Q     Okay.  So if you'd return to the first email by

23 chronology, the last email on the Exhibit 814.

24 A     Yes.

25 Q     And the downgrade that's discussed in 814 is more than

1    four months before Step 2 closed, right?

2    A      Yes.

3    Q      I'm going to ask you some questions now, Ms. Kulnis

4    about your involvement in the negotiation of the

5    settlements.    Obviously, you're aware that these cases

6    involve potential causes of action arising out of the 2007

7    leverage buyout at Tribune, right?

8    A      Yes.

9    Q      Okay.  And you know JPM is a Defendant in those claims

10   that were filed by the committee.

11   A      Yes.

12   Q      You understand that as well?

13   A      Yes.

14   Q      Okay.  And I think you testified on direct that you

15   were involved in the negotiations throughout JP Morgan's

16   involvement, you also were involved in the negotiations of

17   the settlement.   Is that right?

18   A      Yes.

19   Q      Okay.

20   A      There were brief periods when I was on vacation, but

21   generally, yes.

22   Q      Other than when you were on vacation, you were

23   involved on behalf of JP Morgan throughout the negotiations.

24   Correct?

25   A      Of which settlement are you talking about?

1  Q    I think -- I understood your testimony on direct to

2  mean that you were involved through all of the discussions

3  with respect to all the various iterations, but if I'm

4  mistaken, you can tell me.

5  A    I wasn't terribly involved in the discussions around

6  what we call the 375 plan because I was really on vacation

7  then, but generally, with respect to the 450 and the other

8  plan, and the two that became plans, I was involved in

9  those.

10 Q    Um-hum.  And you know that the unsecured creditors'

11 committee filed a complained asserting the LBO causes of

12 action, right?

13 A    Yes.

14 Q    Okay.  And the unsecured creditors' committee is the

15 Plaintiff in that complaint?

16 A    Yes.

17 Q    Now during this entire period of time that you were

18 involved in negotiations, isn't it true that the unsecured

19 creditors' committee never told you its view of the merits

20 of the LBO causes of action?

21 A    I think that's right.  I think that's right.  I never

22 participated in a discussion with them to the best of my

23 recollection about the merits of the causes of action.

24 Q    And the unsecured creditors' committee never conveyed

25 to you what it thought a fair return to the noteholders

1  should be, isn't that also right?

2  A    Well, when they supported the plan, I took that to

3  mean that they thought that that was a fair return to all

4  creditors.

5  Q    When they accepted the deal, but other than when they

6  accepted the deal, the UCC never conveyed to you what they

7  thought a fair return to the noteholders would be, isn't

8  that right?

9  A    I don't know.  We had some discussions in mediation

10  around, you know, topics that I want to be careful not to

11  divulge because they were in mediation.

12  Q    Let's set aside any communications you might have had

13  in mediation.  Other than in mediation during the period of

14  time that you were involved in these settlement negotiations

15  outside the mediation, isn't it true that the unsecured

16  creditors' committee never conveyed to you what it thought a

17  fair return to the noteholders would be?

18  A    Well, the only time outside of mediation we had

19  discussions with the creditors' committee was around the 450

20  plan is my recollection.  And they didn't come to us with a

21  number.  We had a number of negotiations with them, but I

22  don't recall saying, you know, this particular number would

23  be a fair return.  I remember they were trying to get more

24  for the noteholders.

25              MR. HURLEY:  Music 16, please.

1  (Video deposition playback)

2          MR. MOSKOWITZ:  Objection, Your Honor.  I think

3  this probably the second time this has happened now.  I

4  think the video displays that they're showing her actually

5  consistent with the witness's testimony and are not -- they

6  are not being used for impeachment.

7          THE COURT:  Well, I will say that I expect the

8  next question to come from Mr. Hurley and it doesn't.  So

9  Mr. Hurley you have to show the excerpts for the purpose of

10  setting up the question it seems to me.  So is there a

11  question?

12          MR. HURLEY:  Well, I guess I would disagree.  It

13  was my view that the testimony was different than the

14  testimony that she's giving here.

15          THE COURT:  Okay.  So you need to ask a question

16  to establish that, if you can.

17  BY MR. HURLEY:

18  Q    Okay.  Isn't it true that the use -- that the

19  unsecured creditors' committee at least as far as you know,

20  never conveyed its view of what an appropriate return to the

21  noteholders would be?

22  A    When you say an appropriate return, it's hard for me

23  to understand what you mean.  If you're asking me if they

24  told me there was a specific number, I don't recall ever

25  having a discussion with them where they said, you know,  X

1 amount of dollars is an appropriate return to the

2 noteholders.  I remember having discussions with them where,

3 you know, in mediation and outside of mediation.  And

4 outside of mediation, I remember them wanting to get more

5 for the noteholders, but I guess they never -- I don't have

6 any specific recollection about them saying this is a number

7 that we need to get.

8 Q    Well, you actually -- you didn't see the unsecured

9 creditors' committee as kind of partisan advocate on behalf

10 of the LBO claims in connection with the settlements, did

11 you?

12 A    Well, I certainly considered them adverse to us.  They

13 were trying to get more for the unsecured creditors

14 including the noteholders.  They were certainly not siding

15 with me.  They were trying to get more money from the banks.

16 Q    Isn't it true, ma'am, that you saw them as more of a

17 neutral party that was seeking to get the best outcome for

18 all unsecured creditors including the senior lenders?

19 A    I, frankly, didn't think that they were concerned

20 about the senior lenders.  I think they wanted a fair

21 settlement, but the fact that they filed the litigation

22 against the senior lenders told me that they really were

23 trying to get a fair return for the other noteholders and if

24 -- for the noteholders and the other creditors and if they

25 had to sue us to do that, they would.

1  Q     You saw the debtor as a neutral intermediary that was

2  just trying to get a fair settlement for all the creditors.

3  Is that right?

4  A     Yeah, I saw them as trying to facilitate discussions

5  and get a deal done.  I think the debtor was very concerned

6  about getting out of bankruptcy and trying to achieve a fair

7  settlement so that they could achieve that.

8  Q     Now outside of the mediation, I think you testified on

9  direct that you spoke at length at many times with the

10  debtors concerning settlement, right?

11 A     Yes.

12 Q     And you also spoke many times with Oaktree concerning

13 settlement, right?

14 A     Yes.

15 Q     And you spoke many times with Angelo Gordon concerning

16 settlement?

17 A     Yes.

18 Q     And back in April, you also spoke to other members of

19 the Oaktree Group it sounds like.  You made some calls to

20 some of the people in the Oaktree Group trying to get them

21 onboard.  Is that right?

22 A     Yes, not only to the Oaktree Group, but to the larger

23 lender group trying to get support for the settlement.

24 Q     Now during this entire period of time, outside of the

25 context of mediation, you never spoke to Aurelius once.

1  Isn't that right?

2  A     Well, when those discussions were happening, Aurelius

3  wasn't an active participant.  They didn't own the

4  Centerbridge claim, Centerbridge was the senior lender --

5  was the noteholder there, so we were talking to them.

6  Q     I'm sorry, if my question was confusing.  I was

7  talking about any period of time during the settlement

8  negotiations other than during the mediation sessions.  At

9  any time in this case, have you spoken to Aurelius outside

10 the mediation?

11 A     Aurelius only became involved right before the

12 mediation and it's my recollection.  So no, I never -- I

13 don't recall speaking to them outside of mediation.  It's my

14 recollection that they just became a bigger holder of the

15 debt immediately prior to the mediation.

16 Q     So the answer is no?

17 A     The answer is no.

18 Q     Okay.  Can you turn to let's see if I have the right

19 exhibit here.  Let me go to the next exhibit which is MPP-

20 851.  And when you get to that, can you just identify for us

21 and for the record, MPP-851 as another string of emails.

22 And across the top, you'll see there's an email from Mr.

23 Kurtz dated September 29, 2010, 11:25.  He says Kevin Lantry

24 will participate.  Do you see that?

25 A     Yes.

1  Q     And I actually want to focus your attention on the

2  email below that from Mr. Bernstein to Mr. Conlan and others

3  and your copy on that email.  Do you see that?

4  A     Yes.

5  Q     And Mr. Bernstein is counsel for JP Morgan in these

6  cases, right?

7  A     Yes.

8  Q     Okay.  Now Mr. Bernstein has made here a proposal

9  about an alternative settlement structure that JP Morgan is

10 interested in.  Isn't that right?

11 A     Can I take a second to read it, please?

12 Q     Absolutely, take your time.

13 A     Okay.

14 Q     And I want to direct your attention to the paragraph

15 that begins here, the key features of the proposed

16 "alternative settlements" structure.  Do you see that?

17 A     Yes.

18 Q     And the second bullet point down or the second, yeah,

19 bullet down, or hyphenated down.  It says the filed plan

20 would expressly state that it would be amended to reflect a

21 settlement of only Step 1, if the combined settlement is not

22 approved at the 9019 hearing, but a settlement of Step 1

23 only is approved.  Do you see that?

24 A     Yes.

25 Q     And the combined settlement he's talking about is the

1    settlement of both Step 1 and Step 2, right?

2    A      And disgorgement.

3    Q      Right.  And it was the understanding at this time,

4    that Oaktree felt very strongly that any Step 2 settlement

5    had to be severable from Step 1, a Step 1 settlement in case

6    the Court determined that the settlement proposed for Step 2

7    was unreasonable, right?

8    A      That's my recollection.

9    Q      Now you had mentioned some reasons in your direct

10   about why JP Morgan did not support the settlement that was

11   filed on September 28.  Do you remember that?

12   A      Yes.

13   Q      Okay.  And you gave a number of reasons.  I don't

14   think you mentioned whether one of those reasons is that

15   Step 1 settled -- I'm sorry.  The September 28 settlement

16   settled only Step 1 claims, right?

17   A      I think I did mention that, yes.

18   Q      Sorry.  That's not the part you didn't mention, but

19   thank you.  Isn't it also true that JP Morgan's position was

20   overwhelmingly in Step 2 versus Step 1?

21   A      Well, JP Morgan doesn't negotiate only for itself.

22   We're admin agents so we negotiate on behalf of all of the

23   lenders.  Yes, we had a significant position in Step 2, but

24   we also have a -- quite a large position in Step 1.

25   Q      But the position in Step 2 is much larger than JP

1  Morgan's position in Step 1, isn't it?

2  A     It is, but as an administrative agent, we always try

3  to negotiate the best deal for all of our lenders.

4  Q     Um-hum.

5  A     And we were very concerned about leaving the Step 2

6  lenders aside.  They were a large group.

7  Q     The fact that JP Morgan's investment was much larger

8  in Step 2 had no impact at all in JP Morgan's decision that

9  it wanted to settle both Step 2 and Step 1?

10 A     We always wanted to settle both Step 1, Step 2, and

11 disgorgement.  We thought it made the most sense.  In my

12 mind, it didn't make sense to try to reach a settlement that

13 still left a significant piece of litigation out there.

14 Q     Now I just want to talk a little bit about the DCL

15 plan that's on file.  It's understanding that under that

16 plan, the senior lenders are permitted to select all the

17 members of the board of directors, right?

18 A     Yes.

19 Q     Okay.  So Oaktree will choose two, Angelo Gordon one,

20 JP Morgan one, and then all the senior lenders together will

21 choose the remaining the two.  Is that your understanding?

22 A     No, that's not correct.  The remaining two members are

23 chosen by Angelo, Oaktree, and JP Morgan vote two out of

24 three.  So the remaining -- so it's Oaktree gets two, Angelo

25 gets one, JP Morgan gets one, and then the remaining members

1   are selected by the vote of JP Morgan, Angelo, and Oaktree

2   together.

3   Q    Thank you.  And in the summer, early fall of 2010, you

4   had a conversation with at least one member of Tribune

5   management about whether that person would retain his job at

6   the company post emergence, right?

7   A    I don't remember.  And who in particular are you

8   talking about?

9   Q    Randy Michaels.

10  A    I remember having conversations with Randy about

11  whether or not he would retain his position.  I don't

12  remember exactly when they were.

13          MR. HURLEY:  Okay.  Well, I'll try and refresh

14  your recollection.  Can you do MK-60, please?

15  (Video deposition playback)

16          MR. HURLEY:  Sorry and MK-61.  This will clarify

17  --

18          MR. MOSKOWITZ:  You're going to play another one?

19          MR. HURLEY:  Yeah.

20  (Video deposition playback)

21          MR. HURLEY:  Does that refresh your recollection?

22          MR. MOSKOWITZ:  Objection.  The same objection as

23  before, Your Honor.

24          THE COURT:  Overruled.

25  BY MR. HURLEY:

1    Q    Does that refresh your recollection as to when the

2    conversation with Mr. Michaels happened?

3    A    I mean, it seems to me that in the video I'm

4    struggling to figure out when it was.  Yes, I guess it was -

5    - you know, it doesn't really refresh my recollection --

6    Q    Okay.

7    A    -- of when they were.

8    Q    Okay.

9    A    I remember they were in 2010, I can tell you that.

10   Q    Okay.  You have no reason to think that your testimony

11   at your deposition was inaccurate other than that you were

12   struggling to remember it just as you are today, I guess,

13   right?

14   A    Right.

15   Q    Okay.  And during those conversations with Mr.

16   Michaels, you told him that you expected that a number of

17   candidates would be considered for the CEO job, but you

18   certainly didn't rule out the possibility that he might also

19   continue as the CEO post emergence, right?

20   A    Yes.

21   Q    And you also had some conversations with Eddie

22   Hartenstein about his role in the company going forward

23   prior to the settlement of these claims, didn't you?

24   A    Yes.  I remember having a conversation with Eddie.  I

25   don't remember if it was prior to the first settlement or

1  not.  Again --

2  Q     Okay.

3  A     -- I'm really struggling.  It seems like it was a long

4  time ago.

5  Q     Who is Mr. Hartenstein?

6  A     He's the -- currently, one of the co-presidents and

7  he's the publisher of the LA Times.

8  Q     So he's a member of the four person executive counsel

9  of Tribune now, right?

10  A     Yes, but at the time of my first conversation with

11  him, he wasn't.

12  Q     Right.  And he became a member of the four member

13  executive counsel sometime in October of 2010?

14  A     I think that's right.

15  Q     And that's the -- those are the -- the four members of

16  the executive counsel are the most senior officers of the

17  company. Correct?

18  A     Yes.

19  Q     Okay.  Prior to that, when you spoke to him, what was

20  his role?

21  A     He was a publisher of the LA Times.

22  Q     Okay.  And I'll represent to you that at your

23  deposition you indicated you thought the conversation with

24  Mr. Hartenstein about him becoming CEO took place sometime

25  early in 2009.  Does that refresh your recollection at all?

1  A      It was a long time ago.  I think that's probably what

2  I said.  You know, I really don't remember when that

3  conversation was.

4  Q      Okay.

5  A      That seems like it was a long time ago.

6  Q      Okay.  Is it possible it was early 2010?

7  A      I don't think so, but I guess it's possible.

8  Q      Okay.  Do you remember whether or not Mr. Hartenstein

9  told you that at that time in addition to speaking you, he

10 also was speaking to Jimmy Lee of JP Morgan?

11 A      I think Jimmy is the one who asked me to speak to

12 Eddie.

13 Q      Okay.

14 A      So from time to time people call Jimmy and say they

15 want -- you know, they're interested in a role and Jimmy

16 asked them to call me.

17 Q      Okay.  I'd like to direct your attention then, please,

18 ma'am, to MPP-757 which is the next exhibit in the binder.

19 A      757 did you say?

20 Q      Yes.  And you'll see that it's an email string

21 exchange between Maggie Wilderader [ph] and Jimmy Lee.  And

22 before we start talking about the document, ma'am, and take

23 your time if you want to read it and just let me know when

24 you're ready to answer some questions.

25 A      Okay.

1    Q      Okay.  First of all, do you know who Ms. Wilderader

2    is?

3    A      She's a member of the board at Tribune.

4    Q      Okay.  And she's also a member of the special

5    committee of the board of directors of Tribune, right?

6    A      Yes.

7    Q      The one that was formed in August of 2010?

8    A      Yes.

9    Q      Okay.  And I'm going to direct your attention to the

10   email from Ms. Wilderader to Mr. Lee at the bottom of the

11   page and I guess forwarded you that.  For the record, who is

12   Mr. Lee?

13   A      He's a vice chairman at JP Morgan.

14   Q      Currently, he's the vice chairman at JP Morgan?

15   A      Yes.

16   Q      Do you know what his title was in February 2010?

17   A      Also vice chairman.

18   Q      Okay.  And I want to direct your attention to the

19   11:18 a.m., February 10, 2010 email from Ms. Wilderader to

20   Mr. Lee.  And she writes, hi, Jimmy, I hope you are "working

21   from home" today.  What a mess.  Anyway, Eddie Hartenstein,

22   the publisher of the LA Times and former CEO of Direct TV

23   would love to speak with Jamie or you for a few minutes

24   about the Tribune Company and his thoughts of the company's

25   prospects, leadership, et cetera.  I think it would be

1  helpful and it would only take about ten minutes.  Maybe you

2  could speak with him first and if you felt it appropriate,

3  you could have Jamie speak with him.  I think Eddie is one

4  of the top leaders at Tribune and he's really turned the LA

5  Times around to solid profitability.  Can you let me know

6  and I'll have Eddie set up a call. Your friend who is always

7  looking out for JPM!  Maggie.  Do you see that?

8  A     Yes.

9  Q     Okay.  And you see what that email obviously is dated

10 February 10, 2010?

11 A     Yes.

12 Q     And you said that it was Mr. Lee who actually

13 suggested that you speak to Mr. Hartenstein, right?

14 A     Yes.

15 Q     And does this document refresh your recollection as to

16 whether the conversation you had with Mr. Hartenstein

17 actually was in early 2010?

18 A     Actually, it doesn't refresh my recollection.

19 Q     Based on reviewing the document, does it cause you to

20 believe that your conversation was in early 2010?

21          MR. MOSKOWITZ:  Objection, asked and answered.

22          THE COURT:  Sustained.

23 BY MR. HURLEY:

24 Q     Did Mr. Lee ever mention to you that there were any

25 other candidates for the position of CEO for Tribune?

1   A      I don't know that he said candidates.  From time to

2   time, he would call me and tell me that people reached out

3   to him and they were interested in a role at Tribune,

4   sometimes as a CEO, sometimes as a board member, and he

5   would just ask them to call me.  Jimmy knows a lot of people

6   and a lot of people reach out to him.

7   Q      Did Mr. Lee ever mention that one of the candidates

8   for CEO was Ms. Wilderader?

9   A      No, he -- I never spoke to him about that.

10  Q      On your direct, you talked about a conversation with

11  Mr. Milwany.  Do you remember that?

12  A      Yes.

13  Q      And what was the date of that conversation?

14  A      I had a number of conversations with him from the time

15  we signed the settlement support agreement in April till the

16  time it was terminated.

17  Q      Do you remember about how many?

18  A      I don't know, 50, 75.  For a while, we spoke, you

19  know, a couple of times a week.  There were a lot.

20  Q      Um-hum.  And do you remember when he expressed a

21  particular view that you attributed to him about what he

22  thought of the settlement, do you remember when he expressed

23  that -- when that meeting was?

24  A      That was after the examiner report came out.

25  Q      Can you be any more specific than after July 26, 2010?

1   A       No, I really can't, I don't remember.  I had a number

2   of conversations with him.

3   Q       Can you remember --

4   A       When they were --

5   Q       Right.

6   A       -- I really don't, sorry.

7   Q       Can you actually remember the conversation that you

8   had with him where he supposedly told you what his view of

9   the settlement was?

10  A       Yeah, I remember having that phone conversation with

11  him.

12  Q       Okay.  So it was on the telephone?

13  A       Yes.

14  Q       Was anyone on the telephone with you besides you and

15  Mr. Milwany?

16  A       No, not to my knowledge.

17  Q       About how long did the call last?

18  A       I don't remember.

19  Q       Okay.  And you can't remember any more than it was

20  after July 26, 2010 in terms of the date?

21          MR. MOSKOWITZ:  Objection, asked and answered.

22          THE COURT:  Overruled.  You may answer.

23          MS. KULNIS:  I remember it was after the examiner

24  report was issued.  I don't remember if it was after just

25  the summary was issued or after the full report was issued.

1  So sorry, I don't really have any more recollection than

2  that.

3          MR. HURLEY:  And you know that the -- well, do

4  you remember that it was before or after the April

5  settlement support agreement had fallen apart?

6          MS. KULNIS:  It was before the agreement was

7  terminated.

8          MR. ZENSKY:  Your Honor, I have to rise to move

9  to strike the testimony then because this is the second time

10 in this trial they've elicited testimony that we were

11 blocked in discovery.  That's during the common interest

12 period that they claim protected all communications between

13 Centerbridge and the debtors and JPM and any party to the

14 planned support agreement.  So we now have on the record a

15 discussion we could not discover during discovery.

16         MR. HURLEY:  I'm very glad Mr. Zensky said this

17 because he was wrong about it yesterday and he's wrong about

18 it today.  Here's why.  There is a common interest

19 privilege, but as they know well, that protects only

20 communications that are actually privileged.  A

21 communication between Ms. Kulnis and Mr. Milwany is between

22 two business people.  There's no privilege to that

23 communication.  There's no legal issues discussed during

24 that communication that are otherwise privileged.  I don't

25 think that was the testimony.  And in response to Mr.

1  Zensky's point about blocking discovery, we have Ms. Kulnis

2  up here.  There is absolutely no blockage to anything

3  related to this at her deposition and I know because I

4  defended that deposition.

5          THE COURT:  The motion is denied.

6  BY MR. HURLEY:

7  Q    Your counsel showed you the two term sheets on your

8  direct.  Do you remember that?

9  A    Yes.

10 Q    And between the first term sheet and the second term

11 sheet Step 2 avoidance claims were settled, right?

12 A    I wouldn't --

13 Q    Let me ask a different question.  I'm going to

14 withdraw that.  In the first term sheet, the Step 2

15 avoidance claims were not settled, right?

16 A    Correct.

17 Q    And they were in the second term sheet, right?

18 A    Correct.

19 Q    Okay.  Do you know that the face value of the Step 2

20 avoidance claim was approximately $2.1 billion?

21 A    I think that's right.

22 Q    Okay.  And the additional consideration that was

23 provided in Step 2 for settling the Step 2 avoidance claims

24 was about $74 million, right?

25 A    No, that's not the way we looked at it.

1    Q     When you saw we, you mean JP Morgan?

2    A     JP Morgan and I think the creditors' committee.  This

3    was a package deal.

4    Q     Well, if you would restrict yourself to JP Morgan

5    rather than --

6    A     JP Morgan and the lenders that I spoke to including

7    Angelo Gordon and Oaktree.  We didn't look at it as an

8    increment to the first term sheet.  This was in my mind an

9    entirely new deal.  It was an entirely new deal and there

10   wasn't something attributed to Step 1 and something

11   attributed to Step 2.  It was part of a whole package of

12   settling all the claims.

13   Q     Are you able to identify the amount of consideration

14   that was provided for the settlement of the Step 2 avoidance

15   claims?

16   A     There wasn't separate consideration for anything,

17   except for disgorgement.  It was all part of the whole

18   package.

19   Q     In terms of the --

20   A     The consideration increased from the first term sheet

21   to the second, but it was all part of the same package.

22   Q     And in terms of the additional consideration that

23   you've identified, setting aside the litigation trust, none

24   of the additional money that was being paid, $74 million

25   went to the senior noteholders, right?  That actually went

1  to -- sorry, withdraw that question.  None of the additional

2  considerations providing being -- that was being provided

3  outside of the moneys paid for disgorgement as you said

4  which was separate and the litigation trust, none of that

5  additional value went to the noteholders.  Isn't that right?

6  A      That's right.

7             MR. HURLEY:  Thank you.

8             THE COURT:  Is there any other cross examination?

9  (No audible response)

10             THE COURT:  All right.  Redirect?

11                    REDIRECT EXAMINATION

12  BY MR. MOSKOWITZ:

13  Q      Good morning, again, Ms. Kulnis.

14  A      Good morning.

15  Q      Ms. Kulnis, you were asked in your cross examination

16  about the value of the litigation trust.  Do you recall that

17  examination?

18  A      Yes.

19  Q      Okay.  Ms. Kulnis, do you have an understanding of

20  what claims go into the litigation trust and can be pursued

21  by the litigation trust under the DCL plan?

22  A      Yes, there's a lot of claims.  There's -- to name a

23  few, claims against the Step 2 shareholders, against the

24  advisors, the directors and officers, Morgan Stanley, I

25  think VRC.  All those claims are put into the litigation

1  trust.

2  Q    And are there any intentional fraud claims that go

3  into that litigation trust?

4  A    Yes, there are.  Those were as a result of the

5  examiner's report, the intentional fraud claims were put

6  into there.

7  Q    And Ms. Kulnis, based on your what you said before,

8  based on your review of the pleadings, based on your review

9  of responsive statements, the plans, your involvement in

10  this case, do you have a view as to what Aurelius' -- what

11  Aurelius has said about the value of the claims going into

12  the litigation trust?

13  A    Yes, I believe they put a lot of value on those claims

14  and thought that -- and thought that they would, you know,

15  that they were worthwhile to pursue.

16          MR. HURLEY:  Objection, Your Honor, I'd move to

17  strike unless the foundation for that testimony can be laid.

18          MR. MOSKOWITZ:  I think, Your Honor, that in her

19  prior testimony she --

20          THE COURT:  Motion is denied.

21  BY MR. MOSKOWITZ:

22  Q    Okay.  Ms. Kulnis in your cross -- in the cross

23  examination, you were asked a number of questions about

24  whether JP Morgan had a greater position in Step 1 versus

25  Step 2.  Do you recall that?

1    A    Yes.

2    Q    Ms. Kulnis are you familiar with whether or not the

3    credit agreement has a sharing provision attached to it?

4    A    Yes, it does.

5    Q    And can you describe what that provision provides?

6    A    The sharing provision says that no lender can get a

7    better recovery than its pro-rata -- than another credit in

8    the agreement.  So to the extent that some lender gets more

9    than its pro-rata share, it has to be shared with other

10   lenders in the deal.

11   Q    So if you were -- so if there was a settlement just of

12   Step 1 and recoveries came in in respect to Step 1, under

13   the sharing provision, would those recoveries have to be

14   shared with the Step 2 lenders?

15   A    Yes, they would.

16   Q    Ms. Kulnis, did the Oaktree, Angelo Gordon September

17   term sheet enforce a sharing provision?

18   A    Yes, it did.

19   Q    Ms. Kulnis, you were asked some questions about the --

20   I think if you knew about the face value of the Step 2

21   avoidance claims.  Do you recall that testimony?

22   A    Yes.

23   Q    And I think it was suggested to you that the face

24   value of those claims is greater than $1 billion.  Do you

25   recall that?

1  A     Yes.

2  Q     Ms. Kulnis is the face value of a claim the same as

3  how much you can actually recover on a claim?

4           MR. HURLEY:  Objection, Your Honor, foundation.

5  The witness isn't a lawyer.  I don't know what the basis for

6  that answer could be.

7           THE COURT:  Sustained.

8           MR. MOSKOWITZ:  Ms. Kulnis, do you have an

9  understanding of what face value means?

10           MS. KULNIS:  Well, in that question, I took it to

11  mean the amount of the debt related to Step 2, the amount of

12  the senior debt.  That's how I interpreted that question.

13           MR. MOSKOWITZ:  And my next question is not as a

14  legal matter, but as a practical matter, depending on how

15  much there's available to distribute, do you have an

16  understanding as to whether a Step 2 lender could get the

17  same as their face amount in all cases?

18           MS. KULNIS:  I'm sorry, I don't quite follow

19  that.

20           MR. HURLEY:  Objection.

21           MR. MOSKOWITZ:  I object as well.

22  (Laughter)

23           MR. MOSKOWITZ:  We'll move on.

24  (Laughter)

25           THE COURT:  You know, sometimes it's really hard

1  for me just not to say anything.

2  (Laughter)

3          MR. MOSKOWITZ:  Ms. Kulnis, just a couple more

4  questions.  You recall that the DCL plan provides for a $120

5  million disgorgement settlement.  Is that correct?

6          MS. KULNIS:  Yes.

7          MR. MOSKOWITZ:  Is there anything that has to

8  happen before the $120 million can go to the noteholders

9  from the perspective of the unsecured creditors?  Withdrawn.

10  Ms. Kulnis, with respect to the $120 million disgorgement

11  settlement, do you have an understanding as to whether the

12  unsecured -- the $70 million has to go first to the

13  unsecured creditors before that $120 million can go to the

14  noteholders?

15          MR. HURLEY:  Objection, leading, Your Honor.

16  It's pretty clear that she didn't have the answer to that

17  question --

18          THE COURT:  Well --

19          MR. HURLEY:  -- the first time around.

20          THE COURT:  -- sustained as to form.

21  BY MR. MOSKOWITZ:

22  Q    Ms. Kulnis, do you have an understanding as to what

23  the general unsecured creditors get under the DCL plan?

24  A    Yes.  The general unsecured creditors of the

25  subsidiaries get paid in full and the general unsecured

1   creditors of the parent get a return, you know, roughly

2   equivalent in the cents on the dollar to the bonds.

3   Q      And the $120 million disgorgement component, do you

4   have an understanding as to whether that's part of the DCL

5   plan?

6   A      Yes, that goes to the senior noteholders.

7   Q      And do you have an understanding as to whether the

8   parent creditors have to -- the parent unsecured creditors

9   have to be paid off first before the $120 million can go to

10  the noteholders?

11  A      They don't have to be paid in full, no.

12  Q      But do they have to -- do they share pro-rata at the

13  parent?

14  A      In the $120 million, no.  That $120 million goes just

15  to the notes.

16  Q      Fair enough.

17  A      They have to have a similar recovery to the

18  noteholders to -- it's my understanding, my lay person's

19  understanding of how this all works.

20  Q      Um-hum.

21  A      Is that by giving the $120 million to the senior

22  notes, we had to raise the recovery to the other GOC's at

23  the parents so that they got a similar recovery.

24              MR. MOSKOWITZ:  Thank you, Ms. Kulnis.

25              MR. ZENSKY:  Can we have one moment to confer?

1          THE COURT:  Certainly.

2          MR. ZENSKY:  Your Honor, if it would be

3    permissible if we took a short break now?

4          THE COURT:  Well --

5          MR. ZENSKY:  Rather than trying to do this at

6    counsel table?

7          MR. MOSKOWITZ:  I would prefer that they finish

8    with the witness, Your Honor.

9          THE COURT:  And I would, too.  And we're going to

10   break at ten of 12:00 today.  So can we do a break and

11   finish recross within that timeframe?

12         MR. ZENSKY:  Yes.

13         THE COURT:  Okay.  Take a very short break.

14         MR. ZENSKY:  Thank you.  We appreciate it, Your

15   Honor.

16         MR. HURLEY:  Thank you.

17   (Recess from 11:27 a.m. to 11:33 a.m.)

18         THE COURT:  All right.  Mr. Hurley are you ready?

19         MR. HURLEY:  Yes, Your Honor, just a couple of

20   questions more.

21                    RECROSS EXAMINATION

22   BY MR. HURLEY:

23   Q    Ms. Kulnis, you testified I think on redirect that if

24   -- because of the sharing agreement there would be sharing

25   between Step 1 and Step 2 lenders, even under the September

1  28 agreement, right?

2  A    Yes.

3  Q    Okay.  Now you understand, however, if there were --

4  if Step 2 were to be avoided that there is certainly no

5  guarantee that Step 2 would be permitted to share in any

6  recoveries of Step 1.  Do you understand that?

7  A    No, actually I --

8           MR. MOSKOWITZ:  Objection.  Objection.  I think

9  it's the same objection that they lodged with respect to

10 calling for a legal conclusion or legal testimony.

11 BY MR. HURLEY:

12 Q    I'll withdraw it.  Under the DCL plan, the parent

13 general unsecured creditors are getting the same percentage

14 recovery as the senior noteholders.  Is that your

15 understanding?

16 A    That's my understanding.

17 Q    Okay.  Now do you understand that PHONES notes are

18 subordinated to the senior noteholders and -- or sorry.  Are

19 subordinated to the noteholders, but not subordinated to the

20 GOC's, general unsecured creditors?

21 A    It's not clear to me that they're not subordinated to

22 all of the GOC's.

23 Q    Okay.

24 A    I've never actually read the subordination agreement

25 so I'm not really sure.  I know they're subordinated to the

1   noteholders.  I'm not really sure about the rest of the

2   GOC's.

3   Q    And if it were true that the noteholders enjoy

4   subordination benefit that the GOC's don't, you'd agree it

5   wouldn't be appropriate for those classes of creditors to

6   get the same recovery, wouldn't you?

7                MR. MOSKOWITZ:  Objection, same --

8                THE COURT:  Sustained.

9                MR. HURLEY:  Okay.  That's all I have, Your

10  Honor.

11               THE COURT:  All right.  Thank you, Ms. Kulnis,

12  you may step down.  Okay.  Does it make sense to start

13  Professor Black or should we just adjourn now?

14               MR. BENDERNAGEL:  Well, I think it would be

15  helpful to inform you of an issue that we may -- that may

16  come up with respect to Professor Black and maybe that's the

17  best way to use the time now between the break and maybe the

18  break is the best time to try and, you know, work on

19  resolving this issue.

20               THE COURT:  Okay.

21               MR. BENDERNAGEL:  Mr. Zensky approached me at the

22  beginning of the Court today and he made two observations

23  both of which were accurate.  One was that we had provided

24  him yesterday during the day a revised report from Mr. Black

25  that made certain corrections that Mr. Black had indicated

1  at his -- the second day of his deposition he had planned to

2  make in the record.  We then later in the day sent over a

3  number of potential demonstratives to use in connection with

4  his testimony. There were a lot of demonstratives and they

5  got there a little late and for that I apologize, that's my

6  fault.  I was in Court yesterday afternoon.  And what he's

7  made -- the point he made with me this morning is certain of

8  the demonstratives are in his view, new work that he hasn't

9  had an adequate time to look at or he's going to object to.

10  And I think I'd like the opportunity to talk to him over the

11  lunch break. Mr. Ducayet is going to handle Mr. Black's

12  examination so obviously he ought to be involved in that

13  regard.

14         And to the extent -- our view is that most with

15  the exception of one or two of the sensitive -- the new --

16  the sensitivity analysis that we had hoped to show you are

17  not new, they're in his report.  The others are things that

18  he has been thinking about and we've been thinking about as

19  the evidence has rolled in as the expert depositions

20  completed last week.  But we're willing to talk to Mr.

21  Zensky about that.  We're not trying to, you know, take

22  advantage of the timeframe.  We're not giving him an

23  opportunity to look at the stuff.  And if he needs, you

24  know, adequate time to look at it, we'll give him adequate

25  time to look at it.

1                THE COURT:  Well --

2                MR. BENDERNAGEL:  And if you tell us you can't

3     put those sensitivity analysis in because we're too late,

4     well we won't put them in.

5                THE COURT:  Would you be able to move to the next

6     witness?

7                MR. BENDERNAGEL:  I can check.  I think that

8     might be a little difficult because I haven't asked JP

9     Morgan if Mr. Fachela [ph] is here or ready to do it.  You

10    know, obviously I'd be glad to do that, but they may not

11    think that was such a hot idea, but we can check and see.

12    And, you know, obviously, the noteholders might not think

13    that's such a hot idea because they were planning on doing

14    Mr. Black.  Now this comes at the very end of Mr. Black's

15    direct testimony and the like.  And my sense is unless you

16    start cutting back Mr. Black, we're going to use our two

17    hour exception with Mr. Black because he is the longest of

18    our expert witnesses and the like, but we'd be glad to talk

19    about that over lunch.  But I thought it will be important

20    to tell you we have that issue and work with Mr. Zensky and

21    JPM or whoever else has to be involved in the discussion to

22    try and make this thing flow smoothly.

23                THE COURT:  Thank you.

24                MR. KAMINETZKY:  Just Ben Kaminetzky of Davis

25    Polk for JP Morgan as agent.  Mr. Fachela is not in town so

1    and for -- Dr. Fachela.  So unfortunately, that's not an

2    option.

3                THE COURT:  All right, thank you.

4                MR. ZENSKY:  Your Honor, David Zensky of Akin,

5    Gump, Strauss, Hauer & Feld for the record.

6                Mr. Bendernagel is right, I approached him this

7    morning.  We were served with an amended report yesterday

8    afternoon at some point.  The amended expert report itself

9    does make corrections that were discussed to some degree at

10   the deposition, so I have no objection to the report.  It's

11   a little late in the day to get it, but we can proceed and I

12   assume we'll get the same degree of latitude if we have to

13   make any corrections in our reports.

14               My objection does go to the proposed

15   demonstratives which contain substantial new work that was

16   done that may or may not fit to the 5,000 numbers on the

17   spreadsheet that I got yesterday afternoon.  It is

18   impossible for me to be in a position to examine the witness

19   without having deposed him or having had time to review

20   that.  So there is an objection to several of the slides

21   that reflect this, these purported new sensitivity analyses.

22   It doesn't go the thrust, I think of his examination.  His

23   examination is about his report and these are add-ons so to

24   speak.

25               So we would be greatly prejudiced if they're

1  allowed to use the new work product getting -- excuse me,

2  receiving it the night before his examination.  But I don't

3  suggest we go out of order either.  Everyone's ready for the

4  main part of Mr. Black's testimony.

5           MR. BENDERNAGEL:  Your Honor, let's -- why don't

6  you give us an opportunity to talk to Mr. Zensky.  Maybe we

7  can make it more possible to him to look at these things.  I

8  don't think they're quite -- the problems are quite as

9  insurmountable as he may be suggesting and maybe we can

10  convince him of that.  You know, the sensitivities are just

11  designed to talk about how the range of reasonableness moves

12  around if you make certain changes.  And that's all

13  highlighted, I mean, previewed in his written testimony

14  because he talks about five or six sensitivities.  He models

15  some of those and he's modeled some additional ones.  It

16  gives you the point.  We don't -- maybe we don't need all

17  seven or eight and we can work that out over lunch.

18           THE COURT:  Okay.  Anything else before we break?

19  (No audible response)

20           THE COURT:  We'll reconvene at 1:15.  Court will

21  stand in recess.

22  (Recess from 11:40 a.m. to 1:17 p.m.)

23           MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

24  the debtor.  I think I have good news.  Mr. Zensky and Mr.

25  Ducayet spoke over the lunch hour, and I believe -- at least

1  I've been told -- that they've sort of worked out their

2  differences on this issue, and with that, I'll introduce Mr.

3  Ducayet, my partner, and we can move forward with Mr. Black.

4           THE COURT:  Very well.

5           MR. DUCAYET:  Good afternoon, Your Honor.

6           THE COURT:  Good afternoon.

7           MR. DUCAYET:  Your Honor, as a housekeeping

8  matter, can I approach and give you set of the

9  demonstratives?

10          THE COURT:  You may.  A set for my law clerk as

11 well.  All right.  Mr. Black, will you stand and be sworn

12 in, please?

13          THE CLERK:  Raise your right hand and place your

14 left hand on the bible.

15                    BERNARD BLACK, SWORN

16          THE CLERK:  Please, be seated.  Please make sure

17 the microphone's close to you.  State your full name, for

18 the record, and spell it.

19          THE WITNESS:  Bernard Steven Black.

20          THE CLERK:  Thank you, sir.

21          THE WITNESS:  Thank you.

22          THE CLERK:  Please spell it.

23          THE COURT:  Spell your last name, sir.

24          THE WITNESS:  Black, as in the color.

25          THE CLERK:  Thank you.

1          MR. DUCAYET:  Good afternoon, Professor Black.

2                    DIRECT EXAMINATION

3    BY MR. DUCAYET:

4    Q    Could you please state your current position?

5    A    Yes, I am the Nicholas J. Chibria [ph] professor at

6    Northwestern University, and I have positions in the law

7    school and in the Kellogg School of Management in the

8    department of finance, and I'm also a faculty associate at

9    Northwestern's Institute for Policy Research.

10   Q    And how long have you held that position -- or those

11   positions?

12   A    I moved to Northwestern in the fall of 2010.

13   Q    And prior to the fall of 2010, where were you

14   employed?

15   A    I was employed -- I was at the University of Texas,

16   where I had a similar joint law and finance position, so I

17   was, you know, a chaired professor in the law school and a

18   professor of finance in the McCombs School of Business from

19   2004 until last fall.

20   Q    Okay.  And prior to that position, where were you

21   employed?

22   A    So prior to Texas, I was at Stanford Law School, as a

23   professor of law from 1998 until 2004.  Prior to that, I

24   started teaching at Columbia in 1988, stayed there, got

25   tenure until 1998, except for a year off in Russia, to work

1   on Russian legal reform.  Prior to that -- I probably should

2   go forward chronologically instead of backwards, so

3   undergraduate degree in physics at Princeton.  I went to

4   graduate school in physics at University of California at

5   Berkeley.  I stayed there for four years.  I was about a

6   year short of finishing my dissertation, and I decided

7   physics isn't really what I want to be doing, so I went to

8   law school.  I went to law school at Stanford, graduated in

9   1982.  I then clerked for Judge Patricia Wald on the D.C.

10  Circuit Court of Appeals.  I then went to SCAD NARPS [ph] in

11  New York, and I was basically a corporate associate in their

12  mergers and acquisitions group from then until early 1987,

13  so about three-and-a-half years.  And then, for 1987 and

14  1988, I was a special counsel to SEC Commissioner Joseph

15  Grundfest, and then I went to Columbia after that.

16  Q     Okay.  And you've testified about your academic

17  career.  Do you have any business experience, sir?

18  A     Yes, I do.  So three principle sources.  First, I've

19  been an outside director of two public companies.  The first

20  was a leverage buyout company called Homeland Stores.  It

21  runs a chain of about 100 supermarkets in Oklahoma, and I

22  was on their board of directors from 1989 until 1996.  I was

23  chair of the audit committee, and then they went bankrupt,

24  and the creditors took over, and they appointed their own

25  directors.  I was then an outside director of Kookmin [ph]

1   Bank, which is the largest commercial bank in Korea -- it's

2   listed on the New York Stock Exchange -- from 2003 until

3   2005, where I was on the risk strategy -- the risk-

4   management committee and the management-strategy committee.

5   I'm also a part-owner and a principle in an internet

6   business, an academic website, called SSRN, social science

7   research network, which is where scholars post working

8   papers and published articles across accounting, finance,

9   economics, law, political science, and a host of other

10  disciplines that, quite possibly, you haven't heard of, but

11  it's actually a major website.  We have let's call it 10

12  million downloads of academic papers every year, which is a

13  lot of people reading these dry, academic papers.

14  Q    Well, let's talk about that in terms of academic work.

15  Have you developed any particular areas of focus in your

16  academic career?

17  A    Yes, so my areas of expertise that I think are

18  relevant to this case are going to be, first -- let me call

19  it joint expertise in law and finance, so a substantial part

20  of my research is in a field that is literally called law

21  and finance, which is a blending of the two separate

22  disciplines.  This also has a lot to do with positions in

23  both departments.  And so out of that, I'm certainly

24  comfortable with finance, comfortable with valuation.  I

25  teach a corporate finance class.  I've also done a lot of

1  research on corporate governance and corporate law, and so

2  that's going to be a second area of expertise is how do

3  directors and officers behave, how do financial advisors

4  behave.   A third area of expertise is going to be corporate

5  acquisitions, including leverage buyouts, where I'm a co-

6  author of a textbook, the title of which is *The Law and*

7  *Finance of Corporate Acquisitions*.   And so as part of that

8  textbook, we cover leverage buyouts, and we cover the

9  taxations of acquisitions and a whole bunch of other issues

10  surrounding corporate acquisitions.

11  Q    Okay.  And you mentioned your finance area of focus.

12  Do you actually publish in finance journals?

13  A    Yes, I do.  So I do some of my publishing in law

14  reviews.  I do some of my publishing in finance journals.

15  And in my CV that's at the back of my report, you'll see,

16  you know, I've got a paper published last year in the

17  *Journal of Financial Economics*, which is one of the

18  recognized three top finance journals in the world.  I'm

19  proud of that.  I've got another one coming out later this

20  year in the *Journal of Financial Economics*.  So my

21  publishing is a mix of law journal and finance journal.

22  Q    Okay.  Professor Black, do you have any particular

23  expertise in valuation?

24  A    I know finance, I teach finance, and therefore, I

25  teach valuation, because valuation is at the core of

1  finance.  So I'll teach how do you value assets and

2  discounted cash flow.  I don't teach a course that's

3  specifically about valuation of companies.  Such courses

4  exist in business schools, so I don't go into nearly the

5  same depth that one would in such a course, but I'm

6  certainly comfortable with principles of valuations.

7  Q    And what about the area of solvency analysis?  Do you

8  have any particular expertise in that area?

9  A    So solvency analysis is relevant for leverage buyouts,

10  and so leverage buyouts are part of my corporate

11  acquisitions expertise.  I also teach fraudulent conveyance

12  law in my corporations class.  So I have a separate section,

13  where we just walk through what are the protections for

14  creditors in corporate transactions, and one of the

15  important ones is fraudulent conveyance law, so I teach

16  fraudulent conveyance law there.

17  Q    Okay.  And are you familiar with decision-tree

18  analysis?

19  A    Yes, I am.  I teach decision-tree analysis in my

20  corporate finance class.  I use an example of a litigation

21  settlement and how one can use the decision-tree approach or

22  decision-tree methodology to highlight the judgments that

23  have to be made in deciding whether and on what terms to

24  settle a case.

25  Q    Okay.  And are you familiar with the area of

1   probability analysis?

2   A       So a lot of my research is quantitative empirical

3   research.  I'm working with data.  I'm running empirical

4   tests.  I'm running statistical tests.  I'm computing

5   probabilities.  I'm computing correlations.  So certainly,

6   I'm very familiar with probability and statistics and what's

7   called econometrics, which is the application of statistics

8   to economic problems.

9   Q       And do you teach any sort of courses or workshops or

10  anything along those lines?

11  A       Well, we've started -- I started, last year, running a

12  weeklong summer workshop on research designed for causal

13  inference, coming out of my belief that many people doing

14  empirical research in law and political science and other

15  areas basically don't know how to do causal inference right,

16  because, in a lot of cases, even in the graduate training,

17  they don't get taught how to do it right.  So our goal in

18  this weeklong workshop, we bring in world-class scholars.  I

19  teach -- a couple of sessions in that workshop is to provide

20  training to generally graduate students and faculty, people

21  already with substantial training on an effect, how to do

22  causal inference right, given modern methods.

23  Q       Now, Professor Black, do you have any expertise in

24  bankruptcy law?

25  A       I have some expertise in bankruptcy and the bankruptcy

1   process.   To the extent that bankruptcy very often involves

2   valuation issues, I am comfortable with valuation issues.

3   To the extent that this bankruptcy involves a leverage

4   buyout and fraudulent conveyance issues, I'm comfortable

5   with understanding leverage buyouts, understanding how they

6   work, understanding the fraudulent conveyance constraints on

7   leverage buyouts.   When it comes to the technical aspects of

8   the bankruptcy law, I was not previously an expert, so I had

9   to learn in the course of my work on this case about

10  specific, relevant provisions of the bankruptcy law.

11  Q      And what did you do in that regard?

12  A      So I did a number of things.  I began, when I was

13  originally engaged early last year, by just simply trying to

14  understand what the issues were.  At that time, the law firm

15  of Sidley Austin gave me a series of 15 or 20 memos on

16  different legal issues that were involved in this case,

17  ranging from things I know, like directorate and offers and

18  liability, to things that I didn't know that were more

19  technical bankruptcy law.  And they were of the approach of

20  here are the arguments on one side; here are the arguments

21  on the other side.   No bottom line conclusion.  Just here

22  are the arguments.  Here are the cases.  I then went and

23  read a whole bunch of bankruptcy cases.  I tried to read the

24  principle leverage buyout cases, especially in the 3rd

25  Circuit.   Where I thought I needed to, I went to the

1   bankruptcy treatises, the bankruptcy cases books, to

2   bankruptcy academic articles.  Since then, I've basically

3   been following the process.  So all of the major players in

4   this bankruptcy submitted briefs to the examiner: initial

5   briefs, reply briefs.  I read those briefs.  Those raised

6   some questions.  I followed up with my case research.  I

7   then, like everyone else here, have had the joy of reading

8   1,200 of the examiner's report, and he addresses those legal

9   issues, often at great length, and I gave, basically, I'd

10  say, great deference to the examiner's views on the legal

11  issues, because my expertise is in finance and valuation and

12  understanding business transactions, rather than in the

13  technical aspects of bankruptcy law.  Then, I've continued

14  to learn new pieces, partly by following the briefs that

15  have been filed before you in this case in connection with

16  the DCL plan and the noteholder plan.  And before that, you

17  had the step-one creditor agreement lender plan and the

18  bridge plan.  Partly, there have been various complaints

19  against some of the parties here and some of the third

20  parties that have been filed, especially by the unsecured

21  creditors committee, and so I followed those complaints as

22  well.  I've also had ongoing discussion with the Sidley

23  Austin bankruptcy lawyers when new issues have arisen,

24  especially ones that weren't addressed in the examiner

25  report.

1    Q      Okay.  And you anticipated this a little bit, but just

2    so the record's clear, when were you first retained in this

3    matter?

4    A      In the early part of 2010.  I'm not remembering

5    exactly when.

6    Q      So about a year ago or so?

7    A      About a year ago.

8    Q      Okay.  And by whom were you retained?

9    A      By Sidley Austin, on behalf of Tribune Company.

10   Q      And what is it that you were originally asked to do?

11   A      I was originally asked really just to start learning

12   both the facts and the law of this case, because it's, as

13   you've heard, a very complicated case.  There are two steps

14   of the leverage buyout.  There's both the Tribune level and

15   the subsidiary level.  And partly also, just because of the

16   size of the dollars at stake, the parties have been very

17   creative in raising a whole host of claims and counterclaims

18   and legal issues.  So I had to get my hands around all of

19   those.  I had to get my hands around the valuation; what was

20   Tribune worth going into the step-one tender offer; what was

21   Tribune worth going into the step-two merger; was it

22   balance-sheet solvent; was it cash-flow solvent; did it have

23   what I'm going to call cash-flow cushion, so the

24   unreasonably small capital prong of solvency analysis, which

25   as the bankruptcy courts, I've come to understand, have

1  developed it, is really about are you not only cash-flow

2  cushioned -- do you -- are you not only cash-flow solvent,

3  but do you have a cushion to weather a reasonable downturn.

4  So I'm going to call that a cash-flow cushion.  Had to learn

5  about that at both Tribune and the guarantor subsidiaries

6  again, both in June 2007 and in December 2007.  And the goal

7  of all this was so that I would be in position to have

8  informed judgment about a possible future settlement.

9  Q    And I take it, from your last answer, that there was

10 not a settlement to place at the time you were retained.

11 A    There was not.

12 Q    Okay.  About how much time have you spent on this case

13 since you were retained a year ago?

14 A    So it's been a year, and wow, probably a third of my

15 time over the last year.  It's been basically full-time over

16 the last -- most of the last three months.

17        MR. DUCAYET:  Okay.  Your Honor, at this point,

18 I'd to tender Professor Black as an expert witness to

19 testify as to his opinions on the reasonableness of the

20 settlement of the LBO claims that's embodied in the DCL

21 plan.

22        THE COURT:  Is there any objection?

23        MR. ZENSKY:  No objection to the testimony, Your

24 Honor, just keeping in mind the dialogue I think we had last

25 week about the legal opinions, to the extent that they are

1  part of the witness's opinions.

2          THE COURT:  All right.  Thank you, Mr. Zensky.

3  Then the testimony will proceed accordingly.

4          MR. DUCAYET:  Okay.  Thank you, Your Honor.

5  BY MR. DUCAYET:

6  Q    Professor Black, let's just start off by seeing if we

7  can lay out your overall conclusions, and I want to do this

8  at some fairly high level, and then we can drill down a

9  little bit, okay?

10 A    Okay.

11 Q    Based on the work that you've just described, have you

12 formed any opinions about the reasonableness of the

13 settlement of the LBO claims that's embodied in the DCL

14 plan?

15 A    Yeah, so I was asked to assess the reasonableness of

16 the settlement in the DCL plan of the claims against various

17 creditors, and my opinion is that before you consider

18 litigation trust recoveries, this is a very good outcome for

19 the notes and the Tribune general unsecured creditors.  Let

20 me just refer to the notes, so I don't have to keep

21 repeating the phrase, but the treatment of both is very

22 similar in the plan.  Once you include the disproportionate

23 sending of litigation trust recoveries to the notes, it

24 becomes a truly excellent plan for the notes.

25 Q    Okay.  And can you -- again, just at a very high level

1    here, so we can just kind of set the framework, can you

2    describe the process that you went through to develop that

3    opinion?

4    A      Sure.  So the first part, as we've already discussed,

5    is really trying to become closely familiar with the facts

6    and the law, forming my own opinions about valuation, being

7    informed by everybody else's opinions about valuation.  So

8    one of the features of this case is we're inundated with

9    valuation opinions.  We've got step-one valuation opinions

10   from Blackstone delivered to the McCormick Foundation.

11   Merrill Lynch and Citibank delivered to the Tribune board.

12   Morgan Stanley delivered to the Tribune special committee.

13   Duff & Phelps delivered to the trustee for the ESOP.  And

14   then finally, VRC, as part of its solvency opinion,

15   delivered to Tribune.  We've got a smaller number of

16   valuations, but still a significant number at step two.  I

17   needed to be familiar with those and then start to form my

18   own views about valuation and solvency, because that's going

19   to go into fraudulent conveyance and avoidance, either at

20   step one or step two.  I also had to understand what are the

21   amounts of the claims; where do they fall; are they at the

22   Tribune level or at the -- are they at the subsidiary level,

23   so that I could model, once I make a concrete judgment about

24   which claims are allowed, what does that imply in terms of

25   recoveries?  And then, I had to understand the legal overlay

1  well enough to assess partly what I thought about the

2  likelihood of success of legal claims, but probably more

3  importantly, to assess let me call it the range within which

4  I thought a reasonable settlement might lie, from a low end

5  to a high end.

6  Q    Okay.  Now, have you prepared a written report in this

7  case?

8  A    I have.

9  Q    Okay.  And does that report summarize the opinions

10 that you've reached and the process by which you've reached

11 them?

12 A    Yes, it does.

13       MR. DUCAYET:  Okay.  Your Honor, at this point,

14 I'd like to offer into the record, Mr. Black's opinion,

15 which is in your binder, under the tab DCL Exhibit 1484.

16       THE COURT:  Is there any objection?

17       MR. ZENSKY:  Your Honor, I'd just -- the record

18 should reflect it's the amended report that was served last

19 night, not the original report being offered at this point.

20       MR. DUCAYET:  Let me ask about that, if I can

21 help get it clarified, Your Honor, okay?

22 (No audible response)

23 BY MR. DUCAYET:

24 Q    Now, you just heard Mr. Zensky make mention of the

25 fact that this is an amended report.  Did you hear that?

1    A      That's correct.

2    Q      Okay.  Can you just briefly explain to the Court the

3    nature of the changes that you made between your original

4    report, which was served back on February 8, and the one

5    that you submitted yesterday?

6    A      Sure.  So there are probably three main sources.  One

7    is it turned out that, in the press of time to try to get

8    the report filed, one of the tables way at the back, at page

9    171, got messed up in some way.  I don't know how, so it's

10   been replaced with the correct table.  Second, in the

11   spreadsheet model that underlies the numerical estimates in

12   my report, there was one place where the model was a little

13   bit out of line with what I said in the report.  I think the

14   model is reasonable, the report is reasonable.  They didn't

15   line up right on top of each other, so I made the decision

16   to change the model, and that changed the numbers in the

17   report a little bit, with regard to the probability that you

18   would look at step one and step two together, as a single

19   transaction.  Third, in deposition last week, Mr. Zensky

20   pushed me hard, and I would say quite constructively, on the

21   relative weight that I wanted to give to different outcomes

22   under different views of the case.  And in response to that,

23   I went back and rethought and decided that I should adjust

24   some of the probabilities that I assigned to particular

25   outcomes.

1              MR. DUCAYET:  Okay.

2              THE COURT:  So --

3              MR. DUCAYET:  It --

4              THE COURT:  -- is there any objection to the

5   admission of DCL 1484?

6              MR. ZENSKY:  No objection.

7              THE COURT:  It's admitted without objection.

8   (DCL 1484 received in evidence.)

9              MR. DUCAYET:  Thank you.

10  BY MR. DUCAYET:

11  Q    Okay, Professor Black, let's see if we can start to

12  drill down a little bit into the methodology that you

13  followed here.  In connection with forming your opinion

14  about the reasonableness of the settlement, what was the

15  first thing you did?

16  A    So I don't remember what the first thing I did was.  I

17  tried --

18  Q    Okay.

19  A    -- to learn the facts and the law.

20  Q    Okay.  After the -- after you had come to some

21  reasonable understanding of the facts and the law, in terms

22  of analytically, what is the first thing that you started

23  with?

24  A    So what I ended up trying to do, in big picture, is to

25  decide for myself: what are the main possible outcomes here,

1   all right; what are the different ways that the main legal

2   issues can come out; and then model, numerically, which

3   creditor class recovers how much in each of those main

4   outcomes.  So that would be a good starting place.

5   Q     Okay.  And can we refer to those as scenarios?

6   A     Yes, I will -- I call them scenarios.

7   Q     You call them scenarios.  Do you know if this is

8   something the examiner did as well?

9   A     The examiner did something very similar.  I think this

10  case almost forces you to do that, so you have to think

11  through two steps and two levels, and then have different

12  possible outcomes for Tribune and for the guarantor subs at

13  both step one and step two, and that's what my scenarios

14  are.

15  Q     Okay.  And have you prepared a chart that shows the

16  scenarios?

17  A     I have.

18  Q     Okay.  Why don't we put that up?  It's chart one,

19  slide one.  Okay.  So Professor Black, what is slide one

20  here?

21  A     So slide one is just listing my six main scenarios for

22  which I analyzed recoveries.

23  Q     Okay.  And how do these relate to the scenarios that

24  the examiner put together?

25  A     So let me walk through what they are, and then I'm

1   going to end up saying the examiner has the exact same six

2   main scenarios.

3   Q    Okay.

4   A    There are some sub-assumptions that different slightly

5   between me and the examiner, but they don't drive dollars.

6   My dollars will also be a little different than his, because

7   Tribune's valuation is higher than at the time the examiner

8   wrote his report, but in substance, I called mine A, B, C,

9   D, E, and F, to match his 1, 2, 3, 4, 5, 6.  He's got the

10  same six basic scenarios in his report.

11  Q    Okay.  Why don't we start at the top then?  Can you

12  just briefly describe what scenario A is?

13  A    So scenario A is labeled "no avoidance", and you can

14  think of that as no insolvency.  There's a difference

15  between the two.  I want to come back it, but think of that

16  as no insolvency.  So at the end of the day, lots of sound

17  and fury and noise about how this was a terrible deal, and

18  you decide no insolvency.  Tribune was solvent.  The

19  guarantor subs were solvent after all.  That's scenario A.

20  Q    And that's at --

21  A    And --

22  Q    -- both steps?

23  A    That's a great outcome for the banks, obviously,

24  right?  They get to collect with their full dollar amount,

25  and the notes recovery is fairly minimal in that scenario.

1    Q     Okay.  And what's scenario B?

2    A     So scenarios B and C say, okay, but as the deal went

3    along, step two had another $3.7 billion in debt, and

4    Tribune's business was worse at step two than step one, so

5    if you're going to find insolvency, it's going to be a lot

6    easier to find it at step two than at step one.  What if

7    that happens?  What if you find that Tribune was insolvent

8    in one of the relevant senses at step two?  And once you do

9    that, you might decide that Tribune was insolvent, but the

10   subs were still solvent all the way through.  That would be

11   scenario B.  And scenario C is, at step two, both Tribune

12   and the subs are insolvent.

13   Q     Okay.  And then, with respect to scenario D, is it

14   useful to categorize D, E, and F together?

15   A     Yes, so the next three logical possibilities, if I can

16   call it that, are you say not only were they insolvent at

17   step two, but at least Tribune was insolvent at step one at

18   the time of the tender offer, and I'll have to come back to

19   how one might reach that judgment.  Once you decide that

20   Tribune is insolvent at the time of the tender offer, you

21   then have the same question about the subs: were they

22   insolvent not at all, which would be scenario D; were they

23   insolvent only at step two but not at step one, which would

24   be scenario E; and finally, were both Tribune and the subs

25   insolvent all the way through, that's scenario F, which I

1  call full avoidance.  Scenario F will also capture --

2  suppose you decide that even though Tribune and/or the subs

3  were solvent in the relevant senses, you know what, Tribune

4  had actual intent to hinder, delay, or defraud creditors,

5  because that's another route to avoidance under the

6  fraudulent conveyance statute.  Scenario F will also capture

7  the possibility that you say, well, Tribune was solvent.

8  Tribune didn't have actual intent, but the banks misbehaved

9  in some serious way that justifies equitably subordinating

10  the banks to the other creditors.  And I've assumed that if

11  you did that, you would do it both at the Tribune level and

12  at the subsidiary level.  So that's another way to get to

13  scenario F.

14  Q    And you may have anticipated my next question, which

15  is I think you referenced the fact that you refer to these

16  as avoidance scenarios as opposed to insolvency scenarios,

17  and why is that?

18  A    So one reason is because of the possibility of bank --

19  of Tribune actual intent or bank equitable subordination.

20  The other possibility, probably the more important one in

21  practice, is the banks have raised a series of, let me call

22  them, statutory defenses to avoidance that basically say, it

23  doesn't matter if Tribune was insolvent; we still get to

24  collect on our loans anyway.  So there is some Tribune level

25  insolvent -- level statutory defenses that protect against

1    avoidance, given insolvency.  And then, there is some sub

2    level defenses that say, even if the subs were insolvent,

3    fine; you avoid the bank loans.  But they're still

4    creditors.  They come ahead of equity, so they come back.

5    After you've paid off the sub trade creditors, there isn't

6    much in the way of sub trade credit.  So effectively, the

7    banks come back, and it's as if their loans were not avoided

8    to begin with.  So those are the sub statutory defenses.  In

9    terms of my scenarios, the Tribune level defenses will

10   principally move you up to scenario A, to no avoidance.  If

11   you can't avoid a Tribune, then you're in scenario A.  The

12   sub level defenses will move you from F to D, because you're

13   not avoiding at the subs, or potentially from C to B.  Those

14   will be the principle moves for the sub level defenses.

15   Q    Okay.  And before we drill down a little bit further,

16   as you undertook your analysis, did you determine that there

17   was a particular scenario or scenarios that was more

18   important for assessing the reasonableness of a settlement?

19   A    Yeah, so it's -- becomes very-quickly clear that the

20   key scenario here that's going to drive recoveries to the

21   notes is going to be scenario F, the full avoidance

22   scenario.  You knock out everything in step one.

23   Q    Okay.  Now is it possible to calculate recoveries to

24   the different creditor classes using these scenarios?

25   A    Yes, it is.

1    Q       And is that --

2    A       And I then proceeded to do that.

3    Q       Okay.  Well, and before we get there, is that

4    something the examiner did as well?

5    A       The examiner did that as well, so --

6    Q       And where does --

7    A       -- I have scenarios where I calculate recoveries.

8    We'll see that in a minute.  This -- the examiner, in Volume

9    II, Annex B, has his scenarios with his recovery estimates,

10   and they're very close to mine.

11   Q       Okay.  Now, you did, in fact, calculate recoveries

12   under these different scenarios?

13   A       I did.

14   Q       And how did you do that?

15   A       So I started at the Tribune level, and I said, what's

16   the value of Tribune?  The basic value -- I was taking the

17   value numbers from Alvarez and Marcalle [ph].  I wasn't

18   trying to compute those myself.  I took the overall

19   enterprise value of 6.75 billion from the work of Lazard

20   that you'll hear about later.  I wasn't trying to estimate

21   that for myself.  And I said, okay, there's 6.75 billion of

22   total value.  Alvarez says there's 873 million at Tribune.

23   The rest is at the guarantor subs.  In addition, in some of

24   these scenarios, if you're avoiding bank debt, Tribune made

25   partial payments on its bank debt between the time of the

1  leverage buyout and the time of the bankruptcy, and so some

2  of that money should come back into Tribune in the form of

3  disgorgement.  So the Tribune value will be a base value of

4  873 million plus disgorgement.  If you avoid step two of

5  Tribune, you're going to have step two disgorgement.  If you

6  avoid step one of Tribune, you're going to have step one

7  disgorgement as well.

8  Q    Okay.  Now, have you prepared a chart that shows the

9  results of the recovery analysis you've just described?

10  A    Yes.

11  Q    Okay.  Why don't we put those up?  It's going to be

12  two.  Let's start with two.  So what's been now put up on

13  screen is table one.  Do you see that?

14  A    Yes.

15  Q    Okay.  Can you just describe what that is?

16  A    Yeah, so this is basically table one out of my report,

17  where I take the six scenarios.  I run them through a

18  spreadsheet model of what are the allowed claims at both

19  Tribune and the subsidiaries in each of the six scenarios,

20  and then how much of the total of $6.75 billion gets

21  recovered plus taking into account disgorgement in all

22  scenarios except scenario F.

23  Q    Okay.  And directing your attention to the notes row,

24  do you see that?

25  A    Yes.

1    Q      Okay.  And I think you mentioned earlier that you

2    found scenario F to be particularly significant to your

3    analysis, right?

4    A      That's right.

5    Q      And is that reflected on the notes row here?

6    A      Yeah, so table one is going to show you scenarios A

7    through F, and then I've put the DCL plan in the last column

8    for comparison.  But let's look at the notes row.  The

9    numbers are 61, 105, 169, 272, 286, and then they jump all

10   the way up to 1,433.  1,433 is the notes recover their full

11   claim amount plus post-petition interest.  Okay.  That's the

12   homerun scenario for the notes.  And what that's telling you

13   is the key to recovery for the notes and therefore the key

14   to a settlement analysis of what's a reasonable settlement

15   is scenario F is the homerun for the notes.  What are the

16   chances that they're going to hit a homerun, because that's

17   just way, way more than everything else?  And as you'll see,

18   this is before third-party recoveries.  I'll have another

19   table with third-party recoveries.  The DCL plan is below

20   scenario F and above everything else.  So in that sense,

21   it's a classic settlement.  It's a middle-road outcome.

22   It's better than five of the six; it's worse than scenario

23   F.  Now, if you thought scenario F was a slam-dunk, you

24   wouldn't be settling for the amount in the DCL plan.  If you

25   thought it was a long shot, then the DCL plan is going to

1  look a lot better.  As between scenarios A, B, C, D, and E,

2  it doesn't matter so much, because the numbers are not

3  radically different.  What matters, at the end of the day,

4  is what's the likelihood that you get to scenario F, by one

5  route or another.

6  Q    Okay.  And you mentioned that you had -- so on the far

7  right-hand column here, we've got the DCL plan.  And this is

8  a calculation before third-party recoveries?

9  A    That's right.

10 Q    And --

11 A    So the DCL plan sends -- creates a litigation trust.

12 It's going to sue a bunch of third parties, non-creditors,

13 and it will recover whatever it will recover.  I think the

14 recoveries are expected to be substantial.  I'll talk later

15 about what I think they will be.  And the DCL plan sends

16 those recoveries disproportionately to the notes.  The notes

17 get the first 90 million.  The next 20 million goes to pay

18 back for litigation trust.  Then, the notes get 65 percent

19 of everything over that, until they've been paid off in

20 full.  And then, the 65 percent starts going to the PHONES.

21 Q    Okay.  Did you prepare a chart that shows this with

22 the DCL plan's plus the third-party recoveries?

23 A    Yes, I did, and that's going to be table two, in the

24 next tab.  So --

25 Q    And what's this show, sir?

1    A      What I did in table two is I used an illustrative -- I

2    think a conservative amount of $300 million in litigation

3    trust recoveries, net of the $20 million used to fund the

4    litigation trust.  And then first, I said, under the

5    different scenarios, who gets those $300 million.  And in

6    most of the scenarios, the lion's share of that $300 million

7    goes to the banks.  So scenarios A through F don't move up a

8    whole lot.  If you compare table two to table one, the notes

9    range in table one starts at 61.  The notes range in table

10   two starts at 83.  In table one, scenario E, which is the

11   highest short of F, is at 286, and it goes up to 352.  So

12   most of the litigation trust recoveries are going to the

13   banks here.  In scenario F, they all go to the banks,

14   because the notes are already paid off in full.

15   Q      Um-hum.

16   A      In contrast, in the DCL plan, most of the litigation

17   trust recoveries go to the notes, so what you see here is

18   the DCL plan is now at 659 instead of 432.  And so before,

19   it was above scenario E, but not usually above.  Now, it's

20   way above A through E, and it's, you know, basically a bit

21   more than 50-percent recovery of claim amount.  So the

22   message here is the litigation trust recoveries are central

23   to assessing the overall reasonableness of the DCL plan, and

24   it looks a whole lot better with those recoveries.  It looks

25   fine without them.  I'll testify to that.  It looks very

1  good without them, but it really looks excellent with them.

2  Q    Okay.  Now, Professor Black, let's, if we could, move

3  on to the next step in the process that you've followed to

4  develop your opinions.  After having developed the scenarios

5  that you've just testified about, what did you do next?

6  A    So next, I tried to think about how might this case be

7  settled, and I developed what I want to call six settlement

8  cases -- not full litigation cases, but what might you

9  settle for in the shadow of litigation.  And I was

10 principally concerned with setting up a settlement range, so

11 I had a low-settlement case, and my view of the low-

12 settlement case was I imagined I'm counsel to the banks and

13 I have a strongly bank-favorable view of the facts, and I

14 have a strongly bank-favorable view of the law, and I know

15 there's another side.  This is a settlement case.  But

16 nevertheless, this was a good deal.  Tribune was solvent all

17 the way through.  The law's on my side.  I don't want to pay

18 very much to settle this case.  That was the low-settlement

19 case, and you'll see that later in discreet decisions I made

20 about assigning probabilities to different outcomes.  I'm

21 evaluating things, not ridiculously favorable to notes -- to

22 the banks, but strongly favorable to the banks.

23 Q    And Professor Black, before you continue, why don't we

24 put up a chart, if we could, that shows each of the

25 different settlement cases?  It might be helpful --

1  A      Sure.

2  Q      -- to folks in the courtroom.  Do you see that?

3  A      Yes.

4  Q      Okay.

5  A      So the next thing I did is go to the other extreme and

6  say, what's a high-settlement case, where now I'm imagining

7  I'm counsel to the senior notes, and I think Tribune was

8  insolvent from day one, and I think that the banks knew it,

9  and I think the law is on my side, and I think we should

10 treat this all as one, integrated transaction.  Okay.

11 There's another side.  I might not win, but I've got a

12 really good shot at winning.  And I ask the question: how

13 good of a shot do I have with my notes-favorable hat on of,

14 in effect, getting to scenario F, because that's what's

15 going to drive the dollars?  Then, I have four others here.

16 I had a low-mid settlement, where I -- instead of being

17 strongly favorable to the banks, I was moderately favorable

18 to the banks.  I was leaning to the banks, but not as hard.

19 I've got a mid-high settlement, where I was leaning to the

20 notes.  And then, I also said, okay, we've got the examiner

21 report, and he has opinions on many of the relevant issues

22 that would go into assessing a settlement.  Not all of them.

23 There are important issues that he doesn't offer an opinion

24 on, but he's got lots of opinions.  Let me do my best to

25 read and understand the examiner report, what he says, why

1   he says it, what his analysis is, and if I had to pick a

2   number that best represents -- or not a number, a set of

3   probabilities that best represent where the examiner is,

4   where would that be.  And then, maybe as a matter of

5   disciplining myself, I wanted to say, okay, Professor Black,

6   if you were doing this yourself, where would you assign the

7   probabilities.  This is not where I would come out.  All

8   right.  This is where I would assign the probabilities as to

9   where you might come out.  So they're not going to be 100:0.

10  They're just going to be a different assessment of where you

11  might come out after a full trial and all the facts.

12  Q    Okay.  Now, once you've developed -- you've got your

13  scenarios, right, and now you've got your cases --

14  A    Um-hum.

15  Q    -- did you put those together, in some way?

16  A    Yeah, so the next step was to put the scenarios

17  together with the cases, and in order to do that, I had to

18  say, for each of these six cases, each of the six scenarios,

19  I've got to assign a probability, and the probabilities have

20  to add up to 100 percent for each of the six cases.  So

21  that's what I set out to do next.

22  Q    Okay.  And we'll get to the specific probabilities in

23  a couple of minutes, but before we do that, let me just ask

24  you an overall question, which is what exactly is it that is

25  driving dollars to a notes recovery, as you've now put forth

1  these settlement cases and the scenarios?

2  A     So what's going to drive recoveries to the notes is

3  scenario F.  So then the next question is what drives --

4  Q     What drives scenario F?

5  A     -- scenario F.  What's going to drive scenario F first

6  is a concept that I want to call step integration.  The

7  examiner calls it collapse, which is you smoosh [ph]

8  everything together and look at it at the time of step one,

9  and imagine that step two is a dead cinch to be completed,

10 so you're going to count the step-two debt at the time of

11 step one in assessing balance-sheet solvency, in assessing

12 cash-flow solvency, cash-flow cushion, or potentially in

13 assessing both.  That's going to be a key question here,

14 because if you don't smoosh the two together, step one, on

15 its own, looks pretty good.

16 Q     Professor Black --

17 A     I think there's general agreement on that.

18 Q     Let me just stop you there, and as you've described

19 it, step integration -- the concept of step integration is a

20 key input?

21 A     Yes, it is.

22 Q     Why don't we then take a minute and see if we can walk

23 through, in a little bit more detail, what you mean by step

24 integration, okay?

25 A     Okay.

1  Q      And you've prepared a chart that shows, generally, the

2  different kinds of step integration?

3  A      I have.

4  Q      Okay.  Why don't we put that up on screen there?  It's

5  going to be six.  Okay.  Professor Black --

6  A      Okay.

7  Q      -- what's this?

8  A      So this is the three flavors, if I can call it that,

9  of step integration that are potentially applicable to this

10 case.  One possibility, the notes-friendly possibility, is

11 formal step integration or collapse.  And as the examiner

12 describes it, you imagine that once step one happens, step

13 two is on autopilot.  Step two was -- they were never ever

14 going to stop after step one, or hardly ever, and therefore,

15 you should count the step-two debt at step one.  Indeed, in

16 the examiner's view, you don't count just the actual step-

17 two debt; you count the expected step-two debt, which was

18 500 million more than they actually borrowed at the time of

19 step one, but you also assess solvency at the time of the

20 tender offer, at the time of step one, in June and not in

21 December.  And in my understanding, and I believe in the

22 examiner's understanding, you then don't look again.  It's

23 possible you could look again, but my central judgment was

24 the logic of step integration is this is all one, integrated

25 transaction, and you look once and assess it at one point in

1  time.  And if you do that, you then go through the different

2  possibilities for Tribune, the guarantor subs, or both, to

3  be insolvent, and that's going to be balance-sheet solvency,

4  you know, solvency as the bankruptcy code calls it, cash-

5  flow solvency, which is ability to pay debts, as the

6  bankruptcy code calls it, and cash-flow cushion, which is

7  unreasonably small capital, as the bankruptcy code calls it.

8  Q     And then, underneath that, you've got a line that says

9  informal step integration at step one.  Do you see that?

10 A     Yes.

11 Q     And can you describe what that refers to?

12 A     So this is really the examiner's concept.  Formal step

13 integration is, in the law, whether it applies to this case,

14 unclear.  All right.  But there are prior cases that apply

15 step integration.  There are prior cases that don't apply

16 step integration.  Informal step integration is the

17 examiner's concept of what you might do if you don't apply

18 formal step integration.  And his view was, even if you

19 don't collapse the two steps together, you might've done

20 step one without step two.  At the time of step one,

21 Tribune's plan was to do step two, and therefore, for cash-

22 flow purposes -- cash-flow solvency, cash-flow cushion --

23 you should count the step-two debt in assessing whether

24 Tribune had enough cash-flow to handle the step-two debt,

25 assuming it was incurred.  In his view, you don't do this on

1  the balance-sheet side.  Those are, then, separate tests.

2  So in the informal route, step one and step two are looked

3  at separately.  There is a second look at step two, but at

4  step one, you're integrating on the cash-flow side and not

5  integrating on the balance-sheet side.  Now, this is a new

6  concept.  The examiner likes it and puts a high probability

7  on it.  My view is this is possible.  It's reasonable.  You

8  know, I can see how the examiner gets there, under the

9  statute, but I can also see counter-argument, so my view

10 might be to put a lower probability on informal step

11 integration, but that's a matter on which reasonable people

12 can disagree.

13 Q    Professor Black, you just referred in your answer to

14 something called a second look.

15 A    Yes.

16 Q    What do you mean by that?

17 A    That means the -- reassess solvency at the time of

18 step two.  Now, we know that Tribune, in fact, reassessed

19 solvency at the time of step two, so the formal structure of

20 the deal was they got a solvency opinion at step one that

21 was limited to step one, that didn't look forward.  And

22 then, at step two, they were going to have another solvency

23 opinion as of step two, as of the time of step two, that

24 included the extra debt and included developments in

25 Tribune's business between the time of step one and step

1    two.  So the second look would be if Tribune was insolvent

2    at the time of step one, step two doesn't matter: they're

3    already insolvent.  If they were solvent at the time of step

4    one, you would then take a second look and say, are they

5    still solvent at the time of step two, in the relevant

6    senses.

7    Q      Okay.  And then, the last category you have here is no

8    step integration.

9    A      Yes.

10   Q      And what does that refer to?

11   A      That means the way it sounds.  Step one stands on its

12   own.  You count only the step-one debt in assessing solvency

13   at step one.  Step two stands on its own.  You reassess

14   solvency at step two, including all of the debt.

15   Q      Okay.  Thank you.  Now, stepping back for a second to

16   reorient ourselves, you were referring to some of the key

17   issues that drive recoveries to the notes under your various

18   probabilities, and you've --

19   A      Yes.

20   Q      -- identified then step integration is one of those

21   key issues.

22   A      Yeah.

23   Q      Are there others?

24   A      Yes, so one key issue is step integration, because if

25   you don't have either formal or informal step integration,

1    it's hard to get to full insolvency at step one.  It's just

2    really hard.  A second key issue is then going to be, okay,

3    suppose you integrate.  You're at step one.  How does

4    Tribune look?  What was its balance-sheet value?  What was

5    the amount of its debt?  What was the amount of its assets,

6    its property in the bankruptcy code term?  A key element of

7    that is Tribune was an S-ESOP or was planned to be an S-ESOP

8    after the merger, and so a live issue in this case is

9    whether two different forms of tax value that are special to

10   S-ESOPs should be counted as property under the bankruptcy

11   code and therefore count toward balance-sheet capital.  And

12   so the way I handled those in my cases was in the low-

13   settlement case, which is the bank-friendly case, I said,

14   heck yes; these sources of value count, and they're going to

15   drive down the likelihood of balance-sheet insolvency.  Not

16   100 percent.  There's another side, but there's a high

17   probability that one or the other of these two sources of

18   value you would decide to count.  In my high-settlement

19   case, my notes-favoring view of the world, I said, hey, I

20   never heard of one of these before, this asset disposition

21   tax value that Black has in his report.  I'm sure not going

22   to put much of a probability on that.  I know it's not

23   impossible, but it's a low probability.  The second one is

24   the -- which I call cash-flow tax value is the present value

25   to the Tribune of the tax savings from being an S-ESOP and

1  not paying income tax.  Well, Tribune had that value, but

2  they couldn't sell it to anybody else, unless the somebody

3  else was an S-ESOP, so that shouldn't count either.  Okay.

4  There's an argument that it should count, but low

5  probability, high probability that neither one of these

6  counts, in my notes-favoring view of the world, and

7  therefore, a higher probability of balance-sheet insolvency.

8  So drilling down a level, what gets you to scenario F with

9  formal step integration, balance-sheet solvency, and

10 therefore, tax value is going to be an important element.

11 Q    Okay.  Are there other forms of solvency that are

12 relevant to your analysis?

13 A    Yeah, so the other main form is cash-flow solvency and

14 cash-flow cushion.  The tougher test is cash-flow cushion.

15 All right.  Are you not only cash-flow solvent, but you can

16 weather reasonable bumps in the road, downturns, recessions?

17 And so I focused on what's the likelihood of cash-flow

18 cushion, and that's going to turn on your view of what was

19 known at the time about the newspaper business and the

20 broadcasting business, because those were Tribune's two

21 basic businesses: newspapers and broadcasting.  They had

22 important other investments.  They had an investment in TV

23 foods.  They had some internet investments.  But still, they

24 were dominated by publishing and broadcasting.  What's your

25 view of publishing?  What's your view of broadcasting?  What

1  does the future hold for these businesses in a time of rapid

2  technological change and emergence of the internet?  And

3  it's no secret that the internet has not been good for the

4  newspaper business.  The question was, okay, how bad is it?

5  And people could have differing views on that, and the issue

6  for you would be sitting in June 2007, what was it

7  reasonable to think the future held for the newspaper

8  business.  And therefore, did Tribune have enough cash-flow

9  to pay its debts in, you know, a reasonable set of future

10 circumstances?  And so forming a judgment on that would be

11 an important part of my assessment of the likelihood of

12 getting to scenario F.

13 Q    Okay.  So let's see if I can summarize so far.  We've

14 got step integration, right?

15 A    Yep.

16 Q    We've got balance-sheet solvency.

17 A    Which turns on tax value --

18 Q    Turns on tax value.

19 A    -- in part.

20 Q    And you've got cash-flow solvency or cash-flow

21 cushion.

22 A    Yes.

23 Q    And that turns on, essentially, an issue about the

24 state of the business at the time.

25 A    The state of the business and the reasonableness of

1  the projections.

2  Q     Okay.  And are there other, then, key issues that

3  drive the likelihood that you're going to get to scenario F

4  and therefore to a substantial recovery?

5  A     Yeah, so I think there are going to be two other major

6  drivers of value, and in my work and in my report, I really

7  try to concentrate on what's really driving dollars of

8  expected recovery.  So the third big question, potentially

9  big question, is Tribune actual intent or bank-equitable

10 subordination.  And I formed the view that if you decide

11 that Tribune is solvent, you're probably going to decide

12 there was no actual intent either and there was no basis for

13 equitable subordination either.  So I assigned those, not a

14 zero probability, but a low probability in all of my cases.

15 Q     And can you just explain that a little bit more,

16 please?

17 A     Sure.  So the scenario that I'm imagining is you've

18 decided that Tribune is cash-flow solvent and it has a cash-

19 flow cushion and it can weather bumps in the road.  And

20 then, you're asked, did Tribune have an actual intent to

21 hinder, delay, or defraud creditors.  And it seems to me to

22 be unlikely that you would reach that conclusion, because

23 there's evidence in the record this is a highly leveraged

24 transaction.  There were certainly some future circumstances

25 that Tribune could not survive, including the ones that it

1  did not survive.  But if you form the judgment that, you

2  know what, they could make it through -- they had cash-flow

3  solvency and they had cash-flow cushion -- the facts don't

4  lend themselves to your also concluding, well, they were

5  intending to do dirt to their existing creditors in some

6  way.  They were intending to complete a highly leveraged

7  transaction.  Absolutely, especially at step two.  They knew

8  there were some issues about solvency.  Absolutely.  But

9  assuming they're solvent, what did they do wrong?  That was

10  my view.  So a little bit -- some possibility you would get

11  there, but not very likely.  And really the same thing for

12  the kind of egregious misbehavior that you need to find for

13  equitable subordination of a third party, not an insider,

14  that in the case where the banks made loans that Tribune

15  could pay back -- it's cash-flow solvent and it has a cash-

16  flow cushion -- really hard to see how the e-mail saying,

17  well, maybe we're loading them up in -- with too much debt,

18  and we're not sure they're going to make it through, and so

19  on, that those are going to add up to egregious misbehavior,

20  because it's going to look more like okay, they took a look

21  and the transaction was close, and it was on the right side

22  of the line, and they got it right.  And your judgment would

23  be, in that scenario, they got it right.  So I put low

24  probabilities -- not zero, but low probabilities on those.

25  Q    Okay.  All right.  So we've got step integration.

1    We've got balance-sheet solvency.  We've got cash-flow

2    solvency or cushion.  We've got actual intent, equitable

3    subordination.  Is there anything else?

4    A    The next piece is going to be the statutory defenses.

5    Q    Okay.  What do you mean?

6    A    What do you think of the statutory defenses, and

7    especially because scenario F is the key scenario, how much

8    do they pull away from scenario F?

9    Q    Well, can you explain what you mean by that?

10   A    Yeah, so let me offer an example.  Let me use the

11   examiner case, for example.  Okay.  So we've got -- maybe,

12   can I do this?  Table three?

13   Q    Sure.  So -- okay, well you've jumped ahead just a

14   little bit, because I wanted to wait and then put up the

15   probabilities, but since we're there --

16   A    Okay.

17   Q    -- let's do that now.

18   A    All right.

19   Q    Did you develop a set of probabilities with respect to

20   each of the different possibilities for your scenarios and

21   your cases?

22   A    Yes, I did, and that's table three.

23   Q    Okay.

24   A    That's where I turn my bank-favoring or notes-favoring

25   or Black or examiner case into estimated probabilities.

1  Q      Okay.  Now, before we get to a discussion of the

2  examiner case, let's just make sure we're clear on what

3  we're talking about here.

4  A      Okay.

5  Q      So what do you mean when you say statutory defenses?

6  A      Okay.  So the banks have raised several statutory

7  defenses at the Tribune level.  One is, we paid money to

8  Tribune.  They got value for our loans, and therefore, you

9  can't avoid our loans.  Now, there's a line of cases in the

10 3rd Circuit, in leverage buyouts that says, no, the money

11 went into Tribune, stayed there for a millisecond, and went

12 out to shareholders, and so we're going to treat that money

13 as if it never went to Tribune at all, and therefore,

14 Tribune got no value for it.  We're going to integrate

15 payment within each step.  Payment integration, not step

16 integration.  The money went right through Tribune.  Tribune

17 got no value.  And therefore, the bank loans are potentially

18 subject to avoidance.  But the banks have an argument that

19 the prior cases finding payment integration don't apply in

20 this case.  I think it's a weak argument.  The examiner

21 think it's a weak argument.  But it's not zero percent.

22 There's some possibility of that.  Stronger argument is

23 there were 2006 amendments to Section 546(e) of the

24 bankruptcy code, which says, in a leverage buyout, okay, it

25 was constructive fraud.  You can't grab the money back from

1    the shareholders.  We're not going to avoid the payments to

2    shareholders.  The banks have a technical argument that the

3    2006 amendments also protect them from avoidance: that

4    Congress changed the law in a major way.  Again, I don't

5    think it's a great argument.  The examiner doesn't think

6    it's a great argument, but he puts it at reasonably

7    unlikely.  It's not in his lowest category of highly

8    unlikely, so he's giving some serious possibility to the

9    potential for the 546(e) defense, and that's going to draw

10   away from scenario F.

11   Q    Okay.

12   A    The other defenses, at the sub level, are -- the main

13   defense is going to be the value is trapped there, right?

14   Q    And what do you mean by that?

15   A    And so the subs are insolvent.  They pay off everybody

16   else.  They've got $6 billion of value left over, and they

17   pay it to whoever's left, which is the previously avoided

18   banks.  And the examiner puts that at reasonably unlikely.

19   So again, he's giving a significant possibility to the

20   banks, in effect, get to eat after the sub trade creditors

21   but before Tribune, as equity holder, and therefore before

22   the notes.  So that's going to pull away from F, towards D.

23   Q    Okay.  Are there any other issues or defenses that

24   drive the recoveries to the notes, sir?

25   A    I think those are going to be the main ones.  You're

1    going to be assessing the likelihood of full avoidance, full

2    insolvency, which is scenario F, but only in the cases where

3    the banks don't win one of their statutory defenses first.

4    So I think of the statutory defenses as coming off the top,

5    as it were, and blocking you from getting to full avoidance

6    if you otherwise would believe that the solvency analysis

7    gets you there.

8    Q    Okay.  Now, we've got, up on the screen here, table

9    three, which has a lot of percentages in it, right?

10   A    Yep.

11   Q    Let's see if we can't try to make some sense of the

12   percentages here --

13   A    Okay.

14   Q    -- and maybe one way to do that is, let's focus on a

15   particular column, okay?

16   A    Um-hum.

17   Q    And then, you can sort of explain to us how the

18   percentages work within the column.  And let's start, if we

19   could, with the low-settlement case.  That's the column to

20   the left there.

21   A    Yep.

22   Q    Do you see that?

23   A    Yep.

24   Q    And could you just remind us what the low-settlement

25   case is?

1    A     So this is imagining that I'm counsel to the banks,

2    and I really like my case.  There's some amount I'm willing

3    to pay to settle, but you know what, not so much.

4    Q     Okay.

5    A     Or conversely, a settlement level at which, if I'm

6    bank counsel and I have an opportunity to settle at this

7    level, I say to my client, you better take it, before it

8    runs away.  And so, what you're going to see here is for

9    step-one avoidance of Tribune, scenarios D, E, and F, those

10   are all small numbers.  They only add up to seven percent.

11   Why is that?  Well, mostly, that's driven by step

12   integration, because with my bank-favoring hat on, I say,

13   there's not going to be step integration.  And if there's

14   not step integration, there's not going to be step-one

15   insolvency, so now I'm already up in A, B, and C.  Not only

16   that, if there was step integration, I've got a good chance

17   of winning on one of the statutory defenses, okay.  I might

18   get from F to D, or I might get from F all the way up to A.

19   So that, too, is going to pull away from the lower part of

20   the chart, and that's why those numbers are so small.  So in

21   my bank-friendly case, I'm assigning a four-percent chance

22   to scenario F.  That's pretty low.  Conversely, there's lots

23   of weight up on A, B, and C.  All right.  Some weight on A,

24   which is no avoidance, but actually, a lot of that is coming

25   from the statutory defenses, because in my bank-favoring

1  mode, I think the statutory defenses are pretty good.  Some

2  of it is going to come from the possibility that Tribune was

3  solvent all the way through.  But in fact, most of it

4  actually comes from the statutory defenses.  So my view of

5  the facts of this case was, even with my bank-favoring hat

6  on, it's hard to get Tribune to be insolvent at step two.

7  Not impossible, but it's hard.

8  Q    Okay.  Let's then see if we could move to the other

9  extreme and have you walk through -- by the way, before we

10 move off that, you've got a line here that says total

11 probability there, and it's 100 percent.

12 A    Yes.

13 Q    And what is -- what does that reflect in terms of what

14 the column --

15 A    That's just my discipline, which is all of the

16 possibilities taken together have to add up to 100 percent,

17 so something that comes out of one scenario has to go

18 somewhere else --

19 Q    So if I'm --

20 A    -- any probability weight, if I can call it that.

21 Q    So if I'm understanding you right, the probability

22 weights are getting distributed -- 100 percent of the

23 probability is being distributed across the various

24 scenarios, sir?

25 A    That's right.

1    Q      Okay.  Now, let's turn, then, to the other extreme,

2    which is the high-settlement case, and can you just remind

3    us what the high-settlement case is, please?

4    A      So this is going to be my notes-favorable view of the

5    facts and the law and a view that says, you know, if I'm

6    counsel to the notes and I get a bank offer to settle at

7    this level, I better take it, before it runs away.  And

8    here, what you're going to see is much higher probabilities

9    on D, E, and F, and I'm getting up to 27 percent on F.  So

10   as you look across, as I go from low-settlement to low-mid

11   to mid-high to high, scenario F goes 4, 8, 15, 27.  I'll

12   talk later about why it's hard to get it much above 27, even

13   in a notes-favoring view of the world.  But overall, in this

14   state of the world, between D, E, and F, I've got 48-percent

15   weight.  What that's coming from is I've got a very good

16   chance of formal step integration and a really good chance

17   of formal -- or informal step integration.  And now I'm up

18   at the plate, and I'm swinging for a homerun, and I might

19   hit one.  I might not.  Right?  I might not, but I've got a

20   real -- I'm up at the plate.  I've got a shot of convincing

21   the Judge that Tribune was insolvent from step one.  Now the

22   reason it's 48 percent instead of north of 50 is going to be

23   the statutory defenses, so if I have my notes-favoring view

24   of the world, I don't think much of these defenses.  They

25   aren't worth much.  There's a low probability, but it's not

1   zero, so maybe this would be 55 percent without the

2   statutory defenses -- certainly in the 50s.  And I'm

3   bringing it down to 48 to reflect the potential for

4   statutory defenses to be applied.  Conversely, there's going

5   to be less weight.  There's still significant weight on A,

6   B, and C.  And you're going to look at A and say, how did he

7   get to 23 percent on A after all?  This is the notes-

8   friendly case of the world?  Why isn't that 2 percent?  The

9   reason is two-fold.  First is the statutory defenses.  The

10  second is, with formal integration, you're standing up at

11  the plate in June, trying to hit a homerun, but you might

12  miss.  And if you miss, you don't take a second look, so

13  then you're all the way over to A.  So that's why there's

14  still a significant chance of A, even in the high-settlement

15  case.

16  Q    Okay.  Let's just do one more quickly, if we could,

17  and let's see if we can relate it now to the opinions that

18  were expressed by the examiner, okay?  So let's look at the

19  examiner case.  Can you just walk us through the relative

20  distribution of probabilities across the scenarios in the

21  examiner case?

22  A    Sure.  So here's what I did.  First, the examiner

23  thinks there's a good chance that, especially in the 546(e)

24  defense, will win.  He calls that reasonably unlikely.  He

25  doesn't give percentages for what highly unlikely means,

1    reasonably unlikely means, but I estimated that reasonably

2    unlikely was 20 to 35 percent -- I'm sorry, 15 to 30

3    percent.  And I said, okay, middle of the reasonably

4    unlikely range, he's given a 22.5-percent chance that 546(e)

5    will win.  I think it's lower than that, but that's what he

6    said, so I'm -- this is my effort to understand what he

7    said.  And then, there's some small chance of no payment

8    integration.  So all together, I think there's about a 25-

9    percent chance, in the examiner view of the world, that the

10   banks win on statutory defenses, and that means there's only

11   75 percent left for everything else.  Then I said, okay, the

12   examiner tells us what he thinks about formal step

13   integration.  He says it's somewhat unlikely but close.

14   What does that mean?  Well, maybe 40 percent, maybe 45

15   percent.  In this table, I made it 45 percent.  And then, he

16   tells us what he thinks about the likelihood of Tribune

17   balance-sheet solvency -- insolvency and sub balance-sheet

18   insolvency, if you have formal step integration, and he

19   tells us what he thinks about the likelihood of cash-flow

20   insolvency, lack of cash-flow cushion, if you have formal

21   step integration.  And what he says is the key here for F,

22   which is where I want to focus, is not Tribune on the

23   balance-sheet side; it's the subs.  So Tribune, he says,

24   balance-sheet insolvency is somewhat unlikely but a very

25   close call, so just under 50:50.  That means solvency is

1    just over 50:50.  He then turns to the guarantor subs and

2    says Tribune solvency is "likely", and the subs are more so,

3    because they have more value relative to their debt.  How

4    much is more so?  I don't know, but you know, 60-something

5    parent would be a rough estimate.  So he's telling you, most

6    of the time, you're not going to get to scenario F on

7    balance-sheet insolvency grounds, you know, at the subs.

8    Easier to get there at Tribune, but harder to get there at

9    the subs.  How about cash-flow?  He says cash-flow solvency

10   and cash-flow cushion is reasonably likely, and I'm going to

11   assign that a 70- to 85-percent range, so the middle of the

12   range is 77.5 percent.  So conversely, he's saying there's a

13   22.5-percent chance of cash-flow lack of cushion.  That's

14   not a high percentage either.  So what the examiner is

15   saying is you've got a good chance of integration, and

16   therefore getting to swing for a homerun, but you also have

17   a very good chance you're going to strike out.  An important

18   piece of this analysis is recognizing that the different

19   types of solvency are related, so that it's my view that

20   you're going to look at the -- Tribune's business at the

21   time and make an overall assessment, and your view of the

22   business is going to affect what you think about balance-

23   sheet solvency, and it's also going to affect what you think

24   about cash-flow insolvency.  So then, the same conclusions

25   that would lead you to find balance-sheet solvency would

1  lead you to find cash-flow cushion, and vice-versa, so these

2  are not independent, and that's going to be important to my

3  assessment, that it's not like these are two separate routes

4  and you get to stand up at the plate twice and swing twice.

5  It's the related routes.  They're not -- you get more than

6  one shot, but it's not like you've got two independent shots

7  at getting to full insolvency.  That was my view as to how

8  you would be likely to see the facts.  Put all that

9  together, where am I in the examiner case?  So I've got 25

10 percent statutory defenses getting you to A.  Seventy-five

11 percent left, right?  Out of the 75 percent left, I said,

12 you've got about a one-in-three shot of getting to full

13 insolvency, getting to scenario F on full insolvency.  One-

14 third of 75 percent is 25 percent.  But there are these sub

15 defenses, and the examiner thinks that sub value being

16 trapped at the subs is a decent defense.  He calls it

17 reasonably unlikely.  So out of my 25 percent on scenario F,

18 I'm going to take 5 percent away and put it in scenario D,

19 to respect the examiner's view of that defense.  That's how

20 I get to the 20-percent, full-avoidance probability.  Now,

21 the examiner doesn't think very much of Tribune solvency at

22 step two.  He tells you it's highly unlikely.  He think

23 balance-sheet solvency is highly unlikely.  He thinks cash-

24 flow solvency is highly unlikely.  You'll then ask, how do I

25 get to a 39-percent chance of scenario A in the examiner's

1    view of the world.  The answer's going to be 25 percent of

2    that is statutory defenses.  Most of the rest is you've got

3    formal step integration, and you've stood up at the plate in

4    June and you've swung and you missed, and that jumped you

5    over to A, because you didn't get a second chance.

6    Q    Okay.  Now, Professor Black, you said, now a number of

7    times, in your testimony, that what really drives recoveries

8    to the notes here is the likelihood of being in scenario F.

9    A    Yes.

10   Q    And you have a high-settlement case --

11   A    Yep.

12   Q    -- here, which is favorable to the notes, right?

13   A    Yes.

14   Q    And --

15   A    Intentionally so.

16   Q    Intentionally so.  And you've got a 27-percent chance

17   of full avoidance on the high-settlement case, right?

18   A    Right.

19   Q    That seems awfully low.

20   A    So the question is why is it so low.

21   Q    That's my question.

22   A    Okay.  So here's why it's so low.  Let's first -- even

23   in my notes-friendly state of the world, it's not for sure

24   you're going to get formal step integration.  So if I go

25   over to the next slide, to tab eight, you'll see how I built

1   up to the 27-percent chance.  So this is digging down a

2   level, right?  Table three already has 36 numbers on it.

3   Each one of those is going to be comprised of many other

4   numbers, at a further level down, but I think there's some

5   logic to them.  And so I said, with my notes-favoring hat

6   on, I'm going to give you a 50-percent chance of formal

7   integration and an 80-percent chance of formal -- or

8   informal integration.  I didn't want to put it higher than

9   that, because I think there are some real barriers to formal

10  step integration.  There's simply the six-month gap between

11  the two steps.  There is lots of evidence in the record that

12  Tribune planned a major cash distribution to shareholders of

13  17.50 a share before Sam Zell came along, and then, they

14  built that into the merger as step one.  He came in with a

15  one-step proposal, and they said, no, no, no.  We want a

16  tender offer up front, so whether the merger happens or not,

17  we've distributed our 17.50 a share to shareholders.  So

18  there's evidence in the record that says the steps were

19  thought of as independently -- I've already said, the

20  solvency opinions were independent.  So you're not going to

21  get to 100 percent, but I thought you could get up to 80

22  percent formal or informal step integration.  Then, suppose

23  your in formal step integration.  I then said what's the

24  best chance you have of hitting a homerun, and my sense of

25  that chance was 35 percent.  And how I got to 35 percent was

1  first I said, look, at step one, it's tough to drive the

2  subs insolvent, because Tribune was close.  without special

3  S-ESOP tax value, Tribune was close at step one, but the

4  subs have got another about $1.75 billion of value, so

5  Tribune would have to be not close to drive the subs

6  insolvent on the balance-sheet test, and that's going to be

7  hard to do.  In terms of numbers in this case, the deal --

8  the merger was at $34 a share.  For the subs to be insolvent

9  at step one, you would have to first conclude that neither

10  of these sources of tax value counts, and you would have to

11  say Tribune's value is $26 a share or less.  All right.  If

12  it's up in the upper 20s, Tribune would be insolvent.  It's

13  a -- 29 is less than 34.  Tribune is insolvent, but the subs

14  are still solvent, because of their extra value.  So

15  balance-sheet insolvency is a hard road.  It's a much easier

16  road at Tribune, but it's hard at the subs.  How about cash-

17  flow insolvency?  Well, at step one, that's a hard road,

18  too.  Why is it hard?  It's hard, so I like to pay a lot of

19  attention, and I do so in my report, to what did investors

20  think at the time.  All right?  I can have whatever opinion

21  I have now, looking back, with benefit of hindsight.  What

22  did they think at the time?  What we know at the time is

23  first, the banks were willing to do the deal.  They thought

24  there was enough of a cushion so they could get paid.  Maybe

25  they were wrong.  Maybe you'll decide they were wrong, but

1  they thought there was a cushion.  Sam Zell was willing to

2  do the deal.  He was getting a deep-out-of-the-money

3  warrant.  There had to be a lot of equity value before he

4  got back dollar one, so he must have thought there was value

5  there.  And then, if I look at the trading prices of the

6  notes at the time of step one, they traded down in price,

7  which is up in yield, a little bit at the time of step one,

8  but the -- you know, the 2010/2015 notes were trading at

9  8/8.5 percent.  These are not distressed yields.  You can

10 infer, from the yields, what the likelihood of bankruptcy is

11 over a period of time.  And so my estimate is that investors

12 thought, at the time of step one -- and they would've been

13 looking forward to step two, because step two was probable.

14 Whether or not you do so for formal step integration,

15 investors would think that way.  I think the probability of

16 a bankruptcy by 2010 was about five percent, by looking at

17 the trading prices of the notes that matured in late 2010.

18 I get a similar assessment by looking at the credit default

19 swaps, which existed and were traded on the notes that

20 matured in 2015.  There, you get a 5-year price, and the

21 price of 5-year credit protection tells you that the

22 likelihood of insolvency at June was about 15 percent over 5

23 years.  so investors are telling you, probably they're going

24 to make it, and so I thought you might have a different

25 view, but the chances, even with my notes-friendly hat on

1   are -- my chances aren't so great of hitting a homerun on

2   the cash-flow side either, close up, because I'm fighting

3   the market, in effect.  I have to persuade the Judge that

4   the market was wrong and didn't understand what trouble

5   Tribune was really in.  So that's why I get to 27 percent.

6   All right?  I've got two roads, but they're both tough.  All

7   right.  You don't hit a homerun every time on either one of

8   them, even combined.  Now -- and then you have to remember,

9   once you hit a homerun, the statutory defenses might take it

10  away from you.  And so I took that into account in the 27

11  percent as well.

12  Q    Now, you've now spent some time describing the process

13  by which you arrived at a percentage for one specific cell.

14  Is this consistent with the overall approach that you took

15  to determine the probabilities for each of the cells that's

16  reflected in that table?

17  A    Yes, it is.  I focused most intently on scenario F and

18  then on the statutory defenses that would pull you away from

19  scenario F, because that's what's driving the dollars, but

20  the general approach was similar for the -- let me call them

21  the middle cells -- the B, C, D, and E cases -- as well.

22  Q    Okay.  Now, we've had, sort of, a lengthy buildup

23  here, but let's see if we can't get to somewhat of a finish

24  line.  Using the probabilities that you've determined from a

25  combination of the scenarios and the cases, and applying a

1  recovery, are you able to determine the probable recovery

2  with respect to each of the different cases?

3  A     Yeah, so the next steps --

4            MR. ZENSKY:  Objection, Your Honor.

5            THE COURT:  Basis?

6            MR. ZENSKY:  I believe that the whole -- the

7  testimony was that these are settlement scenarios, and

8  Counsel just spoke about recoveries as in the litigation

9  outcome, so I'd ask if he could rephrase the question.

10           MR. DUCAYET:  I'll rephrase.

11           THE COURT:  Okay.

12           MR. DUCAYET:  It's a good objection.

13 BY MR. DUCAYET:

14 Q     So putting together all these different elements that

15 you've been testifying about, are you able to determine a

16 potential settlement outcome for each of the different cases

17 that you've identified?

18 A     Yes, I am, and that's just going to be a matter of

19 algebra.  I take each probability and multiply it by the

20 recovery in the associated scenario and add them all up.

21 Q     Okay.  And have you prepared some charts showing that?

22 A     I have.

23 Q     Why don't we put up -- let's try eight.

24 A     So this is table four out of my report, and this is

25 the estimated payouts in the different settlement cases

1    before allowing for third-party recoveries.  And what you're

2    going to see here is my settlement range, low-settle to

3    high-settle for the notes, is 173 million on the low end up

4    to 564 on the high end.  The DCL plan, at the far right, is

5    at 432, so that's in the upper half of the range, right?

6    It's actually quite similar to my best estimate of where the

7    examiner would come out, as you'll see.  And it's

8    substantially above where I would come out, in terms of my

9    own assessment of the probabilities.

10   Q    Okay.

11   A    So this is where I say, before you get to third-party

12   recoveries, this is a good outcome for the notes.  All

13   right.  It's well within the settlement range, and it's in

14   the upper half of the range, and it's comparable to the

15   examiner.

16   Q    Okay.  Let's turn to -- have you done a slide now that

17   shows third-party recoveries?

18   A    Yes, I have.

19   Q    Okay.  We'll put that up.  Can you describe this chart

20   for us, please?

21   A    So this is table five out of my report, where I've

22   added in 300 million in estimated litigation recoveries from

23   third parties, and sent those disproportionately to the

24   notes in the DCL plan, so the settlement range in the other

25   scenarios goes up.  It's now going from 217 in the low-

1   settlement case, up to 600 in the high-settlement case.

2   Doesn't move by that much, because remember in the

3   settlement cases, most of the litigation trust recoveries

4   are going to the banks.  The Black case moves up.  The

5   examiner case moves up.  It's now at 475.  But the DCL plan

6   really jumps up, so the DCL plan is now at 659 --

7   Q     And why is that?

8   A     -- and that's above the top of my settlement range.

9   Q     And why does it jump up that way?

10  A     Because the notes are getting the first 90 million and

11  65 percent of the rest.  So instead of getting 20/30/40

12  million in each of the other cases, they're getting 227 in

13  the DCL plan, so they go from 432 to 659.  And so this is

14  really the basis for my opinion that the DCL plan is a

15  really excellent outcome for the notes, if you take into

16  account the expected litigation trust recoveries.

17  Q     Okay.  Let's turn to that for a second, if we could.

18  A     Sure.

19  Q     So you're using an illustrative -- I think is the way

20  you referred to it in your report, an illustrative 300

21  million --

22  A     Yes.

23  Q     -- for that number.  Can you just explain how you get

24  to that $300 million number?

25  A     Sure.  So what I tried to look at is what are the

1   major classes of claims that are in the litigation trust,

2   who are they against, and based on what we know now -- they

3   haven't been fully litigated -- how much settlement value do

4   those claims  have.  Again, I'm estimating settlement value,

5   not full recovery value.  And so, I started with the claims

6   against the directors and officers for breach of fiduciary

7   duty.  And the examiner puts a high probability on them.  He

8   says, at step two, that's somewhat likely.  So that's north

9   of 50 percent.  Now, I personally -- I do corporate law.  I

10  don't think these claims are very good.  I've seen the same

11  facts the examiner has.  I would put a much lower

12  probability on them.  But here's one case where what I think

13  doesn't matter, because the way the dynamics are going to

14  play out is Tribune has a $200 million D&L policy, and the

15  litigation trustee, at some point, is going to go to the

16  insurers and say, I'll settle for the policy limits of 200

17  million.  And the insurer then faces the following quandary.

18  If they refuse a reasonable settlement offer, they're liable

19  for the full amount.  They're liable for $4 billion.  And

20  they've got the examiner report out there publicly, saying

21  they're more likely than not to lose.  They can't take that

22  chance.  They're going to have to settle.  That's my

23  opinion, my professional judgment, knowing about corporate

24  late and knowing about insurance and duty to settle, which I

25  happen to have studied professionally in a separate part of

1  my research that I didn't describe earlier.  It is my

2  judgment the insurers are going to end up agreeing to pay

3  maybe not 100 percent of the limits, and some of it they'll

4  have spent on defense costs anyway, but most of it.  So a

5  good chunk of the 350 million is -- I think you'll get 150

6  million out of the D&L policy, maybe a bit more.

7  Q    Okay.  What else?

8  A    So the second piece is going to be at the time of the

9  merger, there were, in round numbers, $100 million in

10 payments to the principle Tribune insiders: payments for

11 stock, severance payments, golden parachutes, you name it.

12 Not all of that is going to come back.  Not all of that is

13 going to be recoverable, but my guess is you might recover

14 another 50 million, maybe more, out of that.  So that got me

15 to 200 million, maybe as high as 250 million, out of the

16 directors and officers -- mostly the insurance policy, a

17 little bit the insider payments.  The third big category is

18 going to be the financial advisors, and the principle

19 financial advisors here are VRC, which prepared a solvency

20 opinion, and the examiner, I think it's fair to say, dumps

21 on the solvency opinion pretty heavily, so maybe there's

22 some liability there.

23 Q    Is that a technical term, sir?

24 (Laughter)

25 A    There is some VRC risk.  One of the questions I've

1   asked in this case is what are their policy limits so I

2   could estimate the recovery, and nobody seems to know that.

3   And then, Tribune had these financial advisors.  They had

4   Merrill Lynch and Citibank, and then the special committee

5   had Morgan Stanley.  And I think there's some significant

6   exposure on the part of each of those for basically having

7   gone along with a deal, in the situation where a future

8   Judge -- this wouldn't be you; it would be someone else --

9   says, you know what, Tribune was insolvent.  It was clear

10  they were insolvent.  You had a chance to say no, and you

11  let them go ahead.  And at the very least, you want to be

12  able to get back the fees that were paid to Merrill, Citi,

13  and Morgan Stanley, and that's about 35 million.  But

14  especially for Morgan Stanley, having now looked at some of

15  the documents in the discovery record, they had the last

16  clear shot to say no, and they said, go ahead.  And I think

17  there's some real exposure there.  And so that got me up to

18  300 million.  And depending on how the facts turn out in

19  litigation, it might be well north of that.  I think 300 is

20  a conservative estimate.  Finally, you've got the

21  shareholders, so when you're chasing the shareholders, it's

22  really hard to see how you integrate the shareholder

23  payments.  So for that one, I think you look at step one and

24  step two separately.  So I don't think there's value in the

25  claims at step one, which is why the releases don't trouble

1   me as a factual matter.  You're not releasing anything with

2   any value.  But at step two, there's some chance that the

3   Court would say Tribune had actual intent, and let's go

4   chase the shareholders and bring back as many dollars as we

5   can.  Now, that's a lot of dollars.  All right.  That's $4

6   billion in shareholder payments.  So even if it's a small

7   percentage recovery, and even if you're not going to chase

8   the little guys -- you're only going to chase the

9   institutions, which is what I think would happen in practice

10  -- there's potential there.  I didn't put a numerical value

11  on that, because I view it as a long shot.  I really do.  I

12  -- there's never been a fraudulent conveyance case where

13  anyone has chased shareholders successfully.  And -- but

14  again, there's a possibility of a homerun outcome there as

15  well.  If you believe the examiner, there's even a

16  likelihood of a homerun outcome, and therefore, very

17  significant settlement dollars.  Again, I wasn't counting

18  those.  I was really staying close to home and saying I'm

19  confident that there's value from the D&L policy.  I'm

20  confident that there's value from the insiders on a

21  preference-recovery theory.  And I'm confident that there's

22  significant value from the financial advisors, though how

23  much will have to be determined in future litigation.

24  That's how I got to the 300 million number.  I think the

25  risk is on the high side.  It's -- you're not likely to do

1  much less than 300 million, and there's some chance you

2  could do a lot better.

3  Q    Now, Professor Black, let's turn back to table five,

4  if we could.  And you've got an estimated settlement

5  recovery for your case and then a similar number for the

6  examiner case.  Do you see that?

7  A    Yes, I do.

8  Q    Okay.  And it looks as if the examiner case is about,

9  oh, 175 or so, $180 million higher than you, is that right?

10  A    That's right.

11  Q    Okay.  Well, what is it that accounts for that

12  difference?

13  A    Okay.  So the first thing I'd say is we're both well

14  within my settlement range, so I'm, you know, kind of toward

15  the low-middle case, and he's toward, you know, a little bit

16  between the mid-high and the high case, but we're both well

17  within the settlement range, so I don't think the

18  differences should be exaggerated.  But then I also tried to

19  reconcile my number to the examiner's and said, what are the

20  differences and assumptions that are driving the dollar

21  differences in numbers.

22  Q    And do you have a chart that shows that?

23  A    I do.  That's the --

24  Q    Okay.

25  A    -- next chart.

1    Q      Okay.  And why don't you walk us through this, please?

2    A      So I start with my case, and that's at 294 million.

3    And then, I say the examiner didn't allow either of these

4    sources of S-ESOP tax value.  The first one, he didn't

5    understand.  I think if he'd understand it, he probably

6    would've allowed it, but he didn't understand it, didn't

7    think it was a source of higher disposition proceeds, gave

8    it no weight.  The second source, again, I think he really

9    didn't understand the argument, gave it no weight.  Suppose

10   I take his view.  I'm going to take my estimate of the

11   likelihood that this -- these tax values will count, so I

12   think the asset disposition source is 50:50.  If that

13   doesn't count, I think cash value to Tribune is 50:50.  Let

14   me take those down to zero.  What does that do to my

15   recoveries, because that's how the examiner views the world?

16   Q      And what does it do?

17   A      And my number's going to pop up to 409 million.  I can

18   close the rest of the gap by saying I was more of a skeptic

19   than the examiner on formal step integration, so my view of

20   the world was Tribune had a two-step plan.  They were going

21   to do step one no matter what.  There's significant evidence

22   of that.  And then, they built it -- let me call it a stop

23   light at step two.  They were going to get to step two,

24   stop, get a solvency opinion, and then proceed if green.

25   That was the plan.  Now, maybe they proceeded even though

1  the light was red, but the upfront plan, I think, was get to

2  step two, take a second look, proceed if solvent.  Or at

3  least there's evidence for that.  so I put lower probability

4  on step integration, because it seemed to me that if you're

5  going to take a serious second look, that the Court is

6  likely to respect that and not treat you as if you were

7  going to blow through the stop light, no matter what it

8  said.  But let's suppose I just change my view.  I'm going

9  to make my view -- change my probabilities to my best

10 estimate of the examiner probabilities.  That's going to get

11 me up to 465 versus the examiner's 475.  And at that point,

12 we're sitting right on top of each other.

13 Q    Now --

14             THE COURT:  Mr. Ducayet, I'm going to ask you to

15 pause here.  We're going to take a 10-minute break --

16             MR. DUCAYET:  Sure --

17             THE COURT:  -- after which I think you'll have

18 about a half-hour left of your time.

19             MR. DUCAYET:  Thank you.

20             THE COURT:  Stand in recess.

21 (Recess at 2:49 p.m. to 3:04 p.m.)

22             MR. DUCAYET:  Thank you.

23                  DIRECT EXAMINATION (resumed)

24 BY MR. DUCAYET:

25 Q    Professor Black, welcome back.

1          Maybe if we could turn back to the Table 5, please.

2     A     Okay.

3     Q     Okay.  And I think you identified this as setting

4     forth your range of potential recoveries under the low

5     settlement and the high settlement case, and then a couple

6     of other alternatives, right?

7     A     Yes.

8     Q     And you've been describing more generally the process

9     by which you arrived at that range today, right?

10    A     Yes.

11    Q     Let me just ask you this.  Given all of the different

12    pieces that go into the establishment of that range, how

13    confident are you in that range?

14    A     So I tried to assess that question by running a lot of

15    what I want to call sensitivity tests or robustness tests

16    where I changed assumptions that then fed into

17    probabilities.  I changed the probabilities directly.  I

18    continued -- considered alternative scenarios.  I continued

19    lower third party recoveries, higher third party recoveries,

20    higher enterprise value, much higher enterprise value.  I

21    considered a whole bunch of other sensitivity tests as well

22    to see what would happen to my -- my settlement range, and

23    most of those effect only the settlement range.  They don't

24    affect the settlement.  The third party recoveries affect

25    both and I wanted to see what would happen, what would --

1  how would the settlement look relative to the range under

2  different stress tests.

3  Q    Okay.  Before we get to the stress tests or the

4  sensitivities, let me just ask you, is this something that

5  you do in your academic work?

6  A    Yes.  I do it all the time.  So I do empirical

7  research, quantitative empirical research in law and one

8  issue that you confront all the time is how do you

9  understand the data, how do you model the data and there are

10  all these choices.  Sometimes there are dozens of choices.

11  So my common practice is to run lots and lots of these

12  robustness or sensitivity checks, measuring a variable this

13  way or that way, excluding outliers, including outliers,

14  running different types of regressions, including different

15  variables.  And the idea is to get a sense for whether a

16  result that you think you see in the data is really robust.

17  And my view of the world is I publish results in that they

18  are robust, and if they're not I don't publish them, or at

19  most I'll say this result exists, but it's not so robust

20  under the following variation.  I'm a -- I'm a big believer

21  in my academic work in running lots and lots of robustness

22  checks.

23  Q    Okay.  And have you -- getting back to the work that

24  you did in connection with this matter, have you prepare a

25  chart that shows some of the sensitivity analysis that

1  you've done?

2  A      Yes, I did.

3  Q      Okay.

4          MR. DUCAYET:  Can we put up the last one real

5  quick?

6  BY MR. DUCAYET:

7  Q      Okay.  And -- and consistent with the agreement we

8  have with the noteholders, I don't want you to get into any

9  of the details here of the analysis that you did.  But if

10  you could just kind of walk through at a -- at a high level

11  and explain the sensitivity analyses that are set forth in

12  this chart.

13  A      Sure.  So as I said, one type of sensitivity analysis

14  was simply to change the probabilities in my probabilities

15  chart directly.  Another was to change the factors that

16  would go into those probability assessments.

17  Q      Actually, Professor Black, let me just stop you there

18  because I want to make sure we focus on that very first

19  point that you made.  You said you changed the -- you

20  assessed the sensitivity of the probabilities themselves?

21  A      Yeah.

22  Q      Can we just go back, then, to, I think it was Table 3.

23  A      Yeah.

24          MR. DUCAYET:  Can you put that back up?  It's

25  Number 5.

1                    THE WITNESS:  Yeah.

2                    MR. DUCAYET:  Okay.

3    BY MR. DUCAYET:

4    Q     Are these the probabilities you're referring to?

5    A     Yes.

6    Q     Okay.  And when you say you did a -- a sensitivity

7    test of the probabilities themselves, what do you mean by

8    that?

9                    MR. ZENSKY:  Your Honor, I have an objection.  As

10   you know, we conferred during the break and I don't even see

11   this vary -- this sensitivity test listed on the slide that

12   was supposed to summarize the witness's sensitivity tests.

13                   MR. DUCAYET:  I agree it's not on there.  I think

14   it's part of the analysis that he did in the case, and I --

15   I think it's appropriate to describe the way in which he

16   tested the --

17                   THE COURT:  Well --

18                   MR. DUCAYET:  -- robustness of his results.

19                   THE COURT:  -- what was the agreement made?

20                   MR. ZENSKY:  Well, it was, essentially, that if

21   it wasn't in the report, the opening report or in the

22   amended report text itself, we weren't going to be

23   discussing the specifics of any specific sensitivity tests

24   and I certainly don't recall the tests that Mr. Ducayet is

25   asking about as having been neither a report or in any work

1  papers that we were provided with.  If I'm wrong, he can

2  show me where it is, but this is a new sensitivity that I'm

3  hearing for the first time.

4            MR. DUCAYET:  Okay.  I think the testimony would

5  be that this is not a new sensitivity.  This is part of what

6  he does whenever he has these kinds of --

7            THE COURT:  Okay.  Well --

8            MR. DUCAYET:  -- probabilities, so --

9            THE COURT:  -- let me ask this.

10            MR. DUCAYET:  Yeah.

11            THE COURT:  When -- when did you perform that

12  exercise?

13            THE WITNESS:  All the way along.

14            THE COURT:  Overruled.

15            MR. DUCAYET:  Okay.

16  BY MR. DUCAYET:

17  Q    Can you just describe, please, for the Court what --

18  what you did?  As you said, you did it all the way along.

19  A    So I would do a couple of things.  One, at the level

20  of this table I would say what if in the examiner case I

21  told you that the statutory defenses are twenty-five

22  percent?  What if I make that thirty-five percent, then I --

23  every -- every other number in that column has to change,

24  what does that do to my overall recoveries.

25            Another thing that I did is what if I change my

1   assessment of formal step integration, informal step

2   integration or no step integration at the next level down

3   and then the build up to this probability table would

4   change.  And then within that next level down, what if I

5   changed my view of the likelihood of any one of the six

6   scenarios, given formal step integration or given informal

7   step integration or given no step integration.  And part of

8   that was verifying for myself, in effect, which of the

9   probabilities matter and confirming what at some level is

10  going to be obvious from Table 2, which is what matters is

11  Scenario F.  You can move the range by ten, twenty, $25

12  million by moving things around in the middle.  But if

13  you're really going to change the settlement range you have

14  to hit Scenario F.  That's the only way to really drive

15  large dollars.

16  Q    Okay.  Let's -- let's turn back if we could to the

17  chart that we had about the sensitivity tests.

18  A    Okay.

19  Q    Again, just without going into any of the details, can

20  you just at a high level walk us through this.

21  A    Sure.  So one was what if I have really low third

22  party recoveries or substantially higher third party

23  recoveries than the 300 million I was assuming, what if it's

24  half that amount or twice that amount.

25          The second was what if enterprise value is,

1  instead of the middle of Lazard's range, which is 6.75

2  billion, what if it's at the top of Lazard's range, which is

3  7.1 billion; what if it's at 7.5 billion, what if it's at 8

4  billion, how would that change the settlement range and,

5  therefore, how would that change my assessment of the

6  reasonableness of the DCL plan.

7        The third thing I did is at a 6.75 billion valuation,

8  in scenarios in which step one is allowed and step two is

9  knocked out -- all right.  So you're step one solvent, step

10  two insolvent, a question arises whether the step one banks,

11  through one of a number of channels, can collect interest

12  that's accrued after Tribune filed for bankruptcy, but is

13  not included in their claim amount at Tribune.  And I go

14  through the reasons why they might be able to collect post-

15  filing interest in my report.  And what I do is I assign

16  that a seventy-percent probability.  It matters in the

17  scenarios where you're step one insolvent, step two

18  insolvent at the subs.  It means that it mostly matters in

19  Scenario C.

20        The reason it matters is because if the banks' claim

21  is strictly capped at their claim amount at Tribune, all

22  right, not the larger amount that would have accrued to

23  date, then if you knock out step two entirely, step one is

24  simply paid and the marginal dollars are flowing up to

25  Tribune from the guarantor subs and then out to the notes

1   and the Tribune general unsecured creditors.  And that's

2   going to make a moderate difference in recoveries at a value

3   of 6.75 billion.  But as you start raise the value, Scenario

4   C or Scenario E, knocking out step two only, starts to

5   become an important source of recovery for the notes.

6       So if you were to go way up in value, if you were to

7   go up to, you know, north of seven-and-a-half billion

8   dollars, then there's a second route for the notes to

9   recover a large amount of dollars.  The main route is

10  Scenario F, knock everything out at step one.  The alternate

11  route is you failed at step one, but you -- you persuade the

12  judge that Tribune's enterprise value is really high and you

13  persuade the judge not to allow post-filing interest and if

14  you do that you can start to build up some significant

15  recovery dollars for the notes as well.

16      So you've got to do, in effect, four things.  You've

17  got to have a high enterprise value.  You've got to have no

18  post-filing interest.  You've got to have step two

19  insolvency and you've got to have no statutory defenses.

20  But if you have those four things, you can get to

21  significant dollars without -- in Scenario C, in effect, as

22  well as F.

23  Q    Professor Black, those four things that you just

24  described, are those independent probabilities or are they

25  correlated in some way?

1    A      So certainly the two main ones which are high

2    enterprise value and whether or not as a matter of

3    interpreting the bankruptcy code or your equitable judgment

4    you allow post-filing interest, there's no obvious

5    connection between those.  So those are essentially two

6    independent probabilities.  If you have a, you know, twenty-

7    five percent chance of one particular value and a fifty

8    percent chance of post-filing interest, you multiply those

9    two together.  The statutory defenses are logically

10   independent as well.  They come off the top.  They continue

11   to come off the top from all of the other recoveries and

12   then I -- I don't really see any connection between any of

13   the four.  So the solvency analysis at step two is basically

14   an independent analysis as well.

15   Q      And what are the implications of the fact that it's an

16   independent set of probabilities for the overall probability

17   of reaching this other scenario, Scenario C?

18   A      So it's going to reduce the probability of getting to

19   -- in fact, you have to get to Scenario C and if you go back

20   to Table 3, so that's going to be Tab 5, the probabilities

21   of Scenario C vary between sixteen percent for the examiner

22   up to thirty-five percent for me.  So there's some real

23   probability on Scenario C.  You get the same thing for

24   Scenario E, but that's a lower probability case.

25         You've got to be in Scenario C or E, right.  You're

1  not in one of the other three -- the other four scenarios,

2  and you have to have a high enterprise value and you have to

3  have no post-filing interest, and you have to have step two

4  insolvency, and you have to have no statutory defenses.

5       So all of that says all together as a matter of

6  estimated recovery, as a matter of settlement analysis, it's

7  not going to make a huge amount of difference to my

8  assessment of reasonableness that there's the possibility of

9  this second road to a large recovery.  It's not nearly as

10  important as the main road of Scenario F, but it is a second

11  road.  It's there.  It's got some probability attached to

12  it.

13  Q    Let's turn back to the sensitivity test chart if we

14  could.

15  A    Okay.

16  Q    And what did -- and if you could just briefly walk

17  through the other sensitivity tests that you did.

18  A    Okay.  So I wanted to -- the third sensitivity test

19  was to vary the chance that the banks would get post-filing

20  interest.  Now other way for them to collect extra value at

21  the subs would be if there's some step two protected debt.

22  Allow -- I'm allowing in my scenarios for a significant part

23  of the step one debt to be protected against avoidance

24  because it was given for value value to Tribune.  It was

25  used to pay off old debt.  It was used to fund the revolver.

1    It was used to fund letters of credit and stuff like that

2    rather than paid to shareholders.

3        There's also an argument that the examiner gives

4    substantial credence to that some amount of step two debt

5    should be protected as well, and if some step two debt is

6    protected that gets you to the same place as post-filing

7    interest, which is there is larger value that the banks get

8    at the subs before they're paid in full and value starts

9    going up to Tribune.  So until you get the very high

10   settlement values, either post-filing interest or step two

11   protected debt gets you to the same place in terms of the

12   banks are continuing to recover at the subsidiaries.

13       The fourth sensitivity test was, in fact, the second

14   route to a high recovery is if all I do is change post-

15   filing interest not much happens.  If all I do is change

16   enterprise value, not much happens.  If I put the two

17   together, then something starts to happen to recoveries.  So

18   if you were to tell me that I think -- if -- if it were my

19   view that the likely enterprise value was 6.8 -- is 8

20   billion.  It's not 6.75.  It's not 7.1.  It's $8 billion and

21   it's unlikely that you're going to allow post-filing

22   interest, then Scenario C becomes an important source of

23   recovery and would affect my judgment.  But you're going to

24   have to do both together.  One at the time doesn't affect my

25   judgment as to, hey, this is a great deal for the notes.  If

1  you put both together and you put a high enough probability

2  on both together, then that could affect my judgment as to

3  reasonableness.

4       So that's why I put the two together in sensitivity

5  test four to see what would happen.

6  Q    And what about Number 5?

7  A    So Number 5, you know, I've really talked about, for

8  the Black case, what would happen if I took away any chance

9  of this S ESOP tax value, and I also wanted to ask what if -

10  - what would happen if I took it away from my low settlement

11  to high settlement cases, where I gave it different

12  probabilities, what would happen there.  Not much happens,

13  but I wanted to see what would happen to my settlement

14  range.

15       The reason not much happens is because in the high

16  settlement range there I'm already not giving much weight to

17  tax value, so it doesn't change very much if I give it zero

18  weight instead of low weight.

19  Q    Okay.  And what about Number 6?

20  A    So Number 6 was an argument raised by Mr. Tulliano

21  [ph] in his expert report that I made the decision in my

22  analysis that the PHONES are this hybrid debt equity

23  instrument.  They carry a very low two-percent interest rate

24  and so I had to decide do I value them at their face amount,

25  which at the time of the LBO was about 1.25 billion, or do I

1  value them at their debt amount as a discounted debt

2  instrument.  They're not quite a zero coupon bond, but

3  they're close, and that would have been about 470 million

4  which is substantially less.

5       My judgment as the right thing to do from a finance

6  perspective was to count them at a discount at 470.  The

7  examiner counted both the debt component and the equity

8  component because the PHONES have an option to convert into

9  Time Warner shares, and so he used the value of about 560

10  million.

11       But if you go up to 1250, which is what Mr. Tulliano

12  does, then you're adding 700 to 800 million of debt onto

13  Tribune.  You haven't changed its asset value at all and,

14  therefore, you've made it more likely that Tribune is

15  balance sheet insolvent either at step one or at step two.

16       Now that doesn't get you to Scenario F because it

17  doesn't change the subs.  This is only at Tribune.  So

18  you've moved Tribune value down, but you haven't moved the

19  sub value at all because the PHONES are at Tribune.  So it

20  doesn't have a large effect on recoveries, but you can

21  estimate the effect.  Basically, you move some probability

22  weight out of A, out of no avoidance into some avoidance and

23  out of B and C, which is some avoidance, into D and E which

24  is more avoidance.  You don't get to F, which is the key

25  driver.  But you move -- you move the settlement range by a

1 little bit.

2 Q     Okay.  And then finally Number 7.

3 A     Yeah.  So Number 7 is addressing an argument raised by

4 -- by the examiner that he suggests the possibility that as

5 an equitable matter the Court might decide that if Tribune

6 is step one solvent, but step two insolvent, so $300 million

7 in disgorgement is coming in from the step two lenders, that

8 the natural waterfall, most of that goes right out to the

9 step one lenders because they've been allowed.  No formal

10 step integration.  Step one debt is good.  He says there's a

11 possibility as an equitable matter that the Court would

12 decide to say that the step one banks don't participate in

13 that 300 million and instead it goes out to the Tribune

14 creditors.  And he models that -- and he actually has eight

15 scenarios, not six.  He models that in his Scenario 8.

16 Scenario 7 is not relevant here because it has to do with

17 shareholder recoveries and those are preserved in any event,

18 Examiner's Scenario 7.

19     So he models that and I modeled that as well to

20 estimate suppose we take the examiner view and you apply

21 that remedy, how much difference does it make to the -- to

22 the settlement range.

23 Q    Okay.  Now based on the sensitivity tests that you've

24 just described, did those cause you to change or modify your

25 opinion regarding the reasonableness of the DCL plan --

1  A     No.  I would say --

2  Q     -- and affect the settlement?

3  A     I would say that they reinforced my opinion because

4  what you find when you push on the settlement range from

5  this direction or that direction or some other direction is

6  it just doesn't move very much, especially the top doesn't

7  move.  The bottom ends up moving more than the top.

8       So, for example, tax value matters more at the bottom

9  so if I take it away the bottom moves up more than the top

10 moves up.  Basically, in most of these sensitivity tests the

11 DCL plan remains above the top of the settlement range.  It

12 will dip into the settlement range if I pull back on third

13 party recoveries to 150 million because that's

14 disproportionally hitting the DCL plan.

15      The DCL plan will be back within the settlement range

16 as opposed to outside the top if I go really high in

17 enterprise value up to 8 billion or if I -- also, if I go

18 high in enterprise value, seven-and-a-half or above and also

19 go way down in post-filing interest, this dual sensitivity.

20 It still looks really good.  There's no sensitivity test

21 that I thought was within the realm of plausibility in which

22 the DCL plan is not either above my settlement range or in

23 the upper part of my settlement range.  So I actually

24 thought that this gave me great comfort that this was a

25 genuinely good settlement for the notes and the Tribune

1  unsecured creditors.

2  Q     Okay.  Now, Professor Black, did you have an

3  opportunity to listen to the openings on Tuesday?

4  A     I did.

5  Q     And you did hear the opening that was given by the

6  noteholder plan proponents?

7  A     I did.

8  Q     And during that opening it was suggested that there

9  may be additional different routes to significantly greater

10  payments to the notes.  Do you remember hearing that?

11  A     Yes, I do.

12  Q     And by my count, at least, I thought there were four.

13  And so let me ask you about those.  One was full avoidance,

14  right?

15  A     Yes.

16  Q     And that's what we've been talking about all

17  afternoon, right?

18  A     Yes.

19  Q     Okay.

20  A     That works.

21  Q     And how likely is it -- just to reinforce what you've

22  been saying, how likely is it that you're going to get full

23  avoidance?

24  A     I -- for the reasons I explained it's relatively hard

25  and I put the likelihood at between four percent in the low

1   settlement case and twenty-seven percent in the high

2   settlement case.

3   Q     Okay.

4   A     But this is the home run outcome for the notes and

5   also for the PHONES.

6   Q     Okay.  And then did you also hear a reference to the

7   possibility of step one disgorgements plus step two

8   disgorgements plus the value of the parent getting to a

9   three-billion-dollar value at the parent?

10  A     I did.

11  Q     Okay.  And -- and what was your reaction to that?

12  A     So, first, if I understand that, in my Scenario D and

13  E you have disgorgement at both step one and step two and a

14  lot of money comes back into the parent, and Tribune is

15  worth about $2.3 billion.  Okay.  If you don't allow step

16  one protected debt, then that will go up to about $2.9

17  billion.  So I'm pretty close to the $3 billion that Mr.

18  Zensky -- number that Mr. Zensky used.

19        But then you have to ask where does that money go and

20  where the money is going to go is, in my view of -- my

21  understanding of the world, it's going to go out to the

22  allowed claims at Tribune.  Who are those going to be?

23        Well, you have to then ask is there step one protected

24  debt or not.  I think there's a high probability that there

25  is.  That's the examiner's view.  If there is, that's

1  Scenario D.   Right.   Tribune -- the banks are knocked out

2  at the Tribune level.  A whole lot of disgorgement comes in,

3  but a lot of it goes down to the subs and then gets paid out

4  to the banks because the subs have $6.9 billion in claims at

5  Tribune, and a fair amount of it goes out to the step one

6  protected debt because they still have about $2.7 billion in

7  claims at Tribune.

8       So at that point you've got $2.3 billion at Tribune

9  and the Tribune creditors are collecting about twenty-one

10 cents on the dollar, and so that's a good recovery for the

11 notes.  It's a three-hundred-million-dollar recovery; that's

12 Scenario D, right.  That's in my scenarios.  It's not a home

13 run.

14      What if you take out step one protected debt, you say

15 there is no step one protected debt.  You apply some

16 possibility to that.  So let me call that D-plus, what would

17 happen in that scenario.  Now you're dealing with 2.9

18 billion at Tribune instead of 2.3.  The subs are still there

19 as creditors of Tribune, but the step one protected debt is

20 not.  So there's more value there, fewer people sharing.

21 The net recovery to the notes will go up to, in the 400s

22 before third party recoveries and to about 510 instead of

23 310 with third party recoveries.

24      Now then you have to say how likely is that.  That

25 would happen in Scenarios D or E.  And so one way of

1   assessing how much that matters, and this is what I did in a

2   number of sensitivity analyses, just to give you some

3   flavor, was to say, okay.  Imagine we're in the examiner

4   case.  The examiner assigns a combined sixteen percent

5   probability to D and E.  Now I've got to assign a

6   probability to the step one having no protected debt; take

7   sixteen percent and multiply it by that probability, maybe

8   it's thirty percent.  And then I multiply by the extra value

9   which is $200 million.  And if I do that I get sixteen

10  percent times thirty percent times $200 million.  I get an

11  extra $10 million in expected recovery.  If that scenario

12  happens -- you're in Scenario D and there's no step one

13  protected debt -- you get 200 million, but you only have a

14  five percent chance of getting there, so the effect on

15  settlement was $10 million.

16       And that's -- more broadly that's the nature of my

17  sensitivity analyses was to say make this assumption, ask

18  how likely it is, ask how much it's going to effect the

19  recoveries, and here you can see why this really -- it's not

20  a home run.  All right.  The possibility of this outcome

21  maybe adds $10 million to my existing estimate of the

22  settlement range.

23  Q    Okay.  Did you hear a reference to the possibility

24  that if step two were avoided, but not step one, that step

25  one holders would not be able to participate in recoveries

1    on step two?

2              MR. ZENSKY:  Your Honor, I -- I would just like

3    to object to the extent that Mr. Ducayet is seeking to

4    establish the witness's legal views on that remedy as

5    opposed to what the financial ramifications might be.  Just

6    so we can have a -- a clear question before the answer

7    comes.

8              MR. DUCAYET:  Well, I think it's a mixed question

9    of law and fact, Your Honor.  Part of it is assessing the

10   likely -- the likelihood of the outcome.

11             THE COURT:  Well, I'll allow it.

12             MR. DUCAYET:  Okay.

13             MR. ZENSKY:  I'm sorry, Your Honor.

14             THE COURT:  I will allow it.

15             MR. DUCAYET:  Okay.

16   BY MR. DUCAYET:

17   Q    Do you have the question in mind, sir?

18   A    Yes, I do.

19   Q    Okay.  What -- and what did you think about that?

20   What was your answer?

21   A    So I thought I had to evaluate that argument

22   separately at the Tribune level and at the sub level.  Okay.

23   So first at large this is an argument for equitable

24   subordination in a different guise and you clearly have the

25   power, if you find sufficient evident of misconduct, to

1   apply an equitable subordination remedy, at least that's

2   what I assumed.  I'm sure the lawyers would argue about it.

3   And I thought I was already including that in my

4   probability of Scenario F.  So my first reaction was, okay.

5   This is equitable subordination, but that's already in

6   there.  All right.  This doesn't add much.

7   But now let's think about this remedy at the Tribune

8   level and then at the sub-level.  At the Tribune level, I

9   take it to be an extension of the examiner's view that we

10  shouldn't allow the step two disgorgement coming from the

11  step two banks to go out to the step one banks.  Okay.  And

12  at the Tribune level it feels to me perfectly plausible that

13  as an equitable matter you could apply that remedy if you

14  found the basis in bank conduct.  All right.  I guess it

15  would have to be conduct at step one, but you could do that.

16  That's not going to change very much, and I tried to

17  estimate in a sensitivity test how much it would change

18  recoveries.  And it's just not going to change the

19  recoveries very much because remember I'm always looking at

20  Scenarios D and E where the banks are totally knocked out

21  except for step one protected debt already.  You would have

22  the question for this recovery, do the step one protected

23  debt get to eat at the Tribune table because, after all,

24  they're protected for other purposes.  They gave money for

25  value and in good faith.  That's the underlying assumption.

1       But even suppose you decided not, the step one debt

2   doesn't eat at the Tribune table for any purpose under this

3   theory of recovery.  It's still going to be the case that

4   there's 6.9 billion of sub-claims against Tribune, so a lot

5   of the Tribune value is going to go down to the subs and out

6   to the banks.

7       So you do a little bit better than you do in Scenario

8   D, but not dramatically.  So it's similar qualitatively to

9   knocking out the step one protected debt in Scenario D,

10  right.  Maybe you get up to a 500 million recovery, but not

11  a home run because remember the DCL plan is at 659.

12      The second prong of the noteholder argument, as I

13  understand it, and it took me awhile to understand it.

14  Here's what I think the claim is; that you do something

15  similar -- what -- here's what you do at the subs in

16  substance.  What you say is we're going to knock out step

17  two at the subs.  It's avoided.  And then we're going to

18  bring it back in a peculiar way.  We're going to allow it,

19  but treat it as subordinated to Tribune as equity holder

20  and, therefore, to the Tribune level creditors.

21      So what you're doing, in substance, is you're saying

22  I'm going to turn the Tribune claims into sub-level claims

23  in the amount of $3.7 billion and let them share in the sub

24  recovery.  I don't know if you can do that.  You know, to me

25  that feels like substantive consolidation and I've read the

1  Third Circuit <u>Owens Corning</u> case on substantive

2  consolidation.  So I'm really skeptical about whether you

3  could do this at all.  You then have the question of should

4  you as a matter of equitable -- applying your equitable

5  powers.

6       This one just felt really strange to me.  I thought if

7  you're going to decide that the banks really misbehaved,

8  you're just going to knock them out directly.  You're not

9  going to go through this circuitous route.  So I thought

10 that I had taken this into account in my assessment of

11 Scenario F and it didn't provide a meaningful new road to

12 recovery.

13           THE COURT:  Mr. Ducayet, your time has expired on

14 direct.

15           MR. DUCAYET:  Okay.  Can I ask one final

16 question?

17           THE COURT:  Well, it's not the question that

18 takes a lot of time.

19      (Laughter)

20           MR. DUCAYET:  Fair enough.  Can I ask for a yes

21 or no --

22           THE COURT:  Yes.

23           MR. DUCAYET:  -- answer --

24           THE COURT:  -- you may do that.

25           MR. DUCAYET:  -- to my question?  All right.

1  BY MR. DUCAYET:

2  Q    Professor Black, yes or no, having heard these various

3  arguments during the opening, did any of them cause you to

4  modify or change your opinions about the reasonableness of

5  the settlement?

6  A    No.  The DCL settlement is an excellent --

7  Q    Just --

8  A    -- settlement --

9  Q    Just don't.

10  A    Sorry.

11      (Laughter)

12  Q    Okay.

13  A    No.

14          THE COURT:  Cross-examination.

15          MR. ZENSKY:  May I approach the witness, Your

16  Honor, and the bench?

17          THE COURT:  You may.

18                   CROSS-EXAMINATION

19  BY MR. ZENSKY:

20  Q    Good afternoon, Professor Black.

21  A    Good afternoon.

22  Q    I feel like I'm back at law school a bit, so I hope

23  you go easy on me.

24          THE COURT:  We're back at law school he wouldn't.

25      (Laughter)

1          MR. ZENSKY:  That's for sure.

2          THE WITNESS:  This -- this is the modern law

3   school.

4   BY MR. ZENSKY:

5   Q    Professor Black, prior to this case you have never

6   been engaged to opine on whether a fraudulent transfer had

7   occurred, isn't that right?

8   A    That's correct.

9   Q    Okay.  And prior to this case you've never been

10  engaged to opine on the fairness of a settlement, correct?

11  A    That's correct.

12  Q    Okay.  Now the DCL plan involves a settlement of

13  various claims under the bankruptcy code as well as state

14  law, correct?

15  A    I understand it to involve a settlement principally

16  under the bankruptcy code, but there are some state law

17  issues as well.  Yes.

18  Q    Sure.  And many of the issues you talked about on

19  direct and that effect your opinions involved questions of

20  the code and cases interpreting the code, correct?

21  A    Yes.

22  Q    Okay.  And your overall opinion is that the proposed

23  plan is fair and reasonable to all of the company's

24  creditors?

25  A    Yes.

1    Q    Okay.  Now if you could look at your report I'm going

2    to start with your opening report, which is in your binder,

3    Professor.

4    A    Okay.

5    Q    That's on Page 3 --

6    A    Okay.

7    Q    -- where you describe your qualifications.

8    A    Yes.

9    Q    Now could you read into the record the sentence that

10   begins in the first full paragraph, "except as it overlaps"?

11   A    Yes.

12   Q    "Except as it overlaps with my expertise in corporate

13         finance, corporate acquisitions, and corporate law and

14         practice, I am not an expert in bankruptcy law, but

15         have undertaken research sufficient to enable me to

16         have reasonable confidence in the conclusions below to

17         the extent those conclusions involve mixed questions

18         of fact and bankruptcy law."

19   Q    Okay.  Thank you.

20              THE COURT:  Mr. Black, I'm sorry.  You need to

21   get a little closer to the microphone.

22              THE WITNESS:  Okay.

23              THE COURT:  Thank you.

24              MR. ZENSKY:  Okay.

25   BY MR. ZENSKY:

1  Q     That's a true statement, Professor, correct?

2  A     Yes.

3  Q     Okay.  And when I took your deposition, am I right

4  that you didn't know the governing ruler statute that the

5  Court needs to apply in connection with its assessment of

6  the proposed settlement?

7  A     It needs to apply the relevant standards under the

8  bankruptcy law and I -- some of them are under Section 1129,

9  but there might be others that are under other sections and

10 I'm not an expert in exactly what those standards are.

11 Q     Okay.  And you considered the proposed settlement as a

12 whole.  You didn't look at any particular pieces of it in

13 isolation, correct?

14 A     In my report I look at the settlement as a whole.  I

15 did, as part of my overall work, try to assess some

16 individual pieces, but that's not part of my report.

17 Q     Okay.  Now prior to issuing your report on February

18 8th, you had not reviewed the decision of Judge Walrath in

19 Washington Mutual, had you?

20 A     I had not.

21 Q     Okay.  So you didn't know what it says about reviewing

22 a settlement with multiple parts?

23 A     I had not read the Washington Mutual decision.

24 Q     Okay.  Now you indicated on direct there were areas

25 where you did have to do research about bankruptcy statutes

1    and cases to understand some of the issues that were

2    relevant to your assignment, correct?

3    A    Yes.

4    Q    Okay.  And those would include the safe harbor,

5    546(e)?

6    A    Yes.

7    Q    Okay.  It would include the availability of post-

8    filing interest?

9    A    Yes.

10   Q    It would include what constitutes property or value

11   conferred for purposes of 548(c)?

12   A    Yes.

13   Q    Okay.  It would include the case law interpreting

14   unreasonably small capital?

15   A    Yes.

16   Q    Okay.  It would include the availability of what you

17   call the statutory bank defenses?

18   A    Yes.

19   Q    Okay.  It would include the issues of formal

20   integration and informal integration you talked about on

21   direct?

22   A    In part, though, the standard for formal step

23   integration, which is the one that's developed in the cases,

24   is really not that dissimilar from integration questions

25   that require -- that arise in other areas of corporate law

1    and I have opined on those before.  So there I think I have

2    some expertise.

3    Q    Okay.  Now you met frequently with Sidley Austin in

4    connection with your assignment, right?

5    A    Yes.

6    Q    Okay.  And they gave you their assessment of the

7    various arguments on the issues we just talked about?

8    A    They gave me their memos listing the arguments on one

9    side and the arguments on the other side and the principal

10   cases.  Yes.

11   Q    Okay.  If you could look in your binder, Professor, to

12   the tab that says, "legal memos," which we marked at your

13   deposition.

14   A    Yes.

15        MR. ZENSKY:  And for the record, Your Honor,

16   these are noteholder plan proponents trial Exhibits 2316,

17   2349, 2355, 2356, 57, 58, 59, 60, 61, 62, 63 and 64.

18   BY MR. ZENSKY:

19   Q    Professor, can you just flip through those and tell us

20   if those are the legal memos that were provided to you by

21   Sidley Austin for you to review and get up to speed on your

22   assignment?

23   A    At a quick look I have no reason to believe that these

24   are not the Sidley Austin memos.  Some of them just say

25   privileged and confidential attorney work product at the

1  top, but some of them either have Sidley in them or are

2  memos to Sidley lawyers whose names I recognize.  So that's

3  consistent with this being the full set of --

4  Q    Sure.

5  A    -- legal memos that I received.

6  Q    And just so the record is clear, Professor, they don't

7  just say privileged and confidential attorney work product.

8  That's just the legend at the top and then there's a

9  substantive memo?

10  A    That's right.  There are -- either between fifteen and

11  twenty different substantive memos covering different

12  issues.

13  Q    Okay.  So those issues include settlement standards;

14  that's one of the memos?

15  A    You know, the first one says, "Overview of settlement

16  standards."  Yes.

17  Q    Okay.

18  A    I'm not remembering now -- I read these close to a

19  year ago -- what each one of them was.  I have a general

20  sense of them.

21  Q    Okay.  And if you need to refer to them to answer my

22  next series of questions, just tell us and we'll --

23  A    Okay.

24  Q    -- pause while you review them.

25       One of the memos that you review -- you were supplied

1  with and reviewed dealt with the standards for showing

2  actual fraud in a fraudulent transfer?

3  A    That sounds right.

4  Q    Okay.  One of them include how a Court might assess

5  the reasonableness of the company's projections?

6  A    I don't specifically recall, but, you know, I'll -- if

7  you want to tell me this is -- this is a list of all of

8  them, I'll accept that representation.

9  Q    Okay.  One of the memos included the 546(3) issue that

10  we talked about.  Do you recall that?

11  A    Yes, I do.

12  Q    Okay.  And one of the memos dealt with questions of

13  standing at the subsidiary level and the upstreaming of the

14  dollars to the parent.  Do you recall that?

15  A    I recall that issue being in the case and whether it

16  was one memo or two, I don't remember.

17  Q    Okay.  Great.

18       Now you also worked with the Sidley Austin firm to

19  figure out how to model the waterfall of payments and

20  distributions that would result from your six scenarios,

21  correct?

22  A    Yes, although I would say I was guided there much more

23  by the Alvarez and Marsal firm because they had done their

24  own waterfall analysis.

25  Q    Okay.  And you relied on Sidley Austin to describe to

1    you the argument that you -- as you understand it you

2    believe the noteholders are making that was discussed right

3    before the end of direct examination?

4    A    I discussed it with Sidley Austin, but I also read the

5    briefs and filings by Aurelius on behalf of the noteholder

6    plan and, you know, also tried to glean what I could both

7    from deposition testimony and from your opening statement.

8    Q    Sure.  I understand.  But the legal brief you're

9    referring to, I think, was after the date of your expert

10   report, was it not?

11   A    Yes, but before the date of today.  So I read it in an

12   effort to understand the claim.

13   Q    So let me be clear.  Prior to the date of your expert

14   report, you relied on Sidley Austin to explain the

15   noteholders' position to you on that particular issue?

16   A    I'm remembering an Aurelius analysis of recoveries

17   that was provided to Tribune that I looked at.  I'm

18   remembering an Lazard analysis of the Aurelius recoveries.

19   So, no.  I was not principally relying on Sidley.  I was

20   relying in part on Sidley's understanding, but in part I was

21   relying on those documents as well.

22   Q    Let me try to refresh your recollection this way.

23   Didn't you testify that you asked Sidley five times to

24   explain to you what the argument was because you said you

25   weren't getting it?

1  A     I don't know if I said five times, but I was

2  struggling trying to understand what the argument was based

3  on the written documents available to me.  And so I

4  consulted extensively with Sidley to try to get -- to see

5  whether they had a clear understanding.  But I did have the

6  written documents as well.

7  Q     Okay.  And, finally, and perhaps most important, isn't

8  it true that you worked with Sidley to develop the

9  probabilities in Table 3 that we looked at on your direct

10 examination?

11 A     Not really.  I -- you know, I worked with Sidley in

12 understanding the legal claims and then I had to assign my -

13 - I thought my job was to assign my own probabilities.  Now

14 I certainly showed them to Sidley.  I asked them to, you

15 know, tell me if anything looked wrong about the

16 probabilities.  I don't -- but I -- I -- these are my

17 probabilities.   They're not their probabilities.

18 Q     All right.  Do you remember I took your deposition

19 four or five days ago?

20 A     Yes.

21 Q     It seems like quite longer ago.  Can I hand you a copy

22 --

23 A     Sure.

24 Q     -- of your deposition transcript, Professor?

25         MR. ZENSKY:  We'll have to wait for later, Judge,

1    to get to some of the videotape.

2    BY MR. ZENSKY:

3    Q    Can I direct your attention, Professor Black, to Page

4    155, Line 12, and we were discussing what was then your

5    Table 3 in your original report before it was revised?

6    A    Yes.

7    Q    And I asked you at Line 12, "And those results are

8    shown under the examiner case column in Table 3 and the

9    Black case?"  Your answer was, "And the other four cases as

10   well."  My next question was, "Sure.  I'm just asking you

11   about the examiner and Black case right now."  Answer,

12   "Yes."  Question, "And this work you performed entirely

13   yourself in terms of assessing the probabilities of each of

14   the six outcomes?"  Answer:

15        "I certainly discussed with Sidley their view of the

16        examiner's view and their view of the examiner says

17        the following outcome or the following, you know, sort

18        of bankruptcy law outcome is what is, do you guys

19        agree with that, do you have a different view.  So I

20        didn't develop the probabilities in Table 3 entirely

21        on my own.  I developed them in consultation with

22        Sidley as to, you know, the likely success of

23        different claims in the bankruptcy court."

24        Do you see that, Professor?

25   A    I do.

1   Q    Okay.  Was that truthful testimony when you gave it to

2   me not five days ago?

3   A    I agree with what my deposition said.  I don't see any

4   inconsistency with what I just said three minutes ago.

5   Q    Okay.  That's great.

6        Now you were retained back in March of 2010 by the

7   company -- or by Sidley?

8   A    In early 2010.  I don't remember when.

9   Q    You were interviewed by Mr. Liebentritt sitting here

10  at counsel table?

11  A    No.  I met with Mr. Liebentritt fairly early on.  I

12  wouldn't call it an interview.  He was in -- we had one

13  meeting where he was in the room and listening, and I was

14  discussing different aspects of the case.  I believe that

15  Mr. Ducayet was there, Mr. Bendernagel was there, Mr. Sunil

16  [ph] Mandava from Lazard was there, probably Brian Whitman

17  from Alvarez and Marsal was there, and I think Mr.

18  Liebentritt was more -- was basically listening.

19  Q    Okay.  Now after being retained in the -- I think you

20  said early 2010, you gave the company advice with respect to

21  what the parties refer to as the April plan, did you not?

22  A    I did, but not immediately after.

23  Q    Sure.  So --

24  A    So after -- certainly after April, but not immediately

25  after April because at that point I didn't yet have

1  sufficient knowledge to be able to form an opinion.

2  Q    Sure.  Okay.  I appreciate that clarification.  And a

3  month, two months, three months after the April plan was

4  agreed to by the debtors, you told them you were prepared to

5  give expert testimony in support of that plan, correct?

6  A    Yes.

7  Q    Okay.  Expert testimony that it was a reasonable

8  settlement?

9  A    That's correct.

10 Q    Okay.  Now after that plan terminated, you continued

11 working on your assignment, correct?

12 A    So after that plan came the examiner report and then

13 the original April plan was abandoned and there was various

14 work toward a new plan in the fall of 2010.  And I continued

15 to, you know, work at a -- let me call it a slower pace

16 during that period because I needed to absorb the examiner

17 report, but there was no -- you know, the parties were still

18 trying to reach a new settlement.

19 Q    Okay.  And as the parties discussed -- the parties to

20 the debtor creditor lender plan discussed and reached a

21 settlement, you gave the company your view in real time so

22 to speak, did you not?

23 A    In some cases I did.  Yes.

24 Q    You told the company you would be prepared to say that

25 the first stage of the settlement was a reasonable

1  settlement?

2  A     Yes, I did.

3  Q     Okay.  And then when the company was contemplating the

4  second stage of the settlement that would include the step

5  two disgorgement and release of step two avoidance claims,

6  you told them you were prepared to say that that was

7  reasonable as well?

8  A     That -- I think what I was prepared to say was that

9  the disgorgement recovery in the way that it was handled was

10 reasonable and then at that time the combination of the two

11 pieces put together was reasonable.

12 Q     Okay.  And you gave that company the advice you just

13 described on September 25th, 2010, correct?

14 A     So my recollection based on our deposition testimony

15 was that around that date the second piece, the step two

16 piece was put in place or that people were talking about it

17 and I was actually down giving a -- an academic workshop at

18 University of Illinois at Champaign Urbana and was asked on

19 a rush basis can you think through step two and how it --

20 you know, whether this is an add-on that you would be

21 prepared to support.  So, you know, I did my workshop.  I

22 went to -- went to dinner and I came back and I started to

23 think and worked on the train on Saturday morning and had

24 conversations with -- with at least Mr. Ducayet, I think Mr.

25 Bendernagel as well, on that next Saturday with regard to

1  the second step.

2  Q      Okay.  Professor, just since the Court is keeping us

3  on something of a clock, I would appreciate it if you tried

4  to just focus on the question if --

5  A      Okay.

6  Q      -- if that's okay.

7       Now you placed the date of September 25th because you

8  knew exactly where you were and you checked your calendar

9  during the course of the deposition, correct?

10 A      Yes.

11 Q      Okay.  Great.

12      Now having told the company that you would be prepared

13 to say the settlement was reasonable before it was entered,

14 don't you think that gives you an interest in the outcome of

15 this case that's different from a typical expert witness?

16 A      I could have changed my mind.

17 Q      Okay.  Well, let's explore that.  Don't you think that

18 having told the company in advance, I think this is okay and

19 I'm going to stand up for it, that you would be less

20 receptive to new arguments and new evidence as it unfolded

21 during the confirmation discovery process?

22 A      You know, I didn't think about it that way.  I thought

23 about it as here is my tentative view and I haven't thought

24 it all the way through, and here's how far I've thought

25 about it.  And so, no.  I didn't view myself as bound not to

1  change my view, and then after giving my tentative view I

2  then continued to do work to make sure that I was

3  comfortable with that view and didn't want to -- to withdraw

4  it.

5  Q      Okay.  I think you testified on direct that you've

6  spent about a third of your time over the past year on this

7  assignment?

8  A      Yes.

9  Q      Okay.  So would that be something on the order of 700

10  hours of work, give or take?

11  A      I would say 700 or more.

12  Q      Okay.  And I think you are being compensated $800 an

13  hour, Professor?

14  A      Yes.

15  Q      And to date you've billed something on the order of

16  five or $600,000?  Did I have that right?

17  A      I -- I believe it's north of 500,000.  Yes.

18  Q      Okay.  Now you have no team working with you.  It's

19  just yourself.  Am I right?

20  A      That's correct.  I -- I did not -- I sometimes use a

21  research assistant.  I did not for this case.  I did rely

22  extensively on Lazard for factual input and on Alvarez and

23  Marsal for factual input, and as I've described on -- on the

24  Sidley Austin lawyers with regard to the legal background.

25  Q      Sure.  I understand.  I meant people working under

1  your direction?

2  A      No.

3  Q      Right.  There's no --

4  A      I did not.

5  Q      Okay.  Now if you could look back at your expert

6  report, Professor, which is under one of the tabs in the

7  book.  For purposes of this question you could use the old

8  one or the new one.

9  A      Okay.

10  Q      On Pages 10 to 12 you set forth the materials you had

11  reviewed in the course of preparing your opening report?

12  A      Yes.

13  Q      Okay.  And it accurately listed what you had reviewed,

14  right?

15  A      That was my effort.  Yes.

16  Q      Okay.  You need to be close to the microphone, sir.

17  A      I believe it to be accurate.  Yes.

18  Q      Okay.  And in your rebuttal report you listed

19  additional materials you had reviewed between the time of

20  your opening report and rebuttal report?

21  A      Yes.

22  Q      Okay.  Now if you look at Page 11, and I'm on your

23  opening report, but it's probably the same page in your new

24  one, and you look at Paragraph 10 you list some transcribed

25  interviews that the examiner conducted of various witness --

1    A      Yes.

2    Q      -- witnesses?  And you -- you reviewed those, correct?

3    A      Yes.

4    Q      Okay.  But by process of elimination we know the ones

5    you did not review prior to issuing your report?

6    A      Correct.

7    Q      Okay.  So you did not review the interview --

8    transcript of the interview with Mr. Larson, Mr. Kenney, Mr.

9    Petrick, Mr. Kaplan or Mr. Kenney of Marie Devine, true?

10   A      That's correct.

11   Q      Okay.  And also by process of elimination we know from

12   looking at your expert report you didn't review a single one

13   of the 2004 deposition transcripts that were taken by the

14   creditors' committee, did you?

15   A      The 2000 -- the Tribune leverage buyout was in 2007,

16   so 2004 doesn't make any sense to me.

17   Q      Okay.  It's a bankruptcy rule, Professor.

18   A      (Laughter)

19   Q      It's a reference to depositions that the creditors'

20   committee took of various witnesses in the -- in late 2009,

21   early 2010.

22   A      Okay.  I --

23   Q      You didn't review --

24   A      At this time --

25   Q      -- any of those?

1   A       -- I had not reviewed any of those depositions.

2   That's correct.

3   Q       Okay.  Now -- so if I tell you that two JPM bankers

4   were deposed, Mr. Kapatia [ph] and Mr. Koalchuck [ph] --

5   A       I did not review those depositions.

6   Q       Okay.  And yet you've offered opinions in your report

7   on how likely it is that bank good faith can be shown here?

8   A       I reviewed many briefs addressing the issue of bank

9   good faith.  I reviewed the examiner report.  I reviewed the

10  principle emails and correspondence referred to in there,

11  and I thought that those were a sufficient basis for a rough

12  judgment as to the likelihood of whether it's bank good

13  faith or egregious behavior.

14          But, frankly, in that area in large measure I'm

15  relying on the examiner's recounting of what he thinks the

16  principle evidence is.

17  Q       Okay.  Now continuing with the list of witnesses who

18  were deposed, you didn't review the depositions of Mr.

19  Browning or Mr. Rucker, Mr. Bluff -- Ms. Bluff from Duff and

20  Phelps, or the Houlihan witness, Mr. Butel [ph], did you?

21  A       I did not.  I reviewed the depositions or transcribed

22  interviews that are listed here and no others.  Yes.

23  Q       Okay.  Because a rough judgment is good enough for

24  these proceedings?

25  A       Because I had only as much time as I had and --

1   Q      Okay.

2   A      -- I was prioritizing where I put my time and I read

3   what I thought were the most important depositions to read.

4   Q      Okay.  Fair enough.  The examiner had quite a bit more

5   time than you, did he not?

6   A      Not really.  He did his work in what, three months, so

7   he had people helping him and he was taking the depositions.

8   But, look, I think he did an enormous amount of work in the

9   time that he had to do it, but he was limited in his time as

10  well.

11  Q      Okay.  In fact, would this sound -- strike that.  Do

12  you know that the examiner and his team logged about 22,000

13  hours of work in compiling their report?

14  A      I will accept your representation as to the total

15  amount that they billed.

16  Q      It -- it's on the court docket so you can check.

17         Now you understand that complaints have been approved

18  for filing by the Court and are on file?

19  A      Yes.

20  Q      Alleging the claims that are the subject of the

21  settlement that you're opining on, right?

22  A      The third party claims.  I believe that's right.  Yes.

23  Q      And what about the claims against the banks?

24  A      I reviewed the UCC and PHONES complaints earlier in

25  2010 and then I knew that new complaints had been, whether

1  formally filed or on file, and I asked if there is

2  significant new information that would cause me to spend the

3  time to read these new complaints, and the response I got

4  was, well, not really.  So I have not read the new

5  complaints.  I did read the early 2010 complaints.

6  Q    Okay.  Fair enough.  So when the committee first made

7  its motion for standing, there was a draft complaint

8  attached and you reviewed that complaint?

9  A    I reviewed at least two complaints by the unsecured

10  creditors' committee early in 2010.

11  Q    Okay.  And who was it who told you that there was

12  nothing much different about the complaint that was filed in

13  the later part of 2010?

14  A    So --

15         MR. DUCAYET:  Objection.  I think that

16  mischaracterizes his testimony.

17         MR. ZENSKY:  I think it's exactly what he just

18  said, Your Honor.

19         THE COURT:  I do, too.  Overruled.

20         THE WITNESS:  So here's -- here's what I know,

21  right, is that I was working very hard to try to get to

22  closure on my first report on February 8th, and as part of

23  that I went to a meeting in New York which was attended by

24  lawyers for several of the major lender groups, I think for

25  Oaktree, for JP Morgan, for the unsecured creditors'

1    committee.  And as part of that, you know, they asked me,

2    have you read our new complaints and I said, no.  And they

3    said you really should and I said, okay.  And -- but I was

4    still really busy, so then I pushed back and said can you --

5    to the Sidley people, can you find out which pages they

6    actually want me to read and what's new there.  And the

7    answer that came back was, you know what, there's not so

8    much new there.  This is not a high priority use of your

9    time.  And I -- I took their judgment on that.

10                   MR. ZENSKY:  Okay.  Fair enough.

11    BY MR. ZENSKY:

12    Q    Now in the course of your work, I think it was earlier

13    in your engagement, the front end, you met with a gentleman

14    named Mils Larson, true?

15    A    I believe that I spoke to him on the phone and I'm not

16    sure that I ever met him.

17    Q    Okay.  And the purpose of that was to try to

18    understand the potential tax strategies that Mr. Zell

19    intended to undertake in connection with the acquisition?

20    A    That's -- that's correct.  The leverage partnership

21    strategy that underlies what I call asset disposition tax

22    benefits.

23    Q    Okay.  And you also spoke to Mr. Zell's tax counsel

24    for that reason as well?

25    A    I did.  After speaking to Mr. Larson, I wanted more

1   information about this tax strategy and how solid it was and

2   exactly how it worked, and they said go talk to our tax

3   lawyers, so I went and talked to their tax lawyers.

4   Q    Okay.  And I think you testified quite a bit on direct

5   about the significance of those tax strategies or rather

6   whether the value that might be associated with them counts

7   toward the balance sheet test, true?

8   A    Yes.  These are an important component of balance

9   sheet strategy if they count.

10  Q    Okay.  And do you understand that Mr. Larson is a

11  long-time friend of Mr. Zell?

12  A    He's certainly been a long-time associate of Mr. Zell

13  and if you tell me that they're friendly, I have no reason

14  to dispute it.

15  Q    Okay.  And do you understand he was heavily involved

16  in the transaction itself?

17  A    Yes.

18  Q    Okay.

19  A    Indeed that's why I thought it was useful to ask him

20  about the tax strategy.

21  Q    Okay.  Now let's talk about the examiner again for a

22  moment.  Am I right that you view him more as a bankruptcy

23  practitioner than a bankruptcy scholar?

24  A    So he's on the UCLA law faculty, but he's also the

25  named partner in a bankruptcy law firm or one of the named

1  partners.  And so I view him as a sort of scholar academic

2  as opposed to an academic first.

3  Q    Okay.

4  A    I'm sorry.  A practitioner academic as opposed to a

5  scholar first.

6  Q    Okay.  But you do agree he had the expertise and the

7  credentials to perform the work he was assigned?

8  A    I -- as I said at deposition, I do not doubt that he

9  is an expert in bankruptcy law.

10  Q    Right.  And you don't doubt that he was independent in

11  the sense that he had no bias against any of the parties to

12  this restructuring?

13  A    That's correct.

14  Q    Okay.  Now while you testified, I think in your

15  deposition, that you have more experience, I think, in the

16  mergers and acquisitions area, you would agree that Mr. Klee

17  has more experience in the bankruptcy arena?

18  A    Yes.

19  Q    Okay.  Okay.  Let's talk about the topic of

20  acquisitions generally for a moment and leveraged

21  acquisitions.  You agree with me that people do, on

22  occasion, overpay for assets?

23  A    Yes.

24  Q    Okay.  And the fact that Mr. Zell may have a

25  reputation as a smart investor, that doesn't preclude in any

1  way the possibility that he overpaid in this instance, does

2  it?

3  A     It does not.

4  Q     Okay.  And people do enter transactions when the

5  company is so levered that it will be unable to weather even

6  a small bump in the road.  That does happen?

7  A     That has happened.  Yes.

8  Q     Okay.  And people actually have entered transactions

9  that are doomed to fail?

10 A     There are court opinions that so find.

11 Q     Okay.  And banks do finance bad deals and lend to

12 companies where there is a likelihood of insolvency?

13 A     That can certainly happen.

14 Q     Okay.  Now a significant issue that cuts through all

15 the fraudulent transfer tests at issue here, Professor, is

16 the reasonableness of the company's projections as they

17 stood at the time of the transaction.  You would agree with

18 that?

19 A     I would qualify it by saying that you have to think

20 separately about the February 2000 projections with respect

21 to step one and about the fall 2000 projections with respect

22 to step two because the company changed and revised its

23 projections during 2007.

24 Q     I'm sorry.  I'm not asking you any qualitative

25 question about these projections, but generally would you

1  agree that the reasonableness of the projections is an

2  issue?

3  A     Yes.

4  Q     Oaky.  And in many cases the adequacy of capital tests

5  turn on whether the company had a reasonable-based case and

6  a serious downside case?

7  A     So the way I would view it is that capital cash flow

8  cushion or unreasonably small capital should be tested, as I

9  understand the bankruptcy cases, against, let me call it a

10  serious downside or stress case.  And so you have to have a

11  serious downside or a stress case.

12  Q     Okay.  All right.  Let's turn to the opinions that you

13  developed and I think that we can look at some of the slides

14  you were shown on direct.

15          MR. ZENSKY:  Your Honor, I take it you still have

16  the slides from --

17          THE COURT:  I do.

18          MR. ZENSKY:  -- from direct?

19          THE COURT:  I do.

20          MR. ZENSKY:  Okay.

21  BY MR. ZENSKY:

22  Q     And do you have them, Professor Black?

23  A     Yes.

24  Q     Okay.  Now Table 1 is the table that sets out the

25  recoveries that you estimated would flow to each creditor

1  class under the assumptions of each of the six scenarios,

2  correct?

3  A     Yes.

4  Q     Okay.  And Table 3 is the table that sets forth at

5  least your revised probabilities of each of the six outcomes

6  in the six cases that you show here --

7  A     Yes.

8  Q     -- correct?  And then when we put Table 1 and Table 3

9  together, I think you described it as a matter of algebra.

10  We get to Table 4 which is the ultimate statement of your

11  opinions --

12  A     No.

13  Q     -- true?

14  A     It is a matter of algebra to combine Table 1 and Table

15  3 to get to Table 4, and it is a matter of algebra to

16  combine Tables 2 and 3 to get to Table 5, and then my

17  opinions will flow from Tables 4 and Table 5.

18  Q     Okay.  Fair enough.  But with respect to Table 4,

19  which is the expected recoveries or expected settlement

20  recoveries without the additional litigation recoveries, the

21  building blocks of that are Table 1 and Table 3?

22  A     The building blocks of Table 4 as a matter of

23  mathematical computation are Table 1 and Table 3.  Yes.

24  Q     Okay.  Great.  All right.  I want to spend some time

25  with you digging deeper on the assumptions in each of the

1    scenarios so we have a clear record, Professor.  So I'm

2    looking at Table 1 --

3    A    Okay.

4    Q    -- which is the table where you have the payouts

5    excluding the hypothetical three-hundred-million-dollar

6    recovery scenario --

7    A    Okay.

8    Q    -- from third parties.  Now before looking at the

9    numbers you made the choice -- strike that.

10          You said that you felt that your six scenarios were

11    very similar to six of the scenarios that were in Annex B of

12    the examiner report?

13    A    Yes.

14    Q    Okay.  But notwithstanding that, you made the decision

15    what six scenarios to model in your expert report?

16    A    Yes, I did.

17    Q    Okay.  And to the extent that the Court could

18    determine that your six scenarios omit a reasonably likely

19    scenario that you didn't consider, then the ultimate result

20    on Table 4 would be misstated to some degree, would it not?

21    A    So the question would be I made a judgment that it was

22    worth having six scenarios rather than eight or nine or

23    thirteen with variance of them.  As I've described for post-

24    filing interest I actually had variance.  I have a Variance

25    C-1 with post-filing interest and a variance C-2 without it,

1  and then I gave seventy percent weight to post-filing

2  interest.  And that involved the judgment that it was going

3  to be more confusion than clarity to have two Scenario C's

4  that differ only based on post-filing interest.

5       I did the same thing for Scenario E.  I did the same

6  thing for Scenario F, and I made other assumptions, such as

7  no step two protected debt that flow through all of the

8  scenarios where I could have said maybe yes, maybe no, let

9  me have more scenarios.

10      I did the same thing with the step one protected debt

11 where I assumed there was step one protected debt in all of

12 the scenarios rather than have a one in two variant with and

13 without step one protected debt in the scenarios where the

14 step one debt would be avoided.

15      So that was a judgment as to the right balance between

16 having enough scenarios to capture the main lines of

17 outcomes without drowning in the details.

18 Q    Right.  Okay.  Again, I would just ask if you could

19 try to focus on the question, Professor.  I'm not asking you

20 to explain or justify the six that you selected, just

21 whether in your view if you omitted a scenario that the

22 Court determines at the end of the day was a reasonably

23 possible scenario, it would affect the results that flow

24 through to Table 4, would it not?

25 A    It might.

1    Q      Okay.

2    A      It might not affect the low end or the high end.

3    Q      Okay.  Now Scenario A I think is easy to dispense

4    with.  You've described it; that is, there is no success in

5    any sort of litigation and each class receives its waterfall

6    recoveries, correct?

7    A      That's Scenario A.  Yes.

8    Q      Right.  And just so we're clear the numbers on your

9    demonstrative Table 1 are based on the 6.75 billion-dollar

10   valuation?

11   A      That's correct.

12   Q      Okay.

13   A      All of the scenarios are based on 6.75 billion

14   valuation and I addressed higher enterprise value in my

15   robustness checks.

16   Q      Okay.  Now Scenario B is the first scenario where

17   there is a partial litigation victory, correct?

18   A      That's correct.

19   Q      Okay.  And in that scenario you have avoidance at step

20   two, but at Tribune only?

21   A      That's correct.

22   Q      Okay.  And the way you modeled the payments that would

23   result, if I understand it, is that the value that otherwise

24   would have gone to the step two holders of the parent level

25   is dispensed pari passu to everyone else at the parent?

1   A      That's correct.

2   Q      Okay.

3   A      And disgorgement comes in to Tribune at the parent

4   from the step two lenders.

5   Q      Sure.  You assumed $302 million of disgorgement in

6   Scenario B?

7   A      Yeah.  I believe the gross amount is 318 and I

8   accepted the Alvarez assumption that that was ninety-five

9   percent collectable.

10  Q      Okay.  And you assumed that the subsidiaries could

11  press a 6.9 billion-dollar claim against a parent?

12  A      Yes.  Again, there I accepted the Alvarez estimate as

13  to the likely amount of valid sub-claims and I tested that

14  in a sensitivity analysis where I used a lower amount.

15  Q      Okay.  And did you ask Alvarez what claim the parent

16  has back against the subsidiaries for intercompanies?

17  A      I did a lot of work with Alvarez to try to understand

18  the intercompany claims going every which way, and the

19  bottom line of that analysis was that the claims of Tribune

20  parent against selected subsidiaries did not meaningfully

21  affect recovery.  So Alvarez, in their waterfall analysis,

22  takes those into account, but they would have moved my

23  numbers by under a billion dollars and substantially

24  complicated the spreadsheet, and so I made the judgment not

25  to model them explicitly.

1  Q      Okay.  And with respect to the disgorgement dollars --

2  you may have answered this already -- that you split up pari

3  passu the same way you split up the value at the parent

4  before disgorgement?

5  A     That's correct.  I addressed the possibility that the

6  disgorgement dollars would not go to the step one banks in a

7  sensitivity analysis.

8  Q     Okay.  Now you covered this in your rebuttal report

9  and testified last week that if a Court were to prevent the

10 step one lenders whose claims have not been avoided in

11 Scenario B, right, their claim is good at the parent?

12 A     Yes.

13 Q     If a Court were to prevent the holders of step one

14 from benefiting from the avoidance of step two with respect

15 to those disgorgement payments, that would drive up the

16 recovery to the notes in the amount of $150 million,

17 correct?

18 A     That sounds like the right amount.  Yes.

19 Q     Okay.

20 A     That assumes that you don't allow any of step one,

21 including the step one protected debt to recover, and if I

22 recall correctly, that also assumes that if the judge were

23 to say, I'm only going to allow the subs recover enough to

24 pay off the sub-trade creditors.  So I'm not going to allow

25 the subs otherwise to recover at the parent and then pay

1  that money out to the banks at the sub level.

2  Q      Okay.  In Scenario B, step one is not avoided,

3  correct?

4  A      That's correct.

5  Q      Okay.  So there is no -- you don't reach the question

6  of protected debt if a step one claim is good in Scenario B?

7  A      Yes.  But remember that this is an equitable remedy,

8  so I wanted to think through suppose the Court were to apply

9  that equitable remedy.  In effect, the Court is saying, the

10 step one banks didn't something wrong or they wouldn't be

11 doing this in the first place.  They might decide let me

12 bypass -- let me call it the step one unprotected debt, but

13 still not bypass the step one protected debt.  And so I

14 wanted to allow for that possibility.

15 Q      Okay.  Now I think you said that this was one of the

16 potential sensitivities that you looked at, but with respect

17 to the numbers on Table 1, if you were to have included this

18 as the more likely outcome with respect to disgorgement or

19 to do a waiting -- let me strike that.  If you included it

20 as the more likely outcome where step one was prevented from

21 sharing in the disgorgement, Column B, the box for the

22 notes, would have been 255 rather than 105.  Can we agree on

23 that?

24 A      So I agree that if I used this as my main scenario,

25 and let's make sure we understand what I'm using.  I'm

1  saying that the 302 million of disgorgement to Tribune

2  doesn't go to the step one banks at all.  It doesn't go

3  directly.  It doesn't go to the step one protected debt and

4  it doesn't go first down to the subs and then out to the

5  banks.  I consider that to be low probability, but if I

6  assigned it a hundred percent probability in Scenario B,

7  then Scenario B would go up from 105 to 255.

8  Q    Okay.  And if you did a waiting between the step one

9  doesn't share in disgorgement outcome and step one does, it

10  would be somewhere between 105 and 255?

11  A    If I'm remembering correctly, if I allow even the step

12  one protected debt to share, then the 150 goes down to

13  thirty-nine.  So I don't think this is actually likely if I

14  assign waitings to move my neighbors in Scenario B by very

15  much.  But it would be somewhere between zero and 150.  I

16  agree with that.

17  Q    Okay.  Fair enough.  Let's move on to Scenario C, and

18  am I correct with respect to how you modeled the

19  distributions, it's essentially the same as Scenario B

20  except that in this case the subsidiary debt has been

21  avoided at step two as well?

22  A    So in this case the subsidiary debt has been avoided

23  at step two and as I described on direct, that's going to

24  raise the question of whether post-filing interest is going

25  to be allowed as well.

1    Q    Okay.  Now if you had run the variant that we just

2    talked about respecting disgorgement, then there could be as

3    much as a hundred-and-fifty-dollar millions -- $150 million

4    that would flow to the notes in Scenario C as well?

5    A    No.

6    Q    Okay.  Did you run a variant in any way that modeled

7    at least -- strike that.  With respect to Scenario C-1 where

8    you allow post-petition interest --

9    A    Yes.

10   Q    Yes.  You ran that at the contract rate, not the

11   federal judgment rate?

12   A    Yes.  So in thinking about post-filing interest I also

13   had to think about if interest is allowed at what rate, it

14   could be at the statutory rate, which I took to be

15   effectively the same as saying you don't collect post-filing

16   interest.  It could be at the contract rate or it could

17   potentially be at the higher default rate.  And what I

18   modeled was a seventy percent chance of collecting at the

19   contract rate, or as I said in my robustness checks,

20   alternatively, collecting some amount of step two protected

21   debt.

22   Q    Okay.  Now you testified near the end of your direct

23   examination that -- that if the step one holders are capped

24   at their claim amount and are not permitted to collect post-

25   petition interest, and if the value is higher -- and you

1  added some other conditions and we'll get to those in a

2  minute.  But if we start to go down that road, that is a

3  viable route for superior recovery to the noteholders?

4  A     If you -- if you don't allow post-filing interest and

5  you go up high enough in enterprise value, then you can get

6  above the 659 in the DCL plan.

7  Q    Right.  And I think you testified last week that if we

8  got up to 7.5 billion, for example, that that would result

9  in almost a billion-dollar payment to the notes under the

10 hypothetical where post-petition interest is not allowed?

11 A     So what I think I testified to is in either Scenario C

12 or Scenario E, if you don't allow post-filing interest and

13 you don't have any step two protected debt and you kick

14 enterprise value up to seven-and-a-half-billion, then just

15 as a matter of the waterfall the notes would get about a

16 billion dollars.

17 Q    Right.  Now when you were discussing this with Mr.

18 Ducayet you said that one of the roadblocks, I think you

19 singled it out as the biggest one on the defense side, would

20 be the 546(e) defense?  You would have to overcome that for

21 this to result in recovery to the noteholders?

22 A     It's -- I certainly viewed it as a significant

23 statutory defense and, therefore, I took it into account in

24 all of my six cases.  I assigned different probabilities to

25 it.

1    Q      Okay.

2    A      It was never a high probability, but it was always

3    there.

4    Q      Okay.  But in connection with whether this provides a

5    route to superior recovery, you singled out 546 as what you

6    perceived to be a significant roadblock, isn't that your --

7    wasn't that your testimony on direct?

8    A      So you -- I am not recalling my testimony on direct.

9    So let me think through the scenario, right?

10   Q      I think it was a yes or no question, Professor.  If

11   you don't --

12   A      I'm not recalling my testimony.  I'm happy to think

13   through the scenario and asses whether 546(e) would be a

14   roadblock to this route.

15   Q      Let me see if we can parse it a little bit.  546(e)

16   would not apply even if the banks were right that it could

17   conceivably work in a fraudulent transfer case.  It wouldn't

18   apply to an intentional fraudulent transfer, would it?

19   A      That's correct.

20   Q      Okay.  And the examiner found that step two was

21   somewhat likely to be found to be an intentional fraudulent

22   transfer, true?

23   A      That's correct.

24   Q      Okay.  And under your rating system for the examiner's

25   probabilities, intent -- somewhat likely equals a fifty-five

1  to seventy percent chance of success --

2  A     Yes.

3  Q     -- correct?  Okay.

4  A     That's how I rated the examiner.  Yes.

5  Q     Right.  So under the examiner view of the world -- not

6  the Black view, but the examiner view, at your midpoint we

7  have a 62.5 percent chance of establishing intentional

8  fraudulent transfer at step two?

9  A     That would be how I would model the examiner's

10 discussion of somewhat likely for intentional fraud at step

11 two.  That's right.

12 Q     Okay.  And that would get us over the avoidance hurdle

13 and over the 546(e) hurdle at the same time, right, if you

14 have an intentional fraudulent transfer, the transfer's

15 avoided or the obligation is avoided and there's no 546(3)?

16 A     I believe that to be correct as a statutory matter.

17 Q     Okay.  Now before we leave Scenario C, you mentioned -

18 - I'm sorry -- you started to talk about D and E, I think,

19 and you mentioned protected debt, protected step one debt?

20 A     Yes.

21 Q     So --

22 A     Protected step one debt would be relevant in Scenarios

23 D and E.

24 Q     Right.  And C as well, right, where step one is -- no.

25 D and E.  I'm sorry.  I was right --

1  A      Principally D and E.  It -- it -- I referred to it

2  when we were talking about bypassing the step one banks in

3  Scenario B before, but the principal place where step one

4  protected debt matters is where the step one debt is avoided

5  and that's Scenarios D and E.  It doesn't matter in Scenario

6  F because the notes and PHONES get paid even if there is

7  step one protected debt.

8  Q     Okay.  And you applied in scenario -- modeling

9  Scenarios D and E $2.7 billion of protected debt?

10  A      I believe it was 2 billion,760 million.

11  Q     Okay.  And just so we're clear on terminology with the

12  Court, when you use protected debt, you mean debt that would

13  come back after avoidance under Section 548(c)?

14  A      That's correct.

15  Q     Okay.  And you understand that that only is available

16  to the holder of an avoided claim if they can establish good

17  faith?

18  A      That is correct.

19  Q     Okay.  And you didn't model, at least as shown on

20  Table 1, the impact of there being no good faith in the step

21  one holders?

22  A      I did not and I will be happy to explain why I made

23  that choice if you want me to.

24  Q     Okay.  Your -- you can be asked that on -- on

25  redirect.

1           THE COURT:  Well, he doesn't have to.

2           MR. ZENSKY:  If Your Honor would like to hear the

3    answer, I'm happy to ask the question.

4           THE COURT:  It's all right.

5           MR. ZENSKY:  Okay.

6      (Laughter)

7    BY MR. ZENSKY:

8    Q    Okay.  Now in Scenarios D and E you applied the same

9    methodology.  You let the subsidiaries present a claim

10   against the parent?

11   A    So in all of my scenarios, A through E, the

12   subsidiaries are considered to have a 6.9 billion claim

13   against the parent.  Scenario F, that doesn't matter.

14   Q    Okay.  Now if you look at Table 3 for a moment from

15   your demonstratives --

16   A    Okay.

17   Q    -- on direct, Professor --

18   A    Yes.

19   Q    -- you testified that -- you see how under the

20   examiner case you have fourteen percent for D and two

21   percent for E?

22   A    Yes.

23   Q    And you testified that the examiner assigned the

24   combined sixteen percent probability to those two scenarios?

25   A    I would say --

1  Q      You didn't really mean it that way, did you?

2  A      No.   The examiner does not give you probabilities.   I

3  assigned a combined sixteen percent to D and E in my

4  interpretation of the examiner case.

5  Q      Okay.   And I under -- I understood it that way.   I

6  wanted to make sure the record was clear was the Court.

7        Okay.   Now in going back to Table 1 for a moment, next

8  to the PHONES line under F, full avoidance, you have 791?

9  A      Yes.

10  Q      Seven-hundred-and-ninety-one-million?

11  A      Yes.

12  Q      Okay.   You understand there's an issue about the size

13  of the PHONES' claim?

14  A      I do.

15  Q      Right.   And  that if the PHONES' claim was allowed in

16  the larger amount, in a full avoidance scenario there's

17  enough value to pay the PHONES' claim in full?

18  A      That's correct.

19  Q      Okay.   And in that case Scenario F, the number that

20  would be there would be something closer to 1.1 billion?

21  A      My understanding is that the potential PHONES' claim

22  would be in the 1.1 billion range.   Yes.

23  Q      Okay.   And, finally, before leaving this part of our

24  discussion, Professor, in Scenarios C, E and F, you don't

25  treat any of the value that is -- that it result -- or

1   strike that.

2        Okay.  Let me move to Table 2 for a moment.  Just a

3   question or two on this, Professor.   With respect to the

4   $300 million that you hypothesized could be collected on

5   Table 2, am I right that you allocated it the same way you

6   allocated value in the scenarios that we just went through?

7   A    I allocated the 300 million among the allowed claims

8   that had not already been paid in full, and the reason that

9   matters is because in my Variance C-2 and E-2, the step one

10  banks have already been paid in full, so they're no longer

11  going to eat at the third party recovery table.

12  Q    Sure.  Because when you bring the disgorgement in, if

13  there's no post-petition interest, there's enough value to -

14  - they are paid in full, as you said?

15  A    They've already been paid in full, so they're not

16  sharing in the -- in the litigation trust recoveries.  That

17  was in -- in third party recoveries that was how I modeled

18  it.

19  Q    Okay.

20           MR. ZENSKY:  Your Honor, are we planning on going

21  straight through or --

22           THE COURT:  Well, how much do you have in

23  remaining cross-exam, estimate?

24           MR. ZENSKY:  Quite a bit.  I would --

25           THE COURT:  Could you be a little more specific?

1          (Laughter)

2                MR. ZENSKY:  I apologize, Your Honor.

3                THE COURT:  It's okay.

4                MR. ZENSKY:  I would say that we're somewhere

5    past a third through the cross.

6                THE COURT:  Okay.  Well, I had thought we might

7    take a break around five, but if you're telling me you would

8    like one a little sooner, we can do that.

9                MR. ZENSKY:  We can keep going.

10                THE COURT:  Okay.  But -- and then resume until

11    about six or so.  See how my stamina is at that point.

12    BY MR. ZENSKY:

13    Q    Okay.  Let's talk about Table 3, Professor, for a

14    moment. Now Table 3 has the -- the probabilities that you

15    determined for each of the six scenarios in each of the six

16    cases, correct?

17    A    Yes.

18    Q    Okay.  Now there is a chart that you produced to us

19    that has some backup that underlays (sic) the numbers on

20    this table, correct?

21    A    Yes.

22    Q    Okay.  Now I'm going to ask you if you could look in

23    your binder -- if you go to the tab that says, Spreadsheet

24    Full.

25    A    Yeah.

1   Q     And you see the exhibit that says, Defendant's Exhibit

2   Black 26?

3   A     Yeah.

4   Q     From your deposition?

5   A     Yes.

6   Q     Okay.

7          MR. ZENSKY:  I'm just looking, Your Honor, for

8   the trial number for that one.  This is Noteholder Exhibit

9   2367, Your Honor.

10  BY MR. ZENSKY:

11  Q     Okay.  Professor, am I correct that this first

12  document is the set of work papers that you produced in

13  connection with your original expert report?

14  A     I have no reason to think otherwise.  But, you know,

15  it's a sea of numbers, so to verify it would take a while.

16  Q     Yeah.  It is a sea of numbers.  You and I can agree on

17  that.

18         Now if you look at the Page 956.5 --

19  A     Okay.

20  Q     -- Professor --

21  A     Yeah.

22  Q     -- you and I spent some time discussing this last

23  week.

24  A     Yes.

25  Q     Okay.  And that is the backup to Table 3 as it stood

1  at the time of your deposition, correct?

2  A     Yes.

3  Q     Okay.  So to the extent Table 3 drives Table 4, would

4  you agree with me that the document we're looking at, the

5  work papers for Table 3 are pretty important?

6  A     Yeah.  Table -- the Page 956.5 is a important backup

7  for Table 3.

8  Q     Okay.  So let's see if we can help the Court

9  understand some of the numbers on this.  If we could zero in

10 --

11         THE COURT:  Well, first the Court has to be able

12 to read them.

13         MR. ZENSKY:  Yes.  We're going to try to

14 highlight the relevant section, Your Honor.

15         THE COURT:  Thank you.

16     (Pause)

17         MR. ZENSKY:  Your Honor, I think that there is a

18 blow-up of this document later in the binder if I can --

19         THE WITNESS:  Yeah.  I was going to say, gee,

20 I've got a version of this in a word document that I can

21 actually read and maybe we should work with that.

22     (Pause).

23         THE COURT:  Yes, Mr. Bendernagel.

24         MR. BENDERNAGEL:  Would it be helpful to take a

25 break right now?  I mean, we were going to wait anyway and

1   it seems like it might be more efficient.

2            THE COURT:  Well, it couldn't hurt.  Ten-minute

3   recess.

4            MR. BENDERNAGEL:  Thank you.

5        (Recess)

6            MR. ZENSKY:  Thank you, Your Honor.  And we have

7   enlarged the particular line of the chart on your screen,

8   and to the extent we need to delve into those numbers I hope

9   that it's -- it's visible at this point.

10           THE COURT:   It looks great.  Thank you.

11           MR. ZENSKY:  Okay.  Thank you, Your Honor.

12   BY MR. ZENSKY:

13   Q    Okay.  When -- before we broke, Professor, we were

14   going to begin to look at kind of the build-up to Table 3,

15   and on direct you testified about the step integration

16   issue.  Do you recall that?

17   A    Yes.

18   Q    Okay.  And there are essentially --

19   A    Yes.

20   Q    Okay.  Thank you.

21        There are essentially three possibilities as you've

22   modeled it that there be -- there's no integration of any

23   kind, there's informal step integration as you described it,

24   and formal step integration, correct?

25   A    Yes.

1  Q    And you described formal integration, I think, as

2  swinging for a home run.  Do you recall that?

3  A    Yes.  So my concept was with formal step integration

4  you evaluate solvency at step one and only at step one, and

5  you might knock -- you might win on that, but if you don't,

6  you don't get a second look at step two.

7  Q    Okay.  And while I certainly understand the logic

8  behind that as you set it forth or the argument for it as

9  you set it forth in your report, you would agree with me

10 that it's not clear that the examiner necessarily saw it

11 that way; that you only measure at step one informal

12 integration and don't take a second look at step two?

13 A    I agree that it's not clear.  I think that my view is

14 consistent with what the examiner does say, but he doesn't

15 squarely address this issue.

16 Q    Sure.  Okay.  And you agree with me that it's possible

17 that a Court could look at the step two debt at the time of

18 step one for a balance sheet test and then actually conduct

19 a balance sheet test at step two again as well?

20 A    Yes.

21 Q    Now with informal integration, which you apply to the

22 capital adequacy and ability to pay debts test, there you

23 look at the step two and step one debt, both at step one and

24 at step two again, correct?

25 A    Yes.

1  Q      At that point the step one debt has already been

2  assumed so you can swing again with informal step

3  integration, right?

4  Q      At that point, the step one, that's already been

5  assumed.   So you can swing again with informal step

6  integration, right?

7  A      That's correct.  You're swinging only for step two,

8  but you're up at the plate again.

9  Q      Okay.  Now, if we look at the examiner case on the

10 document we've been looking at, which was Bates stamped

11 Black 956.5, the far-right column, there's a heading, Step

12 Integration Possibility or Probabilities.

13 A      That's correct.

14 Q      And in the examiner case, you assigned 20 percent to

15 no integration, 35 percent to informal integration and 45-

16 percent chance of formal.

17 A      That's correct.

18 Q      Now, those numbers themselves do not appear in the

19 examiner report, correct?

20 A      That's correct.  The examiner describes categories

21 highly unlikely, reasonably unlikely, somewhat unlikely and

22 so on and does not assign probabilities or probability

23 ranges to those assessments.

24 Q      Sure.  We can agree on that.  And what you did in the

25 early part of your report was lay out a range of

1  probabilities or percentages that would align with the

2  examiner's seven-point continuum of conclusions, correct?

3  A    That's right.  That was my attempt to take the

4  examiner's language and turn it into probabilities.

5  Q    Okay.  And the numbers that you have assigned in the

6  examiner case to step-integration probability flowed

7  directly from the examiner's stated conclusion on those

8  points.

9  A    They are intended to, yes.

10  Q    Okay.  Now, in contrast to that, Professor, if you

11  could look at -- there are 18 other probabilities in the

12  examiner case across scenarios A through F.  You have

13  various numbers in there, correct?

14  A    That's correct.  So we've got three possibilities for

15  step integration, six scenarios for each, that gives you 18

16  percentages, and then the bottom line, the combined line, is

17  a mathematical combination of the three lines above it, so

18  it's not a separate number.

19  Q    Sure.  So the 18 that we're talking about now are the

20  numbers that flow across next to the no integration,

21  informal and formal.

22  A    That's correct.

23  Q    Okay.  And in contrast to the step-integration

24  percentages, these percentages represent your assessment of

25  an amalgam of issues that would drive any one or more of

1  these scenarios, correct?

2  A     That's correct.

3  Q     And when you multiple the numbers that you inserted

4  for each of scenarios A through F in the three cases times

5  the possibility of step integration, that's how we get the

6  combined probabilities?

7  A     That's how you get the probabilities on the combined

8  line, that's correct.  And I can give you a numerical

9  example, if you want.

10 Q     Okay.  Now, none of these numbers certainly, meaning

11 the 18 numbers we've just identified, none of those numbers

12 appear in the examiner report.

13 A     That's correct.

14 Q     Because I think as we've said -- strike that.  The

15 examiner never gave aggregate conclusions about the ultimate

16 success of any one particular claim.  He gave specific

17 conclusions about each issue or subissue as he saw it.

18 A     That's right.  So, for example, in scenario F, he

19 gives you an assessment of balance-sheet solvency at

20 Tribune, balance-sheet solvency at the subs, cash-flow

21 solvency and cash-flow cushion, but he doesn't say what' the

22 overall likelihood that Tribune is insolvent in one of these

23 senses or the overall likelihood that the guarantor subs.

24 He just doesn't give you that.

25 Q     Sure.  And there are a lot of other issues that would

1  bear on these 18 percentages, as well.  You talked about

2  some of them before like defenses, among other things.

3  A    That's correct.  So he does provide assessments of the

4  defenses in terms of his ranges, but the defenses are not

5  all independent of each other, so you have again the

6  question of how do you assign an overall probability.

7  Q    Okay.  And how you did it, Professor, was through a

8  qualitative judgment, not through a strict mathematical

9  exercise, true?

10 A    So in some cases, I put mathematical bounds on

11 probabilities where, in effect, you can have balance-sheet

12 insolvency or lack of cash-flow cushion, and if I know the

13 examiner's assessment of each of those separately, I can put

14 an upper bound and a lower bound on where he could come out

15 for those two combined, and indeed, I do that in my report,

16 but then in between that upper and lower bound, I use my

17 judgment.

18 Q    Right.  A qualitative judgment.

19 A    I agree.

20 Q    Okay.  Now, for example, the 10 percent number that's

21 in scenario F with no integration in the examiner case, that

22 number was the product of a qualitative judgment.

23 A    That's correct because that's a combined number that

24 reflects the combined possibility with no step integration

25 of balance-sheet insolvency at both Tribune and subs or lack

1  of cash-flow cushion at both Tribune and subs or Tribune

2  actual attempt at step one or bank-equitable subordination

3  at step one.

4  Q     Right.  A lot of issues were driving that number.

5  A     That one is going to be driven by those four issues

6  and then also by taking the statutory defenses off the top.

7  Q     Okay.  So in the absence of it being a mathematical

8  exercise and an exercise in judgment, there was also a

9  degree of subjectivity injected into this weighing of the

10  probabilities, was there not?

11  A     I needed to use my best judgment, yes.

12  Q     Okay.  And in some cases, I think you told me last

13  week some issues nudged you a percentage or two in one

14  direction or another as you weighed them in conjunction with

15  all the other possibilities.

16  A     I believe I used that term, yes.

17  Q     Okay.  And you said that in certain circumstances, the

18  possibility of a claim succeeding, like equitable

19  subordination for example, may have added a little bit of

20  probability of one percent, two percent.  That was part of

21  the process.

22  A     Yes.  So again, if you want to look at your ten-

23  percent number for scenario F in no step integration, I

24  added a -- part of that ten percent, but a small part

25  reflects the possibility that even though Tribune is cash-

1    flow solvent and has a cash-flow cushion and even though

2    either Tribune or the subs are balance-sheet solvent, that

3    you would nevertheless find actual intent or equitably

4    subordinate the banks.

5    Q     Right.  And you told me that, in fact, you had to do a

6    qualitative assessment in your head to prepare these

7    numbers.

8    A     Depending on the assessment, it might have been in my

9    head.  It might have been -- partly been on an calculator,

10   but at the end of the day, it was an overall qualitative

11   judgment, my best judgment as to how the examiner might come

12   out putting, in this case, these four factors combined

13   together in a way that he does not explicitly do in his

14   report.

15   Q     Sure.  And I'm not just focused on the ten-percent now

16   number.  I'm talking generally about the --

17   A     That's true more generally, yes.

18   Q     And you told me that, in fact, you had to do a

19   decision tree in your head with respect to some of these

20   issues.

21   A     In some cases, I tried to do that, and in some cases,

22   I had my trusty old HP 12C calculator, and I did it that

23   way, yes.

24   Q     Right.  And you had a lot of moving pieces in your

25   head, as many as you could handle.

1  A      I think I used the phrase that I tried to keep as many

2  pieces in my head at one time as I could handle, yes.

3  Q      All right.  Now, let's try to go back to some of the

4  examiner's conclusions that you had to kind of bring all

5  together to assign these probabilities.  One was the

6  examiner's view on the likelihood that asset disposition,

7  tax value or cash-flow tax value might be available.

8  A      No, because the examiner did not consider the source

9  of value, so in my understanding of the examiner case, I did

10 not consider it.  I gave it a zero-percent weight.

11 Q      For both of those tax issues?

12 A      Yes.

13 Q      Okay.  You did have to consider the examiner's view as

14 to the likelihood of balance-sheet insolvency in step one at

15 the parent.

16 A      That's correct.

17 Q      And balance-sheet insolvency at the subs at step one.

18 A      That's correct.

19 Q      Okay.  You had to look at -- or strike that.  Let me

20 back up.  The process we're talking about now is the same

21 process you used to develop the Black case and the low

22 settlement and high settlement and the two midcases, as

23 well.

24 A      Certainly, qualitatively similar, that's right, with

25 the difference that for the examiner, I know what the

1   examiner said and I'm trying to understand it.  For the

2   Black case, I'm trying to form my own best judgment of what

3   the judge might do, and for the low-settlement and high-

4   settlement cases, I'm trying to push in one direction or the

5   other direction.

6   Q    Okay.  And in those cases, unlike the examiner, you

7   would have to bring into the mix the -- as a disposition,

8   tax value and cash-flow tax-value issues.

9   A    And assign probabilities to those, that's correct.

10  Q    So moving on, with the issues you had to consider, you

11  had to look at the likelihood of the company satisfying the

12  capital adequacy test at step one and step two.

13  A    Yes.

14  Q    Okay.  And both at the parent and the sub?

15  A    Yes and no.  In my own analysis, I -- for the Black

16  case, I said, if you have cash-flow inadequacy at Tribune,

17  then what's going to happen?  Tribune's going to go

18  bankrupt, the banks are going to turn to the subs and say,

19  "Pay us $10 billion tomorrow please," the subs are going to

20  be bankrupt, as well, so I took Tribune cash-flow, lack of

21  cushion, to drive the result at the subs.  The examiner

22  actually doesn't do that.  He allows for some possibility

23  that the subs could have a cash-flow cushion even though

24  Tribune doesn't, so I did that different for the examiner

25  than for myself.

1  Q     Right.  So there were a few more mis -- moving pieces

2  in the examiner case on that issue than the Black case.

3  A     In that instance, there were move moving pieces in the

4  examiner case than in my case.  That's correct.

5  Q     Okay.  Now, included in this list of issues are some

6  of the statutory defenses you described earlier.

7  A     That's correct.

8  Q     Okay.  So you had to consider whether a bank defense

9  of no payment integration would succeed.

10  A     That's correct.

11  Q     And the examiner gave an opinion on that.

12  A     He did.

13  Q     Okay.  And whether a lack of reasonably-equivalent

14  value, whether that -- how the Court would come out on that

15  issue.

16  A     Yes.

17  Q     And you already talked about on direct, I believe, the

18  question of whether the -- whether they're standing at the

19  subsidiary level to pursue avoidance for the benefit of the

20  parent company creditors.

21  A     That was one of the what I called the substatutory

22  defenses, yes.

23  Q     Okay.  Now, in crunching all this in your head, as I

24  understand it, Professor, you first kind of mapped out the

25  two extremes, what probability to assign to scenario A and

1    what probability to assign to scenario F.

2    A     What I tried to do is remember that scenario F is

3    what's really driving the dollars, so I wanted to have a

4    clear view on scenario F.  And in order to get a clear view

5    on scenario F, I had to have a clear view also on the

6    statutory defenses because they pull weight away from

7    scenario F.  So the way I thought about it is the most

8    important statutory defenses end up being -- you know, some

9    are in scenario D, some are scenario A, so I wanted to start

10   at the ends.  I started with A and with F, and I wanted to

11   get a really clear view of those, and then I worked toward

12   the middle.

13   Q     Sure.  After setting A and F out, you distributed the

14   rest of the probabilities in B, C, D and E?

15   A     That's correct.  That's basically how I worked.

16   Q     Now, I think we've already agreed that the examiner

17   gave his specific conclusions along a seven-point continuum.

18   A     I would say even more than that because sometimes he

19   says somewhat unlikely, but close, somewhat unlikely, but

20   very close.  In a number of instances, he says reasonably

21   unlikely, but no evidence or no credible evidence.  So you

22   can't just look at his categories.  You also have to look at

23   his own qualifiers to those categories.

24   Q     Now, do you understand on Page 4 of the report, the

25   examiner stated that his conclusions were his bottom line

1  regarding the issues presented?

2  A    If you tell me it says that on Page 4 of the examiner

3  report, I'll believe you.

4  Q    You don't remember reading that?

5  A    I don't remember reading that particular sentence out

6  of 1,200 pages of the examiner report.

7  Q    Okay.  And what would bottom line regarding the issues

8  mean to you?

9  A    So there are a number of places where he spends five,

10  ten, even fifteen pages discussing an issue, and for each of

11  those, he usually comes to one of his seven conclusions, but

12  again, sometimes it's somewhat unlikely, but close.

13  Sometimes it's reasonably unlikely, but no significant

14  evidence.  So I take that collective sense to be his overall

15  view, including the qualifiers that he sometimes uses.

16  Q    Okay.  And in some cases, that was in derogation of

17  the bottom-line conclusion itself, was it not?

18  A    No.  I -- what I tried to do in assigning

19  probabilities to the examiner case is within what I

20  estimated to be his probability ranges, I would move my

21  probability assessment within that range rather than put it

22  always at the middle based on what he said about, sort of,

23  let me call it range-plus.

24  Q    Okay.  It's your view that on occasion, the examiner

25  used the bottom-line conclusion equipoise to mean, I had no

1    opinion, true?

2    A      I think there are some cases where he discusses an

3    issue and says, "I'm going to leave it in equipoise," and I

4    interpreted that to mean he hasn't reached a conclusion

5    rather than it's close to 50/50.

6    Q      Okay.  And there are other places where you believe

7    the examiner said something might be reasonably unlikely,

8    but what he meant was, I had no evidence."

9    A      No.  Where he had no evidence, he said he had no

10   evidence.  There are places where he says reasonably

11   unlikely, but no credible evidence or no reasonable basis or

12   words like that, and I view that as I'm going to assign

13   that, in my understanding of the examiner, toward the bottom

14   of his reasonably unlikely range, for example.

15   Q      Now, did you testify on direct that you believe the

16   examiner misunderstood the possibility of asset-disposition

17   tax value?

18   A      Yes, I did.

19   Q      Okay.  So you believe he was aware of the issue, but

20   just didn't grasp it in its entirety?

21   A      I think he clearly knew something about the issue.  He

22   addresses it in a long, textual footnote, and he says, "I'm

23   not going to count this value because Tribune wouldn't have

24   to pay tax, but it couldn't dispose of assets at a higher

25   value," and the reason why I think it might be counted is

1   because in my understanding, Tribune, in fact, could dispose

2   of assets at a higher value.  However, in my assessment of

3   the examiner case, I just said zero percent.

4   Q    Okay.  Now, let's talk about the issue of correlation

5   for a moment and start with the Bankruptcy Code Section 548.

6   You understand that the code -- the text of the code

7   provides four subsections that can lead to avoidance of an

8   obligation, correct?

9   A    Yes.

10  Q    Okay.  One intentional and three constructive routes.

11  A    Yes.

12  Q    Okay.  And the code does not say that any one of those

13  is a predicate for another.

14  A    That's correct.

15  Q    True?  And it doesn't say that any one is subsumed

16  within another.

17  A    That's correct.  The Bankruptcy Code does not say

18  that.

19  Q    And the examiner report itself doesn't say that in the

20  examiner's view, the tests are subsumed within another as a

21  matter of law, does it?

22  A    Not as a matter of law.  As a matter of practice, he

23  considers, in a number of cases, cash-flow solvency and

24  cash-flow cushion together because his view, similar to

25  mine, is you assess both of those by looking at the

1  company's projections and whether they could pay their

2  bills, and cash-flow solvency is kind of in a base case, and

3  cash-flow cushion is in a downside or stress case.

4  Q    Okay.  But --

5  A    So I think he adopts a view consistent with my view

6  that any time you have cash-flow insolvency, you would also

7  have lack of cash-flow cushion.

8  Q    Okay.  That's your interpretation.  He doesn't say

9  that expressly, does he?

10  A    He does not say that expressly, but his analysis is

11  consistent with that view.

12  Q    Okay.  And in fact, he gives independent, bottom-line

13  conclusions regarding all of those issues.

14  A    In some cases, he does, and in some cases, he analyzes

15  them together.  It depends on whether you're talking about

16  Tribune and subs in step one or step two.

17  Q    Right.  He may talk about them together, but he does

18  give separate conclusions for each of the tests, does he

19  not?

20  A    In some cases, he does.  In others, he does not, if I

21  recall correctly.

22  Q    Now, despite the fact that the examiner did not state

23  that he believes as a matter of law or practice that these

24  tests are subsumed within another -- within one another,

25  when you did your modeling of the examiner case, you added a

1  strong dose of correlation, true?

2  A    I believe that as a factual matter, the different

3  roads to insolvency are likely to be correlated in terms of

4  how a judge would actually look at them.  So in my view, the

5  objective prong of cash-flow insolvency, ability to pay

6  bills, is subsumed within lack of cash-flow cushion.  There

7  is a subjective prong that seems to be less important, and I

8  was focusing on the objective prong.

9  Q    Okay.  Will --

10  A    Balance-sheet solvency and cash-flow insolvency, cash-

11  flow cushion are different tests, and I view them as not --

12  one isn't subsumed within the other, but the factual

13  judgments that lead to one or make it more likely you would

14  get to the other, as well.

15  Q    I understand that, and I understand how you did that

16  in the Black view, but you also -- or in the Black case,

17  rather, but you also applied that thought process to

18  modeling the examiner case, correct?

19  A    Yes.  So I had to ask the question where the examiner

20  does not give you combined probabilities how would he

21  combine them given that these judgments, in my view, are

22  correlated as a factual matter.  He does not tell you what

23  he would do.

24  Q    Now, with respect to the issue of intentional

25  fraudulent transfer, you state in your report that Tribune

1   actual intent will only be found if insolvency is also

2   found, correct?  It's on Page 37 if you'd like to refer to

3   your report.

4   A     So let me look at my report because that doesn't sound

5   right.

6   Q     Take a look at conclusion 13, Professor, on Page --

7   A     Yes, I agree.  I say that in the report.  I think in

8   my probability modeling, I allowed for, you know, a nudge, a

9   small possibility that you could get to scenario F even

10  though you didn't get to -- through the Tribune actual-

11  intent route.

12  Q     Sure.  Understood.  That's one of the nudges we talked

13  about before, right?

14  A     That's correct.

15  Q     And the examiner didn't say that.  He gave a separate

16  conclusion for intention fraudulent transfer at step one and

17  then again at step two.

18  A     Yes, he did.

19  Q     And at step one, he said reasonably unlikely, and in

20  your scale, that's a 15 to 30-percent chance of success?

21  A     Yes.

22  Q     Your scale of the examiner case.

23  A     My interpretation of the examiner scale, yes.

24  Q     All right.  And I think we already established at step

25  two, the examiner said it was somewhat likely that there was

1  an intentional fraudulent transfer which, in your scale, is

2  55 to 70-percent chance.

3  A    Yes.

4  Q    And when you say that you nudged up some of the

5  avoidance outcomes, you're saying that you maybe added a

6  percent or two that intentional fraudulent transfer might

7  bring to the table?  Something on that magnitude?

8  A    Yes.

9  Q    And as a result of the examiner not speaking to this

10  issue, the degree to which he believed the test to be

11  correlated or the outcomes to be correlated, you have less

12  confidence in your judgment about how you treat this issue;

13  isn't that true?

14  A    So it would be my judgment that he would be likely to

15  agree, without assigning a probability to likely, that these

16  are correlated judgments, but how correlated is, itself, a

17  judgment, and I don't know whether my view of the

18  correlation would map on to his correlation, so that was an

19  estimate as to what he might do if he were trying to answer

20  this specific question.

21  Q    Sure.  And as a result of him not speaking to it, it

22  gives you less confidence in your judgment on this issue

23  when you're modeling the examiner case.  True or false?

24  A    So there's more uncertainty in my assessment of the

25  examiner case because of the issues that he doesn't

1   expressly speak to.  That's correct.  And although I give

2   you a number for the examiner case of 475 million in table

3   five, clearly, that's not a precise number.  That's a rough

4   number.  This is roughly where I think the examiner would be

5   likely to come out with my interpretation of what his terms

6   mean in probabilities and my best estimate of what he would

7   say about issues to which he does not speak.

8           MR. ZENSKY:  Can you play video clip seven,

9   please.

10          (A recording was played:)

11          "Q   -- state that intentional fraudulent transfers

12   should be analyzed the way you've described -- you've

13   analyzed it?

14          "A   He doesn't.  He goes -- he starts with

15   intentional fraud and then goes to constructive fraud, but

16   if you look at the way that he analyzes intentional fraud

17   and the factors that he considers, I think that his analysis

18   is consistent with the way that I approached my assessment

19   of what he would be likely to have said if he had addressed

20   this issue.  But I agree that he doesn't, and therefore, I

21   have less confidence in my judgment than for areas that he

22   does explicitly address."

23   Q    Okay.  So was that truthful testimony, Professor, when

24   you gave it?

25   A    Yes, and I think it's entirely consistent with what I

1  just said in Court.

2  Q    Okay.  So you do have less confidence in your examiner

3  case as a result of this issue.

4  A    As a result of a number of issues where the examiner

5  doesn't expressly speak to them, right, and I'm having to

6  use my judgment as to what I think he might say if he did

7  speak to them.

8  Q    Okay.  Fair enough.  Now, let's turn to the

9  constructive fraudulent transfer test.  I think you

10  testified already that the clause -- strike that.  You've

11  testified that with respect to the capital adequacy and

12  ability to pay debts as they come due, you basically treat

13  those as entirely correlated.

14  A    Yes.  So in my assessment for the Black case and in

15  trying to work through the low to high-settlement cases, I

16  made the -- let me call it the simplifying assumption, but I

17  think it's a good one that if you are cash-flow insolvent,

18  you lack a cash-flow cushion, so the cash-flow cushion is

19  the tougher test.  All right?

20  Q    Okay.

21  A    I think that's consistent with the examiner's view of

22  unreasonably-small capital, and there are places where he

23  treats the two together and places where he treats them

24  separately.

25  Q    Right.  But I think you've already agreed that he does

1    not expressly state that it's his view that they are

2    entirely correlated, correct?

3    A    I do not recall him expressly so stating.

4    Q    So in the way you modeled the examiner case, we're now

5    down to really just two tests, balance-sheet solvency and

6    capital adequacy?  That's really what you focused on for

7    modeling the examiner case?

8    A    Effectively, yes.  I was focusing on balance-sheet

9    solvency, which is different at Tribune and the subs, and

10   then at cash-flow cushion, which is the tougher test.

11   Q    Okay.

12   A    And wasn't really worrying about cash-flow solvency

13   because cash-flow cushion was going to be the tougher test.

14   Q    Okay.  And I think you told us a few moments ago,

15   here, you didn't treat the last two tests we're talking

16   about as entirely correlated, but you felt that there was

17   some connectivity between the two, true?

18   A    So I thought that there was a correlation between the

19   factual circumstances in which a court would find balance-

20   sheet insolvency and the factual circumstances in which a

21   Court would find lack of cash-flow cushion.

22   Q    Okay.  And you determined therefore that the

23   likelihood of establishing one if you have failed to

24   establish the other is partially reduced from the

25   probability that the examiner gave, true?

1  A    So if I say I've already established that Tribune is

2  cash-flow solvent and has a cash-flow cushion, then I would

3  -- that would reduce the likelihood, in my judgment, that a

4  judge would find that Tribune was balance-sheet insolvent,

5  and I took that into account in the examiner case, as I

6  understood it, along with the other cases.

7  Q    Okay.  But, again, the examiner did not make an

8  express statement that that's how his conclusions should be

9  tied together, correct?

10 A    Correct.

11 Q    Now -- okay.  Let's move on then and talk about your

12 revised report.  By the time that you and I met last week

13 and I took your deposition, you'd been working on this

14 engagement for close to a year, true?

15 A    Correct.

16 Q    Yeah.  You were preparing to issue a report that would

17 support the April plan at some point.

18 A    Yes.  I have -- I had prepared a -- let me call it a

19 rough-draft report, and it was never completed because the

20 April plan fell apart.

21 Q    Sure.  But you started to work on it.

22 A    I did significant work toward a report on the April

23 plan, yes.

24 Q    And you studied the examiner report carefully after it

25 was released.

1  A    Slowly, but carefully.

2  Q    Okay.  And we've established that back in September,

3  you gave Sidley Austin your view that the settlement, as it

4  was being discussed, was reasonable in your view.

5  A    That -- as a shorthand for the testimony I had earlier

6  today, yes.

7  Q    Sure.  And by January, as I understand it, you had

8  already developed the first 50 pages of what became your

9  expert report and presented it to the bank lawyers, the

10 committee and the debtors, the meeting you talked about.

11 A    I'd say by that time, I had a 200-page report, but I

12 only thought the first 50 were in sufficiently good shape to

13 share with the bank lawyers.

14 Q    Okay, great.  And the first 50 pages contained the

15 charts that we talked about today, table one, two and three?

16 A    Tables one through five, yes.

17 Q    Okay.  And then you issued your report on February

18 8th, 2011.

19 A    Yes.

20 Q    Your overview report.

21 A    Yes.

22 Q    And I assume you quality-checked it a few times before

23 issuing it.

24 A    I did my best.

25 Q    Then you issued a rebuttal on February 21st, and you

1  didn't make any changes to your opening report at that

2  point.

3  A      I did not.

4  Q      Now, in the course of your deposition, I asked you to

5  explain some of the probabilities in the examiner case.  If

6  we could pull that back up on the screen.  Let me try it

7  without the chart at the moment.  I asked you some questions

8  about why you had assigned probabilities in the examiner

9  case, and you real -- you couldn't answer the question.

10 A      I would say that you were pushing me on the relative

11 weight between scenario D and F, where Tribune is found to

12 be step-one insolvent, and you were also pushing me on the

13 relative weight for B and C together versus D and E

14 together, which are the scenarios in which the subs are

15 step-one solvent.  I'm sorry.  They are what they are.  Let

16 me not -- the relative weight on B and C, which I think of

17 together for many reasons, and D and E together.  And then,

18 to some extent, pushing me on the relative weight between D

19 and E and B and C, and I thought you were effectively -- as

20 I talked through the scenarios in my depositions, I gave the

21 answers that I gave, and then I was thinking to myself,

22 "Hey, I hope that my probability tables match my testimony,"

23 and it turned out that in some cases, they didn't, and

24 therefore I revised my probability tables to, I think,

25 address the good comments that you had in the deposition.

1  Q      Professor, let me try to help you.  Isn't what I asked

2  you in your deposition just to explain the weighting between

3  scenario E and D -- or, excuse me, F and D?

4  A      You asked me a whole bunch of questions about what I

5  think of as the interior probability scenarios B, C, D and

6  E, so I'm not remembering any specific question.

7  Q      Okay.  Do you remember I asked you to explain the

8  weighting between E, which you had a 17-percent chance with

9  informal integration, and D at 8 percent?

10  A      Again, I'm remembering a whole series of questions

11  about the interior weighting of F versus D and E versus D

12  and B and C versus D and E, and I'm not remembering specific

13  questions.

14            MR. ZENSKY:  All right.  Can you play 13, please?

15       (A recording was played:)

16       "Q   Now, if we focus our attention on the examiner

17  case for a moment.

18       "A   Yes, sir.

19       "Q   Okay.  And we look at the informal step

20  integration on the list.

21       "A   Yeah.

22       "Q   Why is there a higher chance of scenario E

23  appearing than scenario D?

24       "A   So this is informal integration?

25       "Q   Yes.  So E versus -- you show 17-percent

1 probability of D -- of E occurring, but only 8-percent

2 chance of D, correct?"

3          MR. ZENSKY:  Can you stop it, please?

4 BY MR. ZENSKY:

5 Q    All right.  So, Professor, we were looking at this

6 chart at that time, right, because I referred you to the

7 particular numbers 17 percent and 8 percent as shown on your

8 spreadsheet.

9 A    Yes.

10 Q    Okay.

11 A    And I had it in front of me, and that's why at the

12 beginning of the tape, I'm looking down instead --

13 Q    Right.

14 A    -- of up.

15 Q    Okay.  No problem.

16          MR. ZENSKY:  All right.  You can continue.

17          "A    Right.  So I've got 25 percent overall, and I

18 gave about two-thirds of it to E.  Right.  And the question

19 is why did I do that.  So this is in the situation where

20 Tribune is step-one insolvent, but the subs are not, right?

21 So most of the time, if the source of insolvency is cash-

22 flow insolvency, then you're going to be in scenario F.  So

23 the other 25 percent is going to be mostly coming out of

24 balance-sheet insolvency, where Tribune is balance-sheet

25 insolvent, but not cash-flow insolvent.  And there, it was

1   my judgment that it would be difficult to get to -- back up.

2   In the circumstances in which Tribune is balance-sheet

3   insolvent, but not cash-flow insolvent, I then had to say is

4   it likely that the subs were also balance-sheet insolvent at

5   step two, and I judged that to be roughly two-thirds likely

6   given we're not talking cash-flow insolvency, we're only

7   talking balance-sheet insolvency, do I think the subs were

8   balance-sheet insolvent also.  In other words, was the

9   Tribune balance-sheet insolvency deep enough to carry the

10  subs with it, and my answer to that was most of the time,

11  yes.

12        "Q   Yes.

13        "A   So that would also include some possibility of

14  step-two equitable subordination or intentional fraud, which

15  would hit the subsidiaries, as well.

16        "Q   Okay.  Now, if we're in -- if we're in the

17  situation of informal step integration, why would you be

18  focused so much on the impact of balance-sheet insolvency as

19  opposed to capital adequacy or ability to pay debts?

20        "A   Because we're in the informal step integration,

21  and -- so let's see, informal step integration, it's going

22  to be relatively hard to get the balance-sheet insolvency,

23  all right, at step one.  So I think that's -- step-one

24  insolvency, D and E, and -- so I know why I got to

25  reasonably unlikely.  And so -- so I'm sorry for muttering.

1   What's now -- what I'm now not understanding is why I put so

2   much weight on D and E combined, all right, why wasn't there

3   more weight on B and C."

4   BY MR. ZENSKY:

5   Q    That was your testimony on Friday, right?  Thursday?

6   A    I believe it was Thursday, but yes, it was my --

7   Q    Okay.

8   A    -- testimony last Thursday.

9   Q    And all I asked you was why you had more weight on

10  scenario E than scenario D.  Does that refresh your

11  recollection?

12  A    And as I worked my way through it, I ended up saying

13  the issue was not E versus D.  The issue was why did I have

14  so much weight on D and E together, and the solution to that

15  after I went back after the deposition and tried to think

16  through it was I had too much weight on D and E combined,

17  and I moved weight over to B and C.

18  Q    All right.  You came back for the next day --

19  deposition, and you told me that you had thought it through

20  and had to make that change.

21  A    That's correct.

22  Q    And that was after 11 months of working on your

23  assignment.  Overnight, you changed your view.

24  A    I thought you did an effective job of pushing me on

25  the internal scenarios, and it made me rethink whether I

1  could -- why I had put the weights in the places that I had

2  put them, yes.

3  Q    Okay.  Let's look at your revised report that was

4  served yesterday that attempts to correct for these issues.

5  And if we could look at the black line to table three.

6  A    So where are you?

7  Q    Right here.  Yeah.  Can you zoom in on the table,

8  please, on the examiner case.  Little too close.  Okay.  So,

9  Professor, does this document from your report or redline

10  served by the debtor's counsel reflect the changes that you

11  made to the examiner case that emanated from our discussion

12  last week?

13  A    So I'm assuming this is my revised report, and it

14  shows the changes from my initial report, and what you're

15  going to see is I took up the -- in the examiner column,

16  right, I took up B and C, and I took down E by a lot, and I

17  ended up, after a full rethinking, D stays at 14 percent.

18  Q    Right.  So to just put some order of magnitude on it,

19  scenario E was reduced by more than 80 percent, from 11 to

20  2.

21  A    So I'd say that D and E combined went down from 25

22  percent to 16 percent, and then I also had to rethink as

23  between D and E, where should most of the weight go, and

24  that led me to put most of the weight on D rather than E.

25  So those were two separate judgments.

1    Q     Okay.  And scenario B, you raised from 5 percent to 9

2    percent?

3    A     Yes.  The way, again, I want to think about it is I

4    took B and C combined and raised them from a combined 16 to

5    a combined 25, and then I had to allocate that extra weight

6    between scenario B and scenario C.

7    Q     Okay.  So let's take a quick look at what's driving

8    your new opinion.  And if you look in your binder, after the

9    work papers -- the original work papers, there is a large

10   spreadsheet, Professor.

11   A     Yes.

12   Q     Okay.  And if you look at the one --

13           MR. ZENSKY:  Your Honor, this is the one that has

14   the Black case and Black case without SESOP tax value at the

15   top, the Black case in the middle, and the examiner case at

16   the bottom.  So it's going to be the third large page.  The

17   numbers are cut off at the bottom.  Does the Court have the

18   spreadsheet available?

19           THE COURT:  I do, but I have the screen, too.

20           MR. ZENSKY:  Okay, great.

21   BY MR. ZENSKY:

22   Q     Professor, when you -- when the revised report was

23   served yesterday, you served a new set of work papers that

24   showed the computation -- or showed the backup for a new

25   table three, correct?

1  A      Yes.

2  Q      Okay.  Would you agree with me that at the bottom of

3  the document we're looking at, we've compared the page we've

4  spent this afternoon looking at, which is the bottom --

5  excuse me, the top one from your original work papers, with

6  the backup for the revised report, and it shows the

7  reallocation that we just talked about?

8  A      If you'll represent to me that that's where those

9  numbers came from, I'll accept that.

10 Q      Okay.  Do they look familiar to you?

11 A      You know, I'd have to go back and look at my original

12 work papers and my revised work papers because I don't keep

13 this many numbers in my head.  I'm sorry.

14 Q      Okay.  Well, the revised work papers are in the book

15 if you'd like to check them.

16 A      As I said, I'll assume that you've correctly

17 represented my prior detailed buildup to table three for the

18 examiner case and my revised detailed buildup to table three

19 for the examiner.

20 Q      Okay.  And can you -- would you agree with me that

21 we'd put boxes around the numbers that changed in the two

22 examiner cases?

23 A      Yes.

24 Q      Okay.  And these are changes among the same set of 18

25 probabilities we talked about that are the drivers of the

1  ultimate outcome.

2  A      So I moved D and E over to B and C, and although you

3  had asked me only about informal-step integration, I made

4  the judgment that a similar move was appropriate for no-step

5  integration for similar reasons.  So I moved those

6  probabilities down, as well.

7  Q    Okay.  So just to take an example, whereas in the

8  original work papers, you had assigned a 25-percent chance

9  of scenario E occurring in the no-integration category --

10 A      Yeah.

11 Q      -- you dropped that all the way down to 3 percent in

12 your new papers, right?

13 A      Yeah.  So I had a combined 25 percent, then I dropped

14 it to 6 percent, and then I had to think about the

15 allocation between D and E.

16 Q    Okay.  And another comparison order of magnitude.  The

17 17 percent that you had originally assigned to scenario E in

18 the informal-step integration category became 5 percent.

19 A      Again, I think about it as the combined 25 percent on

20 D and E became 10 percent.

21 Q    Okay.  Professor, doesn't the fact that you had to

22 make changes of this magnitude after 11 months of working on

23 this cast doubt on your methodology?

24 A      No.

25 Q    Okay.  Is this what you get when you do decision trees

1  in your head, the need to recast things after 11 months of

2  work?

3          MR. DUCAYET:  Your Honor, objection.

4  BY MR. ZENSKY:

5  A    I focused --

6          THE COURT:  Sustained.  You don't need to answer,

7  sir.

8  BY MR. ZENSKY:

9  Q    You stand behind your methodology.

10 A    I stand behind my judgment that my settlement range is

11 a reasonable settlement range, and I stand behind my

12 estimates of the overall likelihood of getting to scenario

13 F.

14 Q    Okay.  Let's look at the -- strike that.  You didn't

15 only make changes to the two examiner cases.  You went back

16 and remodeled virtually all the other cases, as well, after

17 your deposition, right?

18 A    The discussion we had of the examiner case had similar

19 implications for the other cases, as well, and so I went

20 back and thought through the whole set of cases so that I

21 would have an overall set of cases that was internally

22 consistent.

23 Q    Okay.  And would you agree with me that assuming that

24 these were properly copied from your two work papers, the

25 original set and the new set, that on the top of this

1  exhibit that we've put boxes around the numbers that you

2  changed in the two Black cases shown here?

3  A    I'm not sure which page you're on, so I'm on the big

4  spreadsheet that doesn't have boxes.

5  Q    It was the comparison, Professor, of the two.

6         THE COURT:  So now it's back up on my screen, but

7  I don't have it in paper.

8         MR. ZENSKY:  It is in your book, and I can show

9  you if you would rather look at the hard copy.

10        MR. BLACK:  Go ahead and tell me where to look.

11        MR. ZENSKY:  Okay.  Your Honor --

12        THE COURT:  I'm happy to look onscreen as long as

13  it's onscreen, but the screen shuts down if you don't move

14  it for 30 seconds or something like that.

15  BY MR. ZENSKY:

16  Q    Whatever you would prefer, Professor.

17  A    The screen is easier if it's live.

18  Q    Okay.

19  A    But tell me where it is.

20        MR. BENDERNAGEL:  Your Honor, this has nothing to

21  do with the examination, Mr. Zensky's specific examination

22  of the witness.  If this record's going to be reasonable,

23  we're going to have to say the exhibit numbers with these

24  documents or nobody's going to know what anybody's talking

25  about.

1        MR. ZENSKY:  Okay.  That's a fine suggestion.  We

2   can stamp this as a trial exhibit, Your Honor, if that's

3   okay.

4   BY MR. ZENSKY:

5   Q    Okay.  Would you prefer the hard copy, Professor?

6   A    I think a hard copy would be useful since my screen

7   goes on and off.

8   Q    Okay.

9        MR. ZENSKY:  May I approach the witness, Your

10  Honor?

11       THE COURT:  Yes.

12       MR. ZENSKY:  All right.  Got it.  Thank you, Your

13  Honor.

14  BY MR. ZENSKY:

15  Q    Okay.  Professor, we now handed you the hard copy of

16  the exhibit that was in the binder that compares your old

17  work papers and your new work papers for three sets of the

18  cases, the examiner case, the Black case, and the Black case

19  with SESOP -- or without SESOP tax value.  Do you see that

20  now?

21       THE COURT:  And what should we call it, Mr.

22  Zensky?

23       MR. ZENSKY:  What's the last number?

24       We're just checking for what the last exhibit

25  number on the list is, Your Honor.  And I apologize for the

1  delay with the documents.  This is just based on the report

2  we got last night and didn't have time to --

3         THE COURT:  I understand.

4         MR. ZENSKY:  -- put everything together properly.

5         THE COURT:  Okay.

6         MR. ZENSKY:  If you don't grimace too badly, Your

7  Honor, this would be Noteholder Exhibit 2,465.

8         THE COURT:  You're ahead of the examiner.

9      (Noteholder Exhibit 2,465 marked for identification.)

10  BY MR. ZENSKY:

11  Q    Okay.  Back to the Q and A, Professor.  We've just

12  spent some time discussing, while you were looking at it on

13  the screen, the differences between your old examiner case

14  and new examiner case, and now I'm directing your attention

15  to the comparison between the Black case and Black case

16  without SESOP tax value that you prepared in connection with

17  your February 8th report and the work papers that we

18  received yesterday.  Do you see that?

19  A    I do.  And so you've got the old numbers at the top

20  from my detailed work papers and the new numbers at the

21  bottom, as I understand it.

22  Q    That's correct.

23  A    Okay.

24  Q    And just by glancing at it quickly, would you agree

25  with me that we have put a box around the probabilities that

1  you reassigned, so to speak, after your deposition?

2  A     On a quick look, that's how it appears, yes.

3  Q     Okay.  And if you could look at the next spreadsheet,

4  which I took out of the binder for you, which will be 2,466

5  on our list, Professor.  Here, we combine the scenarios for

6  your settlement cases from the original work papers and the

7  settlement cases from your new report.  If you could just

8  eyeball that quickly and tell me if you think we've

9  identified all the changes.

10 A     So I'm not sure it's productive for me to look at each

11 cell by itself, and I'll accept your representation that

12 you've put red boxes around the cells that changed.

13 Q     Okay.  And does -- on this document we're looking at,

14 does it sound right that there were 37 probabilities that

15 were changed between the time of your deposition and today?

16 A     So I went through systematically all six cases, and I

17 thought through the extent to which our discussion had

18 implications for other types of integration.  It really

19 didn't bear on formal-step integration, so you'll see all of

20 the changes here are for either informal-step integration or

21 no-step integration.  But they percolated through all of my

22 six main cases.  I moved weight from -- for the most part,

23 from D and E to B and C and then reallocated, and in a

24 couple of cases, I look at D-E-F combined and reallocated

25 between D and F or among the three combined, but there are

1   fewer of those, only a couple of those.

2   Q    Okay.  All right.  I think we can move on to another

3   topic.  And you can put the sheets away, Professor.

4   A    Now, you discussed on direct, and I think we may have

5   touched on the issue briefly, the issue in the case as to

6   the degree to which the step-one holders can participate in

7   the disgorgement recoveries that would be associated with

8   step two or perhaps even the value that otherwise would have

9   been distribute to step two, correct?

10  A    Yes.

11  Q    We've talked about that.  All right.  Now, if you

12  could look at your original expert report on Page 45.

13  That's in your binder, the original report.

14  A    Okay.  The pages are going to be the same in the

15  revised report because I think the page numbers just didn't

16  change.

17  Q    Let me know when you have it open.

18  A    So it's okay, I'm looking at -- just because it's

19  smaller, I'm looking at the revised report --

20  Q    Actually, I would --

21  A    -- but this wouldn't have changed.

22  Q    I would ask you to look at the original report because

23  my questions will relate to this.

24           THE COURT:  Do I have that?

25           MR. ZENSKY:  It's in the binder, Your Honor.  I

1    apologize.  The large binder I handed out.

2              THE COURT:  Large binder.

3              MR. ZENSKY:  Yeah.

4              MR. BENDERNAGEL:  Your Honor, I assume all these

5    documents have exhibit numbers on them.  Otherwise, this

6    record is going to really be hard to follow.

7              MR. ZENSKY:  This is Noteholder 2216, Your Honor.

8              Thank you, Mr. Bendernagel.

9    BY MR. ZENSKY:

10   Q    Let me know when you have that open, Professor.

11   A    Page 45 of the revised report?

12   Q    No, the original report.

13   A    The original report, okay.  Yeah, it looks like in the

14   redline that you gave me for the revision, some of the

15   pagination has changed.  It did not change in the version I

16   have, so that's why I was --

17   Q    You need to speak into the microphone.

18   A    In the version I have, the page numbers are the same.

19   They aren't in our redline.  So that's why I was puzzled for

20   a minute.

21   Q    It's not my redline.  Do you need me to show you where

22   the report is in your binder, Professor?

23   A    No, I have it now.

24   Q    Okay, great.  So now we're on Page 45.  And this is

25   the portion of your opening report where you stated, or

1   contrasted in some cases, the examiner's view on many of the

2   issues and the Black view on the same issue, correct?

3   A    Yes.

4   Q    Okay.  So if we look at the first entry on Page 45

5   that deals with the question of equitable subordination --

6   do you see that reference, equitable subordination of step-

7   one banks with respect to disgorgement?

8   A    Yes.

9   Q    Okay.  So this entry is specifically talking about the

10  disgorgement issue, true?  That's all we're talking about

11  here.

12  A    I mean, I can read it to you if you want.  This is

13  about --

14  Q    Okay.  Please do.

15  A    So the issue here, which I addressed briefly here, but

16  not elsewhere in the report, is equitable subordination of

17  step-one banks with respect to disgorgement, and that's only

18  going to apply if the step-one bank loans are allowed

19  because if they're avoided, then you don't need to

20  subordinate them, they're already gone.

21  Q    Okay.  And what you're reporting here is that in that

22  instance where step two is avoided, step one is not, with

23  respect to the issue of disgorgement, the examiner left the

24  issue in equipoise, which you have characterized in your

25  parenthetical with the meaning of answer not known, and your

1  view is that this remedy is remote, correct?

2  A    So what the examiner --

3  Q    Just -- correct?  Yes or no?

4  A    No.  That's not what the examiner said.

5  Q    Okay.  Is that what your report says the examiner

6  says?

7  A    No.

8  Q    Okay.  Then why don't you read it into the record so

9  there's no mischaracterization of what the examiner's view

10  was on this issue.

11  A    So I have a summary line, Examiner View, E-equipoise,

12  where I use the capital E to indicate that I'm indicating

13  the examiner's view (with the meaning of "answer not

14  known").  That's my interpretation of the equipoise

15  statement in the examiner report, but "difficult to find a

16  doctrinal basis" --

17  Q    Okay.

18  A    -- which is a quote from the examiner report.  And to

19  my mind, that's part of the examiner's overall assessment in

20  the same way that he qualifies other judgments in other

21  places.

22  Q    Okay.  Now, let's move to the next entry, which deals

23  with a separate issue.  And why don't you read your

24  description of the issue into the record for the next

25  equitable subordination entry in the report.

1  A      So then I had a separate entry, and again, you know, I

2  can give you the history of why, but I don't have a fuller

3  discussion of this elsewhere in my report.  This is

4  equitable subordination of the step-one banks with respect

5  to avoided step-two loans.  Okay?

6  Q      And how did you characterize the question?

7  A      And then I asked, "If step-two loan claims against

8  Tribune are avoidable, will these claims instead be treated

9  as allowed, but subordinated to Tribune's pre-LBO

10  creditors?"

11  Q      Okay.  And what did you report was the examiner's view

12  on this issue in your original report?

13  A      So the examiner doesn't directly address this issue.

14  The closest statement he makes is in what I call examiner

15  view, but it's not really on this issue.  It's on a related

16  issue.  And the examiner says it is "E-reasonably likely

17  that, unless the step-one bank loans are equitably

18  subordinated, the step-one banks will participate fully in

19  recoveries."

20  Q      Okay.  And your footnote cites the portion of the

21  examiner report that this sentence is taken from, correct?

22  A      That's what I would expect, yes.

23  Q      Okay.  Now, you and I tried to parse that sentence at

24  your deposition, and if we parse the statement of the

25  examiner's view that it is reasonably likely that unless the

1  step-one bank loans are equitably subordinated, the step-one

2  banks would participate in recoveries, that means that

3  putting aside equitable subordination, it was reasonably

4  unlikely that you could prevent the step-one banks from

5  sharing in the recoveries associated with the avoided step-

6  two debt, correct?

7  A    So that's a double negative.  So let me see if I can

8  unpack it.  So my --

9  Q    Can you answer the question yes or no?

10 A    No, I cannot.

11 Q    Okay.  Then I'm going to read you your deposition,

12 okay?  And this is Page 378, line 13 to 24.  Do you still

13 have your transcript, Professor?

14 A    Yes, I do.

15 Q    Okay.  It's going to sound familiar because I asked

16 you the exact same question I just asked you.  If you look

17 at --

18            THE COURT:  Let Mr. Zensky know when you're

19 there.

20 BY MR. ZENSKY:

21 Q    Line 13, Page 378.

22 A    Okay.

23 Q    We were talking about the section of your report, and

24 I asked you the question, quote, "So if we parse the

25 statement of the examiner view, that is reasonably likely

1   that unless the step-one bank loans are equitably

2   subordinated, the step-one banks will participate in those

3   recoveries."  Answer, right.  That question, "That means

4   that putting aside equitable subordination, it was

5   reasonably unlikely that you could prevent the step-one

6   banks from sharing in the recoveries associated with the

7   avoided step-two debt."  Answer, yes.  And did you give that

8   testimony on Thursday, Professor?

9   A    I did, and as I look at it, there's a double negative

10  here, and if I could explain what I think your question and

11  my answer were, I would appreciate it.

12  Q    Let me ask the next question, and then we'll see where

13  it takes us.  In the examiner review, reasonably unlikely,

14  or your rating system of the examiner's reasonably unlikely,

15  that's 15 to 30 percent of success, right?

16  A    Yes.

17  Q    Okay.  And then, if we use the midpoint of 15 to 30

18  percent, that would mean that there's a 22.5-percent chance

19  that you could prevent the step-one banks from participating

20  in the value that otherwise would have gone to the step-two

21  holders even in the absence of equitable subordination of

22  step one.  Isn't that how you read the examiner's report?

23  A    And I agreed with that.

24  Q    Okay.  And isn't that how you read the examiner

25  report?

1  A      Here, you've unpacked the double negative, so I agree

2  with this question and this answer.

3  Q      Okay.  Then we can move on.  Now, if we pull up your

4  revised report.

5  A      Okay.

6  Q      You know what?  Strike that.  All right.  Let me move

7  on and ask you a few questions about the Black case,

8  Professor.  Actually not.  Let me move even further along.

9  You talked a little bit today about the four settlement

10 cases.

11 A      More than a little bit.

12 Q      Yes, a lot.  And would you agree that whether

13 intentional or otherwise, the four cases, the low

14 settlement, high settlement and the two mid ones, form a

15 band more around the Black view of the world than the

16 examiner view of the world?

17 A      No.

18 Q      You think the examiner conclusions are dead in the

19 middle of your four sensitivity cases?

20 A      My --

21 Q      Or your four settlement cases?

22 A      My recollection, and I can go back and look at my

23 tables, is that for the most part, the examiner was above

24 the midpoint of my settlement range and not that far from

25 the mid-high case, and I was below the midpoint of my

1  settlement range and not that far from the low-mid case.

2  Q    Okay.  Now, the debtor committee lender plan

3  contemplates substantial litigation after exiting

4  bankruptcy.

5  A    Against non-creditors, yes.

6  Q    Right.  And you estimated for purposes of your report

7  that those claims were worth 300 million?

8  A    I testified on direct that I thought 300 was a conser

9  -- 300 million was a conservative estimate of the likely net

10  recoveries to the litigation trust from that litigation.

11  Q    Do you describe it that way in your report, a

12  conservative estimate?

13  A    In my report, I believe I called it an illustrative

14  estimate, but the reason I used that illustration was

15  because I thought it was both reasonable and on the

16  conservative side.

17  Q    Okay.  Now, you didn't -- when you were modeling the

18  case -- strike that.  When you created table two and table

19  five, which included that $300 million of proceeds, you

20  didn't make any assumption as to when the 300 million would

21  be paid, correct?

22  A    I did not discount it for the delay in receiving it,

23  that's correct.

24  Q    Right.  And you made no assumption about whether it

25  would require a full trial to recover that amount or whether

1   the claims would be settled in those charts, did you?

2   A     No.  This was a settlement analysis of what would it

3   be likely that the claims could be settled for, and I think

4   you saw that in my direct testimony as to the value of the

5   director and officer claims.  I was anticipating a

6   settlement with the D&O liability insurance policy and the

7   same for the other potential defendants.

8                MR. ZENSKY:  Excuse me one moment, Your Honor.

9   BY MR. ZENSKY:

10  Q     Now, when you were engaged for this matter by Sidley

11  Austin back in early 2010, that was not the -- do you need a

12  moment, Professor?

13  A     No, go ahead.

14  Q     I can wait if you're --

15  A     No.

16  Q     That was not the first time that you were retained by

17  Tribune to provide expert testimony, correct?

18  A     That's correct.

19  Q     Tribune was sued by a shareholder before closing step

20  one, and you were retained to give expert testimony on

21  behalf of Tribune in connection with that matter, right?

22  A     There was a -- let me call it a classic shareholder

23  class action at the time of step one challenging the

24  fairness of the price to the shareholders and seeking an

25  injunction against the closing of the step-one tender offer.

1   Q     Okay.  So you were there on the ground, so to speak,

2   in May 2007.

3   A     I was involved in providing an expert report.  It was

4   called a declaration in a litigation known as Garamella,

5   which I assume is the name of the plaintiff in that case.

6   Q     Okay.  Funny enough, Professor, there's a tab in your

7   book that says Garamella Declaration, if you can take a look

8   at that.

9   A     Okay.  So where in this big book is it?  Here it is.

10  Garamella declarations, okay.

11            MR. ZENSKY:  And this is Noteholder Exhibit, Your

12  Honor, 2314, Declaration of Bernard S. Black.

13  BY MR. ZENSKY:

14  Q     Is that the declaration you were just referring to,

15  Professor?

16  A     So let me look through it quickly.  Given the length,

17  the date on the last page, this appears to be my Garamella

18  declaration.  I'll accept your representation that it is.

19  Q     Okay.  And it was dated before step one closed,

20  correct?

21  A     It was dated May 20th of 2007.

22  Q     Okay.  And that was before step one closed.

23  A     Yes, about two weeks before.

24  Q     Now, you believe that as of 2007, Professor, the

25  general belief was that the newspaper publishing business

1   was in a long-term decline, correct?

2   A     I believe that the newspaper business was known in

3   2007 to be a long-term decline, yes.

4   Q     Okay.  And when you issued his declaration that we're

5   looking at, you had results for the company through April

6   2007.  You had their monthly results for the first four

7   months of the year, correct?

8   A     Yes.

9   Q     Okay.  And with respect to Tribune specifically, you

10  would agree that as of the time you issued this report, so

11  based on the first four months of performance, Tribune's

12  revenue was declining, their operating cash-flow was

13  declining, and they were performing below their projected

14  level of performance in the projections that were included

15  in the tender offer.

16  A     I agree with that.

17  Q     Okay.  And the projects that you referred to, we're

18  talking about, were February 2007 projections, right?

19  A     That's correct.

20  Q     Okay.  So based on the March and April results, you

21  knew the company was underperforming its February 2007

22  projections?

23  A     Indeed, in February -- I'm sorry, in March and April,

24  the company did underperform its February 2007 projections.

25  Q     All right.  That makes it easy to agree with my

1   question, correct?

2   A     Yeah.

3   Q     Now, if we look at your declaration footnote 22, which

4   is on Page 15, Your Honor -- do you have that handy,

5   Professor?

6   A     Yes, I do.

7   Q     Okay.  In footnote 22, you told the Court in

8   Garamella, or in your declaration, stated, quote, "Tribune's

9   first-quarter performance was substantially below the

10  projections included in the offer to purchase and closest to

11  downside case B discussed in the projections, which

12  contemplated a three-percent annual decline in publishing

13  revenues."  Do you see that?

14  A     I see that.

15  Q     Okay.  And that was a correct statement when you made

16  it, right?

17  A     Yes.

18  Q     And if you at paragraph 44, the first sentence on the

19  same page, you say, quote, "Tribune's financial performance

20  during 2007 has been weak."  That was a truthful statement,

21  right?

22  A     And footnote 22 is the backup for the sentence in the

23  text that you just read.

24  Q     But it was a truthful statement.  Their financial

25  performance had been weak, correct?

1   A      I so described it in my Garamella report.

2   Q      Okay.  And it was a true statement.

3   A      I think that that is a reasonable way to describe

4   Tribune's financial performance.  I can't say true or false

5   because it's an adjective.  What does weak mean?

6   Q      Okay.  Well, they're your -- they were your words.

7   A      They were my words.

8   Q      Okay.

9   A      I would be comfortable saying the same words today.

10  In my judgment, during the first four months of 2007,

11  Tribune's financial performance was weak.

12  Q      Okay.  And this is before step one closed again,

13  correct?

14  A      That's correct.

15  Q      And as a result of the weak performance, you would

16  agree that without the overhang of the merger or the tender

17  and the merger, Tribune's stock price would have been well

18  below $32 at the time, would it not?

19  A      I believe I said that in my Garamella report, that

20  without the prospect of the merger, Tribune's stock would

21  drop -- I forget the term -- significantly below $32 a share

22  or something like that.

23  Q      Right.  And that could have been $29 a share without

24  the overhang of the merger, right?

25  A      It could have been, yes.

1    Q      Could it have been lower?

2    A      I didn't try to form an opinion at the time as to how

3    significant was -- the drop might have been, but I used the

4    term, I believe, significant, and I didn't mean pennies.  I

5    meant, you know, 31, 30, 29, somewhere in there.

6    Q      If we go back to paragraph 44, Professor, the next

7    statement stated, it's standalone value without the merger

8    has thus likely dropped.  Do you see that?

9    A      I do.

10   Q      Okay.  And you're talking about Tribune, of course,

11   right?

12   A      Yes.

13   Q      And you're talking about -- when you say dropped,

14   you're talking about a drop from its value before the weak

15   performance in 2007 had set in.

16   A      Yeah.  So this is consistent with the discussion we

17   just had that Tribune's value without the merger would

18   likely have been below $32 by a significant amount per

19   share.

20   Q      All right.  And as far as you knew at the time, the

21   company's performance could continue to deteriorate beyond

22   where it already stood at that point.

23   A      That was certainly a possibility as of that time.

24   Q      And in paragraph 38, subsection 3, that's exactly what

25   you state, right, on Page 13?

1  A      So paragraph 38, subparagraph c says --

2  Q      Subparagraph 3.

3  A      -- 3 is imagining that there might have been a delay

4  and trying to explain why the Tribune special committee

5  chose to sign with Zell and not continue to search for

6  higher bids, and I said that during this hypothetical delay

7  period, "Tribune's performance could decline (again), which

8  could lead all bidders, including Zell, to withdraw or

9  reduce their bids."

10  Q      Okay.  At this point in time, May of 2007, the economy

11  wasn't in a recession, was it?

12  A      I believe that to be correct that the recession is

13  dated from later in 2007, if I recall correctly.

14  Q      Okay.  And in your rebuttal report, you state that in

15  early periods, Tribune's performance had dipped and

16  recovered from time to time.  Do you recall that?

17  A      So if you look at the past history of Tribune's

18  performance in recessions, its revenues and operating

19  profit, especially on the newspaper side, had dipped or

20  dropped, in some cases, more than just dipped in past

21  recessions, and then recovered as the economy came out of

22  recession.

23  Q      Okay.  But at this point in time, Tribune's

24  performance was weak and could decline further, but there

25  was no recession in place yet, true?

1  A       There was not yet an economy-wide recession in the

2  spring of 2007.   That's correct.

3  Q       And do you remember giving a deposition in the

4  Garamella case?

5  A       Yes.

6  Q       Okay.  If you'd look at the next document in your

7  binder, that's Noteholder Exhibit 231 -- excuse me, 2315.

8  It'd be right behind your declaration.

9  A       Okay.

10  Q       Now, you remember giving your deposition, but I think

11  you told me last week you hadn't reviewed the transcript

12  itself.

13  A       Yes.  This was heading toward a hearing on a

14  preliminary injunction against the tender offer, and I don't

15  recall ever receiving or seeing this deposition before.

16  Q       Okay.  And you were defended by a lawyer from Sidley

17  Austin at that deposition?

18  A       A lawyer from Sidley Austin was -- participated in the

19  deposition.  I don't know if I was defended is quite the

20  right term.

21  Q       Okay.  Fair enough.  And if you'll look at Page 18 of

22  the deposition.

23  A       Okay.

24  Q       Do you have that?

25  A       Yes.

1  Q     You were asked the question at Line 10, "And if it

2  were difficult to service four billion or whatever debt the

3  company has before the additional four billion, is it fair

4  to say it would be more difficult to service the debt after

5  the additional?"  And do you see that the lawyer from Sidley

6  objected and said it was beyond your area of expertise?

7  A     Yes.

8  Q     Do you see that?  Was he right?

9  A     No.

10 Q     You didn't overrule him, did you?

11 A     I don't think I get to do that in a deposition.  It

12 was beyond the area of expertise that I was asked to --

13 asked for for the purposes of this litigation, which is not

14 the same thing as beyond the things that I think I'm expert

15 in.

16 Q     On direct, you talked about, I think, the base of

17 spreads between the notes and other debt.  Do you recall

18 that --

19 A     I discussed the --

20 Q     -- at the time of step one and step two?

21 A     -- the yield at which the notes were trading at just

22 prior to step one as providing marked evidence on the extent

23 to which investors believe that Tribune would be able to

24 service its debt after step two.

25 Q     Okay.  As step two approached, however, you agreed the

1  spreads were very indicative of insolvency, were they not?

2  A    As step two approached, the notes' yields went from

3  roughly eight-something percent to well into the mid-teens,

4  and the prices correspondingly dropped.  The exact prices

5  and yields depend on the series of notes, and I would

6  describe, as step two approached, the notes were trading at

7  distressed prices that were indicating a significant

8  potential for bankruptcy over the next three to five years,

9  and I believe that I estimate that in my report.

10  Q    Okay.

11         MR. ZENSKY:  Your Honor, I think I have close to

12  a half-hour more.  I don't know how late the Court wants to

13  go.  I assume it will be substantial with some redirect, so

14  I don't know what the Court wishes at this point.

15         MR. DUCAYET:  Your Honor, there will be some

16  redirect.  I don't know if it's going to be substantial.

17         MR. BENDERNAGEL:  Can I make a suggestion, Your

18  Honor, while I'm over here?

19         THE COURT:  Certainly.

20         MR. BENDERNAGEL:  We've been talking about the

21  schedule for the rest of the week, and my sense is that

22  we're pretty much on schedule, and I don't think I have a

23  problem with letting Mr. Zensky carry this witness over to

24  tomorrow morning if that's helpful to him and helpful to

25  you.  If you've had enough of Mr. Black, maybe it isn't, but

1    it's your call.

2              THE COURT:  No comment.  All right.  We can

3    adjourn for the day at this point if it's convenient for

4    you, Mr. Zensky, to break at this point.

5              MR. ZENSKY:  That's why I asked, Your Honor.

6              THE COURT:  Okay.

7              MR. ZENSKY:  Could we -- Your Honor, can we have

8    an instruction about no consultation regarding the

9    testimony?

10             THE COURT:  Okay, sir.

11             Mr. Black, I direct you not to discuss your

12   testimony with anyone between now and the time that you

13   resume the stand tomorrow morning.

14             MR. BLACK:  How about my wife?

15             MR. ZENSKY:  As long as she's not a bankruptcy

16   lawyer.

17             THE COURT:  Well, let's put it this way, the

18   first question Mr. Zensky may ask you may relate to the

19   conversations with anyone that you might have had.  So guide

20   yourself accordingly.

21             MR. BLACK:  Okay.

22             THE COURT:  I'll answer it that way.  Okay.  You

23   may step down, sir.

24        (Witness excused)

25             THE COURT:  Let me just repeat the request that I

1   made at the end of yesterday's session, and that is to exit

2   as quickly and cleanly as possible so that Court's staff and

3   security can head home.  With respect to tomorrow morning,

4   I'll remind you that I do have a hearing here at nine o'

5   clock.  It's on short notice, so objections can be raised at

6   the time of hearing, and I say that because I don't know

7   whether it will be contested.  I suspect that it might not

8   be so that it might not last very long, but I don't yet know

9   that.

10          I ask that if you can clear the tables or at

11  least the first two, just the surfaces, that would be

12  helpful to the parties who will be visiting tomorrow.  And

13  to the extent that the parties in this case are in and out

14  of the courtroom at 9:00, I ask that you just respect those

15  who are asking for relief in the unrelated case.

16          I expect to go again to about the same time

17  tomorrow.  We will take a -- so we will begin at 10:30

18  tomorrow because I have a brief conference call at 10:00,

19  which will not be in the courtroom.  So we'll start at 10:30

20  tomorrow.  I expect to go to around 6:00 tonight.  Are there

21  any questions?

22          MR. BENDERNAGEL:  I have -- not about that, but I

23  have a question for you.

24          THE COURT:  Okay.

25          MR. BENDERNAGEL:  I just want to raise a

1  scheduling issue with you that I don't think is a problem

2  with anybody, and it may not come up, but I don't want to

3  get us into a jam.  As I see the schedule playing out,

4  tomorrow after Mr. Black finishes, and I presume he'll

5  finish certainly before lunchtime, we then put on Professor

6  Fishell [ph], and my sense is that he will take a couple of

7  hours, maybe an -- we can only take an hour and a half on

8  direct, and there'll be some examination after that.  And

9  then, Mr. Mondavo [ph] will follow Professor Fishell, and

10  he's an expert, so you -- it's going to take a couple hours.

11  And then Mr. Chachas [ph] comes after that.  I don't expect

12  that we'll get to Mr. Chachas until Friday morning, but he's

13  available if we have to go forward and start the

14  examination.  I'd prefer not to start an examination and

15  carry a witness over on a direct, but we can see where we

16  are at the end of the day tomorrow.

17          After that, we have Mr. Whitman, and I'm told

18  that they're going to cross him on two of his three expert

19  reports, but not on the third, and that the cross might be

20  an hour, so there'll be some direct.  And then I think

21  there'll be a proffer for Mr. Dempsey.  And what I'd like to

22  ask the Court is that we end for the week at that juncture

23  because the last witness we have is Mr. Hartenstein.  He's

24  the publisher of the L.A. Times.  I don't want to drag him

25  all the way across the country on the possibility he may go

1  on at the very end of the day on Friday given the fact that

2  we have a hard stop at 3:30 and we'd be prepared to put him

3  on first thing Monday.

4          Now, it's possible that we are not going to get

5  all the way through this.  I think we probably will right

6  around 3:30, but I just don't want to bring this witness all

7  the way across the United States.  And I've talked to

8  people, and people have said, "Well, it's probably not going

9  to happen until Monday," and I just wanted to give the Court

10 an alert that that's what we were planning to do.  If people

11 are troubled by that, I'll try to get Mr. Hartenstein here,

12 but I had really planned to put him on Monday -- first thing

13 Monday morning at the earliest, and I wanted to run that by

14 the Court.

15          THE COURT:  Would anyone like to be heard on

16 that?

17     (No audible response)

18          MR. ZENSKY:  We have no problem with the

19 suggestion, Your Honor.  That's fine.

20          THE COURT:  Okay.  You may plan that way

21 accordingly then.

22          MR. BENDERNAGEL:  Appreciate it.

23          THE COURT:  All right.  Anything else before we

24 adjourn for the day?

25          (No audible response)

1          THE COURT:  Court is adjourned.  Thank you all.

2          UNIDENTIFIED MALE:  Thank you.

3      (Proceedings adjourned at 6:06 p.m.)

4

5                        CERTIFICATION

6      I certify that the foregoing is a correct

7 transcript from the electronic sound recording of the

8 proceedings in the above-entitled matter.

9

10

11 _____          March 9, 2011
12 Alicia Jarrett                             Date
13 Transcriber
14

```
 1                              INDEX
 2                                                      Further
 3                   Direct    Cross    Redirect    Recross    Redirect
 4
 5  WITNESSES:
 6
 7  Miriam Kulnis         12       45        78         84
 8
 9  Bernard Black         92      179
10
11
12
13
14
15  DCL EXHIBIT:                                 Marked      Received
16
17  1484 - B. Black's Amended Report              105         106
18
19
```

| Word | Page:Line |
|------|-----------|

**08-13141-kjc**(1) 1:5
**10-minute**(1) 154:15
**17-percent**(2) 248:8 248:25
**20-percent**(1) 139:20
**200-page**(1) 246:11
**22.5-percent**(3) 137:4 138:13 267:18
**25-percent**(1) 255:8
**27-percent**(2) 140:16 141:1
**30-percent**(1) 240:20
**39-percent**(1) 139:25
**48-percent**(1) 135:14
**5-year**(2) 143:20 143:21
**50-percent**(2) 115:21 141:6
**60-something**(1) 138:4
**70-percent**(1) 241:2
**8-percent**(1) 249:1
**80-percent**(1) 141:7
**85-percent**(1) 138:11
**a.m**(6) 1:15 11:1 70:19 83:17 83:17 89:22
**abandoned**(1) 190:13
**abbruzzese**(2) 5:19 5:20
**abid**(1) 2:25
**ability**(5) 121:5 224:22 239:5 243:12
**able**(14) 43:20 51:17 53:25 54:14 76:13 87:5 145:1 145:15 150:12 161:14 173:25 190:1 222:11 278:23
**about**(241) 12:21 14:24 15:4 15:5 15:6 18:22 19:12 22:9 24:14 24:22 25:3 25:16 26:9 27:7 27:13 28:7 28:10 29:14 29:25 30:3 33:24 34:11 35:15 36:2 36:5 38:21 38:23 39:5 39:15 42:7 43:11 44:6 46:4 51:23 52:10 52:24 54:5 54:16 54:19 54:23 56:4 56:25 57:23 60:6 60:20 61:6 62:7 63:9 63:25 64:10 65:5 65:14 66:5 66:8 66:10 67:22 68:24 69:22 70:24 71:1 72:9 72:10 72:17 72:21 73:17 74:17 74:17 75:24 77:16 78:11 78:23 79:19 79:20 85:1 86:18 86:18 86:21 87:19 88:23 89:1 89:14 92:5 92:13 92:16 92:21 93:14 95:3 95:7 97:9 99:6 99:7 100:1 100:5 100:8 100:12 100:25 101:12 102:6 102:7 102:18 102:23 103:1 103:20 105:14 107:17 108:25 111:20 114:15 116:5 116:6 116:20 125:19 126:23 128:8 130:3 135:12 137:8 137:12 137:16 137:19 138:9 138:22 138:24 139:1 142:4 142:16 143:16 143:22 145:8 145:15 148:23 148:24 150:13 152:8 154:18 158:2 160:17 166:6 166:7 166:19 166:25 167:3 167:9 170:13 170:16 171:15 171:16 172:6 172:9 172:22 174:19 175:2 175:7 177:2 178:4 179:18 181:21 181:25 182:20 183:7 185:10 187:15 188:11 191:16 192:22 192:23 192:25 193:6 197:12 197:23 198:1 200:1 200:5 200:20 200:21 201:19 202:20 202:21 202:25 212:2 212:12 212:13 213:15 216:12 218:12 220:11 220:13 223:15 226:19 227:15 227:17 228:1 230:1 231:20 233:17 234:7 235:22 236:21 237:4 238:15 238:17 240:13 241:12 242:7 244:1 244:16 245:11 246:10 246:15 247:8 248:1 248:11 249:18 253:3 254:7 254:25 255:3 255:14 255:19 257:25 261:11 263:9 263:13 263:23 266:23 268:7 268:9 269:24 271:22 272:18 275:10 275:13 275:14 278:16 279:20 280:8 280:14 281:16 281:22
**above**(13) 113:20 115:19 115:19 115:20 135:12 146:8 147:8 169:11 169:18 169:22 213:6 226:17 268:23
**above-entitled**(1) 284:8
**absence**(2) 229:7 267:12
**absolutely**(4) 63:12 75:2 128:7 128:8
**absorb**(1) 190:16

**academic**(13) 92:16 93:6 93:12 93:13 93:14 93:16 98:2 156:5 156:21 191:17 201:1 201:2 201:4
**academy**(1) 12:5
**accept**(5) 185:8 197:14 254:9 260:11
**accepted**(4) 58:5 58:6 208:8 208:12
**access**(1) 16:25
**accordingly**(4) 54:14 101:3 280:20 283:21
**account**(7) 112:21 144:10 147:16 177:10 208:22 213:23 245:5
**accounting**(1) 93:8
**accounts**(1) 152:11
**accrued**(2) 161:12 161:22
**accurate**(2) 85:23 194:17
**accurately**(1) 194:13
**achieve**(2) 61:6 61:7
**acquisition**(1) 199:19
**acquisitions**(10) 92:12 94:5 94:7 94:9 94:10 95:11 148:10 201:16 201:20 201:21
**across**(9) 62:22 93:8 134:23 135:10 136:2 226:12 226:20 282:25 283:7
**action**(8) 16:22 18:22 37:9 56:6 57:12 57:20 57:23 270:23
**actions**(1) 26:20
**active**(3) 29:3 29:7 62:3
**actual**(14) 109:4 109:8 109:19 109:11 127:9 127:12 127:20 129:2 151:3 185:2 229:2 230:3 240:1 240:10
**actually**(37) 15:9 17:25 30:2 43:21 51:10 59:4 60:8 63:1 71:12 71:17 71:18 73:7 74:20 76:25 80:3 84:7 84:24 93:11 94:12 120:18 133:24 134:4 146:6 157:17 168:14 169:23 191:17 199:6 202:8 205:24 211:13 222:21 224:18 232:22 239:4 261:20 268:8
**adam**(1) 3:26
**add**(6) 118:20 128:19 133:10 134:16 145:20 175:6
**add-on**(1) 191:20
**add-ons**(1) 88:23
**added**(6) 146:22 213:1 229:19 229:24 238:25 241:5
**adding**(1) 167:12
**addition**(3) 49:12 69:9 111:23
**additional**(17) 17:11 33:3 34:1 34:8 37:21 38:14 75:22 76:22 76:24 77:1 77:5 89:15 170:9 194:10 204:20 278:3 278:5
**address**(5) 11:25 224:15 242:22 247:25 265:13
**addressed**(5) 98:24 207:14 209:5 242:19 263:15
**addresses**(2) 98:8 236:22
**addressing**(2) 168:3 196:8
**adds**(1) 173:21
**adelman**(1) 8:21
**adequacy**(6) 203:4 224:22 232:12 243:11 244:6 250:19
**adequate**(3) 86:9 86:24 86:24
**adjective**(1) 274:5
**adjourn**(3) 85:13 280:3 283:24
**adjourned**(2) 284:1 284:3
**adjust**(1) 104:23
**adler**(1) 4:23
**admin**(1) 64:22
**administrative**(1) 65:2
**administrator**(1) 14:3
**admission**(1) 105:5
**admitted**(1) 105:7

**adopts**(1) 238:5
**advance**(1) 192:18
**advantage**(1) 86:22
**adverse**(1) 60:12
**advice**(2) 189:20 191:12
**advise**(1) 13:6
**advisors**(6) 77:24 94:3 149:18 149:19 150:3 151:22
**advocate**(1) 60:9
**affect**(11) 138:22 138:23 155:24 165:23 165:24 166:2 169:2 206:23 207:2 208:21
**afforded**(1) 39:17
**after**(16) 15:14 20:3 22:10 27:2 29:5 29:6 33:4 34:23 49:23 50:15 72:24 72:25 73:20 73:23 73:24 73:25 74:4 92:15 105:20 105:20 107:19 110:5 116:4 118:11 120:14 124:8 131:20 136:7 154:17 161:12 175:23 186:9 189:19 189:22 189:24 189:24 189:2 190:3 190:10 190:12 193:1 199:25 216:13 234:13 245:24 251:15 251:15 251:22 252:17 253:8 255:22 256:1 256:16 260:1 269:3 278:4 278:24 282:4 282:8 282:11 282:17
**afternoon**(10) 86:6 88:8 88:17 90:5 90:6 91:1 170:17 178:20 178:21 254:4
**again**(35) 50:19 55:16 58:1 77:13 100:6 101:25 120:22 120:23 131:4 131:19 148:4 151:14 151:17 153:8 160:19 200:21 206:11 208:12 224:19 224:24 225:2 225:5 225:8 228:5 229:22 235:12 240:17 245:7 248:10 253:3 255:19 265:1 274:12 276:7 281:16
**against**(24) 16:5 40:21 60:22 77:23 77:23 98:19 101:16 109:25 148:2 148:6 164:23 176:4 197:23 201:11 203:9 208:11 208:16 208:20 217:10 217:13 265:7 269:5 270:25 277:14
**agent**(2) 65:2 87:25
**agents**(1) 64:22
**aggregate**(1) 227:15
**ago**(15) 21:24 34:11 38:3 68:4 69:1 69:5 99:6 99:7 100:13 184:19 187:19 187:21 189:2 189:4 244:14
**agree**(38) 24:12 27:24 27:24 50:17 51:8 55:12 85:4 158:13 188:19 189:3 201:6 201:16 201:21 202:17 203:1 210:22 211:16 221:16 224:2 224:9 224:13 224:16 225:24 228:9 240:17 241:15 242:20 254:2 254:20 256:23 259:24 268:1 268:12 272:1 272:16 272:25 274:16
**agreed**(6) 39:1 190:4 234:16 243:25 267:23 278:25
**agreeing**(1) 149:2
**agreement**(25) 4:4 6:15 10:33 15:5 20:7 21:2 21:6 21:25 22:19 26:22 27:3 28:25 72:15 74:5 74:6 74:14 79:3 79:8 83:24 84:1 84:24 98:17 119:17 157:7 158:19
**agudelo**(1) 10:21
**ahead**(8) 25:5 110:4 129:13 150:11 150:16 257:10 259:8 270:13
**akin**(4) 2:19 8:14 43:10 88:4
**alert**(1) 283:10
**algebra**(4) 145:19 204:9 204:14 204:15
**alicia**(1) 284:12
**align**(1) 226:1

**all**(164) 11:4 13:14 20:18 22:16 23:22 28:17 28:22 29:7 32:4 32:11 32:22 36:6 36:11 39:4 40:24 41:22 45:2 54:10 54:13 55:12 57:2 57:3 58:3 60:18 61:2 64:22 65:3 65:8 65:16 65:20 68:25 70:1 74:12 76:12 76:17 76:21 77:10 77:25 80:17 82:19 83:18 84:22 85:9 85:11 88:3 89:12 89:16 90:11 98:3 99:18 100:7 101:2 106:1 107:19 108:10 108:22 108:25 112:21 113:9 115:13 116:16 117:10 117:22 118:7 118:11 120:24 121:14 123:14 125:15 127:14 128:25 129:18 130:13 133:10 133:18 133:23 134:3 134:15 136:7 136:13 137:8 139:8 142:11 142:20 144:6 144:6 145:14 145:20 146:12 149:12 149:12 151:5 155:11 156:6 156:8 156:10 159:13 159:18 161:9 161:21 163:11 164:5 164:5 165:14 165:15 167:13 167:19 170:16 173:20 175:6 175:14 175:23 177:3 177:25 179:23 185:7 187:18 192:24 202:14 203:12 204:24 206:7 206:11 207:13 211:2 213:24 217:4 217:11 228:5 229:15 231:3 231:4 233:23 238:13 240:24 243:19 248:14 249:5 249:16 250:25 251:2 251:9 251:18 255:11 256:16 258:12 260:9 260:16 260:19 260:21 261:2 261:11 264:24 263:10 268:6 272:25 275:20 276:8 280:2 282:25 283:5 283:6 283:23 284:1

**alleging**(1) 197:20
**allison**(1) 7:21
**allocate**(1) 253:5
**allocated**(3) 219:5 219:6 219:7
**allocation**(1) 255:15
**allow**(18) 153:3 162:13 163:4 164:22 165:21 171:15 174:11 174:14 175:10 176:18 209:20 209:23 209:24 210:14 211:11 212:8 213:4 213:12
**allowed**(18) 29:13 29:17 29:22 89:1 102:24 112:18 153:6 161:8 168:9 171:22 211:25 212:13 213:10 218:15 219:7 240:8 263:18 265:9
**allowing**(2) 146:1 164:22
**allows**(1) 232:22
**almost**(3) 39:25 106:10 213:9
**alone**(1) 38:16
**along**(9) 96:10 108:3 141:13 150:7 159:13 159:18 234:17 254:6 268:8
**already**(26) 96:21 102:4 115:14 123:3 133:15 141:2 141:19 166:16 175:3 175:5 175:21 209:2 219:8 219:10 219:15 225:1 225:4 233:17 234:14 240:24 243:10 243:25 245:1 246:8 263:20 275:22
**also**(66) 12:7 15:6 18:5 24:18 32:23 35:2 35:5 40:21 43:23 56:16 58:1 61:2 61:18 64:19 64:24 67:18 67:21 69:10 70:4 70:17 91:8 93:5 93:22 93:25 95:11 98:22 99:15 102:20 107:6 109:1 109:6 117:20 120:19 122:9 128:4 131:3 138:14 138:23 152:18 165:3 166:9 169:17 169:18 171:5 171:6 185:18 186:4 186:6 195:11 199:23 200:24 209:22 212:12 229:6 229:8 234:5 234:22 238:6 239:16 239:17 240:1 247:12 250:4 250:8 250:13 252:22

**alternate**(1) 162:10
**alternative**(5) 6:31 6:32 63:9 63:16 155:18
**alternatively**(1) 212:20
**alternatives**(1) 155:6
**although**(3) 185:22 242:1 255:2
**alvarez**(12) 9:43 9:43 111:17 111:22 185:23 189:17 193:22 208:8 208:12 208:15 208:17 208:21
**always**(8) 32:22 44:25 65:2 65:10 71:6 175:19 214:2 235:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **amalgam**(1) 226:25 | | **and**(301) 75:22 76:2 76:6 76:7 76:9 76:10 76:22 77:4 77:20 77:24 78:2 78:7 78:14 78:14 79:5 79:12 79:23 80:13 81:25 82:3 82:7 83:9 83:9 83:10 83:25 84:18 85:3 85:16 85:17 85:18 85:22 86:4 86:5 86:6 86:10 86:14 86:18 86:23 87:2 87:11 87:12 87:15 87:15 87:18 87:20 87:20 87:22 88:1 88:11 88:23 89:9 89:12 89:15 89:17 89:24 89:25 90:2 90:3 90:8 90:11 90:13 90:18 91:6 91:7 91:8 91:10 91:13 91:16 91:17 91:20 92:6 92:11 92:12 92:13 92:13 92:15 92:16 92:21 92:23 92:24 92:24 93:4 93:5 93:8 93:9 93:19 93:21 93:23 94:1 94:1 94:3 94:6 94:7 94:8 94:9 94:11 94:15 94:21 94:24 95:1 95:7 95:10 95:14 95:17 95:21 95:23 95:25 96:6 96:9 96:14 96:14 96:20 96:25 97:4 97:11 97:17 97:17 97:19 97:22 98:8 98:9 98:11 98:11 98:16 98:16 98:17 98:19 98:21 99:1 99:8 99:10 99:12 99:19 99:14 99:15 99:17 99:18 100:5 100:6 100:6 100:9 100:14 101:7 101:8 101:17 101:17 101:25 102:6 102:11 102:1 102:17 102:18 102:19 102:25 103:9 103:10 104:4 104:16 104:18 104:20 104:2 104:23 104:23 105:19 105:21 106:2 106:5 106:11 106:11 106:12 106:13 106:13 106:15 106:23 106:25 107:5 107:9 107:13 107:17 107:17 107:17 107:20 107:21 107:25 108:1 108:2 108:3 108:8 108:11 108:12 108:13 108:14 108:18 108:24 108:24 109:10 109:11 109:14 109:17 110:7 110:15 111:1 111:2 111:3 111:6 111:10 111:14 111:15 111:17 111:21 112:1 112:12 112:19 112:20 112:23 113:1 113:5 113:7 113:9 113:12 113:13 113:17 113:20 114:1 114:6 114:7 114:10 114:13 114:15 114:20 114:23 114:25 115:4 115:5 115:11 115:18 115:20 115:23 116:7 116:9 116:13 116:12 116:13 116:14 116:19 116:23 117:12 117:17 117:8 117:9 117:9 117:12 117:20 117:21 117:25 118:1 118:4 118:11 118:13 118:17 118:19 118:22 119:1 119:8 119:9 119:18 119:22 120:1 120:11 120:14 120:25 120:21 120:21 120:25 120:25 121:1 121:6 121:8 121:11 121:18 121:21 122:2 121:6 122:6 122:21 122:24 122:25 123:4 123:7 123:10 123:18 124:8 124:11 124:11 124:14 124:25 125:6 125:9 125:13 | **and**(301) 125:17 125:18 125:19 125:21 125:24 126:2 126:2 126:5 126:5 126:8 126:10 126:20 126:23 126:25 127:2 127:4 127:6 127:6 127:10 127:12 127:12 127:15 127:18 127:19 127:19 127:21 128:3 128:11 128:1 128:18 128:18 128:21 128:21 128:22 129:6 129:14 129:20 129:22 130:8 130:11 130:12 130:13 130:17 131:9 131:1 131:15 131:16 131:18 131:21 132:5 132:14 132:17 132:18 132:24 133:2 133:6 133:8 133:9 133:13 133:15 133:20 133:23 134:9 134:11 134:13 135:2 135:5 135:5 135:6 135:7 135:9 135:9 135:14 135:16 135:17 135:18 135:18 136:2 136:6 136:6 136:12 136:17 137:3 137:7 137:10 137:15 137:17 137:18 137:21 138:1 138:2 138:10 138:10 138:15 138:21 138:21 138:23 139:1 139:2 139:4 139:4 139:15 139:18 140:3 140:4 140:4 140:4 140:10 140:14 140:16 141:5 141:7 141:13 141:15 141:24 141:25 142:6 142:10 142:19 143:5 143:11 143:12 143:19 143:20 143:24 144: 144:8 144:10 144:17 144:21 144:25 144:25 145:7 145:18 145:19 145:20 145:22 145:24 146:1 146:7 146:13 146:14 146:23 147:7 147:8 147:9 147:10 147:13 148:2 148:5 148:6 148:7 148:14 148:16 148:17 148:19 148:24 148:24 149:3 149:16 149:17 149:20 150:2 150:3 150:4 150:4 150:5 150:10 150:11 150:13 150:13 150:16 150:16 150:17 150:18 150:23 151:3 151:4 151:7 151:13 151:16 151:18 151:21 152:1 152:4 152:5 152:8 152:15 152:16 152:19 152:20 152:22 153:1 153:2 153:3 153:16 153:17 153:22 153:24 154:6 154:11 155:3 155:5 155:5 155:8 155:22 155:25 155:7 156:9 156:11 156:15 156:17 156:18 156:2 156:23 157:7 157:7 157:11 158:6 158:10 158:24 160:3 160:4 160:7 160:9 161:4 161:13 161:15 161:24 161:25 162:1 162:1 162:12 162:13 162:19 162:2 163:7 163:11 163:15 163:19 164:2 164:2 164:3 164:4 164:16 164:16 165:1 165:5 165:8 165:20 165:23 166:1 166:6 166:9 166:19 166:24 167:1 167:7 167:9 167:13 167:22 167:23 167:23 168:2 168:13 168:1 168:14 168:17 168:19 168:20 169:2 169:18 169:25 170:5 170:8 170:12 170:13 170:16 170:25 171:1 171:4 171:6 171:11 171:11 171:12 171:13 171:13 171:14 171:19 172:3 172:5 172:9 172:10 172:22 172:25 173:1 173:5 | **and**(301) 173:7 173:8 173:9 173:12 173:16 173:19 174:9 174:19 174:22 174:24 175:5 175:8 175:11 175:16 175:18 175:20 175:25 176:5 176:13 176:17 176:20 176:23 176:25 177:11 178:16 179:9 179:18 179:19 179:20 179:22 179:23 180:13 180:13 180:18 181:3 181:8 181:9 181:11 182:1 182:4 182:20 182:1 183:1 183:6 183:9 183:9 183:15 183:17 183:19 183:21 183:25 184:6 184:7 184:8 184:10 184:21 184:22 185:1 185:12 185:13 185:15 185:19 185:23 185:25 186:5 186:6 186:7 187:3 187:7 187:12 188:4 188:7 188:7 188:8 188:9 188:11 188:12 188:16 189:13 189:13 189:17 189:19 190:2 190:12 190:13 190:14 190:19 190:20 191:3 191:5 191:10 191:12 191:17 191:18 191:19 191:22 191:22 191:23 191:23 192:8 192:18 192:23 192:23 192:24 192:25 193:1 193:3 193:12 193:15 193:22 193:22 193:23 193:24 194:18 194:20 194:22 194:24 195:2 195:11 196:4 196:6 196:10 196:11 196:19 196:22 196:25 197:2 197:7 197:12 197:18 197:23 197:24 197:25 198:1 198:3 198:8 198:11 198:22 199:1 199:2 199:2 199:3 199:4 199:6 199:6 199:9 199:9 199:15 199:23 200:1 200:1 200:2 200:3 200:4 200:10 200:13 200:15 201:1 201:6 201:10 201:16 201:20 201:24 202:4 202:8 202:11 202:21 202:22 202:22 203:4 203:5 203:10 203:13 203:22 204:4 204:8 204:8 204:14 204:15 204:16 204:16 204:17 204:21 204:23 205:17 205:25 206:1 206:2 206:6 206:12 207:5 207:8 207:14 207:19 207:22 208:3 208:7 208:10 208:13 208:15 208:18 208:23 208:24 209:1 209:9 209:21 209:25 210:13 210:25 211:3 211:4 211:8 211:9 211:10 211:15 211:17 211:23 212:17 212:24 212:25 213:1 213:4 213:7 213:12 213:13 213:23 214:13 214:20 214:24 215:12 215:13 215:15 215:18 215:19 215:23 215:24 215:25 216:1 216:5 216:5 216:6 216:8 216:9 216:11 216:15 216:19 216:22 217:8 217:20 217:23 218:3 218:5 218:15 218:19 218:23 218:24 219:8 219:9 220:10 221:1 221:16 221:22 221:25 222:21 222:25 223:6 223:8 223:15 223:18 223:24 224:1 224:4 224:4 224:7 224:12 224:16 224:18 224:22 224:23 224:23 225:14 225:15 225:21 225:22 225:24 226:4 226:5 226:16 226:21 226:23 227:3 227:8 227:21 227:25 228:7 228:12 228:14 228:15 228:16 |
| **amended**(7) 63:20 88:7 88:8 103:18 103:25 158:22 285:17 | | | | | | | |
| **amending**(1) 15:5 | | | | | | | |
| **amendment**(1) 22:12 | | | | | | | |
| **amendments**(2) 130:23 131:3 | | | | | | | |
| **america**(2) 6:36 6:42 | | | | | | | |
| **amit**(1) 6:9 | | | | | | | |
| **among**(5) 27:6 219:7 228:2 254:24 260:25 | | | | | | | |
| **amongst**(1) 19:22 | | | | | | | |
| **amount**(38) 60:1 76:13 80:11 80:11 80:17 107:24 113:11 113:24 115:2 115:21 124:5 124:5 133:2 148:19 160:24 160:24 161:13 161:21 161:22 162:9 164:7 165:4 166:24 167:1 172:5 176:23 197:8 197:15 208:7 208:13 208:14 209:16 209:18 212:20 212:24 218:16 269:25 275:18 | | | | | | | |
| **amounts**(1) 102:21 | | | | | | | |
| **analyses**(4) 88:21 157:11 173:2 173:17 | | | | | | | |
| **analysis**(35) 86:16 87:3 95:7 95:9 95:18 95:19 96:1 99:24 110:16 112:9 113:3 113:14 118:1 125:12 132:6 138:18 156:25 157:9 157:13 158:14 163:13 163:14 164:6 166:22 185:24 186:16 186:18 208:14 208:19 208:21 209:7 232:15 238:10 242:1 270:2 | | | | | | | |
| **analytically**(1) 105:22 | | | | | | | |
| **analyzed**(3) 106:22 242:12 242:13 | | | | | | | |
| **analyzes**(2) 238:14 242:16 | | | | | | | |
| **analyzing**(1) 16:25 | | | | | | | |
| **and**(301) 11:11 11:25 12:5 12:6 12:8 12:12 12:14 12:20 12:22 12:24 13:5 13:6 13:9 13:14 13:18 13:22 14:4 14:5 14:6 14:7 14:8 14:14 14:18 14:25 15:1 15:4 15:6 15:10 15:19 15:19 15:21 15:24 16:12 17:6 17:13 17:19 18:5 18:10 18:14 18:24 19:1 19:3 19:6 19:6 19:12 19:15 19:23 19:24 19:25 20:1 20:6 20:8 20:11 20:13 20:20 20:22 20:23 20:23 20:23 20:25 21:2 21:3 21:11 21:15 21:17 21:20 21:25 22:8 22:16 22:19 22:21 23:3 23:8 23:9 23:19 24:3 24:6 25:1 25:5 25:7 26:6 26:11 26:13 26:15 26:19 26:20 26:23 26:24 27:2 27:6 27:9 27:12 27:14 27:16 27:25 28:2 28:5 28:23 29:1 29:7 29:17 29:21 30:6 30:18 31:8 31:9 31:13 31:23 31:25 32:4 32:5 32:7 32:9 32:11 32:12 32:21 32:23 33:1 33:9 33:9 33:14 33:24 34:5 34:17 34:19 34:23 35:1 35:2 35:3 35:5 36:1 36:18 37:4 37:8 37:10 37:23 37:23 38:1 38:11 38:20 39:5 39:9 39:22 40:2 40:9 42:6 42:9 42:9 42:10 42:11 42:17 42:21 43:14 44:7 44:22 44:23 44:25 45:6 45:11 45:23 46:7 46:12 46:15 46:20 46:24 47:2 47:4 47:7 47:8 47:11 47:16 47:20 47:24 48:2 48:17 48:18 48:19 49:4 49:13 49:17 49:21 49:22 50:2 50:2 50:6 50:6 50:15 50:19 50:21 50:22 51:2 52:2 52:6 52:15 52:20 52:22 53:4 54:3 54:4 54:25 55:2 55:5 55:11 55:16 55:25 56:9 56:14 57:7 57:8 57:10 57:14 57:24 58:20 59:5 59:8 60:3 60:3 60:23 60:24 60:24 61:5 61:6 61:12 61:15 61:18 62:12 62:20 62:21 62:22 63:1 63:2 63:3 63:5 63:14 63:18 63:25 64:1 64:2 64:3 64:13 65:5 65:9 65:10 65:20 65:23 65:25 66:1 66:3 66:7 66:13 66:16 67:15 67:21 68:6 68:12 68:15 68:22 69:14 69:15 69:20 69:21 69:21 69:22 69:23 70:4 70:9 70:11 70:18 70:20 70:22 70:24 71:1 71:2 71:4 71:6 71:9 71:12 71:15 71:21 72:2 72:3 72:4 72:6 72:13 72:20 73:14 73:19 73:21 74:3 74:13 74:13 74:13 74:17 74:21 74:25 75:3 75:10 75:10 75:17 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 228:15 229:1 229:6 229:8 229:12 229:17 230:1 230:1 230:5 230:15 230:18 230:21 230:22 230:24 231:17 231:21 231:22 231:22 232:1 232:3 232:6 232:8 232:9 232:12 232:14 232:14 232:15 232:18 233:11 233:13 233:17 233:25 234:3 234:10 234:10 234:11 234:13 234:14 235:7 235:10 235:16 236:3 236:3 236:6 236:12 236:22 236:25 237:5 237:10 237:15 237:19 237:23 238:1 238:2 238:2 238:12 238:14 238:16 239:7 239:10 239:1 239:15 240:15 240:16 240:19 240:19 240:24 241:4 241:9 241:7 241:21 242:1 242:5 242:17 242:20 242:25 243:5 243:11 243:14 243:22 243:23 244:5 244:9 244:9 244:12 244:14 244:20 244:22 245:2 245:5 245:11 245:12 245:13 245:19 245:2 246:2 246:7 246:9 246:10 246:14 246:15 246:17 246:22 246:25 247:9 247:11 247:1 247:13 247:13 247:16 247:17 247:17 247:21 247:19 247:19 247:19 247:21 247:23 247:23 248:3 248:3 248:5 248:9 248:11 248:12 248:12 248:1 248:19 249:7 249:11 249:11 249:17 249:18 249:25 250:5 250:10 250:21 250:2 250:24 250:25 251:2 251:3 251:9 251:12 251:14 251:14 251:15 251:15 251:17 251:17 251:19 251:20 251:22 251:25 252: 252:13 252:14 252:16 252:16 252:16 252:21 252:22 252:23 252:23 252:23 253:1 253:4 253:4 253:5 253:6 253:8 253:12 253:14 253:15 254:6 254:11 254:12 254:18 254:2 254:24 255:2 255:2 255:2 255:14 255:15 255:16 255:20 256:11 256:16 256:19 256:20 256:23 256:25 257:8 257:10 258:7 258:17 258:18 258:21 258:25 259:2 259:1 259:14 259:14 259:15 259:17 259:19 259:20 259:24 260:3 260:6 260:8 260:11 260:13 260:15 260:16 260:23 260:23 260:23 260:24 260:25 261:3 261:4 262:24 263:2 263:17 263:21 263:25 264:1 264:23 265:1 265:6 265:7 265:11 265:16 265:20 265:23 265:24 266:12 266:23 267:7 267:9 267:10 267:10 267:12 267:17 267:23 267:24 268:2 268:7 268:12 268:14 268:22 268:22 268:24 268:25 269:1 269:6 269:15 269:18 269:24 270:3 270:5 270:6 270:20 270:24 271:11 271:19 271:22 272:7 272:9 272:13 272:17 272:17 272:20 272:23 273:10 273:15 273:18 273:22 274:2 274:1 274:15 274:17 274:23 275:4 275:10 275:13 275:20 275:24 276:4 276:5 276:6 276:14 276:15 276:18 276:21 | **another**(28) 18:22 27:4 35:15 62:21 66:18 79:7 94:19 108:3 109:5 109:12 113:18 114:5 116:15 117:11 122:22 124:16 142:4 149:14 157:15 159:25 229:14 237:13 237:16 237:20 238:24 238:24 255:16 261: 267:7 267:11 268:2 280:22 | **april**(31) 20:6 21:22 21:23 22:2 22:9 22:22 22:23 22:25 23:24 23:25 24:5 24:24 25:7 35:17 35:20 35:24 49:11 61:18 72:15 74:4 189:21 189:24 189:25 190:3 190:13 245:17 245:20 245:22 272:5 272:20 272:22 | **ashish**(1) 8:38 |
| | | **answer**(39) 28:15 29:22 29:24 30:3 30:11 36:16 43:19 51:16 53:25 54:13 62:16 62:17 69:24 73:22 80:6 81:16 100:9 122:13 174:6 174:20 177:23 184:21 188:9 188:11 188:14 199:7 217:3 241:19 247:9 250:10 256:6 263:25 264:13 266:9 267:3 267:7 267:11 268:2 280:22 | **are**(237) 11:23 13:6 13:9 13:14 13:14 13:16 13:16 15:23 15:24 29:19 36:20 37:9 40:3 40:23 42:17 43:20 45:9 48:2 49:11 49:14 51:16 56:25 59:5 59:6 65:16 65:22 66:1 66:7 67:12 68:15 68:16 70:20 74:20 74:24 76:13 77:25 78:2 78:4 79:2 83:18 89:8 89:10 93:17 93:18 95:10 95:13 95:17 95:25 97:20 97:20 97:22 97:22 99:13 100:1 100:2 100:25 102:20 102:21 102:22 102:24 104:6 105:25 106:1 106:14 106:25 107:4 108:12 108:16 110:8 112:18 113:9 113:15 114:2 114:14 115:12 115:14 115:22 117:23 120:9 121:14 121:15 122:1 122:2 123:4 123:23 124:9 125:11 125:11 125:15 127:2 127:5 128:19 130:17 131:12 131:15 131:23 131:25 133:10 133:20 134:1 134:2 138:2 138:19 139:2 139:3 139:14 141:9 142:14 143:9 143:23 144:1 145:1 145:7 145:15 147:4 147:10 147:25 148:1 148:2 148:10 148:13 149:2 149:19 150:1 152:19 152:20 155:13 156:9 156:10 156:18 157:1 158:4 159:21 161:24 162:24 162:24 163: 163:5 163:9 165:13 165:12 166:22 167:19 168:17 171:22 172:1 172:9 172:18 175:20 179:16 181:8 181:9 181:10 183:16 183:24 183:24 184:1 184:10 186:2 187:16 188:7 193:12 196:22 197:18 197:20 200:8 202:10 204:21 204:23 207:9 207:13 212:2 212:24 217:12 219:14 219:20 222:5 223:18 223:21 226:9 226:11 226:19 227:2 228:4 230:2 232:18 232:19 233:5 234:9 234:9 235:9 236:2 236:6 236:10 237:20 238:24 239:3 239:11 239:21 241:16 243:1 243:22 244:1 247:14 247:14 247:15 247:15 249:20 252:6 253:17 254:14 254:2 254:25 260:20 260:25 261:14 262:18 263:18 265:8 265:17 266:1 267:1 268:18 281:15 281:16 281:20 282:16 283:4 283:1 | **ashley**(2) 3:18 5:24 |
| **and/or**(2) 18:16 109:2 | | | **aside**(6) 22:8 58:12 65:6 76:23 266:3 |
| **anderson**(1) 2:31 | **answered**(3) 71:21 73:21 209:2 | | **ask**(40) 28:6 28:10 28:11 33:14 35:17 38:22 56:3 59:15 72:5 75:13 103:20 117:12 118:23 139:24 145:9 154:14 155:11 156:4 159:9 166:9 170:13 171:19 171:23 173:17 173:18 177:15 177:20 200:19 206:18 208:15 217:3 220:22 239:19 261:22 267:12 268:7 280:18 281:10 281:14 282:22 |
| **andrea**(1) 8:42 | **answers**(1) 247:21 | | |
| **andrew**(9) 3:16 3:34 5:6 5:40 5:41 6:24 7:42 7:44 10:35 | **answer's**(1) 140:1 | | |
| | **anticipated**(2) 99:1 109:14 | **aren't**(1) 262:19 | **asked**(37) 30:1 38:20 69:11 69:16 71:21 73:21 77:15 78:23 79:19 87:8 99:10 99:11 101:15 127:20 150:1 186:23 187:14 188:7 191:18 198:1 199:1 216:24 247:4 247:7 248:1 248:4 248:7 251:9 255:3 265:7 266:15 266:16 266:24 278:1 278:12 278:13 280:5 |
| **angeles**(1) 4:18 | **anticipating**(1) 270:5 | **arena**(1) 201:17 | |
| **angell**(1) 4:40 | **any**(85) 13:25 16:1 16:9 16:16 16:24 20:25 21:13 22:1 22:24 24:21 27:18 29:15 34:13 35:3 34:1 36:5 36:7 38:14 39:18 42:4 42:24 54:7 54:17 58:12 60:6 62:7 62:9 64:4 71:24 72:25 73:19 74:1 74:13 77:8 78:2 84:5 88:13 92:17 93:15 94:22 95:8 96:9 96:23 100:22 101:12 103:16 105:4 131:23 134:20 151:2 157:8 158:23 158:25 160:5 160:19 163:12 163:1 166:8 168:17 176:2 178:3 181:12 189:3 195:16 195:25 196:1 201:11 201:25 202:3 207:5 209:20 212:6 213:13 218:25 223:22 226:25 227:16 237:12 237:15 238:6 247:1 248:6 269:20 281:21 | **aren't**(2) 135:25 144:1 | |
| **angelo**(17) 6:16 19:4 20:22 26:22 26:23 27:2 28:23 31:18 33:8 33:9 61:15 65:19 65:23 65:24 66:1 76:7 79:16 | | **argue**(1) 175:2 | |
| | | **argument**(19) 125:4 130:18 130:20 130:21 130:22 131:2 131:5 131:6 153:9 165:3 166:20 168:3 174:21 174:23 176:12 186:1 186:24 187:2 224:8 | **asking**(8) 22:13 51:14 59:23 158:25 188:10 202:24 206:19 281:15 |
| **ann**(1) 13:21 | **anybody**(2) 125:2 282:2 | | |
| **anna**(2) 8:49 8:49 | **anybody's**(1) 257:24 | | |
| **annex**(2) 111:9 205:11 | **anyone**(6) 13:18 73:14 151:13 280:12 280:19 283:15 | **arguments**(9) 40:22 97:20 97:20 97:22 178:3 183:7 183:8 183:9 192:20 | **aspects**(3) 97:7 98:13 189:14 |
| **annual**(1) 273:12 | | | **asserting**(1) 57:11 |
| | **anything**(11) 17:25 75:2 76:16 81:1 81:7 96:10 96:10 129:3 151:1 187:15 283:23 | | **asses**(1) 214:13 |
| | | **arif**(1) 8:6 | **assess**(9) 101:15 103:1 103:3 120:19 120:25 155:14 181:15 185:4 237:25 |
| | **anyway**(4) 70:21 109:24 149:4 222:25 | **arise**(1) 182:25 | |
| | **anywhere**(1) 27:17 | **arisen**(1) 49:8 98:23 | |
| | **apart**(7) 19:17 26:18 26:25 29:6 42:9 74:5 245:20 | **arises**(1) 161:10 | **assessed**(1) 157:20 |
| | | **arising**(1) 56:6 | **assessing**(14) 53:13 53:15 110:18 115:23 117:22 119:11 119:11 119:13 121:23 123:12 132:1 173:1 174:9 188:13 |
| | **apologize**(4) 86:5 220:2 258:25 262:1 | **around**(30) 16:10 20:13 22:11 22:14 22:25 27:4 34:24 35:4 39:21 46:5 53:3 53:19 57:5 58:10 58:19 71:5 81:19 89:12 99:18 99:19 160:12 191:15 220:7 254:21 257:1 259:25 260:12 268:15 281:20 283:6 | |
| | **appeals**(1) 92:10 | | |
| | **appear**(2) 225:18 227:12 | | **assessment**(23) 118:10 126:11 138:21 139:3 143:18 146:9 160:1 161:5 164:8 177:10 181:5 183:6 226:24 227:19 228:13 230:6 230:8 235:21 237:2 241:24 242:18 243:14 264:19 |
| | **appearances**(6) 5:17 6:1 7:1 8:1 9:1 10:1 | | |
| | **appearing**(1) 248:23 | | |
| | **appears**(2) 260:2 271:17 | **arrived**(1) 157:4 | |
| | **applicable**(1) 120:9 | | **assessments**(3) 157:16 225:23 228:3 |
| | **application**(1) 96:7 | | **asset**(8) 8:44 8:45 40:5 124:20 153:12 167:13 199:21 231:6 |
| | **applied**(4) 136:4 216:8 217:8 239:17 | | |
| | **apply**(15) 121:14 121:15 121:17 130:19 168:20 172:15 175:1 175:13 181:5 181:7 210:8 214:16 214:18 224:21 263:18 | | **asset-disposition**(1) 236:16 |
| | | | **assets**(5) 95:1 124:5 201:22 236:24 237:2 |
| | **applying**(2) 144:25 177:4 | | **assign**(16) 118:6 118:8 118:19 138:11 161:15 172:15 187:12 187:13 211:14 225:22 228:6 231:5 232:9 233:25 234:1 236:12 |
| | **appointed**(3) 23:2 28:3 92:24 | | |
| | **appreciate**(5) 83:14 190:2 192:3 267:11 283:22 | | **assigned**(14) 46:10 48:10 104:24 127:13 201:7 211:6 213:24 217:23 218:3 225:14 226:5 247:8 255:8 255:17 |
| | **approach**(8) 43:5 90:8 95:21 97:19 144:14 144:20 178:15 258:9 | | |
| | | | **assigning**(4) 116:20 133:21 235:18 241:15 |
| | **approached**(6) 85:21 88:6 242:18 278:25 279:2 279:6 | | **assignment**(6) 182:2 183:4 183:22 190:11 193:7 251:23 |
| | | | **assigns**(1) 173:4 |
| | **appropriate**(8) 27:25 59:20 59:22 60:1 71:2 85:5 158:15 255:4 | | **assist**(1) 17:18 |
| | | | **assistant**(1) 193:21 |
| | | | **assists**(1) 44:22 |
| | **approved**(6) 22:12 26:11 31:25 63:22 63:23 197:17 | | **associate**(3) 91:18 92:11 200:12 |
| | | | **associated**(7) 16:2 36:3 145:20 200:6 261:7 266:5 267:6 |
| | | | **assume**(6) 88:12 246:22 254:16 262:4 271:5 279:13 |
| | **approximately**(2) 12:23 75:20 | **arrowgrass**(2) 8:4 8:4 | |
| | | **articles**(2) 93:8 98:2 | **assumed**(7) 109:10 175:2 206:11 208:5 208:10 225:2 225:5 |
| | | | **assumes**(2) 209:20 209:22 |
| | | | **assuming**(5) 121:25 128:9 160:23 252:13 256:23 |
| | | | **assumption**(6) 173:17 175:25 208:8 243:16 269:20 269:24 |
| | | | **assumptions**(5) 152:20 155:16 204:1 204:25 206:6 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| atamian(1) 6:5 | | balance(8) 138:22 167:15 200:7 200:8 | | because(105) 14:25 37:9 38:16 40:1 40:8 | | ben(2) 6:13 87:24 | |
| attach(1) 25:5 | | 206:15 224:18 224:19 244:19 | | 57:6 58:11 74:9 74:17 75:3 83:24 87:3 | | bench(2) 11:12 178:16 | |
| attached(4) 26:11 79:3 164:11 198:8 | | | | 87:8 87:13 87:17 89:14 94:25 96:16 98:1 | | bendernagel(22) 1:25 85:14 85:21 87:2 | |
| attempt(2) 226:3 229:2 | | balance-sheet(41) 99:22 119:11 121:3 | | 99:12 99:15 102:18 107:6 109:5 109:18 | | 87:7 88:6 89:5 89:23 89:23 189:15 191:25 | |
| attempted(1) 44:4 | | 122:1 122:5 124:4 124:11 124:15 125:7 | | 110:12 113:16 114:2 115:14 117:14 119:1 | | 222:23 222:24 223:4 257:20 262:4 262:8 | |
| attempts(1) 252:4 | | 125:9 126:16 129:1 137:17 137:17 137:23 | | 123:24 125:20 127:22 128:20 129:7 | | 279:17 279:20 281:22 281:25 283:22 | |
| attended(1) 198:23 | | 137:24 138:7 138:25 139:23 142:6 142:15 | | 129:14 133:12 133:25 138:3 140:5 141:9 | | | |
| attention(11) 48:18 63:1 63:14 69:17 70:9 | | 227:19 227:20 228:11 228:25 230:2 231:1 | | 142:2 142:14 143:13 144:2 144:19 147:2 | | benefit(4) 40:7 85:4 142:21 233:19 | |
| 70:18 112:23 142:19 188:3 248:16 259:14 | | 231:17 239:10 244:5 244:8 245:4 249:24 | | 147:10 148:13 151:11 153:15 154:4 157:1 | | benefiting(1) 209:14 | |
| | | 249:24 250:2 250:4 250:7 250:8 250:9 | | 161:20 164:24 166:15 167:8 167:16 | | benefits(1) 199:22 | |
| attorney(2) 183:25 184:7 | | 250:18 250:22 | | 167:19 168:9 168:16 169:3 169:13 172:4 | | benjamin(1) 2:19 | |
| attributed(3) 72:21 76:10 76:11 | | | | 172:6 175:19 175:23 176:11 185:23 186:2 | | bennett(2) 4:13 8:33 | |
| audible(5) 77:9 89:19 103:22 283:17 | | bale(1) 6:29 | | 189:25 190:16 192:7 196:23 196:25 | | benson(1) 10:14 | |
| audit(1) 92:23 | | band(1) 268:15 | | 202:22 216:6 219:17 219:12 227:14 228:23 | | berkeley(1) 92:5 | |
| august(3) 49:1 49:5 70:7 | | bank(33) 6:36 6:42 9:4 9:7 9:26 9:26 | | 231:8 234:6 234:18 236:23 237:1 237:24 | | bernard(4) 90:15 90:19 271:12 285:9 | |
| aurelius(22) 2:19 8:9 8:10 29:1 29:2 29:3 | | 10:9 11:9 11:24 47:23 49:11 93:1 93:1 | | 240:4 241:25 244:13 245:19 249:6 250:20 | | bernstein(4) 2:7 63:2 63:5 63:8 | |
| 29:6 29:11 30:16 43:10 43:24 44:3 44:14 | | 93:10 109:18 109:19 110:3 111:24 111:25 130:1 | | 254:12 261:15 261:18 261:22 263:19 | | berry(1) 8:17 | |
| 61:25 62:2 62:9 62:11 78:10 78:11 186:5 | | 130:6 135:6 175:14 182:17 196:7 196:8 | | 266:15 269:15 274:5 281:6 281:18 282:23 | | besides(2) 41:20 73:14 | |
| 186:16 186:18 | | 196:12 233:8 246:9 246:13 263:18 265:17 | | | | best(20) 35:12 42:21 47:18 53:1 57:22 | |
| | | 266:1 267:1 | | become(5) 14:22 29:3 52:14 102:5 162:5 | | 60:17 65:3 85:17 85:18 117:24 118:2 | |
| austin(17) 1:23 7:10 97:15 98:23 99:9 | | bank-equitable(2) 127:9 229:2 | | becomes(6) 47:24 48:2 50:21 101:24 | | 118:3 141:24 146:6 154:9 229:11 230:11 | |
| 183:3 183:21 183:24 185:18 185:25 186:4 | | bank-favorabl(2) 116:13 116:14 | | 110:19 165:22 | | 232:2 242:6 246:24 | |
| 186:14 193:24 246:3 270:11 277:17 277:18 | | bank-favoring(4) 133:22 133:12 133:25 | | | | | |
| | | 134:5 | | becoming(1) 68:24 | | better(10) 55:10 55:11 79:7 113:22 114:1 | |
| author(1) 94:6 | | | | been(70) 12:14 12:21 12:22 27:9 29:13 | | 115:24 133:7 135:7 152:2 176:7 | |
| autopilot(1) 120:13 | | bank-friendly(2) 124:13 133:21 | | 29:15 30:1 30:6 35:14 39:14 41:19 41:22 | | | |
| availability(2) 182:7 182:16 | | banker(2) 46:18 46:19 | | 42:1 42:2 42:3 86:18 86:18 90:1 92:19 | | between(46) 32:6 32:6 37:19 37:24 69:21 | |
| available(6) 80:15 187:3 216:15 231:7 | | bankers(1) 196:3 | | 98:3 98:15 98:18 98:20 99:16 100:14 | | 74:12 74:21 74:21 75:10 83:25 85:17 | |
| 253:18 282:13 | | bankrupt(1) 92:23 232:18 232:20 | | 100:15 104:10 112:12 114:19 126:3 143:1 | | 104:3 107:5 107:15 111:25 114:1 122:25 | |
| | | bankruptcy(65) 1:1 1:19 13:15 13:16 | | 145:15 148:3 151:12 155:8 158:25 167:3 | | 135:14 141:10 152:16 163:5 163:12 163:21 | |
| ave(1) 1:35 | | 14:21 14:23 15:7 15:11 15:14 18:21 22:6 | | 168:9 170:16 170:22 179:6 179:9 197:17 | | 170:25 184:10 194:19 206:15 211:8 | |
| avenue(5) 2:8 2:43 4:16 4:48 12:1 | | 29:4 35:13 41:22 41:23 42:22 46:3 61:6 | | 197:25 200:12 209:10 210:22 211:20 | | 211:10 211:15 228:16 244:17 244:18 | |
| avoid(6) 110:3 110:11 112:4 112:6 130:9 | | 96:24 96:25 96:25 97:1 97:3 97:8 97:10 | | 211:22 218:9 219:10 219:15 225:1 225:4 | | 247:11 247:18 248:2 248:8 252:23 253:6 | |
| 131:1 | | 97:19 97:23 98:1 98:1 98:2 98:4 98:13 | | 225:10 230:8 230:9 230:9 245:13 261:9 | | 255:15 259:13 259:15 260:15 260:25 | |
| | | 98:23 99:25 112:1 121:4 121:6 121:7 | | 273:20 273:25 274:17 274:23 274:25 279:1 | | 278:17 280:12 | |
| avoidable(1) 265:8 | | 124:6 124:10 130:24 143:10 143:16 161:1 | | 275:3 275:18 276:3 279:20 | | | |
| avoidance(41) 38:4 38:8 38:13 75:11 | | 163:3 179:13 179:16 180:14 180:18 181:8 | | | | beyond(6) 53:23 53:24 275:21 278:6 | |
| 75:15 75:20 75:23 76:14 79:21 102:19 | | 181:25 188:18 188:23 195:17 200:22 | | before(72) 1:18 12:5 18 28:7 33:25 | | 278:12 278:14 | |
| 109:1 109:5 109:16 109:22 110:1 110:10 | | 200:23 200:25 201:9 201:17 203:9 237:5 | | 45:20 46:5 52:24 53:4 53:14 54:25 56:1 | | | |
| 110:21 110:18 131:3 132:1 132:5 133:9 | | 237:17 269:4 279:8 280:15 | | 62:11 66:23 69:22 74:4 74:6 78:7 81:8 | | bias(1) 201:11 | |
| 133:24 140:17 164:23 167:22 167:22 | | | | 81:13 82:9 89:2 89:18 98:15 98:16 101:1 | | bible(1) 90:14 | |
| 167:23 167:24 170:13 170:23 191:5 207:1 | | banks(61) 60:15 107:23 109:8 109:10 | | 110:15 111:3 113:18 114:8 115:18 116:23 | | bidders(1) 276:8 | |
| 209:14 215:12 216:13 218:8 218:16 | | 109:21 110:7 115:7 115:13 115:13 116:12 | | 118:23 124:20 130:1 131:21 131:21 133:7 | | bids(2) 276:6 276:9 | |
| 233:19 237:7 241:5 | | 116:22 116:22 117:8 117:17 117:18 117:18 | | 134:9 135:7 141:13 143:3 146:1 146:11 | | bifferato(1) 3:4 | |
| | | 128:14 130:6 130:18 131:2 131:18 131:20 | | 156:3 165:8 172:22 174:6 183:1 186:3 | | big(8) 35:22 105:24 127:8 127:9 149:17 | |
| avoidance"(1) 107:13 | | 132:3 133:1 137:10 142:23 147:4 161:10 | | 186:11 188:5 192:13 205:8 209:4 215:17 | | 156:20 257:3 271:9 | |
| avoided(19) 84:4 110:7 131:17 173:24 | | 161:20 164:19 165:7 165:12 168:12 172:1 | | 216:3 218:23 223:13 228:2 240:13 246:22 | | | |
| 176:17 206:14 209:10 210:2 211:21 211:21 | | 172:4 175:11 175:11 175:20 176:6 177:7 | | 270:19 271:19 271:22 271:23 274:12 | | bigger(1) 62:14 | |
| 215:15 215:15 216:14 216:16 263:19 | | 197:23 202:11 209:6 210:1 210:10 211:2 | | 275:14 277:15 278:3 282:5 283:23 | | biggest(1) 213:19 | |
| 263:22 265:5 266:5 267:7 | | 211:5 214:16 216:2 219:10 230:4 232:18 | | | | billed(2) 193:15 197:15 | |
| | | 263:7 263:17 265:4 265:18 266:2 266:4 | | began(2) 18:21 97:12 | | billion(46) 40:10 40:12 41:13 41:17 44:9 | |
| avoiding(2) 110:3 111:24 | | 267:2 267:6 267:19 | | begin(4) 14:18 110:8 223:14 281:17 | | 55:20 79:24 108:3 111:19 111:21 112:20 | |
| aware(5) 14:22 16:1 40:20 56:5 236:19 | | | | beginning(4) 15:1 32:8 85:22 249:12 | | 131:16 142:4 148:19 151:6 161:2 161:3 | |
| away(16) 38:15 38:18 129:8 131:10 | | barclays(3) 4:40 6:4 6:12 | | begins(2) 63:15 180:10 | | 161:3 161:4 161:7 162:3 162:7 165:20 | |
| 131:22 133:8 133:19 135:7 139:18 144:10 | | barnes(1) 4:34 | | behalf(11) 29:10 30:15 53:12 53:20 54:2 | | 165:20 166:25 169:17 171:15 171:17 | |
| 144:18 166:8 166:10 169:9 234:6 261:3 | | barriers(1) 141:9 | | 56:23 60:9 64:22 99:9 186:5 270:21 | | 171:17 172:4 172:6 172:16 172:18 176:4 | |
| | | base(3) 112:3 238:2 278:16 | | | | 176:23 207:13 208:23 213:8 213:16 216:9 | |
| awfully(1) 140:19 | | based(18) 41:24 44:11 71:19 78:7 78:8 | | behave(2) 94:3 94:4 | | 217:12 218:20 218:22 232:19 278:2 278:3 | |
| awhile(1) 176:13 | | 78:8 101:11 148:2 168:23 187:2 191:14 | | behavior(1) 196:13 | | | |
| bachelor's(1) 12:6 | | 206:4 207:9 207:13 235:22 259:1 272:11 | | behind(5) 224:8 256:9 256:10 256:11 | | billion,760(1) 216:10 | |
| back(61) 50:25 55:1 55:9 61:18 87:16 | | 272:20 | | being(24) 26:21 29:19 38:22 47:18 47:18 | | billion-dollar(3) 207:9 208:11 213:9 | |
| 94:15 104:4 104:8 104:23 107:15 108:18 | | basic(4) 34:17 107:10 111:16 125:21 | | 59:6 76:24 77:2 77:2 102:6 103:19 117:16 | | bills(2) 238:2 239:6 | |
| 110:4 110:7 112:2 114:18 123:15 128:15 | | basically(16) 19:25 92:11 96:15 98:2 98:9 | | 124:25 134:23 139:15 140:8 184:3 185:15 | | binder(21) 11:12 11:13 31:14 33:15 48:13 | |
| 130:25 142:21 143:4 149:12 150:12 151:4 | | 100:15 109:22 112:16 129:10 150:6 163:1 | | 189:19 193:12 216:20 229:7 234:8 246:4 | | 55:1 69:18 105:13 180:2 183:11 220:23 | |
| 152:3 154:25 155:1 156:23 157:22 157:24 | | 167:21 169:10 189:18 234:15 243:12 | | | | 222:18 253:8 258:16 260:4 261:13 261:25 | |
| 160:16 163:19 164:13 169:12 169:15 | | | | belief(3) 43:13 96:13 271:25 | | 262:1 262:2 262:22 277:7 | |
| 171:14 176:18 178:22 178:24 189:6 191:2 | | basis(16) 25:18 25:20 36:9 40:14 43:12 | | believe(45) 23:8 29:6 31:24 31:25 34:25 | | | |
| 194:5 199:4 199:7 208:16 216:13 218:7 | | 51:12 53:22 80:5 127:12 145:5 147:14 | | 35:17 38:13 43:18 46:9 47:23 48:1 50:24 | | binders(1) 43:4 | |
| 231:3 231:20 246:2 247:6 250:1 251:15 | | 175:14 191:19 196:11 236:11 264:16 | | 71:20 78:13 89:25 120:21 132:6 145:6 | | bingham(1) 10:9 | |
| 251:18 254:11 256:15 256:20 257:6 259:11 | | | | 151:15 183:23 186:2 189:14 193:17 194:1 | | bit(27) 35:11 65:14 99:1 101:9 104:13 | |
| 268:22 270:11 275:6 | | bates(1) 225:10 | | 197:22 199:15 208:7 215:16 216:10 | | 104:17 105:12 110:15 115:20 119:23 | |
| | | bayonne(1) 12:10 | | 229:16 233:17 235:3 236:6 236:15 236:19 | | 127:15 128:10 129:14 143:7 149:6 149:17 | |
| background(2) 12:3 193:24 | | bear(2) 228:1 260:19 | | 239:2 251:6 269:13 271:24 272:2 274:19 | | 152:15 168:1 176:7 178:22 197:4 200:4 | |
| backup(6) 220:19 221:25 222:6 253:24 | | became(15) 14:4 14:6 29:7 45:19 45:23 | | 275:4 276:12 278:23 279:9 | | 214:15 219:24 229:19 268:9 268:11 | |
| 254:6 273:22 | | 46:3 48:9 50:10 57:8 62:11 62:14 68:12 | | | | | |
| | | 246:8 255:18 255:20 | | believed(1) 241:10 | | biv(1) 24:24 | |
| backwards(1) 92:2 | | | | believer(1) 156:20 | | | |
| bad(2) 126:4 202:11 | | | | believes(1) 238:23 | | | |
| badly(1) 259:6 | | | | below(10) 50:8 63:2 113:19 180:16 268:25 | | | |
| baiera(1) 6:17 | | | | 272:13 273:9 274:18 274:21 275:18 | | | |

| Word | Page:Line |
|------|-----------|
| **black**(73) 85:13 85:16 85:24 85:25 87:14 87:16 87:17 90:3 90:11 90:15 90:19 90:24 91:1 94:22 96:23 100:8 101:6 105:11 106:19 116:2 116:23 118:5 119:16 120:5 122:13 124:21 129:25 140:6 147:4 152:3 154:25 157:17 162:23 166:8 170:2 178:2 178:20 179:5 180:20 188:3 188:9 188:11 203:22 215:6 221:2 225:11 231:21 232:2 232:15 233:2 239:16 239:16 243:14 252:5 253:14 253:14 253:15 256:7 257:10 258:1 258:18 259:15 259:15 263:2 268:7 268:15 271:12 279:25 280:11 280:14 280:21 282:1 285:9 | |
| **black's**(3) 86:11 87:14 89:4 | |
| **blackstone**(1) 102:10 | |
| **black's**(2) 103:14 285:11 | |
| **blake**(1) 4:6 | |
| **blank**(1) 5:11 | |
| **blanket**(1) 40:20 | |
| **blending**(1) 93:21 | |
| **block**(3) 5:4 22:20 26:10 | |
| **blockage**(1) 75:2 | |
| **blocked**(1) 74:11 | |
| **blocking**(2) 75:1 132:5 | |
| **blocks**(2) 204:21 204:22 | |
| **blow**(1) 154:7 | |
| **blow-up**(1) 222:18 | |
| **bluff**(2) 196:19 196:19 | |
| **board**(8) 3:42 15:12 65:17 70:3 70:5 72:4 92:22 102:11 | |
| **bob**(2) 2:13 3:19 | |
| **bond**(1) 167:2 | |
| **bonds**(4) 21:8 27:5 27:7 82:2 | |
| **book**(5) 194:7 254:14 257:8 271:7 271:9 | |
| **books**(1) 98:1 | |
| **borrowed**(1) 120:18 | |
| **both**(36) 49:13 64:1 65:9 65:10 85:23 93:23 99:12 99:14 100:5 100:6 101:21 106:13 107:22 108:11 108:24 109:11 112:18 119:13 121:2 144:6 152:13 152:16 155:25 165:24 166:1 166:2 167:7 171:13 186:6 224:23 228:25 229:1 231:11 232:14 237:25 269:15 | |
| **bottom**(16) 48:19 70:10 97:21 169:7 169:9 169:9 208:19 226:16 234:25 235:7 236:13 253:16 253:17 254:2 254:4 259:21 | |
| **bottom-line**(3) 235:17 235:25 238:12 | |
| **bought**(1) 29:6 | |
| **bound**(4) 192:25 228:14 228:14 228:16 | |
| **bounds**(1) 228:10 | |
| **box**(2) 210:21 259:25 | |
| **boxes**(4) 254:21 257:1 257:4 260:12 | |
| **brandywine**(1) 4:7 | |
| **brass**(1) 6:47 | |
| **breach**(2) 15:3 148:6 | |
| **break**(13) 83:10 83:10 83:13 83:13 85:17 85:18 86:11 89:18 154:15 158:10 220:7 222:25 280:4 | |
| **breakdown**(1) 27:20 | |
| **brett**(1) 7:19 | |
| **brian**(2) 9:44 189:16 | |
| **bridge**(5) 20:1 28:24 33:1 34:4 98:18 | |
| **brief**(3) 56:20 186:8 281:18 | |
| **briefly**(7) 12:2 43:11 104:2 107:12 164:16 261:5 263:15 | |
| **briefs**(7) 98:4 98:5 98:5 98:5 98:14 196:6 198:6 | |
| **brigade**(2) 9:21 9:22 | |
| **bring**(5) 38:14 96:18 151:4 176:18 219:12 231:4 232:7 241:7 283:6 | |
| **bringing**(1) 136:3 | |
| **broad**(1) 32:25 | |

| Word | Page:Line |
|------|-----------|
| **broadcasting**(4) 125:20 125:21 125:24 125:25 | |
| **broader**(1) 39:2 | |
| **broadly**(4) 173:16 | |
| **broke**(1) 223:13 | |
| **bromberg**(1) 7:30 | |
| **brothers**(1) 15:24 | |
| **brown**(2) 6:4 7:29 | |
| **browning**(1) 196:19 | |
| **bruce**(1) 4:13 | |
| **bryant**(1) 2:27 | |
| **build**(2) 160:3 162:14 | |
| **build-up**(1) 223:14 | |
| **building**(3) 4:7 204:21 204:22 | |
| **buildup**(3) 144:22 254:17 254:18 | |
| **built**(3) 140:25 141:14 153:22 | |
| **bullet**(2) 63:18 63:19 | |
| **bump**(1) 202:6 | |
| **bumps**(2) 125:16 127:19 | |
| **bunch**(5) 94:9 97:23 114:12 155:21 248:4 | |
| **burns**(1) 6:33 | |
| **bush**(2) 3:33 5:38 | |
| **business**(18) 74:22 91:18 92:17 93:6 95:4 98:12 108:4 122:25 125:19 125:20 126:4 126:8 126:24 126:25 138:20 138:22 271:2 272:2 | |
| **businesses**(2) 125:21 126:1 | |
| **busy**(1) 199:4 | |
| **but**(282) 11:14 15:7 22:6 22:18 25:4 25:8 25:17 26:12 27:14 28:9 30:19 33:25 35:1 35:16 37:5 38:21 40:7 42:20 43:23 44:17 50:1 51:3 51:8 52:14 53:10 55:9 56:20 57:3 57:7 58:5 58:21 60:5 60:21 61:22 63:22 64:18 64:23 64:25 65:2 67:17 68:11 69:7 74:19 76:21 80:14 82:12 84:19 86:20 87:10 87:11 87:18 87:19 88:11 89:2 93:10 95:5 99:1 100:3 101:21 102:16 102:3 107:5 107:18 107:15 108:2 108:9 108:17 108:23 109:8 110:3 113:8 115:19 116:1 116:8 116:15 116:22 117:11 117:18 117:25 118:23 120:19 120:23 121:14 122:3 122:11 122:16 124:23 125:1 125:4 125:15 125:23 127:14 128:1 128:8 128:11 128:24 129:15 130:18 130:21 131:6 131:21 132:2 133:3 133:24 134:3 134:7 135:13 135:19 135:21 136:11 137:1 137:5 137:13 137:24 138:4 138:8 138:16 139:6 139:14 141:4 141:21 142:3 142:13 142:16 142:25 143:8 143:25 144:6 144:19 144:23 147:5 148:12 148:21 149:4 149:13 150:3 151:2 151:13 152:16 152:18 153:6 154:1 154:8 156:19 157:9 159:2 160:12 161:12 162:3 162:11 162:20 163:24 164:10 165:23 166:13 167:2 167:1 167:18 167:20 167:25 168:6 171:4 171:9 172:3 172:19 173:13 173:24 175:5 175:7 175:15 176:1 176:8 176:10 176:19 179:16 180:14 181:9 181:16 184:1 185:6 186:4 186:8 186:11 186:20 187:1 187:5 187:16 189:22 189:24 190:17 194:23 195:4 196:1 197:8 197:9 199:3 200:24 201:6 202:25 204:18 205:14 207:20 208:22 210:7 210:16 211:5 211:15 213:2 214:2 214:4 215:6 216:3 220:7 220:10 221:14 224:25 224:14 225:8 227:21 228:4 228:16 229:24 230:10 234:19 234:19 234:21 235:11 235:22 235:13 236:8 236:11 236:19 236:2 238:4 238:10 238:17 239:12 239:19 239:17 241:16 242:15 242:20 243:16 243:25 244:16 245:7 245:21 246:1 246:11 249:1 249:20 249:25 250:3 251:6 253:19 257:6 257:13 257:19 260:21 260:25 261:2 263:15 264:15 265:2 265:9 265:15 269:1 273:24 275:3 276:23 276:24 277:10 279:21 281:8 281:22 282:2 282:12 282:15 283:6 283:12 | |
| **butel**(1) 196:20 | |

| Word | Page:Line |
|------|-----------|
| **buy**(1) 47:12 | |
| **buyout**(8) 56:7 92:20 97:4 97:24 99:14 112:1 130:24 195:15 | |
| **buyouts**(7) 94:5 94:8 95:9 95:9 95:10 97:5 97:7 130:10 | |
| **bynum**(1) 7:36 | |
| **bypass**(2) 210:12 210:13 | |
| **bypassing**(1) 216:2 | |
| **c's**(1) 206:3 | |
| **c-1**(2) 205:25 212:7 | |
| **c-2**(2) 205:25 219:9 | |
| **calculate**(3) 110:23 111:7 111:11 | |
| **calculation**(1) 114:8 | |
| **calculator**(2) 230:9 230:22 | |
| **calendar**(1) 192:8 | |
| **california**(1) 92:4 | |
| **call**(43) 13:12 29:23 57:6 69:14 69:16 71:6 72:2 72:5 73:17 93:11 93:18 99:23 100:4 103:3 106:6 106:7 108:16 109:1 109:21 116:7 119:6 120:8 124:24 134:20 137:25 144:20 153:22 155:15 172:16 182:17 189:12 190:15 199:21 203:9 210:1 235:23 243:16 245:18 258:21 265:14 270:22 280:1 281:18 | |
| **called**(12) 22:11 22:14 53:7 92:20 93:6 93:20 96:7 107:8 122:14 233:21 269:13 271:4 | |
| **calling**(1) 84:10 | |
| **calls**(9) 11:8 43:23 61:19 119:7 121:4 121:6 121:7 136:24 139:16 | |
| **came**(13) 15:19 19:13 43:12 72:24 79:12 141:13 141:14 190:12 191:22 199:7 251:1 254:9 276:21 | |
| **can**(160) 12:6 13:2 18:10 19:7 20:8 20:20 20:24 20:25 23:5 24:7 27:1 30:13 31:19 34:17 36:8 37:8 45:11 45:14 45:15 50:16 51:24 55:3 57:4 59:16 62:18 62:20 63:11 66:14 67:9 71:5 72:25 73:7 73:12 76:20 78:17 79:5 79:6 80:3 81:8 81:13 82:9 82:25 83:10 87:7 87:11 88:11 89:7 89:9 89:17 90:3 90:9 95:21 101:7 101:8 101:25 102:1 102:1 103:20 104:2 105:11 106:2 106:5 107:11 107:13 108:15 112:15 119:2 120:8 121:11 122:8 122:9 122:12 125:1 134:20 135:2 136:17 136:19 142:20 144:14 146:19 147:23 151:5 153:17 157:4 157:22 157:24 159:1 159:17 160:11 160:19 161:1 162:14 162:20 167:20 173:19 174:6 176:24 177:15 177:20 183:19 187:21 188:1 191:19 196:7 197:16 199:4 199:5 202:13 203:13 210:22 213:3 214:15 216:16 216:2 220:8 220:9 221:16 222:8 222:18 222:20 225:2 225:5 225:24 227:8 228:11 228:13 230:16 231:11 234:20 235:16 236:2 236:22 237:23 238:14 238:20 243:15 243:16 245:6 247:24 254:22 256:15 256:16 256:16 256:20 256:21 257:2 258:18 260:6 260:7 260:16 260:22 260:24 263:1 268:10 268:13 268:19 268:21 276:20 | |
| **can't**(6) 40:17 73:1 73:19 87:2 234:22 274:4 | |
| **candidates**(4) 67:17 71:25 72:1 72:7 | |
| **cannot**(1) 266:10 | |
| **cantor**(1) 6:37 | |
| **canyon**(1) 10:42 | |
| **can't**(6) 110:11 130:9 130:25 132:11 144:23 148:21 | |
| **capacity**(1) 13:19 | |
| **capadia**(3) 47:1 47:4 52:20 | |

| Word | Page:Line |
|------|-----------|
| **capital**(33) 2:19 6:12 6:27 6:27 6:32 6:32 8:4 8:9 8:10 9:17 9:18 9:21 9:22 9:38 9:39 9:51 9:51 10:24 10:25 99:24 121:7 124:11 182:14 203:4 203:7 203:8 224:22 232:12 243:11 243:12 244:6 250:19 264:12 | |
| **capped**(2) 161:21 212:23 | |
| **capture**(3) 109:1 109:6 206:16 | |
| **career**(2) 92:17 93:16 | |
| **careful**(2) 30:20 58:10 | |
| **carefully**(2) 245:24 246:1 | |
| **carey**(1) 1:18 | |
| **caridas**(1) 5:41 | |
| **carikofi**(1) 5:12 | |
| **carmel**(1) 12:5 | |
| **carol**(1) 6:29 | |
| **carry**(4) 166:23 250:9 279:23 282:15 | |
| **case**(154) 1:15 10:29 11:13 52:15 62:9 64:5 78:10 93:18 95:24 97:9 97:16 98:9 98:15 99:12 99:13 100:12 102:8 103:7 104:22 106:10 116:6 116:11 116:12 116:15 116:18 116:19 117:6 120:10 121:13 124:8 124:13 124:13 124:19 128:14 129:11 129:25 130:2 130:20 132:19 132:25 133:2 133:21 134:5 135:2 135:3 136:8 136:15 136:19 136:21 139:9 140:10 140:17 142:7 147:1 147:1 147:4 147:5 148:12 150:1 151:2 152:5 152:6 152:8 152:15 152:16 153:2 155:1 158:14 159:20 163:24 166:8 171:1 171:2 173:4 176:3 177:1 179:5 179:9 182:13 185:15 188:8 188:9 188:11 189:14 192:15 193:21 203:5 203:6 203:10 203:11 211:20 211:22 214:17 217:20 218:4 218:19 225:9 225:14 226:6 226:12 228:21 230:12 231:9 231:21 232:2 232:16 233:2 233:2 233:4 233:4 235:19 237:3 238:2 238:3 238:25 239:16 239:18 240:22 241:23 241:25 242:2 243:3 243:14 244:4 244:7 245:5 247:5 247:9 248:17 252:8 252:11 253:14 253:14 253:15 253:15 254:18 256:18 258:18 258:18 258:18 259:13 259:14 259:15 259:15 261:5 268:7 268:25 269:1 269:18 271:5 273:11 277:4 281:13 281:15 | |
| **cases**(84) 18:21 28:4 28:22 29:4 29:8 40:23 56:5 63:6 80:17 96:16 97:22 97:23 97:24 98:1 116:8 116:8 116:25 118:13 118:17 118:18 118:20 119:1 121:14 121:15 124:12 127:14 129:21 130:9 130:19 132:2 144:21 144:25 145:2 145:16 145:25 147:3 147:12 166:11 179:20 182:1 182:23 183:10 188:9 190:23 203:4 203:9 204:6 213:24 220:16 227:4 228:10 229:12 230:21 230:22 232:4 232:6 235:16 236:2 237:23 238:14 238:14 238:20 243:15 243:15 247:23 254:22 256:15 256:19 256:20 257:2 258:18 260:6 260:7 260:16 260:22 260:24 263:1 268:10 268:13 268:19 268:21 276:20 | |
| **cash**(17) 31:22 34:8 34:20 37:10 95:2 121:4 121:21 127:18 128:15 139:23 141:12 142:16 153:13 203:7 229:25 239:10 249:21 | |
| **cash-flow**(12) 99:22 99:23 100:1 100:2 100:4 119:12 119:12 121:16 121:22 121:22 121:24 124:24 124:24 125:13 125:14 125:14 125:15 125:17 126:8 126:20 126:20 127:18 128:2 128:3 128:15 129:1 137:19 137:20 138:9 138:9 138:10 138:13 138:24 139:1 144:2 227:20 227:21 228:12 229:1 230:1 231:7 232:8 232:16 232:20 232:22 237:23 237:24 238:2 238:3 238:6 238:7 239:5 239:6 239:10 243:17 243:18 243:18 244:10 244:12 244:13 244:21 245:2 249:25 250:3 250:6 272:12 | |
| **cast**(1) 255:23 | |
| **categories**(3) 225:20 234:22 234:23 | |
| **categorize**(1) 108:14 | |

| Word | Page:Line |
|---|---|

**category**(5) 123:7 131:7 149:17 255:9 255:18

**catherine**(1) 5:5

**causal**(3) 96:12 96:15 96:22

**cause**(4) 71:19 168:24 178:3 198:2

**causes**(6) 18:22 37:9 56:6 57:11 57:20 57:23

**caution**(2) 54:7 54:9

**cell**(2) 144:13 260:11

**cells**(3) 144:15 144:21 260:12

**centerbridge**(10) 19:6 19:14 20:6 20:7 20:23 24:22 24:25 62:4 62:4 74:13

**centerbridge's**(1) 29:7

**central**(2) 115:22 120:23

**cents**(4) 32:1 35:4 82:2 172:10

**ceo**(7) 67:17 67:19 68:24 70:22 71:25 72:4 72:8

**certain**(10) 19:3 21:6 21:25 26:20 26:21 44:5 85:25 86:7 89:12 229:17

**certainly**(27) 40:16 40:16 43:6 60:12 60:14 67:18 83:1 84:4 93:23 95:6 96:5 127:24 136:2 158:24 163:1 187:14 188:15 189:24 200:12 202:13 213:22 224:7 227:10 231:24 275:23 279:19 282:5

**certification**(1) 284:7

**certify**(1) 284:6

**cetera**(1) 70:25

**chachas**(2) 282:11 282:12

**chad**(1) 10:11

**chadbourne**(6) 3:12 5:23 17:7 17:8 18:24 19:3

**chain**(2) 48:17 92:21

**chair**(1) 92:23

**chaired**(1) 91:17

**chairman**(3) 70:13 70:14 70:17

**chairs**(1) 15:23

**challenging**(1) 270:23

**champaign**(1) 191:18

**chance**(40) 133:16 133:21 135:16 135:16 136:14 136:23 137:4 137:7 137:9 138:13 138:15 138:17 139:25 140:5 140:16 141:7 141:6 141:7 141:24 141:25 142:10 142:10 150:18 150:21 151:2 152:1 163:7 163:8 164:19 166:8 173:14 212:18 215:1 215:7 225:16 240:20 241:2 248:8 248:22 249:2 255:8 267:18

**chances**(3) 113:16 143:25 144:1

**chaney**(1) 10:43

**change**(25) 104:16 126:2 154:8 154:9 157:14 157:15 159:23 159:25 160:4 160:1 161:4 161:5 165:14 165:15 166:17 167:1 168:24 175:16 175:17 175:18 178:4 193:1 251:20 261:16 262:15

**changed**(17) 42:11 104:16 131:4 155:16 155:17 157:19 160:5 167:13 192:16 202:2 251:23 254:21 257:2 260:12 260:15 261:21 262:15

**changes**(10) 89:12 104:3 247:1 252:10 252:14 254:24 255:22 256:15 260:9 260:2

**channels**(1) 161:11

**chapter**(1) 1:8

**characterize**(1) 265:6

**characterized**(1) 263:24

**chart**(19) 106:15 106:18 112:8 114:21 116:24 120:1 133:20 146:19 152:22 152:7 156:25 157:12 157:15 160:17 164:13 220:18 223:7 247:7 249:6

**charts**(3) 145:21 246:15 270:1

**chase**(7) 9:4 11:7 11:9 11:24 151:4 151:7 151:8

**chased**(1) 151:13

**chasing**(1) 150:21

**check**(6) 50:1 50:17 87:7 87:11 197:16 254:15

**checked**(1) 192:8

**checking**(1) 258:24

**checks**(4) 156:12 156:22 207:15 212:19

**chibria**(1) 91:5

**chicago**(4) 1:29 3:45 4:49 5:8

**choice**(2) 205:9 216:23

**choices**(2) 156:10 156:10

**choose**(2) 65:19 65:21

**chose**(1) 276:5

**chosen**(1) 65:23

**chronologically**(1) 92:2

**chronology**(1) 55:23

**chung**(2) 2:24 6:43

**chunk**(1) 149:5

**cinch**(1) 119:9

**circuit**(4) 92:10 97:25 130:10 177:1

**circuitous**(1) 177:9

**circumstances**(6) 126:10 127:24 229:17 244:19 244:20 250:2

**cites**(1) 265:20

**citi**(1) 150:12

**citibank**(3) 7:39 102:11 150:4

**claim**(27) 32:14 62:4 74:12 75:20 80:2 80:3 113:11 115:21 161:13 161:20 161:21 176:14 186:12 208:11 208:15 209:11 210:212:24 216:16 217:9 217:12 218:13 218:15 218:17 218:21 227:16 229:18

**claims**(96) 16:5 16:10 16:11 16:17 16:20 17:1 17:18 18:1 19:11 19:12 19:14 19:16 20:7 20:18 21:9 25:6 27:8 32:4 32:11 32:12 32:12 32:15 32:16 32:23 34:9 36:2 38:4 38:8 38:11 38:13 38:16 39:4 39:18 40:3 43:13 43:15 43:25 44:8 44:8 44:12 44:15 44:15 56:9 60:10 64:16 67:23 75:1 75:15 75:23 76:12 76:15 77:20 77:22 79:24 99:17 100:20 101:13 101:16 102:21 102:24 103:2 112:18 148:1 148:4 148:5 148:10 150:25 171:22 172:4 172:7 176:22 176:22 179:13 187:12 188:23 191:5 197:2 197:22 197:23 208:18 208:19 209:10 219:7 265:7 265:8 269:7 270:1 270:3 270:5

**clarification**(1) 190:2

**clarified**(1) 103:21

**clarify**(1) 66:16

**clarity**(1) 206:3

**clark**(1) 4:6

**class**(7) 93:25 95:12 95:20 106:3 204:1 207:5 270:23

**classes**(3) 85:5 110:24 148:1

**classic**(2) 113:21 270:22

**clause**(1) 243:10

**cleanly**(1) 281:2

**clear**(22) 81:16 84:21 99:2 110:19 130:2 150:9 150:16 174:6 184:6 186:13 187:5 205:1 207:8 216:11 218:6 224:10 224:13 234:4 234:4 234:5 234:11 281:10

**clearly**(3) 174:24 236:21 242:3

**cleary**(1) 4:6

**clerk**(7) 11:2 90:10 90:10 90:16 90:20 90:22 90:25

**clerked**(1) 92:9

**client**(2) 43:15 133:7

**clip**(1) 242:8

**clock**(2) 192:3 281:5

**close**(24) 41:6 46:6 90:17 111:10 128:21 137:13 137:25 142:2 142:3 142:5 144:2 151:18 153:18 167:3 171:17 184:18 194:1 234:19 234:20 235:12 236:5 245:14 252:8 279:11

**closed**(14) 45:20 46:7 46:7 47:10 49:23 50:15 50:16 52:24 53:4 53:14 56:1 271:19 271:22 274:12

**closely**(1) 102:5

**closer**(3) 20:1 180:21 218:20

**closest**(2) 265:14 273:10

**closing**(4) 14:17 52:7 270:19 270:25

**closure**(1) 198:22

**co-chairs**(1) 15:24

**co-presidents**(1) 68:6

**cobb**(2) 3:25 5:44

**code**(16) 121:4 121:6 121:7 124:6 124:11 130:24 163:3 179:13 179:16 179:20 179:2 237:5 237:6 237:6 237:12 237:17

**cole**(1) 1:32

**collapse**(3) 119:7 120:11 121:19

**collect**(7) 107:24 109:24 161:11 161:14 164:20 212:15 212:24

**collectable**(1) 208:9

**collected**(1) 219:4

**collecting**(3) 172:9 212:18 212:20

**collective**(1) 235:14

**college**(2) 12:6 12:7

**collins**(1) 9:11

**color**(1) 90:24

**columbia**(2) 91:24 92:15

**column**(11) 113:7 114:7 132:15 132:18 132:19 134:14 159:23 188:8 210:21 225:1 252:15

**combination**(3) 144:25 191:10 226:17

**combine**(4) 204:14 204:16 239:21 260:5

**combined**(24) 63:21 63:25 144:8 173:4 217:24 218:3 226:16 227:6 227:7 228:15 228:24 230:12 239:20 251:2 251:1 252:21 253:4 253:4 253:5 255:13 255:19 260:24 260:25

**come**(33) 15:15 17:10 18:20 19:25 42:10 58:20 59:8 85:16 99:25 105:20 106:2 107:15 108:18 110:4 110:4 110:7 112:2 118:7 118:9 118:11 134:2 146:7 146:8 149:12 163:10 163:11 216:13 228:14 230:11 233:14 242:5 243:12 282:2

**comes**(10) 87:14 97:7 134:4 134:17 171:14 172:2 174:7 208:3 235:11 282:11

**comfort**(1) 169:24

**comfortable**(7) 93:24 93:24 95:6 97:2 97:4 193:3 274:9

**coming**(8) 94:19 96:13 134:2 133:24 135:15 168:7 175:10 249:23

**comment**(1) 280:2

**comments**(1) 247:25

**commercial**(3) 14:4 14:6 93:1

**commissioner**(1) 92:14

**committee**(56) 3:11 3:41 5:22 15:16 15:19 15:20 15:21 15:23 15:25 16:1 16:4 16:8 16:16 16:20 16:21 17:4 17:6 17:11 17:18 17:25 18:11 18:14 18:15 19:3 19:4 20:24 27:16 28:24 33:1 33:10 38:25 56:10 57:11 57:14 57:19 57:24 58:16 58:19 59:9 60:9 70:5 76:2 92:23 93:4 93:4 98:21 102:12 150:4 195:14 195:20 198:6 198:10 199:1 246:10 269:2 276:4

**committee's**(3) 16:19 16:25 18:17

**common**(3) 74:11 74:18 156:11

**communication**(3) 74:21 74:23 74:24

**communications**(5) 29:15 54:8 58:12 74:12 74:20

**companies**(4) 13:14 92:19 95:3 202:12

**company**(46) 1:7 4:46 6:46 6:46 7:24 7:35 14:21 14:25 15:17 17:10 22:10 26:20 35:13 42:21 47:10 49:11 49:12 49:15 52:8 52:24 53:7 53:13 53:16 66:6 67:22 68:17 70:24 92:20 99:9 189:7 189:20 190:21 190:24 191:3 191:12 192:12 192:18 202:5 202:22 203:5 232:11 233:20 272:5 272:7 272:24 278:3

**company's**(8) 52:11 53:18 70:24 179:23 185:5 202:16 238:1 275:21

**comparable**(1) 146:14

**compare**(6) 36:24 37:2 41:25 115:8

**compared**(1) 254:3

**compares**(2) 258:16

**comparing**(1) 35:15

**comparison**(4) 113:8 255:16 257:5 259:15

**compensated**(1) 193:12

**compiling**(1) 197:13

**complained**(1) 57:11

**complaint**(4) 57:15 198:7 198:8 198:12

**complaints**(10) 98:18 98:21 197:17 197:24 197:25 198:3 198:5 198:5 198:9 199:2

**complete**(1) 128:6

**completed**(3) 86:20 119:9 245:19

**complicated**(2) 99:13 208:24

**component**(8) 20:16 25:9 32:2 35:5 82:3 167:7 167:8 200:8

**components**(1) 38:21

**comprised**(1) 141:3

**computation**(2) 204:23 253:24

**compute**(1) 111:18

**computing**(2) 96:4 96:5

**conaway**(2) 4:4

**conceivably**(1) 214:17

**concentrate**(1) 127:7

**concept**(6) 119:6 119:19 121:12 121:17 122:6 224:3

**concerned**(10) 22:18 26:9 29:25 30:2 42:16 52:10 60:19 61:5 65:5 116:10

**concerning**(5) 43:15 46:1 61:10 61:12

**concerns**(2) 14:25 15:2

**conclude**(1) 142:9

**concluding**(1) 128:4

**conclusion**(12) 54:5 54:18 54:22 84:10 97:21 127:22 226:7 235:17 235:25 236:4 240:6 240:16

**conclusions**(15) 101:7 138:24 180:16 180:17 226:2 227:15 227:17 231:4 234:17 234:25 235:11 238:13 238:18 245:8 268:18

**concrete**(6) 40:9 40:17 40:22 40:25 41:3 102:23

**conditions**(1) 213:1

**conduct**(3) 175:14 175:15 224:18

**conducted**(2) 18:5 194:25

**confer**(1) 82:25

**conference**(1) 281:18

**conferred**(3) 28:7 158:10 182:11

**confess**(1) 23:21

**confidence**(5) 180:16 241:12 241:22 242:21 243:2

**confident**(4) 151:19 151:20 151:21 155:13

**confidential**(2) 183:25 184:7

**confidentiality**(1) 30:10

**confirmation**(2) 29:20 192:21

**confirming**(1) 160:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**conflict**(1) 16:8
**conflicts**(1) 16:1
**confront**(1) 156:8
**confusing**(1) 62:6
**confusion**(1) 206:3
**congress**(1) 131:4
**conjunction**(1) 229:14
**conlan**(2) 1:24 63:2
**connection**(14) 60:10 86:3 98:15 105:13
156:24 163:5 163:12 181:5 183:4 199:19
214:4 221:13 259:16 270:21

**connectivity**(1) 244:17
**consensus**(1) 27:23
**conser**(1) 269:8
**conservativ**(5) 115:2 150:20 269:9 269:12
269:16

**consider**(8) 101:17 205:19 211:5 231:8
231:10 231:13 232:10 233:8

**consideration**(7) 31:20 39:18 75:22 76:13
76:16 76:20 76:22

**considerations**(1) 77:2
**considered**(8) 38:25 38:25 60:12 67:17
155:18 155:21 181:11 217:12

**considers**(2) 237:23 242:17
**consistent**(12) 59:5 144:14 157:7 184:3
224:14 238:5 238:11 242:18 242:25 243:2
256:22 275:16

**consolidation**(2) 176:25 177:2
**constituents**(1) 28:22
**constitute**(1) 182:10
**constraints**(1) 97:6
**construction**(1) 14:2
**constructive**(4) 130:25 237:10 242:15
**constructively**(1) 104:20
**consultation**(2) 188:21 280:8
**consulted**(1) 187:4
**contact**(1) 47:10
**contain**(1) 88:15
**contained**(1) 246:14
**contemplated**(1) 273:12
**contemplates**(1) 269:3
**contemplating**(1) 191:3
**contentious**(1) 42:3
**contested**(1) 281:7
**context**(2) 41:22 61:25
**continue**(6) 67:19 116:23 163:10 249:16
275:21 276:5

**continued**(16) 2:2 3:2 4:2 5:2 6:2 7:2 8:2
9:2 10:2 20:3 98:13 155:18 155:18 190:10
190:14 193:2

**continues**(1) 50:14
**continuing**(2) 165:12 196:17
**continuum**(2) 226:2 234:17
**contract**(3) 212:10 212:16 212:19
**contrarian**(2) 9:38 9:39
**contrast**(3) 115:16 226:10 226:23
**contrasted**(1) 263:1
**convenient**(1) 280:3
**conversation**(15) 29:17 29:18 29:21 66:4
67:2 67:24 68:10 68:23 69:3 71:16 71:20
72:10 72:13 73:7 73:10

**conversations**(13) 22:4 24:21 30:6 52:13
52:18 52:23 66:10 67:15 67:21 72:14 73:25
191:24 280:19

**conversely**(4) 133:5 133:22 136:4 138:12
**convert**(1) 167:8
**conveyance**(4) 95:11 95:15 95:16 97:4
97:6 102:19 109:6 151:12

**conveyed**(4) 57:24 58:6 58:16 59:20
**convince**(2) 22:4 89:10
**convincing**(2) 22:7 135:20
**cooperate**(2) 18:17 23:11
**cooperstown**(2) 10:24 10:25
**copied**(1) 256:24
**copy**(7) 31:16 63:3 187:21 257:9 258:5
258:6 258:15

**core**(2) 40:22 94:25
**corning**(1) 177:1
**corporate**(16) 92:11 93:25 94:1 94:1 94:4
94:7 94:10 95:10 95:14 95:20 148:9
148:23 180:12 180:13 180:13 182:25

**corporations**(1) 95:12
**correct**(122) 44:23 45:22 49:1 50:16 50:19
52:13 55:6 56:24 65:22 68:17 75:16 75:1
81:5 104:1 104:10 179:18 179:10 179:11
179:14 179:20 181:1 181:13 182:2 185:21
190:5 190:9 190:11 191:13 192:9 193:20
195:2 195:6 195:10 196:2 199:20 201:13
204:2 204:8 207:6 207:11 207:17 207:18
207:21 208:1 209:5 209:17 210:3 210:4
211:18 214:19 214:23 215:3 215:16 216:1
216:18 218:18 220:16 220:20 221:11
222:1 223:24 224:24 225:7 225:13 225:17
225:19 225:20 226:2 226:13 226:14 226:2
227:1 227:2 227:8 227:13 228:3 228:23
231:16 231:18 232:9 233:4 233:7 233:10
234:15 237:8 237:14 237:17 239:18 240:20
240:14 242:1 244:2 245:9 245:10 245:15
249:2 251:21 252:4 253:25 259:22 261:9
263:2 264:1 264:3 265:21 266:6 269:21
269:23 270:17 270:18 271:20 272:1 272:7
272:19 273:1 273:15 273:25 274:13 274:1
276:12 277:2 284:6

**corrections**(3) 85:25 88:9 88:13
**correctly**(5) 209:22 211:11 238:21 254:16
276:13

**correlated**(10) 162:25 239:3 239:22 241:11
241:11 241:16 241:16 243:13 244:2
244:16

**correlation**(5) 237:4 239:1 241:18 241:18
244:18

**correlations**(1) 96:5
**correspondence**(1) 196:10
**correspondingly**(1) 279:4
**corroon**(1) 2:31
**costs**(1) 149:4
**could**(87) 24:22 29:23 35:16 43:5 61:7
71:2 71:3 74:15 80:6 80:16 91:4 102:23
116:2 116:24 120:23 126:5 127:25 128:2
128:15 132:19 132:24 134:8 136:16 141:2
142:24 145:9 147:17 150:2 152:2 152:4
155:1 157:10 160:16 164:14 164:16 166:2
175:13 175:15 177:3 180:1 180:9 183:11
186:6 192:16 194:5 194:7 205:17 206:8
206:18 208:10 212:2 212:14 212:16 212:1
214:16 219:4 219:25 220:22 222:9 224:1
226:11 228:14 230:25 231:2 232:23 237:1
238:1 240:9 247:6 252:1 252:5 260:3
260:7 261:12 266:4 267:5 267:10 267:19
270:3 274:23 274:25 275:1 275:21 276:7
276:8 276:24 280:7

**couldn't**(4) 27:15 223:2 236:24 247:9
**couldn't**(1) 125:2
**counsel**(24) 17:4 17:11 24:7 28:7 52:21
53:9 53:12 54:8 63:5 68:8 68:13 68:16
75:7 83:6 92:14 116:12 117:7 133:1 133:6
135:6 145:8 189:10 199:23 252:10

**count**(17) 119:10 120:15 120:16 120:17
121:23 123:12 124:11 124:14 124:18 125:
125:4 153:11 153:13 167:6 170:12 200:9
236:23

**counted**(3) 124:10 167:7 236:25
**counter-argumen**(1) 122:9
**counterclaims**(1) 99:17
**counting**(1) 151:17
**country**(1) 282:25
**counts**(3) 125:6 142:10 200:6
**couple**(22) 13:5 16:15 18:13 18:15 20:5
23:15 28:6 30:24 31:4 39:5 42:15 72:19
81:3 83:19 96:19 118:23 155:5 159:19
260:24 261:1 282:6 282:10

**coupon**(1) 167:2
**couri**(1) 10:26
**course**(8) 95:2 95:5 97:9 192:9 194:11
199:12 247:4 275:10

**courses**(2) 95:3 96:9
**court**(182) 1:1 11:3 11:10 11:14 11:17
23:2 24:12 25:11 25:23 27:1 28:3 28:11
28:15 28:17 29:23 30:4 30:9 30:23 34:15
36:7 36:11 36:16 36:19 40:14 40:16 40:19
40:24 41:2 41:4 41:6 41:8 42:24 43:3
43:6 43:14 43:19 43:22 51:12 51:16 53:2
53:25 54:10 54:13 59:7 59:15 64:6 66:24
71:22 73:22 75:5 77:8 77:10 78:20 80:7
80:25 81:18 81:20 83:1 83:4 83:9 83:13
83:18 85:8 85:11 85:20 85:22 86:6 87:1
87:5 87:23 88:3 89:18 89:20 89:20 90:4
90:7 90:10 90:23 92:10 100:22 101:2
103:16 104:2 105:2 105:4 105:7 145:5
145:11 151:3 154:5 154:14 154:17 154:20
158:17 158:19 159:7 159:9 159:11 159:14
159:17 168:5 168:11 174:11 174:14 177:1
177:17 177:22 177:24 178:14 178:17
178:24 180:20 180:23 181:5 185:4 188:23
192:2 197:16 197:18 198:19 202:10 203:1
203:19 205:17 206:22 209:9 209:13 210:8
210:9 216:12 217:1 217:4 218:6 219:22
219:25 220:3 220:6 220:10 222:8 222:11
222:11 222:15 222:23 223:2 223:10 224:1
233:14 243:1 244:19 244:21 253:17
253:19 256:6 257:6 257:12 258:11 258:21
259:3 259:5 259:8 261:24 262:2 266:18
273:7 279:12 279:14 279:19 280:2 280:6
280:10 280:17 280:22 280:25 281:24
282:22 283:9 283:14 283:15 283:20 283:2
284:1 284:1

**court's**(1) 281:2
**courtney**(1) 9:27
**courtroom**(4) 1:10 117:2 281:14 281:19
**courts**(1) 99:25
**covenant**(1) 15:3
**cover**(2) 94:8 94:8
**covered**(1) 209:8
**covering**(1) 184:11
**crazy**(1) 51:21
**created**(1) 269:18
**creates**(1) 114:11
**creative**(1) 99:17
**credence**(1) 165:4
**credentials**(1) 201:7
**credible**(2) 234:21 236:11
**credit**(32) 4:4 6:15 10:33 13:4 14:5 14:6
15:5 21:2 21:6 22:15 22:19 28:25 44:22
45:1 46:13 46:19 47:20 47:20 47:21 47:24
47:25 48:2 48:11 49:18 55:6 55:13 79:3
79:7 110:6 143:18 143:21 165:1

**creditor**(6) 37:18 98:17 106:3 110:24
190:20 203:25

**creditors**(67) 3:12 5:23 15:16 15:18 20:12
20:14 20:24 31:20 31:23 31:24 32:1 32:25
33:10 35:4 35:19 36:25 42:10 57:10 57:14
57:19 57:24 58:4 58:16 58:19 59:19 60:9
60:13 60:18 60:24 61:2 76:2 81:9 81:13
81:23 81:24 82:1 82:8 82:8 84:13 84:20
85:5 92:24 95:14 98:21 101:17 101:19
109:4 109:10 110:4 110:5 127:21 128:5
131:20 162:1 168:14 170:1 172:9 172:19
176:20 179:24 195:14 195:19 198:10
198:25 209:24 233:20 265:10

**credits**(21) 12:18 12:22 12:24 13:2 13:6
13:7 13:11 13:19 13:25 14:9 14:14 14:18
44:19 44:22 44:23 44:25 45:19 47:14 48:7
49:17 50:5

**criticized**(3) 47:25 48:2 50:22
**cross**(12) 35:16 42:24 42:25 44:1 77:8
77:15 78:22 78:22 220:5 282:18 282:19
285:3

**cross-exam**(1) 219:23
**cross-examination**(2) 178:14 178:18
**crowded**(1) 11:17
**crunching**(1) 233:23
**current**(7) 12:16 18:15 23:9 42:17 50:2
50:5 91:4

**currently**(3) 11:23 68:6 70:14
**cushion**(38) 99:23 100:3 100:4 119:12
121:6 121:22 125:14 125:14 125:18 126:21
127:19 128:3 128:16 129:2 137:20 138:10
138:13 139:1 142:24 143:1 203:8 227:21
228:12 229:1 230:1 232:21 232:23 237:24
238:3 238:7 239:6 239:11 243:18 243:18
244:10 244:13 244:21 245:2

**cushioned**(1) 100:2
**cut**(1) 253:17
**cutler**(2) 6:20 10:33
**cuts**(1) 202:14
**cutting**(1) 87:16
**cycle**(1) 51:21
**dl** (3) 148:14 149:6 151:19
**do** (1) 270:6
**d-e-f**(1) 260:24
**d-plus**(1) 172:16
**d.c**(1) 92:9
**daniel**(4) 2:21 3:27 6:37 6:39
**data**(5) 1:41 96:3 156:9 156:9 156:16
**date**(11) 72:13 73:20 161:23 186:9 186:11
186:13 191:15 192:7 193:15 271:17 284:12

**dated**(6) 48:20 62:23 71:9 271:19 271:21
276:13

**dave**(1) 7:7
**david**(9) 2:20 3:13 4:23 4:29 4:35 5:12
8:40 10:17 88:4

**davis**(5) 2:4 7:40 9:4 11:6 87:24
**day**(24) 3:42 13:13 13:13 14:11 14:11
15:8 49:23 50:14 50:25 55:12 85:24 86:1
86:2 88:11 107:16 114:3 117:8 206:22
230:10 251:18 280:3 282:16 283:1 283:24

**days**(2) 187:19 189:2
**dbtca**(1) 4:21
**dcl**(55) 11:8 11:18 31:13 33:16 34:14
34:15 34:18 35:10 35:18 37:1 39:6 39:6
39:10 44:16 65:14 77:21 81:4 81:23 82:4
84:12 98:16 100:20 101:13 101:16 103:15
105:5 105:8 113:7 113:19 113:24 113:25
114:7 114:11 114:15 114:22 115:16 115:18
115:23 146:4 146:24 147:5 147:6 147:13
147:14 161:6 168:25 169:11 169:14 169:15
169:22 176:11 178:6 179:12 213:6 285:15

**dead**(2) 119:9 268:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **deal**(26) 16:7 25:8 26:15 26:25 38:21 38:22 38:23 39:14 42:14 58:5 58:6 61:5 65:3 76:3 76:9 76:9 79:10 107:17 108:2 116:16 122:20 142:7 142:23 143:2 150:7 165:25 | | **defraud**(2) 109:4 127:21 **degree**(9) 12:6 12:7 88:9 88:12 92:3 205:20 229:9 241:10 261:6 | | **diamond**(1) 7:5 **diaz**(1) 1:41 **did**(190) 12:12 12:24 14:14 14:18 14:22 15:9 15:14 16:7 16:12 16:14 16:24 17:2 17:6 17:8 17:10 17:25 18:17 18:19 21:5 22:1 22:8 22:10 23:11 23:13 23:19 23:21 23:22 23:22 24:21 24:24 25:4 25:12 25:16 26:4 26:5 26:6 26:9 26:10 26:15 27:18 27:20 29:3 29:10 30:15 30:17 30:20 32:18 32:20 34:11 35:5 38:4 38:7 38:7 38:23 39:9 39:11 44:3 46:24 53:17 55:19 60:10 64:10 64:17 69:19 71:24 72:7 73:17 79:10 79:18 97:11 97:12 99:22 103:25 105:15 105:16 106:8 106:9 109:11 110:16 111:4 111:5 111:11 111:13 111:14 114:21 114:22 115:1 116:5 117:15 118:15 126:8 127:20 128:1 128:9 129:19 129:22 136:6 136:22 142:19 142:22 156:24 157:2 157:9 158:6 158:14 159:11 159:18 159:18 159:25 161:7 164:16 164:17 168:24 170:2 170:4 170:5 170:7 171:6 171:10 173:1 173:23 174:19 178:3 181:15 181:25 187:5 189:21 189:22 190:22 190:23 191:2 191:21 193:16 193:20 193:21 193:21 194:4 195:5 195:7 195:14 196:5 196:6 196:21 197:5 197:6 197:8 198:5 199:25 205:16 206:5 206:10 208:15 208:17 208:20 211:8 212:6 216:22 218:1 225:24 228:7 230:22 231:8 231:9 231:13 232:24 233:12 236:15 236:18 238:22 238:25 239:15 240:18 243:6 245:7 245:22 246:24 247:3 249:19 251:13 251:21 262:15 265:6 265:11 267:7 267:9 269:22 270:1 272:24 278:10 | | **direct**(46) 11:19 43:12 45:25 53:23 56:14 57:1 61:9 63:14 64:9 69:17 70:9 70:18 70:22 72:10 75:8 87:15 91:2 154:23 177:14 179:19 181:24 182:21 186:3 187:9 188:3 193:5 200:4 203:14 203:18 211:23 212:22 214:7 214:8 217:17 223:15 233:17 236:15 261:4 269:8 270:4 278:16 280:11 282:8 282:15 282:20 285:3 |
| **dealing**(1) 172:17 **deals**(3) 202:11 263:5 264:22 **dealt**(3) 47:11 185:1 185:12 | | **delaware**(5) 1:2 1:12 1:35 11:1 15:19 **delay**(6) 109:4 127:21 259:1 269:22 276:3 276:6 | | | | **directing**(2) 112:23 259:14 **direction**(7) 169:5 169:5 169:15 194:1 229:14 232:4 232:5 |
| **dearborn**(1) 1:28 **debating**(3) 51:2 52:3 52:8 **debenture**(4) 3:4 10:14 19:5 20:23 **deborah**(1) 2:22 **debt**(79) 29:7 42:10 47:12 51:10 62:15 80:11 80:12 108:3 111:24 111:25 119:10 120:15 120:17 120:17 121:23 121:24 122:24 123:12 123:14 123:24 128:17 138:3 164:21 164:23 164:25 165:4 165:5 165:11 166:22 167:1 167:1 167:7 167:12 168:10 171:16 171:24 172:6 172:14 172:15 172:19 173:6 173:13 175:21 175:23 176:1 176:9 206:7 206:10 206:11 206:13 206:14 209:2 210:6 210:12 210:13 211:3 211:12 211:20 211:22 212:21 213:13 215:19 215:19 215:22 216:4 216:4 216:7 216:9 216:12 216:12 224:17 224:23 225:1 266:6 267:7 278:2 278:4 278:17 278:24 | | **delve**(1) 223:8 **demo**(1) 7:11 **demonstrate**(1) 30:7 **demonstrativ**(1) 207:9 **demonstratives**(6) 86:3 86:4 86:8 88:15 90:9 217:15 **dempsey**(1) 282:21 **denied**(2) 75:5 78:20 **department**(1) 91:8 **departments**(1) 93:23 **depend**(1) 279:5 **depending**(3) 80:14 150:18 230:8 **depends**(1) 238:15 **deposed**(4) 18:15 88:19 196:4 196:18 **deposition**(47) 45:3 45:6 45:17 51:5 51:19 51:25 59:1 66:15 66:20 67:11 68:23 75:3 75:4 86:1 88:10 104:19 183:1 183:13 186:7 187:18 187:24 189:3 191:14 192:9 195:13 201:8 201:15 221:4 222:1 245:13 247:4 247:25 248:2 251:15 251:19 256:17 260:1 260:15 265:24 266:11 277:3 277:10 277:15 277:17 277:19 277:22 278:11 | | | | **directly**(6) 155:17 157:15 177:8 211:3 226:7 265:13 **director**(10) 12:18 12:21 12:25 13:10 13:19 13:23 47:2 92:19 92:25 270:5 **directorate**(1) 97:17 **directors**(10) 3:42 15:13 65:17 70:5 77:24 92:22 92:25 94:3 148:6 149:16 **dirt**(1) 128:5 **disagree**(2) 59:12 122:12 **discipline**(1) 134:15 **disciplines**(2) 93:10 93:22 **disciplining**(1) 118:5 **disclosure**(2) 22:10 29:15 **discount**(2) 167:6 269:22 **discounted**(2) 95:2 167:1 **discover**(1) 74:15 **discovery**(10) 16:23 18:2 18:7 18:10 29:14 74:11 74:15 75:1 150:15 192:21 |
| **debtor**(8) 18:4 20:23 28:24 61:1 61:5 89:24 190:20 269:2 **debtor's**(1) 252:10 **debtors**(15) 1:12 1:23 19:19 19:21 20:4 31:8 33:9 34:11 39:24 40:10 41:13 61:10 74:13 190:4 246:10 **debts**(6) 48:6 121:5 126:9 224:22 243:12 250:19 | | **depositions**(10) 18:5 86:19 195:19 196:1 196:5 196:18 196:21 197:3 197:7 247:20 **depth**(1) 95:5 **derogation**(1) 235:16 **describe**(23) 13:2 18:10 19:7 20:8 20:20 23:5 27:1 31:19 34:17 79:5 102:2 107:12 112:15 121:11 146:19 149:1 158:15 159:1 180:7 185:25 269:11 274:3 279:6 | | | | **discreet**(1) 116:19 **discuss**(1) 280:11 **discussed**(13) 55:25 74:23 88:9 102:4 186:2 186:4 188:15 190:19 190:20 246:4 261:4 273:11 278:19 **discusses**(1) 236:2 **discussing**(5) 158:23 188:4 189:14 213:17 221:22 235:10 259:12 |
| **december**(8) 14:17 14:20 45:24 46:6 46:8 48:20 100:6 120:21 **decent**(1) 139:16 **decide**(14) 105:25 107:18 108:9 108:19 109:2 124:18 127:10 127:11 142:25 166:2 168:5 168:12 177:7 210:11 | | **described**(17) 29:10 101:11 112:9 119:18 162:24 168:24 191:13 193:23 204:9 205:2 207:4 211:23 223:23 224:1 233:6 242:12 274:1 **describes**(2) 120:12 225:20 **describing**(3) 19:10 144:12 155:8 **description**(1) 264:24 **designed**(2) 89:11 96:12 | | **didn't**(52) 15:7 17:9 21:8 21:25 23:21 27:17 32:24 32:25 37:3 43:21 44:17 51:6 53:8 58:20 60:8 60:19 62:3 64:18 65:12 67:18 67:23 76:7 81:16 181:12 181:21 186:23 188:20 189:25 192:22 192:25 193:195:12 195:23 205:19 210:10 216:19 218:1 236:20 240:10 240:15 244:15 247:1 247:23 256:14 259:2 260:19 261:15 269:17 269:20 275:2 275:4 278:10 | | **discussion**(16) 25:21 51:23 53:1 57:22 59:25 74:15 87:21 98:22 130:1 215:10 218:24 252:11 256:18 260:17 265:3 275:15 **discussions**(27) 16:10 16:13 17:22 19:1 19:8 19:21 20:2 22:16 24:1 24:15 25:1 26:4 26:6 27:4 27:6 27:12 27:22 46:1 46:5 54:17 57:2 57:5 58:9 58:19 60:2 61:4 62:2 |
| **decided**(4) 92:6 104:23 127:18 176:1 **deciding**(1) 95:23 **decision**(11) 15:11 15:13 17:19 65:8 104:15 166:21 181:18 181:23 205:14 230:19 255:25 **decisions**(1) 116:19 **declaration**(9) 271:4 271:7 271:12 271:14 271:18 272:4 273:3 273:8 277:8 | | **detail**(1) 119:23 **detailed**(3) 254:17 254:18 259:20 **details**(4) 33:24 157:9 160:19 206:17 **deteriorate**(2) 15:1 275:21 **determine**(6) 44:4 110:16 144:15 145:1 145:15 205:18 **determined**(5) 64:6 144:24 151:23 220:15 244:22 | | **didn't**(17) 97:18 104:14 109:8 122:21 140:5 141:8 144:4 149:1 151:10 153:3 153:4 153:6 153:6 153:9 177:11 181:4 196:18 **differ**(1) 206:4 **difference**(8) 37:18 37:23 107:14 152:12 162:2 164:7 168:21 231:25 | | **disgorgement**(43) 20:11 32:23 34:19 35:5 35:7 37:23 38:1 39:2 64:2 65:11 76:17 77:3 81:5 81:10 82:3 112:3 112:4 112:5 112:7 112:21 168:7 171:13 172:2 175:10 191:5 191:9 208:3 208:5 209:1 209:4 209:6 209:15 210:18 210:21 211:1 211:9 212:2 219:12 261:7 263:7 263:10 263:17 263:23 |
| **declarations**(1) 271:10 **decline**(5) 272:1 272:7 272:3 273:12 276:7 **declining**(2) 272:12 272:13 **deep**(1) 250:9 **deep-out-of-the-money**(1) 143:2 **deeper**(1) 204:25 **default**(3) 15:6 143:18 212:17 | | **determines**(1) 206:22 **deutsch**(2) 3:20 5:26 **deutsche**(1) 10:9 **develop**(6) 102:2 116:4 129:19 187:8 188:20 231:21 **developed**(9) 93:15 100:1 116:4 116:7 118:12 182:23 188:21 203:13 246:8 **developments**(2) 22:25 122:24 **devine**(2) 53:11 195:9 **dewey**(1) 4:12 **dialed**(1) 43:22 **dialogue**(1) 100:24 | | **differences**(5) 90:2 152:18 152:20 152:21 259:13 **different**(49) 13:5 25:3 37:3 38:21 59:13 75:13 97:16 104:21 104:22 106:1 106:11 107:4 107:6 110:24 111:12 114:3 115:5 116:20 116:25 118:10 120:2 121:1 124:9 129:20 138:18 143:24 145:2 145:14 145:1 145:25 155:11 156:2 156:14 156:14 166:11 170:9 174:24 184:11 184:11 188:1 188:23 189:14 192:15 198:12 213:24 232:24 239:2 239:11 244:9 **differing**(1) 126:5 **difficult**(8) 23:25 42:2 42:11 87:8 250:1 264:15 278:2 278:4 **digging**(2) 141:1 204:25 **dinner**(1) 191:22 **dip**(1) 169:12 **dipped**(3) 276:15 276:19 276:20 | | **disgorgements**(2) 171:7 171:8 **dispense**(1) 207:3 **dispensed**(1) 207:25 **displays**(1) 59:4 **dispose**(2) 236:24 237:1 **disposition**(6) 124:20 153:7 153:12 199:21 231:6 232:7 **disproportionally**(1) 169:14 **disproportionat**(1) 101:22 **disproportionately**(2) 114:16 146:23 **dispute**(1) 200:14 **dissertation**(1) 92:6 **dissimilar**(1) 182:24 **distressed**(4) 44:23 44:25 143:9 279:7 **distribute**(2) 80:15 261:9 **distributed**(4) 134:22 134:23 141:17 **distribution**(2) 136:20 141:12 |
| **defendant**(2) 16:22 56:9 **defendant's**(1) 221:1 **defendants**(1) 270:7 **defended**(3) 75:4 277:16 277:19 **defense**(10) 131:9 131:13 136:24 139:16 139:19 149:4 213:19 213:20 213:23 238:8 | | | | | | |
| **defenses**(43) 109:22 109:25 110:2 110:8 110:9 110:12 110:14 129:4 129:6 130:5 130:7 131:12 131:23 132:3 132:4 133:17 133:25 134:1 134:4 135:3 135:24 136:2 136:4 136:9 137:10 139:10 139:15 140:2 144:9 144:18 159:21 162:19 163:9 164:4 182:17 228:2 228:4 228:4 229:6 233:6 233:22 234:6 234:8 | | | | | | |
| **deference**(1) 98:10 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **distributions**(2) 185:20 211:19 | | **don't**(40) 95:2 95:4 96:15 96:17 101:20 104:9 105:16 106:18 106:25 107:5 107:11 112:11 115:7 116:17 116:23 119:14 119:22 120:4 120:16 120:22 121:15 121:17 121:19 121:25 123:25 128:3 130:19 131:4 132:3 135:24 136:12 138:4 144:7 145:23 148:10 150:24 150:25 152:17 153:1 185:6 209:20 | | **duty**(2) 148:7 148:24 | | **embodied**(7) 21:17 23:23 34:18 35:10 35:19 100:20 101:13 |
| **district**(1) 1:2 | | | | **dynamic**(1) 42:11 | | |
| **divine**(5) 53:7 54:4 54:16 54:18 54:22 | | | | **dynamics**(1) 148:13 | | **emergence**(3) 66:6 67:19 126:2 |
| **divulge**(2) 54:7 58:11 | | | | **e-2**(1) 219:9 | | **empirical**(4) 96:2 96:3 96:14 156:6 156:7 |
| **docket**(1) 197:16 | | | | **e-equipoise**(1) 264:11 | | **employed**(6) 11:23 12:9 12:14 91:14 91:15 91:21 |
| **doctrinal**(1) 264:16 | | | | **e-mail**(1) 128:16 | | |
| **document**(18) 18:6 31:12 33:15 48:14 48:17 55:1 69:22 71:15 71:19 221:12 222:4 222:18 222:20 225:10 252:9 254:3 260:13 277:6 | | **doomed**(1) 202:9 | | **e-reasonably**(1) 265:16 | | |
| | | **dorr**(2) 6:21 10:34 | | **each**(36) 19:25 38:21 104:15 106:3 112:19 116:24 118:18 118:18 118:20 129:20 130:15 141:3 144:15 145:2 145:16 145:19 147:12 150:6 154:12 184:19 188:13 203:2 204:1 204:5 204:25 207:5 220:15 220:15 226:15 227:4 227:17 228:5 228:13 235:10 238:18 260:10 | | **employees**(3) 18:16 23:9 49:5 |
| | | **dose**(1) 239:1 | | | | **enable**(1) 180:15 |
| | | **double**(5) 266:7 267:9 268:1 | | | | **encourage**(1) 19:24 |
| | | **doubt**(3) 201:8 201:10 255:23 | | | | **end**(23) 16:22 51:20 87:14 103:4 103:5 107:1 107:16 114:3 146:3 146:4 149:2 186:3 199:13 206:22 207:2 207:2 212:22 230:10 234:8 281:1 282:16 282:22 283:1 |
| **dodge**(1) 4:40 | | **dougherty**(2) 8:25 8:26 | | | | |
| **does**(62) 13:13 35:9 35:21 39:6 39:8 50:8 66:21 67:1 68:25 71:15 71:19 79:4 85:12 88:9 88:14 102:24 103:9 103:12 111:6 123:10 124:3 126:1 134:13 137:14 147:9 153:14 153:16 159:6 159:24 167:12 168:2 171:19 202:1 202:3 202:6 211:9 218:2 224:14 225:22 228:3 230:13 237:12 237:1 237:21 238:9 238:10 238:14 238:17 238:18 238:20 238:20 239:20 239:22 242:7 242:22 243:25 251:10 252:9 253:17 260:13 260:14 274:5 | | **douglas**(2) 3:20 5:26 | | **earlier**(7) 49:22 113:1 149:1 197:24 199:12 233:6 246:5 | | |
| | | **down**(36) 15:19 15:19 49:14 50:1 63:18 63:19 63:19 85:12 101:8 105:12 110:15 124:15 125:8 136:3 141:1 141:4 143:6 153:14 160:2 160:4 167:18 169:19 172:3 176:5 191:17 211:4 211:12 213:2 244:5 249:12 252:16 252:21 255:6 255:11 257:17 280:23 | | **earliest**(1) 283:13 | | **ended**(3) 105:24 251:12 252:17 |
| | | | | **early**(18) 18:23 66:3 68:25 69:6 71:17 71:20 92:12 97:13 99:4 189:8 189:11 189:20 195:21 198:5 198:10 225:25 270:1 276:15 | | **ends**(2) 169:7 234:10 |
| | | | | | | **enforce**(1) 79:17 |
| | | | | | | **engaged**(4) 97:13 179:6 179:10 270:10 |
| | | | | | | **engagement**(2) 199:13 245:14 |
| | | | | | | **english**(1) 4:21 |
| | | | | **easier**(4) 108:6 138:8 142:15 257:17 | | **enjoy**(1) 85:3 |
| **doesn't**(43) 38:14 38:18 39:25 59:8 64:21 67:5 71:18 88:22 165:24 166:17 167:16 167:17 167:20 169:6 169:6 175:6 176:2 195:16 201:25 211:2 211:2 211:3 211:4 211:9 216:5 217:1 217:13 224:14 227:21 227:24 232:22 232:24 237:15 237:19 238:7 240:4 241:25 242:14 242:20 243:5 255:21 257:4 265:13 | | **downgrade**(8) 49:9 49:10 49:18 50:7 52:5 52:2 55:25 | | **east**(1) 10:46 | | **enlarged**(1) 223:7 |
| | | | | **easy**(3) 178:23 207:3 272:25 | | **enormous**(1) 197:8 |
| | | | | **eat**(4) 131:20 175:23 176:2 219:11 | | **enough**(26) 26:2 27:15 41:6 82:16 103:1 121:24 126:8 142:24 166:1 177:20 196:23 197:4 198:6 199:10 204:18 206:16 209:23 211:17 213:5 218:17 219:13 243:8 250:9 271:6 277:21 279:25 |
| | | **downgraded**(1) 50:12 | | **econometrics**(1) 96:7 | | |
| | | **downgrading**(1) 55:13 | | **economic**(2) 51:21 96:8 | | |
| | | **downloads**(1) 93:12 | | **economics**(3) 93:9 94:17 94:20 | | |
| | | **downside**(6) 203:6 203:10 203:11 238:3 273:11 | | **economy**(2) 276:10 276:21 | | **enter**(1) 202:4 |
| **doesn't**(10) 109:23 114:2 117:23 123:2 131:5 136:25 139:21 147:2 148:13 153:13 | | | | **economy-wide**(1) 277:1 | | **entered**(2) 192:13 202:8 |
| | | **downturn**(1) 100:3 | | **ecro**(1) 1:39 | | **enterprise**(21) 38:18 39:23 40:1 40:6 40:8 41:17 111:19 155:20 155:20 160:25 162:12 162:17 163:2 164:2 165:16 165:19 169:17 169:18 207:14 213:5 213:14 |
| | | **downturns**(1) 125:16 | | **eddie**(6) 67:21 67:24 69:12 70:21 71:3 | | |
| **doing**(8) 38:18 53:19 87:13 92:7 96:13 118:6 176:21 210:11 | | **downward**(2) 55:5 55:8 | | **education**(3) 12:6 12:7 12:10 | | |
| | | **dozens**(1) 156:10 | | **educational**(1) 12:2 | | |
| | | **draft**(1) 198:7 | | **edwards**(1) 4:40 | | **entire**(3) 39:3 57:17 61:24 |
| **dollar**(7) 32:8 37:15 82:2 107:24 143:4 152:20 172:10 | | **drag**(1) 282:24 | | **effect**(15) 96:21 117:14 131:20 144:3 155:23 160:8 162:16 162:21 167:20 167:2 173:14 173:18 179:19 210:9 228:11 | | **entirely**(10) 27:20 76:9 76:9 161:23 188:12 188:20 242:25 243:13 244:2 244:16 |
| | | **dramatically**(1) 176:8 | | | | |
| | | **draw**(1) 131:9 | | | | **entirety**(1) 236:20 |
| | | **drill**(3) 101:8 105:12 110:15 | | **effective**(1) 251:24 | | **entrenched**(1) 42:8 |
| **dollars**(23) 60:1 99:16 107:5 107:6 117:15 118:25 127:7 144:19 151:4 151:5 151:17 160:15 161:24 162:8 162:9 162:15 162:21 185:14 208:23 209:1 209:6 213:16 234:3 | | **drive**(15) 107:5 110:20 117:15 119:2 119:5 123:17 124:15 127:3 131:24 142:1 142:5 160:14 209:15 226:25 232:21 | | **effectively**(4) 110:6 212:15 244:8 247:19 | | **entry**(5) 263:4 263:9 264:22 264:25 265:1 |
| | | | | **efficient**(1) 223:1 | | **eos**(2) 9:30 9:30 |
| | | | | **effort**(3) 137:8 186:12 194:15 | | **ephraim**(1) 7:5 |
| | | **driven**(2) 133:11 229:5 | | **efforts**(1) 18:11 | | **equals**(1) 214:25 |
| | | **driver**(1) 167:25 | | **egi-trb**(1) 5:4 | | **equipoise**(4) 235:25 236:3 263:24 264:14 |
| | | **drivers**(2) 127:6 254:25 | | **egregious**(3) 128:12 128:19 196:13 | | **equitable**(25) 109:19 127:13 128:13 129:2 163:3 168:5 168:11 174:23 175:1 175:5 175:13 177:4 177:4 177:10 210:9 229:18 250:14 263:5 263:6 263:16 264:25 265:4 266:3 267:4 267:21 |
| **dominated**(1) 125:24 | | **drives**(4) 119:3 119:4 140:7 222:3 | | **eight**(5) 89:17 140:25 145:23 168:14 | | |
| **don**(1) 4:47 | | **driving**(7) 118:25 127:7 144:19 152:20 229:4 234:3 253:7 | | **eight-something**(1) 279:3 | | |
| **don't**(106) 30:9 30:18 37:14 37:16 41:8 45:12 45:24 46:6 48:12 50:11 50:13 51:19 51:20 51:22 52:15 53:15 54:17 54:23 55:13 55:18 55:21 58:9 58:22 59:24 60:5 62:13 64:13 66:7 66:11 67:25 69:2 69:7 72:1 72:18 73:6 73:18 73:24 74:1 74:24 80:5 80:18 82:11 85:4 89:2 89:5 89:8 89:16 89:16 155:23 156:18 157:8 158:10 158:24 163:12 167:24 168:12 171:15 176:24 178:9 184:6 185:11 187:16 189:3 189:8 192:14 192:17 201:10 210:5 211:13 212:15 213:4 213:12 213:13 214:11 218:24 224:5 224:6 224:12 235:4 235:5 241:17 254:12 256:6 257:7 257:13 259:6 263:19 264:8 264:23 265:2 277:14 277:19 278:11 279:12 279:14 279:16 279:22 281:6 281:8 282:1 282:2 282:11 282:24 283:6 | | **drop**(3) 274:21 275:3 275:14 | | **either**(18) 89:3 102:19 123:25 125:3 127:12 127:13 138:14 144:7 144:7 153:3 165:10 167:15 169:22 184:1 184:10 213:1 230:2 260:20 | | **equitably**(5) 109:9 230:3 265:17 266:1 267:1 |
| | | **dropped**(6) 255:11 255:13 275:8 275:13 276:20 279:4 | | **elaborate**(1) 37:8 | | |
| | | | | **elden**(1) 8:25 | | **equity**(6) 110:4 131:21 143:3 166:22 167:7 176:19 |
| | | **drowning**(1) 206:17 | | **eldersveld**(1) 7:7 | | |
| | | **dry**(1) 93:13 | | **electronic**(2) 1:47 284:7 | | |
| | | **dual**(1) 169:19 | | **element**(2) 124:6 125:10 | | **equivalent**(1) 82:2 |
| | | **dublin**(1) 2:23 | | **elements**(1) 145:14 | | **esop**(2) 102:13 166:9 |
| | | **ducayet**(56) 1:27 86:11 89:25 90:3 90:5 90:7 91:1 91:3 100:17 101:4 101:5 103:1 103:20 103:23 105:1 105:3 105:9 105:10 145:10 145:12 145:13 154:14 154:16 154:19 154:22 154:24 157:4 157:6 157:24 158:2 158:3 158:13 158:18 158:24 158:4 159:8 159:10 159:15 159:16 174:3 174:8 174:12 174:15 174:16 177:13 177:15 177:20 177:23 177:25 178:1 189:15 191:2 198:15 213:18 256:3 279:15 | | **elicited**(1) 74:10 | | **especially**(9) 97:24 98:20 98:24 128:7 129:7 136:23 150:14 169:6 276:19 |
| **done**(9) 39:12 44:15 61:5 88:16 93:25 121:19 146:16 157:1 185:23 | | | | **elicits**(1) 29:16 | | |
| | | | | **elimination**(2) 195:4 195:11 | | |
| | | | | **elizabeth**(1) 7:48 | | |
| | | | | **elkins**(1) 9:14 | | |
| | | | | **elliot**(2) 2:5 11:5 | | |
| | | | | **else**(15) 87:21 89:18 98:7 113:17 113:20 125:2 125:3 129:3 131:16 134:18 137:11 149:7 150:8 207:25 283:23 | | |
| | | | | **elsewhere**(2) 263:16 265:3 | | |
| | | **due**(2) 15:1 243:12 | | **else's**(1) 102:7 | | |
| | | **duff**(3) 3:10 50:10 213:10 196:19 | | **email**(23) 48:17 48:20 49:1 49:4 49:8 49:21 49:22 50:14 51:6 51:9 51:14 52:3 52:4 55:2 55:22 55:23 62:22 63:2 63:3 69:20 70:10 70:11 71:9 | | |
| | | **dumps**(1) 149:20 | | | | |
| | | **during**(56) 29:9 30:14 42:12 57:17 58:13 61:24 62:7 62:8 67:15 74:11 74:15 74:23 85:24 158:10 170:8 178:3 190:16 192:9 192:21 202:23 273:20 274:10 276:6 | | **emails**(2) 62:21 196:10 | | |
| | | | | **emanated**(1) 252:11 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **esq**(121) 1:24 1:25 1:26 1:27 1:34 2:5 2:6 2:7 2:13 2:20 2:21 2:22 2:23 2:24 2:25 2:26 2:32 2:33 2:41 2:42 3:5 3:13 3:14 3:15 3:16 3:17 3:18 3:19 3:20 3:26 3:27 3:33 3:34 3:35 3:43 4:6 4:13 4:14 4:15 4:22 4:23 4:29 4:35 4:41 4:47 5:5 5:6 5:12 5:24 5:26 5:28 5:30 5:32 5:34 5:38 5:39 5:40 5:41 5:45 6:5 6:7 6:9 6:17 6:21 6:24 6:29 6:33 6:37 6:39 6:43 6:47 7:5 7:7 7:11 7:13 7:15 7:17 7:19 7:21 7:25 7:30 7:32 7:36 7:40 7:42 7:44 7:46 7:48 8:6 8:11 8:15 8:17 8:22 8:26 8:34 8:38 8:40 8:42 8:46 9:5 9:7 9:11 9:15 9:19 9:27 9:31 9:35 9:40 9:44 9:48 9:52 10:6 10:15 10:17 10:21 10:26 10:30 10:35 10:39 10:43 10:47 | | **examiner**(167) 23:2 23:3 23:12 72:24 73:23 98:4 98:24 106:8 106:9 106:24 107:1 107:5 107:7 111:4 111:5 111:8 117:20 117:25 118:3 119:7 120:11 122:6 122:8 129:11 129:25 130:2 130:20 131:5 131:18 136:18 136:19 136:21 136:22 137:9 137:12 138:14 139:9 139:15 139:21 146:7 146:15 147:5 148:7 148:11 148:20 149:20 151:15 152:6 152:8 153:3 153:15 153:19 154:10 159:20 163:21 165:3 167:7 168:4 168:20 173:3 173:4 188:8 188:11 188:16 190:12 190:16 194:25 196:9 197:4 197:12 200:21 205:12 214:20 215:4 215:5 215:6 217:20 217:23 218:2 218:4 224:10 224:14 225:9 225:14 225:19 225:20 226:6 226:12 227:12 227:15 228:21 230:11 231:8 231:9 231:25 232:1 232:6 232:21 232:24 233:2 233:4 233:11 234:16 234:25 235:2 235:6 235:19 235:24 236:7 236:13 236:16 237:3 237:19 238:22 238:25 239:18 239:19 240:15 240:22 240:23 240:25 241:9 241:2 241:25 242:2 242:4 243:2 243:4 244:4 244:7 244:25 245:5 245:7 245:24 247:5 247:8 248:16 252:8 252:11 252:15 253:15 254:18 254:19 254:22 256:15 256:18 258:18 259:8 259:13 259:14 263:23 264:2 264:4 264:5 264:11 264:15 264:18 265:13 265:14 265:16 265:21 266:25 267:13 267:24 268:16 268:18 268:23 | | **expert**(27) 9:34 86:19 87:18 88:8 97:8 100:18 166:21 180:14 181:10 186:9 186:1 190:5 190:7 192:15 194:5 195:12 201:9 205:15 221:13 264:9 261:12 270:17 270:2 271:3 278:14 282:10 282:18 **expertise**(15) 93:17 93:19 94:2 94:4 94:23 95:8 95:11 96:23 96:25 98:11 180:12 183:2 201:6 278:6 278:12 **expired**(1) 177:13 **explain**(15) 104:2 127:15 129:9 132:17 147:23 157:11 186:14 186:24 206:20 216:22 247:5 248:2 248:7 267:10 276:4 **explained**(1) 170:24 **explicitly**(3) 208:25 230:13 242:22 **explore**(2) 29:17 192:17 **exposure**(2) 150:6 150:17 **express**(1) 245:8 **expressed**(3) 72:20 72:22 136:18 **expressly**(7) 63:20 238:9 238:10 242:1 243:5 244:1 244:3 **extension**(1) 175:9 **extensively**(2) 187:4 193:22 **extent**(17) 24:7 29:16 30:5 79:8 86:14 97:1 97:3 100:25 174:3 180:17 205:17 222:3 223:8 247:18 260:17 278:22 281:13 **extra**(6) 122:24 142:14 164:20 173:8 173:11 253:5 **extreme**(3) 117:5 134:9 135:1 **extremes**(1) 233:25 **eyeball**(1) 260:8 | | **far**(12) 19:17 29:23 39:15 42:9 59:19 114:6 126:13 146:4 192:24 268:24 269:1 275:20 **far-right**(1) 225:11 **fargo**(1) 10:29 **farther**(1) 41:8 **fast**(1) 14:10 **fault**(1) 86:6 **favorable**(5) 116:21 116:22 117:17 117:17 140:12 **features**(2) 63:15 102:8 **february**(15) 45:4 70:16 70:19 71:10 104:4 181:17 198:22 202:20 246:17 246:25 259:17 272:18 272:21 272:23 272:24 **fed**(1) 155:16 **federal**(1) 212:11 **feel**(3) 42:7 55:11 178:22 **feels**(2) 175:12 176:25 **fees**(1) 150:12 **feld**(3) 2:19 8:14 88:5 **fell**(4) 26:18 26:25 29:6 245:20 **felt**(7) 21:17 32:23 64:4 71:2 177:6 205:10 244:16 **few**(8) 23:7 34:3 70:23 77:23 233:1 244:14 246:22 268:7 **fewer**(2) 172:20 261:1 **fiduciary**(1) 148:6 **field**(1) 93:20 **fifteen**(2) 184:10 235:10 **fifty**(1) 163:7 **fifty-five**(1) 214:25 **fighting**(1) 144:2 **file**(8) 14:23 15:8 15:11 34:11 34:15 65:15 197:18 198:1 |
| **essentially**(7) 26:12 126:23 158:20 163:5 211:19 223:18 223:21 **establish**(6) 24:7 36:9 59:16 174:4 216:16 244:24 **established**(4) 25:22 240:24 245:1 246:2 **establishing**(2) 215:7 244:23 **establishment**(1) 155:12 **estate**(2) 14:5 14:7 **esther**(1) 6:43 **estimate**(21) 42:25 111:20 138:5 143:11 146:6 150:2 150:20 153:10 154:10 167:21 168:20 173:21 175:17 208:12 219:23 241:19 242:6 269:9 269:12 269:14 279:9 **estimated**(9) 129:25 137:1 145:25 146:22 152:4 164:6 203:25 235:20 269:6 **estimates**(3) 104:11 111:9 256:12 **estimating**(1) 148:4 **evaluate**(2) 174:21 224:4 **evaluating**(1) 116:21 **even**(31) 30:3 83:25 96:16 109:2 110:2 121:18 134:5 135:12 136:14 140:22 143:2 144:8 151:6 151:7 151:15 153:25 158:10 176:1 202:5 211:11 214:16 216:6 229:25 230:1 232:23 234:18 235:10 240:9 261:8 267:21 268:8 **event**(1) 168:17 **ever**(14) 18:20 21:17 36:13 41:19 42:12 46:4 55:19 59:24 71:24 72:7 120:13 120:14 199:16 277:15 **every**(5) 93:12 144:7 159:23 159:23 208:1 **everybody**(2) 102:7 131:15 **everyone**(3) 11:3 98:7 207:25 **everyone's**(1) 89:3 **everything**(8) 110:22 113:17 113:20 114:19 119:8 137:11 162:10 159:4 **evidence**(17) 86:19 105:8 127:23 141:11 141:18 153:21 154:3 192:10 196:16 234:2 234:21 235:14 236:8 236:9 236:10 236:1 278:22 **evident**(1) 174:25 **exact**(3) 107:1 266:16 279:4 **exactly**(8) 66:12 99:5 118:24 181:10 192:8 198:17 200:2 275:24 **exaggerated**(1) 152:18 **examination**(24) 11:19 28:8 42:24 44:1 77:8 77:11 77:15 77:17 78:23 83:21 86:12 88:22 88:23 89:2 91:2 154:23 186:3 187:10 212:23 257:21 257:21 282:8 282:1 282:14 **examine**(1) 88:18 | | **examiner's**(32) 23:6 23:23 24:16 24:23 25:16 26:16 26:16 78:5 168:18 171:25 175:9 188:16 196:15 214:24 215:9 226:2 226:4 226:7 228:13 231:4 231:6 231:13 237:20 243:21 263:1 264:9 264:13 264:19 265:11 265:25 267:14 267:22 **examiner's**(10) 98:8 98:10 120:16 120:22 121:12 121:17 139:19 139:25 152:19 154:11 **example**(12) 40:22 95:20 129:10 129:11 169:8 213:8 227:9 227:18 228:20 229:19 236:14 255:7 **excellent**(4) 101:24 116:1 147:15 178:6 **except**(8) 24:7 76:17 91:25 112:22 175:21 180:10 180:12 211:20 **exception**(2) 86:15 87:17 **excerpts**(1) 59:9 **exchange**(2) 69:21 93:2 **excluding**(2) 156:13 205:5 **excuse**(5) 89:1 248:3 254:5 270:8 277:7 **excused**(1) 280:24 **executive**(6) 12:18 12:21 12:25 13:10 13:19 68:8 68:13 68:16 **exercise**(4) 159:12 228:9 229:8 229:8 **exhibit**(26) 11:12 11:13 33:13 33:16 48:14 54:24 55:23 62:19 62:19 69:18 103:15 221:1 221:1 221:18 257:1 257:23 258:2 258:16 258:24 259:7 259:9 262:5 271:11 277:17 285:15 **exhibits**(1) 183:16 **exist**(1) 95:4 **existed**(1) 143:19 **existing**(2) 128:5 173:21 **exists**(1) 156:19 **exit**(1) 281:1 **exiting**(1) 269:3 **expect**(5) 59:7 265:22 281:16 281:20 **expected**(10) 44:4 44:8 67:16 114:14 120:17 127:18 147:16 173:11 204:19 204:1 **experience**(4) 41:24 92:17 201:15 201:17 | | **faces**(1) 148:17 **fachela**(3) 87:9 87:25 88:1 **facilitate**(1) 61:4 **facilitating**(1) 19:21 **fact**(25) 15:7 16:12 54:18 55:18 60:21 65:7 103:25 109:15 111:11 122:18 134:3 163:15 163:19 165:13 174:9 180:18 197:1 201:24 230:5 230:18 237:1 238:12 238:22 255:21 283:1 **factors**(3) 157:15 230:12 242:17 **facts**(12) 99:12 102:5 105:19 105:21 116:13 118:11 128:3 134:5 135:5 139:8 148:11 150:18 **factual**(8) 151:1 193:22 193:23 239:2 239:12 239:22 244:19 244:20 **faculty**(3) 91:8 96:20 200:24 **fail**(1) 202:9 **failed**(2) 162:11 244:23 **fair**(25) 26:2 37:2 51:8 57:25 58:3 58:7 58:17 58:23 60:20 60:23 61:2 61:6 62:16 149:20 172:5 177:20 179:23 197:4 198:6 199:10 204:18 211:17 243:8 277:21 278:3 **fairly**(3) 101:8 107:25 189:11 **fairness**(2) 179:10 270:24 **faith**(6) 175:25 196:7 196:9 196:13 216:17 216:20 **fall**(7) 66:3 91:12 91:13 91:19 102:21 190:14 202:21 **fallen**(1) 74:5 **falls**(1) 30:10 **false**(2) 241:23 274:4 **faltas**(2) 8:29 8:30 **familiar**(8) 79:2 95:17 95:25 96:6 102:5 102:17 254:10 266:15 **family**(1) 12:5 | | **filed**(18) 14:21 15:17 21:20 22:10 26:20 27:18 27:19 56:10 57:11 60:21 63:19 64:11 98:15 98:20 104:8 161:12 198:1 198:12 **filing**(9) 15:7 15:14 22:25 46:3 161:15 165:15 182:8 197:18 205:24 **filings**(1) 186:5 **final**(1) 177:15 **finally**(6) 102:14 108:24 150:20 168:2 187:7 218:23 **finance**(24) 47:3 47:8 91:8 91:16 91:18 93:8 93:19 93:21 93:24 93:25 94:7 94:11 94:12 94:14 94:18 94:21 94:24 94:24 95:1 95:20 98:11 167:5 180:13 202:11 **financial**(12) 94:3 94:17 94:20 149:18 149:19 150:3 151:22 174:5 273:19 273:24 274:4 274:11 **find**(16) 27:23 108:5 108:6 108:7 128:12 138:25 139:1 169:4 174:25 199:5 202:10 230:3 244:19 244:21 245:4 264:15 **finding**(1) 130:19 **findings**(3) 24:1 24:18 25:4 **fine**(4) 110:3 115:25 258:1 283:19 **finger**(2) 2:12 9:10 **finish**(4) 83:7 83:11 144:23 282:5 **finished**(1) 55:2 **finishes**(1) 282:4 **finishing**(1) 92:6 **firm**(5) 11:6 97:14 185:18 185:23 200:25 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| first(85) 14:14 14:16 14:22 15:18 18:25 28:21 31:6 31:10 31:13 33:4 33:12 34:22 37:7 37:15 37:17 38:2 46:3 46:4 48:15 50:1 54:25 55:22 67:25 68:10 70:1 71:2 75:10 75:14 76:8 76:20 81:12 81:19 82:9 92:18 92:19 93:18 99:2 102:4 105:15 105:16 105:22 114:17 115:4 119:5 132:3 136:9 136:22 140:22 142:1 142:9 142:23 147:10 152:13 153:4 157:18 159:3 171:12 174:23 175:4 180:10 184:15 190:25 198:6 198:22 201:2 201:5 207:16 210:11 211:4 221:11 222:11 233:24 246:8 246:12 246:17 263:4 270:16 272:6 272:11 273:18 274:10 280:18 281:11 283:3 283:12 | | | | | |
| first-quarter(1) 273:9 | | | | | | | |
| fishell(2) 282:6 282:9 | | | | | | | |
| fit(1) 88:16 | | | | | | | |
| five(19) 12:13 89:14 113:22 143:16 146:21 152:3 163:7 173:14 186:23 187:1 187:19 189:2 193:16 220:7 235:9 242:3 246:16 269:19 279:8 | | | | | | | |
| flag(1) 28:6 | | | | | | | |
| flavor(1) 173:3 | | | | | | | |
| flavors(1) 120:8 | | | | | | | |
| flip(1) 183:19 | | | | | | | |
| floor(2) 2:36 4:8 | | | | | | | |
| flow(5) 87:22 95:2 121:5 121:22 127:19 128:16 139:24 142:17 203:7 203:25 204:1 206:7 206:23 212:4 226:20 230:1 239:11 249:22 | | | | | | | |
| flowed(1) 226:6 | | | | | | | |
| flowing(1) 161:24 | | | | | | | |
| focus(9) 63:1 93:15 94:11 132:14 137:22 157:18 192:4 206:19 248:16 | | | | | | | |
| focused(6) 125:17 144:17 230:15 244:6 250:18 256:5 | | | | | | | |
| focusing(2) 239:8 244:8 | | | | | | | |
| folks(1) 117:2 | | | | | | | |
| follow(3) 80:18 262:6 282:9 | | | | | | | |
| followed(4) 98:6 98:21 105:13 116:3 | | | | | | | |
| following(8) 26:15 26:16 98:3 98:14 148:17 156:20 188:17 188:17 | | | | | | | |
| foods(1) 125:23 | | | | | | | |
| footnote(5) 236:22 265:20 273:3 273:7 273:22 | | | | | | | |
| for(301) 1:2 1:23 2:4 2:19 2:31 3:4 3:11 3:41 4:4 4:21 4:28 4:34 4:40 4:46 5:4 5:19 5:22 6:4 6:15 6:27 6:31 6:36 6:46 7:4 7:29 7:35 7:39 8:4 8:9 8:25 8:29 8:33 8:37 8:44 8:49 9:4 9:14 9:17 9:21 9:26 9:30 9:34 9:38 9:43 9:47 9:51 10:4 10:9 10:14 10:20 10:24 10:29 10:33 10:37 10:42 10:50 11:14 11:15 12:12 12:13 12:21 12:22 12:13 13:14 14:11 14:21 14:23 15:8 15:11 16:15 17:4 19:24 20:12 21:13 22:14 22:15 24:8 24:20 25:19 27:1 27:19 28:9 29:21 29:24 30:7 33:2 35:7 36:4 36:9 38:8 38:11 38:19 39:1 39:2 39:6 41:20 42:25 43:12 47:14 49:13 49:1 51:10 52:2 53:9 54:9 58:24 59:6 59:9 59:22 60:5 60:13 60:17 60:23 60:24 61:2 61:23 62:20 62:21 63:5 64:6 64:21 65:3 67:17 70:11 70:23 71:7 71:25 71:25 72:8 72:18 75:23 76:14 76:16 76:17 77:3 78:17 80:5 81:1 81:4 84:10 85:5 86:5 87:25 88:1 88:5 88:18 89:3 89:23 90:10 90:17 91:9 91:25 92:5 92:9 92:13 95:9 95:13 96:12 101:18 101:24 102:13 105:25 106:1 106:12 106:21 107:23 110:14 110:18 111:21 113:8 113:12 113:13 113:15 113:2 114:18 116:9 118:18 118:20 121:2 121:22 123:15 126:1 126:3 126:6 126:7 127:12 128:11 128:12 129:11 129:20 130:8 130:1 130:14 131:9 133:8 135:18 136:3 136:25 137:11 137:21 138:16 140:23 142:8 143:1 144:13 144:15 144:20 145:16 146:1 146:7 146:12 146:20 147:14 147:15 147:17 147:23 148:6 148:16 148:19 148:19 149:1 150:6 150:14 150:23 152:5 152:15 152:11 154:3 156:15 159:3 159:17 160:8 161:12 162:5 162:8 162:15 163:16 163:21 163:22 163:23 164:20 164:22 164:24 165:25 166:7 169:8 169:25 170:24 171:4 171:5 172:10 174:23 175:21 175:22 175:24 175:24 176:7 177:20 179:1 182:11 182:22 183:15 183:21 185:1 187:25 192:19 193:21 193:2 193:23 194:7 196:11 196:23 197:18 198:7 198:24 198:24 198:25 198:25 199:24 200:21 201:20 201:22 205:23 206:5 206:6 208:16 210:14 210:21 213:3 213:8 213:20 214:24 215:10 217:14 217:20 217:21 218:2 219:2 220:13 220:15 221:7 | | | | | |
| forces(1) 106:10 | | | | | | | |
| foregoing(1) 284:6 | | | | | | | |
| forget(1) 274:21 | | | | | | | |
| form(9) 81:20 102:17 112:2 125:13 128:1 190:1 232:2 268:14 275:2 | | | | | | | |
| formal(31) 120:11 121:12 121:18 122:19 123:25 125:9 135:16 135:17 136:10 137:1 137:18 137:20 140:3 140:24 141:6 141:7 141:9 141:22 141:23 143:14 153:19 160:1 160:6 168:9 182:19 182:22 223:24 224:1 224:3 225:16 226:21 | | | | | | | |
| formal-step(1) 260:19 | | | | | | | |
| formally(2) 14:18 198:1 | | | | | | | |
| forman(1) 1:32 | | | | | | | |
| formed(3) 70:7 101:12 127:10 | | | | | | | |
| former(3) 18:16 23:9 70:22 | | | | | | | |
| forming(3) 102:6 105:13 126:10 | | | | | | | |
| forms(2) 124:9 125:11 | | | | | | | |
| forth(7) 118:25 155:4 157:11 194:10 204:5 224:8 224:9 | | | | | | | |
| fortune(1) 23:19 | | | | | | | |
| forward(9) 25:7 26:9 26:13 67:22 90:3 92:2 122:21 143:13 282:13 | | | | | | | |
| forwarded(1) 70:11 | | | | | | | |
| forwarding(4) 14:10 48:25 49:4 49:22 | | | | | | | |
| found(8) 36:12 113:2 175:14 214:20 214:21 240:1 240:2 247:11 | | | | | | | |
| foundation(6) 10:38 24:8 36:4 78:17 80:4 102:10 | | | | | | | |
| four(29) 56:1 68:8 68:12 68:15 92:5 117:15 145:24 162:16 162:20 162:23 163:13 164:1 164:16 167:10 170:25 187:19 188:9 229:5 230:12 237:7 268:9 268:13 268:19 268:21 272:6 272:11 274:10 278:2 278:3 | | | | | | | |
| four-percent(1) 133:21 | | | | | | | |
| fourteen(1) 217:20 | | | | | | | |
| fourth(1) 165:13 | | | | | | | |
| framework(1) 102:1 | | | | | | | |
| frank(1) 5:32 | | | | | | | |
| frankel(1) 10:5 | | | | | | | |
| frankly(4) 22:18 44:13 60:19 196:14 | | | | | | | |
| fraud(9) 78:2 78:5 130:25 185:2 215:10 242:15 242:15 242:16 250:14 | | | | | | | |
| fraudulent(22) 95:11 95:15 95:16 97:4 97:6 102:19 109:6 151:12 179:6 185:2 202:15 214:17 214:18 214:21 215:8 215:15 239:25 240:16 241:1 241:6 242:11 243:9 | | | | | | | |
| frequently(1) 183:3 | | | | | | | |
| friday(3) 251:5 282:12 283:1 | | | | | | | |
| friedman(1) 8:20 | | | | | | | |
| friend(2) 71:6 200:11 | | | | | | | |
| friendly(2) 136:8 200:13 | | | | | | | |
| from(143) 16:9 16:12 17:22 18:3 18:3 18:4 18:4 27:2 28:12 29:11 30:16 34:23 35:22 36:17 43:23 47:16 48:20 49:9 49:9 49:14 52:7 52:22 53:2 54:16 59:8 60:15 62:22 63:2 64:5 69:14 70:10 70:19 70:21 72:1 72:14 76:20 81:9 83:17 85:24 89:22 91:18 91:23 92:12 92:22 93:2 97:1 97:10 102:10 103:4 110:12 110:13 111:17 111:19 117:8 124:25 129:8 130:25 131:3 131:10 131:22 132:5 133:18 133:18 133:18 135:5 134:22 135:10 135:15 135:2 143:10 144:10 144:18 144:24 146:22 146:25 147:13 151:19 151:20 151:22 160:10 161:25 163:11 166:10 167:5 168:7 169:4 175:10 182:24 185:20 186:7 186:7 189:16 189:17 192:15 195:11 196:19 199:8 203:16 203:18 204:17 205:8 208:4 209:14 209:14 210:20 211:7 217:14 221:4 226:7 234:6 244:24 252:9 252:11 252:14 252:19 252:21 253:1 253:4 254:5 254:9 256:24 259:20 260:6 260:7 260:22 260:23 264:18 265:21 266:4 267:6 267:19 268:24 269:1 269:10 275:14 276:13 276:16 277:16 277:18 278:5 279:2 284:7 | | | | | |
| front(4) 33:19 141:16 199:13 249:11 | | | | | | | |
| fulfill(1) 48:3 | | | | | | | |
| full(40) 20:12 35:3 49:13 73:25 81:25 82:11 90:17 107:24 109:1 110:21 113:10 114:20 115:14 116:8 118:11 124:1 132:1 132:1 132:5 139:7 139:12 139:13 140:17 148:5 148:19 165:8 170:13 170:22 180:10 184:3 218:8 218:16 218:17 219:8 219:10 219:14 219:15 220:24 252:17 269:25 | | | | | | | |
| full-avoidanc(1) 139:20 | | | | | | | |
| full-time(1) 100:15 | | | | | | | |
| fuller(1) 265:2 | | | | | | | |
| fully(2) 148:3 265:18 | | | | | | | |
| fund(4) 9:14 115:3 164:25 165:1 | | | | | | | |
| funny(1) 271:6 | | | | | | | |
| further(6) 49:18 110:15 141:4 268:8 276:24 285:2 | | | | | | | |
| fury(1) 107:17 | | | | | | | |
| future(7) 100:8 126:1 126:7 126:9 127:24 150:7 151:23 | | | | | | | |
| galbraith(2) 8:33 8:34 | | | | | | | |
| gandhi(1) 8:38 | | | | | | | |
| gangat(1) 8:6 | | | | | | | |
| gap(3) 20:1 141:10 153:18 | | | | | | | |
| garamella(8) 271:4 271:7 271:10 271:17 273:8 274:1 274:19 277:4 | | | | | | | |
| garvan(1) 3:5 | | | | | | | |
| gary(1) 7:25 | | | | | | | |
| gave(29) 52:2 64:13 97:15 98:9 153:7 153:9 166:11 169:24 175:24 183:6 183:8 189:1 189:20 190:21 191:12 206:1 227:15 227:16 231:10 233:11 234:17 240:15 242:24 244:25 246:3 247:20 247:21 249:18 262:14 | | | | | | | |
| gavin(1) 6:17 | | | | | | | |
| gee(1) 222:19 | | | | | | | |
| general(14) 34:5 35:3 37:18 81:23 81:24 81:25 84:13 84:20 101:19 119:17 144:20 162:1 184:19 271:25 | | | | | | | |
| generally(13) 19:7 20:8 31:19 49:20 56:21 57:7 96:20 120:1 155:8 201:20 202:25 230:16 230:17 | | | | | | | |
| gentilotti(1) 3:4 | | | | | | | |
| gentleman(1) 199:13 | | | | | | | |
| genuinely(1) 169:25 | | | | | | | |
| george(2) 8:25 8:26 | | | | | | | |
| get(143) 14:14 15:20 16:24 19:25 22:1 22:6 22:25 26:11 27:15 27:18 33:5 34:22 35:3 35:4 35:12 35:23 36:8 37:6 37:9 37:10 37:17 40:7 41:9 42:20 42:21 46:15 46:20 46:21 47:21 58:23 60:4 60:7 60:13 60:15 60:17 60:23 61:2 61:5 61:20 61:23 62:20 79:6 80:16 81:23 81:25 82:1 85:6 88:11 88:12 96:17 99:18 99:19 103:21 104:7 107:24 109:12 109:23 111:3 114:4 114:17 114:18 118:22 124:1 127:3 128:10 130:1 131:20 133:18 133:18 134:6 135:6 135:12 136:7 138:6 138:8 138:8 139:4 139:5 139:20 139:25 140:5 140:24 144:3 141:21 142:24 143:18 143:20 144:5 144:23 146:11 147:23 149:5 150:12 153:23 153:24 154:1 154:10 156:3 156:15 157:8 162:20 163:19 163:23 164:19 165:7 165:9 167:16 167:24 170:22 173:9 173:10 173:13 175:23 176:10 180:21 183:21 187:4 188:1 198:21 204:10 204:15 204:16 213:1 213:5 213:15 215:12 216:6 224:6 227:5 227:7 234:4 234:11 239:14 240:19 240:20 250:1 250:22 255:25 278:11 282:3 282:12 283:4 283:11 | | | | | |
| gets(15) 45:1 47:21 47:24 65:24 65:25 65:25 79:6 112:20 115:5 122:8 125:8 132:7 165:6 165:11 172:3 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**getting**(25) 22:21 35:22 61:6 84:13 89:1 117:14 126:12 132:5 134:22 135:9 138:16 139:7 139:10 139:12 139:13 143:2 147:10 147:11 147:12 156:23 163:18 171:8 171:9 186:25 256:12

**give**(20) 86:24 89:6 90:8 104:21 136:25 141:6 166:17 173:2 190:5 193:10 218:2 227:8 227:24 238:18 239:20 242:1 265:2 267:7 270:20 283:9

**given**(16) 21:15 24:18 51:2 96:22 110:1 137:4 155:11 160:6 160:6 160:7 164:24 170:5 239:21 250:6 271:16 283:1

**gives**(7) 89:16 165:3 192:14 226:15 227:19 238:12 241:22

**giving**(10) 59:14 82:21 86:22 131:8 131:19 166:16 191:17 193:1 277:3 277:10

**glad**(3) 74:16 87:10 87:18
**glancing**(1) 259:24
**glean**(1) 186:6
**gleich**(1) 2:41
**global**(1) 8:29
**goal**(2) 96:17 100:6
**goc's**(7) 35:2 37:21 82:22 84:20 84:22 85:2 85:4

**goes**(18) 29:25 39:24 40:22 82:6 82:14 114:17 115:7 115:11 135:11 146:25 168:8 168:13 172:3 172:5 211:12 242:14 242:15 258:7
**going**(194) 14:23 15:3 15:8 16:4 21:13 22:13 28:6 42:16 47:11 51:22 56:3 66:18 67:22 70:9 75:13 78:11 83:9 86:9 86:11 87:16 93:18 94:2 94:4 99:20 99:21 99:23 100:4 102:18 107:1 108:5 108:5 110:20 110:21 112:5 112:6 112:11 113:6 113:24 113:25 114:12 114:20 114:23 115:12 117:15 118:9 118:10 119:2 119:5 119:10 119:13 120:5 120:14 121:3 122:22 124:2 124:14 124:21 125:10 125:18 127:3 127:5 127:11 128:18 128:19 128:20 129:4 130:12 130:14 131:1 131:9 131:13 131:22 131:25 132:1 133:8 133:13 133:14 133:19 134:22 135:4 135:8 135:22 136:4 136:6 138:6 138:10 138:17 138:20 138:22 138:23 139:2 139:18 140:1 140:24 141:3 141:6 141:20 142:6 143:23 145:18 146:2 146:25 147:4 148:13 148:15 148:22 149:2 149:8 149:12 149:13 149:18 151:7 151:8 153:10 153:17 153:20 153:23 154:5 154:7 154:8 154:10 154:14 154:15 158:22 160:10 160:13 160:19 162:2 163:18 163:20 164:7 165:9 165:21 165:23 170:22 171:20 171:21 171:22 173:8 175:16 175:18 176:3 176:5 176:16 176:17 176:18 176:22 177:7 177:8 177:9 180:1 192:19 206:2 208:18 209:23 209:24 211:23 211:24 218:7 219:11 219:25 220:9 220:22 222:13 222:19 222:25 223:14 229:5 232:17 232:17 232:18 232:1 236:3 236:12 236:23 244:13 249:22 249:23 250:21 252:15 253:16 257:22 257:23 257:24 261:14 262:6 263:18 266:1 266:15 279:16 282:10 282:18 283:4 283:8

**golden**(2) 2:21 149:11
**goldfarb**(2) 3:34 5:40
**goldis**(1) 6:22
**goldman**(4) 6:24 7:35 7:35 10:35
**gone**(5) 42:9 150:7 207:24 263:20 267:20

**good**(57) 11:3 11:4 11:5 11:21 11:22 22:17 23:19 24:3 25:23 40:3 43:7 43:8 45:12 51:10 77:13 77:14 89:24 90:5 90:6 91:1 101:18 106:4 116:1 116:16 117:12 117:13 119:15 126:3 133:16 134:1 135:15 135:16 136:23 138:15 138:17 145:12 146:12 148:10 149:5 168:10 169:20 169:22 172:10 175:25 178:20 178:21 196:7 196:12 196:22 196:25 209:11 210:6 216:16 216:20 243:17 246:12 247:25

**gordon**(13) 6:16 7:42 19:5 20:22 26:23 27:2 28:23 31:8 33:9 61:15 65:19 76:7 79:16
**got**(82) 12:5 14:16 33:16 33:19 41:5 43:23 46:4 82:23 86:5 88:17 91:24 94:16 94:19 102:9 102:15 104:9 107:9 114:7 117:11 117:19 117:20 117:24 118:12 118:13 118:19 121:8 122:20 126:14 126:16 126:22 128:22 128:23 128:25 129:1 129:1 129:2 129:11 130:8 130:14 130:17 131:16 132:8 133:16 134:10 135:14 135:15 135:19 135:20 138:15 139:6 139:9 139:12 140:2 140:16 141:25 142:4 143:4 144:6 148:20 149:14 150:17 150:20 151:24 152:4 162:1 162:17 162:17 162:18 162:19 163:25 164:11 172:8 173:5 198:3 213:8 222:20 226:14 249:17 250:24 258:12 259:2 259:19

**gotshal**(1) 8:37
**governance**(1) 94:1
**governing**(1) 181:4
**grab**(1) 130:23
**grade**(4) 12:4 50:1 50:15 50:21
**graduate**(3) 92:4 96:16 96:20
**graduated**(1) 92:8
**graem**(2) 3:33 5:38
**grand**(1) 4:16
**grasp**(1) 236:20
**great**(18) 36:9 36:19 98:9 98:10 107:23 131:5 131:16 144:1 165:25 169:24 185:17 189:5 192:11 204:24 223:10 246:14 253:2 262:24

**greater**(3) 78:24 79:24 170:9
**greatly**(1) 88:25
**green**(1) 153:24
**greg**(1) 7:11
**greissman**(1) 10:30
**grimace**(1) 259:6
**grippo**(1) 8:25
**gross**(2) 28:3 208:7
**ground**(1) 271:1
**grounds**(1) 138:7
**group**(28) 12:19 12:22 12:25 13:3 13:4 13:11 13:13 13:20 13:25 14:5 14:7 14:7 14:9 19:10 19:11 21:2 21:3 22:19 28:25 40:24 44:22 47:3 61:19 61:20 61:22 61:22 65:6 92:12

**groups**(3) 19:24 20:4 198:24
**grundfest**(1) 92:15
**guarantee**(1) 84:5
**guarantees**(3) 38:17 40:3 40:8
**guarantor**(4) 100:5 106:12 107:19 111:23 121:2 138:1 161:25 227:23
**guess**(12) 19:13 44:17 44:18 45:23 59:12 60:5 67:4 67:12 69:7 70:11 149:13 175:15
**guide**(1) 280:19
**guided**(1) 185:22
**guise**(1) 174:24
**gump**(4) 2:19 8:14 43:10 88:5
**guys**(2) 151:8 188:18

**had**(158) 14:25 15:1 22:3 25:3 25:18 30:19 37:15 42:4 43:22 47:4 47:10 50:2 52:14 54:8 58:9 58:12 58:18 58:21 60:25 64:5 64:9 64:23 65:8 66:4 67:21 71:16 72:14 73:1 73:8 74:5 78:24 82:22 85:23 85:25 86:1 86:9 86:16 88:19 91:16 97:8 98:7 98:17 98:22 99:18 99:19 100:4 100:24 102:20 102:25 105:20 108:3 109:4 114:6 116:11 117:16 118:1 118:17 121:24 125:1 125:21 125:22 125:23 128:2 128:3 143:3 144:22 150:3 150:3 150:5 150:10 150:15 151:3 153:20 160:17 166:24 174:20 177:10 179:6 181:18 181:19 181:20 181:23 185:23 187:5 187:12 191:22 194:10 194:13 194:19 196:1 196:25 196:25 197:4 197:7 197:9 197:25 201:6 201:11 203:5 205:24 212:1 212:13 219:8 220:6 230:5 230:18 230:22 230:24 231:4 231:19 232:10 232:11 233:8 234:5 235:25 236:8 236:9 236:9 239:19 242:19 245:18 246:5 246:7 246:11 247:8 247:25 248:8 249:11 250:3 251:9 251:16 251:19 251:20 252:1 252:1 252:22 253:5 255:3 255:8 255:13 255:14 256:17 255:21 256:18 260:17 265:1 272:5 272:6 273:25 275:15 275:17 276:15 276:19 279:25 280:19 283:12

**hadn't**(1) 277:11
**hale**(2) 6:20 10:33
**half**(4) 146:5 146:14 160:24 282:7
**half-hour**(2) 154:18 279:12
**hand**(4) 11:12 90:13 90:14 187:21
**handed**(3) 48:13 258:15 262:1
**handle**(4) 86:11 121:24 230:25 231:2
**handled**(2) 124:12 191:9
**handling**(1) 47:9
**hands**(2) 99:18 99:19
**handy**(1) 273:4
**hanover**(2) 14:3 14:8
**happen**(18) 39:22 81:8 148:25 151:9 155:25 165:17 166:5 166:8 166:10 166:12 166:13 172:17 172:25 202:6 202:1 232:17 283:9

**happened**(10) 20:2 23:14 26:19 27:2 27:12 28:2 29:14 59:3 67:2 202:7

**happening**(1) 62:2
**happens**(8) 108:7 120:12 141:16 165:15 165:16 166:12 166:15 173:12

**happy**(4) 214:12 216:22 217:3 257:12
**harbor**(1) 182:4
**hard**(27) 27:23 59:22 80:25 104:20 117:18 124:1 124:2 128:16 134:6 134:7 135:12 142:7 142:15 142:16 142:17 142:18 142:1 150:22 170:24 198:21 250:22 257:9 258:5 258:15 262:6 283:2

**harder**(1) 138:8
**hardly**(1) 120:14
**harrisburg**(1) 1:43
**hartenstein**(9) 67:22 68:5 68:24 69:8 70:21 71:13 71:16 282:23 283:11

**has**(57) 16:16 16:19 25:22 42:9 42:10 42:11 44:15 47:13 48:3 48:6 49:12 59:3 63:8 78:11 79:3 79:9 81:7 81:12 86:18 86:19 87:21 93:22 107:1 111:9 117:21 141:2 148:11 148:14 151:13 159:6 159:23 168:14 168:16 177:13 201:17 202:7 208:1 211:20 211:22 220:14 220:19 222:11 225:1 230:1 245:2 253:13 257:20 262:15 273:20 275:8 278:3

**hasn't**(3) 29:15 86:8 236:4
**hat**(5) 117:13 133:12 134:5 141:5 143:25
**hauer**(3) 2:19 8:14 88:5

**have**(301) 11:11 12:14 12:20 13:7 13:12 13:13 13:25 15:10 15:20 16:18 16:21 16:24 17:15 17:24 21:5 21:11 22:20 23:19 24:21 25:12 25:18 26:4 26:10 27:9 27:11 30:6 31:14 32:24 32:25 33:18 34:5 35:23 36:13 36:13 37:4 37:7 37:11 37:14 38:17 39:1 39:12 39:15 40:2 41:8 41:19 41:21 41:22 42:2 42:3 43:4 44:3 45:11 50:6 50:22 52:15 54:8 54:21 58:12 59:9 60:5 62:9 62:18 64:24 67:10 71:3 71:6 74:1 74:8 74:14 75:1 77:19 78:10 79:13 80:8 80:15 81:11 81:16 81:22 82:4 82:7 82:8 82:9 82:11 82:12 82:17 82:17 82:25 85:9 87:20 88:10 88:12 89:24 91:6 91:10 92:17 93:11 93:15 94:22 95:8 95:12 95:23 96:23 96:25 98:7 98:15 98:18 98:20 98:23 99:16 99:22 99:25 100:3 100:7 100:12 101:11 101:20 103:6 103:8 106:10 106:11 106:15 106:17 108:18 108:21 109:8 109:14 109:21 111:7 112:5 112:6 112:8 113:18 116:13 116:14 117:13 117:15 118:19 120:3 122:22 123:7 123:25 126:5 126:8 127:20 130:6 130:18 131:2 133:6 134:9 134:16 135:23 137:18 137:20 138:3 138:16 140:10 141:24 142:4 142:5 142:9 142:10 142:20 142:21 143:4 143:24 144:3 144:8 145:21 145:22 146:16 146:18 148:4 148:22 148:25 149:4 151:23 152:22 154:17 156:23 156:24 157:8 158:9 160:13 160:21 161:22 162:17 162:17 162:18 162:19 162:20 163:6 163:19 164:2 164:2 164:2 164:3 164:3 164:3 164:4 164:4 165:24 167:3 167:8 167:20 170:2 171:13 171:19 171:23 172:4 172:6 172:24 173:13 174:6 174:17 174:24 175:15 175:21 177:3 179:5 180:15 180:16 181:25 183:1 183:1 183:23 184:1 184:19 187:5 187:25 188:19 189:25 192:16 193:16 193:18 197:17 198:4 199:2 200:13 201:15 201:24 202:8 202:19 203:10 203:10 203:15 203:22 205:1 205:4 205:24 206:3 206:8 206:9 206:12 207:19 207:24 208:22 209:2 209:10 210:17 210:22 213:13 213:20 215:7 215:14 217:1 217:12 217:20 218:8 219:10 219:22 221:14 223:6 226:5 226:12 228:5 228:11 229:19 230:8 230:9 231:13 232:7 232:16 232:23 234:3 234:5 234:22 236:23 238:6 238:7 241:11 242:19 242:21 243:2 244:23 245:18 251:13 253:17 253:19 254:11 256:21 257:4

**have**(42) 257:7 257:23 259:2 259:25 261:4 261:8 261:17 261:21 261:24 262:5 262:10 262:16 262:18 262:23 263:24 264:11 265:2 266:13 267:20 273:4 274:17 274:23 274:25 275:3 275:18 276:3 277:24 279:11 279:22 280:7 280:19 281:4 281:18 281:22 281:23 282:13 282:17 282:23 282:3 283:8 283:18

**haven't**(5) 29:13 87:8 167:13 167:18
**haven't**(2) 93:10 148:3
**having**(21) 30:1 36:4 54:17 59:25 60:2 66:10 67:24 73:10 88:19 88:19 116:4 150:6 150:14 158:25 173:6 178:2 192:12 192:18 205:22 206:16 243:5

**he'll**(1) 282:4
**he's**(22) 47:2 49:4 49:22 51:3 51:14 63:25 68:6 68:7 68:8 70:13 70:14 71:4 74:17 86:6 86:9 89:15 200:12 200:24 200:24 282:10 282:12 282:23

**head**(1) 46:12 50:5 230:9 230:9 230:19 230:25 231:2 233:23 254:13 256:1 281:3

**heading**(2) 225:11 277:13
**hear**(8) 24:4 43:21 103:25 111:20 170:5 171:6 173:23 217:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **heard**(11) | 36:13 36:18 43:14 44:6 46:4 93:10 99:13 103:24 124:20 178:2 283:15 | **his**(61) | 25:16 26:7 47:7 50:14 66:5 66:11 67:22 68:20 70:16 70:24 73:8 86:1 86:1 86:4 86:8 86:17 88:22 88:22 88:23 89:2 89:13 100:19 107:8 107:9 107:10 111:9 111:9 118:1 121:18 121:25 124:21 131:7 153:10 158:18 166:21 168:15 197:6 197:9 197:12 198:16 228:4 230:13 234:17 234:22 234:23 234:25 234:25 235:11 235:14 235:20 236:14 237:24 238:10 241:18 242:5 242:17 244:1 245:8 272:4 282:18 | **hurley**(54) | 2:6 24:6 25:10 25:15 25:22 25:23 29:12 30:2 30:5 30:22 36:1 40:15 40:15 40:17 42:24 43:1 43:4 43:7 43:9 43:9 44:2 45:14 45:16 45:18 51:24 52:1 54:4 54:20 58:25 59:8 59:9 59:12 59:17 66:13 66:16 66:19 66:21 66:25 71:23 74:1 74:16 75:6 77:7 78:16 80:4 80:20 81:15 81:19 83:16 83:18 83:19 83:22 84:11 85:1 | **include**(13) | 39:6 39:9 101:22 182:4 182:7 182:10 182:13 182:16 182:19 184:13 185:4 191:4 250:13 |
| **hearing**(8) | 29:20 54:16 63:22 159:3 170:10 277:13 281:4 281:6 | | | **hurt**(2) | 223:2 | **included**(10) | 122:24 122:24 161:13 185:9 210:17 210:19 233:5 269:19 272:14 273:10 |
| | | | | **hybrid**(1) | 166:22 | | |
| **heavily**(2) | 149:21 200:15 | **history**(2) | 265:2 276:17 | **hyphenated**(1) | 63:19 | **including**(13) | 52:7 60:14 60:18 76:6 94:5 123:14 127:25 156:13 156:14 175:3 209:21 235:15 276:8 |
| **heck**(1) | 124:14 | **hit**(7) | 113:16 135:19 136:11 144:7 144:9 160:14 250:15 | **hypothesized**(1) | 219:4 | | |
| **heilbut**(1) | 8:46 | | | **hypothetica**(6) | 40:9 40:15 40:18 205:5 213:10 276:6 | | |
| **held**(4) | 12:20 13:25 91:10 126:7 | **hitting**(3) | 141:24 144:1 169:14 | | | **income**(1) | 125:1 |
| **help**(5) | 40:9 54:3 103:21 222:8 248:1 | **hold**(3) | 12:24 28:15 126:1 | **hypothetical's**(1) | 40:21 | **inconsistency**(1) | 189:4 |
| **helpful**(7) | 71:1 85:15 116:25 222:24 279:24 279:24 281:2 | **holder**(4) | 62:14 131:21 176:19 216:16 | **i'd**(9) | 69:17 78:16 86:10 87:10 246:11 252:21 254:11 282:14 282:21 | **incorporating**(1) | 34:12 |
| | | **holders**(7) | 173:25 207:24 209:13 212:23 216:21 261:6 267:21 | | | **increase**(3) | 39:25 40:6 41:16 |
| **helping**(1) | 197:7 | | | **i'll**(22) | 23:21 28:5 28:11 30:19 41:10 55:13 66:13 68:22 71:6 84:12 156:19 174:11 185:6 185:8 235:3 254:9 254:16 260:11 271:18 280:22 281:4 283:11 | **increased**(2) | 40:6 76:20 |
| **her**(9) | 13:22 24:10 24:10 25:20 36:9 51:14 59:4 75:3 78:18 | **holy**(1) | 12:15 | | | **increases**(1) | 40:1 |
| | | **home**(8) | 70:21 151:18 171:4 172:12 173:20 176:11 224:2 281:3 | | | **increment**(1) | 76:8 |
| **hercules**(1) | 2:34 | | | **i'm**(99) | 12:18 13:12 28:6 28:10 33:8 37:14 37:14 40:20 41:1 43:9 48:22 53:17 55:1 55:7 55:8 56:3 56:3 57:3 62:6 64:15 67:3 68:3 70:9 74:16 75:13 80:18 84:25 85:1 156:20 156:20 159:1 159:2 164:22 166:16 171:17 174:13 175:2 175:19 176:22 177:2 178:22 180:1 180:20 181:10 184:18 186:16 186:1 188:10 192:19 194:22 196:14 199:15 201:4 202:24 202:24 205:1 206:19 209:23 209:24 210:25 210:25 211:11 214:12 214:12 215:18 215:25 217:3 220:22 221:7 230:15 230:16 232:1 232:22 234:3 236:12 236:22 243:5 247:15 248:6 248:10 248:12 249:12 250:25 251:1 252:13 254:1 260:10 261:18 261:19 264:12 266:11 272:23 278:14 279:18 282:17 | **incurred**(1) | 121:25 |
| **here**(65) | 15:19 43:14 55:8 59:14 62:19 63:8 63:15 75:2 87:9 97:20 97:20 97:21 97:22 98:7 98:19 102:1 105:13 105:25 106:20 110:20 115:3 114:7 115:13 115:17 115:22 117:15 119:13 123:7 130:3 132:8 132:12 133:8 134:10 135:8 137:21 140:8 140:12 144:23 146:2 149:19 154:15 157:9 168:16 173:19 189:9 192:23 196:7 196:22 202:15 204:6 244:15 252:7 257:2 260:25 260:20 263:11 263:15 263:15 263:21 267:10 268:1 271:9 279:18 281:4 283:15 | **homeland**(1) | 92:20 | | | **indeed**(4) | 120:15 200:19 228:15 272:23 |
| | | **homerun**(12) | 113:12 113:13 113:16 135:18 136:11 138:16 141:24 144:1 144:7 144:9 151:14 151:16 | | | **independent**(12) | 53:18 139:2 139:6 141:20 162:24 163:6 163:10 163:14 163:16 201:10 228:5 238:12 |
| | | | | | | **independently**(1) | 141:19 |
| **here's**(6) | 74:18 176:14 176:15 192:24 198:20 198:20 | **honor**(86) | 11:4 11:5 11:8 11:11 24:6 24:9 25:10 25:25 26:2 28:5 28:16 29:12 29:12 30:3 30:7 30:19 36:1 40:13 41:1 41:11 43:4 43:18 53:21 54:6 59:2 66:23 74:8 78:16 78:18 80:4 81:15 83:2 83:8 83:15 83:19 85:10 88:4 89:5 89:23 90:5 90:7 100:17 100:24 101:4 103:13 103:17 103:2 145:4 158:9 174:2 174:9 174:13 178:16 183:15 198:18 203:15 217:2 219:20 220:22 221:7 221:9 222:14 222:17 223:6 223:11 253:13 256:3 257:11 257:20 258:2 258:10 258:13 258:25 259:7 261:25 262:4 262:7 270:8 271:12 273:4 279:11 279:15 279:18 280:5 280:7 283:19 | **index**(1) | 285:1 |
| | | | | | | **indicate**(2) | 26:6 264:12 |
| **here's**(3) | 136:22 140:22 148:12 | | | | | **indicated**(4) | 24:10 68:23 85:25 181:24 |
| **hey**(3) | 124:19 165:25 247:22 | | | | | **indicating**(2) | 264:12 279:7 |
| **he'd**(1) | 153:5 | | | | | **indicative**(1) | 279:1 |
| **he's**(8) | 107:9 117:24 131:8 131:19 137:4 138:5 138:12 152:15 | | | | | **individual**(1) | 181:16 |
| | | **honorable**(1) | 1:18 | **i'd**(9) | | **individually**(1) | 19:23 |
| **high**(41) | 12:5 21:8 21:10 24:3 24:19 101:8 101:25 103:5 122:6 124:16 125:5 135:11 138:14 146:4 148:7 149:15 151:25 152:16 155:5 157:10 160:20 162:12 162:17 163:1 162:2 165:9 165:14 166:1 166:1 166:15 169:16 169:18 171:1 171:24 199:8 207:2 213:5 214:2 231:22 232:3 268:14 | **hope**(5) | 55:11 70:20 178:22 223:8 247:22 | | | **infer**(1) | 143:10 |
| | | **hoped**(1) | 86:16 | **i've**(20) | 12:21 12:22 28:7 36:17 36:18 38:20 42:4 44:6 48:13 84:24 166:7 173:5 176:25 192:24 193:23 205:23 222:20 245:1 249:17 283:7 | **inference**(3) | 96:13 96:15 96:22 |
| | | **host**(2) | 93:9 99:17 | | | **inform**(1) | 85:15 |
| | | **hot**(2) | 87:11 87:13 | | | **informal**(24) | 121:9 121:16 122:2 122:10 123:25 135:17 141:8 141:22 160:1 160:6 182:20 223:23 224:11 224:21 225:2 225:5 225:15 226:21 248:9 248:19 248:24 250:17 250:20 250:21 |
| **high-settle**(1) | 146:3 | **houlihan**(1) | 196:20 | **idea**(3) | 87:11 87:13 156:15 | | |
| **high-settlemen**(9) | 117:6 124:18 135:2 135:13 136:14 140:10 140:17 147:1 243:15 | **hour**(5) | 87:17 89:25 193:13 282:7 282:20 | **identification**(1) | 259:9 | | |
| | | **hours**(4) | 193:10 197:13 282:7 282:10 | **identified**(8) | 31:13 33:16 76:23 123:20 145:17 155:3 227:11 260:9 | **informal-step**(3) | 255:3 255:18 260:20 |
| **higher**(18) | 13:7 100:7 125:7 135:8 141:8 152:9 153:7 155:19 155:20 155:20 160:22 207:14 212:17 212:25 236:24 237:2 248:2 276:6 | **housekeeping**(1) | 90:7 | | | **information**(2) | 198:2 200:1 |
| | | **howe**(10) | 12:12 12:14 12:20 16:7 23:17 23:22 36:24 38:7 38:7 40:10 41:24 42:25 72:17 73:17 80:3 80:12 80:14 82:19 89:1 91:10 94:2 94:3 95:1 95:21 96:15 96:17 96:21 97:5 100:12 104:9 106:3 106:23 107:17 108:19 111:14 112:20 116:6 117:1 122:8 124:3 126:4 128:16 129:7 132:17 136:6 138:3 138:9 139:7 139:19 139:24 140:25 141:25 142:16 147:23 148:3 150:1 150:22 151:22 151:24 153:15 155:12 156:1 156:8 156:9 161:4 161:5 168:21 170:21 172:10 172:24 173:1 173:18 173:1 175:17 185:4 185:19 191:24 196:7 200:1 200:2 211:18 215:4 215:9 217:19 219:11 219:12 219:12 220:11 227:5 227:7 228:8 228:7 230:11 233:14 234:15 239:4 239:15 239:20 241:12 241:16 245:8 260:2 265:6 267:22 267:24 275:2 279:12 280:14 | **identify**(4) | 20:21 20:25 62:20 76:13 | **informed**(2) | 100:8 102:7 |
| | | | | **illinois**(2) | 3:45 191:18 | **initial**(2) | 98:4 252:14 |
| | | | | **illustration**(1) | 269:14 | **injected**(1) | 229:9 |
| **highest**(1) | 115:11 | | | **illustrative**(4) | 115:1 147:19 147:20 269:13 | **injunction**(2) | 270:25 277:14 |
| **highlight**(1) | 95:22 222:14 | | | **imagine**(3) | 119:9 120:12 173:3 | **input**(3) | 119:20 193:22 193:23 |
| **highlighted**(1) | 89:13 | | | **imagined**(1) | 116:12 | **inquire**(1) | 29:13 |
| **highly**(8) | 127:23 128:6 131:7 136:25 139:22 139:23 139:24 225:21 | | | **imagining**(4) | 117:6 127:17 133:1 276:3 | **inquiry**(1) | 227:3 |
| | | | | **immediately**(3) | 62:15 189:22 189:24 | **insider**(2) | 128:13 149:17 |
| **him**(39) | 23:8 53:10 54:16 67:16 68:11 68:19 68:24 71:2 71:3 72:3 72:6 72:9 72:14 72:21 73:2 73:8 73:11 85:24 86:10 86:22 86:24 88:6 88:19 89:7 89:10 197:7 199:15 199:16 200:19 200:22 201:1 241:2 244:3 278:10 279:24 282:18 282:24 283:12 | | | **impact**(5) | 23:23 24:16 65:8 216:20 250:18 | **insiders**(2) | 149:10 151:20 |
| | | | | **impeachment**(1) | 59:6 | **insolvency**(46) | 14:10 107:16 107:18 108:5 109:16 110:1 124:1 124:15 125:7 132:2 133:15 137:17 137:18 137:20 137:24 138:7 138:24 139:7 139:13 139:13 142:15 142:17 143:22 162:19 164:4 202:12 228:12 228:25 231:14 231:17 238:6 239:3 239:5 239:10 240:1 244:20 249:21 249:22 249:24 250:6 250:7 250:9 250:18 250:22 250:24 279:1 |
| **himself**(1) | 49:5 | | | **implications**(3) | 163:15 256:19 260:18 | | |
| **hinder**(2) | 109:4 127:21 | | | **imply**(1) | 102:24 | | |
| **hindsight**(1) | 142:21 | | | **important**(20) | 87:19 95:15 109:20 110:18 117:23 125:10 125:22 126:11 138:17 139:1 162:5 164:10 165:22 187:7 197:3 200:8 222:5 222:6 234:8 239:7 | | |
| | | **howard**(2) | 3:15 5:34 | | | | |
| | | **however**(3) | 84:3 237:2 278:25 | | | | |
| | | **huge**(1) | 164:7 | **importantly**(1) | 103:3 | **insolvent**(42) | 108:7 108:9 108:12 108:16 108:17 108:20 108:23 108:25 108:25 109:23 109:25 110:2 117:8 121:3 123:1 123:3 131:15 134:6 135:21 142:2 142:6 142:8 142:12 142:13 150:9 150:10 161:10 161:17 161:18 167:15 168:6 227:22 243:17 245:4 247:12 249:20 249:25 249:25 250:3 250:3 250:4 250:8 |
| | | **hundred**(2) | 18:14 211:6 | **impossible**(3) | 88:18 124:23 134:7 | | |
| | | **hundred-and-fifty-dolla**(1) | 212:3 | **impression**(1) | 25:2 | | |
| | | **hurdle**(2) | 215:12 215:13 | **inaccurate**(1) | 67:11 | | |
| | | | | **inadequacy**(1) | 232:16 | **instance**(6) | 31:10 33:12 39:1 202:1 233:3 263:22 |
| | | | | **inappropriate**(2) | 29:21 36:6 | | |
| | | | | **inc**(3) | 6:12 9:43 9:43 | **instances**(1) | 234:20 |
| | | | | | | **instead**(9) | 92:2 115:18 117:16 135:22 147:11 161:1 166:18 168:13 172:18 172:22 249:12 265:8 |
| | | | | | | **institute**(1) | 91:9 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **institutions**(3) 52:23 53:2 151:9 | | **investigation**(9) 16:5 16:10 16:20 17:18 18:11 18:18 23:6 23:10 23:11 | | **its**(27) 22:10 26:24 57:19 59:20 79:7 79:9 102:14 111:25 119:15 123:11 123:13 124:2 124:5 124:5 124:6 126:9 167:13 181:5 198:7 202:22 207:5 236:20 272:21 272:24 275:14 276:18 278:20 | | **journal**(4) 94:17 94:20 94:21 94:21 | |
| **instructed**(2) 46:15 46:20 | | | | | | **journals**(3) 94:12 94:14 94:18 | |
| **instruction**(1) 280:8 | | **investment**(3) 47:23 65:7 125:22 | | | | **joy**(1) 98:7 | |
| **instrument**(3) 166:23 167:2 | | **investments**(2) 125:22 125:23 | | | | **jpm**(7) 39:12 47:20 56:9 71:7 74:13 87:21 196:3 | |
| **insurance**(3) 148:24 149:16 270:6 | | **investor**(1) 201:25 | | | | | |
| **insured**(1) 9:47 | | **investors**(7) 8:29 47:11 142:19 143:11 143:15 143:23 278:23 | | **itself**(11) 16:9 16:12 64:21 88:8 158:22 200:16 235:17 237:19 241:16 260:11 277:12 | | **jpmorgan**(1) 9:4 | |
| **insurer**(1) 148:17 | | | | | | **judge**(14) 1:19 28:3 92:9 135:21 144:3 150:8 162:12 162:13 181:18 187:25 209:22 232:3 239:4 245:4 | |
| **insurers**(2) 148:16 149:2 | | **involve**(3) 56:6 179:15 180:17 | | **it's**(31) 93:1 93:11 99:12 100:14 100:15 103:18 104:9 105:7 106:18 108:5 110:7 110:19 112:11 113:21 113:21 113:22 113:22 114:12 115:19 115:20 120:4 120:2 122:7 124:1 124:1 124:22 124:23 126:3 128:15 128:20 130:20 130:21 130:21 131:1 131:6 131:7 134:6 134:7 134:11 135:12 135:22 135:25 137:5 137:13 137:23 138:1 138:23 139:3 139:5 139:6 139:22 140:22 140:23 142:1 142:12 142:12 142:15 142:1 142:18 145:12 146:6 146:7 146:13 146:13 146:14 146:25 147:5 149:20 150:21 151:6 151:25 | | | |
| **insurmountable**(1) 89:9 | | **involved**(36) 14:15 14:16 17:3 17:19 41:15 42:1 45:1 45:19 45:23 46:1 46:2 46:3 46:5 47:21 48:9 50:10 52:12 52:14 52:17 52:23 56:15 56:16 56:23 57:2 57:5 57:8 57:18 58:14 62:11 86:12 87:21 97:16 179:19 200:15 206:2 271:3 | | | | **judged**(1) 250:5 | |
| **integrate**(3) 124:3 130:14 150:22 | | | | | | **judgment**(42) 100:8 102:23 108:19 120:23 126:10 128:1 128:22 148:23 149:2 163:3 165:23 165:25 166:2 167:5 196:12 196:23 199:9 205:21 206:2 206:15 208:24 212:11 228:8 228:17 228:18 228:22 229:8 229:11 230:11 230:11 232:2 241:12 241:14 241:17 241:22 242:21 243:6 245:3 250:1 255:4 256:10 274:10 | |
| **integrated**(2) 117:10 120:24 | | | | | | | |
| **integrating**(2) 122:4 122:5 | | | | | | | |
| **integration**(91) 119:6 119:19 119:19 119:24 120:2 120:9 120:11 120:24 121:9 121:13 121:15 121:16 121:16 121:18 122:11 123:8 123:20 123:24 123:25 125:9 126:14 128:25 130:15 130:16 130:19 133:12 133:13 133:14 133:16 135:16 135:17 136:10 137:8 137:13 137:18 137:23 138:15 140:3 140:24 141:7 141:8 141:10 141:22 141:23 143:14 153:19 154:4 160:1 160:2 160:2 160:6 160:7 160:7 168:10 182:20 182:20 182:23 182:24 182:15 223:22 223:23 223:24 224:1 224:3 224:21 225:3 225:6 225:12 225:15 225:15 226:15 226:20 227:5 228:21 228:24 229:3 233:9 248:9 248:20 248:24 250:21 250:21 250:3 255:5 255:18 260:18 260:19 260:20 260:21 | | **involvement**(5) 23:6 47:4 56:4 56:16 78:9 | | | | | |
| | | **involves**(3) 97:1 97:3 179:12 | | | | | |
| | | **isn't**(31) 36:4 45:1 46:21 47:14 50:22 52:9 52:25 53:20 55:16 55:19 57:18 58:1 58:7 58:15 59:15 60:16 62:1 63:10 64:19 65:17 77:5 80:5 179:7 187:7 214:6 239:12 241:13 248:1 267:22 267:24 279:25 | | **i'd**(6) 98:9 100:18 103:14 103:17 145:9 152:13 | | **judgments**(6) 95:22 239:13 239:21 241:16 252:25 264:20 | |
| | | | | | | **july**(5) 23:15 50:7 50:12 72:25 73:20 | |
| | | **isn't**(3) 92:7 110:5 136:8 | | **i'll**(9) 90:2 95:1 108:18 113:18 114:14 115:25 135:11 145:10 148:16 | | **jump**(2) 113:9 147:9 | |
| **intended**(2) 199:19 226:9 | | **isolation**(1) 181:13 | | | | **jumped**(2) 129:13 140:4 | |
| **intending**(2) 128:5 128:6 | | **issuance**(1) 26:16 | | | | **jumps**(1) 147:6 | |
| **intent**(12) 109:4 109:8 109:19 127:9 127:12 127:20 129:2 151:3 214:25 230:3 240:1 240:11 | | **issue**(55) 43:11 53:7 53:19 85:15 85:19 87:20 90:2 122:4 124:2 124:8 126:5 126:23 156:8 185:9 185:15 186:15 196:8 202:14 202:15 203:2 218:12 223:16 224:1 227:17 233:2 233:15 235:10 236:3 236:3 236:21 237:4 239:24 241:10 241:12 241:2 242:20 243:3 245:16 251:13 251:13 261:1 261:5 263:2 263:10 263:15 263:23 263:24 264:10 264:23 264:24 265:16 265:12 265:13 265:15 265:16 282:1 | | **i'm**(50) 91:8 93:5 93:23 94:5 94:18 95:5 96:3 96:3 96:4 96:4 96:5 96:6 97:4 99:4 99:23 100:4 106:25 116:12 116:20 117:6 117:7 124:21 127:17 131:1 133:2 133:5 133:15 133:21 134:19 134:21 135:5 135:9 135:17 135:18 135:20 136:2 137:2 137:6 138:10 139:18 141:6 144:2 148:4 151:18 151:19 151:21 152:14 153:10 154:8 154:1 | | **juncture**(1) 282:22 | |
| | | | | | | **june**(6) 100:6 120:20 126:6 136:11 140:4 143:22 | |
| **intention**(1) 240:16 | | | | | | | |
| **intentional**(16) 78:2 78:5 214:18 214:21 215:7 215:10 215:14 237:10 239:24 241:1 241:6 241:22 242:15 242:16 250:14 268:13 | | | | | | **just**(157) 14:16 16:15 24:6 24:9 24:10 24:14 25:5 26:12 28:11 29:2 29:10 29:24 30:3 31:17 33:21 34:1 37:17 39:5 40:9 43:11 45:9 50:13 52:14 54:6 61:2 62:14 62:20 65:14 67:12 69:23 72:5 73:24 79:11 81:1 81:3 82:14 83:19 85:13 87:24 89:10 95:13 97:13 97:21 99:1 99:11 99:15 100:24 101:6 101:11 101:20 101:25 102:1 103:17 103:24 104:2 106:21 107:12 112:9 112:15 113:17 116:5 118:10 118:23 119:18 120:16 122:13 124:1 127:15 129:13 130:2 132:24 134:15 135:2 136:16 136:19 137:25 138:1 145:8 145:18 147:23 154:8 155:11 156:4 157:10 157:17 157:22 159:17 160:19 160:20 162:23 164:16 168:24 169:6 170:21 173:2 174:2 174:5 175:18 177:6 177:8 178:7 178:9 183:7 183:19 183:24 184:6 184:7 184:8 184:22 188:10 189:4 191:12 192:2 192:4 193:19 198:17 206:18 206:20 207:8 212:1 213:14 216:11 219:2 219:6 221:7 227:11 227:24 230:15 234:22 236:20 237:3 243:1 244:5 248:2 252:18 254:7 255:7 258:24 259:1 259:11 259:24 260:7 261:15 261:18 264:3 266:16 271:14 273:23 275:17 276:20 278:21 280:25 281:11 281:14 281:25 283:6 283:9 | |
| **intentionally**(2) 140:15 140:16 | | | | | | | |
| **intently**(1) 144:17 | | | | | | | |
| **intercompanie**(1) 208:16 | | | | **i've**(25) 90:1 92:18 93:25 94:16 94:19 98:2 98:13 98:22 99:25 109:10 113:7 117:11 117:19 118:19 133:16 135:14 135:15 135:19 135:20 139:9 141:19 144:6 146:21 148:10 149:25 | | | |
| **intercompany**(1) 208:18 | | | | | | | |
| **interest**(35) 16:2 16:8 74:11 74:18 113:11 161:11 161:15 162:13 162:18 163:4 163:8 164:3 164:20 165:7 165:10 165:15 165:22 166:23 169:19 182:8 192:14 205:24 205:7 206:2 206:4 211:24 212:8 212:12 212:13 212:16 212:25 213:4 213:10 213:12 219:1 | | **issued**(8) 23:16 73:24 73:25 73:25 246:17 246:25 272:4 272:10 | | | | | |
| | | | | | | | |
| | | **issues**(45) 29:19 74:23 94:9 97:2 97:2 97:4 97:14 97:16 98:9 98:11 98:23 99:18 106:2 117:21 117:23 121:17 123:21 127:23 128:8 131:23 179:17 179:18 182:1 182:19 183:7 184:12 184:13 226:25 227:25 229:4 229:5 229:13 230:20 231:11 232:8 232:10 233:5 235:1 235:7 238:13 241:25 242:7 243:4 252:4 263:2 | | **jam**(1) 282:3 | | | |
| | | | | | | | |
| | | | | **james**(7) 1:24 1:25 1:27 3:35 4:14 5:39 9:34 | | | |
| **interested**(4) 10:42 63:10 69:15 72:3 | | | | | | | |
| **interior**(2) 248:5 248:11 | | | | **jamie**(2) 70:23 71:3 | | | |
| **intermediary**(1) 61:1 | | | | **jane**(1) 2:42 | | | |
| **internal**(3) 16:25 47:13 251:25 | | **it'd**(1) 277:8 | | **january**(2) 18:23 246:7 | | | |
| **internally**(1) 256:21 | | **it's**(130) 11:17 15:12 17:17 18:2 19:9 19:22 21:3 27:15 28:21 29:5 29:20 29:24 31:13 34:7 35:1 35:11 35:12 36:19 37:2 37:20 39:17 39:21 40:4 40:15 40:21 41:25 42:19 42:21 44:13 44:25 48:14 52:6 52:10 54:25 55:7 55:11 59:22 62:12 62:13 65:1 65:24 69:7 69:20 80:25 81:16 82:18 84:9 84:21 88:10 156:19 157:24 158:13 158:14 158:15 160:23 161:2 161:3 161:3 163:15 163:18 164:6 164:9 164:11 164:11 165:20 165:20 165:21 170:24 171:21 172:11 172:12 173:8 173:13 173:19 174:8 175:18 176:3 176:8 176:17 177:17 193:17 193:18 194:23 195:17 195:19 196:12 197:16 198:17 211:19 213:22 217:4 220:3 221:15 223:9 223:9 224:10 224:13 224:16 225:23 243:17 244:1 250:21 253:16 257:6 257:13 257:17 260:10 261:18 261:18 261:25 262:21 265:15 265:15 266:15 274:3 275:7 279:16 280:1 280:3 281:5 282:10 283:4 283:8 | | **jarashow**(1) 8:22 | | | |
| **internet**(4) 93:5 125:23 126:2 126:3 | | | | **jarrett**(1) 284:12 | | **justifies**(1) 109:9 | |
| **interpretation**(6) 51:8 218:4 238:8 240:23 242:5 264:14 | | | | **jason**(2) 5:19 5:20 | | **justify**(1) 206:20 | |
| | | | | **jean-marie**(1) 6:5 | | **justin**(1) 6:47 | |
| | | | | **jeff**(7) 46:10 50:2 50:3 50:6 50:17 51:3 55:14 | | **kalenchits**(2) 8:49 8:49 | |
| **interpreted**(1) 80:12 236:4 | | | | | | **kaminetzky**(3) 2:6 87:24 87:24 | |
| **interpreting**(3) 163:3 179:20 182:13 | | | | | | **kansa**(1) 7:13 | |
| **interview**(3) 189:12 195:7 195:8 | | | | **jefferies**(2) 6:46 6:46 | | **kapatia**(1) 196:4 | |
| **interviewed**(2) 23:9 189:9 | | | | **jeffrey**(1) 10:10 | | **kaplan**(2) 8:20 195:9 | |
| **interviews**(2) 194:25 196:22 | | | | **jenner**(1) 5:4 | | **karinskis**(1) 13:21 | |
| **into**(52) 14:7 14:8 32:5 40:25 42:10 43:23 47:12 55:13 57:20 77:25 78:3 78:6 78:11 95:4 99:20 99:21 102:19 103:14 105:12 112:2 112:21 117:22 129:25 130:11 141:1 144:10 147:15 155:12 155:16 157:8 157:16 160:19 167:8 167:22 167:23 169:1 171:14 176:22 177:10 180:9 208:22 213:23 223:8 226:4 229:9 232:7 245:5 262:17 264:8 264:24 279:3 282:3 | | | | **jennifer**(1) 9:48 | | **kasowitz**(1) 10:14 | |
| | | | | **jersey**(1) 12:11 | | **katharine**(1) 4:22 | |
| | | | | **jessica**(1) 5:28 | | **katherine**(1) 7:30 | |
| | | | | **jillian**(1) 7:17 | | **katten**(1) 10:38 | |
| | | | | **jim**(1) 89:23 | | **kay**(2) 2:40 10:20 | |
| | | | | **jimmy**(7) 69:10 69:11 69:14 69:15 69:21 70:20 72:5 | | **kaye**(1) 10:6 | |
| | | | | **job**(4) 66:5 67:17 187:13 251:24 | | **keep**(5) 23:25 101:20 220:9 231:1 254:12 | |
| | | | | **joe**(1) 10:51 | | **keeping**(2) 100:24 192:2 | |
| | | **item**(1) 31:13 | | **john**(2) 8:17 10:39 | | **kellogg**(1) 91:7 | |
| **introduce**(1) 90:2 | | **iterations**(1) 57:3 | | **johnston**(1) 4:14 | | **ken**(2) 7:13 23:4 | |
| **inundated**(1) 102:8 | | | | **joining**(1) 12:8 | | **kenneth**(1) 9:19 | |
| **investigate**(1) 17:25 | | | | **joint**(2) 91:16 93:19 | | | |
| | | | | **jonathan**(1) 10:21 | | | |
| | | | | **jones**(1) 3:42 | | | |
| | | | | **jordan**(1) 10:52 | | | |
| | | | | **joseph**(1) 92:14 | | | |
| | | | | **joshua**(2) 4:15 9:40 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**kenney(2)** 195:8 195:9

**kevin(3)** 1:18 1:26 62:23

**key(15)** 63:15 110:20 113:13 113:13 119:13 119:20 123:16 123:21 123:24 124: 124:6 127:2 129:7 137:21 167:24

**kick(1)** 213:13

**kim(1)** 9:5

**kind(11)** 51:21 60:9 102:1 128:12 152:14 157:10 223:14 223:23 231:4 233:24 238:2

**kinds(2)** 120:2 159:6

**king(6)** 2:15 3:6 4:24 4:30 12:6 12:7

**kira(1)** 7:40

**kirby(1)** 3:19

**kizzy(1)** 8:22

**klauder(1)** 4:29

**klee(3)** 23:4 23:7 201:16

**klee's(1)** 24:1

**knew(9)** 16:4 79:20 117:8 128:7 192:8 197:25 236:21 272:21 275:20

**knock(6)** 110:22 161:23 162:10 176:16 177:8 224:5

**knocked(3)** 161:9 172:1 175:20

**knocking(2)** 162:4 176:9

**know(134)** 11:15 11:17 15:7 18:25 23:3 24:4 25:18 29:13 29:24 30:18 31:14 32:6 39:19 41:14 44:17 46:4 47:10 50:11 50:1 50:16 51:18 51:20 53:15 54:15 56:9 57:10 58:9 58:10 58:22 59:19 59:25 60:3 67:5 69:2 69:15 69:23 70:1 70:16 71:5 72:1 72:18 72:19 74:3 74:19 75:3 75:19 78:14 80:5 80:25 82:1 84:25 85:18 86:21 86:24 87:10 87:12 89:10 91:17 94:16 94:24 96:15 97:17 97:18 104:9 106:7 109:3 115:20 116:14 121:4 122:8 122:18 124:22 126:9 128:2 133:3 135:5 138:4 138:4 138:7 142:22 143:8 148:2 150:2 150:9 152:14 152:15 158:10 162:7 163:6 166:7 176:24 176:24 181:4 181:21 184:15 185:6 186:6 187:1 187:11 187:15 188:17 188:22 190:15 190:17 191:20 191:21 192:22 195:1 195:11 197:12 198:20 199:1 199:7 221:14 228:12 231:25 234:8 240:8 241:17 250:24 254:11 257:24 261:17 262:10 265:1 266:18 268:6 275:5 277:19 279:12 279:14 279:16 281:6 281:8

**knowing(2)** 148:23 148:24

**knowledge(5)** 29:4 42:6 54:4 73:16 190:1

**known(4)** 125:19 263:25 271:4 272:2

**known''(1)** 264:14

**knows(1)** 72:5

**koalchuck(1)** 196:4

**kookmin(1)** 92:25

**korea(1)** 93:1

**korpus(1)** 10:15

**kowalczyk(10)** 46:16 46:18 46:21 48:20 48:25 49:25 50:14 52:17 55:2 55:9

**kowalczyk's(1)** 49:21

**kramer(2)** 10:4 10:4

**kulnis(129)** 11:9 11:18 11:21 11:23 12:2 12:8 12:16 13:2 13:9 13:18 13:24 14:10 14:14 14:22 15:10 15:14 15:23 16:1 16:7 16:13 17:3 17:19 17:24 18:6 18:20 19:1 19:7 19:19 20:2 20:8 20:16 20:20 21:5 21:11 21:17 21:24 22:24 23:5 23:14 23:19 23:22 24:14 24:21 26:15 26:19 27:1 27:20 28:11 28:16 28:19 29:2 29:9 30:11 30:13 30:15 30:17 30:24 31:2 31:9 31:12 31:16 31:19 32:2 32:11 32:18 33:3 33:6 33:11 33:14 33:21 33:25 34:10 34:17 35:9 35:1 35:16 36:13 36:17 36:23 38:3 38:7 38:20 39:5 39:9 39:14 39:19 39:22 41:19 41:24 42:6 42:12 42:17 42:23 43:7 43:8 43:10 43:21 45:15 45:18 54:1 54:10 54:12 54:1 54:25 56:3 73:23 74:6 74:21 75:1 77:13 77:15 77:19 78:7 78:22 79:2 79:16 79:19 80:2 80:8 80:10 80:18 81:3 81:6 81:10 81:22 82:24 83:23 85:11 285:7

**kurtz(1)** 62:23

**l.a(1)** 282:24

**labeled(1)** 107:13

**lack(10)** 137:20 138:13 228:12 228:25 232:20 233:13 238:7 239:6 243:18 244:21

**lady(1)** 12:4

**laid(1)** 78:17

**lance(1)** 9:15

**landis(3)** 3:25 3:26 5:44

**language(1)** 226:4

**lantry(1)** 1:26 62:23

**large(12)** 64:24 65:6 160:15 162:9 164:9 167:20 174:23 196:14 253:9 253:16 262:1 262:2

**larger(9)** 35:23 37:10 37:11 61:22 64:25 65:7 161:22 165:7 218:16

**largest(1)** 93:1

**larson(4)** 195:8 199:14 199:25 200:10

**late(34)** 55:23 73:17 86:20 90:23 91:19 94:16 96:11 97:13 100:9 100:15 100:16 100:16 100:24 103:18 104:19 113:7 123:7 150:15 157:4 209:9 213:7 221:22 229:12 244:15 245:12 251:8 252:12 258:23 258:2 259:2 271:17 277:11 281:8 282:23

**date(7)** 86:5 87:3 88:11 143:17 148:24 195:20 279:12

**later(14)** 12:6 14:8 23:15 34:3 86:2 94:19 111:20 114:14 116:19 135:12 187:25 198:13 222:18 276:13

**latitude(1)** 88:12

**laughter(15)** 11:16 26:1 28:14 41:7 45:13 80:22 80:24 81:2 149:24 177:19 178:11 178:25 195:18 217:6 220:1

**laurie(1)** 2:32

**law(60)** 3:4 10:14 11:6 19:5 20:23 90:10 91:6 91:16 91:17 91:22 91:23 92:8 92:8 93:9 93:19 93:20 94:1 94:6 94:13 94:21 95:12 95:15 95:16 96:14 96:24 97:8 97:10 97:14 97:19 98:13 99:12 102:6 105:19 105:21 116:14 117:9 121:13 131:4 135:5 148:9 156:7 174:9 178:22 178:24 179:2 179:14 179:16 180:13 180:14 180:18 181:8 182:13 182:25 188:18 200:24 200:25 201:9 237:21 237:22 238:23

**lawyer(6)** 36:4 80:5 277:16 277:18 278:5 280:16

**lawyers(9)** 98:23 175:2 184:2 193:24 198:24 200:3 200:3 246:9 246:13

**law's(1)** 116:17

**lay(3)** 82:18 101:7 225:25

**layton(2)** 2:12 9:10

**lazard(4)** 111:19 186:18 189:16 193:22

**lazard's(2)** 161:1 161:2

**lbo(23)** 16:5 16:10 16:11 16:17 16:20 17:17 17:18 18:1 18:1 18:4 18:22 19:10 19:12 20:7 32:14 36:25 39:18 57:11 57:20 60:10 100:20 101:13 166:25

**lead(5)** 138:25 139:1 237:7 239:13 276:8

**leaders(1)** 71:4

**leadership(1)** 70:25

**leading(2)** 25:10 81:15

**leaning(2)** 117:18 117:19

**leap(1)** 41:10

**learn(4)** 97:9 98:14 100:4 105:19

**learning(1)** 99:11

**least(16)** 28:9 36:12 59:19 66:4 89:25 108:17 150:11 154:3 170:12 175:1 191:24 198:9 204:5 212:7 216:19 281:11

**leave(2)** 215:17 236:3

**leaving(3)** 22:8 65:5 218:23

**lebouel(1)** 4:12

**led(1)** 252:24

**lee(8)** 69:10 69:21 70:10 70:12 70:20 71:12 71:24 72:7

**left(10)** 65:13 90:14 131:16 131:17 132:20 137:11 139:11 139:11 154:18 263:23

**legal(21)** 16:25 74:23 80:14 84:10 84:10 92:1 97:16 98:8 98:10 99:18 100:25 102:25 103:2 106:1 174:4 183:12 183:20 184:5 186:8 187:12 193:24

**legend(1)** 184:8

**lemay(1)** 3:13

**lend(3)** 21:3 128:4 202:11

**lender(10)** 22:19 61:23 62:4 79:6 79:8 80:16 98:17 190:20 198:24 269:2

**lenders(42)** 4:4 6:16 10:33 16:6 18:4 19:11 19:15 20:5 21:2 21:6 21:25 22:9 22:11 22:14 22:17 24:1 24:4 24:11 24:15 27:25 28:24 28:25 34:4 35:2 37:16 38:17 60:18 60:20 60:22 64:23 65:3 65:6 65:16 65:20 76:6 79:10 79:14 83:25 168:7 168:9 208:4 209:10

**length(3)** 61:9 98:9 271:16

**lengthy(2)** 23:16 144:22

**leonard(1)** 1:33

**leslie(1)** 9:7

**less(13)** 27:5 41:18 136:5 142:11 142:13 152:1 167:4 192:19 239:7 241:11 241:22 242:21 243:2

**let(63)** 31:12 31:14 33:14 33:16 35:16 38:22 50:16 62:19 69:23 71:5 75:13 93:18 101:19 103:3 103:20 106:25 109:21 117:2 118:23 119:18 129:10 129:10 144:20 150:11 153:13 153:22 155:11 156:4 157:1 159:9 170:13 172:16 176:23 186:13 186:22 190:15 203:3 206:8 210:11 210:12 210:19 214:9 214:15 217:9 219:2 231:19 235:23 240:4 243:16 245:18 247:6 247:15 248:1 261:17 262:10 266:7 266:18 267:12 268:6 268:8 270:22 271:16 280:25

**let's(30)** 16:15 31:5 33:6 36:23 53:6 58:1 62:18 89:5 160:16 160:16 164:13 175:7 192:17 200:21 201:19 203:12 210:25 211:17 220:13 222:8 231:3 237:4 243:8 245:11 250:21 252:3 253:7 256:14 264:22 280:17

**letters(1)** 165:1

**letting(2)** 11:15 279:23

**let's(26)** 93:11 93:14 101:6 105:11 112:12 113:8 116:2 126:13 129:17 130:2 132:11 132:14 132:18 134:8 135:1 136:16 136:17 136:18 140:22 144:23 145:23 146:16 147:17 151:3 152:3 154:8

**level(43)** 3:7 27:10 99:14 99:15 101:8 101:25 102:22 102:22 109:11 109:12 109:24 109:25 110:2 110:9 110:12 110:14 111:15 125:8 130:7 131:12 133:5 133:7 135:7 141:2 141:4 157:10 159:19 160:2 160:4 160:9 160:20 172:2 174:22 174:22 175:8 175:8 175:12 176:20 185:13 207:24 210:1 233:19 272:14

**levels(1)** 106:11

**leverage(17)** 51:1 56:7 92:20 94:5 94:8 95:9 95:10 97:3 97:5 97:7 97:24 99:14 112:1 130:10 130:24 195:15 199:20

**leveraged(5)** 47:3 47:8 127:23 128:6

**levered(1)** 202:5

**levin(2)** 10:4 10:4

**levy(1)** 7:44

**lexington(1)** 2:8

**liability(3)** 97:18 149:22 270:6

**liable(2)** 148:18 148:19

**liang(1)** 9:19

**lie(1)** 103:4

**liebentritt(4)** 4:47 189:9 189:11 189:18

**liewant(1)** 10:51

**light(4)** 24:23 153:23 154:1 154:7

**like(38)** 22:12 49:3 50:12 55:8 61:19 68:3 69:5 69:17 86:10 87:15 87:18 97:17 98:7 103:14 128:20 133:2 139:3 139:6 142:18 165:1 174:2 176:25 178:22 187:21 209:18 217:2 220:8 223:1 228:2 229:18 236:12 240:2 254:15 257:14 262:13 274:22 282:21 283:15

**likelihood(27)** 103:2 114:4 124:15 125:17 126:11 127:3 132:1 137:16 137:19 140:8 143:10 143:22 151:16 153:11 160:5 170:25 174:10 196:12 202:12 227:22 227:23 231:6 231:14 232:11 244:23 245:3 256:12

**likely(42)** 16:4 24:19 128:11 138:10 139:8 148:8 148:21 151:25 154:6 165:19 167:14 170:21 170:22 172:24 173:18 174:10 188:22 196:7 205:18 208:13 210:18 210:20 211:13 214:21 214:25 215:10 239:3 239:13 240:25 241:14 241:15 242:5 242:19 250:4 250:5 265:16 265:25 266:25 269:9 270:3 275:8 275:18

**likes(1)** 122:6

**limited(2)** 122:21 197:9

**limits(3)** 148:16 149:3 150:1

**line(24)** 13:6 97:21 104:13 104:15 121:8 128:22 130:9 134:10 144:24 188:4 188:7 208:19 218:8 223:7 226:16 226:16 227:8 234:25 235:7 252:5 264:11 266:12 266:21 278:1

**lines(3)** 96:10 206:16 226:17

**lion's(1)** 115:6

**list(10)** 49:15 49:17 49:17 185:7 194:24 196:17 233:5 248:20 258:25 260:5

**listed(3)** 93:2 158:11 194:13 194:18 196:22

**listen(1)** 170:3

**listening(3)** 44:7 189:13 189:18

**listing(2)** 106:21 183:8

**literally(1)** 93:20

**litigated(1)** 148:3

| Word | Page:Line |
|---|---|
| litigation(62) | 20:16 25:6 25:9 26:11 26:13 32:2 32:5 34:21 34:22 34:23 34:25 35:22 35:24 35:25 36:3 36:5 36:10 36:15 36:20 37:11 43:11 43:13 44:12 60:21 65:13 76:23 77:4 77:16 77:20 77:21 77:25 78:3 78:12 95:20 101:18 101:23 114:11 114:18 115:2 115:4 115:12 115:16 115:22 116:8 116:9 145:8 146:22 147:3 147:16 148:1 148:15 150:19 151:23 204:20 207:5 207:1 219:16 269:3 269:10 269:10 271:4 278:13 |
| little(32) | 25:2 35:11 42:19 65:14 86:5 87:8 88:11 99:1 101:9 104:12 104:17 105:12 107:6 110:15 119:23 127:15 128:1 129:14 143:7 149:17 151:8 152:15 168:1 176:7 180:21 214:15 219:25 220:8 229:19 252:8 268:9 268:11 |
| litvack(1) | 8:40 |
| live(2) | 124:8 257:17 |
| llc(1) | 8:25 |
| llp(15) | 1:23 3:12 5:11 5:23 5:37 5:44 6:4 7:29 8:37 9:4 9:14 10:5 10:9 10:20 10:38 |
| loading(1) | 128:17 |
| loan(6) | 42:14 24:30 40:3 47:9 50:6 265:7 |
| loans(19) | 13:13 13:14 32:7 32:9 40:2 40:7 47:9 109:24 110:3 110:7 128:14 130:8 130:9 130:17 263:18 265:5 265:17 266:1 267:1 |
| lodged(1) | 84:9 |
| logged(1) | 197:12 |
| logic(3) | 120:24 141:5 224:7 |
| logical(1) | 108:15 |
| logically(1) | 163:9 |
| long(16) | 12:12 12:14 12:20 23:17 42:12 68:3 69:1 69:5 73:17 91:10 113:25 151:1 236:22 257:12 280:15 281:8 |
| long-term(2) | 272:1 272:3 |
| long-time(2) | 200:1 100:12 |
| longer(3) | 42:3 187:21 219:10 |
| longest(1) | 87:17 |
| look(92) | 45:12 53:7 76:7 86:9 86:23 86:25 89:7 104:18 113:8 114:1 119:8 120:22 120:23 120:25 122:3 122:14 123:1 123:4 124:4 128:20 128:20 135:10 136:6 136:12 136:18 138:20 142:1 143:5 147:25 150:23 154:2 154:5 156:1 180:1 181:12 181:14 183:11 183:23 194:5 194:2 194:24 197:8 203:13 217:14 220:22 221:18 223:14 224:6 224:12 224:17 224:2 225:9 226:11 229:22 231:19 232:11 234:22 234:22 239:4 240:4 240:6 242:16 248:19 252:3 252:5 253:7 253:8 253:12 254:10 254:11 256:14 257:9 257:10 257:12 260:2 260:3 260:10 260:24 261:12 261:22 263:4 266:16 267:9 268:22 271:7 271:16 273:3 276:17 277:6 277:21 |
| looked(9) | 38:24 39:3 75:25 122:2 150:14 186:17 187:9 187:15 210:16 |
| looking(25) | 53:16 54:2 54:24 71:7 142:11 143:13 143:16 143:18 175:19 195:12 205: 205:8 221:7 222:4 225:10 237:25 249:5 249:12 254:3 254:4 259:12 260:13 261:18 261:19 272:5 |
| looks(10) | 49:3 115:24 115:24 115:25 116:1 119:15 152:8 169:20 223:10 262:13 |
| los(1) | 4:18 |
| lose(1) | 148:21 |
| losquadro(1) | 9:23 |
| lot(42) | 19:2 22:17 24:1 24:4 35:14 36:3 37:4 42:3 51:21 72:5 72:6 72:19 77:22 78:13 86:4 93:13 93:22 93:25 96:2 96:16 108:5 114:1 115:8 115:24 132:9 133:24 142:18 143:3 151:5 152:2 155:14 171:14 172:2 172:3 176:4 177:18 208:17 227:25 229:4 230:24 252:16 268:12 |
| lots(9) | 18:13 107:16 117:24 133:22 141:11 156:11 156:11 156:21 156:21 |
| love(1) | 70:23 |
| low(27) | 21:15 103:4 116:11 124:12 124:23 125:4 127:14 128:23 128:24 133:22 135:25 140:10 140:20 140:22 146:3 146:2 155:4 160:21 166:10 166:18 166:23 170:25 207:2 211:5 231:21 243:15 268:13 |
| low-mid(3) | 117:16 135:10 269:1 |
| low-middle(1) | 152:15 |
| low-settle(1) | 146:2 |
| low-settlement(6) | 116:11 116:18 132:19 132:24 135:10 232:3 |
| lower(11) | 122:10 133:19 137:5 148:11 154:3 155:19 163:24 208:14 228:14 228:1 275:1 |
| lowest(1) | 131:7 |
| lucy(2) | 8:33 8:34 |
| ludwig(1) | 7:17 |
| lugano(1) | 1:39 |
| lunch(4) | 86:11 87:19 89:17 89:25 |
| lunchtime(1) | 282:5 |
| lynch(4) | 2:31 10:20 102:11 150:4 |
| lynn(1) | 3:43 |
| ma'am(6) | 45:19 48:17 51:9 60:16 69:18 69:22 |
| macquarie(2) | 9:51 9:51 |
| made(43) | 15:11 15:13 18:2 19:9 19:11 19:14 19:14 23:25 25:23 32:22 42:11 61:19 63:8 65:11 85:22 85:25 86:7 86:7 95:23 104:3 104:15 111:24 116:19 128:14 137:15 157:19 158:19 166:21 167:14 198: 205:9 205:14 205:21 206:6 208:24 216:22 243:16 251:25 252:11 255:3 269:24 273:1 281:1 |
| madison(1) | 12:1 |
| madlyn(1) | 2:41 |
| maggie(2) | 69:21 71:7 |
| magnitude(4) | 241:7 252:18 255:16 255:22 |
| main(16) | 89:4 104:6 105:25 106:1 106:3 106:21 107:2 125:13 131:12 131:25 162:9 163:1 164:10 206:16 210:24 260:22 |
| major(8) | 28:22 93:11 98:3 127:5 131:4 141:12 148:1 198:24 |
| majority(1) | 34:21 |
| make(38) | 41:3 41:10 65:12 85:12 86:2 87:22 88:9 88:13 89:7 89:12 90:16 102:23 103:24 128:2 128:18 130:2 132:11 138:21 143:24 154:9 157:18 159:22 162:2 164:7 168:21 173:17 193:2 195:16 210:25 218:6 239:13 245:7 247:1 251:20 255:22 256:15 269:20 279:17 |
| makes(3) | 44:17 265:14 272:25 |
| making(2) | 40:23 186:2 |
| mall(1) | 284:2 |
| manage(2) | 13:7 14:18 |
| managemeen(1) | 8:10 |
| managemen(21) | 6:28 8:4 8:10 8:33 8:45 8:45 9:14 9:18 9:18 9:22 9:22 9:39 9:39 9:47 10:25 10:25 13:4 14:20 66:5 91:7 93:4 |
| management-strategy(1) | 93:4 |
| manager(1) | 13:12 |
| manages(1) | 44:23 |
| managing(3) | 13:23 14:12 47:2 |
| mandava(1) | 189:16 |
| manges(1) | 8:37 |
| manufacturers(2) | 14:3 14:8 |
| many(17) | 14:3 61:9 61:12 61:15 72:17 96:13 117:21 141:3 151:4 179:18 196:8 203:4 230:25 231:1 247:17 254:13 263:1 |
| map(1) | 241:18 |
| mapped(1) | 233:24 |
| marc(3) | 3:18 5:24 5:30 |
| marcalle(1) | 111:17 |
| march(5) | 1:14 11:1 189:6 272:20 272:23 |
| marginal(1) | 161:24 |
| marie(1) | 195:9 |
| marino(1) | 4:41 |
| mark(1) | 9:11 |
| marked(5) | 33:15 183:12 259:9 278:22 285:15 |
| market(7) | 1:11 2:35 3:28 4:42 5:13 143:3 144:4 |
| marrero(1) | 5:28 |
| marsal(5) | 9:43 9:43 185:23 189:17 193:23 |
| marvin(1) | 3:43 |
| master's(1) | 12:7 |
| match(2) | 107:9 247:22 |
| material(1) | 29:19 |
| materials(2) | 194:10 194:19 |
| mathematical(5) | 204:23 226:17 228:8 228:10 229:7 |
| matter(45) | 14:12 14:15 14:19 41:20 46:10 80:14 80:14 90:8 99:3 109:23 114:2 118:4 122:11 123:2 145:18 148:13 151:1 153:21 154:7 156:24 160:9 163:2 164:5 164:6 168:5 168:11 175:13 177:4 204:9 204:14 204:15 204:22 213:15 215:16 216:5 217:1 237:21 237:22 237:22 238:23 239:2 239:22 270:10 270:21 284:8 |
| matters(9) | 114:3 160:10 161:16 161:18 161:20 169:8 173:1 216:4 219:9 |
| matthew(2) | 5:45 8:11 |
| matured(2) | 143:17 143:20 |
| may(40) | 11:12 12:15 29:25 30:6 30:11 36:16 43:19 51:16 53:25 54:8 54:13 73:22 85:12 85:15 85:15 87:10 88:16 88:16 89:9 90:10 109:14 170:9 177:24 178:15 178:17 201:24 209:2 229:19 238:17 258:9 261:4 271:2 271:21 276:10 280:18 280:18 280:23 282:2 282:25 283:20 |
| maybe(34) | 40:24 52:14 53:9 71:1 85:16 85:17 89:6 89:9 89:16 118:4 128:17 129:11 132:14 136:1 137:14 137:14 142:2 142:25 149:3 149:6 149:14 149:15 149:24 153:25 155:1 173:7 173:21 176:10 206:8 206:8 222:21 241:5 279:25 282:7 |
| mayer(2) | 4:22 6:4 |
| mccarter(1) | 4:21 |
| mccolm(1) | 7:48 |
| mccombs(1) | 91:18 |
| mccormack(1) | 3:14 |
| mccormick(2) | 10:37 102:10 |
| mccutchen(1) | 10:9 |
| mcdaniel(1) | 3:5 |
| mcguire(1) | 5:45 |
| mcneill(1) | 2:33 |
| mean(29) | 27:22 41:6 51:15 57:2 58:3 59:23 67:3 76:1 80:11 89:13 119:23 122:16 125:9 129:9 130:5 131:14 137:14 158:7 216:12 218:1 222:25 235:8 235:25 236:4 242:6 263:12 267:18 274:5 275:4 |
| meaning(3) | 227:10 263:25 264:13 |
| meaningful(1) | 177:11 |
| meaningfully(1) | 208:20 |
| means(11) | 39:16 80:9 122:17 123:11 136:25 137:1 137:10 137:25 161:18 266:2 267:3 |
| meant(4) | 51:19 193:25 236:8 275:5 |
| measure(2) | 196:14 224:11 |
| measuring(1) | 156:12 |
| mediation(26) | 28:7 28:20 28:21 29:9 29:14 30:14 31:3 31:7 34:2 34:13 58:9 58:11 58:13 58:13 58:15 58:18 60:3 60:3 60:4 61:8 61:25 62:8 62:10 62:12 62:13 62:15 |
| mediator(1) | 28:3 |
| meet(5) | 19:25 20:4 29:10 30:15 30:20 |
| meeting(9) | 15:18 18:24 19:23 20:3 30:10 72:23 189:13 198:23 246:10 |
| meisel(1) | 1:32 |
| member(9) | 16:20 16:21 66:4 68:8 68:12 68:12 70:3 70:4 72:4 |
| members(6) | 19:3 61:18 65:17 65:22 65:25 68:15 |
| memo(2) | 184:9 185:16 |
| memoranda(1) | 16:25 |
| memos(12) | 97:15 183:8 183:12 183:20 183:24 184:2 184:5 184:11 184:14 184:25 185:9 185:12 |
| mention(7) | 35:5 43:12 64:17 64:18 71:24 72:7 103:24 |
| mentioned(10) | 21:24 29:2 44:19 64:9 64:14 94:11 113:1 114:6 215:17 215:19 |
| merger(22) | 99:21 124:8 141:14 141:16 142:8 149:9 274:16 274:17 274:20 274:24 275:7 275:17 |
| mergers(3) | 14:4 92:12 201:16 |
| merits(3) | 16:17 57:19 57:23 |
| merrill(5) | 2:31 10:20 102:11 150:4 150:12 |
| mess(1) | 70:21 |
| message(1) | 115:22 |
| messed(1) | 104:9 |
| mester(1) | 4:15 |
| met(12) | 14:24 15:3 20:4 20:5 20:5 23:7 30:24 183:3 189:11 199:13 199:16 245:12 |
| methodology(5) | 95:22 105:12 217:9 255:23 256:9 |
| methods(1) | 96:22 |
| michael(1) | 6:7 |
| michaels(3) | 66:9 67:2 67:16 |
| michele(1) | 4:41 |
| michelle(1) | 6:22 |
| michigan(1) | 4:48 |
| microphone(3) | 180:21 194:16 262:17 |
| microphone's(1) | 90:17 |
| mid(1) | 268:14 |
| mid-high(4) | 117:19 135:11 152:16 268:25 |
| mid-teens(1) | 279:3 |
| midcases(1) | 231:22 |
| middle(9) | 137:3 138:11 144:21 160:12 161:1 234:12 235:22 253:15 268:19 |
| middle-road(1) | 113:21 |
| midpoint(4) | 215:6 267:17 268:24 268:25 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

might(58) 22:19 24:4 51:9 51:14 58:12 67:18 87:8 87:12 103:4 108:9 108:19 116:6 116:8 116:25 117:11 118:9 118:11 121:17 122:10 133:17 133:18 135:18 135:19 135:19 136:11 143:24 144:9 149:1 150:19 161:14 168:5 174:5 181:9 185:4 200:6 206:25 207:2 210:11 220:6 223:1 224:5 224:5 230:8 230:9 230:11 231:7 232:3 236:7 236:25 241:6 241:19 243:6 275:3 276:3 280:19 281:7 281:8 282:19

might've(1) 121:19

mike(1) 9:31

million(87) 19:15 19:16 20:10 21:7 27:7 31:22 34:8 34:20 34:22 34:24 35:8 37:17 37:21 37:25 39:9 39:21 41:18 75:24 76:24 81:5 81:8 81:10 81:12 81:13 82:3 82:9 82:14 82:14 82:21 93:12 111:22 112:4 114:17 114:17 115:2 115:3 115:5 115:6 120:18 146:3 146:22 147:10 147:12 147:2 147:24 148:14 148:17 149:5 149:6 149:9 149:14 149:15 149:15 150:13 150:18 151:24 152:1 152:9 153:2 153:17 160:12 160:23 167:3 167:10 167:12 168:6 168:13 169:13 173:9 173:10 173:11 173:13 173:1 173:21 176:10 208:5 209:16 211:1 212:3 216:10 219:4 219:7 242:2 269:7 269:9 269:19 269:20

millions(1) 212:3

millisecond(1) 130:11

mils(1) 199:14

milwany(7) 24:24 25:16 25:21 26:4 72:11 73:15 74:21

milwany's(1) 25:13

mina(2) 8:29 8:30

mind(7) 30:19 65:12 76:8 100:24 174:17 192:16 264:19

mine(3) 107:8 111:10 237:25

minimal(2) 41:17 107:25

minute(7) 16:24 33:25 43:2 111:8 119:22 213:2 262:20

minutes(5) 16:15 70:23 71:1 118:23 189:4

miriam(3) 11:9 11:18 285:7

mis(1) 233:1

misbehaved(2) 109:8 177:7

misbehavior(2) 128:12 128:19

mischaracterization(1) 264:9

mischaracterize(1) 198:16

misconduct(1) 174:25

miss(2) 136:12 136:12

missed(1) 140:4

misstated(1) 205:20

misstates(1) 43:17

mistaken(1) 57:4

misunderstood(1) 236:16

mitch(2) 2:26 43:9

mix(2) 94:21 232:7

mixed(2) 174:8 180:17

mk-08(1) 51:24

mk-60(1) 66:14

mk-61(1) 66:16

mko(1) 45:11

mode(1) 134:1

model(14) 44:3 102:23 104:11 104:12 104:14 104:16 106:2 112:18 156:9 185:19 205:15 208:25 215:9 216:19

modeled(9) 89:15 168:19 207:22 211:18 212:6 212:18 219:17 223:22 244:4

modeling(7) 216:8 238:25 239:18 240:8 241:23 244:7 269:17

models(4) 89:14 168:14 168:15 168:19

moderate(1) 162:2

moderately(1) 117:17

modern(2) 96:22 179:2

modify(3) 26:12 168:24 178:4

moment(16) 21:24 28:10 34:11 38:3 82:25 200:22 201:20 217:14 218:7 219:2 220:14 237:5 247:7 248:17 270:8 270:12

moments(1) 244:14

monarch(2) 6:31 6:32

mondavo(1) 282:9

monday(4) 283:3 283:9 283:12 283:13 130:10 130:12 130:16 130:25 171:14 171:19 171:20 175:24 210:1

moneys(1) 77:3

month(1) 190:3

monthly(1) 272:6

months(13) 23:15 34:3 56:1 100:16 190:3 190:3 197:6 251:22 255:22 256:1 272:7 272:11 274:10

more(78) 29:7 30:21 33:5 35:16 35:18 38:17 39:9 39:5 42:2 42:3 55:25 58:23 60:4 60:13 60:15 60:16 72:25 73:19 74:1 79:8 81:3 83:20 89:7 97:18 103:2 109:20 110:17 111:17 115:21 119:23 120:18 127:15 128:20 136:16 138:2 138:3 138:4 139:5 148:21 149:6 149:14 153:18 155:8 167:14 167:24 169:7 169:8 169:9 172:20 173:16 185:22 189:18 193:11 197:4 199:25 200:22 201:15 201:17 206:3 206:9 210:18 210:20 219:25 223:1 226:25 230:17 233:1 234:18 239:13 241:24 251:3 251:9 252:19 268:1 268:15 276:20 278:4 279:12

morgan(75) 2:4 4:34 8:37 11:7 11:9 11:24 12:8 12:14 12:17 13:5 14:1 14:4 14:9 14:11 15:15 15:21 15:24 16:9 16:12 16:16 16:19 16:21 16:24 17:8 18:7 18:16 18:17 19:4 20:22 22:1 22:8 23:10 23:11 26:24 27:2 27:9 28:3 29:10 30:15 32:18 33:8 33:9 35:9 39:9 47:13 48:3 49:5 50:9 52:8 55:6 56:23 63:5 63:9 64:10 64:21 65:2 65:16 67:24 69:8 69:17 70:13 70:14 76:1 76:2 76:4 76:6 77:24 78:24 87:9 87:25 102:12 150:5 150:13 150:14 198:25

morgan's(9) 16:2 18:10 23:5 24:15 56:15 64:19 65:1 65:7 65:8

morning(17) 11:3 11:4 11:5 11:21 11:22 43:7 43:8 77:13 77:14 86:7 88:7 191:23 279:24 280:13 281:3 282:12 283:13

moskowitz(53) 2:5 11:5 11:6 11:11 24:9 24:13 25:12 25:20 25:25 26:2 26:3 28:5 28:18 30:14 30:18 31:1 36:8 36:12 36:22 40:19 40:20 41:1 41:3 41:5 41:10 41:12 42:23 43:17 51:11 51:13 53:21 53:23 54:6 59:2 66:18 66:22 71:21 73:21 77:12 78:18 78:21 80:8 80:13 80:21 80:22 81:3 81:7 81:21 82:24 83:7 84:8 85:7

most(29) 38:16 38:17 49:10 65:11 68:16 86:14 100:16 115:6 115:12 115:16 134:3 138:5 140:2 144:17 147:3 149:4 155:23 156:19 168:8 169:10 187:7 197:3 234:7 249:21 250:10 252:23 252:24 260:22 268:23

mostly(4) 133:11 149:16 161:18 249:23

motion(4) 28:12 75:5 78:20 198:7

move(35) 24:6 25:7 36:1 36:23 74:8 78:16 80:23 87:5 90:3 110:10 110:12 115:7 116:2 134:8 134:10 147:2 160:11 167:21 167:25 167:25 169:6 169:7 211:14 211:17 219:2 233:3 235:20 245:11 255:4 257:13 261:2 264:22 268:3 268:6 268:8

moved(9) 14:7 16:1 167:18 167:18 208:22 251:17 255:2 255:5 260:22

moves(6) 89:11 110:14 147:4 147:5 169:9 169:10

moving(7) 24:14 160:12 169:7 230:24 232:10 233:1 233:3

mpp(1) 62:19

mpp-757(1) 69:18

mpp-851(1) 62:21

much(66) 21:9 32:24 35:23 38:7 38:19 39:25 40:3 40:11 41:8 42:2 42:3 42:25 51:1 64:25 65:7 80:3 80:15 100:12 106:3 110:6 112:20 114:2 116:18 124:22 128:17 129:7 133:3 135:8 135:12 135:24 135:25 138:4 139:21 142:15 147:2 148:3 148:11 151:23 152:1 155:20 165:15 165:16 166:11 166:15 166:16 166:17 168:21 169:6 173:16 173:16 175:16 175:17 175:19 185:22 196:25 198:12 199:8 211:15 212:3 219:22 250:18 251:2 251:14 251:16 279:22

muchin(1) 10:38

mulhern(1) 9:15

mullen(1) 7:15

multiple(2) 181:22 227:3

multiply(4) 145:19 163:8 173:7 173:8

murray(6) 53:7 53:11 54:4 54:16 54:18 54:22

music(1) 58:25

must(1) 143:4

mutual(1) 250:25

muttering(1) 199:11

myers(1) 6:36

myrick(1) 7:19

myself(8) 105:25 111:18 111:21 118:5 160:8 192:25 232:25 247:21

name(6) 43:9 77:22 90:17 90:23 149:11 271:5

named(4) 46:16 199:14 200:25 200:25

names(1) 184:2

nancy(1) 2:24

narps(1) 92:10

natural(7) 39:15 39:16 39:19 39:22 40:11 41:14 168:8

nature(5) 19:7 23:5 25:1 104:3 173:16

near(1) 212:22

nearly(2) 95:4 164:9

necessarily(1) 224:10

need(15) 42:25 59:15 60:7 89:16 128:12 180:20 184:21 194:16 223:8 256:1 256:6 262:17 262:21 263:19 270:11

needed(4) 97:25 102:17 190:16 229:11

needs(3) 86:23 181:15 181:7

neftalis(1) 10:4

negative(3) 266:7 267:9 268:1

negotiate(4) 18:21 64:21 64:22 65:3

negotiated(1) 38:22

negotiating(1) 18:25

negotiation(1) 56:4

negotiations(12) 27:20 41:20 41:25 42:1 42:9 56:15 56:16 56:23 57:18 58:14 58:21 62:8

neighborhood(1) 44:9

neighbors(1) 211:14

neil(1) 9:23

neither(4) 23:22 125:5 142:9 158:25

nervous(1) 25:3

net(3) 115:3 172:21 269:9

network(1) 93:7

neutral(2) 60:17 61:1

never(24) 22:23 39:1 53:12 54:5 57:19 57:21 57:24 58:6 58:16 59:20 60:5 61:25 62:12 72:9 84:24 120:13 124:20 130:13 151:12 179:5 179:9 214:2 227:15 245:19

nevertheless(2) 116:16 230:3

new(48) 2:9 2:28 2:44 3:22 12:1 12:10 27:4 42:10 55:3 76:9 86:6 86:15 86:17 88:15 88:21 89:1 92:11 93:2 98:14 98:23 122:5 159:2 159:5 177:11 190:14 190:18 192:20 192:20 194:8 194:23 197:25 198:2 198:3 198:4 198:23 199:2 199:6 199:8 253:8 253:23 253:24 255:12 256:25 258:17 259:14 259:20 260:7

newman(1) 2:22

news(1) 89:24

newspaper(6) 125:19 126:4 126:7 271:25 272:2 276:19

newspapers(1) 125:21

next(44) 11:9 20:2 23:14 28:2 29:24 30:1 30:19 33:6 51:3 59:8 62:19 69:18 80:13 87:5 108:15 109:14 114:17 114:24 116:3 116:5 116:6 117:5 118:16 118:21 119:3 129:4 140:25 145:3 152:25 160:2 160:4 184:22 188:10 191:25 218:7 226:20 251:18 260:3 264:22 264:24 267:12 275:6 277:6 279:8

nh-670(1) 54:25

nicholas(2) 8:46 9:15

night(3) 89:2 103:19 259:2

nine(2) 205:22 281:4

ninety-five(1) 208:8

no-integration(1) 255:9

no-step(2) 255:4 260:21

nobody(1) 150:2

nobody's(1) 257:24

noise(1) 107:17

non(1) 36:24

non-creditors(2) 114:12 269:5

non-lbo(2) 31:20 35:19

non-party(1) 10:50

none(5) 76:23 77:1 77:4 227:10 227:11

normally(1) 22:12

norman(1) 1:34

north(11) 2:15 2:35 3:6 4:36 4:48 5:7 135:22 148:8 150:16 162:7 193:17

northwestern(2) 91:6 91:12

northwestern's(1) 91:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **not**(301) 13:16 16:18 16:21 17:2 19:4 24: 25:17 29:17 30:8 30:10 32:4 32:11 32:12 32:20 32:21 36:2 37:2 38:4 39:11 40:3 40:20 42:13 43:15 43:18 44:22 45:2 53:1 53:17 54:7 55:7 58:10 59:5 59:6 60:14 61:22 63:21 64:10 64:18 65:22 66:11 68: 69:8 73:16 74:15 75:15 75:25 79:2 80:13 81:1 84:19 84:21 84:21 84:25 85:1 86:17 86:21 86:22 87:10 87:12 87:25 88:1 88:1 97:8 99:4 100:1 100:2 100:10 100:11 103:19 108:16 108:22 108:23 110:7 110: 114:2 115:19 116:8 116:21 117:11 117:18 117:22 118:2 118:7 118:9 120:20 122:4 124:15 124:21 124:22 125:1 125:15 126:3 127:13 127:25 128:1 128:11 128:13 128:1 128:24 130:15 130:21 131:1 131:7 133:3 133:13 133:14 133:14 133:15 134:7 135:1 135:19 135:25 137:22 138:6 138:14 139:2 139:3 139:5 139:6 140:23 141:16 141:20 142:5 143:9 143:14 148:5 148:21 149:3 149:12 149:12 151:1 151:7 151:25 154:6 156:18 156:19 158:13 159:5 161:3 161:2 162:13 163:2 164:1 164:7 164:9 165:15 165:16 165:20 165:20 166:12 166:15 166:16 167:2 168:15 168:16 169:22 171:2 171:12 172:20 173:19 173:24 173:25 175:16 175:18 176:1 176:8 176:10 177:8 177:17 180:14 181:10 181:16 181:18 181:20 181:23 182:24 183:24 184:18 186:10 186:19 187:11 187:17 189:2 189:2 189:22 189:24 190:22 192:25 193:20 193:21 194:4 195:5 195:7 196:1 196:5 196:21 197:5 197:6 198:4 198:4 199:7 199:8 199:15 201:8 202:3 202:24 205:20 206:19 206:24 207:2 208:20 208:24 209:6 209:10 209:24 210:2 210:13 212:10 212:22 213:10 214:8 214:12 214:16 215:5 216:22 218:2 219:8 219:15 224:10 224:13 225:18 225:22 226:18 228:4 228:8 229:10 230:13 230:15 231:8 231:10 235:17 236:23 237:12 237:17 237:22 238:10 238:19 238:20 238:22 239:11 239:20 239:22 241:9 241:2 242:3 242:7 244:1 244:3 245:7 247:3 247:16 248:6 248:12 249:20 249:25 250:3 250:6 251:1 251:13 257:3 260:10 262:15 262:21 263:16 263:22 263:25 264:4 264:1 265:15 268:8 268:24 269:1 269:22 270:1 270:16 274:18 276:5 277:1 278:13 279:1 280:11 280:15 281:7 281:8 281:19 281:22 282:2 282:14 282:19 283:4 283:8 | | **notes-favoring**(6) 124:19 125:6 129:24 135:13 135:23 141:5 | | **objection**(37) 25:10 25:15 29:12 30:22 36:1 40:13 43:17 51:11 53:21 54:6 59:2 66:22 66:22 71:21 73:21 78:16 80:4 80:2 81:15 84:8 84:8 84:9 85:7 88:10 88:14 88:20 100:22 100:23 103:16 105:4 105:6 105:7 145:4 145:12 158:9 198:15 256:3 | | **okay**(301) 21:24 22:8 25:25 28:11 31:19 33:6 33:24 34:5 34:10 34:17 36:17 36:23 43:3 44:7 44:11 44:14 44:19 45:3 45:6 45:11 45:16 45:25 46:7 46:20 47:13 48:9 48:13 48:17 48:25 49:4 49:8 49:21 50:21 50:25 51:5 51:8 52:6 52:12 52:22 53:4 53:11 54:24 55:5 55:9 55:9 55:18 55:22 56:9 56:14 56:19 57:14 59:15 59:18 62:18 63:8 63:13 64:13 65:19 66:13 67:6 67:8 67:10 67:15 68:2 68:19 68:22 69:4 69:6 69:8 69:13 69:17 69:25 70:1 70:4 70:9 70:18 71:9 73:12 73:19 75:19 75:22 77:19 78:22 83:13 84:3 84:17 84:23 85:9 85:12 85:20 89:18 91:20 92:16 94:11 94:22 95:17 95:25 99:1 99:8 100:12 100:17 101:4 101:9 101:10 101:25 103:6 103:9 103:13 103:21 104:2 105:1 105:11 105:18 105:20 106:5 106:15 106:18 106:19 106:23 107:3 107:11 108:1 108:2 108:13 110:15 110:23 111:3 111:11 111:21 112:8 112:11 112:15 112:23 113:1 113:11 114:6 114:21 116:2 117:4 117:10 117:20 118:5 118:12 118:22 119:24 119:25 120:4 120:5 120:6 123:7 123:15 124:2 125:3 125:11 126:4 126:13 127:2 128:20 128:25 129:5 129:11 129:13 129:16 129:23 130:1 130:4 130:6 130:24 131:11 131:23 132:8 132:13 132:15 133:4 133:17 134:8 135:1 136:16 136:18 137:3 137:11 140:6 140:22 144:22 145:11 145:21 146:10 146:16 146:19 147:17 149:7 152:8 152:11 152:13 152:24 153:1 155:2 155:3 156:3 156:23 157:3 157:7 158:2 158:6 159:4 159:7 159:15 160:16 160:18 164:15 164:18 166:19 168:2 168:23 170:2 170:19 171:3 171:6 171:11 171:15 173:3 173:23 174:12 174:15 174:19 174:22 175:4 175:11 177:15 178:12 179:9 179:12 179:22 180:1 180:4 180:6 180:19 180:22 180:24 181:3 181:11 181:17 181:21 181:24 182:4 182:7 182:13 182:16 182:19 183:3 183:6 183:11 184:13 184:17 184:21 184:28 185:4 185:9 185:12 185:17 185:25 187:7 189:1 189:5 189:19 190:2 190:7 190:10 190:19 191:3 191:12 192:2 192:5 192:6 192:11 192:17 192:18 193:5 193:9 193:12 193:18 194:5 194:9 194:13 194:16 194:18 194:22 195:4 195:7 195:11 195:17 195:22 196:3 196:6 196:17 196:23 197:1 197:4 197:11 198:6 198:11 |
| | | **notes-friendly**(3) 120:10 140:23 143:25 | | **objectionable**(2) 25:17 28:9 | | |
| | | **nothing**(3) 39:25 198:12 257:20 | | **objections**(1) 281:5 | | |
| | | **notice**(1) 281:5 | | **objective**(2) 239:5 239:8 | | |
| | | **notwithstanding**(1) 205:14 | | **obligation**(2) 215:15 237:8 | | |
| | | **november**(6) 14:24 45:23 45:24 46:1 46:2 46:6 | | **observations**(1) 85:22 | | |
| | | | | **obvious**(2) 160:10 163:4 | | |
| | | **now**(175) 18:6 21:24 28:6 29:2 29:9 33:11 34:22 36:23 42:22 48:9 48:25 50:16 50:2 51:5 53:6 54:24 55:18 56:3 57:17 59:3 61:8 61:24 63:8 64:9 65:14 68:9 74:14 83:3 84:3 84:17 85:13 85:17 87:14 96:23 103:6 103:24 110:23 111:11 112:8 112:12 113:23 115:18 115:19 116:2 117:6 118:12 118:13 118:25 122:5 122:18 123:15 129:11 130:1 130:9 132:8 133:15 135:1 135:17 135:21 136:17 139:20 140:6 140:21 142:1 144:8 144:12 144:12 144:22 146:16 146:2 147:5 147:6 148:2 148:9 150:14 151:5 152:3 153:25 154:13 164:20 167:16 168:2 170:2 172:17 172:24 173:5 175:7 179:12 180:1 180:9 181:17 181:24 183:3 184:18 185:18 187:13 188:11 189:6 189:19 190:1 192:7 192:12 193:18 194:5 194:22 196:3 196:17 197:17 199:12 200:21 201:14 202:14 203:24 205:8 207:3 207:16 209:8 210:15 212:1 212:22 213:17 215:17 217:8 217:14 218:7 220:14 220:18 220:22 221:1 222:25 224:21 225:9 225:18 226:10 226:19 227:10 228:20 230:15 231:3 231:2 233:5 233:23 234:16 234:24 236:15 237:2 238:22 239:24 243:8 244:4 245:11 247:4 248:16 250:16 251:1 251:1 257:6 258:15 258:20 259:14 261:4 261:11 262:23 262:2 264:22 265:23 268:3 269:2 269:17 270:1 271:24 273:3 277:10 280:12 283:4 | | **obviously**(7) 29:13 56:5 71:9 86:12 87:10 87:12 107:23 | | |
| | | | | **occasion**(3) 30:21 201:22 235:24 | | |
| | | | | **occurred**(2) 19:8 179:7 | | |
| | | | | **occurring**(2) 249:1 255:9 | | |
| | | | | **october**(2) 37:5 68:13 | | |
| | | | | **off**(17) 49:11 82:9 91:25 101:6 110:5 114:19 115:14 131:15 132:4 134:10 163:1 163:11 164:25 209:24 229:6 253:17 258:7 | | |
| | | | | **offer**(15) 19:14 99:20 103:14 108:18 108:20 117:23 120:20 129:10 135:6 141:1 148:18 270:25 272:15 273:10 277:14 | | |
| | | | | **offered**(4) 16:9 19:16 103:19 196:6 | | |
| | | | | **offering**(1) 27:7 | | |
| | | | | **offers**(2) 19:13 97:17 | | |
| | | | | **office**(1) 4:28 | | |
| | | | | **officer**(2) 14:6 270:5 | | |
| | | | | **officers**(6) 44:22 68:16 77:24 94:3 148:6 149:16 | | |
| | | | | **official**(2) 3:11 5:22 | | |
| | | | | **often**(2) 97:1 98:9 | | |
| **note**(1) 28:9 | | **nudge**(1) 240:8 | | | | | |
| **noteholder**(13) 48:14 62:5 98:16 170:6 176:12 183:16 186:5 221:8 259:7 259:9 262:7 271:11 277:7 | | **nudged**(2) 229:12 241:4 | | | | | |
| | | **nudges**(1) 240:12 | | | | | |
| **noteholder's**(1) 41:14 | | **number**(59) 15:4 18:3 22:3 22:3 22:11 22:14 23:9 24:25 58:21 58:21 58:22 59:24 60:6 64:13 67:16 72:14 73:1 78:23 86:3 97:12 102:15 102:16 118:2 118:2 140:6 147:23 147:24 151:24 152:5 152:19 157:25 159:23 161:11 166:6 166:7 166:19 166:20 168:2 168:3 171:18 173:2 218:19 221:8 226:18 228:20 228:22 228:23 229:4 229:23 230:16 234:20 235:9 237:23 242:2 242:3 242:4 243:4 258:23 258:25 | | | | | |
| **noteholders**(43) 15:2 19:9 20:11 32:7 32:10 33:2 34:8 36:15 37:6 38:15 38:19 39:20 39:23 40:12 41:16 57:25 58:7 58:1 58:24 59:21 60:2 60:5 60:14 60:23 60:24 76:25 77:5 81:8 81:14 82:6 82:10 82:18 84:14 84:18 84:19 85:1 85:3 87:12 157:8 186:2 186:15 213:3 213:21 | | | | | | |
| | | **number's**(1) 153:17 | | | | | |
| | | **numerical**(3) 104:11 151:10 227:8 | | | | | |
| | | **numerically**(1) 106:2 | | | | | |
| **notes**(71) 27:25 31:23 34:20 35:1 35:8 42:20 82:15 82:22 84:17 101:19 101:20 101:23 101:24 107:25 110:21 112:23 113: 113:8 113:10 113:12 113:13 113:15 114:16 114:16 114:18 115:8 115:9 115:14 115:17 116:21 117:7 117:20 118:25 119:2 123:17 131:22 131:24 135:6 136:7 140:8 140:12 143:6 143:8 143:17 143:19 146:3 146:12 146:24 147:10 147:15 161:25 162: 162:8 162:15 165:25 169:25 170:10 171: 172:11 172:21 209:16 210:22 212:4 213:9 213:15 216:6 278:17 278:21 279:2 279:5 279:6 | | **oaktree**(26) 9:17 9:18 19:5 21:2 21:25 22:2 22:8 22:19 22:21 26:9 28:23 31:8 33:8 33:9 61:12 61:19 61:20 61:22 64:4 65:19 65:23 65:24 66:1 76:7 79:16 198:25 | | | | | |
| | | **oaky**(1) 203:4 | | | | | |
| | | **oath**(1) 45:7 | | | | | |
| | | **object**(4) 24:6 80:21 86:9 174:3 | | | | | |
| **notes-favorable**(2) 117:13 135:4 | | **objected**(1) 278:6 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**okay(228)** 199:3 199:10 199:17 199:23 200:4 200:10 200:15 200:18 200:21 201:3 201:6 201:14 201:19 201:19 201:24 202:4 202:8 202:11 202:14 203:12 203:20 203:25 204:4 204:18 204:24 205:3 205:7 205:14 205:17 206:18 207:1 207:3 207:12 207:16 207:19 207:22 208:2 208:10 208:15 209:1 209:8 209:19 210:2 210:5 210:15 211:8 211:17 212:1 212:6 212:22 214:1 214:4 214:20 214:24 215:3 215:12 215:17 216:8 216:11 216:15 216:19 216:24 217:5 217:8 217:14 217:16 218:5 218:7 218:12 218:19 218:23 219:2 219:19 220:3 220:6 220:10 220:13 220:18 220:22 221:6 221:11 221:17 221:25 222:3 222:8 223:11 223:13 223:18 223:20 224:7 224:16 225:9 226:5 226:10 226:23 227:10 228:7 228:20 229:7 229:12 229:17 231:13 231:19 232:6 232:14 233:5 233:8 233:13 233:23 235:7 235:16 235:24 236:6 236:19 237:4 237:10 237:12 238:4 238:8 238:12 239:9 242:23 243:2 243:8 243:20 244:11 244:14 244:22 245:7 245:11 246:2 246:14 246:17 248:7 248:19 249:10 249:15 250:16 251:7 252:3 252:8 253:1 253:7 253:12 253:20 254:2 254:10 254:14 254:20 254:24 255:7 255:16 255:21 255:22 256:14 256:23 257:11 257:18 258:1 258:3 258:5 258:8 258:15 259:5 259:11 259:23 260:3 260:13 261:2 261:14 261:18 262:13 262:24 263:4 263:9 263:14 263:21 264:5 264:8 264:17 264:22 265:5 265:11 265:20 265:23 266:11 266:12 266:15 266:22 267:17 267:24 268:3 268:5 269:2 269:17 271:1 271:6 271:9 271:10 271:19 271:22 272:4 272:9 272:17 272:20 273:7 273:15 274:2 274:6 274:8 274:12 275:10 276:10 276:14 276:23 277:6 277:9 277:16 277:21 277:23 278:25 279:10 280:6 280:10 280:2 280:22 281:24 283:20

**oklahoma(1)** 92:21
**old(6)** 164:25 194:7 230:22 258:16 259:13 259:19

**olinsky(1)** 10:10
**omit(1)** 205:18
**omitted(1)** 206:21
**onboard(5)** 27:16 33:1 33:1 33:2 61:21
**once(9)** 61:25 101:22 102:23 108:8 108:19 118:12 120:12 120:25 144:9

**one(287)** 1:28 2:14 2:27 10:46 18:21 23:21 30:21 31:5 32:8 35:15 37:6 37:15 38:2 40:5 40:9 47:16 47:18 52:2 52:14 53:1 54:9 54:21 64:14 65:19 65:20 65:25 65:25 66:4 66:18 68:6 69:11 70:7 71:3 72:7 82:25 85:23 86:15 94:17 94:19 95:5 95:14 95:21 97:20 102:8 102:20 104:4 104:6 104:8 104:12 104:18 106:13 106:18 106:19 106:19 106:21 108:4 108:6 108:8 108:17 108:19 108:23 109:18 109:20 110:22 112:6 112:6 112:13 112:16 113:6 114:4 115:8 115:9 115:10 117:8 117:10 118:8 119:11 119:14 120:10 120:12 120:11 120:15 120:19 120:20 120:24 120:25 121:9 121:20 121:22 122:2 122:4 122:20 122:21 122:25 123:2 123:4 123:11 123:13 123:20 123:24 124:1 124:3 124:17 124:20 124:23 125:5 130:7 132:3 132:14 133:17 134:17 135:19 135:21 136:16 139:6 139:1 141:3 141:14 142:1 142:3 142:9 142:17 143:4 143:6 143:7 143:12 144:7 144:13 148:12 149:25 150:23 150:23 150:25 153:4 153:21 156:7 157:4 157:13 159:19 160:5 160:21 161:8 161:9 161:10 161:11 161:17 161:23 162:10 162:11 163:7 164:1 164:23 165:24 167:15 168:6 168:9 168:10 168:12 170:3 171:7 171:13 171:16 171:23 172:5 172:14 172:15 172:19 172:25 173:6 173:12 173:24 173:25 175:11 175:15 175:21 176:2 176:7 176:9 177:6 177:6 177:15 182:23 183:8 184:14 184:15 184:19 184:25 185:4 185:9 185:12 185:16 189:12 194:6 194:8 194:8 194:24 195:12 200:25 202:21 206:1 206:11 206:12 206:13 206:14 209:6 209:10 209:13 209:20 209:21 210:2 210:6 210:10 210:12 210:13 210:15 210:20 211:1 211:3 211:8 211:9 211:12 212:23 213:18 213:9 213:19 215:21 215:24 216:2 216:6 216:14 216:7 216:21 219:9 220:8 221:8 224:4 224:4 224:11 224:18 224:23 224:23 225:1 225:4 226:25 227:16 227:22 229:2 229:3 229:5 229:13 229:20 231:2 231:5 237:10 237:12 237:15 238:16 238:24 239:12 239:13 240:12 240:16 240:19 243:17 244:23 246:15 246:16 250:23 253:12 253:13 254:5 263:7 263:22 267:22 270:8 270:20 270:23 271:19 271:22 274:12 278:20 278:22

**one-in-three(1)** 139:12
**one-step(1)** 141:15
**ones(8)** 89:15 95:15 98:24 127:25 131:25 163:1 195:4 268:14

**ongoing(1)** 98:22
**only(46)** 28:25 32:14 37:4 54:15 58:18 61:22 62:11 63:21 63:23 64:16 64:21 71:74:19 100:1 100:2 108:16 108:23 123:12 125:15 132:2 133:10 133:15 137:10 151:8 155:23 160:14 162:4 167:17 173:13 196:2 206:4 207:20 209:23 216:15 224:4 224:1 225:7 240:1 246:12 249:1 250:6 255:3 256:15 261:1 263:17 282:7

**onscreen(2)** 257:12 257:13
**onto(1)** 167:12
**open(2)** 261:17 262:10
**opening(11)** 158:21 170:5 170:8 178:3 180:2 186:7 194:11 194:20 194:23 247:1 262:25
**openings(1)** 170:3
**operating(2)** 272:12 276:18
**opine(2)** 179:6 179:10
**opined(1)** 183:1
**opining(1)** 197:21

**opinion(25)** 36:9 54:3 54:17 101:17 102:3 102:14 103:14 105:13 117:23 122:20 122:23 142:20 147:14 148:23 149:20 149:21 153:24 168:25 169:3 179:22 190:1 233:11 236:1 253:8 275:2

**opinions(21)** 100:19 100:25 101:1 101:12 102:6 102:7 102:9 102:9 103:9 116:4 117:21 117:24 136:17 141:20 178:4 179:15 196:6 202:10 203:12 204:11 204:17

**opportunity(5)** 86:10 86:23 89:6 133:6 170:3

**opposed(11)** 20:25 21:3 21:4 21:6 21:12 109:16 169:16 174:5 201:2 201:4 250:19

**option(2)** 88:2 167:8
**options(1)** 15:4
**order(8)** 30:10 89:13 118:17 193:9 193:15 234:4 252:18 255:16

**organizational(1)** 15:18
**original(18)** 49:14 103:19 104:3 188:5 190:13 221:13 253:9 254:5 254:11 255:8 256:25 260:6 261:12 261:13 261:22 262:1 262:13 265:12

**originally(4)** 97:13 99:10 99:11 255:17
**other(89)** 13:6 13:24 13:25 18:4 19:25 22:9 22:24 24:15 29:19 41:19 41:25 42:4 49:5 52:22 52:22 53:2 54:21 56:22 57:7 58:5 58:13 60:23 60:24 61:18 62:8 67:11 71:25 77:8 79:9 82:22 93:9 94:9 96:14 97:21 104:15 109:10 109:20 117:5 124:17 115:21 125:13 125:22 127:2 127:5 131:12 131:23 134:8 135:1 141:3 146:24 147:12 154:12 155:6 155:21 159:23 163:11 163:1 164:1 164:1 164:17 164:20 169:5 175:24 181:9 182:25 183:9 188:9 206:6 213:1 226:11 227:25 228:2 228:5 229:15 232:5 236:6 239:12 239:14 244:24 245:6 249:23 250:7 256:16 256:19 260:18 264:20 264:2 270:7 278:17

**others(7)** 63:2 86:17 117:15 123:23 181:9 196:22 238:20

**otherwise(11)** 40:7 53:12 74:24 132:6 207:23 209:25 221:14 261:8 262:5 267:20 268:13

**ought(2)** 40:24 86:12
**our(22)** 11:8 12:4 19:12 65:3 86:14 87:16 87:18 88:13 96:17 109:24 130:8 130:9 141:17 191:14 199:2 200:2 218:23 248:16 252:11 260:5 260:17 262:19

**ourselves(1)** 123:16

**out(95)** 13:17 14:2 22:6 35:13 42:8 42:22 50:25 51:3 55:10 55:14 55:19 56:6 61:6 61:5 65:23 67:4 67:18 71:7 72:2 72:6 72:24 89:3 89:17 90:1 93:23 94:19 96:13 101:7 104:7 104:13 106:2 110:22 112:16 118:7 118:9 118:11 118:21 130:12 134:17 138:17 139:11 139:17 145:24 146:7 146:8 146:21 148:14 148:20 149:6 149:14 149:1 150:18 161:9 161:23 161:25 162:4 162:10 167:22 167:22 167:23 168:8 168:13 171:2 172:1 172:3 172:12 174:14 175:11 175:20 176:5 176:9 176:16 177:8 185:19 199:5 230:24 210:1 211:4 213:19 214:5 225:25 228:14 230:12 233:14 233:24 234:13 235:2 242:5 247:23 249:23 260:4 262:1 276:21 281:13 282:3

**outcome(20)** 60:17 101:18 107:23 113:21 145:9 145:16 146:12 147:15 151:14 151:1 171:4 173:20 174:10 188:17 188:18 192:14 210:18 210:20 211:9 255:1

**outcomes(11)** 104:21 104:25 105:25 106:4 106:12 116:20 188:14 204:5 206:17 241:5 241:11
**outliers(2)** 156:13 156:13
**outside(13)** 41:23 58:15 58:18 60:3 60:4 61:8 61:24 62:9 62:13 77:3 92:19 92:25 169:16
**over(29)** 14:20 18:13 23:8 23:18 86:2 86:10 87:19 89:17 89:25 92:24 100:15 100:15 114:19 131:16 136:13 138:1 140:5 140:25 143:11 143:22 193:6 215:12 215:13 251:17 255:2 279:8 279:18 279:23 282:15

**overall(20)** 101:7 111:18 115:23 118:24 135:13 138:21 144:14 159:24 163:16 179:22 181:15 227:22 227:23 228:6 230:10 235:14 249:17 256:12 256:21 264:19

**overcome(1)** 213:20
**overhang(2)** 274:16 274:24
**overlaps(2)** 180:10 180:12
**overlay(1)** 102:25
**overnight(1)** 151:23
**overpaid(1)** 202:1
**overpay(1)** 201:22
**overrule(1)** 278:10
**overruled(7)** 24:12 30:23 51:16 66:24 73:22 159:14 198:19

**overview(2)** 184:15 246:20
**overwhelmingly(1)** 64:20
**owens(1)** 177:1
**own(17)** 13:9 24:15 54:18 62:3 92:24 102:6 102:18 119:15 123:12 123:13 146:9 185:24 187:13 188:21 232:2 232:15 234:23

**o'melveny(1)** 6:36
**p.a(1)** 1:33
**p.m(7)** 48:21 48:23 55:12 89:22 154:21 154:21 284:3

**pace(1)** 190:15
**package(8)** 38:24 38:25 39:1 39:3 76:3 76:11 76:18 76:21
**page(30)** 48:15 48:19 70:11 104:8 180:5 188:3 194:22 194:23 221:18 222:6 234:24 235:2 240:2 240:6 253:16 254:3 257:3 261:12 261:15 262:11 262:18 262:24 263:4 266:12 266:21 271:17 273:4 273:19 275:25 277:21

**pages(9)** 18:14 23:18 194:10 199:5 235:6 235:10 246:8 246:14 261:14

**pagination(1)** 262:15
**paid(24)** 34:7 35:3 37:25 76:24 77:3 81:25 82:9 82:11 110:5 114:19 115:14 130:7 142:24 150:12 161:24 165:2 165:8 172:3 216:6 219:18 219:10 219:14 219:15 269:21

**palmer(1)** 4:40
**paper(2)** 94:16 257:7
**papers(21)** 93:8 93:12 93:13 159:1 221:12 222:5 253:9 253:9 253:23 254:5 254:12 254:12 254:14 255:8 255:12 256:24 258:17 258:17 259:17 259:20 260:6

**parachutes(1)** 149:11
**paragraph(7)** 63:14 180:10 194:24 273:18 275:6 275:24 276:1

**parent(30)** 20:15 32:1 35:4 37:22 40:4 40:5 82:1 82:8 82:8 82:13 84:12 138:5 171:8 171:9 171:14 185:14 207:24 207:25 208:3 208:11 208:15 208:20 209:3 209:11 209:25 217:10 217:13 231:15 232:14 233:20
**parenthetical(1)** 263:25
**parents(2)** 20:14 82:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| pari(2) 207:25 209:2 | | people(27) 27:24 27:24 38:23 52:22 53:2 61:20 69:14 72:2 72:5 72:6 74:22 93:13 96:13 96:20 122:11 126:5 172:20 191:16 193:25 197:7 199:5 201:21 202:4 202:8 283:8 283:8 283:10 | | place(16) 24:1 25:8 25:14 26:15 36:19 68:24 90:13 100:10 104:12 106:4 165:6 165:11 191:16 210:11 216:3 276:25 | | possibility(33) 67:18 109:7 109:18 109:20 120:10 120:10 128:10 130:22 131:8 131:19 134:2 151:14 164:8 168:4 168:11 171:7 172:16 173:20 173:23 202:1 209:5 210:14 225:12 227:5 228:24 229:18 229:25 232:22 236:16 240:9 250:13 275:23 282:25 | |
| park(4) 2:27 2:43 5:23 10:14 | | | | placed(1) 192:7 | | | |
| parke(3) 3:12 17:7 17:8 | | | | places(7) 235:9 236:6 236:10 243:22 243:23 252:1 264:21 | | | |
| parse(3) 214:15 265:23 265:24 266:24 | | per(1) 275:18 | | | | possible(14) 55:11 69:6 69:7 89:7 100:8 105:25 106:12 110:23 120:23 122:7 206:23 224:16 281:2 283:4 | |
| part(49) 13:4 20:18 21:3 23:10 38:9 39:2 39:3 44:11 44:19 64:18 76:11 76:21 82:4 89:4 93:19 94:7 95:10 99:4 101:1 102:4 102:14 126:11 126:19 133:19 148:2 150:6 158:14 159:5 160:7 164:22 169:23 174:9 181:15 181:16 182:22 186:20 186:21 198:13 198:22 199:1 218:23 225:25 229:20 229:24 229:24 260:22 264:19 268:23 | | perceived(1) 214:6 | | plaintiff(2) 57:15 271:5 | | | |
| | | percent(102) 31:25 32:8 32:9 35:1 35:1 114:18 114:20 118:20 124:16 130:21 133:10 134:11 134:16 134:22 135:9 135:22 136:1 136:7 136:8 137:2 137:3 137:17 137:11 137:14 137:15 137:15 138:12 139:10 139:11 139:11 139:14 139:14 139:17 139:18 140:1 141:21 141:22 141:23 141:25 143:9 143:16 143:22 144:5 144:17 147:11 148:9 149:3 159:22 159:22 163:7 163:8 163:21 163:22 170:25 171:1 173:4 173:7 173:8 173:10 173:10 173:14 206:1 208:9 211:6 212:18 215:1 215:7 217:20 217:21 217:24 218:3 225:14 225:15 225:1 228:20 229:20 229:20 229:23 229:24 237:3 241:6 248:9 249:7 249:7 249:17 249:23 252:17 252:19 252:22 252:22 253: 253:2 255:11 255:13 255:14 255:17 255:18 255:19 255:20 267:15 267:18 279: | | plan(105) 11:8 11:18 21:18 21:20 21:22 22:9 22:22 22:13 22:15 22:22 22:23 23:1 23:24 23:25 24:22 26:12 26:21 27:18 27:19 31:25 34:11 34:14 34:15 34:18 35:10 35:17 35:18 35:20 35:24 37:1 39:6 39:6 39:10 44:16 49:11 49:14 50:8 57:6 57:8 58:2 58:20 63:19 65:15 65:16 77:21 81:4 81:23 82:5 84:12 98:16 98:16 98:17 98:18 100:21 101:14 101:16 101:22 101:2 113:7 113:19 113:24 113:25 114:7 114:1 114:15 115:16 115:18 115:23 121:21 146:24 147:5 147:6 147:13 147:14 153:20 153:25 154:1 161:6 168:25 169:11 169:14 169:15 169:22 170:6 176:11 179:12 179:2 183:16 186:6 189:21 190:3 190:5 190:10 190:12 190:13 190:14 190:20 213:6 245:1 245:20 245:23 269:2 283:20 | | possibly(1) 93:10 | |
| | | | | | | post(8) 66:6 67:19 93:7 161:14 165:14 182:7 205:23 212:24 | |
| part-owner(1) 93:5 | | | | | | | |
| partial(3) 37:4 111:25 207:17 | | | | | | post-filing(18) 162:13 162:18 163:4 163:8 164:3 164:19 165:6 165:10 165:21 169:19 205:25 206:1 206:4 211:24 212:12 212:15 213:4 213:12 | |
| partially(1) 244:24 | | | | | | | |
| participant(2) 29:3 62:3 | | | | | | | |
| participants(1) 19:2 | | | | | | post-petition(4) 113:11 212:8 213:10 | |
| participate(7) 62:24 168:12 173:25 261:6 265:18 266:2 267:2 | | | | | | post-step(2) 50:6 50:6 | |
| | | | | | | potential(20) 15:6 16:1 16:7 16:22 18:1 27:4 35:23 56:6 86:3 131:9 136:3 145:16 151:10 155:4 199:18 210:16 218:21 270:7 279:8 | |
| participated(7) 16:16 16:19 19:1 28:19 53:1 57:22 277:18 | | | | | | | |
| participating(2) 42:5 267:19 | | | | planned(5) 74:14 86:1 124:7 141:12 | | | |
| particular(18) 29:17 51:22 58:22 66:7 72:21 93:15 94:22 95:8 104:24 110:17 132:15 163:7 181:12 186:15 223:7 227:16 235:5 249:7 | | percentage(5) 84:13 138:14 144:13 151:7 229:13 | | planning(3) 87:13 219:20 283:10 | | potentially(9) 15:3 15:5 47:11 110:13 119:12 120:9 127:8 130:17 212:17 | |
| | | | | plans(2) 57:8 78:9 | | | |
| | | | | plan's(1) 114:22 | | potter(1) 2:31 | |
| particularly(2) 28:12 113:2 | | percentages(9) 132:9 132:12 132:18 136:25 226:1 226:16 226:24 226:24 228:1 | | plate(6) 135:18 135:20 136:11 139:4 140:3 225:8 | | power(1) 174:25 | |
| parties(27) 18:3 18:4 18:20 19:17 19:23 20:3 20:21 20:23 25:3 31:5 33:7 39:17 42:3 42:7 98:19 98:20 99:16 114:12 146:23 189:21 190:17 190:19 190:19 201:11 205:8 281:12 281:13 | | | | | | powers(1) 177:5 | |
| | | | | | | powlen(1) 4:35 | |
| | | percolated(1) 260:21 | | plausibility(1) 169:21 | | ppearances(5) 1:21 2:1 3:1 4:1 5:1 | |
| | | perfectly(1) 175:12 | | plausible(1) 175:12 | | | |
| partisan(1) 60:9 | | perform(2) 159:11 201:7 | | play(5) 51:24 66:18 148:14 242:8 248:14 | | practical(1) 80:14 | |
| partly(5) 98:14 98:18 99:15 103:1 230:9 | | performance(15) 14:25 272:11 272:14 273:9 273:19 273:25 274:4 274:11 274:15 275:15 275:21 276:7 276:15 276:18 276:2 | | playback(5) 45:17 51:25 59:1 66:15 66:20 | | practice(6) 109:21 151:9 156:11 180:14 237:22 238:23 | |
| partner(3) 9:14 90:3 200:25 | | | | played(2) 242:10 248:15 | | | |
| partners(8) 5:19 7:4 8:4 9:30 9:30 10:42 10:46 201:1 | | | | players(1) 98:3 | | | |
| | | | | playing(1) 282:3 | | practitioner(2) 200:23 201:4 | |
| | | performed(1) 188:12 | | plaza(3) 2:34 3:7 3:21 | | pre-lbo(1) 265:9 | |
| partnership(1) 199:20 | | performing(1) 272:13 | | pleadings(2) 43:23 78:8 | | precise(3) 242:3 | |
| parts(1) 181:22 | | perhaps(2) 187:7 261:8 | | please(30) 11:2 18:10 30:13 37:8 43:5 45:11 49:8 49:14 51:24 58:25 63:11 66:1 69:17 90:12 90:16 90:16 90:22 91:4 127:16 135:3 146:20 153:1 155:1 159:17 232:19 242:9 248:14 249:3 252:8 263:14 | | preclude(1) 201:25 | |
| party(16) 10:42 19:22 60:17 74:13 128:13 155:19 155:19 155:24 160:22 160:22 169:13 172:22 172:23 197:22 219:11 219:17 | | period(8) 57:17 58:13 61:24 62:7 74:12 143:11 190:16 276:7 | | | | preclusion(1) 40:21 | |
| | | | | | | predicate(1) 237:13 | |
| | | | | | | prefer(4) 83:7 257:16 258:5 282:14 | |
| | | periods(2) 56:20 276:15 | | | | preference-recovery(1) 151:21 | |
| parver(1) 2:42 | | permissible(1) 83:3 | | | | prejudiced(1) 88:25 | |
| passu(2) 207:25 209:3 | | permitted(4) 29:21 65:16 84:5 212:24 | | pleasure(1) 42:4 | | preliminary(1) 277:14 | |
| past(4) 193:6 220:5 276:17 276:20 | | pernick(1) 1:34 | | plus(6) 112:4 112:21 113:11 114:22 171:7 171:8 | | prepare(3) 114:21 156:24 230:6 | |
| path(1) 42:13 | | person(2) 66:5 68:8 | | | | prepared(15) 103:6 106:15 112:8 120:1 145:21 149:19 190:4 190:24 191:6 191:8 191:21 192:12 245:18 259:16 283:2 | |
| patricia(1) 92:9 | | person's(1) 82:18 | | | | | |
| paul(1) 7:39 | | personal(1) 13:9 | | point(27) 35:15 63:18 75:1 86:7 88:8 89:16 100:17 103:13 103:19 120:25 148:1 154:11 157:19 172:8 189:25 220:11 223:5 225:1 225:4 245:17 247:2 275:22 276:10 276:23 279:14 280:3 280:4 | | | |
| pause(4) 154:15 184:24 222:16 222:22 | | personally(1) 148:9 | | | | preparing(2) 194:11 245:16 | |
| pay(22) 39:1 114:17 116:17 121:5 126:9 128:15 131:15 131:17 133:3 142:18 149:2 164:25 209:24 209:25 218:17 224:22 232:19 236:24 238:1 239:5 243:12 250:19 | | personnel(2) 52:7 | | | | present(3) 44:7 124:24 217:9 | |
| | | perspective(2) 81:9 167:6 | | | | presentation(2) 19:10 19:11 | |
| | | persuade(3) 144:3 162:11 162:13 | | | | presented(2) 235:1 246:9 | |
| | | peter(2) 9:5 10:26 | | | | preserved(1) 168:17 | |
| | | petition(1) 212:25 | | points(1) 226:8 | | president(1) 13:1 | |
| paying(1) 125:1 | | petrick(1) 195:9 | | | | press(2) 104:7 208:11 | |
| payment(19) 20:10 20:12 20:13 21:7 21:8 21:10 21:13 31:22 31:23 34:20 35:7 37:1 42:20 130:15 130:15 130:19 137:7 213:9 233:9 | | phelps(3) 10:50 102:13 196:20 | | policy(9) 47:20 91:9 148:14 148:16 149:6 149:16 150:1 151:19 270:6 | | presume(1) 282:4 | |
| | | philip(1) 2:23 | | | | pretty(9) 22:17 81:16 119:15 133:22 134:1 149:21 171:17 222:5 279:22 | |
| | | phone(2) 73:10 199:15 | | political(2) 93:9 96:14 | | | |
| | | phones(17) 19:6 21:4 21:12 21:14 84:17 114:20 166:22 167:8 167:19 171:5 197:24 216:6 218:8 218:13 218:15 218:17 218:21 | | polk(2) 2:4 9:4 11:6 87:25 | | | |
| payments(13) 15:1 111:25 131:1 149:10 149:10 149:11 149:17 150:23 151:6 170:10 185:19 207:22 209:15 | | | | pop(1) 153:17 | | prevent(6) 15:5 209:9 209:13 266:4 267:5 267:19 | |
| | | | | portfolio(1) 13:12 | | | |
| | | phrase(2) 101:21 231:1 | | portion(2) 262:25 265:20 | | | |
| | | physics(3) 92:3 92:4 92:7 | | position(20) 12:16 12:20 12:24 15:15 15:20 64:19 64:23 64:24 64:25 65:1 66:1 71:25 78:24 88:18 91:4 91:10 91:16 91:20 100:7 186:15 | | prevented(1) 210:20 | |
| payouts(2) 145:25 205:4 | | pick(1) 118:1 | | | | reviewed(1) 89:13 | |
| peculiar(1) 176:18 | | pickering(2) 6:20 10:33 | | | | previously(2) 97:8 131:17 | |
| pennies(1) 275:4 | | picture(2) 42:10 105:24 | | | | price(6) 24:19 143:6 143:20 143:21 270:24 274:17 | |
| pennock(1) 7:46 | | piece(7) 37:11 65:13 129:4 138:18 149:8 191:15 191:16 | | positions(4) 13:25 91:6 91:11 93:22 | | | |
| pennsylvania(1) 1:43 | | | | possibilities(7) 108:15 121:2 129:20 134:16 223:21 226:14 229:15 | | prices(5) 143:5 143:17 279:4 279:4 279:7 | |
| | | | | | | primofi(1) 2:41 | |
| | | pieces(9) 98:14 155:12 181:12 181:16 191:11 230:24 231:2 233:1 233:3 | | | | princeton(1) 92:3 | |
| | | | | | | principal(3) 14:11 183:9 216:3 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **principally**(5) 110:10 116:10 179:15 186:19 216:1 | | **professor**(83) 85:13 85:16 91:1 91:5 91:7 91:18 91:23 94:22 96:23 100:18 101:6 105:11 106:19 116:2 116:23 118:5 119:16 120:5 122:13 140:6 152:3 154:25 157:17 162:23 170:2 178:2 178:20 179:5 180:3 181:1 183:11 183:19 184:6 187:24 188:3 188:24 192:2 193:13 194:6 195:17 202:15 203:22 205:1 206:19 214:10 217:17 218:2 219:3 220:13 221:11 221:20 223:13 226:10 228:7 233:24 246:20 242:23 248:1 249:5 252:9 253:10 253:22 255:21 257:5 257:16 258:5 258:15 259:11 260:5 261:3 262:10 262:22 266:13 267:8 268:8 270:12 271:6 271:15 271:24 273:5 275:6 282:5 282:9 | | **purpose**(3) 59:9 176:2 199:17 | | **range**(48) 43:2 89:11 103:3 115:9 115:9 116:10 137:4 138:11 138:12 146:2 146:5 146:13 146:14 146:24 147:8 152:14 152:17 154:4 155:9 155:12 155:13 155:22 155:23 156:1 160:13 161:1 161:2 161:4 166:14 166:16 167:25 168:22 169:4 169:11 169:12 169:15 169:22 169:23 173:22 218:22 225:25 235:21 236:14 256:10 256:11 268:24 269:1 |
| **principle**(8) 92:18 93:5 97:24 110:14 149:10 149:18 196:10 196:16 | | | | **purposes**(6) 121:22 175:24 182:11 194:7 269:6 278:13 | | |
| **principles**(1) 95:6 | | | | | | |
| **prior**(24) 12:8 14:16 14:16 52:6 62:15 67:23 67:25 68:19 78:19 91:13 91:20 91:22 91:23 92:1 121:14 121:15 130:19 179:5 179:9 181:17 186:13 195:5 254:17 278:22 | | | | **pursue**(2) 78:15 233:19 | | |
| | | | | **pursued**(1) 77:20 | | **range-plus**(1) 235:23 |
| | | | | **push**(2) 169:4 232:4 | | **ranges**(4) 47:16 225:23 228:4 235:20 |
| **prioritizing**(1) 197:2 | | | | **pushed**(2) 104:20 199:4 | | **ranging**(1) 97:17 |
| **priority**(1) 199:8 | | | | **pushing**(4) 247:10 247:12 247:18 251:24 | | **rapid**(1) 126:1 |
| **privilege**(2) 74:19 74:22 | | | | **put**(62) 32:5 40:24 41:2 49:14 49:25 50:11 77:25 78:5 78:13 87:3 87:4 106:18 106:24 112:11 112:12 113:7 116:24 118:1 118:16 118:25 120:4 122:10 124:22 128:23 129:14 139:8 139:18 141:8 145:23 146:19 148:11 151:10 154:3 157:4 157:24 165:16 166:1 166:1 166:4 170:25 191:11 191:15 197:2 204:8 228:10 228:13 235:21 251:1 252:1 252:2 252:18 252:24 254:21 257:1 259:4 259:25 260:12 261:3 280:17 282:5 283:2 283:12 | | **rate**(8) 166:23 212:10 212:11 212:13 212:14 212:16 212:17 212:19 |
| **privileged**(3) 74:20 74:24 183:25 184:7 | | | | | | |
| **pro-rata**(4) 32:6 79:7 79:9 82:12 | | | | | | **rated**(1) 215:4 |
| **probabilities**(68) 96:5 104:24 116:20 118:7 118:8 118:19 118:22 123:18 128:24 128:24 129:15 129:19 129:25 135:8 136:2 136:14 144:24 146:9 154:9 154:10 155:17 155:14 157:14 157:20 158:4 158:7 159:8 160:9 162:24 163:6 163:16 163:20 166:12 187:9 187:13 187:16 187:17 187:1 188:13 188:20 204:5 213:24 214:25 218:2 220:14 222:12 225:22 226:1 226:4 226:11 227:6 227:7 228:11 229:10 231:5 232:9 234:14 235:19 239:20 242:6 247:8 254:25 255:6 259:25 260:14 | | **proffer**(1) 282:21 | | | | **rath**(3) 3:25 3:27 5:44 |
| | | **profile**(1) 13:8 | | | | **rather**(13) 76:5 83:5 98:12 165:2 200:5 205:22 206:12 210:22 235:21 236:5 239:17 252:24 257:9 |
| | | **profit**(1) 276:19 | | | | |
| | | **profitability**(1) 71:5 | | | | |
| | | **program**(1) 14:6 | | **puts**(4) 122:6 131:6 131:18 148:7 | | |
| | | **projected**(1) 272:13 | | **putting**(4) 145:14 230:12 266:3 267:4 | | **rating**(10) 47:13 47:16 47:21 48:10 50:9 51:10 55:6 55:7 214:24 267:14 |
| | | **projection**(1) 49:13 | | | | |
| | | **projections**(11) 127:1 185:5 202:16 202:20 202:21 202:23 202:25 203:1 238:1 272:1 272:18 272:22 272:24 273:10 273:11 | | **puzzled**(1) 262:19 | | |
| | | | | **qualifications**(1) 180:7 | | **ratings**(3) 49:9 50:2 50:5 |
| | | | | **qualifiers**(2) 234:23 235:15 | | **raymond**(1) 9:34 |
| | | **projects**(1) 272:17 | | **qualifies**(1) 264:20 | | **reach**(9) 42:16 55:14 55:19 65:2 72:6 108:19 127:22 190:18 210:5 |
| **probable**(2) 143:13 145:1 | | **prong**(5) 99:24 176:12 239:5 239:7 239:8 | | **qualify**(1) 202:19 | | |
| **probably**(18) 18:13 24:19 52:19 52:21 59:3 69:1 92:1 100:14 103:2 104:6 109:20 127:11 143:23 153:5 189:16 194:23 283:5 283:8 | | **properly**(2) 256:24 259:4 | | **qualitative**(6) 202:24 228:8 228:18 228:22 230:6 230:10 | | **reached**(17) 20:6 31:2 31:4 31:6 33:3 34:1 34:4 34:12 42:14 54:5 54:18 54:22 72:2 103:10 103:10 190:20 236:4 |
| | | **property**(3) 124:6 124:10 182:10 | | | | |
| | | **proponents**(1) 11:8 11:18 44:16 170:6 183:16 | | **qualitatively**(2) 176:8 231:24 | | **reaching**(1) 163:17 |
| **problem**(4) 249:15 279:23 282:1 283:18 | | | | **quality-checked**(1) 246:22 | | **reaction**(2) 171:11 175:4 |
| **problems**(2) 89:8 96:8 | | **proposal**(2) 63:8 141:15 | | **quandary**(1) 148:17 | | **read**(31) 23:19 36:18 63:11 69:23 84:24 97:23 97:23 98:5 117:25 176:25 180:9 181:23 184:18 186:4 186:11 197:2 197:3 198:3 198:4 198:5 199:2 199:6 222:12 222:21 263:12 264:8 264:23 266:11 267:22 267:24 273:23 |
| | | **propose**(2) 17:8 44:16 | | **quantitative**(2) 96:2 156:7 | | |
| | | **proposed**(6) 63:15 64:6 88:14 179:22 181:6 181:11 | | **quarterly**(1) 49:10 | | |
| **proceed**(4) 88:11 101:3 153:24 154:2 | | | | **question**(75) 25:16 25:17 29:16 29:23 29:24 30:11 30:12 30:19 30:20 43:19 59:10 59:11 59:15 62:6 75:13 77:1 80:10 80:12 80:13 81:17 108:21 109:14 117:12 118:24 119:3 119:13 126:4 127:8 127:9 140:20 140:21 145:9 155:14 161:10 174:6 174:8 174:17 175:22 177:3 177:14 177:17 177:25 188:10 188:12 192:4 194:7 202:25 205:1 206:19 210:5 211:24 214:10 217:5 219:3 228:6 233:18 239:19 241:20 247:9 248:6 249:18 263:5 265:6 266:9 266:9 266:23 266:7 267:10 267:10 267:12 268:2 273:1 278:1 280:18 281:23 | | **reading**(5) 43:23 93:13 98:7 235:4 235:5 |
| **proceeded**(2) 111:2 153:25 | | **prospect**(1) 274:20 | | | | **reads**(1) 49:8 |
| **proceedings**(6) 1:17 1:47 39:15 196:24 284:3 284:8 | | **prospects**(1) 70:25 | | | | **ready**(4) 69:24 83:18 87:9 89:3 |
| | | **protect**(2) 109:25 131:3 | | | | **real**(10) 14:4 14:6 18:25 135:20 141:9 150:17 157:4 163:22 190:21 247:9 |
| | | **protected**(36) 74:12 164:21 164:23 165:5 165:6 165:11 171:16 171:23 172:6 172:14 172:15 172:19 173:6 173:13 175:21 175:24 175:24 176:9 206:7 206:10 206:11 206:13 209:21 210:6 210:13 211:3 211:12 212:20 213:13 215:19 215:19 215:22 216:4 216:7 216:9 216:12 | | | | **reallocated**(2) 260:23 260:24 |
| **proceeds**(7) 32:6 32:8 34:21 34:23 34:25 153:7 269:19 | | | | | | **reallocation**(1) 254:7 |
| | | | | | | **really**(82) 15:7 26:9 27:16 36:20 37:2 38:14 38:18 39:25 40:1 40:4 42:7 42:15 43:25 50:13 51:1 51:19 51:22 52:15 57:6 60:22 67:5 68:3 69:2 71:4 73:1 73:6 74:1 80:25 84:25 85:1 92:7 99:11 100:1 102:5 116:1 117:12 121:12 124:2 127:6 127:7 128:11 128:16 133:2 135:16 140:7 144:5 147:6 147:14 147:15 150:22 151:11 151:18 153:8 156:16 160:13 160:14 160:21 162:12 163:12 166:7 169:16 169:20 173:19 177:2 177:6 177:7 177:8 182:24 187:11 197:6 198:4 199:3 199:4 218:1 234:3 234:11 244:5 244:6 244:12 260:18 262:6 265:15 283:12 |
| **process**(14) 97:1 98:3 102:2 103:10 116:3 144:12 155:8 192:21 195:4 195:11 229:21 231:20 231:21 239:17 | | | | | | |
| | | **protection**(1) 143:21 | | **questions**(26) 28:6 28:8 28:10 30:1 38:21 39:5 56:3 69:24 78:23 79:19 81:4 83:20 98:6 149:25 179:19 180:17 182:24 184:22 185:12 247:7 248:4 248:10 248:13 261:23 268:7 281:21 | | |
| | | **protections**(1) 95:13 | | | | |
| | | **protects**(1) 74:19 | | | | **realm**(2) 5:19 169:21 |
| **produced**(3) 1:48 220:18 221:12 | | **proud**(1) 94:19 | | | | **reason**(14) 52:2 67:10 109:18 135:22 136:9 161:20 166:13 183:23 199:24 200:13 219:8 221:14 236:25 269:14 |
| **product**(4) 89:1 183:25 184:7 228:22 | | **provide**(4) 96:19 177:11 228:3 270:17 | | **quick**(4) 157:5 183:23 253:7 260:2 | | |
| **productive**(1) 260:10 | | **provided**(14) 20:12 31:20 31:22 34:6 37:21 49:11 49:12 75:23 76:14 77:2 85:2 159:1 183:20 186:17 | | **quickly**(6) 22:6 136:16 259:24 260:8 271:16 281:12 | | |
| **prof**(1) 9:34 | | | | **quite**(13) 64:24 80:18 89:8 89:8 93:10 104:20 146:6 167:2 187:21 197:4 200:4 219:24 277:19 | | **reasonable**(27) 22:5 100:3 103:4 104:14 104:14 105:21 113:14 122:7 122:11 125:16 126:7 126:9 148:18 179:23 180:16 190:7 190:25 191:7 191:10 191:11 192:13 236:11 246:4 256:11 257:22 269:15 274:3 |
| **professional**(1) 148:23 | | **provides**(7) 34:20 35:18 35:21 79:5 81:4 214:4 237:7 | | | | |
| **professionally**(1) 148:25 | | | | **quote**(4) 264:18 266:24 273:8 273:19 | | |
| | | **providing**(6) 77:2 271:3 278:22 | | **qureshi**(1) 2:25 | | |
| | | **provision**(6) 21:13 79:3 79:5 79:6 79:13 79:17 | | **radically**(1) 114:3 | | **realm-based**(1) 203:5 |
| | | | | **raise**(5) 82:22 90:13 162:3 211:24 281:25 | | |
| | | **provisions**(1) 97:10 | | **raised**(9) 29:19 98:5 109:21 130:6 166:20 168:3 253:1 253:4 281:5 | | |
| | | **public**(1) 92:19 | | | | |
| | | **publicly**(2) 48:6 148:20 | | | | |
| | | **publish**(3) 94:12 156:17 156:18 | | **raising**(1) 99:17 | | |
| | | **published**(2) 93:8 94:16 | | **ramifications**(1) 174:5 | | |
| | | **publisher**(4) 68:7 68:25 70:22 282:24 | | **ran**(1) 212:10 | | |
| | | **publishing**(9) 94:13 94:14 94:21 125:24 125:25 271:25 273:12 | | **randy**(2) 66:9 66:10 | | |
| | | | | | | |
| | | **pull**(8) 129:8 131:22 133:19 144:18 169:12 234:6 247:6 268:3 | | | | |
| | | | | | | |
| | | **purchase**(1) 273:10 | | | | |
| | | **purported**(1) 88:21 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**reasonableness**(16) 89:11 100:19 101:12 101:15 105:14 110:18 115:23 126:25 161:1 164:8 166:3 168:25 178:4 185:5 202:16 203:1

**reasonably**(24) 131:6 131:18 136:24 137:1 137:1 137:3 138:10 139:17 205:18 206:22 225:21 234:20 235:13 236:7 236:10 236:13 240:19 250:25 265:25 266:3 266:25 267:7 267:13 267:14

**reasonably-equivalen**(1) 233:13

**reasons**(7) 64:9 64:13 64:14 161:14 170:24 247:17 255:5

**reassess**(2) 122:17 123:13
**reassessed**(1) 122:18
**reassigned**(1) 260:1
**rebuttal**(5) 194:18 194:20 209:8 246:25 276:14

**recall**(29) 18:15 23:17 38:5 48:10 48:12 50:13 54:23 58:22 59:24 62:13 77:16 78:25 79:21 79:25 81:4 158:24 185:6 185:10 185:14 185:15 209:22 223:16 224:7 238:21 244:3 276:13 276:16 277:15 278:17

**recalling**(2) 214:8 214:12
**recast**(1) 256:1

**receive**(2) 89:18 115:24 154:20 154:21 223:3 223:5

**recession**(5) 276:11 276:12 276:22 276:25 277:1

**recessions**(3) 125:16 276:18 276:21
**recipient**(1) 18:7
**recognize**(1) 184:2
**recognized**(1) 94:18
**recognizing**(1) 138:18
**recollection**(34) 19:9 19:15 19:22 21:4 27:16 28:21 29:5 34:7 37:20 40:5 41:18 50:8 51:13 52:15 53:2 54:21 57:23 58:20 60:6 62:12 62:14 64:8 66:14 66:21 67:1 67:5 68:25 71:15 71:18 74:1 186:22 191:14 251:11 268:22

**reconcile**(1) 152:19
**reconvene**(1) 89:20
**record**(20) 62:21 70:11 74:14 86:2 88:5 90:18 103:14 103:17 127:23 141:11 141:11 150:15 180:9 183:15 184:6 205:1 218:6 262:6 264:8 264:24

**record's**(1) 257:22
**recorded**(1) 1:47
**recording**(4) 1:47 242:10 248:15 284:7
**record's**(1) 99:2
**recounting**(1) 196:15
**recover**(11) 80:3 113:10 114:13 114:13 149:13 162:9 165:12 209:21 209:23 209:22 269:25

**recoverable**(1) 149:13
**recovered**(3) 112:21 276:16 276:21

**recoveries**(70) 37:23 79:12 79:13 84:6 101:18 101:23 102:25 106:22 110:20 110:23 111:7 111:11 113:18 113:19 114:8 114:14 114:16 114:22 115:3 115:12 115:1 115:22 115:24 119:2 123:17 131:24 140:7 145:8 146:1 146:12 146:17 146:22 147:3 147:16 153:15 155:4 155:19 155:19 155:24 159:24 160:22 160:23 162:2 163:11 165:17 167:20 168:17 169:13 172:22 172:23 173:19 173:25 175:18 175:19 186:16 186:18 203:25 204:19 204:20 204:20 207:6 219:16 219:17 261:7 265:19 266:2 266:5 267:3 267:6 269:10

**recovers**(1) 106:3
**recovery**(56) 35:22 35:23 36:3 37:7 37:19 39:15 39:16 39:17 39:19 39:23 40:11 41:14 79:7 82:17 82:22 82:23 84:14 85:6 107:25 111:9 112:9 113:13 115:21 118:25 127:4 127:8 145:1 145:1 145:20 148:5 150:2 151:7 152:5 162:5 162:15 164:6 164:9 165:14 165:23 172:10 172:11 172:2 173:11 175:22 176:3 176:10 176:24 177:12 191:9 205:6 208:21 209:16 213:3 213:21 214:5 219:11

**recross**(3) 83:11 83:21 285:3
**recuse**(2) 16:9 16:12
**recused**(1) 17:22
**red**(3) 28:6 154:1 260:12
**redirect**(8) 77:10 77:11 83:23 216:25 279:13 279:16 283:3 285:3

**redline**(4) 252:9 262:14 262:19 262:21
**reduce**(3) 163:18 245:3 276:9
**reduced**(4) 31:9 33:11 244:24 252:19
**refer**(7) 101:20 106:5 109:15 123:10 184:21 189:21 240:2

**reference**(5) 50:19 55:5 55:16 171:6 173:23 195:19 263:6

**referenced**(1) 109:15
**referred**(8) 31:17 33:21 122:13 147:20 196:10 216:1 249:6 272:17

**referring**(6) 48:18 50:3 123:16 158:4 186:9 271:14

**refers**(1) 121:11
**reflect**(6) 63:20 88:21 103:18 134:13 136:3 252:10

**reflected**(3) 32:19 113:5 144:16
**reflects**(2) 228:24 229:25
**reform**(1) 92:1
**refresh**(10) 50:8 66:13 66:21 67:1 67:5 68:25 71:15 71:18 186:22 251:10

**refuse**(1) 148:18
**regard**(6) 55:19 86:13 97:11 104:17 191:25 193:24

**regarding**(6) 16:17 168:25 235:1 235:7 238:13 280:8

**regressions**(1) 156:14
**reinforce**(1) 170:21
**reinforced**(1) 169:3
**relate**(4) 106:23 136:17 261:23 280:18
**related**(6) 18:22 75:3 80:11 138:19 139:5 265:15

**relates**(1) 44:15
**relative**(8) 104:21 136:19 138:3 156:1 247:10 247:13 247:16 247:18

**relatively**(2) 170:24 250:22
**release**(2) 44:16 191:5

**released**(1) 245:25
**releases**(4) 39:6 39:10 39:12 150:25
**releasing**(1) 151:1
**relevant**(13) 93:18 95:9 97:10 108:8 109:3 117:21 123:5 125:12 168:16 181:7 182:2 215:22 222:14

**relied**(2) 185:25 186:14
**relief**(1) 281:15
**rely**(1) 193:21
**relying**(4) 186:19 186:20 186:21 196:15 196:25 219:23

**remaining**(6) 34:25 65:21 65:22 65:24 65:25 219:23

**remains**(1) 169:11
**remedy**(8) 168:21 174:4 175:1 175:7 175:13 210:7 219:0 264:1

**remember**(60) 19:2 19:5 23:7 30:12 43:16 45:3 45:24 46:6 51:6 51:6 51:19 51:20 51:22 54:15 54:17 55:18 55:21 58:23 60:2 60:4 64:11 66:7 66:10 66:12 67:9 67:12 67:24 67:25 69:2 69:8 72:11 72:17 72:20 72:22 73:1 73:3 73:7 73:10 73:18 73:19 73:23 73:24 74:4 75:8 105:16 144:8 147:2 170:10 175:19 176:11 185:16 187:18 189:1 210:7 234:2 235:4 235:5 248:7 277:3 277:10

**remembering**(8) 99:4 184:18 186:16 186:18 211:11 248:6 248:10 248:12

**remind**(3) 132:24 135:2 281:4
**remodeled**(1) 256:16
**remote**(1) 264:1
**reorganization**(1) 21:18
**reorient**(1) 123:16
**repayment**(1) 34:24
**repeat**(2) 30:13 280:25
**repeating**(1) 101:21
**rephrase**(2) 145:9 145:10
**replaced**(1) 104:10
**reply**(1) 98:5
**report**(143) 13:18 13:21 23:16 23:20 23:23 24:16 24:23 26:17 48:6 72:24 73:24 73:25 78:5 85:24 86:17 88:7 88:8 88:10 88:23 94:15 98:8 98:25 103:6 103:9 103:18 103:19 103:25 104:4 104:8 104:12 104:13 104:14 104:17 107:8 107:10 112:1 117:21 117:25 124:21 127:6 142:19 145:24 146:21 147:20 148:20 158:21 158:12 158:22 158:25 161:15 166:21 180:2 181:14 181:16 181:17 186:10 186:14 188:5 190:12 190:17 194:6 194:11 194:18 194:20 194:20 194:23 195:5 195:1 196:6 196:9 197:13 198:22 205:5 227:12 209:8 221:13 224:9 225:19 225:25 227:12 228:15 230:14 234:24 235:3 235:6 237:19 239:25 240:3 240:4 240:7 245:12 245:16 245:19 245:22 245:24 246:9 246:11 246:1 246:20 247:1 252:3 252:9 252:13 252:14 253:22 254:6 259:1 259:17 260:7 261:12 261:13 261:15 261:16 261:22 262:11 262:12 262:13 262:22 262:25 263:16 262:2 264:15 264:18 264:25 265:3 265:11 265:12 265:21 266:23 267:22 267:25 268:2 269:6 269:11 269:13 271:3 272:10 274:1 274:19 276:14 279:9 285:17

**reporting**(3) 48:3 50:22 263:21
**reports**(2) 88:13 282:19
**represent**(5) 43:10 68:22 118:3 226:24 254:8

**representation**(4) 185:8 197:14 260:1 271:18

**representatives**(2) 29:11 30:16
**represented**(1) 254:17

**representing**(1) 11:7
**represents**(1) 118:2
**reputation**(1) 201:25
**request**(2) 18:7 280:25
**requested**(1) 18:3
**requests**(4) 16:23 18:3 18:8 18:12
**require**(2) 182:25 269:25
**requirements**(1) 48:3
**requires**(1) 47:20
**research**(15) 91:9 93:7 93:20 94:1 96:2 96:3 96:12 96:14 98:6 149:1 156:7 156:7 180:15 181:25 193:21

**reserve**(3) 38:8 38:9 38:11
**resolving**(1) 85:19
**respect**(37) 24:2 25:6 26:7 46:2 48:6 57:3 57:7 79:12 81:10 84:9 85:16 108:13 129:19 139:19 145:2 154:6 189:20 202:20 202:21 204:18 209:1 209:14 210:16 210:18 211:18 212:7 219:3 230:19 239:24 243:11 263:7 263:17 263:23 265:4 272:9 281:3 281:14

**respecting**(1) 212:2
**respond**(2) 55:11 55:12
**response**(10) 18:11 36:7 74:25 77:9 89:19 103:22 104:22 198:3 283:17 283:25

**responsibilities**(1) 13:10
**responsibility**(2) 13:13 14:11
**responsive**(1) 78:9
**rest**(7) 85:1 111:23 140:2 147:11 153:18 234:14 279:21

**restrict**(1) 76:4
**restructuring**(1) 201:12
**result**(21) 22:16 31:2 31:6 32:13 34:1 49:10 78:4 156:16 156:19 185:20 205:19 207:23 213:8 213:21 218:25 232:21 241:9 241:21 243:3 243:4 274:15

**results**(9) 49:10 112:9 156:17 158:18 188:7 206:23 272:5 272:6 272:20

**resume**(2) 220:10 280:13
**resumed**(1) 154:23
**retain**(3) 17:20 66:5 66:11
**retained**(14) 17:16 17:17 17:17 53:6 53:9 53:12 99:2 99:8 100:10 100:13 189:6 189:19 270:16 270:20

**rethink**(2) 251:25 252:22
**rethinking**(1) 252:17
**rethought**(1) 104:23
**return**(11) 55:22 57:25 58:3 58:7 58:17 58:23 59:20 59:22 60:1 60:23 82:1

**returning**(2) 34:10 54:24
**revenue**(1) 272:12
**revenues**(2) 273:15 276:18
**review**(14) 53:18 78:8 78:8 88:19 183:21 184:24 184:25 195:5 195:7 195:12 195:23 196:5 196:18 267:13

**reviewed**(15) 181:18 185:1 194:11 194:13 194:19 195:2 196:1 196:8 196:9 196:21 197:24 198:8 198:9 277:11

**reviewing**(2) 71:19 181:21
**reviews**(1) 94:14
**revise**(2) 55:3 55:8
**revised**(19) 49:12 50:7 85:24 188:5 202:22 204:5 245:12 247:24 252:3 252:13 253:22 254:6 254:12 254:14 254:18 261:15 261:19 262:11 268:4

**revising**(2) 55:5 55:7
**revision**(1) 262:14
**revolver**(1) 164:25
**rich**(2) 35:11 42:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| richards(2) 2:12 9:10 | | roughly(9) 32:1 32:7 32:9 35:1 37:21 82:2 242:4 250:5 279:3 | | saying(19) 55:8 58:22 60:6 107:1 128:16 138:12 138:15 148:20 151:18 153:18 170:22 176:21 202:19 210:9 211:1 212:15 241:5 251:12 274:9 | | sea(2) 221:15 221:16 | |
| ridiculously(1) 116:21 | | | | | | search(1) 276:5 | |
| rifkind(1) 7:39 | | round(1) 149:9 | | | | seated(2) 11:2 90:16 | |
| right(234) 28:6 28:17 36:11 42:22 44:20 45:1 45:21 46:8 46:16 46:22 47:5 47:14 47:22 47:25 49:6 49:19 49:23 49:24 50:23 51:1 52:9 52:25 53:4 53:14 53:20 54:5 54:10 54:13 55:20 56:1 56:7 56:17 57:12 57:21 57:21 58:1 58:8 61:3 61:10 61:13 61:21 62:1 62:11 62:18 63:8 64:3 64:5 64:3 64:7 64:16 65:17 66:6 67:13 67:14 67:19 68:9 68:12 68:14 70:5 71:13 73:5 75:11 75:15 75:17 75:21 75:24 76:25 77:5 77:6 77:10 83:18 84:1 85:11 88:3 88:6 90:11 90:13 96:15 96:17 96:22 101:2 104:15 106:1 107:24 113:3 113:4 114:9 118:8 118:13 121:14 125:15 126:14 128:21 128:22 128:23 128:25 129:18 130:16 131:13 132:9 133:23 134:21 134:25 135:1 139:11 140:12 140:17 140:18 141:2 142:11 142:20 144:6 144:7 146:4 146:5 146:13 151:5 152:9 152:10 154:12 155:6 155:9 161:9 161:22 163:25 167:5 168:8 170:14 170:17 172:1 172:12 173:20 175:6 175:14 176:10 177:25 179:7 181:3 183:4 184:10 185:3 186:2 187:18 188:11 193:16 193:19 194:3 194:14 197:21 197:22 198:2 200:22 201:10 203:12 204:20 204:26 206:18 207:8 209:11 209:18 213:17 214:9 214:16 215:5 215:11 215:13 215:24 215:24 215:25 217:4 218:15 219:5 222:25 225:3 225:6 226:3 227:18 228:18 229:4 230:5 230:24 231:3 231:24 233:1 238:17 240:5 240:13 240:24 243:3 243:19 243:25 248:14 249:5 249:6 249:13 249:16 249:17 249:18 249:20 250:23 251:2 251:5 251:18 252:7 252:16 252:18 255:12 256:17 258:1 260:14 261:2 261:11 267:3 267:15 268:6 269:6 269:24 270:21 272:18 272:25 273:1 273:21 274:23 274:24 275:11 275:20 275:25 277:8 277:20 277:8 280:2 283:5 283:23 | | | | | | sec(1) 92:14 | |
| | | route(12) 109:5 114:5 122:2 162:8 162:9 162:11 165:14 177:9 213:3 214:5 214:14 240:11 | | | | second(45) 33:7 33:14 37:6 37:12 37:16 37:20 38:1 48:19 59:3 63:13 63:18 74:9 75:10 75:17 76:21 86:1 94:2 104:10 122:3 122:14 123:1 123:4 123:15 124:2 124:23 136:10 136:12 140:5 147:17 149:8 153:8 154:2 154:5 160:25 162:8 164:9 164:10 165:13 176:12 191:4 191:15 192:11 224:6 224:12 | |
| | | routes(4) 139:3 139:5 170:9 237:10 | | says(39) 50:11 62:23 63:19 79:6 111:22 117:25 118:1 121:8 130:10 130:24 134:10 135:5 137:13 137:21 137:23 138:2 138:9 141:18 148:8 150:9 164:5 168:10 181:21 183:12 184:15 188:16 220:23 221:1 234:1 234:20 235:2 236:3 236:10 236:22 264:5 264:6 265:16 271:7 276:1 | | | |
| | | row(3) 112:23 113:5 113:8 | | | | | |
| | | royal(2) 9:26 9:26 | | | | | |
| | | rucker(1) 196:19 | | | | | |
| | | rudnick(1) 7:29 | | | | | |
| | | rule(2) 67:18 195:17 | | | | seconds(1) 257:14 | |
| | | ruler(1) 181:4 | | scad(1) 92:10 | | secret(3) 52:6 52:10 126:3 | |
| | | run(10) 112:17 156:11 171:4 172:13 173:20 176:11 212:1 212:6 224:2 283:13 | | scale(4) 240:20 240:22 240:23 241:1 | | section(7) 95:12 130:23 181:8 216:13 222:14 237:5 266:23 | |
| | | | | scenario(149) 107:12 107:13 107:19 107:25 108:1 108:11 108:11 108:13 108:22 108:24 108:25 109:1 109:6 109:13 110:10 110:11 110:17 110:20 110:21 110:22 112:22 113:2 113:12 113:15 113:23 114:4 115:10 115:13 115:19 117:14 119:3 119:4 119:5 119:5 125:8 126:12 127:3 127:17 128:23 129:7 129:7 129:8 131:10 132:2 133:22 134:17 135:11 138:6 139:13 139:17 139:18 139:25 140:8 144:17 144:19 145:20 160:11 160:14 161:19 162:3 162:4 162:10 162:21 163:17 163:17 163:19 163:21 163:23 163:24 163:25 164:10 165:22 167:16 168:15 168:16 168:18 171:12 172:7 172:12 172:11 173:11 173:12 175:4 176:7 176:9 177:11 205:6 205:19 206:3 206:5 206:6 206:21 206:23 207:3 207:7 207:16 207:16 207:19 208:6 209:11 210:2 210:6 210:24 211:22 211:7 211:14 211:17 211:19 212:4 212:7 213:11 213:12 214:9 214:13 215:17 216:3 216:5 216:8 217:13 218:16 218:19 227:18 228:21 229:23 233:25 234:1 234:2 234:4 234:5 234:7 234:9 234:9 240:9 247:11 248:3 248:22 248:23 249:22 251:10 251:1 252:19 253:1 253:6 253:6 255:9 255:17 256:12 | | | | |
| | | running(6) 96:3 96:4 96:11 155:14 156:14 156:21 | | | | | |
| | | | | | | see(83) 28:12 45:14 48:16 48:19 48:21 49:15 50:8 50:17 51:3 52:3 53:6 55:3 55:14 60:8 62:18 62:22 62:24 63:3 63:16 63:23 69:20 71:7 71:9 87:11 94:15 105:11 111:8 112:13 112:24 113:17 115:17 116:19 117:2 119:22 121:9 122:8 122:9 126:13 128:16 132:11 132:22 133:8 134:8 135:8 136:17 139:8 140:25 144:23 146:2 146:7 150:22 152:6 155:22 155:25 156:16 158:10 163:12 166:5 166:13 173:19 187:4 188:24 189:3 214:15 217:19 220:11 221:1 222:8 266:7 267:12 273:13 273:14 275:8 278:5 278:8 282:3 282:15 | |
| | | runs(3) 92:21 133:8 135:7 | | | | | |
| | | rush(1) 191:19 | | | | | |
| | | rushabh(1) 9:52 | | | | | |
| | | russia(1) 91:25 | | | | | |
| | | russian(1) 92:1 | | | | | |
| | | s-esop(6) 124:7 124:7 124:25 125:3 142:3 153:4 | | | | | |
| | | | | | | | |
| | | s-esops(1) 124:10 | | | | seeing(2) 101:6 277:15 | |
| | | saavedra(1) 8:42 | | | | seek(1) 39:9 | |
| | | sachs(2) 7:35 7:35 | | | | seeking(3) 60:17 174:3 270:24 | |
| right-hand(1) 114:7 | | safe(1) 182:4 | | | | seemed(1) 154:4 | |
| rise(3) 40:8 40:12 74:8 | | said(73) 42:19 43:18 45:20 51:18 54:1 59:25 69:2 71:12 72:1 74:16 77:3 78:7 78:11 104:13 111:15 111:21 115:4 117:20 124:13 124:19 137:3 137:6 137:7 137:11 139:11 140:6 141:5 141:15 141:19 141:23 142:1 150:16 152:19 154:8 157:13 157:19 159:18 186:24 187:1 189:3 189:4 189:20 198:18 199:2 199:3 199:4 200:2 201:8 205:10 206:8 210:15 212:19 213:18 219:14 227:14 229:17 232:1 232:16 235:22 236:7 236:9 237:3 240:19 240:25 243:1 243:14 246:14 264:4 274:19 276:6 278:6 278:8 | | | | seems(12) 50:12 55:8 59:10 67:3 68:3 69:5 127:21 140:19 150:2 187:21 223:1 239:7 | |
| rises(1) 40:4 | | | | | | | |
| risk(12) 13:4 13:7 46:19 47:13 50:9 50:15 50:22 55:7 93:3 93:3 149:25 151:25 | | scenarios(81) 106:5 106:6 106:7 106:13 106:16 106:21 106:23 107:2 107:10 108:2 109:16 109:16 110:9 110:17 110:24 111:7 111:9 111:12 111:24 112:17 112:19 112:22 113:6 114:5 115:15 115:6 115:7 116:4 118:13 118:16 118:18 119:1 129:20 133:9 134:24 136:20 144:25 145:7 146:25 155:1 160:6 161:8 161:17 164:1 164:22 168:15 172:12 172:25 175:20 185:20 204:1 205:1 205:10 205:11 205:15 205:18 205:22 206:9 206:12 206:16 206:16 207:13 215:22 216:5 216:9 217:8 217:11 217:24 218:24 219:6 220:15 226:12 226:15 227:1 227:4 247:14 247:20 248:5 251:25 260:5 | | seen(1) 148:10 | |
| | | | | | | seife(2) 3:15 5:34 | |
| | | | | | | seiler(1) 8:20 | |
| | | | | | | select(2) 17:6 65:16 | |
| | | | | | | selected(4) 15:21 66:1 206:20 208:20 | |
| road(11) 125:16 127:19 142:15 142:16 142:17 164:9 164:10 164:11 177:11 202:6 213:2 | | | | | | selection(1) 17:3 | |
| | | | | | | sell(1) 125:2 | |
| | | | | | | selling(1) 39:7 | |
| | | | | | | sending(1) 101:23 | |
| | | | | | | sends(2) 114:11 114:15 | |
| roadblock(2) 214:6 214:14 | | | | | | | |
| roadblocks(1) 213:18 | | | | | | senior(34) 19:11 19:15 20:5 20:10 21:3 22:11 27:25 31:3 32:7 32:9 34:20 35:1 35:2 35:8 37:6 37:16 38:14 40:2 40:3 40:7 60:18 60:20 60:22 62:4 65:16 65:20 68:16 76:25 80:12 82:6 82:21 84:14 84:18 117:7 | |
| roads(2) 144:6 239:3 | | | | | | | |
| robert(5) 3:17 6:33 7:32 9:35 10:37 | | satisfied(1) 42:17 | | schedule(3) 279:21 279:22 282:3 | | | |
| robust(3) 156:16 156:18 156:19 | | satisfying(1) 232:11 | | scheduling(1) 282:1 | | | |
| robustness(6) 155:15 156:12 156:21 158:18 207:15 212:19 | | saturday(2) 191:23 191:25 | | scholar(3) 200:23 201:1 201:5 | | | |
| | | savings(1) 124:25 | | scholars(2) 93:7 96:18 | | | |
| | | saw(7) 60:16 61:1 61:4 76:1 224:10 227:17 270:4 | | scholer(2) 2:40 10:20 | | sense(17) 29:18 32:22 44:18 65:11 65:12 85:12 87:15 113:20 132:11 141:24 156:15 184:20 195:16 201:11 235:14 279:21 282:6 | |
| rochester(1) 8:15 | | | | school(13) 12:4 12:5 91:7 91:7 91:17 91:18 91:22 92:4 92:8 92:8 178:22 178:24 179:3 | | | |
| rockefeller(1) 3:21 | | | | | | | |
| rodney(1) 2:14 | | | | | | senses(4) 108:8 109:3 123:6 227:23 | |
| rog(1) 47:1 | | say(81) 32:11 36:18 55:2 59:7 59:22 69:11 69:19 81:1 98:10 104:20 108:2 108:16 109:7 109:22 110:2 117:6 118:5 118:18 123:4 130:5 133:7 133:12 136:6 142:11 146:11 148:16 149:20 150:10 150:16 151:17 152:13 153:3 156:19 158:6 159:20 168:1 169:1 169:3 172:14 172:24 173:3 173:17 176:16 183:24 184:7 185:22 190:24 191:6 191:8 192:13 193:11 209:23 217:25 220:4 222:19 224:14 227:21 232:18 234:18 237:12 237:15 237:17 237:19 238:8 238:1 240:7 240:15 241:4 242:7 243:6 245:1 246:11 247:10 250:3 252:21 257:23 273:1 274:7 275:13 278:4 281:6 | | schotdil(1) 95:4 | | sensitive(2) 28:12 86:15 | |
| rogers(1) 9:27 | | | | schott(1) 9:31 | | sensitivities(4) 89:10 89:14 156:4 210:16 | |
| roitman(1) 5:30 | | | | schotz(1) 1:32 | | sensitivity(32) 86:16 87:3 88:21 155:15 155:21 156:12 156:25 157:11 157:13 157:20 158:6 158:11 158:12 158:23 159:2 159:5 160:17 164:13 164:17 164:18 165:13 166:4 168:23 169:10 169:19 169:20 173:2 173:17 175:17 208:14 209:7 268:9 | |
| role(7) 16:2 19:10 19:19 47:7 67:22 68:20 69:15 72:3 | | | | schuylkill(1) 1:42 | | | |
| | | | | schwartz(1) 9:35 | | | |
| | | | | schwinger(1) 3:17 | | | |
| roles(1) 13:5 | | | | science(3) 93:6 93:9 96:14 | | | |
| rolled(1) 86:19 | | | | scope(1) 53:23 | | | |
| rome(1) 5:11 | | | | scotland(2) 9:26 9:26 | | | |
| room(1) 189:13 | | | | scott(2) 7:36 10:30 | | | |
| rose(1) 41:13 | | | | screen(11) 112:13 120:4 132:8 223:7 247:6 253:19 257:6 257:13 257:17 258:6 259:13 | | sent(3) 49:1 86:2 146:23 | |
| rosenblatt(1) 3:16 | | | | | | sentence(6) 180:9 235:5 265:21 265:23 273:18 273:22 | |
| rosenman(1) 10:38 | | | | | | | |
| rosner(1) 10:17 | | | | | | | |
| rough(4) 138:5 196:11 196:23 242:3 | | | | | | | |
| rough-draft(1) 245:19 | | | | | | | |

| Word | Page:Line |
|---|---|

**separate**(13) 76:16 77:4 93:21 95:12 122:1 139:3 148:25 226:18 238:18 240:15 252:25 264:23 265:1

**separately**(6) 122:3 150:24 174:22 202:20 228:13 243:24

**september**(15) 32:19 36:23 36:25 37:3 38:4 38:7 38:12 62:23 64:11 64:15 79:16 83:25 191:13 192:7 246:2

**serengeti**(2) 8:44 8:45
**series**(5) 97:15 109:21 184:22 248:10 279:7
**serious**(7) 38:20 109:9 131:8 154:5 203:6 203:10 203:11

**serve**(2) 13:5 15:21
**served**(7) 88:7 103:18 104:4 252:4 252:10 253:23 253:23

**service**(5) 1:41 1:48 278:2 278:4 278:24
**services**(1) 1:41
**serving**(2) 16:3 16:8
**sesop**(4) 253:14 258:19 258:19 259:16
**session**(3) 18:25 28:22 281:1
**sessions**(4) 29:9 30:14 62:8 96:19
**set**(26) 38:9 50:2 50:6 58:12 71:6 90:8 90:10 102:1 118:2 118:21 126:9 129:19 157:11 163:16 184:3 194:10 221:12 224:8 224:9 253:23 254:24 256:20 256:21 256:25 256:25 275:15

**sets**(3) 203:24 204:4 258:17
**setting**(5) 59:10 76:23 116:10 155:3 234:13
**settle**(15) 19:14 32:22 34:8 38:4 65:9 65:10 95:24 116:9 116:18 133:3 133:6 135:6 148:16 148:22 148:24

**settled**(18) 20:11 20:19 32:4 32:11 32:12 32:12 32:14 32:16 35:7 37:10 38:2 64:15 64:16 75:11 75:15 116:7 270:1 270:3

**settlement**(207) 19:16 20:7 20:9 20:17 20:18 20:21 21:1 21:6 21:12 21:14 21:14 21:17 22:1 22:5 22:18 23:23 24:3 24:5 24:17 24:20 25:5 25:7 25:13 26:7 26:8 26:10 26:14 26:22 27:3 27:5 27:6 27:7 27:10 27:13 28:1 29:5 31:2 31:6 31:9 31:20 32:3 32:13 32:23 33:4 33:6 33:7 33:11 33:25 34:4 34:6 34:10 34:18 35:6 35:9 35:15 35:18 35:19 37:1 37:5 37:20 37:25 39:3 41:20 41:25 42:1 42:13 42:16 42:18 56:17 56:25 58:14 60:21 61:2 61:7 61:10 61:13 61:16 61:23 62:7 63:9 63:21 63:21 63:22 63:25 64:1 64:4 64:5 64:6 64:10 64:15 65:12 67:25 67:25 72:15 72:22 73:9 74:5 76:14 79:11 81:5 81:11 95:21 100:8 100:10 100:20 101:13 101:16 103:4 105:14 110:18 113:1 113:14 113:21 116:7 116:10 116:12 116:15 116:25 117:16 117:19 117:22 119:2 124:13 133:5 145:7 145:16 145:25 146:2 146:13 146:24 147:1 147:3 147:8 148:3 148:4 148:18 151:17 152:4 152:14 152:17 155:5 155:5 155:22 155:23 155:24 156:1 160:13 161:4 164:6 165:10 166:10 166:11 166:13 166:16 167:25 168:22 169:2 169:4 169:11 169:12 169:15 169:22 169:23 169:25 171:1 171:2 173:15 173:22 178:5 178:6 178:8 179:10 179:12 179:15 181:6 181:11 181:14 181:22 184:13 184:15 190:7 190:18 190:21 190:25 191:1 191:4 192:1 197:21 204:19 231:22 231:22 232:4 246:3 256:10 256:11 260:6 260:7 268:9 268:14 268:14 268:21 268:24 269:1 270:2 270:6

**settlements**(10) 31:4 33:3 34:1 34:12 37:19 37:24 42:4 56:5 60:10 63:16

**settles**(1) 34:19

**settling**(4) 39:4 75:23 76:12 113:24
**seven**(5) 47:24 89:17 133:10 235:11 242:8
**seven-and-a-half**(2) 162:7 169:18
**seven-and-a-half-billion**(1) 213:14
**seven-hundred-and-ninety-o**(1)
218:10

**seven-point**(2) 226:2 234:17
**seventy**(3) 206:1 212:18 215:1
**seventy-five**(1) 139:10
**seventy-percent**(1) 161:16
**severable**(1) 64:5
**several**(3) 88:20 130:6 198:24
**severance**(1) 149:11
**shadow**(1) 116:9
**shamah**(1) 6:39
**shannon**(1) 7:46
**shape**(1) 246:12
**share**(17) 37:14 37:15 79:9 82:12 84:5 115:6 141:13 141:17 142:8 142:11 176:23 211:9 211:12 246:13 274:21 274:23 275:1

**shared**(2) 79:9 79:14
**shareholder**(5) 150:22 151:6 168:17 270:19 270:22

**shareholders**(13) 39:7 77:23 130:12 131:1 131:2 141:12 141:17 150:21 150:21 151:4 151:13 165:2 270:24

**shares**(1) 167:9
**sharing**(11) 79:3 79:6 79:13 79:17 83:24 83:24 172:20 210:21 219:16 266:5 267:6

**shaya**(1) 8:15
**she**(9) 13:23 24:9 24:10 25:17 43:18 54:8 70:20 78:19 81:16

**she's**(4) 59:14 70:3 70:4 280:15
**sheet**(35) 31:11 31:16 31:21 32:5 32:19 32:24 33:13 33:21 36:24 36:25 37:3 37:5 37:7 37:12 37:15 37:16 38:1 38:4 38:8 38:10 38:12 75:10 75:11 75:14 75:17 76:3 76:20 79:17 138:23 167:15 200:7 200:9 224:18 224:19 244:20

**sheets**(2) 75:7 261:3
**sheffield**(1) 10:43
**sheila**(1) 49:8
**sheron**(1) 10:15
**short**(6) 35:21 83:3 83:13 92:6 115:11 281:5

**shorthand**(1) 246:5
**shortly**(2) 26:24 45:20
**shot**(8) 113:25 117:12 117:13 135:20 139:6 139:12 150:16 151:11

**shots**(1) 139:6
**should**(24) 21:15 25:14 48:15 58:1 85:13 92:1 103:18 104:23 112:2 117:9 120:15 121:23 124:10 125:4 152:18 165:5 177:3 199:3 203:8 222:21 242:12 245:8 252:23 258:21

**shouldn't**(1) 175:10
**shouldn't**(1) 125:3
**show**(8) 31:12 59:9 86:16 113:6 114:25 159:2 204:6 248:25 257:8 262:21

**showed**(4) 75:7 187:14 253:24 253:24
**showing**(3) 59:4 145:21 185:1
**shown**(6) 188:8 196:7 203:14 216:19 249:7 257:2

**shows**(10) 106:15 112:8 114:21 116:24 120:1 146:17 152:22 156:25 252:14 254:6

**shuts**(1) 257:13
**sic**(1) 220:19
**sick**(1) 51:1

**side**(20) 28:13 97:20 97:21 116:15 116:17 117:9 117:11 122:1 122:4 122:5 124:16 128:21 137:23 144:2 151:25 183:9 183:9 213:19 269:16 276:19

**siding**(1) 60:14
**sidley**(30) 1:23 7:10 97:15 98:22 99:9 183:3 183:21 183:24 184:1 184:2 185:18 185:25 186:4 186:14 186:19 186:23 187:4 187:8 187:11 187:14 188:15 188:22 189:7 193:24 199:5 246:3 270:10 277:16 277:18 278:5

**sidley's**(1) 186:20
**sieger**(1) 10:39
**sign**(1) 276:5
**signed**(1) 72:15
**significance**(1) 200:5
**significant**(25) 22:24 64:23 65:13 102:16 113:2 131:19 136:5 136:14 150:5 151:17 151:22 153:21 162:14 162:21 164:22 198:12 202:14 213:22 216:14 235:13 245:22 275:3 275:4 275:18 279:7

**significantly**(3) 37:6 170:9 274:21
**silverstein**(1) 2:32
**simes**(1) 6:7
**similar**(17) 82:17 82:23 91:16 101:22 106:9 143:18 144:20 146:6 152:5 176:8 176:15 205:11 231:24 237:24 255:4 255:5 256:18

**simplifying**(1) 243:16
**simply**(5) 30:20 97:13 141:10 157:14 280:2

**sina**(1) 10:47
**since**(5) 98:2 100:13 129:15 192:2 258:6
**single**(2) 104:18 195:12
**singled**(2) 213:19 214:5
**sir**(13) 90:20 90:23 92:17 114:25 131:24 134:24 149:23 174:17 194:16 248:18 256:10 280:10 280:23

**sitting**(4) 23:21 126:6 154:12 189:9
**situation**(3) 150:7 249:19 250:17
**six**(33) 47:21 89:14 106:21 107:1 107:10 112:17 112:19 113:22 116:7 118:18 118:1 118:20 120:5 160:5 168:15 185:20 188:14 204:1 204:5 204:6 205:10 205:11 205:15 205:18 205:22 206:20 213:24 220:11 220:15 220:15 220:16 260:22

**six-month**(1) 141:10
**sixteen**(6) 163:21 173:4 173:7 173:9 217:24 218:3

**size**(3) 38:15 99:16 218:12
**skeptic**(1) 153:18
**skeptical**(1) 177:2
**slam-dunk**(1) 113:23
**slide**(6) 106:19 106:19 106:21 140:25 146:16 158:11

**slides**(3) 88:20 203:13 203:16
**slightly**(1) 107:4
**slower**(1) 190:15
**slowly**(1) 246:1
**small**(12) 40:5 99:24 121:7 133:10 133:20 137:7 151:6 182:14 202:6 203:8 229:24 240:9

**smaller**(2) 102:15 261:19
**smart**(1) 201:25
**smith**(1) 9:47
**smoosh**(2) 119:7 119:14
**smoothly**(1) 87:22
**soaks**(2) 38:16 38:17
**social**(1) 93:6
**solely**(1) 44:15
**solid**(2) 71:5 200:1
**solution**(1) 251:14

**solvency**(66) 51:2 52:3 52:11 53:3 53:8 53:17 53:18 53:19 54:2 54:5 54:16 54:19 54:22 95:7 95:9 99:24 102:14 102:18 119:11 119:12 120:19 121:3 121:4 121:5 121:22 122:17 122:19 122:20 122:22 123:12 123:14 125:9 125:11 125:13 126:15 126:20 128:3 128:8 129:1 129:2 132:6 137:17 137:25 138:2 138:9 138:19 138:23 138:25 139:21 139:23 139:24 141:20 149:19 149:21 153:24 163:13 224:4 227:19 227:20 227:21 237:23 238:2 239:10 244:5 244:9 244:12

**solvent**(29) 52:8 52:24 53:14 53:16 99:22 99:22 100:2 107:18 107:19 108:10 109:3 109:7 116:16 123:3 123:5 125:15 127:11 127:18 128:9 128:15 134:3 142:14 154:2 161:9 168:6 230:1 230:2 245:2 247:15

**some**(146) 13:16 13:16 15:1 16:23 18:4 18:5 19:23 21:15 23:8 27:14 27:22 27:23 35:16 39:14 41:23 41:23 43:3 43:4 43:9 45:2 52:12 52:17 52:22 53:19 56:3 58:9 61:19 61:20 64:9 67:21 69:4 79:18 79:19 88:8 88:9 89:15 89:15 94:13 94:14 96:25 98:6 98:19 98:19 101:8 104:9 104:24 105:20 107:4 109:9 109:24 110:1 111:23 112:1 118:15 123:16 125:23 127:24 128:5 128:8 128:10 130:22 131:8 132:11 133:2 133:23 134:1 137:7 141:4 141:9 144:12 145:21 148:15 149:3 149:22 149:25 150:5 150:14 150:17 151:2 152:1 156:25 160:9 162:14 162:25 163:22 164:11 164:21 165:4 165:5 167:21 167:22 167:23 169:5 172:15 173:2 179:16 181:8 181:15 182:1 183:2 183:24 184:1 188:1 190:23 194:24 203:13 204:24 205:20 212:20 213:1 220:19 221:22 222:9 228:2 228:10 229:12 229:13 230:19 230:21 230:21 231:3 232:22 233:5 234:8 234:9 235:16 236:2 238:14 238:14 238:20 241:4 244:17 245:17 247:5 247:7 247:18 247:23 250:13 252:18 259:12 262:14 263:1 276:20 279:13 279:15 282:8 282:20

**somebody**(1) 125:2
**someone**(3) 14:10 46:16 150:8
**something**(21) 25:16 76:10 76:10 106:8 106:9 111:4 122:14 134:17 156:4 165:17 176:14 192:3 193:9 193:15 210:10 218:20 236:7 236:21 241:7 257:14 274:22

**sometime**(3) 45:23 68:13 68:24
**sometimes**(11) 13:6 29:6 72:4 72:4 80:25 156:10 193:20 234:18 235:12 235:13 235:15

**somewhat**(13) 30:2 137:13 137:24 144:23 148:8 214:21 214:25 215:10 225:21 234:1 234:19 235:12 240:25

**somewhere**(6) 43:1 134:18 211:10 211:15 220:4 275:5

**soon**(1) 55:10
**sooner**(1) 220:8
**sophia**(1) 7:15
**sorry**(28) 11:14 33:8 37:14 37:14 41:1 48:22 55:1 62:6 64:15 66:16 73:6 74:1 77:1 80:18 84:18 137:2 174:13 178:10 180:20 201:4 202:24 215:18 215:25 247:15 250:25 254:13 272:23

**sort**(10) 24:2 27:23 90:1 96:9 132:17 144:22 188:17 201:1 207:5 235:22

**sottile**(2) 3:35 5:39
**sought**(2) 15:15 15:19
**sound**(7) 1:47 107:16 197:11 240:4 260:14 266:15 284:7

**sounds**(4) 61:19 123:11 185:3 209:18

| Word | Page:Line |
|------|-----------|

**source**(7) 153:7 153:8 153:12 162:5 165:22 231:8 249:21

**sources**(4) 92:18 104:6 124:14 124:17 142:10 153:4

**south**(2) 1:28 4:16

**spaeder**(5) 3:32 5:37 17:14 17:15 17:20

**speak**(16) 18:6 22:8 69:11 70:23 71:2 71:3 71:13 88:24 190:22 242:1 242:7 243:5 243:7 260:1 262:17 271:1

**speaking**(6) 62:13 69:9 69:10 199:25 241:9 241:21

**special**(26) 3:41 12:10 12:18 12:22 12:24 13:2 13:10 13:19 13:24 14:9 14:14 14:18 44:19 44:22 44:25 45:19 46:12 47:20 50:5 70:4 92:14 102:12 124:9 142:2 150:4 276:4

**specific**(15) 16:15 59:24 60:6 72:25 97:10 118:22 144:13 158:23 219:25 227:16 234:17 241:20 248:6 248:12 257:21

**specifically**(4) 95:3 185:6 263:7 272:9

**specifics**(1) 158:23

**speculate**(1) 51:14

**speed**(2) 46:21 183:21

**spell**(3) 90:18 90:22 90:23

**spend**(2) 198:2 204:24

**spends**(1) 235:9

**spent**(7) 100:12 144:12 149:4 193:6 221:22 254:4 259:12

**split**(4) 32:6 34:24 209:2 209:3

**spoke**(15) 22:3 24:24 61:9 61:12 61:15 61:18 61:25 68:19 72:9 72:18 76:6 89:25 145:8 199:15 199:23

**spoken**(1) 62:9

**spreads**(2) 278:17 279:1

**spreadsheet**(10) 88:17 104:11 112:18 208:24 220:23 249:8 253:10 253:18 257:4 260:3

**spring**(1) 277:2

**square**(1) 2:14

**squarely**(1) 224:15

**ssrn**(1) 93:6

**staff**(1) 281:2

**stage**(2) 190:25 191:4

**stake**(1) 99:16

**stamina**(1) 220:11

**stamp**(1) 258:2

**stamped**(1) 225:10

**stand**(9) 89:21 90:11 139:4 154:20 192:19 256:9 256:10 256:11 280:13

**standalone**(1) 275:7

**standard**(1) 182:22

**standards**(5) 181:7 181:10 184:13 184:16 185:11

**standing**(4) 136:15 185:13 198:7 233:18

**stands**(2) 123:11 123:13

**stanford**(2) 91:22 92:8

**stanley**(7) 4:34 8:37 77:24 102:12 150:5 150:13 150:14

**stargatt**(1) 4:4

**stark**(1) 7:32

**stars**(1) 11:14

**start**(23) 43:11 48:18 50:22 69:22 85:12 87:16 99:11 101:6 102:17 105:11 107:11 112:12 132:18 153:2 162:3 162:14 180:2 213:2 234:9 237:5 281:19 282:13 282:14

**started**(12) 14:2 42:8 91:24 96:11 96:11 105:22 111:15 148:5 191:22 215:18 234:10 245:21

**starting**(3) 24:4 35:17 106:4

**starts**(8) 27:14 114:20 115:9 115:10 162:4 165:8 165:17 242:14

**state**(15) 63:20 90:17 91:4 126:24 126:25 135:14 140:23 179:13 179:16 238:22 239:25 242:11 244:1 275:25 276:14

**stated**(5) 226:7 234:25 262:25 273:8 275:7

**statement**(15) 22:11 36:13 181:1 186:7 204:10 245:8 264:15 265:14 265:24 266:2 273:15 273:20 273:24 274:2 275:7

**statements**(1) 78:9

**states**(3) 1:1 1:19 283:7

**stating**(1) 244:3

**statistical**(1) 96:4

**statistics**(2) 96:6 96:7

**statute**(3) 109:6 122:9 181:4

**statutes**(1) 181:25

**statutory**(34) 109:22 109:25 110:8 129:4 129:6 130:5 130:6 132:3 132:4 133:17 133:25 134:1 134:4 135:23 136:2 136:4 136:9 137:10 139:10 140:2 144:9 144:18 159:21 162:19 163:9 164:4 182:17 212:14 213:23 215:16 229:6 233:6 234:6 234:8

**stay**(3) 25:8 25:14 26:15

**stayed**(3) 91:24 92:5 130:11

**staying**(1) 151:18

**stays**(1) 252:17

**ste**(4) 1:35 4:30 4:36 5:13

**stearn**(1) 2:13

**steege**(1) 5:5

**stella**(1) 49:8

**step**(301) 14:17 24:2 24:2 24:18 25:4 25:6 28:25 32:14 32:16 32:22 32:23 34:19 34:19 34:4 38:8 38:11 38:13 38:15 38:15 38:16 38:18 39:6 45:20 46:5 46:7 46:7 49:23 50:15 50:16 52:6 52:24 53:4 53:14 56:1 63:21 63:22 64:1 64:1 64:4 64:5 64:5 64:6 64:15 64:16 64:20 64:23 64:24 64:25 65:1 65:5 65:8 65:9 65:9 65:10 65:10 75:11 75:14 75:19 75:23 75:23 76:10 76:11 76:14 77:23 78:24 78:25 79:12 79:12 79:14 79:20 80:11 80:16 83:25 83:25 84:4 84:5 84:6 85:12 102:16 102:20 102:20 104:18 104:18 106:13 106:13 108:3 108:4 108:4 108:6 108:6 108:8 108:11 108:17 108:17 108:23 108:23 110:22 112:4 112:5 112:6 112:6 116:3 118:16 119:6 119:8 119:9 119:11 119:14 119:19 119:19 119:23 120:2 120:9 120:11 120:12 120:13 120:14 120:15 120:16 120:19 120:20 120:24 121:9 121:12 121:15 121:16 121:16 121:18 121:20 121:20 121:21 122:1 122:2 122:3 122:4 122:10 122:18 122:19 122:20 122:21 122:22 123:22 123:23 122:25 122:25 123:2 123:2 123:3 123:5 123:8 123:11 123:13 123:13 123:14 123:22 123:24 123:25 124:1 124:3 125:9 126:14 128:7 128:25 130:15 130:15 133:11 133:11 133:14 133:16 134:6 135:16 135:17 135:21 137:12 137:18 137:21 139:22 140:25 140:24 141:10 141:14 141:22 141:23 142:1 142:3 142:9 142:17 143:6 144:1 143:12 143:13 143:13 143:14 148:8 150:23 150:24 150:25 151:2 153:19 153:21 153:23 153:23 154:2 154:4 160:1 160:1 160:2 160:6 160:7 160:7 161:8 161:8 161:9 161:10 161:11 161:17 161:17 161:23 161:23 162:4 162:10 162:11 162:18 163:1 164:3 164:21 164:23 165:4 165:5 165:10 167:15 167:15 168:6 168:6 168:7 168:9 168:10 168:10 168:12 171:7 171:7 171:13 171:13 171:15 171:23 172:5 172:12 172:14 172:19 173:6 173:12 173:24 173:24 174:3 174:1 175:10 175:11 175:1 175:15 175:22 176:1 176:9 176:16 182:25 191:4 191:5 191:15 191:19 192:1 202:21 202:22 206:7 206:10 206:11 206:13 206:1 207:19 207:24 208:4 209:6 209:10 209:13 209:14 209:20 209:21 210:2 210:6 210:10 210:12 210:13 210:20 211:2 211:3 211:8 211:9 211:11

**step**(81) 211:21 211:23 212:20 212:23 213:13 214:20 215:8 215:10 215:19 215:2 215:24 216:2 216:3 216:4 216:10 219:9 223:15 223:23 223:24 224:3 224:4 224:6 224:11 224:12 224:17 224:18 224:23 224:23 224:23 224:24 225:2 225:4 225:5 225:7 225:11 226:15 227:5 228:24 229:2 229:3 229:23 231:14 231:17 232:12 232:12 238:16 238:16 240:16 240:17 240:19 240:24 248:19 250:2 250:17 250:20 250:21 250:23 261:8 261:9 263:6 263:22 263:22 266:5 267:22 270:19 270:23 271:19 271:22 274:12 278:20 278:22 278:24 278:25 279:2 279:6 280:23

**step-integration**(2) 226:6 226:23

**step-one**(24) 98:17 99:20 102:9 123:12 133:9 133:14 247:12 247:15 249:20 250:2 261:6 263:17 263:18 265:4 265:17 265:18 266:1 266:1 266:4 267:1 267:2 267:5 267:19 270:25

**step-two**(11) 99:21 119:10 120:15 120:17 121:23 121:24 250:14 265:5 265:7 267:7 267:20

**stephen**(1) 2:33

**stepping**(1) 123:15

**steps**(9) 20:11 22:1 99:13 106:11 107:22 121:19 141:11 141:18 145:3

**steven**(1) 90:19

**still**(22) 22:18 26:10 50:25 65:13 102:16 108:10 109:23 110:3 123:5 125:23 136:5 136:14 142:14 169:20 172:6 172:18 176:3 190:17 199:4 203:15 210:13 266:12

**stock**(4) 93:2 149:11 274:17 274:20

**stood**(4) 140:3 202:17 221:25 275:22

**stop**(8) 119:18 120:14 153:22 153:24 154:7 157:17 249:3 283:2

**stops**(1) 27:14

**stores**(1) 92:20

**straight**(1) 219:21

**strange**(1) 177:6

**strategies**(2) 199:18 200:5

**strategy**(5) 93:3 199:21 200:1 200:9

**strauss**(3) 2:19 4:4 88:5

**street**(13) 1:11 1:42 2:15 2:35 3:6 3:28 3:36 4:8 4:24 4:30 4:42 5:7 5:13

**stress**(5) 156:2 156:3 203:10 203:11 238:3

**stretched**(1) 42:20

**strict**(1) 228:8

**strictly**(1) 161:21

**strike**(16) 24:7 36:2 74:9 78:17 138:17 197:11 205:9 210:19 212:7 219:1 227:14 231:19 243:10 256:14 268:6 269:18

**string**(2) 62:21 69:20

**stromberg**(1) 7:21

**strong**(2) 52:15 239:1

**stronger**(1) 130:22

**strongly**(6) 42:7 64:4 116:13 116:14 116:22 117:17

**structure**(3) 63:9 63:16 122:19

**struggling**(4) 67:4 67:12 68:3 187:2

**students**(1) 96:20

**studied**(2) 148:25 245:24

**stuff**(5) 51:22 86:23 165:1

**sub**(16) 110:1 110:5 110:6 110:8 110:12 110:14 131:12 131:20 137:17 139:14 139:15 167:19 174:22 176:23 210:1 232:14

**sub-assumption**(1) 107:4

**sub-claims**(2) 176:4 208:13

**sub-level**(2) 175:8 176:22

**sub-trade**(1) 209:24

**subissue**(1) 227:17

**subject**(4) 54:9 130:18 197:20

**subjective**(1) 239:7

**subjectivity**(1) 229:9

**submitted**(2) 98:4 104:5

**subordinat**(2) 230:4 263:20

**subordinated**(11) 15:2 84:18 84:19 84:19 84:21 84:25 176:19 265:9 265:18 266:1 267:2

**subordinating**(1) 109:9

**subordination**(21) 84:24 85:4 109:19 127:10 127:13 128:13 129:3 174:24 175:1 175:5 229:2 229:19 250:14 263:5 263:6 263:16 264:25 265:4 266:3 267:4 267:21

**subparagraph**(2) 276:1 276:2

**subs**(55) 106:12 107:19 108:10 108:12 108:21 108:24 109:2 110:2 110:13 111:23 121:2 131:15 137:23 138:1 138:2 138:7 138:9 139:16 142:2 142:4 142:5 142:8 142:13 142:16 161:18 161:25 164:2 165:8 167:17 172:3 172:4 172:18 176:5 176:15 176:17 209:23 209:25 211:4 227:20 227:25 228:25 229:1 230:2 231:17 232:18 232:19 232:21 232:23 238:16 244:9 247:14 249:20 250:4 250:7 250:10

**subsection**(1) 275:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| subsections(1) 237:7 | | swaps(1) 143:19 | | teaching(1) 91:24 | | than(68) 13:24 25:4 27:5 30:21 35:19 | |

subsidiaries(12) 35:3 40:2 81:25 100:5
112:19 165:12 208:10 208:16 208:20 217:
217:12 250:15

subsidiary(10) 20:13 31:24 37:22 99:15
102:22 109:12 185:13 211:20 211:22
233:19

substance(3) 107:8 176:16 176:21

substantial(9) 88:15 93:19 96:21 114:14
127:4 165:4 269:3 279:13 279:16

substantially(5) 146:8 160:22 167:4 208:23
273:9

substantive(7) 29:15 29:18 30:6 176:25
177:1 184:9 184:11

substatutory(1) 233:21

subsumed(5) 237:15 237:20 238:24 239:6
239:12

succeed(2) 24:22 233:9

succeeding(1) 229:18

success(7) 103:2 188:22 207:4 215:1
227:16 240:20 267:15

successful(1) 22:21

successfully(1) 151:13

such(6) 32:7 87:11 87:13 95:3 95:5 206:6

sue(2) 60:25 114:12

sued(1) 270:19

sufficient(4) 174:25 180:15 190:1 196:11

sufficiently(1) 246:12

suggest(1) 89:3

suggested(3) 71:13 79:23 170:8

suggesting(2) 51:9 89:9

suggestion(4) 25:24 258:1 279:17 283:19

suggests(2) 30:5 168:4

suite(3) 3:28 3:37 4:17

summariz(1) 103:9 126:13 158:12

summary(2) 73:25 264:11

summer(2) 66:3 96:12

sunil(1) 189:15

superior(2) 213:3 214:5

supermarkets(1) 92:21

supplements(1) 26:21

supplied(1) 184:25

support(24) 22:1 22:2 22:15 22:22 26:2
26:23 26:24 27:3 27:15 32:18 32:24 32:25
35:9 35:11 35:12 37:4 61:23 64:10 72:15
74:5 74:14 190:5 191:21 245:17

supported(5) 20:21 20:22 22:18 22:23 58:

supporting(1) 24:5

supportive(1) 77:9

suppose(9) 55:3 109:2 124:3 141:22 153:9
154:8 168:20 176:1 210:8

supposed(1) 158:12

supposedly(1) 73:8

sure(24) 12:4 13:4 15:8 53:17 84:25 85:1
90:16 102:4 104:6 117:1 124:21 127:17
128:18 129:13 130:2 136:22 140:23 147:1
147:25 154:16 157:13 157:18 160:21
175:2 179:1 179:18 184:4 186:8 187:23
188:10 189:23 190:2 193:2 193:25 199:16
208:5 210:25 218:6 219:12 224:16 225:24
226:19 227:25 230:15 234:13 240:12
241:21 245:21 246:7 257:3 260:10

surfaces(1) 281:11

surrounding(1) 94:10

survive(2) 127:25 128:1

suspect(2) 11:13 281:7

sustained(7) 25:11 40:25 71:22 80:7 81:20
85:8 256:6

suttonbrook(2) 6:27  6:27

swing(4) 138:16 139:4 225:2 225:5

swinging(3) 135:18 224:2 225:7

sworn(3) 11:18 90:11 90:15

swung(1) 140:4

syndicated(2) 47:2 47:8

syndications(1) 47:9

system(4) 47:13 47:16 214:24 267:14

systematically(1) 260:16

tab(7) 103:15 114:24 140:25 163:20
183:12 220:23 271:6

table(86) 22:13 83:6 104:10 112:13 112:16
113:6 113:19 114:23 115:1 115:8 115:8
115:9 115:9 115:10 129:12 129:22 132:8
137:15 141:2 144:16 145:24 146:21 152:3
155:1 157:22 159:20 160:3 160:10 163:20
175:23 176:2 187:9 188:5 188:8 188:20
189:10 203:24 203:24 204:4 204:4 204:8
204:8 204:10 204:14 204:14 204:15 204:1
204:17 204:18 204:21 204:21 204:22
204:23 204:23 205:2 205:4 205:20 206:24
207:9 210:17 216:20 217:14 218:7 219:2
219:5 219:11 220:13 220:14 220:20 221:2
222:3 222:3 222:5 222:6 222:7 223:14
241:7 242:2 246:15 252:5 252:7 253:25
254:17 254:18 269:18 269:18

tables(8) 104:8 204:16 204:17 246:16
247:22 247:24 268:23 281:10

tabs(1) 194:6

take(47) 22:1 31:5 63:11 63:12 69:22 71:
83:13 86:21 100:9 112:17 119:22 123:4
133:7 135:7 136:12 139:18 144:9 145:19
147:15 148:21 153:10 153:10 153:14 154:
154:5 154:15 168:20 169:9 172:14 173:6
175:9 193:10 203:15 220:7 221:15 222:24
224:12 226:3 235:14 240:6 253:7 255:7
271:7 281:17 282:6 282:7 282:10

taken(6) 42:2 45:3 134:16 177:10 195:13
265:21

takes(3) 177:18 208:22 267:13

taking(4) 111:16 112:21 197:7 229:6

talk(19) 33:24 51:2 65:14 86:10 86:20
87:18 89:6 89:11 93:14 114:14 135:12
200:2 200:21 201:19 215:18 220:13 237:4
238:17 245:11

talked(24) 15:4 15:4 15:6 24:14 72:10
166:7 179:18 182:20 183:7 185:10 200:3
212:2 228:1 233:17 240:12 246:10 246:15
247:20 254:7 254:25 261:11 268:9 278:16
283:7

talking(29) 34:11 43:11 54:15 56:25 62:5
62:7 63:25 66:8 69:22 130:3 170:16
191:16 216:2 226:19 230:16 231:20 238:1
244:15 250:6 250:7 257:24 263:9 263:10
266:23 272:18 275:10 275:13 275:14
279:20

talks(1) 89:14

tape(1) 249:12

taught(1) 96:17

tax(32) 124:9 124:21 124:24 124:25 125:1
125:10 126:17 126:18 142:3 142:10 153:4
153:11 166:9 166:17 166:19 199:18 199:21
199:23 200:1 200:2 200:3 200:5 200:20
231:7 231:7 231:11 232:8 236:17 236:24
253:14 258:19 259:16

tax-value(1) 232:8

taxations(1) 94:9

taylor(1) 4:5

teach(10) 93:25 94:24 94:25 95:1 95:2
95:11 95:15 95:19 96:9 96:19

teacher(1) 12:10

team(2) 193:18 197:12

technical(5) 97:7 97:19 98:13 131:2 149:25

technically(1) 43:22

technological(1) 126:2

telephone(2) 73:12 73:14

telephonic(6) 5:17 6:1 7:1 8:1 9:1 10:1

tell(20) 12:2 25:16 30:4 57:4 67:9 72:2
87:2 87:20 165:18 183:19 184:22 185:7
187:15 196:3 200:13 235:2 239:22 257:10
257:19 260:8

telling(4) 113:12 138:5 143:23 220:7

tells(5) 137:12 137:16 137:19 139:22

ten(9) 122:23 47:16 47:18 71:1 83:10
160:11 229:22 229:24 235:10

ten-minute(1) 223:2

ten-percent(1) 230:15

tender(10) 99:20 100:18 108:18 108:20
120:20 141:16 270:25 272:15 274:16
277:14

tentative(2) 192:23 193:1

tenure(1) 91:25

term(35) 31:11 31:16 31:21 32:5 32:19
32:24 33:13 33:21 36:24 36:25 37:3 37:5
37:7 37:12 37:15 37:16 38:1 38:4 38:8
38:9 38:12 75:7 75:10 75:10 75:14 75:17
76:8 76:20 79:17 124:6 149:23 229:16
274:21 275:4 277:20

terminated(3) 72:16 74:7 190:10

terminology(1) 216:11

terms(21) 20:8 28:10 34:18 38:23 42:19
73:20 76:19 76:22 93:14 95:23 102:24
105:21 110:9 134:13 142:7 146:8 165:11
188:13 228:4 239:3 242:5

terrible(1) 107:17

terribly(1) 57:5

test(20) 125:14 142:6 158:7 158:11 164:13
164:18 165:13 166:5 169:20 175:17 200:
224:18 224:19 224:22 232:12 241:10 243:
243:19 244:10 244:13

tested(3) 158:16 203:8 208:13

testified(21) 38:3 45:25 51:5 56:14 61:8
83:23 92:16 116:5 193:5 200:4 201:14
209:9 212:2 213:17 213:11 217:19 217:23
223:15 243:10 243:11 269:8

testify(4) 100:19 115:25 186:23 236:15

testifying(1) 145:15

testimony(56) 24:8 24:10 25:9 31:17 33:22
35:14 36:2 36:6 38:5 39:14 43:14 43:18
43:22 44:8 53:24 57:1 59:5 59:13 59:14
67:10 74:9 74:10 74:25 78:17 78:19 79:2
84:10 86:4 87:15 89:4 89:13 100:23 101:
140:7 145:7 159:4 186:7 189:1 190:5
190:7 191:14 198:16 214:7 214:8 214:12
242:23 246:5 247:22 251:5 251:8 267:8
270:4 270:17 270:20 280:9 280:12

tests(23) 96:4 96:4 122:1 155:15 155:15
155:21 156:2 156:3 158:12 158:23 158:24
160:17 164:17 168:23 169:10 202:15 203:4
237:20 238:18 238:24 239:11 244:5
244:15

texas(2) 91:15 91:22

text(3) 158:22 237:6 273:23

textbook(2) 94:6 94:8

textual(1) 236:22

than(68) 13:24 25:4 27:5 30:21 35:19
37:7 41:18 42:4 55:25 56:22 58:5 58:13
59:13 62:8 64:25 67:11 72:25 73:19 74:1
76:5 79:7 79:7 79:9 79:24 83:5 98:12
107:6 107:7 108:4 108:6 113:17 113:22
113:22 115:21 120:18 137:5 139:5 141:8
142:13 148:21 152:1 152:9 153:19 160:23
165:2 169:7 169:9 176:7 197:5 200:23
205:22 206:3 206:12 210:22 232:25 233:2
233:4 234:18 235:21 236:5 242:21 248:23
251:10 252:19 252:24 268:11 268:15
276:20

thank(36) 11:14 11:17 28:17 36:17 42:23
43:6 64:19 66:3 77:7 82:24 83:14 83:16
85:11 87:23 88:3 90:20 90:21 90:25 101:2
101:4 105:9 123:15 154:19 154:22 180:19
180:23 222:15 223:4 223:6 223:10 223:11
223:20 258:12 262:8 284:1 284:2

that(301) 11:12 11:14 12:12 13:7 13:7
13:13 13:14 14:4 14:13 14:22 15:2 15:7
15:12 15:13 16:2 16:4 16:7 16:24 17:13
17:17 19:8 19:8 19:9 19:19 19:22 20:1
20:3 20:9 20:17 20:18 20:21 21:1 21:4
21:4 21:7 21:9 21:9 21:15 21:20 21:20
21:23 21:25 22:4 22:5 22:7 22:13 22:17
22:19 23:3 23:7 23:10 23:20 24:2 24:4
24:8 24:9 24:10 24:18 24:19 24:19 24:20
25:2 25:7 25:9 26:8 26:10 26:13 26:21
27:5 27:10 27:16 27:19 27:21 28:8 28:9
28:21 29:5 29:6 29:9 29:18 29:19 29:21
29:25 30:5 30:5 30:11 31:6 31:9 31:12
31:14 31:16 32:6 32:7 32:18 32:24 33:11
33:17 33:19 33:21 34:6 34:7 34:12 35:9
35:12 35:16 35:18 36:5 36:9 36:12 36:19
36:20 37:20 38:1 38:3 38:5 38:9 40:5
40:5 40:22 40:23 41:10 42:6 42:13 42:13
43:12 43:12 43:13 43:14 43:16 43:18
43:22 43:24 43:24 44:3 44:6 44:8 44:11
44:12 44:14 44:14 44:15 44:17 44:17
44:17 44:17 45:1 45:3 45:6 45:12 45:20
45:25 46:16 46:22 47:5 47:14 47:22 47:25
48:3 48:4 48:18 48:14 48:22 49:1 49:4
49:6 49:9 49:11 49:15 49:18 50:2 50:8
50:15 50:17 50:22 51:1 51:2 51:5 51:6
51:8 51:9 51:9 51:9 52:2 52:3 52:3 52:6
52:9 52:10 52:25 53:4 53:11 53:15 53:16
53:17 53:20 54:5 54:8 54:11 55:3 55:14
55:20 56:5 56:10 56:12 56:14 56:17 57:2
57:8 57:10 57:15 57:17 57:18 58:1 58:2
58:3 58:3 58:3 58:8 58:10 58:14 58:15
59:4 59:7 59:13 59:14 59:16 59:18 59:18
60:7 60:16 60:17 60:19 60:21 60:22 60:25
61:1 61:3 61:7 61:7 61:9 61:21 62:1
62:14 62:20 62:24 63:2 63:3 63:3 63:9
63:10 63:15 63:16 63:20 63:23 64:4 64:4
64:6 64:10 64:11 64:14 64:17 64:19 65:7
65:8 65:15 65:15 65:15 65:21 66:5 66:21
67:1 67:3 67:9 67:10 67:11 67:16 67:16
67:18 68:19 68:22 68:25 69:2 69:5 69:9
69:9 69:20 70:7 70:11 71:7 71:9 71:12
71:13 71:20 71:24 72:1 72:2 72:7 72:9
72:11 72:13 72:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) 72:23 72:23 72:24 73:7 73:10 | | **that**(301) 134:10 134:10 134:13 134:17 | | **that**(301) 197:9 197:11 197:12 197:15 | | **that**(221) 244:25 245:1 245:3 245:3 245:4 | |

that(301) 72:23 72:23 72:24 73:7 73:10
74:2 74:3 74:4 74:10 74:12 74:19 74:20
74:22 74:24 74:24 74:25 75:4 75:8 75:14
75:19 75:22 76:6 76:14 76:22 76:24 76:25
77:1 77:2 77:4 77:5 77:16 78:2 78:3
78:14 78:14 78:15 78:17 78:18 78:25 79:5
79:6 79:8 79:21 79:23 79:25 80:6 80:10
80:12 80:19 81:4 81:5 81:7 81:13 81:16
81:16 82:6 82:14 82:21 82:23 83:7 83:11
83:23 84:4 84:5 84:6 84:9 84:14 84:17
84:21 85:3 85:4 85:15 85:15 85:23 85:25
85:25 86:5 86:8 86:12 86:14 86:16 86:17
86:21 87:7 87:10 87:11 87:19 87:20 88:9
88:15 88:16 88:17 88:20 88:21 89:10
89:17 90:1 90:2 91:10 91:20 91:23 92:1
92:15 93:10 93:14 93:17 93:20 93:23 94:7
94:19 95:5 95:8 95:22 96:13 96:19 97:1
97:3 97:11 97:14 97:16 97:18 97:18 98:14
98:16 98:20 98:24 99:10 100:4 100:5
100:7 100:9 100:25 101:11 101:17 102:2
102:2 102:23 102:24 103:9 103:10 103:18
103:20 103:25 103:25 104:3 104:5 104:7
104:11 104:16 104:17 104:21 104:22
104:23 104:24 105:12 105:22 106:1 106:4
106:10 106:15 106:18 106:23 107:4 107:11
107:15 107:25 108:7 108:7 108:9 108:9
108:10 108:16 108:19 108:19 109:2 109:7
109:9 109:10 109:11 109:15 109:17 109:22
109:25 110:2 110:16 110:17 110:19 111:1
111:2 111:3 111:5 111:8 111:14 111:20
111:21 112:2 112:8 112:13 112:15 112:24
113:1 113:5 113:16 113:20 114:4 114:6
114:19 114:21 115:6 115:25 116:3 116:5
116:18 116:19 116:24 117:2 117:8 117:22
117:23 118:2 118:3 118:4 118:17 118:23
118:24 119:6 119:9 119:17 120:1 120:4
120:8 120:9 120:12 121:1 121:8 121:8
121:9 121:11 121:14 121:15 122:16 122:17
122:18 122:20 122:21 122:23 123:10
123:11 123:17 124:7 124:9 124:17 124:21
124:22 125:1 125:3 125:4 125:5 125:11
126:3 126:5 126:10 126:23 127:2 127:3
127:10 127:11 127:15 127:17 127:18
127:22 127:22 127:25 127:25 128:1 128:9
128:12 128:14 128:14 128:19 128:23 129:4
129:17 130:10 130:12 130:18 130:22
131:2 131:3 131:14 131:18 131:23 132:6
132:14 132:22 133:1 133:11 133:16 133:16
133:24 134:2

that(301) 134:10 134:10 134:13 134:17
134:20 135:5 135:21 136:8 136:17 136:23
136:24 137:1 137:4 137:5 137:9 137:10
137:14 137:25 138:11 138:18 138:19
138:19 138:25 139:3 139:7 139:8 139:15
139:19 140:2 140:4 140:7 140:19 141:9
141:11 141:14 141:18 141:25 142:9 143:1
143:15 143:17 143:19 143:21 144:3
144:10 144:14 144:16 144:18 144:24 145:2
145:7 145:14 145:17 145:21 146:16
146:19 147:2 147:7 147:9 147:14 147:17
147:23 147:24 148:1 148:21 149:1 149:12
149:12 149:14 149:14 149:23 150:2 150:10
150:17 150:19 150:23 151:2 151:11
151:19 151:20 151:21 152:6 152:9 152:11
152:11 152:20 152:22 152:22 153:11
153:12 153:14 153:22 153:25 154:3 154:4
154:5 154:6 154:11 155:9 155:12 155:12
155:13 155:14 155:16 156:4 156:8 156:13
156:16 156:17 156:23 156:25 156:25 157:7
157:11 157:15 157:18 157:19 157:24
158:8 158:11 158:14 158:20 158:24 159:1
159:2 159:5 159:11 159:21 159:22 159:23
159:24 159:25 160:4 160:8 160:17 160:24
160:24 161:4 161:5 161:16 161:18 161:22
161:22 162:14 162:23 163:15 164:5 164:8
164:17 164:19 165:1 165:3 165:4 165:6
165:7 165:18 165:19 165:21 166:2 166:22
166:22 167:3 167:14 167:16 168:4 168:4
168:5 168:7 168:8 168:11 168:12 168:13
168:14 168:15 168:19 168:19 168:21
168:23 169:3 169:5 169:21 169:24 169:24
170:5 170:8 170:8 170:10 170:20 170:22
171:11 171:12 171:16 171:17 171:18
171:19 171:24 172:8 172:16 172:16 172:1
172:24 172:24 173:1 173:7 173:9 173:11
173:24 173:24 174:3 174:4 174:19 174:21
175:3 175:9 175:12 175:13 175:15 176:3
176:14 176:24 176:25 177:7 177:10 177:12
177:24 179:7 179:19 179:22 180:9 181:4
181:14 181:9 182:1 182:24 182:25 182:25
185:8 185:9 185:10 185:14 185:15 185:20
186:1 186:2 186:15 186:17 186:17 186:23
187:8 187:19 188:19 188:24 189:1 189:14
189:25 190:2 190:5 190:7 190:10 190:12
190:16 190:24 191:4 191:6 191:6 191:8
191:16 191:19 191:10 191:12 191:15 191:15
191:16 191:20 191:25 192:12 192:14
192:17 192:17 192:19 192:22 193:2 193:3
193:5 193:9 193:16 194:15 194:25 195:13
195:19 196:3 196:7 196:11 196:14 196:22

that(301) 197:9 197:11 197:12 197:15
197:17 197:20 197:21 197:25 198:2 198:8
198:11 198:12 198:15 198:21 198:23 199:5
199:7 199:9 199:15 199:16 199:17 199:19
199:21 199:24 200:6 200:10 200:13 200:2
201:8 201:10 201:11 201:15 201:16
201:21 201:24 201:25 202:1 202:5 202:6
202:7 202:9 202:10 202:13 202:14 202:18
202:19 203:1 203:7 203:12 203:13 203:24
203:25 204:4 204:6 204:21 205:9 205:10
205:10 205:11 205:14 205:17 205:18
205:19 205:21 206:2 206:2 206:4 206:7
206:15 206:20 206:21 206:23 207:4 207:15
207:22 207:23 207:23 208:8 208:8 208:10
208:13 208:19 208:19 209:2 209:5 209:9
209:15 209:18 209:20 209:20 209:22
209:22 210:1 210:7 210:9 210:14 210:15
210:16 210:19 210:23 210:24 211:1 211:5
211:11 211:20 212:1 212:4 212:6 212:7
212:10 212:23 212:23 213:2 213:2 213:7
213:8 213:8 213:18 213:20 214:6 214:7
214:16 214:20 215:9 215:12 215:16 216:1
216:15 216:15 216:18 216:23 216:24
217:13 217:19 217:23 218:1 218:5 218:15
218:19 218:19 218:21 218:25 218:25 219:9
219:4 219:5 219:6 219:8 219:8 219:16
219:17 220:4 220:8 220:11 220:14 220:18
220:19 220:19 220:23 221:1 221:8 221:11
221:12 221:17 221:25 222:4 222:17 222:2
222:21 223:9 223:16 223:22 224:2 224:5
224:8 224:10 224:10 224:11 224:11 224:1
224:13 224:16 224:17 225:1 225:4 225:9
226:1 226:3 226:5 226:10 226:15 226:19
226:20 226:25 227:3 227:14 227:22 227:2
227:24 227:25 228:15 228:16 228:21
228:23 229:4 229:5 229:16 229:17 229:20
229:24 229:25 230:2 230:5 230:13 230:18
230:21 230:22 231:1 231:4 231:6 231:19
231:25 232:22 232:23 232:24 233:2 233:3
233:11 233:14 233:14 233:21 234:2 234:16
234:18 234:25 235:2 235:4 235:5 235:14
235:15 235:16 235:21 235:24 236:4 236:1
236:12 236:13 236:15 237:6 237:7 237:15
237:15 237:18 237:19 238:6 238:9 238:10
238:11 238:22 238:23 238:23 239:2 239:7
239:13 239:15 239:15 239:17 239:21
239:25 240:4 240:7 240:9 240:15 240:25
241:4 241:5 241:6 241:7 241:13 241:14
241:15 241:18 241:25 242:11 242:16
242:17 242:17 242:18 242:20 242:21
242:23 243:10 243:10 243:11 243:17
243:25 244:1 244:1 244:16 244:18 244:22

that(221) 244:25 245:1 245:3 245:3 245:4
245:5 245:8 245:12 245:16 246:2 246:3
246:5 246:11 246:15 247:1 247:6 247:10
247:21 247:22 247:23 247:25 249:6 249:19
250:1 250:4 250:5 250:10 250:13 251:5
251:10 251:14 251:19 251:20 251:22 252:1
252:3 252:4 252:10 252:11 252:21 252:24
253:5 253:13 253:23 254:2 254:7 254:8
254:9 254:16 254:20 254:21 254:25 255:4
255:11 255:17 255:21 256:10 256:14
256:20 256:21 256:23 256:23 256:25 257:1
257:1 257:4 257:14 258:16 258:16 258:19
259:16 259:17 259:18 259:25 259:25 260:8
260:11 260:12 260:14 260:14 261:7 261:8
261:11 261:24 262:10 262:14 263:5 263:6
263:21 263:21 264:1 264:5 264:12 264:20
265:17 265:21 265:23 265:25 265:25 266:2
266:2 266:4 266:25 267:1 267:3 267:3
267:4 267:5 267:7 267:18 267:18 267:19
267:20 267:22 267:23 267:24 268:6 268:12
268:23 268:24 269:1 269:7 269:8 269:10
269:11 269:14 269:18 269:19 269:25 270:3
270:4 270:11 270:16 270:16 270:21 271:5
271:7 271:8 271:14 271:18 271:22 271:24
271:25 272:2 272:4 272:10 272:14 272:16
272:17 272:25 273:4 273:13 273:14 273:15
273:20 273:23 274:3 274:3 274:16 274:19
274:19 274:22 274:23 275:8 275:17 275:22
275:23 275:23 276:3 276:6 276:12 276:12
276:14 276:16 277:17 277:24 278:5 278:8
278:11 278:12 278:14 278:18 278:23 279:7
279:9 279:9 279:21 280:12 280:19 280:22
280:25 281:1 281:2 281:4 281:6 281:7
281:8 281:9 281:10 281:11 281:13 281:14
281:22 282:1 282:6 282:8 282:11 282:12
282:17 282:18 282:19 282:22 282:23 283:1
283:4 283:10 283:11 283:13 283:16
283:20 284:6

**that's**(167) 25:17 30:7 34:14 34:15 34:15
36:6 42:11 45:2 45:22 46:9 47:23 48:1
49:3 50:19 54:9 55:5 55:16 55:25 57:21
57:21 64:8 64:18 65:15 65:22 68:14 68:15
69:1 74:11 75:21 75:25 77:6 80:12 82:4
84:16 85:9 85:16 86:5 87:13 88:1 89:12
160:14 161:12 162:1 163:20 163:24 166:4
169:13 170:16 171:25 171:25 172:10
172:11 172:12 173:16 173:16 175:1 175:5
175:16 175:25 179:1 179:8 179:11 180:5
181:1 181:16 182:23 184:2 184:8 184:10
184:14 189:5 190:9 192:6 192:15 193:20
195:10 196:2 197:22 199:20 199:20 200:19
201:13 207:7 207:11 207:18 207:21 208:1
209:5 210:4 211:23 214:22 214:23 215:4
215:11 216:5 216:14 218:18 225:4 225:7
225:13 225:17 225:20 226:3 226:14 226:22
227:2 227:5 227:7 227:8 227:13 227:18
228:3 228:20 228:23 228:23 230:17 231:16
231:18 231:24 232:9 233:4 233:7 233:10
234:15 234:15 237:14 237:17 238:8 240:12
240:14 240:20 242:1 242:3 242:3 243:21
244:6 245:8 249:11 250:23 251:21 254:8
258:1 258:2 259:22 260:2 261:13 262:16
262:19 263:10 264:3 264:4 264:14 264:19
265:22 266:7 267:15 269:23 270:18
272:19 274:14 275:24 277:2 277:7 279:24
280:5 283:10 283:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that's**(64) 94:2 94:15 95:2 100:20 101:13 102:18 104:1 106:13 107:19 107:20 107:23 108:25 109:5 109:12 110:20 113:4 113:11 113:12 113:16 114:9 114:23 117:14 118:23 119:13 121:3 122:11 125:18 129:22 129:24 131:9 131:22 132:19 133:11 133:22 133:22 134:15 134:25 135:15 136:13 137:5 138:13 139:2 139:19 140:21 142:6 142:17 144:5 144:15 144:19 145:18 146:5 147:8 148:8 148:8 148:22 150:13 151:5 151:5 151:24 152:10 152:23 153:2 153:15 154:10

**the**(301) 1:1 1:2 1:18 1:23 3:41 4:7 4:28 11:2 11:3 11:6 11:8 11:10 11:12 11:13 11:13 11:14 11:17 12:18 12:22 12:24 13:4 13:13 13:4 13:6 13:10 13:19 13:24 14:4 14:5 14:6 14:7 14:8 14:12 14:15 14:16 14:17 14:19 14:20 14:24 15:5 15:6 15:11 15:12 15:14 15:15 15:17 15:17 15:18 15:20 15:21 15:23 15:23 15:24 16:3 16:4 16:5 16:8 16:10 16:10 16:11 16:17 16:17 16:19 16:20 16:22 16:22 16:25 17:1 17:3 17:4 17:6 17:10 17:10 17:18 17:18 17:18 17:19 17:25 17:25 18:1 18:4 18:4 18:6 18:14 18:15 18:17 18:20 18:22 18:24 19:3 19:4 19:6 19:7 19:9 19:10 19:10 19:11 19:11 19:12 19:12 19:14 19:15 19:17 19:19 19:19 19:21 19:22 20:3 20:4 20:4 20:7 20:8 20:10 20:12 20:12 20:14 20:14 20:15 20:14 20:18 20:20 20:21 20:23 20:23 21:1 21:4 21:6 21:7 21:8 21:8 21:12 21:12 21:13 21:14 21:22 21:23 22:1 22:2 22:5 22:5 22:9 22:10 22:13 22:15 22:16 22:17 22:18 22:22 22:23 22:25 22:25 22:25 23:5 23:6 23:15 23:17 23:19 23:22 23:23 23:23 23:25 24:3 24:5 24:7 24:12 24:16 24:16 24:16 24:18 24:22 24:25 25:1 25:3 25:4 25:5 25:6 25:8 25:8 25:11 25:13 25:16 25:18 25:20 25:23 26:7 26:8 26:10 26:12 26:15 26:16 26:16 26:16 26:20 26:22 26:24 27:1 27:2 27:5 27:5 27:6 27:7 27:7 27:13 27:16 27:24 27:24 27:25 28:3 28:3 28:5 28:7 28:9 28:10 28:11 28:15 28:17 28:19 28:21 28:22 28:22 28:23 28:24 28:24 29:5 29:8 29:14 29:16 29:16 29:19 29:21 29:23 29:23 29:24 29:25 30:1 30:3 30:4 30:5 30:9 30:10 30:12 30:18 30:20 30:23 31:2 31:5 31:6 31:8 31:10 31:13 31:16 31:19 31:20 31:22 31:23 31:24 31:25 31:25 32:1 32:3 32:4 32:5 32:6 32:7 32:7 32:8 32:9 32:9 32:11 32:13 32:14 32:14 32:16 32:18 32:23 32:25 33:1 33:2 33:6 33:7 33:7 33:9 33:9 33:12 33:14 33:6 33:24 34:2 34:4 34:8 34:10 34:11 34:12 34:14 34:15 34:15 34:17 34:18 34:18 34:20

**the**(301) 34:21 34:21 34:22 34:22 34:23 34:24 34:25 34:25 35:1 35:2 35:2 35:2 35:3 35:4 35:6 35:8 35:9 35:10 35:12 35:13 35:17 35:18 35:18 35:19 35:19 35:19 35:22 35:23 35:24 35:24 36:2 36:3 36:3 36:7 36:8 36:9 36:10 36:11 36:14 36:14 36:15 36:15 36:16 36:23 36:24 36:24 36:25 36:25 37:1 37:2 37:3 37:5 37:5 37:6 37:7 37:11 37:11 37:15 37:15 37:16 37:17 37:19 37:20 37:21 37:22 37:22 37:24 38:1 38:2 38:3 38:7 38:7 38:11 38:12 38:13 38:13 38:14 38:15 38:15 38:16 38:16 38:17 38:18 38:19 38:21 38:22 38:23 38:24 39:4 39:5 39:6 39:10 39:16 39:17 39:17 39:18 39:19 39:19 39:22 39:23 39:23 39:23 40:1 40:2 40:2 40:3 40:4 40:5 40:6 40:7 40:7 40:7 40:8 40:10 40:10 40:11 40:11 40:14 40:16 40:19 40:22 40:24 40:25 40:25 41:2 41:4 41:6 41:8 41:13 41:13 41:14 41:14 41:16 41:16 41:16 41:17 41:20 41:22 41:25 42:3 42:4 42:7 42:9 42:10 42:10 42:17 42:20 42:20 42:21 42:21 42:24 43:1 43:3 43:6 43:11 43:12 43:13 43:17 43:19 43:19 43:23 43:24 43:24 44:4 44:7 44:8 44:9 44:12 44:14 44:15 44:15 44:15 44:22 44:25 45:19 46:18 46:18 46:19 47:2 47:2 47:8 47:9 47:9 47:9 47:12 47:10 47:12 47:16 47:18 47:18 47:20 47:20 47:23 48:10 48:10 48:13 48:15 48:18 48:19 48:22 49:2 49:4 49:9 49:10 49:11 49:11 49:12 49:13 49:14 49:14 49:17 49:17 49:23 49:25 50:1 50:5 50:5 50:9 50:14 50:21 50:25 51:12 51:13 51:16 51:20 51:20 51:21 52:2 52:4 52:7 52:8 52:15 52:24 53:1 53:6 53:7 53:9 53:12 53:13 53:15 53:16 53:18 53:19 53:20 53:22 53:23 53:23 53:25 54:2 54:2 54:7 54:8 54:9 54:10 54:13 54:16 54:21 54:24 54:25 55:3 55:5 55:6 55:7 55:12 55:13 55:22 55:23 55:23 55:25 56:4 56:4 56:6 56:10 56:15 56:16 56:17 56:23 57:2 57:3 57:5 57:6 57:7 57:7 57:8 57:10 57:11 57:14 57:14 57:18 57:19 57:20 57:22 57:23

**the**(301) 57:23 57:24 57:25 58:2 58:5 58:6 58:6 58:7 58:13 58:15 58:15 58:17 58:18 58:19 58:19 58:24 59:3 59:4 59:5 59:7 59:7 59:9 59:9 59:10 59:13 59:13 59:15 59:18 59:18 59:20 60:1 60:5 60:8 60:10 60:10 60:13 60:14 60:15 60:17 60:18 60:20 60:21 60:21 60:22 60:23 60:24 60:24 61:1 61:2 61:5 61:8 61:9 61:19 61:20 61:20 61:22 61:22 61:23 61:24 62:4 62:5 62:7 62:8 62:10 62:11 62:14 62:15 62:16 62:17 62:18 62:19 62:21 62:22 63:1 63:14 63:15 63:15 63:18 63:19 63:21 63:22 63:25 63:25 64:3 64:6 64:10 64:15 64:18 64:22 64:25 65:3 65:5 65:7 65:11 65:14 65:16 65:16 65:17 66:3 66:6 66:22 66:24 67:1 67:3 67:17 67:18 67:19 67:22 67:23 67:25 68:6 68:6 68:7 68:7 68:8 68:10 68:12 68:15 68:15 68:15 68:16 68:16 68:16 68:21 68:23 69:11 69:18 69:18 69:22 70:3 70:4 70:5 70:7 70:9 70:10 70:10 70:11 70:14 70:18 70:22 70:22 70:24 70:24 71:4 71:4 71:16 71:19 71:22 71:25 72:7 72:13 72:14 72:15 72:15 72:22 72:22 73:2 73:9 73:12 73:14 73:17 73:20 73:22 73:23 73:25 73:25 74:3 74:4 74:6 74:9 74:9 74:11 74:13 74:13 74:14 74:25 75:5 75:5 75:7 75:10 75:10 75:14 75:14 75:17 75:19 75:19 75:22 75:23 75:25 76:2 76:6 76:8 76:12 76:13 76:14 76:16 76:17 76:19 76:20 76:20 76:21 76:21 76:22 76:23 76:24 76:25 77:3 77:4 77:5 77:8 77:10 77:16 77:16 77:20 77:21 77:21 77:23 77:23 77:24 77:25 78:4 78:5 78:8 78:9 78:11 78:11 78:12 78:17 78:20 78:22 79:2 79:6 79:8 79:8 79:10 79:13 79:14 79:16 79:19 79:20 79:23 80:2 80:2 80:5 80:5 80:7 80:11 80:11 80:11 80:12 80:16 80:25 81:4 81:8 81:9 81:9 81:11 81:12 81:13 81:16 81:18 81:19 81:20 81:22 82:2 82:3 82:4 82:7 82:8 82:9 82:10 82:12 82:14 82:15 82:17 82:21 82:21 82:22

**the**(301) 82:22 82:23 83:1 83:4 83:8 83:9 83:13 83:18 83:24 83:25 84:9 84:12 84:12 84:13 84:14 84:18 84:19 84:19 84:22 84:24 84:25 85:1 85:1 85:3 85:4 85:6 85:8 85:11 85:16 85:17 85:17 85:17 85:18 85:20 85:21 85:22 85:24 86:1 86:2 86:2 86:7 86:8 86:10 86:10 86:14 86:15 86:15 86:15 86:16 86:17 86:19 86:19 86:22 86:23 87:1 87:5 87:5 87:12 87:14 87:15 87:17 87:18 87:21 87:23 88:3 88:5 88:8 88:10 88:10 88:11 88:12 88:14 88:16 88:16 88:18 88:20 88:22 89:1 89:2 89:3 89:8 89:10 89:11 89:16 89:18 89:20 89:24 89:25 90:4 90:6 90:8 90:10 90:13 90:14 90:16 90:17 90:18 90:19 90:20 90:21 90:22 90:23 90:24 90:24 90:25 91:5 91:6 91:7 91:7 91:12 91:13 91:15 91:17 91:18 92:9 92:19 92:23 92:24 93:1 93:2 93:3 93:3 93:4 93:21 94:6 94:6 94:8 94:15 94:16 94:17 94:18 94:20 94:25 95:4 95:7 95:13 95:14 95:21 95:22 95:25 96:7 96:16 96:25 97:1 97:3 97:6 97:7 97:8 97:9 97:10 97:14 97:14 97:19 97:20 97:20 97:21 97:22 97:22 97:23 97:24 97:25 98:1 98:3 98:3 98:4 98:7 98:8 98:10 98:10 98:12 98:14 98:16 98:16 98:17 98:17 98:19 98:19 98:20 98:22 98:24 99:2 99:4 99:12 99:12 99:14 99:14 99:15 99:15 99:16 99:16 99:19 99:19 99:20 99:21 99:23 99:25 100:5 100:6 100:10 100:15 100:16 100:16 100:19 100:19 100:20 100:20 100:22 100:23 100:24 100:25 100:25 101:1 101:2 101:3 101:11 101:12 101:12 101:13 101:13 101:15 101:16 101:16 101:16 101:19 101:19 101:20 101:21 101:21 101:22 101:22 101:23 101:24 102:1 102:2 102:4 102:5 102:6 102:8 102:10 102:11 102:12 102:13 102:13 102:20 102:21 102:21 102:22 102:22 102:25 103:1 103:3 103:9 103:10 103:14 103:15 103:16 103:17 103:18 103:19 103:24 104:2 104:2 104:3 104:4 104:7 104:8 104:8 104:8 104:10 104:10 104:11 104:12 104:13 104:13 104:14 104:15 104:16 104:16 104:16 104:17 104:20 104:22 104:24 105:2 105:4 105:4 105:7 105:12 105:14 105:14 105:14 105:16 105:19 105:19 105:20 105:21 105:21 105:22 105:25 106:1 106:1 106:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) | | the(301) | | the(301) | | the(301) | |

the(301) 106:9 106:12 106:15 106:23
106:24 107:1 107:1 107:5 107:7 107:7
107:9 107:11 107:15 107:16 107:16 107:1
107:23 107:25 108:2 108:8 108:9 108:10
108:12 108:15 108:18 108:18 108:20
108:20 108:21 108:21 108:24 108:25 109:
109:3 109:5 109:7 109:8 109:10 109:10
109:11 109:12 109:15 109:18 109:20
109:20 109:21 110:2 110:3 110:5 110:6
110:6 110:8 110:9 110:11 110:13 110:14
110:14 110:18 110:19 110:20 110:21
110:24 111:4 111:5 111:8 111:15 111:16
111:16 111:16 111:18 111:19 111:23
111:23 111:25 111:25 112:1 112:1 112:2
112:3 112:8 112:9 112:17 112:18 112:19
112:19 112:20 112:23 113:5 113:7 113:7
113:8 113:8 113:10 113:10 113:11 113:12
113:13 113:13 113:13 113:15 113:15
113:15 113:19 113:22 113:24 113:24
113:25 114:2 114:3 114:3 114:4 114:6
114:7 114:11 114:13 114:15 114:16 114:1
114:17 114:17 114:18 114:20 114:20
114:22 114:22 114:23 115:3 115:3 115:4
115:6 115:6 115:7 115:8 115:9 115:10
115:12 115:12 115:13 115:14 115:16
115:16 115:17 115:18 115:21 115:22
115:23 115:23 116:3 116:3 116:4 116:9
116:11 116:12 116:13 116:14 116:17
116:17 116:18 116:22 116:22 116:24 117:
117:5 117:5 117:7 117:8 117:9 117:12
117:15 117:17 117:18 117:18 117:19
117:20 117:21 117:25 118:3 118:6 118:8
118:11 118:16 118:16 118:17 118:18
118:19 118:20 118:22 119:1 119:2 119:3
119:6 119:8 119:10 119:10 119:14 119:19
120:1 120:8 120:10 120:11 120:15 120:16
120:16 120:17 120:18 120:19 120:19
120:20 120:21 120:24 121:1 121:2 121:4
121:5 121:7 121:12 121:13 121:16 121:19
121:20 121:23 121:24 122:1 122:2 122:4
122:5 122:6 122:8 122:8 122:17 122:17
122:19 122:19 122:20 122:23 122:24
122:25 123:1 123:2 123:3 123:5 123:5
123:7 123:11 123:12 123:14 123:16 123:1
124:5 124:5 124:6 124:8 124:10 124:12
124:12 124:13 124:15 124:17 124:19
124:23 124:24 124:24 124:25 124:25 125:
125:6 125:13 125:14 125:16 125:17
125:19 125:19 125:19 126:1 126:2 126:3
126:3 126:4 126:5 126:7 126:7 126:11
126:23 126:24 126:24 126:25 126:25
126:25 127:1 127:3 127:8 127:10 127:17
127:19 127:23 127:25 128:1 128:3 128:11
128:12 128:14

the(301) 128:14 128:16 128:21 128:21
128:22 129:4 129:4 129:6 129:7 129:10
129:14 129:20 130:1 130:6 130:7 130:9
130:10 130:16 130:17 130:18 130:19
130:20 130:23 130:25 131:1 131:1 131:2
131:2 131:4 131:5 131:8 131:9 131:12
131:12 131:12 131:13 131:15 131:17
131:18 131:19 131:20 131:22 131:24
131:24 131:25 132:1 132:2 132:3 132:4
132:4 132:6 132:8 132:11 132:17 132:18
132:19 132:19 132:20 132:24 133:1 133:1
133:18 133:19 133:20 133:25 134:1 134:2
134:3 134:4 134:5 134:8 134:9 134:14
134:15 134:21 134:22 134:23 135:1 135:2
135:3 135:4 135:5 135:6 135:13 135:14
135:18 135:20 135:21 135:21 135:23
135:24 136:1 136:2 136:3 136:7 136:8
136:8 136:9 136:9 136:11 136:13 136:14
136:17 136:18 136:18 136:19 136:20
136:20 136:22 136:23 137:3 137:9 137:9
137:9 137:11 137:16 137:19 137:21 137:2
137:23 138:1 138:2 138:6 138:7 138:9
138:11 138:11 138:14 138:18 138:20
138:20 138:21 138:24 139:4 139:5 139:8
139:9 139:11 139:15 139:16 139:19 139:2
139:21 139:25 140:1 140:1 140:2 140:3
140:8 140:8 140:12 140:17 140:20 140:23
140:25 141:1 141:10 141:11 141:11 141:1
141:16 141:18 141:18 141:19 141:23
142:1 142:3 142:5 142:6 142:7 142:8
142:8 142:12 142:13 142:16 142:20 142:2
142:22 142:23 142:23 143:2 143:5 143:5
143:6 143:7 143:8 143:8 143:10 143:10
143:12 143:15 143:17 143:17 143:18
143:19 143:20 143:21 143:25 144:2 144:3
144:3 144:4 144:9 144:10 144:12 144:14
144:15 144:15 144:18 144:19 144:20
144:20 144:21 144:21 144:24 144:25
145:6 145:8 145:9 145:11 145:16 145:19
145:20 145:25 145:25 146:3 146:3 146:4
146:4 146:4 146:5 146:5 146:6 146:9
146:12 146:13 146:14 146:14 146:14
146:23 146:24 146:24 146:24 146:25 147:
147:2 147:3 147:4 147:4 147:4 147:5
147:6 147:8 147:10 147:10 147:11 147:12
147:13 147:14 147:14 147:15 147:16
147:19 147:25 148:1 148:5 148:6 148:7
148:10 148:11 148:13 148:13 148:14
148:15 148:16 148:17 148:17 148:19
148:20 149:2 149:3 149:5 149:6 149:8
149:8 149:8 149:10 149:15 149:16 149:17
149:17 149:18 149:18 149:20 149:21

the(301) 149:25 150:2 150:4 150:6 150:7
150:11 150:12 150:15 150:15 150:15
150:18 150:20 150:21 150:22 150:24
150:25 151:2 151:4 151:8 151:8 151:15
151:19 151:20 151:22 151:24 151:24
151:25 152:5 152:8 152:13 152:15 152:16
152:16 152:17 152:17 152:19 152:19
152:20 152:23 153:3 153:4 153:8 153:9
153:10 153:12 153:15 153:15 153:18
153:18 153:19 153:20 153:25 154:1 154:1
154:5 154:7 154:10 154:11 154:14 154:17
154:20 155:1 155:4 155:5 155:8 155:11
155:12 155:17 155:23 155:24 155:24 156:
156:1 156:3 156:3 156:6 156:8 156:9
156:9 156:15 156:16 156:17 156:20 156:2
156:25 157:4 157:7 157:8 157:9 157:9
157:11 157:14 157:15 157:19 157:20
157:20 158:1 158:4 158:7 158:10 158:11
158:12 158:14 158:14 158:15 158:16
158:17 158:19 158:19 158:21 158:21
158:21 158:23 158:24 159:3 159:4 159:7
159:9 159:11 159:13 159:13 159:14 159:1
159:18 159:19 159:20 159:21 160:2 160:3
160:5 160:5 160:8 160:11 160:12 160:13
160:14 160:16 160:17 160:19 160:23
160:25 161:1 161:2 161:4 161:5 161:6
161:7 161:10 161:14 161:16 161:18 161:2
161:20 161:22 161:24 161:25 161:25
162:1 162:3 162:5 162:8 162:9 162:10
162:11 162:13 162:15 163:1 163:3 163:9
163:10 163:11 163:11 163:13 163:13
163:15 163:15 163:16 163:18 163:20
163:21 163:23 164:1 164:1 164:8 164:10
164:13 164:17 164:18 164:19 164:19
164:21 164:23 164:25 165:3 165:6 165:7
165:8 165:9 165:11 165:11 165:12 165:13
165:13 165:16 165:19 165:24 165:25 166:
166:8 166:15 166:15 166:21 166:22
166:25 166:25 167:5 167:6 167:7 167:7
167:8 167:9 167:17 167:18 167:19 167:21
167:24 167:25 168:4 168:4 168:5 168:7
168:8 168:8 168:11 168:12 168:13 168:20
168:21 168:22 168:23 168:25 168:25 169:
169:4 169:6 169:7 169:7 169:8 169:9
169:9 169:10 169:11 169:11 169:12 169:1
169:15 169:15 169:16 169:21 169:22
169:23 169:25 169:25 170:3 170:5 170:5
170:10 170:24 170:25 170:25 171:1 171:4
171:4 171:5 171:6 171:8 171:8 171:9
171:25 172:1 172:2 172:3 172:4 172:4
172:5 172:9 172:10 172:10 172:18 172:19
172:21 172:21 172:21 173:3 173:4 173:6

the(301) 173:8 173:14 173:16 173:18
173:20 173:21 173:23 174:3 174:4 174:5
174:6 174:9 174:10 174:10 174:11 174:14
174:17 174:22 174:22 174:24 175:2 175:7
175:8 175:8 175:9 175:10 175:10 175:11
175:12 175:14 175:18 175:20 175:22
175:22 175:23 175:25 176:1 176:2 176:3
176:5 176:5 176:6 176:9 176:11 176:12
176:12 176:14 176:15 176:17 176:20
176:22 176:23 176:23 176:25 177:3 177:7
177:13 177:17 177:17 177:22 177:24 178:3
178:4 178:5 178:6 178:14 178:15 178:16
178:17 178:24 179:2 179:2 179:10 179:12
179:13 179:16 179:18 179:20 179:20
179:22 179:23 180:9 180:9 180:10 180:16
180:17 180:20 180:21 180:22 180:23 181:4
181:4 181:6 181:7 181:7 181:11 181:14
181:18 181:23 182:1 182:4 182:7 182:13
182:16 182:17 182:19 182:22 182:23
182:23 183:6 183:7 183:8 183:9 183:9
183:9 183:12 183:15 183:20 183:24 183:25
184:3 184:6 184:8 184:8 184:14 184:15
184:25 185:1 185:5 185:5 185:5 185:9
185:12 185:13 185:13 185:13 185:14
185:15 185:18 185:19 185:23 186:1 186:2
186:3 186:4 186:5 186:8 186:9 186:11
186:12 186:13 186:14 186:18 186:24 187:2
187:3 187:5 187:8 187:12 187:15 188:1
188:8 188:8 188:9 188:11 188:13 188:14
188:15 188:16 188:17 188:17 188:20
188:22 188:23 189:6 189:13 189:14 189:19
189:20 189:21 189:21 190:3 190:4 190:12
190:13 190:14 190:16 190:17 190:19
190:19 190:20 190:21 190:24 190:25
190:25 191:3 191:3 191:4 191:4 191:9
191:9 191:10 191:10 191:12 191:15 191:15
191:23 192:1 192:2 192:4 192:7 192:9
192:9 192:12 192:13 192:14 192:18 192:21
192:24 193:6 193:9 193:15 193:23 193:24
194:6 194:6 194:7 194:8 194:10 194:11
194:16 194:19 194:23 194:25 195:4 195:7
195:8 195:13 195:13 195:15 195:15 195:19
195:20 196:8 196:9 196:9 196:12 196:15
196:15 196:17 196:18 196:20 196:21 197:3
197:4 197:7 197:8 197:12 197:14 197:16
197:18 197:20 197:20 197:20 197:22
197:23 197:23 197:24 198:2 198:3 198:4
198:5 198:6 198:9 198:12 198:13 198:19
198:20 198:24 198:25 199:5 199:6 199:12
199:13 199:15 199:17 199:18 199:19
199:20 200:5 200:6 200:7 200:16 200:20
200:21 200:24 200:24 200:25 201:6 201:6
201:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) | 201:11 201:11 201:15 201:17 201:19 201:24 202:1 202:4 202:6 202:15 202:16 202:16 202:17 202:17 202:20 202:21 202:22 203:1 203:1 203:4 203:5 203:7 203:9 203:12 203:13 203:16 203:17 203:19 203:24 203:24 204:1 204:1 204:4 204:5 204:6 204:10 204:19 204:20 204:20 204:22 204:25 204:25 205:4 205:5 205:8 205:9 205:11 205:12 205:14 205:17 205:17 205:19 205:21 206:2 206:5 206:5 206:7 206:10 206:10 206:12 206:13 206:1 206:15 206:16 206:17 206:19 206:20 206:21 206:22 206:22 206:23 207:2 207:2 207:8 207:9 207:13 207:16 207:22 207:22 207:23 207:24 207:24 207:25 208:3 208:4 208:7 208:8 208:10 208:12 208:13 208:15 208:16 208:18 208:18 208:19 208:24 208:24 209:1 209:3 209:3 209:3 209:5 209:6 209:9 209:11 209:13 209:14 209:15 209:16 209:16 209:18 209:21 209:22 209:23 209:24 209:25 209:25 210: 210:1 210:5 210:8 210:9 210:9 210:11 210:12 210:13 210:15 210:17 210:18 210:20 210:21 210:21 210:21 211:1 211:2 211:3 211:4 211:4 211:8 211:11 211:12 211:18 211:19 211:20 211:22 211:24 212: 212:4 212:10 212:10 212:14 212:15 212:16 212:17 212:18 212:22 212:23 212:25 213:3 213:6 213:6 213:9 213:9 213:15 213:15 213:18 213:19 213:19 213:20 213:21 214:9 214:13 214:16 214:2 214:24 215:4 215:5 215:5 215:6 215:6 215:9 215:12 215:13 215:13 215:14 215:1 216:2 216:3 216:4 216:6 216:11 216:16 216:20 216:20 217:1 217:2 217:3 217:4 217:8 217:9 217:10 217:11 217:13 217:19 217:23 217:23 218:2 218:4 218:6 218:6 218:8 218:12 218:13 218:15 218:16 218:1 218:19 218:21 218:22 218:25 219:3 219:5 219:6 219:7 219:7 219:8 219:9 219:11 219:12 219:16 219:16 219:22 219:25 220: 220:5 220:6 220:10 220:14 220:14 220:15 220:15 220:19 220:23 221:1 221:8 221:12 221:18 221:25 222:1 222:3 222:4 222:4 222:6 222:8 222:9 222:11 222:11 222:14 222:15 222:18 222:19 222:23 223:2 223:7 223:7 223:8 223:10 223:14 223:15 224:7 224:8 224:10 224:14 224:17 224:2 224:23 225:1 225:4 225:8 225:9 225:9 225:11 225:14 225:18 225:20 225:24 226: 226:3 226:5 226:5 226:7 226:11 226:16 226:16 226:17 226:19 226:19 226:20 | the(301) | 226:23 227:3 227:4 227:5 227:5 227:7 227:7 227:11 227:12 227:14 227:15 227:20 227:21 227:23 227:23 228:3 228:4 228:5 228:12 228:20 228:21 228:22 228:22 229:6 229:6 229:7 229:9 229:15 229:17 229:21 229:25 230:2 230:4 230:8 230:10 230:10 230:11 230:15 230:16 231:1 231:3 231:5 231:6 231:8 231:8 231:9 231:13 231:14 231:15 231:17 231:20 231:20 231:21 231:21 231:22 231:25 231:25 232:1 232:3 232:3 232:4 232:6 232:7 232:7 232:10 232:11 232:11 232:11 232:14 232:14 232:15 232:18 232:18 232:19 232:21 232:21 232:21 232:23 232:24 233:2 233:2 233:3 233:6 233:11 233:14 233:17 233:18 233:18 233:19 233:19 233:21 233:21 233:24 234:3 234:5 234:7 234:7 234:10 234:12 234:13 234:14 234:16 234:24 234:24 235:1 235:2 235:6 235:7 235:15 235:17 235:19 235:22 235:22 235:25 236:7 236:13 236:13 236:15 236:16 236:19 236:21 236:25 237:3 237:4 237:5 237:6 237:6 237:12 237:17 237:19 237:20 237:25 238:18 238:22 238:22 238:25 239:2 239:4 239:8 239:12 239:14 239:16 239:16 239:18 239:19 239:19 239:19 239:24 240:7 240:1 240:12 240:15 240:22 240:23 240:25 241:4 241:7 241:9 241:10 241:10 241:11 241:17 241:23 241:24 241:25 242:2 242:4 242:8 243:4 243:8 242:12 242:16 242:17 242:18 243:4 243:8 243:10 243:11 243:14 243:15 243:23 244: 244:4 244:7 244:9 244:10 244:13 244:15 244:17 244:18 244:20 244:22 244:24 244:24 244:25 245:3 245:5 245:6 245:7 245:12 245:17 245:19 245:22 245:24 246: 246:5 246:8 246:9 246:9 246:10 246:10 246:12 246:13 246:14 246:14 247:4 247:5 246:25 247:6 247:7 247:7 247:8 247:9 247:10 247:12 247:14 247:16 247:16 248:5 248:7 248:11 248:16 248:19 248:2 249:6 249:11 249:12 249:18 249:19 249:2 249:21 249:21 249:23 250:2 250:4 250:7 250:8 250:9 250:10 250:15 250:16 250:18 251:15 251:18 251:25 252:1 252:1 252:5 252:7 252:8 252:10 252:10 252:11 252:14 252:15 252:23 252:24 253:3 253:8 253:9 253:12 253:13 253:14 253:14 253:1 253:15 253:15 253:16 253:16 253:16 253:17 253:17 253:17 253:19 | the(301) | 253:19 253:22 253:24 253:24 254:2 254:3 254:3 254:4 254:5 254:6 254:6 254:6 254:14 254:14 254:17 254:19 254:21 254:21 254:24 254:25 254:25 255:7 255:9 255:11 255:16 255:18 255:19 255:21 256:1 256:6 256:12 256:14 256:15 256:16 256:16 256:18 256:18 256:19 256:20 256:24 256:25 256:25 257:1 257:2 257:3 257:5 257:5 257:6 257:9 257:12 257:13 257:17 257:21 257:22 257:23 258: 258:9 258:11 258:15 258:16 258:16 258:17 258:18 258:18 258:18 258:21 258:23 258:24 258:25 258:25 259:1 259:1 259:3 259:5 259:8 259:8 259:11 259:13 259:13 259:15 259:15 259:17 259:19 259:19 259:20 259:20 259:25 260:3 260:4 260:5 260:6 260:6 260:9 260:12 260:15 260:17 260:20 260:22 260:25 261:3 261:5 261:5 261:6 261:6 261:7 261:8 261:13 261:14 261:14 261:15 261:19 261:22 261:24 261:25 262:1 262:2 262:11 262:12 262:13 262:13 262:14 262:14 262:15 262:17 262:18 262:18 262:18 262:22 262:25 263:1 263:1 263:2 263:2 263:4 263:5 263:9 263:15 263:16 263:18 263:23 263:23 263:23 263:25 264:4 264:5 264:8 264:9 264:12 264:13 264:13 264:14 264:15 264:18 264:19 264:20 264:22 264:24 264:24 264:25 265:2 265:4 265:6 265:11 265:13 265:10 265:14 265:17 265:18 265:20 265:20 265:24 265:24 265:25 266:1 266:4 266:5 266:6 266:9 266:16 266:18 266:23 266:24 266:25 267:1 267:2 267:5 267:6 267:12 267:13 267:14 267:17 267:19 267:20 267:20 267:21 267:22 267:24 268:1 268:7 268:9 268:13 268:13 268:14 268:15 268:15 268:16 268:18 268:18 268:23 268:23 268:24 268:25 268:25 269:1 269:2 269:9 269:10 269:14 269:15 269:17 269:20 269:22 270:1 270:3 270:4 270:4 270:6 270:6 270:7 270:10 270:16 270:23 270:23 270:24 270:24 270:25 270:25 271:1 271:5 271:5 271:14 271:16 271:17 271:17 271:24 271:25 272:2 272:5 272:6 272:7 272:10 272:21 272:24 273:7 273:9 273:9 273:12 273:12 273:22 273:24 274:10 274:11 274:8 274:16 274:16 274:16 274:17 274:18 274:20 274:20 274:21 274:24 274:24 274:25 275:3 275:3 275:6 275:7 275:14 275:16 275:17 275:20 275:2 276:4 276:10 276:12 | their(44) | 14:25 19:10 22:15 22:19 26:23 36:18 42:8 50:8 54:18 80:17 90:1 92:11 92:22 92:24 107:24 110:7 113:10 128:5 132:3 138:3 142:14 150:1 161:13 161:21 166:24 167:1 183:6 183:8 185:23 187:17 188:15 188:16 197:13 199:9 200:3 208:21 209:11 212:24 238:1 272:6 272:12 272:13 273:24 276:9 |
| | | | | | | them(88) | 15:4 21:16 22:3 22:4 22:4 22:7 30:21 30:24 31:5 35:21 36:18 52:16 57:22 58:21 59:25 60:2 60:4 60:6 60:12 60:16 61:4 61:20 62:5 62:13 69:16 72:5 87:4 103:11 106:6 106:7 109:22 112:17 115:25 116:1 116:1 117:22 128:17 131:3 141:5 144:8 144:20 145:20 148:7 148:12 150:11 156:18 164:20 166:24 167:1 167:6 176:23 177:8 178:3 181:8 183:24 184:1 184:1 184:19 184:20 184:21 184:24 185:4 185:8 187:14 187:14 188:21 190:4 191:6 200:6 203:22 205:23 208:25 222:12 228:2 229:14 238:15 238:17 239:4 239:11 239:21 243:5 243:7 243:23 252:2 253:4 254:15 262:5 263:20 |
| | | | | | | themselves(5) | 37:17 128:4 157:20 158:7 225:18 |
| | | | | | | then(178) | 12:5 14:5 14:8 19:12 19:15 19:23 26:13 26:23 28:11 34:7 34:23 34:24 35:2 35:17 37:10 48:3 57:7 65:20 65:25 69:17 74:9 86:2 92:9 92:10 92:12 92:13 92:15 92:23 92:25 97:22 98:2 98:7 98:13 101:3 101:8 102:14 102:17 102:25 106:2 106:11 106:25 107:11 108:13 108:21 110:1 110:11 111:2 112:20 113:7 113:9 113:25 114:18 114:20 115:4 117:15 117:20 118:4 119:3 119:22 120:22 121:1 121:8 122:1 122:22 123:4 123:7 123:20 124:2 127:2 127:20 129:14 132:17 134:8 135:1 136:13 137:7 137:11 137:15 138:1 138:24 139:24 141:13 141:22 141:23 143:5 144:8 144:18 148:17 150:3 150:4 152:5 152:18 153:3 153:22 153:24 155:5 155:16 157:22 159:22 160:3 160:4 161:23 161:25 162:8 163:12 165:17 165:22 166:2 167:12 168:2 171:6 171:16 171:19 171:23 172:3 172:24 173:8 175:8 176:17 177:3 184:8 187:12 188:4 190:12 191:3 191:10 193:1 193:2 197:25 199:4 204:8 204:16 205:19 206:1 209:25 211:4 211:7 211:12 212:2 213:5 213:14 220:10 224:18 226:16 228:16 229:6 232:17 234:11 240:17 242:15 244:10 245:2 245:11 246:17 246:25 247:17 247:21 249:22 250:3 252:22 253:5 255:13 255:14 260:23 263:19 264:8 265:1 265:7 266:11 267:12 267:17 268:3 276:21 276:5 282:9 282:11 282:20 283:21 |
| | | | | | | the(101) | 276:17 276:19 276:21 277:1 277:3 277:6 277:11 277:14 277:18 277:19 277:22 278:1 278:2 278:3 278:4 278:5 278:5 278:12 278:13 278:14 278:14 278:1 278:17 278:19 278:20 278:21 278:21 278:22 278:25 279:2 279:3 279:4 279:4 279:5 279:6 279:8 279:12 279:14 279:19 279:20 279:21 280:2 280:3 280:6 280:8 280:10 280:12 280:13 280:17 280:17 280:18 280:22 280:25 280:25 281:1 281:6 281:10 281:11 281:11 281:12 281:13 281:13 281:14 281:15 281:16 281:19 281:24 282:3 282:13 282:16 282:16 282:19 282:19 282:22 282:22 282:23 282:24 282:24 282:25 282:25 282:25 283:1 283:1 283:1 283:5 283:7 283:7 283:9 283:13 283:14 283:15 283:18 283:20 283:23 283:24 284:1 284:6 284:7 284:7 284:8 |
| | | | | | | theory(2) | 151:21 176:3 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**there**(227) 13:6  14:10  15:2  15:14  15:17  17:10  18:20  18:23  19:2  19:3  19:4  19:5  19:6  19:6  19:13  19:13  19:13  20:16  21:13  21:15  22:24  27:6  27:14  27:22  28:23  28:23  28:24  28:24  28:25  29:1  29:14  29:16  30:6  30:9  31:4  31:11  32:2  32:4  33:5  33:13  33:25  34:1  34:3  35:15  35:24  36:2  37:18  37:23  38:9  38:11  41:9  42:12  42:15  42:20  48:2  48:13  48:19  56:20  59:10  59:24  62:5  65:13  71:24  72:19  74:18  75:2  76:9  76:16  77:8  78:2  78:4  78:6  79:11  81:7  83:24  84:3  84:4  86:4  86:5  88:20  91:24  92:5  95:16  98:18  99:13  100:9  100:11  100:22  103:16  104:6  104:12  105:4  107:4  109:24  110:1  110:5  110:16  111:3  117:23  119:18  120:4  121:14  121:15  122:3  122:8  123:23  125:11  127:2  127:5  127:12  127:12  127:24  128:8  128:11  129:3  129:15  130:11  130:23  131:13  131:23  132:7  132:20  133:16  134:1  138:8  138:8  139:14  141:9  141:11  142:24  143:1  143:3  143:4  143:5  143:20  148:20  149:9  149:22  149:25  150:17  151:10  151:13  156:9  156:10  157:17  158:13  164:11  165:7  166:12  166:16  170:8  170:12  171:23  171:24  171:25  172:15  172:18  172:20  173:14  175:6  179:16  181:9  181:24  183:1  184:10  185:22  189:15  189:15  189:16  189:17  190:13  190:17  196:10  198:1  198:7  198:11  199:6  199:8  202:10  202:12  206:11  207:4  207:17  208:12  210:5  212:2  214:3  216:6  216:20  218:20  220:18  222:17  223:18  223:21  223:22  224:22  226:11  226:13  227:25  229:8  229:10  233:1  233:3  235:9  236:2  236:6  236:10  239:6  240:25  243:22  244:16  244:18  248:22  249:25  251:2  253:9  260:14  260:25  266:19  270:22  271:1  275:5  276:3  276:24  277:1  279:15  281:20

**there'll**(3) 282:8  282:20  282:21

**there's**(44) 22:12  22:13  35:14  36:4  36:5  36:9  37:25  39:14  40:5  51:13  62:22  74:22  74:23  77:22  77:22  80:15  162:8  163:4  163:22  164:8  164:21  165:3  168:10  169:20  171:24  172:20  173:12  176:4  184:8  194:3  199:7  215:15  218:12  218:16  219:13  219:11  223:22  223:23  225:11  241:24  264:9  267:9  267:18  271:6

**thereafter**(1) 26:24

**therefore**(23) 24:3  94:24  113:13  120:14  121:21  124:11  125:7  125:10  126:8  127:4  130:8  130:13  130:17  131:21  138:16  151:1  161:5  167:14  176:20  213:23  242:20  244:22  247:24

**there's**(45) 99:14  107:14  111:21  111:22  116:15  117:11  119:17  124:16  124:16  125:4  127:23  130:9  130:22  133:2  133:13  133:13  133:14  133:22  135:25  136:4  136:5  136:13  136:23  137:7  137:8  137:10  138:12  141:4  141:10  141:18  149:21  150:5  150:17  150:24  151:2  151:10  151:12  151:14  151:15  151:19  151:20  151:21  152:1  153:21  154:3

**these**(71) 18:21  24:10  29:3  39:14  40:23  42:2  43:25  56:5  58:14  63:5  67:23  88:21  88:23  89:7  93:13  106:23  109:15  110:24  111:12  111:24  118:18  119:1  124:14  124:17  124:20  125:5  126:1  135:24  139:1  139:3  139:14  142:10  143:9  145:7  145:14  148:10  150:3  153:3  153:11  156:10  156:11  158:4  159:6  169:10  178:2  183:16  183:23  184:18  187:16  196:24  198:3  200:8  202:25  226:24  227:1  227:10  227:22  228:1  230:6  230:12  230:19  231:5  238:23  239:21  241:15  252:4  254:24  256:24  257:23  262:4  265:8

**they**(203) 14:25  15:1  15:2  15:8  15:9  17:1  18:2  18:5  19:22  19:24  21:7  21:8  21:9  21:14  22:23  29:7  31:25  32:17  34:7  34:22  34:24  35:22  36:19  36:20  37:7  37:9  37:10  37:11  37:14  37:15  37:16  37:16  40:23  50:7  53:8  53:15  53:16  53:17  53:19  54:1  54:18  58:2  58:3  58:5  58:5  58:6  58:11  58:20  58:23  59:5  59:23  59:25  60:5  60:12  60:14  60:15  60:19  60:20  60:21  60:22  60:24  60:25  61:7  62:3  62:14  65:6  66:12  67:7  67:9  69:14  72:3  73:4  74:12  74:19  75:17  78:13  78:14  78:15  79:15  82:11  82:12  82:12  82:17  82:23  83:7  84:9  86:4  87:10  87:13  92:23  92:24  96:17  97:5  97:19  100:25  102:21  102:21  102:22  104:14  106:25  107:5  107:24  108:16  108:21  108:21  110:4  110:4  113:9  114:15  115:13  120:13  120:18  122:20  122:22  123:3  123:4  125:2  125:21  125:22  125:23  125:23  128:2  128:2  128:23  128:4  128:6  128:7  128:9  128:20  128:22  128:23  129:8  130:8  131:15  131:16  133:10  135:24  138:3  141:13  141:15  142:5  142:23  142:24  142:25  142:25  143:1  143:5  143:12  147:13  148:2  148:18  148:18  148:21  150:3  150:10  150:15  150:16  153:20  153:22  153:23  153:25  155:15  156:11  161:14  162:4  163:10  163:10  166:23  169:3  172:6  175:24  183:6  183:8  184:6  185:23  187:5  197:15  199:1  199:2  199:5  200:2  200:9  202:16  208:22  210:10  210:11  216:16  219:14  226:9  234:6  238:1  243:12  244:1  247:15  247:15  247:23  254:10  260:21  262:19  272:13  274:6  274:7  279:1

**they're**(25) 13:16  34:7  37:3  42:8  59:4  60:15  84:21  84:25  86:17  88:25  89:8  156:18  165:8  167:2  167:3  175:24  187:17  200:13  219:10  219:15  233:18  263:19  263:20  274:6  282:18

**they've**(4) 42:2  74:10  168:9  219:15

**they'll**(1) 149:3

**they're**(17) 110:3  111:10  113:16  118:9  118:10  123:2  124:14  128:9  128:18  139:5  143:23  144:6  147:12  148:18  148:19  148:2  148:22

**they've**(4) 90:1  114:19  131:16  148:20  117:5  128:11  152:13  159:25  161:7  163:23  167:5  206:5  206:6  206:10  278:14  283:3  283:12

**things**(14) 86:17  89:7  97:12  97:17  97:18  116:21  159:19  160:12  162:16  162:20  162:23  228:2  256:1  278:14

**think**(244) 18:23  18:24  19:6  20:13  21:8  23:15  23:18  24:9  25:15  25:18  25:20  25:22  26:10  28:8  29:20  30:9  35:11  35:12  35:14  35:21  36:6  36:8  36:20  38:23  38:24  39:21  40:21  41:17  42:7  42:19  42:21  43:1  43:22  47:8  48:8  48:14  51:1  51:3  51:18  52:19  52:21  53:1  53:9  53:16  53:24  54:1  55:7  55:10  56:14  57:1  57:21  57:21  59:2  59:4  60:19  60:20  61:5  61:8  64:14  64:17  67:10  68:14  69:1  69:7  69:11  70:25  71:3  74:25  75:21  76:2  77:25  78:18  79:20  79:23  83:23  84:8  85:14  86:10  87:7  87:11  87:12  88:22  89:8  89:24  93:17  100:24  104:13  106:9  106:10  107:14  107:15  109:15  113:1  114:1  114:15  115:2  116:6  117:7  117:8  117:9  117:9  119:17  126:7  127:5  129:6  130:20  130:21  131:5  131:5  131:25  132:4  134:1  135:24  137:5  137:18  138:22  138:23  139:21  139:22  141:4  141:9  142:20  142:22  143:15  143:15  147:19  148:10  148:12  149:5  149:2  150:5  150:16  150:19  150:23  150:24  151:19  151:24  152:17  153:5  153:7  153:8  153:12  153:13  154:1  154:17  155:3  156:16  157:22  158:13  158:15  159:4  165:18  171:24  174:8  165:20  174:19  175:7  176:14  183:1  186:9  189:17  189:19  191:8  191:19  191:23  192:1  192:6  192:17  192:18  192:22  193:5  193:12  197:8  198:15  198:17  198:24  199:12  200:4  200:7  201:15  202:19  203:13  204:9  207:3  210:8  210:15  211:13  212:13  213:12  213:11  214:9  214:10  214:12  215:18  221:14  222:17  224:1  224:13  227:14  229:12  231:1  234:16  236:2  236:21  236:25  238:5  240:7  240:24  242:4  242:17  242:25  243:6  243:9  243:17  243:21  243:25  244:14  247:16  247:24  248:5  250:7  250:23  251:15  253:3  255:14  255:19  258:6  260:8  261:2  261:4  261:15  267:10  268:18  270:3  274:3  277:10  278:11  278:14  278:16  279:11  279:22  282:  282:20  283:5

**thinking**(4) 86:18  86:18  212:12  247:21

**thinks**(7) 136:23  137:12  137:16  137:19  139:15  139:23  196:15

**third**(29) 94:4  98:19  100:14  104:19  114:12  127:8  128:13  139:14  146:23  149:17  164:18  169:12  172:22  172:23  177:1  193:6  197:22  205:8  219:11  219:17  220:5  253:16  282:19

**third-party**(7) 113:18  113:19  114:8  114:22  146:1  146:11  146:17

**thirteen**(1) 205:23

**thirty**(2) 173:8  173:10

**thirty-five**(2) 159:22  163:22

**thirty-nine**(1) 211:13

**this**(295) 11:12  12:20  21:14  21:17  21:22  28:12  29:20  29:20  30:18  30:20  31:16  31:21  32:5  32:14  32:19  32:24  33:4  33:15  33:24  35:15  38:22  42:12  48:17  49:22  49:22  51:1  51:6  51:10  51:19  51:20  51:22  52:10  55:19  57:17  58:22  59:3  59:3  60:6  61:24  62:9  64:3  66:16  71:15  74:9  74:10  74:16  75:3  76:2  76:8  78:10  82:19  83:5  85:19  86:7  87:14  87:22  88:6  88:21  90:2  93:18  93:22  94:19  96:18  97:3  97:9  97:16  98:4  98:15  99:1  99:2  99:12  100:7  100:12  100:17  101:7  101:18  102:8  103:6  103:13  103:19  103:25  106:7  106:9  107:17  111:8  112:16  113:18  114:7  114:21  114:25  116:6  116:15  116:16  116:18  117:10  118:6  118:7  118:8  120:7  120:8  120:9  120:24  121:12  121:13  121:25  122:5  122:7  124:8  124:20  127:23  129:12  130:20  133:1  133:6  134:5  135:4  135:7  135:13  136:1  136:7  137:6  137:15  138:18  141:1  142:7  144:14  145:24  145:24  146:11  146:12  146:19  146:21  147:13  150:1  150:8  153:1  153:11  155:3  155:11  156:4  156:12  156:19  156:24  157:12  158:11  158:11  159:2  159:5  159:5  159:9  159:20  160:3  160:20  163:17  164:9  165:25  166:9  166:22  167:17  169:5  169:19  169:24  169:24  171:4  173:1  173:17  173:19  173:20  174:23  175:5  175:6  175:7  175:22  176:2  177:3  177:6  177:9  177:10  179:2  179:2  179:5  179:9  184:3  185:7  185:7  186:22  188:12  191:20  192:15  192:18  193:6  193:21  194:7  195:24  197:11  199:8  200:1  201:12  202:1  209:2  209:8  210:7  210:11  210:15  210:17  210:24  211:13  211:20  211:22  213:17  213:21  214:4  214:14  218:23  219:3  220:20  221:8  221:11  221:22  222:9  222:18  222:20  223:9  224:15  229:9  230:12  233:5  233:23  236:23  241:9  241:12  241:20  241:22  242:4  242:20  243:3  245:13  248:24  249:5  249:19  252:9  252:13  253:13  254:4  254:13  255:22  255:23  255:25  256:25  257:20  257:22  258:2  259:1  259:7  260:13  261:21  261:23  262:5  262:7  262:24  263:9  263:12  264:1  264:10  265:3  265:3  265:12  265:13  265:15  265:21  266:12  268:2  268:2  270:2  270:10  271:9  271:11  271:17  272:10  274:12  275:16  276:6  276:10  276:23  277:13  277:15  278:13  279:14  279:23  280:3  280:4  280:17  281:13  283:5  283:6

**thomas**(1) 3:14

**thornburg**(1) 4:34

**those**(132) 13:14  16:12  17:22  18:7  18:11  19:1  19:8  20:2  22:16  25:1  26:6  27:12  30:14  34:9  36:20  38:23  39:9  39:12  41:22  43:15  44:8  48:6  48:7  52:12  52:17  52:23  56:9  57:9  62:2  64:14  67:15  68:15  77:25  78:4  78:13  79:13  79:24  85:5  87:3  89:15  91:10  96:10  98:5  98:5  98:8  98:21  99:19  102:17  106:3  106:5  110:8  110:13  111:18  112:11  114:16  115:5  115:24  118:15  122:1  123:20  124:12  125:20  127:13  128:19  128:24  131:25  133:9  133:20  141:3  146:23  148:4  150:6  151:18  153:14  155:23  157:16  162:20  162:23  162:24  163:5  163:5  163:8  168:17  168:24  170:13  171:22  180:17  181:10  182:4  183:1  183:19  183:20  184:13  186:21  188:7  195:2  195:25  196:1  196:5  196:11  200:5  208:22  209:15  213:1  217:24  223:8  225:18  225:23  226:7  227:11  228:13  228:15  229:5  231:11  232:6  232:9  234:11  234:23  235:11  237:12  237:25  238:13  243:13  252:25  254:25  261:1  261:1  267:2  269:7  270:1  281:14

**though**(10) 23:21  52:18  109:2  151:22  153:25  182:22  229:25  230:1  232:23  240:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| thought(57) 21:7 21:14 24:18 32:22 42:13 43:15 43:24 45:25 50:15 57:25 58:3 58:7 58:16 65:11 68:23 72:22 78:14 78:14 87:19 97:25 103:1 103:4 113:23 113:25 141:19 141:21 142:23 143:1 143:4 143:12 143:24 169:21 169:24 170:12 174:21 175:17 177:6 177:9 187:13 192:22 192:23 192:24 196:11 197:3 200:19 220:6 234:7 239:17 244:18 246:12 247:19 251:19 251:24 256:20 260:17 269:8 269:15 | | together(37) 20:1 65:20 66:2 104:18 106:24 108:14 118:14 118:15 118:17 119:18 119:1 121:19 134:16 137:8 139:9 145:14 163:9 145:5 165:17 165:24 166:1 166:2 166:4 191:11 204:9 230:13 231:5 237:24 238:15 238:17 243:23 245:9 247:13 247:14 247:1 247:17 251:14 259:4 | | trehan(1) 6:9 | | trying(29) 19:24 19:25 27:23 54:3 58:23 60:13 60:15 60:23 61:2 61:4 61:6 61:20 61:23 83:5 86:21 97:13 102:5 105:24 111:18 111:20 136:11 187:2 190:18 232:1 232:2 232:4 241:19 243:15 276:4 |
| | | | | trial(6) 74:10 118:11 183:16 221:8 258:2 269:25 | | |
| thoughts(1) 70:24 | | | | trib(2) 49:25 50:7 | | tuesday(1) 170:3 |
| thousand(2) 18:14 23:18 | | | | tribune(196) 1:7 4:46 4:46 7:4 7:24 14:12 14:15 14:19 14:23 15:11 15:12 41:20 41:25 45:20 46:1 46:4 46:5 46:10 46:18 46:21 47:4 47:12 48:9 48:10 49:9 50:9 55:6 56:7 66:4 68:9 70:3 70:5 70:24 71:4 71:25 72:3 99:9 99:14 99:21 100:5 101:19 102:11 102:12 102:15 102:22 106:12 107:18 108:7 108:9 108:11 108:17 108:20 108:24 109:2 109:3 109:7 109:8 109:11 109:19 109:23 109:24 110:9 110:11 111:15 111:16 111:22 111:24 112:2 112:3 112:5 112:6 112:19 116:16 117:7 121:2 121:24 122:18 123:1 124:4 124:7 124:25 125:1 126:8 127:9 127:11 127:18 127:20 127:25 128:14 130:7 130:8 130:11 130:13 130:14 130:16 130:18 131:21 133:9 134:2 134:6 135:21 137:16 137:22 137:23 138:2 138:8 139:21 141:12 142:2 142:3 142:5 142:12 142:13 142:16 144:5 148:14 149:1 150:3 150:9 151:3 153:13 153:20 161:12 161:13 161:21 161:25 162:1 164:24 165:9 167:13 167:14 167:17 167:18 167:19 168:1 168:13 169:25 171:14 171:22 172:1 172:2 172:5 172:7 172:8 172:9 172:18 172:19 174:22 175:7 175:8 175:12 175:23 176:2 176:4 176:5 176:19 176:20 176:22 186:17 195:15 207:20 208:3 208:19 211:1 227:20 227:22 228:25 229:1 229:1 229:25 230:2 232:16 232:20 232:24 236:23 237:1 238:1 239:25 240:10 244:9 245:1 245:4 247:11 249:20 249:24 250:2 250:9 265:8 270:17 270:19 270:21 272:9 275:10 276:4 278:23 | | tulliano(2) 166:20 167:11 |
| three(29) 65:24 92:18 94:18 100:16 104:6 108:15 120:18 129:12 129:22 132:9 141:2 164:1 189:4 190:3 197:6 223:21 226:14 226:17 227:4 237:10 246:15 252:5 253:25 254:17 254:18 258:17 260:25 279:8 282:1 | | tomorrow(10) 232:19 279:24 280:13 281:3 281:12 281:17 281:18 281:20 282:4 282:16 | | | | turn(18) 33:14 62:18 125:18 129:24 135:1 146:16 147:17 150:18 152:3 155:1 160:16 164:13 176:22 203:5 203:12 226:4 232:18 243:8 |
| | | | | | | turned(5) 18:13 23:8 71:4 104:7 247:23 |
| | | tonight(1) 281:20 | | | | turns(4) 126:17 126:18 126:23 138:1 |
| three-and-a-half(1) 92:13 | | too(16) 21:8 21:10 21:15 24:3 24:19 51:10 83:9 87:3 128:17 133:19 142:18 198:19 251:16 252:8 253:19 259:6 | | | | twenty(3) 160:11 163:6 184:11 |
| three-billion-dollar(1) 171:9 | | | | | | twenty-five(1) 172:9 |
| three-hundred-million-dollar   172:11 205:5 | | | | | | twenty-seven(1) 171:1 |
| | | | | | | twice(3) 139:4 139:4 160:24 |
| three-percent(1) 273:12 | | took(28) 14:20 26:20 58:2 68:24 80:10 83:3 92:24 111:18 128:20 144:10 144:14 166:8 166:10 176:13 181:3 187:18 195:20 199:9 212:14 213:23 232:20 245:5 245:13 252:15 252:16 252:16 253:4 260:4 | | | | two(181) 12:21 15:8 15:17 33:5 37:2 37:19 37:24 49:1 52:14 57:8 65:19 65:21 65:22 65:23 65:24 74:22 75:7 85:22 86:15 87:16 92:19 93:21 99:13 102:16 102:20 104:18 106:11 106:11 106:13 107:15 108:3 108:4 108:6 108:8 108:11 108:17 108:23 112:4 112:5 112:12 112:12 114:23 115:1 115:8 115:10 119:9 119:14 120:13 120:13 120:17 121:19 121:20 121:21 122:2 122:3 122:18 122:19 122:22 122:23 122:23 123:1 123:2 123:5 123:13 123:14 124:9 124:17 125:20 127:5 128:7 134:6 139:3 139:6 139:22 141:11 143:13 143:13 144:6 148:8 150:24 151:2 153:23 153:23 154:2 161:8 161:10 161:17 161:23 162:4 162:18 163:1 163:5 163:9 163:13 164:3 164:21 165:4 165:5 165:10 165:16 166:4 167:15 168:6 168:7 171:7 171:13 173:24 174:1 175:10 175:11 176:17 185:16 190:3 191:5 191:15 191:10 191:15 191:19 196:3 198:9 202:22 206:3 206:7 206:12 207:20 207:24 208:4 209:14 211:21 211:23 212:20 213:13 214:20 215:18 215:11 217:20 217:24 219:3 224:6 224:12 224:17 224:19 224:23 224:24 225:7 228:15 229:13 229:20 231:22 232:12 233:25 238:16 240:17 240:25 241:5 243:23 244:5 244:14 244:17 246:15 250:5 252:25 254:21 256:15 256:24 257:2 257:5 261:8 261:9 263:22 266:6 268:14 269:18 271:23 278:20 278:24 278:25 279:2 279:6 281:11 282:18 |
| through(62) 14:3 14:5 54:3 57:2 95:13 102:2 106:11 106:25 108:10 108:25 112:17 113:7 115:17 115:20 116:17 119:23 121:1 128:2 128:18 130:16 134:3 134:9 136:19 153:1 154:7 157:10 160:20 161:11 161:14 164:17 177:9 183:19 191:19 192:24 202:1 206:7 206:24 210:8 214:9 214:13 217:11 219:6 219:21 220:5 226:12 227:4 228:7 228:8 240:10 243:15 246:16 247:20 251:1 251:16 251:19 256:20 260:16 260:17 260:21 271:16 272:5 283:5 | | top(24) 25:6 62:22 71:4 94:18 104:15 107:11 132:4 147:8 154:12 161:2 163:10 163:11 169:6 169:7 169:9 169:11 169:16 184:1 184:8 229:6 253:15 254:5 256:25 259:19 | | | | |
| | | | | | | |
| | | topic(2) 201:19 261:3 | | | | |
| | | topics(1) 58:10 | | | | |
| | | torres(1) 10:14 | | | | |
| | | tortured(1) 42:13 | | | | |
| throughout(2) 56:15 56:23 | | total(4) 111:22 112:20 134:10 197:14 | | | | two-fold(1) 136:9 |
| thrust(1) 88:22 | | totally(1) 175:20 | | | | two-percent(1) 166:23 |
| thursday(4) 251:5 251:6 251:8 267:8 | | touch(2) 46:15 46:20 | | | | two-step(1) 153:20 |
| thus(1) 275:8 | | touched(1) 261:5 | | tribune's(15) 162:12 232:17 265:9 272:11 273:8 273:19 274:4 274:11 274:17 274:20 275:17 276:7 276:15 276:17 276:23 | | two-thirds(2) 249:18 250:5 |
| tied(1) 245:9 | | tough(2) 142:1 144:6 | | | | type(1) 157:13 |
| till(1) 72:15 | | tougher(4) 125:14 243:19 244:10 244:13 | | | | types(3) 138:19 156:14 260:18 |
| tim(1) 49:14 | | toussi(1) 10:47 | | | | typical(1) 192:15 |
| time(137) 13:24 15:14 15:15 16:2 17:10 18:20 19:8 19:13 19:20 22:25 27:21 31:5 42:9 42:25 46:4 46:12 48:22 51:21 57:17 58:14 58:18 59:3 61:24 62:7 62:9 63:12 64:3 68:4 68:10 69:1 69:5 69:9 69:14 69:14 69:23 72:1 72:2 72:14 72:16 74:9 81:19 85:17 85:18 86:9 86:24 86:25 88:19 97:14 100:10 100:12 100:15 104:7 107:7 108:8 108:20 111:25 112:1 119:8 119:10 120:18 120:19 120:20 121:1 121:20 122:17 122:1 122:23 122:25 123:2 123:3 123:5 125:19 126:1 126:24 138:6 138:21 142:20 142:22 142:22 143:6 143:7 143:11 143:12 144:7 144:12 149:8 154:18 156:6 156:8 159:3 165:24 166:25 167:9 177:13 177:18 190:2 191:10 193:6 194:19 195:24 196:25 197:2 197:5 197:9 197:9 198:3 199:9 202:17 204:24 215:13 221:22 222:1 224:17 231:2 238:6 245:12 246:11 249:6 249:21 250:10 259:2 259:12 260:15 270:16 270:23 272:1 274:18 275:2 275:20 275:23 276:10 276:16 276:16 276:23 278:20 280:12 281:16 | | toward(9) 124:11 152:14 152:15 190:14 200:7 234:11 236:13 245:22 277:13 | | | | u.s(1) 8:5 |
| | | towards(1) 131:22 | | tribune's(7) 107:7 108:4 121:21 122:25 125:20 138:20 142:1 | | ucc(2) 58:6 197:24 |
| | | town(1) 87:25 | | | | ucla(1) 200:24 |
| | | trade(3) 110:5 110:6 131:20 | | | | ultimate(4) 204:10 205:19 227:15 255:1 |
| | | traded(3) 42:10 143:6 143:19 | | tried(16) 22:4 97:23 105:17 116:6 147:25 152:18 155:14 175:16 186:6 192:3 230:21 231:1 234:2 235:18 251:15 265:23 | | ultimately(7) 14:8 20:6 22:6 22:21 27:12 27:15 42:21 |
| | | trading(5) 143:5 143:8 143:17 278:21 | | | | |
| | | train(1) 191:23 | | | | um-hum(8) 52:5 57:10 65:4 72:20 82:20 115:15 118:14 132:16 |
| | | training(4) 14:5 96:16 96:20 96:21 | | trouble(2) 144:4 150:25 | | |
| | | transaction(8) 104:19 117:10 120:25 127:24 128:7 128:21 200:16 202:17 | | troubled(1) 283:11 | | |
| | | | | true(32) 30:7 45:2 46:9 47:23 48:1 57:18 58:15 59:18 60:16 64:19 85:3 181:1 187:8 195:9 199:14 200:7 204:13 214:22 228:9 230:17 236:1 237:15 239:1 241:13 241:23 244:17 244:25 245:14 263:10 274:2 274:4 276:25 | | unable(2) 30:7 202:5 |
| | | transactions(4) 95:14 98:12 202:4 202:8 | | | | uncertainty(1) 241:24 |
| timeframe(2) 83:11 86:22 | | transcribed(2) 194:24 196:21 | | | | unclear(1) 121:14 |
| times(24) 13:7 20:5 22:3 23:8 24:25 30:25 42:12 42:15 61:6 61:12 61:15 68:7 68:21 70:22 71:5 72:19 140:7 173:10 173:10 186:23 187:1 227:4 246:22 282:24 | | transcript(1) 284:13 | | | | under(39) 31:21 36:25 45:7 65:15 77:21 79:12 81:23 83:25 84:12 103:15 104:22 109:5 111:12 115:4 122:18 123:17 124:10 137:25 155:4 156:1 156:20 176:2 179:13 179:16 181:7 181:8 181:9 188:8 193:25 194:6 204:1 208:23 213:9 214:24 215:5 216:13 217:19 218:5 218:8 |
| | | transcript(7) 1:17 1:48 187:24 195:8 266:13 277:11 284:7 | | truly(1) 101:24 | | |
| | | | | trump(1) 9:40 | | |
| | | | | trust(46) 7:29 10:14 20:16 25:6 25:9 26:11 26:13 32:2 32:5 34:22 34:23 34:25 35:22 35:24 35:25 36:3 36:6 36:10 36:15 36:20 37:11 43:11 43:13 44:12 76:23 77:12 77:16 77:20 77:21 78:1 78:3 78:12 101:18 101:23 114:11 114:18 115:3 115:4 115:12 115:17 115:22 147:3 147:16 148:1 219:16 269:10 | | |
| tiny(1) 11:11 | | transcription(2) 1:41 1:48 | | | | |
| title(3) 13:22 70:16 94:6 | | transcripts(1) 195:13 | | | | |
| today(14) 14:10 45:9 67:12 70:21 74:18 83:10 85:22 145:9 155:9 186:11 246:6 246:15 260:15 268:9 274:9 | | transfer(13) 179:6 185:2 202:15 214:17 214:18 214:22 215:8 215:14 239:25 240:1 241:1 241:6 243:9 | | | | |
| | | | | trustee(4) 4:28 4:28 102:13 148:15 | | |
| | | | | trusty(1) 230:22 | | |
| | | transfer's(1) 215:14 | | truthful(4) 189:1 242:23 273:20 273:24 | | |
| | | transfers(1) 242:11 | | try(26) 22:15 27:23 30:19 41:10 65:2 65:12 66:13 85:18 87:22 104:7 127:7 132:11 145:23 181:15 186:22 187:4 198:2 199:17 206:19 208:17 222:13 231:3 247:7 248:1 275:2 283:11 | | |
| | | trapped(2) 131:13 139:16 | | | | |
| | | treat(8) 117:10 130:12 154:6 176:19 218:25 241:12 243:12 244:15 | | | | |
| | | | | | | |
| | | treated(1) 265:8 | | | | |
| | | treatises(1) 98:1 | | | | |
| | | treatment(2) 36:24 101:21 | | | | |
| | | treats(2) 243:23 243:23 | | | | |
| | | tree(1) 230:19 | | | | |
| | | trees(1) 255:25 | | | | undergraduate(1) 92:3 |

| Word | Page:Line |
|------|-----------|
| **underlays**(1) 220:19 | |
| **underlies**(2) 104:11 199:21 | |
| **underlying**(1) 175:25 | |
| **underneath**(1) 121:8 | |
| **underperform**(1) 272:24 | |
| **underperforming**(1) 272:21 | |
| **understand**(51) 44:14 50:2 54:11 56:12 59:23 84:3 84:6 84:17 97:14 99:25 102:20 102:25 117:25 137:6 144:4 153:5 153:5 153:6 153:9 156:9 171:12 176:12 176:13 179:15 182:1 186:1 186:8 186:12 187:2 193:25 197:17 199:18 200:10 200:15 203:7 207:23 208:17 210:25 216:15 218:12 222:9 224:7 232:1 233:24 234:24 237:6 239:15 239:15 246:7 259:3 259:21 | |
| **understanding**(49) 15:10 15:12 17:15 17:17 17:24 18:2 21:5 21:11 25:12 25:18 25:19 34:5 36:14 36:19 39:16 44:3 48:4 53:11 64:3 65:15 65:21 77:19 80:9 80:16 81:11 81:22 82:4 82:7 82:18 82:19 84:15 84:16 97:5 97:5 97:6 98:12 105:21 120:22 120:22 134:21 171:21 186:20 187:5 187:17 218:21 231:9 236:13 237:1 251:1 | |
| **understood**(5) 45:6 57:1 218:5 240:12 | |
| **undertake**(1) 199:19 | |
| **undertaken**(1) 180:15 | |
| **undertook**(1) 110:16 | |
| **underwriters**(6) 52:7 53:6 53:9 53:13 53:20 54:2 | |
| **underwriting**(1) 52:22 | |
| **unfolded**(1) 192:20 | |
| **unfortunately**(1) 88:1 | |
| **unidentified**(1) 284:2 | |
| **unit**(5) 45:1 45:19 46:13 47:21 50:5 | |
| **united**(3) 1:1 1:19 283:7 | |
| **university**(4) 91:6 91:15 92:4 191:18 | |
| **unless**(6) 78:17 87:15 125:2 265:17 265:25 267:1 | |
| **unlike**(1) 232:6 | |
| **unlikely**(33) 127:22 131:7 131:8 131:18 136:24 136:25 137:1 137:2 137:4 137:13 137:24 139:17 139:22 139:23 139:24 165:21 225:21 225:21 225:21 234:19 234:19 234:21 235:12 235:13 236:7 236:13 236:14 240:19 250:25 266:4 267:5 267:14 | |
| **unpack**(1) 266:8 | |
| **unpacked**(1) 268:1 | |
| **unprotected**(1) 210:12 | |
| **unreasonable**(1) 64:7 | |
| **unreasonably**(4) 99:24 121:7 182:14 203:8 | |
| **unreasonably-smal**(1) 243:22 | |
| **unrelated**(1) 281:15 | |
| **unsecured**(33) 3:12 5:23 15:18 20:14 31:23 31:24 32:1 35:3 37:18 57:10 57:14 57:18 57:24 58:15 59:19 60:8 60:13 60:18 81:9 81:12 81:13 81:23 81:24 81:25 82:8 84:13 84:20 98:20 101:19 162:1 170:1 198:9 198:25 | |
| **unsuccessful**(1) 22:7 | |
| **until**(12) 15:8 91:19 91:23 91:25 92:12 92:22 93:2 114:19 165:9 220:10 282:12 283:9 | |
| **upfront**(2) 37:10 154:1 | |
| **upper**(6) 142:12 146:5 146:14 169:23 228:14 228:16 | |
| **upset**(1) 21:9 | |
| **upstreaming**(1) 185:13 | |
| **urbana**(1) 191:18 | |
| **usa**(1) 9:51 | |
| **use**(17) 59:18 85:17 86:3 87:16 89:1 95:20 95:21 129:10 193:20 194:7 199:8 216:12 228:16 229:11 243:6 246:12 267:17 | |

| Word | Page:Line |
|------|-----------|
| **used**(16) 59:6 115:1 115:3 164:25 164:25 165:1 167:9 171:18 208:14 210:24 229:16 231:1 231:21 235:25 269:14 275:3 | |
| **useful**(3) 108:14 200:19 258:6 | |
| **uses**(1) 235:15 | |
| **using**(4) 110:24 144:24 147:19 210:25 | |
| **usually**(2) 115:19 235:11 | |
| **vacation**(3) 56:20 56:22 57:6 | |
| **vail**(1) 5:6 | |
| **valerio**(1) 10:11 | |
| **valid**(1) 208:13 | |
| **valuable**(5) 36:21 43:13 43:16 43:25 44:12 | |
| **valuation**(19) 44:14 93:24 94:23 94:25 94:25 95:3 97:2 97:2 98:11 99:19 102:6 102:7 102:9 102:9 102:18 107:7 161:17 207:10 207:14 | |
| **valuations**(2) 95:6 102:16 | |
| **value**(144) 19:12 21:15 35:18 36:5 36:9 36:15 36:19 38:14 38:16 38:17 39:23 40:1 40:1 40:4 40:6 40:6 40:8 40:10 40:11 41:13 41:14 41:16 41:16 44:4 44:8 75:19 77:5 77:16 78:11 78:13 79:20 79:24 80:2 80:9 95:1 111:16 111:16 111:17 111:19 111:22 112:3 112:3 124:4 124:9 124:14 124:18 124:21 124:24 124:24 125:1 125:1 126:17 126:18 127:6 130:8 130:14 130:17 131:13 131:16 138:3 139:15 142:3 142:4 142:10 142:11 142:14 143:3 143:4 148:3 148:4 148:5 150:24 151:2 151:10 151:19 151:20 151:22 153:4 153:13 155:20 155:25 160:25 162:2 162:3 162:6 162:12 162:17 163:2 163:7 164:2 164:20 164:24 164:24 165:7 165:8 165:16 165:19 166:9 166:7 166:24 167:1 167:9 167:18 167:18 169:8 169:17 169:18 171:8 171:9 172:20 173:8 175:25 176:5 182:10 200:6 207:14 207:23 209:3 212:25 213:5 213:14 218:17 218:25 219:6 219:13 231:7 231:7 231:7 232:8 233:14 236:17 236:23 236:25 237:253:14 258:19 259:16 261:8 267:20 270:4 275:7 275:14 275:17 | |
| **values**(2) 153:11 165:10 | |
| **variable**(1) 156:12 | |
| **variables**(1) 156:15 | |
| **variance**(5) 205:23 205:24 205:24 205:25 219:9 | |
| **variant**(3) 206:12 212:1 212:6 | |
| **variation**(1) 156:20 | |
| **various**(15) 19:23 20:4 44:23 57:3 98:18 101:16 123:17 134:23 178:2 179:13 183:7 190:13 194:25 195:20 226:13 | |
| **vary**(3) 158:11 163:21 164:19 | |
| **vazquez**(1) 5:32 | |
| **verify**(1) 221:15 | |
| **verifying**(1) 160:8 | |
| **version**(3) 222:20 262:15 262:18 | |
| **versus**(9) 64:20 78:24 154:11 247:13 248:11 248:11 248:12 248:25 251:13 | |
| **very**(49) 11:10 28:19 32:24 37:3 39:25 42:8 42:8 42:11 45:12 61:5 64:4 65:5 74:16 83:13 87:14 90:4 96:6 97:1 99:13 99:16 101:18 101:21 101:25 106:9 111:10 115:25 116:18 128:11 135:15 137:24 138:17 139:21 148:10 150:11 151:16 157:18 165:9 166:17 166:23 169:6 175:16 175:19 198:21 205:11 211:14 234:20 279:1 281:8 283:1 | |
| **very-quickly**(1) 110:19 | |
| **viable**(1) 213:3 | |
| **vice**(4) 13:1 70:13 70:14 70:17 | |
| **vice-versa**(1) 139:1 | |
| **victory**(1) 207:17 | |

| Word | Page:Line |
|------|-----------|
| **video**(10) 45:11 45:12 45:17 51:25 59:1 59:4 66:15 66:20 67:3 242:8 | |
| **videotape**(1) 188:1 | |
| **view**(113) 19:10 19:12 24:16 25:3 25:13 25:17 35:23 36:5 36:14 37:4 43:24 44:11 57:19 59:13 59:20 72:21 73:8 78:10 86:8 86:14 116:11 116:13 116:14 120:16 121:1 121:25 122:7 122:9 124:19 125:6 125:18 125:25 125:25 127:10 128:10 134:4 135:4 135:5 135:13 135:23 137:9 138:19 138:21 139:7 139:19 140:1 143:25 151:11 153:10 153:19 154:8 154:9 156:17 160:5 165:19 168:20 171:20 171:25 175:9 188:15 188:1 188:16 188:19 190:21 192:23 192:25 193:1 193:1 193:4 200:22 201:1 203:7 206:21 215:5 215:6 215:6 224:13 231:6 231:13 234:4 234:4 234:5 234:11 235:1 235:24 236:12 237:20 237:24 238:5 238:5 238:11 239:4 239:11 239:16 239:21 241:1 243:21 244:1 246:3 246:4 251:23 263:1 263:2 264:1 264:9 264:11 264:13 265:11 265:15 265:25 266:25 268:15 268:16 | |
| **viewed**(3) 24:1 26:21 213:22 | |
| **views**(8) 26:7 42:8 98:10 102:18 104:22 126:5 153:15 174:4 | |
| **viking**(1) 8:29 | |
| **vindication**(1) 24:2 | |
| **vinson**(1) 9:14 | |
| **violation**(1) 26:22 | |
| **virtually**(1) 256:16 | |
| **visible**(1) 223:9 | |
| **visiting**(1) 281:12 | |
| **volume**(1) 111:8 | |
| **vora**(1) 9:52 | |
| **vote**(3) 22:14 65:23 66:1 | |
| **vrc**(6) 54:2 54:16 77:25 102:14 149:19 149:25 | |
| **vrc's**(1) 53:17 | |
| **vulnerable**(3) 49:15 49:17 49:18 | |
| **wacker**(1) 3:44 | |
| **wait**(4) 129:14 187:25 222:25 270:14 | |
| **waiting**(2) 210:19 211:8 | |
| **waitings**(1) 211:14 | |
| **waive**(1) 28:5 | |
| **wald**(1) 92:9 | |
| **walk**(9) 95:13 106:25 119:22 134:9 136:19 153:1 157:10 160:20 164:16 | |
| **walrath**(1) 181:18 | |
| **want**(39) 28:9 43:10 48:18 50:17 54:7 55:13 58:10 63:1 63:14 65:14 69:15 69:23 70:18 92:7 101:7 107:15 116:7 116:17 119:6 137:22 141:8 141:15 150:11 155:15 157:8 157:18 185:7 193:3 199:6 204:24 216:23 227:9 229:22 253:3 263:12 281:25 282:2 282:24 283:6 | |
| **wanted**(29) 25:4 25:8 26:8 26:11 26:12 32:25 33:1 33:2 49:25 50:1 60:20 65:9 65:10 104:21 118:5 129:14 155:25 164:18 166:9 166:13 199:25 210:8 210:14 218:6 234:3 234:9 234:10 283:9 283:13 | |
| **wanting**(1) 60:4 | |
| **wants**(1) 279:12 | |
| **wardwell**(3) 2:4 9:4 11:6 | |
| **warner**(2) 15:24 167:9 | |
| **warrant**(1) 143:3 | |

| Word | Page:Line |
|------|-----------|
| **was**(301) 12:10 13:1 14:4 14:23 14:25 15:17 15:21 16:4 16:22 17:13 17:16 17:23 18:7 18:23 18:24 18:24 18:24 19:3 19:5 19:5 19:13 19:19 20:10 20:16 21:8 21:9 21:13 21:15 21:17 21:19 21:20 21:20 21:21 21:23 22:5 22:22 22:16 22:18 23:3 23:15 24:2 24:3 24:3 24:15 24:19 24:19 25:1 25:2 25:2 25:3 26:9 27:5 27:19 28:24 28:25 29:1 29:16 29:18 30:9 31:2 31:6 31:9 31:11 32:2 32:4 32:19 33:8 33:11 33:13 34:3 35:25 37:4 38:9 38:22 42:15 44:9 45:3 45:24 46:6 46:12 46:18 46:19 47:7 47:9 47:10 48:10 49:1 49:18 50:3 50:3 50:9 50:10 50:16 51:20 51:21 51:25 52:8 52:17 52:19 52:24 53:4 53:11 53:12 53:13 53:16 56:20 57:6 57:8 58:3 58:19 59:13 59:13 59:24 60:17 61:1 61:5 62:4 62:5 62:6 62:6 64:3 64:7 64:10 64:19 65:7 67:4 67:4 67:11 67:25 68:3 68:19 68:21 69:1 69:3 69:5 69:6 69:10 70:7 70:16 71:12 71:17 71:20 72:8 72:13 72:16 72:23 72:24 73:9 73:12 73:14 73:19 73:23 73:24 73:24 73:25 73:25 74:4 74:6 74:6 74:17 74:25 75:20 75:22 75:24 76:3 76:8 76:9 76:11 76:14 76:17 76:21 76:24 77:2 77:4 77:11 79:23 85:23 86:6 87:11 88:15 91:15 91:15 91:17 91:22 92:5 92:1 92:14 92:20 92:22 92:22 92:25 93:3 97:8 97:12 99:11 99:19 99:20 99:21 99:22 100:7 100:9 100:11 101:15 103:18 104:4 104:12 104:12 105:14 105:16 107:17 107:18 108:4 108:7 108:9 108:17 109:7 109:23 110:17 110:17 111:16 113:23 113:25 115:19 116:9 116:12 116:16 116:16 116:18 117:7 117:17 117:18 117:19 118:16 120:13 120:17 120:23 121:18 121:21 121:25 122:20 122:21 123:1 124:4 124:4 124:5 124:7 124:7 124:12 125:3 125:18 126:4 126:6 127:12 127:12 128:9 128:21 128:21 130:25 133:16 134:2 134:5 135:21 137:2 139:7 141:25 141:25 142:2 142:3 142:8 142:24 143:1 143:1 143:2 143:4 143:13 143:16 143:22 144:4 144:5 144:20 145:7 150:9 150:9 151:18 153:7 153:18 153:20 153:25 154:1 154:1 157:14 157:15 157:22 158:12 158:19 158:20 160:8 160:21 160:23 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **was**(213) 160:25 164:19 164:24 164:24 164:25 165:1 165:13 165:19 166:20 166:27 167:6 169:21 169:24 170:5 170:8 170:13 171:11 173:3 173:15 173:17 174:20 175:3 175:4 184:19 185:16 185:22 186:2 186:9 186:10 186:17 186:19 186:19 186:20 186:24 187:1 187:2 187:13 188:4 188:5 188:9 188:10 189:1 189:12 189:13 189:13 189:15 189:15 189:16 189:17 189:18 189:18 190:3 190:7 190:13 190:13 190:17 190:25 191:3 191:6 191:8 191:8 191:9 191:9 191:11 191:15 191:16 191:17 191:1 192:13 192:13 193:2 194:15 195:15 197:2 197:7 197:9 198:4 198:7 198:11 198:11 198:12 198:21 198:23 199:3 199:7 199:12 199:17 200:1 200:15 200:19 201:7 201:10 205:21 206:2 206:11 206:15 206:22 208:8 208:19 210:15 210:20 212:18 214:2 214:2 214:10 214:20 215:25 216:10 218:6 218:6 218:15 219:17 219:17 222:19 224:3 225:1 225:25 226:3 228:7 228:22 229:8 229:10 229:20 230:10 231:5 233:21 235:16 235:17 236:8 236:19 239:8 240:25 240:25 241:18 242:10 242:23 244:8 244:13 244:16 244:17 245:4 245:19 245:25 246:4 246:4 247:21 248:15 249:25 250:8 250:10 251:5 251:6 251:6 251:9 251:13 251:16 251:22 252:3 252:19 253:22 255:4 256:21 257:5 258:16 262:16 262:19 264:10 265:11 266: 267:4 268:23 268:25 269:8 269:9 269:14 269:15 270:2 270:5 270:11 270:16 270:19 270:22 271:3 271:3 271:19 271:21 271:22 271:25 272:1 272:2 272:12 272:12 272:21 273:9 273:15 273:20 273:24 274:2 274:11 275:3 275:23 276:11 276:24 276:25 277:1 277:13 277:18 277:19 278:6 278:8 278:12 278:12 | | **weak**(9) 130:20 130:21 273:20 273:25 274:5 274:11 274:15 275:14 276:24 <br> **weather**(4) 100:3 125:16 127:19 202:5 <br> **website**(2) 93:6 93:11 <br> **wednesday**(1) 11:1 <br> **week**(16) 15:17 51:3 55:13 72:19 86:20 100:25 104:19 209:9 213:7 221:23 229:13 245:12 252:12 277:11 279:21 282:22 <br> **weeklong**(2) 96:12 96:18 <br> **weeks**(2) 34:3 271:23 <br> **weighed**(1) 229:14 <br> **weighing**(2) 229:9 <br> **weight**(30) 104:21 133:23 133:23 134:20 135:15 136:5 136:5 153:8 153:9 166:6 166:18 166:18 167:22 206:1 231:10 234:6 247:11 247:13 247:16 247:18 251:2 251:3 251:9 251:14 251:16 251:17 251:23 252:2 253:5 260:22 <br> **weighting**(3) 248:2 248:8 248:11 <br> **weights**(2) 134:22 252:1 <br> **weil**(1) 8:37 <br> **weiss**(1) 7:39 <br> **weitman**(1) 7:25 <br> **welcome**(1) 154:25 <br> **well**(132) 11:10 12:21 14:24 16:9 18:2 19:2 19:21 20:3 21:4 21:13 22:17 23:7 23:25 25:2 26:20 27:4 27:14 28:19 29:23 32:22 34:19 34:21 37:2 37:9 38:13 40:24 42:7 42:19 43:19 47:5 48:22 49:15 52:21 52:23 53:24 56:12 58:2 58:18 59:7 59:12 60:8 60:12 62:2 64:21 66:13 74:3 74:19 76:4 80:10 80:21 81:18 83:4 85:14 87:1 87:4 90:4 90:11 93:14 96:11 98:22 103:1 106:8 109:7 111:3 111:4 111:5 112:7 125:1 128:4 128:17 129:9 129:13 133:11 137:14 142:17 144:11 144:21 146:13 150:19 151:15 152:11 152:13 152:16 155:21 158:17 158:20 159:7 162:15 162:2 163:10 163:14 165:5 168:19 171:23 174:5 174:11 177:17 179:13 179:17 186:21 187: 188:10 191:7 191:25 192:17 197:10 198:4 199:24 211:21 211:25 212:4 215:24 217:1 219:22 220:6 222:11 223:2 224:19 228:1 231:23 232:20 239:14 250:15 254:14 255:1 256:16 256:19 274:6 274:17 279:3 280:17 283:8 <br> **wells**(1) 10:29 <br> **went**(36) 12:4 14:5 32:8 32:9 38:15 40:10 41:17 76:25 76:25 77:5 92:3 92:7 92:8 92:10 92:15 92:23 97:22 97:25 102:2 104:23 108:2 130:11 130:11 130:13 130:16 191:22 191:22 198:23 200:3 219:6 251:15 252:21 256:15 256:19 260:16 279:2 | | **were**(248) 12:8 12:25 15:2 15:3 15:8 15:22 16:1 17:3 17:17 17:19 17:22 18:9 19:2 19:4 19:6 19:17 19:18 19:21 19:22 19:24 20:18 20:25 21:3 21:9 21:9 22:21 22:24 24:10 26:7 27:6 27:14 27:22 27:22 28:22 28:23 31:4 31:5 32:5 32:6 32:12 32:12 32:14 32:16 33:3 33:5 33:7 34:1 34:10 34:12 42:12 42:15 43:13 43:14 43:16 43:25 44:7 44:12 45:7 45:25 46:2 46:5 46:10 47:11 50:6 51:2 51:9 52:3 52:8 52:10 52:12 52:23 53:15 53:16 53:19 54:1 54:24 56:10 56:15 56:16 56:20 56:21 56:22 57:2 57:17 58:11 58:14 58:23 60:11 60:14 60:15 60:19 60:22 62:2 62:5 65:5 65:6 66:12 67:7 67:9 67:11 71:24 72:3 72:19 73:4 74:10 75:11 75:15 75:17 77:17 78:4 78:5 78:15 78:23 79:11 79:19 84:3 84:4 85:3 85:23 86:4 87:13 88:7 88:9 91:13 91:20 97:14 97:16 97:18 97:19 99:7 99:8 99:10 100:10 100:13 107:19 108:10 108:16 108:21 108:22 108:24 109:3 110:2 110:7 118:6 120:13 122:22 123:3 123:16 125:20 125:24 127:24 128:4 128:6 128:8 130:23 132:5 136:18 141:18 141:20 142:2 142:25 142:25 143:8 143:19 149:9 150:10 150:12 153:20 153:23 154:6 159:1 162:6 162:6 165:18 165:18 170:12 173:24 181:2 182:1 183:20 184:25 184:4 189:6 189 190:4 190:17 191:6 191:16 192:8 195:13 196:4 196:11 196:18 197:3 203:14 205:10 205:11 209:9 209:13 209:22 210:8 210:17 213:17 214:16 216:2 222:25 223:13 229:4 233:1 233:3 234:25 241:19 245:16 246:12 247:10 247:12 247:19 249:5 250:4 250:7 252:25 256:24 259:12 260:14 260:15 266:23 267:1 269:7 269:17 270:10 270:1 270:20 271:1 271:14 272:13 272:14 272:18 274:6 274:7 277:16 278:1 278:2 278:21 279:1 279:1 279:6 279:7 283:10 <br> **weren't**(4) 32:17 42:16 158:22 186:25 <br> **weren't**(1) 98:24 <br> **west**(3) 3:44 4:8 4:36 <br> **we'll**(3) 111:8 118:22 146:19 <br> **we're**(13) 102:8 128:17 128:18 129:15 130:2 130:3 130:12 130:14 131:1 152:13 152:16 154:12 154:15 <br> **we've**(16) 96:11 102:4 102:9 102:15 114:7 117:20 126:13 126:16 128:25 129:1 129:1 129:2 129:11 132:8 141:17 144:22 <br> **wharton**(1) 7:39 | | **what**(297) 11:25 12:16 12:24 13:2 13:9 13:12 13:22 17:15 17:24 18:24 19:19 20:2 22:16 23:14 24:15 25:1 25:13 25:18 26:6 26:19 27:1 27:12 27:25 28:2 29:14 34:5 36:14 36:17 36:18 39:16 39:22 41:14 44:11 47:7 48:10 49:3 50:9 51:14 51:19 57:6 57:25 58:6 58:16 59:20 59:23 68:19 69:1 70:16 70:21 71:9 72:13 72:21 73:8 77:20 78:7 78:10 78:10 79:5 80:5 80:9 81:22 86:6 92:7 95:7 95:13 95:23 97:11 97:14 99:10 99:19 99:20 99:23 102:00 102:24 103:1 104:13 105:14 105:16 105:22 105:24 105:25 106:1 106:13 106:19 106:25 107:12 108:6 108:7 109:3 112:15 112:18 113:12 113:15 114:3 114:15 115:1 115:17 116:5 116:7 116:8 117:25 118:1 118:21 118:24 119:3 119:4 119:23 121:11 121:17 122:16 123:10 124:4 124:4 124:5 125:8 125:18 125:25 126:6 128:2 128:9 129:5 129:6 129:9 130:2 130:5 131:14 132:24 133:3 133:8 134:13 134:13 134:13 135:3 135:8 135:15 136:22 136:25 137:5 137:6 137:12 137:14 137:16 137:19 137:21 138:14 138:22 138:23 140:7 142:19 142:21 142:22 143:10 144:4 146:1 147:25 147:25 148:2 148:12 149:7 150:1 150:9 151:9 152:11 152:19 153:14 153:16 153:22 154:7 155:15 155:22 155:25 155:28 158:19 159:5 159:17 159:18 159:20 159:22 159:24 159:25 160:4 160:9 160:10 160:21 160:23 160:25 161:2 161:3 161:3 161:15 163:15 164:16 166:5 166:6 166:8 166:9 166:10 166:12 166:13 166:19 167:11 169:4 170:16 170:21 171:11 172:14 172:16 173:1 174:5 174:19 174:19 174:20 175:2 176:14 176:15 176:15 176:16 176:21 181:10 181:21 182:10 182:16 184:19 186:5 186:24 187:2 188:4 188:18 189:3 189:4 189:21 191:8 194:13 196:15 197:3 197:6 197:23 198:17 198:20 199:7 199:21 205:15 208:15 210:25 212:13 212:17 213:11 214:5 224:14 225:24 227:21 231:25 232:2 233:21 233:25 234:1 234:2 235:7 235:18 235:19 235:22 236:8 239:22 241:9 242:5 242:6 242:19 242:25 243:6 244:6 246:8 247:15 248:1 248:4 251:1 252:14 255:25 257:24 258:21 258:24 263:21 264:2 264:4 264:5 264:9 265:11 265:14 265:22 267:10 268:6 270:2 274:5 275:24 279:14 282:21 283:10 <br> **what's**(7) 48:22 199:6 232:17 234:3 251:1 253:7 258:23 <br> **whatever**(4) 114:13 142:20 257:16 278:2 <br> **what's**(18) 96:6 108:1 111:15 112:12 113:14 114:4 114:25 117:6 117:14 119:2 119:5 120:7 125:17 125:24 125:25 127:7 141:23 144:19 <br> **when**(84) 14:14 14:18 14:20 14:22 15:15 19:13 21:20 22:12 29:2 31:14 33:16 37:13 38:22 40:1 42:15 47:9 47:21 47:24 48:2 48:9 50:7 50:9 50:16 56:20 56:22 58:2 58:5 58:5 59:22 62:2 62:20 66:12 67:1 67:4 67:7 68:19 69:2 69:23 72:20 72:22 72:23 73:4 76:1 97:7 97:12 98:23 99:2 99:5 130:5 150:21 158:6 159:11 159:11 169:4 181:3 189:1 189:8 191:3 198:6 202:4 204:8 213:17 216:2 216:12 219:12 223:13 227:3 238:25 241:4 241:23 242:23 253:22 253:22 255:25 261:17 262:10 266:18 269:17 269:18 269:20 270:10 272:4 273:15 275:13 <br> **whenever**(1) 159:6 |
| **washington**(3) 3:38 181:19 181:23 <br> **wasn't**(18) 17:21 27:16 38:1 38:11 39:2 43:21 50:11 52:18 57:5 62:3 68:11 76:10 76:16 158:21 214:7 244:12 251:2 276:11 <br> **wasn't**(17) 111:17 111:20 151:17 <br> **waterfall**(6) 168:8 185:19 185:24 207:5 208:21 213:15 <br> **way**(79) 22:5 29:19 35:12 40:25 42:21 54:21 75:25 85:17 104:8 104:9 108:10 108:25 109:9 109:12 110:6 113:10 113:17 113:17 115:20 116:17 118:15 123:11 124:12 128:6 131:4 132:14 133:18 134:3 134:9 136:13 143:15 147:9 147:19 148:13 156:13 156:13 159:13 159:18 160:14 162:6 162:25 164:20 169:19 172:2 176:18 186:22 191:9 192:22 192:24 202:1 203:7 207:22 208:18 209:3 212:6 218:1 218:5 219:5 224:11 230:13 230:23 234:7 242:12 242:16 242:18 244:4 251:12 253:3 255:11 264:20 269:11 274:3 280:17 280:22 282:25 283:5 283:7 283:20 <br> **ways**(1) 106:1 <br> **we'd**(3) 87:18 254:21 283:2 <br> **we'll**(12) 16:24 33:24 80:23 86:24 88:12 89:20 184:22 187:25 213:1 267:12 281:19 282:12 <br> **we're**(40) 13:4 22:13 29:17 30:2 30:6 64:22 83:9 86:20 86:21 86:22 87:3 87:16 173:3 176:16 176:17 176:18 178:24 207:8 216:11 220:4 222:4 222:13 226:19 231:20 244:4 244:15 250:6 250:6 250:16 250:20 254:3 257:23 258:24 260:13 262:24 263:10 272:4 272:17 279:22 <br> **we've**(15) 86:18 170:16 225:10 226:14 227:11 227:14 234:16 246:2 254:3 254:3 257:1 259:11 260:8 261:11 279:20 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **where**(103) 11:23  12:8  17:10  17:10  18:20  27:24  27:24  44:4  44:25  48:21  49:17  50:21  59:25  60:2  73:8  91:13  91:16  91:20  93:3  93:7  94:5  95:13  97:25  102:21  104:12  111:6  111:7  112:17  117:6  117:16  117:19  118:3  118:4  118:6  118:7  118:8  118:9  118:10  128:14  129:24  132:2  137:22  139:9  146:6  146:8  146:11  146:21  148:12  150:7  151:12  155:16  159:2  161:17  166:11  171:17  171:20  175:20  180:7  181:25  189:13  192:8  197:2  202:12  205:4  206:8  206:11  206:13  207:16  208:14  210:20  212:7  213:10  215:2  216:3  216:4  228:11  228:14  235:9  236:2  236:6  236:9  236:10  239:19  242:4  243:4  243:22  243:23  247:11  249:19  249:24  252:23  254:8  257:10  257:19  262:21  262:25  263:22  264:12  267:12  271:9  275:2  282:15 | | **why**(55) 21:5  21:11  30:4  32:21  38:11  42:6  64:10  74:18  89:5  106:18  107:11  109:17  112:11  116:23  117:25  119:22  120:4  133:1  133:20  135:12  136:8  136:13  140:20  140:22  142:18  144:5  145:23  147:7  147:9  150:25  153:1  161:14  166:4  173:19  200:19  216:22  236:25  247:8  248:22  249:11  249:15  250:17  250:24  251:1  251:2  251:9  251:13  252:1  262:16  262:19  264:8  264:23  265:2  276:4  280:5 | | **with**(297) 11:6  12:14  14:11  14:24  15:3  16:2  16:7  18:17  18:21  19:23  19:23  19:25  20:4  20:5  20:7  22:4  23:7  23:11  24:1  24:11  24:15  24:21  25:5  25:6  25:8  25:21  26:4  26:7  26:13  26:23  27:5  27:12  28:7  29:11  30:15  30:20  30:24  32:8  34:4  34:15  35:17  35:21  36:3  37:15  38:18  40:9  40:17  42:17  43:9  46:2  46:15  46:21  47:4  47:10  47:11  48:6  48:9  48:25  49:12  50:1  50:17  51:1  52:18  53:2  54:8  57:7  57:22  58:19  58:20  58:21  59:5  59:25  60:2  60:10  60:15  61:9  61:12  61:15  66:4  66:10  67:2  67:15  67:21  67:24  68:10  68:23  70:23  71:2  71:3  71:16  72:10  72:14  73:2  73:8  73:10  73:14  79:2  79:9  79:14  81:10  83:8  84:9  85:16  86:3  86:7  86:14  87:17  87:20  88:7  90:2  90:3  93:22  93:24  93:24  95:6  95:17  95:25  96:3  96:6  96:21  97:2  97:5  98:6  98:15  98:22  102:5  102:8  102:17  104:10  104:13  104:17  105:13  105:23  107:24  108:13  110:8  111:9  112:12  113:19  114:21  115:24  116:1  116:10  117:13  118:17  125:8  128:17  129:19  132:19  133:12  134:5  136:1  141:5  141:14  142:21  143:25  144:14  145:2  148:5  150:7  151:1  153:2  156:24  157:7  157:8  159:1  168:16  172:17  172:23  180:2  180:12  181:5  181:22  183:3  183:4  184:3  185:1  185:1  185:12  185:18  186:4  187:2  187:8  187:11  188:15  188:19  188:21  189:3  189:4  189:11  189:20  191:24  191:24  192:2  193:3  193:18  193:24  195:8  196:17  199:1  199:19  200:6  201:21  202:17  202:20  202:2  204:18  204:25  205:23  205:25  206:10  206:12  207:4  208:17  209:1  209:14  210:16  210:18  211:16  211:18  212:7  213:17  214:4  216:11  219:3  221:13  222:4  222:21  224:3  224:9  224:14  224:16  224:21  225:2  225:5  226:1  228:21  228:24  229:14  230:19  231:2  232:10  234:10  234:10  237:5  238:5  238:11  239:24  242:5  242:14  242:18  242:25  243:1  243:21  245:6  246:13  248:8  250:10  254:2  254:5  254:20  256:23  257:21  257:23  258:1  259:1  259:16  259:25  261:7  263:5  263:7  263:17  263:22  263:25  264:13  264:23  265:1  266:5  267:6  267:23  268:2  270:6  270:21  272:9  272:16  272:25  275:16  276:5  279:13  279:23  280:12  280:19  281:3  282:2  283:18 | | **work**(58) 11:25  53:17  53:19  54:3  85:18  86:8  87:20  88:15  89:1  89:17  91:25  93:14  97:6  97:9  101:11  111:19  127:6  132:18  156:5  156:21  156:23  158:25  181:15  183:25  184:7  188:12  190:14  190:15  193:2  193:10  197:6  197:8  197:13  199:12  201:7  208:17  214:17  221:12  222:5  222:21  243:15  245:21  245:22  253:9  253:9  253:23  254:3  254:12  254:14  255:8  256:2  256:24  258:17  258:17  259:17  259:20  260:6 |
| **whereas**(2) 35:24  255:7 | | **wife**(1) 280:14 | | | | **worked**(9) 90:1  185:18  187:8  187:11  191:23  200:2  234:11  234:15  251:12 |
| **whether**(64) 24:22  25:13  25:17  26:9  29:16  29:18  30:7  30:9  36:2  36:5  36:14  43:15  52:8  52:24  53:13  53:15  54:22  55:18  64:14  66:5  66:11  69:8  71:16  78:24  79:2  80:16  81:11  82:4  82:7  95:23  121:13  121:23  124:9  141:16  143:14  156:15  161:10  163:2  177:2  179:6  185:15  187:5  191:20  196:12  197:25  200:6  203:5  206:21  211:24  214:4  214:13  233:8  233:13  233:14  233:18  233:11  238:1  238:15  241:17  251:25  268:12  269:24  269:25  281:7 | | **wild**(1) 9:48  **wilderader**(5) 69:21  70:1  70:10  70:19  72:8  **will**(54) 11:13  12:15  42:25  51:2  59:7  62:24  65:19  65:20  66:16  87:9  89:20  90:11  101:3  106:6  107:6  109:1  109:6  110:9  110:12  110:14  112:3  114:13  114:13  114:15  136:24  137:5  151:23  153:11  169:11  169:15  171:16  172:21  174:14  197:14  202:5  204:17  216:22  239:9  240:1  260:4  261:23  265:8  265:18  267:2  279:13  279:15  281:7  281:17  281:17  281:19  282:6  282:9  283:5 | | | | **working**(11) 54:1  70:20  93:7  96:3  190:11  193:18  193:25  198:21  245:13  251:22  255:22  **workout**(1) 14:7  **works**(2) 82:19  170:20  **workshop**(5) 96:12  96:18  96:19  191:17  191:21 |
| **which**(124) 14:3  32:12  32:12  37:5  42:1  49:13  49:21  49:23  54:25  56:25  62:19  69:18  77:4  85:23  88:15  93:1  93:7  93:12  93:21  94:6  94:17  96:7  99:24  102:24  103:3  103:10  103:15  104:4  106:2  106:22  108:22  108:23  108:25  109:14  115:10  118:24  119:7  120:17  121:5  121:6  122:11  124:13  124:24  126:17  130:24  131:17  132:2  132:9  133:5  133:24  134:15  135:2  137:22  140:12  143:7  143:19  144:13  148:24  149:19  150:25  151:9  154:17  155:9  158:15  160:8  160:10  161:1  161:2  161:8  163:1  165:7  166:25  167:4  167:11  167:23  167:23  167:24  169:21  173:9  180:2  182:23  183:12  194:6  198:23  199:5  204:10  204:19  205:4  208:18  212:14  224:21  225:10  241:1  241:10  242:7  244:9  244:10  244:19  244:20  247:14  247:14  247:16  248:8  250:2  250:14  254:4  257:3  260:4  260:4  260:17  261:6  263:15  263:24  264:18  264:22  269:19  271:5  273:3  273:11  276:7  278:13  278:21  278:23  281:19 | | **willing**(4) 86:20  133:2  142:23  143:1  **wilmer**(2) 6:20  10:33  **wilmington**(14) 1:12  1:36  2:16  2:37  3:8  3:29  4:9  4:25  4:31  4:37  4:43  5:14  7:29  11:1  **wilson**(1) 6:13  **win**(6) 117:11  132:3  136:24  137:5  137:10  224:5  **winning**(2) 117:12  133:17  **wishes**(1) 279:14 | | **withdraw**(5) 75:14  77:1  84:12  193:3  276:8  **withdrawn**(1) 81:9  **withdrew**(3) 26:23  26:24  27:2  **within**(19) 30:10  83:11  103:3  130:15  132:18  146:13  152:14  152:17  160:4  169:1  169:21  235:19  235:21  237:16  237:20  238:24  238:24  239:6  239:12 | | **workshops**(1) 96:9  **world**(17) 94:18  124:19  125:6  135:13  135:14  135:24  136:8  137:9  140:1  140:23  153:15  153:20  156:17  171:21  215:5  268:15  268:16  **world-class**(1) 96:18  **worrying**(1) 244:12  **worse**(3) 47:22  108:4  113:22  **worst**(1) 47:18  **worth**(7) 21:9  99:20  99:21  135:25  171:15  205:22  269:7 |
| **while**(8) 16:8  72:18  184:24  201:14  221:15  224:7  259:12  279:18 | | | | **without**(26) 30:1  39:12  39:18  88:19  105:7  115:25  116:1  121:20  136:1  142:2  160:19  162:21  204:20  205:25  206:13  206:17  241:15  247:7  253:14  258:19  259:16  274:1  274:20  274:23  275:7  275:17 | | **worthwhile**(1) 78:15  **would**(255) 13:12  14:13  26:10  27:9  27:11  27:24  27:24  28:1  36:2  36:24  37:7  39:1  39:12  39:13  39:22  40:6  40:7  40:11  41:15  41:24  42:13  55:10  58:7  58:17  58:22  59:12  59:21  60:25  63:20  63:20  66:5  66:11  67:17  70:23  70:25  71:1  72:2  72:5  76:4  78:14  79:13  79:15  83:2  83:7  83:9  83:24  84:5  85:14  87:5  88:25  95:5  100:7  104:18  104:20  106:4  108:10  108:22  108:23  109:11  117:22  118:4  118:6  118:7  118:8  123:1  123:4  124:18  126:6  126:10  127:22  128:10  128:22  132:6  136:1  138:5  138:25  138:25  139:8  142:5  142:9  142:10  142:12  143:15  144:18  146:7  146:8  148:11  150:8  151:3  151:9  155:22  155:25  155:25  156:1  157:16  159:4  159:19  159:20  160:3  161:4  161:5  161:22  164:19  164:21  165:23  166:5  166:8  166:10  166:12  166:13  167:3  168:11  169:1  169:3  172:16  172:25  173:25  174:2  175:2  175:15  175:17  175:21  182:4  182:7  182:10  182:13  182:16  182:19  185:20  185:22  190:24  191:14  191:20  192:3  192:12  192:19  193:9  193:11  197:11  198:2  201:16  202:17  202:19  202:25  203:7  203:25  205:20  205:20  205:21  206:14  206:18  206:23  206:24  207:22  207:24  208:22  209:6  209:15  210:22  211:7  211:10  211:15  212:4  213:8  213:15  213:19  213:20  214:13  214:16  214:18  215:9  215:9  215:12  215:22  216:12  217:2  217:25  218:20  218:20  218:22  219:24  220:4  220:7  221:15  222:3  222:24  224:9  226:1  226:25  227:25  230:3  232:7  233:9  233:14  234:18  235:7  235:20  238:6  239:4  239:13  239:20  239:23  241:14  241:14  241:18  242:4  242:6  242:19  244:19  244:21  245:2  245:3  245:4  245:16  247:10  250:1  250:13  250:15  250:17  254:2  254:20  256:21  256:23  257:9  257:16  258:5  258:6  259:7  259:24  261:7  261:8  261:20  261:22  265:22  266:2  267:11  267:18  267:20  268:12  269:20  269:25  270:1  270:2  272:10  274:9  274:15  274:17  274:18  274:20  275:17  278:4  278:23  279:5  281:11  283:15 |
| **white**(1) 10:29  **whitman**(2) 189:16  282:17  **whittman**(1) 9:44  **who**(29) 15:10  15:23  17:6  17:13  19:1  20:21  20:25  21:3  23:3  28:19  31:5  33:7  47:1  47:11  66:7  68:5  69:11  70:1  70:11  71:6  71:12  115:5  148:2  171:22  196:17  198:11  198:11  212:11  281:15 | | | | **witness**(31) 11:9  11:18  29:25  36:8  54:7  54:9  80:5  83:8  87:6  88:18  90:19  90:21  90:24  100:18  158:1  159:13  178:15  179:2  180:22  192:15  194:25  196:20  198:20  222:19  257:22  258:9  279:23  280:24  282:1  282:23  283:6 | | |
| **whoever**(1) 87:21  **whoever's**(1) 131:17  **whole**(17) 19:4  38:20  76:11  76:17  94:9  97:23  99:17  115:8  115:24  145:6  155:21  172:2  181:12  181:14  248:4  248:10  256:20 | | | | **witness's**(3) 59:5  158:12  174:4  **witnesses**(6) 36:4  87:18  195:2  195:20  196:17  285:5 | | |
| **whom**(1) 99:8  **whose**(2) 184:2  209:10 | | | | **witness's**(1) 101:1  **won't**(2) 28:8  87:4  **word**(1) 222:20  **words**(6) 39:16  236:12  250:8  274:6  274:7  274:9 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **wouldn't**(9) 75:12  85:5  85:6  178:24  189:12  210:10  214:17  236:23  261:21 | **yes**(301) 13:21  14:2  14:13  15:17  15:22  16:4  16:14  17:5  17:12  18:9  18:19  18:23  19:18  21:2  21:7  21:19  21:21  22:3  22:10  23:2  24:24  26:8  27:11  28:16  29:24  30:3  30:11  30:17  30:24  31:11  31:15  32:4  33:5  33:13  33:20  33:23  34:3  34:14  34:16  35:2  37:20  37:25  38:6  39:8  39:13  39:17  44:6  44:10  44:21  44:24  45:5  45:8  45:10  46:11  46:14  46:17  46:19  46:23  46:25  47:6  47:1  47:17  47:19  47:23  48:1  48:5  48:8  48:16  48:22  48:24  49:3  49:7  49:16  49:20  50:4  50:18  50:20  50:24  51:4  51:7  52:5  52:11  53:5  53:10  54:12  55:4  55:15  55:17  55:24  56:2  56:8  56:11  56:13  56:18  56:21  57:13  57:16  61:11  61:14  61:17  61:22  62:25  63:7  63:13  64:23  64:12  64:17  64:23  65:13  67:4  67:20  67:24  68:10  68:18  69:20  70:6  70:8  70:15  71:8  71:11  71:14  72:12  73:13  75:9  77:18  77:22  78:4  78:13  79:1  79:4  79:15  79:18  79:22  80:1  81:6  81:24  82:6  83:12  83:19  84:2  91:5  92:18  93:17  94:13  95:19  103:12  106:6  108:15  110:25  112:10  112:14  112:25  114:23  117:3  119:21  121:1  122:15  123:9  123:19  123:24  124:14  126:22  129:22  134:12  140:9  140:13  144:1  145:18  146:18  147:22  152:7  155:7  155:10  156:6  157:2  158:5  170:11  170:15  170:18  174:18  177:20  177:22  178:2  179:17  179:25  180:8  180:11  181:2  182:3  182:6  182:9  182:12  182:15  182:18  183:5  183:10  183:14  184:16  185:11  185:22  186:11  187:20  188:6  188:12  190:6  190:23  191:2  192:10  193:8  193:14  193:17  194:12  194:1  194:17  194:21  195:1  195:3  196:22  197:16  197:22  200:8  200:17  201:18  201:23  202:7  203:3  203:23  204:3  204:7  204:23  205:13  205:16  206:8  207:7  208:12  209:12  209:18  210:7  212:9  212:10  212:12  214:10  215:2  215:4  215:20  217:18  217:22  218:9  218:11  218:22  220:17  220:21  221:5  221:24  222:7  222:13  222:23  223:17  223:19  223:25  224:7  224:20  224:25  226:9  229:11  229:16  229:22  230:17  230:23  231:2  231:12  232:1  232:15  233:16  233:22  236:18  237:9  237:11  239:19  240:7  240:18  240:21  240:23  241:3  241:8  242:25  243:14  244:8  245:18  245:23  246:6  246:16  246:19  246:21  248:18  248:25  249:9  250:11  250:12 | **you**(301) 11:15  11:17  11:23  12:2  12:9  12:12  12:14  12:20  12:24  12:25  13:2  13:1  13:18  13:25  14:22  15:10  16:1  16:7  17:3  17:15  17:19  17:22  17:24  18:6  18:10  18:25  19:7  20:8  20:20  20:20  20:25  21:5  21:11  21:24  22:21  23:3  23:5  23:17  23:19  24:4  24:14  24:21  25:12  25:16  26:4  26:6  27:1  28:12  28:12  28:17  29:2  29:10  29:10  29:1  29:25  30:11  30:13  30:15  30:20  31:12  31:14  31:16  31:19  32:11  33:14  33:19  33:21  34:5  34:17  35:5  35:17  35:17  36:13  36:13  36:16  36:17  36:24  37:8  37:13  38:3  38:5  38:20  38:22  39:15  39:19  40:17  40:24  41:8  41:13  41:19  41:24  42:13  42:17  42:22  42:25  43:6  43:12  43:14  43:14  43:16  43:17  44:20  44:3  44:7  44:11  44:14  44:19  45:3  45:6  45:6  45:9  45:11  45:14  45:20  45:25  45:25  46:4  46:10  46:15  46:20  46:24  47:10  48:9  48:10  48:13  48:21  48:25  49:1  49:4  49:15  49:21  49:25  50:1  50:2  50:9  50:11  50:16  50:17  50:17  50:22  50:25  51:1  51:3  51:5  51:5  51:6  51:9  51:16  51:16  51:18  51:24  52:2  52:12  52:18  53:25  54:10  54:13  54:15  54:21  55:1  55:2  55:2  55:3  55:11  55:11  55:12  55:14  55:18  55:19  56:3  56:9  56:12  56:14  56:16  56:22  56:22  56:25  57:2  57:4  57:10  57:17  57:19  57:25  58:6  58:10  58:12  58:14  58:16  58:22  59:9  59:15  59:16  59:19  59:22  59:23  59:2  60:3  60:8  60:8  60:11  60:16  61:1  61:8  61:9  61:12  61:15  61:18  61:19  61:25  62:9  62:18  62:20  62:20  62:24  63:3  63:16  63:23  64:9  64:11  64:13  64:14  64:18  64:19  66:3  66:3  66:7  66:14  67:5  67:9  67:10  67:11  68:19  68:22  68:23  68:25  69:2  69:8  69:9  69:15  69:19  69:23  70:1  70:11  70:16  71:9  71:12  71:13  71:16  71:19  71:24  72:11  72:17  72:18  72:20  72:21  72:22  72:25  73:3  73:7  73:7  73:8  73:14  73:14  73:19  73:22  74:3  74:4  75:7  75:8  75:19  76:1  76:1  76:4  76:11  77:3  77:7  77:15  77:16  77:19  78:7  78:10  78:14  78:23 | **you**(301) 78:25  79:2  79:5  79:11  79:19  79:20  79:21  79:23  79:24  80:3  80:8  80:15  80:25  81:4  81:11  81:22  82:1  82:3  82:7  82:24  83:14  83:16  83:18  83:23  84:3  84:6  84:17  85:6  85:11  85:12  85:15  85:18  86:16  86:21  86:23  87:2  87:2  87:5  87:9  87:12  87:15  87:20  87:23  88:3  89:6  89:10  89:12  89:16  90:8  90:10  90:11  90:17  90:20  90:21  90:25  91:4  91:10  91:13  91:17  91:20  92:17  93:10  93:15  94:11  94:12  94:16  94:22  95:1  95:7  95:17  95:25  96:9  96:23  97:11  98:15  98:16  99:1  99:2  99:8  99:10  100:1  100:2  100:2  100:3  100:10  100:12  100:13  101:2  101:4  101:11  101:17  101:22  101:25  102:1  102:2  103:6  103:24  103:25  104:2  104:3  104:5  104:17  105:9  105:12  105:15  105:20  105:22  106:7  106:7  106:10  106:10  106:15  107:11  107:13  107:18  108:7  108:8  108:9  108:16  108:19  108:20  109:2  109:3  109:7  109:11  109:11  109:14  109:15  109:15  110:3  110:10  110:11  110:12  110:16  110:16  110:22  111:11  111:14  112:4  112:5  112:8  112:13  112:15  112:24  113:1  113:1  113:6  113:12  113:23  113:23  113:24  114:4  114:6  114:6  114:21  115:8  115:17  115:20  116:5  116:8  116:23  117:2  118:6  118:9  118:10  118:15  118:24  119:7  119:14  119:18  119:23  120:12  120:15  120:16  120:17  120:19  120:22  120:23  120:25  121:1  121:4  121:9  121:11  121:17  121:17  121:18  121:19  121:23  121:25  122:7  122:16  123:4  123:7  123:12  123:13  123:15  123:16  123:25  124:3  124:18  125:8  125:15  125:15  126:6  126:9  127:10  127:15  127:22  128:1  128:1  128:10  128:12  129:5  129:6  129:9  129:9  129:19  130:5  130:5  130:8  130:25  131:14  132:5  132:6  132:7  132:17  132:22  132:24  133:3  133:7  134:9  134:21  135:2  135:5  135:10  136:11  136:12  136:12  136:19  137:18  137:20  138:4  138:5  138:7  138:16  138:22  138:23  138:25  139:1  139:4  139:5  139:8  139:10  139:22  140:4  140:5  140:6  140:10  140:16  141:21  141:24  142:9  142:10  143:8  143:9  143:14  143:21  143:23  143:24  144:7  144:8  144:9  144:10  144:13  144:14  144:18  145:1  145:15  145:21  146:11  146:16  146:19  147:15  147:20  147:23  147:23  149:11  149:13  150:8  150:9  150:10  150:10  150:11  150:22  150:23  151:15 |
| **wouldn't**(2) 113:24  150:8 |  |  |  |
| **would've**(2) 143:12  153:6 |  |  |  |
| **wow**(1) 100:14 |  |  |  |
| **write**(2) 50:25  55:1 |  |  |  |
| **writes**(5) 49:22  49:25  50:15  55:9  70:20 |  |  |  |
| **writing**(3) 31:10  33:12  51:6 |  |  |  |
| **writings**(1) 36:18 |  |  |  |
| **written**(4) 89:13  103:6  187:3  187:6 |  |  |  |
| **wrong**(9) 74:17  74:17  128:9  142:25  142:25  144:4  159:1  187:15  210:10 |  |  |  |
| **wrote**(1) 107:8 |  |  |  |
| **www.diazdata.com**(1) 1:45 |  |  |  |
| **yeah**(42) 23:18  33:18  35:7  41:4  42:15  45:15  54:23  61:4  63:18  66:19  73:10  101:15  110:19  112:16  113:6  118:16  123:2  125:13  127:5  129:10  145:3  157:23  158:1  159:10  168:3  208:7  220:25  221:3  221:16  221:21  222:6  222:19  245:16  248:2  252:7  255:10  255:13  262:3  262:13  273:2  275:16 |  |  |  |
| **year**(20) 49:2  49:13  51:20  55:3  91:25  92:6  93:12  94:16  94:20  96:11  97:13  99:6  99:7  100:13  100:14  100:15  184:19  193:6  245:14  272:7 | **yes**(30) 251:6  252:2  252:2  253:3  253:11  254:1  254:23  258:11  260:2  261:10  261:3  263:8  264:3  265:22  266:9  266:14  267:7  267:16  268:12  269:5  271:23  272:3  272:8  273:6  273:17  274:25  275:12  277:5  277:13  277:25  278:7 |  |  |
| **years**(8) 12:13  12:15  12:22  12:23  92:5  92:13  143:23  279:8 | **yesterday**(10) 44:8  74:17  85:24  86:6  88:7  88:17  104:5  252:4  253:23  259:18 |  |  |
| **yep**(5) 126:15  132:10  132:21  132:23 | **yesterday's**(1) 281:1 |  |  |
|  | **yet**(5) 189:25  196:6  276:25  277:1  281:8 |  |  |
|  | **yield**(2) 143:7  278:21 |  |  |
|  | **yields**(4) 143:9  143:10  279:2  279:5 |  |  |
|  | **york**(8) 2:9  2:28  2:44  3:22  12:1  92:11  93:2  198:23 |  |  |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**you**(301) 152:1 152:6 152:9 152:14 152:15 152:22 153:1 154:6 154:6 154:14 154:19 154:22 155:3 155:9 155:11 155:13 156:4 156:5 156:8 156:8 156:9 156:16 156:16 156:23 156:24 156:24 157:8 157:9 157:10 157:17 157:19 157:19 157:19 157:19 157:24 158:6 158:6 158:7 158:10 159:11 159:17 159:18 159:18 159:18 159:21 160:11 160:13 160:20 161:23 162:3 162:6 162:6 162:7 162:11 162:11 162:11 162:12 162:14 162:14 162:20 162:20 162:23 163: 163:6 163:6 163:8 163:19 163:19 163:23 164:2 164:2 164:3 164:4 164:16 164:17 165:6 165:9 165:11 165:18 166:1 166:1 166:7 167:11 167:13 167:16 167:18 167:21 167:24 167:25 167:25 168:20 168:24 169:4 169:4 170:2 170:5 170:10 170:13 171:6 171:13 171:15 171:19 171:2 172:14 172:14 172:15 172:24 173:2 173:13 173:13 173:19 173:23 174:17 174:19 174:24 174:25 175:13 175:13 175:15 175:21 176:1 176:7 176:7 176:10 176:14 176:15 176:16 176:24 176:24 177: 177:3 177:4 177:24 178:3 178:17 178:23 179:5 179:18 180:1 180:7 180:9 180:19 180:20 180:23 181:4 181:11 181:12 181:1 181:19 181:21 181:24 181:25 182:16 182:20 183:3 183:6 183:11 183:19 183:20 183:21 184:15 184:21 184:24 184:25 184:25 185:6 185:7 185:10 185:14 185:18 185:25 186:1 186:1 186:1 186:1 186:6 186:14 186:15 186:23 186:23 186:24 186:24 186:24 187:8 187:11 187:14 187:1 187:21 188:7 188:10 188:12 188:17 188:18 188:19 188:22 188:24 189:1 189:9 189:9 189:19 189:20 189:21 190:4 190:4 190:10 190:15 190:17 190:21 190:22 190:24 190:24 191:6 191:16 191:12 191:12 191:19 191:20 191:20 191:21 192:3 192:7 192:7 192:8 192:12 192:14 192:14 192:17 192:19 192:22 193:5 193:12 193:1 193:18 194:5 194:7 194:10 194:10 194:13 194:16 194:18 194:19 194:22 194:24 194:24 195:2 195:2 195:5 195:7 195:12 195:14 195:23 196:3 196:18 196:20 197:5 197:12 197:16 197:17 198:8 198:11 199:1 199:2 199:3 199:4 199:5 199:7 199:13 199:23 200:4 200:10 200:13 200:15 200:2 201:6 201:10 201:14 201:15 201:16 201:21 202:17 202:19 202:24 202:25 203:10 203:12 203:14 203:15 203:22 205:10 205:10 205:14 205:19 206:18

**you**(99) 263:12 263:12 263:19 263:24 264:8 264:23 265:1 265:2 265:6 265:11 265:23 266:4 266:9 266:11 266:12 266:16 266:16 266:16 266:24 266:7 267:7 267:19 267:22 267:24 268:6 268:7 268:9 268:12 268:18 269:6 269:11 269:17 269:17 269:1 269:19 269:24 270:1 270:4 270:10 270:1 270:16 270:20 271:1 271:7 271:14 271:24 272:4 272:5 272:9 272:9 272:10 272:17 272:20 273:4 273:7 273:13 273:15 273:18 273:19 273:23 274:15 275:5 275:8 275:13 275:20 275:25 276:14 276:16 276:17 277: 277:10 277:11 277:11 277:16 277:24 278:1 278:5 278:8 278:10 278:10 278:16 278:17 278:25 279:25 280:4 280:11 280:1 280:18 280:19 280:22 281:4 281:10 281:14 281:23 282:1 282:10 283:20 284:1 284:2

**you'd**(7) 51:8 55:22 85:4 240:2 245:13 254:15 277:6

**you'll**(6) 48:19 62:22 69:20 254:8 260:19 277:21

**you**(301) 206:19 206:20 206:21 207:19 207:22 208:5 208:10 208:15 209:2 209:2 209:3 209:8 209:20 210:5 210:15 210:16 210:17 210:19 211:8 211:18 212:1 212:6 212:8 212:10 212:15 212:22 212:25 213:4 213:4 213:5 213:5 213:7 213:12 213:13 213:13 213:17 213:18 213:18 213:20 214:7 214:5 214:8 214:11 215:13 215:17 215:18 215:19 216:8 216:12 216:12 216:15 216:19 216:23 216:24 217:8 217:9 217:14 217:15 217:20 217:20 217:23 218:1 218:1 218:2 218:8 218:12 218:24 219:4 219:5 219:5 219:12 219:14 219:22 219:25 220:7 220:1 220:18 220:22 220:22 220:23 221:1 221:12 221:14 221:16 221:18 221:22 222:5 222:15 223:4 223:10 223:11 223:15 223:16 223:20 223:23 224:1 224:2 224:4 224:5 224:5 224:5 224:6 224:8 224:9 224:9 224:11 224:16 224:21 224:22 225:2 225:5 225:14 225:24 226:5 226:10 226:12 226:15 227:3 227:3 227:7 227:8 227:9 227:19 227:24 228:1 228:5 228:6 228:7 228:11 229:12 229:13 229:14 229:17 229:22 230:3 230:5 230:5 230:10 230:18 230:18 230:24 230:25 231:4 231:13 231:19 231:2 232:6 232:10 232:10 232:16 233:6 233:8 233:7 233:24 234:8 234:13 234:21 234:2 234:24 235:2 235:3 235:4 235:8 236:6 236:15 236:15 236:19 237:6 237:25 238:6 238:8 238:25 238:25 239:13 239:15 239:17 239:17 239:20 239:22 239:25 240:8 240:7 240:10 241:4 241:4 241:5 241:11 241:12 241:22 242:2 242:8 242:16 242:24 243:2 243:9 243:12 243:17 243:18 244:4 244:6 244:14 244:15 244:16 244:22 244:23 245:12 245:16 245:21 245:24 246:3 246:7 246:10 246:17 246:22 246:25 246:25 247: 247:7 247:8 247:9 247:9 247:10 247:12 247:19 247:25 248:1 248:2 248:4 248:7 248:7 248:8 248:14 248:25 249:3 249:6 249:16 250:17 251:9 251:9 251:18 251:19 251:23 251:23 251:24 252:6 252:7 252:10 253:1 253:8 253:12 253:22 253:23 254:2 254:10 254:11 254:20 254:20 255:2 255:6 255:11 255:21 255:25 255:25 256: 256:9 256:14 256:15 256:23 257:1 257:9 257:9 257:13 257:16 258:5 258:12 258:15 258:9 259:6 259:12 259:16 259:18 259:2 260:1 260:3 260:4 260:7 260:8 261:3 261:4 261:11 261:17 261:22 262:8 262:10 262:16 262:17 262:21 262:21 262:25 263:

**your**(45) 261:13 261:25 262:4 262:7 262:22 262:25 263:24 263:25 264:5 264:23 265:12 265:20 265:24 266:11 266:13 266:23 267:10 267:14 268:3 268:19 268:21 269:6 269:11 270:8 271:6 271:11 271:18 273:3 273:4 273:8 274:6 274:6 276:14 277:6 277:8 277:10 278:6 279:11 279:15 279:17 280:1 280:5 280:7 280:11 283:19

**yourself**(5) 76:4 118:6 188:13 193:19 280:20

**you're**(42) 41:6 44:19 53:25 54:14 56:5 59:23 66:18 69:24 158:4 160:13 161:9 161:17 163:25 165:21 165:23 167:12 170:22 172:17 173:12 176:21 176:21 177:8 177:8 186:8 197:21 220:7 225:7 225:8 238:15 241:5 241:23 249:22 252:14 257:3 259:8 263:21 266:18 270:14 275:10 275:13 275:14

**you've**(32) 33:16 33:19 42:1 76:23 155:8 157:1 162:16 162:16 162:17 162:18 162:1 163:25 167:14 167:18 168:23 170:21 172:8 179:9 193:5 193:15 196:6 207:4 223:21 242:12 242:12 243:10 243:25 254:16 259:19 260:12 268:1 279:25

**young**(1) 4:4

**your**(301) 11:4 11:5 11:8 11:11 11:25 12:12 12:16 13:9 13:18 13:24 24:6 24:9 24:14 25:9 25:10 25:15 26:2 28:5 28:15 28:16 29:4 29:12 29:12 30:3 30:7 30:19 31:14 31:17 31:15 33:22 36:1 40:3 41:1 41:10 41:24 42:6 43:4 43:12 43:13 43:18 44:11 45:3 45:6 48:4 48:18 50:8 51:5 52:2 53:11 53:21 54:4 54:6 55:1 56:2 56:4 57:1 59:2 63:1 63:3 63:12 63:14 64:9 65:21 66:14 66:21 66:23 67:1 67:10 67:11 68:22 68:25 69:17 69:23 70:9 70:18 71:6 71:15 71:20 72:10 74:8 75:7 75:7 77:5 78:7 78:8 78:8 78:9 78:16 78:18 78:22 80:4 81:15 83:2 83:8 83:14 83:19 84:14 85:9 88:4 89:5 89:23 90:5 90:7 90:13 90:13 90:17 90:23 91:4 92:16 93:1 94:11 100:9 100:17 100:23 101:4 101:7 103:13 103:15 103:17 103:21 104:3 105:1 110:16 112:23 112:3 116:4 118:12 118:13 122:13 125:12 125:18 125:24 125:25 128:4 128:22 129:20 129:21 138:22 140:7 141:23 145:4 147:20 152:5 154:18 155:4 156:5 158:9 163:3 168:24 171:11 174:2 174:9 174:13 174:20 177:4 177:13 178:4 178:15 179:19 179:22 180:1 180:2 180:2 180:7 181:3 181:17 182:2 183:4 183:11 183:12 183:15 183:21 185:20 186: 186:9 186:13 186:22 187:9 187:18 187:24 188:3 188:4 188:5 189:10 190:11 190:21 192:8 193:6 194:1 194:5 194:11 194:18 194:20 194:22 194:23 195:5 195:12 196:6 197:14 198:18 199:8 199:12 199:13 201:1 203:15 204:5 204:10 205:10 205:15 205:18 206:21 207:8 209:8 212:22 214:6 214:7 214:21 215:6 216:24 217:2 217:15 219:20 220:2 220:23 221:4 221:7 221:9 221:13 224:9 225:25 226:24 229:22 230:6 230:19 230:24 233:23 235:24 238:8 238:25 239:25 240:3 240:20 240:22 241:1 241:12 241:22 243:2 245:11 245:13 246:3 246:4 246:8 246:17 246:20 247:1 247:4 248:2 249:7 251:5 251:10 251:22 251:23 252:3 252:9 253:8 253:8 253:13 254:5 255:12 255:23 256:1 256:3 256:9 256:17 256:24 257:21 257:25 257:20 258:2 258:9 258:12 258:16 258:17 258:25 259:6 259:13 259:14 259:17 260:1 260:6 260:7 260:11 260:15 261:12

**you'll**(10) 94:15 111:20 113:17 116:19 139:24 140:25 142:25 146:7 149:5 154:17

**you're**(31) 108:5 110:11 110:12 111:24 112:5 112:6 119:10 122:4 124:3 127:3 127:11 127:20 131:25 133:8 135:8 136:6 136:10 136:13 138:6 138:17 138:20 140:24 141:20 146:1 147:19 150:21 151:1 151:7 151:8 151:25 154:4

**you've**(34) 92:16 99:13 101:11 103:10 103:10 110:5 112:9 116:3 116:5 118:12 118:12 118:13 118:25 119:18 120:1 121:8 123:18 126:20 127:17 129:13 134:10 138:15 139:6 139:12 140:2 140:3 140:4 140:16 144:12 144:24 145:15 145:17 150:20 152:4

**zell**(17) 5:4 46:10 46:12 46:15 46:20 50:3 50:19 55:16 55:19 141:13 143:1 199:18 200:11 200:12 201:24 276:5 276:8

**zell's**(1) 199:23

**zensky**(104) 2:20 74:8 74:16 82:25 83:2 83:5 83:12 83:14 85:21 86:21 87:20 88:4 88:4 89:6 89:24 100:23 101:2 103:17 103:24 104:19 105:6 145:4 145:6 158:9 158:20 171:18 171:18 174:2 174:13 178:15 178:19 179:1 179:4 180:24 180:25 183:15 183:18 187:25 188:2 198:17 199:10 199:11 203:15 203:18 203:20 203:21 217:2 217:5 217:7 219:20 219:24 220:2 220:4 220:9 220:12 221:7 221:10 221:13 222:17 223:6 223:11 223:12 242:8 248:14 249:3 249:4 249:16 251:4 253:13 253:20 253:21 256:4 256:8 257:8 257:11 257:15 258:1 258:4 258:9 258:12 258:14 258:22 258:23 259:4 259:10 261:25 262:3 262:7 262:9 266:18 266:20 270:8 270:9 271:11 271:13 279:11 279:23 280:4 280:5 280:7 280:15 280:18 283:18

**zensky's**(2) 75:1 257:21

**zero**(10) 127:14 128:24 130:21 136:1 153:14 166:17 167:2 211:15 222:9 237:3

**zero-percent**(1) 231:10

**zloto**(1) 8:11

**zoom**(1) 252:7

**zuckerman**(5) 3:32 5:37 17:14 17:15 17:20

"**likely**"(1) 138:2

**march**(1) 284:11