## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>, | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: March 22, 2011 at 10:00 a.m.**<br>**Related to Docket Nos. 8201 and 8224** |

**OBJECTION OF ROBERT R. MCCORMICK TRIBUNE FOUNDATION AND CANTIGNY FOUNDATION TO THE MOTION OF AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, FOR ENTRY OF ORDER (I) DETERMINING THAT CREDITORS HAVE RETAINED THEIR STATE LAW CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS TO RECOVER STOCK REDEMPTION PAYMENTS MADE TO STEP ONE SHAREHOLDERS AND STEP TWO SHAREHOLDERS PURSUANT TO 11 U.S.C. § 546(A); (II) DETERMINING THAT AUTOMATIC STAY DOES NOT BAR COMMENCEMENT OF LITIGATION ON ACCOUNT OF SUCH CLAIMS AGAINST SUCH SHAREHOLDERS OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM AUTOMATIC STAY TO PERMIT COMMENCEMENT OF SUCH LITIGATION; AND (III) GRANTING LEAVE FROM <u>MEDIATION ORDER TO PERMIT COMMENCEMENT OF SUCH LITIGATION</u>**

Robert R. McCormick Tribune Foundation ("<u>McCormick</u>") and Cantigny Foundation ("<u>Cantigny</u>" and together with McCormick, the "<u>Foundations</u>"), by its attorneys, hereby object to the Motion of Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes (collectively with the Wilmington Trust Company,[1] the "<u>Noteholders</u>"), for Entry of Order (I) Determining that Creditors have Retained

---

[1]    On March 2, 2011, Wilmington Trust Company filed a joinder to the Motion [Docket No. 8244].

DM3/1735141.1

Their State Law Constructive Fraudulent Transfer Claims to Recover Stock Redemption Payments Made to Step One Shareholders and Step Two Shareholders Pursuant to 11 U.S.C. § 546(a); (II) Determining that Automatic Stay Does Not Bar Commencement of Litigation on Account of Such Claims Against Such Shareholders or, in the Alternative, Granting Relief from Automatic Stay to Permit Commencement of Such Litigation; and (III) Granting Leave From Mediation Order to Permit Commencement of Such Litigation [Docket No. 8201] (the "Motion").  In support of this objection, the Foundations state as follows:

### Introduction

1.      The Motion should be denied as the Noteholders cannot assert estate causes of action for their own benefit in an attempt to circumvent application of section 546(e) of the Bankruptcy Code.  There is no support for the Noteholders' argument that state-law constructive fraud claims can revert to individual creditors and be asserted by them during a bankruptcy case to challenge the very same transaction that a debtor's estate is challenging as a fraudulent transfer.

2.      To the contrary, caselaw provides that if a debtor or its representative seeks to avoid a transfer for the benefit of the estate, then individual creditors lack standing to attempt to avoid the same transaction.

3.      Here, the Official Committee of Unsecured Creditors (the "Committee") filed an adversary complaint, on behalf of the Debtors' estates, seeking to avoid payments made to former shareholders (the "Former Shareholders") of the Tribune in connection with the 2007 leveraged buy-out (the "LBO").  The Committee seeks to avoid the payments under the theory that they were part of a fraudulent transfer.

4.    Consequently, the Noteholders cannot seek to avoid the very same transaction as a fraudulent transfer through, what the Noteholders call in the Motion, creditor state law constructive claims or "Creditor SLCFC Claims."  Regardless of whether they are called state-law constructive fraud claims, constructive fraud, or actual fraud claims, the Committee is attempting to avoid the LBO as a fraudulent transfer.  The Committee's standing to assert a fraudulent transfer claim is exclusive and it divests all creditors, including the Noteholders, of standing to do the same.

5.    Moreover, the only reason the Noteholders seek to bring the Creditor SLCFC Claims is that the Bankruptcy Code provides a clear defense to the claims if they were to brought by the estates.  The Noteholders do not dispute that the payments made to the Former Shareholders are unavoidable settlement payments under section 546(e) of the Bankruptcy Code.  Instead, they seek the Court's permission to circumvent the Bankruptcy Code by bringing estate causes of action in state court, free from the constraints of section 546(e).  Their attempt must fail.

6.    The protections afforded to settlement payments under section 546(e) preempts any attempt by the Noteholders to avoid the payments under state law.

7.    Accordingly, this Court should not permit the Noteholders, or any of the Debtors' creditors, to assert the Creditor SLCFC Claims for their own benefit outside of and in contravention of the Bankruptcy Code.

## **Relevant Background**

8.    McCormick is one of the nation's leading charitable organizations created in 1955 from the estate of Colonel Robert R. McCormick, the longtime owner, editor, and publisher of The Chicago Tribune.  The mission of McCormick is to help build a more active and engaged

citizenry through six grant-making programs, Cantigny Park, two museums, and a civic outreach program.

9.      Cantigny is also a nonprofit organization and receives most of its funding from McCormick.

10.     On December 8, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

11.     On November 1, 2010, with leave of this Court and on behalf of the Debtors' estates, the Committee filed a thirty-six count complaint (as amended, the "Committee Complaint") naming hundreds of defendants, including the Foundations.

12.     Pursuant to the Committee Complaint, the Committee seeks, among other things, to avoid the LBO as both an intentional and constructive fraudulent transfer.  More specifically, the Committee Complaint asserts claims against the Foundations for (1) avoidance and recovery of all payments made to the Foundations as part of the LBO, (2) unjust enrichment, (3) breaches of fiduciary duties, and (4) aiding and abetting the breaches of fiduciary duties.

13.     On February 4, 2011, the DCL Plan Proponents filed their Second Amended Joint Plan of Reorganization for the Debtors (as amended, the "DCL Plan").  On February 25, 2011, the Noteholder Plan Proponents filed their Amended Joint Plan of Reorganization for the Debtors (as amended, the "Noteholder Plan," together with the DCL Plan, the "Competing Plans").

14.     The Competing Plans each contemplate that a "Litigation Trust" will pursue the claims asserted in the Committee Complaint after confirmation.  Additionally, each Competing

Plan sets up a similar mechanism whereby creditors may elect to transfer their purported state law constructive fraudulent transfer claims to a "Creditors' Trust," which will pursue the claims in state court after confirmation.  Finally, each Competing Plan purports to allow creditors who did not elect to transfer their state law claims to the Creditors' Trust to assert their state law claims individually after confirmation.

15.    Therefore, the Competing Plans contemplate multiple lawsuits in multiple forums, each seeking to avoid the same transaction.

### Objection

16.    The Noteholders should not be allowed to assert the Creditor SLCFC Claims in an attempt to avoid the LBO for their own benefit.  Because the Committee Complaint already seeks to avoid the transfers to the Foundations, the Committee (or some other representative of the Debtors' estates) has the exclusive standing to challenge those transfers based on <u>any</u> theory of law.  Faced with this dilemma, the Noteholders claim to have standing to avoid these same transfers, under a somewhat different legal theory, simply because the Committee Complaint does not allege a <u>constructive</u> fraudulent transfer count against the Foundations.  This argument must fail, as it ignores the broad scope of the Committee's exclusive standing to avoid all LBO-related transfers to the Foundations.

17.    Not only do the Noteholders lack standing to bring the Creditor SLCFC Claims, but they admittedly seek to circumvent section 546(e), which would render that section meaningless.

18.    Section 546(e) of the Bankruptcy Code explicitly prohibits the avoidance of any settlement payments of the kind made to the Former Shareholders in connection with the LBO unless a plaintiff can prove intentional fraud under the Bankruptcy Code.  *See* 11 U.S.C. §

546(e); *see also Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*, 590 F.3d 252, 258-59 (3d Cir. 2009); *In re QSI Holdings*, 571 F.3d 545, 550 (6th Cir. 2009); *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 986-88 (8th Cir. 2009); *Lowenschuss v. Resorts Int'l (In re Resorts Int'l)*, 181 F.3d 505, 514-15 (3d Cir. 1999); *Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.)*, 952 F.2d 1230, 1240 (10th Cir. 1991).  Therefore, the Bankruptcy Code preempts any attempt by the Noteholders to assert the Creditor SLCFC Claims so long as a representative of the Debtors' estates seeks to avoid the LBO.

I.    **The Noteholders Lack Standing to Bring the Creditor SLCFC Claims**.

19.    The LBO cannot be attacked piecemeal by both a representative of the Debtors' estates, the Creditors' Trust, and individual creditors such as the Noteholders.[2]

20.    Once the Debtors filed for bankruptcy, the Noteholders lost whatever standing they had to assert general claims belonging to all creditors, such as the Creditor SLCFC Claims. *See Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002) ("[O]nce a company or individual files for bankruptcy, creditors lack standing to assert claims that are 'property of the estate.'") (citation omitted); *see also Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243 (3d Cir. 2000) ("once avoidable pursuant to [section 544(b)], the transfer is avoided in its entirety for the benefit of all creditors, not just to the extent necessary to satisfy the individual creditor actually holding the avoidance claim"); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized injury arising from it, and if that

---

[2]    The Foundations have similarly objected to the alleged standing of the Creditors' Trust to assert state law constructive fraudulent transfer claims in connection with confirmation of the Competing Plans.  (*See* Docket No. 7972.)  Because the issues surrounding the Noteholders' Motion and the Foundations' objections to the Competing Plans are so similar in nature, no final decision on the Noteholders' Motion should be made until plan confirmation proceedings are complete and the Court has ruled on the Foundations' objections to the Competing Plans.

claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."); *Official Comm. of Unsecured Creditors v. Citicorp N. Am., Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869, 884 (Bankr. N.D. Ill. 1991) (holding that state law fraudulent transfer claims were not personal to individual creditors, but were "general" claims of the estate).

21.     The Debtors' exclusive standing to bring an action to avoid the LBO extends to all claims, regardless of whether they have identical elements, if the claims share the same underlying focus. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding that creditors lacked standing to bring successor liability, tortious interference with contract, and conspiracy claims because they were "so similar in object and purpose to" the fraudulent transfer claims that were being brought by the bankruptcy trustee); *Poth v. Russey*, No. 03-1308, 2004 WL 614623, at *9 (4th Cir. Mar. 30, 2004) (upholding district court's dismissal of creditor's breach of fiduciary duty claims against debtor's officers, directors, and shareholders because such claims were "'so similar in object and purpose' to a potential fraudulent conveyance claim that [debtor's] trustee in bankruptcy could bring that [the creditor] lacks standing to assert it.") (quoting *Ruppert Landscaping Co.*, 187 F.3d at 441).

22.     In *Ruppert Landscaping*, the Fourth Circuit prohibited creditors from asserting state law claims that "depend[ed] on a showing of fraud or other unlawful action with regard" to the same transaction the trustee sought to avoid as a fraudulent conveyance. 187 F.3d at 441. Even though the creditors' claims and the trustee's fraudulent conveyance claims did not contain identical elements, they all shared "the same underlying focus," which was to avoid a certain transaction. *Id*. (citation omitted). When all of the claims sought to avoid the same transaction, only the trustee had standing to bring a claim. *See id*.

23.     The Fourth Circuit explained, "the trustee should have first crack at challenging the [] transaction-the trustee's role is to bring suits such as these on behalf of all the creditors. As a general matter '[t]he trustee's single effort eliminates the many wasteful and competitive suits of individual creditors.'" *Id*. at 441-42.  (citations omitted); *see also In re Tessmer*, 329 B.R. 776, 779-80 (Bankr. M.D. Ga. 2005) ("Creditors who are dissatisfied with the results [of the trustee's pursuit of recovery of fraudulently conveyed assets] cannot file a separate suit; 'otherwise, any unhappy creditor may race to the courthouse,...thus, giving rise to the issue of who would be bound by inconsistent results.'") (quoting *In re Stein*, 314 B.R. 306, 311 (D.N.J. 2004)).

24.     The Fourth Circuit continued, "[t]o allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate."  *Ruppert Landscaping Co.*, 187 F.3d at 442; *see also Tessmer*, 329 B.R. at 779-80 (enjoining a creditor from asserting a state law fraudulent conveyance action that sought to avoid the very same allegedly fraudulent transfer for which the trustee had already settled the estate's cause of action).

25.     In these cases, the Committee Complaint seeks to avoid the settlement payments made to the Foundations pursuant to sections 544(b), 548(a)(1)(A), and 550(a).  (Committee Complaint ¶ 321.)  Therefore, the Noteholders should not be allowed to assert the Creditor SLCFC Claims because the fraudulent transfer claims asserted in the Committee Complaint are "so similar in object and purpose" that the Noteholders lack standing to assert them.

26.     Nevertheless, faced with the fact that a representative of the Debtors' estates has already sought to avoid the settlement payments made to the Former Shareholders, the Noteholders are attempting to "artfully plead their way out of the bankruptcy court" like the

creditor in *Ruppert Landscaping*.  They argue in the Motion that when the section 546(a) statute of limitations expired and the Debtors or their representative failed to assert a <u>constructive</u> fraudulent transfer claim against the Former Shareholders, eligible creditors regained their right to prosecute such claims to the same extent as if these chapter 11 cases had not been filed.  (*See*, *e.g.*, Motion at ¶¶ 5, 6, 24.)

27.     However, none of the cases cited by the Noteholders are controlling and the cases they do cite for this "well-settled law" cannot be reconciled with their attempts to assert the Creditor SLCFC Claims.  The Noteholders cannot point to a single reported opinion supporting the proposition that individual creditors can seek to avoid an alleged fraudulent transaction in state court while a representative of the debtor's estate simultaneously seeks to avoid the same transaction in the Bankruptcy Court.

28.     The Noteholders attempt to get around this predicament by citing cases that are wholly inapplicable to the situation at hand.  For example, in *In re Integrated Agri, Inc.*, a chapter 7 case, the court held that the chapter 7 trustee, as the representative of the estate, was time-barred pursuant to section 546(a) from bringing <u>any</u> fraudulent transfer action against the debtor's four former shareholders.  *In re Integrated Agri, Inc.*, 313 B.R. 419 (Bankr. C.D. Ill. 2004).  Notably absent from the facts of *Integrated Agri* was a timely lawsuit by the trustee seeking to avoid the very same allegedly fraudulent transfer.  Perhaps *Integrated Agri* stands for the proposition that when a debtor or its representative fails to bring <u>any</u> fraudulent transfer claims, such claims revert back to the creditor.  However, it surely does not support the Noteholders' contention that a creditor may pursue its state law remedies concurrently with litigation brought by a representative of the debtor's estate.

29.     Similarly, the court in *Klingman v. Levinson* stated that the "trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action."  158 B.R. 109, 113 (N.D. Ill. 1993).  However, in *Klingman*, "the trustee never sought to recover the conveyance challenged by Klingman and the United States."  *Id.* (emphasis added).  Here, in contrast to *Klingman*, the Debtors, through the Committee Complaint, have sought to avoid the transfer that the Noteholders now seek to challenge in state court.

30.     Simply because the Committee Complaint fails to assert a constructive fraud count against the Former Shareholders, it does not follow that the estates failed to commence their avoidance actions within the two-year statute of limitations established by section 546(a).  The estates never gave up their right to avoid the LBO transfers – indeed, the Committee filed the Committee Complaint to do just that and the Committee Complaint expressly asserts that the LBO constituted a constructively fraudulent transfer.  (*See*, *e.g.*, Committee Complaint ¶¶ 354-362.)  The Debtors never "abandoned" the Creditor SLCFC Claims and such claims have not reverted back to the Debtors' creditors.  Therefore, neither the Noteholders, nor any other creditor, has standing to assert the Creditor SLCFC Claims.[3]

## II.     Section 546(e) Preempts the Noteholders' Attempts to Assert the Creditor SLCFC Claims.

31.     Moreover, allowing the Creditor SLCFC Claims to go forward would thwart congressional intent.  Congress enacted section 546(e) for the stated purpose of preventing the very conduct the Noteholders seek to engage in.  Through section 546(e), Congress prohibited

---

[3]     The Foundations further object to the Motion to the extent the Noteholders seek relief from the automatic stay on behalf of unnamed and unidentified creditors.  The Noteholders lack standing to seek such relief on behalf of all eligible creditors, but they appear to seek just that in the proposed order attached to their Motion.  (*See* Motion at Exhibit A, ¶¶ 2, 4.)

the trustee's use of bankruptcy or state law constructive fraudulent transfer laws to avoid or recover payments made to stockholders in exchange for their stock.  11 U.S.C. § 546(e).  By enacting section 546(e), Congress made clear its intent to ensure settlement payment finality and the stability of the securities market.  Therefore, the Bankruptcy Code preempts the Noteholders' attempts to assert the Creditor SLCFC Claims.

32.     The Third Circuit, as well as every other court of appeals that has addressed the issue, has concluded that payments made to acquire securities, such as those made to the Foundations during the LBO, are unavoidable "settlement payments" within the meaning of section 546(e).  *See*, *e.g.*, *Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*, 590 F.3d 252, 258-59 (3d Cir. 2009); *In re QSI Holdings*, 571 F.3d 545, 550 (6th Cir. 2009); *Contemporary Indus. Corp. v. Frost*, 564 F.3d at 986-88; *In re Resorts Int'l*, 181 F.3d at 514-15; *In re Kaiser Steel Corp.*, 952 F.2d at 1240.

33.     Given section 546(e)'s express prohibition against avoiding or recovering these settlement payments, the Noteholders have concocted an unprecedented mechanism to evade the Bankruptcy Code.  The Noteholders apparently believe they can make an end-run around section 546(e) because the Debtors, or their representative, have failed to assert a claim for constructive fraud against the Former Shareholders within two years after the Debtors' filed their bankruptcy petitions.  But, as explained above, the Committee Complaint already seeks to avoid the LBO as both an intentional and a constructive fraudulent transfer.

34.     The Noteholders even admit that any attempt by the Debtors, the Litigation Trust, or any other representative of the Debtors' estates to bring the Creditor SLCFC Claims would fail pursuant to section 546(e).  (*See* Memorandum of Law of Noteholder Plan Proponents (I) In

Support of Confirmation of the Noteholder Plan and (II) In Response to Objections to the Noteholder Plan, Docket No. 8171, Ex. B, pp. 17, 29-30.)

35.     Pursuant to the Supremacy Clause of the United States Constitution, state laws that interfere with or are contrary to federal law are preempted by federal law.  *See* U.S. Const. art. VI, § 2; *see also Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 96 (D. Del. 2002) ("Under the Supremacy Clause . . . state laws that interfere with or are contrary to federal laws are preempted and without effect.") (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).

36.     Congress may preempt state law in three general ways:  (1) expressly, "when there is an explicit statutory command that state law be displaced;" (2) "field preemption" when "federal law so thoroughly occupies a legislative field as to make reasonable the inference the Congress left no room for the States to supplement it;" and (3) "conflict preemption" when "a state law makes it impossible to comply with both state and federal law or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hi Tech Trans, LLC v. NJ*, 382 F.3d 295, 303 (3d Cir. 2004) (citing *The St. Thomas-St. John Hotel and Tourism Assoc., Inc. v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 237-38 (3d Cir. 2000)); *see also Hechinger*, 274 B.R. at 96.  Preemption is particularly appropriate in areas that traditionally are of national interest and for which there is a need for nationwide uniformity.  *Hines v. Davidowitz*, 312 U.S. 52, 67-68, 72 (1941).

37.     Bankruptcy law is one of the areas that traditionally invokes national interest and where the need for uniformity is great.  The Constitution provides that Congress has the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States."  U.S. Const. art. I, § 8, cl. 4.  "Where Congress has chosen to exercise its authority, contrary provisions

of state law must accordingly give way." *Integrated Solutions, Inc. v. Servs. Specialties, Inc.*, 124 F.3d 487, 491 (3d Cir. 1997) (quoting *In re Roach*, 824 F.2d 1370, 1373 (3d Cir. 1987)). With "respect to bankruptcies the intention of Congress is plain . . . the national purpose to establish uniformity necessarily excludes state regulation . . . " *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929).

38.     These principles apply directly to the numerous sections of the Bankruptcy Code addressing avoidance and recovery of fraudulent transfers made by a debtor.  More specifically: sections 544(b) and 548 detail the trustee's powers to avoid fraudulent transfers and defenses to such powers; sections 550 and 551 provide the exclusive remedial framework for avoidance; sections 502(d) and (h) discuss allowing or disallowing claims relating to avoidable transfers; and section 546, among others, provides limitations on the trustee's avoidance powers.  *See Hechinger*, 274 B.R. at 97 (stating that "the Bankruptcy Code, particularly sections 544 and 546(e), provides an exclusive framework for addressing claims that seek to avoid transfers made more than one year before bankruptcy.").  To that end, the Bankruptcy Code vests the power to avoid fraudulent transfers exclusively in the debtor in possession or trustee, who is authorized to pursue such actions on behalf of creditors and for the benefit of the estate.  *See* 11 U.S.C. §§ 544(b), 548, 550.

39.     Moreover, Congress incorporated state fraudulent transfer law into the Bankruptcy Code by authorizing the trustee to avoid pre-petition transfers of the debtor's property that are "voidable under applicable law by a creditor" of the debtor.  11 U.S.C. § 544(b).  Section 544 "allows a debtor to avoid, under certain circumstances, payments that would be avoidable outside of bankruptcy by a creditor under state law."  *Hechinger*, 274 B.R. at 97.

However, "the Code explicitly limits and displaces state law by setting forth federal limits on the use of state law avoidance powers under section 544 . . . ." *Id.*

40.     These limits include the prohibition on avoiding settlement payments pursuant to section 546(e): "[n]otwithstanding section[] 544 . . . the trustee may not avoid a . . . settlement payment." 11 U.S.C. § 546(e) (emphasis added).   By enacting federal legislation to exempt settlement payments from avoidance, Congress sought to promote the public's confidence in, and the stability of, the securities markets.   *See* H.R. Rep. No. 97-420, at 1 (1982); *see also Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer Sav. & Loan Ass'n*, 878 F.2d 742, 747   (3d Cir. 1989) ("Congress was concerned about the volatile nature of the commodities and securities markets . . ."). As Congress stated when enacting section 546(e),

> The thrust of [section 546(e)] is to clarify and, in some instances, broaden the commodities market protections and expressly extend similar protections to the securities markets.   The amendments will ensure that the avoiding powers of a trustee are not construed to permit . . . settlement payments to be set aside except in the cases of fraud . . . and minimizes the potentially massive losses and chain reactions that could occur if the market were to move sharply in the wrong direction.

H.R. Rep. No. 97-420, at 1.

41.     Congress' purpose in enacting section 546(e) was to prevent "[t]he danger of a 'ripple effect' on the entire market [which] is at least as inherent in the avoidance of an LBO as it is in the avoidance of a routine stock sale."   *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 849 (10th Cir. 1990).   "To address this danger, Congress passed 546(e) to narrow the trustee's avoidance power under certain circumstances to protect 'the nation's financial markets from the instability caused by the reversal of settled securities transactions.'" *Hechinger*, 274 B.R. at 88 (quoting *Kaiser Steel Corp.*, 913 F.2d at 848).

42.     Importantly, section 546(e) signifies Congress' intent that settlement payments, such as those made to the Former Shareholders during the LBO, "should remain unavoidable in

order to insulate the clearing and settlement system of the nation's securities industry, and participants in that system, from the potentially devastating effect of a substantial recovery by a trustee that would require the undoing of possibly thousands of settled securities transactions." *Id*.

43.     Courts have routinely rejected attempts by plaintiffs to circumvent section 546(e) by alleging state law claims not expressly prohibited by section 546(e).  *See*, *e.g.*, *Contemporary Indus. Corp. v. Frost*, 564 F.3d at 988 (disallowing state law claims for unjust enrichment and illegal dividends because such claims "would render the § 546(e) meaningless, and would wholly frustrate the purpose behind the section."); *In re Hechinger*, 274 B.R. at 96 (holding that section 546(e) preempts state law claims for unjust enrichment).

44.     In *Hechinger*, the court noted that section 546(e)'s purpose would be frustrated if the court entertained the creditor committee's unjust enrichment claim, because such a claim "effectively acts as an avoidance claim against the shareholders in a transaction that the court ha[d] already found [to be] an unavoidable settlement payment."  274 B.R. at 96.  In other words, courts will not allow parties to circumvent section 546(e) simply by re-labeling claims that arose from an alleged fraudulent transfer as unjust enrichment claims.  *See id*. at 97 ("the Code preempts the field and precludes supplemental state remedies because the Code alone comprehensively addresses such claims.").

45.     This Court should also reject the Noteholders' attempt to evade section 546(e) by seeking to avoid the LBO and recover the settlement payments made to the Former Shareholders in state court.  No party should be permitted to indirectly accomplish what the Bankruptcy Court explicitly forbids.  If the Noteholders are allowed to pursue the Creditor SLCFC Claims, section 546(e) will be rendered meaningless.  Any time a debtor would be faced with a 546(e) defense, it

could simply refrain from asserting a constructive fraud claim under state law to allow individual creditors to assert such claims separate and apart from the bankruptcy case.  This was certainly not Congress' intent when it enacted section 546(e).

### Conclusion

Based on the foregoing, the Foundations respectfully request that this Court enter an order denying the Noteholders' Motion and granting such further relief as is just and equitable.

Dated:  March 15, 2011

Respectfully submitted,

**ROBERT R. MCCORMICK TRIBUNE FOUNDATION and CANTIGNY FOUNDATION**

By: /s/ Richard W. Riley
Richard W. Riley (DE 4052)
DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel:  (302) 657-4900
Fax: (302) 657-4901
E-Mail: rwriley@duanemorris.com

and

John P. Sieger (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Tel:  (312) 902-5200
Fax:  (312) 902-1061
E-Mail: john.sieger@kattenlaw.com