```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                         )    Case No. 08-13141-KJC
                               )
                               )
TRIBUNE COMPANY                )    Chapter 11

                               )    Courtroom 5
                               )    824 Market Street
            Debtors.           )    Wilmington, Delaware
                               )
                               )    March 14, 2011
                               )    10:00 a.m.



                   TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE JUDGE
                 UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:

For Debtors:              Sidley Austin, LLP
                          BY: JAMES BENDERNAGEL, ESQ.
                          BY: KEVIN LANRTY, ESQ.
                          BY: BRAD KAPNICK, ESQ.
                          BY: COURTNEY ROSEN, ESQ.
                          One South Dearborn
                          Chicago, IL 60603
                          (312) 853-7000

                          Cole, Schotz, Meisel, Forman
                          & Leonard, P.A.
                          BY: NORMAN PERNICK, ESQ.
                          500 Delaware Ave., Ste. 1410
                          Wilmington, DE 19801
                          (302) 652-3131

ECRO:                     AL LUGANO

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For JP Morgan:                    Davis Polk & Wardwell
                                  BY: BENJAMIN KAMINETZKY, ESQ.
                                  BY: DONALD S. BERNSTEIN, ESQ.
                                  BY: MICHAEL RUSSANO, ESQ.
                                  450 Lexington Avenue
                                  New York, NY 10017
                                  (212) 450-4000

                                  Richards Layton & Finger
                                  BY: MARK COLLINS, ESQ.
                                  One Rodney Square
                                  920 North King Street
                                  Wilmington, DE  19801
                                  (302) 651-7700

For Law Debenture:                Bifferato Gentilotti
                                  BY: GARVAN MCDANIEL, ESQ.
                                  800 North King Street
                                  Plaza Level
                                  Wilmington, DE 19801
                                  (302) 429-1900

                                  Kasowitz Benson Torres &
                                  Friedman, LLP
                                  BY: PAUL BURGO, ESQ.
                                  1633 Broadway
                                  New York, NY  10019
                                  (212) 506-1717

For Aurelius:                     Akin Gump Strauss Hauer & Feld
                                  BY: DAVID ZENSKY, ESQ.
                                  BY: DANIEL GOLDEN, ESQ.
                                  BY: DAVID ZENSKY, ESQ.
                                  BY: PHILIP C. DUBLIN, ESQ.
                                  One Bryant Park
                                  New York, NY 10036
                                  (212) 872-1000

                                  Ashby & Geddes
                                  BY: WILLIAM P. BOWDEN, ESQ.
                                  500 Delaware Avenue
                                  Wilmington, DE  19899
                                  (302) 654-1888

For Barclays:                     DLA Piper
                                  BY: MICHELLE MARINO, ESQ.

APPERANCES:
(Continued)

For Trustee:                        Office of the U. S. Trustee
              `                     BY:  DAVID KLAUDER, ESQ.
                                    844 King Street, Ste. 2207
                                    Wilmington, DE  19801
                                    (302) 573-6491

For Special Committee of the
Board of Directors:                 Jones Day
                                    BY: LAUREN BUONAME, ESQ.
                                    77 West Wacker
                                    Chicago, Illinois 60601
                                    (312) 782-3939

For Official Committee
of Unsecured Creditors:             Landis, Rath & Cobb
                                    BY: ADAM G. LANDIS, ESQ.
                                    BY: DANIEL B. RATH, ESQ.
                                    919 Market Street, Suite 1800
                                    Wilmington, DE 19801
                                    (302) 467-4400

                                    Chadbourne & Parke, LLP
                                    BY: DAVID LEMAY, ESQ.
                                    BY: THOMAS MCCORMACK, ESQ.
                                    BY: HOWARD SEIFE, ESQ.
                                    BY: ANDREW ROSENBLATT, ESQ.
                                    BY: ROBERT SCHWINGER, ESQ.
                                    BY: MARC ASHLEY, ESQ.
                                    30 Rockefeller Plaza
                                    New York, NY 10112
                                    (212) 408-5100

                                    Zuckerman Spaeder
                                    BY: GRAEM BUSH, ESQ.
                                    BY: ANDREW GOLDFARB, ESQ.
                                    BY: JAMES SOTTILE, ESQ.
                                    1800 M Street, NW
                                    Suite 1000
                                    Washington, DC 20036
                                    (202) 778-1800

For DBTCA:                          McCarter & English
                                    BY: KATHARINE MAYER, ESQ.
                                    BY: DAVID ADLER, ESQ.
                                    405 N. King Street, 8th Fl.
                                    Wilmington, DE  19801
                                    (302) 984-6312

```
APPEARANCES:
(Continued)

For Wilmington Trust:          Brown Rudnick
                               BY: HOWARD SIEGEL, ESQ.
                               BY: ANDREW DASH, ESQ,
                               185 Asylum Street
                               Hartford, CT  06103
                               (860)509-6519

                               Sullivan Hazeltine Allinson
                               BY: WILLIAM SULLIVAN, ESQ.
                               4 East 8th Street, Ste. 400
                               Wilmington, DE  19801
                               (302) 250-4357

For Merrill Lynch:             Potter Anderson & Carroon, LLP
                               BY: LAURIE SILVERSTEIN, ESQ.
                               BY: R. STEPHEN MCNEILL, ESQ.
                               Hercules Plaza
                               1313 North Market Street
                               6th Floor
                               Wilmington, DE  19801
                               (302) 984-6033

For Credit Agreement
Lenders:                       Young, Conaway, Stargatt &
                               Taylor
                               BY: BLAKE N. CLEARY, ESQ.
                               The Brandywine Building
                               1000 West Street, 17th Floor
                               Wilmington, DE 19801
                               (302) 571-6600

                               Dewey LeBouef
                               BY: BRUCE BENNETT, ESQ.
                               BY: JAMES JOHNSTON, ESQ.
                               BY: JOSHUA MESTER, ESQ.
                               BY: JAMES BERGMAN, ESQ.
                               333 South Grand Avenue
                               Suite 2600
                               Los Angeles, CA 90071
                               (213) 621-6000

For EGI-TRB & Zell:            Jenner & Block
                               BY:  DAVID BRADFORD, ESQ.
                               353 North Clark Street
                               Chicago, IL  60654-3456
                               (312) 923-2952
```

APPEARANCES:
(Continued)

For EGI-TRB & Zell:                 Blank Rome, LLP
                                    BY: DAVID CARICKHOFF, ESQ.
                                    1201 Market Street, Ste. 800
                                    Wilmington, DE  19801
                                    (302) 425-6434
TELEPHONIC APPEARANCES:

For Official Committee of
Unsecured Creditors:                Chadbourne & Park, LLP
                                    BY:  MARC D. ASHLEY, ESQ.
                                    (212) 408-5194
                                    BY: DOUGLAS DEUTSCH, ESQ.
                                    (212) 408-5169
                                    BY: JESSICA MARRERO, ESQ.
                                    (212)408-5100
                                    BY: MARC ROITMAN, ESQ.
                                    (212)408-5271
                                    BY: FRANK VAZQUEZ, ESQ.
                                    (212)408-5111
                                    BY: ALLISON STROMBERG, ESQ.
                                    (312)853-0497

                                    Zuckerman & Spaeder, LLP
                                    BY: GRAEM BUSH, ESQ.
                                    BY: JAMES SOTTILE, ESQ.
                                    BY: ANDREW GOLDFARB, ESQ.
                                    BY: ANDREW CARIDAS, ESQ.
                                    (202) 778-1800

                                    Landis Rath & Cobb, LLP
                                    BY: MATTHEW B. MCGUIRE, ESQ.
                                    (302)467-4431
For Credit Agreement
Lenders:                            Wilmer Cutler Pickering Hale &
                                    Dorr
                                    BY: MICHELLE GOLDIS, ESQ.
                                    (212) 295-6329
                                    ANDREW N. GOLDMAN, ESQ.
                                    (212)230-8836

                                    Angelo Gordon & Co., LP
                                    BY: GAVIN BAIERA, ESQ.
                                    (212)692-0217

For SuttonBrook Capital:            SuttonBrook Capital
                                    Management, LP
                                    BY: CAROL L. BALE, ESQ.
                                    (212) 588-6640

```
TELEPHONIC APPEARANCES:
(Continued)

For Bank of America:            O'Melveny & Myers
                                BY: DANIEL CANTOR, ESQ.
                                (212) 326-2000
                                BY: DANIEL SHAMAH, ESQ.
                                (212) 326-2138

                                Bank of America
                                BY: ESTHER CHUNG, ESQ.
                                (646) 855-6705

For Wilmington Trust:           Brown Rudnick, LLP
                                BY:  KATHERINE BROMBERG, ESQ.
                                (212) 209-4929
                                BY: ROBERT STARK, ESQ.
                                (212)209-4862


For Tribune:                    Sidley Austin
                                BY: GREG DEMO, ESQ.
                                (312) 853-7758
                                BY: KEN KANSA, ESQ.
                                (312) 853-7163
                                BY: JILLIAN LUDWIG, ESQ.
                                (312) 853-7523
                                BY: JANET HENDERSON
                                (312)853-2931
                                BY: BRETT MYRICK, ESQ.
                                (312) 853-1049
                                BY: BRYAN KRAKAUER, ESQ.
                                (312)853-7515

                                Tribune Company
                                BY: GARY WEITMAN, ESQ.
                                (312) 222-3394
                                BY: DAVID ELDERSVELD, ESQ.
                                (312) 222-4707
                                BY: DON LIEBENTRITT, ESQ.
                                (312)222-3651

For George Dougherty:           Grippo & Elden, LLC
                                BY: GEORGE DOUGHERTY, ESQ.
                                (312) 704-7700

For Mina Faltas:                Viking Global Investors
                                BY: MINA FALTAS
                                (212) 672-7011
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Citibank:                      Paul Weiss Rifkind Wharton
                                   BY: KIRA DAVIS, ESQ.
                                   (212) 373-3000
                                   BY: ANDREW GORDON, ESQ.
                                   (212)373-3543
                                   BY: ANDREW LEVY, ESQ.
                                   (202)223-7328
                                   BY: SHANNON PENNOCK, ESQ.
                                   (212) 373-3000
                                   BY: ELIZABETH MCCOLM, ESQ.
                                   (212) 373-3000

For Former Special Committee
Of Tribune's Board of
Directors:                         Skadden Arps Slate Meagher &
                                   Flom
                                   BY: NICK CAMPANARIO, ESQ.
                                   (312) 407-0974

                                   Jones Day
                                   BY: LYNN MARVIN, ESQ.
                                   (312) 782-3939
For Aurelius Capital
Management:                        Aurelius Capital Management LP
                                   BY: MATTHEW A. ZLOTO, ESQ.
                                   (646) 445-6518

                                   Akin Gump Strauss Hauer & Feld
                                   BY: SHAYA ROCHESTER, ESQ.
                                   (212) 872-1076
                                   BY: JOHN BERRY, ESQ.
                                   (212) 872-8075

                                   Friedman Kaplan Seiler &
                                   Adelman
                                   BY: KIZZY JARASHOW, ESQ.
                                   (212) 833-1115

For Morgan Stanley:                Weil Gotshal & Manges, LLP
                                   BY: ASHISH D. GANDHI, ESQ.
                                   (212) 310-8024
                                   BY: DAVID LITVACK, ESQ.
                                   (212)310-8361
                                   BY: ANDREA SAAVEDRA, ESQ.
                                   (212) 310-8544
```

TELEPHONIC APPEARANCES:
(Continued)

For Serengeti Asset
Management:                     Serengeti Asset Management
                                BY: NICHOLAS HEILBUT, ESQ.
                                (212) 466-2167


For Anna Kalenchits:            Anna Kalenchits
                                (212)723-1808


For JP Morgan Chase Bank:       Davis Polk & Wardwell, LLP
                                BY: PETER KIM, ESQ.
                                (212) 450-3028


For Partner Fund Management:    Vinson & Elkins, LLP
                                BY: LANCE A. MULHERN, ESQ.
                                (212) 237-0184
For Oaktree Capital
Management:                     Oaktree Capital Management
                                BY: KENNETH C. LIANG, ESQ.
                                (213) 830-6422
For Brigade Capital
Management:                     Brigade Capital Management
                                BY: NEIL LOSQUADRO
                                (212) 745- 9758


For Royal Bank of Scotland:     Royal Bank of Scotland
                                BY: COURTNEY ROGERS, ESQ.
                                (203) 897-4815


For Eos Partners:               Eos Partners
                                BY: MIKE J. SCHOTT, ESQ.
                                (212) 593-4046


For Prof. Expert:               Raymond James
                                BY: ROBERT SCHWARTZ, ESQ.
                                (212) 872-7441


For Contrarian Capital
Management:                     Contrarian Capital Management
                                BY: JOSHUA TRUMP, ESQ.
                                (203) 862-8299


For Alvarez & Marsal, Inc.:     Alvarez & Marsal, Inc.
                                BY: BRIAN WHITTMAN, ESQ.
                                (312) 601-4227


For Macquarie Capital:          Macquarie Capital (USA)
                                BY: RUSHABH VORA, ESQ.
                                (212) 231-6311

```
TELEPHONIC APPEARANCES:
(Continued)

For Deutsche Bank AG:          Bingham McCutchen, LLP
                               BY: JEFFREY OLINSKY
                               BY: CHAD VALERIO
                               (212) 705-7857


For Barclays:                  Barclays Capital, Inc.
                               BY: EITAN MELAMED, ESQ.
                               (310) 907-0455



For Law Debenture Trust:       Kasowitz Benson Torres & Park
                               BY: CHRISTINE MONTENEGRO, ESQ.
                               BY: SHERON KORPUS, ESQ.
                               (212) 506-1715
                               BY: MATTHEW STEIN, ESQ.
                               (212) 506-1717

For Cooperstown Capital
Management:                    Cooperstown Capital Management
                               BY: PETER COURI, ESQ.
                               (203) 552-6900

For Wells Fargo:               White & Case
                               BY: SCOTT GREISSMAN, ESQ.
                               (212) 819-8567


For Robert R. McCormick
Foundation:                    Katten Muchin Rosenman, LLP
                               BY: DAVID C. BOHAN, ESQ.
                               (312) 902-5566

For Interested Party:          Canyon Partners
                               BY: CHANEY M. SHEFFIELD, ESQ.
                               (310) 272-1062



For Non-Party:                 Duff & Phelps
                               BY: JOE LIEWANT
                               (973) 775-8336

For Tricadia Capital:          Tricadia Capital
                               BY: IMRAD AHMED, ESQ.
For Silver Point Capital:      Silver Point Capital
                               BY: MARK EHMER, ESQ.
                               (203) 542-4219
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Chicago Fundamental
Investment Partners:          Chicago Fundamental Investment
                              BY: PETER GRUSZKA, ESQ.
                              (312) 416-4215

For Board of Committee:       Jones Day
                              BY: XOCHITL STROHBEHN, ESQ.
                              (212) 326-3691

For Dow Jones News Wires:     Dow Jones & Company
                              BY: PEG BRICKLEY, ESQ.
                              (215) 462-0953

For Goldman Sacks & Co.:      Goldman Sacks & Company
                              BY: LEXI FALLON, ESQ.
                              (212) 902-0791

For Matthew Frank:            Alvarez & Marsal, Inc.
                              BY: MATTHEW FRANK, ESQ.
                              (312) 371-9955

For Chandler Bigelow:         Sperling & Slater
                              BY: CLAIRE P. MURPHY, ESQ.
                              (312) 641-3200
                              BY: DANIEL A. SHMIKLER, ESQ.
                              (312) 641-3200

For Merrill Lynch:            Kaye Scholer, LLP
                              BY: MADLYN G. PRIMOFF, ESQ.
                              (212) 836-7042
```

1  WILMINGTON, DELAWARE, MONDAY, MARCH 14, 2011, 10:03 A.M.

2          THE CLERK:  Be seated, please.

3          THE COURT:  Good morning, everyone.

4          ALL:  Good morning, Your Honor.

5          THE COURT:  Seems like we were just here.

6  (Laughter)

7          MR. SOTTILE:  It does indeed, Your Honor.  James

8  Sottile of Zuckerman Spaeder, special counsel to the

9  committee.

10         Your Honor, we have a couple of preliminary

11 matters before we proceed with the remaining witnesses for

12 the DCL plan proponents.  We said that we would report to

13 Your Honor on time usage last week by each side.  And by our

14 calculations which we've shared with the noteholders, the

15 DCL plan proponents have used 11 hours and 59 minutes with

16 witnesses.  The noteholders have used 9 hours and 22 minutes

17 with the witnesses.  We're happy to submit that to the Court

18 in the form of a stipulation if that would be helpful.

19         THE COURT:  It's not necessary.

20         MR. SOTTILE:  Okay.  Your Honor, we also had some

21 discussion at the end of the day Friday about the handling

22 of both exhibits introduced with the witnesses at trial and

23 exhibits that have been designated by each side, but are not

24 likely to actually be used with witnesses.  We've had

25 discussions over the weekend with counsel for the

1  noteholders.  We haven't yet reached a resolution, but I

2  expect that we will reach a resolution and we'll report to

3  the Court on the handling of both exhibits used with

4  witnesses and exhibits that each side has designated, but

5  won't actually show anybody during the hearing.

6           THE COURT:  Well, then ask yourself another

7  question.  Are any of the non -- well how many -- how much

8  of the universe of non-witness related exhibits are really

9  going to be of use to me.

10          MR. SOTTILE:  It's a highly germane question,

11 Your Honor, and I suspect the answer is that many of them

12 will not be.  That is a matter that we're focusing on in our

13 discussions.

14          THE COURT:  I appreciate that.

15          MR. SOTTILE:  Your Honor, there's one final

16 preliminary matter that arose over the weekend.  As was

17 indicated at the end of the day on Friday, the noteholders

18 intend to present some witnesses testimony by way of video

19 deposition excerpts.  And we had a process over the weekend

20 by which once they indicated what they planned to play in

21 terms of video from these witnesses, the DCL plan proponents

22 submitted some counter designations that we wanted to have

23 played along with them.  We have, I think resolved most of

24 those issues, but there is a remaining dispute.  And I think

25 that Mr. Zensky wants to speak to that dispute and I'm

1    likely to have a word or two in response.

2              THE COURT:  All right.

3              MR. ZENSKY:  Good morning, Judge.  For the

4    record, David Zensky, Akin, Gump, Strauss, Hauer and Feld

5    for Aurelius.

6              The good news is we agree on the time allocation

7    so.

8    (Laughter)

9              MR. ZENSKY:  First order of business.  And as you

10   can probably see by the empty seats at my table, my

11   colleagues are dropping like flies as we enter the second

12   week --

13   (Laughter)

14             MR. ZENSKY:  -- but we'll see with a little rest

15   whether I can get them back here.

16             THE COURT:  I will not take that as any sign of

17   giving up of any resoluteness.

18             MR. ZENSKY:  Oh, certainly, not, Your Honor.

19   (Laughter)

20             MR. ZENSKY:  With respect to documents as Mr.

21   Sottile indicated, certainly, we have been in discussion

22   about what to do with the vast majority of documents that

23   will not be used during the course of the trial.  I suspect

24   a large number of them were put on the list by each side

25   because their experts looked at them.  We will be able to

1  whittle that down dramatically.

2          There's a second issue that we discussed with

3  respect to documents and that is the documents that were

4  actually used during the course of the first week of the

5  trial.  It had been our proposal that the parties agree to

6  simply stipulate that all those could come in.  There's some

7  disagreement on this side of the room and we'll just

8  continue to discuss that and try to work it out hopefully

9  today.  So at least the things you'd seen we can resolve

10  where we stand on those.

11          With respect to the video clips, Your Honor, as

12  Mr. Sottile indicated, we did provide the list of excerpts

13  that we intended to show the Court either this afternoon or

14  first thing tomorrow depending on when the DCL group

15  finishes with their case and what will be the most efficient

16  use of our time.  We received, I believe, something on the

17  order of 40 counter designations.  We accepted I think it

18  was 32 of those if not more, Your Honor.  And whether they

19  would be more in the nature of cross or part of the same

20  line, we agreed.  And we had someone stay up all night

21  essentially to stitch those in.  So when we presented the

22  video clips, it would include both the pieces that we

23  designated and the pieces that they wanted to cross

24  designated.

25          There were a handful of ones that we believed

1    were really more in the nature of cross.  In other words,

2    when we do live witnesses, the other side doesn't get to

3    stand up and ask a question in the middle of the

4    examination, they get to do it on cross.  And my

5    understanding is the ones that are on dispute total 5 to 6

6    minutes.  And I just can't see the prejudice, Your Honor, of

7    if they have additional clips they want you to show, they

8    want you to see, they can be seen after we present that

9    witness's video testimony which will already include most of

10   what they wanted to add in the first place.  I guess that's

11   the nature of the dispute, Your Honor.

12            THE COURT:  Is this -- so it's not a matter of

13   whether they should all be played, but when?

14            MR. ZENSKY:  That seems to be the dispute.  And

15   either they could be shown after that witness or when we're

16   done, they can show their 5 or 6 minutes of additional ones

17   or whatever the Court directs obviously.

18            THE COURT:  Okay.  Mr. Sottile?

19            MR. SOTTILE:  Your Honor, I recognize this sounds

20   like and properly is a tempest and teapot.

21            THE COURT:  I was going to use the word silly a

22   little bit, but --

23            MR. SOTTILE:  Well, I think one could adopt silly

24   as well.  Your Honor, but let me take just a moment and

25   explain why we're bringing this to you, which I hate to

1   burden the Court with.  The issue is that some of the things

2   that they don't want to play, in our judgment, fit very

3   immediately with things they do want to play.  And so what

4   the Court will end up with is a chopped up presentation from

5   videos.  You'll hear about an hour of video from the

6   noteholders in which you'll have bits and pieces of each

7   witness.  And then at the end, if we were to proceed as Mr.

8   Zensky suggests, you'll have about 5 minutes total, a minute

9   or two for each witness which are little bits that fit

10  somewhere in their video designations, but that they didn't

11  think actually went with their videos.  And we submit that

12  it would be easier for the Court and for all of the parties

13  to follow if we just put it all together.  That said, we're

14  obviously happy to proceed however the Court would like us

15  to do.

16          THE COURT:  I'd like to see it all together.

17          MR. SOTTILE:  Thank you, Your Honor.

18          THE COURT:  Okay.  Are we ready for a live

19  witness?

20          MR. BENDERNAGEL:  Yes, Your Honor.  We'd call as

21  our next witness, Brian Whittman and Mr. Kapnick from our

22  firm is going to put Mr. Whittman on if that's okay with

23  you.

24          THE COURT:  That would be just dandy.

25          MR. BENDERNAGEL:  Your Honor, before I start, I

1  had forgotten this.  With respect to Mr. Whittman's

2  testimony, he has three separate pieces of expect testimony.

3  One of the pieces of expert testimony relates to the

4  intercompany claim settlement.  And we consulted with the

5  noteholders and the noteholders had raised a point that they

6  wanted to make it clear that in not attacking the

7  intercompany claim settlement in this proceeding, that was

8  not meant to mean that in some other proceeding that might

9  occur in the future, they were conceding the intercompany

10  claim settlement was appropriate.  And we've worked out some

11  language and I think Mr. Golden wants to read that language

12  into the record at this juncture.

13            THE COURT:  All right, go ahead.

14            MR. BENDERNAGEL:  And the language is agreeable

15  to the DCL plan proponents.

16            MR. GOLDEN:  Thank you, Jim.  Good morning, Your

17  Honor, Daniel Golden, Akin, Gump, Strauss, Hauer & Feld,

18  counsel for Aurelius Capital and for these purposes, the

19  other noteholder plan proponents.

20            Your Honor, I think you appreciate that both the

21  DCL plan and the noteholder plan incorporates the proposed

22  intercompany claim settlement which Mr. Whittman will

23  testify to in a couple of minutes.  It is true that if

24  neither the DCL plan or the noteholder plan is confirmed and

25  consummated that the proposed intercompany claim settlement

1  will likewise not be consummated.  And that event, meaning

2  if neither the DCL plan is confirmed or the noteholder plan

3  is confirmed, it has been agreed that all of the evidence

4  pertaining to the proposed intercompany claim settlement

5  will not have any binding or precedential effect and all the

6  parties will reserve their rights with respect to the

7  intercompany claim analysis in respect of any future

8  proceeding that we'll have to deal with those issues.

9           I think that just handles most eloquently the way

10  we wanted to proceed in the event we are in a situation that

11  neither plan is consummated and therefore the intercompany

12  claim settlement is not -- is likewise not consummated.

13           THE COURT:  So basically, and I want to just make

14  sure I'm clear on this.  Your -- the parties are relieving

15  themselves of things like judicial estoppel, collateral

16  estoppel, res judicata issues and maybe other issues as

17  well?

18           MR. GOLDEN:  Yes.  We have agreed that this

19  testimony won't have any preclusive effect with respect to a

20  future proceeding dealing with the topic of the intercompany

21  claim analysis.  But only -- obviously, only in the event

22  that neither of the two plans get consummated.

23           THE COURT:  Understood.  Look, I have said

24  before, it's easier than the parties suppose for me to

25  ignore things I've heard.  I guess that might someday be put

1    to the test again.

2    (Laughter)

3              MR. GOLDEN:  Yeah.

4              THE COURT:  Okay.

5              MR. GOLDEN:  Thank you, Your Honor.

6              MR. KAPNICK:  Good morning, Your Honor.  Brad

7    Kapnick on behalf of the debtors.  We call Brian -- as Mr.

8    Bendernagel said, we call Brian Whittman to the stand.  Mr.

9    Whittman.

10             BRIAN WHITTMAN, DEBTORS' WITNESS, SWORN

11             MR. KAPNICK:  Your Honor, Mr. Whittman as Mr.

12   Bendernagel said has three expert reports; a report on

13   liquidation analysis, a report on computation of parent

14   distributable value and base creditor recoveries, and a

15   report on settlement of intercompany claims.  Those reports

16   are Exhibits 1108, 1109, and 1110.  We've put those expert

17   reports in a witness binder along with the ten or eleven

18   charts that we intend to go through with Mr. Whittman.  And

19   if Your Honor will grant me leave, I'll pass them all

20   around.

21             THE COURT:  Certainly.  Thank you.

22                     DIRECT EXAMINATION

23   BY MR. KAPNICK:

24   Q    Okay.  Good morning, Mr. Whittman.

25   A    Good morning.

1    Q      Where are you currently employed?

2    A      Alvarez & Marsal.

3    Q      And what's your title or position?

4    A      I am a managing director in the restructuring group.

5    Q      And what is Alvarez & Marsal?

6    A      Alvarez & Marsal is a global professional services

7    firm providing inter management and restructuring advisory

8    services, as well as, other consulting services to non-

9    distressed organizations.

10   Q      And what degrees or professional certifications do you

11   have?

12   A      I have a bachelor's in accountancy from the University

13   of Illinois, a bachelor's in finance also from the

14   University of Illinois.  I am a certified public accountant

15   and a certified turnaround professional.

16   Q      Can you please describe your professional experience?

17   A      I began my career at Arthur Anderson.  Spent a year in

18   their specialty consulting group and then moved into

19   corporate restructuring.  I worked with debtors, also

20   advised creditors and senior lenders and throughout my

21   career at Anderson which continued through 2002 at which

22   time I was the director.  I left Anderson and moved to

23   Alvarez & Marsal at that time where I've continued to advise

24   companies on their reorganizations both in court and out of

25   court and reached the level of managing director.

1    Q      So all tolled how many years of experience do you have

2    in bankruptcy and reorganization?

3    A      Fifteen years.

4    Q      And what are some of the most prominent bankruptcy

5    reorganizations you've worked on?

6    A      I advised the creditors' committee on Fruit of Loom.

7    I advised the debtors on Sylvania Lighting International.    I

8    worked on Hartland Automotive and on Drug Emporium.

9    Q      And can you give the Court some idea of the scope of

10   some of those reorganizations?

11   A      On Sylvania Lighting International, I was an officer,

12   restructuring officer of the company working on financial

13   matters and treasury matters.  On Hartland Automotive, that

14   was a 430 store Jiffy Lube franchise where we advised the

15   debtors through a successful reorganization.  And on Drug

16   Emporium, I was involved in the liquidation of the company.

17   Q      And can you give the Court some idea of experience

18   that you have with liquidation analysis in corporate

19   bankruptcy reorganizations?

20   A      Every -- virtually every bankruptcy has a liquidation

21   analysis included and I have been involved in preparing and

22   supervising the preparation of a liquidation analysis on all

23   of the debtor cases that I've worked on.

24   Q      And how about financial modeling and estimation of

25   creditor recoveries?  Can you give the Court some idea of

1  your experience with those concepts?

2  A     Sure.  And I should have also said I've also been

3  involved in the actual implementation of liquidations in

4  several cases.  Regarding modeling, that is necessary on

5  essentially every case that you work on.  I have advised

6  over 40 clients on restructuring matters in my career and

7  they've all involved extensive financial modeling.

8  Q     And what experience have you had with reviewing and

9  evaluating intercompany claims?

10  A     A number of my clients have had multiple legal

11  entities so they've had intercompany claims.  And I've been

12  involved in analyzing intercompany balances.  I've

13  implemented consolidation systems for companies and

14  determined how the intercompany balances should be accounted

15  for.  I've also performed substantive consolidation

16  analysis.

17        MR. KAPNICK:  Your Honor, we tender the witness

18  as an expert with respect to financial issues in

19  reorganizations cases, including the matters raised in his

20  reports, the liquidation analysis, the intercompany claims,

21  and the base creditor recoveries analysis.

22        THE COURT:  Is there any objection?

23        MR. ZENSKY:  Your Honor, there's no objection to

24  the witness testifying as an expert.  I just think the

25  description that was offered that he's an expert with

1    respect to financial issues in reorganization, if we could

2    have a little more specificity around the precise nature of

3    the expert --

4              MR. KAPNICK:  Solely with respect to the subjects

5    that he's testifying on, intercompany claims, the base

6    creditor recoveries, the parent distributable value, and the

7    liquidation analysis.

8              MR. ZENSKY:  With that clarification, no

9    objection.

10             THE COURT:  All right.  You may proceed

11   accordingly.

12             MR. KAPNICK:  Mr. Whittman, can you please

13   describe what the debtors asked you to do in connection with

14   this matter?

15             MR. WHITTMAN:  We were retained in November of

16   2008 to assist the company with preparing for their

17   bankruptcy filing.  Throughout the case, we've -- I've been

18   involved in a number of matters including reporting issues

19   in terms of preparation of statements and schedules and

20   monthly operating reports, a number of analysis and

21   forecasting projects, and understanding of the company's

22   intercompany claims, preparing a liquidation analysis,

23   leading up to the three expert reports that I was asked to

24   prepare for this confirmation hearing.

25             MR. KAPNICK:  Well, first, let's talk about your

1  work with respect to the liquidation analysis.  What is a

2  liquidation analysis in the context of a bankruptcy

3  reorganization?

4            THE COURT:  I don't need that explanation.

5            MR. KAPNICK:  I almost said that.  Let's turn to

6  Exhibit 1109 --

7            MR. WHITTMAN:  Okay.

8            MR. KAPNICK:  -- in your binder.  Is this your

9  liquidation analysis, Mr. Whittman?

10           MR. WHITTMAN:  It is.

11           MR. ZENSKY:  And if you turn to Page 5 of this

12 exhibit.  Is this your signature?

13           MR. WHITTMAN:  Yes.

14           MR. KAPNICK:  We move to admit Exhibit 1109.

15           THE COURT:  Is there any objection?

16           MR. ZENSKY:  No objection.

17           THE COURT:  It's admitted without objection.

18 (Exhibit 1109 identified and admitted in evidence.)

19 BY MR. KAPNICK:

20 Q    Mr. Whittman, what information did you collect to

21 assist you in conducting this liquidation analysis?

22 A    I collected information regarding the company's

23 assets, the company's claims and liabilities that would be

24 paid out of those assets, and the costs that would be

25 incurred in performing a liquidation.

1   Q      Did you talk to any company personnel?

2   A      Yes, I did, numerous.

3   Q      And did you rely on any expert's reports in preparing

4   the liquidation analysis?

5   A      Yes.  I relied upon the expert report of Lazard in

6   terms of some of the values of certain of the legal

7   entities.  I also relied upon information from the company's

8   real estate advisor, as well as, the company's actuarial

9   consultant.

10  Q      And who's the real estate advisor?

11  A      That's Cushman & Wakefield.

12  Q      And the pension advisor?

13  A      Hewitt.

14  Q      What were the key assumptions you made in preparing

15  your liquidation analysis?

16  A      I made assumptions regarding the assets of the company

17  and what the recovery -- not so much assumptions on the

18  assets, but what the recoveries on those assets would be.

19  Assumptions regarding the costs that would be incurred,

20  items such as taxes, severance and the like.  And

21  assumptions regarding the claims and priorities of those

22  claims that would need to be paid out of the liquidation

23  proceeds.

24  Q      And what did you assume that the method of disposition

25  and liquidation would be for the broadcasting business?

1   A     For the broadcasting business unlike your typical

2   approach in liquidation where you assume a Chapter 7 trustee

3   comes in and shuts down the operations and sells off the

4   assets piecemeal, for the broadcasting business, I assumed

5   that would be sold in a distressed sale.

6   Q     And why did you not also assume a disposition by

7   distressed sale of the publishing business?

8   A     As I indicated, the typical approach in a liquidation

9   is to assume with the appointment of a Chapter 7 trustee

10  that the business activities cease and the assets are

11  marshaled and liquidated, unlike the broadcasting business

12  having the unique case of having the FCC license and better

13  position to be sold in a distressed sale.

14  Q     So ultimately, what conclusion did you reach on the

15  liquidation value of the publishing business?

16  A     Regarding the publishing business net of the costs of

17  liquidation and the administrative expenses and claims that

18  would be incurred in the liquidation, I concluded that the

19  liquidation value of the publishing business was

20  approximately $150 million.

21  Q     And how does that compare to Lazard's DCF analysis for

22  the publishing business?

23  A     I believe Lazard's DCF for the publishing business is

24  between $330 and $450 million.

25  Q     What assumptions did you make in your liquidation

1  analysis concerning the timing of the liquidation?

2  A    I assumed that the liquidation would commence at the

3  end of 2010 and would take between 3 to 6 months with a tail

4  of an additional year after that to resolve claims and

5  distribute proceeds.

6  Q    And we heard a lot of testimony last week about

7  potential LBO causes of actions.  What assumptions did you

8  make in your liquidation analysis concerning any recoveries

9  on those claims?

10 A    I do not make an assumption in the liquidation

11 analysis regarding the LBO claims based on the assumption

12 that in order for this plan to proceed which is the basis of

13 which the liquidation analysis is comparing against, this

14 Court would have had to find that the settlement embodied in

15 the plan for LBO causes of action is appropriate.

16 Q    What assumptions do you make with respect to the costs

17 associated with liquidation?

18 A    I made assumptions regarding the ongoing professional

19 fees that would be incurred, fees to the Chapter 7 trustee,

20 fees associated or costs associated with liquidation of the

21 assets, particularly significant costs associated with taxes

22 and with the severance that would need to be paid to the

23 terminated employees.

24 Q    Were there any unique aspects of this matter that

25 affected your liquidation analysis?

1  A    Other than the liquidation of the broadcast entities

2  as a -- through a distressed sale, yeah, their somewhat

3  unique aspect was to actually perform individual entity by

4  entity liquidation analysis on all of the debtors, as well

5  as, the non-debtor holdings.  Given the capital structure of

6  Tribune it was necessary to do that in order to properly

7  account for and determine the recoveries of the claims of

8  the parent versus the claims of the subsidiaries.

9  Q    Can you turn to the next exhibit in your binder and if

10 you can put the first page of Exhibit 1109D up on the

11 monitor.  Can you tell us what this -- this is Pages 5 to 6

12 of Exhibit D in your liquidation report.  Can you tell us

13 what this is?

14 A    This is the summary of the liquidation analysis.  The

15 first set of columns titled Tribune Stand Alone represents

16 the results of the liquidation analysis of the parent,

17 Tribune Company.  The next set of columns on the first page

18 titled Combined Subsidiaries represents the addition of each

19 of the individual liquidation analyses for each subsidiary.

20 Q    Now you can move to Page 2 of the exhibit.

21 A    And then on the second page, there is first a series

22 of eliminations and adjustments, including adjustments for

23 subordination that allow you to add then the parent and the

24 subsidiary analyses to derive the consolidated results for

25 Tribune.

1    Q      And if you go back to the first page of the exhibit,

2    we've gone across the columns and now if we go down, there's

3    various line items and several asset categories in Rows 1

4    through 9.  Can you tell the Court what these are?

5    A      Yes.  The first nine lines represent the assets of

6    Tribune that are monetized through a liquidation.  You have

7    in particular, a significant amount of cash that the company

8    would hold at the start of the liquidation which is

9    recovered in full.  You have accounts receivable and

10   inventory which are recovered at a discount to their book

11   value.  There is property plant and equipment which as I

12   mentioned is recovered based on work of the real estate

13   advisor at that liquidation value.  And then there are the

14   investments in the non-consolidated entities, Food Network,

15   Career Builder, Classified Ventures and so forth, as well

16   as, the value of the assets sold through going concern

17   distressed sales which are recovered at a discount to their

18   going concern value.

19   Q      And what discount did you apply to the going concern

20   value of those entities?

21   A      Fifteen to thirty percent.

22   Q      And how did you come up with that discount?

23   A      That was derived through discussions with Lazard about

24   the likely discount you would have in a distressed sale

25   versus a going concern and factors in a number of items,

1    including the fact that you would not be able to provide

2    typical representations and warranties.  You would have the

3    business and general liquidation with management distracted

4    at the time the sale was occurring.  And you'd be placing a

5    number of assets on the market simultaneously in a short

6    period of time.

7    Q    Now continuing down the left hand side of Exhibit

8    1109D, Lines 10 through 16, you are making adjustments for

9    the cost associated with the liquidation.  Can you tell us

10   about that?

11   A    Yes.  I make adjustments for professional fees and

12   Chapter 7 trustee fees based on the current run rate of

13   professional fees in the case adjusted for the reduction you

14   would have once you convert to a liquidation.  Chapter 7

15   trustee fees based on 2 percent fee for the trustee,

16   slightly less than the statutory level based on the size of

17   the case.  There are taxes on dispositions.  Tribune has

18   very low book value on a number of its investments so there

19   would be significant taxes due on some of the dispositions

20   that we calculated together with the tax department of the

21   company.  And there is -- would be severance expense in

22   conjunction with the Court approved severance policy and the

23   like.

24   Q    Continuing down the left hand column of the page

25   there's a series of line items from 18 to 29 that again are

1  adjustments.  Can you tell the Court what those adjustments

2  are?

3  A     Yes.  First, on Lines 18 through 20, you have

4  recoveries that each entity would receive on their

5  intercompany claims and intercompany equity interests.  On

6  Lines 23 and 29 is the opposite of those recoveries.  You

7  have the payouts from each subsidiary to other subsidiaries

8  or to the parent on the account of those intercompany claims

9  and equity interests.  And if you look at the second page,

10  you could see that those amounts net across to zero in

11  consolidation.

12  Q     And --

13  A     On line -- the second part of what you asked on Lines

14  23 through 26, that contains the administrative claims that

15  would arise during the Chapter 11 that would need to be paid

16  upon conversion to a 7, as well as, the priority tax claims.

17  Q     And then continuing on there's Lines 30 to 36.  Can

18  you tell the Court what those lines depict?

19  A     These lines represent the conclusion of the

20  liquidation analysis essentially indicating the claims that

21  you have at each of the entities, as well as, the -- their

22  ultimate recovery from the liquidation proceeds.

23  Q     How did you determine the amount each class of

24  creditors would receive from the liquidation proceeds?

25  A     We prepared a model that had each legal entity, the

1   estimated claims at that entity, the estimated liquidation

2   proceeds from that entity, and then we took the proceeds at

3   each entity, allocated them to the claims based on their

4   relative priorities.  To the extent of intercompany claims,

5   that value was paid out to another legal entity which

6   allowed that value in turn to go to third parties at that

7   legal entity in an iterative fashion until all of the value

8   had been distributed out to the third parties.

9   Q     And what ultimately did you conclude each class of

10  creditors would recover in a liquidation?  Is that -- where

11  is that on this chart?

12  A     In the bottom right of the second page you could see

13  there's both a low and a high end range of the liquidation.

14  And on the high end, I concluded that the joint and several

15  pension claims in large part based on the fact that they

16  would have claim against each legal entity would recover in

17  full.  The senior debt holders would recover approximately

18  42.6 cents at the high end, the bridge holders 1.2 cents,

19  the bond holders 1.2 cents, and the other general unsecured

20  creditors at the parent and the subsidiaries together would

21  on average receive 1.4 percent of their claim.

22  Q     I'd like to turn your attention to the next exhibit in

23  the binder, Exhibit 1109-1 which is Chart 1 on Page 4 of

24  your report.  Do you recognize this?

25  A     I do.

1  Q     And what is it?

2  A     This is a chart contained in the summary of my report,

3  as well as, a similar version is on the debtors' disclosure

4  statement.  And it provides a comparison of the recoveries

5  under the plan of reorganization to the high end of the

6  range of recoveries in the liquidation analysis.

7  Q     What, if any, conclusions do you draw from this chart?

8  A     From this chart, you could see that just from pure

9  mathematical basis, the amounts that are received under the

10  plan are higher than the amounts coming from the liquidation

11  analysis.

12  Q     We talked earlier about how your liquidation analysis

13  assumes that any recoveries in the LBO litigation will be

14  the same in a liquidation and a reorganization.  Would the

15  conclusions in your liquidation analysis change if you

16  included recoveries on the LBO causes of action in the

17  liquidation recoveries?

18  A     No.  If we take the liquidation recoveries from the

19  liquidation analysis and we gross those off for the same

20  amounts for the LBO that are included in the plan as the

21  settlement amounts, the recoveries under the plan would

22  still be higher than under a liquidation.

23  Q     So let's turn now to your parent distributable value

24  and base creditor recoveries report.  That's Exhibit 1110.

25  Can you turn to that exhibit?  It's the next exhibit in the

1   binder.  And can you turn to Page 21 of that exhibit?

2   A     Okay.

3   Q     Is that your signature?

4   A     It is.

5          MR. KAPNICK:  And we move the admission of

6   Exhibit 1110 into evidence.

7          THE COURT:  Is there any objection?

8          MR. ZENSKY:  No objection, Your Honor.

9          THE COURT:  Exhibit 1110 is admitted without

10  objection.

11  (Exhibit 1110 identified and admitted into evidence.)

12  BY MR. KAPNICK:

13  Q     Mr. Whittman, can you tell the Court what's the

14  general purpose of this analysis in the context of this

15  case?

16  A     The purpose of this report is two-fold.  It is to

17  provide a computation of the value of the parent company, as

18  well as, the base recoveries to creditors in the case.  The

19  base recoveries being those that parties would receive

20  absent any avoidance actions, what some people have termed

21  the natural or waterfall recoveries.  And all of that being

22  particularly important in this case given first of all the

23  capital structure in the different claims that exist of the

24  parent versus the subsidiary level or many of the

25  subsidiaries, and then the nature of the dispute regarding

1  the LBO and the need to understand what base recoveries

2  would be in order to measure the settlement off of.

3  Q    And what information did you collect in order to

4  prepare this report?

5  A    We collected information regarding the balance sheets

6  and details of the assets of the parent company.  We

7  collected information in conjunction with building our

8  recovery analysis model to determine base creditor

9  recoveries.  We collected information on the claims against

10  each entity including the intercompany claims from the

11  intercompany claim settlement, as well as, information on

12  the valuation of each entity provided by Lazard.

13  Q    Now just so the Court's clear on this, what is the

14  relation of your analysis in this report to the valuation

15  work that Lazard did?

16  A    Lazard's valuation work includes first of all the

17  valuation of the entire company, the $6.75 billion that

18  we've heard about.  And then they take that value and they

19  allocated to each individual legal entity what I term

20  initial distributable value.  That is the value prior to

21  recoveries on the account of intercompany claims,

22  intercompany equity interests, and prior to the

23  distributions on the account of intercompany claims.  So I

24  take all of those into account in order to reach the

25  distributable value to third parties which is the $564

1    million of the parent that's referred to in the debtors'

2    plan.

3    Q      So if you turn to the next exhibit in the binder it's

4    Exhibit 1110-1 which is Chart 1 of your expert report,

5    Exhibit 1110.  Can you tell us what this chart entitled

6    Parent Distributable Value, what is this depicting?

7    A      This chart breaks out the components of the value at

8    the parent company, both in terms of reaching the initial

9    distributable value contained within the Lazard report, as

10   well as, the other components that I adjust for to reach the

11   distributable value to third parties.

12   Q      Now on the top half of the page, you have a series of

13   calculations that total down in the middle of the page to an

14   initial distributable value of $836.9 million.  Can you tell

15   the Court, what are you calculating here?

16   A      Yes.  I took the components of the -- what I have

17   terms discrete assets of the company.  This would be the

18   cash the parent received from selling its Time Warner stock

19   right before the filing, the value of real estate that's

20   owned by the parent company, the value of the investments

21   that was calculated by Lazard in terms of classified

22   ventures and Legacy.com, as well as, certain other assets of

23   the parent company.  I adjust that value to -- for some cash

24   movement in terms of providing the parent with the value of

25   cash that it holds.  There are tax adjustments contained

1    within the Lazard report.  And then there is the value of

2    the Tribune receivables subsidiary that was the conduit for

3    the debtor in possession financing at the beginning of the

4    case.  This is the net value of those receivables net of

5    paying off the DIP facility.  All of those are the

6    components to reach the initial distributable value.

7    Q    How did you come up with the asset values that add up

8    to the total $836.99 million?

9    A    The Time Warner shares since those had been liquidated

10   right before the closing or right before the filing of the

11   bankruptcy are based on the brokerage statements from that

12   sale.  The real estate is based on a report from the

13   company's real estate advisors.  And in the case of St.

14   Louis is based on the sale that occurred shortly after the

15   filing.  Lazard determined the value of Classified Ventures

16   which is owned half by Tribune Company and half by Tribune

17   National Marketing so the half that's owned by Tribune

18   Company is reflected here.  Lazard also valued Legacy.com.

19   The other assets are minor receivables and the like that

20   were collected shortly after the petition date so are based

21   on the collected amount.  And the cash movement is based on

22   the cash held by the company as of the petition date. It was

23   actually held by the subsidiaries, but historically had been

24   held by the parent company and as part of this, we have

25   agreed to reflect that at the parent company rather than at

1    the subsidiaries.

2    Q    Now on the second half of Exhibit 1110-1, you have a

3    series of adjustments that result ultimately in a

4    distributable value of $564 million down in the right hand

5    corner.  Why did you make these adjustments?

6    A    These are the adjustments for the intercompany claims

7    that I described earlier.  So first, there are claims the

8    parent has against the subsidiaries.  It recovers $24.2

9    million on the account of those claims.  It also recoveries

10   $12.4 million on the account of its equity interest in

11   subsidiaries.  These being primarily or entirely non-

12   guarantor subsidiaries that have equity value to flow to the

13   parent.  And then that amount, the gross distributable value

14   of $873 million is allocated pro-rata to the claims at the

15   parent company which provides that $309 million is

16   distributed to the intercompany claims which leaves $564

17   million to pay third party creditors of the parent.

18   Q    Given the assets that the parent has, do you have any

19   observations about the fixed versus the variable value of

20   the assets of the parent?

21   A    The parent, the value of the parent is comprised

22   largely of fixed components such that very few of these

23   items would actually have a lot of variability or judgment

24   applied to them.  Classified Ventures probably being the one

25   of note.

1    Q     If you'll turn to the next exhibit in your binder,

2    it's Exhibit 1110-8. That's Chart 8 in your report.  This is

3    entitled Base Case Recovery Summary.  What's the purpose of

4    determining base case recoveries in this matter?

5    A     Again, base case recoveries are those recoveries

6    parties would receive prior to consideration of any

7    avoidance actions whether from the LBO or otherwise.  And

8    this allows for the determination under the plan of the

9    portion of the plan consideration that comes from settlement

10   as opposed to from natural recoveries.

11   Q     How did you compute the base creditor recoveries?

12   A     We developed a model which we called the recovery

13   analysis model.  And what that model does is take the data

14   in terms of the claim at each entity including the

15   intercompany claims from the settlement.  It considers the

16   priorities of those claims.  And it takes the initial

17   distributable value from Lazard's valuation factoring all of

18   those together it makes distributions, we make distributions

19   in the model to each of the claims.  And in the case of

20   intercompany claims, value flows from one legal entity to

21   another legal entity in an iterative fashion until all value

22   is distributed to third parties.

23   Q     So when you ran your recovery analysis model, what was

24   the output?

25   A     The output is represented -- the initial output is

1    represented in the third column here, the initial recoveries

2    at the parent.  And then there's subsequent adjustments made

3    in the model that walk across to the total base case

4    recovery.

5    Q    And let's take the first column for a minute,

6    estimated claims at parent.  Do you see that?

7    A    I do.

8    Q    And there's a line item for other parent claims $264.7

9    million.  Do you see that?

10   A    Yes.

11   Q    What does that line item consist of?

12   A    This line item consists of three primary components.

13   There is the swap claim of approximately $150 million.

14   There are the retiree claims of approximately $105 million

15   and there are other trade claims and the like that make up

16   the balance.

17   Q    The employee retiree claims of $105 million, what does

18   that claim arise from?

19   A    That claim is a combination of approximately $102

20   million of that arises from what's known as the retiree

21   claimant settlement.  And the other $3 million represents

22   similar claims from parties who are not part of the retiree

23   claim settlement.  And the $102 million from the retiree

24   claim settlement represents the -- what was agreed on in the

25   settlement which was in between the amount claimed by those

1   parties of approximately $112 million and the amount

2   initially recorded on the company's books and records of

3   approximately $82 million.

4   Q     Now again, if you look in the first column estimated

5   claims of parent for subordinated PHONES and EGI, you have a

6   number of $996.2 million?  Do you see that?

7   A     I do.

8   Q     How did you come up with that amount for the PHONES

9   and EGI claims?

10  A     This is a combination of for the EGI TRB notes the

11  face value including accrued interest as of the petition

12  date for the books and records of the company which is $235

13  million.  That also matches the claims filed by those

14  holders.  And then $760 million for the PHONES notes which

15  is what is reflected on the company's books and records, but

16  I'll note is different than the amount claimed by the

17  indenture trustee of approximately $1.2 billion.

18  Q     And if the Court were to determine in favor of the

19  higher amount for the PHONES claim, how would that impact

20  base creditor recoveries?

21  A     It would have very limited impact.  For example,

22  looking at the senior noteholders, their total base case

23  recovery of $61.7 million would increase by approximately

24  $700,000 if the higher PHONES amount was used.

25  Q     Now in the fourth column on Exhibit 1110-8, you make a

1  $44.1 million adjustment for treating the PHONES and EGI

2  debt as subordinated to other claimants.  Do you see that?

3  A     I do.

4  Q     Are you aware of any dispute between certain parties

5  concerning the treatment of that subordination?

6  A     I am.  The number of parties including the senior

7  noteholders, as well as, the PHONES holders have objected to

8  the subordination of the PHONES and the EGI notes to certain

9  of the other parent claims.

10 Q     Why did you assume the entire amount of the PHONES

11 claim would be subordinated to all of the other unsecured

12 parent claims?

13 A     The portion of the -- that's in dispute here, I

14 believe of the other parent claims, about $150 million is

15 the swap claim which I don't believe there is a dispute on.

16 The portion that is in dispute relates to the retiree claims

17 and to the other trade claims.  And I made that assumption

18 for several reasons.  Number one, that was the assumption I

19 was instructed to make by counsel and is included in the

20 debtors' plan.  Number two, there is a matter, I guess

21 subject to dispute in terms of whether the retiree claimants

22 are beneficiaries of the subordination, and number three,

23 it's a really an immaterial difference in the analysis.

24 Q     Well, what is the significance of the issue?

25 A     If you look in the fourth numeric column, the

1  adjustments for subordinated debt, you can see that the

2  other parent claims in total benefit by $1 million from the

3  subordination.  If you remove the swap which is not in

4  dispute, the remaining benefit to the retiree claimants and

5  the trade claimants of the parent is approximately $400,000.

6  Of that amount, the majority comes out of the recoveries

7  from the senior lenders with only approximately $40,000

8  coming out of the recoveries of the senior noteholders.

9  Q    So ultimately, at the end of the day, what was your

10 conclusion concerning the base case recovery of each class

11 of creditors?

12 A    I concluded that the base recoveries were as listed in

13 the last column just under $6.6 billion for the senior

14 lenders, $77.8 million for the bridge lenders, $61.7 million

15 for the senior noteholders, $12.7 million for the other

16 parent claims, and $2.2 million for the subsidiary general

17 unsecured claims.

18 Q    So now let's talk briefly about your work with respect

19 to intercompany claims.  Can you turn to Exhibit 1108 which

20 is in the front of your binder?  Is this your report on

21 settlement of intercompany claims?

22 A    It is.

23 Q    And if you turn to Page 25 is that your signature on

24 this report?

25 A    Yes.

1    MR. KAPNICK:  We move the admission of Exhibit

2   1108.

3    THE COURT:  Any objection?

4    MR. ZENSKY:  No objection, Your Honor.

5    THE COURT:  It's admitted without objection.

6   (Exhibit 1108 identified and admitted into evidence.)

7   BY MR. KAPNICK:

8   Q    Mr. Whittman, what steps did you take to review the

9   intercompany claims of the debtor entities?

10  A    I obtained the -- from the company's books and

11  records, the intercompany balances as of the petition date.

12  I also obtained the intercompany balances as of various

13  historical points in time prior to the petition date.  I

14  obtained details around certain of the intercompany

15  transactions and had numerous discussions with company

16  management, particularly in the finance and tax area, as

17  well as, reviewing numerous documents around the

18  intercompanies.

19  Q    Let's turn to Exhibit 1108-1 which is Chart 1 from

20  your intercompany report.  Based on this chart, can you tell

21  the Court what the amount of the intercompany claims payable

22  at the petition date were?

23  A    Yes.  This chart illustrates on the bottom right, the

24  balance of intercompany claims per the books and records of

25  the company as of the petition date of $83.7 billion.  The

1  chart also breaks up for summary purposes that number into

2  the amounts that were payable from the parent, the guarantor

3  subs, and the non-guarantor subsidiaries to going across the

4  top, the parent, other guarantor subsidiaries, and other

5  non-guarantor subsidiaries.

6  Q    If you turn to the next chart in your book, Exhibit

7  1108-2, this chart is Chart 2 of your intercompany claim

8  report and it's entitled Intercompany Balances Applying

9  Merged Parent Concept.  Can you tell the Court what your

10 merged parent concept is and why you did this analysis?

11 A    Yes.  This is the first significant conclusion and

12 adjustment that I recommend to be made to the intercompany

13 claims per the books and records.  This arises from the

14 company's cash management system.  The cash management

15 system is on one -- on the one hand very typical in terms of

16 what you'd expect of this type of company.  Cash is received

17 at the operating subsidiaries.  It's transferred to the

18 parent on a daily basis.  And as a result, an intercompany

19 payable arises from the parent back to the subsidiary.  When

20 the company makes disbursements, however, that's where the

21 system departs from standard practice.  Disbursements for

22 administrative purposes are managed by a third legal entity

23 called Tribune Finance Service Center.  And when those

24 disbursements are made, an intercompany arises from the

25 operating subsidiary to the disbursing agent as I call it

1   and from the disbursing agent to the parent.  Economically,

2   however, the cash is at the parent and it comes out of the

3   parent's bank account.  All the processing or disbursing the

4   subsidiary is doing is simply doing administrative, back end

5   paperwork to make the payment.  And there's no economic

6   intent, no economic reality or intent to create a debt

7   between the operating subsidiary and this processing

8   subsidiary.  So as a result, I recommend that those

9   intercompany transactions be treated as if they had occurred

10  directly with the parent.

11  Q     And after making the merged parent company or merged

12  parent concept adjustment, what are the amount of the

13  intercompany claims?

14  A     As a result, the amount of intercompany claims dropped

15  to $30.4 billion.

16  Q     All right, well let's look at the significance of this

17  adjustment to base case creditor recoveries.  Can you turn

18  to Exhibit 1108-4?

19  A     Yes.

20  Q     And the first three columns there, can you tell the

21  Court what you're analyzing there?

22  A     The first column shows again the -- in the top row,

23  the balance of intercompany payables per the books and

24  records of $83.7 billion.  It then shows my adjustment to

25  remove the $53 billion reaching the $30.4 billion we talked

1  about on the prior slide.  The next set of rows show the

2  base case recoveries, again being the recoveries prior to

3  considering any avoidance actions.  And as you can see as a

4  result of making this adjustment, the recoveries for the

5  senior lenders declined by approximately $24 million.  And

6  the recoveries for all other parties, the bridge lenders,

7  the senior noteholders, the other parent claims increase by

8  an amount that in aggregate offsets the decrease to the

9  senior lenders.

10  Q     So after applying the merge parent concept, what

11  further analysis did you do concerning Tribune's

12  intercompany payables?

13  A     From that point, I considered whether all of these

14  intercompany payables should be considered allowed claims,

15  whether they all should be considered disallowed claims, or

16  some average percentage.  In fact, I concluded that the best

17  way to approach the intercompanies was to categorize the

18  balances, evaluate them on a category by category basis.

19  Also evaluate them in groups in terms of payables from the

20  parent to guarantor subsidiaries versus payables from

21  guarantor subsidiaries to the parent, and consider them as I

22  say category by category to reach individual determinations.

23  Q     Well, let's turn to Exhibit 1108-8 which is a couple

24  exhibits ahead in your binder.  It's labeled Sensitivity

25  Analysis Intercompany Payables From the Guarantor

1  Subsidiaries to Parent.  What did you conclude as a result

2  of the analysis in this chart?

3  A    Well, what I concluded from this chart which

4  essentially shows -- takes the sensitivity of looking at the

5  intercompany claim settlement.  I ultimately recommend in

6  taking the payables from the guarantor subsidiaries to the

7  parent.  And either to the far left setting them as they

8  were per the books and records of the company being allowed,

9  all allowed, or setting them to the right as being all

10 disallowed, that that difference while being a swing of $3.4

11 billion of claims, only represents a $3.7 million impact on

12 recoveries with an increasing recovery to the senior lenders

13 and a decreasing recovery to the other parties with the

14 intercompany claim settlement really being in between that

15 relatively small range.

16 Q    Now turn to Exhibit 1108-7 which is the exhibit

17 immediately prior to that exhibit.  This is Chart 7 of your

18 intercompany claims report and it's labeled Sensitivity

19 Analysis Intercompany Payables from Parent to Guarantor

20 Subsidiaries.  Do you see that?

21 A    I do.

22 Q    What did you conclude about the relative importance of

23 these intercompany claims as a result of the analysis in

24 Chart 7?

25 A    This chart shows the claims of the subsidiaries

1   against the parent.  So the payables from the parent going

2   down to the guarantor subsidiaries.  And what this chart

3   illustrates is that they are significantly more important

4   than the payables going the other direction.  The impact of

5   these payables going from one extreme of allowing them all

6   to the other extreme of disallowing them all, would be $95

7   million on base recoveries for the senior lenders with in

8   aggregate offsetting amounts for the other creditors.

9   Q    How did that conclusion affect your intercompany

10  claims analysis going forward?

11  A    Well, I analyzed a number of the components of the

12  intercompany claims.  I focused most of my efforts on the

13  claims of the subsidiaries against the parent.  And the

14  majority of my report is focused on those claims.

15  Q    All right.  Can you turn now to Exhibit 1108-11?  It's

16  a few charts ahead.  This is Chart 11 of your intercompany

17  claim report.

18  A    Okay.

19  Q    Can you briefly explain to the Court the analysis you

20  conducted in this exhibit?

21  A    This is really the heart of the intercompany claims

22  analysis.  Going down the left hand column here, you can see

23  the categories that I placed the intercompany claims into

24  based on my analysis including goodwill write off, the

25  Newsday transaction, the Eagle transaction, claims arising

1  as a result of setting up the Tribune receivables facility,

2  and claims arising out of the general operation of the

3  business.  And then looking to the right of the initial

4  claim amount, you can see my conclusions on these claims

5  after evaluating the facts and circumstances of these

6  individual categories against the legal standards.

7  Q    What standards did you use to evaluate these five

8  intercompany claims?

9  A    I used the standards set forth in the *SubMicron* case

10  that I understand is the operative case for this Court.

11  Q    And what do you understand that legal standard to be?

12  A    The -- while there's a number of standards that are

13  outlined in *SubMicron*, the primary standard really as it

14  relates to intercompanies revolves around the intent of the

15  parties.  And that was my focus along with a number of -- a

16  few of the other standards as well.

17  Q    So at the end of the day, what did your analysis

18  conclude concerning these five categories?

19  A    Concerning these five categories, I concluded that at

20  the midpoint of my range, they should be 53 percent -- they

21  were 53 percent likely to be allowed and thus we should

22  treat as part of the settlement, 53 percent of the balance

23  as an allowed claim with a small adjustment for affiliate

24  receipt of case below to reach the $5.5 billion of allowed

25  intercompany claims going from claims of the guarantor subs

1   against the parent.

2          MR. KAPNICK:  Your Honor, given the parties

3   stipulation, I don't think I'm going to take up the time to

4   go through each of these categories unless Your Honor wants

5   some detailed background on each of them?  No?

6          THE COURT:  Not necessary.

7   BY MR. KAPNICK:

8   Q    Yeah.  Let's go to Exhibit 1108-3, again.  How does

9   this chart advance your analysis of the intercompany claims?

10  A    This is the output, the final conclusion of my

11  analysis in terms of the amount of claims that I recommended

12  be allowed as part of the intercompany claim settlement

13  which in aggregate are $17.5 billion. You can see the $5.5

14  billion payable from the parent to guarantor subsidiaries we

15  just talked about a moment ago, as well as, the other

16  components.

17  Q    So at the end of the day, what is the amount of

18  intercompany claims that you recommend?

19  A    $17.5 billion.

20  Q    All right.  Turn to the next exhibit in order 1108-4.

21  We discussed the first three columns earlier of this

22  analysis.  Can you take the Court through the last five

23  columns here and explain what analysis you're doing?

24  A    This chart, the remainder of this chart just helps to

25  illustrate for the Court the impact, the ultimate impact of

1  the intercompany claim settlement.  As we said in the first

2  three columns, you know, the first step of the settlement,

3  applying the merge parent concept eliminated $30 billion of

4  claims.  It had about a $24 million impact on recoveries.

5  Taking the next step over, the settlement further reduces

6  the claims population by another $12.9 billion.  And that

7  impact on recoveries is to reduce the base creditor

8  recoveries to the senior lenders by approximately $32

9  million and to increase the recoveries to the bridge, the

10 senior noteholders, and the other parent claims by an

11 offsetting amount.

12 Q     And did you make any recommendations to the debtors

13 based on your analysis of intercompany claims?

14 A     Yes. I recommended that they enter into a settlement

15 agreement in with this analysis.

16 Q     And how did you present those recommendations to

17 management?

18 A     I presented the recommendations in a face to face

19 meeting with a number of members of senior management and

20 financial management of the debtors.

21 Q     And do you know whether the company took any action as

22 a result of your recommendations?

23 A     Yes.  They entered into a claim settlement agreement

24 that is part of the plan.

25 Q     And are you available, if necessary, later in the week

1   or in April to come back and offer rebuttal testimony if

2   that's appropriate?

3   A      I am.

4              MR. KAPNICK:  All right, thank you, Your Honor.

5              THE COURT:  Thank you.  I'm going to take just a

6   five minute break.  Court will stand in recess.

7   (Recess from 11:04 a.m. to 11:13 a.m.)

8              THE CLERK:  Be seated, please.

9              THE COURT:  Cross examination.

10             MR. DASH:  May I proceed, Your Honor?

11             THE COURT:  Yes.

12                      CROSS EXAMINATION

13  BY MR. DASH:

14  Q     Good morning.  Andrew Dash, Brown Rudnick, LLP on

15  behalf of Wilmington Trust and on behalf of the noteholders.

16  Good morning, Mr. Whittman.  Nice to see you again.

17  A      Good morning.

18  Q     You're an accountant by training, sir, right?

19  A      Yes.

20  Q     And since getting out school, you've only worked for

21  two entities, Arthur Anderson and Alvarez & Marsal?

22  A      That's correct.

23  Q     And prior to your work for Tribune, you had no

24  experience in the publishing industry.  Correct?

25  A      That's correct.

1  Q      And prior to going -- getting involved in this

2  engagement, you had no prior experience in the broadcasting

3  industry.  Correct?

4  A      That's correct.

5  Q      And prior to your engagement for Tribune, you had no

6  prior experience in the internet interactive world, right?

7  A      That is correct.

8  Q      And so you're not here to claim expertise in the

9  sectors in which Tribune operates.  Correct?

10  A      No, that was not necessary for what I was asked to

11  perform.

12  Q      And in terms of your prior service as an expert,

13  you've never before been asked to prepare an expert report.

14  Correct?

15  A      No, I have not.

16  Q      And you hit the trifecta here, you got three to do,

17  right?

18  A      That is correct.

19  Q      Okay.  And prior to this case, you've never been

20  offered as a formal expert witness.  Correct?

21  A      That's correct.

22  Q      Okay.  Now let's start with the intercompany report.

23  And if we could go to DCL Exhibit 1108-1.  I'd just like to

24  touch on that slide for a few moments.  Okay.  Now this is

25  the information you present here is from the company's books

1   and records?

2   A      That's correct.

3   Q      And it shows that the parent has a $31.4 billion

4   payable to the guarantor and non-guarantor subs, right?

5   A      Yes.

6   Q      And that's the $31,368.7 number under total?

7   A      That's correct.

8   Q      Okay.  And it also shows a $22.5 billion payable from

9   the subs to the parent, right?

10  A      Yes.  Actually, not the number highlighted, it's the

11  number at the bottom of the first column, the parent column,

12  but yes, that's correct.

13  Q      Okay.  And that's the $22,5007.7, right?

14  A      Yes.

15  Q      Under parent?

16  A      Correct.

17  Q      Okay.  And if we could look at Slide 1108-2, that's

18  Chart 2 from your intercompany report, right?

19  A      That's correct.

20  Q      And this is what you called and talked about on direct

21  as your merged parent concept?

22  A      Correct.

23  Q      Okay.  And that shows the parent has a $16.5 billion

24  payable to the subs?

25  A      Yes.

1    Q      And but the subs also have a $4 billion payable to the

2    parent, right?

3    A      Yes, just under 4, that's correct.

4    Q      Right.  And that's the $3,979.7 under parent, right?

5    A      Correct.

6    Q      And similarly, if we go to Chart 3 from your report,

7    that's DCL Exhibit 1108-3, we have the same pattern here.

8    This is your midpoint estimate of allowed intercompany

9    claims under the DCL plans intercompany settlement?

10   A      Yes, it is.

11   Q      And it shows $7 billion due from the subs to the

12   parent?

13   A      I'm sorry, it's 7 due from the parent to the subs due?

14   Q      I'm sorry, did I get that -- due from the parent to

15   the subs, you're absolutely right, I'm sorry.  And it shows

16   $2.4 due to parent from the subs?

17   A      That's correct.

18   Q      Okay.  Now you would agree with me to properly model

19   intercompany obligations, you need to look at both

20   obligations of the parent to the subs and the obligations of

21   the subs to the parent, right?

22   A      Yes.

23   Q      And in other words, you need to look at due to and due

24   from, both sets of entities.  Correct?

25   A      Yes, you do.

1  Q     Now the DCL plan contemplates a number of settlements.

2  Am I Correct?

3  A     It does.

4  Q     And is it your understanding that those settlements

5  constitute a single integrated settlement?

6  A     I guess I'm not sure I know the answer to that.

7  Q     Okay.  If any one of the settlements contemplated

8  under the DCL plan isn't approved, is it your understanding

9  that the DCL plan can proceed?

10  A     I don't believe so, but I'm not sure I have the answer

11  to that.

12  Q     Okay.  Now the DCL plan as you've told us on direct is

13  premised on the distributable enterprise value of $6.75

14  billion, right?

15  A     That is correct.

16  Q     Okay.  And that money, that $6.75 billion is allocated

17  among Tribune on the one hand and Tribune subs on a

18  consolidated basis on the other, right?

19  A     Yes, it's actually allocated to each individual

20  subsidiary.

21  Q     Okay.  But at the end of the day, you've got 8.4

22  percent of the distributed enterprise value going --

23  distributable enterprise value going to Tribune, right?

24  A     That is correct.

25  Q     And the reciprocal 91.6 percent going to the subs?

1   A       That is correct at the $6.75 billion valuation.

2   Q       Right.  And that allocation is an outgrowth of the

3   intercompany claim settlement, right?

4   A       In part, yes.

5   Q       And if the intercompany claim settlement is approved,

6   there are no planned distributions on account of the

7   intercompany claims under the DCL plan, right?

8   A       Value is allocated to each legal entity based on the

9   intercompany claim settlement and then out to third parties.

10  Q       Um-hum.  And if the DCL plan is not confirmed, there

11  is no intercompany claim settlement, right?

12  A       That's my understanding that the settlement is

13  contingent upon the confirmation of -- actually, I believe

14  either one of the two plans before the Court.

15  Q       Fair enough.  More specifically, if the intercompany

16  claim settlement is not approved, then creditors can't rely

17  on that 8.4 percent, 91.6 percent allocation, right?

18  A       I -- yes, that is correct.  The allocation is

19  dependent upon having reached an intercompany claim

20  settlement.

21  Q       Okay.  And it's your understanding that the noteholder

22  plan proposal is not premised on an assumed distributable

23  enterprise value.

24  A       I'm not sure what value the noteholder plan is

25  premised upon.

1    Q      Okay.  And aren't you aware that the noteholder

2    proposal would have the distributable enterprise value

3    determined by the Court?

4    A      I -- yeah, that sounds familiar to me.

5    Q      Okay.  Now the intercompany claim settlement resolves

6    claims that the debtors have against one another, right?

7    A      Correct.

8    Q      Including Tribune claims against certain of its

9    subsidiaries?

10   A      Yes.

11   Q      And claims that certain of its subsidiaries have

12   against Tribune.  Is that right?

13   A      That's correct.

14   Q      And the company's books and records reflect these

15   transactions, right?

16   A      Yes, the first chart we went through Exhibit 1,

17   reflects the books and records of the company.

18   Q      Now did you do anything other than look at the books

19   and records of the company to determine these claims back

20   and forth between the subs and the parent?

21   A      We started with the books and records of the company

22   and from there we did a significant analysis around groups

23   of those claims to understand the underlying nature of

24   various transactions, how they arose, what the intent was

25   and so forth.

1   Q      Well, let's talk about that a bit.  You told us on

2   direct that the key issue for you was to determine the

3   intent of the parties.  Now what did you do besides looking

4   at the books and records to determine the intent of the

5   parent and the subs and these intercompany transactions?

6   A      Well, for example, a significant portion of the

7   intercompany balance arises from the operation of the cash

8   management system.  And if you consider that or as I did

9   consider that, an operating subsidiary receives cash in due

10  to collections from its customers.  That cash is sent up to

11  the parent and as a result, the parent has a payable to the

12  subsidiary.  In my mind, there's a clear intent of the

13  subsidiary to be able to have access to that cash because

14  that subsidiary needs to the next day, the next week, the

15  next month, be able to pay payroll, be able to pay the

16  newsprint vendor that, you know, it purchased newsprint from

17  and so forth.  So that in that particular circumstance,

18  there's a demonstrated intent just by the nature of how the

19  relationship works --

20  Q      As reflected in the books and records, right?

21  A      As reflected in the books and records.

22  Q      Now did you do anything -- did Alvarez & Marsal in any

23  way attempt to audit the books and records to look beyond

24  what was recorded there to determine the accuracy of the

25  amounts reflected as intercompany obligations?

1   A      We did not audit the books and records.  We did

2   analyze transactions and groups of transactions and where

3   the intent or other factors indicated they should not be

4   considered an allowed claim, we adjusted accordingly.

5   Q      Now with respect to the intercompany claims, did you -

6   - did Alvarez & Marsal, or you, or anyone on your team

7   undertake to determine or to analyze whether any of these

8   claims constituted preferential transfer?

9   A      We did not consider other than in one potential

10  circumstance whether any of these claims constituted

11  preferential transfers.

12  Q      What about a fraudulent conveyance analysis?  Did

13  Alvarez & Marsal conduct any fraudulent conveyance analysis

14  to determine whether any of these intercompany obligations

15  were avoidable on that basis?

16  A      We did not.

17  Q      And what about looking any of the intercompany

18  obligations to see whether any could be properly

19  characterized as an equity contribution?

20  A      Well that we did.  That really is as we look at the

21  legal standards and consider the categories of intercompany

22  claims, as I looked at that, you know, the issue was whether

23  the amount would be characterized as debt.  In other words,

24  the claim should be allowed or characterized as equity, in

25  other words, the claim should be disallowed.

1    Q      Now is it your understanding that if either the Step 1

2    transaction or the Step 2 transaction is avoided there would

3    be no intercompany claim settlement?

4    A      I don't have that understanding.

5    Q      Do you have the opposite understanding that the

6    intercompany claims settlement would survive a determination

7    that either the Step 1 debt or the Step 2 debt should be

8    avoided?

9    A      Well, the intercompany claim settlement is part of the

10   debtor, committee, lender plan which would make a

11   determination that the settlement of LBO related causes of

12   action is reasonable.  So I'm not quite following the

13   hypothetical in that context.

14   Q      Well, in your report, do you show how your

15   intercompany analysis would change if the Step 2 obligations

16   were avoided at the sub level?

17   A      Well, the analysis of the intercompany claims in terms

18   of the determination of the settlement of those claims is

19   not impacted at all by the LBO causes of action.  The only

20   thing in the intercompany report that's impacted by the LBO

21   causes of action or would be impacted is the sensitivity

22   analysis in terms of what the impact of those intercompany

23   claims are on base creditor recoveries which, of course,

24   base creditor recoveries themselves as I said are recoveries

25   without consideration of avoidance actions.

1  Q      Um-hum.  Well we're going to come back to that.  Now

2  do you understand that if a Step 2 is avoided at the

3  subsidiaries that before post-petition interest on the Step

4  1 debt can be paid, the intercompany obligations owing from

5  the subsidiaries to Tribune must be paid in full?

6  A      I'm sorry, that's a long question.  Could you repeat

7  that?

8  Q      Yeah, let me try it again.  Is it your understanding

9  that if the Step 2 debtors avoided at the sub level -- are

10 you with me now?

11 A      Yeah.

12 Q      Getting there?  Okay.  Before post-petition interest

13 can be paid on the Step 1 debt, do you understand that the

14 intercompany obligations owing from the subsidiaries to

15 Tribune must be paid in full?

16 A       I understand that under certain legal theories of

17 post-petition interest that is the case.

18 Q      Okay.

19 A      And perhaps not under all.

20 Q      Now you're not here to offer any opinions on what the

21 proper allocation would be between Tribune and its

22 subsidiaries if there is no intercompany claim settlement,

23 right?

24 A      Well, I believe allocation of what -- allocation of

25 value?

1  Q      Yes.

2  A      The -- well, I think the intercompany claim settlement

3  is I should say the -- my parent value report is predicated

4  upon the intercompany claim settlement.  So one builds on

5  the other.

6  Q    Okay.  You're not offering any iterations of your

7  report that assumes the intercompany claim settlement does

8  not exist?

9  A      I am not, no.

10  Q    Okay.  Let's talk a little bit about your

11  distributable value report.  Now I think as we touched -- as

12  you touched on in your direct, your base case and base

13  recoveries are calculated without regard to avoidance

14  actions?

15  A      That's correct.

16  Q    And for example, without considering the impact of the

17  avoidance of Step 1 or Step 2 of the financing transaction?

18  A      That's correct.

19  Q    And you didn't include an analysis of the impact of

20  avoidance actions in that report because the debtors'

21  counsel told you not to, right?

22  A    I don't -- no, I would disagree with that.  The

23  debtors' counsel instructed me as to the -- what the scope

24  of the report was.  The scope of the report was to provide

25  calculation of the parent distributable value and a

1    calculation of the base creditor recoveries.  There -- I was

2    not being asked to provide a report on how recoveries would

3    change or what the recoveries would be under different

4    scenarios.

5    Q    Well, I'm not sure whether we've communicated here.

6    Let me try one more time.

7    A    Okay.

8    Q    Wasn't it debtors' counsel who instructed you to

9    prepare your report on the basis that there would not be --

10   there would be no avoidance actions?

11   A    Maybe we're saying the same thing.  I was instructed

12   to prepare a report on base creditor recoveries.  Base

13   creditor recoveries means recoveries without avoidance

14   actions.  I think that's clear.  In fact, the noteholders,

15   everyone has adopted the term base or natural recovery to

16   mean the same thing.

17   Q    And that instruction came from Bryan Krakauer at

18   Sidley Austin?

19   A    In terms of the report I was to prepare?

20   Q    Yes.

21   A    Yes.

22   Q    And that instruction came to you sometime in the

23   second or third quarter of 2010?

24   A    That sounds right.

25   Q    Okay.  Now did you push back at all?  Did you say gee,

1    the report really should deal with the potential of

2    avoidance actions?

3    A    I didn't view that as something that I would be

4    addressing his -- there would be others to address that in

5    the case as we've heard the testimony of Bernie Black

6    earlier or last week.

7    Q    So you just accepted the instruction of counsel as to

8    what to assume for your report, right, on this -- in this

9    record?

10   A    In this regard, I accepted the instruction that my

11   report should be on base creditor recoveries.  Yes, I did.

12   Q    Now the asset values that you use in your distribution

13   of value, distributable value report came from Lazard,

14   right?

15   A    Distributable -- in terms of determining the parent

16   distributable value, both the initial distributable values

17   of each legal entity it held to determine the intercompany

18   recoveries from Lazard, as well as, within the initial

19   distributable value of the parent, most of those values were

20   computed by Lazard, although certain items such as the

21   proceeds that had been received on the Time Warner stock for

22   example, you know, were provided by us in review of the

23   company's records.

24   Q    Okay.  And the value allocations were also given to

25   you by Lazard, right?

1  A     The initial allocation of value to each legal entity,

2  that is correct.

3  Q     Okay.  Now you just worked with the numbers you were

4  given from Lazard or otherwise saw on the books and records,

5  right?

6  A     In terms of the values, yes, we did.

7  Q     And in terms of the allocation?

8  A     And in terms of the allocation, yes.

9  Q     Okay.  Now the information that came to you from

10 Lazard at least in part before the first plan of

11 reorganization was released, right?

12 A     Well, Lazard provided us with information related to

13 the valuation that was incorporated in the first plan of

14 reorganization and we performed an analysis at that time.

15 They then provided us with information leading up to the

16 filing of the current plan that's under consideration before

17 the Court and that is the information that's utilized in

18 this report.

19 Q     Well, let me read to you from your deposition on Page

20 44, Line 16.  Question:  And when did you receive or when

21 were you given access to that copy of Lazard's valuation and

22 allocation?  Answer:  We received the information at

23 different points in time.  We received information in

24 advance of the first plan of reorganization in order to

25 complete an analysis at that time and it goes on.  So at

1  least some of the information on which you base your report

2  came to you before the first plan or reorganization was

3  released, right?

4  A      No.  I think, you know, the important point of that

5  answer was the second sentence and we received additional

6  information in advance of the filing of the second.  In

7  other words, the current plan.  There was in terms of the

8  information from Lazard, nothing that we relied upon from

9  what we were provided for the first plan that carried over

10 for the second plan.  We had a full new set of information

11 from Lazard which is what we relied upon for our report

12 related to this plan.

13 Q     Well, before you prepared your report, you told me at

14 your deposition that you spoke with Lazard to confirm that

15 none of the numbers you were going to rely on changed.  Do

16 you remember that?

17 A     That's correct.  They had provided me with information

18 in the October timeframe which we used to prepare analysis

19 that the plan is based on.  We then continued to use that

20 information and analysis in preparing my report.  And I

21 spoke to Mr. Mandava at various points of time in January

22 and early February to confirm that their information was

23 unchanged in terms of what I needed to rely upon for my

24 report.

25 Q     Well, you talked to Mr. Mandava about that issue in

1   summary fashion, right?  You didn't go number by number with

2   him did you?

3   A     No, in summary fashion.

4   Q     Okay.  Now if you take a look at Page 3 of your

5   distributable value report, that's -- bear with me a second,

6   I'll give you the exhibit number.  That's DCL Exhibit 1110.

7   A     Okay.

8   Q     Okay.  Now you tell us --

9   A     Page 3 you said, okay, all right.

10   Q     You tell us that the Lazard analysis that you used

11   relied on an effective date for a plan of reorganization at

12   the end of last year, right?

13   A     That was my understanding in advance of seeing

14   Lazard's expert report that the analysis I had been provided

15   which also in summary fashion was included in the disclosure

16   statement indicated an assumed effective date of December

17   27, 2010.  That is correct.

18   Q     Okay.  And at the time of your deposition, you didn't

19   know whether Lazard had updated its valuation assumptions.

20   Remember that?

21   A     At the time of my deposition, I was not aware of

22   Lazard updating its valuation assumptions beyond what I had

23   been provided, that is correct.

24   Q     Nor were you aware if Lazard had updated its

25   allocation assumptions.  Correct?

1    A      My understanding was and is that Lazard has not

2    updated its allocation assumptions.

3    Q      Now just so the record is clear, Alvarez & Marsal

4    didn't do an independent evaluation?

5    A      No, that's correct.

6    Q      And Alvarez & Marsal didn't do an independent

7    allocation?

8    A      That is correct.

9    Q      Okay.  Now wouldn't you agree with me that to prepare

10   an expert report like the distributable value report, it's

11   appropriate and best to use the most recent available

12   information?

13   A      Yes, I would generally agree with that.

14   Q      Okay.  But you didn't always do that in terms of your

15   distributable value report, did you?  For example, let's

16   turn to Page 8.  Now the listing there for some Baltimore

17   real estate $41 million, right?

18   A      That is correct.

19   Q      And that was from a Cushman & Wakefield valuation you

20   were given access to that was given to management around

21   April of 2009?

22   A      That is correct.

23   Q      And you told me at your deposition that you've learned

24   that there was a revised February 2010, Cushman & Wakefield

25   valuation for that property, almost a year more current,

1    right?

2    A      That is correct.

3    Q      You didn't use that one, did you?

4    A      I intentionally did not use that valuation from

5    February 2010 because --

6    Q      You told me at your deposition that first, you told me

7    at your deposition that you were trying to state the values

8    as of the petition date, right?  Remember that?

9    A      I do remember that.

10   Q      And then you kind of backed off that during your

11   deposition and told me that most of the items that you

12   included in your valuation list were not of the petition

13   dates, right?  Some were, some weren't, right?

14   A      The items that are as of the petition date are those

15   that are appropriately as of the petition date because that

16   -- they were frozen in time essentially as of that point

17   such as the Time Warner stock which had been liquidated into

18   cash.  And the ones that are not of the petition date are

19   the ones that are appropriate to be more reflective of

20   current values.

21   Q      Okay.  Well, let's talk a little bit about your

22   assumption for the value of the PHONES claims.  You're aware

23   that the indenture trustee on behalf of the holders of the

24   PHONES has interposed a claim of approximately $1.1 billion?

25   You talked about that on direct, right?

1    A     Yes, I'm aware of that.

2    Q     Okay.  But that's not the number you used in your

3    distributable value report or your liquidation analysis,

4    right?

5    A     That's correct.  I used the number reported on the

6    company's books and records --

7    Q     And that's $760.9 million?

8    A     Yes.

9    Q     $761 million?

10   A     That's correct.

11   Q     Okay.  And that was correct -- am I correct, based on

12   a reduced value of the PHONES as a result of certain PHONES

13   holders putting their notes to the company in the ten days

14   before the filing and then when the filing occurred, they

15   never got paid on that and put on nonetheless the company's

16   books and records reflects the reduced amount as if the

17   consideration had not failed on the put, on the puts.

18   Correct?

19   A     That's generally correct.  The company's books and

20   records reflect the face amount, plus accrued interest for

21   the PHONES that had not been put, and for the PHONES that

22   had been put, reflect the value of the put.  So the amount

23   that would have been paid out if the ten day period under

24   which the payment had to occur had completed prior to the

25   filing of bankruptcy and the payment had been made.

```
 1   A      That's correct.  In fact as I understand it, it's not
 2   even just between -- now when you say certain of the PHONES
 3   holders, there -- as I understand it there are PHONES
 4   holders who would argue for the higher amount and there's
 5   other PHONES holders who would argue for the lower amount.
 6   Q      Okay.
 7   A      But I'm aware of the dispute.
 8   Q      But with your knowledge of that dispute, nonetheless
 9   you, as the leader of the Alvarez and Marsal team,
10   nonetheless decided to rely on what the company's books and
11   records reflect, right?
12   A     I thought that was appropriate given the basis within
13   the books and records and as I mentioned earlier, the --
14   well, A, the disputed nature, even amongst the PHONES
15   holders in terms of this $1.2 billion amount and also the
16   relative immaterial impact that that assumption would have
17   on my conclusions.
18   Q      You know Alvarez and Marsal is not offering an opinion
19   on that dispute one way or another, right?
20   A      No, I am not.
21   Q      You took the company's books and records number and in
22   fact the only thing you did with that number was to check
23   the math, right?  You didn't make an independent assessment
24   as to whether it was appropriate, right?
25   A      I mean to me that's clearly a legal issue in terms of
```

1    the dispute.  I did not make an assessment on that.

2    Q    Okay.  Let me ask you a little bit about your

3    understanding as to how the books and records number for the

4    PHONES claim was calculated.  Am I right that at least a

5    component, a portion of that claim was calculated by

6    reference to market interest rate conditions?

7    A    No, that's not correct.

8    Q    Well, maybe you could help me out.  Let me ask you to

9    look in the binder we handed out at Exhibit 1 in the binder.

10   A    I'm sorry.  I don't have a binder.

11   Q    Marty, could you -- sorry.

12   A    Thank you.

13   Q    And in particular I'd like to direct your attention to

14   page 115.  For the record, this is a copy of Tribune's 10k

15   for the year ending December 30, 2007.

16          THE COURT:  Does it have an exhibit designation?

17          MR. DASH:  Yes, Your Honor.  It's DCL Exhibit --

18   I'm sorry.  Do we have the exhibit number?  1,400.  Would

19   you like a copy, Your Honor?

20          THE COURT:  Yes, and one for my law clerk, too,

21   if you have one.

22   BY MR. DASH:

23   Q    Okay.  With the procedural stuff out of the way, can I

24   ask you to turn to page 115?

25   A    I am there.

1  Q      Okay.  I'm sorry, 116.

2  A      Okay.

3  Q      And do you see where it reads the fair value of the

4  discounted debt component of the PHONES was calculated based

5  on an estimate of the current interest rate available to the

6  company for debt of the same remaining maturity and similar

7  terms to the PHONES?

8  A      Yes, I see that.

9  Q      Okay.  And you told me at your deposition that you

10  understood that treatment or that mechanism for determining

11  the value of the PHONES comported with your understanding of

12  GAP?

13  A      Yes, but I think perhaps we're having a

14  misunderstanding here, which is that the treatment of the

15  PHONES under GAP was different in December of 2007 than it

16  was as of the petition date.  So the treatment described

17  here relates to the treatment of how the companies had

18  historically accounted for the PHONES up until the petition

19  date.  The triggering of the bankruptcy petition required a

20  change in accounting for GAP purposes to account for the

21  PHONES at the face value as opposed to based on the sort of

22  combined market face fair value concept as described here in

23  this document.

24  Q      You didn't tell me about that at your deposition, did

25  you?

1  A     You didn't ask that question.  I wasn't sure where you

2  were going.

3  Q     Okay.

4  A     I did not.

5  Q     Now in your distributable value analysis, you assumed

6  that the holders of the PHONES were subordinated to other

7  Creditors at the parent level, right?

8  A     Yes, I did.

9  Q     And for example you assumed that the PHONES holders

10 were subordinated to the claims of the LBO Lenders.

11 A     I did.

12 Q     And you, in your report, distributable value report at

13 footnote 9 you tell us that you looked at a number of

14 documents in connection with your analysis, including the

15 indenture for the PHONES.

16 A     I reviewed the relevant portions of the indenture

17 around subordination.

18 Q     And when you reviewed the subordination provision in

19 the PHONES indenture, you saw, did you not, that it was

20 subject to a good faith requirement by the assert of the

21 senior Creditor in order for the subordination provision to

22 work, right?

23 A     I'm aware of that provision.

24 Q     Okay.  You never independently analyzed whether the

25 good faith element had been met, did you?

1  A     I don't believe that -- I did not and I don't believe

2  that's something I would be qualified to do.

3  Q     In that regard you took instruction from Counsel for

4  the Debtors as to how to treat the subordination provision,

5  right?

6  A     Yes.  As noted in my report on parent distributable

7  value, in terms of the priorities of the various claims, I

8  relied on input from Debtors' Counsel on the legal standing

9  of one claim versus another.

10  Q     And that came from Brian Krakauer at Sidley Austin,

11  right?

12  A     Yes, it did.

13  Q     He gave you that instruction to make that assumption,

14  correct?

15  A     We didn't speak specifically about this good faith

16  issue that you just brought up, but in regards to treating

17  the PHONES debt as subordinated to the senior debt, yes, it

18  did.

19  Q     And in fact, you don't recall discussing with anyone

20  the -- whether there was an issue as to the subordination of

21  the PHONES, did you?

22  A     Versus the senior debt?

23  Q     Yeah.

24  A     I don't recall discussing that.  No.

25  Q     Okay.  Just the instruction you had from Mr. Krakauer,

1    correct?

2    A      Correct.

3    Q      Okay.  Now you also assumed in your distributable

4    value report that the PHONES were subordinate to retiree

5    claims.

6    A      Yes, I did.

7    Q      And again, that was based on instruction from Mr.

8    Krakauer at Sidley Austin?

9    A      That was based on a combination of the instruction

10   from Debtors' Counsel as to priorities, as well as I did

11   review that section of the document.

12   Q      And indeed, didn't Mr. Krakauer instruct you to assume

13   that the PHONES were subordinated to all the other debt at

14   the parent level?

15   A      Except for the inter-company claims, but to all the

16   third party debt at the parent level, that is correct.

17   Q      Is it your understanding that the PHONES are not

18   subordinated to inter-company debt?

19   A      The PHONES are not subordinated to inter-company debt.

20   That's correct and that's -- and they're not treated as

21   being subordinated to inter-company debt in my reports.

22   Q      Okay.  And what about swap claim?  Are the PHONES, to

23   your understanding, subordinated to them?

24   A      Yes, that is my understanding.

25   Q      Okay.  And that's how you -- and that's the basis on

1    which you prepared your report, right?

2    A      Correct.

3    Q      And if you're wrong on the subordination of the PHONES

4    to the swap claim, portions of your report are going to be

5    incorrect, correct?

6    A      That would not impact any of my conclusions.  It would

7    be, as I illustrated before in my direct testimony, in

8    aggregate all the other parent claims benefit by a million

9    dollars from the subordination, so the swap would be a

10   portion of that.

11   Q      Now you tell us -- you told me at your deposition that

12   you assumed the PHONES subordination in part for

13   administrative convenience.  Remember using that phrase?

14   A      That related to the trade claims of the parent.

15   That's correct.

16   Q      Okay.  And you assumed that the PHONES claims are

17   subordinated to the trade in your analysis, correct?

18   A      That's correct.  I make a footnote regarding that and

19   the approximately $30,000 impact that that has.

20   Q      Right.  And you tell us in that footnote that was for

21   the simplicity of plan construction.  I think that was the

22   phrase you used.

23   A      That sounds familiar.

24   Q      Okay.  And you told us on your direct testimony that

25   you viewed that as you know immaterial, an immaterial issue.

1    A       I did and I do.

2    Q       And nonetheless at your deposition, you agreed with me

3    that the PHONES are not subordinated to the trade claims,

4    right?

5    A       Generally that is correct.

6    Q       And nonetheless you and your team at Alvarez and

7    Marsal, prepared your report in line with the instructions

8    Counsel for the Debtors gave you to assume that the PHONES

9    were subordinated to all the other claims at the parent

10   level, right?

11   A       That is correct.

12   Q       And even though you knew that instruction was wrong,

13   right?

14   A       I think I applied reasonable materiality.

15   Q       Okay.  And that's another way of saying you knew it

16   was wrong, but it didn't matter to you, right?

17   A       $30,000.  Yes.

18   Q       Okay.  Now let's move on to your liquidation analysis.

19   Now the liquidation analysis put before the Court as one of

20   the exhibits earlier was attached as an exhibit to an expert

21   report that you signed.  Counsel talked to you about your

22   signature.  Do you remember that?

23   A       Right.  There's a liquidation analysis attached to the

24   disclosure statement, to the general disclosure statement

25   actually for both of these plans before the Court.  That is

1 Exhibit D to my liquidation analysis report.

2 Q    Okay.  And in that report you write that it was your

3 opinion that the liquidation analysis "provides a reasonable

4 estimate of the Chapter 7 liquidation value of the Debtors'

5 assets and distribution, if any, that Holders of allowed

6 claims in equity interest would receive in a Chapter 7

7 liquidation."  That was at page 3 of your report, right?

8 A    Not having it in front of me, it sounds like something

9 I probably said.

10 Q    Okay.  You also state in your report "that the

11 assumptions underlying the liquidation analysis" and it

12 lists it there, are reasonable.  That's also page 3.

13 Remember that?

14 A    That again -- I'll turn to my report, but that sounds

15 right.

16 Q    Well, at the time the liquidation analysis was

17 prepared, weren't you leading the engagement team for

18 Alvarez and Marsal?

19 A    Yes, I was.

20 Q    Weren't you the primary author of the liquidation

21 analysis?

22 A    Yes.

23 Q    So aren't you, in your report, blessing your own work?

24 A    Yes.  I prepared a liquidation analysis that I believe

25 is correct.

1    Q    Okay.  And in your report you offer the formal opinion

2    to the Court that the work you did is correct, right?

3    A    I mean really my opinion in the liquidation analysis

4    is that it shows that the plan meets the best interest to

5    Creditors, to us.  That's the formal opinion in the

6    liquidation analysis report.

7    Q    Okay.  But you also -- you know you're also offering

8    the opinion that the assumptions underlying the analysis are

9    correct, right?

10   A    Yes, that's correct.

11   Q    Okay.  So the assumptions that you relied on when you

12   did the report you're now telling us were the correct

13   assumptions, in your expert report.

14   A    Yes, that's almost self-evident that I believe I

15   relied upon the correct assumptions.

16          THE COURT:  But it sounds so much more amusing

17   when he gets you to say that.

18          MR. WHITTMAN:  It does.  I agree.

19          MR. DASH:  Your Honor, it was certainly more

20   amusing to me.

21   BY MR. DASH:

22   Q    All right.  Let me ask you to turn to page 4 of your

23   liquidation analysis and I'm sorry, let me get the DCL

24   number for that.  1,100?  1,109?  You with me, sir?

25   A    I am.

1   Q       Yeah.   I just want to confirm that for purposes of

2   your liquidation analysis, you continued to assume that the

3   claim of the PHONES was the 761 million number that we

4   talked about earlier?

5   A       That's correct.

6   Q       And again that was because that's what's reflected in

7   the company's books and records?

8   A       That's correct.

9   Q       And you were instructed by Counsel to accept that

10  number?

11  A       Well, I mean in fact all the numbers listed here,

12  other than the retiree claim settlement I mentioned, are

13  reflective of either the books and records of the company or

14  the books and records as adjusted through the claims

15  reconciliation process.

16  Q       Okay.   Let's go to Exhibit D, to the liquidation

17  analysis report, which is the liquidation analysis itself.

18  And if you could go to page 3 of the liquidation analysis

19  itself, that would be helpful, sir.

20  A       Okay.

21  Q       You there, Mr. Whittman?

22  A       Yes.

23  Q       Okay.   And there are two --

24  A       The page titled Liquidation Methodology?

25  Q       That's correct.

1  A     Okay.

2  Q     That section.  And there are two bullets there, right?

3  A     There are.

4  Q     And in those bullets you tell us that in determining

5  the liquidation value that you present, you assume that all

6  of Tribune's activities, other than its broadcasting and

7  certain Internet activities, would be shut down immediately.

8  A     Yes, that's correct.

9  Q     And the assets of those entities sold piecemeal over a

10 three to six-month period.

11 A     Yes, that's correct.

12 Q     And on your direct you talked about a tail of a year

13 to collect some of those funds?  Remember that?

14 A     Yes.

15 Q     Okay.  And am I right that the assets that you're

16 assuming would be shut down immediately include assets that

17 are generating material free cash flow for the company?

18 A     They are generating free cash flow?  It depends on

19 your definition of material, but yeah.

20 Q     Okay.

21 A     It's a reasonable amount, although declining every

22 year.

23 Q     Okay.  Well, that includes the LA Times, right?

24 A     It does.

25 Q     Sun Sentinel?

```
1   A      Yes.

2   Q      Oakland Sentinel?

3   A      I'm sorry.  What?

4   Q      Oakland Sentinel?  Orlando Sentinel?  Excuse me.

5   A      Yes, the Orlando Sentinel.

6   Q      And the Chicago Times?

7   A      Chicago Tribune.

8   Q      Tribune.  I'm sorry.  Now you didn't look to -- you
```

9   couldn't identify any literature in the valuation world, in

10  the academic or financial world, the legal world, that

11  supported your determination to treat the liquidation of the

12  company, a hypothetical liquidation of the company, in kind

13  of two ways: some going-concern, some shut off the lights,

14  fire the employees on day one and lock the doors.  Remember

15  that?

16  A     I do remember.  The standard basis for a liquidation

17  is to shut the doors.  That is the function of a Chapter 7

18  Trustee is to shut the doors, marshal the assets, and

19  liquidate them as quickly as possible.  If anything it's --

20  the broadcasting is a bit of the outlier in terms of making

21  an alternative assumption.

22  Q     And you told me at your deposition that you didn't

23  perform any analysis to see what the liquidation values

24  would be if you didn't assume that the non-broadcasting and

25  the certain non-Internet assets that you assumed were going

1    to be closed on day one, were maintained and sold on a

2    going-concern basis.

3    A      No, I did not do any analysis of that.

4    Q      And you didn't even consider doing such an analysis,

5    right?

6    A      No, I did not.

7    Q      And is that because, as you told us on direct, that

8    you believe it's typical for a liquidation analysis to be

9    prepared on that basis?

10   A      That's correct.

11   Q      But you were willing to go a-typical when it came to

12   some of the broadcast entities, right?

13   A      I was, although what is a-typical for liquidation

14   analysis is I believe typical for broadcast entities.

15   Q      Okay.  Now Lazard provided you with the values you

16   assume in your liquidation analysis, right?

17   A      They provided me with the going-concern values of the

18   investment entities, you know Food Network, Career Builder

19   Classified Ventures, and the like, and they provided me with

20   the going-concern values of the broadcast entities.  So

21   those are the values they provided me with for the

22   liquidation analysis.

23   Q      And those were values that ended up being included in

24   the February 8 Lazard report, right?

25   A      Yes.

1    Q      Okay.   And those were among the values that you

2    confirmed in that phone conversation you had with Mr.

3    Mandava that we talked about earlier, which you didn't go

4    through specific numbers, but talked generally about whether

5    anything had changed.

6    A      That's correct.

7    Q      Okay.   Now at the time of your deposition, you weren't

8    aware that Lazard had prepared an update to its valuation,

9    what's been called the January update?

10   A      I was not aware of that at the time of my deposition.

11   Q      And more importantly you weren't aware of it at the

12   time you did your report, were you?

13   A      No, I was not.

14   Q      Okay.   And just so we're clear, none of the three

15   reports that you've proffered to the Court, factor in any

16   changes that Lazard may have made to its values.

17   A      As I understand it, Lazard has not changed its

18   valuation.   It's the same, 6.75 billion.

19   Q      Well, you know remember the -- we talked about the

20   minority owned assets at your deposition.   Remember that?

21   A      I do.

22   Q      And [indiscernible], you remember that we concluded

23   when we looked at the January update, that Lazard had

24   increased the value it was assuming for those minority

25   interests by about 360 million.   Do you remember that?

1    A      That sounds correct.

2    Q      But none of that was factored in to any of your

3    reports.

4    A      No, that was not factored in, although neither as I

5    believe from watching the big boards that are sitting over

6    there, when Mr. Mandava testified the reduction in that same

7    analysis for the broadcast entities.

8    Q      Um-hum.  So it netted out?  Is that what you're

9    saying?

10   A      Not netted to zero, but it did reduce the amount.

11   Q      Um-hum.  And let me ask you this --

12   A      Neither one of which would change the outcome of my

13   liquidation analysis conclusion.

14   Q      Okay.  Now when you did your report, your -- you

15   assumed that the broadcasting and other units that will be

16   sold on a going-concern basis, will be sold at a discount of

17   15 to 30 percent.  I think you mentioned that on direct,

18   right?

19   A      Yes, that's correct.

20   Q      Okay.  And you didn't come up with that range, did

21   you?

22   A      I was advised of that range by Lazard and considered

23   the factors and considered that to be a reasonable range.

24   Q      Did you -- did anyone at Alvarez and Marsal do a

25   formal analysis to determine if that range was appropriate?

1    A      Not a formal analysis.  No.

2    Q      Okay.  And in fact, Lazard didn't provide you with any

3    written analysis supporting its determination that a 15 to

4    30 percent discount should be applied, right?

5    A      No.  We discussed the factors that would drive a

6    discount, not the specific analysis.

7    Q      Okay.  You didn't ask for such a written analysis, did

8    you?

9    A      I did not.

10   Q      Okay.  And by the way, that was a blanket discount

11   applied to all of the entities to be sold on a going-concern

12   basis, right?

13   A      That is correct.

14   Q      It wasn't looked at and analyzed on an asset by asset

15   basis, was it?

16   A      It was not.

17   Q      Okay.  Now you told me at your deposition that doing

18   an asset by asset analysis of that issue would lead to what

19   you called false precision.  Remember that?

20   A      I do.

21   Q      In other words, it would have led to too much

22   information for you, wouldn't it?

23   A      I don't -- I would not characterize it that way.

24   Q      Okay.  Now as to the cash generated by the entities

25   that are going to be sold on a going-concern basis, you

1   assume that that cash should be discounted from 30 to 50

2   percent or at least the profits generated by those entities

3   before the sale should be discounted 30 to 50 percent,

4   right?

5   A      I assume that the entities being sold in a distress

6   sale, that that process would take six months, that during

7   that period of time I took the actual results that those

8   businesses had had in terms of profits or losses during the

9   six months -- the first six months of 2010 and I discounted

10  that by 30 to 50 percent, that creating an actual reduction

11  to the liquidation expenses that I have in my liquidation

12  analysis.  If that's what you're referring to, that is

13  correct.

14  Q      Um-hum.  That was a pure judgment call on your part,

15  right?

16  A      That was a judgment call on my part, considering a

17  number of different factors.

18  Q      You prepare any sort of schedule to help quantify how

19  you came up with 30 to 50 percent?

20  A      Not a schedule, no, but as I indicated in my report

21  there would be factors such as needing to have retention

22  bonuses to keep employees in place while the rest of the

23  business was in liquidation, there would be the general

24  distraction of management, you know cut off of any

25  initiatives to improve the business while people are focused

1  on selling the businesses, there would be pressures from

2  competition who would try to steal away customers during

3  that period, and so forth.

4  Q    And the way you got from those subjective factors that

5  you've just identified to the 30 to 50 percent number was

6  your judgment?

7  A    Yes, it was.

8  Q    Okay.  Now let me -- let's go back to the liquidation

9  analysis attached to this Exhibit D.  And you may want to

10  take a look at pages 6 and 7.  At any rate, as in the

11  distributable value report in the liquidation analysis, you

12  assume subordination of the PHONES, right, other than for

13  certain professional fees to the LBO debt?

14  A    I'm not sure I follow the professional fee reference,

15  but I did assume that the subordinated debt, both the PHONES

16  and the EGI Notes, I assumed that they were subordinated to

17  the other third party claims at the parent, if that's what

18  you're referring to.

19  Q    Well, I'm sorry.  If you take a look at the bottom of

20  7 you wrote regarding the PHONES claims that they are --

21  that the value on account of those claims is redistributed

22  to the holders of A, claims under the senior loan agreement,

23  other than those accrued and unpaid amounts for reasonable

24  and documented fees, costs, and expenses of the Senior

25  Lender professionals.

1    A      Okay.  I believe that parenthetical refers to the fact

2    that the amount that I'm using for the senior loan agreement

3    is their claim -- is their petition date claim, which is

4    their principal balance, plus accrued interest and fees

5    outstanding as of the petition date, plus letters of credit

6    that have been drawn, and does not include other amounts

7    that have been incurred by the Senior Lenders during the

8    course of the case.

9    Q      I got it.  Thank you for that clarification, but you

10   assumed in your liquidation analysis, subordination of the

11   PHONES to the LBO Debt?

12   A      Yes.

13   Q      Bridge debt?

14   A      Yes.

15   Q      The Senior Noteholder claims?

16   A      Yes.

17   Q      And other general unsecured claims at the parent?  You

18   see that?

19   A      I think I need to flip to the next page, but that is

20   correct.

21   Q      Okay.  And that includes the trade?

22   A      Yes, it does.

23   Q      Retirees?

24   A      Yes.

25   Q      Swap claim?

1  A      Yes.

2  Q      Okay.  Now your liquidation analysis assumes a

3  conversion to Chapter 7 as of the end of last year, right?

4  A      The analysis in Exhibit D assumes that and I

5  considered the passage of time in my report, to which it's

6  attached.

7  Q      Okay.  And in footnote 3 of your report, if you flip

8  back to that, you note that given the Debtors current cash

9  forecasts, you anticipate that the Debtors' cash balance at

10  the end of March 2011 will be $180 million higher than

11  assumed in the liquidation analysis, right?

12  A      That's correct.

13  Q      And it goes without saying, you didn't update your

14  liquidation analysis to reflect that, did you?

15  A      No, I did not.  I considered it in my conclusion about

16  the best interest test, but I did not update the analysis

17  that's attached.

18  Q      And you would agree with me that under current trends,

19  you would expect that at the end of the following quarter,

20  the end of June or so 2011, that there will be additional

21  cash build, maybe another 100 million?

22  A      Well, there would be additional cash build.  That I

23  would agree with.  I couldn't off the top of my head say if

24  it would be 100 million.  There is a significant amount of

25  cash that's collected in the first month of the year, based

1   on December being a large sales month.  So I don't think it

2   would increase at the same pace, but it would increase.

3   Q     Okay.  Nonetheless, that wasn't factored into your

4   analysis?

5   A     No, it was not.

6   Q     Okay.  Now the liquidation analysis you prepared, as

7   you told us, does not consider claims arising out of the

8   LBO?

9   A     The analysis does not.

10  Q     Okay.

11  A     That is correct.

12  Q     And in footnote 6 to your liquidation analysis report,

13  that's the expert report opining on your liquidation

14  analysis, you wrote the liquidation analysis does not

15  consider recoveries from potential claims arising from the

16  leveraged ESOP transactions described in Article 7a of the

17  general disclosure statement.  My conclusion is based on the

18  assumption that the recoveries from these claims would be

19  substantially similar in either a reorganization or a

20  liquidation and thus do not impact on the comparison of

21  recoveries to Creditors.  Do you see that?

22  A     I do.

23  Q     But it really wasn't your conclusion, was it, or

24  Alvarez and Marsal's to not include the LBO claims in the

25  liquidation analysis?

1   A       I consulted with Debtor's Counsel and --

2   Q       Wasn't Debtor's Counsel -- wasn't it their Decision?

3   A       It was -- they provided me with the assumption not to

4   include the LBO claims in the analysis, although this

5   particular logic and the logic I articulated earlier today

6   is logic that's my logic and I believe is appropriate.

7   Q       Okay.  And here's another place where you didn't ask

8   any of your team members to do any research into the legal

9   or financial literature on this issue, right?

10  A       No, I did not.

11  Q       And you didn't do any research on your own for that

12  matter, right?

13  A       Other than discussions with Counsel, no, I did not.

14  Q       Okay.  And am I right that the only information you

15  had before you on this point was what you were told by

16  Sidley Austin?

17  A       On the point of?

18  Q       Of not including LBO claims in your liquidation

19  analysis.

20  A       I had the instruction from Debtors' Counsel and I

21  think I just had the practical nature that is what I said

22  earlier that in order for -- the purpose of the liquidation

23  analysis is to prove the plan meets the best interest to

24  Creditors test.  In order for the plan to be confirmed the

25  Court needs to provide -- needs to prove and find that the

1   settlement is reasonable and therefore I make the comparison

2   I made earlier today that if I take the liquidation values

3   and add to them the settlement values, the plan is superior.

4   Q    Okay.  Now when you talked on direct about the

5   assumptions you made about the LBO claims, what assumptions

6   did you make about them?

7   A    I'm sorry.  The -- what I just said, that I take the

8   amount of the settlement embodied in the Debtors' plan of

9   reorganization and I add that to the recoveries of the

10  Senior Noteholders and other parties who are benefiting from

11  settlement consideration and I subtract it from the Senior

12  Lenders who are providing the consideration and I make a

13  comparison of the recoveries as adjusted to the recovery in

14  the liquidation analysis to the recoveries in the plan to

15  see that the recoveries in the plan remain superior to the

16  liquidation analysis.

17  Q    For example, you didn't analyze or consider what you

18  thought a hypothetical Chapter 7 Trustee would do with

19  respect to prosecuting the LBO claims, did you?

20  A    And I think that's an open question, although I think

21  the Chapter 7 Trustee would take -- we'd be here doing

22  similar things that we're doing today.  There would be

23  analysis, there would be argument, there would likely be a

24  settlement at some point or maybe there wouldn't be, but

25  that was not a key factor for my analysis.

1    Q      Now based on your experience in the restructuring

2    world, you would agree with me, wouldn't you, that a Chapter

3    7 Trustee would not be incentivized to enter into quick

4    settlements with the LBO Lenders, for example, in order to

5    facilitate a resolution of the liquidation, as the way a

6    Debtor in Chapter 11 might have an incentive to cut a deal

7    that would allow for an emergence from bankruptcy.  You

8    would agree with that, wouldn't you?

9    A      I think that's a generally correct statement, although

10   I'm not sure I would agree that two years is quick.

11   Q      So for purposes of your analysis, you just assumed

12   that the LBO claims should not be considered.

13   A      Based on the logic I just articulated, that is

14   correct.

15              MR. DASH:  Okay.  Your Honor, may I have a

16   moment?

17              THE COURT:  You may.

18              MR. DASH:  Thank you.  Your Honor, I'm finished.

19   Thank you very much.  Thank you, Mr. Whittman.

20              MR. WHITTMAN:  Thank you.

21              THE COURT:  Is there any other cross examination?

22   Redirect?

23              MR. KAPNICK:  Thank you.  Well, Your Honor, I

24   don't want to belabor this witness much more.  I have a

25   couple of points to make, so let me just --

1                              REDIRECT EXAMINATION

2    BY MR. KAPNICK:

3    Q     One that comes to mind is I believe it's the Baltimore

4    Sun Real Estate.  Is that -- do you recall the testimony on

5    that?

6    A     Yes.  There's real estate used by the Baltimore Sun

7    that is owned by Tribune Company.

8    Q     And you relied on an April 2009, I guess it was an

9    appraisal, instead of later information in 2010.  Can you

10   tell the Court why you relied on the later appraisal?

11   A     Yes.  I relied -- the -- sorry -- the April 2009

12   information from Cushman indicated the value of that

13   property at $41 million.  Due to the importance of parent

14   value in this case, I had my own real estate professionals

15   perform -- from A & M, perform a full valuation on those two

16   properties in Baltimore.  They reached a valuation later in

17   2009 of $39 million.  When I received an update from Cushman

18   in 2010, it was approximately $10 million lower than the

19   initial value, however this was a high-level value from

20   Cushman and I considered A, the fact that the A & M

21   valuation was more thorough and B, given the dynamics of the

22   case, the importance of parent value on recoveries, I wanted

23   to err on the side of maintaining the higher value rather

24   than lowering the value, which you know could continue to

25   float and change over time.

1    Q      All right.  And Mr. Dash took you to task a little bit

2    at the beginning of your cross for lacking any experience in

3    publishing, broadcasting, or interactive businesses.  Do you

4    recall that question and answer?

5    A      I do.

6    Q      Did the expert reports that you provided in this case,

7    did they require, in your view, any experience in those

8    areas?

9    A      They do not.

10   Q      And why is that?

11   A      The -- in terms of the parent value analysis and base

12   creditor recovery analysis, that was really a mathematical

13   driven analysis, the same type of recovery modeling that you

14   would perform in any case.  And in terms of expertise on the

15   industry, that really came into place in determining the

16   initial distributable value and that was expertise that

17   Lazard brought to the table in providing that initial

18   distributable value, similar in nature of inter-company

19   claims.  That really was industry agnostic and the

20   liquidation analysis to the extent there were some you know

21   minor -- some industry issues.  They were assumptions that I

22   was informed upon by review of other liquidation analyses

23   from other such cases.

24   Q      Now you recall Mr. Dash discussed with you the updated

25   Lazard January valuation?

1    A      I do.

2    Q      And now after your deposition you've had a chance to

3    review that valuation?

4    A      I've looked at it in part.  I've heard testimony to it

5    here in this Court.  I haven't reviewed it in detail.

6    Q      And as a result of your review, have any of your

7    conclusions changed in any of your reports?

8    A      No, they have not.  The -- you know as I think I

9    mentioned the key factor is what Mr. Dash mentioned in terms

10   of the increase in value of the non-control entities.  There

11   was a corresponding decrease in value of the broadcast

12   entities that partially offset that.  Taken together or even

13   taken apart, neither one of those is material enough to

14   change my conclusions on liquidation analysis and neither

15   one of those taken together or apart would significantly

16   alter the base Creditor recoveries either.

17   Q      And there was some extended testimony on the amount of

18   the PHONES claim and the treatment of the subordination of

19   the PHONES.  You recall that testimony?

20   A      I do.

21   Q      Now you -- did you discuss that dispute in your

22   report?

23   A      I footnoted the fact that there was an ongoing dispute

24   around the amount of the PHONES claim, in my report.

25   Q      And now what is the significance of the dispute over

1   the amount of the PHONES claim?

2   A     The dispute over the amount, between 760 million and

3   approximately 1.2 billion, has as I think I mentioned in

4   terms of determining base recoveries virtually very minimal

5   impact, approximately $700,000 on the Senior Notes.  I did

6   not look specifically at the liquidation analysis, but the

7   impact would be even smaller because the recoveries

8   available to the PHONES prior to applying the subordination

9   are even less, so it would be a smaller impact.

10  Q     And what's the significance of the dispute over the

11  treatment of the subordination of the PHONES claim?

12  A     The treatment of the subordination, the issue there,

13  there's about a million dollars in benefit from the

14  subordination going to the other parent creditors and of

15  that approximately $400,000 relates to the retiree claimants

16  and the other trade claimants of the parent, which I believe

17  is the nature of the dispute or the parties that are in

18  dispute.  And the impact there, the $400,000, approximately

19  $40,000 is a reduction to recoveries of the Senior

20  Noteholders, the remainder coming from the Senior Lenders.

21  Q     And do you recall some discussion of your assumption

22  that the publishing business would be liquidated?

23  A     Yes.

24  Q     And can you tell the Court why did you assume a

25  shutdown of the publishing business as opposed to a distress

1  sale?

2  A     Well, really the -- that is again the nature I think

3  of a liquidation.  That's what you typically do in a

4  liquidation analysis.  That's what I've seen done in

5  liquidation analyses throughout my career, liquidation

6  analyses I reviewed for other publishing businesses, and

7  that really is as I understand it the role and charge of a

8  Chapter 7 Trustee.

9  Q     What would be the effect on your liquidation analysis

10 if you assumed a shutdown and not a distress sale of the

11 broadcasting business?

12 A     That would likely decrease the liquidation value.

13            MR. KAPNICK:  I have nothing further.  Thank you,

14 Your Honor.

15            THE COURT:  Recross?

16            MR. DASH:  Your Honor, may I have a moment?

17            THE COURT:  Yes.

18            MR. DASH:  No further questions, Your Honor.

19            THE COURT:  All right.  Thank you, sir.  You may

20 step down.

21            MR. WHITTMAN:  Thank you.

22            MR. BENDERNAGEL:  Your Honor, you want us to call

23 our next witness or do you want to break for lunch?

24       THE COURT:  Let's break now and reconvene at 1:30.

25            MR. BENDERNAGLE:  Thank you, Your Honor.

1    THE COURT:  Court will stand in recess.

2    (Recess at 12:22 p.m. to 1:36 p.m.)

3    MR. BENDERNAGEL:  Good afternoon, Your Honor.

4  Jim Bendernagel for the debtor.  We call our next and final

5  witness during this phase of our case, Your Honor.  And the

6  witness we would call is Eddy Hartenstein.  I'd ask him to

7  come up to the stand.

8    THE CLERK:  Please remain standing.  Raise your

9  right hand, and place your left hand on the bible.

10  EDDY HARTENSTEIN, SWORN

11    THE CLERK:  Please be seated.  Please adjust the

12  microphone so you can be heard.  Please state your full

13  name, for the record, spelling your last.

14    THE WITNESS:  Eddy, with a Y, Hartenstein,

15  H-a-r-t-e-n-s-t-e-i-n.

16    THE CLERK:  Thank you, sir.

17    MR. BENDERNAGEL:  Your Honor, may I approach with

18  the binders?

19    THE COURT:  You may.

20    MR. BENDERNAGEL:  And before we start, I'd just

21  note, for the record, that the two exhibits that are in the

22  binders contain financial data with respect to the company's

23  future performance, and as a consequence, we would seek to

24  have them treated as highly confidential.  I don't know that

25  anyone's objecting to that, but I just point it out for the

```
 1  record.

 2              THE COURT:  All right.  You may proceed.

 3                      DIRECT EXAMINATION

 4  BY MR. BENDERNAGEL:

 5  Q     Mr. Hartenstein, can you state your name, for the

 6  record?

 7  A     Eddy Hartenstein.

 8  Q     And where are you currently employed?

 9  A     At Tribune Company.

10  Q     And what is your current position at Tribune?

11  A     I am a co-president of Tribune Company.

12  Q     And how long have you held that position?

13  A     About five months.

14  Q     And how many other co-presidents are there?

15  A     There are three others, making four of us.

16  Q     And could you identify who those other co-presidents

17  are?

18  A     Neils Larsen, Don Liebentritt, and Tony Hunter.

19  Q     Now, as I understand it, the co-presidents make up

20  something called the executive council, is that right?

21  A     Yes.

22  Q     What is the role at Tribune of the executive council?

23  A     To effectively function as the CEO of Tribune Company.

24  Q     Now, do each of the co-presidents have separate

25  responsibilities?
```

1  A      Yes, we've made a general division of labor.

2  Q      How has the labor been divided?

3  A      For example, Mr. Liebentritt is the chief

4  restructuring officer.  Excuse me.  Mr. Larsen is head of

5  the broadcasting -- I have water here, thank you.  Mr.

6  Larsen is head of the broadcasting part of the operations

7  and is our chief investment officer.  Mr. Hunter and I have

8  divided up responsibilities among some of the other

9  corporate functions, including the technology organization,

10 the digital organization, the national sales organization,

11 and the publishing businesses.

12 Q      And what are your specific responsibilities vis-à-vis

13 Mr. Hunter?

14 A      Mr. Hunter is overseeing the six smaller publishing

15 concerns of the publishing division of Tribune as well as

16 the Chicago Tribune, and I'm looking over the -- and he is

17 looking over the national sales organization of same.  I'm

18 looking over the technology/digital side of the development

19 and looking over the Los Angeles Times.

20 Q      Now, the executive committee's been functioning for

21 about five months, is that correct?

22 A      Yes.

23 Q      How would you characterize its success to date in

24 performing the role of CEO?

25 A      Pretty good.

1   Q      And why do you say that?  What benchmarks are you

2   using?

3   A      I'm looking how we closed out the year of 2010 and

4   looking how we are dealing with day-to-day decisions that a

5   CEO, normally a single person, oftentimes shared

6   responsibilities, would operate the company.  We deal with

7   problems as they arise.  We try to make adjustments and meet

8   the challenges that we face in the marketplace.

9   Q      Now, in addition to your job as co-president, do you

10  have another job?

11  A      Yes.

12  Q      And what is that?

13  A      Publisher and CEO of the Los Angeles Times.

14  Q      And what are your responsibilities in that position?

15  A      To oversee the day-to-day operations of the Los

16  Angeles Times -- actually Los Angeles Times Media Group,

17  which includes its flagship Los Angeles Times and a number

18  of community newspapers in the southern California area.

19  Q      And when did you first join the Los Angeles Times?

20  A      That would've been August of 2008.

21  Q      Prior to August of 2008, had you worked for the

22  Tribune Company or any of its affiliates or subsidiaries?

23  A      No.

24  Q      Did you have any involvement in the LBO that's at the

25  core of this proceeding?

1    A      No, sir.

2    Q      Could you describe your employment history prior to

3    joining the LA Times in August of 2008?

4    A      I started after I graduated from college at a company

5    called Hughes Aircraft Company, which then morphed into,

6    during the Cold War, Hughes Electronics.  And then, from

7    there, was involved in the formation and the founding of the

8    wholly owned subsidiary of Hughes Electronics, which in, in

9    turn, owned by General Motors at the time, in 1990, of

10   DirecTV, and I ran that until basically all of the rest of

11   Hughes Electronics was sold off, and the final piece,

12   DirecTV, was sold to News Corp in 2004.

13   Q      And what have you done sine 2004?

14   A      I went into semi-retirement there, and then, back into

15   full-time employment in August of 2008 with Tribune.

16   Q      Have you served on various boards of directors?

17   A      Yes.  In the interim there, I served on a number of

18   publicly traded in a very large non-profit.

19   Q      Okay.  Could you provide the Court with a brief

20   overview of the company's businesses, at this point in time?

21   A      Tribune Company is basically separated into three

22   major divisions: the broadcast holdings, the publishing

23   holdings, and the other minority investments that we have in

24   other media properties.

25   Q      Let's talk for a minute about the publishing business.

1  What are the major assets of the publishing business?

2  A     There are eight publications: The Los Angeles Times,

3  The Chicago Tribune, The Orlando -- not Oakland --

4  (Laughter)

5  A     -- Sentinel.  There's a south Florida paper,

6  Allentown, Newport News, and Baltimore.

7  Q     And how, generally, would you describe the current

8  performance of the publishing assets?

9  A     The publishing assets are in a very challenging

10  environment.  All publishing across the United States, and

11  even across the world, is experiencing the kinds of problems

12  that you -- that we are experiencing as well, and that is

13  primarily one of declining advertising revenues.

14          MR. ZENSKY:  Your Honor, I'm going to move to

15  strike that answer.  It went well beyond the scope of the

16  question.  It was -- the question was directed to the

17  Tribune publishing assets, and I believe the witness gave an

18  answer about the state of the industry generally.  I don't

19  believe there's a foundation for that, and I don't think

20  it's responsive to the question.

21          THE COURT:  So, Mr. Zensky, let me ask you this.

22  While you might be technically correct, is there any dispute

23  about what the witness just said?

24          MR. ZENSKY:  Your Honor, I'm not trying to be

25  difficult, but the answer was in such broad generalities,

1  there may be not, depending on how one interprets his

2  answer.

3              MR. BENDERNAGEL:  Well, let me dig deeper, Your

4  Honor.  That --

5              THE COURT:  Go ahead.

6  BY MR. BENDERNAGEL:

7  Q    Just looking at Tribune for a moment and putting aside

8  the overall industry, what are the major challenges as you

9  see Tribune's publishing business facing on a go-forward

10 basis?

11 A    The major challenges are three-fold.  Primarily, it's

12 the still decreasing amount of print advertising revenue,

13 which has been in decline for almost five years now.  The

14 beginning of 2011 has no exception to that rule.  It is

15 continuing as such.  And it is a state that we, at Tribune,

16 have pretty much cut out all of the costs that we're able to

17 cut out.  The Los Angeles Times, as an example, went from,

18 in the early '90s, three printing plants down to two

19 printing plants.  And just in the last year, we have

20 consolidated everything into one, single printing plant, as

21 an example.  We have cut just about every other department

22 cutable.  We are down to the bone, if you will.  And it is

23 that minimalist operation against which we are still seeing

24 declining ad revenues on the print side.

25 Q    And what does that do to your EBITDA margins?

1  A      Oh, it decreases them.  The second challenge is to try

2  to raise the digital revenues -- online advertising and

3  other digital forms of revenue -- to offset those.  We

4  haven't yet been able to do that.  Not only us, but we are

5  looking at other models in the industry to do that and still

6  do not see anybody that's been able to do that.  And

7  finally, we are, you know, hampered and hobbled by the fact

8  that we're still in bankruptcy.

9  Q      Now, what has been the impact of bankruptcy on your

10 ability to meet the challenges?

11 A      Well, I believe, and the trend is such, that there is

12 consolidation in this industry, specifically in publishing.

13 We're not able, as you often do in consolidation types of

14 environments, to assimilate partners easily.  Ones who are

15 in bankruptcy and otherwise encumbered are pretty toxic to

16 potential other partners, and we are not able to move as

17 quickly as we can.  There's not a sales call that any of our

18 sales associates make where the first half-hour isn't

19 consumed about, well, what's going on in bankruptcy?  When

20 are you coming out?  When are you guys whole again?  So it's

21 very distracting, and it does prevent us, in large part,

22 from making the kinds of consolidations that I think the

23 rest of the industry is making and that we need to make to

24 try to move forward and get out of this ad revenue decline.

25 Q      Why, in your view, is it necessary to consolidate?

1  A     I think it's necessary because we need to scale better

2  than we are.  Even with one printing plant and one fixed set

3  of infrastructures, it is with both declining ad revenues

4  and somewhat declining circulation revenues, not as

5  efficient as it could be.  And in order to improve those, I

6  think we need to scale better than we're able to scale

7  today.

8  Q     Okay.  Now, let's talk about the broadcasting industry

9  -- business at Tribune.  What are the major assets of the

10 broadcasting business?

11 A     The major assets are the 23 television stations,

12 broadcast stations that we have.  We're in three of the

13 largest markets of the U.S. -- New York, Los Angeles, and

14 Chicago -- and then 20 other broadcast stations.

15 Q     And what are the major challenges facing the broadcast

16 business that you have at Tribune?

17 A     I think, perhaps not as immediately pronounced as

18 publishing, but nevertheless challenged for eyeballs, there

19 are a plethora of new devices on which people are able to

20 view video, not just your television set at home, but your

21 computer, your PC, and the new tablet and mobile devices are

22 increasingly becoming a challenge for attention for

23 viewership.

24 Q     How do the cost structures of these new mediums

25 compare to Tribune's cost structure in the broadcast sector?

1  A      Oh, on the broadcast side, it's very expensive to

2  maintain a broadcast transmitter, a tower, the engineering

3  that goes with that, as opposed to merely putting up your

4  content online.  There's quite a huge difference in

5  infrastructure cost.

6  Q    What impact has the bankruptcy had on Tribune's

7  ability to deal with these types of issues in the broadcast

8  business?

9  A      I think, in many ways, similar to on the publishing

10 side, in broadcasting, as in publishing, it's all about

11 content, so you're looking to make differentiated content,

12 better content.  To do that, oftentimes, it's best to make

13 partnerships, as opposed to creating something new

14 organically.  It's more cost-effective.  And again, when it

15 comes to partnerships, it's very unattractive to be partner

16 to go to the dance, per se, and be under the cloud of

17 bankruptcy.

18 Q    Now, you indicated that the third major segment was

19 the minority holdings, do you recall that?

20 A      Yes.

21 Q    Could you remind the Court what the major minority

22 holdings are that Tribune has?

23 A      The major minority holdings would be in classified

24 ventures in the Food Network on the television side.

25 Q      And how has the bankruptcy affected your minority

1   holding interest?

2   A      Well, we -- because of being partners, we had to keep

3   those entities or our minority ownership in those out of

4   bankruptcy, and it makes it very difficult when there are

5   other opportunities to either grow those or perhaps

6   participate in the new offshoots of those or brand-new

7   third-party ventures with -- of a minority interest when

8   you're in bankruptcy.  It makes it cumbersome, and it's

9   awkward.

10  Q      Now, I take it, from your comments, that you think it

11  would be a good idea to get out of bankruptcy, is that

12  correct?

13  A      Yes.

14  Q      Can you explain to the Court why you think it would be

15  a good idea to get out of bankruptcy?  What's specific

16  things do you see as the -- what specific benefits do you

17  see arising as the result of an exit, at this juncture?

18  A      Well, business in the media space is very competitive.

19  And I feel, for the time that I have been there -- I was

20  barely there for three months when we were put into

21  bankruptcy -- that we are trying to compete with our feet

22  cast in cement, with our hands tied -- handcuffed behind us.

23  I feel that we have seen much of the competition move by us,

24  and we need to do everything we can to catch up and try to

25  overtake them, to make for a brighter future.

1  Q     Now, what impact has the bankruptcy had on your

2  ability to attract and retain talent?

3  A     It's been very, very difficult.  As the economy shows

4  signs of coming out of the recession that we've been in,

5  there are a few more jobs available, especially in media,

6  than there were before.  The third leg of compensation for

7  media companies, as with many others, is equity.  There's

8  base salary.  There's a bonus structure, based on incentive

9  and performance.  And there's also long-term equity.  We

10 have been in bankruptcy, and we are not able to, either for

11 current or prospective new employees, offer that very

12 crucial third leg in the war for talent, the attempt to

13 attract world-class people in the fields that we need.

14 Q     What has been the effect of the cost of the bankruptcy

15 on Tribune's performance?

16 A     Well, there's an obvious dollar effect, and one need

17 only count the heads in this room and the hours spent in

18 this courtroom, no disrespect, Your Honor, to know what

19 the --

20           THE COURT:  Not to me.  I'm the cheapest guy in

21 the place.

22 (Laughter)

23           THE WITNESS:  -- you know, to what the monthly

24 drain is for us.  But there's the distraction as well.

25 There's the distraction of many executive's times, not just

1  myself.  I wish it were only me.  We could dispense with

2  this sooner, but it's an enormously distracting time.  And

3  it is also, as you indicated, for our current employees, in

4  the ability to retain them, a debilitating cloud that hangs

5  over their head every morning when they get up and find out

6  that there's still no room -- still no news from Wilmington

7  that we have emerged.

8  Q    Now, you're aware there are two plans before the

9  Court, is that correct?

10  A    Yes.

11  Q    The DCL plan and the noteholder plan, is that

12  consistent with your understanding?

13  A    Yes.

14  Q    Both of those plans provide, if they were to be

15  approved, for an exit from bankruptcy?  Are you aware of

16  that?

17  A    Yes.

18  Q    From a business perspective, which plan do you prefer?

19  A    The DCL plan.

20  Q    And why is that?

21  A    There's basically no comparison.  The DCL plan gets us

22  out.  We're clean.  Subject some procedural machinations

23  upon confirmation, we're basically on a path to emergence,

24  operating as a normal company, competing, being able to

25  compete as a normal company, going forward.  The noteholder

1  plan offers, perhaps technically, an emergence, but in

2  reality, leaves us with an almost 65 percent of the equity

3  of the company that is emerged still in a trust, still bound

4  by parties on both the board, and in terms of control, not

5  able to do the kinds of partnerships, not able to do the

6  kinds of normal business transactions that our competitors

7  would make.

8  Q    Does -- in your -- from a business perspective, what

9  is your view as to the impact that the noteholder plan might

10 have on the ability of the emerging company to attract

11 talent?

12         MR. ZENSKY:  Objection, Your Honor, foundation --

13         THE COURT:  Any --

14         MR. ZENSKY:  -- speculation.

15         THE COURT:  -- response?

16         MR. BENDERNAGEL:  He's testified that one of the

17 problems they're facing is the ability to attract and

18 maintain employees, and the question is, does he have a view

19 as to what the impact of the noteholder plan structure will

20 be on that issue.

21         THE COURT:  Need to lay a little more foundation.

22         MR. BENDERNAGEL:  Okay.

23 BY MR. BENDERNAGEL:

24 Q    You indicated that there was an awkward ownership

25 structure in the noteholder plan, is that correct?

1   A      Yes.

2   Q      What is your view as to the impact of that awkward

3   ownership structure on the ability of the company to

4   maintain and recruit employees?

5   A      In the simplest terms, it would leave us, the

6   noteholder plan, with a very undefined ownership interest.

7   There's, like, the proverbial man behind the curtain: you

8   don't really know what's there.  A potential partner of ours

9   could come on board, want to do a deal, as with any

10  investment, would normally want an exit plan, a path to

11  liquidity.  And if that 65-percent equity of the company is

12  something that isn't controlled by a normal board and normal

13  governance, it is going to scare away the potential partners

14  that we may have, having them choose, perhaps, someone else

15  that is far less encumbered and far more easy to deal with,

16  with far more certainty.  That, in turn, would be a huge

17  disincentive for getting new, bright employees that we need

18  to lead us in the new digital domains that we need to lead

19  in.  And upon comparing us as a potential employer, with

20  that kind of awkward and cumbersome and slow governance,

21  they would quickly choose somewhere else to go, if all other

22  things were equal.

23  Q      Now, Mr. Hartenstein, under the DCL plan, there is a

24  provision that prevents the litigation trust from pursuing

25  certain LBO-related claims against current company

1   employees.  Are you familiar with that provision?

2   A     Yes.

3              MR. ZENSKY:  Objection, I think -- Your Honor,

4   I'm sorry.  I think a foundation has to be laid before Mr.

5   Bendernagel leads him through the terms of the plan.

6              MR. BENDERNAGEL:  I wasn't going to lead him

7   through the terms of the plan.  I was going --

8              THE COURT:  Overruled.

9              MR. BENDERNAGEL:  -- to ask him his

10  understanding.

11             THE COURT:  You may answer, sir.

12  BY MR. BENDERNAGEL:

13  Q     What's your understanding of that -- of how that

14  provision works?

15  A     It exempts, up to the first $100,000 of -- it exempts

16  up to $100,000 for current employees who redeemed shares,

17  equity, as a part of the step-two transaction.

18  Q     Now, do you -- from a business perspective, just

19  running the company on a day-to-day basis, what, if any,

20  advantages exist as a result of this provision?

21  A     Well, to those employees that are under -- or redeemed

22  under $100,000, it takes the cloud away from over their

23  heads of worrying that the company that they are loyally

24  working for is going to end up clawing back some of those

25  for things and transactions they made, where they did no

1   wrong.  And for the others that are redeemed over 100,000,

2   of which there are still many, many of which are my direct

3   employees, it at least mitigates the first 100,000 of that

4   claim.

5   Q    And what impact do you perceive that having on

6   employee morale?

7   A    To those for the under-100,000 class, it's a great

8   burden off of their shoulders.  It's a good morale booster.

9   And to the extent that it affects the others, there's at

10  least 100,000 less that they have to worry about.

11  Q    Now, I'd like you to ask you some questions concerning

12  the company's operating plans and projections.  Now, it's my

13  understanding, based on the testimony you provided last

14  November on the MIP, that each year, the company presents or

15  develops an operating budget.  Is that correct?

16  A    Yes.

17  Q    Could you briefly describe, because I've known you've

18  done this before, the process by which that operating budget

19  is developed?

20  A    Every year's operating budget begins in the fall,

21  usually in the October timeframe.  It is a business-unit-by-

22  business-unit, bottoms-up operation that comes from every

23  general manager of every broadcast station from every

24  publisher of every publishing entity, every newspaper

25  organization, and it is -- works its way up, with an interim

1  set of interactions with corporate, the corporate finance

2  group, sort of normal tension that you would see between a

3  corporate finance organization and a business unit.  There's

4  some iteration that is done on that plan, and it is

5  ultimately rolled up and presented to the board of directors

6  for approval.

7  Q    Now, what has been your role in that process?

8  A    Well, prior to October of last year, when I became the

9  co-president, I was merely one of the business units, The

10  Los Angeles Times, and participated in that side of the

11  development, as a business unit.  Since October, which would

12  include the rollup to the 2011 business plan, I've been on

13  both sides.  At the corporate side, I've been on the side

14  over-viewing each of the publishing organizations, and then

15  providing an overview for the support functions at corporate

16  as well as the aggregated broadcast entities on the

17  broadcast side.

18  Q    I take it, from your answer, that this process you

19  described for the operating budget was followed this past

20  fall, is that correct?

21  A    Yes.

22  Q    And if you could open your binder to the first

23  exhibit, DCL Exhibit 1101, do you recognize this document?

24  A    Yes, I do.

25  Q    And what is this document?

1    A       This is a presentation that we made to the board of

2    directors on February 2, 2011.

3    Q       Now, if you look at the very first page of the

4    document that has the base numbers PRB1233272-R, it states

5    "Tribune Company board of directors 2010 operating

6    performance update".  Do you see that?

7    A       Yes.

8    Q       And that section goes over to, I believe, page 286.

9    Do you see that?

10   A       Yes, I do.

11   Q       And just so the record's complete, can you just

12   generally describe what's going on in the first 14 or 15

13   pages of this exhibit, this section we've just identified?

14   A       This was February 2, so the year was only five weeks

15   old.  This reviewed and summarized the full year 2010

16   results for the board.

17   Q       So, by this point in time, you had full-year results,

18   is that --

19   A       Yes, we did.

20   Q       -- correct?  Now, if you turn to page 286, there's

21   another divider that says "Tribune Company board of

22   directors 2011 operating plan February 2, 2011".  Do you see

23   that?

24   A       Yes, I do.

25   Q       And what is the remainder of this document, Mr.

1  Hartenstein?

2  (Laughter)

3  A    This is the -- basically, the presentation of the 2011

4  management-recommended operating plan and some support

5  materials augmenting that towards the end.

6  Q    Now, was the operating plan that's embodied in this

7  document approved by the board --

8  A    Yes, it was.

9  Q    -- by February 2?

10  A    Yes, it was, on February 2.

11  Q    If you could, take a look at page -- it has the last

12  three numbers 291.  It's titled "Summary financial

13  comparison 2011 versus 2010 actual".  Do you see that?

14  A    Yes, I do.

15  Q    Could you explain to the Court what this page depicts?

16  A    This is the one-page summary of the 2011 plan.  It

17  contrasts it to the 2010 actual performance in the final

18  columns, showing a year-over-year change in each of the

19  major revenue expense categories, culminating in operating

20  cash-flow.

21  Q    Now, the operating cash-flow for 2010 is what number?

22  A    For 2010 was 636 million.

23  Q    And what is the operating cash-flow that's projected

24  for 2011?

25  A    For the plan, it's 497 million.

1   Q      That's about $140 million lower, is that correct?

2   A      Yes, it is.

3   Q      What accounts for the fact that you're expecting to do

4   less in the way of operating cash-flow in 2011 than in 2010?

5   A      I think you can see, if you look at the far-right

6   column, the significant changes there are basically in

7   advertising revenues on both the publishing and the

8   broadcasting side.

9   Q      And what -- and specifically, what is the forecast for

10  advertising revenues that's embedded in this plan for those

11  two segments?

12  A      Publishing advertising is alone five percent -- or

13  plan is five percent down from 2010; broadcasting, three

14  percent down.

15  Q      Now, what -- how did you come up with those numbers?

16  A      Those were a function of the bottoms-up plan, as I

17  described before, to the -- for the 2011 plan that went

18  through business-unit-by-business-unit on both the broadcast

19  and the publishing side.

20  Q      Now, if you take a look at the next page, page 292,

21  there's a bridge from the 636 to the 497, correct?

22  A      Yes.

23  Q      And can you just walk the Court, basically, through

24  the bridge, and explain what the major drivers of the

25  difference are?

1  A    Well, the very first is up on the top line that's

2  actually boxed in there.  There's almost $50 million -- $47

3  million of non-cash-pension expense, followed on the

4  publishing by an almost 11-precedent reduction in total

5  publishing revenue, and a 5-percent reduction in

6  broadcasting revenue.

7  Q    Now, just in this non-pension expense, can you explain

8  to the Court, in general terms, what this $47 million is all

9  about?

10  A    This is an accounting change that is dictated by our

11  accountants and gap in terms of how we have to treat the

12  pension expense.  It's a new change that was brought in for

13  2011.  It also has partly to do with fresh account -- or

14  fresh-start accounting, excuse me.

15  Q    Okay.  Now, if you turn to the next page, 293, there's

16  another chart that says "summary financial comparison 2011

17  plan versus preliminary plan".  Do you see that?

18  A    Yes, I do.

19  Q    And what is this document showing to the board?

20  A    This showed a preliminary -- well, again, the 497, the

21  first column there, the 2011 plan, shown against a

22  preliminary 2011 plan.  That preliminary 2011 plan was one

23  that was, in the interim step, almost the first iteration,

24  if you will, of the rollup coming from the direct business

25  units.  And we had shared that, on a very preliminary basis,

1    with the board in December.

2    Q      And so, what you were trying to show here is the

3    difference between what you showed the board in December and

4    where the operating plan eventually shook out, is that

5    correct?

6    A      Yes.

7    Q      And it shows that the projected operating cash-flow

8    had gone from 550 in December to 497.  Am I --

9    A      Yes.

10    Q      -- reading that correctly?

11    A      Yes, you are.

12    Q      What accounts for that difference?

13    A      Well, if you look again, on the far-right column,

14    again, in the late November/early December, we did not have

15    benefit of December results.  And if you notice, it had

16    total advertising -- or excuse me, total publishing

17    advertising down two percent; total publishing revenues down

18    zero percent there, line four; total broadcasting revenue

19    actually up one percent.  And the difference in time between

20    what was the, perhaps, optimism of the individual business

21    units coming up and the reality of what December did, which

22    was down from what we expected, what January did, what we --

23    was down from what we expected.  We took those down.

24    Q      Now, if you take a look at page 278, which was part of

25    the presentation to the board regarding 2010, there's a

1  chart entitled "publishing advertising trends".  Do you see

2  that?

3  A    Yes, I do.

4  Q    Could you walk -- could you explain to the Court what

5  this particular document is attempting to portray?

6  A    Well, in four separate graphs here, these represent,

7  in descending order of magnitude from chart one through

8  four, the four major categories of publishing advertising:

9  retail, national, classified, and online.  And in the three

10  largest, being the first three, you can see the trend.  The

11  far-right bar is December of 2010 in each of those, and you

12  can see, they are all down, trend-wise, both in absolute

13  terms and what we had expected.  Only online, which while it

14  was up is, nevertheless, the smallest by far of these four

15  categories, was up slightly.

16  Q    Now, on the three lines that you identified -- the

17  first three charts, the horizontal axis, which is listed at

18  zero, if I am to read this chart, represents 2009

19  performance, is that correct?

20  A    Yes.

21  Q    And if the bar goes down, below zero, what is that

22  meant to depict?

23  A    It means you're worse off than the previous year, by

24  the percentage indicated on the Y axis.

25  Q    And if it goes above the zero line, what does that

1  mean?

2  A     Then you're exceeding performance for the previous

3  year.

4  Q     All right.  How would you characterize the performance

5  in 2010, in terms of these categories, compared to 2009?

6  A     Well, they are down.  They are down specifically in

7  the biggest month of the year that we have, and while I sat

8  on this bench and said that we were doing well, we didn't do

9  as well as we had hoped in December, based on the

10  advertising revenues that we garnered.

11  Q     Now, if you take a look at page 300, there's a chart

12  entitled "January 2011 revenue trends".  Do you see that?

13  A     Yes.

14  Q     And can you explain to the Court what this particular

15  slide is attempting to show?

16  A     Well, it's attempting to show a couple of things.  If

17  you focus, first, on chart one and chart two, those

18  respectively show the week-by-week results for advertising

19  revenues: chart one, publishing; chart two, national;

20  advertising.  And the top two are publishing, and you can

21  see that both December -- and again, this is week by week,

22  and the first four of five weeks of January, in terms of how

23  we account, are down, year over year.

24  Q     Now, how would you characterize the performance in

25  January?  Is it --

```
 1   A      Just --

 2   Q      -- strong, weak, or what?

 3   A      Weak.

 4   Q      And was that expected --

 5   A      No.

 6   Q      -- by the company?

 7   A      No, it was not.

 8   Q      What do you attribute the weak performance to?

 9   A      All I can say is we tried our best.  The market was

10   disappointing for us, and many of our peers, in the first

11   week coming out of the holiday season, which also showed

12   less promise than we had expected.

13   Q      One last set of charts.  If you could, go to page 297

14   of this document.

15   A      Okay.  I didn't answer chart three --

16   Q      Oh, okay.

17   A      -- on that page, if you --

18   Q      I'm sorry.

19   A      -- wanted to.

20   Q      No, no, no.  Why don't you tell me what chart three

21   is?

22   A      I'm back on chart -- Bates #300, or the last three

23   digits of Bates 300.  That shows our broadcasting

24   advertising case, again, through week four of January.  And

25   for, you know, a little more than half of our broadcasting
```

1   properties listed along the Y axis by the market, we're up

2   slightly from the year before, you know, as much as three

3   percent, as little as one percent -- or a tenth of a

4   percent.  But the -- you know, the tail end, out to the

5   right there, including our three biggest markets -- New

6   York, Chicago, and Los Angeles -- are flat to down two

7   percent -- excuse me.  The decimal point is off: 22 percent.

8   So again, a trend, even on broadcasting, that was down year

9   over year, to start this year off.

10  Q    And just so it's clear on the record, when you were

11  describing the stations that had exceeded performance, you

12  indicated that the range was from what to what?

13  A    I apologize.  I misread the decimal.  As low as 1

14  percent to up to 32 percent.

15  Q    Okay.  Thank you.  Now, if you could go to page 297 --

16  well, before I move on to that, what do you attribute the

17  softness in your major markets on the broadcast side to?

18  A    The larger markets, whether they be on the publishing

19  side or broadcasting side, were more challenged, in terms of

20  some of the national advertisers, the broad-based, national

21  companies that spend advertising dollars.  We were just

22  down, across the board, in our larger markets.

23  Q    Do you have a sense of how February's doing?

24  A    February is also challenged, not quite as bad as

25  January, but so far, through the year, the first about eight

1  weeks now, we're behind plan, the very plan I said that, you

2  know, just a few moments ago that we believe is accurate for

3  2011.  We're going to have to work hard to make that up in

4  the latter part of the year.

5  Q      All right.  Now, if you take a look at page 297,

6  there's a chart "third-party publishing ad revenue

7  projections".  Do you see that?

8  A      Yes, I do.

9  Q      Would you explain to the Court what you're attempting

10  to depict on this page?

11  A      These are some macro trends that we see from a variety

12  of industry sources that we list with each one of those

13  there.  They're down as much as seven percent on the first

14  half of the graph, industry research, to you know, as low as

15  -- or as little as one percent down.  This is data that we

16  looked at in terms of other non-internal-Tribune data to

17  help us formulate our projection and validate our plan going

18  forward for 2011.

19  Q      Okay.

20  A      Excuse me.

21  Q      And how does Tribune's projection for 2011 compare to

22  this data?

23  A      Well, again, we're somewhere in the middle.  We're

24  right about five percent, which is our 2011 plan, and it's,

25  as I said, right in the middle of those industry research

1 projections.

2 Q    And now, if you could, take a look at the next page,

3 398.  It's entitled "third-party broadcasting ad revenue

4 projections".  Do you see that?

5 A    You mean 298, right?

6 Q    298, I'm sorry.

7 A    That's okay.  This is the same for broadcasting, where

8 we are, again, on the left, looking at anywhere from 3

9 percent to a little north of 11 percent down in terms of

10 industry research, looking at what 2011 looks like.  With

11 respect to the Tribune plan for 2011, we are in our -- you

12 know, we are, again, with our plan, looking at about 3

13 percent down, and the indicator there is a mix between --

14 there's a little bit of cycling in the broadcasting

15 business.  There's a huge up in 2010 because of it being a

16 political year, and 2011 is not a general election year, so

17 we had to modulate that as well.

18 Q    Okay.  And I'd like to switch gears and talk a little

19 about the long-term projections that the company has.  Are

20 you with me so far?

21 A    Yes.

22 Q    If you could, take a look at the next document in your

23 binder.  Are you there?

24 A    Yes, 1490?

25 Q    Yeah, that's DCL Exhibit 1490, is that correct?

1  A     Yes.

2  Q     What is this document?

3  A     This is a document that Lazard prepared.

4  Q     And what does it show?

5  A     It shows a five-year plan, going from 2010 to --

6  through 2014 of Tribune Company.

7  Q     And who prepared that plan?

8  A     Lazard.

9  Q     Who prepared the underlying forecast, though, as

10 opposed to the document?

11 A     Oh, the underlying forecast for 2010, which was

12 partly, you know, actual, was prepared by Tribune.

13 Q     And how about the out-years?  Who prepared that?

14 A     The out-years were also prepared by Tribune.

15 Q     And who specifically at Tribune worked on that?

16 A     Well, that would be the corporate finance department.

17 Q     And who -- could you identify who leads that --

18 A     Certainly.

19 Q     -- organization?

20 A     Chandler Bigelow, the company's CFO.

21 Q     Now, did Mr. Larsen have any involvement in these --

22 A     Yes, he did.

23 Q     And what was his role?

24 A     His role in preparing that was -- and again, this was

25 prior to the formation of the executive committee, was to

1  prepare -- or help prepare this, as his prior role at the

2  company of being chief investment officer, and looking at

3  the future plans, in conjunction with Mr. Bigelow.

4  Q    Now, since you've become one of the co-presidents,

5  have you had occasion to review this projection to determine

6  whether, in fact, it was consistent with your views of the

7  future?

8  A    Yes, I have.

9  Q    And what have you concluded in that regard?

10  A    It, at this time, still represents, far and away, the

11  best forecast I have with all the information I have in

12  front of me, looking forward, for the performance of

13  Tribune, going forward.

14  Q    Now, in the course of this proceeding, there's been

15  criticism leveled at the publishing forecast, saying it's

16  too conservative.  Are you aware of that?

17  A    I am.

18  Q    And what's your reaction to that criticism?

19  A    Well, I think it's, you know, unwarranted.  We have

20  very carefully looked at not only our own performance but

21  industry trends.  I think we are faced with a lot of

22  challenges that I enumerated for you before.  There's a lot

23  of hope for digital perhaps somehow being the Holy Grail and

24  the Hail Mary here, but no one yet, including us, has

25  figured out a way to make digital revenues and online make

1    up anywhere near close to what the offsets we're seeing and

2    the decreases we're seeing on print revenue.  So I do think

3    this is the best plan, going forward.

4    Q    Now, this forecast shows fairly significant revenue

5    declines over the next five years.  Is that a fair

6    characterization in the publishing area?

7    A    Yes.

8    Q    And if those forecasts come true, and you're not able

9    to find a solution, what's the long-term prospects for the

10   publishing business?

11   A    Not good.

12   Q    Now, if you get out of bankruptcy, what's the impact

13   of emerging from bankruptcy on your ability to deal with

14   this challenge?

15   A    It will allow us to immediately and very quickly begin

16   a better -- have a better shot at making consolidation

17   plays.  We have to look at doing things not so much

18   organically as, perhaps, we have in the past and doing

19   things with partners -- acquiring companies, merging with

20   companies, partnering with companies -- none of which you

21   can do effectively, quickly, and timely to be the first

22   mover if you are hobbled under either bankruptcy or an

23   emergence plan that, you know, has those same impediments.

24   Q    Now, is it your testimony that if you get out of

25   bankruptcy free and clear that you're necessarily going to

1  turn this company around?

2  A    Oh, no, but we have a far-better shot of doing so if

3  we are.

4       MR. BENDERNAGEL:  Your Honor, I have nothing

5  further, at this juncture.

6       THE COURT:  Cross examination?

7       MR. ZENSKY:  May I approach, Your Honor?

8  (No audible response)

9       THE WITNESS:  Thank you.

10       THE COURT:  Thank you.

11       MR. ZENSKY:  Good afternoon, Mr. Hartenstein.

12  For the record, David Zensky of Akin Gump Strauss Hauer &

13  Feld for Aurelius and the noteholder plan proponent group.

14  Your Honor, the notebook I handed up contains one of the

15  same documents that Mr. Bendernagel used and three others

16  that I believe the debtors would also characterize as

17  containing highly confidential information, and I'm sure,

18  would request that they receive the same treatment.

19       MR. BENDERNAGEL:  That's true, Your Honor.

20       THE COURT:  All right.  Proceed.

21            CROSS EXAMINATION

22  BY MR. ZENSKY:

23  Q    Good afternoon, sir.  Can you tell the Court who

24  Maggie Wilderotter is, please?

25  A    She is a member of the current board of Tribune.

1    Q     Okay.  And did there come a time in early 2010 where

2    she arranged a meeting for you with Jimmy Lee?

3    A     She suggested I place a phone call to him.

4    Q     Okay.  And you tell -- can you tell the Court who that

5    is -- Mr. Lee?

6    A     Mr. Lee is the vice-chairman, I believe, of JPMorgan.

7    Q     Okay.  And did you place the call that she suggested?

8    A     Yes, I knew Jimmy Lee before my employment at Tribune.

9    Q     Okay.  Could you look at the first document in your

10   binder, sir, which is Noteholder Plan Proponent Group

11   Exhibit 756?  Do you have that in front of you, sir?

12   A     Yes, I do.

13   Q     Okay.  Do you recognize this as an e-mail from Ms.

14   Wilderotter to yourself on --

15   A     Yes.

16   Q     -- February 11, 2010?

17   A     Yes, I do.

18   Q     Okay.  Do you recall receiving it?

19   A     Yes, I do.

20   Q     Okay.  Does this relate to the conversation we were

21   just talking about?

22   A     Yes, it does.

23   Q     Okay.  In the second sentence, Ms. Wilderotter said

24   about Mr. Lee: "He is the person who put The Tribune

25   financing together when Sam bought the company."  Do you see

1   that, sir?

2   A      Yes.

3   Q      Okay.  And is that your understanding of Mr. Lee's

4   role?

5   A      Yes.

6   Q      Okay.  And did you ever discuss that topic with Ms.

7   Wilderotter, Mr. Lee's role in the financing, when Mr. Zell

8   bought the company?

9   A      No, she only mentioned it to me in passing.

10  Q      Okay.  Understood.  In the same sentence, she also

11  said that he is the lead on this bankruptcy reorganization.

12  Do you see that?

13  A      Yes.

14  Q      Okay.  And is that consistent with your understanding?

15  A      Well, I think he's the lead with respect to JPMorgan,

16  or at least it has his attention there.

17  Q      Okay.  Fair enough.  What came of the conversation

18  that you had with Mr. Lee in or around February 2010, sir?

19  A      He suggested that I talk to Miriam Coolness [ph].

20  Q      Okay.  And did you, in fact, speak to her?

21  A      Yes, I did.

22  Q      Okay.  And what was the nature of those conversations

23  -- or that conversation?

24  A      Just to introduce myself.  I never -- I had missed

25  meeting her at a face-to-face meeting in Chicago that had

1   been arranged earlier.

2   Q    Okay.  Was that a meeting with other creditors of the

3   company?

4   A    Yes.

5   Q    Okay.  And who was -- were you at that meeting?

6   A    In Chicago?  No, I was not.

7   Q    Okay.  Understood.  Okay.  You have attended other

8   meetings, though, with creditors of the company?

9   A    Yes, I have.

10  Q    Okay.  With representatives of Oaktree, Angelo Gordon,

11  and JPMorgan?

12  A    Yes.

13  Q    Okay.  On how many occasions?

14  A    I would say two or three.

15  Q    Okay.  Okay.  Let's turn to the subject of the

16  company's performance, if we can, sir.  And you testified on

17  direct; you recall being here in November to testify before

18  this Court?

19  A    Yes.

20  Q    Okay.  And that was in support of a management

21  incentive plan?

22  A    Yes.

23  Q    Okay.  And at that point, you had nine full months of

24  performance available for 2010?

25  A    Yes.

1   Q      And the company's performance, through the first nine

2   months, was stellar, correct?

3   A      Yes.

4   Q      That's how you --

5   A      That's the word I used, yes.

6   Q      Okay.  And the fourth quarter, also -- the fourth

7   quarter of 2010 continued to be stellar, did it not?

8   A      Not as stellar as I would've liked.  We were off, as I

9   indicated just a few moments ago, in December primarily.

10  Q      Okay.  October/November were well above plan, were

11  they not?

12  A      Yes, they were.

13  Q      Okay.  So the fourth quarter ended up being $20

14  million ahead of plan at the operating cash-flow line --

15  A      Yes.

16  Q      -- correct?  And for the year, you ended up something

17  on the order of $210 million ahead of plan, meaning for

18  2010?

19  A      Yes.

20  Q      Okay.  That constituted beating plan at the operating

21  cash flow line by something on the order of fifty percent,

22  did it not?

23  A      Close to it.

24  Q      Do you need to refer to a document?  I can direct your

25  attention.

1   A      Right.  I -- I just -- I can't do the math that --

2   that quick in --

3   Q      Okay.

4   A      -- my head.

5   Q      Turn --

6   A      I'm sorry.

7   Q      Great.  Turn to Exhibit 5 in your binder.

8   A      Tab 5?

9   Q      Yeah.  This is the same document you went through with

10  Mr. Bendernagel.

11  A      Okay.

12  Q      This is -- I'm --

13         MR. ZENSKY:  I don't remember the DCL exhibit

14  number, Your Honor.  It's Noteholder Exhibit 2215 and DCL

15  1101, Your Honor.  Same document.

16         Can you put up Page 4 for the witness, please?

17  BY MR. ZENSKY:

18  Q      Okay.  Do you see that 2010, fourth quarter in full

19  year, 2010 operating results, sir?

20  A      Yes.

21  Q      Okay.  And if I direct your attention to the full year

22  data near the bottom, there's a reference to operating cash

23  flow of 636 million and change for the year.

24  A      Yes.  There it is.

25  Q      Okay.  And you see the comparison to plan?

1   A      Yes.

2   Q      And then there's a fifty percent, right?

3   A      Yes.

4   Q      To the right.  So that shows that the performance in

5   2010 was fifty percent ahead of plan?

6   A      At that time.  Yes.

7   Q      Okay.  Well, the year was over at that time, right?

8   A      I'm sorry.  Yes.  This is full year.  Yes.

9   Q      Yes.  Okay.  And if we look a little further up at the

10  total revenue line for the company, sir --

11  A      Yes.

12  Q      -- that shows revenues for the year were north of 3.2

13  billion?

14  A      Yes.

15  Q      Correct?

16  A      3.208.

17  Q      And that was seven percent -- seven percent ahead of

18  plan for 2010?

19  A      Yes.

20  Q      Now notwithstanding the stellar performance, 2010 was

21  depressed in part by the company's stay in bankruptcy, was

22  it not?

23  A      Yes.

24  Q      Okay.  You believe in 2010 the company was not all it

25  could have been --

1  A      Correct.

2  Q      -- correct?  Okay.  And on direct you used some very

3  colorful metaphors about feet and cement, one hand tied

4  behind your back.  Do you recall that?

5  A      I think I said both hands tied behind my back.

6  Q      Okay.  All right.

7         (Laughter)

8  Q      If those hands were free you could come out swinging,

9  right?

10  A     Yes.

11  Q     Okay.  And the performance you anticipate, although

12  you can't guarantee it, as you told Mr. Bendernagel, would

13  -- would be better once you're out of bankruptcy?

14  A     Yes.

15  Q     Okay.  Qualitatively exiting bankruptcy would make a

16  world of difference to you, correct?

17  A     Yes.

18  Q     Okay.  Now notwithstanding that and notwithstanding a

19  hope for exit in the very near future, the business plan,

20  the long-term plan -- or strike that.  Notwithstanding the

21  hope for exit in the near future, the 2011 plan assumes no

22  change in the company's status, correct?

23  A     Correct.

24  Q     All right.  It assumes that you're in bankruptcy for

25  the entirety of 2011?

1    A    Yes.

2    Q    Okay.  So that any benefits that would actually result

3    from exiting are not in any way baked into the 2011

4    forecast, correct?

5    A    That's correct.

6    Q    All right.  Now Mr. Bendernagel took you through the

7    document that we looked at which is the -- that you and I

8    just looked at containing the final 2011 forecast, but I

9    want to talk a little bit about the preliminary forecasts.

10         If you look at Tab 4 in your binder, sir?

11   A    Yes.

12             MR. ZENSKY:  This is Noteholder Exhibit 872, Your

13   Honor.

14   BY MR. ZENSKY:

15   Q    Okay.  You're familiar with this document, correct,

16   Mr. Hartenstein?

17   A    Yes.

18   Q    Okay.  And you testified on direct about a ground up

19   process in building the forecast that starts in the fall?

20   A    Yes.

21   Q    Okay.  And is this document the first complete

22   iteration of that ground up process so to speak?

23   A    I believe it is.

24   Q    Okay.  If you turn to the Bate stamp Page 347, sir,

25   titled, Tribune Publishing Consolidated 2011 Business Plan.

1   A      Yes.

2   Q      Okay.  And across the top there are a number of cases

3   and there are three cases titled, Worst Case, Most Likely,

4   and Best Case?

5   A      Yes.

6   Q      Okay.  And did these forecasts here under these

7   different assumptions represent the best thinking of the

8   company at that point in time?

9   A      This was more the ground up business unit by business

10  unit who were asked to -- each business unit say what's most

11  likely, what's worst case, what's best case.  So --

12  Q      And this -- I'm sorry.  Go ahead.

13  A      So this is a bringing up without any other

14  modification of the business units individually where they

15  were coming out on a preliminary basis in the

16  October/November timeframe.

17  Q      Okay.  So it's amalgamation, so to speak, of the

18  individual units --

19  A      Yes.

20  Q      -- reporting up?  Okay.

21  A      Yes.

22  Q      Had there been iterative feedback back and forth with

23  the headquarters or this is just the first roll-up of what

24  they sent you?

25  A      This is sort of the very beginning.  I don't -- there

1  might have been some slight feedback, but not the full

2  process.

3  Q      Okay.  And are the individual business units asked to

4  send their forecasts for the coming year in these -- in

5  three cases:  Best case, worst case and most likely case?

6  A      Yes, they were.

7  Q      Okay.  Now I am correct, sir, I don't think you'll

8  need to flip back and forth, the numbers that you've -- the

9  final numbers for 2011 were materially lower than the most

10 likely case shown on this December 2010 document, correct?

11 A      Yes.

12 Q      Okay.  All right.  Now if you could turn to Tab 3, can

13 you identify --

14            MR. ZENSKY:  Your Honor, this is Noteholder

15 Exhibit 875.

16 BY MR. ZENSKY:

17 Q      Let me know when you have that document out, sir.

18 A      I -- I have it.

19 Q      Okay.  Can you identify this for the Court, please?

20 A      Yes.  These are the set of charts that we sent to the

21 board just in advance of a -- a board call on December 7th,

22 2010.

23 Q      Okay.  And your name appears on the right-hand side as

24 presenting on certain topics?

25 A      Yes.

1  Q     Okay.  Now at the time of this board call, December 7,

2  was the document we just looked at, the December 2010

3  preliminary operation -- the 2011 preliminary operating plan

4  dated December 2010, was that available yet?

5  A     I don't recall the exact sequencing.  No.  I -- I

6  don't know that for a fact.  I noticed on the Tab 4 document

7  it just says December 2010, so I don't know exactly when in

8  December --

9  Q     Right.

10 A     -- it was.

11 Q     I noticed that, too.  That's why I asked.

12 A     Okay.

13 Q     Okay.  Okay.  If you look at Page -- the Bate stamp

14 Page 887.

15 A     I have it.

16 Q     Okay.  What data is shown on 887, Mr. Hartenstein,

17 generally?  I'm not asking you to tell the Court line by

18 line.

19 A     These are just October and November results.

20 Q     Okay.  So by December 7th you had November full month

21 results?

22 A     I believe that's the case.  Yes.

23 Q     All right.  Is that the typical timeframe that month

24 results -- month end results become available in the first

25 week of the following month?

1  A     Month end results usually do.  Bear in mind the

2  calendar month doesn't necessarily coincide with the -- the

3  accounting month.  I don't recall exactly when November --

4  it's usually about ten days, so this was right on the -- on

5  the cusp, December 7th.

6  Q     Okay.  Great.  Now if you look at the last page of

7  this exhibit, sir, there's a box called Preliminary 2011

8  Operating Plan.

9  A     You're referring to 891?

10 Q     I am indeed.

11 A     Okay.

12 Q     Do you see that?

13 A     Yes.

14 Q     Okay.  And the numbers under 2011 plan, do you see

15 that?

16 A     Yes.

17 Q     Okay.  Those are the same numbers that are in the

18 February 2nd board document that you show a bridge from

19 these numbers to the final numbers, correct?

20 A     Correct.

21 Q     Okay.  Now looking at the page we're looking at of

22 Noteholder Exhibit 875, dated December 7, 2010, can you

23 explain or why the numbers for 2011 here vary from the most

24 likely case shown on the document we looked at a moment ago

25 from December 2010?

1  A     Yes.  It's basically in the advertising numbers.  I

2  think the business units had brought in most likely cases

3  of, essentially, advertising revenue flat and when we looked

4  at them from the corporate perspective, which I described

5  before of the executive council, in -- in the face of what

6  we were beginning to see even in late November, we felt that

7  that was -- and I still feel that that was too optimistic.

8  So we went back and, for example, on publishing put it more

9  at a -- you know, a negative -- a negative three as opposed

10 to flat, which would be zero.

11      Similarly, on broadcasting we put it at minus three as

12 opposed to a one.  I think -- a positive one which was the

13 earlier most likely case.  I think that the business units

14 were coming off a good year on broadcasting with political

15 advertising and there seemed to be some momentum building

16 for -- for December, which is always the biggest month in

17 publishing.  But we felt at that point in time that it

18 wasn't going to materialize.

19 Q     Okay.  Sure.  So you were careful to take into account

20 the most recent information you had available to you?

21 A     Yes.

22 Q     Okay.  Including, I think as you just said, the last

23 week or two of November effected how you prepared this

24 document?

25 A     Yes.

1  Q    Okay.  All right.  Now let's turn to the final

2  document we looked at a moment ago, Exhibit 2215, which is

3  the February 2nd, 2011 document.

4  A    Tab 5?  Got it.

5  Q    Yeah.  And if we can go to the page that Mr.

6  Bendernagel asked you some questions about, which is Bate

7  stamp 23293.  Let me know when you have that page, sir.

8  A    I have it.

9  Q    Okay.  And this shows the bridge from the numbers as

10 of December 7th to the numbers approved on February 2nd?

11 A    Yes.

12 Q    Okay.  Now when was the document that we're looking at

13 prepared.  It's dated February 2nd, 2011, but when was it

14 finalized?

15 A    If I recall it was finalized just perhaps the Thursday

16 before February 2nd, so maybe five days before.

17 Q    Okay.  And you testified on direct that one of the

18 reasons for the even further the reduced performance -- or

19 strike that.  One of the reasons for the reduced

20 expectations for 2011 had to do with December results?

21 A    December and January.

22 Q    Okay.  And, in fact, if we look at Page 300 -- I

23 believe you looked at that page with Mr. Bendernagel

24 briefly.

25 A    Yes.

1   Q      That -- that shows the performance for the first three

2   weeks of January?

3   A      Yes.

4   Q      So you wanted to take into account, again, the most

5   recent information available to you?

6   A      Yes.

7   Q      That's the responsible way to forecast, is it not?

8   A      Yes.

9   Q      Okay.  Those results tempered your view for the year,

10  which is why we ended up with the projection we did,

11  correct?

12  A      Yes.

13           MR. ZENSKY:  That may be all I have, Your Honor.

14  Can I have one moment?

15           THE COURT:  Certainly.

16           (Pause.)

17           MR. ZENSKY:  That's all I have, Your Honor.

18           Thank you for your time, sir.

19           THE WITNESS:  Thank you.

20           THE COURT:  Any other cross examination?

21           (No audible response)

22           THE COURT:  Redirect.

23           MR. BENDERNAGEL:  Thank you, Your Honor.

24           Again, Jim Bendernagel for the debtors.

25                     REDIRECT EXAMINATION

1   BY MR. BENDERNAGEL:

2   Q    Mr. Hartenstein, if you could turn to the very first

3   exhibit that Mr. Zensky used with you, Exhibit NPP 756.

4   A    I'm sorry.  Which tab is that?

5   Q    Tab 1.

6   A    Yes.

7   Q    Mr. Zensky asked you to focus on the second sentence

8   of this email and specifically the last revision --

9   specifically, the sentence that reads, "He is the person who

10  put the Tribune financing together when Sam bought the

11  company."  Do you see that?

12  A    Yes.

13  Q    Do you have any personal knowledge with respect to

14  what Mr. Lee's role was in connection with the LBO?

15  A    No, I don't.

16  Q    It then goes on to say, "He is the lead on this

17  bankruptcy reorganization."  Do you see that?

18  A    Yes, I do.

19  Q    Do you know what role he's actually played in the

20  bankruptcy reorganization?

21  A    No.

22  Q    At the time that you were going off to meet him, what

23  were you doing on the bankruptcy reorganization?

24  A    Well, first of all, I did not meet him.  I only had a

25  phone call with him.

1    Q      In connection with the phone call --

2    A      Right .

3    Q      -- at that point in time, how involved were you in the

4    bankruptcy reorganization?

5    A      Zero.

6    Q      Do you recall whether you had a conversation with him

7    regarding the bankruptcy reorganization?

8    A      Only than -- only other than acknowledging that we

9    were in bankruptcy, no other further discussion.

10   Q      What information do you have to share with this Court

11   as to what Mr. Lee has or has not done in connection with

12   the bankruptcy?

13   A      I have none.

14   Q      Okay.  If you turn now to Page -- Exhibit -- Tab 4,

15   Exhibit NPO 872.

16   A      Yes.

17   Q      Mr. Zensky directed you to Page 347.  Do you recall

18   that?

19   A      Yes.

20   Q      And he looked at the most likely case, the best case,

21   and the worst case, correct?

22   A      Yes.

23   Q      Now over here on the right-hand side there's something

24   called, Percentage Variance 2011 versus 2010 and there's a

25   bunch of percentages.  Do you see that?

1    A      Yes.

2    Q      What is -- what is -- what do those percentages

3    represent?

4    A      Those merely represent the 2010 projection numbers

5    versus the worst, most likely and best case scenarios,

6    simply an arithmetic calculation of the percentage variance

7    of those three cases.

8    Q      So -- so what this is suggesting is that if you look

9    at the likely case and the .07 -- the negative .7 percent

10   under total revenue, you see that?

11   A      Yes.

12   Q      What this is suggesting is in the most likely case

13   that the revenue number 2,082,085,000 is being compared to

14   the projection for 2010, correct?

15          MR. ZENSKY:  Objection.  Leading, Your Honor.

16          THE COURT:  Well --

17          MR. BENDERNAGEL:  I'm trying to understand how

18   this is set up.  It's hard to do it any other way.

19          THE COURT:  It is leading, but I'll overrule the

20   objection.

21   BY MR. BENDERNAGEL:

22   Q      In other words, you're comparing -- you see where I

23   am?

24   A      Yes.

25   Q      The percentage is essentially comparing the 2010

1    projection to the 2011 projection, right?

2    A    Correct.

3    Q    And you're trying to show what the growth rate is

4    going to be year over year between 2010 and projected 2011,

5    right?

6    A    Yes.

7    Q    Now we looked at, during the direct examination, the

8    growth rates between 2009 and 2010.  Do you recall that?

9    A    Yes.

10   Q    And do you remember whether, in fact, the growth rates

11   on the publishing side were positive or negative vis-à-vis

12   2009 versus 2010 for revenue?

13   A    On the projection or the --

14   Q    The 2010 actual versus 2009 actual --

15   A    It was --

16   Q    -- which had the higher growth rate?  What was the

17   growth rate between 2009 and 2010?  Was it --

18   A    It was --

19   Q    -- positive or negative?

20   A    Negative.

21   Q    And how negative was it, do you recall?

22   A    I don't recall looking at this chart here, but --

23   Q    Was it -- I take it it wasn't flat.  Is that correct?

24   A    It wasn't flat, single digit down, high single digit

25   down.

1   Q      And when you say "high single digit down," what does

2   that mean?

3   A      In the eight or nine percent, I believe, but I -- I

4   would have to look for --

5   Q      When was the last time in your recollection that the

6   company had year over year flat growth in publishing

7   revenue?

8   A      None in my time and from what I understand from

9   colleagues of mine that were there ahead of me it's been a

10  long time, easily over five years.

11  Q      Now this document here is suggesting the revenue in

12  the most likely case would be flat compared to last year,

13  correct?

14          MR. ZENSKY:  Your Honor --

15          THE COURT:  Sustained.

16          MR. ZENSKY:  -- same objection.

17          THE COURT:  Sustained.

18  BY MR. BENDERNAGEL:

19  Q      How would you characterize the most likely case in

20  terms of the growth rate between 2010 and projected 2011 as

21  it's depicted on this page?

22  A      Well, it says that it's just -- just a tad down on the

23  revenue side, minus .7 percent down.

24  Q      Now if you go to Exhibit NPP 0875, which is Tab 3, and

25  you turn to the last page, Page 6 that has the Bates Number

1  891, there's a chart talking about preliminary 2011

2  operating plan.  Do you see that?

3  A     Yes.

4  Q     And for publishing revenue, what is the percentage

5  growth rate comparing 2011 to 2010?

6  A     Minus three percent down.

7  Q     And my recollection -- what -- what -- in the final

8  plan, do you recall what the percentage was?

9  A     In the final plan it's -- well, it rounds to about

10 minus three, also, just in terms of single digit rounding

11 precision.

12 Q     Well, let's take a look at the final plan.  Take a

13 look at Exhibit NPP 2215, which is also Exhibit DCL 1101,

14 and you turn to Page 397 -- 297, I'm sorry.

15 A     I'm sorry.  Is that Tab 5?

16 Q     Yes, it is.

17 A     All right.  Yes.  297.

18 Q     And if you look at the column that's boxed on the

19 right-hand side, what does it show the growth rate is?

20 A     Oh, minus five percent.

21 Q     So you ended up at minus five percent.  Is that

22 correct?

23 A     Yes.

24 Q     And that was based, as I understand your redirect

25 testimony, on the fact that things were worse in December

1  and still worse in January.  Is that right?

2  A    Yes.

3  Q    Now Mr. Zensky also asked you some questions about

4  whether this plan contemplates exit from bankruptcy.  Do you

5  recall that?

6  A    Yes.

7  Q    And you indicated that it didn't.  Is that right?

8  A    Correct.

9  Q    Now these -- on -- looking again at 297, these

10 projections for the growth rate of the industry that are set

11 forth on Page 397 and are contrasted with your five percent

12 growth rate, are those projections for a company in

13 bankruptcy or for a publishing company outside of

14 bankruptcy?

15 A    It's basically just for third party ad revenues for

16 publishing companies, period.

17 Q    And how does --

18 A    Not in bankruptcy.

19 Q    So you -- now Mr. Zensky also asked you that if you

20 got out and you were unshackled that you would be able to do

21 certain things that would improve your performance, correct?

22 A    Yes.

23 Q    Do you have any way at this juncture to model how the

24 exit from bankruptcy would enable -- would result -- what

25 the results of an exit in bankruptcy would be?

1    A       No, I do not.

2    Q       Do you think anyone -- well, have you thought about

3    what those potential revenues might be?

4    A       We certainly hope they would be better, but given this

5    economic client -- climate and the uncertainty as to when we

6    will get out, and if past is prologged (sic) to getting out

7    we've been wrong every step of the way the last two years as

8    to when we can get out, I have no way of modeling that

9    responsibly.

10              MR. BENDERNAGEL:  I have nothing further, Your

11   Honor.

12              THE COURT:  Recross.

13              MR. ZENSKY:  I just have one or two questions,

14   sir.

15                        RECROSS EXAMINATION

16   BY MR. ZENSKY:

17   Q       I think you just testified on redirect that for year

18   over year comparisons at the revenue line, the publishing

19   business went down 2010 versus 2009.  Is that correct?

20   A       Yes.

21   Q       Okay.  But the company is -- as a whole improved on

22   the revenue line 2010 over 2009, correct?

23   A       Yes, it did.

24   Q       Okay.

25              MR. ZENSKY:  That's all I have, Your Honor.

1            THE COURT:  Thank you, sir.  You may step down.

2            THE WITNESS:  Thank you.

3            MR. BENDERNAGEL:  Your Honor, that completes our

4    presentation of live witnesses.  We're not at this juncture

5    in a position to close the record because there's a bunch of

6    things that still have to happen.  We still need to work

7    through the documents that the various parties want to

8    offer.  There's also likely a rebuttal case.  But I guess I

9    can say we'll rest for now and we'll allow Mr. Zensky and

10   his team to move forward with their direct case in whatever

11   fashion they -- they so choose, if --

12           THE COURT:  All right.

13           MR. BENDERNAGEL:  -- that's appropriate.

14           THE COURT:  Well, let me turn to Mr. Zensky and

15   ask him what's first up.  We'll take a short recess in a

16   minute, but tell me what you think we can finish today.

17           MR. ZENSKY:  Sure, Your Honor.  I think we've

18   ended about exactly where I thought we would and we'll

19   present our first live witness, which we should be able to

20   get on and off today, Mr. Singh, our valuation expert.

21   We'll pick up tomorrow with the video clips with the

22   remaining six or eight sewn in as the Court directed early

23   this morning.

24           THE COURT:  All right.

25           MR. ZENSKY:  And -- and then have our second live

1  witness after that.

2          THE COURT:  Thank you.  We'll take a ten-minute

3  recess.

4          MR. ZENSKY:  Thank you, Your Honor.

5          (Recess)

6          MR. QURESHI:  Good afternoon, Your Honor.  For

7  the record, Abid Qureshi, Akin, Gump, Strauss, Hauer and

8  Feld on behalf of Aurelius Capital Management and the

9  noteholder plan proponents.

10          Your Honor, for -- if you're ready to proceed,

11  the noteholder plan proponents call as our first witness,

12  Rajinder Singh.

13          THE COURT:  Ready as I'll ever be.

14          MR. QURESHI:  Thank you.

15          THE CLERK:  Please remain standing.  Raise your

16  right hand and place your left hand on the Bible.

17  RAJINDER SINGH SWORN

18          THE CLERK:  Please be seated and adjust your

19  microphone.

20          Please state your full name for the record and

21  spell your last.

22          THE WITNESS:  Rajinder Singh, S-I-N-G-H.

23          THE CLERK:  Thank you, sir.

24          MR. QURESHI:  Your Honor, may I approach with

25  exhibits?

1          THE COURT:  You may.

2          MR. QURESHI:  Thank you.

3          THE COURT:  Thank you.

4          MR. QURESHI:  Your Honor, I've handed up and also

5   left on the -- on the witness stand and handed up to counsel

6   two exhibits, and for the record NPP Exhibit 2469 is a copy

7   of Mr. Singh's amended rebuttal expert report, and NPP 2470

8   is a demonstrative exhibit and the cover page says, "Direct

9   Testimony Demonstratives."

10                    DIRECT EXAMINATION

11  BY MR. QURESHI:

12  Q    Mr. Singh, by whom are you employed, sir?

13  A    Raymond James and Associates.

14  Q    And what's your title?

15  A    Managing director and head of debt origination and

16  restructuring group.

17  Q    Okay.  Turn if you could, please, in the demonstrative

18  exhibits to Page 3.

19  A    I'm there.

20  Q    Which sets forth some information on your background.

21       First of all, tell us a little bit about Raymond

22  James, please.

23  A    Raymond James is a full service securities firm

24  founded in 1962, has an equity market cap.  It's a public

25  company of four to $5 billion.  It's got three primary areas

1  of business it focuses on, has a very substantial asset

2  management business, manages about 250, $300 billion for

3  third parties.  It has a small bank, eight or nine billion

4  in assets, and a capital markets group of which investment

5  banking resides.

6  Q    Okay.  I'm going to ask you to just slow down a little

7  bit so the court reporter can keep up with us.

8  A    Sure.

9  Q    Can you please describe for the Court what your role

10 and responsibilities are at Raymond James?

11 A    I am a group head within the investment banking

12 department.  I am responsible for two product areas:  Debt

13 origination and restructuring.  So any senior debt private

14 placement or restructuring assignment that comes through our

15 investment banking department, my group is responsible for

16 executing.

17 Q    Okay.  And how many professionals are in your group?

18 A    It varies, but ten to fifteen on average.

19 Q    Okay.  And where were you employed before you joined

20 Raymond James?

21 A    I was employed by a broker dealer subsidiary of

22 PricewaterhouseCoopers called PricewaterhouseCoopers

23 Securities, LLC.  It's an investment banking division of

24 PricewaterhouseCoopers.

25 Q    And can you describe briefly the type of work you

1  performed there?

2  A    Very similar.  I was in their M&A and special

3  situations group and worked with -- on corporate

4  restructurings.

5  Q    Okay.  And can you describe your educational

6  background, please.

7  A    I got my undergraduate degree, a bachelor of science

8  in accounting from Rutgers University.  I got my MBA from

9  the University of North Carolina at Chapel Hill.

10  Q    Okay.  And do you have any professional

11  qualifications?

12  A    I have a CPA license, however it's in inactive status

13  and I have NASD Series 7 and Series 63 licenses.

14  Q    Okay.  Sir, if you can please turn to Page 4.  And

15  you've set forth there some transaction experience and what

16  I would like you to do is -- is talk about that with

17  specific reference to valuation experience, please.

18  A    Sure.  What we summarized on this page is what we --

19  what our -- my total completed transactions only at Raymond

20  James.  And principally the entire time I've been at Raymond

21  James I've been in a supervisory role, so these are all

22  transactions I would have supervised.  So 113 total

23  transactions and we divided them into the various categories

24  that would fall within our mandate:  Financings and special

25  situation financings; restructurings; valuations and

1  fairness opinions; and mergers and acquisitions, and you'll

2  see that they're reasonably evenly distributed between

3  twenty and thirty per category.

4      And principally in investment banking, particularly

5  the type of work I do, valuation is a component of each

6  assignment and from a valuation perspective it's something I

7  do every day when I talk to a client or advise a client or

8  pitch a client or whatever else it might be.  And specific

9  to this chart we did approximately twenty-five fairness

10  opinions, valuations, expert reports of which particularly

11  on a fairness opinions side of things, those -- those

12  principally are valuation exercises.

13  Q    Okay.  And are you able to tell me approximately how

14  many valuations you've performed over the course of your

15  career?

16  A    I would have no idea.  It would be numerous, hundreds.

17  Q    Okay.  And has your valuation experience involved both

18  in court and out of court restructurings?

19  A    Yeah.  I've worked on several in court matters and

20  probably more out of court matters.  But, yeah.  It would

21  cross over to both.

22  Q    Okay.

23          MR. QURESHI:  Your Honor, at this point I would

24  offer Mr. Singh as a valuation expert qualified to testify

25  with respect to the enterprise value of Tribune.

1          THE COURT:  Is there any objection?

2          MR. BENDERNAGEL:  Your Honor, I'm not going to

3 object at this juncture, but I'm going to reserve my right

4 to question on this issue.  I can do the questioning now,

5 but my sense is you're going to hear the witness and I don't

6 want to clutter up the direct, but I also don't want to run

7 into a situation where later I'm told why didn't you ask

8 these questions earlier.

9          THE COURT:  If you have a voir dire, conduct it

10 now.

11          MR. BENDERNAGEL:  Okay.

12               VOIR DIRE EXAMINATION - DIRECT

13 BY MR. BENDERNAGEL:

14 Q    Good afternoon, Mr. Singh.  My name is Jim

15 Bendernagel.  I'm with Sidley and Austin.

16 A    Good afternoon.

17 Q    Just so it's clear, I take it you're not holding

18 yourself out as an expert in the publishing business.  Is

19 that correct?

20 A    That's correct.

21 Q    You've never worked for a TV station -- I mean, for a

22 newspaper.  Is that right?

23 A    That's correct.

24 Q    You couldn't recall at your deposition whether you had

25 ever provided investment services to a newspaper.  Do you

1    recall that?

2    A      That's correct.

3    Q      And I take it you can't, as you sit here, identify any

4    newspaper clients that you've provided service to in your

5    career?

6    A      That's correct.

7    Q      I take it you did not consult with any experts in the

8    publishing business in preparing your opinion.  Is that

9    right?

10   A      That's correct.

11   Q      And I take it Raymond James does not have a segment

12   that covers or follows the publishing business.  Is that

13   correct?

14   A      That's correct.

15   Q      And with respect to the broadcasting business I take

16   it you're not holding yourself out as an expert in

17   broadcasting.  Is that right?

18   A      That's correct.

19   Q      And in doing the work that you put together in

20   connection with your appearance here today, you did not

21   consult with any experts in the broadcasting business.  Is

22   that correct?

23   A      That's correct.

24   Q      And Raymond James doesn't cover the broadcasting

25   business as part of its regular practice.  Is that correct?

1    A      That's correct.

2    Q      And I take it you can't identify any broadcasting

3    client that you've ever done work for.  Is that right?

4    A      That's correct.

5    Q      Now with -- so it would be fair to say that your test

6    -- the expertise you're bringing to this is purely in the

7    area of valuation.  Is that correct?

8    A      Well, valuation and perhaps restructuring and

9    valuation.

10   Q      Well, how does restructuring come into the question of

11   whether the valuation is correct?

12   A      Well, I guess the company in question is in the

13   context of a bankruptcy, so.

14   Q      Okay.  So you see that as a -- a defining issue, the

15   restructuring experience.  Is that right?

16   A      I would have to consult with counsel specifically, but

17   --

18   Q      You would have to consult with counsel about what?

19   A      To determine whether or not that has an impact on the

20   things I had to say.

21   Q      You don't know as you stand here whether it's going to

22   have an impact?

23   A      Well, I wasn't anticipating this question, so.  I

24   would imagine the company is in bankruptcy and the valuation

25   exercise is in the context of a company in bankruptcy.  So

1  perhaps valuation is sufficient.

2  Q    All right.  Okay.  If you could take a look at Page 4

3  of the deck that was put in front of you.  It says,

4  Transaction Experience.

5  A    Sure.

6  Q    It says, "Financial opinions, valuations, expert

7  reports," and you have a number twenty-five.  Is that

8  correct?

9  A    That's correct.

10 Q    Did you do these or were they done by Raymond James

11 and you just supervised them?

12 A    The way Raymond James generally advises clients is as

13 a team, and in general Raymond James signs off on reports or

14 opinions as Raymond James.

15 Q    Well, with respect to these twenty-five items, did you

16 do the work or did somebody else?

17 A    We did it as a team and I would have supervised

18 several of them.

19 Q    Well, you indicate expert reports.  Have you ever

20 submitted an expert report on valuation in any context?

21 A    I've worked on them, but I have not submitted them

22 under my name.

23 Q    Were you ever the lead on an expert report?

24 A    Well, again, I've worked on them and I haven't

25 submitted them under my name.

1  Q      But you haven't submitted them under your name.

2  A      That's correct.

3  Q      And you've never been qualified as an expert by any

4  court, bankruptcy or the like, with respect to valuation

5  issues.  Is that correct?

6  A      That's correct.

7  Q      You haven't been certified with respect to any area of

8  expertise by a court, correct?

9  A      I have never testified as an expert.  That's correct.

10 Q      Now on Page 5 of your slide deck it says, "Selected

11 Experience."  Do you see that?

12 A      I do.

13 Q      All right.  And there's some expert reports identified

14 for in court transactions.  Do you see that?

15 A      I do.

16 Q      I take it those were not expert reports you were

17 sponsoring.  Is that right?

18 A      Those were expert reports that the restructuring group

19 was involved with, but I ultimately was not the signatory on

20 them.

21 Q      Well, how -- how involved were you in the LaGuardia

22 Associates' expert report?

23 A      Well, my team worked on it.  If I recall it correctly,

24 because I haven't looked at the report in some time, it was

25 related to a cost of capital analysis, so we worked on it

1  with a specialist within our municipal bond financing group.

2  So we supported his efforts in coming to the conclusions.

3  Q    So were any of these expert reports that are

4  identified on this page involving valuation?

5  A    I believe the Conseco one involved valuation because

6  there's only three listed, but that was many years ago, I

7  think dating back to, perhaps, 2002.

8  Q    Did you testify in connection -- did you prepare that

9  report or somebody else?

10  A    Again, I supervised -- you know, the restructuring

11  group worked on a team with our financial institutions group

12  and the head of our financial institutions group signed the

13  report and testified as the expert.

14  Q    Do you have a recollection of what you specifically

15  did on that report?

16  A    I don't recall.  It's several years ago.

17  Q    Do you recall what you did on any of these reports?

18  A    Again, the Conseco one was several years ago; Field

19  Associates and LaGuardia were also several years ago.

20  Q    Take a look at the word "valuation" on this page.  It

21  appears up by Bonita Bay Group.  Do you see that?

22  A    I do.

23  Q    My understanding from reading your deposition is that

24  you participated in that on a high level.  Is that correct,

25  the valuation issues?

1  A    I think I stated I participated on a high level with

2  respect to the Sun Country valuation, but I could be

3  incorrect.  But generally speaking, I -- I teamed up with

4  our real estate investment banking group and strong

5  component of that valuation exercise related to real estate

6  assets, and as a result there's some very specific knowledge

7  that they brought to the table there and in -- in many

8  respects they -- they led components of that exercise.

9  Q    It's fair to say that with respect to all of the

10  valuation work that's listed on this page in these various

11  industry fields that you teamed up with somebody that was

12  familiar with the industry and doing the work, correct?

13  A    In some instances they may not have been specifically

14  -- or we may not have been specifically knowledgeable about

15  particular aspect of the industry, but we would work as a

16  team and perhaps work with somebody, for example, from our

17  M&A team that may have more knowledge and then we would

18  combine that knowledge base.  But, generally, I agree with

19  what you're saying.

20  Q    But in the case of this particular assignment, the

21  Tribune assignment, you didn't have that benefit, did you?

22  A    That's correct.

23          COURT REPORTER:  I'm sorry.  You didn't have that

24  what?

25          MR. BENDERNAGEL:  Benefit.

172

1       COURT REPORTER:  Thank you.

2       THE WITNESS:  That's correct.

3  BY MR. BENDERNAGEL:

4  Q     Did you?  How long have you been working on this case?

5  A     I think the -- our engagement letter was effective

6  February 4th, so our work began February 4th.

7  Q     And that's the first time you had ever worked in the

8  media space?

9  A      That's correct.

10 Q     And so all of the knowledge you have of the media

11 space is the result of the last four weeks of work?

12 A     That's correct.

13 Q     And at the time that you filed your expert report, how

14 long had you been working on this?

15 A     We filed our expert report on the 21st, so the

16 difference between February 1st -- February 4th and February

17 21st.

18 Q     Which is about two weeks?

19 A     Seventeen days, so two-and-a-half weeks.

20 Q     Well, your report was about the Lazard report,

21 correct?

22 A     That's correct.

23 Q     You didn't get the Lazard report until February 8th,

24 right?

25 A     Well, we got access to some discovery starting

1   February 4th.

2   Q     How much time did you spend between February 4th and

3   February 21st?

4   A     I don't know the exact, but a lot.

5   Q     Well, what does that mean, ten hours, twenty hours?

6   A     I'm going to guess well in excess of a hundred hours.

7   Q     You personally?

8   A     Well, I -- I believe I submitted a bill at some point.

9   I don't recall how many hours I personally worked on it, but

10  I would -- I would guess over a hundred hours.

11  Q     Just as a wrap up of this, I take it you're not

12  testifying as an industry expert, correct?

13  A     That's correct.

14  Q     You're only looking at valuation in the restructuring

15  context, correct?

16  A     That's correct.

17  Q     And your opinions are all based on the work you've

18  done in the last four weeks.  Is that right?

19  A     That's correct.

20            MR. BENDERNAGEL:  Your Honor, I'm not sure that

21  that's a sufficient basis, but on the other hand I don't

22  expect that you're going to exclude him from testifying.

23  But I didn't want to wait until later and then have somebody

24  ask why you didn't bring it up earlier.

25            THE COURT:  Well, he's been proffered as an

1  expert in valuation.  Is there an objection?

2              MR. BENDERNAGEL:  Yes.  I -- I don't think he has

3  the -- the qualifications to begin with because he hasn't

4  shown that he's ever done a valuation report, and the fact

5  that he can start four weeks ago on a complicated case like

6  this and come up with a report, you know, based on that thin

7  a valuation experience just strikes me as, you know,

8  questionable and that's why I rise to object.

9              THE COURT:  Mr. Qureshi, any response?

10             MR. QURESHI:  May I ask a few follow up questions

11 first, Your Honor?

12             THE COURT:  You may.

13             MR. QURESHI:  Thank you.

14                  VOIR DIRE EXAMINATION - CROSS

15 BY MR. QURESHI:

16 Q    Mr. Singh, you've testified in response to Mr.

17 Bendernagel that you're not holding yourself out as either a

18 publishing industry expert or a broadcasting expert, right?

19 A    That's correct.

20 Q    Okay.  And in your opinion does -- does that lack of

21 industry expertise at all impact your ability to opine as to

22 the enterprise value of Tribune?

23 A    On the issues that we opined on I don't believe it

24 does.

25 Q    Okay.  And can you explain why not?

1  A      Well, we as -- I had a large team that we went through

2  a significant amount of information analyzing various

3  aspects of the report, and I think once I get into the

4  report we'll talk about the various aspects of it, and the

5  vast majority of the items that we addressed related to

6  updating certain types of information.  And certain aspects

7  of it did relate to methodology and there was a couple of

8  instances where we addressed waiting issues.  And the

9  limitation to -- you know, that's principally where most of

10  the judgment went in and the basis for our judgment wasn't

11  based on industry knowledge.  The basis for our judgment was

12  based on general valuation theory.

13  Q      Okay.  And -- and with respect to the hundreds of

14  valuations that you've testified that you've performed over

15  the -- over the course of your career, was it necessary for

16  you to be an industry expert in each industry in which you

17  did that?

18  A      No.  As I said, I'm -- I'm a generalist.  I work as a

19  product specialist across multiple industry groups in a

20  group of a couple of hundred total investment banking

21  personnel and I'm consistently working across multiple

22  industries.  So my job is to get up to speed, understand

23  them, apply the knowledge base that I have as part of that

24  team.

25  Q      Okay.  And in your experience as an investment banker

1  in the restructuring area in particular, is it common for

2  investment bankers to opine as to valuation when they're not

3  also industry experts?

4  A      Yes.

5  Q      Okay.  And how many people did you have at Raymond

6  James assigned to this particular project?

7  A      We had over ten people working on this project.

8  Q      And from what groups within Raymond James were those

9  individuals?

10  A      The restructuring group, the M&A group and our

11  technology and communications services group.

12  Q      And why did you involve people from Raymond James' M&A

13  group in this assignment?

14  A      They have certain technical knowledge about how our

15  firm has -- applies standards to certain things and help

16  thinking through some technical M&A -- valuation questions,

17  and we, as a general course, utilize them as and when

18  needed, and yes.

19  Q      Okay.  And -- and why did you involve bankers from

20  Raymond James from the technology group?

21  A      There's some senior banker -- there's a senior banker

22  in that group that I've worked extensively with that I felt

23  that is very strong in valuation and he was a constructive

24  member of the team and he had other personnel within his

25  group that were -- were able to also provide support.

1  Q      Okay.  And do you have any idea of how many total

2  hours you and the rest of the Raymond James teams has -- had

3  spent on this engagement between when you were first

4  retained and when you released your expert report on

5  February the 21st?

6  A      I don't.  I believe it's in excess of a thousand

7  hours.

8  Q      Okay.

9           MR. QURESHI:  Okay.  Your Honor, I think that's

10 all I have by way of follow-up.

11          Unless there's a recross, I'll address the

12 argument.

13          MR. BENDERNAGEL:  I would like to ask him one or

14 two questions, Your Honor, if --

15          THE COURT:  Go ahead.

16          MR. BENDERNAGEL:  -- I could.

17                VOIR DIRE EXAMINATION - REDIRECT

18 BY MR. BENDERNAGEL:

19 Q      Mr. Singh, is it your testimony that industry

20 experience is not necessary in picking the appropriate

21 comparable companies?

22 A      It's not necessarily always the case.  You need

23 industry experience to look at a comparable company.

24 Q      Well, in this case do you think industry experience is

25 necessary in picking comparable companies?

1    A    In the comparable companies that we modified or

2    picked, I don't believe an industry experience was

3    necessary, and in general in terms of publishing and

4    broadcasting I didn't impact any of the pure companies that

5    Lazard had picked.

6    Q    Well, you changed Lazard's selections, right,

7    different comparables, correct?

8    A    In industry -- in -- in the vast majority of the pure

9    companies, particularly as it relates to publishing and

10   broadcasting, we did not change their pure company

11   selections.

12   Q    You did make changes in their ranges, correct?

13   A    We -- again, I thought we would get into this in the

14   report, but we tried to mathematically index their range to

15   where the mean was so that way we could carry their range

16   along wherever the mean might have changed based on updating

17   information.  That was -- we -- we attempted to

18   mathematically perform that.

19   Q    So you substituted your judgment for their judgment

20   with respect to what would be a comparable company in these

21   industries without any industry experience, correct?

22   A    No.  That's not correct.

23         MR. BENDERNAGEL:  I don't have anything further,

24   Your Honor.  I still renew my request.  I think this is

25   pretty marginal.

1           THE COURT:  Well, it's not unusual to have an

2   expert testify in an industry in which he has not

3   encountered before.  And, also, this is not the first time

4   that an expert has debuted in this courtroom testifying for

5   the first time.  But -- so I'm going to overrule the

6   objection.  But I will take into account in weighing the

7   evidence, you know, the matters that have been brought out

8   by Mr. Bendernagel.  I think they do go to weight.

9           Mr. Qureshi, you may proceed.

10          MR. QURESHI:  Okay.  Thank you, Your Honor.

11                  DIRECT EXAMINATION (RESUMED)

12  BY MR. QURESHI:

13  Q    Mr. Singh, when you were first retained in this matter

14  what is it that you were asked to do?

15  A    We were asked to assist Akin Gump on behalf of

16  Aurelius in evaluating what they expected to be Lazard's

17  expert report to be issued on the 8th of February, and to

18  the extent required provide a rebuttal.

19  Q    Okay.  And is Raymond James' compensation in this

20  matter in any way contingent upon the outcome of these

21  proceedings?

22  A    No.

23  Q    Okay.  Sir, what I would like you to do now is turn to

24  Page 7 of the demonstratives where you've summarized the key

25  methodologies and ask you to please just give the Court a

1   general overview of -- of what it is that you did before we

2   get into the details of each segment.

3   A       Sure.  Well, Lazard prepared a sum of the parts

4   analysis which broke the business into its core pieces:

5   Publishing, broadcasting, other wholly owned -- those are

6   all businesses that they own and control -- and then non-

7   controlled interest.

8           And in general what we did is if you refer to Page 9,

9   maybe that makes it graphically a little bit easier.  What

10  we did and what page 9 is and I'll go more into it, I think

11  later, but it's just a buildup of the value difference

12  between Lazard's midpoint and the Raymond James computed

13  midpoint.  And the orange blocks relate to updated financial

14  and market data, and what that means is we went through a

15  variety of discovery material and to the extent that there

16  was updated financial metrics such as EBITDA, we updated the

17  report for that.

18          And what market data updates means is to the extent

19  that there was a pure set of companies for a comparable

20  companies analysis and there was stock price data or betas

21  or whatever else that might need to be updated, we updated

22  that based on market information.

23          This also had an impact on WHACK (sic) calculations.

24  There is certain information within WHACK calculations that

25  you go to market sources for and update.  So that's all the

1    orange blocks.

2          With respect to the green boxes, publishing,

3    broadcasting, wholly-owned weighting, as I referred to when

4    Mr. Bendernagel was asking me some questions, this is where

5    we updated certain weightings based on the analysis that was

6    contained in -- in -- based on the analysis.  And there was,

7    for example, a weighting where they may have applied thirty

8    percent and we applied ten percent, so there was a change to

9    the weighting.

10          And, finally, the blue box is what we call other and

11    other relates to some methodology revisions related to the

12    non-control which, you know, has some, you know, specific

13    details associated with it and then some other items such as

14    what we call pension add back which is really an

15    amortization of previous losses from 2008, unrealized losses

16    in their pension portfolio which we felt needed to be added

17    back as well as distributable cash estimate.

18          So going back to Page 7, you know, that kind of

19    summarizes those boxes.

20    Q     Okay.  Now the copy of the expert report that you have

21    in front of you is as amended on March 12th.  I would like

22    you to turn, please, to Page 8 in the demonstratives and --

23    and describe to the Court what changes you made from the

24    original report and why.

25    A     Sure.

1  Q    And let's start with your DCF analysis which is the

2  first box on the left.

3  A    Sure.

4      Before I -- well, within the DCF what we did is

5  inadvertently deducted some values to adjust EBITDA related

6  to the non-cash pension expense and it was only supposed to

7  impact the comparable company analysis.  So we corrected

8  that.

9      We updated certain other financial data that wasn't

10 included in the February 2011 report which wasn't properly

11 reflected and we updated the discounted cash flow analysis

12 to discount back to June 30th instead of December 31st of

13 2010.

14 Q    And -- and what was the net effect of those changes on

15 your evaluation conclusion?

16 A    It had an increase of $23 million to the distributable

17 value.

18 Q    Okay.  And what changes, sir, did you make with

19 respect to your distributable cash methodology from your

20 initial report?

21 A    The distributable cash estimate is based on what I'll

22 get into more detail about later, but it -- it's a proxy for

23 the future cash flows and we made certain adjustments to it

24 because we didn't have an updated cash flow, so we had to

25 create a proxy for it.  And one of the adjustments we made,

1    we should have made an additional adjustment and we failed

2    to do so.  So we corrected it.

3         The second line item relates to capital expenditures.

4    We properly reflected, I think, the capital expenditures in

5    the various other sections, but that didn't -- that

6    correction didn't role forward into the distributable cash

7    estimate and we corrected that.

8    Q    And, again, what was the net impact of those changes

9    on your original valuation conclusion?

10   A    Decreased -- decreased the midpoint by 26 million.

11   Q    Okay.  And with respect to Scripts Network

12   Interactive, can you describe the changes made there?

13   A    Really two categories:  One, we reference some data

14   from a public source and we selected the wrong point of data

15   and we -- we improperly included it so we updated that and

16   properly included the right piece of data.  And the second

17   is is there was adjustments -- we used the Scripts multiple

18   in a couple of different areas in the report as part of the

19   valuation in a couple of different areas and there's certain

20   adjustments that need to be made to it to make it apples to

21   apples in terms of valuation.  And I think there was a

22   component piece of that that we didn't properly compute, so

23   we made sure that we reviewed that and computed it.

24   Q    Okay.  And, again, was the net impact of that change?

25   A    Decreased the midpoint valuation by 38 million.

1  Q     Okay.  And then the next it looks like five

2  categories, you've described a number of changes, but

3  indicate on the right-hand side that there was no impact at

4  all on your valuation conclusion.  Can you please describe

5  what those changes were?

6  A     For the most part they were illustrative charts and

7  other data that was provided where there was either better

8  data or transcription error or something along those lines

9  and we updated those and they didn't have any resulting

10 impact on value.

11 Q     Okay.  So overall, sir, what was the change from your

12 midpoint estimate of -- of enterprise value in your original

13 report to your amended report?

14 A     It lowered distributable value by approximately forty

15 or $41 million.

16 Q     And what's the percentage impact of that

17 approximately?

18 A     I think it was less than .0 -- or 0.5 percent.  So 0.4

19 something percent, I believe.

20 Q     Okay.  And before we leave this page, I would like to

21 direct your attention to Footnote 1 at the bottom of the

22 page describing updated financial matrix from TFN.  Can you

23 explain to the Court, please, what that footnote is about?

24 A     Sure.

25       Following the issuing of our report, we were made

1  aware of certain updated information for TFN and while we

2  didn't discover that or have that information available

3  prior to issuing a report, since it did have a material

4  impact we felt it was important just to disclose.  So if we

5  were to update some of the TFN -- TV Food Network -- numbers

6  that we had for the numbers which I believe now are updated

7  actuals and estimates, it would further reduce our total

8  distributable value by 71 million.  And that number is not

9  reflected in our report, so that would be an additional

10 deduction at some point when you were to evaluate the total

11 findings.

12 Q    Okay.  And can you please take a look at the amended

13 expert report that I've placed in front of you.  It's

14 Exhibit 2469 and just confirm for me that that is, indeed, a

15 copy of the amended expert report of March 12th.

16 A    It is.

17         MR. QURESHI:  Your Honor, at this point I offer

18 Exhibit NPP 2469.

19         THE COURT:  Is there an objection?

20         MR. BENDERNAGEL:  No objection.

21         THE COURT:  It's admitted without objection.

22         MR. QURESHI:  Thank you.

23 (NPP Exhibit 2469 identified and admitted into evidence.)

24 BY MR. QURESHI:

25 Q    Now, Mr. Singh, before we jump into the various

1  segments let's look one last time -- one more time, quickly,

2  at Page 9, and in particular the orange boxes on that page,

3  and I would like you to explain how you arrived at those

4  numbers.

5  A    Sure.

6      So what we tried to do, because I thought that if we

7  simply just took the Lazard midpoint and showed the Court

8  that the midpoint increased without any breakdown, it would

9  be very difficult to follow.  So we really tried to isolate

10 each variable so that to the extent there's questions in

11 each or any variable, you're able to go back and actually

12 analyze each change.

13     And what the orange blocks do is isolate the changes

14 related to financial and market data updates.  So just to be

15 clear, those numbers do not include changes associated with

16 the other bars.  So if you're to take the Lazard report and

17 update for financial and market data, that would be the

18 resulting impact of an increase of $839 million in value.

19     And then the -- did you just ask about the orange?

20 I'm sorry.

21 Q    Yeah.  I just asked about the orange for now.  We'll

22 come back to the rest.

23     Turn to Page 10, please.  And can you explain to the

24 Court what you're illustrating on this page?

25 A    Sure.

1      Our sense was, you know, from an outside viewpoint

2    when you look at that eight-hundred-and-thirty-nine-million-

3    dollar-number, it's a very large number and it really

4    relates to updates of financial and market data.  And just

5    for illustrative purposes, again, this isn't mathematically

6    linked to anything.  It's just to take all of the comp

7    companies that we used and just to show within those

8    categories how much the stock has appreciated since October

9    4th.  And the reason why we picked October 4th is the Lazard

10   February 8th report is based on stock prices as -- as of

11   October 4th.

12      So, again, I wouldn't focus so much on the mean

13   because it doesn't tell you anything in relation to the

14   total value.  But if you just look across the categories you

15   can note that in general from October 4th to February 18th,

16   there was a, you know, 22.9 percent mean increase.  And if

17   you were to do the same analysis and look at their

18   supplement date, which was January 19th and increase it --

19   and extrapolate it to February 18th, again, there was also a

20   significant upward movement in the market.

21      And the reason why we picked February 18th, just to be

22   clear, is we were asked to provide a report as of February

23   21st, and the last trading day was February 18th and that's

24   our consistent firm practice, which is to submit valuations

25   or valuation-related materials as of the last trading day.

1  Q      And why is that Raymond James' practice?

2  A      Because a general theory of valuation relies on using

3  the most up to date information.

4  Q      Okay.  And do you know how the comparable companies

5  that you've summarized on Page 10, how those have traded

6  since you submitted your expert report on the 21st of

7  February?

8  A      I haven't had time to actually run it through my

9  report to actually tell you the change in value, but I'll

10 tell you in general the market has -- for those companies

11 has gone down.

12 Q      Okay.

13 A      So there would be a decrease in value.

14 Q      Okay.  Let's turn first to your evaluation of the

15 publishing segment and if you could turn, please, to Page

16 12.  And what I would like you to start with is to please

17 provide the Court with a general overview of your approach

18 to valuing the publishing segment.

19 A      Well, we broke it into two categories:  The first

20 category is updating financial and market data.  The second

21 category is adjusting the weighting.

22        So in terms of updated the financial and market date,

23 we updated the comparable companies through February 18th.

24 The -- I'm sorry -- the market data through February 18th,

25 the financial data that we had available through February

1  21st.  We updated the weighted average cost of calculation

2  -- cost of capital calculation based on new inputs, and we

3  discounted the DCF to June 30th instead of December 31st.

4      And in the middle you'll note that we updated the

5  Lazard reference range and what we attempted to do was make

6  it a quantitative exercise where we looked at the total pure

7  set of companies that they used, figured out how many turns,

8  if you will, their range was above or below the mean and as

9  we updated the stock prices and the mean moved, then we

10  would move their range in relation to that mean the same.

11  So that way if, for example, they were to have selected, you

12  know, certain of the companies and relied less or more on

13  other companies, you know, to the extent the stocks move

14  together, it should capture the differences.

15      So it was just a mathematical exercise in the absence

16  of any disclosure in the report that they specifically

17  relied or did not rely on certain numbers.

18  Q    Okay.  The second heading you have on Page 12 relates

19  to the -- to the weighting of the DCF.  Again, can you

20  describe for the Court in general terms what you did there?

21  A    Well, when we performed the valuation analysis, we

22  were conducting our own due diligence and we found certain

23  things that caused us some concern with respect to the

24  projections, or actually really caused, I guess, Lazard some

25  concerns with respect to the projections.  And we analyzed

1  the exercises that they did and we re-performed them and

2  understood better what the concern was.

3      And when you then look at computing what your value of

4  a company should be, we took into consideration the

5  conclusions reached by the discounted cash flow analysis in

6  relation to the comparable company analysis and evaluated

7  what the proper weighting should be because the results were

8  fairly dramatic and required, you know, a closer look.

9      And, again, I would view that more of a technical

10 exercise.

11 Q    Okay.  Well, let -- let's explore the weighting issue

12 in a little more detail.  You're -- you're first bullet

13 under Item 2, consistent out performance of forecasts during

14 2010, please explain, sir, how that item relates to the

15 judgment you made with respect to weighting.

16 A    Well, if you go to Page 15, what you see for 2010, the

17 first chart to the left is revenue and the chart to the

18 right is EBITDA.  The revenue chart you'll see that they

19 estimated revenue to be a billion 887 and then actual

20 revenue came in a little higher at just over 2 billion.

21     If you go to the chart to the right, that's where you

22 see a much more dramatic impact where they estimated EBITDA

23 to be 177 million and it actually came in at 280 million,

24 which is almost sixty percent higher or, in dollar terms, in

25 excess of $100 million higher.

1       So when you consider a discounted cash flow you need

2  to consider the inputs that go into the discounted cash flow

3  and how that may affect the output.  And, you know, this is

4  something that was brought to our attention in the context

5  of our diligence and when trying to understand the results,

6  we just got informed by this is a data point.

7  Q      Okay.  Flipping back to Page 12 for a moment, the

8  second bullet point under Item 2, Acknowledged conservative

9  projections, can you first explain what you mean by that?

10  A      Yeah.  When we reviewed some of the information, in

11  particular Mr. Chachas's expert report, it actually just

12  struck us as relatively unusual for an expert to go out of

13  his way and, you know, discuss management's projections.

14  And, you know, in his discussion of the projections he noted

15  that, you know, management, you know, was having difficulty

16  or -- well, I don't want to paraphrase -- but more or less

17  that there was some uncertainty in their projections and

18  that impacted them as well as he had questions as how -- as

19  to how they performed versus their peers.

20      And as a result we just simply performed some analysis

21  in relation to that.

22  Q      Well, turn to Page 14 for a second.

23  A      Yes.

24  Q      And you've excerpted there a section from Mr.

25  Chachas's report.  Is that what you were just referring to?

1    A     Yes.

2    Q     Okay.  And now, sir, turn if you could for a moment to

3    Page 16.

4    A     I'm there.

5    Q     And please explain how the information on this page

6    relates to your conclusions with respect to weighting.

7    A     So what we did on Page 16 was we benchmarked Tribune

8    versus their peer group and what I mean by peer group is in

9    the Lazard valuation analysis for comparable companies they

10   have two groupings.  They have pure play and diversified.

11   The pure play is, as it suggests, you know, more direct, you

12   know, publishing businesses and the diversified are

13   companies with publishing as well as other assets.

14        And then they -- we also compared them to what we call

15   precedent bankruptcy companies which are a series of other

16   publishing related businesses that had projections in their

17   disclosure statements.  So then we just simply put the

18   Tribune bar, which is the gray bar, compared them to how

19   everybody else is projecting for 2011 and '12 and onward --

20   or actually 2011, I apologize -- and saw how they came out.

21   And if you look at the revenue growth expectation, Tribune,

22   obviously, their -- their bar is lower than each or any of

23   those groups.  And if you look at the EBITDA growth, again,

24   it would be the same thing; that their expectations are

25   below any of those peer groups.

1    Q      Now -- and, Mr. Singh, why is it relevant to your

2    valuation exercise to compare Tribune's projections to these

3    peers that you set forth here?

4    A      It just helps me put into context, you know, the

5    projections and the resulting impact it would have

6    quantitatively on the DCF analysis.

7    Q      Okay.  And in drawing this comparison are you in any

8    way criticizing management for its projections?

9    A      No.  We accept management's projections.  It was

10   simply a -- a analytical exercise for us to better

11   understand what -- what it is that the concerns were.

12   Q      Okay.  And turn next, if you could, please, to Page

13   17.  And can you describe for the Court, please, what it is

14   that you're depicting on this page.

15   A      This is just a graphical analysis of their

16   projections.  The top dark blue line is EBITDA.  EBITDA over

17   the projection period is expected to decline about forty-

18   seven percent.  The light blue line underneath that is their

19   unlevered free cash flow.  That's expected to decline eighty

20   percent.  So if you sort of follow the logic through that in

21   a couple of more years, you know, it will -- it will

22   approach zero.  And the red line is their total cap X and

23   that just stays steady throughout the period which, you

24   know, again, our expectation was perhaps it would scale with

25   the business.  But, again, you know, we -- we took these

1   projections at face value.

2   Q     Okay.  And -- and please explain to the Court how all

3   of that information that you've set forth on these several

4   slides ultimately factored into the decision that you made

5   with respect to how to weight the two methodologies.

6   A     Again, it was just informative.  I mean, it just

7   demonstrated that they -- they -- they're projecting the

8   business to decline and continue to decline to a point

9   where, you know, they will be, you know, limited to perhaps

10  no -- no free cash flow after some point in time and that

11  would have an associated impact analytically on the results

12  of the DCF.

13        So it was more of a analytical exercise to better

14  understand how the DCF arrived at where it would arrive at.

15  Q     Okay.  Turn to Page 13.  And -- and first, please

16  explain to the Court what the information is that you're

17  setting forth here.

18  A     Sorry.  I was on the wrong page.

19        Page 13 tries to, as I described, I guess, on the

20  previous page, there were sort of two steps.  The first was

21  to update financial and market data.  The second step was to

22  update the weighting.  So that we could isolate how the

23  changes that we put through our report impacted the total

24  change in value.

25        So if you go smack to the middle of the report,

1  there's a column that says, "Number One:  Updated Financial

2  and Market Data Impact."

3  Q      Yeah

4  A      And if you were to drive that through, that just

5  demonstrates that the change in the total distributable

6  value is somewhere between negative two and $17 million.  So

7  there's, you know, some, but not a significant impact caused

8  by that.

9         The more significant impact relates to, as you

10  continue to the right where we call it adjusted weighting.

11  And what we did here is Lazard had used a weighting of

12  seventy percent attributable to the comparable company and

13  thirty percent attributable to the discounted cash flow.

14  And we adjusted that weighting to ninety percent to the

15  comparable company and ten percent to the distributable cash

16  flow.

17  Q      Okay.  Now you -- you've explained why you adjusted

18  the weighting, but what I would like you to do now, sir, is

19  explain why ten percent to the DCF as opposed to five or

20  fifteen or some other number.

21  Q      Well, ten percent was just simply judgment.  I mean,

22  we were -- we -- when we looked at the numbers and when we

23  generally do valuation exercises -- and I think, you know,

24  most valuation practitioners would probably do a similar

25  exercise -- you try to get data points from as many

different methodologies that are reasonable under the
circumstances.  And then you try to triangulate a value that
seems to be common amongst those methodologies.

   And that doesn't mean that the numbers are exact one
over each other.  It just means that there's some
relationship.  And when you have two methodologies as in
this case, there's the precedent transactions were -- were
not relevant.  You know, you had one that was based on its
pure companies and came out to a billion-two to a billion-
three and another based on a discounted cash flow which came
out to 230 to $340 million.  And there just didn't seem to
be much of a relationship between how the market was valuing
them and how, based on the projection model, the DCF had a
result that was dramatically different, not even within a
range.

Q    Okay.  Now let's turn to Page 18 and I would like you
to focus for a minute on the implied multiples that you show
on this page and tell us if those multiples have any
relevance to your judgment with respect to weighting.

A    Sure.

   All the multiple does is, you know, show a percentage
or a multiple change versus the numbers that I just
mentioned.  So the billion-two to billion-three is still
there.  The 230 to $344 million is still there if you look
under the right column.  The multiples just show you, okay,

1   well, if -- if a buyer were purchasing this company, how

2   much are they paying in terms of a multiple of EBITDA, and

3   in this instance it implies that they're paying somewhere

4   between less than one, meaning .9 times EBITDA to 1.2 times

5   EBITDA.  And, you know, that -- that basically suggests that

6   a buyer could buy the asset and recover their investment in,

7   you know, some reasonably short period of time, a year or

8   two, depending upon cash flows.

9        So it just -- just another check in terms of

10  understanding what the results said.

11  Q    Okay.  Now you obviously disagree with Lazard's

12  decision to weight the DCF at thirty percent.  Can you

13  explain why you believe that thirty percent in this case is

14  too much weight for the DCF?

15  A    There just simply wasn't a relationship to weight it,

16  you know, so significantly in comparison to the other

17  methodology.  So if there was a closer relationship between

18  the outputs, you could then justify, you know, some

19  weighting, whether it's an even weighting or some premium or

20  discount and develop a rationale between the premium and

21  discount.

22       But if there's absolutely no relationship, then I

23  struggle as a valuation person to figure out, you know, how

24  you can put any meaningful or significant percentage

25  weighted to that methodology.

1    Q      Okay.

2    A      It just didn't look right.

3    Q      Well, did you consider not relying upon the DCF at all

4    for your publishing valuation?

5    A      I considered it, but, again, it is management's

6    projections and they did perform a DCF and, you know, I just

7    discounted down to a reasonably low value.

8    Q      Okay.  So overall with respect to publishing when you

9    take into account both the updating the market and financial

10   information to February 18th and the weighting adjustments,

11   what is the overall difference between your publishing

12   valuation and Lazard's?

13   A      The overall difference results in a total of $201

14   million, and, again, just for clarity, the vast majority of

15   that two-hundred-and-one-million-dollar difference is

16   associated with the weighting change.  Very, very, you know,

17   small portion of it relates to updating of financial

18   information --

19   Q      Okay.

20   A      -- and market information.

21   Q      Okay.  Let's move on to the broadcasting segment of

22   the company.  Turn, please, sir, to Page 20 of -- of the

23   demonstratives.  And, again, let's start with describing for

24   the Court in general terms what you did to get to your

25   broadcasting conclusion.

1  A     Again, we did a very similar exercise.  We updated the

2  financial and market data, the -- you know, based on the

3  close of market of February 18th and based on information we

4  had for the actuals and estimated information through

5  February 21st.  We updated the WHACK the same way we updated

6  the WHACK in the previous section and we updated the DCF the

7  same way we updated the DCF in the previous section.

8  Reference range, same thing.  We came up with a quantitative

9  method to index where Lazard's range came out relative to

10 the mean.  And we used the full set of both pure plays and

11 diversifieds absent information to think differently about

12 it.

13       You know, and, again, just to be clear, this is

14 probably more of either my philosophy or the firm

15 philosophy, when we submit valuations we typically, to the

16 extent have information on a page of paper, it either

17 informs us or we rely upon it, and I didn't know where

18 within that page they would focus their time and energy in

19 terms of quantitating their multiple.  So I thought it --

20 Q     Is the "they" you're referring to Lazard?

21 A     They -- I'm sorry.  Lazard.  So I thought the

22 quantitative approach to index it, because I knew market

23 data would change, would hopefully, you know, keep them

24 reasonably in the same place as where they intended to be,

25 assuming, you know, both categories, stock prices moved in

1    somewhat lock step.

2    Q    And when you say reasonably where they intended to be

3    -- do you mean relative to the mean of Lazard's comps?

4    A    That's correct.  I -- the intent was to maintain their

5    thought behind it.

6    Q    Okay.  Now with respect to broadcasting you also made

7    some adjustments to the weighting.  Can you give us an

8    overview of that, please?

9    A    Sure.

10        In this section they had introduced a methodology

11   which I have never seen and, you know, didn't seem -- deem

12   reliable.  So we -- we discarded that, and then when we

13   looked at the methodologies that they employed as to how

14   they determined to weight one sixty percent and one forty

15   percent -- because I believe they discarded the precedent

16   transaction analysis as well -- we didn't under -- we

17   couldn't conclusively arrive at a rationale to change the

18   weighting.  So just philosophically I kind of generally --

19   generally start at a fifty/fifty weighting and look for

20   reasons why you would increase that or decrease that

21   relative to one another.

22   Q    Okay.  Well, let's turn to Page 21 where you provide

23   some more detail about the broadcasting valuation.  I would

24   like you to start with the comparable company methodology

25   that you applied here and -- and describe for the Court what

1  -- what changes you made there to Lazard's valuation.

2  A     Again, if you follow the chart and kind of start right

3  in the middle of the page it says, "Updated Financial and

4  Market Data."  Pardon me.  And if you follow through

5  comparable companies, we simply updated that information,

6  the stock prices and the like and, you know, quantitatively

7  updated the range and it resulted in an increase in the

8  midpoint value of ninety-six to $76 million.

9  Q     Okay.  Now with respect to precedent transactions can

10  you explain why you did not rely upon that methodology at

11  all?

12  A     It was just a very unusual analysis.  They, I believe,

13  utilized data --

14  Q     And, again, just so the record is clear, the "they" is

15  Lazard?

16  A     They.  I apologize.  Lazard performed a very unusual

17  analysis that was included in the book.  It related -- the

18  analysis related to transactions that occurred in 2005 for

19  the most part and some in 2006 and 7, and then computed a

20  premium and then I -- I believe -- I had difficulty

21  following it because it's not something that we've ever

22  performed ourselves -- and then added that premium to the

23  comparable company ranges.  So it just didn't intuitively

24  seem to be a -- a reliable method and, you know, obviously,

25  had we chosen it would have resulted in a higher value

1  because the range -- the resulting range almost by

2  definition the way that the exercise was designed is much

3  higher.

4       But we -- we just couldn't follow it and understand it

5  well enough to include it so we excluded it.

6  Q    Okay.  Now when Lazard discarded that method, they

7  left the weighting as between the other two methodologies at

8  forty percent to the comps and sixty percent to the DCF.

9  You adjusted that to fifty/fifty.  Why did you make that

10 adjustment?

11 A    Again, it's just more of a philosophy of, you know,

12 you keep things even and then come up with good reasons why

13 to change them.  And in this case, you know, looking at the

14 comp sets and looking at the discounted cash flow, there was

15 no rationale to suggest that the quality of information of

16 one or the other was meaningfully different.  As a result, I

17 would just weigh them evenly.

18 Q    And, Mr. Singh, what was the overall difference in the

19 valuation conclusion for the broadcasting segment between

20 you and Lazard?

21 A    Yeah, this is sort of the opposite of our findings in

22 the publishing where, if you recall, in publishing, most of

23 the change, most of the $200-million change really related

24 to the weighting.  In this instance, the vast majority of

25 the change, in this case, 169 million, really related to

1  updating financial and market data, and 150 to 142 was that,

2  and only 20 to 24 was the weighting.  So the weighting

3  change at the end of the day was, you know, a relatively

4  small percentage of the total change.  So it didn't, you

5  know, to be colloquial, didn't move the meter a whole lot.

6  It just -- but certainly, you know, 20 to $24 million is a

7  meaningful number.

8  Q    Okay.  Let's move on to Tribune's non-controlled

9  interests, and this update begins at Page 23.  And as we

10 move into this section, Mr. Singh, I just want to remind you

11 to be cognizant of the confidentiality restrictions related

12 in particular to the Food Network information.

13 A    Right.

14 Q    So with that in mind, can you describe at a general

15 level how you went about conducting your valuation for these

16 assets?

17 A    Sure.  You know, this is a little bit more of a

18 complex exercise because, if you recall, what they refer to

19 non-controlled interests really are three substantial

20 businesses, TV Food Network, Classified Ventures and

21 CareerBuilder.  There's some other assets in there, but they

22 don't -- we don't really address them because they don't

23 have, you know, as significant a values associated with

24 them.  And within those three companies, under this non-

25 controlled -interest umbrella, we -- there is different

1   aspects to the exercise that we addressed, but common

2   throughout all of them was updating financial and market

3   data.  We updated the market data for February 18th, and we

4   updated the financial data through February 21st.  So that

5   was consistent with what we did in other areas, but in terms

6   of the methodology adjustments, we had somewhat different

7   changes in each of the different areas, which, you know, I

8   can walk through.

9   Q     Okay.  Well, let's turn to Page 24, where you've

10  summarized some of those changes.  And let's start here with

11  just understanding what the quantum of these various changes

12  was.

13  A     Sure.  Well, the total change in this section is very

14  significant.  It's a total of $796 million.  Out of that

15  $796 million, if you kind of go to the middle of the page,

16  that number one, updated financial and market data, 588 to

17  628 of it is the updated financial and market information.

18  So the majority of it really is updating of information.

19  The -- to the right, the number two methodology adjustments,

20  that's also a big number, but it's the minority of the

21  overall change, and that is a 227 to 147-million-dollar

22  range.  And the other thing you'll note, you know, the top

23  three items are the items we addressed, which is TV Food,

24  CareerBuilder and Classified.  The rest of the items didn't

25  really have significant changes relative to the aggregate,

1    so the section will focus on those three.

2    Q    Okay.  Well, let's start with TV Foods.

3    A    Sure.

4    Q    And you've summarized your adjustments there on Page

5    25.  And what I'd like you to start with here is you've

6    listed the methodologies that you've applied, the comparable

7    company analysis, the precedent transactions, and then you

8    go to the weighting.  Why did you not conduct a discounted

9    cash-flow for this asset?

10   A    Well, we noted that there was a couple instances in

11   our due diligence that we found that Lazard did do a

12   discounted cash flow.  I believe maybe one was in the

13   February timeframe and --

14   Q    February of --

15   A    Excuse me, February 2010 timeframe, and another one

16   was -- I'm going to guess -- September 2010 timeframe, but

17   there was no discounted cash-flow analysis included in their

18   February 8th report.  And given the magnitude of this asset,

19   we were actually somewhat surprised that they did not

20   include it, but it was not available for us to analyze and

21   we didn't have the data to reperform one.

22   Q    Okay.  Let's start then with the updated financial and

23   market data for this asset.  How did that impact your

24   valuation?

25   A    As you saw on the previous page, 24, the updating of

1   financial market data increased the valuation by between 280

2   and 308 million, so it was very significant; however, as

3   opposed to, perhaps, the market driving a significant

4   portion of the value, in this instance, it was probably the

5   company's performance that drove a significant portion of

6   the value change.  And what we attempted to do, and I won't

7   -- I'll try not to use numbers -- is if you look under the

8   column that says detail, there's really two boxes, one

9   that's a Lazard valuation and one that says TFN Management

10  Committee Meeting.  And the numbers under the Lazard

11  valuation, you'll see 2010 and 2011.  Those are the numbers

12  they used in their report.  Under the 1/27 management

13  meeting, you'll see the numbers that have now been updated

14  for the 2010 actual and the 2011 estimated, and you'll see

15  that the variances are very significant, you know, and when

16  you apply a multiple to the dollar values here, you know,

17  that results in a big portion of the total change.

18  Q     Okay.

19  A     And the other thing I wanted to note here is, you

20  know, we -- as part of our analysis, there was a lot of

21  public disclosures by the parent company, Scripts, that had

22  indicated that the company was outperforming, and we created

23  a proxy for what we believed the updated numbers to be

24  because we didn't have access to them, and we used that

25  proxy in our report.  So as a result, when we now became

1   aware of these TFN Management Committee numbers, our report

2   would also come down in value.  So their report would go up

3   significantly still in value, but our report would come down

4   by almost $71 million.

5   Q    Okay.  Now, let's turn to the comparable company

6   methodology.  What changes did you make here to what Lazard

7   did?

8   A    Well, in Lazard's comparable company analysis, and

9   again, you have to take into consideration that there was no

10  discounted cash flow, so traditionally in valuation, you're

11  going to use a DCF method, discounted cash-flow method, a

12  comparable-company analysis and a precedent-transaction

13  analysis.  They used one company as their comparable

14  company, and in their precedent transaction, they used one

15  company as their precedent transaction.  So, you know, what

16  we did was we reviewed the Lazard materials, and they had

17  identified Discovery as a potential comparable company at

18  some point earlier, and we reviewed Discovery's material in

19  detail, and we believed that it was a reasonably good

20  comparable company.  I think that they only really relied on

21  Scripts on the rationale that Scripts is the parent company

22  of TFN, and therefore, you know, if it's the parent company,

23  it's got to be a very good comparable company, and that

24  logic is sound.  It obviously is a very good comparable

25  company, but you have to take into consideration that

1    Scripts, as a whole, has other related businesses that, you

2    know, has its own performance.  So the value of Scripts

3    isn't solely dependent on the value of TFN.  It's a

4    component piece, but it's not solely dependent, and to

5    describe that, we included this small chart here, and we

6    essentially just tried to show the EBITDA margin for TFN as

7    we computed it is approximately 56.7 percent, and the EBITDA

8    margin for SNI as a whole, and this is public information,

9    is 40.9 percent.  So obviously, TFN is -- outperforms SNI.

10   Then, if you go to the right, SNI excluding TFN, so if you

11   were to take that out, SNI's percentage goes down

12   meaningfully, which tells you that TFN really carries a lot

13   of the burden for SNI.  And then furthermore, we compared

14   Discovery and, you know, TFN performs very well compared to

15   Discovery.  Then, we looked at revenue growth in a similar

16   way and, you know, had similar findings that, you know, TFN

17   performs very well compared to SNI.  So, yeah, we agree SNI

18   is a good comp, but we also believe that TFN may be a, you

19   know, a core-value driver within SNI relative to the other

20   assets in SNI's portfolio because they do have other assets.

21   And, you know, using Discovery as just another market check

22   to think through, you know, how would you compare -- if SNI

23   is comparable to Discovery, you know, why would you not

24   include it, and in our research, we found, for example, JP

25   Morgan, in addition to Lazard, and, I think, Morgan Stanley,

1    in one of their research reports in addition to Lazard,

2    state that Discovery is a reasonably good comp.  So our

3    analysis supplemented by some third party supplemented by

4    what Lazard said got us comfortable including it and got us

5    comfortable that, you know, TFN, you know, is also, based on

6    our analysis, a very meaningful part of Scripts.  So --

7    Q      And, Mr. Singh        , now let's move to the

8    precedent transaction analysis, and please describe what

9    changes you made there.

10   A      Precedent transaction analysis, again, you know, I

11   want to go back to this.  There was no DCF, there was one

12   comparable company, and there was one precedent transaction

13   as a reference point.  The one reference within the

14   precedent transaction was the purchase of the Travel Channel

15   by Scripts, and that was the only point reference we had.

16   And we reviewed again.  Within the Lazard material, we found

17   another comp called the Weather Channel, and we studied the

18   Weather Channel a little bit, and at Raymond James, we had

19   some additional materials that were able to read about and

20   better understand some of the metrics within Weather Channel

21   and some of the valuation metrics associated with that

22   transaction.  So we felt we had accurate information

23   associated with the transaction.  So we added the Weather

24   Channel as a precedent transaction, and in addition, you

25   know, the weather channel multiple came in a very close

1  range to the Travel Channel multiple, and we adopted the low

2  end of that range, meaning, the Weather Channel actually was

3  lower than the Travel Channel multiple.  And as a result, we

4  also, you know, updated the range because of that, so in

5  this section, we actually adopted our own ranges because we

6  were dramatically changing the composition of the pools

7  within the comparable company and precedent transactions.

8  So there's nothing to index off of.  There was only a

9  company, a single company, and we believe that there should

10  be more than one company in these instances, so we adopted

11  our own range based on the means and medians, and we used

12  the means and medians and computed an overall.  And in the

13  precedent transaction, to be on the conservative side, we

14  simply used the low end of the two and computed that.

15  Q     Now, Mr. Singh        , you mentioned that Lazard

16  used one comparable company, one transaction and no DCF.  In

17  your experience for an asset of this size, is that unusual

18  as a matter of valuation methodology?

19  A     You know, it's challenging to arrive at a good

20  conclusion using a limited amount of data points, and

21  sometimes you just don't have a choice.  It's just the

22  reality of valuation.  Sometimes you just don't have a

23  choice.  And in this instance, I was concerned because it is

24  a massive value driver for this company, and it's a very big

25  growth portion in terms of value for this company, and as a

1    result, you know, we felt that the work required, we did,

2    and we made the appropriate updates.

3    Q    Okay.  Now, let's turn to the weighting of the

4    methodologies for this asset, and here, too, you made some

5    adjustments to what Lazard did.  Can you please explain the

6    changes you made and why.

7    A    Sure.  Again, this goes back to, you know, general

8    philosophy of if you have good information in the various

9    methodologies, you know, weight them similarly and make

10   adjustments based on good reasons.  And, you know, in each

11   of the comparable company and precedent transactions, we had

12   good reasons to weight both of them.  So in the absence of

13   reasons to do otherwise, we weighted them equally.

14   Q    Okay.  Let's move on to CareerBuilder, which is Page

15   26 in the presentation.  Can you please summarize for the

16   Court the adjustments that you made to Lazard's valuation of

17   this asset?

18   A    Sure.  We updated the financial and the market data as

19   I described in the previous areas, and in this instance, we

20   -- they had a -- they had three comparable companies,

21   Monster, Dice and Manpower.  Manpower, we didn't believe was

22   a comparable company.  And again, it was pretty

23   straightforward.  Monster and Dice were internet-based

24   career websites, and Manpower is more a bricks-and-mortar HR

25   and staffing company that's all over the world.  So we

1  removed Manpower from the comp set.  The next thing we did

2  is, again, for -- this is a pretty significant asset of the

3  company.  Lazard did not perform a DCF.  They did perform

4  the comparable-company analysis, for which we modified

5  Manpower, and they did not have a precedent transaction

6  analysis.  So they were relying in their valuation solely on

7  comparable companies, which included three comparable

8  companies, of which the three, one, upon our analysis, we

9  couldn't understand why it would be included because it's

10 not even a related business.  It is a related business in

11 the sense it is in the, I guess, career-oriented arena, but

12 it's a bricks-and-mortar international staffing company

13 versus a website-driven business, which is both Dice and

14 Monster.  So again, we felt it was important to find other

15 points of references, and what we found in the precedent

16 transactions is in September 2008, CareerBuilder, the

17 company itself, sold a ten-percent block in CareerBuilder

18 that it owned, so it used to own -- you know, I don't

19 remember the percentage, but if today it owns 30.8, it used

20 to own 40 percent.  So they sold ten percent to one of the

21 partners, Ganette [ph], and we thought that was a relevant

22 comp considering it was a sale of its own company.  So, you

23 know, it's unusual you're able to find a sale of its own

24 company to make it a comp, and it also occurred in September

25 of 2008, which is a very challenging time in the market, and

1   -- which was also probably a challenging time for Tribune,

2   so, you know, we didn't think that was necessarily an

3   aggressive metric to use either because of the timing in

4   which it all occurred and probably the context in which it

5   occurred.  So we included that as a precedent transaction.

6   Q    And what is the overall difference between your

7   valuation and Lazard's with respect to CareerBuilder?

8   A    Well, what we did here is in the chart to the bottom

9   right, we actually showed Lazard's February 8th report

10  difference, and the difference is that Lazard understated

11  value by 150 to 179 -- $180 million; however, in their

12  January supplement, we looked at that briefly, and it

13  appears that that difference shrunk dramatically, that now

14  the difference is only 27 to $40 million.

15  Q    And do you know if the January supplement changes to

16  Lazard's never carried through to their ultimate valuation

17  conclusion?

18  A    Well, we rebutted their February 8th report, so I'm

19  assuming that that is the valuation conclusion.

20  Q    Okay.

21  A    I just put this here for illustrative purposes.

22  Q    Okay.  Let's turn next to Classified Ventures on Page

23  27.

24  A    Sure.

25  Q    And again, sir, please describe for the Court what

1  adjustments you made to Lazard's valuation for this asset.

2  A     Sure.  Again, we updated the market data.  We updated

3  the financial data, as I described in previous sections.

4  And here, they, again, didn't use a DCF, and they didn't use

5  a precedent-transaction analysis.  And what we did here is

6  we looked at their comparable-companies analysis, and we're

7  somewhat disturbed by what we found in that one of their

8  companies within their comparable-companies analysis was

9  sold, and it also stated in their comparable-companies

10 analysis that they principally relied upon that company in

11 their valuation.  So, you know, we were kind of troubled as

12 to exactly how to deal with that situation.  So they had

13 four comps, but they only really relied upon one, and that

14 one was no longer a comp.  So what we did was Internet

15 Brands, which was that comp, we then called that a precedent

16 transaction, as it was because it was now sold, and then we

17 utilized the three remaining comps, since they were included

18 on the page, and we looked at them generally and, you know,

19 they weren't necessarily, you know, spot on necessarily, but

20 we utilized them.  And we then also looked within the

21 precedent transactions through the companies report, and the

22 company in one of their reports had talked about --

23 internally about the Auto Trader transaction, which was a

24 minority purchase by the private equity fund, and that

25 traded at a 13-times multiple.  So that 13-times multiple

1  synced up very well with the Internet Brands sell of 13

2  times, so it was a validating transaction, in my mind.

3  While we didn't include it, we just kind of used that as a

4  point reference and footnoted it, so when we, you know,

5  thought about the valuation exercise here, you know, we

6  looked at the comp set, and there was three comps in there,

7  and we came up with ways to normalize those multiples, and

8  there was a couple precedent transactions in there, and, you

9  know, they seemed to validate one another, and we came up

10  with a 50-50 weighting.

11  Q    Okay.  Now, let's flip back to Page 24, which is your

12  summary page for all of the non-controlled    interests, and

13  let me ask you the -- you've talked about TV Food,

14  CareerBuilder and Classified Ventures with respect to the

15  remainder.  Did you do any update of Lazard's work?

16  A    I think we did a small update as it relates to legacy

17  and topics, and that changed the value two or $3 million,

18  and, you know, you'll see they're relatively -- relative to

19  the total value of this whole portfolio of assets, it's

20  relatively small.

21  Q    Okay.  And so overall, for non-controlled

22  interests, what was the change from Lazard?

23  A    Overall, a $796-million change, of which, as I stated

24  earlier, the vast majority really related to updates of

25  financial and market data.  That was 588 to 628, and the

1   methodology changes was 227 to 149.

2   Q    Okay.  Now, let's turn to the topic I'm personally

3   really excited to get to, which is some pension accounting,

4   Page 29.

5   A    Okay.

6   Q    And what I'd like you to do, Mr. Singh , is describe

7   for the Court what changes you made as a result of the

8   pension issue.

9   A    In the course of our due diligence, we came across a -

10  - it was actually a few days before we issued our report.

11  We were provided a February 2, 2011 board update package,

12  and within that board update package, they had a section

13  that they designated to relate to this noncash-pension

14  issue.  And I believe the reason why they wanted the board

15  to be aware of this -- well, it was in the board package,

16  and it was a pretty significant number, and I imagine that's

17  probably why it was in the board package.  And what it

18  basically stated was that there was a item called noncash-

19  pension expense that went through EBITDA, so you'd actually

20  deduct from EBITDA as part of a compensation expense of some

21  sort, this noncash-pension expense, and it was about $64

22  million.  And their actuaries just updated their actuarial

23  analysis, and they determined that upon implementation of

24  fresh-start accounting, not only would that $60 million go

25  away, it would actually turn into a credit of $25 million.

1    And as a result, you know, when we're thinking through

2    valuation and they are dedicating a whole section in a board

3    package to talk about a fresh -- a single, fresh-start

4    accounting adjustment of this order of magnitude on this

5    business, we thought it was relevant to analyze it and

6    include it in our analysis.  So what we did is, as it

7    relates to the pension section -- I apologize -- as it

8    relates to publishing and broadcasting and only publishing

9    and broadcasting -- the majority of the pension issues

10   reside there -- for the comparable-companies analysis, we

11   increased EBITDA simply by the amount of the expense.  We

12   didn't increase EBITDA for the credit, to actually bring

13   EBITDA up beyond.  We just took out this amortization

14   expense and restated EBITDA.

15   Q     And why did you do it -- excuse me -- why did you do

16   it that way?

17   A     Well, as I stated, this noncash-pension expense, what

18   it is is amortization.  It's amortization of unrealized

19   losses related to losses in their pension accounts from

20   2008.  So it's a noncash item.  It's just an amortization of

21   a previous loss.  And when you implement fresh start, those

22   -- there's going to be adjusting issues caused by fresh

23   start, and those expenses are going to go away and turn into

24   a credit balance, but I didn't take into consideration a

25   credit balance because it really -- it's a noncash item, and

1 our feeling was just to get it out of EBITDA, and that's the

2 update we did.  And we felt that the DCF, there was a line

3 item that normalized it for unlevered free cash flow, and we

4 felt that the DCF properly reflected that, so we didn't do

5 it to the DCF.  There's also about nine-some-odd million

6 that related to corporate, but we didn't again -- we

7 couldn't quite figure out how to adjust the corporate, so we

8 just left it alone, but in theory, there would be further

9 adjustments because there's nine-some-odd-million dollars

10 going through corporate expenses right now that's reflected

11 ultimately here that just -- we couldn't figure out how to

12 make the adjustment, so we just didn't make the adjustment,

13 but there would be some multiple applied to that.

14 Q    Okay.  Mr. Singh        , turn to Page 30, please.

15 A    Sure.

16 Q    And tell the Court what the magnitude was of the

17 adjustments that you made for pension.

18 A    The total midpoint increase in total distributable

19 value is 182 million, and that comes based off a range of

20 174 to 191 million.

21 Q    And the information that cased you to make these

22 adjustments that you testified you first received just a few

23 days before your report, do you know if Lazard took that

24 information into account in its valuation?

25 A    I didn't see it reflected in their valuation.

1  Q     Okay.  Now, let's get through the last couple of

2  areas.  Distributable cash.  Let's turn to Page 32, and what

3  I'd like you to do is describe for the Court how you dealt

4  with distributable cash in your valuation.

5  A     Again, we looked at the methodologies that Lazard

6  utilized in their October and March valuation analyses, and

7  we essentially replicated the methodology based on an

8  estimated, you know, effective date of June 30th.  So we

9  used our -- for example, in our DCF calculation, a June 30th

10 date, and then in terms of cash, we had an October cash

11 flow, which we then applied the new 2011 numbers to, and we

12 made an estimate.

13 Q     Let me just stop you for a second and ask you to

14 explain.  What's the purpose of this analysis?  What is it

15 that you're trying to achieve?

16 A     Well, when we're trying to arrive at total

17 distributable value, there's three component parts.  There's

18 the value of the core businesses, the value of the non-

19 controlled  businesses, and then there's the value of the

20 total distributable cash at the assumed effective date.  So

21 we were trying to arrive at the best proxy we could for that

22 number.

23 Q     Okay.  Turn to Page 33, please.

24 A     I'm there.

25 Q     And can you explain what the magnitude was of the

1  difference between how you and Lazard dealt with this item

2  and how you got there.

3  A    Well, it resulted in a very significant increase.

4  It's an increase of approximately $157 million to total

5  distributable value.  You know, I should caveat that.  There

6  are some deficiencies with the analysis which, you know, may

7  change that number ultimately because there's assumptions

8  made.  Whenever you make assumptions, you know, assumptions

9  can change, so I do caution you that the 157 million may

10 change ultimately.

11 Q    Okay.  And what assumptions are you talking about?

12 A    Again, we didn't have a statement of cash flows based

13 on the 2011 budget.  We had a statement of cash flows that

14 was provided in October based on an earlier version of the

15 2011 budget.  So we had to take that statement of cash flows

16 and update it for the revised EBITDA projections.  So, you

17 know, we're just updating a revised EBITDA, and we do that

18 calculation and we capture that, and obviously, EBITDA may

19 be higher or lower ultimately, and also cash flow from

20 operating activities does have a degree of seasonality to

21 it, so there may be seasonality impacts of when certain cash

22 flows are generated, when taxes are paid, when you may

23 receive distributions related to your non-controlled

24 assets.  So there's a variety of things that can affect both

25 positively and negatively.  And the second column,

221

1   investment activities -- investing activities, I apologize,

2   capital expenditures, you know, I don't know what the

3   company's timing is to spend $130 million, and I don't know

4   if they started that or that's impacted by their

5   reorganization timing, et cetera.  And finally, financing

6   activities.  I think this relates to what they expected

7   would be amortization-related, their exit wound.  So

8   obviously, that likely would not be applicable in the first

9   six months.  And then moving over to the right, where you

10  see less and then several items, some of those items may

11  change.  For example, you know, during my deposition, we

12  discussed restructuring professional fees.  To the extent

13  that the restructuring professional fees that the debtor

14  incurs on behalf of all the professions, I suppose, exceed

15  $87 million, that number will go up, and that'll reduce

16  cash.  So there are several factors on this page that could

17  change, but in the absence of an actual cash flow and the

18  absence of updated numbers, I just created the best proxy I

19  could because as you can see by the result, it's meaningful,

20  and it's an important number.

21  Q    Well, given all of the uncertainties that you've just

22  described, why go through the exercise of trying to estimate

23  cash at a future date at all?

24  A    Well, this is the methodology that has been done by

25  Lazard in the previous two valuation reports, and I think

1   it's a methodology that constructs a reasonably accurate

2   estimate for what the projected cash is.  The challenges,

3   just simply, are, you know, there's a lot of assumptions

4   that go into it and things change.  So, you know, it's a

5   good proxy, and it's a lot of value, and I think it's

6   important for people to be aware of things that actually

7   may, you know, aren't hard to quantify ultimately because

8   the cash number will be the cash number, but it's a very

9   significant change in value.

10  Q    Okay.  Let's turn now, Mr. Singh  , to the last

11  section dealing with the other wholly-owned assets.  This is

12  set forth on Page 35 of your presentation.  Can you -- first

13  of all, what assets are we talking about here?

14  A    There's principally two assets within the other

15  wholly-owned assets category, Tribune Media Services, or

16  TMS, and ForSaleByOwner.com, and we generally kind of put

17  them together just because by order of magnitude,

18  ForSaleByOwner is, you know, less than ten percent of the

19  total value, so we just, for illustrative purposes here,

20  just kind of included all those at one.

21  Q    Okay.  Can you describe for the Court, please, the

22  principal changes that you made to Lazard's valuation of

23  TMS?

24  A    Sure.  It's really in two categories, as in the past.

25  If you go to the middle of the page, there's a one, and it's

1   says updated financial market data, we updated the financial

2   and market data.  And as a result, it increased the value 42

3   to 46 million.  And if you go over to the right, the

4   adjusting of weightings, here, that was again a somewhat

5   unique circumstance.  We looked at their precedent

6   transactions analysis, which is the middle column of the

7   chart.  What they did was they used a bid from a sale --

8   incomplete sale process from 2008 and called that a

9   precedent-transaction analysis.  And we were not satisfied

10  that that was a valid exercise.  It was just simply a bid,

11  and it's not a precedent-bid analysis or precedent-

12  transactions analysis.  So we basically invalidated that

13  analysis and reallocated the ten percent that Lazard

14  allocated to comparable companies.

15  Q     And what was the overall difference in your conclusion

16  to Lazard?

17  A     Well, the weighting difference caused a seven-to-

18  eight-million-dollar difference, so in relation to the

19  total, obviously, that's much smaller, but the aggregate

20  difference is $51 million.

21  Q     Okay.  Mr. Singh        , let's now turn to the last

22  slide.  It's on Page 37.  It's a repeat of the value bridge

23  that we saw earlier.  I'd like to sort of just sum up for

24  the Court, please, what your conclusion is with respect to

25  the enterprise value of Tribune.

1  A     Well, the enterprise value that we concluded is

2  approximately $8.2 billion.  A substantial portion of the

3  enterprise value changed, as I described earlier, related to

4  the orange boxes, which is about $839 million, which is

5  updated in the financial and market data.  And then, the

6  next category in the green box, which is modifying some of

7  the weightings as it relates to publishing, broadcasting and

8  other wholly-owned based on the issues that we found with

9  respect to the methodologies employed and led us to conclude

10 to update those weightings.  And the balance is as described

11 in the blue.

12 Q     Okay.

13 A     So the conclusion's $8.2 billion total valuation --

14 total distributable value, excuse me.

15 Q     Okay.  Thank you.  I have nothing further.

16         THE COURT:  Cross examination.  Tell you what,

17 let's take a ten-minute break, and then we'll start cross.

18         MR. QURESHI:  Thank you, Your Honor.

19         THE COURT:  Stand in recess.

20     (Recess taken from 4:42 to 4:53 p.m.)

21         MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

22 the debtor.  May I proceed with the cross examination?

23         MR. QURESHI:  Can I raise one issue before you go

24 on with the demonstratives?

25         MR. BENDERNAGEL:  Sure.

1          MR. QURESHI:  Your Honor, I'm sorry for

2  interrupting.  I thought I would raise this issue now rather

3  than interrupt the cross once it has commenced.  We're going

4  to have a dispute with respect to certain demonstrative

5  exhibits that I understand Mr. Bendernagel would like to use

6  on the cross examination.

7          And the dispute, Your Honor, is this:  The case

8  management order quite clearly provides in paragraph 33 that

9  parties shall serve all demonstrative exhibits -- it says

10  all -- on one another no later than 24 hours before the

11  hearing at which the exhibits are proposed to be used.  I

12  saw these exhibits for the first time in the binder that I

13  was just handed.  My understanding is that they were emailed

14  to us at approximately 1 p.m. this afternoon, and I will

15  add, Your Honor, that our book of demonstratives that we

16  used on the direct was sent to Mr. Bendernagel at 3:25

17  yesterday afternoon, almost exactly 24 hours ahead of time.

18          And we'll also add that we had proposed to you

19  certain demonstrative exhibits in our cross examination of

20  Professor Black.  Those were sent to the other side the

21  night before, as required by the CMO.  It turned out we did

22  not use them, but nonetheless, the CMO required advance

23  notice, so we gave it.

24          And lastly, Your Honor, I will point out that my

25  good friends at Davis Polk back there also understand the

1    rule because today, this morning, we received from them a

2    demonstrative exhibit that they anticipate using in the

3    cross examination of Mr. Groper, who is expected to testify

4    tomorrow morning.  So respectfully, the rule ought to apply

5    to Mr. Bendernagel, as well.  It's clear.  We've all been

6    compliant by it, and it's just not fair to allow him to

7    proceed with us.

8              MR. BENDERNAGEL:  May I respond, Your Honor?

9              THE COURT:  Certainly.

10              MR. BENDERNAGEL:  Your Honor, we got the revised

11    report of Mr. Tuliano at 10:30 Saturday night.  We got

12    demonstratives which are radically different than the setup

13    in his report late yesterday afternoon, and we've worked

14    hard to put together certain things.  I'll point out one

15    thing.  We didn't get work papers supporting the new

16    calculations in this report, and we haven't made an issue

17    out of that, but certain of the demonstratives were done to

18    reflect those kind of calculations.  Now, I could move

19    forward today without these.  I'm not sure I'm going to

20    finish today with my cross, and we can talk about this

21    later.  I don't think the demonstratives, which are simply

22    rerunning certain of his calculations based on changes that,

23    you know, are obvious from the page is going to change that.

24    I can do it without the demonstrative.  I thought the

25    demonstrative would be helpful in terms of showing the

1    information.  But I'm not going to get there for a little

2    bit of time, and, you know -- but I think we have the right

3    to put these in, and the fact that we didn't know what they

4    were going to do when they revised this report.

5            And this set of demonstratives is entirely

6    different than the report they provided.  If you take a look

7    at the bridge that they have in this document, this bridge

8    doesn't look at all like the bridge that's in the report

9    that they provided Saturday night.  It's a different

10   demonstrative.  So I think we should get some leeway in that

11   regard.  If we can't, I'll just move forward without that

12   leeway, but that's our position.

13           MR. QURESHI:  If I may briefly respond, Your

14   Honor.  Two points.  First of all, there are no new work

15   papers with respect to the demonstrative exhibits that we

16   handed up.  Secondly, with respect to the revised report, it

17   is true that we turned that over on Saturday night, and

18   there, I will only say that's a heck of a lot more notice

19   than we got with respect to Professor Black, from whom we

20   received the revised report the night before his

21   examination.

22           Finally, Your Honor, with respect to the alleged

23   differences between the demonstrative exhibits and the

24   expert report, the demonstrative exhibits are different in

25   how they present the data.  The distributable value chart,

1  for example, the numbers are exactly the same, as explained

2  by the corrections made to the report.  It's just broken

3  down in a little more detail than the report, but there are

4  no new numbers and no new analyses in the demonstratives

5  that were not in the updated expert report.

6          MR. BENDERNAGEL:  Your Honor, may I respond to

7  that?

8          THE COURT:  Won't be necessary because here's

9  what we're going to do.  We're going to adjourn for the day

10  so that Mr. Qureshi will have some time to look at the

11  demonstratives, which frankly the Court finds very helpful

12  for reasons which are obvious to everybody.  But we'll start

13  at 9:00 tomorrow to see if we can recapture a little bit of

14  the time we might have lost by adjourning a little earlier

15  than I'd contemplated today.

16          Any questions before we adjourn?

17          MR. BENDERNAGEL:  Let me, in fairness to the

18  witness, let me hand out the cross binder so he sees what it

19  is so that he'll be familiar with what's in the cross

20  binder, if that makes any sense.  The demonstrative's in

21  there, as well, but they have the demonstratives, but I'll

22  hand out the cross binder if that'd be helpful to them.

23          MR. QURESHI:  We have it already.

24          MR. BENDERNAGEL:  Oh, okay.

25          THE COURT:  Okay.

229

1              MR. BENDERNAGEL:  All right.  Then I don't have

2    to hand -- so I'm giving him the sleeves on my vest.  Sorry,

3    Your Honor, I --

4              MR. QURESHI:  One clarification, and I just want

5    to make sure.  Cross has not yet commenced.  Am I free to

6    consult with the witness this evening?

7              THE COURT:  Yeah.  Cross has not commenced.

8              MR. QURESHI:  Thank you.

9              MR. BENDERNAGEL:  I was distracted by that, but I

10   take it what you said is they can continue to talk to the

11   witness because cross has not commenced.

12             THE COURT:  Correct.

13             MR. BENDERNAGEL:  That's fine, Your Honor.

14             THE COURT:  Now, does starting at 9 o' clock

15   cause any heartburn for anybody?

16        (No audible response)

17             THE COURT:  Okay.  I hear no response.  We --

18   we'll need to adjourn at 5:30 tomorrow, see how much we can

19   get done.

20             MR. BENDERNAGEL:  Thank you, Your Honor.

21             THE COURT:  Court is adjourned.

22             MR. QURESHI:  Your Honor.

23   (Proceedings adjourned at 4:59 p.m.)

24

230

1                              <u>CERTIFICATION</u>

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter.

5

6

7    _____        <u>14 March 2011</u>

8    Transcriber                                    Date

9

1                          INDEX

2    WITNESSES:                Direct   Cross   Redirect   Recross

3    Brian Wittman                 19      53         98

4    Eddy Hartenstein             104     136        151        158

5    Rajinder Singh               161
6            Voir Dire            165     174
7                                                    179
8
9
10
11
12
13
14                          EXHIBITS
15   DCL EXHIBITS:                     Identified    Received

16   1108 - Settlement of Intercompany
17          Claims Report                  43            44
18
19   1109 - Liquidation Analysis          19            24

20   1110 - Parent Distributable Value
21          & Base Creditor Recoveries    34            34
22

23   NPP EXHIBITS:

24   2469 - Amended 3/12 Expert Report   185           185

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **08-13141-kjc**(1) 1:5 | | **activities**(7) 26:10 84:6 84:7 220:20 221:1 221:1 221:6 | | **advisory**(1) 20:7 | | **allocated**(7) 32:3 35:19 38:14 57:16 57:19 58:8 223:14 |
| **11-precedent**(1) 124:4 | | | | **affect**(3) 49:9 191:3 220:24 | | |
| **13-times**(2) 214:25 214:25 | | | | **affected**(2) 27:25 112:25 | | **allocation**(14) 13:6 58:2 58:17 58:18 63:21 63:24 63:24 67:1 67:7 67:8 67:22 69:25 70:2 70:7 |
| **147-million-dollar**(1) 204:21 | | **actual**(10) 22:3 90:7 90:10 122:17 132:12 154:14 154:14 190:19 206:14 221:17 | | **affects**(1) 119:9 | | |
| **200-million**(1) 202:23 | | | | **affiliate**(1) 50:23 | | |
| **5-percent**(1) 124:5 | | | | **affiliates**(1) 106:22 | | **allocations**(1) 66:24 |
| **65-percent**(1) 117:11 | | | | **after**(12) 15:8 15:15 27:4 37:14 37:20 46:11 47:10 50:5 100:2 107:4 160:1 194:10 | | **allow**(5) 28:23 97:7 134:15 159:9 226:6 |
| **796-million**(1) 215:23 | | **actually**(32) 11:24 12:5 14:4 16:11 28:3 37:23 38:23 55:10 57:19 58:13 80:25 106:16 124:2 125:19 143:2 151:19 186:11 188:8 188:9 189:24 190:23 191:11 192:20 205:19 210:2 210:5 213:9 216:10 216:19 216:25 217:12 222:6 | | | | **allowed**(12) 32:6 47:14 48:8 48:9 50:21 50:23 50:24 51:12 56:8 61:4 61:24 81:5 |
| **a-typical**(2) 86:11 86:13 | | | | **afternoon**(10) 14:13 103:3 135:11 135:23 160:6 165:14 165:16 225:14 225:17 226:15 | | |
| **a.m**(4) 1:15 11:1 53:7 53:7 | | | | | | **allowing**(1) 49:5 |
| **abid**(1) 160:7 | | | | **again**(65) 19:1 30:25 39:5 41:4 46:22 47:1 51:8 53:16 63:8 78:7 81:14 83:6 102:2 110:20 112:14 124:20 125:13 125:14 127:21 128:24 129:8 130:23 131:8 131:12 132:24 150:4 150:24 157:9 168:24 170:10 170:18 178:13 183:24 187:5 187:12 187:19 189:19 190:9 192:23 193:24 193:2 194:6 198:5 198:14 198:23 199:1 199:18 201:2 201:14 202:11 207:9 209:10 209:16 211:7 211:22 212:2 212:14 213:25 214:2 214:4 218:9 219:5 220:12 223:4 | | **allows**(1) 39:8 |
| **ability**(9) 110:10 112:7 114:2 115:4 116:10 116:17 117:3 134:13 174:21 | | **actuals**(1) 185:7 199:4 | | | | **almost**(12) 24:5 70:25 82:14 109:16 116:2 124:2 124:4 124:23 190:24 202:1 207:4 225:17 |
| | | **actual'**(1) 122:13 | | | | |
| **able**(24) 13:25 30:1 60:13 60:15 60:15 109:16 110:4 110:6 110:13 110:16 111:6 111:19 114:10 115:24 116:5 116:5 134:8 157:20 159:19 164:13 176:25 186:11 209:19 212:23 | | **actuarial**(2) 25:8 216:22 | | | | **alone**(3) 28:15 123:12 218:8 |
| | | **actuaries**(1) 216:22 | | | | **along**(6) 12:23 19:17 50:15 129:1 178:16 184:8 |
| | | **adam**(1) 3:19 | | | | |
| | | **add**(8) 15:10 28:23 37:7 96:3 96:9 181:14 225:15 225:18 | | | | **already**(2) 15:9 228:23 |
| **about**(100) 11:21 13:22 16:5 16:8 21:24 23:25 27:6 29:23 30:10 33:12 35:18 38:19 42:14 43:18 47:1 48:22 51:15 52:4 55:20 60:1 61:12 61:17 64:10 68:25 71:21 71:25 74:2 75:24 77:15 78:22 80:21 83:4 84:12 87:3 87:4 87:19 87:25 93:15 96:4 96:5 96:6 101:13 104:13 105:21 107:25 108:18 108:23 109:21 110:19 111:8 112:10 119:10 123:1 124:9 129:25 130:24 131:12 131:17 132:13 136:1 136:24 142:3 143:9 143:18 147:4 149:6 156:1 156:9 157:3 158:2 159:18 161:21 162:2 163:16 167:16 182:22 184:23 186:19 186:21 193:17 199:11 200:23 203:15 209:19 214:22 214:23 215:13 216:21 217:3 218:5 220:11 222:1 224:4 226:20 | | **added**(3) 181:16 201:22 209:23 | | **against**(14) 27:13 32:16 35:9 38:8 49:1 49:13 50:6 51:1 59:6 59:8 59:12 109:23 117:25 124:21 | | **also**(61) 11:20 20:13 20:19 22:2 22:2 22:15 25:17 26:6 37:18 38:9 41:13 44:12 45:1 47:19 55:8 56:1 66:24 69:15 73:15 78:3 81:10 81:12 82:7 82:7 114:9 115:3 124:13 128:11 129:24 132:14 135:16 137:10 139:6 156:10 156:13 157:3 157:19 159:8 161:4 165:6 170:19 176:3 176:25 179:3 180:23 187:19 192:14 200:6 204:20 207:2 208:18 209:5 210:4 212:24 213:1 214:9 214:20 218:5 220:19 225:18 225:25 |
| | | **addition**(5) 28:18 106:9 208:25 209:1 209:24 | | | | |
| | | **additional**(9) 15:7 15:16 27:4 68:5 93:20 93:22 183:1 185:9 209:19 | | **agent**(2) 45:25 46:1 | | |
| | | | | **aggregate**(6) 47:8 49:8 51:13 79:8 204:25 223:19 | | **alter**(1) 100:16 |
| | | **address**(3) 66:4 177:11 203:22 | | | | **alternative**(1) 85:21 |
| **above**(3) 126:25 139:10 189:8 | | **addressed**(4) 175:5 175:8 204:1 204:23 | | | | **although**(8) 66:20 84:21 86:13 88:4 95:4 96:20 97:9 142:11 |
| **aboveentitled** (1) 230:4 | | **addressing**(1) 66:4 | | **aggregated**(1) 120:16 | | |
| **absence**(4) 189:15 211:12 221:17 221:18 | | **adelman**(1) 7:38 | | **aggressive**(1) 213:3 | | |
| **absent**(3) 34:20 199:11 | | **adjourn**(3) 228:9 228:16 229:18 | | **agnostic**(1) 99:19 | | **alvarez**(3) 4:8 8:45 10:21 20:2 20:5 20:6 20:23 53:21 60:22 61:6 61:13 70:3 70:6 73:9 73:18 80:6 81:18 88:24 94:24 |
| **absolute**(1) 126:12 | | **adjourned**(2) 229:21 229:23 | | **ago**(10) 51:15 130:2 139:9 147:24 149:2 170:6 170:16 170:18 170:19 174:5 | | |
| **absolutely**(2) 56:15 197:22 | | **adjourning**(1) 228:14 | | | | |
| **academic**(1) 85:10 | | **adjust**(6) 36:10 36:23 103:11 160:18 182:8 218:7 | | **agreeable**(1) 17:14 | | **always**(3) 70:14 148:16 177:22 |
| **accept**(2) 83:9 193:9 | | | | **agreed**(6) 14:20 18:3 18:18 37:25 40:24 80:2 | | **amalgamation**(1) 144:17 |
| **accepted**(3) 11:17 66:7 66:10 | | **adjusted**(8) 30:13 61:4 83:14 96:13 195:11 195:14 195:17 202:9 | | | | **amended**(5) 161:7 181:21 184:13 185:1 185:15 |
| **access**(5) 60:13 67:21 70:20 172:25 206:1 | | | | **agreement**(6) 4:26 5:36 52:15 52:23 91:22 92:2 | | |
| **accordingly**(2) 23:11 61:14 | | **adjusting**(1) 188:21 217:22 223:4 | | | | **america**(2) 6:4 6:10 |
| **account**(18) 28:7 31:8 35:21 35:23 35:24 38:9 38:10 46:3 58:6 75:20 91:21 124:13 127:23 148:19 150:4 179:6 198:9 218:24 | | **adjustment**(12) 42:1 45:12 46:24 47:4 50:23 183:1 202:10 217:4 218:12 218:12 | | **ahead**(12) 17:13 47:24 49:16 109:5 139:14 139:17 141:5 141:17 144:12 155:9 177:15 225:17 | | **among**(3) 57:17 87:1 105:8 |
| | | | | **ahmed**(1) 9:45 | | **amongst**(2) 73:14 196:3 |
| | | **adjustments**(29) 28:22 28:22 30:8 30:11 31:1 31:1 36:25 38:3 38:5 38:6 40:2 43:1 106:7 182:23 182:25 183:17 183:20 198:1 200:7 204:6 204:19 205:4 211:5 211:10 211:16 214:1 218:9 218:17 218:22 | | **aircraft**(1) 107:5 | | **amortization**(5) 181:15 217:3 217:18 217:18 217:20 |
| **accountancy**(1) 20:12 | | | | **akin**(7) 2:33 7:31 13:4 17:17 135:12 160:7 179:15 | | |
| **accountant**(2) 20:14 53:18 | | **adler**(1) 3:47 | | | | **amortization-relate**(1) 221:7 |
| **accountants**(1) 124:11 | | **administrative**(5) 26:17 31:14 45:22 46:4 79:13 | | **alleged**(1) 227:22 | | **amount**(40) 29:7 31:23 37:21 38:13 40:25 41:1 41:8 41:16 41:19 41:24 42:10 43:6 44:21 46:12 46:14 47:8 50:4 51:11 51:17 52:11 61:23 72:16 72:20 72:22 73:4 73:5 73:15 84:21 88:10 92:2 93:24 96 100:17 100:24 101:1 101:2 109:12 175:2 210:20 217:11 |
| **accounted**(2) 22:14 75:18 | | | | **allentown**(1) 108:6 | | |
| **accounting**(8) 75:20 124:10 124:14 147:3 163:8 216:3 216:24 217:4 | | **admission**(2) 34:5 44:1 | | **allinson**(1) 4:11 | | |
| | | **admit**(1) 24:14 | | **allison**(1) 5:23 | | |
| **accounts**(4) 29:9 123:3 125:12 217:19 | | **admitted**(8) 24:17 24:18 34:9 34:11 44:5 44:6 185:21 185:23 | | | | |
| **accruacy**(1) 60:24 | | | | | | **amounts**(10) 31:10 33:9 33:10 33:20 33:21 45:2 49:8 60:25 91:23 92:6 |
| **accrued**(4) 41:11 72:20 91:23 92:4 | | **adopt**(1) 15:23 | | | | |
| **accurate**(3) 130:2 209:22 222:1 | | **adopted**(4) 65:15 210:1 210:5 210:10 | | | | **amusing**(2) 82:16 82:20 |
| **achieve**(1) 219:15 | | **advance**(6) 51:9 67:24 68:6 69:13 145:21 225:22 | | **all**(111) 11:4 13:2 14:6 14:20 15:13 16:12 16:13 16:16 17:13 18:3 18:5 19:19 21:1 21:22 22:27 23:10 28:4 32:7 34:21 34:22 35:16 35:24 37:5 39:17 39:21 42:11 46:3 46:16 47:6 47:13 47:15 48:9 48:9 49:5 49:6 49:15 51:20 53:4 62:19 63:19 65:25 69:9 78:13 78:15 79:8 80:9 82:22 83:11 84:5 89:11 99:1 102:19 104:2 107:10 108:10 109:16 112:10 117:21 124:8 129:1 127:4 128:9 130:5 133:11 135:20 141:24 142:6 142:24 143:6 145:12 146:23 149:1 150:13 150:17 151:24 156:17 158:25 159:12 159:24 161:21 163:21 168:2 169:13 171:9 172:10 173:17 174:21 177:10 180:6 180:25 184:4 187:6 194:2 196:21 198:3 201:1 204:2 211:25 213:4 215:12 221:14 221:21 221:23 222:13 222:20 225:9 225:10 226:5 227:8 227:14 229:1 | | **analyses**(7) 23:18 28:24 99:22 102:5 102:6 219:6 228:4 |
| **acknowledged**(1) 191:8 | | **advantages**(1) 118:20 | | | | |
| **acknowledging**(1) 152:8 | | **advertisers**(1) 129:20 | | | | |
| **acquiring**(1) 134:19 | | **advertising**(18) 108:13 109:12 110:2 123:7 123:10 123:12 125:16 125:17 126:1 126:8 127:10 127:18 127:20 128:24 129:21 148:3 148:15 | | | | |
| **acquisitions**(1) 164:1 | | | | | | |
| **across**(12) 29:2 31:10 40:3 45:3 108:10 108:11 129:22 142:2 175:19 175:21 187:1 216:9 | | | | | | |
| | | **advise**(2) 20:23 164:7 | | | | |
| **action**(6) 27:15 33:16 52:21 62:12 62:19 62:21 | | **advised**(6) 20:20 21:6 21:7 21:14 22:5 88:22 | | | | |
| | | | | **alleged**(1) 227:22 | | |
| **actions**(10) 27:7 34:20 39:7 47:3 62:25 64:14 64:20 65:10 65:14 66:2 | | **advises**(1) 168:12 | | | | |
| | | **advisor**(4) 25:8 25:10 25:12 29:13 | | | | |
| | | **advisors**(1) 37:13 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**analysis**(185) 18:7 18:21 19:13 21:18 21:21 21:22 22:16 22:20 22:21 23:7 23:20 23:22 24:1 24:2 24:9 24:21 25:4 25:15 26:21 27:1 27:8 27:11 27:13 27:25 28:4 28:14 28:16 31:20 33:6 33:11 33:12 33:15 33:19 34:14 35:8 35:14 39:13 39:23 42:23 45:10 47:11 47:25 48:2 48:19 48:23 49:10 49:19 49:22 49:24 50:17 51:9 51:11 51:22 51:23 52:13 52:15 59:22 61:12 61:13 62:15 62:17 62:22 64:19 67:14 67:25 68:18 68:20 69:10 69:14 72:3 76:5 76:14 79:17 80:18 80:19 80:23 81:1 81:3 81:11 81:16 81:21 81:24 82:3 82:6 82:8 82:23 83:2 83:17 83:18 85:23 86:3 86:4 86:8 86:14 86:16 86:22 88:7 88:13 88:25 89:1 89:3 89:6 89:7 89:18 90:12 91:9 91:11 92:10 93:2 93:4 93:11 93:14 93:16 94:4 94:6 94:9 94:12 94:14 94:14 94:25 95:4 95:19 95:23 96:14 96:16 96:23 96:25 97:11 99:11 99:12 99:13 99:20 100:14 101:6 102:4 102:9 169:25 180:4 180:20 181:5 181:6 182:1 182:7 182:11 187:17 189:21 190:5 190:6 191:20 192:9 193:6 193:15 200:16 201:12 201:17 201:18 205:15 205:17 206:20 207:8 207:12 207:13 209:7 209:6 209:8 209:10 212:4 212:6 212:8 214:5 214:6 214:8 214:10 216:23 217:6 217:10 219:14 220:6 223:6 223:9 223:11 223:12 223:13 231:19

**analytical**(2) 193:10 194:13
**analytically**(1) 194:11
**analyze**(6) 61:2 61:7 96:17 186:12 205:20 217:5

**analyzed**(4) 49:11 76:24 89:14 189:25
**analyzing**(3) 22:12 46:21 175:2

**and**(301) 11:13 11:15 11:16 11:22 12:2 12:4 12:11 12:19 12:24 12:25 13:4 13:9 14:3 14:7 14:8 14:15 14:18 14:20 14:23 15:3 15:4 15:6 15:14 15:20 15:20 15:24 16:3 16:6 16:7 16:11 16:12 16:21 17:4 17:5 17:10 17:11 17:14 17:18 17:21 17:25 18:1 18:5 18:11 18:13 18:16 19:14 19:14 19:16 19:18 20:3 20:5 20:7 20:10 20:15 20:18 20:20 20:20 20:22 20:24 20:25 21:1 21:4 21:8 21:9 21:13 21:15 21:17 21:21 21:21 21:24 21:24 22:2 22:6 22:8 22:8 22:11 22:13 22:21 23:6 23:19 23:19 23:20 23:21 24:11 24:18 24:23 24:24 25:3 25:10 25:12 25:17 25:20 25:20 25:21 25:24 25:25 26:3 26:3 26:6 26:10 26:11 26:12 26:17 26:21 26:24 27:3 27:4 27:6 27:22 28:7 28:9 28:21 28:22 28:23 29:1 29:2 29:3 29:9 29:11 29:13 29:19 30:21 29:22 29:25 30:2 30:3 30:4 30:11 30:21 30:22 31:5 31:6 31:9 31:9 31:12 31:17 32:2 32:9 32:13 32:14 32:19 32:20 33:1 33:4 33:14 33:19 33:24 34:1 34:5 34:11 34:21 34:25 35:1 35:3 35:6 35:18 35:18 35:22 36:22 37:1 37:13 37:16 37:19 37:21 37:24 38:13 39:7 39:13 39:16 39:19 40:2 40:5 40:8 40:15 40:15 40:21 40:23 41:1 41:2 41:5 41:9 41:12 41:14 41:15 41:18 42:1 42:8 42:17 42:17 42:19 42:22 43:4 43:16 43:23 44:6 44:10 44:15 44:16 44:24 45:3 45:4 45:8 45:10 45:11 45:15 45:18 45:23 46:1 46:2 46:5 46:7 46:11 46:20 46:23 47:3 47:5 47:21 48:7 48:8 48:13 48:18 49:2 49:13 50:2 50:3 50:5 50:11 50:15 50:21 51:23 52:6 52:9 52:10 52:12 52:16 52:19 52:21 52:25 53:1 53:15 53:20 53:21 53:23 54:1 54:5 54:8 54:12 54:16 54:19 54:23 55:1 55:3 55:3 55:4 55:6 55:8 55:13 55:17 55:20 55:20 55:23 56:1 56:4 56:6 56:11 56:15 56:20 56:23 56:23 57:4 57:16 57:17 57:25 58:2 58:5 58:9 58:10 58:21 59:1 59:11 59:14 59:14 59:17 59:19 59:20 59:20 59:21 59:22 59:25 60:5 60:5 60:8 60:11 60:17 60:20 60:21 60:23 61:1 61:2

**and**(301) 61:2 61:17 61:21 63:19 63:21 64:12 64:16 64:19 64:25 65:17 65:22 66:24 67:4 67:7 67:8 67:14 67:17 67:20 67:21 67:25 68:5 68:20 68:20 68:22 69:18 70:1 70:6 70:11 70:19 70:23 71:10 71:11 71:18 72:6 72:7 72:11 72:14 72:15 72:16 72:19 72:21 72:25 73:4 73:9 73:10 73:13 73:13 73:15 73:18 73:21 73:21 74:3 74:1 74:20 75:3 75:6 75:9 76:9 76:12 76:18 77:1 77:10 77:19 78:7 78:12 78:20 78:20 78:22 78:25 78:25 79:3 79:16 79:18 79:20 79:24 80:1 80:2 80:6 80:6 80:6 80:12 80:15 81:2 81:5 81:11 81:18 82:1 82:23 83:6 83:7 83:9 83:13 83:14 83:18 83:23 84:2 84:4 84:6 84:9 84:12 84:15 85:6 85:14 85:18 85:22 85:24 86:1 86:4 86:7 86:19 86:19 86:23 87:1 87:11 87:14 87:22 88:1 88:15 88:20 88:22 88:23 88:24 89:1 89:10 89:14 90:9 91:3 91:4 91:9 91:10 91:16 91:23 91:24 91:24 92:4 92:6 92:17 92:21 93:4 93:7 93:13 93:18 94:12 94:20 94:24 95:1 95:5 95:6 95:7 95:11 95:14 95:20 95:25 96:1 96:3 96:9 96:10 96:11 96:12 96:20 98:8 98:20 98:21 98:25 99:1 99:4 99:10 99:14 99:16 99:19 100:1 100:6 100:14 100:17 100:18 100:25 101:2 100:16 101:14 101:16 101:18 101:21 101:24 102:6 102:7 102:10 102:24 103:4 103:5 103:9 103:20 103:23 104:8 104:10 104:12 104:14 104:16 104:18 105:7 105:11 105:12 105:16 105:16 105:19 106:3 106:6 106:7 106:12 106:13 106:14 106:17 106:19 107:6 107:7 107:10 107:11 107:13 108:17 108:19 109:7 109:15 109:19 109:22 109:25 110:2 110:5 110:6 110:7 110:11 110:15 110:16 110:21 110:23 110:24 111:1 111:4 111:5 111:13 111:14 111:15 111:21 112:1 112:14 112:16 112:25 113:4 113:8 114:10 114:16 114:17 115:2 115:5 115:11 115:20 116:4 116:17 116:18 117:4 117:11 117:12 117:15 117:19 117:20 117:20 118:25 119:1 119:9 119:12 119:25 120:3 120:4 120:5 120:10 120:14 120:22 120:25 121:8 121:11 121:15 121:25 122:4 122:23 123:7 123:9 123:9 123:19

**and**(301) 123:23 123:24 124:5 124:11 124:19 124:25 125:2 125:3 125:7 125:15 125:19 125:21 126:9 126:9 126:11 126:13 126:21 126:25 127:7 127:8 127:14 127:17 127:20 127:20 127:21 127:22 128:4 128:10 128:24 129:6 129:10 130:17 130:21 130:24 131:2 131:13 131:16 131:18 131:18 132:4 132:7 132:13 132:15 132:17 132:23 132:24 133:2 133:9 133:10 133:18 133:23 133:25 134:1 134:8 134:8 134:15 134:18 134:21 134:25 135:13 135:15 135:17 136:1 136:4 136:7 137:3 137:6 137:14 137:20 137:22 138:5 138:11 138:16 138:20 138:25 139:1 139:6 139:16 140:14 140:21 140:23 140:25 141:2 141:9 141:17 142:2 142:3 142:11 142:18 143:7 143:18 143:21 144:2 144:3 144:4 144:6 144:12 144:22 145:3 145:5 145:8 145:23 146:19 147:14 148:3 148:7 148:8 148:15 149:5 149:9 149:17 149:21 149:22 151:8 152:20 152:21 152:24 153:5 153:9 154:3 154:4 154:8 154:10 154:17 154:21 155:1 155:8 155:20 155:24 156:4 156:7 156:14 156:18 156:24 157:1 157:7 157:11 157:17 157:20 158:5 158:6 159:9 159:9 159:14 159:18 159:20 159:25 159:25 160:7 160:8 160:16 160:18 160:20 161:4 161:5 161:6 161:7 161:8 161:13 161:14 161:15 161:15 162:4 162:10 162:13 162:17 162:19 162:25 163:2 163:3 163:5 163:10 163:13 163:13 163:14 163:15 163:20 163:23 163:24 163:25 164:1 164:1 164:3 164:4 164:6 164:8 164:13 164:17 164:18 164:19 165:5 165:15 166:3 166:11 166:15 166:19 166:24 167:2 167:8 167:8 167:24 168:7 168:11 168:13 168:17 168:24 169:3 169:13 170:12 170:13 170:19 171:4 171:6 171:7 171:12 171:16 171:17 172:7 172:10 172:13 172:16 173:2 173:17 173:23 174:4 174:6 174:8 174:20 174:25 175:3 175:4 175:6 175:7 175:8 175:10 175:13 175:13 175:21 175:25 176:5 176:8 176:10 176:11 176:12 176:15 176:17 176:17 176:18 176:19 176:19 176:23 176:24 177:1 177:2 177:4 178:3 178:3 178:9 179:3 179:17 179:19 179:25 180:6 180:6 180:8 180:10 180:10 180:12 180:13 180:14 180:14 180:15 180:18 180:20 180:25 181:6 181:8 181:10 181:10 181:13 181:22 181:23 181:24 182:1 182:6 182:11 182:14 182:14 182:18 182:23 182:25 183:1 183:7 183:8 183:11 183:14 183:15 183:16 183:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 183:21 183:23 183:24 184:1 184:6 184:9 184:9 184:16 184:20 185:1 185:7 185:8 185:12 185:14 185:23 186:2 186:3 186:7 186:11 186:13 186:14 186:16 186:17 186:19 186:23 187:3 187:4 187:7 187:9 187:16 187:17 187:18 187:19 187:21 187:23 187:23 188:1 188:4 188:15 188:16 188:20 188:22 189:2 189:4 189:5 189:8 189:9 189:12 189:22 189:25 190:1 190:1 190:3 190:6 190:8 190:9 190:17 190:19 190:20 191:3 191:3 191:5 191:13 191:14 191:17 191:20 191:24 192:2 192:5 192:8 192:10 192:12 192:14 192:19 192:22 192:21 192:23 193:1 193:5 193:7 193:12 193:13 193:22 193:22 194:2 194:7 194:8 194:10 194:15 194:15 194:21 195:2 195:4 195:6 195:11 195:12 195:14 195:15 195:22 195:23 196:2 196:4 196:6 196:9 196:10 196:11 196:13 196:16 196:18 196:19 197:5 197:6 197:20 197:20 198:6 198:6 198:9 198:10 198:12 198:14 198:20 198:21 199:2 199:3 199:4 199:6 199:10 199:10 199:13 199:17 199:18 200:2 200:11 200:11 200:14 200:19 200:25 200:25 201:2 201:4 201:6 201:6 201:7 201:14 201:19 201:19 201:19 201:20 201:22 201:24 202:2 202:8 202:12 202:13 202:14 202:18 202:20 203:1 203:1 203:2 203:9 203:9 203:20 203:24 204:2 204:3 204:10 204:16 204:17 204:21 204:22 204:24 205:4 205:5 205:7 205:13 205:15 205:18 205:20 205:2 206:2 206:6 206:6 206:9 206:10 206:11 206:14 206:14 206:15 206:19 206:22 206:24 207:8 207:12 207:14 207:16 207:18 207:19 207:22 207:23 208:4 208:5 208:7 208:8 208:13 208:14 208:16 208:21 208:2 208:25 209:4 209:7 209:8 209:12 209:15 209:16 209:17 209:18 209:19 209:21 209:24 210:1 210:3 210:7 210:9 210:11 210:11 210:12 210:12 210:14 210:16 210:20 210:23 210:24 210:25 211: 211:4 211:6 211:9 211:10 211:11 211:18 211:19 211:21 211:22 211:23 211:24 211:25 212:5 212:13 212:15 212:21 212:22 212:25 213:4 213:6 213:7 213:10 213:12 213:15 213:25 214:4 214:4 214:5 214:6 214:9 214:13 214:16 214:18 214:18 214:21 214:21 214:24 215:4 215:6 215:7 215:7 215:8 215:9 215:12 215:14 215:17 215:17 215:18 215:21 215:25 215:25 216:6 216:1 216:14 216:16 216:16 216:17 216:21 216:22 216:23 217:1

**and**(78) 217:2 217:5 217:8 217:8 217:9 217:14 217:15 217:21 217:23 217:23 217:25 218:1 218:2 218:3 218:16 218:19 218:21 219:2 219:6 219:6 219:10 219:11 219:13 219:19 219:25 220:1 220:2 220:11 220:16 220:17 220:18 220:18 220:19 220:25 220:25 221:3 221:5 221:9 221:10 221:15 221:17 221:20 221:24 222:5 222:5 222:16 222:16 222:25 223:2 223:2 223:3 223:8 223:9 223:11 223:13 223:15 224:5 224:5 224:7 224:9 224:10 224:17 225:7 225:14 225:18 225:24 226:6 226:13 226:16 226:20 227:2 227:3 227:5 227:17 227:23 228:4 229:4

**anderson**(5) 4:17 20:17 20:21 20:22 53:21
**andrea**(1) 7:47
**andrew**(9) 3:29 3:38 4:6 5:29 5:30 5:41 7:7 7:9 53:14

**angeles**(12) 4:42 105:19 106:13 106:16 106:16 106:17 106:19 108:2 109:17 111:13 120:10 129:6

**angelo**(2) 5:44 138:10
**anna**(2) 8:9 8:9

**another**(21) 12:6 32:5 39:21 52:6 59:6 73:19 77:9 80:15 93:21 95:7 106:10 121:21 124:16 196:10 197:9 200:21 205:1 208:21 209:17 215:9 225:10

**answer**(13) 12:11 57:6 57:10 67:22 68:5 99:4 108:15 108:18 108:25 109:2 118:11 120:18 128:15

**anticipate**(3) 93:9 142:11 226:2
**anticipating**(1) 167:23
**any**(98) 12:7 13:16 13:17 18:5 18:7 18:19 22:22 24:15 25:1 25:3 27:8 27:24 33:7 33:13 34:7 34:20 38:18 39:6 42:4 44:3 47:3 52:12 52:21 57:7 60:22 61:7 61:10 61:13 61:14 61:17 61:18 63:20 64:6 79:6 81:5 85:9 85:23 86:3 87:15 88:2 89:2 90:18 90:24 91:10 95:8 95:8 95:11 97:21 99:2 99:7 99:14 100:6 100:7 106:22 106:24 108:22 110:17 116:13 117:9 118:17 132:21 143:2 143:3 144:13 150:20 151:13 153:18 157:23 162:13 163:10 165:1 166:3 166:7 166:21 167:2 168:20 169:3 169:7 170:3 170:17 174:9 177:1 178:4 178:21 179:20 184:9 186:8 186:11 189:16 192:22 192:25 193:7 196:18 197:24 215:15 228:11 228:20 229:15

**anybody**(3) 12:5 110:6 229:15
**anyone**(4) 61:6 77:19 88:24 158:2
**anyone's**(1) 103:25
**anything**(7) 59:18 60:22 85:19 87:5 178:23 187:6 187:13

**anywhere**(2) 131:8 134:1
**apart**(2) 100:13 100:15
**apologize**(5) 129:13 192:20 201:16 217:7 221:1

**appearance**(1) 166:20
**appearances**(6) 5:9 6:1 7:1 8:1 9:1 10:1
**appears**(3) 145:23 170:21 213:13
**apples**(2) 183:20 183:21
**applicable**(1) 221:8
**applied**(10) 38:24 80:14 89:4 89:11 181:7 181:8 200:25 205:6 218:13 219:11

**applies**(1) 176:15
**apply**(4) 29:19 175:23 206:16 226:4
**applying**(4) 45:8 47:10 52:3 101:8
**appointment**(1) 26:9
**appraisal**(2) 98:9 98:10
**appreciate**(2) 12:14 17:20
**appreciated**(1) 187:8
**approach**(9) 26:2 26:8 47:17 103:17 135:7 160:24 188:17 193:22 199:22

**appropriate**(12) 17:10 27:15 53:2 70:11 71:19 73:12 73:24 88:25 95:6 159:13 177:20 211:2

**appropriately**(1) 71:15
**approval**(1) 120:6
**approved**(7) 30:22 57:8 58:5 58:16 115:15 122:7 149:10

**approximately**(28) 26:20 32:17 40:13 40:14 40:19 41:1 41:3 41:17 41:23 43:5 43:7 47:5 52:8 71:24 79:19 98:18 101:3 101:5 101:15 101:18 164:9 164:13 184:14 184:17 208:7 220:4 224:2 225:14

**april**(4) 53:1 70:21 98:8 98:11

**are**(194) 11:23 12:7 12:8 13:11 15:5 16:9 16:18 16:18 18:14 19:16 20:1 21:4 26:10 29:4 29:6 29:10 29:13 29:17 30:8 30:17 30:25 31:2 31:3 33:9 33:20 36:15 36:25 37:5 37:11 37:19 37:20 38:6 38:7 39:5 40:14 40:15 40:22 42:4 42:22 45:22 45:24 46:12 49:3 50:12 51:13 52:25 58:6 62:23 62:24 63:9 64:13 71:14 71:15 71:18 71:19 71:19 73:3 78:17 78:19 78:22 79:4 79:16 80:3 81:12 82:8 83:12 83:23 84:2 84:3 84:17 84:18 86:21 88:5 89:25 90:25 91:20 96:10 96:12 101:9 101:17 103:21 106:4 106:14 106:15 106:17 105:12 106:1 106:6 106:18 108:2 108:9 108:9 108:9 108:11 109:22 109:23 110:4 110:7 110:14 110:15 110:16 110:20 110:20 111:9 111:11 111:15 111:19 111:19 111:21 112:22 113:4 113:21 114:5 114:10 115:8 115:15 118:1 118:21 118:23 119:1 119:2 119:2 123:6 123:25 125:11 126:12 127:6 127:6 127:20 127:23 129:6 130:11 131:8 131:11 131:12 131:19 131:23 133:1 133:21 134:22 135:3 143:3 144:2 144:3 145:3 145:20 146:19 147:17 147:17 157:1 157:11 157:12 161:12 162:10 162:17 163:21 164:12 164:13 170:3 173:17 180:5 185:6 192:12 192:15 192:24 193:7 196:1 196:4 197:2 203:19 204:23 206:11 206:15 217:2 217:23 220:6 220:11 220:22 220:22 221:16 222:3 222:13 225:11 226:12 226:2 226:23 227:14 227:24 228:1 228:3 228:12

**area**(6) 44:16 106:18 134:6 167:7 169:7 176:1

**areas**(9) 99:8 161:25 162:12 183:18 183:19 204:5 204:7 211:19 219:2
**aren't**(3) 59:1 81:23 222:7
**arena**(1) 212:11
**argue**(2) 73:4 73:5
**argument**(2) 96:23 177:12
**arise**(3) 31:15 40:18 106:7
**arises**(5) 40:20 45:13 45:19 45:24 60:7
**arising**(5) 49:25 50:2 94:7 94:15 113:17
**arithmetic**(1) 153:6
**arose**(2) 12:16 59:24
**around**(11) 19:20 23:2 44:14 44:17 50:14 59:22 70:20 76:17 100:24 135:1 137:18

**arps**(1) 7:18
**arranged**(2) 136:2 138:1
**arrive**(5) 194:14 200:17 210:19 219:16 219:21

**arrived**(2) 186:3 194:14
**arthur**(2) 20:17 53:21
**article**(1) 94:16
**articulated**(2) 95:5 97:13
**ashby**(1) 2:42
**ashish**(1) 7:43
**ashley**(2) 3:31 5:13
**aside**(1) 109:7
**ask**(24) 12:6 15:3 74:2 74:8 74:24 76:1 82:22 88:11 89:7 95:7 103:6 108:21 118: 119:11 159:15 162:6 165:7 173:24 174:10 177:13 179:21 186:19 215:13 219:13

**asked**(17) 23:13 23:23 31:13 54:10 54:13 65:2 144:10 145:3 146:11 149:6 151:7 157:3 157:19 179:14 179:15 186:21 187:2

**asking**(2) 146:17 181:4
**aspect**(2) 28:3 171:15
**aspects**(5) 27:24 175:3 175:4 175:6 204:1
**assert**(1) 76:20
**assessment**(2) 73:23 74:1

**asset**(19) 8:4 8:5 29:3 37:7 66:12 89:14 89:14 89:18 89:18 162:1 197:6 205:9 205:18 205:23 210:17 211:4 211:17 212:2 214:1

**assets**(43) 24:23 24:24 25:16 25:18 25:18 26:4 26:10 27:21 29:5 29:16 30:5 35:6 36:17 36:22 37:19 38:18 38:20 81:5 84:9 84:15 84:16 85:18 85:25 87:20 108:1 108:8 108:9 108:17 111:9 111:11 162:4 171:6 192:13 203:16 203:21 208:20 208:20 215:19 220:24 222:11 222:13 222:14 222:15

**assigned**(1) 176:6
**assignment**(5) 162:14 164:6 171:20 171:21 176:13

**assimilate**(1) 110:14
**assist**(3) 23:16 24:21 179:15
**associated**(12) 27:17 27:20 27:20 27:21 30:9 181:13 186:15 194:11 198:16 203:23 209:21 209:23

**associates**(4) 110:18 161:13 169:22 170:19
**assume**(17) 25:24 26:2 26:6 26:9 42:10 66:8 78:12 80:8 83:2 84:5 85:24 86:16 90:1 90:5 91:12 91:15 101:24

**assumed**(17) 26:4 27:2 58:22 69:16 76:5 76:9 78:3 79:12 79:16 85:25 88:15 91:16 92:10 93:11 97:11 102:10 219:20

**assumes**(6) 33:13 64:7 93:2 93:4 142:21 142:24

**assuming**(4) 84:16 87:24 199:25 213:19
**assumption**(11) 27:10 27:11 42:17 42:18 71:22 73:16 77:13 85:21 94:18 95:3 101:21

**assumptions**(27) 25:14 25:16 25:17 25:19 25:21 26:25 27:7 27:16 27:18 69:19 69:22 69:25 70:2 81:11 82:8 82:11 82:13 82:15 96:5 96:5 99:21 144:7 220:7 220:8 220:8 220:11 222:3

**asylum**(1) 4:7
**attached**(5) 80:20 80:23 91:9 93:6 93:17
**attacking**(1) 17:6
**attempt**(2) 60:23 114:12
**attempted**(3) 178:17 189:5 206:6
**attempting**(4) 126:5 127:15 127:16 130:9
**attended**(1) 138:7
**attention**(8) 32:22 74:13 111:22 137:16 139:25 140:21 184:21 191:4

**attract**(4) 114:2 114:13 116:10 116:17
**attributable**(2) 195:12 195:13
**attribute**(2) 128:8 129:16
**audible**(3) 135:8 150:21 229:16
**audit**(2) 60:23 61:1
**augmenting**(1) 122:5
**august**(4) 106:20 106:21 107:3 107:15
**aurelius**(8) 2:33 7:26 7:27 13:5 17:18 135:13 160:8 179:16

**austin**(7) 1:25 6:21 65:18 77:10 78:8 95:16 165:15

**author**(1) 81:20
**auto**(1) 214:23
**automotive**(2) 21:8 21:13
**available**(13) 52:25 70:11 75:5 101:8 114:5 138:24 146:14 146:24 148:20 150:5 185:22 188:25 205:20

**ave**(1) 1:37
**avenue**(3) 2:8 2:44 4:40
**average**(4) 32:21 47:16 162:18 189:1
**avoidable**(1) 61:15

| Word | Page:Line |
|---|---|

**avoidance**(10) 34:20 39:7 47:3 62:25 64:13 64:17 64:20 65:10 65:13 66:2

**avoided**(32) 62:2 62:8 62:16 63:2 63:9

**aware**(18) 42:4 59:1 69:21 69:24 71:22 72:1 73:7 76:23 87:8 87:10 87:11 115:8 115:15 133:16 185:1 207:1 216:15 222:6

**away**(6) 91:2 117:13 118:22 133:10 216:25 217:23

**awkward**(4) 113:9 116:24 117:2 117:20

**axis**(3) 126:17 126:24 129:1

**bachelor**(1) 163:7

**bachelor's**(2) 20:12 20:13

**back**(30) 13:15 29:1 45:19 46:4 53:1 59:19 63:1 65:25 91:8 93:8 107:14 118:24 128:22 142:4 142:5 144:22 145:8 148:8 170:7 181:14 181:17 181:18 182:12 186:1 186:22 191:7 209:11 211:7 215:11 225:25

**backed**(1) 71:10

**background**(3) 51:5 161:20 163:6

**bad**(1) 129:24

**baiera**(1) 5:45

**baked**(1) 143:3

**balance**(11) 35:5 40:16 44:24 46:23 50:22 60:7 92:4 93:9 217:24 217:25 224:10

**balances**(6) 22:12 22:14 44:11 44:12 45:8 47:18

**bale**(1) 5:50

**baltimore**(5) 70:16 98:3 98:6 98:16 108:6

**bank**(8) 6:4 6:10 8:12 8:28 8:28 9:4 46:3 162:3

**banker**(3) 175:25 176:21 176:21

**bankers**(2) 176:2 176:19

**banking**(7) 162:5 162:11 162:15 162:23 164:4 171:4 175:20

**bankruptcy**(55) 1:1 1:20 21:2 21:4 21:19 21:20 23:17 24:2 37:11 72:25 75:19 97:7 110:8 110:9 110:15 110:19 112:4 112:17 112:25 113:4 113:8 113:11 113:15 113:21 114:1 114:10 114:14 115:15 134:12 134:1 134:22 134:25 137:11 141:21 142:13 142:15 142:24 151:17 151:20 151:23 152:4 152:7 152:9 152:12 157:4 157:13 157:18 157:24 157:25 167:13 167:24 167:25 169:4 192:15

**bar**(5) 126:11 126:21 192:18 192:18

**barclays**(3) 2:48 9:9 9:9

**barely**(1) 113:20

**bars**(1) 186:16

**base**(39) 19:14 22:21 23:5 33:24 34:18 34:19 35:1 35:8 39:3 39:4 39:5 39:11 40:3 41:20 41:22 43:10 43:12 46:17 47:2 49:7 52:7 62:23 62:24 64:12 64:12 65:1 65:12 65:12 65:15 66:11 68:1 99:11 100:16 101:4 114:8 121:4 171:18 175:23 231:21

**based**(55) 27:11 29:12 30:12 30:15 30:16 32:3 32:15 37:11 37:12 37:14 37:20 37:21 44:20 49:24 52:13 58:8 68:19 72:11 75:21 78:7 78:9 93:25 94:17 97:1 97:13 114:8 119:13 127:9 156:24 173:17 174:6 175:11 175:12 178:16 180:22 181:5 181:6 182:21 187:10 189:2 196:8 196:10 196:13 199:2 199:3 209:5 210:11 211:10 218:19 219:7 220:12 220:14 224:8 226:22

**basically**(13) 18:13 107:10 107:21 115:21 115:23 122:3 123:6 123:23 148:1 157:15 197:5 216:18 223:12

**basis**(23) 27:12 33:9 45:18 47:18 57:18 61:15 65:9 73:12 78:25 85:16 86:2 86:9 88:16 89:12 89:15 89:25 109:10 118:19 124:25 144:15 173:21 175:10 175:11

**bate**(3) 143:24 146:13 149:6

**bates**(3) 128:22 128:23 155:25

**bay**(1) 170:21

**bear**(2) 69:5 147:1

**beating**(1) 139:20

**became**(2) 88:20 206:25

**because**(44) 13:25 60:13 64:20 71:5 71:15 83:6 86:7 101:7 111:1 113:2 119:17 131:15 159:5 169:24 170:15 174:3 182:24 186:6 187:13 188:2 190:7 199:22 200:15 201:21 202:1 203:18 203:22 206:24 208:2 210:4 210:5 210:23 212:9 213:3 214:16 217:25 218:9 220:7 221:19 222:7 222:17 226:1 228:8 229:11

**become**(2) 133:4 146:24

**becoming**(1) 111:22

**been**(60) 11:23 13:21 14:5 18:3 21:21 22:2 22:11 23:17 32:8 37:9 37:23 54:13 54:19 66:21 69:14 69:23 71:17 72:21 72:22 72:23 72:25 76:25 87:9 92:6 92:7 105:2 105:20 106:20 109:13 110:4 110:6 110:9 113:19 114:3 114:4 114:10 114:14 120:7 120:12 120:13 133:14 138:1 141:25 169:3 169:7 171:13 171:14 172:4 172:14 173:25 179:7 206:13 221:24 226:5

**before**(48) 1:19 11:11 16:25 18:24 36:19 37:10 37:10 54:13 58:14 63:3 63:12 67:16 67:16 68:2 68:13 72:14 79:7 80:19 80:25 90:3 95:15 103:20 114:6 115:8 118:4 118:17 121:17 129:2 129:16 133:22 136:8 138:17 148:5 149:16 149:16 162:19 179:3 180:1 182:4 184:20 185:25 216:10 218:23 224:23 225:10 225:21 227:20 228:16

**began**(2) 20:17 172:6

**begin**(2) 134:15 174:3

**beginning**(5) 37:3 99:2 109:14 144:25

**begins**(2) 119:20 203:9

**behalf**(7) 19:7 53:15 53:15 71:23 160:8 179:15 221:14

**behind**(6) 113:22 117:7 130:1 142:4 142:5 200:5

**being**(23) 34:19 34:21 38:11 38:24 47:2 48:8 48:9 48:10 48:14 65:2 78:21 86:23 90:5 94:1 113:2 115:24 126:10 131:15 133:2 133:23 138:17 139:13 153:13

**labor**(1) 97:24

**believe**(46) 14:16 26:23 42:14 42:15 57:10 58:13 63:24 77:1 77:1 81:24 82:14 86:8 86:14 88:5 92:1 95:6 98:3 101:16 108:17 108:19 110:11 121:8 130:2 135:16 136:6 141:24 143:23 146:22 149:23 155:3 170:5 173:8 174:23 177:6 178:2 184:19 185:6 197:13 200:15 201:10 201:20 205:12 208:18 210:9 211:21 216:14

**believed**(3) 14:25 26:23 207:19

**below**(4) 50:24 126:21 189:8 192:25

**bench**(1) 127:8

**benchmarked**(1) 192:7

**benchmarks**(1) 106:1

**bendernagel**(69) 1:26 16:20 16:25 17:14 19:8 19:12 102:22 103:3 103:4 103:17 103:20 104:4 109:3 109:6 116:16 116:22 116:23 118:5 118:6 118:9 118:12 135:4 135:15 135:19 140:10 142:12 143:6 149:6 149:23 150:23 150:24 151:1 153:17 153:22 155:18 158:10 159:3 159:13 165:2 165:11 165:13 165:15 171:25 172:3 173:20 174:2 174:17 177:13 177:16 177:18 178:23 179:8 181:4 185:20 224:21 224:21 224:25 225:5 225:16 226:5 226:8 226:10 228:6 228:17 228:24 229:1 229:9 229:13 229:20

**bendernagle**(1) 102:25

**beneficiaries**(1) 42:22

**benefit**(7) 43:2 43:4 79:8 101:13 125:15 171:21 171:25

**benefiting**(1) 96:10

**benefits**(2) 113:16 143:2

**benjamin**(1) 2:5

**bennett**(1) 4:36

**benson**(2) 2:26 9:14

**bergman**(1) 4:39

**bernie**(1) 66:5

**bernstein**(1) 2:6

**berry**(1) 7:34

**besides**(1) 60:3

**best**(17) 47:16 70:11 82:4 93:16 95:23 112:12 128:9 133:11 134:3 144:4 144:7 144:11 145:5 152:20 153:5 219:21 221:18

**betas**(1) 180:20

**better**(13) 26:12 111:1 111:6 112:12 134:16 134:16 142:13 158:4 184:7 190:2 193:10 194:13 209:20

**between**(35) 26:24 27:3 40:25 42:4 46:7 48:14 59:20 63:21 73:2 101:2 120:2 125:2 125:19 131:13 154:4 154:8 154:17 155:20 164:2 172:16 173:2 177:3 180:12 195:6 196:12 197:4 197:17 197:20 198:11 202:7 202:19 206:1 213:6 220:1 227:23

**beyond**(4) 60:23 69:22 108:15 217:13

**bible**(2) 103:9 160:16

**bid**(2) 223:7 223:10

**bifferato**(1) 2:19

**big**(4) 88:5 204:20 206:17 210:24

**bigelow**(3) 10:25 132:20 133:3

**biggest**(3) 127:7 129:5 148:16

**bill**(1) 173:8

**billion**(36) 35:17 41:17 43:13 44:25 46:15 46:24 46:25 46:25 48:11 50:24 51:13 51:14 51:19 52:3 52:6 55:3 55:8 55:23 56:1 56:11 57:14 57:16 58:1 71:24 73:15 87:18 101:3 141:13 161:25 162:2 162:3 190:19 190:20 196:9 224:2 224:13

**billion-three**(1) 196:23

**billion-two**(2) 196:9 196:23

**binder**(21) 19:17 24:8 28:9 32:23 34:1 36:3 39:1 43:20 47:24 74:9 74:9 74:10 120:22 131:23 136:10 140:7 143:10 225:1 228:18 228:20 228:22

**binders**(2) 103:18 103:22

**binding**(1) 18:5

**bingham**(1) 9:4

**bit**(16) 15:22 60:1 64:10 71:21 74:2 85:20 99:1 131:14 143:9 161:21 162:7 180:9 203:17 209:18 227:2 228:13

**bits**(2) 16:6 16:9

**black**(3) 66:5 225:20 227:19

**blake**(1) 4:29

**blank**(1) 5:4

**blanket**(1) 89:10

**blessing**(1) 81:23

**block**(2) 4:45 212:17

**blocks**(3) 180:13 181:1 186:13

**blue**(4) 181:10 193:16 193:18 224:11

**board**(28) 3:11 7:17 10:9 116:4 117:9 117:12 120:5 121:1 121:5 121:16 121:21 122:7 124:19 125:1 125:3 125:25 129:22 135:25 145:21 145:21 146:1 147:18 216:11 216:12 216:14 216:15 216:17 216:17 217:2

**boards**(2) 88:5 107:16

**bohan**(1) 9:32

**bond**(2) 32:19 170:1

**bone**(1) 109:22

**bonita**(1) 170:21

**bonus**(1) 114:8

**bonuses**(1) 90:22

**book**(5) 29:10 30:18 45:6 201:17 225:15

**books**(29) 41:2 41:12 41:15 44:10 44:24 45:13 46:23 48:8 54:9 59:14 59:17 59:18 59:21 60:4 60:20 60:21 60:23 61:1 67:4 72:6 72:16 72:19 73:10 73:13 73:21 74:3 83:7 83:13 83:14

**booster**(1) 119:8

**both**(29) 11:22 12:3 14:22 17:20 20:24 32:13 36:8 56:19 56:24 66:16 80:25 91:15 111:3 115:14 116:4 120:13 123:7 123:18 126:12 127:21 142:5 164:17 164:21 198:9 199:10 199:25 211:12 212:13 220:24

**bottom**(7) 32:12 44:23 55:11 91:19 140:22 184:21 213:8

**bottoms-up**(2) 119:22 123:16

**bought**(3) 136:25 137:8 151:10

**bound**(1) 116:3

**bowden**(1) 2:43

**box**(4) 147:7 181:10 182:2 224:6

**boxed**(2) 124:2 156:18

**boxes**(5) 181:2 181:19 186:2 206:8 224:4

**brad**(2) 1:28 19:6

**bradford**(1) 4:46

**brand-new**(1) 113:6

**brands**(2) 214:15 215:1

**brandywine**(1) 4:30

**break**(4) 53:6 102:23 102:24 224:17

**breakdown**(1) 186:8

**breaks**(2) 36:7 45:1

**brett**(1) 6:30

**brian**(7) 8:46 16:21 19:7 19:8 19:10 77:10 231:3

**brickley**(1) 10:14

**bricks-and-mortar**(2) 211:24 212:12

**bridge**(13) 32:18 43:14 47:6 52:9 92:13 123:21 123:24 147:18 149:9 223:22 227:7 227:7 227:8

**brief**(1) 107:19

**briefly**(7) 43:18 49:19 119:17 149:24 162:25 213:12 227:13

**brigade**(2) 8:23 8:24

**bright**(1) 117:17

**brighter**(1) 113:25

**bring**(2) 173:24 217:12

**bringing**(5) 15:25 144:13 167:6

**broad**(1) 108:25

**broad-based**(1) 129:20

**broadcast**(19) 28:1 86:12 86:14 86:20 88:7 100:11 107:22 111:12 111:14 111:15 111:25 112:1 112:2 112:7 119:23 120:16 120:17 123:18 129:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| broadcasting(46) 25:25 26:1 26:4 26:11 54:2 84:6 85:20 88:15 99:3 102:11 105:5 105:6 111:8 111:10 112:10 123:8 123:13 124:6 125:18 128:23 128:25 129:8 129:19 131:3 131:7 131:14 148:11 148:14 166:15 166:17 166:21 166:24 167:2 174:18 178:4 178:10 180:5 181:3 198:21 198:25 200:6 200:23 202:19 217:8 217:9 224:7 | | buyer(2) 197:1 197:6 calculated(6) 30:20 36:21 64:13 74:4 74:5 75:4 calculating(1) 36:15 calculation(7) 64:25 65:1 153:6 189:1 189:2 219:9 220:18 | | case(67) 1:5 9:26 14:15 22:5 23:17 26:12 30:13 30:17 34:15 34:18 34:22 37:4 37:11 39:3 39:4 39:5 39:19 40:3 41:22 43:10 46:17 47:2 50:9 50:10 50:24 54:19 63:17 64:12 66:5 92:8 98:14 98:22 99:6 99:14 103:5 128:24 144:3 144:4 144:11 144:11 145:5 145:5 145:5 145:10 146:22 147:24 148:13 152:20 152:20 152:21 153:5 153:9 153:12 155:12 155:19 159:8 159:10 171:2 172:4 174:5 177:22 177:24 196:7 197:13 202:13 202:25 225:7 | | challenges(7) 106:8 109:8 109:11 110:10 111:15 133:22 222:2 challenging(4) 108:9 210:19 212:25 213:1 chance(1) 100:2 chandler(2) 10:25 132:20 chaney(1) 9:36 change(44) 33:15 62:15 65:3 75:20 88:12 98:25 100:14 122:18 124:10 124:12 140:23 142:22 178:10 181:8 183:24 184:11 186:12 188:9 194:24 195:5 196:22 198:16 199:23 200:17 202:13 202:23 202:23 202:25 203:3 203:4 204:13 204:21 206:6 206:17 215:22 215:23 220:7 220:9 220:10 221:11 221:17 222:4 222:9 226:23 |
| broadway(1) 2:29 broke(2) 180:4 188:19 broken(1) 228:2 broker(1) 162:21 brokerage(1) 37:11 bromberg(1) 6:15 brought(7) 77:16 99:17 124:12 148:2 171:7 179:7 191:4 | | calendar(1) 147:2 california(1) 106:18 call(21) 16:20 19:7 19:8 45:25 90:14 90:16 102:22 103:4 103:6 110:17 136:3 136:7 145:21 146:1 151:25 152:1 160:11 181:10 181:14 192:14 195:10 | | cased(1) 218:21 cases(9) 21:23 22:4 22:19 99:23 144:2 144:3 145:5 148:2 153:7 cash(62) 29:7 36:18 36:23 36:25 37:21 37:22 45:14 45:14 45:16 46:2 60:7 60:9 60:10 60:13 71:18 84:17 84:18 89:24 90:1 93:8 93:9 93:21 93:22 93:25 139:21 140:22 181:17 182:11 182:19 182:21 182:23 182:24 183:6 190:5 191:1 191:2 193:19 194:10 195:13 195:15 196:10 197:20:14 205:12 207:10 218:3 219:2 219:4 219:10 219:10 219:20 220:12 220:13 220:15 220:20 221:16 221:17 221:23 222:2 222:8 222:8 | | changed(8) 68:15 87:5 87:17 100:7 178:6 178:16 215:17 224:3 changes(26) 87:16 123:6 178:12 181:23 182:14 182:18 183:8 183:12 184:2 184:5 186:13 186:15 194:23 201:1 204:7 204:10 204:11 204:25 207:6 209:9 211:6 213:15 216:1 216:7 222:22 226:22 changing(1) 210:6 channel(9) 209:14 209:17 209:18 209:20 209:24 209:25 210:1 210:2 210:3 |
| brown(3) 4:4 6:14 53:14 bruce(1) 4:36 bryan(2) 6:32 65:17 bryant(1) 2:38 budget(6) 119:15 119:18 119:20 120:19 220:13 220:15 build(2) 93:21 93:22 builder(2) 29:15 86:18 building(4) 4:30 35:7 143:19 148:15 builds(1) 64:4 buildup(1) 180:11 bullet(2) 190:12 191:8 bullets(2) 84:2 84:4 bunch(2) 152:25 159:5 buoname(1) 3:12 burden(3) 16:1 119:8 208:13 burgo(1) 2:28 bush(2) 3:37 5:27 business(64) 13:9 25:25 26:1 26:4 26:7 26:10 26:11 26:15 26:16 26:19 26:22 26:23 30:3 50:3 90:23 90:25 101:22 101:25 102:11 107:25 108:1 109:9 111:9 111:10 111:16 112:8 113:18 115:18 116:6 116:8 118:18 120:3 120:9 120:11 120:12 124:24 125:20 131:15 134:10 142:19 143:25 144:9 144:9 144:10 144:14 145:3 148:2 148:13 158:19 162:1 162:2 165:18 166:8 166:12 166:15 166:21 166:25 180:4 193:25 194:8 212:10 212:10 212:13 217:5 | | came(21) 65:17 65:22 66:13 67:9 68:2 77:10 86:11 90:19 99:15 137:17 190:20 190:23 192:20 196:9 196:10 199:8 199:9 209:25 215:7 215:9 216:9 campanario(1) 7:20 can(108) 13:10 13:15 14:9 15:8 15:16 20:16 21:9 21:17 21:25 23:12 28:9 28:10 28:11 28:12 28:20 29:4 30:9 31:1 31:17 33:25 34:1 34:13 36:5 36:14 43:1 43:19 44:20 45:9 46:17 46:20 47:3 49:15 49:19 49:22 50:4 51:13 51:22 57:9 63:4 63:13 74:23 98:9 101:24 103:12 104:5 110:17 113:14 113:24 121:11 123:5 123:23 124:7 126:10 126:12 127:14 127:20 128:9 134:2 135:23 136:4 138:16 139:24 140:16 145:12 145:19 147:22 148:14 158:8 159:9 159:16 162:7 162:9 162:25 163:5 163:14 165:4 174:5 174:25 183:12 184:4 184:22 185:12 186:23 187:15 189:19 191:9 193:13 197:12 197:24 200:7 201:9 203:1 204:8 211:5 211:15 219:25 220:9 220:24 221:19 222:12 222:21 224:23 226:20 226:24 228:13 229:10 229:19 can't(7) 15:6 58:16 140:1 142:12 166:3 167:2 227:11 cantor(1) 6:5 canyon(1) 9:35 cap(2) 161:24 193:22 capital(29) 5:48 5:48 7:26 7:27 8:19 8:20 8:23 8:24 8:40 8:41 8:49 8:49 9:9 9:21 9:22 9:44 9:44 9:46 9:46 17:18 28:5 34:23 160:8 162:4 169:25 183:3 183:4 189:2 221:2 capture(2) 189:14 220:18 career(10) 20:17 20:21 22:6 29:15 86:18 102:5 164:15 166:5 175:15 211:24 career-oriented(1) 212:11 careerbuilder(7) 203:21 204:24 211:14 212:16 212:17 213:17 215:14 careful(1) 148:19 carefully(1) 133:20 carickhoff(1) 5:5 caridas(1) 5:30 carol(1) 5:50 carolina(1) 163:9 carried(2) 68:9 213:16 carries(1) 208:12 carroon(1) 4:17 carry(1) 178:15 | | categorization(1) 134:6 characterize(6) 89:23 105:23 127:4 127:24 135:16 155:19 characterized(3) 61:19 61:23 61:24 charge(1) 102:7 chart(54) 32:11 32:23 33:2 33:7 33:8 36:4 36:5 36:7 39:2 44:19 44:20 44:23 45:1 45:6 45:7 45:7 48:2 48:3 48:17 48:24 48:25 49:2 49:16 51:9 51:24 51:24 55:18 56:6 59:16 124:16 126:1 126:7 126:18 128:15 128:20 128:22 130:6 154:22 156:1 164:9 190:17 190:17 190:18 190:21 201:2 208:5 213:8 223:7 227:25 charts(6) 19:18 49:16 126:17 128:13 145:20 184:6 chase(1) 8:12 cheapest(1) 114:20 check(3) 73:22 197:9 208:21 chicago(13) 1:31 3:14 4:48 10:4 10:5 85:6 85:7 105:16 108:3 111:14 129:6 137:25 138:6 chief(3) 105:3 105:7 133:2 choice(2) 210:21 210:23 choose(3) 117:14 117:21 159:11 chopped(1) 16:4 chosen(1) 201:25 christine(1) 9:15 chung(1) 6:11 circulation(1) 111:4 circumstanc(3) 60:17 61:10 223:5 circumstances(2) 50:5 196:2 citibank(1) 7:4 | | categories(19) 29:3 49:23 50:6 50:18 50:19 51:4 61:21 122:19 126:8 126:15 127:5 163:23 183:13 184:2 187:8 187:14 188:19 199:25 222:24 categorize(1) 47:17 category(9) 47:18 47:18 47:22 47:22 164:3 188:20 188:21 222:15 224:6 cause(1) 229:15 caused(5) 189:23 189:24 195:7 217:22 223:17 causes(6) 27:7 27:15 33:16 62:11 62:19 62:21 caution(1) 220:9 caveat(1) 220:5 cease(1) 26:10 cement(2) 113:22 142:3 center(1) 45:23 cents(3) 32:18 32:18 32:19 ceo(4) 104:23 105:24 106:5 106:13 certain(36) 25:6 36:22 42:4 42:8 44:14 59:8 59:11 63:16 66:20 72:12 73:2 84:7 85:25 91:13 117:25 145:24 157:21 175:6 175:6 176:14 176:15 180:24 181:5 182:9 182:23 183:19 185:1 189:12 189:17 189:2 220:21 225:4 225:19 226:14 226:17 226:22 certainly(9) 13:18 13:21 19:21 82:19 132:18 150:15 158:4 203:6 226:9 certainty(1) 117:16 certification(1) 230:1 certifications(1) 20:10 certified(3) 20:14 20:15 169:7 certify(1) 230:2 cetera(1) 221:5 cfo(1) 132:20 chachas's(2) 191:11 191:25 chad(1) 9:6 chadbourne(3) 3:25 5:12 challenge(3) 110:1 111:22 134:14 challenged(3) 111:18 129:19 129:24 | | |
| business-uni(1) 119:22 business-unit-by(1) 119:21 business-unit-by-business-un 123:18 businesses(13) 90:8 91:1 99:3 102:6 105:11 107:20 180:6 192:12 192:16 203:2 208:1 219:18 219:19 but(18) 11:23 12:1 12:4 12:24 13:14 15:13 15:22 15:24 16:10 18:21 25:18 37:23 41:15 55:12 56:1 57:10 57:21 70:14 72:2 73:7 73:8 75:13 77:16 78:15 80:16 81:14 82:7 82:16 84:19 86:11 87:4 88:2 88:10 90:20 91:15 92:9 92:19 93:16 94:2 94:23 96:24 101:6 103:25 108:25 110:4 111:18 111:20 114:24 115:2 116:1 129:4 129:25 133:20 133:24 135:2 143:8 145:1 148:17 149:13 153:19 154:22 155:3 158:4 158:21 159:8 159:16 162:18 164:20 165:3 165:5 165:6 167:16 168:21 169:1 169:19 170:6 171:2 171:3 171:15 171:18 171:20 173:4 173:9 173:21 173:23 178:14 179:5 179:6 180:11 182:22 183:5 184:2 187:14 188:9 191:16 193:25 195:7 195:18 197:22 198:5 202:4 203:6 203:21 204:1 204:5 204:20 205:16 205:20 207:3 207:25 208:4 208:18 212:11 212:19 214:13 214:19 217:24 218:6 218:8 218:13 221:17 222:8 223:19 225:22 226:17 227:1 227:2 227:12 228:3 228:12 228:21 228:21 229:9 buy(1) 197:6 | | | | | | | |

| Word | Page:Line |
|---|---|

**claim**(63) 17:4 17:7 17:10 17:22 17:25 18:4 18:7 18:12 18:21 32:16 32:21 35:11 39:14 40:13 40:18 40:19 40:23 40:24 41:19 42:11 42:15 45:7 48:5 48:14 49:17 50:4 50:23 51:12 52:1 52:23 54:8 58:3 58:5 58:9 58:11 58:16 58:19 59:5 61:4 61:24 61:25 62:3 62:9 63:22 64:2 64:4 64:7 71:24 74:4 74:5 77:9 78:22 79:4 83:3 83:12 92:3 92:3 92:25 100:18 100:2 101:1 101:11 119:4

**claimant**(1) 40:21
**claimants**(6) 42:2 42:21 43:4 43:5 101:15 101:16

**claimed**(2) 40:25 41:16
**claims**(134) 19:15 22:9 22:11 22:20 23:5 23:22 24:23 25:21 25:22 26:17 27:4 27:9 27:11 28:7 28:8 31:5 31:8 31:14 31:16 31:20 32:1 32:3 32:4 32:15 34:23 35:9 35:10 35:11 35:23 38:6 38:7 38:9 38:14 38:16 39:15 39:16 39:19 39:20 40:8 40:14 40:15 40:17 40:22 41:5 41:9 41:13 42:9 42:12 42:14 42:16 42:17 43:3 43:16 43:17 43:19 43:21 44:9 44:21 44:24 45:11 46:13 46:14 47:7 47:14 47:15 48:1 48:18 48:23 48:25 49:10 49:12 49:13 49:14 49:21 49:23 49:25 50:2 50:4 50:8 50:25 50:25 51:9 51:11 51:18 52:4 52:6 52:10 52:13 56:9 58:7 59:6 59:8 59:11 59:19 59:23 61:5 61:8 61:10 61:22 62:6 62:17 62:18 62:23 71:22 76:10 77:7 78:5 78:15 79:8 79:14 79:16 80:3 80:9 81:6 83:14 91:17 91:20 91:21 91:22 92:15 92:17 94:7 94:15 94:18 94:24 95:4 95:18 96:5 96:19 97:12 99:19 117:25 231:17

**claire**(1) 10:26
**clarification**(3) 23:8 92:9 229:4
**clarity**(1) 198:14
**clark**(1) 4:47
**class**(4) 31:23 32:9 43:10 119:7
**classified**(11) 29:15 36:21 37:15 38:24 86:19 112:23 126:9 203:20 204:24 213:22 215:14
**clawing**(1) 118:24
**clean**(1) 115:22
**clear**(15) 17:6 18:14 35:13 60:12 65:14 70:3 87:14 129:10 134:25 165:17 186:15 187:22 199:13 201:14 226:5

**clearly**(2) 73:25 225:8
**cleary**(1) 4:29
**clerk**(9) 11:2 53:8 74:20 103:8 103:11 103:16 160:15 160:18 160:23

**client**(5) 158:5 164:7 164:7 164:8 167:3
**clients**(4) 22:6 22:10 164:4 168:12
**climate**(1) 158:5
**clips**(4) 14:11 14:22 15:7 159:21
**clock**(1) 229:14
**close**(5) 134:1 139:23 159:5 199:3 209:25
**closed**(2) 86:1 106:3
**closer**(2) 190:8 197:17
**closing**(1) 37:10
**cloud**(3) 112:16 115:4 118:22
**clutter**(1) 165:6
**cmo**(2) 225:21 225:22
**co-president**(3) 104:11 106:9 120:9
**co-presidents**(5) 104:14 104:16 104:19 104:24 133:4

**cobb**(2) 3:18 5:33
**cognizant**(1) 203:11
**coincide**(1) 147:2
**cold**(1) 107:6
**cole**(1) 1:34
**collateral**(1) 18:15
**colleagues**(2) 13:11 155:9
**collect**(3) 24:20 35:3 84:13

**collected**(7) 24:22 35:5 35:7 35:9 37:20 37:21 93:25

**collections**(1) 60:10
**college**(1) 107:4
**collins**(1) 2:13
**colloquial**(1) 203:5
**colorful**(1) 142:3
**column**(20) 30:24 40:1 40:5 41:4 41:25 42:25 43:13 46:22 49:22 55:11 55:11 123:6 124:21 125:13 156:18 195:1 196:25 206:8 220:25 223:6

**columns**(8) 28:15 28:17 29:2 46:20 51:21 51:23 52:22 122:18

**combination**(3) 40:19 41:10 78:9
**combine**(1) 171:18
**combined**(2) 28:18 75:22
**come**(19) 14:6 29:22 37:7 41:8 53:1 63:1 88:20 103:7 117:9 123:15 134:8 136:1 142:8 167:10 174:6 186:22 202:12 207:2 207:3

**comes**(9) 26:3 39:9 43:6 46:2 98:3 112:15 119:22 162:14 218:19

**comfortable**(2) 209:4 209:5
**coming**(12) 33:10 43:8 101:20 110:20 114:4 124:24 125:21 128:11 144:15 145:4 148:14 170:2

**commence**(1) 27:2
**commenced**(4) 225:3 229:5 229:7 229:11
**comments**(1) 113:10
**committee**(11) 3:10 3:17 5:11 7:16 10:9 11:9 21:6 62:10 132:25 206:10 207:1

**committee's**(1) 105:20
**common**(3) 176:1 196:3 204:1
**communicated**(1) 65:5
**communications**(1) 176:11
**community**(1) 106:18
**comp**(11) 187:6 202:14 208:18 209:2 209:17 212:1 212:22 212:24 214:14 214:1 215:6

**companies**(35) 20:24 22:13 75:17 114:7 129:21 134:19 134:20 134:20 157:16 177:21 177:25 178:1 178:4 178:9 180:19 180:20 187:7 188:4 188:10 188:23 189:7 189:12 189:13 192:9 192:13 192:15 196:9 201:5 203:24 211:20 212:7 212:8 214:8 214:21 223:14

**company**(127) 1:8 6:35 10:13 10:17 21:12 21:16 23:16 25:1 25:16 28:17 29:7 30:21 34:17 35:6 35:17 36:8 36:17 36:20 36:23 37:16 37:18 37:22 37:24 37:25 38:15 41:12 44:15 44:25 45:16 45:20 46:11 48:5 52:21 59:17 59:19 59:21 72:13 75:6 83:15 84:17 85:12 85:12 98:7 104:9 104:11 104:23 106:6 106:22 107:4 107:5 107:21 115:24 115:25 116:3 116:10 117:3 117:11 117:25 118:19 118:23 119:14 121:5 121:22 128:6 131:19 132:6 133:2 135:1 137:8 138:3 138:8 141:10 141:24 144:8 151:11 155:6 157:12 157:13 158:21 161:25 167:1 167:24 167:25 177:23 178:10 178:20 182:7 190:4 190:6 195:12 195:15 197:10 198:22 200:24 201:23 205:7 206:21 206:2 207:5 207:8 207:13 207:14 207:15 207:17 207:20 207:21 207:22 207:23 207:25 209:12 210:7 210:9 210:9 210:10 210:16 210:24 210:25 211:11 211:22 211:25 212:2 212:12 212:17 212:22 212:24 214:10 214:22

**company's**(23) 23:21 24:22 24:23 25:7 25:8 37:13 41:2 41:15 44:10 45:14 54:25 59:14 66:23 72:6 72:15 72:19 73:10 73:21 83:7 141:21 142:22 206:5 221:3

**company.''**(1) 136:25
**company's**(6) 103:22 107:20 119:12 132:20 138:16 139:1

**comparable**(34) 177:21 177:23 177:25 178:1 178:20 180:19 182:7 188:4 188:23 190:6 192:9 195:12 195:15 200:24 201:5 201:23 205:6 207:5 207:8 207:13 207:17 207:20 207:23 207:24 208:23 209:12 210: 210:16 211:11 211:20 211:22 212:17 223:14

**comparable-companie**(4) 214:6 214:8 214:9 217:10

**comparable-company**(2) 207:12 212:4
**comparables**(1) 178:7
**compare**(5) 26:21 111:25 130:21 193:2
**compared**(8) 127:5 153:13 155:12 192:14 192:18 208:13 208:14 208:17

**comparing**(5) 27:13 117:19 153:22 153:25 156:5

**comparison**(10) 33:4 94:20 96:1 96:13 115:21 122:13 124:16 140:25 193:7 197:1

**comparisons**(1) 158:18
**compensation**(3) 114:6 179:19 216:20
**compete**(2) 113:21 115:25
**competing**(1) 115:24
**competition**(2) 91:2 113:23
**competitive**(1) 113:18
**competitors**(1) 116:6
**complete**(5) 67:25 121:11 143:21
**completed**(2) 72:24 163:19
**completes**(1) 159:3
**complex**(1) 203:18
**compliant**(1) 226:6
**complicated**(1) 174:5
**component**(7) 74:5 75:4 164:5 171:5 183:22 208:4 217:5

**components**(9) 36:7 36:10 36:16 37:6 38:22 40:12 49:11 51:16 171:5

**comported**(1) 75:11
**composition**(1) 210:6
**comprised**(1) 38:21
**comps**(5) 200:3 202:8 214:13 214:17 215:0
**computation**(2) 31:13 34:17
**compute**(2) 39:11 183:22
**computed**(7) 66:20 180:12 183:23 201:19 208:7 210:12 210:14

**computer**(1) 111:21
**computing**(1) 190:3
**conaway**(1) 4:27
**conceding**(1) 17:9
**concept**(7) 45:9 45:10 46:12 47:10 52:3 55:21 75:22

**concepts**(1) 22:1
**concern**(6) 29:16 29:18 29:19 29:25 189:23 190:2

**concerned**(1) 210:23
**concerning**(8) 27:1 27:8 42:5 43:10 47:11 50:18 50:19 119:11

**concerns**(3) 105:15 189:25 193:11
**conclude**(5) 32:9 48:1 48:22 50:18 224:9

**concluded**(9) 26:18 32:14 43:12 47:16 48:3 50:19 87:22 133:9 224:1

**conclusion**(20) 26:14 31:19 43:10 45:11 49:9 51:10 81:8 93:15 94:17 94:23 182:15 183:9 184:4 198:25 202:19 210:20 213:17 213:19 223:15 223:24

**conclusion's**(1) 224:13
**conclusions**(10) 33:7 33:15 50:4 73:17 79:6 100:7 100:14 110:2 190:5 192:6

**conclusively**(1) 200:17
**conditions**(1) 74:6
**conduct**(3) 61:13 165:9 205:8
**conducted**(1) 49:20
**conducting**(3) 24:21 189:22 203:15
**conduit**(1) 37:2
**confidential**(2) 103:24 135:17
**confidentiality**(1) 203:11
**confirm**(4) 68:14 68:22 83:1 185:14
**confirmation**(3) 23:24 58:13 115:23
**confirmed**(6) 17:24 18:2 18:3 58:10 87:2 95:24

**conjunction**(3) 30:22 35:7 133:3
**connection**(7) 23:13 76:14 151:14 152:1 152:11 166:20 170:8

**conseco**(2) 170:5 170:18
**consequence**(1) 103:23
**conservative**(3) 133:16 191:8 210:13
**consider**(12) 47:21 60:8 60:9 61:9 61:21 86:4 94:7 94:15 96:17 191:1 191:2 198:3

**consideration**(11) 39:6 39:9 62:25 67:16 72:17 96:11 96:12 190:4 207:9 207:25 217:24

**considered**(11) 47:13 47:14 47:15 61:4 88:22 88:23 93:5 93:15 97:12 98:20 198:5

**considering**(4) 47:3 64:16 90:16 212:22
**considers**(1) 39:15
**consist**(1) 40:11
**consistent**(6) 115:12 133:6 137:14 187:24 190:13 204:5

**consistently**(1) 175:21
**consists**(1) 40:12
**consolidate**(1) 110:25
**consolidated**(4) 28:24 57:18 109:20 143:25
**consolidation**(6) 22:13 22:15 31:11 110:12 110:13 134:16

**consolidations**(1) 110:22
**constitute**(1) 57:5
**constituted**(3) 61:8 61:10 139:20
**construction**(1) 79:21
**constructive**(1) 176:23
**constructs**(1) 222:1
**consult**(5) 166:7 166:21 167:16 167:18 229:6

**consultant**(1) 25:9
**consulted**(2) 17:4 95:1
**consulting**(2) 20:8 20:18
**consumed**(1) 110:19
**consummated**(5) 17:25 18:1 18:11 18:12 18:22

**contain**(1) 103:22
**contained**(4) 33:2 36:9 36:25 181:6
**containing**(1) 135:17 143:8
**contains**(2) 31:14 135:14
**contemplated**(2) 57:7 228:15
**contemplates**(2) 57:1 157:4
**content**(4) 112:4 112:11 112:11 112:12

| Word | Page:Line |
|---|---|

**context**(10) 24:2  34:14  62:13  167:13
167:25  168:20  173:15  191:4  193:4  213:4

**contingent**(2) 58:13  179:20

**continue**(5) 14:8  98:24  194:8  195:10

**continued**(14) 2:2  3:2  4:2  5:2  6:2  7:2  8:2
9:2  10:2  20:21  30:23  68:19  83:2  139:7

**continuing**(4) 30:7  30:24  31:17  109:15

**contrarian**(2) 8:40  8:41

**contrasted**(1) 157:11

**contrasts**(1) 122:17

**contribution**(1) 61:19

**control**(2) 116:4  180:6

**controlled**(4) 117:12  180:7  203:25  219:19

**convenience**(1) 79:13

**conversation**(5) 87:2  136:20  137:17  137:23
152:6

**conversations**(1) 137:22

**conversion**(2) 31:16  93:3

**convert**(1) 30:14

**conveyance**(2) 61:12  61:13

**coolness**(1) 137:19

**cooperstown**(2) 9:21  9:22

**copy**(6) 67:21  74:14  74:19  161:6  181:20
185:15

**core**(3) 106:25  180:4  219:18

**core-value**(1) 208:19

**corner**(1) 38:5

**corp**(1) 107:12

**corporate**(14) 20:19  21:18  105:9  120:1
120:1  120:3  120:13  120:15  132:16  148:4
163:3  218:6  218:7  218:10

**correct**(165) 53:22  53:24  53:25  54:3  54:4
54:7  54:9  54:14  54:18  54:20  54:21  55:2
55:7  55:12  55:16  55:19  55:22  56:3  56:5
56:17  56:24  57:2  57:15  57:24  58:1  58:18
59:7  59:13  64:15  64:18  67:2  68:17  69:17
69:23  69:25  70:5  70:8  70:18  70:22  71:2
72:5  72:10  72:11  72:11  72:18  72:19  73:1
74:7  77:14  78:1  78:2  78:16  78:20  79:2
79:5  79:15  79:17  79:18  80:5  80:11  81:25
82:2  82:9  82:10  82:12  82:15  83:5  83:8
83:25  84:8  84:11  86:10  87:6  88:1  88:19
89:13  90:13  92:20  93:12  94:11  97:9  97:14
105:21  108:22  113:12  115:9  116:25  119:1
120:20  121:20  123:1  123:21  125:5  126:19
131:25  139:2  139:16  141:15  142:1  142:2
142:16  142:22  142:23  143:4  143:5  143:15
145:7  145:10  147:19  147:20  150:11  152:2
153:14  154:2  154:23  155:13  156:22  157:8
157:21  158:19  158:22  165:19  165:20
165:23  166:2  166:6  166:10  166:13  166:14
166:18  166:22  166:23  166:25  167:1  167:4
167:7  167:11  168:8  168:9  169:2  169:5
169:6  169:8  169:9  170:24  171:12  171:22
172:2  172:9  172:12  172:21  172:22  173:12
173:13  173:15  173:16  174:13  174:19  178:7
178:12  178:21  178:22  200:4  229:12  230:7

**corrected**(3) 182:7  183:2  183:7

**correction**(1) 183:6

**corrections**(1) 228:2

**correctly**(2) 125:10  169:23

**corresponding**(1) 100:11

**cost**(8) 30:9  111:24  111:25  112:5  114:14
169:25  189:1  189:2

**cost-effective**(1) 112:14

**costs**(8) 24:24  25:19  26:16  27:16  27:20
27:21  91:24  109:16

**could**(53) 14:6  15:15  15:23  23:1  31:10
32:12  33:8  54:23  55:17  61:18  63:6  74:8
74:11  83:18  98:24  104:16  107:2  107:19
111:5  112:21  115:1  117:9  119:17  120:22
122:11  122:15  126:4  126:4  128:13  129:15
131:21  131:22  132:17  136:9  141:25  142:8
145:12  151:2  161:17  168:2  171:2  177:16
178:15  188:15  192:2  193:12  194:22  197:6
197:18  219:21  221:16  221:19  226:18

**couldn't**(8) 85:9  93:23  165:24  200:17
202:4  212:9  218:7  218:11

**council**(3) 104:20  104:22  148:5

**counsel**(21) 11:8  11:25  17:18  42:19  64:21
64:23  65:8  66:7  77:3  77:8  78:10  80:8
80:21  83:9  95:1  95:2  95:13  95:20  161:5
167:16  167:18

**count**(1) 114:17

**counter**(2) 12:22  14:17

**country**(1) 171:2

**couple**(13) 11:10  17:23  47:23  97:25
127:16  175:7  175:20  183:18  183:19  193:2
205:10  215:8  219:1

**couri**(1) 9:23

**course**(9) 13:23  14:4  62:23  92:8  133:14
164:14  175:15  176:17  216:9

**court**(180) 1:1  11:3  11:5  11:17  11:19  12:3
12:6  12:14  13:2  13:16  14:13  15:12  15:17
15:18  15:21  16:1  16:4  16:12  16:14  16:16
16:18  16:24  17:13  18:13  18:23  19:4  19:2
20:24  20:25  21:9  21:17  21:25  22:22  23:17
24:4  24:15  24:17  27:14  29:4  30:22  31:1
33:4  34:7  34:9  34:13  36:15  41:18  44:3
44:5  44:21  45:9  46:21  49:19  50:10  51:6
51:22  51:25  53:5  53:6  53:9  53:11  58:14
59:3  67:17  74:16  74:20  80:19  80:25  82:2
82:16  87:15  95:25  97:17  97:21  98:10
100:5  101:24  102:15  102:17  102:19  102:3
103:1  103:1  103:19  104:2  107:19  108:21
109:5  112:21  113:14  114:20  115:9  116:13
116:15  116:21  118:8  118:11  122:15  123:2
124:8  124:4  127:14  130:9  135:6  135:10
135:20  135:23  136:4  138:18  145:19  146:1
150:15  150:20  150:22  152:10  153:16
153:19  155:15  155:17  158:12  159:1  159:1
159:14  159:22  159:24  160:2  160:13  161:1
163:3  162:7  162:9  164:18  164:18  164:19
164:20  165:1  165:9  169:4  169:8  169:14
171:23  171:2  173:25  174:9  174:12  177:15
179:1  179:25  181:23  184:23  185:19  185:2
186:7  186:24  188:17  189:20  193:13  194:2
194:16  198:24  200:25  211:16  213:25  216:1
218:16  219:3  222:21  223:24  224:16
224:19  226:9  228:8  228:11  228:25  229:7
229:12  229:14  229:17  229:21  229:21

**court's**(1) 35:13

**courtney**(1) 1:29  8:29

**courtroom**(3) 1:10  114:18  179:4

**cover**(2) 161:8  166:24

**covers**(1) 166:12

**cpa**(1) 163:12

**create**(2) 46:6  182:25

**created**(2) 206:22  221:18

**creating**(2) 90:10  112:13

**credit**(7) 4:26  5:36  92:5  216:25  217:12
217:24  217:25

**creditor**(20) 19:14  21:25  22:21  23:6  33:24
35:8  39:11  41:20  46:17  52:7  62:23  62:24
65:1  65:12  65:13  66:11  76:21  99:12
100:16  231:21

**creditors**(19) 3:18  5:12  20:20  21:6  31:24
76:7  82:5  94:21  95:24  101:14  43:11  49:8  58:11
138:2  138:3

**criticism**(2) 133:15  133:18

**criticizing**(1) 193:8

**cross**(28) 14:19  14:23  15:1  15:4  53:9
53:12  97:21  99:2  135:6  135:21  150:20
164:21  174:14  224:16  224:17  224:22  225:3
225:6  225:19  226:3  226:20  228:18  228:19
228:22  229:5  229:7  229:11  231:2

**crucial**(1) 114:12

**culminating**(1) 122:19

**cumbersome**(2) 113:8  117:20

**current**(15) 30:12  67:16  67:7  70:25  71:20
75:5  93:8  93:18  104:10  108:7  114:11
115:3  117:25  118:16  135:25

**currently**(2) 20:1  104:8

**curtain**(1) 117:7

**cushman**(6) 25:11  70:19  70:24  98:12
98:17  98:20

**cusp**(1) 147:5

**customers**(2) 60:10  91:2

**cut**(5) 90:24  97:6  109:16  109:17  109:21

**cutable**(1) 109:22

**cutler**(1) 5:37

**cycling**(1) 131:14

**daily**(1) 45:18

**dance**(1) 112:16

**dandy**(1) 16:24

**daniel**(6) 2:35  3:20  6:5  6:7  10:28  17:17

**dark**(1) 193:16

**dash**(15) 4:6  53:10  53:13  53:14  74:17
74:22  82:19  82:21  97:15  97:18  99:1  99:24
100:9  102:16  102:18

**data**(48) 1:43  39:13  103:22  103:25  130:16
130:22  140:22  146:16  180:14  180:18
180:20  182:9  183:13  183:14  183:16  184:7
184:8  186:14  186:17  187:4  188:20  188:24
188:25  191:6  194:21  195:2  195:25  199:2
199:23  201:4  201:13  203:1  204:3  204:3
204:4  204:16  205:21  205:23  206:1  210:20
211:18  214:2  214:3  215:25  223:1  223:2
224:5  227:25

**date**(26) 37:20  37:22  41:12  44:11  44:13
44:22  44:25  69:11  69:16  71:8  71:14  71:15
71:18  75:16  75:19  92:3  92:5  105:23
187:18  188:3  188:22  219:8  219:10  219:20
221:23  230:8

**dated**(3) 146:4  147:22  149:13

**dates**(1) 71:13

**dating**(1) 170:7

**david**(12) 2:34  2:36  3:5  3:26  3:47  4:46
5:5  6:38  7:45  9:32  13:4  135:12

**day**(18) 3:11  7:23  10:9  11:21  12:17  43:9
50:17  51:17  57:21  60:14  72:23  85:14  86:1
164:7  187:23  187:25  203:3  228:9

**day-to-day**(3) 106:4  106:15  118:19

**days**(5) 12:23  147:4  149:16  172:19  216:10
218:23

**dbtca**(1) 3:45

**dcf**(27) 26:21  26:23  182:1  182:4  189:3
189:19  193:6  194:12  194:14  195:19  196:1
197:12  197:14  198:3  198:6  199:6  199:7
202:8  207:11  209:11  210:16  212:3  214:4
218:2  218:4  218:5  219:9

**dcl**(30) 11:12  11:15  12:21  14:14  17:15
117:21  117:24  18:12  54:23  56:7  56:9  57:1
57:8  57:9  57:12  58:7  58:10  69:6  74:17
82:23  115:11  115:19  115:21  117:23  120:23
131:25  140:13  140:14  156:13  231:15

**deal**(9) 18:8  66:1  97:6  106:6  112:7  117:9
117:15  134:13  214:12

**dealer**(1) 162:21

**dealing**(3) 18:20  106:4  222:11

**dealt**(2) 219:3  220:1

**dearborn**(1) 1:30

**debenture**(2) 2:19  9:14

**debilitating**(1) 115:4

**debt**(26) 32:17  42:2  43:1  46:6  61:23  62:7
62:7  63:4  63:13  75:4  75:6  77:17  77:17
77:22  78:13  78:16  78:18  78:18  78:19  78:21
91:13  91:15  92:11  92:13  161:15  162:12
162:13

**debtor**(8) 21:23  37:3  44:9  62:10  97:6
103:4  221:13  224:22

**debtor's**(2) 95:1  95:2

**debtors**(30) 1:12  1:25  19:7  19:10  20:19
21:7  21:15  23:13  28:4  33:3  36:1  42:20
52:12  52:20  59:6  63:9  63:9  64:22  64:23  65:8
77:4  77:8  78:10  80:8  81:4  93:8  93:9
95:20  96:3  135:16  150:24

**debuted**(1) 179:4

**december**(32) 69:16  74:15  75:15  94:1
125:1  125:3  125:8  125:14  125:15  125:21
126:11  127:9  127:21  139:9  145:10  145:21
146:1  146:2  146:4  146:7  146:8  146:20
147:5  147:22  147:25  148:16  149:10  149:20
149:21  156:25  182:12  189:3

**decided**(1) 73:10

**decimak**(2) 129:7  129:13

**decision**(3) 95:2  194:4  197:12

**decisions**(1) 106:4

**deck**(2) 168:3  169:10

**decline**(6) 109:13  110:24  193:17  193:19
194:8  194:8

**declined**(1) 47:5

**declines**(1) 134:5

**declining**(5) 84:21  108:13  109:24  111:3
111:4

**decrease**(5) 47:8  100:11  102:12  188:13
200:20

**decreased**(3) 183:10  183:10  183:25

**decreases**(2) 110:1  134:2

**decreasing**(2) 48:13  109:12

**dedicating**(1) 217:2

**deduct**(1) 216:20

**deducted**(1) 182:5

**deduction**(1) 185:10

**deem**(1) 200:11

**deeper**(1) 109:3

**deficiencies**(1) 220:6

**defining**(1) 167:14

**definition**(2) 84:19  202:2

**degree**(1) 163:7  220:20

**degrees**(1) 20:10

**delaware**(5) 1:2  1:12  1:37  2:44  11:1

**demo**(1) 6:22

**demonstrated**(2) 60:18  194:7

**demonstrates**(1) 195:5

**demonstrativ**(12) 161:8  161:17  225:4
225:9  225:19  226:2  226:24  226:25  227:10
225:23  227:23  227:24

**demonstrative's**(1) 228:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| demonstrative(13) 161:9 179:24 181:22 198:23 224:24 225:15 226:12 226:17 226:21 227:5 228:4 228:11 228:21 | | did(180) 14:12 14:20 25:1 25:2 25:3 25:24 26:6 26:14 26:25 27:7 29:19 29:22 31:23 32:9 35:3 35:15 37:7 38:5 39:11 41:8 42:10 44:8 45:10 47:11 48:1 48:22 49:9 50:7 50:17 52:12 52:16 56:14 59:18 59:2 60:3 60:8 60:22 60:22 61:1 61:1 61:5 61:6 61:9 61:12 61:16 61:20 65:25 65:25 66:11 67:6 67:20 69:2 70:15 71:3 71:4 73:22 74:1 75:24 76:4 76:8 76:11 76:19 76:25 77:1 77:12 77:18 77:21 78:6 78:10 80:1 82:2 82:12 86:3 86:6 87:12 88:10 88:14 88:20 88:24 88:24 89:7 89:9 91:15 93:14 93:15 93:16 95:10 95:13 96:6 96:15 99:6 99:7 100:21 101:5 101:24 106:19 106:24 118:25 121:19 123:15 125:14 125:21 125:22 132:21 132:22 136:1 136:7 137:6 137:20 137:21 139:7 139:22 144:6 150:10 151:24 158:23 164:9 166:7 166:20 168:10 168:15 168:16 168:17 170:8 170:8 170:15 170:17 171:21 172:4 173:2 175:7 175:17 176:5 176:12 176:19 178:10 178:1 180:1 180:8 180:10 182:4 182:18 185:3 186:19 189:17 189:20 190:1 192:7 195:11 198:3 198:6 198:24 199:1 201:10 202:9 204:5 205:8 205:11 205:19 205:23 207:6 207:7 207:16 211:1 211:5 212:1 212:3 212:3 212:5 213:8 214:5 214:14 215:15 215:16 217:6 217:15 217:15 218:2 223:7 225:21 | directors(7) 3:11 7:18 107:16 120:5 121:2 121:5 121:22 | | divider(1) 121:21 division(3) 105:1 105:15 162:23 divisions(1) 107:22 dla(1) 2:48 document(23) 75:23 78:11 120:23 120:25 121:4 121:25 122:7 124:19 126:5 128:14 131:22 132:2 132:3 132:10 136:9 139:24 140:9 140:15 143:7 143:15 143:21 145:10 145:17 146:2 146:6 147:18 147:24 148:24 149:2 149:3 149:12 155:11 227:7 |
| department(5) 30:20 109:21 132:16 162:12 162:15 | | | | directs(1) 15:17 directv(2) 107:10 107:12 disagree(2) 64:22 197:11 disagreement(1) 14:7 disallowed(3) 47:15 48:10 61:25 disallowing(1) 49:6 disappointing(1) 128:10 disbursements(3) 45:20 45:21 45:24 disbursing(3) 45:25 46:1 46:3 discarded(3) 200:12 200:15 202:6 disclose(1) 185:4 disclosure(7) 33:3 69:15 80:24 80:24 94:17 189:16 192:17 | | documented(1) 91:24 documents(8) 13:20 13:22 14:3 14:3 44:17 76:14 135:15 159:7 |
| departs(1) 45:21 dependent(3) 58:19 208:3 208:4 depending(3) 14:14 109:1 197:8 depends(1) 84:18 depict(3) 31:18 126:22 130:10 depicted(1) 155:21 depicting(2) 36:6 193:14 depicts(1) 122:15 deposition(22) 12:19 67:19 68:14 69:18 69:21 70:23 71:6 71:7 71:11 75:9 75:24 79:11 80:22 85:22 87:7 87:10 87:20 89:17 100:2 165:24 170:23 221:11 | | | | | | does(37) 11:7 26:21 39:13 40:11 40:17 51:8 57:3 64:7 74:16 82:18 84:24 92:6 92:22 94:7 94:9 94:14 109:25 110:21 116:8 116:18 126:25 130:21 132:4 136:20 136:22 155:1 156:19 157:17 166:11 167:10 173:5 174:20 174:20 174:24 196:21 220:20 229:14 |
| | | | | disclosures(1) 206:21 discount(12) 29:10 29:17 29:19 29:22 29:24 88:16 89:6 89:6 89:10 182:12 197:20 197:21 | | |
| depressed(1) 141:21 derive(1) 28:24 derived(1) 29:23 descending(1) 126:7 describe(22) 20:16 23:13 107:2 108:7 119:17 121:12 162:9 162:25 163:5 181:23 183:12 184:4 189:20 193:13 200:25 203:1 208:5 209:8 213:25 216:6 219:3 222:21 | | | | | | doesn't(4) 15:2 147:2 166:24 227:8 doesn't(2) 187:13 196:4 doing(5) 46:4 46:4 51:23 86:4 89:17 96:21 96:22 127:8 129:23 134:17 134:18 135:2 151:23 166:19 171:12 |
| | | didn't(60) 16:10 64:19 66:3 69:1 69:18 70:4 70:6 70:14 71:3 73:23 75:24 76:1 77:15 78:12 80:16 85:8 85:22 85:24 86:4 87:3 88:20 89:2 89:7 93:3 95:7 95:11 96:17 157:7 165:7 171:23 173:24 182:24 183:5 183:6 183:22 185:2 196:11 199:17 200:11 200:16 201:23 203:4 203:5 204:24 205:21 206:24 211:21 213:2 214:4 214:4 215:3 217:12 217:24 218:4 218:6 218:12 218:25 220:12 226:15 227:3 | discounted(18) 75:4 90:1 90:3 90:9 182:11 189:3 190:5 191:1 191:2 195:13 196:10 198:7 202:14 205:8 205:12 205:17 207:10 207:11 discover(1) 185:2 discovery(8) 172:25 180:15 207:17 208:14 208:15 208:21 208:23 209:2 | | |
| described(14) 38:7 75:16 75:22 94:16 120:19 123:17 148:4 184:2 194:19 211:19 214:3 221:22 224:3 224:10 | | | | | | dollar(3) 114:16 190:24 206:16 dollar-number(1) 187:3 dollars(4) 79:9 101:13 129:21 218:9 domains(1) 117:18 don(2) 6:40 104:18 |
| describing(3) 129:11 184:22 198:23 description(1) 22:25 designated(5) 11:23 12:4 14:23 14:24 216:13 | | | | | | don't(41) 16:2 24:4 42:15 51:3 57:10 62:4 64:22 74:10 77:1 77:1 77:19 77:24 89:23 94:1 97:24 140:13 144:25 146:6 147:3 151:15 154:22 165:5 165:6 167:21 173:4 173:21 174:2 174:23 177:6 178:2 178:23 203:22 203:22 203:22 210:21 210:22 212:18 221:2 221:3 226:21 229:1 |
| | | didn't(8) 127:8 128:15 171:21 172:23 173:23 178:4 184:9 198:2 | discovery's(1) 207:18 discrete(1) 36:17 discuss(4) 14:8 100:21 137:6 191:13 | | |
| designation(1) 74:16 designations(3) 12:22 14:17 16:10 designed(1) 202:2 | | | | | | |
| detail(7) 100:5 182:22 190:12 200:23 206:8 207:19 228:3 | | | | discussed(5) 14:2 51:21 89:5 99:24 221:12 discussing(2) 77:19 77:24 discussion(5) 11:21 13:21 101:21 152:9 191:14 | | donald(1) 2:6 done(13) 15:16 102:4 107:13 119:18 120:4 152:11 167:3 168:10 173:18 174:4 221:24 226:17 229:19 |
| detailed(1) 51:5 details(4) 35:6 44:14 180:2 181:13 | | difference(24) 42:23 48:10 112:4 123:25 125:3 125:12 125:19 142:16 172:16 180:1 198:11 198:13 198:15 202:18 213:6 213:10 213:10 213:13 213:14 220:1 223:17 223:18 223:20 | | | | |
| determination(6) 39:8 62:6 62:11 62:18 85:11 89:3 | | | | discussions(5) 11:25 12:13 29:23 44:15 95:13 | | don't(11) 103:24 108:18 108:19 117:8 220:20 145:7 146:5 146:7 170:16 173:9 191:16 |
| determinations(1) 47:22 determine(14) 28:7 31:23 35:8 41:18 59:19 60:2 60:4 60:24 61:7 61:14 66:17 88:25 133:5 167:19 | | differences(2) 189:14 227:23 different(20) 34:23 41:16 65:3 67:23 75:15 90:17 144:7 178:7 183:18 183:19 196:1 196:14 202:16 203:25 204:6 204:7 226:12 227:6 227:9 227:24 | | disincentive(1) 117:17 dispense(1) 115:1 disposition(2) 25:24 26:6 dispositions(2) 30:17 30:19 dispute(26) 12:24 12:25 15:5 15:11 15:14 34:25 42:4 42:13 42:15 42:16 42:21 43:4 73:7 73:8 73:19 74:1 100:21 100:23 100:25 101:2 101:10 101:17 101:18 102:2 225:4 225:7 | | doors(3) 85:14 85:17 85:18 dorr(1) 5:38 dougherty(2) 6:43 6:44 douglas(1) 5:15 dow(2) 10:13 10:13 down(48) 14:1 26:3 29:2 30:7 30:24 36:13 38:4 49:2 49:22 84:7 84:16 102:20 109:18 109:22 123:13 123:14 125:17 125:17 125:22 125:23 125:23 126:12 126:21 126:5 127:6 127:23 129:6 129:8 129:22 130:13 130:15 131:9 131:13 154:24 154:25 155:1 155:22 155:23 156:6 158:19 159:1 162:6 188:11 198:7 207:2 207:3 208:11 228:3 |
| determined(5) 22:14 37:15 59:3 200:14 216:23 | | differentiated(1) 112:11 differently(1) 199:11 difficult(4) 108:25 113:4 114:3 186:9 difficulty(2) 191:15 201:20 | | disputed(1) 73:14 disrespect(1) 114:18 distracted(2) 30:3 229:9 distracting(2) 110:21 115:2 distraction(3) 90:24 114:24 114:25 distress(3) 90:5 101:25 102:10 distressed(7) 20:9 26:5 26:7 26:13 28:2 29:17 29:24 | | |
| determining(6) 39:4 66:15 75:10 84:4 99:15 101:4 | | dig(1) 109:3 digit(4) 154:24 154:24 155:1 156:10 digital(6) 105:10 110:2 110:3 117:18 133:23 133:25 | | | | drain(1) 114:24 dramatic(2) 190:8 190:22 dramatically(4) 14:1 196:14 210:6 213:13 draw(1) 33:7 drawing(1) 193:7 drawn(1) 92:6 drive(2) 89:5 195:4 driven(1) 99:13 driver(2) 208:19 210:24 drivers(1) 123:24 driving(1) 206:3 dropped(1) 46:14 dropping(1) 13:11 drove(1) 206:5 drug(2) 21:8 21:15 |
| deutsch(1) 5:15 deutsche(1) 9:4 develop(1) 197:20 developed(2) 39:12 119:19 development(2) 105:18 120:11 develops(1) 119:15 devices(2) 111:19 111:21 dewey(1) 4:35 diaz(1) 1:43 dice(3) 211:21 211:23 212:13 dictated(1) 124:10 | | digits(1) 128:23 diligence(4) 189:22 191:5 205:11 216:9 dip(1) 37:5 dire(5) 165:9 165:12 174:14 177:17 231:6 direct(33) 19:22 55:20 57:12 60:2 64:12 71:25 74:13 79:7 79:24 84:12 86:7 88:17 96:4 104:3 119:2 124:24 138:17 139:24 140:21 142:2 143:18 149:17 154:7 159:10 161:8 161:10 165:6 165:12 179:11 184:21 192:11 225:16 231:2 directed(3) 108:16 152:17 159:22 direction(1) 49:4 directly(1) 46:10 director(4) 20:4 20:22 20:25 161:15 | | distributable(53) 19:14 23:6 33:23 35:20 35:25 36:6 36:9 36:11 36:14 37:6 38:4 38:13 39:17 57:13 57:23 58:22 59:2 64:11 64:25 66:13 66:15 66:16 66:16 66:19 69:5 70:10 70:15 72:3 76:5 76:12 77:6 78:3 91:11 99:16 99:18 181:17 182:16 182:19 182:21 183:6 184:18 185:8 195:5 195:15 218:11 219:2 219:4 219:17 219:20 220:5 224:14 227:25 231:20 distribute(1) 27:5 distributed(5) 32:8 38:16 39:22 57:22 112:6 distribution(2) 66:12 81:5 distributions(5) 35:23 39:18 39:18 58:6 220:23 | | |
| | | | | district(1) 1:2 disturbed(1) 214:7 diversified(2) 192:10 192:12 diversifies(1) 199:11 divided(3) 105:2 105:8 163:23 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **dublin**(1) 2:37 | | **else**(7) 117:14 117:21 164:8 168:16 170:9 180:21 192:19 | | **esq**(115) 1:26 1:27 1:28 1:29 1:36 2:5 2:6 2:7 2:13 2:20 2:28 2:34 2:35 2:36 2:37 2:43 2:49 3:5 3:12 3:19 3:20 3:26 3:27 3:28 3:29 3:30 3:31 3:37 3:38 3:39 3:44 3:47 4:5 4:6 4:12 4:18 4:19 4:29 4:36 4:37 4:38 4:39 4:46 5:5 5:13 5:15 5:17 5:19 5:21 5:23 5:27 5:28 5:29 5:30 5:34 5:39 5:41 5:45 5:50 6:5 6:7 6:11 6:15 6:17 6:22 6:24 6:26 6:30 6:32 6:36 6:38 6:40 6:44 7:5 7:7 7:9 7:11 7:13 7:20 7:24 7:28 7:32 7:34 7:39 7:43 7:45 7:47 8:6 8:13 8:17 8:21 8:29 8:33 8:37 8:42 8:46 8:50 9:10 9:15 9:16 9:18 9:23 9:27 9:32 9:36 9:45 9:47 10:6 10:10 10:14 10:18 10:22 10:26 10:28 10:32 | | **excited**(1) 216:3 |
| **due**(13) 30:19 56:11 56:13 56:13 56:14 56:16 56:23 56:23 60:9 98:13 189:22 205:11 216:9 | | **email**(1) 151:8 | | | | **exclude**(1) 173:22 |
| | | **emailed**(1) 225:13 | | | | **excluded**(1) 202:5 |
| | | **embedded**(1) 123:10 | | | | **excluding**(1) 208:10 |
| **duff**(1) 9:40 | | **embodied**(3) 27:14 96:8 122:6 | | | | **excuse**(9) 85:4 105:4 124:14 125:16 129:7 130:20 205:15 217:15 224:14 |
| | | **emerged**(2) 115:7 116:3 | | | | |
| **during**(14) 12:5 13:23 14:4 31:15 71:10 90:6 90:8 91:2 92:7 103:5 107:6 154:7 190:13 221:11 | | **emergence**(4) 97:7 115:23 116:1 134:23 | | | | **executing**(1) 162:16 |
| | | **emerging**(2) 116:10 134:13 | | | | **executive**(5) 104:20 104:22 105:20 132:25 148:5 |
| | | **employed**(7) 20:1 104:8 161:12 162:19 162:21 200:13 224:9 | | **essentially**(9) 14:21 22:5 31:20 48:4 71:16 148:3 153:25 208:6 219:7 | | **executive's**(1) 114:25 |
| **dynamics**(1) 98:21 | | | | | | **exempts**(2) 118:15 118:15 |
| **e-mail**(1) 136:13 | | **employee**(2) 40:17 119:6 | | | | **exercise**(17) 167:25 171:5 171:8 189:6 189:15 190:10 193:2 193:10 194:13 195:25 199:1 202:2 203:18 204:1 215:5 221:22 223:10 |
| **each**(45) 11:13 11:23 12:4 13:24 16:6 16:9 28:18 28:19 31:4 31:7 31:21 31:23 31:25 32:3 32:9 32:16 35:10 35:12 35:19 39:14 39:19 43:10 51:4 51:5 57:19 58:8 66:17 67:1 104:24 119:14 120:14 122:18 126:11 130:12 144:10 164:5 175:16 180:2 186:10 186:11 186:12 192:22 196:5 204:7 211:10 | | **employees**(12) 27:23 85:14 90:22 114:11 115:3 116:18 117:4 117:17 118:18 118:21 119:3 | | **esther**(1) 6:11 | | |
| | | **employer**(1) 117:19 | | **estate**(12) 25:8 25:10 29:12 36:19 37:12 37:13 70:17 98:4 98:6 98:14 171:4 171:5 | | **exercises**(3) 164:12 190:1 195:23 |
| **eagle**(1) 49:25 | | **employment**(3) 107:2 107:15 136:8 | | | | **exhibit**(80) 24:6 24:12 24:14 24:18 28:9 28:10 28:12 28:20 29:1 30:7 32:22 32:23 33:24 33:25 33:25 34:1 34:6 34:9 34:11 36:3 36:4 36:5 38:2 39:1 39:2 41:25 43:19 44:1 44:6 44:19 45:6 46:18 47:23 48:16 48:16 48:17 49:15 49:20 51:8 51:20 54:23 56:7 59:16 69:6 69:6 74:9 74:16 74:17 74:18 80:20 81:1 83:16 91:9 93:4 120:23 120:23 121:13 131:25 136:11 140:7 140:13 140:14 143:12 145:15 147:7 147:22 149:2 151:3 151:3 152:14 152:15 155:24 156:13 156:13 161:6 161:8 185:14 185:18 185:23 226:2 |
| **earlier**(21) 33:12 33:12 38:7 51:21 66:6 73:13 80:20 83:4 87:3 95:5 95:22 96:2 138:1 148:13 165:8 173:24 207:18 215:24 220:1 223:23 224:3 228:14 | | **emporium**(2) 21:8 21:16 | | | | |
| | | **empty**(1) 13:10 | | **estimate**(10) 56:8 75:5 81:4 181:17 182:21 183:7 184:12 219:12 221:22 222:2 | | |
| **early**(4) 68:22 109:18 136:1 159:22 | | **enable**(1) 157:24 | | | | |
| **easier**(3) 16:12 18:24 180:9 | | **encountered**(1) 179:3 | | **estimated**(9) 32:1 32:1 40:6 41:4 190:19 190:22 199:4 206:14 219:8 | | |
| **easily**(2) 110:14 155:10 | | **encumbered**(2) 111:15 117:15 | | **estimates**(1) 185:7 | | **exhibits**(23) 11:22 11:23 12:3 12:4 12:8 19:16 47:24 80:20 103:21 160:25 161:6 161:18 225:5 225:9 225:11 225:12 225:19 227:15 227:23 227:24 231:14 231:15 231:23 |
| **east**(1) 4:13 | | **end**(27) 11:21 12:17 16:4 16:7 27:3 32:13 32:14 32:18 33:5 43:9 46:4 50:17 51:17 57:21 69:12 93:3 93:10 93:10 93:20 118:24 122:5 129:4 146:24 147:1 203:3 210:2 210:14 | | **estimation**(1) 21:24 | | |
| **easy**(1) 117:15 | | | | **estoppel**(2) 18:15 18:16 | | |
| **ebitda**(23) 109:25 180:16 182:5 190:18 190:22 192:23 193:16 193:16 197:2 197:4 197:5 208:6 208:7 216:19 216:20 216:20 217:11 217:12 217:13 217:14 218:1 220:16 220:1 220:18 | | **ended**(6) 86:23 139:13 139:16 150:10 156:21 159:18 | | **evaluate**(4) 47:18 47:19 50:7 185:10 | | **exist**(3) 34:23 64:8 118:20 |
| | | | | **evaluated**(1) 190:6 | | **exit**(9) 113:17 115:15 117:10 142:19 142:21 157:4 157:24 157:25 221:7 |
| | | **ending**(1) 74:15 | | **evaluating**(3) 42:9 50:5 179:16 | | |
| | | **energy**(1) 199:18 | | **evaluation**(3) 70:4 182:15 188:14 | | |
| **economic**(3) 46:5 46:6 158:5 | | **engagement**(5) 54:2 54:5 81:17 172:5 | | **even**(16) 73:2 73:14 80:12 86:4 100:12 101:7 101:9 108:11 111:2 129:8 148:6 149:18 196:14 197:19 202:12 212:10 | | **exiting**(2) 142:15 143:3 |
| **economically**(1) 46:1 | | **engineering**(1) 112:2 | | | | **expect**(5) 12:2 17:2 45:16 93:19 173:22 |
| **economy**(1) 114:3 | | **english**(1) 3:45 | | | | **expectation**(2) 192:21 193:24 |
| **ecro**(1) 1:41 | | **enormously**(1) 115:2 | | | | **expectations**(2) 149:20 192:24 |
| **eddy**(5) 103:6 103:10 103:14 104:7 231:4 | | **enough**(4) 58:15 100:13 137:17 202:5 | | **evening**(1) 229:6 | | **expected**(10) 125:22 125:23 126:13 128:4 128:12 179:16 193:17 193:19 221:6 226:3 |
| **educational**(1) 163:5 | | **enter**(3) 13:11 52:14 97:3 | | **evenly**(2) 164:2 202:17 | | |
| **ehmer**(1) 9:47 | | **entered**(1) 52:23 | | **event**(3) 18:1 18:10 18:21 | | **expecting**(1) 123:3 |
| **eight**(5) 108:2 129:25 155:3 159:22 162:3 | | **enterprise**(17) 57:13 57:22 57:23 58:23 59:2 164:25 174:22 184:12 223:25 224:1 224:3 | | **eventually**(1) 125:4 | | **expenditures**(3) 183:3 183:4 221:2 |
| | | | | **ever**(9) 137:6 160:13 165:25 167:3 168:9 168:23 172:2 174:4 201:21 | | **expense**(12) 30:21 122:19 124:3 124:7 124:12 182:6 216:19 216:20 216:21 217:11 217:14 217:17 |
| **eight-hundred-and-thirty-nine**(1) 187:2 | | **entire**(3) 35:17 42:10 163:20 | | **every**(14) 21:20 21:20 22:5 84:21 109:21 115:5 119:20 119:22 119:23 119:23 119:24 119:24 158:7 164:7 | | |
| | | **entirely**(2) 38:11 227:5 | | | | |
| **eight-million-dollar**(1) 223:18 | | **entirety**(1) 142:25 | | | | **expenses**(5) 26:17 90:11 91:24 217:23 218:10 |
| **eighty**(1) 193:19 | | **entities**(23) 22:11 25:7 28:1 29:14 29:20 31:21 44:9 53:21 56:24 84:9 86:12 86:14 86:18 86:20 88:7 89:11 90:24 90:2 90:5 100:10 100:12 113:3 120:16 | | **everybody**(2) 192:19 228:12 | | |
| **eitan**(1) 9:10 | | | | **everyone**(2) 11:3 65:15 | | **expensive**(1) 112:1 |
| **either**(17) 14:13 15:15 48:7 58:14 62:1 62:7 83:13 94:19 100:16 113:5 114:10 134:22 174:17 184:7 199:14 199:16 213:3 | | **entitled**(6) 36:5 39:3 45:8 126:1 127:12 131:3 | | **everything**(7) 18:3 24:18 34:6 34:11 44:6 179:7 185:23 | | **experience**(25) 20:16 21:1 21:17 22:1 22:8 53:24 54:2 54:6 97:1 99:2 99:7 163:15 163:17 164:17 167:15 168:4 169:11 174:7 175:25 177:20 177:23 177:24 178:2 178:21 210:17 |
| | | **entity**(21) 28:3 28:4 31:4 31:25 32:1 32:2 32:3 32:5 32:7 32:16 35:10 35:12 35:19 39:14 39:20 39:21 45:22 58:8 66:17 67:1 119:24 | | **evidence**(7) 18:3 24:18 34:6 34:11 44:6 179:7 185:23 | | |
| **elden**(1) 6:43 | | **enumerated**(1) 133:22 | | **exact**(3) 146:5 173:4 196:4 | | |
| **eldersveld**(1) 6:38 | | **environmen**(1) 108:10 | | **exactly**(6) 146:7 147:3 159:18 214:12 215:17 228:1 | | **experiencing**(2) 108:11 108:12 |
| **election**(1) 131:16 | | **environments**(1) 110:14 | | | | **expert**(57) 8:36 17:3 19:12 19:16 22:18 22:24 23:23 23:23 25:5 36:4 54:12 54:13 54:20 69:14 70:10 80:20 82:3 94:13 99:6 159:20 161:7 164:10 164:24 165:18 166:16 168:6 168:10 168:23 169:3 169:9 169:13 169:16 169:18 169:22 170:3 170:13 172:13 172:15 173:12 174:1 174:18 174:18 175:16 177:4 179:2 179:4 179:17 181:20 185:13 185:15 186:6 191:11 191:12 227:24 228:5 |
| **electronic**(2) 1:49 230:3 | | **eos**(2) 8:32 8:32 | | **examination**(24) 15:4 19:22 53:9 53:12 97:21 98:1 104:3 135:6 135:21 150:20 150:25 154:7 158:15 161:10 165:12 174:1 177:17 179:11 224:16 224:22 225:6 225:19 226:3 227:21 | | |
| **electronics**(3) 107:6 107:8 107:11 | | **equal**(1) 117:22 | | | | |
| **element**(1) 76:25 | | **equally**(1) 211:13 | | | | |
| **eleven**(1) 19:17 | | **equipment**(1) 29:11 | | **example**(19) 41:21 60:6 64:16 66:22 70:15 76:9 96:17 97:14 105:3 109:17 109:21 148:8 171:16 181:7 189:11 208:24 219:9 221:11 228:1 | | |
| **eliminated**(1) 52:3 | | **equity**(15) 31:5 31:9 35:22 38:10 38:12 61:19 61:24 81:6 114:7 114:9 116:2 117:11 118:17 161:24 214:24 | | | | **expert's**(1) 25:3 |
| **eliminations**(1) 28:22 | | | | **exceed**(1) 221:14 | | |
| **elizabeth**(1) 7:13 | | | | **exceeded**(1) 129:11 | | |
| **elkins**(1) 8:16 | | **err**(1) 98:23 | | **exceeding**(1) 127:2 | | |
| **eloquently**(1) 18:9 | | **error**(1) 184:8 | | **except**(1) 78:15 | | |
| | | **esop**(1) 94:16 | | **exception**(1) 109:14 | | |
| | | **especially**(1) 114:5 | | **excerpted**(1) 191:24 | | |
| | | | | **excerpts**(2) 12:19 14:12 | | |
| | | | | **excess**(3) 173:6 177:6 190:25 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**expertise**(6) 54:8 99:14 99:16 167:6 169:8 174:21

**experts**(4) 13:25 166:7 166:21 176:3

**explain**(26) 15:25 49:19 51:23 113:14 122:15 123:24 124:7 126:4 127:14 130:9 147:23 174:25 184:23 186:3 186:23 190:1 191:9 192:5 194:2 194:16 195:19 197:13 201:10 211:5 219:14 219:25

**explained**(2) 195:17 228:1

**explanation**(1) 24:4

**explore**(1) 190:11

**extended**(1) 100:17

**extensive**(1) 22:7

**extensively**(1) 176:22

**extent**(10) 32:4 99:20 119:9 179:18 180:15 180:18 186:10 189:13 199:16 221:12

**extrapolate**(1) 187:19

**extreme**(2) 49:5 49:6

**eyeballs**(1) 111:18

**face**(9) 41:1 51:18 52:18 72:20 75:21 75:22 106:8 148:5 194:1

**face-to-face**(1) 137:25

**faced**(1) 133:21

**facilitate**(1) 97:5

**facility**(1) 100:17

**facing**(3) 109:9 111:15 116:17

**fact**(22) 30:1 32:15 47:16 54:23 73:1 73:22 77:19 83:11 89:2 92:1 98:20 100:25 110:7 123:3 133:6 137:20 146:6 149:22 154:10 156:25 174:4 227:3

**factor**(3) 87:15 96:25 100:9

**factored**(4) 88:2 88:4 94:3 194:4

**factoring**(1) 39:17

**factors**(8) 29:25 61:3 88:23 89:5 90:17 90:21 91:4 221:16

**facts**(1) 50:5

**failed**(2) 72:17 183:1

**fair**(8) 58:15 75:3 75:22 134:5 137:17 167:5 171:9 226:6

**fairly**(1) 134:4 190:8

**fairness**(4) 164:1 164:9 164:11 228:17

**faith**(3) 76:20 76:25 77:15

**fall**(4) 119:20 120:20 143:19 163:24

**fallon**(1) 10:18

**false**(1) 89:19

**faltas**(2) 6:47 6:48

**familiar**(6) 59:4 79:23 118:1 143:15 171:12 228:19

**far**(8) 48:7 117:15 117:15 117:16 126:14 129:25 131:20 133:10

**far-better**(1) 135:2

**far-right**(3) 123:5 125:13 126:11

**fargo**(1) 9:26

**fashion**(6) 32:7 39:21 69:1 69:3 69:15 159:11

**favor**(1) 41:18

**fcc**(1) 26:12

**february**(51) 68:22 70:24 71:5 86:24 121:2 121:18 121:22 122:9 122:10 129:24 136:16 137:18 147:18 149:3 149:10 149:11 149:16 172:6 172:6 172:16 172:16 172:16 172:23 173:1 173:2 173:3 177:5 179:7 182:10 187:10 187:15 187:19 187:21 187:22 187:23 188:7 188:23 188:24 188:2 198:10 199:3 199:5 204:3 204:4 205:13 205:14 205:15 205:18 213:9 213:18 215:1

**february's**(1) 129:23

**fee**(2) 30:15 91:14

**feedback**(2) 144:22 145:1

**feel**(3) 113:19 113:23 148:7

**feeling**(1) 218:1

**fees**(12) 27:19 27:19 27:20 30:11 30:12 30:13 30:15 91:13 91:24 92:4 221:12 221:13

**feet**(2) 113:21 142:3

**feld**(6) 2:33 7:31 13:4 17:17 135:13 160:8

**felt**(10) 148:6 148:17 176:22 181:16 185:4 209:22 211:1 212:14 218:2 218:4

**few**(10) 38:22 49:16 50:16 54:24 114:5 130:2 139:9 174:10 216:10 218:22

**field**(1) 170:18

**fields**(2) 114:13 171:11

**fifteen**(4) 21:3 29:21 162:18 195:20

**fifty**(3) 139:21 141:2 141:5

**fifty/fifty**(2) 200:19 202:9

**figure**(3) 197:23 218:7 218:11

**figured**(2) 133:25 189:7

**filed**(3) 41:13 172:13 172:15

**filing**(9) 23:17 36:19 37:10 37:15 67:16 68:6 72:14 72:14 72:25

**final**(12) 12:15 51:10 103:4 107:11 122:17 143:8 145:9 147:19 149:1 156:7 156:9 156:12

**finalized**(2) 149:14 149:15

**finally**(4) 110:7 181:10 221:5 227:22

**finance**(6) 20:13 44:16 45:23 120:1 120:3 132:16

**financial**(43) 21:12 21:24 22:7 22:18 23:1 52:20 85:10 95:9 103:22 122:12 124:16 168:6 170:11 170:12 180:13 180:16 182:9 184:22 186:14 186:17 187:4 188:20 188:2 188:25 194:21 195:1 198:9 198:17 199:2 201:3 203:1 204:2 204:4 204:16 204:17 205:22 206:1 211:18 214:3 215:25 223:1 223:1 224:5

**financing**(7) 37:3 64:17 136:25 137:7 151:10 170:1 221:5

**financings**(2) 163:24 163:25

**find**(6) 27:14 95:25 115:5 134:9 212:14 212:23

**findings**(3) 185:11 202:21 208:16

**finds**(1) 228:11

**fine**(1) 229:13

**finger**(1) 2:12

**finish**(2) 159:16 226:20

**finished**(1) 97:18

**finishes**(1) 14:15

**fire**(1) 85:14

**firm**(6) 16:22 20:7 161:23 176:15 187:24 199:14

**first**(82) 13:9 14:4 14:14 15:10 23:25 28:10 28:15 28:17 28:21 29:1 29:5 31:3 34:22 35:16 38:7 40:5 41:4 45:11 46:20 46:22 51:21 52:1 52:2 55:11 59:16 67:10 67:13 67:24 68:2 68:9 71:6 90:9 93:25 106:19 110:18 118:15 119:3 120:22 121:3 121:12 124:1 124:21 124:23 126:10 126:17 127:17 127:22 128:10 129:25 130:13 134:21 136:9 139:1 143:21 144:23 146:24 150:1 151:2 151:24 159:15 159:19 160:11 161:21 172:7 174:11 177:3 179:7 179:5 179:13 182:2 188:14 188:19 190:12 190:17 191:9 194:15 194:20 218:22 221:8 222:12 225:12 227:14

**fit**(2) 16:2 16:9

**five**(21) 50:7 50:18 50:19 51:22 53:6 104:13 105:21 109:13 121:14 123:12 123:13 127:22 130:24 134:5 149:16 155:15 156:20 156:21 157:11 184:1 195:19

**five-year**(1) 132:5

**fixed**(3) 38:19 38:22 111:2

**flagship**(1) 165:14

**flat**(7) 129:6 148:3 148:10 154:23 154:24 155:6 155:12

**flies**(1) 13:11

**flip**(4) 92:19 93:7 145:8 215:11

**flipping**(1) 191:7

**float**(1) 98:25

**flom**(1) 7:19

**floor**(2) 4:22 4:31

**florida**(1) 108:5

**flow**(22) 38:12 84:17 84:18 139:21 140:23 182:11 182:24 190:5 191:1 191:2 193:19 194:10 195:13 195:16 196:10 202:14 205:12 207:10 218:3 219:11 220:19 221:1

**flows**(7) 39:20 182:23 197:8 220:12 220:13 220:15 220:22

**focus**(5) 50:15 127:17 151:7 187:12 196:17 199:18 205:1

**focused**(3) 49:12 49:14 90:25

**focuses**(1) 162:1

**focusing**(1) 12:12

**follow**(8) 16:13 91:14 174:10 186:9 193:20 201:2 201:4 202:4

**follow-up**(1) 177:10

**followed**(2) 120:19 124:3

**following**(5) 62:12 93:19 146:25 184:25 201:21

**follows**(1) 166:12

**food**(8) 29:14 86:18 112:24 185:5 203:12 203:20 204:23 215:13

**foods**(1) 205:2

**footnote**(5) 76:13 79:18 79:20 93:7 94:12 184:21 184:23

**footnoted**(2) 100:23 215:4

**for**(301) 1:2 1:25 2:4 2:19 2:33 2:48 3:4 3:10 3:17 3:45 4:4 4:17 4:26 4:45 5:4 5:11 5:36 5:48 6:4 6:14 6:21 6:43 6:47 7:4 7:16 7:26 7:42 8:4 8:9 8:12 8:16 8:19 8:23 8:28 8:32 8:36 8:40 8:45 8:49 9:4 9:9 9:14 9:21 9:26 9:30 9:35 9:40 9:44 9:46 10:4 10:9 10:13 10:17 10:21 10:25 10:31 11:11 11:25 13:3 13:5 16:9 16:12 16:12 16:18 17:18 17:18 18:24 22:13 22:15 23:16 23:24 25:25 26:1 26:4 26:21 26:23 27:12 27:15 28:7 28:19 28:22 28:24 30:8 30:11 30:13 30:15 33:9 33:20 36:11 36:23 37:2 38:6 39:8 40:5 40:8 41:5 41:8 41:10 41:12 41:14 41:19 41:21 42:1 42:18 43:1 43:13 43:14 43:15 43:15 43:16 45:1 45:21 47:4 47:6 49:7 49:8 50:10 50:23 51:25 52:30 53:23 54:5 54:10 54:24 60:2 60:6 64:16 66:6 66:21 68:9 68:10 68:11 68:23 69:11 70:15 70:16 70:25 71:22 72:20 72:21 73:4 73:5 74:3 74:14 74:15 74:20 75:6 75:10 75:18 75:20 75:20 76:9 76:15 76:21 77:3 78:15 79:12 79:20 80:8 80:25 81:17 82:24 83:1 84:17 85:16 86:8 86:13 86:14 86:21 87:24 88:7 89:7 89:22 91:12 91:23 92:2 92:9 95:11 95:22 95:24 96:17 96:25 97:4 97:7 97:11 99:2 102:6 102:23 103:4 103:13 103:21 103:25 104:5 105:3 105:20 106:21 107:25 108:19 109:7 109:13 111:18 111:22 111:22 113:19 113:20 113:25 114:6 114:10 114:12 114:24 115:3 115:15 117:17 118:16 118:24 118:25 119:1 119:7 120:6 120:15 120:19 121:16 122:21 122:22 122:24 122:25 123:8 123:9 123:10 123:17 124:12 125:12 127:2 127:18 128:10 128:25 130:2 130:18 130:21 131:7 131:11 132:11 133:12 133:22 133:23 134:9 135:12 135:13 136:2 138:24 139:16 139:17 140:16 140:23 141:10 141:12 141:18 142:19 142:21 142:24 145:4 145:9 145:19 146:6 147:23 148:8 148:16 148:16 149:18 149:19 149:20 150:1 150:9 150:18 150:24 153:14 154:12 155:4 156:4 157:10 157:12 157:13 157:15 157:15 158:17 159:9 160:6 160:10 160:20 161:6 162:2 162:9 162:12 162:15 165:21 165:21 167:3 169:14 171:16 175:10 175:11

**for**(88) 175:15 176:1 178:19 179:4 180:17 180:19 180:25 181:7 182:22 182:25 184:6 185:1 185:6 185:14 186:17 186:21 187:5 188:10 189:11 189:20 190:16 191:7 191:12 191:22 192:2 192:9 192:19 193:8 193:10 193:13 196:17 197:14 198:4 198:14 198:23 199:4 200:19 200:25 201:18 202:19 203:15 204:3 205:9 205:20 205:23 206:14 206:23 208:6 208:8 208:13 208:24 210:17 210:24 210:25 211:4 211:15 212:2 212:4 213:1 213:21 213:25 214:1 215:12 215:21 216:7 217:10 217:12 218:3 217:17 219:3 219:9 219:13 219:21 220:16 221:11 222:2 222:6 222:19 222:22 223:23 224:21 225:1 225:12 227:1 228:1 228:9 228:12 229:15

**forecast**(10) 123:9 132:9 132:11 133:11 133:15 134:4 134:3 143:8 143:19 150:7

**forecasting**(1) 23:21

**forecasts**(6) 93:9 134:8 143:9 144:6 145:4 190:13

**foregoing**(1) 230:2

**forgotten**(1) 17:1

**form**(1) 11:18

**formal**(5) 54:20 82:1 82:5 88:25 89:1

**forman**(1) 1:34

**formation**(2) 107:7 132:25

**former**(1) 7:16

**forms**(1) 110:3

**formulate**(1) 130:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **forsalebyowner**(1) 222:18 | | **fund**(2) 8:16 214:24 | | **gone**(3) 29:2 125:8 188:11 | | **had**(117) 11:20 11:24 12:19 14:5 14:20 |
| **forsalebyowner.com**(1) 222:16 | | **fundamental**(2) 10:4 10:5 | | **good**(38) 11:3 11:4 13:3 13:6 17:16 19:6 | | 17:1 17:5 22:8 22:10 22:11 27:14 31:25 |
| **forth**(15) 29:15 50:9 59:20 59:25 60:17 | | **funds**(1) 84:13 | | 19:24 19:25 53:14 53:16 53:17 76:20 | | 32:8 37:9 37:23 44:15 46:9 52:4 53:23 |
| 91:3 144:22 145:8 157:11 161:20 163:15 | | **further**(13) 47:11 52:5 102:13 102:18 | | 76:25 77:15 103:3 105:25 113:11 113:15 | | 54:2 54:5 56:6 62:10 68:17 69:14 69:19 |
| 193:3 194:3 194:17 222:12 | | 135:5 141:9 149:18 152:9 158:10 178:23 | | 119:8 134:11 135:11 135:23 148:14 160:5 | | 69:22 69:24 71:17 72:17 72:21 72:22 |
| | | 185:7 218:8 224:15 | | 165:14 165:16 202:12 207:19 207:23 | | 72:24 72:24 72:25 75:17 76:25 77:5 87:2 |
| **forty**(4) 184:14 193:17 200:14 202:8 | | | | 207:24 208:18 209:2 210:19 211:8 211:10 | | 87:5 87:8 87:23 90:8 90:8 95:15 95:20 |
| **forward**(11) 49:10 110:24 115:25 130:18 | | **furthermore**(1) 208:13 | | 211:12 222:5 225:25 | | 95:21 98:14 100:2 106:21 112:6 113:2 |
| 133:12 133:13 134:3 159:10 183:6 226:19 | | **future**(11) 17:9 18:7 18:20 103:23 113:25 | | | | 114:1 121:17 124:25 125:8 125:15 126:13 |
| 227:11 | | 133:3 133:7 142:19 142:21 182:23 221:23 | | **goodwill**(1) 49:24 | | 127:9 128:12 129:11 131:17 133:5 137:18 |
| **found**(7) 189:22 205:11 208:24 209:16 | | | | **gordon**(3) 5:44 7:7 138:10 | | 137:24 137:25 138:23 144:22 146:20 148:2 |
| 212:15 214:7 224:8 | | **gandhi**(1) 7:43 | | **got**(19) 54:16 57:21 72:15 91:4 92:9 149:4 | | 148:20 149:20 151:24 152:6 154:16 155:6 |
| | | **ganette**(1) 212:21 | | 157:20 161:25 163:7 163:8 172:25 191:6 | | 165:24 167:20 172:7 172:14 175:1 176:7 |
| **foundation**(5) 9:31 108:19 116:12 116:21 | | **gap**(4) 75:12 75:15 75:20 124:11 | | 207:23 209:4 209:4 220:2 226:10 226:11 | | 176:24 177:2 178:5 180:23 182:16 182:24 |
| 118:4 | | **garnered**(1) 127:10 | | 227:19 | | 185:6 188:8 188:25 191:18 192:16 195:11 |
| | | **garvan**(1) 2:20 | | **gotshal**(1) 7:42 | | 196:8 196:13 199:4 200:10 201:20 201:25 |
| **founded**(1) 161:24 | | **gary**(1) 6:36 | | **governance**(2) 117:13 117:20 | | 204:6 206:21 207:16 208:16 209:15 209:18 |
| **founding**(1) 107:7 | | **gave**(4) 77:13 80:8 108:17 225:23 | | **graduated**(1) 107:4 | | 209:22 211:11 211:20 211:20 214:12 |
| **four**(13) 104:15 125:18 126:6 126:8 126:8 | | **gavin**(1) 5:45 | | **graem**(2) 3:37 5:27 | | 214:22 216:12 219:10 220:13 220:15 |
| 126:14 127:22 128:24 161:25 172:11 | | **gears**(1) 131:18 | | **grail**(1) 133:23 | | 225:18 |
| 173:18 174:5 214:13 | | **geddes**(1) 2:42 | | **grand**(1) 4:40 | | |
| | | **gee**(1) 65:25 | | **grant**(1) 19:19 | | **hail**(1) 133:24 |
| **fourth**(6) 41:25 42:25 139:6 139:6 139:13 | | **general**(28) 30:3 32:19 34:14 43:16 50:2 | | **graph**(1) 130:14 | | **hale**(1) 5:37 |
| 140:18 | | 80:24 90:23 92:17 94:17 105:1 107:9 | | **graphical**(1) 193:15 | | **half**(7) 36:12 37:16 37:16 37:17 38:2 |
| | | 119:23 124:8 131:16 168:13 175:12 176:1 | | **graphically**(1) 180:9 | | 128:25 130:14 |
| **franchise**(1) 21:14 | | 178:3 180:1 180:8 187:15 188:2 188:10 | | **graphs**(1) 126:6 | | |
| **frank**(3) 5:21 10:21 10:22 | | 188:17 189:20 198:24 203:14 211:7 | | **gray**(1) 192:18 | | **half-hour**(1) 110:18 |
| **frankly**(1) 228:11 | | | | **great**(3) 119:7 140:7 147:6 | | **hampered**(1) 110:7 |
| **fraudulent**(2) 61:12 61:13 | | **generalist**(1) 175:18 | | **green**(2) 181:2 224:6 | | **hand**(15) 30:7 30:24 38:4 45:15 49:22 |
| **free**(8) 84:17 84:18 134:25 142:8 193:19 | | **generalities**(1) 108:25 | | **greg**(1) 6:22 | | 57:17 103:9 103:9 142:3 160:16 160:16 |
| 194:10 218:3 229:5 | | **generally**(17) 70:13 72:19 80:5 87:4 97:9 | | **greissman**(1) 9:27 | | 173:21 228:18 228:22 229:2 |
| | | 108:7 108:18 121:12 146:17 168:12 171:3 | | **grippo**(1) 6:43 | | |
| **fresh**(4) 124:13 217:3 217:21 217:22 | | 171:18 195:23 200:18 200:19 214:18 | | **groper**(1) 225:23 | | **handcuffed**(1) 113:22 |
| **fresh-start**(3) 124:14 216:24 217:3 | | 222:16 | | **gross**(2) 33:19 38:13 | | **handed**(6) 74:9 135:14 161:4 161:5 225:13 |
| **friday**(2) 11:21 12:17 | | | | **ground**(3) 143:18 143:22 144:9 | | 227:16 |
| **friedman**(2) 2:27 7:37 | | **generated**(3) 89:24 90:2 220:22 | | **group**(30) 14:14 20:4 20:18 106:16 120:2 | | |
| **friends**(1) 225:25 | | **generating**(2) 84:17 84:18 | | 135:13 136:10 161:16 162:4 162:11 162:1 | | **handful**(1) 14:25 |
| **from**(175) 12:21 16:4 16:5 16:21 20:12 | | **gentilotti**(1) 2:19 | | 162:17 163:3 169:18 170:1 170:11 170:1 | | **handles**(1) 18:9 |
| 20:13 25:7 30:25 31:7 31:22 31:24 32:2 | | **george**(2) 6:43 6:44 | | 170:12 170:21 171:4 175:20 176:10 176:1 | | **handling**(2) 11:21 12:3 |
| 33:7 33:8 33:8 33:10 33:18 35:10 36:18 | | **germane**(1) 12:10 | | 176:11 176:13 176:20 176:22 176:25 | | **hands**(3) 113:22 142:5 142:8 |
| 37:11 37:12 39:7 39:9 39:10 39:15 39:17 | | **get**(30) 13:15 15:2 15:4 18:22 56:14 82:23 | | 192:8 192:8 | | **hangs**(1) 115:4 |
| 39:20 40:18 40:20 40:22 40:23 43:2 43:7 | | 110:24 113:11 115:13 115:5 134:12 | | | | **happen**(1) 159:6 |
| 44:10 44:19 45:2 45:13 45:19 45:21 45:24 | | 134:24 158:6 158:8 159:20 172:23 175:3 | | **groupings**(1) 192:10 | | **happy**(1) 11:17 16:14 |
| 46:1 47:13 47:19 47:20 47:25 48:3 48:6 | | 175:22 178:13 180:2 182:22 195:25 198:2 | | **groups**(7) 47:19 59:22 61:2 175:19 176:8 | | **hard**(4) 130:3 153:18 222:7 226:14 |
| 48:19 49:1 49:5 50:25 51:14 53:7 54:25 | | 216:3 218:1 219:1 226:15 227:1 227:10 | | 192:23 192:25 | | **harrisburg**(1) 1:45 |
| 55:8 55:18 56:6 56:11 56:13 56:14 56:16 | | 229:19 | | | | **hartenstein**(12) 103:6 103:10 103:14 104:5 |
| 56:24 59:22 60:7 60:10 60:16 63:4 63:14 | | | | **grow**(1) 115:3 | | 104:7 117:23 122:1 135:11 143:16 146:16 |
| 65:17 66:13 66:18 67:4 67:9 67:19 68:8 | | **gets**(2) 82:17 115:21 | | **growth**(15) 154:3 154:8 154:10 154:16 | | 151:2 231:4 |
| 68:8 68:11 70:19 71:4 77:3 77:8 77:10 | | **getting**(5) 53:20 54:1 63:12 117:17 158:6 | | 154:17 155:6 155:20 156:5 156:19 157:10 | | |
| 77:25 78:7 78:10 79:9 88:5 90:1 91:1 | | **give**(6) 21:17 21:25 69:6 179:25 | | 157:12 192:21 192:23 208:15 210:25 | | **hartford**(1) 4:8 |
| 91:4 94:15 94:15 94:18 95:20 96:10 96:1 | | **given**(15) 28:5 34:22 38:18 51:2 66:5 | | | | **hartland**(2) 21:8 21:13 |
| 97:7 98:12 99:16 100:7 100:17 100:23 | | 67:4 67:21 70:20 70:20 73:12 93:8 98:21 | | **gruszka**(1) 10:6 | | **has**(59) 12:4 17:2 18:3 19:12 21:20 30:17 |
| 101:13 101:20 107:4 107:6 109:17 110:22 | | 158:4 205:18 221:21 | | **guarantee**(1) 142:12 | | 38:8 38:18 55:3 55:23 60:11 65:15 70:1 |
| 113:10 115:6 115:15 115:18 116:8 117:24 | | | | **guarantor**(12) 38:12 45:2 45:4 47:20 | | 70:24 79:19 87:17 101:3 105:2 109:13 |
| 118:18 118:22 119:22 119:23 120:18 | | **giving**(2) 13:17 229:2 | | 47:21 47:25 48:6 48:19 49:2 50:25 51:14 | | 109:14 110:9 112:6 112:22 112:25 114:1 |
| 123:13 123:21 124:24 125:8 125:22 125:2 | | **global**(2) 6:47 20:6 | | 55:4 | | 114:14 118:4 120:7 121:4 122:11 124:13 |
| 126:7 129:2 129:12 130:11 131:8 132:5 | | **go-forward**(1) 109:9 | | **guess**(13) 15:10 18:25 42:20 57:6 98:8 | | 131:19 133:24 134:23 137:16 152:11 |
| 134:13 136:13 143:3 147:18 147:23 147:2 | | **goes**(9) 67:25 93:13 112:3 121:8 126:21 | | 159:8 167:12 173:6 173:10 189:24 194:19 | | 152:11 155:25 161:24 162:1 162:3 164:17 |
| 148:4 149:9 155:8 155:8 157:4 157:24 | | 126:25 151:16 208:11 211:7 | | 205:10 212:11 | | 167:19 174:2 176:15 177:2 179:2 179:4 |
| 163:8 163:8 164:6 170:23 171:16 173:22 | | | | | | 181:12 187:8 188:10 188:11 208:1 208:2 |
| 176:8 176:12 176:19 176:20 181:15 181:2 | | **going**(65) 12:9 15:21 16:22 29:16 29:18 | | **gump**(7) 2:33 7:31 13:4 17:17 135:12 | | 221:24 225:3 229:5 229:7 229:11 |
| 182:19 183:14 184:11 184:22 187:1 | | 29:19 29:25 45:3 49:1 49:4 49:5 49:10 | | 160:7 179:15 | | |
| 187:15 191:24 195:25 212:1 215:22 216:2 | | 49:22 50:25 51:3 53:5 54:1 57:22 57:23 | | | | **hasn't**(1) 174:3 |
| 217:19 220:19 223:7 223:8 224:20 226:1 | | 57:25 63:1 68:15 76:2 79:4 85:25 89:25 | | **guy**(1) 114:20 | | **hate**(1) 15:25 |
| 226:23 227:19 230:3 | | 101:14 108:14 110:19 115:25 117:13 118: | | **guys**(1) 110:20 | | **hauer**(6) 2:33 7:31 13:4 17:17 135:12 |
| | | 118:7 118:24 121:12 130:3 130:17 132:5 | | **h-a-r-t-e-n-s-t-e-i-r**(1) 103:15 | | |
| **front**(7) 43:20 81:8 133:12 136:11 168:3 | | 133:13 134:3 134:25 148:18 151:22 154:4 | | | | |
| 181:21 185:13 | | 162:6 165:2 165:3 165:5 167:21 173:6 | | | | |
| | | 173:22 179:5 181:18 205:16 207:11 217:22 | | | | |
| **frozen**(1) 71:16 | | 217:23 218:10 225:3 226:19 226:23 227:1 | | | | |
| **fruit**(1) 21:6 | | 227:4 228:9 228:9 | | | | |
| **full**(17) 29:9 32:17 63:5 63:15 68:10 | | | | | | |
| 98:15 103:12 121:15 138:23 140:18 140:2 | | **going-concern**(7) 85:13 86:2 86:17 86:20 | | | | |
| 141:8 145:1 146:20 160:20 161:23 199:10 | | 88:16 89:11 89:25 | | | | |
| | | | | | | |
| **full-time**(1) 107:15 | | **golden**(7) 2:35 17:11 17:16 17:17 18:18 | | | | |
| **full-year**(1) 121:17 | | 19:3 19:5 | | | | |
| **function**(3) 85:17 104:23 123:16 | | | | | | |
| **functioning**(1) 105:20 | | **goldfarb**(2) 3:38 5:29 | | | | |
| **functions**(2) 105:9 120:15 | | **goldis**(1) 5:39 | | | | |
| | | **goldman**(3) 5:41 10:17 10:17 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**have(216)** 11:10 11:15 11:16 11:23 12:22 12:23 13:1 13:21 15:7 16:6 16:8 18:5 18:8 18:18 18:19 18:23 20:11 20:12 21:1 21:18 21:21 22:2 22:5 22:8 22:10 23:2 27:14 29:6 29:9 29:24 30:2 30:14 31:3 31:7 31:21 32:16 34:20 36:12 36:16 37:20 38:2 38:12 38:18 38:23 41:5 41:21 42:7 54:15 56:1 56:7 57:10 59:2 59:6 59:11 60:13 62:4 62:5 72:23 73:16 74:10 74:16 74:18 74:21 87:16 89:21 90:11 90:21 92:6 92:7 97:6 97:15 97:24 100:6 100:8 102:1 102:16 103:24 104:12 104:24 105:5 105:7 106:10 106:24 107:13 107:16 107:23 109:16 109:19 109:21 111:12 111:16 113:19 113:23 114:10 115:7 116:10 116:1 117:14 119:10 124:11 125:14 127:7 129:23 130:3 132:21 133:5 133:8 133:9 133:11 133:11 133:19 134:16 134:17 134:18 135:2 135:4 136:11 138:7 138:9 141:25 145:1 145:17 145:18 146:15 149:7 149:8 150:13 150:14 150:17 151:13 152:1 152:13 155:4 157:23 158:2 158:8 158:10 158:13 158:25 159:6 159:25 163:10 163:1 163:13 163:22 164:16 165:9 166:11 167:16 167:18 167:22 168:7 168:17 168:1 168:21 169:9 170:14 171:13 171:14 171:17 171:21 171:23 172:4 172:10 173:2 175:23 176:5 176:14 177:1 177:10 178:10 178:23 179:1 179:7 181:7 181:20 182:24 183:1 184:9 185:2 185:3 185:8 189:11 189:18 192:10 192:10 193:5 194:11 196:6 196:18 199:16 200:11 201:25 203:23 204:25 205:21 206:13 206:24 207:9 207:25 208:20 210:21 210:22 211:8 212:5 220:12 220:20 224:15 225:4 227:2 227:7 228:10 228:14 228:21 228:23 229:1

**haven't(8)** 12:1 100:5 168:24 169:1 169:7 169:24 188:8 226:16

**haven't(1)** 110:4

**having(8)** 26:12 26:12 58:19 75:13 81:8 117:14 119:5 191:15

**hazeltine(1)** 4:11

**he'll(1)** 228:19

**he's(5)** 22:25 23:5 151:19 173:25 174:4

**head(8)** 93:23 105:4 105:6 115:5 140:4 161:15 162:11 170:12

**heading(1)** 189:18

**headquarters(1)** 144:23

**heads(2)** 114:17 118:23

**hear(3)** 16:5 165:5 229:17

**heard(6)** 18:25 27:6 35:18 66:5 100:4 103:12

**hearing(3)** 12:5 23:24 225:11

**heart(1)** 49:21

**heartburn(1)** 229:15

**heck(1)** 227:18

**heilbut(1)** 8:6

**held(5)** 37:22 37:23 37:24 66:17 104:12

**help(5)** 74:8 90:18 130:17 133:1 176:15

**helpful(5)** 11:18 83:19 226:25 228:11 228:22

**helps(2)** 51:24 193:4

**henderson(1)** 6:28

**her(2)** 137:20 137:25

**hercules(1)** 4:20

**here(53)** 11:5 13:15 36:15 37:18 40:1 42:13 49:22 51:23 54:8 54:16 54:25 56:7 63:20 65:5 75:14 75:17 75:22 83:11 96:2 100:5 105:5 125:2 126:6 133:24 138:17 144:6 147:23 152:23 154:22 155:11 166:3 166:20 167:21 193:3 194:17 195:11 200:2 204:10 205:5 206:16 206:19 207:6 208:5 211:4 213:8 213:21 214:4 214:5 215:5 218:11 222:13 222:19 223:4

**here's(2)** 95:7 228:8

**hewitt(1)** 25:13

**he's(2)** 116:16 137:15

**high(8)** 32:13 32:14 32:18 33:5 154:24 155:1 170:24 171:1

**high-level(1)** 98:19

**higher(14)** 33:10 33:22 41:19 41:24 73:4 93:10 98:23 154:16 190:20 190:24 190:25 201:25 202:3 220:19

**highlighted(1)** 55:10

**highly(3)** 12:10 103:24 135:17

**hill(1)** 163:9

**him(15)** 69:2 103:6 118:5 118:6 118:9 136:3 151:22 151:24 151:25 152:6 159:15 172:17 177:13 226:6 229:2

**his(16)** 22:19 66:4 109:1 118:9 132:23 132:24 133:1 137:16 159:10 170:2 176:24 191:13 191:14 226:13 226:22 227:20

**historical(1)** 44:13

**historically(2)** 37:23 75:18

**history(1)** 107:2

**hit(1)** 54:16

**hobbled(2)** 110:7 134:22

**hold(1)** 29:8

**holders(15)** 32:17 32:18 32:19 41:14 42:7 71:23 72:13 73:3 73:4 73:5 73:15 76:6 76:9 81:5 91:22

**holding(4)** 113:1 165:17 166:16 174:17

**holdings(6)** 28:5 107:22 107:23 112:19 112:22 112:23

**holds(1)** 36:25

**holiday(1)** 128:11

**holy(1)** 133:23

**home(1)** 111:20

**honor(97)** 11:4 11:7 11:10 11:13 11:20 12:11 12:15 13:18 14:11 14:18 15:6 15:11 15:19 15:24 16:17 16:20 16:25 17:17 17:20 19:5 19:6 19:11 19:19 22:17 22:23 34:8 44:4 51:2 51:4 53:4 53:10 74:17 74:19 82:19 97:15 97:18 97:23 102:14 102:16 102:18 102:22 102:25 103:3 103:5 103:17 108:14 108:24 109:4 114:18 116:1 118:3 135:4 135:7 135:14 135:19 140:14 140:15 143:13 145:14 150:13 150:17 150:23 153:15 155:14 158:11 158:25 159:3 159:17 160:4 160:6 160:10 160:24 161:4 164:23 165:2 173:20 174:11 177:9 177:14 178:24 179:10 185:17 224:18 224:21 225:7 225:15 225:24 226:8 226:10 227:14 227:22 228:6 229:3 229:13 229:20 229:22

**honorable(1)** 1:19

**hope(4)** 133:23 142:19 142:21 158:4

**hoped(1)** 127:9

**hopefully(2)** 14:8 199:23

**horizontal(1)** 126:17

**hour(1)** 16:5

**hours(12)** 11:15 11:16 114:17 173:5 173:5 173:6 173:9 173:10 177:2 177:7 225:10 225:17

**how(97)** 12:7 12:7 21:1 21:24 22:14 26:21 29:22 31:23 33:12 37:7 39:11 41:8 41:19 49:9 51:8 52:16 59:24 60:18 62:14 65:2 74:3 75:17 77:4 78:25 90:18 104:12 104:14 105:2 105:23 106:3 106:4 108:7 109:1 111:24 112:25 118:13 123:15 124:1 127:4 127:22 127:24 129:23 130:21 132:13 138:13 139:4 148:23 152:3 153:17 154:21 155:19 157:17 157:23 162:17 164:13 167:10 169:21 169:21 172:4 172:1 173:2 173:9 176:5 176:14 177:1 186:3 187:8 188:4 188:5 189:7 190:14 191:3 191:18 191:19 192:5 192:18 192:20 194:2 194:5 194:14 194:22 196:12 196:13 197:1 197:23 200:13 203:15 205:23 208:22 214:12 218:7 218:11 219:3 220:1 220:2 227:25 229:18

**howard(2)** 3:28 4:5

**however(7)** 16:14 45:20 46:2 98:19 163:12 206:2 213:11

**huge(3)** 112:4 117:16 131:15

**hughes(4)** 107:5 107:6 107:8 107:11

**hundred(3)** 173:6 173:10 175:20

**hundreds(2)** 164:16 175:13

**hunter(4)** 104:18 105:7 105:13 105:14

**hypothetical(3)** 62:13 85:12 96:18

**i'd(9)** 16:16 32:22 54:23 74:13 205:5 216:6 219:3 223:23 228:15

**i'll(14)** 19:19 41:16 69:6 81:14 153:19 160:13 177:11 180:10 182:21 188:9 206:7 226:14 227:11 228:21

**i'm(63)** 12:25 18:14 51:3 53:5 56:13 56:14 56:15 57:6 57:10 58:24 62:12 63:6 65:5 72:1 73:7 74:10 74:18 75:1 76:23 82:23 85:3 85:8 91:14 91:19 92:2 96:7 97:10 97:18 140:6 140:12 141:8 144:12 146:17 151:4 153:17 156:14 156:15 161:19 162:6 165:2 165:3 165:7 165:15 171:23 173:6 173:20 175:18 175:18 175:21 179:5 186:2 188:24 192:4 199:21 205:16 213:18 216:2 219:24 225:1 226:19 226:19 227:1 229:2

**i've(19)** 18:25 20:23 21:23 22:2 22:11 22:12 22:15 23:17 100:4 100:4 102:4 161:4 163:20 163:21 164:19 168:21 168:2 176:22 185:13

**idea(7)** 21:9 21:17 21:25 113:11 113:15 164:16 177:1

**identified(11)** 24:18 34:11 44:6 91:5 121:13 126:16 169:13 170:4 185:23 207:1 231:15

**identify(7)** 85:9 104:16 132:17 145:13 145:19 166:3 167:2

**ignore(1)** 18:25

**illinois(3)** 3:14 20:13 20:14

**illustrate(1)** 51:25

**illustrated(1)** 79:7

**illustrates(2)** 44:23 49:3

**illustrating(1)** 186:24

**illustrative(4)** 184:6 187:5 213:21 222:19

**imagine(2)** 167:24 216:16

**immaterial(4)** 42:23 73:16 79:25 79:25

**immediately(6)** 16:3 48:17 84:7 84:16 111:17 134:15

**impact(47)** 41:19 41:21 48:11 49:4 51:25 51:25 52:4 52:7 62:22 64:16 64:19 73:16 79:6 79:19 94:20 101:5 101:7 101:9 101:18 110:9 112:6 114:1 116:9 116:19 117:2 119:5 134:12 167:9 167:22 174:21 178:4 180:23 182:7 183:8 183:24 184:3 184:10 184:16 185:4 186:18 190:22 193:5 194:11 195:2 195:7 195:9 195:25

**impacted(6)** 62:19 62:20 62:21 191:18 194:23 221:4

**impacts(1)** 220:21

**impediments(1)** 134:23

**implement(1)** 217:21

**implementation(2)** 22:3 216:23

**implemented(1)** 22:13

**implied(1)** 196:17

**implies(1)** 197:3

**importance(3)** 48:22 98:13 98:22

**important(7)** 34:22 49:3 68:4 185:4 212:14 221:20 222:6

**importantly(1)** 87:11

**improperly(1)** 183:15

**improve(3)** 90:25 111:5 157:21

**improved(1)** 158:21

**imrad(1)** 9:45

**inactive(1)** 163:12

**inadvertently(1)** 182:5

**inc(4)** 8:45 8:45 9:9 10:21

**incentive(3)** 97:6 114:8 138:21

**incentivized(1)** 97:3

**include(14)** 14:22 15:9 64:19 84:16 92:6 94:24 95:4 120:12 186:15 202:5 205:20 208:24 215:3 217:6

**included(18)** 21:21 33:16 33:20 42:19 69:15 71:12 86:23 182:10 183:15 183:16 201:17 205:17 208:5 212:7 212:9 213:5 214:17 222:20

**includes(4)** 35:16 84:23 92:21 106:17

**including(17)** 22:19 23:18 28:22 30:1 35:10 39:14 41:11 42:6 49:24 59:8 76:14 95:18 105:9 129:5 133:24 148:22 209:4

**incomplete(1)** 223:8

**incorporated(1)** 67:13

**incorporates(1)** 17:21

**incorrect(2)** 79:5 171:3

**increase(16)** 41:23 47:7 52:9 94:2 94:2 100:10 182:16 186:18 187:16 187:18 200:20 201:7 217:12 218:18 220:3 220:4

**increased(5)** 87:24 186:8 206:1 217:11 223:2

**increasing(1)** 48:12

**increasingly(1)** 111:22

**incurred(5)** 24:25 25:19 26:18 27:19 92:7

**incurs(1)** 221:14

**indeed(4)** 11:7 78:12 147:10 185:14

**indenture(5)** 41:17 71:23 76:15 76:16

**independen(3)** 70:4 70:6 73:23

**independently(1)** 76:24

**index(5)** 178:14 199:9 199:22 210:8 231:1

**indicate(2)** 168:19 184:3

**indicated(17)** 12:17 12:20 13:21 14:12 26:8 61:3 69:16 90:20 98:12 112:18 115:3 116:24 126:24 129:12 139:9 157:7 206:22

**indicating(1)** 31:20

**indicator(1)** 131:13

**indiscernible(1)** 87:22

**individual(9)** 28:3 28:19 35:19 47:22 50:6 57:19 125:20 144:18 145:3

**individually(1)** 144:14

**individuals(1)** 176:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **industries**(2) 175:22 178:21 | | **interest**(18) 38:10 41:11 63:3 63:12 63:17 72:20 74:6 75:5 81:6 82:4 92:4 93:16 95:23 113:1 113:7 117:6 180:7 203:25 | | **item**(12) 40:8 40:11 40:12 183:3 190:13 190:14 191:8 216:18 217:20 217:25 218:3 220:11 | | **just**(151) 11:5 14:7 15:6 15:24 16:13 16:24 18:9 18:12 23:4 33:8 35:13 43:13 51:15 51:24 53:5 54:23 56:3 60:18 66:7 67:3 70:3 73:2 77:16 77:25 83:1 87:14 91:5 95:21 96:7 97:11 97:13 97:25 103:20 103:25 108:23 109:7 109:19 109:21 111:20 114:25 118:18 121:11 121:11 121:13 123:23 124:7 128:1 129:10 129:21 130:2 136:21 137:24 139:9 140:1 143:8 144:23 145:21 146:2 146:7 146:19 148:22 149:15 155:22 155:22 156:10 157:15 158:13 158:17 162:6 165:17 168:11 173:11 174:7 179:25 180:11 185:4 185:14 186:7 186:14 186:19 186:21 187:4 187:6 187:7 187:14 187:21 189:15 190:20 191:6 191:11 191:20 191:25 192:17 193:4 193:15 193:23 194:6 194:6 195:4 195:21 196:5 196:11 196:22 196:25 197:9 197:9 197:15 198:2 198:6 198:14 199:13 200:18 201:12 201:14 201:23 202:4 202:11 202:17 203:6 203:10 204:11 208:6 208:21 210:21 210:21 210:22 213:21 215:3 216:22 217:13 217:20 218:7 218:8 218:11 218:12 218:22 219:13 220:17 221:18 221:21 222:3 222:17 222:19 222:20 223:10 223:23 225:13 226:6 227:11 228:2 229:4 |
| **industry**(35) 53:24 54:3 99:15 99:19 99:21 108:18 109:8 110:5 110:12 110:23 111:8 130:12 130:14 130:25 131:10 133:21 157:10 171:11 171:12 171:15 173:12 174:18 174:21 175:11 175:16 175:16 175:19 176:3 177:19 177:23 177:24 178:2 178:8 178:21 179:2 | | **interested**(1) 9:35 | | **items**(16) 25:20 29:3 29:25 30:25 38:23 66:20 71:11 71:14 168:15 175:5 181:13 204:23 204:23 204:24 221:10 221:10 | | |
| | | **interests**(8) 31:5 31:9 35:22 87:25 203:9 203:19 215:12 215:22 | | | | |
| **information**(63) 24:20 24:22 25:7 35:3 35:5 35:7 35:9 35:11 54:25 67:9 67:12 67:15 67:17 67:22 67:23 68:1 68:6 68:8 68:10 68:17 68:20 68:22 70:12 89:22 95:14 98:9 98:12 133:11 135:17 148:20 150:5 152:10 161:20 175:2 175:6 178:17 180:22 180:24 185:1 185:2 188:3 191:10 192:5 194:3 194:16 198:10 198:18 198:20 199:3 199:4 199:11 199:16 201:5 202:15 203:12 204:17 204:18 208:8 209:22 211:8 218:21 218:24 227:1 | | **interim**(3) 107:17 119:25 124:23 | | **iteration**(3) 120:4 124:23 143:22 | | |
| | | **internally**(1) 214:23 | | **iterations**(1) 64:6 | | |
| | | **international**(3) 21:7 21:11 212:12 | | **iterative**(3) 32:7 39:21 144:22 | | |
| | | **internet**(4) 54:6 84:7 214:14 215:1 | | **its**(28) 30:18 36:18 38:10 59:8 59:11 60:10 63:21 69:19 69:22 69:24 70:2 84:6 87:8 87:16 87:17 89:3 105:23 106:17 106:22 119:25 166:25 180:4 193:8 196:8 208:2 212:22 212:23 218:24 | | |
| | | **internet-based**(1) 211:23 | | | | |
| | | **interposed**(1) 71:24 | | | | |
| | | **interprets**(1) 109:1 | | | | |
| | | **interrupt**(1) 225:3 | | | | |
| **informative**(1) 194:6 | | **interrupting**(1) 225:2 | | **itself**(3) 83:17 83:19 212:17 | | |
| **informed**(2) 99:22 191:6 | | **into**(51) 17:12 20:18 34:6 34:11 35:24 44:6 45:1 49:23 52:14 52:23 71:17 94:3 95:8 97:3 99:15 107:5 107:14 107:14 107:21 109:20 113:20 143:3 148:19 150:4 180:2 180:4 180:10 182:22 183:6 185:23 185:25 188:19 190:4 191:2 193:4 194:4 198:9 203:10 207:9 207:25 216:25 217:23 217:24 218:24 222:4 | | **it's**(24) 108:20 109:11 110:20 111:1 112:1 112:10 112:12 112:14 112:15 113:8 114:3 115:2 119:7 119:8 119:12 122:12 122:25 124:12 127:16 129:10 130:24 131:3 131:7 133:19 | | **justify**(1) 197:18 |
| **informs**(1) 199:17 | | | | | | **kalenchits**(2) 8:9 8:9 |
| **infrastructure**(1) 112:5 | | | | | | **kaminetzky**(1) 2:5 |
| **infrastructure**(1) 111:3 | | | | **i'd**(4) 103:6 103:20 119:11 131:18 | | **kansa**(1) 6:24 |
| **initial**(15) 35:20 36:8 36:14 37:6 39:16 39:25 40:1 50:3 66:16 66:18 67:1 98:19 99:16 99:17 182:20 | | | | **i'm**(11) 105:16 105:17 106:3 108:14 108:24 114:20 118:4 128:18 128:22 131:6 135:17 | | **kaplan**(1) 7:37 |
| | | | | | | **kapnick**(24) 1:28 16:21 19:6 19:7 19:11 19:23 22:17 23:4 23:12 23:25 24:5 24:8 24:14 24:19 34:5 34:12 44:1 44:7 51:2 51:7 53:4 97:23 98:2 102:13 |
| **initially**(1) 41:2 | | **introduce**(1) 137:24 | | **i've**(3) 119:17 120:12 120:13 | | |
| **initiatives**(1) 90:25 | | **introduced**(2) 11:22 200:10 | | **james**(29) 1:26 3:39 4:37 4:39 5:28 8:36 11:7 161:13 161:22 161:23 162:10 162:20 163:20 163:21 166:11 166:24 168:10 168:12 168:13 168:14 176:6 176:8 176:12 176:20 177:2 179:19 180:12 188:1 209:18 | | **kasowitz**(2) 3:26 9:14 |
| **input**(1) 77:8 | | **intuitively**(1) 201:23 | | | | **katharine**(1) 3:46 |
| **inputs**(2) 189:2 191:2 | | **invalidated**(1) 223:12 | | | | **katherine**(1) 6:15 |
| | | **inventory**(1) 29:10 | | | | **katten**(1) 9:31 |
| **instance**(5) 197:3 202:24 206:4 210:23 211:19 | | **investing**(1) 221:1 | | | | **kaye**(1) 10:31 |
| | | **investment**(18) 10:5 10:5 86:18 105:7 117:10 133:2 162:4 162:11 162:15 162:23 164:4 165:25 171:4 175:20 175:25 176:2 197:6 221:1 | | **janet**(1) 6:28 | | **keep**(5) 90:22 113:2 162:7 199:23 202:12 |
| **instances**(4) 171:13 175:8 205:10 210:10 | | | | **january**(15) 68:21 87:9 87:23 99:25 125:22 127:22 127:25 128:24 129:25 149:21 150:2 157:1 187:18 213:12 213:15 | | **ken**(1) 6:24 |
| **instead**(3) 98:9 182:12 189:3 | | | | | | **kenneth**(1) 8:21 |
| **institutions**(2) 170:11 170:12 | | | | | | **kevin**(1) 1:27 |
| **instruct**(1) 78:12 | | **investments**(4) 29:14 30:18 36:20 107:23 | | **jarashow**(1) 7:39 | | **key**(5) 25:14 60:2 96:25 100:9 179:24 |
| **instructed**(5) 42:19 64:23 65:8 65:11 183:9 | | **investors**(1) 6:47 | | **jeffrey**(1) 9:5 | | **kim**(1) 8:13 |
| **instruction**(11) 65:17 65:22 66:7 66:10 77:3 77:13 77:25 78:7 78:9 80:12 95:20 | | **involve**(2) 176:12 176:19 | | **jenner**(1) 4:45 | | **kind**(12) 71:10 85:12 117:20 181:18 200:18 201:2 204:15 214:11 215:3 222:16 222:20 226:18 |
| | | **involved**(13) 21:16 21:21 22:3 22:7 22:12 23:18 54:1 107:7 152:3 164:17 169:19 169:21 170:5 | | **jessica**(1) 5:17 | | |
| | | | | **jiffy**(1) 21:14 | | |
| **instructions**(1) 80:7 | | | | **jillian**(1) 6:26 | | **kinds**(4) 108:11 110:22 116:5 116:6 |
| **integrated**(1) 57:5 | | **involvement**(2) 106:24 132:21 | | **jim**(5) 17:16 103:4 150:24 165:14 224:21 | | **king**(4) 2:15 2:21 3:6 3:48 |
| **intend**(2) 12:18 19:18 | | **involving**(1) 170:4 | | **jimmy**(2) 136:2 136:8 | | **kira**(1) 7:5 |
| **intended**(3) 14:13 199:24 200:2 | | **isn't**(3) 57:8 187:5 208:3 | | **job**(3) 106:9 106:10 115:22 | | **kizzy**(1) 7:39 |
| **intent**(10) 46:6 46:6 50:14 59:24 60:3 60:4 60:12 60:18 61:3 200:4 | | **isn't**(2) 110:18 117:12 | | **jobs**(1) 114:5 | | **klauder**(1) 3:5 |
| | | **isolate**(3) 186:9 186:13 194:22 | | **joe**(1) 9:41 | | **knew**(4) 80:12 80:15 136:8 199:22 |
| **intentionally**(1) 71:4 | | **issue**(22) 14:2 16:1 42:24 60:2 61:22 68:25 73:25 77:16 77:20 79:25 89:18 95:10 101:12 116:20 165:4 167:14 190:11 216:8 216:14 224:23 225:2 226:16 | | **john**(1) 7:34 | | |
| **inter**(1) 20:7 | | | | **johnston**(1) 4:37 | | |
| **inter-company**(5) 78:15 78:18 78:19 78:21 99:18 | | | | **join**(1) 106:19 | | |
| | | | | **joined**(1) 162:19 | | |
| | | | | **joining**(1) 107:3 | | |
| **interactions**(1) 120:1 | | **issued**(2) 179:17 216:10 | | **joint**(1) 32:14 | | |
| **interactive**(3) 54:6 99:3 183:12 | | **issues**(16) 12:24 18:8 18:16 18:16 22:18 23:1 23:18 99:21 112:7 169:5 170:25 174:23 175:8 217:9 217:22 224:8 | | **jones**(5) 3:11 7:23 10:9 10:13 10:13 | | |
| **intercompanies**(3) 44:18 47:17 50:14 | | | | **joshua**(2) 4:38 8:42 | | |
| **intercompany**(103) 17:14 17:7 17:9 17:22 17:25 18:4 18:7 18:11 18:20 19:15 22:9 22:11 22:12 22:19 23:4 23:5 23:22 31:5 31:5 31:8 32:4 35:10 35:11 35:21 35:22 35:23 38:6 38:16 39:15 39:20 43:19 43:22 44:9 44:11 44:12 44:14 44:20 44:21 44:22 45:7 45:8 45:12 45:18 45:24 46:9 46:13 46:14 46:23 47:12 47:14 47:25 48:5 48:14 48:18 48:19 48:23 49:9 49:12 49:19 49:21 49:23 50:8 50:25 51:9 51:12 51:18 52:1 52:13 54:22 55:18 56:4 56:19 58:3 58:5 58:7 58:9 58:11 58:15 58:19 59:5 60:5 60:7 60:8 61:5 61:14 61:17 61:21 62:3 62:6 62:9 62:15 62:17 62:20 62:22 63:4 63:14 63:22 64:2 64:4 64:7 66:17 231:16 | | **issuing**(2) 184:25 185:3 | | **jpmorgan**(3) 136:6 137:15 138:11 | | |
| | | **it's**(94) 11:11 12:10 15:12 18:24 24:17 33:25 36:3 39:2 42:23 44:5 45:8 45:17 47:24 48:18 49:15 55:10 56:13 57:19 58:21 70:10 73:11 74:17 84:21 85:19 86:8 87:18 93:5 98:3 140:14 144:17 147:4 148:1 149:13 153:18 155:9 155:21 155:22 156:9 157:15 161:24 161:25 162:23 163:1 164:6 165:17 167:21 170:16 171:9 177:6 177:22 179:1 180:11 182:22 185:13 185:21 187:3 187:6 197:19 201:21 202:11 204:14 204:20 207:22 207:23 208:3 208:4 210:19 210:21 210:24 212:9 212:12 212:23 215:19 217:18 217:20 217:20 217:25 220:4 221:19 221:20 222:1 222:4 222:5 222:5 222:8 222:24 222:25 223:11 223:22 223:22 226:5 226:6 227:9 228:2 | | **judge**(3) 1:19 1:20 1:3 | | |
| | | | | **judgment**(13) 16:2 38:23 90:14 90:16 91:6 175:10 175:10 175:11 178:11 178:19 178:19 190:15 195:21 196:19 | | |
| | | | | **judicata**(1) 18:16 | | |
| | | | | **judicial**(1) 18:15 | | |
| | | | | **jump**(1) 185:25 | | |
| | | | | **juncture**(6) 17:12 113:17 135:5 157:23 159:4 165:3 | | |
| | | | | **june**(5) 93:20 182:12 189:3 219:8 219:9 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**know**(146) 52:2 52:21 57:6 60:16 61:22 66:22 68:4 69:19 73:18 79:25 82:7 86:18 87:19 90:24 98:24 99:20 100:8 103:24 110:7 114:18 114:23 117:8 128:25 129:2 129:4 130:2 130:14 131:12 132:12 133:19 134:23 145:17 146:6 146:7 148:9 149:7 151:19 167:21 170:10 173:4 174:6 174:7 175:9 179:7 181:12 181:12 181:18 187:1 187:16 188:4 189:12 189:13 190:8 191:3 191:13 191:14 191:15 191:15 192:11 192:12 193:4 193:21 193:24 193:25 194:7 194:9 195:7 195:23 196:8 196:21 197:5 197:7 197:16 197:18 197:23 198:6 198:16 199:2 199:13 199:17 199:23 199:25 200:1 201:6 201:24 202:11 202:13 203:3 203:5 203:6 203:17 203:23 204:7 204:22 206:15 206:16 206:20 207:15 207:22 208:2 208:1 208:16 208:16 208:19 208:20 208:22 208:23 209:5 209:5 209:10 209:25 210:4 210:19 211:1 211:7 211:9 211:10 212:18 212:23 213:2 213:15 214:11 214:18 214:19 215:4 215:5 215:9 215:18 217:1 218:23 219:8 220:5 220:6 220:8 220:17 221:2 221:2 221:3 221:11 222:3 222:4 222:7 222:18 226:23 227:2 227:3

**knowledge**(9) 73:8 151:13 171:6 171:17 171:18 172:10 175:11 175:23 176:14

**knowledgeable**(1) 171:14
**known**(2) 40:20 119:17
**korpus**(1) 9:16
**krakauer**(6) 6:32 65:17 77:10 77:25 78:8 78:12

**labeled**(2) 47:24 48:18
**labor**(2) 105:1 105:2
**lack**(1) 174:20
**lacking**(1) 99:2
**laguardia**(2) 169:21 170:19
**laid**(1) 118:4
**lance**(1) 8:17
**landis**(3) 3:18 3:19 5:33
**language**(3) 17:11 17:11 17:14
**lanrty**(1) 1:27
**large**(7) 13:24 32:15 94:1 107:18 110:21 175:1 187:3

**largely**(1) 38:22
**larger**(2) 129:18 129:22
**largest**(2) 111:13 126:10
**larsen**(4) 104:18 105:4 105:6 132:21
**last**(30) 11:13 27:6 43:13 51:22 66:6 69:12 93:3 103:13 109:19 119:13 120:8 122:11 128:13 128:22 147:6 148:22 151:8 155:5 155:12 155:25 158:7 160:21 172:11 173:18 186:1 187:23 187:25 219:1 222:10 223:21

**lastly**(1) 225:24
**late**(3) 125:14 148:6 226:13

**later**(10) 52:25 98:9 98:10 98:16 165:7 173:23 180:11 182:22 225:10 226:21

**latter**(1) 130:4
**laughter**(9) 11:6 13:8 13:13 13:13 19:2 108:4 114:22 122:2 142:7

**lauren**(1) 3:12
**laurie**(1) 4:18
**law**(3) 2:19 9:14 74:20
**lay**(1) 116:21
**layton**(1) 2:12

**lazard**(73) 25:5 29:23 35:12 35:15 36:9 36:21 37:1 37:15 37:18 66:13 66:18 66:22 66:25 67:4 67:10 67:12 68:8 68:11 68:14 69:10 69:19 69:22 69:24 70:1 86:15 86:22 87:8 87:16 87:17 87:23 88:22 89:2 99:17 99:25 132:3 132:8 172:20 172:23 178:5 180:3 186:7 186:16 187:9 189:5 189:24 192:9 195:11 199:20 199:21 201:15 201:1 202:6 202:20 205:11 206:9 206:10 207:6 207:16 208:25 209:1 209:4 209:16 210:15 211:5 212:3 213:10 215:22 218:23 219:5 220:1 221:25 223:13 223:16

**lazard's**(22) 26:21 26:23 35:16 39:17 67:21 69:14 178:6 179:16 180:12 197:11 198:12 199:9 200:3 201:7 208:18 211:16 213:7 213:9 213:16 214:1 215:15 222:22

**lbo**(24) 27:7 27:11 27:15 33:13 33:16 33:20 35:1 39:7 62:11 62:19 62:20 76:10 91:13 92:11 94:8 94:24 95:4 95:18 96:5 96:19 97:4 97:12 106:24 151:14

**lbo-related**(1) 117:25

**lead**(8) 89:18 117:18 117:18 118:6 137:11 137:15 151:16 168:23

**leader**(1) 73:9
**leading**(5) 23:23 67:15 81:17 153:15
**leads**(2) 118:5 132:17
**learned**(1) 70:23
**least**(8) 14:9 67:10 68:1 74:4 90:2 119:3 119:10 137:16

**leave**(3) 19:19 117:5 184:20
**leaves**(2) 38:16 116:2
**lebouef**(1) 4:35
**led**(3) 89:21 171:8 224:9
**lee**(7) 136:2 136:5 136:6 136:8 136:24 137:18 152:11

**lee's**(1) 151:14
**leeway**(2) 227:10 227:12
**lee's**(2) 137:3 137:7
**left**(13) 20:22 30:7 30:24 48:7 49:22 103:1 131:8 160:16 161:5 182:2 190:17 202:7 218:8

**leg**(2) 114:6 114:12
**legacy**(1) 215:16
**legacy.com**(2) 36:22 37:18
**legal**(21) 22:10 25:6 31:25 32:5 32:7 32:16 35:19 39:20 39:21 45:22 50:6 50:11 58:8 61:21 63:16 66:17 67:1 73:25 77:8 85:10 95:8

**lemay**(1) 3:26
**lender**(2) 62:10 91:25
**lenders**(17) 4:27 5:37 20:20 43:7 43:14 43:14 47:5 47:6 47:9 48:7 52:8 76:10 92:7 96:12 97:4 101:20

**leonard**(1) 1:35
**less**(12) 30:16 101:9 117:15 119:10 123:4 128:12 184:18 189:12 191:16 197:4 221:1 222:18

**let**(21) 15:24 63:8 65:6 67:19 74:2 74:8 82:22 82:23 88:11 91:8 97:25 108:21 109:3 145:17 149:7 159:14 190:11 215:13 219:13 228:17 228:18

**let's**(45) 23:25 24:5 33:23 40:5 43:18 44:19 46:16 47:23 51:8 54:22 60:1 64:10 70:15 71:21 80:18 83:16 91:8 102:24 149:1 156:12 182:1 186:1 188:14 190:11 196:16 198:21 198:23 200:22 203:8 204:9 204:10 205:2 205:22 207:5 209:7 211:3 211:14 213:22 215:11 216:2 219:1 219:2 222:10 223:24 224:17

**letter**(1) 172:5

**letters**(1) 92:5

**let's**(3) 107:25 111:8 138:15
**level**(13) 2:22 20:25 30:16 34:24 62:16 63:9 76:7 78:14 78:16 80:10 170:24 171: 203:15

**leveled**(1) 133:15
**leveraged**(1) 94:16
**levy**(1) 7:9
**lexi**(1) 10:18
**lexington**(1) 2:8
**liabilities**(1) 24:23

**liang**(1) 8:21
**license**(2) 26:12 163:12
**licenses**(1) 163:13
**liebentritt**(3) 6:40 104:18 105:3
**liewant**(1) 9:41
**light**(1) 193:18
**lighting**(2) 21:7 21:11
**lights**(1) 85:13
**like**(41) 1:15 13:11 15:20 16:14 16:16 18:15 25:20 30:23 32:22 37:19 40:15 54:23 70:10 74:13 74:19 81:8 86:19 117: 119:11 131:10 131:18 163:16 169:4 174:5 177:13 179:23 181:21 184:1 184:20 186:3 188:16 195:18 196:16 200:24 201:6 205:5 216:6 219:3 223:23 225:5 227:8

**liked**(1) 139:8

**likely**(21) 11:24 13:1 29:24 50:21 96:23 102:12 144:3 144:11 145:5 145:10 147:24 148:2 148:13 152:20 153:5 153:9 153:12 155:12 155:19 159:8 221:8

**likewise**(2) 18:1 18:12
**limitation**(1) 175:9
**limited**(3) 41:21 194:9 210:20
**line**(24) 14:20 29:3 30:25 31:13 40:8 40:11 40:12 67:20 80:7 124:1 125:18 126:25 139:14 139:21 141:10 146:17 146:18 158:18 158:22 183:3 193:16 193:1 193:22 218:2

**lines**(10) 29:5 30:8 31:3 31:6 31:13 31:17 31:18 31:19 126:16 184:8

**linked**(1) 187:6
**liquidate**(1) 85:19
**liquidated**(4) 26:11 37:9 71:17 101:22
**liquidation**(121) 19:13 21:16 21:18 21:20 21:22 22:20 23:7 23:22 24:1 24:2 24:9 24:21 24:25 25:4 25:15 25:22 25:25 26:2 26:8 26:15 26:17 26:18 26:19 26:25 27:1 27:2 27:8 27:10 27:13 27:17 27:20 27:25 28:1 28:4 28:12 28:14 28:16 28:19 29:6 29:8 29:13 30:3 30:9 30:14 31:22 31:24 31:24 32:1 32:10 32:13 33:6 33:10 33:12 33:14 33:15 33:17 33:19 33:19 33:22 72: 80:18 80:19 80:23 81:1 81:3 81:4 81:7 81:11 81:16 81:20 81:24 82:3 82:6 82:23 83:2 83:16 83:17 83:18 83:24 84:5 85:11 85:12 85:16 85:23 86:8 86:13 86:16 86:22 88:13 90:11 90:11 90:23 91:8 91:11 92:10 94:20 94:25 95:18 95:22 96:2 96:14 96:14 96:1 97:5 99:20 99:22 100:14 101:6 102:3 102:4 102:5 102:5 102:9 102:12 231:19

**liquidations**(1) 22:3
**liquidity**(1) 121:11
**list**(4) 13:24 14:12 71:12 130:12
**listed**(7) 43:12 83:11 126:17 129:1 170:6 171:10 205:6

**listing**(1) 70:16
**lists**(1) 81:12
**literature**(2) 85:9 95:9
**litigation**(2) 33:13 117:24

**little**(28) 13:14 15:22 16:9 23:2 64:10 71:21 74:2 99:1 116:21 128:25 129:3 130:15 131:9 131:14 131:18 141:9 143:9 161:21 162:6 180:9 190:12 190:20 203:17 209:18 227:1 228:3 228:13 228:14

**litvack**(1) 7:45
**live**(5) 15:2 16:18 159:4 159:19 159:25
**llc**(2) 6:43 162:23
**llp**(16) 1:25 2:27 3:25 4:17 5:4 5:12 5:26 5:33 6:14 7:42 8:12 8:16 9:4 9:31 10:31 53:14

**loan**(2) 91:22 92:2
**lock**(2) 85:14 200:1
**logic**(7) 95:5 95:5 95:6 95:6 97:13 193:20 207:24

**long**(5) 63:6 104:12 155:10 172:4 172:14
**long-term**(4) 114:9 131:19 134:9 142:20
**longer**(1) 214:14
**look**(58) 18:23 31:9 41:4 42:25 46:16 55:17 56:19 56:23 59:18 60:23 61:20 69:4 74:9 85:8 91:10 91:19 101:6 121:3 122:11 123:5 123:20 125:13 125:24 127:11 130:5 131:21 131:22 134:17 136:9 141:9 143:10 146:13 147:6 149:22 153:8 155:4 156:12 156:13 156:18 168:2 170:20 177:23 185:12 186:1 187:2 187:14 187:17 190:3 190:8 192:21 192:23 196:24 198:2 200:19 206:7 227:6 227:8 228:10

**looked**(29) 13:25 61:22 76:13 87:23 89:14 100:4 130:16 133:20 143:7 143:8 146:2 147:24 148:3 149:2 149:23 152:20 154:7 169:24 189:6 195:22 200:13 208:15 213:12 214:6 214:18 214:20 215:6 219:5 223:5

**looking**(27) 41:22 48:4 50:3 60:3 61:17 105:16 105:17 105:18 105:19 106:3 106:4 109:7 110:5 112:11 131:8 131:10 131:12 133:2 133:12 147:21 147:21 149:12 154:22 157:9 173:14 202:13 202:14

**looks**(2) 131:10 184:1
**loom**(1) 21:6
**los**(12) 4:42 105:19 106:13 106:15 106:16 106:17 106:19 108:2 109:17 111:13 120:10 129:6

**losquadro**(1) 8:25
**loss**(1) 217:21
**losses**(5) 90:8 181:15 181:15 217:19 217:19
**lost**(1) 228:14
**lot**(11) 27:16 38:23 133:21 133:22 173:4 203:5 206:20 208:12 222:3 222:5 227:18
**louis**(1) 2:13
**low**(7) 30:18 32:13 129:13 130:14 198:7 210:1 210:14

**lower**(7) 73:5 98:18 123:1 145:9 192:22 210:3 220:19

**lowered**(1) 184:14
**lowering**(1) 98:24
**loyally**(1) 118:23
**lube**(1) 21:14
**ludwig**(1) 6:26
**lugano**(1) 1:41
**lunch**(1) 102:23
**lynch**(2) 4:17 10:31
**lynn**(1) 7:24
**ma**   (5) 163:2 171:17 176:10 176:12
**machinations**(1) 115:22
**macquarie**(2) 8:49 8:49
**macro**(1) 130:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **made**(39) 25:14 25:16 27:18 40:2 42:17 45:12 45:24 72:25 87:16 96:2 96:5 105:1 118:25 121:1 181:23 182:23 182:25 183:1 183:12 183:20 183:23 184:25 190:15 194:1 200:6 201:1 209:9 211:2 211:4 211:6 211:16 214:1 216:7 218:17 219:12 220:8 222:22 226:14 228:2 | | **market**(47) 1:11 3:21 4:21 5:6 30:5 74:6 75:22 128:9 129:1 161:24 180:14 180:18 180:22 180:25 186:14 186:17 187:4 187:2 188:10 188:20 188:22 188:24 194:21 195:2 196:12 198:9 198:20 199:2 199:3 199:22 201:4 203:2 204:3 204:16 204:17 205:23 206:1 206:3 208:21 211:18 212:25 214:2 215:25 223:1 223:2 224:5 | | **meant**(2) 17:8 126:22 | | **minor**(2) 37:19 99:21 |
| **madlyn**(1) 10:32 | | **marketing**(1) 37:17 | | **measure**(1) 35:2 | | **minority**(11) 87:20 87:24 107:23 112:19 112:21 112:23 112:25 113:3 113:7 204:20 214:24 |
| **maggie**(1) 135:24 | | **marketplacc**(1) 106:8 | | **mechanism**(1) 75:10 | | |
| **magnitude**(6) 126:7 205:18 217:4 218:16 219:25 222:17 | | **markets**(6) 111:13 129:5 129:17 129:18 129:22 162:4 | | **media**(8) 106:16 107:24 113:18 114:5 114:7 172:8 172:10 222:15 | | **minus**(6) 148:11 155:23 156:6 156:10 156:20 156:21 |
| | | **marrero**(1) 5:17 | | **medians**(2) 210:11 210:12 | | **minute**(6) 16:8 40:5 53:6 107:25 159:16 196:17 |
| **maintain**(4) 112:2 116:18 117:4 200:4 | | **marsal**(18) 8:45 8:45 10:21 20:2 20:5 20:6 20:23 53:21 60:22 61:6 61:13 70:3 70:6 73:9 73:18 80:7 81:18 88:24 | | **mediums**(1) 111:24 | | **minutes**(6) 11:15 11:16 15:6 15:16 16:8 17:23 |
| **maintained**(1) 86:1 | | | | **meet**(4) 106:7 110:10 151:22 151:24 | | |
| **maintaining**(1) 98:23 | | **marsal's**(1) 94:24 | | **meeting**(8) 52:19 136:2 137:25 137:25 138:2 138:5 206:10 206:13 | | **mip**(1) 119:14 |
| **major**(14) 107:22 108:1 109:8 109:11 111:9 111:11 111:15 112:18 112:21 112:2 122:19 123:24 126:8 129:17 | | **marshak**(1) 85:18 | | | | **miriam**(1) 137:19 |
| | | **marty**(1) 74:11 | | **meetings**(1) 138:8 | | **misread**(1) 129:13 |
| | | **marvin**(1) 7:24 | | **meets**(2) 82:4 95:23 | | **misscarter**(1) 137:24 |
| **make**(48) 17:6 18:13 26:25 27:8 27:10 27:16 30:11 38:5 39:18 40:15 41:25 42:19 46:5 52:12 62:10 73:23 74:1 77:13 79:18 96:1 96:6 96:12 97:25 104:19 106:7 110:18 110:23 112:11 112:12 113:25 116:1 130:3 133:25 133:25 142:15 178:12 182:18 183:20 189:5 202:9 207:6 211:9 212:24 218:12 218:12 218:21 220:8 229:5 | | **mary**(1) 133:24 | | **melamed**(1) 9:10 | | **misunderstanding**(1) 75:14 |
| | | **massive**(1) 210:24 | | **member**(2) 135:25 176:24 | | **mitigates**(1) 119:3 |
| | | **matches**(1) 41:13 | | **members**(2) 52:19 95:8 | | **mix**(1) 131:13 |
| | | **material**(7) 84:17 84:19 100:13 180:15 185:3 207:18 209:16 | | **mentioned**(10) 29:12 73:13 83:12 88:17 100:9 100:9 101:3 137:9 196:23 210:15 | | **mobile**(1) 111:21 |
| | | **materiality**(1) 80:14 | | | | **model**(11) 31:25 35:8 39:12 39:13 39:13 39:19 39:23 40:3 56:18 157:23 196:13 |
| | | **materialize**(1) 148:18 | | **merely**(3) 112:3 120:9 153:4 | | |
| **makes**(6) 39:18 45:20 113:4 113:8 180:9 228:20 | | **materially**(1) 154:9 | | **merge**(2) 47:10 52:3 | | **modeling**(5) 21:24 22:2 22:7 99:13 158:8 |
| | | **materials**(4) 122:5 187:25 207:16 209:19 | | **merged**(5) 45:9 45:10 46:11 46:11 55:21 | | **models**(1) 110:5 |
| | | **math**(2) 73:23 140:1 | | **mergers**(1) 164:1 | | **modification**(1) 144:14 |
| **making**(8) 30:8 46:11 47:4 85:20 104:15 110:22 110:23 134:16 | | **mathematica**(3) 33:9 99:12 189:15 | | **merging**(1) 134:19 | | **modified**(2) 178:1 212:4 |
| | | **mathematically**(3) 178:14 178:18 187:5 | | **merrill**(2) 4:17 10:31 | | **modifying**(1) 224:6 |
| **man**(1) 117:7 | | **matrix**(1) 184:22 | | **mester**(1) 4:38 | | **modulate**(1) 131:17 |
| **managed**(1) 45:22 | | **matter**(13) 12:12 12:16 15:12 23:14 27:24 39:4 42:20 80:16 95:12 179:13 179:20 210:18 230:4 | | **met**(1) 76:25 | | **moment**(10) 15:24 51:15 97:16 102:16 109:7 147:24 149:2 150:14 191:7 192:2 |
| **management**(34) 5:49 7:27 7:27 8:5 8:5 8:16 8:20 8:20 8:24 8:24 8:41 8:41 9:22 9:22 20:7 30:3 44:16 45:14 45:14 52:17 52:19 52:20 60:8 70:20 90:24 138:20 160:8 162:2 191:15 193:8 206:9 206:12 207:1 225:8 | | | | **metaphors**(1) 142:3 | | |
| | | **matters**(9) 11:11 21:13 21:13 22:6 22:19 23:18 164:19 164:20 179:7 | | **meter**(1) 123:5 | | **moments**(3) 54:24 130:2 139:9 |
| | | | | **method**(6) 25:24 199:9 201:24 202:6 207:11 207:11 | | **momentum**(1) 148:15 |
| | | **matthew**(5) 5:34 7:28 9:18 10:21 10:22 | | | | **monday**(1) 11:1 |
| | | **maturity**(1) 75:6 | | **methodologies**(12) 179:25 194:5 196:1 196:3 196:6 200:13 202:7 205:6 211:4 211:9 219:5 224:9 | | **monetized**(1) 29:6 |
| **management's**(3) 191:13 193:9 198:5 | | **may**(39) 23:10 53:10 87:16 91:9 97:15 97:17 102:16 102:19 103:17 103:19 104:2 109:1 117:14 118:11 135:7 150:13 159:1 160:24 161:1 171:13 171:14 171:17 174:10 174:12 179:9 181:7 191:3 208:18 220:6 220:9 220:18 220:21 220:22 221:10 222:7 224:22 226:8 227:13 228:6 | | | | **money**(1) 57:16 |
| **management-recommende**(1 122:4 | | | | **methodology**(17) 83:24 175:7 181:11 182:19 197:17 197:25 200:10 200:24 201:10 204:6 204:19 207:6 210:18 216:1 219:7 221:24 222:1 | | **monitor**(1) 28:11 |
| **manager**(1) 119:23 | | | | | | **monster**(3) 211:21 211:23 212:14 |
| **manages**(1) 162:2 | | | | **metric**(1) 213:3 | | **montenegro**(1) 4:19 |
| **managing**(3) 20:4 92:25 161:15 | | | | **metrics**(3) 187:16 209:20 209:21 | | **month**(12) 60:15 93:25 94:1 127:7 146:20 146:23 146:24 146:25 147:1 147:2 147:3 148:16 |
| **mandate**(1) 163:24 | | | | **michael**(1) 8:33 | | |
| **mandava**(4) 68:21 68:25 87:3 88:6 | | **mayer**(1) 3:46 | | **michelle**(2) 2:49 5:39 | | **monthly**(2) 23:20 114:23 |
| **manges**(1) 7:42 | | **mba**(1) 163:8 | | **microphone**(2) 103:12 160:19 | | **months**(10) 27:3 90:6 90:9 90:9 104:13 105:21 113:20 138:23 139:2 221:9 |
| **manpower**(5) 211:21 211:21 211:24 212:1 212:5 | | **mccarter**(1) 3:45 | | **middle**(10) 15:3 36:13 130:23 130:25 189:4 194:25 201:3 204:15 222:25 223:6 | | |
| | | **mccolm**(1) 7:13 | | | | **morale**(2) 119:6 119:8 |
| **many**(21) 12:7 12:11 21:1 34:24 104:14 112:9 114:7 114:25 119:2 119:2 128:10 138:13 162:17 164:14 170:6 171:7 173:9 176:5 177:1 189:7 195:25 | | **mccormack**(1) 3:27 | | **midpoint**(11) 50:20 56:8 180:12 180:13 183:10 183:25 184:12 186:7 186:8 201:8 218:18 | | **more**(45) 14:18 14:19 15:1 23:2 49:3 58:15 65:6 70:25 71:19 82:16 82:19 87:11 97:24 98:21 112:14 114:5 116:21 117:15 117:16 128:25 129:19 144:9 148:8 164:20 171:17 180:10 182:22 186:1 189:12 190:9 190:12 190:22 191:16 192:11 193:21 194:13 195:9 199:14 200:23 202:11 203:17 210:10 211:24 227:18 228:3 |
| | | **mccormick**(1) 9:30 | | | | |
| | | **mccutchen**(1) 9:4 | | | | |
| | | **mcdaniel**(1) 2:20 | | | | |
| **marc**(3) 3:31 5:13 5:19 | | **mcguire**(1) 5:34 | | **might**(11) 17:8 18:25 97:6 108:22 116:9 145:1 158:3 164:8 178:16 180:21 228:14 | | |
| **march**(7) 1:14 11:1 93:10 181:21 185:15 219:6 230:7 | | **mcneill**(1) 4:19 | | | | **morgan**(5) 2:4 7:42 8:12 208:25 208:25 |
| | | **meagher**(1) 7:18 | | **mike**(1) 8:33 | | **morning**(14) 11:3 11:14 13:3 17:16 19:6 19:24 19:25 53:14 53:16 53:17 115:5 159:23 226:1 226:4 |
| **margin**(2) 208:6 208:8 | | **mean**(25) 17:8 65:16 73:25 82:3 83:11 127:1 131:5 155:2 165:21 173:5 178:15 178:16 187:12 187:16 189:8 189:9 189:10 191:9 192:8 194:6 195:21 196:4 199:10 200:3 200:3 | | **million**(95) 26:20 26:24 36:1 36:14 37:8 38:4 38:9 38:10 38:14 38:15 38:17 40:9 40:13 40:14 40:17 40:20 40:21 40:23 41:3 41:6 41:13 41:14 41:23 42:1 42:4 43:2 43:14 43:14 43:15 43:16 47:5 48:11 49:7 52:4 52:9 70:17 72:7 72:9 79:8 83:3 87:25 93:10 93:21 93:24 98:13 98:17 98:18 101:2 101:13 122:22 122:25 123:1 124:2 124:3 124:8 139:14 139:17 140:23 182:16 183:10 183:25 184:15 185:8 186:1 190:23 190:23 190:25 195:6 196:11 196:24 198:14 201:8 202:25 203:6 204:14 204:15 206:2 207:4 213:11 213:14 215:17 216:22 216:24 216:25 218:5 218:19 218:2 220:4 220:9 221:3 221:15 223:3 223:20 224:4 | | |
| **marginal**(1) 178:25 | | | | | | **morphed**(1) 107:5 |
| **margins**(1) 109:25 | | | | | | **most**(30) 12:23 14:15 15:9 18:9 21:4 49:12 66:19 70:1 71:11 144:3 144:10 144:5 145:9 147:23 148:2 148:13 148:20 150:4 152:20 153:5 153:12 155:12 155:19 175:9 184:6 188:3 195:24 201:19 202:22 202:23 |
| **marino**(1) 2:49 | | | | | | |
| **mark**(2) 2:13 9:47 | | | | **mina**(2) 6:47 6:48 | | **motors**(1) 107:9 |
| | | **meaning**(4) 18:1 139:17 197:4 210:2 | | **mind**(5) 60:12 98:3 147:1 203:14 215:2 | | **move**(21) 24:14 28:20 34:5 44:1 80:18 108:14 110:16 110:24 113:23 129:16 159:10 189:10 189:13 198:21 203:5 203:8 203:10 209:7 211:14 226:18 227:11 |
| | | **meaningful**(4) 197:24 203:7 209:6 221:19 | | **mine**(1) 155:9 | | |
| | | **meaningfully**(2) 202:16 208:12 | | **minimal**(1) 101:4 | | |
| | | **means**(7) 65:13 126:23 180:14 180:18 196:5 210:11 210:12 | | **minimalist**(1) 109:23 | | **moved**(4) 20:18 20:22 189:9 199:25 |
| | | | | | | **movement**(3) 36:24 37:21 187:20 |
| | | | | | | **mover**(1) 134:22 |
| | | | | | | **moving**(1) 221:9 |

| Word | Page:Line |
| --- | --- |
| **much**(21) 12:7 25:17 82:16 89:21 97:19 97:24 109:16 113:23 129:2 130:13 134:17 173:2 187:8 187:12 190:22 196:12 197:2 197:14 202:2 223:19 229:18 | |
| **muchin**(1) 9:31 | |
| **mulhern**(1) 8:17 | |
| **multiple**(15) 22:10 175:19 175:21 183:17 196:21 196:22 197:2 199:19 206:16 209:2 210:1 210:3 214:25 214:25 218:13 | |
| **multiples**(4) 196:17 196:18 196:25 215:7 | |
| **municipal**(1) 170:1 | |
| **murphy**(1) 10:26 | |
| **must**(2) 63:5 63:15 | |
| **myers**(1) 6:4 | |
| **myrick**(1) 6:30 | |
| **myself**(2) 115:1 137:24 | |
| **name**(8) 103:13 104:5 145:23 160:20 165:14 168:22 168:25 169:1 | |
| **nasd**(1) 163:13 | |
| **national**(7) 37:17 105:10 105:17 126:9 127:19 129:20 129:20 | |
| **natural**(3) 34:21 39:10 65:15 | |
| **nature**(13) 14:19 15:1 15:11 23:2 34:25 59:23 60:18 73:14 95:21 99:18 101:17 102:2 137:22 | |
| **near**(4) 134:1 140:22 142:19 142:21 | |
| **necessarily**(6) 134:25 147:2 177:22 213:2 214:19 214:19 | |
| **necessary**(13) 11:19 22:4 28:6 51:6 52:25 54:10 110:25 111:1 175:15 177:20 177:25 178:3 228:8 | |
| **need**(25) 24:4 25:22 27:22 31:15 35:1 56:19 56:23 92:19 110:23 111:1 111:6 113:24 114:13 114:16 116:21 117:17 117:18 139:24 145:8 159:6 177:22 180:21 183:20 191:1 229:18 | |
| **needed**(3) 68:23 176:18 181:18 | |
| **needing**(1) 90:21 | |
| **needs**(3) 60:14 95:25 95:25 | |
| **negative**(6) 148:9 148:9 153:9 154:11 154:19 154:20 154:21 195:6 | |
| **negatively**(1) 220:25 | |
| **neil**(1) 8:25 | |
| **neils**(1) 104:18 | |
| **neither**(8) 17:24 18:2 18:11 18:22 88:4 88:12 100:13 100:14 | |
| **net**(7) 26:16 31:10 37:4 37:4 182:14 183:8 183:24 | |
| **netted**(2) 88:8 88:10 | |
| **network**(3) 29:14 86:18 112:24 183:11 185:5 203:12 203:20 | |
| **never**(10) 54:13 54:19 72:15 76:24 137:24 165:21 169:3 169:9 200:11 213:16 | |
| **nevertheless**(2) 111:18 126:14 | |
| **new**(22) 2:9 2:30 2:39 3:33 68:10 111:13 111:19 111:21 111:24 112:13 113:6 114:11 117:17 117:18 124:12 129:5 189:2 219:11 226:15 227:14 228:4 228:4 | |
| **newport**(1) 108:6 | |
| **news**(5) 10:13 13:6 107:12 108:6 115:6 | |
| **newsday**(1) 49:25 | |
| **newspaper**(4) 119:24 165:22 165:25 166:4 | |
| **newspapers**(1) 106:18 | |
| **newsprint**(2) 60:16 60:16 | |

| Word | Page:Line |
| --- | --- |
| **next**(27) 16:21 28:9 28:17 32:22 33:25 36:3 39:1 45:6 47:1 51:20 52:5 60:14 60:14 60:15 92:19 102:23 103:4 123:20 124:15 131:2 131:22 134:5 184:1 193:12 212:1 213:22 224:6 | |
| **nice**(1) 53:16 | |
| **nicholas**(1) 8:6 | |
| **nick**(1) 7:20 | |
| **night**(6) 14:20 225:21 226:11 227:9 227:17 227:20 | |
| **nine**(5) 29:5 138:23 139:1 155:3 162:3 | |
| **nine-some-odd**(1) 218:5 | |
| **nine-some-odd-million**(1) 218:9 | |
| **ninety**(1) 195:11 | |
| **ninety-six**(1) 201:8 | |
| **non**(6) 12:7 20:8 38:11 180:6 203:24 219:18 | |
| **non-broadcasting**(1) 85:24 | |
| **non-cash**(1) 182:6 | |
| **non-cash-operation**(1) 124:3 | |
| **non-consolidated**(1) 29:14 | |
| **non-control**(2) 100:10 181:12 | |
| **non-controlled**(5) 203:8 203:19 215:12 215:21 220:23 | |
| **non-debtor**(1) 28:5 | |
| **non-guaranto**(3) 45:3 45:5 55:4 | |
| **non-internal-tribun**(1) 130:16 | |
| **non-internet**(1) 85:25 | |
| **non-party**(1) 9:40 | |
| **non-pension**(1) 124:7 | |
| **non-profit**(1) 107:18 | |
| **non-witness**(1) 12:8 | |
| **noncash**(3) 216:18 217:20 217:25 | |
| **noncash-pension**(3) 216:13 216:21 217:17 | |
| **none**(6) 68:15 87:14 88:2 134:20 152:13 155:8 | |
| **nonetheless**(7) 72:15 73:8 73:10 80:2 80:6 94:3 225:22 | |
| **nor**(1) 69:24 | |
| **normal**(6) 115:24 115:25 116:6 117:12 117:12 120:2 | |
| **normalize**(1) 215:7 | |
| **normalized**(1) 218:3 | |
| **normally**(2) 106:5 117:10 | |
| **norman**(1) 1:36 | |
| **north**(7) 2:15 2:21 4:21 4:47 131:9 141:21 163:9 | |

| Word | Page:Line |
| --- | --- |
| **not**(197) 11:19 11:23 12:12 13:16 13:18 13:23 14:18 15:12 17:6 17:8 18:1 18:5 18:12 18:12 25:17 26:6 27:10 30:1 40:22 43:3 51:6 54:8 54:10 54:15 55:10 57:6 57:10 58:10 58:16 58:22 58:24 61:1 61:3 61:9 61:16 62:12 62:19 63:19 63:20 64:6 64:8 64:9 64:21 65:2 65:5 65:9 69:21 70:1 71:4 71:12 71:18 72:2 72:17 72:21 73:1 73:18 73:20 74:1 74:7 76:4 76:19 77:1 78:17 78:19 78:20 79:6 83:8 86:3 86:6 87:10 87:13 87:17 88:4 88:10 89:1 89:6 89:9 89:16 89:23 90:20 91:14 92:6 93:15 93:16 94:5 94:7 94:9 94:14 94:20 94:24 95:3 95:10 95:13 95:18 96:25 97:3 97:10 97:12 99:9 100:8 101:6 102:10 108:3 108:24 109:1 110:4 110:6 110:13 110:16 110:17 111:4 111:17 111:20 114:1 114:20 114:25 116:4 116:5 125:14 128:7 129:24 131:16 133:20 134:8 134:11 134:17 138:6 139:7 139:8 139:11 139:22 141:22 141:24 143:3 145:1 146:17 150:7 151:24 152:11 157:18 158:1 159:4 165:2 165:17 166:7 166:11 166:16 166:20 167:19 168:2 169:16 169:19 171:13 171:14 173:11 173:20 174:17 174:25 176:2 177:20 177:22 178:10 178:22 179:1 179:2 179:3 185:8 186:15 189:17 195:7 196:8 196:14 198:3 201:10 201:21 205:8 205:19 205:20 206:7 208:4 208:23 212:3 212:5 212:10 216:24 221:8 223:9 223:11 225:22 226:6 226:19 227:1 228:5 229:5 229:7 229:11 | |
| **note**(8) 38:25 41:16 93:8 103:21 187:15 189:4 204:22 206:19 | |
| **notebook**(1) 135:14 | |
| **noteholder**(22) 17:19 17:21 17:24 18:2 58:21 58:24 59:1 92:15 115:11 115:25 116:9 116:19 116:25 117:6 135:13 136:10 140:14 143:12 145:14 147:22 160:9 160:1 | |
| **noteholders**(17) 11:14 11:16 12:1 12:17 16:6 17:5 17:5 41:22 42:7 43:8 43:15 47:7 52:10 53:15 65:14 96:10 101:20 | |
| **notes**(6) 41:10 41:14 42:8 72:13 91:16 101:5 | |
| **nothing**(6) 68:8 102:13 135:4 158:10 210:8 224:15 | |
| **notice**(3) 125:15 225:23 227:18 | |
| **noticed**(2) 146:6 146:11 | |
| **notwithstanding**(4) 141:20 142:18 142:18 142:20 | |
| **november**(8) 23:15 119:14 138:17 146:19 146:20 147:3 148:6 148:23 | |
| **november/early**(1) 125:14 | |

| Word | Page:Line |
| --- | --- |
| **now**(151) 28:20 29:2 30:7 33:23 35:13 36:12 38:2 41:4 41:25 43:18 48:16 49:15 54:22 54:24 56:18 57:1 57:12 59:5 59:18 60:3 60:22 61:5 62:1 63:1 63:10 63:20 64:11 65:25 66:12 67:3 67:9 69:4 69:8 70:3 70:9 70:16 73:2 76:5 78:3 79:11 80:18 80:19 82:12 85:8 86:15 87:7 88:14 89:17 89:24 91:8 93:2 94:6 96:4 97:1 99:24 100:2 100:21 100:25 102:24 104:19 104:24 105:20 106:9 109:13 109:19 111:8 112:18 113:10 114:1 115:8 117:23 118:18 119:11 119:12 120:7 121:3 121:20 122:6 122:21 123:15 123:20 124:7 124:15 125:24 126:16 127:11 127:24 129:15 130:1 130:5 131:2 132:21 133:4 133:14 134:4 134:12 134:24 141:20 142:18 143:6 145:7 145:12 146:1 147:6 147:21 149:1 149:12 152:14 152:23 154:7 155:11 155:24 157:3 157:9 157:19 159:9 165:4 165:10 167:5 169:10 179:23 181:20 185:6 185:25 186:21 192:2 193:1 195:17 195:18 196:16 197:11 200:6 201:9 202:6 206:13 206:25 207:5 209:7 210:15 211:3 213:13 214:16 215:11 216:2 218:10 219:1 222:10 223:21 225:2 226:18 229:14 | |
| **npo**(1) 152:15 | |
| **npp**(8) 151:3 155:24 156:13 161:6 161:7 185:18 185:23 231:23 | |
| **number**(60) 13:24 22:10 23:18 23:20 29:25 30:5 30:18 41:6 42:6 42:18 42:20 42:22 45:1 49:11 50:12 50:15 52:19 55:6 55:10 55:11 57:1 69:1 69:1 69:6 72:2 72:5 73:21 73:22 74:3 74:18 76:13 82:24 83:3 83:10 90:17 91:5 106:17 107:17 122:21 140:14 144:2 153:13 155:25 168:7 184:2 185:8 187:3 195:1 195:20 203:7 204:16 204:19 204:20 216:16 219:22 220:7 221:15 221:20 222:8 222:8 | |
| **numbers**(36) 67:3 68:15 83:11 87:4 121:4 122:12 123:15 145:8 145:9 147:14 147:17 147:19 147:19 147:23 148:1 149:9 149:10 153:4 185:5 185:6 186:4 186:15 189:17 195:22 196:4 196:22 206:7 206:10 206:11 206:13 206:23 207:1 219:11 221:18 228:1 228:4 | |
| **numeric**(1) 42:25 | |
| **numerous**(4) 25:2 44:15 44:17 164:16 | |
| **oakland**(3) 85:2 85:4 108:3 | |
| **oaktree**(3) 8:19 8:20 138:10 | |
| **object**(2) 165:3 174:8 | |
| **objected**(1) 42:7 | |
| **objecting**(1) 103:25 | |
| **objection**(23) 22:22 22:23 23:9 24:15 24:16 24:17 34:7 34:8 34:10 44:3 44:4 44:5 116:12 118:3 153:15 153:20 155:16 165:1 174:1 179:6 185:19 185:20 185:21 | |
| **obligations**(9) 56:19 56:20 56:20 60:25 61:14 61:18 62:15 63:4 63:10 | |
| **observations**(1) 38:19 | |
| **obtained**(3) 44:10 44:12 44:14 | |
| **obvious**(3) 114:16 226:23 228:12 | |
| **obviously**(3) 15:17 16:14 18:21 192:22 197:11 201:24 207:24 208:9 220:18 221:8 223:19 | |
| **occasion**(1) 133:5 | |
| **occasions**(1) 138:13 | |
| **occur**(2) 17:9 72:24 | |
| **occurred**(7) 37:14 46:9 72:14 201:18 212:24 213:4 213:5 | |
| **occurring**(1) 30:4 | |
| **october**(12) 68:18 119:21 120:8 120:11 146:19 187:8 187:9 187:11 187:15 219:6 219:10 220:14 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **october/november**(2) 139:10 144:16 | | **one**(101) 1:30 2:14 2:38 12:15 15:23 17:3 | | **other**(115) 15:1 15:2 17:8 17:19 18:16 | | **overrule**(2) 153:19 179:5 |
| **off**(21) 26:3 33:19 35:2 37:5 49:24 71:10 | | 38:24 39:20 42:18 45:15 45:15 49:5 57:7 | | 20:8 28:1 31:7 32:19 36:10 36:22 37:19 | | **overruled**(1) 118:8 |
| 85:13 90:24 93:23 107:11 119:8 126:23 | | 57:17 58:14 59:6 61:9 64:4 65:6 71:3 | | 40:8 40:15 40:21 42:2 42:9 42:11 42:14 | | **oversee**(1) 106:15 |
| 129:7 129:19 139:8 148:14 151:22 159:20 | | 73:19 74:20 74:21 77:9 80:19 85:14 86:1 | | 42:17 43:2 43:15 45:4 45:4 47:6 48:13 | | **overseeing**(1) 105:14 |
| 168:13 210:8 218:19 | | 88:12 98:3 100:13 100:15 108:13 109:1 | | 48:13 49:4 49:5 49:8 50:16 51:15 52:10 | | **overtake**(1) 113:25 |
| | | 109:20 111:2 111:12 114:16 116:16 120:9 | | 56:23 57:18 59:18 61:3 61:9 61:23 61:25 | | **overview**(5) 107:20 120:15 180:1 188:17 |
| **offer**(7) 53:1 63:20 82:1 114:11 159:8 | | 124:22 125:19 126:7 127:17 127:19 128:1 | | 64:5 68:7 73:5 76:6 78:13 79:8 80:9 | | 200:8 |
| 164:24 185:17 | | 129:3 130:12 130:15 133:4 133:24 135:14 | | 83:12 84:6 88:15 89:21 91:12 91:17 91:23 | | |
| | | 142:3 148:12 148:12 149:17 149:19 150:1 | | 92:6 92:17 95:13 96:10 97:21 99:22 99:25 | | **owing**(2) 63:4 63:14 |
| **offered**(2) 22:25 54:20 | | 158:13 170:5 170:18 177:13 182:25 | | 101:14 101:16 102:6 104:14 104:16 105:8 | | |
| **offering**(3) 64:6 73:18 82:7 | | 183:13 186:1 186:1 195:1 196:4 196:8 | | 107:23 107:24 109:21 110:3 110:5 110:16 | | **own**(13) 81:23 95:11 98:14 133:20 180:6 |
| **offers**(1) 116:1 | | 197:4 200:14 200:14 200:21 202:16 204:4 | | 111:14 113:5 117:21 130:16 138:2 138:7 | | 189:22 208:2 210:5 210:11 212:18 212:20 |
| **office**(1) 3:4 | | 205:12 205:15 205:21 206:8 206:9 207:1 | | 147:24 209:1 209:11 209:12 209:13 210:11 | | 212:22 212:23 |
| **officer**(5) 21:11 21:12 105:4 105:7 133:2 | | 210:16 210:16 212:8 212:20 214:7 214:13 | | 210:16 210:16 212:8 212:20 214:7 214:13 | | |
| **official**(3) 3:17 5:11 | | 225:10 226:14 229:4 | | 214:14 214:22 215:9 222:20 222:25 224:2 | | **owned**(9) 36:20 37:16 37:17 87:20 98:7 |
| **offset**(2) 100:12 110:3 | | | | 225:10 226:14 229:4 | | 107:8 107:9 180:5 212:18 |
| **offsets**(2) 47:8 134:1 | | | | | | |
| **offsetting**(2) 49:8 52:11 | | | | | | **ownership**(4) 113:3 116:24 117:3 117:6 |
| **offshoots**(1) 113:6 | | | | **others**(6) 66:4 104:15 114:7 119:1 119:9 | | **owns**(1) 212:19 |
| **often**(1) 110:13 | | **one-page**(1) 122:16 | | 135:15 | | **o'melveny**(1) 6:4 |
| **oftentimes**(2) 106:5 112:12 | | **ones**(6) 14:25 15:5 15:16 71:18 71:19 | | | | **p.a**(1) 1:35 |
| **okay**(264) 11:20 15:18 16:18 16:22 19:4 | | 110:14 | | **otherwise**(4) 39:7 67:4 110:15 211:13 | | **p.m**(5) 103:2 103:22 224:20 225:14 229:23 |
| 19:24 24:7 34:2 49:18 54:19 54:22 54:24 | | | | **ought**(1) 226:4 | | **pace**(1) 94:2 |
| 55:8 55:13 55:17 55:23 56:18 57:7 57:12 | | | | | | **package**(5) 216:11 216:12 216:15 216:17 |
| 57:16 57:21 58:21 59:1 59:5 63:12 63:18 | | **ongoing**(2) 27:18 100:23 | | **our**(83) 11:13 12:12 14:5 14:16 16:2 | | 217:3 |
| 64:6 64:10 65:7 65:25 66:24 67:3 67:9 | | **online**(5) 110:2 112:4 126:9 126:13 133:25 | | 16:21 16:21 35:7 68:11 102:23 103:4 | | |
| 69:4 69:7 69:8 69:9 69:18 70:9 70:14 | | 62:19 73:22 95:14 110:4 114:17 115:1 | | 103:5 105:7 110:17 113:3 113:21 113:22 | | **page**(120) 24:11 28:10 28:17 28:20 28:21 |
| 71:21 72:1 72:11 73:6 74:2 74:23 75:1 | | 121:14 126:13 133:20 137:9 151:24 152:8 | | 115:3 116:6 124:10 128:9 128:10 128:23 | | 29:1 30:24 31:9 32:12 32:23 34:1 36:12 |
| 75:2 75:9 76:3 76:24 77:25 78:3 78:22 | | 152:8 163:19 170:6 173:14 182:6 203:2 | | 128:25 129:5 129:22 130:17 130:17 130:2 | | 36:13 43:23 67:19 69:4 69:9 70:16 74:14 |
| 78:25 79:16 79:24 80:15 80:18 81:2 81:10 | | 207:20 209:15 210:8 213:14 214:13 216:2 | | 131:11 131:12 133:20 159:3 159:19 | | 74:24 81:7 81:12 82:22 83:18 83:24 92:19 |
| 82:1 82:7 82:11 83:16 83:20 83:23 84:1 | | 217:8 227:18 | | 159:20 159:25 160:11 162:14 163:19 | | 121:3 121:8 121:20 122:11 122:15 123:20 |
| 84:15 84:20 84:23 86:15 87:1 87:7 87:14 | | | | 163:24 170:1 170:11 170:12 171:4 171:16 | | 123:20 124:15 125:20 124:17 128:13 |
| 88:14 88:20 89:2 89:7 89:10 89:17 89:24 | | **onward**(1) 192:19 | | 172:5 172:6 172:15 175:10 175:11 176:10 | | 128:17 129:15 130:5 130:10 131:2 140:16 |
| 91:8 92:1 92:21 93:2 93:7 94:3 94:6 | | **open**(6) 96:20 120:22 | | 176:14 184:25 185:7 185:9 187:1 187:24 | | 143:24 146:13 146:14 147:6 147:21 149:5 |
| 94:10 95:7 95:14 96:4 97:15 107:19 111:8 | | **operate**(1) 106:6 | | 189:22 191:4 191:5 193:24 194:23 202:21 | | 149:7 149:22 149:23 152:14 152:17 155:21 |
| 116:22 124:15 128:15 128:16 129:15 | | **operates**(1) 54:9 | | 205:11 206:20 206:25 207:1 207:3 208:24 | | 155:25 155:25 156:14 157:11 161:8 |
| 130:19 131:17 131:18 136:1 136:4 136:7 | | **operating**(29) 23:20 45:17 45:25 46:7 60:9 | | 209:2 209:6 210:5 210:11 212:8 216:9 | | 161:18 163:14 163:18 168:2 169:10 170:4 |
| 136:9 136:13 136:18 136:20 136:23 137:3 | | 115:24 119:12 119:15 119:18 119:20 | | 216:10 217:6 218:1 219:9 219:9 225:15 | | 170:20 171:10 179:24 180:8 180:10 181:18 |
| 137:6 137:10 137:14 137:17 137:20 137:21 | | 120:19 121:5 121:22 122:2 122:6 122:19 | | 225:19 227:12 | | 181:22 184:20 184:22 186:2 186:2 186:3 |
| 138:2 138:5 138:7 138:7 138:10 138:13 | | 122:21 122:23 123:4 125:4 125:7 139:14 | | | | 186:24 188:5 188:15 189:18 190:16 191:7 |
| 138:15 138:15 138:20 138:23 139:6 139:1 | | 139:20 140:19 140:22 146:3 147:8 156:2 | | **ours**(1) 117:8 | | 191:22 192:3 192:5 192:7 193:12 193:14 |
| 139:13 139:20 140:3 140:11 140:18 | | 220:20 | | **ourselves**(1) 201:22 | | 194:15 194:18 194:19 194:20 196:16 |
| 140:21 140:25 141:7 141:9 141:24 142:2 | | **operation**(5) 50:2 60:7 109:23 119:22 | | **out**(72) 14:8 17:10 20:24 24:24 25:22 32:1 | | 196:18 198:22 199:16 199:18 200:22 201:3 |
| 142:6 142:11 142:15 142:18 143:2 143:15 | | 119:22 | | 32:8 36:7 43:6 43:8 46:2 50:9 53:20 58:7 | | 203:9 204:9 204:15 205:4 205:25 211:14 |
| 143:18 143:21 143:24 144:2 144:6 144:17 | | **operations**(3) 26:3 105:6 106:15 | | 72:23 74:8 74:9 74:23 88:8 94:7 103:25 | | 213:22 214:18 215:11 215:12 216:4 218:14 |
| 144:20 145:3 145:7 145:12 145:19 145:23 | | **operative**(1) 50:10 | | 106:3 109:16 109:17 110:20 110:24 113:3 | | 219:2 219:23 221:16 222:12 222:21 222:25 |
| 146:1 146:12 146:13 146:13 146:16 146:2 | | **opine**(2) 174:21 176:2 | | 113:11 113:15 114:14 115:5 115:22 128:1 | | 223:22 226:23 |
| 147:6 147:11 147:14 147:17 147:21 | | **opined**(1) 174:23 | | 128:11 129:4 133:25 134:12 134:24 142:8 | | |
| 148:19 148:22 149:1 149:9 149:12 149:17 | | **opining**(1) 94:13 | | 142:13 144:15 145:17 157:20 158:6 158:6 | | **pages**(3) 28:11 91:10 121:13 |
| 149:22 150:9 152:14 158:21 158:24 161:1 | | **opinion**(8) 73:18 81:3 82:1 82:3 82:5 82:8 | | 158:8 164:18 164:20 165:18 166:16 174:17 | | **paid**(14) 24:24 25:22 27:22 31:15 32:5 |
| 162:6 162:17 162:19 163:5 163:10 163:14 | | 166:8 174:20 | | 179:7 189:7 190:13 191:12 192:20 196:9 | | 63:4 63:5 63:13 63:15 72:15 72:23 220:22 |
| 164:13 164:17 164:22 165:11 167:14 168: | | | | 196:11 197:23 199:9 204:14 208:11 217:1 | | |
| 174:20 174:25 175:13 175:25 176:5 | | **opinions**(7) 63:20 164:1 164:10 164:11 | | 218:1 218:7 218:11 225:21 225:24 226:1 | | |
| 176:19 177:1 177:8 177:9 179:10 179:13 | | 168:6 168:14 173:17 | | 226:17 228:18 228:22 | | |
| 179:23 181:20 182:18 183:1 183:24 184: | | | | | | **paper**(2) 108:5 199:16 |
| 184:11 184:20 185:12 188:4 188:12 | | **opportunities**(1) 113:5 | | **out-years**(2) 132:13 132:14 | | **papers**(2) 226:15 227:15 |
| 188:14 189:18 190:11 191:7 192:2 193:7 | | **opposed**(10) 39:10 75:21 101:25 112:3 | | **outcome**(2) 88:12 179:20 | | **paperwork**(1) 46:5 |
| 193:12 194:2 194:15 195:17 196:16 196:25 | | 112:13 132:10 148:9 148:12 195:19 206:3 | | **outgrowth**(1) 58:2 | | **paragraph**(1) 225:8 |
| 197:11 198:1 198:8 198:19 198:21 200:6 | | **opposite**(3) 31:6 62:5 202:21 | | **outlier**(1) 85:20 | | **paragraph**(1) 201:4 |
| 200:22 201:9 202:6 203:8 204:9 205:2 | | **optimism**(1) 125:20 | | **outlined**(1) 50:13 | | **paraphrase**(1) 191:16 |
| 205:22 206:18 207:5 211:3 211:14 213:20 | | **optimistic**(1) 148:7 | | **outperforming**(1) 206:22 | | **pardon**(1) 201:4 |
| 213:22 215:11 215:21 216:2 216:5 218:14 | | **orange**(3) 180:3 181:1 186:2 186:13 | | **outperforms**(1) 208:9 | | **parent**(103) 19:13 23:6 28:8 28:16 28:23 |
| 219:1 219:23 220:11 222:10 222:21 223:2 | | 186:19 186:21 224:4 | | **output**(5) 39:24 39:25 39:25 51:10 191:3 | | 31:8 32:20 33:23 34:17 34:24 35:6 36:1 |
| 224:12 224:15 228:24 228:25 229:17 | | | | **outputs**(1) 197:18 | | 36:6 36:8 36:18 36:20 36:23 36:24 37:24 |
| | | **order**(20) 13:9 14:17 27:12 28:6 35:2 35: | | **outside**(2) 157:13 187:1 | | 37:25 38:8 38:13 38:15 38:17 38:18 38:20 |
| | | 35:24 52:10 67:24 76:21 95:22 95:24 97: | | **outstanding**(1) 92:5 | | 38:21 38:21 40:2 40:6 40:8 41:5 42:9 |
| **old**(1) 121:15 | | 111:5 126:7 139:17 139:21 217:4 222:17 | | **over**(43) 11:25 12:16 12:19 22:6 52:5 68: | | 42:12 42:14 43:2 43:5 43:16 45:2 45:4 |
| **olinsky**(1) 9:5 | | 225:8 | | 84:9 88:5 98:25 100:25 101:2 101:10 | | 45:9 45:10 45:18 45:19 46:1 46:2 46:10 |
| **once**(5) 12:20 30:14 142:13 175:3 225:3 | | **organically**(2) 112:14 134:18 | | 105:16 105:17 105:18 105:19 115:5 118:2 | | 46:11 46:12 47:7 47:10 47:23 48:7 48:13 |
| | | **organization**(7) 105:9 105:10 105:10 | | 119:1 121:8 127:23 129:9 134:5 141:7 | | 48:7 48:19 49:1 49:1 49:13 51:1 51:14 |
| | | 105:17 119:25 120:3 132:19 | | 152:23 154:4 155:6 155:10 158:18 158:22 | | 52:3 52:10 55:3 55:9 55:11 55:15 55:21 |
| | | | | 164:14 164:21 173:10 175:14 175:15 176: | | 56:20 56:21 59:20 60:5 60:11 60:11 64:3 |
| | | **organizations**(2) 20:9 120:14 | | 190:20 193:16 196:5 211:25 221:9 223:3 | | 64:25 66:15 66:19 76:7 77:6 78:14 78:16 |
| | | **original**(3) 181:24 183:9 184:12 | | 227:17 | | 79:8 79:14 80:9 91:17 92:17 98:13 98:22 |
| | | **origination**(2) 161:15 162:13 | | | | 99:11 101:14 101:16 206:21 207:21 207:22 |
| | | **orlando**(3) 85:4 85:5 108:3 | | **over-viewing**(1) 120:14 | | 231:20 |
| | | | | **overall**(12) 109:8 184:11 198:8 198:11 | | |
| | | | | 198:13 202:18 204:21 210:12 213:6 215:2 | | **parent's**(1) 46:3 |
| | | | | 215:23 223:15 | | **parenthetical**(1) 92:1 |
| | | | | | | **park**(3) 2:38 5:12 9:14 |
| | | | | | | **parke**(1) 3:25 |

| Word | Page:Line |
|---|---|
| **part**(29) 14:19  31:13  32:15  37:24  40:22 | |
| 50:22  51:12  52:24  58:4  62:9  67:10  79:12 | |
| 90:14  90:16  100:4  105:6  110:21  118:17 | |
| 125:24  130:4  141:21  166:25  175:23  183:18 | |
| 184:6  201:19  206:20  209:6  216:20 | |
| | |
| **partially**(1) 100:12 | |
| **participate**(1) 113:6 | |
| **participated**(3) 120:10  170:24  171:1 | |
| **particular**(13) 29:7  60:17  74:13  95:5 | |
| 126:5  127:14  171:15  171:20  176:1  176:6 | |
| 186:2  191:11  203:12 | |
| | |
| **particularly**(6) 27:21  34:22  44:16  164:4 | |
| 164:10  178:9 | |
| | |
| **parties**(28) 14:5  16:12  18:6  18:14  18:24 | |
| 32:6  32:8  34:19  35:25  36:11  39:6  39:22 | |
| 40:22  41:1  42:4  42:6  47:6  48:13  50:15 | |
| 51:2  58:9  60:3  96:10  101:17  116:4  159:7 | |
| 162:3  225:9 | |
| | |
| **partly**(2) 124:13  132:12 | |
| **partner**(3) 8:16  112:15  117:8 | |
| **partnering**(1) 134:20 | |
| **partners**(10) 8:32  8:32  9:35  10:5  110:14 | |
| 110:16  113:2  117:13  134:19  212:21 | |
| | |
| **partnerships**(3) 112:13  112:15  116:5 | |
| **parts**(2) 180:3  219:17 | |
| **party**(6) 9:35  38:17  78:16  91:17  157:15 | |
| 209:3 | |
| | |
| **pass**(1) 19:19 | |
| **passage**(1) 93:5 | |
| **passing**(1) 137:9 | |
| **past**(4) 120:19  134:18  158:6  222:24 | |
| **path**(2) 115:23  117:10 | |
| **pattern**(1) 56:7 | |
| **paul**(2) 2:28  7:4 | |
| **pause**(1) 150:16 | |
| **pay**(3) 38:17  60:15  60:15 | |
| **payable**(9) 44:21  45:2  45:19  51:14  55:4 | |
| 55:8  55:24  56:1  60:11 | |
| | |
| **payables**(11) 46:23  47:12  47:14  47:19 | |
| 47:20  47:25  48:6  48:19  49:1  49:4  49:5 | |
| | |
| **paying**(3) 37:5  197:2  197:3 | |
| **payment**(3) 46:5  72:24  72:25 | |
| **payouts**(1) 31:7 | |
| **payroll**(1) 60:15 | |
| **peer**(3) 192:8  192:8  192:25 | |
| **peers**(3) 128:10  191:19  193:3 | |
| **peg**(1) 10:14 | |
| **pennock**(1) 7:11 | |
| **pennsylvania**(1) 1:45 | |
| **pension**(13) 25:12  32:15  124:12  181:14 | |
| 181:16  182:6  216:3  216:8  216:19  217:7 | |
| 217:9  217:19  218:1 | |
| | |
| **people**(8) 34:20  90:25  111:19  114:13 | |
| 176:5  176:7  176:12  222:6 | |
| | |
| **per**(6) 44:24  45:13  46:23  48:8  112:16 | |
| **perceive**(1) 119:5 | |
| **percent**(75) 29:21  30:15  32:21  50:20 | |
| 50:21  50:22  57:22  57:25  58:17  58:17 | |
| 88:17  89:4  90:2  90:3  90:10  90:19  91:5 | |
| 116:2  123:12  123:13  123:14  125:17  125:1 | |
| 125:19  129:3  129:3  129:4  129:7  129:7 | |
| 129:14  129:14  130:13  130:15  130:24  131:1 | |
| 131:9  131:13  139:21  141:2  141:5  141:17 | |
| 141:17  153:9  155:3  155:23  156:6  156:20 | |
| 156:21  157:11  181:8  181:8  184:18  184:19 | |
| 187:16  190:24  193:18  193:20  195:12 | |
| 195:13  195:14  195:15  195:19  195:21 | |
| 197:12  197:13  200:14  200:15  202:8  202:8 | |
| 208:7  208:9  212:20  212:20  222:18  223:13 | |

| Word | Page:Line |
|---|---|
| **percentage**(13) 47:16  126:24  152:24  153:6 | |
| 153:25  156:4  156:8  184:16  196:21  197:24 | |
| 203:4  208:11  212:19 | |
| | |
| **percentages**(2) 152:25  153:2 | |
| **perform**(10) 28:3  54:11  85:23  98:15  98:15 | |
| 99:14  178:18  198:6  212:3  212:3 | |
| | |
| **performance**(26) 103:23  108:8  114:9 | |
| 114:15  121:6  122:17  126:19  127:2  127:4 | |
| 127:24  128:8  129:11  133:12  133:20  138:1 | |
| 138:24  139:1  141:4  142:10  142:11  149:18 | |
| 150:1  157:21  190:13  206:5  208:2 | |
| | |
| **performed**(10) 22:15  67:14  163:1  164:14 | |
| 175:14  189:21  191:19  191:20  201:16 | |
| 201:22 | |
| | |
| **performing**(2) 24:25  105:24 | |
| **performs**(2) 208:14  208:17 | |
| **perhaps**(17) 63:19  75:13  111:17  113:5 | |
| 116:1  117:14  125:20  133:23  134:18  149:1 | |
| 167:8  168:1  170:7  171:16  193:24  194:9 | |
| 206:3 | |
| | |
| **period**(9) 30:6  72:23  84:10  90:7  91:3 | |
| 157:16  193:17  193:23  197:7 | |
| | |
| **pernick**(1) 1:36 | |
| **person**(4) 106:5  136:24  151:9  197:23 | |
| **personal**(1) 151:13 | |
| **personally**(3) 173:7  173:9  216:2 | |
| **personnel**(3) 25:1  175:21  176:24 | |
| **perspective**(5) 115:18  116:8  118:18  148:4 | |
| 164:6 | |
| | |
| **pertaining**(1) 18:4 | |
| **peter**(3) 8:13  9:23  10:6 | |
| **petition**(17) 37:20  37:22  41:11  44:11 | |
| 44:13  44:22  44:25  71:8  71:12  71:14  71:15 | |
| 71:18  75:16  75:18  75:19  92:3  92:5 | |
| | |
| **phase**(1) 103:5 | |
| **phelps**(1) 9:40 | |
| **philip**(1) 2:37 | |
| **philosophically**(1) 200:18 | |
| **philosophy**(4) 199:14  199:15  202:11  211:8 | |
| **phone**(4) 87:2  136:3  151:25  152:1 | |
| **phones**(53) 41:5  41:8  41:14  41:19  41:24 | |
| 42:1  42:7  42:8  42:10  71:22  71:24  72:12 | |
| 72:12  72:21  72:21  73:2  73:3  73:5  73:14 | |
| 74:4  75:4  75:7  75:11  75:15  75:18  75:21 | |
| 76:6  76:9  76:15  76:19  77:17  77:21  78:4 | |
| 78:13  78:17  78:19  78:22  79:3  79:12  79:16 | |
| 80:3  80:8  83:3  91:12  91:15  91:20  92:11 | |
| 100:18  100:19  100:24  101:1  101:8  101:11 | |
| | |
| **phrase**(2) 79:13  79:22 | |
| **pick**(1) 159:21 | |
| **picked**(4) 178:2  178:5  187:9  187:21 | |
| **pickering**(1) 5:37 | |
| **picking**(2) 177:20  177:25 | |
| **piece**(4) 107:11  183:16  183:22  208:4 | |
| **piecemeal**(2) 26:4  84:9 | |
| **pieces**(6) 14:22  14:23  16:6  17:2  17:3  180:2 | |
| **piper**(1) 2:48 | |
| **pitch**(1) 164:8 | |
| **place**(10) 15:10  90:22  95:7  99:15  103:9 | |
| 114:21  136:3  136:7  160:16  199:24 | |
| | |
| **placed**(2) 49:23  185:13 | |
| **placement**(1) 162:14 | |
| **placing**(1) 30:4 | |

| Word | Page:Line |
|---|---|
| **plan**(115) 11:12  11:15  12:21  17:15  17:19 | |
| 17:21  17:21  17:24  17:24  18:2  18:2  18:11 | |
| 27:12  27:15  33:5  33:10  33:20  33:21  36:2 | |
| 39:8  39:9  42:20  52:24  57:1  57:8  57:9 | |
| 57:12  58:7  58:10  58:22  58:24  62:10  67:15 | |
| 67:13  67:16  67:24  68:2  68:7  68:9  68:10 | |
| 68:12  68:19  69:11  79:21  82:4  95:23  95:24 | |
| 96:3  96:8  96:14  96:15  115:11  115:11 | |
| 115:18  115:19  115:21  116:1  116:9  116:19 | |
| 116:25  117:6  117:10  117:23  118:5  118:7 | |
| 120:4  120:12  121:22  122:4  122:6  122:16 | |
| 122:25  123:10  123:13  123:16  123:17  124:8 | |
| 124:17  124:21  124:22  124:22  125:4  130:1 | |
| 130:1  130:17  130:24  131:11  131:12  132:5 | |
| 132:7  134:3  134:23  135:13  136:10  138:21 | |
| 139:10  139:14  139:17  139:20  140:25  141: | |
| 141:18  142:19  142:20  142:21  143:25 | |
| 146:3  147:8  147:14  156:2  156:8  156:9 | |
| 156:12  157:4  160:9  160:11 | |
| | |
| **planned**(2) 12:20  58:6 | |
| **plans**(8) 18:22  56:9  58:14  80:25  115:8 | |
| 115:14  119:12  133:3 | |
| | |
| **plant**(3) 29:11  109:20  111:2 | |
| **plants**(2) 109:18  109:19 | |
| **plan'**(1) 124:17 | |
| **play**(5) 12:20  16:2  16:3  192:10  192:11 | |
| **played**(3) 12:23  15:13  151:19 | |
| **plays**(2) 134:17  199:10 | |
| **plaza**(3) 2:22  3:32  4:20 | |
| **please**(44) 11:2  20:16  23:12  53:8  103:8 | |
| 103:11  103:11  103:12  135:24  140:16 | |
| 145:19  160:15  160:18  160:20  161:17 | |
| 161:22  162:9  163:6  163:14  163:17  179:25 | |
| 181:22  184:4  184:23  185:12  186:23  188:1 | |
| 188:16  190:14  192:5  193:12  193:13  194:2 | |
| 194:15  198:22  200:8  209:8  211:5  211:15 | |
| 213:25  218:14  219:23  222:21  223:24 | |
| | |
| **plethora**(1) 111:19 | |
| **plus**(3) 72:20  92:4  92:5 | |
| **point**(32) 9:46  9:46  17:5  47:13  68:4  71:16 | |
| 95:15  95:17  96:24  103:25  107:20  121:17 | |
| 129:7  138:23  144:8  148:17  152:3  164:23 | |
| 173:8  183:14  185:10  185:17  191:6  191:8 | |
| 194:8  194:10  207:18  209:13  209:15  215:4 | |
| 225:24  226:14 | |
| | |
| **points**(8) 44:13  67:23  68:21  97:25  195:25 | |
| 210:20  212:15  227:14 | |
| | |
| **policy**(1) 30:22 | |
| **political**(2) 131:16  148:14 | |
| **polk**(3) 2:4  8:12  225:25 | |
| **pools**(1) 210:6 | |
| **population**(1) 52:6 | |
| **portfolio**(3) 180:16  208:20  215:19 | |
| **portion**(12) 39:9  42:13  42:16  60:6  74:5 | |
| 79:10  198:17  206:4  206:5  206:17  210:25 | |
| 224:2 | |
| | |
| **portrays**(2) 76:16  79:4 | |
| **portray**(1) 126:5 | |
| **position**(7) 20:3  26:13  104:10  104:12 | |
| 106:14  159:5  227:12 | |
| | |
| **positive**(3) 148:12  154:11  154:19 | |
| **positively**(1) 220:25 | |
| **possession**(1) 37:3 | |
| **possible**(1) 85:19 | |
| **post-petition**(5) 63:3  63:12  63:17 | |
| 117:8  117:13  117:19  158:3  207:17 | |
| | |
| **potential**(10) 27:7  61:9  66:1  94:15  110:16 | |
| | |
| **potter**(1) 4:17 | |
| **ppearances**(4) 1:23  2:1  4:1  5:1 | |
| **pperances**(1) 3:1 | |
| **practical**(1) 95:21 | |
| **practice**(4) 45:21  166:25  187:24  188:1 | |

| Word | Page:Line |
|---|---|
| **practitioners**(1) 195:24 | |
| **prb1233272-r**(1) 121:4 | |
| **precedent**(23) 192:15  196:7  200:15  201:9 | |
| 205:7  207:14  207:15  209:8  209:10  209:12 | |
| 209:14  209:24  210:7  210:13  211:11  212:5 | |
| 212:15  213:5  214:15  214:21  215:8  223:5 | |
| 223:11 | |
| | |
| **precedent-bid**(1) 223:11 | |
| **precedent-transaction**(3) 207:12  214:5 | |
| **precidential**(1) 18:5 | |
| **precise**(1) 23:2 | |
| **precision**(2) 89:19  156:11 | |
| **preclusive**(1) 18:19 | |
| **predicated**(1) 64:3 | |
| **prefer**(1) 115:18 | |
| **preferential**(2) 61:8  61:11 | |
| **prejudice**(1) 15:6 | |
| **preliminary**(13) 11:10  12:16  124:17 | |
| 124:20  124:22  124:22  124:25  143:9  144:15 | |
| 146:3  146:3  147:7  156:1 | |
| | |
| **premised**(3) 57:13  58:22  58:25 | |
| **premium**(4) 197:19  197:20  201:20  201:22 | |
| **preparation**(2) 21:22  23:19 | |
| **prepare**(12) 23:24  35:4  54:13  65:9  65:12 | |
| 65:19  68:18  70:9  90:18  133:1  133:1  170:8 | |
| | |
| **prepared**(18) 31:25  68:13  79:1  80:7  81:17 | |
| 81:24  86:9  87:8  94:6  132:3  132:7  132:9 | |
| 132:12  132:13  132:14  148:23  149:13  180:3 | |
| | |
| **preparing**(8) 21:21  23:16  23:22  25:3 | |
| 25:14  68:20  132:24  166:8 | |
| | |
| **present**(7) 12:18  15:8  52:16  54:25  84:5 | |
| 159:19  227:25 | |
| | |
| **presentation**(7) 16:4  121:1  122:3  125:25 | |
| 159:4  211:15  222:12 | |
| | |
| **presented**(3) 14:21  52:18  120:5 | |
| **presenting**(1) 145:24 | |
| **presents**(1) 119:14 | |
| **pressures**(1) 91:1 | |
| **pretty**(7) 105:25  109:16  110:15  178:25 | |
| 211:22  212:2  216:16 | |
| | |
| **prevent**(1) 110:21 | |
| **prevents**(1) 117:24 | |
| **previous**(11) 126:23  127:2  181:15  194:20 | |
| 199:6  199:7  205:25  211:19  214:3  217:21 | |
| 221:25 | |
| | |
| **price**(1) 180:20 | |
| **prices**(4) 187:10  189:9  199:25  201:6 | |
| **pricewaterhousecooper**(3) 162:22  162:22 | |
| 162:24 | |
| | |
| **primarily**(4) 38:11  108:13  109:11  139:9 | |
| **primary**(4) 40:12  50:13  81:20  161:25 | |
| **primofl**(1) 10:32 | |
| **principal**(2) 92:4  222:22 | |
| **principally**(6) 163:20  164:4  164:12  175:9 | |
| 214:10  222:14 | |
| | |
| **print**(3) 109:12  109:24  134:2 | |
| **printing**(4) 109:18  109:19  109:20  111:2 | |
| **prior**(22) 35:20  35:22  39:6  44:13  47:1 | |
| 47:2  48:17  53:23  54:1  54:2  54:5  54:6 | |
| 54:12  54:19  72:24  101:8  106:21  107:2 | |
| 120:8  132:25  133:1  185:3 | |
| | |
| **priorities**(5) 25:21  32:4  39:16  77:7  78:10 | |
| **priority**(1) 31:16 | |
| **private**(2) 162:13  214:24 | |
| **pro-rata**(1) 38:14 | |
| **probably**(10) 13:10  38:24  81:9  164:20 | |
| 195:24  199:14  206:4  213:1  213:4  216:17 | |
| | |
| **problems**(3) 106:7  108:11  116:17 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| procedural(2) 74:23 115:22 | | provision(8) 76:18 76:21 76:23 77:4 117:24 118:1 118:14 118:20 | | raised(2) 17:5 22:19 | | recess(4) 53:6 53:7 103:1 103:2 159:15 160:3 160:5 224:19 224:20 | |
| proceed(14) 11:11 16:7 16:14 18:10 23:10 27:12 53:10 57:9 104:2 135:20 160:10 179:9 224:22 226:7 | | | | rajinder(4) 160:12 160:17 160:22 231:5 | | recession(1) 114:4 | |
| | | proxy(7) 182:22 182:25 206:23 206:25 219:21 221:18 222:5 | | ran(2) 39:23 107:10 | | reciprocal(1) 57:25 | |
| proceeding(6) 17:7 17:8 18:8 18:20 106:25 133:14 | | | | range(26) 32:13 33:6 48:15 50:20 88:20 88:22 88:23 88:25 129:12 178:14 178:15 189:5 189:8 189:10 196:15 199:8 199:9 201:7 202:1 202:1 202:1 204:22 210:1 210:2 210:4 210:11 218:19 | | recognize(4) 15:19 32:24 120:23 136:13 | |
| | | public(5) 20:14 161:24 183:14 206:21 | | | | recollection(3) 155:5 156:7 170:14 | |
| | | publications(1) 108:2 | | | | recommend(4) 45:12 46:8 48:5 51:18 | |
| proceedings(5) 1:18 1:49 179:21 229:23 230:4 | | publicly(1) 107:18 | | | | recommendation(4) 52:12 52:16 52:18 52:22 | |
| | | publisher(2) 106:13 119:24 | | ranges(3) 178:12 201:23 210:5 | | | |
| proceeds(7) 25:23 27:5 31:22 31:24 32:2 32:2 66:21 | | publishing(73) 26:7 26:15 26:16 26:19 26:22 26:23 53:24 99:3 101:22 101:25 102:6 105:11 105:14 105:15 107:22 107:2 108:1 108:8 108:9 108:10 108:17 109:9 110:12 111:18 112:9 112:10 119:24 120:1 123:7 123:12 123:19 124:4 124:5 125:16 125:17 126:8 127:19 127:20 128:18 130:6 133:15 134:6 134:10 143:25 148:8 148:17 154:11 155:6 156:4 157:13 157:16 158:18 165:18 166:8 166:12 174:18 178:3 178:9 180:5 181:2 185:15 188:18 192:12 192:13 192:16 198:4 198:8 198:11 202:22 202:22 217:8 217:8 224:7 | | rate(12) 30:12 74:6 75:5 91:10 154:3 154:16 154:17 155:20 156:5 156:19 157:1 157:12 | | recommended(2) 51:11 52:14 | |
| | | | | rates(2) 154:8 154:10 | | reconciliation(1) 83:15 | |
| | | | | rath(3) 3:18 3:20 5:33 | | reconvene(1) 102:24 | |
| process(10) 12:19 83:15 90:6 119:18 120:7 120:18 143:19 143:22 145:2 223:8 | | | | rather(3) 37:25 98:23 225:2 | | record(16) 13:4 17:12 66:9 70:3 74:14 103:13 103:21 104:1 104:6 129:10 135:12 159:5 160:7 160:20 161:16 201:14 | |
| | | | | rationale(4) 197:20 200:17 202:15 207:21 | | | |
| processing(2) 46:3 46:7 | | | | raymond(23) 8:36 161:13 161:21 161:23 162:10 162:20 163:19 163:20 166:11 166:24 168:10 168:12 168:13 168:14 176:8 176:12 176:20 177:2 179:19 180:1 188:1 209:18 | | recorded(3) 1:49 41:2 60:24 | |
| produced(1) 1:50 | | | | | | recording(2) 1:49 230:3 | |
| product(2) 162:12 175:19 | | | | | | records(30) 41:1 41:12 41:15 44:11 44:24 45:13 46:24 48:8 55:1 59:14 59:17 59:19 59:21 60:4 60:20 60:21 60:23 61:1 66:23 67:4 72:6 72:16 72:20 73:11 73:13 73:21 74:3 83:7 83:13 83:14 | |
| prof(1) 8:36 | | | | | | | |
| professional(12) 20:6 20:10 20:15 20:16 27:18 30:11 30:13 91:13 91:14 163:10 221:12 221:13 | | purchase(2) 209:14 214:24 | | re-performed(1) 190:1 | | | |
| | | purchased(1) 60:16 | | reach(7) 12:2 26:14 35:24 36:10 37:6 47:22 50:24 | | | |
| | | purchasing(1) 197:1 | | | | record's(1) 121:11 | |
| professionals(3) 91:25 98:14 162:17 | | pure(11) 33:8 90:14 178:4 178:8 178:10 180:19 189:6 192:10 192:11 196:9 199:10 | | | | recover(4) 32:10 32:16 32:17 197:6 | |
| professions(1) 221:14 | | | | reached(5) 12:1 10:25 58:19 98:16 190:5 | | recovered(4) 29:9 29:10 29:12 29:17 | |
| professor(2) 225:20 227:19 | | | | reaching(2) 36:8 46:25 | | recoveries(70) 1:19 11:21 22:21 23:6 25:18 27:8 28:7 31:4 31:6 33:4 33:6 33:13 33:16 33:17 33:18 33:21 33:24 34:18 34:19 34:21 35:1 35:9 35:21 38:9 39:4 39:5 39:5 39:10 39:11 40:1 41:20 43:6 43:8 43:12 46:17 47:2 47:2 47:4 47:6 48:12 49:7 52:4 52:7 52:8 52:9 62:23 62:24 62:24 64:13 65:1 65:2 65:3 65:12 65:13 65:13 66:11 66:18 94:15 94:18 94:21 96:9 96:13 96:14 96:15 98:22 100:16 101:4 101:7 101:19 231:21 | |
| proffered(2) 47:15 173:25 | | purely(1) 167:6 | | reaction(1) 133:18 | | | |
| profits(2) 90:2 90:8 | | purpose(5) 34:14 34:16 39:3 95:22 219:14 | | read(17) 17:11 67:19 126:18 209:19 | | | |
| project(2) 176:6 176:7 | | purposes(9) 17:18 45:1 45:22 75:20 83:1 97:11 187:5 213:21 222:19 | | reading(2) 125:10 170:23 | | | |
| projected(5) 122:23 125:7 154:4 155:20 222:2 | | | | reads(2) 75:3 151:9 | | | |
| | | | | ready(5) 16:18 160:10 160:13 | | | |
| projecting(2) 192:19 194:7 | | pursuing(1) 117:24 | | real(12) 25:8 25:10 29:12 36:19 37:12 37:13 70:17 98:4 98:6 98:14 171:4 171:5 | | recovers(1) 38:8 | |
| projection(11) 130:17 130:21 133:5 150:10 153:4 153:14 154:1 154:1 154:13 193:17 196:13 | | push(1) 65:25 | | | | recovery(15) 25:17 31:22 35:8 39:3 39:12 39:23 40:4 41:23 43:10 48:12 48:13 65:15 96:13 99:12 99:13 | |
| | | put(28) 13:24 16:13 16:22 18:25 19:16 28:10 72:15 72:17 72:21 72:22 72:22 80:19 113:20 136:24 140:16 148:8 148:11 151:10 166:19 168:3 192:17 193:4 194:23 197:24 213:21 222:16 226:14 227:3 | | reality(4) 46:6 116:2 115:21 210:22 | | | |
| | | | | reallocated(1) 223:13 | | | |
| projections(20) 119:12 131:1 131:19 157:10 157:12 189:24 189:25 191:9 191:11 191:14 191:17 192:16 193:2 193:5 193:8 193:9 193:16 194:1 198:6 220:16 | | | | really(35) 12:8 15:1 42:23 48:14 49:21 50:13 61:20 66:1 82:3 94:23 99:12 99:15 99:19 102:2 102:7 117:8 181:14 183:13 186:9 187:3 189:24 202:23 202:25 203:19 203:23 204:18 204:25 206:8 207:20 208:1 214:13 215:24 216:3 217:25 222:24 | | recross(5) 102:15 158:12 158:15 177:11 231:2 | |
| | | puts(1) 72:17 | | | | | |
| | | putting(3) 72:13 109:7 112:3 | | | | recruit(1) 117:4 | |
| projections"(2) 130:7 131:4 | | qualifications(2) 163:11 174:3 | | | | red(1) 193:22 | |
| projects(1) 23:21 | | qualified(3) 77:2 164:24 169:3 | | reason(3) 187:9 187:21 216:14 | | redeemed(3) 118:16 118:21 119:1 | |
| prologged(1) 158:6 | | qualitatively(1) 142:15 | | reasonable(9) 62:12 80:14 81:3 81:12 84:21 88:23 91:23 96:1 196:1 | | redirect(8) 97:22 98:1 150:25 156:24 158:17 177:17 231:2 | |
| prominent(1) 21:4 | | quality(1) 202:15 | | | | | |
| promise(1) 128:12 | | quantify(2) 90:18 222:7 | | | | | |
| pronounced(1) 111:17 | | quantitating(1) 199:19 | | reasonably(8) 164:2 197:7 198:7 199:24 200:2 207:19 222:2 222:1 | | redistributed(1) 91:21 | |
| proper(2) 63:21 190:7 | | quantitative(3) 189:6 199:8 199:22 | | | | reduce(4) 52:7 88:10 185:7 221:15 | |
| properly(9) 15:20 28:6 56:18 61:18 182:10 183:4 183:16 183:22 218:4 | | quantitatively(2) 193:6 201:6 | | reasons(9) 42:18 149:18 149:19 200:20 202:12 211:10 211:12 211:13 228:12 | | reduced(4) 72:12 72:16 149:18 149:19 | |
| | | quantum(1) 204:11 | | | | reduces(1) 52:5 | |
| | | quarter(6) 65:23 93:19 139:6 139:7 139:13 140:18 | | rebuttal(4) 53:1 159:8 161:7 179:18 | | reduction(6) 30:13 88:6 90:10 101:19 124:4 124:5 | |
| properties(3) 98:16 107:24 129:1 | | | | rebutted(1) 213:18 | | | |
| property(3) 29:11 70:25 98:13 | | | | recall(29) 77:19 77:24 98:4 99:4 100:19 101:21 112:19 136:18 138:17 142:1 146:5 147:3 149:15 152:6 152:17 154:8 154:21 154:22 156:8 157:5 165:24 166:1 169:23 170:16 170:17 173:9 202:22 203:1 | | refer(3) 139:24 180:8 203:18 | |
| proponent(2) 135:13 136:10 | | question(16) 12:7 12:10 15:3 63:6 67:20 76:1 96:20 99:4 108:16 108:16 108:20 116:18 165:4 167:10 167:12 167:23 | | | | reference(11) 74:6 91:14 140:22 163:17 183:13 189:5 199:8 209:13 209:13 209:15 215:4 | |
| proponents(7) 11:12 11:15 12:21 17:15 17:19 160:9 160:11 | | | | | | | |
| | | | | | | references(1) 212:15 | |
| proposal(3) 14:5 58:22 59:2 | | questionable(1) 174:8 | | recapture(1) 228:13 | | referred(2) 36:1 181:3 | |
| proposed(5) 17:21 17:25 18:4 225:11 225:18 | | questioning(1) 165:4 | | receipt(1) 50:24 | | referring(5) 90:12 91:18 147:9 191:25 199:20 | |
| | | questions(13) 102:18 119:11 149:6 157:3 158:13 165:8 174:16 176:16 177:14 181:4 186:10 191:18 228:16 | | receivable(1) 29:9 | | | |
| prosecuting(1) 96:19 | | | | receivables(4) 37:2 37:4 37:19 50:1 | | refers(1) 92:1 | |
| prospective(1) 114:11 | | | | receive(9) 31:4 31:24 32:21 34:19 39:6 67:20 81:6 135:18 220:23 | | reflect(7) 37:25 59:14 72:20 72:22 73:11 93:14 226:18 | |
| prospects(1) 134:9 | | quick(3) 97:3 97:10 140:2 | | | | | |
| prove(2) 95:23 95:25 | | quickly(6) 85:19 110:17 117:21 134:15 134:21 186:1 | | received(13) 14:16 33:9 36:18 45:16 66:21 67:22 67:23 68:5 98:17 218:22 226:1 227:20 231:15 | | reflected(12) 37:18 41:15 60:20 60:21 60:25 83:6 182:11 183:4 185:9 218:4 218:10 218:25 | |
| proverbial(1) 117:7 | | | | | | | |
| provide(14) 14:12 30:1 34:17 64:24 65:2 89:2 95:25 107:19 115:14 176:25 179:18 187:22 188:17 200:22 | | quite(5) 62:12 112:4 129:24 218:7 225:8 | | receives(1) 60:9 | | | |
| | | qureshi(28) 160:6 160:7 160:14 160:24 161:2 161:4 161:11 164:23 174:9 174:10 174:13 174:15 177:9 179:9 179:10 179:12 185:17 185:22 185:24 224:18 224:23 225:2 227:13 228:10 228:23 229:4 229:8 229:22 | | receiving(1) 136:18 | | | |
| provided(22) 35:12 66:22 67:12 67:15 68:9 68:17 69:14 69:23 86:15 86:17 86:19 86:21 95:3 99:6 119:13 165:25 166:4 184:7 216:11 220:14 227:6 227:9 | | | | recent(3) 70:11 148:20 150:5 | | reflective(2) 71:19 83:13 | |
| | | radically(1) 226:12 | | | | | |
| provides(4) 33:4 38:15 81:3 225:8 | | raise(3) 103:8 110:2 160:15 224:23 225:2 | | | | reflects(2) 59:17 72:16 | |
| providing(5) 20:7 36:24 96:12 99:17 | | | | | | | |

| Word | Page:Line |
|---|---|
| **regard**(5) | 64:13 66:10 77:3 133:9 227:11 |
| **regarding**(14) | 22:4 24:22 25:16 25:19 25:21 26:16 27:11 27:18 34:25 35:5 79:18 91:20 125:25 152:7 |
| **regards**(1) | 77:16 |
| **regular**(1) | 166:25 |
| **relate**(4) | 136:20 175:7 180:13 216:13 |
| **related**(25) | 12:8 62:11 67:12 68:12 79:14 169:25 171:5 175:5 181:11 182:5 186:14 192:16 201:17 201:18 202:23 202:25 203:11 208:1 212:10 212:10 215:24 217:1 218:6 220:23 224:3 |
| **relates**(19) | 17:3 42:16 50:14 75:17 101:15 178:9 181:11 183:3 187:4 189:18 190:14 192:6 195:9 198:17 215:16 217:7 217:8 221:6 224:7 |
| **relation**(6) | 35:14 187:13 189:10 190:6 191:21 223:18 |
| **relationship**(6) | 60:19 196:6 196:12 197:17 197:22 |
| **relative**(9) | 32:4 48:22 73:16 199:9 200:3 200:21 204:25 208:19 215:18 |
| **relatively**(5) | 48:15 191:12 203:3 215:18 215:20 |
| **released**(3) | 67:11 68:3 177:4 |
| **relevance**(1) | 196:19 |
| **relevant**(5) | 76:16 193:1 196:8 212:21 |
| **reliable**(2) | 200:12 201:24 |
| **relied**(16) | 25:5 25:7 68:8 68:11 69:11 77:8 82:11 82:15 98:8 98:10 98:11 189:12 189:17 207:20 214:10 214:13 |
| **relies**(1) | 188:2 |
| **relieving**(1) | 18:14 |
| **rely**(8) | 25:3 58:16 68:15 68:23 73:10 189:17 199:17 201:10 |
| **relying**(2) | 198:3 212:6 |
| **remain**(3) | 96:15 103:8 160:15 |
| **remainder**(4) | 51:24 101:20 121:25 215:15 |
| **remaining**(6) | 11:11 12:24 43:4 75:6 159:22 214:17 |
| **remember**(18) | 68:16 69:20 71:8 71:9 79:13 80:22 81:3 84:13 85:14 85:16 87:19 87:20 87:22 87:25 89:19 140:13 154:10 212:19 |
| **remind**(2) | 112:21 203:10 |
| **remove**(2) | 43:3 46:25 |
| **removed**(1) | 212:1 |
| **renew**(1) | 178:24 |
| **reorganization**(20) | 21:2 21:15 23:1 24:3 33:5 33:14 67:11 67:14 67:24 68:2 69:11 94:19 96:9 137:11 151:17 151:20 151:23 152:4 152:7 221:5 |
| **reorganizations**(5) | 20:24 21:5 21:10 21:19 22:19 |
| **repeat**(2) | 63:6 223:22 |
| **reperform**(1) | 205:21 |
| **replicated**(1) | 219:7 |

| Word | Page:Line |
|---|---|
| **report**(154) | 11:12 12:2 19:12 19:13 19:15 25:5 28:12 32:24 33:2 33:24 34:16 35:4 35:14 36:4 36:9 37:1 37:12 39:2 43:20 43:24 44:20 45:8 48:18 49:14 49:17 54:13 54:22 55:18 56:6 62:14 62:20 64:3 64:7 64:11 64:20 64:24 64:24 65:2 65:9 65:12 65:19 66:1 66:8 66:11 66:13 67:18 68:1 68:11 68:13 68:20 68:24 69:5 69:14 70:10 70:10 70:15 72:3 76:12 76:12 77:6 78:4 79:1 79:4 80:7 80:21 81:1 81:2 81:7 81:10 81:14 81:23 82:1 82:6 82:12 82:13 83:17 86:24 87:12 88:14 90:20 91:11 93:5 93:7 94:12 94:13 100:22 100:24 161:7 168:20 168:23 169:22 169:24 170:9 170:11 170:15 172:13 172:15 172:20 172:20 172:23 174:4 174:6 175:3 175:4 177:4 178:14 179:17 180:17 181:20 181:24 182:10 182:20 183:18 184:13 184:13 184:25 185:3 185:9 185:13 185:15 186:16 187:10 187:22 188:6 188:9 189:16 191:11 191:25 194:23 194:25 205:18 206:12 206:25 207:1 207:2 207:3 213:9 213:18 214:21 216:10 218:23 226:11 226:13 226:24 227:4 227:6 227:8 227:16 227:20 227:24 228:2 228:3 228:5 231:17 |
| **reported**(1) | 72:5 |
| **reporter**(3) | 162:7 171:23 172:1 |
| **reporting**(2) | 23:18 144:20 |
| **reports**(24) | 19:12 19:15 19:17 22:20 23:20 23:23 25:3 78:21 87:15 88:3 99:6 100:7 164:10 168:7 168:13 168:19 169:13 169:1 169:18 170:3 170:17 209:1 214:22 221:22 |
| **represent**(6) | 29:5 31:19 126:6 144:7 153:3 153:4 |
| **representations**(1) | 30:2 |
| **representatives**(1) | 138:10 |
| **represented**(2) | 39:25 40:1 |
| **represents**(7) | 28:15 28:18 40:21 40:24 48:11 126:18 133:10 |
| **request**(2) | 135:18 178:24 |
| **require**(1) | 99:7 |
| **required**(6) | 75:19 179:18 190:8 211:1 225:21 225:22 |
| **requirement**(1) | 76:20 |
| **rerunning**(1) | 226:22 |
| **res**(1) | 18:16 |
| **research**(7) | 95:8 95:11 130:14 130:25 131:10 208:24 209:1 |
| **reserve**(2) | 18:6 165:3 |
| **reside**(1) | 217:10 |
| **resides**(1) | 162:5 |
| **resoluteness**(1) | 13:17 |
| **resolution**(3) | 12:1 12:2 97:5 |
| **resolve**(2) | 14:9 27:4 |
| **resolves**(1) | 59:5 |
| **respect**(49) | 13:20 14:3 14:11 17:1 18:6 18:7 18:19 22:18 23:1 23:4 24:1 27:16 43:18 61:5 96:19 103:22 131:11 137:15 151:13 164:25 166:15 168:15 169:4 169:7 171:2 171:9 175:13 178:20 181:2 182:19 183:11 189:23 189:25 190:15 192:6 194:5 196:19 198:8 200:6 201:9 213:7 215:14 223:24 224:9 225:4 227:15 227:16 227:19 227:22 |
| **respectfully**(1) | 226:4 |
| **respectively**(1) | 127:18 |
| **respects**(1) | 171:8 |
| **respond**(3) | 226:8 227:13 228:6 |
| **response**(8) | 13:1 116:15 135:8 150:21 174:9 174:16 229:16 229:17 |

| Word | Page:Line |
|---|---|
| **responsibilities**(6) | 104:25 105:8 105:12 106:6 106:14 162:10 |
| **responsible**(3) | 150:7 162:12 162:15 |
| **responsibly**(1) | 158:9 |
| **responsive**(1) | 108:20 |
| **rest**(8) | 13:14 90:22 107:10 110:23 159:9 177:2 186:22 204:24 |
| **restated**(1) | 217:14 |
| **restrictions**(1) | 203:11 |
| **restructuring**(20) | 20:4 20:7 20:19 21:12 22:6 97:1 105:4 161:16 162:13 162:14 167:8 167:10 167:15 169:18 170:10 173:1 176:1 176:10 221:12 221:13 |
| **restructurings**(3) | 163:4 163:25 164:18 |
| **result**(28) | 38:3 45:18 46:8 46:14 47:4 48:1 48:23 50:1 52:22 60:11 72:12 100:6 113:17 118:20 143:2 157:24 171:6 172:11 191:20 196:14 202:16 206:25 210:3 211:1 216:7 217:1 221:19 223:2 |
| **resulted**(3) | 201:7 201:25 220:3 |
| **resulting**(4) | 184:9 186:18 193:5 202:1 |
| **results**(22) | 28:16 28:24 90:7 121:16 121:17 125:15 127:18 140:19 146:19 146:21 146:24 146:24 147:1 149:20 150:9 157:25 190:7 191:15 194:11 197:10 198:13 206:17 |
| **resumed**(1) | 179:11 |
| **retail**(1) | 126:9 |
| **retain**(2) | 114:2 115:4 |
| **retained**(3) | 23:15 177:4 179:13 |
| **retention**(1) | 90:21 |
| **retiree**(17) | 40:14 40:17 40:20 40:22 40:23 42:16 42:21 43:4 78:4 83:12 101:15 |
| **retirees**(1) | 92:23 |
| **revenue**(29) | 109:12 110:3 110:24 122:19 124:5 124:6 125:18 127:12 130:6 131:3 134:2 134:4 141:10 148:3 153:10 153:13 154:12 155:7 155:11 155:23 156:4 158:18 158:22 190:17 190:18 190:19 190:20 192:21 208:15 |
| **revenues**(14) | 108:13 109:24 110:2 111:3 111:4 123:7 123:10 125:17 127:10 127:19 133:25 141:12 157:15 158:3 |
| **review**(7) | 44:8 66:22 78:11 99:22 100:3 100:6 133:5 |
| **reviewed**(10) | 76:16 76:18 100:5 102:6 121:15 183:23 191:10 207:16 207:18 209:16 |
| **reviewing**(2) | 22:8 44:17 |
| **revised**(7) | 70:24 220:16 220:17 226:10 227:4 227:16 227:20 |
| **revision**(1) | 151:8 |
| **revisions**(1) | 181:11 |
| **revolves**(1) | 50:14 |
| **richards**(1) | 2:12 |
| **rifkind**(1) | 7:4 |

| Word | Page:Line |
|---|---|
| **right**(160) | 13:2 17:13 23:10 32:12 36:19 37:10 37:10 38:4 44:23 46:16 48:9 49:15 50:3 51:20 53:4 53:18 54:6 54:17 55:4 55:9 55:13 55:18 56:2 56:4 56:4 56:15 56:21 57:14 57:18 57:23 58:2 58:3 58:7 58:11 58:17 59:6 59:12 59:15 60:20 63:23 64:21 65:24 66:8 66:14 66:25 67:5 67:11 68:3 69:1 69:9 69:12 70:17 71:1 71:8 71:13 71:13 71:25 72:4 73:11 73:19 73:23 73:24 74:4 76:7 76:22 77:5 77:11 79:1 79:20 80:4 80:10 80:13 80:16 80:23 81:7 81:15 82:2 82:9 82:22 84:2 84:15 84:23 86:5 86:12 86:16 86:24 88:18 89:4 89:12 90:4 90:15 91:12 93:3 93:11 95:9 95:12 95:14 99:1 102:19 103:9 104:2 104:20 127:4 129:5 130:5 130:24 130:25 131:5 135:20 140:1 141:2 141:4 141:7 142:6 142:9 142:24 143:6 145:12 146:9 146:23 147:4 149:1 152:2 154:1 154:5 156:17 157:1 157:7 159:12 159:24 160:16 165:3 165:22 166:9 166:17 167:3 167:15 168:2 169:13 169:17 172:24 173:18 174:18 178:6 183:16 190:18 190:21 195:10 196:25 198:2 201:2 203:13 204:19 208:10 213:9 218:10 221:9 223:3 227:2 229:1 |
| **right-hand**(4) | 145:23 152:23 156:19 184:3 |
| **rights**(1) | 18:6 |
| **rise**(1) | 174:8 |
| **robert**(4) | 3:30 6:17 8:37 9:30 |
| **rochester**(1) | 7:32 |
| **rockefeller**(1) | 3:32 |
| **rodney**(1) | 2:14 |
| **rogers**(1) | 8:29 |
| **roitman**(1) | 5:19 |
| **role**(14) | 102:7 104:22 105:24 120:7 132:23 132:24 133:1 133:4 137:7 137:7 151:14 151:19 162:9 163:21 183:6 |
| **roll-up**(1) | 144:23 |
| **rolled**(1) | 120:5 |
| **rollup**(2) | 120:12 124:24 |
| **rome**(1) | 5:4 |
| **room**(3) | 14:7 114:17 115:6 |
| **rosen**(1) | 1:29 |
| **rosenblatt**(1) | 3:29 |
| **rosenman**(1) | 9:31 |
| **rounding**(1) | 156:10 |
| **rounds**(1) | 156:9 |
| **row**(1) | 46:22 |
| **rows**(2) | 29:3 47:1 |
| **royal**(2) | 8:28 8:28 |
| **rudnick**(3) | 4:4 6:14 53:14 |
| **rule**(3) | 109:14 226:1 226:4 |
| **run**(3) | 30:12 165:6 188:8 |
| **running**(1) | 118:19 |
| **rushabh**(1) | 8:50 |
| **russano**(1) | 2:7 |
| **rutgers**(1) | 163:8 |
| **s-i-n-g-h**(1) | 160:22 |
| **saavedra**(1) | 7:47 |
| **sacks**(2) | 10:17 10:17 |
| **said**(25) | 1:11,12 16:13 18:23 19:8 19:12 22:2 24:5 52:1 62:24 69:9 81:9 95:21 96:7 108:23 127:8 130:1 130:25 136:23 137:11 142:5 148:22 175:18 197:10 209:4 229:10 |
| **salary**(1) | 114:8 |
| **sale**(16) | 26:5 26:7 26:13 28:2 29:24 30:4 37:12 37:14 90:3 90:6 102:1 102:10 212:22 212:23 223:7 223:8 |
| **sales**(6) | 29:17 94:1 105:10 105:17 110:17 110:18 |
| **sam**(2) | 136:25 151:10 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**same**(29) 14:19 33:14 33:19 56:7 65:11 65:16 75:6 87:18 88:6 94:2 99:13 105:17 131:7 134:23 135:15 135:18 137:10 140:9 140:15 147:17 155:16 187:17 189:10 192:24 199:5 199:7 199:8 199:24 228:1

**sat**(1) 127:7

**satisfied**(1) 223:9

**saturday**(3) 226:11 227:9 227:17

**saw**(6) 67:4 76:19 192:20 205:25 223:23 225:12

**say**(18) 47:22 64:3 65:25 73:2 82:17 93:23 106:1 128:9 138:14 144:10 151:16 155:1 159:9 167:5 167:20 171:9 200:2 227:18

**saying**(6) 65:11 80:15 88:9 93:13 133:15 171:19

**says**(14) 121:21 124:16 146:7 155:22 161:8 168:3 168:6 169:10 195:1 201:3 206:8 206:9 223:1 225:9

**scale**(4) 111:1 111:6 111:6 193:24

**scare**(1) 117:13

**scenarios**(2) 65:4 153:5

**schedule**(2) 90:18 90:20

**schedules**(1) 23:19

**scholer**(1) 10:31

**school**(1) 53:20

**schott**(1) 8:33

**schotz**(1) 1:34

**schuylkill**(1) 1:44

**schwartz**(1) 8:37

**schwinger**(1) 3:30

**science**(1) 163:7

**scope**(4) 21:9 64:23 64:24 108:15

**scotland**(3) 8:28 8:28

**scott**(1) 9:27

**scripts**(9) 183:11 183:17 206:21 207:21 207:21 208:1 208:2 209:6 209:15

**season**(1) 128:11

**seasonality**(2) 220:20 220:21

**seated**(4) 11:2 53:8 103:11 160:18

**seats**(1) 13:10

**second**(25) 13:11 14:2 28:21 31:9 31:13 32:12 38:2 65:23 68:5 68:6 68:10 69:5 110:1 136:23 151:7 159:25 183:3 183:16 188:20 189:18 191:8 191:22 194:21 219:1 220:25

**secondly**(1) 227:16

**section**(16) 78:11 84:2 121:8 121:13 191:24 199:6 199:7 200:10 203:10 204:13 205:1 210:5 216:12 217:2 217:7 222:11

**sections**(2) 183:5 214:3

**sector**(1) 111:25

**sectors**(1) 54:9

**securities**(2) 161:23 162:23

**see**(75) 13:10 13:14 15:6 15:8 16:16 31:10 32:12 33:8 40:6 40:9 41:6 42:2 43:1 47: 48:20 49:22 50:4 51:13 53:16 61:18 75:3 75:8 85:21 92:18 94:21 96:15 109:9 110:6 113:16 113:17 120:2 121:6 121:9 121:22 122:13 123:5 124:17 126:1 126:10 126:12 127:12 127:21 130:7 131:1 131:4 136:25 137:12 140:18 140:25 147:12 147:14 148: 151:11 151:17 152:25 153:10 153:22 156:2 164:2 167:14 169:11 169:14 170:21 190:16 190:18 190:22 206:11 206:13 206:14 215:18 218:25 221:10 221:19 228:13 229:18

**seeing**(4) 69:13 109:23 134:1 134:2

**seek**(1) 103:23

**seem**(3) 196:11 200:11 201:24

**seemed**(2) 148:15 215:9

**seems**(3) 11:5 15:14 196:3

**seen**(5) 14:9 15:8 102:4 113:23 200:11

**sees**(1) 228:18

**segment**(7) 112:18 166:11 180:2 188:15 188:18 198:21 202:19

**segments**(2) 123:11 186:1

**seife**(1) 3:28

**seiler**(1) 7:37

**selected**(3) 169:10 183:14 189:11

**selections**(2) 178:6 178:11

**self-evident**(1) 82:14

**sell**(1) 215:1

**selling**(2) 36:18 91:1

**sells**(1) 26:3

**semi-retirement**(1) 107:14

**send**(1) 145:4

**senior**(32) 20:20 32:17 41:22 42:6 43:7 43:8 43:13 43:15 47:5 47:7 47:9 48:12 49:7 52:8 52:10 52:19 76:21 77:17 77:22 91:22 91:24 92:2 92:7 92:15 96:10 96:11 101:5 101:19 101:20 162:13 176:21 176:22

**sense**(5) 129:23 165:5 187:1 212:11 228:25

**sensitivity**(4) 47:24 48:4 48:18 62:21

**sent**(5) 60:10 144:24 145:20 225:16 225:22

**sentence**(5) 68:5 136:23 137:10 151:7

**sentinel**(6) 84:25 85:2 85:4 85:4 85:5

**separate**(3) 17:2 104:24 126:6

**separated**(1) 107:21

**september**(3) 205:16 212:16 222:24

**sequencing**(1) 146:5

**serengeti**(2) 8:4 8:5

**series**(7) 28:21 30:25 36:12 38:3 163:13 163:13 192:15

**serve**(1) 225:9

**served**(2) 107:16 107:17

**service**(6) 1:43 1:50 45:23 54:12 161:23 166:4

**services**(7) 1:43 20:6 20:8 20:8 165:25 176:11 222:15

**set**(22) 28:15 28:17 47:1 50:9 68:10 111:3 111:20 120:1 128:13 145:20 153:18 157:10 163:15 180:19 189:7 193:3 194:3 199:10 212:1 215:6 222:12 227:5

**sets**(3) 56:24 161:20 202:14

**setting**(4) 48:7 48:9 50:1 194:17

**settlement**(54) 17:4 17:7 17:10 17:22 17:25 18:4 18:12 19:15 27:14 33:21 35:2 35:11 39:9 39:15 40:21 40:23 40:24 40:25 43:21 48:5 48:14 50:22 51:12 52:1 52:2 52:5 52:14 52:23 56:9 57:5 58:3 58:5 58:9 58:11 58:12 58:16 58:20 59:5 62:3 62:6 62:9 62:11 62:18 63:22 64:2 64:4 64:7 83:12 96:1 96:3 96:8 96:11 96:24 231:16

**settlements**(4) 57:1 57:4 57:7 97:4

**setup**(1) 226:12

**seven**(4) 130:13 141:17 141:17 193:18

**seven-to**(1) 223:17

**seventeen**(1) 172:19

**seventy**(1) 195:12

**several**(12) 22:24 29:3 32:14 42:18 164:9 168:18 170:16 170:18 170:19 194:3 221:1 221:16

**severance**(4) 25:20 27:22 30:21 30:22

**sewn**(1) 159:22

**shall**(1) 225:9

**shamah**(1) 6:7

**shannon**(1) 7:11

**share**(1) 152:10

**shared**(3) 11:14 106:5 124:25

**shares**(2) 37:9 118:16

**shaya**(1) 7:32

**she**(6) 135:25 136:2 136:3 136:7 137:9 137:10

**sheets**(1) 35:5

**sheffield**(1) 9:36

**sheron**(1) 9:16

**shmikler**(1) 10:28

**shook**(1) 125:4

**short**(3) 30:5 159:15 197:7

**shortly**(2) 37:14 37:20

**shot**(2) 134:16 135:2

**should**(26) 15:13 22:2 22:14 47:14 47:15 50:20 50:21 61:3 61:24 61:25 62:7 64:3 66:1 66:11 89:4 90:1 90:3 97:12 159:19 183:1 189:14 190:4 190:7 210:9 220:5 227:10

**shoulders**(1) 119:8

**show**(19) 12:5 14:13 15:7 15:16 47:1 62:14 125:2 127:15 127:16 127:18 132:4 147:18 154:3 156:19 187:7 196:17 196:21 196:25 208:6

**showed**(5) 124:20 125:3 128:11 186:7

**showing**(3) 122:18 124:19 226:25

**shown**(6) 15:15 124:21 145:10 146:16 147:24 174:4

**shows**(19) 46:22 46:24 48:4 48:25 55:3 55:8 55:23 56:11 56:15 82:4 114:3 125:7 128:23 132:5 134:4 141:4 141:12 149:9 150:1

**shrunk**(1) 213:13

**shut**(5) 84:7 84:16 85:13 85:17 85:18

**shuts**(1) 26:3

**sic**(2) 158:6 180:23

**side**(31) 11:13 11:23 12:4 13:24 14:7 15:2 30:7 98:23 105:18 109:24 112:1 112:10 112:24 120:10 120:13 120:13 120:17 123:19 129:17 129:19 129:19 129:19 145:23 152:23 154:11 155:23 156:19 164:11 184:3 210:13 225:20

**sides**(1) 120:13

**sidley**(7) 1:25 6:21 65:18 77:10 78:8 95:16 165:15

**siegel**(1) 4:5

**sign**(1) 13:16

**signatory**(1) 169:19

**signature**(4) 24:12 34:3 43:23 80:22

**signed**(2) 80:21 170:12

**significance**(4) 42:24 46:16 100:25 101:10

**significant**(25) 27:21 29:7 30:19 45:11 59:22 60:6 93:24 123:6 134:4 175:2 187:20 195:7 195:9 197:24 203:23 204:14 204:25 206:2 206:3 206:5 206:15 212:2 216:16 220:3 222:9

**significantly**(4) 49:3 100:15 197:16 207:3

**signs**(2) 114:4 168:13

**silly**(2) 15:21 15:23

**silver**(2) 9:46 9:46

**silverstein**(1) 4:18

**similar**(12) 33:3 40:22 75:6 94:19 96:22 99:18 112:9 163:2 195:24 199:1 208:15 208:16

**similarly**(3) 56:6 148:11 211:9

**simplest**(1) 117:5

**simplicity**(1) 79:21

**simply**(15) 14:6 46:4 153:6 186:7 191:20 192:17 193:10 195:21 197:15 201:5 210:1 217:11 222:3 223:10 226:21

**simultaneously**(1) 30:5

**since**(8) 37:9 53:20 120:11 133:4 185:3 187:8 188:6 214:17

**sine**(1) 107:13

**singh**(21) 159:20 160:12 160:17 160:22 161:12 164:24 165:14 174:16 177:19 179:13 185:25 193:1 202:18 203:10 209:7 210:15 216:6 218:14 222:10 223:21 231:5

**singh's**(1) 161:7

**single**(9) 57:5 106:5 109:20 154:24 154:24 155:1 156:10 210:9 217:3

**sir**(35) 53:18 82:24 83:19 102:19 103:16 107:1 118:11 133:23 136:10 136:11 137:1 137:18 138:16 140:19 141:10 143:10 143:24 145:7 145:17 147:7 149:7 150:18 158:14 159:1 160:23 161:12 163:14 179:23 182:18 184:11 190:14 192:2 195:18 198:22 213:25

**sit**(1) 166:3

**sitting**(1) 88:5

**situation**(4) 18:10 163:25 165:7 214:12

**situations**(1) 163:3

**six**(6) 90:6 90:9 90:9 105:14 159:22 221:9

**six-month**(1) 84:10

**sixty**(3) 190:24 200:14 202:8

**size**(2) 30:16 210:17

**skadden**(1) 7:18

**slate**(1) 7:18

**slater**(1) 10:25

**sleeves**(1) 229:2

**slide**(6) 47:1 54:24 55:17 127:15 169:10 223:22

**slides**(1) 194:4

**slight**(1) 145:1

**slightly**(3) 30:16 126:15 129:2

**slow**(2) 117:20 162:6

**smack**(1) 194:25

**small**(8) 48:15 50:23 162:3 198:17 203:4 208:5 215:16 215:20

**smaller**(4) 101:7 101:9 105:14 223:19

**smallest**(1) 126:14

**sni**(8) 208:8 208:9 208:10 208:13 208:17 208:19 208:22

**sni's**(2) 208:11 208:20

**softness**(1) 219:17

**sold**(16) 26:5 26:13 29:16 84:9 86:1 88:16 88:16 89:11 89:25 90:5 107:11 107:12 212:17 212:20 214:9 214:16

**solely**(4) 23:4 208:3 208:4 212:6

**solution**(1) 134:9

**some**(93) 11:20 12:18 12:22 14:6 16:1 17:8 17:10 21:4 21:9 21:10 21:17 21:25 25:6 30:19 34:20 36:23 47:16 51:5 68:1 70:16 71:13 71:13 84:13 85:13 85:13 86:12 96:24 99:20 99:21 100:17 101:21 105:8 115:22 118:24 119:11 120:4 122:4 129:20 130:11 142:2 145:1 148:15 149:6 157:3 161:20 163:15 169:13 169:24 171:6 171:13 172:25 173:8 176:16 176:21 181:4 181:11 181:12 181:13 182:5 183:13 185:5 185:10 189:23 189:24 191:10 191:17 191:20 194:10 195:7 195:20 196:5 197:7 197:18 197:19 200:7 200:23 201:19 203:21 204:10 207:18 209:3 209:19 209:20 209:21 211:4 216:3 216:20 218:13 220:6 221:10 224:6 227:10 228:10

**somebody**(5) 168:16 170:9 171:11 171:16 173:23

**someday**(1) 18:25

**somehow**(1) 133:23

**someone**(2) 14:20 117:14

**something**(15) 14:16 66:3 72:8 81:8 104:20 112:13 117:12 139:16 139:21 152:23 164:6 184:8 184:19 191:4 201:21

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| sometime(1) 65:22 | | stated(5) 171:1 214:9 215:23 216:18 | | subs(16) 45:3 50:25 55:4 55:9 55:24 56:1 56:11 56:13 56:15 56:16 56:20 56:21 57:17 57:25 59:20 60:5 | | tab(10) 140:8 143:10 145:12 146:6 149:4 151:4 151:5 152:14 155:24 156:15 | |
| sometimes(2) 210:21 210:22 | | statement(9) 33:4 69:16 80:24 80:24 94:17 97:9 220:12 220:13 220:15 | | | | | |
| somewhat(7) 28:2 111:4 200:1 204:6 205:19 214:7 223:4 | | | | | | table(3) 13:10 99:17 171:7 | |
| | | statements(3) 23:19 37:11 192:17 | | subsequen(1) 40:2 | | tablet(1) 111:21 | |
| somewhere(5) 16:10 117:21 130:23 195:6 197:3 | | states(4) 1:1 1:20 108:10 121:4 | | subsidiaries(30) 28:8 28:18 31:7 32:20 34:25 37:23 38:1 38:8 38:11 38:12 45:3 45:4 45:5 45:17 47:20 47:21 48:1 48:6 48:20 48:25 49:2 49:13 51:14 59:9 59:11 63:3 63:5 63:14 63:22 106:22 | | tad(1) 155:22 | |
| | | station(2) 119:23 165:21 | | | | tail(3) 27:3 84:12 129:4 | |
| | | stations(4) 111:11 111:12 111:14 129:11 | | | | take(58) 13:16 15:24 27:3 33:18 35:18 35:24 39:13 40:5 44:8 51:3 51:22 53:5 69:4 90:6 91:10 91:19 96:2 96:7 96:21 113:10 120:18 122:11 123:20 125:24 127:11 130:5 131:2 131:22 148:19 150:4 154:23 156:12 156:12 159:15 160:2 165:17 166:3 166:7 166:11 166:15 167:2 168:2 169:16 170:20 173:11 179:6 185:12 186:15 187:6 198:9 207:9 207:25 208:11 217:24 220:15 224:17 227:6 229:10 | |
| sooner(1) 115:2 | | status(2) 142:22 163:12 | | | | | |
| sorry(30) 56:13 56:14 56:15 63:6 74:10 74:11 74:18 75:1 82:23 85:3 85:8 91:19 96:7 98:11 118:4 128:18 131:6 140:6 141:8 144:12 151:4 156:14 156:15 171:23 186:20 188:24 194:18 199:21 225:1 229:2 | | statutory(1) 30:16 | | | | | |
| | | stay(2) 14:20 141:21 | | subsidiary(18) 28:19 28:24 31:7 34:24 37:2 43:16 45:19 45:25 46:4 46:7 46:8 57:20 60:9 60:12 60:13 60:14 107:8 162:21 | | | |
| | | stays(1) 193:23 | | | | | |
| | | ste(1) 1:37 3:6 4:13 5:6 | | | | | |
| | | steady(1) 193:23 | | | | | |
| sort(9) 75:21 90:18 120:2 144:25 193:20 194:20 202:21 216:21 223:23 | | steal(1) 91:2 | | substantia(3) 162:1 203:19 224:2 | | taken(4) 100:12 100:13 100:15 224:20 | |
| | | stein(1) 9:18 | | substantially(1) 94:19 | | takes(3) 39:16 48:4 118:22 | |
| | | stellar(4) 139:2 139:7 139:8 141:20 | | substantive(1) 22:15 | | taking(2) 48:6 52:5 | |
| sottile(13) 3:39 5:28 11:7 11:8 11:20 12:10 12:15 13:21 14:12 15:18 15:19 15:23 16:17 | | step(19) 52:2 52:5 62:1 62:2 62:7 62:7 62:15 63:2 63:3 63:9 63:13 64:17 64:17 102:20 124:23 158:7 159:1 194:21 200:1 | | substituted(1) 178:19 | | talent(3) 114:2 114:12 116:11 | |
| | | | | subtract(1) 96:11 | | talk(17) 23:25 25:1 43:18 60:1 64:10 71:21 107:25 111:8 131:18 137:19 143:9 163:16 164:7 175:4 217:3 226:20 229:10 | |
| sound(1) 1:49 207:24 230:3 | | | | success(1) 105:23 | | | |
| sounds(8) 15:19 59:4 65:24 79:23 81:8 81:14 82:16 88:1 | | step-two(1) 118:17 | | successful(1) 21:15 | | | |
| | | stephen(1) 4:19 | | such(15) 25:20 38:22 66:20 71:17 86:4 89:7 90:21 99:23 108:25 109:15 110:11 180:16 181:13 | | | |
| | | steps(2) 44:8 194:20 | | | | talked(15) 33:12 46:25 51:15 55:20 68:25 71:25 80:21 83:4 84:12 87:3 87:4 87:19 96:4 214:22 215:13 | |
| source(1) 183:14 | | still(19) 33:22 109:12 109:23 110:5 110:8 115:6 115:6 116:3 116:3 119:2 133:10 148:7 157:1 159:6 159:6 178:24 196:23 196:24 207:3 | | | | | |
| sources(2) 130:12 180:25 | | | | sufficient(2) 168:1 173:21 | | | |
| south(3) 1:30 4:40 108:5 | | | | suggest(1) 202:15 | | | |
| southern(1) 106:18 | | | | suggested(3) 136:3 136:7 137:19 | | talking(3) 136:21 156:1 220:11 222:13 | |
| space(3) 113:18 172:8 172:11 | | stipulate(1) 14:6 | | suggesting(3) 153:8 153:12 155:11 | | task(1) 99:1 | |
| spaeder(3) 3:36 5:26 11:8 | | stipulation(2) 11:18 51:3 | | suggests(3) 16:8 192:11 197:5 | | tax(10) 30:20 31:16 36:25 44:16 | |
| speak(5) 12:25 77:15 137:20 143:22 | | stitch(1) 14:21 | | suite(3) 3:21 3:41 4:41 | | taxes(5) 25:20 27:21 30:17 30:19 220:22 | |
| speaking(1) 171:3 | | stock(9) 36:18 66:21 71:17 180:20 187:8 187:10 189:19 199:25 201:6 | | sullivan(2) 4:11 4:12 | | taylor(1) 4:28 | |
| special(5) 3:10 7:16 11:8 163:2 163:24 | | | | sum(2) 180:3 223:23 | | team(15) 61:6 73:9 80:6 81:17 95:8 159:10 168:13 168:17 169:23 170:11 171:16 171:17 175:1 175:24 176:24 | |
| specialist(2) 170:1 175:19 | | | | summarize(1) 211:15 | | | |
| specialty(1) 20:18 | | stocks(1) 189:13 | | summarized(6) 121:15 163:18 179:24 188:5 204:10 205:4 | | | |
| specific(9) 87:4 89:6 105:12 113:15 113:16 163:17 164:8 171:6 181:12 | | stop(1) 219:13 | | | | | |
| | | store(1) 21:14 | | summarizes(1) 181:19 | | | |
| | | straightforward(1) 211:23 | | summary(9) 28:14 33:2 39:3 45:1 69:1 69:3 69:15 122:16 215:12 | | teamed(2) 171:3 171:11 | |
| specifically(14) 58:15 77:15 101:6 110:12 123:9 127:6 132:15 151:8 151:9 167:16 170:14 171:13 171:14 189:16 | | strauss(6) 2:33 7:31 13:4 17:17 135:12 160:7 | | | | teams(1) 177:2 | |
| | | | | | | teapot(1) 15:20 | |
| | | street(14) 1:11 1:44 2:15 2:21 3:6 3:21 3:40 3:48 4:7 4:13 4:21 4:31 4:47 5:6 | | sun(4) 84:25 98:4 98:6 171:2 | | technical(3) 176:14 176:16 190:9 | |
| | | | | superior(2) 96:3 96:15 | | technically(2) 108:22 116:1 | |
| specificity(1) 23:2 | | | | supervised(4) 163:22 168:11 168:17 170:10 | | technology(3) 105:9 176:11 176:20 | |
| speculation(1) 116:14 | | | | supervising(1) 21:22 | | technology/digita(1) 105:18 | |
| speed(1) 175:22 | | strike(3) 108:15 142:20 149:19 | | supervisory(1) 163:21 | | telephonic(6) 5:9 6:1 7:1 8:1 9:1 10:1 | |
| spell(1) 160:21 | | strikes(1) 174:7 | | supplement(3) 187:18 213:12 213:15 | | television(3) 111:11 111:20 112:24 | |
| spelling(1) 103:13 | | strohbehn(1) 10:10 | | supplemented(2) 209:3 209:3 | | tell(35) 28:11 28:12 29:4 30:9 31:1 31:18 34:13 36:5 36:14 44:20 45:9 46:20 69:8 69:10 75:24 76:13 79:11 79:20 84:4 98:10 101:24 128:20 135:23 136:4 136:4 146:17 159:16 161:21 164:13 187:13 188:9 188:10 196:18 218:16 224:16 | |
| spend(3) 129:21 173:2 221:3 | | stromberg(1) 5:23 | | support(4) 120:15 122:4 138:20 176:25 | | | |
| spent(3) 20:17 114:17 177:3 | | strong(3) 128:2 171:4 176:23 | | supported(2) 85:11 170:2 | | | |
| sperling(1) 10:25 | | struck(1) 191:12 | | supporting(2) 89:3 226:15 | | | |
| spoke(2) 68:14 68:21 | | structure(7) 28:5 34:23 111:25 114:8 116:19 116:25 117:3 | | suppose(2) 18:24 221:14 | | | |
| sponsoring(1) 169:17 | | | | supposed(1) 182:6 | | | |
| spot(1) 214:19 | | | | sure(37) 18:14 22:2 57:6 57:10 58:24 65:5 76:1 91:14 97:10 135:17 148:19 159:17 162:8 163:18 168:5 173:20 180:3 181:25 182:3 183:23 184:24 186:5 186:25 196:20 200:9 203:17 204:13 205:3 211:17 211:18 213:24 214:2 218:15 222:24 224:25 226:1 229:5 | | | |
| square(1) 2:14 | | structures(1) 111:24 | | | | telling(1) 82:12 | |
| staffing(2) 211:25 212:12 | | struggle(1) 197:23 | | | | tells(1) 208:12 | |
| stamp(3) 143:24 146:13 149:7 | | studied(1) 209:17 | | | | tempered(1) 150:9 | |
| stand(10) 14:10 15:3 19:8 28:15 53:6 103:1 103:7 161:5 167:21 224:19 | | stuff(1) 74:23 | | | | tempest(1) 15:20 | |
| | | sub(2) 62:16 63:9 | | | | ten(14) 19:17 72:13 72:23 147:4 162:18 173:5 176:7 181:8 195:15 195:19 195:21 212:20 222:18 223:13 | |
| | | subject(4) 42:21 76:20 115:22 138:15 | | surprised(1) 205:19 | | | |
| standard(4) 45:21 50:11 50:13 85:16 | | subjective(1) 91:4 | | survive(1) 62:6 | | | |
| standards(7) 50:6 50:7 50:9 50:12 50:16 61:21 176:15 | | subjects(1) 23:4 | | suspect(2) 52:11 13:23 | | | |
| | | submicron(2) 50:9 50:13 | | sustained(2) 155:15 155:17 | | ten-minute(2) 160:2 224:17 | |
| | | submit(4) 11:17 16:11 187:24 199:15 | | suttonbrooch(2) 5:48 5:48 | | ten-percent(1) 212:17 | |
| standing(3) 77:8 103:8 160:15 | | submitted(7) 12:22 168:20 168:21 168:25 169:1 173:8 188:6 | | swap(7) 40:13 42:15 43:3 78:22 79:4 79:9 92:25 | | tender(1) 22:17 | |
| stanley(2) 7:42 208:25 | | | | | | tension(1) 120:2 | |
| stargatt(1) 4:27 | | | | | | tenth(1) 129:3 | |
| stark(1) 6:17 | | subordinate(1) 78:4 | | swing(1) 48:10 | | term(2) 35:19 65:15 | |
| start(20) 16:25 29:8 54:22 103:20 129:9 174:5 182:1 188:16 198:23 200:19 200:24 201:2 204:10 205:2 205:5 205:22 217:21 217:23 224:17 228:12 | | subordinated(17) 41:5 42:2 42:11 43:1 76:6 76:10 77:17 78:13 78:18 78:19 78:23 78:23 79:17 80:3 80:9 91:15 91:16 | | swinging(1) 142:8 | | termed(1) 34:20 | |
| | | | | switch(1) 131:18 | | terminated(1) 27:23 | |
| | | | | sworn(3) 19:10 103:10 160:17 | | | |
| | | | | sylvania(2) 21:7 21:11 | | | |
| started(3) 59:21 107:4 221:4 | | subordination(20) 28:23 42:5 42:8 42:22 43:3 76:17 76:18 76:21 77:4 77:20 79:3 79:9 79:12 91:12 92:10 100:18 101:8 101:11 101:12 101:14 | | synced(1) 215:1 | | | |
| starting(2) 172:25 229:14 | | | | system(4) 45:14 45:15 45:21 60:8 | | | |
| starts(1) 143:19 | | | | systems(1) 22:13 | | | |
| state(8) 71:7 81:10 103:12 104:5 108:18 109:15 160:20 209:2 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**terms**(60) 12:21 23:19 25:6 36:8 36:17 36:21 36:24 39:14 42:21 45:15 47:19 51:11 54:12 62:17 62:22 65:19 66:15 67:7 67:8 68:7 68:23 70:14 73:15 73:25 75:7 77:7 85:20 90:8 99:11 99:14 100:9 101:4 116:4 117:5 118:5 118:7 124:8 124:11 126:13 127:5 127:22 129:19 130:1 131:9 155:20 156:10 178:3 183:21 188:22 189:20 190:24 197:2 197:9 198:24 199:19 204:5 210:25 219:10 226:25

**test**(4) 19:1 93:16 95:24 167:5

**testified**(11) 88:6 116:16 138:16 143:18 149:17 158:17 169:9 170:13 174:16 175:1 218:22

**testify**(6) 17:23 138:17 164:24 170:8 179:2 226:3

**testifying**(5) 22:24 23:5 173:12 173:22 179:4

**testimony**(20) 12:18 15:9 17:2 17:2 17:3 18:19 27:6 53:1 66:5 79:7 79:24 98:4 100:4 100:17 100:19 119:13 134:24 156:2 161:9 177:19

**tfn**(15) 184:22 185:1 185:5 206:9 207:1 207:22 208:3 208:6 208:9 208:10 208:12 208:14 208:16 208:18 209:5

**than**(42) 18:24 28:1 30:16 33:10 33:22 37:25 41:16 49:4 59:18 61:9 75:15 83:12 84:6 91:12 91:23 93:10 95:13 98:18 98:24 111:2 111:6 114:6 123:4 126:23 128:12 128:25 145:9 152:8 152:8 184:18 192:22 197:4 210:3 210:10 222:18 225:3 225:10 226:12 227:6 227:19 228:3 228:15

**thank**(41) 16:17 17:16 19:5 19:21 53:4 53:5 74:12 92:9 97:18 97:19 97:19 97:20 97:23 102:13 102:19 102:21 102:25 103:1 105:5 129:15 135:9 135:10 150:18 150:19 150:23 159:1 159:2 160:2 160:4 160:14 160:23 161:2 161:3 172:1 174:13 179:10 185:22 224:15 224:18 229:8 229:20

**that**(301) 11:12 11:17 11:18 11:23 12:2 12:4 12:11 12:12 12:12 12:14 12:16 12:27 12:25 12:25 13:16 13:22 14:1 14:2 14:3 14:3 14:5 14:6 14:8 14:13 14:22 14:23 14:25 15:5 15:8 15:14 15:15 16:1 16:2 16:9 16:10 16:11 16:13 16:24 17:5 17:6 17:7 17:8 17:8 17:11 17:20 17:23 17:25 18:1 18:3 18:8 18:9 18:10 18:18 18:22 18:25 19:18 20:23 21:13 21:18 21:23 22:2 22:5 22:25 22:25 23:5 23:8 23:23 24:4 24:5 24:23 24:24 25:19 25:22 25:24 26:5 26:10 26:17 26:18 26:21 27:2 27:4 27:12 27:14 27:19 27:22 27:24 28:6 28:23 29:6 29:7 29:13 29:22 29:23 30:1 30:10 30:20 30:25 31:4 31:10 31:14 31:14 31:15 31:20 31:25 32:1 32:2 32:5 32:6 32:6 32:10 32:11 32:14 32:15 33:8 33:9 33:13 33:20 33:25 34:1 34:3 34:19 34:21 34:23 35:15 35:17 35:18 35:20 36:10 36:13 36:21 36:23 36:25 37:2 37:7 37:11 37:14 37:19 37:25 38:3 38:7 38:12 38:13 38:15 38:18 38:22 39:9 39:13 40:3 40:6 40:9 40:11 40:15 40:18 40:19 40:20 41:6 41:8 41:13 41:19 42:2 42:5 42:16 42:17 42:18 43:1 43:6 43:12 43:23 45:1 45:2 45:12 46:8 47:8 47:13 47:16 48:10 48:10 48:14 48:17 48:20 49:3 49:9 49:23 50:10 50:11 50:12 50:15 50:19 51:11 51:18 52:6 52:14 52:22 54:7 54:10 54:18 54:24 55:3 55:23 56:14 57:4 57:6 57:9 57:11 57:15 57:16 57:16 57:24 58:1 58:2 58:12 58:17 58:18 58:21 59:1 59:4 59:6 59:11 59:12 60:1 60:2 60:8 60:9 60:10 60:13 60:14 60:16 60:17 60:17 61:15 61:20 61:20 61:22 62:1 62:4 62:5 62:7 62:11 62:13 63:1 63:2 63:3 63:7 63:9 63:13 63:16 63:17 64:7 64:20 64:22 65:9 65:17 65:22 65:24 66:3 66:5 66:4 66:10 66:12 66:21 67:2 67:9 67:13 67:14 67:17 67:21 67:25 68:4 68:8 68:9 68:14 68:14 68:16 68:19 68:19 68:22 68:25 69:10 69:10 69:13 69:14 69:17 69:20 69:23 70:1 70:8 70:9 70:13 70:14 70:18 70:19 70:20 70:22 70:23 70:24 70:25 71:2 71:3 71:4 71:6 71:7

**that**(301) 71:8 71:9 71:10 71:11 71:11 71:14 71:15 71:15 71:16 71:18 71:19 71:23 71:25 72:1 72:11 72:15 72:21 72:2 72:23 73:8 73:12 73:16 73:16 73:19 73:21 74:1 74:4 74:5 75:8 75:9 75:10 75:10 75:14 75:24 76:1 76:6 76:9 76:13 76:19 76:23 77:1 77:3 77:10 77:13 77:13 77:16 77:24 78:4 78:7 78:9 78:11 78:13 78:16 78:17 78:24 79:6 79:10 79:11 79:13 79:14 79:16 79:18 79:19 79:19 79:20 79:20 79:21 79:23 79:24 79:25 80:3 80:5 80:8 80:11 80:12 80:21 80:22 80:25 81:2 81:2 81:3 81:5 81:7 81:10 81:13 81:14 81:14 81:24 82:2 82:4 82:4 82:8 82:11 82:14 82:17 82:24 83:1 83:2 83:3 83:6 83:9 83:19 84:2 84:4 84:5 84:5 84:13 84:15 84:15 84:16 84:23 85:10 85:15 85:17 85:22 85:24 85:25 86:3 86:7 86:9 86:23 87:1 87:2 87:3 87:8 87:10 87:15 87:16 87:20 87:22 87:23 87:25 88:1 88:2 88:4 88:5 88:6 88:8 88:15 88:15 88:17 88:20 88:22 88:23 88:25 89:3 89:5 89:10 89:13 89:17 89:18 89:19 89:23 89:25 90:1 90:5 90:6 90:6 90:7 90:7 90:10 90:10 90:11 90:12 90:14 90:16 91:3 91:4 91:15 91:16 91:20 91:21 92:1 92:2 92:2 92:6 92:7 92:9 92:18 92:19 92:21 93:4 93:8 93:8 93:9 93:14 93:18 93:19 93:20 93:22 94:3 94:11 94:18 94:21 95:11 95:14 95:21 95:22 95:25 96:4 96:7 96:9 96:15 96:22 96:25 97:2 97:7 97:8 97:10 97:12 97:13 98:3 98:4 98:5 98:7 98:12 98:20 99:4 99:6 99:10 99:12 99:13 99:15 99:16 99:16 99:17 99:19 99:21 100:3 100:12 100:12 100:19 100:21 100:23 101:15 101:17 101:22 102:2 102:7 102:12 103:21 103:21 103:24 103:25 104:12 104:20 105:21 106:1 106:4 106:8 106:12 106:14 106:20 107:10 107:23 108:12 108:12 108:12 108:15 108:19 109:4 109:14 109:1 109:16 109:23 109:25 110:4 110:5 110:6 111:16 112:3 112:3 112:12 112:18 112:19 112:22 113:10 113:13 113:19 113:21 113:23 114:4 114:11 114:13 115:4 115:6 115:7 115:9 115:11 115:16 115:20 116:3

**that**(301) 116:6 116:9 116:16 116:20 116:24 116:25 117:2 117:11 117:12 117:14 117:15 117:16 117:17 117:18 117:20 117:24 118:1 118:13 118:13 118:21 118:28 118:23 119:1 119:3 119:5 119:9 119:10 119:14 119:15 119:18 119:22 120:2 120:4 120:4 120:7 120:10 120:18 120:20 121:1 121:4 121:6 121:8 121:9 121:18 121:21 121:23 122:5 122:13 123:1 123:3 123:17 124:10 124:12 124:16 124:17 124:22 124:23 124:25 125:4 125:7 125:10 125:12 126:2 126:16 126:19 126:21 126:25 127:7 127:8 127:10 127:12 127:21 128:4 128:17 128:23 129:8 129:11 129:12 129:16 129:21 130:1 130:2 130:3 130:7 130:11 130:12 130:15 131:4 131:17 131:19 131:25 132:3 132:7 132:13 132:15 132:16 132:17 132:24 133:9 133:16 133:18 133:22 134:5 134:23 134:24 134:25 135:15 135:16 135:18 136:4 136:7 136:11 137:1 137:3 137:6 137:11 137:12 137:14 137:18 137:19 137:23 137:25 138:2 138:5 138:20 138:23 139:20 140:1 140:2 140:18 141:4 141:4 141:6 141:7 141:12 141:17 142:4 142:18 142:20 142:24 143:2 143:2 143:7 143:9 143:22 144:8 145:8 145:17 145:20 146:4 146:6 146:11 146:23 146:23 147:12 147:15 147:17 147:18 148:6 148:7 148:7 148:7 148:13 148:17 148:17 149:5 149:7 149:12 149:17 149:19 149:23 150:1 150:1 150:13 151:3 151:4 151:9 151:11 151:17 151:22 152:3 152:8 152:18 152:25 153:8 153:10 153:13 154:8 154:23 155:2 155:5 155:9 155:22 155:25 156:2 156:15 156:21 156:24 156:25 157:1 157:5 157:7 157:7 157:10 157:19 157:20 157:21 158:8 158:17 158:19 159:3 159:6 159:7 160:1 162:14 163:16 163:24 164:2 165:19 165:22 166:1 166:4 166:8 166:12 166:12 166:17 166:19 166:22 166:25 167:3 167:5 167:7 167:14 167:15 167:19 168:3 168:7 169:5 169:11 169:14 169:17 169:18 170:3 170:6 170:8 170:15 170:21 170:23 170:24 170:24 171:5 171:7 171:8 171:9 171:11 171:11 171:17 171:18 171:21 171:23 172:13 173:5 173:18 173:20 173:22 174:4 174:5 174:6 174:17 174:20 174:23 175:1 175:5 175:14 175:14 175:17 175:23 175:23 176:22 176:22 176:22 176:23 176:25 177:19 178:1 178:4 178:15 178:17 178:18 179:4 179:7 179:14 180:1 180:6 180:9 180:14 180:15 180:17 180:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that(264)** 180:21 180:22 180:24 181:5 181:18 181:20 182:8 182:9 183:5 183:5 183:7 183:15 183:20 183:22 183:22 183:23 183:23 183:24 184:3 184:7 184:16 184:23 185:2 185:2 185:6 185:8 185:9 185:13 185:14 185:14 186:2 186:6 186:8 186:10 186:17 187:2 187:7 187:15 188:1 188:5 188:25 189:4 189:7 189:10 189:11 189:16 189:23 190:1 190:9 190:14 190:18 191:2 191:3 191:4 191:9 191:15 191:17 191:18 191:21 191:25 192:16 192:24 193:3 193:1 193:14 193:18 193:20 193:23 194:3 194:3 194:4 194:7 194:10 194:16 194:22 194:23 195:1 195:4 195:4 195:5 195:8 195:14 196:1 196:2 196:4 196:4 196:5 196:8 196:14 196:17 196:22 197:3 197:5 197:5 197:5 197:13 197:25 198:15 199:18 200:8 200:12 200:13 200:20 200:20 200:25 201:1 201:10 201:17 201:18 201:21 201:22 202:2 202:6 202:9 202:9 202:12 203:1 203:14 204:1 204:4 204:14 204:16 204:21 205:6 205:10 205:11 205:11 205:19 205:22 206:5 206:8 206:9 206:13 206:15 206:17 206:21 206:22 206:24 207:9 207:19 207:22 207:21 207:23 207:25 208:1 208:5 208:11 208:12 208:16 208:18 209:2 209:5 209:15 209:19 209:21 210:2 210:4 210:9 210:14 210:15 210:17 211:1 211:16 212:18 212:25 213:2 213:5 213:10 213:12 213:13 213:13 213:13 213:19 213:24 214:7 214:10 214:15 214:12 214:13 214:15 214:15 214:24 214:25 215:3 215:17 215:25 216:12 216:1 216:18 216:19 216:23 216:24 217:16 218:2 218:3 218:4 218:4 218:6 218:11 218:13 218:17 218:19 218:21 218:22 218:23 219:5 219:15 219:21 220:5 220:7 220:9 220:13 220:15 220:17 220:18 220:2 221:4 221:8 221:13 221:13 221:15 221:16 221:21 221:24 222:1 222:4 222:6 222:22 223:4 223:8 223:10 223:10 223:12 223:13 223:23 224:1 224:8 225:5 225:8 225:12 225:13 225:15 225:15 225:18 225:24 226: 226:17 226:22 226:23 227:3 227:7 227:9 227:10 227:11 227:15 227:17 227:17 228: 228:7 228:10 228:19 228:20 229:9 230:2

**that'd(1)** 228:22
**that'll(1)** 221:15
**that's(134)** 15:10 16:22 25:11 33:24 36:1 36:19 37:17 39:2 42:13 45:20 53:2 53:22 53:25 54:4 54:21 55:2 55:6 55:7 55:12 55:13 55:17 55:19 56:3 56:4 56:7 56:17 58:12 59:13 62:20 63:6 64:15 64:18 65:14 67:16 67:17 68:17 69:5 69:6 70:5 72:2 72:5 72:7 72:10 72:19 73:1 73:25 74:7 77:2 78:20 78:20 78:25 78:25 79:15 79:18 80:15 81:12 82:5 82:10 82:14 83:5 83:6 83:8 83:25 84:8 84:11 86:10 87:6 88:19 90:12 91:17 93:12 93:17 93:25 94:13 95:6 96:20 97:9 102:3 102:4 143:5 146:11 146:22 150:7 150:17 156:18 158:25 159:13 165:20 165:23 166:2 166:6 166:10 166:14 166:18 166:23 167:1 167:4 168:9 169:2 169:6 169:9 171:10 171:22 172:2 172:7 172:9 172:12 172:22 173:13 173:16 173:19 173:21 174:8 174:19 175:9 177:9 178:22 180:25 187:23 190:21 193:19 200:4 204:20 206:9 211:25 216:16 218:1 218:10 221:4 223:19 227:8 227:12 227:18 229:13

**that's(12)** 106:24 110:6 122:6 122:23 123:1 123:10 124:1 131:7 131:25 135:19 139:4 139:5

**the(301)** 1:1 1:2 1:19 3:4 3:10 4:30 11:2 11:3 11:5 11:8 11:11 11:12 11:14 11:14 11:16 11:17 11:17 11:18 11:19 11:21 11:21 11:21 11:22 11:25 11:25 12:3 12:3 12:5 12:6 12:7 12:8 12:11 12:14 12:16 12:17 12:17 12:17 12:19 12:21 13:2 13:3 13:6 13:6 13:10 13:11 13:16 13:22 13:23 13:23 13:24 14:3 14:4 14:4 14:4 14:5 14:7 14:9 14:11 14:12 14:13 14:14 14:15 14:16 14:19 14:19 14:21 14:22 14:23 15: 15:11 15:12 15:14 15:17 15:18 15:21 15:21 16:1 16:1 16:1 16:4 16:5 16:7 16:12 16:12 16:14 16:16 16:16 16:24 17: 17:3 17:4 17:5 17:6 17:9 17:9 17:12 17:13 17:14 17:15 17:18 17:20 17:21 17:21 17:24 17:24 17:25 18:2 18:2 18:3 18:14 18:5 18:6 18:9 18:10 18:11 18:13 18:14 18:20 18:20 18:21 18:22 18:23 18:24 19:1 19:4 19:7 19:8 19:17 19:21 20:4 20:12 20:13 20:22 20:25 21:4 21:6 21:17 21:22 21:23 21:25 22:3 22:14 22:1 22:19 22:20 22:20 22:21 22:22 22:24 22:24 23:3 23:3 23:4 23:5 23:6 23:6 23:10 23:13 23:16 23:17 23:21 23:23 24: 24:2 24:4 24:15 24:17 24:22 24:23 24:24 24:25 25:5 25:6 25:6 25:7 25:8 25:10 25:12 25:14 25:16 25:16 25:17 25:17 25:18 25:19 25:20 25:21 25:22 25:24 25:25 26:1 26:3 26:3 26:4 26:7 26:8 26:9 26:10 26:10 26:11 26:12 26:12 26:14 26:15 26:16 26:16 26:17 26:18 26:18 26:19 26:22 26:23 27:1 27:1 27:2 27:2 27:10 27:11 27:11 27:12 27:13 27:14 27:15 27:16 27:18 27:19 27:20 27:22 27:22 28:1 28:1 28:4 28:5 28:5 28:7 28:14 28:8 28:8 28:8 28:9 28:10 28:10 28:14 28:14 28:14 28:16 28:16 28:16 28:17 28:23 28:24 29:1 29:1 29:2 29:4 29:5 29:5 29:7 29:8 29:8 29:12 29:13 29:14 29:16 29:16 29:19 29:24 30:1 30:2 30:4 30:4 30:5 30:7 30:9 30:9 30:12 30:13 30:13 30:15 30:16 30:16

**the(301)** 30:17 30:19 30:20 30:20 30:22 30:22 30:24 30:24 31:1 31:6 31:7 31:8 31:8 31:9 31:13 31:14 31:15 31:16 31:18 31:19 31:19 31:20 31:21 31:21 31:22 31:23 31:24 31:25 32:1 32:2 32:3 32:4 32:7 32:8 32:12 32:12 32:13 32:14 32:14 32:15 32:17 32:18 32:18 32:19 32:19 32:20 32:20 32:22 32:22 32:23 33:2 33:3 33:4 33:5 33:5 33:5 33:6 33:9 33:9 33:10 33:10 33:13 33:14 33:14 33:16 33:16 33:18 33:18 33:19 33:20 33:20 33:20 33:21 33:21 33:25 33:25 34:5 34:7 34:9 34:13 34:13 34:14 34:16 34:17 34:17 34:18 34:18 34:18 34:22 34:23 34:23 34:23 34:24 34:24 34:25 34:25 35:1 35:1 35:2 35:5 35:6 35:6 35:9 35:10 35:10 35:13 35:13 35:13 35:14 35:16 35:17 35:25 36:1 36:1 36:3 36:3 36:7 36:7 36:8 36:8 36:9 36:10 36:10 36:12 36:12 36:13 36:13 36:15 36:16 36:16 36:17 36:17 36:18 36:19 36:19 36:20 36:20 36:20 36:23 36:24 36:24 37:1 37:1 37:2 37:2 37:3 37:3 37:3 37:4 37:5 37:5 37:6 37:7 37:8 37:9 37:10 37:10 37:10 37:11 37:12 37:12 37:13 37:14 37:14 37:15 37:17 37:19 37:19 37:20 37:21 37:21 37:22 37:22 37:22 37:23 37:24 37:25 38:1 38:2 38:4 38:6 38:6 38:7 38:8 38:9 38:10 38:18 38:18 38:19 38:19 38:20 38:20 38:21 38:21 38:21 38:24 39:1 39:3 39:7 39:8 39:8 39:8 39:9 39:11 39:12 39:13 39:14 39:14 39:15 39:15 39:16 39:19 39:19 39:19 39:24 39:25 39:25 40:1 40:1 40:2 40:3 40:5 40:13 40:14 40:15 40:16 40:17 40:20 40:21 40:22 40:23 40:23 40:24 40:24 40:25 41:1 41:2 41:4 41:8 41:10 41:10 41:11 41:12 41:12 41:13 41:14 41:15 41:16 41:16 41:18 41:18 41:19 41:22 41:24 41:25 42:1 42:5 42:6 42:6 42:7 42:8 42:8 42:8 42:9 42:10 42:10 42:11 42:13 42:13 42:14 42:15 42:16 42:22 42:23 42:24 42:24 42:25 42:25 43: 43:2 43:3 43:4 43:4 43:5

**the(301)** 43:5 43:6 43:6 43:7 43:8 43:8 43:9 43:9 43:10 43:12 43:13 43:13 43:14 43:15 43:15 43:16 43:20 44:1 44:3 44:5 44:8 44:9 44:10 44:10 44:11 44:11 44:12 44:13 44:14 44:16 44:17 44:21 44:21 44:21 44:22 44:23 44:23 44:24 44:25 44:25 44:25 45:2 45:2 45:2 45:3 45:3 45:4 45:6 45:9 45:11 45:12 45:13 45:13 45:14 45:15 45:17 45:17 45:19 45:19 45:20 45:20 45:24 45:25 46:1 46:1 46:2 46:2 46:2 46:3 46:3 46:5 46:7 46:10 46:11 46:12 46:12 46:14 46:16 46:20 46:20 46:22 46:22 46:22 46:23 46:23 46:25 46:25 47:1 47:1 47:1 47:2 47:4 47:4 47:6 47:6 47:7 47:7 47:8 47:8 47:10 47:16 47:17 47:17 47:19 47:21 47:23 48: 48:4 48:4 48:6 48:6 48:6 48:7 48:8 48:8 48:9 48:12 48:13 48:16 48:22 48:23 48:25 48:25 49:1 49:1 49:1 49:2 49:4 49:4 49:4 49:6 49:7 49:8 49:11 49:11 49:12 49:13 49:13 49:13 49:19 49:19 49:21 49:21 49:22 49:23 49:23 49:24 49:25 50:1 50:2 50:2 50:3 50:3 50:5 50:6 50:9 50:9 50:10 50:12 50:13 50:14 50:14 50:16 50:17 50:17 50:20 50:22 50:22 50:24 50:25 51:1 51:2 51:3 51:6 51:9 51:10 51:10 51:11 51:12 51:13 51:14 51:15 51:17 51:17 51:17 51:20 51:21 51:22 51:22 51:24 51:25 51:25 51:25 52: 52:1 52:2 52:2 52:3 52:5 52:5 52:5 52:7 52:8 52:9 52:9 52:9 52:9 52:10 52:12 52:18 52:20 52:21 52:24 52:25 53:5 53:8 53:9 53:11 53:15 53:24 54:2 54:6 54:8 54:16 54:22 54:25 54:25 55:3 55:4 55:6 55:9 55:9 55:10 55:10 55:11 55:11 55:11 55:13 55:23 55:24 56:1 56:1 56:4 56:7 56:9 56:11 56:11 56:13 56:13 56:14 56:15 56:16 56:20 56:20 56:20 56:21 56:21 57: 57:6 57:7 57:8 57:9 57:10 57:12 57:13 57:17 57:18 57:21 57:21 57:22 57:25 57:25 58:1 58:2 58:5 58:6 58:7 58:8 58:10 58:12 58:13 58:14 58:14 58:15 58:18 58:21 58:24 59:1 59:2 59:3 59:5 59:6 59:14 59:16 59:17 59:17 59:18 59:19 59:20 59:20 59:21

| Word | Page:Line |
|---|---|
| **the**(301) | 59:21 59:23 59:24 60:2 60:2 60:3 60:4 60:4 60:4 60:5 60:6 60:7 60:7 60:1 60:11 60:11 60:12 60:14 60:14 60:14 60:15 60:18 60:18 60:20 60:21 60:23 60:24 60:24 61:1 61:3 61:5 61:17 61:20 61:21 61:22 61:23 61:24 61:25 62:1 62:2 62:5 62:5 62:7 62:7 62:9 62:9 62:11 62:12 62:15 62:16 62:17 62:17 62:18 62:18 62:19 62:19 62:20 62:20 62:21 62:22 63:2 63:3 63:4 63:5 63:9 63:9 63:13 63:13 63:14 63:17 63:20 64:2 64:2 64:3 64:4 64:5 64:7 64:16 64:16 64:17 64:19 64:20 64:22 64:23 64:23 64:24 64:24 64:24 64:24 65:1 65:3 65:9 65:11 65:14 65:15 65:16 65:19 65:22 66:1 66:1 66:5 66:5 66:7 66:10 66:12 66:15 66:16 66:17 66:18 66:19 66:20 66:21 66:22 66:24 67:1 67:3 67:4 67:6 67:7 67:8 67:9 67:10 67:13 67:13 67:15 67:16 67:17 67:17 67:22 67:24 68:1 68:2 68:4 68:5 68:6 68:6 68:7 68:7 68:9 68:10 68:15 68:18 68:19 69:6 69:10 69:12 69:14 69:1 69:18 69:21 70:3 70:10 70:11 70:16 71:7 71:8 71:11 71:12 71:14 71:14 71:15 71:17 71:18 71:18 71:19 71:22 71:22 71:23 71:23 71:23 72:2 72:5 72:5 72:12 72:13 72:13 72:14 72:14 72:15 72:16 72:16 72:17 72:17 72:19 72:20 72:21 72:21 72:22 72:22 72:22 72:23 72:24 72:24 72:25 73:2 73:4 73:5 73:7 73:9 73:9 73:10 73:12 73:13 73:13 73:14 73:14 73:15 73:21 73:22 73:23 74:1 74:3 74:3 74:9 74:9 74:14 74:15 74:16 74:18 74:20 74:23 74:23 75:3 75:3 75:4 75:5 75:5 75:6 75:7 75:11 75:11 75:14 75:14 75:16 75:16 75:17 75:17 75:18 75:18 75:19 75:19 75:20 75:21 75:21 76:6 76:6 76:7 76:9 76:10 76:10 76:14 76:15 76:16 76:16 76:18 76:19 76:20 76:20 76:21 76:24 77:2 77:4 77:7 77:7 77:8 77:17 77:17 77:20 77:20 77:21 77:22 77:25 78:4 78:9 78:11 78:13 78:13 78:14 78:15 78:15 78:16 78:17 78:19 78:22 78:25 79:3 79:3 79:4 79:8 79:9 79:9 79:12 79:14 79:14 79:16 79:17 79:19 79:21 79:21 80:3 80:3 |
| **the**(301) | 80:7 80:8 80:8 80:9 80:9 80:19 80:19 80:20 80:23 80:24 80:25 81:3 81:4 81:4 81:10 81:11 81:16 81:16 81:17 81:20 81:20 82:1 82:2 82:2 82:3 82:4 82:4 82:5 82:5 82:8 82:8 82:8 82:11 82:12 82:12 82:15 82:16 82:23 83:2 83:3 83:3 83:7 83:11 83:12 83:13 83:13 83:14 83:14 83:16 83:17 83:18 83:24 84:5 84:9 84:15 84:17 84:23 85:5 85:6 85:9 85:10 85:10 85:11 85:11 85:12 85:13 85:14 85:14 85:16 85:17 85:17 85:18 85:18 85:20 85:20 85:23 85:24 85:25 86:12 86:15 86:17 86:17 86:19 86:20 86:20 86:21 86:24 86:24 87:1 87:7 87:9 87:10 87:11 87:14 87:15 87:18 87:19 87:19 87:23 87:24 88:5 88:6 88:7 88:10 88:12 88:15 88:23 89:5 89:6 89:10 89:11 89:24 89:24 90:2 90:3 90:5 90:7 90:8 90:9 90:11 90:22 90:22 90:23 90:25 91:1 91:4 91:5 91:8 91:10 91:11 91:12 91:13 91:14 91:15 91:15 91:16 91:17 91:17 91:19 91:20 91:21 91:22 91:22 91:24 92:1 92:2 92:2 92:5 92:7 92:7 92:8 92:10 92:11 92:15 92:17 92:19 92:21 93:3 93:4 93:5 93:8 93:9 93:10 93:11 93:16 93:16 93:19 93:19 93:20 93:23 93:25 93:25 94:2 94:6 94:7 94:9 94:13 94:14 94:15 94:16 94:17 94:18 94:20 94:24 94:24 95:3 95:4 95:4 95:5 95:8 95:14 95:17 95:20 95:21 95:22 95:22 95:23 95:23 95:24 95:24 95:25 96:1 96:2 96:3 96:3 96:4 96:5 96:7 96:7 96:8 96:8 96:9 96:9 96:11 96:12 96:13 96:13 96:14 96:14 96:14 96:15 96:15 96:15 96:19 96:21 97:1 97:4 97:5 97:5 97:12 97:13 97:17 97:21 98:3 98:4 98:6 98:10 98:10 98:11 98:11 98:12 98:13 98:18 98:20 98:20 98:21 98:21 98:22 98:23 98:23 98:24 99:2 99:6 99:11 99:11 99:13 99:14 99:15 99:17 99:19 99:20 99:24 100:8 100:9 100:10 100:10 100:11 100:16 100:1 100:18 100:18 100:18 100:19 100:23 100:24 100:24 100:25 100:25 101:1 101:1 101:2 101:2 101:5 101:6 101:6 101:7 101:8 101:8 101:10 101:10 101:10 101:11 101:11 101:12 101:12 101:12 101:13 101:14 101:15 101:16 101:16 |
| **the**(301) | 101:17 101:17 101:17 101:18 101:18 101:19 101:20 101:20 101:22 101:24 101:25 102:2 102:2 102:7 102:9 102:10 102:12 102:15 102:17 102:19 102:24 103:1 103:4 103:5 103:7 103:8 103:9 103:11 103:11 103:13 103:14 103:1 103:18 103:19 103:21 103:21 103:21 103:22 103:25 104:2 104:5 104:19 104:20 104:22 104:22 104:23 104:24 105:2 105:3 105:5 105:6 105:6 105:8 105:9 105:10 105:10 105:11 105:14 105:15 105:16 105:16 105:17 105:18 105:18 105:19 105:20 105:24 106:3 106:6 106:8 106:8 106:13 106:15 106:16 106:18 106:19 106:21 106:24 106:24 107:3 107:6 107:7 107:7 107:7 107:9 107:10 107:11 107:17 107:19 107:20 107:22 107:22 107:23 107:25 108:1 108:1 108:2 108:3 108:3 108:7 108:8 108:9 108:10 108:11 108:11 108:15 108:15 108:16 108:16 108:17 108:18 108:18 108:20 108:21 108:23 108:25 109:5 109:8 109:8 109:11 109:12 109:13 109:16 109:17 109:18 109:19 109:22 109:24 110:1 110:2 110:5 110:7 110:9 110:10 110:11 110:18 110:22 110:2 110:23 111:8 111:9 111:9 111:11 111:11 111:12 111:13 111:15 111:15 111:21 111:24 111:25 112:1 112:2 112:6 112:7 112:9 112:16 112:16 112:18 112:19 112:2 112:21 112:23 112:24 112:24 112:25 113:6 113:14 113:16 113:17 113:18 113:1 113:23 114:1 114:3 114:4 114:6 114:12 114:12 114:13 114:14 114:14 114:14 114:17 114:17 114:19 114:20 114:20 114:21 114:23 114:23 114:24 114:25 115: 115:8 115:11 115:11 115:19 115:21 115:25 116:2 116:3 116:4 116:5 116:5 116:9 116:9 116:10 116:10 116:13 116:15 116:16 116:17 116:18 116:19 116:19 116:21 116:25 117:2 117:3 117:3 117:5 117:5 117:7 117:7 117:11 117:13 117:18 117:23 117:24 118:5 118:5 118:7 118:7 118:8 118:11 118:15 118:17 118:19 118:2 118:23 119:1 119:3 119:7 119:9 119:9 119:12 119:13 119:14 119:14 119:18 119:20 119:21 120:1 120:5 120:8 120:9 120:9 120:10 120:12 120:12 120:13 120:1 120:14 120:15 120:16 120:16 120:19 120:22 121:1 121:3 121:3 121:4 121:11 121:12 121:14 121:15 121:16 121:25 122: 122:3 122:3 122:5 122:6 122:7 122:11 122:15 122:16 122:16 122:17 122:17 122:18 122:21 122:23 122:25 123:3 123:4 123:5 123:6 123:7 123:7 |
| **the**(301) | 123:9 123:16 123:17 123:17 123:18 123:19 123:20 123:21 123:21 123:23 123:24 123:24 123:24 124:1 124:1 124:3 124:8 124:11 124:15 124:19 124:20 124:20 124:21 124:23 124:23 124:24 124:24 125:1 125:2 125:3 125:4 125:7 125:13 125:14 125:19 125:20 125:20 125:21 125:25 125:25 126:4 126:8 126:9 126:10 126:10 126:10 126:14 126:16 126:16 126:17 126:21 126:23 126:24 126:24 126:25 127:2 127:4 127:7 127:7 127:9 127:14 127:18 127:20 127:22 127:24 128:6 128:8 128:9 128:10 128:11 128:22 129:1 129:1 129:2 129:4 129:4 129:4 129:7 129:10 129:11 129:12 129:13 129:16 129:17 129:18 129:18 129:20 129:20 129:22 129:25 129:25 130:1 130:4 130:4 130:9 130:13 130:14 130:23 130:25 131:2 131:7 131:8 131:11 131:13 131:14 131:19 131:19 131:22 132:9 132:10 132:11 132:13 132:14 132:16 132:20 132:25 132:25 133:1 133:3 133:4 133:6 133:10 133:11 133:12 133:14 133:15 133:23 133:24 134:1 134:2 134:3 134:5 134:6 134:9 134:9 134:12 134:18 134:21 135:6 135:9 135:10 135:12 135:13 135:14 135:14 135:16 135:18 135:20 135:23 135:25 136:4 136:6 136:7 136:9 136:20 136:23 136:24 136:24 136:25 137:7 137:8 137:10 137:11 137:15 137:17 137:22 138:2 138:8 138:15 138:15 139:1 139:1 139:5 139:6 139:6 139:13 139:14 139:16 139:17 139:20 139:21 140:1 140:9 140:13 140:16 140:21 140:22 140:23 140:25 141:4 141:4 141:7 141:9 141:10 141:12 141:20 141:21 141:24 142:1 142:19 142:19 142:20 142:20 142:21 142:21 142:22 142:25 143:3 143:6 143:7 143:8 143:9 143:19 143:19 143:21 143:24 144:2 144:7 144:7 144:9 144:14 144:15 144:17 144:23 144:23 144:25 145:1 145:3 145:4 145:8 145:8 145:9 145:19 145:20 145:20 145:23 146:1 146:2 146:2 146:3 146:5 146:6 146:13 146:17 146:22 146:23 146:24 146:25 147:1 147:2 147:2 147:4 147:5 147:6 147:14 147:17 147:17 147:19 147:21 147:23 147:23 147:24 148:1 148:2 148:4 148:5 148:5 148:12 148:13 148:16 148:20 148:22 149:1 149:3 149:5 149:9 149:9 149:10 149:12 149:15 149:17 149:18 149:18 149:19 149:19 150:1 150:1 150:4 150:7 150:9 150:10 150:15 150:19 150:20 150:22 150:24 151:2 151:7 151:8 151:9 151:9 |

| Word | Page:Line |
|---|---|

**the**(301) 151:10 151:10 151:14 151:16 151:19 151:22 151:23 152:1 152:3 152:7 152:12 152:20 152:20 152:21 152:23 153: 153:5 153:6 153:9 153:9 153:9 153:12 153:13 153:14 153:16 153:19 153:19 153:25 153:25 154:1 154:3 154:7 154:7 154:10 154:11 154:13 154:13 154:14 154:16 154:16 155:3 155:5 155:5 155:11 155:12 155:15 155:17 155:19 155:20 155:22 155:25 155:25 156:4 156:7 156:8 156:9 156:12 156:18 156:18 156:19 156:2 157:10 157:10 157:23 157:25 158:5 158: 158:7 158:12 158:18 158:18 158:21 158:2 159:1 159:2 159:5 159:7 159:7 159:12 159:14 159:21 159:21 159:22 159:24 160: 160:7 160:8 160:11 160:13 160:15 160:16 160:18 160:20 160:22 160:23 161:1 161:3 161:5 161:5 161:6 161:8 161:17 162:7 162:9 162:11 162:25 163:9 163:20 163:23 164:5 164:14 164:25 165:1 165:4 165:5 165:6 165:9 165:18 166:7 166:12 166:15 166:19 166:21 166:24 167:6 167:6 167:10 167:11 167:12 167:12 167:14 167:19 167:24 167:24 167:25 168:3 168:12 168:1 168:23 169:4 169:18 169:19 169:21 169:24 170:2 170:5 170:10 170:12 170:12 170:13 170:16 170:20 170:25 171:2 171:7 171:9 171:12 171:12 171:15 171:20 171:2 172:2 172:5 172:7 172:7 172:10 172:10 172:11 172:11 172:13 172:15 172:15 172:20 172:23 173:4 173:14 173:17 173:1 173:21 173:25 174:3 174:3 174:4 174:9 174:12 174:22 174:23 175:3 175:3 175:4 175:4 175:5 175:8 175:10 175:10 175:11 175:13 175:15 175:15 175:23 176:1 176:1 176:10 176:20 176:24 177:2 177:2 177:5 177:11 177:15 177:20 177:22 178:1 178:4 178:8 178:8 178:13 178:15 178:16 179:1 179:3 179:5 179:5 179:6 179:7 179:17 179:18 179:20 179:24 179:24 179:25 180:2 180:3 180:4 180:11 180:12 180:13 180:15 180:16 180:18 180:25 181:2 181:5 181:6 181:9 181:10 181:11 181:20 181:20 181:2 181:23 181:23 182:1 182:2 182:4 182:6 182:7 182:10 182:11 182:14 182:16 182:2 182:23 182:25 183:3 183:4 183:5 183:6 183:8 183:10 183:12 183:14 183:16 183:1 183:17 183:18 183:18 183:24 183:25 184:1 184:3 184:6 184:11 184:16 184:21 184:21 184:23 184:25 185:5 185:6 185:10 185:12 185:15 185:19 185:21 185:25 186: 186:7 186:7 186:8 186:10

**the**(301) 186:13 186:13 186:16 186:16 186:17 186:19 186:19 186:21 186:22 186:23 187:6 187:8 187:9 187:9 187:12 187:13 187:14 187:17 187:20 187:21 187:23 187:25 188:3 188:4 188:6 188:9 188:10 188:14 188:17 188:18 188:19 188:20 188:21 188:22 188:23 188:24 188:24 188:25 189:1 189:3 189:4 189:4 189:6 189:8 189:9 189:9 189:10 189:12 189:13 189:13 189:14 189:15 189:16 189:18 189:19 189:19 189:19 189:20 189:21 189:23 189:25 190:1 190:2 190:4 190:5 190:6 190:7 190:7 190:11 190:18 190:16 190:17 190:17 190:17 190:18 190:21 190:21 191:2 191:2 191:3 191:4 191:5 191:7 191:10 191:14 192:5 192:9 192:11 192:12 192:17 192:18 192:21 192:23 192:24 193:4 193:5 193:6 193:11 193:13 193:16 193:17 193:18 193:20 193:22 193:23 193:25 194:2 194:4 194:5 194:7 194:11 194:12 194:14 194:16 194:1 194:18 194:19 194:20 194:21 194:22 194:22 194:25 194:25 195:5 195:5 195:10 195:12 195:13 195:14 195:15 195:9 195:10 195:12 195:13 195:14 195:1 195:18 195:19 195:22 196:1 196:4 196:7 196:12 196:13 196:13 196:17 196:21 196:22 196:23 196:24 196:25 196:25 197: 197:10 197:12 197:14 197:16 197:18 197:20 198:3 198:9 198:9 198:10 198:11 198:13 198:14 198:16 198:21 198:22 198:22 198:24 199:1 199:2 199:2 199:4 199:5 199:6 199:6 199:8 199:6 199:6 199:7 199:7 199:10 199:10 199:14 199:15 199:20 199:21 200:3 200:3 200:4 200:7 200:13 200:15 200:17 200:20 200:23 200:24 200:25 201:2 201:3 201:3 201:6 201:6 201:7 201:7 201:14 201:14 201:17 201:17 201:19 201:22 202:1 202:1 202:2 202:2 202:7 202:7 202:8 202:8 202:13 202:14 202:15 202:16 202:18 202:18 202:19 202:21 202:22 202:23 202:23 202:24 202:24 202:25 203:2 203:3 203:3 203:3 203:4 203:5 203:11 203:12 204:1 204:3 204:4 204:6 204:7 204:11 204:13 204:15 204:15 204:17 204:18 204:19 204:19 204:20 204:20 204:22 204:22 204:23 204:24 204:24 204:24 204:25 205:1 205:6 205:6 205:7 205:8 205:12 205:18 205:21 205:22 205:25 205:25 206:1 206:3 206:4 206:4 206:6 206:7 206:10 206:10 206:11 206:13 206:14 206:14 206:15 206:16 206:17 206:19 206:21 206:22 206:23 207:5 207:16 207:21 207:21 207:2 208:2 208:3 208:6 208:7 208:10

**the**(270) 208:13 208:19 209:7 209:13 209:13 209:14 209:14 209:15 209:16 209:17 209:17 209:20 209:21 209:23 209:23 209:25 210:1 210:1 210:2 210:3 210:4 210:6 210:6 210:7 210:11 210:12 210:12 210:13 210:14 210:14 210:21 211:7 211:2 211:3 211:3 211:5 211:8 211:11 211:12 211:15 211:15 211:16 211:18 211:18 211:19 211:25 212:1 212:1 212:2 212:4 212:8 212:11 212:11 212:15 212:16 212:19 212:20 212:25 213:3 213:4 213:6 213:8 213:8 213:10 213:14 213:15 213:19 213:25 214:2 214:3 214:17 214:18 214:20 214:21 214:21 214:23 214:24 215:1 215:5 215:6 215:12 215:13 215:14 215:17 215:15 215:22 215:24 215:25 216:2 216:7 216:7 216:9 216:14 216:14 216:15 216:17 217:7 217:9 217:10 217:11 217:11 217:12 218:1 218:2 218:4 218:5 218:7 218:12 218:12 218:16 218:16 218:16 218:18 218:21 219:1 219:3 219:5 219:7 219:11 219:14 219:18 219:18 219:18 219:19 219:19 219:19 219:20 219:21 219:25 219:25 220:6 220:9 220:13 220:14 220:20 220:25 221:2 221:8 221:9 221:12 221:13 221:13 221:14 221:17 221:17 221:18 221:19 221:21 221:22 221:24 221:25 222:2 222:8 222:8 222:10 222:11 222:14 222:18 222:21 222:21 222:24 222:25 222:25 223:1 223:2 223:3 223:3 223:6 223:6 223:13 223:15 223:17 223:18 223:1 223:21 223:22 223:24 223:25 224:1 224:2 224:4 224:5 224:5 224:6 224:7 224:8 224:9 224:10 224:11 224:13 224:16 224:1 224:22 224:22 224:24 224:25 225:6 225:7 225:7 225:10 225:11 225:12 225:12 225:1 225:20 225:20 225:21 225:22 225:25 226:2 226:4 226:9 226:10 226:12 226:15 226:17 226:21 226:23 226:24 226:24 226:25 227:2 227:3 227:6 227:7 227:8 227:8 227:15 227:16 227:20 227:20 227:2 227:23 227:23 227:24 227:25 227:25 228:1 228:1 228:2 228:2 228:3 228:4 228:5 228:8 228:9 228:10 228:11 228:14 228:17 228:18 228:19 228:20 228:21 228:22 228:25 229:2 229:6 229:7 229:10 229:12 229:14 229:17 229:21 230:2 230:3 230:3 230:4

**their**(77) 13:25 14:15 15:16 16:10 16:11 18:6 20:18 20:24 23:6 28:2 29:10 29:17 31:4 31:21 32:3 32:21 41:22 68:22 72:13 92:3 92:3 92:4 95:2 115:5 118:22 119:8 145:4 159:10 163:2 178:10 178:12 178:14 178:15 178:19 181:16 187:17 189:8 189:1 191:17 191:19 192:8 192:16 192:22 192:22 192:24 193:15 193:18 193:22 197: 199:18 199:19 200:4 205:17 206:12 207: 207:13 207:14 207:15 209:1 212:6 213:11 213:16 213:18 214:6 214:7 214:8 214:9 214:11 214:22 216:22 216:22 217:19 218:25 219:6 221:4 221:7 223:5

**them**(58) 12:11 12:23 13:15 13:24 13:25 19:19 32:3 38:24 47:18 47:19 47:21 48:7 48:9 49:5 49:6 51:5 78:23 85:19 96:3 96:6 103:24 110:1 113:25 115:4 117:14 148:4 163:23 168:11 168:18 168:21 168:2 168:24 168:25 169:1 169:20 175:23 176:17 190:1 191:18 192:14 192:18 196:1 199:23 202:13 202:17 203:22 203:24 204:2 206:24 211:9 211:12 211:13 214:18 214:20 222:17 225:22 226:1 228:22

**themselves**(2) 18:15 62:24

**then**(66) 12:6 16:7 20:18 28:21 28:23 29:13 31:17 32:2 34:25 35:18 37:1 38:13 40:2 41:14 46:24 50:3 58:9 58:16 67:15 68:19 71:10 72:14 107:5 107:6 107:14 111:14 120:14 127:2 141:2 151:16 159:25 171:17 173:23 180:6 181:13 184:1 186:19 188:9 190:3 190:19 192:14 192:17 196:2 197:18 197:22 200:12 201:19 201:20 201:22 202:12 205:7 205:22 208:10 208:13 208:15 214:15 214:16 214:20 219:10 219:11 219:19 221:9 221:10 224:5 224:17 229:1

**theories**(1) 63:16

**theory**(3) 175:12 188:2 218:8

**there**(168) 12:24 14:25 22:22 24:15 27:24 28:21 29:11 29:13 30:17 30:18 30:21 34:7 36:25 37:1 38:7 40:13 40:14 40:14 42:15 42:20 46:20 46:21 58:6 58:10 59:22 60:24 62:2 63:12 63:22 65:1 65:9 65:10 66:4 68:7 70:16 70:24 73:3 73:4 74:25 77:20 81:12 83:21 83:23 84:2 84:2 84:3 88:6 90:21 90:23 91:1 93:20 93:22 93:24 96:2 96:23 96:23 96:24 97:21 99:20 100:10 100:17 100:23 101:12 101:18 104:14 104:15 107:7 107:14 107:17 108:2 108:22 109:1 110:11 111:18 113:4 113:19 113:20 114:5 114:6 115:8 116:24 117:8 117:23 119:2 123:6 124:2 124:21 125:18 129:5 130:13 131:13 131:23 136:1 137:16 140:24 144:2 144:3 144:22 144:25 148:15 155:9 161:19 163:1 163:15 165:1 171:7 174:1 175:7 180:15 180:19 180:20 180:24 181:6 181:8 183:12 183:17 183:21 184:3 184:7 185:19 187:16 187:19 188:13 189:20 191:17 191:24 192:4 194:20 196:11 196:24 196:24 197:15 197:17 201:1 202:14 203:21 203:25 205:4 205:10 205:17 206:20 207:9 209:9 209:11 209:11 209:12 210:8 210:9 215:6 215:6 215:8 215:8 216:18 217:10 218:2 218:8 218:13 219:24 220:2 220:5 220:21 221:16 225:25 227:1 227:14 227:18 228:3 228:21

**there's**(53) 12:15 14:2 14:6 22:23 29:2 30:25 31:17 32:13 40:2 40:8 46:5 50:12 60:12 60:18 73:4 80:23 98:6 101:13 140:22 141:2 147:7 152:23 152:24 156:1 159:5 159:8 169:13 170:6 171:6 176:21 176:21 177:11 183:19 186:10 195:1 195:7 196:5 196:7 197:22 203:21 206:8 210:8 217:22 218:5 218:9 219:17 219:17 219:19 220:7 220:24 222:3 222:14 222:25

**therefore**(3) 18:11 96:1 207:22

**there's**(26) 108:5 108:19 110:17 112:4 114:7 114:8 114:9 114:16 114:24 114:25 115:6 115:21 117:7 119:9 120:3 121:20 123:21 124:2 124:15 125:25 127:11 130:6 131:14 131:15 133:14 133:22

**these**(60) 12:21 17:18 29:4 31:19 38:5 38:6 38:11 38:22 47:13 48:23 49:5 50:4 50:5 50:7 50:18 50:19 51:4 59:14 59:19 60:5 61:7 61:10 61:14 80:25 94:18 111:24 112:7 126:6 126:14 127:5 130:11 132:21 144:6 144:6 145:4 145:20 146:19 147:19 157:9 157:9 163:21 165:8 168:10 168:15 170:3 170:17 171:10 178:20 179:20 193:2 193:25 194:3 203:15 204:11 207:1 210:10 218:21 225:12 226:19 227:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **they**(152) 12:20  12:20  14:18  14:23  15:4  15:7  15:7  15:8  15:10  15:13  15:15  15:16  16:2  16:3  16:10  17:5  17:9  32:15  35:18  35:18  46:9  47:15  48:7  49:3  50:20  50:20  52:14  52:23  59:24  61:3  67:15  68:7  71:16  72:14  84:18  86:17  86:19  86:21  91:16  91:20  95:3  98:16  99:7  99:9  99:21  100:8  106:7  115:5  115:14  117:21  118:23  118:25  118:25  119:10  126:12  127:6  127:6  129:18  135:18  139:11  139:12  144:14  144:24  145:6  158:4  159:11  159:11  168:10  171:7  171:8  171:8  171:13  176:4  179:6  179:16  180:6  181:7  184:6  184:9  189:7  189:11  189:16  190:1  190:18  190:22  191:1  192:9  192:10  192:14  192:20  194:7  194:7  194:9  197:2  198:6  199:18  199:20  199:21  199:24  200:2  200:10  200:13  200:14  201:12  201:14  201:16  202:6  203:18  203:21  203:22  205:19  206:12  207:13  207:14  207:16  207:20  208:20  211:20  211:20  212:3  212:5  212:6  212:20  214:4  214:4  214:10  214:12  214:13  214:17  214:17  215:9  216:12  216:13  216:14  216:23  217:21:4  221:6  223:7  223:7  225:13  226:2  227:3  227:4  227:6  227:7  227:9  227:25  228:21  229:10<br><br>**they're**(6) 78:20  164:2  176:2  194:7  197:3  215:18<br><br>**they've**(2) 22:7  22:11<br>**they're**(2) 116:17  130:13<br><br>**thin**(1) 174:6<br><br>**thing**(11) 14:14  62:20  65:11  65:16  73:22  192:24  199:8  204:22  206:19  212:1  226:15<br><br>**things**(24) 14:9  16:1  16:3  18:15  18:25  96:22  113:16  117:22  118:25  127:16  134:1  134:19  156:25  157:21  159:6  164:11  167:20  176:15  189:23  202:12  220:24  222:  222:6  226:14<br><br>**think**(78) 12:23  12:24  14:17  15:23  16:11  17:11  17:20  18:9  22:24  51:3  64:2  64:11  65:14  68:4  75:13  79:21  80:14  88:17  92:15  94:1  95:21  96:20  96:20  97:9  100:8  101:3  102:2  108:19  110:22  111:1  111:6  111:17  112:9  113:10  113:14  118:3  118:4  123:5  133:19  133:21  134:2  137:15  142:5  145:7  148:12  148:12  148:13  148:22  158:2  158:17  159:16  159:17  170:7  171:1  172:5  174:2  175:3  177:9  177:24  178:24  179:8  180:10  183:4  183:21  184:18  195:23  199:11  207:21  208:22  208:25  213:2  215:16  221:6  221:25  222:5  226:21  227:2  227:10<br><br>**thinking**(3) 144:7  176:16  217:1<br>**third**(18) 32:6  32:8  35:25  36:11  38:17  39:22  40:1  45:22  58:9  65:23  78:16  91:17  112:18  114:6  114:12  157:15  162:3  209:3<br><br>**third-party**(1) 113:7<br>**thirty**(6) 29:21  164:3  181:7  195:13  197:12  197:13 | | **this**(288) 14:7  14:13  15:12  15:19  15:25  17:1  17:17  17:12  18:14  18:18  23:14  23:24  24:8  24:11  24:12  24:21  27:12  27:13  27:23  28:11  28:11  28:13  28:14  32:11  32:24  33:  33:7  33:8  34:14  34:14  34:16  34:22  35:4  35:13  35:14  36:5  36:6  36:7  36:17  37:4  37:24  39:2  39:4  39:8  40:5  41:10  43:20  44:20  44:20  44:23  45:7  45:10  45:11  45:  45:16  46:7  46:16  47:4  48:2  48:3  48:17  48:25  49:2  49:16  49:20  49:21  50:10  51:9  51:10  51:21  51:24  51:24  52:15  54:1  54:15  54:24  55:20  56:8  66:8  66:8  66:10  67:18  68:12  73:15  74:14  75:23  77:15  88:11  91:  95:4  95:9  95:15  97:24  98:14  98:19  99:6  100:5  103:5  106:25  107:20  108:21  110:12  110:24  113:17  114:17  114:18  115:2  118:22  119:18  120:18  120:19  120:23  120:25  121:1  121:13  121:13  121:14  121:15  121:1  121:25  122:3  122:6  122:15  122:16  123:10  124:7  124:8  124:10  124:19  124:20  126:5  126:18  127:8  127:14  127:21  128:14  129:9  130:10  130:15  130:22  131:7  132:2  132:3  132:24  133:1  133:5  133:10  133:14  134:3  134:4  134:14  135:1  135:5  136:13  136:20  137:11  138:18  140:9  140:12  141:8  143:12  143:15  143:21  144:9  144:12  144:13  144:2  144:25  145:10  145:14  145:19  146:1  147:  147:7  148:23  149:9  151:8  151:16  152:10  153:8  153:12  153:18  154:22  155:11  155:2  157:4  157:23  158:4  159:4  159:23  163:18  164:9  164:23  165:3  165:4  167:6  167:23  170:4  170:20  171:10  171:20  172:4  172:14  173:11  174:6  176:6  176:7  176:13  177:3  177:24  178:13  178:24  179:3  179:4  179:13  179:19  180:23  181:4  184:20  185:17  186:2  187:5  191:3  191:6  192:5  193:7  193:14  193:15  196:7  196:18  197:1  197:3  197:13  193:19  200:10  202:13  202:21  202:24  202:25  203:9  203:10  203:17  203:24  204:1  205:9  205:18  205:23  206:4  208:5  208:8  209:11  210:5  210:17  210:23  210:24  210:22  211:4  211:7  211:17  211:19  212:2  213:21  214:1  215:19  216:13  216:15  216:21  217:4  217:24  217:13  217:17  219:14  220:1  221:6  221:16  221:24  222:11  225:2  225:7  225:14  226:10  226:16  226:20  227:4  227:5  227:7  227:7  229:6<br><br>**thomas**(1) 3:27<br>**thorough**(1) 98:21<br>**those**(121) 12:24  14:6  14:10  14:18  14:21  18:18  19:15  19:16  21:10  22:1  24:24  25:18  27:9  27:9  29:20  31:1  31:6  31:8  31:10  31:18  33:19  34:19  35:24  37:4  37:5  37:9  38:9  39:5  39:16  39:18  40:25  41:13  45:23  46:8  49:14  52:16  57:4  59:23  62:18  62:22  66:19  71:14  84:4  84:9  84:13  86:21  86:23  87:1  87:24  90:2  90:7  91:4  91:21  91:23  98:15  99:7  100:13  100:15  104:16  110:3  111:5  113:3  113:3  113:5  113:6  115:14  118:21  118:24  119:7  123:10  123:15  123:1  125:23  126:11  127:17  130:12  130:25  134:8  134:23  137:22  142:8  147:17  150:9  153:2  153:4  153:7  157:12  158:3  164:11  164:11  169:16  169:18  176:8  180:5  181:19  182:14  183:8  184:5  184:8  184:9  186:3  186:15  187:7  188:5  188:10  192:23  192:25  196:3  196:18  203:24  204:10  205:1  206:11  215:7  217:21  217:23  221:10  222:20  224:10  225:20  226:18<br><br>**though**(3) 80:12  132:9  138:8<br>**thought**(14) 73:12  96:18  158:2  159:18  178:13  186:6  199:19  199:21  200:5  212:21  215:5  217:5  225:2  226:24<br><br>**thousand**(1) 177:6 | | **three**(50) 17:2  19:12  23:23  40:12  42:22  46:20  51:21  52:2  54:16  84:10  87:14  104:15  107:21  109:18  111:12  113:20  122:12  123:13  126:9  126:10  126:16  126:1  128:15  128:20  128:22  129:2  129:5  135:15  138:14  144:3  145:5  148:9  148:11  150:1  153:7  156:6  156:10  161:25  170:6  196:10  203:19  203:24  204:23  205:1  211:20  212:7  212:8  214:17  215:6  219:17<br><br>**three-fold**(1) 109:11<br>**through**(51) 19:18  20:21  21:15  28:2  29:4  29:6  29:16  29:23  30:8  31:3  31:14  51:4  51:22  59:16  83:14  87:4  118:5  118:7  123:18  123:23  126:7  128:24  129:25  132:6  139:1  140:9  143:6  159:7  162:14  175:1  176:16  180:14  188:8  188:23  188:24  188:2  193:20  194:23  195:4  199:4  201:4  204:4  204:8  208:22  213:16  214:21  216:19  217:1  218:10  219:1  221:22<br><br>**throughout**(5) 20:20  23:17  102:5  193:23  204:2<br><br>**thursday**(1) 149:15<br>**thus**(2) 50:21  94:20<br>**tied**(3) 113:22  142:3  142:5<br>**time**(51) 11:13  13:6  14:16  20:22  20:23  30:4  30:6  36:18  37:9  44:13  51:3  65:6  66:21  67:14  67:23  67:25  68:21  69:18  69:21  71:16  71:17  81:16  87:7  87:10  87:12  90:7  93:5  98:25  107:9  107:20  113:19  115:2  121:17  125:19  133:10  136:1  141:6  141:7  144:8  146:1  148:17  150:18  151:22  152:3  155:5  155:8  155:10  163:20  169:24  172:7  172:13  173:2  179:3  179:5  186:1  186:1  188:8  194:10  197:7  199:18  212:25  213:1  225:12  225:17  227:2  228:10  228:14<br><br>**timeframe**(7) 68:18  119:21  144:16  146:23  205:13  205:15  205:16<br><br>**timely**(1) 134:21<br>**times**(16) 84:23  85:6  105:19  106:13  106:16  106:16  106:17  106:19  107:3  108:2  109:17  114:25  120:10  197:4  197:4  215:2<br><br>**timing**(4) 27:1  213:3  221:3  221:5<br>**title**(2) 20:3  161:14<br>**titled**(6) 28:15  28:18  83:24  122:12  143:25  144:3<br><br>**tms**(2) 222:16  222:23<br>**today**(13) 14:9  95:5  96:2  96:22  111:7  159:16  159:20  166:20  212:19  226:1  226:1  226:20  228:15<br><br>**together**(13) 16:13  16:16  30:20  32:20  39:18  100:12  100:15  136:25  151:10  166:1  189:14  222:17  226:14<br><br>**told**(18) 57:12  60:1  64:21  68:13  70:23  71:6  71:6  71:11  75:9  79:11  79:24  85:22  86:7  89:17  94:7  95:15  142:12  165:7<br><br>**tolled**(1) 21:1<br>**tomorrow**(5) 14:14  159:21  226:4  228:13  229:18<br><br>**tony**(1) 104:18<br>**too**(7) 74:20  89:21  133:16  146:11  148:7  197:14  211:4<br><br>**took**(14) 32:2  36:16  52:21  73:21  77:3  90:  99:1  125:23  143:6  186:7  190:4  193:25  217:13  218:23<br><br>**top**(9) 36:12  45:4  46:22  93:23  124:1  127:20  144:2  193:16  204:22 | | **topic**(3) 18:20  137:6  216:2<br>**topics**(2) 145:24  215:17<br>**torres**(2) 2:26  9:14<br>**total**(41) 15:5  16:8  36:13  37:8  40:3  41:22  43:2  55:6  124:4  125:16  125:16  125:17  125:18  141:10  153:10  163:19  163:22  175:20  177:1  185:7  185:10  187:14  189:6  193:22  194:23  195:5  198:13  203:4  204:13  204:14  206:17  215:19  218:18  218:18  219:16  219:20  220:4  222:19  223:19  224:13  224:14<br><br>**touch**(1) 54:24<br>**touched**(2) 64:11  64:12<br>**towards**(1) 122:5<br>**tower**(1) 112:2<br>**toxic**(1) 110:15<br>**trade**(8) 40:15  42:17  43:5  79:14  79:17  80:3  92:21  101:16<br><br>**traded**(3) 107:18  188:5  214:25<br>**trader**(1) 224:23<br>**trading**(2) 187:23  187:25<br>**traditionally**(1) 207:10<br>**training**(1) 53:18<br>**transaction**(25) 49:25  49:25  62:2  62:2  64:17  118:17  163:15  168:4  200:16  207:14  207:15  209:8  209:10  209:12  209:14  209:22  209:23  209:24  210:13  210:16  212:5  213:5  214:16  214:23  215:2<br><br>**transactions**(25) 44:15  46:9  59:15  59:24  60:5  61:2  61:2  94:16  116:8  116:25  163:19  163:22  163:23  169:14  196:7  201:9  201:18  205:7  210:7  211:11  212:16  214:21  215:8  223:6  223:12<br><br>**transcriber**(1) 230:8<br>**transcript**(3) 1:18  1:50  230:3<br>**transcription**(1) 1:43  1:50  184:8<br>**transfer**(1) 61:8<br>**transferred**(1) 45:17<br>**transfers**(1) 61:11<br>**transmitter**(1) 112:2<br>**travel**(3) 209:14  210:1  210:3<br>**trb**(1) 41:10<br>**treasury**(1) 21:13<br>**treat**(4) 50:22  77:4  85:11  124:11<br>**treated**(3) 46:9  78:20  103:24<br>**treating**(2) 42:1  77:16<br>**treatment**(9) 42:5  75:10  75:14  75:16  75:17  100:18  101:11  101:12  135:18<br><br>**trend**(3) 110:11  126:10  129:8<br>**trend-wise**(1) 126:12<br>**trends**(3) 130:18  130:11  133:21<br>**trends"**(2) 126:1  127:12<br>**trial**(3) 11:22  13:23  14:5<br>**triangulate**(1) 196:2<br>**tribune**(66) 1:8  6:21  6:35  28:6  28:15  28:17  28:25  29:6  30:17  37:2  37:16  37:16  37:17  45:23  50:1  53:23  54:5  54:9  57:17  57:17  57:23  59:8  59:12  63:5  63:15  63:21  85:7  85:8  98:7  104:9  104:10  104:11  104:22  104:23  105:15  105:16  106:22  107:15  107:21  108:3  108:17  109:7  109:15  111:9  111:16  112:22  131:11  132:6  132:12  132:14  132:15  133:13  135:25  136:8  136:24  143:25  151:10  164:25  171:21  174:22  192:7  192:18  192:21  213:1  222:15  223:25<br><br>**tribune's**(5) 47:11  74:14  84:6  193:2  203:8<br>**tribune's**(6) 7:17  109:9  111:25  112:6  114:15  130:21<br><br>**tricadia**(2) 9:44  9:44<br>**tried**(5) 128:9  178:14  186:6  186:9  208:6<br>**tries**(1) 194:19<br>**trifecta**(1) 54:16<br>**triggering**(1) 75:19 |

| Word | Page:Line |
|---|---|
| troubled(1) | 214:11 |
| true(4) | 17:23 134:8 135:19 227:17 |
| trump(1) | 8:42 |
| trust(6) | 4:4 6:14 9:14 53:15 116:3 117:24 |
| trustee(15) | 3:4 3:4 26:2 26:9 27:19 30:12 30:15 30:15 41:17 71:23 85:18 96:18 96:21 97:3 102:8 |
| try(11) | 14:8 63:8 65:6 91:2 106:7 110:1 110:24 113:24 195:25 196:2 206:7 |
| trying(11) | 71:7 108:24 113:21 125:2 153:17 154:3 191:5 219:15 219:16 219:21 221:22 |
| tuliano(1) | 226:11 |
| turn(65) | 24:5 24:11 28:9 32:6 32:22 33:23 33:25 34:1 36:3 39:1 43:19 43:23 44:19 45:6 46:17 47:23 48:16 49:15 52:10 70:16 74:24 81:14 82:22 107:9 117:16 121:20 124:15 135:1 138:15 140:5 140:7 143:24 145:12 149:1 151:2 152:14 155:25 156:14 159:14 161:17 163:14 179:23 181:22 186:23 188:14 188:15 191:22 192:2 193:1 194:15 196:16 198:22 200:22 204:9 207:5 211:3 213:22 216:2 216:25 217:23 218:14 219:2 219:23 222:10 223:21 |
| turnaround(1) | 20:15 |
| turned(2) | 225:21 227:17 |
| turns(1) | 189:7 |
| twenty(2) | 164:3 173:5 |
| twenty-five(3) | 164:9 168:7 168:15 |
| two(65) | 13:1 16:9 18:22 42:20 53:21 58:14 83:23 84:2 85:13 97:10 98:15 103:21 109:18 115:8 123:11 125:17 127:11 127:19 127:20 129:6 138:14 148:23 158:7 158:13 161:6 162:12 172:18 177:14 183:1 188:19 192:10 194:5 194:20 195:6 196:6 197:8 202:7 204:19 206:8 210:14 215:17 221:25 222:14 222:24 227:14 |
| two-and-a-half(1) | 172:19 |
| two-fold(1) | 34:16 |
| two-hundred-and-one-millio? | 198:15 |
| type(4) | 45:16 99:13 162:25 164:5 |
| types(3) | 110:13 112:7 175:6 |
| typical(7) | 26:1 26:8 30:2 45:15 86:8 86:14 146:23 |
| typically(2) | 102:3 199:15 |
| u.s(1) | 111:13 |
| ultimate(3) | 31:22 51:25 213:16 |
| ultimately(13) | 26:14 32:9 38:3 43:9 48:5 120:5 169:19 194:4 218:11 220:7 220:10 220:19 222:7 |
| um-hum(5) | 58:10 63:1 88:8 88:11 90:14 |
| umbrella(1) | 203:25 |
| unattractive(1) | 112:15 |
| uncertainties(1) | 221:21 |
| uncertainty(2) | 158:5 191:17 |
| unchanged(1) | 68:23 |
| undefined(1) | 117:6 |
| under(41) | 33:5 33:9 33:21 33:22 39:8 43:13 55:6 55:15 56:5 56:4 56:9 57:8 58:7 63:16 63:19 65:3 67:16 72:23 75:15 91:22 93:18 112:16 117:23 118:12 118:22 134:22 144:6 147:14 153:10 168:22 168:2 169:1 190:13 191:8 196:1 196:25 200:16 203:24 206:7 206:10 206:12 |
| under-100,00(1) | 119:7 |
| undergraduate(1) | 163:7 |
| underlying(5) | 59:23 81:11 82:8 132:9 132:11 |
| underneath(1) | 193:18 |
| understand(24) | 35:1 50:10 50:11 59:23 63:2 63:13 63:16 73:1 73:3 87:17 102:7 104:19 153:17 155:8 156:24 175:22 191:5 193:11 194:14 202:4 209:20 212:9 225:5 225:25 |
| understanding(27) | 15:5 23:21 57:4 57:8 58:12 58:21 62:1 62:4 62:5 63:8 69:13 70:1 74:3 75:11 78:17 78:23 78:24 115:1 118:10 118:13 119:13 137:3 137:14 170:22 197:10 204:11 225:13 |
| understated(1) | 213:10 |
| understood(5) | 18:23 75:10 137:10 138:7 190:2 |
| undertake(1) | 61:7 |
| unique(4) | 26:12 27:24 28:3 223:5 |
| unit(5) | 120:3 120:11 144:9 144:10 144:10 |
| united(3) | 1:1 1:20 108:10 |
| units(9) | 88:15 120:9 124:25 125:21 144:14 144:18 145:3 148:2 148:13 |
| universe(1) | 12:8 |
| university(4) | 20:12 20:14 163:8 163:9 |
| unless(2) | 51:4 177:11 |
| unlevered(2) | 193:19 218:3 |
| unlike(2) | 26:1 26:11 |
| unpaid(1) | 91:23 |
| unrealized(2) | 181:15 217:18 |
| unsecured(6) | 3:18 5:12 32:19 42:11 43:17 92:17 |
| unshackled(1) | 157:20 |
| until(6) | 32:7 39:21 75:18 107:10 172:23 173:23 |
| unusual(6) | 179:1 191:12 201:12 201:16 210:17 212:23 |
| unwarranted(1) | 133:19 |
| update(19) | 87:8 87:9 87:23 93:13 93:16 98:17 180:25 185:5 186:17 194:21 194:22 203:9 215:15 215:16 216:11 216:12 218:2 220:16 224:10 |
| updated(49) | 69:19 69:24 70:2 99:24 180:13 180:16 180:16 180:21 180:21 181:2 182:9 182:11 182:24 183:15 184:9 184:22 185:1 185:6 188:22 188:23 189:1 189:4 188:9 195:1 199:1 199:5 199:5 199:6 199:7 201:3 201:5 201:7 204:3 204:4 204:16 204:17 205:22 206:13 206:23 210:? 211:18 214:2 214:2 216:22 221:18 223:1 223:1 224:5 228:5 |
| updates(5) | 180:18 186:14 187:4 211:2 215:24 |
| update"(1) | 121:6 |
| updating(11) | 69:22 175:6 178:16 180:20 198:9 198:17 203:1 204:2 204:18 205:25 220:17 |
| upon(23) | 25:5 25:7 31:16 58:13 58:19 58:25 64:4 68:8 68:11 68:23 82:15 99:22 115:23 117:19 179:20 197:8 198:3 199:17 201:10 212:8 214:10 214:13 216:23 |
| upward(1) | 187:20 |
| usa(1) | 8:49 |
| usage(1) | 11:13 |
| use(16) | 12:9 14:16 15:21 50:7 66:12 68:15 70:11 71:3 71:4 206:7 207:11 213:3 214:? 214:4 225:5 225:22 |
| used(37) | 11:15 11:16 11:24 12:3 13:23 14:4 41:24 50:9 68:18 69:10 72:2 72:5 79:22 98:6 135:15 139:5 142:2 151:3 183:17 187:7 189:7 195:11 199:10 206:12 206:24 207:13 207:14 210:11 210:14 210:16 212:18 212:19 215:3 219:9 223:7 225:11 225:16 |
| using(7) | 79:13 92:2 106:2 188:2 208:21 225:11 225:16 |
| usually(3) | 119:21 147:1 147:4 |
| utilize(1) | 176:17 |
| utilized(5) | 67:17 201:13 214:17 214:20 219:6 |
| valerio(1) | 9:6 |
| valid(1) | 223:10 |
| validate(2) | 130:17 215:9 |
| validating(1) | 215:2 |
| valuation(94) | 35:12 35:14 35:16 35:17 39:17 58:1 67:13 67:21 69:19 69:22 70:15 70:25 71:4 71:12 85:9 87:8 87:18 98:15 98:16 98:21 99:25 100:3 159:20 163:17 164:5 164:6 164:12 164:17 164:24 164:? 167:8 167:9 167:11 167:24 168:1 168:20 169:4 170:4 170:5 170:20 170:25 171:2 171:5 171:10 173:14 174:1 174:4 174:7 175:12 176:2 176:16 176:23 183:9 183:19 183:21 183:25 184:4 188:2 189:21 192:9 193:2 195:23 195:24 197:23 198:4 198:12 200:23 201:1 202:19 203:15 205:24 206:1 206:9 206:11 207:10 209:21 210:18 210:24 211:16 212:6 213:7 213:16 213:19 214:1 214:11 215:5 217:2 218:24 218:25 219:14 219:6 221:25 222:22 224:13 |
| valuation-related(1) | 187:25 |
| valuations(7) | 163:25 164:10 164:14 168:6 175:14 187:24 199:15 |
| value(139) | 19:14 23:6 26:15 26:19 29:11 29:13 29:16 29:18 29:20 30:18 32:5 32:6 36:6 36:7 36:9 36:11 36:14 36:19 36:20 36:23 36:24 37:1 37:4 37:6 37:15 38:4 38:12 38:13 38:19 38:21 39:17 39:20 39:21 41:11 57:13 57:22 57:23 58:8 58:22 58:24 59:22 63:25 64:3 64:11 64:25 66:13 66:13 66:16 66:19 66:24 67:1 69:5 70:10 70:15 71:22 72:3 72:12 72:22 75:3 75:11 75:21 75:22 76:5 76:12 77:7 78:4 81:4 84:5 87:24 91:11 91:21 98:12 98:14 98:19 98:19 98:22 98:23 98:24 99:11 99:16 99:18 100:10 100:11 102:12 164:25 174:2 180:11 182:17 184:10 184:12 184:14 185:8 186:18 187:14 188:9 188:13 190:3 194:1 194:24 195:6 196:2 198:7 201:8 201:25 206:4 206:6 207:2 207:3 208:2 208:3 210:24 210:25 213:11 215:17 215:19 218:19 219:17 219:18 219:18 219:19 220:5 222:5 222:9 222:12 223:22 223:25 224:1 224:3 224:14 227:25 231:20 |
| valued(1) | 37:18 |
| values(21) | 25:6 37:7 66:12 66:16 66:19 67:6 71:7 71:20 85:23 86:15 86:17 86:20 86:21 86:23 87:1 87:16 96:2 96:3 182:5 203:23 206:16 |
| valuing(2) | 188:18 196:12 |
| variability(1) | 38:23 |
| variable(3) | 38:19 186:10 186:11 |
| variance(2) | 152:24 153:6 |
| variances(1) | 206:15 |
| varies(1) | 162:18 |
| variety(3) | 130:11 180:15 220:24 |
| various(15) | 29:3 44:12 59:24 68:21 77:7 107:16 159:7 163:23 171:10 175:2 175:4 183:5 185:25 204:11 211:8 |
| vary(1) | 147:23 |
| vast(6) | 13:22 175:5 178:8 198:14 202:24 215:24 |
| vazquez(1) | 5:21 |
| vendor(1) | 60:16 |
| ventures(10) | 29:15 36:22 37:15 38:24 86:19 112:24 113:7 203:20 213:22 215:14 |
| version(2) | 33:3 220:14 |
| versus(18) | 28:8 29:25 34:24 38:19 47:20 77:9 77:22 122:13 124:17 152:24 153:5 154:12 154:14 158:19 191:19 192:8 196:22 212:13 |
| very(54) | 16:2 30:18 38:22 41:21 45:15 92:19 101:4 107:18 108:9 110:21 112:1 112:15 113:4 113:18 114:3 114:3 114:11 117:6 121:3 124:1 124:25 130:1 133:20 134:15 142:2 142:19 144:25 151:2 162:1 163:2 171:6 176:23 186:9 187:3 198:16 198:16 199:1 201:12 201:16 204:13 206:2 206:15 207:23 207:24 208:14 208:17 209:5 209:25 210:24 212:25 215:1 220:3 222:8 228:11 |
| vest(1) | 229:2 |
| vice-chairman(1) | 136:6 |
| video(9) | 12:18 12:21 14:11 14:22 15:9 16:5 16:10 110:20 159:21 |
| videos(2) | 16:5 16:11 |
| view(9) | 66:3 99:7 110:25 111:20 116:9 116:18 117:2 150:9 190:9 |
| viewed(1) | 79:25 |
| viewership(1) | 111:23 |
| viewpoint(1) | 187:1 |
| views(1) | 133:6 |
| viking(1) | 6:47 |
| vinson(1) | 8:16 |
| virtually(2) | 21:20 101:4 |
| vis-à-vis(2) | 105:12 154:11 |
| voir(5) | 165:9 165:12 174:14 177:17 231:6 |
| vora(1) | 8:50 |
| wacker(1) | 3:13 |
| wait(1) | 173:23 |
| waiting(1) | 175:8 |
| wakefield(3) | 25:11 70:19 70:24 |
| walk(4) | 40:3 123:23 126:4 204:8 |
| want(21) | 15:7 15:8 16:2 16:3 18:13 83:1 91:9 97:24 102:22 102:23 117:9 117:10 143:9 159:7 165:6 165:6 173:23 191:16 203:10 209:11 229:4 |
| wanted(10) | 12:22 14:23 15:10 17:6 18:10 98:22 128:19 150:4 206:19 216:14 |
| wants(3) | 12:25 17:11 51:4 |
| war(2) | 107:6 114:12 |
| wardwell(2) | 2:4 8:12 |
| warner(4) | 36:18 37:9 66:21 71:17 |
| warranties(1) | 30:2 |

| Word | Page:Line |
|---|---|

**was**(301) 12:16 14:18 15:21 17:7 17:10 20:22 21:11 21:14 21:16 22:25 23:23 26:19 28:3 28:6 29:23 30:4 32:5 36:21 37:2 37:22 39:23 40:24 40:25 41:24 42:18 42:19 43:9 47:17 50:15 54:10 54:10 59:24 60:2 60:24 61:22 64:24 64:24 65:1 65:11 65:19 67:11 67:13 68:2 68:5 68:7 68:22 69:13 69:15 69:21 70:1 70:19 70:20 70:24 72:11 73:12 73:22 73:24 74:4 74:5 75:4 75:15 75:16 76:19 77:20 78:7 78:9 79:20 79:21 80:12 80:16 80:20 81:2 81:7 81:16 81:19 82:19 83:3 83:6 86:13 87:10 87:13 87:24 88:2 88:4 88:22 88:25 89:10 89:15 89:16 90:14 90:16 90:23 91:5 91:7 94:5 94:23 95:3 95:15 96:25 98:8 98:18 98:19 98:21 99:12 99:16 99:19 99:22 100:11 100:17 100:23 107:7 107:8 107:11 107:12 108:16 108:16 108:25 112:18 113:19 116:24 118:7 120:9 120:19 121:14 121:14 122:6 122:8 122:10 122:22 124:12 124:22 124:23 125:10 125:22 125:23 125:24 126:14 126:15 128:4 128:7 128:9 129:8 129:12 132:11 132:12 132:23 132:24 132:24 132:25 133:6 137:22 138:2 138:5 138:6 138:20 139:2 141:5 141:7 141:17 141:20 141:21 141:24 144:9 146:2 146:4 146:10 147:4 148:7 148:7 148:12 149:12 149:13 149:15 151:14 154:15 154:16 154:17 154:18 154:21 154:23 155:5 156:8 156:24 162:21 163:2 168:3 169:19 169:19 169:24 170:6 170:18 171:11 172:5 172:20 175:7 175:11 175:15 176:23 178:2 178:15 178:17 180:16 180:19 180:20 181:4 181:5 181:6 181:8 182:6 182:14 183:8 183:17 183:21 183:24 184:3 184:7 184:7 184:11 184:18 185:4 187:1 187:16 187:18 187:23 189:5 189:8 189:15 190:2 191:4 191:15 191:17 192:7 193:9 193:24 194:6 194:13 194:18 194:20 194:21 195:21 196:2 196:12 196:14 197:17 200:4 201:12 201:17 202:2 202:14 202:16 202:18 203:1 203:2 203:3 204:2 204:5 204:12 205:10 205:12 205:16 205:17 205:20 206:2 206:4 206:20 206:22 207:9 207:16 207:19 209:17 209:11 209:12 209:14 209:15 210:2 210:8 210:23 211:21 211:22 212:14 212:21 212:22 213:1 213:2 214:8 214:14 214:14 214:15 214:16 214:16 214:23 215:2 215:6 215:8 215:22 215:25 216:1 216:10 216:15 216:16

**was**(18) 216:17 216:18 216:18 216:21 217:5 218:1 218:2 218:16 219:25 220:14 223:4 223:7 223:10 223:10 223:15 225:13 225:16 229:9

**washington**(1) 3:42

**wasn't**(14) 65:8 76:1 89:14 94:3 94:23 95:2 95:2 148:18 154:23 154:24 167:23 175:10 182:10 197:15

**wasn't**(2) 118:6 182:9

**watching**(1) 88:5

**water**(1) 105:5

**waterfall**(1) 34:21

**way**(32) 12:18 18:9 47:17 60:23 73:19 74:23 80:15 89:10 89:23 91:4 97:5 119:25 123:4 133:25 143:3 150:7 153:18 157:23 158:7 158:8 168:12 177:10 178:15 179:20 189:11 191:13 193:8 199:5 199:7 202:2 208:16 217:16

**ways**(3) 85:13 112:9 215:7

**we'd**(2) 16:20 96:21

**we'll**(16) 12:2 13:14 14:7 18:8 159:9 159:9 159:15 159:18 159:21 160:2 175:4 186:21 224:17 225:18 228:12 229:18

**we're**(20) 11:17 12:12 15:15 15:25 16:13 63:1 65:11 75:13 87:14 96:22 147:21 149:12 159:4 214:6 217:1 219:16 220:17 225:3 228:9 228:9

**we've**(14) 11:14 11:24 17:10 19:16 23:17 29:2 35:18 65:5 66:5 158:7 159:17 201:2 226:5 226:13

**weak**(3) 128:2 128:3 128:8

**weather**(6) 209:17 209:18 209:20 209:23 209:25 210:2

**website-driven**(1) 212:13

**websites**(1) 211:24

**week**(13) 11:13 13:12 14:4 27:6 52:25 60:14 66:6 127:21 127:21 128:11 128:24 146:25 148:23

**week-by-week**(1) 127:18

**weekend**(3) 11:25 12:16 12:19

**weeks**(9) 121:14 127:22 130:1 150:2 172:11 172:18 172:19 173:18 174:5

**weigh**(1) 202:17

**weighing**(1) 179:6

**weight**(8) 179:8 194:5 197:12 197:14 197:15 200:14 211:9 211:12

**weighted**(3) 189:1 197:25 211:13

**weighting**(30) 181:7 181:9 188:21 189:19 190:7 190:11 190:15 192:6 194:22 195:10 195:11 195:14 195:18 196:19 197:19 197:19 198:10 198:16 200:7 200:1 200:19 202:7 202:24 203:2 203:2 205:8 211:3 215:10 223:17

**weightings**(4) 181:5 223:4 224:7 224:10

**weil**(1) 7:42

**weiss**(1) 7:4

**weitman**(1) 6:36

**well**(145) 12:6 12:7 15:23 15:24 18:17 20:8 23:25 25:8 28:4 29:15 31:16 31:21 33:3 34:18 35:11 36:10 36:22 42:7 42:24 44:17 46:16 47:23 48:3 49:11 50:16 51:15 60:1 60:6 61:20 62:9 62:14 62:17 63:1 63:24 64:2 65:5 66:18 67:12 67:19 68:13 68:25 71:21 73:14 74:8 78:10 81:16 83:1 84:23 87:19 91:19 93:22 97:23 102:2 105:15 108:12 108:15 109:3 110:11 110:19 113:2 113:18 114:16 114:24 118:21 120:8 120:16 124:1 124:20 125:13 126:6 127:6 127:8 127:9 127:16 129:16 130:23 131:17 132:16 133:19 137:15 139:10 141:7 151:24 153:16 155:22 156:9 156:12 158:2 159:14 167:8 167:10 167:12 167:23 168:15 168:19 168:24 169:21 169:23 172:20 172:25 173:5 173:6 173:8 173:25 175:1 177:24 178:6 179:1 180:3 181:17 182:4 188:19 189:21 190:11 190:16 191:18 191:22 192:13 195:21 197:1 198:3 200:16 200:22 202:5 204:9 204:13 205:2 205:10 207:8 208:14 208:17 213:8 213:15 216:15 217:17 219:16 220:3 221:21 221:22 223:17 224:1 226:5 228:21

**wells**(1) 9:26

**went**(14) 16:11 59:16 107:14 108:15 109:17 123:17 140:9 148:8 158:19 175:1 175:10 180:14 203:15 216:19

| Word | Page:Line |
|---|---|

**were**(135) 11:5 13:24 14:3 14:25 15:1 16:7 17:9 23:15 25:14 27:24 37:20 41:18 43:12 44:22 45:2 48:8 50:21 61:15 62:16 66:19 66:22 66:24 67:3 67:21 68:9 68:15 69:24 70:20 71:7 71:12 71:13 71:16 76:2 76:6 76:10 78:4 78:13 80:9 82:12 83:9 85:25 86:1 86:11 86:23 87:1 87:12 91:16 95:15 99:20 99:21 113:20 114:6 115:1 115:14 117:22 123:16 125:2 127:8 129:10 129:19 129:21 132:14 136:20 138:5 139:8 139:10 139:10 139:12 141:12 142:8 144:15 144:15 145:6 145:9 148:6 148:14 148:19 151:22 151:23 152:3 152:9 154:11 155:9 156:25 157:20 162:19 168:10 168:23 169:16 169:16 169:18 169:21 170:3 170:1 176:8 176:25 176:25 177:3 179:13 179:15 179:15 184:6 184:25 185:5 185:10 187:17 187:22 189:11 189:22 190:7 191:2 193:11 194:20 195:22 196:7 196:7 197:1 205:19 208:11 209:19 210:6 211:23 212:6 214:11 214:17 216:11 219:21 223:9 225:13 225:20 226:17 227:4 228:5

**weren't**(6) 71:13 81:17 81:20 87:7 87:11 214:19

**west**(2) 3:13 4:31

**we're**(14) 10:16 110:8 110:13 111:6 111:12 115:22 115:23 129:1 130:1 130:3 130:23 130:23 134:1 134:2

**we've**(3) 105:1 114:4 121:13

**whack**(4) 180:23 180:24 199:5 199:6

**wharton**(1) 7:4

| Word | Page:Line |
|---|---|

**what**(295) 12:20 13:22 14:15 15:10 16:3 20:5 20:10 21:4 22:8 23:13 24:1 24:20 25:14 25:17 25:18 25:24 26:14 26:25 27:7 27:16 28:11 28:13 29:4 29:19 31:1 31:13 31:18 32:9 33:1 33:7 34:20 35:1 35:3 35:13 35:19 36:5 36:6 36:15 36:16 39:13 39:23 40:11 40:17 40:24 41:15 42:24 43:9 44:8 44:21 45:9 45:16 46:12 46:21 47:10 48:1 48:3 48:22 49:2 50:7 50:11 50:17 51:17 51:23 54:10 55:20 58:24 59:24 60:3 60:24 61:12 61:17 62:22 63:20 63:24 64:23 65:3 66:8 68:9 68:11 68:23 73:10 78:22 85:3 85:23 86:13 88:8 89:18 90:12 91:17 95:15 95:21 96:5 96:7 96:17 100:9 100:25 102:3 102:4 102:9 104:10 104:22 105:12 106:1 106:12 106:14 107:13 108:1 108:23 109:8 109:25 110:9 111:9 111:15 112:6 112:21 113:16 114:1 114:14 114:18 114:23 116:8 116:19 117:2 118:19 119:5 120:7 120:25 121:25 122:15 122:21 122:23 123:3 123:9 123:9 123:15 123:24 124:8 124:19 125:2 125:3 125:12 125:20 125:21 125:22 125:22 125:23 126:4 126:13 126:21 126:25 127:14 128:2 128:8 128:20 129:12 129:12 129:16 130:9 131:10 132:2 132:4 132:23 133:9 134:1 137:17 137:22 144:23 146:16 148:5 151:14 151:19 151:22 152:10 152:11 153:2 153:2 153:8 153:12 154:3 154:16 155:1 155:8 156:4 156:7 156:7 156:8 156:19 157:24 158:3 159:16 162:9 163:15 163:18 163:18 163:19 167:18 170:14 170:17 171:19 171:24 173:5 176:8 178:20 179:14 179:16 179:23 180:1 180:8 180:9 180:10 180:14 180:18 181:10 181:14 181:23 182:4 182:14 182:18 182:21 183:8 184:5 184:11 184:22 186:6 186:13 186:24 188:16 189:5 189:20 190:2 190:3 190:7 190:16 191:9 191:25 192:7 192:8 192:14 193:11 193:13 193:13 194:16 195:11 195:18 197:10 198:11 198:24 200:25 201:1 202:18 203:18 204:5 204:11 205:5 206:6 206:23 207:6 207:15 209:4 209:8 211:5 212:15 213:6 213:8 213:25 214:5 214:7 214:14 215:22 216:6 216:7 216:17 217:6 217:17 218:16 219:2 219:14 219:25 220:11 221:2 221:6 222:2 222:13 223:7 223:15 223:24 224:16 227:3 228:9 228:18 229:10

**what's**(15) 20:3 34:13 39:3 40:20 83:6 87:9 101:10 144:10 144:11 144:11 159:15 161:14 184:16 219:14 228:19

**whatever**(4) 15:17 159:10 164:8 180:21

**what's**(8) 105:1 110:19 113:15 117:8 118:13 121:12 133:18 134:9 134:12

**when**(77) 14:14 14:21 15:2 15:13 15:15 39:23 45:19 45:23 67:20 67:20 72:14 73:2 76:18 82:11 82:17 86:11 87:23 88:6 88:14 96:4 98:17 106:19 110:19 110:20 112:14 113:4 113:7 113:20 115:5 120:8 129:10 136:25 137:7 145:17 146:7 147:3 148:3 149:7 149:12 149:13 151:10 155:1 155:5 158:5 158:8 164:7 176:2 176:17 177:3 177:4 179:13 181:3 185:10 187:2 189:21 190:3 191:11 191:10 195:22 196:6 196:8 199:15 200:2 200:12 202:6 206:15 206:25 215:4 217:1 217:21 219:16 220:21 220:22 220:22 227:4

**whenever**(1) 220:8

**where**(43) 14:10 20:1 20:23 21:14 26:2 32:10 45:20 61:2 75:3 76:1 95:7 104:8 110:18 118:25 125:4 131:7 136:1 144:14 153:22 159:18 162:19 165:7 175:8 175:9 178:15 179:24 181:4 181:7 184:7 189:6 190:21 190:22 194:9 194:14 195:10 199:8 199:17 199:24 200:2 200:22 202:4 204:9 221:9

| Word | Page:Line |
|------|-----------|

**Word** / **Page:Line** (Column 1)

wherever(1) 178:16
whether(29) 13:15 14:18 15:13 39:7 42:21 47:13 47:15 52:21 61:7 61:10 61:14 61:1 61:22 65:5 69:19 73:24 76:24 77:20 87:4 129:18 133:6 152:6 154:10 157:4 165:24 167:11 167:19 167:21 197:19

which(134) 11:14 12:20 15:9 15:25 16:6 16:9 17:22 20:21 20:21 27:12 27:13 29:8 29:10 29:11 29:17 32:5 32:23 35:25 36:4 37:16 38:15 38:16 39:12 40:25 41:12 41:14 42:15 43:3 43:19 44:19 47:23 48:3 48:16 51:13 54:9 62:10 62:23 68:1 68:11 68:18 69:15 71:17 72:24 75:14 79:1 83:7 87:3 88:12 92:3 93:5 98:24 101:16 106:17 107:5 107:8 109:13 109:23 111:19 115:18 119:2 119:2 119:18 120:11 125:21 125:24 126:13 126:17 128:11 130:24 132:11 134:20 136:10 143:7 148:4 148:10 148:12 148:16 149:2 149:6 150:10 151:4 154:16 155:24 156:13 159:19 161:20 162:4 164:1 172:18 175:16 179:2 180:4 181:12 181:14 181:16 182:1 182:10 185:6 187:18 187:24 190:24 192:15 192:18 193:23 196:10 200:11 204:7 204:23 208:12 211:14 212:4 212:17 212:8 212:13 212:25 213:1 213:4 213:4 214:15 214:23 215:11 215:23 216:3 219:11 220:6 223:6 224:4 224:4 224:6 225:11 226:12 226:21 228:11 228:12

while(9) 48:10 50:12 90:22 90:25 108:22 126:13 127:7 158:1 215:3

white(1) 9:26
whittle(1) 14:1
whittman(25) 8:46 16:21 16:22 17:22 19:8 19:9 19:10 19:11 19:18 19:24 23:12 23:1 24:7 24:9 24:10 24:13 24:20 34:13 44:8 53:16 82:18 83:21 97:19 97:20 102:21

whittman's(1) 17:1
who(23) 40:22 65:8 73:4 73:5 91:2 96:10 96:12 104:16 110:14 118:16 132:7 132:9 132:13 132:15 132:17 132:17 135:23 136:4 136:24 138:5 144:10 151:9 226:3

who's(1) 25:10
whole(7) 110:20 158:21 203:5 208:1 208:8 215:19 217:2

wholly(2) 107:8 180:5
wholly-owned(4) 181:3 222:11 222:15
whom(2) 161:12 227:19
why(43) 15:25 26:6 38:5 42:10 45:10 98:10 99:10 101:24 106:1 110:25 113:14 115:20 128:20 146:11 147:23 150:10 165: 173:24 174:8 174:25 176:12 176:19 181:24 187:9 187:21 188:1 193:1 195:17 195:19 197:13 200:20 201:10 202:9 202:1 205:8 208:23 211:6 212:9 216:14 216:17 217:15 217:15 221:22

wilderotter(4) 135:24 136:14 136:23 137:7
will(37) 12:2 12:12 13:16 13:23 13:25 14:15 15:9 16:4 17:22 18:1 18:5 18:6 19:19 33:13 53:6 88:15 88:16 93:10 93:20 103:1 109:22 116:19 124:24 134:15 158:6 179:6 189:8 193:21 193:21 194:9 205:1 221:15 222:8 225:14 225:24 227:18 228:1

william(2) 2:43 4:12
willing(1) 86:11
wilmer(1) 5:37
wilmington(17) 1:12 1:38 2:16 2:23 2:45 3:7 3:22 3:49 4:4 4:14 4:23 4:32 5:7 6:14 11:1 53:15 115:6

wires(1) 10:13
wish(1) 115:1

with(267) 11:11 11:14 11:15 11:17 11:22 11:24 11:25 12:3 12:23 13:14 13:24 14:2 14:11 14:15 16:1 16:3 16:4 16:11 16:22 17:1 17:4 18:6 18:8 18:19 18:20 19:17 19:18 20:19 21:18 22:1 22:8 22:18 22:25 23:4 23:8 23:13 23:16 24:1 24:9 27:3 27:16 27:17 27:20 27:21 27:22 29:2 29:23 30:3 30:9 30:20 30:22 35:7 36:24 37:7 41:8 43:7 43:18 44:15 46:10 48:12 48:13 49:7 50:15 50:23 52:15 52:19 54:22 56:18 59:21 61:5 63:10 64:22 66:1 67:3 67:12 67:15 68:14 68:17 69:1 69:5 70:9 70:13 73:8 73:22 74:23 75:11 76:14 77:15 80:2 80:7 82:24 86:15 86:17 86:19 86:21 88:7 88:20 89:2 90:19 93:18 93:23 95:1 95:3 95:13 96:18 97:2 97:4 97:8 99:24 103:14 103:17 103:22 106:4 106:6 107:15 107:19 111:2 111:3 112:3 112:7 113:7 113:21 113:22 114:7 115:1 115:12 116:2 117:6 117:9 117:15 117:16 117:19 118:1 119:25 120:1 123:15 124:13 125:1 130:12 131:10 131:12 131:20 133:3 133:6 133:11 133:21 134:13 134:19 134:20 136: 137:6 137:14 137:15 137:18 138:2 138:8 138:10 140:9 143:15 144:22 147:2 148:14 149:20 149:23 150:10 151:3 151:13 151:1 151:25 152:1 152:6 152:10 152:11 157:1 159:10 159:21 159:21 160:24 162:7 163:2 163:16 164:25 165:15 166:7 166:15 166:2 166:21 167:5 167:16 167:18 168:15 169:1 169:7 169:19 170:1 170:11 171:1 171:3 171:9 171:11 171:12 171:16 171:18 174:3 174:6 175:13 176:22 178:20 181:12 181:15 182:1 182:18 183:11 186:15 188:16 188:1 189:23 189:25 190:15 192:6 192:13 193:24 194:5 196:19 197:11 198:8 198:16 198:23 199:8 200:6 200:24 201:9 202:12 203:3 203:23 204:5 204:10 205:2 205:5 205:22 209:21 209:23 213:7 214:12 215:1 215:7 215:10 215:14 219:4 220:1 220:6 222:11 223:24 224:8 224:22 224:24 225:4 226:7 226:20 227:15 227:16 227:19 227:2 228:19 229:6

within(24) 36:9 37:1 66:18 73:12 162:11 163:24 170:1 176:8 176:24 180:24 182:4 187:7 196:14 199:18 203:24 208:19 209:1 209:16 209:20 210:7 214:8 214:20 216:12 222:14

without(15) 24:17 34:9 44:5 62:25 64:13 64:16 65:13 93:13 144:13 178:21 185:21 186:8 226:19 226:24 227:11

witness(32) 15:15 16:7 16:9 16:19 16:21 19:10 19:17 22:17 22:24 54:20 97:24 102:23 103:5 103:6 103:14 108:17 108:23 114:23 135:9 140:16 150:19 159:2 159:19 160:1 160:11 160:22 161:5 165:5 172:2 228:18 229:6 229:11

witness's(1) 15:9
witnesses(11) 11:11 11:16 11:17 11:22 11:24 12:4 12:18 12:21 15:2 159:4 231:2

wittman(1) 231:3
won't(4) 12:5 18:19 206:6 228:8
word(4) 13:1 15:21 139:5 170:20
words(7) 15:1 56:23 61:23 61:25 68:7 89:21 153:22

work(30) 14:8 22:5 24:1 29:12 35:15 35:16 43:18 53:23 76:22 81:23 82:2 130:? 159:6 162:25 164:5 166:19 167:3 168:16 171:10 171:12 171:15 171:16 172:6 172:1 173:17 175:18 211:1 215:15 226:15 227:14

worked(21) 17:10 20:19 21:5 21:8 21:23 253:20 67:3 106:21 132:15 163:3 164:19 165:21 168:21 168:24 169:23 169:25 170:11 172:7 173:9 176:22 226:13

working(6) 21:12 118:24 172:4 172:14 175:21 176:7

works(3) 60:19 118:14 119:25
world(8) 54:6 85:9 85:10 85:10 97:2 108:11 142:16 211:25

world-class(1) 114:13
worry(1) 119:10
worrying(1) 118:23
worse(3) 126:23 156:25 157:1
worst(5) 144:3 144:11 145:5 152:21 153:5
would(212) 11:12 11:18 14:19 14:22 16:12 16:14 16:24 24:23 24:24 25:18 25:19 25:22 25:25 26:5 26:18 27:2 27:3 27:14 27:19 27:22 29:8 29:24 30:1 30:2 30:14 30:19 30:21 31:4 31:5 31:15 31:24 32:10 32:16 32:16 32:17 32:20 33:14 33:21 34:19 35:2 36:17 38:23 39:6 41:19 41:21 41:23 42:11 49:6 56:18 59:2 61:23 62:2 62:6 62:10 62:15 62:21 63:21 64:22 65:2 65:5 65:9 66:10 66:4 70:13 72:23 73:4 73:5 73:16 74:18 77:2 79:6 79:6 79:9 81:6 83:19 84:7 84:16 85:24 88:12 91:1 91:12 93:18 93:19 93:22 93:23 93:24 94:2 94:2 94:18 96:18 96:21 96:22 96:23 96:23 97:2 97:3 97:7 97:8 97:10 99:14 100:15 101:7 101:9 101:22 102:9 102:12 103:6 103:23 105:23 106:6 108:7 112:23 113:11 113:14 116:7 117:5 117:10 117:16 117:21 120:2 120:11 127:4 127:24 130:9 132:16 135:16 135:18 138:14 142:12 142:13 142:15 143:2 148:10 155:4 155:12 155:19 157:20 157:21 157:24 157:24 157:25 158:4 159:18 163:16 163:22 163:2 164:16 164:16 164:20 164:23 167:5 167:16 167:18 167:24 168:17 171:15 171:17 173:10 173:10 177:13 178:13 178:20 179:23 181:21 184:20 185:7 185:9 186:3 186:8 186:17 188:13 188:16 189:10 190:9 192:24 193:5 193:24 194:11 194:14 195:18 195:24 196:16 199:18 199:23 199:23 200:20 200:23 201:25 202:17 207:2 207:2 207:3 208:22 208:23 212:9 216:24 216:25 218:8 218:13 221:7 221:8 225:2 225:5 226:25

wouldn't(6) 70:9 89:22 96:24 97:2 97:8 187:12

would've(2) 106:20 139:8
wound(1) 221:7
wrap(1) 173:11
write(2) 49:24 81:2
written(2) 89:3 89:7
wrong(7) 79:3 80:12 80:16 119:1 158:7 183:14 194:18

wrote(2) 91:20 94:14
www.diazdata.com(1) 1:47
xochitl(1) 10:10
yeah(20) 19:3 28:2 51:8 59:4 63:8 63:11 77:23 83:1 84:19 131:25 140:9 149:5 164:19 164:20 186:21 191:10 195:3 202:21 208:17 229:7

year(46) 20:17 27:4 69:12 70:25 74:15 84:12 84:22 93:3 93:25 106:3 109:19 119:14 120:8 121:14 121:15 126:23 127:3 127:7 127:23 127:23 129:2 129:8 129:9 129:9 129:25 130:4 131:16 131:16 139:16 140:19 140:21 140:23 141:7 141:8 141:12 145:4 148:14 150:9 154:4 154:4 155:6 155:6 155:12 158:7 158:18 197:7

year-over-year(1) 122:18
years(12) 21:1 21:3 97:10 109:13 134:5 155:10 158:7 170:16 170:16 170:18 170:19 193:21

year's(1) 119:20
yes(199) 16:20 18:18 24:13 25:2 25:5 29:5 30:11 31:3 36:16 40:10 43:25 44:23 45:1 46:19 52:14 52:23 53:11 53:19 55:5 55:10 55:12 55:14 55:25 56:3 56:10 56:22 56:25 57:19 58:4 58:19 59:10 59:16 64:1 65:20 65:21 66:11 67:6 67:8 70:13 72:1 72:8 74:17 74:20 75:8 75:13 76:8 77:6 77:12 77:17 78:6 78:24 80:17 81:19 81:22 81:24 82:10 82:14 83:22 84:8 84:11 84:14 85:1 85:5 86:25 88:19 91:7 92:12 92:14 92:16 92:22 92:24 93:1 98:6 98:11 101:23 102:17 104:21 105:1 105:22 106:11 107:17 112:20 113:13 115:10 115:13 115:17 117:1 118:2 119:16 120:21 120:24 121:7 121:10 121:19 121:24 122:8 122:10 122:14 123:2 123:22 124:18 125:6 125:9 125:11 126:3 126:20 127:13 130:8 131:21 131:24 132:1 132:22 133:8 134:7 136:8 136:12 136:15 136:17 136:19 136:22 137:2 137:5 137:13 137:21 138:4 138:9 138:12 138:19 138:22 138:25 139:3 139:5 139:12 139:15 139:19 140:20 140:24 141:1 141:3 141:6 141:8 141:8 141:9 141:11 141:14 141:19 141:23 142:10 142:14 142:17 143:1 143:1 143:17 143:20 144:1 144:5 144:19 144:21 145:6 145:11 145:20 145:25 146:22 147:13 147:16 148:1 148:21 148:25 149:11 149:25 150:3 150:6 150:8 150:12 151:6 151:12 151:18 152:16 152:19 152:22 153:1 153:11 153:24 154:6 154:9 156:3 156:16 156:17 156:23 157:2 157:6 157:22 158:20 158:23 174:2 176:4 176:18 191:23 192:1

yesterday(2) 225:17 226:13
yet(5) 12:1 110:4 133:24 146:4 229:5
york(6) 2:9 2:30 2:39 3:33 111:13 129:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **you**(301) | | **you**(301) | | **you**(301) | | **you're**(42) | |

**you**(301) 13:9 15:7 15:8 15:25 16:17 16:23 17:16 17:20 19:5 19:21 20:1 20:10 20:16 21:1 21:9 21:17 21:18 21:25 22:5 22:8 23:10 23:12 23:13 24:11 24:20 24:21 25:1 25:3 25:14 25:24 26:2 26:6 26:14 26:25 27:7 27:16 28:9 28:10 28:11 28:12 28:20 28:23 29:1 29:4 29:6 29:9 29:19 29:22 29:24 30:1 30:2 30:8 30:9 30:13 30:14 31:1 31:3 31:6 31:9 31:10 31:13 31:18 31:21 31:23 32:9 32:12 32:24 33:7 33:8 33:15 33:25 34:1 34:13 35:3 36:3 36:5 36:12 36:14 36:15 37:7 38:2 38:5 38:18 39:11 39:23 40:6 40:9 41:4 41:5 41:6 41:8 41:25 42:2 42:4 42:10 42:25 43:1 43:3 43:19 43:23 44:8 44:20 45:6 45:9 45:10 46:17 46:20 47:3 47:11 48:1 48:20 48:22 49:15 49:19 49:19 49:22 50:4 50:7 50:11 51:13 51:18 51:22 52:2 52:12 52:16 52:21 52:25 53:4 53:5 53:16 53:23 54:2 54:5 54:16 54:16 54:25 55:20 56:9 56:19 56:23 56:25 59:1 59:18 60:1 60:2 60:3 60:8 60:16 60:22 61:5 61:6 61:22 62:5 62:14 63:2 63:6 63:10 63:13 64:12 64:19 64:21 65:8 65:22 65:25 65:25 66:7 66:12 66:22 66:25 67:3 67:3 67:9 67:19 67:20 67:21 68:1 68:2 68:4 68:13 68:13 68:14 68:15 68:16 68:25 69:1 69:2 69:4 69:6 69:8 69:9 69:10 69:10 69:18 69:24 70:9 70:14 70:15 70:19 70:23 71:3 71:3 71:6 71:6 71:7 71:10 71:11 71:25 72:2 73:2 73:9 73:18 73:21 73:22 73:23 74:2 74:8 74:8 74:11 74:12 74:19 74:21 74:24 75:3 75:9 75:9 75:24 75:25 76:1 76:1 76:5 76:9 76:12 76:13 76:13 76:18 76:19 76:19 76:24 76:25 77:3 77:13 77:16 77:19 77:21 77:25 78:3 78:12 78:25 79:1 79:11 79:11 79:12 79:16 79:20 79:22 79:24 79:25 79:25 80:2 80:6 80:8 80:12 80:15 80:16 80:21 80:21 80:22 81:2 81:10 81:17 81:20 81:23 82:1 82:2 82:7 82:7 82:11 82:11 82:17 82:22 82:24 83:2 83:9 83:18 83:21 84:4 84:5 84:5 84:12 85:8 85:8 85:22 85:22 85:24 85:25 86:4 86:7 86:8 86:11 86:15 86:15

**you**(301) 86:18 87:1 87:2 87:3 87:7 87:11 87:12 87:12 87:19 87:22 87:25 88:11 88:14 88:14 88:17 88:20 88:21 88:24 89:7 89:7 89:8 89:17 89:19 89:22 89:25 90:18 90:19 90:24 91:4 91:9 91:11 91:19 91:20 92:9 92:9 92:17 93:7 93:8 93:9 93:13 93:14 93:18 93:19 94:6 94:7 94:14 94:21 95:7 95:11 95:14 95:15 95:15 96:4 96:5 96:6 96:17 96:17 96:19 97:2 97:7 97:8 97:11 97:17 97:18 97:19 97:19 97:20 97:23 98:4 98:8 98:9 98:10 98:24 99:1 99:3 99:6 99:13 99:20 99:24 99:24 100:8 100:19 100:21 100:21 101:21 101:24 101:24 102:3 102:10 102:10 102:19 102:1 102:21 102:22 102:23 102:25 103:12 103:16 103:19 104:2 104:5 104:8 104:12 104:16 105:5 105:23 106:1 106:1 106:9 106:19 106:21 106:24 107:2 107:13 107:1 107:19 108:7 108:12 108:21 108:22 109:1 109:22 110:7 110:13 110:20 110:20 111:1 112:18 112:19 112:21 113:10 113:14 113:14 113:16 113:16 114:23 115:3 115:1 115:18 116:24 117:7 118:1 118:11 118:18 119:5 119:11 119:11 119:13 119:17 120:1 120:18 120:22 120:23 121:3 121:6 121:9 121:11 121:17 121:20 121:22 122:11 122:13 122:15 123:5 123:5 123:15 123:20 123:23 124:7 124:15 124:17 124:24 125:2 125:3 125:11 125:13 125:15 125:24 126:1 126:4 126:10 126:11 126:16 127:4 127:11 127:12 127:14 127:17 127:20 127:24 128:8 128:13 128:17 128:20 128:2 129:2 129:4 129:10 129:11 129:15 129:15 130:14 131:2 131:4 131:5 131:11 131:20 131:22 131:22 132:12 132:17 133:5 133:9 133:15 133:19 133:22 134:12 134:20 136:2 136:4 136:4 136:7 136:9 136:11 136:11 136:13 136:16 136:25 137:6 137:1 137:18 137:20 138:5 138:7 138:16 138:1 138:23 139:4 139:16 139:24 140:9 140:1 140:18 140:25 141:24 142:7 142:14 142:8 142:11 142:12 142:12 142:16 143:6 143:7 143:10 143:18 143:24 144:24 145:12 145:13 145:17 145:19 146:13 146:17 146:20 147:6 147:12 147:14 147:18 147:2 148:9 148:19 148:20 148:22 148:23 149:6 149:7 149:17 149:23 150:4 150:5 150:18 150:19 150:23 151:2 151:3

**you**(301) 151:7 151:11 151:13 151:17 151:19 151:22 151:23 152:3 152:6 152:6 152:10 152:14 152:17 152:17 152:25 153:3 153:10 153:22 154:8 154:10 154:21 155:15 155:19 155:24 155:25 156:2 156:8 156:14 156:18 156:21 157:3 157:4 157:7 157:19 157:19 157:19 157:20 157:20 157:23 158:7 158:22 158:17 159:1 159:1 159:2 159:16 160:2 160:4 160:14 160:23 161:1 161:2 161:3 161:12 161:17 162:6 162:9 162:19 162:19 162:25 162:25 163:3 163:10 163:15 163:16 164:13 165:7 165:9 165:24 165:25 165:25 166:3 166:3 166:7 166:19 166:20 167:2 167:14 167:18 167:21 167:21 168:2 168:3 168:7 168:10 168:11 168:15 168:19 168:19 168:23 169:1 169:7 169:11 169:14 169:16 169:21 170:8 170:8 170:10 170:14 170:14 170:17 170:21 170:24 172:4 172:7 172:10 172:13 172:14 172:17 173:2 173:7 173:24 174:6 174:7 174:12 174:13 174:25 175:9 175:16 175:16 176:5 176:12 176:19 177:1 177:2 177:3 177:4 177:22 177:24 178:6 178:12 178:19 179:2 179:9 179:10 179:13 179:14 179:23 179:2 180:1 180:8 180:25 181:12 181:12 181:8 181:20 181:21 181:22 181:23 182:18 183:12 184:4 184:22 185:10 185:12 185:1 185:22 186:3 186:19 186:23 187:1 187:2 187:13 187:14 187:14 187:16 187:1 188:4 188:6 188:9 188:10 188:15 188:16 189:8 189:11 189:13 189:18 189:19 189:2 190:3 190:8 190:15 190:16 190:21 190:21 191:1 191:1 191:3 191:9 191:9 191:13 191:14 191:15 191:15 191:25 192:1 192:11 192:12 192:21 192:23 193:3 193:7 193:12 193:13 193:20 193:21 193:2 193:25 194:4 194:9 194:9 194:25 195:4 195:7 195:9 195:17 195:17 195:18 195:23 195:25 196:2 196:6 196:8 196:8 196:16 196:17 196:21 196:24 196:25 197:5 197:7 197:17 197:12 197:13 197:16 197:18 197:18 197:23 197:24 198:3 198:6 198:8 198:16 198:24 199:2 199:13 199:23 199:2 200:2 200:3 200:6 200:7 200:11 200:20 200:22 200:24 200:25 201:1 201:2 201:4 201:6 201:10 201:10 201:24 202:9 202:9 202:11 202:12 202:13 202:20 202:20 203:4 203:6 203:10 203:14 203:15 203:1 203:18 203:23 204:7 204:15 204:22 205:5 205:7 205:8 205:25 206:7 206:15 206:16

**you**(105) 206:16 206:19 207:6 207:9 207:15 207:22 207:25 208:1 208:10 208:1 208:12 208:14 208:16 208:16 208:18 208:21 208:22 208:23 208:23 209:1 209:5 209:9 209:10 209:24 210:4 210:15 210:19 210:21 210:22 211:1 211:4 211:5 211:6 211:7 211:8 211:9 211:10 211:15 211:16 212:18 212:22 213:2 213:15 214:1 214:11 214:18 214:19 215:4 215:5 215:8 215:13 215:15 215:18 216:6 216:7 217:1 217:15 217:15 217:21 218:17 218:21 218:22 218:22 218:23 219:3 219:3 219:4 219:13 219:13 219:25 220:1 220:2 220:5 220:6 220:8 220:8 220:9 220:11 220:16 220:22 221:2 221:9 221:11 221:19 222:3 222:4 222:7 222:12 222:18 222:21 222:22 222:25 223:3 224:15 224:16 224:18 224:2 225:18 226:23 227:2 227:6 229:8 229:10 229:20

**you'd**(4) 14:9 30:4 45:16 216:19
**you'll**(13) 16:5 16:6 16:8 39:1 145:7 164:1 189:4 190:18 204:22 206:11 206:13 206:14 215:18

**you're**(42) 46:21 51:23 53:18 54:8 56:15 63:20 64:6 71:22 79:3 82:7 82:12 84:15 88:8 90:12 91:18 142:13 142:24 143:15 147:9 153:22 154:3 160:10 165:5 165:17 166:16 167:6 171:19 173:11 173:14 173:22 174:17 186:11 186:16 186:24 190:12 190:12 193:14 194:16 199:20 207:10 212:23 219:15

**you've**(33) 21:5 53:20 54:13 54:19 57:12 57:21 70:23 87:15 91:5 100:2 145:8 163:15 164:14 165:21 166:4 167:3 169:3 173:17 174:16 175:14 175:14 179:24 184:2 188:5 191:24 194:3 195:17 204:9 205:4 205:5 205:6 215:13 221:21

**young**(1) 4:27

**your**(301) 11:4 11:7 11:10 11:13 11:20 12:11 12:15 13:18 14:11 14:18 15:6 15:11 15:19 15:24 16:17 16:20 16:25 17:16 17:20 18:14 19:5 19:6 19:11 19:19 20:3 20:16 22:1 22:17 22:23 23:25 24:8 24:8 24:12 25:15 26:1 26:25 27:8 27:25 28:9 28:12 32:22 32:2 33:13 33:15 33:23 34:3 34:8 35:14 36:4 39:1 39:2 39:23 43:9 43:18 43:20 43:20 43:23 44:4 44:20 45:6 45:7 45:9 47:24 48:17 49:9 49:16 50:17 51:2 51:14 51:9 52:13 52:22 53:4 53:10 53:23 54:5 54:12 55:18 55:21 56:6 56:8 57:4 57:8 58:21 61:6 62:1 62:14 62:14 63:8 64:6 64:10 64:12 64:12 65:9 66:8 66:12 67:19 68:1 68:13 68:14 69:4 69:18 70:14 70:23 71:6 71:7 71:10 71:12 71:21 72:2 72:3 73:8 74:2 74:13 74:17 74:19 75:9 75:11 75:24 75:9 76:12 76:14 78:3 78:17 78:23 79:1 79:4 79:17 79:24 80:2 80:6 80:7 80:18 80:21 81:2 81:7 81:10 81:23 81:23 82:1 82:13 82:19 82:22 87:12 87:20 88:2 88:14 88:9 87:17 90:14 91:6 92:10 93:2 93:7 93:13 94:3 94:12 94:13 94:23 95:8 95:11 95:19 97:1 97:11 97:15 97:18 97:23 99:2 99:7 100:2 100:6 100:6 100:7 100:21 101:21 102:9 102:14 102:16 102:18 102:22 102:25 103:3 103:5 103:8 103:9 103:12 103:13 103:17 104:5 104:10 105:12 106:9 106:14 107:2 108:14 108:24 109:3 109:25 110:9 110:25 111:20 111:20 111:21 112:3 112:25 113:10 114:1 114:18 115:12 116:8 116:9 116:12 117:2 118:3 118:13 120:7 120:18 120:22 129:17 131:22 133:6 133:18 134:13 134:24 135:4 135:7 135:14 135:19 136:9 137:3 137:14 139:24 140:7 140:14 140:15 140:21 142:4 143:10 143:12 145:14 145:23 150:9 150:13 150:17 150:18 150:23 153:13 155:15 155:14 156:24 157:11 157:21 158:10 158:25 159:3 159:17 160:4 160:6 160:10 160:15 160:16 160:18 160:20 160:21 160:24 161:6 161:14 161:20 162:9 162:17 163:5 164:14 164:17 164:23 165:2 165:24 166:4 166:8 166:20 167:5 169:1 169:10 170:23 172:13 172:20 173:17 173:20 174:11 174:20 174:21 175:15 175:25 177:4

**your**(54) 177:9 177:14 177:19 178:19 178:24 179:10 182:1 182:15 182:19 182:19 183:9 184:4 184:11 184:12 184:13 184:21 185:17 188:6 188:14 188:17 190:3 192:6 193:1 196:19 198:4 198:11 198:24 203:15 205:4 205:23 210:17 213:6 215:11 218:23 219:4 220:23 222:12 223:15 223:24 224:18 224:21 225:1 225:7 225:15 225:24 226:8 226:10 227:13 227:22 228:6 229:3 229:13 229:20 229:22

**yourself**(5) 12:6 136:14 165:18 166:16 174:17

| Word | Page:Line |
|---|---|

**you're**(9) 112:11  113:8  115:8  123:3
126:23  127:2  130:9  134:8  134:25

**you've**(2) 119:17  133:4
**zell**(3) 4:45  5:4  137:7
**zensky**(51) 2:34  2:36  12:25  13:3  13:4  13:9
 13:14  13:18  13:20  15:14  16:8  22:23  23:8
24:11  24:16  34:8  44:4  108:14  108:21
108:24  116:12  116:14  118:3  135:7  135:11
135:12  135:22  140:13  140:17  143:12
143:14  145:14  145:16  150:13  150:17  151:3
 151:7  152:17  153:15  155:14  155:16  157:3
157:19  158:13  158:16  158:25  159:9  159:14
 159:17  159:25  160:4

**zero**(9) 31:10  88:10  125:18  126:18  126:21
126:25  148:10  152:5  193:22

**zloto**(1) 7:28
**zuckerman**(3) 3:36  5:26  11:8
**"january**(1) 127:12
**"publishing**(1) 126:1
**"summary**(2) 122:12  124:16
**"third-party**(2) 130:6  131:3
**"tribune**(2) 121:5  121:21