```
                   IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE


IN RE:                        )    Case No. 08-13141-KJC
                              )
TRIBUNE COMPANY               )    Chapter 11
                              )
                              )    Courtroom 5
                              )    824 Market Street
              Debtors.        )    Wilmington, Delaware
                              )
                              )    March 16, 2011
                              )    9:30 a.m.


                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:              Sidley Austin, LLP
                          BY: JAMES BENDERNAGEL, ESQ.
                          BY: KEVIN LANRTY, ESQ.
                          BY: COLLEEN FEARNEY, ESQ.
                          BY: DAN LIEBENTRITT, ESQ.
                          BY: JAMES CANLON, ESQ.
                          One South Dearborn
                          Chicago, IL 60603
                          (312) 853-7000

                          Cole, Schotz, Meisel, Forman
                          & Leonard, P.A.
                          BY: NORMAN PERNICK, ESQ.
                          500 Delaware Ave., Ste. 1410
                          Wilmington, DE 19801
                          (302) 652-3131

ECRO:                     AL LUGANO

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For JP Morgan:                     Davis Polk & Wardwell
                                   BY: BENJAMIN KAMINETZKY, ESQ.
                                   BY: DONALD S. BERNSTEIN, ESQ.
                                   BY: MICHAEL RUSSANO, ESQ.
                                   BY: ELLIOT MOSKOWITZ, ESQ
                                   BY: DENNIS GLAZER, ESQ.
                                   450 Lexington Avenue
                                   New York, NY 10017
                                   (212) 450-4000

                                   Richards Layton & Finger
                                   BY: BOB STEARN, ESQ.
                                   BY: MARK COLLINS, ESQ.
                                   One Rodney Square
                                   920 North King Street
                                   Wilmington, DE  19801
                                   (302) 651-7700

For Law Debenture:                 Bifferato Gentilotti
                                   BY: GARVAN MCDANIEL, ESQ.
                                   800 North King Street
                                   Plaza Level
                                   Wilmington, DE 19801
                                   (302) 429-1900

                                   Kasowitz Benson Torres &
                                   Friedman, LLP
                                   BY: PAUL BURGO, ESQ.
                                   BY: MATTHEW STEIN, ESQ.
                                   1633 Broadway
                                   New York, NY  10019
                                   (212) 506-1717

For Aurelius:                      Akin Gump Strauss Hauer & Feld
                                   BY: ABID QUERSHI, ESQ.
                                   BY: DANIEL GOLDEN, ESQ.
                                   BY: DAVID ZENSKY, ESQ.
                                   BY: DEBBIE NEWMAN, ESQ.
                                   One Bryant Park
                                   New York, NY 10036
                                   (212) 872-1000

                                   Ashby & Geddes
                                   BY: AMANDA WINFREE, ESQ.
                                   500 Delaware Avenue
                                   Wilmington, DE  19899
                                   (302) 654-1888

APPERANCES:
(Continued)

For Barclays:                    DLA Piper
                                 BY: MICHELLE MARINO, ESQ.
                                 1251 Avenue of the Americas
                                 New York, NY  10020-1104
                                 (212) 335-4500

For Special Committee of the
Board of Directors:              Jones Day
                                 BY: LAUREN BUONAME, ESQ.
                                 77 West Wacker
                                 Chicago, Illinois 60601
                                 (312) 782-3939

                                 Sidley Austin
                                 BY: DAVID MILES, ESQ.
                                 BY: FONALD FLAGG, ESQ.
                                 One South Dearborn
                                 Chicago, IL 60603
                                 (312) 853-7000

For Official Committee
of Unsecured Creditors:          Landis, Rath & Cobb
                                 BY: ADAM G. LANDIS, ESQ.
                                 BY: DANIEL B. RATH, ESQ.
                                 919 Market Street, Suite 1800
                                 Wilmington, DE 19801
                                 (302) 467-4400

                                 Chadbourne & Parke, LLP
                                 BY: DAVID LEMAY, ESQ.
                                 BY: THOMAS MCCORMACK, ESQ.
                                 BY: HOWARD SEIFE, ESQ.
                                 BY: ANDREW ROSENBLATT, ESQ.
                                 BY: ROBERT SCHWINGER, ESQ.
                                 BY: MARC ASHLEY, ESQ.
                                 BY: DOUGLAS DEUTSCH, ESQ.
                                 30 Rockefeller Plaza
                                 New York, NY 10112
                                 (212) 408-5100

                                 Zuckerman Spaeder
                                 BY: GRAEM BUSH, ESQ.
                                 BY: ANDREW GOLDFARB, ESQ.
                                 BY: JAMES SOTTILE, ESQ.
                                 1800 M Street, NW
                                 Suite 1000
                                 Washington, DC 20036
                                 (202) 778-1800

```
APPEARANCES:
(Continued)

For Merrill Lynch:              Potter Anderson & Carroon, LLP
                               BY: LAURIE SILVERSTEIN, ESQ.
                               BY: R. STEPHEN MCNEILL, ESQ.
                               Hercules Plaza
                               1313 North Market Street
                               6th Floor
                               Wilmington, DE  19801
                               (302) 984-6033

                               Kay Scholer
                               BY: JANE PARVER, ESQ.
                               BY: MADLYN PRIMOFF, ESQ.
                               425 Park Avenue
                               New York, NY  10022-3598
                               (212) 836-7042

For DBTCA:                     McCarter & English
                               BY: KATHARINE MAYER, ESQ.
                               BY: DAVID ADLER, ESQ.
                               405 N. King Street, 8th Fl.
                               Wilmington, DE  19801
                               (302) 984-6312

For Wilmington Trust:          Brown Rudnick
                               BY: HOWARD SIEGEL, ESQ.
                               185 Asylum Street
                               Hartford, CT  06103
                               (860)509-6519

                               Sullivan Hazeltine Allinson,
                               LLC
                               BY: WILLIAM SULLIVAN, ESQ.
                               4 East 8th Street, Suite 400
                               Wilmington, DE  19801
                               (302) 428-8191
TELEPHONIC APPEARANCES:

For SuttonBrook Capital:       SuttonBrook Capital
                               Management, LP
                               BY: CAROL L. BALE, ESQ.
                               (212) 588-6640
```

TELEPHONIC APPEARANCES:
(Continued)

For Official Committee of
Unsecured Creditors:                Chadbourne & Park, LLP
                                    BY:  MARC D. ASHLEY, ESQ.
                                    (212) 408-5194
                                    BY: JESSICA MARRERO, ESQ.
                                    (212)408-5100
                                    BY: MARC ROITMAN, ESQ.
                                    (212)408-5271
                                    BY: FRANK VAZQUEZ, ESQ.
                                    (212)408-5111

                                    Zuckerman & Spaeder, LLP
                                    BY: GRAEM BUSH, ESQ.
                                    BY: ANDREW CARIDAS, ESQ.
                                    (202) 778-1800

                                    Landis Rath & Cobb, LLP
                                    BY: MATTHEW B. MCGUIRE, ESQ.
                                    (302)467-4431

For Credit Agreement
Lenders:                            Wilmer Cutler Pickering Hale &
                                    Dorr
                                    BY: MICHELLE GOLDIS, ESQ.
                                    (212) 295-6329
                                    ANDREW N. GOLDMAN, ESQ.
                                    (212)230-8836

                                    Angelo Gordon & Co., LP
                                    BY: GAVIN BAIERA, ESQ.
                                    (212)692-0217

For Bank of America:                O'Melveny & Myers
                                    BY: DANIEL CANTOR, ESQ.
                                    (212) 326-2000
                                    BY: DANIEL SHAMAH, ESQ.
                                    (212) 326-2138

                                    Bank of America
                                    BY: ESTHER CHUNG, ESQ.
                                    (646) 855-6705

For Wilmington Trust:               Brown Rudnick, LLP
                                    BY:  KATHERINE BROMBERG, ESQ.
                                    (212) 209-4929
                                    BY: ROBERT STARK, ESQ.
                                    (212)209-4862

TELEPHONIC APPEARANCES:
(Continued)

For Tribune:                        Sidley Austin
                                    BY: GREG DEMO, ESQ.
                                    (312) 853-7758
                                    BY: KEN KANSA, ESQ.
                                    (312) 853-7163
                                    BY: JILLIAN LUDWIG, ESQ.
                                    (312) 853-7523
                                    BY: JANET HENDERSON
                                    (312)853-2931
                                    BY: BRETT MYRICK, ESQ.
                                    (312) 853-1049
                                    BY: BRYAN KRAKAUER, ESQ.
                                    (312)853-7515
                                    BY: PATRICK WACKERLY, ESQ.
                                    (312) 853-2931
                                    BY: ALLISON E. STROMBERG, ESQ.
                                    (312) 853-0497

                                    Tribune Company
                                    BY: GARY WEITMAN, ESQ.
                                    (312) 222-3394
                                    BY: DAVID ELDERSVELD, ESQ.
                                    (312) 222-4707
                                    BY: DON LIEBENTRITT, ESQ.
                                    (312)222-3651

For George Dougherty:               Grippo & Elden, LLC
                                    BY: GEORGE DOUGHERTY, ESQ.
                                    (312) 704-7700

For Mina Faltas:                    Viking Global Investors
                                    BY: MINA FALTAS
                                    (212) 672-7011

For Citibank:                       Paul Weiss Rifkind Wharton
                                    BY: KIRA DAVIS, ESQ.
                                    (212) 373-3000
                                    BY: ANDREW GORDON, ESQ.
                                    (212)373-3543
                                    BY: ANDREW LEVY, ESQ.
                                    (202)223-7328
                                    BY: SHANNON PENNOCK, ESQ.
                                    (212) 373-3000
                                    BY: ELIZABETH MCCOLM, ESQ.
                                    (212) 373-3000

TELEPHONIC APPEARANCES:
(Continued)

For Goldman Sachs:                Goldman Sachs & Company
                                  BY: SCOTT BYNUM, ESQ.
                                  (212) 902-8060
                                  BY: LEXI FALLON, ESQ.
                                  (212) 902-0791

For Former Special Committee
Of Tribune's Board of
Directors:                        Skadden Arps Slate Meagher &
                                  Flom
                                  BY: NICK CAMPANARIO, ESQ.
                                  (312) 407-0974

                                  Jones Day
                                  BY: LYNN MARVIN, ESQ.
                                  (312) 782-3939

For Aurelius Capital
Management:                       Aurelius Capital Management LP
                                  BY: MATTHEW A. ZLOTO, ESQ.
                                  (646) 445-6518

                                  Akin Gump Strauss Hauer & Feld
                                  BY: SHAYA ROCHESTER, ESQ.
                                  (212) 872-1076
                                  BY: JOHN BERRY, ESQ.
                                  (212) 872-8075

                                  Friedman Kaplan Seiler &
                                  Adelman
                                  BY: KIZZY JARASHOW, ESQ.
                                  (212) 833-1115

For Morgan Stanley:               Weil Gotshal & Manges, LLP
                                  BY: ASHISH D. GANDHI, ESQ.
                                  (212) 310-8024
                                  BY: DAVID LITVACK, ESQ.
                                  (212)310-8361
                                  BY: ANDREA SAAVEDRA, ESQ.
                                  (212) 310-8544

For Serengeti Asset
Management:                       Serengeti Asset Management
                                  BY: NICHOLAS HEILBUT, ESQ.
                                  (212) 466-2167

TELEPHONIC APPEARANCES:
(Continued)

For Anna Kalenchits:              Anna Kalenchits
                                  (212)723-1808

For JP Morgan Chase Bank:         Davis Polk & Wardwell, LLP
                                  BY: PETER KIM, ESQ.
                                  (212) 450-3028

                                  JP Morgan Chase Bank NA
                                  BY: SHACHAR MINKOVE, ESQ.
                                  (212) 834-7174

For Partner Fund Management:      Vinson & Elkins, LLP
                                  BY: LANCE A. MULHERN, ESQ.
                                  (212) 237-0184

For Oaktree Capital
Management:                       Oaktree Capital Management
                                  BY: KENNETH C. LIANG, ESQ.
                                  (213) 830-6422

For Brigade Capital
Management:                       Brigade Capital Management
                                  BY: NEIL LOSQUADRO
                                  (212) 745- 9758

For Royal Bank of Scotland:       Royal Bank of Scotland
                                  BY: COURTNEY ROGERS, ESQ.
                                  (203) 897-4815

For Eos Partners:                 Eos Partners
                                  BY: MIKE J. SCHOTT, ESQ.
                                  (212) 593-4046

For Prof. Expert:                 Raymond James
                                  BY: ROBERT SCHWARTZ, ESQ.
                                  (212) 872-7441

For Contrarian Capital
Management:                       Contrarian Capital Management
                                  BY: JOSHUA TRUMP, ESQ.
                                  (203) 862-8299

For Alvarez & Marsal, Inc.:       Alvarez & Marsal, Inc.
                                  BY: BRIAN WHITTMAN, ESQ.
                                  (312) 601-4227

TELEPHONIC APPEARANCES:
(Continued)

For Macquarie Capital:          Macquarie Capital (USA)
                                BY: RUSHABH VORA, ESQ.
                                (212) 231-6311


For Deutsche Bank AG:           Bingham McCutchen, LLP
                                BY: JEFFREY OLINSKY
                                BY: CHAD VALERIO
                                (212) 705-7857

                                Kramer Levin Neftalis &
                                Frankel, LLP
                                BY: JORDAN KAYE, ESQ.
                                (212) 715-9489

                                McCarter & English
                                BY: JOSEPH T. BOCCASSINI, ESQ.
                                (973) 639-6935

For Barclays:                   Barclays Capital, Inc.
                                BY: BEN WILSON
                                (212)412-7642
                                BY: EITAN MELAMED, ESQ.
                                9310) 907-0455

                                Mayer & Brown, LLP
                                BY: MICHAEL L. SIMES, ESQ.
                                (212) 506-2607
                                BY: AMIT K. TREHAN, ESQ.
                                (212) 506-2500
                                BY: JEAN MARIE ATAMIAN, ESQ.
                                (212) 506-2678

For Law Debenture Trust:        Kasowitz Benson Torres & Park
                                BY: CHRISTINE MONTENEGRO, ESQ.
                                BY: SHERON KORPUS, ESQ.
                                BY: DAVID ROSNER, ESQ.
                                (212) 506-1715

For Cooperstown Capital
Management:                     Cooperstown Capital Management
                                BY: PETER COURI, ESQ.
                                (203) 552-6900

For Wells Fargo:                White & Case
                                BY: SCOTT GREISSMAN, ESQ.
                                (212) 819-8567

TELEPHONIC APPEARANCES:
(Continued)

For Robert R. McCormick
Foundation:                     Katten Muchin Rosenman, LLP
                                BY: DAVID C. BOHAN, ESQ.
                                (312) 902-5566

For Interested Party:           Canyon Partners
                                BY: CHANEY M. SHEFFIELD, ESQ.
                                (310) 272-1062


For Non-Party:                  Duff & Phelps
                                BY: JOE LIEWANT
                                (973) 775-8336

For Tricadia Capital:           Tricadia Capital
                                BY: IMRAD AHMED, ESQ.
For Silver Point Capital:       Silver Point Capital
                                BY: MARK EHMER, ESQ.
                                (203) 542-4219

For Chicago Fundamental
Investment Partners:            Chicago Fundamental Investment
                                BY: PETER GRUSZKA, ESQ.
                                (312) 416-4215

For Board of Committee:         Jones Day
                                BY: XOCHITL STROHBEHN, ESQ.
                                (212) 326-3691
                                BY: BRAD ERENS
                                (312)269-4050

For Dow Jones News Wires:       Dow Jones & Company
                                BY: PEG BRICKLEY, ESQ.
                                (215) 462-0953

For Matthew Frank:              Alvarez & Marsal, Inc.
                                BY: MATTHEW FRANK, ESQ.
                                (312) 371-9955


For Chandler Bigelow:           Sperling & Slater
                                BY: CLAIRE P. MURPHY, ESQ.
                                (312) 641-3200
                                BY: DANIEL A. SHMIKLER, ESQ.
                                (312) 641-3200

TELEPHONIC APPEARANCES:
(Continued)

For Merrill Lynch:                    Kaye Scholer, LLP
                                      BY: JONATHAN AGUDELO, ESQ.
                                      (212)836-8369

For Robert McCormick
Foundation:                           Katten Muchin Rosenman, LLP
                                      BY: JOHN SIEGER, ESQ.
                                      (312)902-5294

For DK Partners:                      DK Partners
                                      BY: EPHRAIM DIAMOND, ESQ.
                                      (646) 282-5841

For Jefferies & Company:              Jefferies & Company
                                      BY: JUSTIN BRASS, ESQ.
                                      (203) 708-5847

For Arrowgrass Management:            Arrowgrass Capital Partners,
                                      U.S., LP
                                      (212) 584-1160

For Smith Management:                 Smith Management
                                      BY: JENNIFER WILD, ESQ.
                                      (212) 418-6877

For One East Partners:                One East Partners
                                      BY: SINA TOUSSI, ESQ.
                                      (212) 230-4510

1   WILMINGTON, DELAWARE, WEDNESDAY, MARCH 16, 2011, 9:35 A.M.

2                   THE CLERK:  Be seated, please.

3                   THE COURT:  Good morning, everyone.

4                   ALL:  Good morning, Your Honor.

5                   THE COURT:  Are we ready to resume with Mr.

6   Gropper's direct testimony?

7                   MR. ZENSKY:  We are, Your Honor, thank you very

8   much.

9                   THE COURT:  I remind you, sir, that you are still

10  under oath.

11                  MR. GROPPER:  Thank you.

12                  MR. ZENSKY:  And for the record, again, David

13  Zensky of Akin, Gump, Strauss, Hauer & Feld.

14                      DIRECT EXAMINATION (Resumed)

15  BY MR. ZENSKY:

16  Q     Good morning, Mr. Gropper.

17  A     Good morning.

18  Q     Let's start today on a positive note and talk about

19  our plan.  Has Aurelius cosponsored an alternative plan of

20  reorganization for these Chapter 11 cases?

21  A     We have.

22  Q     Okay.  And who are the proponents of that plan?

23  A     It is our firm and the indenture trustees for the

24  senior notes and the PHONES.

25  Q     And why did Aurelius choose to sponsor an alternative

1    plan of reorganization?

2    A    We thought it was important to provide for an option

3    for the company to exit bankruptcy, but to do it in a way

4    such that the LBO claims could be adjudicated on a total and

5    complete arm's length basis rather than under the pressure

6    of a Chapter 11 case.  Under either plan, we know there's

7    going to be litigation after the plan goes effective because

8    both plans contemplate litigation.  And our plan is as true

9    to the DCL plan in every respect possible with one very

10   important difference.  We don't settle the most valuable

11   causes of action for a fraction of their net -- of their

12   worth.  We allow them to be adjudicated on a post effective

13   date basis with the trust.

14   Q    And is that the major different between the two plans

15   in your view?

16   A    Yes.

17   Q    Okay.  Now if the DCL plan were to be confirmed, how

18   much money would Aurelius stand to receive upon

19   consummation?

20   A    We would receive over $200 million in cash.

21   Q    And yet Aurelius is opposed to that plan?

22   A    We are opposed to that plan.  There is no question in

23   my mind that if our plan were confirmed, the pre-LBO

24   creditors would receive significantly greater amount of

25   money under our plan construct.  And I've never been more

1  certain about a conclusion like that in my sixteen years in

2  the business.

3  Q     Okay.  The note -- why do you say that?  Why do you

4  believe the noteholder plan will result in greater

5  recoveries for the non-LBO creditors?

6  A     Well, because I don't think the settlement under the

7  debtors' plan was negotiated on the full arm's length basis

8  with a real principal in the room to negotiate it.  I think

9  that if the LBO lenders were on the other side of a truly

10  independent litigation trustee, that there will be an arm's

11  length negotiation.  And it's actually my expectation that

12  many of the claims under our plan will settle rather than be

13  litigated because I don't think the LBO lenders will want to

14  put to the test the litigation, particularly a number of

15  conclusions that the examiner found would be favorable to

16  the pre-LBO Lenders.

17  Q     So do you agree with the criticism of the DCL Group

18  that the noteholder plan will lead to years and years of

19  litigation?

20  A     Not at all.

21  Q     How did the other noteholders vote in terms of amount

22  of holdings?

23  A     Sure.  Ninety-two percent of the senior notes voted in

24  favor of our plan, 100 percent of the PHONES voted in favor

25  of our plan.

1    Q      Does the noteholder plan have a bar order of any kind?

2    A      It does not.

3    Q      Okay.  And do you believe the noteholder plan has been

4    proposed in good faith?

5    A      Yes.

6    Q      Now Mr. Hartenstein testified that he thought the

7    noteholder plan requires that 65 percent of the equity of

8    Tribune be held in trust.  Let me ask you some questions

9    about that.  First, does the noteholder plan require that

10   equity of Tribune be held in trust?

11   A      It does not.

12   Q      And what, in fact, would be held in trust under the

13   noteholder plan?

14   A      Warrants if new Tribune are held in the trust.

15   Q      And is it required under the noteholder plan that 65

16   percent of the value through a warrant be held in trust?

17   A      No.  Depending on how the Court may determine a couple

18   of issues, one being the amount of the PHONES debt, whether

19   it's in the amount of the low PHONES or what's colloquially

20   referred to as the low PHONES or the high PHONES or whether

21   sharing applies in the event of avoidance or not, those two

22   particular options actually impact dramatically the amount

23   of warrants that are held back.

24   Q      Okay.  And if I could ask you to look at the

25   noteholder plan disclosure statement, Mr. Gropper and I

1  believe it's Page 30, you identify for the Court the impact

2  that the resolution of those issues would have as set forth

3  in our disclosure statement.

4  A    So while it is -- let me make sure I'm looking at the

5  right one, yes, okay.  So if the PHONES are allowed in the

6  low amount and sharing applies, the amount held in the trust

7  will be 49 percent, warrants for 49 percent of the company.

8  Q    Okay.  And does the DCL plan also ask for a resolution

9  of those issues as part of confirmation?

10  A    It does.  I mean, we didn't want to require a

11  resolution because if the Court doesn't want to make that

12  determination at the current time, then we didn't want to

13  force that result, but the senior lenders want to agree

14  amongst themselves whether sharing applies or not, then they

15  can be resolved and more stock can be distributed.

16  Q    Okay.  So as things stood at the time of the original

17  disclosure statement, depending on how the Court resolves or

18  if it resolves these issues, up to 52 percent of the value

19  would be distributed on consummation?

20  A    That's right.

21  Q    Okay.  Now have you run any additional calculations

22  based on the possibility that the Court might find the value

23  of the company to be greater than 6.75 billion?

24  A    Yes.  What our plan seeks to do is it seeks to hold

25  back enough money to pay the pre-LBO creditors in the event

1  they win.  So if the company is worth more, you need to hold

2  back less stock and you can distribute more stock.  So if

3  the DEV is determined to be higher than $6.75 billion, you

4  hold back less stock in the distribution trust than if it's

5  worth $6.75 billion.

6  Q    Okay.  And can I ask you to turn to Tab 11 in your

7  binder and just identify for the Court where the holdback

8  amount or rather the distribution amount is set forth based

9  on a higher DEV?

10 A    All right.  So if you -- I don't think the pages are

11 numbered, but if you page to where it says Chart 1

12 assumptions and what chart -- sorry.  You need to flip the

13 screen over.  Okay.  Well, in the binder it's the third

14 page.  And at the top of the page it says Chart 1

15 Assumptions.  And what this chart indicates is that an $8.3

16 billion DEV only 43 percent of the value of the reorganized

17 Tribune is held back in the distribution trust.

18 Q    In the form of the warrant we talked about?

19 A    In the form of the warrant.

20 Q    Okay, great.  Now let me talk to you a little bit

21 about corporate governance under the noteholder plan.  As

22 originally set forth in the noteholder plan and disclosure

23 materials, how was the Tribune board upon emergence to be

24 selected?

25 A    Four members of the board are selected by the banks,

1    one board slot is reserved for the CEO if his contract so

2    provides, and two are -- board members are initially

3    appointed by Aurelius.  They're subject to Court approval.

4    They must be independent of Aurelius and they can be

5    replaced at any time by the members of the distribution

6    trust board who are also independent from Aurelius.

7    Q    Okay.  And has Aurelius nominated two candidates for

8    those board seats?

9    A    We have.

10   Q    Okay.  And who were those?

11   A    Mort Handale [ph] and Curt Seller.

12   Q    Okay.  Have the LBO lenders nominated the four

13   directors that they would be permitted to nominate under the

14   noteholder plan?

15   A    They have not.

16   Q    Okay.  Have you filed any supplement to address that

17   fact?

18   A    Yes, we have.  What we have provided for is that we've

19   asked the debtors to tell us which of the existing board

20   members should serve in the five slots that are open because

21   there is currently no CEO until another arrangement can be

22   made or the senior lenders choose to appoint board members.

23   Q    Okay, great.  Now the DCL brief in opposition to the

24   noteholder plan in its opening brief says or argues that the

25   noteholder plan hands control over reorganized Tribune's

1  equity to Aurelius and Wilmington Trust.  Do you agree with

2  that?

3  A      It's completely incorrect.

4  Q      Now Mr. Hartenstein testified in his testimony that in

5  his view the noteholder plan leaves the company with

6  undefined ownership.  He called it a man behind the curtain.

7  Do you recall that?

8  A      I read the transcripts.

9  Q      Okay.  And do you agree with that characterization of

10  the noteholder plan?

11  A      I don't agree at all.  There is a distribution trust

12  which is going to control the equity.  The members of the

13  board of the distribution trust are totally independent of

14  our firm.  And then after the LBO causes of action are

15  resolved, equity gets distributed.  There's no guarantee

16  under the DCL plan as to who's going to own the equity

17  either.  There are no lockup agreements.  There are no

18  shareholder agreements that provide that the three largest

19  creditors hold onto their stock.  And it's quite common for

20  equity to turnover when companies come out of bankruptcy

21  because the distressed investors sell their position and the

22  on the run mutual funds buy their position.  That happens

23  all the time.  So there's no way to foresee who the

24  ownership is of the DCL plan either.

25  Q      You mean ownership of the reorganized Tribune?

1    A      Yes.

2    Q      Now Mr. Hartenstein also said that in his view, the

3    noteholder plan would inhibit the company's ability to

4    invest or enter partnerships.  Is that something you

5    considered before proposing the noteholder plan?

6    A      We did.  And it's wrong.  I mean, there's nothing

7    about our plan that inhibits the company's ability to

8    operate as it normally would.  The board will be controlled

9    by the banks.  The board isn't controlled by -- they get

10   four directors out of seven.  So any strategic transaction

11   the company wants to enter into it can.  The charter

12   provides for complete flexibility to run the business.  And

13   so value can be maximized.  And, in fact, everyone is

14   aligned under out plan to maximize value.  It's not like

15   Aurelius would have some incentive to not maximize value,

16   because the bigger the value the distribution trust is, the

17   bigger the value that gets distributed to everyone.  So

18   there's no reason for the parties not to work to maximize

19   value under our plan.

20   Q      Okay.  Now there's been testimony from several

21   witnesses about something the debtors call the purity or the

22   purer or purity plan?

23   A      I've heard that.

24   Q      Okay.  And the testimony has been that that

25   contemplated holding cash in reserve and having the claims

1  against the banks litigated post-emergence.  Are you

2  familiar with that?

3  A    Yes.

4  Q    Okay.  Why didn't the noteholders propose a cash

5  reserve as opposed to a warrant being held in reserve?

6  A    Well, we're perfectly fine with a cash reserve.  We're

7  not trying to hold equity in reserve of the company.  The

8  reason that we didn't propose enough cash to pay the pre-LBO

9  creditors in full is that that would require a different

10  capital structure.  And we didn't want to get in a debate

11  with the debtors about what the appropriate debt capacity

12  was of the company.  If the debtors want to say okay, fine,

13  we'll escrow enough money and due the pure purity plan,

14  that's perfectly acceptable to us.

15  Q    Okay.  Can you look at the tab in your binder, the

16  document under 10, Mr. Gropper.

17              THE COURT:  I take it that's from the phone

18  connection.  This is Judge Carey, I hear someone talking on

19  the phone connection.  Let me ask that you put your phone on

20  mute, please.

21              MR. ZENSKY:  Do you have that document in front

22  of you, sir?

23              MR. GROPPER:  I do.

24              MR. ZENSKY:  And can you identify that?

25              MR. GROPPER:  It's the declaration that I signed

1  in support the noteholder plan.

2          MR. ZENSKY:  Okay.  And, Your Honor, this

3  declaration was filed back in the third week of February, I

4  think, and we would just proffer the declaration at this

5  point in terms of the additional 1129 factors.

6          THE COURT:  Is there any objection to the

7  admission of NPP 224?

8  (No audible response.)

9          THE COURT:  I hear no response.  It's admitted

10  without objection.

11  (NPP Exhibit 224 admitted in evidence.)

12          MR. ZENSKY:  Thank you.  Now let me ask you to

13  turn to the other binder, Mr. Gropper.  The first document

14  which we put tabs in for is Noteholder Exhibit 31 and it's

15  the Bates stamps that run from BB, a bunch of zeros, 1

16  through 163.  Do you have that, sir?

17          MR. GROPPER:  Yes.

18          MR. ZENSKY:  Okay.  Can you identify that

19  document?

20          MR. GROPPER:  That is the waterfall model that

21  we, Aurelius created at the request of Akin to facilitate

22  Dr. Baron's analysis.

23          MR. ZENSKY:  Okay.  Does this document --

24          MR. KAMINETZKY:  Your Honor, we have an objection

25  we've like to have heard on this.

1          MR. ZENSKY:  Well, I'd like to lay the foundation

2    and they can object, Your Honor, when I offer it.

3          THE COURT:  Let's -- I'll allow the -- Mr. Zensky

4    to lay some foundation and then we'll deal with the

5    objection.  Again, Mr. Gropper, I'll caution you that when

6    you see someone standing on the other side, not to respond

7    to a question until I've resolved an objection.

8          MR. GROPPER:  Okay.

9          THE COURT:  Thank you.

10   BY MR. ZENSKY:

11   Q    Does this document have anything to do with the

12   examiner model that we talked about yesterday?

13   A    It does not.

14   Q    Okay.  Did Mr. Brodsky participate in preparing this

15   document?

16   A    Not in any way.

17   Q    Who was it who prepared it at Aurelius?

18   A    It was provided -- prepared at my supervision by Matt

19   Zloto and Dennis Preato together.

20   Q    Okay.  And was it produced in discovery?

21   A    It was.

22   Q    Okay.

23   A    And I was questioned about in my deposition.

24   Q    Why was this document prepared?

25   A    This document was prepared because -- well, what this

1  document seeks to do is to create answers to what happens in

2  certain instances of avoidance or not, upstreaming or not,

3  WEAR or not, all predicated on the assumptions of the

4  examiner and it was used to facilitate Dr. Baron's decision

5  reanalysis such that at the end of the branch it could be

6  determined how much money would be at the end of a branch.

7  And it is just a basic waterfall recovery model that runs 19

8  scenarios that were requested by Akin and Dr. Baron.  And

9  they said run a waterfall model with these 19 scenarios and

10 tell us what numbers it kicks out and that's what we did.

11 Q     Okay.  Did someone use a calculator or is this

12 prepared through an EXCEL program?

13 A     It's an EXCEL model.

14 Q     Okay.  Have you used EXCEL models prior to this

15 occasion?

16 A     For a very long time.

17 Q     Okay.  Do they generally produce correct mathematical

18 results?

19 A     Yes, if the assumptions are correct.

20        MR. RUSSANO:  Anymore foundation?

21        MR. ZENSKY:  What?

22        MR. RUSSANO:  Anymore foundation?

23        MR. ZENSKY:  No, I'm still going.

24        MR. RUSSANO:  Okay.

25 (Laughter)

1          MR. ZENSKY:  Does the document marked as

2    Noteholder 31 contain any probability of outcome of

3    litigation or is it a data compilation?

4          MR. GROPPER:  It's a data compilation.  There's

5    no probabilities in the model whatsoever.

6          MR. ZENSKY:  Okay.  Does it reflect any opinion

7    testimony of you or someone at Aurelius?

8          MR. GROPPER:  Not at all.

9          MR. ZENSKY:  And I'd like to take the witness

10   through and tell the Court just how the document works.  I

11   don't know if you'd like to hear from my adversary at this

12   point or not but --

13         THE COURT:  Well, he's going to keep hovering

14   till we do so.

15   (Laughter)

16         THE COURT:  We might as well hear any objection

17   now.

18         MR. RUSSANO:  Apologies for hovering, Your Honor.

19   Michael Russano from Davis Polk on behalf of JP Morgan and

20   for these purposes, the proponent group.

21         Mr. Gropper is not an expert.  We established

22   that yesterday.  And unlike the model yesterday that Mr.

23   Gropper was allowed to testify to because it informed their

24   investment decisions, he has already said that this model,

25   the so called waterfall analysis was prepared exclusively

1    for the purpose of providing to his expert, Dr. Baron.  And

2    we don't think that that has anything to do with what a lay

3    witness can testify to.  It has nothing to do with his

4    investment decisions or what Aurelius was thinking at the

5    time.  And this in clear violation of Rule 701.

6              And, Your Honor, I have cases that I can hand up

7    to you, if you like, that stand for the proposition that a

8    lay witness can't offer expert opinions that are prepared

9    solely for the purpose of litigation.  And that's what this

10   model was prepared for.

11             And again, Your Honor, I think that general rule

12   makes sense and we don't have an expert report from Mr.

13   Gropper.  He hasn't been subject to expert discovery.  We

14   haven't had an opportunity to test whether or not he's

15   qualified to speak to this waterfall analysis.  As far as I

16   understand, they still intend to put up Dr. Baron to talk

17   about this analysis.  And for Mr. Gropper to testify to this

18   is essentially a lay witness trying to offer expert opinion

19   to the Court.  And I don't know how a lay percipient witness

20   can do that.  He's not talking about any of his observations

21   or summaries based on his personal observation of facts.

22   This is purely a technical analysis of certain claims.

23             Rule 701 is clear, a lay witness doesn't get to

24   talk about testimony that is based on technical analysis.

25   Again, he said in -- he just said a moment ago that this was

1    prepared for the purpose of litigation to provide to Dr.

2    Baron.  That's very consistent with what he said in his

3    deposition.  We asked him a question.  Was this prepared for

4    Dr. Baron?  He said yes.  We so no reason why he should be

5    permitted to testify to these topics.  And I can show you

6    these cases, Your Honor, but I'm sure the rule is pretty

7    familiar to you.

8              THE COURT:  All right.  Mr. Zensky?

9              MR. ZENSKY:  Well, I certainly a world to say

10   about this, Your Honor.  Okay.  In the first place, this was

11   produced back on February 9, the day after the expert

12   report.  And Dr. Baron's report said clearly the numbers

13   that we're talking about were supplied to him.  Just like

14   Dr. Black or Professor Black rather, relied on Lazard and

15   Alvarez to give him certain data input, obviously experts

16   can pull in data from other sources.  Dr. Baron's a decision

17   [indiscernible] specialist and doing it for I think 30

18   years, but not someone who could run his own waterfall

19   model.  So we had to supply him the dollars, number one.

20             Number two, this was put on our exhibit list,

21   served on February 18 as Document 31 and motions in limine

22   were due on February 22.  So to come up now and say that

23   this wasn't timely, it was obvious we were relying on this

24   to supply the dollar output and I would suggest at a minimum

25   it's untimely for them to start throwing cases at the Court.

1          Number three, they are fully prepared to rebut

2  this if they disagree.  They have a rebuttal report from

3  Golden that says that we disagree with Assumption A or

4  Assumption B.  And by the way, I didn't finish my

5  foundation, Your Honor.  The numbers in here come from the

6  debtors' disclosure statement.  This is a waterfall

7  analysis, an EXCEL spreadsheet where you plug in the claims

8  of the different classes of creditors, what the recovery

9  would be, and then as I will show, if the Court permits me,

10  that each scenario just has different assumptions and says

11  what are recoveries to different creditors if those take

12  place.  As he's already testified, it does not contain his

13  opinions.  He's not being offered as an expert to say these

14  are the outcomes.  It is a calculation, Your Honor, and he

15  is perfectly competent under 701 to lay the foundation for

16  this document.  And there are multiple cases in the Third

17  Circuit that would support that.

18          So if they haven't forfeited the opportunity to

19  brief that, at a minimum, we would have the opportunity to

20  respond, but it is certainly in a bankruptcy case, multiple

21  people who are not brought in as independent experts can

22  talk about a waterfall analysis.

23          MR. RUSSANO:  If I may be heard in response.

24          THE COURT:  Briefly.

25          MR. RUSSANO:  Your Honor, this is exactly what

1    Dr. Baron is going to talk about.  This was provided to Dr.

2    Baron.  This is the province of an expert opinion.  At his

3    deposition, he was asked why was this model created?  Was it

4    created for Dr. Baron?  Yes, it was.  He didn't say it was

5    created for -- make Aurelius' investment decisions.  Had

6    anything to do with as a lay witness his decision making

7    rational.  And we think, Your Honor, that this type of

8    testimony should not be permitted from a lay witness.  We

9    have not had an opportunity to discover the basis for what

10   he's going to talk about and we request that it be denied.

11            THE COURT:  Well, Mr. Zensky says it was produced

12   on February 9.

13            MR. ZENSKY:  Yes.  And they spent 20 pages at his

14   deposition asking him about how it worked.  I can hand that

15   up.

16            THE COURT:  See, I -- he -- well, from the

17   Court's standpoint, here's the dilemma.  701 and 702 were

18   separated to make dealing with lay witness testimony easier.

19   I don't think that's really happened, not in my experience

20   anyway.

21   (Laughter)

22            THE COURT:  And for me and maybe it's my own

23   shortcoming, it's created more confusion rather than less.

24   And like so much -- well, like some lay testimony proposed

25   in this Court, it's a mix of things, you know.  It could --

1  I mean, I could look at it both ways, frankly.  I could say

2  yeah, it's a technical analysis of certain data, whatever

3  the source, that it takes someone with some level of

4  expertise to actually put together.

5           I guess the other thought I have is it is

6  apparently not disputed that it's something upon which the

7  expert is going to rely in giving his opinion.  So it's

8  likely to come into the record in any event.  So I say to

9  the objector here, what's the difference?

10           MR. RUSSANO:  The difference is, Your Honor, when

11  Dr. Baron talks about this, we had an opportunity to depose

12  Dr. Baron.  We had an opportunity to review Dr. Baron's

13  expert report, to review the materials that he relied upon

14  informing his opinions.  We have no idea how it is that Mr.

15  Gropper and his colleagues formed the basis and what they

16  relied upon in creating this model.

17           THE COURT:  Well then there's a disconnect here

18  because Mr. Zensky just said to me you had the opportunity

19  to examine Mr. Gropper about this at his deposition.  What

20  am I missing here?

21           MR. RUSSANO:  And, Your Honor, on that point,

22  unlike an expert witness who cannot refuse to answer

23  questions on the basis of privilege, Mr. Gropper has

24  repeatedly asserted privilege when we've tried to probe into

25  the underlying assumptions of this model and other models.

1  He's -- and we've been -- we have not been able to get

2  answers to those questions precisely because we've been told

3  that he made those decisions based on the advice of counsel.

4          MR. ZENSKY:  Your Honor the -- here's the

5  deposition where they questioned him.  There is no report or

6  work papers the data came from their disclosure statements

7  and the assumptions are set forth on the pages.  There's no

8  report that could have further educated them about this.

9  And Dr. Baron cannot talk to this.  These are inputs he

10  needed to complete his assignment.

11          THE COURT:  Well is it true that there were

12  questions that Mr. Gropper was not answering because of a

13  claim of privilege?

14          MR. ZENSKY:  Not insofar as how the model worked.

15  If he was asked for his opinion on a legal question, yes,

16  but not insofar as how the mathematics of the model works.

17  And that's all it's being offered for.  Again, this is not

18  offered for any lay opinion about a legal issue, it's a

19  waterfall analysis.

20          MR. KAMINETZKY:  Your Honor, I can kind of

21  sharpen this point.  If you toggle to the next page on this

22  document, if you could blow up the box.  No, the top box

23  where it says assumptions.  And I was going to save this for

24  the cross, but you see, Your Honor, what these 19 scenarios

25  do is they have what -- they basically fiddle with the

1  assumptions in these blocks and then it says what each of

2  the creditors would receive with those assumptions.  You see

3  under the second line it says upstreaming is the first one.

4  And then non-avoidance LBO debt participation at the end and

5  you see yes and no.  So upstreaming, that's -- the first one

6  is upstreaming one of their theories.  The other one is

7  WEAR.  Okay?  That's what they call the WEAR.

8          I asked in connection with this model, I asked

9  Mr. Gropper several times in his deposition tell me about

10  upstreaming, one of the main assumptions that drive this

11  analysis.  He says I can't tell you anything about

12  upstreaming without divulging advice of counsel.  Well,

13  okay, could you tell me about the second assumption?  Could

14  you tell me about WEAR or what they call non-avoidance?  And

15  he said I can't tell you anything because anything I know is

16  inextricably intertwined with advice of counsel.  He said

17  that repeatedly any time I came to talking about the two

18  main assumptions that drive the dollars in this analysis, he

19  said everything I know is from counsel.

20          So, you know, that's fine for him to say, but,

21  you know, not for Dr. Baron to say.  So this whole, yes, he

22  did the math, but the whole drivers of value in this

23  waterfall analysis is something that he specifically said he

24  cannot talk about.  So, you know, did he add some numbers?

25  I'm sure he did, but what's then -- what is he adding to

1   this other than the fact that he handed it to Dr. Baron and

2   Dr. Baron is the one that we could ask the questions to

3   because he can't hide behind advice of counsel.

4            So, yes, other experts here relied on other

5   people to do some analysis like we heard about Lazard, et

6   cetera.  There we had Dr. Black on the stand and Dr. Black

7   we could ask questions about the analysis.  Did you test the

8   analysis, yes or no?  But the problem here is it's not that

9   this going to come in for Dr. Baron.  Of course it could

10  come in for Dr. Baron because he specifically relied on it

11  and we could ask him, well, why did you rely on it?  Why did

12  you think it's accurate?  What does this mean? What does

13  that mean?  What we have here is a lay witness who basically

14  said, here, I did this analysis, but I can't really tell you

15  what any of these assumptions mean because everything I know

16  about these main assumptions and I just pointed Your Honor

17  to the two assumptions that drive the dollar here, I know

18  from counsel.

19           MR. ZENSKY:  I was corrected by Ms. Chung, he was

20  questioned for 50 pages about this, Your Honor.  Again, the

21  question of whether what upstreaming means as a legal matter

22  or WEAR means as a legal matter is a question for the

23  parties to debate in Court.  This was not the witness to ask

24  those questions.  So to the extent Mr. Kaminetzky went into

25  asking his legal interpretation, there was an instruction,

1    but insofar as how the model and the mathematics works --

2              THE COURT:  Right.

3              MR. ZENSKY:  -- he answered every question.

4              THE COURT:  See, and that's the problem because

5    it's a mix of things.  Here's what my inclination, Mr.

6    Zensky is.  Let's reserve examination with respect to this

7    till a later time perhaps in the rebuttal case.  Let's hear

8    what the expert has to say.  I'd like to read the deposition

9    transcript, if I may.  And we'll see if at a later time

10   whether you still wish to pursue examination on this topic.

11   It should be permitted.  How is that?

12             MR. ZENSKY:  What I would ask, Your Honor,

13   because I think it would be helpful is just -- I wasn't

14   going to ask him about the conclusions, just to point to

15   where the data came from if we could get that on the record

16   now, that would be helpful to the Court's consideration.

17   And just so there's no mistake, Dr. Baron was supplied with

18   the output, if you look on Page 1, those are the collective

19   recoveries that this model shows, the non-LBO creditors

20   would receive under various scenarios.  He's not going to

21   testify about how this was put together.  Again, the totals

22   were supplied to him.  So there won't be testimony tomorrow

23   that will answer any questions that the Court has about

24   this.

25             MR. KAMINETZKY:  Well, Your Honor, then I mean,

1  that's even better because if you think about it then so

2  what we have is the person that prepared this analysis can't

3  talk about why the -- what these assumptions mean and why

4  they drive this many dollars or that many dollars because he

5  refused to answer that because of advice of counsel.  Then

6  handed the summary of that or the output of that to Dr.

7  Baron who Mr. Zensky I think just suggested won't be able to

8  say that either because he never saw the analysis.

9            So I think, you know, we've now really sharpened

10  the issue here because now there's a huge gap.  Everything

11  now -- so Dr. Baron relied on this, on something that Mr.

12  Gropper did that Mr. Gropper ran this model, but he didn't

13  understand what the assumptions meant because -- or he maybe

14  did understand, but he won't testify as to them because

15  everything he knows is through advice of counsel.

16            So I think we're in a very sharp situation here

17  because now we can't -- we know Dr. Baron's not going to be

18  able to answer questions and we know Mr. Gropper can't

19  answer questions because he refused to do so at his

20  deposition.

21            THE COURT:  Well, I don't know what Dr. Baron

22  will be able to say or not say because he hasn't taken the

23  stand yet.  So I think --

24            MR. KAMINETZKY:  So I guess we wait and see.

25            MR. ZENSKY:  Your Honor, can I add one other

1  thing that may have been lost in the colloquy?  The

2  committee designated a rebuttal expert from Golden that

3  recreated this waterfall and says well maybe this number

4  should be $200 million higher or this number lower.  So

5  there's no surprise element here.  They are prepared to show

6  that if they disagree with the output of the EXCEL

7  spreadsheet that we did it wrong, that may go to its

8  probity, but it shouldn't -- or the weight, but it shouldn't

9  go to its admissibility as a waterfall analysis and that's

10  all it's being offered for.

11          THE COURT:  Well and admissibility is the issue

12  here, I think as a threshold matter.  And I think we'll stay

13  with what I initially was inclined to do and that is let's

14  just reserve any further examination on this topic until

15  later.

16          MR. RUSSANO:  Thank you, Your Honor.

17          THE COURT:  Okay.

18          MR. ZENSKY:  If I can have a moment.  Okay.

19  Let's move on, Mr. Gropper.  Did you review Professor

20  Black's report?

21          MR. GROPPER:  Yes.

22          MR. ZENSKY:  And are you familiar with the six

23  scenarios that he determined to -- the six principle

24  scenarios that he chose to model?

25          MR. GROPPER:  Yes.

1          MR. ZENSKY:  All right.  And do any of those six

2   include the potential litigation outcome we discussed

3   yesterday where Step 1 is not avoided, Step 2 is, and all of

4   the value associated with Step 2 avoidance and disgorgement

5   goes to the pre-LBO creditors?

6          MR. GROPPER:  No.

7          MR. SOTTILE:  Your Honor, I'd like to lodge an

8   objection at this point.  It appears that we're hearing an

9   effort to rebut expert testimony through a lay witness which

10  I think is improper.  And I would suggest that if there's

11  going to be a rebuttal of Professor Black, the way to do it

12  is through an expert witness who can speak to his selection

13  of scenarios, things he may have left out, and so forth.

14          THE COURT:  Overruled.

15          MR. SOTTILE:  Thank you, Your Honor.

16          MR. ZENSKY:  Do you need the question read back,

17  Mr. Gropper?

18          MR. GROPPER:  Sure.

19          MR. ZENSKY:  Can the Court reporter read it back?

20          COURT REPORTER:  And do any of those six include

21  the potential litigation outcome we discussed yesterday

22  where Step 1 is not avoided, Step 2 is, and all of the value

23  associated with Step 2 avoidance and disgorgement goes to

24  the pre-LBO creditors?

25          MR. GROPPER:  No.

1  BY MR. ZENSKY:

2  Q    Did you listen to his testimony last week?

3  A    Yes.

4  Q    Okay.  And do you recall that he testified he never

5  reviewed the complaint actually filed by the UCC against the

6  LBO lenders?

7  A    Yes and I didn't understand how someone could assess

8  the claims without having read the complaint.

9  Q    Okay.  Have you read the complaint?

10  A    Many times.

11  Q    Okay.  Does the complaint as filed contain claims to

12  your understanding that seek the litigation outcome we just

13  talked about?

14  A    Yes.  I think it's Counts 4 and 5 of the complaint.  I

15  might --

16  Q    Can you check?  We have the complaint in your binder

17  under Tab 9.

18  A    Yeah.  Right here it is.  Count 4 estoppel against JP

19  Morgan and MLCC which is Merrill Lynch, Wells Fargo, the LBO

20  lenders, the senior lender defendants, and senior lender

21  class.  To prevent the LBO lenders from benefitting from the

22  avoidance of Step 2 obligations and transfers.  So that's

23  one place where it's referenced in the complaint.  And then

24  Count 5 is a slightly different version.  The heading is

25  roughly the same, but the text shows that there's a slightly

1  different theory encapsulated in that count.

2           MR. ZENSKY:  Okay.  Can I have a moment, Your

3  Honor?  Subject to the Court's reservation to recall the

4  witness on the remaining questions I have on that document,

5  most of which were foundational in nature, I have --

6           THE COURT:  Excuse me for one moment.  I'm sorry,

7  Mr. Zensky, go ahead.

8           MR. ZENSKY:  Actually, having been interrupted, I

9  do have one other question.

10  (Laughter)

11           THE COURT:  I'll be more careful in the future.

12  (Laughter)

13           MR. ZENSKY:  Mr. Gropper, do you recall yesterday

14  you testified that the output of the examiner model you

15  discussed with the committee and the debtors was

16  approximately $1.8 billion?

17           MR. GROPPER:  Yes.

18           MR. ZENSKY:  What assumption did that make for

19  whether it was a high PHONES or low PHONES?

20           MR. GROPPER:  That makes the high PHONES

21  assumptions.  If you make the low PHONES assumption, I think

22  it takes the number down to $1,560,000,000-ish.  And there's

23  also other assumptions that we ran when we provided it to

24  the committee and the debtors we tweaked a bunch of a the

25  assumptions so they could say -- they could see what it

1  would be even if they took assumptions other than ours and

2  the effect that it would have on the model.  So we basically

3  provided them a sensitivity table.

4          MR. ZENSKY:  Okay.  Now I'm done, Your Honor,

5  subject to the colloquy and reservation on Exhibit 31.

6          THE COURT:  Very well.  Cross examination?

7          MR. SOTTILE:  Good morning, Your Honor.  James

8  Sottile of Zuckerman Spaeder, special counsel to the

9  committee and for this purpose also acting for the DCL plan

10  proponents.  Your Honor, I think the Court will recall a

11  colloquy yesterday on direct examination where Mr. Gropper

12  was asked some questions about reactions from committee

13  counsel to their model which had been presented to the

14  committee.  And there was an answer about certain comments

15  made by committee counsel concerning the model.  And I rose

16  at that point and made a note to Mr. Zensky and his clients

17  that we believed they had opened a door with respect to all

18  communications between the committee and Mr. Gropper or

19  others at Aurelius concerning their model which may express

20  other criticisms or concerns about the model.

21          There are, in fact, Your Honor, a series of

22  emails between me and a number of individuals at Aurelius on

23  the same subject matter that Mr. Gropper testified about

24  which is issues that we identified relating to the model.

25  Those were not produced in the course of discovery because

1  Aurelius instructed the committee that they believed that a

2  common interest privilege applied to those emails.

3          So no other party has seen those documents as

4  yet.  And we have not disclosed them prior to this morning.

5  But we shared them with Mr. Zensky last night and advised

6  that it was our intention to use those in cross examination

7  of Mr. Gropper because we believed that they had opened the

8  door and waived whatever common interest privilege might

9  apply.

10          I believe, although I'll let Mr. Zensky speak for

11  himself, that they have no objection to our proceeding with

12  respect to questioning concerning those emails at this time

13  given the colloquy that occurred on direct examination

14  yesterday.

15          I speak at some length here, Your Honor, because

16  this came as somewhat of a surprise to us.  I had not

17  intended to examine the witness or to use these documents.

18  And as the Court will appreciate, it would be

19  extraordinarily difficult for someone from another law firm

20  to do the examination since they've never seen the emails in

21  question.

22          And we are, therefore, going to ask the Court for

23  license if the Court would be so kind as to permit us to

24  split the cross examination.  I would do a short cross

25  examination, perhaps 20 minutes or so with respect to the

1    subject on which we believe there was a waiver yesterday.

2    And then Mr. Kaminetzky who was prepared to do the full

3    cross examination would proceed.

4              THE COURT:  Is there any objection?

5              MR. ZENSKY:  Good morning, Your Honor.  A couple

6    points.  We didn't -- don't necessarily agree that there was

7    a waiver of the common interest that goes to the discussion

8    about the model, but I do not object to Mr. Sottile

9    introducing the documents.  I will say it was not an

10   instruction from us.  There was an agreement with committee

11   counsel that this chain of correspondence was protected by

12   common interest.  I don't object to Mr. Sottile conducting

13   the questioning --

14             THE COURT:  But you're not conceding any blanket

15   waiver?

16             MR. ZENSKY:  Yeah, at all and nor can this be

17   used or should it be used to say we need to have new rounds

18   of discovery in any respect, Your Honor.  And --

19             THE COURT:  Well, I guess someone could always

20   make the request.

21   (Laughter)

22             THE COURT:  If they think it would be worth their

23   time.

24   (Laughter)

25             MR. ZENSKY:  Okay.  I think I'm reading you, Your

1   Honor.

2   (Laughter)

3           THE COURT:  All right.  You may proceed in that

4   fashion, Mr. Sottile.

5           MR. SOTTILE:  Thank you very much, Your Honor.

6                   CROSS EXAMINATION

7   BY MR. SOTTILE:

8   Q    Good morning, Mr. Gropper.

9   A    Good morning.

10  Q    I'd like to start by talking a little bit about the

11  probability model that you testified about on direct that

12  was shared with the committee's professionals and also with

13  professionals representing a number of other parties.  And I

14  think you talked about that as the examiner model.  Do you

15  recall that, sir?

16  A    Yes.

17  Q    Okay.  Is it correct that that model was shared with

18  other parties because you wanted to give them the

19  opportunity to understand Aurelius' thinking about these

20  claims following the examiner's report?

21  A    Yes.

22  Q    And is it also correct that you wanted other parties

23  including the committee, to have the opportunity to test it,

24  to change it, to manipulate the model in ways that they

25  thought were appropriate in attempting to evaluate the

1  claims following the examiner's report?

2  A    Yes.

3  Q    And I think you gave one example on direct and I want

4  to make sure I have this right, that you believe that if

5  other parties saw that there were defenses to the claims

6  that weren't reflected in the model that Aurelius had

7  prepared, you wanted them to be able to model those defenses

8  and show the effect of those defenses on value.  Isn't that

9  right?

10  A    Well, I think what I said more specifically on direct

11  is that if there were something that we had not taken into

12  account and that some other party thought should be taken

13  into account, we wanted the ability to model it.  I know

14  that you, sir, requested that we run a 548 -- sorry.  A 546e

15  defense through the model which we had not done before.  I'm

16  not sure at the time if the model was designed to do it or

17  whether we had to create a version to do it, but I know that

18  we did.  And we provided you with the output.  And I said

19  yesterday that it had a $200 million effect, I think on the

20  number.  I actually was mistaken because I went back and

21  checked last night.  It actually provides a $106 million

22  negative effect on the model.

23  Q    Do you recall this testimony from yesterday's direct

24  and I'm quoting from the transcript at Page 2005.  If you

25  think there was a defense that we didn't think about but you

1    did and you want to model it in, go ahead?

2    A      Yes.

3    Q      And that was something that you were inviting people

4    to do with your model?

5    A      Yes.

6    Q      And that's because you wanted them to be able to

7    explore using your model what they would believe to be an

8    appropriate settlement value for the claims following the

9    examiner's report?

10    A      I suppose.

11    Q      I think you testified yesterday on direct examination,

12    sir, that you provided a live version of the model you had

13    been testifying about to Mullis, the financial advisor to

14    the committee.  Is that right?

15    A      Yes.

16    Q      And specifically, you met with a Mr. Zuel Jamal [ph]

17    of Mullis on that subject.  Am I right?

18    A      My colleagues, Dennis Preato and Matt Zloto met with

19    him and walked him through it.  I stopped in just to say

20    hello because I know Zuel.

21    Q      Uh-huh.  And would you agree with me that Mr. Jamal

22    and Mullis would be competent to understand the mechanics of

23    the model and to manipulate it to explore the effects of

24    different defenses and different assumptions?

25    A      Well, I think they would be competent to test whether

1  or not the math worked and whether or not the model did what

2  we said it did.  I'm not sure whether Mullis is competent to

3  make certain judgments as to whether we had properly modeled

4  the probabilities.  I think that's a different type of

5  expertise and it's not an expertise that I would expect

6  Mullis to necessarily have.  They may have it, I'm just not

7  sure.

8  Q    Fair enough.  Would you agree with me that all of the

9  parties in this case have financial advisors that are

10  competent to evaluate first the mechanics of the model that

11  you provided to them to make sure it works properly?

12  A    I would agree that the financial advisors could

13  analysis the mechanics, yes.

14  Q    Would you also agree with me that each of the parties

15  here is in a position to make their -- to construct their

16  own models to evaluate the settlement value of the claims

17  that are at issue?  They could do that, right?

18  A    Sure.

19  Q    Okay.  And you think that would be an appropriate

20  thing for parties in a case like this to do in trying to

21  come up with what's the right settlement value?

22  A    I do, but no one produced a model before the plans

23  came out and shared it with us.  We asked people has anyone

24  else produced a model and if you have produced a model,

25  could you share it with us?  And I believe actually during -

1  - well, I want to be careful, I don't want to talk about

2  what may have been said in a mediation.  But I can say that

3  no other party produced a model in request in response to

4  that answer.

5  Q     Um-hum.  Would you agree with me, sir, that people

6  might come to different views from you and Mr. Brodsky about

7  how they examiner conclusions should be modeled?

8  A     Sure.

9  Q     Would you also agree with me that people other than

10  you and Mr. Brodsky might come to different views about how

11  to interpret what the examiner said about the strengths and

12  weaknesses of various claims and defenses?

13  A     Yes.

14  Q     And that might lead to their assigning lower values to

15  those claims for settlement purposes.  Is that right?

16  A     Well, one of the things that our model was set up to

17  do is to vary the probability.  So if for example, someone

18  thought that highly likely didn't mean 85 percent, it meant

19  80 for example, and we know that highly unlikely must be the

20  inverse of 80 or 20.  That the model was set up to do that.

21  So if someone as you say has a different interpretation of

22  how to -- what should reasonably likely mean or what should

23  highly likely mean, the model is set up so they can

24  manipulate it.  And what the model actually shows is that if

25  you do manipulate it in that manner, it reduces the number,

1  but even if manipulate the heck out of it, you still get to

2  like $1.2 or $1.3 billion.  So you still get a really big

3  number.

4  Q    Well, we'll explore that.  But you certainly wanted

5  people to be able to manipulate the assumptions, change the

6  probabilities, and see what affect it had on settlement

7  value, right?

8  A    Yes.

9  Q    We talked a little earlier about you wanting people to

10 be able to model in defenses that you all may not have

11 included in the original version of the model.  Do you

12 recall that?

13 A    Yes.

14 Q    And one of those was the 546e defense that you

15 testified about on direct.  That wasn't reflected in the

16 model as it was presented to the committee.  Is that right?

17 A    Correct.

18 Q    Okay.  And that's an example of the kind of defense

19 that you think it was appropriate for other parties to

20 consider and add into the analysis?

21 A    Yes.  We wanted parties to take our analysis and say

22 gee, you didn't think about this or what about that and

23 model in this and what effect does it have on the numbers.

24 Q    Um-hum.  Would you agree with me that the defense the

25 examiner evaluated as to whether or not anyone would have

1   standing at the guarantor subsidiary level to challenge the

2   validity of the guarantees is also an example of the kind of

3   defense that could be reflected in this probably model?

4   A      I'm not sure I'd call that a defense.

5   Q      What would you call it, sir?

6   A      I think it's just an issue that may affect

7   probabilities.  I don't necessarily think standing is a

8   defense.

9   Q      Fair enough.  It would limit the ability of parent

10  level creditors to share in the benefits of avoidance at the

11  guarantor subsidiaries if that standing defense were to be

12  successful.  Isn't that right?

13  A      Well, again, I don't mean to quibble with you, but I

14  wouldn't call it a defense.  And if I recollect what the

15  examiner said on that, he said that that really wouldn't be

16  an issue and that the parent creditors would be able to

17  benefit from the avoidance at the subsidiaries.

18  Q      Would it refresh your recollection if I told you what

19  the examiner said was that that standing was highly likely

20  to be found in that situation?

21  A      I think that's correct.

22  Q      That means that there's some change it won't be found,

23  that there will be no standing to challenge the guarantees,

24  right?

25  A      Yes.

1    Q    Okay.  And does your model as it was presented to the

2    committee and other parties in late September, early

3    October, take in the account of that possibility?  That that

4    defense -- strike that.  That that issue would be resolved

5    not in the highly likely fashion the examiner described, but

6    the inverse of it, highly unlikely?

7    A    No.

8    Q    Okay.  Is that something that would be appropriate to

9    model here if one were trying to reflect fully the

10    examiner's conclusions?

11    A    It might be.  There are a number of assumptions that

12    are reflected in our model, frankly, that I think are overly

13    conservative.  So I think that the way we've set up our

14    model as an initial matter reflects a degree of conservatism

15    and we did that intentionally because we didn't want someone

16    when we were sitting and describing it to say oh, well you

17    were aggressive on this or aggressive on that.  So it's

18    difficult for me to separate out sitting here today when you

19    say well, gee, what about this issue?  You know, my response

20    would be well, fine, what about the other, you know,

21    conservative assumptions that are already imbedded in the

22    model itself?  You know, that would cut in the other

23    direction.

24    Q    Setting aside either issues one might adjust, would

25    you agree with me that if one were trying to fully model the

1    examiner's conclusions, the Aurelius model that you have

2    been testifying about should reflect the chance albeit the

3    relatively small one, that no standing was found at the

4    subsidiary level?

5              MR. ZENSKY:  Your Honor, I'm going to object.  I

6    think they just kept out or temporarily kept out one of my

7    exhibits on the basis that he's not a legal expert.  And it

8    sounds like they're now asking him legal interpretive

9    questions that I think --

10             THE COURT:  Yeah, and I'm surprised you weren't

11   going to let him get in deeper for that very reason.

12   (Laughter)

13             THE COURT:  But is there a response to the

14   objection?

15             MR. SOTTILE:  Well, Your Honor, yes.  The witness

16   has testified on direct examination that there's one defense

17   that was not considered in the original version of the

18   model, but that on suggestion from committee counsel was

19   later reflected in their model and they analyzed the effect.

20   He also testified that he wanted people to explore the

21   effects of other defenses.  I think that we've now

22   established that there is another defense issue that isn't

23   reflected in their model.

24             THE COURT:  So would you really like me to

25   overrule the objection and allow you to open that door that

1  you've been so assiduously keeping your shoulder against?

2  (Laughter)

3          MR. SOTTILE:  Your Honor, with that gentle hint

4  from the Court, I will withdraw the question.

5  (Laughter)

6          MR. ZENSKY:  Thank you, Your Honor.

7          MR. SOTTILE:  Let me put in front of you, sir, a

8  supplemental witness binder that contains some documents

9  that I'd like to use with you.  Your Honor, may we approach

10  with --

11          THE COURT:  Yes.

12          MR. SOTTILE:  -- copies of the binder?

13          THE COURT:  Certainly.

14          MR. SOTTILE:  Your Honor, the binder that we've

15  handed up contains a number of documents that were not

16  produced in discovery for the reasons that I identified at

17  the beginning of the examination.  And they include emails

18  exchanged between committee counsel and personnel at

19  Aurelius, as well as, a printout from the model that was

20  provided by one of the emails and I'm now going to commence

21  with examination on those documents, if I may.

22  BY MR. SOTTILE:

23  Q    Mr. Gropper, could you start by turning to Tab 5 in

24  the binder that we've put in front of you which has been

25  marked as DCL Exhibit 1514?

1  A     Yes.

2  Q     And would you take a moment to review this document

3  and tell us whether or not you're able to identify it, sir?

4  A     I am.  It's an email exchange between you and Mr.

5  Brodsky, I believe leading up to one of the mediation

6  sessions.

7  Q     Were you copied on the email exchange, sir?

8  A     Yes.

9  Q     Can you turn to the seventh page of this document, DCL

10 Exhibit 1514 and in particular, I'm looking at an email that

11 appears to be from you dated September 28, 2010.  And just

12 let me know when you're there, sir.

13 A     Oh, sorry, I'm there.

14 Q     Could you take a moment and read the email to

15 yourself, sir?

16 A     Okay.

17             MR. ZENSKY:  Your Honor, I do have an objection

18 on this.

19             MR. BENDERNAGEL:  The day after our mediation.

20             MR. SOTTILE:  It's not a mediation day.

21             MR. ZENSKY:  The 28th?

22             MR. SOTTILE:  No.

23             UNIDENTIFIED SPEAKER:  The 26th and 27th.

24             MR. SOTTILE:  It's the 26th and 27th.

25             MR. ZENSKY:  My mistake, Your Honor.

1  BY MR. SOTTILE:

2  Q     This is following a couple of days of mediation that

3  you and Mr. Brodsky attended.  Is that right?

4  A     Yes.

5  Q     And is it correct that by this email you were

6  transmitting to Graham Bush and myself a set of outputs from

7  the model that you've been describing?

8  A     Yes.

9  Q     Is the set of outputs that you were transmitting the

10  one that is contained at Tab 1 of your binder and which has

11  been marked as DCL Exhibit 1510?

12  A     Well, if you tell me that this is what was attached to

13  the email, I'll believe you, but I'm just -- I don't know.

14  It looks like the model output that would have been, let's

15  put it that way.

16  Q     I will represent to you that it was attached to the

17  email.

18  A     Okay.

19  Q     Do you recognize the document that appears at Tab 1,

20  DCL Exhibit 1510 to be output from the probability model

21  you've been describing?

22  A     Yes.

23  Q     And this model output reflects on the first page the -

24  - a summary of the value that Aurelius calculated for the

25  claims against the LBO lenders based on Aurelius's reading

1   of the examiner's report.  Is that right?

2   A    That's right.  But if I can just quibble with what I

3   actually said in my own email.  It's actually not the model

4   output, it's actually the model itself.  In other words,

5   there's nothing on this page that isn't -- you can't foot to

6   by looking at one of the pages behind it.

7   Q    Okay.  This is the model output or the model itself

8   that reflects the $1.8 billion value you've testified about

9   on direct?

10  A    Yes.

11  Q    Okay.  I want to see if I understand where the

12  components of that come from here that informed Aurelius'

13  thinking in that you wished the committee to consider.

14  First of all, if we look at in the box at the bottom under

15  the heading #8, are you with me?

16  A    Yes.

17  Q    Is that a scenario where Step 1 of the LBO

18  transactions is avoided at Tribune and the guarantors, as

19  well as, Step 2.  Is that what this is?

20  A    Correct.

21  Q    That's a complete litigation win.  Is that a fair way

22  to describe?

23  A    Well, it's full avoidance.

24  Q    It's full avoidance and it leads to a full recovery

25  for the senior notes and the PHONES at least as reflected in

1  this analysis?

2  A    Yes.

3  Q    Okay.  And that produces $1,272,000,000 of the

4  $1,878,000,000 probability weighted recovery that's

5  reflected on this document?  Is that right?

6  A    Well that's right.  These are claims representing $6.5

7  billion of avoidance and $1.9 billion of disgorgement that

8  the examiner found to be reasonably unlikely, but there are

9  four separate theories of fraudulent conveyance that could

10  apply.

11  Q    Um-hum.

12  A    So we had to figure out how you would apply the four

13  separate theories insolvency, inadequate capital, you know,

14  intentionally incurred, that's bound to become due in an

15  intentional fraudulent conveyance.  We had to figure out how

16  to take into account the four separate theories and then

17  what reasonably that likely meant for those four separate

18  theories.  That then created a probability which we

19  multiplied by the what you would get if you won and the

20  probability of 47.4 times the what you'd get if you win is

21  the $1.272 billion.

22  Q    And at least as reflected in this model, your

23  interpretation of the examiner's conclusions is that there

24  was a 47.4 percent chance of complete avoidance at both

25  Tribune and its subsidiaries at both Step 1 and Step 2?

1          MR. ZENSKY:  Your Honor, can I just be heard for

2     a moment?  I didn't object to the use of the documents.  I

3     understood it was more of a process issue, but given the

4     limited purposes for which I was permitted to introduce the

5     document yesterday which was not for the truth of it, but to

6     show, I think as Your Honor put it, kind of what Aurelius

7     was thinking, I don't see the relevance of going through

8     kind of the building blocks of this unless they're now

9     prepared to say that it can come in for the conclusions that

10    it gave out.

11         THE COURT:  Mr. Sottile?

12         MR. SOTTILE:  Your Honor, it's being offered as I

13    understand it and has been received by this Court to show

14    what Aurelius' thinking is.  It also was presented as

15    something that was shared with other parties to try to

16    influence what their thinking was.  And I submit that it is

17    appropriate to understand what the basis for the thinking is

18    at least in very broad terms and that's all I intend to do,

19    Your Honor.

20         THE COURT:  Well, I think Mr. Zensky's correct,

21    you're beginning to drill down.  And if you wish to do that,

22    I'll allow it, but I'll allow him to take his examination

23    where he wants to in that which I blocked yesterday.  I

24    leave the choice to you.

25         MR. SOTTILE:  Thank you, Your Honor.

1 | BY MR. SOTTILE:

2 | Q     Do you have in front of you the set of exhibits that

3 | were used on direct examination?

4 | A     Yes.

5 | Q     Could you turn to Tab 6 in that binder which is DCL

6 | Exhibit 69?

7 | A     Yes.

8 | Q     I believe you identified this yesterday or -- strike

9 | that.  I believe you were asked some questions about this

10 | document on direct examination.  It appears to be a redacted

11 | set of minutes of an August 19, 2010 creditors' committee

12 | meeting?

13 | A     Right.

14 | Q     Can you turn to the second page of the document?  And

15 | in particular, the second bullet heading, the second

16 | sentence of which reads Aurelius stated that the examiner's

17 | report supports three different means by which bondholders

18 | would receive par value.  Do you see where I've read, sir?

19 | A     Yes.

20 | Q     Are those three means identified below in the minutes

21 | immediately following what we just read?

22 |          MR. ZENSKY:  I'd ask counsel to restate it.  Are

23 | you saying are those the three paths that were stated at the

24 | meeting?

25 |          MR. SOTTILE:  Yes, are those the three --

1          MR. ZENSKY:  I don't think that's what you asked.

2    BY MR. SOTTILE:

3    Q     Fair enough.  Are those the three different means by

4    which bondholders would receive par value in your view that

5    you described at this meeting of the creditors' committee?

6    A     Yes.

7    Q     The first of which is avoidance at Step 1 of the

8    transactions?  Do I have that right?

9    A     Yes.

10   Q     Second of which is equitable estoppel.  Is that right?

11   A     Yes.

12   Q     Is that at least part of the theory that you have

13   referred to as WEAR in your direct testimony?

14   A     It wasn't WEAR at this point, that's what became WEAR.

15   Q     It's the predecessor of WEAR?

16   A     It's WEAR's predecessor.

17   Q     And --

18   A     You should know that we've trademarked WEAR.  So every

19   time you use it --

20   (Laughter)

21          MR. SOTTILE:  There's a small fee?  The third --

22          THE COURT:  It went right up there with let's get

23   ready to rumble.

24   (Laughter)

25   BY MR. SOTTILE:

1    Q    Mr. Gropper, the third means that the minutes indicate

2    you described to the committee was a way in which the

3    bondholders could review par value was equitable

4    subordination and/or disallowance.  Is that right?

5    A    Yes.

6    Q    Okay.  These were the three paths to par value that

7    you told the committee about on August 19?

8    A    Correct.

9    Q    Can you turn back to the binder that I gave you which

10   is -- and in particular to the document we were just looking

11   at Tab 1, DCL 1510.  Do you have that in front of you, sir?

12   A    Yes.

13   Q    Is it correct that those three means to recover par

14   value in a Aurelius' view are represented by the scenarios

15   at the bottom of the page numbered 2, 8, and 9?

16   A    No.

17   Q    Okay.  Let's step through it one by one.  Is the Step

18   1 avoidance means that you described to the creditors'

19   committee at the August 19 meeting, represented by Scenario

20   #8 on the first page of DCL 1510?

21   A    Well, frankly, they are two different things.  What I

22   was illustrating to the committee when I spoke to them in

23   August was -- and incidentally, August was a time at which

24   there was an ethical wall up at Aurelius so I was

25   restricted.  I was not communicating with Mr. Brodsky at

1  that time.

2  Q      Um-hum.

3  A      So this was my interpretation along with my analyst

4  and our counsel of the examiner report and it didn't reflect

5  the benefit of Mr. Brodsky's thinking which included this

6  model at the time.  So what I was speaking to the committee

7  about at that point in time were if those certain things

8  happened, so if there were avoidance, if Step 2 -- of Step

9  1.  If there were Step 2 avoidance and WEAR applied, if

10  there were applicable subordination or disallowance, then

11  you would get the par.  What this model attempts to do is it

12  runs an expected value of those three things.  So it's kind

13  of apples and oranges.

14  Q      Fair enough.  Is it correct that the -- if you look at

15  Scenario #8 and the total recovery shown, that's a par

16  recovery.  Is that right?

17  A      Yes.  That's actually a par recovery for the senior

18  notes and the PHONES.  When I was talking about the three

19  counts to par to the committee in August, I was only

20  referring to the senior notes which again was only half the

21  LBO debt.

22  Q      Okay.  Is this one of the three paths to par that you

23  described to the creditors' committee on August 19 that is

24  Step 1 avoidance?

25                    MR. ZENSKY:  Objection, it was asked and

1  answered.  It was just explained that it was apples and

2  oranges, I think.

3            THE COURT:  Mr. Sottile?

4            MR. SOTTILE:  Well, Your Honor, I think that I

5  could clear it up with a question two if I might.

6            THE COURT:  Go ahead.

7  BY MR. SOTTILE:

8  Q    Let me phrase it a little bit differently.  Step 1

9  avoidance was one of the three paths to par that you

10  described to the creditors' committee in August?

11  A    Yes.

12  Q    Scenario 8 models the expected value of Step 1

13  avoidance and Step 2 avoidance?  Is that right?

14  A    Yes.

15  Q    Okay.  The other path to par that you described to the

16  creditors' committee, another one is equitable subordination

17  or equitable disallowance.  Is that right?

18  A    Yes.

19  Q    Is it correct that Scenario 9 is an effort to model

20  the expected value of equitable subordination and equitable

21  disallowance claims?

22  A    Correct.  That's the expected value as distinguished

23  from what would happen if you won equitable subordination or

24  equitable disallowance.

25  Q    Understood, understood.  And the final path to

1  recovery --

2  A      And if I can --

3  Q      Of course.

4  A      I just want to make sure I answer completely.  This

5  was a part of the model I touched on before that we made a

6  number of conservative assumptions.  This is one of those

7  assumptions because the examiner found equitable

8  subordination and equitable disallowance to be somewhat

9  unlikely.  And which is 45 percent under our model.  What we

10  did is we then reduced that probability to 15 percent.  So

11  we took two-thirds out of that probability and then modeled

12  it into our scenarios.  So the reason that you get such a

13  small expected value in what's now being referred to as the

14  examiner model of $212 million is because we've cut the

15  somewhat unlikely -- so it doesn't stand on its own and

16  we've cut it by two-thirds to the 15 percent.  So that's why

17  the expected value is so much lower than what you would

18  expect.

19  Q      Thank you, Mr. Gropper.  The third path to par you

20  described to the creditors' committee was what you were then

21  calling equitable estoppel, the predecessor to WEAR?  Is

22  that right?

23  A      Yes.

24  Q      Am I correct that if one were to look at Scenario #2,

25  that's an effort to model the expected value of applying

1   WEAR in a situation where there is no avoidance at Step 1

2   and full avoidance at Step 2?

3            MR. ZENSKY:  Your Honor, I have the same

4   objection.  I was prohibited from putting in my exhibit on

5   the grounds that this witness couldn't talk about --

6            MR. SOTTILE:  Well, Your Honor, the exhibit was

7   received for the limited purpose of showing what Aurelius'

8   thinking was and I think I'm simply exploring what Aurelius'

9   thinking is that is reflected in this document.  I've also

10  established, Your Honor, that the witness presented to the

11  creditors' committee, the three paths to recovery and I'm

12  attempting to establish and it appears to be so, that those

13  three paths to recovery which reflect Aurelius' thinking are

14  also set forth in this document.

15           MR. ZENSKY:  Your Honor, the document is six

16  weeks after the conversation that they had and Mr. Gropper's

17  already testified that he was not a part of this at the time

18  of the presentation.

19           THE COURT:  Well, I'm trying to figure out who

20  should be helped here.

21  (Laughter)

22           MR. SOTTILE:  It is a puzzlement, Your Honor.

23           THE COURT:  Sustained.

24           MR. ZENSKY:  Thank you.

25           MR. SOTTILE:  Mr. Gropper, I want to turn your

1    attention to communications with the committee concerning

2    the probability model and points that the creditors'

3    committee, counsel may have raised with respect to the

4    model.  And you've testified about an exchange concerning

5    546e and I want to just explore whether or not there were

6    other issues that were raised.  You've testified at some

7    length about WEAR.  Is that a point that counsel for the

8    creditors committee raised with a Aurelius after receiving

9    the probability model which we were just talking about which

10   is Tab 1 in your binder, DCL 1510?

11            MR. GROPPER:  Yes.

12            MR. SOTTILE:  Okay.  Is it correct that the

13   counsel to the creditors' committee raised questions about

14   whether or not the model properly reflected the examiners

15   conclusions regarding WEAR?

16            MR. GROPPER:  Yes, I believe you questioned

17   whether or not WEAR -- the chance of WEAR should apply in

18   equipoise to both avoidance and disgorgement recoveries.

19            MR. SOTTILE:  The specific issue raised was

20   whether or not the equipoise conclusion applied to sharing

21   in distributions, Step 1 lenders sharing in distributions

22   following an avoidance of Step 2?

23            MR. ZENSKY:  I have an objection, Your Honor.

24   May I be heard for a moment?  Again, given the limited

25   purpose that we introduce it for, I believe if I understand

1  where Mr. Sottile's going, he's trying to elicit hearsay

2  testimony as to what he said to Aurelius about the model

3  which would reflect his thinking.  And if this is being

4  offered as a justification for the settlement, in other

5  words, for the truth, this is in effect, a way to get in the

6  statements of Mr. Sottile and the debtor at the time it was

7  Mr. Sottile which would be hearsay evidence.  A party can't

8  offer its own out of Court statement for the truth of the

9  matter asserted.  So again, if it's a process question, I

10  don't understand the relevance of the question.  There's no

11  doubt the parties had communication.

12        THE COURT:  Mr. Sottile?

13        MR. SOTTILE:  I think the process has been put in

14  issue here.  The witness has testified that the model was

15  shared with the committee and with other parties.  The

16  witness has also testified the committee raised one issue

17  546e.  I'm attempting to demonstrate that, in fact, there

18  were additional issues raised by the committee concerning

19  the model.  I am not offering this evidence whether in the

20  form of the emails or in testimony to establish that

21  committee counsel had it right or the committee had it

22  right, simply that the questions that were raised go beyond

23  what the witness testified about on direct.

24        MR. ZENSKY:  Well, Your Honor, we would stipulate

25  that they raised this additional issue in the email chain

1    and the witness never testified that that was absolutely the

2    only issue.  He said there was communications with the

3    committee, that's what remembered.  So again, I don't know

4    what the purpose of extending the interrogation on this

5    issue is.

6                THE COURT:  Well, the process has indeed been at

7    the central point of Aurelius' position whether in advancing

8    its own plan with others or in objecting to the DCL plan.

9    So the subject is a proper area of inquiry.  The question

10   really is whether -- how Mr. Sottile is going about

11   eliciting that information is admissible.  I'll sustain the

12   objection.  You need to find another way to get at that Mr.

13   Sottile.

14               MR. SOTTILE:  Very well, Your Honor.  Could you

15   turn to the document in the supplemental binder that we

16   provided you that appears behind Tab 5 and has been marked

17   DCL Exhibit 1514?  Just let me know when you're there, sir.

18               MR. GROPPER:  I'm there.

19               MR. SOTTILE:  Could you turn to the fourth page

20   of the document where there appears to be an email from me

21   to a group of people that includes you dated September 30,

22   2010.  Do you see that, sir?

23               MR. GROPPER:  Yes.

24               MR. SOTTILE:  The -- I'm going to read aloud some

25   excerpts from the email, although you should feel free to

1    read any part of it you'd like before I ask a question.

2              MR. ZENSKY:  I have the same objection, Your

3    Honor.  Mr. Sottile is trying to put in the record his

4    thoughts about the strength of the claims when we went

5    settlement is totally irrelevant and unnecessary to rebut

6    what he thinks was shown on direct examination. It's process

7    question.  If the issue was their feedback back and forth, I

8    think that's a fair question.  But now putting in his own

9    internal deliberation about this to try to justify the

10   settlement when of course attorney/client privilege is

11   claimed over the attorney's analysis is unfair.

12             MR. SOTTILE:  Your Honor, this is not internal

13   deliberation.  This is a communication from committee

14   counsel to Aurelius on the same subject matter the witness

15   testified about on direct which is did people ask you

16   questions after they got the model?  And the witness

17   answered yes, the committee did as to 546e.  I don't

18   remember other things.  This is another thing.

19             THE COURT:  All right, well let's -- well, I'll

20   tell you what, if you want to use it to refresh the

21   witness's recollection, ask him to read it and then ask

22   questions, but not to read it into the record.

23             MR. SOTTILE:  Certainly, Your Honor.

24             THE COURT:  Okay.

25             MR. ZENSKY:  Thank you.

1  BY MR. SOTTILE:

2  Q    Mr. Gropper, could you read the email to yourself,

3  sir, and then I'm going to ask whether or not it has

4  refreshed your recollection of the subject matter contained

5  therein.

6  A    Okay.

7  Q    Is it -- do you -- does this refresh your recollection

8  at all, sir, on the subject matter of email communications

9  between committee counsel and Aurelius relating to the

10 examiner's conclusions on equitable estoppel and WEAR?

11 A    Yes.  As I mentioned yesterday, I had said there was

12 interaction and the only interaction I recalled was that

13 around 546e.  The other interaction that I'm not reminded of

14 is the question of whether or not WEAR applied equally to

15 avoidance and disgorgement recoveries.

16 Q    Is it correct, sir, that the application of WEAR to

17 avoidance recoveries is in Aurelius' view, a substantially

18 more monetary value than the application of WEAR to

19 disgorgement recoveries?

20 A    I would be surprised if anyone would dispute that.

21 You're talking about the recovery of what $6.5 billion of

22 debt gets in the case and the recovery of $1.9 billion,

23 clearly the former is greater than the latter.

24 Q    Okay.  So the bigger money issue here is whether not

25 or WEAR applies to distributions as opposed to recoveries on

1    disgorgement?  Is that right?

2    A    Well, it's our view it applies to both.

3    Q    I understand that.  But as between the two,

4    comparatively, I think you've told me and I just want to

5    make sure that the application of WEAR to distributions has

6    a lot more bang for the buck than the application of WEAR to

7    disgorgement. Isn't that right?

8    A    I think they're both hugely important.  The

9    disgorgement recoveries of Step 2 is $318 million before

10   prejudgment interest.  That's a whole lot of money.

11   Q    Okay.  But there is billions of dollars that in your

12   view are subject to WEAR on -- if it were applied to

13   distributions.  There's $1.9 billion, I think was the figure

14   you mentioned?

15   A    No, I said $1.6.

16   Q    $1.6, I'm sorry.  Okay.  All right.  And am I right

17   that it is your recollection of the issue raised by

18   committee counsel on WEAR is whether or not WEAR applied to

19   distributions.  Is that your recollection as refreshed by

20   this document?

21   A    Yes.

22           MR. ZENSKY:  I have the same objection, Your

23   Honor.  It's already established of this interchange between

24   Aurelius on this issue.  That's the process question and now

25   we're creeping back into the substance of Mr. Sottile and

1  the committees' assessment.

2          THE COURT:  Overruled.

3          MR. SOTTILE:  Thank you, Your Honor.

4          THE COURT:  It's been asked and answered.  You

5  should be especially slow to respond when it's your lawyer

6  standing.

7  (Laughter)

8          MR. GROPPER:  Point taken.

9          MR. SOTTILE:  Fair enough.  Fair enough.  Your

10  Honor, would this be a convenient time for a short break?  I

11  have a few more questions, but I could probably streamline

12  it if I had a moment consider?

13          THE COURT:  Streamline your 20 minutes?

14          MR. SOTTILE:  Your Honor, I confess --

15  (Laughter)

16          MR. SOTTILE:  -- that that was a lawyer's gross

17  underestimate.

18          THE COURT:  We'll take a ten minute recess.

19          MR. SOTTILE:  Thank you, Your Honor.

20  (Recess from 10:53 a.m. to 11:18 a.m.)

21          THE COURT:  Okay.  Sorry to have kept you

22  waiting.  As they say, something came up.

23          MR. ZENSKY:  Your Honor, I've asked Mr. Sottile

24  if I could address the Court on one matter before he

25  continues.

1          THE COURT:  Okay.

2          MR. ZENSKY:  Your Honor, and it relates to the

3  exhibit -- Noteholder Exhibit 31 that we discussed for the

4  end of direct.  And I used the break to go back and check

5  something, and that is whether the debtor committee lender

6  plan proponent ever objected to that exhibit.  Mr. Gropper

7  was deposed on February 23, so any problem they had with

8  understanding the waterfall model, which I told you was the

9  subject of the deposition and was covered was apparent.

10          On March 1, they served their objections to our

11  exhibit list, not objected to.  March 7, supplemental debtor

12  committee lender objection to our exhibits, not object to,

13  although 800 others were objected to.  And I'd like to hand

14  that up to the Court so the Court can see that two weeks

15  after the deposition and having that document for five

16  weeks, there was no objection lodged to the admissibility of

17  Noteholder Exhibit 31, Your Honor, and obviously

18  understanding the purpose for which we had put it on our

19  exhibit list.

20          THE COURT:  Well, let me ask you this, and I

21  don't know off hand.  Did either the CMO or stipulation

22  among counsel provide that failure to raise an objection

23  prior to the hearing was a consent to admissibility?

24          MR. ZENSKY:  I don't know if it has that language

25  or not, Your Honor, but it would hard -- be hard for me to

1  imagine what was the purpose of the parties exchanging and

2  working 24 hours around the clock to serve up --

3           THE COURT:  Look, it's certainly one of the --

4           MR. ZENSKY:  -- objections to thousands --

5           THE COURT:  It's certainly of the purposes, for

6  sure.  I don't ever recall -- it doesn't mean that it didn't

7  happen here -- that serving as a waiver of rights which

8  might otherwise be exercised at the hearing.  But hold what

9  you have.  I would like to read the deposition transcript.

10 I'll do that during the lunch break, and we'll go from

11 there.

12          MR. ZENSKY:  Okay, Your Honor.

13          MR. SOTTILE:  May I proceed, Your Honor?

14          THE COURT:  You may.

15 BY MR. SOTTILE:

16 Q    Mr. Gropper, on direct examination, you testified

17 about a couple of meetings with the creditors committee.  Do

18 you recall that testimony generally, sir?

19 A    I do.  On the break, though, I read your exhibit

20 binder and actually realized that I gave you an incomplete

21 answer to one of your prior questions.  Is it --

22 Q    Please proceed.

23 A    -- okay if I --

24 Q    Please.

25 A    Okay.  You had asked why it was that we hadn't

1    included the 546(e) defense in our model at the time, and I

2    think that the reason we didn't is because we thought the

3    examiner report was internally inconsistent with respect to

4    546(e).  What the examiner does is he says -- after he says

5    the reasonably likely, that you pointed out --

6    Q    Yeah.

7    A    -- he then goes on to say that the 546(e) defense that

8    I'm reading from our e-mail to you requires four elements,

9    and that defense will fail if any one element is absent.

10   And the report indicates the examiner finds that the defense

11   does not make it past its first element.  So that's why we

12   didn't include it in our model.  You, then, responded to Mr.

13   Brodsky's e-mail, saying his reasonably likely headline

14   doesn't fit at all with his discussion of the issue, which

15   we think has little merit.  So I just -- I didn't completely

16   answer that question, and I wanted to make sure that the

17   record was clear on that.

18   Q    Thank you very much, Mr. Gropper.  Just so the record

19   is clear as to what you were reading from, could you

20   identify the e-mails that you just read from, by reference

21   to the tab in the binder and the exhibit number, sir?

22   A    Yeah, it was DCL 1512.

23   Q    That's the document behind tab 3 in your binder, is

24   that right?

25   A    Correct.

1    Q     And I think I heard you testify that the reason 546(e)

2    was not originally modeled, with your recollection refreshed

3    here, is that Mr. Brodsky believed that the examiner's

4    conclusion was inconsistent with his explanation.  Did I

5    hear you right?

6              MR. ZENSKY:  Objection, mischaracterized.

7              THE WITNESS:  That's not what I said.

8    BY MR. SOTTILE:

9    Q     The examiner's conclusion on 546(e) was what, sir?

10   A     Reasonably likely that it does not protect against

11   avoidance.

12   Q     And what is it that Mr. Brodsky identified in this e-

13   mail that he believed was internally inconsistent with that

14   conclusion?

15   A     What he identified was that the 546(e) defense

16   requires four elements.  The examiner pointed that out, and

17   the examiner then went on to say that the first element

18   failed, and therefore, it didn't require the examiner to

19   consider the next three elements.

20   Q     And do you know whether or not those elements of a

21   546(e) defense the examiner outlined appear in his

22   conclusions or the explanation for the conclusions?

23   A     I don't know.

24   Q     Thank you.  Let me return to the subject matter of

25   meetings with the committee, and I think you testified you

1   recalled the subject matter coming up that you participated

2   in both a telephonic and an in-person meeting with the

3   creditors committee.  Do you recall, generally, that

4   testimony, sir?

5   A     Yes.

6   Q     Okay.  Can you tell me whether or not, in either of

7   those meetings, either you or anyone else from Aurelius told

8   the committee what Aurelius believed was the settlement

9   value of the LBO claims against the lenders?

10  A     Well, what we said in the -- I know in the second

11  meeting, because your meetings so reflect, is that we have

12  generated a model that kicked out an amount of $1.8 billion,

13  and that we thought the case should settle, but that we

14  thought the settlement needed to bear resemblance to the

15  merits of the claims and the strengths of the claims.

16  Q     Did you share a number with the committee at either of

17  those meetings about what Aurelius thought was an

18  appropriate settlement value for the claims?

19  A     Well, I think what we said was that --

20  Q     It is a yes-or-no question, Mr. Gropper.  Did you

21  share a number?

22  A     Well, I don't think it is a yes-or-no question, so if

23  you'd like me to answer it, I need to answer with more than

24  yes or no.

25  Q     Well, I'd be happy for you to explain your answer in

1 | detail, but it would be helpful if you could answer whether

2 | or not a number was shared.  Just a simple, was a number

3 | given to the committee by Aurelius, yes or no, at either of

4 | these meetings?

5 | A    I can't answer that question yes or no.

6 | Q    All right.  Well, why don't you explain why you're

7 | unable to answer it yes or no, sir?

8 | A    I'm unable to answer it yes or no, because what we

9 | said was that our view of the expected value of the claims

10 | was $1.8 billion and that the -- that a settlement needed to

11 | bear some semblance to the expected value of the claims

12 | themselves.  So we didn't then go on to say, well, gee, then

13 | therefore, the numbers should be, you know, 1.72 or

14 | something different than 1.8, but we viewed that the

15 | settlement of the claim needed to bear a resemblance to the

16 | expected value of the claims.

17 | Q    So the expected value was the only number you shared

18 | concerning the valuation of the claims of the creditors

19 | committee?  Do I have that right?

20 | A    Outside of a mediation?

21 | Q    I'm really referring just to these two meetings, and

22 | then I'll ask broader questions.

23 | A    That's right.

24 | Q    Okay.  Is it correct that, setting aside a mediation

25 | session in November, Aurelius has never presented a

1  settlement proposal with respect to the value of the LBO

2  lender claims to any of the other parties?

3  A     Mr. Sottile, no one engaged with us prior to the DCL

4  plan being announced, so there was no opportunity for us to

5  convey a settlement amount, because we never had a meeting

6  with anybody.

7  Q     Except for the meetings with the creditors committee

8  that you've testified about, correct?

9  A     That's correct, but the creditors committee were on

10  our side, allegedly, of the claims.  They weren't the

11  adversary.  They weren't the party who had to -- or had the

12  ability to give us consideration.

13  Q     Okay.  And you didn't tell the creditors committee

14  anything of what you thought the claims were worth, other

15  than $1.8 billion?

16  A     That's not my testimony, and that's not what I said.

17  What I said is that the claims were worth $1.8 billion --

18  that's the expected value of the claims -- and that a

19  settlement of the claims needed to bear a resemblance to the

20  merits of the position, and that while we invited people to

21  challenge us on how our model was wrong.  In fact, you asked

22  me earlier a question about how -- you pointed out if you

23  look at tab 1, how the step-one avoidance creates an

24  expected value of $1.272 billion, you said, gee, that's a

25  high number.  The creditors committee never questioned that

1   conclusion.  The -- in fact, my recollection of the only

2   items that were questioned by the committee were the

3   discussion we just had earlier on WEAR and the discussion

4   around 546(e).

5   Q     You don't recall any discussion with the committee or

6   its professionals about whether the 47.4 percent probability

7   for this big 1.2 billion number was right?

8   A     I don't.

9   Q     Okay.  I think you testified that the way you got to

10  the 47.4 percent was by combining, in some way,

11  probabilities derived from the examiner's conclusions on the

12  three constructive fraudulent conveyance test and

13  intentional fraudulent conveyance.  Do I have that right?

14          MR. ZENSKY:  Your Honor, I -- the same objection.

15  I'm sorry.  We're going past the issue of the process,

16  again, into drilling down on whether the model is correct or

17  not, and I think you've already told Mr. Sottile, if he

18  pushes his arm against that door, it's going to change

19  potentially the purpose for which we were permitted to

20  introduce the document.

21          MR. SOTTILE:  Your Honor, it's a predicate to a

22  question about the discussions.  I'm attempting to refresh

23  the witness's recollection about things that were said to

24  him by the committee in response to the model.  There is an

25  additional point, and I think if I can be permitted to have

1  this question answered, I would then simply ask whether or

2  not his recollection is refreshed about discussions with

3  committee counsel on that subject.

4         THE COURT:  Sustained.

5         MR. SOTTILE:  Thank you, Your Honor.

6  BY MR. SOTTILE:

7  Q    Mr. Gropper, I just want to be certain that I have

8  your testimony down on one point that we just discussed.  Is

9  it correct that, setting aside a November mediation session,

10 Aurelius has never presented a settlement proposal to any of

11 the other parties in this case?

12 A    I think that's correct.

13        MR. SOTTILE:  Thank you.  I have nothing further,

14 Mr. Gropper.

15        MR. KAMINETZKY:  Your Honor, I have toys for the

16 witness and for the bench.

17        THE COURT:  Thank you.  Thank you.

18        MR. KAMINETZKY:  Can we hand those to the

19 witness?

20        THE COURT:  Yes, and to my law clerk as well.

21        MR. KAMINETZKY:  Okay.  Thank you.

22        THE WITNESS:  I like Sottile's better.

23 (Laughter)

24        THE COURT:  Mr. Gropper, don't start anything.

25 (Laughter)

1          MR. SOTTILE:  We could go back to it.

2     BY MR. KAMINETZKY:

3     Q     Okay.  Benjamin Kaminetzky of Davis Polk & Wardwell

4     for JPMorgan as agent on behalf of the DCL lenders.  You'll

5     be happy to know, Your Honor, I have only 30 minutes in

6     Sottile time.

7     (Laughter)

8     Q     Don't hold me to it.  Good morning, Mr. Gropper.  Good

9     to see you again.

10    A     Good morning.

11    Q     Okay.  Is it fair to say, Mr. Gropper, that one of the

12    themes of your testimony yesterday and today was that

13    Aurelius was excluded from the settlement process?  Is that

14    correct?

15    A     Yes.

16    Q     And Mr. Gropper, you recall, during your deposition, I

17    asked you specifically whether Aurelius has been excluded

18    from the settlement negotiations in this case, and you said,

19    yes, you were completely excluded.  Do you recall that?

20    A     I do.

21    Q     And you're aware that counsel, Mr. Zensky, in his

22    opening statement, said that Aurelius was frozen out of the

23    process.  Do you recall that?

24    A     That's correct.

25    Q     Now, did you listen in to the opening in this case?

1   A     Yes.

2   Q     And did you listen in to all of the testimony in this

3   case?

4   A     Yes.  Well, I didn't catch all of yesterday.

5   Q     Okay.  I assume you --

6   A     In the morning.

7   Q     Okay.

8   A     When I was here, I caught that part.

9   Q     Yeah.  But other than the testimony yesterday morning,

10  you heard all the testimony in this case?

11  A     Yes.

12  Q     Okay.  Now, prior to purchasing their claims,

13  Centerbridge was the largest noteholder in this case, before

14  Aurelius purchased the claims, is that correct?

15            MR. ZENSKY:  Objection to form.

16            THE COURT:  Overruled.

17            THE WITNESS:  Yes.

18  BY MR. KAMINETZKY:

19  Q     Now, is it fair to say that prior to purchasing

20  Centerbridge's position, you followed their lead with

21  respect to settlement?

22  A     I don't think that's correct.

23  Q     Do you recall, in your deposition, you said that

24  Aurelius didn't object to the April plan because, and I'm

25  quoting now, "we were in a situation where there was a

1  settlement that was agreed to by the creditors committee and

2  a bondholder that owned about a third of the class of the

3  bonds"?

4  A    Yes, we followed Centerbridge's lead with respect to

5  the April settlement, but that wasn't true after that point,

6  after the examiner report came out.

7  Q    Yesterday, you testified that Centerbridge told you

8  that they were "forced to accept the April settlement,

9  because they were scared or concerned that the creditors

10  committee would undermine them."  Do you recall saying that?

11  A    I do.

12  Q    And now, do you recall who Centerbridge's counsel was

13  at the time of the April plan?

14  A    It was Akin Gump.

15  Q    Okay.  And if you could turn to tab 50 of your binder,

16  that's 5-0.

17  A    I'm sorry, the second binder?

18  Q    It's -- yeah, they're sequentially, so it'd be the

19  second binder.  And when you answered the question to Akin

20  Gump, that included Danny Golden as their lead lawyer,

21  Centerbridge's lead lawyer, is that correct?

22  A    Yes.

23  Q    And if you could look on page 21 on page 50, and this

24  is a transcript for the Court.  It's a transcript of an

25  April 13, 2010 hearing.  Do you see the third paragraph on

1    page 21?  It says:

2    "And while there is always in-fighting" -- and this is Mr.

3    Golden arguing to the Court.  "And while there is always in-

4    fighting and scrabbling and scraping during the course of

5    that period, ultimately, parties need to get to a consensus.

6    Your Honor has said as much in prior hearing on exclusivity.

7    Centerbridge, Law Debenture, JPMorgan, Angelo Gordon took

8    those lessons to heart and worked hard and long to achieve

9    this settlement."

10   And then it goes on.  Do you see that?

11   A    Yes.

12   Q    Okay.  And if you'd turn to the next page, do you see,

13   in the -- now we're on page 22, on line 9, this is again Mr.

14   -- it might be -- I think this is still Mr. Golden, because

15   Mr. Stark starts on the bottom of the page:

16   "I am actually confident that, as we inch closer to

17   confirmation, through the disclosure statement process,

18   through the confirmation process, the amount and the decibel

19   of the creditors currently not supporting this plan will

20   lower and lower and lower, to a point where I believe we

21   will ultimately get a consensual confirmation hearing, with

22   respect to this plan."

23   Do you see that?

24   A    Yes.

25   Q    Now, Mr. Golden didn't tell the Court, at this time,

1 that his client, Centerbridge, was forced into a plan, did

2 he?

3 A    He didn't, but his client had decided to accept the

4 settlement, so why would he have to tell the Court that?

5 Q    Now, you're aware, I guess from your own knowledge and

6 testimony in this case, that the largest noteholder in this,

7 at the time of the April plan, Centerbridge was directly

8 involved in settlement negotiations, isn't that correct?

9 A    Yes.

10 Q    And you're aware that Centerbridge met with JPMorgan

11 and other senior lenders both before and after the examiner

12 report came out, isn't that correct?

13 A    I'm not sure if they met with senior lenders after the

14 examiner report came out.  I know they did before.

15 Q    Well, do you recall testimony to -- in that regard

16 from Mr. -- Ms. Kulnis of JPMorgan and Mr. Kurtz of Lazard,

17 saying that they had conversations with -- and met with Viv

18 Melwani [ph] after the examiner report came out?

19 A    Well, I recall Ms. Coolness saying she had a

20 conversation with him.  I don't recall her saying that she

21 had a meeting with him.

22 Q    Okay.  But you --

23 A    I might not be recalling correctly her testimony.

24 Q    But you at least recall a conversation or

25 conversations with Ms. Melwani of Centerbridge after the

1  examiner report came out?

2  A    Well --

3           MR. ZENSKY:  Objection to form.

4           THE WITNESS:  -- I recall --

5           THE COURT:  One moment.

6           MR. ZENSKY:  Mr. Gropper.

7           THE WITNESS:  I'm sorry.

8           MR. ZENSKY:  The question, I think, is vague.

9  I'd just ask counsel to rephrase it.

10  BY MR. KAMINETZKY:

11  Q    Do you recall hearing testimony that Ms. Coolness and

12  Mr. Melwani had conversations after the examiner report came

13  out?

14  A    Yes.

15  Q    Okay.  Do you recall similar testimony that Mr. Kurtz

16  and Mr. Melwani had conversations after the examiner report

17  came out?

18  A    I don't recall Mr. Kurtz's testimony in that regard.

19  Q    Okay.  And now, are you -- do you recall the testimony

20  was that Centerbridge wanted to move forward with the April

21  plan except perhaps maybe add a litigation trust after the

22  examiner report came out?

23  A    Well, I recall that testimony, but I think that

24  testimony is incomplete.  My understanding is that once the

25  parties to the April settlement agreement terminated it,

1  Centerbridge was not of a mind to go forward with the April

2  settlement.

3  Q    And the parties that terminated it were the senior --

4  were the banks, correct, not Centerbridge?

5  A    That's correct.

6  Q    Right.  And prior to the termination, wasn't it -- the

7  termination of the settlement support agreement, isn't it

8  the fact that Centerbridge was prepared to move forward with

9  the April plan after the examiner report came out?

10 A    Well, first of all, I'm not sure if the settlement

11 agreement that Centerbridge signed allowed them to terminate

12 the agreement.  I think there was a dispute or a

13 disagreement about whether or not it was appropriate for the

14 settlement agreement to have been terminated by your client.

15 So I can't -- I just can't totally answer that question.  I

16 would also add that, as I said on direct, Mr. Melwani

17 expressed to me reservations that he had about Centerbridge

18 being able to assiduously pursue claims --

19           UNKNOWN:  Objection, hearsay.

20           THE WITNESS:  And non-responsive.

21           THE COURT:  Is there a motion to strike?

22           MR. KAMINETZKY:  There's a motion to strike.

23           THE COURT:  Granted.  Let's start again.

24 BY MR. KAMINETZKY:

25 Q    I think I got my answer.  So, I mean, you -- it is a

1  fact that Centerbridge was willing to move forward with the

2  April plan after the examiner report came out, isn't that

3  correct?

4  A    Yes.

5  Q    Now, you've -- you testified at your deposition that

6  you respect Centerbridge as an organization, isn't that

7  correct?

8  A    Yes.

9  Q    And you respect Viv Melwani personally, the

10  professional that was, I guess, looking after Tribune for

11  Centerbridge, is that correct?

12  A    Yes.

13  Q    And do you believe that Centerbridge and Mr. Melwani

14  have the capacity to review, internalize, analyze the

15  examiner report?

16  A    Yes, but I believe they had institutional constraints

17  that precluded their ability to properly prosecute the

18  claims.

19  Q    Do you understand that Mr. Melwani is a lawyer as

20  well?

21  A    Yes.

22  Q    He was a bankruptcy partner at Fried Frank, correct?

23  A    Yes.

24  Q    And Mr. -- and Centerbridge had respected lawyers, is

25  that correct, representing them at the time the examiner

1   report came out?

2   A     Yes.

3   Q     In fact, so respected that you decided to hire the

4   same lawyers to represent you after Centerbridge sold their

5   position, is that correct?

6   A     Yes.

7   Q     And that those lawyers -- those same lawyers that are

8   here, putting on a robust objection to confirmation,

9   would've been able to do the same thing for Centerbridge had

10  they believed that that would be necessary, is that correct?

11  A     Yes, but I don't know what advice Akin Gump gave

12  Centerbridge upon their review of the examiner report.

13  Q     I -- understood, but certainly Akin Gump had the

14  capacity to object to any settlement after the examiner

15  report came out.

16  A     Yes.

17  Q     Okay.  Now, let's take a look at meetings that the --

18  that Aurelius had with the debtor committee lender

19  proponents or their counsel since December 14, 2009.  Do you

20  recall Mr. Kurtz's testimony that the first conclave, as he

21  called it in this case, to discuss settlement was in January

22  of 2010?

23  A     Yes.

24  Q     Okay.  Now, are you aware that Aurelius spoke with the

25  creditors committee special counsel, Zuckerman Spaeder,

1    about Tribune in December of 2009, a month before the first

2    conclave?

3    A    I became aware of that when you put an e-mail in front

4    of me at my deposition.  I wasn't aware --

5    Q    Okay.  That e-mail is -- you'll find on tab -- under

6    tab 9 of the first volume.

7    A    I'm sorry.  I don't have a 9 in the first volume.  Is

8    it 9 in the second or --

9    Q    I think it's 9 in the first.  Do you have two second

10   volumes?

11          THE COURT:  It's in the second volume.

12          THE WITNESS:  No, I've got it in the second

13   volume.

14   BY MR. KAMINETZKY:

15   Q    Oh, I'm sorry.  You're right.

16   A    I think I've got the -- if it's the one on the screen,

17   that's what I --

18   Q    Yeah.  You got it?

19   A    Okay.

20   Q    I'm sorry.  You're right.  If you'd take a minute to

21   look at it, it's an e-mail from Dennis Prado, who's an

22   analyst, I understand, at Aurelius, to Graeme Bush at

23   Zuckerman Spaeder, and that's copying Mark Brodsky.  Do you

24   see that?

25   A    Yes.

1  Q      Okay.  And it says,

2  "Graeme, thank you for taking the time to speak to us

3  yesterday.  Included in this e-mail are the items that we

4  discussed sending you."

5          Do you see that?

6  A      Yes.

7  Q      So can we assume that, in fact, a conversation took

8  place between Mr. Brodsky and Mr. Bush on December -- on or

9  around December 14, 2009?

10  A      I suppose so.

11  Q      And you see that attached, under number one:

12  "Attached is a pdf containing analysis that we have done to

13  assess Tribune's solvency at the time of step-one financing

14  and a cover letter explaining the key take-aways."

15  Do you see that?

16  A      Yes.

17  Q      Okay.  So is it fair to assume that that document was

18  sent?

19  A      Yes, I don't see it behind this e-mail, but I'm sure

20  we produced it.

21  Q      Now, at the time of this e-mail, and this goes --

22  again, this is December 15, 2009, before the first conclave,

23  if you look at number three, do you see:

24  "Mark" --

25  And that's Mark Brodsky --

1  "found an ancient 1908 treatise, relevant pages attached,

2  that bears on the estoppel theory that we discussed with

3  you."

4  Do you see that?

5  A    Yes.

6  Q    And that estoppel theory that is referred to in this

7  e-mail -- and I think we talked about it at our deposition,

8  and you talked about it this morning -- was the predecessor

9  to your patented term WEAR, is that correct?

10  A    Trademarked, yes.

11  Q    Trademarked, sorry.  I'm not a bankruptcy person.

12  (Laughter)

13  Q    Do you see that?

14  A    I do.

15  Q    Okay.  So this is a -- so it sounds like Mr. Brodsky

16  already had discussions with these -- with the counsel for

17  the UCC in 2009 about, among other things, the predecessor

18  to the ware theory, is that correct?

19  A    Yes.

20  Q    And you were not the largest noteholder at the time,

21  in December of 2009?

22  A    No, I'm not sure what our holdings were at that time.

23  It was before I worked on the position.

24  Q    Right.  I think you testified that, when you got

25  involved, Centerbridge was four times the size, in terms of

1    holdings.

2    A    That's correct.

3    Q    Okay.  So you were certainly no greater than that, at

4    this time?  If anything, you were less.

5    A    I'm just not sure.

6    Q    Okay.  But despite the fact, you weren't the largest

7    by -- you weren't the largest noteholder at the time, the

8    UCC engaged in discussions with Aurelius back in December of

9    2009, is that correct?

10   A    Well, I don't want to overstate it.  This is an e-mail

11   following up to a call, so I don't know if there were any

12   other communications, because again, it was before I worked

13   on the position for the firm.

14   Q    Okay.  I'm -- let's talk about April 2010.  You

15   testified -- I think you testified; you certainly did at

16   your deposition -- that in April of 2010, you spoke to David

17   Kurtz of Lazard, is that correct?

18   A    Yes.

19   Q    Okay.  And at the time, you know of course, that Mr.

20   Kurtz was debtors' financial advisor, right?

21   A    Yes.

22   Q    And that was, again, at the time in April, you still

23   weren't the largest noteholder in the case, correct?

24   A    Yes.

25   Q    And that you were, again, you know, about one-fourth

1  the size of Centerbridge.

2  A    Correct.

3  Q    Okay.  Now -- and Mr. Kurtz also testified -- or you

4  testified yesterday that, after the examiner's report came

5  out, you had a conversation with Mr. Kurtz, is that correct?

6  A    Yes.

7  Q    Okay.  What we're going to do now, Your Honor, if

8  you'll indulge me, we have a demonstrative, which you could

9  find under tab 48 of the binder, which we're going to put

10  out, but it's an animated demonstrative.  I don't want to

11  oversell --

12  (Laughter)

13  Q    -- but I want to do -- or the point is I want to just

14  keep track of contacts that Aurelius had with the DCL group

15  in the months on the demonstrative: August, September,

16  October, and November.  Now, you had a conversation with Mr.

17  Kurtz on or about August 10, 2010, is that correct?

18  A    Yes.

19  Q    And that's the conversation -- the Russian

20  conversation that we've been talking about, where the

21  connection wasn't very good, but you kept on having to call

22  back or the like, is that correct?

23  A    Correct.

24  Q    So Mr. Kurtz, as you knew, was on vacation at the

25  time, right?

1   A       That's what he said, yeah.

2   Q       But he took the time and listened to your views, is

3   that correct?

4   A       Yes.

5   Q       Okay.  And at this point in time, you were still not

6   the largest noteholder in the case, correct?

7   A       Yeah, I've spent plenty of my vacation talking to

8   people about this case, too, but yes, he did.

9   Q       Yesterday, you testified about a meeting on August 17

10  with the debtors at Sidley's New York office.  Do you recall

11  that?

12  A       Yes.

13  Q       And you testified that Mr. Kurtz was there, correct?

14  A       He was.

15  Q       And you testified that Mr. Liebentritt was, correct?

16  A       Yes.

17  Q       Yesterday, you also testified about an August -- oh,

18  see, we're filling in the X's as we go.  Yesterday, we

19  talked about an August 19 meeting that Aurelius participated

20  -- or better, we talked about a UCC meeting, an unsecured

21  creditors committee meeting, that Aurelius participated in

22  on August 19 via telephone.  Do you recall that?

23  A       Yes.

24  Q       And the committee invited Aurelius to participate in

25  its meeting, isn't that correct?

1  A     Well, I made the request to address the committee, and

2  the committee agreed.

3  Q     Okay.  And I think you testified that you participated

4  in that call personally, correct?

5  A     Yes.

6  Q     And your counsel did as well?

7  A     Correct.

8  Q     And you indentified that counsel as one of Mr. Lack's

9  partners from Friedman Kaplan, correct?

10  A     Ed Friedman from --

11  Q     Ed Friedman.

12  A     -- Friedman Kaplan --

13  Q     Okay.

14  A     -- yes.

15  Q     And Aurelius presented views at that August 19 meeting

16  with the unsecured creditors committee about the value

17  available to unsecured creditors in the case, is that

18  correct?

19  A     I don't think that's completely correct, no.

20  Q     If you could turn to tab 12, and I'm looking at -- and

21  tab 12, for the record, is DCL Exhibit 69, which is the

22  August 19 creditors committee supplemental minutes.  And if

23  you could turn to the second page of that document.  Do you

24  see on the -- in the second bullet, it says:

25  "Aurelius argued that the examiner's report demonstrate that

1   there was significant value available to unsecured creditors

2   in this bankruptcy cases."

3   A      I do.

4   Q      And you talked about the different means -- which

5   you've talked now at length, the three different means you

6   identified on how you can get to -- you, the senior notes,

7   could get to par.  Do you see that?

8   A      Yes.

9   Q      Okay.  Did Aurelius, at this meeting, describe a

10  proposal for settling the LBO claims that it would support?

11  A      No.

12  Q      Let's go to -- so that was August 19.  Let's go to

13  September 1.  Now, you're aware that, on September 1, this

14  Court appointed a mediator in this case, is that correct?

15  A      If I can just add to my last answer, the reason that I

16  didn't give a settlement number that we would support, I had

17  heard, as I said yesterday, that the committee was

18  contemplating settling the case for less than the April

19  settlement, which I thought was a complete anathema to the

20  conclusions of the examiner --

21          UNKNOWN:  Move to strike.

22          THE COURT:  Denied.

23          THE WITNESS:  -- which I thought was a complete

24  anathema to the examiner's conclusions.  So the purpose of

25  my call to the committee on the 19th was to make sure that a

1  settlement was not reached at a lower value than the April

2  settlement.  It wasn't to suggest that there be a settlement

3  level.

4  BY MR. KAMINETZKY:

5  Q    Let's go to September 1.  You're aware that, on

6  September 1, the Court appointed a mediator in this case?

7  A    Yes.

8  Q    And that order named you, Aurelius, as a party to the

9  mediation, isn't that correct?

10  A    Yes.

11  Q    Even though you weren't the largest noteholder at the

12  time, correct?

13  A    Yes.

14  Q    And Centerbridge was also a separate mediation party

15  in the case, isn't that correct?

16  A    Yes.

17  Q    And the order provided you the opportunity to submit a

18  mediation statement to the mediator in advance of the first

19  mediation session, is that correct?

20  A    Yes.

21  Q    And did you do so?

22  A    We did.

23  Q    Now, yesterday, you testified, in September of 2010,

24  Aurelius purchased Centerbridge's position.  Do you recall

25  that?

1   A     I do.

2   Q     So that was after the mediator was appointed, is that

3   correct?

4   A     Yes.

5   Q     You purchased that position no later than September

6   22, 2010, is that correct?

7   A     I just don't remember the date on which --

8   Q     Yes.

9   A     -- we purchased.  I think we decided, in discovery, we

10  weren't going to describe the precise dates of purchase,

11  because that would lead to the discovery of price data, so I

12  don't think, beyond saying that the purchase occurred in

13  September, I can really respond to that.

14  Q     I think it's an important point to just try to narrow

15  it, and I won't talk about a specific date, but let's try to

16  narrow it to when in September.  If you could turn to a

17  document produced in this case under tab 14.

18  A     Okay.

19  Q     And would you agree with me, from looking at the

20  bottom of the document -- it's actually an e-mail chain.

21  Again, this is tab 14.  It's an e-mail from Dennis Prado to

22  folks at Tribune, copying, among others, yourself.  And

23  pursuant to the acknowledgement and agreement dated April 5,

24  2010, et cetera:

25  "I'm providing notice that Aurelius Capital Managed Fund

1  entities now hold 633,907 million of Tribune's senior

2  notes."

3  Do you see that?

4  A     I do.  Our confidentiality agreement we signed with

5  the company in April provided that if we acquired notes in a

6  certain increment -- I don't recall what that increment is

7  -- we had to give notice to the company within a certain

8  period of time, and I, sitting here, don't recall what that

9  period of time is.

10  Q     But if you want to refresh your recollection, will you

11  accept my representation that it's within three business

12  days?

13  A     That -- sure.

14  Q     Okay.  I mean, we could look, but --

15  A     I'll accept the --

16  Q     Okay.

17  A     It sounds reasonable to me.

18  Q     So it's fair to say that within three business days of

19  September 22 was when the transaction with Centerbridge

20  occurred?

21  A     Yes.

22  Q     So again, let's just get the calendar out.  So we're

23  at September 22.  That was before the first mediation

24  session, is that correct?

25  A     Yes.

1   Q    Okay.  But only a few days before.

2   A    Yes.

3   Q    Okay.  And just so that we're clear, this transaction

4  with Centerbridge was the first time -- or the first time

5  when Aurelius became the largest holder of Tribune senior

6  notes, is that correct?

7   A    Yes.

8   Q    Now, Mr. Gropper, yesterday, you testified that you

9  were involved in the mediation in this case, is that

10  correct?

11   A    Yes.

12   Q    Have you ever been involved in a mediation before?

13   A    Yes.

14   Q    Okay.  How many times?

15   A    A handful.

16   Q    Okay.  Were you ever involved when you were working at

17  Aurelius or prior -- in -- within prior experience?

18   A    I -- sitting here today, I don't remember being

19  involved in mediation with Aurelius, but that doesn't mean

20  it didn't happen.  I just can't recall one.

21   Q    Okay.  Now, who is the mediator in this case?

22   A    Judge Gross.

23   Q    Do you believe that Judge Gross understood his role as

24  a mediator?

25   A    Yes.

1  Q      And would you agree with me that, among the mediator's

2  roles is to carry proposals back and forth, from side to

3  side?

4  A      Yes.

5  Q      Do you think Judge Gross is capable of doing that in

6  this case?

7  A      Do I think he was capable of carrying proposals back

8  and forth?  Because I just want to make sure --

9  Q      Yeah.

10 A      -- I understand the question.  Yes.

11 Q      And do you think, if proposals were made, that Judge

12 Gross would deliver them to the parties to whom they were

13 made?

14 A      I think you're asking a question that would require me

15 to go into what happened at the mediation.  If you want to

16 ask me questions and open that door, I mean, that's -- you

17 know, I -- my understanding was we weren't going to talk

18 about what happened at the mediation.

19 Q      I think --

20 A      If you're going to ask me --

21         THE COURT:  Mr. Gropper, let me give you this

22 instruction.  In the absence of objection, you should

23 respond, as best you can, to the question that's been asked.

24         THE WITNESS:  Okay.

25 BY MR. KAMINETZKY:

1  Q     Do you believe Judge Gross was capable of doing that:

2  conveying proposals back and forth?

3  A     Yes.

4  Q     Okay.  Now, you understand that the way mediation

5  works is sometimes, at the mediator's discretion, he puts

6  parties in separate rooms and plays shuttle diplomacy, and

7  other times, within the mediator's discretion, he believes

8  it'd be most productive to put parties together in the same

9  room.  Do you understand that that's a dynamic?

10 A     Yes.

11 Q     Okay.  And you understand, in this case, both dynamics

12 exist: there were face-to-face meetings among the parties,

13 and then there was the -- each one in the room and shuttle

14 diplomacy.

15        MR. ZENSKY:  And now I am rising to object,

16 because this is getting into the mechanics of how Judge

17 Gross conducted the mediation.

18        MR. KAMINETZKY:  Your Honor, I think -- you know,

19 and we've allowed testimony on who met with whom, et cetera,

20 that Ms. Kulnis and others testified about.  I'm not going

21 to talk about -- I'm not going to ask him about

22 conversations or anything else, but just, again, Mr. Gropper

23 spent a day-and-a-half talking about being excluded and not

24 being a part and talking about that the settlement -- one of

25 the principle reasons that the settlement and the DCL plan

1   is unfair was because he was excluded from it.  I mean, we

2   have quote after quote about that.  And I think it's only --

3   it's not really proper for him to then hide behind the

4   mediation and say, well, I'm not going to talk about that.

5   I'm not going to get into conversations.  I'm going to be

6   very careful.  I understand the red flag that you put up and

7   you've instructed us to put up, but I think just the fact

8   that they were at the mediation, they were there, they gave

9   presentations, Judge Gross talked to them -- again nothing

10  to do with substance -- is extremely important for the Court

11  to value -- to evaluate the situation, whether or not,

12  indeed, they were excluded.

13              THE COURT:  I agree with Mr. Zensky.  You're

14  headed into a place, which I will say is not permitted.  And

15  number two, I don't think will be all that helpful to the

16  Court.  The objection is sustained.

17  BY MR. KAMINETZKY:

18  Q    Now, you did testify that Aurelius met with the

19  creditors committee during the mediation session, is that

20  correct?

21  A    Yes.

22  Q    And Aurelius met with JPMorgan during the mediation

23  session.

24  A    Yes.

25  Q    And we have heard testimony from Ms. Kulnis that,

1  actually, there were multiple meetings among Aurelius and

2  JPMorgan during the mediation session.

3          MR. ZENSKY:  Objection, I believe that's --

4          THE COURT:  Sustained.

5          MR. KAMINETZKY:  Your Honor, I just want to --

6  you allowed that testimony last week.

7          THE COURT:  Well, was there an objection?

8          MR. KAMINETZKY:  I don't know.

9          THE COURT:  I don't remember, either.

10 BY MR. KAMINETZKY:

11 Q    Okay.  But I guess you do recall meeting with -- at

12 least once, with the -- with JPMorgan, correct?

13 A    Yes.

14 Q    Okay.  And JPMorgan's counsel was present, is that

15 correct?

16 A    Yes.

17 Q    As well as Ms. Kulnis?

18 A    Yes.

19 Q    So, just so that we understand, and this all happened

20 -- and the first mediation session, if you want to look at

21 the calendar, refresh -- to refresh your recollection,

22 happened on September 26 and 27, is that correct?

23 A    yes.

24 Q    So, within about a week of Aurelius' purchase of the

25 Centerbridge position, you had face-to-face, principle-to-

1  principle meetings with the banks, isn't that correct?

2  A     That's not correct.

3              MR. ZENSKY:  Objection to form.

4              THE WITNESS:  Sorry.

5              THE COURT:  Explain.  What is flawed about the

6  form, Mr. Zensky?

7              MR. ZENSKY:  The testimony was that we had a

8  meeting with JPMorgan.  The question said banks, plural.

9  That hasn't been established yet.

10             MR. KAMINETZKY:  I'll --

11             THE COURT:  Is that -- okay.

12             MR. KAMINETZKY:  I could rephrase the question.

13             THE COURT:  All right.

14 BY MR. KAMINETZKY:

15 Q     So, within about a week of Aurelius' purchase of the

16 Centerbridge position, where you first became the majority

17 holder of the senior notes, you had face-to-face, principle-

18 to-principle -- at least one meeting with JPMorgan, is that

19 correct?

20 A     Are you talking about just a meeting or a substantive

21 negotiation?

22 Q     Well, you know, you --

23 A     I just want to make sure I'm fully answering the

24 question.

25 Q     Well, I would love to ask you about what happened in

1  that, but I think Mr. Zensky will jump up at me, so Your

2  Honor, I think this is -- we're kind of in a spot here,

3  because on one hand --

4            THE COURT:  Well, let's --

5            MR. KAMINETZKY:  -- and on the other hand,

6  sword/shield.

7            THE COURT:  Well, let me see --

8            MR. KAMINETZKY:  I could go on.

9            THE COURT:  -- if I can break the logjam here.

10 Despite Aurelius' contention that it was left out of the

11 process, in a meaningful way, or wasn't admitted to the

12 process in a meaningful way, I don't understand, from the

13 parties' arguments, that Aurelius is arguing the mediation

14 itself was flawed.  Now, if I missed something -- if I've

15 missed something in the arguments, Mr. Zensky, you can let

16 me know.  But if that's the case, then I don't know that

17 exploring what actually took place during any of the

18 mediation sessions will be helpful to the Court in

19 determining the disputes that the parties have.

20            MR. KAMINETZKY:  I understand, Your Honor, and I

21 don't -- I guess Mr. Zensky could answer if whether he's

22 going to challenge the efficacy or the non-flawed nature of

23 the mediation, but I mean, the point that I'm getting at,

24 which I think, you know, the Court should give me latitude,

25 is Mr. Zensky, you know, gave testimony yesterday, saying

1  that he never had -- and I -- this is a quote, "face-to-

2  face, principle-to-principle meetings with the folks that

3  held the money in this case".  And all I'm pointing out is

4  that a week after they bought the position, they had a face-

5  to-face, principle-to-principle meeting with --

6          THE COURT:  Well --

7          MR. KAMINETZKY:  -- JPMorgan.

8          THE COURT:  -- if I recall the testimony

9  correctly, it was more in the nature of, look, at a time at

10  which it became critical -- these are my words, not his --

11  to talk to the people who actually controlled the outcome of

12  any settlement, I didn't -- I wasn't able to get the contact

13  that I wanted.  That's how I took his testimony, not that

14  there were never any meetings or discussions.  I mean,

15  there's been testimony that there have been some.  And I

16  don't think that's disputed, necessarily.  I mean, look, I

17  don't know that there's even a dispute about the facts.  I

18  think where the dispute lies, in the sentiment by Aurelius,

19  that whatever it was, it wasn't enough, and it wasn't

20  meaningful enough.  And on the other side, the sentiment is,

21  well, of course it was.  I understand this.

22          Mr. Zensky, you rose?

23          MR. ZENSKY:  Yes, I did, because, Your Honor, I

24  asked about the understanding of our arguments.  And Your

25  Honor, I mean, we do and did have very strong views about

1  the manner in which the mediation was conducted.  The Court

2  made a ruling on what kind of discovery would or would not

3  be permitted, and as the case has been presented to you at

4  trial, you read the papers correctly.

5          THE COURT:  Okay.

6          MR. ZENSKY:  Okay.  And the second point, the --

7          THE COURT:  That's a more precise description.

8  Thank you.

9          MR. ZENSKY:  Okay.  And the testimony yesterday,

10  I believe I was careful to ask whether there was contact

11  between a certain date and outside of a mediation --

12          THE COURT:  You were.

13          MR. ZENSKY:  -- the way I posed my questions --

14          THE COURT:  You were.

15          MR. ZENSKY:  -- Your Honor.

16          MR. KAMINETZKY:  And again, I'm not going to beat

17  a dead horse, but it's --

18          THE COURT:  Then, you should stop now --

19          MR. KAMINETZKY:  Okay.

20          THE COURT:  -- because the --

21  (Laughter)

22          THE COURT:  -- because the poor animal has

23  suffered enough.

24  (Laughter)

25          MR. KAMINETZKY:  Okay.

1    MR. ZENSKY:  Is that a reference to me or my

2  client?

3  (Laughter)

4    MR. KAMINETZKY:  Mr. Gropper.

5    THE COURT:  To the Court.

6  (Laughter)

7  BY MR. KAMINETZKY:

8  Q    Following the first mediation session on September 26

9  and 27, Mr. Zensky -- Mr. Sottile, earlier today, showed you

10  a series of e-mails.  Would you agree with me that there was

11  e-mail correspondence between Aurelius and the committee,

12  specifically with respect to the model, following the first

13  mediation session?

14  A    Yes.

15  Q    Okay.  And would you agree with me that that was --

16  those were on September 28, 29, 30 -- we could go through

17  it, or you could just --

18  A    Well, if you --

19  Q    -- take my reference --

20  A    -- represent that you looked at his binder and that's

21  what the dates were, then --

22  Q    Yeah, I mean --

23  A    -- I mean, sure.

24  Q    -- if you have any reason to -- we could go through

25  them, one by one, but I think the Court may kill me.

1  (Laughter)

2  A     There was e-mail correspondence --

3         THE COURT:  No counsel has yet driven me to that

4  point.

5  (Laughter)

6         THE COURT:  You won't be the first.

7         MR. KAMINETZKY:  It's a good thing we're not in

8  Texas, where, you know, you keep a shotgun behind the bench.

9  Okay.

10  (Laughter)

11         THE WITNESS:  There was e-mail communication that

12  week.

13  BY MR. KAMINETZKY:

14  Q     Okay.  And you'll accept -- again, we could do this

15  quickly.  You accept that was on September 28, 29, 30?  Is

16  that -- does that comport with --

17  A     That --

18  Q     -- your recollection?

19  A     Yeah, yes, that --

20  Q     Okay.

21  A     -- does.

22  Q     Let's move along.  If you could add those in to our

23  little chart.  Thank you.  And do you recall having a phone

24  call with -- well, your -- Mr. Zensky mentioned that maybe I

25  didn't touch on a document on the 29th.  If you could look at

1  tab 15 of your binder.  I just don't want to mislead you,

2  Mr. Gropper.  This is a -- we've looked at it before, or you

3  did -- it's the same document you looked at in your direct.

4  And you see this is an e-mail dated September 29 from Dennis

5  Prado of your office to Mollis [ph], who are the committee

6  representatives, and you're copied on that e-mail.  Do you

7  see that?

8  A    Yes.

9  Q    And you see it says:

10  "Zuell [ph] and Ashish [ph], it was good meeting with you

11  tonight."

12         Do you see that?

13  A    Yes.

14  Q    So can we assume that a meeting occurred among

15  Aurelius and advisors to the creditors committee on

16  September 29?

17  A    Yes.

18  Q    And I think we could fill our box in then.

19  A    I don't want to quibble with you on your boxes, but I

20  don't think that the X on the 26th is correct.

21  Q    Well, that was a mediation day, so you didn't meet

22  with --

23  A    Oh.

24  Q    We talked about that already.

25  A    The JPMorgan meeting that you had asked me about was

1  on the 27th.

2  Q     Did you meet with any other of the debtors or

3  committee on the first day of mediation?

4  A     No.

5  Q     Okay.  So that's fair.  You did meet with the mediator

6  though?

7  A     Correct.

8  Q     Okay.  Now, we have more e-mails between the UCC and

9  Aurelius on October 2.  Could we -- would you like to take

10  my word for it?

11  A     Well, why don't you show them to me, and I'll take a

12  look?

13  Q     Okay.  So let's look at tab 16.  Now, tab 16 -- let me

14  tell you what this is.  This is a privilege log that Akin

15  Gump supplied to us.  If you see on the top, it says

16  "Aurelius Capital Management privilege log".  Do you know

17  what a privilege log is, Mr. Gropper?

18  A     Yes, I'm familiar with this document.

19  Q     Okay.  And in fact, you were the person responsible

20  for the document that I've showed you in discovery for

21  Aurelius, isn't that correct?

22  A     Yes.

23  Q     And I want to direct your attention to item number 112

24  on the privilege log.  It's on the bottom of page 10.  Do

25  you see that?

1  A     Yes.

2  Q     And the privilege log indicates an e-mail change on

3  October 2, from Jim Sottile to Jim Sottile but copied to

4  Mark Brodsky, Dan Gropper, among others.  Do you see that?

5  A     Yes.

6  Q     And the description is "discussing with creditors

7  committee counsel legal issues, strategy, research

8  developed, and communications communicated by counsel".  Do

9  you see that?

10  A     Yes.

11  Q     So do you believe that this privilege log is an

12  accurate reflection of the e-mail chain?

13  A     Yes, but I'm not sure, without seeing the e-mail, what

14  was being discussed with the committee.  I mean, we were

15  having certain discussions with the committee at different

16  periods of time that were -- that did fall in the common

17  interest privilege moniker, and I just -- I don't know what

18  this -- whether this is -- what this is about.  That's all.

19  Q     Okay.  But the -- certainly, it was about Tribune.

20  A     It was about Tribune.

21  Q     And it was discussing with creditors committee counsel

22  legal issues, strategy, and research, is that correct?

23  A     That's correct.

24  Q     Okay.  So there was contact, then, between Aurelius

25  and the creditors committee on October 2.

1  A    Contact, sure, but we had given the committee input

2  into their complaint, for example, so I don't know if this

3  e-mail represented just our communicating thoughts about the

4  complaint that was -- and their motion for standing that was

5  being adjudicated around this time.

6  Q    Now, you're aware that, on October 3, Akin Gump, on

7  behalf of Aurelius, submitted a term sheet to the debtors,

8  is that correct, on October 3?

9  A    I'm not sure the timeframe.

10  Q    Well --

11  A    I think that was a mediation day, though.

12  Q    It wasn't a mediation date.  If you could turn to --

13  A    I'm sorry.  October 3 was not a --

14  Q    Yeah.

15  A    -- mediation day?

16  Q    It's my --

17  A    Your chart says it's a mediation day, so maybe I'm

18  just mis-recalling.  I know there was mediation that week.

19  I just --

20  Q    Okay.  So let's skip that then.  Okay.  You're right.

21  October 3 and 4, you're aware, is the second mediation.

22          THE COURT:  The 4th and the 5th.

23  BY MR. KAMINETZKY:

24  Q    The 4th and the 5th?  We got it wrong.  Okay.  So

25  apparently, the bench tells me it was October 4 and 5.

1  A      Okay.

2  Q      Okay.  So going back to tab 17, do you see an e-mail

3  from Phil Dublin at Akin Gump to a bunch of folks at Sidley,

4  copying Mark Brodsky and Dan Gropper, amongst -- among

5  others?

6  A      Yes.

7  Q      And you see:

8  "As per Danny's conversation with Jim, attached please find

9  a draft term sheet for a plan of reorganization for Tribune

10 Company and its affiliated debtors and the debtors-in-

11 possession."

12 Do you see that?

13 A      Yes.

14 Q      And does that refresh your recollection that, in fact,

15 a draft term sheet was sent on this date?

16 A      Yes.

17 Q      And prior to the sending of this term sheet, isn't it

18 a fact that Danny Golden, your lawyer, had a conversation

19 with Jim Conlan, lead lawyer for the debtors?

20 A      Well, I don't have firsthand knowledge of it, but Mr.

21 Dublin's e-mail indicated that it happened, so I'm sure it

22 did.

23 Q      Okay.  Now, I'd like you to turn your attention to now

24 October 4.  Now, you're aware on that date Aurelius sent

25 Lazard and Alvarez a live version of the probability model,

1  is that correct?

2  A     Yes.

3           MR. ZENSKY:  Your Honor, may I object?  This is

4  the same document that Mr. Bendernagel rose yesterday to

5  object to me using the same, and I was submitting a

6  communication on the mediation day, and I withdrew the

7  exhibit, based on Mr. Bendernagel's objection.

8           THE COURT:  Any response?

9           MR. KAMINETZKY:  I'm just -- I think there's been

10 extensive testimony that these models were shared.  I just

11 wanted to pin down the date.  I mean --

12          THE COURT:  Sustained.

13 BY MR. KAMINETZKY:

14 Q     Okay.  So let's move on to, then, October 6.  So

15 subsequent to the -- so, the model was shared, and do you

16 recall that, on October 6, there was communications about

17 having a meeting to discuss Aurelius' October 4, 2010 model,

18 is that correct?

19 A     I apologize.  Can you just repeat the question?

20 Q     Yeah, why don't we turn to tab 19?  It might be

21 easier.

22 A     Okay.

23 Q     You see that tab 19 is a document among Sunil Mandava

24 [ph] of Lazard, with Dennis Prado of your office, copying

25 you among others, and it talks about setting up a meeting to

1  walk through the model.  Do you see that?

2  A    I -- it was an e-mail communication about that.  That

3  ended up being a tele-call -- tele-conference, rather than a

4  meeting.

5  Q    Okay.  So if -- you -- it's your testimony that a

6  tele-conference happened about the model on October 6?

7  A    I'm not sure when it happened.  I know that Sunil is

8  -- Mandava has requested a time from Mr. Prado in his e-

9  mail, but there's no confirmation back, so I just don't know

10  when that call took place.

11  Q    Okay.  That's fair.  But the call took place on or

12  around that time, in lieu of the meeting, is that correct?

13  A    Yes.

14  Q    Okay.  Let's move to October 7.  We've already talked

15  about this, but do you recall that you attended an in-person

16  meeting with the unsecured creditors committee on October 7,

17  is that correct?

18  A    That's correct.

19  Q    And you testified yesterday that you requested to have

20  this in-person meeting with the creditors committee to go

21  over the model you previously provided to their

22  professionals, is that correct?

23  A    Yes.

24  Q    And if you could turn to DCL Exhibit 87, which is tab

25  20.  I don't wan to burden the Court, but this is -- these

1  are the minutes of that creditors committee meeting.  Do you

2  see the second-from-the-first paragraph, under Aurelius

3  presentation?  It says:

4  "At Aurelius' request, representatives of Aurelius were

5  invited to join the meeting to address the committee."

6  Do you see that?

7  A    Yes.

8  Q    Now, skipping to the next paragraph:

9  "Aurelius stated that they would like to see a settlement of

10  the LBO-related causes of action that any settlement must be

11  grounded in a fair reading of the legal risks and a proper

12  analysis of the expected outcomes."

13        And it says:

14  "Aurelius stated that a creative probability model,

15  previously shared with the committee's professionals, and,

16  Aurelius recognized, previously discussed with committee

17  members, to provide a fair analysis of the risks to all the

18  parties."

19  Is that correct?  Did I read that right?

20  A    You read that correct, but I'm not --

21  Q    And --

22  A    -- sure that statement is correct.

23  Q    So you don't think this -- these minutes are an

24  accurate reflection of what Aurelius stated at that October

25  7 meeting?

1   A     Yeah, I'm not sure about the phrase "previously

2   discussed with committee members".  I just -- I don't know

3   if that phrase is correct, because I don't recall having a

4   previous discussion with committee members.  We had

5   discussions with the financial advisors to the committee

6   prior to that day, but I don't recall specific discussions

7   with the members.

8   Q     So, you're unaware of whether or not, prior to this

9   meeting, you provided the model to any members of the

10  committee?  Is that your testimony?

11  A     Yeah, I -- again, I know that we provided it to the

12  financial advisor in advance of this meeting.  I just don't

13  recall whether we sent it to any committee members

14  individually.

15  Q     And at this -- okay.  Other than, you know, the part

16  about discussed with -- previously discussed with committee

17  members, other than that portion of the paragraph, do you

18  agree with the sentiments or that this is an actual,

19  accurate description, other than that, of what Aurelius

20  stated?

21           MR. ZENSKY:  Can counsel clarify when he's

22  referring to "that paragraph"?

23           MR. KAMINETZKY:  I'm referring to the paragraph

24  that starts "Aurelius stated".

25           MR. ZENSKY:  Thank you.

1              THE WITNESS:  Yes.

2    BY MR. KAMINETZKY:

3    Q     So you said -- you then had the opportunity, on

4    October 7, to tell the committee what you believe, or

5    Aurelius believed, what a fair settlement would be in this

6    matter, is that correct?

7    A     Well, what we said is that a settlement had to be

8    grounded in a reading of the legal risks and that we wanted

9    to see a settlement, but the settlement had to bear a

10   correspondence to the examiner's conclusions and the facts

11   in the case.

12   Q     And prior to this meeting, just to sum up, you

13   communicated with the committee's professionals about the

14   settlement model, correct?

15   A     Well, I just want to make sure we're talking about the

16   same thing.  We communicated with them about the examiner --

17   what we've called the examiner model.

18   Q     Yeah.  I like to call it the October 4 model.  We're

19   talking about the same thing.

20   A     Okay.

21   Q     So you agree, before this meeting, you did communicate

22   with the professionals about the model, correct?

23   A     Yes, we --

24   Q     Okay.

25   A     -- wanted the professionals to have the model in

1 advance of the meeting so they could test the integrity of

2 the model to make sure it functioned properly.

3 Q      And you gave it to them, you walked them through it,

4 and you gave them the live version of it, correct?

5 A      Well, I didn't, but Aurelius did.

6 Q      And indeed, you spent hours training the committee's

7 financial advisors on the model, is that correct?

8 A      I'm not sure.  I know that a couple of our analysts

9 met with the committee's financial advisors and -- but I

10 just don't know how long that took.

11 Q      So if -- in your deposition, I could just -- you said

12 the words:

13 "We spent hours training the committee's financial advisor

14 on the model."

15 Is -- do you want to stand by that testimony?

16 A      I do.

17 Q      Okay.  And I'm not going to ask you again, but we've

18 already talked about how you invited the committee to give

19 you suggestions or to run different scenarios, manipulate

20 the model, et cetera.

21 A      That's correct.

22 Q      Okay.  And after Aurelius made the presentation

23 reflected in DCL Exhibit 87, which is tab 20, do you recall

24 meeting separately with committee's counsel?

25 A      We did.  We met with committee counsel that night to

1  resolve the motion we had filed to disqualify Chadbourne

2  [ph].

3  Q    Did you make or discuss any proposal to settle the LBO

4  litigation claims at this meeting on October 7?

5  A    You talking about the second meeting to resolve the

6  disqualification motion?

7  Q    I'm just saying, during this meeting of October 7 with

8  the committee or the subsequent after the committee meeting

9  with counsel, did Aurelius make any proposals with respect

10 to settlement?

11 A    No, but at the second meeting, Howard Sife [ph]

12 assured us that he wanted to work collaboratively and

13 cooperatively with us, going forward, since we had resolved

14 the disqualification motion.  And, you know, then there was

15 a mediation session the next day we didn't even know about.

16        MR. KAMINETZKY:  Well, I move to -- could I move

17 to strike that?  That was non-responsive, Your Honor.

18        THE COURT:  Denied.

19 BY MR. KAMINETZKY:

20 Q    Okay.  Now, you noted -- now, you noted yesterday and

21 you noted just now that you were not invited to one of the

22 mediation sessions, is that correct?

23 A    Yes.

24 Q    And Your Honor, again, I don't want to step on

25 anyone's toes, but I'm going to ask a question, and I ask

1   you to pause to see if Mr. Zensky gets up.  You understand

2   that it's the mediator that does the inviting, is that

3   correct?

4         MR. ZENSKY:  If he's asking the witness's

5   understanding, as a general matter, if that's how this

6   mediation is supposed to function, I have no objection.  If

7   he's asking his knowledge of how this mediation functioned,

8   I do object.

9   BY MR. KAMINETZKY:

10  Q    I could rephrase it.  Generally, it's the -- a

11  mediator that decides which parties to bring to a mediation

12  session, is that correct?

13  A    Yes.

14  Q    Now, you are aware that, on October 12, the settlement

15  in -- which is now embodied in the debtor committee lenders

16  plan, came out of the mediation session, is that correct?

17  A    Yes.

18  Q    Okay.

19  A    Well, to be clear, there are portions of it that are

20  embodied in the debtor committee lender plan.  The term

21  sheet that was released on the 12th had a different

22  distributable enterprise value than the plan that was

23  subsequently filed.

24  Q    That's fair.  Thank you.  You're aware that, on

25  November 11, Aurelius and Alvarez & Marsal communicated on

1  that day, correct?

2  A    I don't recall that particular communication, no.

3  Q    If you could turn to tab 22.  Tab 22 is an e-mail

4  chain between Matt Frank and Matt Zlotto [ph].  Do you see

5  that?

6  A    I do.

7  Q    And Matt Frank is Alvarez & Marsal --

8  A    Yeah.

9  Q    -- correct?

10  A    Yes.

11  Q    And Matt Zlotto is someone that works for you at

12  Aurelius, correct?

13  A    Correct.

14  Q    Okay.  And do you see that this is a discussion about

15  post-petition interest rates, et cetera?

16  A    Yes, we were trying to reconcile each other's numbers

17  and each other's disclosure statements, and the Alvarez guys

18  said, gee, we can't foot to your numbers, so can you get on

19  the phone and explain the numbers in your disclosure

20  statement for your plan to us?  So we did that, and this was

21  a file that we sent them, in order to provide that

22  explanation.

23  Q    Now, yesterday, Mr. Zensky asked you whether -- and

24  I'm trying to quote accurately:

25  "Subsequent to the meeting at Sidley Austin on August 17,

1    and excluding any conversations that you may have had at

2    mediation, did Mr. Kurtz ever reach out to you to discuss

3    your views on potential settlement?"

4            Do you recall that question?

5            MR. ZENSKY:  I have an objection before the

6    answer.  Your Honor, if I understand the purpose of the

7    demonstrative, it's supposed to show contact that relates to

8    proposed settlement.  The witness just testified that this

9    communication had to do with disclosure statements.  At this

10   point in time, there were multiple plans of reorganization

11   on file, so if they are intending to use this demonstrative

12   to show there was a settlement communication that day, the

13   testimony does not support the X on November 11.

14           MR. KAMINETZKY:  That's fair.  We could take it

15   off.

16   BY MR. KAMINETZKY:

17   Q    Do you see, before I -- let me withdraw the last

18   question.  Do you see in tab -- back to tab 22, in the e-

19   mail from Matt Frank back to Matt Zlotto:

20   "Here is the file for discussion tomorrow morning."

21   A    Yes.

22   Q    Okay.  Do you know if that -- if there was a

23   discussion the next morning?

24   A    I don't know.

25   Q    Let me ask you again.  Mr. Zensky -- if -- let me

1  repeat the question.  Mr. Zensky asked you whether:

2  "Subsequent to the meeting at Sidley Austin on August 17,

3  and excluding any conversations that you may have had at

4  mediation, did Mr. Kurtz ever reach out to you to discuss

5  your views on potential settlement?"

6           Do you recall that question?

7  A     Yes.

8  Q     And you answered no, is that correct?

9  A     Yes.

10 Q     And now, would your answer --

11 A     Or sorry.  That's correct.  I answered no.

12 Q     Right.  Would your answer change if you did not

13 exclude conversations that you had in mediation?

14           MR. ZENSKY:  Objection.

15           MR. KAMINETZKY:  Again, the fact of conversations

16 has been something that Your Honor has let in mediation.

17 The substance is what Your Honor has -- where Your Honor has

18 drawn the line.

19           THE COURT:  I'll allow this question.

20           THE WITNESS:  Sorry.  Would you mind just

21 repeating the question?

22 BY MR. KAMINETZKY:

23 Q     Yeah.  You testified yesterday that -- I mean, I'm now

24 summarizing.  I've now read it verbatim twice, but after the

25 August 17 meeting at Sidley with Mr. Kurtz, did he ever

1    reach out to you to discus your views on potential

2    settlement?  And Mr. Zensky asked you to exclude mediation

3    in that question.  And you answered no, there were no

4    contacts.  Would your answer change if we don't exclude

5    mediation?

6    A    I mean, if your question is did I talk to Mr. Kurtz at

7    the mediation, the answer is yes.  If you want me to -- I

8    just -- I don't think I can answer beyond that, without

9    revealing the substance or not of any of those

10   conversations, so I just -- I'm trying to respect the

11   rulings that have --

12   Q    I think --

13   A    -- been on this matter, so I just -- I don't want to

14   go beyond --

15   Q    I --

16   A    -- what I'm supposed to do.

17   Q    I respect that.  We could keep it there.

18   A    Okay.

19   Q    I don't want to get too close to the line.  You -- Mr.

20   Zensky asked you precisely the same question about Mr.

21   Liebentritt.  You know, since the August 17 meeting, have

22   you had any discussion with Mr. Liebentritt about

23   settlement, excluding the mediation, and you said no.

24   Again, just taking out the part excluding the mediation,

25   would your answer still be no?

1    A      The answer would not change.

2    Q      Okay.  Now, do you know who the agent bank is, in this

3    case?

4    A      Yes.

5    Q      And that's JPMorgan, right?

6    A      Yes.

7    Q      And you met with Ms. Kulnis at the first mediation

8    session, is that correct?

9    A      Yes.

10   Q      Okay.  And Ms. Kulnis, as you understand, is the

11   principle at JPMorgan that's in charge of Tribune, is that

12   correct?

13   A      Yes.

14   Q      And that was five-and-a-half months ago, right?

15   A      Yes.

16   Q      And you know who Ms. Kulnis is or JPMorgan's

17   professionals are in this case?  You know it's Davis Polk,

18   is that correct?

19   A      Yes.

20   Q      And you know the -- who the financial advisors are for

21   the banks?

22   A      Yes.

23   Q      And you've testified that you're a big proponent of

24   face-to-face, principle-to-principle negotiations, is that

25   correct?

1    A    Yes.

2    Q    Okay.  In the five-and-a-half months since you've met

3    Ms. Kulnis, have you ever picked up the phone and made any

4    sort of settlement proposal to Ms. Kulnis or any of the

5    professionals?

6    A    No, but that's because of conversations I had with her

7    at the mediation.

8              MR. KAMINETZKY:  Well, I guess I have to move to

9    strike that, given how we've been playing this.

10              THE COURT:  Denied

11    BY MR. KAMINETZKY:

12    Q    Yesterday, you testified that you're really

13    persistent.  Do you remember that?

14    A    Yes.

15    Q    Okay.  So despite the fact that you're really

16    persistent, you never thought -- and you really want to have

17    principle-to-principle negotiations, you don't -- you didn't

18    think that perhaps picking up the phone and calling would be

19    a good idea if you really wanted to settle the case?

20    A    Let me answer it this way, by responding to

21    conversations I had outside the mediation.  It had been

22    relayed to me, by numerous parties, that a negotiated

23    settlement needed to include --

24              UNKNOWN:  Objection.  Once again, hearsay.

25              MR. KAMINETZKY:  It's going straight into

1  hearsay.

2          THE COURT:  You need to get near a microphone so

3  I can hear you and --

4          MR. KAMINETZKY:  I could just say it's pure

5  hearsay what he's about to say.  That's the objection.

6          UNKNOWN:  No, Your Honor, it's the parties on

7  this side of the room.  It's the party opponents he's

8  talking about.  There's no hearsay objection.

9          THE COURT:  Overruled.

10  BY MR. KAMINETZKY:

11  Q    So then, we -- we're going to have to do a foundation,

12  so you're going to have to say who said what.

13  A    I -- is there a question?

14  Q    Yeah, I mean, I asked you, you know -- you've given

15  sensitive testimony that you're a persistent guy, correct?

16  A    Yes.

17  Q    And you believe in face-to-face negotiations with the

18  principles?

19  A    Yes.

20  Q    The people holding the money?

21  A    That's correct.

22  Q    With their money at stake?

23  A    That's correct.

24  Q    And you met Ms. Kulnis five-and-a-half months ago,

25  correct?

1   A     Yes.

2   Q     And you know that she's the principle at JPMorgan in

3   charge of Tribune?

4   A     Yes.

5   Q     And you have a telephone?

6   A     I have more than one.

7   Q     Okay.  And you know --

8   (Laughter)

9   Q     And you know Davis Polk represents JPMorgan, correct?

10  A     Yes.

11  Q     Okay.  And both JPMorgan and Davis Polk are listed

12  numbers?

13  (Laughter)

14  A     Yes.

15  Q     And my question is, did you ever pick up the phone, in

16  the last five-and-a-half months, and said, let's talk about

17  a settlement?

18  A     The majority of the economic interest in this case, in

19  my understanding, on the bank side, is owned by Angelo

20  Gordon and Oaktree.  I described an attempt that I made to

21  reach out to Angelo Gordon.  Oaktree has shown no

22  willingness to have any negotiations since this case began

23  and we became involved.  So I did not think that it would be

24  efficacious to make that call to JPMorgan, so I did not do

25  so.

1  Q    Well, let me ask you this.  Isn't it true that every

2  proponent of the DCL plan has received a copy of the

3  Aurelius model?

4  A    I'm not sure.

5  Q    Okay.  Well, you know the debtors have.

6  A    Yes.

7  Q    And you know the committee has.

8  A    Yes.

9  Q    And you know JPMorgan has.

10  A    I just don't remember the context in which we

11  distributed the model to other parties.  Whether we said to

12  the debtors, gee, you can share it, or whether we gave it to

13  other parties directly.

14  Q    Well, that's fine, but -- well, you would agree with

15  me that anyone you gave the model to certainly has the

16  adequate capabilities to evaluate it?

17  A    I don't know that that's the case at all.  Again, I --

18  Q    Okay.  You --

19  A    I answered earlier that I thought the committee's

20  financial advisor could evaluate it with respect to its

21  functioning as a model.  I didn't -- what I said is I wasn't

22  sure of the parties' capabilities to analyze it, as an

23  analytical matter, because it's a probability tree model.

24  It's not a, you know, normal financial DCF model.

25  Q    Okay.  So you're -- you can't say, either one way or

1  the other, whether the -- together with the law firms, the

2  financial advisors for both the committee and for the

3  debtors -- including Mollis [ph], Lazard, Sidley, Zuckerman

4  Spaeder, Chadbourne -- whether they would have the adequate

5  brainpower to figure out everything there is to know about

6  the model?

7  A    I wasn't making a comment as to brainpower.  There's

8  plenty of brainpower on that side of the room.  What I was

9  suggesting was that it's a probability model, and I didn't

10  know whether the parties, you know, were in a position to

11  analyze it on that basis.

12  Q    All right.  So sitting here today -- so you're telling

13  this Court that you don't believe that, since you gave the

14  model, that people really understand it?  Is that your

15  testimony?

16  A    That's not my testimony at all.

17  Q    You just said --

18  A    That's not what I said.  What I said -- you asked me

19  whether or not, you know, a certain financial advisor had

20  the capability of understanding it, and I just don't have

21  knowledge as to their capabilities.

22  Q    Sitting here today, is there any settlement offer that

23  Aurelius wanted to make that it didn't have a chance to

24  convey to the proponents of the debtor committee lenders

25  plan?

1    A     We were excluded from every negotiation that led to

2    the plan, that is the DCL plan.  After that plan was

3    announced, Mr. Kurtz said to me, we're going to try and get

4    this plan approved, and if we can't, then we will negotiate

5    with you.  If you're asking me if we've made proposals, have

6    we reached out to people to try and resolve this case, the

7    answer to that question is yes.

8    Q     To whom did you reach out?

9    A     Well, I described reaching out to people in my direct

10   testimony yesterday, and there's another mediation session

11   on your chart here, but again, I don't want to go over the

12   line as to what we should be saying about mediation

13   sessions.

14   Q     Well, excluding mediation, what proposal did you make

15   to settle this case that hasn't been discussed?  I mean,

16   what number did you say you'd settle the case at?

17   A     There hasn't been a proposal made outside of a

18   mediation session.

19   Q     So outside of mediation, there's been no proposals

20   from Aurelius to any member of the DCL plan group?

21   A     No, but there was a proposal at a mediation session.

22            MR. KAMINETZKY:  Okay.  Is this a good time for a

23   break, Your Honor, or for lunch?  Or I could go on or we

24   could take lunch now.

25            THE COURT:  How much more do you have?

1          MR. KAMINETZKY:  Twenty minutes.  I'm joking.

2   (Laughter)

3          MR. KAMINETZKY:  I would say an hour at -- or so.

4          THE COURT:  Mr. Zensky?

5          MR. ZENSKY:  I was just rising to provide you

6   with the deposition transcript you asked for, not --

7          THE COURT:  Thanks.  You can bring that up.

8   Yeah, we'll break now.  It's -- all right.  We'll recess now

9   and reconvene at quarter to 2:00.

10         MR. ZENSKY:  Your Honor, though, before we go off

11  the record, again, if there's any question about the

12  admissibility in the colloquy we had before, I would like

13  the chance to offer a brief, if it's necessary.  I don't

14  think it is, but in light of there not being any objection

15  to it on the prior objections to exhibits, the fact that he

16  was deposed on it, the fact that they're prepared to

17  question it, I would like that opportunity if Your Honor

18  requires it.

19         MR. KAMINETZKY:  Your Honor, I think we could

20  short-circuit this.  We agree that it's -- you know, this

21  was something that Dr. Barin [ph] identified in his report

22  that he relied on.  That's fine, if it comes in, in that

23  way.  What our objection was is to have this witness talk

24  about it.  So it's clearly -- it's a -- you know, one of the

25  things that the expert has to turn over, under the federal

1   rules, is stuff he relied on, and this is a thing he relied

2   on.  So we're happy for him to admit it through Dr. Barin as

3   something he relied on, and then he could question him and

4   we could question him.  The objection was not in its

5   admissibility but it's in this witness, this lay witness

6   ability to talk about it.

7            THE COURT:  I understand, but from the Court's

8   standpoint, there's a -- the process to be gone through to

9   determine whether this witness should be allowed to talk

10  about it.  One of the considerations, I think, is, you know,

11  whether you've had the opportunity, in the discovery

12  process, to examine this witness with respect to it, and

13  that, I gather, you have, but I'm going to read the

14  transcript to determine that, in my own mind.

15           The other consideration, which I think is the

16  more difficult one for the Court, is whether this exceeds

17  the bounds of what a lay witness, even if it's a 701

18  witness, should talk about.  And that I want to devote some

19  more thought to, and what Mr. Zensky's telling me is he

20  wants another shot at telling me what I should do, and my

21  answer to that is I won't say yes or no at this point.

22           MR. ZENSKY:  All right.  Just to be -- I don't

23  know if it's another shot.  It's a shot.

24           THE COURT:  Understood.

25           MR. KAMINETZKY:  Okay.  If I could just --

1    (Laughter)

2            MR. KAMINETZKY:  Just on -- if I could just be

3    helpful to the Court, I could give you the references in the

4    deposition where, basically, we were shut down from

5    exploring both the WEAR theory and the up-streaming theory

6    -- you know, the two assumptions in the model -- because of

7    attorney/client privilege, and that's page 161, line 4 to

8    line 14; 164, line 20 to 165, line 5; 215, line 11 to 216,

9    line 18; 250, line 8 to 250, line 22.  And then that's where

10   I tried to explore those two main assumptions of WEAR and

11   up-streaming and was advised, by counsel -- or advised by

12   the witness that his knowledge is based exclusively on

13   conversations with counsel.  Thank you.

14            THE COURT:  All right.

15            MR. ZENSKY:  May I approach, Your Honor?

16            THE COURT:  Yes.  Yes, Mr. Bendernagel.

17            MR. BENDERNAGEL:  And this has nothing to do with

18   what's been going on.  It's separate and apart.

19            THE COURT:  Thank you.

20            MR. BENDERNAGEL:  Your Honor, just looking at the

21   schedule, and I've had some conversations with the

22   noteholders' counsel, but I'd really like to get a

23   resolution to this before we break for the day, and maybe

24   over the lunch hour.  I just want to make sure that the

25   rebuttal case isn't going to start.  I don't want to start

1  bringing witnesses into Delaware between now and Friday.  It

2  appears, looking at the schedule, that Mr. Gropper still has

3  some time to go, that we then have Professor Rock [ph], you

4  know, Mr. Pratt.  We have Mr. -- Dr. Barrone [ph], and then

5  Mr. Tuliano.  And I think that'll take us through to Friday.

6  That's sort of what we've talked about, but I don't want to

7  get in a situation where we come to the end of some time on

8  Friday and all of a sudden it's, well, where's the recross

9  -- or where's the rebuttal case?  And I think I'd like some

10 clarification, if that's the end of the -- their -- the

11 train of witnesses for them, and whether, in fact, they

12 expect that that's going to go through Friday.  Otherwise,

13 I'm going to have to bring witnesses in, and I just want

14 some clarity, one way or the other, because they haven't

15 said that that's the end of their case.  I think they're

16 willing to basically say, we'll get to the end of their case

17 and we'll break until April 12, but them saying that and you

18 saying that is a different thing, and I'd rather ask you, if

19 you that's okay with you, as opposed to starting the

20 rebuttal case sometime Friday afternoon, if we get there.  I

21 just don't know.

22         THE COURT:  Mr. Zensky, any thoughts?

23         MR. ZENSKY:  Yes, absolutely, Your Honor.  I will

24 be able to confirm, at the end of today's proceedings,

25 whether Mr. Tuliano will be our final witness in this phase.

1   And in answering Mr. Bendernagel's question, it would be

2   helpful to know the Court's view on the time that it will

3   allot to a rebuttal case.  It will be somewhat unusual, in

4   my experience, but they've asked for it.  There's been no

5   discussion of what limits will be on rebuttal expert direct

6   testimony, the way we had for the case in chief.  So

7   understanding the Court's thought process on how much time

8   it is willing to allocate to that would inform my view as to

9   whether we should be in a position to begin Friday or wait

10  until April 12.

11          MR. BENDERNAGEL:  That's not acceptable, Your

12  Honor.  We haven't gotten a straight answer all week as to

13  the order of witnesses and when their witnesses are going to

14  be completed.  I think the rules that we've put in place,

15  with respect to the time for the witnesses, is going to

16  apply going forward.  I doubt if we'll use an hour-and-a-

17  half for any of our experts going forward in fact witnesses.

18  But it's now Wednesday afternoon.  We've been through the

19  first witnesses, and now, we're into the second of the

20  witnesses.  They have a long witness list, and they haven't

21  indicated whether, in fact, they're going to call people

22  after Mr. Tuliano, and it was only yesterday that we got the

23  order in that regard.  All I'm asking for is an indication

24  of whether, in fact, that's where their expectation in that

25  regard and whether there are going to be additional

1   witnesses.  They could put Mr. Liebentritt on.  I'd like to

2   know the answer to those questions.

3            THE COURT:  Well, let's -- at the end of the

4   session today, we'll end in enough time to have a discussion

5   about what's left for the noteholders and, secondly, what

6   time constraints should be placed on rebuttal.  In answer to

7   another question, if it -- if the noteholders' witnesses

8   consume until sometime on Friday, do I have an objection to

9   holding rebuttal until April?  No.  We'll see where we are.

10           MR. BENDERNAGEL:  Okay.  That's helpful, Your

11  Honor.

12           MR. ZENSKY:  Thank you.

13           MR. BENDERNAGEL:  All I'm really looking for is

14  just whether I've got to get people on planes this

15  afternoon.  That's the question.

16           MR. KAMINETZKY:  If we could just -- I -- just

17  that we could give the direction to the witness not to

18  confer, since he's in the middle of cross-examination.

19           THE COURT:  All right.  Mr. Gropper, I instruct

20  that you not discuss your testimony with anyone during the

21  break.

22           THE WITNESS:  Okay.

23           THE COURT:  All right.

24           MR. KAMINETZKY:  Thank you, Your Honor.

25           THE COURT:  The Court will stand in recess.

1    (Recess at 12:43 p.m. to 1:55 p.m.)

2            THE COURT:  Mr. Zensky.

3            MR. ZENSKY:  Yes, Your Honor.

4            THE COURT:  I have reviewed the selected pages

5    that each party have pointed out to me of the Gropper

6    deposition transcript from February 23rd and here's how I

7    look at the situation concerning the intended use of, I

8    don't know, should we call it the Aurelius model as opposed

9    to the examiner model or is there a better word for it?

10           MR. ZENSKY:  I -- think we refer to it as the

11   waterfall model, Your Honor.

12           THE COURT:  The waterfall.  Okay.  That's how

13   it's referred to in the deposition transcript.

14           It's not a matter of prejudice, use of it,

15   prejudice to the DCL proponents because it obviously was

16   discussed extensively in the course of the deposition

17   subject to the privilege objections that were raised.

18   Unfortunately, they're tied in to whether there could

19   actually be a fully complete discussion of that on the

20   record in the absence of a waiver of the privilege, which

21   I'm frankly not anxious to encourage under these

22   circumstances.  Too many doors keep opening the crack and

23   people stick their feet in them to make them wider.

24           So I look at it from a Rule 701 standpoint

25   because it is, it seems to me, more in the nature of

1    something that would ordinarily be offered by an expert.

2    And as you know -- as soon as I can find the book with the

3    rule in it -- 701 has a three-part test and the testimony is

4    to be limited to opinions or inferences which are:

5             "(a) rationally based on the perception of the

6             witness; (b) helpful to a clear understanding of

7             the witness's testimony or the determination of a

8             fact in issue; and, (c), not based on scientific,

9             technical or otherwise specialized knowledge

10            within the scope of Rule 702."

11       While I think under that way of looking at it you

12    meet the 701(b) test, I'm not so sure about the others.  And

13    one of the -- I would say somewhat unusual aspects of this

14    evidentiary hearing is it's -- it's peopled with experts who

15    are 702 experts.  But even the so-called fact witnesses are

16    experts in their own sense, although not offered that way.

17    So as tends to be the case, you know, testimony that really

18    goes beyond just fact testimony is normally appropriate and

19    generally allowed.  But in this particular situation I just

20    see it going a little bit farther over that line and not

21    meeting the 701 standards.

22       Now I tell you that so that you have the chance

23    to -- to make the response that you told me you wanted to

24    make, but you can have that opportunity now, if you like.

25       MR. ZENSKY:  Well, I had anticipated, Your Honor,

1  I'm sorry if I was unclear, having an opportunity to make a

2  written submission --

3          THE COURT:  I know that --

4          MR. ZENSKY:  -- on this point since --

5          THE COURT:  I know that's what you wanted.

6          MR. ZENSKY:  Okay.  Well --

7          THE COURT:  But here's -- here's -- here's what

8  I'll tell you.  If you really want that, I'll give you that

9  opportunity and we'll -- at the end of the day when we talk

10  about scheduling, we'll talk about how to work that.  Okay.

11          MR. ZENSKY:  Okay.

12          THE COURT:  But for today's purposes, we'll call

13  that a tentative ruling.  Okay.

14          MR. ZENSKY:  Okay.  Understood.

15          THE COURT:  All right.

16          Mr. Kaminetzky, are you ready to resume with

17  cross-examination?

18          MR. KAMINETZKY:  Yes, Your Honor.

19          THE COURT:  All right.

20          MR. KAMINETZKY:  May I do so?

21          THE COURT:  Yes.

22  BY MR. KAMINETZKY:

23  Q    Welcome back, Mr. Gropper.

24      This morning you talked briefly about the noteholders'

25  plan.  Do you recall that?

1    A      Yes.

2    Q      And you were involved in creating the noteholders'

3    plan, correct?

4    A      Yes.

5    Q      And you just testified that the noteholders' plan was

6    filed in good faith.  Do you recall saying that?

7    A      Yes.

8    Q      Okay.  And you believe in addition to being filed in

9    good faith, that the noteholder plan is fair and equitable

10   to all the parties in the case?

11   A      Yes.

12   Q      Okay.  And that belief, with respect to good faith and

13   fair and equitable, is with respect to all aspects of the

14   noteholder plan.  Is that correct?

15   A      Yes.

16   Q      And I take it from those answers that you feel the

17   noteholder plan doesn't unfairly disadvantage any parties in

18   the case.  Is that true?

19   A      Yes.

20   Q      Okay.  Now the noteholder plan has a feature referred

21   to as a put option.  Is that correct?

22   A      That's correct.

23   Q      And you're generally familiar with the put option.  Is

24   --

25   A      Yes.

1    Q       -- that correct?

2    A       I'm sorry.  I didn't mean to speak over you.  Yes, I

3    am.

4    Q       And the put option is offered to both the parent

5    general unsecured creditors and the subsidiary unsecured --

6    general unsecured creditors.  Is that correct?

7    A       Yes.

8    Q       Now you explained to me in your deposition that the

9    purpose of the put option, and I'm quoting you now, was

10   that:

11               "If particular creditors didn't want to be in the

12               situation when their recovery was dependent on

13               the outcome of the litigation trust causes of

14               action, that Aurelius would offer to buy their

15               claims at a particular price in order to provide

16               them with liquidity under the plan."

17          Was that testimony correct?

18   A       Yes.

19   Q       So under the put option certain creditors who are

20   litigation adverse can get their money now rather than --

21   rather than in some time in the future when the legal

22   disputes are resolved.  Is that correct?

23   A       Yes.

24   Q       Okay.  So at the holders' option, Aurelius will buy

25   their claims under the put option at a fixed price set forth

1   in the noteholders' plan, correct?

2   A    Yes, if that class also accepts the plan as a whole.

3   Q    If they accepted the plan.  Correct.  And that fixed

4   amount set forth in the noteholder plan is fifteen cents for

5   the parent general unsecured creditors.  Is that correct?

6   A    Yes.

7   Q    Okay.  And that fixed amount is twenty-five cents on

8   the dollar for subsidiary general unsecured creditors.  Is

9   that correct?

10  A    Yes.

11  Q    And as we just said, since it's part of the noteholder

12  plan that it's proposed in good faith and is fair and

13  equitable to those creditors, correct?

14  A    Yes.

15  Q    Okay.  Now let's compare what a selling creditor

16  receives as exercising the noteholder plan put option with

17  that same litigation adverse creditor would receive under

18  the debtor-committee-lenders' plan, okay?  Do you know what

19  the general unsecured creditors -- the general unsecured

20  claims against Tribune receive under the DCL plan?

21  A    Against the subsidiary you mean or --

22  Q    Let --

23  A    -- the parent?

24  Q    Let's talk about the parent.

25  A    Okay.

1    Q      That -- that would be 35.18 percent, correct?

2    A      Yes.

3    Q      Okay.  And do you know what the -- under the DCL plan

4    what the general unsecured claims are against the -- what

5    they received against the guarantor subsidiaries?

6    A      Yes.

7    Q      That's a hundred percent, correct?

8    A      Yes.

9    Q      Okay.  So they get more under the DCL plan than they

10   would under the put option in the noteholder plan?

11   A      That's correct, but the put option is something that

12   the creditor can exercise in his option.  If the creditor

13   would prefer to take the recovery under our plan which is a

14   strip of consideration and then shares and distributions,

15   sorry, for the litigation trust and distribution trust,

16   there's no doubt in my mind they will come out vastly better

17   than the parent recovery under the DCL plan.

18   Q      Okay.

19   A      It's hard to do better than a hundred cents.  I'll

20   concede that.

21   Q      I agree.  And a hundred cents is more than twenty-five

22   cents you would agree?

23   A      I'm sorry.  Is the question is one hundred cents more

24   than twenty-five cents?

25   Q      Yes, that is.

1    A      Yes.

2    Q      Okay.  And you understand that -- you explained to me

3    at your deposition that the purpose of the put option was to

4    give litigation adverse creditors the opportunity to get

5    their money now rather than have to wait until the

6    litigation is resolved on the noteholders' plan, correct?

7    A      I'm not sure if I stated it exactly that way.  I don't

8    want to quibble with you.  I mean, it -- we wanted to create

9    an option where people who didn't want to wait for the

10   outcome of the litigation could obtain payment now.  It's my

11   view that there will be settlements under our plan.  I think

12   those settlements will occur very quickly.  So I don't think

13   there will be a very long wait.

14   Q      All right.  But you -- you have the put option there

15   for folks that aren't sure how long the litigation would

16   take and what you're saying is you could take fifteen cents

17   now as opposed to the 35.18 cents under the DCL plan or

18   twenty-five cents now rather than the hundred cents under

19   the DCL plan, the same litigation adverse creditor, correct?

20   A      Well, it's at the option of the creditor.

21   Q      Exactly.

22   A      The creditor doesn't have to exercise the option if

23   the creditor doesn't want to.

24   Q      But if they do because they are litigation adverse, as

25   you explained to me, they would be getting less under your

1    plan than they would under the DCL plan, isn't that correct?

2    A    Well, but no one exercised the put option.

3    Q    Excuse me.

4    A    No one exercised the put option.  The put option was

5    only available to be exercised in the event that a

6    particular class of creditors voted to accept the plan and

7    -- and there were no creditors who both accepted the plan

8    and have their class accept, so the put option became a

9    nullity.

10   Q    Okay.  Thank you.

11        Moving on, the -- you spoke briefly this morning about

12   the DEV holdback in the noteholders' plan.  Do you recall

13   that testimony?

14   A    Yes.

15   Q    Okay.  And I'm just summarizing.  I want to be able to

16   do this quickly.  Under the noteholders' plan under 6.75

17   billion valuation, you testified that approximately between

18   sixty-five percent and forty-nine percent of the DEV would

19   be held back from distribution and put in the trust.  Is

20   that correct?

21   A    Yes.

22   Q    Okay.  And then you said, but if the DEV goes up to

23   8.3 billion or 8.33 billion, that range goes from about

24   sixty percent to forty-two percent in terms of the DEV

25   holdback.

1  A     That's correct.

2  Q     Okay.  Now you're not aware of any company that has

3  emerged from bankruptcy with this much DEV distribution

4  trust.  Is that correct?

5  A     Well, often companies have a dispute of claims reserve

6  when they come out of bankruptcy for claims that are

7  disputed.  That -- that happens in the ordinary course.  And

8  -- and so I can't think of a case off the top of my head

9  that had that percent of the DEV in -- in reserve, but

10 there's certainly plans -- including a case we were involved

11 in in front of this Court -- that -- that had a, you know,

12 sizeable reserve.

13         MR. KAMINETZKY:  Would you be able to lay Clip

14 19, please?  I'm about to show a clip from your deposition.

15 (Playback, 2:07 to 2:08, of Video Deposition of DAN

16 GROPPER:)

17     Q     Could you think of any company that emerged with

18 -- from bankruptcy with this much of the DEV in a

19 distribution trust?

20 A     None that comes to mind.

21     (Pause)

22         MR. KAMINETZKY:  I'm sorry.

23         And then -- I guess we're having some technical,

24 so I'll just read it to you.  And then I say:

25 "Q  Anyone that comes to mind" -- I asked you at your

1  deposition -- "anyone that comes to mind that's close to

2  what we're talking about here, forty-eight to sixty-five

3  percent tied up in a distribution trust or litigation

4  trust?"

5         And you answered -- you answered, "No," et

6  cetera.

7         And was that truthful testimony?

8  A    Yes.  But I think the et cetera is a little more than

9  et cetera and it's actually both important and responsive,

10  which is that much of the DEV will not be tied up for long

11  because I think that once the creditors, the LBO creditors

12  have to face a negotiation on an arms' length basis with an

13  actual trustee that will properly prosecute the causes of

14  action, that there will be distributable enterprise value

15  freed up for the creditors of the estate.

16  Q    But that's pure --

17         MR. ZENSKY:  Wait.  Excuse me, Your Honor.  And I

18  -- I would ask that Mr. Kaminetzky read the rest of the

19  answer where he said no, et cetera, because it sounds

20  remarkably similar to the testimony from the stand.

21         THE COURT:  Well, that's a good thing.

22         MR. KAMINETZKY:  Yeah.

23         MR. ZENSKY:  Yes.  That's my point.

24         MR. KAMINETZKY:  Okay.

25         THE COURT:  Please read it if you would, Mr.

1    Kaminetzky.

2              MR. KAMINETZKY:  "No, but I" -- I'm sorry.  The

3    question was -- let me just find it:

4              "Anyone that comes to mind that's close to what

5              we're talking about here, forty-eight to sixty-

6              five percent tied up in a distribution trust or a

7              litigation trust?"

8    "Answer:  No, but I don't think that there will be that much

9    of the DEV tied up for long because I think once the

10   creditors on the other side of the litigation are actually

11   forced to be in a position where they have to deal with

12   these claims on an arms' length basis without another basis

13   on which they have been dealt with in the case, then that --

14   there will be resolution of these claims in a prompt matter

15   that will allow allocable value to be distributed to all the

16   creditors."

17             THE COURT:  Thank you.

18   BY MR. KAMINETZKY:

19   Q     But that's -- that's just pure speculation on your

20   part.  The litigation could take a long time as litigation

21   often does?

22   A     Well, I think it's a little more than speculation.

23   I've been doing this for sixteen years.  I've been involved

24   in a lot of cases that have had issues like this and -- and

25   processes like this and I am highly confident that there

1  would be a resolution of the causes of action that would

2  lead to a distribution.  That's my view.

3  Q    Okay.  Now let's just talk a little bit more about the

4  trust, and this time let's talk about the litigation trust

5  and the DCL plan.  Now you're aware that under the DCL plan

6  the senior notes get the first 90 million in recoveries from

7  the litigation trust.  Is that correct?

8  A    Yes.

9  Q    Okay.  And after the first 90 million is paid, then

10  the 20 -- there's a twenty-million-dollar loan that funded

11  the trust that gets paid back.  Do you understand that?

12  A    I do.  You know, I'm not sure the 90 million is a true

13  90 million because there's something that happens with the

14  -- if a creditor opted out, then the priority with respect

15  to the 90 million, as we did and as many creditors did, opt

16  out of litigation trust with respect to the state law

17  fraudulent conveyance claims, then the priority associated

18  with the 90 million isn't as clear as saying the first 90

19  million.  So I just -- I want to be precise --

20  Q    Okay.  But as --

21  A    -- in my answer.

22  Q    That's fair.  But you have -- absent that, you have 90

23  million and 20 million to pay back the loan, and then

24  there's a sixty-five/thirty-five split in favor of the -- of

25  the non-LBO creditors.  Is that correct?

1    A    Yes.

2    Q    Now you're familiar with the examiner's findings

3    regarding intentional fraudulent conveyance at step two,

4    correct?

5    A    Yes.

6    Q    Now the examiner found that -- I'm quoting now:

7              "It is somewhat likely that a Court would

8              conclude that the step two transaction

9              constituted intentional fraudulent transfers and

10             fraudulent -- fraudulently incurred obligations."

11        Do you recall that from the examiner report?

12   A    Yes.

13   Q    Now do you think that Dr. Barron's methodology -- Dr.

14   Barron is your expert.  Do you understand that?

15   A    Yes.

16   Q    For valuing claims identified in the examiner report

17   is sound?

18   A    Yes.

19   Q    You reviewed that report, correct?

20   A    I -- I did.

21   Q    Now based on the examiner report, and I'm now going to

22   refer to a demonstrative that was produced to your side.

23   It's at Tab -- at Tab 49.  Now based on the examiner's

24   report Dr. Barron assigned a sixty percent probability of

25   intentional fraudulent conveyance at step two.  Is that

1    correct?

2    A    Yes.

3    Q    And the litigation trust preserves fraudulent transfer

4    claims against shareholders at step two, isn't that correct?

5    A    No.  That's not correct.  The litigation trust

6    preserves claims against step two shareholders that are over

7    payment of $100,000.

8    Q    Okay.  That's -- that's fair.  So overpayment of

9    $100,000, the litigation trust preserves those claims?

10   A    Yes.

11   Q    Okay.  And there was about 3.982 billion in payments

12   went to shareholders.  Is that correct?

13   A    To step two shareholders.

14   Q    Step two shareholders.  That's what we're talking

15   about.

16   A    Right.

17   Q    Okay.  And if we were to calculate the expected value

18   of the claims by multiplying the step two shareholders'

19   exposure times the probability that would be sixty percent,

20   you would get 2.389 billion.  Is that correct?

21   A    Well, the math is right, but the chart is very

22   misleading.  I mean, the problem with the -- with the chart

23   is that you don't know whether or not the step two

24   shareholder claims might have other infirmities like 546(e)

25   for example, and I also can't say whether or not the bar

1  order that's in the DCL plan would affect the claims against

2  the step two shareholders.  So I think it's been difficult

3  for us to come up with an assessment of the value of the

4  claims against the step two shareholders.

5      What I do know is that if this chart actually

6  represents an expected value, then there's no doubt that the

7  claims against the step two banks are being settled for far

8  too little consideration.

9  Q      But you would agree that there's a lot of dollars out

10  there to mind against the step two shareholders that are

11  preserved, a lot of claims out there that are preserved in

12  the litigation trust?

13  A      Well, I'm not sure they're preserved.  I -- I said

14  that there was a bar order that could affect those claims.

15  I think there are defenses that are present for the

16  shareholders that are not present for the lenders.  So I --

17  I just -- it's very difficult to come up with a real

18  assessment and I certainly haven't been provided one by the

19  company or the committee, an assessment of the claims

20  against the step two shareholders.

21      What I do know is that the best claims in the estate

22  are against the LBO lenders and those are the ones that are

23  being settled for too small an --

24  Q      What --

25  A      -- amount of money.

1    Q    -- what -- I'm sorry.  What defenses are you referring

2    to?

3    A    I said 546(e).

4    Q    Does 546(e) apply to intentional fraud?

5    A    It does not.

6    Q    Okay.  And we're talking here and examiner find --

7    finding was with respect to intentional fraud, correct?

8    A    I understand, but he also made a finding as to

9    constructive fraudulent conveyance with respect to step two

10   as well.

11   Q    Now you mentioned the bar order.  You mentioned it in

12   your last answer as well as, I think, yesterday.  Now are

13   you familiar with the bar order in this case?

14   A    I would say generally.

15   Q    Okay.  And you testified yesterday that you were

16   involved in the Lyondell case, correct?

17   A    Yes.

18   Q    That was one of the cases that you were involved in

19   that settled?  Is that --

20   A    That's correct.

21   Q    -- correct?  And you're aware that Lyondell contained

22   a bar order as well?

23   A    I'm actually not familiar with that aspect of the

24   Lyondell case because the claims that I owned weren't

25   impacted either way by the bar order.  So I will tell you

1  that I've never reviewed the Lyondell bar order, never read

2  it, and I have no idea what the impact of it is.

3  Q    Okay.  Well, that's fair.  But are you aware that the

4  bar order in this case in the DCL plan applies only to

5  contribution claims for the non-settling defendants?

6  A    Yeah.  Unfortunately, I just -- you've -- you've now

7  gone beyond my understanding of how the bar order functions

8  in this particular plan.

9  Q    So you don't -- I mean, you suggested yesterday that

10 you can't really determine what the -- so is it your

11 testimony -- let me withdraw that.  So it's your testimony

12 that you really have no idea what effect the bar order has

13 or doesn't have on any of the preserved claims?

14 A    No.  That's not what I said.

15 Q    So why don't you explain to us, then, what the bar

16 order does?

17 A    My understanding is the bar order seeks to preclude

18 parties from claim against other parties to the extent that

19 there's a claim made against them, and I can't tell you with

20 specificity how it operates inside the context of this plan

21 because I just haven't reviewed it recently.

22 Q    Okay.  So --

23 A    I mean, if you want to point me to the bar order in

24 the plan -- in your plan and have me read it and ask me

25 questions about it, I'm happy to give you my, you know, on

1    the fly interpretation of -- of how I read it.  But -- but I

2    just can't speak to it in more detail than I just did.

3    Q    Well -- well, I'll tell you the bar order only applies

4    to valid contribution claims.  Do you know what that means?

5    A    I don't.

6    Q    Okay.  Now -- and I take it you, then, can't think of

7    if there's any -- any of the step two selling shareholders

8    would have contribution claims against the bank?

9              MR. ZENSKY:  Objection.

10             THE COURT:  Basis.

11             MR. ZENSKY:  Isn't he asking for a legal opinion

12    at this point?

13             THE COURT:  That's only one of many times.

14        (Laughter)

15             THE COURT:  All right.

16             MR. KAMINETZKY:  Well, Your Honor, can I respond

17    very briefly?

18             THE COURT:  Sure.

19             MR. KAMINETZKY:  He -- yesterday, he said, you

20    know, going -- Mr. Zensky was asking him about the

21    litigation trust and why he believes it doesn't have as much

22    value as perhaps our side of the room is saying.  He

23    mentioned the claims bar and I'm just trying to press him on

24    that and do you -- do you know what the claims bar is or

25    what it -- you know, the extent in which it would affect

1  your claims, and I'm just pressing him on that point.  I

2  mean, if he doesn't, he doesn't, and then we can move on.

3  But, I mean, he did use it as a criticism of the DCL plan.

4           MR. ZENSKY:  Your Honor, I believe the testimony

5  yesterday was whether the debtor-committee-lender group had

6  ever presented any any to the noteholders of the impact of

7  the bar order, not what this witness's understanding of the

8  precise impact was.

9           THE COURT:  The objection is sustained.

10  BY MR. KAMINETZKY:

11  Q     Then we could just go -- now the DCL plan preserves

12  breach of fiduciary duty and aiding and abetting claims

13  against third parties.  Is that correct?

14  A     Yes.

15  Q     And the examiner left that question in equipoise

16  whether VRC aided and abetted a breach of fiduciary duty.

17  Is that correct?

18  A     I have to be honest.  I don't remember what the

19  examiner's conclusions were with respect to the defendants

20  laid out on the left side of this chart.

21  Q     Okay.

22  A     I obviously read the report multiple times.  I just --

23  I just don't remember what the conclusions were for these

24  particular defendants.

25  Q     Would you accept my representation that I'm accurately

1  conveying what the conclusion of the examiner report is or I

2  could walk you through the report?

3  A    I'm -- I'm happy to take your word for it.

4  Q    Okay.  So you're not familiar with respect to the rest

5  of the chart.  You're just sitting here today -- and I don't

6  blame you for this.  It's a long report.  You're not

7  familiar one way -- or you don't recall sitting here today

8  one way or another how the examiner left those questions?

9  A    That's correct.

10 Q    Okay.  And -- but you are aware that Dr. Barron, based

11 on the examiner report, you know, conclusions of likely,

12 highly unlikely, assigned a number to those, correct?

13 A    Well, I know the examiner said reasonably likely for

14 some, unlikely for some, equipoise for others.  I just don't

15 remember which as to --

16 Q    No.  I --

17 A    -- which creditors.

18 Q    -- understand.  But I'm just asking you another

19 question.  But you understand that Dr. Barron kind of

20 translated those words into numbers with respect --

21 A    Oh.

22 Q    -- to his analysis?

23 A    Yes.

24 Q    And the numbers on the chart accurately reflect Dr.

25 Barron's analysis of what those terms, highly unlikely,

1 reasonably likely, translate to in a percentage terms?

2 A    Well, actually, no.  In other -- what -- in other

3 words, Dr. Barron didn't assess claims against the

4 defendants on the left-hand side of the chart.  So maybe I'm

5 not -- maybe I'm not understanding the question.  He -- his

6 report seeks to come up with the expected value of the

7 claims as against the LBO lenders.

8 Q    No.  That's a fair point.  But Dr. Barron translates,

9 say, the word equipoise as fifty percent.  Is that right?

10 A    Well, yes.

11 Q    So equipoise against the banks would supposedly --

12 that and the fact that equipoise against the banks say is

13 fifty percent, you would think fifty percent would be the

14 right number for equipoise with respect to other claims?  I

15 mean, that's just -- if that's --

16 A     Well, I'm --

17 Q    -- the methodology.

18 A    -- I'm not sure.  We didn't ask Dr. Barron nor did he

19 undertake to model out a model that looks at claims against

20 all these other defendants.  So I -- sitting here today I

21 can't, you know, particularly not focused on that -- those

22 particular elements of the report say, well, gee, that's the

23 right way to, you know, translate it.

24 Q    Well, if the -- I mean, I don't want to quibble with

25 you.  Just I'll try it one more time.  If the -- if Dr.

1  Barron say says that reasonably unlikely in the examiner

2  report translates to seventy percent, you don't think that

3  reasonably likely with respect to say breach of fiduciary

4  claims against step two officers would also translate into

5  seventy percent because it uses the same reasonably likely

6  language or the examiner uses the same reasonably likely

7  standard?

8  A     I'm just -- I'm just not sure.  I just haven't done

9  work on these claims to the extent that I've done work in

10  understanding the other claims.  So I just -- I don't want

11  to -- sitting here today not having a full grasp of the

12  entire section of the report that deals with all these, I

13  just don't want to, you know, give you an incorrect answer.

14  Q     So reasonably likely could mean seventy percent or it

15  could mean something else using Dr. Barron's' analysis of

16  the examiner report?  So it would be -- it would be unfair

17  to say that those terms are used consistently by the

18  examiner.  Is that your testimony?

19  A     No.  That's not my testimony at all.  Those -- those

20  terms are actually used quite consistently by the examiner

21  and, in fact, Dr. Barron uses three different spreads of

22  probabilities in his reports, a narrow spread, a base spread

23  and a -- I don't know what he calls the third spread, but a

24  -- a wide spread, you know, to take into account that people

25  may have different views of -- of what the words actually

1    mean.  And we actually did that in our version of the

2    examiner report.  So I -- I can't -- there's no reason for

3    me to say, gee, let's use a different number.  But I just --

4    you know, I -- sitting here today I just don't know that's

5    the right way to do it.

6    Q    Okay.  I agree.  Thank you.

7         Last topic.  Now we -- we've talked a lot about what

8    you call the examiner model or the October 4th model.  Is

9    that correct?

10   A    Yes.

11   Q    Okay.  Now -- and that was a model that was created by

12   Aurelius, correct?

13   A    Yes.

14   Q    Okay.  And you're aware, Mr. Gropper, that Aurelius

15   employees created other models with -- which analyzed the

16   noteholders expected recovery based on the probabilities as

17   attributed to various litigation outcomes.  Is that correct?

18   A    Well, I think there was some modeling done by some of

19   our analysts at an early point in the process prior to the

20   examiner report coming out.  Some of that was done at Mr.

21   Brodsky's request, some of it was not.  So I -- I can't -- I

22   mean, I know there was some modeling done, but, you know, I

23   can't, sitting here today, tell you how it was relied upon.

24   Q    So there was modeling done other than the October 4th

25   model by folks at Aurelius.  That was my question.  So

1 | that's correct?

2 | A     Yes.

3 | Q     Okay.  If you could turn to Tab 24 which is DCL

4 | Exhibit 961.  And we're going to be flipping between Tab 24

5 | and Tab 25 for the next series of questions.

6 | A     Well, I can't read it on the screen, so.

7 |       (Pause)

8 | A     Okay.

9 | Q     Now if you could look at the cover email on DCL 961,

10 | Tab 24, did you have a chance to look at that email?

11 | A     Well, I did and I'll mention two things:

12 |       One, I've never seen this model.

13 | Q     I didn't ask you any questions, Mr. Gropper.  I just

14 | --

15 | A     Okay.

16 | Q     -- said did you get a chance to review this email.

17 | A     I did.

18 | Q     Okay.  And it's an email from Dennis Prieto [ph] to

19 | Mark Brodsky dated February 3rd?

20 | A     Yes.

21 | Q     Okay.  And do you see it says, "Mark, attached is the

22 | Tribune settlement and also it's revised to reflect

23 | yesterday's discussion."  Do you see that?

24 | A     Yes.

25 | Q     And then the email goes on, "And, indeed, attached to

1  this is the attachment," which is the pages that follow it.

2  Is that correct?

3           MR. ZENSKY:  Objection.  Foundation grounds, Your

4  Honor.  I don't think Mr. Kaminetzky has laid a foundation

5  of knowledge by this witness of either this exhibit or the

6  next one I anticipate his using.  There are other people he

7  deposed of my client who did have knowledge of this, but I

8  don't think he's established a foundation of this witness.

9           MR. KAMINETZKY:  Well, would you like me to

10  respond?

11          Your Honor, that's, I guess -- yesterday -- let

12  me tell you what the purpose of this testimony is and then

13  we could back up.

14          Yesterday, Mr. Gropper testified that after the

15  examiner report came out, it was a game changer and as a

16  result of the examiner report the settlement value went way

17  up in this case.  What I have here is a February 3rd model

18  created by Aurelius and an August 2nd model created by

19  Aurelius.  The February 3rd was obviously before the

20  examiner report came out.  August 2nd was after the unredact

21  -- the redacted version of the examiner report went out.

22  And this model is basically like the October.  It models

23  certain litigation outcomes and what expected recoveries

24  will be.

25          And what this will show, I believe, is that the

1  number after the examiner report went down, not up.  So I'm

2  using it not because he particular -- this is someone from

3  Aurelius.  I agree it wasn't Mr. -- Mr. Gropper.  But I

4  think, you know, I had a right to use this model to show

5  that folks in his own shop had a very different view of the

6  examiner report or -- than he testified to yesterday.

7             And, I mean, I'm happy to --

8             THE COURT:  Well, you need -- you're going to

9  need to explore how he knows what other people in his shop

10  knew and I guess by admissible evidence.

11            MR. ZENSKY:  And -- excuse me, Your Honor.  I

12  would like to add that the testimony is already clear that

13  the first one is before he became involved; the second one

14  is while there was a wall up and the witness has testified

15  he was not involved at all; the third is that Mr. Kaminetzky

16  took other depositions and has, apparently, submitted

17  deposition designations.  So whatever he thinks these stand

18  for he has other sources to get that information --

19            THE COURT:  Reminds me of the --

20            MR. ZENSKY:  -- in the record.

21            THE COURT:  -- lawyer who keeps arguing after he

22  won his objection.

23        (Laughter)

24            MR. KAMINETZKY:  But, Your Honor, I mean, just

25  the -- I'm --

1          THE COURT:  Sustained.

2          MR. KAMINETZKY:  Okay.

3          THE COURT:  Just so we're clear.

4          MR. ZENSKY:  I think there was a precedent set

5    for that with Mr. Bendernagel earlier in the case.

6       (Laughter)

7          MR. KAMINETZKY:  I'm fine and I've -- I've --

8    quite frankly, we took the deposition of the author of this

9    model last Saturday and we reserved the right -- we'll just

10   have to call him.

11         THE COURT:  Ask your next question.

12         MR. KAMINETZKY:  Okay.  We'll just have to call

13   him.

14         Let me just -- give me one minute.

15      (Pause)

16         MR. KAMINETZKY:  Okay.  That's all I have, Your

17   Honor.  Thank you.

18         THE COURT:  All right.  Is there any other cross-

19   examination?

20      (No audible response)

21         THE COURT:  Redirect.

22         MR. ZENSKY:  Your Honor, I'm sorry.  Can I have a

23   five-minute break before we do the redirect?  I'm -- just to

24   make sure I have everything.

25         THE COURT:  Five minutes.

1           MR. ZENSKY:  Thank you.

2       (Recess)

3           MR. ZENSKY:  I'll be very short, Your Honor.

4           THE COURT:  All right.

5                    REDIRECT EXAMINATION

6   BY MR. ZENSKY:

7   Q    Mr. Gropper, Mr. Kaminetzky started -- or early in his

8   examination asked you about Centerbridge and its position

9   after the April plan support agreement was terminated.  Do

10  you recall that?

11  A    Yes.

12  Q    Okay.  And he asked you whether Centerbridge was

13  willing to proceed with the settlement.  Do you recall that?

14  A    Yes.

15  Q    And you answered yes?  Strike that.  He asked you

16  whether Centerbridge was prepared to proceed with that

17  settlement.  Do you recall that?

18  A    Yes.

19  Q    Okay.  What was the basis of information you had at

20  that point in time as to Centerbridge's beliefs?

21  A    Conversations with Mr. Melwani [ph].

22  Q    Okay.  What else did you learn in those conversations?

23           MR. KAMINETZKY:  Objection.  Hearsay.

24           MR. ZENSKY:  Your Honor, they opened this door.

25  They asked the witness about his understanding of

1  Centerbridge's position, I'm sorry to say, because Your

2  Honor commented about doors being opened.  But he was asked

3  about this on cross-examination.

4           THE COURT:  I'll allow it.

5           THE WITNESS:  What Centerbridge said is after the

6  plan support agreement that they were party to was

7  terminated they were no longer willing to go forward --

8  willing to go forward with the April settlement and that

9  they also felt institutionally precluded from doing so by

10  virtue of their relationships with the LBO-lender bank

11  defendants who finance a portion of their private equity

12  business deals

13           MR. ZENSKY:  Okay.

14  BY MR. ZENSKY:

15  Q     And who was it -- who told you that?

16  A     Viv Melwani.

17  Q     Okay.  If you could look back at Tab 12 in the binder

18  that Mr. Kaminetzky gave you, please, Mr. Gropper.

19  A     Okay.

20  Q     These are the committee minutes from the

21  teleconference that you've testified about you participated

22  in with the committee?

23  A     Yes.

24  Q     Okay.  And am I correct or -- strike that.  The

25  statement at the beginning of the second page stated that

1  Aurelius owned approximately 250 million in unsecured bonds

2  of Tribune?

3  A     Yes.

4  Q     Okay.  Do you have an understanding of whether

5  Aurelius was the second largest holder at that point in

6  time?

7  A     I -- yes.  We were the second largest bondholder at

8  that moment.

9  Q     Okay.  And if you look over on the third page of the

10  notes, do you see there's a reference to a recess taken by

11  committee from one to 7 p.m.?

12  A     Yes.

13  Q     Okay.  And then what happened -- or strike that.  What

14  do the minutes indicate happened after the recess?

15  A     "Counsel advised the committee that significant

16  progress had been made with respect to the terms of the

17  proposed settlement with the debtors and senior lenders."

18  Q     Okay.  And you had been on a conference call that very

19  day to discuss the topic of the claims with the committee,

20  had you not?

21  A     Yes.

22  Q     All right.  Did anyone from the committee call you

23  back that day or the next day to say that substantial or

24  significant progress had been made with respect to the terms

25  of a proposed settlement?

1   A     No.

2   Q     Turn to Tab 15, Mr. Gropper, please, in the same

3   binder.  Do you have that?

4   A     I do.

5   Q     Okay.  And this is the transmittal email that you

6   discussed, I think, both on direct and cross reflecting when

7   Mr. Prieto sent the examiner model to committee

8   professionals.  Is that correct?

9   A     Yes.

10  Q     Okay.  You testified in response to Mr. Sottile's

11  questions this morning about some back and forth that you

12  had or Aurelius had with the committee between this date and

13  October 7th?

14  A     Yes.

15  Q     All right.  And you've testified that on October 7th

16  you and Mr. Brodsky personally attended a meeting at the

17  committee and Mr. Brodsky walked the committee and its

18  professionals through the examiner model?

19  A     Yes.

20  Q     Okay.  At that meeting -- strike that.  How many days

21  were there between September 28th and October 7th?

22  A     About nine days.

23  Q     Okay.  And you had had back and forth in that time

24  period?

25  A     Yes.

1   Q      Okay.  Did the committee or its professionals tell you

2   at that meeting what adjustments -- or strike that -- what

3   they thought the expected value of the litigation was if any

4   adjustments they felt were necessary were made to your

5   model?

6   A      No.

7   Q      Did they tell you anything about what they thought the

8   expected value of the litigation was or what an appropriate

9   settlement would be?

10  A      No.

11  Q      Okay.  Now if you look at the demonstrative -- or

12  strike that.  That was October 7th, correct?

13  A      Yes.

14  Q      Okay.  And you testified on cross that you had a

15  second meeting or communication with the committee or its

16  professionals that day?

17  A      Yes.

18  Q      Okay.  Who was that with?

19  A      That was with Howard Seife, Ed Friedman, myself, Mark

20  Brodsky and I -- I think it was either Jim Sottile or Graham

21  Busch.  I don't remember which of the two were there.

22  Q      Okay.  Was that in person or a telephone call?

23  A      It was in person at our office.

24  Q      Okay.  And what was the nature of that meeting?

25  A      That was to resolve the pending motion to disqualify

1    Chadbourne.

2    Q    Okay.  And did Mr. Seife make any statements to you in

3    connection with the agreement for you to withdraw that

4    disqualification motion?

5    A    Yes.  When we were -- and I referred to this earlier.

6    When we were talking about resolving the issues, you know,

7    Howard said -- I'm sorry -- Mr. Seife said, you know, glad

8    to put this behind us.  You know, we'll commit personally to

9    work collaboratively with you going forward in this matter.

10   Q    Okay.

11            MR. ZENSKY:  Could we have the demonstrative

12   pulled back up, please, with the X's?

13        (Pause)

14            MR. ZENSKY:  Your Honor, can -- can I hand the

15   witness one?  It would be quicker if we do it that way.

16            THE COURT:  Where's Vanna White when we need her?

17   Sure.

18        (Laughter)

19            MR. ZENSKY:  Okay.

20   BY MR. ZENSKY:

21   Q    So you just testified about a communication -- or

22   strike that -- a meeting with Mr. Seife and others on the

23   evening of September 7th?

24   A    Yes.

25   Q    Okay.  What does Mr. Kaminetzky's demonstrative

1    indicate -- indicates happened on the very next day?

2    A    The third mediation session at which the second stage

3    of the settlement was negotiated.

4    Q    Okay.  Did you have the slightest idea that there was

5    a mediation session scheduled for twelve hours following

6    your meeting with Mr. Seife?

7    A    No.

8    Q    Did he tell you anything to lead you to believe that

9    the committee was in the process of finalizing a deal?

10   A    No.

11             MR. ZENSKY:  I think that's all I have, Your

12   Honor.

13             THE COURT:  Any recross?

14             MR. KAMINETZKY:  Nothing for me, Your Honor.

15             THE COURT:  Thank --

16             UNIDENTIFIED ATTORNEY:  No, Your Honor.

17             THE COURT:  All right.  Thank you, sir.  You may

18   step down.

19             THE WITNESS:  Thank you.

20             THE COURT:  Who's next?

21             MR. ZENSKY:  The noteholder plan proponents are

22   calling to the stand Professor Edward B. Rock.

23             MR. ZENSKY:  And as you can tell, Ms. Newman will

24   present the direct testimony, Your Honor.

25             THE COURT:  All right.  Thank you.

1          THE CLERK:  Please remain standing.  Raise your

2    right hand and place your left hand on the Bible.

3    PROFESSOR EDWARD B. ROCK SWORN

4          THE CLERK:  Please be seated and adjust the

5    microphone.

6          Please state your full name for the record and

7    spell your last.

8          THE WITNESS:  Edward B. Rock, R-O-C-K.

9          THE CLERK:  Okay.  Thank you, sir.

10          MS. NEWMAN:  Your Honor, I have binders of

11    exhibits and demonstrative slides.  May I approach?

12          THE COURT:  Yes, you may.

13          MS. NEWMAN:  Okay.  And for the record, we are

14    getting an NPP exhibit number for the demonstratives.  I

15    don't yet have it, but I will note it for the record when I

16    receive it.

17          THE COURT:  All right.

18          THE WITNESS:  Thank you.

19          THE COURT:  Thank you.

20       (Pause)

21                    DIRECT EXAMINATION

22    BY MS. NEWMAN:

23    Q    Good afternoon, Professor Rock.  For the record,

24    again, I'm Deborah Newman from Akin, Gump, Strauss, Hauer

25    and Feld on behalf of Aurelius Capital Management and the

1  noteholder plan proponents.

2       Professor Rock, can you please tell the Court what

3  your educational background is?

4  A    I'm a 1977 graduate of Yale, a 1980 graduate of Oxford

5  and a 1983 graduate at the University of Pennsylvania law

6  school.

7            COURT REPORTER:  I'm sorry.  A 1983 graduate --

8            THE WITNESS:  A 1983 graduate of the University

9  of Pennsylvania Law School.

10           COURT REPORTER:  Thank you.

11 BY MS. NEWMAN:

12 Q    And, Professor Rock, where are you currently employed?

13 A    At the University of Pennsylvania Law School.

14 Q    And what positions do you hold at the University of

15 Pennsylvania Law School?

16 A    I am the Saul Fox Distinguished Professor of Business

17 Law at the law school and I have a secondary appointment at

18 the Wharton School.

19 Q    And how long have you held these positions?

20 A    I've been on the faculty at the law school since

21 January of 1989.  I received tenure and was promoted to

22 professor of law in, I believe, 1993, and somewhere around

23 2000 or 2001 I was given the Saul Fox Distinguished

24 Professorship in law and, also, I think at that point became

25 -- had a secondary appointment over in the business and

1  public policy department at Wharton.

2  Q     And what is the focus of your scholarship, Professor

3  Rock?

4  A     I write about corporations, corporate law, corporate

5  governance, mergers and acquisitions and related topics.

6  Q     Have you written books on corporate governance?

7  A     I am co-author of a book called, *The Anatomy of*

8  *Corporate Law*, which is text on comparative corporate law

9  and have written numerous articles on corporate law,

10 corporate governance, mergers and acquisitions and related

11 topics.

12 Q     What subjects do you teach at the University of

13 Pennsylvania?

14 A     I teach the basics corporations course.  I teach

15 mergers and acquisitions.  From time to time I teach anti-

16 trust. I've taught contracts.  I now teach regulation of

17 financial institutions.  I teach advanced seminars on

18 corporate law and corporate governance.

19 Q     Do you participate in other professional activities

20 that focus on corporate governance?

21 A     I give lots of talks.  I participate in conferences in

22 which I give papers.  From 1998 or so until 2010 I was co-

23 director at the Institute for Law and Economics which is,

24 essentially, a corporate governance think tank and in that

25 capacity I organized and ran numerous conferences on

1  corporate governance.

2  Q      Where did you work prior to beginning your academic

3  career?

4  A      From 1983 until the end of 1988 I was at a firm

5  called, Fine, Kaplan and Black in Philadelphia which

6  specializes -- or at least in those years specialized in

7  anti-trust, corporate and securities law.

8  Q      What areas of law did you focus on while you were at

9  Fine, Kaplan and Black?

10  A      On those areas, anti-trust, corporate and securities

11  law.

12  Q      Okay.  Have you testified previously as an expert

13  witness?

14  A      I have.  The longest term engagement I've had as an

15  expert has been with the anti-trust division of the

16  Department of Justice.  I've done a series of cases with

17  them in which the anti-trust issue, the -- typically, a

18  Section 7 Clayton Act issue was according to the defendants

19  in the cases, resolved by the adoption of one form or other

20  of corporate governance arrangement usually in the form of

21  -- of an agreement between the parties with my role being to

22  understand the corporate governance arrangement, to

23  understand the agreement and to then interpret it and figure

24  out whether, in fact, the arrangement between the parties

25  insulated one party from influence or control from the

1    other.

2        The first case I worked with them on was a case called

3    the United States versus Continental Airlines and Northwest

4    Airlines.  At that point Northwest owned stock in

5    Continental which gave it fourteen percent of the cash flow,

6    but in excess of fifty percent of the -- of the votes.

7    Because Continental and Northwest both served some of the

8    same city pairs, the anti-trust division was concerned that

9    this would limit competition.  The defense was that they had

10   a governance agreement between them that insulated from

11   Continental from any influence or control by Northwest.  My

12   task was to interpret the -- to understand the governance

13   agreement against the background of corporate law and

14   corporate governance, and to develop an opinion as to

15   whether, in fact, the governance agreement insulated

16   Continental from influence or control by Northwest.

17       Since then I've worked on numerous cases with the

18   anti-trust division on the same sorts of issues.  In

19   addition, I've done a variety of other consulting

20   engagements on corporate governance and corporate law.

21           MS. NEWMAN:  Your Honor, at this point --

22           THE COURT:  I'm sorry.  Professor Rock, may I ask

23   you to pull the microphone closer to you or for you to sit

24   closer to --

25           THE WITNESS:  Sure.  I'm --

1          THE COURT:  -- it, please?

2          THE WITNESS:  I'm sorry.

3          THE COURT:  Yes.  Ms. Newman.

4          MS. NEWMAN:  I would like to tender Professor

5    Rock as an expert witness to testify on the corporate

6    governance aspects of the noteholder plan.

7          THE COURT:  Is there any objection?

8          MR. MILES:  David Miles, Your Honor, from Sidley

9    Austin for the debtors.  We have no objection.

10          THE COURT:  All right.  You may proceed

11   accordingly.

12          MS. NEWMAN:  Thank you.

13   BY MS. NEWMAN:

14   Q    Now, Professor Rock, can you turn to Page 3 in your

15   slides, please?  What have you been retained to do in this

16   case?

17   A    I was asked to develop an opinion on whether the

18   noteholder plan would interfere with the proper corporate

19   governance of reorganized Tribune.  In particular, I was

20   asked to examine Professor Black's rebuttal report in which

21   he makes various assertions about the effect of the -- on

22   the corporate governance of reorganized Tribune of the

23   noteholder plan and to develop an opinion as to whether I

24   thought those effects were -- were likely or plausible.

25   Q    And have you reached a conclusion regarding these

1   issues?

2   A    Yes, I have.

3   Q    What is that conclusion?

4   A    My conclusion is that the noteholder plan would not

5   pose any threat to the proper corporate governance of

6   reorganized Tribune.

7   Q    What materials did you review to reach that

8   conclusion?

9   A    I reviewed a variety of documents which are listed in,

10  I believe, Exhibit B to my report regarding the noteholder

11  plan, the new certificate of incorporation, the terms of the

12  distribution trust, the terms of the warrant, and a variety

13  of other documents as well as my general knowledge of

14  corporate law, corporate governance and scholarship on those

15  areas.

16  Q    Have you prepared -- have you prepared a written

17  report detailing those conclusions?

18  A    Yes, I have.

19  Q    And is that the report found in Tab 1 of your binder?

20  A    Yes, it is.

21       MS. NEWMAN:  Your Honor, at this point I would

22  like to enter into evidence NPP 2475, which is the report of

23  Professor Edward B. Rock dated March 10th, 2011, and it's

24  found at Tab 1 in your binder.

25       THE COURT:  Is there any objection?

1          MR. MILES:  No objection, Your Honor.

2          THE COURT:  NPP 2475 is admitted without

3   objection.

4          (Exhibit NPP 2475 admitted in evidence.)

5          MS. NEWMAN:  Can we turn to Slide 4, please?

6   BY MS. NEWMAN:

7   Q     Professor Rock, in reviewing materials in connection

8   with this retention, were you able to come to an

9   understanding of the structure of the distribution trust

10  contemplated by the noteholder plan?

11  A     Yes, I have.

12  Q     And can you describe briefly for the Court your

13  understanding of that structure of the distribution trust,

14  please?

15  A     Yes.  My -- my understanding is the distribution trust

16  is primarily designed to be something of a -- of a

17  placeholder, to hold in particular the new warrants which

18  will be exercised up to somewhere around sixty or sixty-five

19  percent of the equity of reorganized Tribune pending the

20  outcome of the LBO litigation with the notion that once that

21  litigation is resolved and the Court has determined the

22  proper allocation of the assets of the distribution trust to

23  the beneficiaries, that the distribution trust would then

24  pay out those amounts as per the order of the Court.

25          In setting up that structure, the distribution trust

1    holds the new warrants.  It also holds a distribution trust

2    reserve, which is a combination of cash and senior -- new

3    senior secured term loans.  It will hold a new -- a single

4    share of new Class C common stock which gives the

5    distribution trust the right to elect two of the seven

6    directors of reorganized Tribune.  And as the LBO litigation

7    proceeds, any proceeds from that litigation from the

8    litigation trust will flow into the distribution trust

9    pending orders by the Court to distribute it to

10   beneficiaries.

11   Q    Can you turn to Slide 5, please, and explain what the

12   responsibilities of the distribution trust are?

13   A    As -- as I understand the structure, the primary

14   responsibilities of the distribution trust is -- of the

15   trustee really is to -- to act in almost an administerial

16   manner.  So in terms of the initial distributions pursuant

17   to the noteholder plan and the Court's confirmation order,

18   it will have the duty to distribute those amounts.

19        When there are distributions ordered from -- to the

20   holders from the distribution trust reserve, it will have

21   the responsibility of distributing those amounts.

22        It is to hold any assets that flow into it from the

23   litigation trust; and then in addition it has been given in

24   the plan the responsibility of -- of administering, at least

25   in the first instance, the resolution compromise and

1  settling of disputed general unsecured claims and

2  administering the disputed claims reserve.

3  Q    Professor Rock, can you turn to Slide 6, please?  Do

4  you have an understanding of the governing structure of the

5  distribution trust?

6  A    Yes, I do.

7  Q    Can you explain that, please?

8  A    Yeah.  The distribution trust will have a distribution

9  trust advisory board which is a three-person board whose

10 responsibility is to oversee and direct the actions of the

11 distribution trustee.  The distribution trust advisory

12 board, two of the three members, according to the plan, will

13 be appointed by Aurelius subject to approval of the Court

14 and, in particular, with requirement that each member be

15 independent of Aurelius, with the third member appointed by

16 the PHONES note -- notes indenture trustee.

17 Q    And can you turn to Slide 7, please, and explain for

18 the Court how the distribution trustee is selected?

19 A    The trustee who will act at the direction, as I

20 mentioned, of the distribution trust advisory board will

21 likewise be appointed to -- appointed by Aurelius subject to

22 bankruptcy court approval and likewise required to be

23 independent from Aurelius and not a member of the

24 distribution trust advisory board.

25      All of these actors, the members of the distribution

1  trust advisory board as well as the distribution trustee

2  will owe fiduciary duties to the trust and its

3  beneficiaries.

4  Q    And can you turn to Slide 8, please, and I would like

5  to focus on the new warrants held by the distribution trust.

6  Under what circumstances can the new warrants held by the

7  distribution trust be converted into equity?

8  A    So long as the warrants are held by the distribution

9  trust, as I understand the plan the idea is that nothing

10  will happen up until the point that a distribution plan is

11  ordered by the Court, at which point beneficiaries will have

12  the option of receiving either a warrant or common stock in

13  reorganized Tribune.  At that point, based on both the

14  orders of the Court as well as the desires of the

15  beneficiaries, the distribution trustee will then, in the

16  case of -- of those beneficiaries who wish to receive stock

17  will convert the warrant into stock pending the distribution

18  of that stock to the distribution -- to the beneficiaries of

19  the trust.

20      But as I read the distribution trust, the distribution

21  trustee does not have, in any sense, the power to convert

22  the warrant willy nilly and to become the control

23  shareholder of reorganized Tribune.  The warrant itself has

24  no votes.  The warrant itself is simply a right to convert

25  into common stock and so long as it sits in the distribution

1  trust pending the outcome of the LBO litigation and the

2  orders of the Court, it simply sits there.

3  Q     All right.  Can you turn to Slide 9, please?  You

4  mentioned that the distribution trust will also hold the new

5  Class C common stock.  What rights are afforded to the

6  distribution trust as the holder of that new Class C common

7  stock?

8  A     The Class C common stock of which there will be just

9  one share really has just one substantive right which is the

10  right to elect two members of the new -- of the reorganized

11  Tribune board, members who, by requirement, must be

12  independent.

13      It has, in addition that primary substantive right, it

14  has protective rights to protect the primary substantive

15  right.

16  Q     Are there restrictions on the directors that can be

17  appointed or elected by the new Class C common stock?

18  A     Yes.  They have to be independent.

19      (Pause)

20  Q     You mentioned that you have reviewed -- or have you

21  reviewed the rebuttal report that was presented -- that has

22  been prepared by Professor Bernard Black in this case?

23  A     Yes, I have reviewed it.

24  Q     And is that the report found at Tab 2 in your binder?

25  A     Yes.

1          MS. NEWMAN:  Can we turn to Slide 11, please?

2    BY MS. NEWMAN:

3    Q     And I would like you to focus, Professor Rock, please,

4    on Page 73 of Professor Black's rebuttal report.

5    A     Yes.

6    Q     And there's a section titled, "Costs under the

7    noteholder plan," and the last sentence of that paragraph --

8    first paragraph under that section says, "There would surely

9    be a range" --

10   A     I'm sorry.  What page are you on?

11   Q     Oh, I'm sorry.  I'm on Page 73.

12   A     Yes.

13   Q     Are you there?  Okay.  And I'm focusing on the section

14   titled, "Costs under the noteholder plan."

15   A     Yes.

16   Q     And the last sentence of that first paragraph there

17   says, "There would surely be a range of significant

18   transactions which would require this approval and the

19   approval seems to be" -- let's see.  Let's go back a little

20   bit further.  It says:

21   "Consider their ability" -- and "their" is referring to

22   reorganized Tribune -- "to buy assets, sell assets or

23   participate in joint ventures.  Depending on the rights

24   granted to the distribution trust, there would likely be a

25   range of smaller actions which Tribune and its subs could

1   take without obtaining distribution trust approval.  But

2   there would surely be a range of significant transactions

3   which would require this approval.  The need for approval

4   would put Tribune and its subs at a disadvantage versus

5   their competitors."

6        Do you agree with those statements, Professor Rock?

7   A    No.  I do not.

8   Q    And can you explain why?

9   A    Yeah.  Let me -- let me -- in order to explain both

10  Professor Black's comment, his statement here as well as my

11  view, let me take you back first to Slide Number 10, and

12  talk a little bit about the protective rights that the Class

13  C common stock has to protect its primary right of being

14  able to elect two directors.

15       And according to the certificate of incorporation,

16  Class C common stock has a right to approve, essentially,

17  actions that threaten to undermine or impair this right to

18  elect two directors.  And those -- those rights could be

19  threatened in a variety of ways and the charter addresses

20  different ways in which they could be threatened.

21       So, for example, the charter provides for Class C

22  approval for any action that alters or changes the rights,

23  preferences or privileges of the Class C common stock.  It

24  likewise provides that any action which -- that would

25  adversely affect the rights, preferences or privileges of

1  the Class C common stock, including without limitation, the

2  amendment of the amended and restated certificate of

3  incorporation and the corporation's bylaws would likewise

4  require Class C approval.

5      Third, any action that would increase, for instance,

6  the authorized number of Class C shares requires approval

7  because you could clearly dilute the ability to elect two of

8  the seven board members by increasing the number of Class C

9  shares from the one currently outstanding under the plan to

10 a hundred, giving the other ninety-nine to somebody else,

11 and so Class C would have to approve any increases of Class

12 C common stock.  Likewise you could eliminate Class C rights

13 by eliminating Class C stock altogether.  And so the charter

14 provides for Class C approval of any decreases in the number

15 of shares.

16     And, finally, the charter provides that Class C have

17 approval for any increases or decreases to the authorized

18 size of the board of directors of the corporation on the

19 notion that having two of seven directors is quite different

20 than having two of seventy-seven directors.  My

21 understanding is that the parties have agreed to modify the

22 charter to allow the board to grow from seven to nine

23 directors without the approval of Class C.  But as I

24 understand the current agreement, anything over nine

25 directors would require Class C approval.

1    So the charter gives Class C a set of rights to

2  protect, as I say, the primary right to elect to two

3  directors.

4    Professor Black in his report focuses on this and says

5  that while certain transactions, a range of smaller actions

6  which Tribune and its subs could take without obtaining

7  distribution trust approval, nonetheless he suggests there

8  would surely be a range of significant transactions which

9  would require Class C approval.  The need for approval would

10  put Tribune and its subs at a disadvantage versus their

11  competitors.

12    You asked me whether I agree with that.  I don't for a

13  couple of reasons.

14    First, the example he gives in his report which is of

15  a sizable stock for stock transaction is not one that would

16  trigger Class C approval.  The example he gives in his

17  report, I take it, is a -- something like a stock for stock

18  merger that would require an amendment to the certificate of

19  incorporation to increase, for instance, the number of

20  authorized shares of Class A common stock, perfectly common

21  in a stock for stock merger.  And to increase the number of

22  shares you, of course, need a recommendation of the board of

23  directors as well as approval by the shareholders.

24    That, it seems to me, certainly would not trigger

25  Class C rights of approval because that does not adversely

1   affect the rights, preferences or privileges of Class C.   It

2   doesn't affect the ability to appoint -- to elect two

3   directors to the board, so the second item that gives Class

4   C approval wouldn't be triggered and I think Professor Black

5   simply took out of context the language in the charter that

6   said, including without limitation the amendment of the

7   certificate of incorporation.

8        It's true the charter says that, but it's in the

9   context of actions that would affect the rights, preferences

10  or privileges of Class C.   Those rights, preferences or

11  privileges are simply the right to elect two directors, and

12  there's nothing about an amendment to the charter increasing

13  the number of authorized shares that stands in the way of

14  electing or impairs the right to elect two directors.

15           That said, you can come up with other hypos that

16  might well trigger Class C approval rights.   And last night

17  in my deposition Mr. Miles came up with an alternative hypo

18  that would trigger it, but even that hypo, it seems to me,

19  does not threaten the business flexibility of -- of

20  reorganized Tribune.

21  Q      Can you explain that hypothetical for --

22  A      Yeah.

23  Q      -- us, please?

24  A      Last night at my deposition Mr. Miles, I take it in

25  response to my critique of Professor Black's example, came

1  up with an alternative hypo, which I thought was quite an

2  interesting hypo.

3      Mr. Miles' hypo was suppose that reorganized Tribune

4  decides that it wants to merge with some hotshot internet

5  company in order to expand its -- its footprint beyond print

6  media into the new age of whatever, and suppose further that

7  the internet company insists that the three founders go on

8  the board of reorganized Tribune.  Wouldn't that, Mr. Miles

9  asked, wouldn't that trigger Class C -- Class C approval

10 rights and wouldn't Class C approval rights stand in the way

11 of -- of Tribune going ahead with its plans.

12     Interesting hypo, which comes much closer, of course,

13 to triggering Class C approval rights than a stock for stock

14 merger of the sort that Professor Black described.  And it

15 seems to me while that could potentially trigger Class C

16 approval rights, it wouldn't necessarily, and even if it

17 did, I don't see how it would cause any problems and let me

18 sort of elaborate on that.

19     The first question is would it trigger it.  It would

20 only trigger it -- as I said before, there's been an

21 amendment -- an agreement to change the charter to allow the

22 board to go from seven to nine without approval of Class C

23 shareholders.  So on this assumption that there are seven

24 directors currently sitting and there are these three

25 internet founders who want to join the board, in the first

1    instance -- in the first instance I take it reorganized

2    Tribune would go and talk to the distribution trustee and

3    explain why this was a good thing for reorganized Tribune

4    and why it's going to make reorganized Tribune a more

5    valuable company.  The distribution trust advisory board and

6    the trustee oversee a trust whose primary asset is a warrant

7    that's convertible into sixty or sixty-five percent of

8    reorganized Tribune.

9        And so they have a strong incentive to approve any

10   value increasing transactions because it increases the value

11   of the warrant.  So in the first instance I take it

12   reorganized Tribune would go talk to the board, the CEO

13   would go talk to the distribution trust advisory board and

14   would say, this is why we think it's a good idea.  This is

15   why we think you should do it.

16       The distribution trust advisory board may be convinced

17   by that, in which case they consent and there's no problem.

18   The deal goes forward.

19       They might think that this actually is a value

20   decreasing transaction and in that instance they would say,

21   look.  We don't think this is a good deal, in the same way

22   that any large equity interest typically will have a -- an

23   ability to have its say one way or the other on a merger

24   transaction.  So to hear the distribution trust as the

25   holder of the warrants can have a view and because on the

1  assumption of the hypo the board would have to be increased

2  from seven to ten, under Class -- under the charter Class C

3  would have approval rights.

4      At that point the board faces a choice of reorganized

5  Tribune.  If it believes this is a transaction that is

6  essential to go forward and that the distribution trust

7  advisory board is wrong in its opposition, they can easily

8  have the transaction go forward without any distribution

9  trust advisory board approval simply by having one of the

10  current non-Class C directors who are sitting on the

11  reorganized Tribune board step down; that then means there

12  would be six, room for three, and the three directors -- the

13  three internet founders can join the board.

14      The -- so in the -- in the real world you could get

15  over this problem on the -- on the hypo.  It's true that

16  maybe none of them are willing to step down, maybe the

17  distribution trust advisory board and the board of directors

18  of reorganized Tribune have simply a difference of agreement

19  -- a difference of view as to whether this is a good

20  transaction or whether this is more like Time merging with

21  AOL; that is to say, a disastrous transactions.

22          And, you know, there are lots of disagreements in

23  the world.  It's not obvious and in corporate governance we

24  think that equity holders and significant transactions

25  should have an influence on the outcome.  It shouldn't

1    always be up to the board.  So to be sure there may be times

2    when the board of reorganized Tribune, because of these

3    rights under series C can't do precisely what it wants, in

4    which case -- in that case they would have to say to the

5    internet company, either we can do the deal with only two of

6    your three founders going on the board or we can't do the

7    deal.

8         So, yes.  That could happen.

9    Q    And I take it from your response -- or, actually, do

10   you -- are -- does that cause you concern in the same way

11   that it causes Professor Black concern?

12   A    No.  I think actually that's an example of -- of

13   absolutely first rate corporate governance.

14   Q    Okay.  All right.

15        MS. NEWMAN:  Can we turn to Slide 12, please?

16   BY MS. NEWMAN:

17   Q    Professor Rock, I would like you to turn to Page 74 of

18   Professor Black's rebuttal report.

19   A    Yes.

20   Q    In the second paragraph on that page Professor Black

21   talks about a cooperation requirement in the proposed

22   Tribune charter that requires the Tribune board to cooperate

23   with the distribution trust in the administration of the

24   distribution trust.  Can you explain what Professor -- or

25   what your understanding of Professor Black's opinion is in

1    this regard?

2    A      Yes, I can.   To understand we first have to go to the

3    proposed certificate of incorporation, which is Tab 6.   And

4    go to Paragraph -- to Section 6, paragraph 6(e) of the

5    certificate of incorporation.

6    Q      Okay.   And for the record that's NPP 2222.

7    A      And on Page 12 of the certificate of incorporation it

8    provides that until the later of the distribution trust

9    termination date or such time as the creditors' trust is

10   terminated and dissolved, the corporation and its officers,

11   directors and employees shall, and the corporation shall

12   cause its officers, directors and employees to cooperate

13   with the litigation trust.   That's little Roman Numeral I.

14         Little Roman Numeral II, cooperate with the

15   distribution trust and the distribution trustee in all

16   respects with the administration of the trust, including,

17   but not limited to the making of distributions to the

18   beneficiaries there under, the issuance and distribution of

19   common stock and new warrants, and the resolution of

20   disputed claims as defined in the plan.

21         Now Professor Black focuses on that duty to cooperate

22   with the administration of the distribution trust and

23   suggests that this duty to cooperate could negatively affect

24   reorganized Tribune and likely conflicts with Delaware law

25   to the extent it obligates Tribune's directors to act with

1   respect to the litigation trust other than according to

2   their best judgment of what serves Tribune's interests.

3   Q      Okay.  And do you agree with those assertions by

4   Professor Black?

5   A      I don't because I think that is to -- I think that's

6   first to confuse the fiduciary duties of the board with

7   duties that are undertaken to cooperate.  And, secondly, I

8   think it's to -- to read in far more into this cooperation

9   duty than the charter language can support.

10       Let me focus first on the second and then go back to

11  the first.

12  Q      Okay.

13  A      What it says is cooperate with respect to the

14  administration, the trust, and it gives three examples of

15  what's meant by that.  It says -- let me just go back to the

16  language so I can quote it precisely.

17              "Cooperation is illustrated by the making of

18              distributions to the beneficiaries there under,

19              the issuance and distribution of common stock and

20              new warrants, and the resolution of disputed

21              claims."

22       So first of all it's extremely unlikely that the

23  directors of reorganized Tribune are going to have any role

24  whatsoever in cooperating with the administration of the

25  trust.

1       There's also a duty to cause the employees to -- to

2  cooperate.  But, again, it's hard to see how the directors

3  themselves are going to have any -- play any role of

4  directors in doing that.

5       Moreover, the firm has all sorts of obligations to

6  counterparties and contracts and all sorts of -- to state

7  and local governments to obey the law.  And the

8  understanding in Delaware is you -- you exercise your

9  fiduciary duties, you fulfill your fiduciary duties subject

10  to the side constraints that you have to -- with respect to

11  contracts and so forth.

12       So I don't see how this duty to -- in the charter to

13  cooperate in the administration of the trust can in any way

14  interfere with the directors acting with respect --

15  according to their best judgment of what serves Tribune's

16  interest.  This is primarily a -- a -- an administrative

17  sort of obligation.

18  Q    All right.  Professor Black also states one -- and I'm

19  reading now from the bottom -- or the last sentence on Page

20  74 of Professor Black's rebuttal report.  And Professor

21  Black states:

22  "One might also wonder whether directors would agree to

23  serve on Tribune's board facing the threat of litigation

24  against them by the distribution trust without the

25  protections of a customary Section 102(b)(7) charter

1    provision.  Many candidates would want that protection."

2        Do you understand what Professor Black's point is in

3    this sense?

4    A    Yeah.  I think I do.  Let me -- let me take you back

5    to the charter.

6    Q    This is Tab 6 in your binder?

7    A    Tab 6.  And start with Paragraph 7 of the charter.

8    Paragraph 7 of the charter is the -- sort of the standard

9    102(b)(7) exculpatory language that one finds in corporate

10   charters.  It provides to the fullest extent permitted by

11   Delaware law, "director of the corporations shall not be

12   personally liable to the corporation or its stockholders for

13   monetary damages for breach of fiduciary duty as a

14   director."

15       And what 102(b)(7) provides is that the certificate

16   can immunize or exculpate directors from monetary liability

17   for non-intentional breaches of the duty of care.  It cannot

18   for breaches of the duty of loyalty and for some other

19   things.  But for non-intentional breaches of the duty of

20   care, you can be exculpated for monetary liability.

21       To understand Professor Black's point in addition to

22   Section 7 of the charter, one also has to look at Section 9

23   or Paragraph 9 of the charter which is over on Page 16 of

24   the charter.  And Paragraph 9 is a carve-out, is a

25   limitation of the 102(b)(7) provision of Paragraph 7.

1        And Paragraph 9 provides:

2   "Notwithstanding anything to the contrary in Article V,

3   Section E, Article VII, Article VIII elsewhere in this

4   amended and restated distributive incorporation, any similar

5   provision contained in the corporation's bylaws or

6   otherwise, one, the provisions of 5 and 7, and any similar

7   provisions in the corporation bylaws shall not apply to any

8   director of the corporation in respect of, and, two, no

9   officer, director, employer or agent of the corporation

10  shall be entitled for indemnification or insurance."

11       So contrary to what I said last night at my deposition

12  because I hadn't focused on this language.  The -- what is

13  coming would also not be covered by the corporation's

14  director and officers' liability insurance or any similar

15  provision with respect to either any proceeding arising out

16  of or related to any act or omission of such officer or

17  director which act or omission occurred prior to the

18  effective date of this certificate of incorporation, and now

19  we get to the critical language, "or, two, any breach by

20  such officer or director of the corporation -- of the

21  cooperation obligations."

22       So in other words, Professor Black's argument here is

23  that breaches of the charter duty of cooperation with the

24  distribution trust were -- would not be exculpated under

25  102(b)(7), even though there's a 102(b)(7) provision because

1  of the exclusion in Section 9; would not be covered by

2  insurance because of the exclusion in Section 9; and that

3  this unexculpated and uninsured liability would dissuade

4  reasonable people from serving as directors.

5  Q    And do --

6  A    That I take it is Professor Black's argument --

7  Q    Okay.  And do you --

8  A    -- spelled out in a bit more detail than in his -- in

9  his report.

10 Q    Okay.  And do you agree with that opinion, that the

11 carve out in Section 9 of the charter and the duty to

12 cooperate provided for in that charter would dissuade people

13 from serving as directors of reorganized Tribune?

14 A    I don't see how it would dissuade reasonable people.

15 There are always people out there -- I know people who check

16 what airplane is flying on a route before they will take a

17 flight because there are certain airplanes that they won't

18 fly on.  So there are some people who have excessive degrees

19 of risk diverseness.  But ordinary, reasonable people I

20 think would not be dissuaded by this for really two reasons.

21 First, the duty of cooperation is a minor duty.  It's to

22 cooperate with the administration of the trust as

23 illustrated by the three examples given in the charter that

24 we went through.  Secondly, the chance that a failure to

25 cooperate would eventuate in monetary liability strikes me

1    as de minimis for two reasons.  First, the kind of functions

2    that we're talking about here don't lead to monetary

3    liability.  They don't lead to damages.  They lead to

4    somebody complaining and seeking an injunction saying this

5    guy is not cooperating, please force cooperation and that

6    can come up in two ways.  One, if the board refuses to

7    cooperate in the administration in some way, the trustee can

8    turn to the Court and say Judge, please order cooperation,

9    please provide an injunction.  If the board has any

10   questions about whether they are complying with their duty

11   of cooperation or not, they can turn to the Court and ask

12   the Court to interpret the cooperation obligation.  It's

13   quite clear from the Noteholder Plan that this is the sort

14   of thing that the Court would retain jurisdiction over.

15   Indeed, if you -- I don't know if we want to turn to the

16   Noteholder Plan, but the Noteholder Plan is -- it's like Tab

17   4.

18   Q    Okay.  And for the record that's NPP2222 as well.

19   It's an exhibit, because we were just looking at an exhibit

20   to the Plan.

21   A    So if you look over on Tab 4 in the Noteholder Plan

22   over at Article 12, 12.1 provides for retention of

23   jurisdiction, provides that the Court retains jurisdiction,

24   and in particular under 12.1.13, to resolve any matters

25   relating to the distribution trust.  The -- 12.1.5

1  entertains such orders may be necessary or appropriate to

2  implement or consummate the provisions in the Noteholder

3  Plan.  12.1.6 resolve any cases, controversies, suits, or

4  disputes that may arise in connection with the consummation

5  interpretation or enforcement of the Noteholder Plan or any

6  contract, instrument release, or other agreement or document

7  that is executed or created pursuant to the Noteholder Plan.

8  So if there was any genuine dispute as to the scope of the

9  cooperation obligation imposed by the charter, it could

10 easily be resolved well before it eventuated into any

11 monetary damage to anybody.  And it would seem to me that a

12 reasonable person considering serving as a director of

13 reorganized Tribune would see that and realize that this

14 didn't pose any concern whatsoever.

15 Q     Professor Black also makes some arguments about issues

16 that may arise from the trust's ability to sell a

17 controlling interest in reorganized Tribune and can we turn

18 to page -- Slide 13 and Page 74 of Professor Black's

19 rebuttal report, please?  The first of these arguments

20 appears in the last sentence of the first paragraph on Page

21 74 where Professor Black states would a potential joint

22 venturer want to partner with Tribune when the distribution

23 trust could sell a controlling block of Tribune shares at

24 any time?  A partner might hesitate or extract tougher terms

25 for the venture.  Do you agree with those statements,

1    Professor Rock?

2    A      Again, it strikes me as really a stretch.

3    Q      And can you explain why, please?

4    A      Yeah.  First of all, in the -- as we all know in the

5    media world there are lots of controlling shareholders who

6    enter into joint ventures all the time.  Secondly, the

7    ability of the trust to sell the warrant to a potential

8    controlling shareholder is cabined in by a set of approval

9    requirements.  First of all, the Court would have to approve

10   the sale of the warrant.  Secondly, no buyer is going to buy

11   the warrant with the expectation of converting it into a

12   control position until the buyer received regulatory

13   approvals from the FCC and probably from the Antitrust

14   Division as well.  And it is true, some -- there may be some

15   potential buyers out there such a Warren Buffet who would

16   sail through the approval by the Bankruptcy Court, would

17   sail through approval by the FCC, since I don't think

18   Berkshire Hathaway has any media properties.  But the

19   prospect of having a controlling shareholder like Warren

20   Buffet as the controlling shareholder seems to me far more

21   likely to make reorganized Tribune an attractive joint

22   venture partner than to stand in the way of anybody doing a

23   joint venture with them.  That said, you know I'm not an

24   expert on joint ventures and who goes into them, but the

25   simple ability of the trust in circumstances that -- where

1  the various approvals are provided to sell the warrant to

2  some third party if some third party wants to buy it,

3  doesn't strike me as -- it strikes me as a real stretch to

4  think that that's going to interfere with any ongoing

5  business opportunities of reorganized Tribune.

6  Q     Professor Black also raises some concerns about the

7  potential sale of control by the distribution trust and the

8  effect that that sale might have on minority shares.  And

9  I'm looking now at Page 75 in Professor Black's rebuttal

10 report and I'm looking at the last sentence in the first

11 full paragraph.  Professor Black states uncertainty about

12 how the distribution trust would act in a sale of control

13 could adversely affect the value of Tribune's remaining

14 minority shares.  And there's a footnote there that says one

15 can imagine the trustee taking the view that it not only may

16 but must, given its fiduciary duty to the trust, seek to

17 obtain a control premium solely for the distribution trust

18 at the expense of minority shareholders.  Do you agree with

19 those statements, Professor Rock?

20 A     I have no opinion on the valuation question.  I'm not

21 a valuation expert.  I'm a corporate governance expert.  On

22 the question of whether this ability subject to approval of

23 the Court, approval of regulatory agencies to sell the

24 warrant to some third party, whether that's something that

25 the minority shareholders -- well, the other shareholders

1   since they're not actually currently the minority -- they

2   wouldn't be currently the minority shareholders.  Whether

3   that's something the other shareholders should be concerned

4   about -- it's hard for me to see why they would be concerned

5   about it.  If the new entering controlling shareholder is a

6   controlling shareholder of the quality of Warren Buffet,

7   then actually they're likely to find their value increased

8   because now you have a long-term controlling shareholder who

9   can keep an eye on management and make sure that the company

10  is well-run.  Controlling shareholders can provide value in

11  addition to in some circumstances causing harm.  The

12  possibility of a bad controlling shareholder, a Conrad Black

13  rather than a Warren Buffet entering, is extremely unlikely

14  here because it would first require approval of the

15  Bankruptcy Court where the other shareholders could be

16  heard, as well as approval by the FCC where other interests

17  could be heard.  So I don't see why in this circumstance

18  this bare possibility that the warrant could be sold to some

19  third party should reasonably trouble any of the other

20  shareholders.

21  Q    Can we turn to Slide 14, please?  Professor Black also

22  raises some concerns that the distribution trustee might act

23  in the interest of the Senior Notes and the PHONES to the

24  exclusion of reorganized Tribune and I'm looking

25  specifically on Page 75 of Professor Black's rebuttal

1  report, the last sentence of the first paragraph under the

2  section titled Value of Good Governance.  Professor Black

3  writes the trustee might well see his task as maximizing the

4  recovery to the Notes and perhaps the PHONES, but the Notes

5  and PHONES may not care much about Tribune's success.  Their

6  maximum recovery is a fraction of the value of the

7  distribution trust and he concludes that paragraph on Page

8  76 by stating indeed the Notes and PHONES could benefit from

9  blocking transactions that would benefit Tribune because

10  doing so could increase the Litigation trust's leverage to

11  obtain a settlement from the banks.  Do you agree with those

12  statements, Professor Rock?

13  A    I don't actually understand this paragraph and let me

14  explain why.  First of all, what's quite clear is the duty

15  of the trust advisory board and the trustee is to the trust

16  and its beneficiaries.  The primary asset of the trust is

17  the warrant, which is convertible into equity of reorganized

18  Tribune, so that in maximizing the value of the trust their

19  interests align with those of the other shareholders, namely

20  maximizing the equity value of reorganized Tribune.  So I

21  don't see that there's a conflict to start with, okay?  He

22  says that their maximum recovery is a fraction of the value

23  of the distribution trust.  I gather that's almost

24  tautologically correct.  What I don't know is what fraction,

25  whether -- he suggests a small fraction and I have no reason

1    to think that it's a small fraction rather than a large

2    fraction.  Whether it's a small or a large fraction, the

3    value of their interest is tied to the value of the warrant,

4    which is tied to the value of reorganized Tribune.  Finally,

5    he suggests that the Notes and PHONES could benefit from

6    blocking transactions that would benefit Tribune because

7    doing so could increase the Litigation trust's leverage to

8    obtain a settlement from the banks.  He doesn't say more

9    than that.  I have no idea how blocking a transaction that

10   increases the equity value of reorganized Tribune would

11   impose any sort of pressure on the banks in the LBO

12   litigation.  So that last sentence I have to say leaves me

13   entirely mystified as to what he means.

14   Q    Okay.  Who are the distribution trust's beneficiaries

15   to whom the trustees' fiduciary duties run?

16   A    The -- as I understand it, it includes the LBO

17   Lenders, the Senior Noteholders, the PHONES holders,

18   includes Aurelius, but not limited to Aurelius.  It's a

19   variety of different parties who have interest in the

20   distribution trust.

21   Q    I'm looking now at the first full paragraph on Page 76

22   and Professor Black raises some concerns about the two out

23   of the seven Tribune directors, who would be appointed by

24   the distribution trust trustee.  And Professor Black writes

25   the distribution trust trustee would also appoint two out of

1  seven Tribune directors.  Those directors would be formally

2  independent, but the trustee could replace them at will.

3  They too might tilt towards actions that would benefit the

4  Notes and PHONES rather than actions that would maximize

5  Tribune value where those two goals conflicted.  Do you

6  agree that that is a concern?

7  A    I don't.  It's correct as Professor Black points out

8  that the Class C stock has the right to elect two out of the

9  seven directors.  Those directors must be independent.  I'm

10 not sure what he means by formally independent.  I take it

11 they are expected to be genuinely independent.  They, as we

12 saw earlier, their appointment is subject to approval by the

13 Court and I have no reason to think that they wouldn't be

14 actually independent as opposed to merely, as he would

15 suggest, formally independent.  But most importantly I don't

16 see this conflict of interest that he's talking about.  He

17 said even -- he says they would tilt -- they too might tilt

18 toward action that would benefit the Notes and PHONES,

19 rather than actions that would maximize Tribune value when

20 those two goals conflicted.  Now first of all, they owe

21 fiduciary duties to the trust and all of its beneficiaries

22 and so their duty is to maximize the value of the trust,

23 whose primary asset is the warrant, whose value is dependent

24 on the value of reorganized Tribune.  I don't see where that

25 conflicts, where the -- where whatever loyalty a trustee

1  might have to the Notes and PHONES conflicts with this duty

2  to maximize the value of reorganized Tribune.  To the extent

3  one can construct some hypotheticals where they could

4  potentially conflict, one needs to keep in mind that they

5  are operating with fiduciary duties.  They face liability

6  for breach of their fiduciary duties and they face scrutiny

7  by the Court on actions that they take, so I have no

8  particular -- no reason and Professor Black gives me no

9  reason to assume that they're not going to perform their

10  function the way they're expected to.

11  Q    If you look at the last paragraph on Page 76,

12  Professor Rock, Professor Black opines that the distribution

13  trust's structure might result in a decrease in Tribune's

14  enterprise value of approximately 400 to $700 million.  Do

15  you have an opinion as to whether or not that's accurate?

16  A    I'm not a valuation expert and I do not have an

17  opinion as to whether that's accurate, but it's hard for me

18  to imagine that the remote possibilities that he identifies

19  in his report would cause reasonable investors to discount

20  the value to that degree.  But as I say, I am not an expert

21  on valuation and I'm not offering an opinion on valuation.

22           MS. NEWMAN:  I have no further questions, Your

23  Honor.

24           THE COURT:  Cross examination?

25           MR. MILES:  Your Honor, I also have some binders,

1   but I think they largely duplicate the binders that the

2   Noteholders have used, so I'll hold off on distributing them

3   until -- unless and until we hit a document that's not in

4   the Noteholder's binder, if that's alright.

5           THE COURT:  That's fine.  Mr. Miles, how long do

6   you anticipate your cross will take?

7           MR. MILES:  20 minutes maybe, Your Honor.

8           THE COURT:  Okay.

9   (Laughter)

10          MR. MILES:  Was that a bad answer?

11          THE COURT:  I didn't think.  You may proceed.

12          MR. MILES:  Thank you.

13                      CROSS EXAMINATION

14  BY MR. MILES:

15  Q    Good afternoon, Professor Rock.

16  A    Good afternoon.

17  Q    In the course of practicing law, being a professor,

18  and running programs, you have spent lots of time with

19  corporate directors, CEO's, and General Counsels.  Isn't

20  that correct?

21  A    Lots of time with directors, lots of time with General

22  Counsel.  Not much time with CEO's.

23  Q    And through those contacts you've learned about the

24  business world.  Isn't that correct?

25  A    For those contacts and others, yes.

1    Q      Yes.  And one thing you've learned is that certainty

2    is a value to businessmen, correct?

3    A      It's a value among other values.  Some people prefer

4    businesses with less --

5    Q      Thank you.

6    A      -- certainty than others.

7    Q      Yes.  You've answered my question.  Thank you.  And

8    another thing you've learned is that businessmen prefer to

9    react quickly to market developments.  Isn't that correct?

10   A      It is a -- people among other things prefer to react

11   quickly.  Yes.

12   Q      Yes.  And it's your understanding that Tribune wants

13   to emerge from bankruptcy under a corporate structure that

14   enables it to react quickly to market developments.  Isn't

15   that correct?

16   A      My understanding is that Tribune, like any other

17   company coming out of bankruptcy, wants the ability to act

18   nimbly, but not rashly.

19   Q      And it's also your understanding that Tribune wants to

20   emerge under a structure that does not create undue

21   certainty in the minds of potential business partners,

22   correct?

23   A      I'm not sure exactly what you mean by undue certainty,

24   but I assume every business person prefers not to create

25   undue certainty.

1    Q       And you're aware that the publishing industry is in a

2    period of decline, correct?

3    A       Parts of it are in decline.  Parts of it are in

4    ascent.

5    Q       And you're -- you understand that the industry is

6    undergoing consolidation now as companies seek to position

7    themselves to compete.  Isn't that correct?

8    A       So I gather.

9    Q       Yeah.  And so the ability to do deals and partner with

10   other companies will be important to Tribune's ability to

11   prosper upon emergence, correct?

12   A       The ability to do deals subject to the various sorts

13   of checks and balances that corporate law imposes on every

14   corporation is important to every business.

15   Q       Yes.  Now the ownership structure envisioned for the

16   reorganized Tribune under the Noteholder Plan is an unusual

17   one, isn't it?

18   A       It is unusual.  Yes.

19   Q       Yes.  There's not many businesses today that have up

20   to 65 percent of their equity held by a distribution trust

21   in the form of warrants, correct?

22   A       Not that I'm aware of.

23   Q       You're not aware of any that are structured such?

24   A       That's correct.  I'm not aware of any.

25   Q       And so this structure likely will raise questions, at

1   least in the minds of some potential business partners who

2   haven't seen anything like it before.  Isn't that correct?

3   A    It presumably could raise questions, but they're also

4   questions that can seem to me be answered.

5   Q    Okay.  But they have -- but the partners would have to

6   be willing to take the time to listen to the answers.  Isn't

7   that correct?  And to listen to the complicated explanations

8   you've given here today, isn't that correct?

9   A    I think my explanations were the model of clarity and

10  simplicity.

11  (Laughter)

12  A    But people would need to listen to the explanations.

13  That's correct.

14  Q    Okay.  Now Article 6 of the proposed corporate charter

15  for the reorganized Tribune in the Noteholder Plan has a

16  cooperation clause, correct?

17  A    Yes, it does.

18  Q    And that cooperation obligation also is imposed by

19  Section 2.7 of the distribution trust agreement.  Isn't that

20  right?

21  A    I'd have to go check, but let me -- if you'll give me

22  a moment.

23  Q    Okay.  Yes.

24  A    See if I can find it.

25  Q    In the --

1  A    Which tab is the distribution -- Tab #5 and what

2  paragraph did you direct my attention to?  2.7 on Page 6.

3  Yes.

4  Q    And it says there the reorganized Debtors and each

5  employee, officer, and director of the reorganized Debtors

6  shall be required to cooperate in all respects at the

7  reorganized Debtors sole cost and expense with the

8  distribution trustee and the administration of the

9  distribution trust and shall not take any action that could

10 interfere with or fail to take any action within the

11 reorganized Debtors' control if such failure could interfere

12 with the distribution trustees administration of the

13 distribution trust.  Do you see that language?

14 A    I see that language.

15 Q    Now your testimony is that this clause poses no

16 dangers to Tribune's right to operate its business because

17 the phrase administration of the distribution trust is very

18 narrow and relates primarily to collecting money and paying

19 out claims.  Isn't that correct?

20 A    I think a plain reading of the charter and of this

21 provision leads one to that conclusion and I also said that

22 if there's any question about that in anybody's mind, it can

23 easily be clarified by resort to asking the Court to

24 interpret the language and make it clear what the scope of

25 the cooperation obligation is.

1  Q      And your testimony is that the -- your reading of the

2  distribution trust agreement is that the tasks of the

3  distribution trustee are ministerial, was your word.

4  Correct?

5  A      Largely that is what I said.  Largely ministerial.

6  Q      Yeah.  And it's also your view that the Tribune

7  directors will have a minimal role, if any, in the

8  activities covered by the cooperation clause, correct, as

9  you read it?

10  A      I'm not sure if that's exactly what I said, but as

11  directors they're not in the position of operating the firm

12  and thus not in the position to cooperate.  As I did say and

13  as the charter says, they have a duty to cause the

14  corporation and its employees to cooperate and in that

15  regard they might -- they certainly have obligations at the

16  directorial level.

17              MR. MILES:  I'd like to hand you your deposition

18  transcript.  Your Honor, may I approach?

19              THE COURT:  You may.

20  BY MR. MILES:

21  Q      And if you can turn to Page 140, Line 24.

22  A      Page 140, Line --

23  Q      Page 140, Line 24.

24  A      -- 24?

25  Q      And then actually let's back up two lines to Line 20.

1  My question was so you -- do you think that Section 9 might

2  make it difficult to recruit experienced and qualified

3  directors for Tribune?  Your answer is no.  I say why is

4  that and you said well, the obligation under 6(e), the

5  obligation of cooperation is to cooperate with the

6  administration of the distribution trust.  Its -- number

7  one, directors have a minimal role, if any, in the actual

8  cooperation.  Isn't that what you testified last night?

9  A    Yes.

10  Q    Now you also can't even think of a breach of the duty

11  to cooperate, as you interpret it, that would give rise to

12  substantial damages.  Isn't that correct?

13  A    That's correct.

14  Q    Okay.  And you think the duty to cooperate is not

15  violated if Tribune were to proceed with a business

16  transaction that the distribution trustee believed to be

17  imprudent and likely to depress the value of the warrants.

18  Isn't that correct?

19  A    Well, the context in which you asked me about that was

20  you had -- you propounded a hypothetical where there was no

21  approval right by Class C shares because there was no effect

22  on the ability to appoint two directors, but nonetheless the

23  distribution trust advisory board and trustee in your

24  hypothetical, if I recall correctly, had a view that it was

25  a bad deal for the company, that it was a value destroying

1    transaction, not a value increasing transaction.  And as I

2    recall the hypothetical, you know correct me if I misstate

3    it, the distribution trustee or the trust advisory board

4    sends a letter to the board of directors saying we think

5    this is a bad transaction, you should not do it.  And the

6    question was whether in that circumstance, I thought, there

7    was any reasonable basis for thinking that the directors

8    would incur liability under the cooperation clause for

9    proceeding with the transaction over the opposition of the

10   distribution trust advisory board in the distribution trust.

11   And my answer to that --

12   Q    And your answer was no.

13   A    -- was no.

14   Q    That's correct.  Now Section 102(b)(7) of the Delaware

15   General Corporation Law, as you mentioned, is a section that

16   allows Delaware corporations to include provisions in their

17   charters exculpating their directors from liability for

18   damages for the breach of duty of care.  Correct?

19   A    Non-intentional breaches of the duty of care.

20   Q    And Article 7 of the Noteholder Plan has such a

21   provision, correct?

22   A    Correct.

23   Q    And but Article 9 creates an exception for the duty --

24   breach of the duty to cooperate, correct?

25   A    Correct.

1    Q      Now you're not aware of any other Delaware

2   corporation, are you, that has a 102(b)(7) provision and

3   that has an exception carved out like this.  Isn't that

4   correct?

5    A      I'm not aware of any.  I haven't done a systematic

6   study of Delaware charters and their 102(b)(7) provisions.

7    Q      And you would agree, wouldn't you, that putting in

8   Section 6 with a duty to cooperate and then putting in

9   Section 9 creating an exception to the ability to be

10  exculpated or have insurance is an awful lot of effort to go

11  through to hold directors personally liable for something

12  they don't play a role in and where a breach can't give rise

13  to substantial damages?  Isn't that correct?

14   A      I'm sorry.  I --

15   Q      It's a lot of effort --

16   A      Can you further explain the question?

17   Q      It's a lot of effort to go to, to impose a duty to

18  cooperate on the directors, then to put a separate section

19  in that specifically carves out their protection from

20  exculpation or insurance if they breach that duty.  It's an

21  awful lot of effort to go through that if the directors --

22  the cooperation clause doesn't really apply to them, they

23  have a very minimal role in it, and no matter what they do

24  can't give rise to substantial damages.

25   A      I don't think so.  I think it's a way of articulating

1  a norm that the directors -- that the company is expected to

2  cooperate with both the distribution trust and Litigation

3  trust.  That's what the provision says.  It is often the

4  case in corporate law that we express duties that have an

5  expressive, if you will, effect without there being any

6  significant or even meaningful possibility of monetary

7  liability.  The duty of care that is imposed on directors of

8  a Delaware corporation is precisely of that form.  There's

9  essentially zero possibility of a director paying damages

10 out of his or her own pocket for breaching the duty of care

11 and yet Delaware corporate law has that as one of the two

12 fiduciary duties because it is critically important to send

13 the message that the duty of care is important.  I --

14 Q      But Dr. --

15 A      -- read -- excuse me.  I read the charter as doing

16 exactly the same thing as making it crystal clear that this

17 duty of cooperation is an important duty that is to be

18 respected.

19 Q      Isn't it a fact that Section 102(b)(7) was enacted in

20 response to the Van Gorkom Decision, where the Delaware

21 Supreme Court held directors personally liable for violation

22 of the duty of care?  Isn't that correct?

23 A      Not actually.  The -- 102(b)(7), if you go back and

24 look at the history, Smith against Van Gorkom, the first and

25 last case essentially where outside directors were held

1  liable for the breach of the duty of care.  Subsequent to

2  Smith against Van Gorkom there was a directors and officers

3  liability insurance crisis and if you go back and look at

4  the history it was in response to the crisis, which made it

5  impossible for or difficult for firms to buy directors and

6  officer liability, that led to the enactment of 102(b)(7).

7  The most authoritative study of the personal liability of

8  directors is a study done by Mike Klausner, Bernie Black,

9  and Brian Cheffins, which tries to collect to find every

10 instance in which outside directors paid money out of their

11 own pocket for breach of duties -- of their duty.  And they

12 find essentially -- they find the needles, but there are

13 only a very new needles in the haystack.  It is an extremely

14 small possibility.  They find the very small group of cases,

15 but it is a duty that nonetheless Courts go to great effort

16 to articulate and to exhort directors to follow.

17 Q    All right.  So --

18 A    That's characteristic of Delaware corporate law.

19 Q    All right.  Thank you.  So when Tribune is

20 interviewing potential directors and officers, it should say

21 to them listen, in the Smith v. Van Gorkom case the

22 directors breached their duty of care and were held

23 personally liable for damages.  It causes a crisis, it

24 causes an insurance crisis because there was no way to get

25 insurance for the directors and they solved it by putting in

1    102(b)(7) so that directors would be protected.  But guess

2    what?  In our charter we've got a carve out for 102(b)(7) so

3    that if you violate the duty to cooperate, you join the Van

4    Gorkom crowd and are personally liable and you can't have

5    insurance for it either.

6    A    No, that's silly.

7    Q    Well, that is --

8    A    That isn't what I said.  The conversation they have

9    with potential directors is look, you have an obligation to

10   cooperate.  We don't think it's a burdensome obligation, but

11   you do have an obligation to cooperate.  If you have any

12   questions about the scope of your obligation to cooperate,

13   we can get clarity for you.  We just will turn to the Court.

14   We can get clarity of the scope, but it is one of your

15   duties and this is -- that's something that General Counsel

16   typically will advise the directors is what their duties are

17   and it's one of your duties of -- to be a director of

18   reorganized Tribune will be this cooperation.  That doesn't

19   require having a long discussion about Smith against Van

20   Gorkom.  It simply is to say that happens to be one of the

21   duties, so long as the distribution trust exists, which is

22   unlikely as I gather to be a long-term feature of the

23   structure, but so long as it exists there's an obligation to

24   cooperate and the content of that obligation, if you have

25   any questions, we can get clarity on that.

1  Q      Okay.

2  A      That doesn't strike me as a difficult conversation to

3  have with a potential director.

4  Q      Would you -- strike that.  Would the -- this whole

5  problem could be resolved by eliminating Section 9.  Isn't

6  that correct?

7  A      No.

8  Q      If Section 9 was eliminated, then the directors would

9  be or officers would be able to be -- to exculpate it and

10 they would be able to get insurance for breaches of the duty

11 to cooperate.  Isn't that correct?

12 A      I don't think damages liability is -- to the extent

13 that there's any lack of clarity here, it's not with respect

14 to damages liability.  The clarity, if there is any lack of

15 clarity, is with respect to what is the content of the duty

16 to cooperate?  And it may be if I gather from your

17 interpretation of it, the language of the charter is at

18 least insufficiently clear for you to make it clear what the

19 duty to cooperate is.  My understanding of the structure is

20 this is not intended to be a burdensome duty.  So that

21 clarity could be brought if necessary by explaining in more

22 detail in Paragraph 6(e) what the scope of the duty of

23 cooperation is.  That it seems to me if there's a problem in

24 the drafting here is that.  The fact that there is a carve

25 out from exculpation is entirely secondary to that.  Whether

1  this carve out serves anything more than a sort of

2  exclamation point purpose to say that we really mean that

3  this is a duty to cooperate, I'm not sure and I'm not sure

4  that anything would be lost by eliminating Paragraph 9, but

5  the core here is Paragraph 6(e) and if the view is that the

6  duty of cooperation is insufficiently spelled out and is

7  insufficiently -- is excessively vague, it would be quite

8  easy to fix it because you know the great virtue in this

9  case is things are still fluid.  I mean if you have better

10  language for how to specify the duty of cooperation with the

11  distribution trust, you know that's something I'm sure the

12  Court and the other side would be interested in discussing.

13  I just -- my reading of it, I think it's sufficiently clear.

14  I think that the duty of cooperation is not a major duty.  I

15  don't think your example of the board proceeding over the

16  objection of the distribution trustee is an example that

17  violates the duty of cooperation.

18  Q     All right.  Well, let's move on to a different

19  subject.  You talked about my hypothetical that we talked

20  about last night.  And as I understood your answer, the

21  first thing you said was this is not a problem because

22  consent is not required.  That's not correct.  Consent is

23  required to enlarge the board to -- the consent of the

24  distribution trustee is required to enlarge the board by

25  three additional people.  Isn't that correct?  Yes or no,

1  isn't that correct?

2  A    You asked me two different questions.  Which question

3  do you want me to answer?

4  Q    I want the answer to is the consent of the

5  distribution trustee required to enlarge the board from

6  seven to ten so the three Internet board members can go on?

7  Yes or no?

8  A    The -- so long as none of the seven current directors

9  steps down.

10  Q    That means yes, right?

11  A    So long as --

12          THE COURT:  Miles -- I'm sorry, Professor Rock.

13  Please do not interrupt the witness.  You may complete your

14  response.

15  BY MR. MILES:

16  Q    Thank you.

17  A    So long as none of the seven sitting directors of

18  reorganized Tribune steps down in order to make room for

19  three new directors from the Internet company, so that in

20  order to meet the demand of the Internet company to have all

21  three of the founders sit on the board, so long as that's

22  the case, consent would be required by the Class C stock.

23  Q    That's right.  And consent would be required because

24  it would impair the rights of the Class C stock, correct?

25  A    Yes.

1  Q      Yes.   Okay.  And so the solution you're imposing --

2  A      Well, in particular it would, under the terms of the

3  charter, it would be triggered because it would be an action

4  that increases the authorized size of the board of directors

5  of the corporation beyond nine.

6  Q     But it would also impair the rights of the Class C

7  stock.  Isn't that correct?

8  A      Well, I -- it would most clearly come in under -- that

9  provision is in there because of -- it is a mechanism for

10 protecting the rights of Class C stock.  I'm not sure in

11 fact that increasing the size of the board from seven to ten

12 would in fact impair the rights.  That is to say it seems to

13 me --

14 Q      But it would dilute --

15 A      -- it would dilute it slightly, but I don't think --

16 it's not obvious to me that it would dilute it by a lot.

17 The reason this provision is in the charter is to create a

18 bright line, to protect against actions that could dilute

19 the influence.

20 Q     Well, by asking the -- one of the senior Lender

21 directors to step down, you're asking them to dilute their

22 rights just a little bit to make way for this Internet

23 person.  Isn't that correct?

24 A      I'm not asking anybody to step down.

25 Q      But that's your solution other than -- that's your

1   solution for avoiding the consent of the trustee is to have

2   the senior Lenders dilute their rights a little bit.  Isn't

3   that correct?

4   A    Well, as I said in my answer, in the real world you

5   would first have a conversation between the management of

6   reorganized Tribune and the distribution trust advisory

7   board on the transaction, whether it makes sense.  And in

8   the real world given that the distribution trustee and the

9   distribution trust advisory board has a very strong

10  incentive to maximize the equity value of reorganized

11  Tribune, that if this transaction made sense in the real

12  world, the trustee and the trust advisory board would say

13  fine, let's go do it.

14  Q    In your experience --

15  A    In the example you give, you're saying well, suppose

16  that they are at loggerheads, that the distribution trust

17  advisory board thinks this is an AOL/Time deal and the

18  reorganized Tribune thinks this is a homerun.  What happens

19  then?  Then there are a variety of ways in which if the

20  potential merger parties feel strongly that this is really a

21  great deal, to solve the problem without --

22  Q    Okay.

23  A    -- getting approval.  One way would be for one of the

24  three Internet --

25  Q    Right.

1   A       -- founders to say okay, I won't go on the board,

2   you'll just have two of us.  And at the point that the

3   distribution trust disappears because the litigation over

4   the LBO has been completed, I'll come on the board at that

5   point.  That would allow you to proceed without getting over

6   the objection of the distribution trust advisory board

7   because now the board would only have to go to nine rather

8   than to ten.  Alternatively, one of the senior Lenders might

9   say this is such a homerun deal that I think it's important

10  for my interest in reorganized Tribune to go forward and I'm

11  willing to step down because I want it to go forward.  And

12  that again would allow the deal to go forward without the

13  approval of the distribution trust advisory board.  So yes,

14  there are ways to handle this.  In the real world there are

15  ways to handle this if in fact this is a value maximizing

16  homerun transaction, there are ways to do it.  It could be

17  that everybody is stubborn.  It could be that the board is

18  stubborn in saying we want to do this deal.  It could be the

19  Internet founders are stubborn in saying oh, we won't do

20  this.  Even though it's a great deal, unless all three of us

21  go on the board there's no way we're going to do this deal.

22  And it could be that the distribution trust advisory board

23  is stubborn and not recognizing that this is really a

24  homerun and not an AOL/Time kind of deal.  One can imagine

25  situations where people do stupid things.  That's the world,

1    but the approval rights here of Class C stock are not

2    particularly egregious in causing bad things to happen.

3    Remember, in a typical merger shareholders have to vote on

4    it.  Shareholders sometimes vote down deals that are good

5    deals.  At Leer, they voted down Carl Icahn's deal and

6    within six months they were bankrupt.  People make mistakes,

7    but in this circumstance the mistakes will be good faith

8    mistakes because the interest of the distribution trust and

9    the interest of the rest of the equity of reorganized

10   Tribune are aligned.  It's -- there's no way here that

11   there's going to be any side payments made or anything else

12   that's going to warp the decision-making by the distribution

13   trust.

14   Q    Professor Rock, I'm going to ask you now a series of

15   questions and I would like you to answer them yes or no.

16   Your Honor, if you would instruct the witness to do that if

17   he veers.  There can be good faith disagreements --

18            THE COURT:  Mr. Miles?  Mr. Miles?  Let's just

19   deal with it on a question by question basis.

20            MR. MILES:  Yes, Your Honor.

21            THE COURT:  Go ahead.

22   BY MR. MILES:

23   Q    There can be instances where there can be good faith

24   disagreements between the distribution trustee and the board

25   over whether this is a homerun, value enhancing transaction.

1  Isn't that correct?

2  A     Correct.

3  Q     Okay.  And if there are those disputes and the

4  distribution trustee refuses to consent to allowing the

5  three members on the board, the transaction will not go

6  forward.  Isn't that correct?

7  A     We've discussed that.

8  Q     Yes.

9  A     There are --

10  Q     And if --

11  A     There is scenario in which that would prevent the deal

12  from going forward.

13  Q     Yes.  And that would impair the flexibility of the

14  company to do what it wanted to do in that situation.  Isn't

15  that correct?

16  A     I'm not sure it would.

17  Q     Okay.  And if the -- while the company was busy trying

18  to persuade the distribution trustee to change his mind and

19  see this as a value enhancing deal, the Internet founders

20  got tired of waiting around and said look, we don't want to

21  proceed with this deal anymore.  That's something that's a

22  real possibility that could happen.  Isn't that correct?

23  A     I don't see why it would.

24  Q     Okay.

25  A     The -- this is a situation -- any such, any deal takes

1   time.  Any deal takes time.  You don't do deals, you don't

2   do mergers overnight.  The Internet company presumably needs

3   to have a shareholder meeting to approve the transaction.

4   It may well be that reorganized Tribune needs to have a

5   shareholder meeting to approve the transaction.  It's a

6   media company.  It's going to need regulatory approval.

7   Deals take time and there's absolutely no reason to think

8   that the time it takes to have a conversation with the

9   distribution trust advisory board is going to impair the

10  timeliness of flexibility of the deal.  This is -- there's

11  no reason to think this is going to drag on.  The interest

12  of the distribution trust advisory board is to get the right

13  decision made, to approve value enhancing transactions, and

14  to avoid AOL/Time kinds of transactions.

15  Q     Okay.  Professor Rock, if you could turn to your

16  deposition at Page 125, Line 17.  My question is the

17  possibility that the transaction --

18  A     Hold on, please.

19  Q     Certainly.

20  A     125, Line 17.  Line 17?

21  Q     Yes.  And I say the possibility that the transaction

22  could not go forward could very well lead the Internet

23  business people to say listen, we don't want to stay here

24  and restructure the transaction.  We'll go somewhere else

25  where we can be on the board.  And you answered tell me

1    again.  Tell me this transaction -- is it a stock for stock

2    transaction?  Is it an acquisition for cash?  I say it

3    doesn't matter either way.  You say let's assume it's a

4    stock for stock transaction.  I say right.  And then you say

5    yes, there is uncertainty now that could lead the Internet

6    company to decide to go elsewhere, just as there's

7    uncertainty whenever there's a shareholder vote for instance

8    required to approve.  You see that?

9    A     I do see that.

10   Q     And in the transaction that --

11          UNKNOWN:  Your Honor, I think you instructed my

12   colleague, Mr. Hurley, it had to be a question.

13   BY MR. MILES:

14   Q     And the question is, isn't that what you testified?

15   A     I did testify to that effect and it's correct and it's

16   consistent with what I said today.

17   Q     And in the hypothetical that I gave there's no need

18   for shareholder approval is there because there was less

19   than 20 percent of the stock that was being issued in the

20   deal, less than 20 percent of Tribune's stock.  In that

21   circumstance there would be no shareholder approval

22   required.  Isn't that correct?

23   A     It actually depends on -- what we don't know is how

24   many authorized, but unissued shares there are in the

25   charter, so I don't know.

1    Q    All right.  So it could be structured in a way that no

2    shareholder approval was required?

3    A    No.  Well --

4    Q    If it depends on that, then it must be a way of

5    structuring it so that it's not required.

6    A    Wrong.  That's not right, okay?  Because we don't know

7    yet how many shares are authorized in the charter.  If for

8    instance there are only a relatively small number of shares

9    authorized, but unissued in the corporate charter, then to

10   proceed even with a less than 20 percent stock for stock

11   transaction you would have to amend the certificate of

12   incorporation.  The amendment to the certificate of

13   incorporation requires a shareholder vote and if you're

14   going to do this as a stock for stock transaction that

15   requires the amendment of the certificate of incorporation,

16   you need a shareholder vote and there's no way to

17   restructure it so that it doesn't require a shareholder

18   vote.

19   Q    Even if it's a cash transaction?

20   A    Well, that's not a stock for stock transaction.

21   Q    All right.  So make it a cash transaction, there would

22   be no requirement for shareholder vote.

23   A    Cash transaction does not require a shareholder vote.

24   Correct.

25   Q    All right.  And in that instance the sole delay would

1    be coming from the trustee deciding whether or not he wanted

2    to consent or not.  That would be what would be holding it

3    up solely.  Isn't that correct?

4    A    No, that's absolutely not true and in the real world

5    there is essentially no transaction that can go forward on

6    that basis.  Okay?  Especially not with a media company that

7    requires regulatory approval.

8    Q    All right.  Let's talk about the distribution

9    trustees' ability to protect the trust.  The distribution

10    trust has two major assets, correct?  One is the warrant for

11    up to 65 percent of the equity and the other is the proceeds

12    of the litigation trust.  Isn't that correct, proceeds being

13    brought by the litigation?

14    A    It depends again on the time -- there's an initial

15    distribution that goes into the distribution trust, so it

16    depends on when you're talking about, but those certainly

17    are two major assets of the distribution trust.

18    Q    Okay.  It's your opinion that it would be optimal for

19    the Bankruptcy Court to structure this arrangement so that

20    litigation trustee would have unfair leverage for use and in

21    extracting a settlement greater than the merits of the

22    litigational loan would dictate.  Isn't that correct?

23    A    Have you not -- your previous question talked about

24    the distribution trust.  This question talked about the

25    litigation trust.

1  Q      Yes.  I've now switched.

2  A      We're now switching.

3  Q      Sorry.  I've now switched.

4  A      Okay.

5  Q      And my question is --

6  A      I just wanted to make sure we were clear.  Okay.  So

7  now we're talking about the litigation trust.

8  Q      Right.  And my question is would it be optimal for the

9  Bankruptcy Court to approve a structure involving the

10  litigation trust, the distribution trust, and the charter

11  that would give the litigation trustee unfair leverage for

12  use in extracting a settlement greater than the merits of

13  the litigational loan would dictate?

14  A      The -- you asked me a similar sort of question last

15  night.  The litigation trust is structured differently than

16  the distribution trust.  We can go through the documents,

17  but just to summarize the litigation trust does not require

18  that the litigation trust advisory board or the litigation

19  trust itself be independent of Aurelius.  The -- whereas the

20  distribution trust does require independence.  The function

21  of the litigation trust, as I understand it, is to prosecute

22  the LBO claims.  Those are claims that are brought because

23  it's going to flow into the distribution trust.  Ultimately

24  they're going to be brought on behalf of all the

25  beneficiaries of the distribution trust.  As such it raises

1  a classic problem that one faces in any sort of group or

2  aggregate litigation, which is how do you proceed in the

3  litigation in a way that serves the interest of the

4  beneficiaries of the litigation?  It's a problem in class

5  actions.  It's a problem in derivative suits.  Any sort of

6  class based litigation raises the problem how do you

7  provide, how do you identify an actor who is going to

8  zealously prosecute the litigation on behalf of the

9  beneficiaries of the litigation?  As I understand the

10 litigation trust structure, the idea is to create the

11 litigation trust and to put in charge of the litigation a

12 party that has strong incentives to zealously prosecute that

13 litigation.  Now from a Defendant's perspective, zealous

14 prosecution of claims is always a bad thing, right?  And

15 typically Defendants when faced with a structure that

16 provides strong incentives to prosecute the litigation,

17 typically Defendants say that you're incentivizing them to

18 act in an unfair manner or to be too zealous.  I think on

19 the contrary that we have real problems with aggregate

20 litigation.  If we can figure out a way to incentivize

21 somebody to bring the case zealously, then Defendants A, can

22 look after themselves in terms of defending their claims and

23 B, if there's a problem that somehow the law imposes

24 excessive damages on Defendants, then the solution is not to

25 create a structure where the incentive for the person

1  prosecuting the litigation is to sit on his hands, but

2  rather to change the legal rule that imposes liability on

3  Defendants.  The legal rule is fine, then it seems to me

4  zealous prosecution of the claims is exactly what we want

5  and the litigation trust structure seems to me to be quite

6  an effective means of providing for zealous litigation.

7  Q    If you turn to your deposition at Page 90, Line 8, my

8  question to you was -- are you there?

9  A    Yes.

10  Q    It would not be an optimal situation if the Bankruptcy

11  Court would approve a structure that gave the litigation

12  trustee unfair leverage to press against the Defendants for

13  a settlement greater than the litigation is worth.  Your

14  answer was I disagree with that.  Isn't that correct?

15  A    That was my answer and I just explained why I think

16  that.

17  Q    Now you know Professor Black, don't you?

18  A    I do.

19        MS. NEWMAN:  Objection, Your Honor.  I just want

20  to note for the record that the testimony that follows that,

21  there's a great deal of testimony that follows that and it's

22  entirely consistent with the answer that Professor Rock just

23  gave.

24        MR. MILES:  I don't know that's a basis for an

25  objection, Your Honor.

1    MS. NEWMAN:  Well, I think it should be read into

2  the record, rather than to leave the record with the

3  impression that Professor Rock gave an inconsistent answer.

4    THE COURT:  I didn't get that impression.

5    MS. NEWMAN:  Okay.

6  BY MR. MILES:

7  Q    Now you know Professor Black.  Is that correct?

8  A    I do.

9  Q    You're both professors in the same area of law?

10 A    Yes.

11 Q    And you respect him as a scholar and academic.  Isn't

12 that correct?

13 A    Scholars and academics are the same thing, but yes, I

14 respect him as an --

15 (Laughter)

16    MR. MILES:  I have no further questions, Your

17 Honor.

18    THE COURT:  Any redirect?  I'm sorry.  Let me ask

19 is there any other cross?  I hear no response.  Redirect?

20    MS. NEWMAN:  Just two questions.

21    THE COURT:  All right.

22              REDIRECT EXAMINATION

23 BY MS. NEWMAN:

24 Q    Professor Rock, do you believe that the ownership

25 structure contemplated by the Noteholder Plan will cause

1   undue uncertainty to reorganized Tribune?

2   A     No.

3   Q     And can you explain the basis for that opinion?

4   A     The structure here is one that as I discussed it is

5   one in which the distribution trust is set up as sort of a

6   weigh station pending the resolution of the LBO claims.  The

7   point that they're resolved the distribution trust will be

8   dissolved and assets will be distributed.  So to start with,

9   the period of time we're talking about is just the period of

10  time when the distribution trust is in existence.  Secondly,

11  the distribution trust is not an economic actor here.  It is

12  -- it has limited functions, limited responsibilities, and

13  there's absolutely no reason to think that it's going to

14  play such a prominent role that it's going to create

15  uncertainty in anybody's mind.

16  Q     And do you believe that the distribution trust will

17  prevent reorganized Tribune from acting quickly on business

18  opportunities?

19  A     In general I don't think that will happen.

20  Q     Okay.  And can you explain to me the basis for that

21  opinion?

22  A     Well, as we've discussed before, the incentives of the

23  distribution trust are to maximize the value of the assets

24  of the warrant for the benefit of the Noteholders, the PHONE

25  holders, and so forth.  That's -- the way you maximize the

1    value of the warrant is to say yes to value enhancing deals

2    and to say no to bad deals.  That I think is you know --

3    that's what everybody wants here is for reorganized Tribune

4    to thrive and for everybody to get rich out of it.

5    Q    And to whom do the fiduciary duties of the

6    distribution trust run?

7    A    In general the trustees duties run to the trust for

8    the benefit of the beneficiaries.  The -- I think the

9    articulation of it here is that they run to the

10   beneficiaries.  That I think is actually a sloppy

11   articulation, but it's essentially functionally the same

12   thing.

13   Q    Okay.  And can you describe for the Court who the

14   beneficiaries are, please?

15   A    As I understand it it's the Noteholders, the PHONE

16   holders, and there may be some LBO Lenders who also have an

17   interest in it.  There's a -- complicated because the LBO

18   Lenders are Defendants in the LBO litigation, there is

19   language in here that says there are not fiduciary duties to

20   the LBO Lenders, at least in that context.  But as one would

21   have to because you can't sue somebody you have a fiduciary

22   duty to.

23   Q    I'm asking about the distribution trust, not the

24   litigation trust.

25   A    The distribution -- well, let's look at the

1  distribution trust and I'll -- the -- you'll have to let me

2  just find it.  Excuse me.  Okay.  The distribution trustee

3  has its fiduciary duties as a -- take me a moment to find

4  this, unless you can direct me to --

5  Q    If you turn to the distribution trust agreement and

6  look at Pages 8 to 9, Section 4.1.

7  A    4.1.  distribution trustees shall have fiduciary

8  duties to the beneficiaries consistent with fiduciary duties

9  that a member of an official committee of creditors

10 appointed pursuant to Section 11.02 of the Bankruptcy Code

11 has to the creditor constituents represented by such

12 committee and shall exercise his, her, or its

13 responsibilities accordingly.  That was the language I was

14 referring to and thus their duties run to all of the

15 beneficiaries of the distribution trust.

16 Q    And do you have an understanding who those

17 beneficiaries are?

18 A    As I say I believe it is the Noteholders, include

19 Aurelius and others, the PHONES holders are a variety of

20 different people, and as I understand it there are some

21 other beneficiaries of the distribution trust as well.

22            MS. NEWMAN:  No further questions, Your Honor.

23            THE COURT:  Recross?

24            MR. MILES:  No, Your Honor.

25            THE COURT:  Thank you, sir.  You may step down.

1  Mr. Zensky, who is left?

2          MR. ZENSKY:  At this point, Your Honor, the

3  Noteholders have three witnesses left to call in this phase:

4  Mr. Pratt, Dr. Barone, and Mr. Tuliano and I think that

5  we've agreed that the first two will testify tomorrow.  That

6  should take up most of the day.  I'm not sure exactly what

7  time the Court had allocated to tomorrow and Mr. Tuliano --

8          THE COURT:  I'll tell you in a minute.

9          MR. ZENSKY:  Okay -- would be completed on

10  Friday.

11          THE COURT:  Okay.

12          MR. BENDERNAGEL:  That's what we had discussed

13  before, Your Honor.

14          THE COURT:  Okay.  So are the DCL proponents now

15  satisfied with where we're going in terms of clarity?

16          MR. BENDERNAGEL:  I think what was clarified is

17  that we'll start the rebuttal case on April 11 and you know

18  we'll work hard to finish their case this week and the way

19  we're going to do that is put Mr. Pratt on tomorrow,

20  followed by Dr. Barone and then Mr. Tuliano is expected to

21  take the better part of Friday.

22          THE COURT:  Okay.  I have a telephonic conference

23  call, which I'll be holding in the courtroom at 9:30

24  tomorrow morning, so I'll just ask as I have before to the

25  extent this group is getting ready for our commencement at

1  10:00, I just ask that you be respectful of the proceeding

2  as it's going on.  It shouldn't take very long and I should

3  be ready to start promptly at 10.  Okay.  Now Mr. Zensky, we

4  talked about --

5          MR. ZENSKY:  Yes, Your Honor.

6          THE COURT:  -- timing on or I said I would talk

7  about timing on submission.

8          MR. ZENSKY:  Yes.  Can I ask one other question

9  before we turn to that?

10          THE COURT:  Of course.

11          MR. ZENSKY:  Friday, what time will we be

12  starting?  Is it possible to start early?

13          THE COURT:  Bear with me.  Well, how's 9:30 for

14  Friday?

15          MR. ZENSKY:  We appreciate it, Your Honor.

16          THE COURT:  Okay.

17          MR. ZENSKY:  That's fine.  On the issue that Your

18  Honor just raised, it would be my suggestion that we wait

19  and see what happens after Dr. Barone's testimony tomorrow.

20  Your Honor indicated that there was the issue of 703,

21  whether it's something an expert can rely on.  Mr.

22  Kaminetzky said it's not an issue with respect to 703 and I

23  think we can see whether there's still a need to brief the

24  question of whether it comes in to evidence as opposed to

25  something that an expert can rely on.

1          THE COURT:  I think that's a very good

2   suggestion.

3          MR. ZENSKY:  Okay.  Thank you, Your Honor.

4          THE COURT:  Anything else?

5          MR. BENDERNAGEL:  You had indicated that you

6   might give some thought to talking about the rebuttal phase

7   and what we think is going to be there and what the ground

8   rules will be in terms of timing and I don't know that

9   that's necessary to do tonight, but you had raised it as a

10  possibility of something to discuss.

11          THE COURT:  Yeah.  Haven't had a chance to focus

12  on it.

13          MR. BENDERNAGEL:  All right.  Well, there will be

14  another opportunity I'm quite sure down the road.

15          THE COURT:  I'm certain of it.

16          MR. BENDERNAGEL:  Thank you.

17          THE COURT:  Is there anything else before we

18  adjourn today?

19          MR. BENDERNAGEL:  No, Your Honor.

20          THE COURT:  All right.  Thank you all very much.

21  Court is adjourned.

22  (Whereupon, at 4:24 p.m., the hearing was adjourned.)

23

247

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          16 March 2011
Wendy Evans                                    Date
Transcriber

INDEX

| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Dan Gropper | 12 | 43 | 170 | |
| Edward Rock | 177 | 213 | 240 | |

EXHIBITS

| NPP EXHIBITS: | Identified | Received |
|---|---|---|
| 224 - Gropper Declaration | 23 | 24 |
| 2475 - Dr. Rock Report | 183 | 184 |

| Word | Page:Line |
|------|-----------|

**08-13141-kjc**(1) 1:5
**1,560,000,000-ish**(1) 39:22
**102(b)7**(14) 200:25 201:9 201:15 201:25 202:25 202:25 220:14 221:2 221:6 222:19 222:23 223:6 224:1 224:2

**a.m**(4) 1:14 12:2 71:20 71:20
**abetted**(1) 161:16
**abetting**(1) 161:12
**abid**(1) 2:38
**ability**(22) 20:3 20:7 44:13 49:9 78:12 88:17 137:6 189:21 191:7 193:2 195:23 205:16 206:7 206:25 207:22 214:17 215:9 215:10 215:12 219:22 221:9 236:9

**able**(20) 31:1 35:7 35:18 35:22 44:7 45:6 48:5 48:10 49:16 53:3 87:18 89:9 108:12 139:24 150:15 151:13 184:8 190:14 225:9 225:10
**about**(216) 12:19 14:1 15:9 17:18 17:21 20:7 20:21 21:11 23:12 23:23 26:17 26:20 27:10 27:13 28:22 29:1 29:10 29:14 30:11 30:19 31:8 31:18 32:9 32:11 32:13 32:14 32:17 32:24 33:5 33:7 33:16 33:20 34:14 34:21 34:23 35:1 35:3 38:13 40:12 40:14 40:20 40:23 42:8 43:10 43:11 43:14 43:19 44:25 45:13 47:1 47:6 47:10 47:11 48:9 48:15 48:22 48:22 50:19 50:20 51:2 55:8 58:9 60:7 61:7 61:18 64:5 65:4 65:7 65:9 65:13 66:2 66:23 67:10 68:4 68:9 68:15 69:21 73:17 76:17 78:8 78:22 79:6 79:22 79:23 80:2 83:2 87:13 87:17 90:1 92:7 92:8 92:17 93:14 93:25 94:17 94:20 95:8 95:9 95:17 95:19 95:20 96:16 97:4 99:15 102:18 103:20 103:21 103:21 103:2 103:24 104:2 104:4 105:24 106:5 106:15 106:20 106:25 108:17 108:24 108:25 112:24 112:25 114:18 114:19 114:20 115: 117:16 117:25 118:2 118:6 118:15 120:1 120:16 121:13 121:15 121:16 121:19 121:22 122:18 123:5 123:15 125:14 128:2 128:22 131:5 131:8 132:16 134:5 135:12 136:11 136:24 137:6 137:10 137:18 139:6 141:5 143:12 144:10 144:10 144:24 147:2 150:11 150:23 151:14 152:2 153:5 154:3 154:4 156:11 156:15 159:25 160:20 165:7 170:22 174:7 175:6 175:21 171:21 173:11 173:22 174:7 175:6 175:21 179:4 182:21 190:12 193:12 197:21 204:2 204:10 205:1 207:6 207:11 208:4 208:5 209:5 210:22 211:16 213:23 217:22 219:19 224:12 224:19 226:19 226:20 236:8 236:16 236:2 236:24 237:7 241:9 242:23 245:4 245:7 246:6

**aboveentitled** (1) 247:5
**absence**(2) 102:22 142:20
**absent**(2) 74:9 154:22
**absolutely**(6) 67:1 139:23 197:13 233:7 236:4 241:13

**academic**(2) 180:2 240:11
**academics**(1) 240:13
**accept**(9) 83:8 85:3 100:11 100:15 111:14 111:15 150:6 150:8 161:25

**acceptable**(2) 21:14 140:11
**accepted**(2) 147:3 150:7
**accepts**(1) 147:2
**according**(5) 180:18 186:12 190:15 199:1 200:15

**accordingly**(2) 182:11 243:13
**account**(5) 44:12 44:13 50:3 56:16 164:24
**accurate**(6) 33:12 114:12 119:24 120:19 212:15 212:17

**accurately**(3) 125:24 161:25 162:24
**achieve**(1) 84:8
**acknowledgemen**(1) 99:23

**acquired**(1) 100:5
**acquisition**(1) 234:2
**acquisitions**(3) 179:5 179:10 179:15
**act**(10) 180:18 185:15 186:19 198:25 202:16 202:17 207:12 208:22 214:17 238:18
**acting**(3) 40:9 200:14 241:17
**action**(13) 13:11 19:14 119:10 146:14 152:14 154:1 190:22 190:24 191:5 211:18 217:9 217:10 228:3

**actions**(11) 186:10 189:25 190:17 192:5 193:9 211:3 211:4 211:19 212:7 228:18 238:5
**activities**(2) 179:19 218:8
**actor**(2) 238:7 241:11
**actors**(1) 186:25
**actual**(3) 120:18 152:13 219:7
**actually**(39) 11:11 15:22 30:4 38:5 39:8 44:20 44:21 46:25 47:24 55:3 55:3 55:4 61:17 73:20 84:16 99:20 105:1 107:17 108:11 142:19 152:9 153:10 157:5 158:23 163:2 164:20 164:25 165:1 195:19 197:9 197:12 208:1 208:7 209:13 211:14 218:25 222:23 234:23 242:10

**adam**(1) 3:25
**add**(8) 32:24 35:25 48:20 86:21 87:16 97:15 111:22 168:12

**adding**(1) 32:25
**addition**(6) 145:8 181:19 185:23 188:13 201:21 208:11
**additional**(7) 16:21 22:5 66:18 66:25 79:25 140:25 226:25

**address**(4) 18:16 71:24 96:1 119:5
**addresses**(1) 190:19
**adelman**(1) 7:32
**adequate**(2) 133:16 134:4
**adjourn**(1) 246:18
**adjourned**(2) 246:21 246:22
**adjudicated**(3) 13:4 13:12 115:5
**adjust**(2) 50:24 177:4
**adjustments**(2) 174:2 174:4
**adler**(1) 4:22
**administeri**(1) 185:15
**administering**(2) 185:24 186:2
**administration**(12) 197:23 198:16 198:22 199:14 199:24 200:13 203:22 204:7 217:8 217:12 217:17 219:6

**administrativ**(1) 200:16
**admissibility**(6) 36:9 36:11 72:16 72:23 136:12 137:5
**admissible**(2) 67:11 168:10
**admission**(1) 22:7
**admit**(1) 137:2
**admitted**(5) 22:9 22:11 107:11 184:2 184:4
**adoption**(1) 180:19
**advance**(3) 98:18 120:12 122:1
**advanced**(1) 179:17
**advancing**(1) 67:7
**adversary**(2) 25:11 78:11
**adverse**(5) 146:20 147:17 149:4 149:19 149:24

**adversely**(3) 190:25 192:25 207:13
**advice**(7) 31:3 32:12 32:16 33:3 35:5 35:15 89:11
**advise**(1) 224:16
**advised**(4) 41:5 138:11 138:11 172:15
**advisor**(6) 45:13 93:20 120:12 122:13 133:20 134:19

**advisors**(8) 46:9 46:12 112:15 120:5 122:7 122:9 129:20 134:2

**advisory**(25) 186:9 186:11 186:20 186:24 187:1 195:15 195:13 195:16 196:7 196:9 196:17 209:15 219:23 220:3 220:10 229:6 229:9 229:12 229:17 230:6 230:13 230:22 233:9 233:12 237:18

**affect**(11) 48:6 49:6 157:1 157:14 160:25 190:25 193:1 193:2 193:9 198:23 207:13

**affiliated**(1) 116:10
**afforded**(1) 188:5
**after**(42) 13:7 19:14 27:11 53:19 64:16 65:8 68:16 72:15 74:4 83:5 83:6 85:11 85:13 85:18 85:25 86:12 86:16 86:21 87:1 88:2 88:10 89:4 89:14 94:4 99:2 104:2 108:4 122:22 123:8 127:24 135:2 140:22 154:9 167:14 167:20 168:1 168:21 170:9 171:5 172:14 238:22 245:19

**afternoon**(6) 139:20 140:18 141:15 177:23 213:15 213:16

**again**(42) 12:13 23:5 26:11 26:25 31:17 33:20 34:21 49:13 61:20 65:24 66:9 67:3 79:16 81:9 84:13 87:23 91:22 93:12 93:22 93:25 99:21 100:22 103:22 104:9 109:16 111:14 120:11 122:17 123:24 126:25 127:15 128:24 130:24 133:17 135:11 136:14 151:21 177:24 200:2 206:2 230:12 234:1 236:14

**against**(37) 21:1 38:5 38:18 52:1 54:25 75:10 76:9 79:18 147:20 147:21 148:4 148:5 156:4 156:6 157:1 157:4 157:7 157:10 157:20 157:22 159:18 159:19 160:1 161:13 163:3 163:7 163:11 163:12 163:19 164:4 181:13 200:24 222:24 223:2 224:19 228:18 239:12

**age**(1) 194:6
**agencies**(1) 207:23
**agent**(3) 81:4 129:2 202:9
**aggregate**(2) 238:2 238:19
**aggressive**(2) 50:17 50:17
**ago**(3) 26:25 129:14 131:24
**agree**(38) 14:17 16:13 19:1 19:9 19:11 42:6 45:21 46:8 46:14 46:14 47:5 47:9 48:24 50:25 99:19 102:1 104:13 110:10 110:15 120:18 121:21 133:14 136:20 148:21 148:22 157:9 165:6 168:3 190:6 192:12 199:3 200:22 203:10 205:25 207:1 209:11 211:6 221:7

**agreed**(4) 83:1 96:2 191:21 244:5
**agreement**(24) 5:24 42:10 86:25 87:7 87:11 87:12 87:14 99:23 100:4 170:9 171:6 175:3 180:21 180:23 181:10 181:13 181:15 191:24 194:21 196:18 205:6 216:1 218:2 243:5

**agreements**(2) 19:17 19:18
**agudelo**(1) 11:5
**ahead**(5) 39:7 45:1 62:6 194:11 231:21
**ahmed**(1) 10:19
**aided**(1) 161:16
**aiding**(1) 161:12
**airlines**(2) 181:3 181:4
**airplane**(1) 203:16
**airplanes**(1) 203:17
**akin**(13) 2:37 7:25 12:14 22:21 24:8 83:14 83:19 89:11 89:13 113:14 115:6 116:3 177:24
**albeit**(1) 51:2
**align**(1) 209:19
**aligned**(2) 20:14 231:10

**all**(99) 12:5 14:20 17:10 19:11 19:23 24:3 25:8 27:8 31:17 36:10 37:1 37:3 37:22 40:17 42:16 43:3 46:8 48:10 55:14 57:18 68:19 69:8 70:16 74:14 77:6 82:2 82:4 82:10 87:10 104:15 105:19 106:13 108:3 114:18 119:17 133:17 134:12 134:16 136:8 137:22 138:14 139:8 140:12 140:23 141:13 141:19 141:23 144:15 144:19 145:10 145:13 149:14 153:15 160:15 163:20 164:12 164:19 168:15 169:16 169:18 170:4 172:22 173:15 176:11 176:17 176:25 177:17 182:10 186:25 188:3 197:14 198:15 199:22 200:5 200:18 206:4 206:4 206:6 206:9 209:14 211:10 211:21 217:6 223:17 223:19 226:18 227:20 230:20 235:1 235:21 235:25 236:8 237:24 240:21 243:14 246:13 246:20 246:20

**allegedly**(1) 78:10
**allinson**(1) 4:33
**allison**(1) 6:19
**allocable**(1) 153:15
**allocate**(1) 140:8
**allocated**(1) 244:7
**allocation**(1) 184:22
**allot**(1) 140:3
**allow**(12) 13:12 23:3 51:25 57:22 57:22 127:19 153:15 171:4 191:22 194:21 230:5 230:12
**allowed**(7) 16:5 25:23 87:11 103:19 105:6 137:9 143:19

**allowing**(1) 232:4
**allows**(1) 220:16
**almost**(2) 185:15 209:23
**along**(2) 61:3 111:22
**aloud**(1) 67:24
**already**(11) 25:24 28:12 50:21 64:17 70:23 79:17 92:16 112:24 118:14 122:18 168:12
**alright**(1) 213:4
**also**(46) 16:8 18:6 20:2 39:23 40:9 43:12 43:22 46:14 47:9 49:2 51:20 57:14 64:9 64:14 66:16 87:16 94:3 95:17 98:14 147:2 156:25 158:8 164:4 166:22 171:9 178:24 185:1 188:4 200:1 200:18 200:22 201:22 202:13 205:15 207:6 208:21 210:25 212:25 214:19 216:3 216:18 217:21 218:6 219:10 228:6 242:16

**alternative**(4) 12:20 12:26 193:17 194:1
**alternatively**(1) 230:8
**alters**(1) 190:22
**although**(4) 41:10 67:25 72:13 143:16
**altogether**(1) 191:13
**alvarez**(8) 8:44 8:44 10:39 27:15 116:25 124:25 125:7 125:17

**always**(6) 42:19 84:2 84:3 197:1 203:15 238:14

**amanda**(1) 2:47
**amend**(1) 235:11
**amended**(2) 191:2 202:4
**amendment**(7) 191:2 192:18 193:6 193:12 194:21 235:12 235:15

**america**(2) 5:36 5:42
**americas**(1) 3:6
**amit**(1) 9:7
**among**(13) 72:22 92:17 99:22 102:1 103:12 105:1 112:14 114:4 116:4 117:23 117:25 214:3 214:10

**amongst**(6) 16:14 116:4
**amount**(15) 13:24 14:21 15:18 15:19 15:22 16:6 16:6 17:8 17:8 76:12 78:5 84:18 147:4 147:7 157:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**amounts**(3) 184:24 185:18 185:21

**analysis**(31) 22:22 25:25 26:15 26:17 26:22 26:24 28:7 28:22 30:2 31:19 32:11 32:18 32:23 33:5 33:7 33:8 33:14 35:2 35:8 36:9 46:13 48:20 48:21 56:1 68:11 91:12 119:12 119:17 162:22 162:25 164:1

**analyst**(2) 61:3 90:22

**analysts**(2) 122:8 165:19

**analytical**(1) 133:23

**analyze**(3) 88:14 133:22 134:11

**analyzed**(2) 51:19 165:15

**anathema**(2) 97:19 97:24

**anatomy**(1) 179:7

**ancient**(1) 92:1

**and**(301) 12:13 12:19 12:23 12:24 12:25 12:26 13:4 13:8 13:14 13:21 13:25 14:11 14:18 15:3 15:12 15:15 15:24 15:25 16:6 16:8 16:15 17:2 17:6 17:7 17:12 17:14 17:15 17:22 18:2 18:4 18:7 18:10 18:11 19:1 19:9 19:14 19:19 19:21 20:6 20:12 20:13 20:24 20:25 21:10 21:13 21:24 22:7 22:14 23:2 23:4 23:19 23:20 23:23 24:4 24:7 24:8 24:8 24:9 24:10 25:9 25:10 25:19 25:22 26:1 26:5 26:6 26:9 26:11 26:12 26:17 26:19 27:5 27:12 27:14 27:17 27:21 27:22 27:24 28:4 28:9 28:14 28:16 29:7 29:10 29:13 29:17 29:22 29:22 29:24 30:15 30:16 30:21 30:25 31:1 31:7 31:9 31:17 31:23 32:1 32:4 32:4 32:5 32:14 33:1 33:6 33:11 33:16 34:1 34:4 34:9 34:17 35:3 35:18 35:24 36:3 36:9 36:11 36:12 36:13 36:22 37:1 37:3 37:4 37:10 37:13 37:20 37:22 37:23 38:4 38:7 38:14 38:19 38:20 38:22 38:23 39:15 39:22 39:24 40:1 40:5 40:9 40:14 40:15 40:16 40:16 40:18 40:22 41:4 41:5 41:8 41:18 41:22 42:2 42:16 42:18 43:12 43:13 43:22 44:3 44:3 44:8 44:12 44:18 44:18 44:20 44:24 45:1 45:3 45:6 45:16 45:18 45:19 45:21 45:22 45:23 45:24 46:1 46:5 46:19 46:23 46:24 46:25 47:6 47:10 47:11 47:12 47:14 47:19 47:24 48:6 48:14 48:18 48:20 48:21 48:22 48:23 49:14 49:16 50:1 50:2 50:15 50:16 51:7 51:10 51:19 51:25 52:17 52:18 52:20 53:2 53:3 53:4 53:10 53:11 53:14 53:23 53:24 54:3 54:5 54:6 54:10 54:23 55:18 55:24 55:25 56:3 56:7 56:16 56:19 56:22 56:25 56:25 57:13 57:16 57:18 57:21 58:14 59:17 60:10 60:15 60:23 61:4 61:4 61:9 61:13 61:15 61:18 61:25 62:1 62:13 62:20 62:25 63:2 63:8 63:9 63:11 63:15 64:2 64:8 64:11 64:12 64:16 65:2 65:4 65:5 65:18 66:3 66:6 66:15 67:1 67:16 68:5 68:7 68:16 68:21 69:3 69:9 69:10 69:12 69:15 69:22 70:4 70:16 70:24 70:25 71:4 72:2 72:4 72:4 72:5 72:9 72:13 72:15 72:17 72:20 73:1 73:10 73:20 74:1

**and**(301) 74:9 74:10 74:16 74:21 75:1 75:12 75:16 75:18 75:20 75:25 76:2 76:13 76:15 77:10 77:21 78:13 78:16 78:18 78:20 79:3 79:12 79:17 79:25 80:16 80:20 81:12 81:16 81:18 81:21 82:2 82:24 83:1 83:12 83:15 83:19 83:23 83:23 84:2 84:4 84:4 84:8 84:8 84:10 84:12 84:18 84:20 84:20 85:5 85:10 85:11 85:11 85:16 85:17 86:11 86:16 86:19 87:3 87:6 87:20 88:9 88:13 88:13 88:24 88:24 89:7 90:23 91:1 91:8 91:11 91:14 91:21 91:25 92:6 92:7 92:8 92:20 93:19 93:22 93:25 94:3 94:16 94:19 95:2 95:5 95:13 95:15 95:24 96:1 96:3 96:6 96:8 96:15 96:20 96:20 96:22 97:4 98:8 98:14 98:17 98:21 99:15 99:19 99:22 99:23 100:8 101:3 102:1 102:2 102:8 102:11 102:16 103:2 103:6 103:6 103:11 103:13 103:13 103:15 103:19 103:20 103:23 103:24 103:25 104:2 104:4 104:6 104:14 104:22 104:25 105:1 105:14 105:19 105:20 105:22 107:5 107:20 108:1 108:3 108:15 108:19 108:20 108:24 108:25 109:3 109:6 109:9 109:11 109:16 110:9 110:11 110:15 110:20 111:14 111:23 112:1 112:6 112:9 112:10 112:15 112:18 113:8 113:11 113:19 113:23 114:2 114:6 114:8 114:17 114:21 114:22 114:25 115:2 115:4 115:22 115:24 115:25 116:4 116:7 116:10 116:10 116:14 116:17 116:25 117:5 117:6 117:15 117:17 117:18 118:24 119:11 119:13 119:15 119:21 120:15 121:8 121:11 121:12 122:3 122:4 122:6 122:9 122:17 122:22 123:12 123:14 123:20 123:24 123:25 124:5 124:16 124:17 125:19 125:23 126:17 127:3 127:8 127:10 127:18 128:2 128:3 128:23 129:5 129:7 129:10 129:14 129:16 129:20 129:23 130:3 130:16 130:18 131:3 131:17 131:24 132:1 132:2 132:5 132:7 132:9 132:11 132:11 132:15 132:16 132:20 132:23 133:9 133:9 134:2 134:9 134:20 135:3 135:4 135:6 135:10 136:9 137:1 137:3 137:3 137:12 137:18 137:19 137:20 138:5 138:7 138:9 138:10 138:11 138:17 138:18 138:22 138:23 139:1 139:4 139:5 139:8 139:9 139:11 139:13 139:17 139:17 139:18 140:13 140:19 140:20 140:22 140:25 141:5 142:6 142:22 143:2 143:3 143:8 143:12 143:18 143:20 144:9 145:2

**and**(301) 145:5 145:8 145:9 145:12 145:12 145:13 145:16 145:23 146:4 146:5 146:9 147:3 147:7 147:11 147:12 147:12 148:3 148:14 148:14 148:15 148:21 149:2 149:15 150:6 150:7 150:8 150:15 150:18 150:19 150:22 151:7 151:8 151:23 151:24 152:5 152:7 152:9 152:9 152:17 153:24 153:24 153:25 154:4 154:5 154:9 154:15 154:23 154:23 155:9 155:21 156:3 156:11 156:17 156:25 157:18 157:22 158:6 158:6 158:15 158:21 159:2 159:19 159:24 160:6 160:21 160:23 160:24 161:1 161:2 161:12 161:12 161:15 161:16 161:25 162:10 162:22 163:12 164:21 164:23 165:1 165:11 165:14 166:4 166:5 166:11 166:18 166:21 166:22 166:25 166:25 167:12 167:15 167:18 167:22 167:23 167:25 168:7 168:11 168:14 168:16 169:7 169:9 170:8 170:12 170:15 171:8 171:15 171:24 172:9 172:13 172:17 172:18 173:5 173:6 173:11 173:12 173:13 173:16 173:17 173:17 173:21 173:23 173:24 174:4 174:10 174:24 175:2 175:5 175:22 176:23 177:2 177:4 177:6 177:11 177:13 177:25 178:5 178:12 178:14 178:17 178:19 178:22 178:22 179:2 179:5 179:9 179:10 179:10 179:15 179:18 179:22 179:24 179:25 180:5 180:7 180:9 180:10 180:23 180:23 181:3 181:7 181:13 181:14 181:20 182:23 182:25 183:12 183:19 183:23 184:12 184:21 185:2 185:6 185:11 185:15 185:17 185:23 185:25 186:1 186:14 186:17 186:17 186:22 186:23 187:2 187:4 187:4 187:22 187:25 188:1 188:24 189:3 189:6 189:7 189:13 189:16 189:18 189:21 189:25 190:4 190:8 190:15 190:18 190:19 191:2 191:3 191:11 191:13 191:16 192:4 192:6 192:10 192:12 192:16 192:25 193:4 193:11 193:16 194:6 194:10 194:14 194:16 194:17 194:24 195:5 195:6 195:13 195:17 195:20 195:25 196:6 196:12 196:17 196:22 196:23 197:9 198:3 198:6 198:7 198:10 198:10 198:11 198:11 198:12 198:15 198:18 198:19 198:19 198:24 199:3 199:7 199:10 199:14 199:19 199:19 199:20 200:1 200:6 200:7 200:7 200:11 200:18 200:20 201:7 201:15 201:18 201:24 202:1 202:4 202:6 202:6 202:8 202:14 202:18 203:2 203:3 203:5 203:7 203:10 203:11 204:4 204:5 204:8 204:11 204:18 204:24 205:11 205:13 205:17 205:18

**and**(196) 206:3 206:13 206:14 206:24 207:7 207:8 207:10 207:14 208:9 208:23 208:24 209:4 209:5 209:7 209:8 209:13 209:15 209:16 209:25 210:5 210:22 210:24 211:4 211:13 211:18 211:21 211:22 212:1 212:6 212:8 212:16 212:21 213:3 213:18 213:19 213:23 213:25 214:1 214:7 214:12 214:19 215:1 215:5 215:9 215:9 215:13 215:25 216:7 216:9 216:18 217:1 217:4 217:7 217:8 217:9 217:15 217:17 217:18 217:18 217:20 217:21 217:24 218:1 218:6 218:12 218:12 218:14 218:14 218:21 218:25 219:2 219:4 219:14 219:17 219:23 220:1 220:5 220:11 220:12 220:20 220:23 221:2 221:6 221:7 221:8 221:12 221:23 222:2 222:11 222:23 222:24 223:2 223:3 223:3 223:5 223:9 223:11 223:16 223:20 223:22 223:25 224:4 224:4 224:15 224:17 224:24 225:9 225:16 226:3 226:5 226:6 226:12 226:20 227:23 228:1 229:6 229:7 229:8 229:12 229:17 230:2 230:10 230:11 230:22 230:23 230:24 231:5 231:8 231:15 231:24 232:3 232:3 232:3 232:10 232:13 232:17 232:18 232:20 233:7 233:13 233:21 233:24 233:25 234:4 234:10 234:14 234:15 234:15 234:17 235:13 235:16 235:25 236:4 236:11 236:20 237:5 237:8 237:10 238:1 238:14 238:22 239:5 239:15 239:21 240:11 240:11 240:13 241:3 241:8 241:12 241:16 241:20 241:25 242:2 242:4 242:5 242:13 242:16 243:1 243:5 243:12 243:14 243:16 243:19 243:20 244:4 244:4 244:7 244:17 244:18 244:20 245:2 245:19 245:22 246:7 246:7 246:8

**and/or**(1) 60:4

**anderson**(1) 4:4

**andrea**(1) 7:41

**andrew**(6) 3:35 3:45 5:17 5:29 6:41 6:43

**angelo**(5) 5:32 84:7 132:19 132:21

**animal**(1) 109:22

**animated**(1) 94:10

**anna**(2) 8:4 8:41

**announced**(2) 78:4 135:3

**another**(15) 18:21 41:19 51:22 62:16 67:12 68:18 135:10 137:20 137:23 141:7 153:12 162:8 162:18 214:8 246:14

**answer**(53) 30:22 34:23 35:5 35:18 35:19 40:14 47:4 63:4 73:21 74:16 76:23 76:23 76:25 77:1 77:5 77:7 77:8 87:15 87:25 97:15 107:21 126:6 127:10 127:12 128:4 128:7 128:8 128:25 129:1 130:20 135:7 137:21 140:12 141:2 141:6 152:19 153:8 154:21 158:12 164:13 213:10 219:3 220:1 220:12 226:20 227:3 227:4 229:4 231:15 239:14 239:15 239:22 240:3

**answered**(16) 34:3 62:1 68:17 71:4 80:1 83:19 127:8 127:11 128:3 133:19 152:5 152:5 170:15 214:7 216:4 233:25

**answering**(3) 31:12 106:23 140:1

**answers**(4) 24:1 31:2 145:16 216:6

**anti**(1) 179:15

**anti-trust**(6) 180:7 180:10 180:15 180:17 181:8 181:18

**anticipate**(2) 167:6 213:6

**anticipated**(1) 143:25

**antitrust**(1) 206:13

**anxious**(1) 142:21

| Word | Page:Line |
|---|---|

**any**(131) 15:1 16:21 18:5 18:16 20:10 22:6 23:16 25:2 25:6 25:16 26:20 30:8 31:18 32:17 33:15 34:23 36:14 37:1 37:20 42:4 42:14 48:18 68:1 72:7 74:9 78:2 79:5 80:10 89:14 93:11 107:17 108:12 108:14 110:24 113:2 117:8 119:10 120:9 120:13 123:3 123:9 126:1 127:3 128:9 128:22 130:3 130:4 132:22 134:22 135:20 136:11 136:14 139:22 140:17 145:17 151:2 151:17 159:13 160:7 160:7 161:6 166:13 169:18 174:3 175:2 176:13 181:11 182:7 183:5 183:25 185:7 185:22 187:21 190:22 190:24 191:5 191:11 191:14 191:17 194:17 195:9 195:22 196:8 199:23 200:3 200:13 202:4 202:6 202:7 202:14 202:15 202:16 202:19 204:9 204:24 205:3 205:5 205:8 205:10 205:14 205:24 206:18 207:4 208:19 210:11 214:16 215:23 215:24 217:9 217:10 217:22 218:7 219:7 220:7 221:1 221:5 222:5 224:11 224:25 225:13 225:14 231:11 232:25 232:25 233:1 238:1 238:5 240:18 240:19

**anybody**(4) 78:6 205:11 206:22 228:24
**anybody's**(2) 217:22 241:15
**anymore**(3) 24:20 24:22 232:21
**anyone**(10) 46:23 48:25 69:20 76:7 133:15 141:20 151:25 152:1 153:4 172:22
**anyone's**(1) 123:25
**anything**(20) 23:11 26:2 29:6 32:11 32:15 32:15 78:14 80:24 93:4 103:22 174:7 176:8 191:24 202:2 216:2 226:1 226:4 231:11 246:4 246:17
**anyway**(1) 29:20
**aol/time**(3) 229:17 230:24 233:14
**apart**(1) 138:18
**apologies**(1) 25:18
**apologize**(1) 117:19
**apparent**(1) 72:9
**apparently**(3) 30:6 115:25 168:16
**appear**(1) 75:21
**appearances**(8) 4:39 5:1 6:1 7:1 8:1 9:1 10:1 11:1
**appears**(9) 37:8 53:11 54:19 58:10 64:12 67:16 67:20 139:2 205:20
**apples**(2) 61:13 62:1
**applicable**(1) 61:10
**application**(4) 69:16 69:18 70:5 70:6
**applied**(6) 41:2 61:9 65:20 69:14 70:12 70:18
**applies**(7) 15:21 16:6 16:14 69:25 70:2 159:4 160:3
**apply**(8) 41:9 56:10 56:12 65:17 140:16 158:4 202:7 221:22
**applying**(1) 63:25
**appoint**(4) 18:22 193:2 210:25 219:22
**appointed**(11) 18:3 97:14 98:6 99:2 186:13 186:15 186:21 186:21 188:17 210:23 243:10
**appointment**(3) 178:17 178:25 211:12
**appreciate**(2) 41:18 245:15
**approach**(4) 52:9 138:15 177:11 218:18
**appropriate**(12) 21:11 43:25 45:8 46:19 48:19 50:8 57:17 76:18 87:13 143:18 174:8 205:1

**approval**(47) 18:3 186:13 186:22 189:18 189:19 190:1 190:3 190:3 190:22 191:4 191:6 191:14 191:17 191:21 191:25 192:7 192:9 192:9 192:16 192:23 192:25 193:4 193:16 194:10 194:13 194:16 194:2 196:3 196:9 206:8 206:16 206:17 207:22 207:23 208:14 208:16 211:12 219:21 229:23 230:13 231:1 233:6 234:18 234:21 235:2 236:7

**approvals**(2) 206:13 207:1
**approve**(10) 190:16 191:11 195:9 206:9 233:3 233:5 233:13 234:8 237:9 239:11
**approved**(1) 135:4
**approximately**(4) 39:16 150:17 172:1 212:14
**april**(24) 82:24 83:5 83:8 83:13 83:25 85:7 86:20 86:25 87:1 87:9 88:2 93:14 93:16 93:22 97:18 98:1 99:23 100:5 139:17 140:10 141:9 170:9 171:8 244:17
**are**(164) 12:6 12:8 12:10 12:23 13:22 15:14 15:23 16:5 17:10 17:25 18:2 18:2 18:6 18:20 19:13 19:14 19:17 19:17 21:1 24:19 26:8 28:1 28:11 28:14 28:16 28:21 31:7 31:9 34:18 36:5 36:22 40:21 41:22 46:9 46:17 50:11 50:12 50:12 50:21 55:15 56:6 56:8 58:20 58:22 58:23 58:25 59:7 59:3 60:14 60:21 64:13 70:12 86:19 89:7 89:2 91:3 106:20 108:10 112:5 119:1 119:23 124:14 124:19 124:19 126:11 129:17 129:20 132:11 140:13 140:25 141:9 143:4 143:15 143:15 144:16 144:19 146:22 148:3 149:24 151:6 153:10 156:6 157:7 157:10 157:11 157:15 157:15 157:16 157:22 157:22 157:22 158:1 158:12 159:3 162:10 164:17 164:20 167:6 171:20 176:21 177:1 178:12 183:9 185:12 185:19 187:8 188:5 188:16 189:10 189:13 193:11 194:23 194:24 196:10 196:16 196:22 197:10 199:23 200:3 203:15 203:17 203:18 204:10 206:5 207:1 210:14 211:11 212:5 215:3 215:3 215:23 218:3 221:2 223:12 224:4 224:16 226:9 229:16 229:19 230:14 230:14 230:16 230:19 231:1 231:4 231:10 232:3 232:9 234:25 235:7 235:8 236:17 237:22 237:22 239:8 240:13 241:23 241:2 242:18 242:19 243:17 243:19 243:20 244:14

**area**(2) 67:9 240:9
**areas**(3) 180:8 180:10 183:15
**aren't**(1) 149:15
**argued**(1) 96:25
**argues**(1) 18:24
**arguing**(3) 84:3 107:13 168:21
**argument**(2) 202:22 203:6
**arguments**(5) 107:13 107:15 108:24 205:15 205:19
**arise**(2) 205:4 205:16
**arising**(1) 202:15
**arm**(1) 79:18
**arm's**(3) 13:5 14:7 14:10
**arms**(2) 152:12 153:12
**around**(5) 69:13 73:2 79:4 91:9 115:5 118:12 178:22 184:18 232:20
**arps**(1) 7:12
**arrangement**(5) 18:21 180:20 180:22 180:24 236:19
**arrowgrass**(1) 11:21 11:21
**article**(7) 202:2 202:3 202:3 204:22 216:14 220:20 220:23
**articles**(1) 179:9
**articulate**(1) 223:16

**articulating**(1) 221:25
**articulation**(2) 242:9 242:11
**ascent**(1) 215:4
**ashby**(1) 2:46
**ashish**(2) 7:37 112:10
**ashley**(2) 3:37 5:6
**aside**(3) 50:24 77:24 80:9
**ask**(46) 15:8 15:24 16:8 17:6 21:19 22:12 33:2 33:7 33:11 33:23 34:12 34:14 41:22 58:22 68:1 68:15 68:21 68:21 69:3 72:20 77:22 80:1 86:9 102:16 102:20 103:21 106:25 109:10 122:17 122:25 123:25 126:25 133:1 139:18 152:18 159:24 163:1 166:13 169:11 181:22 204:11 231:14 240:18 244:24 245:1 245:8
**asked**(40) 18:19 27:3 29:3 31:15 32:8 32:8 40:12 46:23 58:9 59:1 61:25 71:4 71:23 73:25 78:21 81:17 102:23 108:24 112:25 125:23 127:1 128:2 128:20 131:4 134:18 136:6 140:4 151:25 170:8 170:12 170:15 170:25 171:2 182:17 182:20 192:1 194:9 219:19 227:2 237:14
**asking**(16) 29:14 33:25 51:8 102:14 124:4 124:7 135:5 140:23 160:11 160:20 162:18 217:23 228:20 228:21 228:24 242:23
**aspect**(1) 158:23
**aspects**(3) 143:13 145:13 182:6
**asserted**(2) 30:24 66:9
**assertions**(2) 182:21 199:3
**assess**(3) 38:7 91:13 163:3
**assessment**(4) 71:1 157:3 157:18 157:19
**asset**(5) 7:43 7:44 195:6 209:16 211:23
**assets**(8) 184:22 185:22 189:22 189:22 236:10 236:17 241:8 241:23
**assiduously**(2) 52:1 87:18
**assigned**(2) 155:24 162:12
**assigning**(1) 47:14
**assignment**(1) 31:10
**associated**(3) 37:4 37:23 154:17
**assume**(7) 82:5 91:7 91:17 112:14 212:9 214:24 234:3
**assumption**(7) 28:3 28:4 32:13 39:18 39:21 194:23 196:1
**assumptions**(29) 17:12 17:15 24:3 24:19 28:10 30:25 31:7 31:23 32:3 32:10 32:18 33:15 33:16 33:17 35:3 35:13 39:2 39:23 39:25 40:1 45:24 48:5 50:11 50:21 63:6 63:7 138:6 138:10
**assured**(1) 123:12
**asylum**(1) 4:29
**atamian**(1) 9:34
**attached**(5) 54:12 54:16 91:11 92:1 116:8 166:21 166:25
**attachment**(1) 167:1
**attempt**(1) 132:20
**attempting**(4) 43:25 64:12 66:17 79:22
**attempts**(1) 61:11
**attended**(3) 54:3 118:15 173:16
**attention**(4) 65:1 113:23 116:23 217:2
**attorney**(1) 176:16
**attorney's**(1) 68:11
**attorney/client**(2) 68:10 138:7
**attractive**(1) 206:21
**attributed**(1) 165:17
**audible**(2) 22:8 169:20
**august**(23) 58:11 60:7 60:19 60:23 60:23 61:19 61:23 62:10 94:15 94:17 95:9 95:11 95:19 95:22 96:15 96:22 97:12 125:25 127:2 127:25 128:21 167:18 167:20

**aurelius**(116) 2:37 7:20 7:21 12:20 12:26 13:18 13:21 18:3 18:4 18:6 18:7 19:1 20:15 22:21 23:17 25:7 26:4 29:5 40:19 40:22 41:1 43:19 44:6 51:1 52:19 54:24 55:12 57:6 57:14 58:16 60:14 60:24 64:7 64:8 64:13 65:8 66:2 67:7 68:14 69:9 69:17 70:24 76:7 76:8 76:17 77:3 77:25 80:10 81:13 81:17 81:22 82:14 82:24 89:18 89:24 90:22 93:8 94:14 95:19 95:21 95:24 96:15 97:9 98:8 98:24 99:25 101:5 101:17 101:19 104:18 104:22 105:1 107:13 108:18 110:11 112:15 113:9 114:24 115:7 116:24 119:2 119:4 119:6 119:16 119:24 120:19 121:5 122:5 122:22 123:9 124:25 125:12 133:3 134:23 135:20 142:8 146:14 146:24 165:12 165:14 165:25 167:18 167:19 168:3 172:1 172:5 173:12 177:25 186:13 186:15 186:21 186:23 210:18 210:18 237:19 243:19

**aurelius's**(1) 54:25
**aurelius'(5)** 105:24 106:15 107:10 117:17 119:4
**austin**(6) 1:23 3:17 6:4 125:25 127:2 182:9
**author**(1) 169:8
**authoritative**(1) 223:7
**authorized**(8) 191:6 191:17 192:20 193:13 228:4 234:24 235:7 235:9
**available**(3) 96:17 97:1 150:5
**ave**(1) 1:36
**avenue**(4) 2:10 2:48 3:6 4:16
**avoid**(1) 233:14
**avoidance**(27) 15:21 24:2 37:4 37:23 38:22 49:10 49:17 55:23 55:24 56:7 56:24 59:7 60:18 61:8 61:9 61:24 62:9 62:13 62:13 64:1 64:2 65:18 65:22 69:15 69:17 75:11 78:23
**avoided**(5) 37:3 37:22 55:18
**avoiding**(1) 229:1
**aware**(25) 81:21 85:5 85:10 89:24 90:3 90:4 97:13 98:5 115:6 115:21 116:24 124:14 124:24 151:2 154:5 158:21 159:3 162:10 165:14 215:1 215:22 215:23 215:24 221:1 221:5
**awful**(2) 221:10 221:21
**back**(42) 15:23 16:25 17:2 17:4 17:17 22:3 27:11 37:16 37:19 44:20 60:9 68:7 70:25 72:4 81:1 93:8 94:22 102:2 102:7 103:2 116:2 118:9 126:18 126:19 144:23 150:19 154:11 154:23 167:13 171:17 172:23 173:11 173:23 175:12 189:19 190:11 199:10 199:15 201:4 218:25 222:23 223:3
**background**(2) 178:3 181:13
**bad**(7) 208:12 213:10 219:25 220:5 231:2 238:14 242:2
**baiera**(1) 5:33
**balances**(1) 215:13
**bale**(1) 4:43
**bang**(1) 70:6
**bank**(11) 5:36 5:42 8:7 8:11 8:27 8:27 9:9 129:2 132:19 160:8 171:10
**bankrupt**(1) 231:6
**bankruptcy**(20) 1:1 1:19 13:3 19:20 28:20 88:22 92:11 97:2 151:3 151:6 151:18 186:22 206:16 208:15 214:13 214:17 236:19 237:9 239:10 243:10
**banks**(3) 17:25 20:9 21:1 87:4 106:1 106:8 129:21 157:7 163:11 163:12 209:11 210:8 210:11
**bar**(18) 15:1 156:25 157:14 158:11 158:13 158:22 158:25 159:1 159:4 159:7 159:12 159:15 159:17 159:23 160:3 160:23 160:24 161:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**barclays**(3) 3:4 9:23 9:23
**bare**(1) 208:18
**barin**(2) 136:21 137:2
**baron**(20) 24:8 26:1 26:16 27:2 27:4 29:1 29:2 29:4 30:11 30:12 31:9 32:21 33:1 33:2 33:9 33:10 34:17 35:7 35:11 35:21

**baron's**(6) 22:22 24:4 27:12 27:16 30:12 35:17

**barone**(2) 244:4 244:20
**barone's**(1) 245:19
**barron**(9) 155:14 155:24 162:10 162:19 163:3 163:8 163:18 164:1 164:21

**barron's**(3) 155:13 162:25 164:15
**barrone**(1) 139:4
**base**(1) 164:22
**based**(16) 16:22 17:8 26:21 26:24 31:3 54:25 117:7 138:12 143:5 143:8 155:21 155:23 162:10 165:16 187:13 238:6

**basic**(1) 24:7
**basically**(6) 31:25 33:13 40:2 138:4 139:16 167:22

**basics**(1) 179:14
**basis**(20) 13:5 13:13 14:7 29:9 30:15 30:23 51:7 57:17 134:11 152:12 153:12 153:12 160:10 170:19 220:7 231:19 236:6 239:24 241:3 241:20

**bates**(1) 22:15
**bear**(6) 76:14 77:11 77:15 78:19 121:9 245:13

**bears**(1) 92:2
**beat**(1) 109:16

**became**(9) 59:14 90:3 101:5 106:16 108:10 132:23 150:8 168:13 178:24

**because**(105) 13:7 14:6 14:13 16:11 18:20 19:21 20:16 23:25 25:23 30:18 31:2 31:12 32:15 33:3 33:10 33:15 34:4 34:13 35:1 35:4 35:5 35:8 35:10 35:13 35:14 35:17 35:19 35:22 40:25 41:7 41:15 43:18 44:20 45:6 45:20 50:15 62:17 74:2 76:11 77:8 78:5 82:24 83:9 84:14 93:12 99:11 102:8 103:16 104:1 107:3 108:23 109:20 109:22 120:3 130:6 133:23 138:6 139:14 142:15 142:25 149:24 152:11 152:19 153:12 154:13 158:24 159:21 164:5 168:2 171:1 181:7 191:7 192:25 195:10 195:25 197:2 199:5 202:12 202:25 203:2 203:17 204:19 208:8 208:14 209:9 210:6 217:16 219:21 222:12 223:24 226:8 226:21 227:23 228:3 228:9 230:3 230:7 230:11 231:8 234:18 235:6 237:22 242:17 242:21

**become**(2) 56:14 187:22
**been**(61) 13:25 15:3 20:20 20:24 26:13 31:1 31:1 31:2 36:1 39:8 40:13 45:13 47:2 51:2 52:1 52:24 54:7 54:11 54:14 54:21 57:13 66:13 67:6 67:16 71:4 81:17 87:14 89:9 94:20 101:12 102:23 106:9 108:15 108:15 109:3 117:9 127:16 128:13 130:9 130:21 135:15 135:17 135:19 138:1 140:4 140:18 153:13 153:23 153:23 157:2 157:18 172:16 172:18 172:24 178:20 180:15 182:15 185:23 188:22 194:20 230:7

**before**(37) 1:18 20:5 44:15 46:22 63:5 68:1 70:9 71:24 82:13 85:11 85:14 90:1 91:22 92:23 93:12 100:23 101:1 101:12 112:2 121:21 126:5 126:17 136:10 136:12 138:23 167:19 168:13 169:23 194:20 203:16 205:10 216:2 241:22 244:13 244:24 245:9 246:17

**began**(1) 132:22

**begin**(1) 140:9
**beginning**(4) 52:17 57:21 171:25 180:2
**behalf**(6) 25:19 81:4 115:7 177:25 237:24 238:8

**behind**(9) 19:6 33:3 55:6 67:16 74:23 91:19 104:3 111:8 175:8

**being**(27) 15:18 21:5 28:13 31:17 36:10 57:12 63:13 66:3 78:4 87:18 101:18 103:23 103:24 114:14 115:5 118:3 136:14 145:8 157:7 157:23 171:2 180:21 190:13 213:17 222:5 234:19 236:12

**belief**(1) 145:12
**beliefs**(1) 170:20
**believe**(34) 14:4 15:3 16:1 41:10 42:1 44:4 45:7 46:25 53:5 54:13 58:8 58:9 65:16 65:25 84:20 88:13 88:16 101:23 103:1 105:3 109:10 114:11 121:4 131:17 134:13 145:8 161:4 167:25 176:8 178:22 183:10 240:24 241:16 243:18

**believed**(9) 40:17 41:1 41:7 75:3 75:13 76:8 89:10 121:5 219:16

**believes**(3) 103:7 160:21 196:5
**below**(1) 58:20
**ben**(1) 9:24
**bench**(3) 80:16 111:8 115:25
**bendernagel**(16) 1:24 53:19 117:4 138:16 138:17 138:20 140:11 141:10 141:13 169:5 244:12 244:16 246:5 246:13 246:16 246:19

**bendernagel's**(2) 117:7 140:1
**beneficiaries**(22) 184:23 185:10 187:3 187:11 187:15 187:16 187:18 198:18 199:18 209:16 210:14 211:21 237:25 238:5 238:9 242:8 242:10 242:14 243:8 243:15 243:17 243:21

**benefit**(10) 49:17 61:5 209:8 209:9 210:5 210:6 211:3 211:18 241:24 242:8

**benefits**(1) 49:10
**benefitting**(1) 38:21
**benjamin**(2) 2:5 81:3
**benson**(2) 2:29 9:37
**berkshire**(1) 206:18
**bernard**(1) 188:22
**bernie**(1) 223:8
**bernstein**(1) 2:6
**berry**(1) 7:28
**best**(4) 102:23 157:21 199:2 200:15
**better**(8) 35:1 80:22 95:20 142:9 148:16 148:19 226:9 244:21

**between**(24) 13:14 40:18 40:22 52:18 53:4 69:9 70:3 70:23 91:3 100:11 110:11 113:5 114:24 125:4 139:1 150:17 166:4 173:12 173:21 180:21 180:24 181:10 229:5 231:2

**beyond**(8) 66:22 99:12 128:8 128:14 143:18 159:7 194:5 228:5

**bible**(1) 177:2
**bifferato**(1) 2:22
**big**(3) 48:2 79:7 129:23
**bigelow**(1) 10:44
**bigger**(3) 20:16 20:17 69:24
**billion**(24) 16:23 17:3 17:5 17:16 39:16 48:2 55:8 56:7 56:7 56:21 69:21 69:22 70:13 76:12 77:10 78:15 78:17 78:24 79:7 150:17 150:23 150:23 156:11 156:20

**billions**(1) 70:11

**binder**(30) 17:7 17:13 21:15 22:13 38:16 52:8 52:12 52:14 52:24 54:10 58:5 60:9 65:10 67:15 73:20 74:21 74:23 83:15 83:17 83:19 94:9 110:20 112:1 171:17 173:3 183:19 183:24 188:24 201:6 213:4

**binders**(3) 177:10 212:25 213:1
**bingham**(1) 9:9
**bit**(10) 17:20 43:10 62:8 143:20 154:3 189:20 190:12 203:8 228:22 229:2

**black**(32) 27:14 27:14 33:6 33:6 37:11 180:5 180:9 188:22 192:4 193:4 194:14 197:11 197:20 198:21 199:4 200:18 200:2 205:15 205:21 207:6 207:11 208:12 208:21 209:2 210:22 210:24 211:7 212:8 212:12 223:8 239:17 240:7

**black's**(15) 36:20 182:20 189:4 190:10 193:25 197:18 197:25 200:20 201:2 201:2 202:22 203:6 205:18 207:9 208:25

**blame**(1) 162:6
**blanket**(1) 42:14
**block**(1) 205:23
**blocked**(1) 57:23
**blocking**(3) 209:9 210:6 210:9
**blocks**(2) 32:1 57:8
**blow**(1) 31:22
**board**(80) 3:11 7:11 10:29 17:23 17:25 18:1 18:2 18:6 18:8 18:19 18:22 19:13 20:8 20:9 186:9 186:9 186:12 186:20 186:24 187:1 188:11 191:8 191:18 191:22 192:22 193:3 194:8 194:22 194:25 195:5 195:12 195:13 195:16 196:1 196:4 196:7 196:9 196:11 196:13 196:17 196:17 197:1 197:2 197:6 197:22 199:6 200:23 204:6 204:9 209:15 219:23 220:3 220:4 220:10 226:15 226:23 226:24 227:5 227:6 227:21 228:4 228:11 229:7 229:9 229:12 229:17 230:21 230:22 231:24 232:5 233:9 233:12 233:25 237:18

**bob**(1) 2:15
**boccassini**(1) 9:20
**bohan**(1) 10:6
**bondholder**(2) 83:2 172:7
**bondholders**(3) 58:17 59:4 60:3
**bonds**(1) 172:1
**bonds'**(1) 83:3
**book**(2) 143:2 179:7
**books**(1) 179:6
**both**(22) 13:8 30:1 56:24 56:25 65:18 70:2 70:8 76:2 85:11 103:11 132:11 134:2 138:5 146:4 150:7 152:9 173:6 181:7 187:13 190:9 222:2 240:9

**bottom**(6) 55:14 60:15 84:15 99:20 113:24 200:19

**bought**(1) 108:4
**bound**(1) 56:14
**bounds**(1) 137:17
**box**(4) 31:22 31:22 55:14 112:18
**boxes**(1) 112:19
**brad**(1) 10:32
**brainpower**(3) 134:5 134:7 134:8
**branch**(2) 24:5 24:6
**brass**(1) 11:18
**breach**(3) 161:12 161:16 164:3 201:13 202:19 212:6 219:10 220:18 220:24 221:12 221:20 223:1 223:11

**breached**(1) 223:22
**breaches**(6) 201:17 201:18 201:19 202:23 220:19 225:10

**breaching**(1) 222:10

**break**(11) 71:10 72:4 73:10 73:19 107:9 135:23 136:8 138:23 139:17 141:21 169:23

**brett**(1) 6:13
**brian**(2) 8:45 223:9
**brickley**(1) 10:36
**brief**(5) 18:23 18:24 28:19 136:13 245:23
**briefly**(5) 28:24 144:24 150:11 160:17 184:12

**brigade**(2) 8:22 8:23
**bright**(1) 228:18
**bring**(4) 124:11 136:7 139:13 238:21
**bringing**(1) 139:1
**broad**(1) 57:18
**broader**(1) 77:22
**broadway**(1) 2:33
**brodsky**(18) 23:14 47:6 47:10 53:5 54:3 60:25 75:3 75:12 90:23 91:8 91:25 92:15 114:4 116:4 166:19 173:16 173:17 174:20

**brodsky's**(2) 61:5 165:21
**brodsky's**(1) 74:13
**bromberg**(1) 5:47
**brought**(5) 28:21 225:21 236:13 237:22 237:24

**brown**(3) 4:27 5:46 9:29
**bryan**(1) 6:15
**bryant**(1) 2:42
**buck**(1) 70:6
**buffet**(4) 206:15 206:20 208:6 208:13
**building**(1) 57:8
**bullet**(2) 58:15 96:24
**bunch**(3) 22:15 39:24 116:3
**buonamo**(1) 3:12
**burden**(1) 118:25
**burdensome**(2) 224:10 225:20
**burgo**(1) 2:31
**busch**(1) 174:21
**bush**(5) 3:44 5:16 54:6 90:22 91:8
**business**(18) 14:2 20:12 100:11 100:18 171:12 178:16 178:25 193:19 207:5 213:24 214:21 214:24 215:14 216:1 217:16 219:15 233:23 241:17

**businesses**(2) 214:4 215:19
**businessmen**(2) 214:2 214:8
**busy**(1) 232:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**but(202)** 13:3 16:13 17:11 25:12 27:6 27:18 28:20 31:16 31:24 32:20 32:22 32:25 33:8 33:14 34:1 35:12 35:14 36:6 36:8 38:25 41:5 42:8 42:14 44:17 44:25 46:22 47:2 48:1 48:4 49:13 50:5 51:13 51:18 54:13 55:2 56:8 57:3 57:5 57:22 68:8 68:22 70:3 70:11 71:11 72:25 73:8 76:13 77:1 77:14 78:9 82:9 83:5 85:3 85:22 85:24 86:23 88:16 89:11 89:13 91:19 93:6 94:10 94:13 94:21 95:2 95:8 99:15 100:10 100:14 101:1 101:19 103:22 104:7 105:11 107:1 107:16 107:23 109:17 110:25 112:19 114:3 114:13 114:19 115:1 116:20 118:9 118:11 118:15 118:25 119:2 120:6 121:9 122:5 122:9 122:17 123:11 123:25 127:24 130:16 133:14 135:11 135:22 136:14 137:5 137:7 137:13 138:22 139:6 139:17 140:4 140:18 143:15 143:19 143:22 144:7 144:12 148:11 149:14 149:24 150:2 150:22 151:9 152:8 152:16 153:2 153:8 153:19 154:20 154:22 156:21 157:9 158:8 159:3 160:1 160:1 161:3 162:10 162:18 162:19 163:8 164:23 165:3 165:22 167:7 168:3 168:24 171:2 177:15 181:6 187:20 190:1 191:23 193:8 193:18 198:17 200:2 201:19 203:19 204:16 206:18 206:24 207:16 209:4 210:18 211:2 211:15 212:17 212:20 213:1 214:18 214:24 216:3 216:5 216:5 216:12 216:21 218:10 219:22 220:2 222:14 223:12 223:15 224:1 224:10 224:14 224:23 226:4 228:6 228:14 228:15 228:25 231:1 231:7 234:24 235:9 236:16 237:17 239:1 240:13 242:11 242:20 246:9

**buy(7)** 19:22 146:14 146:24 189:22 206:10 207:2 223:5

**buyer(2)** 206:10 206:12
**buyers(1)** 206:15
**bylaws(3)** 191:3 202:5 202:7
**bynum(1)** 7:5
**cabined(1)** 206:8
**calculate(1)** 156:17
**calculated(1)** 54:24
**calculation(1)** 28:14
**calculations(1)** 16:21
**calculator(1)** 24:11
**calendar(2)** 100:22 105:21
**call(26)** 20:21 32:7 32:14 49:4 49:5 49:14 93:11 94:21 96:4 97:25 111:24 118:10 118:11 121:18 132:24 140:21 142:8 144:1 165:8 169:10 169:12 172:18 172:22 174:22 244:3 244:23

**called(7)** 19:6 25:25 89:21 121:17 179:7 180:5 181:2

**calling(3)** 63:21 130:18 176:22
**calls(1)** 164:23
**came(14)** 36:2 32:17 34:15 41:16 46:23 71:22 83:6 85:12 85:14 85:18 86:1 86:12 86:17 86:22 87:9 88:2 89:1 89:15 94:4 124:16 167:15 167:20 193:17 193:25

**campanario(1)** 7:14

**can(129)** 16:15 16:15 17:2 17:6 18:4 18:21 20:11 20:13 21:15 21:24 22:18 23:2 26:3 26:6 26:20 27:5 27:16 28:21 29:14 30:12 30:25 36:18 37:12 37:19 38:16 39:2 42:16 47:2 47:23 53:9 55:2 57:1 57:9 58:14 60:9 63:2 72:14 76:6 79:25 80:18 91:7 97:6 97:15 99:13 102:23 107:9 107:15 112:14 117:19 120:21 125:18 131:3 133:12 136:7 143:2 143:24 146:20 148:12 160:16 161:2 169:22 175:14 175:1 176:23 178:2 182:14 184:5 184:12 185:1 186:3 186:7 186:17 187:4 187:6 188:3 188:16 189:1 190:8 193:15 193:21 195:25 196:7 196:13 197:5 197:15 197:24 198:2 199:9 199:16 200:13 201:16 201:20 204:6 204:7 204:11 205:17 206:3 207:15 208:9 208:10 208:21 212:3 216:4 216:24 217:22 218:21 221:16 224:13 224:14 224:25 227:23 230:24 231:17 231:23 231:23 233:25 236:5 237:16 238:20 238:21 241:3 241:20 242:13 243:4 245:8 245:21 245:23 245:25

**can't(28)** 26:8 32:11 32:15 33:3 33:14 35:2 35:17 35:18 55:5 66:7 151:8 156:25 159:10 159:19 160:2 160:6 163:21 165:2 165:21 165:23 166:6 197:3 197:6 219:10 221:12 221:24 224:4 242:21

**candidates(2)** 18:7 201:1
**canlon(1)** 1:28
**cannot(4)** 30:22 31:9 32:24 201:17
**cantor(1)** 5:37
**canyon(1)** 10:9
**can't(7)** 77:5 87:15 87:15 101:20 125:18 133:25 135:4

**capabilities(3)** 133:16 133:22 134:21
**capability(1)** 134:20
**capable(3)** 102:5 102:7 103:1
**capacity(4)** 21:11 88:14 89:14 179:25
**capital(25)** 4:41 4:41 7:20 7:21 8:18 8:19 8:22 8:23 8:39 8:40 9:4 9:4 9:23 9:43 9:44 10:18 10:18 10:20 10:20 11:21 21:10 56:13 99:25 113:16 177:25

**care(11)** 201:17 201:20 209:5 220:18 220:19 222:7 222:10 222:13 222:22 223:1 223:22

**career(1)** 180:3
**careful(4)** 39:11 47:1 104:6 109:10
**carey(2)** 1:18 21:18
**caridas(1)** 5:17
**carl(1)** 231:5
**carol(1)** 4:43
**carroon(1)** 4:4
**carry(1)** 102:2
**carrying(1)** 102:7
**carve(4)** 203:11 224:2 225:24 226:1
**carve-out(1)** 201:24
**carved(1)** 221:3
**carves(1)** 221:19
**case(77)** 1:5 9:48 13:6 28:20 34:7 46:9 46:20 69:22 76:13 80:11 81:8 81:25 82:3 82:10 82:13 85:6 89:21 93:23 95:6 95:8 96:17 97:14 97:18 98:6 98:15 99:17 101:21 102:6 103:11 107:16 109:3 121:11 129:3 129:17 130:19 132:18 132:22 133:1 135:6 135:15 135:16 138:25 139:9 139:15 139:16 139:20 140:3 140:6 143:17 145:10 145:18 151:6 151:10 153:18 158:13 158:1 158:24 159:4 167:17 169:5 181:2 181:2 182:16 187:16 188:22 195:17 197:4 197:4 222:4 222:25 223:21 226:9 227:22 238:21 244:17 244:18

**case''(1)** 108:3

**cases(12)** 12:21 26:6 27:6 27:25 28:16 153:24 158:18 180:16 180:19 181:17 205:3 223:14

**cases.''(1)** 97:2

**case''(1)** 108:3
**cash(11)** 13:20 20:25 21:4 21:6 21:8 181:5 185:2 234:2 235:19 235:21 235:23

**catch(1)** 82:4
**caught(1)** 82:8
**cause(7)** 194:17 197:10 198:12 200:1 212:19 218:13 240:25

**causes(9)** 13:11 19:14 119:10 146:13 152:13 154:1 197:11 223:23 223:24

**causing(2)** 208:11 231:2
**caution(1)** 23:5
**centerbridge(32)** 82:13 83:7 84:7 85:1 85:7 85:10 85:25 86:20 87:1 87:4 87:8 87:11 87:17 88:1 88:6 88:11 88:13 88:24 89:4 89:9 89:12 92:25 94:1 98:14 100:19 101:4 105:25 106:16 170:8 170:12 170:16 171:5

**centerbridge's(2)** 170:20 171:1
**centerbridge's(5)** 82:20 83:4 83:12 83:21 98:24

**central(1)** 67:7
**cents(11)** 147:4 147:7 148:19 148:21 148:22 148:23 148:24 149:16 149:17 149:18 149:18

**ceo(3)** 18:1 18:21 195:12
**ceo's(2)** 213:19 213:22
**certain(19)** 14:1 24:2 26:22 27:15 30:2 40:14 46:3 61:7 80:7 100:6 100:7 109:11 114:15 134:19 146:19 167:23 192:5 203:1 246:15

**certainly(18)** 27:9 28:20 48:4 52:13 68:23 73:3 73:5 89:13 93:3 93:15 114:19 133:1 151:10 157:18 192:24 218:15 233:19 236:16

**certainty(5)** 214:1 214:6 214:21 214:23 214:25

**certificate(13)** 183:11 190:15 191:2 192:18 193:7 198:3 198:5 198:7 201:15 202:18 235:11 235:12 235:15

**certification(1)** 247:2
**certify(1)** 247:3
**cetera(9)** 33:6 99:24 103:19 122:20 125:15 152:6 152:8 152:9 152:19

**chad(1)** 9:11
**chadbourne(5)** 3:31 5:5 123:1 134:4 175:1
**chain(5)** 42:11 66:25 99:20 114:12 125:4
**challenge(4)** 49:1 49:23 78:21 107:22
**chance(10)** 51:2 56:24 65:17 134:23 136:13 143:22 166:10 166:16 203:24 246:11

**chandler(1)** 10:44
**chaney(1)** 10:10
**change(11)** 43:24 48:5 49:22 79:18 114:2 127:12 128:4 129:1 194:21 232:18 239:2

**changer(1)** 167:15
**changes(1)** 190:22
**chapter(3)** 1:7 12:21 13:6
**characteristic(1)** 223:18
**characterization(1)** 19:9
**charge(3)** 129:11 132:3 238:11
**chart(14)** 17:11 17:12 17:14 17:15 111:23 115:17 135:11 156:21 156:22 157:5 161:2 162:5 162:24 163:4

**charter(39)** 20:11 190:19 190:21 191:13 191:16 191:22 192:1 193:5 193:8 193:12 194:21 196:2 197:22 199:9 200:12 200:25 201:5 201:7 201:8 201:22 201:23 201:24 202:23 203:11 203:12 203:23 205:9 216:14 217:20 218:13 222:15 224:2 225:17 228:3 228:17 234:25 235:7 235:9 237:10

**charters(3)** 201:10 220:17 221:6
**chase(2)** 8:7 8:11
**check(4)** 38:16 72:4 203:15 216:21
**checked(1)** 44:21
**checks(1)** 215:13
**cheffins(1)** 223:9
**chicago(5)** 1:30 3:14 3:21 10:24 10:25
**chief(1)** 140:6
**choice(2)** 57:24 196:4
**choose(2)** 12:26 18:22
**chose(1)** 36:24
**christine(1)** 9:38
**chung(2)** 5:43 33:19
**circuit(1)** 28:17
**circumstance(4)** 208:17 220:6 231:7 234:21
**circumstances(4)** 142:22 187:6 206:25 208:11

**citibank(1)** 6:38
**city(1)** 181:8
**claim(4)** 31:13 77:15 159:18 159:19
**claimed(1)** 68:11
**claims(88)** 13:44 14:12 20:25 26:22 28:7 38:8 38:11 43:20 44:1 44:5 45:8 46:16 47:12 47:15 54:25 56:6 62:21 68:4 76:9 76:15 76:15 76:18 77:9 77:11 77:16 77:18 78:2 78:10 78:14 78:17 78:18 78:19 82:14 87:18 88:18 97:10 123:4 146:15 146:25 147:20 148:4 151:5 151:6 153:12 153:14 154:17 155:16 156:4 156:6 156:9 156:18 156:24 157:1 157:4 157:17 157:1 157:19 157:21 158:24 159:5 159:13 160:4 160:8 160:23 160:24 161:1 161:12 163:3 163:7 163:14 163:19 164:4 164:9 164:10 172:19 186:1 186:2 198:20 199:21 217:19 237:22 237:22 238:14 238:22 239:4 241:6

**claire(1)** 10:45
**clarification(1)** 139:10
**clarified(2)** 217:23 244:16
**clarify(1)** 120:21
**clarity(10)** 139:14 216:9 224:13 224:14 224:25 225:13 225:14 225:15 225:21 244:15

**class(52)** 38:21 83:2 147:2 150:6 150:8 185:4 188:5 188:6 188:8 188:17 190:12 190:16 190:21 190:23 191:1 191:4 191:16 191:8 191:11 191:11 191:12 191:13 191:14 191:16 191:23 191:25 192:1 192:9 192:16 192:20 192:25 193:1 193:3 193:10 193:16 194:9 194:9 194:10 194:13 194:15 194:22 196:2 196:2 211:8 219:21 227:22 227:24 228:6 228:10 231:1 238:4 238:6

**classes(1)** 28:8
**classic(1)** 238:1
**clause(2)** 216:16 217:15 218:8 220:8
**clayton(1)** 180:18
**clear(19)** 26:5 26:23 62:5 74:17 74:19 101:3 124:19 143:6 154:18 168:12 169:3 204:13 209:14 217:24 222:16 225:18 225:18 226:13 237:6

**clearly(5)** 27:12 69:23 136:24 191:7 228:8
**clerk(5)** 12:3 80:20 177:1 177:4 177:9
**client(5)** 85:1 85:3 87:14 110:2 167:7
**clients(1)** 40:16
**clip(2)** 151:13 151:14
**clock(1)** 73:2
**close(3)** 128:19 152:1 153:4
**closer(4)** 84:16 181:23 181:24 194:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| cmo(1) 72:21 | | company(36) 1:7 6:22 7:4 10:35 11:17 11:17 13:13 16:7 16:23 17:1 19:5 20:11 21:7 21:12 100:5 100:7 116:10 151:2 151:17 157:19 194:5 194:7 195:5 197:5 208:9 214:17 219:25 222:1 227:19 227:20 232:14 232:17 233:2 233:6 234:6 236:6 | | consider(5) 48:20 55:13 71:12 75:19 148:14 157:8 | | cooperate(32) 197:22 198:12 198:14 198:21 198:23 199:7 199:13 200:2 200:13 203:12 203:22 203:25 204:7 217:6 218:12 218:14 219:5 219:11 219:14 220:24 221:8 221:18 222:2 224:3 224:10 224:11 224:12 224:24 225:11 225:16 225:19 226:3 |
| co-author(1) 179:7 | | | | consideration(5) 34:16 78:12 137:15 157:8 | | |
| cobb(2) 3:24 5:20 | | | | consideration(5) 34:16 78:12 137:15 | | |
| code(1) 243:10 | | company's(2) 20:3 20:7 | | considerations(1) 137:10 | | cooperating(2) 199:24 204:5 |
| cole(1) 1:33 | | comparativ(1) 179:8 | | considered(2) 20:5 51:17 | | cooperation(26) 197:21 199:8 199:17 |
| collaboratively(2) 123:12 175:9 | | comparatively(1) 70:4 | | considering(1) 205:12 | | 202:21 202:23 203:21 204:5 204:8 204:11 |
| colleague(1) 234:12 | | compare(1) 147:15 | | consistent(4) 27:2 234:16 239:22 243:8 | | 204:12 205:9 216:16 216:18 217:25 218:8 |
| colleagues(2) 30:15 45:18 | | compete(1) 215:7 | | consistently(2) 164:17 164:20 | | 219:5 219:18 220:8 221:22 222:17 224:18 |
| collect(1) 223:9 | | competent(5) 28:15 45:22 45:25 46:2 | | consolidation(1) 215:6 | | 225:23 226:6 226:10 226:14 226:17 |
| collecting(1) 217:18 | | competition(1) 181:9 | | constituents(1) 243:11 | | |
| collective(1) 34:18 | | competitors(2) 190:5 192:11 | | constituted(1) 155:9 | | |
| colleen(1) 1:26 | | compilation(2) 25:3 25:4 | | constraints(3) 88:16 141:6 200:10 | | |
| collins(1) 2:9 | | complaining(1) 204:4 | | construct(3) 13:25 46:15 212:3 | | cooperatively(1) 123:13 |
| colloquially(1) 15:19 | | complaint(9) 38:5 38:8 38:9 38:11 38:14 | | constructive(2) 79:12 158:9 | | cooperstown(2) 9:43 9:44 |
| colloquy(5) 36:1 40:5 40:11 41:13 136:12 | | 38:16 38:23 115:2 115:4 | | consulting(1) 181:19 | | copied(3) 53:7 112:6 114:3 |
| combination(1) 185:2 | | | | consume(1) 141:8 | | copies(1) 52:12 |
| combining(1) 79:10 | | complete(9) 13:5 20:12 31:10 55:21 56:24 | | consummat(1) 205:2 | | copy(1) 133:2 |
| come(22) 19:20 27:22 28:5 30:8 33:9 | | 97:19 97:23 142:19 227:13 | | consummation(3) 13:19 16:19 205:4 | | copying(4) 90:23 99:22 116:4 117:24 |
| 33:10 46:21 47:6 47:10 53:2 57:9 139:7 | | | | contact(5) 108:12 109:10 114:24 115:1 | | core(1) 226:5 |
| 148:16 151:6 157:3 157:17 163:6 184:8 | | completed(3) 140:14 230:4 244:9 | | 126:7 | | corporate(39) 17:21 179:4 179:4 179:6 |
| 193:15 204:6 228:8 230:4 | | completely(5) 19:3 63:4 74:15 81:19 96:19 | | | | 179:8 179:8 179:9 179:10 179:18 179:18 |
| | | complicated(2) 216:7 242:17 | | contacts(4) 94:14 128:4 213:23 213:25 | | 179:20 179:24 180:1 180:7 180:10 180:20 |
| comes(7) 136:22 151:20 151:25 152:1 | | complying(1) 204:10 | | contain(3) 25:2 28:12 38:11 | | 180:22 181:13 181:14 181:20 181:20 182:5 |
| 153:4 194:12 245:24 | | components(1) 55:12 | | contained(4) 54:10 69:4 158:21 202:5 | | 182:18 182:22 183:5 183:14 183:14 |
| | | comport(1) 111:16 | | containing(1) 91:12 | | 196:23 197:13 201:9 207:21 213:19 214:13 |
| coming(5) 76:1 165:20 202:13 214:17 | | compromise(1) 185:25 | | contains(2) 52:8 52:15 | | 215:13 216:14 222:4 222:11 223:18 235:9 |
| commence(1) 52:20 | | concede(1) 148:20 | | contemplate(1) 13:8 | | |
| commencemen(1) 244:25 | | conceding(1) 42:14 | | contemplated(3) 20:25 184:10 240:25 | | |
| comment(2) 134:7 190:10 | | concern(4) 197:10 197:11 205:14 211:6 | | contemplating(1) 97:18 | | corporation(14) 191:18 198:10 198:11 |
| commented(1) 171:2 | | concerned(4) 83:9 181:8 208:3 208:4 | | content(2) 224:24 225:15 | | 201:12 202:7 202:8 202:9 202:20 215:14 |
| comments(1) 40:14 | | concerning(8) 40:15 40:19 41:12 65:1 | | contention(1) 107:10 | | 218:14 220:15 221:2 222:8 228:5 |
| commit(1) 175:8 | | 65:4 66:18 77:18 142:7 | | context(5) 133:10 159:20 193:5 193:9 | | |
| committee(125) 3:10 3:23 5:4 7:10 10:29 | | | | 219:19 242:20 | | corporation's(3) 191:3 202:5 202:13 |
| 36:2 39:15 39:24 40:9 40:12 40:14 40:15 | | concerns(4) 40:20 207:6 208:22 210:22 | | | | corporations(4) 179:4 179:14 201:11 |
| 40:18 41:1 42:10 43:23 45:14 48:16 50:2 | | conclave(5) 89:20 90:2 91:22 | | continental(5) 181:3 181:5 181:7 181:11 | | |
| 51:18 52:18 55:13 58:11 59:5 60:2 60:7 | | conclude(1) 155:8 | | 181:16 | | correct(225) 24:17 24:19 43:17 43:22 |
| 60:19 60:22 61:6 61:19 62:13 62:10 62:16 | | concludes(1) 209:7 | | | | 48:17 49:21 54:5 55:20 57:20 60:8 60:13 |
| 66:16 66:16 66:21 67:3 68:13 68:1 72:5 | | conclusion(12) 14:1 65:20 75:4 75:9 75:14 | | continued(10) 2:2 3:2 4:2 5:2 6:2 7:2 8:2 | | 61:14 62:19 62:22 63:24 65:12 69:16 |
| 69:9 70:18 72:5 72:12 73:17 75:25 76:3 | | 79:1 162:1 182:25 183:3 183:4 183:4 183:8 | | 9:2 10:2 11:2 | | 74:25 77:24 78:8 78:9 79:16 80:9 80:9 |
| 76:8 76:16 77:3 77:19 78:7 78:9 78:25 | | 217:21 | | | | 81:14 81:24 82:14 82:22 83:21 85:8 85:12 |
| 78:25 79:2 79:5 79:24 80:3 83:1 83:10 | | | | continues(1) 71:25 | | 87:4 87:5 88:3 88:7 88:11 88:22 88:25 |
| 89:18 89:25 95:14 96:1 96:2 96:6 96:22 | | conclusions(19) 14:15 34:14 47:7 50:10 | | contract(2) 18:1 205:6 | | 89:5 89:10 92:9 92:18 93:2 93:9 93:17 |
| 97:17 97:25 104:19 110:11 112:5 | | 51:1 56:23 57:9 61:5 69:10 75:22 75:22 | | contracts(2) 179:16 200:6 200:11 | | 95:6 95:13 95:15 95:25 96:4 96:7 96:9 |
| 112:15 113:3 114:7 114:14 114:15 114:21 | | 71:1 97:20 97:24 121:10 161:19 161:23 | | contrarian(2) 8:39 8:40 | | 96:18 96:19 97:14 98:9 98:12 98:15 98:19 |
| 114:25 115:1 118:16 118:20 119:11 119:16 | | 162:11 183:17 | | contrary(3) 202:2 202:11 238:19 | | 99:3 99:6 100:24 101:6 101:10 104:20 |
| 120:2 120:4 120:5 120:10 120:13 120:16 | | | | contribution(3) 159:5 160:4 160:8 | | 105:12 105:15 106:2 106:1 106:9 106:19 |
| 121:4 122:18 122:25 123:8 123:8 124:15 | | conducted(2) 103:17 109:1 | | control(11) 18:25 19:12 180:25 181:11 | | 112:20 113:7 113:21 114:22 114:23 115:8 |
| 124:20 133:7 134:2 134:24 157:19 171:20 | | conducting(1) 42:12 | | 181:16 182:22 206:12 207:7 207:12 207:1 | | 117:1 117:18 118:12 118:17 118:18 118:22 |
| 171:22 172:11 172:15 172:19 172:22 173: | | confer(1) 141:18 | | 217:11 | | 119:19 119:20 119:22 120:3 121:6 121:14 |
| 173:12 173:17 173:17 174:1 174:15 176:5 | | conference(2) 172:18 244:22 | | | | 121:22 122:4 122:7 122:21 123:22 124:3 |
| 243:9 243:12 | | conferences(2) 179:21 179:25 | | controlled(3) 20:8 20:9 108:11 | | 124:12 124:16 125:1 125:9 125:12 125:13 |
| | | confess(1) 71:14 | | controlling(11) 205:17 205:23 206:5 206:8 | | 127:8 127:11 129:8 129:12 129:18 129:25 |
| committee's(1) 43:12 | | confident(2) 84:16 153:25 | | 206:19 206:20 208:5 208:6 208:8 208:10 | | 131:15 131:21 131:23 131:25 132:9 145:3 |
| committee."(1) 119:5 | | confidentiality(1) 100:4 | | 208:12 | | 145:14 145:21 145:22 146:1 146:6 146:17 |
| committees(1) 71:1 | | confirm(1) 139:24 | | | | 146:22 147:1 147:3 147:5 147:9 147:13 |
| committee's(7) 119:15 121:13 122:6 122:9 | | confirmation(7) 16:9 84:17 84:18 84:21 | | controversies(1) 205:3 | | 148:1 148:7 148:11 149:6 149:19 150:1 |
| 122:13 122:24 133:19 | | 89:8 118:9 185:17 | | convenient(1) 71:10 | | 150:20 151:1 151:4 154:7 154:25 155:4 |
| | | | | conversation(14) 64:16 85:20 85:24 91:7 | | 155:19 156:1 156:4 156:5 156:12 156:20 |
| common(22) 19:19 41:2 41:8 42:7 42:12 | | conflict(2) 13:17 13:23 | | 94:5 94:16 94:19 94:20 116:8 116:18 | | 158:7 158:16 158:20 158:21 161:3 161:17 |
| 114:16 185:4 187:12 187:25 188:5 188:6 | | conflict(3) 209:21 211:16 212:4 | | 224:8 225:2 229:5 233:8 | | 162:9 162:12 165:9 165:12 165:17 166:1 |
| 188:8 188:17 190:13 190:16 190:23 191:1 | | conflicted(2) 211:5 211:20 | | | | 167:2 171:24 173:8 174:12 209:24 211:7 |
| 191:12 192:20 192:20 198:19 199:19 | | conflicts(3) 198:24 211:25 212:1 | | conversations(17) 85:17 85:25 86:12 86:16 | | 213:20 213:24 214:2 214:9 214:15 214:22 |
| | | confuse(1) 199:6 | | 103:22 104:5 126:1 127:3 127:13 127:15 | | 215:2 215:7 215:11 215:21 215:24 216:2 |
| communicat(1) 121:21 | | confusion(1) 29:23 | | 128:10 130:6 130:21 138:13 138:21 170:2 | | 216:7 216:8 216:13 216:16 217:19 218:4 |
| communicated(4) 114:8 121:13 121:16 | | conlan(1) 116:19 | | 170:22 | | 218:8 219:12 219:13 219:18 220:2 220:14 |
| 124:25 | | connection(7) 21:18 21:19 32:8 94:21 | | convert(3) 187:17 187:21 187:24 | | 220:18 220:21 220:22 220:24 220:25 221:4 |
| | | 175:3 184:7 205:4 | | converted(1) 187:7 | | 221:13 222:22 225:6 225:11 226:22 |
| communicating(2) 60:25 115:3 | | | | convertible(2) 195:7 209:17 | | 226:25 227:1 227:24 228:7 228:23 229:3 |
| communication(10) 66:11 68:13 111:11 | | conrad(1) 208:12 | | converting(1) 206:11 | | 232:1 232:2 232:6 232:15 232:22 234:15 |
| 117:6 118:2 125:2 126:9 126:12 174:15 | | consensual(1) 84:21 | | convey(2) 78:5 134:24 | | 234:22 235:24 236:3 236:10 236:12 236:22 |
| 175:21 | | consensus(1) 84:5 | | conveyance(6) 56:9 56:15 79:12 79:13 | | 239:14 240:7 240:12 247:3 |
| | | consent(11) 72:23 195:17 226:22 226:22 | | 154:17 155:3 155:25 158:9 | | |
| communication(7) 40:18 65:1 67:2 69:8 | | 226:23 227:4 227:22 227:23 229:1 232:4 | | | | corrected(1) 33:19 |
| 93:12 114:8 117:16 | | 236:2 | | conveying(2) 103:2 162:1 | | correctly(4) 85:23 108:9 109:4 219:24 |
| | | conservatism(1) 50:14 | | convinced(1) 195:16 | | correspondence(4) 42:11 110:11 111:2 |
| companies(4) 19:20 151:5 215:6 215:10 | | conservative(3) 50:13 50:21 63:6 | | coolness(2) 85:19 86:11 | | 121:10 |
| | | | | | | cosponsored(1) 12:20 |
| | | | | | | cost(1) 217:7 |

| Word | Page:Line |
|------|-----------|
| costs(2) 189:6 184:14 | |
| could(132) 13:4 15:24 24:5 27:18 29:25 30:1 30:1 31:8 31:22 32:13 32:13 33:2 33:7 33:9 33:11 34:15 38:7 39:25 39:25 42:19 46:12 46:17 46:25 49:3 52:23 53:1 56:9 58:5 60:3 62:5 67:14 67:19 69:2 71:11 71:24 74:19 77:1 81:1 83:15 83:23 94:8 96:20 96:23 97:7 99:16 100:14 106:12 107:8 107:21 110:16 110:17 110:22 111:14 111:22 111:25 112:18 113:9 115:12 118:24 122:1 122:11 123:16 124:5 125:3 126:14 128:17 131:4 133:20 135:23 135:24 136:19 137:3 137:4 137:25 138:2 138:3 141:1 141:16 141:17 142:18 149:10 149:16 151:17 153:20 157:14 161:11 162:7 164:14 164:15 166:3 166:9 167:13 171:17 175:11 189:25 190:18 190:20 191:7 191:17 192:6 194:15 196:14 197:8 198:23 205:9 205:23 207:13 208:15 208:17 208:18 209:7 209:10 210:5 210:7 211:2 212:3 216:3 217:9 217:11 225:5 225:21 228:18 230:16 230:17 230:18 230:22 232:22 233:15 233:22 233:22 234:5 235:1 | |
| couldn't(1) 64:5 | |
| counsel(47) 31:3 32:12 32:16 32:19 33:3 33:18 35:5 35:15 40:8 40:13 40:15 42:11 51:18 52:18 58:22 61:4 63:5 65:7 65:13 66:21 68:14 69:10 70:18 72:22 80:3 81:21 83:12 86:9 89:19 89:25 92:16 96:6 96:8 105:14 111:3 114:7 114:21 120:21 122:24 122:25 123:9 138:11 138:13 138:22 172:1 213:22 224:15 | |
| counsels(1) 213:19 | |
| counsel'(1) 114:8 | |
| count(3) 38:18 38:24 39:1 | |
| counterparties(1) 200:6 | |
| counts(2) 38:14 61:19 | |
| couple(6) 15:17 42:5 54:2 73:17 122:8 192:13 | |
| couri(1) 9:45 | |
| course(14) 33:9 40:25 63:3 68:10 84:4 93:19 108:21 142:16 151:7 179:14 192:22 194:12 213:10 245:10 | |

| Word | Page:Line |
|------|-----------|
| court(264) 1:1 12:4 12:6 12:10 15:17 16:1 16:11 16:17 16:22 17:7 18:3 21:17 22:6 22:9 23:3 23:9 25:10 25:13 25:16 26:19 27:25 27:25 28:9 28:24 29:11 29:16 29:22 29:25 30:17 31:11 33:23 34:2 34:4 34:23 35:21 36:11 36:17 37:14 37:19 37:20 39:6 39:11 40:6 40:10 41:18 41:22 41:23 42:4 42:14 42:19 42:22 43:3 51:10 51:13 51:23 52:4 52:11 52:13 57:11 57:13 57:20 59:22 62:3 62:6 64:19 64:23 66:8 66:12 67:6 68:19 68:24 71:2 71:4 71:13 71:18 71:21 72:14 72:1 72:14 72:14 72:20 73:3 73:5 73:14 80:4 80:17 80:20 80:24 82:16 83:2 84:3 84:25 85:4 86:5 87:21 87:23 90:11 97:14 97:22 98:6 102:21 104:10 104:13 104:16 105:4 105:7 105:9 106:5 106:11 106:13 107:4 107:7 107:19 107:24 108:6 108:8 109:1 109:5 109:7 109:12 109:14 109:18 109:20 109:22 110:5 110:5 110:25 111:3 111:6 115:22 117:8 117:12 118:25 123:18 127:19 130:10 131:2 131:9 134:13 135:25 136:4 136:7 137:7 137:16 137:24 138:3 138:14 138:16 138:19 139:2 141:3 141:19 141:23 142:1 142:25 142:7 142:4 142:12 143:3 144:5 144:7 144:12 144:15 144:19 144:21 151:11 152:12 152:25 153:17 155:7 160:10 160:13 160:15 160:18 161:9 168:8 168:9 168:19 168:21 169:1 169:3 169:11 169:18 169:21 169:25 170:4 171:14 175:16 176:13 176:15 176:17 176:22 176:25 177:12 177:17 177:19 178:2 178:7 178:10 181:22 182:1 182:3 182:7 182:10 183:25 184:2 184:12 184:21 184:24 185:9 186:13 186:18 186:22 187:11 187:14 188:7 204:8 204:11 204:12 204:14 204:23 206:9 206:16 207:23 208:15 211:13 212:7 212:22 213:5 213:8 213:11 217:23 218:19 222:7 224:13 226:12 227:12 231:18 231:21 236:19 237:9 239:11 240:4 240:18 240:21 242:13 243:23 243:25 244:7 244:8 244:11 244:14 244:22 245:6 245:10 245:13 245:11 246:1 246:4 246:11 246:15 246:17 246:20 246:21 | |
| court's(4) 29:17 34:16 39:3 185:17 | |
| courtney(1) 8:28 | |
| courtroom(2) 1:9 244:23 | |
| courts(1) 223:15 | |
| court's(3) 137:7 140:2 140:7 | |
| cover(2) 91:14 166:9 | |
| covered(4) 9:29 202:13 203:1 218:8 | |
| crack(1) 142:22 | |
| create(9) 24:1 44:17 149:8 214:20 214:24 228:17 238:10 238:25 241:14 | |
| created(11) 22:21 29:3 29:4 29:5 29:23 56:18 165:11 165:15 167:18 167:18 205:7 | |
| creates(2) 78:23 220:23 | |
| creating(3) 30:16 145:2 221:9 | |
| creative(1) 119:14 | |
| credit(1) 5:24 | |
| creditor(10) 147:15 147:17 148:12 148:12 149:19 149:20 149:22 149:23 154:14 243:11 | |
| creditors(71) 3:24 5:5 13:24 14:5 16:25 19:19 21:9 28:8 28:11 32:2 34:19 37:5 37:24 49:10 49:16 58:11 59:5 60:8 61:23 62:10 62:16 63:20 64:11 65:2 65:8 65:13 73:17 76:3 77:18 78:7 78:9 78:13 78:25 83:1 83:9 84:19 89:25 95:21 96:16 96:17 96:22 97:1 104:19 112:15 114:6 114:21 114:25 118:16 118:20 119:1 146:5 146:6 146:11 146:19 147:5 147:8 147:13 147:19 149:4 150:6 150:7 152:11 152:11 152:15 153:10 153:16 154:15 154:25 162:17 198:7 243:9 | |
| creeping(1) 70:25 | |
| crisis(4) 223:3 223:4 223:23 223:24 | |

| Word | Page:Line |
|------|-----------|
| critical(2) 108:10 202:19 | |
| critically(1) 222:12 | |
| criticism(2) 14:17 161:3 | |
| criticisms(1) 40:20 | |
| critique(1) 193:25 | |
| cross(15) 31:24 40:6 41:6 41:24 41:24 42:3 43:6 169:18 173:6 174:14 212:24 213:6 213:13 240:19 248:2 | |
| cross-examination(3) 141:18 144:17 171:3 | |
| crowd(1) 224:4 | |
| crystal(1) 222:16 | |
| current(6) 46:12 191:24 196:10 227:8 | |
| currently(7) 18:21 84:19 178:12 191:9 194:24 208:1 208:2 | |
| curt(1) 18:11 | |
| curtain(1) 19:6 | |
| customary(1) 200:25 | |
| cut(3) 50:22 63:14 63:16 | |
| cutler(1) 5:25 | |
| damage(1) 205:11 | |
| damages(11) 201:13 204:3 219:12 220:18 221:13 221:24 222:9 223:23 225:12 225:1 238:24 | |
| dan(5) 1:27 114:4 116:4 151:15 248:3 | |
| dangers(1) 217:16 | |
| daniel(5) 2:39 3:26 5:37 5:39 10:47 | |
| danny(2) 83:20 116:18 | |
| danny's(1) 116:8 | |
| data(9) 1:42 25:3 25:4 27:15 27:16 30:2 31:6 34:15 99:11 | |
| date(12) 13:13 99:7 99:15 109:11 115:12 116:15 116:24 117:11 173:12 198:9 202:1 247:8 | |
| dated(6) 53:11 67:21 99:23 112:4 166:19 183:23 | |
| dates(2) 99:10 110:21 | |
| david(11) 2:40 3:18 3:32 4:22 6:25 7:39 9:40 10:12 12:13 93:16 182:8 | |
| davis(8) 2:4 6:39 8:7 25:19 81:3 129:17 132:9 132:11 | |
| day(24) 3:11 7:17 10:29 27:11 53:19 53:20 112:21 113:3 115:11 115:15 115:17 117:6 120:6 123:15 125:1 126:12 138:23 144:9 172:19 172:22 172:23 174:16 176:1 175:4 157:1 159:4 161:3 161:11 166:3 166:9 244:14 | |
| day-and-a-hall(1) 103:23 | |
| days(6) 54:2 100:12 100:18 101:1 173:20 173:22 | |
| dbtca(1) 4:20 | |
| dcf(1) 133:24 | |
| dcl(46) 13:9 13:14 14:17 16:8 18:23 19:16 19:24 40:9 52:25 53:9 54:11 54:20 58:5 61:10 60:20 65:10 67:8 67:17 74:22 78:3 81:4 94:14 96:21 103:25 118:24 122:23 133:2 135:2 135:20 142:15 147:20 148:3 148:18 148:17 149:17 149:19 150:1 154:5 154:5 157:1 159:4 161:3 161:11 166:3 166:9 244:14 | |
| dead(1) 109:17 | |
| deal(26) 33:4 153:11 176:9 195:18 195:21 197:5 197:7 219:25 229:17 229:21 230:9 230:12 230:18 230:20 230:21 230:24 231:1 231:19 232:11 232:19 232:21 232:25 233:1 233:10 234:20 239:21 | |
| dealing(1) 29:18 | |
| deals(10) 164:12 171:12 215:9 215:12 231:4 231:5 233:1 233:7 242:1 242:2 | |
| dealt(1) 153:13 | |

| Word | Page:Line |
|------|-----------|
| dearborn(2) 1:29 3:20 | |
| debate(2) 21:10 33:23 | |
| debbie(2) 2:41 | |
| debenture(3) 2:22 9:37 84:7 | |
| deborah(1) 177:24 | |
| debt(5) 15:18 21:11 32:4 61:21 69:22 | |
| debtor(7) 66:6 72:5 72:11 89:18 124:15 124:20 134:24 | |
| debtor-committee-lende(1) 161:5 | |
| debtor-committee-lender(1) 147:18 | |
| debtors(24) 1:11 1:23 14:7 18:19 20:21 21:11 21:12 28:6 39:15 39:24 95:10 113:2 115:7 116:10 116:19 133:5 133:12 134:3 172:17 182:9 217:4 217:5 217:7 217:11 | |
| debtors-in(1) 116:10 | |
| debtors'(1) 93:20 | |
| december(7) 89:19 90:1 91:8 91:9 91:22 92:21 93:8 | |
| decibel(1) 84:18 | |
| decide(1) 234:6 | |
| decided(5) 85:3 89:3 99:9 | |
| decides(2) 124:11 194:4 | |
| deciding(1) 236:1 | |
| decision(5) 24:4 27:16 29:6 222:20 233:13 | |
| decision-making(1) 231:12 | |
| decisions(4) 25:24 26:4 29:5 31:3 | |
| declaration(1) 21:25 22:3 22:4 248:13 | |
| decline(2) 215:2 215:3 | |
| decrease(1) 212:13 | |
| decreases(2) 191:14 191:17 | |
| decreasing(1) 195:20 | |
| deeper(1) 51:11 | |
| defendant's(1) 238:13 | |
| defendants(15) 38:20 159:5 161:19 161:24 163:4 163:20 171:11 180:18 238:15 238:17 238:21 238:24 239:3 239:12 242:18 | |
| defending(1) 238:22 | |
| defense(20) 44:15 44:25 48:14 48:18 48:24 49:3 49:4 49:8 49:11 49:14 50:4 50:16 51:22 74:1 74:7 74:9 74:10 75:15 75:21 181:9 | |
| defenses(9) 44:5 44:7 44:8 45:24 47:12 48:10 51:21 157:15 158:1 | |
| defined(1) 198:20 | |
| degree(1) 50:14 212:20 | |
| degrees(1) 203:18 | |
| delaware(17) 1:2 1:11 1:36 2:48 12:2 139:1 198:24 200:8 201:11 220:14 220:16 221:1 221:6 222:8 222:11 222:20 223:18 | |
| delay(1) 235:25 | |
| deliberation(2) 68:9 68:13 | |
| deliver(1) 102:12 | |
| demand(1) 227:20 | |
| demo(1) 6:5 | |
| demonstrate(2) 66:17 96:25 | |
| demonstrativ(10) 94:8 94:10 94:15 126:7 126:11 155:22 174:11 175:11 175:25 177:11 | |
| demonstratives(1) 177:14 | |
| denied(4) 29:10 97:22 123:18 130:10 | |
| dennis(8) 2:9 23:19 45:18 90:21 99:21 112:4 117:24 166:18 | |
| department(2) 179:1 180:16 | |
| dependent(2) 146:12 211:23 | |
| depending(3) 15:17 16:17 189:23 | |
| depends(4) 234:23 235:4 236:14 236:16 | |
| depose(1) 30:11 | |
| deposed(3) 72:7 136:16 167:7 | |

| Word | Page:Line |
| --- | --- |

**deposition**(37) 23:23 27:3 29:3 29:14 30:19 31:5 32:9 34:8 35:20 72:9 72:15 73:9 81:6 82:23 88:5 90:4 92:7 93:16 122:11 136:6 138:4 142:6 142:13 142:16 146:8 149:3 151:14 151:15 152:1 168:17 169:8 193:17 193:24 202:11 218:17 233:1 239:7
**depositions**(1) 168:16
**depress**(1) 219:17
**derivative**(1) 238:5
**derived**(1) 79:11
**describe**(5) 55:22 97:9 99:10 184:12
**described**(11) 50:5 59:5 60:2 60:18 61:23 62:10 62:15 63:20 132:20 135:9 194:14
**describing**(3) 50:16 54:7 54:21
**description**(3) 109:7 114:6 120:19
**designated**(1) 36:2
**designations**(1) 168:17
**designed**(2) 44:16 184:16
**desires**(1) 187:14
**despite**(3) 93:6 107:10 130:15
**destroying**(1) 219:25
**detail**(4) 77:1 160:2 203:8 225:22
**detailing**(3) 183:17
**determination**(2) 16:12 143:7
**determine**(4) 15:17 137:9 137:14 159:10
**determined**(4) 17:3 24:6 36:23 184:21
**determining**(1) 107:19
**deutsch**(1) 3:38
**deutsche**(1) 9:9
**dev**(12) 17:3 17:9 17:16 150:12 150:18 150:22 150:24 151:3 151:9 151:18 152:10 153:9
**develop**(3) 181:14 182:17 182:23
**developed**(1) 114:8
**developments**(2) 214:9 214:14
**devote**(1) 137:18
**diamond**(1) 11:14
**diaz**(1) 1:42
**dictate**(2) 236:22 237:13
**did**(93) 12:26 14:21 20:6 23:14 24:10 24:11 32:22 32:24 32:25 33:7 33:11 33:1 33:14 35:12 35:14 36:7 36:19 38:2 39:18 44:18 45:1 46:1 46:2 50:15 63:10 68:15 68:17 72:21 75:4 76:16 76:20 81:25 82:2 85:1 85:14 93:15 95:8 96:6 97:9 98:21 98:22 104:18 108:23 108:25 112:3 113:2 113:5 114:16 116:22 119:19 121:21 122:5 122:25 123:3 123:9 125:20 126:2 127:4 127:12 127:25 128:6 132:15 132:23 132:2 135:8 135:14 135:16 154:15 154:15 155:20 160:2 161:3 163:18 165:1 166:10 166:11 166:16 166:17 167:7 170:22 172:2 174:1 174:7 175:2 176:4 178:6 180:2 180:8 183:7 194:17 217:2 218:12 234:15

**didn't**(24) 16:10 16:12 21:4 21:8 21:10 28:4 29:4 35:12 38:7 42:6 44:25 47:18 48:22 50:15 57:2 61:4 146:2 146:11 149:1 163:3 166:13 205:14 213:11 240:4

**didn't**(23) 73:6 74:2 74:12 74:15 75:18 77:12 78:13 82:4 82:24 84:25 85:3 97:16 101:20 108:12 111:25 112:21 122:5 123:1 130:17 133:21 134:9 134:23 163:18

**difference**(5) 13:10 30:9 30:10 196:18 196:19
**different**(33) 13:14 21:9 28:8 28:10 28:11 38:24 39:1 45:24 45:24 46:4 47:6 47:10 47:21 58:17 59:3 60:21 77:14 97:4 97:5 114:15 122:19 124:21 139:18 164:21 164:25 165:3 168:5 190:20 191:19 210:19 226:18 227:2 243:20
**differently**(2) 62:8 237:15

**difficult**(8) 41:19 50:18 137:16 157:2 157:17 219:2 223:5 225:2
**dilemma**(1) 29:17
**dilute**(7) 191:7 228:14 228:15 228:16 228:18 228:21 229:2
**diplomacy**(2) 103:6 103:14
**direct**(32) 12:7 12:15 40:11 41:13 43:11 44:3 44:10 44:23 45:11 48:15 51:16 55:9 58:3 58:10 59:13 66:23 68:6 68:15 72:4 73:16 87:16 112:3 113:23 135:9 140:5 173:6 176:24 177:21 186:10 217:2 243:4 248:2
**direction**(3) 50:23 141:17 186:19
**directly**(2) 85:7 133:13
**director**(3) 179:23 201:11 201:14 202:8 202:9 202:14 202:17 202:20 205:12 217:5 222:9 224:17 225:3
**directorial**(1) 218:16
**directors**(72) 3:11 7:12 18:13 20:10 185:6 188:16 190:14 190:18 191:18 191:19 191:20 191:23 191:25 192:3 192:23 193:3 193:11 193:14 194:24 196:10 196:12 196:17 198:11 198:12 198:25 199:23 200:2 200:4 200:14 200:22 201:16 203:4 203:13 210:23 211:1 211:1 211:9 213:19 213:21 218:7 218:11 219:3 219:7 219:22 220:4 220:7 220:17 221:11 221:18 221:21 222:1 222:7 222:21 222:25 223:2 223:5 223:8 223:10 223:16 223:20 223:22 223:2 224:1 224:9 224:16 225:8 227:8 227:17 227:19 228:4 228:21
**disadvantage**(3) 145:17 190:4 192:10
**disagree**(4) 28:2 28:3 36:6 239:14
**disagreement**(1) 87:13
**disagreements**(3) 196:22 231:17 231:24
**disallowance**(6) 60:4 61:10 62:17 62:21 62:24 63:8
**disappears**(1) 230:3
**disastrous**(1) 196:1
**disclosed**(1) 41:4
**disclosure**(10) 15:25 16:3 16:17 17:22 28:6 31:6 84:17 125:17 125:19 126:9
**disconnect**(1) 30:17
**discount**(1) 212:19
**discover**(1) 29:9
**discovery**(10) 23:20 26:13 40:25 42:18 52:16 99:9 99:11 109:2 113:20 137:11
**discretion**(2) 103:5 103:7
**discus**(1) 128:1
**discuss**(8) 89:21 117:17 123:3 126:2 127:4 141:20 172:19 246:10
**discussed**(19) 37:2 37:21 39:15 72:3 80:8 91:4 92:2 114:14 119:16 120:2 120:16 120:16 135:15 142:16 173:6 232:7 241:24 241:22 244:12
**discussing**(2) 114:21 226:12
**discussion**(15) 42:7 74:14 79:3 79:3 79:5 120:4 125:14 126:20 126:23 128:22 140:5 141:4 142:19 166:23 224:19
**discussions**(8) 79:22 80:2 92:16 93:8 108:14 114:15 120:5 120:6
**disgorgement**(9) 37:4 37:23 56:7 65:18 69:15 69:19 70:1 70:7 70:9
**dispute**(6) 69:20 82:12 108:17 108:18 151:5 205:8

**disputed**(7) 30:6 108:16 151:7 186:1 186:2 198:20 199:20
**disputes**(4) 107:19 146:22 205:4 232:3
**disqualification**(3) 123:6 123:14 175:4
**disqualify**(2) 123:1 174:25
**dissolved**(2) 198:10 241:8
**dissuade**(3) 203:3 203:12 203:14
**dissuaded**(1) 203:20
**distinguished**(3) 62:22 178:16 178:23
**distressed**(1) 19:21
**distributable**(2) 124:22 152:14
**distribute**(3) 17:2 185:9 185:18
**distributed**(7) 16:15 16:19 19:15 20:17 133:11 153:15 241:8
**distributing**(2) 185:21 213:2
**distribution**(146) 17:4 17:8 17:17 18:5 19:11 19:13 20:16 148:15 150:19 151:3 151:19 152:3 153:6 154:2 183:12 184:9 184:13 184:15 184:22 184:23 184:25 185: 185:5 185:8 185:12 185:14 185:20 186:5 186:8 186:8 186:11 186:11 186:18 186:2 186:24 186:25 187:1 187:5 187:7 187:8 187:10 187:15 187:17 187:18 187:20 187:20 187:25 188:4 188:6 189:24 190:1 192:7 195:2 195:5 195:13 195:16 195:24 196:6 196:8 196:17 197:23 197:24 198:8 198:15 198:15 198:18 198:22 199:19 200:24 202:24 204:25 205:22 207:7 207:1 207:17 208:22 209:7 209:23 210:14 210:20 210:24 210:25 212:12 215:20 216:19 217:1 217:8 217:9 217:12 217:13 217:17 218:2 218:3 219:16 219:16 219:23 220:3 220:10 220:10 222:2 224:21 226:11 226:16 226:24 227:5 229:6 229:8 229:9 229:16 230:3 230:6 230:13 230:22 231:8 231:12 231:24 232:4 232:18 233:9 233:12 236:8 236:9 236:15 236:15 236:17 236:24 237:10 237:16 237:20 237:23 237:25 241: 241:7 241:10 241:11 241:16 241:23 242:7 242:25 243:1 243:2 243:5 243:7 243:15 243:21
**distributions**(11) 65:21 65:21 69:25 70:5 70:13 70:19 148:14 185:16 185:19 198:17 199:18
**distributive**(1) 202:4
**district**(1) 1:2
**diverseness**(1) 203:19
**division**(4) 180:15 181:8 181:18 206:14
**divulging**(1) 32:12
**dla**(1) 3:4
**document**(45) 21:16 21:21 22:13 22:19 22:23 23:11 23:15 23:24 23:25 24:5 25:10 27:21 28:16 31:22 39:4 53:2 53:9 54:19 56:5 57:5 58:10 58:14 60:10 64:9 64:14 64:15 67:15 67:20 70:20 72:15 74:23 79:20 91:17 96:23 99:17 99:20 111:25 112:3 113:18 113:20 117:4 117:23 205:6 213:3
**documents**(10) 41:3 41:17 42:9 52:8 52:15 52:21 57:2 183:9 183:13 237:16
**does**(40) 15:1 15:2 15:9 15:11 16:8 16:10 22:23 23:11 23:13 25:1 25:6 28:12 33:12 33:12 38:11 48:23 50:1 69:7 74:4 74:11 75:10 111:16 111:21 116:14 124:2 125:3 153:21 158:4 158:5 159:16 175:25 187:21 192:25 193:19 197:10 214:20 216:17 235:23 237:17 237:20
**doesn't**(17) 16:11 26:23 63:15 145:17 149:22 159:13 160:21 161:2 161:12 193:2 207:3 210:8 221:22 224:18 225:2 234:3 235:17
**doesn't**(4) 73:6 74:14 101:19 149:23

**disputed**(7) 30:6 108:16 151:7 186:1 186:2 198:20 199:20
**doing**(10) 27:17 102:5 103:1 153:23 171:9 200:4 206:22 209:10 210:7 222:15
**dollar**(3) 27:24 33:17 147:8
**dollars**(5) 27:19 32:18 35:4 35:4 70:11 157:9
**don**(1) 6:27
**don't**(73) 13:10 14:6 14:13 17:10 19:11 25:11 26:2 26:12 26:19 29:19 35:21 42:6 42:12 47:1 49:7 49:13 54:13 57:7 59:1 66:10 67:3 68:17 142:8 149:7 149:12 153:8 159:15 161:18 161:23 162:7 162:14 164:2 164:13 164:23 165:4 167:4 167:8 174:21 177:15 192:12 194:17 195:21 199:5 203:14 204:2 204:3 204:15 206:17 208:17 209:13 209:21 209:24 211:7 211:15 211:24 221:12 221:25 224:10 225:12 226:15 228:15 232:20 232:23 233:1 233:1 233:23 234:23 234:25 235:6 239:17 239:24 241:19 246:8
**donald**(1) 2:6
**done**(13) 40:4 44:15 91:12 164:8 164:9 165:18 165:20 165:22 165:24 180:16 181:19 221:5 223:8
**don't**(74) 72:21 72:24 73:6 75:23 76:22 77:6 79:5 79:8 80:24 81:8 82:22 85:20 86:18 89:11 90:7 91:19 93:10 93:11 94:10 96:19 99:7 99:12 100:6 100:8 101:18 104:15 105:8 105:9 107:12 107:16 107:21 108:16 108:17 112:1 112:19 112:20 113:11 114:17 115:2 116:20 117:20 118:9 118:25 119:23 120:2 120:3 120:6 120:12 122:10 123:24 125:2 126:24 128:4 128:8 128:13 128:19 130:17 133:10 133:17 134:13 134:20 135:11 136:13 137:22 138:25 139:6 139:21 156:23 159:9 160:5 162:5 163:24 164:10 200:12
**door**(6) 40:17 41:8 51:25 79:18 102:16 170:24
**doors**(2) 142:22 171:2
**dorr**(1) 5:26
**doubt**(4) 66:11 140:16 148:16 157:6
**dougherty**(2) 6:30 6:31
**douglas**(1) 3:38
**dow**(2) 10:35 10:35
**down**(19) 39:22 57:21 79:16 80:8 117:11 138:4 168:1 176:18 196:11 196:16 227:9 227:18 228:21 228:24 230:11 231:4 231:5 243:25 246:14
**draft**(2) 116:9 116:15
**drafting**(1) 225:24
**drag**(1) 233:11
**dramatically**(1) 15:22
**drawn**(1) 127:18
**drill**(1) 57:21
**drilling**(1) 79:16
**drive**(4) 32:10 32:18 33:17 35:4
**driven**(1) 111:3
**drivers**(1) 32:22
**dublin**(1) 116:3
**dublin's**(1) 116:21
**due**(3) 21:13 27:22 56:14
**duff**(1) 10:14
**duplicate**(1) 213:1
**during**(10) 46:25 73:10 81:16 84:4 104:19 104:22 105:2 107:17 123:7 141:20
**duties**(23) 187:2 199:6 199:7 200:9 200:9 210:15 211:21 212:5 212:6 222:4 222:12 223:11 224:15 224:16 224:17 224:21 242:5 242:7 242:19 243:3 243:8 243:8 243:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **duty**(54) 161:12 161:16 185:18 198:21 198:23 199:9 200:1 200:12 201:13 201:17 201:18 201:19 202:23 203:11 203:21 203:21 204:10 207:16 209:14 211:22 212: 218:13 219:10 219:14 220:18 220:19 220:23 220:24 221:8 221:17 221:20 222:7 222:10 222:13 222:17 222:17 222:22 223:1 223:11 223:15 223:22 224:3 225:10 225:15 225:19 225:20 225:22 226:3 226:6 226:10 226:14 226:14 226:17 242:22 | | **email**(19) 53:4 53:7 53:10 53:14 54:5 54:13 54:17 55:3 66:25 67:20 67:25 69:2 69:8 166:9 166:10 166:16 166:18 166:25 173:5 **emails**(7) 40:22 41:2 41:12 41:20 52:17 52:20 66:20 **embodied**(2) 124:15 124:20 **emerge**(2) 214:13 214:20 **emerged**(2) 151:3 151:17 **emergence**(2) 17:23 215:11 **employed**(1) 178:12 **employee**(1) 217:5 **employees**(5) 165:15 198:11 198:12 200:1 218:14 **employer**(2) 202:9 **enables**(1) 214:14 **enacted**(1) 222:19 **enactment**(2) 223:6 **encapsulated**(1) 39:1 **encourage**(1) 142:21 **end**(13) 24:5 24:6 32:4 72:4 139:7 139:10 139:15 139:16 139:24 141:3 141:4 144:9 180:4 **ended**(1) 118:3 **enforcement**(1) 205:5 **engaged**(2) 78:3 93:8 **engagement**(1) 180:14 **engagements**(1) 181:20 **english**(2) 4:20 9:19 **enhancing**(4) 231:25 232:19 233:13 242:1 **enlarge**(3) 226:23 226:24 227:5 **enough**(13) 16:25 21:8 21:13 46:8 49:9 59:3 61:14 71:9 71:9 108:19 108:20 109:23 141:4 **enter**(4) 20:4 20:11 183:22 206:6 **entering**(2) 208:5 208:13 **enterprise**(3) 124:22 152:14 212:14 **entertains**(1) 205:1 **entire**(1) 164:12 **entirely**(3) 210:13 225:25 239:22 **entities**(1) 100:1 **entitled**(1) 202:10 **envisioned**(1) 215:15 **eos**(2) 8:31 8:31 **ephraim**(1) 11:14 **equally**(1) 69:14 **equipoise**(8) 65:18 65:20 161:15 162:14 163:9 163:11 163:12 163:14 **equitable**(15) 59:10 60:3 62:16 62:17 62:20 62:20 62:23 62:24 63:7 63:8 63:21 69:10 145:9 145:13 147:13 **equity**(20) 15:7 15:10 19:1 19:12 19:15 19:16 19:20 21:7 171:11 184:19 187:7 195:22 196:24 209:17 209:20 210:10 215:20 229:10 231:9 236:11 **erens**(1) 10:32 **escrow**(1) 21:13 **especially**(2) 71:5 236:6 | | **esq**(126) 1:24 1:25 1:26 1:27 1:28 1:35 2:5 2:6 2:7 2:8 2:9 2:15 2:16 2:23 2:31 2:32 2:38 2:39 2:40 2:41 2:47 3:5 3:12 3:18 3:19 3:25 3:26 3:32 3:33 3:34 3:35 3:36 3:37 3:38 3:44 3:45 3:46 4:5 4:6 4:14 4:15 4:21 4:22 4:28 4:35 4:43 5:6 5:8 5:10 5:12 5:16 5:17 5:21 5:27 5:29 5:33 5:37 5:39 5:43 5:47 5:49 6:5 6:7 6:13 6:15 6:17 6:19 6:23 6:25 6:27 6:31 6:39 6:41 6:43 6:45 6:47 7:5 7:7 7:14 7:18 7:22 7:26 7:28 7:33 7:37 7:39 7:41 7:45 8:8 8:12 8:16 8:20 8:28 8:32 8:36 8:41 8:45 9:5 9:16 9:20 9:26 9:30 9:32 9:34 9:38 9:59 9:42 9:45 9:49 10:6 10:10 10:19 10:21 10:26 10:30 10:36 10:40 10:45 10:47 11:5 11:10 11:14 11:18 11:26 11:30 **essential**(1) 196:6 **essentially**(8) 26:18 179:24 190:16 222:9 222:25 223:12 236:5 242:11 **establish**(2) 64:12 66:20 **established**(6) 25:21 51:22 64:10 70:23 106:9 167:8 **estate**(2) 152:15 157:21 **esther**(1) 5:43 **estoppel**(5) 38:18 59:10 63:21 69:10 92:2 92:6 **ethical**(1) 60:24 **evaluate**(6) 43:25 46:10 46:16 104:11 133:16 133:20 **evaluated**(1) 48:25 **evans**(1) 247:8 **even**(17) 35:1 40:1 48:1 98:11 108:17 123:15 137:17 143:15 193:18 194:16 202:25 211:17 219:10 222:6 230:20 235:10 235:19 **evening**(1) 175:23 **event**(4) 15:21 16:25 30:8 150:5 **eventuate**(1) 203:25 **eventuated**(1) 205:10 **ever**(10) 72:6 73:6 101:12 101:16 126:2 127:4 127:25 130:3 132:15 161:6 **every**(9) 13:9 34:3 59:18 133:1 133:1 214:24 215:13 215:14 223:9 **everybody**(3) 230:17 242:3 242:4 **everyone**(3) 12:4 20:13 20:17 **everything**(6) 32:19 33:15 35:10 35:15 134:5 169:24 **evidence**(7) 22:11 66:7 66:19 168:10 183:22 184:4 245:24 **evidentiary**(1) 143:14 **exactly**(8) 28:25 149:7 149:21 214:23 218:10 222:16 239:4 244:6 **examination**(29) 12:15 34:6 34:10 36:14 40:6 40:11 41:6 41:13 41:20 41:24 41:25 42:3 43:6 45:11 51:16 52:17 52:21 57:22 58:3 58:10 68:6 73:16 169:19 170:5 170:8 177:21 212:24 213:13 240:22 **examine**(4) 30:19 41:17 137:12 182:20 | | **examiner**(66) 14:15 23:12 24:4 39:14 43:14 47:7 47:11 48:25 49:15 49:19 50:5 56:8 61:4 63:7 63:14 74:3 74:4 74:10 75:16 75:17 75:18 75:21 83:6 85:11 85:14 85:18 86:1 86:12 86:16 86:22 87:9 88:2 88:15 88:25 89:12 89:14 97:20 121:16 121:17 142:9 155:6 155:11 155:16 155:21 158:6 161:15 162:1 162:8 162:11 162:13 164:1 164:6 164:16 164:18 164:20 165:2 165:8 165:20 167:15 167:16 167:20 167:21 168:1 168:6 173:7 173:18 **examiner's**(12) 43:20 44:1 45:9 50:10 51:1 55:1 56:23 58:16 69:10 155:2 155:23 161:19 **examiners**(1) 65:14 **examiner's**(7) 75:3 75:9 79:11 94:4 96:25 97:24 121:10 **example**(15) 44:3 47:17 47:19 48:18 49:2 115:2 156:25 190:21 192:14 192:16 193:2 197:12 226:15 226:16 229:15 **examples**(2) 199:14 203:23 **exceeds**(1) 137:16 **excel**(5) 24:12 24:13 24:14 28:7 36:6 **except**(2) 78:7 86:21 **exception**(3) 220:23 221:3 221:9 **excerpts**(1) 67:25 **excess**(1) 181:6 **excessive**(2) 203:18 238:24 **excessively**(1) 226:7 **exchange**(3) 53:4 53:7 65:4 **exchanged**(1) 52:18 **exchanging**(1) 73:1 **exclamation**(1) 226:2 **exclude**(3) 127:13 128:2 128:4 **excluded**(7) 81:13 81:17 81:19 103:23 104:1 104:12 135:1 **excluding**(5) 126:1 127:3 128:23 128:24 135:14 **exclusion**(3) 203:1 203:2 208:24 **exclusively**(2) 25:25 138:12 **exclusivity**(1) 84:6 **exculpate**(2) 201:16 225:9 **exculpated**(3) 201:20 202:24 221:10 **exculpating**(1) 220:17 **exculpation**(2) 221:20 225:25 **exculpatory**(1) 201:9 **excuse**(6) 39:6 150:3 152:17 168:11 222:15 243:2 **executed**(1) 205:7 **exercise**(4) 148:12 149:22 200:8 243:12 **exercised**(5) 73:8 150:2 150:4 150:5 **exercising**(1) 147:16 **exhibit**(31) 22:11 22:14 27:20 40:5 52:25 53:10 54:11 54:20 58:6 64:4 64:6 67:17 72:3 72:3 72:6 72:11 72:17 72:19 73:19 74:21 96:21 117:7 118:24 122:23 166:4 167:5 177:14 183:10 184:4 204:19 204:19 **exhibits**(7) 51:7 58:2 72:12 136:15 177:11 248:11 248:12 **exhort**(1) 223:16 **exist**(1) 103:12 **existence**(1) 241:10 **existing**(1) 18:19 **exists**(2) 224:21 224:23 **exit**(1) 13:3 **expand**(1) 194:5 **expect**(3) 46:5 63:18 139:12 **expectation**(3) 14:11 140:24 206:11 |
| **dynamic**(1) 103:9 **dynamics**(1) 103:11 **e-mail**(25) 74:8 74:13 90:3 90:5 90:21 91:3 91:19 91:21 92:7 93:10 99:20 99:21 110:11 111:2 111:11 112:4 112:6 114:2 114:12 114:13 115:3 116:2 116:21 118:2 125:3 **e-mails**(3) 74:20 110:10 113:8 **each**(9) 28:10 32:1 46:14 103:13 125:16 125:17 142:5 186:14 217:4 **earlier**(8) 48:9 78:22 79:3 110:9 133:19 169:5 175:5 211:12 **early**(4) 50:2 165:19 170:7 245:12 **easier**(2) 29:18 117:21 **easily**(3) 196:7 205:10 217:23 **east**(3) 4:36 11:29 11:29 **easy**(1) 226:8 **economic**(2) 132:18 241:11 **economics**(1) 179:23 **ecro**(1) 1:40 **educated**(1) 31:8 **educational**(1) 178:3 **edward**(5) 176:22 177:3 177:8 183:23 **effect**(13) 40:2 44:8 44:19 44:22 48:23 51:19 66:5 159:12 182:21 207:8 219:21 222:5 234:15 **effective**(4) 13:7 13:12 202:18 239:6 **effects**(3) 45:23 51:21 182:24 **efficacious**(1) 132:24 **efficacy**(1) 107:22 **effort**(8) 37:9 62:19 63:25 221:10 221:15 221:17 221:21 223:15 **egregious**(1) 231:2 **ehmer**(1) 10:21 **eitan**(1) 9:26 **either**(20) 13:6 19:17 19:24 35:8 50:24 72:21 76:6 76:7 76:16 77:3 105:9 133:25 158:25 167:5 174:20 187:12 197:5 202:15 224:5 234:3 **elaborate**(1) 194:18 **elden**(1) 6:30 **eldersveld**(1) 6:25 **elect**(10) 185:5 188:10 190:14 190:18 191:7 192:2 193:2 193:11 193:14 211:8 **elected**(1) 188:17 **electing**(1) 193:14 **electronic**(2) 1:48 247:4 **element**(4) 36:5 74:9 74:11 75:17 **elements**(5) 74:8 75:16 75:19 75:20 163:22 **elicit**(1) 66:1 **eliciting**(1) 67:11 **eliminate**(1) 191:12 **eliminated**(1) 225:8 **eliminating**(3) 191:13 225:5 226:4 **elizabeth**(1) 6:47 **elkins**(1) 8:15 **elliot**(1) 2:8 **else**(10) 46:24 76:7 103:22 164:15 170:22 191:10 231:11 233:24 246:4 246:17 **elsewhere**(2) 202:3 234:6 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**expected(25)** 61:12 62:12 62:20 62:22 63:13 63:17 63:25 77:9 77:11 77:16 77:17 78:18 78:24 119:12 156:17 157:6 163:6 165:16 167:23 174:3 174:8 211:11 212:10 222:1 244:20

**expense(2)** 207:18 217:7

**experience(4)** 29:19 101:17 140:4 229:14

**experienced(1)** 219:2

**expert(32)** 8:35 25:21 26:1 26:8 26:12 26:13 26:18 27:11 28:13 29:2 30:7 30:13 30:22 34:8 36:2 37:9 37:12 51:7 136:25 140:5 143:1 155:14 180:12 180:15 182:5 206:24 207:21 207:21 212:16 212:20 245:21 245:25

**expertise(3)** 30:4 46:5 46:5

**experts(7)** 27:15 28:21 33:4 140:17 143:14 143:15 143:16

**explain(18)** 76:25 77:6 106:5 125:19 159:15 185:11 186:7 186:17 190:8 190:9 193:21 195:3 197:24 206:3 209:14 221:16 241:3 241:20

**explained(5)** 62:1 146:8 149:2 149:25 239:15

**explaining(2)** 91:14 225:21

**explanation(3)** 75:4 75:22 125:22

**explanations(3)** 216:7 216:9 216:12

**explore(7)** 45:7 45:23 48:4 51:20 65:5 138:10 168:9

**exploring(3)** 64:8 107:17 138:5

**exposure(1)** 156:19

**express(2)** 40:19 222:4

**expressed(1)** 87:17

**expressive(1)** 222:5

**extending(1)** 67:4

**extensive(1)** 117:10

**extensively(1)** 142:16

**extent(9)** 33:24 159:18 160:25 164:9 198:25 201:10 212:2 225:12 244:25

**extract(1)** 205:24

**extracting(2)** 236:21 237:12

**extraordinarily(1)** 41:19

**extremely(4)** 104:10 199:22 208:13 223:13

**eye(1)** 208:9

**face(5)** 108:2 108:4 152:12 212:5 212:6

**face-to-face(5)** 103:12 105:25 106:17 129:24 131:17

**faced(1)** 238:15

**faces(2)** 196:4 238:1

**facilitate(2)** 22:21 24:4

**facing(1)** 200:23

**fact(37)** 15:12 18:17 20:13 33:1 40:21 66:17 78:21 79:1 87:8 88:1 89:3 91:7 93:6 104:7 113:19 116:14 116:18 127:15 130:15 136:15 136:16 136:16 139:11 140:17 140:21 140:24 143:8 143:15 143:18 163:1 164:21 180:24 181:15 222:19 225:24 228:11 228:12 230:15

**factors(1)** 22:5

**facts(3)** 26:21 108:17 121:10

**faculty(1)** 178:20

**fail(2)** 74:9 217:10

**failed(1)** 75:18

**failure(3)** 72:22 203:24 217:11

**fair(26)** 46:8 49:9 55:21 59:3 61:14 68:8 71:9 71:9 81:11 82:19 91:17 100:18 113:5 118:11 119:11 119:17 121:5 124:24 126:14 145:9 145:13 147:12 154:22 156:8 159:3 163:8

**faith(8)** 15:4 145:6 145:9 145:12 147:12 231:7 231:17 231:23

**fall(1)** 114:16

**fallon(1)** 7:7

**faltas(2)** 6:34 6:35

**familiar(10)** 21:2 27:7 36:22 113:18 145:23 155:2 158:13 158:23 162:4 162:7

**far(4)** 26:15 157:7 199:8 206:20

**fargo(2)** 9:48 38:19

**farther(1)** 143:20

**fashion(2)** 43:4 50:5

**favor(3)** 14:24 14:24 154:24

**favorable(1)** 14:15

**fcc(3)** 206:13 206:17 208:16

**fearney(1)** 1:26

**feature(2)** 145:20 224:22

**february(10)** 22:3 27:11 27:21 27:22 29:12 72:7 142:6 166:19 167:17 167:19

**federal(1)** 136:25

**fee(1)** 59:21

**feedback(1)** 68:7

**feel(3)** 67:25 145:16 229:20

**feet(1)** 142:23

**feld(4)** 2:37 7:25 12:14 177:25

**felt(2)** 171:9 174:4

**few(2)** 71:11 101:1

**fiddle(1)** 31:25

**fiduciary(20)** 161:12 161:16 164:3 187:22 199:6 200:9 200:9 201:13 207:16 210:15 211:21 212:5 212:6 222:12 242:5 242:19 242:21 243:3 243:7 243:8

**fifteen(2)** 147:4 149:16

**fifty(4)** 163:9 163:13 163:13 181:6

**fighting(1)** 84:4

**figure(7)** 56:12 56:15 64:19 70:13 134:5 180:23 238:20

**file(3)** 125:21 126:11 126:20

**filed(8)** 18:16 22:3 38:5 38:11 123:1 124:23 145:6 145:8

**fill(1)** 112:18

**filling(1)** 95:18

**final(2)** 62:25 139:25

**finalizing(1)** 176:9

**finally(2)** 191:16 210:4

**finance(1)** 171:11

**financial(15)** 45:13 46:9 46:12 93:20 120:5 120:12 122:7 122:9 122:13 129:20 133:20 133:24 134:2 134:19 179:17

**financing(1)** 91:13

**find(16)** 16:22 67:12 90:5 94:9 116:8 143:2 153:3 158:6 208:7 216:24 223:9 223:12 223:12 231:24 243:2 243:3

**finding(2)** 158:7 158:8

**findings(1)** 155:2

**finds(2)** 74:10 201:9

**fine(13)** 21:6 21:12 32:20 50:20 133:14 136:22 169:7 180:5 180:9 213:5 229:13 239:3 245:17

**finger(1)** 2:14

**finish(2)** 28:4 244:18

**firm(7)** 12:24 19:14 41:19 93:13 180:4 200:5 218:11

**firms(2)** 134:1 223:5

**first(67)** 15:9 22:13 27:10 32:3 32:5 46:10 54:23 55:14 59:7 60:20 74:11 75:17 87:1 89:20 90:1 90:6 90:7 90:9 91:22 98:18 100:23 101:4 101:15 105:20 106:16 110:8 110:12 111:6 113:3 129:7 140:19 154:6 154:9 154:18 168:13 181:2 185:25 189:8 189:16 190:11 192:14 194:19 194:25 195:11 197:13 198:2 199:6 199:10 199:22 203:21 204:1 205:19 205:20 206:4 206:9 207:10 208:14 209:1 209:14 210:21 211:20 222:24 226:21 229:5 244:5

**firsthand(1)** 116:20

**fit(1)** 74:14

**five(4)** 18:20 72:15 153:6 169:25

**five-and-a-half(4)** 129:14 130:2 131:24 132:16

**five-minute(1)** 169:23

**fix(1)** 226:8

**fixed(3)** 146:25 147:3 147:7

**flag(1)** 104:6

**flagg(1)** 3:19

**flawed(2)** 106:5 107:14

**flexibility(4)** 20:12 193:19 232:13 233:10

**flight(1)** 203:17

**flip(1)** 17:12

**flipping(1)** 166:4

**flom(1)** 7:13

**floor(1)** 4:9

**flow(4)** 181:5 185:8 185:22 237:23

**fluid(1)** 226:9

**fly(2)** 160:1 203:18

**flying(1)** 203:19

**focus(7)** 179:2 179:20 180:8 187:5 189:3 199:10 246:11

**focused(2)** 163:21 202:12

**focuses(2)** 192:4 198:21

**focusing(1)** 189:13

**folks(6)** 99:22 108:2 116:3 149:15 165:25 168:5

**follow(2)** 167:1 223:16

**followed(3)** 82:20 83:4 244:20

**following(10)** 43:20 44:1 45:8 54:2 58:21 65:22 93:11 110:8 110:12 176:5

**follows(2)** 239:20 239:21

**fonald(1)** 3:19

**foot(2)** 55:5 125:18

**footnote(1)** 207:14

**footprint(1)** 194:5

**for(301)** 1:2 1:23 2:4 2:22 2:37 3:4 3:10 3:23 4:4 4:20 4:27 4:41 5:4 5:24 5:36 5:46 6:4 6:30 6:34 6:38 7:4 7:10 7:20 7:36 7:43 8:4 8:7 8:15 8:18 8:22 8:27 8:31 8:35 8:39 8:44 9:4 9:9 9:23 9:37 9:43 9:48 10:4 10:9 10:14 10:18 10:20 10:24 10:29 10:35 10:39 10:44 11:4 11:8 11:13 11:17 11:21 11:25 11:29 12:13 12:21 12:24 13:2 13:3 13:11 14:5 16:1 16:7 16:8 17:7 18:1 18:7 18:18 19:19 20:12 20:18 22:14 24:16 25:18 25:20 26:1 26:7 26:9 26:20 26:17 27:1 27:3 27:17 27:25 28:15 29:4 29:5 29:9 29:22 31:15 31:17 31:18 31:23 32:20 32:21 33:9 33:10 33:20 33:22 36:10 39:6 39:18 40:9 40:9 41:10 41:19 41:22 45:8 46:20 47:15 47:17 47:19 48:19 50:18 51:11 52:16 54:24 55:25 56:17 57:1 57:4 57:5 57:9 57:17 61:17 64:7 65:7 65:24 65:25 66:4 66:5 66:8 70:6 71:10 72:3 72:15 72:18 72:25 73:5 75:22 76:18 76:25 78:4 78:7 79:7 79:19 80:15 80:16 81:4 83:24 87:13 88:10 89:9 91:2 92:16 93:13 96:21 97:10 97:18 104:3 104:10 113:10 113:20 113:20 115:2 115:4 116:9 116:9 116:19 125:11 125:20 126:20 129:20 134:2 134:2 135:22 135:23 136:6 137:2 137:16 138:23 139:11 140:4 140:6 140:15 140:17 140:23 141:3 141:13 142:9 144:12 147:4 147:8 148:15 149:9 149:15 151:6 152:10 152:15 153:9 153:23 155:16 156:25 157:3 157:7 157:15 157:16 157:23 159:5 160:11 161:23 162:3 162:6 168:18 169:5 175:3 176:5 176:14 177:6 177:13 177:14 177:15 177:23 179:23 181:23 182:9 184:12 186:17 190:3 190:21 190:21 190:22 191:5 191:14 191:17 192:9 192:12 192:15 192:17 192:19 192:21 193:21 194:13 195:3 196:12 198:6 201:12 201:13 201:17 201:18 201:18 201:19 201:20 202:10 203:12 203:20 204:1 204:18 204:22 205:25 207:17 208:4 212:6 212:17 213:25 215:15 216:15 219:3 219:25 220:7 220:8 220:17 220:18 220:23 221:11 222:10 222:21 223:1 223:5 223:5 223:11 223:23 223:25 224:2 224:5 224:13 225:10 225:18 226:10 227:18 228:9

**for(33)** 228:22 229:1 229:23 230:10 234:1 234:2 234:4 234:7 234:18 235:7 235:10 235:14 235:20 235:22 236:10 236:18 236:20 237:8 237:11 238:25 239:6 239:12 239:20 239:24 241:3 241:20 241:24 242:3 242:4 242:7 242:13 244:25 245:13

**force(2)** 16:13 204:5

**forced(2)** 85:1 153:11

**foregoing(1)** 247:3

**foresee(1)** 19:23

**forfeited(1)** 28:18

**form(11)** 17:18 17:19 66:20 82:15 86:3 106:3 106:6 180:19 180:20 215:21 222:8

**formally(3)** 211:1 211:10 211:15

**forman(1)** 1:33

**formed(1)** 30:15

**former(2)** 7:10 69:23

**forth(16)** 16:2 17:8 17:22 31:7 37:13 64:14 68:7 102:2 102:8 103:2 146:25 147:4 173:11 173:23 200:11 241:25

**forty-eight(2)** 152:2 153:5

**forty-nine(1)** 150:18

**forty-two(1)** 150:24

**forward(20)** 86:20 87:1 87:8 88:1 123:13 140:16 140:17 171:7 171:8 175:9 195:18 196:6 196:8 230:10 230:11 230:12 232:6 232:12 233:22 236:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **found**(10) 14:15 49:20 49:22 51:3 56:8 63:7 155:6 183:19 183:24 188:24 | | **further**(9) 31:8 36:14 80:13 189:20 194:6 212:22 221:16 240:16 243:22 | | **going**(88) 13:7 19:12 19:16 24:23 25:13 29:1 29:10 30:7 31:23 33:9 34:14 34:20 35:17 37:11 41:22 51:5 51:11 52:20 57:7 66:1 67:10 67:24 69:3 79:15 79:18 94:7 94:9 99:10 102:17 102:20 103:20 103:21 104:4 104:5 104:5 107:22 109:16 116:2 122:17 123:13 123:25 130:25 131:11 131:12 135:3 137:13 138:18 138:25 139:1 139:13 140:13 140:15 140:16 140:17 140:21 140:25 143:20 155:21 160:20 166:8 175:9 194:11 195:4 197:6 199:23 200:3 206:10 207:4 212:9 230:21 231:11 231:12 231:14 232:12 233:6 233:9 233:11 235:14 237:23 237:24 238:7 241:13 241:1 244:15 244:19 245:2 246:7 | | **ground**(1) 246:7 |
| **foundation**(12) 10:5 11:9 23:1 23:4 24:20 24:22 28:5 28:15 131:11 167:3 167:4 167:8 | | **future**(2) 39:11 146:21 | | | | **grounded**(2) 119:11 121:8 |
| | | **game**(1) 167:15 | | | | **grounds**(2) 64:5 167:3 |
| **foundational**(1) 39:5 | | **gandhi**(1) 7:37 | | | | **group**(9) 14:17 25:20 67:21 94:14 135:20 161:5 223:14 238:1 244:25 |
| **founders**(8) 194:7 194:25 196:13 197:6 227:21 230:1 230:19 232:19 | | **gap**(1) 35:10 | | | | **grow**(1) 191:12 |
| | | **garvan**(1) 2:23 | | | | **gruszka**(1) 10:26 |
| **four**(10) 17:25 18:12 20:10 56:9 56:12 56:16 56:17 74:8 75:16 92:25 | | **gary**(1) 6:23 | | | | **guarantee**(1) 19:15 |
| | | **gather**(5) 137:13 209:23 215:8 224:22 225:16 | | | | **guarantees**(2) 49:2 49:23 |
| **fourteen**(1) 181:5 | | | | | | **guarantor**(3) 49:1 49:11 148:5 |
| **fourth**(1) 67:19 | | **gave**(18) 44:3 57:10 60:9 73:20 89:11 104:8 107:25 122:3 122:4 133:12 133:15 134:13 171:18 181:5 234:17 239:11 239:2 240:3 | | | | **guarantors**(1) 55:18 |
| **fox**(2) 178:16 178:23 | | | | | | **guess**(12) 30:5 35:24 42:19 85:5 88:10 105:11 107:21 130:8 151:23 167:11 168:10 224:1 |
| **fraction**(8) 13:11 209:6 209:22 209:24 209:25 210:1 210:2 210:2 | | **gavin**(1) 5:33 | | | | |
| | | **geddes**(1) 2:46 | | **golden**(8) 2:39 28:3 36:2 83:20 84:3 84:14 84:25 116:18 | | **gump**(11) 2:37 7:25 12:14 83:14 83:20 89:11 89:13 113:15 115:6 116:3 177:24 |
| **frank**(7) 5:12 10:39 10:40 88:22 124:5 125:7 126:19 | | **gee**(8) 48:22 50:19 77:12 78:24 125:18 133:12 163:22 165:3 | | **goldfarb**(1) 3:45 | | |
| | | | | **goldis**(1) 5:27 | | **guy**(2) 131:15 204:5 |
| **frankel**(1) 9:15 | | **general**(17) 26:11 124:5 146:5 146:6 147:3 147:8 147:19 147:19 148:4 183:13 186:1 213:19 213:21 220:15 224:15 241:19 242:3 | | **goldman**(3) 5:29 7:4 7:4 | | **guys**(1) 125:17 |
| **frankly**(5) 30:1 50:12 60:21 142:21 169:8 | | | | **gone**(2) 137:8 159:7 | | **had**(109) 26:14 27:19 29:5 29:9 30:11 30:12 30:18 33:6 40:13 40:17 41:7 41:16 44:6 44:11 44:15 44:17 44:19 45:12 46:3 48:6 56:12 56:16 64:16 66:11 66:21 66:21 69:11 71:12 72:7 72:18 73:25 78:5 78:11 78:11 79:3 85:3 85:7 85:19 85:21 86:12 86:16 87:17 88:16 88:24 89:9 89:13 89:18 92:16 94:5 94:14 94:16 97:16 100:7 105:25 106:7 106:17 108:1 108:4 112:25 115:1 116:18 120:4 121:3 121:7 121:9 123:1 123:13 123:14 124:1 126:1 126:9 127:3 127:13 128:22 130:6 130:21 130:21 131:18 136:12 137:11 138:21 140:6 143:25 151:9 151:11 153:24 161:5 168:4 168:5 170:19 172:16 172:18 172:20 172:24 173:12 173:21 173:23 173:23 174:14 178:25 180:14 181:9 219:20 219:24 234:12 244:7 244:12 246:5 246:9 246:11 |
| **fraud**(2) 158:4 158:7 | | | | **good**(35) 12:4 12:5 12:17 12:18 15:4 40:7 42:5 43:8 43:9 81:8 81:8 81:10 94:21 111:7 112:10 130:19 135:22 145:6 145:9 145:12 147:12 152:21 177:23 195:3 195:11 195:21 196:19 209:2 213:15 213:16 231:4 231:7 231:17 231:23 246:1 | | |
| **fraudulent**(11) 56:9 56:15 79:12 79:13 154:17 155:3 155:9 155:10 155:25 156:3 158:9 | | **generally**(7) 24:17 73:18 76:3 124:10 143:19 145:23 158:14 | | | | |
| **fraudulently**(1) 155:10 | | **generated**(1) 76:12 | | | | |
| **free**(1) 67:25 | | **gentilotti**(1) 2:22 | | **gordon**(5) 5:32 6:41 84:7 132:20 132:21 | | |
| **freed**(1) 152:15 | | **gentle**(1) 52:3 | | **gorkom**(6) 222:20 222:24 223:2 223:21 224:4 224:20 | | |
| **friday**(11) 139:1 139:5 139:8 139:12 139:20 140:9 141:8 244:10 244:21 245:11 245:14 | | **genuine**(1) 205:8 | | | | |
| | | **genuinely**(1) 211:11 | | **got**(12) 68:16 79:9 87:25 90:12 90:16 90:18 92:24 115:24 140:22 141:14 224:2 232:20 | | **hadn't**(1) 202:12 |
| **fried**(1) 88:22 | | **george**(2) 6:30 6:31 | | | | **hadn't**(1) 73:25 |
| | | **get**(48) 20:9 21:10 26:23 31:1 34:15 48:1 48:2 51:11 56:19 56:20 59:22 61:11 63:17 66:5 67:12 84:5 84:21 97:6 97:7 100:22 104:5 108:12 125:18 128:19 131:2 135:3 138:22 139:7 139:16 140:14 146:23 146:24 202:19 223:24 224:13 224:14 224:20 225:10 233:12 240:4 242:4 | | **gotshal**(1) 7:36 | | **hale**(1) 5:25 |
| **friedman**(7) 2:30 7:31 96:9 96:10 96:11 96:12 174:19 | | | | **gotten**(1) 140:12 | | **half**(2) 61:20 140:17 |
| | | | | **governance**(24) 17:21 179:5 179:6 179:10 179:18 179:20 179:24 180:1 180:20 180:2 181:10 181:12 181:14 181:15 181:20 182:6 182:19 182:22 183:5 183:14 196:23 197:13 207:21 209:2 | | **hand**(11) 26:6 29:14 72:13 72:21 80:18 107:3 107:5 175:14 177:2 177:2 218:17 |
| **from**(131) 18:6 20:20 21:17 22:15 25:11 25:19 26:12 27:16 28:2 28:5 29:8 29:16 31:6 32:19 33:18 34:15 36:2 38:21 38:21 40:12 41:19 42:10 44:23 44:24 47:6 49:1 51:18 52:4 52:19 53:11 54:6 54:20 55:12 62:23 64:4 67:20 67:25 68:13 71:20 73:16 74:8 74:19 74:20 76:7 79:11 81:13 81:18 85:5 85:16 90:21 96:9 96:10 99:19 99:21 102:2 104:1 104:25 107:12 112:24 114:3 116:3 118:8 126:19 135:1 135:20 137:7 138:4 142:6 142:24 145:16 150:19 150:23 151:3 151:14 151:18 152:20 154:6 155:11 159:18 166:18 168:2 171:9 171:21 171:9 171:20 172:11 172:22 177:24 179:15 179:22 180:4 180:2 180:25 181:10 181:11 181:16 182:8 185:7 185:7 185:19 185:20 185:22 186:23 191:9 191:22 194:22 196:2 197:9 200:19 201:16 203:4 203:13 204:13 205:16 206:13 206:1 209:8 209:11 210:5 210:8 214:13 220:17 221:19 225:16 225:25 227:5 227:19 228:1 232:12 236:1 238:13 241:17 247:4 | | **gets**(5) 19:15 20:17 69:22 124:1 154:11 | | **greg**(1) 6:5 | | **handale**(1) 18:11 |
| | | **getting**(7) 103:16 107:23 149:25 177:14 229:23 230:5 244:25 | | **greissman**(1) 9:49 | | **handed**(3) 33:1 35:6 52:15 |
| | | | | **grippo**(1) 6:30 | | **handfuk**(1) 101:15 |
| | | **give**(24) 27:15 43:18 78:12 97:16 100:7 102:21 107:24 122:18 138:3 141:17 144:8 149:4 159:25 164:13 169:14 179:21 179:2 216:21 219:11 221:12 221:24 229:15 237:11 246:6 | | **gropper**(83) 12:12 12:17 15:25 21:16 21:23 21:25 22:13 22:17 22:20 23:5 23:8 25:4 25:8 25:21 25:23 26:13 26:17 30:15 30:19 30:23 31:12 32:9 35:12 35:12 35:18 36:19 36:21 36:25 37:6 37:17 37:18 37:22 39:13 39:17 39:20 40:11 40:18 40:23 41:7 43:8 52:23 60:1 63:19 64:25 65:11 65:16 67:18 67:23 69:2 71:8 72:6 73:16 74:18 76:20 80:7 80:14 80:24 81:8 81:11 81:16 86:6 101:8 102:21 103:22 110:4 112:2 113:17 114:4 116:4 139:2 141:19 142:5 144:23 151:16 165:14 166:13 167:14 168:3 170:7 171:18 173:2 248:3 248:13 | | **handle**(2) 230:14 230:15 |
| | | | | | | **hands**(2) 18:25 239:1 |
| **front**(7) 21:21 52:7 52:24 58:2 60:11 90:3 151:11 | | **given**(13) 41:13 57:3 65:24 77:3 115:1 130:9 131:14 178:23 185:23 203:23 207:11 216:8 229:8 | | | | **happen**(5) 62:23 73:7 101:20 187:10 197:8 231:2 232:22 241:19 |
| **frozen**(1) 81:22 | | | | | | **happened**(13) 29:19 61:8 102:15 102:18 105:19 105:22 106:25 116:21 118:6 118:7 172:13 172:14 176:1 |
| **fulfill**(1) 200:9 | | **gives**(7) 185:4 192:1 192:14 192:16 193:3 199:14 212:8 | | **gropper's**(2) 62:7 64:16 | | |
| **full**(11) 14:7 21:9 42:2 55:23 55:24 55:24 64:2 164:11 177:6 207:11 210:21 | | | | **gross**(8) 71:16 101:22 101:23 102:5 102:12 103:1 103:17 104:9 | | **happens**(7) 19:22 24:1 151:7 154:13 224:20 229:18 245:19 |
| | | **giving**(3) 30:7 191:10 | | **greater**(8) 13:24 14:4 16:23 69:23 93:3 236:21 237:12 239:13 | | **happy**(6) 76:25 81:5 137:2 159:25 162:3 168:7 |
| **fullest**(1) 201:10 | | **glad**(1) 175:7 | | **great**(7) 17:20 18:23 23:15 226:8 229:21 230:20 239:21 | | |
| **fully**(5) 28:1 50:9 50:25 106:23 142:19 | | **glazer**(1) 9:49 | | | | **hard**(8) 72:25 72:25 84:8 148:19 200:2 208:4 212:17 244:18 |
| **function**(3) 124:6 212:10 237:20 | | **global**(1) 6:34 | | **graduate**(5) 178:4 178:4 178:5 178:7 178:8 | | |
| **functionally**(1) 242:11 | | **goals**(2) 211:5 211:20 | | **graem**(2) 3:44 5:16 | | **harm**(1) 208:11 |
| **functioned**(2) 122:2 124:7 | | **goes**(14) 13:7 37:5 37:23 42:7 74:7 84:10 91:21 143:18 150:22 150:23 166:25 195:1 206:24 236:15 | | **graeme**(1) 90:22 | | **harrisburg**(1) 1:44 |
| **functioning**(1) 133:21 | | | | **graham**(2) 54:6 174:20 | | **hartenstein**(3) 15:6 19:4 20:2 |
| **functions**(3) 159:7 204:1 241:12 | | | | **granted**(2) 87:23 189:24 | | **hartford**(1) 4:30 |
| **fund**(2) 8:15 99:25 | | | | **grasp**(1) 164:11 | | |
| **fundamental**(2) 10:24 10:25 | | | | | | |
| **funded**(1) 154:10 | | | | | | |
| **funds**(1) 19:22 | | | | | | |

| Word | Page:Line |
|------|-----------|

has(82) 12:20 15:3 18:7 20:24 25:24 26:2 26:3 28:10 30:23 34:8 34:23 41:3 46:23 47:21 51:16 52:24 54:10 57:13 66:13 66:14 66:16 67:6 67:16 69:3 70:5 72:24 74:15 77:25 80:10 81:17 84:6 109:3 109:22 111:3 118:8 127:16 127:16 127:17 127:17 132:21 132:1 133:2 133:7 133:9 133:15 136:25 138:17 139:13 145:20 151:2 159:12 167:4 168:14 168:16 168:18 180:15 184:21 185:23 187:23 188:9 188:13 188:14 188:21 190:13 190:16 200:5 201:21 204:9 206:18 211:8 216:15 220:20 221:2 221:3 222:11 229:9 230:4 236:10 238:12 241:12 243:3 243:11

hasn't(2) 26:13 35:22
hasn't(3) 106:9 135:15 135:17
hathaway(1) 206:18
hauer(4) 2:37 7:25 12:14 177:24
have(261) 12:22 15:1 16:2 16:21 18:9 18:12 18:15 18:16 18:18 18:18 20:15 21:21 22:16 22:24 22:25 23:11 24:14 26:12 28:2 28:19 29:9 30:5 30:14 31:1 31:8 31:25 33:13 35:2 36:1 36:18 37:13 38:9 38:16 39:2 39:4 39:5 39:9 40:2 41:4 41:11 42:17 43:23 44:4 46:6 46:6 46:9 46:24 47:2 48:18 48:25 51:1 53:17 54:14 58:2 59:9 59:12 60:11 64:3 65:3 65:23 68:2 70:22 71:11 71:21 73:9 76:11 77:19 79:13 79:25 80:7 80:13 80:15 81:5 85:4 87:14 88:14 90:7 90:9 91:12 94:8 101:12 104:2 104:25 107:19 108:15 108:2 110:24 113:8 116:20 118:19 121:25 124:6 126:1 126:5 127:3 128:11 128:21 130:3 130:8 130:16 131:11 131:12 132:5 132:6 132:22 133:5 134:4 134:20 134:23 135:5 135:25 136:23 137:13 139:3 139:4 139:13 140:20 141:4 141:8 142:4 142:5 143:22 143:24 149:5 149:14 149:22 150:8 151:5 152:12 153:11 153:13 153:24 154:22 154:22 156:24 159:2 159:12 159:3 159:2 160:8 160:21 161:18 164:25 166:10 167:17:17 169:10 169:12 169:16 169:22 169:24 172:4 173:3 175:11 176:4 176:11 177:10 177:15 178:17 178:19 179:9 179:9 180:12 180:14 182:9 182:15 182:25 183:2 183:16 183:16 183:18 184:11 185:18 185:20 186:4 186:8 187:11 187:21 188:18 188:20 188:20 188:23 191:1 191:16 191:21 195:9 195:22 195:23 195:25 196:1 196:3 196:8 196:18 196:25 197:4 198:2 199:23 200:3 200:10 203:18 206:9 207:8 207:20 208:8 209:25 210:9 210:12 210:19 211:13 212:1 212:7 212:15 212:16 212:22 212:25 213:2 213:18 215:19 216:5 216:5 216:21 218:7 218:13 218:15 219:7 221:10 221:23 222:4 224:4 224:8 224:9 224:11 224:11 224:24 225:3 226:9 227:20 229:1 229:5 230:2 230:7 231:3 233:3 233:4 233:8 235:11 236:20 236:23 238:19 240:16 242:16 242:21 242:21 243:1 243:7 243:16 244:3 244:22 244:24

haven't(8) 26:14 28:18 157:18 159:21 164:8 216:2 221:5 246:11

haven't(3) 139:14 140:12 140:20
having(17) 20:25 38:8 39:8 72:15 94:21 111:23 114:15 117:17 120:3 144:1 151:23 164:11 191:19 191:20 196:9 206:19 224:11

haystack(1) 223:13
hazeltine(1) 4:33
he's(12) 25:13 26:14 26:20 28:12 28:13 29:10 31:1 34:20 51:7 66:1 167:8 211:16

head(1) 151:8
headed(1) 104:14
heading(3) 38:24 55:15 58:15
heading(1) 74:13

hear(9) 21:18 22:9 25:11 25:16 34:7 75:5 131:3 195:24 240:19

heard(12) 20:23 22:25 28:23 28:23 33:5 57:1 65:24 75:1 82:10 97:17 104:25 208:16 208:17

hearing(9) 37:8 72:23 73:8 83:25 84:6 84:21 86:11 143:14 246:22

hearsay(8) 66:1 66:7 87:19 130:24 131:1 131:5 131:8 170:23

heart(1) 84:8
heck(1) 48:1
heilbut(1) 7:45
held(19) 15:8 15:10 15:12 15:14 15:16 15:23 16:6 17:17 21:5 108:3 150:19 178:19 187:5 187:6 187:8 215:20 222:21 222:25 223:22

hello(1) 45:20
helped(1) 64:20
helpful(9) 34:13 34:16 77:1 104:15 107:18 138:3 140:2 141:10 143:6

henderson(1) 6:11
her(6) 85:20 85:23 130:6 175:16 222:10 243:12

hercules(1) 4:7
here(59) 28:5 30:9 30:17 30:20 33:4 33:8 33:14 33:18 33:17 35:10 35:16 36:5 36:17 38:18 41:15 46:15 50:9 50:18 55:12 64:20 66:14 69:24 73:7 75:3 82:8 89:8 100:8 101:18 107:2 107:9 134:12 134:22 135:11 152:2 153:5 158:6 162:5 162:7 163:20 164:11 165:4 165:23 167:17 190:10 202:3 204:2 208:14 216:8 225:13 225:24 226:5 231:1 231:10 233:23 241:4 241:11 242:3 242:9 242:19

here's(7) 29:17 31:4 34:5 142:6 144:7 144:7 144:7

hesitate(1) 205:24
he's(7) 107:21 120:21 124:4 124:7 131:5 131:7 141:18

hide(2) 33:3 104:3
high(4) 15:20 39:19 39:20 78:25
higher(3) 17:3 17:9 36:4
highly(9) 47:18 47:19 47:23 49:19 50:5 50:6 153:25 162:12 162:25

him(31) 27:3 27:13 27:15 27:19 29:14 31:5 32:20 33:11 34:14 34:22 49:15 49:15 51:8 51:11 57:22 68:21 79:24 85:20 85:21 103:21 104:3 137:2 137:3 137:4 160:20 160:23 161:1 169:10 169:13 240:1 240:1

himself(1) 41:11
hint(1) 52:3
hire(1) 89:3
his(69) 18:1 19:14 19:5 20:2 26:1 26:3 26:20 26:21 27:2 27:18 28:12 29:2 29:6 29:13 30:7 30:14 30:15 30:19 31:10 31:1 32:9 33:25 35:19 37:12 38:2 40:16 57:22 66:3 68:3 68:8 74:13 74:14 75:4 75:21 79:18 80:2 81:21 85:1 85:3 101:23 108:10 108:13 110:20 118:8 124:7 136:21 138:12 148:12 162:22 163:5 164:22 167:6 168:5 168:9 168:22 170:7 170:25 190:10 192:4 192:16 203:8 203:9 209:3 212:19 220:10 223:22 238:19 241:12 243:12

history(2) 222:24 223:4
hit(1) 213:3
hold(16) 16:24 17:1 17:4 19:19 21:7 73:8 81:8 100:1 178:14 184:17 185:3 185:22 188:4 213:2 221:11 233:18

holdback(3) 17:7 150:12 150:25
holder(5) 101:5 106:17 172:5 188:6 195:22
holders(7) 146:24 185:20 196:24 210:17 241:25 242:16 243:19

holding(5) 20:25 131:20 141:9 236:2
holdings(3) 14:22 92:22 93:1
holds(2) 185:1 185:1
homerun(5) 229:18 230:9 230:16 230:24 231:25

honest(1) 161:18
honor(151) 12:5 12:8 22:2 22:24 23:2 25:18 26:6 26:11 27:6 27:10 28:5 28:14 28:25 29:7 30:10 30:21 31:4 31:20 31:24 33:16 33:20 34:12 34:25 35:25 36:16 37:37:15 39:3 40:4 40:7 40:10 40:21 41:15 42:5 42:18 43:1 43:5 51:5 51:15 52:3 52:6 52:9 52:14 53:17 53:25 57:1 57:6 57:12 57:19 57:25 62:4 64:3 64:6 64:10 64:15 64:22 65:23 66:24 67:14 68:3 68:17 68:23 70:23 71:3 71:10 71:14 71:19 71:22 72:7 72:17 72:25 73:12 73:13 79:14 79:22 80:5 80:15 81:5 84:6 94:7 103:18 105:5 107:2 107:20 108:23 108:25 109:15 117:3 123:17 123:24 126:6 127:16 127:17 127:1 131:6 135:23 136:10 136:17 136:19 138:15 138:20 139:23 140:12 141:11 141:24 142:3 142:11 143:25 144:18 152:17 160:16 161:4 167:4 167:11 168:11 168:24 169:17 169:22 170:3 170:24 171:2 175:14 176:12 176:14 176:16 176:24 177:10 181:21 182:8 183:21 184:1 212:23 212:25 213:7 218:18 231:16 231:20 234:11 239:7 239:25 240:17 243:22 243:24 244:2 244:19

honorable(1) 1:18
horse(1) 109:17
hotshot(1) 194:4
hour(3) 136:3 138:24
hour-and-a(1) 140:16
hours(4) 73:2 122:6 122:13 176:5
hovering(2) 25:13 25:18
how(62) 13:17 14:21 15:17 16:17 17:23 24:6 25:10 26:19 29:14 30:14 31:14 34:1 34:11 34:21 38:7 47:7 47:10 47:22 56:12 56:15 67:10 78:21 78:22 78:23 97:101:14 103:16 108:13 122:10 122:18 124:7 130:9 135:25 140:7 142:6 142:12 144:10 149:15 159:7 159:20 160:1 162:8 165:23 168:9 172:20 178:19 186:18 194:1 200:2 200:12 203:14 207:12 210:9 213:5 226:10 234:23 235:7 238:2 238:6 238:7

how's(1) 245:13
howard(5) 5:34 4:28 23:11 174:19 175:7
huge(1) 35:10
hugely(1) 70:8
hundred(6) 148:7 148:19 148:21 148:23 149:18 191:10

hurley(1) 234:12
hypo(8) 193:17 193:18 194:1 194:2 194:3 194:12 196:1 196:15
hypos(1) 193:15
hypothetical(6) 193:21 219:20 219:24 229:16 234:17
hypotheticals(1) 212:3
i'd(10) 23:1 25:9 34:8 37:7 43:10 49:4 52:9 58:22 216:21 218:17
i'll(24) 23:3 23:5 39:11 41:10 54:13 57:22 57:22 67:11 68:19 144:8 144:18 149:3 154:20 160:3 163:25 166:11 170:3 171:4 213:2 230:4 231:1 244:8 244:23 244:24

i'm(106) 16:4 24:23 27:6 32:25 39:6 40:4 42:25 44:15 44:24 46:2 46:6 49:4 51:5 51:10 52:20 53:10 53:13 54:13 64:8 64:11 64:19 66:17 67:18 67:24 69:3 69:13 70:16 142:21 143:12 144:1 146:2 146:9 148:23 149:7 150:15 151:14 151:22 153:2 154:12 155:6 155:21 157:13 158:1 158:23 159:25 160:23 161:1 161:25 162:3 162:3 162:18 163:4 163:5 163:16 163:18 164:8 164:8 168:1 168:7 168:25 169:7 169:22 169:23 171:1 175:7 177:24 178:4 178:7 180:22 181:25 182:2 189:10 189:11 189:11 189:13 200:18 206:23 207:9 207:10 207:20 207:21 208:24 210:21 211:9 212:16 212:21 214:23 215:22 215:24 218:10 221:5 221:14 226:3 226:3 226:11 227:12 228:10 228:24 230:10 231:14 232:16 240:18 242:23 244:6 246:14 246:15

i've(60) 13:25 20:23 23:7 58:18 64:9 153:23 153:23 159:1 164:9 166:12 169:7 169:7 178:20 179:16 180:14 180:16 181:7 181:19 237:1 237:3

icahn's(1) 231:5
idea(9) 36:14 130:19 159:2 159:12 176:4 187:9 195:14 210:9 238:10

identified(10) 40:24 52:16 58:8 58:20 75:12 75:15 97:6 136:21 155:16 248:12

identifies(1) 212:18
identify(7) 16:1 17:7 21:24 22:18 53:3 74:20 238:7

illinois(1) 3:14
illustrated(2) 199:17 203:23
illustrating(1) 60:22
imagine(4) 73:1 207:15 212:18 230:24
imbedded(1) 50:21
immediately(1) 58:21
immunize(1) 201:16
impact(5) 15:22 16:1 159:2 161:6 161:8
impacted(1) 158:25
impair(6) 190:17 227:24 228:6 228:12 232:13 233:9

impairs(1) 193:14
implement(1) 205:2
important(12) 13:2 13:10 70:8 99:14 104:10 152:9 155:10 215:14 222:12 222:18 227:17 230:9

importantly(1) 211:15
impose(2) 210:11 221:17
imposed(3) 205:9 216:18 222:7
imposes(3) 215:13 238:23 239:2
imposing(1) 228:1
impossible(1) 223:5
impression(2) 240:3 240:4
improper(1) 37:10
imprudent(1) 219:17
imrad(1) 10:19
in-fighting"(1) 84:2
in-person(3) 76:2 118:15 118:20
inadequate(1) 56:13
inc(4) 8:44 8:44 9:23 10:39
incentive(4) 20:15 195:9 229:10 238:25
incentives(3) 238:12 238:16 241:22
incentivize(1) 238:20
incentivizing(1) 238:17
inch(1) 84:16
incidentally(1) 60:23
inclination(1) 34:5
inclined(1) 36:13
include(7) 37:2 37:20 52:17 74:12 130:23 220:16 243:18
included(5) 48:11 61:5 74:1 83:20 91:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**includes**(3) 67:21 210:16 210:18

**including**(6) 43:23 134:3 151:10 191:1 193:6 198:16

**incomplete**(2) 73:20 86:24

**inconsistent**(4) 74:3 75:4 75:13 240:3

**incorporation**(13) 183:11 190:15 191:3 192:19 193:7 198:3 198:5 198:7 202:4 202:18 235:12 235:13 235:15

**incorrect**(2) 19:3 164:13

**increase**(5) 191:5 192:19 192:21 209:10 210:7

**increased**(2) 196:1 208:7

**increases**(5) 191:11 191:17 195:10 210:2 228:4

**increasing**(5) 191:8 193:12 195:10 220:1 228:11

**increment**(2) 100:6 100:6

**incur**(1) 220:8

**incurred**(2) 56:14 155:10

**indeed**(6) 67:6 104:12 122:6 166:25 204:15 209:8

**indemnification**(1) 202:10

**identified**(1) 96:8

**indenture**(2) 12:24 186:16

**independence**(1) 237:20

**independent**(16) 14:10 18:4 18:6 19:13 28:21 186:15 186:23 188:12 188:18 211:2 211:9 211:10 211:11 211:14 211:15 237:19

**index**(1) 248:1

**indicate**(5) 60:1 172:14 176:1

**indicated**(4) 116:21 140:21 245:20 246:5

**indicates**(4) 17:15 74:10 114:2 176:1

**indication**(1) 140:23

**indiscernible**(1) 27:17

**individually**(1) 120:14

**individuals**(1) 40:22

**indulge**(1) 94:8

**industry**(2) 215:1 215:5

**inextricably**(1) 32:16

**inferences**(1) 143:4

**infirmities**(1) 156:24

**influence**(6) 57:16 180:25 181:11 181:6 196:25 228:19

**inform**(1) 140:8

**information**(3) 67:11 168:18 170:19

**informed**(2) 25:23 55:12

**informing**(1) 30:14

**inhibit**(1) 20:3

**inhibits**(1) 20:7

**initial**(3) 50:14 185:16 236:14

**initially**(2) 18:2 36:13

**injunction**(2) 204:4 204:9

**input**(2) 27:15 115:1

**inputs**(1) 31:9

**inquiry**(1) 67:9

**inside**(1) 159:20

**insists**(1) 194:7

**insofar**(3) 14:14 31:16 34:1

**insolvency**(1) 56:13

**instance**(11) 185:25 191:5 192:19 195:1 195:1 195:11 195:20 223:10 234:7 235:8 235:25

**instances**(2) 24:2 231:23

**institute**(1) 179:23

**institutional**(1) 88:16

**institutionally**(1) 171:9

**institutions**(1) 179:17

**instruct**(2) 14:19 231:16

**instructed**(3) 41:1 104:7 234:11

**instruction**(3) 33:25 42:10 102:22

**instructions**(1) 205:6

**insufficiently**(3) 225:18 226:6 226:7

**insulated**(3) 180:25 181:10 181:15

**insurance**(10) 202:10 202:14 203:2 221:10 221:20 223:3 223:24 223:25 224:5 225:10

**integrity**(1) 122:1

**intend**(2) 26:16 57:18

**intended**(3) 41:17 142:7 225:20

**intending**(1) 126:11

**intention**(1) 41:6

**intentional**(7) 56:15 79:13 155:3 155:9 155:25 158:4 158:7

**intentionally**(2) 50:15 56:14

**interaction**(3) 69:12 69:12 69:13

**interchang**(1) 70:23

**interest**(21) 41:2 41:8 42:7 42:7 42:12 70:10 114:17 125:15 132:18 195:22 200:16 205:17 208:23 210:3 210:19 211:16 230:1 231:8 231:9 233:11 238:3 242:17

**interested**(2) 10:9 226:12

**interesting**(2) 194:2 194:12

**interests**(3) 199:2 208:16 209:19

**interfere**(5) 182:18 200:14 207:4 217:10 217:11

**internal**(2) 68:9 68:12

**internalize**(1) 88:14

**internally**(2) 74:3 75:13

**internet**(15) 194:4 194:7 194:18 197:5 227:6 227:19 227:20 228:22 229:24 230:19 232:19 233:2 233:22 234:5

**interpret**(6) 47:11 180:23 181:12 204:12 217:24 219:11

**interpretation**(7) 33:25 47:21 56:23 61:3 160:1 205:5 225:17

**interpretive**(1) 51:8

**interrogation**(1) 67:4

**interrupt**(1) 227:13

**interrupted**(1) 39:8

**intertwined**(1) 32:16

**interviewing**(1) 223:20

**into**(41) 20:11 30:8 30:24 33:24 44:11 44:13 48:20 56:16 63:12 68:22 70:25 79:16 85:1 102:15 103:16 104:5 104:14 115:2 130:25 139:1 140:19 162:20 164:4 164:24 183:22 185:8 185:22 187:7 187:17 187:25 194:6 195:7 199:8 205:10 206:6 206:11 206:24 209:17 236:15 237:23 240:

**introduce**(1) 57:4 65:25 79:20

**introducing**(1) 42:9

**inverse**(2) 47:20 50:6

**invest**(1) 20:4

**investment**(5) 10:25 10:25 25:24 26:4 29:5

**investors**(3) 6:34 19:21 212:19

**invited**(5) 78:20 95:24 119:5 122:18

**inviting**(2) 45:3 124:2

**involved**(14) 85:8 92:25 101:9 101:12 101:16 101:19 132:23 145:2 151:10 153:8 158:16 158:18 168:13 168:15

**involving**(1) 237:9

**irrelevant**(1) 68:5

**isn't**(47) 20:9 44:8 49:12 51:22 55:5 70:7 150:1 154:18 156:4 160:1 213:19 213:24 214:9 214:14 215:7 215:17 216:2 216:6 216:8 216:19 217:19 219:8 219:12 219:18 221:3 221:13 222:19 222:22 224:8 225:5 225:11 226:25 227:1 228:7 228:23 229:2 232:1 232:6 232:14 232:22 234:14 234:24 236:3 236:12 236:22 239:14 240:11

**isn't**(13) 85:8 85:12 87:7 88:2 88:6 95:25 99:9 98:15 106:1 113:21 116:17 133:1 138:25

**issuance**(2) 198:18 199:19

**issue**(28) 31:18 35:10 36:11 46:17 49:6 49:16 50:4 50:19 51:22 57:3 59:19 66:14 66:16 66:25 67:2 67:5 68:7 69:24 70:17 70:24 74:14 79:15 143:8 180:17 180:18 245:17 245:20 245:22

**issued**(1) 234:19

**issues**(15) 15:18 16:2 16:9 16:18 40:24 50:24 65:6 66:18 114:7 114:22 153:24 175:6 181:18 183:1 205:15

**it's**(122) 14:11 15:19 16:1 17:4 17:13 19:3 19:19 20:6 20:14 21:25 22:9 22:14 24:13 25:4 27:25 29:22 29:23 29:25 30:2 30:6 30:7 31:17 31:18 33:8 33:12 34:5 36:10 38:14 38:23 46:5 49:6 50:17 53:4 53:20 53:24 55:3 55:4 55:23 55:24 57:12 59:15 59:16 61:12 66:9 68:6 70:2 70:23 71:4 71:5 142:13 142:14 143:14 143:14 147:11 147:12 148:19 149:10 149:20 152:9 153:23 155:23 157:2 157:17 159:11 162:6 166:18 166:22 183:23 193:8 193:8 195:4 195:14 196:15 196:23 199:8 199:22 200:2 203:21 204:12 204:16 204:19 208:4 210:1 210:2 210:18 211:7 212:17 214:3 214:12 214:19 218:6 221:15 221:17 221:20 221:25 224:1 224:17 225:13 226:13 228:16 230:9 230:20 231:10 233:5 233:6 234:3 234:15 234:15 235:5 235:19 236:18 237:23 238:4 238:5 239:21 241:13 241:14 241:24 241:24 242:1 245:2 245:21 245:22

**item**(2) 113:23 193:3

**items**(2) 79:2 91:3

**its**(39) 18:24 36:7 36:9 56:25 63:15 66:8 67:8 74:11 79:6 95:25 116:10 133:20 137:4 170:8 173:17 174:1 174:15 187:2 189:25 190:4 190:13 192:6 192:10 194:5 194:5 194:11 195:23 196:7 198:10 198:12 201:12 207:16 209:16 211:21 217:16 218:14 219:6 243:3 243:12

**itself**(7) 50:22 55:4 55:7 107:14 187:23 187:24 237:19

**it'd**(2) 83:18 103:8

**it's**(48) 73:3 73:5 79:18 79:21 83:18 83:24 90:9 90:11 90:16 90:21 94:10 99:14 99:22 99:21 100:11 100:18 104:2 104:3 109:17 111:7 112:3 113:23 115:16 115:17 118:5 124:2 124:10 126:7 129:17 130:25 131:4 131:6 131:21 133:24 133:24 135:8 136:13 136:24 136:24 137:5 137:1 137:23 137:23 138:18 138:18 139:8 140:18

**i'd**(8) 72:13 76:25 86:9 116:23 138:22 139:9 139:18 141:1

**i'll**(6) 73:10 77:22 100:15 106:10 113:11 127:19

**i'm**(53) 74:8 77:8 77:21 79:15 79:22 82:24 83:17 85:13 86:7 87:10 90:7 90:15 90:20 91:19 92:11 92:22 93:5 93:14 96:2 100:23 101:21 104:4 104:5 104:5 106:23 107:23 108:3 109:16 113:18 114:13 115:9 115:15 115:17 116:21 117:9 118:7 119:7 119:20 120:1 120:23 122:8 122:17 123:7 123:25 122:24 127:23 128:10 128:16 133:4 136:1 137:13 139:13 140:23 141:13

**i've**(9) 71:23 90:12 90:16 95:7 107:14 113:20 127:24 138:21 141:14

**jamal**(2) 45:16 45:21

**james**(5) 1:24 1:28 3:46 8:35 40:7

**jane**(1) 4:14

**janet**(1) 6:11

**january**(2) 89:21 178:21

**jarashow**(1) 7:33

**jean**(1) 9:34

**jefferies**(2) 11:17 11:17

**jeffrey**(1) 9:10

**jennifer**(1) 11:26

**jessica**(1) 5:8

**jillian**(1) 6:9

**jim**(5) 114:3 114:3 116:8 116:19 174:20

**joe**(1) 10:15

**john**(2) 7:28 11:10

**join**(4) 119:5 194:25 196:13 224:3

**joint**(6) 189:23 205:21 206:6 206:21 206:23 206:24

**joking**(1) 136:1

**jonathan**(1) 11:5

**jones**(5) 3:11 7:17 10:29 10:35 10:35

**jordan**(1) 9:16

**joseph**(1) 9:20

**joshua**(1) 8:41

**jpmorgan**(18) 81:4 84:7 85:10 85:16 104:22 105:2 105:12 106:8 108:7 112:25 129:5 129:11 132:2 132:9 132:11 132:24 133:9

**jpmorgan's**(2) 105:14 129:16

**judge**(11) 1:18 1:19 21:18 101:22 101:23 102:5 102:11 103:1 103:16 104:9 204:8

**judgment**(2) 199:2 200:15

**judgments**(1) 46:3

**jump**(1) 107:1

**jurisdiction**(3) 204:14 204:23 204:23

**just**(157) 17:21 24:4 24:7 25:10 26:25 27:13 28:10 30:18 33:6 34:13 34:14 34:17 35:7 36:14 38:12 45:19 46:6 49:6 51:6 53:11 54:13 55:2 57:1 58:21 60:10 62:1 63:4 65:5 69:5 67:17 70:4 74:15 74:18 74:20 77:2 77:21 79:3 80:7 80:8 86:9 87:15 93:5 94:13 97:15 99:7 99:14 100:22 101:3 101:20 102:8 103:22 104:7 105:5 105:16 106:20 106:23 110:17 112:1 114:17 115:3 115:18 115:19 117:10 117:19 118:9 120:2 120:12 121:12 121:15 122:10 122:11 123:7 123:21 126:8 127:20 128:8 128:10 128:13 128:24 131:4 133:10 134:17 134:20 136:5 137:22 137:25 138:2 138:2 138:20 138:24 139:13 139:21 141:14 141:16 141:16 143:18 143:19 145:5 147:11 150:15 151:24 153:3 153:19 154:3 154:19 157:17 159:6 159:21 160:2 160:2 160:23 161:1 161:11 161:22 161:23 162:5 162:14 162:18 163:15 163:25 164:8 164:8 164:8 164:10 164:13 165:3 165:4 166:13 168:24 169:3 169:9 169:12 169:14 169:23 175:21 188:8 188:9 199:15 204:19 224:13 226:13 228:22 230:2 231:18 234:6 237:6 237:17 239:15 239:19 239:22 240:20 241:9 243:2 244:24 245:1 245:18

**justice**(1) 180:16

**justification**(1) 66:4

**justify**(1) 68:9

**justin**(1) 11:18

**kalenchits**(2) 8:4 8:4

**kaminetzky**(91) 2:5 22:24 31:20 33:24 34:25 35:24 42:2 80:15 80:18 80:21 81:2 81:3 82:18 86:10 87:22 87:24 90:14 98:4 102:25 103:18 104:17 105:5 105:8 105:10 106:10 106:12 106:14 107:5 107:8 107:20 108:7 109:16 109:19 109:25 110:4 110:7 111:7 111:13 115:23 117:9 117:13 120:23 121:2 123:16 123:19 124:9 126:14 126:16 127:15 127:22 130:8 130:11 130:25 131:4 131:10 135:22 136:1 136:3 136:19 137:25 138:2 141:16 141:24 144:16 144:18 144:2 144:22 151:13 151:22 152:22 152:24 153:1 153:2 153:4 158:10 160:16 160:19 161:10 167:4 167:9 168:15 168:24 169:4 169:7 169:12 169:16 170:7 170:23 171:18 176:14 245:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| kaminetzky's(1) 175:25 | | language(15) 72:24 164:6 193:5 199:9 199:16 201:9 202:12 202:19 217:13 217:15 217:24 225:17 226:10 242:19 243:13 | | legal(15) 31:15 31:18 33:21 33:22 33:25 51:7 51:8 114:7 114:22 119:11 121:8 146:21 160:11 239:2 239:3 | | likely(25) 30:8 47:18 47:22 47:23 49:19 50:5 56:17 74:5 74:13 75:10 155:7 162:11 162:13 163:1 164:3 164:5 164:6 164:14 182:24 189:24 198:24 206:21 208:7 215:25 219:17 |
| kansa(1) 6:7 | | | | | | | |
| kaplan(5) 7:31 96:9 96:12 180:5 180:9 | | | | lemay(1) 3:32 | | | |
| kasowitz(2) 3:29 9:37 | | lanrty(1) 1:25 | | lender(8) 38:20 38:20 72:5 72:12 78:2 89:18 124:20 228:20 | | likewise(5) 186:21 186:22 190:24 191:3 191:12 |
| katharine(1) 4:21 | | large(3) 195:22 210:1 210:2 | | | | | |
| katherine(1) 5:47 | | largely(3) 213:1 218:5 218:5 | | | | limine(1) 27:21 | |
| katten(2) 10:5 11:9 | | largest(12) 19:18 82:13 85:6 92:20 93:6 93:7 93:23 95:6 98:11 101:5 172:5 172:7 | | lenders(28) 5:25 14:9 14:13 14:16 16:13 18:12 18:22 38:6 38:20 38:21 54:25 65:2 76:9 81:4 85:11 85:13 124:15 134:24 157:16 157:22 163:7 172:17 210:17 229:2 230:8 242:16 242:18 242:20 | | limit(1) 49:9 181:9 | |
| kay(1) 4:13 | | | | | | limitation(3) 191:1 193:6 201:25 | |
| kaye(2) 9:16 11:4 | | last(26) 38:2 41:5 44:21 97:15 105:6 126:17 132:16 158:12 165:7 169:9 177:7 189:7 189:16 193:16 193:24 200:19 202:1 205:20 207:10 209:1 210:12 212:11 219:8 222:25 226:20 237:14 | | | | limited(8) 57:4 64:7 65:24 143:4 198:17 210:18 241:12 241:12 | |
| keep(7) 25:13 94:14 111:8 128:17 142:22 208:9 212:4 | | | | | | | |
| keeping(1) 52:1 | | | | length(8) 13:5 14:7 14:11 41:15 65:7 97:5 152:12 153:12 | | limits(1) 140:5 | |
| keeps(1) 168:21 | | late(1) 50:2 | | | | line(23) 32:3 84:13 127:18 128:19 135:12 138:7 138:8 138:8 138:8 138:8 138:9 138:9 138:9 143:20 218:21 218:22 218:23 218:25 228:18 233:16 233:20 233:20 239:7 |
| ken(1) 6:7 | | later(6) 34:7 34:9 36:15 51:19 99:5 198:8 | | leonard(1) 1:34 | | | |
| kenneth(1) 8:20 | | latitude(1) 107:24 | | less(10) 17:2 17:4 29:23 93:4 97:18 149:25 214:4 234:18 234:20 235:10 | | | |
| kept(4) 51:6 51:6 71:21 94:21 | | latter(1) 69:23 | | | | | |
| kevin(2) 1:18 1:25 | | laughter(39) 24:25 25:15 29:21 39:10 39:12 42:21 42:24 43:2 51:12 52:2 52:5 59:20 59:24 64:21 71:7 71:15 80:23 80:25 81:7 92:12 94:12 109:21 109:24 110:3 110:6 111:1 111:5 111:10 132:8 132:13 136:2 138:1 160:14 168:23 169:6 175:18 213:9 216:11 240:15 | | lessons(1) 84:8 | | lines(1) 218:25 | |
| key(1) 91:14 | | | | let(40) 15:8 16:4 17:20 21:19 22:12 41:10 51:11 52:7 53:12 62:8 67:17 72:20 75:24 102:21 107:7 107:15 113:13 126:17 126:2 126:25 127:16 130:20 133:1 147:22 153:25 159:11 167:11 169:14 190:9 190:19 190:11 194:17 199:10 199:15 201:4 201:4 209:13 216:21 240:18 243:1 | | liquidity(1) 146:16 | |
| kicked(1) 76:12 | | | | | | list(4) 27:20 72:11 72:19 140:20 | |
| kicks(1) 24:10 | | | | | | listed(2) 132:11 183:9 | |
| kill(1) 110:25 | | | | | | listen(8) 38:2 81:25 82:2 216:6 216:7 216:12 223:21 233:23 | |
| kim(1) 8:8 | | | | | | | |
| kind(13) 15:1 31:20 41:23 48:18 49:2 57:6 57:8 61:12 107:2 109:2 162:19 204:1 230:24 | | lauren(1) 3:12 | | | | listened(1) 95:2 | |
| | | laurie(1) 4:5 | | let's(24) 12:19 23:3 34:6 34:7 36:13 36:19 54:14 59:22 60:17 68:19 147:15 147:24 154:3 154:4 165:3 189:19 189:19 218:25 226:18 229:13 231:18 234:3 236:8 242:25 | | litigated(2) 14:13 21:1 | |
| kinds(1) 233:14 | | law(39) 2:22 9:37 41:19 80:20 84:7 134:1 154:16 178:5 178:9 178:13 178:15 178:17 178:17 178:20 178:22 178:24 179:4 179:8 179:8 179:9 179:18 179:23 180:7 180:8 200:7 201:11 213:17 215:13 220:15 222:4 222:11 223:18 238:23 240:9 | | | | litigation(87) 13:7 13:8 14:10 14:14 14:19 25:3 26:9 27:1 37:2 37:21 38:12 55:21 86:21 123:4 146:13 146:20 147:17 148:15 149:4 149:6 149:10 149:15 149:19 149:24 152:3 153:7 153:10 153:20 153:20 154:4 154:7 154:16 156:2 156:5 156:9 157:12 160:21 165:17 167:23 174:3 174:8 184:20 184:21 185:6 185:7 185:8 185:23 188:1 198:13 199:1 200:23 209:10 210:7 210:12 222:2 230:3 236:12 236:13 236:20 236:25 237:7 237:10 237:11 237:17 237:18 237:18 237:21 238:2 238:3 238:4 238:6 238:8 238:9 238:10 238:11 238:11 238:13 238:16 238:20 239:1 239:5 239:6 239:11 239:13 242:18 242:24 |
| king(3) 2:18 2:24 4:23 | | | | | | | |
| kira(1) 6:39 | | | | let(7) 2:25 30:3 49:1 49:10 51:4 98:3 218:16 | | | |
| kizzy(1) 7:33 | | | | | | | |
| klausner(1) 223:8 | | lawyer(7) 71:5 83:20 83:21 88:19 116:18 116:19 168:21 | | letter(2) 91:14 220:4 | | | |
| knew(2) 94:24 168:10 | | | | let's(16) 87:23 89:17 93:14 97:12 97:12 98:5 99:15 100:22 107:4 111:22 113:13 115:20 117:14 118:14 132:16 141:3 | | litigational(2) 236:22 237:13 | |
| know(142) 13:6 25:11 26:19 29:25 32:15 32:19 32:20 32:21 32:24 33:15 33:17 35:9 35:17 35:18 35:21 44:13 44:17 45:20 47:19 50:19 50:20 50:22 53:12 54:13 56:13 59:18 67:3 67:17 72:21 72:24 75:20 75:23 76:10 77:13 81:5 85:14 89:11 93:11 93:19 93:25 102:17 103:18 105:8 106:22 107:16 107:16 107:24 107:25 108:17 111:9 113:16 114:17 115:12 115:18 118:7 118:9 120:2 120:11 120:15 122:8 122:10 123:14 123:15 126:22 126:24 128:21 129:2 129:1 129:17 129:20 131:14 132:2 132:7 132:9 133:5 133:7 133:9 133:17 133:24 134:5 134:10 134:10 134:19 136:20 136:24 137:10 137:23 138:6 139:4 139:21 140:2 141:2 142:8 143:2 143:17 144:3 144:5 147:18 148:3 151:11 154:12 156:23 157:5 157:21 159:25 160:4 160:20 160:24 160:2 162:11 162:13 163:21 163:23 164:13 164:3 164:24 165:4 165:4 165:22 168:4 175:6 175:7 175:8 196:22 203:15 204:15 206:4 206:23 209:24 220:2 226:8 226:11 234:23 234:25 235:6 239:17 239:2 240:7 242:2 244:17 246:8 | | lbo(31) 13:4 14:9 14:13 18:12 19:14 32:4 38:6 38:19 38:21 54:25 55:17 61:21 76:9 78:1 97:10 123:3 152:11 157:22 163:7 184:20 185:6 188:1 210:10 210:16 230:4 237:22 241:6 242:16 242:16 242:17 242:18 242:23 | | little(17) 17:20 43:10 48:9 62:8 74:15 111:23 143:20 152:8 153:22 154:3 157:8 189:19 190:12 198:13 198:14 228:22 229:2 | |
| | | | | liability(16) 201:16 201:20 202:14 203:3 203:25 204:3 212:5 220:8 220:17 222:7 223:3 223:7 225:12 225:14 239:2 | | litvack(1) 7:39 | |
| | | | | | | live(3) 45:12 116:25 122:4 | |
| | | | | | | llc(2) 4:34 6:30 | |
| | | lbo-lender(1) 171:10 | | liable(6) 201:12 221:11 222:21 223:1 223:3 224:4 | | llp(11) 1:23 2:30 3:31 4:4 5:5 5:15 5:20 5:46 7:36 8:7 8:15 9:9 9:15 9:29 10:5 11:4 11:9 | |
| | | lbo-related(1) 119:10 | | | | | |
| | | lead(15) 14:18 47:14 82:20 83:4 83:20 83:21 99:11 116:19 154:2 176:8 204:2 204:3 204:3 233:22 234:5 | | liang(1) 8:20 | | | |
| | | | | license(1) 41:23 | | loan(4) 154:10 154:23 236:22 237:13 | |
| knowledge(9) 85:5 116:20 124:7 134:21 138:12 143:9 167:5 167:7 183:13 | | | | liebentritt(6) 1:27 6:27 95:15 128:21 128:22 141:1 | | loans(1) 185:3 | |
| | | | | | | local(1) 200:7 | |
| | | leading(1) 53:5 | | lies(1) 108:18 | | lockup(1) 19:17 | |
| knows(2) 35:15 168:9 | | leads(2) 55:24 217:21 | | lieu(1) 118:12 | | lodge(1) 37:7 | |
| korpus(1) 9:39 | | learn(1) 170:22 | | liewant(1) 10:15 | | lodged(1) 72:16 | |
| krakauer(1) 6:15 | | learned(3) 213:23 214:1 214:8 | | light(1) 136:14 | | log(5) 113:14 113:17 113:24 114:2 114:11 | |
| kramer(1) 9:14 | | leave(2) 57:24 240:2 | | like(57) 14:1 20:14 22:25 23:1 25:9 25:11 26:7 27:13 29:24 29:24 33:5 34:8 37:7 43:10 46:20 48:2 51:9 51:24 52:9 54:14 68:1 72:13 73:9 76:23 80:22 92:15 94:22 113:9 116:23 119:9 121:18 136:12 137:6 138:22 139:9 141:1 143:24 153:24 153:25 156:24 167:9 167:22 168:12 182:4 183:22 187:4 189:3 192:17 196:20 197:17 204:16 206:19 214:16 216:2 218:17 221:3 231:15 | | loggerheads(1) 229:16 | |
| kulnis(10) 85:16 103:20 104:25 105:17 129:7 129:10 129:16 130:3 130:4 131:24 | | leaves(2) 19:5 210:12 | | | | logjam(1) 107:9 | |
| | | led(2) 135:1 223:6 | | | | log"(1) 113:16 | |
| | | leer(1) 231:5 | | | | long(22) 24:16 84:8 122:10 140:20 149:13 149:15 152:10 153:9 153:20 162:6 178:19 187:8 187:25 213:5 224:19 224:21 224:23 227:8 227:11 227:17 227:21 245:2 | |
| kurtz(14) 85:16 86:15 93:17 93:20 94:3 94:5 94:17 94:24 95:13 126:2 127:4 127:25 128:6 135:3 | | left(9) 37:13 107:10 141:5 161:15 161:20 162:8 177:2 244:1 244:3 | | | | | |
| | | | | | | | |
| kurtz's(2) 86:18 89:20 | | | | | | long-term(2) 208:8 224:22 | |
| lack(2) 225:13 225:14 | | | | | | longer(1) 171:7 | |
| lack's(1) 96:8 | | left-hand(1) 163:4 | | | | longest(1) 180:14 | |
| laid(2) 161:20 167:4 | | | | | | | |
| lance(1) 8:16 | | | | | | | |
| landis(3) 3:24 3:25 5:20 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **look**(38) 15:24 21:15 30:1 34:18 55:14 61:14 63:24 73:3 78:23 83:23 89:17 90:21 91:23 100:14 105:20 108:9 108:16 111:25 113:12 113:13 142:7 142:24 166:9 166:10 171:17 172:9 174:11 195:21 201:22 204:2 212:11 222:24 223:3 224:9 232:20 238:22 242:25 243:6 | | **mark**(9) 2:16 10:21 90:23 91:25 114:4 116:4 166:19 166:21 174:19 | | **mediation**(68) 47:2 53:5 53:19 53:20 54:2 77:20 77:24 80:9 98:9 98:14 98:18 98:19 100:23 101:9 101:12 101:19 102:15 102:21 103:4 103:17 104:4 104:8 104:19 104:22 105:2 105:20 107:13 107:18 107:23 109:1 109:11 110:8 110:13 112:21 113:3 115:11 115:12 115:15 115:17 115:18 115:21 117:123:15 123:22 124:6 124:7 124:11 124:11 126:2 127:4 127:13 127:16 128:2 128:5 128:7 128:23 128:24 129:7 130:7 130:21 135:10 135:12 135:14 135:18 135:19 135:21 176:2 176:5 | | **miles**(27) 3:18 182:8 182:8 184:1 193:17 193:24 194:3 194:8 212:25 213:5 213:7 213:10 213:12 213:14 218:17 218:20 227:12 227:15 231:18 231:18 231:20 231:22 234:13 239:24 240:6 240:16 243:24 |
| **looked**(3) 110:20 112:2 112:3 | | **marked**(4) 25:1 52:25 54:11 67:16 | | | | **million**(18) 13:20 36:4 44:19 44:21 63:14 670:9 100:1 154:6 154:9 154:12 154:13 |
| **looking**(16) 16:4 53:10 55:6 60:10 88:10 96:20 99:19 138:20 139:2 141:13 143:11 204:19 207:9 207:10 208:24 210:21 | | **market**(5) 1:10 3:27 4:8 214:9 214:14 | | | | 154:15 154:18 154:19 154:23 154:23 172:1 212:14 |
| | | **marrero**(1) 5:8 | | **mediator**(9) 97:14 98:6 98:18 99:2 101:21 101:24 113:5 124:2 124:11 | | |
| **looks**(2) 54:14 163:19 | | **marsal**(5) 8:44 8:44 10:39 124:25 125:7 | | | | **mina**(2) 6:34 6:35 |
| **losquadro**(1) 8:24 | | **marvin**(1) 5:8 | | **mediator's**(3) 102:1 103:5 103:7 | | **mind**(14) 13:23 87:1 127:20 137:14 |
| **lost**(2) 36:1 226:4 | | **materials**(4) 17:23 30:13 183:7 184:7 | | **meet**(5) 112:21 113:2 113:5 143:12 227:20 | | 148:16 151:20 151:25 152:1 153:4 157:10 |
| **lot**(11) 70:6 70:10 153:24 157:9 157:11 165:7 221:10 221:15 221:17 221:21 228:1 | | **math**(3) 32:22 46:1 156:21 | | **meeting**(57) 58:12 58:24 59:5 60:19 76:2 | | 212:4 217:22 232:18 241:15 |
| | | **mathematical**(1) 24:17 | | 76:11 78:5 85:21 95:9 95:19 95:20 95:21 | | **minds**(2) 214:21 216:1 |
| **lots**(6) 179:21 196:22 206:5 213:18 213:21 213:21 | | **mathematics**(2) 31:16 34:1 | | 95:25 96:15 97:9 105:11 106:8 106:18 106:20 108:5 112:10 112:14 112:25 117:1 | | **minimal**(3) 218:7 219:7 221:23 |
| | | **matt**(8) 23:18 45:18 125:4 125:7 125:7 | | 117:25 118:4 118:12 118:16 118:20 119:1 | | **minimis**(1) 204:1 |
| **love**(1) 106:25 | | 125:11 126:19 126:19 | | 119:5 119:25 120:9 120:12 121:12 121:21 | | **minimum**(2) 27:24 28:19 |
| **low**(5) 15:19 15:20 16:6 36:19 39:21 | | | | 122:1 122:24 123:4 123:5 123:7 123:8 | | **ministerial**(2) 218:3 218:5 |
| **lower**(7) 36:4 47:14 63:17 84:20 84:20 84:20 98:1 | | **matter**(22) 33:21 33:22 36:12 40:23 50:14 66:9 68:14 69:4 69:8 71:24 75:24 76:1 | | 123:11 125:25 127:2 127:25 128:21 143:22 173:16 173:20 174:2 174:15 174:24 | | **minkove**(1) 8:12 |
| | | 121:6 124:5 128:13 133:23 142:14 153:14 | | 175:22 176:6 233:3 233:5 | | **minor**(1) 203:21 |
| **loyalty**(2) 201:18 211:25 | | 175:9 221:23 234:3 247:5 | | | | **minority**(6) 207:8 207:14 207:18 207:25 |
| **ludwig**(1) 6:9 | | | | **meetings**(14) 73:17 75:25 76:7 76:11 | | 208:1 208:2 |
| **lugano**(1) 1:40 | | **matters**(1) 204:24 | | 76:17 77:4 77:21 78:7 89:17 103:12 105:1 | | |
| **lunch**(4) 73:10 135:23 135:24 138:24 | | **matthew**(5) 2:32 5:21 7:22 10:39 10:40 | | 106:1 108:2 108:14 | | **minute**(4) 71:18 90:20 169:14 244:8 |
| **lynch**(3) 4:4 11:4 38:19 | | **maximize**(10) 20:14 20:15 20:18 211:4 | | | | **minutes**(14) 41:25 58:11 58:20 60:1 71:13 |
| **lynn**(1) 7:18 | | 211:19 211:22 212:2 229:10 241:23 241:2 | | **meisel**(1) 1:33 | | 81:5 96:22 119:1 119:23 136:1 169:25 |
| **lyondell**(4) 158:16 158:21 158:24 159:1 | | | | **melamed**(1) 9:26 | | 171:20 172:14 213:7 |
| **macquarie**(2) 9:4 9:4 | | **maximized**(1) 20:13 | | **melwani**(10) 85:18 85:25 86:12 86:16 | | |
| **made**(23) 18:22 31:3 40:15 40:16 63:5 | | **maximizing**(4) 209:3 209:18 209:20 230:15 | | 87:16 88:9 88:13 88:19 170:21 171:16 | | **mis-recalling**(1) 115:18 |
| 96:1 102:11 102:13 109:2 122:22 130:3 | | **maximum**(2) 209:6 209:22 | | | | **mischaracterized**(1) 75:6 |
| 132:20 135:5 135:17 158:8 159:19 172:16 | | **may**(46) 15:17 28:23 34:9 36:1 36:7 37:13 | | **member**(5) 135:20 186:14 186:15 186:23 | | **mislead**(1) 112:1 |
| 172:24 174:4 223:4 229:11 231:11 233:13 | | 40:19 43:3 46:6 47:2 48:10 49:6 52:9 | | 243:9 | | **misleading**(1) 156:22 |
| | | 52:21 65:3 65:24 73:13 73:14 110:25 | | | | **missed**(2) 107:14 107:15 |
| **madlyn**(1) 4:15 | | 117:3 126:1 127:3 138:15 144:20 164:25 | | **members**(19) 17:25 18:2 18:5 18:20 18:22 | | **missing**(1) 30:20 |
| **mail**(3) 75:13 118:9 126:19 | | 176:17 177:11 177:12 181:22 182:10 | | 19:12 119:17 120:4 120:7 120:9 120:13 | | **misstate**(1) 220:2 |
| **main**(4) 32:10 32:18 33:16 138:10 | | 195:16 197:1 205:1 205:4 205:16 206:14 | | 120:17 186:12 186:25 188:10 188:11 191:1 | | **mistake**(2) 34:17 53:25 |
| **major**(4) 13:14 226:14 236:10 236:17 | | 207:15 209:5 213:11 218:18 218:19 225:1 | | 227:6 232:5 | | **mistaken**(1) 44:20 |
| **majority**(2) 106:16 132:18 | | 227:13 233:4 242:16 243:25 | | | | **mistakes**(3) 231:6 231:7 231:8 |
| **make**(43) 16:4 16:11 29:5 29:18 39:18 | | | | **members"**(1) 120:2 | | **mix**(2) 29:25 34:5 |
| 39:21 42:20 44:4 46:3 46:11 46:15 63:4 | | **maybe**(12) 29:22 35:13 36:3 86:21 111:24 | | **mention**(1) 166:11 | | **mlcc**(1) 38:19 |
| 70:5 74:11 74:16 97:25 102:8 106:23 | | 115:17 138:23 163:4 163:5 196:16 196:16 | | **mentioned**(10) 69:11 70:14 111:24 158:11 | | **model**(146) 22:20 23:12 24:7 24:9 24:13 |
| 121:15 122:2 123:3 123:9 132:24 134:23 | | 213:7 | | 158:11 160:23 186:20 188:4 188:20 220:1 | | 25:5 25:22 25:24 26:10 27:19 29:3 30:16 |
| 135:14 138:24 142:23 143:23 143:24 144:0 | | **mayer**(1) 4:21 9:29 | | | | 30:25 31:14 31:16 32:8 34:1 34:19 35:12 |
| 169:24 175:2 195:4 206:21 208:9 217:24 | | **mccarter**(2) 4:20 9:19 | | **merely**(1) 211:14 | | 36:24 39:14 40:2 40:13 40:15 40:19 40:20 |
| 219:2 225:18 227:18 228:22 231:6 235:21 | | **mccolm**(1) 6:47 | | **merge**(1) 194:4 | | 40:24 42:8 43:11 43:14 43:17 43:24 44:6 |
| 237:6 | | **mccormack**(1) 3:33 | | **merger**(6) 192:18 192:21 194:14 195:23 | | 44:7 44:13 44:15 44:16 44:22 45:1 45:4 |
| **makes**(5) 26:12 39:20 182:21 205:15 229:1 | | **mccormick**(2) 10:4 11:8 | | 229:20 231:3 | | 45:7 45:12 45:23 46:1 46:10 46:22 46:24 |
| **making**(5) 29:6 134:7 198:17 199:17 | | **mccutchen**(1) 9:9 | | | | 46:24 47:3 47:16 47:20 47:23 47:24 48:10 |
| **man**(1) 19:6 | | **mcdaniel**(1) 2:23 | | **mergers**(4) 179:5 179:10 179:15 233:2 | | 48:11 48:16 48:23 49:3 50:1 50:9 50:12 |
| **managed**(1) 99:25 | | **mcguire**(1) 5:21 | | **merging**(1) 196:20 | | 50:14 50:22 50:25 51:1 51:18 51:19 51:23 |
| **management**(21) 4:42 7:21 7:21 7:44 7:44 | | **mcneill**(1) 4:6 | | **merit**(1) 74:15 | | 52:19 54:7 54:14 54:20 54:23 55:3 55:4 |
| 8:15 8:19 8:19 8:23 8:23 8:40 8:40 9:44 | | **meagher**(1) 7:12 | | **merits**(4) 76:15 78:20 236:21 237:12 | | 55:7 55:7 56:22 56:6 61:11 62:19 62:5 |
| 9:44 11:21 11:25 11:25 13:16 177:25 | | **mean**(50) 16:10 19:25 20:6 30:1 33:12 | | **merrill**(3) 4:41 4:14 38:19 | | 63:9 63:14 63:25 65:2 65:4 65:9 65:14 |
| 208:9 229:5 | | 33:13 33:15 34:25 35:3 47:18 47:22 47:22 | | **message**(1) 222:13 | | 66:2 66:14 66:19 68:16 72:8 74:1 74:12 |
| | | 49:13 73:6 87:25 100:14 101:19 102:16 | | **met**(13) 45:16 45:18 85:10 85:13 85:17 | | 76:12 78:21 79:16 79:24 110:12 116:25 |
| **mandava**(2) 117:23 118:8 | | 104:1 107:23 108:14 108:16 108:25 110:2 | | 103:19 104:18 104:22 122:9 122:25 129:7 | | 117:15 117:17 118:1 118:6 118:21 119:14 |
| **manges**(1) 7:36 | | 110:23 114:14 117:11 127:23 128:6 | | 130:2 131:24 | | 120:9 121:14 121:17 121:18 121:22 121:25 |
| **manipulate**(7) 43:24 45:23 47:24 47:25 | | 131:14 135:15 146:2 147:21 149:8 156:22 | | | | 122:2 122:7 122:20 133:3 133:11 133:15 |
| 48:1 48:5 122:19 | | 159:9 159:23 161:2 161:3 163:15 163:24 | | **methodology**(2) 155:13 163:17 | | 133:21 133:23 133:24 134:6 134:9 134:14 |
| **manner**(4) 47:25 109:1 185:16 238:18 | | 164:14 164:15 165:1 166:22 168:7 168:24 | | **michael**(3) 2:7 9:30 25:19 | | 138:6 142:8 142:9 142:11 163:19 163:19 |
| **many**(13) 14:12 35:4 35:4 38:10 101:14 | | 214:23 226:2 226:9 | | **michelle**(2) 3:5 5:27 | | 165:8 165:8 165:11 165:25 166:12 167:17 |
| 142:22 154:15 160:13 173:20 201:1 215:19 | | | | **microphone**(3) 131:2 177:5 181:23 | | 167:18 167:22 168:4 169:9 173:7 173:18 |
| 234:24 235:7 | | **meant**(4) 35:13 47:18 56:17 199:15 | | **middle**(1) 141:18 | | 174:5 216:9 |
| | | **mechanics**(4) 45:22 46:10 46:13 103:16 | | **might**(30) 16:22 25:16 38:15 41:8 47:6 | | |
| **marc**(3) 3:37 5:6 5:10 | | **mechanism**(1) 228:9 | | 47:10 47:14 50:11 50:24 62:5 73:8 84:14 | | **model."**(1) 122:14 |
| **march**(6) 1:13 12:2 72:10 72:11 183:23 | | **media**(5) 194:6 206:5 206:18 233:6 236:6 | | 85:23 117:20 156:24 193:16 195:19 202:2 | | **modeled**(4) 46:3 47:7 63:11 75:2 |
| 247:7 | | | | 205:24 207:8 208:22 209:3 211:3 211:17 | | **modeling**(3) 165:18 165:22 165:24 |
| | | | | 212:1 212:13 218:15 219:1 230:8 246:6 | | **models**(7) 24:14 30:25 46:16 62:12 117:10 |
| **marie**(1) 9:34 | | | | | | 165:15 167:22 |
| **marino**(1) 3:5 | | | | **mike**(2) 8:32 223:8 | | |
| | | | | | | **modify**(1) 191:21 |
| | | | | | | **mollis**(2) 112:5 134:3 |
| | | | | | | **moment**(13) 26:25 36:18 39:2 39:6 53:2 |
| | | | | | | 53:14 57:2 65:24 71:12 86:5 172:8 216:2 |
| | | | | | | 243:3 |

| Word | Page:Line |
| --- | --- |

**monetary**(8) 69:18 201:13 201:16 201:20 203:25 204:2 205:11 222:6

**money**(15) 13:18 13:25 16:25 21:13 24:6 69:24 70:10 108:3 131:20 131:22 146:20 149:5 157:25 217:18 223:10

**moniker**(1) 114:17
**montenegro**(1) 9:38
**month**(1) 90:1
**months**(6) 94:15 129:14 130:2 131:24 132:16 231:6

**more**(36) 13:25 16:15 17:1 17:2 29:23 39:11 44:10 57:3 69:18 70:6 71:11 76:23 108:9 109:7 113:8 132:6 135:25 137:16 137:19 142:25 148:9 148:21 148:23 152:8 153:22 154:3 160:2 163:25 195:4 196:20 199:8 203:8 206:20 210:8 225:21 226:1

**moreover**(1) 200:5
**morgan**(6) 2:4 7:36 8:7 8:11 25:19 38:19
**morning**(19) 12:4 12:5 12:17 12:18 40:7 41:4 42:5 43:8 43:9 81:8 81:10 82:6 82:9 92:8 126:23 144:24 150:11 173:11 244:24

**morning,"**(1) 126:20
**mort**(1) 18:11
**moskowitz**(1) 2:8
**most**(7) 13:10 39:5 103:8 211:15 223:7 228:8 244:6

**motion**(6) 87:21 87:22 115:4 123:1 123:6 123:14 174:25 175:4

**motions**(1) 27:21
**move**(15) 36:19 86:20 87:8 88:1 97:21 111:22 117:14 118:14 123:16 123:16 130: 161:2 226:18

**moving**(1) 150:11
**much**(19) 12:9 13:18 24:6 29:24 43:5 63:17 74:18 84:6 135:25 140:7 151:3 151:18 152:10 153:8 160:21 194:12 209:5 213:22 246:20
**muchin**(2) 10:5 11:9
**mulhern**(1) 81:6
**mullis**(5) 45:13 45:17 45:22 46:2 46:6
**multiple**(5) 28:16 28:20 105:1 126:10 161:22

**multiplied**(1) 56:19
**multiplying**(1) 156:18
**murphy**(1) 10:45
**must**(7) 18:4 47:19 119:10 188:11 207:16 211:9 235:4

**mute**(1) 21:20
**mutual**(1) 19:22
**myers**(1) 5:36
**myrick**(1) 6:13
**myself**(2) 54:6 174:19
**mystified**(1) 210:13
**name**(1) 177:6
**named**(1) 98:8
**namely**(1) 209:19
**narrow**(4) 99:14 99:16 164:22 217:18
**nature**(5) 39:5 107:22 108:9 142:25 174:2
**near**(1) 131:2
**necessarily**(5) 42:6 46:6 49:7 108:16
**necessary**(6) 89:10 136:13 174:4 205:1 225:21 246:9

**need**(19) 17:1 17:12 37:16 42:17 67:12 76:23 84:5 131:2 168:8 168:9 175:16 190:3 192:9 192:22 216:12 233:6 234:17 235:16 245:23

**needed**(6) 31:10 76:14 77:10 77:15 78:19 130:23

**needles**(2) 223:12 223:13
**needs**(3) 212:4 233:2 233:4
**neftalis**(1) 9:14
**negative**(1) 44:22
**negatively**(1) 198:23
**negotiate**(2) 14:8 135:4
**negotiated**(3) 14:7 130:22 176:3
**negotiation**(4) 14:11 106:21 135:1 152:12
**negotiations**(6) 81:18 85:8 129:24 130:17 131:17 132:22

**neil**(1) 8:24
**net**(1) 13:11
**never**(15) 13:25 35:8 38:4 41:20 67:1 77:25 78:5 78:25 80:10 108:1 108:14 130:16 159:1 159:1 166:12

**new**(27) 2:11 2:34 2:43 3:7 3:40 4:17 15:14 42:17 95:10 183:11 184:17 185:1 185:3 185:5 185:4 185:7 187:6 188:4 188:6 188:10 188:17 194:6 198:19 199:20 208:5 223:13 227:19

**newman**(26) 2:41 176:23 177:10 177:13 177:22 177:24 178:11 181:21 182:3 182:4 182:12 182:13 183:21 184:5 184:6 189:1 189:2 197:15 197:16 212:22 239:19 240:1 240:5 240:20 240:23 243:22

**news**(1) 10:35
**next**(12) 31:21 75:19 84:12 119:8 123:15 126:23 166:5 167:6 169:11 172:23 176:1 176:20
**nicholas**(1) 7:45
**nick**(1) 7:14
**night**(9) 41:5 44:21 122:25 193:16 193:24 202:11 219:8 226:20 237:15

**nilly**(1) 187:22
**nimbly**(1) 214:18
**nine**(6) 173:22 191:22 191:24 194:22 228:5 230:7

**ninety-nine**(1) 191:10
**ninety-two**(1) 14:23
**nominate**(1) 18:13
**nominated**(2) 18:7 18:12
**non-avoidanc**(2) 32:4 32:14
**non-class**(1) 196:10
**non-flawed**(1) 107:22
**non-intentiona**(3) 201:17 201:19 220:19
**non-lbo**(3) 14:5 34:19 154:25
**non-party**(1) 10:14
**non-responsiv**(2) 87:20 123:17
**non-settling**(1) 159:5
**none**(4) 151:20 196:16 227:8 227:17
**nonetheless**(3) 192:7 219:22 223:15
**nor**(2) 42:16 163:18
**norm**(1) 222:1
**normal**(1) 133:24
**normally**(2) 20:8 143:18
**norman**(1) 1:35
**north**(3) 2:18 2:24 4:8
**northwest**(5) 181:3 181:4 181:7 181:11 181:16

**not**(268) 14:20 15:2 15:11 15:21 16:14 18:15 20:14 20:15 20:18 21:7 23:6 23:13 23:16 24:2 24:2 24:3 25:8 25:12 25:21 26:14 26:20 27:18 28:12 28:13 28:21 29:8 29:9 29:19 30:6 31:1 31:12 31:14 31:16 31:17 32:21 33:8 33:23 34:20 35:17 35:22 37:3 37:22 40:25 41:4 41:16 42:8 42:9 42:14 44:11 44:15 44:16 46:1 46:1 46:2 46:5 46:6 48:10 48:25 49:4 50:5 51:7 51:17 52:15 53:3 53:20 55:3 57:5 60:25 64:17 65:5 65:14 65:17 65:20 66:19 68:11 68:22 69:3 69:13 69:14 69:24 70:18 72:11 72:25 74:11 75:2 75:7 75:10 75:20 76:6 77:2 78:16 78:16 79:17 80:2 84:19 85:13 85:23 87:1 87:4 87:10 87:13 92:11 92:20 92:22 93:5 95:5 98:1 103:20 103:22 103:23 104:3 104:4 104:5 104:11 104:14 106:2 108:10 108:13 109:2 109:16 111:7 114:13 115:9 115:13 118:7 119:20 120:1 120:8 122:8 122:17 123:21 126:13 127:12 128:9 129:11 132:23 132:24 133:24 134:16 134:18 134:19 136:16 137:4 140:11 141:17 141:20 142:14 142:21 143: 143:12 143:16 143:20 149:7 151:2 152:10 154:12 156:5 156:23 156:25 157:13 157:17 158:5 158:23 159:14 161:7 162:4 162:6 163:5 163:5 163:18 163:21 164:8 164:11 164:19 165:21 168:1 168:2 168:15 172:20 183:4 186:23 187:21 190:7 192:15 192:24 192:25 193:19 196:23 198:17 201:11 202: 202:13 202:24 203:1 203:20 204:5 204:1 206:23 207:15 207:20 208:1 209:5 210:18 211:10 212:9 212:15 212:16 212:16 212:22 212:21 213:3 213:22 214:18 214:20 214:23 214:24 215:19 215:22 215:23 215:24 217:9 218:10 218:11 218:12 219:11 220:1 220:5 221:1 221:5 222:23 225:13 225:20 226:3 226:14 226:21 226:22 226:22 227:13 228:10 228:16 228:24 230:23 230:24 231:1 232:5 232:16 233:22 235:5 235:6 235:20 235:23 236:1 236:2 236:4 236:6 236:23 237:17 238:24 239:10 241:11 242:19 242:23 244:6 245:22

**note**(6) 12:19 14:3 40:16 177:15 186:16 239:20

**noted**(3) 123:20 123:20 123:21
**noteholder**(60) 14:4 14:18 15:1 15:3 15:7 15:9 15:13 15:15 15:25 17:21 17:22 18:14 18:24 18:25 19:5 19:10 20:3 20:5 22:1 22:14 25:2 72:3 72:17 82:13 85:6 92:20 93:7 93:23 95:6 98:11 145:9 145:12 145:17 145:20 147:4 147:11 147:16 148:1 176:21 178:1 182:6 182:18 182:23 183:4 183:10 184:10 185:17 189:7 189:14 204:1 204:16 204:16 204:21 205:2 205:5 205:7 215:16 216:15 220:20 240:25

**noteholder's**(1) 213:4
**noteholders**(18) 14:21 21:4 141:5 144:24 145:2 145:5 147:1 149:6 150:12 150:16 161:6 165:16 210:17 213:2 241:24 242:15 243:18 244:3

**noteholders'**(2) 138:22 141:7

**notes**(20) 12:25 14:23 55:25 61:18 61:20 97:6 100:5 101:16 106:17 154:6 172:10 186:16 208:23 209:4 209:4 209:8 210:5 211:4 211:18 212:1 212:21

**notes,"**(1) 100:2
**nothing**(9) 20:6 26:3 55:5 80:13 104:9 138:17 176:14 183:7 193:12

**notice**(2) 99:25 100:7
**notion**(2) 184:20 191:19
**notwithstanding**(1) 202:2

**november**(5) 77:25 80:9 94:16 124:25 126:13

**now**(132) 13:17 15:6 16:21 17:20 18:23 19:4 20:2 20:20 22:12 25:17 27:22 34:16 35:9 35:10 35:11 35:17 40:4 51:8 51:21 52:20 57:8 63:13 68:8 70:24 81:25 82:12 82:19 82:25 83:12 84:13 84:25 85:5 86:19 88:5 89:17 89:24 91:21 94:3 94:7 94:16 97:5 97:13 98:23 100:1 101:8 101:21 103:4 103:15 104:18 107:14 109:18 113:8 113:13 115:6 116:23 116:23 116:24 119:8 123:20 123:20 123:21 124:14 124:15 125:23 127:10 127:23 127:24 129:2 135:24 136:8 136:8 139:1 140:18 140:19 143:22 143:24 145:20 146:8 146:9 146:20 147:15 149:5 149:10 149:17 149:18 151:2 154:3 154:5 155:2 155:6 155:6 155:13 155:21 155:21 155:23 158:11 158:12 159:6 160:6 161:11 165:7 165:11 166:9 174:11 179:16 182:14 198:21 200:19 202:18 207:9 208:8 210:21 211:20 215:6 215:15 216:24 217:15 219:10 220:14 221:1 230:7 231:14 234:5 237:1 237:2 237:3 237:7 238:13 239:17 240:7 244:14 245:3

**npp**(8) 22:7 22:11 177:14 183:22 184:2 184:4 198:6 248:12

**npp2222**(1) 204:18
**nullity**(1) 150:9
**number**(43) 14:14 27:19 27:20 28:1 36:3 36:4 39:22 40:22 43:13 44:20 47:25 48:3 50:11 52:15 63:6 74:21 76:16 76:21 77:2 77:2 77:17 78:25 79:7 91:11 91:23 97:16 104:15 113:23 135:16 162:12 163:14 165:3 168:1 177:14 190:11 191:6 191:8 191:14 192:19 192:21 193:13 219:6 235:8

**numbered**(2) 11:60 60:15
**numbers**(12) 24:10 27:12 28:5 32:24 48:23 77:13 125:16 125:18 125:19 132:12 162:20 162:24

**numeral**(2) 198:13 198:14
**numerous**(4) 130:22 179:9 179:25 181:17
**oaktree**(4) 8:18 8:19 132:20 132:21
**oath**(1) 12:11
**obey**(1) 200:7
**object**(12) 23:2 42:8 42:12 51:5 57:2 72:12 82:24 89:14 103:15 117:3 117:5 124:8
**objected**(3) 72:6 72:11 72:13
**objecting**(1) 67:8
**objection**(57) 22:6 22:10 22:24 23:5 23:7 25:16 37:8 41:11 42:4 51:14 51:25 53:17 61:25 64:4 65:23 67:12 68:2 70:22 72:12 72:16 72:22 75:6 79:14 82:15 86:3 87:19 89:8 102:22 104:16 105:3 105:7 106:3 117:7 124:6 126:5 127:14 130:24 131:5 131:8 136:14 136:23 137:4 141:8 160:9 161:9 167:3 168:22 170:23 182:7 182:9 183:25 184:1 184:3 226:16 230:6 239:19 239:25
**objections**(4) 72:10 73:4 136:15 142:17
**objector**(1) 30:9
**obligates**(1) 189:25
**obligation**(13) 200:17 204:12 205:9 216:18 217:25 219:4 219:5 224:9 224:10 224:11 224:12 224:23 224:24

**obligations**(5) 38:22 155:10 200:5 202:21 218:15

**observation**(1) 26:21
**observations**(1) 26:20
**obtain**(4) 149:10 207:17 209:11 210:8
**obtaining**(2) 190:1 192:6
**obvious**(3) 27:23 196:23 228:16

**Word** Page:Line

obviously(5) 27:15 72:17 142:15 161:22 167:19

occasion(1) 24:15

occur(1) 149:12

occurred(5) 41:13 99:12 100:20 112:14 202:17

october(30) 50:3 94:16 113:9 114:3 114:25 115:6 115:8 115:13 115:21 115:25 116:24 117:14 117:16 117:17 118:6 118:1 118:16 119:24 121:4 121:18 123:4 123:7 124:14 165:8 165:24 167:22 173:13 173:1 173:21 174:12

off(5) 72:21 126:15 136:10 151:8 213:2

offer(7) 23:2 26:8 26:18 66:8 134:22 136:13 146:14

offered(9) 28:13 31:17 31:18 36:10 57:12 66:4 143:1 143:16 146:4

offering(2) 66:19 212:21

office(4) 95:10 112:5 117:24 174:23

officer(5) 202:9 202:16 202:20 217:5 223:2 223:20 225:9

officers(7) 164:4 198:10 198:12 202:14 223:2 223:20 225:9

official(3) 3:23 5:4 243:9

often(3) 151:5 153:21 222:3

okay(283) 12:23 13:17 14:3 15:3 15:24 16:5 16:8 16:16 16:21 17:6 17:13 17:20 18:7 18:10 18:12 18:16 18:23 19:9 20:24 21:4 21:12 21:15 22:2 22:18 22:23 23:8 23:14 23:20 23:22 24:11 24:14 24:17 24:24 25:6 27:12 32:13 36:17 36:18 38:4 38:9 38:11 44:3 45:4 42:25 43:17 46:19 48:18 50:1 50:8 53:16 54:18 55:7 55:11 56:3 60:6 60:17 61:22 62:15 65:12 68:24 69:6 69:24 70:11 70:16 71:21 72:1 73:12 73:23 73:25 76:6 77:24 78:13 79:9 80:21 81:3 81:11 82:5 82:7 82:12 83:15 84:12 85:22 86:15 86:19 89:17 89:24 90:5 90:19 91:1 91:17 92:15 93:3 93:6 93:14 93:19 94:3 94:7 95:5 96:3 96:13 97:9 99:18 100:14 100:16 101:1 101:3 101:14 101:16 101:21 102:24 103:4 103:11 105:1 105:14 106:1 106:15 109:5 109:6 109:9 109:19 109:25 110:15 111:9 111:14 111:20 113:5 113:8 113:13 113:19 114:19 114:24 115:2 115:20 115:24 116:1 116:2 116:23 117:4 117:22 118:5 118:11 118:14 120:15 121:2 121:24 122:17 122:22 123:20 124:18 125:14 126:22 128:18 129:2 129:10 130:2 130:15 132:7 132:11 133:5 133:18 133:25 135:22 137:25 139:19 141:10 141:22 142:12 144:6 144:10 144:11 144:13 144:1 145:8 145:12 145:20 146:24 147:7 147:15 147:18 147:25 148:3 148:9 148:18 149:2 150:10 150:11 150:22 151:2 152:24 154:3 154:9 154:20 156:8 156:11 156:17 158:6 158:15 159:13 159:22 160:6 161:21 162:4 162:10 165:6 165:11 165:14 166:3 166:8 166:15 166:18 166:21 169:2 169:12 169:1 170:12 170:19 170:22 171:3 171:17 171:19 171:24 172:4 172:9 172:13 172:18 173:5 173:10 173:20 173:23 174:1 174:11 174:14 174:18 174:22 174:24 175:2 175:1 175:19 175:25 176:4 177:9 177:13 180:12 189:13 197:14 198:6 199:3 199:12 203:7 203:10 204:18 209:21 210:14 213:8 216:5 216:14 216:23 219:14 225:1 228:1 229:22 230:1 232:3 232:17 232:24 233:15 235:6 236:6 236:18 237:4 237:6 240:5 241:20 242:13 243:2 244:9 244:11 244:14 244:22 245:3 245:16 246:3

olinsky(1) 9:10

omission(2) 202:16 202:17

once(6) 86:24 105:12 130:24 152:11 153:9 184:20

one(121) 1:29 2:17 2:42 3:20 11:29 11:29 13:9 15:18 16:5 18:1 17:19 32:3 32:5 32:6 32:6 32:10 33:2 35:25 38:23 39:9 39:4 44:3 46:22 47:16 48:14 50:9 50:24 50:25 51:3 51:6 51:16 52:20 53:5 54:10 53:24 66:16 71:24 73:3 73:21 74:9 78:3 80:8 81:11 86:5 90:16 91:11 96:8 101:20 103:13 103:24 106:18 107:3 110:25 110:2 123:21 123:6 133:25 136:24 137:10 137:16 139:14 143:13 148:23 150:2 150:4 151:18 160:13 160:17 162:7 162:8 163:25 166:12 167:6 168:13 168:13 169:14 172:1 175:10 180:19 180:25 188:9 188:9 191:9 192:15 195:23 196:9 200:24 201:22 202:6 204:6 207:14 212:3 212:4 214:1 215:17 217:21 219:7 222:11 224:14 224:17 224:20 228:20 229:23 230:2 230:24 236:10 238:1 241:4 241:5 242:20 245:8

one-fourth(1) 93:25

ones(1) 157:22

ongoing(1) 207:4

only(21) 17:16 61:19 61:20 67:2 69:12 77:17 79:1 81:5 101:1 104:2 140:22 150:1 159:4 160:3 160:13 194:20 197:5 207:15 223:13 230:7 235:8

onto(1) 19:19

open(3) 18:20 51:25 102:16

opened(4) 40:17 41:7 170:24 171:2

opening(4) 18:24 81:22 81:25 142:22

operate(2) 20:8 217:16

operates(1) 159:20

opines(1) 212:12

opinion(19) 25:6 26:18 29:2 30:7 31:15 31:18 160:11 181:14 182:17 182:23 197:2 203:10 207:20 212:15 212:17 212:21 236:18 241:3 241:21

opinions(4) 26:8 28:13 30:14 143:4

opponents(1) 131:7

opportunities(2) 207:5 241:18

opportunity(19) 26:14 28:18 28:19 29:9 30:11 30:12 30:18 43:19 43:23 78:4 98:1 121:3 136:17 137:11 143:24 144:1 144:9 149:4 246:14

opposed(9) 13:21 13:22 21:5 69:25 139:19 142:8 149:17 211:14 245:24

opposition(3) 18:23 196:7 220:9

opt(1) 154:15

opted(1) 154:14

option(22) 13:2 145:21 145:23 146:4 146:9 146:19 146:24 146:25 147:16 148:11 148:12 149:3 149:9 149:14 149:20 149:22 150:2 150:4 150:4 150:8 187:12

options(1) 15:22

oranges(2) 61:13 62:2

order(29) 15:1 98:8 98:17 125:21 140:13 140:23 146:15 157:1 157:14 158:11 158:12 158:22 158:25 159:1 159:4 159:7 159:12 159:16 159:17 159:23 160:3 161:7 184:24 185:17 190:9 194:5 204:8 227:18 227:20

ordered(2) 185:19 187:11

orders(4) 185:9 187:14 188:2 205:1

ordinarily(1) 143:1

ordinary(2) 151:7 203:19

organization(1) 88:6

organized(1) 179:25

original(3) 16:16 48:11 51:17

originally(2) 17:22 75:2

other(100) 14:9 14:21 22:13 23:6 27:16 30:5 30:25 32:6 33:1 33:4 33:4 35:25 39:9 39:23 40:1 40:20 41:3 43:13 43:18 43:22 44:5 44:12 47:3 47:9 48:19 50:2 50:20 50:22 51:21 55:4 57:15 62:15 65:6 66:4 66:15 68:18 69:13 78:2 78:14 80:11 82:9 85:11 92:17 93:12 103:7 107:5 108:20 113:2 120:15 120:17 120:19 133:1 133:13 134:1 137:15 139:14 153:10 156:24 159:18 163:2 163:3 163:4 163:20 164:10 165:15 165:24 167:6 168:9 168:16 168:18 169:18 179:19 180:19 181:1 181:1 183:13 191:10 193:15 195:23 199:1 201:18 202:22 205:6 207:25 208:15 208:16 208:19 209:19 214:3 214:10 214:1 215:10 221:1 226:12 228:25 236:11 240:19 243:21 245:8

others(14) 40:19 67:8 72:13 99:22 103:20 114:4 116:5 117:25 143:12 162:14 175:22 213:25 214:6 243:19

otherwise(4) 73:8 139:12 143:9 202:6

other's(2) 125:16 125:17

our(53) 12:20 12:24 13:8 13:23 13:25 14:12 14:24 14:25 16:3 16:24 19:14 20:7 20:19 27:20 41:6 41:11 47:16 48:21 50:1 50:13 53:19 61:4 63:9 63:12 70:2 72:10 72:12 72:18 74:1 74:8 74:12 77:9 78:10 78:21 92:7 92:22 100:4 108:24 111:22 112:18 115:3 122:8 136:23 139:25 140:17 148:13 149:11 160:2 165:1 165:19 174:2 224:2 244:25

ours(1) 40:1

out(85) 19:20 20:10 20:14 24:10 37:13 46:23 48:1 50:18 51:6 51:6 56:12 56:15 57:10 63:11 64:19 66:8 74:5 75:16 76:12 78:22 81:22 83:6 85:12 85:14 85:18 86:1 86:13 86:17 86:22 87:9 88:2 89:1 89:15 94:5 94:10 100:22 107:10 108:3 124:16 126:2 127:4 128:1 128:24 132:21 134:5 135:6 135:8 135:9 142:5 148:16 151:6 154:14 154:16 157:9 157:11 161:20 163:1 165:20 167:15 167:20 167:21 180:24 184:24 193:5 202:15 203:8 203:11 203:25 206:15 210:22 210:25 211:7 211:8 214:17 217:19 221:3 221:19 222:10 223:10 224:2 225:25 226:1 226:6 238:20 242:4

outcome(10) 25:2 37:2 37:21 38:12 108:1 146:13 149:10 184:20 188:1 196:25

outcomes(3) 28:14 165:17 167:23

outcomes."(1) 119:18

outlined(1) 75:21

output(11) 27:24 34:18 35:6 36:6 39:14 44:18 54:14 54:20 54:23 55:4 55:7

outputs(2) 54:6 54:9

outside(5) 77:20 109:11 130:21 135:17 135:19 222:25 223:10

outstanding(1) 191:9

over(24) 13:20 17:13 18:25 68:11 118:21 135:11 136:25 138:24 143:20 146:2 156:6 172:9 178:25 191:24 196:15 201:23 204:1 204:21 204:22 220:9 226:15 230:3 230:5 231:25

overly(1) 50:12

overnight(1) 233:2

overpayment(1) 156:8

overrule(1) 51:25

overruled(5) 37:14 71:2 82:16 131:9

oversee(2) 186:10 195:6

oversell(1) 94:11

overstate(1) 93:10

owe(2) 187:2 211:20

own(15) 19:16 27:18 29:22 46:16 55:3 63:15 66:8 67:8 68:8 85:5 137:14 143:16 168:5 222:10 223:11

owned(5) 83:2 132:19 158:24 172:1 181:4

ownership(5) 19:6 19:24 19:25 215:15 240:24

oxford(1) 178:4

o'melveny(1) 5:36

p.a(1) 1:34

p.m(4) 142:1 142:1 172:11 246:22

page(48) 16:1 17:11 17:14 17:14 31:21 34:18 44:24 53:9 54:23 55:5 58:14 60:15 60:20 67:19 83:23 83:23 84:1 84:12 84:13 84:15 96:23 113:24 138:7 171:25 172:9 182:14 189:4 189:10 189:11 197:17 197:20 198:7 200:19 201:23 205:18 205:18 205:20 207:9 208:25 209:7 210:21 212:11 217:2 218:21 218:22 218:23 233:16 239:7

pages(9) 17:10 29:13 31:7 33:20 55:6 92:1 142:4 167:1 243:6

paid(5) 154:9 154:11 223:10

pairs(1) 181:8

papers(3) 31:6 109:4 179:22

par(14) 58:18 59:4 60:3 60:6 60:13 61:11 61:15 61:17 61:19 61:22 62:9 62:15 63:19 97:7

paragraph(28) 83:25 119:2 119:8 120:17 120:23 189:7 189:8 189:16 197:20 198:4 198:4 201:7 201:8 201:23 201:24 201:25 202:1 205:20 207:11 209:1 209:7 209:13 210:21 212:11 217:2 225:22 226:4 226:5

paragraph"(1) 120:22

parent(7) 49:9 49:16 146:4 147:5 147:23 147:24 148:17

park(4) 2:42 4:16 5:5 9:37

parke(1) 3:31

part(12) 16:9 59:12 63:5 64:17 68:1 82:8 103:24 120:15 128:24 147:11 153:20 244:21

participate(5) 23:14 95:24 179:19 179:21 189:23

participated(5) 76:1 95:19 95:21 96:3 171:21

participation(1) 32:4

particular(19) 15:22 53:10 58:15 60:10 125:2 143:19 146:11 146:15 150:6 159:8 161:24 163:22 168:2 182:19 184:17 186:14 204:24 212:8 228:2

particularly(3) 14:14 163:21 231:2

parties(42) 20:18 33:23 43:13 43:18 43:22 44:5 46:9 46:14 46:20 48:19 48:21 50:2 57:15 66:11 66:15 73:1 78:2 80:11 84:5 86:25 87:3 102:12 103:6 103:8 103:12 107:19 124:11 130:22 131:6 133:13 134:10 145:10 145:17 159:18 159:18 161:13 180:21 180:24 191:21 210:19 229:20

parties."(1) 119:18

parties'(2) 107:13 133:22

partner(6) 8:15 88:22 205:22 205:24 206:22 215:9

partners(13) 8:31 8:31 10:9 10:25 11:13 11:13 11:21 11:29 11:29 96:9 214:21 216:1 216:5

partnerships(1) 20:4

parts(2) 215:3 215:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **party**(17) 10:9 41:3 44:12 47:3 66:7 78:11 98:8 98:14 131:7 142:5 171:6 180:25 207:2 207:2 207:24 208:19 238:12 | | **phone**(10) 21:17 21:19 21:19 111:23 125:19 130:3 130:18 132:15 241:24 242:1 | | **points**(3) 42:6 65:2 211:7 | | **pretty**(1) 27:6 | |
| | | | | **policy**(1) 179:1 | | **prevent**(3) 38:21 232:11 241:17 | |
| | | | | **polk**(7) 2:4 8:7 25:19 81:3 129:17 132:9 132:11 | | **previous**(2) 120:4 236:23 | |
| | | **phones**(24) 12:25 14:24 15:18 15:19 15:20 15:20 16:5 39:19 39:19 39:20 39:21 55:25 61:18 186:16 208:23 209:4 209:5 209:8 210:5 210:17 211:4 211:18 212:1 243:19 | | | | **previously**(5) 118:21 119:15 119:16 120:16 180:12 | |
| **parver**(1) 4:14 | | | | | | | |
| **past**(2) 74:11 79:15 | | | | **poor**(1) 109:22 | | **price**(3) 99:11 146:15 146:25 | |
| **patented**(1) 92:9 | | | | **portion**(2) 120:17 171:11 | | **prieto**(2) 166:18 173:7 | |
| **path**(3) 62:15 62:25 63:19 | | | | **portions**(1) 124:19 | | **primarily**(3) 184:16 200:16 217:18 | |
| **patrick**(1) 6:17 | | **phrase**(4) 62:8 120:1 120:3 217:17 | | **pose**(2) 183:5 205:14 | | **primary**(8) 185:13 188:13 188:14 190:13 192:2 195:6 209:16 211:23 | |
| **paul**(2) 2:31 6:38 | | **pick**(1) 132:15 | | **posed**(1) 109:13 | | | |
| **pause**(7) 124:1 151:21 166:7 169:15 175:13 177:20 188:19 | | **picked**(1) 130:3 | | **poses**(1) 217:15 | | **primof**(1) 4:15 | |
| | | **pickering**(1) 5:25 | | **position**(23) 19:21 19:22 46:15 67:7 78:20 82:20 89:5 92:23 93:13 98:24 99:5 105:25 106:16 108:4 134:10 140:9 153:11 170:8 171:1 206:12 215:6 218:11 218:12 | | **principal**(1) 14:8 | |
| **pay**(4) 16:25 21:8 154:23 184:24 | | **picking**(1) 130:18 | | | | **principle**(6) 36:23 103:25 106:1 106:17 129:11 132:2 | |
| **paying**(2) 217:18 222:9 | | **pin**(1) 117:11 | | | | | |
| **payment**(2) 149:10 156:7 | | **piper**(1) 3:4 | | | | **principle-to**(1) 105:25 | |
| **payments**(2) 156:11 231:11 | | **place**(10) 27:10 28:12 38:23 91:8 104:14 107:17 118:10 118:11 140:14 177:2 | | **positions**(2) 178:14 178:19 | | **principle-to-principk**(4) 108:2 108:5 129:24 130:17 | |
| **pdf**(1) 91:12 | | | | **positive**(1) 12:19 | | | |
| **peg**(1) 10:36 | | **placed**(1) 141:6 | | **possession.**"(1) 116:11 | | **principles**(1) 131:18 | |
| **pending**(6) 174:25 184:19 185:9 187:17 188:1 241:6 | | **placeholder**(1) 184:17 | | **possibilities**(1) 212:18 | | **print**(1) 194:5 | |
| | | **plain**(1) 217:20 | | **possibility**(11) 16:22 50:3 208:12 208:18 222:6 222:9 223:14 232:22 233:17 233:21 246:10 | | **printout**(1) 52:19 | |
| | | **plan**(143) 12:20 12:20 12:23 13:1 13:6 13:7 13:8 13:9 13:17 13:21 13:22 13:23 13:25 14:4 14:7 14:12 14:18 14:24 14:25 15:1 15:13 15:7 15:9 15:13 15:15 15:25 16:8 16:24 17:21 17:22 18:14 18:24 18:25 19:5 19:10 19:16 19:24 20:3 20:5 20:7 20:14 20:19 20:22 21:13 22:1 40:9 67:8 67:8 72:6 78:4 82:24 83:13 84:19 85:1 85:7 86:21 87:9 88:2 103:25 116:9 124:16 124:20 124:22 125:20 133:2 134:25 135:2 135:2 135:4 135:20 144:25 145:3 145:5 145:9 145:14 145:17 145:20 146:16 147:1 147:2 147:3 147:4 147:12 147:16 147:18 147:20 148:3 148:9 148:10 148:13 148:17 149:6 149:11 149:17 149:19 150:1 150:1 150:6 150:7 150:12 150:16 154:5 154:5 157:1 159:4 159:8 159:20 159:24 159:24 161:3 161:11 170:9 171:6 176:21 178:1 182:6 182:18 182:23 183:4 183:11 184:10 185:17 185:24 186:12 187:9 187:1 189:7 189:14 191:9 198:20 204:13 204:16 204:16 204:20 204:21 205:3 205:5 205:7 215:16 216:15 220:20 240:25 | | | | **prior**(19) 24:14 41:4 72:23 73:21 78:3 82:12 82:19 84:6 87:6 101:17 101:17 116:17 120:6 120:8 121:12 136:15 165:19 180:2 202:17 | |
| **pennock**(1) 6:45 | | | | **possible**(2) 13:9 245:12 | | | |
| **pennsylvania**(6) 1:44 178:5 178:9 178:13 178:15 179:13 | | | | **post**(1) 13:12 | | **priority**(2) 154:14 154:17 | |
| | | | | **post-emergenc**(1) 21:1 | | **private**(1) 171:11 | |
| | | | | **post-petition**(1) 125:15 | | **privilege**(16) 30:23 30:24 31:13 41:2 41:8 68:10 113:14 113:16 113:17 113:24 114:2 114:11 114:17 138:7 142:17 142:20 | |
| **people**(40) 28:21 33:5 45:3 46:23 47:5 47:9 48:5 48:9 51:20 67:21 68:5 78:20 95:8 108:11 131:20 134:14 135:6 135:9 140:21 141:14 142:23 149:9 164:24 167:6 168:9 203:4 203:12 203:14 203:15 203:15 203:18 203:19 214:3 214:10 216:12 226:2 230:25 231:6 233:23 243:20 | | | | **potential**(15) 37:2 37:21 126:3 127:5 128:1 205:21 206:7 206:15 207:7 214:21 216:1 223:20 224:9 225:3 229:20 | | | |
| | | | | | | **privileges**(5) 190:23 190:25 193:1 193:10 193:11 | |
| | | | | **potentially**(3) 79:19 194:15 212:4 | | | |
| **peopled**(1) 143:14 | | | | **potter**(1) 4:4 | | **probabilities**(7) 25:5 46:4 48:6 49:7 79:11 164:22 165:16 | |
| **per**(2) 116:8 184:24 | | | | **power**(1) 187:21 | | | |
| **percent**(41) 14:23 14:24 15:7 15:16 16:7 16:7 16:18 17:16 47:18 56:24 63:9 63:10 63:16 79:6 79:10 148:1 148:7 150:18 150:18 150:24 150:24 151:9 152:3 153:6 155:24 156:19 163:9 163:13 163:13 164:2 164:5 164:14 181:5 181:6 184:19 195:7 215:20 234:19 234:20 235:10 236:11 | | **plan.**"(1) 84:22 | | **ppearances**(3) 1:21 2:1 4:1 | | **probability**(18) 25:2 43:11 47:17 54:20 56:4 56:18 56:20 63:10 63:11 65:2 65:9 79:6 116:25 119:14 133:23 134:9 155:24 156:19 | |
| | | **planes**(1) 114:1 | | **pperances**(1) 3:1 | | | |
| | | **plans**(6) 13:8 13:14 46:22 126:10 151:10 194:11 | | **practicing**(1) 213:17 | | | |
| | | | | **prado**(5) 90:21 99:21 112:5 117:24 118:8 | | **probably**(5) 49:3 71:11 206:13 | |
| | | | | **pratt**(3) 139:4 244:4 244:19 | | **probe**(1) 30:24 | |
| | | | | **pre-lbo**(2) 13:23 14:16 16:25 21:8 37:5 37:24 | | **probity**(1) 36:8 | |
| **percentage**(1) 163:1 | | **plausible**(1) 182:24 | | | | **problem**(15) 33:8 34:4 72:7 156:22 195:17 196:15 225:5 225:23 226:21 229:21 238:1 238:4 238:5 238:6 238:23 | |
| **perception**(1) 143:5 | | **play**(3) 200:3 221:12 241:14 | | | | | |
| **recipient**(1) 26:19 | | **playback**(1) 151:15 | | **preato**(2) 23:19 45:18 | | | |
| **perfectly**(4) 21:6 21:14 28:15 192:20 | | **playing**(1) 130:9 | | **precedent**(1) 169:4 | | | |
| **perform**(1) 212:9 | | **plays**(1) 103:6 | | **precise**(4) 99:10 109:7 154:19 161:8 | | **problems**(2) 194:17 238:19 | |
| | | **plaza**(3) 2:25 3:39 4:7 | | **precisely**(3) 31:2 128:20 197:3 199:16 | | | |
| **perhaps**(4) 34:7 41:25 86:21 130:18 160:22 209:4 | | | | **preclude**(1) 159:17 | | **proceed**(13) 42:3 43:3 73:13 73:22 170:13 170:16 182:10 213:11 219:15 230:5 232:21 235:10 238:2 | |
| | | | | **precluded**(2) 88:17 171:9 | | | |
| **period**(7) 84:5 100:8 100:9 173:24 215:2 241:9 241:9 | | **please**(37) 12:3 21:20 73:22 73:24 116:8 151:14 152:25 171:18 173:2 175:12 177:1 177:4 177:6 178:2 182:1 182:15 184:5 184:14 185:11 186:3 186:7 186:17 187:4 188:3 189:1 189:3 193:23 197:15 204:5 204:8 204:9 205:19 206:3 208:21 227:13 233:18 242:14 | | **predecessor**(5) 59:15 59:16 63:21 92:8 92:17 | | | |
| | | | | | | **proceeding**(5) 41:11 202:15 220:9 226:15 245:1 | |
| | | | | **predicate**(1) 79:21 | | | |
| **periods**(1) 114:16 | | | | **predicated**(1) 24:3 | | | |
| **permit**(1) 41:23 | | | | **prefer**(4) 148:13 214:3 214:8 214:10 | | **proceedings**(4) 1:17 1:48 139:24 247:5 | |
| **permits**(1) 28:9 | | | | **preferences**(5) 190:23 190:25 193:1 193:9 193:10 | | **proceeds**(4) 185:7 185:7 236:11 236:12 | |
| **permitted**(10) 18:13 27:5 29:8 34:11 51:7 79:19 79:25 104:14 109:3 201:10 | | **plenty**(2) 95:7 134:8 | | | | **process**(18) 57:3 66:9 66:13 67:6 68:6 70:24 79:15 81:13 81:23 84:17 84:18 107:11 107:12 137:8 137:12 140:7 165:19 176:9 | |
| | | **plug**(1) 28:7 | | **prefers**(1) 214:24 | | | |
| | | **plural**(1) 186:9 | | **prejudgmen**(1) 70:10 | | | |
| **pernick**(1) 1:35 | | **pocket**(2) 222:10 223:11 | | **prejudice**(2) 142:14 142:15 | | | |
| **persistent**(3) 130:13 130:16 131:15 | | **point**(50) 10:20 10:20 22:5 25:12 30:21 31:21 34:14 37:8 40:16 59:14 61:7 65:7 67:7 71:8 79:25 80:8 83:5 84:20 94:13 95:5 99:14 107:23 109:6 111:4 126:10 137:21 144:4 152:23 159:23 160:12 161:1 163:8 165:19 170:20 172:5 178:24 181:4 181:21 183:21 187:10 187:11 187:13 196:1 201:2 201:21 226:2 230:2 230:5 241:7 242:2 | | **premium**(1) 207:17 | | **processes**(1) 153:25 | |
| **person**(9) 35:2 92:11 113:19 174:22 174:23 205:12 224:24 228:23 238:25 | | | | **prepared**(22) 23:17 23:18 23:24 23:25 24:12 25:25 26:8 26:10 27:1 27:3 28:1 35:2 36:5 42:2 44:7 57:9 87:8 136:16 170:16 183:16 183:16 188:22 | | **produce**(1) 24:17 | |
| | | | | | | **produced**(13) 1:49 23:20 27:11 29:11 40:25 46:22 46:24 46:24 47:3 52:16 91:20 99:17 155:22 | |
| **personal**(2) 26:21 223:7 | | | | **preparing**(1) 23:14 | | | |
| **personally**(9) 88:9 96:4 173:16 175:8 201:12 221:11 222:21 223:23 224:4 | | | | **present**(4) 105:14 157:15 157:16 176:24 | | | |
| | | | | **presentation**(3) 64:18 119:3 122:22 | | **produces**(1) 56:3 | |
| **personnel**(1) 52:18 | | | | **presentations**(1) 104:9 | | **productive**(1) 103:8 | |
| **perspective**(1) 238:13 | | | | **presented**(11) 40:13 48:16 50:1 57:14 64:10 77:25 80:10 96:15 109:3 161:6 188:21 | | **prof**(1) 8:35 | |
| **persuade**(1) 232:18 | | | | | | **professional**(2) 88:10 179:19 | |
| **peter**(3) 8:8 9:45 10:26 | | **pointed**(5) 33:16 74:5 75:16 78:22 142:5 | | **preserved**(4) 157:11 157:11 157:13 159:13 | | **professionals**(14) 43:12 43:13 79:6 118:22 119:15 121:13 121:22 121:25 129:17 130:5 173:8 173:18 174:1 174:16 | |
| **phase**(3) 139:25 244:3 246:6 | | | | **preserves**(4) 156:3 156:6 156:9 161:11 | | | |
| **phelps**(1) 10:14 | | **pointing**(1) 108:3 | | **press**(2) 160:23 239:12 | | | |
| **phil**(1) 116:3 | | | | **pressing**(1) 161:1 | | | |
| **philadelphia**(1) 180:5 | | | | **pressure**(2) 13:5 210:11 | | | |
| | | | | **presumably**(2) 216:3 233:2 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**professor**(71) 27:14  36:19  37:11  139:3  176:22  177:3  177:23  178:2  178:12  178:16  178:22  179:2  181:22  182:4  182:14  182:20  183:23  184:7  186:3  188:22  189:3  189:4  190:6  190:10  192:4  193:4  193:25  194:14  197:11  197:17  197:18  197:20  197:24  197:25  198:21  199:4  200:18  200:20  200:2  201:2  201:21  202:22  203:6  205:15  205:18  205:21  206:1  207:6  207:9  207:11  207:19  208:21  208:25  209:2  210:22  210:2  211:7  212:8  212:12  212:12  213:15  213:17  227:12  231:14  233:15  239:17  239:22  240:7  240:24

**professors**(1) 240:9
**professorship**(1) 178:24
**proffer**(1) 22:4
**program**(1) 24:12
**programs**(1) 213:18
**progress**(2) 172:16  172:24
**prohibited**(1) 64:4
**prominent**(1) 241:14
**promoted**(1) 178:21
**prompt**(1) 153:14
**promptly**(1) 245:3
**proper**(6) 67:9  104:3  119:11  182:18  183:5  184:22

**properly**(6) 46:3  46:11  65:14  88:17  122:2  152:13

**properties**(1) 206:18
**proponent**(4) 25:20  72:6  129:23  133:2
**proponents**(8) 12:23  40:10  89:19  134:24  142:15  176:21  178:1  244:14

**proposal**(6) 78:1  80:10  97:10  123:3  130:4  135:14  135:17  135:21

**proposals**(7) 102:2  102:7  102:11  103:2  123:9  135:5  135:19

**propose**(2) 21:4  21:8
**proposed**(9) 15:4  29:24  126:8  147:12  172:17  172:25  197:21  198:3  216:14

**proposing**(1) 20:5
**proposition**(1) 26:7
**propounded**(1) 219:20
**prosecute**(6) 88:17  152:13  237:21  238:8  238:12  238:16

**prosecuting**(1) 239:1
**prosecution**(2) 238:14  239:4
**prospect**(1) 206:19
**prosper**(1) 215:11
**protect**(6) 75:10  188:14  190:13  192:2  228:18  236:9

**protected**(2) 42:11  224:1
**protecting**(1) 228:10
**protection**(2) 201:1  221:19
**protections**(1) 200:25
**protective**(2) 188:14  190:12
**provide**(11) 13:2  19:18  27:1  72:22  119:17  125:21  136:5  146:15  204:9  208:10  238:7

**provided**(18) 18:18  23:18  29:1  39:23  40:3  44:18  45:12  46:11  52:20  67:16  98:17  100:5  118:21  120:9  120:11  137:18  203:12  207:1

**provides**(14) 18:2  20:12  44:21  190:21  190:24  191:4  191:16  198:8  201:10  201:1  202:1  204:22  204:23  204:23

**providing**(3) 26:1  99:25  239:6
**province**(1) 29:2
**provision**(11) 201:1  201:25  202:5  202:15  202:25  217:21  220:21  221:2  222:3  228:9  228:17

**provisions**(5) 202:6  202:7  205:2  220:16  221:6

**public**(1) 179:1
**publishing**(1) 215:1
**pull**(2) 27:16  181:23
**pulled**(1) 175:12
**purchase**(4) 99:10  99:12  105:24  106:15
**purchased**(4) 82:14  98:24  99:5  99:9
**purchasing**(2) 82:12  82:19
**pure**(4) 21:13  131:4  152:16  153:19
**purely**(1) 26:22
**purer**(1) 20:22
**purity**(3) 20:21  20:22  21:13
**purpose**(26) 1  26:9  27:1  40:9  64:7  65:25  67:4  72:18  73:1  79:19  97:24  126:6  146:9  149:3  167:12  226:2

**purposes**(5) 25:20  47:15  57:4  73:5  144:12
**pursuant**(4) 99:23  185:16  205:7  243:10
**pursue**(2) 34:10  87:18
**pushes**(1) 79:18
**put**(43) 14:14  21:19  22:14  26:16  27:20  30:4  34:21  52:7  52:24  54:15  57:6  66:13  68:3  72:18  90:3  94:9  103:8  104:6  104:7  140:14  141:1  145:21  145:23  146:4  146:9  146:19  146:25  147:16  148:10  148:11  149:1  149:14  150:2  150:4  150:4  150:8  150:19  175:8  190:4  192:10  221:18  238:11  244:19

**puts**(1) 103:5
**putting**(6) 64:4  68:8  89:8  221:7  221:8  223:25

**puzzlement**(1) 64:22
**qualified**(2) 26:15  219:2
**quality**(1) 208:6
**quarter**(1) 136:9
**quershi**(1) 2:38
**question**(86) 13:22  23:7  27:3  31:15  33:21  33:22  34:3  37:16  39:9  41:21  52:4  62:5  66:9  66:10  67:9  68:1  68:7  68:8  69:14  70:24  74:16  76:20  76:22  77:5  78:22  79:2  80:1  83:19  86:8  87:15  102:10  102:14  102:23  106:8  106:12  106:24  107:18  119:23  126:4  126:18  127:1  127:6  127:19  127:21  128:3  128:6  128:20  131:13  132:15  135:7  136:11  136:17  137:3  137:4  140:1  141:7  141:15  148:23  153:3  161:15  162:19  165:22  165:25  169:11  194:19  207:20  207:22  214:7  217:22  219:1  220:6  221:16  227:2  231:19  231:19  233:16  234:12  234:14  236:23  236:24  237:5  237:8  237:14  239:8  245:8  245:24

**questioned**(6) 23:23  31:5  33:20  65:16  78:25  79:2
**questioning**(2) 41:12  42:13
**questions**(41) 15:8  30:23  31:2  31:12  33:2  33:7  33:24  34:23  35:18  35:19  39:4  40:12  51:9  58:9  65:13  66:22  68:16  68:22  71:11  73:21  77:22  102:16  109:13  141:2  159:25  162:8  166:5  166:13  173:11  204:10  212:22  215:25  216:3  216:4  224:12  224:25  227:2  231:15  240:16  240:20  243:22

**quibble**(5) 49:13  55:2  112:19  149:8  163:24
**quicker**(1) 175:15
**quickly**(7) 111:15  149:12  150:16  214:9  214:11  214:14  241:17

**quite**(10) 19:19  164:20  169:8  191:19  194:1  204:13  209:14  226:7  239:5  246:14

**quote**(5) 104:2  104:2  108:1  125:24  199:16
**quoting**(4) 44:24  82:25  146:9  155:6
**r-o-c-k**(1) 177:8
**raise**(4) 72:22  177:1  215:25  216:3

**raised**(13) 65:3  65:6  65:8  65:13  65:19  66:16  66:18  66:22  66:25  70:17  142:17  245:18  246:9

**raises**(5) 207:16  208:22  210:22  237:25
**ran**(2) 35:12  39:23  179:25
**range**(7) 150:23  189:9  189:17  189:25  190:2  192:5  192:8

**rashly**(1) 214:18
**rate**(1) 197:13
**rates**(1) 125:15
**rath**(3) 3:24  3:26  5:20
**rather**(18) 13:5  14:12  17:8  27:14  29:23  118:3  139:18  146:20  146:21  149:5  149:18  208:13  210:1  211:4  211:19  230:7  239:2  240:2

**rational**(1) 29:7
**rationally**(1) 143:5
**raymond**(1) 8:35
**reach**(6) 126:2  127:4  128:1  132:21  135:8  183:7

**reached**(3) 98:1  135:6  182:25
**reaching**(1) 135:9
**react**(3) 214:9  214:10  214:14
**reactions**(1) 40:12
**read**(36) 19:8  34:8  37:16  37:19  38:8  38:9  53:14  58:18  58:21  67:24  68:1  68:21  68:2  69:2  73:9  73:19  74:20  109:4  119:19  119:20  127:24  137:13  151:24  152:18  152:25  159:1  159:3  166:1  161:22  166:6  187:20  199:8  218:9  222:15  222:15  240:1

**reading**(10) 42:25  54:25  74:8  74:19  119:11  121:18  200:19  217:20  218:1  226:13
**reads**(1) 58:16
**ready**(5) 12:6  59:23  144:16  244:25  245:3
**real**(11) 14:8  157:17  196:14  207:3  229:4  229:8  229:11  230:14  232:22  236:4  238:19

**realize**(1) 205:13
**realized**(1) 73:20
**really**(29) 29:19  33:14  35:9  48:2  49:15  51:24  67:10  77:21  99:13  104:3  130:12  130:15  130:16  130:19  134:14  138:22  141:13  143:17  144:8  159:10  159:12  185:1  188:9  203:20  206:2  221:22  226:2  229:20  230:23

**reanalysis**(1) 24:5
**reason**(18) 20:18  21:8  27:4  51:11  63:12  74:2  75:1  97:15  110:24  165:2  209:25  211:13  212:8  212:9  228:17  233:7  233:11  241:13

**reasonable**(7) 100:17  203:4  203:14  203:19  205:12  212:19  220:7

**reasonably**(14) 47:22  56:8  56:17  74:5  74:13  75:10  162:13  163:1  164:1  164:3  164:5  164:6  164:14  208:19

**reasons**(5) 52:16  103:25  192:13  203:20  204:1

**rebut**(3) 28:1  37:9  68:5
**rebuttal**(21) 28:2  34:7  36:2  37:11  138:25  139:9  139:20  140:3  140:5  141:6  141:9  182:20  188:21  189:4  197:18  200:20  205:19  207:9  208:25  244:17  246:6

| **recall**(57) 19:7  38:4  39:3  39:13  40:10  43:15  44:23  48:12  73:6  73:18  76:3  79:5  81:16  81:19  81:23  82:23  83:10  83:12  85:15  85:19  85:20  85:24  86:4  86:11  86:15  86:18  86:19  86:23  89:20  95:10  95:22  98:24  100:6  100:8  101:20  105:11  108:8  111:23  117:16  118:15  120:3  120:6  120:13  122:23  125:2  126:4  127:6  144:25  145:6  150:12  155:11  162:7  170:10  170:13  170:17  219:24  220:2

**recalled**(2) 69:12  76:1
**recalling**(1) 85:23
**receive**(11) 13:18  13:20  13:24  32:2  34:20  58:18  59:4  147:17  147:20  177:16  187:16

**received**(7) 57:13  64:7  133:2  148:5  178:21  206:12  248:12

**receives**(1) 147:16
**receiving**(2) 65:8  187:12
**recently**(1) 159:21
**recess**(6) 71:18  71:20  136:8  141:25  142:1  170:2  172:10  172:14

**recognize**(1) 54:19
**recognized**(1) 119:16
**recognizing**(1) 230:23
**recollect**(1) 49:14
**recollection**(14) 49:18  68:21  69:4  69:7  70:17  70:19  75:2  79:1  79:23  80:2  100:9  105:21  111:18  116:14

**recommendation**(1) 192:22
**reconcile**(1) 125:16
**reconvene**(1) 136:9
**record**(20) 12:13  30:8  34:15  68:3  68:22  74:17  74:18  96:21  136:11  142:20  168:20  177:6  177:13  177:15  177:23  198:6  204:18  239:20  240:2  240:2

**recorded**(1) 1:48
**recording**(2) 1:48  247:4
**recover**(1) 60:13
**recoveries**(11) 14:5  28:11  34:19  65:18  69:15  69:17  69:19  69:25  70:9  154:6  167:23

**recovery**(19) 24:7  28:8  55:24  56:4  61:15  61:16  61:17  63:1  64:11  64:13  69:21  69:22  146:12  148:13  148:17  165:16  209:4  209:6  209:22

**recreated**(1) 36:3
**recross**(4) 139:8  176:13  243:23  248:2
**recruit**(1) 219:2
**red**(1) 104:6
**redacted**(2) 58:10  167:21
**redirect**(7) 169:21  169:23  170:5  240:18  240:19  240:22  248:2

**reduced**(1) 63:10
**reduces**(1) 47:25
**refer**(2) 142:10  155:22
**reference**(4) 74:20  110:1  110:19  172:10
**referenced**(1) 38:23
**references**(1) 138:3
**referred**(7) 15:20  59:13  63:13  92:6  142:13  145:20  175:5

**referring**(7) 61:20  77:21  120:22  120:23  158:1  189:21  243:14

**reflect**(9) 25:6  50:9  51:2  61:4  64:13  66:3  76:11  162:24  166:22

**reflected**(12) 44:6  48:15  49:3  50:12  51:19  51:23  55:25  56:5  56:22  64:9  65:14  122:23

**reflecting**(1) 173:6
**reflection**(2) 114:12  119:24 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| reflects(3) 50:14 53:23 55:8 | | represents(2) 132:9 157:6 | | retention(2) 184:8 204:22 | | rule(9) 26:5 26:11 26:23 27:6 142:24 143:3 143:10 239:2 239:3 | |

**reflects**(3) 50:14 53:23 55:8

**refresh**(8) 49:18 68:20 69:7 79:22 100:10 105:21 105:21 116:14

**refreshed**(4) 69:4 70:19 75:2 80:2

**refuse**(1) 30:22

**refused**(2) 35:5 35:19

**refuses**(2) 204:6 232:4

**regard**(6) 85:15 86:18 140:23 140:25 198:1 218:15

**regarding**(4) 65:15 155:3 182:25 183:10

**regulation**(1) 179:16

**regulatory**(4) 206:12 207:23 233:6 236:7

**related**(3) 179:5 179:10 202:16

**relates**(3) 72:2 126:7 217:18

**relating**(3) 40:24 69:9 204:25

**relationship**(1) 171:10

**relatively**(2) 51:3 235:8

**relayed**(1) 130:22

**release**(1) 205:6

**released**(1) 124:21

**relevance**(2) 57:7 66:10

**relevant**(1) 92:1

**relied**(11) 27:14 30:13 30:16 33:4 33:10 35:11 136:22 137:1 137:1 137:3 165:23

**rely**(4) 30:7 33:11 245:21 245:25

**relying**(1) 27:23

**remain**(1) 177:1

**remaining**(2) 39:4 207:13

**remarkably**(1) 152:20

**remember**(11) 68:18 99:7 101:18 105:9 130:13 133:10 161:18 161:23 162:15 174:21 231:3

**remembered**(1) 67:3

**remind**(1) 12:10

**reminded**(1) 69:13

**reminds**(1) 168:19

**remote**(1) 212:18

**reorganization**(4) 12:21 13:1 116:9 126:10

**reorganized**(55) 17:16 18:25 19:25 182:19 182:22 183:6 184:19 185:6 187:13 187:23 188:10 189:22 193:20 194:3 194:18 194:1 195:3 195:4 195:8 195:12 196:4 196:11 196:18 197:2 198:24 199:23 203:13 205:1 205:17 206:21 207:5 208:24 209:17 209:20 210:4 210:10 211:24 212:2 215:16 216:15 217:4 217:5 217:7 217:11 224:18 227:18 229:6 229:10 229:18 230:10 231:9 233:4 241:1 241:17 242:3

**repeat**(2) 117:19 127:1

**repeatedly**(2) 30:24 32:17

**repeating**(1) 127:21

**rephrase**(3) 86:9 106:12 124:10

**replace**(1) 211:2

**replaced**(1) 18:5

**report**(74) 26:12 27:12 27:12 28:2 30:13 31:5 31:8 36:20 43:20 44:1 45:9 55:1 58:17 61:4 74:3 74:10 83:6 85:12 85:4 85:18 86:1 86:12 86:16 86:22 87:9 88:2 88:15 89:1 89:12 89:15 94:4 96:25 136:21 155:11 155:16 155:19 155:21 155:24 161:22 162:1 162:2 162:6 162:11 163:6 163:22 164:2 164:12 164:16 165:2 165:20 167:15 167:16 167:20 167:21 168:1 168:6 182:20 183:10 183:17 183:19 183:22 188:21 188:24 189:4 192:4 192:14 192:17 197:18 200:20 203:9 205:19 207:10 209:1 212:19

**reporter**(4) 37:19 37:20 178:7 178:10

**reports**(1) 164:22

**represent**(3) 54:16 89:4 110:20

**representation**(2) 100:11 161:25

**representatives**(2) 112:6 119:4

**represented**(4) 60:14 60:19 115:3 243:11

**representing**(3) 43:13 56:6 88:25

**represents**(2) 132:9 157:6

**request**(7) 22:21 29:10 42:20 47:3 96:1 149:4 165:21

**requested**(4) 24:8 44:14 118:8 118:19

**require**(17) 15:9 16:10 21:9 75:18 102:14 189:18 190:3 191:4 191:25 192:9 192:18 208:14 224:19 235:17 235:23 237:17 237:20

**required**(13) 15:15 186:22 217:6 226:22 226:23 226:24 227:5 227:22 227:23 234:8 234:22 235:2 235:5

**requirement**(4) 186:14 188:11 197:21 235:22

**requirements**(1) 206:9

**requires**(9) 15:7 74:8 75:16 136:18 191:6 197:22 235:13 235:15 236:7

**research**(2) 114:7 114:22

**resemblance**(3) 76:14 77:15 78:19

**reservation**(2) 39:3 40:5

**reservations**(1) 87:17

**reserve**(13) 20:25 21:5 21:5 21:6 21:7 34:6 36:14 151:5 151:9 151:12 185:2 185:20 186:2

**reserved**(2) 18:1 169:9

**resolution**(10) 16:2 16:8 16:11 138:23 153:14 154:1 185:25 198:19 199:20 241:6

**resolve**(6) 123:1 123:5 135:6 174:25 204:24 205:3

**resolved**(12) 16:15 19:15 23:7 50:4 123:15 146:22 149:6 180:19 184:21 205:10 225:5 241:7

**resolves**(2) 16:17 16:18

**resolving**(1) 175:6

**resort**(1) 217:23

**respect**(45) 13:9 34:6 40:17 41:12 41:25 42:18 65:5 74:3 78:1 82:21 83:4 84:22 86:8 88:9 110:12 123:9 128:10 128:17 133:20 137:12 140:15 145:12 145:13 154:14 154:16 158:7 158:9 161:19 162:4 162:20 163:14 163:4 172:16 172:24 199:1 225:15 240:11 240:14 240:25

**respected**(3) 88:24 89:3 222:18

**respectful**(1) 245:1

**respects**(2) 198:16 217:6

**respond**(7) 23:6 28:20 71:5 99:13 102:23 160:16 167:10

**responded**(1) 74:12

**responding**(1) 130:20

**response**(17) 22:8 22:9 28:23 47:3 50:19 51:13 79:24 117:8 143:23 169:20 173:10 193:25 197:9 222:20 223:4 227:14 240:19

**responsibilities**(4) 185:12 185:14 241:12 243:13

**responsibility**(3) 185:21 185:24 186:10

**responsible**(1) 113:19

**responsive**(1) 152:9

**rest**(3) 152:18 162:4 231:9

**restate**(1) 58:22

**restated**(2) 191:2 202:4

**restricted**(1) 60:25

**restrictions**(1) 188:16

**restructure**(2) 233:24 235:17

**result**(4) 14:4 16:13 167:16 212:13

**results**(1) 24:18

**resume**(2) 12:6 144:16

**resumed**(1) 12:15

**retain**(1) 204:14

**retained**(1) 182:15

**retains**(1) 204:23

**retention**(2) 184:8 204:22

**return**(1) 75:24

**revealing**(1) 128:9

**review**(9) 30:12 30:13 36:19 53:2 60:3 88:14 89:12 166:16 183:7

**reviewed**(9) 38:5 142:4 155:19 159:1 159:21 183:9 188:20 188:21 188:23

**reviewing**(1) 184:7

**revised**(1) 166:22

**rich**(1) 242:4

**richards**(1) 2:14

**rifkind**(1) 6:38

**right**(123) 16:5 16:20 17:10 27:8 34:2 37:1 38:18 43:3 44:4 44:9 45:14 45:17 46:17 46:21 47:15 48:7 48:16 49:12 49:24 54:3 55:1 55:2 56:5 56:6 58:13 59:8 59:10 59:22 60:4 61:16 62:13 62:17 63:22 66:21 66:22 68:19 70:1 70:7 70:16 70:16 74:24 75:5 77:6 77:19 77:23 79:7 79:13 87:6 90:15 90:20 92:24 93:20 94:25 106:13 115:20 119:19 127:12 129:5 129:1 134:12 136:8 137:22 138:14 141:19 141:23 144:19 149:14 156:16 156:21 160:15 163:9 163:14 163:23 165:7 168:4 169:9 169:18 170:4 172:22 173:15 176:17 176:25 177:2 177:17 182:10 185:5 187:24 188:3 188:9 188:10 188:13 188:15 190:13 190:16 190:17 192:2 193:11 193:15 197:14 200:18 211:8 216:20 217:20 219:21 223:17 223:19 226:18 227:10 227:23 229:25 233:12 234:4 235:1 235:6 235:21 235:25 236:8 237:8 238:14 240:21 246:15 246:20

**rights**(28) 73:7 188:5 188:14 189:23 190:12 190:18 190:22 190:25 191:12 192:25 193:1 193:9 193:10 193:16 194:10 194:13 194:16 196:3 197:3 227:24 228:6 228:10 228:12 228:22 229:2 231:1

**rise**(3) 219:11 221:12 221:24

**rising**(2) 103:15 136:5

**risk**(1) 203:19

**risks**(3) 119:11 119:17 121:8

**robert**(5) 3:36 5:49 8:36 10:4 11:8

**robust**(1) 89:8

**rochester**(1) 7:26

**rock**(29) 139:3 176:22 177:3 177:8 177:23 178:2 178:12 179:3 181:22 182:5 182:14 183:23 184:7 186:3 189:3 190:6 197:17 206:1 207:19 209:12 212:12 213:15 227:1 231:14 233:15 239:22 240:3 240:24 248:

**rockefeller**(1) 3:39

**rodney**(1) 2:17

**rogers**(1) 8:28

**roitman**(1) 5:10

**role**(9) 101:23 180:21 199:23 200:3 218:7 219:7 221:12 221:23 241:14

**roles**(1) 102:2

**roman**(2) 198:13 198:14

**room**(8) 14:8 103:9 103:13 131:7 134:8 160:22 196:12 227:18

**rooms**(1) 103:6

**rose**(3) 40:15 108:22 117:4

**rosenblatt**(1) 3:35

**rosenman**(2) 10:5 11:9

**rosner**(1) 9:40

**roughly**(1) 38:25

**rounds**(1) 42:17

**route**(1) 203:16

**royal**(2) 8:27 8:27

**rudnick**(2) 4:27 5:46

**rule**(9) 26:5 26:11 26:23 27:6 142:24 143:3 143:10 239:2 239:3

**rules**(3) 137:1 140:14 246:8

**ruling**(2) 109:2 144:13

**rulings**(1) 128:11

**rumble**(1) 59:23

**run**(13) 16:21 19:22 20:12 22:15 24:9 27:18 44:14 122:19 210:15 242:6 242:7 242:9 243:14

**running**(1) 213:18

**runs**(2) 24:7 61:12

**rushabh**(1) 9:5

**russano**(11) 2:7 24:20 24:22 24:24 25:18 25:19 28:23 28:25 30:10 30:21 36:16

**russian**(1) 94:19

**saavedra**(1) 7:41

**sachs**(2) 7:4 7:4

**said**(86) 20:2 24:9 25:24 26:25 26:25 27:2 27:4 27:12 30:18 32:5 32:15 32:16 32:19 32:2 33:14 44:10 44:18 46:2 47:2 47:11 49:15 49:15 49:19 55:3 66:2 67:2 69:11 70:15 75:7 76:10 76:9 77:9 78:16 78:17 78:24 79:23 81:18 81:22 82:23 84:6 87:16 95:1 97:17 106:8 121:3 121:7 122:11 125:18 128:23 131:12 132:16 133:11 133:21 134:17 134:18 134:18 135:3 139:15 147:11 150:22 152:19 157:13 158:3 159:14 160:19 162:13 166:16 171:5 175:7 175:7 193:6 193:15 194:20 202:11 206:23 211:17 217:21 218:5 218:10 219:4 224:8 226:21 229:4 232:20 234:16 245:6 245:22

**sail**(2) 206:16 206:17

**sale**(4) 206:10 207:7 207:8 207:12

**same**(30) 38:25 40:23 64:3 66:2 68:14 70:22 79:14 84:9 89:7 89:9 103:8 112:3 117:4 117:5 121:16 121:19 128:20 147:17 149:19 164:5 164:6 173:2 181:8 181:18 195:21 197:10 222:16 240:9 240:13 242:11

**satisfied**(1) 244:15

**saturday**(1) 169:9

**saul**(2) 178:16 178:23

**save**(1) 31:23

**saw**(3) 35:8 44:5 211:12

**say**(83) 14:3 21:12 27:9 27:22 28:13 29:4 30:1 30:8 32:20 32:24 33:4 34:8 35:8 35:22 35:22 39:25 42:9 42:17 45:19 47:2 47:21 48:21 50:16 50:19 57:9 71:22 74:7 75:17 77:12 81:11 82:19 100:18 104:4 104:14 131:4 131:5 131:12 133:25 135:16 136:3 137:21 139:16 143:13 151:24 156:25 158:14 163:9 163:12 163:22 164:1 164:3 164:17 165:3 171:1 172:23 192:2 195:14 195:20 195:23 196:21 197:4 204:8 210:8 210:12 212:20 218:12 219:3 223:20 224:22 226:2 228:12 229:12 230:1 230:9 233:23 234:2 234:3 234:4 234:4 238:17 242:1 242:2 243:18

**saying**(32) 58:23 74:13 83:10 85:17 85:19 85:20 99:12 107:25 123:7 135:12 139:17 139:18 145:6 149:16 154:18 160:22 204:4 220:4 229:15 230:18 230:19

**says**(37) 17:11 17:14 18:24 28:3 28:10 29:11 31:23 32:1 32:3 32:11 36:3 74:4 74:4 84:1 91:1 96:24 112:9 113:15 115:17 119:3 119:13 164:1 166:21 189:8 189:17 189:20 192:4 193:8 199:13 199:15 207:14 209:22 211:17 217:4 218:13 222:3 242:19

**scared**(1) 83:9

**scenario**(8) 28:10 55:17 60:19 61:15 62:12 62:19 63:24 232:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| scenarios(10) 24:8  24:9  31:24  34:20  36:23 36:24  37:13  60:14  63:12  122:19 | | sell(7) 19:21  189:22  205:16  205:23  206:7 207:1  207:23 | | settling(3) 97:10  97:18  186:1 seven(15) 20:10  185:5  191:8  191:19 191:22  194:22  194:23  196:2  210:23  211:1 211:9  227:6  227:8  227:17  228:11 | | siegel(1) 4:28 sieger(1) 11:10 sife(1) 123:11 |
| schedule(2) 138:21  139:2 scheduled(1) 176:5 scheduling(1) 144:10 scholar(1) 240:11 scholars(1) 240:13 scholarship(2) 179:2  183:14 scholer(2) 4:13  11:4 school(7) 178:6  178:9  178:13  178:15 178:17  178:18  178:20 | | seller(1) 18:11 selling(2) 147:15  160:7 semblance(1) 77:11 seminars(1) 179:17 send(1) 222:12 sending(2) 91:4  116:17 sends(1) 12:23 senior(25) 12:25  14:23  16:13  18:22  38:20 38:20  55:25  61:17  61:20  85:11  85:13  87: 97:6  100:1  101:5  106:17  154:6  172:17 185:2  185:3  208:23  210:17  228:20  229:2 230:8 | | seventh(1) 53:9 seventy(3) 164:2  164:5  164:14 seventy-seven(1) 191:20 several(3) 20:20  32:9 shachar(1) 8:12 shall(9) 198:11  198:11  201:11  202:7 202:10  217:6  217:9  243:7  243:12 | | signed(3) 21:25  87:11  100:4 significant(4) 97:1  172:15  172:24  189:17 190:2  192:8  196:24  222:6 significantly(1) 13:24 silly(1) 224:6 silver(2) 10:20  10:20 silverstein(1) 4:5 simes(1) 9:30 similar(6) 86:15  152:20  202:4  202:6 202:14  237:14 |
| schott(1) 8:32 schotz(1) 1:33 schuylkill(1) 1:43 schwartz(1) 8:36 schwinger(1) 3:36 scientific(1) 143:8 scope(6) 143:10  205:8  217:24  224:12 224:14  225:22 | | sense(6) 26:12  143:16  187:21  201:3  229:7 229:11 sensitive(1) 131:15 sensitivity(1) 40:3 sent(6) 91:18  116:15  116:24  120:13 125:21  173:7 | | shamah(1) 5:39 shannon(1) 6:45 share(7) 46:25  49:10  76:16  76:21  133:12 185:4  188:9 shared(11) 41:5  43:12  43:17  46:23  57:15 66:15  77:2  77:17  117:10  117:15  119:15 | | simple(2) 77:2  206:25 simplicity(1) 216:10 simply(10) 64:8  66:22  80:1  187:24  188:2 193:5  193:11  196:9  196:18  224:20 sina(1) 11:30 since(14) 41:20  89:19  123:13  128:21  130:2 132:22  134:13  141:18  144:4  147:11 178:20  181:17  206:17  208:1 |
| scotland(2) 8:27  8:27 scott(2) 7:5  9:49 scrabbling(1) 84:4 scraping(1) 84:4 screen(3) 17:13  90:16  166:6 scrutiny(1) 212:6 seated(2) 12:3  177:4 seats(1) 18:8 | | sentence(8) 58:16  189:7  189:16  200:19 205:20  207:10  209:1  210:12 sentiment(2) 108:18  108:20 sentiments(1) 120:18 separate(9) 50:18  56:9  56:13  56:16  56:17 98:14  103:6  138:18  221:18 | | shareholder(21) 19:18  156:24  187:23 206:8  206:19  206:20  208:5  208:6  208:8 208:12  233:3  233:5  234:7  234:8  234:21 235:2  235:13  235:15  235:22  235:22  235:23 shareholders(26) 156:4  156:6  156:12 156:13  156:14  156:18  157:2  157:4  157:10 157:16  157:20  160:7  192:23  194:23  206:5 207:18  207:25  207:25  208:2  208:3  208:10 208:15  208:20  209:19  231:3  231:4 | | single(1) 185:3 sir(10) 21:10  21:22  22:16  43:15  44:14 45:12  47:5  49:5  52:7  53:3  53:7  53:12 53:15  58:8  60:11  67:17  67:22  69:3  69:8 69:16  73:18  74:21  75:9  76:4  77:7  176:17 177:24 sit(3) 181:23  227:21  239:1 sits(2) 187:25  188:2 sitting(15) 50:16  50:16  100:8  101:18 134:12  134:22  162:5  162:7  163:20  164:11 165:4  165:23  194:24  196:10  227:17 |
| second(29) 32:3  32:13  58:14  58:15  58:15 59:10  76:10  83:17  83:19  90:8  90:9  90:11 90:12  96:23  96:24  109:6  115:21  123:5 123:11  140:19  168:13  171:25  172:5  172:7 174:15  176:2  193:3  197:20  199:10 | | separated(1) 29:18 separately(1) 122:24 september(22) 50:2  53:11  67:21  94:15 97:13  97:13  98:5  98:6  98:23  99:5  99:13 99:16  100:19  100:23  105:22  110:8  110:16 111:15  112:4  112:16  173:21  175:23 | | shares(14) 148:14  191:6  191:9  191:15 192:20  192:22  193:3  205:23  207:8  207:1 219:21  234:24  235:7  235:8 sharing(5) 15:21  16:6  16:14  65:20  65:21 | | situation(12) 35:16  49:20  64:1  82:25 104:11  139:7  142:7  143:19  146:12  232:14 232:25  239:10 situations(1) 230:25 |
| second-from-the-firs(1) 119:2 secondary(3) 178:17  178:25  225:25 secondly(6) 141:5  199:7  203:24  206:6 206:10  241:10 | | sequentially(1) 83:18 serengeti(2) 7:43  7:44 series(6) 40:21  110:10  166:5  180:16  197:3 231:14 | | sharp(1) 35:16 sharpen(1) 31:21 sharpened(1) 35:9 shaya(1) 7:26 | | six(7) 36:22  36:23  37:1  37:20  64:15 196:12  231:6 sixteen(2) 14:1  153:23 sixty(6) 150:24  153:5  155:24  156:19 184:18  195:7 |
| section(26) 164:12  180:18  189:6  189:8 189:13  198:4  200:25  201:22  201:22  202:3 203:1  203:2  203:11  209:2  216:19  219:1 220:14  220:15  221:8  221:9  221:18  222:19 225:5  225:8  243:6  243:10 | | serve(3) 18:20  73:2  200:23 served(3) 27:21  72:10  181:7 serves(4) 199:2  200:15  226:1  238:3 service(2) 1:42  1:49 services(1) 1:42 serving(4) 73:7  203:4  203:13  205:12 | | she(2) 85:19  85:20 sheet(5) 115:7  116:9  116:15  116:17  124:21 sheffield(1) 10:10 sheron(1) 9:39 she's(1) 132:2 | | sixty-five(4) 150:18  152:2  184:18  195:7 sixty-five/thirty-five(1) 154:24 sizable(1) 192:15 size(5) 92:25  94:1  191:18  228:4  228:11 sizeable(1) 151:12 |
| secured(1) 185:3 securities(2) 180:7  180:10 see(81) 23:6  29:16  31:24  32:2  32:5  34:4 34:9  35:24  39:25  48:6  55:11  57:7  58:18 67:22  72:14  81:9  83:25  84:10  84:12  84:2 90:24  91:5  91:11  91:15  91:19  92:4  92:13  95:18  96:24  97:7  100:3  107:7  112:4 112:7  112:12  112:12  113:15  113:25  114:4 114:9  116:2  116:7  116:12  117:23  118:1 119:2  119:6  119:9  121:9  124:1  125:4 125:14  126:17  126:18  141:9  143:20  166:2 166:23  172:10  189:19  194:17  200:2 200:12  203:14  205:13  208:4  208:17  209:3 209:21  211:16  211:24  216:24  217:13 217:14  232:19  232:23  234:8  234:9  245:19 245:23 | | sessions(4) 53:6  107:18  123:22  135:13 set(19) 16:22  17:18  17:22  31:7  47:16  47:20 47:23  50:13  54:6  54:9  58:2  58:11  64:14 146:25  147:4  169:4  192:1  206:8  241:5 setting(5) 50:24  77:24  80:9  117:25  184:25 settle(7) 13:10  14:12  76:13  123:3  130:19 135:15  135:16 | | shmikler(1) 10:47 shop(2) 168:5  168:9 short(3) 41:24  71:10  170:3 short-circuit(1) 136:20 shortcoming(1) 29:23 shot(3) 137:20  137:23  137:23 shotgun(1) 111:8 should(37) 18:20  27:4  29:8  34:11  36:4 42:17  44:12  47:7  47:22  47:22  51:2  59:18 64:20  65:17  67:25  71:5  76:13  77:13 102:22  107:24  109:18  135:12  137:9  137:1 137:20  140:9  141:6  142:8  195:15  196:25 208:3  208:19  220:5  223:20  240:1  244:6 245:2 | | skadden(1) 7:12 skip(1) 115:20 skipping(1) 119:8 slate(1) 7:12 slater(1) 10:44 slide(11) 184:5  185:11  186:3  186:17  187:4 188:3  189:1  190:11  197:15  205:18  208:21 slides(2) 177:11  182:15 slightest(1) 176:4 slightly(3) 38:24  38:25  228:15 sloppy(1) 242:10 slot(1) 18:10 slots(1) 18:20 slow(1) 71:5 |
| seeing(1) 114:13 seek(3) 38:12  207:16  215:6 seeking(1) 204:4 seeks(5) 16:24  16:24  24:1  159:17  163:6 seem(2) 205:11  216:4 seems(10) 142:25  189:19  192:24  193:18 194:15  206:20  225:23  228:12  239:3  239:5 | | shoulder(1) 52:1 shouldn't(3) 36:8  36:8  245:2 shouldn't(1) 196:25 show(12) 27:5  28:9  36:5  44:8  57:6  57:13 113:11  126:17  126:12  151:14  167:25  168:4 showed(2) 110:9  113:20 showing(1) 64:7 | | small(10) 51:3  59:21  63:13  157:23  209:25 210:1  210:2  223:14  223:14  235:8 smaller(2) 189:25  192:5 smith(6) 11:25  11:25  222:24  223:2  223:21 224:19 | | |
| seen(4) 41:3  41:20  166:12  216:2 seife(6) 3:34  174:19  175:2  175:7  175:22 176:6 | | settlement(72) 14:6  45:8  46:16  46:21 47:15  48:6  66:4  68:5  68:10  76:8  76:14 76:18  77:10  77:15  78:1  78:5  78:19  80:10 81:13  81:18  82:21  83:1  83:5  83:8  85:4 85:8  86:25  87:2  87:7  87:10  87:14  89:14 89:21  97:16  97:19  98:1  98:2  98:2  103:24 103:25  108:12  119:9  119:10  121:5  121:7 121:9  121:9  121:14  123:10  124:14  126:8 126:12  128:2  128:23  130:4  130:23  132:17 134:22  166:22  167:16  170:13  170:17  171: 172:17  172:25  174:9  176:3  209:8  210:8 236:21  237:12  239:13 | | shown(3) 61:15  68:6  132:21 shows(3) 34:19  38:25  47:24 shut(1) 138:4 shuttle(2) 103:6  103:13 side(17) 14:9  23:6  78:10  102:2  102:3 108:20  131:7  132:19  134:8  153:10  155:22 160:22  161:20  163:4  200:10  226:12  231:1 | | sold(2) 89:4  208:18 sole(2) 217:7  235:25 solely(3) 26:9  207:17  236:3 |
| seiler(1) 7:31 selected(4) 17:24  17:25  142:4  186:18 selection(1) 37:12 | | settlement."(1) 84:9 settlement?(1) 126:3  127:5 settlements(2) 149:11  149:12 | | sidley(9) 1:23  3:17  6:4  116:3  125:25 127:2  127:25  134:3  182:8 sidley's(1) 95:10 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| solution(4) 228:1 228:25 229:1 238:24 | | specifically(8) 32:23 33:10 44:10 45:16 81:17 110:12 208:25 221:19 | | stipulate(1) 66:24 | | sue(1) 242:21 | |
| solve(1) 229:21 | | | | stipulation(1) 72:21 | | suffered(1) 109:23 | |
| solved(1) 223:25 | | specificity(1) 159:20 | | stock(51) 16:15 17:12 17:2 17:4 19:19 181:4 185:4 187:12 187:16 187:17 187:18 187:25 188:5 188:7 188:8 188:17 190:13 190:16 190:23 191:1 191:12 191:13 192:1 192:15 192:17 192:17 192:19 192:20 192:21 192:21 194:13 194:13 198:19 199:19 211:1 227:22 227:24 228:7 228:10 231:1 234:1 234:1 234:4 234:4 234:19 234:20 235:10 235:10 235:14 235:14 235:20 235:20 | | sufficiently(1) 226:13 | |
| solvency(1) 91:13 | | specify(1) 226:10 | | | | suggest(4) 27:24 37:10 98:2 211:15 | |
| some(57) 15:8 20:15 23:4 29:24 30:3 32:24 33:5 40:12 41:15 44:12 49:22 52:8 58:9 65:6 67:24 77:11 79:10 108:15 137:18 138:21 139:3 139:7 139:9 139:14 146:21 151:23 162:14 162:14 165:18 165:18 165:20 165:21 165:22 173:11 181:17 194:4 201:18 203:18 204:7 205:15 206:14 206:14 207:2 207:2 207:6 207:24 208:11 208:18 208:22 210:22 212:3 212:25 214:3 216:1 242:16 243:20 246:6 | | speculation(2) 153:19 153:22 | | | | suggested(2) 35:7 159:9 | |
| | | spell(1) 177:7 | | | | suggesting(1) 134:9 | |
| | | spelled(2) 203:8 226:6 | | | | suggestion(3) 51:18 245:18 246:2 | |
| | | spent(6) 29:13 95:7 103:23 122:6 122:13 213:18 | | | | suggestions(1) 122:19 | |
| | | | | | | suggests(4) 192:7 198:23 209:25 210:5 | |
| | | | | | | suite(3) 3:27 3:48 4:36 | |
| | | | | | | suits(2) 205:3 238:5 | |
| | | sperling(1) 10:44 | | | | sullivan(2) 4:33 4:35 | |
| somebody(4) 191:10 204:4 238:21 242:21 | | split(2) 41:24 154:24 | | | | sum(1) 121:12 | |
| somehow(1) 238:23 | | spoke(4) 60:22 89:24 93:16 150:11 | | stockholders(1) 201:12 | | summaries(1) 26:21 | |
| someone(14) 21:18 23:6 24:11 25:7 27:18 30:3 38:7 41:19 42:19 47:17 47:21 50:15 125:11 168:2 | | sponsor(1) 12:26 | | stood(1) 16:16 | | summarize(1) 237:17 | |
| | | spot(1) 107:2 | | stop(1) 109:18 | | summarizing(1) 127:24 150:15 | |
| | | spread(4) 164:22 164:22 164:23 164:24 | | stopped(1) 45:19 | | summary(4) 35:6 54:24 | |
| | | spreads(1) 164:21 | | straight(2) 130:25 140:12 | | sunil(2) 117:23 118:7 | |
| something(42) 20:4 20:21 30:6 32:23 35:11 44:11 45:3 50:8 57:15 71:22 72:5 77:14 107:14 107:15 127:16 136:21 137:3 143:1 148:11 154:13 164:15 184:16 192:1 207:24 208:3 221:11 224:15 226:11 232:21 245:21 245:25 246:10 | | spreadsheet(2) 28:7 36:7 | | strategic(1) 20:10 | | supervision(1) 23:18 | |
| | | square(1) 2:17 | | strategy(1) 114:7 114:22 | | supplement(1) 18:16 | |
| | | stage(1) 176:2 | | strauss(4) 2:37 7:25 12:14 177:24 | | supplemental(4) 52:8 67:15 72:11 96:22 | |
| | | stake(1) 131:22 | | streamline(2) 71:11 71:13 | | supplied(4) 27:13 34:17 34:22 113:15 | |
| | | stamps(1) 22:15 | | street(10) 1:10 1:43 2:18 2:24 3:27 3:47 4:8 4:23 4:29 4:36 | | supply(2) 27:19 27:24 | |
| | | stand(12) 13:18 26:7 33:6 35:23 63:15 122:15 141:25 152:20 168:17 176:22 194:10 206:22 | | | | support(9) 22:1 28:17 87:7 97:10 97:16 126:13 170:9 171:6 199:9 | |
| sometime(2) 139:20 141:8 | | | | strength(1) 68:4 | | | |
| sometimes(2) 103:5 231:4 | | | | strengths(2) 47:11 76:15 | | | |
| somewhat(6) 41:16 63:8 63:15 140:3 143:13 155:7 | | standard(2) 164:7 201:8 | | stretch(2) 206:2 207:3 | | supporting(4) 84:19 | |
| | | standards(1) 143:21 | | strike(17) 50:4 58:8 87:21 87:22 97:21 123:17 130:9 170:15 171:24 172:13 173:2 174:2 174:12 175:22 207:3 225:2 225:4 | | supports(1) 58:17 | |
| | | standing(10) 23:6 49:1 49:7 49:11 49:19 49:23 51:3 71:6 115:4 177:1 | | | | suppose(5) 45:10 91:10 194:3 194:6 229:15 | |
| somewhere(3) 178:22 184:18 233:24 | | | | | | supposed(3) 124:6 126:7 128:16 | |
| soon(1) 143:2 | | standpoint(3) 29:17 137:8 142:24 | | strikes(3) 203:25 206:2 207:3 | | supposedly(1) 163:11 | |
| sorry(36) 17:12 39:6 44:14 53:13 70:16 71:21 79:15 83:17 86:7 90:7 90:15 90:20 92:11 106:4 115:13 127:11 127:20 144:1 146:2 148:15 148:23 151:22 153:2 158:1 169:22 171:1 175:7 178:7 181:22 182:2 189:10 189:11 221:14 227:12 237:3 240:1 | | stands(1) 193:13 | | strip(1) 148:14 | | supreme(1) 222:21 | |
| | | stanley(1) 7:36 | | strohbehn(1) 10:30 | | sure(64) 14:23 16:4 27:6 32:25 37:18 44:4 44:16 44:62 46:7 46:11 46:18 47:8 49:4 63:4 70:5 73:6 74:16 85:13 87:10 91:19 92:22 93:5 97:25 100:13 102:8 106:23 110:23 114:13 115:1 115:9 116:21 118:7 119:22 120:1 121:15 122:2 122:8 133:4 133:22 138:24 143:12 149:7 149:15 154:12 157:13 160:18 163:18 164:8 169:24 175:17 181:25 197:1 208:9 211:10 214:23 218:10 226:3 226:3 226:11 228:10 232:16 237:6 244:6 246:14 | |
| | | stark(5) 5:49 84:15 | | stromberg(1) 6:19 | | | |
| | | start(14) 12:19 27:25 43:10 52:23 80:24 87:23 138:25 138:25 201:7 209:21 241:8 244:17 245:3 245:12 | | strong(5) 108:25 195:9 229:9 238:12 | | | |
| | | | | strongly(1) 229:20 | | | |
| | | started(1) 170:7 | | structure(22) 21:10 184:9 184:13 184:25 185:13 186:4 212:13 214:13 214:20 215:1 215:25 224:23 225:19 236:19 237:9 238:10 238:15 238:25 239:5 239:11 240:2 241:4 | | | |
| sort(13) 130:4 139:6 194:14 194:18 200:17 201:8 204:13 210:11 226:1 237:14 238:1 238:5 241:5 | | starting(2) 139:19 245:12 | | | | surely(4) 189:8 189:17 190:2 192:8 | |
| | | starts(2) 84:15 120:24 | | | | surprise(2) 36:5 41:16 | |
| | | state(3) 154:16 177:6 200:6 | | | | surprised(2) 51:10 69:20 | |
| sorts(4) 181:18 200:5 200:6 215:12 | | stated(8) 58:16 58:23 119:9 119:14 119:24 120:20 149:7 171:25 | | structured(3) 215:23 235:1 237:15 | | sustain(1) 67:11 | |
| sottile(71) 3:46 37:7 37:15 40:7 40:8 42:8 42:12 43:4 43:5 43:7 51:15 52:3 52:7 52:12 52:14 52:22 53:20 53:22 53:24 54: 57:11 57:12 57:25 58:1 58:25 59:2 59:21 59:25 62:3 62:4 62:7 64:6 64:22 64:25 65:12 65:19 66:6 66:7 66:12 66:13 67:10 67:13 67:14 67:19 67:24 68:3 68:12 68:23 69:1 70:25 71:3 71:9 71:14 71:19 71:23 73:13 73:15 75:8 78:3 79:17 79:21 80:5 80:6 80:13 81:1 81:6 110:9 114:3 114:3 174:20 | | | | structuring(1) 235:5 | | sustained(7) 64:23 80:4 104:16 105:4 117:12 161:9 169:1 | |
| | | stated"(1) 120:24 | | stubborn(4) 230:17 230:18 230:19 230:23 | | | |
| | | statement(12) 15:25 16:5 16:17 28:6 66:8 81:22 84:17 98:18 119:22 125:20 171:25 190:10 | | study(3) 221:6 223:7 223:8 | | | |
| | | | | stuff(1) 137:1 | | suttonbrook(2) 4:41 4:41 | |
| | | | | stupid(24) 18:3 26:13 39:3 40:5 40:23 42:1 45:17 67:9 68:14 69:4 69:8 70:12 72:9 75:24 76:1 80:3 142:17 186:13 186:21 200:9 207:22 211:12 215:12 226:1 | | switched(2) 237:1 237:3 | |
| | | statements(9) 31:6 66:6 125:17 126:9 175:2 190:6 205:25 207:19 209:12 | | | | switching(1) 237:2 | |
| | | | | | | sword/shield(1) 107:6 | |
| | | | | subjects(1) 179:12 | | sworn(1) 177:3 | |
| sottile's(2) 66:1 173:10 | | states(7) 1:1 1:19 181:3 200:18 200:21 205:21 207:11 | | submission(2) 144:2 245:7 | | systematic(1) 221:5 | |
| sottile's(1) 80:22 | | | | submit(2) 57:16 98:17 | | | |
| sound(1) 1:48 155:17 247:4 | | stating(1) 209:8 | | submitted(2) 115:7 168:16 | | tab(51) 17:6 21:15 38:17 52:23 54:10 54:19 58:5 60:11 65:10 67:16 74:21 74:23 78:23 83:15 90:5 90:6 94:9 96:20 96:21 99:17 99:21 112:1 113:13 113:13 116:2 117:20 117:23 118:24 122:23 125:3 125:3 126:18 126:18 155:23 155:23 166:3 166:4 166:5 166:10 171:17 173:2 183:19 183:24 188:24 198:3 201:6 201:7 204:16 204:21 217:1 217:1 | |
| sounds(4) 51:8 92:15 100:17 152:19 | | station(1) 241:6 | | submitting(1) 117:5 | | | |
| source(1) 30:3 | | stay(2) 36:12 233:23 | | subordination(6) 60:4 61:10 62:16 62:20 62:23 63:8 | | | |
| sources(2) 27:16 168:18 | | ste(1) 1:36 | | | | | |
| south(1) 1:29 3:20 | | stearn(1) 2:15 | | | | | |
| spaeder(6) 3:43 5:15 40:8 89:25 90:23 134:4 | | stein(1) 2:32 | | subs(4) 189:25 190:4 192:6 192:10 | | table(1) 40:3 | |
| | | step(51) 37:3 37:3 37:4 37:22 37:22 37:23 38:22 55:17 55:19 56:25 56:25 59:7 60:1 60:17 61:8 61:8 61:9 61:24 62:8 62:12 62:13 64:1 64:2 65:21 65:22 70:9 123:24 155:3 155:8 155:25 156:4 156:6 156:13 156:14 156:18 156:23 157:2 157:4 157:7 157:10 157:20 158:9 160:7 164:4 176:18 196:11 196:16 228:21 228:24 230:11 243:25 | | subsequent(3) 117:15 123:8 223:1 | | tabs(1) 22:14 | |
| | | | | subsequently(1) 124:23 | | take(21) 16:17 25:9 28:11 48:21 50:3 53:2 53:14 56:16 57:22 71:18 89:17 90:20 110:19 113:9 113:11 126:14 135:24 139:5 145:16 148:13 149:16 149:16 153:20 160:5 162:3 164:24 190:1 190:11 192:6 192:17 193:24 195:1 195:11 197:9 201:4 203:6 203:16 211:10 212:7 213:16 216:17 217:10 233:7 243:3 244:6 244:21 245:2 | |
| speak(7) 26:15 37:12 41:10 41:15 91:2 146:2 160:2 | | | | subsidiaries(4) 49:11 49:17 56:25 148:5 | | | |
| | | | | subsidiary(5) 49:1 51:4 146:5 147:8 | | | |
| | | | | substance(4) 70:25 104:10 127:17 128:9 | | | |
| speaker(1) 53:23 | | step-one(2) 78:23 91:13 | | substantial(4) 172:23 219:12 221:13 221:2 | | | |
| speaking(1) 61:6 | | stephen(1) 4:9 | | substantially(1) 69:17 | | | |
| special(4) 3:10 7:10 40:8 89:25 | | steps(2) 227:9 227:18 | | substantive(4) 106:20 188:9 188:13 188:14 | | | |
| specialist(1) 27:17 | | stick(1) 142:23 | | success(1) 209:5 | | | |
| specialized(2) 143:9 180:6 | | still(13) 12:10 24:23 26:16 34:10 48:1 48:2 84:14 93:22 95:5 128:25 139:2 226:7 245:23 | | successful(1) 49:12 | | | |
| specializes(1) 180:6 | | | | such(16) 13:4 24:5 63:12 198:9 202:16 202:20 205:1 206:15 215:23 217:11 220:2 230:9 232:25 237:25 241:14 243:11 | | | |
| specific(3) 65:19 99:15 120:6 | | | | | | | |
| | | | | sudden(1) 139:8 | | take-aways."(1) 91:14 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **taken**(5) 35:22  44:11  44:12  71:8  172:10 | | **testify**(11) 25:23  26:3  26:17  27:5  34:21  35:14  75:1  104:18  182:5  234:15  244:5 | | **that**(301) 12:10  12:23  13:4  13:14  13:21  13:22  13:23  14:1  14:3  14:9  14:10  14:11  14:15  14:18  15:6  15:7  15:9  15:9  15:15  15:23  16:2  16:11  16:13  16:22  17:15  18:1  18:16  18:18  18:20  18:24  19:2  19:4  19:7  19:9  19:18  19:18  19:22  20:2  20:4  20:7  20:17  20:23  20:24  20:24  21:2  21:8  21:9  21:9  21:19  21:21  21:24  21:25  22:15  22:16  22:18  22:20  22:20  23:5  23:12  24:5  24:7  24:8  25:22  25:22  25:24  26:2  26:2  26:6  26:7  26:7  26:8  26:11  26:20  26:24  26:25  27:13  27:22  28:3  28:3  28:10  28:17  28:17  28:19  29:7  29:10  29:14  30:3  30:6  30:13  30:14  30:21  31:3  31:8  31:11  31:12  32:10  32:17  32:18  32:23  33:1  33:2  33:8  33:13  33:17  34:11  34:15  34:16  34:19  34:23  34:23  35:2  35:4  35:5  35:6  35:6  35:8  35:11  35:12  36:1  36:2  36:6  36:7  36:7  36:13  36:23  36:24  37:8  37:10  38:4  38:12  38:25  39:1  39:4  39:14  39:18  39:20  39:23  40:2  40:16  40:17  40:23  40:24  41:1  41:1  41:6  41:7  41:11  41:13  42:6  42:7  42:11  42:13  43:11  43:11  43:14  43:15  43:17  43:18  43:22  43:24  44:4  44:4  44:5  44:6  44:6  44:8  44:11  44:11  44:12  44:14  44:14  44:17  44:19  44:25  45:3  45:3  45:12  45:14  45:17  45:21  46:5  46:8  46:9  46:10  46:12  46:14  46:17  46:17  46:19  47:2  47:4  47:5  47:9  47:14  47:15  47:16  47:18  47:19  47:20  47:20  47:24  47:25  48:4  48:10  48:12  48:14  48:15  48:16  48:19  48:22  48:24  49:3  49:4  49:6  49:11  49:12  49:15  49:15  49:15  49:19  49:19  49:20  49:22  49:22  49:23  50:3  50:3  50:4  50:4  50:4  50:8  50:8  50:11  50:12  50:13  50:15  50:17  50:21  50:22  50:25  51:1  51:3  51:7  51:9  51:11  51:16  51:17  51:18  51:20  51:21  51:22  51:22  51:25  51:25  52:3  52:8  52:9  52:14  52:15  52:16  52:19  52:24  53:10  54:2  54:3  54:5  54:7  54:9  54:10  54:12  54:14  54:15  54:16  54:19  54:24  55:1  55:5  55:8  55:12  55:12  55:13  55:17  55:19  55:21  56:3  56:5  56:7  56:9  56:17  56:18  56:23  57:9  57:9  57:15  57:15  57:21  57:23  58:2  58:5 | | **that**(301) 58:9  58:16  58:23  59:4  59:8  59:10  59:12  59:12  59:18  60:1  60:4  60:6  60:9  60:11  60:13  60:18  61:1  61:7  61:14  61:16  61:22  61:23  62:1  62:4  62:9  62:13  62:15  62:17  62:19  63:5  63:10  63:11  63:12  63:22  63:24  64:5  64:9  64:10  64:12  64:16  64:17  65:2  65:6  65:7  65:7  65:12  65:25  66:14  66:17  66:20  66:22  66:22  66:25  67:1  67:1  67:11  67:12  67:15  67:16  67:21  67:22  69:12  69:13  69:16  69:20  70:1  70:3  70:5  70:7  70:11  70:17  70:19  71:16  71:16  72:3  72:5  72:6  72:14  72:14  72:15  72:22  72:24  73:6  73:7  73:10  73:18  73:20  73:25  74:2  74:5  74:7  74:7  74:9  74:10  74:16  74:16  74:17  74:20  74:24  75:1  75:3  75:3  75:10  75:12  75:13  75:13  75:15  75:16  75:17  76:1  76:3  76:11  76:12  76:13  76:13  76:19  77:5  77:9  77:10  77:10  77:14  77:19  77:24  78:8  78:17  78:18  78:20  78:25  79:2  79:9  79:13  79:18  79:23  80:3  80:7  80:8  80:9  80:11  81:12  81:13  81:19  81:21  81:22  81:23  82:8  82:14  82:19  82:23  83:1  83:2  83:5  83:7  83:7  83:8  83:9  83:10  83:20  83:21  84:5  84:10  84:16  84:23  85:1  85:4  85:6  85:8  85:10  85:12  85:15  85:17  85:20  86:11  86:15  86:18  86:20  86:23  86:23  86:24  87:3  87:8  87:11  87:15  87:16  87:17  88:1  88:2  88:5  88:6  88:10  88:13  88:17  88:19  88:25  89:3  89:5  89:7  89:7  89:10  89:10  89:18  89:17  89:18  89:20  89:24  90:3  90:5  90:24  91:3  91:5  91:7  91:11  91:12  91:15  91:17  91:17  92:2  92:2  92:4  92:6  92:6  92:9  92:13  92:18  92:22  92:24  93:3  93:9  93:16  93:17  93:19  93:22  93:25  94:4  94:5  94:14  94:17  94:20  94:22  95:3  95:11  95:13  95:15  95:19  95:21  95:22  95:25  96:3  96:4  96:8  96:15  96:17  96:23  96:25  96:25  97:7  97:10  97:12  97:13  97:14  97:15  97:16  97:17  97:25  98:2  98:5  98:8  98:9  98:11  98:19  98:25  99:2  99:2  99:5  99:9  99:11  99:12  99:13  99:25  100:3  100:5  100:6  100:8  100:11  100:13  100:18  100:23  100:24  101:3  101:6  101:8  101:9  101:19  101:23  102:1  102:5  102:11  102:14  102:16  103:1  103:4 |
| **takes**(5) 30:3  39:22  232:25  233:1  233:8 | | | | | | | |
| **taking**(3) 91:2  128:24  207:15 | | **testifying**(2) 45:13  51:2 | | | | | |
| **talk**(35) 15:19  17:20  26:16  26:24  28:22  29:1  29:10  31:9  32:24  35:3  47:1  64:5  93:14  99:15  102:17  103:21  104:4  108:11  128:6  132:16  136:23  137:6  137:9  137:18  144:9  144:10  147:24  154:3  154:4  190:12  195:2  195:12  195:13  236:8  245:6 | | **testimony**(75) 12:7  19:4  20:20  20:24  25:7  26:24  29:8  29:18  29:24  34:22  37:9  38:2  44:23  59:13  66:2  66:20  73:18  76:4  78:16  80:8  81:12  82:2  82:9  82:10  85:6  85:15  85:23  86:11  86:15  86:18  86:19  86:23  86:24  89:20  103:19  104:25  105:6  106:7  107:25  108:8  108:13  108:15  109:9  117:10  118:5  120:10  122:15  126:13  131:15  134:1  134:16  135:10  140:6  141:20  143:3  143:7  143:17  143:18  146:17  150:13  152:7  152:23  159:11  159:11  161:4  164:18  164:19  167:12  168:12  176:24  217:15  218:1  239:22  239:21  245:19 | | | | | |
| **talked**(23) 17:18  23:12  38:13  43:14  48:9  92:7  92:8  95:19  95:20  97:4  97:5  104:9  112:24  118:14  122:18  139:6  144:24  165:7  226:19  226:19  236:23  236:24  245:4 | | | | | | | |
| **talking**(28) 21:18  26:20  27:13  32:17  43:10  61:18  65:9  69:21  94:20  95:7  103:23  103:24  106:20  121:15  121:19  123:5  131:8  152:2  153:5  156:14  158:6  175:6  204:2  211:16  236:16  237:7  241:9  246:6 | | **texas**(1) 111:8 | | | | | |
| | | **text**(2) 38:25  179:8 | | | | | |
| | | **than**(65) 13:5  14:12  16:23  17:3  17:4  29:23  33:1  40:1  47:9  63:17  69:18  69:23  70:6  76:23  77:14  78:15  82:9  93:3  97:18  98:1  99:5  118:3  120:15  120:17  120:19  124:22  132:6  146:20  146:21  148:9  148:17  148:19  148:21  148:24  149:5  149:18  150:1  152:8  153:22  160:2  165:24  168:6  191:20  194:13  199:1  199:9  203:8  206:22  208:13  210:1  210:9  211:4  211:19  214:6  226:1  228:25  230:8  234:19  234:20  235:10  236:2  237:12  237:15  239:13  240:2 | | | | | |
| **talks**(4) 30:11  117:25  179:21  197:21 | | | | | | | |
| **tank**(1) 179:24 | | | | | | | |
| **task**(2) 181:12  209:3 | | | | | | | |
| **tasks**(1) 218:2 | | | | | | | |
| **taught**(1) 179:16 | | | | | | | |
| **tautologically**(1) 209:24 | | | | | | | |
| **teach**(6) 179:12  179:14  179:14  179:15  179:16  179:17 | | | | | | | |
| | | **thank**(53) 12:8  12:12  22:12  23:9  36:16  37:15  43:5  52:6  57:25  63:19  64:24  68:25  71:3  71:19  74:18  75:24  80:5  80:13  80:17  80:17  80:21  91:2  109:8  111:23  120:25  124:24  138:13  138:19  141:12  141:24  150:10  153:17  165:6  169:17  170:1  176:15  176:17  176:19  176:25  177:9  177:18  177:1  178:10  182:12  213:12  214:5  214:7  223:15  227:16  243:25  246:3  246:16  246:20 | | | | | |
| **technical**(5) 26:22  26:24  30:2  143:9  151:21 | | | | | | | |
| **tele-call**(1) 118:3 | | | | | | | |
| **tele-conference**(2) 118:3  118:6 | | | | | | | |
| **teleconference**(1) 171:21 | | | | | | | |
| **telephone**(3) 95:22  132:5  174:22 | | | | | | | |
| **telephonic**(10) 4:39  5:1  6:1  7:1  8:1  9:1  10:1  11:1  76:2  244:22 | | | | | | | |
| | | **thanks**(1) 136:7 | | | | | |
| **tell**(33) 18:19  24:10  25:10  32:9  32:11  32:13  32:14  32:15  33:14  53:3  54:12  68:20  76:6  78:13  84:25  85:4  113:14  121:4  143:22  144:8  158:25  159:19  160:3  165:23  167:12  174:1  174:7  176:8  176:23  178:2  233:25  234:1  244:8 | | | | | | | |
| **telling**(3) 134:12  137:19  137:20 | | | | | | | |
| **tells**(1) 115:25 | | | | | | | |
| **temporarily**(1) 51:6 | | | | | | | |
| **ten**(5) 71:18  196:2  227:6  228:11  230:8 | | | | | | | |
| **tender**(1) 182:4 | | | | | | | |
| **tends**(1) 143:17 | | | | | | | |
| **tentative**(1) 144:13 | | | | | | | |
| **tenure**(1) 178:21 | | | | | | | |
| **term**(8) 92:9  115:7  116:9  116:15  116:17  124:20  180:14  185:3 | | | | | | | |
| **terminate**(1) 87:11 | | | | | | | |
| **terminated**(6) 86:25  87:3  87:14  170:9  171:7  198:10 | | | | | | | |
| **termination**(3) 87:6  87:7  198:9 | | | | | | | |
| **terms**(19) 14:21  22:5  57:18  92:25  150:24  162:25  163:1  164:17  164:20  172:16  172:24  183:11  183:12  185:16  205:24  228:2  238:22  244:15  246:8 | | | | | | | |
| **test**(9) 14:14  26:14  33:7  43:23  45:25  79:12  122:1  143:3  143:12 | | | | | | | |
| **testified**(58) 15:6  19:4  28:12  38:4  39:14  40:23  43:11  45:11  48:15  51:16  51:20  55:8  64:17  65:4  65:6  66:14  66:16  66:23  67:1  68:15  73:16  75:25  78:8  79:9  83:7  88:5  92:24  93:15  93:15  94:3  94:4  95:9  95:13  95:15  95:17  96:3  98:23  101:8  103:20  118:19  126:8  127:23  129:23  130:12  145:5  150:17  158:15  167:14  168:6  168:14  171:21  173:10  173:15  174:14  175:21  180:12  219:8  234:14 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) 103:9 103:20 103:24 103:25 104:2 104:4 104:6 104:8 104:15 104:18 104:19 104:25 105:6 105:14 105:19 105:2 106:1 106:7 106:9 106:11 106:18 107:1 107:10 107:13 107:16 107:19 107:23 108: 108:2 108:4 108:13 108:13 108:15 108:17 108:19 110:1 110:10 110:15 110:15 110:2 111:3 111:11 111:15 111:16 111:16 111:17 111:19 111:24 112:6 112:7 112:12 112:14 112:20 112:21 112:24 112:25 113:14 113:20 113:21 113:25 114:4 114:9 114:11 114:16 114:16 114:22 115:4 115:4 115:6 115:8 115:11 115:18 115:20 116:12 116:14 116:16 116:18 116:21 116:24 117: 117:4 117:10 117:16 117:18 117:23 118: 118:2 118:2 118:5 118:7 118:10 118:12 118:12 118:15 118:17 118:19 118:22 119: 119:6 119:9 119:10 119:14 119:19 119:19 119:20 119:22 119:24 120:3 120:6 120:10 120:11 120:17 120:18 120:19 120:24 121: 121:7 121:8 122:7 122:8 122:10 122:15 122:25 123:12 123:17 123:17 123:21 123:22 124:2 124:2 124:2 124:11 124:12 124:14 124:16 124:19 124:21 124:22 124:24 125:1 125:2 125:5 125:11 125:14 125:20 125:21 125:21 126:1 126:4 126:7 126:8 126:12 126:22 127:3 127:6 127:8 127:13 127:16 127:23 128:3 128:8 128:11 128:17 129:8 129:11 129:14 129:18 129:2 129:24 130:9 130:12 130:13 130:15 130:18 130:22 131:15 132:2 132:20 132:2 132:24 133:1 133:15 133:17 133:19 134:8 134:9 134:11 134:13 134:13 134:14 134:1 134:22 134:23 135:1 135:2 135:2 135:7 135:15 136:7 136:15 136:16 136:17 136:2 136:21 136:22 136:22 136:25 137:13 137:14 137:18 137:21 138:12 138:24 139: 139:3 139:12 139:15 139:17 139:18 140:2 140:8 140:14 140:22 140:23 140:24 141:1 141:20 142:5 142:17 142:19 143:1 143:1 143:16 143:17 143:20 143:22 143:22 143:23 143:24 144:3 144:8 144:10 144:13 144:25 145:5 145:6 145:9 145:12 145:14 145:16 145:21 146:1 146:6 146:8 146:10 146:14 146:17 146:22 147:2 147:3 147:5 147:7 147:9 147:12 147:17 148:1 148:1 148:11 148:20 148:25 149:2 149:3 149:7 149:11 149:15 150:1 150:5 150:13 150:17 150:20 150:23 151:2 151:4 151:6 151:7 151:7 151:9 151:9 151:11 151:11 151:17 151:20 151:25 152:1 152:7 152:10 152:11 152:13 152:14 | | **that**(301) 152:18 153:4 153:8 153:8 153:13 153:15 153:24 153:25 154:1 154:5 154:7 154:10 154:11 154:11 154:13 154:2 154:25 155:6 155:7 155:8 155:11 155:13 155:14 155:19 155:22 155:25 156:4 156:6 156:12 156:19 156:20 156:23 157:5 157:6 157:9 157:10 157:11 157:14 157:14 157:1 157:16 157:17 157:22 158:15 158:18 158:18 158:19 158:19 158:21 158:23 158:24 159:1 159:3 159:9 159:11 159:12 159:18 160:4 160:24 161:1 161:13 161:15 161:17 161:25 162:10 162:19 163:9 163:1 163:12 163:19 163:21 164:1 164:2 164:9 164:12 164:17 164:18 164:24 165:1 165:9 165:11 165:11 165:14 165:17 165:20 165:25 166:10 166:23 167:1 167:2 167:14 167:25 168:5 168:12 168:12 168:15 168:1 169:5 170:10 170:13 170:15 170:16 170:17 170:20 171:6 171:8 171:15 171:18 171:21 171:24 171:25 172:5 172:8 172:13 172:15 172:18 172:23 173:3 173:5 173:8 173:11 173:15 173:20 173:20 173:2 174:2 174:2 174:12 174:12 174:14 174:16 174:18 174:19 174:22 174:24 174:25 175:15 175:22 176:4 176:8 178:24 179:20 179:24 181:4 181:8 181:9 181:10 183:3 183:4 183:7 183:19 184:13 184:20 184:20 184:23 184:25 185:7 185:22 186:7 186:14 187:9 187:10 187:13 187:18 188:4 188:6 188:13 188:16 188:20 188:21 188:21 188:24 189:7 189:8 189:16 190:12 190:17 190:20 190:24 191:5 191:16 191:1 191:21 192:5 192:12 192:15 192:18 192:24 192:25 193:3 193:5 193:8 193:9 193:21 194:3 194:4 194:6 194:7 194:8 194:9 194:14 194:15 194:18 194:23 195:1 195:19 195:20 195:22 196:4 196:9 196:11 196:15 196:21 196:24 197:4 197:8 197:10 197:11 197:20 197:22 198:8 198:21 198:23 199:5 199:7 199:15 199:22 200:4 200:10 201:1 201:9 201:15 202:23 203:2 203:6 203:10 203:10 203:12 203:17 203:2 203:24 204:2 204:5 204:13 204:14 204:23 204:5 205:7 205:11 205:13 205:13 205:16 206:23 206:25 207:4 207:8 207:8 207:14 207:15 207:24 208:9 208:18 208:22 209:7 209:9 209:18 209:21 209:22 210:1 210:5 210:6 210:9 210:9 210:12 211:3 211:4 211:6 211:6 211:8 211:11 211:16 211:18 211:19 211:24 212:4 212:7 212:9 212:12 212:18 212:18 212:20 213:1 | | **that**(226) 213:10 213:20 213:24 214:1 214:8 214:9 214:12 214:13 214:15 214:16 214:19 214:20 215:1 215:5 215:7 215:13 215:19 215:22 215:23 216:2 216:4 216:7 216:8 216:18 216:19 217:9 217:13 217:14 217:15 217:17 217:21 217:21 217:22 218:2 218:2 218:5 218:6 218:14 219:1 219:4 219:8 219:11 219:12 219:16 219:18 219:1 219:24 219:25 220:6 220:7 220:11 220:15 221:2 221:3 221:3 221:7 221:13 221:19 222:7 222:8 222:11 222:13 222:16 222:17 222:19 222:22 223:6 223:15 224:1 224:3 224:7 224:8 224:15 224:18 224:20 224:24 224:25 225:2 225:4 225:6 225:11 225:13 225:20 225:23 225:24 225:24 225:25 226: 226:2 226:4 226:5 226:14 226:16 226:19 226:25 227:1 227:10 227:19 228:4 228:7 228:8 228:11 228:12 228:16 228:18 228:2 229:3 229:9 229:16 229:16 229:16 229:20 230:2 230:4 230:5 230:9 230:12 230:17 230:17 230:22 230:23 231:4 231:10 231:25 232:1 232:6 232:7 232:11 232:13 232:14 232:15 232:22 232:22 233:4 233:8 233:9 233:21 234:5 234:8 234:9 234:10 234:14 234:15 234:17 234:19 234:20 234:22 235:2 235:4 235:5 235:14 235:17 235:25 236:2 236:3 236:5 236:6 236:6 236:12 236:15 236:18 236:19 236:22 237:11 237:18 237:22 238:1 238:3 238:12 238:12 238:18 238:19 238:19 238:23 239:2 239:11 239:1 239:14 239:15 239:16 239:20 239:20 239:20 239:21 239:21 239:22 240:3 240:4 240:7 240:12 240:24 241:3 241:4 241:7 241:13 241:14 241:16 241:19 241:20 242: 242:9 242:10 242:19 242:20 243:9 243:12 244:4 244:5 244:5 244:17 244:19 245:1 245:9 245:17 245:18 245:20 245:25 246:5 246:8 247:3 | | **the**(301) 1:1 1:2 1:18 3:6 3:10 12:3 12:4 12:6 12:10 12:13 12:23 12:24 12:24 12:25 13:3 13:4 13:5 13:7 13:9 13:10 13:13 13:14 13:14 13:17 13:23 14:2 14:3 14:4 14:5 14:6 14:6 14:7 14:8 14:9 14:9 14:12 14:13 14:14 14:14 14:15 14:16 14:17 14:17 14:18 14:21 14:23 14:24 15:1 15:3 15:6 15:7 15:9 15:12 15:14 15:15 15:16 15:17 15:18 15:18 15:19 15:19 15:20 15:20 15:21 15:22 15:24 16:1 16:1 16:2 16:4 16:5 16:5 16:6 16:6 16:7 16:8 16:11 16:12 16:13 16:16 16:16 16:17 16:18 16:22 16:22 16:22 16:23 16:25 16:25 17:1 17:3 17:4 17:7 17:7 17:8 17:10 17:12 17:13 17:13 17:14 17:14 17:16 17:16 17:17 17:18 17:19 17:19 17:21 17:22 17:23 17:25 17:25 18:1 18:5 18:5 18:12 18:12 18:13 18:19 18:19 18:20 18:22 18:23 18:23 18:24 19:5 19:5 19:6 19:8 19:10 19:12 19:12 19:13 19:14 19:16 19:16 19:18 19:21 19:21 19:22 19:23 19:23 19:24 19:25 20:2 20:3 20:5 20:7 20:8 20:9 20:9 20:11 20:11 20:12 20:16 20:16 20:16 20:16 20:17 20:18 20:21 20:21 20:21 20:24 20:25 21:1 21:4 21:7 21:7 21:8 21:11 21:11 21:12 21:12 21:13 21:15 21:15 21:17 21:17 21:19 21:25 22:1 22:3 22:4 22:5 22:6 22:6 22:9 22:13 22:13 22:15 22:20 22:21 23:1 23:3 23:3 23:4 23:6 23:9 23:11 24:3 24:3 24:5 24:5 24:6 24:19 25:1 25:5 25:9 25:10 25:10 25:13 25:16 25:20 25:22 25:25 26:1 26:4 26:7 26:9 26:19 27:1 27:6 27:8 27:25 28:4 28:5 28:5 28:7 28:8 28:8 28:9 28:14 28:15 28:16 28:18 28:19 28:24 29:2 29:9 29:16 29:16 29:17 29:22 30:3 30:5 30:6 30:8 30:9 30:9 30:10 30:13 30:15 30:17 30:18 30:23 30:25 31:3 31:4 31:4 31:6 31:7 31:7 31:11 31:14 31:16 31:16 31:21 31:22 31:22 31:24 31:25 32:2 32:3 32:3 32:4 32:5 32:6 32:7 32:10 32:13 32:17 32:18 32:22 32:22 33:1 33:2 33:2 33:6 33:7 33:7 33:8 |
| 152:10 152:11 152:13 152:14 | | | | **that's**(114) 16:20 21:14 21:17 24:10 26:9 27:2 29:19 31:17 32:5 32:7 32:20 34:4 35:1 36:9 38:22 45:6 46:4 48:18 49:21 55:2 55:21 56:4 56:6 56:14 57:18 59:1 59:14 61:15 61:17 62:22 63:16 63:25 67:3 68:8 70:10 70:24 142:12 144:5 145:22 148:7 148:11 151:1 152:1 152:16 152:21 152:23 153:4 153:19 154:2 154:22 156:5 156:8 156:8 156:14 157:1 158:20 159:3 159:14 160:13 162:9 163:8 163:15 163:15 163:22 164:19 165:4 166:1 167:11 169:16 176:11 195:7 197:12 198:6 198:13 199:5 204:18 207:24 208:8 209:23 212:15 212:17 213:3 213:4 213:5 215:24 216:13 218:10 219:13 220:14 222:3 223:18 224:6 224:15 226:11 226:22 227:21 227:23 228:25 228:25 230:25 231:12 232:21 232:21 235:6 235:20 236:4 239:24 241:25 242:3 244:12 245:17 246:1 246:9 | | |
| | | | | **that'll**(1) 139:5 | | | |
| | | | | **that's**(64) 74:11 74:23 75:7 77:23 78:9 78:16 78:16 78:18 78:24 80:12 81:24 82:22 83:16 87:5 90:17 90:23 91:25 93:2 94:19 95:1 96:19 102:16 102:23 103:9 105:3 106:2 107:16 108:13 108:16 109:7 110:20 113:5 114:8 114:23 118:11 118:18 122:21 124:5 124:24 126:14 127:11 129:5 129:11 130:6 131:5 131:21 131:23 133:14 133:17 134:16 134:18 136:22 138:7 138:9 139:6 139:10 139:12 139:15 139:19 140:11 140:24 141:10 141:15 153:19 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 33:17 33:17 33:20 33:22 33:23 33:24 34:1 34:1 34:2 34:4 34:4 34:7 34:8 34:8 34:14 34:15 34:15 34:16 34:18 34:19 34:19 34:21 34:23 35:2 35:3 35:6 35:8 35:10 35:13 35:21 35:22 36:1 36:6 36:6 36:8 36:11 36:11 36:17 36:23 37:2 37:4 37:5 37:11 37:14 37:19 37:21 37:22 37:24 38:5 38:8 38:8 38:8 38:11 38:12 38:14 38:19 38:20 38:21 38:21 38:23 38:25 38:25 39:3 39:3 39:4 39:11 39:14 39:14 39:15 39:15 39:21 39:22 39:24 39:24 39:24 40:5 40:6 40:8 40:9 40:10 40:18 40:20 40:23 40:24 40:25 41:13 41:17 41:18 41:20 41:23 41:24 41:25 42:2 42:8 42:9 42:13 42:14 42:19 43:3 43:10 43:12 43:14 43:18 43:23 43:24 43:25 44:1 44:5 44:13 44:15 44:16 44:16 44:22 44:24 45:8 45:8 45:12 45:22 45:23 45:23 46:1 46:1 46:10 46:10 46:12 46:13 46:16 46:21 46:22 47:11 47:17 47:19 47:20 47:23 48:5 48:5 48:11 48:11 48:14 48:18 48:20 48:23 48:24 49:2 49:2 49:9 49:10 49:17 49:17 49:19 49:23 50:5 50:6 50:9 50:13 50:25 51:1 51:2 51:2 51:13 51:13 51:15 51:17 51:20 51:24 51:25 52:4 52:13 52:14 52:16 52:17 52:20 52:24 53:5 53:7 53:21 53:23 53:24 54:7 54:14 54:16 54:19 54:20 54:24 54:24 54:25 55:1 55:7 55:7 55:8 55:11 55:15 55:17 55:18 55:25 56:12 56:16 56:19 56:19 56:23 57:2 57:2 57:3 57:9 57:11 57:17 57:17 58:14 58:14 58:15 | **the**(301) 58:15 58:16 58:20 58:23 58:23 58:25 59:3 59:5 59:7 59:7 59:12 59:15 59:21 59:22 60:1 60:1 60:2 60:2 60:6 60:7 60:9 60:10 60:14 60:15 60:15 60:17 60:18 60:19 60:20 60:22 61:4 61:5 61:6 61:6 61:11 61:14 61:15 61:17 61:18 61:19 61:20 61:20 61:22 61:23 62:3 62:6 62:9 62:10 62:12 62:15 62:15 62:20 62:25 63:5 63:7 63:12 63:13 63:14 63:16 63:17 63:19 63:20 63:21 63:25 64:3 64:5 64:6 64:7 64:10 64:10 64:11 64:15 64:16 64:17 64:18 64:19 64:23 65:1 65:2 65:2 65:3 65:7 65:9 65:12 65:13 65:14 65:14 65:17 65:19 65:20 65:24 66:2 66:4 66:5 66:5 66:6 66:6 66:8 66:8 66:10 66:10 66:11 66:12 66:13 66:14 66:14 66:15 66:16 66:18 66:19 66:20 66:21 66:22 66:23 66:25 67:1 67:1 67:2 67:4 67:4 67:6 67:6 67:7 67:8 67:9 67:9 67:11 67:15 67:15 67:19 67:20 67:24 67:25 68:2 68:3 68:4 68:4 68:7 68:9 68:11 68:14 68:14 68:16 68:18 68:17 68:19 68:20 68:22 68:24 69:2 69:4 69:8 69:9 69:12 69:13 69:14 69:16 69:18 69:22 69:22 69:23 69:23 69:24 70:3 70:5 70:6 70:6 70:8 70:13 70:17 70:22 70:24 70:25 71:1 71:2 71:4 71:13 71:18 71:21 71:24 72:1 72:2 72:3 72:4 72:5 72:8 72:9 72:14 72:14 72:15 72:16 72:18 72:21 72:23 73:1 73:1 73:2 73:3 73:3 73:5 73:5 73:8 73:9 73:10 73:14 73:17 73:19 74:1 74:1 74:2 74:2 74:4 74:5 74:20 74:21 74:21 74:21 74:23 75:1 75:3 75:7 75:9 75:15 75:16 75:17 75:17 75:18 75:19 75:21 75:22 75:22 75:24 75:25 76:2 76:8 76:8 76:9 76:9 76:10 76:10 76:13 76:14 76:14 76:15 76:15 76:16 76:18 77:3 77:9 77:9 77:10 77:11 77:17 77:17 77:18 77:18 77:18 78:1 78:2 78:3 78:7 78:7 78:9 78:10 78:10 78:18 78:19 78:19 78:20 78:23 78:25 79: | **the**(301) 79:1 79:2 79:2 79:3 79:5 79:6 79:9 79:10 79:11 79:11 79:14 79:15 79:16 79:19 79:20 79:22 79:23 79:24 79:24 80:4 80:11 80:15 80:16 80:17 80:18 80:20 80:22 80:24 81:4 81:11 81:13 81:18 81:22 81:25 82:2 82:6 82:9 82:10 82:13 82:14 82:16 82:17 82:24 83:1 83:2 83:2 83:5 83:6 83:8 83:9 83:13 83:13 83:17 83:18 83:19 83:24 83:25 84:3 84:4 84:12 84:13 84:15 84:15 84:17 84:18 84:18 84:18 84:19 84:25 85:3 85:4 85:6 85:7 85:7 85:11 85:13 85:18 85:25 86:4 86:5 86:7 86:8 86:12 86:16 86:19 86:20 86:21 86:24 86:25 87:1 87:3 87:3 87:4 87:6 87:6 87:7 87:8 87:9 87:9 87:10 87:12 87:13 87:20 87:21 87:23 88:1 88:2 88:9 88:14 88:14 88:17 88:25 88:25 89:3 89:9 89:12 89:13 89:14 89:17 89:18 89:20 89:24 90:1 90:6 90:7 90:8 90:9 90:11 90:11 90:12 90:12 90:16 90:16 90:16 91:2 91:3 91:13 91:14 91:21 91:22 92:2 92:8 92:16 92:17 92:17 92:18 92:20 92:20 92:23 92:25 93:6 93:6 93:7 93:7 93:7 93:13 93:13 93:19 93:22 93:23 93:23 94:4 94:9 94:13 94:14 94:15 94:15 94:19 94:19 94:20 94:22 94:24 95:2 95:6 95:6 95:10 95:18 95:24 96:1 96:1 96:2 96:16 96:16 96:17 96:21 96:21 96:23 96:24 96:24 96:25 97:4 97:5 97:6 97:10 97:15 97:17 97:18 97:18 97:19 97:20 97:22 97:23 97:24 97:24 97:25 98:1 98:6 98:8 98:11 98:11 98:15 98:17 98:17 98:18 98:18 99:2 99:7 99:10 99:11 99:12 99:19 99:20 99:23 100:5 100:7 100:15 100:22 100:23 101:4 101:4 101:5 101:9 101:21 102:1 102:10 102:12 102:15 102:1 102:21 102:22 102:23 102:24 103:4 103:5 103:7 103:8 103:12 103:13 103:13 103:16 103:17 103:24 103:25 103:25 103:25 104:1 104:6 104:7 104:8 104:10 104:11 104:13 104:15 104:16 104:18 104:19 104:22 105:1 105:4 105:7 105:9 105:12 105:20 105:21 105:24 106:1 106:4 106:5 106:5 106:7 106:8 106:11 106:12 106:13 106:14 106:17 106:23 107:4 107:5 107:7 107:9 107:9 107:10 107:11 107:12 107:13 | **the**(301) 107:15 107:16 107:17 107:18 107:19 107:19 107:22 107:22 107:23 107:23 107:24 108:2 108:3 108:4 108:6 108:8 108:8 108:9 108:11 108:11 108:12 108:17 108:18 108:18 108:18 108:20 108:20 108:24 109:1 109:1 109:1 109:3 109:4 109:5 109:6 109:6 109:7 109:9 109:12 109:13 109:14 109:18 109:20 109:20 109:22 109:22 110:5 110:5 110:8 110:11 110:12 110:12 110:21 110:25 111:3 111:6 111:6 111:8 111:11 111:25 112:3 112:5 112:15 112:20 112:20 112:25 113:1 113:2 113:3 113:5 113:8 113:15 113:19 113:20 113:24 113:24 114:2 114:6 114:12 114:13 114:14 114:15 114:16 114:19 114:25 115:1 115:3 115:7 115:9 115:21 115:22 115:22 115:22 115:24 115:24 115:25 116:10 116:17 116:19 116:25 117:4 117:5 117:6 117:6 117:8 117:11 117:12 117:15 117:17 117:19 118:1 118:6 118:11 118:12 118:16 118:20 118:21 118:25 119:1 119:2 119:5 119:5 119:8 119:10 119:11 119:12 119:15 119:17 119:17 120:1 120:5 120:5 120:7 120:9 120:9 120:11 120:15 120:17 120:18 120:23 121:1 121:3 121:4 121:8 121:9 121:10 121:10 121:11 121:13 121:13 121:15 121:16 121:17 121:18 121:19 121:22 121:22 121:25 121:25 122:1 122:2 122:4 122:6 122:7 122:9 122:12 122:13 122:14 122:18 122:20 122:22 123:1 123:3 123:5 123:5 123:8 123:8 123:8 123:11 123:14 123:15 123:18 123:21 124:2 124:2 124:4 124:10 124:14 124:15 124:16 124:20 124:20 124:21 124:22 125:17 125:19 125:19 125:25 126:5 126:6 126:6 126:12 126:13 126:17 126:18 126:20 126:23 127:1 127:2 127:15 127:17 127:18 127:19 127:20 127:21 127:24 128:7 128:7 128:9 128:10 128:19 128:20 128:21 128:23 128:24 128:24 129:1 129:2 129:7 129:10 129:20 129:20 129:21 130:2 130:3 130:4 130:7 130:10 130:15 130:18 130:19 130:20 131:2 131:5 131:6 131:7 131:7 131:9 131:11 131:20 131:20 132:2 132:15 132:16 132:18 132:18 132:19 132:2 133:5 133:7 133:10 133:11 133:12 133:15 133:15 133:17 133:19 133:22 134:1 134:1 134:1 134:2 134:2 134:4 134:6 134:8 134:10 134:13 134:20 134:24 134:24 135:2 135:2 135:5 135:11 135:19 135:20 135:25 136:4 136:6 136:7 136:11 136:11 136:12 136:13 136:15 136:15 136:16 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 136:24  136:25  136:25  137:4
137:7  137:7  137:8  137:10  137:11  137:11
137:13  137:13  137:15  137:16  137:17
137:24  138:3  138:3  138:3  138:5  138:5
138:6  138:6  138:12  138:14  138:16  138:19
138:20  138:21  138:23  138:24  138:24  139:
139:7  139:8  139:9  139:10  139:10  139:10
139:14  139:15  139:16  139:19  139:22
139:24  140:2  140:2  140:6  140:6  140:7
140:13  140:14  140:15  140:15  140:18
140:19  140:19  140:22  141:2  141:3  141:3
141:3  141:5  141:7  141:15  141:17  141:17
141:18  141:19  141:20  141:22  141:23
141:25  141:25  142:2  142:4  142:4  142:5
142:7  142:7  142:8  142:9  142:10  142:12
142:12  142:13  142:15  142:16  142:16
142:17  142:19  142:20  142:20  142:22
142:25  143:2  143:2  143:3  143:5  143:5
143:7  143:7  143:10  143:12  143:12  143:13
143:15  143:17  143:21  143:22  143:23  144:
144:5  144:7  144:9  144:9  144:12  144:15
144:19  144:21  144:24  145:2  145:5  145:9
145:10  145:10  145:13  145:16  145:18
145:20  145:23  146:4  146:4  146:5  146:8
146:9  146:11  146:13  146:13  146:16  146:1
146:21  146:21  146:24  146:25  147:1  147:2
147:3  147:4  147:5  147:8  147:11  147:16
147:18  147:19  147:19  147:20  147:21
147:23  147:24  148:3  148:3  148:4  148:4
148:5  148:9  148:10  148:10  148:11  148:12
148:12  148:13  148:15  148:17  148:17
148:23  149:3  149:3  149:4  149:5  149:6
149:9  149:10  149:14  149:15  149:17  149:1
149:18  149:19  149:19  149:20  149:20
149:22  149:22  149:23  150:1  150:2  150:4
150:4  150:5  150:6  150:7  150:8  150:11
150:12  150:16  150:16  150:18  150:19
150:22  150:24  151:7  151:8  151:9  151:18
152:8  152:10  152:11  152:11  152:13  152:1
152:15  152:18  152:18  152:20  152:20
152:21  152:25  153:2  153:9  153:9  153:10
153:10  153:13  153:15  153:17  153:20  154:
154:3  154:4  154:5  154:5  154:6  154:6
154:7  154:9  154:10  154:11  154:12  154:13
154:14  154:15  154:16  154:17  154:18
154:18  154:23  154:24  154:25  155:2  155:6
155:8  155:11  155:16  155:21  155:23  156:3
156:5  156:9  156:17  156:18  156:18  156:19
156:21  156:21  156:22  156:22  156:22
156:23  156:25  157:1  157:1  157:2  157:2
157:3  157:4  157:6  157:7  157:10  157:12
157:15  157:16  157:18  157:19  157:19
157:20  157:21  157:21  157:22  157:22
158:11

**the(301)** 158:13  158:16  158:18  158:23
158:24  158:25  159:1  159:2  159:3  159:4
159:5  159:7  159:10  159:12  159:13  159:15
159:17  159:18  159:20  159:23  159:24  160:
160:3  160:7  160:8  160:10  160:13  160:15
160:18  160:20  160:22  160:23  160:24
160:25  161:3  161:4  161:5  161:6  161:6
161:7  161:7  161:9  161:9  161:11  161:15
161:18  161:19  161:20  161:22  161:23  162:
162:1  162:2  162:4  162:5  162:8  162:11
162:13  162:24  162:24  163:3  163:4  163:4
163:5  163:6  163:6  163:7  163:9  163:11
163:12  163:12  163:13  163:17  163:22
163:22  163:24  163:25  164:1  164:5  164:6
164:6  164:9  164:10  164:11  164:12  164:16
164:17  164:20  164:23  164:25  165:1  165:5
165:8  165:8  165:15  165:16  165:19  165:19
165:24  166:5  166:6  166:9  166:21  166:25
167:1  167:1  167:5  167:12  167:14  167:16
167:16  167:19  167:19  167:20  167:21
167:21  167:22  167:25  168:1  168:5  168:8
168:12  168:13  168:13  168:14  168:15
168:19  168:19  168:20  168:21  168:25  169:
169:3  169:5  169:8  169:8  169:9  169:11
169:18  169:21  169:23  169:25  170:4  170:9
170:13  170:19  170:25  171:4  171:5  171:5
171:8  171:10  171:17  171:20  171:20  171:2
171:24  171:25  171:25  172:5  172:7  172:9
172:9  172:14  172:14  172:15  172:16  172:1
172:17  172:19  172:19  172:19  172:22
172:23  172:24  173:2  173:5  173:7  173:12
173:16  173:17  173:18  174:1  174:3  174:3
174:7  174:8  174:11  174:15  174:21  174:24
174:25  175:3  175:6  175:11  175:12  175:16
175:16  175:22  176:1  176:2  176:2  176:3
176:4  176:9  176:9  176:13  176:15  176:17
176:19  176:20  176:21  176:22  176:24
176:25  177:1  177:2  177:4  177:4  177:6
177:8  177:9  177:12  177:13  177:14  177:15
177:17  177:18  177:19  177:23  177:25  178:
178:5  178:8  178:8  178:13  178:14  178:16
178:17  178:18  178:20  178:20  178:23
178:25  179:2  179:7  179:12  179:14  179:23
180:4  180:14  180:15  180:15  180:17  180:1
180:18  180:19  180:19  180:20  180:21
180:22  180:23  180:24  180:24  180:25  181:
181:3  181:5  181:6  181:6  181:7  181:8
181:9  181:12  181:12  181:13  181:15  181:1
181:18  181:22  181:23  181:25  182:1  182:
182:3  182:5  182:6  182:7  182:9  182:10
182:17  182:18  182:21  182:21  182:22
182:22  183:4  183:5  183:10  183:11  183:11

**the(301)** 183:11  183:12  183:12  183:19
183:22  183:25  184:2  184:9  184:9  184:10
184:12  184:13  184:15  184:17  184:19
184:19  184:20  184:20  184:21  184:21
184:22  184:22  184:23  184:23  184:24
184:24  184:25  185:1  185:4  185:5  185:5
185:6  185:7  185:8  185:9  185:11  185:12
185:13  185:13  185:14  185:14  185:16
185:17  185:17  185:18  185:19  185:20
185:21  185:22  185:24  185:24  185:25
185:25  186:2  186:4  186:4  186:8  186:10
186:10  186:11  186:12  186:12  186:13
186:15  186:16  186:18  186:18  186:19
186:19  186:20  186:23  186:25  186:25  187:
187:2  187:5  187:5  187:6  187:6  187:8
187:8  187:9  187:9  187:10  187:11  187:12
187:13  187:14  187:14  187:14  187:15
187:15  187:17  187:17  187:18  187:18
187:19  187:20  187:20  187:21  187:22
187:22  187:23  187:24  187:25  188:1  188:1
188:1  188:2  188:4  188:4  188:5  188:6
188:8  188:9  188:10  188:10  188:14  188:16
188:17  188:21  188:24  189:6  189:7  189:13
189:14  189:16  189:18  189:23  189:24  190:
190:12  190:12  190:15  190:19  190:21
190:22  190:23  190:25  191:1  191:1  191:2
191:3  191:6  191:7  191:8  191:8  191:9
191:9  191:10  191:13  191:14  191:16  191:1
191:18  191:18  191:18  191:21  191:21
191:22  191:23  191:24  192:1  192:2  192:9
192:14  192:16  192:18  192:19  192:21
192:22  192:23  193:1  193:2  193:3  193:3
193:5  193:5  193:6  193:6  193:8  193:8
193:9  193:11  193:12  193:13  193:13  193:1
193:19  194:6  194:7  194:7  194:8  194:10
194:14  194:19  194:21  194:21  194:25
194:25  195:1  195:2  195:5  195:6  195:10
195:11  195:11  195:12  195:12  195:13
195:16  195:18  195:21  195:23  195:24
195:24  195:25  196:5  196:1  196:1  196:2
196:4  196:6  196:8  196:9  196:10  196:12
196:12  196:13  196:14  196:14  196:14
196:15  196:15  196:16  196:17  196:23
196:25  197:1  197:2  197:4  197:5  197:6
197:6  197:10  197:20  197:21  197:22  197:2
197:23  197:23  198:2  198:4  198:6  198:7
198:8  198:8  198:9  198:10  198:11  198:13
198:14  198:15  198:16  198:16  198:17
198:18  198:18  198:19  198:20  198:22
198:22  198:25  199:1  199:6  199:6  199:8
199:10  199:11  199:13  199:14  199:15
199:17  199:18  199:19  199:20  199:22
199:24  199:24  200:1  200:2  200:5  200:7
200:7  200:10  200:12  200:13  200:13  200:1
200:19  200:19

**the(301)** 200:23  200:24  200:24  201:5
201:7  201:8  201:8  201:8  201:10  201:11
201:12  201:15  201:17  201:18  201:19
201:22  201:23  201:24  201:25  202:2  202:5
202:6  202:7  202:8  202:9  202:12  202:13
202:17  202:19  202:20  202:20  202:23
202:23  203:1  203:2  203:10  203:11  203:11
203:21  203:22  203:22  203:23  203:23
203:24  204:1  204:6  204:7  204:7  204:8
204:9  204:11  204:12  204:12  204:13  204:1
204:14  204:15  204:16  204:18  204:20
204:21  204:23  204:25  204:25  205:2  205:2
205:4  205:5  205:7  205:8  205:8  205:9
205:16  205:19  205:20  205:20  205:22
205:25  206:4  206:4  206:6  206:6  206:7
206:7  206:9  206:10  206:10  206:11  206:11
206:12  206:13  206:13  206:16  206:16
206:17  206:18  206:20  206:22  206:24
206:25  207:1  207:1  207:6  207:7  207:7
207:10  207:10  207:12  207:13  207:15
207:15  207:16  207:17  207:18  207:20
207:22  207:23  207:23  207:25  207:25  208:1
208:2  208:3  208:5  208:6  208:9  208:11
208:14  208:15  208:16  208:18  208:19
208:22  208:23  208:23  208:23  208:23  209:1
209:1  209:1  209:3  209:3  209:4  209:4
209:4  209:6  209:6  209:8  209:10  209:11
209:14  209:15  209:15  209:15  209:16
209:16  209:17  209:18  209:18  209:19
209:20  209:22  209:23  210:2  210:3  210:3
210:4  210:5  210:7  210:8  210:10  210:11
210:11  210:14  210:15  210:16  210:16
210:17  210:17  210:19  210:21  210:22
210:23  210:24  210:25  211:2  211:3  211:8
211:8  211:8  211:12  211:18  211:21  211:22
211:22  211:23  211:24  211:25  212:1  212:2
212:2  212:7  212:10  212:11  212:12  212:18
212:20  212:24  213:1  213:1  213:4  213:5
213:8  213:11  213:17  213:23  214:17  214:2
215:1  215:5  215:9  215:12  215:12  215:15
215:15  215:16  215:21  216:1  216:5  216:6
216:6  216:7  216:9  216:12  216:14  216:15
216:15  216:19  216:25  217:1  217:4  217:5
217:6  217:7  217:8  217:8  217:10  217:12
217:12  217:17  217:17  217:20  217:23
217:24  217:24  217:25  218:1  218:1  218:2
218:2  218:6  218:7  218:8  218:11  218:11
218:12  218:13  218:13  218:15  218:19  219:4
219:4  219:5  219:6  219:7  219:10  219:14
219:16  219:17  219:17  219:19  219:22
219:22  219:25  220:2  220:3  220:3  220:4
220:5  220:7  220:8  220:9  220:9  220:9
220:10  220:14  220:18  220:19  220:20
220:23  220:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**the(301)** 221:9 221:16 221:18 221:21 221:22 222:1 222:1 222:2 222:3 222:3 222:7 222:10 222:11 222:13 222:13 222:16 222:20 222:20 222:22 222:23 222:24 222:24 223:1 223:1 223:4 223:4 223:6 223:7 223:7 223:12 223:13 223:14 223:21 223:21 223:25 224:3 224:3 224:8 224:12 224:13 224:14 224:16 224:20 224:21 224:22 224:24 225:4 225:8 225:10 225:12 225:14 225:15 225:15 225:17 225:17 225:18 225:19 225:22 225:22 225:24 225:24 226:5 226:5 226:5 226:8 226:10 226:10 226:11 226:12 226:14 226:15 226:15 226:16 226:17 226:20 226:23 226:23 226:23 226:24 227:4 227:4 227:4 227:5 227:6 227:8 227:8 227:12 227:13 227:17 227:19 227:20 227:20 227:21 227:21 227:22 227:22 227:23 227:24 228:1 228:2 228:2 228:4 228:4 228:5 228:6 228:6 228:10 228:11 228:11 228:12 228:17 228:18 228:19 228:20 228:20 229:1 229:2 229:4 229:5 229:6 229:7 229:8 229:8 229:8 229:10 229:11 229:12 229:12 229:15 229:16 229:17 229:19 229:21 229:23 230:1 230:2 230:2 230:3 230:4 230:4 230:6 230:6 230:7 230:8 230:12 230:12 230:13 230:14 230:17 230:18 230:21 230:22 230:25 231:1 231:7 231:8 231:8 231:9 231:9 231:9 231:12 231:12 231:16 231:18 231:21 231:24 231:24 232:3 232:4 232:5 232:5 232:11 232:13 232:13 232:17 232:17 232:18 232:19 232:25 233:2 233:3 233:5 233:8 233:8 233:9 233:10 233:11 233:12 233:12 233:16 233:17 233:21 233:21 233:22 233:24 233:25 234:5 234:10 234:1 234:17 234:19 234:19 234:24 235:7 235:9 235:11 235:12 235:12 235:15 235:15 235:25 236:1 236:4 236:8 236:9 236:9 236:10 236:11 236:11 236:11 236:12 236:13 236:14 236:15 236:17 236:19 236:21 236:21 236:24 236:24 237:7 237:8 237:9 237:10 237:11 237:12 237:1 237:14 237:15 237:16 237:16 237:17 237:18 237:18 237:19 237:19 237:20 237:21 237:22 237:23 237:24 237:25 238: 238:3 238:3 238:4 238:6 238:8 238:8 238:9 238:9 238:10 238:10 238:11 238:16 238:19 238:21 238:23 238:24 238:25 238:25 239:1 239:2 239:3 239:4 239:5 239:10 239:11 239:12 239:13 239:20 239:20 239:22 240:2 240:2 240:2 240:4 240:9 240:13 240:18 240:21 240:24 240:2 241:3 241:4 241:5 241:6 241:6

**the(90)** 241:6 241:7 241:9 241:9 241:10 241:11 241:16 241:20 241:22 241:22 241:23 241:23 241:24 241:24 241:24 241:25 241:25 242:1 242:5 242:5 242:7 242:7 242:8 242:8 242:8 242:8 242:9 242:11 242:13 242:13 242:15 242:1 242:17 242:18 242:20 242:23 242:23 242:25 242:25 243:1 243:2 243:5 243:8 243:10 243:11 243:13 243:14 243:15 243:18 243:19 243:21 243:23 243:25 244: 244:5 244:6 244:7 244:8 244:11 244:14 244:14 244:17 244:18 244:21 244:22 244:23 244:24 245:1 245:6 245:10 245:13 245:16 245:17 245:20 245:23 246:1 246:4 246:6 246:7 246:11 246:14 246:15 246:17 246:20 246:22 247:3 247:4 247:4 247:5

**their(76)** 13:11 13:11 19:19 19:21 19:22 25:23 31:6 32:6 40:13 40:19 42:22 46:15 46:15 47:14 51:19 51:23 57:16 68:7 72:1 82:12 82:20 83:20 88:17 89:4 89:12 115:2 115:4 118:21 131:22 134:21 139:10 139:15 139:16 140:13 140:24 142:23 143:16 146:12 146:14 146:20 146:25 149: 150:8 171:10 171:11 189:21 189:21 190:5 192:10 199:2 200:15 204:10 208:7 209:5 209:18 209:22 210:3 211:12 211:22 212:2 212:9 215:20 220:10 220:17 221:6 221:19 223:10 223:11 223:22 224:16 228:21 229:2 238:22 243:14 244:18

**them(43)** 13:12 27:25 31:8 35:14 40:3 41:4 41:5 43:18 44:7 45:6 46:11 60:22 87:11 88:25 102:12 104:9 110:25 113:11 121:16 122:3 122:3 122:4 125:21 139:11 139:17 142:23 142:23 146:16 159:19 160:17 181:2 181:10 196:16 200:24 206:2 206:24 211:2 213:2 221:22 223:21 228:2 231:15 238:17

**them."(1)** 83:10

**themes(1)** 81:12

**themselves(5)** 16:14 77:12 200:3 215:7 238:22

**then(85)** 16:12 16:14 19:14 23:4 28:9 30:17 32:1 32:4 32:25 34:25 35:1 35:5 38:23 42:2 56:16 56:18 61:10 63:10 63:1 63:20 68:21 69:3 74:7 74:12 75:17 77:12 77:12 77:22 80:1 84:10 103:13 104:3 107:16 109:18 110:21 112:18 114:24 115:20 117:14 121:3 123:14 131:11 135:4 137:3 138:9 139:3 139:4 148:14 150:2 151:23 151:24 153:13 154:9 154:14 154:1 154:23 157:6 159:15 160:6 161:2 161:11 166:25 167:12 172:13 180:23 181:17 184:23 185:23 187:15 196:11 199:10 208: 218:25 221:8 221:18 225:8 229:19 229:11 234:4 235:4 235:9 238:21 238:24 239:3 244:20

**theories(5)** 32:6 56:9 56:13 56:16 56:18

**theory(7)** 39:1 59:12 92:2 92:6 92:18 138:5 138:5

**there(179)** 13:22 14:10 18:21 19:11 19:17 19:17 22:6 28:16 31:5 31:11 33:6 33:25 34:22 40:14 40:21 42:1 42:4 42:6 42:10 44:5 44:11 44:25 49:23 50:11 51:13 51:22 53:12 53:13 56:8 56:23 59:22 60:24 61:8 61:9 61:10 64:1 65:5 66:17 67:2 67:17 67:18 67:20 69:11 70:11 72:16 73:11 78: 79:24 82:25 84:2 84:3 87:12 87:21 93:11 95:13 97:1 98:2 103:12 103:13 104:8 105:1 105:7 108:14 108:15 109:10 110:10 111:2 111:11 114:24 115:18 117:16 123:1 124:19 126:10 126:12 126:22 128:3 128:17 131:13 134:5 134:22 135:17 135:2 136:14 139:20 140:25 142:19 142:18 149:11 149:13 149:14 150:7 152:14 153:8 153:14 153:25 156:11 157:10 157:11 157:14 157:15 165:18 165:22 165:24 167: 168:14 169:4 169:18 173:21 174:21 176:4 182:7 183:25 185:19 188:2 188:8 188:16 189:8 189:13 189:16 189:17 189:24 190:2 192:7 194:23 194:24 196:11 196:22 197:1 197:18 199:18 203:15 203:15 203:17 203:18 205:8 206:5 206:14 206:15 207:14 217:4 219:20 219:21 220:6 222:5 223:2 223:12 223:24 225:14 225:24 228:9 229:19 230:14 230:16 231:17 231:23 231:23 232:9 232:11 234:5 234:18 234:18 234:21 234:24 235:8 235:21 236:5 239:8 240:19 242:16 242:18 242:19 243:20 245:20 246:7 246:13 246:17

**there's(61)** 13:6 19:15 19:23 20:6 20:18 20:20 25:4 30:17 31:7 34:17 35:10 36:5 37:10 38:25 39:22 49:22 51:16 55:5 59:2 66:10 70:13 148:16 151:10 154:10 154:13 154:24 157:6 157:9 159:19 160:7 165:2 172:10 189:6 193:12 194:20 195:17 200:1 202:25 207:14 209:21 215:19 217:22 222: 224:23 225:13 225:23 230:21 231:10 231:11 233:7 233:10 234:6 234:7 234:17 235:16 236:14 238:23 239:21 241:13 242:17 245:23

**therefore(3)** 41:22 75:18 77:13

**therein(1)** 69:5

**there's(12)** 87:22 108:15 108:17 117:9 118:9 131:8 134:7 135:10 135:19 136:11 137:8 140:4

**these(39)** 12:21 16:18 24:9 25:20 27:5 27:6 28:13 31:9 31:24 32:1 33:15 33:16 35:3 41:17 43:19 56:6 60:6 77:4 77:21 92:16 108:10 117:10 118:25 119:23 142:2 153:12 153:14 161:23 163:20 164:9 164:12 168:17 171:20 178:19 182:25 186:25 194:24 197:2 205:19

**they(144)** 16:14 17:1 18:4 18:4 18:13 18:15 20:9 23:2 24:9 24:17 26:16 28:1 28:2 28:2 28:18 29:13 30:15 31:5 31:25 31:25 32:7 32:14 35:4 36:5 36:6 39:25 39:25 40:1 40:17 41:1 41:7 41:11 42:22 43:24 45:7 45:25 46:6 46:17 47:7 47:23 51:6 51:19 52:17 60:21 64:16 66:25 68:16 71:22 72:7 72:10 78:10 78:11 83:8 83:9 85:13 85:14 85:17 88:16 89:10 102:12 104:8 104:8 104:8 104:12 108:4 108:4 119:9 122:1 126:11 134:4 139:11 139:14 140:20 140:20 141:1 147:3 148:5 148:9 148:9 148:16 149:24 149:24 149:25 150:1 151:6 153:11 153:13 170:24 170:25 171:6 171:7 171:9 174:3 174:4 174:7 174:7 181:9 188:18 190:20 195:9 195:17 195:19 195:20 196:7 197:4 203:16 203:17 204:3 204:3 204:10 204:11 208:1 208:4 211:3 211:11 211:11 211:13 211:17 211:17 211:20 212:3 212:4 212:5 212:6 212:7 213:1 216:5 218:13 218:15 218:15 221:12 221:20 221:22 221:23 223:11 223:12 223:14 223:25 224:8 225:10 229:16 231:5 231:6 242:9

**they're(14)** 18:3 51:8 57:8 70:8 142:18 157:13 208:1 208:7 212:9 212:10 216:3 218:11 237:24 241:7

**they've(1)** 41:20

**they've(4)** 83:18 136:16 139:15 140:21

**they've(1)** 140:4

**thing(19)** 36:1 46:20 68:18 89:9 111:7 121:16 121:19 137:1 139:18 152:21 195:3 204:14 214:1 214:8 222:16 226:21 238:14 240:13 242:12

**things(18)** 16:16 29:25 34:5 37:13 47:16 60:21 61:7 61:12 68:18 79:23 92:17 136:25 166:11 201:19 214:10 226:9 230:25 231:2

**think(191)** 14:6 14:8 14:13 17:10 22:4 26:2 26:11 27:17 29:7 29:19 33:12 34:13 35:1 35:7 35:9 35:16 35:23 36:12 36:12 37:10 38:14 39:21 40:10 42:22 42:25 43:14 44:3 44:10 44:19 44:25 44:25 45:11 49:21 50:12 50:13 51:6 51:9 51:21 57:6 57:20 59:1 62:2 62:4 64:8 66:13 68:8 70:4 70:8 70:13 74:2 74:15 75:1 75:25 76:19 76:22 79:9 79:17 79:25 80:12 82:22 84:14 86:8 86:23 87:12 87:25 90:9 90:16 92:7 92:24 93:15 96:3 96:19 99:9 99:12 99:14 102:5 102:7 102:11 102:14 102:19 103:18 104:2 104:7 104:15 107:1 107:2 107:24 108:16 108:18 110:25 112:18 112:20 115:11 117:9 119:23 128:8 128:12 130:18 132:23 136:14 136:19 137:10 137:15 139:5 139:9 139:15 140:14 142:10 143:11 149:11 149:12 151:8 151:17 152:8 152:11 153:8 153:9 153:22 155:13 155:2 157:15 158:12 160:6 163:13 164:2 165:18 167:4 167:8 168:4 169:4 173:6 174:20 176:11 178:24 179:24 193:4 195:14 195:15 195:19 195:21 196:24 197:12 199:5 199: 199:8 201:4 203:20 206:17 207:4 210:1 211:13 213:1 213:11 216:9 217:20 219:1 219:10 219:14 220:4 221:25 221:25 224:10 225:12 226:13 226:14 226:15 228:15 230:9 233:7 233:11 234:11 238:18 239:15 240:1 241:13 241:19 242:2 242:8 242:10 244:4 244:16 245:23 246:1 246:7

**thinking(13)** 26:4 43:19 55:13 57:7 57:14 57:16 57:17 61:5 64:8 64:9 64:13 66:3 220:7

**thinks(4)** 68:6 168:17 229:17 229:18

**third(19)** 17:13 22:3 28:16 59:21 60:1 63:19 83:2 83:25 161:13 164:23 168:15 172:9 176:2 186:15 191:5 207:2 207:2 207:24 208:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **this**(301) 17:15 21:18 22:2 22:4 22:23 | | **though**(7) 73:19 98:11 113:6 115:11 | | **tonight."**(1) 112:11 | | **tries**(1) 223:9 | |
| 22:25 23:11 23:14 23:24 23:25 23:25 | | 136:10 202:25 230:20 | | **too**(8) 95:8 128:19 142:22 157:8 157:23 | | **trigger**(8) 192:16 192:24 193:16 193:18 | |
| 24:11 24:14 25:11 25:24 26:5 26:9 26:15 | | | | 211:3 211:17 238:18 | | 194:9 194:15 194:19 194:20 | |
| 26:17 26:17 26:22 26:25 27:3 27:10 27:10 | | **thought**(23) 13:2 15:6 30:5 43:25 44:12 | | | | **triggered**(2) 193:4 228:3 | |
| 27:20 27:23 27:23 28:2 28:6 28:16 28:25 | | 47:18 74:2 76:13 76:14 76:17 78:14 97:15 | | **took**(13) 40:1 63:11 84:7 91:7 95:2 107:17 | | **triggering**(1) 194:13 | |
| 29:1 29:2 29:3 29:7 29:25 30:11 30:16 | | 97:23 130:16 133:19 137:19 140:7 174:3 | | 108:13 118:10 118:11 120:10 168:16 | | **trouble**(1) 208:19 | |
| 30:19 30:25 31:8 31:9 31:17 31:21 31:21 | | 174:7 182:24 194:1 220:6 246:6 | | 169:8 193:5 | | **true**(10) 13:8 31:11 83:5 133:1 145:18 | |
| 31:23 32:8 32:10 32:18 32:21 32:22 33:1 | | | | | | 154:12 193:8 196:15 206:14 236:4 | |
| 33:9 33:12 33:14 33:20 33:23 34:6 34:10 | | **thoughts**(3) 68:4 115:3 139:22 | | **top**(4) 17:14 31:22 113:15 151:8 | | **truly**(1) 14:9 | |
| 34:19 34:21 34:24 35:3 35:4 35:11 35:12 | | **thousands**(1) 73:4 | | **topic**(4) 34:10 36:14 165:7 172:19 | | **trump**(1) 8:41 | |
| 36:3 36:3 36:4 36:14 37:8 40:9 41:4 | | **threat**(2) 183:5 200:23 | | **topics**(3) 27:5 179:5 179:11 | | **trust**(178) 4:27 5:46 9:37 13:13 15:8 | |
| 41:12 41:16 42:11 42:16 44:4 44:23 46:9 | | **threaten**(2) 190:17 193:19 | | **torres**(2) 2:29 9:37 | | 15:10 15:12 15:14 15:16 16:6 17:4 17:17 | |
| 46:20 48:22 48:23 49:3 50:17 50:19 53:2 | | **threatened**(2) 190:19 190:20 | | **total**(2) 43:4 61:15 | | 18:6 19:1 19:11 19:13 20:16 86:21 146:13 | |
| 53:9 53:18 54:2 54:5 54:12 54:23 55:5 | | **three**(39) 19:18 28:1 58:17 58:20 58:23 | | **totally**(3) 19:13 68:5 87:15 | | 148:15 148:15 150:19 151:4 151:19 152:3 | |
| 55:7 55:19 56:1 56:5 56:22 57:8 57:13 | | 58:25 59:3 60:6 60:13 61:12 61:18 61:22 | | **totals**(1) 34:21 | | 152:4 153:6 153:7 154:4 154:4 154:7 | |
| 58:8 58:9 59:5 59:14 61:3 61:5 61:11 | | 62:9 64:11 64:13 75:19 79:12 91:23 97:5 | | **touch**(1) 111:25 | | 154:11 154:16 156:3 156:5 156:9 157:12 | |
| 61:22 63:4 63:6 64:5 64:9 64:14 64:17 | | 100:11 100:18 164:21 186:12 194:7 194:2 | | **touched**(1) 63:5 | | 160:21 179:16 183:12 184:9 184:13 184:15 | |
| 66:5 66:5 66:19 66:25 67:4 68:9 68:12 | | 196:12 196:12 196:13 197:6 199:14 | | **tougher**(1) 205:24 | | 184:22 184:23 184:25 185:1 185:5 185:8 | |
| 68:13 68:18 69:7 70:20 70:23 70:24 71:16 | | 203:23 226:25 227:6 227:19 227:21 229:2 | | **toussi**(1) 11:30 | | 185:8 185:12 185:14 185:20 185:23 186:5 | |
| 72:20 75:12 79:7 80:1 80:11 81:18 81:25 | | 230:20 232:5 244:3 | | **toward**(1) 211:18 | | 186:8 186:9 186:11 186:20 186:24 187:1 | |
| 82:2 82:10 82:13 83:23 84:2 84:9 84:13 | | | | **towards**(1) 211:3 | | 187:2 187:5 187:7 187:9 187:19 187:20 | |
| 84:14 84:19 84:22 84:25 85:6 85:6 89:21 | | **three-part**(1) 143:3 | | **toys**(1) 80:15 | | 188:1 188:4 188:6 189:24 190:1 192:7 | |
| 91:3 91:19 91:21 91:21 91:22 92:6 92:8 | | **three-person**(1) 186:9 | | **track**(1) 94:14 | | 195:5 195:6 195:13 195:16 195:24 196:6 | |
| 92:15 93:4 93:10 95:5 95:8 97:2 97:9 | | **threshold**(1) 36:12 | | **trademarked**(3) 59:18 92:10 92:11 | | 196:9 196:17 197:23 197:24 198:8 198:9 | |
| 97:13 97:14 98:6 99:17 99:21 101:3 101:9 | | **thrive**(1) 242:4 | | **train**(1) 139:11 | | 198:13 198:15 198:16 198:22 199:1 199:14 | |
| 101:21 102:6 102:21 103:11 103:16 105:1 | | **through**(31) 15:16 22:16 24:12 25:10 | | **training**(2) 122:6 122:13 | | 199:25 200:13 200:24 202:24 203:22 | |
| 107:2 108:1 108:3 108:21 111:14 112:2 | | 35:15 37:9 37:12 44:15 45:19 57:7 60:17 | | **transaction**(37) 20:10 100:19 101:3 155:8 | | 204:25 205:23 206:7 206:25 207:7 207:12 | |
| 112:4 113:14 113:14 113:18 114:11 114:1 | | 84:17 84:18 110:16 110:24 118:1 122:3 | | 192:15 195:20 195:24 196:5 196:8 196:20 | | 207:16 207:17 209:7 209:15 209:15 209:15 | |
| 114:18 114:18 115:2 115:5 116:15 116:17 | | 137:2 137:8 139:5 139:12 140:18 162:2 | | 201:9 219:16 220:1 220:1 220:5 220:9 | | 209:18 209:23 210:20 210:24 210:25 | |
| 117:3 118:15 118:20 118:25 119:23 120:8 | | 173:18 203:24 206:16 206:17 213:23 | | 229:7 229:11 230:16 231:25 232:5 233:3 | | 211:21 211:22 215:20 216:19 217:9 217:13 | |
| 120:12 120:18 120:18 121:5 121:12 121:2 | | 221:11 221:21 237:16 | | 233:5 233:17 233:21 233:24 234:1 234:2 | | 217:17 218:2 219:6 219:23 220:3 220:10 | |
| 123:4 123:7 124:5 124:7 125:14 125:20 | | | | 234:4 234:10 235:11 235:14 235:19 235:2 | | 220:10 222:2 222:3 224:21 226:11 229:6 | |
| 126:8 126:9 126:11 127:19 128:13 129:2 | | **throwing**(1) 27:25 | | 235:21 235:23 236:5 | | 229:9 229:12 229:16 230:3 230:6 230:13 | |
| 129:17 130:9 130:20 131:7 132:18 132:22 | | **thus**(2) 218:12 243:14 | | | | 230:22 231:8 231:13 233:9 233:12 236:9 | |
| 133:1 134:13 135:4 135:6 135:15 135:22 | | **tied**(7) 142:18 152:3 152:10 153:6 153:9 | | **transactions**(13) 55:18 59:8 189:18 190:2 | | 236:10 236:12 236:15 236:17 236:24 | |
| 136:20 136:20 136:23 137:1 137:5 137:5 | | 210:3 210:4 | | 192:5 192:8 195:10 196:21 196:24 209:9 | | 236:25 237:7 237:10 237:10 237:15 237:15 | |
| 137:9 137:12 137:16 137:21 138:17 138:2 | | | | 210:6 233:13 233:14 | | 237:17 237:18 237:19 237:20 237:21 | |
| 139:25 141:14 143:13 143:19 144:4 | | **till**(3) 211:3 211:17 211:17 | | | | 237:23 237:25 238:10 238:11 239:5 241:5 | |
| 144:24 150:11 150:16 151:3 151:11 151:1 | | **tilt**(3) 211:3 211:17 211:17 | | **transcriber**(1) 247:9 | | 241:7 241:10 241:11 241:16 241:23 242:6 | |
| 153:23 153:24 153:25 154:4 157:5 158:13 | | **time**(84) 16:12 16:16 18:5 19:23 24:16 | | | | 242:7 242:23 242:24 243:1 243:5 243:15 | |
| 159:4 159:8 159:20 160:12 161:7 161:20 | | 26:5 32:17 34:7 34:9 41:12 42:23 44:16 | | **transcript**(13) 1:17 1:49 34:9 44:24 73:9 | | 243:21 | |
| 162:6 166:12 166:16 167:1 167:5 167:5 | | 59:19 60:23 61:1 61:6 61:7 64:17 66:6 | | 83:24 83:24 136:6 137:14 142:6 142:13 | | | |
| 167:7 167:8 167:12 167:17 167:22 167:25 | | 71:10 74:1 81:6 83:13 84:25 85:7 88:25 | | 218:18 247:4 | | **trust's**(5) 205:16 209:10 210:7 210:14 | |
| 168:2 168:4 169:8 170:24 171:3 173:5 | | 91:2 91:13 91:21 92:20 92:22 93:4 93:7 | | | | 212:13 | |
| 173:11 173:12 175:5 175:8 175:9 181:9 | | 93:19 93:22 94:25 95:2 95:5 98:12 100:8 | | **transcription**(2) 1:42 1:49 | | | |
| 181:21 182:15 183:21 184:8 188:22 189:1 | | 100:9 101:4 101:4 108:9 114:16 115:5 | | **transcripts**(1) 19:8 | | **trustee**(41) 14:10 152:13 185:15 186:11 | |
| 190:3 190:17 192:4 194:23 | | 118:8 118:12 126:10 125:22 139:3 139:7 | | **transfer**(1) 156:3 | | 186:16 186:18 186:19 187:1 187:15 187:2 | |
| | | 140:2 140:7 140:15 141:4 141:6 146:21 | | **transfers**(2) 38:22 155:9 | | 195:2 195:6 198:15 204:7 207:15 208:22 | |
| **this**(74) 195:3 195:14 195:14 195:19 | | 153:20 154:4 163:25 170:20 172:6 173:23 | | **translate**(3) 163:1 163:23 164:4 | | 209:3 209:15 210:24 210:25 211:2 211:25 | |
| 195:21 196:5 196:15 196:19 196:20 198:1 | | 179:15 179:15 196:20 198:9 205:24 206:6 | | **translated**(1) 162:20 | | 217:8 218:3 219:16 219:23 220:3 226:16 | |
| 198:23 199:8 200:12 200:16 201:3 201:6 | | 211:18 213:21 213:21 213:22 216:6 233:1 | | **translates**(2) 163:8 164:2 | | 226:24 227:5 229:1 229:8 229:12 231:24 | |
| 202:3 202:12 202:18 203:3 203:20 204:4 | | 233:1 233:7 233:8 236:14 241:9 241:10 | | **transmittal**(1) 173:5 | | 232:4 232:18 236:1 236:20 237:11 239:12 | |
| 204:13 205:13 207:22 208:17 208:18 | | 244:7 245:11 | | **transmitting**(2) 54:6 54:9 | | 243:2 | |
| 209:13 211:16 212:1 215:25 217:15 217:27 | | **timeframe**(1) 115:9 | | **treatise**(1) 92:1 | | | |
| 220:5 221:3 222:16 224:15 224:18 225:4 | | **timeliness**(1) 233:10 | | **tree**(1) 133:23 | | **trustees**(6) 12:24 210:15 217:12 236:9 | |
| 225:20 226:1 226:3 226:8 226:21 228:17 | | **timely**(1) 27:23 | | **trehan**(1) 9:32 | | 242:7 243:7 | |
| 228:22 229:11 229:17 229:18 229:20 230:5 | | **times**(10) 32:9 38:10 56:20 92:25 101:14 | | **trial**(1) 109:44 | | | |
| 230:14 230:15 230:15 230:18 230:20 | | 103:7 156:19 160:13 161:22 197:1 | | **tribune**(93) 1:6 4:6 6:22 15:8 15:10 15:14 | | **truth**(3) 57:5 66:5 66:8 | |
| 230:21 230:23 231:7 231:25 232:19 232:2 | | | | 17:17 17:23 19:25 55:18 56:25 88:10 90:1 | | **truthful**(1) 152:7 | |
| 232:25 233:10 233:11 234:1 235:14 | | **timing**(3) 245:6 245:7 246:8 | | 99:22 101:5 114:19 114:20 116:9 129:11 | | **try**(7) 57:15 68:9 99:14 99:15 135:3 135:6 | |
| 236:19 236:24 243:4 244:2 244:3 244:18 | | **tired**(1) 232:20 | | 132:3 147:20 166:22 172:2 182:19 182:22 | | 163:25 | |
| 244:25 | | **titled**(3) 189:6 189:14 209:2 | | 183:6 184:19 185:6 187:13 187:23 188:11 | | | |
| | | **to-face**(1) 108:5 | | 189:22 189:25 190:4 192:10 192:10 193:20 | | **trying**(13) 21:7 26:18 46:20 50:9 50:25 | |
| **thomas**(1) 3:33 | | **to-principle**(1) 106:18 | | 194:3 194:8 194:11 195:2 195:3 195:4 | | 64:19 66:1 68:3 125:16 125:24 128:10 | |
| **those**(88) 15:21 16:2 16:9 18:8 18:10 | | **today**(18) 12:19 50:18 81:12 101:18 119:0 | | 195:8 195:12 196:3 196:11 196:18 197:2 | | 160:23 232:17 | |
| 28:11 31:2 31:3 32:2 33:24 34:18 37:1 | | 134:12 134:22 141:4 162:5 162:7 163:20 | | 197:22 197:22 198:24 199:23 203:13 | | | |
| 37:20 40:25 41:2 41:3 41:6 41:12 44:7 | | 164:11 165:4 165:23 215:19 216:8 234:16 | | 205:13 205:17 205:23 206:21 207:23 | | **tuliano**(6) 139:5 139:25 140:22 244:4 | |
| 44:8 47:15 48:14 52:21 56:17 58:20 58:23 | | 246:18 | | 208:24 209:9 209:18 209:20 210:4 210:6 | | 244:7 244:20 | |
| 58:25 59:3 60:23 61:7 61:12 63:6 64:22 | | **today's**(1) 144:12 | | 210:10 210:23 211:1 211:5 211:19 211:24 | | | |
| 75:20 76:7 76:17 80:18 84:8 89:7 89:7 | | **today's**(1) 139:24 | | 212:2 214:12 214:16 214:19 215:16 216:1 | | **turn**(43) 17:6 22:13 53:9 58:5 58:14 60:9 | |
| 110:16 111:22 128:9 138:10 141:2 145:16 | | **toes**(1) 123:19 | | 218:6 219:3 219:15 223:19 224:18 227:18 | | 64:25 67:15 67:19 83:15 84:12 96:20 | |
| 147:13 149:12 156:9 157:14 157:22 162:8 | | **together**(5) 23:19 30:4 34:21 103:8 134:1 | | 229:6 229:11 229:18 230:10 231:10 233:4 | | 96:23 99:16 115:12 116:23 117:20 118:24 | |
| 162:12 162:20 162:25 163:21 164:17 | | **toggle**(1) 31:21 | | 241:1 241:17 242:3 | | 125:3 136:25 166:3 173:2 182:14 184:5 | |
| 164:19 164:19 170:22 180:6 180:10 182:2 | | **told**(10) 31:2 49:18 60:7 70:4 72:8 76:7 | | | | 185:11 186:3 186:17 187:4 188:3 189:1 | |
| 183:14 183:17 184:24 185:18 185:21 | | 79:17 83:7 143:23 171:15 | | **tribune's**(11) 18:25 198:25 199:2 200:15 | | 197:15 197:17 204:8 204:11 204:15 205:17 | |
| 187:16 190:6 190:18 190:18 193:10 199:3 | | | | 200:23 207:13 209:5 212:13 215:10 217:1 | | 208:21 218:21 224:13 233:15 239:7 245:3 | |
| 205:25 207:19 209:11 209:19 211:1 211:5 | | **tomorrow**(7) 34:22 126:20 244:5 244:7 | | 234:20 | | 245:9 | |
| 211:9 211:20 213:23 213:25 232:3 236:16 | | 244:19 244:24 245:19 | | | | | |
| 237:22 243:16 | | | | **tribune's**(3) 7:11 91:13 100:1 | | **turning**(1) 52:23 | |
| | | **tonight**(1) 246:9 | | **tricadia**(2) 10:18 10:18 | | | |
| | | | | **tried**(2) 30:24 138:10 | | | |

| Word | Page:Line |
|---|---|
| turnover(1) 19:20 | |
| tweaked(1) 39:24 | |
| twelve(1) 176:5 | |
| twenty(1) 136:1 | |
| twenty-five(4) 147:7 148:21 148:24 149:18 | |
| twenty-million-dollar(1) 154:10 | |
| twice(1) 127:24 | |
| two(67) 13:14 15:21 18:2 18:7 27:20 32:17 33:17 60:21 62:5 70:3 72:14 77:21 90:9 104:15 138:6 138:10 155:3 155:8 155:25 156:4 156:6 156:13 156:14 156:18 156:23 157:2 157:4 157:7 157:10 157:20 158:9 160:7 164:4 166:11 174:21 185:5 186:12 188:10 190:14 190:18 191:7 191:11 191:20 192:2 193:2 193:11 193:14 197:5 202:8 202:19 203:20 204:1 204:6 210:22 210:25 211:5 211:8 211:20 218:25 219:22 222:11 227:2 230:2 236:10 236:17 240:2 244:5 | |
| two-thirds(2) 63:11 63:16 | |
| type(2) 29:7 46:4 | |
| typical(1) 231:3 | |
| typically(5) 180:17 195:22 224:16 238:15 238:17 | |
| u.s(1) 11:22 | |
| ucc(5) 38:5 92:17 93:8 95:20 113:8 | |
| uh-huh(1) 45:21 | |
| ultimately(3) 84:5 84:21 237:23 | |
| um-hum(4) 47:5 48:24 56:11 61:2 | |
| unable(2) 77:7 77:8 | |
| unaware(1) 120:8 | |
| uncertainty(5) 207:11 234:5 234:7 241:1 241:15 | |
| unclear(1) 144:1 | |
| undefined(1) 19:6 | |
| under(66) 12:11 13:5 13:6 13:25 14:6 14:12 15:12 15:15 17:21 18:13 19:14 20:14 20:19 21:16 28:15 32:3 34:20 38:15 55:14 63:9 90:5 91:11 94:9 99:17 119:2 136:25 142:21 143:11 146:16 146:19 146:25 147:17 147:20 148:3 148:9 148:10 148:13 148:17 149:11 149:17 149:18 149:25 150:1 150:16 150:16 154:5 187:6 189:6 189:8 189:14 191:9 196:2 196:2 197:3 198:18 199:18 202:24 204:24 209:1 214:13 214:20 215:16 219:4 220:8 228:2 228:8 | |
| underestimate(1) 71:17 | |
| undergoing(1) 215:6 | |
| underlying(1) 30:25 | |
| undermine(2) 83:10 190:17 | |
| understand(50) 26:16 35:13 35:14 38:7 43:19 45:22 55:11 57:13 57:17 65:25 66:10 70:3 88:19 90:22 102:10 103:4 103:9 103:11 104:6 105:19 107:12 107:20 108:21 124:1 126:6 129:10 134:14 137:7 149:2 154:11 155:14 158:8 162:18 162:19 180:22 180:23 181:12 185:13 187:9 191:2 198:2 201:2 201:21 209:13 210:16 215:5 237:21 238:9 242:15 243:20 | |
| understanding(30) 38:12 72:8 72:18 86:24 102:17 108:24 124:5 132:19 134:20 140:7 143:6 159:7 159:17 161:7 163:5 164:10 170:25 172:4 184:9 184:13 184:15 186:4 191:21 197:25 200:8 214:12 214:16 214:19 225:19 243:16 | |
| understood(8) 57:3 62:25 62:25 89:13 101:23 137:24 144:14 226:20 | |
| undertake(1) 163:19 | |
| undertaken(1) 199:7 | |
| undue(4) 214:20 214:23 214:25 241:1 | |
| unexculpated(1) 203:3 | |
| unfair(7) 68:11 104:1 164:16 236:20 237:11 238:18 239:12 | |
| unfairly(1) 145:17 | |
| unfortunately(2) 142:18 159:6 | |
| unidentified(2) 53:23 176:16 | |
| uninsured(1) 203:3 | |
| unissued(2) 234:24 235:9 | |
| united(3) 1:1 1:19 181:3 | |
| university(5) 178:5 178:8 178:13 178:14 179:12 | |
| unknown(5) 87:19 97:21 130:24 131:6 234:11 | |
| unless(4) 57:8 213:3 230:20 243:4 | |
| unlike(2) 25:22 30:22 | |
| unlikely(12) 47:19 50:6 56:8 63:9 63:15 162:12 162:14 162:25 164:1 199:22 208:1 224:22 | |
| unnecessary(1) 68:5 | |
| unredact(1) 167:20 | |
| unsecured(17) 3:24 5:5 95:20 96:16 96:17 97:1 118:16 146:5 146:5 146:6 147:5 147:8 147:19 147:19 148:4 172:1 186:1 | |
| until(15) 18:21 23:17 36:14 139:17 140:10 141:8 141:9 149:5 179:22 180:4 187:10 198:8 206:12 213:3 213:3 | |
| untimely(1) 27:25 | |
| unusual(4) 140:3 143:13 215:16 215:18 | |
| up-streaming(2) 138:5 138:11 | |
| upon(5) 13:18 17:23 30:6 30:13 30:16 89:12 165:23 215:11 | |
| upstreaming(7) 24:2 32:3 32:5 32:6 32:10 32:12 33:21 | |
| usa(1) 9:4 | |
| use(16) 24:11 41:6 41:17 52:9 57:2 59:19 168:20 126:11 140:16 142:7 142:14 161:3 165:3 168:4 236:20 237:12 | |
| used(9) 24:4 24:14 42:17 42:17 58:3 72:4 164:17 164:20 213:2 | |
| uses(3) 164:5 164:6 164:21 | |
| using(5) 45:7 117:5 164:15 167:6 168:2 | |
| usually(1) 180:20 | |
| vacation(2) 94:24 95:7 | |
| vague(2) 86:8 226:7 | |
| valerio(1) 9:11 | |
| valid(1) 160:4 | |
| validity(1) 49:2 | |
| valuable(2) 13:10 195:5 | |
| valuation(7) 77:18 150:17 207:20 207:21 212:16 212:21 212:21 | |
| value(93) 15:16 16:18 16:22 17:16 20:13 20:14 20:15 20:16 20:17 20:19 32:22 37:1 37:22 44:8 45:8 46:16 46:21 48:7 54:24 55:8 58:18 59:4 60:3 60:6 60:14 61:12 62:12 62:20 62:22 63:13 63:17 63:25 69:18 76:9 76:18 77:9 77:11 77:16 77:17 78:1 78:18 78:24 96:16 97:1 98:1 104:11 124:22 152:14 153:15 156:17 157:3 157:6 160:22 163:6 167:16 174:3 174:8 195:10 195:19 207:13 208:7 208:10 209:2 209:6 209:18 209:20 209:22 210:3 210:3 210:4 210:10 211:5 211:19 211:22 211:23 211:24 212:2 212:14 212:20 214:2 214:3 219:17 219:25 220:1 229:10 230:15 231:25 232:19 233:13 234:1 241:23 242:1 242:1 | |
| values(2) 47:14 214:3 | |
| valuing(1) 155:16 | |
| van(6) 222:20 222:24 223:2 223:21 224:3 224:19 | |
| vanna(1) 175:16 | |
| variety(7) 181:19 183:9 183:12 190:19 210:19 229:19 243:19 | |
| various(6) 34:20 47:12 165:17 182:21 207:1 215:12 | |
| vary(1) 47:17 | |
| vastly(1) 148:16 | |
| vazquez(1) 5:12 | |
| veers(1) 231:17 | |
| venture(3) 205:25 206:22 206:23 | |
| venturer(1) 205:22 | |
| ventures(3) 189:23 206:6 206:24 | |
| verbatim(1) 127:24 | |
| version(9) 38:24 44:17 45:12 48:11 51:17 116:25 122:4 165:1 167:21 | |
| versus(3) 181:3 190:4 192:10 | |
| very(32) 12:8 13:9 24:4 27:2 35:16 40:6 43:5 51:11 57:18 67:14 74:18 94:21 104:8 108:25 149:12 149:13 156:21 157:17 160:17 168:5 170:3 172:18 176:1 217:17 221:23 223:13 223:14 229:9 233:22 245:2 246:1 246:20 | |
| via(1) 95:22 | |
| video(1) 151:15 | |
| view(21) 13:15 19:5 20:2 59:4 60:14 69:17 70:2 70:12 77:9 140:2 140:8 149:1 154:2 168:5 190:11 195:25 196:19 207:15 218:6 219:24 226:5 | |
| viewed(1) 77:14 | |
| views(9) 47:6 47:10 95:2 96:15 108:25 126:3 127:5 128:1 164:25 | |
| vii(1) 202:3 | |
| viii(1) 202:3 | |
| viking(1) 6:34 | |
| vinson(1) 8:15 | |
| violate(1) 224:3 | |
| violated(1) 219:15 | |
| violates(1) 226:17 | |
| violation(2) 26:5 222:21 | |
| virtue(2) 171:10 226:8 | |
| viv(3) 85:17 88:9 171:16 | |
| volume(4) 90:6 90:7 90:11 90:13 | |
| volumes(1) 90:10 | |
| vora(1) 9:5 | |
| vote(9) 14:21 231:3 231:4 234:7 235:13 235:16 235:18 235:22 235:23 | |
| voted(4) 14:23 14:24 150:6 231:5 | |
| votes(2) 181:6 187:24 | |
| vrc(1) 161:16 | |
| wacker(1) 3:13 | |
| wackerly(1) 6:17 | |
| wait(7) 35:24 140:9 149:5 149:9 149:13 152:17 245:18 | |
| waiting(2) 71:22 232:20 | |
| waived(1) 41:8 | |
| waiver(5) 42:1 42:7 42:15 73:7 142:20 | |
| walk(2) 118:1 162:2 | |
| walked(3) 45:19 122:3 173:17 | |
| wall(2) 60:24 168:14 | |
| wan(1) 118:25 | |
| want(68) 14:13 16:10 16:11 16:12 16:13 51:15 63:4 64:25 64:5 68:20 70:4 80:7 93:10 94:10 94:13 94:13 100:10 102:8 102:15 105:15 105:20 106:23 112:1 112:19 113:23 121:15 122:15 123:24 128:7 128:13 128:19 130:16 135:11 137:18 138:24 138:25 139:6 139:13 144:8 146:11 149:8 149:22 150:15 154:19 159:23 163:24 164:10 164:13 194:22 201:1 204:15 205:22 227:3 227:4 230:11 230:18 232:20 233:23 239:4 239:19 | |
| wanted(23) 43:18 43:22 44:7 44:13 45:6 48:4 48:21 51:20 74:16 86:20 108:13 117:11 121:8 121:25 123:12 130:19 134:23 143:23 144:5 149:8 232:14 236:1 237:6 | |
| wanting(1) 48:9 | |
| wants(10) 20:11 57:23 137:20 194:4 197:3 207:2 214:12 214:17 214:19 242:3 | |
| wardwell(3) 2:4 8:7 81:3 | |
| ware(1) 92:18 | |
| warp(1) 231:12 | |
| warrant(24) 15:16 17:18 17:19 21:5 183:12 187:12 187:17 187:22 187:23 187:24 195:6 195:11 206:7 206:10 206:11 207:1 207:24 208:18 209:17 210:3 211:23 236:10 241:24 242:1 | |
| warrants(13) 15:14 15:23 16:7 184:17 185:1 187:5 187:6 187:8 195:25 198:19 199:20 215:21 219:17 | |
| warren(21) 206:15 206:19 206:8 208:13 210:19 229:19 243:19 | |
| was(301) 13:2 14:7 17:23 21:12 22:3 23:17 23:18 23:20 23:21 23:23 23:24 23:25 24:4 25:23 25:25 26:4 26:10 26:25 27:3 27:10 27:20 27:23 29:1 29:3 29:3 29:3 29:4 29:4 29:11 31:12 31:15 31:23 33:19 33:19 33:23 33:25 34:17 34:21 36:13 39:15 39:19 40:12 40:14 41:6 42:1 42:2 42:6 42:9 42:10 42:11 43:12 43:17 44:16 44:20 44:25 45:3 47:16 47:20 48:14 48:16 48:19 49:19 49:19 50:1 51:3 51:17 51:18 52:19 54:12 54:16 56:24 57:3 57:4 57:5 57:7 57:14 57:15 57:16 60:2 60:3 60:22 60:23 60:24 60:24 60:25 61:3 61:6 61:18 61:19 61:20 61:25 62:1 62:1 62:9 63:5 63:20 64:4 64:6 64:8 64:17 65:19 66:6 66:14 67:1 67:2 68:6 68:7 69:11 69:12 70:13 71:16 72:7 72:8 72:9 72:9 72:16 72:23 73:1 73:25 74:3 74:17 74:22 75:2 75:4 75:9 75:13 75:15 76:8 76:17 76:19 77:2 77:2 77:9 77:10 77:17 78:4 78:21 79:7 79:10 81:12 81:13 81:22 82:8 82:13 82:25 83:1 83:12 83:14 85:1 85:7 86:20 87:1 87:8 87:12 87:13 88:1 88:10 88:22 89:21 91:17 92:8 92:23 92:25 93:12 93:20 93:22 94:24 95:13 95:14 95:15 97:1 97:12 97:17 97:19 97:23 97:25 98:1 98:14 99:2 99:2 99:2 100:19 100:23 101:4 101:7 102:17 103:1 103:13 104:1 104:1 105:7 105:14 106:7 107:10 107:14 108:9 108:19 108:21 109:1 109:9 109:10 110:10 110:15 111:2 111:11 111:15 112:10 112:21 112:25 114:14 114:19 114:20 114:21 114:24 115:4 115:11 115:13 115:18 115:25 116:15 117:5 117:15 117:16 118:2 123:14 123:17 124:21 124:22 125:20 126:12 126:22 129:14 134:8 134:9 135:2 135:21 136:5 136:16 136:21 136:23 137:4 138:11 140:22 142:15 144:1 145:5 146:9 146:12 146:17 149:3 150:4 152:7 153:3 155:22 156:11 157:14 158:7 158:18 160:20 161:5 161:8 165:11 165:11 165:18 165:20 165:22 165:22 165:23 165:24 165:25 167:15 167:19 167:20 168:14 168:15 169:4 170:9 170:12 170:16 170:19 171:2 171:6 171:15 172:5 174:3 174:8 174:12 174:18 174:19 174:20 174:22 174:23 174:24 174:25 176:3 176:4 176:9 178:21 178:23 179:22 | |

| Word | Page:Line |
| --- | --- |

was(43) 180:4 180:18 181:2 181:8 181:9 181:12 182:17 182:19 188:21 194:1 194:3 195:3 205:8 213:10 218:3 219:1 219:19 219:20 219:21 219:24 219:25 220:6 220:7 220:12 220:13 222:19 223:2 223:4 223:24 225:8 226:21 232:17 234:18 234:19 235:2 239:8 239:14 239:15 243:13 243:13 244:1 245:20 246:22

washington(1) 3:49

wasn't(5) 27:23 34:13 48:15 59:14 168:3

wasn't(12) 83:5 87:6 90:4 94:21 98:2 107:11 108:12 108:19 108:19 115:12 133:21 134:7

waterfall(15) 22:20 24:7 24:9 25:25 26:15 27:18 28:6 28:22 31:19 32:23 36:3 36:9 72:8 142:11 142:12

way(55) 13:3 19:23 23:16 28:4 37:11 50:13 54:15 55:21 60:2 66:5 67:12 79:9 79:10 103:4 107:11 107:12 109:13 130:20 133:25 136:23 139:14 140:6 143:11 143:12 149:7 158:25 162:7 162:8 163:23 165:5 167:16 175:15 193:13 194:10 195:21 195:23 197:10 200:13 204:7 206:22 212:10 221:25 223:24 228:22 229:23 230:21 231:10 234:3 235:1 235:4 235:16 238:3 238:20 241:25 244:18

ways(9) 30:1 43:24 190:19 190:20 204:6 229:19 230:14 230:15 230:16

we'll(15) 21:13 23:4 34:9 36:12 48:4 71:18 144:9 144:10 144:12 169:9 169:12 175:8 233:24 244:17 244:18

we're(20) 21:6 21:6 27:13 35:16 37:8 70:25 151:23 152:2 153:5 156:14 158:6 166:4 169:3 204:2 230:21 237:2 237:7 241:9 244:15 244:19

we've(18) 18:18 22:25 30:24 31:1 31:2 35:9 50:13 51:21 52:14 52:24 59:18 63:14 63:16 165:7 224:2 232:7 241:22 244:5

weaknesses(1) 47:12

wear(31) 24:3 32:7 32:7 32:14 33:22 59:13 59:14 59:14 59:15 59:18 61:9 63:21 64:1 65:7 65:15 65:17 65:17 69:10 69:14 69:16 69:18 69:25 70:5 70:6 70:12 70:18 70:18 79:3 92:9 138:5 138:10

wear's(1) 59:16

wednesday(2) 12:2 140:18

week(10) 22:3 38:2 105:6 105:24 106:15 108:4 111:12 115:18 140:12 244:18

weeks(3) 64:16 72:14 72:16

weigh(1) 241:6

weight(1) 36:8

weighted(1) 56:4

weil(1) 7:36

weiss(1) 6:38

weitman(1) 6:23

welcome(1) 144:23

well(152) 14:6 17:13 21:6 23:1 23:25 25:13 25:16 27:9 29:11 29:16 29:24 30:1 31:11 32:12 33:11 34:25 35:21 36:3 36:1 40:6 42:19 44:10 45:25 47:1 47:16 48:4 50:16 50:10 50:19 50:20 51:15 52:19 54:12 55:19 55:23 56:6 57:20 60:21 62:4 64:6 64:19 66:24 67:6 67:14 68:19 68:19 70:2 72:20 76:10 76:19 76:22 76:25 77:6 77:12 80:20 82:4 85:15 85:19 86:2 86:23 87:10 88:20 93:10 96:1 96:6 104:4 105:7 105:17 106:22 106:25 107:4 107:7 108:6 108:21 110:18 111:24 112:21 113:11 115:10 116:20 121:7 121:15 122:5 123:18 124:19 130:8 133:1 133:5 133:14 133:14 135:9 135:14 139:8 141:3 143:25 144:6 149:20 150:2 151:5 152:21 153:22 156:21 157:13 158:10 158:12 158:22 159:3 160:3 160:3 160:16 162:13 163:2 163:10 163:16 163:22 163:24 165:18 166:6 166:11 167:9 168:8 183:13 187:1 187:14 190:10 192:23 193:16 204:18 205:10 206:14 207:25 208:16 209:3 219:4 219:19 224:7 226:18 228:2 228:8 228:20 229:4 229:15 233:4 232:23 235:3 235:20 240:1 241:22 242:25 243:21 245:13 246:13

well-run(1) 208:10

wells(2) 9:48 38:19

wendy(1) 247:8

went(10) 33:24 44:20 59:22 68:4 75:17 156:12 167:16 167:21 168:1 203:24

were(122) 13:17 13:23 14:9 18:10 24:8 27:13 27:22 27:23 29:17 31:11 34:22 39:5 40:25 43:25 44:5 44:11 45:3 49:11 50:9 50:16 50:17 50:25 52:15 53:7 54:5 54:9 58:3 58:9 58:23 60:6 60:10 61:7 61:8 61:9 61:10 63:20 63:24 65:5 65:6 65:9 66:18 66:22 70:12 72:13 74:19 78:9 78:14 78:17 79:2 79:2 79:19 79:23 81:19 82:25 83:8 83:9 87:3 87:4 92:20 92:22 93:3 93:4 93:11 93:25 95:5 101:9 101:16 101:16 101:22 102:12 103:12 104:8 104:8 104:12 105:1 108:14 109:12 109:14 110:11 110:21 113:19 114:14 114:16 117:10 119:4 123:21 125:16 126:10 128:3 134:10 135:1 138:4 142:17 145:2 150:7 151:10 156:17 158:15 158:18 161:19 161:23 171:7 172:7 173:21 174:4 174:4 174:21 175:5 175:6 180:8 182:24 182:24 184:8 202:24 204:19 216:9 219:15 222:25 223:2 231:6 237:6

weren't(3) 44:6 51:10 158:24

weren't(8) 78:10 78:11 93:6 93:7 93:23 98:11 99:10 102:17

west(1) 3:13

we'll(8) 73:10 136:8 136:8 139:16 139:17 140:16 141:4 141:9

we're(15) 79:15 84:13 94:7 94:9 95:18 100:22 101:3 107:2 111:7 121:15 121:18 131:11 135:3 137:2 140:19

we've(11) 94:20 103:19 112:2 118:14 121:17 122:17 130:9 135:5 139:6 140:14 140:18

wharton(3) 6:38 178:18 179:1

what(251) 15:12 16:24 17:12 17:15 18:18 21:11 23:25 24:1 24:10 24:10 24:21 26:2 26:4 26:9 27:22 28:8 28:21 28:25 29:9 30:15 30:19 31:24 31:25 32:1 32:7 32:14 32:25 33:12 33:12 33:13 33:15 33:21 34:7 34:8 34:12 35:2 35:3 35:13 35:21 36:13 39:18 39:25 44:10 45:7 46:1 47:2 47:11 47:22 47:22 47:24 48:6 48:22 48:23 49:5 49:14 49:18 50:19 50:20 54:12 55:2 55:11 56:17 56:19 56:20 57:5 57:14 57:16 57:17 58:21 59:1 59:14 60:21 61:6 61:11 62:23 63:9 63:17 63:20 64:7 64:8 66:2 66:23 67:3 67:4 68:6 68:20 69:21 73:1 73:8 74:4 74:19 75:7 75:9 75:12 75:15 76:8 76:10 76:17 76:19 77:8 78:14 78:16 78:7 89:11 90:17 92:22 94:7 95:1 100:6 100:8 102:15 102:18 106:5 106:25 107:17 109:2 110:21 113:14 113:17 114:13 114:17 114:18 119:24 120:19 121:4 121:5 121:7 121:17 127:17 128:16 131:5 131:12 133:22 134:8 134:18 134:18 135:12 135:14 135:16 136:23 137:17 137:19 137:20 139:6 140:5 141:5 144:5 144:7 147:15 147:18 148:3 148:4 148:4 149:16 152:2 153:4 156:14 157:5 157:21 157:24 158:1 158:1 159:2 159:10 159:12 159:14 159:15 160:4 160:24 160:25 161:7 161:18 161:23 162:1 162:25 163:2 164:23 164:25 165:7 167:12 167:17 167:25 168:7 168:9 170:19 170:22 171:5 172:13 172:13 174:2 174:2 174:7 174:8 174:24 175:25 178:2 178:14 179:2 179:12 180:8 183:3 183:7 185:1 187:6 188:5 189:10 197:3 197:24 197:25 199:2 199:13 200:15 201:2 201:15 202:11 202:12 203:16 209:24 209:24 210:13 211:10 214:23 217:1 217:24 218:5 218:10 219:8 221:23 222:3 224:2 224:8 224:16 225:15 225:18 229:18 232:14 234:14 234:16 234:23 236:2 239:4 242:3 244:6 244:12 244:16 245:11 245:19 246:7 246:7

what's(7) 15:19 30:9 32:25 46:21 63:13 199:15 209:14

whatever(6) 30:2 41:8 108:19 168:17 194:6 211:25

whatsoever(2) 25:5 199:24 205:14

what's(2) 138:18 141:5

when(44) 19:20 23:2 23:5 30:10 30:24 39:23 50:16 50:18 53:12 60:22 61:18 67:17 68:4 68:10 71:5 82:8 83:19 90:3 92:24 99:16 100:19 101:5 101:16 118:7 118:10 120:21 140:13 144:9 146:12 146:2 151:6 173:6 175:5 175:6 175:14 177:15 185:19 197:2 205:22 211:19 223:19 236:1 238:15 241:10

whenever(1) 234:7

where(52) 17:7 17:11 28:7 31:5 31:23 34:15 37:3 37:22 38:23 40:11 55:11 57:23 58:18 64:1 66:1 67:20 82:25 84:20 94:20 106:16 108:18 111:8 117:17 138:4 138:9 139:7 140:24 141:9 149:9 152:19 153:11 178:12 180:2 205:21 206:25 208:1 208:16 211:5 211:24 211:25 211:25 212:3 219:20 221:12 222:20 222:25 230:25 231:23 233:25 234:15

where's(1) 175:16

whereas(1) 237:19

whereupon(1) 246:22

where's(2) 139:8 139:9

whether(90) 15:18 15:20 16:14 26:14 33:21 34:10 39:19 44:17 45:25 46:1 46:2 46:3 48:25 53:3 65:5 65:6 65:14 65:17 65:20 66:19 67:7 67:10 69:3 69:14 69:24 70:18 72:5 75:20 76:6 77:1 79:6 79:16 80:1 81:17 87:13 104:11 107:21 109:10 114:18 120:8 120:13 125:23 127:1 133:11 133:12 134:1 134:4 134:10 134:19 137:9 137:11 137:16 139:11 139:25 140:9 140:21 140:24 140:25 141:14 142:18 156:23 156:25 161:5 161:16 170:12 170:16 172:4 180:24 181:15 182:17 182:23 192:12 196:19 196:20 200:22 204:10 207:22 207:24 208:2 209:25 210:2 212:15 212:17 220:6 225:25 229:7 231:25 236:1 245:21 245:23 245:24

which(116) 18:19 19:12 22:14 30:6 37:9 38:19 39:5 40:13 40:19 40:24 42:1 44:15 52:24 54:10 56:18 57:4 57:5 57:23 58:5 58:16 58:17 59:4 59:7 59:10 60:2 60:9 60:23 61:5 61:20 63:9 64:13 65:9 65:9 66:3 66:5 67:18 72:18 73:7 74:14 79:19 94:8 94:9 96:21 97:4 97:19 97:23 99:7 104:14 107:24 108:10 109:1 118:24 122:23 124:11 124:15 133:10 137:15 142:20 143:4 148:13 152:10 153:13 160:25 162:15 162:17 165:15 166:3 167:1 174:21 176:2 179:8 179:22 179:23 180:5 180:17 181:5 182:20 183:9 183:22 184:17 185:2 185:4 186:9 187:11 188:8 189:9 189:18 189:25 190:3 190:20 190:24 192:6 192:8 192:14 194:1 194:12 195:17 197:4 198:3 201:23 202:17 209:17 210:4 217:1 219:19 223:4 223:9 223:10 224:21 227:2 229:19 232:11 238:2 241:5 244:23

while(10) 16:4 78:20 84:2 84:3 143:11 168:14 180:8 192:5 194:15 232:17

white(2) 9:48 175:16

whittman(1) 8:45

who(54) 12:23 18:6 18:10 19:23 23:17 23:17 27:18 28:21 30:22 33:13 35:7 37:12 42:2 64:19 78:11 83:12 101:21 103:19 108:11 112:5 129:2 129:16 129:20 131:12 143:14 146:19 149:9 150:7 167:7 168:21 187:11 187:16 194:25 196:10 203:15 203:18 206:5 206:15 206:24 208:8 210:14 210:19 210:23 216:1 238:7 242:13 242:16 243:16 244:1

who's(2) 19:16 176:20

whole(5) 32:21 32:22 70:10 147:2 225:4

whom(5) 102:12 103:19 135:8 210:15

whose(4) 186:9 195:6 211:23 211:23

who's(1) 90:21

why(33) 12:26 14:3 14:3 21:4 23:24 27:4 29:3 33:11 33:11 35:3 35:3 63:16 73:25 74:11 77:6 77:6 85:4 113:11 117:20 159:15 160:21 190:8 195:3 195:4 195:14 195:15 206:3 208:4 208:17 209:14 219:3 232:23 239:15

wide(1) 164:24

wider(1) 142:23

wild(1) 11:26

| Word | Page:Line |
|---|---|
| **will**(85) | 14:4  14:10  14:12  14:13  14:18  16:7  20:8  28:9  34:23  35:22  40:10  41:18  42:9  49:23  52:4  54:16  74:9  84:19  84:21  100:10  104:14  104:15  107:1  107:18  135:4  139:23  139:25  140:2  140:3  140:5  141:25  146:24  148:16  149:11  149:12  149:13  152:10  152:13  152:14  153:8  153:14  153:18  158:25  167:24  167:25  176:23  177:15  184:18  185:3  185:8  185:18  185:20  186:8  186:12  186:19  186:20  187:2  187:10  187:15  187:17  188:4  188:8  195:22  203:16  211:2  213:6  215:10  215:25  218:7  222:5  224:13  224:16  224:18  231:7  232:5  240:25  241:7  241:8  241:16  241:19  244:5  245:11  246:8  246:13 |
| **william**(1) | 4:35 |
| **willing**(9) | 88:1  139:16  140:8  170:13  171:7  171:18  196:16  216:6  230:11 |
| **willingness**(1) | 132:22 |
| **willy**(1) | 187:22 |
| **wilmer**(1) | 5:25 |
| **wilmington**(13) | 1:11  1:37  2:19  2:26  2:49  3:28  4:10  4:24  4:27  4:37  5:46  12:2  19:1 |
| **wilson**(1) | 9:24 |
| **win**(3) | 17:1  55:21  56:20 |
| **winfree**(1) | 2:47 |
| **wires**(1) | 10:35 |
| **wish**(3) | 34:10  57:21  187:16 |
| **wished**(1) | 55:13 |
| **with**(301) | 12:6  13:9  13:13  14:8  14:17  19:1  19:5  19:9  21:2  21:6  21:11  23:4  23:11  24:9  26:2  26:2  26:3  27:2  28:3  29:6  29:18  30:3  31:25  32:2  32:8  32:16  34:6  34:17  36:6  36:13  36:22  37:4  37:23  39:15  40:17  41:5  41:11  41:25  42:10  43:12  43:12  43:17  44:18  45:4  45:16  45:18  45:21  46:8  46:14  46:21  46:23  46:25  47:5  47:9  48:24  49:13  50:25  52:3  52:9  52:10  52:21  55:2  55:15  57:15  59:22  60:25  61:3  62:5  65:1  65:3  65:8  66:15  66:15  67:2  67:8  72:7  73:17  74:3  74:14  75:2  75:4  75:3  75:20  76:2  76:16  76:23  78:1  78:3  78:6  78:7  79:5  80:2  82:20  83:4  84:21  85:10  85:13  85:17  85:17  85:20  85:21  85:25  86:20  87:8  88:1  89:18  89:24  92:2  92:16  92:16  93:8  94:5  94:14  94:16  95:10  96:16  99:19  100:4  100:19  101:4  101:19  102:1  103:19  104:10  104:13  104:18  104:22  105:11  105:12  105:12  106:1  106:8  106:18  108:2  108:5  110:10  110:12  110:15  111:16  111:2  112:10  112:19  112:22  113:2  113:5  113:18  114:6  114:14  114:15  114:21  116:8  116:19  117:24  118:16  118:20  119:15  119:16  120:4  120:5  120:7  120:16  120:16  120:18  121:13  121:16  121:22  122:9  122:24  122:2  123:7  123:9  123:9  123:13  126:9  127:25  128:22  129:7  130:6  131:17  131:22  133:14  133:20  134:1  135:5  136:6  137:12  138:13  138:17  138:21  139:19  140:15  141:20  143:1  143:14  144:16  145:12  145:13  145:23  146:16  147:16  149:8  151:3  151:17  151:18  152:12  153:11  153:13  154:13  154:14  154:16  154:18  155:2  156:22  156:22  157:3  157:17  158:7  158:9  158:13  158:23  159:19  161:19  162:4  162:20  163:6  163:14  163:24  164:3  164:12  165:15  169:5  170:13  170:16  170:21  171:8  171:10  171:22  172:16  172:1  172:19  172:24  173:12  174:15  174:18  174:19  175:3  175:9  175:12  175:22  176:6  180:15  180:16  180:21  181:2  181:17  182:1  184:8  184:20  186:14  186:15  190:6  192:17  193:15  193:17  194:1  194:4  194:11  196:20  197:5  197:23  198:13  198:14  198:16  198:22  198:24  198:25  199:3  199:6  199:13  199:22  200:10  200:14  200:14  201:7  202:15  202:23  203:10  203:22  204:10  205:4  205:22  205:25  206:11  206:23  207:4  207:18  209:11  209:19  209:21  212:1 |
| **with**(36) | 212:5  213:18  213:21  213:21  213:22  214:4  215:9  217:7  217:10  217:12  219:5  219:15  220:8  221:8  222:2  224:9  225:3  225:13  225:15  226:10  231:19  232:21  233:8  234:16  235:10  236:6  238:15  238:19  239:14  239:22  240:2  241:8  243:8  244:15  245:13  245:22 |
| **withdraw**(4) | 52:4  126:17  159:11  175:3 |
| **withdrew**(1) | 117:6 |
| **within**(10) | 100:7  100:11  100:18  101:17  103:7  105:24  106:15  143:10  217:10  231:6 |
| **without**(19) | 22:10  32:12  38:8  114:13  128:8  153:12  184:2  190:1  191:1  191:23  192:6  193:6  194:22  196:8  200:24  222:5  229:21  230:5  230:12 |
| **witness**(71) | 25:9  26:3  26:8  26:18  26:19  26:23  29:6  29:8  29:18  30:22  33:13  33:23  37:9  37:12  39:4  41:17  51:15  52:8  64:5  64:10  66:14  66:16  66:23  67:1  68:14  68:15  75:7  80:16  80:19  80:22  82:17  86:4  86:7  87:20  90:12  97:23  102:24  106:4  111:11  121:1  126:8  127:20  136:23  137:5  137:5  137:9  137:12  137:17  137:18  138:12  139:2  140:20  141:17  141:22  143:6  167:5  167:8  168:14  170:25  171:5  175:15  176:19  177:8  177:18  178:8  180:13  181:25  182:2  182:5  227:13  231:16 |
| **witness's**(3) | 68:21  143:7  161:7 |
| **witnesses**(15) | 20:21  139:1  139:11  139:13  140:13  140:13  140:15  140:17  140:19  140:20  141:1  141:7  143:15  244:3  248:2 |
| **witness's**(2) | 79:23  124:4 |
| **won**(3) | 56:19  62:23  168:22 |
| **won't**(7) | 34:22  35:7  35:14  49:22  203:17  230:1  230:19 |
| **word**(5) | 113:10  142:9  162:3  163:9  218:3 |
| **words**(8) | 55:4  66:5  108:10  122:12  162:20  163:3  164:25  202:22 |
| **wonder**(1) | 200:22 |
| **won't**(3) | 99:15  111:6  137:21 |
| **work**(9) | 20:18  31:6  123:12  144:10  164:9  164:9  175:9  180:2  244:18 |
| **worked**(8) | 29:14  31:14  46:1  84:8  92:23  93:12  181:2  181:17 |
| **working**(2) | 73:2  101:16 |
| **works**(6) | 25:10  31:16  34:1  46:11  103:5  125:11 |
| **world**(11) | 27:9  196:14  196:23  206:5  213:24  229:4  229:8  229:12  230:14  230:25  236:4 |
| **worth**(7) | 13:12  17:1  17:5  42:22  78:14  78:17  239:13 |
| **would**(273) | 13:18  13:20  13:24  14:15  15:12  16:2  16:19  18:13  20:3  20:8  20:15  21:9  22:4  24:6  27:24  28:9  28:17  28:19  32:2  34:12  34:13  34:16  34:20  37:10  40:1  40:2  41:18  41:23  41:24  42:3  42:22  45:7  45:21  45:22  45:25  46:5  46:8  46:12  46:14  46:19  47:5  47:9  48:24  48:25  49:5  49:9  49:16  49:18  50:4  50:8  50:20  50:22  50:24  51:24  53:2  54:14  56:12  56:19  58:18  59:4  61:11  62:23  63:17  66:3  66:7  66:24  69:20  69:20  71:10  72:25  73:9  77:1  80:1  83:10  85:4  87:16  89:10  97:10  97:16  99:11  99:11  102:1  102:12  102:14  106:25  109:2  109:2  110:10  110:15  113:9  119:9  121:5  127:10  127:12  127:20  128:4  128:25  129:1  130:18  132:23  133:14  134:4  136:3  136:12  136:17  140:1  140:8  143:1  143:13  146:14  147:17  148:1  148:10  148:13  148:22  149:15  149:25  150:1  150:18  151:13  152:18  152:25  154:1  154:1  155:7  156:19  156:20  157:1  157:9  158:14  160:8  160:25  161:25  163:11  163:13  163:13  164:4  164:16  164:16  167:9  168:12  174:9  175:15  181:9  182:4  182:18  183:4  183:21  184:23  187:4  189:3  189:8  189:17  189:18  189:24  190:2  190:3  190:4  190:24  191:3  191:5  191:11  191:25  192:8  192:9  192:9  192:15  192:18  192:24  193:9  193:18  194:17  194:19  194:19  195:2  195:12  195:13  195:14  195:20  196:1  196:3  196:12  197:4  197:17  200:22  201:1  202:13  202:24  203:1  203:3  203:12  203:14  203:20  203:25  204:14  205:11  205:13  205:21  206:9  206:15  206:16  207:12  208:4  208:14  209:9  210:6  210:10  210:23  210:25  211:1  211:3  211:4  211:14  211:17  211:18  211:19  212:19  216:5  216:12  219:11  220:8  221:7  224:1  225:4  225:4  225:8  225:9  225:10  226:4  226:7  226:12  227:22  227:23  227:24  228:2  228:3  228:3  228:6  228:8  228:12  228:14  228:15  228:16  229:5  229:12  229:23  230:5  230:7  230:12  231:15  231:16  232:11  232:13  232:16  232:23  234:21  235:11  235:21  235:25  236:2  236:2  236:18  236:20  236:22  237:8  237:11  237:13  239:10  239:11  242:20  244:9  245:6  245:18 |
| **wouldn't**(8) | 49:14  49:15  194:8  194:10  194:16  208:2  211:13  221:7 |
| **wouldn't**(2) | 193:4  194:9 |
| **would'd've**(1) | 89:9 |
| **write**(1) | 179:4 |
| **writes**(2) | 209:3  210:24 |
| **written**(4) | 144:2  179:6  179:9  183:16 |
| **wrong**(6) | 20:6  36:7  78:21  115:24  196:7  235:6 |
| **www.diazdata.com**(1) | 1:46 |
| **x's**(1) | 175:12 |
| **xochitl**(1) | 10:30 |
| **x's**(1) | 95:18 |
| **yale**(1) | 178:4 |
| **yeah**(33) | 30:2  38:18  42:16  51:10  74:6  74:22  82:9  83:18  90:18  95:1  95:7  102:9  110:22  111:19  115:14  117:20  120:1  120:11  121:18  125:8  127:23  131:14  136:8  152:22  159:6  186:8  190:9  193:22  201:4  206:4  215:9  218:6  246:11 |
| **years**(6) | 14:1  14:18  14:18  27:18  153:23  180:6 |

| Word | Page:Line |
|---|---|

**yes(300)** 13:16 15:5 16:5 16:24 18:18 20: 21:3 22:17 24:19 27:4 29:4 29:13 31:15 32:5 32:21 33:4 33:8 36:21 36:25 38:3 38:7 38:14 39:17 43:16 43:21 44:2 45:2 45:5 45:15 46:13 47:13 48:8 48:13 48:21 49:25 51:15 52:11 53:1 53:8 54:4 54:8 54:22 55:10 55:16 56:2 58:4 58:7 58:19 58:25 59:6 59:9 59:11 60:5 60:12 61:17 62:11 62:14 62:18 63:23 65:11 65:16 67:23 68:17 69:11 70:21 76:5 76:24 77:5 77:7 77:8 80:20 81:15 81:19 82:1 82:4 82:11 82:17 83:4 83:22 84:11 84:24 85:9 86:14 88:4 88:8 88:12 88:16 88:21 88:23 89:2 89:6 89:11 89:16 89:23 90:25 91:6 91:16 91:19 92:5 92:10 92:19 93:18 93:21 93:24 94:6 94:18 95:4 95:8 95:12 95:16 95:23 96:5 96:14 97:8 98:7 98:10 98:13 98:16 98:20 99:4 99:8 100:21 100:25 101:2 101:7 101:11 101:13 101:25 102:4 102:10 103:3 103:10 104:21 104:24 105:13 105:16 105:18 105:23 108:23 110:14 111:19 112:8 112:13 112:17 113:22 114:1 114:5 114:10 114:13 116:6 116:13 116:16 117:2 118:13 118:23 119:7 121:1 121:23 123:23 124:13 124:17 125:16 126:21 127:7 127:9 128:4 129:6 129:9 129:13 129:15 129:19 129:22 130:1 130:14 131:16 131:19 132:1 132:4 132:10 132:14 133:6 133:8 135:7 137:21 138:16 138:16 139:23 142:3 144:18 144:22 145:1 145:4 145:7 145:11 145:15 145:19 145:25 146:2 146:7 146:18 146:23 147:2 147:6 147:10 147:14 148:2 148:6 148:8 148:25 149:1 150:14 150:21 152:8 152:23 154:8 155:1 155:5 155:12 155:15 155:18 156:2 156:10 158:17 161:14 162:23 163: 165:10 165:13 166:2 166:20 166:24 170:11 170:14 170:15 170:18 171:23 172: 172:7 172:12 172:21 173:9 173:14 173:17 173:25 174:13 174:17 175:5 175:24 177:18 182:3 183:2 183:18 183:20 184:11 184:1 186:6 188:18 188:23 188:25 189:5 189:12 189:15 197:8 197:19 198:2 213:25 214:1 214:7 214:11 214:12 215:15 215:18 215:1 216:17 216:23 217:3 219:9 226:25 227:7 227:10 227:25 228:1 230:13 231:15 231:20 232:8 232:13 233:21 234:5 237:1 239:9 240:10 240:13 242:1 245:5 245:8

**yes-or-no(2)** 76:20 76:22

**yesterday(45)** 23:12 25:22 25:22 37:3 37:21 39:13 40:11 41:14 42:1 44:19 45:11 57:5 57:23 58:8 69:11 81:12 82:4 82:9 83:7 91:3 94:4 95:9 95:17 95:18 97:17 98:23 101:8 107:25 109:9 117:4 118:19 123:20 125:23 127:23 130:12 135:10 140:22 158:12 158:15 159:9 160:19 161:5 167:11 167:14 168:6

**yesterday's(2)** 44:23 166:23

**yet(8)** 13:21 35:23 41:4 106:9 111:3 177:15 222:11 235:7

**york(7)** 2:11 2:34 2:43 3:7 3:40 4:17

**you(301)** 12:8 12:10 12:10 12:12 14:3 14:3 14:17 15:3 15:8 15:24 16:1 16:21 17:1 17:2 17:3 17:6 17:10 17:11 17:12 17:20 18:16 19:1 19:7 19:9 19:25 20:4 21:1 21:15 21:19 21:21 21:22 21:24 22:1 22:12 22:16 22:18 23:5 23:6 23:9 24:14 25:7 26:7 26:7 27:5 27:7 28:7 29:25 30:18 31:21 31:22 31:24 32:2 32:5 32:11 32:13 32:14 32:15 32:20 32:21 32:24 33:11 33:12 33:14 34:10 34:18 35:1 35:9 36:16 36:19 36:22 37:15 37:16 38:2 38:4 38:9 38:16 39:13 39:14 39:14 39:21 43:2 43:3 43:5 43:11 43:14 43:14 43:18 44:25 45:1 45:3 45:6 45:11 45:12 45:12 46:23 47:5 47:6 47:9 47:10 47:21 47:25 48:1 48:2 48:4 48:9 48:10 48:11 48:14 48:19 48:22 48:24 49:5 49:13 49:18 50:16 51:24 51:25 52:6 52:7 52:9 52:23 52:24 53:2 53:4 53:7 53:9 53:11 53:14 54:3 54:5 54:9 54:12 54:13 54:16 54:19 55:5 55:13 55:15 56:12 56:13 56:19 56:19 59:12 59:18 59:19 60:2 60:7 60:9 60:9 61:11 62:15 62:23 63:12 63:17 63:19 63:19 64:24 65:16 67:12 67:14 67:16 67:19 67:21 67:22 67:25 68:15 68:20 68:22 68:25 69:2 69:7 70:14 71:3 71:4 71:19 71:21 72:8 72:20 73:9 73:14 73:16 73:20 73:25 74:5 74:8 74:12 74:18 74:19 74:19 74:20 75:1 75:5 75:20 75:24 76:20 76:25 77:1 77:6 77:13 77:17 78:13 78:14 78:21 78:22 78:24 79:5 79:9 79:9 80:5 80:13 80:17 80:17 80:21 81:9 81:16 81:17 81:18 81:19 81:19 81:25 82:2 82:5 82:10 82:20 82:23 82:23 83:7 83:10 83:12 83:15 83:19 83:23 84:10 84:12 84:23 85:15 85:22 85:24 86:11 86:15 86:19 86:19 87:25 88:6

**you(301)** 88:9 88:13 88:19 89:3 89:4 89:19 89:24 90:3 90:9 90:18 90:23 91:2 91:5 91:11 91:15 91:23 91:23 92:4 92:8 92:13 92:20 92:24 92:24 93:3 93:4 93:6 93:7 93:14 93:15 93:15 93:16 93:19 93:23 93:25 94:3 94:5 94:8 94:16 94:21 94:24 95:5 95:9 95:10 95:13 95:15 95:17 95:22 96:3 96:4 96:9 96:20 96:23 96:23 97:4 97:5 97:6 97:6 97:7 98:8 98:11 98:17 98:21 98:23 98:24 99:5 99:16 99:18 99:21 100:1 100:10 100:18 101:8 101:12 101:16 101:16 101:23 102:1 102:5 102:11 102:15 102:16 102:21 102:22 102:23 103:3 103:9 103:11 103:18 104:6 104:18 105:6 105:11 105:20 105:25 106:16 106:17 106:20 106:22 106:25 107:15 107:24 107:25 108:22 109:3 109:4 109:8 109:12 109:14 109:18 110:10 110:11 110:17 110:18 110:20 110:24 111:6 111:8 111:11 111:15 111:22 111:23 111:23 112:1 112:2 112:3 112:4 112:6 112:9 112:10 112:12 112:19 112:21 112:25 113:5 113:13 113:14 113:15 113:19 113:20 113:25 114:4 114:9 114:11 115:12 116:2 116:7 116:12 116:23 117:15 117:19 117:23 117:25 118:1 118:5 118:15 118:18 118:19 118:19 118:21 118:24 119:6 119:20 119:23 120:9 120:15 120:25 121:3 121:3 121:4 121:12 121:21 122:15 122:17 122:18 122:19 122:23 123:5 123:14 123:20 123:20 123:21 124:1 124:1 124:14 124:24 125:3 125:4 125:11 125:14 125:18 125:23 126:2 126:4 126:17 126:18 126:22 126:25 127:1 127:3 127:4 127:6 127:8 127:12 127:13 127:20 127:23 128:1 128:2 128:3 128:7 128:19 128:20 128:21 128:22 128:22 129:2 129:7 129:10 129:16 129:17 129:22 130:3 130:12 130:13 130:16 130:16 130:17 130:19 131:2 131:3 131:14 131:14 131:17 131:24 132:2 132:5 132:7 132:15 133:1 133:5 133:7 133:9 133:12 133:14 133:15 133:18 134:10 134:13 134:13 134:17 134:18 134:19 135:5 135:8 135:14 135:16 135:23 136:5 136:6 136:7 136:20 136:24 137:10 137:13 138:3 138:6 138:13 138:19 139:3 139:17 139:18 139:19 139:19 141:12 141:20 141:24 143:2 143:11

**you(301)** 143:17 143:22 143:22 143:23 143:23 143:24 143:24 144:5 144:8 144:8 144:16 144:24 144:25 145:2 145:5 145:6 145:8 145:16 146:2 146:8 146:9 147:18 147:21 148:3 148:22 149:2 149:2 149:8 149:14 149:14 149:16 149:25 150:10 150:11 150:12 150:17 150:22 151:11 151:13 151:17 151:24 151:25 152:5 152:5 152:25 153:17 154:11 154:12 154:22 154:22 155:11 155:13 155:14 155:19 156:20 156:23 157:9 158:1 158:11 158:11 158:13 158:15 158:18 158:18 158:25 159:3 159:9 159:9 159:10 159:12 159:15 159:19 159:23 159:25 159:25 160:3 160:4 160:6 160:19 160:24 160:24 160:25 161:25 162:2 162:6 162:7 162:10 162:12 162:18 162:19 163:13 163:21 163:23 163:25 164:2 164:13 164:14 164:24 165:4 165:6 165:22 166:16 166:21 166:23 166:9 167:12 168:4 168:8 169:17 170:1 170:8 170:10 170:12 170:13 170:15 170:17 170:19 170:22 171:5 171:17 171:17 171:18 171:21 172:4 172:9 172:10 172:18 172:20 172:22 173:3 173:5 173:10 173:11 173:16 173:23 174:1 174:7 174:11 174:14 174:14 175:2 175:3 175:6 175:7 175:8 175:9 175:21 175:24 176:4 176:8 176:8 176:16 176:17 176:22 176:25 177:9 177:12 177:18 177:19 178:2 178:10 178:12 178:14 178:19 179:6 179:12 179:19 180:2 180:8 180:8 180:12 181:23 181:23 182:10 182:12 182:14 182:15 182:25 183:7 183:16 183:16 184:8 184:12 185:11 186:3 186:4 186:7 186:17 187:4 188:3 188:3 188:20 188:20 188:20 189:3 189:10 189:13 190:6 190:8 190:11 191:7 191:12 192:12 192:22 193:15 193:21 195:15 196:14 196:22 197:10 197:10 197:17 197:24 199:3 200:8 200:8 200:9 200:10 201:2 201:4 201:20 203:7 203:10 204:15 204:21 205:25 206:3 206:23 207:18 208:8 209:11 211:5 212:11 212:15 213:6 213:11 213:12 213:18 214:5 214:7 214:23 215:5 217:2 217:13 218:9 218:17 218:19 218:21 219:1 219:1 219:4 219:8 219:10 219:11 219:14 219:19 219:20 219:20 220:2 220:5 220:15 221:2 221:7 221:7 221:16 222:5 222:23 223:3 223:19 224:3 224:3 224:4 224:9 224:11 224:11 224:13 224:24 225:4 225:18 226:8 226:9 226:11 226:19 226:21 227:2 227:3 227:13 227:16 229:4 229:15 230:5 231:14 231:15

**you(47)** 231:16 233:1 233:1 233:15 233:25 234:3 234:4 234:8 234:11 234:14 235:11 235:16 236:23 237:14 238:2 238:6 238:7 239:7 239:8 239:8 239:17 239:17 240:7 240:11 240:24 241:3 241:16 241:20 241:25 242:2 242:13 242:21 242:21 243:4 243:5 243:16 243:25 243:25 244:8 244:17 245:1 246:3 246:5 246:5 246:9 246:16 246:20

**you'd(3)** 25:11 56:20 68:1

**you'll(3)** 216:21 230:2 243:1

**you're(28)** 42:14 53:3 53:12 57:21 67:17 69:21 145:23 149:16 151:2 154:5 155:2 158:21 162:4 162:5 162:6 165:14 168:8 215:1 215:5 215:23 221:1 228:1 228:21 229:15 235:13 236:16 238:17 240:9

**you've(16)** 52:1 54:7 54:21 55:8 65:4 65:6 70:4 159:6 159:6 171:21 173:15 213:23 214:1 214:7 214:8 216:8

**you."(2)** 91:4 92:3

| Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|
| **your**(287) | 12:5 12:8 13:15 17:6 21:15 21:19 22:2 22:24 23:2 25:18 26:6 26:11 27:6 27:10 28:5 28:14 28:25 29:7 30:10 30:21 31:4 31:20 31:24 33:16 33:20 34:12 34:25 35:25 36:16 37:7 37:15 38:12 38:16 39:2 40:4 40:7 40:10 40:21 41:15 42:5 42:18 42:25 43:5 45:4 45:7 49:18 50:1 51:5 51:15 52:1 52:3 52:6 52:9 52:14 53:17 53:25 54:10 56:22 57:1 57:6 57:12 57:19 57:25 59:4 59:13 62:4 64:3 64:6 64:10 64:15 64:22 64:25 65:10 65:23 66:24 67:14 68:2 68:12 68:23 69:4 69:7 70:11 70:17 70:19 70:22 71:3 71:5 71:9 71:13 71:14 71:19 71:23 72:2 72:17 72:25 73:12 73:13 73:19 73:21 74:23 75:2 76:1 76:25 79:14 79:21 80:5 80:8 80:15 81:5 81:12 81:16 82:23 83:15 84:6 85:5 87:14 88:5 92:9 93:16 94:7 95:2 96:6 100:10 103:18 105:5 105:21 107:1 107:20 108:23 108:24 109:15 111:18 111:24 112:1 112:3 112:5 112:19 113:23 115:17 116:14 116:17 116:23 117:3 117:24 118:5 120:10 122:11 123:17 123:24 125:18 125:19 125:20 126:1 126:6 127:5 127:10 127:12 127:16 127:17 127:17 128:1 128:4 128:6 128:25 131:6 134:14 135:11 135:23 136:10 136:17 136:19 138:15 138:20 139:23 140:11 141:10 141:20 141:24 142:3 142:11 143:2 144:18 146:8 149:3 149:25 151:14 151:25 152:17 153:19 155:14 155:22 158:12 159:10 159:11 159:24 160:16 161:1 161:4 162:3 164:18 167:3 167:11 168:11 168:24 169:11 169:16 169:22 170:3 170:24 171:1 174:4 175:14 176:6 176:11 176:14 176:16 176:24 177:1 177:2 177:6 177:7 177:10 178:3 179:2 180:2 181:21 182:8 182:14 183:19 183:21 183:24 184:1 184:12 188:2 197:6 197:9 197:25 200:8 200:9 201:6 212:22 212:25 213:6 213:7 214:12 214:19 217:15 218:1 218:1 218:3 218:6 218:17 218:18 219:3 219:23 220:12 224:12 224:1 224:17 225:16 226:15 226:20 227:13 228:25 228:25 229:14 231:16 231:20 233:15 234:11 236:18 236:23 239:7 239:1 239:19 239:25 240:16 243:22 243:24 244:2 244:13 245:5 245:15 245:17 245:20 246:3 246:19 | **zensky**(160) | 2:40 12:8 12:13 12:14 12:16 21:21 21:24 22:2 22:12 22:18 22:23 23:1 23:3 23:10 24:21 24:23 25:1 25:6 25:9 27:8 27:9 29:11 29:13 30:18 31:4 31:14 33:19 34:3 34:6 34:12 35:7 35:25 36:18 36:22 37:1 37:16 37:19 38:1 39:2 39:7 39:8 39:13 39:18 40:4 40:16 41:5 41:10 42:5 42:16 42:25 51:5 52:6 53:17 53:21 53:25 57:1 58:22 59:1 61:25 64:3 64:15 64:24 65:23 66:24 68:2 68:25 70:22 71:23 72:2 72:24 73:4 73:12 75:6 79:14 81:21 82:15 86:3 86:6 86:8 103:15 104:13 105:3 106:3 106:6 106:7 107:1 107:15 107:21 107:25 108:22 108:23 109:6 109:9 109:13 109:15 110:1 110:9 111:24 117:3 120:21 120:25 124:1 124:4 125:23 126:5 126:25 127:1 127:14 128:2 128:20 136:4 136:5 136:10 137:22 138:15 139:22 139:23 141:12 142:2 142:3 142:10 143:25 144:4 144:6 144:11 144:14 144:22 152:17 152:23 160:9 160:1 160:20 161:4 167:3 168:11 168:20 169:4 169:22 170:1 170:3 170:6 170:24 171:13 171:14 175:11 175:14 175:19 175:20 176:11 176:21 176:23 244:1 244:2 244:9 245:3 245:5 245:8 245:11 245:15 245:17 246:3 |
| | | **zensky's**(1) | 57:20 |
| | | **zensky's**(1) | 137:19 |
| | | **zero**(1) | 222:9 |
| | | **zeros**(1) | 22:15 |
| | | **zloto**(3) | 7:22 23:19 45:18 |
| | | **zlotto**(3) | 125:4 125:11 126:19 |
| | | **zuckerman**(6) | 3:43 5:15 40:8 89:25 90:23 134:3 |
| | | **zuel**(2) | 45:16 45:20 |
| | | **"and**(2) | 84:2 84:3 |
| | | **"attached**(1) | 91:12 |
| | | **"aurelius**(5) | 96:25 113:16 119:9 119:14 120:24 |
| | | **"discussing**(1) | 114:6 |
| | | **"face-to**(1) | 108:1 |
| | | **"forced**(1) | 83:8 |
| | | **"found**(1) | 92:1 |
| | | **"graeme**(1) | 91:2 |
| | | **"here**(1) | 126:20 |
| | | **"i'm**(1) | 99:25 |
| | | **"mark"**(1) | 91:24 |
| | | **"previously**(1) | 120:1 |
| | | **"subsequen**(2) | 125:25 127:2 |
| | | **"that**(1) | 120:22 |
| | | **"zuell**(1) | 112:10 |
| **yourself**(3) | 53:15 69:2 99:22 | | |
| **you'd**(4) | 76:23 84:12 90:20 135:16 | | |
| **you'll**(4) | 81:4 90:5 94:8 111:14 | | |
| **you're**(26) | 77:6 81:21 85:5 85:10 90:15 90:20 97:13 98:5 102:14 102:20 104:13 112:6 115:6 115:20 115:21 116:24 120:8 124:24 129:23 130:12 130:15 131:12 131:15 133:25 134:12 135:5 | | |
| **you've**(9) | 78:8 79:17 88:5 97:5 104:7 129:23 130:2 131:14 137:11 | | |
| **zealous**(4) | 238:13 238:18 239:4 239:6 | | |
| **zealously**(3) | 238:8 238:12 238:21 | | |