# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Re: D.I. 8201 |

## STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE MOTION OF AURELIUS CAPITAL MANAGEMENT, LP, DEUTSCHE BANK TRUST COMPANY, AND LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR ENTRY OF AN ORDER (I) DETERMINING THAT CREDITORS HAVE RETAINED THEIR STATE LAW CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS TO RECOVER STOCK REDEMPTION PAYMENTS MADE TO STEP ONE SHAREHOLDERS AND STEP TWO SHAREHOLDERS PURSUANT TO 11 U.S.C. §546(A); (II) DETERMINING THAT AUTOMATIC STAY DOES NOT BAR COMMENCEMENT OF LITIGATION ON ACCOUNT OF SUCH CLAIMS AGAINST SUCH SHAREHOLDERS OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM AUTOMATIC STAY TO PERMIT COMMENCEMENT OF SUCH LITIGATION; AND (III) GRANTING LEAVE FROM MEDIATION ORDER TO PERMIT COMMENCEMENT OF SUCH LITIGATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this statement (the "Statement") in support of the motion of Aurelius Capital Management, LP, on behalf of its managed entities, Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee for certain series of Senior Notes, and Law Debenture Trust Company of New York, in its capacity as successor Indenture Trustee for certain series of Senior Notes (collectively, the "Movants") for an order (i) determining that creditors have retained their state law fraudulent transfer claims to recover stock redemption payments made to Step One Shareholders and Step Two Shareholders, (ii) determining that the automatic stay does not bar commencement of litigation by or on behalf of creditors with respect to such claims or, in the alternative, granting relief from the automatic stay to permit the commencement of such litigation, and (iii) granting leave from the Mediation Order (as defined below) to permit the commencement of such litigation (the "Motion").[2] The Committee respectfully represents as follows:

## BACKGROUND

1. On March 1, 2011, the Movants filed the Motion, together with a proposed form of order granting the motion (the "Proposed Order").[3] On March 2, 2011, Wilmington Trust Company filed a joinder to the Motion.

2. On March 15, 2011, objections were filed to the Motion by (i) Robert R. McCormick Tribune Foundation and Cantigny Foundation (together, the "Foundations"), (ii) EGI-TRB, LLC and Samuel Zell, (iii) certain current and former directors, officers and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[3] The response deadline with respect to the Motion was March 15, 2011. The Movants agreed to extend the time for the Committee to respond to the Motion.

employees of the Debtors, (iv) Merrill Lynch and Bank of America, and (v) Chandler Bigelow.[4] The main objection was filed by the Foundations, with the other parties generally joining that objection.

## THE COMMITTEE'S STATEMENT

I. The Ability to Pursue the SLCFC Claims Has Reverted to Creditors

3. As set forth in the Motion, the ability of the Debtors or a representative of the Debtors' estates to pursue state law constructive fraudulent transfer claims on behalf of creditors may have expired on December 8, 2010 pursuant to Bankruptcy Code section 546(a). Accordingly, state law constructive fraudulent transfer claims have reverted to individual creditors at this time. With respect to the state law constructive transfer claims against the Step One Shareholders, the statute of limitations for creditors to pursue such claims may expire as early as June 4, 2011. Therefore, creditors should consider taking appropriate actions to preserve those claims if they so desire. The Committee intends to provide prompt notice of the matters set forth in this paragraph to creditors.

II. The Motion Should be Granted at this Time

4. The principal relief sought by the Motion is very limited and hardly controversial -- the Motion principally seeks only a determination that the automatic stay and the Mediation Order do not preclude the assertion of Creditor SLCFC Claims. The Foundations' objection is not really addressed to the relief sought by the Motion at all, but is instead an attempt to pre-litigate the Foundations' favorite defenses to the underlying litigation itself, *i.e.* that (a) the Noteholders lack standing to bring the Creditor SLCFC Claims and (b) Bankruptcy

---

[4] In their objection, EGI-TRB, LLC and Samuel Zell state that they understand the Motion does not seek authority to pursue state law constructive fraudulent transfer claims against them. They are mistaken in that the relief would permit the pursuit of such claims against them to the extent they are Step Two Shareholders. Upon information and belief, EGI-TRB, LLC is a Step Two Shareholder.

Code section 546(e) preempts the Noteholders' attempts to assert the Creditor SLCFC Claims. Neither of these issues are ripe or properly before this Court. Those matters will be addressed in the proper forum if the Creditor SLCFC Claims are brought following the granting of the relief requested by the Motion. Based on the reversion of the Creditor SLCFC Claims to individual creditors and the possible expiration of the applicable statutes of limitations, the Committee believes that the Motion should be granted in time to ensure that creditors who wish to do so will have an adequate opportunity to exercise their rights to pursue the Creditor SLCFC Claims.

5. The Foundations rely heavily on the Committee's inclusion of intentional fraudulent conveyance claims in its complaint filed November 1, 2010 (the "Complaint"). The Committee files this Statement to address that argument and other statements made by the Foundations.

    A.    The Committee and the Debtors' Estates Have Determined Not to Retain the Ability to Pursue the Creditor SLCFC Claims Pursuant to the Committee's Complaint

6. The Complaint asserts intentional fraudulent transfer claims -- but *not* constructive fraudulent transfer claims -- against the Former Shareholders. The Committee deliberately did not initiate any Creditor SLCFC Claims against the Former Shareholders. Instead, as evidenced by the DCL Plan, it is the intent of the Committee and the other DCL Plan proponents that individual creditors have the ability to pursue the Creditor SLCFC Claims on their own behalf or to transfer the Creditor SLCFC Claims to a proposed creditors' trust to be pursued on a collective basis for and on behalf of participating creditors. Indeed, the creditors' trust mechanism was painstakingly drafted and negotiated in furtherance of the Committee's intent not to pursue the Creditor SLCRC Claims, but rather to enable individual creditors to pursue such claims for their own benefit or collectively through the creditors' trust.

7. Notwithstanding the Committee's deliberate decision to facilitate the reversion of the Creditor SLCFC Claims to creditors and the considered decision of the Committee not to include the Creditor SLCFC Claims in the Complaint, the Foundations assert that the Committee's Complaint in essence continues to give the Committee, or another estate representative, exclusive standing to pursue the Creditor SLCFC Claims. See ¶¶16, 30 of the Objection. This cannot be the case.

8. As noted above and in the Motion, section 546(a) establishes a two-year statute of limitations for the Debtors, or a representative of the estates, to pursue the Creditor SLCFC Claims. The Committee's Complaint only covers <u>intentional</u> fraudulent transfer claims against the Former Shareholders. Those claims clearly differ in many critical factual and legal respects from the Creditor SLCFC Claims. The respective claims are different: (a) the Committee has asserted claims under <u>federal law</u> on <u>actual</u> fraud theories, whereas (b) creditors would be asserting claims arising under <u>state law</u> on <u>constructive</u> fraud theories.

9. While the respective causes of action may implicate similar operative facts, it cannot be disputed that: (i) the prima facie elements of (and the required evidence to support) the different claims asserted by the Committee and to be asserted by individual creditors are demonstrably different; for example, the Committee will be required to demonstrate actual intent to hinder, delay or defraud creditors, whereas the individual creditors would be under no such obligation and would be required instead to establish that at the relevant times, Tribune Company was financially impaired within the alternative tests established by the UFTA or the UFCA, as applicable; (ii) the recovery under the Complaint is not constrained by the amount of the creditor's claims, whereas an individual creditor's recovery is limited to the amount of the creditor's claims; (iii) different burdens of proof will apply; (iv) the respective statutes of

limitations differ; and (v) the defenses potentially available to the defendants will be different. Thus, the Committee is pursuing causes of action that are separate and different from those to be pursued by individual creditors. See, e.g., Dixon v. Bennett, 531 A.2d 1318, 1325 (Md. Ct. App. 1987) (overruled on other grounds) ("Here, appellant is proceeding under an independent cause of action under state law.").

10. Glossing over these significant differences, the Foundations rely primarily on Ruppert Landscaping in support of their assertion that the intentional fraudulent transfer claims asserted in the Complaint are "so similar in object and purpose" to the Creditor SLCFC Claims that the Noteholders lack standing to assert the Creditor SLCFC Claims at this time. See ¶¶21-25 of the Objection (citing Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc., 187 F.3d 439 (4th Cir. 1999)); see also Poth v. Russey, 99 Fed. Appx 446, 457 (4th Cir. 2004) (quoting Ruppert Landscaping, 187 F.3d at 441); In re Tessmer, 329 B.R. 776 (Bankr. M.D. Ga. 2005). The Ruppert Landscaping court prohibited creditors from asserting successor liability, tortious interference with contract, and conspiracy claims which conflicted with fraudulent transfer claims the trustee still had (and wished to retain) the option to pursue for the benefit of the estate. See Ruppert Landscaping, 187 F.3d at 441. Unlike here, in Ruppert Landscaping, the two year statute of limitations had not expired -- it was still possible for the trustee to pursue the claims -- and the trustee sought to retain the exclusive right to pursue the claims.

11. The Ruppert Landscaping court was focused on the possible disruption to the estate if creditors were allowed to pursue their competing individual claims to the estate's detriment before the trustee had determined whether to pursue the estate's claims. See Baron Financial Corp. v. Natanzon, 509 F.Supp.2d 501, 521 (D. Md. 2007) ("As the Court understands it, the Fourth Circuit's foremost concern in Ruppert was "maintain[ing] the integrity of the

bankruptcy proceeding and ensur[ing] that individual creditors [do not] hijack the bankruptcy process." (quoting Ruppert Landscaping, 187 F.3d at 442); In re Derivium Capital, LLC, 380 B.R. 392, 403 (Bankr. D. S.C. 2007) ("The Ruppert decision addressed the competition between the estate and its creditors' assertion of common or similar claims and the timing thereof."). The kind of value-destructive competition that Ruppert Landscaping sought to prohibit is clearly different from the inevitable partial overlap between individual creditors pursuing state law constructive fraudulent transfer claims and the Committee pursuing intentional fraudulent transfer claims.

12. In Baron Financial Corp., a case more relevant to the matter before this Court, the defendants named in a complaint sought to dismiss certain of the claims on the basis that the plaintiffs lacked standing, arguing that those claims could only be pursued by the bankruptcy trustee of the debtor company involved in the transactions referenced in the complaint. The defendants cited to Ruppert Landscaping in support of their standing argument, but the Baron court found Ruppert Landscaping inapplicable. The Baron court noted that the creditor plaintiffs and the bankruptcy trustee had reached an agreement regarding the claims that would be asserted by the plaintiffs in their complaint. The trustee did not view the creditors' lawsuit as an impediment, but rather as a "positive benefit" to the bankruptcy estate. Baron Financial Corp., 509 F.Supp.2d at 521. Accordingly, the Baron court stated:

> It would be an affront to the Bankruptcy Court (as well as nonsensical) for this Court to ignore the carefully crafted and court-approved arrangement designed to protect the interests of the ERN bankruptcy estate and declare [plaintiff's] lack of standing in an effort to protect the interests of the bankruptcy estate. The Court disagrees with defendants that the Bankruptcy Code and Fourth Circuit [referring to Ruppert Landscaping] authority commands a finding of no standing under the circumstances of this case.

Id. at 522.[5] See also In re Derivium, 380 B.R. at 403 ("The [bankruptcy trustee and certain creditors] in this case avoided a Ruppert-like determination by entering into the November 9, 2006 Settlement Agreement, which set forth terms for proceeding on competing claims.").

13. The Committee deliberately determined not to pursue the Creditor SLCFC Claims. The DCL Plan, as amended, gives creditors the option to pursue the state law fraudulent transfer claims that have reverted to them on their own or to transfer the Creditor SLCFC Claims to the proposed creditors' trust to be pursued on a collective basis for participating creditors. The Noteholder Plan proposes a similar creditors' trust. Accordingly, Ruppert Landscaping's reasoning does not apply. Indeed, denying the Motion as requested by the Foundations would result in a nonsensical situation similar to the one avoided by the Baron court.

B. The Applicability of Bankruptcy Code Section 546(e) to the Prosecution of the Creditor SLCFC Claims Is Not Ripe

14. The Motion simply requests relief from the automatic stay and the Mediation Order to pursue the Creditor SLCFC Claims. No complaint asserting the Creditor SLCFC Claims has been filed. Whether the Creditor SLCFC Claims should be dismissed pursuant to Bankruptcy Code section 546(e) simply is not before the Court.[6] If the Foundations are ultimately sued by the Noteholders, other creditors, or one of the creditors' trusts proposed in the two plans currently on file, the Foundations can raise any defense they wish. The Court should decline the Foundations' attempt to pre-litigate their defenses at this time. Granting the Motion today does not waive the Foundations' ability to raise this argument later when it is ripe.

---

[5] Here, the Court entered an order granting the Committee standing to pursue the fraudulent conveyance claims at issue, which have now reverted to creditors. See Order Granting Unsecured Creditors' Committee's Standing Motions, In re Tribune Co., No. 08-13141-KJC (Bankr. D. Del. Oct. 27, 2010) [Docket No. 6150].

[6] Nevertheless, it should be noted that the Third Circuit has held that state law fraudulent transfer claims asserted by creditors, rather than a debtor's estate, are not subject to Bankruptcy Code section 546(e). See PHP Liquidating, LLC v. Robbins, 291 B.R. 603, 607 (D. Del. 2003), aff'd, 128 Fed.Appx 839 (3d Cir. 2005) ("in this case, PHP LLC has not asserted its claims against Movants in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession. Rather, PHP LLC is bringing the instant claims as a direct assignee of the unsecured creditors. As such, Section 546(e) is not a bar to PHP LLC's claims.").

Whether section 546(e) applies to the Creditor SLCFC Claims need only be decided if and when the claims are pursued, and it simply is not at issue here.

## CONCLUSION

15. Accordingly, the Committee supports the relief requested by the Motion and the entry of the Proposed Order, as revised to reflect certain non-controversial clarifying comments by the Committee (the "Revised Order"), a copy of which is attached hereto as Exhibit "A."[7]

16. The Committee reserves all rights to amend or supplement this Statement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

---

[7] The Committee has provided counsel for Aurelius its requested changes to the proposed order and the parties are engaging in constructive discussions regarding the form of the order. The Committee's changes are intended to clarify (1) that the relief granted should apply to all creditors, and not just the Movants, and (2) that the order is not authorizing the Movants to assert claims or causes of action on behalf of other creditors or parties in interest.

**WHEREFORE**, the Committee respectfully submits that it supports the Motion and entry of the Revised Order.

Dated: March 17, 2011
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Adam G. Landis

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David LeMay
N. Theodore Zink, Jr.
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

- and -

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
Thomas G. Macauley
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Counsel to the Official Committee of Unsecured Creditors*