IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TRIBUNE COMPANY, <u>et al.</u>, | ) | Case No. 08-13141 (KJC) |
|  | ) |  |
|  | ) | **Hearing Date: March 22, 2011 at 10:00 a.m.** |
| Debtors. | ) | **Related to ECF. Nos: 8201, 8203, 8361, 8371** |
|  | ) |  |

**REPLY OF AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, TO THE OBJECTION OF ROBERT R. MCCORMICK TRIBUNE FOUNDATION AND CANTIGNY FOUNDATION TO MOTION FOR ENTRY OF ORDER (I) DETERMINING THAT CREDITORS HAVE RETAINED THEIR STATE LAW CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS TO RECOVER STOCK REDEMPTION PAYMENTS MADE TO STEP ONE SHAREHOLDERS AND STEP TWO SHAREHOLDERS PURSUANT TO 11 U.S.C. § 546(A); (II) DETERMINING THAT AUTOMATIC STAY DOES NOT BAR COMMENCEMENT OF LITIGATION ON ACCOUNT OF SUCH CLAIMS AGAINST SUCH SHAREHOLDERS OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM AUTOMATIC STAY TO PERMIT COMMENCEMENT OF SUCH LITIGATION; AND (III) GRANTING LEAVE FROM <u>MEDIATION ORDER TO PERMIT COMMENCEMENT OF SUCH LITIGATION</u>**

Aurelius Capital Management, LP, on behalf of its managed entities ("<u>Aurelius</u>"),

Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee for

certain series of Senior Notes ("<u>Deutsche Bank</u>"), and Law Debenture Trust Company of New

York, in its capacity as successor Indenture Trustee for certain series of Senior Notes ("<u>Law

Debenture</u>" and, collectively with Aurelius and Deutsche Bank, the "<u>Movants</u>") hereby file this

reply (the "<u>Reply</u>") to the Objection [*ECF No.* 8361] (the "<u>Objection</u>") of Robert R. McCormick

Tribune Foundation and Cantigny Foundation (together, the "Foundations")[1] to the Movants'

motion for entry of an order (i) determining that creditors have retained their state law

constructive fraudulent conveyance claims to recover stock redemption payments made to Step

One Shareholders and Step Two Shareholders due to the expiration of the statute of limitations

under 11 U.S.C. § 546(a); (ii) determining that the automatic stay under 11 U.S.C. § 362 does not

bar the commencement of litigation by or on behalf of creditors with respect to such claims or, in

the alternative, granting relief from the automatic stay to permit the commencement of such

litigation; and (iii) granting leave from the Mediation Order to permit the commencement of such

litigation [ECF No. 8201] (the "Motion").[2]  In support of this Reply, the Movants respectfully

represent as follows:[3]

## PRELIMINARY STATEMENT

1.      The Foundations, who, upon information and belief, were paid approximately

$1 billion in their capacities as pre-LBO shareholders, oppose the relief requested in the Motion

on the grounds that (i) individual creditors lack standing to assert the Creditor SLCFC Claims

(the "Standing Objection") and (ii) Bankruptcy Code section 546(e) prohibits individual creditors

from asserting the Creditor SLCFC Claims (the "Section 546(e) Objection").  See Objection ¶¶

---

[1] The Foundations are affiliated entities.

[2] Unless otherwise defined herein, capitalized terms used in this Reply shall have the same meanings ascribed to such terms in the Motion.

[3] Certain of the Debtors' directors and officers [ECF Nos. 8363 and 8367], Crane Kenney [ECF No. 8370], Bank of America, Merrill Lynch Capital Corporation and Merrill Lynch, Pierce, Fenner & Smith, Incorporated [ECF No. 8379], and Chandler Bigelow [ECF No. 8380] filed joinders to the Objection (collectively, the "Joinders").  This Reply applies equally to the Joinders, which do not advance arguments different from those set forth in the Objection.  In addition, EGI-TRB, LLC ("EGI") and Samuel Zell ("Zell") filed a three-page, "limited objection" to the Motion [ECF No. 8371] (the "EGI/Zell Limited Objection").  The EGI/Zell Limited Objection joins in the Objection to the extent the Motion seeks authority to commence or pursue any state law constructive fraudulent conveyance claims against either EGI or Zell.  See EGI/Zell Limited Objection, p. 3.  Upon information and belief, EGI and/or Zell are Step Two Shareholders.  Accordingly, EGI and/or Zell may be a Shareholder Defendant (as such term is defined below).  The Movants, therefore, assume that EGI and Zell will join in the Objection.  If so, this Reply shall serve as a response to the EGI/Zell Limited Objection as well.

19-30, 31-45. Neither of these objections, however, is ripe for adjudication.[4] Indeed, the Objection is nothing more than a transparent attempt by significant pre-LBO shareholders to shield themselves from liability arising out of Tribune's ill-fated LBO through improper attempts to expand this Court's jurisdiction and the tenuous application of the legal precedent upon which their objections are allegedly based. Notably, the Creditors' Committee affirmatively supports the Motion and the Debtors have acknowledged that Creditor SLCFC Claims are not estate assets and that such claims may be pursued by individual creditors (or their assignees). For these reasons and those set forth in the Motion and below, the Objection should be overruled and the relief requested in the Motion should be granted.

**REPLY**

I.    **The Standing Objection Should Be Overruled**

2.        In support of the Standing Objection, the Foundations assert that individual creditors do not have the right to commence the Creditor SLCFC Claims. Specifically, the Foundations assert that "[b]ecause the [Creditors'] Committee Complaint already seeks to avoid the transfers to the Foundations, the [Creditors'] Committee (or some other representative of the Debtors' estates) has the exclusive standing to challenge those transfers based on <u>any</u> theory of law." Objection ¶ 16 (emphasis in original). The Standing Objection should be overruled for two primary reasons. First, the Standing Objection is not ripe for adjudication. Second, the cases cited by the Foundations in support of the Standing Objection are factually distinguishable from the instant case and rest on legal principles and policy concerns that are not present here.

---

[4] The Movants reserve all of their respective rights in connection with the prosecution of the Creditor SLCFC Claims including, without limitation, to challenge any alleged defenses asserted by shareholders to such claims.

In fact, the legal precedent upon which the Foundations rely actually supports the relief requested in the Motion.

A.      **The Standing Objection Is Not Ripe for Adjudication**

3.      As a threshold matter, the Movants have not requested standing to commence the Creditor SLCFC Claims.  As clearly set forth in Paragraph 21 of the Motion entitled "Relief Requested," the Motion seeks narrowly tailored relief on matters for which this Court has jurisdiction.  Specifically, the Movants have sought entry of an order "(a) determining that, as a result of the expiration of the section 546(a) statute of limitations, eligible creditors have regained the right to prosecute their Creditor SLCFC Claims; (b) determining that the automatic stay of the Bankruptcy Code does not bar the filing of the Complaint or, in the alternative, granting relief from the automatic stay solely to permit the immediate filing of the Complaint[;] and (c) granting leave from the Mediation Order to permit the immediate filing of the Complaint." Motion ¶ 21.  Accordingly, the issue of whether individual creditors have standing to assert the Creditor SLCFC Claims is not before this Court and is properly preserved for adjudication in the state court in which the Complaint is eventually filed.

4.      Importantly, none of the relief requested in the Motion deprives the Foundations or any other Step One Shareholder or Step Two Shareholder named as a defendant in any such lawsuit asserting the Creditor SLCFC Claims (collectively, the "Shareholder Defendants") from asserting in an applicable state court proceeding that any individual creditor (or its assignee), including in particular, the Original Plaintiff Group or a creditors' trust established under a confirmed plan of reorganization, lacks standing to assert the Creditor SLCFC Claims.  Indeed, any assertion that the Original Plaintiff Group, a creditors' trust or any individual creditor lacks standing to commence and prosecute the Creditor SLCFC Claims is a future controversy that

4

should be brought in, and decided by, the state court in which a complaint is filed.  *See, e.g., In re Rickel Home Centers, Inc.*, 209 F.3d 291, 307 (3d Cir. 2000) ("[A] ruling on [future jurisdiction] would constitute nothing more than an advisory opinion based on a hypothetical scenario.  The ripeness doctrine prevents the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.") (citations omitted); *In re Lake Ariel Assocs., Ltd.*, Nos. 00-11484F – 00-11491F, 2000 WL 33728177, at *2 (E.D. Pa., Apr. 26, 2000) ("[D]isputes that are not sufficiently 'ripe' cannot be determined.") (internal citations omitted); *In re G-1 Holdings, Inc.*, 318 B.R. 66, 77 (D.N.J. 2004) ("Because ripeness is an independent requirement for judicial review, and in view of this Court's ruling that this controversy is not ripe, . . . , this controversy would still not be justiciable.").

5.      Consistent with the foregoing, the Foundations will have the ability to raise the issue of standing in the state court in which the Complaint is filed.  This is exactly what occurred in the two cases upon which the Foundations primarily rely in support of the Standing Objection – *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999) and *Poth v. Russey*, No. 03-1308, 2004 WL 614623 (4th Cir. Mar. 30, 2004).  Objection ¶ 21.  In both of those cases, the standing issue was decided not by the bankruptcy court, but by the court in which the underlying substantive action was commenced.  *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d at 440; *Poth v. Russey*, 2004 WL 614623, at *8.

6.      Further, the law is well-settled that standing is a prerequisite to subject matter jurisdiction and determining whether subject matter jurisdiction is present lies within the exclusive province of the trial court.  *See, e.g., Jewell v. United States*, 548 F.3d 1168, 1172 (8th Cir. 2008) (holding that "[a] plaintiff must establish subject matter jurisdiction, for which standing is a prerequisite."); *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)

5

(holding that "[j]urisdictional challenges [such as a defendant's challenge to] subject matter jurisdiction . . . lie within the exclusive province of the trial court."). Accordingly, adjudication of whether the Original Plaintiff Group, a creditors' trust or any creditor has standing to pursue the Creditor SLCFC Claims falls within the exclusive jurisdiction of the state court in which the Creditor SLCFC Claims are commenced.

### B.    The Foundations' "Legal" Support for the Standing Objection Is Misplaced

7.    In the unlikely event that this Court determines to address the issue of standing at the hearing on the Motion, the Standing Objection should be overruled because the Foundations' central legal premise is fundamentally flawed – namely, that because the Creditors' Committee Complaint asserts claims for *intentional* fraudulent conveyance against the Shareholder Defendants, the Debtors' estates have exclusive standing to bring all claims associated with the LBO against the Shareholder Defendants.[5] *See* Objection ¶¶ 3-4, 16, 25-26, 30. Indeed, each

---

[5] The laws of constructive fraud and intentional (or actual) fraud are different. Although the requirements for establishing a constructive fraudulent conveyance may vary slightly from state to state, a plaintiff asserting such claim will generally need to show that (i) the debtor did not receive reasonably equivalent value in exchange for a transfer made to the defendant and (ii) either (a) the debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (b) the debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due. *See, e.g.*, 6 Del. C. § 1304; 740 ILCS 160/5. In contrast, intentional fraudulent conveyance claims require an entirely different showing – namely, that a party to the transaction had an actual intent to hinder, delay or defraud creditors. *See, e.g.*, 6 Del. C. § 1304; 740 ILCS 160/5. Whereas the law of intentional fraud is intended to prevent deception, misrepresentation and concealment and focuses on the subjective state of mind of the parties to the transaction at the time of the alleged fraudulent act, the law of constructive fraud is intended to promote fiduciary relationships and public policy and focuses on the economic effect of the alleged fraudulent act through an analysis of objective factors. *See, e.g., White v. National Steel Corp.*, 938 F.2d 474, 489 -490 (4th Cir. 1991) ("constructive fraud is generally reserved for those cases where a fiduciary relationship exists between the parties or the fraud violates an important public policy concern"); *In re Brown*, 2008 WL 2115200, *9 (Bankr. D.N.H. 2008) ("Unlike actual fraud, constructive fraud is essentially unconcerned with intent and instead focuses upon economic effect and involves an analysis of objective factors.") (citations omitted); *In re Crescent Communities, Inc.*, 298 B.R. 143, 149 (Bankr. S.D. Ohio 2003) ("Constructive fraud requires proof of non-receipt of reasonably equivalent value to the value of the asset transferred. Unlike actual fraud . . ., constructive fraud . . . focuses more on effect of the transaction rather than the intent with which they were undertaken. Constructive fraud may exist when the debtor has no actual intent to hinder, delay, or defraud an existing or future creditor.") (citations omitted); *In re Otis & Edwards, P.C.*, 115 B.R. 900, 913 (Bankr. E.D. Mich. 1990) ("Unlike the constructive fraud analysis, actual fraud focuses on the intent of the debtor-transferor, not the

case cited by the Foundations that purportedly supports this contention is factually

distinguishable and turns on legal principles and policy concerns that either have no application

to this case or, to the extent applicable, actually supports the relief requested in the Motion. *See*

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999); *Poth v. Russey*,

No. 03-1308, 2004 WL 614623, at *1 (4th Cir. Mar. 30, 2004); *In re Tessmer*, 329 B.R. 776 (Bankr.

M.D. Ga. 2005); *In re Stein*, 314 B.R. 306 (D.N.J. 2004).  Each of these cases is discussed briefly

below.

8.      In *Ruppert Landscaping*, two insurance companies of the debtor (the "Sureties")

filed suit in federal district court against a non-debtor challenging certain prepetition transfers

between the debtor and the non-debtor. *Ruppert Landscaping*, 187 F.3d at 441.  The Sureties

alleged a variety of claims, including successor liability, tortious interference with contract, and

statutory and common law conspiracy. *Id.*  The district court granted summary judgment for the

defendant on the grounds that, among other things, the Sureties lacked standing to bring the

subject causes of action.  On appeal, the Fourth Circuit affirmed.  The Fourth Circuit reasoned

that "the trustee has a potential fraudulent conveyance action to challenge the legality" of the

prepetition transfers between the debtor and the defendant and, therefore, the court agreed that

the Sureties lacked standing. *Id.* ("Although the Sureties' claims and the trustee's fraudulent

conveyance claim do not contain identical elements, they all share the same underlying focus.")

---

transferee."); *Navarro v. San Remo Mfg., Inc.*, 2006 WL 10093, 2 (Tex. App. 2006) ("Actual fraud arises from
deception through misrepresentation or concealment of a material fact; constructive fraud arises from a rule of
public policy or fiduciary duty."); *State v. Morgan Stanley & Co., Inc.*, 459 S.E.2d 906, 913 (W.Va. 1995)
("Constructive fraud is a breach of a legal or equitable duty, which, irrespective of any moral guilt on the part of the
defendant, the law declares fraudulent because of its tendency to deceive others, or violate public or private
confidence, or to injure public interests.  Neither actual dishonesty of purpose nor intent to deceive is an essential
element of constructive fraud.  Constructive fraud includes violations of public policy or public rights or transactions
affected by illegal conduct of any kind.").

9.    *Ruppert Landscaping* is distinguishable from this case. First, the section 546(a) statute of limitations had not passed and, therefore, the trustee still retained a "potential fraudulent conveyance action" that shared the same underlying focus as the Sureties' claims in the district court. Here, by contrast, the section 546(a) statute of limitations has passed and, therefore, none of the Debtors, the Creditors' Committee or any other estate representative has a "potential" Estate SLCFC Claim against the Shareholder Defendants.

10.    Second, the court's decision was based expressly on specific legal principles and policy concerns that are not present here. For example, the court did not want to deprive the trustee of having the "first crack" at challenging the subject prepetition transfers. *See id.* at 441. Here, it undisputed that the Debtors and the Creditors' Committee considered whether to pursue the Estate SLCFC Claims and affirmatively determined that the proper plaintiffs for such claims are individual creditors or their assignees. Indeed, the DCL Plan contemplates that, if it is confirmed, individual creditors and the creditors' trust established thereunder will pursue Creditor SLCFC Claims at the same time the litigation trust established under the DCL Plan is pursuing intentional fraudulent conveyance claims against the shareholders.

11.    Third, the court explained that "[r]eserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process." *Id.* at 442. Here, the filing of the Complaint will not undermine the integrity of the bankruptcy proceeding or hijack the bankruptcy process. To the contrary, the filing of the Complaint is entirely consistent with the tenor of these cases, as the Debtors' estates have affirmatively determined to forego the opportunity to commence the Estate SLCFC Claims in order to allow individual creditors (or their assignees) to pursue the Creditor SLCFC Claims.

100649361 v34

12.     For many of the same reasons, *Poth v. Russey*, No. 03-1308, 2004 WL 614623

(4th Cir. Mar. 30, 2004) does not support the Standing Objection.  In that case, after the petition

date, a creditor brought suit in federal district court against the debtor's officers and directors

alleging, among other things, that they had breached, through self-interested transactions, their

fiduciary duties to creditors.  *Id.* at *9.  The district court granted summary judgment in favor of

the defendants, holding, in relevant part, that the creditor lacked standing to bring its breach of

fiduciary duty claim because the action fell within the exclusive jurisdiction of the bankruptcy

court.  *Id.* at *4.  On appeal, the Fourth Circuit affirmed, finding that the creditor was challenging

a transaction that could be pursued by the bankruptcy trustee.  *Id.* at *9.  Relying on *Ruppert

Landscaping*, the court explained that the "breach of fiduciary duty claim is 'so similar in object

and purpose' to a potential fraudulent conveyance claim that [the] trustee in bankruptcy ***could***

bring that [the creditor] lacks standing to assert it."  *Id.* (quoting *Ruppert Landscaping*, 187 F.3d

at 441) (emphasis added).

13.     *Poth* is distinguishable from the present case because, as was true in *Ruppert

Landscaping*, (i) the section 546(a) statute of limitations had not passed and, therefore, the

trustee "could bring" a "potential fraudulent conveyance claim" and (ii) the trustee had not been

given the "first crack" at bringing the potential fraudulent conveyance claim.  In addition, in

*Poth*, the creditor was attempting to bring a claim that was general to all creditors and which

could be asserted by the trustee for benefit of all creditors.  Here, by contrast, the Creditor

SLCFC Claims, by definition, are not general claims that belong to all creditors but, rather, are

individual claims that only certain creditors may be eligible to pursue.

14.     *In re Tessmer*, 329 B.R. 776 (Bankr. M.D. Ga. 2005) is likewise distinguishable

from this case.  In *Tessmer*, prior to the petition date, the debtor was convicted of murdering her

9

husband. *Id.* at 778. Subsequent to the murder, the debtor transferred to her parents (the "Tessmers") an interest in real property that she had owned with her husband prior to his death. After the petition date, the debtor's mother-in-law ("Carringer") filed a fraudulent conveyance claim in state court against the Tessmers, seeking to avoid the subject transfer of real property. In response, the chapter 7 trustee filed a motion to enforce the automatic stay as to Carringer's state court fraudulent conveyance action. The parties consensually resolved the motion, and the bankruptcy court ultimately entered a consent order signed by counsel for the chapter 7 trustee and Carringer that permanently enjoined Carringer from pursuing her state court action. *Id.* Approximately six months later, the chapter 7 trustee filed a motion to settle the state law fraudulent conveyance claim against the Tessmers. Against Carringer's objection, the bankruptcy court approved the settlement. The chapter 7 trustee and the Tessmers subsequently filed a joint motion to enforce the bankruptcy court's prior injunction against Carringer's state court suit and to authorize the chapter 7 trustee to dismiss that suit. *Id.* Carringer objected, arguing that while she could not sue the debtor, the chapter 7 trustee's settlement of the fraudulent conveyance claim did not cut off her own rights to sue the Tessmers. *Id.* at 779. The bankruptcy court disagreed and overruled the objection. *Id.*

15.     *Tessmer* is distinguishable from this case in several respects. First, the trustee actively opposed Carringer's efforts to prosecute her fraudulent conveyance action in state court. Here, by contrast, the Debtors have not objected to the Motion and, indeed, the DCL Plan specifically contemplates prosecution of Creditor SLCFC Claims.

16.     Second, the debtor in *Tessmer* not only had a "potential" fraudulent conveyance claim (as was true in *Ruppert Landscaping*) that shared the same underlying focus as Carringer's state court action but, indeed, the debtor in *Tessmer* had already ***settled*** its fraudulent conveyance

10

claim.  Here, the Estate SLCFC Claims have not been settled.  To the contrary, they have been

relinquished by the estates to the Debtors' creditors by operation of Bankruptcy Code section

546(a).

17.    Third, the *Tessmer* court was concerned that, as a policy matter, if it allowed

Carringer to proceed with her state court action, then in future fraudulent conveyance cases,

defendants "would be unwilling to negotiate settlements," knowing that they would still be

exposed to creditor lawsuits.  *Id.* at 780.  Similarly, the court was concerned that Carringer's

action "would effectively disturb the terms of the settlement between the Trustee and [the

Tessmers]."  *Id.* (quoting *In re Stein*, 314 B.R. 306, 311 (D.N.J. 2004)).  Here, however, there is

of course no settlement of Estate SLCFC Claims that could be disturbed by the filing of the

Complaint.

18.    Fourth, the court was concerned that Carringer's "'action [was] an attempt to

circumvent bankruptcy proceedings, the results of which' were dissatisfactory to her."  *Id.*

(quoting *In re Stein*, 314 B.R. at 311).  In this case, the filing of the Complaint is not an attempt

to circumvent the Debtors' bankruptcy proceeding as a result of any dissatisfaction with the

results of these cases.  Rather, commencement of the Creditor SLCFC Claims is entirely

consistent with the Competing Plans, both of which provide for individual creditors (or a

creditors' trust) to commence and prosecute the Creditor SLCFC Claims.  Therefore, the pursuit

of such claims will in no way interfere with the Debtors' bankruptcy proceedings.

19.    *In re Stein*, 314 B.R. 306, 311 (D.N.J. 2004) also fails to provide support for the

Standing Objection.  In *Stein*, after the debtors' chapter 11 case was converted to chapter 7, a

chapter 7 trustee was appointed and conducted extensive discovery regarding the debtors' assets.

*Id.* at 308.  The trustee concluded that the debtors held an equitable interest in certain property

(the "Kinnelon Property") that was titled to a non-debtor ("Mrs. Stein"). *Id.* The trustee and

Mrs. Stein then entered into a settlement pursuant to which the property was to be sold to a third-

party, and the proceeds from that sale would be shared equally between the debtors' estate and

Mrs. Stein. *Id.* In exchange, the trustee agreed to release Mrs. Stein from any claims for

preferential or fraudulent transfers. The trustee subsequently sought the bankruptcy court's

approval of the settlement, and notice of the settlement was sent to all creditors. *Id.* Receiving

no objections, the bankruptcy court entered an order approving the settlement, which was not

appealed. *Id.* Notwithstanding the fact that a final, non-appealable order had been entered

approving the settlement and release of the foregoing chapter 5 causes of action, certain creditors

filed a complaint in state court (the "Roper Parties") alleging preferential and fraudulent transfers

which had the legal effect of stopping the sale of the Kinnelon Property. *Id.* In response, the

debtors filed a motion in the bankruptcy court seeking (i) to enforce the prior settlement between

the trustee and Mrs. Stein, (ii) a dismissal of the state court action, and (iii) a determination that

all fraudulent conveyance actions pending against Mrs. Stein be brought before the bankruptcy

court. The bankruptcy court granted the motion. *Id.* at 309. On appeal, the district court

affirmed the bankruptcy court's decision and held: "the identical issues of fraudulent conveyance

were raised and subsequently resolved in the Bankruptcy Court. The Trustee entered into [a]

settlement with regard to the Kinnelon property . . . . [T]he Bankruptcy Court approved the

Trustee's actions [,and] the Roper Parties did not object or appeal." *Id.*

20.     *Stein* is clearly distinguishable from these cases. First, the debtors opposed the

state court action commenced by the Roper Parties. As noted above, the Debtors do not oppose

the relief requested in the Motion and the DCL Plan specifically contemplates creditors pursuing

Creditor SLCFC Claims. Second, the trustee in *Stein* did not possess merely a "potential"

fraudulent conveyance claim that shared the same underlying focus as the Roper Parties' state court action; rather, that claim had already been settled by the trustee. Third, the court was expressly concerned that "[a] successful state court action would effectively disturb the terms of the settlement between the Trustee and Mrs. Stein." *Id.* at 311. Fourth, the *Stein* court was concerned with multiple federal bankruptcy policies, including the goal of preventing a "race to the courthouse." *Id.* ("As general creditors, the Roper parties may not metamorphose into personal creditors upon their dissatisfaction with an outcome of the bankruptcy proceedings; otherwise, any unhappy creditor may race to the courthouse, thus giving rise to the issue of who would be bound by inconsistent results.") (citations omitted). Here, there is no court-approved settlement regarding the subject matter of the Creditor SLCFC Claims and the filing of the Complaint clearly would not constitute a "race to the courthouse" by creditors dissatisfied with such a court-approved settlement. Accordingly, *Stein*, when applied to the facts of these cases, does not support the Standing Objection.

21.     Not only are the foregoing cases inapplicable, but in certain important respects, they support the relief requested in the Motion. In particular, the cases support the Movants' contention that, upon the expiration of the section 546(a) statute of limitations, creditors regained the right to commence and prosecute their Creditor SLCFC Claims. *See, e.g., In re Tessmer*, 329 B.R at 779 ("The creditors do not regain the right to sue unless the trustee abandons the claim *or he 'no longer has a viable cause of action' because, for example, the statute of limitations has run.*'") (citing *In re Integrated Agri. Inc.*, 313 B.R. 419, 427 (Bankr.C.D. Ill. 2004)) (emphasis added); *Poth*, 2004 WL 614623, at *9 ("*If a cause of action is part of the estate of the bankrupt*, then the trustee alone has standing to bring that claim.") (quoting *Ruppert Landscaping*, at 441) (emphasis added).

13

22.     While all of the cases cited by the Foundations are inapposite, the decision in

*Baron Financial Corp. v. Natanzon*, 509 F. Supp. 2d 501 (D. Md. 2007) – a case on point but

conspicuously omitted from the Objection – is particularly instructive.  In *Baron*, the debtor's

prepetition lender, Baron Financial Corporation ("Baron"), brought suit in federal district court

against the debtor's manager and certain of the manager's affiliates alleging various state law

claims, including breach of contract, intentional interference with contractual rights, and

fraudulent transfer of contractual rights.  In connection with bringing the suit, Baron and the

chapter 11 trustee entered into an agreement whereby the trustee consented to Baron's suit and

Baron agreed to not proceed on any claim belonging to the debtor's estate.  *See Baron*,509 F.

Supp. 2d at 521.

23.     Relying extensively upon *Ruppert Landscaping*, the defendants in the federal

court action filed a motion for summary judgment arguing that Baron lacked standing to

prosecute its claims because such claims could only be prosecuted by the chapter 11 trustee.  *See

id.* at 518.  The district court denied the motion for summary judgment, holding that Baron had

standing to prosecute the state law claims because such litigation did not implicate the

underlying rationale of *Ruppert Landscaping*.  In the district court's words:

> [D]espite defendants' characterization of *National American Insurance Co. v. Ruppert
> Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999), as a clear bar to plaintiff's standing, it is
> not.  As plaintiff suggests, the policy rationale underlying the holding in *Ruppert* is not
> compromised by affirming Baron's standing to pursue its breach of contract claims and
> tort claims.  As the Court understands it, the Fourth Circuit's foremost concern in *Ruppert*
> was "maintain[ing] the integrity of the bankruptcy proceeding and ensur[ing] that
> individual creditors [do not] hijack the bankruptcy process." *Ruppert*, 187 F.3d at 442.
>
> Orders issued by [the bankruptcy judges below] indicate that neither those judges nor the
> trustee are of the view that Baron has subverted the bankruptcy process to the detriment
> of [the debtor's] other creditors.  In [a prior bankruptcy court opinion, the judge] opined
> that, contrary to defendants' allegations, the filing of the Second Amended Complaint
> would not "undermine" the bankruptcy proceedings.  Indeed, Baron and [the trustee]

have entered into an agreement that insures that Plaintiff will not be proceeding on any claim belonging to the Estate." More recently, [the bankruptcy judge] also approved an agreement between Baron and [the trustee] that, in part, allows for a shared recovery arrangement, as in the best interest of the bankruptcy estate. This situation is vastly different than the factual scenario that the Fourth Circuit Court of Appeals faced in *Ruppert* . . . . Here, the Trustee does not view Baron's lawsuit as an assault on the creditors' interests or the integrity of the bankruptcy proceedings, but as a positive benefit to the bankruptcy estate. He does not seek a "first crack" at these various causes of actions. Rather, he is collaborating with Baron in an attempt to secure the best outcome for all of [the debtor's] creditors. [FN 36]

It would be an affront to the Bankruptcy Court (as well as nonsensical) for this Court to ignore the carefully crafted and court-approved arrangement designed to protect the interests of the [debtor] bankruptcy estate and declare Baron's lack of standing in an effort to protect the interests of the bankruptcy estate. The Court disagrees with defendants that the Bankruptcy Code and Fourth Circuit authority commands a finding of no standing under the circumstances of this case.

[FN 36] This Court rejects defendants' assertion that under *Ruppert*, the bankruptcy court must formally abandon Baron's contract and tort claims. The Court agrees with plaintiff that: "[i]t is axiomatic that a Trustee cannot abandon a cause of action he does not own." *Ruppert* does not stand for the proposition that it is the bankruptcy trustee that owns these other causes of action of individual creditors. Rather, the Court was protective of the bankruptcy trustee's priority in pursuing its claims for the good of all the creditors, before allowing individual creditor claims which might interfere with the bankruptcy proceedings. *See Ruppert*, 187 F.3d at 441-442 (citations omitted).

*Baron Financial Corp. v. Natanzon*, 509 F. Supp. 2d at 521-22.

24. Many of the facts that were expressly relied upon by the *Baron* court are present here:

- commencement of the Creditor SLCFC Claims is not an effort to "subvert[] the bankruptcy process to the detriment of [the Debtors'] other creditors" or to "undermine the bankruptcy proceedings," nor is there any allegation that the filing of the Complaint would constitute "an assault on the creditors' interests or the integrity of the bankruptcy proceedings" – indeed, the Movants understand that the Creditors' Committee supports the relief requested;

- the Debtors and the Creditors' Committee had a "first crack" at asserting the Creditor SLCFC Claims and affirmatively elected not to pursue such claims;

- the filing of the Complaint provides a "positive benefit" to creditors because the filing will ensure that the Creditor SLCFC Claims do not become time-barred;

15

- while the Debtors and Creditors' Committee are not "collaborating" with the Movants, neither have objected to the Motion; and

- while there is no formal "agreement that ensures that the [Original Plaintiff Group] will not be proceeding on any claim belonging to the Estate," an agreement is not necessary because (a) the Debtors, the Creditors Committee and indeed each of the proponents of the DCL Plan have conceded that the right to prosecute the state law constructive fraudulent conveyance claims against pre-LBO shareholders no longer belongs to the Debtors' estates (*see* Memorandum of Law in Support of Confirmation of DCL Plan [*ECF No.* 8173], § IV.A.1, p. 97 ("[T]he Noteholders' legal conclusion that the Estates no longer possess and therefore cannot release any constructive fraudulent transfer causes of action against the Step One Stockholders is accurate.")) and (b) both of the Competing Plans contemplate individual creditors (or their designees (i.e., a creditors' trust)) pursuing state law constructive fraudulent conveyance claims against the shareholders.

25.     For the foregoing reasons, the Standing Objection should be overruled.

## II.     The Section 546(e) Objection Should Be Denied

26.     In support of the Section 546(e) Objection, the Foundations assert that permitting the Creditor SLCFC Claims to be prosecuted in state court "would thwart congressional intent . . . to ensure settlement payment finality and the stability of the securities market." Objection ¶ 31. The Section 546(e) Objection should be overruled for at least two reasons. First, like the Standing Objection, the Section 546(e) Objection is not ripe for adjudication. Second, by its express terms, Bankruptcy Code section 546(e) only applies to constructive fraudulent conveyance actions commenced by estate representatives (i.e. a trustee, the debtor or an entity pursuing a claim on behalf of the estate) to avoid a settlement payment and does not provide a defense to constructive fraudulent conveyance claims brought by an individual creditor (or an assignee of such a creditor) under applicable state law.

### A.     The Section 546(e) Objection Is Not Ripe for Adjudication

27.     As noted above, the Movants merely seek a determination that individual creditors have retained the right to pursue the Creditor SLCFC Claims by virtue of the passing of the section 546(a) limitations period and, to the extent necessary, relief from the automatic stay

16

and the Mediation Order to file the Complaint in state court. The relief requested is not intended

to and does not deprive the Shareholder Defendants from asserting any defenses, whether under

Bankruptcy Code section 546(e) or otherwise, in the state court litigation. Accordingly, the

applicability of section 546(e) has no relevance to the issues raised by the Motion. Instead, the

question of whether section 546(e) bars the Creditor SLCFC Claims is properly preserved for the

Foundations (and any other Shareholder Defendants) to assert as a defense to the Creditor

SLCFC Claims in the state court where the Complaint is filed. *See supra* Reply, at ¶¶ 4-6.

> **B.     By Its Plain Meaning, Section 546(e) Is Not Available to the Shareholder Defendants**

28.     Even if the Section 546(e) Objection were ripe for adjudication and this Court

were to rule on its application to the Creditor SLCFC Claims, the Movants submit that

Bankruptcy Code section 546(e) is not a valid defense to such claims. Specifically, Bankruptcy

Code section 546(e), by its express terms, applies only to actions undertaken by the "trustee"

(i.e., an estate representative), not individual creditors or assignees thereof. *See* 11 U.S.C. §

546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the

*trustee* may not avoid . . . .") (emphasis added); *PHP Liquidating, LLC v. Charles H. Robbins, et

al.*, 291 B.R. 603, 607 (D. Del. 2003) (holding that Bankruptcy Code section 546(e) applies only

to causes of action that belong to a debtor's estate and does not apply to causes of action

belonging to individual creditors that are assigned to a creditors' trust).

29.     In *PHP Liquidating*, the United States District Court for the District of Delaware

held that Bankruptcy Code section 546(e) is inapplicable when the avoidance action is not

brought by an estate representative:

> The Court concludes that if the avoidance action were brought by a trustee or a debtor-in-possession (or the successor to a debtor-in-possession), the avoidance action would be barred by Section 546(e) of the Bankruptcy Code. However, in this case, PHP LLC has

17

not asserted its claims against Movants in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession.    Rather, PHP LLC is bringing the instant claims as a direct assignee of the unsecured creditors.    As such, Section 546(e) is not a bar to PHP LLC's claims.

*PHP Liquidating, LLC*, 291 B.R. at 607.

30.    While failing to cite *PHP Liquidating*, the Foundations base the Section 546(e) Objection on cases in which the debtor or an estate representative – and not an individual creditor or an assignee of claims held by an individual creditor – sought to avoid a settlement payment. *See, e.g.*, Objection ¶¶ 18, 32, 43.    As set forth above, this distinction is critical because Bankruptcy Code section 546(e) only applies where the trustee or an estate representative seeks to avoid a settlement payment as a constructive fraudulent conveyance and not, as is the situation here, where an individual creditor or an assignee of such creditor seeks to avoid such a payment.    Accordingly, the Section 546(e) Objection must fail.

### III.    Miscellaneous Responses

31.    In addition to their two primary objections to the Motion, the Foundations raise other issues with the propriety of the relief requested by interposing additional objections in footnotes or by making factually and legally incorrect statements.    These issues are addressed below.

- In footnote 3, the Foundations state that they further object to the Motion "to the extent the [Movants] seek relief from the automatic stay on behalf of unnamed and unidentified creditors.    The [Movants] lack standing to seek such relief on behalf of all eligible creditors, but they appear to seek just that in the proposed order attached to their Motion."    Objection, p. 10, n. 3.    This objection should be overruled because the Original Plaintiff Group may include the Indenture Trustees, who uncontrovertibly have authority to, among other things, seek stay relief and assert the Creditor SLCFC Claims on behalf of noteholders for whom they act as indenture trustee, even if such noteholders are unnamed and unidentified.    *See, e.g., In re American Business Fin. Servs., Inc.*, 362 B.R. 135, 143-44 (Bankr. D. Del. 2007) (citing In *re Worldwide Direct, Inc.*, 334 B.R. 112, 121 (Bankr. D. Del. 2005) (finding that an indenture trustee owes fiduciary duties to noteholders)); *In re Flight Transp. Corp. Sec. Litig.*, 874 F.2d 576, 581 (8th Cir.

1989) (same).[6]

- At paragraph 38 of the Objection, the Foundations assert that "[t]he Bankruptcy Code vests the power to avoid fraudulent transfers *exclusively* in the debtor in possession or trustee, who is authorized to pursue such actions on behalf of creditors and for the benefit of the estate." Objection ¶ 38 (emphasis added). As set forth in detail in the Motion (*see* Motion at ¶¶ 22-26), the law is well-settled that, once the two-year statute of limitations in section 546(a) expires, creditors regain the right to prosecute their individual state law fraudulent conveyance claims to the same extent as if the bankruptcy had never been commenced. *See, e.g., In re Integrated Agri, Inc.*, 313 B.R. 419, 427-28 (Bankr. C.D. Ill. 2004) ("A creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit, once the statute of limitations expires on the bankruptcy trustee's right to bring the claim."). Indeed, as noted above, *see supra*, at ¶ 21, the *Tessmer* case – which the Foundations cite in support of the Standing Objection – expressly relies upon *In re Integrated Agri, Inc.* and concurs with its holding that the trustee does not have exclusive standing in perpetuity to commence state law fraudulent conveyance claims.

- At paragraph 43 of the Objection, the Foundations aver that "[c]ourts have routinely rejected attempts by plaintiffs to circumvent section 546(e) by alleging state law claims not expressly prohibited by section 546(e)." Objection ¶ 43. This assertion, however, appears to be intentionally misleading and is just wrong. First, courts have not "routinely" addressed this issue and, indeed, the Objection itself cites only two cases. *See id.* In both of the cited cases, the plaintiff was the debtor or an estate representative, not a creditor seeking to assert its own state law fraudulent conveyance claims; thus, it should come as no surprise that the courts in those cases applied section 546(e).

- Finally, at paragraph 34 of the Objection, the Foundations incorrectly allege that "[t]he Noteholders even *admit* that any attempt by the Debtors, the Litigation Trust, or any other representative of the Debtors' estates to bring the Creditor

---

[6] *See also* Senior Notes Indenture dated as of January 30, 1995, New TMC Inc. to First Interstate Bank of California (the "1995 Indenture"), at § 505 ("All rights of action and claims under this Indenture or the Notes may be prosecuted and enforced by the Trustee without possession of any of the Notes . . . ."); Senior Notes Indenture dated as of March 19, 1996, The Times Mirror Company to Citibank, N.A., Trustee (the "1996 Indenture"), at § 505 (same); Senior Notes Indenture dated as of January 1, 1997, Tribune Company as Issuer and Bank of Montreal Trust Company as Trustee for Subordinated Debt Securities (the "1997 Indenture"), at § 5.05 ("All rights of action and claims under this Indenture or the Securities may be prosecuted and enforced by the Trustee without the possession of any of the Securities . . . . In any proceeding brought by the Trustee . . . , the Trustee shall be held to represent all the Holders of the Securities in respect to which action was taken, and it shall not be necessary to make Holders of such Securities parties to any such proceedings."); Senior Notes Indenture Dated as of March 1, 1992, Tribune Company as Issuer and Continental Bank, National Association as Trustee (the "1992 Indenture"), at § 5.05 (same); PHONES Notes Indenture dated as of April 1, 1999, Tribune Company as Issuer and Bank of Montreal Trust Company as Trustee for Subordinated Debt Securities (the "1999 Indenture"), at § 5.05 (same).

100649361 v34

SLCFC Claims would fail pursuant to section 546(e)." Objection ¶ 34 (citing Memorandum of Law of in Support of the Noteholder Plan, [*ECF No.* No. 8171], Ex. B, pp. 17, 29-30)) (emphasis added). That allegation is false. The Noteholder Plan proponents do not make any such admission.

## CONCLUSION

For the reasons set forth in the Motion and this Reply, the Movants respectfully request

that the Court (i) enter an order substantially in the form attached to the Motion as Exhibit A

overruling the Objection, the Joinders and the EGI/Zell Limited Objection and granting the relief

requested in the Motion and (ii) grant the Movants such other relief as the Court deems just,

proper and equitable.

Dated: March 17, 2011
Wilmington, Delaware

Respectfully submitted,

/s/  Leigh-Anne M. Raport
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
Leigh-Anne M. Raport (I.D. No. 5055)
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor; P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888

Daniel H. Golden
Philip C. Dublin
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Meredith S. Senter Jr.
LERMAN SENTER PLLC
2000 K Street NW Suite 600
Washington, D.C. 20006
Telephone:  (202) 429-8970

**COUNSEL FOR AURELIUS CAPITAL
MANAGEMENT, LP, ON BEHALF OF ITS
MANAGED ENTITIES**

100649361 v34

/s/  Katherine L. Mayer
Katharine L. Mayer (I.D. No. 3758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 984-6300

David J. Adler
MCCARTER & ENGLISH, LLP
245 Park Avenue
New York, New York 10167
Telephone: (212) 609-6800

**COUNSEL FOR DEUTSCHE BANK TRUST
COMPANY AMERICAS, SOLELY IN ITS
CAPACITY AS SUCCESSOR INDENTURE
TRUSTEE FOR CERTAIN SERIES OF
SENIOR NOTES**

/s/  Garvan F. McDaniel
Garvan F. McDaniel (I.D. No. 4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Telephone:  (302) 429-1900

David S. Rosner
Richard F. Casher
KASOWITZ, BENSON, TORRES & FRIEDMAN
LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700

**COUNSEL FOR LAW DEBENTURE TRUST
COMPANY OF NEW YORK, SOLELY IN ITS
CAPACITY AS SUCCESSOR INDENTURE
TRUSTEE FOR CERTAIN SERIES OF
SENIOR NOTES**