**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et</u> <u>al.</u>, | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 22, 2011 at 10:00 a.m.** |
| | **Related to Docket Nos. 8201, 8224 and 8361** |

**JOINDER OF TM RETIREES TO THE OBJECTION OF THE MCCORMICK TRIBUNE FOUNDATION AND CANTIGNY FOUNDATION TO THE MOTION OF AURELIUS CAPITAL MANAGEMENT, LLP, DEUTSCHE BANK TRUST COMPANY AMERICAS AND LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR ENTRY OF AN ORDER (I) DETERMINING THAT CREDITORS HAVE RETAINED THEIR STATE LAW CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS TO RECOVER STOCK REDEMPTION PAYMENTS MADE TO STEP ONE SHAREHOLDERS AND STEP TWO SHAREHOLDERS PURSUANT TO 11 U. S. C. §546(A); (II) DETERMINING THAT THE AUTOMATIC STAY DOES NOT BAR COMMENCEMENT OF LITIGATION ON ACCOUNT OF SUCH CLAIMS AGAINST SUCH SHAREHOLDERS OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY TO PERMIT COMMENCEMENT OF SUCH LITIGATION; AND (III) GRANTING LEAVE FROM THE MEDIATION ORDER TO PERMIT <u>COMMENCEMENT OF SUCH LITIGATION</u>**

Teitelbaum & Baskin, LLP and Pinckney, Harris & Weidinger, LLC, as attorneys for approximately 200 former employees (and beneficiaries of such former employees) (the "TM Retirees")[1] of The Times Mirror Company ("Times Mirror"), who were receiving or entitled to receive payments under certain qualified and non-qualified retirement plans of one or more of the Debtors, for their joinder to the objection (Docket No. 8361) (the "Objection") filed by the Robert R. McCormick Tribune Foundation and Cantigny Foundation to the Motion of Aurelius

---

[1] Among the TM Retirees supporting this joinder is William Niese, a member of the Official Committee of Unsecured Creditors (the "OCC"). Teitelbaum & Baskin also represents Mr. Niese in his role as a member of the OCC. This pleading is filed on behalf of the TM Retirees, including Mr. Niese, in their capacity as creditors and parties in interest and not in any manner as a representative of the OCC. The positions taken herein do not necessarily reflect the position of the OCC, and the OCC has not been consulted in connection with this pleading.

Capital Management, LLP, Deutsche Bank Trust Company Americas and Law Debenture Trust

Company of New York for entry of an order (i) determining that creditors have retained their

state law constructive fraudulent transfer claims to recover stock redemption payments made to

step one shareholders and step two shareholders pursuant to 11 U.S.C. § 546(a); (ii) determining

that the automatic stay does not bar commencement of litigation on account of such claims

against such shareholders or, in the alternative, granting relief from the automatic stay to permit

commencement of such litigation; and (iii) granting leave from the mediation order to permit

commencement of such litigation (the "Motion"), respectfully state:

1.      The TM Retirees join in and support the Objection and adopt the well

pleaded legal and factual arguments made in the Objection.

2.      The TM Retirees are individuals whose lives were first turned upside

down when retirement benefits, which for many accounted for a significant portion of their

monthly income used for necessities such as food, mortgage payments, medical expenses and

school tuitions, were terminated upon the commencement of these Bankruptcy Cases. These

same TM Retirees, virtually all of whom had long since left the employment of the Debtors prior

to the planning and implementation of the LBO transactions at issue in these cases, were then

forced to face the harsh reality that at least 65% of their anticipated retirement fund had vanished

as a result of the ill founded decisions and actions of persons identified by the Examiner.

3.      The TM Retirees represent approximately 200 of the approximately 450

retirees, former employees and current employees of Tribune Company who are entitled to non –

qualified benefits. Many of these people had given a lifetime of service to the Debtors and Times

Mirror.  The TM Retirees represent approximately $112 million of the estimated $125 million

total retiree claims which arise from benefits claimed under four non-qualified plans assumed or

provided by one or more of the Debtors, referred to as the Deferred Compensation Plan, the

Excess Pension Plan, the Supplemental Executive Retirement Plan and the Supplemental 401(k)

Plan (collectively, the "Plans"), as well as various individualized retirement agreements ("Supplemental Agreements").

4.     For years prior to the ill conceived and failed transactions leading to bankruptcy, these retirees relied upon distributions from the Plans and Supplemental Agreements as a significant part of their retirement income. Following the commencement of these cases, the retirees were provided with less than one month's notice that the distributions from the Plans and Supplemental Agreements would be discontinued and that they would be treated as general unsecured creditors in these cases. Many retirees in their so-called "golden years" have been forced to try to obtain jobs in this extremely harsh economic environment just to pay basic expenses. For others it represents a significant percentage of their retirement nest egg and net worth. For all creditors, the decision to burden this icon of the publishing business with $13 billion of debt has been material and devastating.

7.     The DCL Plan as proposed by the Debtors and Senior Credit Lenders, and as supported by the TM Retirees, attempted to strike a reasonable balance between the costs, risks and benefits of litigation. That plan preserved and continues to preserve substantial claims against parties who may have caused, implemented and benefited from actual and constructive fraudulent transactions and proposes to release certain claims against creditors such as the TM Retirees, who are not only innocent bystanders to this train wreck, but who stand to realize approximately 35% of the retirement funds they had been counting on for most of their lives.

8.     In addition to the legal arguments asserted in the Objection including that the so called state law constructive fraud claims are purely derivative of claims which are within the sole purview of the Debtors (and now the OCC) to assert; and that the Objection is a blatant end run around the absolute defense available to parties under Bankruptcy Code §546(e), the well funded Objectors are using the Objection, and indeed the process of this Court, to bludgeon innocent victims into submission for their own economic benefit.

9.      Putting aside the ultimate merit or lack thereof of any such alleged state law claims, the mere fact that such claims will be held as a Sword of Domocles over individuals who can ill afford the cost of litigation, let alone any further disgorgement, is abhorrent to basic elements of equity and fairness and the equitable balance which the proponents of the DCL Plan clearly sought to achieve.

WHEREFORE, the TM Retirees respectfully request that, as a matter of law and in the interests of justice, the Motion be denied and that the Court grant such other and further relief as may be just and proper.

Dated:  March 17, 2011
        Wilmington, Delaware

Respectfully submitted,

PINCKNEY, HARRIS & WEIDINGER, LLC


 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
Donna Harris (DE No. 3740)
1220 North Market Street, Suite 950
Wilmington, Delaware 19801
(302) 504-1497 telephone
(302) 442-7046 facsimile

and

**TEITELBAUM & BASKIN, LLP**
Jay Teitelbaum, Esq. (JT-4619)
3 Barker Avenue
Third Floor
White Plains, New York 10601
(914) 437-7670
jteitelbaum@tblawl1p.com

*Attorneys for the TM Retirees*