UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| **TRIBUNE COMPANY, et al.,** ) | |
| ) | Case No. 08-13141(KJC) |
| ) | |
| **Debtors.** ) | Jointly Administered |
| ) | Related to Docket Nos.: 3281, 5668, 5698, 6150, 6658, 8208, 8333 |

### REQUEST FOR ADJOURNMENT AND OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF THE DEBTOR TRIBUNE COMPANY FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW PAYMENT AND ADVANCEMENT OF DEFENSE COSTS, FEES, AND EXPENSES UNDER DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICIES

The Official Committee of Unsecured Creditors (the "Committee") of Tribune Company ("Tribune") and its various debtor-subsidiaries (collectively, the "Debtors"), requests an adjournment of, and objects to, the Motion of the Debtor Tribune Company for an Order Modifying the Automatic Stay to Allow Payment and Advancement of Defense Costs, Fees, and Expenses under Directors and Officers Liability Insurance Policy [D.I. 8208] (the "Motion") and respectfully represents as follows:

### PRELIMINARY STATEMENT

Pursuant to the Motion, the Debtors request that the Court authorize the Debtors' primary and excess directors and officers liability insurance providers (the "Insurance Providers") to pay all claims for past and future defense costs, fees, and expenses incurred by the individual insured persons relating to lawsuits commenced by the Committee. The Debtors request is open-ended, with no monetary limit or cap on the amounts that might be paid. The relief sought is surprising given that those lawsuits have been stayed by agreement of the Committee and order of the

Court. The lawsuits at issue are: (1) the adversary proceeding filed in this case captioned <u>The Official Committee of Unsecured Creditors of Tribune Company, on behalf of Tribune Company, et al.</u> v. <u>FitzSimons, et al.</u>, Adv. Proc. No. 10-54010 (KJC) (the "<u>FitzSimons Lawsuit</u>"), and (2) lawsuits commenced by the Committee against certain current and former officers and directors of the Debtors to avoid certain preferential transfers (collectively, the "<u>Preference Lawsuits</u>").

For two reasons, the Motion should be adjourned and heard at a later date. First, because of the failure of the Debtors' carrier, Federal Insurance Company (Chubb) ("<u>Chubb</u>"), to respond to the Committee's discovery requests, the Committee has not yet received information concerning the Debtors' third party primary and excess liability insurance policies (the "<u>D&O Insurance Policies</u>") and other facts that bear on the relief sought in the Motion. Consideration of the Motion by the Court should be postponed until this discovery has been completed. Second, given the stay of the FitzSimons Lawsuit and the Preference Lawsuits (collectively, the "<u>Stayed Litigation</u>"), it is unclear what defense costs, fees and expenses the named D&O Defendants reasonably could have incurred to date or will incur in the future. Accordingly, there is no corresponding reason for the Debtors to seek the relief sought in their Motion at this time.

The D&O Insurance Policies are of particular interest to the Committee and to creditors generally. As has been adduced by testimony given before this Court during the ongoing confirmation hearing, proceeds of these policies may provide for meaningful recoveries to creditors through the prosecution of claims that may be pursued by post-confirmation litigation trusts. This potentially valuable source of recoveries creditors needs to be carefully monitored and preserved. Once discovery is complete from Chubb, and the Committee is fully conversant

with the status and scope of the D&O Insurance Policies, the Committee would be prepared to discuss with the Debtors appropriate procedures and a protocol to balance the competing interests of the creditors and the Insured Persons to the proceeds of the D&O Insurance Policies.

## BACKGROUND

### A. Filing of Tribune Bankruptcy Case

1. On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On December 18, 2008, the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in the Debtors' cases.

### B. Tribune's D&O Insurance Policies

3. Prior to filing for bankruptcy, the Debtors purchased the D&O Insurance Policies. The Debtors' primary directors and officers liability insurance policies are provided by Chubb. The Debtors purchased one of the Primary policies from Chubb with an original Policy Period[1] of August 31, 2007 to August 31, 2008 (the "2007 Primary Policy"). Upon the closing of the Debtors' leveraged buyout transactions (the "LBO") in 2007, the 2007 Primary Policy was

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the respective Policy.

converted to a run-off policy which extended the Policy Period through December 20, 2013 to cover any Loss from Claims made with respect to Wrongful Acts occurring or allegedly occurring before December 20, 2007. The Debtors purchased a second primary policy with a Policy Period of December 20, 2007 to December 20, 2008, which was subsequently extended to December 20, 2011 (the "2008 Primary Policy," together with the 2007 Primary Policy, the "Primary Policies"). The Primary Policies provide insurance coverage of the "Insureds," which includes Tribune, its Subsidiaries, and all respective past, present, and future directors, officers, Managers, and in-house general counsel (collectively, the "Insured Persons"). The Primary Policies have a $15,000,000 limit of liability for the Policy Period, but the coverage for Insured Persons is "defense within limits," such that legal fees and other litigation costs are deducted from the coverage.

4. The Debtors also purchased 16 layers of excess directors and officers liability insurance (the "Excess Policies") with a limit of liability of $185,000,000 in total. The Excess Policies cover Claims in amount that exceeds the coverage by the Primary Policies, for total coverage of $200 million.

C.  **The FitzSimons Lawsuit against Tribune Directors and Officers**

5. On February 1, 2010, the Committee filed its Motion for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates [D.I. 3281] (the "First Standing Motion"). The Committee subsequently filed the Supplement to the First Standing Motion [D.I. 5698] and the Motion for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims of the Debtors' Estates [D.I. 5668] (the "Second Standing Motion," together with the First Standing Motion, the "Standing Motions") seeking entry of orders granting the Committee

standing to prosecute certain causes of action in connection with, and arising out of, the LBO transaction. On October 27, 2010, the Court entered an order approving the First Standing Motion [D.I. 6150] (the "First Standing Order"). The First Standing Order granted the Committee leave, standing and authority to commence and prosecute the claims of the Debtors' estates, but provided that upon filing, the action would be immediately stayed. See First Standing Order at p. 4 (providing that once the Committee commenced any LBO related action, such action would be deemed stayed automatically, subject to certain limitations). On November 1, 2010, the Committee commenced the FitzSimons Lawsuit against, among others, certain current and former directors and officers of the Debtors (the "D&O Defendants"). Pursuant to the First Standing Order, the FitzSimons Lawsuit is stayed. Once the stay is lifted, the D&O Defendants will have 30 days to file an answer. See Bankr. R. 7012.

### D.   Preference Lawsuits

6.   On November 29, 2010, the Court entered the Order Granting Amended Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute, Settle and Recover Certain Causes of Action on Behalf of the Debtors' Estates Arising Under and Pursuant to 11 U.S.C §§ 547 and 550 [D.I. 6658] (the "Second Standing Order"). The Second Standing Order granted the Committee authority to commence and prosecute causes of action under sections 547 and 550 of the Bankruptcy Code against certain D&O Defendants and certain business entities for amounts received in the year prior to the Petition Date. With such authority, the Committee filed the Preference Lawsuits between December 3 and December 7, 2010. The Preference Lawsuits are also stayed. See Second Standing Order at p. 3. Once the stay is lifted, the D&O Defendants will have 30 days to file an answer. See Bankr. R. 7012.

### E.      Requests for Reimbursement from D&O Insurance Policies

7.  Over the last two months, the Committee has, as a result of the monitoring of notices of appearances and requests for access to the document depository, become increasingly aware that a number of law firms for individual D&O Defendants have become active in these bankruptcy proceedings. Accordingly, the Committee requested that the Debtors seek an insurance erosion report, which would disclose any payments made by Chubb under the D&O Insurance Policies, as well as certain additional materials relating to the policies. Although some limited materials ultimately were provided by Chubb to the Debtors (and, in turn, to the Committee), by and large, the information that the Committee sought was not provided. Thereafter, on February 15, 2011, the Committee sent to Chubb its Request for Production of Documents in Connection with Bankruptcy Cases (the "Rule 2004 Document Request") pursuant to the Local Rules for the United States Bankruptcy Court District of Delaware. A copy of the Rule 2004 Document Request is annexed as Exhibit A.

8.  While the Committee's Rule 2004 Document Request was pending, and after the Committee and Chubb had preliminary discussions regarding the Rule 2004 Document Request, the Debtors filed the instant Motion. Soon after, and given the modified procedural posture the parties now faced, the Committee served a subpoena on Chubb (the "Subpoena") pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the documents that were previously requested in the Rule 2004 Document Request. A copy of the Subpoena is annexed as Exhibit B. As of the date of the filing of this Objection, none of the materials requested pursuant to Bankruptcy Rule 2004 or Bankruptcy Rule 9014 have been produced to the Committee.

## OBJECTION

### I. The Motion Should Not be Considered by the Court Until Discovery is Complete

9. For almost two months, the Committee has been seeking (both informally and formally) information with respect to the D&O Insurance Policies and the related D&O Defendants' requests to draw on those D&O Insurance Policies. Despite the Committee's efforts both before and after the filing of this Motion, Chubb has not produced any documents requested by the Committee. Until that information is produced and the Committee has a reasonable opportunity to analyze it, the Committee believes that the Motion should be deferred. Accordingly, the Committee requests that the Court adjourn the Motion until after the Committee's document requests sought pursuant to the Subpoena have been satisfied and its analysis is completed.

10. One of the preliminary issues which would have to be considered is whether the claims sought to be paid are actually covered by the D&O Insurance Policies. In particular, careful examination of the policies would have to be undertaken to determine whether preference claims brought under the Preference Lawsuits are covered. Similar determinations as to coverage would have to be made for claims relating to the FitzSimons Lawsuit, particularly as to actual fraud claims.

### II. Payment of the Insurance Proceeds is Premature

11. While it may be well established that a D&O policy itself is considered property of a debtor's estate under section 541, the case law is not uniform on the question of whether the actual proceeds of a D&O policy are property of the estate under section 541. See In re Downey Fin. Corp., 428 B.R. 595, 603 (Bankr. D. Del. 2010) ("However, the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the

7

estate.") (quoting In re Allied Digital Techs. Corp., 306 B.R. 505, 509 (Bankr. D. Del. 2004)); see also In re CyberMedica, Inc., 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (same). However, this issue need not be addressed by the Court at this time today for an obvious and simple reason: the FitzSimons Lawsuit and the Preference Lawsuits currently are stayed.

12. The Court in its First Standing Order stayed the FitzSimons Lawsuit. The stay will continue until the earliest to occur of the following: (i) the Committee and/or the Debtors withdraw its support for the Debtor/Committee/Lender Plan; (ii) the Court declines to confirm the Debtor/Committee/Lender Plan, or (iii) April 1, 2011 (each a "Termination Event"). To date, no Termination Event has occurred in connection with the FitzSimons Lawsuit and, as a result, the FitzSimons Lawsuit remains stayed. The Committee is currently working on extending the April 1, 2011 deadline and fully expects that deadline to be extended. Accordingly, none of these Termination Events would appear to be imminent.

13. Similar to the First Standing Order, the Court in its Second Standing Order stayed the Preference Lawsuits. The stay will continue until the earliest to occur of the following: (i) the Committee and/or the Debtors withdraw its support for the Debtor/Committee/Lender Plan; (ii) the Court declines to confirm the Debtor/Committee/Lender Plan, or (iii) April 1, 2011. To date, no Termination Event has occurred in connection with the Preference Lawsuits and, as a result, the Preference Lawsuits remain stayed. Again, the Committee is currently working on extending the April 1, 2011 deadline and fully expects that deadline to be extended. Accordingly, is the case with the First Standing Order, none of these Termination Events would appear to be imminent.

14. Both Standing Orders explicitly order that during the pendency of the stay, all motion practice (subject to certain limited exceptions) and contested hearings or trials are

prohibited and the D&O Defendants are prohibited from answering the complaint or otherwise responding. The stay clearly serves a number purposes including, most prominently, the goal of not dissipating estate resources to reimburse legal fees for actions that may never be pursued.[2]

15. There is no reason for the D&O Defendants to incur substantial expenses for legal defense costs with regard to litigation which is stayed. Moreover, nowhere in their Motion do the Debtors suggest a basis for having legal fees incurred at this time for litigation that is stayed.

16. It is also difficult to assess the merits of the Motion as no information is provided as to any amounts paid by Chubb or as to any pending claims for reimbursements of legal fees. Such information is critical to be able to intelligently respond to the Motion or for this Court to address the merits of the Motion.

---

[2] The Stayed Litigation could be mooted by case events. For example, Professor Bernard Black testified to the following with respect to director and officer liability and the insurances responses to such claims:

> Tribune has a $200 million D & O policy, and the litigation trustee at some point is going to go to the insurers and say, I will settle for the policy limits of 200 million.
>
> And the insurer then faces the following quandary. If they refuse a reasonable settlement offer, they are liable for the full amount. They are liable for $4 billion. And they have got the examiner report out there publicly saying they are more likely than not to lose. They can't take that chance. They are going to have to settle.
>
> That is my opinion, my professional judgment. Knowing about corporate law and knowing about insurance and duty to settle, which I happened to have studied separately in a separate part of my research that I didn't describe earlier, it is my judgment that the insurers are going to end up agreeing to pay maybe not 100 percent of the limits, and some of it they will all spend on defense costs anyway, but most of it.

Transcript of Confirmation Hearing, Volume III, at 673-74 (Dated March 9, 2011).

17. Most of the cases the Debtors cite to support their argument for the advancement of the D&O Insurance Policies' proceeds involved directors and officers who faced undue hardship if they were denied coverage by the respective directors' and officers' liability insurance policies. See, e.g., Miller v. McDonald (In re World Health Alternatives, Inc.), 369 B.R. 805, 807 (Bankr. D. Del. 2007) (defendant directors and officers in year long litigation required $1.7 million to consummate settlement); In re Allied Digital Techs. Corp., 306 B.R. 505, 514 (Bankr. D. Del. 2004) (court found defendant directors and officers in ongoing months long litigation had already incurred $200,000 in defense costs and required further funding to conduct a meaningful defense); Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.), 832 F.2d 1391, 1394 (5th Cir. 1987) (defendant directors and officers in ongoing year long litigation already billed $500,000 in defense costs); Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 14 n.9 (Bankr. E.D.N.Y. 1999) (court found that defendant directors and officers in ongoing year long litigation had already exhausted the deductible and there would be an "imminent draw down of defense costs "); In re CyberMedica, Inc., 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (court found that defendant directors and officers in ongoing year long litigation were "in need now of their contractual right to payment of defense costs") (emphasis in original); In re Arter & Hadden, L.L.P., 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (court found that defendant executive and committee members in ongoing litigation "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments").

18. Consideration of the undue hardship faced by directors and officers has likewise been a critical factor in other cases. See, e.g., In re Downey Fin. Corp., 428 B.R. 595, 609 (Bankr. D. Del. 2010) (court found that defendant directors and officers were in

danger of paying $800,000 in defense costs and "would suffer a very real -- and easily identifiable -- hardship if the stay was not lifted"); Executive Risk Indemnity, Inc. v. Boston Regional Med. Ctr., Inc. (In re Boston Regional Med. Ctr., Inc.), 285 B.R. 87, 96 (Bankr. D. Mass. 2002) (court found that defendant directors and officers in ongoing litigation "needed the insurance proceeds to retain experts and that they would be irreparably harmed if they are not distributed in time to conduct their defense").

19.     In contrast, the D&O Defendants here do not face such imminent and actual threats of undue hardship because there is no litigation actively being pursued against them. Moreover, there has been no showing of the amount of legal fees that have been incurred, or might be legitimately incurred, by the Insured Persons. There has been no showing that the D&O Defendants have incurred and will continue to incur significant legal fees in connection with the Stayed Litigation. Given these facts, a denial of access to the D&O Insurance Policies' proceeds at this time should not impose any hardship on the D&O Defendants.

### III.    Proposed Committee Approach to D&O Payment Request

20.     There is no dispute that, in certain instances, the Insurance Providers should be permitted to reimburse and/or advance funds to the D&O Defendants for claims covered by the D&O Insurance Policies. What the Committee proposes is that the hearing on the Motion be adjourned until the Committee receives, and has the opportunity to analyze, the data and other information requested from Chubb. The Committee must also have the opportunity to discuss the received data and its analysis of that data with the Debtors and/or the law firms representing the individual D&O Defendants to determine an appropriate approach to ensure that the competing interests in the proceeds of the D&O Policies are addressed. Although the

Debtors previously refused to adjourn the hearing, the Committee believes that under the circumstances that is an appropriate and fair way to proceed.

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Motion, (ii) deny consideration of the Motion until the Committee's discovery and analysis is complete; or (iii) grant such other and further relief as may be just and proper.

Dated: March 17, 2011
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ A. Landis/*

Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*

- and -

Graeme W. Bush
James Sottile
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Special Counsel to the Official Committee of Unsecured Creditors*