# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 7892** |

## DEBTORS' OBJECTION TO THE MOTION OF JEWEL FOOD STORES, INC., ALBERTSON'S, LLC, NEW ALBERTSON'S, INC. AND SUPERVALU, INC. FOR RELIEF FROM THE AUTOMATIC STAY

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to the Motion of Jewel Food Stores, Inc., Albertson's, LLC, New Albertson's, Inc., and Supervalu, Inc. (collectively, the "Movants") for Relief from the Automatic Stay filed on February 10, 2011 [Docket No. 7892] (the "Motion"), which Motion seeks to permit the Movants to proceed with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-7457195v1

the filing of a third-party complaint (the "Complaint") against Tribune Company ("Tribune") in the Circuit Court of Cook County, Illinois and to recover damages from Tribune to the extent of available insurance proceeds. In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Motion should be denied for three reasons. First, the Movants have not filed a proof of claim on account of their purported claim despite receiving actual notice of the bar date, and accordingly have no allowable claim to pursue as to which the stay can be lifted. Second, the Movants' request to lift the stay solely to pursue applicable insurance proceeds cannot be granted as easily as the Movants assume given that there is a $1 million deductible applicable to any claim of the Movants (assuming it was timely filed), and Tribune would accordingly need to incur significant costs before any insurance proceeds were reached, if they ever were – a very significant prejudice. Third, the Movants have demonstrated no "cause" to lift the stay, nor have they made any showing that the Rexene factors applicable to motions to lift the stay favor the Movants. Indeed, application of the Rexene factors in this instance demonstrates that the balance of those factors favors the Debtors and not the Movants. For all of these reasons, the Motion must be denied.

## ARGUMENT

### A. Movants Did Not Timely File a Proof of Claim and are Now Barred from Asserting a Claim Against Tribune

2. The Motion first fails because the Movants have not filed a proof of claim on account of the alleged causes of action against Tribune at issue in the proposed Complaint. The Movants have failed to file a proof of claim against Tribune despite the Debtors' provision to the Movants of actual notice of the bar date established by this Court.

2

3.     On March 25, 2009, the Court entered the Order Pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 813] (the "Bar Date Order"). The Bar Date Order established June 12, 2009 as the bar date (the "Bar Date") for filing proofs of claim in the Debtors' cases. The Bar Date Order is clear regarding the consequences of failing to timely file a proof of claim. (See Bar Date Order at 6-7) ("any person or entity that is required to file a timely Proof of Claim in the form and manner specified by this Order and who fails to do so on or before the date associated with such claim shall not be treated as a creditor in these chapter 11 proceedings and therefore, shall not be permitted to (i) vote on any plan of reorganization or plan of liquidation or (ii) receive any distribution under any confirmed plan.").

4.     The Movants are bound to the terms of the Bar Date Order because they had actual notice of the Bar Date. As evidenced in the Affidavit of Mailing [Docket No. 1073] filed on April 22, 2009, notice of the Bar Date and a proof of claim form were sent to Jewel-Osco's corporate headquarters in Itasca, Illinois and also to numerous individual Jewel stores. (See Docket No. 1073, Exhibit E p. 1408.) Additionally, the same materials were sent to Jewel's ultimate parent corporation, Supervalu, Inc., at its headquarters, in the name of both Supervalu and Albertson's (See id. at p. 2739.) The previously cited pages of the Affidavit of Mailing are attached hereto as Exhibit A. The causes of action in the Complaint that Movants seek to file occurred months before the Debtors commenced these chapter 11 cases, therefore, the claims sought to be asserted by the Movants are prepetition claims and should have been asserted against Tribune by a proof of claim filed on or before the Bar Date. None of the Movants filed such a proof of claim. Accordingly, pursuant to the Bar Date Order, the Movants are

affirmatively barred from obtaining any recovery from the Debtors on account of any claims they intend to raise in the proposed Complaint.

5. The Motion offers no basis for the Movants' non-compliance with the Court's Bar Date Order. Instead, the Motion ignores the issue and requests relief from the automatic stay to liquidate a claim and recover from the Debtors with disregard for the Bar Date Order and the Debtors' claims process.[2] Notwithstanding the Movants' omission of the issue from the Motion, however, the fact remains that the Movants have no allowed claim against any of the Debtors and any efforts by the Movants to assert any claim are barred by the automatic stay. Accordingly, relief from the stay to file the Complaint should be denied.[3]

### B. Recovery from Insurance Proceeds Would Cause Tribune Significant Economic Harm

6. The relief sought by the Movants would also impose substantial costs against the Debtors. Although the Movants state they seek relief from the automatic stay only to pursue applicable insurance, the Debtors' insurance policies applicable to any claim that would be asserted by the Movants have a $1 million per occurrence deductible obligation.[4]

---

[2] The Movants have already demanded that the Debtors appear and provide insurance information to them in the Illinois state court where the litigation against the Movants is pending, although the Movants have obtained no relief from the stay to pursue their proposed Complaint in any fashion. In the interest of avoiding expensive, confused proceedings before multiple courts, Tribune has provided such information and has appeared; however, this does not change the fact that any actions taken by the Movants in the Illinois state court to pursue their claims are void because they violate the automatic stay. See, e.g., 11 U.S.C. § 362(a)(3), (a)(6); In re Myers, 491 F.3d 120, 127 (3d Cir. 2007); In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994); Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1131 (3d Cir. 1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991).

[3] As this Court is well aware, a proof of claim may be filed untimely only upon a showing of "excusable neglect" by the party seeking to effect the untimely filing. See Fed. R. Bankr. P. 9006(b) (setting the "excusable neglect" standard); Pioneer Inv. Servs. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993) (holding that determination of "excusable neglect" is, at bottom, an equitable one, taking account of all relevant circumstances surrounding the party's omission, including the danger of prejudice to the debtor, the reason for the delay, and whether the party acted in good faith). Here, the Movants have made no showing of any kind as to why they failed to comply with the Bar Date Order.

[4] The Debtors have explained the $1 million per occurrence deductible in numerous other pleadings before the Court relating to efforts to lift the automatic stay. See, e.g., Debtors' Objection to the Motion of Allen Francisco for Relief From Stay Under Section 362 of the Bankruptcy Code [Docket No. 465]; Debtors' Objection to the Motion for Relief from Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A., and

4

46429/0001-7457195v1

Accordingly, the Debtors' insurer is not required to provide any coverage until the Debtors have incurred $1 million in loss, which deductible amount does not include the Debtors' defense costs. In short, the Movants cannot access any of the Debtors' insurance proceeds without causing significant defense and other costs to be borne by the Debtors' estates.[5] Therefore, the thesis of the Motion—that the balance of the equities favors lifting the automatic stay to permit Movants to file the Complaint against Tribune and collect to the extent of insurance—is simply not supported by the facts.

7.     Rather, if the Court were to permit the filing of the Complaint, the Debtors would be required to expend substantial estate resources in the near term to mount their defense. If the Debtors failed to do so, the insurers would likely claim a breach of the Debtors' obligations under the insurance policy, thus leaving no insurance coverage against which the Movants could claim.[6] Alternatively, if the relevant insurer(s) stepped in to defend the action, it would result in a contribution claim against the Debtors for the costs of defense, in addition to any loss incurred up to the $1 million deductible. It is impossible to permit the Movants to file the Complaint without either jeopardizing the insurance coverage or requiring the Debtors to directly or indirectly pay the defense costs. Each of these alternatives would result in substantial costs and claims against Tribune's estate. Therefore, filing the Complaint and seeking insurance proceeds would cause substantial economic harm to the Debtors.

---

Gutman Pain/Accident Center, Inc. [Docket No. 1079]; Debtors' Objection to the Motion of Schur Packaging Systems, Inc. for Relief from the Automatic Stay [Docket No. 1220]; Debtors' Objection to the Motion of Jayne Clement for Relief from the Automatic Stay [Docket No. 1586]; and Debtors' Objection to the Motion of Ivan J. Bates for Relief from the Automatic Stay [Docket No. 4951].

[5] The Debtors' defense costs are not insured by the Debtors general liability insurance policy unless and until the Debtors incur $1 million in "loss" under the policy (i.e., in judgment or settlement).

[6] No statements contained in this Objection should be construed as an admission by the Debtors' with respect to any insurers' rights and obligations under applicable insurance policies, or as a waiver of the Debtors' rights and defenses with respect to such policies.

5

### C. No "Cause" Exists to Lift the Stay

8. Because the Movants have neither filed a timely proof of claim in these cases nor offered any justification as to why their failure to comply with the Bar Date Order should be excused, no "cause" exists to lift the stay and the Motion should accordingly be denied. Even if the Court were to look beyond these dispositive flaws in the Motion, however, the prejudice to the Debtors from allowing a lawsuit on account of which no proof of claim has been filed to proceed outweighs the prejudice to Movants from denying the Motion.

9. Section 362(d) of the Bankruptcy Code requires a party seeking relief from the automatic stay to demonstrate "cause."[7] The party seeking relief from the automatic stay has the initial burden to establish its *prima facie* case in support of relief, which can then be rebutted by the party opposing such relief. See, e.g., In re RNI Wind Down Corp., 348 B.R. 286, 299 (Bankr. D. Del. 2006); Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 577 (Bankr. D. Del. 1992). In determining whether a litigation claimant has demonstrated sufficient cause to lift the automatic stay, courts routinely consider (i) whether allowing the litigation to continue in another forum will result in any great prejudice to a debtor or its estate; (ii) whether maintaining the stay will cause any hardship to the claimant and whether this hardship is greater than the resulting hardship to a debtor; and (iii) the probability of the claimant prevailing on the merits of the lawsuit. See, e.g., Rexene, 141 B.R. at 576; In re The SCO

---

[7] Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> 1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

46429/0001-7457195v1

Group, Inc., 395 B.R. 852, 857 (Bankr. D. Del. 2007). None of the considerations weighing in favor of stay relief in Rexene or SCO Group is present here.

10.  Despite the abundance of case law regarding the requirements for lifting the automatic stay, the Motion does not discuss the balancing of the hardships or the likelihood of success on the merits. While the Motion does mention that courts will conduct a balancing test, the Movants make only the conclusory statement that the balance of the equities weighs in favor of the Movants if they can collect from the Debtors to the extent of applicable insurance proceeds (See Motion ¶¶ 5, 8.) This is not a *prima facie* case in support of the requested relief, and provides no basis for the relief requested at all. Notwithstanding the lack of any support for the relief requested in the Motion, the Debtors address the issue of cause below.

### (i) Significant Prejudice to the Debtors, their Estates, and Creditors Will Result if the Stay is Lifted

11.  The prejudice to the Debtors from the Motion being granted outweighs that to the Movants if the Motion is denied. As discussed above, the Debtors will pay any judgment or settlement out of pocket up to $1 million, in addition to defense costs. This cost alone, combined with the fact that the Movants have no timely-filed proof of claim against Tribune, presents a harm to the Debtors that justifies denying the Motion.

12.  Further, the Debtors are currently engaged in their confirmation hearings[8] and approaching emergence from chapter 11, after which distributions on account of allowed claims is planned to occur promptly. Accurately distributing on allowed claims under a confirmed plan will be difficult, if not impossible, to do if creditors who have not complied with

---

[8] The latest proposed version of the Debtors' proposed plan of reorganization, the Proposed Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (As Modified) (the "D/C/L Plan"), was filed on March 3, 2011 at docket number 8259, and can be found at Exhibit A thereto.

the applicable Bar Date are nonetheless permitted to assert claims without basis nearly two years after its deadline. It also raises difficulties in the Debtors' plan process. The chapter 11 plan proposed by the Debtors and certain co-proponents provides, in general terms, that general unsecured claims and similar claims against Tribune must be determined by the non-Debtor co-proponents not to exceed $400 million. See D/C/L Plan at § 10.1.1(n). In addition, general unsecured claims against the Debtors other than Tribune will be satisfied in full, subject to a condition precedent to the effective date of such plan that the co-proponents are reasonably satisfied that the aggregate amount of such claims will not exceed $150 million. See id. at § 10.1.1(p). If potentially significant claims can be asserted against any of the Debtors nearly two years after the Bar Date with no showing of excusable neglect, it will be extremely difficult at best for the Debtors to size their claims population accurately and ensure a timely emergence from their chapter 11 cases.

13. Such outcomes are particularly prejudicial to the Debtors and to their other creditors in these circumstances, where the Debtors have given the Movants actual notice of the automatic stay and claims Bar Date, providing them with a full and fair opportunity to participate as creditors in these chapter 11 cases. At this late stage of the Debtors' chapter 11 cases, allowing the Movants to proceed with a Complaint against Tribune, notwithstanding that any claim is facially time-barred, would significantly prejudice the confirmation and claims processes and the legitimate expectations of the Debtors' other general unsecured creditors.

**(ii)  The Balance of Hardship Favors the Debtors and Maintaining the Automatic Stay**

14. In making a showing of "cause," the Movants must demonstrate "that the balance of hardships from not obtaining relief tips *significantly* in [their] favor." In re RNI Wind Down Corp., 348 B.R. at 299 (quoting Atl. Marine, Inc. v. Am. Classic Voyages Co. (In re Am.

ClassicVoyages Co.), 298 B.R. 222, 225 (D. Del. 2003)) (emphasis added, internal quotation marks omitted). The Movants have failed to meet this standard. The only hardship alleged by the Movants is that "their claim and ultimate recovery against not only Debtors, but all parties, will be unnecessarily delayed." (Motion ¶ 8.)

15.    The Movants' contention that the automatic stay is somehow causing them to be unable to recover against other parties is simply false. The automatic stay, amplified by the Movants' failure to file a timely proof of claim, bars the Movants' assertion of claims against the Debtors, but there is no apparent basis to conclude that the stay presents a bar to Movants' assertion of claims against any other parties. While the scope of the automatic stay is broad, its "clear language ... stays actions only against a debtor.... As a consequence, '[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors and or others with a similar legal or factual nexus to the ... debtor.'" McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509-10 (3d Cir. 1997) (quoting Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir. 1991) (citing Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196 (6th Cir. 1983)). Thus, the general rule is that a lawsuit brought initially against multiple defendants, including the debtor, may still proceed against the non-debtor co-defendants after the debtor files bankruptcy. This is true of counterclaims and third party claims, as noted by the Third Circuit in Maritime Electric:

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

9

Maritime Elec. Co., 959 F.2d at 1204-05. Although the automatic stay may be extended to third parties in certain circumstances, none of those circumstances appears present in the instant matter, nor do the Movants contend otherwise.

16. As to the Complaint as it relates to Tribune, the Movants claim that the delay is unnecessary but fail to provide any argument as to why that is so. Moreover, delay is not even a relevant issue because filing the Complaint should not be delayed, it should be barred entirely, because the Movants have not filed a proof of claim and have not even attempted to show why they should now be allowed to do so. In light of these facts, there is no harm to Movants in denying the Motion and if there is harm, it is severely outweighed by the prejudice to the Debtors.

### (iii) Movants Have Failed to Demonstrate a Likelihood of Success on the Merits of the Proposed Complaint

17. Finally, the Movants have failed to argue, much less establish, that there is any likelihood of success on the merits of their proposed action.[9] Even absent all of the other shortcomings of the Motion, the Debtors believe based on the information available to them that they have strong defenses to any cause of action raised in the Complaint. Despite this belief, because the Movants have not made their *prima facie* case regarding success on the merits, the Debtors refrain from a lengthy discussion of that point herein.

---

[9] The Debtors hereby reserve the right to argue in rebuttal any assertion by Movants that they are likely to prevail on the merits of their action. However, since the Movants have not attempted to carry, much less meet, their *prima facie* burden with respect to this prong of Rexene, the burden has not shifted to the Debtors.

46429/0001-7457195v1

WHEREFORE, the Debtors respectfully request that this Court (i) deny the Motion in its entirety, and (ii) grant such other and further relief as is just and proper.

Dated: Wilmington, Delaware
March 18, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Matthew G. Martinez
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-7457195v1