## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>       Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

## REQUEST FOR PAYMENT OF
## ADMINISTRATIVE EXPENSE CLAIM OF TV GUIDE ONLINE, INC.

TV Guide Online, Inc. ("TV Guide Online"), by and through its undersigned counsel,

hereby submits its administrative expense claim (the "Administrative Expense Claim") against

debtor TMS Entertainment Guides, Inc. pursuant to Section 503(b) of chapter 5 of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). As of the filing date of

this Administrative Expense Claim, the amounts incurred, post petition, include:

(1) unliquidated damages; (2) prejudgment interest; (3) treble damages; (4) attorneys' fees;

(5) costs; and (6) expenses. All proofs of claim filed by TV Guide Online are hereby

incorporated as if set forth in full herein.[1]

TV Guide Online seeks damages sufficient to compensate TV Guide Online for debtor

Tribune Media Services's ("TMS") ongoing infringement of U.S. Patent No. 5,988,078 (the

---

[1] TV Guide Online, Inc. and TV Guide Online, LLC (the "Claimants") asserted claims against TMS, Tribune Company, and TMS Entertainment Guides, Inc. amounting to no less than $5,699,364 for damages incurred by the Debtor through December 15, 2006. Damages incurred by the Debtor from and after December 15, 2006 are unliquidated. The Claimants also asserted unliquidated claims for prejudgment interest and attorneys' fees, costs and expenses. To the extent the Debtor's infringement of the '078 Patent is adjudged to be willful, the Claimants also may be entitled to treble damages.

"'078 Patent"),[2] in no event less than a reasonable royalty, and which should be trebled for

TMS's willful infringement pursuant to 35 U.S.C. § 284. TMS's infringement of the '078 Patent

is ongoing and damages accrue daily. Additionally, TV Guide Online's legal expenses continue

to accrue post petition. In connection with the above, TV Guide Online respectfully represents

as follows:

**JURISDICTION**

1.      This Court has jurisdiction over the Administrative Expense Claim pursuant to

28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

**BACKGROUND**

2.      TV Guide Online, Inc. is a Delaware corporation with a principal place of

business at 2830 De La Cruz Blvd., Santa Clara, California 95050. TV Guide Online, LLC is a

Delaware Limited Liability Company with a principal place of business at 2830 De La Cruz

Blvd., Santa Clara, California 95050. TV Guide Online, LLC is the owner of the '078 Patent,

and TV Guide Online, Inc. is the exclusive licensee of the '078 Patent, with the right to bring suit

and recover damages for past infringement.

3.      TMS is a supplier of television program listings and movie listings information in

the United States. TMS does business as Zap2It and operates the website www.Zap2It.com,

which is accessible by television viewers within this judicial district and elsewhere.

4.      Affiliates of TV Guide Online and the predecessor in ownership of the '078 Patent

initiated discussions with TMS regarding licensing of, inter alia, the '078 patent to TMS in early

---

[2] TV Guide Online filed a similar Request for Payment of Administrative Expense against TMS concurrently
herewith for damages resulting from TMS's infringement of the '078 Patent. TMS Entertainment Guides, Inc. may
be liable as a co-infringer, joint tortfeasor, principal, alter ego or agent of, or due to its relationship with TMS, for
the damages resulting from TMS's infringement of the '078 Patent. Accordingly, this Administrative Expense
Claim is filed as a protective matter in the event that TMS Entertainment Guides, Inc. also is liable to TV Guide
Online, Inc.

2

2005, and met with TMS on April 29, 2005 to discuss licensing terms. Affiliates of TV Guide Online and the predecessor in ownership of the '078 patent attempted on multiple occasions to continue these discussions with TMS after the April 29, 2005 meeting and presented a detailed licensing proposal to TMS that included a license under the '078 patent on June 16, 2005. Within 24 hours of receiving the licensing proposal, TMS rejected the proposal, stating it was not interested in taking a license. TMS thus has been offered a license under the '078 patent and has refused the opportunity to enter into a license.

5.     Accordingly, in order to enjoy the benefit of their patent rights and to protect those rights, TV Guide Online, Inc, and TV Guide Online, LLC filed suit against TMS in the District of Delaware on October 12, 2005. Annexed hereto as Exhibit A is the Complaint filed in the Delaware District Court in the action styled TV Guide Online, Inc. and TV Guide Online, LLC v. Tribune Media Services, Inc., Case No. 05-725 (the "Delaware Action"). On December 12, 2008, TMS filed with the Delaware District Court its Notice of Filing of Voluntary Petition Under Chapter 11 of the Bankruptcy Code. Prior to that submission, TV Guide Online and TMS had fully briefed claim construction and five motions for summary judgment directed to infringement, noninfringement, invalidity, and two damages-related issues. On December 16, 2008, the Delaware District Court denied all five summary judgment motions without prejudice to renew and stayed the case pending further order of the court. TMS has been and still is directly infringing, contributorily infringing, or actively inducing infringement by others of one or more claims of the '078 Patent, through activities including but not limited to the using and the inducing of others to use the inventions described and claimed in the '078 Patent.

6.     Pursuant to the Delaware Action, TV Guide Online seeks a judgment that TMS has infringed one or more claims of the '078 Patent. TV Guide Online also seeks injunctive and

monetary relief, in the form of compensatory and treble damages for patent infringement, with pre-judgment interest, and attorneys' fees, costs and expenses.

### RELIEF REQUESTED

7.      On the basis of the foregoing, TV Guide Online respectfully requests that the Court enter an Order directing the payment, as an administrative expense, for damages incurred as a result of the continuing, post petition infringement of the '078 Patent, and for attorneys' fees, costs and expenses incurred in prosecuting the Delaware Action.

### RESERVATION OF RIGHTS

8.      TV Guide Online does not waive, and expressly reserves, all rights and remedies at law or in equity that TV Guide Online has or may have against any person or entity that is or may become a debtor in a case pending in this Court, or any other right, remedy, claim or defense of TV Guide Online whatsoever.  TV Guide Online reserves the right to amend or supplement this Administrative Expense Claim at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail regarding the amounts set forth herein, to fix the amount of any contingent or unliquidated claim, to file additional amounts that may be based on the same or additional documents, and/or for other lawful purposes.

Dated: March   , 2011

_____
*Counsel for TV Guide Online, Inc.*
Christopher J. Harnett
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 596-9000
christopher.harnett@ropesgray.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TV GUIDE ONLINE, INC. and TV GUIDE ONLINE, LLC | ) ) | |
| | ) | |
| Plaintiffs, | ) ) | C.A. No. _0 5 - 7 2 5_ |
| | ) | |
| v. | ) ) | |
| | ) | |
| TRIBUNE MEDIA SERVICES, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

2005 OCT 12  PM 4: 21

## COMPLAINT

Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC, jointly referred to herein as "TV Guide Online," hereby allege and complain as follows:

## PARTIES

1.      TV Guide Online, Inc. is a Delaware Corporation with a principal place of business at 6922 Hollywood Blvd., Los Angeles, CA 90028.

2.      TV Guide Online, LLC is a Delaware Limited Liability Company with a principal place of business at 6922 Hollywood Blvd., Los Angeles, CA 90028.

3.      TV Guide Online, LLC is the owner by assignment of United States Patent No. 5,988,078 ("the '078 patent").

4.      TV Guide Online, Inc. is the exclusive licensee of the '078 patent, with the right to bring suit and to recover damages for past infringement.

5.      Defendant Tribune Media Services, Inc. (d/b/a Tribune Media Services International, tms.tribune.com, and Zap2It) ("TMS") is a Delaware Corporation.

6.      On information and belief, TMS has a principal place of business at 435 N. Michigan Avenue, Suite 1500, Chicago, IL 60611.

## JURISDICTION AND VENUE

7.      This is a civil action brought by TV Guide Online for patent infringement committed by TMS and arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      Venue in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), in that events giving rise to TV Guide Online's claims occurred in this district, the defendant may be found and/or resides in this district by virtue of its activities in this district, and the defendant has committed acts of patent infringement in this district.

## BACKGROUND

### The Patented Technology

9.      Michael Levine is a prolific inventor who has made inventions now covered by numerous United States patents. His inventions are directed to many technologies including inventions relating to programmable thermostats, microprocessor architecture, on-screen programming capabilities for VCRs, and electronic, interactive and on-line television program guides.

10.      Mr. Levine developed television program guide technology throughout the 1980s and 1990s. In the course of that development work, Mr. Levine identified a need to enable a television viewer using a computer to obtain television programming information specific to that viewer's location. Mr. Levine invented a system and method to meet this need.

11.      Mr. Levine filed a patent application describing his method and system on March 9, 1992. A continuation of that patent application, filed October 9, 1997, duly and legally

2

issued on November 23, 1999 as United States Patent No. 5,988,078, a true and correct copy of which is attached hereto as Exhibit A.

**TV Guide Online, Inc. and TV Guide Online, LLC**

      12.    The predecessor in ownership of the '078 patent, a company now associated with TV Guide Online, and its affiliated companies, recognized the importance and value of Mr. Levine's invention and acquired the patent application that resulted in the '078 patent.

      13.    TV Guide Online, Inc. operates www.tvguide.com, a popular and leading entertainment website providing media content and tools for television viewers. The www.tvguide.com website attracts millions of individual users per month and has millions of registered users. This website includes a television listings section that enables television viewers to obtain television programming information specific to a viewer's location.

      14.    TV Guide Online, Inc. maintains a database of television listings, scheduling and programming information, accessible over the Internet. A television viewer can obtain television programming information specific to the viewer's location by accessing the www.tvguide.com website and selecting "listings." The television viewer then enters information regarding the viewer's location (e.g., the viewer's address, including zip code) into the www.tvguide.com website to receive television programming information including program titles, channels, airtimes, and detailed program descriptions – all specific to the viewer's location.

      15.    TV Guide Online, Inc. makes use of the '078 patent in providing the www.tvguide.com program listings service.

3

16.    TV Guide Online, Inc. generates advertising revenue through the operation of www.tvguide.com.

17.    Television viewers throughout the country and in this judicial district access www.tvguide.com for television programming information specific to their locations.

**TMS**

18.    TMS is a supplier of television program listings and movie listings information in the United States.

19.    TMS does business as Zap2It and operates the website www.Zap2It.com, which is accessible by television viewers within this judicial district and elsewhere. Television viewers obtain television programming information specific to the viewer's location using the Zap2It website.

20.    Using the inventions described and claimed in the '078 patent, Zap2It provides television programming information specific to a viewer's location. Zap2It maintains a database of television programming information accessible over the Internet. A viewer accesses Zap2It's website using a computer to enter information about the viewer's location, such as the viewer's zip code. The website provides to the viewer television programming information specific to the viewer's location.

21.    On information and belief, television viewers in this judicial district have accessed and continue to access www.Zap2It.com, enter their zip codes and receive television programming information specific to their location.

22.    On information and belief, Zap2It derives substantial revenue from its use of the inventions of the '078 patent, including through the display of advertising on its website.

RLF1-2931209-1

In addition, Zap2It provides other information such as movie theater listings specific to a viewer's location, from which it may derive revenue.

**TMS's Notice of the '078 Patent**

23.    TMS has been notified that it requires a license under the '078 patent by reason of the activity described in paragraphs 18-22 above.

24.    Affiliates of TV Guide Online and the predecessor in ownership of the '078 patent initiated discussions with TMS regarding licensing of, inter alia, the '078 patent to TMS in early 2005, and met with TMS on April 29, 2005 to discuss licensing terms.

25.    Affiliates of TV Guide Online and the predecessor in ownership of the '078 patent attempted on multiple occasions to continue these discussions with TMS after the April 29, 2005 meeting and presented a detailed licensing proposal to TMS that included a license under the '078 patent on June 16, 2005.

26.    Within 24 hours of receiving the licensing proposal, TMS summarily rejected the proposal, stating it was not interested in taking a license.

27.    TMS thus has been offered a license under the '078 patent and has refused the opportunity to enter into a license. Accordingly, in order to enjoy the benefit of their patent rights and to protect those rights, TV Guide Online, Inc. and TV Guide Online, LLC bring this action.

## CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 5,988,078 BY TMS

28.    TV Guide Online, Inc. and TV Guide Online, LLC hereby incorporate, as though fully set forth herein, the allegations of paragraphs 1 through 27 of this Complaint.

5

29.    TMS has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe, the '078 patent.

30.    TMS has been given notice of the '078 patent.

31.    On information and belief, TMS's infringement of the '078 patent is, has been, and continues to be willful and deliberate.

32.    TV Guide Online, Inc. and TV Guide Online, LLC have sustained damages and suffered irreparable harm as a consequence of TMS's infringement, and will continue to sustain damages and be irreparably harmed unless TMS is enjoined from infringing the '078 patent.

WHEREFORE, plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC seek judgment in their favor and against defendant TMS as follows:

A.    Adjudging and decreeing that TMS has infringed one or more claims of U.S. Patent No. 5,988,078;

B.    Awarding injunctive relief permanently enjoining TMS, its officers, agents, servants, employees and attorneys and all persons in active concert or participation with it from making, using, offering to sell, selling, or importing any product, service, or method that would infringe any of the claims of the '078 patent, including but not limited to making, using, offering to sell, selling, importing, operating, providing or displaying to the public, licensing, or offering for license the Zap2It Internet-based television guide or any other infringing guide or service;

6

C.      Awarding TV Guide Online, Inc. and TV Guide Online, LLC damages in an amount sufficient to compensate them for TMS's infringement, together with prejudgment interest and costs of suit;

D.      Adjudging that TMS's infringement is willful and awarding TV Guide Online treble damages under 35 U.S.C. § 284;

E.      Declaring this to be an exceptional case pursuant to 35 U.S.C. § 285 and awarding TV Guide Online, Inc. and TV Guide Online, LLC their attorneys' fees, costs and expenses against TMS; and

F.      Granting such further relief as the Court may deem just and appropriate.

<br>

_____

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs  TV  Guide
Online, Inc. and TV Guide Online, LLC

OF COUNSEL:
Robert C. Morgan
Christopher J. Harnett
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Dated:  October 12, 2005

7

# EXHIBIT A



US005988078A

# United States Patent [19]

## Levine

[11] Patent Number: 5,988,078

[45] Date of Patent: Nov. 23, 1999

[54] METHOD AND APPARATUS FOR RECEIVING CUSTOMIZED TELEVISION PROGRAMMING INFORMATION BY TRANSMITTING GEOGRAPHIC LOCATION TO A SERVICE PROVIDER THROUGH A WIDE-AREA NETWORK

[75] Inventor: **Michael R. Levine**, Boca Raton, Fla.

[73] Assignee: **Gemstar Development Corp.**, Pasadena, Calif.

[21] Appl. No.: 08/947,950

[22] Filed: **Oct. 9, 1997**

### Related U.S. Application Data

[63] Continuation of application No. 08/287,343, Aug. 8, 1994, Pat. No. 5,692,214, which is a continuation-in-part of application No. 07/848,338, Mar. 9, 1992, abandoned, which is a continuation-in-part of application No. 07/802,249, Dec. 4, 1991, abandoned.

[51] Int. Cl.[6] .................................. G06F 13/14; H04N 7/03
[52] U.S. Cl. ....................... 110/8; 348/13; 348/460; 709/218
[58] Field of Search ......... 395/200; 348/13, 348/460; 709/218; 710/8

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,521,914 | 6/1985 | Petrovic | 455/158.5 |
| 4,630,108 | 12/1986 | Gomersall | 348/13 |
| 4,734,765 | 3/1988 | Okada et al. | 348/107 |
| 4,751,578 | 6/1988 | Reiter et al. | 348/564 |
| 5,223,924 | 6/1993 | Strubbe | 358/86 |
| 5,291,554 | 3/1994 | Morales | 380/5 |
| 5,382,983 | 1/1995 | Kwoh et al | 348/716 |
| 5,404,505 | 4/1995 | Levinson | 707/10 |
| 5,485,219 | 1/1996 | Woo | 348/460 |
| 5,534,911 | 7/1996 | Levitan | 348/1 |
| 5,619,274 | 4/1997 | Roop et al. | 348/461 |
| 5,663,757 | 9/1997 | Morales | 348/13 |
| 5,703,795 | 12/1997 | Mankovitz | 345/327 |
| 5,781,246 | 7/1998 | Alten et al. | 348/569 |

*Primary Examiner*—Thomas C Lee
*Assistant Examiner*—Albert Wang
*Attorney, Agent, or Firm*—Gifford, Krass, Groh, Sprinkle, Anderson & Citkowski, PC

[57]                    **ABSTRACT**

A personal computer is used to assist in the selection of television programs to be recorded at future times and to control a video tape recorder to implement the selected recordings. An application program allows the computer to receive data representing a schedule of future programs. The operator can perform data base operations on the data to obtain listings of programs of particular interest. A program to be recorded is selected by moving a cursor into position with the display of the program listing on the computer. An output device generates infrared signals to control the video tape recorder and a cable box to tune and record a selected program

**10 Claims, 3 Drawing Sheets**



FIG - 1

FIG - 2

HBO - GONE WITH THE
         WIND
CBS - NIGHTLINE
NBC - MISERY
FOX - LA LAW
ESPN - WORLD SERIES
PBS - CHINA TODAY

PROGRAMMING
SOURCE

CABLE BOX

V.C.R.

T.V. RCVR

IR RCVR

IR RCVR

IR
XMTR /
RCVR

PERSONAL
COMPUTER

REAL TIME
CLOCK

MODEM

MODEM

SCHEDULE
SOURCE



**VCR CONTROL INITIALIZATION ROUTINE**

PLEASE PRESS CHANNEL UP BUTTON ON YOUR VCR REMOTE

50

FIG - 5

30

28

26

FIG - 4

41 BATTERY

39 CLOCK

37 MICRO-PROCESSOR

35 MEMORY

34 IR DIODE

32 IR SENSOR

26

FROM PC18

30

FIG - 3

14

3:12

FIG - 7

66

64

FIG - 6

68

CHRONOLOGICAL
RECORDING INDEX

OCT 23 90  BOSTON POPS
           BERNSTEIN, TAPE 17
OCT 25 90  L.A.LAW, TAPE 17
OCT 30 90  FRENCH CHEF
           SOUFLES, TAPE 3
NOV  4 90  GENERAL HOSPITAL
           CARRIE'S WEDDING,
           TAPE 3

60

18

5,988,078

1

### METHOD AND APPARATUS FOR RECEIVING CUSTOMIZED TELEVISION PROGRAMMING INFORMATION BY TRANSMITTING GEOGRAPHIC LOCATION TO A SERVICE PROVIDER THROUGH A WIDE-AREA NETWORK

### RELATED APPLICATIONS

This is a continuation of application Ser. No. 08/287,343, filed Aug. 8, 1994, now U.S. Pat. No. 5,692,214 which is a continuation-in-part of Ser. No. 07/848,338, filed Mar. 9, 1992, now abandoned, which is a continuation-in-part of Ser. No. 802,249, filed Dec. 4, 1991 (now abandoned).   ·

### FIELD OF THE INVENTION

This invention relates to a method and apparatus for controlling a video recorder to allow the unattended recording of future occurring programs using a personal computer and more particularly to such a method and apparatus which provides a display of a schedule of future programming available to the recorder on the personal computer.

### BACKGROUND OF THE INVENTION

My U.S. Pat. No. 4,908,713 discloses a system for providing a schedule of future video programming available to a video recorder to a database memory located at the recorder so that the operator may display selected sections of the future schedule as an aid in choosing programs for recording. The schedule may be provided to the memory and updated either by broadcasting schedule information or by delivering disposable memories to the system on a subscription basis. Other of my applications disclose such systems in which the video recorder is programmed for unattended recording of a future program by simply pointing a cursor at the listing of that program on the schedule display. Since the system already stores the data required to record the program, it is unnecessary for the operator to re-enter the same data. My application Ser. No 802,249 further discloses such a system in which the local memory stores the identification of programs that have been recorded and allows their display in order to select previously recorded programs for viewing.

These systems greatly simplify the problems of selecting programs for recording, actually performing the recording process, and viewing recorded programs. They suffer from the disadvantage of adding hardware and software to existing video cassette recorders or cable boxes which do not contain a schedule memory and a database program for selecting particular entries on the memory for display.

### SUMMARY OF THE INVENTION

The present invention allows the implementation of the electronic schedule memory and cursor-based programming on a conventional video recorder through use of an associated personal computer which communicates with the video recorder via infrared signals of the type used for remote control of the video recorder. The infrared signals are preferably generated by a transmitter connected to an output port of the personal computer and are driven by signals generated by an application program run by the personal computer. The same transmitter may control the tuner of an associated cable box.

Future programming schedule information may be provided to the personal computer from a remote database by telephonic communication, by broadcast, or by subscription

2

provision of disposable memories. The schedule information may be displayed on the monitor of the personal computer under control of a database program allowing chronological, alphabetical or topical selection and the operator may move a cursor on the display screen to point to a particular program to select it for future recording. The remote transmitter connected to the personal computer output port can send signals to the video recorder at the time the selection is made, allowing the future unattended programming memory of the video recorder to initiate the recording of a specific channel at the proper time or the remote may exercise control over the video recorder at the time the recording is to be made.

The personal computer transmitter may be instructed as to the particular code systems used by the video recorder remote control either by information transmitted from a remote database provider based on the identification of the make of the video recorder by the computer use, or through use of an initialization program which displays commands to the computer operator on the monitor of the personal computer directing the operator to press selected buttons on the remote transmitter provided with the video recorder. The computer program thus learns and stores the required remote codes. In the same manner, the personal computer can control an associated cable tuner to ensure that the channel specified for recording is provided to the VCR. The personal computer program can also store and display an index of programming that has been recorded by the system.

Through use of the method and apparatus of the present invention the advantages of an electronic schedule guide and cursor-controlled programming of the video recorder may be achieved without the provision of a specialized form of cassette recorder or cable box.

Other objectives, advantages and applications of the present invention will be made apparent by the following detailed description of the preferred embodiment of the invention. The description makes reference to the accompanying drawings in which:

### DETAILED DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates a personal computer and television viewing system including a TV receiver, a video recorder and a cable box, implementing the preferred embodiment of the present invention;

FIG. 2 is a schematic diagram of the preferred embodiment of the invention;

FIG. 3 is a schematic diagram of the IR transmitter/receiver;

FIG. 4 is a perspective view of the rear of a personal computer illustrating the method of attachment of an infrared transmitter and receiver to an I/O port of the computer;

FIG. 5 is an illustration of a screen displayed on the personal computer monitor during an initialization procedure; and   ·    ·

FIG. 6 is an illustration of a personal computer screen displaying an index of recorded programs and the tape cassettes on which each is recorded; and

FIG. 7 is an illustration of a second embodiment of the invention in which the personal computer and video recorder are located remotely from one another and the output signals from the personal computer are transmitted by radio to an infrared transmitter for control of the video recorder.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, the preferred embodiment of the invention employs a television recording and receiving

5,988,078

3

system, generally indicated at 10, comprising a conventional television receiver 12, a video cassette recorder 14 and a cable tuner and descrambler box 16. A variety of known forms of interconnection can be made between the cable box 16, the recorder 14 and the television receiver 12 to allow either the recording or viewing of programs tuned by the cable box 16 or the simultaneous viewing of one program and the recording of another. The present invention is equally applicable to broadcast receiver systems which do not employ a cable box and to satellite receivers.

The video recorder 14 will normally be of the type employing an infrared remote control (not shown) as will the tuner in the cable box 16. The VCR 14 may, but need not necessarily, incorporate a future, unattended recording memory which includes a real time clock (not shown).

The method and apparatus of the present invention further utilizes a conventional personal computer, generally indicated at 18, incorporating a main computer housing 20, a keyboard 22 and a monitor 24. The term "personal computer" is used broadly to incorporate work stations, mini-computers and portable units.

The personal computer 18 is conventional but is provided with a special application program to implement the present invention. The organization of this application program is well within the skill of a programmer using the functional description of the program provided herein.

An infrared transmitter and receiver 26 is connected to an I/O port of the personal computer, preferably a parallel port, by a male connector 28 and a cable 30. The infrared unit 26 incorporates a conventional infrared signal detector 32 and an infrared emitter 34. In alternative embodiments the signals could represent other forms of electromagnetic or supersonic transmission, "infrared" is hereinafter used to define the generic form of signals.

The infrared signals emitted by the unit 26 are picked up by the infrared remote receiver of the video recorder 14 and may also be picked up by the infrared recorder of the cable box 16 to control its tuner.

The application program is loaded into the personal computer via a diskette or the like. The program requires as data the schedule of future programming available to the system 10 from a programming source 38, such as a cable or the like, for a particular period of time such as a week or month.

In the preferred embodiment of the invention the schedule information is provided to the personal computer 18 from a remote database 40, which may constitute a database provider such as "COMPUSERVE," "PRODIGY" or the like. This information may be customized for the cable service 38 available to the system through an initialization routine in which the computer operator keys in the postal ZIP code of his location and, if necessary, an identification of the cable service provider. The head end database uses this information to provide the computer 18 with the schedule of programming for that service. The operator of the personal computer system 18 may communicate with the schedule source over phone lines 42 using modems 44 at each end. Alternatively, the personal computer could employ a program in which the system automatically communicates with the schedule source 40 at predetermined periods, such as each morning at 4:00 a.m. or the like, to update the schedule stored in the personal computer 18. As another alternative, diskettes could mailed out to the personal computer on a subscription basis or the schedule information could be provided to the personal computer via cablecast or broadcast.

4

Through use of a database program employing menus, submenus and the like, the operator may obtain a display of programming for a particular period of time, such as that illustrated at 46 in FIG. 1. To select a listed program for future recording the operator may move a cursor 48 into super-position with the listing. Alternatively, two or three digit numbers could be associated with each listing and the operator could signal a programming selection by hitting an appropriate number on the keyboard 22.

In the preferred embodiment of the invention this selection transfers information relating to the programming selection to a memory 35 within the IR unit 26 (FIG. 3). The unit 26 also includes a microprocessor 37, a real time clock 39 and a power supply battery 41. The microprocessor 37 continually compares the present time signal from the clock 39 with the start time of the programs to be recorded as stored in the memory 35 and sends an appropriate infrared code to the VCR 14 (and, if appropriate, the cable box 16) at the start time. A similar signal at the programmed conclusion time of the program terminates the recording. This arrangement eliminates the need for the computer to continually remain in the on state.

In alternative embodiments of the invention employing programmable cable tuners or programmable satellite receivers, the infrared transmissions could be used to program these units.

Alternatively, the control signals to the IR unit 26 may be provided in real time by the computer 18 under control of its internal clock. The IR unit might then simply consist of an IR diode connected to the personal computer 18 by a long wire so the diode may be placed near the receiver 10. At the time the recording is to be initiated, the personal computer transmits signals from an I/O port through the cable 30 to the infrared transmitter/receiver 26. The unit 26 then send signals to the video cassette recorder 14, which tune the set to the required channel and initiates the recording. Signals might also be sent to the cable box 16 to cause it to tune to the appropriate channel. As a third alternative, when the operator makes a programming selection, the information relating to that selection, including channel and the start and stop time could be immediately sent from unit 26 to video cassette recorder 14 to program the recorder for the future unattended recording of the desired program.

Alternatively the unit 26 may be detachable from the computer 18 so that after it is loaded with data on programs to be recorded it may be detached and moved into proximity with the receiver system 10, which may be located in another room.

To perform the transmission function, the personal computer 18 requires information as to the nature of the remote control codes used by the video recorder 14 and the cable box 16 if that is additionally to be controlled. Preferably, this information is provided from the remote database 40 during an initialization routine in which the operator keys in the identification of the make and model of the VCR and cable box. Alternatively, to acquire this information, the application program for the personal computer may go through an initialization routine using screens of the type illustrated at 50 in FIG. 5. These screens advise the computer operator to press selected buttons on the remote control transmitter 52 for the VCR 14 or the transmitter for the cable box 16. The personal computer application program· receives signals from the IR sensor 32 and stores these codes for use in transmitting control signals to the video recorder 14 and the cable box 16. The application program may alternatively store a database of the control codes for popular video

5,988,078

<table>
<tr><td>5</td><td>6</td></tr>
</table>

recorders or cable boxes and thus allow the unit to be identified by only pressing one or two selected keys, or it may require the operator to go through all of the keys in order to develop the appropriate remote control schedule.

In another embodiment of the invention the unit 26 includes sound detection apparatus. This provides several advantages, including the ability to receive information in acoustic form either from the personal computer or over a telephone line, for example using an acoustic coupler. An increasing number of conventional personal computers are now provided in standard form with a sound generating capability, and even if not factory supplied, numerous sound-generating modules and add-on cards are widely available as options. With such a capability residing in the personal computer, information may be transmitted from the personal computer to the module 26 in acoustical form. For example, information pertaining to a program to be recorded may be delivered in this manner, as well as any control code information required for proper activation and/or tuning of other system components, including the video recorder or cable box, to ensure that the proper channel is tuned at the appropriate time.

The ability to accept an acoustical signal may further facilitate an entirely wireless implementation of module 26, and may also enable module 26 to be partially or completely compatible with VCR programming techniques, including the VCRPlus™ system which is currently being marketed commercially. With VCRPlus™ program listings include a multi-digit numerical code which is entered by an operator to bring about the automatic, unattended recording of a particular program without the need for entering a more sophisticated sequence of information such as program start time, stop time, channel tuning, and so forth, as is presently entered through typical on-screen programming sequences. Certain of the VCRPlus™ modules contain acoustic couplers, enabling them to be programmed over a standard telephone line. Utilizing this capability, a customer dials a service telephone number and informs a representative or uses touch tone codes to enter information such as VCR make/manufacturer, cable tuner make/manufacturer, and geographic information, for example, in the form of a zip code. Given this information, the system then down-loads the appropriate control codes to be used by the VCRPlus™ module to ensure that the entry of a VCRPlus™ numerical code records the desired program for that user in their particular geographic area.

The present invention may take advantage of some or all of the VCRPlus™ features or similar features of any similar automated programming system. If the database received and stored in the personal computer by the present invention includes encoded program information such as VCRPlus™ codes, these may be delivered directly from the personal computer to the module 26 instead of more detailed program-related information. Although presently available VCRPlus™ control units typically only receive control code information in acoustic form, with the numerical code associated with a desired program entered via keypad, such units contain all of the hardware necessary to accept the numerical code in acoustic form as well. In such a case, then, with the present invention storing a large database of programs in the personal computer, the VCRPlus™ code alone may be delivered to the remote unit 26 to bring about the desired programming sequence. In the event that the unit 26 includes a sound detection capability, the numerical code may be transmitted by the personal computer to the module 26 in acoustic form, in addition to the remote-control codes, which may also be delivered in acoustic form, either from the personal computer or over a phone line as is currently the case with the VCRPlus™ system. In the event that the personal computer is used to transmit the control codes to the module 26, regardless of the form in which such codes are delivered, a look-up table may be provided to the personal computer either in disk form or through a separate telephonic connection, and upon entry of equipment make/model and any required geographic information by the operator through the keyboard provided on the personal computer, a look-up may be carried out by the computer so that the appropriate control codes are used for all equipment involved.

The embodiment of the invention illustrated in FIG. 7 is utilized in systems where the cassette recorder 14 is located a large distance from the personal computer 18, such as in another room of the house. In this system the remote I/R transmitter 26 is replaced by a radio transmitter 60. The radio signals are received by a remote receiver 64 disposed physically in front of the video recorder 14. Receiver 64 includes an infrared transmitter 66 and the received radio signals are transmitted into serial infrared commands which are transmitted by the unit 64 to the infrared receiver of the video recorder 14.

The application program for the remote television receiver 18 may also maintain a database of the programs that have been recorded by the system and allow display of these programs on the monitor of the personal computer. The identifying information may include codes as to the nature of the program such as a tennis match, comedy, movie or the like to allow menu-driven database operations to be used in the selection of programming for viewing. The information may record storage location of the programming, in terms of video cassettes, which the operator may enter into the system via the keyboard. A typical screen of this index is illustrated at 68 in FIG 6.

Having thus described my invention, I claim:

1. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of:

providing a computerized unit at the particular viewing location, the unit including an operator input and a modem;

establishing a connection to a wide-area network through the modem;

transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and

receiving, from the service provider, information specific to the type of programming available to the particular viewing location.

2. The method of claim 1, wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location.

3. The method of claim 1, wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location.

4. The method of claim 1, wherein the computerized unit is interfaced to a display, and wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location.

5,988,078

7

5. The method of claim 1, wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location.

6. A method of receiving customized television programming schedule information, comprising the steps of:

providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device;

establishing a connection to a wide-area network through the modem;

transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location;

receiving, from the service provider, television programming schedule information specific to the viewing location; and

viewing the information on the display device.

7. The method of claim 6, wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location.

8. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising:

8

an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions:

a) establish a connection to a service provider through the modem,

b) receive information through the operator input pertaining to the geographic location of the television receiver,

c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and

d) receive, from the service provider, the information specific to the type of television programming available to the receiver.

9. The system of claim 8, further including an electronic television interface in communication with the controller, the controller being further programmed to affect the operation of the television receiver in accordance with the information specific to the type of television programming available to the receiver.

10. The system of claim 8, further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver.

* * * * *