UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| **TRIBUNE COMPANY**, *et al.*, | ) |
| | ) Case No. 08-13141 (KJC) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Re: Dkt. Nos. 8208 and 8414 |

### SAMUEL ZELL'S MEMORANDUM IN SUPPORT OF TRIBUNE COMPANY'S MOTION FOR ORDER MODIFYING AUTOMATIC STAY AND ADVANCEMENT OF DEFENSE COSTS

Samuel Zell ("Mr. Zell"), the current Chairman of Tribune Company ("Tribune"), respectfully submits this memorandum in support of Tribune's Motion for an Order Modifying the Automatic Stay to Allow Payment and Advancement of Defense Costs, Fees and Expenses under Directors and Officers Liability Insurance Policies and in response to the opposition of the Official Committee of Unsecured Creditors (the "Committee") to that motion.

The Committee suggests that Mr. Zell cannot reasonably incur defense costs due to a pending stay. (*E.g.*, Committee Obj. at 2.) The Committee's position ignores the fact that Mr. Zell has *already* appropriately incurred substantial reasonable expense in defending the Committee's purported claims against him – claims that never should have been asserted in the first place, particularly in light of the Examiner's determination that they have no plausible basis. Notwithstanding their lack of plausibility, Mr. Zell has reasonably incurred legal fees and expenses seeking to mediate a resolution of these claims. When forced to do so by the Committee's unreasonable refusal either to mediate or to enter into a tolling agreement, Mr. Zell has also reasonably incurred fees challenging the Committee's motion for standing to bring these claims and in objecting to the reasonableness of the Committee's proposal, as part of its pending proposed Plan of Reorganization, to transfer these purported claims to a litigation trust.

As the Committee well knows, Mr. Zell sought to resolve any purported claims against him by participating in the court-ordered mediation and, through his representatives, attended mediation sessions – only to find the Committee was unwilling to engage in a dialogue with him. Mr. Zell has reiterated and hereby again reiterates his desire to address any claims against him in the context of a mediation, all to no avail.  It is outrageous for the Committee to try to deny Mr. Zell the costs of his defense, when it refuses either to mediate or explain the basis for asserting claims against him that the Examiner found implausible.

Shunned at his efforts at dialogue and mediation, Mr. Zell has spent the last few months incurring reasonable defense costs challenging the Committee's standing to pursue claims that the Examiner found unlikely to succeed – including claims that the Examiner found were not even plausible.  The Committee, after extensive briefing, withdrew its motion to confirm standing to avoid a determination on the merits of that motion.  There is no basis to deny access to insurance proceeds for these types of reasonable defense costs – particularly when they have been caused exclusively by the Committee's ill-considered pleadings and motion practice.

Similarly, Mr. Zell has appropriately incurred defense costs objecting to that part of the DCL Plan that proposes to transfer to a litigation trust, claims that have no plausible or good faith basis.  In fact, the DCL Plan Proponents' lead expert on the LBO claims, Professor Bernard Black, testified that he agrees with Examiner Klee's conclusion that proposed claims against Mr. Zell have no meaningful chance of success.  (3/10/11 Tr. at 51:18-54:12).  He testified:

> Q: And do you recall that one of the claims that you did not list among those claims were the alleged [breach] of fiduciary duty and aiding and abetting breach of fiduciary duty claims that have been alleged against my client, Mr. Zell?
>
> A   That's correct.

> Q  Okay. And, in fact, your opinion is that these alleged claims against Mr. Zell do not have a significant recovery value. Isn't that correct?
>
> A  That is my opinion.
>
> Q  And you come to that conclusion, come that opinion because you do not believe that these claims have a meaningful chance of success. Isn't that correct?
>
> A  That's correct. If they were to succeed, there were large dollars attached, **but I do not think they have a meaningful chance of success.**
>
> Q  **And that's true both for any claims alleged at Step 1 or any claims alleged at Step 2.**
>
> A  **Yes.**

(3/10/11 Tr. at 51:18-52:12 (emphasis added).)

The Noteholders' expert Dr. Bruce Beron testified that he did not disagree with Professor Black.  (3/17/11 Tr. at 254:21-24.)

Having sued Mr. Zell on baseless claims, ignored his repeated requests to explain how, consistent with Federal Rule of Bankruptcy Procedure 9011, the Committee can assert claims that have no plausible basis, and ignored his repeated requests to address these claims in the context of the mediation, it is beyond the pale for the Committee to now seek to deny Mr. Zell access to D&O insurance proceeds that belong to him.  The Committee's suggestion (at page 9) that Mr. Zell had "no reason" to incur these substantial defense costs exposes a less than transparent effort by a party to control its adversary's defense.

Directors and officers are necessarily induced to serve in those capacities by the promise of D&O insurance.  Mr. Zell served as the Company's Chairman since the LBO without compensation for his services and previously served as the Company's CEO at "compensation" of fifty cents a year.  He has continued to serve the Company faithfully through these

reorganization proceedings. Every independent expert, including both the Examiner and Professor Black, to examine proposed LBO claims against Mr. Zell have concluded that there is no plausible basis for asserting claims against Mr. Zell. To now seek to deny Mr. Zell recourse to insurance proceeds that were purchased to induce service as the Company's CEO and Chairman, seeks to add injury to insult.

Having filed a complaint against Tribune's directors and officers, the Committee now contends that it is entitled to "carefully monitor[] and preserve[]" liability insurance proceeds that would allow a defense against those claims. (*E.g.*, Committee Obj. at 2.) That is contrary to both law and common sense: "In bringing the action against the directors and officers, the [Committee] knew that the [insurance] proceeds could be depleted by legal fees and [it] took that chance. The law does not support the [Committee's] request to regulate defense costs." *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 513 (D. Del. 2004).

If the Committee is concerned about squandering D&O proceeds on claims, then it should promptly dismiss those claims that the Examiner determined are unlikely to succeed and/or it should promptly seek to mediate a resolution *now* - rather than trying to "manage[]" Mr. Zell's defense of those meritless claims.

**CONCLUSION**

For the foregoing reasons, this Court should grant Tribune Company's Motion for an Order Modifying the Automatic Stay.

Dated: March 21, 2011        **BLANK ROME LLP**

By:  /s/ *Alan M. Root*
David Carickhoff (DE No. 3715)
Alan M. Root (DE No. 5427)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

and

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice)*
Catherine L. Steege (admitted *pro hac vice*)
Douglas A. Sondgeroth (admitted *pro hac vice)*
Andrew W. Vail (admitted *pro hac vice)*
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

*Counsel for Samuel Zell*