# EXHIBIT 2

**JENNER&BLOCK**

February 28, 2011

|  |  |
|---|---|
| Jenner & Block LLP | Chicago |
| 353 N. Clark Street | Los Angeles |
| Chicago, IL 60654-3456 | New York |
| Tel 312 222-9350 | Washington, DC |
| www.jenner.com |  |

**VIA ELECTRONIC MAIL AND U.S. MAIL**

James Sottile, Esq.
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-5807

David J. Bradford
Tel 312 923-2975
Fax 312 840-7375
dbradford@jenner.com

Dear Jim:

      Notwithstanding my extremely high professional and personal regard for you and your firm, I am compelled to write to request that the Official Committee of Unsecured Creditors (the "Committee") withdraw three specific claims it asserted against Samuel Zell in the First Amended Complaint that the Committee filed in *Official Committee of Unsecured Creditors of Tribune Co., et al. v. Fitzsimons, et al.*, Adversary Proceeding No. 10-54010 (the "Complaint") because the Committee can have no reasonable basis for those claims as required by Federal Rule of Bankruptcy Procedure 9011. By focusing this request on these three specific claims, we do not imply that other claims pass Rule 9011 muster. However, the withdrawal of these three claims, as Rule 9011 compels, would effectively moot all other claims (and any related Rule 9011 issues) for reasons explained below.

      Specifically, the Committee has not and cannot identify a reasonable basis in fact or law to assert the following claims: (1) Sam Zell aided and abetted a breach of fiduciary duty, when he was across the table bargaining at arm's-length from those alleged to have breached a fiduciary duty; (2) Sam Zell breached a fiduciary duty after becoming a Tribune director when, in fact, he took no action and could take no action with respect to the challenged LBO transaction in that capacity; and (3) Sam Zell is somehow an alter-ego of EGI-TRB, when there is no factual or legal basis to pierce EGI-TRB's corporate form and none is alleged in the Complaint. Absent this implausible "piercing" allegation, all claims against EGI-TRB would become moot, because EGI-TRB would otherwise be prepared to assign all its assets and value to the Estate to avoid the expense of litigation.

      As you know, Rule 9011 requires that, in signing and filing a Court pleading, counsel "certif[ies] that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that (1) the claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law" and (2) that the factual allegations in the complaint "have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P. 9011(b). Additionally, where a party knows that one of its alleged causes of action is barred by an affirmative defense, it may not continue to assert that claim consistent with Rule 9011. *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1383-85 (4th Cir. 1991) (quoting *White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1980) ("Part of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case.")).

James Sottile, Esq.
February 28, 2011
Page 2

As detailed below, the Committee can have no reasonable belief that these three claims against Mr. Zell are supported by existing law or a non-frivolous argument for modifying existing law, or will have evidentiary support.

1. **Allegations of Aiding and Abetting Breaches of Fiduciary.**

One of the central claims that the Committee asserts against Mr. Zell is that he aided and abetted breaches of fiduciary duty by Tribune's officers and directors when negotiating the LBO transaction . Yet after reviewing hundreds of thousands of pages of documents and interviewing nearly 40 key witnesses, the Examiner has already concluded in his comprehensive investigation that the claim is without merit and there is no "basis to conclude that the Zell Group aided and abetted a breach of any fiduciary duties in connection with the Leveraged ESOP Transactions." Examiner Report, Vol. II, 395, 397.

The law is clear that a party who negotiates across the table and at arm's-length from a fiduciary is not liable for aiding and abetting a breach that fiduciary's duties regardless whether the deal works out poorly for the party with whom they were bargaining. *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *In re General Motors (Hughes) Shareholder Litig.*, No. Civ.A. 20269, 2005 WL 1089021, at *26 (Del. Ch. May 4, 2005). The only exception to that rule is if the party offers benefits that were so clearly excessive and represented such a significant percentage of the total transaction value that a court could reasonably infer that the payments were inherently wrongful and made specifically to induce the fiduciaries to breach their duties. *McGowan v. Ferro*, No. CIV.A. 18672-NC, 2002 WL 77712, at *3 (Del. Ch. Jan. 11, 2002). The Committee apparently seeks to shoehorn its claim into that narrow exception by alleging that Mr. Zell "dangled significant financial incentives" before Tribune's officers and directors to entice them to approve the LBO deal. *E.g.*, Compl. ¶¶126-29.

There is, however, *no* factual basis for that allegation and it violates Rule 9011. First, as the Examiner's investigation determined, there is no factual basis to conclude that any actions by Tribune's officers or directors were based on any benefits Mr. Zell offered. *See, e.g.*, Examiner's Report, Vol. I at 398-399 (citing sworn testimony and interviews of Thomas Whayne, Dennis FitzSimons, Nils Larsen, Chandler Bigelow, and Sam Zell). Given the thoroughness of the Examiner's review, the Committee can have no reasonable basis to allege otherwise or to contend that contrary facts might reasonably be developed. Second, benefits that Tribune's management stood to receive due to a change of control were based not on incentives offered by Mr. Zell, but on the terms of *existing* Tribune compensation plans that predated any negotiations with Mr. Zell, such as the "Transitional Compensation Plan." Third, the factual record shows that Mr. Zell actually negotiated to *reduce* the cash benefits paid to management as a result of the transaction by negotiating to convert $37 million of those benefits into an equity incentive plan that placed the benefits "at risk" in the post-transaction Tribune.

For each reason, the Committee can have no reasonable basis to continue to assert its aiding and abetting claim against Mr. Zell. Rule 9011 requires that the Committee withdraw the claim immediately.

James Sottile, Esq.
February 28, 2011
Page 3

### 2. Allegations of Breach of Fiduciary Duties.

Another central claim that the Committee asserts against Mr. Zell is that he breached fiduciary duties he owed to Tribune while he was a member of Tribune's Board of Directors in connection with "Step Two" of the LBO transaction. This claim (and the related Delaware General Corporation Law §§ 160 and 173 claim) also does not pass muster under Rule 9011 because Mr. Zell had no role as a director in causing Tribune to undertake Step Two and the Committee has no reasonable basis to assert otherwise.

"Delaware law clearly prescribes that a director who plays no role in the process of deciding whether to approve a challenged transaction cannot be held liable on a claim that the board's decision to approve that transaction was wrongful." *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 566 (Bankr. D. Del. 2008) (internal citation omitted) (granting motion to dismiss counts against director who played no role in approving challenged transaction); *In re Tri-Star Pictures, Inc., Litig.*, Civ. A. No. 9477, 1995 WL 106520, at * 2 (Del. Ch. Mar. 9, 1995) (no liability for directors who "deliberately removed themselves from the decision-making process" and the preparation of the proxy materials) (citing *Citron v. E.I. Du Pont de Nemours & Co.*, 584 A.2d 490, 499 (Del. Ch. 1990)).

It is undisputed (and undisputable in good faith) that Mr. Zell abstained from Board decisions relating to the LBO, including that he had no role in Tribune's decision to approve Step Two. *See, e.g.*, 12/18/07 Tribune BOD Minutes [TRB 00415683-86]. The Committee tacitly recognizes as much, directing all of its factual allegations purportedly supporting the breach of fiduciary claims against the Special Committee and the other Tribune directors, *not* Mr. Zell. *See* Compl. ¶¶197-201.

Indeed, EGI-TRB was contractually obligated to proceed with Step Two if the Special Committee determined to proceed, as it did. Mr Zell was a principal investor in EGI-TRB. Those facts were fully disclosed to the Tribune board and shareholders at the time of the transaction. No case has ever held a director liable for abstaining from deliberations on a transaction under those circumstances.

Accordingly, because Mr. Zell had no role in the challenged decision, he cannot be liable for a breach of fiduciary duty. *Tri-Star Pictures*, 1995 WL 106520, at * 2. The Committee can have no reaonsable basis to contend otherwise and cannot maintain this claim consistent with Rule 9011.

### 3. Allegations Of An Alter-Ego Theory of Liability.

Finally, the Committee's claim that Mr. Zell is the alter-ego of and liable for EGI-TRB's obligations is well beyond the pale. The Complaint is bereft of any factual allegations that would support a "piercing" theory—because no such facts exist. Rule 9011 requires the Committee to withdraw this wholly unsupported claim.

James Sottile, Esq.
February 28, 2011
Page 4

      Delaware courts will not lightly set aside the corporate form; a party pursuing such a theory must meet stringent legal tests. Meeting those standards under Delaware law "is a difficult task." *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). Under those tests, the Committee must first show a failure to treat EGI-TRB as a separate corporate entity, through a disregard of corporate formalities, undercapitalization, and/or treatment of the entity as a façade. *Mason v. Network of Wilmington, Inc.*, No. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005). The Committee has offered no factual allegations with respect to any of those factors; nor is there any basis to make such allegations.

      Second, the Committee is required to show EGI-TRB was established for an "improper purpose," such as "fraud or similar injustice." *Id.*; *see also La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596, 603 (D. Del. 1971) (piercing corporate veil requires corporate form to be "used as an instrumentality to perpetuate fraud, justify wrong" or commit another injustice). In other words, the Committee must show that EGI-TRB was "an *artifice and a sham* designed to execute illegitimate purposes in the abuse of the corporate function and the immunity that it carries." *Lacoste*, 53 F.R.D. at 603 (emphasis added). The Committee has not and cannot identify any evidence that would allow it to meet this burden and has no plausible basis to make this assertion. EGI-TRB was formed to—and did—invest over $300 million in Tribune, funds which appear to be entirely lost. It is completely baseless to suggest that there is some basis to "pierce" its existence.

                                      \*      \*      \*

      This letter is by no means a complete statement of the defects in the Committee's claims. We expressly reserve all rights and defenses, and nothing stated in or omitted from this letter should be considered a waiver of any of those rights or defenses. In addition, we note that this letter does not address the Committee's preference claim against EGI based on alleged pre-petition payments by Tribune.

      Jim, again with high personal regards, these purported claims have no place in a court of law. We appreciate your considered response.

                                          Sincerely,

                                          David J. Bradford

DJB:fms
cc:    Catherine L. Steege, Esq.
       Douglas A. Sondgeroth, Esq.
       Andrew W. Vail, Esq.