IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------  X
In re:                                             :      Chapter 11 Cases
                                                   :      Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                           :      (Jointly Administered)
                                                   :
                                                   :
                                                   :
                              Debtors.             :      Related Docket No. 8499
                                                   :
-------------------------------------------------  X
```

**NOTEHOLDER PLAN PROPONENTS' OBJECTION TO DCL
PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES AND
CROSS-SUBMISSION FOR CERTAIN RELIEF RESPECTING DCL REBUTTAL CASE**

The Noteholder Plan Proponents,[1] by and through their undersigned counsel, hereby submit this (i) objection to the DCL Plan Proponents'[2] Submission Regarding Rebuttal Witnesses filed on March 25, 2011 (the "DCL Rebuttal Submission"), and (ii) in the alternative and to the extent any rebuttal testimony is permitted, request certain relief as described below (together the "Objection").[3]

## I.    PRELIMINARY STATEMENT

1.    The DCL Plan Proponents should not be permitted to present rebuttal evidence of opinions or facts that could have, and should have, been presented in their week-long case in chief, particularly on topics that DCL witnesses have already addressed (e.g., the merits of the

---

[1] The Noteholder Plan Proponents are Aurelius Capital Management, LP, on behalf of its managed entities (collectively, "Aurelius"), Law Debenture Trust Company of New York, as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (successor to The Times Mirror Company) and Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096 ("Law Debenture"), Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee under certain indentures by and between Tribune ("DBTCA"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust").

[2] The DCL Plan Proponents are the Debtors, the Official Committee of Unsecured Creditors (the "Creditors Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo"), and JPMorgan Chase Bank, N.A. ("JPMorgan").

[3] This pleading does not address FCC matters or the proposed testimony of Mace Rosenstein, which will be addressed in a supplement to be filed by the Noteholder Plan Proponents' FCC counsel (the "FCC Supplement").

1

underlying fraudulent transfer claims, the alleged arms length nature of the negotiations, the expected value of the LBO Causes of Action, and reasonableness of the proposed settlement). Further, with respect to Professor Bernard Black, the request for an additional 1.5 hours of direct testimony is an inappropriate and unfair attempt to escape the Court imposed limit on expert direct testimony, as Professor Black has already provided 2 hours of direct testimony and forty minutes of redirect. In further support of the Opposition, the Noteholder Plan Proponents respectfully state as follows:

## II.    THE DCL PLAN PROPONENTS SHOULD NOT BE PERMITTED TO PRESENT REBUTTAL TESTIMONY THAT SHOULD HAVE BEEN SUBMITTED IN THEIR CASE IN CHIEF

2.    The DCL Plan proponents seek leave to recall Professor Black and David Kurtz to provide further evidence in support of the DCL Plan, purportedly under the guise of a "rebuttal case."

3.    The DCL Plan Proponents should not be permitted to recall these witnesses for these purposes, as this testimony should have been presented in the DCL Plan Proponents' case in chief. In addition to presenting its prima facie case, a party "may reasonably be required to offer, in its initial presentation, its evidence on any other issue which is expected to be important to the outcome of the case and on which it is known that [the other side] intends to produce evidence." *Russo v. Peikes*, 71 F.R.D. 110, 113 (E.D. Penn. 1976); *see also Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764-765 (5th Cir. 1991) ("The potential for unfairness to the opponent and confusion of the issues militates against admitting new or repetitive evidence at the rebuttal stage. When a plaintiff makes its prima facie case, therefore, it also must offer evidence on any other issue of potential importance to the outcome in its case in chief.").

4.    As explained in one Trial Practice treatise:

A party may not as of right, offer rebuttal evidence that could have been introduced in its case-in-chief. . . Although the Court may in its discretion admit such evidence, the court may also decline to do so. This is especially true if the subject was already fully covered. Many Courts will not allow such "rebuttal evidence" unless there is sufficient reason for not introducing it during the case-in-chief. . . .

The more responsible and safer approach is to present as strong a case as possible in your case-in-chief. Do not withhold evidence for the purpose of sandbagging your opponent in rebuttal. Rebuttal evidence should be used to rebut new matters.

*4 Lane Goldstein Trial Technique* § 22.13 (3d ed. 2010). *Accord Wright & Gold*, 28 Fed. Prac. & Proc. Evidence § 6164 (1st ed. 2010) (Fed. Rule of Evidence 611(a) "gives the Court discretion to limit or even preclude rebuttal in order to ensure that the evidence unfolds coherently, without unfair surprise and needless consumption of time;" and the discretion to exclude evidence that could have been offered during the party's case-in-chief is properly exercised to prevent a party from withholding evidence until the defense rests and might be unable to mount an effective response) (citations omitted).

     5.     These concerns are heightened in the bankruptcy context, where expedition in completing a hearing is often of critical importance.[4] In the context of a confirmation hearing, the presentation of rebuttal evidence in further support of a debtor's plan and/or any proposed settlements contained therein is rare, if not unprecedented, and the DCL Plan Proponents cite no case where it was permitted, or in support of their request generally. Further, while the Case Management Order entered in this case (the "CMO") permitted "rebuttal" expert reports, in which the experts commented on the opening reports of their respective counterparts, it did not provide for any rebuttal phase at trial, and the DCL Plan Proponents have already elicited "rebuttal" testimony from one of their experts, Professor Fischel. *See supra* ¶ 9.

---

[4] Indeed, the Court will recall that in November 2010 the Noteholder Plan Proponents filed a pleading seeking to have the confirmation hearing commence in early April, rather than March 7th, to which the DCL Plan Proponents objected on the grounds that any delay would be prejudicial to the Debtors. *See* Reply of Debtors to Objections to Solicitation Motion and In Support of Entry of an Order Imposing Reasonable Limitations on Confirmation-Related Discovery and the Confirmation Hearing (ECF No. 6622 at 18).

6.      Here, with one limited exception (respecting corporate governance under the Noteholder Plan), all of the evidence the DCL Plan Proponents seek to offer goes to elements of DCL *prima facie* case, specifically the strength of the underlying fraudulent transfer claims, the alleged arms length nature of the negotiations, the expected value of the LBO Causes of Action, and reasonableness of the proposed settlement.  These are topics that Messrs. Black and Kurtz, as well other DCL witnesses, have already addressed and could have further addressed during the DCL Plan Proponents' case in chief.   Critically, there was no "surprise" of any sort in the Noteholders' proofs (and none is claimed) as the DCL Plan Proponents were aware prior to the commencement of the trial of all the evidence from the Noteholder Plan Proponents they now seek leave to address in rebuttal.

### A. The DCL Plan Proponents' Request to Call Professor Black to Present Rebuttal Testimony Should be Rejected

7.      The DCL Plan Proponents seek to offer testimony from Professor Bernard Black regarding (i) the decision tree analysis performed by Dr. Bruce Beron and his opinion, based on the Examiner's conclusions of the expected value of the LBO-related causes of action, that the DCL Plan proposes to settle, and (ii) the merits analysis performed by Ralph Tuliano regarding the Debtors' financial condition at the time of Step One and Step Two.   DCL Rebuttal Submission at 2. The request should be denied.[5]

8.      It cannot be seriously disputed that the issues on which the DCL Plan Proponents now seek to present rebuttal testimony from Professor Black are "important to the outcome of [this] case," and that the DCL Plan Proponents were aware, well before they presented their case in chief, that the Noteholder Plan Proponents "intend[ed] to produce evidence" on these issues.

---

[5] The DCL Plan Proponents' request to have Professor Black address corporate governance issues is addressed separately below.

*Russo*, 71 F.R.D. at 113.    Indeed, Dr. Beron's decision tree analysis, and Mr. Tuliano's opinions regarding the Debtors' financial condition in 2007, were disclosed in detail in their respective opening and rebuttal expert reports served on February 8, 9 and 21, 2011 and in their respective depositions.    The opinions they offered at trial did not depart from the disclosures made in their expert reports.[6]    The DCL Plan Proponents were thus fully aware that the Noteholder Plan Proponents intended to present evidence on these issues when their case began.    If the DCL Plan Proponents wished to have Professor Black address such matters, they were obligated to do so during their case in chief.

9.    In fact, Professor Fischel *did* testify at length during the DCL Plan Proponents' case-in-chief as to his criticisms of Mr. Tuliano.    *Trial Tr.* at 1005-06 (Fischel summarizing areas of disagreement with Tuliano); *id.* at 1027-28 (Fischel's criticism of Tuliano's step one opinion); *id.* at 1102-1106 (Fischel's criticism of Tuliano's long term growth rates); *id* at 995-997 (discussing Tuliano's capital adequacy analysis).    Thus, the DCL Plan Proponents already elicited Professor Fischel's "rebuttal testimony," but offer no justification for not similarly eliciting such testimony from Professor Black while he was on the stand.

10.    With respect to Dr. Beron, his testimony during the Noteholders' case-in-chief faithfully tracked the substance of his opinion as disclosed in detail in the Beron opening and rebuttal reports that were made available to the DCL Plan Proponents weeks before Professor Black took the stand.    To the extent the DCL Plan Proponents believed Professor Black had valid criticisms to raise regarding Dr. Beron's opinions, the DCL Plan Proponents should have asked Professor Black about those criticisms during his direct examination.    It is no answer that the

---

[6]    Moreover, the Joint Pretrial Memorandum ("Joint Pretrial Memo") filed by the parties on February 28, 2011 explicitly stated that Dr. Beron would be offering testimony regarding "the probability-weighted expected value of the LBO-Related Causes of Action," and that Mr. Tuliano would be offering testimony regarding "the financial condition of the Debtors at Steps One and Two of the LBO."    Joint Pretrial Memo [ECF No. 8187], p. 7.

DCL Plan proponents wanted to see the outcome of their delayed (and unsuccessful) mid-trial objection to the Beron Report before presenting Professor Black's criticisms. The DCL Plan Proponents' objection could have and should have been made under paragraph 31 of the Case Management Order long before Dr. Beron took the stand; indeed, the Court questioned Committee counsel as to why the objection had not been presented sooner and got no answer (*See* Trial Tr. at 2681:12-22). The DCL Plan Proponents should not now benefit, and have a second opportunity to call Professor Black, simply because they failed to assert their objection to the Beron Report (and learn it would be denied) prior to the commencement of the trial.

11.    Moreover, because the DCL Plan Proponents elected not to present Professor Black's testimony respecting the opinions described in the pretrial expert reports of Messrs. Beron and Tuliano during the DCL case-in-chief, the Noteholders were prevented from having Dr. Beron and Mr. Tuliano address any such criticism during their respective testimony at the trial.

12.    Finally, allowing Professor Black to testify as a rebuttal witness would provide the DCL Plan Proponents with a material unfair advantage, given the strict time limits the Court placed on expert testimony. Here, the DCL Plan Proponents chose to use their two hours of direct (and forty minutes of redirect) with Professor Black solely to offer his *affirmative* opinions, and now seek another 1.5 hours of direct testimony solely to critique the Noteholders' experts. Rebuttal Submission at 3. The Noteholder Plan Proponents, in contrast, were required to and did use their allocated time with Dr. Beron and Mr. Tuliano to provide both their affirmative opinions and their criticisms of DCL experts. *See* Trial Tr. at 2724-25; 2750-51; 2756-58; 2760-61; 2763; 2792-2807; 2813-2820 (Tuliano critique of Fischel); *id.* at 2562:2-2570:17; 2572:20-2576:21 (Beron critique of Black). Permitting the DCL Plan Proponents to

present an hour or more of additional testimony from Professor Black, regarding key matters that the DCL Plan Proponents knew were at issue in this case, would be a clear circumvention of the time limitations by which the Noteholder Plan Proponents have carefully abided.

### B. The DCL Plan Proponents' Request to Call David Kurtz to Present Rebuttal Testimony Should be Rejected

13.    The DCL Plan Proponents also seek leave to recall David Kurtz of Lazard Freres to testify as a purported rebuttal witness concerning (i) settlement discussions with Dan Gropper, (ii) the impact of the Examiner's Report on those discussions, and (iii) the value of various aspects of the settlement included in the DCL Plan. Rebuttal Submission at 2. However, Mr. Kurtz has already had the opportunity to testify, and indeed did testify, regarding each of these subjects, and the request should be denied.

14.    For example, Mr. Kurtz already testified about multiple conversations/meetings with Dan Gropper: one in April 2010 concerning the April Plan (Trial Tr. at 180:8-21), two in August 2010 concerning, *inter alia*, the impact of the Examiner Report on noteholder recoveries (*id.* at 197:17-199:12, 287:23–289:25, 298:3-299:25), and one in September/October 2010 at the mediation (*id.* at 290:9-291:3). Mr. Kurtz also testified at length about the impact of the Examiner Report on the ongoing settlement talks and parties' respective positions (*id.* at 183:2-192:24), the value of/rationale for the various aspects of the proposed DCL settlement (*id.* at 209:22-233:11), and the alleged overall fairness and good faith of the negotiations (*id.* at 234:2-237:23).

15.    Again, no "surprise" is or could be claimed with respect to any of the Noteholders' proofs. To the extent the Debtors simply failed to question Mr. Kurtz while he was on the stand about certain alleged additional details of the above conversations, or about other alleged conversations with Mr. Gropper or other parties in interest, or to the extent Mr. Kurtz has

only now recalled certain alleged conversations after the Debtor rested; it would hardly suffice as a basis to present Mr. Kurtz as a rebuttal witness. Indeed, if Mr. Kurtz is allowed to testify again, so too should Mr. Gropper, and the DCL Plan Proponents thus essentially propose a revolving door of opposing witnesses, each one called to testify further in response to proofs of the adverse party.

### C. The DCL Plan Proponents' Request to Call Professor Black to Present Rebuttal Testimony Concerning the Noteholder Plan Should Also be Rejected

16.     The DCL Plan Proponents also seek leave to have Professor Black provide opinion testimony concerning the Noteholder Plan with respect to corporate governance issues. DCL Rebuttal Submission at 2. While such testimony would technically be offered in opposition to the Noteholder Plan, rather than in further support of the DCL Plan, the DCL Plan Proponents knew the Noteholders were seeking confirmation of their own plan and there is no reason why this testimony likewise could not have been offered during the course of Professor Black's initial foray into the courtroom. Indeed, The DCL Plan Proponents did elicit testimony during its case-in-chief from Eddie Hartenstein criticizing various aspects of the Noteholder Plan (Trial Tr. at 1552:22-1555:24), but have provided no explanation as to why they failed to elicit this type of evidence from Professor Black. Whether the purpose was to evade the 2 hour time limit, or to sandbag the Noteholder Plan Proponents, the evidence should be precluded.

17.     Nevertheless, it is possible that this aspect of the DCL Rebuttal Submission has been mooted by the filing of the Noteholders' Second Amended Joint Plan of Reorganization, and counsel to the Noteholders and DCL Plan Proponents will confer on this matter and advise the Court if the DCL Plan Proponents are still seeking to present Professor Black on this issue.[7]

---

[7]    To the extent the Court permits the DCL Plan Proponents to call Professor Black on corporate governance issues, and to the extent that testimony will include any commentary on Professor Rock's report or testimony, the

### D. Rebuttal Testimony, If Any, Should be Permitted Subject to Certain Limitations

18.     To the extent the Court overrules the Noteholder Plan Proponents' Objection in any respect and allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholder Plan Proponents request that the Court modify paragraph 33 of the CMO and direct that any proposed demonstratives (as well as any proposed exhibit binders) be supplied one week in advance of the hearing and also direct that the direct testimony of each witness be limited to a half hour or less.  Further, in the event the Court permits the DCL Plan Proponents to recall Mr. Kurtz, they should be obligated to make a final decision on whether he will in fact be called no later than April 1, 2011.  Third, in the event the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholder Plan Proponents respectfully request that the hearing begin on April 12th or April 13th, rather than April 11th.  Finally, to the extent the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholders should be given the opportunity to present any appropriate rebuttal testimony as well.

### CONCLUSION

**WHEREFORE**, for all the foregoing reasons, the Noteholder Plan Proponents respectfully request that the Court preclude the DCL Plan Proponents from presenting the proposed rebuttal testimony from Mr. Kurtz and from Professor Black.  To the extent that such testimony is permitted, the Noteholder Plan Proponents respectfully request that the Court grant the additional relief requested in Section II.D above.

---

Noteholder Plan Proponents have asked the Debtors to make Professor Black available for a short deposition, given that Professor Rock's expert report was issued after Professor Black was deposed and thus Professor Black was not questioned respecting the Rock report.  Counsel for the Debtors and Aurelius have agreed to confer respecting this issue as well.

New York, New York
March 29, 2010

ASHBY & GEDDES, P.A.

By: */s/ William P. Bowden*_____
    William P. Bowden (I.D. No. 2553)
    Amanda M. Winfree (I.D. No. 4615)
    500 Delaware Avenue
    P.O. Box 1150
    Wilmington, DE 19899
    (302) 654-1888

-and-

AKIN GUMP STRAUSS HAUER & FELD LLP

    Daniel H. Golden
    David M. Zensky
    Abid Qureshi
    Mitchell P. Hurley
    Deborah J. Newman
    One Bryant Park
    New York, New York 10036
    (212) 872-1000

    *Counsel to Aurelius Capital Management, LP*

BIFFERATO GENTILOTTI

    */s/ Garvan F. McDaniel*_____
    Garvan F. McDaniel
    800 N. King St., Plaza Level
    Wilmington, DE 19801
    (302) 429-1900

    - and -

    David S. Rosner
    Andrew K. Glenn
    Sheron Korpus
    Kasowitz, Benson, Torres & Friedman LLP
    1633 Broadway
    New York, New York 10019

(212) 506-1700

*Co-Counsel for Law Debenture Trust Company of New York*

**SULLIVAN HAZELTINE ALLINSON LLC**

*/s/ William D. Sullivan_____*
William D. Sullivan (Del. Bar No. 2820)
Elihu E. Allinson (Del. Bar No. 3476)
901 Market Street, Suite 1300,
Wilmington, DE 19801
Telephone:  (302) 428-8191
Facsimile: (302) 428-4195

-and-

**BROWN RUDNICK LLP**
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Katherine S. Bromberg
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*

**McCARTER & ENGLISH, LLP**

/s/ Katharine L. Mayer
Katharine L. Mayer (DE # 3758)
405 N. King Street, 8th Floor
P.O. Box 111
Wilmington, DE 19899
Telephone: (302) 984-6300

-and-

David Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6847

*Counsel to Deutsche Bank Trust Company
Americas*