# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: April 11, 2011<br>Related to Docket Nos. 7136, 7239, 7701, 7801, 7802,<br>8171, 8173, 8231, 8259, 8283, 8315, 8499, 8519 and 8525 |

## DCL PLAN PROPONENTS' RESPONSE TO THE NOTEHOLDER PLAN PROPONENTS' OBJECTION TO THE DCL PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES

The Debtors, the Official Committee of Unsecured Creditors (the "Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPM"), and together with the Debtors, Committee, Oaktree, and Angelo Gordon, the "DCL Plan Proponents") hereby provide this response to the Noteholders'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-7492887V1

March 29, 2011 Objection ("Objection") to the DCL Plan Proponents' March 25, 2011 Submission ("Submission") regarding the rebuttal case.

The Objection seeks to prevent the development of a full record on which the Court may consider the two competing Plans. The DCL Plan Proponents seek confirmation of their Plan of Reorganization, and their direct case was designed to present the Court with evidentiary support to demonstrate that their Plan, and, more specifically, the settlement of the LBO-Related Causes of Action that is encompassed within that Plan, is fair and reasonable to all creditors and consistent with the determinations of the Examiner. The Noteholders, by virtue of having gone second, were able to present evidence in support of their competing Plan (in which none of the LBO-Related Causes of Action are settled), as well as evidence rebutting the evidence presented by the DCL Plan Proponents. Fundamental fairness thus requires that the DCL Plan Proponents be afforded the same opportunity to rebut the live testimony presented by the Noteholders in their direct case with live testimony.

Further, the testimony that the DCL Plan Proponents seek to elicit as part of their rebuttal case is plainly rebuttal testimony. As disclosed in the Submission, the testimony responds directly to the evidence presented by the Noteholders in their direct case through Mr. Prak, Dr. Beron, Mr. Tuliano and Professor Rock. Moreover, it is simply not credible to assert, as the Noteholders have, that the DCL Plan Proponents were required, as part of their direct case, to anticipatorily rebut testimony that had not yet been elicited.

There is likewise no merit to the Noteholders' claims of surprise concerning the DCL Plan Proponents' plan to present rebuttal testimony. The Case Management Order ("CMO") negotiated by the parties expressly provided for the submission of rebuttal reports, and each of the DCL Plan Proponents' experts timely submitted such reports. Moreover, the DCL Plan Proponents have consistently and expressly indicated their intention to call rebuttal witnesses if

46429/0001-7492887V1

necessary. *See, e.g.*, Transcript of Proceedings, February 25, 2011, at 20-22, 24; *see also* p. 7, nn. 3-4, *infra*. Indeed, it was only at the end of the very last day of the Confirmation Hearing that the Noteholders first complained about the DCL Plan Proponents' intention to present a rebuttal case. *See* Transcript of Proceedings, March 18, 2011, at 3010-12. Nor can the Noteholders claim surprise as to the substance of the proposed rebuttal testimony: as set forth in the Submission, Mr. Rosenstein's and Professor Black's proposed areas of testimony are described in their respective rebuttal expert reports, and their testimony will respond directly to certain of the points made by Mr. Prak, Dr. Beron, Mr. Tuliano and Professor Rock during the Noteholders' direct case. Similarly, Mr. Kurtz will respond directly to testimony from Mr. Gropper concerning certain conversations and other matters relating to the settlement process.

Similarly groundless are the Noteholders' complaints that the rebuttal case will take too much time. As noted in the Submission, the DCL Plan Proponents have requested only three hours to present their rebuttal case. Additionally, the DCL Plan Proponents are not attempting to "circumvent" the time limits imposed with respect to expert testimony, since the time limits were to be applied per appearance by an expert and not as an overall limit on the amount of time an expert could testify in the case. It also is noteworthy that, even taking the three hours of proposed rebuttal testimony into account, the DCL Plan Proponents will remain comfortably within the 30 hour estimate they provided the Court at the beginning of the case.

In short, the Noteholders' Objection is a thinly-veiled attempt to prevent the Court from hearing all relevant evidence concerning the deficiencies in the Noteholders' Plan. The Objection should therefore be denied.

# ARGUMENT

## I. THE DCL PLAN PROPONENTS' REBUTTAL TESTIMONY IS PROPER AND SHOULD BE PERMITTED.

Federal Rule of Evidence 611(a) clearly permits rebuttal testimony of the sort contemplated here. As the Noteholders' own authority makes clear, while a court may exclude evidence under the Federal Rules of Evidence for reasons such as unfair prejudice or undue consumption of time, a court "obviously does not have Rule 611(a) discretion to exclude on the grounds the evidence should have been offered during the case-in-chief." 28 Charles Allan Wright & Victor James Gold, Federal Practice and Procedure § 6164(a) (1st ed. 2010) (cited at Objection at 3). In fact, the Third Circuit has long held that "[w]here ... [the] evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal." *National Surety Corp. v. Heinbokel*, 154 F.2d 266, 268 (3d Cir. 1946); *see also Zurich v. Wehr*, 163 F.2d 791 (3d Cir. 1947) (agreeing with *Friend v. Commissioner of Internal Revenue*, 102 F.2d 153, 155 (7th Cir. 1939) that "'[t]he fact that [rebuttal testimony that contradicted the respondent's witnesses] might have been offered in chief did not preclude its admission in rebuttal.'"). Further, and contrary to the Noteholders' assertions, a party is under no obligation to anticipate or to negate a defense theory in its case-in-chief. *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981) (holding it was an abuse of discretion to limit rebuttal testimony) (*citing Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 458-59 (2d Cir. 1975); *Gossett v. Weyerhaeuser Co.*, 856 F.2d 1154, 1157 n.3 (8th Cir. 1988) ("A plaintiff is not obligated to anticipate and negate in its own case in chief any facts or theories that may be raised on defense.") (*citing Martin* and *Weiss*); *Rodriguez v. Olin Corp.*, 780 F.2d 491, 496 (5th Cir. 1986) ("[A] plaintiff's [sic] has the right to adduce whatever evidence is necessary to establish its prima facie case and is under no obligation to anticipate and negate in its own case in chief any

4

facts or theories that may be raised on defense.") (*citing* same). As discussed in more detail below, the rebuttal testimony set forth in the Submission is plainly proper rebuttal and should be allowed.

### A. The Proposed Rebuttal Testimony Of Mr. Rosenstein Is Proper

The Noteholders' attempt to preclude the testimony of Mr. Rosenstein is particularly inappropriate. Following the entry of the CMO, the parties reached a stipulation concerning expert witnesses who would testify on FCC-related matters. The stipulation called for Mr. Prak to submit his expert report first, followed by an expert report from Mr. Rosenstein one week later. Likewise, Mr. Prak was deposed first and Mr. Rosenstein's deposition followed. Consistent with this order, the DCL Plan Proponents reasonably anticipated that Mr. Prak would testify at trial first and that Mr. Rosenstein would testify thereafter. Now that Mr. Prak has testified and provided the Court with his opinions as to the potential FCC issues in connection with the DCL Plan, Mr. Rosenstein should be allowed to testify concerning the opinions set forth in his expert report regarding these same issues.

Further, there is absolutely no merit to the Noteholders' assertion that Mr. Rosenstein should be precluded from addressing FCC matters as they relate to the Noteholders' Plan because the DCL Plan Proponents objected to Mr. Prak addressing such matters at the hearing. In stark contrast to the Noteholders' approach, Mr. Rosenstein's opinions regarding these matters were fully set forth in his expert report and were explored in detail by the Noteholders at Mr. Rosenstein's deposition. The Noteholders, on the other hand, made a tactical decision to limit Mr. Prak's review to the DCL Plan only and advised him not to opine on the Noteholders' Plan at his deposition for the same reasons. *See* Prak Dep., March 2, 2011, at 160:25-161:5, 162:3-14, 163:10-164:4, 165:9-170:23. Having studiously avoided setting forth any opinions about the Noteholders' Plan in either his expert report or during his deposition, the DCL Plan Proponents

5

quite properly objected to Mr. Prak's opining on these matters for the first time during redirect at the Confirmation Hearing. *See* Transcript of Proceedings, March 17, 2011, at 2483-87.

Moreover, Mr. Rosenstein's testimony regarding the FCC issues raised by the Noteholders' Plan is proper rebuttal in that it addresses the credibility of Mr. Prak's assertions that the DCL Plan will face significant and unique issues in achieving FCC approval. As Mr. Rosenstein will testify, the issues that Mr. Prak has identified as to the DCL Plan apply with equal force to the Noteholders' Plan so that the Noteholders' Plan will face the same potential hurdles at the FCC as Mr. Prak claims to foresee for the DCL Plan. Consequently, the fact that neither the Noteholders nor Mr. Prak acknowledged this point as part of their direct case calls directly into question the credibility of Mr. Prak's contention that the DCL Plan will face significant and unique obstacles in obtaining FCC approval.

Finally, at the end of the Noteholders' direct case the Court made a comment regarding the potential significance of the FCC issues. *See* Transcript of Proceedings, March 18, 2011, at 3016. This comment only serves to further underscore the importance of permitting Mr. Rosenstein to testify fully as to these matters.

### B. The Proposed Rebuttal Testimony of Professor Black Is Proper

As set forth in the Submission, Professor Black will be called to address and rebut the direct testimony of Dr. Beron, Mr. Tuliano and Professor Rock. This testimony is not being offered as part of the DCL Plan Proponents' direct case, but is being offered to rebut testimony in support of the Noteholders' arguments that the settlement embodied in the DCL Plan Proponents' Plan is not reasonable and that, as a consequence, the Noteholders' Plan (which settles none of the LBO-Related Causes of Action) should be approved. As explained below, there is no basis to preclude or limit the testimony of Professor Black rebutting the points raised by each of these three witnesses.

46429/0001-7492887V1

### 1. Dr. Beron

Dr. Beron testified on direct that, based on his mechanical decision-tree analysis, the value of the LBO-Related Causes of Action was significantly higher than the settlement embodied in the DCL Plan. This testimony was presented in support of the Noteholder Plan, which preserves for future litigation each of the LBO-Related Causes of Action that the DCL Plan would settle.

The Noteholders' attempt to prevent Professor Black from responding to this testimony is nothing but an improper attempt to relitigate their previously-filed and -denied Motion to Exclude the Testimony of Professor Black, Mr. Goldin and Mr. Prager (the "Motion to Exclude"). In the Motion to Exclude, the Noteholders asserted that "Professor Black, Mr. Goldin and Mr. Prager are each proffered to testify about the same subjects – *rebutting* the Noteholder Plan Proponents' decision-tree expert, *Dr. Bruce Beron*" and complained that, "*in rebutting Dr. Beron*, all three address the exact same issues and make the exact same arguments."[2] In their response to that motion, the DCL Plan Proponents made clear that the testimony of these three individuals would indeed be offered to rebut the anticipated testimony of Dr. Beron but pointed out that the Noteholders had not carried their burden of showing that the testimony would be so unduly cumulative as to warrant exclusion under Federal Rule of Evidence 403.[3] By the time of the hearing on the Motion to Exclude, the Noteholders had essentially abandoned any effort to preclude the rebuttal testimony of Professor Black and focused instead on trying to preclude the

---

[2] *See* Supplement to the Noteholders' Motion In Limine To Exclude The Expert Testimony Of John Chachas, Suneel Mandava and David Kurtz (Dkt. No. 8167) at 3 (emphasis added).

[3] *See* Debtor/Committee/Lender Plan Proponents' Objection to the Motion In Limine To Exclude The Rebuttal Expert Report Of Professor Bernard Black, Harrison Goldin and David Prager Under FRE 403 Subsumed in the Supplement to the Noteholders' Motion In Limine To Exclude The Expert Testimony Of John Chachas, Suneel Mandava and David Kurtz (Dkt. No. 8193) at 1 ("the Noteholders seek to shield from exposure the fundamental flaws in Dr. Beron's decision tree by asking the Court *to exclude the rebuttal expert testimony of Professor Bernard Black*, Harrison Goldin and David Prager under Rule 403 on the grounds that the testimony is duplicative. As explained in detail below, however, the Noteholders have not carried their burden under the Rule")(emphasis added).

7

testimony of Messrs. Goldin and Prager.[4] Nonetheless, understanding that the DCL Plan Proponents were offering the testimony of Professors Black and Messrs. Goldin and Prager to rebut the testimony of Dr. Beron, the Court denied the Motion to Exclude in its entirety.

Since the hearing on the Motion to Exclude, and after having an opportunity to consider the evidence presented by the Noteholders during their case in chief and in furtherance of the interests of efficiency and judicial economy, the DCL Plan Proponents have determined that they only need to offer in rebuttal the testimony of Professor Black. However, neither this streamlining of the DCL Plan Proponents' rebuttal case, nor any of the arguments raised by the Noteholders in their Objection, warrants revisiting the Court's prior ruling and now excluding Professor Black's rebuttal testimony. Nor is there any basis for the Noteholders to claim any "surprise" as to the substance of Professor Black's testimony: as noted, the areas of Professor Black's disagreement with Dr. Beron's analysis are set forth in detail in his rebuttal expert report.

Finally, the claim that the DCL Plan Proponents should have presented Professor Black's rebuttal testimony during their direct case is particularly misplaced given that the DCL Plan Proponents sought to exclude Dr. Beron's testimony on the grounds that it was not proper under Federal Rule of Evidence 702. *See* Transcript of Proceedings, March 17, 2011, at 2679-88. Although that motion was unsuccessful, it would not have been appropriate for the DCL Plan Proponents to have elicited "rebuttal" testimony responding to Dr. Beron's anticipated testimony in their direct case, given the possibility that they might move to exclude Dr. Beron's testimony

---

[4] At the hearing, Mr. Zensky stated: "With respect to the motion on Black, Your Honor, I think the arguments are pretty well set forth in our papers. You know, to – to the extent Professor Black is qualified to do solvency analyses, we have no objection. Obviously, we've offered an expert on that matter as well. To the extent [Professor Black] is qualified to perform modeling or decision tree analysis, which he has attempted to do in his papers, we have no objection that. ... But we have the same issue as to whether, in rebuttal, Golden [sic] and Prager should be permitted to give the identical opinion that Professor Black wants to give as to the alleged flaws in the noteholders decision tree expert report." Transcript of Proceedings, March 2, 2011 at 20-23 (Dkt. No. 8261).

46429/0001-7492887V1

and the reality that if that motion had succeeded, there would have been no testimony by Dr. Beron in the record to rebut.

### 2. Mr. Tuliano

Mr. Tuliano testified on direct that, among other things, the Examiner incorrectly analyzed Debtors' solvency, especially at the time of Step One Transactions -- an issue that bears on the reasonableness of the settlement of the LBO-Related Causes of Action. Like Dr. Beron's testimony, Mr. Tuliano's testimony was presented in support of the Noteholders' Plan which preserves all claims relating to the Step One Transactions.

The proposed rebuttal testimony of Professor Black squarely addresses this testimony and will be of benefit to the Court as it determines whether to approve the DCL Plan, which incorporates a settlement of those claims, or the Noteholders' Plan, which does not. Moreover, there is no "surprise" here – the areas of disagreement between Professor Black and Mr. Tuliano are set forth in detail in Professor Black's rebuttal report.[5] The Court therefore should allow Professor Black to testify in order to obtain the benefits of his perspective and to permit the development of a full record on the Step One solvency issue.

### 3. Professor Rock

The Noteholders' effort to prevent Professor Black from rebutting Professor Rock's testimony is without merit. Professor Rock submitted his expert report and was deposed by the DCL Plan Proponents only *after* Professor Black had finished his testimony and left the stand. Professor Black thus did not have an opportunity to address the points presented by Professor

---

[5] The Noteholders note that the DCL Plan Proponents elicited Professor Fischel's views of Mr. Tuliano's opinions during their direct case and claim that this is a basis to prevent the DCL Plan Proponents from presenting rebuttal testimony from Professor Black. But the decision to elicit such testimony is hardly surprising given the fact that each expert was addressing precisely the same issue – i.e., the solvency of Tribune at Step One and Step Two, and there was no question that each was competent to offer opinions on that topic. In that regard, the vast majority of Mr. Tuliano's rebuttal report addressed Mr. Tuliano's disagreements with Professor Fischel's analysis, and *vice-versa*. The extent of overlap between the areas addressed by Professor Black and Mr. Tuliano, by contrast, is considerably narrower, and, thus explains the difference in approach.

9

Rock in his live testimony. In addition, the Noteholders have amended their Plan in several ways since Professor Black testified, thereby heightening the need for his rebuttal testimony, not reducing it. Consequently, the Noteholders' efforts to prevent the Court from hearing the rebuttal testimony of Professor Black should be rejected.[6]

### C. The Proposed Rebuttal Testimony Of Mr. Kurtz Is Proper

Finally, the Noteholders fail to identify any legitimate basis to exclude the rebuttal testimony of Mr. Kurtz. Mr. Kurtz's proposed testimony would rebut fact testimony presented by Mr. Gropper during the Noteholders' case in chief. Since Mr. Gropper was a fact witness, and therefore filed no expert report, Mr. Kurtz obviously was not in a position to rebut Mr. Gropper's testimony until after Mr. Gropper testified. Further, the Noteholders have cited no authority for the proposition that Mr. Kurtz was required to somehow divine what Mr. Gropper was going to testify to and anticipatorily rebut that testimony during his direct testimony several days earlier. Indeed, as set forth above, the case law is squarely to the contrary.

## II. THE NOTEHOLDERS HAVE IDENTIFIED NO LEGITIMATE BASIS FOR THE PROPOSED "LIMITATIONS" ON THE REBUTTAL CASE OF THE DCL PLAN PROPONENTS AND THE COURT SHOULD DECLINE TO IMPOSE THEM

The Noteholders argue that, in the event the Court allows the DCL Plan Proponents to present their rebuttal case, the Court should grant the Noteholders affirmative relief in a number of respects. Because the Noteholders have not identified any legitimate basis for granting this affirmative relief, it should be denied.

---

[6] The Noteholders have requested an additional deposition of Professor Black concerning his opinions regarding Professor Rock. As this Court has determined, however, the time for discovery has concluded. *See* Transcript of Proceedings, March 8, 2011, at 127-28 Moreover, Professor Rock's testimony is in direct rebuttal to Professor Black, whose opinions were fully disclosed in Professor Black's rebuttal expert report. The Noteholders have already deposed Professor Black for a day and half, longer than any other witness in the case, and had his rebuttal report when they did so. Accordingly, the DCL Plan Proponents believe that the Noteholders' request should be denied. However, in the event that the Court believes it appropriate to allow a further deposition of Professor Black, that deposition should be limited solely to the aspects of his rebuttal report relating to Professor Rock, and should not exceed two hours.

10

46429/0001-7492887V1

*First*, the Noteholders contend that, "in the event the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness," the Court should order that "the hearing begin on April 12th or April 13th, rather than April 11." (Objection at 9). This is a *non-sequitur*. Allowing the DCL Plan Proponents to proceed with their rebuttal case is obviously not a reason for changing the April 11 hearing date. This is especially so since the April 11 start date was discussed on a number of occasions by the parties and no objection to commencing the rebuttal case on that date was raised with the Court.

*Second*, the Noteholders provide no reason why the Court should order the DCL Plan Proponents to provide them with the demonstrative exhibits and exhibit binders a week in advance of the hearing date (*Id.*). The procedure for exchanging demonstratives was negotiated by the parties in the CMO, and worked reasonably well during the direct case. The Noteholders have not offered any reason for deviating from that procedure and the DCL Plan Proponents are not aware of any need for the increased notice now advocated by the Noteholders.[7]

*Third*, the Noteholders provide no basis for limiting the testimony of each witness to thirty minutes or less. (*Id.*). As noted above, the DCL Plan Proponents are not attempting to "circumvent" the time limits imposed with respect to expert testimony, since the time limits were to be applied per appearance by an expert and not as an overall limit on the amount of time an expert could testify in the case. Moreover, even taking the three hours of proposed rebuttal testimony into account, the DCL Plan Proponents will remain comfortably within the thirty hour estimate they provided to the Court at the beginning of the case.

---

[7] The Noteholders also have not come forward with any reason why the Court should order the DCL Plan Proponents to identify by April 1 – a mere three days after the Noteholders filed their objection and 10 days prior to the scheduled hearing date – whether they intend to call Mr. Kurtz as part of their rebuttal case. (*Id.*). The DCL Plan Proponents have the matter under consideration and will inform the Noteholders of their decision by April 6, well in advance of the scheduled hearing date.

11

*Finally*, the Noteholders state that "to the extent the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholders should be given the opportunity to present any appropriate rebuttal testimony as well" (*Id.*). This statement is both puzzling and improper. As noted above, the Noteholders already had the opportunity to present rebuttal testimony by virtue of the fact that they presented their case after the DCL Plan Proponents had presented their direct case. In essence, what the Noteholders are really seeking is the right to present a sur-rebuttal case. If that is their intention, they should provide the Court with a submission identifying each sur-rebuttal witness they wish to call, the nature of the testimony they intend to elicit from each such witness and the amount of time they estimate each such witness will need to provide the proposed sur-rebuttal testimony. Only after such a submission has been made will the Court and the DCL Plan Proponents be in a position to evaluate the Noteholders' request.

46429/0001-7492887V1

## CONCLUSION

For the reasons set forth above and in the Submission, the Court should reject the Noteholders' Objection and permit the DCL Plan Proponents to present their rebuttal case as described in the Submission.

Dated: March 31, 2011

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>James F. Conlan<br>James W. Ducayet<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-0199<br>Facsimile: (312) 853-7036<br><br>SIDLEY AUSTIN LLP<br>James F. Bendernagel, Jr.<br>David M. Miles<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 736-8000<br>Facsimile: (202) 736-8711 | COLE, SCHOTZ, MEISEL,<br>FORMAN & LEONARD, P.A.<br><br>By: /s/ J. Kate Stickles<br>Norman L. Pernick (No. 2290)<br>J. Kate Stickles (No. 2917)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Telephone: (302) 652-3131<br>Facsimile: (302) 652-3117 |

Counsel for Debtors and Debtors In Possession

| | |
|---|---|
| CHADBOURNE & PARKE LLP<br>Howard Seife<br>David M. LeMay<br>Thomas J. McCormack<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Telephone: (212) 408-5100<br>Facsimile: (212) 541-5369 | LANDIS RATH & COBB LLP<br><br>By: /s/ Matthew B. McGuire<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>919 Market Street, Suite 1800<br>Wilmington, DE 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450 |

Counsel for the Official Committee of Unsecured Creditors

| | |
|---|---|
| ZUCKERMAN SPAEDER LLP<br>Graeme W. Bush<br>James Sottile<br>1800 M Street, N.W., Suite 1000<br>Washington, D.C. 20036<br>Telephone: (202) 778-1800<br>Facsimile: (202) 822-8106 | ZUCKERMAN SPAEDER LLP<br>Thomas G. Macauley<br>919 Market Street, Ste 990<br>P.O. Box 1028<br>Wilmington, DE 19899<br>Telephone: (302) 427-0400<br>Facsimile: (302) 427-8242 |

Special Counsel to the Official Committee of Unsecured Creditors

46429/0001-7492887V1

| | |
|---|---|
| DAVIS POLK & WARDWELL LLP<br>Donald S. Bernstein<br>Benjamin S. Kaminetzky<br>Damian Schaible<br>Elliot Moskowitz<br>450 Lexington Avenue<br>New York, NY 10017<br>Telephone: (212) 450-4500<br>Facsimile: (212) 701-5800 | RICHARDS, LAYTON & FINGER, P.A.<br><br>By: /s/ Drew G. Sloan<br>Mark D. Collins (No. 2981)<br>Robert J. Stearn, Jr. (No. 2915)<br>Drew G. Sloan (No. 5069)<br>One Rodney Square, 920 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651 7701 |

Counsel for JPMorgan Chase Bank, N.A.

WILMER CUTLER PICKERING
HALE & DORR LLP
Andrew N. Goldman
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 220-8888

Counsel for Angelo, Gordon & Co., L.P.

| | |
|---|---|
| DEWEY & LEBOEUF LLP<br>Bruce Bennett<br>James O. Johnston<br>Joshua M. Mester<br>333 South Grand Avenue, Suite 2600<br>Los Angeles, CA 90071<br>Telephone: (213) 621-6000<br>Facsimile: (213) 621-6100 | YOUNG CONAWAY<br>STARGATT & TAYLOR, LLP<br><br>By: /s/ Robert S. Brady<br>Robert S. Brady (No. 2847)<br>M. Blake Cleary (No. 3614)<br>The Brandywine Building – 17th Floor<br>1000 West Street, P.O. Box 391<br>Wilmington, DE 19899<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253 |

Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.