# SUBMISSION REGARDING REBUTTAL WITNESSES

## [D.I. 8499]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 11, 2011**<br>**Related to Docket Nos. 7136, 7239, 7701, 7801, 7802 and**<br>**8171, 8231, 8259, 8283 and 8315** |

## SUBMISSION REGARDING REBUTTAL WITNESSES

The Debtors, the Official Committee of Unsecured Creditors (the "Committee"), Oaktree

Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and

JPMorgan Chase Bank, N.A. ("JPM", and together with the Debtors, Committee, Oaktree, and

Angelo Gordon, the "DCL Plan Proponents") hereby provide this submission regarding rebuttal

witnesses in response to the Court's request at the end of the hearing on Friday, March 18, 2011

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

-7475154V

that the parties provide the Court with additional information regarding their rebuttal case. At that time, the DCL Plan Proponents noted that they did not expect that their rebuttal case would take more than two (2) days to complete and that they only expected to call two witnesses.

Based on further review, the DCL Plan Proponents continue to believe that their rebuttal case can be completed in two (2) days or less. The DCL Plan Proponents currently intend to call Mace Rosenstein and Professor Bernard S. Black to address the matters set forth in their respective rebuttal reports previously served on the Noteholder Plan Proponents. In addition, the DCL Plan Proponents may call David Kurtz. For the Court's convenience, set forth below is a more detailed description of the matters that these witnesses are expected to address:

1) <u>Mace Rosenstein, Partner, Covington & Burling L.L.P.</u> The DCL Plan Proponents intend to call Mr. Rosenstein as an expert witness in their rebuttal case. The principal areas of Mr. Rosenstein's testimony are anticipated to generally include rebuttal of the expert testimony of Mark Prak concerning alleged violations of the FCC's ownership rules under the DCL Plan and alleged complications and delays in the FCC's consideration of the Debtors' FCC applications under the Debtor/Committee/Lender Plan, and application of these issues under the Noteholder Plan.

2) <u>Professor Bernard S. Black.</u> The DCL Plan Proponents intend to call Professor Black as an expert witness in their rebuttal case. The principal areas of Professor Black's testimony are as follows: First, Professor Black will address the testimony and report of Dr. Bruce Beron and his use of a decision tree analysis to analyze expected values for the LBO-related causes of action. In this regard, Professor Black will identify and discuss various flaws in Dr. Beron's analysis. Second, Professor Black will address Mr. Ralph S. Tuliano's testimony and report regarding Mr. Tuliano's analysis of Tribune's financial condition in 2007. In this connection, he will point out certain flaws in Mr. Tuliano's analysis, particularly as they relate to his opinions regarding solvency following the Step One transactions. Third, Professor Black will discuss various aspects of the Noteholders' Plan with respect to governance issues, including those addressed by their expert, Professor Edward B. Rock.

3) <u>David Kurtz:</u> The DCL Plan Proponents may call David Kurtz of Lazard Frères. If he testifies, Mr. Kurtz is expected to address certain statements made by the Noteholders' witness Mr. Gropper regarding the parties' discussions regarding settlement of the LBO-related claims as well as the impact of the Examiner's Report on those discussions. Mr. Kurtz may also address Mr. Gropper's claim regarding the value of various aspects of the settlement included in the DCL Plan.

The DCL Plan Proponents estimate that the direct testimony of the aforementioned witnesses will take 2 to 3 hours to complete. More specifically, Mr. Rosenstein's testimony is expected be less than an hour; Professor Black's testimony will be less than 1 ½ hours and Mr. Kurtz's testimony will be less than ½ hour. In total, the DCL Plan Proponents have used 24 hours and 50 minutes of court time to date. Assuming that the rebuttal case takes 3 hours to complete, the total time used will be less than the 30 hour estimate previously provided to the Court.

Dated: March 25, 2011

SIDLEY AUSTIN LLP
James F. Conlan
James W. Ducayet
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-0199
Facsimile: (312) 853-7036

SIDLEY AUSTIN LLP
James F. Bendernagel, Jr.
Ronald S. Flagg
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors In Possession

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
Thomas J. McCormack
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

LANDIS RATH & COBB LLP

By: */s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Counsel for the Official Committee of Unsecured Creditors

-7475154V

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

ZUCKERMAN SPAEDER LLP
Thomas G. Macauley
919 Market Street, Ste 990
P.O. Box 1028
Wilmington, DE 19899
Telephone: (302) 427-0400
Facsimile: (302) 427-8242

Special Counsel to the Official Committee of Unsecured Creditors

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4500
Facsimile: (212) 701-5800

RICHARDS, LAYTON & FINGER, P.A.

By: _/s/ Drew G. Sloan_____
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square, 920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651 7701

Counsel for JPMorgan Chase Bank, N.A.

WILMER CUTLER PICKERING
HALE & DORR LLP
Andrew N. Goldman
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 220-8888

Counsel for Angelo, Gordon & Co., L.P.

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

By: _/s/ M. Blake Cleary_____
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, P.O. Box 391
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.

# NOTEHOLDER PLAN PROPONENTS' OBJECTION TO DCL PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES AND CROSS-SUBMISSION FOR CERTAIN RELIEF RESPECTING DCL REBUTTAL CASE

## [D.I. 8519]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------- X

In re:                                    : **Chapter 11 Cases**
                                          : **Case No. 08-13141 (KJC)**
**TRIBUNE COMPANY, et al.,**               : **(Jointly Administered)**
                                          :
                                          :
                                          :
                       **Debtors.**        :     Related Docket No. 8499
---------------------------------------------------- X

**NOTEHOLDER PLAN PROPONENTS' OBJECTION TO DCL**
**PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES AND**
**CROSS-SUBMISSION FOR CERTAIN RELIEF RESPECTING DCL REBUTTAL CASE**

The Noteholder Plan Proponents,[1] by and through their undersigned counsel, hereby

submit this (i) objection to the DCL Plan Proponents'[2] Submission Regarding Rebuttal Witnesses

filed on March 25, 2011 (the "DCL Rebuttal Submission"), and (ii) in the alternative and to the

extent any rebuttal testimony is permitted, request certain relief as described below (together the

"Objection").[3]

##### I.     PRELIMINARY STATEMENT

1.     The DCL Plan Proponents should not be permitted to present rebuttal evidence of

opinions or facts that could have, and should have, been presented in their week-long case in

chief, particularly on topics that DCL witnesses have already addressed (e.g., the merits of the

---

[1] The Noteholder Plan Proponents are Aurelius Capital Management, LP, on behalf of its managed entities (collectively, "Aurelius"), Law Debenture Trust Company of New York, as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (successor to The Times Mirror Company) and Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096 ("Law Debenture"), Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee under certain indentures by and between Tribune ("DBTCA"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust").

[2] The DCL Plan Proponents are the Debtors, the Official Committee of Unsecured Creditors (the "Creditors Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo"), and JPMorgan Chase Bank, N.A. ("JPMorgan").

[3] This pleading does not address FCC matters or the proposed testimony of Mace Rosenstein, which will be addressed in a supplement to be filed by the Noteholder Plan Proponents' FCC counsel (the "FCC Supplement").

1

DKT. NO. 8519
DT FILED 3-29-11


underlying fraudulent transfer claims, the alleged arms length nature of the negotiations, the expected value of the LBO Causes of Action, and reasonableness of the proposed settlement). Further, with respect to Professor Bernard Black, the request for an additional 1.5 hours of direct testimony is an inappropriate and unfair attempt to escape the Court imposed limit on expert direct testimony, as Professor Black has already provided 2 hours of direct testimony and forty minutes of redirect. In further support of the Opposition, the Noteholder Plan Proponents respectfully state as follows:

## II. THE DCL PLAN PROPONENTS SHOULD NOT BE PERMITTED TO PRESENT REBUTTAL TESTIMONY THAT SHOULD HAVE BEEN SUBMITTED IN THEIR CASE IN CHIEF

2.     The DCL Plan proponents seek leave to recall Professor Black and David Kurtz to provide further evidence in support of the DCL Plan, purportedly under the guise of a "rebuttal case."

3.     The DCL Plan Proponents should not be permitted to recall these witnesses for these purposes, as this testimony should have been presented in the DCL Plan Proponents' case in chief. In addition to presenting its prima facie case, a party "may reasonably be required to offer, in its initial presentation, its evidence on any other issue which is expected to be important to the outcome of the case and on which it is known that [the other side] intends to produce evidence." *Russo v. Peikes*, 71 F.R.D. 110, 113 (E.D. Penn. 1976); *see also Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764-765 (5th Cir. 1991) ("The potential for unfairness to the opponent and confusion of the issues militates against admitting new or repetitive evidence at the rebuttal stage. When a plaintiff makes its prima facie case, therefore, it also must offer evidence on any other issue of potential importance to the outcome in its case in chief.").

4.     As explained in one Trial Practice treatise:

A party may not as of right, offer rebuttal evidence that could have been introduced in its case-in-chief. . . Although the Court may in its discretion admit such evidence, the court may also decline to do so. This is especially true if the subject was already fully covered. Many Courts will not allow such "rebuttal evidence" unless there is sufficient reason for not introducing it during the case-in-chief. . . .

The more responsible and safer approach is to present as strong a case as possible in your case-in-chief. Do not withhold evidence for the purpose of sandbagging your opponent in rebuttal. Rebuttal evidence should be used to rebut new matters.

*4 Lane Goldstein Trial Technique* § 22.13 (3d ed. 2010). *Accord Wright & Gold*, 28 Fed. Prac. & Proc. Evidence § 6164 (1st ed. 2010) (Fed. Rule of Evidence 611(a) "gives the Court discretion to limit or even preclude rebuttal in order to ensure that the evidence unfolds coherently, without unfair surprise and needless consumption of time;" and the discretion to exclude evidence that could have been offered during the party's case-in-chief is properly exercised to prevent a party from withholding evidence until the defense rests and might be unable to mount an effective response) (citations omitted).

5.      These concerns are heightened in the bankruptcy context, where expedition in completing a hearing is often of critical importance.[4] In the context of a confirmation hearing, the presentation of rebuttal evidence in further support of a debtor's plan and/or any proposed settlements contained therein is rare, if not unprecedented, and the DCL Plan Proponents cite no case where it was permitted, or in support of their request generally. Further, while the Case Management Order entered in this case (the "CMO") permitted "rebuttal" expert reports, in which the experts commented on the opening reports of their respective counterparts, it did not provide for any rebuttal phase at trial, and the DCL Plan Proponents have already elicited "rebuttal" testimony from one of their experts, Professor Fischel. *See supra* ¶ 9.

---

[4] Indeed, the Court will recall that in November 2010 the Noteholder Plan Proponents filed a pleading seeking to have the confirmation hearing commence in early April, rather than March 7th, to which the DCL Plan Proponents objected on the grounds that any delay would be prejudicial to the Debtors. *See* Reply of Debtors to Objections to Solicitation Motion and In Support of Entry of an Order Imposing Reasonable Limitations on Confirmation-Related Discovery and the Confirmation Hearing (ECF No. 6622 at 18).

6. Here, with one limited exception (respecting corporate governance under the Noteholder Plan), all of the evidence the DCL Plan Proponents seek to offer goes to elements of DCL *prima facie* case, specifically the strength of the underlying fraudulent transfer claims, the alleged arms length nature of the negotiations, the expected value of the LBO Causes of Action, and reasonableness of the proposed settlement. These are topics that Messrs. Black and Kurtz, as well other DCL witnesses, have already addressed and could have further addressed during the DCL Plan Proponents' case in chief. Critically, there was no "surprise" of any sort in the Noteholders' proofs (and none is claimed) as the DCL Plan Proponents were aware prior to the commencement of the trial of all the evidence from the Noteholder Plan Proponents they now seek leave to address in rebuttal.

### A. The DCL Plan Proponents' Request to Call Professor Black to Present Rebuttal Testimony Should be Rejected

7. The DCL Plan Proponents seek to offer testimony from Professor Bernard Black regarding (i) the decision tree analysis performed by Dr. Bruce Beron and his opinion, based on the Examiner's conclusions of the expected value of the LBO-related causes of action, that the DCL Plan proposes to settle, and (ii) the merits analysis performed by Ralph Tuliano regarding the Debtors' financial condition at the time of Step One and Step Two. DCL Rebuttal Submission at 2. The request should be denied.[5]

8. It cannot be seriously disputed that the issues on which the DCL Plan Proponents now seek to present rebuttal testimony from Professor Black are "important to the outcome of [this] case," and that the DCL Plan Proponents were aware, well before they presented their case in chief, that the Noteholder Plan Proponents "intend[ed] to produce evidence" on these issues.

---

[5] The DCL Plan Proponents' request to have Professor Black address corporate governance issues is addressed separately below.

*Russo*, 71 F.R.D. at 113. Indeed, Dr. Beron's decision tree analysis, and Mr. Tuliano's opinions regarding the Debtors' financial condition in 2007, were disclosed in detail in their respective opening and rebuttal expert reports served on February 8, 9 and 21, 2011 and in their respective depositions. The opinions they offered at trial did not depart from the disclosures made in their expert reports.[6] The DCL Plan Proponents were thus fully aware that the Noteholder Plan Proponents intended to present evidence on these issues when their case began. If the DCL Plan Proponents wished to have Professor Black address such matters, they were obligated to do so during their case in chief.

9.     In fact, Professor Fischel *did* testify at length during the DCL Plan Proponents' case-in-chief as to his criticisms of Mr. Tuliano. *Trial Tr.* at 1005-06 (Fischel summarizing areas of disagreement with Tuliano); *id.* at 1027-28 (Fischel's criticism of Tuliano's step one opinion); *id.* at 1102-1106 (Fischel's criticism of Tuliano's long term growth rates); *id* at 995-997 (discussing Tuliano's capital adequacy analysis). Thus, the DCL Plan Proponents already elicited Professor Fischel's "rebuttal testimony," but offer no justification for not similarly eliciting such testimony from Professor Black while he was on the stand.

10.     With respect to Dr. Beron, his testimony during the Noteholders' case-in-chief faithfully tracked the substance of his opinion as disclosed in detail in the Beron opening and rebuttal reports that were made available to the DCL Plan Proponents weeks before Professor Black took the stand. To the extent the DCL Plan Proponents believed Professor Black had valid criticisms to raise regarding Dr. Beron's opinions, the DCL Plan Proponents should have asked Professor Black about those criticisms during his direct examination. It is no answer that the

---

[6] Moreover, the Joint Pretrial Memorandum ("Joint Pretrial Memo") filed by the parties on February 28, 2011 explicitly stated that Dr. Beron would be offering testimony regarding "the probability-weighted expected value of the LBO-Related Causes of Action," and that Mr. Tuliano would be offering testimony regarding "the financial condition of the Debtors at Steps One and Two of the LBO." Joint Pretrial Memo [ECF No. 8187], p. 7.

DCL Plan proponents wanted to see the outcome of their delayed (and unsuccessful) mid-trial objection to the Beron Report before presenting Professor Black's criticisms. The DCL Plan Proponents' objection could have and should have been made under paragraph 31 of the Case Management Order long before Dr. Beron took the stand; indeed, the Court questioned Committee counsel as to why the objection had not been presented sooner and got no answer (*See* Trial Tr. at 2681:12-22). The DCL Plan Proponents should not now benefit, and have a second opportunity to call Professor Black, simply because they failed to assert their objection to the Beron Report (and learn it would be denied) prior to the commencement of the trial.

11.     Moreover, because the DCL Plan Proponents elected not to present Professor Black's testimony respecting the opinions described in the pretrial expert reports of Messrs. Beron and Tuliano during the DCL case-in-chief, the Noteholders were prevented from having Dr. Beron and Mr. Tuliano address any such criticism during their respective testimony at the trial.

12.     Finally, allowing Professor Black to testify as a rebuttal witness would provide the DCL Plan Proponents with a material unfair advantage, given the strict time limits the Court placed on expert testimony. Here, the DCL Plan Proponents chose to use their two hours of direct (and forty minutes of redirect) with Professor Black solely to offer his *affirmative* opinions, and now seek another 1.5 hours of direct testimony solely to critique the Noteholders' experts. Rebuttal Submission at 3. The Noteholder Plan Proponents, in contrast, were required to and did use their allocated time with Dr. Beron and Mr. Tuliano to provide both their affirmative opinions and their criticisms of DCL experts. *See* Trial Tr. at 2724-25; 2750-51; 2756-58; 2760-61; 2763; 2792-2807; 2813-2820 (Tuliano critique of Fischel); *id.* at 2562:2-2570:17; 2572:20-2576:21 (Beron critique of Black). Permitting the DCL Plan Proponents to

present an hour or more of additional testimony from Professor Black, regarding key matters that the DCL Plan Proponents knew were at issue in this case, would be a clear circumvention of the time limitations by which the Noteholder Plan Proponents have carefully abided.

### B. The DCL Plan Proponents' Request to Call David Kurtz to Present Rebuttal Testimony Should be Rejected

13.     The DCL Plan Proponents also seek leave to recall David Kurtz of Lazard Freres to testify as a purported rebuttal witness concerning (i) settlement discussions with Dan Gropper, (ii) the impact of the Examiner's Report on those discussions, and (iii) the value of various aspects of the settlement included in the DCL Plan. Rebuttal Submission at 2. However, Mr. Kurtz has already had the opportunity to testify, and indeed did testify, regarding each of these subjects, and the request should be denied.

14.     For example, Mr. Kurtz already testified about multiple conversations/meetings with Dan Gropper: one in April 2010 concerning the April Plan (Trial Tr. at 180:8-21), two in August 2010 concerning, *inter alia*, the impact of the Examiner Report on noteholder recoveries (*id.* at 197:17-199:12, 287:23–289:25, 298:3-299:25), and one in September/October 2010 at the mediation (*id.* at 290:9-291:3). Mr. Kurtz also testified at length about the impact of the Examiner Report on the ongoing settlement talks and parties' respective positions (*id.* at 183:2-192:24), the value of/rationale for the various aspects of the proposed DCL settlement (*id.* at 209:22-233:11), and the alleged overall fairness and good faith of the negotiations (*id.* at 234:2-237:23).

15.     Again, no "surprise" is or could be claimed with respect to any of the Noteholders' proofs. To the extent the Debtors simply failed to question Mr. Kurtz while he was on the stand about certain alleged additional details of the above conversations, or about other alleged conversations with Mr. Gropper or other parties in interest, or to the extent Mr. Kurtz has

7

only now recalled certain alleged conversations after the Debtor rested; it would hardly suffice as a basis to present Mr. Kurtz as a rebuttal witness. Indeed, if Mr. Kurtz is allowed to testify again, so too should Mr. Gropper, and the DCL Plan Proponents thus essentially propose a revolving door of opposing witnesses, each one called to testify further in response to proofs of the adverse party.

### C. The DCL Plan Proponents' Request to Call Professor Black to Present Rebuttal Testimony Concerning the Noteholder Plan Should Also be Rejected

16.     The DCL Plan Proponents also seek leave to have Professor Black provide opinion testimony concerning the Noteholder Plan with respect to corporate governance issues. DCL Rebuttal Submission at 2. While such testimony would technically be offered in opposition to the Noteholder Plan, rather than in further support of the DCL Plan, the DCL Plan Proponents knew the Noteholders were seeking confirmation of their own plan and there is no reason why this testimony likewise could not have been offered during the course of Professor Black's initial foray into the courtroom. Indeed, The DCL Plan Proponents did elicit testimony during its case-in-chief from Eddie Hartenstein criticizing various aspects of the Noteholder Plan (Trial Tr. at 1552:22-1555:24), but have provided no explanation as to why they failed to elicit this type of evidence from Professor Black. Whether the purpose was to evade the 2 hour time limit, or to sandbag the Noteholder Plan Proponents, the evidence should be precluded.

17.     Nevertheless, it is possible that this aspect of the DCL Rebuttal Submission has been mooted by the filing of the Noteholders' Second Amended Joint Plan of Reorganization, and counsel to the Noteholders and DCL Plan Proponents will confer on this matter and advise the Court if the DCL Plan Proponents are still seeking to present Professor Black on this issue.[7]

---

[7]     To the extent the Court permits the DCL Plan Proponents to call Professor Black on corporate governance issues, and to the extent that testimony will include any commentary on Professor Rock's report or testimony, the

8

## D. Rebuttal Testimony, If Any, Should be Permitted Subject to Certain Limitations

18.      To the extent the Court overrules the Noteholder Plan Proponents' Objection in any respect and allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholder Plan Proponents request that the Court modify paragraph 33 of the CMO and direct that any proposed demonstratives (as well as any proposed exhibit binders) be supplied one week in advance of the hearing and also direct that the direct testimony of each witness be limited to a half hour or less. Further, in the event the Court permits the DCL Plan Proponents to recall Mr. Kurtz, they should be obligated to make a final decision on whether he will in fact be called no later than April 1, 2011. Third, in the event the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholder Plan Proponents respectfully request that the hearing begin on April 12th or April 13th, rather than April 11th. Finally, to the extent the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholders should be given the opportunity to present any appropriate rebuttal testimony as well.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, the Noteholder Plan Proponents respectfully request that the Court preclude the DCL Plan Proponents from presenting the proposed rebuttal testimony from Mr. Kurtz and from Professor Black. To the extent that such testimony is permitted, the Noteholder Plan Proponents respectfully request that the Court grant the additional relief requested in Section II.D above.

---

Noteholder Plan Proponents have asked the Debtors to make Professor Black available for a short deposition, given that Professor Rock's expert report was issued after Professor Black was deposed and thus Professor Black was not questioned respecting the Rock report. Counsel for the Debtors and Aurelius have agreed to confer respecting this issue as well.

New York, New York
March 29, 2010

ASHBY & GEDDES, P.A.

By: /s/ William P. Bowden
    William P. Bowden (I.D. No. 2553)
    Amanda M. Winfree (I.D. No. 4615)
    500 Delaware Avenue
    P.O. Box 1150
    Wilmington, DE 19899
    (302) 654-1888

-and-

AKIN GUMP STRAUSS HAUER & FELD LLP

    Daniel H. Golden
    David M. Zensky
    Abid Qureshi
    Mitchell P. Hurley
    Deborah J. Newman
    One Bryant Park
    New York, New York 10036
    (212) 872-1000

    *Counsel to Aurelius Capital Management, LP*

BIFFERATO GENTILOTTI

    /s/ Garvan F. McDaniel
    Garvan F. McDaniel
    800 N. King St., Plaza Level
    Wilmington, DE 19801
    (302) 429-1900

    - and -

    David S. Rosner
    Andrew K. Glenn
    Sheron Korpus
    Kasowitz, Benson, Torres & Friedman LLP
    1633 Broadway
    New York, New York 10019

10

(212) 506-1700

*Co-Counsel for Law Debenture Trust Company of New York*

**SULLIVAN HAZELTINE ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (Del. Bar No. 2820)
Elihu E. Allinson (Del. Bar No. 3476)
901 Market Street, Suite 1300,
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195

-and-

**BROWN RUDNICK LLP**
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Katherine S. Bromberg
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*

**McCARTER & ENGLISH, LLP**

*/s/ Katharine L. Mayer*
Katharine L. Mayer (DE # 3758)
405 N. King Street, 8th Floor
P.O. Box 111
Wilmington, DE 19899
Telephone: (302) 984-6300

11

-and-

David Adler
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone: (212) 609-6847

*Counsel to Deutsche Bank Trust Company Americas*

**SUPPLEMENT CONCERNING FCC ISSUES WITH RESPECT TO THE NOTEHOLDER PLAN PROPONENTS' OPPOSITION TO DCL PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES AND CROSS-SUBMISSION FOR CERTAIN RELIEF RESPECTING DCL REBUTTAL CASE**

**[D.I. 8525]**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY *et al.*, | : | Case No. 08-13141 (KJC) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Related Docket Nos. 8499, 8519** |

## SUPPLEMENT CONCERNING FCC ISSUES WITH RESPECT TO THE NOTEHOLDER PLAN PROPONENTS' OPPOSITION TO DCL PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES AND CROSS-SUBMISSION FOR CERTAIN RELIEF RESPECTING DCL REBUTTAL CASE

The Noteholder Plan Proponents,[1] by and through their undersigned counsel, hereby submit this Supplement Concerning FCC Issues With Respect to the Opposition to DCL Plan Proponents'[2] Submission Regarding Rebuttal Witness and Cross Motion for Certain Relief Respecting DCL Rebuttal Case (the "Noteholder Objection") [D.I. No. 8519]. The Noteholder Objection is incorporated herein by reference.

On March 25, 2011, the DCL Plan Proponents filed a Submission Regarding Rebuttal Witnesses [D.I. No. 8499] (the "Rebuttal Witness Submission"). In their Rebuttal Witness Submission, the DCL Plan Proponents notified the parties that they intend to call Mace

---

[1] The Noteholder Plan Proponents are Aurelius Capital Management, LP, on behalf of its managed entities, Law Debenture Trust Company of New York, as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (successor to The Times Mirror Company) and Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096, Wilmington Trust Company, in its capacity as Successor Indenture Trustee for the PHONES Notes, and Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee for certain series of Senior Notes.

[2] The DCL Plan Proponents are the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.

DKT. NO. *8525*
DT. FILED *3-30-11*

Rosenstein as a rebuttal expert witness to, *inter alia*, rebut "the expert testimony of Mark Prak [the Noteholder Plan Proponents' expert witness on FCC issues] concerning alleged violations of the FCC's ownership rules under the DCL Plan and alleged complications and delays in the FCC's consideration of the Debtors' FCC applications under the Debtor/Committee/Lender Plan, and *application of these issues under the Noteholder Plan*" (emphasis added).

The Noteholder Plan Proponents respectfully submit that Mr. Rosenstein should *not* be permitted to testify as a rebuttal witness as to any matters that are outside the scope of Mr. Prak's testimony, including with respect to FCC "issues under the Noteholder Plan." Any testimony that is outside the scope of Mr. Prak's trial testimony may not be properly presented as rebuttal testimony at this late stage in the trial as it would inevitably result in confusion, additional witnesses and testimony, and undue delay.

While "under the Federal Rules of Evidence [a] court has broad discretion to control the admission of rebuttal testimony," courts have consistently held that the "discretion does not extend . . . to the admission of testimony that does not rebut anything said by the defendant." *United States v. Pantone*, 609 F.2d 675, 681 (3d Cir. 1979) (citing *Geders v. United States*, 425 U.S. 80, 86 (1976)). In the Third Circuit, when considering the scope of permissible rebuttal testimony, a court must consider the extent to which "the offered evidence rebuts the witness' prior assertion." *United States v. Ferrell*, 625 F. Supp. 41, 47 (E.D. Pa. 1985). A rebuttal witness should not be permitted to testify regarding matters that have not been addressed in the case in chief. *See Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764-65 (5th Cir. 1991) ("The potential for unfairness to the opponent and confusion of the issues militates against admitting new or repetitive evidence at the rebuttal stage"); *Skogen v. Dow Chemical Co.*, 375 F.2d 692,

705-06 (8th Cir. 1967) ("Normally, parties are expected to present all of their evidence in their case in chief.").

In the instant case, Mr. Prak did not testify about FCC issues relating to the Noteholder Plan. In fact, counsel for the DCL Plan Proponents strenuously objected at trial to Mr. Prak answering any questions regarding FCC issues under the Noteholder Plan, and the objection was sustained by the Court. *See* Trial Tr. at 2483:9-2485:15 (Mar. 17, 2011). As a result, Mr. Prak was prohibited from discussing his opinion regarding FCC issues under the Noteholder Plan. Any testimony by Mr. Rosenstein (who is being called as a "rebuttal" witness) regarding FCC issues under the Noteholder Plan is, therefore, outside the scope of Mr. Prak's testimony and wholly inappropriate as rebuttal testimony. The DCL Plan Proponents should not be permitted to call Mr. Rosenstein as a "rebuttal" witness to testify regarding matters that Mr. Prak was prohibited from discussing and that were not presented to the Court in the DCL Plan Proponents' case in chief.

For the foregoing reasons, the Noteholder Plan Proponents respectfully request that the Court preclude the DCL Plan Proponents from presenting rebuttal testimony from Mr. Rosenstein regarding FCC issues under the Noteholder Plan.[3]

---

[3] If the Court allows the DCL Plan Proponents to elicit rebuttal testimony from Mr. Rosenstein, the Noteholder Plan Proponents should be given the opportunity to present any appropriate rebuttal testimony as well, including rebuttal testimony from Mr. Prak regarding FCC issues under the Noteholder Plan and the DCL Plan.

Dated: Wilmington, Delaware
March 30, 2011

Respectfully submitted,

ASHBY & GEDDES, P.A.

_____
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

- and -

Edward A. Friedman
Robert J. Lack
Kizzy L. Jarashow
FRIEDMAN KAPLAN SEILER &
    ADELMAN LLP
7 Times Square
New York, NY 10036-6516
(212) 833-1100

- and -

LERMAN SENTER PLLC
Meredith S. Senter, Jr.
Sally A. Buckman
2000 K Street NW
Suite 600
Washington, DC 20006
(202) 429-8970

*Counsel for Aurelius Capital Management, LP*

BIFFERATO GENTILOTTI

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (I.D. No. 4167)
800 N. King St., Plaza Level
Wilmington, DE 19801
(302) 429-1900

- and -

David S. Rosner
Andrew K. Glenn
Sheron Korpus
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

*Counsel for Law Debenture Trust Company of New York*


SULLIVAN HAZELTINE ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson (I.D. No. 3476)
901 Market Street, Suite 1300
Wilmington, DE 19801
(302) 428-8191

-and-

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Katherine S. Bromberg
7 Times Square
New York, NY 10036
(212) 209-4800

*Counsel for Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*

McCARTER & ENGLISH, LLP

*/s/ Katharine L. Mayer*
Katharine L. Mayer  (I.D. No. 3758)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300

-and-

David Adler
245 Park Avenue, 27th Floor
New York, NY 10167
(212) 609-6800

*Counsel for Deutsche Bank Trust Company Americas*

# DCL PLAN PROPONENTS RESPONSE TO THE NOTEHOLDER PLAN PROPONENTS' OBJECTION TO THE DCL PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES

## [D.I. 8535]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:  April 11, 2011**<br>**Related to Docket Nos. 7136, 7239, 7701, 7801, 7802,**<br>**8171, 8173, 8231, 8259, 8283, 8315, 8499, 8519 and 8525** |

## DCL PLAN PROPONENTS' RESPONSE TO THE NOTEHOLDER PLAN PROPONENTS' OBJECTION TO THE DCL PLAN PROPONENTS' SUBMISSION REGARDING REBUTTAL WITNESSES

The Debtors, the Official Committee of Unsecured Creditors (the "Committee"), Oaktree

Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and

JPMorgan Chase Bank, N.A. ("JPM"), and together with the Debtors, Committee, Oaktree, and

Angelo Gordon, the "DCL Plan Proponents") hereby provide this response to the Noteholders'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-7492887V1



DKT. NO. 8535

DT. FILED 3-31-11

March 29, 2011 Objection ("Objection") to the DCL Plan Proponents' March 25, 2011 Submission ("Submission") regarding the rebuttal case.

The Objection seeks to prevent the development of a full record on which the Court may consider the two competing Plans. The DCL Plan Proponents seek confirmation of their Plan of Reorganization, and their direct case was designed to present the Court with evidentiary support to demonstrate that their Plan, and, more specifically, the settlement of the LBO-Related Causes of Action that is encompassed within that Plan, is fair and reasonable to all creditors and consistent with the determinations of the Examiner. The Noteholders, by virtue of having gone second, were able to present evidence in support of their competing Plan (in which none of the LBO-Related Causes of Action are settled), as well as evidence rebutting the evidence presented by the DCL Plan Proponents. Fundamental fairness thus requires that the DCL Plan Proponents be afforded the same opportunity to rebut the live testimony presented by the Noteholders in their direct case with live testimony.

Further, the testimony that the DCL Plan Proponents seek to elicit as part of their rebuttal case is plainly rebuttal testimony. As disclosed in the Submission, the testimony responds directly to the evidence presented by the Noteholders in their direct case through Mr. Prak, Dr. Beron, Mr. Tuliano and Professor Rock. Moreover, it is simply not credible to assert, as the Noteholders have, that the DCL Plan Proponents were required, as part of their direct case, to anticipatorily rebut testimony that had not yet been elicited.

There is likewise no merit to the Noteholders' claims of surprise concerning the DCL Plan Proponents' plan to present rebuttal testimony. The Case Management Order ("CMO") negotiated by the parties expressly provided for the submission of rebuttal reports, and each of the DCL Plan Proponents' experts timely submitted such reports. Moreover, the DCL Plan Proponents have consistently and expressly indicated their intention to call rebuttal witnesses if

2

necessary. *See, e.g.*, Transcript of Proceedings, February 25, 2011, at 20-22, 24; *see also* p. 7, nn. 3-4, *infra*. Indeed, it was only at the end of the very last day of the Confirmation Hearing that the Noteholders first complained about the DCL Plan Proponents' intention to present a rebuttal case. *See* Transcript of Proceedings, March 18, 2011, at 3010-12. Nor can the Noteholders claim surprise as to the substance of the proposed rebuttal testimony: as set forth in the Submission, Mr. Rosenstein's and Professor Black's proposed areas of testimony are described in their respective rebuttal expert reports, and their testimony will respond directly to certain of the points made by Mr. Prak, Dr. Beron, Mr. Tuliano and Professor Rock during the Noteholders' direct case. Similarly, Mr. Kurtz will respond directly to testimony from Mr. Gropper concerning certain conversations and other matters relating to the settlement process.

Similarly groundless are the Noteholders' complaints that the rebuttal case will take too much time. As noted in the Submission, the DCL Plan Proponents have requested only three hours to present their rebuttal case. Additionally, the DCL Plan Proponents are not attempting to "circumvent" the time limits imposed with respect to expert testimony, since the time limits were to be applied per appearance by an expert and not as an overall limit on the amount of time an expert could testify in the case. It also is noteworthy that, even taking the three hours of proposed rebuttal testimony into account, the DCL Plan Proponents will remain comfortably within the 30 hour estimate they provided the Court at the beginning of the case.

In short, the Noteholders' Objection is a thinly-veiled attempt to prevent the Court from hearing all relevant evidence concerning the deficiencies in the Noteholders' Plan. The Objection should therefore be denied.

3

# ARGUMENT

## I.  THE DCL PLAN PROPONENTS' REBUTTAL TESTIMONY IS PROPER AND SHOULD BE PERMITTED.

Federal Rule of Evidence 611(a) clearly permits rebuttal testimony of the sort contemplated here. As the Noteholders' own authority makes clear, while a court may exclude evidence under the Federal Rules of Evidence for reasons such as unfair prejudice or undue consumption of time, a court "obviously does not have Rule 611(a) discretion to exclude on the grounds the evidence should have been offered during the case-in-chief." 28 Charles Allan Wright & Victor James Gold, Federal Practice and Procedure § 6164(a) (1st ed. 2010) (cited at Objection at 3). In fact, the Third Circuit has long held that "[w]here ... [the] evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal." *National Surety Corp. v. Heinbokel*, 154 F.2d 266, 268 (3d Cir. 1946); *see also Zurich v. Wehr*, 163 F.2d 791 (3d Cir. 1947) (agreeing with *Friend v. Commissioner of Internal Revenue*, 102 F.2d 153, 155 (7th Cir. 1939) that "'[t]he fact that [rebuttal testimony that contradicted the respondent's witnesses] might have been offered in chief did not preclude its admission in rebuttal.'"). Further, and contrary to the Noteholders' assertions, a party is under no obligation to anticipate or to negate a defense theory in its case-in-chief. *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981) (holding it was an abuse of discretion to limit rebuttal testimony) (citing *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 458-59 (2d Cir. 1975); *Gossett v. Weyerhaeuser Co.*, 856 F.2d 1154, 1157 n.3 (8th Cir. 1988) ("A plaintiff is not obligated to anticipate and negate in its own case in chief any facts or theories that may be raised on defense.") (citing *Martin* and *Weiss*); *Rodriguez v. Olin Corp.*, 780 F.2d 491, 496 (5th Cir. 1986) ("[A] plaintiff's [sic] has the right to adduce whatever evidence is necessary to establish its prima facie case and is under no obligation to anticipate and negate in its own case in chief any

4

facts or theories that may be raised on defense.") (*citing* same). As discussed in more detail below, the rebuttal testimony set forth in the Submission is plainly proper rebuttal and should be allowed.

### A.     The Proposed Rebuttal Testimony Of Mr. Rosenstein Is Proper

The Noteholders' attempt to preclude the testimony of Mr. Rosenstein is particularly inappropriate. Following the entry of the CMO, the parties reached a stipulation concerning expert witnesses who would testify on FCC-related matters. The stipulation called for Mr. Prak to submit his expert report first, followed by an expert report from Mr. Rosenstein one week later. Likewise, Mr. Prak was deposed first and Mr. Rosenstein's deposition followed. Consistent with this order, the DCL Plan Proponents reasonably anticipated that Mr. Prak would testify at trial first and that Mr. Rosenstein would testify thereafter. Now that Mr. Prak has testified and provided the Court with his opinions as to the potential FCC issues in connection with the DCL Plan, Mr. Rosenstein should be allowed to testify concerning the opinions set forth in his expert report regarding these same issues.

Further, there is absolutely no merit to the Noteholders' assertion that Mr. Rosenstein should be precluded from addressing FCC matters as they relate to the Noteholders' Plan because the DCL Plan Proponents objected to Mr. Prak addressing such matters at the hearing. In stark contrast to the Noteholders' approach, Mr. Rosenstein's opinions regarding these matters were fully set forth in his expert report and were explored in detail by the Noteholders at Mr. Rosenstein's deposition. The Noteholders, on the other hand, made a tactical decision to limit Mr. Prak's review to the DCL Plan only and advised him not to opine on the Noteholders' Plan at his deposition for the same reasons. *See* Prak Dep., March 2, 2011, at 160:25-161:5, 162:3-14, 163:10-164:4, 165:9-170:23. Having studiously avoided setting forth any opinions about the Noteholders' Plan in either his expert report or during his deposition, the DCL Plan Proponents

5

quite properly objected to Mr. Prak's opining on these matters for the first time during redirect at the Confirmation Hearing. *See* Transcript of Proceedings, March 17, 2011, at 2483-87.

Moreover, Mr. Rosenstein's testimony regarding the FCC issues raised by the Noteholders' Plan is proper rebuttal in that it addresses the credibility of Mr. Prak's assertions that the DCL Plan will face significant and unique issues in achieving FCC approval. As Mr. Rosenstein will testify, the issues that Mr. Prak has identified as to the DCL Plan apply with equal force to the Noteholders' Plan so that the Noteholders' Plan will face the same potential hurdles at the FCC as Mr. Prak claims to foresee for the DCL Plan. Consequently, the fact that neither the Noteholders nor Mr. Prak acknowledged this point as part of their direct case calls directly into question the credibility of Mr. Prak's contention that the DCL Plan will face significant and unique obstacles in obtaining FCC approval.

Finally, at the end of the Noteholders' direct case the Court made a comment regarding the potential significance of the FCC issues. *See* Transcript of Proceedings, March 18, 2011, at 3016. This comment only serves to further underscore the importance of permitting Mr. Rosenstein to testify fully as to these matters.

### B.     The Proposed Rebuttal Testimony of Professor Black Is Proper

As set forth in the Submission, Professor Black will be called to address and rebut the direct testimony of Dr. Beron, Mr. Tuliano and Professor Rock. This testimony is not being offered as part of the DCL Plan Proponents' direct case, but is being offered to rebut testimony in support of the Noteholders' arguments that the settlement embodied in the DCL Plan Proponents' Plan is not reasonable and that, as a consequence, the Noteholders' Plan (which settles none of the LBO-Related Causes of Action) should be approved. As explained below, there is no basis to preclude or limit the testimony of Professor Black rebutting the points raised by each of these three witnesses.

6

### 1. Dr. Beron

Dr. Beron testified on direct that, based on his mechanical decision-tree analysis, the value of the LBO-Related Causes of Action was significantly higher than the settlement embodied in the DCL Plan. This testimony was presented in support of the Noteholder Plan, which preserves for future litigation each of the LBO-Related Causes of Action that the DCL Plan would settle.

The Noteholders' attempt to prevent Professor Black from responding to this testimony is nothing but an improper attempt to relitigate their previously-filed and -denied Motion to Exclude the Testimony of Professor Black, Mr. Goldin and Mr. Prager (the "Motion to Exclude"). In the Motion to Exclude, the Noteholders asserted that "Professor Black, Mr. Goldin and Mr. Prager are each proffered to testify about the same subjects -- *rebutting* the Noteholder Plan Proponents' decision-tree expert, *Dr. Bruce Beron*" and complained that, "*in rebutting Dr. Beron,* all three address the exact same issues and make the exact same arguments."[2] In their response to that motion, the DCL Plan Proponents made clear that the testimony of these three individuals would indeed be offered to rebut the anticipated testimony of Dr. Beron but pointed out that the Noteholders had not carried their burden of showing that the testimony would be so unduly cumulative as to warrant exclusion under Federal Rule of Evidence 403.[3] By the time of the hearing on the Motion to Exclude, the Noteholders had essentially abandoned any effort to preclude the rebuttal testimony of Professor Black and focused instead on trying to preclude the

---

[2] *See* Supplement to the Noteholders' Motion In Limine To Exclude The Expert Testimony Of John Chachas, Suneel Mandava and David Kurtz (Dkt. No. 8167) at 3 (emphasis added).

[3] *See* Debtor/Committee/Lender Plan Proponents' Objection to the Motion In Limine To Exclude The Rebuttal Expert Report Of Professor Bernard Black, Harrison Goldin and David Prager Under FRE 403 Subsumed in the Supplement to the Noteholders' Motion In Limine To Exclude The Expert Testimony Of John Chachas, Suneel Mandava and David Kurtz (Dkt. No. 8193) at 1 ("the Noteholders seek to shield from exposure the fundamental flaws in Dr. Beron's decision tree by asking the Court *to exclude the rebuttal expert testimony of Professor Bernard Black,* Harrison Goldin and David Prager under Rule 403 on the grounds that the testimony is duplicative. As explained in detail below, however, the Noteholders have not carried their burden under the Rule")(emphasis added).

46429/0001-7492887V1

testimony of Messrs. Goldin and Prager.[4] Nonetheless, understanding that the DCL Plan

Proponents were offering the testimony of Professors Black and Messrs. Goldin and Prager to

rebut the testimony of Dr. Beron, the Court denied the Motion to Exclude in its entirety.

Since the hearing on the Motion to Exclude, and after having an opportunity to consider

the evidence presented by the Noteholders during their case in chief and in furtherance of the

interests of efficiency and judicial economy, the DCL Plan Proponents have determined that they

only need to offer in rebuttal the testimony of Professor Black. However, neither this

streamlining of the DCL Plan Proponents' rebuttal case, nor any of the arguments raised by the

Noteholders in their Objection, warrants revisiting the Court's prior ruling and now excluding

Professor Black's rebuttal testimony. Nor is there any basis for the Noteholders to claim any

"surprise" as to the substance of Professor Black's testimony: as noted, the areas of Professor

Black's disagreement with Dr. Beron's analysis are set forth in detail in his rebuttal expert

report.

Finally, the claim that the DCL Plan Proponents should have presented Professor Black's

rebuttal testimony during their direct case is particularly misplaced given that the DCL Plan

Proponents sought to exclude Dr. Beron's testimony on the grounds that it was not proper under

Federal Rule of Evidence 702. *See* Transcript of Proceedings, March 17, 2011, at 2679-88.

Although that motion was unsuccessful, it would not have been appropriate for the DCL Plan

Proponents to have elicited "rebuttal" testimony responding to Dr. Beron's anticipated testimony

in their direct case, given the possibility that they might move to exclude Dr. Beron's testimony

---

[4] At the hearing, Mr. Zensky stated: "With respect to the motion on Black, Your Honor, I think the arguments are pretty well set forth in our papers. You know, to – to the extent Professor Black is qualified to do solvency analyses, we have no objection. Obviously, we've offered an expert on that matter as well. To the extent [Professor Black] is qualified to perform modeling or decision tree analysis, which he has attempted to do in his papers, we have no objection that. . . . But we have the same issue as to whether, in rebuttal, Golden [sic] and Prager should be permitted to give the identical opinion that Professor Black wants to give as to the alleged flaws in the noteholders decision tree expert report." Transcript of Proceedings, March 2, 2011 at 20-23 (Dkt. No. 8261).

and the reality that if that motion had succeeded, there would have been no testimony by Dr. Beron in the record to rebut.

## 2. Mr. Tuliano

Mr. Tuliano testified on direct that, among other things, the Examiner incorrectly analyzed Debtors' solvency, especially at the time of Step One Transactions -- an issue that bears on the reasonableness of the settlement of the LBO-Related Causes of Action. Like Dr. Beron's testimony, Mr. Tuliano's testimony was presented in support of the Noteholders' Plan which preserves all claims relating to the Step One Transactions.

The proposed rebuttal testimony of Professor Black squarely addresses this testimony and will be of benefit to the Court as it determines whether to approve the DCL Plan, which incorporates a settlement of those claims, or the Noteholders' Plan, which does not. Moreover, there is no "surprise" here – the areas of disagreement between Professor Black and Mr. Tuliano are set forth in detail in Professor Black's rebuttal report.[5] The Court therefore should allow Professor Black to testify in order to obtain the benefits of his perspective and to permit the development of a full record on the Step One solvency issue.

## 3. Professor Rock

The Noteholders' effort to prevent Professor Black from rebutting Professor Rock's testimony is without merit. Professor Rock submitted his expert report and was deposed by the DCL Plan Proponents only *after* Professor Black had finished his testimony and left the stand. Professor Black thus did not have an opportunity to address the points presented by Professor

---

[5] The Noteholders note that the DCL Plan Proponents elicited Professor Fischel's views of Mr. Tuliano's opinions during their direct case and claim that this is a basis to prevent the DCL Plan Proponents from presenting rebuttal testimony from Professor Black. But the decision to elicit such testimony is hardly surprising given the fact that each expert was addressing precisely the same issue – i.e., the solvency of Tribune at Step One and Step Two, and there was no question that each was competent to offer opinions on that topic. In that regard, the vast majority of Mr. Tuliano's rebuttal report addressed Mr. Tuliano's disagreements with Professor Fischel's analysis, and *vice-versa*. The extent of overlap between the areas addressed by Professor Black and Mr. Tuliano, by contrast, is considerably narrower, and, thus explains the difference in approach.

46429/0001-7492887V1

Rock in his live testimony. In addition, the Noteholders have amended their Plan in several ways since Professor Black testified, thereby heightening the need for his rebuttal testimony, not reducing it. Consequently, the Noteholders' efforts to prevent the Court from hearing the rebuttal testimony of Professor Black should be rejected.[6]

### C. The Proposed Rebuttal Testimony Of Mr. Kurtz Is Proper

Finally, the Noteholders fail to identify any legitimate basis to exclude the rebuttal testimony of Mr. Kurtz. Mr. Kurtz's proposed testimony would rebut fact testimony presented by Mr. Gropper during the Noteholders' case in chief. Since Mr. Gropper was a fact witness, and therefore filed no expert report, Mr. Kurtz obviously was not in a position to rebut Mr. Gropper's testimony until after Mr. Gropper testified. Further, the Noteholders have cited no authority for the proposition that Mr. Kurtz was required to somehow divine what Mr. Gropper was going to testify to and anticipatorily rebut that testimony during his direct testimony several days earlier. Indeed, as set forth above, the case law is squarely to the contrary.

## II. THE NOTEHOLDERS HAVE IDENTIFIED NO LEGITIMATE BASIS FOR THE PROPOSED "LIMITATIONS" ON THE REBUTTAL CASE OF THE DCL PLAN PROPONENTS AND THE COURT SHOULD DECLINE TO IMPOSE THEM

The Noteholders argue that, in the event the Court allows the DCL Plan Proponents to present their rebuttal case, the Court should grant the Noteholders affirmative relief in a number of respects. Because the Noteholders have not identified any legitimate basis for granting this affirmative relief, it should be denied.

---

[6] The Noteholders have requested an additional deposition of Professor Black concerning his opinions regarding Professor Rock. As this Court has determined, however, the time for discovery has concluded. *See* Transcript of Proceedings, March 8, 2011, at 127-28 Moreover, Professor Rock's testimony is in direct rebuttal to Professor Black, whose opinions were fully disclosed in Professor Black's rebuttal expert report. The Noteholders have already deposed Professor Black for a day and half, longer than any other witness in the case, and had his rebuttal report when they did so. Accordingly, the DCL Plan Proponents believe that the Noteholders' request should be denied. However, in the event that the Court believes it appropriate to allow a further deposition of Professor Black, that deposition should be limited solely to the aspects of his rebuttal report relating to Professor Rock, and should not exceed two hours.

46429/0001-7492887V1

*First*, the Noteholders contend that, "in the event the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness," the Court should order that "the hearing begin on April 12th or April 13th, rather than April 11." (Objection at 9). This is a *non-sequitur*. Allowing the DCL Plan Proponents to proceed with their rebuttal case is obviously not a reason for changing the April 11 hearing date. This is especially so since the April 11 start date was discussed on a number of occasions by the parties and no objection to commencing the rebuttal case on that date was raised with the Court.

*Second*, the Noteholders provide no reason why the Court should order the DCL Plan Proponents to provide them with the demonstrative exhibits and exhibit binders a week in advance of the hearing date (*Id.*). The procedure for exchanging demonstratives was negotiated by the parties in the CMO, and worked reasonably well during the direct case. The Noteholders have not offered any reason for deviating from that procedure and the DCL Plan Proponents are not aware of any need for the increased notice now advocated by the Noteholders. [7]

*Third*, the Noteholders provide no basis for limiting the testimony of each witness to thirty minutes or less. (*Id.*). As noted above, the DCL Plan Proponents are not attempting to "circumvent" the time limits imposed with respect to expert testimony, since the time limits were to be applied per appearance by an expert and not as an overall limit on the amount of time an expert could testify in the case. Moreover, even taking the three hours of proposed rebuttal testimony into account, the DCL Plan Proponents will remain comfortably within the thirty hour estimate they provided to the Court at the beginning of the case.

---

[7] The Noteholders also have not come forward with any reason why the Court should order the DCL Plan Proponents to identify by April 1 – a mere three days after the Noteholders filed their objection and 10 days prior to the scheduled hearing date – whether they intend to call Mr. Kurtz as part of their rebuttal case. (*Id.*). The DCL Plan Proponents have the matter under consideration and will inform the Noteholders of their decision by April 6, well in advance of the scheduled hearing date.

11

*Finally*, the Noteholders state that "to the extent the Court allows the DCL Plan Proponents to elicit rebuttal testimony from any witness, the Noteholders should be given the opportunity to present any appropriate rebuttal testimony as well" (*Id.*). This statement is both puzzling and improper. As noted above, the Noteholders already had the opportunity to present rebuttal testimony by virtue of the fact that they presented their case after the DCL Plan Proponents had presented their direct case. In essence, what the Noteholders are really seeking is the right to present a sur-rebuttal case. If that is their intention, they should provide the Court with a submission identifying each sur-rebuttal witness they wish to call, the nature of the testimony they intend to elicit from each such witness and the amount of time they estimate each such witness will need to provide the proposed sur-rebuttal testimony. Only after such a submission has been made will the Court and the DCL Plan Proponents be in a position to evaluate the Noteholders' request.

12

## CONCLUSION

For the reasons set forth above and in the Submission, the Court should reject the

Noteholders' Objection and permit the DCL Plan Proponents to present their rebuttal case as

described in the Submission.

Dated: March 31, 2011

SIDLEY AUSTIN LLP
James F. Conlan
James W. Ducayet
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-0199
Facsimile: (312) 853-7036

SIDLEY AUSTIN LLP
James F. Bendernagel, Jr.
David M. Miles
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors In Possession

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
Thomas J. McCormack
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

LANDIS RATH & COBB LLP

By: */s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Counsel for the Official Committee of Unsecured Creditors

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

ZUCKERMAN SPAEDER LLP
Thomas G. Macauley
919 Market Street, Ste 990
P.O. Box 1028
Wilmington, DE 19899
Telephone: (302) 427-0400
Facsimile: (302) 427-8242

Special Counsel to the Official Committee of Unsecured Creditors

46429/0001-7492887V1

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4500
Facsimile: (212) 701-5800

RICHARDS, LAYTON & FINGER, P.A.

By: _/s/ Drew G. Sloan_____
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square, 920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651 7701

Counsel for JPMorgan Chase Bank, N.A.

WILMER CUTLER PICKERING
HALE & DORR LLP
Andrew N. Goldman
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 220-8888

Counsel for Angelo, Gordon & Co., L.P.

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

By: _/s/ Robert S. Brady_____
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, P.O. Box 391
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.

14