# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: April 25, 2011 at 1:00 p.m. ET<br>Objection Deadline: April 18, 2011 at 4:00 p.m. ET |

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 1126 AND BANKRUPTCY RULE 3018(a) FOR ENTRY OF AN ORDER AUTHORIZING CHANGES IN VOTES ON DEBTOR/COMMITTEE/LENDER PLAN PREVIOUSLY CAST BY (I) LONGACRE OPPORTUNITY FUND, L.P. AND AFFILIATES, (II) ASM CAPITAL, LLC AND AFFILIATES, (III) LIQUIDITY SOLUTIONS, INC., (IV) FAIR HARBOR CAPITAL, LLC, AND (V) DEBT ACQUISITION COMPANY OF AMERICA AND AFFILIATES, AND AUTHORIZING VOTING AGENT TO AMEND VOTING REPORT TO REFLECT CHANGES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court for entry of an order pursuant to Section 1126 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing (i) Longacre Opportunity Fund, L.P. and its affiliates (collectively, "Longacre"), (ii) ASM Capital, LLC and its affiliates (collectively, "ASM"), (iii) Fair Harbor Capital, LLC ("Fair Harbor"), (iv) Liquidity Solutions, Inc. ("LSI"), and (v) Debt Acquisition Company of America and its affiliates (collectively, "DACA" and, collectively with Longacre, ASM, Fair Harbor, and LSI, the "Voting Parties") to change their previously-cast votes on the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P, Angelo, Gordon & Co., L.P, and JPMorgan Chase Bank, N.A. (the "Debtor/Committee/Lender Plan")[2] from votes to reject the Debtor/Committee/Lender Plan to votes to accept the Debtor/Committee/Lender Plan, and (b) authorizing Epiq Bankruptcy Solutions, LLC, as the Court-appointed voting agent (the "Voting Agent") to amend the voting report on the Debtor/Committee/Lender Plan to effect the requested changes in votes and authorizing the inclusion of the voting report as so amended into the record of the confirmation hearing on the Debtor/Committee/Lender Plan (the "Motion"). The votes of the Voting Parties for which approval is sought by this Motion to change are listed on Exhibit A hereto.

This Motion is filed as a result of modifications that have been made to the Debtor/Committee/Lender Plan, as filed with the Bankruptcy Court on March 3, 2011 [D.I. 8259], which resulted in the withdrawal of objections to the Debtor/Committee/Lender Plan filed

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Debtor/Committee/Lender Plan.

2

by ASM and Longacre and the decision by all of the Voting Parties to support confirmation of the Debtor/Committee/Lender Plan as modified. If approved, the vote changes requested herein will result in <u>all</u> classes of General Unsecured Claims against the Subsidiary Debtors (as defined herein) in which votes were cast voting in the necessary majorities to accept the Debtor/Committee/Lender Plan. The Debtors notified the Voting Parties of their intention to seek the relief requested in this Motion and have the consent of the Voting Parties to change their votes, as evidenced by the stipulations attached hereto as <u>Exhibits B</u> through <u>E</u>. In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "<u>Petition Date</u>"), Tribune Company ("<u>Tribune</u>") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases.

3

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are Section 1126 of the Bankruptcy Code and Rule 3018(a) of the Bankruptcy Rules.

## FACTUAL BACKGROUND

6. By this Motion, the Debtors seek entry of an order authorizing the Voting Parties to change their previously-cast votes to reject the Debtor/Committee/Lender Plan to votes to accept that plan, as a result of modifications that were made to the Debtor/Committee/Lender Plan subsequent to the time the Voting Parties cast their votes. Those vote changes will eliminate all rejecting classes of General Unsecured Claims against the Subsidiary Debtors and convert such classes to accepting classes.

7. Each of the Voting Parties is, to the Debtors' knowledge, engaged in the business of acquiring claims in chapter 11 cases from third parties pursuant to Bankruptcy Rule 3001(e). Prior to the record date governing solicitation of votes on the Debtor/Committee/Lender Plan, each of the Voting Parties had acquired certain third-party claims and, as a result, the Voting Parties were mailed appropriate ballots for voting to accept or reject the Debtor/Committee/ Lender Plan as it applied to the relevant Debtor(s).

8. Each of the Voting Parties voted all (or substantially all) of the claims that it was entitled to vote to reject the Debtor/Committee/Lender Plan. Those claims were concentrated in the classes of General Unsecured Claims at the Debtors other than Tribune Company (collectively, the "Subsidiary Debtors") and, as a result of the Voting Parties' votes to reject the Debtor/Committee/Lender Plan, the class of General Unsecured Claims at twenty (20) of the Subsidiary Debtors failed to achieve the necessary acceptances of more than one-half in number

4

and/or more than two-thirds in amount set forth in Section 1126(c) of the Bankruptcy Code (the "Rejecting Classes"). In addition, two of the Voting Parties (ASM and Longacre) filed an objection to confirmation of the Debtor/Committee/Lender Plan as the Ad Hoc Committee of Subsidiary Trade Creditors [D.I. 7973; filed Feb. 15, 2011] and had previously filed – also as the Ad Hoc Committee of Subsidiary Trade Creditors – an objection to the disclosure statement relating to the Debtor/Committee/Lender Plan [D.I. 6500; filed Nov. 18, 2010].

9. ASM and Longacre's objections to confirmation of the Debtor/Committee/Lender Plan and the related disclosure statement, as well as those entities' votes to reject the Debtor/Committee/Lender Plan, were based upon the existence of a $150 million "cap" on payments to be made on account of General Unsecured Claims against the Subsidiary Debtors that existed in earlier versions of the Debtor/Committee/Lender Plan. See Objection to Proposed Specific Disclosure Statements Relating to Certain Proposed Plans of Reorganization filed by Ad Hoc Committee of Subsidiary Trade Creditors filed on Nov. 18, 2010 [D.I. 6500] (asserting, among other things, that the presence of the $150 million cap requires substantial additional disclosure respecting General Unsecured Claims against the Subsidiary Debtors); Objection to the Debtors' Plan of Reorganization Filed by Ad Hoc Committee of Subsidiary Trade Creditors filed on Feb. 15. 2011 [D.I. 7973] at ¶¶ 1, 3, 5, 6, 9 (tying Ad Hoc Committee's objections to the Debtor/Committee/Lender Plan to issues allegedly presented by the $150 million cap).

10. The proposed letter that ASM and Longacre sought to include in the solicitation packages accompanying the Debtor/Committee/Lender Plan, which was filed with the Bankruptcy Court on December 3, 2010 [D.I. 6733; filed Dec. 3, 2010, at Exhibit A], also makes plain that the $150 million cap was the reason behind ASM and Longacre's objections to the Debtor/Committee/Lender Plan. That letter set forth ASM and Longacre's belief that the $150

million cap made it unclear "how much, or what amount, trade creditors [against the Subsidiary Debtors] will receive on account of their allowed claims," as well as when those creditors would receive payment. See id. The letter went on to add that ASM and Longacre believe that trade creditors of each of the Subsidiary Debtors are legally entitled to be paid in full in cash, and then urged holders of General Unsecured Claims against the Subsidiary Debtors to vote to reject the Debtor/Committee/Lender Plan. See id. The Debtors understand that while the other Voting Parties did not join ASM and Longacre as members of the Ad Hoc Committee of Subsidiary Trade Creditors, the views of ASM and Longacre nonetheless were communicated to the other Voting Parties, and they also voted to reject the Debtor/Committee/Lender Plan based on those views.

11. The Debtors and the other proponents of the Debtor/Committee/Lender Plan communicated with ASM and Longacre following the expiration of the solicitation and objection periods respecting the plan, with the aim of consensually resolving ASM and Longacre's outstanding issues thereon. Those negotiations were ultimately successful, and resulted in the proponents of the Debtor/Committee/Lender Plan agreeing to amend the plan to remove the $150 million cap, such that the Debtor/Committee/Lender Plan now provides that holders of allowed General Unsecured Claims against Subsidiary Debtors will receive cash equal to 100% of the amount of such claims. See Debtor/Committee/Lender Plan at § 3.3.5(b).[3] The Debtors have also received from ASM and Longacre lists of claims that those parties assert that they own, which the Debtors have reviewed, compared to their books and records, and advised ASM and

---

[3] The Debtor/Committee/Lender Plan also requires as a condition to effectiveness that the proponents of that plan other than the Debtors determine, in their reasonable good faith judgment, that the aggregate amount of Allowed General Unsecured Claims against all Subsidiary Debtors will not exceed $150,000,000 *plus* an amount equal to the aggregate amount of Allowed General Unsecured Claims against a Subsidiary Debtor arising under section 502(h) of the Bankruptcy Code as a result of the payment to the Estates on account of an Ordinary Litigation Claim (as defined in the Debtor/Committee/Lender Plan). See Debtor/Committee/Lender Plan at § 10.1.1(p).

6

Longacre as to the results of that comparison, including circumstances where the Debtors have reconciled the claims to their books and records as well as circumstances where the Debtors have previously objected to the claim or have an objection to the claim pending, the claim has been superseded by another claim, the transfer of the claim has been identified has defective or non-existent, or the Debtors intend to object to allowance of the claim on one or more grounds.

12. As a result of the modifications to the Debtor/Committee/Lender Plan, ASM and Longacre agreed to (i) withdraw the Ad Hoc Committee of Subsidiary Trade Creditors's objection to confirmation of the Debtor/Committee/Lender Plan, and (ii) change their votes previously cast to reject the Debtor/Committee/Lender Plan to votes to accept such plan, given that they now supported confirmation of the Debtor/Committee/Lender Plan. This agreement was embodied in a stipulation between the Debtors, on the one hand, and ASM and Longacre, on the other hand, which stipulation was filed with the Bankruptcy Court on March 7, 2011 [D.I. 8288]. A copy of that stipulation is attached hereto as Exhibit B. Furthermore, the remaining Voting Parties (DACA, Fair Harbor, and LSI) also agreed to change their rejections of the Debtor/Committee/Lender Plan to acceptances of such plan as a result of the same modifications that resolved the objections of ASM and Longacre, with the Debtors conducting a similar review of lists of claims those parties purport to own as described in the previous paragraph respecting the claims asserted to be owned by ASM and Longacre. Those Voting Parties' agreements to change their votes on the Debtor/Committee/Lender Plan are embodied in the stipulations attached hereto as Exhibit C, Exhibit D, and Exhibit E. Appended to each of the stipulations has is an exhibit thereto reflecting the votes to reject the Debtor/Committee/Lender Plan that are to be changed to acceptances as a result of the modifications to the Debtor/Committee/Lender Plan

46429/0001-7520015v1

and the stipulations, and the Debtors seek approval for the changes of such votes from rejections to acceptances by this Motion.

## ARGUMENT

13. Acceptance of a plan is governed by Section 1126 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules. The Bankruptcy Court may, after notice and a hearing, permit a creditor to change or withdraw an acceptance or rejection of a plan "for cause shown." Fed. R. Bankr. P. 3018(a). As one court has noted, this provision was modified in Bankruptcy Rule 3018(a) from its original text specifically "to allow the court to permit a creditor or equity security holder to change or withdraw an acceptance for cause shown whether or not the time fixed for voting has expired," given that "the prior rule allowed a change of vote for cause but only within the time fixed for acceptance or rejection of a plan." In re MCorp Fin., Inc., 137 B.R. 237, 238-39 (Bankr. S.D. Tex. 1992); see also In re Drexel Burnham Lambert Group, Inc., 140 B.R. 347, 351 (S.D.N.Y. 1992) (noting that Bankruptcy Rule 3018(a) was amended expressly to remove the prior prohibition on changing votes after the time for voting on a plan had expired).

14. Case law and commentary makes clear that the "test for determining whether cause has been shown should not be a difficult one to meet." MCorp, 137 B.R. at 238; see also In re Dow Corning Corp., 237 B.R. 374, 377 (Bankr. E.D. Mich. 1999). As long as the reason for a vote change does not stem from an improper motivation or similar taint, a change of vote should usually be permitted. See 9 Collier on Bankruptcy ¶ 3018.01[4] (16th ed. rev. 2011); see also MCorp., 137 B.R. at 238; Dow Corning, 237 B.R. at 377; In re Cajun Elec. Power Co-Op., Inc., 230 B.R. 715, 744 (Bankr. M.D. La. 1999) (approving change of vote where no showing was made that the reason for the vote change was tainted or improperly motivated).

46429/0001-7520015v1

15. Courts have expressly approved changes of votes pursuant to Bankruptcy Rule 3018(a) where the change results from a settlement agreement or plan modification. In Cajun Elec. Power Co-Op., the court concluded, after reviewing applicable case law, that "subsequent negotiations between the plan proponent and the party seeking to change its ballot suffices as the required cause" under Rule 3018(a), and went on to approve the change of vote as part of an overall settlement. 230 B.R. at 743-44. Similarly, in In re CGE Shattuck, LLC, 2000 Bankr. LEXIS 1806, at *5 (Bankr. D.N.H.), the court permitted a vote to be changed following a plan proponent's modification of the plan. See also In re Cisneros Restaurants, Inc., 2010 WL 5266068 (Bankr. N.D. Tex.) (creditor was permitted to change its vote to accept plan following representation by debtor's counsel that the issued raised in the creditor's confirmation objection were consensually resolved); In re Azabu Bldgs. Co. Ltd., 2007 WL 1964306 at *13 (Bankr. D. Haw.) (resolution pursuant to settlement agreement was appropriate cause to allow a creditor to change its vote to accept plan). As the Cajun Elec. Power Co-Op court observed, "[t]he goal after all is consensual plans." 230 B.R. at 744 (citing In re Am. Solar King, 90 B.R. 808 (Bankr. W.D. Tex. 1988)).

16. Here, approval of the requested vote changes should be approved because the vote changes result from a settlement between the parties on the terms of the Debtor/Committee/Lender Plan. The record is clear that ASM's and Longacre's objections to confirmation of the Debtor/Committee/Lender Plan, their votes against such plan, and the votes against the Debtor/Committee/Lender Plan cast by the other Voting Parties were all motivated by their opposition to the $150 million cap on recoveries for General Unsecured Claims at the Subsidiary Debtors. The proponents of the Debtor/Committee/Lender Plan agreed to modify the Debtor/Committee/Lender Plan in order to resolve the relevant objections to confirmation and

9

secure accepting votes from the Voting Parties. Each of the stipulations attached hereto as Exhibits B through E recites these facts in a straightforward manner. Accordingly, it cannot be disputed that the proposed change of votes does not stem from an impermissible purpose, and should accordingly be approved.

17. Moreover, the instant circumstance is directly comparable to those cases that have approved changes in votes where the proposed change resulted from a settlement between the parties. The proposed vote changes are necessary to reflect accurately the change in the Voting Parties' views of the Debtor/Committee/Lender Plan that result from the modifications that have been made such plan; i.e., removal of the $150 million cap. Absent approval of the relief sought herein, an absurd situation will result: the Voting Parties will continue to reject the Debtor/Committee/Lender Plan despite the fact that the plan has been modified specifically to address and resolve their objection to it. The Court should not let such a result stand, and should approve the requested changes of votes herein.

18. The Debtors further request that the Voting Agent be authorized to effect the requested vote changes herein by filing an amended voting report respecting the Debtor/Committee/Lender Plan with the Bankruptcy Court. In addition, the Debtors request that such amended voting report be included in the record of the confirmation hearing pursuant to the order approving this Motion. These elements of the relief requested are ministerial but necessary to effect of the vote changes sought herein, and should be approved on that basis.

## NOTICE

19. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for the

Debtors' post-petition loan facility; (v) the Voting Parties and, where applicable, their counsel; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

20. No prior request for the relief sought herein has been made to this or to any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) approving the change of all votes listed on <u>Exhibit A</u> to this Motion from votes to reject the Debtor/Committee/Lender Plan to votes to accept the Debtor/Committee/Lender Plan for cause shown as described herein, (ii) authorizing the Voting Agent to prepare and file an amended voting report respecting the Debtor/Committee/Lender Plan to reflect the vote changes described herein, and the inclusion of the voting report as so amended into the record of the confirmation hearing respecting the Debtor/Committee/Lender Plan and (iii) granting such other relief as the Court deems just and proper.

Dated: Wilmington, Delaware
April 7, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Kenneth P. Kansa
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION