**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| **TRIBUNE COMPANY,** *et al.*, ) | |
| ) | Case No. 08-13141 (KJC) |
| Debtors. ) | Jointly Administered |
| ) | Re: Docket No. 8469 |

**SAM ZELL'S LIMITED OBJECTION TO THE COMMITTEE'S
MOTION TO AMEND THE DEFINITION OF "TERMINATING EVENT"**

Sam Zell ("Mr. Zell") respectfully submits this limited objection to the Motion to Amend Definition of "Termination Event" In Orders Granting Official Committee of Unsecured Creditors Standing and Authority to Commence, Prosecute, Settle and Recover Certain Cause of Action on Behalf of the Debtors' Estates (the "Committee's Motion") that was filed by the Official Committee of Unsecured Creditors (the "Committee") on March 21, 2010 [Dkt. No. 8469].

Mr. Zell objects to the Committee's Motion to the extent that it would delay his right to file appropriate motions in response to the purported claims asserted against him in an amended complaint filed by the Committee, *Official Committee of Unsecured Creditors of Tribune Co., et al. v. FitzSimons*, *et al.*, Adversary Proceeding No. 10-54010 (the "Amended LBO Complaint").

It is fundamentally unfair to expose Mr. Zell to reputational injury based on untrue, unsupportable, and defamatory assertions—made in the form of judicial pleadings—without affording him a timely opportunity to respond.  Extension of the stay not only would allow these unfounded and defamatory accusations to stand without response on the public record, it would violate the fundamental principles of Federal Rule of Bankruptcy Procedure 1001, which, like Federal Rule of Civil Procedure 1, demands the "the just, speedy, and inexpensive determination

of every case and proceeding." Fed. R. Bankr. P. 1001; Fed. R. Civ. P. 1. Federal courts recognize that, consistent with Rule 1, "[m]eritless claims should be disposed of at the first appropriate opportunity." *Hungate v. United States*, 626 F.2d 60, 62 (8th Cir. 1990); *see also Colorado v. Carter*, 678 F.Supp. 1484, 1486 (D. Colo. 1986) (Under Rule 1, "Defendants have a right to be free from harassing, abusive, and meritless litigation. Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior.") (Citations omitted).

The claims against Mr. Zell are baseless. Both the independent Examiner appointed by this Court and the DCL Proponents' key expert have concluded that these purported claims have no merit and will result in no recovery to the Debtors' Estates. Mr. Zell is entitled to demonstrate without further undue delay that this Court should strike or dismiss those baseless claims, pursuant to Federal Rules of Bankruptcy Procedure 7012 and 9011.

The Committee's Amended LBO Complaint alleges at least the following three purported claims against Mr. Zell, even though the Committee lacks any reasonable basis to assert these claims:

- A claim that Mr. Zell allegedly aided and abetted breaches of fiduciary duties by the Tribune's Special Committee at Step One, at a time when Mr. Zell was sitting across the table from the Special Committee, at its invitation, bargaining at arms-length to purchase Tribune on terms acceptable to the Special Committee. (Count VII.) There is no factual basis for depriving Mr. Zell of the well-established legal protections against aiding-and-abetting liability for a party negotiating across the table from a party that allegedly breaches its fiduciary duty. The Examiner found this alleged claim "highly unlikely" to succeed.

- A claim that Mr. Zell breached his fiduciary duties when he became a director after Step One was approved, notwithstanding that he completely abstained from any board actions related to the transaction. (Count II and a similar claim under Delaware General Corporate Law Sec. 160 in Count XI.) This claim is directly contrary to controlling Delaware authority. The Examiner was not even asked to address whether Mr. Zell could breach fiduciary duties when he abstained from

  taking action on a transaction in which he had a known and fully disclosed interest.

- A claim that EGI-TRB's corporate substance should be "pierced" and disregarded so that Mr. Zell should be liable as its "alter-ego." The Amended LBO Complaint simply makes the conclusory allegation that EGI-TRB was Mr. Zell's "alter-ego," and is bereft of *any* of the factual allegations that would be necessary to state such a difficult claim, including a lack of corporate formalities, inadequate capitalization, or a sham purpose. No party considered this newly-minted theory sufficiently credible to ask the Examiner to consider it, and the Examiner nowhere identified it as a plausible basis for liability. It is well beyond the pale.

  The Committee has tellingly sought to avoid a decision on the merits of those purported claims, while continuing to broadcast vilifying and unsupportable allegations for public consumption. First, because these purported claims are not colorable and will not benefit the estate, Mr. Zell opposed the Committee's motion seeking confirmation that it has standing to pursue them. [Dkt. Nos. 7164 and 7613.] Rather than allow this objection to be determined on the merits in an adjudicated proceeding, the Committee ran away—it withdrew its own motion in order to avoid a decision on whether its claims are even colorable. [Dkt. No. 8112, Notice of Withdrawal of Motion to Confirm Standing Solely as to Samuel Zell and EGI-TRB, LLC (Filed 02/23/11).]

  Second, Mr. Zell sought to require the Committee and its counsel to meet their obligations under Rule 9011, by serving a Rule 9011 motion on them, that would afford them 21 days to withdraw their pleadings or risk sanctions. In response, the Committee has sought to use the stay Order to avoid their professional Rule 9011 obligations, asserting that the stay prohibits Mr. Zell from even *serving* his Rule 9011 motion. As a result, Mr. Zell has been compelled to file a motion for clarification that leave is not necessary simply to *serve* his Rule 9011 motion upon the Committee and its counsel. [Dkt. No. 8478.]

Now, the Committee and its counsel seek to extend the very stay Order that they have unfairly used to avoid their own professional responsibility obligations.

The Committee's charade must stop. Any doubt about whether these claims are colorable or whether their prosecution would benefit the Debtors' Estates was put to rest at the confirmation hearing. Professor Black, the DCL Plan Proponents' key expert witness, testified that he agrees with Examiner Klee's conclusion that none of the identified claims against Mr. Zell has merit. Professor Black's testimony confirms that the Committee does not even have standing to pursue the claims against Mr. Zell because they do not "have a meaningful chance of success" and do not have "significant recovery value":

> Q   Okay. And do you recall that one of the claims that you did not list among those claims were the alleged [breach] of fiduciary duty and aiding and abetting breach of fiduciary duty claims that have been alleged against my client, Mr. Zell?
>
> A   That's correct.
>
> Q   Okay. And, in fact, *your opinion is that these alleged claims against Mr. Zell do not have a significant recovery value*. Isn't that correct?
>
> A   *That is my opinion.*
>
> Q   And you come to that conclusion, come [to] that opinion because you do not believe that these claims have a meaningful chance of success. Isn't that correct?
>
> A   That's correct. If they were to succeed, there were large dollars attached, but *I do not think they have a meaningful chance of success.*
>
> Q   And that's true both for any claims alleged at Step 1 or any claims alleged at Step 2[?]
>
> A   Yes.

(Ex. A (3/10/11 Tr.) at 51:18-52:12 (emphasis added).)

Professor Black testified that there was no basis for claims against Mr. Zell because the record shows that Mr. Zell negotiated at arm's length and abstained from participating in board actions related to the transaction:

> Q  [O]ne of the reasons why you reach the opinion that there are not claims with a meaningful chance of success against Mr. Zell at Step 1 is because Mr. Zell was on the other side of the deal from the Tribune. Correct?
>
> A  That is an important source of my opinion. ***So he could not be liable for breach of fiduciary duty as a director because he was not a director at the time that Step 1 was negotiated*** and entered into is my understanding.
>
> Q  And you have no reason or no evidence that you have seen that the negotiations regarding the acquisition of the Tribune were anything other than arm's length.
>
> A  I have seen ***no evidence that they were other than at arm's length***.
>
> Q  And, in fact, with regard to Step 2, the evidence that you're aware of is that Mr. Zell abstained from all of the Tribune board's consideration of the second step merger.
>
> A  So I believe what I say in my report is he abstained we know is a formal matter, he abstained. So unless he was informally or secretly trying to influence Tribune decision, Tribune's decision, then ***it's hard to see how he is liable as a director and I am aware of no evidence that he was secretly trying to influence Tribune's decision.*** Let me stop there.
>
> Q. Okay. And so you have not seen any evidence in the record based upon your review that you've undertaken for the last year, that the claims against Mr. Zell or EGI-TRB have any significant merit. Correct?
>
> A. That's my view.

(*Id.* at 52:20-53:24 (emphasis added).)

Professor Black also confirmed that in his opinion there is no evidence that Mr. Zell acted with bad faith:

> Q  And in your opinion, there's no basis in the record to suggest that Mr. Zell [in] any way acted in bad faith here.

5

> A  I have seen no evidence in the record to suggest bad faith on the part of Mr. Zell.
>
> Q  And in your opinion, you've seen no basis in the record to suggest that Mr. Zell knew or thought that the Tribune was insolvent at any point during Step 1 or Step 2?
>
> A  I am not aware of evidence in the record that Mr. Zell believed Tribune was insolvent at either Step 1 or Step 2. And as I testified at deposition, there is some evidence suggesting he believed Tribune continued to be solvent at Step 2.

(*Id*. at 53:25-54:12.)

The Committee should not be allowed to continue to assert purported claims against Mr. Zell that lack any reasonable basis in law or fact and then shield those claims from challenge through a stay.  Consistent with Federal Rule of Civil Procedure 1 (and its bankruptcy analogue Rule 1001), Mr. Zell is entitled to the "just" and "speedy" resolution of these claims.  There is no dispute that the Court is well authorized to grant that relief—the Court "has inherent authority and jurisdiction to consider and enforce the terms of orders it enters, including Standing Orders." (Comm. Mot. ¶8 citing *Langston Law Firm v. Mississippi,* 410 B.R. 150, 155 (S.D.N.Y. 2008), among others.)  That discretion and authority should be exercised to promote the speedy disposition of baseless claims, especially here, where the Committee has attempted to put Mr. Zell's "good name, reputation, honor, or integrity [] at stake." *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (recognizing, in a different context, the critical importance of having a timely opportunity to protect one's reputation).

The Committee incorrectly asserts that "all parties in interest will benefit by the extension of the April 1, 2011 Termination Event requested by [its] Motion." (Comm. Mot. ¶10.)  No one benefits by insulating the Committee's frivolous claims against Mr. Zell from challenge at that time.

Mr. Zell should have the opportunity, without further delay, to expose as the Committee's publicly filed allegations as a sham. This Court should deny the Committee's request to extend the stay with respect to motions by Mr. Zell directed to the sufficiency and basis for the claims against him, including, but not limited to, a Rule 9011 motion and a motion pursuant to Rule 7012.

## CONCLUSION

For the foregoing reasons, this Court should sustain Mr. Zell's limited objection to the Committee's Motion.

Respectfully submitted,

Dated: April 11, 2011    **BLANK ROME LLP**

By:  /s/ *David W. Carickhoff*
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

and

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice*)
Catherine L. Steege (admitted *pro hac vice*)
Douglas A. Sondgeroth (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

*Counsel for Samuel Zell*