# **<u>EXHIBIT A</u>**

```
                IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE


IN RE:                            )    Case No. 08-13141-KJC
                                  )
                                  )
TRIBUNE COMPANY,                  )    Chapter 11
                                  )
                                  )    Courtroom 5
                                  )    824 Market Street
          Debtors.                )    Wilmington, Delaware
                                  )
                                  )    March 10, 2011
                                  )    10:00 a.m.


                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                   UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:               Sidley Austin, LLP
                           BY: JAMES CONLAN, ESQ.
                           BY: JAMES BENDERNAGEL, ESQ.
                           BY: JAMES DUCAYET, ESQ.
                           One South Dearborn
                           Chicago, IL 60603
                           (312) 853-7000

                           Cole, Schotz, Meisel, Forman
                           & Leonard, P.A.
                           BY: NORMAN PERNICK, ESQ.
                           500 Delaware Ave., Ste. 1410
                           Wilmington, DE 19801
                           (302) 652-3131

ECRO:                      BRANDON McCARTHY

Transcription Service:     DIAZ DATA SERVICES
                           331 Schuylkill Street
                           Harrisburg, Pennsylvania 17110
                           (717) 233-6664
                           www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1  examination?

2          MS. STEEGE:  Good morning, Your Honor.  Catherine
3  Steege on behalf of EGI, TRB, and Mr. Zell.
4  BY MS. STEEGE:
5  Q     Good morning, Professor Black.
6  A     Good morning.
7  Q     Just a few questions for you.  Do you recall that you
8  testified yesterday afternoon on direct that you had
9  allocated $300 million of value to the litigation trust in
10 connection with offering your opinion about the
11 reasonableness of the DCL plan settlement?
12
13 A     As a moderately conservative estimate, yes.
14 Q     Okay.  And you also testified as to how you arrived at
15 that $300 million which claims you included in arriving at
16 that number.  Do you recall that testimony?
17 A     Yes, I do.
18 Q     Okay.  And do you recall that one of the claims that
19 you did not list among those claims were the alleged bridge
20 of fiduciary duty and aiding and abetting breach of
21 fiduciary duty claims that have been alleged against my
22 client, Mr. Zell?
23
24 A     That's correct.
25 Q     Okay.  And, in fact, your opinion is that these
   alleged claims against Mr. Zell do not have a significant

1  recovery value.  Isn't that correct?
2  A     That is my opinion.
3  Q     And you come to that conclusion, come that opinion
4  because you do not believe that these claims have a
5  meaningful chance of success.  Isn't that correct?
6  A     That's correct.  If they were to succeed, there were
7  large dollars attached, but I do not think they have a
8  meaningful chance of success.
9  Q     And that's true both for any claims alleged at Step 1
10 or any claims alleged at Step 2.
11 A     Yes.
12 Q     Okay.  Now there's been some questions asked about
13 your bankruptcy law experience and you've been candid that
14 you don't hold yourself out as a bankruptcy law expert, but
15 one of the things you do hold yourself out as, as a
16 corporate governance expert.  Correct?
17 A     Corporate law, corporate governance, corporate
18 acquisitions, yes.
19 Q     Okay.  And in connection with that expertise, one of
20 the reasons why you reach the opinion that there are not
21 claims with a meaningful chance of success against Mr. Zell
22 at Step 1 is because Mr. Zell was on the other side of the
23 deal from the Tribune.  Correct?
24 A     That is an important source of my opinion.  So he

1  could not be liable for breach of fiduciary duty as a
2  director because he was not a director at the time that Step
3  1 was negotiated and entered into is my understanding.
4  Q    And you have no reason or no evidence that you have
5  seen that the negotiations regarding the acquisition of the
6  Tribune were anything other than arm's length.
7  A    I have seen no evidence that they were other than at
8  arm's length.
9  Q    And, in fact, with regard to Step 2, the evidence that
10 you're aware of is that Mr. Zell abstained from all of the
11 Tribune board's consideration of the second step merger.
12 A    So I believe what I say in my report is he abstained
13 we know is a formal matter, he abstained.  So unless he was
14 informally or secretly trying to influence Tribune decision,
15 Tribune's decision, then it's hard to see how he is liable
16 as a director and I am aware of no evidence that he was
17 secretly trying to influence Tribune's decision.  Let me
18 stop there.
19 Q    Okay.  And so you have not seen any evidence in the
20 record based upon your review that you've undertaken for the
21 last year, that the claims against Mr. Zell or EGI, TRB have
22 any significant merit.  Correct?
23 A    That's my view.
24 Q    And in your opinion, there's no basis in the record to
25

1  suggest that Mr. Zell any way acted in bad faith here.
2  A     I have seen no evidence in the record to suggest bad
3  faith on the part of Mr. Zell.
4  Q     And in your opinion, you've seen no basis in the
5  record to suggest that Mr. Zell knew or thought that the
6  Tribune was insolvent at any point during Step 1 or Step 2?
7  A     I am not aware of evidence in the record that Mr. Zell
8  believed Tribune was insolvent at either Step 1 or Step 2.
9  And as I testified at deposition, there is some evidence
10 suggesting he believed Tribune continued to be solvent at
11 Step 2.
12 Q     Okay.  Now, in fact, if a litigation trust or a party
13 pursues a claim without significant merit that has a very,
14 very low probability for success and they don't hit a home
15 run and lose, that can cause the litigation trust or the
16 party bringing that claim to suffer some economic downside.
17 Correct?
18 
19          MR. SOTTILE:  Objection to form, lack of
20 foundation.
21          THE COURT:  Well, let me just ask this.
22 Understanding that almost every question asked on cross is
23 designed in some respect to be self serving --
24 (Laughter)
25          THE COURT:  -- even I get the point.