# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> TRIBUNE COMPANY, *et al.*, <br><br> Debtors. | Chapter 11 <br> Case No. 08-13141 (KJC) <br> Jointly Administered <br><br> **Related Docket No. 8622** |

## AMENDED[1] SUPPLEMENTAL OBJECTION OF THE NOTEHOLDER PLAN PROPONENTS TO THE SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A. (AS MODIFIED)

Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius"), Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee[2] for certain series of Senior Notes ("Deutsche Bank"), Law Debenture Trust Company of New York, in its capacity as successor Indenture Trustee for certain series of Senior Notes ("Law Debenture") and Wilmington Trust Company, in its capacity as successor Indenture Trustee for the PHONES Notes ("Wilmington Trust" and, together with Aurelius, Deutsche Bank and Law Debenture, the "Noteholder Plan Proponents"), by and through their undersigned counsel, submit this supplemental objection (the "Supplemental Objection") to the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (as modified) (the "Modified Second Amended DCL Plan") Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan

---

[1] The only changes reflected in this amended supplemental objection are contained in paragraph 7 hereof. Attached as Exhibit 1 is a blackline reflecting such changes to the previously filed document [*D.I.* 8622].

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Modified Second Amended DCL Plan.

Chase Bank, N.A. (collectively, the "DCL Plan Proponents"). In support of this Supplemental Objection, the Noteholder Plan Proponents respectfully state as follows:

## PRELIMINARY STATEMENT

1. On April 5, 2011, the DCL Plan Proponents filed the Modified Second Amended DCL Plan. The Modified Second Amended DCL Plan was purportedly filed to, among other things, address certain objections raised by the Noteholder Plan Proponents to the prior version of such plan. Specifically, as explained in the notice accompanying the Modified Second Amended DCL Plan (the "Notice"), the DCL Plan Proponents amended their plan to: (i) provide Holders of Senior Noteholder Claims and Other Parent Claims with the option to elect to receive their treatment under the Modified Second Amended DCL Plan in the form of (x) a strip of consideration (i.e., New Common Stock, New Senior Secured Term Loan and Cash) or (y) all Cash; and (ii) eliminate the releases for the Step One Selling Stockholders. While the DCL Plan Proponents assert that these amendments strengthen "the reasonableness of the settlement contemplated" by the Modified Second Amended DCL Plan, a critical analysis proves such assertion to be unsupportable. Notice at 5.

2. Moreover, by amending their plan to provide the Senior Noteholders and Holders of Other Parent Claims with the option to receive a strip of consideration, the DCL Plan Proponents have determined that they need to resolicit the votes of the Senior Lender Class. As a result, the DCL Plan Proponents cannot, under applicable law, proceed with confirmation of the Modified Second Amended DCL Plan at this time. Indeed, in connection with the resolicitation of the Senior Lender Class, the DCL Plan Proponents must prepare, file and obtain approval of a revised disclosure statement in accordance with the provisions of Bankruptcy Code section 1125. Accordingly, the Noteholder Plan Proponents submit that the confirmation hearing, as it pertains to the Modified Second Amended DCL Plan, must be adjourned until the

DCL Plan Proponents have completed the resolicitation of the Senior Lenders in accordance with applicable law.

## SUPPLEMENTAL OBJECTION

### I. Allowing the Senior Noteholders to Elect to Receive a Strip of Consideration Does Not Alter the Reasonableness of the Settlement

3. The Noteholder Plan Proponents acknowledge that the amendments contained in the Modified Second Amended DCL Plan to provide Holders of Senior Noteholder Claims and Other Parent Claims with the option to receive a "strip of consideration" cures one of the DCL Plan's violations of Bankruptcy Code section 1129(b)(1). This amendment, however, does *nothing* to remedy the fact that the settlement upon which the Modified Second Amended DCL Plan is premised fails to satisfy Bankruptcy Rule 9019. Indeed, if the DCL Plan Proponents are correct that the Debtors' DEV is $6.75 billion, the Modified Second Amended DCL Plan does not contemplate a *single* dollar of additional consideration to be paid by the Senior Lenders to settle the LBO-Related Causes of Action. Notice at 3. Rather, by giving Senior Noteholders the option to receive a strip of consideration, the DCL Plan Proponents have merely acknowledged that the prior version of the DCL Plan unfairly prejudiced Holders of Senior Noteholder Claims and other creditors by preserving solely for the Senior Lenders the benefit of any increase in the Debtors' DEV. In this regard, a review of the DCL Plan Proponents' position on the recent amendments to the Noteholder Plan is instructive in analyzing the DCL Plan Proponents' motives.

4. In their Supplement to "Joint Objection of the Debtors, the Official Committee of Unsecured Creditors, Angelo, Gordon & Co. L.P., Oaktree Capital Management, L.P. and JPMorgan Chase Bank, N.A. to Confirmation of the Noteholder Plan" (the "Supplemental DCL Objection"), the DCL Plan Proponents criticize the recent amendments to the Noteholder Plan.

Specifically, the DCL Plan Proponents, who previously reserved *all* of the equity in Reorganized Tribune for themselves under their prior plan, have the temerity to assert that by distributing between 69.5% and 78.8% (assuming a $6.75 billion DEV) of the equity value in Reorganized Tribune on the Effective Date to the Senior Lenders, the Noteholder Plan now discriminates unfairly against the Senior Lenders by giving them *too much* equity. Supplemental DCL Objection at 4. Indeed, the DCL Plan Proponents, who spent a significant amount of time in their objection to the Noteholder Plan and at trial challenging the provisions of the Noteholder Plan that contemplated the reservation of a material amount of the equity value in Reorganized Tribune, are now taking the logically inconsistent position that the changes to the Noteholder Plan make it "less confirmable" and that the amendments to the Noteholder Plan represent "no concession whatsoever in the consideration the Noteholders provide themselves." *Id.* at 2. The complaint by the DCL Plan Proponents that the amendments to the Noteholder Plan does not result in any concession by the Noteholders in the amount of consideration they provide themselves suggests that the DCL Plan Proponents totally misapprehend the underlying premise of the Noteholder Plan.

5. As the DCL Plan Proponents should be well aware, under the Noteholder Plan, recoveries to creditors (other than the Step Two Senior Lenders) are generally based on a worst-case litigation outcome. As a result, under the Noteholder Plan, Senior Noteholders will only receive as an initial distribution what they would be entitled to receive if *none* of the LBO-Related Causes of Action were successful. The Senior Noteholders do not reduce any of the consideration they receive under the Noteholder Plan for the simple reason that they are already receiving the bare minimum to which they would be entitled under a *complete litigation loss*

4

scenario – a recovery set at just 4.8%[3] of the aggregate Allowed amount of all Senior Noteholder Claims (assuming a $6.75 billion DEV).

6. The "concession" contemplated by the amendments contained in the Modified Second Amended DCL Plan, however, is to bestow upon Senior Noteholders the right to receive something they were already legally entitled to – the right to an increased recovery if the Debtors' DEV is determined to be greater than $6.75 billion. To fault the Senior Noteholders for declining to give up an already minimal recovery under the Noteholder Plan while lauding the Senior Lenders for giving up something they never should have received in the first place (and were not entitled to as a matter of law) is disingenuous and ultimately ineffective. The DCL Plan was, and continues to be, predicated on a proposed settlement that does not meet the standards for approval articulated by this and other Courts and, thus, cannot be confirmed.

7. The Notice, in an effort to highlight the "improved" treatment of Senior Noteholders under the Modified Second Amended DCL Plan, indicates that at an $8.00 billion DEV, Senior Noteholder recoveries would increase from the $431 million they would have received under the prior DCL Plan to $509.5 million – an increase of $78.5 million.[4] Notice at 4. But even this incremental improvement in the treatment of Senior Noteholder Claims pales in comparison to what the Senior Noteholders are properly entitled to in light of the fact that the debt incurred in connection with Step Two of the LBO is highly likely to be avoided. As noted in the Noteholder Plan Proponents' initial objection to confirmation of the DCL Plan, the Noteholder Plan Proponents maintain that if Step Two is avoided but Step One is not, the non-LBO creditors (and not the Step One lenders) at both Tribune and the guarantor subsidiaries

---

[3] This recovery percentage is before taking into account the Senior Noteholders' use of a portion of their recovery to satisfy general unsecured claims at the Non-Guarantor Debtors (as defined in the Noteholder Plan).

[4] This figure does not include the arbitrary $300 million valuation the DCL Plan Proponents have ascribed to the claims held by the Litigation Trust – an estimate wholly without support or explanation.

would receive the benefits both of the avoidance of the Step Two obligations and all associated disgorgement. However, even if Step One lenders could benefit from Step Two avoidance, if the Court were to determine that the Debtors' DEV was $8.00 billion and if the Step Two obligations were avoided, there would be sufficient value to satisfy the Step One Lender Claims and the Senior Noteholder Claims in full, and provide Holders of PHONES Notes with a 34% recovery. The chart below illustrates the recoveries that would flow to both the Senior Noteholders (assuming the Senior Noteholders elect to receive a strip of consideration) and the PHONES Notes if the Step Two obligations were avoided at a range of DEVs and depending on whether Step One lenders were entitled to benefit from Step Two avoidance. As reflected in the chart, the Senior Noteholders would recover in full (i) even at a $6.75 billion DEV if Step One did not benefit from Step Two avoidance and (ii) at any DEV over $7.80 billion (substantially less than what the Noteholder Plan Proponents believe to be an appropriate DEV for these estates) even if Step One could benefit from Step Two avoidance.

| Noteholder Recoveries as a Percentage of Claim[5] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Distributable Enterprise Value (DEV) | Natural Waterfall Recovery | | Amended DCL Plan Recovery | | Recovery if Only Step Two is Avoided and Step One Lenders *Are* Entitled to Benefit Therefrom[6] | | Recovery if Only Step Two is Avoided and Step One Lenders *Are Not* Entitled to Benefit Therefrom | |
| | Senior Notes | PHONES Notes | Senior Notes | PHONES Notes | Senior Notes | PHONES Notes | Senior Notes | PHONES Notes |
| $6,750 | 4.8% | 0% | 33.6% | 0% | 26.4% | 0% | 100.0% | 87.3% |
| $6,900 | 4.9% | 0% | 34.3% | 0% | 37.5% | 0% | 100.0% | 92.6% |
| $7,050 | 5.0% | 0% | 35.1% | 0% | 48.5% | 0% | 100.0% | 98.0% |
| $7,200 | 5.1% | 0% | 35.8% | 0% | 59.6% | 0% | 100.0% | 100.0% |
| $7,350 | 5.2% | 0% | 36.5% | 0% | 70.6% | 0% | 100.0% | 100.0% |
| $7,500 | 5.3% | 0% | 37.3% | 0% | 81.7% | 0% | 100.0% | 100.0% |
| $7,650 | 5.4% | 0% | 38.0% | 0% | 92.7% | 0% | 100.0% | 100.0% |
| $7,800 | 5.6% | 0% | 38.7% | 0% | 100.0% | 6.9% | 100.0% | 100.0% |
| $7,950 | 5.7% | 0% | 39.5% | 0% | 100.0% | 27.0% | 100.0% | 100.0% |
| $8,000 | 5.7% | 0% | 39.7% | 0% | 100.0% | 33.8% | 100.0% | 100.0% |
| $8,100 | 5.8% | 0% | 40.2% | 0% | 100.0% | 47.2% | 100.0% | 100.0% |
| $8,250 | 5.9% | 0% | 40.9% | 0% | 100.0% | 67.3% | 100.0% | 100.0% |
| $8,400 | 6.0% | 0% | 41.7% | 0% | 100.0% | 87.4% | 100.0% | 100.0% |
| $8,550 | 6.1% | 0% | 42.4% | 0% | 100.0% | 100.0% | 100.0% | 100.0% |
| $8,700 | 6.2% | 0% | 43.1% | 0% | 100.0% | 100.0% | 100.0% | 100.0% |
| $8,850 | 6.3% | 0% | 43.9% | 0% | 100.0% | 100.0% | 100.0% | 100.0% |
| $9,000 | 6.4% | 0% | 44.6% | 0% | 100.0% | 100.0% | 100.0% | 100.0% |

8.  Moreover, what the DCL Plan Proponents fail to take account of is the fact that as the DEV increases, by necessity, the expected value of the LBO-Related Causes of Action likewise increases.

9.  In short, the Notice and the amendments it summarizes bring the Senior Lender settlement no closer to satisfying Bankruptcy Rule 9019, and the Modified Second Amended DCL Plan no closer to being confirmable.

---

[5] The table assumes low PHONES Notes Claims and no postpetition interest because there is no one subsidiary that is solvent as evidenced by, among other things, the magnitude of intercompany claims held by Tribune against its subsidiaries that cannot be satisfied in full.

[6] Assumes disgorgement of Step Two fees, costs and expenses.

## II. The Release Granted to the Released Stockholder Parties Should Not be Approved

10. A second amendment contained in the Modified Second Amended DCL Plan eliminates the release granted to Step One Selling Stockholders. Although the DCL Plan Proponents have now appropriately modified the release provision to strike the release of intentional fraud claims against the Step One Stockholder Parties, the Modified Second Amended DCL Plan still releases claims against the "Released Stockholder Parties" – now redefined to include, among others, (i) any person who sold shares of common stock held through the Tribune Company 401(k) Savings Plan in connection with either Step One or Step Two, and (ii) any person employed by the Debtors with respect to the first $100,000 of Cash received in connection with either Step One or Step Two. The release of the Released Stockholder Parties from intentional fraudulent conveyance claims is again not supported by any (let alone substantial) consideration, and therefore cannot be approved as a matter of law. *See In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).

## III. Consideration of the Modified Second Amended DCL Plan Must Be Adjourned

11. Based on the amendments contained in the Modified Second Amended DCL Plan that provide Senior Noteholders and Other Parent Claims the option to receive a strip of consideration, the DCL Plan Proponents have determined that the votes of the Senior Lender Class must be resolicited. Notice at 5. The law is well-settled that further disclosure is required if plan proponents are to resolicit the vote of a class on a modified plan after voting has occurred. *See Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1118 (11th Cir. 2006) (holding, when resolicitation is required, "that claim or interest is entitled to a new disclosure statement"); *In re G-1 Holdings, Inc.*, 420 B.R. 216, 256 (D.N.J. 2009) ("[s]ection 1127 requires a new disclosure statement" if creditor votes are to be resolicited); *In re Frontier Airlines, Inc.*, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988) (mandating additional disclosure

where there was to be resolicitation); *In re Concrete Designers, Inc.*, 173 B.R. 354, 358 (Bankr. S.D. Ohio 1994) (requiring further disclosure in connection with resolicitation); *In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988) (holding that further disclosure is required when and to the extent that the debtor intends to resolicit votes).

12. Based on the foregoing legal precedent, the DCL Plan Proponents cannot continue to prosecute the Modified Second Amended DCL Plan at the confirmation hearing currently scheduled to resume on April 12. Rather, the DCL Plan Proponents must instead prepare a new disclosure statement, obtain approval of the new disclosure statement at a yet-to-be-scheduled disclosure statement hearing, and only then commence the resolicitation of the Senior Lender Class and the prosecution of the Modified Second Amended DCL Plan. Accordingly, the Noteholder Plan Proponents respectfully submit that the confirmation hearing, as it pertains to the Modified Second Amended DCL Plan, must be adjourned until after the DCL Plan Proponents have completed the resolicitation of the Senior Lenders.

**-Remainder of Page Left Intentionally Blank-**

## CONCLUSION

WHEREFORE, the Noteholder Plan Proponents respectfully request that the Bankruptcy Court deny confirmation of the Modified Second Amended DCL Plan and grant the Noteholder Plan Proponents such other relief as the Court may deem just, proper and equitable.

Dated: April 12, 2011

| AKIN GUMP STRAUSS HAUER & FELD LLP | ASHBY & GEDDES, P.A. |
|---|---|
| Daniel H. Golden | |
| Philip C. Dublin | /s/ Leigh-Anne M. Raport |
| One Bryant Park | William P. Bowden (I.D. No. 2553) |
| New York, NY 10036 | Amanda M. Winfree (I.D. No. 4615) |
| (212) 872-1000 | Leigh-Anne M. Raport (I.D. No. 5055) |
| | 500 Delaware Avenue, P.O. Box 1150 |
| | Wilmington, DE 19899 |
| | (302) 654-1888 |

*Counsel for Aurelius Capital Management, LP*

McCARTER & ENGLISH, LLP  McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue  /s/ Katharine L. Mayer
New York, NY 10167  Katharine L. Mayer (I.D. No. 3758)
212-609-6800  Renaissance Centre
 405 N. King Street
 Wilmington, DE 19801
 302-984-6300

Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes

| | |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | BIFFERATO GENTILOTTI LLC |
| David S. Rosner | /s/ Garvan F. McDaniel |
| Sheron Korpus | Garvan F. McDaniel (I.D. No. 4167) |
| 1633 Broadway | 800 N. King Street, Plaza Level |
| New York, New York 10019 | Wilmington, Delaware 19801 |
| Tel: (212) 506-1700 | Tel: (302) 429-1900 |
| Fax: (212) 506-1800 | Fax: (302) 429-8600 |

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

| BROWN RUDNICK LLP | SULLIVAN HAZELTINE ALLINSON LLC |
|---|---|
| Robert J. Stark | |
| Martin S. Siegel | /s/ William D. Sullivan |
| Gordon Z. Novod | William D. Sullivan (I.D. No. 2820) |
| Seven Times Square | Elihu E. Allinson, III (I.D. No. 3476) |
| New York, NY 10036 | 901 N. Market Street, Suite 1300 |
| 212-209-4800 | Wilmington, DE 19801 |
| | 302-428-8191 |

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*