IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 08-13141(KJC) |
| | ) | |
| | ) | |
| TRIBUNE COMPANY | ) | Chapter 11 |
| | ) | |
| | ) | Courtroom 5 |
| | ) | 824 Market Street |
| Debtors. | ) | Wilmington, Delaware |
| | ) | |
| | ) | April 12, 2011 |
| | ) | 9:30 a.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: JAMES BENDERNAGEL, ESQ.
                                BY: JAMES DUCAYET, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                BY: RON FLAGG, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000


                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131

ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For Oaktree & Angelo Gordon:    Young Conaway Stargatt &
                                Taylor
                                BY: BLAKE CLEARY, ESQ.
                                The Brandywine Building
                                1000 West Street, 17th Floor
                                Wilmington, DE 19801
                                (302) 571-6600

                                Dewey & LeBeouf
                                BY: BRUCE BENNETT, ESQ.
                                BY: JAMES JOHNSTON, ESQ.
                                333 S. Grand Ave., Ste. 2600
                                Los Angeles, CA  90071-1530
                                (213) 621-6021

For Merrill Lynch:              Potter Anderson & Carroon, LLP
                                BY: LAURIE SILVERSTEIN, ESQ.
                                BY: R. STEPHEN MCNEILL, ESQ.
                                Hercules Plaza
                                1313 North Market Street
                                6th Floor
                                Wilmington, DE  19801
                                (302) 984-6033

For Barclays:                   DLA Piper
                                BY: MICHELLE MARINO, ESQ.
                                1251 Avenue of the Americas
                                New York, NY  10020-1104
                                (212) 335-4500

For Special Committee of the
Board of Directors:             Jones Day
                                BY: LAUREN BUONOME, ESQ.
                                222 East 41st Street
                                New York, NY  10017-6702
                                (212) 326-3787

For U. S. Trustee:              United States Trustee
                                BY: DAVID KLAUDER, ESQ.
                                844 King Street, Ste. 2207
                                Wilmington, DE  19801
                                (302) 573-6491

```
APPEARANCES:
(Continued)

For JP Morgan:              Davis Polk & Wardwell
                           BY: ELLIOT MOSKOWITZ, ESQ
                           BY: DAMIEN SCHAIBLE, ESQ.
                           BY: DON BERNSTEIN, ESQ.
                           BY: LYNN BUSATH, ESQ.
                           BY: BEN KOMNETZKY, ESQ.
                           BY: MICHAEL RUSSANO, ESQ.
                           BY: DANIEL LOSS, ESQ.
                           BY: ELI VONNEGUT, ESQ.
                           450 Lexington Avenue
                           New York, NY 10017
                           (212) 450-4000

                           Richards Layton & Finger
                           BY: ROBERT STEARN, ESQ.
                           One Rodney Square
                           920 North King Street
                           Wilmington, DE  19801
                           (302) 651-7700

                           Wiley Rein, LLP
                           BY: EVE REED, ESQ.
                           BY: JIM BAYES, ESQ.
                           1776 K Street, NW
                           Washington, DC  20006
                           (202) 719-7404

For Wilmington Trust:      Brown Rudnick
                           BY: MARTIN SIEGEL, ESQ.
                           185 Asylum Street
                           Hartford, CT  06103
                           (860)509-6519

                           Sullivan Hazeltine Allinson,
                           LLC
                           BY: WILLIAM SULLIVAN, ESQ.
                           4 East 8$^{th}$ Street, Suite 400
                           Wilmington, DE  19801
                           (302) 4268-8191
```

```
APPEARANCES:
(Continued)

For Official Committee
of Unsecured Creditors:        Landis, Rath & Cobb
                               BY: DANIEL B. RATH, ESQ.
                               BY: ADAM G. LANDIS, ESQ.
                               919 Market Street, Suite 1800
                               Wilmington, DE 19801
                               (302) 467-4400

                               Chadbourne & Parke, LLP
                               BY: DAVID LEMAY, ESQ.
                               BY: HOWARD SEIFE, ESQ.
                               BY: JAMES STENGER, ESQ.
                               BY: DOUGLAS DEUTSCH, ESQ.
                               BY: THOMAS MCCORMACK, ESQ.
                               BY: ANDREW ROSENBLATT, ESQ.
                               BY: MARC ASHLEY, ESQ.
                               30 Rockefeller Plaza
                               New York, NY 10112
                               (212) 408-5100

                               Zuckerman Spaeder
                               BY: JAMES SOTTILE, ESQ.
                               BY: ANDREW GOLDFARB, ESQ.
                               1800 M Street, NW
                               Suite 1000
                               Washington, DC 20036
                               (202) 778-1800

For Great Banc:                Womble Carlyle
                               BY: THOMAS M. HORAN, ESQ.
                               222 Delaware Avenue, Ste. 1501
                               Wilmington, DE  19801
                               (302) 252-4339

For DBTCA:                     McCarter & English
                               BY: KATHARINE MAYER, ESQ.
                               BY: DAVID ADLER, ESQ.
                               405 N. King Street, 8th Fl.
                               Wilmington, DE  19801
                               (302) 984-6312
```

APPEARANCES:
(Continued)

For Aurelius:                      Akin Gump Strauss Hauer & Feld
                                   BY: DANIEL GOLDEN, ESQ.
                                   BY: DAVID ZENSKY, ESQ.
                                   BY: ABID QUERSHI, ESQ.
                                   One Bryant Park
                                   New York, NY 10036
                                   (212) 872-1000

                                   Lerman Senter, PLLC
                                   BY: MEREDITH SENTER, ESQ.
                                   BY: SALLY BUCKMAN, ESQ.
                                   2000 K Street, NW, Ste. 600
                                   Washington, DC 20006
                                   (202) 429-8970

                                   Ashby & Geddes
                                   BY: WILLIAM BOWDEN, ESQ.
                                   500 Delaware Avenue
                                   Wilmington, DE  19809
                                   (302) 654-1888

                                   Friedman Kaplan Seiler &
                                   Adelman, LLP
                                   BY: EDWARD A/ FRIEDMAN, ESQ.
                                   BY: KIZZY JARASHOW, ESQ.
                                   7 Times Square
                                   New York, NY  1036-6516
                                   (212) 833-1100

Also Present:                      Dow Lohnes, PLLC
                                   BY: JOHN S. LOGAN, ESQ.
                                   1200 New Hampshire Ave., NW
                                   Suite 800
                                   Washington, DC  20036
                                   (202) 776-2640

TELEPHONIC APPEARANCES:

For SuttonBrook Capital:           SuttonBrook Capital
                                   Management, LP
                                   BY: CAROL L. BALE, ESQ.
                                   (212) 588-6640

TELEPHONIC APPEARANCES:
(Continued)

For George Dougherty:          Grippo & Elden, LLC
                               BY: GEORGE DOUGHERTY, ESQ.
                               (312) 704-7700

For Official Committee of
Unsecured Creditors:           Chadbourne & Park, LLP
                               BY: MARC ROITMAN, ESQ.
                               (212)408-5271
                               BY: JESSICA MARRERO, ESQ.
                               (212) 408-5100
                               BY: FRANCISCO VASQUEZ, ESQ.
                               (212) 408-5111

                               Zuckerman & Spaeder, LLP
                               BY: GRAEM BUSH, ESQ.
                               BY: ANDREW GOLDFARB, ESQ.
                               BY: JAMES SOTTILE, ESQ.
                               BY: ANDREW CARIDAS, ESQ.
                               (202) 778-1800

                               Landis Rath & Cobb, LLP
                               BY: MATTHEW B. MCGUIRE, ESQ
                               (302) 467-4431

For Bank of America:           O'Melveny & Myers
                               BY: DANIEL CANTOR, ESQ.
                               (212) 326-2000
                               BY: DANIEL SHAMAH, ESQ.
                               (212) 326-2138

                               Bank of America
                               BY: ESTHER CHUNG, ESQ.
                               (646) 855-6705

For Brigade Capital
Management:                    Brigade Capital Management
                               BY: NEIL LOSQUADRO
                               (212) 745- 9758

```
TELEPHONIC APPEARANCES:
(Continued)

For Citibank:                   Paul Weiss Rifkind Wharton
                                BY: KIRA DAVIS, ESQ.
                                (212) 373-3000
                                BY: ANDREW GORDON, ESQ.
                                (212)373-3543
                                BY: ANDREW LEVY, ESQ.
                                (202)223-7328
                                BY: SHANNON PENNOCK, ESQ.
                                (212) 373-3000
                                BY: ELIZABETH MCCOLM, ESQ.
                                (212) 373-3000
For Tribune:                    Sidley Austin
                                BY: GREG DEMO, ESQ.
                                (312) 853-7758
                                BY: JANET HENDERSON, ESQ.
                                BY: COLLEEN KENNEY, ESQ.
                                (312) 853-2931
                                BY: BRETT MYRICK, ESQ.
                                (312) 853-1049
                                BY: DENNIS TWOOMEY, ESQ.
                                (312) 853-7824
                                BY: PATRICK WACKERLY, ESQ.
                                (312) 853-7000

                                Tribune Company
                                BY: MICHAEL D. ONEAL, ESQ.
                                (312) 222-3490

For Former Special Committee
Of Tribune's Board of
Directors:                      Skadden Arps Slate Meagher &
                                Flom
                                BY: NICK CAMPANARIO, ESQ.
                                (312) 407-0974

                                Jones Day
                                BY: LYNN MARVIN, ESQ.
                                (212) 326-3978

For Anna Kalenchits:            Anna Kalenchits
                                (212)723-1808
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Aurelius Capital
Management:                   Aurelius Capital Management LP
                              BY: MATTHEW A. ZLOTO, ESQ.
                              (646) 445-6518

                              Akin Gump Strauss Hauer & Feld
                              BY: SHAYA ROCHESTER, ESQ.
                              (212) 872-1076
                              BY: NANCY CHUNG, ESQ.
                              (212) 872-1043

                              Friedman Kaplan Seiler &
                              Adelman
                              BY: GREGORY W. FOX, ESQ.
                              (212) 833-1177

For JP Morgan Chase Bank:     Davis Polk & Wardwell, LLP
                              BY: PETER KIM, ESQ.
                              (212) 450-3028

                              Richards Layton & Finger, PA
                              BY: MARK D. COLLINS, ESQ.
                              (302) 651-7531

                              JP Morgan Chase Bank, NA
                              BY: SHACHAR MINKOVE, ESQ.
                              (212) 834-7174

For Barclays:                 Mayer & Brown, LLP
                              BY: AMIT K. TREHAN, ESQ.
                              (212) 506-1717
                              BY: JEAN-MARIE ATAMIAN, ESQ
                              (212) 506-2678
                              BY: MICHAEL L. SIMES, ESQ.
                              (212) 506-2607
                              BY: BEN WILSON, ESQ.
                              (212) 412-7642

                              Latham & Watkins, LLP
                              BY: JASON B. SANJANA, ESQ.
                              (212) 906-4587
```

TELEPHONIC APPEARANCES:
(Continued)

For Partner Fund Management:   Vinson & Elkins, LLP
                               BY: LANCE A. MULHERN, ESQ.
                               (212) 237-0184

For Eos Partners:              Eos Partners
                               BY: MIKE J. SCHOTT, ESQ.
                               (212) 593-4046

For Merrill Lynch:             Kaye Scholer, LLP
                               BY: MADLYN G. PRIMOFF, ESQ.
                               (212) 836-7042
                               BY: JONATHAN AGUDELO, ESQ.
                               (212) 836-8369
                               BY: JANE PARVER, ESQ.
                               (212 836-8510

For DK Partners:               DK Partners
                               BY: EPHRAIM DIAMOND, ESQ.
                               (646) 282-5841

For Deutsche Bank:             McCarter & English
                               BY: JOE BOCCASINI, ESQ.
                               (212) 639-6935

                               Kramer Levin, Naftalis &
                               Frankel, LLP
                               BY: DAVID E. BLABEY, JR.,ESQ.
                               (212) 715-9100
                               BY: JORDAN KAYE, ESQ.
                               (212) 715-9489

For Jefferies & Co.:           Jefferies & Company
                               BY: JUSTIN BRASS
                               (203)708-5847
For Monarch Alternative
Capital, LP:                   Monarch Alternative Capital
                               BY: ROBERT G. BURNS, ESQ.
                               (212) 554-1768

TELEPHONIC APPEARANCES:
(Continued)

For CitiGroup:                    Paul Weiss Rifkind Wharton &
                                  Garrison
                                  BY: AMY DEITERICH, ESQ.
                                  (212) 373-3688


For UBS Investment Bank:          UBS Securities, LLC
                                  BY: NEEL DOSHI, ESQ.
                                  (203) 719-8723


For Nomura Securities:            Nomura Securities
                                  BY: ARTHUR KAVALIS, ESQ.
                                  (212) 667-2370


For Great Banc Trust Co.:         Morgan Lewis & Brockius, LLP
                                  BY: RACHEL MAUCERI, ESQ.
                                  (215) 963-5000
                                  BY: JAMES BAYLES, ESQ.
                                  (312) 324-1123


For Interested Party:             Schulte Roth & Zabel, LLP
                                  BY: KAREN S. PARK, ESQ.
                                  (212) 756-2036


For EGI-TRB:                      Jenner & Block, LLP
                                  BY: ANDREW VAIL, ESQ.
                                  (312) 840-8688

For Credit Agreement
Lenders:                          Angelo Gordon & Company, LP
                                  BY: GAVIN BAIERA, ESQ.
                                  (212) 692-0217


                                  Wilmer Cutler Pickering Hale &
                                  Dorr
                                  BY: MICHELLE GOLDIS, ESQ.
                                  (212) 295-6329
                                  BY: ANDREW GOLDMAN, ESQ.
                                  (212) 230-8836


For Chandler Bigelow:             Sperling & Slater
                                  BY: STEVEN C. FLORSHEIM, ESQ.
                                  BY: CLAIRE P. MURPHY, ESQ.
                                  (312)641-3200

```
TELEPHONIC APPEARANCES:
(Continued)

For Goldman Sachs & Co.:        Goldman Sachs & Company
                                BY: SCOTT BYNUM, ESQ.
                                (212) 902-8060
                                BY: LEXI FALLON, ESQ.
                                (212) 902-0791


For Mina Faltas:                Viking Global Investors
                                BY: MINA FALTAS, ESQ.
                                (212) 672-7011


For Matthew Frank:              Alvarez & Marsal, Inc.
                                BY: MATTHEW FRANK
                                (312)371-9955
                                BY: BRIAN WHITTMAN, ESQ.
                                (312) 601-4227


For Wells Fargo:                White & Case
                                BY: SCOTT GREISSMAN, ESQ.
                                (212) 819-8567


For Chicago Fundamental
Investment:                     Chicago Fundamental Investment
                                BY: PETER GRUSZKA
                                (312)416-4215


For Law Debenture Trust:        Kasowitz Benson Torres &
                                Friedman
                                BY: SHERON KORPUS, ESQ.
                                (212)506-1700
                                BY: CHRISTINE MONTENEGRO, ESQ.
                                (212)506-1715
                                BY: DAVID ROSNER, ESQ.
                                (212)506-1726


For Corre Partners:             Corre Partners
                                BY: STEPHEN LAM
                                (646) 863-7157
```

TELEPHONIC APPEARANCES:
(Continued)

For Oaktree Capital
Management:                    Oaktree Capital Management
                               BY: EDGAR LEE
                               (213) 830-6415


For Royal Bank of Scotland:    Royal Bank of Scotland
                               BY: COURTNEY ROGERS, ESQ.
                               (203) 897-4815
For Canyon Partners:           Canyon Partners
                               BY: CHANEY M. SHEFFIELD
                               (310) 272-1062


For Robert R. McCormick
Foundation &
Cantigny Foundation:           Katten Muchin Rosenman, LLP
                               BY: JOHN SIEGER, ESQ.
                               (312) 902-5294


For Citi:                      Citi
                               BY: REBECCA SONG
                               (212) 559-9933


For Miller Tabak Roberts
Securities:                    Miller Tabak Roberts
                               Securities, LLC
                               BY: ANDREW M. THAU
                               (212) 692-5178


For David Thompson:            Gruss & Management, LLC
                               BY: DAVID B. THOMPSON
                               (212) 688-7526


For One East Partners:         One East Partners
                               BY: SINA TOUSSI
                               (212) 230-4510


For Macquarie Capital (USA):   Macquarie Capital (USA)
                               BY: RUSHABH VORA
                               (212) 231-6311


1

1   WILMINGTON, DELAWARE, TUESDAY, APRIL 12, 2011, 9:37 A.M.

2           THE CLERK:  Be seated, please.

3           THE COURT:  Good morning, everyone.

4           ALL:  Good morning, Your Honor.

5           THE COURT:  Is there anything preliminarily?

6   (No audible response.)

7           THE COURT:  All right.  I do have some things

8   that I'd like to just review briefly with the parties.

9       Today is the day for the DCL rebuttal case.  And I'll

10  say something which applies to my views about this and any

11  rebuttal case that the noteholders might intend to bring on

12  and that is somewhat obvious.  Both parties have already

13  presumably given me their best case.  If you haven't

14  demonstrated something to me by now, your opportunity has

15  probably gone by.  So I encourage you to use rebuttal for

16  the purpose for which it is intended and that is just to

17  highlight the things that you think are the most important

18  both for your case and against the other side's.  That's

19  what will be most helpful to me.

20          We'll need to break by about quarter to 5:00, ten

21  of 5:00 today.  I have a meeting that starts in the next

22  courtroom at 5:00.  Tomorrow morning we will start at 10:00.

23  I'm not sure quite how late we will go.  We'll begin

24  tomorrow presumably with addressing other objections.  And

25  in my preliminary thought about how to address that was to

1  hear when there are -- when one objector has objected to

2  both plans, to hear one objector at a time so we can address

3  both at the same time rather than have the same objector

4  come up and sit down and come up and sit down.  I'll ask for

5  comments in a minute.  If that causes heartburn for anybody,

6  you'll let me know, but that was my initial inclination.

7        The parties asked last week assuming we have time

8  leftover after consideration of the other objections to hear

9  from the DCL proponents and the noteholder plan proponents,

10  what is it you'd like us to focus on?  And I told you I

11  would give you some additional thoughts about that and I

12  have some now.  Just a very few.  I'm not sure how much time

13  there will be.

14        I would say to either -- to both sides, you

15  needn't spend any time addressing the good faith issue

16  either in favor of yours or opposed to the other.  What will

17  be most helpful to me, I think is focusing on the changes to

18  your plan.  Each side has proposed an amended plan.  Why it

19  makes it better and why you think the amendments to the

20  opponent's plan is not helpful or helpful in some ways and

21  not helpful in others and what remaining grounds for

22  objection there are or are eliminated as a result of the

23  respective amendments.

24        I'd like you to address why or why not re-

25  solicitation is necessary in connection with either plan or

1    not.  I know one side has said re-solicitation is necessary.

2    I don't know that the other side has spoken on that issue,

3    at least in the written submissions that I've seen.  And I

4    confess, I have not read them all.

5         And also to focus on release provisions,

6    especially in light of Judge Walrath's recent decision in

7    Washington Mutual.

8         Finally, well not finally.  We spoke last time

9    about a briefing, tentative briefing schedule.  Opening

10    briefs May 6 with replies on May 20.  My notes don't reflect

11    and I didn't go back and look at a transcript whether we

12    locked that in for sure.

13         MR. SOTTILE:  Your Honor, James Sottile of

14    Zuckerman Spaeder, special counsel to the committee.

15         We have not locked it in for sure.  I think that

16    we are on the verge of reaching agreement as between the

17    noteholders and the DCL plan proponents on some minor

18    proposed adjustments to that schedule for the Court's

19    consideration.  And I expect we could present that a little

20    later this morning if that would be satisfactory to the

21    Court.

22         THE COURT:  Well just let me ask you this because

23    I want to give you time to think about something.  What's

24    the date do you think of the last submission going to end up

25    being?

1        MR. SOTTILE:  Before the end of May, Your Honor.

2    We're discussing May 25 or May 27 for the last submission.

3        THE COURT:  Okay.  Okay.  Based on our earlier

4    discussion, I had anticipated having a little more room, but

5    I'm tentatively thinking June 3 for closing argument,

6    tentatively.  So put that into the mix of your discussions.

7    I'm open to pushing that farther back if that's what the

8    parties would like and I'm thinking based on that, I may

9    want to.

10        I just want to also advise the parties, I have

11    not yet made my way through all the competing orders,

12    proposed competing orders on the motion for pursuit of state

13    law constructive fraudulent transfer claims.  I will be

14    working on that.  I know there is a statute of limitations

15    concern, but I know that it's not literally on the doorstep,

16    but I'm working on it.  That concludes the things that I

17    wanted to discuss.

18        MR. GOLDEN:  Good morning, Your Honor.  Daniel

19    Golden, Akin, Gump, Strauss, Hauer & Feld, counsel for

20    Aurelius Capital and the other noteholder proponents.

21        Your Honor, it was very helpful to get the

22    Court's guidance on the scope of the legal objections raised

23    by both the DCL plan proponents to the noteholder plan and

24    vice versa.  Should I assume that if it wasn't on the list,

25    you don't want to hear the legal objections or since there

1    were both sides have filed other legal objections or non-

2    evidentiary based objections, should we assume go forward

3    with them in addition to the list or not go forward with

4    them?

5          THE COURT:  Well let me answer this way.  You

6    gave me the opportunity to pick the things I was most

7    interested in.  If time remains, you may choose the things

8    you're most interested in.

9          MR. GOLDEN:  Thank you, Your Honor.

10   (Laughter)

11         THE COURT:  All right.

12         MR. LANTRY:  Good morning, Your Honor.  Kevin

13   Lantry on behalf of the debtors.

14         With regard to the order of ceremonies tomorrow

15   and the order of the third party objections, the DCL plan

16   proponents and the noteholder plan proponents have spent

17   quite a while talking about the order of ceremonies.  And we

18   largely agree with what you were suggesting, but we have

19   taken the time to actually put on a single page how we think

20   it might best flow.  Could I approach Your Honor and just

21   show you that and talk through a little bit of how it might

22   work?

23         THE COURT:  Certainly.  Thank you.

24         MR. LANTRY:  Your Honor, first of all, I think

25   both sides have done a great job in terms of eliminating a

1  lot of the objections as you've probably seen from the

2  charts that were filed on Friday.  There are for example, I

3  think no taxing authorities or parties to executory

4  contracts that are being assumed that have any remaining

5  objections.  What we thought, consistent with what you said

6  is there are --

7          THE COURT:  I'm sorry.  Forgive me for

8  interrupting, but something just crossed my mind when you

9  said executory contracts.  Keep in mind the recent, I think

10 it's the Seventh Circuit decision in *UAL* and the executory

11 contract issue that came up there.  I've never seen that

12 issue before and hope never to see it, but it seemed like a

13 trap.  And I'm not criticizing the Court or anybody

14 involved, but it's something to be avoided.

15          MR. LANTRY:  Thank you, Your Honor.

16          THE COURT:  Okay.

17          MR. LANTRY:  We thought there were at least one

18 remaining little individual objection we could take care of

19 and let that person go, he represents himself.  But then

20 consistent with what you were suggesting, there are a number

21 of objectors to both plans that we thought would be best,

22 let that single objector who has four or five different

23 issues get done with all of their issues, then the various

24 plan proponents could respond.

25          There are, however, a number of parties who had

1  the same objections to the same topical issue.  And so we

2  thought once we got done for example with Zell, EGI, and the

3  DOL, Great Banc which have a number of very individualized

4  objections to both plans, that it might be easier to flip

5  over to a topical approach as you can see in this outline.

6  For example, a number of parties have issues over the

7  creditors trust or the litigation trust.  We thought that

8  might be an easier way to organize it even though some of

9  the objectors you may have already heard of.

10         And then, finally, we have toward the end just

11 objections against the DCL plan and we're then falling back

12 aside from the bar order where there's a number of

13 objections to the individual objectors like you were

14 proposing.

15         Again, this reflects a consensus amongst the two

16 plan proponents.  Obviously, we want you to ultimately

17 design how you want this to be, but I wanted to at least put

18 that out there as something that we had all agreed upon.

19 And we can probably vet this a little bit tomorrow morning

20 as well before we begin the ceremonies, if you'd like.

21         THE COURT:  Yeah, I mean, it seems a rational

22 approach to me.  And you've obviously devoted more thought

23 to it than I did.  I just wanted to make the process as

24 efficient as possible.  But looking at the groupings, I

25 understand why the parties have arrived at these.  So

1    tentatively, subject to how we go tomorrow, I'm content to

2    begin on this outline.

3              MR. LANTRY:  Thank you, Your Honor.

4              THE COURT:  Okay.  Thank you.

5              MR. FRIEDMAN:  Your Honor, Edward Friedman,

6    Friedman Kaplan on behalf of Aurelius.

7              I understand that the first rebuttal witness

8    being called by the DCL proponents today will be a witness

9    testifying about FCC matters.  And we have a bunch of

10   exhibits that the noteholder plan proponents would like to

11   move into evidence relating to FCC matters that for the most

12   part have not been objected to.  There was one objection I'm

13   aware of that I know we addressed.

14             So I would like to move into evidence noteholder

15   plan proponent FCC Exhibit Numbers 119 through 129 and also

16   noteholder plan proponent Exhibit 22, 23 which I beg your

17   pardon, that was objected to as hearsay and noteholder plan

18   proponent Exhibit 2517.

19   (Noteholder Plan Proponent Exhibits 119-129, 22, 23, and

20   2517 identified.)

21             MR. FRIEDMAN:  Do you need any further

22   information about what those are?

23             THE COURT:  I take it you want to use these

24   during cross examination?

25             MR. FRIEDMAN:  Yes, Your Honor.

1           THE COURT:  Okay.

2           MR. FLAGG:  No objection, Your Honor.

3           THE COURT:  To the use or to the admission?

4           MR. FLAGG:  Neither.

5           THE COURT:  Okay.  Admitted without objection.

6  (Noteholder Plan Proponent Exhibits 119-129, 22, 23, and

7  2517 admitted.)

8           MR. FLAGG:  Your Honor, Ron Flagg from Sidley

9  Austin for the debtors.  Since we're doing things in this

10  order, we also have some exhibits we'd like to move into

11  evidence.  The noteholders objected to two of them and we

12  won't move as to those, but we'd move into evidence Exhibits

13  1331 through 1334, 1403 to 1408, 1418, 1420, 1425, 1426,

14  1428 to 1465, 1486 to 1488, 1496, 1497, 1554, 1556, 1568,

15  and 1570.

16  (Debtor Exhibits 1331-1334, 1403-1408, 1418, 1420, 1425,

17  1426, 1428-1465, 1486-1488, 1496, 1497, 1554, 1556, 1568 and

18  1570 identified.)

19           THE COURT:  Is there any objection?

20           MR. FRIEDMAN:  Well, just a couple of things,

21  Your Honor, since I have not memorized all the numbers.

22  Just to the record is clear, there are two declarations that

23  were proposed as exhibits relating to FCC matters.

24           MR. FLAGG:  Those were not --

25           MR. FRIEDMAN:  Okay.

1          MR. FLAGG:  Just to streamline this, those were

2  not among those that I just read.

3          MR. FRIEDMAN:  Okay.  So obviously, those we're

4  objecting to.  And second, I did review the list of proposed

5  exhibits that do relate to FCC matters and as to those other

6  than the two declarations, we have no objection to their

7  admission.  I just would need a confirmation on the record

8  that these are the FCC related exhibits and not other DCL

9  exhibits.

10          MR. FLAGG:  That's correct, Your Honor.

11          THE COURT:  Okay.

12          MR. FRIEDMAN:  Then we'd have no objection.

13          THE COURT:  All right.  They're admitted without

14  objection, thank you.

15  (Debtor Exhibits 1331-1334, 1403-1408, 1418, 1420, 1425,

16  1426, 1428-1465, 1486-1488, 1496, 1497, 1554, 1556, 1568 and

17  1570 admitted.)

18          MR. FLAGG:  Then we'd like to call, Your Honor,

19  as our first rebuttal witness, Mace Rosenstein.

20          THE COURT:  Good morning.

21          MACE ROSENSTEIN, DEBTORS' WITNESS, SWORN

22          MR. FLAGG:  Your Honor, may I -- sorry.

23          THE CLERK:  Please state your full name for the

24  record and spell your last.

25          MR. ROSENSTEIN:  Yes, my name is Mace Rosenstein.

1  The first name is M-A-C-E, R-O-S-E-N-S-T-E-I-N.

2          MR. FLAGG:  Thank you, Honor.  May I approach the

3  witness and the bench to provide exhibits?

4          THE COURT:  You may.

5          MR. FLAGG:  Thank you.

6                    DIRECT EXAMINATION

7  BY MR. FLAGG:

8  Q     Good morning, Mr. Rosenstein.

9  A     Mr. Flagg, good morning.

10 Q     By whom are you employed?

11 A     I am employed by the law firm of Covington and Burling

12 in Washington, D.C.

13 Q     And what is your position at Covington?

14 A     I'm a partner there.

15 Q     And what's the nature of your practice?

16 A     My practice is before the FCC.  At the law firm, I

17 also am the chair of our technology and media practice which

18 encompasses the FCC regulatory practice, as well as,

19 intellectual property, privacy and data security and patent

20 advisory practice.

21 Q     And do you hold any administrative positions at

22 Covington?

23 A     Yeah.  In that connection, I'm responsible for

24 coordinating the activities of each of those practice groups

25 within the firm's administrative structure.

1  Q      And could you tell the Judge your employment history

2  prior to Covington?

3  A      Yes.  I joined the Covington firm in 2007 as a

4  partner.  For twenty years before that, I practiced at Hogan

5  & Hartson in Washington, now Hogan Lovells, both as an

6  associate and as a partner.  And for several years was the

7  co-chair of their communications practice.

8  Q      And where did you attend school?

9  A      I attended Harvard College for my undergraduate degree

10 and the University of Chicago Law School.

11 Q      And as part of your practice, do you appear at the

12 FCC?

13 A      I do.

14 Q      And what's the nature of the work you've done before

15 the FCC?

16 A      I think it's fair or most efficient to describe the

17 practice as occurring at the intersection of regulation and

18 commercial transactions.  And I spend most of my time and

19 have for several years, structuring complex transactions in

20 order to comply with FCC rules, including their multiple and

21 cross ownership rules, and seeking and securing waivers of

22 those rules in order to effectuate creative transactions.

23 Q      And could you describe for the Court some

24 representative samples of recent experience relevant to the

25 matters at issue here?

1  A    Over the last few years, I've represented a private

2  equity consortium in their take private of Univision

3  Communications.  A transaction which involved a number of

4  waivers of the ownership rules of the FCC.  I represented a

5  singleton private equity buyer of the Clear Channel

6  Television Stations, waivers were required there, too.

7  Interestingly, before that, I had represented a group of --

8  another private equity group in bidding for all of the clear

9  channel assets.  Their bid sadly was unsuccessful.  I more

10  recently have been involved as communications counsel in the

11  Chapter 11 proceeding of FairPoint Communications which is a

12  telephone company serving several New England States.  I

13  should also note that for many years I represented the news

14  corporation in its Fox Television unit, including in

15  connection with securing and defending for them a permanent

16  waiver of the newspaper broadcast cross ownership rule which

17  allowed Mr. Murdock to own in common WNYW Television in New

18  York and the New York Post.

19  Q    And take a look at DCL Exhibit 1456 which is behind

20  Tab 1 of your witness binder.

21  A    I see that.

22  Q    Is that a true and correct copy of your rebuttal

23  expert report?

24  A    Yes, it is.

25  Q    And does that report also include a copy of your CV

1  including other relevant experience?

2  A     It does.

3          MR. FLAGG:  Your Honor, we would tender Mr.

4  Rosenstein as an expert with respect to FCC procedures,

5  regulations, and policies with particular reference to cases

6  involving multiple ownership and/or cross ownership of

7  broadcast and newspaper interest.

8          THE COURT:  Is there any objection?

9          MR. FRIEDMAN:  No objection, Your Honor.

10          THE COURT:  You may proceed accordingly.

11          MR. FLAGG:  Thank you, Your Honor.

12 BY MR. FLAGG:

13 Q     Mr. Rosenstein, what were you engaged to do in this

14 case?

15 A     Two things.  First, to review the report of Mr. Prak

16 and also to review and evaluate the noteholder plan of

17 reorganization.

18 Q     And have you prepared an exhibit summarizing your

19 conclusions?

20 A     I have.

21 Q     And I believe that exhibit is behind Tab 2 of the

22 witness binder?

23 A     Yes, yes, it is.

24 Q     If you could, please, describe for the Court your --

25 summarize for the Court your conclusions.

1   A      Sure.  First, it is my view, Your Honor, that Mr.

2   Prak's opinion that the FCC Is not going to approve the

3   Tribune transaction or the application seeking approval for

4   that transaction because the structure as proposed in the

5   DCL plan would violate the commission's ownership rules is

6   unfounded for a couple of reasons.  First, it's my view that

7   Mr. Prak's analysis and opinions regarding the ownership

8   interests of the DCL plan co-proponents is flawed.   And

9   second, I think Mr. Prak himself testified last month and I

10  certainly agree and it's stated in my report, that the DCL

11  plan includes provisions that would enable the company and

12  the co-proponents to address any concerns about multiple or

13  cross ownership efficiently and in a way that would allow

14  the plan to be approved.  Second, also my view, that Mr.

15  Prak's opinions concerning delay in the processing at the

16  FCC of the Tribune applications are unfounded.  And third,

17  it's my view that the factors that Mr. Prak sites as being

18  the contributors to that delay at the FCC such as pending

19  appellate litigation regarding the FCC's ownership rules,

20  pending objections to the Tribune waiver applications now

21  before the FCC, would apply equally to the noteholder plan.

22  And, in fact, I would submit that if we accept Mr. Prak's

23  contention that the FCC Is going to take into consideration

24  certain non-attributable, what I would deem to be non-

25  attributable interests of the DCL plan co-proponents, those

1  factors would affect its consideration of the noteholder

2  plan, too, because those interests will exist under both

3  plans.

4  Q    And just to be clear and we're going to come back to

5  this in a moment, do you accept Mr. Prak's contention that

6  the FCC will consider so called non-attributable interests?

7  A    No.

8  Q    Now are you -- you're familiar, I take it with the

9  applications filed by the Tribune at the FCC?

10  A    Yes, yes, I am.

11  Q    And can you just summarize briefly the relief sought

12  by those applications?

13  A    Yes.  The applications seek relief that I would

14  characterize as falling into two separate but related

15  categories or baskets.  The first is seeking the

16  Commission's consent, the assignment of the television and

17  radio station licenses that are currently held by

18  subsidiaries of Tribune as debtor in possession to those

19  subsidiaries as owned by reorganized Tribune under its new

20  ownership.  And then second and relatedly, the applications

21  include requests for waiver of certain of the Commission's

22  multiple and cross ownership rules which if granted would

23  allow the company to preserve certain existing in market

24  combinations post immergence.

25  Q    And what's your understanding of the principal issues

1  that the FCC would consider in connection with those

2  applications?

3  A    I think the issue that the FCC would consider is

4  really the same with respect to both of those baskets of

5  relief that I have described.  In the case of the

6  applications, the FCC under its statute has to evaluate the

7  qualifications of the proposed assignee, in this case,

8  reorganized Tribune and its attributable owners and

9  determine whether approving the assignment of the licenses

10 to that new entity would be consistent with the public

11 interest.  Likewise, with respect to the waiver request, the

12 Commission has to evaluate those requests and make a

13 judgment as to whether permitting those existing

14 combinations to go forward post emergence would be in the

15 public interest.

16 Q    And again, briefly, could you describe your

17 understanding of the FCC's multiple ownership rules?

18 A    Yes.  The ownership rules address and in certain cases

19 limit common ownership of certain defined interests in

20 broadcast stations in the same service; for instance radio

21 or TV hence multiple ownership or interests in media outlets

22 that operate in different services such as television and

23 radio or television and daily newspaper or radio and daily

24 newspaper.  Those would be the cross ownership rules.

25 Q    And again, very briefly, what's your understanding of

1  the public policy underlying these rules?

2  A    Really, twin sort of bedrock policy objectives they

3  derive from the statute.  The first is viewpoint diversity.

4  The second is economic competition.  And in particular, to

5  ensure that there's an adequate flow of capital into

6  broadcast media.

7  Q    Now we've heard a lot of discussion about the

8  attribution rules.  What are the FCC's attribution rules and

9  how do they fit into this whole picture?

10  A    Well they're the means by which the FCC applies the

11  substantive of the structural ownership rules.  Essentially,

12  the means by which the FCC determines what counts as an

13  interest that might be subject to those structural rules.

14  Q    And in that vein, what is an attributable interest?

15  A    As the word suggests an attributable interest counts.

16  It's one that the FCC will take into consideration in

17  applying its rules.

18  Q    And I think I know the answer, but why don't you put

19  on the record, what is a non-attributable interest?

20  A    Conversely, we'll see if you're right, a non-

21  attributable interest is one that doesn't count or that

22  doesn't need to be disclosed or reported and that will not

23  be taken into consideration in determining compliance with

24  the rules.

25  Q    Now focusing for a moment on attributable interests is

1   there anything per se improper about an entity, a bank, or

2   anybody else holding an attributable interest in a property?

3   A     No, certainly not.  And I should emphasize that

4   neither the substantive rules nor the attribution rules that

5   effectuate them, limit or prohibit the ownership of many

6   attributable interests, theoretically, an unlimited number

7   of attributable interests.  A problem can arise only in the

8   case of common ownership of two attributable interests that

9   create a conflict or what I would call a non-conforming

10  combination under the substantive rules.

11  Q     Now both your report and Mr. Prak's report make

12  reference to the FCC's cross interest policy.  What was the

13  FCC's cross interest policy?

14  A     The policy, the cross interest policy operated as a

15  corollary or an adjunct to the substantive rules.  It was

16  repealed in 1999.  In its hay day, the policy essentially

17  allowed the Commission in its discretion to examine the

18  common ownership of an attributable interest on the one hand

19  and a non-attributable, but what the Commission believed

20  might be a meaningful interest in a media outlet in the same

21  market.  As I think the use of the term meaningful suggests,

22  it was ad hoc.  It was determined on a case by case basis,

23  usually through an adjudicatory or quasi-adjudicatory

24  proceeding.  And actually, I believe, that nearly all or

25  typically the cross interest policy cases were expressly

1  limited to their facts.

2  Q    Now can you describe the FCC's reexamination of the

3  FCC's cross interest policy back in 1999?

4  A    Yes.  Actually, the Commission had started to whittle

5  away at this policy starting in the late '80s.  By 1999, it

6  had concluded that the benefits of the policy, whatever they

7  had been, were outweighed by the costs of this

8  unpredictable, unwieldy ad hoc process.  Crossed both to

9  parties before the Commission and the agency itself and it

10 was repealed.

11 Q    Now in his report, Mr. Prak makes mention of the fact

12 that in repealing the cross interest policy, the FCC quote

13 and this is a quote from the FCC that Mr. Prak cited,

14 "Retain discretion to review individual cases that present

15 unusual interests on a case by case basis where it would

16 serve the public interest to conduct such a review.  Do you

17 recall that statement back from the FCC's decision?

18 A    I've seen it, yeah.

19 Q    And in your experience, how has the FCC exercised the

20 discretion referenced there?

21 A    Well in my experience, I'm not aware of a case in

22 which the FCC since the repeal of the policy in '99, I'm not

23 aware of a case in which the FCC has taken non-attributable

24 interests into consideration in evaluating a transaction or

25 determining compliance with the substantive rules.

1  Q    Now your expert report which again is behind Tab 1

2  includes a chart summarizing the attribution rules relevant

3  to the Tribune application.  I believe it's at Pages 8 and

4  9.  Why don't we take a look at that for a moment?

5  A    I see that, yeah.

6  Q    And I think it's broadcast on the screen.  Can -- this

7  is a pretty interesting chart.  Can you tell the Court what

8  this chart is intended to show?

9  A    What I was trying to do, Your Honor, was create a user

10  friendly guide to these rules that we're talking about.  And

11  I tried to summarize in the chart each of the attribution

12  rules that has some bearing on this case, either on the

13  Tribune applications or on the interests of the DCL plan co-

14  proponents.

15            THE COURT:  Simple enough for even a Judge to

16  understand.

17  (Laughter)

18            MR. ROSENSTEIN:  That was my hope, Your Honor.

19            THE COURT:  Thank you.

20            MR. ROSENSTEIN:  And I would though before we

21  turn away from it, want to call out two specific provisions

22  because they I think are going to be useful in our

23  discussion this morning.  The first is that subject to

24  exceptions, the FCC will treat a voting stock interest in a

25  corporation of 5 percent or more as attributable.  And then

1  the other that I think we should look at pertains to certain

2  governance rights.  The FCC attribution rules provide that a

3  positional interest such as serving as a director is

4  attributable.  And although not in the rules per se in the -

5  - I think Mr. Prak's phrase and he was right is in the

6  administrative gloss on those rules, the FCC has similarly

7  concluded that having the power or the right to designate

8  the director also will give rise to attribution.  But I do

9  want to draw a line between the designation right on the one

10 hand which is attributable and the nomination or

11 recommendation right on the other which the Commission has

12 said is not.

13 BY MR. FLAGG:

14 Q     Okay.  Now what are the FCC's requirements vis-à-vis

15 disclosure with respect to attributable and non-attributable

16 interests?

17 A     Well conceptually, they really track the nature of the

18 interests that we've been discussing which is to say

19 attributable interests must be disclosed and are taken into

20 consideration by the commission.  Non-attributable interests

21 in contrast do not need to be recorded.  And I think it's

22 worth noting that the FCC application forms themselves

23 including the form that is pending before the Commission

24 right now in connection with the Tribune matter contained

25 detailed instructions as to the nature and extent of

1  interests that have to be disclosed in connection with the

2  request for approval of a transaction.

3  Q    Now in your discussion and Mr. Prak's discussion,

4  we've sort of heard about two categories of interest.  One

5  would be the interest that the -- some of the co-proponents

6  have in the Tribune or would have upon confirmation of

7  either plan.  And the other set of interests are the

8  interests that those co-proponents today have outside of the

9  Tribune in various, you know, media interests around the

10  country.  Is that right?

11  A    Yes.

12  Q    Now let's start with the former set, that is the

13  interest that the lender co-proponents would have in the

14  Tribune if the DCL plan were approved and how those

15  interests are treated under the plan.  Does the DCL plan

16  have provisions to deal with the possibility that a lender

17  might have media interests that would result in an

18  impermissible combination of interests under the substantive

19  rules if held in combination with an attributable interest

20  in Tribune?

21  A    Yes, it does.

22  Q    And let's take a look at the DCL plan, the second

23  amended joint plan which is DCL Exhibit 1102 behind Tab 3.

24  There's a more recent version of the plan, but with respect

25  to the issues we're talking about today, it does not change.

1    Take a look at -- first of all are you familiar with the

2    second amended joint plan of the DCL?

3    A    Yes, I am.

4    Q    And take a look at Page 54 of Exhibit 1102.  This is

5    Section 5.4.2(d), section headed Entities with Conflicting

6    Media Interests.  Could you describe what this provision

7    entails?

8    A    Yes.  Let me -- there are a lot of words there.  Let

9    me paraphrase.  It provides that if it is necessary in order

10   to ensure compliance with the substantive multiple cross

11   ownership rules that we've been discussing, in order to

12   eliminate a non-conforming combination resulting from an

13   interest of one of the lenders combined with its interest in

14   Tribune, the company has the right and power to cause that

15   lender to take the limited voting Class B Common in lieu of

16   the full voting class, A Common.  The Class B Common and

17   this is a very common as it were provision now in corporate

18   governance and equity structures, the Class B Common is

19   designed so that the limited voting rights assigned to it

20   are consistent with the FCC's attribution rules and would

21   render that Class B Common a non-attributable equity

22   security.  I happen to believe that it's been appropriately

23   structured to achieve that objective.

24   Q    Okay.  And let's take a look at Pages 50 and 51 of the

25   same exhibit, Section 5.3.2, Section headed Directors and

1 Officers of Reorganized Tribune an even longer provision.

2 Can you again summarize what this provision entails?

3 A    Yes.  This is intended to address, you know, the other

4 category of attributable interest that I mentioned to Your

5 Honor as being relevant in this matter.  That is the

6 director designation right.  But analytically, conceptually,

7 it's really very much in parallel with the provision we just

8 looked at.  In the event that it is determine that a

9 director designation right by one of the lenders would

10 result in one of those non-conforming interests that I've

11 described, then there is sort of a waterfall of remedies

12 that is available in that case.  The lender can get rid of

13 its designation rights in its third party interest.  The

14 lender can become non-attributable in Tribune.  The lender

15 can make such other undertaking or commitment to the FCC

16 that would have the effect of eliminating the attribution

17 conflict.  Again, this is a provision that's quite common

18 today in the market.

19 Q    Okay.  Now we're going to be referring over the course

20 of the next few minutes to Mr. Prak's demonstratives.  And

21 let's start off with and I think those are behind Tab 4 in

22 the exhibit binders.  Let's start off with Mr. Prak's first

23 opinion which is at Page 3 of his demonstratives.  Let me

24 just read it into the record.  The first opinion of Mr. Prak

25 is will the interests of JP Morgan and Angelo Gordon in

1  reorganized Tribune under the terms of the DCL plan taking

2  into account other media interests held by JP Morgan and

3  Angelo Gordon violate the FCC's media ownership rules?  And

4  Mr. Prak's opinion is yes.  As a result, the DC plan will

5  not be approved by the FCC as it is currently structured.

6  Do you agree with that opinion?

7  A     No, I don't.

8  Q     And why is that?

9  A     I can think of two reasons.  First, I disagree with

10 Mr. Prak and we discussed this earlier in my summary of

11 conclusions.  I don't share Mr. Prak's view that the

12 interest he's pointing to of JP Morgan and of Angelo Gordon

13 outside of Tribune are attributable and, therefore, I don't

14 believe that they create conflicts with their interests in

15 Tribune.  But number two, even if they do, as we just

16 finished discussing, the DCL plan has mechanisms baked in

17 that would allow the company and the co-proponents to

18 eliminate attribution on the Tribune side which from the

19 FCC's perspective would eliminate the conflict.

20 Q     And you were here in the -- well, strike that.  Let's

21 deal with Mr. Prak's various opinions concerning delay in

22 the FCC's handling of the Tribune FCC applications.  Were

23 you in the courtroom when Mr. Prak testified concerning

24 potential delays associated with the FCC's consideration of

25 the Tribune's application before the Commission?

1    A      Yes, yes, I was.

2    Q      And do you agree with Mr. Prak's opinions in that

3    regard?

4    A      No, I do not.

5    Q      Again, let's just draw down a little more

6    specifically.  Take a look at Mr. Prak's demonstratives.

7    We'll look at Opinion No. 2 and Opinion No. 2 which I'll

8    read into the record is the media interests of JP Morgan and

9    Angelo Gordon under the DCL plan, coupled with their

10   extensive web of broadcast and newspaper interests in

11   Tribune markets will delay and/or adversely affect the FCC's

12   decision on Tribune's application for waivers of the media

13   ownership rules.  Do you see that?

14   A      I do.

15   Q      And do you agree with that opinion?

16   A      I do not.

17   Q      And why not?

18   A      Well, the implication of Mr. Prak's opinion is that

19   the FCC is going to take into consideration many interests

20   that in my view are non-attributable and, therefore,

21   irrelevant to the FCC's consideration here.  I also happen

22   to think that, you know, the interests at issue are neither

23   complex nor particularly complicated.  I mean, the FCC will

24   examine this transaction very carefully and they will reach

25   a reasoned judgment as to whether the transaction serves the

1   public interest.  But the issues here and particularly the

2   ownership interests that are under review are what they do.

3   It's what's they evaluate routinely and understand

4   intimately.  I don't think it poses the kind of complexity

5   that would result in delay for them.

6   Q     Now Mr. Prak's opinions appear to rest on the

7   assumption that some of the information that he identified

8   and discussed both in his report and last month here in

9   Court has not been disclosed to the FCC staff.  Do you have

10  an opinion on that issue?

11  A     Yes, I do.

12  Q     And what is that?

13  A     Well, once again, I believe that Mr. Prak's opinion is

14  based on is view erroneous in my view that information

15  regarding non-attributable interests must be disclosed to

16  the FCC and that its disclosure or once it's disclosed, that

17  information would be taken into consideration by the FCC

18  resulting in delay of its processing the transaction.  I

19  just as we've discussed now a couple of times, I disagree.

20  Q     Let's pose it for a moment that somebody else provided

21  the information to the Commission and so -- sorry.  So that

22  information was before the FCC about those other interests

23  which you've labeled as non-attributable.  In that instance,

24  do you believe there would be any material delay in the

25  FCC's handling of the questions before it?

1  A      No.  Again, accepting your premise that the interests

2  are non-attributable as I believe they are, then information

3  regarding those interests, even if it were to be presented

4  to the FCC, first of all, would not affect the outcome,

5  would not affect its decision, the substance of its decision

6  and would not materially delay its consideration of the

7  case.

8  Q      Now your answer obviously has repeatedly referenced

9  the FCC's attribution rules, but Mr. Prak's testimony also

10 referenced a statement by the FCC and again, I'm quoting Mr.

11 Prak who is in turn quoting the Commission, "Parties are

12 free to point to any metric of their choosing" in either

13 prosecuting or opposing waiver requests.  Do you recall that

14 quote?

15 A      I do.

16 Q      And how does that quote from an FCC decision affect

17 your opinion regarding the handling of the Tribune FCC

18 applications?

19 A      It doesn't.

20 Q      Why not?

21 A      Well, again, we should I think try to button this up

22 for Your Honor.  I think Mr. Prak can only be referring to

23 the introduction into the record of information regarding

24 non-attributable interests which the FCC has stated

25 repeatedly and I think emphatically, it is not interested in

1  seeing and does not take into consideration in these

2  circumstances.

3  Q     Take a look at Page 12 of your report, if you would,

4  just for the purpose of drawing your attention to a prior

5  FCC statement on that issue.  Sort of in the middle of the

6  page, the paragraph beginning in codifying.  Can you tell

7  the Court the -- what the Commission said and what the

8  circumstances were of that statement?

9  A     Yes.  I mean, what the Commission said here and this

10 is what I was getting at, Your Honor.  I think quite

11 emphatically it rejected arguments by parties and I'll quote

12 here, "Contending that the reporting of non-attributable

13 interests is essential to the Commission's enforcement of

14 its rules and provides generally useful information."  It

15 rejected those arguments by saying that they had made no

16 such demonstration.  And it went on to say that it could

17 perceive no legitimate regularly purpose to be served by the

18 routine submission of information beyond the scope of the

19 attribution benchmark and we shall requite none.  And let me

20 just say, Mr. Flagg in answer to your question, that this

21 language was included in an order from 1984 in which the FCC

22 adjusted and reaffirmed some of its attribution rules.  And

23 it's worth noting that this was before the repeal of the

24 cross interest policy when arguably, some non-attributable

25 interests in certain circumstances might be relevant to the

1  FCC.  But even then, they were not required to be reported

2  in the ordinary course.

3  Q    Now let's keep moving along here and go back to Mr.

4  Prak's demonstrative exhibit at Page 3 of his deck.  And

5  we're now down to his third opinion.  And again, I'll just

6  read it into the record.  "If the interest of JP Morgan and

7  Angelo Gordon and Tribune under the DCL plan are

8  restructured, such restructuring will result in a

9  substantial delay to the FCC approval process."  Do you

10  agree with Mr. Prak's opinion there?

11  A    No.

12  Q    Why not?

13  A    We'll just refer back to Section 5 in the DCL plan

14  that we talked about a moment ago, that in any case, the

15  plan provides an efficient customary market based approach

16  to eliminating conflicts between attributable interests if

17  they're found to exist.  Either by adjusting interests on

18  the Tribune side or by adjusting interests on the, we'll

19  call it the third party side.

20  Q    In your experience, have you seen these sorts of

21  mechanisms used before?

22  A    I think we see them now routinely.  And, in fact,

23  they're often now incorporated in the charter documents of

24  media companies, precisely because neither a company nor co-

25  investors can always know when an attributable interest is

1  going to arise and the parties want to have the flexibility

2  to act nimbly to deal with those interests, to assure

3  compliance with the rules, without having to negotiate

4  remedies in real time.

5  Q    Now let's take a look at the last of Mr. Prak's

6  opinions on Page 3 of his deck.  Again, I'll read.  "In

7  light of the provisions of the DCL plan, the facts

8  concerning JP Morgan's and Angelo Gordon's media interests

9  will complicate and delay the FCC decision regardless of

10  what the FCC ultimately does, ultimately decides."  Again,

11  do you have an opinion concerning Mr. Prak's fourth opinion?

12  A    I do.

13  Q    And what is that?

14  A    I don't share it, I disagree.

15  Q    And why is that?

16  A    Well, you know, it's really -- that opinion is really

17  subsumed within some of his previous opinions and I would

18  just say again that non-attributable interests are not going

19  to delay the FCC.  And even in the event that some interests

20  are bound to be attributable, they're adjustments under the

21  provisions of the DCL plan is not going to result in delay.

22  Q    Let's just jump ahead to Page 12 of Mr. Prak's deck

23  because he does get into a little bit more detail here.  And

24  in his third bullet point on this page identifies "multiple

25  factors" that I guess support his opinion concerning delay.

1  What is your view of those factors?  Do you agree that those

2  support the notion that there will be substantial delay in

3  the FCC's handling of the applications?

4  A    No, I don't.

5  Q    Could you go through each of the factors and describe

6  your analysis?

7  A    Sure.  Let's walk through them quickly.  First of all,

8  Mr. Prak believes that pending litigation concerning the

9  FCC's ownership rules will cause delay.  I think it is the

10 case, Your Honor, that if the FCC elected to table its

11 consideration of transactions owing to litigation regarding

12 its rules, very little business would be done in either the

13 media context or the telecommunications context.  Litigation

14 regarding these rules in particular has been ongoing either

15 administrative proceedings or judicial review since the

16 rules were adopted in 2003.  And the Commission has

17 continued to process and approve transactions in the

18 ordinary course, including the 2007 Tribune transfer of

19 control that brings us to this day.  Second, Mr. Prak

20 believes that the interest that he's talking about will

21 engender further third party objections to the Tribune

22 applications and waiver requests.  There are already third

23 party objections lodged against the waiver requests.  And I

24 think it's significant that none of them is based on the

25 qualifications of the attributable owners in Tribune or

1  their other media interests.  The objectors are pointing

2  solely to the policy basis underlying the rule and

3  questioning whether the rule in its present form should be

4  allowed to remain in effect and what a whether a waiver

5  should be granted under it.  And finally, Mr. Prak has a

6  view that consideration of the co-proponents' interest will

7  somehow change what he calls the cross ownership status quo

8  under the DCL plan.  And again, I think that that view

9  depends on his view in turn that non-attributable interests

10  are relevant to the FCC's consideration which I believe they

11  are not.  But I would also want to tie this up by saying

12  that if Mr. Prak is right and I think he is not with respect

13  to whether any of these would be contributors to delay, they

14  would apply equally to the noteholder plan because the

15  litigation remains in place.  The third party objections

16  remain in place.  The non-attributable interests of the plan

17  proponents which he believes the Commission will consider

18  are going to exist under the noteholder plan as well.

19  Q    Now let's turn to sort of the other side of the

20  equation.  We've already talked about the lender's interests

21  in the Tribune upon emergence under the DCL plan.  Let's

22  talk about the media interests of the lender co-proponents

23  that Mr. Prak focused on.  Do you recall during his

24  testimony last month, Mr. Prak identified four sets of

25  interests that he opined were attributable and that he

1   further opined would result in violations of the FCC's

2   ownership rules?

3   A      I do.

4   Q      And do you agree with those opinions?

5   A      I do not.

6   Q      Now let's -- to see what the first three of those

7   interests were, let's take a look at Page 7 of Mr. Prak's

8   deck.  And each of the first three bullet points addresses a

9   different ownership interest.  The first one is Mr. Prak's

10  opinion that Angelo Gordon's interest in Next Media is

11  attributable because Angelo Gordon has director designation

12  rights.  Do you see that?

13  A      I see that one.

14  Q      Do you agree with that opinion?

15  A      I do not.

16  Q      And why is that?

17  A      Because in my view, Angelo Gordon does not have an

18  attributable director designation right in Next Media.

19  Q      And what's the basis for that opinion?

20  A      The basis is the Next Media reorganization plan as

21  confirmed by the Court and as submitted to the FCC as an

22  exhibit to application seeking the FCC's consent to the next

23  media restructuring, that plan itself neither calls out nor

24  even refers to a designation right by Angelo Gordon.  In

25  addition, narrative exhibits submitted to the FCC in

1  connection with the application I referred to, describe the

2  plan, describe the rights of the parties under the plan, and

3  at least a couple of times characterize Angelo Gordon's

4  interest in the structure as non-attributable.  The FCC

5  approved that structure as submitted and at least as far as

6  the record reflects, without requiring any adjustments in

7  Angelo Gordon's interest.

8  Q     Now in his testimony last month, Mr. Prak referred to

9  a single exhibit, Exhibit 20, noteholders FCC Exhibit 20 and

10  a single line from that exhibit which was a line from the

11  supplement to the plan supplement which reads as follows,

12  "The final member of the new board will be designated by

13  Angelo Gordon and disclosed at or before the confirmation

14  hearing."  Do you recall that excerpt?

15  A     I do.

16  Q     And does that excerpt change your view about Angelo

17  Gordon's interest in Next Media?

18          MR. FRIEDMAN:  Objection, Your Honor.

19          THE COURT:  Basis?

20          MR. FRIEDMAN:  Well, I want to make sure the

21  witness is not going to get into speculation and hearsay

22  characterization of actions that other parties may have

23  taken with respect to the Next Media plan.  If he's going to

24  testify about his view concerning the words of the statement

25  that were filed with the Court, I have no objection.

1          MR. FLAGG:  I suggest we listen to what the

2    witness has to say and if there's an objection or motion to

3    strike --

4          THE COURT:  Well --

5          MR. FLAGG:  I mean, we --

6          THE COURT:  -- put it this way.  If you answer in

7    accordance with what Mr. Friedman has said, there will be no

8    motion to strike.

9    (Laughter)

10          MR. FLAGG:  Okay.

11          THE COURT:  Understood?

12          MR. ROSENSTEIN:  Let me see what I can do.

13          THE COURT:  All right.

14    BY MR. FLAGG:

15    Q    Okay.  Again, does that -- just the -- and with Mr.

16    Friedman's objection in mind, does this excerpt change your

17    view of -- concerning Angelo Gordon's interest in Next

18    Media?

19    A    It still doesn't.

20    Q    And why is that?

21    A    Because the plan as confirmed by the Court as

22    submitted to the FCC, does not include a designation right.

23    It does include a provision that expressly states that in

24    the event of any inconsistency between the plan and any

25    other plan document, the language of the plan will govern.

1  That was the plan that was submitted to the FCC on the basis

2  for the FCC's decision.

3  Q    Okay.  Let's take a look at the second interest that

4  Mr. Prak addressed in his deck.  That's Angelo Gordon's

5  interest and Freedom Communications and his opinion that

6  that interest is attributable because Angelo Gordon has

7  board observer rights.  Do you see that?

8  A    Yes.

9  Q    And do you agree with that opinion?

10  A    No.

11  Q    And why do you disagree?

12  A    Because in my view and in my experience, a board

13  observer right is not attributable before the FCC.

14  Q    And have you yourself ever structured a transaction

15  involving board observer rights?

16  A    I have.  I have structured a transaction in which an

17  otherwise non-attributable investor in certain circumstances

18  was entitled to designate an observer, in fact, multiple

19  observers to a board of directors and it is deemed to be

20  non-attributable.

21  Q    Now let's look at Mr. Prak's third opinion on this

22  page that JP Morgan's interest In Gannette is attributable

23  because JP Morgan owns more than 5 percent of the voting

24  stock of Gannette.  Do you agree with that opinion?

25  A    No, I don't.

1  Q      And why not?

2  A      I'll have to ask Your Honor's indulgence to get a

3  little technical.  You'll recall on my user friendly chart

4  that I called out the 5 percent voting stock interest as

5  triggering attribution.  I said that there was an exception.

6  The exception pertains to mutual funds 40 active investment

7  companies, insurance companies and bank trust departments

8  which the FCC many years ago concluded were entitled to a

9  higher attribution benchmark.  In other words, more lenient

10 attribution treatment.  That benchmark for those classes of

11 entities is 20 percent.  The Commission then had to address

12 what to do in the case where interest subject to the 5

13 percent benchmark are commonly owned with interest subject

14 to the 20 percent benchmark and it devised an aggregation

15 principle.  Essentially, it looks to see whether the

16 interest subject to the 5 percent don't exceed the 5 percent

17 benchmark and, therefore, are non-attributable.  And then it

18 satisfied itself that the interest subject to the higher 20

19 percent benchmark are non-attributable and if they are, it

20 then takes the sum of the 5 percent interests and of the 20

21 percent interests and if that sum doesn't exceed 20 percent,

22 the entire package is deemed to be non-attributable.  That's

23 the operative principle in my view that should be applied to

24 the analysis of the JP Morgan interest and Gannette.

25 Q      Well given the framework you just described, what's

1   your understanding of the basis for Mr. Prak's view that the

2   5 percent benchmark applies?

3   A     It appears that Mr. Prak is taking the position that

4   the manager of a mutual fund, that is the manager of a fund

5   that is entitled to the 20 percent benchmark is nevertheless

6   restricted to the 5 percent benchmark.  The FCC has

7   addressed that issue and has concluded that that makes no

8   sense.  That that would produce an anomalous result and so

9   it has held that the manager of the fund should be entitled

10  to the same benchmark as the fund that holds the direct

11  interest.  And that's even the case with respect to

12  investment advisors which the Commission has said in all

13  other circumstances when they invest directly for their own

14  account should be subject to the 5 percent benchmark.  But

15  with respect to an investment advisor managing a mutual fund

16  entitled to the 20 percent benchmark, the higher benchmark

17  will apply.

18  Q     Now let's take a look at the fourth attributable

19  interest that was addressed by Mr. Prak.  And to address

20  that, you'd have to go -- he had a second two page deck, I

21  think in your materials so it's all bound together behind

22  Tab 4 and it would be on the second to last page of that Tab

23  4, a page that's entitled Interests of JP Morgan, Angelo

24  Gordon, and Oaktree, and Other Media Companies Leading to

25  Violations of the Media Ownership Rules.  And you'll see on

1   the far right hand side of the page, there's a reference to

2   Oaktree.  And Mr. Prak opined that Oaktree's attributable

3   interest in the Lieberman Company would lead to a violation

4   of the FCC's media ownership rules.  Do you agree with that

5   opinion?

6   A      No.

7   Q      Why not?

8   A      I think that the opinion tells only half the story in

9   the case of the interest in Lieberman because although I

10  agree that today that interest constitutes an attributable

11  interest in Lieberman by virtue of Oaktree's right to

12  designate a director.  And, in fact, I believe they have

13  placed a director on the board, Oaktree is also represented

14  in the FCC applications and now pending in the Tribune

15  matter that prior to emergence, it will cease to be

16  attributable in Lieberman.  And this can be accomplished by

17  relinquishing its designation rights and by causing the

18  resignation of its current board designee.  This is a common

19  practice and it is also common for parties to represent in

20  applications that present cross ownership conflicts, that

21  the conflicts will be alleviated prior to the closing of the

22  transaction.

23  Q      Now I'd like to ask you a hypothetical.  You've

24  addressed the four media interests in which at least in this

25  deck Mr. Prak and as he testified in open Court opined that

1  the lenders would have attributable interests in media

2  interests outside of Tribune that could cause a "a violation

3  of the FCC's rules."  The hypothetical is to assume that in

4  one or more of those instances, Mr. Prak is right that those

5  interests are, in fact, attributable and that you're wrong.

6  And in one or more of those instances, in fact, they are

7  attributable.  Assuming that set of facts, would that lead

8  to "a violation of the FCC's media ownership rules and

9  disapproval of the Tribune's FCC application?"

10  A     No, it would not.

11  Q     And why not?

12  A     Again, I would refer back to the -- to Section 5 of

13  the DCL plan which again, affords the company the right and

14  the power to ensure that the adjust -- the interests of the

15  DCL plan proponents that might be causing these conflicts

16  that you've posited are eliminated and that the company is

17  in compliance.

18  Q     Now subsequent to the preparation of your expert

19  report, have you learned of any other interests held by one

20  of the co-proponents that might be germane to this analysis?

21  A     Yes, I have.

22  Q     And what was that?

23  A     Late Friday, I was advised that JP Morgan had

24  determined that it had an interest that might be

25  attributable in a company called Media News Group which I

1  further understand is a newspaper publisher that publishes a

2  newspaper in at least one of the markets where Tribune

3  operates television stations.

4  Q     And what is your understanding of actions taken by JP

5  Morgan with respect to that interest?

6  A     It's my understanding that two actions were taken.

7  First, that JP Morgan acted to convert that interest into a

8  clearly non-attributable interest under the ownership

9  structure of Media News Group through the exchange of voting

10  securities for non-voting securities along the lines that we

11  previously discussed.  And I further understand that late

12  yesterday, JP Morgan made a filing at the FCC disclosing

13  these developments.

14  Q     And take a look at Tab 9 to your binder and exhibit,

15  DCL Exhibit 1570 behind that tab.  Is that the filing at the

16  FCC to which you referred?

17  A     Yes, it is, accompanied by a request for confidential

18  treatment at the FCC.

19  Q     Okay.  Let's lastly turn to the noteholders' plan. Now

20  the noteholders' plan, at least the version we have in your

21  binder behind Tab 5 is the amended plan filed by the

22  noteholders on February 25, 2011.  Again, there is a more

23  recent plan, but I think for the purposes of my questions,

24  reference to this plan will suffice.  Are you familiar with

25  the noteholders' plan?

1  A     Yes.

2  Q     And do you have an opinion concerning the process that

3  the FCC would employ in its review if the noteholders' plan

4  were confirmed?

5  A     Yes.

6  Q     And you -- what is that opinion?

7  A     Well in my experience, the process that the FCC would

8  undertake in the event this plan were to be confirmed by

9  Your Honor is really essentially the same processes it's

10 undertaking with respect to the DCL plan.  Upon

11 confirmation, the plan will be submitted to the FCC by way

12 of an amendment to the pending FCC applications.  That

13 amendment would also include disclosure of any adjustments

14 and attributable interests, the addition of new attributable

15 parties, any other basic qualifying information that might

16 be germane, and would then be taken into consideration by

17 the FCC staff in rendering it's decision.

18 Q     Now you have opined that you disagree with Mr. Prak's

19 opinion that the DCL plan would not be approved by the FCC

20 as it is currently structured and we've already talked about

21 that this morning.  Do you have an opinion about whether the

22 FCC would withhold approval of the noteholders' plan?

23            MR. FRIEDMAN:  Objection, Your Honor.

24            MR. FLAGG:  Why don't you -- go ahead.

25            MR. FRIEDMAN:  I don't believe this opinion is in

1  his report.

2          THE COURT:  Any response?

3          MR. FLAGG:  Your Honor, I think he's going to

4  testify that he -- I don't think they're going to be unhappy

5  with his opinion so I -- could --

6          THE COURT:  Well, unfortunately that's not a

7  basis for --

8  (Laughter)

9          MR. FLAGG:  Okay.  Well then --

10          THE COURT:  -- you know, disposition of

11  evidentiary objections.

12          MR. FLAGG:  All right.

13          THE COURT:  As attractive as that might be.

14  (Laughter)

15          THE COURT:  Sustained.

16  BY MR. FLAGG:

17  Q     You did render an opinion in your report concerning

18  potential delays in the noteholder plan.  Correct?

19  A     That's correct.

20  Q     And do you have an opinion about whether the

21  noteholder plan would be subject to the sort of substantial

22  delays that Mr. Prak opined the DCL plan would be subject

23  to?

24  A     I do.

25  Q     And what is that opinion?

1   A     I don't believe that the noteholder plan as is the

2   case with the DCL plan, would be subject to substantial

3   delay in connection with its review by the FCC.

4   Q     And what is your view on the FCC's analysis -- delay

5   with respect to the FCC's analysis of the waiver request

6   under the noteholder plan?

7   A     I think that the consideration of the waiver requests

8   under the noteholder plan is again essentially the same

9   exercise as it is under the DCL plan.  And to the extent

10  incidentally, that there are pending third party objections

11  to the waiver requests as I've already described, they would

12  have the same effect.

13          MR. FLAGG:  I don't have any further questions,

14  Your Honor.

15          THE COURT:  Cross examination?

16          MR. FRIEDMAN:  May we have a very short break,

17  Your Honor?

18          THE COURT:  Five minute break.  Stand in recess.

19  (Recess from 10:43 a.m. to 11:51 a.m.)

20          THE CLERK:  All rise.  Be seated, please.

21          MR. FRIEDMAN:  May I proceed, Your Honor?

22          THE COURT:  You may.

23          MR. FRIEDMAN:  To begin with, I have a binder of

24  exhibits I'd like to hand to the witness and to the Court,

25  if I may approach.

1          THE COURT:  Certainly.

2          MR. FRIEDMAN:  And, Your Honor, should I have

3   two, one for Your Honor and one for Your Honor's law clerk

4   or --

5          THE COURT:  How else will I know how to decide

6   unless she has something as well?

7   (Laughter)

8          MR. FRIEDMAN:  Here you go, Mr. Rosenstein.

9          MR. ROSENSTEIN:  Thank you.

10          MR. FRIEDMAN:  Your Honor.

11          THE COURT:  Thank you, Mr. Friedman.

12          MR. FRIEDMAN:  Thank you.

13                    CROSS EXAMINATION

14   BY MR. FRIEDMAN:

15   Q     Good morning, Mr. Rosenstein.

16   A     Good morning.

17   Q     You have been engaged to testify today by the DCL plan

18   proponents.  Correct?

19   A     No, that's not correct.

20   Q     Who engaged you to testify?

21   A     The Tribune Company, debtor in possession.

22   Q     Okay.  And the testimony you are -- well withdrawn.

23   Is your firm counsel to any of the DCL plan proponents?

24   A     Not to my knowledge.

25   Q     If your firm's website represents that Covington

1    Burling does work for JP Morgan would that be accurate?

2    A     I can assume it's accurate.

3    Q     Okay.  And does your firm also represent Gannette?

4    A     Yes, the firm does represent Gannette.

5    Q     And the firm represents Freedom as well?

6    A     The firm has done legal work for Freedom, yes.

7    Q     Okay.  Now your testimony today included statements by

8    you and comparisons concerning the noteholder plan and the

9    DCL plan.  Correct?

10   A     Yes.

11   Q     You would agree with me that under the DCL plan, JP

12   Morgan, Angelo Gordon, and Oaktree have attributable

13   interests or will have attributable interests in reorganized

14   Tribune.  Correct?

15   A     Yes, I agree.

16   Q     They will have those attributable interests for two

17   separate reasons.  Correct?  I'll expand on the question.

18   A     Can you explain -- thank you.

19   Q     One reason is they would have an attributable interest

20   based on their receipt of 5 percent or more of the voting

21   securities of reorganized Tribune.  Correct?

22   A     That is correct, yes.

23   Q     And the DCL plan proponents would also have an

24   attributable interest in reorganized Tribune by virtue of

25   their director designation rights as set forth in the DCL

1    plan or reorganization.  Correct?

2    A    That also is correct, yes.

3    Q    Would you agree with me that if the DCL plan

4    proponents receive non-voting securities in reorganized

5    Tribune rather than voting securities such that their

6    interest in voting securities is less than 5 percent and if

7    they do not have director designation rights, that they

8    would have non-attributable interest in reorganized Tribune.

9    A    I would agree with that, yes.

10   Q    Would you agree with me that if the noteholder plan is

11   confirmed, the DCL plan proponents, that is in particular JP

12   Morgan, Angelo Gordon, and Oaktree, would have non-

13   attributable interests?

14   A    May we look at both of the prongs that you've

15   identified separately?

16   Q    Sure.

17   A    That was the reason for my hesitation --

18   Q    Sure.

19   A    -- since we're sort of bifurcating the analysis.

20   Q    I'll break it down into separate questions.

21   A    Very good.

22   Q    Are you aware that the noteholder plan proponents have

23   determined that if the noteholder plan is confirmed, JP

24   Morgan, Angelo Gordon, and Oaktree will each receive less

25   than 5 percent of the voting securities in reorganized

1  Tribune?

2  A     Yes, that's my understanding.

3  Q     And are you aware that under the terms of the

4  noteholder plan and as the noteholder plan proponents have

5  stated in Court filings, that if the noteholder plan is

6  confirmed, JP Morgan, Angelo Gordon, and Oaktree will not

7  have director designation rights in respect of reorganized

8  Tribune?

9  A     I can't say sitting here today that I recall that

10  specifically, but if you posit that, I will accept it.  And

11  if that is the case, then yes, they would not be

12  attributable.

13  Q     And under the DCL plan, the lender proponents, JP

14  Morgan, Angelo Gordon, and Oaktree would have the right to

15  designate six of the seven directors of reorganized Tribune.

16  Correct?

17  A     Yes.

18  Q     And the seventh director would be the CEO of

19  reorganized Tribune who is appointed by the board.  Correct?

20  A     That is correct.

21  Q     Would you agree with me that if the DCL plan is

22  confirmed, the parties who would be in control of Tribune

23  would be JP Morgan, Angelo Gordon, and Oaktree?

24  A     I'm not sure I would agree with that statement, no.

25  Q     You would agree with me that those parties would have

1  the power to appoint six of the directors on the board, on

2  the seven person board.  Correct?

3  A    Yes, that would be the case.

4  Q    And you would agree with me that in addition to their

5  powers to appoint directors, JP Morgan, Angelo Gordon, and

6  Oaktree under the DCL plan also have the power to appoint

7  replacement directors if any of their initial appointments

8  step down or resign during their terms.

9  A    That also is correct.

10  Q    Those terms are for some of the six directors three

11  years, for others two years, and for one or two one year.

12  Is that correct?

13  A    Yes.

14  Q    So during that period of three years, Angelo Gordon,

15  JP Morgan, and Oaktree will have the power to appoint up to

16  six members of the board of directors.  Correct?

17  A    Yes.

18  Q    Now let me ask you about the procedures you described

19  under the DCL plan in connection with issues that might

20  arise if the FCC has questions about other media interests

21  of the DCL plan proponents.  Do you recall testifying about

22  those procedures?

23  A    Yes.

24  Q    And we can look at them.  Let me ask you to open the

25  binder in front of you and turn to DCL Exhibit #1441 which

1    is towards the back because we have the noteholder exhibits

2    first.  In fact, I think it's the last document in your

3    binder.  It starts with the notice of filing and then there

4    are pages from the plan itself.  And it is I believe a more

5    recent form of the DCL plan than the form that you were

6    testifying about, but in respect of these provisions it is

7    exactly the same.  So what I would appreciate your doing in

8    DCL Exhibit 1441 is look at Pages 50 to 51 and in

9    particular, Section 5.3.2 which begins with the designation

10   rights.  And tell me when you're there, please.

11   A    I have it.

12   Q    Okay.  And there's -- after setting forth the

13   designation rights and the replacement rights, there's a

14   proviso that starts provided further that in the event a

15   creditor proponent and the debtors reasonably determine

16   based upon comments received from the FCC, that the required

17   approval of the FCC will not be obtained due to designation

18   rights afforded to such creditors. Then -- and I'm not going

19   to read the whole thing now, but this is the provision you

20   were referring to when you said that if there are issues

21   that arise, the DCL plan contains provisions to deal with

22   them.  Is that correct?

23   A    Yes.

24   Q    Would I be correct, before I ask you in more detail

25   about these procedures, would I be correct that whatever

1  time is necessary for these procedures will be avoided under

2  the noteholder plan if that plan is confirmed by virtue of

3  the fact that under the noteholder plan when the amended

4  application is filed with the FCC, the FCC will be advised

5  that JP Morgan, Angelo Gordon, and Oaktree do not have

6  either more than 5 percent of the voting securities and do

7  not have director designation rights?  Do you understand the

8  question?

9  A     No, actually could I hear it again?

10  Q     Okay.  Let me try to break it down.  These are

11  procedures that are necessary to address a situation where

12  the lenders will have attributable interest in Tribune.

13  Correct?

14  A     That is correct.

15  Q     If the lenders do not have attributable interest in

16  Tribune, then these procedures will not need to be

17  undertaken.  Is that correct?

18  A     Well that is certainly correct, but let me just make

19  clear that they may not need to be undertaken in the event

20  that they have attributable interests either.

21  Q     Okay.  So now let's focus on the situation under the

22  DCL plan where we agreed that they have attributable

23  interest.  And the plan contemplates the possibility that

24  there will be comments from the FCC that need to be

25  addressed.  Are you with me?

1   A      I am.

2   Q      And these are comments that could be in the nature of

3   the FCC raising questions about other media interests of the

4   lender proponents.  Correct?

5   A      Yes, that is correct.

6   Q      Okay.  And if the FCC has such comments, then the

7   procedure under the DCL plan has multiple steps that will be

8   taken.  Is that correct?

9   A      Well I'm not sure I would share that characterization

10  because that suggests that there is a sequence of steps.  I

11  think it provides multiple options.

12  Q      Okay.

13  A      That may be undertaken.

14  Q      Well let me ask if you would agree with me that if

15  there are comments from the FCC, the first thing that

16  happens under the terms of the DCL plan is that the creditor

17  proponent and the debtors reasonably determine based on

18  those comments that the required approval of the FCC will

19  not be obtained due to the designation rights.  In other

20  words, that's what starts the process.  The creditor

21  proponent and the debtors reasonably determine that the

22  required approval will not be obtained.  Is that correct?

23  A      Yes.

24  Q      And if the creditor proponent and the debtors make

25  that determination, then the creditor proponent has a period

1   of 60 days within which to do something.  Correct?

2   A    That's correct.  It establishes an outside limit of 60

3   days, yes.

4   Q    Okay.  Well let's try to understand how much of an

5   outside limit that is.  The provision says that within 60

6   days of that determination, that the creditor proponent has

7   to take certain action.  Correct?

8   A    That's correct.

9   Q    And the provision in the plan goes on to describe and

10  you mentioned some of the possibilities when you testified,

11  the provision in the plan goes on to describe the action

12  that the creditor proponent will take or it can take to

13  address the FCC comments.  Correct?

14  A    Correct.

15  Q    Under the DCL plan, it is the creditor proponent and

16  not the debtor, not Tribune that decides what action will be

17  taken.  Correct?

18  A    In the first instance, yes.

19  Q    Okay.  Because the plan is very clear that the action

20  may include various possible actions which you mentioned at

21  the sole discretion of the creditor proponent.  Correct?

22  A    Correct.

23  Q    So the creditor proponent decides what it's going to

24  do 60 days after there have been comments from the FCC.  And

25  am I correct that the action taken by the creditor proponent

1  could be limited to simply making an argument or an

2  explanatory filing to the FCC?

3  A    That's what the words say, but if I could just amplify

4  what I --

5  Q    Well I --

6  A    In my experience what that would mean.

7  Q    Now I'd like to understand how this plan works based

8  on the words.  And if your lawyer wants to bring out

9  something about your experience, I'm not sure that's going

10 to be relevant, but in terms of the words --

11           MR. FLAGG:  Your Honor --

12           MR. FRIEDMAN:  Yeah.

13           MR. FLAGG:  -- he was in the middle of an answer

14 and he was interrupted.  Could we at least get the rest of

15 his answer?

16           THE COURT:  Well, we've moved on.

17           MR. FRIEDMAN:  Okay.

18           THE COURT:  So I'll let Mr. Friedman finish his

19 current question.

20           MR. FRIEDMAN:  Now --

21           THE COURT:  Otherwise, I'd ask that you not

22 interrupt the witness.

23 BY MR. FRIEDMAN:

24 Q    When a creditor proponent makes an explanatory filing

25 with the FCC, do you have an understanding based on your

1  experience that these explanatory filings can lead to give

2  and take that can require a period of weeks for resolution

3  of any issues?

4  A    In my experience, Mr. Friedman, the explanatory filing

5  would be made as a reflection of discussions with the FCC

6  staff and the filing itself would embody the agreed

7  resolution of those discussions.

8  Q    Okay.  And is it your understanding that in the

9  circumstances of this case, that is Tribune, that the lender

10  proponents have not agreed to relinquish their director

11  designation rights?

12  A    That is not my understanding, no.

13  Q    May I -- I think I may have had too many negatives in

14  my question.  To your understanding, have the lender

15  proponents agreed to relinquish any of their director

16  designation rights?

17  A    I don't mean to be obtuse.  Are you asking me whether

18  as of this date they have agreed to -- I'm not aware that

19  they have.

20  Q    Yes, correct.

21  A    Okay.

22  Q    Now before I turn to some of the specifics about your

23  testimony concerning attributable interests and what's

24  attributable and what's not, during the course of your

25  testimony, you said from time to time the FCC has ruled, the

1  FCC has deemed this or that.  Do you recall that?

2  A      Yes.

3  Q      Am I correct that any of the FCC decisions or rulings

4  you are referring to were set forth in and cited in your

5  report?

6  A      Well, I can't sure that everything I referred to was

7  cited in my report.  I mean, if you want -- I don't know how

8  to answer it.  If you want to  identify specific matters, we

9  can discuss them.

10  Q      Well, I just -- as you sit here are there rulings of

11  the FCC that you were testifying about today that were not

12  cited in your report?

13  A      Well there may have been.

14  Q      Are there --

15  A      I just don't remember.

16  Q      Now you testified in describing attributable interest

17  of -- in discussing whether various media interests would be

18  attributable.  You testified to your opinion that nomination

19  rights as opposed to designation rights are not

20  attributable.  Is that correct?

21  A      That is correct.

22  Q      Would you agree with me that parties will sometimes

23  characterize rights as nomination rights, but such rights

24  would be viewed by the FCC as designation rights if

25  effectively the person nominated was going to be elected to

1  the board?

2  A     I have not encountered that circumstance in my

3  experience.

4  Q     Okay.  Well let me ask about some of the testimony

5  that you gave. If you look in the binder at let's see, it

6  should be Tab A and turn to Page 116 and I just want to make

7  sure we have sort of the same understanding.  If you look at

8  Page 116, Line 22 through 117 Line 9, you gave testimony

9  which let me read it in the record so it's clear and then

10  I'll ask you a question.  The question was and if a

11  nomination right of an officer is not subject to disapproval

12  or denial, do you have an opinion as to whether that

13  nomination right would result in the party having an

14  attributable interest?  And your answer is I think I can

15  answer it.  I mean, I would refer to my earlier answer that

16  I think that the concept of a nomination right and I believe

17  this is how the FCC regards it based on my experience,

18  subsumes within it the fact that the nominee may not be

19  elected.  Do you see that?

20  A     I do.

21  Q     And you refer a few lines further down to -- well, let

22  me just read your answer as it continues.  So you have here

23  a circumstance in which it is made express in the documents,

24  but even if it were not made express in the documents, again

25  by definition and based on my experience in structuring

1  transactions at the FCC where nomination rights were

2  involved, the FCC would make a decision and it's a

3  distinction I'm making here between a nomination right where

4  there is ultimately uncertainty as to whether the nominated

5  individual will be placed on the Board or into an office on

6  the one hand and a designation right on the other.  You gave

7  that testimony?

8  A     Yes.

9  Q     And was that testimony correct when you gave it and

10 still correct in your view?

11 A     Yes.

12 Q     So am I correct that the FCC draws a distinction

13 between a nomination right on the one hand, which entails

14 uncertainty as to whether the nominated individual would be

15 placed on the Board and a designation right, which means

16 there's a certainty that the person will be placed on the

17 Board?

18 A     Yes.

19 Q     So if for example a nomination right was part of an

20 agreement that required the other Shareholders to elect that

21 nominated individual, would you agree with me that the FCC

22 would view that nomination right as a designation right?

23 A     I'm not sure that I would agree.  I would need to see

24 you know the agreement that you're referring to and all the

25 circumstances.

1   Q      Okay.  Now would you agree with me that the FCC does

2   not have a hard and fast rule that nomination rights are

3   non-attributable?

4   A      No.  I think I would characterize it as a hard and

5   fast rule.

6   Q      Okay.  Are you aware of the FCC Decision in the

7   Telemundo case, April 10, 2002?  I don't expect you to have

8   a photographic memory of the case, although maybe you do.

9   But in that case the FCC said that in order to determine

10  whether or not a nomination right gives rise to an

11  attributable interest, the FCC will consider the conduct of

12  the nominated directors after they are seated on the Board

13  and consider the degree of influence by the party that

14  nominated them and decide whether such exercise of influence

15  is sufficient to establish attribution.

16  A      I do remember that case.  That's the Paxson case,

17  isn't it?

18  Q      It's a little hard to keep track of all --

19  A      Well, I think the caption is Telemundo, but I think --

20  Q      -- the names.

21  A      -- it pertained to the rights of Paxson

22  Communications.

23  Q      Okay.  Now with respect to board observer rights, I

24  believe you gave testimony that you view board observer

25  rights as non-attributable, correct?

1  A     That is correct.

2  Q     And is it also your testimony that when an FCC

3  application is filed, there's not a requirement to disclose

4  board observer rights to the FCC?

5  A     The application doesn't expressly ask for a disclosure

6  of observation rights.

7  Q     Well, isn't -- on -- you're familiar with FCC Form

8  315?

9  A     I am.

10 Q     Isn't there a question that asks the applicant to

11 advise the FCC whether any non-party investor has the right

12 to appoint a board observer and if the answer is yes, to

13 then explain why that right to appoint a board observer does

14 not give rise to an attributable interest?

15 A     Well, actually the application itself does not ask

16 that question.  In worksheets that are designed to assist

17 applicants in preparing their applications, that question

18 does occur, yes.

19 Q     Okay.  Now in general when you spoke about what is

20 required to be disclosed to the FCC, did you have in mind

21 what is required to be disclosed in connection with

22 applications for waivers?

23 A     Yes.

24 Q     And would you agree with me there is an FCC Rule 1.17,

25 which addresses what parties are required to disclose to the

1  FCC?

2  A    Yes, I would agree.

3  Q    And would you agree that that rule is similar to what

4  non-FCC lawyers think of as 10b-5 in the sense that the rule

5  requires disclosure of any fact required not to make any

6  material statement misleading?

7  A    Yeah, though you just got way above my head because

8  I'm just a lowly FCC attorney, but --

9  Q    Okay.  But you --

10 A    -- I'll accept your --

11 Q    -- would agree with my characterization of the Rule

12 1.17?

13 A    Yes.

14 Q    And that's the rule that governs what parties are

15 required to disclose to the FCC?

16 A    Yes.

17 Q    And in connection with the waiver applications, am I

18 correct that in 2008, there was a change in the newspaper

19 broadcast cross-ownership rules?

20 A    That is correct.

21 Q    And when we talk about Tribune's waiver applications,

22 we're talking about how the FCC will view those applications

23 under the version of the rule that went into effect in the

24 beginning of 2008, correct?

25 A    Yes.

1  Q      And am I correct that since the rule went into effect

2  at the beginning of 2008, there have not actually been

3  waivers granted by the FCC under that rule?

4  A      That is correct.

5  Q      Am I also correct that Tribune is seeking six waivers

6  in -- sorry -- seven waivers in six different markets around

7  the country?

8  A      I believe that is also correct.

9  Q      Now you gave testimony about some of the specific

10 other interests of JP Morgan and Angelo Gordon and I want to

11 ask you about that.  Now with respect to Angelo Gordon's

12 interest in NextMedia, you mentioned during your direct

13 examination that there was a supplement to the plan that was

14 filed with the Court, stating that the final member of the

15 new board will be designated by Angelo Gordon and disclosed

16 at or before the confirmation hearing, correct?

17 A      Yes.

18 Q      And you would agree with me that if in accordance with

19 that statement in the plan supplement, Angelo Gordon

20 designated the final member of the new board, then Angelo

21 Gordon would have an attributable interest in NextMedia.

22 A      Yes, but only if it had the right to make that

23 designation under the plan.

24 Q      Yeah.  Okay.  And -- well, you gave an interpretation

25 during your direct examination that there was a plan

1  provision that you said was different from this statement in

2  the supplement.  Is that correct?

3  A    Yes.

4  Q    Putting aside or I should say notwithstanding your

5  interpretation of the plan, would you agree with me that if

6  in accordance with the statement in the plan supplement

7  Angelo Gordon did designate the final member of the board of

8  directors, then Angelo Gordon would be viewed by the FCC as

9  having an attributable interest?

10 A    Yes, I would have to agree.

11 Q    Okay.  And you do not have any personal knowledge as

12 to whether or not Angelo Gordon designated a director as the

13 plan supplement stated that it would?

14 A    No, I don't.

15 Q    Okay.  Now you have -- as part of your arriving at

16 your opinions in this case, you reviewed the NextMedia

17 stockholder agreement to which Angelo Gordon is party,

18 correct?

19 A    That is correct.

20 Q    And if you take a look in the binder that's in front

21 of you at Tab 80 -- sorry, I should say NPPFCC Exhibit 80,

22 it's sort of in the middle of the binder, we have the

23 stockholder agreement there.  And I'm going to ask you in

24 that stockholder agreement to turn to page 9 where we have a

25 section that is Corporate Governance and under that 2.1

1   Board of Directors.  Do you see that?

2   A    Yes, I'm with you.

3   Q    And if you look at 2.1A(i), there's a provision for

4   what happens if the current chief executive officer ceases

5   to serve as a member of the board of directors for certain

6   reasons and there's a provision for replacing that CEO on

7   the board.  Are you with me?

8   A    Yeah.  You're in Romanette (i)?

9   Q    Romanette (i), which refers to the replacement

10  director as the CEO designee.

11  A    No, I'm sorry.  Then I'm not following you.

12  Q    Okay.

13  A    This refers --

14  Q    I think -- let me --

15  A    -- to the CEO, correct?

16  Q    Yeah.  Well, let me back up because I think the

17  provision maybe is not obvious at first reading.  Section

18  2.1, if you looked at A before you get to Romanette (i),

19  refers to who will be the individuals on the board of

20  directors, correct?

21  A    Yes.

22  Q    And the second sentence in A provides that each

23  stockholder hereby agrees that so long as this agreement

24  shall remain in effect, such stockholders shall vote all of

25  the voting common stock beneficially owned or held of record

1  by such stockholder so as to elect and subject to Section

2  2.1 below, to continue in office.  And then we get to

3  Romanette (i), which refers to a CEO designee who will be

4  seated on the board of directors if the current CEO ceases

5  to serve for various reasons.  Are you with me?

6  A     Yes.

7  Q     And that CEO designee is someone nominated by Angelo

8  Gordon, if Angelo Gordon owns at least 5 percent of the

9  common stock and approved by SVP if it owns at least 5

10 percent of the outstanding common stock.  So my question for

11 you is when Angelo Gordon nominates a CEO designee to take a

12 seat on the board and we have the provision in the

13 shareholder agreement that says the stockholders shall vote

14 all of the voting common stock beneficially owned by them so

15 as to elect that person, would that give Angelo Gordon an

16 attributable interest in NextMedia?

17 A     I don't believe so, no.

18 Q     Okay.  And that's because you view that as a

19 nomination right, not a designation right?

20 A     That's correct.

21 Q     Okay.  And that's your opinion even though the

22 shareholders have committed to vote for the person nominated

23 by Angelo Gordon?

24 A     Well, the shareholders who were parties to this

25 agreement have agreed to vote for that person.

1    Q    Okay.  Now let me ask you if the shareholders who were
2    party to disagreement constituted a sufficient number of
3    shareholders to insure the election of any nominated
4    director, then would you agree with me that the combination
5    of the nomination right and the agreement to vote amounts to
6    a designation right for Angelo Gordon?
7    A    Well, I'm not sure that I would.  Again, I'm looking
8    at the same language you're pointing to, which notes that
9    the election shall be upon an affirmative vote of the
10   majority of stockholders -- of the majority stockholders,
11   which suggests to me a possibility that there would be an
12   insufficient number of votes to elect him.
13   Q    Even -- and that's your opinion even though the
14   agreement contains an express provision that each
15   stockholder to the agreement shall vote all of the voting
16   common stock beneficially owned or held of record by such
17   shareholders so as to elect the nominated director?
18   A    Yes, it is.
19   Q    Okay.  Now you gave some testimony at your deposition
20   concerning group director designation rights.  Do you recall
21   that?
22   A    Yes.
23   Q    If a group of parties have the right collectively to
24   designate a member of the board of directors, you testified
25   that it is your opinion that each member of the group would

1   be viewed as having an attributable interest?

2   A    Yes.  As I recall our discussion at the time, I think

3   we agreed based on a hypothetical that you posed that in

4   certain circumstances that would be the case.

5   Q    Well, let me ask you specifically about your

6   testimony.  If you would turn to page 80 of your transcript,

7   which is Tab A in the binder, and you were asked starting at

8   Line 5 a question.  Let me ask this question, as you have

9   testified, a party that has board designation rights in a

10  reorganized entity is attributable for the purposes of that

11  entity.  The question I would like to ask you is in the

12  circumstances of Tribune, if the board designation rights

13  are not allocated specifically to JP Morgan and Angelo

14  Gordon by name, but rather are rights provided to the senior

15  lenders as a group to designate directors, do you have an

16  opinion as to whether members of the senior lender group

17  would be considered to have an attributable interest?  And

18  your answer was yes, as stated differently the question is

19  whether a share designation right would be deemed to confer

20  an attributable interest on each of the participants in that

21  right.  I believe the answer is yes, it would.  Did you give

22  that testimony at your deposition?

23  A    Yes.

24  Q    And does that testimony still accurately set forth

25  your opinion?

1  A     Yes.

2  Q     And do you recall that at your deposition I expanded

3  the question and asked you specifically what if the group

4  with designation rights included a large number of members,

5  would each member of the group still have an attributable

6  interest and your answer was yes?  Do you recall that?

7  A     I do.

8  Q     And is that still your opinion today?

9  A     Yes.

10 Q     Okay.  Now let me ask you to take a look at FCC

11 Exhibit #102 in the binder that you have.  And this is a

12 disclosure statement that was filed in the bankruptcy

13 proceeding of Freedom Communications on January 28, 2010.

14 And if you flip the pages you come to a plan support

15 agreement that's part of the disclosure statement.  And the

16 very last page, these are obviously excerpts from a long

17 document, the very last page is an exhibit to the plan

18 support agreement that sets forth certain terms and the last

19 section on page 5, which again is the last page in the

20 binder, it's Roman Numeral III, Corporate Governance and

21 Management, Board of Directors of Reorganized Holdings.  And

22 the first sentence there says the initial board of directors

23 of reorganized holdings shall consist of the chief executive

24 officer and four independent and disinterested individuals

25 identified and agreed to by the consenting lenders.  Okay.

1 | Do you see that sentence?

2 | A      I do see that.

3 | Q      So in a situation where the consenting lenders

4 | designate the directors, that is to use the words that are

5 | set forth here, the consenting lenders identify and agree to

6 | the individuals who will be on the board, would you agree

7 | with me that each of the consenting lenders would have an

8 | attributable interest in Freedom?

9 | A      Not in this circumstance, no.

10 | Q      Okay.  And are you aware that JP Morgan is one of the

11 | consenting lenders that had the right to participate in the

12 | identification of the individuals who would serve as

13 | directors?

14 | A      Yes.

15 |         MR. FLAGG:  Your Honor, I believe this line of

16 | cross goes beyond anything Mr. Prak testified to, anything

17 | Mr. Rosenstein testified to, so I'm not sure what it's doing

18 | in his cross.

19 |         MR. FRIEDMAN:  Well, Mr. Prak testified that the

20 | interests of JP Morgan and Angelo Gordon in NextMedia,

21 | Freedom, GNET are not attributable interests.  So I'm --

22 |         THE COURT:  Mr. Friedman, you can finish.  No,

23 | no.  Finish your --

24 |         MR. FRIEDMAN:  Oh, I'm finished.  I'm finished.

25 |         MR. FLAGG:  Your Honor, as you understood today

1  there are a wide range of bases for an interest to be

2  attributable.  This document was never mentioned by Mr.

3  Prak, was not addressed in the rebuttal, it was not

4  addressed by Mr. Prak in his testimony, and now all of a

5  sudden in the you know 65th minute of this cross examination

6  it comes up and when it was never mentioned by Mr.

7  Rosenstein today.

8            THE COURT:  Objection is sustained.

9  BY MR. FRIEDMAN:

10  Q     You testified, Mr. Rosenstein, about JP Morgan's

11  interest in GNET.  Do you recall that?

12  A     Yes.

13  Q     And your opinion -- the opinion that you expressed is

14  that even though JP Morgan has an interest in the GNET

15  voting stock that exceeds 5 percent, JP Morgan is not going

16  to be viewed as an attributable -- as holding an

17  attributable interest because the 20 percent passive

18  investor threshold is applicable.

19  A     Yes, but just to be clear the 20 percent threshold is

20  applicable to some of the JP Morgan interests.  The 5

21  percent threshold is applicable to others.

22  Q     And you are aware that JP Morgan is an investment

23  advisor to funds that hold stock in GNET.  Is that correct?

24  A     That is my understanding.

25  Q     And your opinion is that where the funds themselves

1  qualify for passive investor status, that the investment

2  advisor to those funds also qualifies for passive investor

3  status for purposes of whether the 5 percent or 20 percent

4  threshold applies, correct?

5  A    That is correct.

6  Q    And you're familiar with the Decision of the Federal

7  Communications Commission in 1999 that is entitled In the

8  Matter of Review of the Commission's Regulations Governing

9  Attribution, Et Cetera and it's actually -- we have a copy

10 in Tab B that is right in front of you.  Is that something

11 you're familiar with?

12 A    I'm looking for it now.  I believe it is, yes.

13 Q    Okay.  And one of the issues considered by the Federal

14 Communications Commission in issuing this ruling was whether

15 the 20 percent -- well, whether the higher threshold for

16 passive investors should or should not apply to investment

17 advisors.

18 A    That was one of the issues they considered, yes.

19 Q    Okay.  And I'm going to call your attention please to

20 page 12,571 in the document.  And if you look in the middle

21 of the page there's a discussion entitled Definition of

22 Passive Investors and the -- I'll just start reading the

23 middle of that first sentence.  Several commenters raised

24 the issue as to whether the Commission should expand its

25 definition of passive investors to include such

1  institutional investors as pension funds, commercial and

2  investment banks, and certain investment advisors.  Do you

3  see that?

4  A     Yes.

5  Q     And am I correct that the Commission decided not to

6  expand its definition of passive investors?

7  A     Yes, that's correct.

8  Q     Okay.  And you have expressed the opinion that JP

9  Morgan as investment advisor should be subject to the

10  passive investor higher threshold, correct?

11  A     That's not quite right.  What I said was and I will

12  explain this because I understand what you're going at in

13  this order.  What I said was that JP Morgan when it was

14  playing the role of investment advisor to a mutual fund that

15  was subject at the 20 percent benchmark is entitled to take

16  advantage of the higher benchmark.  The Commission actually

17  considered this issue, whether to expand the definition of

18  passive investor to include investment advisors in 1984 and

19  again in 1995 and 1999 and concluded each time that it would

20  not.  But it also held in 1968 and 1985 that where an

21  investment advisor was not investing directly on its own

22  account, but rather was managing an investor subject to the

23  higher benchmark, that it would be entitled to the higher

24  benchmark.

25  Q     Well, you agree with me that JP Morgan as investment

1  advisor has the authority to vote the shares of GNET that

2  are held by the mutual funds?

3  A    It may or may not.  That will depend on the

4  contractual arrangement between them.

5  Q    Are you aware that JP Morgan has made SEC filings

6  stating that it has the right to vote those shares?

7  A    I am not.

8  Q    Would that be a factor in your opinion as to whether

9  an investment advisor with authority to vote the shares

10 would -- is that a factor in your opinion as to whether the

11 investment advisor qualifies for passive investor status?

12 A    No.

13 Q    Okay.  And the rulings that you're referring to, which

14 we don't have to read in the courtroom today, those rulings

15 are cited in your report, correct?

16 A    Yes, they are.

17          MR. FRIEDMAN:  Okay.  May I take 30 seconds, Your

18 Honor?

19          THE COURT:  You may.

20 BY MR. FRIEDMAN:

21 Q    Okay.  Just a couple of questions, Mr. Rosenstein.  In

22 connection with Tribune's waiver applications, is it your

23 opinion that the FCC would not view as relevant media

24 interests held by JP Morgan, Angelo Gordon, and Oaktree, who

25 are the parties who will effectively control Tribune?

1            MR. FLAGG:  Objection to the form.

2            THE COURT:  Sustained.

3            MR. FRIEDMAN:  I'll ask a different question.

4   BY MR. FRIEDMAN:

5   Q    We discussed earlier that JP Morgan, Angelo Gordon,

6   and Oaktree will have the power to appoint six of the seven

7   directors of the Tribune board of directors, correct?

8   A    Yes.

9   Q    And we discussed the fact that in certain markets

10  including Los Angeles, Chicago, Hartford, other markets,

11  Tribune is seeking waivers, correct?

12  A    Yes.

13  Q    And in certain of those markets under the current FCC

14  rules, there's a negative presumption against the grant of

15  the waiver that's being requested by Tribune, correct?

16  A    I believe and we haven't got into this today for the

17  Court, that there will be a favorable presumption in some

18  markets and I believe that the FCC's negative presumption

19  under its new rules would be applicable in a couple of

20  markets.

21  Q    Okay.  And in connection with considering waiver

22  requests, whether there's a negative presumption or a

23  positive presumption, is it your opinion that other media

24  interests of JP Morgan, Angelo Gordon, and Oaktree, which

25  may be substantial, but in your view non-attributable in

1  those markets, will be viewed as not relevant by the FCC?

2  A    It is my view that they would not need to be disclosed

3  and would not be viewed as relevant to the FCC.

4  Q    So for example in Los Angeles where Tribune is seeking

5  a waiver and as you know Freedom Communications owns the

6  second largest newspaper.  Are you aware of that?

7  A    They own the Orange County Register.

8  Q    Okay.  And is it your view that the FCC would not view

9  as relevant the interests of JP Morgan, Angelo Gordon, and

10  Freedom?

11  A    Yes, that is my view.

12  Q    Okay.  Now are you familiar with the case that Mr.

13  Prak described when he was testifying concerning board

14  observer rights, the Una Vez Mas case?

15  A    I am.

16  Q    Do you agree with Mr. Prak that in the course of the

17  FCC's discussion in that case, there is dicta indicating

18  that the FCC could view board observer rights as the basis

19  for finding an attributable interest?

20  A    Yes.  There is dictum in that case which pertain to a

21  foreign ownership analysis and did not implicate the

22  attribution rules at all.  There was some dictum in that

23  case to the effect that the Commission you know conceivably

24  could you know regard observer rights or nomination rights

25  as attributable interests, but it didn't reach those issues

1  and in fact they weren't germane to the case.

2  Q    Well, the Commission was actually very specific in its

3  statement.  As you say the case involved other issues

4  concerning foreign ownership and whether a lender would be

5  viewed as effectively owning the company, correct?

6  A    Yes.  I would say whether a lender would be viewed as

7  exercising control over the company.

8  Q    And one of the arguments presented to the Commission

9  was that the lender should be viewed as having control

10 because it had board observer rights.

11 A    Yes.  My recollection is.  We could check it and my

12 recollection is that the allegation was that the lender

13 should be viewed as having control because among many other

14 factors it had board observer and board nomination rights.

15 Q    And the Commission said those observer rights are not

16 sufficient to result in control, but they could be a basis

17 for finding an attributable interest on the part of the

18 party.  Is that correct?

19 A    That more or less comports with my recollection.  We

20 could look at the language to be sure.

21 Q    And you're not aware of a case holding that board

22 observer rights are not the basis for an attributable

23 interest?

24 A    No, that's correct.  I'm not aware of any recorded

25 Decision where the Commission has said that they're not.

1          MR. FRIEDMAN:  I have no further questions.

2    THE COURT:  Is there any other cross examination?  Redirect?

3          MR. FLAGG:  Thank you, Your Honor.

4                    REDIRECT EXAMINATION

5    BY MR. FLAGG:

6    Q     Let's stick with the board observer rights and the

7    nomination rights.  Now you testified with respect to some

8    specific opinions by Mr. Prak, in particular the Freedom

9    Communications interest that Angelo Gordon has that you did

10   not believe that the board observer rights associated with

11   that relationship created an attributable interest.  Is that

12   correct?

13   A     That's correct.

14   Q     And there were two different cases that Mr. Friedman

15   raised with respect to board observer rights and also

16   nomination rights.  One was the Una Vez Mas case.  Does that

17   case change your view of that issue?

18   A     No.

19   Q     Why not?

20   A     Well, because again as I think I explained for Mr.

21   Friedman, the case first of all pertained to control issues

22   under a foreign ownership analysis and second of all you

23   know it was dictum.  The Commission did not reach the

24   question in either case whether observer rights or

25   nomination rights could be attributable.

1  Q     And in the real world have you structured transactions

2  to have observer rights?

3  A     As I --

4           MR. FRIEDMAN:  Objection, Your Honor.

5           THE COURT:  Basis?

6           MR. FRIEDMAN:  They.

7           THE COURT:  You want to rephrase it?

8  BY MR. FLAGG:

9  Q     Do you have experience at the Commission in which --

10 in transactions in which observer rights were created as

11 non-attributable rights?

12 A     I do.

13 Q     And what is your experience in that regard?

14 A     I can think of a couple of instances.  In one in a

15 circumstance not unlike what we've been addressing here this

16 morning regarding the Tribune reorganization plan, we wanted

17 to create an ownership structure in which owners could

18 freely move back and forth between attributable and non-

19 attributable interests in order to accommodate their other

20 media investments.  The owners felt it was important in the

21 event that they were going to relinquish their voting rights

22 and their board rights at least to be able to have somebody

23 in the room at board meetings as an observer and to have

24 information rights with respect to board meetings.  We

25 therefore structured an arrangement in which as an investor

1   became non-attributable, as that investor's director stepped

2   off the board, they would have an opportunity to designate

3   an observer to attend, but not participate in board

4   meetings.

5   Q    And did you tell the FCC that's what you were going to

6   do?

7   A    Yes.  That agreement was filed at the FCC.

8   Q    And did the FCC agree that that was a non-attributable

9   right in that circumstance?

10  A    Well, I think and picking up on Mr. Friedman's last

11  question, I would say that the FCC did not disagree, as is

12  often the case at the FCC, that it was not an attributable

13  interest.

14  Q    All right.  Let's -- there have been a number -- there

15  were a number of questions about the NextMedia interest that

16  Angelo Gordon has and you recall both in Mr. Prak's

17  testimony last month and today in Mr. Friedman's cross there

18  was this reference to a statement in the supplement to the

19  plan supplement stating that there was a designation right.

20  Do you recall that exhibit?

21  A    I do.

22  Q    And I'd like you to take a look at -- behind Tab 7 of

23  your original binder and this is DCL Exhibit 1,556 at the --

24  well, let me ask you this first: does Mr. Friedman's

25  direction on cross to that statement in the supplement to

1   the plan supplement change your opinion that in fact a

2   nomination right, not a designation right, was created?

3   A      No.  As I testified previously, it does not.

4   Q      And is DCL Exhibit 1,556 which is the order granting

5   the -- approving certain modifications to the modified

6   amended joint plan in the NextMedia reorganization, is that

7   in part -- is the modified amended joint -- is the plan of

8   reorganization in that case part of the basis for your

9   opinion?

10  A      Yes, it is.

11  Q      And if you would turn to page 19 of the plan, which is

12  Section 6.3M, what does that provide and how does that

13  relate to your opinion?

14  A      Well, that provided the mechanism by which directors

15  were to be determined under the plan, under the confirmed

16  plan.

17  Q      And what statement in particular in that paragraph are

18  you referring to?

19  A      I think you'll see there that one member of the new

20  board is to be designated by the representatives of holders

21  of certain allowed claims.

22  Q      And with respect to any conflict between this

23  provision and a provision in some subsequent document such

24  as the supplement to the plan supplement, is there a

25  provision in the plan that deals with those sorts of

1    conflicts, as you understand it?

2    A      I understand that there is, yes.

3    Q      And directing your attention to page 36 of the same

4    document, Section 13.6 entitled Inconsistency, is that the

5    provision you're referring to?

6    A      Yes, that's what I was thinking of.

7    Q      And which sentence there deals with this circumstance?

8    A      In the first sentence you'll note and this is what I

9    referred to earlier, the plan provides that in the event of

10   any inconsistency among the plan, the plan supplement, the

11   disclosure statement, any exhibit or schedule to the

12   disclosure statement, that the provisions of the plan

13   control.

14   Q      Now Mr. Friedman also asked you, even assuming that

15   the right here could be considered a nomination right rather

16   than a designation right, he asked you about the Paxson case

17   and really didn't get into the details of it, but does the

18   Paxson case change your view that this sort of nomination --

19   about whether this sort of nomination right would be

20   considered attributable by the Commission?

21   A      No, it does not.

22   Q      Why not?

23   A      Well, Paxson is interesting and I think it's often

24   taken for the proposition that a nomination right per se is

25   problematic, but I think what was really at issue in the

1  Paxson case was not the right, the Commission did not hold

2  that the right itself residing in a minority investor was

3  attributable.  Rather what the Commission was focused on was

4  the way in which the right had been exercised by that

5  investor and in particular by the nature of the nominees

6  that the investor had proposed and after their election by

7  their conduct as directors on the board of directors of

8  Paxson.

9  Q    Now Mr. Friedman also asked you some questions about

10 the change in the ownership rules in 2008.  Do you recall

11 that question?

12 A    Yes.

13 Q    And those changes could potentially affect the FCC's

14 handling of the waiver applications.  Is that right?

15 A    That's what he discussed with me, yes.

16 Q    And would that change also apply with respect to the

17 waivers as they might be considered in connection with the

18 noteholder's plan?

19 A    Yes.  And as I explained you know I think the plans

20 are really quite similarly situated in that regard.  This is

21 in fact the first time that the Commission is considering

22 waivers of certain of these rules under changes to the rules

23 that went in effect in 2008 and in fact the pending

24 objections to the waiver requests are based on sort of

25 policy considerations emanating from the change in the rules

1   that occurred in 2008.

2   Q    Now lastly again Mr. Friedman asked you a number of

3   questions about different media interests that JP Morgan and

4   Angelo Gordon have in media outside of the Tribune, correct?

5   A    Yes.

6   Q    And again if it were the case that Mr. Prak were

7   correct that those interests were attributable and contrary

8   to your view, is it your view that the DCL plan would not be

9   approved or would violate the FCC ownership rules?

10  A    No, it's not my --

11  Q    And again that is because --

12  A    Because as I testified previously, again I think that

13  the mechanisms we have discussed at such length this morning

14  in the DCL plan would allow the parties efficiently to

15  adjust their interests, either on the Tribune side or on the

16  other side in order to permit the plan to be approved.

17  Q    And Mr. Friedman asked you some questions about the

18  specific mechanism vies-a-vies the designation of directors.

19  Do you recall that?

20  A    I remember that.

21  Q    And that's Section 5.3, right?

22  A    Yes.

23  Q    And there was some reference to the time limits set

24  forth in Section 5.3.2 and I believe you testified that

25  those established outside limits.  Is that right?

1   A      That's -- that was my testimony, yes.

2   Q      And is there anything in the DCL plan that requires

3   the parties, the co-proponents for example, to use the

4   entirety of the time set forth in the agreement in

5   exercising their rights?

6   A      Oh, no.  And my expectation in fact and based on my

7   experience in these circumstances is that they would be

8   incented to get done whatever needed to be done as soon as

9   possible, precisely in order to permit the early conclusion

10  of the proceeding and approval of the plan.

11              MR. FRIEDMAN:  Your Honor, move to strike the

12  last answer.  It's just speculation about how other parties

13  may conduct themselves.

14              MR. FLAGG:  Your Honor, Mr. Prak --

15              THE COURT:  Denied.

16              MR. FLAGG:  Okay.  Thank you.  No further

17  questions.

18              THE COURT:  Recross?

19              MR. FRIEDMAN:  Just a couple of things.

20                        RECROSS EXAMINATION

21  BY MR. FRIEDMAN:

22  Q      Mr. Rosenstein, what's the case you're referring to

23  that you had experience with involving board observers?

24  A      The Univision case.

25  Q      Okay.  And in that case do you recall whether the

1  agreement setting forth board observer rights was submitted

2  to the Commission before or after the Commission granted the

3  application?

4  A     I believe it was submitted as a post-consummation

5  filing.

6  Q     All right.  After the application?

7  A     Yeah.  Yes.

8  Q     Okay.  You were asked by Mr. Flagg questions about the

9  Court order and plan in the NextMedia case.  And let me ask

10 you to turn back to page 19 of Tab 7 in Mr. Flagg's binder.

11 A     Yes.

12 Q     And he was asking you about the provision at

13 Subsection M and there's a statement in the middle of

14 Subsection M that one member of the new board shall be

15 designated by representatives of the holders of allowed

16 second lien claims.  Do you see that?

17 A     I do.

18 Q     And do you know who are the representatives of the

19 holders of allowed second lien claims who will be

20 designating the board member under this provision?

21 A     No, not all of them.

22 Q     Okay.  Do you know any of the representatives?

23 A     I believe that Angelo Gordon was a minority

24 representative of the second lien claims.

25 Q     Okay.  Do you know how many representatives there

1   were?

2   A     No, but let me explain what I mean.  My understanding

3   is that a majority of the holders of the second lien claims

4   were not affiliated with Angelo Gordon.

5   Q     And do you have any understanding as to how

6   substantial Angelo Gordon's interest was in the second lien

7   claims?

8   A     Sitting here at this moment I don't.

9   Q     Okay.  And would you agree with me that under this

10  provision the representatives of the holders of the allowed

11  second lien claims have an attributable interest in

12  NextMedia?

13  A     Not all of them.  Actually as I thought about it, it

14  seemed to me that the holder of a minority interest in that

15  class where the determination was to be made by evidently a

16  vote of all holders would not be in a position, if a

17  majority of the claims were not affiliated with that holder,

18  to influence the outcome.  And I'd also just -- I just want

19  to observe because I think this is a theme that's common to

20  the questions that --

21         MR. FRIEDMAN:  Your Honor, may I interrupt the

22  witness and --

23         THE COURT:  You may.

24  BY MR. FRIEDMAN:

25  Q     Okay.  Thank you.  Do you know whether under the

1   NextMedia arrangements, Angelo Gordon was a member of the

2   group of representatives that designated the member of the

3   board of directors?

4   A    Well, I think I just testified that my understanding

5   is that they were one of the class of holders of allowed

6   second lien claims, a majority of which were held by other

7   parties not affiliated with Angelo Gordon.

8   Q    Okay.  Now when you testified at your deposition, your

9   testimony was very clear that members of a group with

10  designation rights each have an attributable interest,

11  correct?

12  A    Yes.

13  Q    Okay.  Now you gave testimony on redirect when Mr.

14  Flagg was questioning you concerning nomination rights.  Do

15  you recall that?

16  A    Yes.

17  Q    Is it customary in your experience for parties in

18  structuring their arrangements to take into account the

19  possibility that the FCC will view nomination rights as

20  attributable?

21  A    Not specifically, no.

22  Q    Have you had the experience where nomination rights

23  are granted to a party, but the agreement providing for such

24  rights takes into account the possibility that the FCC will

25  raise questions about whether those rights give rise to

1  attribution?

2  A    In my experience it is fairly typical to include some

3  sort of savings language in an agreement with respect to if

4  you will all FCC issues.  In other words rights are afforded

5  to minority investors or others as subject to and of course

6  at all times in conformance with or consistent with or in

7  compliance with FCC requirements.

8  Q    I'm asking specifically about nomination rights.

9  A    I'm trying to recall if I have ever done that.  I'm

10  sure it's possible that others have.

11  Q    Let me ask you to look at DCL-1441, which is the very

12  last exhibit in the cross examination binder.

13  A    So we're in your binder now?

14  Q    Yes, the binder I gave you earlier.

15  A    Okay.  I'm sorry.  What tab are we?

16  Q    The very last tab.  It's DCL-FCC Exhibit 1441, which

17  is the DCL Plan and I'd like you to turn to page 50.  We're

18  talking about Section 5.3.2, Directors and Officers of

19  Reorganized Tribune.  And then within that section, turn

20  over to page 51 and if from the top of 51 if you go down 1,

21  2, 3, 4, 5, 6, 7, 8, 9, 10, 11 lines, there's a provision

22  that says in the event designation rights are relinquished

23  to obtain FCC approval, any creditor proponent relinquishing

24  such rights shall be afforded rights to nominate one or more

25  members of the initial board of reorganized Tribune, et

1   cetera, et cetera.  And then there's a proviso, provided

2   that such creditor proponent shall be afforded such rights

3   only to the extent such rights can be held and exercised in

4   compliance with the Communications Act and FCC rules.  Do

5   you see that?

6   A     I do.

7   Q     Is that a typical provision in your experience?

8   A     Yes.

9   Q     Is that a provision that indicates a recognition that

10  the FCC may view nomination rights as attributable?

11  A     I'm not sure that I would characterize it that way.

12  Again, I would explain it as I did before as a typical

13  savings mechanism that's incorporated in these types of

14  agreements.

15           MR. FRIEDMAN:  All right.  Let me ask you to look

16  at your report at page 21.  So Your Honor, I just -- I have

17  just one or two more questions.  These relate to part of the

18  report and a document referred to in the report that the DCL

19  proponents have marked as confidential, meaning they don't

20  want it spoken about in the courtroom.  So I'm just not

21  quite sure how I can ask Mr. Mace -- Mr. Rosenstein the

22  question that I have to ask, unless if that objection is

23  going to be maintained.

24           MR. FLAGG:  This -- first of all, I think this

25  goes well beyond the scope of the redirect and if there's

1    confidential information he can refer the witness to the

2    page and ask him to read something and you know ask his

3    opinion about it, but without disclosing the specifics of

4    the confidential information, which is exactly --

5              MR. FRIEDMAN:  All right.  I'll try to do that

6    and --

7              MR. FLAGG:  I'll listen to the question and then

8    --

9    BY MR. FRIEDMAN:

10   Q    All right.  So why don't you -- maybe I can do this

11   very quickly.  Please take a look at the last item on page

12   21 that starts with the word meanwhile, which I hope is not

13   breaching confidentiality.  Do you see that?

14   A    Yes.  Are we -- this will be a silent reading?

15             MR. FRIEDMAN:  Yeah, silent reading.  And now let

16   me just ask Mr. Flagg, I'm going to ask a question about

17   that letter without identifying any of the particulars.  Do

18   you think that's all right?

19             MR. FLAGG:  Yeah, as long -- yes.

20   BY MR. FRIEDMAN:

21   Q    Okay.  So would you agree with me that the letter --

22   are you familiar with the letter that's referred to in the

23   letter agreement that's referred to there?

24   A    I have reviewed it.

25   Q    Okay.  And is that an example of an agreement whereby

1    parties recognize that the FCC may view nomination rights as

2    attributable?

3    A      I want to agree with you, Mr. Friedman, but I can't

4    agree with your formulation of the perceived risk in that

5    you know it's a common provision.  Any prudent practitioner

6    or I should say I as a prudent practitioner would want to

7    provide for you know the contingent possibility of a change

8    in law at some point within the life of my agreement.

9              MR. FRIEDMAN:  If it were not confidential I'd

10   read the letter right now, but the letter is in evidence, so

11   we'll have it.  Thank you.  No further questions.

12             THE COURT:  All right.  Thank you.  Thank you,

13   sir.  You may step down.

14             MR. ROSENSTEIN:  Thank you.

15             MR. BENDERNAGEL:  Your Honor, our second and last

16   rebuttal witness is Professor Black.  I presume that we'd

17   start right after lunch, if that makes sense.

18             THE COURT:  Yeah, I think that makes sense.  Any

19   notion of how long cross will be, Mr. Zensky?

20             MR. BENDERNAGEL:  Well, just so nobody is

21   surprised by this, I think we've agreed that the cross can

22   be done by a couple of different people.  They had asked us

23   for some accommodation because Black is talking about Dr.

24   Barone.

25             THE COURT:  Three experts.  I understand.

1              MR. BENDERNAGEL:  And with that somebody is going

2    to respond to that.  Hopefully not all three, but --

3              MR. ZENSKY:  Good afternoon, Your Honor.  For the

4    record David Zensky of Akin Gump Strauss Hauer & Feld for

5    Aurelius and the Noteholders.  Yeah.  Mr. Qureshi and I will

6    be sharing the duties of the cross examination.  I was going

7    to suggest -- I know it's ten after 12.  If we -- if they

8    wanted to at least get one or two of the issues done now it

9    would facilitate streamlining the cross.  Unfortunately I

10   think based on what we anticipate the witness may testify

11   about, the cross will extend beyond the length of the

12   direct, an hour and a half or perhaps more.  So we could use

13   the break productively to try to cut that back if we cover

14   some of the direct now.

15             THE COURT:  You're tempting me, Mr. Zensky.  Well

16   --

17             MR. ZENSKY:  I mean there's probably neat

18   division given that the witness is going to tackle three

19   separate issues, as to a breaking point.

20             MR. BENDERNAGEL:  Your Honor, the direct by your

21   mandate it's only going to be an hour long and we've got --

22   if we break now we'd have close to four hours this

23   afternoon.  It's hard to imagine that their cross could take

24   up that much time with Professor Black.  The concern I have

25   is we're going to break the direct in the middle and I just

1   don't think that's very efficient.

2           THE COURT:  We'll go an hour.

3           MR. BENDERNAGEL:  Well and we don't break until

4   1:15 and we can't -- we'll tender him after lunch?  Is that

5   what your concept would be so that we don't have him under

6   silence during the lunchtime period or I'm just trying to

7   understand what the rules are here?

8           THE COURT:  No.  I'd take him on direct for an

9   hour, conclude his direct, he'd be you know barred from

10  discussing his testimony with anyone and cross would ensue

11  after the break.

12          MR. BENDERNAGEL:  Well, if -- you know take us a

13  few minutes to set up, but if you want to go in that

14  direction I guess we can do that.  But you know in fairness

15  to the witness, he's been sitting here all morning.  It

16  might be better to get lunch first.

17          THE COURT:  Need that fortification, huh?

18          MR. BENDERNAGEL:  Well, especially with the

19  number of people that are cross examining him.

20          THE COURT:  It's only two.

21          MR. BENDERNAGEL:  Well, two very formidable --

22  (Laughter)

23          THE COURT:  We'll break now.

24          MR. BENDERNAGEL:  Had to say something, Your

25  Honor.

1          THE COURT:  We will break now and reconvene at

2     1:15.

3     (Recess from 12:12 p.m. to 1:19 p.m.)

4          THE CLERK:  Be seated.

5          MR. DUCAYET:  Good afternoon, Your Honor.  Jim

6     Ducayet from Sidley Austin on behalf of the debtors.

7          Your Honor, our next witness is Professor Bernard

8     Black.  May I approach with the witness binders?

9          THE COURT:  Just one moment.

10         MR. DUCAYET:  Yes.

11         THE COURT:  Would you stand to be sworn in,

12    please, sir?

13         THE CLERK:  Raise your right hand and place your

14    left hand on the Bible.

15               PROFESSOR BERNARD BLACK SWORN

16         THE CLERK:  Please be seated and adjust the

17    microphone.

18         MR. DUCAYET:  May I approach, Your Honor?

19         THE CLERK:  Please state your full name for the

20    record and spell your last name.

21         THE WITNESS:  Bernard Steven, with a V, Black as

22    in the color.

23         MR. DUCAYET:  Thank you.

24         THE COURT:  Thank you.

25         MR. DUCAYET:  May I proceed, Your Honor?

1        THE COURT:  You may.

2                    DIRECT EXAMINATION

3   BY MR. DUCAYET:

4   Q      Professor Black, good afternoon.

5   A      Good afternoon.

6   Q      Have you had an opportunity to review the reports and

7   the testimony of Dr. Beron, Mr. Tuliano and Professor Rock

8   in this case?

9   A      Yes, I have.

10  Q      And have you formed any views on the opinions that

11  they've expressed?

12  A      Yes, I have.

13  Q      Okay.  I'm going to ask you a few questions about that

14  this afternoon, but before I do that let me ask you a couple

15  of preliminary questions.  You testified when you were here

16  before about your qualifications and expertise, and I want

17  to just cover a couple of topics in that regard.

18         First of all, could you briefly review for us your

19  experience in the area of decision tree analysis?

20  A      Yes.  So I teach corporate finance at Northwestern Law

21  School and as part of that class I cover the use of decision

22  trees in making business decisions and also in litigation

23  risk analysis.

24  Q      And could you also just briefly summarize your

25  experience in the area of valuation and solvency?

1  A      So, again, I teach corporate finance.  I have a joint

2  position in the law school and the finance department at

3  Kellogg School of Management, and valuation is central to

4  finance.  So I'm comfortable with value -- I am comfortable

5  with valuation issues.

6  Q      And what about solvency, sir?

7  A      So I teach and study in the area of corporate

8  acquisitions so I'm familiar with leverage buyouts and they

9  raise a set of solvency issues.  I teach fraudulent

10 conveyance law in my corporations class.

11 Q      And then finally, Professor Black, could you just

12 summarize your experience in the area of corporate

13 governance?

14 A      Yes.  So corporate governance and what matters and --

15 and doesn't matter in corporate governance, both in the U.S.

16 and internationally has been one of my main areas of

17 scholarly interest for a significant period of time.

18         MR. DUCAYET:  Your Honor, at this point I would

19 like to tender Professor Black as an expert in the areas of

20 decision tree analysis, valuation and solvency, and

21 corporate governance.

22         THE COURT:  Didn't we do this already?

23         MR. DUCAYET:  Not in the area of corporate

24 governance, Your Honor.

25         THE COURT:  Okay.

1          MR. ZENSKY:  We object to that, Your Honor.

2          THE COURT:  All or some?

3          MR. ZENSKY:  Yeah.  To the extent that this

4    witness is being proffered as a decision tree expert or a

5    valuation expert we do object.  We don't object to the

6    extent he's been proffered as a corporate governance expert.

7          THE COURT:  Okay.  This is a renewal of the

8    previous objection?

9          MR. ZENSKY:  I don't believe so, Your Honor.  He

10   was previously only qualified as someone that they wanted to

11   comment on the reasonableness of the settlement.  That was

12   how they characterized his expertise the first time.  This

13   is three new areas of expertise that they proposing to have

14   this witness be qualified in.

15         THE COURT:  Okay.  When you say "new," are you

16   also suggesting that these areas are outside the scope of

17   his rebuttal report?

18         MR. ZENSKY:  I am not so suggesting.  We don't

19   object to his rebuttal report coming in, but we do object

20   and either through voir dire or if the Court wants to

21   reserve ruling on that until the end, believe that he is not

22   qualified to be qualified as an expert in two of the three

23   areas.

24         THE COURT:  Okay.  Is there any response?

25         MR. DUCAYET:  Your Honor, I'm happy to elicit

1  some additional testimony from the witness on his experience

2  in those areas.

3             THE COURT:  Go ahead.

4             MR. DUCAYET:  Okay.

5             THE COURT:  And then, Mr. Zensky, I'll give you a

6  chance to voir dire.

7             MR. ZENSKY:  Thank you.

8             MR. DUCAYET:  Okay.

9  BY MR. DUCAYET:

10  Q     Professor Black, going back to the area of decision

11  tree analysis, could you -- you briefly summarized your

12  experience in that area.  Could you provide us with a little

13  bit more detail on your experience in the area of decision

14  tree analysis, and specifically focusing on, perhaps, some

15  of your academic teaching in that area?

16  A     So I think that decision tree analysis can be a useful

17  and fruitful way to highlight judgments that have to be made

18  in reaching a business decision or a litigation decision,

19  and subject those individual judgments to close scrutiny.

20  And, you know, I've used it as far back as when I was at the

21  SEC as special counsel to one of the commissioners in, I

22  think, 1987 in assessing whether the SEC should pursue a

23  particular litigation strategy.

24             And so I think I understand decision tree

25  analysis.  It's not something that I am a profession in, in

1  that I don't do it for a living.  But I think that I'm

2  comfortable with decision tree analysis and, indeed, you see

3  in my own analysis leading to my assessment of

4  reasonableness important elements that are decision analysis

5  elements.  I didn't carry out a full decision tree analysis.

6  I didn't think that was feasible or appropriate in this

7  case.  But I did think a partial -- a did think a partial

8  analysis was worthwhile and carried one out.

9  Q     Are you familiar with the academic literature in the

10 area of decision tree analysis?

11 A     I would not want to call myself an expert in the

12 academic literature.  I think I'm generally familiar at the

13 level that allows me to teach with comfort.

14 Q     And could you just provide a little bit more

15 information about the teaching that you do, the coursework

16 that you teach in -- in regards to decision tree analysis?

17 A     Yeah.  So time permitting I've got two decision tree

18 examples in my corporate finance notes:  One of them is a

19 litigation risk analysis.  Do you appeal, do you settle, and

20 how do you approach that decision; and the second involves a

21 business decision, do you make a business investment and,

22 having made it, do you expand, do you continue, do you

23 abandon the investment partway.

24 Q     Okay.  And is it the case that decision tree analysis

25 also involves elements of probability analysis?

1    A       Sure.

2    Q       And what about elements of statistics?

3    A       Certainly, decision tree analysis involves elements of

4    probability and compound statistics and correlations and so

5    on and I'm entirely familiar and comfortable with those from

6    my research.  I'm an empirical legal scholar, so I use

7    statistics and econometrics all the time.

8    Q       Could you provide us a little bit more information on

9    the -- the way in which you use statistics and probability

10   analysis in your professional work?

11   A       So one of the things that I do is try to study

12   empirically quantitatively how law really matters.  So, for

13   example, what difference corporate governance provisions

14   really make, what difference independent directors make,

15   what difference audit committees make, what difference

16   levels of disclosure make in terms of firm value, both in

17   the United States and elsewhere, and to do that you have to

18   be comfortable with probability and statistics.

19              I also am the co-leader of a summer workshop that

20   I run at Northwestern University on research methods for

21   causal inference.

22   Q       Okay.  Now, Professor Black, let me ask you a few

23   questions about your expertise in the area of valuation.

24   A       Sure.

25   Q       And you testified that this is something that you

1  teach.  Can you provide us a little bit more information

2  about the types of valuation issues that you are involved

3  with in your teaching level?

4  A     Sure.  So, again, corporate finance is centrally

5  concerned with the valuation of investments and it has a set

6  of general valuation principles that apply to investments of

7  all kinds that also apply to valuing companies.  In our

8  corporate acquisitions book, the title of which is the law

9  and finance of corporate acquisitions, we actually start out

10 with seven chapters on finance because we think that it's

11 important background for corporate acquisitions and

12 understanding how companies are valued.

13          And so both as a teacher and as a scholar in

14 corporate finance and corporate acquisitions, I think I'm

15 entirely comfortable with understanding and evaluating

16 valuation of individual assets and of entire businesses.  I

17 would say that if you were to have asked me to have

18 conducted the job that Lazard did in valuing Tribune today,

19 that that would draw on probably a greater depth of

20 expertise than I would claim to have.

21 Q     Okay.  And -- and with respect to the textbook that

22 you mentioned, is that a widely used textbook?

23 A     I certainly hope so.  We've got to get it updated with

24 a third edition if it's going to continue to be widely used.

25 Q     Okay.  And have you published in scholarly journals in

1    the area of finance?

2    A     Yes.  So I frequently publish in both finance and law

3    journals.  I have an article published this year in the

4    *Journal of Financial Economics* -- I'm sorry, last year, and

5    I have another one forthcoming this year in the *Journal of*

6    *Financial Economics*, which is one of the recognized top

7    three finance journals in the world.

8    Q     Is that a peer review journal, Sir?

9    A     Yes, it is.

10   Q     Okay.  And then in the area of solvency, if you could

11   just provide us with a little bit more information about

12   your background in solvency, that area?

13   A     So solvency and fraudulent conveyance is relevant if

14   you're going to study leverage buyouts.

15   Q     Uh-huh

16   A     And so I teach in my corporate acquisitions class

17   about leverage buyouts.  And then in corporations where we

18   cover protection of creditors, one of the areas that I

19   specifically cover is the Uniform Fraudulent Conveyance Act,

20   which is very similar to Bankruptcy Code Section 548.

21   Q     Okay.

22            MR. DUCAYET:  Your Honor, at this point I would

23   renew my request that Mr. -- or Professor Black be qualified

24   as an expert in the area of decision tree analysis and

25   valuation and solvency.

```
 1              THE COURT:  Mr. Zensky.

 2              MR. ZENSKY:  Yeah.  Your Honor, with the Court's

 3   permission, as we discussed before the break, Mr. Qureshi

 4   and I had split the cross examination so it would

 5   necessitate splitting this portion as well.  I only have two

 6   questions.

 7                        CROSS EXAMINATION

 8   BY MR. ZENSKY:

 9   Q    Professor, good afternoon.

10        I believe you testified in response to Mr. Ducayet.

11   You don't -- yourself don't consider yourself a decision

12   tree -- a decision tree professional, do you?

13   A    I do not.

14   Q    Okay.  In fact, you've never been engaged to provide a

15   decision tree analysis to anyone?

16   A    As such, no, although, again, my expert report in this

17   case has important elements of decision tree analysis in it

18   because I thought they were appropriate for this case.

19   Q    Right.  But the answer to my question is, no.  You've

20   never been engaged to provide a decision tree any to anyone?

21   A    As such, that's correct.

22   Q    Right.  And prior to this case you had never been

23   engaged to opine on the expected value of a set of

24   litigation outcomes, had you?

25   A    That's correct.
```

1    Q    Okay.

2              MR. ZENSKY:  Your Honor, that's all I had on that

3    issue.  Do you want to have the argument on that particular

4    proffer or hear the other voir -- okay.

5              THE COURT:  The latter.

6              MR. QURESHI:  Thank you, Your Honor.

7              For the record Abid Qureshi, Akin, Gump, Strauss,

8    Hauer and Feld on behalf of Aurelius and the noteholders.

9    BY MR. QURESHI:

10   Q    Professor Black, good afternoon.

11        Sir, you don't have any post-graduate or post-graduate

12   degree in finance or in accounting, do you?

13   A    No.  My post-graduate degree is in physics so I can do

14   math.

15        (Laughter)

16   Q    Okay.  And you've never acted at any point in your

17   career as a financial advisor or consultant of any sort,

18   have you?

19   A    I have not.

20   Q    Okay.  And nor have you been employed by any company

21   that is in the financial advisory business, correct?

22   A    That is correct.

23   Q    Okay.  And your experience that you described with

24   corporate finance is essentially limited to your academic

25   experience, isn't that right?

1   A     So, no.  So I've been a director of two public

2   companies.  I'm a part owner and managing director of a

3   private company right now, so I also have familiarity with

4   finance and valuation from those experiences as well.

5   Q     Okay.  And you don't have any formal valuation

6   credentials, do you?  And let me be -- give you a couple of

7   specific examples.  You're not a certified valuation

8   analyst, are you?

9   A     I do not have formal valuation credentials and you

10  don't need to give me a list of credentials I don't have.

11  Q     Okay.  And -- and nor do you have any formal

12  credentials in -- in forensic accounting?

13  A     I do not.  I do not have any accounting credentials --

14  Q     Okay.

15  A     -- forensic or otherwise.

16  Q     Okay.  And how many times have you testified as an

17  expert over the course of your career?

18  A     In court probably six or seven, at deposition probably

19  two or three dozen.

20  Q     Okay.  And true, sir, that you've -- you've never

21  provided expert testimony before on the subject of

22  valuation?

23  A     So in court I have not.  I have at least one expert

24  report that I'm thinking of, though it was some years ago,

25  that was expressly about valuation, and there are really

1   important valuation issues behind my original assignment in

2   this case and I'm thinking about another case where, again,

3   it's not a valuation as such, but my assignment depends

4   heavily on my ability to understand valuation issues.

5   Q     Right.  So what you're testifying to is that you're

6   not really qualified to actually perform a valuation, but

7   given your academic experience, your teaching, you're

8   comfortable with the concepts.  Do I have that right?

9   A     I would -- I am comfortable with the valuation that I

10  did for this case, which was to start with a market based

11  value and then make adjustments.  I think I would be beyond

12  my zone of comfort if you said to me, here's a private

13  company.  Go find the comparables.  Go figure out the

14  expected cash flows for each or whatever businesses it's in,

15  the job that Lazard did in this case.  That would be beyond

16  my comfort zone.

17  Q     Okay.  And -- and the one example that you mentioned,

18  that's the only time in your career that you've been

19  retained to perform an enterprise value of a company, isn't

20  that right?

21  A     That's correct.

22  Q     And that was more than twenty years ago, wasn't it?

23  A     It's approaching that.  Yeah.

24  Q     Okay.  And in that case you were never qualified as a

25  valuation expert in court, were you?

1   A     Correct.

2   Q     Okay.  And you -- you testified on direct, sir, that

3   you don't believe that you have the expertise that, for

4   example, Lazard does in conducting valuations, isn't that

5   right?

6   A     Yes.

7   Q     And nor, sir, I gather would you profess to have the

8   same expertise that Mr. Tuliano does in conducting

9   valuations, do you?

10  A     It depends on what specific area of expertise you

11  would have in mind for Mr. Tuliano, I think.

12  Q     Well, let's start with performing an enterprise

13  valuation.  I mean, you've testified that you've done that

14  once in your career.  If you read Mr. Tuliano's testimony

15  you'll know that he's done that hundreds of times.  Would

16  you agree, sir, that you don't have the same expertise that

17  he does in actually performing a valuation?

18  A     I think I'm entirely comfortable in reading,

19  understanding and critically assessing a valuation, and

20  where I would go beyond my comfort zone is if I had to pick

21  for myself here's what I think the range of weighted average

22  cost of capital would be for this industry.  Here's what I

23  think the expected growth rates would be for this industry.

24  So I want to distinguish between would I be comfortable

25  preparing a valuation and would I be comfortable responding

1    to, assessing, and evaluating a valuation and for the latter

2    I'm comfortable.

3    Q     And for the former you're not?

4    A     The former, I think, would be beyond my comfort zone.

5    Q     And, indeed, that's why here in this case you have, in

6    fact, not performed an enterprise valuation of Tribune back

7    in 2007 or at any other point, isn't that right?

8    A     I think that was not part of my assignment.  It's also

9    the case that it would have been outside my comfort zone.

10   Q     Okay.  And -- and you're not offering any opinion in

11   this case, are you, as to whether Tribune was balance sheet

12   solvent or insolvent?

13   A     Well, I'm offering an estimate as to the likely range

14   of balance sheet capital for Tribune based on my market-

15   based analysis, and based on that and other factors,

16   including the contemporaneous valuations, I'm offering an

17   opinion as to the likelihood that Tribune was balance sheet

18   solvent at step one and step two, and as to the

19   probabilities ranging from a low settlement case to a high

20   settlement case that I think a Court -- the likelihood that

21   a Court might reach a judgment one way or the other on

22   solvency.

23   Q     Okay.  So -- so put differently, the views that you

24   have with respect to valuation are relevant to the

25   probability analysis that you perform and on which you are -

1    - you are purporting to provide -- to provide expert

2    opinions.  But -- and correct me if I'm wrong, I think you

3    testified back in March in front of this Court that you

4    don't ultimately form an opinion as to the bottom line of

5    whether Tribune was solvent or insolvent, isn't that right?

6    A     That's correct.  I assess probabilities in six

7    different settlement cases and I do not offer my own

8    opinion.

9    Q     Okay.

10             MR. QURESHI:  Thank you, Your Honor.  That's all

11   I have.

12             THE COURT:  All right.

13             Mr. Ducayet, I understand this witness is being

14   offered on rebuttal --

15             MR. DUCAYET:  Yes.

16             THE COURT:  -- as an expert in decision tree

17   analysis, valuation and solvency, and corporate governance.

18   There is no objection, as I understand it, offering

19   Professor Black as to corporate governance, but there is as

20   to decision tree analysis and to valuation and solvency.

21             MR. DUCAYET:  Uh-huh.

22             THE COURT:  Those two objections I sustain.

23             MR. DUCAYET:  Okay.

24             Your Honor, could I have thirty seconds to --

25             THE COURT:  You may.

1          MR. DUCAYET:  -- confer?  Thank you.

2          (Pause in proceedings.)

3          MR. DUCAYET:  Your Honor -- well, let me proceed.

4                    DIRECT EXAMINATION

5    BY MR. DUCAYET:

6    Q     Professor Black, have you prepared a rebuttal report

7    in this case?

8    A     Yes.

9    Q     Okay.  And what does your rebuttal report address?

10   A     It addresses the initial opinions of Dr. Beron and Mr.

11   Tuliano.

12   Q     Does it address anything else?

13   A     It addresses the reasonableness of the DCL plan

14   relative to the principal alternatives which are the

15   remaining in bankruptcy or the noteholder plan.

16   Q     Does your rebuttal report address any issues relating

17   to corporate governance?

18   A     Yes, in the context of assessing the impact of the

19   noteholder plan as compared to the DCL plan.

20   Q     Okay.

21          MR. DUCAYET:  Your Honor, at this point I would

22   like to move into evidence Professor Black's rebuttal

23   report, which is the second tab in the binder that was

24   handed up and it's marked as DCL Exhibit 1113.

25          MR. ZENSKY:  No objection consistent with the

1   Court's ruling on the appropriate areas of expertise.

2              THE COURT:  All right.  Admitted without

3   limitation.

4              (DCL Exhibit 1113 admitted.)

5              MR. DUCAYET:  Okay.

6   BY MR. DUCAYET:

7   Q     Professor Black, if I could ask you to focus in

8   particular on your opinions relating to the noteholder plan

9   and the issues that Professor Rock addressed in his

10  testimony to the Court.  I think you indicated in your

11  rebuttal report that you had some concerns with the

12  noteholder plan.  Is that right?

13  A     Yes, I do.

14  Q     And have you prepared a slide that shows those

15  concerns?

16  A     Yes.

17  Q     Okay.

18             MR. DUCAYET:  Let me ask if we could put -- this

19  is going to be slide -- I believe it's Number 6.

20             (Pause in proceedings.)

21  BY MR. DUCAYET:

22  Q     And, Professor Black, is that the slide that we've

23  been talking about?

24  A     Yes.

25  Q     Okay.  Now the slide indicates two major concerns.

1  The first reference is a potential loss of enterprise value.

2  Could you explain what you mean by that?

3  A    Yes.  So I was concerned that some of the provisions

4  of the noteholder plan might impact Tribune's business

5  flexibility for a period of years, might affect their

6  ability to recruit senior executives and directors, and

7  there was a potential for conflict between the distribution

8  trustee, the litigation trustee and the Tribune board.

9          MR. DUCAYET:  Could we turn to the next slide,

10  please?

11  BY MR. DUCAYET:

12  Q    Okay.  Could you explain what your concerns are about

13  business flexibility?

14  A    Yes.  So with regard to the noteholder plan as it was

15  proposed until roughly ten days ago -- and I'll talk later

16  about the impact of recent amendments -- it called for the

17  distribution trust to hold a warrant which was exercisable

18  for a clear majority of the shares of reorganized Tribune,

19  and the implication of that was who would end up owning

20  Tribune was unclear.  One possibility was that the

21  distribution trustee would seek to sell the warrant to

22  someone else would could exercise it and, thereby, become a

23  majority owner of Tribune.

24       And so that would impair business flexibility because

25  counterparties might be cautious about dealing with Tribune

1   when they didn't know who would ultimately end up owning

2   Tribune in reasonably -- in the reasonably near future.

3   Q      Okay.  And if something like that were to happen,

4   wouldn't it be possible to go to court and get some sort of

5   ruling on the issue?

6   A      Well, I'm not sure what ruling you would get.  It's

7   clear that the distribution trust had a warrant which was

8   exercisable into sixty or sixty-five percent of the shares.

9   Q      Uh-huh.

10  A      It's clear that the distribution trust had the power

11  to sell the warrant.  It's likely that if someone were to

12  buy the warrant they would want to make sure they got FCC

13  approval that they could convert the warrant into shares, so

14  a transaction might well be contingent on FCC approval.  But

15  I'm not sure what you would go to court for here.  The fact

16  was that a majority stake in Tribune was indirectly held by

17  the distribution trust.

18  Q      Would -- do you have any opinions as to whether or not

19  the trustee might have the ability to block or delay

20  transactions?

21  A      I thought there were potential ways through which the

22  trustee could seek to block or delay transactions that were

23  a source of concern.  Yes.

24  Q      Could you elaborate on that, please?

25  A      Yes.  So there are basically two provisions:  One is

1  the distribution trust holds a share of Class C common stock

2  which has the right to elect two directors and the right to

3  vote on charter amendments, possibly the right to vote on

4  all charter amendments, possibly the right to vote only on

5  some charter amendments.  I believe the charter is not clear

6  on that, but, certainly, it's within -- well within the

7  realm of possibility that the distribution trustee could

8  assert the right to vote on all charter amendments and some

9  of the transactions that Tribune might want to enter into

10  might require a charter amendment.  So that was the first

11  channel.

12  Q    Are there others?

13  A    Yeah.  The second channel is that there is a fairly

14  broad provision in the charter requiring the Tribune board

15  and officers to cooperate with the distribution trust,

16  cooperate with the litigation trust and cooperate with the

17  creditor trust combined with -- let me call it a club

18  hanging over the directors and officers, which as the

19  charter also says, if you don't cooperate, you aren't

20  protected by a typical Delaware Section 102(b)(7) provision

21  that excludes money damages against outside directors.  You

22  aren't entitled to indemnification by the company.  Probably

23  the list isn't entirely clear -- you aren't entitled to have

24  your legal expenses advanced by the company, and the company

25  is not allowed to buy you directors and officers liability

1  insurance to cover these expenses that the company is not

2  itself going to cover.

3  Q     And how would that impact business flexibility?

4  A     So it's not clear to me the extent to which the

5  distribution trustee could claim that a transaction, which

6  it thought was unwise was a violation of the cooperation

7  clause, but it's not a laughable claim.  The trustee could

8  bring it and say, by the way, I'm waiving this big club and

9  you guys better agree to back off on this transaction.  And

10  so I thought that was a source of concern as well.

11  Q     Okay.  And let me ask you the same question as before.

12  If that were to come to pass, isn't it possible to go to

13  court and get some sort of ruling on the propriety of the

14  trustee's actions in this regard?

15  A     So, yes.  The directors could hire counsel, likely at

16  their own expense, and go to court and argue as to whether

17  the cooperation clause was properly invoked or not.  That

18  would, at best, cause some concern on the part of a

19  counterparty.  They might just say, look.  I don't want to

20  deal with the risk of an adverse decision in court.  I don't

21  want to deal with a concern that I've got this distribution

22  trustee who is against the transaction who has an indirect

23  claim on a majority of the shares of Tribune.  Let me not do

24  this deal.  Let me find someone else to deal with.  And then

25  there's some potential delay from having to go to court.

1   Q    So would the ability to go to court to get some

2   clarification in this regard mitigate your concerns about

3   the loss of business flexibility under the noteholder plan?

4   A    So, certainly, it's better that you have some

5   opportunity to go to court than none, but it certainly

6   wouldn't eliminate my concerns about loss of interest on the

7   part of counterparties in a transaction and potential for

8   delay.

9   Q    Okay.  Let's turn to the next point here, which is

10  ability to recruit management and directors.  Do you see

11  that?

12  A    Yes.

13  Q    And what are your concerns in that regard?

14  A    So if a majority of Tribune's shares are indirectly

15  held by the distribution trustee, potentially it could be

16  sold to somebody else.  Maybe some potential executives

17  would say, gee, I have other employment opportunities.  Why

18  do I want to go to work for a company that's going to have a

19  new owner next year or the year after that who may want to

20  have their own direction and choose their own executives.

21      It's also going to be difficult with this kind of

22  structure and with the potential for the distribution

23  trustee to have its own opinion on what's wise from a

24  business perspective to take the kinds of actions that I

25  think Tribune is likely to need to take because it's in a

1  difficult business environment.  That's no secret to

2  anybody.  In some sense, the executives would not only be

3  serving the usual masters of the board and, indirectly, the

4  shareholders.  They would have this other potential master

5  of the distribution trustee sitting off to the side and

6  that's a complication that's an impediment.

7  Q    Okay.  And how would that result in lower enterprise

8  value under the noteholder plan?

9  A    Potentially, if you can't do the transactions you

10  otherwise think are value maximizing, you -- you end up with

11  a company that's worth less.

12  Q    You reference in your slide here the duty to

13  cooperate.  Is that the cooperation provision we were just

14  discussing?

15  A    Yes, it is.

16  Q    Okay.  And --

17  A    And the concern here is probably less the duty to

18  cooperate by itself and much more the club that's been

19  reserved to beat the officers and directors with in case, in

20  the judgment of the litigation trustee or the distribution

21  trustee or the creditor trust -- trustee, there has not been

22  suitable cooperation.

23  Q    And are you familiar with Professor Rock's opinions

24  regarding the scope of the cooperation provision?

25  A    Yes.

1  Q     And what are those?

2  A     So his view is duty to cooperate is ministerial.  It's

3  narrow.  If there was any objection, it would probably be in

4  the form of seeking an injunction and, therefore, the

5  directors and officers shouldn't worry.  They aren't going

6  to be sued anyway.

7  Q     Do you agree with that opinion?

8  A     I do not.

9  Q     Why not?

10 A     So the way I want to look at this is to imagine I'm a

11 potential director of Tribune and I look at this charter and

12 say, what is this.  I don't like this, and someone on the

13 other side says, well, don't worry.  This is really

14 technical and narrow and you'll never get sued, and I'm

15 going to say, then, why are you holding this club over my

16 head.  Take the club away and then tell me it's narrow and

17 technical and I'm not really going to get sued.  I don't

18 think you can have it both ways.

19 Q     Okay.  The final point here that you've identified is

20 possible corporate governance conflicts.  Can you explain

21 what you mean by that?

22 A     Yes.  So this is related to the potential power of the

23 distribution trustee most likely to have a different view as

24 to what business directions Tribune should go in and,

25 therefore, to seek to impede or block significant

1  transactions that Tribune might want to enter into either

2  using power over a charter amendment or using the duty to

3  cooperate.

4  Q      Why -- why would a distribution trustee have a

5  different view than say management about the proposed course

6  of action?

7  A      So I can imagine three possible reasons:  One is

8  different people have different opinions.  Management thinks

9  this is a good idea.  The board thinks it's a good idea.

10 The distribution trustee thinks it's a bad idea.  Let me try

11 to stop it.

12      A second might be the distribution trustee might say,

13 I don't know if this is a good or bad idea, but it's awfully

14 risky.  I'm a trustee.  I'm supposed to preserve trust

15 assets.  I don't think Tribune should be taking this level

16 of risk with my trust assets.

17      And then the third is I can imagine situations in

18 which the distribution trustee says, gee, I really want to

19 get all this litigation wrapped up.  I think I can use my

20 approval of a transaction as a lever to try to effect a

21 settlement on terms that the defendants in the litigation --

22 the banks, let's say, who are -- will be major shareholders

23 of Tribune might not otherwise agree to.

24      So that's the strategic behavior potential.

25 Q      Okay.

1          THE COURT:  Imagine the dispute over settlement.

2          (Laughter)

3          MR. DUCAYET:  Imagine.

4          THE COURT:  Could that ever happen?

5    BY MR. DUCAYET:

6    Q    Professor Black, let's turn to the next slide if we

7    could.  The second major point that you identify -- had

8    identified as a concern with the noteholder plan is lower

9    value to creditors.  Can you explain what you mean by that?

10   A    Sure.  So this is about put aside the effect of the

11   noteholder plan on the value of Tribune.  If you're going to

12   put something like four or four-and-a-half-billion dollars

13   and a majority of Tribune's stock into a distribution trust,

14   you then have to ask the question, what is the value of the

15   claims on that trust to the creditors as a whole.  And it

16   was my view that the aggregate value of the claims would be

17   substantially discounted relative to the value of the

18   distribution trusts' interest.

19   Q    Okay.  And in -- and in one respect would they be

20   discounted?

21   A    So I think there are two main sources of discount:

22   The first I want to call a restricted stock discount.  So we

23   know from a variety of sources that if you hold restricted

24   stock, a liquid stock in an otherwise public company that

25   the value of that restricted stock is substantially less

1   than the value of otherwise identical liquid traded shares.

2   And that suggests to me that investors value liquidity, the

3   ability to exit, the ability to sell.  They -- they attach

4   substantial value to that.

5       Well, the interests in the distribution trust are

6   interests in a trust which own shares, so that looks pretty

7   similar to me to a restricted stock discount.  Indeed, even

8   if the distribution trust were to sell the shares

9   hypothetically and in part it owns -- will hold cash and

10  notes, you still own a liquid interest in a trust.  And,

11  again, I would think on the -- on analogist logic the value

12  of those illiquid interests would be discounted in the views

13  of the creditors if you asked the question, what could they

14  actually receive if they wanted to sell those claims

15  relative to the value of the underlying assets of the trust.

16  Q    You also refer in the slide to an investing in

17  litigation discount.  What does that refer to?

18  A    So that refers to the litigation trust will, let's

19  say, hold four -- the distribution trust will let's say hold

20  $4 billion in assets.  But as an individual creditor I don't

21  know what my share of that is.  That depends on predictions

22  about the outcome of future litigation.  Nobody would be

23  likely to pay full expected value for a claim that's subject

24  to the vagaries of litigation.  There would be some discount

25  there as well.  If you -- your expected value in litigation

1    was $100, you wouldn't pay $100 for a litigation claim.  You

2    would pay something short of that.

3         So that was a second source of discount that I thought

4    was important in assessing the potential value loss of the

5    noteholder plan relative to a clean exit from bankruptcy.

6    Q    Now do you understand that the noteholders have

7    recently proposed some amendments to their plan?

8    A    Yes.

9    Q    And can you just briefly describe for us the nature of

10   those amendments?

11   A    So the main amendments are an effort in various ways

12   to take down the percentage of shares that would be held in

13   the distribution trust partly through distributing mostly

14   shares instead of a strip of shares, cash and a new Tribune

15   note, partly through trying to piggyback on the DCL

16   settlement of -- of some of the claims involved in this

17   case.  And depending on the success of those efforts it

18   might be possible to take the percentage of shares owned by

19   the distribution trust down from sixty to sixty-five percent

20   down maybe to forty-five to fifty percent, potentially as

21   low as -- as twenty percent depending on the outcome of

22   things that I'm not -- you know, it will depend on

23   bankruptcy issues that I'm not equipped to -- to evaluate.

24        And in my view if those amendments succeed, those are

25   a good thing because if the distribution trust doesn't have

1    this indirect control, if you can get down to twenty percent

2    at the low end, then I'm much less worried about the

3    distribution trust can't sell control because it doesn't

4    have control to sell.  And to the extent that the

5    distribution trust owns less shares, then my concern with

6    the restricted stock discount would go down as well.  It

7    wouldn't go away.  You would still hold in a liquid claim

8    against the distribution trust, but at least you would hold

9    in a liquid claim of something with a known value as opposed

10   to something with an uncertain value.

11          So those would be good moves if they are achievable

12   for the noteholder plan and they would not eliminate, but

13   they would ameliorate some of my concerns with the

14   noteholder plan.

15   Q    Do the proposed amendments address all of your

16   concerns with the plan?

17   A    No, they don't.

18   Q    And what do they not address?

19   A    So there's an issue about does the distribution trust

20   have the right to approve effectively any charter amendment

21   and that was not addressed in the amendments, and the club

22   of Note 102(b)(7), no indemnification, no insurance was left

23   unchanged in the amendments to the noteholder plan.

24   Q    Are those issues that in your view are fixable or --

25   or changeable to satisfy your concerns?

1    A      Yes.  You just need to change the charter.

2    Q      In -- in what way would you change the charter?

3    A      So I think it would be easy to clarify in the charter

4    what issues the distribution trust as holder of the Class C

5    common stock can vote on and not vote on, and I don't see

6    any good reason why the directors and officers shouldn't

7    have the same generic protection against lawsuits with

8    regard to the cooperation clause that they have with regard

9    to all of their other activities.  They would still be

10   obliged to cooperate.  Perhaps one could tweak the

11   cooperation language to clarify as well, but the key would

12   be to take away the club of no indemnification, no

13   insurance, no 102(b)(7).  That's an easy fix.

14   Q      And just to follow up on that last point, Professor

15   Black, have you served on a board of a company before?

16   A      I have.

17   Q      Okay.  And if you were asked to serve as a director of

18   the reorganized Tribune under the noteholder plan, would you

19   be willing to do so?

20   A      I would not unless they took the club away.

21          MR. DUCAYET:  Your Honor, could I just have a

22   moment?

23          THE COURT:  Yes.

24          (Pause in proceedings.)

25          MR. DUCAYET:  Could we just take five minutes,

1  Your Honor?

2          THE COURT:  All right.  Five-minute recess.

3  Professor Black, I ask that you not discuss your testimony

4  with anyone during the break.

5          MR. DUCAYET:  Thank you, Your Honor.

6          (Recess.)

7          THE CLERK:  All rise.

8          Be seated, please.

9          MR. DUCAYET:  May I proceed, Your Honor?

10          Thank you.

11  BY MR. DUCAYET:

12  Q    Now, Professor Black, you previously expressed some

13  opinions about the reasonableness of the DCL plan and the

14  settlement that's embodied in that, right?

15  A    Yes.

16  Q    And you testified earlier that you've had an

17  opportunity to review Dr. Beron's report and to take a look

18  at his testimony during trial in this case, right?

19  A    Yes.

20  Q    Did anything that Dr. Beron say, either in his report

21  or in his trial testimony, cause you to change your opinion

22  about the reasonableness of the settlement?

23  A    No.

24  Q    Why not?

25  A    I think that what Dr. Beron does is -- in a lot of

1  ways just doesn't any sense and produces some very strange

2  results.  So I looked at it.  I read it.  I analyzed it.  I

3  think I understand from -- in large measure what he did, but

4  it didn't change my own view as to what a reasonable

5  settlement range would be.

6  Q    Were there particular problems that you saw with what

7  Dr. Beron was saying?

8  A    Yes.

9  Q    Okay.  And do you have a slide that sets out the

10 problems that you identified in Dr. Beron's opinions?

11 A    Yes.

12 Q    Okay.

13       MR. DUCAYET:  Could we put up that first slide,

14 please?

15 BY MR. DUCAYET:

16 Q    So --

17       MR. ZENSKY:  Your Honor, excuse me.  Could we be

18 heard for a moment?

19       MR. DUCAYET:  Sure.

20       MR. ZENSKY:  Could we just be clear on what

21 particular area of expertise Mr. Ducayet is eliciting this

22 testimony given the Court's rulings from earlier this

23 afternoon?

24       MR. DUCAYET:  Your Honor, he was qualified to

25 testify about the reasonableness of the settlement.  I'm

1    asking him whether or not anything that Dr. Beron said,

2    either in his report or in his testimony, changes that

3    opinion.  And I think I'm entitled to ask him, if the answer

4    is -- as he said is no, why that's the case.

5             MR. ZENSKY:  It sounds very much to me like it's

6    bordering into the area that we just talked about as being

7    outside the area of the witness's expertise.

8             THE COURT:  Not yet.  Overruled.

9             MR. ZENSKY:  Thank you.  Okay.

10            THE COURT:  If that was an objection.

11            (Laughter).

12   BY MR. DUCAYET:

13   Q    Okay.  Professor Black, looking at the first bullet

14   point here, you've identified failure to use judgment and

15   common sense.  Can you explain how that issue did or did not

16   impact your view as to the reasonableness of the DCL plan?

17   A    Sure.  So the examiner has, as you know, seven main

18   categories ranging from highly likely through equipoise down

19   to highly unlikely in which he assesses various possible

20   outcomes involving legal claims, involving solvency, and

21   it's clear from the examiner's report that those are ranges

22   and not individual points.

23        For example, sometimes the examiner says a particular

24   outcome is somewhat unlikely.  Sometimes he says it's

25   somewhat unlikely, but close.  Sometimes he says it's

1  somewhat -- somewhat unlikely, but a very close call.  Those

2  are different assessment and I think if you were to attempt

3  to estimate what probability the examiner would put on them,

4  which is what Dr. Beron says he's doing, one would assign

5  different probabilities to them.

6       And then there are other examples along the same

7  lines.  A judgment that a particular legal outcome is

8  reasonably unlikely is, to my mind, not the same as a

9  judgment that the outcome is reasonably unlikely and there

10 is "no credible evidence" in support of the outcome.  Again,

11 maybe both of those are within some range of reasonably

12 likely or reasonably unlikely outcomes, but they are not the

13 same probability and I believe they should not be modeled as

14 being the same probability.

15 Q    Can you provide a specific example, if you could?

16 A     Sure.  So let me offer a couple of other examples.

17 One is at step one the examiner says the likelihood of

18 Tribune actual intent to hinder delay or defraud creditors

19 is reasonably unlikely, but he also says there's no credible

20 evidence of Tribune's actual intent to hinder delay or

21 defraud creditors.

22      And Dr. Beron says reasonably unlikely means thirty

23 percent and it doesn't matter what else the examiner said

24 about this particular situation.  And I think it's

25 unrealistic to think that if there's no credible evidence on

1  a matter on which people have devoted substantial energy,

2  that the likelihood of a finding of actual intent is really

3  thirty percent.  It's probably significantly below that.

4  Q     And the next bullet point you've got here is relating

5  to related or nested probabilities as independent.

6  A     Yes.

7  Q     And did anything that Dr. Beron did in his analysis

8  with respect to how he treated probabilities and whether the

9  probabilities were related or not, did that cause you to

10  change any of your opinions with respect to the DCL plan?

11  A     No.  It just caused me to think that Dr. Beron's

12  approach was very strange, indeed.

13  Q     Can you elaborate on that, please?

14  A     Yes.  So there are a lot of issues in this case that

15  are simply related.  For example, if Tribune is solvent at

16  either step one or step two, the subs have to be solvent.

17  There's just no other alternative.  If Tribune is solvent at

18  either step one or step two, it becomes highly unlikely that

19  one would find actual intent because the evidence for actual

20  intent, as the examiner describes it -- and I'm referring

21  here to the examiner because Dr. Beron is trying to model

22  the examiner -- depends on Tribune, in effect, Tribune's

23  officers saying, we're insolvent or we're probably

24  insolvent, but let's go ahead anyway.  If they're not

25  insolvent, then the evidence for actual intent becomes very

1  weak.

2       So these are not strictly nested probabilities in that

3  one depends on the other, but they're closely related

4  probability.  If you don't have actual insolvency, I think

5  it's highly unlikely that one would find actual intent.

6       And there are many other probabilities that are

7  related.  For example, the same view of Tribune's prospects

8  that would lead to a finding of balance sheet insolvency

9  would be more likely to lead to a finding of cash flow

10 insolvency or vice versa.  You might have a positive,

11 relatively positively or negative view as to what Tribune's

12 prospects were at a given time or what its valuation was and

13 that would affect both decisions in the same direction.

14 They would be correlated decisions.  They wouldn't be

15 nested.  They wouldn't be independent.  They would be

16 somewhere in between.  And Dr. Beron just ignores all that

17 and treats many decisions as independent even when they are

18 clearly not.

19 Q    The third bullet point there refers to statutory

20 defenses.  Do you see that?

21 A    Yes.

22 Q    What does that mean?

23 A    So the banks have a number of statutory defenses

24 against avoidance in this case.  Some operate at the Tribune

25 level.  Some operate at the subsidiary level, and Dr. Beron

1   did not consider all of those and the ones he did consider,

2   in some cases, he did not consider correctly in my view.

3   Q      Can you provide us with an example?

4   A      Yes.  So an example of a situation where Dr. Beron

5   didn't consider a defense at all is one of the banks'

6   defenses at the subsidiary level is if other creditors of

7   the subsidiaries are paid in full, nobody has standing to

8   complain that the banks get paid next.  So this is an

9   argument.  In effect, it doesn't matter whether the

10  subsidiaries are solvent or not.  If they can pay off all

11  other claimants, the sub-trade creditors who are relatively

12  small, the interest rate swap which is relatively small,

13  Tribune's claims against some of the subs, then you come

14  back to the banks because they are creditors and there's

15  nobody there to complain that they shouldn't be able to

16  collect.

17        And the examiner doesn't like that argument very much.

18  He calls it highly unlikely, but in Dr. Beron's analysis

19  that means Dr. Beron is going to give that -- should give

20  that a fifteen-percent probability which means whatever

21  other probability there is have avoidance at the subsidiary

22  level should go down by fifteen percent.  That defense is

23  not in Dr. Beron's analysis at all.  So that's one clear

24  example.

25  Q      Okay.  Let's see if we can move through the next two

1    points.  You say that Dr. Beron ignored the value of

2    certainty and the time value of money.  What does that refer

3    to?

4    A    So one clear positive of the DCL plan for the

5    noteholders as the Tribune general unsecured creditors is

6    they get roughly a one-third recovery today in cash for sure

7    and a good chance that the litigation trust will get them up

8    to about a fifty percent recovery.  That's better than

9    starting out today with no certainty except your minimum

10   waterfall recovery of five percent potentially some years

11   down the road after full litigation.  So there's both a

12   certainty component, a bird in the hand is worth two in the

13   bush, and there's a time value of money component that

14   you're getting the same value, but you're getting it sooner.

15   And Dr. Beron doesn't consider those two aspects in

16   assessing whether the DCL plan is reasonable compared to the

17   alternative of full litigation.

18   Q    Okay.  And then, finally, the last point is failure --

19   failed to consider litigation trust recoveries.  What is

20   that referring to?

21   A    So Dr. Beron compares the initial recoveries under the

22   DCL plan, the $432 million to noteholders to the eventual

23   outcome of lawsuits against creditors and investment

24   advisors and so on, participants from full litigation and

25   that doesn't take into account that the DCL plan also

1  provides for a litigation trust that is likely to achieve

2  substantial recoveries.  And then under the DCL plan those

3  recoveries get sent disproportionally to -- to the notes and

4  the Tribune general unsecured creditors.  And I think that's

5  -- the litigation trust and the disproportionate sharing of

6  recoveries in an important feature of the DCL plan that

7  should not be ignored in assessing whether it's a -- a good

8  alternative.

9  Q    Let me ask you -- switch topics here -- to focus on

10  Mr. Tuliano, if you could.  Now you had an opportunity

11  review Mr. Tuliano's report and his testimony at trial?

12  A    Yes, I did.

13  Q    And did anything that Mr. Tuliano say cause you to

14  change your opinion about the reasonableness of the DCL

15  settlement?

16          MR. QURESHI:  Your Honor, if I may object.

17          Can I be heard?

18          THE COURT:  Uh-huh.

19          MR. QURESHI:  Your Honor, given the Court's

20  ruling with respect to Professor Black's qualifications, I

21  just don't see how, given Professor Black's testimony that

22  he is not qualified to perform a valuation, but rather that

23  he is comfortable with it, that that renders him qualified

24  to assess and to offer any opinions at all about the

25  valuation that Professor -- that Mr. Tuliano conducted.  In

1   -- in short, Your Honor, if you don't know how to do a

2   valuation, if you're not qualified as an expert to perform a

3   valuation, that does not, in my view, provide the witness

4   with the sufficient expertise to comment on whether Mr.

5   Tuliano did it -- Tuliano did it correctly or not.

6            THE COURT:  Well, I guess it's always a little

7   easier to be a critic, huh?

8            (Laughter)

9            THE COURT:  Any response?

10           MR. DUCAYET:  Your Honor, all we're doing is

11  asking Professor Black how, if at all, Mr. Tuliano's

12  opinions affected his opinions.

13           THE COURT:  Objection sustained.

14           MR. DUCAYET:  Okay.  Your Honor, in that event I

15  have no further questions.

16           THE COURT:  Cross examination.

17           MR. QURESHI:  Thank you, Your Honor.  And, Your

18  Honor, as discussed earlier I will be handling the first

19  piece on corporate governance and then turn it over to Mr.

20  Zensky.

21           THE COURT:  All right.

22           MR. QURESHI:  And, Your Honor, if I may approach

23  with binders?

24           THE COURT:  You may.

25           MR. QURESHI:  Thank you.

1               (Pause in proceedings.)

2               MR. QURESHI:  May I proceed, Your Honor?

3               THE COURT:  You may.

4               MR. QURESHI:  Thank you.

5                         RECROSS EXAMINATION

6    BY MR. QURESHI:

7    Q     Now, Professor, you've articulated three principle

8    corporate governance concerns as I understand it:  The

9    distribution trust holding an indirect control position; the

10   alleged power of the distribution trust to veto a charter

11   amendment; and the cooperation provisions.  In arriving at

12   those conclusions, you did so before the noteholders amended

13   their plan, correct?

14   A     That's correct.

15   Q     And at that time am I correct that it was your

16   understanding that approximately sixty-five -- up to a

17   maximum of sixty-five percent of the equity of reorganized

18   Tribune would be in the trust?

19   A     My recollection is sixty to sixty-five percent.  Yes.

20   Q     Okay.  And as you testified you've had a chance to

21   consider the amendments that the noteholders have made their

22   plan, correct?

23   A     Yes.

24   Q     And -- and your continued understanding in the face of

25   those amendments, your assumption is that the warrant that

1   is held by the distribution trust is still potentially

2   convertible into more than fifty percent of the equity,

3   isn't that right?

4   A    Depending on the outcome of the second amended

5   noteholder plan, which includes some contingencies in it.

6   It might well be that you're still at sixty-five percent.

7   It might well be at your fifty percent.  It might be that

8   you're at thirty percent.  It might even be that you're at

9   twenty percent.  One doesn't know at this point.

10  Q    Okay.  And are you aware that the -- that the

11  proponents of the noteholder plan take the view that, as

12  amended, that plan, based on the claims on which the DCL

13  plan is premised and based on the enterprise value of 6.75

14  billion on which the DCL plan is premised, that the warrant

15  will be convertible into a maximum of only 29.5 percent of

16  the equity?  Are you aware of that?

17  A    I'm aware that there's been a effort on the part of

18  the noteholders to bring down the percentage and I don't

19  have a view yet as to whether that effort will succeed.  So

20  to the extent the effort fails completely and you're still

21  at sixty to sixty-five percent, then my concerns with

22  indirect control apply full force.  And to the extent that

23  you're able to bring that percentage down, then at some

24  point those concerns are going to diminish.

25  Q    And are you also aware, sir, that if the banks were to

1  settle with the bridge lenders on the same terms as the

2  bridge settlement that is embodied in the DCL plan, that the

3  warrant under the noteholder plan would be convertible into

4  a maximum of sixteen percent of the equity and potentially

5  as low as five percent of the equity of reorganized Tribune?

6  A    I haven't seen percentages that low in your

7  description of the second amended plan.  But, certainly, to

8  the extent that the noteholders were able to settle with the

9  bridge lenders, that might create the potential to reduce

10 the amount of value that was held back in the distribution

11 trust.

12 Q    And with respect to the concerns that you've

13 articulated, Professor, regarding the controlling stake that

14 the distribution trust might hold, your opinion, I gather,

15 is that 29.5 percent, if you assume with me that that is the

16 maximum amount of equity into which the warrant could be

17 converted, that is not a controlling stake, correct?

18 A    My view is that a stake on the order of thirty percent

19 is approaching a controlling stake and it is not clearly a

20 controlling stake, but it's certainly a very influential

21 stake.

22 Q    Right.  So it gives influence, but not control?

23 A    Let me say not clearly control and approaching control

24 because you're right at the borderline where some

25 jurisdictions will take the view that thirty percent is

1  effective control.

2  Q      And if the distribution trust held a warrant

3  convertible into only fifteen percent of the equity, the

4  corporate governance concerns related to the size of the

5  interest held by the distribution trust would essentially go

6  away, right?

7  A      I agree with that.  If you can get down to fifteen

8  percent, then my concerns with control or approaching

9  control go away.

10 Q      Okay.  Let's talk for a moment about the opinion you

11 offered in your rebuttal report that -- and, again, this was

12 in the context of a sixty-five percent stake being in the

13 trust.  But -- but that a potential joint venture partner of

14 Tribune may have some unwillingness to enter into the joint

15 venture or try to extract more onerous terms.  That was your

16 opinion, correct, when there was sixty-five percent in the

17 trust?

18 A      When there was a majority position in the trust.

19 Q      And I gather that that concern, if, again, you assume

20 with me that the noteholders are right and that only twenty

21 -- a maximum of 29.5 percent of equity could be controlled

22 by the distribution trust, that concern becomes attenuated,

23 does it not?

24 A      I think at a roughly thirty percent ownership the

25 concern is attenuated, but still there, and if you can get

1  down to fifteen percent, then I think the concern would be

2  substantially gone.

3  Q    All right.  And, likewise, the concern about the

4  trust's ability to -- to sell a controlling interest would

5  also go away at 29.5 percent given your view that 29.5

6  percent is less than a controlling stake and, therefore,

7  there would be no control to sell?

8  A    I think I would say it's attenuated at 29.5 percent

9  and if you can get down to fifteen percent then the concern

10 is gone.

11 Q    Okay.  And, in fact, at 29.5 percent -- again, the

12 noteholders' view as to the maximum amount of equity into

13 which the warrant could be converted -- you've never seen an

14 instance, have you, sir, where a party obtained a control

15 premium for a 29.5 percent stake in a company?

16 A    So we have in the U.S. relatively few transactions

17 involving stakes of twenty-five, thirty, thirty-five, forty

18 percent and I can't think of one where that stake was sold

19 without a hundred percent of a company being sold off the

20 top of my head and, therefore, I can't give you examples

21 where there was a control premium assigned to a thirty

22 percent stake in -- in a major company.  I don't want to

23 rule it out that there would be some premium associated with

24 a very influential stake, but I don't have specific examples

25 in my mind.

1    Q      Okay.  Now in your rebuttal report you also purport to

2    estimate the costs associated with the amount of equity to

3    be held by the distribution trust.  Do you recall that?

4    A      I provide what I call a rough estimate of the

5    aggregate potential impact of various issues, including the

6    potential control stake on Tribune's enterprise value.

7    Q      Okay.  And that estimate -- again, if you assume with

8    me that the maximum that can be held is 29.5 percent, that

9    estimate of the cost would commensurately go down, correct?

10   A      If you can get down from a majority to roughly thirty

11   percent, that estimated cost would go down and if you can

12   get down to fifteen percent, it would go down some more.

13   Q      Now you've also testified and in your rebuttal report

14   you offered the opinion that the value of the creditor

15   claims on the distribution trust would involve a discount.

16   I think the range you gave was fifteen to twenty-five

17   percent from the value of the underlying assets of the

18   trust, correct?

19   A      Yes.

20   Q      And, again, isn't it the case, sir, that that discount

21   would also be reduced if the amount of equity in the trust

22   goes down to a maximum of 29.5 percent?

23   A      Yes.  So with regard to the portion of the trust

24   assets that would be either -- there would be fewer assets,

25   then there's no discount because there are no assets.  To

1  the extent that the assets would be held in the form of cash

2  or notes rather than stock, I think there would still be an

3  illiquidity discount, but it would be smaller than it would

4  be in percentage terms for the stock.  To the extent that

5  the distribution trust continues to hold stock, then my

6  estimate of the discount would continue to apply.

7  Q    Okay.  Let's talk about voting rights.  If you look in

8  Volume II of the binder that you have in front of you and in

9  Tab 1 of that binder you will find the proposed certificate

10 of incorporation under the noteholder plan, and I would like

11 to direct your attention, Professor, please, to Page 3.

12 It's the heading in the relevant section is, "Class C Common

13 Stock."

14 A    Okay.

15 Q    Do you have that section in front of you?  It's

16 Subsection A?

17 A    Yes.

18 Q    Now your opinion, sir, is that there is a cost of the

19 noteholder plan as -- as compared to the DCL plan based on

20 the possibility that the voting provisions that you have in

21 front of you would grant the holders of Class C common stock

22 a broad veto right over any amendments to Tribune's charter,

23 correct?

24 A    Yes.  That's a source of concern.

25 Q    Okay.  And -- and that is based upon your reading of

1  this provision in Paragraph A?

2  A    Yes.

3  Q    Okay.  But you also acknowledge, Professor, that a

4  better interpretation of this provision is that in order for

5  the Class C common stockholder to have any kind of a veto

6  right over a charter amendment, the amendment has to effect

7  the rights of the Class C common stock?

8  A    No.  I don't agree with that.

9  Q    Okay.  Well, let's play Clip 10 if we can, please.

10  This is from your deposition.

11      (Playback, 2:33 to 2:34, of Video Deposition of

12  PROFESSOR BLACK:)

13      Q    Well, when you say that it makes me think that

14      you're -- you are sort of acknowledging that it's not

15      intended to give the Class C common stock a veto right

16      over any charter amendment that has nothing to do with

17      the Class C common stock?

18      A    No.  I want to say I don't know.  All right.

19      Q    Okay.

20      A    I -- it is perfectly plausible to me that the

21      distribution trustee could come into court and say,

22      see, it says including without limitation and that

23      means including without limitation and I have the right

24      to vote.

25      Q    Okay.

1       A       And I could imagine someone else having a

2       counter-argument based on the rest of Sub-clause 2 that

3       this particular amendment doesn't affect your rights,

4       privileges and limitations and, therefore, no, you

5       don't have a right to vote.

6       Q       Okay.  So are you -- are you offering an opinion

7       as to which interpretation is more reasonable?

8       A       I think that it is my opinion that the better

9       interpretation for a charter amendment that plausibly

10      affects the Class C common stock is they have a veto

11      power, and I do not have an opinion with respect to an

12      amendment that's unrelated to the Class C common stock

13      other than one could argue both sides.

14 BY MR. QURESHI:

15 Q    Sir, was that true testimony when you offered it on

16 Sunday?

17 A    I agree with my testimony on -- as of Sunday.

18 Q    Okay.  Now, sir, you also testified that even if this

19 provision grants a veto right only over -- over only

20 amendments that would impact or effect the Class C common

21 stockholder's right, you believe that that would include an

22 amendment to allow the corporation to issue additional

23 shares, right?

24 A    I think that is a likely interpretation of the

25 charter.  Yes.

1  Q    And -- and you get there because the issuance of

2  additional shares would dilute the value of the warrant

3  that's held by the distribution trust, right?

4  A    That's correct.

5  Q    Okay.  And -- and you believe, if I'm following your

6  logic correctly, that a dilution in the value of the warrant

7  would affect the rights and the privileges of the common --

8  of the Class C common stockholders, correct?

9  A    So my understanding of why the Class C common stock is

10 there is to protect the rights of the distribution trustee

11 and the reason why the distribution trustee has rights that

12 potentially need to be protected is because it holds the

13 warrant which is convertible into a large fraction of

14 Tribune's common shares.

15 Q    Okay.  But -- but you understand, sir, don't you that

16 the Class C common stock does not have any rights,

17 preferences or privileges that go with it in connection with

18 the warrant, correct?

19 A    The charter does not expressly link the Class C common

20 stock to the warrant.  That is correct.

21 Q    Yeah.  And, in fact, you're not aware of any documents

22 at all that talk about the Class C common stock having any

23 rights in connection with the warrant, right?

24 A    I'm certainly not a master of all of the documents in

25 the noteholder plan, but I'm not aware of an express linkage

1  as opposed to a substantive linkage between the Class C

2  common stock and the warrant.

3  Q     And you're familiar with Professor Rock's testimony I

4  gather.  Is that right?

5  A     I am.

6  Q     Okay.  So you're aware that Professor Rock testified

7  that under the charter the Class C common stock may vote

8  only on charter amendments that effect its right to

9  designate two board members of Tribune?

10 A     I think Professor Rock testified that he thought that

11 was the better view, but he recognized that -- my opinion

12 that there were broader rights to vote on a charter

13 amendment was also a plausible reading of the charter.

14 Q     And --

15 A     So there's an ambiguity there.

16 Q     And you agree that Professor Rock's reading is

17 plausible?

18 A     Yes, I do.

19 Q     Okay.  And if, in fact, you assume with me that

20 Professor Rock is correct in the extent of the Class C

21 common stock's veto rights, your estimate that you can --

22 that you have in your report of the costs of the alleged

23 corporate governance deficiencies in the noteholder plan

24 would go down?

25 A     Well, here's the issue.  Whether or not Professor Rock

1  or I is right in our estimate of the more likely

2  interpretation, the existence of the ambiguity might create

3  the potential for the distribution trustee to assert the

4  right to vote and that might assist the distribution trustee

5  if the distribution trustee were seeking to block a

6  transaction whether -- with regard -- without regard to

7  which of us would ultimately be right as a matter of

8  interpretation of the charter.

9          MR. QURESHI:  Can we please have Clip 15 played

10  from the deposition?

11      (Playback, 2:37 to 2:38, of Video Deposition of

12  PROFESSOR BLACK:)

13      Q    Can you tell me what portion -- what -- if you

14      turn to Page 76 again of your report, and that's where

15      we have your overall conclusion of the costs of the

16      distribution trust structure of 400 to 700 million.

17      And what portion of that 400 to $700 million is

18      attributable to this concern about the Class C Common

19      stock?

20      A    So before you said suppose there's no control

21      where would I be and I said maybe three to eight

22      percent.  And suppose you now say there's no charter

23      amendment issue, where would I be, maybe two to six

24      percent.  I -- I would have to think through a little

25      bit more --

1  BY MR. QURESHI:

2  Q      True testimony at the time you gave it, sir?

3  A      Yes.

4  Q      Okay.  Now assume for the moment that your

5  interpretation of the charter is the correct one, you

6  believe that there are costs associated with giving the

7  distribution trust veto rights or potential veto rights over

8  transactions that Tribune might want to enter into, correct?

9  A      I think there are potential flexibility costs.  Yes.

10 Q      Right.  And -- and one of the reasons you offer for

11 that opinion is that you believe the distribution trust is

12 likely to be risk averse?

13 A      That's certainly a potential.  Yes.

14 Q      Okay.  And, essentially, as I understand your concern,

15 Professor, is that the distribution trustee will be more

16 concerned with protecting itself against the claim that it

17 has done something wrong than with approving a potentially

18 risky transaction that in the view of management of Tribune

19 might be beneficial?

20 A      I think the distribution trustee would be concerned

21 with its downside risk.  Yes.

22 Q      And another reason that you allege there is a cost to

23 this structure is the possibility of delay associated with

24 the distribution trust approving a transaction?  Again, if

25 we're operating under the assumption that your

1  interpretation of the charter is correct.

2  A    Yes.

3  Q    Okay.  Now are you aware that Professor Rock testified

4  that any delay associated with obtaining distribution trust

5  approval will likely be shorter than the amount of time than

6  it would take to obtain regulatory or FCC approval for a

7  large transaction?

8  A    I'm aware of that testimony.  Yes.

9  Q    And -- and you don't offer any opinion as to whether

10  Professor Rock is right or wrong in that assertion, correct?

11  A    I do not have a view as to whether in a transaction in

12  which FCC approval is required would there be some reason

13  why you couldn't go and get both approvals at the same time.

14  I think that Professor Rock was talking about the situation

15  in which the distribution trustee hypothetically opposed the

16  transaction.  You've asked me a little bit different

17  question which is what if you just simply have to go and get

18  the distribution trustee's approval and I view that as a

19  different question where management is potentially serving

20  two masters and it takes more time to get two yes's than to

21  get one yes.

22  Q    Well, if the transaction required a shareholder vote

23  that, too, would take time to get done, correct?

24  A    Yes, it would.

25  Q    And, likewise, if the transaction required the company

1  to file a proxy statement that, too, would take time to get

2  done, correct?

3  A    That's right.

4  Q    Okay.  And if it involved a cash transaction it might

5  involve the time necessary for the company to go and raise

6  the financing necessary to do the deal, right?

7  A    I think there's a separate question as to whether you

8  have to go get approval from two sources before you even

9  start down the road of shareholder approval or proxy

10  statement or -- or arranging financing.  It's almost like

11  you have two boards of directors and you have to satisfy

12  both of them and that could be a potential impediment to a

13  transaction.

14  Q    Let's turn to the cooperation obligation that you've

15  offered some opinions on, and -- and that is the same

16  document that you should have before you, Tab 1 of Volume

17  II.  If you turn to Page 12 of that document.

18  A    Okay.

19  Q    And in particular the bottom of the page at Section 6-

20  E, the section entitled, "Cooperation."  Is that the

21  provision, sir, that causes you some concerns?

22  A    So the provision 6-E is the cooperation provision.

23  The club, the lack of indemnification insurance and so on as

24  I've called it is later on in Paragraph 9.

25  Q    Right.  And -- and the cost that you allege is

1  associated with this provision is that, in your opinion, if

2  I understand it correct, it gives the distribution trustee

3  the ability to block a transaction by arguing that the

4  officers and directors that might want to proceed with the

5  deal would be in breach of their cooperation obligation if

6  they did so.  Is that right?

7  A    I would say it creates the potential for the

8  distribution trustee to argue that a transaction violates

9  the cooperation clause and that would be an impediment to

10 reaching agreement on the transaction and an impediment to

11 the board being willing to go forward with the transaction.

12 Q    But that argument that entering into a transaction

13 that the distribution trustee opposed would -- would breach

14 this provision, you acknowledge that that's a losing

15 argument, don't you?

16 A    As we've learned in this case there are no such things

17 as dead losing arguments.  I think it's a less likely --

18 it's certainly a less than fifty/fifty argument in my

19 judgment, but it's not an implausible one.  It's one that

20 the distribution trustee might bring that would have

21 powerful weight because it's backed up by the lack of

22 indemnification and insurance.

23 Q    Well, you agreed at your deposition that that would be

24 a losing argument in all likelihood, correct?

25 A    I don't think I used the phrase that it would be a

1   losing argument.  I think I said that I didn't think it

2   wasn't a wonderful argument.

3   Q     Okay.  Well, let's play Clip 34, then, please.

4         (Playback, 2:44 to 2:45, of Video Deposition of

5   PROFESSOR BLACK:)

6         A     So the cooperation clause -- I don't -- I don't

7         know how broad the reference to administration of the

8         trust is, but it then continues to say, including, but

9         not limited to, dot, dot, dot, the issuance and

10        distribution of common stock.  So if Tribune engages in

11        some major transaction, could the distribution trustee

12        say, we think this will adversely affect the value of

13        the common stock that we're going to distribute in the

14        future, and if you go forward you're not cooperating

15        with us.  They could.  Would they win that argument, I

16        don't know.

17        Q     Okay.

18        A     But they could bring it and muck up the

19        transaction.

20        Q     Okay.

21        A     They wouldn't even have to win it.

22  BY MR. QURESHI:

23  Q     Okay.  By your expression, which the video is

24  capturing, I -- it seems to me that you -- you think that

25  that's, while it's an argument that could be made probably

1  not the most plausible argument or interpretation of the

2  language.  Is that fair to say?

3  A     I think that that argument would likely be a losing

4  argument, but if you wanted to stop a transaction, it would

5  be a plausible argument.  You could make it in good faith.

6  Q     Okay.

7  A     And you could probably botch up the --

8  Q     Sir, true testimony when you offered it --

9  A     Yes.

10 Q     -- forty-eight hours ago?

11 A     Yes.

12 Q     Okay.  Now if the distribution trustee did, in fact,

13 take the position that the company -- and the company

14 believed it would be harmed if it couldn't go through with

15 the transaction that trustee opposed, the company could seek

16 expedited relief from the bankruptcy court, couldn't it?

17 A     I don't know whether the right forum would be the

18 bankruptcy court or the Delaware courts, but I assume that

19 there would be some forum in which the directors might be

20 able to seek relief and maybe even get their attorney's fees

21 paid.

22 Q     Sir, if you could turn to Tab 2 in your binder.  This

23 is Tab 2 of Volume II, and that is the second amended

24 noteholder plan.  And turn, if you could, to Page 129.  It's

25 Section 12.1.  And the provision is also on the screen, if

1  that's easier.

2  A      Okay.

3  Q      The retention of jurisdiction provision.  Have you had

4  a chance prior to today to -- to look at that provision of

5  the amended noteholder plan?

6  A      I have not.

7  Q      Okay.  So -- so were you aware, sir, that the plan

8  included a provision that says, "The bankruptcy court will

9  retain exclusive jurisdiction over all matters arising out

10 of and related to the Chapter 11 cases and the noteholder

11 plan to the fullest extent permitted by law"?

12 A      So I think I agreed with you that there would be

13 jurisdiction in the bankruptcy court or the Delaware courts

14 and potentially both to address a claim by the distribution

15 trust that Tribune was not cooperating with the trust under

16 the Tribune charter.

17 Q      Right.  And would you also agree that the bankruptcy

18 court might be willing to hear such a matter on an expedited

19 basis?

20 A      I have no opinion on bankruptcy court procedures.

21 Q      And would you also agree that if it was the company

22 that chose to run to the Court to try to get some relief

23 from acts of the distribution trustee, that the officers and

24 directors wouldn't bear any personal expense in that?

25 A      I'm not sure about that.

1  Q    So you don't believe that in that circumstance the --

2  the company would pay the legal fees associated with going

3  to court and trying to get relief?

4  A    I can imagine a situation where the directors, if they

5  were sued individually might think it prudent to obtain

6  their own counsel and it's not clear that they would get

7  paid for that.  I agree that the company could also have its

8  own counsel.

9  Q    Okay.  Let's switch gears again and talk for a moment

10 about the incentives that you believe might exist for the

11 distribution trustee to behave, for lack of a better phrase,

12 strategically.  Now you've -- you've testified, sir, and --

13 and offered in your rebuttal report the opinion that it's

14 plausible that the distribution trustee might try to use the

15 cooperation provisions or the Class C voting rights as

16 potential leverage in connection with the LBO litigation,

17 correct?

18 A    Yes, as a paraphrase.  I don't remember the exact

19 language, but, yes.

20 Q    And you're not testifying that that type of behavior

21 would occur.  You're just saying it's plausible that it

22 might happen?

23 A    Yes.

24 Q    Okay.  And -- and those two words that I just used,

25 "plausible" and that "it might happen," I think in your

1  deposition on Sunday you characterized those two words as

2  weakening words, right?  You remember that?

3  A    That's right.  This is a possibility and I wasn't

4  trying to assess a percentage probability to attach to it.

5  Q    Okay.  And the possibility of this occurring, how you

6  get there, if I understand it correctly, Professor, is that

7  the distribution trustee could either vote against a

8  transaction that might be beneficial to the corporation or

9  assert that a transaction that is beneficial would violate

10  the cooperation provision unless the banks agreed to settle

11  the litigation on the terms demanded by the trustee.  Is

12  that essentially the theory?

13  A    No.  I think that's not a fair statement of what I

14  said.

15  Q    Well, let me ask you this, then.  You're not aware,

16  are you, of any noteholder plan documents that state that

17  the purpose of the distribution trust is to settle the LBO

18  litigation?

19  A    I agree with that.

20  Q    Okay.  And, in fact, there's no language anywhere in

21  the noteholder plan that you're aware of that gives the

22  distribution trustee any role at all in the LBO litigation

23  other than to receive the proceeds of any litigation?

24  A    My understanding is the distribution trust receives

25  the proceeds of the outcome of the litigation.

1  Q     But otherwise has no role at all in the litigation.

2  Is that your understanding?

3  A     Yes.

4  Q     Okay.  And, in fact, isn't it the case, sir, that

5  under the noteholder plan the litigation trust has the

6  exclusive authority to pursue and to settle the litigation?

7  A     That's consistent with my understanding.

8  Q     Okay.  And other than in their capacity as holders of

9  distribution trusts interests, the litigation trustee

10 doesn't owe any fiduciary obligations to the bank, isn't --

11 to the banks, isn't that right?

12 A     The litigation trustee does not owe any fiduciary

13 obligations to the banks.  That's correct.   It's expected

14 to sue them.

15 Q     Right.  So the litigation trustee's fiduciary duties

16 explicitly carve out the banks acting in their capacity as

17 defendants for obvious reasons, right?

18 A     That's consistent with my understanding.

19 Q     And that's because the intent of the fiduciary duties

20 that the litigation trustee does have is to ensure that the

21 litigation trustee acts to maximize the value of the assets

22 of the litigation trust, right?

23 A     I don't want to speculate about the cause, but the --

24 your description is consistent with my understanding.

25 Q     And -- and the LBO causes of action are -- you

1   understand that those are, of course, assets of the

2   litigation trust under the noteholder plan, correct?

3   A      Yes.

4   Q      Those are not assets of the distribution trust, right?

5   A      Right.  The distribution trust will receive the

6   proceeds of the outcome of the litigation, but the

7   litigation claim itself will sit in the litigation trust.

8   Q      Okay.  And in contrast to the fiduciary duties of the

9   litigation trustee, the distribution trustee does, in fact,

10  have fiduciary duties that run to the banks, correct?

11  A      As was the case at my deposition, the distribution

12  trust has fiduciary duties to all beneficiaries, but there

13  would be a judgment to be made with regard to actions that

14  might advantage one set of beneficiaries at the expense of

15  another and the distribution trustee might say it's my job

16  to increase the corpus of the trust and not pay any

17  attention to how that corpus is distributed.

18  Q      But you don't disagree, sir, do you that the

19  distribution trustee, in fact, owes fiduciary duties to the

20  banks?

21  A      I do not disagree and with the qualification that if

22  there are conflicts between beneficiaries, then the

23  distribution trustee might say, my job is to have a bigger

24  pie, without regard to how it's divided up.

25  Q      Well, let's just look at the provision quickly.  Tab 2

1    of Volume II.  Again, this is the second amended plan, Page

2    113.  If I could direct your attention to Paragraph 7.16.7.

3    And in particular -- and we've placed it on the screen, the

4    highlighted section, can you just please read that into the

5    record.

6    A      "The distribution trustee shall have fiduciary duties

7           to holders of distribution trust interests in the same

8           manner that members of an official committee of

9           creditors appointed pursuant to Section 1102 of the

10          bankruptcy code have fiduciary duties to the creditor

11          constituents represented by such committee."

12   Q      Okay.  And, sir, you're not suggesting, are you, that

13   the distribution trustee would act in a manner inconsistent

14   with its fiduciary duties?  You're not making that

15   assumption?

16   A      I am not making that assumption.

17   Q      Okay.  And the distribution trustee advisory board,

18   which, in turn, controls the distribution trustee, that

19   advisory board also owes fiduciary duties to the banks,

20   correct?

21   A      I would imagine that that's right, but I haven't

22   really focused on that question.

23   Q      Okay.  Well, let's look at it.  It's on the same page,

24   Page 113, Section 7.16.6.

25                  MR. QURESHI:  And if we can get that provision up

1   on the screen.

2   BY MR. QURESHI:

3   Q    And towards the middle of the paragraph there's a

4   sentence and it reads, "The distribution trust advisory

5   board" --

6   A    What I think you want is the last --

7   Q    I'm sorry.

8   A    -- sentence --

9   Q    You're right.

10  A    -- on the screen.

11  Q    I apologize.  It's the last sentence.  "Members of the

12  distribution trust advisory board shall have fiduciary

13  duties to the holders of the distribution trust' interest,"

14  and it goes on from there.  In fact, it's the same language

15  as the fiduciary duties held by the distribution trustee,

16  correct?

17  A    Yes.  I see that.

18  Q    Okay.

19  A    And I agree that it's the same language.

20  Q    Okay.  And your opinion, Professor, is that

21  notwithstanding these fiduciary duties, the distribution

22  trustee and the distribution trust advisory board might act

23  strategically to block a transaction that would be

24  beneficial for Tribune in order to gain the leverage in the

25  litigation?

1  A     Might seek to say, I think it is in the interest of

2  the distribution trust to have the litigation resolved

3  before you go forward with this major transformative

4  transaction.  Go get it resolved if you want to get my

5  approval and, otherwise, I'll consider whether or not to

6  support the transaction.  I think that's plausible.

7  Q     Okay.  Well, and if something like that happened, if

8  the distribution trustee, together with the distribution

9  trust advisory board took that type of conduct and tried to

10  hold up a transaction that might otherwise be beneficial in

11  order to gain leverage in settlement, would -- wouldn't you

12  agree that the trustee might be opening itself up to a claim

13  that its fiduciary duties that run to the banks might be

14  breached by that conduct?

15  A     I can imagine such a claim.  Yes.

16  Q     Okay.  And this is the same distribution trustee that

17  you believe might be too concerned about protecting itself

18  from potential litigation to approve a potentially

19  beneficial, but risky transaction, right?

20  A     I think this is the same trustee that I believe would

21  generally be risk averse.  Yes.

22  Q     All right.  And so in addition to the proceeds of any

23  litigation that might be -- that might be realized by the

24  distribution trust, the other asset that the distribution

25  trust has is the warrant, correct?

1  A      The distribution trust will have the warrant and cash

2  and part of a new Tribune note --

3  Q      Okay.

4  A      -- is my understanding.

5  Q      And you believe, Professor, that the distribution

6  trustee has an obligation to maximize the value of the trust

7  assets, right?

8  A      Certainly preserve an increase, and we went back and

9  forth in my deposition about maximize.

10 Q      Right.  And your view is that, nonetheless, the

11 distribution trustee might violate its obligation to

12 maximize the value of the warrant in order to gain leverage

13 in the LBO litigation, right?

14 A      No, I think that the trustee might take the view that

15 the best way to increase the value of the overall trust

16 assets is to use this important transaction as leverage to

17 get the parties to settle the litigation and bring more

18 assets into the distribution trust.

19 Q      Right.  And as we've established, thereby expose

20 itself to a potential breach of fiduciary duty litigation,

21 right?

22 A      There would be some risk associated with that course

23 of conduct.  There might be risks associated with other

24 courses of conduct as well.

25 Q      Now, the distribution trust advisory board -- you

1  understand that that board is independent of Aurelius,

2  correct?

3  A    My understanding is that the distribution trust

4  advisory board is initially majority appointed by Aurelius,

5  but that the members should be formally independent of

6  Aurelius.

7  Q    Right.  And the members cannot be removed by Aurelius,

8  isn't that right?

9  A    I believe that to be correct, yes.

10  Q    Okay.  And the distribution trustee also must be

11  independent from Aurelius, correct?

12  A    Yes.

13  Q    And likewise, the distribution trustee cannot be

14  removed by Aurelius, correct?

15  A    The distribution trustee, I believe, can be removed by

16  the distribution trust advisory board but not directly by

17  Aurelius.

18  Q    Okay.  And notwithstanding that independence, you

19  believe that another cost of the noteholder plan is the

20  possibility that directors appointed by Aurelius will

21  somehow favor Aurelius over the interests of Tribune, to the

22  extent that their interests might diverge?

23  A    I think that's always a risk any time you have members

24  of a board of directors that are appointed to represent a

25  particular constituency.

1  Q    Okay.  And so that concern would be equally true,

2  then, under the DCL plan, right?

3  A    So to the extent that, under the DCL plan, Tribune

4  wanted to engage in a transaction that the banks thought was

5  a terrible idea.  That might have an impact on the view of

6  the directors that were appointed by the banks to the

7  Tribune board.  I would agree with that.

8  Q    Okay.  And therefore, that cost, to the extent it

9  exists, would be a cost of the DCL plan as well.

10  A    I would be less concerned with that cost on the DCL

11  side, because the directors would be representing people who

12  had full upside to gain and full downside exposure.  They

13  would be full owners of the stock.  I would be more

14  concerned on the noteholder side, because of the

15  distribution trustee's potential to be risk-averse and to

16  have incentives that diverge from those of Tribune.

17  Q    Sir, this is the first time in your career, isn't it,

18  that you've been an expert in a bankruptcy case?

19  A    Yes.

20  Q    Okay.  And you've never before been involved as an

21  expert in a case involving a trust, similar to the

22  distribution trust that we have here, right?

23  A    That's correct.

24  Q    Okay.  I'd like you to turn for a minute to tab 5 of

25  volume 2.  This is the memorandum of law of the noteholder

1  plan proponents in support of confirmation.  You've read

2  this document, haven't you?

3  A     Yes.

4  Q     Turn, sir, please to page 59.  And do you have page 59

5  in front of you?

6  A     Yes.

7  Q     So just before heading 2, there's a sentence which

8  reads:

9  "Notably, the DCL plan proponents have failed to provide a

10  single example of such 'difficulties', despite the fact that

11  dozens of reorganizations have utilized an equity trust on

12  their way to emergence and subsequently prospered on their

13  own or through a merger transaction."

14            Do you see that sentence?

15  A     I do.

16  Q     And footnote 39, if you go to the bottom of the page,

17  you'll see that a number of cases are listed there, correct?

18  A     Yes.

19  Q     And sir, you didn't bother to review any of those

20  cases, did you?

21  A     I testified in my deposition that I had not read those

22  cases but that it was also my understanding that those other

23  cases did not involve majority voting interest being placed

24  in a distribution trust.

25            MR. QURESHI:  Your Honor, may I have a moment?

1   (No audible response.)

2           MR. QURESHI:  All right.  If I may turn it over

3   to Mr. Zensky.

4           THE COURT:  You may.

5           MR. QURESHI:  Thank you.

6           MR. ZENSKY:  I believe I'm going to be very

7   brief, Your Honor.  Just give me one moment.

8   BY MR. ZENSKY:

9   Q    Good afternoon again, Professor.  You testified -- for

10  the record, David Zensky, Your Honor, Akin Gump Strauss

11  Hauer & Feld for Aurelius and the noteholder plan

12  proponents.  You testified in response to Mr. Ducayet that

13  the examiner gave his conclusions along a seven-point

14  continuum.  Do you recall that?

15  A    He --

16  Q    He gave his conclusions --

17  A    -- used seven categories that roughly represent a

18  continuum.

19  Q    Okay.  Thank you.  And you appreciate that, at the

20  very beginning of the examiner report, he said that we could

21  find his bottom-line conclusions at the outset of each of

22  the separate discussion areas on each issue, correct?

23  A    As a paraphrase, yes.

24  Q    Well, doesn't he explicitly use the phrase: you can

25  find my bottom-line conclusions?

1    A       I don't recall.

2    Q       Okay.  Do you have your binder up there?

3    A       Yes.

4    Q       Okay.  Why don't you look at tab -- yeah, it's volume

5    1, Professor.  Sorry.  It's behind tab 6 in your exhibit

6    binder.

7    A       Okay.

8    Q       Do you see the excerpt on page 4?

9    A       Yes.

10   Q       Okay.  Does that refresh your recollection?

11   A       So do you want me to read it into the record?

12   Q       Does it refresh your recollection that the examiner

13   told us we could find his bottom-line conclusions at the

14   outset of his discussions of each of the issues?

15   A       That's a fair paraphrase, yes.

16   Q       Okay.  Now, two of the criticisms that you offered in

17   your testimony of Dr. Baron's report was failure to use

18   judgment or common sense in effecting going beyond the

19   examiner's stated conclusions and looking to the actual

20   substantive discussion.  All right.  That's one of the

21   criticisms?  The failure to do that?

22   A       And also the failure to attend to the examiner's

23   conclusions, because the examiner sometimes says somewhat

24   unlikely but close, so the examiner does not restrict

25   himself to the seven main categories.

1  Q     Okay.  And secondly, you gave -- one of your

2  criticisms was the failure of Dr. Baron to treat certain of

3  the findings, as you put it, as related or nested or

4  dependent, correct?

5  A     Yes.

6  Q     Okay.  Now, I think you agreed with me last time we

7  were in this courtroom that the examiner does not expressly

8  tell us the degree to which he believed that any of his

9  findings or conclusions were nested or dependent on each

10 other.

11 A     In some cases, he does; in some cases, he does not.

12 Q     Okay.  Does he expressly tell us that, or do you

13 believe that you can infer that from his testimony?

14 A     In some cases, he pretty expressly tells you that.

15 Q     Okay.  If you testified to the contrary last time,

16 should we believe your testimony today or your testimony

17 from the first session?

18 A     I'm thinking of a couple of instances where the

19 examiner expressly tells you how two conclusions are related

20 to each other.

21 Q     Okay.  Can you try to answer my question now?

22 A     I don't -- I'm not memorizing exactly what I said last

23 time, but I'm thinking of a couple -- at least a couple of

24 areas off the top of my head where the examiner expressly

25 says, in not exactly these words, conclusion A is a subset

1  of conclusion B, or analyzes issues A and B together and

2  says you should look at them the same way.

3  Q    Okay.  Let me try this.  You would agree -- strike

4  that.  Do you stand by your testimony that you don't really

5  know whether your view of correlation maps onto the

6  examiner's view of how issues are correlated?

7  A    So, in my original testimony, I said there are a

8  number of issues where I think outcomes are correlated, and

9  I don't know what the examiner's view would be on how highly

10 they are correlated.

11 Q    Okay.  And would you -- do you stand by your testimony

12 that your approach to this is, in effect, to interpret what

13 the examiner would say on issues of correlation or

14 dependency if we could ask him?

15 A    That sounds like something I might've said, and I'm

16 not holding in my head exactly what words I used.

17 Q    Okay.  Now, I take it you stand by your agreement that

18 the code does not tell us, with respect to the four tests

19 for a fraudulent transfer, that any of them are dependent or

20 nested?

21 A    That's correct.  I believe that the way the bankruptcy

22 cases apply the cash-flow solvency test and the unreasonably

23 small capital case, in large measure, result in cash-flow

24 solvency, the objective prong of cash-flow solvency being a

25 subset of unreasonably small capital.  But that's not in the

1   code; that's in the cases.

2   Q    Okay.  The question was just about the code,

3   Professor, so if you could try to focus on the question,

4   we'll get through this much quicker.  Now, you gave Mr.

5   Ducayet examples in your rebuttal testimony of judgments

6   that you think -- strike that.  You gave Mr. Ducayet

7   examples of specific areas where you think that issues were

8   dependent or nested or that judgments should have been made

9   about how to model the examiner report, correct?

10  A    I offered some examples, yes.

11  Q    Okay.  And the examples you gave all mitigated, if

12  they were adopted, to lower the probability of successful

13  fraudulent transfer litigation, correct?

14  A    I believe that's correct for the examples that I used,

15  yes.

16  Q    Right.  And if one were to follow your -- the logic of

17  your criticism, you would also have to look at whether there

18  were dependencies or nested probabilities and so on that go

19  in the other direction, correct --

20  A    I agree.

21  Q    -- to be consistent?

22  A    I agree.

23  Q    All right.  Okay.  So there are, I think you would

24  agree, some nested outcomes or correlations that would

25  increase the probability of liability here.

1  A     Yes.

2  Q     Okay.  And there are nested outcomes or certain --

3  some correlations with respect to the defenses, where losing

4  on one defense would make it more likely, or foreclose

5  altogether, the possibility of winning on a similar defense?

6  A     I agree.

7  Q     Okay.  Now, let's see if we can just get examples of

8  those areas.  The examiner gave us separate conclusions on

9  whether he believed an intentional fraudulent transfer had

10 occurred on step one and then separate conclusion at step

11 two, true?

12 A     Yes.

13 Q     Okay.  And he didn't tell us whether one was dependent

14 or would make the other more likely or less likely, correct?

15 A     Correct.

16 Q     Okay.  But you agree that if a Court were to find that

17 step one constituted an intentional fraudulent transfer, it

18 would follow, almost as a necessity, that step two would

19 likewise be found to be an intentional fraudulent transfer.

20 A     So let me distinguish between whether you're going to

21 apply what I call formal step integration or not, if I can.

22 Can I answer separately with and without?

23 Q     Okay.  Are -- you can't answer the question the way I

24 posed it?

25 A     I would want to address it separately, with and

1  without formal step integration.

2              MR. ZENSKY:  Okay.  Bear with me one minute then,

3  please.  Okay.  Your Honor, may I approach the witness?

4              THE COURT:  You may.

5  BY MR. ZENSKY:

6  Q    Professor, I've handed you a binder with the

7  transcripts from your various depositions and your trial

8  testimony as well.  Could you look at tab 1, please, which

9  is your first deposition, at page 342?

10  A    Okay.

11  Q    Okay.  You and I were discussing this topic at the

12  bottom of 342.  And beginning at line 8, 343, I asked you,

13  "Did he," meaning the examiner, "tell us to what degree it

14  would be more likely that there would be an intentional

15  fraudulent transfer finding at step two if it turned out

16  that there was an intentional fraudulent transfer at step

17  one?"  And your answer: "So the narrow answer is no; he

18  didn't tell us that.  In fact, he treats the two separately,

19  but I would view that if you think that from step one there

20  was an intentional fraudulent transfer, that's highly likely

21  to carry over to step two."

22              Do you see that testimony, Professor?

23  A    I do.

24  Q    Okay.  Do you stand by that testimony?

25  A    Yes.

1  Q    Okay.  It's an accurate statement of your views?

2  A    Yes.

3  Q    Okay.  Let's move on to constructive fraudulent

4  transfer then.  Do you also agree that the examiner gave us

5  separate conclusions at step one and step two, with respect

6  to the various constructive fraudulent transfer tests?

7  A    Not completely, but for the most part, yes.

8  Q    Okay.  And not completely, at -- you're thinking of

9  the fact -- or strike that.  You agree that if the estate

10 won the litigation at step one and proved that there was a

11 constructive fraudulent transfer on any of the three

12 theories, that it would, of necessity, carry over, and there

13 would be a constructive fraudulent transfer at step two?

14 A    So the reason why I wanted to know do you want me to

15 assume a formal step integration is because I also have the

16 view that with formal step integration, the likely analysis

17 is that there is no step two; there's only step one.  So if

18 you're asking me about step two, then I want to be able to

19 assume that there's no formal step integration.

20 Q    Okay.  In the context of informal step integration,

21 would you agree with that?

22 A    So give me the question again, I'm sorry.

23 Q    Yeah, that if the estate was to prevail in proving a

24 constructive fraudulent transfer at step one, it would

25 follow, of necessity.  There would be a finding of

1  constructive fraudulent transfer at step two?

2  A    Yes, that would not follow as a matter of logical

3  necessity, but in practice, Tribune's business position did

4  not improve between step one and step two, so I think in

5  this case, it would follow to a very high probability.

6  Q    Okay.  Now, let's try a third example.  If a Court

7  were to find that there was a constructive fraudulent

8  transfer at the parent company level, on an unreasonably

9  small capital theory or inability to pay debts as they come

10  due, it's your view that that would, of necessity, mean

11  there would be a similar finding at the subsidiaries,

12  correct?

13  A    Yes, I viewed the decision on unreasonably small

14  capital at the subs as effectively demanding a similar

15  conclusion -- I'm sorry.  Unreasonably small capital at

16  Tribune would effectively demand a similar conclusion at the

17  subs.

18  Q    Okay.  And with respect to the balance-sheet test, if

19  I understand it, your view is not that a finding at the

20  parent would compel a similar finding of insolvency at the

21  subsidiaries, but it would make it more likely, correct?

22  A    So, a finding of balance-sheet insolvency at the

23  parent would be premised on an assessment of the balance-

24  sheet value of Tribune, and whatever value you have, you

25  would carry over to the subs, subtracting on the asset side

1  the Tribune-only value, and subtracting on the liability

2  side the Tribune-only debt.  The hard question in that

3  analysis is what's the asset value of Tribune.  The higher

4  it is, the more likely the subs are to be solvent, and the

5  lower it is, the more likely the subs are to be insolvent.

6  Q    All right.  So there's a correlation but not a

7  complete dependency?

8  A    Yes.

9  Q    Okay.  Now, let's turn to the defenses.  And you agree

10 that there were certain defenses that are related and the

11 banks would not get two bites of the apple?

12 A    I don't know if I used the exact phrase two bites of

13 the apple, but I agree that the -- that some of the defenses

14 -- the likely outcomes on those defenses are correlated as a

15 practical matter, even if not as a strict legal matter.

16 Q    Okay.  So let's see if we can find some examples there

17 and finish it up.  One of the defenses, I think the way you

18 phrase it, is called payment integration, or one issue is

19 whether the loans extended to the debtor in connection with

20 the leverage buyout are integrated with the payments that

21 instantaneously go out the door to the shareholders,

22 correct?

23 A    Yes.

24 Q    And the banks argue -- or have argued that they

25 shouldn't be integrated, and therefore, they gave reasonably

1  equivalent value to the debtors, correct?

2  A    Correct.

3  Q    Okay.  You give that argument virtually no chance of

4  succeeding, correct --

5  A    I --

6  Q    -- in your own view of the world?

7  A    I consider it a weak argument, and the examiner

8  considered it to be highly unlikely.

9  Q    Okay.  Now, that defense, you would agree, is highly

10 correlated, if not entirely subsumed within the issue of

11 whether the payments to the shareholders can be -- can

12 constitute reasonably equivalent value for 548(c) purposes,

13 agreed?

14 A    I don't think I even thought about that question.  I

15 think I was treating it as an assumption that value paid to

16 shareholders was not valued provided to Tribune if you have

17 payment integration.

18 Q    Okay.  Okay.  So let's stay with that.  If a Court

19 rejected the defense that there shouldn't be payment

20 integration, it would not then turn around and say, I didn't

21 mean it.  The money that was paid to the shareholders can be

22 asserted as value conferred on the debtors.

23 A    I think that would be an unlikely combination of

24 conclusions for a Court to reach.

25 Q    Right.  And I think -- didn't you tell me at your

1  deposition that a Judge who found payment integration was

2  appropriate would not be receptive to claims of reasonably

3  equivalent value with respect to the shareholder payments?

4  A    I think it would be my view, without remembering my

5  exact testimony, that a Judge who found payment integration

6  would be less likely to find that whatever value the banks

7  provided to Tribune would be reasonably equivalent value.

8  Q    Okay.  And let's move on to another defense.  You

9  mentioned the issue of standing to pursue avoidance at the

10 subsidiary level --

11 A    Yes.

12 Q    -- in your rebuttal testimony.  Now, would you agree

13 that that is either highly correlated or entirely subsumed

14 within the issue of whether the value that is freed up at

15 the subsidiary level from a ruling of avoidance can come up

16 to the parent company creditors?

17 A    So, I think I testified at deposition there were two

18 sub-statutory defenses.  One is nobody  has standing to

19 complain, and the second is regardless of whether anyone has

20 standing to complain about the guarantees, the money gets

21 paid out to the banks before going upstairs to Tribune's

22 creditors.  And I think I said that as my -- it was my view

23 that a Court that decided that there was standing to object

24 to avoidance would be highly likely to also conclude that if

25 you had standing and you succeeded in your claim, you would

1  have an effective remedy, or at least more likely, and

2  therefore, value would be allowed to go upstairs.

3  Q    Right.  Do you remember testifying to the effect that

4  if the Court rejected the standing defense, it wouldn't turn

5  around and say it doesn't matter, because the money can't

6  come upstairs?

7  A    I consider that to be an unlikely combination of

8  decisions by the Court -- not logically impossible, but

9  unlikely as a practical matter.

10 Q    Okay.  All right.  Let me turn to the last issue you

11 touched on in this area of your rebuttal testimony.  You

12 said that additional -- the additional criticism you had was

13 the failure of Dr. Baron to include or model recoveries from

14 third-party sources?

15 A    Yes.

16 Q    Okay.  And you think that's required, because the

17 Court should consider value that might come from other

18 parties to the noteholders and other pre-LBO creditors as

19 part of its assessment of whether this settlement is

20 reasonable?

21 A    Yes.

22 Q    Okay.  You view the exercise as being analyzing the

23 plan as a whole, not the particular -- strike that.  You

24 view the exercise as analyzing the plan as a whole, correct?

25 A    I thought it was important in order to have a fair

1   assessment of the plan, to analyze the plan as a whole,

2   including the potential litigation trust recoveries.

3   Q    Right.  And you believe it's appropriate for the

4   lenders being released in this plan to point to recoveries

5   that they think might be achieved down the road from other

6   sources?

7   A    Yes.

8   Q    Okay.  Now, you used the phrase disproportionate in

9   describing the plan.  You said it gives disproportionate

10  recoveries to the notes.  Do you recall that?

11  A    Yes.

12  Q    Okay.  And that's because you assume that, but for the

13  settlement, the LBO lenders and the parties holding the

14  step-one and step-two debt would be entitled to participate

15  in recoveries that may come in down the road from third-

16  party sources?

17  A    That would depend on which scenario you're in.  In

18  some cases, it would be my view that they would be entitled

19  to participate in litigation trust recoveries.  In others,

20  they clearly would.  And in some, they would not, so you'd

21  have to take a weighted average over all of those scenarios.

22  Q    All right.  And which scenarios would they not be

23  entitled to participate in trust recoveries under the DCL

24  settlement?

25  A    So the principle scenario that I have in mind is what

1   I called Scenario C2, where Tribune is solvent at step one

2   but insolvent at step two; the subs are solvent at step one

3   but insolvent at step two; and the Judge rules that post-

4   filing interest is not allowed and there was no reasonably

5   equivalent value conveyed at --

6   Q    Okay.

7   A    -- step two.

8   Q    All right.  All right.  So --

9   A    And in that scenario, step two is knocked out, step

10  one is paid in full, so the step one, which is the only

11  valid debt that's left, would not participate in the

12  litigation trust recoveries to begin with.

13  Q    Fair enough.  So in that scenario, the

14  disproportionate sharing, as you describe it, isn't

15  disproportionate at all; there's nothing left for step one

16  or step two to collect at that point?

17  A    Right.  So over all possible scenarios, the DCL plan

18  conveys an advantage to the noteholders, but that would not

19  be true in scenario C2.

20  Q    C2.  Okay.  Leaving that aside, in any instance where

21  either step one and/or step two have a deficiency claim

22  against the estate, you assumed that they would be entitled

23  to share in any recoveries that come in from third parties?

24  A    Yes.

25  Q    Okay.  And that's why I used the phrase

1    disproportionate, because the DCL settlement alters what you

2    believe would be the otherwise applicable sharing

3    percentages?

4    A    Yes.

5    Q    Okay.  Now, you said, in response to Mr. Qureshi, you

6    had read the noteholder objection to the DCL plan.

7    A    Yes.

8    Q    Okay.  And you understand that the noteholders have

9    objected to that aspect of the settlement and argue that the

10   lenders, who intentionally facilitated the transaction, lent

11   into the transaction, knowing that the money would go out to

12   the shareholders, can't participate in third-party

13   recoveries, correct?

14   A    I don't recall that, but I'll accept that that's one

15   of your arguments, yes.

16   Q    Okay.  But you -- it's not something you focused on.

17   A    I did not.

18           MR. ZENSKY:  Okay.  Your Honor, can I have two

19   minutes?  I think that we're done.

20           THE COURT:  Are you telling me you'd like me to

21   step out or --

22           MR. ZENSKY:  Is that okay?  Can we just have a

23   very short break, Your Honor?

24           THE COURT:  Short recess.

25   (Laughter)

1        MR. ZENSKY:  Thank you.

2   (Recess at 3:25 p.m. to 3:34 p.m.)

3        THE CLERK:  All rise.  Be seated, please.

4        MR. ZENSKY:  Thank you, Your Honor.  We have no

5   further questions at this time.

6        THE COURT:  All right.  Redirect.

7                FURTHER REDIRECT EXAMINATION

8   BY MR. DUCAYET:

9   Q    Professor Black -- Jim Ducayet, Sidley Austin on

10  behalf of the debtors, for the record.  Professor Black,

11  just a couple of questions.  First, with respect to Dr.

12  Baron, you had identified some examples of instances in

13  which Dr. Baron did not take into account either correlated

14  or nested issues in connection with his analysis.  Do you

15  recall that?

16  A    Yes.

17  Q    And Mr. Zensky just asked you a whole series of

18  questions about other issues or defenses that could be

19  either correlated or nested.  Do you recall that?

20  A    Yes.

21  Q    My question is, do you know if Dr. Baron took any of

22  the issues that Mr. Zensky identified into account in his

23  analysis?

24  A    For the most part, Dr. Baron treated outcomes as

25  independent.  That's not the case for every single pair of

1   outcomes, so I don't want to say for every single case that

2   Mr. Zensky gave me that was the case, but that was Dr.

3   Baron's dominant strategy in his decision tree modeling of

4   what the examiner would've concluded.

5   Q      And in your view, to do a proper decision tree, is

6   that something you should do?

7              MR. ZENSKY:  Objection, Your Honor.  Two grounds.

8   One, I think, now this is an explicit question that goes

9   into the area of expertise that Your Honor ruled this

10  witness does not have.  And second, I believe I was fairly

11  careful in my examination not to ask the witness any

12  questions about specific techniques or what Dr. Baron did or

13  didn't do.  I just asked him about examples that would point

14  in the other direction, so I think this goes beyond the

15  scope of my cross as well.

16             MR. DUCAYET:  Your Honor, I'll withdraw it.

17  BY MR. DUCAYET:

18  Q      Professor Black, let me ask you a few questions about

19  the noteholder plan and the questions that Mr. Qureshi asked

20  you.  Mr. Qureshi asked you some questions about the

21  relationship between the Class C shares and the warrant.

22  And my question -- do you recall that testimony?

23  A      Yes.

24  Q      Okay.  And my question to you is, does the

25  relationship, as it's embodied in the noteholder plan,

1    between the Class C shares and the rights of the Class C

2    shares and the warrants, does that make any sense to you, as

3    a corporate governance matter?

4    A    So if the noteholder plan holds indirectly a majority

5    stake in Tribune, then it makes sense to me to have

6    provisions in the charter, such as the provision to elect

7    two directors in order for the distribution trust to protect

8    that stake.  If all you had was the Class C common stock

9    sitting over here and the warrant completely unrelated

10   sitting over there, you would wonder why this one share of

11   Class C of common stock having a redemption value of $1 has

12   any rights at all, under the proposed Tribune charter.  So

13   as a substantive or a logical matter, the Class C common

14   stock is connected to the warrant; otherwise, I don't see

15   why it would be there at all.

16   Q    Okay.  And you were also asked some questions about

17   the possible need to get distribution trustee approval with

18   respect to a potential transaction that the Tribune is

19   interested in achieving.  And I think you referred to it

20   being analogous to having two boards of directors, and you

21   referred to that as an impediment.  Do you recall that?

22   A    Yes.

23   Q    What did you mean by that?

24   A    So what I had in mind was suppose Tribune wants to

25   merge with some other major newspaper paper, because the

1   newspaper industry is consolidating, and they would need the

2   approval of their own board of directors.  And they might

3   need the approval of the distribution trustee, because they

4   wouldn't want to end up in a court battle with the trustee

5   over whether the trustee had veto rights over the

6   transaction.  What they would do, as a practical matter, is

7   go to the distribution trustee in advance and try to get the

8   distribution trustee's approval to the transaction, and so I

9   think that would be akin to having to get approval from both

10  sides; otherwise, you might not get the deal done at all.  A

11  counterparty might say: we're not interested in whether the

12  distribution trustee, at the end of the day, would have the

13  power to veto this transaction under the charter or not.  We

14  don't want to sign up the deal unless the distribution

15  trustee is already on board.

16  Q     Okay.  One final question.  Mr. Qureshi asked you a

17  whole series of questions about particular interpretations

18  of the charter and the rights and limitations of the Class C

19  stock, the rights and obligations of directors under the

20  cooperation clause.  And my question is simply, are all of

21  the issues that you've identified as causing you concern,

22  are those fixable, in some sense?

23  A     Those are fixable by amending the charter, yes.

24  Q     And have the noteholders, in fact, endeavored to fix

25  those problems that you identified?

1  A     They have not, and that actually makes me more

2  concerned that these are real problems, because if I hadn't

3  identified real concerns, if this was a -- nothing

4  concerned, one wonders why they didn't go ahead and fix the

5  charter when they amended their plan recently.

6           MR. DUCAYET:  Okay.  I have nothing further, Your

7  Honor.

8           THE COURT:  Any recross?

9           MR. QURESHI:  No recross, Your Honor.

10          THE COURT:  Thank you, sir.  You may step down.

11 Okay.  I indicated to the noteholders that they needed to

12 make a decision, immediately upon the conclusion of the DCL

13 rebuttal, whether they intended to go forward with any

14 rebuttal of their own, and if so, of what that would

15 consist.

16          MR. ZENSKY:  Thank you, Your Honor.  For the

17 record, David Zensky, Akin Gump Strauss Hauer & Feld, for

18 Aurelius and the noteholders.  Your Honor, at this point, it

19 is highly unlikely that we are going to ask the Court to

20 allow us to present any surrebuttal testimony.  There is --

21 the only possibility is it would be Professor Rock.  And

22 what I would ask is if we could have just a short time to

23 talk to our co-plan proponents, our client.  Our client's

24 not in the courtroom, and if we could let the DCL plan

25 proponents and the Court know within the next 45 minutes or

1    hour, if that would be acceptable, Your Honor.

2              THE COURT:  Well, how about a half-hour?

3              MR. ZENSKY:  Okay.  That would be fine.

4              THE COURT:  And I'll leave you with this thought.

5    There is no need for you to call Professor Rock back to tell

6    me he was right the first time.

7    (Laughter)

8              THE COURT:  All right.  Anything else before --

9              MR. ZENSKY:  I'm just going to leave that out

10   there.

11   (Laughter)

12             MR. ZENSKY:  Okay.  Thank you, Your Honor.  How

13   should we communicate our --

14             THE COURT:  To --

15             MR. ZENSKY:  -- outcome to your chambers?

16             THE COURT:  -- my courtroom deputy.

17             MR. ZENSKY:  Okay.

18             THE COURT:  Anything before we break, however?

19             MR. SOTTILE:  Your Honor, just very briefly.

20             THE COURT:  But I -- I'm sorry.  And I will want

21   to come back on the record, Mr. Zensky, briefly.

22             MR. SOTTILE:  Your Honor, James Sottile of

23   Zuckerman Spaeder for the DCL plan proponents.

24             I wanted to report briefly to the Court about

25   briefing, which we talked about earlier, and also to address

1  a little bit the contours of the next two days concerning

2  arguments on legal objections, in light of our continuing

3  efforts to resolve objections.  I think I can report to the

4  Court something more about the likely timing.

5          With respect to briefing, we have, subject to the

6  Court's approval, reached an agreement between the

7  noteholder plan proponents and the DCL plan proponents that

8  would provide for post-hearing briefs as follows.  Opening

9  briefs would be exchanged and filed with the Court on May 11

10  and would be subject to a page limit of 125 pages.  Reply

11  briefs would be due on May 27 and would be subject to a page

12  limit of 40 pages.  And the Court had indicated that if

13  briefing were to be done on May 20, the Court contemplated

14  closing arguments on June 3.  We might suggest, subject to

15  the Court's schedule and the schedule of all parties, that

16  perhaps pushing that into late the following week would make

17  sense, given a slightly adjusted briefing schedule, again if

18  the Court is minded to approve that schedule.

19          THE COURT:  I'll -- during the break, I'll check.

20          MR. SOTTILE:  Thank you, Your Honor.

21          THE COURT:  After June 3 time bunches up again on

22  my calendar for a little bit, but I'll see what -- I'll see

23  what's there.

24          MR. SOTTILE:  We appreciate the Court's

25  consideration, Your Honor.

1          THE COURT:  Okay.  Anything else before we break?

2          MR. SOTTILE:  Just on objections, Your Honor, for

3   the next two days, given the pace of resolution and what we

4   know about the scope of likely objections from third

5   parties, we are now pretty confident that the objections by

6   third parties will all be heard tomorrow so that we should

7   be in a position to turn to legal objections to be argued by

8   the plan proponents on Thursday morning.  We would propose

9   to the Court what I think the Court contemplated that we

10  address first those issues that the Court has identified

11  that you'd like to hear from us on.

12          THE COURT:  Yeah, including the loan-sharing

13  provisions.

14          MR. SOTTILE:  Ah.  We will add that to the list,

15  Your Honor --

16          THE COURT:  Okay.  I'm sorry to --

17          MR. SOTTILE:  -- and ensure --

18          THE COURT:  -- interrupt.

19          MR. SOTTILE:  -- that we address it.

20          THE COURT:  Go ahead.

21          MR. SOTTILE:  Your Honor, I would anticipate that

22  we would be able to conclude addressing those issues, that

23  the Court has asked us to particularly speak to, in the

24  morning on Thursday, so that I would expect that we would

25  have Thursday afternoon available for the purpose that the

1    Court had described in our hearing last week, which was to

2    divide time equally between legal objections that do not

3    depend on evidence induced in the confirmation hearings

4    between the two sets of plan proponents.  That would be a

5    fairly extended period of time, and I did want to raise for

6    the Court whether that's how the Court would like to

7    proceed, given our current estimate of available time.  And

8    if the Court is so minded, I might suggest that it would be

9    helpful for the Court to give us some guidance on what we

10   should include and not include in that length of time.  I am

11   concerned that, as advocates, we may be tempted to pre-

12   figure closings rather than address ourselves to legal

13   objections.

14           And I have some specific suggestions that the

15   Court might consider.  One, the parties have had discussions

16   about which issues we propose to argue to the Court, time

17   permitting.  And I would suggest that if the Court were to

18   find it helpful, that the parties submit those to the Court

19   tomorrow, sort of brief lists of the issues, so that the

20   Court can review them and ensure that they're consistent

21   with the Court's expectations and wishes about points that

22   might be argued.

23           Second, Your Honor, there's a question about how

24   to do the arguments.  I mean, one way is for each set of

25   plan proponents to present all of their arguments in one

1  continuous flow.  The other is issue by issue,

2  point/counterpoint.  And I would suggest that the Court may

3  wish to direct the parties to proceed issue by issue.  I

4  think that will make it a little more likely that -- rather

5  than a dramatic pre-figuring of closings, that we will

6  actually confine ourselves to what I believe to be the kind

7  of legal objections that the Court had in mind.

8          And those would be the suggestions that we would

9  make to the Court with respect to the contours of arguments

10  that I would anticipate could be presented, beginning on

11  Thursday afternoon.

12          THE COURT:  Any comment?

13          MR. GOLDEN:  Thank you, Your Honor.  Daniel

14  Golden, Akin Gump Strauss Hauer & Feld, counsel for Aurelius

15  Capital and the other noteholder plan proponents.

16          Your Honor, I rose this morning to ask what I

17  think was a similar question that Mr. Sottile just posed, so

18  asking the Court for some guidance in addition to addressing

19  the solicitation issue that Your Honor raised, the

20  Roweiss provisions in the respective plans, especially in

21  light of the recent WaMu decision, and now the third item

22  that Your Honor has suggested, loan-sharing provisions, what

23  other arguments from our respective plan objections would

24  the Court like us to raise.

25          And we've had discussion with each other.  We've

1    advised them what issues we intend to raise.  They've told

2    us what issues they intend to raise.  I guess I hear Mr.

3    Sottile asking for some relief from the list that we've

4    given them.  They know what we want to raise.  Now, he's

5    suggesting we give a list to the Court so that the Court can

6    weigh in.  We'll do it any way that the Court pleases, but I

7    want to make sure that the Court understands we have had

8    that conversation with the other side.  They know the

9    issues, at least from our perspective, that we intend to

10   raise.

11              I will say that I think Mr. Sottile may be a

12   little bit optimistic in terms of timing that we will

13   complete all of the issues that Your Honor has specifically

14   identified by lunchtime Thursday morning, to leave the rest

15   of the afternoon, but we'll see.  We'll try and go as

16   quickly as we can.  I don't think anybody wants to belabor

17   the arguments.  They are pretty well set forth in the

18   competing confirmation objections, so I assume that

19   discretion will be the better part of valor and lawyers will

20   try to be as brief as they can, but at the same time, trying

21   to make their points well understood for the Court.

22              So I guess I'll leave with, Your Honor, if you

23   want us to submit dueling lists of additional items that

24   each side wants to raise on Thursday, we'll do so, but I

25   think both sides pretty well know, at this point, what is

1   intended to be raised.

2              THE COURT:  Okay.  That would be helpful to me, I

3   think, if the parties could just submit something by -- in

4   letter form, by, say, noon tomorrow.  I do have a little

5   more time on the backend of Wednesday.  Thursday, we'll need

6   to end at 5:30, to give you some notion of timing there.

7              MR. GOLDEN:  I'm sorry, Your Honor.  Wednesday,

8   we're going to end at what time?

9              THE COURT:  I -- well, I'm -- I can leave that

10  open.  I have a little more flexibility tomorrow.

11             MR. SOTTILE:  Your Honor, I just wanted to follow

12  up.  Did the Court have a view on whether you'd like to

13  proceed issue by issue as between the noteholders and DCL

14  plan or sort of continuous stream?

15             THE COURT:  Probably issue by issue.  Probably.

16             MR. SOTTILE:  Thank you, Your Honor.  Your Honor,

17  I should add, as the Court, I think, was advised when we

18  concluded the first weeks, we -- of evidentiary hearings,

19  there are issues relating to documents that were not used

20  with witnesses or not moved in, and there are also issues

21  with deposition designations.  We are working with the

22  noteholder plan proponents to resolve those.  We've

23  exchanged proposals, and I hope that we will be in a

24  position, in the next few days, to make an agreed

25  presentation to the Court on how we will deal with those

1    additional issues needed to complete the record.

2              THE COURT:  All right.

3              MR. SOTTILE:  Thank you, Your Honor.

4              MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

5    Johnston of Dewey LeBoeuf on behalf of Oaktree and Angelo

6    Gordon.

7              Just one request for clarification on the

8    argument or discussion to be had about the loan-sharing

9    provisions that you said you were interested in.  It -- do I

10   take that to mean the sharing provisions in the credit

11   agreement that we have argued entitle credit agreement

12   lenders who would hold the non-avoided claim -- or who would

13   hold, then, avoided claim to share in any recoveries

14   delivered to credit agreement lenders who held a non-avoided

15   claim?

16             THE COURT:  Yes.  And to the noteholders, because

17   to the extent their distribution scheme depends upon the

18   outcome of the resolution of that issue, so I'd like to have

19   the parties spend a little time on that.

20             MR. JOHNSTON:  And to be clear, what -- I'll be

21   happy to set forth our views as to why -- how those

22   provisions work and why they work the way they are.  To my

23   knowledge, there's no one currently advocating the other

24   side of the position that we put out from the beginning:

25   that the provisions actually do result in sharing among the

1   credit agreement lenders.

2          THE COURT:  Understood.

3          MR. JOHNSTON:  Okay.  Thank you.

4          MR. LANTRY:  Good afternoon, Your Honor.  Kevin

5   Lantry on behalf of the debtors.

6          Two items have come up, since I spoke this

7   morning, about the agenda for tomorrow.  The first is

8   counsel for Deutsch Bank, which is item E on the list,

9   indicates that he has other obligations and won't be able to

10  be here and has asked that we move that to Thursday.  I

11  don't know, Mr. Adler, if you wanted to have any additional

12  comment on that.  I think he was indicating it would be a

13  very short presentation.

14         MR. ADLER:  Your Honor, for the record, David

15  Adler from McCarter & English on behalf of DBTCA.

16         We filed an objection that was different from the

17  noteholder proponents.  I don't expect argument would last

18  more than 10 or 15 minutes, and I would respectfully request

19  that I be permitted to make that argument on Thursday

20  morning, because I do have another issue that's going to

21  keep me from being in Court tomorrow morning.

22         THE COURT:  Well, let me ask you this.  Is it a

23  professional issue or a personal issue?

24         MR. ADLER:  It is a personal issue, Your Honor.

25         THE COURT:  All right.  Is there any objection?

1    (No audible response.)

2                THE COURT:  I hear none.

3                MR. ADLER:  Thank you, Your Honor.

4                MR. LANTRY:  Secondly, Your Honor, counsel for

5    Wilmington Trust has indicated that one of the issues that

6    was outstanding, based on something you said at the

7    disclosure statement hearing, regarding some of the

8    competing interests of holders of PHONES, and in particular,

9    how they would be treated in terms of the allowance of --

10   and priority of their claims, those that were tendered but,

11   by virtue of the bankruptcy filing, were not ultimately

12   consummated in terms of that tender.  And the question is,

13   should that be something that is addressed tomorrow, and can

14   counsel be here or be participating by phone?  And I turn it

15   over to Mr. Siegel.

16               MR. SIEGEL:  Your Honor, it -- your February 3,

17   2011 Order with regard to the -- it was an order partially

18   granting motion for estimation and classification of the

19   PHONES claims.  You'll recall, there was a dispute as to

20   whether the --

21               THE COURT:  Oh, I --

22               MR. SIEGEL:  -- amount of the PHONES --

23               THE COURT:  I think I remember, plainly speaking,

24   just kicking that can down the road.

25               MR. SIEGEL:  Right.  And the --

1            THE COURT:  Okay.

2            MR. SIEGEL:  The last order said that shall be

3  determined in connection with the hearing -- the

4  confirmation hearing.

5            THE COURT:  As Professor Black would say, it

6  sounds like something I would say.

7            MR. SIEGEL:  Right.

8  (Laughter)

9            MR. SIEGEL:  So the -- it was not on the agenda,

10  and so the issue came up whether or not that's something you

11  -- Your Honor wants addressed tomorrow --

12            THE COURT:  I do.

13            MR. SIEGEL:  -- or some other day.

14            THE COURT:  Well, you'll probably -- it'll

15  probably be both, but yes, tomorrow.  I had intended that

16  would be among the -- that group.

17            MR. SIEGEL:  Okay.  Thank you, Your Honor.

18            THE COURT:  Okay.  Anything further, before we

19  break?

20  (No audible response.)

21            THE COURT:  Okay.  We'll take a 30-minute break.

22  The Court stands in recess.

23  (Recess at 3:54 p.m. to 4:21 p.m.)

24            THE CLERK:  All rise.  Be seated, please.

25            THE COURT:  Mr. Zensky?

1          MR. ZENSKY:  Your Honor, for the record, David

2    Zensky, Akin Gump Strauss Hauer & Feld.  Thank you very much

3    for the break, Your Honor, and I can confirm that the

4    noteholders have no surrebuttal case that they seek to

5    present.

6          THE COURT:  All right.  Thank you.  Okay.  Well,

7    that having been said, am I to take it that -- I ask this

8    question with great trepidation -- the parties perceive no

9    particular use for Friday of this week?

10          MR. SOTTILE:  I believe that's the case, Your

11    Honor.

12          THE COURT:  Good thing I was sitting down, Mr.

13    Sottile.

14    (Laughter)

15          THE COURT:  Okay.  Anything else before we

16    adjourn for the day?

17    (No audible response.)

18          THE COURT:  Thank you all very much.  That

19    concludes the session.  Court will stand adjourned, and I

20    will see you at 10 o'clock tomorrow morning.

21      (Whereupon, at 4:22 p.m., the hearing was adjourned.)

22

1                          <u>CERTIFICATION</u>

2          I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter.

5

6

7   _____          <u>12 April 2011</u>

8   Shelley M. Kohr, Transcriber                    Date

                              /gbs

INDEX

| WITNESSES: | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| Mace Rosenstein | 23 | 59 | 91 | 98 | |
| Bernard Black | 109 | 117 | 118 | 124 | 149 |

| EXHIBITS | Identified | Admitted |
|---|---|---|
| Noteholder Plan Proponents: | | |
| FCC #22 & 23 | 20 | 21 |
| FCC #1331-1334 | 20 | 21 |
| FCC #2517 | 20 | 21 |
| Debtor: | | |
| #1331-1334 | 21 | 22 |
| #1403-1408 | 21 | 22 |
| #1418 | 21 | 22 |
| #1420 | 21 | 22 |
| #1425 & 1426 | 21 | 22 |
| #1428-1465 | 21 | 22 |
| #1486-1488 | 21 | 22 |
| #1497 | 21 | 22 |
| #1554 | 21 | 22 |
| #1556 | 21 | 22 |
| #1568 | 21 | 22 |
| #1570 | 21 | 22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **08-13141(kjc**(1) 1:5 | | **actually**(17) 17:19 31:24 32:4 65:9 74:15 76:2 85:9 86:16 90:2 100:13 115:9 120:6 121:17 135:14 199:1 204:6 207:25 | | **again**(51) 19:15 29:16 29:25 33:1 37:2 37:17 39:5 40:13 41:1 41:10 41:21 43:5 44:6 44:10 44:18 46:8 49:15 54:12 54:13 55:22 58:8 65:9 71:24 80:7 82:19 86:19 91:20 97:2 97:6 97:11 97:12 103:12 110: 115:4 117:16 120:2 135:11 142:10 152:11 152:19 153:11 154:7 154:20 160:14 161:2 168:9 172:1 179:9 186:22 201:17 201:21 | | **allowance**(1) 209:9 |
| **102(b)(7**(3) 128:20 137:22 138:13 | | | | | | **allowed**(11) 25:17 31:17 46:4 94:21 99:15 99:19 100:10 101:5 128:25 191:2 193:4 |
| **10b-5**(1) 75:4 | | | | | | |
| **2.1a**(i(1) 78:3 | | **adam**(1) 4:7 | | | | **allows**(1) 113:13 |
| **30-minut**(1) 210:21 | | **add**(2) 202:14 206:17 | | | | **almost**(2) 163:10 184:18 |
| **a.m**(4) 1:15 13:1 58:19 58:19 | | **addition**(6) 17:3 47:25 56:14 63:4 174:22 204:18 | | **against**(14) 13:18 19:11 45:23 88:14 128:21 129:22 137:8 138:7 144:24 145:13 146:23 161:16 169:7 193:22 | | **along**(4) 43:3 55:10 142:6 179:13 |
| **abandon**(1) 113:23 | | | | | | **already**(8) 13:12 19:9 45:22 46:20 56:20 58:11 110:22 198:15 |
| **abid**(2) 5:7 118:7 | | **additional**(9) 14:11 112:1 157:22 158:2 191:12 191:12 205:23 207:1 208:11 | | | | |
| **ability**(4) 120:4 126:6 127:19 130:1 130:10 135:3 135:3 153:4 164:3 | | | | **agency**(1) 32:9 | | **also**(68) 5:33 15:5 16:10 20:15 21:10 23:17 25:13 25:25 26:16 27:14 34:8 39:21 41:9 46:11 53:13 53:19 56:13 60:3 60:23 61:2 63:6 63:9 74:2 76:5 76:8 85:2 86:20 91:15 95:14 96:9 96:16 100:18 109:22 109:24 111:16 113:25 114:19 115:7 119:3 122:8 128:19 130:21 135:16 142:19 146:25 150:25 153:5 154:1 154:13 154:21 156:3 157:18 159:13 166:25 167:17 167:21 168:7 172:19 176:10 178:22 180:22 183:17 186:4 186:15 190:24 197:16 200:25 206:20 |
| **able**(8) 92:22 145:15 150:23 151:8 166:20 186:18 202:22 208:9 | | **address**(21) 13:25 14:2 14:24 27:12 29:18 37:3 51:11 52:19 65:11 67:13 124:9 124:12 124:16 137:15 137:18 167:14 184:25 200:25 202:10 202:19 203:12 | | **agenda**(2) 208:7 210:9 | | |
| | | | | **aggregate**(2) 134:16 154:5 | | |
| **about**(123) 13:10 13:20 13:25 14:11 15:9 15:23 17:17 20:9 20:22 27:12 30:7 31:1 33:10 35:4 35:25 40:22 43:14 45:20 46:20 46:22 48:16 48:24 56:20 56:21 57:20 63:18 63:20 63:21 64:6 64:25 66:3 68:9 69:22 70:11 71:4 74:19 75:21 75:22 76:9 76:11 81:5 84:10 93:15 95:16 95:19 96:9 97:3 97:17 98:12 99:8 99:12 100:13 101:25 102:8 102:18 103:20 104:3 104:16 105:23 106:11 109:13 109:16 110:6 113:15 114:2 114:23 115:2 116:11 116:17 119:25 120:2 125:23 126:12 126:16 126:25 130:2 130:6 133:5 134:10 135:22 137:2 137:19 139:13 139:22 140:25 141:6 142:24 146:8 147:14 147:24 152:10 153:3 155:7 158:22 160:18 162:14 167:25 168:10 170:23 174:17 175:9 183:2 183:9 186:18 189:14 190:20 195:18 196:12 196:13 196:18 196:20 197:16 198:17 200:2 200:24 200:22 201:4 202:4 203:16 203:21 203:23 207:8 208:7 | | **addressed**(12) 20:13 50:4 52:7 52:19 53:24 65:25 84:3 84:4 125:9 137:21 209:13 210:11 | | **aggregation**(1) 51:14 | | |
| | | | | **ago**(6) 43:14 51:8 119:24 120:22 126:15 166:10 | | **alternative**(5) 9:39 9:40 143:17 146:17 147:8 |
| | | | | | | |
| | | **addresses**(4) 47:8 74:25 124:10 124:13 | | **agree**(72) 17:18 27:10 38:6 39:2 39:15 43:10 45:1 47:4 47:14 50:9 50:24 53:4 53:10 60:11 60:15 61:3 61:9 61:10 62:21 62:24 62:25 63:4 66:14 70:22 72:21 72:23 73:1 74:24 75:2 75:3 75:11 76:18 77:5 77:10 80:4 83:5 83:6 86:25 89:16 93:8 100:9 104:21 105:3 105:4 121:16 129:9 132:7 133:23 152:7 156:8 157:17 159:16 167:17 167:21 168:7 169:19 173:19 174:1 177:7 182:3 183:20 183:22 183:24 184:6 184:16 186:4 186:9 186:21 188:9 188:13 189:9 190:12 | | **alternatives**(1) 124:14 |
| | | **addressing**(5) 13:24 14:15 92:15 202:22 204:18 | | | | **alters**(1) 194:1 |
| | | | | | | **although**(4) 34:4 53:9 73:8 117:16 |
| | | **adelman**(2) 5:26 8:17 | | | | **altogether**(1) 184:5 |
| | | **adequate**(1) 30:5 | | | | **alvarez**(1) 11:16 |
| | | **adjourn**(1) 211:16 | | | | **always**(3) 43:25 148:6 176:23 |
| | | **adjourned**(2) 211:19 211:21 | | | | **ambiguity**(2) 159:15 160:2 |
| | | **adjudicatory**(1) 31:23 | | | | **ameliorate**(1) 137:13 |
| | | **adjunct**(1) 31:15 | | | | **amended**(15) 14:18 35:23 36:2 55:21 65:3 94:6 94:7 149:12 150:4 150:12 151:7 166:23 167:5 172:1 199:5 |
| **above**(1) 75:7 | | **adjust**(3) 54:14 97:15 108:16 | | **agreed**(16) 19:18 65:22 69:6 69:10 69:15 69:18 79:25 81:3 82:25 105:21 164:23 167:12 169:10 181:6 189:13 206:24 | | |
| **above-entitled**(1) 212:4 | | **adjusted**(2) 42:22 201:17 | | | | |
| **academic**(5) 112:15 113:9 113:12 118:24 120:7 | | **adjusting**(2) 43:17 43:18 | | | | **amending**(1) 198:23 |
| | | **adjustments**(5) 15:18 44:20 48:6 56:13 120:11 | | **agreement**(30) 10:30 15:16 72:20 72:24 77:17 77:23 77:24 78:23 79:13 79:25 80:5 80:14 80:15 82:15 82:18 93:7 98:4 99:1 101:23 102:3 104:23 104:25 105:8 164:10 182:17 201:6 207:11 207:11 207:14 208:1 | | **amendment**(15) 56:12 56:13 128:10 133:2 137:20 149:11 156:6 156:6 156:16 157:3 157:9 157:12 157:22 159:13 160:23 |
| | | | | | | |
| **accept**(5) 27:22 28:5 62:10 75:10 194:14 | | **adler**(6) 4:40 208:11 208:14 208:15 208:24 209:3 | | | | **amendments**(19) 14:19 14:23 126:16 128:3 128:4 128:5 128:8 136:7 136:10 136:11 136:24 137:15 137:21 137:23 149:21 149:25 155:22 157:20 159:8 |
| **acceptable**(1) 200:1 | | | | | | |
| **accepting**(1) 41:1 | | | | | | |
| **accommodate**(1) 92:19 | | **administratior**(1) 165:7 | | **agreements**(1) 103:14 | | |
| **accommodation**(1) 105:23 | | **administrative**(4) 23:21 23:25 34:6 45:15 | | **agrees**(1) 78:23 | | **america**(2) 6:30 6:36 |
| **accompanied**(1) 55:17 | | **admission**(2) 21:3 22:7 | | **agudelo**(1) 9:16 | | **americas**(1) 2:30 |
| **accomplished**(1) 53:16 | | **admitted**(7) 21:5 21:7 22:13 22:17 125:2 125:4 213:19 | | **ahead**(6) 44:22 56:24 112:3 143:24 199:4 202:20 | | **amit**(1) 8:34 |
| **accordance**(3) 49:7 76:18 77:6 | | | | | | **among**(5) 22:2 90:13 95:10 207:25 210:16 |
| **accordingly**(1) 26:10 | | | | | | **amongst**(1) 19:15 |
| **account**(8) 38:2 52:14 86:22 101:18 101:24 146:25 195:13 195:22 | | **adopted**(2) 45:16 183:12 | | **akin**(10) 5:4 8:10 16:19 106:4 118:7 179:10 198:9 199:17 204:14 211:2 | | **amount**(7) 151:10 151:16 153:12 154:2 154:21 162:5 209:22 |
| | | **advance**(1) 198:7 | | | | |
| | | **advanced**(1) 128:24 | | | | |
| **accounting**(3) 118:12 119:12 119:13 | | **advantage**(3) 86:16 171:14 193:18 | | **all**(107) 13:4 13:7 15:4 16:11 17:11 17:24 18:23 19:18 21:21 22:13 25:8 31:24 36:1 41:4 45:7 49:13 52:12 52:21 57:12 58:20 72:24 73:18 78:24 79:14 80:15 84:4 89:22 91:21 91:22 93:14 99:6 99:21 100:13 100:16 102:4 102:6 103:15 103:24 104:5 104:10 104:18 105:12 106:2 107:15 109:11 111:2 114:7 115:7 118:2 123:10 123:12 125:2 128:4 128:8 133:9 137:15 138:9 139:2 139:7 144:16 145:1 145:5 145:10 145:23 147:24 148:10 148:11 148:21 153:156:18 158:22 158:24 164:24 167:9 169:22 170:1 171:12 174:22 179:2 180:20 183:11 183:23 188:6 191:10 192:21 192:2 193:8 193:8 193:15 193:17 195:3 195:6 197:8 197:12 197:15 198:10 198:20 200:8 201:15 202:6 203:25 205:13 207:2 208:25 210:24 211:6 211:18 | | **amounts**(1) 80:5 |
| **accurate**(3) 60:1 60:2 186:1 | | **adverse**(1) 129:20 | | | | **amplify**(1) 68:3 |
| **accurately**(1) 81:24 | | **adversely**(2) 39:11 165:12 | | | | **amy**(1) 10:6 |
| **achievable**(1) 137:11 | | **advise**(2) 16:10 74:11 | | | | **analogist**(1) 135:11 |
| **achieve**(2) 36:23 147:1 | | **advised**(4) 54:23 65:4 205:1 206:17 | | | | **analogous**(1) 197:20 |
| **achieved**(1) 192:5 | | **advisor**(10) 52:15 84:23 85:2 86:9 86:14 86:21 87:1 87:9 87:11 118:17 | | | | **analysis**(42) 27:7 45:6 51:24 54:20 58:4 58:5 61:19 89:21 91:22 109:19 109:23 110:20 112:11 112:14 112:16 112:25 113:2 113:3 113:4 113:5 113:8 113:10 113:16 113:19 113:24 113:25 114:3 114:10 116:24 117:15 117:17 122:15 122:25 123:17 123:20 143:7 145:18 145:23 186:16 188:3 195:14 195:23 |
| **achieving**(1) 197:19 | | | | | | |
| **acknowledge**(2) 156:3 164:14 | | **advisors**(5) 52:12 85:17 86:2 86:18 146:24 | | | | |
| **acknowledging**(1) 156:14 | | **advisory**(11) 23:20 118:21 172:17 172:19 173:4 173:12 173:22 174:9 174:9 177:25 176:4 176:16 | | | | |
| **acquisitions**(6) 110:8 115:8 115:9 115:11 115:14 116:16 | | **advocates**(1) 203:11 | | **allegation**(1) 90:12 | | **analyst**(1) 119:8 |
| | | **advocating**(1) 207:23 | | **allege**(2) 161:22 163:25 | | **analytically**(1) 37:6 |
| **act**(5) 44:2 103:4 116:19 172:13 173:22 | | **affect**(11) 28:1 39:11 41:4 41:5 41:16 96:13 126:5 144:13 157:3 158:7 165:12 | | **alleged**(2) 149:10 159:22 | | **analyze**(1) 192:1 |
| **acted**(2) 55:7 118:16 | | | | **alleviated**(1) 53:21 | | **analyzed**(1) 140:2 |
| **acting**(1) 170:16 | | **affected**(1) 148:12 | | **allinson**(1) 3:37 | | **analyzes**(1) 182:1 |
| **action**(7) 67:7 67:11 67:16 67:19 67:25 133:6 170:25 | | **affects**(1) 157:10 | | **allocated**(1) 81:13 | | **analyzing**(2) 191:22 191:24 |
| | | **affiliated**(3) 100:4 100:17 101:7 | | **allow**(5) 27:13 28:23 38:17 97:14 157:22 199:20 | | |
| **actions**(7) 48:22 55:4 55:6 67:20 129:14 130:24 171:13 | | **affirmative**(1) 80:9 | | | | |
| | | **afforded**(4) 64:18 102:4 102:24 103:2 | | | | |
| **active**(1) 51:6 | | **affords**(1) 54:13 | | | | |
| **activities**(2) 23:24 138:9 | | **after**(14) 14:8 64:12 67:24 73:12 96:6 99:2 99:6 105:17 106:7 107:4 107:11 130:19 146:11 201:21 | | | | |
| **acts**(2) 167:23 170:21 | | | | | | |
| **actual**(9) 142:18 142:20 143:2 143:19 143:19 143:25 144:4 144:5 180:19 | | **afternoon**(15) 106:3 106:23 108:5 109:4 109:5 109:14 117:9 118:10 140:23 179:9 202:25 204:11 205:15 207:4 208:4 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 13:9 13:10 13:12 13:16 13:18 13:24 14:4 14:4 14:4 14:9 14:10 14:11 14:19 14:20 14:21 15:3 15:5 15:11 15:11 15:17 15:19 16:8 16:20 16:23 17:15 17:16 17:17 17:20 17:21 18:10 18:12 18:13 18:19 19:1 19:2 19:10 19:11 19:19 19:22 20:9 20:15 20:17 20:19 21:6 21:11 21:15 21:17 22:4 22:5 22:8 22:16 22:24 23:3 23:11 23:13 23:15 23:17 23:19 23:19 23:21 24:1 24:6 24:6 24:8 24:10 24:11 24:14 24:17 24:18 24:18 24:20 24:21 24:21 24:23 25:15 25:18 25:19 25:22 25:25 26:5 26:7 26:16 26:16 26:18 26:21 27:7 27:8 27:9 27:10 27:11 27:13 27:16 27:22 28:4 28:4 28:11 28:16 28:20 28:20 28:22 28:25 29:8 29:8 29:12 29:16 29:18 29:22 29:23 29:23 29:25 30:4 30:8 30:14 30:18 30:22 31:3 31:11 31:19 31:24 32:9 32:9 32:13 32:19 33:3 33:6 33:10 33:20 33:25 34:4 34:5 34:10 34:15 34:19 34:21 34:25 35:3 35:7 35:14 35:22 36:4 36:14 36:16 36:18 36:20 36:24 36:24 36:25 37:20 37:21 37:25 38:2 38:3 38:8 38:10 38:12 38:13 38:17 38:20 39:2 39:7 39:8 39:10 39:15 39:17 39:20 39:24 40:1 40:3 40:8 40:8 40:12 40:16 40:21 41:6 41:10 41:16 41:25 42:1 42:7 42:9 42:11 42:14 42:16 42:19 42:22 42:22 43:23 43:44 43:5 43:6 43:7 43:22 44:1 44:8 44:9 44:13 44:15 44:17 44:19 44:23 45:5 45:15 45:17 45:22 45:23 46:2 46:4 46:5 46:8 46:12 46:25 47:4 47:8 47:16 47:19 47:21 48:2 48:5 48:9 48:13 48:16 48:21 49:2 49:15 49:20 49:24 50:5 50:5 50:9 50:11 50:12 50:14 50:19 51:1 51:7 51:14 51:17 51:17 51:19 51:20 51:21 51:24 52:7 52:11 52:19 52:22 52:24 52:24 52:25 53:12 53:13 53:16 53:17 53:19 53:25 54:5 54:6 54:8 54:11 54:13 54:16 54:22 55:4 55:11 55:14 55:14 56:2 56:6 56:14 56:16 56:20 57:20 57:25 58:4 58:9 58:24 59:2 59:3 59:22 60:3 60:5 60:8 60:8 60:12 60:23 61:6 61:12 61:24 62:3 62:4 62:6 62:10 62:13 62:14 62:18 62:23 63:4 63:5 | | **and**(301) 63:11 63:15 63:24 63:25 64:3 64:4 64:8 64:10 64:12 64:13 64:15 64:18 65:5 65:6 65:23 66:2 66:6 66:17 66:21 66:24 66:25 67:9 67:9 67:15 67:24 68:8 68:14 69:2 69:6 69:8 69:23 69:24 70:4 71:6 71:6 71:9 71:10 71:14 71:16 71:21 71:25 72:2 72:6 72:9 72:9 72:15 72:24 73:2 73:4 73:13 73:14 74:2 74:12 74:24 75:3 75:14 75:17 75:21 76:1 76:10 76:10 76:15 76:18 76:24 77:11 77:20 77:23 77:25 78:3 78:6 78:22 79:1 79:2 79:7 79:9 79:12 79:18 79:21 80:5 80:13 81:7 81:13 81:17 81:24 82:2 82:3 82:6 82:8 82:11 82:14 82:15 82:18 82:20 82:21 82:24 82:24 82:25 83:5 83:10 83:20 84:4 84:6 84:13 84:22 84:25 85:6 85:9 85:13 85:19 85:20 85:22 86:1 86:2 86:5 86:8 86:11 86:18 86:19 86:19 86:20 87:13 87:24 88:6 88:9 88:13 88:16 88:18 88:21 88:24 89:3 89:5 89:8 89:9 89:21 90:1 90:4 90:8 90:11 90:14 90:15 90:21 91:6 91:14 91:15 91:22 92:1 92:8 92:18 92:18 92:22 92:23 93:5 93:8 93:10 93:16 93:17 93:22 93:23 94:4 94:11 94:12 94:17 94:22 94:23 95:3 95:7 95:8 95:17 95:23 96:5 96:6 96:13 96:16 96:19 96:23 97:3 97:6 96:7 97:11 97:17 97:21 97:23 97:24 98:2 98:7 98:14 98:18 98:25 99:9 99:9 99:12 99:13 99:18 100:5 100:9 100:18 100:22 102:5 102:17 102:18 102:19 102:20 103:1 103:3 103:4 103:8 103:25 104:2 104:2 104:6 104:7 104:15 104:25 105:15 106:1 106:5 106:6 106:12 106:21 106:25 107:3 109:6 109:7 109:10 109:16 109:16 109:21 110:7 110:8 110:11 110:14 110:14 110:15 110:16 110:20 110:20 111:20 112:5 112:7 112:17 112:19 112:20 112:24 113:2 113:8 113:14 113:19 113:20 113:21 113:24 114:4 114:4 114:4 114:5 114:5 114:7 114:14 114:17 114:18 114:25 115:9 115:9 115:11 115:13 115:13 115:14 115:16 116:15 116:25 116:2 116:4 116:10 116:13 116:16 116:17 116:24 116:25 117:4 117:22 118:8 118:8 118:16 118:20 118:23 119:2 | | **and**(301) 119:4 119:5 119:6 119:9 119:11 119:11 119:16 119:20 119:25 120:2 120:1 120:17 120:17 120:22 120:24 121:2 121:7 121:19 121:19 121:25 122:1 122:1 122:3 122:5 122:10 122:10 122:15 122:15 122:15 122:18 122:25 123:2 123:7 123:17 123:17 123:20 123:20 124:9 124:10 124:24 125:9 125:14 125:22 126:6 126:6 126:8 126:16 126:19 126:22 126:24 127:3 127:4 128:2 128:8 128:15 128:16 128:18 128:24 128:25 129:3 129:8 129:8 129:9 129:11 129:13 129:16 129:16 129:24 130:7 130:10 130:13 130:20 130:22 131:3 131:5 131:7 131:16 131:17 131:18 131:19 131:23 132:1 132:4 132:5 132:11 132:11 132:12 132:14 132:15 132:14 132:12 132:16 132:16 132:17 132:24 133:17 134:13 134:15 134:19 134:19 135:5 135:9 135:10 136:9 136:14 136:17 136:24 137:4 137:12 137:18 137:21 137:22 138:5 138:5 138:6 138:14 138:17 139:13 139:16 139:17 140:1 140:9 141:3 141:14 141:20 141:22 142:2 142:6 142:9 142:13 142:22 142:23 142:24 143:4 143:7 143:8 143:20 144:6 144:12 144:16 144:17 144:22 145:1 145:14 145:17 146:2 146:7 146:13 146:15 146:18 146:23 146:24 146:24 147:3 147:4 147:5 147:11 147:13 147:24 148:17 148:19 148:22 149:11 149:15 149:20 149:24 149:24 150:10 150:13 150:18 150:20 150:22 150:25 151:4 151:1 151:19 151:23 152:2 152:11 152:19 152:20 152:25 153:3 153:6 153:9 153:11 153:18 153:20 154:7 154:11 154:13 154:22 155:8 155:10 155:15 155:25 156:21 156:22 156:23 157:1 157:4 157:4 157:11 158:1 158:1 158:5 158:5 158:7 158:11 158:21 159:2 159:3 159:14 159:16 159:19 160:4 160:14 160:17 160:21 160:22 161:4 161:10 161:14 161:22 162:9 162:9 162:11 162:17 162:18 162:20 162:25 163:4 163:5 163:23 163:11 163:12 163:15 163:15 163:19 164:23 165:9 165:14 165:18 166:7 166:13 166:20 166:24 166:25 167:10 167:14 167:21 167:23 168:5 168:6 168:9 168:12 168:13 168:20 168:24 168:24 168:25 169:3 169:5 169:20 170:4 170:6 170:8 171:8 171:15 171:16 171:21 172:3 172:3 172:12 172:17 172:25 173:3 173:4 173:14 173:19 173:20 173:22 174:5 174:7 174:9 174:16 174:22 175:1 175:2 | | **and**(153) 175:5 175:8 175:8 175:10 175:17 175:19 176:7 176:10 176:13 176:18 176:18 177:8 177:12 177:15 177:20 178:4 178:12 178:16 178:19 179:11 179:19 180:19 180:22 181:1 182:1 182:1 182:8 182:11 182:15 182:22 183:11 183:16 183:18 184:2 184:10 184:13 184:22 184:25 185:7 185:11 185:12 185:17 186:5 186:8 186:10 186:12 187:4 187:18 187:24 188:1 188:4 188:9 188:10 188:17 188:24 188:25 189:7 189:20 189:25 190:8 190:19 190:22 190:25 191:1 191:5 191:16 191:18 192:3 192:12 192:13 192:14 192:20 192:22 193:3 193:4 193:9 193:25 194:8 194:9 195:17 196:5 196:10 196:19 196:21 196:22 196:24 197:1 197:2 197:9 197:16 197:19 197:20 198:1 198:2 198:7 198:8 198:18 198:18 198:19 198:20 198:24 199:1 199:4 199:14 199:18 199:21 199:24 199:25 200:4 200:20 200:25 201:7 201:9 201:10 201:11 201:12 201:15 202:3 202:17 203:5 203:7 203:10 203:14 203:17 203:20 203:21 204:2 204:8 204:15 204:21 204:25 205:15 205:19 206:13 206:20 206:23 207:5 207:16 207:20 207:22 208:9 208:10 208:18 208:9 209:10 209:12 209:13 209:14 209:18 209:25 210:10 211:13 211:19 |
|  |  |  |  |  |  | **and/or**(3) 26:6 39:11 193:21 |  |
|  |  |  |  |  |  | **anderson**(1) 2:19 |  |
|  |  |  |  |  |  | **andrew**(6) 4:18 4:26 6:20 6:22 7:7 7:9 10:28 10:39 12:29 |  |
|  |  |  |  |  |  | **angeles**(3) 2:16 88:10 89:4 |  |
|  |  |  |  |  |  | **angelo**(59) 2:4 10:31 37:25 38:3 38:12 39:9 43:7 44:8 47:10 47:11 47:17 47:24 48:3 48:7 48:13 48:16 49:17 50:4 50:6 52:23 60:12 61:12 61:24 62:6 62:14 62:23 63:5 63:5 65:5 76:10 76:11 76:15 76:19 76:20 77:7 77:8 77:12 77:17 79:7 79:8 79:11 79:15 79:23 80:8 81:13 83:20 87:24 88:5 88:24 89:9 91:9 93:16 97:4 99:23 100:4 100:6 101:1 101:7 207:5 |  |
|  |  |  |  |  |  | **anna**(2) 7:43 7:43 |  |
|  |  |  |  |  |  | **anomalous**(1) 52:8 |  |
|  |  |  |  |  |  | **another**(8) 25:8 116:5 120:2 161:22 171:15 176:19 190:8 208:20 |  |
|  |  |  |  |  |  | **answer**(24) 17:5 30:18 41:8 42:20 49:6 68:13 68:15 70:8 71:14 71:15 71:15 71:22 74:12 81:18 81:21 82:6 98:12 117:19 141:3 181:21 184:22 184:23 185:17 185:17 |  |
|  |  |  |  |  |  | **anticipate**(3) 106:10 202:21 204:10 |  |
|  |  |  |  |  |  | **anticipated**(1) 16:4 |  |
|  |  |  |  |  |  | **any**(97) 13:10 14:15 18:4 20:21 21:19 23:21 26:8 27:12 40:24 41:12 43:14 46:13 48:6 49:24 49:24 54:19 56:13 56:15 57:2 58:13 59:23 63:7 69:3 69:15 70:3 74:11 75:5 75:5 77:11 80:3 90:24 91:2 94:22 95:10 95:11 99:22 100:5 102:23 104:17 105:5 105:18 109:10 111:24 117:20 118:11 118:16 118:17 118:20 119:5 119:11 119:13 122:7 122:10 124:16 127:18 132:3 137:20 138:6 140:13 147:24 148:9 155:22 156:5 156:16 158:16 158:21 158:22 162:4 162:9 167:24 169:16 169:22 169:23 170:10 170:12 171:16 174:22 176:23 178:19 181:8 182:19 186:11 193:20 193:23 195:21 196:11 197:2 197:12 199:8 199:13 199:20 204:12 205:6 207:13 208:11 208:25 |  |
|  |  |  |  |  |  | **anybody**(5) 14:5 18:13 31:2 131:2 205:16 |  |
|  |  |  |  |  |  | **anyone**(5) 107:10 117:15 117:20 139:4 190:19 |  |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **anything**(15) 13:5 31:1 83:16 83:16 98:2 124:12 139:20 141:1 143:7 147:13 200:8 200:18 202:1 210:18 211:15 | | **are**(198) 13:17 14:1 14:22 14:22 15:6 18:2 18:4 18:6 18:20 18:25 20:22 21:22 22:8 23:10 27:16 28:8 28:17 30:8 33:22 34:14 34:19 35:7 35:15 36:1 36:8 36:20 37:21 38:13 39:20 39:22 40:2 40:2 41:2 41:2 41:11 43:7 44:18 44:20 45:22 46:1 46:10 46:11 46:18 51:13 51:17 51:19 51:19 54:5 54:6 54:16 55:24 58:10 59:22 61:22 62:3 63:10 64:4 64:20 65:10 65:11 65:25 66:2 66:15 69:17 70:4 70:10 70:14 70:19 73:2 73:6 73:12 74:16 74:25 75:14 78:7 79:5 81:13 81:14 82:16 83:4 83:10 83:21 84:1 84:22 87:2 87:5 87:15 87:16 87:25 89:6 89:12 90:15 90:22 94:17 96:2 96:24 99:18 101:23 102:4 102:15 102:22 104:14 104:22 107:7 107:19 111:15 111:1 113:4 113:9 115:2 115:12 119:8 119:25 122:11 122:24 122:25 123:1 124:14 126:12 127:25 128:12 130:13 130:14 131:10 131:23 132:1 132:15 133:22 134:21 135:5 136:11 136:24 137:11 137:24 137:24 141:21 142:2 142:6 142:11 142:12 143:14 143:15 144:2 144:6 144:6 144:17 145:7 145:10 145:11 145:14 150:10 150:16 150:24 150:25 152:20 154:25 156:14 157:5 157:6 161:6 161:9 162:3 164:16 169:16 170:25 171:1 171:4 171:22 172:12 176:24 177:18 181:19 182:6 182:7 182:8 182:10 182:19 183:23 184:2 184:23 184:4 188:5 188:10 188:14 188:20 193:2 194:20 198:2 198:22 198:23 199:2 199:19 202:5 205:1 206:19 206:20 206:21 207:22 | | **ask**(50) 14:4 15:22 51:2 53:23 63:18 63:24 64:24 66:14 68:21 71:4 71:10 74:5 74:15 76:11 77:23 80:1 81:5 81:8 81:11 82:10 88:3 93:24 99:9 102:11 103:15 103:21 103:22 104:2 104:2 104:16 104:16 109:13 109:14 114:22 125:7 125:18 129:15 134:14 139:3 141:3 147:9 169:15 182:14 196:11 196:18 199:19 199:22 204:16 208:22 211:7 | | **attributable**(89) 27:25 29:8 30:14 30:15 30:21 30:25 31:2 31:6 31:7 31:8 31:18 33:25 34:4 34:10 34:15 34:19 35:19 37:4 38:13 43:16 43:25 44:20 45:25 46:25 47:11 47:18 50:6 50:13 50:22 52:18 53:2 53:10 53:16 54:1 54:5 54:7 54:25 56:14 56:14 60:12 60:13 60:16 60:19 60:24 61:13 62:12 65:12 65:15 65:20 65:22 69:23 69:24 70:16 70:18 70:20 71:14 73:11 74:14 76:21 77:9 79:16 81:1 81:10 81:17 81:20 82:5 83:8 83:21 84:2 84:16 84:17 89:19 89:25 90:17 90:22 91:11 91:25 92:18 92:19 93:12 95:20 96:3 97:7 100:11 101:10 101:20 103:10 105:2 160:18 |
| **anyway**(2) 132:6 143:24 | | | | | | |
| **anywhere**(1) 169:20 | | | | | | |
| **apologize**(1) 173:11 | | | | **asked**(23) 14:7 81:7 82:3 95:14 95:16 96:9 97:2 97:17 99:18 105:22 115:17 135:13 138:17 162:16 185:12 195:17 196:13 196:19 196:20 197:16 198:16 202:23 208:10 | | **attribution**(20) 30:8 30:8 31:4 33:2 33:11 34:2 34:8 36:20 37:16 38:18 41:9 42:19 42:22 51:5 51:9 51:10 73:15 85:9 89:22 102:1 |
| **appeal**(1) 113:19 | | | | | | |
| **appear**(2) 24:11 40:6 | | | | | | |
| **appearances**(8) 5:40 6:2 7:1 8:2 9:2 10:1 11:2 12:1 | | | | | | **audible**(3) 13:6 179:1 209:1 210:20 211:17 |
| **appears**(1) 52:3 | | | | **asking**(8) 69:17 99:12 102:8 141:1 148:11 186:18 204:18 205:3 | | **audit**(1) 114:15 |
| **appellate**(1) 27:19 | | | | | | **aurelius**(19) 5:4 8:5 8:6 16:20 20:6 106:5 118:8 176:1 176:4 176:6 176:7 176:11 176:14 176:17 176:20 176:21 179:11 199:18 204:14 |
| **apple**(2) 188:11 188:13 | | | | **asks**(1) 74:10 | | |
| **applicable**(5) 84:18 84:20 84:21 88:19 194:2 | | | | **aspect**(1) 194:9 | | |
| | | | | **aspects**(1) 146:15 | | |
| **applicant**(1) 74:10 | | | | **assert**(3) 128:8 160:3 169:9 | | **austin**(5) 1:23 7:15 21:9 108:6 195:9 |
| **applicants**(1) 74:17 | | | | **asserted**(1) 189:22 | | **authorities**(1) 18:3 |
| **application**(14) 27:3 33:3 34:22 38:25 39:12 47:22 48:1 54:9 65:4 74:3 74:5 74:15 99:3 99:6 | | | | **assertion**(1) 162:10 | | **authority**(3) 87:1 87:9 170:6 |
| | | | | **assess**(3) 123:6 147:24 169:4 | | **available**(3) 37:12 202:25 203:7 |
| | | | | **assesses**(1) 141:19 | | **ave**(3) 1:36 2:15 5:35 |
| **applications**(23) 27:16 27:20 28:9 28:12 28:13 28:20 29:2 29:6 33:13 38:22 41:18 45:3 45:22 53:14 53:20 56:12 74:17 74:22 75:17 75:21 75:22 87:22 96:14 | | | | **assessing**(7) 112:22 121:1 122:1 124:18 136:4 146:16 147:7 | | **avenue**(2) 2:30 3:13 4:34 5:21 |
| | | | | | | **average**(2) 121:21 192:21 |
| **applied**(1) 51:23 | | | | **assessment**(5) 113:3 142:2 187:23 191:19 192:1 | | **averse**(2) 161:12 174:21 |
| **applies**(4) 13:10 30:10 52:2 85:4 | | | | | | **avoidance**(5) 144:24 145:21 190:9 190:15 190:24 |
| **apply**(11) 27:21 46:14 52:17 85:16 96:16 115:6 115:7 150:22 155:6 182:22 184:21 | | **area**(21) 109:19 109:25 110:7 110:12 110:23 112:10 112:12 112:13 112:15 113:10 114:23 116:1 116:10 116:12 116:2 121:10 140:21 141:6 141:7 191:11 196:9 | | **asset**(3) 174:24 187:25 188:3 | | |
| | | | | **assets**(17) 25:9 115:16 133:15 133:16 135:15 135:20 154:17 154:24 154:24 154:25 155:1 170:21 171:1 171:4 175:7 175:16 175:18 | | **avoided**(3) 18:14 65:1 207:13 |
| **applying**(1) 30:17 | | | | | | **aware**(25) 20:13 32:21 32:23 61:22 62:3 69:18 73:6 83:10 84:22 87:5 89:6 90:21 90:24 150:10 150:16 150:17 150:25 158:21 158:25 159:6 162:3 162:8 167:7 169:15 169:21 |
| **appoint**(7) 63:1 63:5 63:6 63:15 74:12 74:13 88:6 | | | | **assign**(1) 142:4 | | |
| | | | | **assigned**(2) 36:19 153:21 | | |
| | | **areas**(12) 110:16 110:19 111:13 111:16 111:23 112:2 116:18 125:1 179:22 181:24 183:7 184:8 | | **assignee**(1) 29:7 | | |
| **appointed**(6) 62:19 172:9 176:4 176:20 176:24 177:6 | | | | **assignment**(5) 28:16 29:9 120:1 120:3 | | **away**(9) 32:5 33:21 132:16 137:7 138:12 138:20 152:6 152:9 153:5 |
| | | | | **assist**(2) 74:16 160:4 | | |
| | | **aren't**(4) 128:19 128:22 128:23 132:5 | | **associate**(1) 24:6 | | **awfully**(1) 133:13 |
| **appointments**(1) 63:7 | | **argue**(6) 129:16 157:13 164:8 188:24 194:9 203:16 | | **associated**(11) 38:24 91:10 153:23 154:2 161:6 161:23 162:4 164:1 168:2 175:22 175:23 | | **back**(24) 15:11 16:7 19:11 28:4 32:3 32:17 43:3 43:13 54:12 64:1 78:16 92:18 99:10 106:13 112:10 112:20 122:6 123:3 129:9 145:14 151:10 175:8 200:5 200:21 |
| **appreciate**(3) 64:7 179:19 201:24 | | | | | | |
| **approach**(13) 17:20 19:5 19:22 23:2 43:15 58:25 108:8 108:18 113:20 143:12 148:22 182:12 185:3 | | **argued**(4) 188:24 202:7 203:22 207:11 | | **assume**(14) 16:24 17:2 54:3 60:2 115:15 152:19 154:7 159:19 161:4 166:18 186:15 186:19 192:12 205:18 | | |
| | | **arguing**(1) 164:3 | | | | |
| | | **argument**(12) 62:15 68:1 118:3 145:9 145:17 164:12 164:15 164:18 164:24 165:1 165:2 165:15 165:25 166:1 166:3 166:4 166:5 189:3 189:7 207:8 208:17 208:19 | | | | **backed**(1) 164:21 |
| | | | | **assumed**(2) 18:4 193:22 | | **backend**(1) 206:5 |
| **approaching**(4) 120:23 151:19 151:23 | | | | **assuming**(3) 14:7 54:7 95:14 | | **background**(2) 115:11 116:12 |
| **appropriate**(5) 113:6 117:18 125:1 190:2 192:3 | | | | **assumption**(6) 40:7 149:25 161:25 172:15 172:16 189:15 | | **bad**(2) 133:10 133:13 |
| | | **arguments**(12) 42:11 42:15 90:8 164:17 194:15 201:2 201:14 203:24 203:25 204:9 204:23 205:17 | | | | **baiera**(1) 10:32 |
| **appropriately**(1) 36:22 | | | | **assure**(1) 44:2 | | **baked**(1) 38:16 |
| **approval**(25) 27:3 35:2 43:9 56:22 64:17 66:18 66:22 98:10 102:23 127:13 127:14 133:20 162:5 162:6 162:12 162:18 163:8 163:9 174:5 197:17 198:2 198:3 198:8 198:9 201:6 | | | | **asylum**(1) 3:33 | | **balance**(5) 122:11 122:14 122:17 144:8 187:23 |
| | | **arise**(4) 31:7 44:1 63:20 64:21 | | **atamian**(1) 8:36 | | |
| | | **arising**(1) 167:9 | | **attach**(2) 135:3 169:4 | | **balance-sheet**(2) 187:18 187:22 |
| **approvals**(1) 162:13 | | **around**(4) 35:9 76:6 189:20 191:5 | | **attempt**(1) 142:2 | | **bale**(1) 5:44 |
| **approve**(5) 27:2 45:17 137:20 174:18 201:18 | | **arps**(1) 7:34 | | **attend**(3) 24:8 93:3 180:22 | | **banc**(3) 4:32 10:17 19:3 |
| | | **arrangement**(2) 87:4 92:25 | | **attended**(1) 24:9 | | **bank**(12) 6:30 6:36 8:21 8:29 9:25 10:9 12:9 12:9 31:1 51:7 170:10 208:8 |
| **approved**(8) 27:14 35:14 38:5 48:5 56:19 79:9 97:9 97:16 | | **arrangements**(2) 101:1 101:18 | | **attention**(6) 42:4 85:19 95:3 155:11 171:17 172:2 | | |
| | | **arranging**(1) 163:10 | | | | **bankruptcy**(17) 1:1 1:19 82:12 116:20 124:15 136:5 136:23 166:16 166:18 167:8 167:13 167:17 167:20 172:10 177:18 182:21 209:11 |
| **approving**(4) 29:9 94:5 161:17 161:24 | | **arrived**(1) 19:25 | | **attenuated**(3) 152:22 152:25 153:8 | | |
| **approximately**(1) 149:16 | | **arriving**(2) 77:15 149:11 | | **attorney**(1) 75:8 | | |
| **april**(4) 1:14 13:1 73:7 212:7 | | **arthur**(1) 10:14 | | **attorney's**(1) 166:20 | | |
| | | **article**(1) 116:3 | | **attractive**(1) 57:13 | | **banks**(21) 86:2 133:22 144:23 145:5 145:8 145:14 150:25 169:10 170:11 170:13 170:16 171:10 171:20 172:19 174:13 177:4 177:6 188:11 188:24 190:6 190:21 |
| | | **articulated**(2) 149:7 151:13 | | | | |
| | | **ashby**(1) 5:19 | | | | |
| | | **ashley**(1) 4:19 | | | | **bar**(1) 19:12 |
| | | **aside**(4) 19:12 77:4 134:10 193:20 | | | | **barclays**(2) 2:28 8:33 |

| Word | Page:Line |
|---|---|
| baron(7) | 181:2 191:13 195:12 195:13 195:21 195:24 196:12 |
| barone(1) | 105:24 |
| baron's(2) | 180:17 196:3 |
| barred(1) | 107:9 |
| based(27) | 16:3 16:8 17:2 40:14 43:15 45:24 60:20 64:16 66:17 68:7 68:25 71:1 71:25 81:3 96:24 98:6 106:10 120:10 122:14 122:15 122:15 150:12 150:13 155:19 155:25 157:2 209:6 |
| bases(1) | 84:1 |
| basic(1) | 56:15 |
| basically(1) | 127:25 |
| basis(15) | 31:22 32:15 46:2 47:19 47:20 48:19 50:1 52:1 57:7 89:18 90:16 90:22 92:5 94:8 167:19 |
| baskets(2) | 28:15 29:4 |
| battle(1) | 198:4 |
| bayes(1) | 3:26 |
| bayles(1) | 10:20 |
| bear(2) | 167:24 185:2 |
| bearing(1) | 33:12 |
| beat(1) | 131:19 |
| became(1) | 93:1 |
| because(57) | 15:22 27:4 28:2 33:22 43:24 44:23 46:14 47:11 47:17 49:21 50:6 50:12 50:23 53:9 64:1 66:10 67:19 75:7 78:16 79:18 84:17 86:12 90:10 90:13 91:20 97:11 97:12 100:19 105:23 115:10 117:18 126:24 130:25 136:25 137:3 143:19 143:2 145:14 151:24 154:25 158:1 158:12 164:21 170:19 177:11 177:14 180:23 186:15 191:5 191:16 192:12 194:1 197:25 198:3 199:2 207:16 208:20 |
| become(2) | 37:14 126:22 |
| becomes(3) | 143:18 143:25 152:22 |
| bedrock(1) | 30:2 |
| been(33) | 20:12 25:10 32:7 34:18 36:11 36:22 40:9 45:14 59:17 67:24 70:13 76:2 92:15 93:14 96:4 107:15 110:16 111:6 117:14 117:20 117:22 118:20 119:1 120:17 122:9 125:23 131:18 131:21 150:17 177:18 177:20 183:8 211:7 |
| before(44) | 1:18 16:1 18:12 19:20 23:16 24:4 24:14 25:7 27:21 32:9 33:20 34:23 38:25 40:22 40:25 42:23 43:21 48:13 50:13 64:24 69:22 76:16 78:18 99:2 103:12 109:14 109:16 117:3 119:21 129:1 138:15 149:12 160:20 163:8 163:16 174:3 177:20 178:7 190:21 200:8 200:18 202:1 210:18 211:15 |
| beg(1) | 20:16 |
| begin(5) | 13:23 19:20 20:2 58:23 193:12 |
| beginning(7) | 42:6 75:24 76:2 179:20 185:12 204:10 207:24 |
| begins(1) | 64:9 |
| behalf(8) | 17:13 20:6 108:6 118:8 195:10 207:5 208:5 208:15 |
| behave(1) | 168:11 |
| behavior(2) | 133:24 168:20 |
| behind(11) | 25:19 26:21 33:1 35:23 37:21 52:21 55:15 55:21 93:22 120:11 180:5 |
| being(19) | 15:25 18:4 20:8 27:17 37:5 88:15 111:4 123:13 141:6 142:14 152:12 153:19 164:11 178:23 182:24 191:22 192:197:20 208:21 |
| belabor(1) | 205:16 |

| Word | Page:Line |
|---|---|
| believe(55) | 26:21 31:24 33:3 36:22 38:14 40:13 40:24 41:2 46:10 53:12 56:25 58:1 64:4 71:16 73:24 76:8 79:17 81:21 83:15 85:12 88:16 88:18 91:10 97:24 99:4 99:23 111:9 111:21 117:10 121:3 125:19 128:5 142:13 157:21 158:5 161:6 161:11 168:1 168:10 174:17 174:20 175:5 176:9 176:15 176:19 179:6 181:13 181:16 182:21 183:17 192:3 194:2 196:10 204:6 211:10 |
| believed(4) | 31:19 166:14 181:8 184:9 |
| believes(3) | 45:8 45:20 46:17 |
| below(2) | 79:2 143:3 |
| ben(2) | 3:9 8:40 |
| bench(1) | 23:3 |
| benchmark(18) | 42:19 51:9 51:10 51:13 51:14 51:17 51:19 52:2 52:5 52:6 52:10 52:14 52:16 52:16 86:15 86:16 86:23 86:24 |
| bendernagel(10) | 1:25 105:15 105:20 106:1 106:20 107:3 107:12 107:18 107:21 107:24 |
| beneficial(6) | 161:1 169:8 169:9 173:24 174:10 174:19 |
| beneficially(3) | 78:25 79:14 80:16 |
| beneficiaries(3) | 171:12 171:14 171:22 |
| benefits(1) | 32:6 |
| bennett(1) | 2:13 |
| benson(1) | 11:32 |
| bernard(4) | 108:7 108:15 108:21 213:8 |
| bernstein(1) | 3:7 |
| beron(17) | 109:7 124:10 139:20 139:25 140:7 141:1 142:4 142:22 143:7 143:21 144:16 144:25 145:4 145:19 146:1 146:15 146:21 |
| beron's(5) | 139:17 140:10 143:11 145:18 145:23 |
| best(5) | 13:13 17:20 18:21 129:18 175:15 |
| better(10) | 14:19 107:16 129:9 130:4 146:8 156:4 157:8 159:11 168:11 205:19 |
| between(22) | 15:16 34:9 43:16 49:24 72:3 72:13 87:4 92:18 94:22 121:24 126:7 144:16 159:1 171:22 184:20 187:4 196:21 197:1 201:6 203:2 203:4 206:13 |
| beyond(10) | 42:18 83:16 103:25 106:11 120:11 120:15 121:20 122:4 180:18 196:5 |
| bible(1) | 108:14 |
| bid(1) | 25:9 |
| bidding(1) | 25:8 |
| bifurcating(1) | 61:19 |
| big(1) | 129:8 |
| bigelow(1) | 10:42 |
| bigger(1) | 171:23 |
| billion(2) | 135:20 150:14 |
| binder(25) | 25:20 26:22 55:14 55:21 58:23 63:25 64:3 71:5 77:20 77:22 81:7 82:11 82:20 93:23 99:10 102:12 102:13 102:14 124:23 155:8 155:9 166:22 180:2 180:6 185:6 |
| binders(3) | 37:22 108:8 148:23 |
| bird(1) | 146:12 |
| bit(13) | 17:21 19:19 44:23 112:13 113:14 114:8 115:1 116:11 160:25 162:16 201:1 201:22 205:12 |
| bites(2) | 188:11 188:12 |
| blabey(1) | 9:31 |
| black(31) | 105:16 105:23 106:24 108:8 108:15 108:21 109:4 110:11 110:19 112:1 114:22 116:23 118:10 123:19 124:6 125:7 125:22 134:6 138:15 139:3 139:12 141:13 148:11 156:12 160:12 165:5 195:9 195:10 196:18 210:5 213:8 |
| black's(3) | 124:22 147:20 147:21 |

| Word | Page:Line |
|---|---|
| blake(1) | 2:6 |
| block(7) | 10:27 127:19 127:22 132:25 160:5 164:3 173:23 |
| board(82) | 2:35 7:33 48:12 50:7 50:12 50:15 50:19 53:13 52:18 62:19 63:1 63:2 63:16 71:1 72:5 72:15 72:17 73:12 73:23 73:24 74:4 74:12 74:13 76:15 76:20 77:7 78:1 78:5 78:7 79:9 79:14 79:12 80:24 81:9 81:12 82:21 82:22 83:6 88:7 89:13 89:18 90:10 90:14 90:14 90:21 91:6 91:15 92:22 92:23 92:24 93:2 93:3 94:20 96:7 98:23 99:1 99:14 99:20 101:3 102:25 126:8 128:14 131:3 133:9 138:15 159:9 164:11 172:17 172:19 173:5 173:12 173:25 174:9 175:25 176:1 176:4 176:16 176:24 177:7 198:2 198:15 |
| boards(2) | 163:11 197:20 |
| boccasini(1) | 9:26 |
| book(1) | 115:8 |
| bordering(1) | 141:6 |
| borderline(1) | 151:24 |
| botch(1) | 166:7 |
| both(33) | 13:12 13:18 14:2 14:3 14:14 16:23 17:1 17:25 18:21 19:4 24:5 28:2 29:4 31:11 32:8 40:8 61:14 93:16 110:15 114:16 115:13 116:2 132:18 142:11 144:1 146:11 157:13 162:13 163:12 167:14 198:9 205:25 210:15 |
| bother(1) | 178:19 |
| bottom(4) | 123:4 163:19 178:16 185:12 |
| bottom-line(3) | 179:21 179:25 180:13 |
| bound(2) | 44:20 52:21 |
| bowden(1) | 5:20 |
| brandywine(1) | 2:7 |
| brass(1) | 9:37 |
| breach(3) | 164:5 164:13 175:20 |
| breached(1) | 174:14 |
| breaching(1) | 104:13 |
| break(21) | 13:20 58:16 58:18 61:20 65:10 106:13 106:22 106:25 107:3 107:11 107:2 202:1 210:19 210:21 211:3 |
| breaking(1) | 106:19 |
| brett(1) | 7:21 |
| brian(1) | 11:19 |
| bridge(3) | 151:1 151:2 151:9 |
| brief(3) | 179:7 203:19 205:20 |
| briefing(6) | 153:19 155:9 200:25 201:5 201:13 201:17 |
| briefly(11) | 13:8 28:11 29:16 29:25 109:18 109:24 112:11 136:9 200:19 200:21 200:2 |
| briefs(4) | 15:10 201:8 201:9 201:11 |
| brigade(2) | 6:40 6:41 |
| bring(8) | 13:11 68:8 129:8 150:18 150:23 164:20 165:18 175:17 |
| brings(1) | 45:19 |
| broad(3) | 128:14 155:22 165:7 |
| broadcast(7) | 25:16 26:7 29:20 30:6 33:6 39:10 75:19 |
| broader(1) | 159:12 |
| brockius(1) | 10:17 |
| brown(2) | 3:31 8:33 |
| bruce(1) | 2:13 |
| bryant(1) | 5:8 |
| buckman(1) | 5:14 |
| building(1) | 2:7 |
| bullet(5) | 44:24 47:8 141:13 143:4 144:19 |
| bunch(1) | 20:9 |
| bunches(1) | 201:21 |
| buonome(1) | 2:36 |
| burling(2) | 23:11 60:1 |
| burns(1) | 9:41 |

| Word | Page:Line |
|---|---|
| busath(1) | 3:8 |
| bush(2) | 6:19 146:13 |
| business(15) | 45:12 109:22 112:18 113:21 113:21 118:21 126:4 126:13 126:24 129:3 130:3 130:24 131:1 132:24 187:3 |
| businesses(2) | 115:16 120:14 |
| but(141) | 14:6 16:4 16:15 16:16 17:18 18:8 18:12 18:14 18:19 19:17 19:24 21:12 28:14 30:18 31:19 34:8 35:24 37:6 38:15 40:1 41:9 43:1 46:11 52:14 55:23 62:10 64:6 64:19 65:18 68:3 68:10 70:23 71:24 73:9 73:19 75:8 75:9 76:22 81:14 84:19 86:20 86:22 88:25 89:25 90:16 93:3 95:17 95:25 100:2 101:23 104:3 105:3 105:10 106:2 107:13 107:14 109:14 111:3 113:17 117:19 120:3 120:6 123:2 123:19 127:14 128:6 129:7 130:5 133:12 135:20 137:8 137:12 138:11 140:3 141:25 142:1 142:12 142:19 143:24 144:3 145:18 146:14 147:22 151:7 151:20 151:22 152:13 152:13 152:25 153:24 155:3 156:3 158:15 158:15 158:25 159:11 164:12 164:19 165:8 165:8 165:18 166:4 166:18 169:8 170:1 170:23 171:6 171:12 171:18 172:21 174:19 176:5 176:16 178:22 180:24 181:23 182:25 184:16 185:19 186:7 187:3 187:21 188:6 188:13 191:8 192:12 193:2 193:3 193:18 194:14 194:16 196:2 200:20 201:22 205:6 205:15 205:20 205:24 209:10 210:15 |
| button(1) | 41:21 |
| buy(2) | 127:12 128:25 |
| buyer(1) | 25:5 |
| buyout(1) | 188:20 |
| buyouts(3) | 10:8 116:14 116:17 |
| bynum(1) | 11:6 |
| calendar(1) | 201:22 |
| call(12) | 22:18 31:9 33:21 43:19 85:19 113:11 128:17 134:22 142:1 154:4 184:21 200:5 |
| called(8) | 20:8 28:6 51:4 54:25 126:16 163:24 188:18 193:1 |
| calls(3) | 46:7 47:23 145:18 |
| came(2) | 18:11 210:10 |
| campanario(1) | 7:36 |
| can(90) | 14:22 19:5 19:19 28:11 31:7 32:2 33:6 33:7 37:2 37:12 37:14 37:15 38:9 41:22 42:6 43:25 49:12 53:16 60:2 60:18 63:24 64:21 69:1 69:2 70:9 71:14 83:22 92:14 103:3 103:21 104:1 104:10 105:21 107:14 112:16 115:1 118:13 132:18 132:20 133:7 133:17 133:19 134:9 136:9 137:1 138:5 141:15 142:15 143:13 145:3 145:10 145:25 147:17 152:7 152:25 153:9 154:8 154:10 154:11 156:9 159:21 160:9 160:13 168:4 172:4 172:25 174:15 176:15 179:24 181:13 181:21 184:7 184:21 184:22 188:16 189:11 189:21 190:15 194:18 194:22 201:3 203:20 205:5 205:16 206:20 206:9 209:19 209:24 211:3 |
| can't(8) | 62:9 70:6 105:3 107:4 131:9 137:3 153:18 153:20 |
| cannot(2) | 176:7 176:13 |
| cantigny(1) | 12:18 |
| cantor(1) | 6:31 |
| canyon(2) | 12:12 12:12 |
| can't(3) | 184:23 191:5 194:12 |
| capacity(2) | 170:8 170:16 |
| capital(22) | 5:42 5:42 6:40 6:41 8:5 8:6 9:40 9:40 12:4 12:5 12:40 12:40 16:20 30:5 121:22 122:14 182:23 182:25 187:9 187:14 187:15 204:15 |
| caption(1) | 73:19 |
| capturing(1) | 165:24 |

| Word | Page:Line |
|---|---|
| care(1) 18:18 | |
| career(5) 118:17 119:17 120:18 121:14 177:17 | |
| careful(1) 196:11 | |
| carefully(1) 39:24 | |
| carey(1) 1:18 | |
| caridas(1) 6:22 | |
| carlyle(1) 4:32 | |
| carol(1) 5:44 | |
| carried(1) 113:8 | |
| carroon(1) 2:19 | |
| carry(4) 113:5 185:21 186:12 187:25 | |
| carve(1) 170:16 | |
| case(93) 1:5 11:22 13:9 13:11 13:13 13:18 26:14 29:5 29:7 31:8 31:22 31:22 32:15 32:15 32:21 32:23 33:12 37:12 41:7 43:14 45:10 51:12 52:11 53:9 58:2 62:11 63:3 69:9 73:7 73:8 73:9 73:16 73:16 77:16 81:4 89:12 89:14 89:17 89:20 89:23 90:1 90:3 90:21 91:16 91:17 91:21 91:24 93:12 94:8 95:16 95:18 96:1 97:6 98:22 98:24 98:25 99:9 109:8 113:7 113:24 117:17 117:18 117:22 120:2 120:2 120:10 120:15 120:24 122:5 122:9 122:11 122:19 122:20 124:7 131:19 136:17 139:18 141:4 143:14 144:24 154:20 164:16 170:4 171:11 177:1 177:21 182:23 187:5 195:25 196:1 196:2 211:4 211:10 | |
| cases(18) 26:5 29:18 31:25 32:14 91:4 123:7 145:2 167:10 178:17 178:20 178:22 178:23 181:11 181:11 181:14 182:22 183:1 192:18 | |
| cash(8) 120:14 135:9 136:14 144:9 146:6 155:1 163:4 175:1 | |
| cash-flow(3) 182:22 182:23 182:24 | |
| categories(5) 28:15 35:4 141:18 179:17 180:25 | |
| category(1) 37:4 | |
| causal(1) 114:21 | |
| cause(8) 36:14 44:9 45:9 54:2 129:18 139:21 143:9 147:13 170:23 | |
| caused(1) 143:11 | |
| causes(3) 14:5 163:21 170:25 | |
| causing(3) 53:17 54:15 198:21 | |
| cautious(1) 126:25 | |
| cease(1) 53:15 | |
| ceases(2) 78:4 79:4 | |
| central(1) 110:3 | |
| centrally(1) 115:4 | |
| ceo(3) 62:18 78:6 78:10 78:15 79:3 79:4 79:7 79:11 | |
| ceremonies(3) 17:14 17:17 19:20 | |
| certain(21) 27:24 28:21 28:23 29:18 29:19 34:1 42:25 50:17 67:7 78:5 81:4 82:18 86:2 88:9 88:13 94:5 94:21 96:22 181:2 184:2 188:10 | |
| certainly(16) 17:23 27:10 31:3 59:1 65:18 114:3 115:23 128:6 130:4 130:5 151:7 151:20 158:24 161:13 164:18 175:8 | |
| certainty(4) 72:16 146:2 146:9 146:12 | |
| certificate(1) 155:9 | |
| certification(1) 212:1 | |
| certified(1) 119:7 | |
| certify(1) 212:1 | |
| cetera(3) 85:9 103:1 103:1 | |
| chadbourne(2) 4:12 6:10 | |
| chair(1) 23:17 | |
| chambers(1) 200:15 | |
| chance(5) 112:6 146:7 149:20 167:4 189:3 | |
| chandler(1) 10:42 | |
| chaney(1) 12:13 | |
| change(18) 35:25 46:7 48:16 49:16 75:18 91:17 94:1 95:18 96:10 96:16 96:25 105:7 138:1 138:2 139:21 140:4 143:10 147:14 | |
| changeable(1) 137:25 | |
| changes(4) 14:17 96:13 96:22 141:2 | |
| channel(4) 25:5 25:9 128:11 128:13 | |
| chapter(3) 1:8 25:11 167:10 | |
| chapters(1) 115:10 | |
| characterization(3) 48:22 66:9 75:11 | |
| characterize(5) 28:14 48:3 70:23 73:4 103:11 | |
| characterized(2) 111:12 169:1 | |
| chart(5) 33:2 33:7 33:8 33:11 51:3 | |
| charter(37) 43:23 128:3 128:4 128:5 128:5 128:8 128:10 128:14 128:19 132:11 133:2 137:20 138:1 138:2 138:3 149:10 155:22 156:6 156:16 157:9 157:25 158:19 159:7 159:8 159:12 159:13 160:8 160:22 161:5 162:1 167:16 197:6 197:12 198:13 198:18 198:23 199:5 | |
| charts(1) 18:2 | |
| chase(2) 8:21 8:29 | |
| check(2) 90:11 201:19 | |
| chicago(5) 1:30 11:27 11:28 24:10 88:10 | |
| chief(2) 78:4 82:23 | |
| choose(2) 17:7 130:20 | |
| choosing(1) 41:12 | |
| chose(1) 167:22 | |
| christine(1) 11:36 | |
| chung(2) 6:37 8:13 | |
| circuit(1) 18:10 | |
| circumstance(7) 71:2 71:23 83:9 92:15 93:9 95:7 168:1 | |
| circumstance(10) 42:2 42:8 42:25 50:17 52:13 69:9 72:25 81:4 81:12 98:7 | |
| cited(5) 32:13 70:4 70:7 70:12 87:15 | |
| citi(2) 12:12 12:22 | |
| citibank(1) 7:4 | |
| citigroup(1) 10:4 | |
| claim(18) 115:20 129:5 129:7 129:23 135:23 136:1 137:7 137:9 161:16 167:14 171:7 174:12 174:15 190:25 193:21 207:12 207:13 207:15 | |
| claimants(1) 145:11 | |
| claims(21) 16:13 94:21 99:16 99:19 99:24 100:3 100:7 100:11 100:17 101:6 134:15 134:16 135:14 136:16 141:20 145:13 150:12 154:15 190:2 209:10 209:19 | |
| claire(1) 10:44 | |
| clarification(2) 130:2 207:7 | |
| clarify(2) 138:3 138:11 | |
| class(38) 36:15 36:16 36:16 36:18 36:21 102:15 101:5 109:21 110:10 116:16 128:1 138:4 155:12 155:21 156:5 156:7 156:15 156:17 157:10 157:12 157:20 158:8 158:9 158:16 158:19 158:22 159:1 159:7 159:20 160:18 168:15 196:21 197:1 197:1 197:8 197:11 197:13 198:18 | |
| classes(1) 51:10 | |
| classification(1) 209:18 | |
| clause(6) 129:7 129:17 138:8 164:9 165:6 198:20 | |
| clean(1) 136:5 | |
| clear(21) 21:22 25:5 25:8 28:4 65:19 67:19 71:9 84:19 101:9 126:18 127:7 127:10 128:5 128:23 129:4 140:20 141:21 145:23 146:4 168:6 207:20 | |
| clearly(5) 55:8 144:18 151:19 151:23 192:20 | |
| cleary(1) 2:6 | |
| clerk(11) 13:2 22:23 58:20 59:3 108:4 108:13 108:16 108:19 139:7 195:3 210:24 | |
| client(1) 199:23 | |
| client's(1) 199:23 | |
| clip(3) 156:9 160:9 165:3 | |
| close(5) 106:22 112:19 141:25 142:1 | |
| closely(1) 144:3 | |
| closing(3) 16:5 53:21 201:14 | |
| closings(2) 203:12 204:5 | |
| club(9) 128:17 129:8 131:18 132:15 132:16 137:21 138:12 138:20 163:23 | |
| co-chair(1) 24:7 | |
| co-leader(1) 114:19 | |
| co-plan(1) 199:23 | |
| co-proponents(11) 27:8 27:12 27:25 35:5 35:8 35:13 38:17 46:6 46:22 54:20 98:3 | |
| cobb(2) 4:5 6:25 | |
| code(5) 116:20 172:10 182:18 183:1 183:2 | |
| codifying(1) 42:6 | |
| cole(1) 1:33 | |
| collect(2) 145:16 193:16 | |
| collectively(1) 80:23 | |
| colleen(1) 7:19 | |
| college(1) 24:9 | |
| collins(1) 8:26 | |
| color(1) 108:22 | |
| combination(7) 31:10 35:18 35:19 36:12 80:4 189:23 191:7 | |
| combinations(2) 28:24 29:14 | |
| combined(2) 36:13 128:17 | |
| come(15) 14:4 14:4 28:4 82:14 129:12 145:13 156:21 187:9 190:15 191:6 191:17 192:15 193:23 200:21 208:6 | |
| comes(1) 84:6 | |
| comfort(6) 113:13 120:12 120:16 121:20 122:4 122:19 | |
| comfortable(13) 110:4 110:4 113:2 114:5 115:18 115:15 120:8 120:9 121:18 121:24 121:25 122:2 147:23 | |
| coming(1) 111:19 | |
| commensurately(1) 154:9 | |
| comment(4) 111:11 148:4 204:12 208:12 | |
| commenters(1) 85:23 | |
| comments(9) 14:5 64:16 65:24 66:2 66:6 66:15 66:18 67:13 67:24 | |
| commercial(2) 24:18 86:1 | |
| commission(35) 29:12 31:17 31:19 32:4 32:9 34:11 34:20 34:23 38:25 40:21 41:11 42:7 42:9 45:16 46:17 51:11 52:12 85:7 85:14 85:24 86:5 86:16 89:23 90:2 90:8 90:15 90:25 91:23 92:9 95:20 96:1 96:3 96:21 99:2 99:2 | |
| commission's(5) 27:5 28:16 28:21 42:13 85:8 | |
| commissioners(1) 112:21 | |
| commitment(1) 37:15 | |
| committed(1) 79:22 | |
| committee(7) 2:34 4:4 6:9 7:32 15:14 172:8 172:11 | |
| committees(1) 114:15 | |
| common(49) 25:17 29:19 31:8 31:18 36:15 36:16 36:16 36:17 36:18 36:21 37:17 53:18 53:19 78:25 79:7 79:9 79:10 79:14 80:16 100:19 105:5 128:1 138:5 141:15 155:12 155:21 156:5 156:7 156:15 156:16 157:10 157:20 157:20 158:7 158:8 158:9 158:14 158:16 158:19 158:22 159:2 159:7 159:21 160:18 165:10 165:13 180:18 197:8 197:11 197:13 | |
| commonly(1) 51:13 | |
| communicate(1) 200:13 | |
| communication(12) 24:7 25:3 25:10 25:11 50:5 73:22 82:13 85:7 85:14 89:5 91:9 103:4 | |
| companies(7) 43:24 51:7 51:7 52:24 115:7 115:12 119:2 | |
| company(43) 1:8 7:28 9:36 10:31 11:5 25:12 27:11 28:23 36:14 38:17 43:24 53:3 54:13 54:16 54:25 59:21 90:5 90:7 118:20 119:3 120:13 120:19 128:22 128:24 128:24 129:1 130:18 131:11 134:24 138:15 153:15 153:19 153:22 162:25 163:5 166:13 166:13 166:15 167:21 168:2 168:7 187:8 190:16 | |
| comparables(1) 120:13 | |
| compared(3) 124:19 146:16 155:19 | |
| compares(1) 146:21 | |
| comparisons(1) 60:8 | |
| compel(1) 187:20 | |
| competing(4) 16:11 16:12 205:18 209:8 | |
| competition(1) 30:4 | |
| complain(4) 145:8 145:15 190:19 190:20 | |
| complete(3) 188:7 205:13 207:1 | |
| completely(4) 150:20 186:7 186:8 197:9 | |
| complex(2) 24:19 39:23 | |
| complexity(1) 40:4 | |
| compliance(7) 30:23 32:25 36:10 44:3 54:17 102:7 103:4 | |
| complicate(1) 44:9 | |
| complicated(1) 39:23 | |
| complication(1) 131:6 | |
| comply(1) 24:20 | |
| component(2) 146:12 146:13 | |
| comports(1) 90:19 | |
| compound(1) 114:4 | |
| conaway(1) 2:4 | |
| conceivably(1) 89:23 | |
| concept(2) 71:16 107:5 | |
| concepts(1) 120:8 | |
| conceptually(2) 34:17 37:6 | |
| concern(20) 16:15 106:24 127:23 129:10 129:18 129:21 131:17 134:8 137:5 152:19 152:22 152:25 153:1 153:3 153:9 155:24 160:18 161:14 177:1 198:21 | |
| concerned(10) 115:5 126:3 161:16 161:20 174:17 177:10 177:14 199:2 199:4 203:11 | |
| concerning(18) 27:15 38:21 38:23 44:8 44:11 44:25 45:8 44:17 56:2 57:17 60:8 69:23 80:20 89:13 90:4 101:14 201:12 | |
| concerns(19) 27:12 125:11 125:15 125:25 126:12 130:2 130:6 130:13 137:13 137:16 137:25 149:8 150:21 150:24 151:12 152:4 152:8 163:21 199:3 | |
| conclude(3) 107:9 190:24 202:22 | |
| concluded(7) 32:6 34:7 51:8 52:7 86:19 196:4 206:18 | |
| concludes(2) 16:16 211:19 | |
| conclusion(8) 98:9 160:15 181:25 182:1 184:10 187:15 187:16 199:12 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**conclusions**(16) 26:19 26:25 38:11 149:12 179:13 179:16 179:21 179:25 180:13 180:19 180:23 181:9 181:19 184:8 186:5 189:24

**conduct**(8) 32:16 73:11 96:7 98:13 174:9 174:14 175:23 175:24

**conducted**(2) 115:18 147:25
**conducting**(2) 121:4 121:8
**confer**(2) 81:19 124:1
**conferred**(1) 189:22
**confess**(1) 15:4
**confident**(1) 202:5
**confidential**(5) 55:17 103:19 104:1 104:4 105:9

**confidentiality**(1) 104:13
**confine**(1) 204:6
**confirm**(1) 211:3
**confirmation**(9) 22:7 35:6 48:13 56:11 76:16 178:1 203:3 205:18 210:4

**confirmed**(10) 47:21 49:21 56:4 56:8 61:11 61:23 62:6 62:22 65:2 94:15

**conflict**(5) 31:9 37:17 38:19 94:22 126:7
**conflicting**(1) 36:5
**conflicts**(8) 38:14 43:16 53:20 53:21 54:15 95:1 132:20 171:22

**conformance**(1) 102:6
**conlan**(1) 1:24
**connected**(1) 197:14
**connection**(20) 14:25 23:23 25:15 29:1 34:24 35:1 48:1 58:3 63:19 74:21 75:17 87:22 88:21 96:17 158:17 158:18 166:16 188:19 195:14 210:3

**consensus**(1) 19:15
**consent**(2) 28:16 47:22
**consenting**(5) 82:25 83:3 83:5 83:7 83:11
**consider**(19) 28:6 29:1 29:3 46:17 73:11 73:13 117:11 145:1 145:1 145:2 145:5 146:15 146:19 149:21 174:5 189:7 191:7 191:17 203:15

**consideration**(20) 14:8 15:19 27:23 28:1 30:16 30:23 32:24 34:20 38:24 39:19 39:21 40:17 41:6 42:1 45:11 46:6 46:10 56:16 58:7 201:25

**considerations**(1) 96:25
**considered**(8) 81:17 85:13 85:18 86:17 95:15 95:20 96:17 189:8

**considering**(2) 88:21 96:21
**consist**(2) 82:23 199:15
**consistent**(11) 18:5 18:20 29:10 36:20 102:6 124:25 170:7 170:18 170:24 183:21 203:20

**consolidating**(1) 198:1
**consortium**(1) 25:2
**constituency**(1) 176:25
**constituents**(1) 172:11
**constitute**(1) 189:12
**constituted**(2) 80:2 184:17
**constitutes**(1) 53:10
**constructive**(8) 16:13 186:3 186:6 186:11 186:13 186:24 187:1 187:7

**consultant**(1) 118:17
**consummated**(2) 209:12
**contained**(1) 34:24
**contains**(2) 64:21 80:14
**contemplated**(2) 201:13 202:9
**contemplates**(1) 65:23
**contemporaneous**(1) 122:16
**contemplating**(1) 42:12
**content**(1) 20:1

**contention**(2) 27:23 28:5
**context**(5) 45:13 45:13 124:18 152:12 186:20

**contingencies**(1) 150:5
**contingent**(2) 105:7 127:14
**continue**(4) 79:2 113:22 115:24 155:6
**continued**(13) 2:2 3:2 4:2 5:2 6:3 7:2 8:3 9:3 10:2 11:3 12:2 45:17 149:24

**continues**(3) 71:22 155:5 165:8
**continuing**(1) 201:2
**continuous**(2) 204:1 206:14
**continuum**(2) 179:14 179:18
**contours**(2) 201:1 204:9
**contract**(1) 18:11
**contracts**(2) 18:4 18:9
**contractual**(1) 87:4
**contrary**(2) 97:7 181:15
**contrast**(2) 34:21 171:8
**contributors**(2) 27:18 46:13
**control**(25) 45:19 62:22 87:25 90:7 90:9 90:13 90:16 91:21 95:13 137:1 137:3 137:4 149:9 150:22 151:22 151:23 151:23 152:1 152:8 152:9 153:7 153:14 153:21 154:6 160:20

**controlled**(1) 152:21
**controlling**(6) 151:13 151:17 151:19 151:20 153:4 153:6

**controls**(1) 172:18
**conversation**(1) 205:8
**conversely**(1) 30:20
**convert**(2) 55:7 127:13
**converted**(2) 151:17 153:13
**convertible**(5) 150:2 150:15 151:3 152:3 158:13

**conveyance**(3) 110:10 116:13 116:19
**conveyed**(1) 193:5
**conveys**(1) 193:18
**cooperate**(9) 128:15 128:16 128:16 128:19 131:13 131:18 132:2 133:3 138:10

**cooperating**(2) 165:14 167:15
**cooperation**(17) 129:6 129:17 131:13 131:22 131:24 138:8 138:11 149:11 163:1 163:20 163:22 164:5 164:9 165:6 168:15 169:10 198:20

**coordinating**(1) 23:24
**copy**(3) 25:22 25:25 85:9
**corollary**(1) 31:15
**corporate**(31) 36:17 77:25 82:20 109:20 110:1 110:7 110:12 110:14 110:15 110:21 110:23 111:6 113:18 114:13 115:4 115:8 115:9 115:11 115:14 115:14 116:16 118:2 123:17 123:19 124:17 132:20 148:19 149:8 152:4 159:23 197:3

**corporation**(4) 25:14 35:23 157:22 169:8
**corporations**(2) 110:10 116:17
**corpus**(2) 171:16 171:17
**corre**(2) 11:41 11:41

**correct**(143) 22:10 25:22 57:18 57:19 59:18 59:19 60:9 60:14 60:17 60:21 60:22 61:1 61:2 62:16 62:19 62:20 63:2 63:9 63:12 63:16 64:22 64:24 64:25 65:13 65:14 65:17 65:18 66:4 66:5 66:8 66:22 67:1 67:2 67:7 67:8 67:13 67:14 67:17 67:21 67:22 67:25 69:20 70:3 70:20 70:24 72:9 72:10 72:12 73:25 74:1 75:18 75:20 75:24 76:1 76:4 76:5 76:8 76:16 77:2 77:18 77:19 78:15 78:20 79:20 84:23 85:4 85:5 86:5 86:7 86:10 87:15 88:7 88:11 88:15 90:5 90:18 90:24 91:12 91:13 97:4 97:7 101:11 117:21 117:25 118:21 118:22 120:21 121:1 121:23 123:6 149:13 149:14 149:15 149:22 151:17 152:16 154:9 154:1 155:23 158:4 158:8 158:18 158:20 159:20 161:5 161:8 162:1 162:10 162:23 163:2 164:2 164:24 168:17 170:13 171:2 171:10 172:20 173:16 174:25 176:2 176:9 176:11 176:14 177:23 178:17 179:22 181:4 182:2 183:9 183:13 183:14 183:19 184:14 184:15 187:12 187:21 188:22 189:1 189:2 189:4 191:24 194:13 212:2

**correctly**(4) 145:2 148:5 158:6 169:6
**correlated**(9) 144:14 182:6 182:8 182:10 188:14 189:10 190:13 195:13 195:19

**correlation**(3) 182:5 182:13 188:6
**correlations**(3) 114:4 183:24 184:3
**cost**(10) 121:22 154:9 154:11 155:18 161:22 163:25 176:19 177:8 177:9 177:10

**costs**(6) 32:7 154:2 159:22 160:15 161:6 161:9

**could**(92) 15:19 17:20 18:18 18:24 24:1 24:23 26:24 29:16 36:6 42:16 45:5 54:2 57:5 65:9 66:2 68:1 68:3 68:14 89:18 89:24 90:11 90:16 90:20 91:25 92:17 95:15 96:13 106:12 106:23 109:18 109:24 110:11 112:11 112:12 113:14 114:8 116:10 123:24 125:7 125:18 126:2 126:9 126:12 126:22 127:13 127:22 127:24 128:7 129:5 129:7 129:15 130:15 134:4 134:7 135:13 138:10 138:21 138:25 140:13 140:17 140:20 142:15 147:10 151:16 152:21 153:13 156:21 157:1 157:13 163:12 165:1 165:15 165:18 165:25 166:5 166:7 166:15 166:22 166:24 168:7 169:7 172:2 179:20 180:13 182:14 183:3 185:8 195:18 199:22 199:24 204:10 206:3

**couldn't**(3) 162:13 166:14 166:16
**counsel**(12) 15:14 16:19 25:10 59:23 112:21 129:15 168:6 168:8 204:14 208:8 209:4 209:14
**count**(1) 30:21
**counter-argumen**(1) 157:2
**counterparties**(2) 126:25 130:7
**counterparty**(2) 129:19 198:11
**country**(2) 35:10 76:7
**county**(2) 30:12 30:15
**county**(1) 89:7
**couple**(17) 21:20 27:6 40:19 48:3 87:21 88:19 92:14 98:19 105:22 109:14 109:17 119:6 142:16 181:18 181:23 181:23 195:1
**coupled**(1) 39:9
**course**(10) 37:19 43:2 45:18 69:24 89:16 102:5 119:17 133:5 171:1 175:22

**courses**(1) 175:24
**coursework**(1) 113:15

**court**(231) 1:1 13:3 13:5 13:7 15:21 15:22 16:3 17:5 17:11 17:23 18:7 18:13 18:16 19:21 20:4 20:23 21:1 21:3 21:5 21:19 22:11 22:13 22:20 23:4 24:23 26:8 26:10 26:24 26:25 33:7 33:15 33:19 40:9 42:7 47:21 48:19 48:25 49:4 49:6 49:11 49:13 49:21 53:25 57:2 57:6 57:10 57:13 57:15 58:15 58:18 58:22 58:24 59:1 59:5 59:11 62:5 68:16 68:18 68:21 76:14 83:22 84:8 87:19 88:2 88:17 91:2 92:5 92:7 98:15 98:18 99:9 99:9 100:23 105:12 105:18 105:25 106:15 107:2 107:8 107:17 107:20 107:23 108:1 108:9 108:11 108:24 109:1 110:22 110:25 111:2 111:7 111:15 111:20 111:24 112:3 112:5 117:1 118:5 119:18 119:23 120:25 122:20 122:21 123:3 123:12 123:16 123:22 123:25 125:2 125:10 127:4 127:15 129:13 129:16 129:20 129:25 130:1 130:5 134:1 134:4 138:23 139:2 141:8 141:10 147:18 148:6 148:9 148:13 148:16 148:21 148:24 149:3 156:21 166:16 166:18 167:8 167:13 167:18 167:20 167:22 168:3 179:4 184:16 185:4 187:6 189:18 189:24 190:23 191:4 191:8 191:17 194:20 194:24 195:6 198:4 199:8 199:10 199:19 199:25 200:2 200:4 200:8 200:14 200:16 200:18 200:20 200:24 201:4 201:9 201:12 201:13 201:18 201:19 201:21 202:1 202:9 202:9 202:10 202:12 202:16 202:18 202:20 202:23 203:1 203:6 203:6 203:8 203:9 203:15 203:16 203:17 203:18 203:20 204:2 204:7 204:9 204:12 204:18 204:24 205:5 205:5 205:6 205:7 205:21 206:2 206:9 206:12 206:15 206:17 206:25 207:2 207:16 208:2 208:21 208:22 208:25 209:2 209:21 209:23 210:1 210:5 210:12 210:14 210:18 210:21 210:22 210:25 211:6 211:12 211:15 211:13 211:19

**court's**(6) 15:18 16:22 117:2 125:1 140:22 147:19

**courtney**(1) 12:10
**courtroom**(8) 1:10 13:22 38:23 87:14 103:20 181:7 199:24 200:16

**courts**(2) 166:18 167:13
**court's**(4) 201:6 201:15 201:24 203:21
**cover**(7) 106:13 109:17 109:21 116:18 116:19 129:1 129:2

**covington**(6) 23:11 23:13 23:22 24:2 24:3 59:25

**create**(6) 31:9 33:9 38:14 92:17 151:9 160:2

**created**(3) 91:11 92:10 94:2
**creates**(1) 164:7
**creative**(1) 24:22
**credentials**(5) 119:6 119:9 119:10 119:12 119:13

**credible**(3) 142:10 142:19 142:25
**credit**(5) 10:30 207:10 207:11 207:14
**creditor**(19) 64:15 66:16 66:20 66:24 66:25 67:6 67:12 67:15 67:21 67:23 67:25 68:24 102:23 103:22 128:17 131:21 135:20 154:14 172:10

**creditors**(20) 4:5 6:10 19:7 64:18 116:18 134:9 135:11 135:13 142:18 142:21 145:6 145:11 145:14 146:5 146:23 147:4 172:9 190:16 190:22 191:18

**critic**(1) 148:7
**critically**(1) 121:19
**criticism**(2) 183:17 191:12
**criticisms**(3) 180:16 180:21 181:2
**criticizing**(1) 18:13

| Word | Page:Line |
|---|---|
| **cross**(39) 20:24 24:21 25:16 26:6 27:13 28:22 29:24 31:12 31:13 31:14 31:25 32:3 32:12 36:10 42:24 46:7 53:20 58:15 59:13 83:16 83:18 84:5 91:2 93:17 93:25 102:1 105:19 105:21 106:6 106:9 106:11 106:23 107:10 107:19 117:4 117:7 148:16 196:15 213:3 | |
| **cross-ownership**(1) 75:19 | |
| **crossed**(2) 18:8 32:8 | |
| **current**(6) 53:18 68:19 78:4 79:4 88:13 203:7 | |
| **currently**(4) 28:17 38:5 56:20 207:23 | |
| **customary**(2) 43:15 101:17 | |
| **cut**(1) 106:13 | |
| **cutler**(1) 10:35 | |
| **d.c**(1) 23:12 | |
| **daily**(2) 29:23 29:23 | |
| **damages**(1) 128:21 | |
| **damien**(1) 3:6 | |
| **daniel**(7) 3:11 4:6 5:5 6:31 6:33 16:18 204:13 | |
| **data**(2) 1:42 23:19 | |
| **date**(3) 15:24 69:18 212:8 | |
| **david**(13) 2:42 4:13 4:40 5:6 9:31 11:38 12:32 12:33 106:4 179:10 199:17 208:14 211:1 | |
| **davis**(3) 3:4 7:5 8:21 | |
| **day**(8) 2:35 7:39 13:9 31:16 45:19 198:12 210:13 211:16 | |
| **days**(8) 67:1 67:3 67:6 67:24 126:15 201:1 202:3 206:24 | |
| **dbtca**(2) 4:38 208:15 | |
| **dcl**(97) 13:9 14:9 15:17 16:23 17:15 19:11 20:8 22:8 25:19 27:5 27:8 27:10 27:25 33:13 35:14 35:15 35:22 35:23 36:2 38:1 38:16 39:9 43:7 43:13 44:7 44:21 46:8 46:21 54:13 54:15 55:15 56:10 56:19 57:22 58:2 58:9 59:17 59:23 60:9 60:11 60:23 60:25 61:3 61:11 62:13 62:21 63:6 63:19 63:21 63:25 64:5 64:8 64:21 65:22 66:7 66:16 67:15 93:23 94:4 97:8 97:14 98:2 102:17 103:18 124:13 124:19 124:24 125:4 136:15 139:13 141:16 143:10 146:4 146:16 146:22 146:25 147:2 147:6 147:14 150:12 150:14 151:2 155:19 177:2 177:3 177:9 177:10 178:9 192:23 193:17 194:1 194:6 199:12 199:24 200:23 201:7 206:13 | |
| **dcl-1441**(1) 102:11 | |
| **dcl-fcc**(1) 102:16 | |
| **dead**(1) 164:17 | |
| **deal**(13) 35:16 38:21 44:2 64:21 129:20 129:21 129:24 129:24 163:6 164:5 198:10 198:14 206:25 | |
| **dealing**(1) 126:25 | |
| **deals**(2) 94:25 95:7 | |
| **dearborn**(1) 1:29 | |
| **debenture**(1) 11:32 | |
| **debt**(3) 188:2 192:14 193:11 | |
| **debtor**(7) 21:16 22:15 28:18 59:21 67:16 188:19 213:27 | |
| **debtors**(13) 1:12 1:23 17:13 21:9 64:15 66:17 66:21 66:24 108:6 189:1 189:22 195:10 208:5 | |
| **debtors'**(1) 22:21 | |
| **debts**(1) 187:9 | |
| **decide**(2) 59:5 73:14 | |
| **decided**(2) 86:5 190:23 | |
| **decides**(3) 44:10 67:16 67:23 | |

| Word | Page:Line |
|---|---|
| **decision**(48) 15:6 18:10 32:17 39:12 41:5 41:5 41:16 44:9 50:2 56:17 72:2 73:6 85:6 90:25 109:19 109:21 110:20 111:4 112:10 112:13 112:16 112:18 112:18 112:24 113:2 113:4 113:5 113:10 113:16 113:17 113:20 113:21 113:24 114:3 116:24 117:11 117:12 117:15 117:17 117:20 123:16 123:20 129:20 187:13 196:3 196:5 199:12 204:21 | |
| **decisions**(6) 70:3 109:22 144:13 144:14 144:17 191:8 | |
| **deck**(7) 43:4 44:6 44:22 47:8 50:4 52:20 53:25 | |
| **declarations**(2) 21:22 22:6 | |
| **deem**(1) 27:24 | |
| **deemed**(4) 50:19 51:22 70:1 81:19 | |
| **defendants**(2) 133:21 170:17 | |
| **defending**(1) 25:15 | |
| **defense**(8) 145:5 145:22 184:4 184:5 189:19 190:8 191:4 | |
| **defenses**(11) 144:20 144:23 145:6 184:3 188:9 188:10 188:13 188:14 188:17 190:1 195:18 | |
| **deficiencies**(1) 159:23 | |
| **deficiency**(1) 193:21 | |
| **defined**(1) 29:19 | |
| **definition**(5) 71:25 85:21 85:25 86:6 86:17 | |
| **defraud**(2) 142:18 142:21 | |
| **degree**(6) 24:9 73:13 118:12 118:13 181:8 185:13 | |
| **deiterich**(1) 10:6 | |
| **delaware**(9) 1:2 1:12 1:36 4:34 5:21 13:1 128:20 166:18 167:13 | |
| **delay**(26) 27:15 27:18 38:21 39:11 40:5 40:18 40:24 41:6 43:9 44:9 44:19 44:21 44:25 45:2 45:9 46:13 58:3 58:4 127:19 127:22 129:25 130:8 142:18 142:20 161:2 162:4 | |
| **delays**(3) 38:24 57:18 57:22 | |
| **delivered**(1) 207:14 | |
| **demand**(1) 187:16 | |
| **demanded**(1) 169:11 | |
| **demanding**(1) 187:14 | |
| **demo**(1) 7:16 | |
| **demonstrated**(1) 13:14 | |
| **demonstration**(1) 42:16 | |
| **demonstrative**(1) 43:4 | |
| **demonstratives**(3) 37:20 37:23 39:6 | |
| **denial**(1) 71:12 | |
| **denied**(1) 98:15 | |
| **dennis**(1) 7:23 | |
| **department**(1) 110:2 | |
| **departments**(1) 51:7 | |
| **depend**(4) 87:3 136:22 192:17 203:3 | |
| **dependencies**(1) 183:18 | |
| **dependency**(2) 182:14 188:7 | |
| **dependent**(5) 181:4 181:9 182:19 183:8 184:13 | |
| **depending**(3) 136:17 136:21 150:4 | |
| **depends**(7) 46:9 120:3 121:10 135:21 143:22 144:3 207:17 | |
| **deposition**(19) 80:19 81:22 82:2 101:8 119:18 150:10 156:11 160:10 160:11 164:23 165:4 169:1 171:11 175:9 178:21 185:9 190:1 190:17 206:21 | |
| **depositions**(1) 185:7 | |
| **depth**(1) 115:19 | |
| **deputy**(1) 200:16 | |
| **derive**(1) 30:3 | |

| Word | Page:Line |
|---|---|
| **describe**(13) 24:16 24:23 26:24 29:16 32:2 36:6 45:5 48:1 48:2 67:9 67:11 136:9 193:14 | |
| **described**(8) 29:5 37:11 51:25 58:11 63:18 89:13 118:23 203:1 | |
| **describes**(1) 143:20 | |
| **describing**(2) 70:16 192:9 | |
| **description**(2) 151:7 170:24 | |
| **design**(1) 19:17 | |
| **designate**(10) 34:7 50:18 53:12 62:15 77:7 80:24 81:15 83:4 93:2 159:9 | |
| **designated**(7) 48:12 76:15 76:20 77:12 94:20 99:15 101:12 | |
| **designating**(1) 99:20 | |
| **designation**(38) 34:9 37:6 37:9 37:13 47:11 47:18 47:24 49:22 53:17 60:25 61:2 62:7 64:9 64:13 64:17 65:7 66:19 69:11 69:16 70:19 70:24 72:6 72:15 72:22 76:23 79:19 80:6 80:20 81:9 81:12 81:19 82:4 93:19 94:2 95:16 97:18 101:10 102:22 | |
| **designations**(1) 206:21 | |
| **designed**(2) 36:19 74:16 | |
| **designee**(5) 53:18 78:10 79:3 79:7 79:11 | |
| **despite**(1) 178:10 | |
| **detail**(3) 44:23 64:24 112:13 | |
| **detailed**(1) 34:25 | |
| **details**(1) 95:17 | |
| **determination**(3) 66:25 67:6 100:15 | |
| **determine**(6) 29:9 37:8 64:15 66:17 66:21 73:9 | |
| **determined**(5) 31:22 54:24 61:23 94:15 210:3 | |
| **determines**(1) 30:12 | |
| **determining**(2) 30:23 32:25 | |
| **deutsch**(2) 4:16 208:8 | |
| **deutsche**(1) 9:25 | |
| **developments**(1) 55:13 | |
| **devised**(1) 51:14 | |
| **devoted**(2) 19:22 143:1 | |
| **dewey**(2) 2:12 207:5 | |
| **diamond**(1) 9:22 | |
| **diaz**(1) 1:42 | |
| **dicta**(1) 89:17 | |
| **dictum**(3) 89:20 89:22 91:23 | |
| **did**(46) 19:23 22:24 24:8 57:17 74:20 77:7 81:21 89:21 91:9 91:23 93:5 93:8 93:11 96:1 103:12 113:7 113:7 115:18 120:10 120:15 139:20 140:3 141:15 141:15 143:7 143:7 143:9 145:1 145:1 145:2 147:12 147:13 148:5 148:5 149:12 164:6 166:12 178:20 178:23 187:3 194:17 195:13 196:1 197:23 203:5 206:12 | |
| **didn't**(10) 15:11 89:25 95:17 110:22 113:5 113:6 127:1 140:4 145:5 165:1 | |
| **didn't**(7) 178:19 184:13 185:18 189:20 189:25 196:13 199:4 | |
| **difference**(4) 114:13 114:14 114:15 114:15 88:3 91:14 97:3 105:22 123:7 132:23 133:5 133:8 133:8 142:2 142:5 162:16 162:19 208:16 | |
| **different**(19) 18:22 29:22 47:9 76:6 77:1 | |
| **differently**(2) 81:18 122:23 | |
| **difficult**(2) 130:21 131:1 | |
| **dilute**(1) 158:2 | |
| **dilution**(1) 158:6 | |
| **diminish**(1) 150:24 | |
| **dire**(2) 111:20 112:6 | |

| Word | Page:Line |
|---|---|
| **direct**(17) 23:6 52:10 76:12 76:25 106:12 106:14 106:20 106:25 107:8 107:9 109:2 121:2 124:4 155:11 172:2 204:3 213:3 | |
| **directing**(1) 95:3 | |
| **direction**(6) 93:25 107:14 130:20 144:13 183:19 196:14 | |
| **directions**(1) 132:24 | |
| **directly**(3) 52:13 86:21 176:16 | |
| **director**(25) 34:3 34:8 37:6 37:9 47:11 47:18 53:12 53:13 60:25 61:7 62:7 62:18 65:7 69:10 69:15 77:12 78:10 80:4 80:17 80:20 93:1 119:1 119:2 132:11 138:17 | |
| **directors**(54) 2:35 7:34 36:25 50:19 62:15 63:1 63:5 63:7 63:10 63:16 73:12 77:8 78:1 78:5 78:20 79:4 80:24 81:15 82:21 82:22 83:4 83:13 88:7 88:7 94:14 96:7 96:7 97:18 101:3 102:18 114:14 126:6 128:2 128:18 128:21 128:25 129:15 130:10 131:19 132:5 138:6 163:11 164:4 166:19 167:24 168:4 176:20 176:24 177:6 177:11 197:7 197:20 198:2 198:19 | |
| **disagree**(8) 38:9 40:19 44:14 50:11 56:18 93:11 171:18 171:21 | |
| **disagreement**(1) 80:2 | |
| **disapproval**(2) 54:9 71:11 | |
| **disclose**(3) 74:3 74:25 75:15 | |
| **disclosed**(11) 30:22 34:19 35:1 40:9 40:15 40:16 48:13 74:20 74:21 76:15 89:2 | |
| **disclosing**(2) 55:12 104:3 | |
| **disclosure**(11) 34:15 40:16 56:13 74:5 75:5 82:12 82:15 95:11 95:12 114:16 209:7 | |
| **discount**(12) 134:21 134:22 135:7 135:17 135:24 136:3 137:6 154:15 154:20 154:25 155:3 155:6 | |
| **discounted**(3) 134:17 134:20 135:12 | |
| **discretion**(5) 31:17 32:14 32:20 67:21 205:19 | |
| **discuss**(3) 16:17 70:9 139:3 | |
| **discussed**(10) 38:10 40:8 40:19 55:11 88:5 88:9 96:15 97:13 117:3 148:18 | |
| **discussing**(5) 16:2 34:18 36:11 38:16 70:17 107:10 131:14 185:11 | |
| **discussion**(12) 16:4 30:7 33:23 35:3 35:3 81:2 85:21 89:17 179:22 180:20 204:25 207:8 | |
| **discussions**(5) 16:6 69:5 69:7 180:14 | |
| **disinterested**(1) 82:24 | |
| **disposition**(1) 57:10 | |
| **disproportionally**(1) 147:3 | |
| **disproportionate**(6) 147:5 192:8 192:9 193:14 193:15 194:1 | |
| **dispute**(2) 134:1 209:19 | |
| **distinction**(2) 72:3 72:12 | |
| **distinguish**(2) 121:24 184:20 | |
| **distribute**(1) 165:13 | |
| **distributed**(1) 171:17 | |
| **distributing**(1) 136:13 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**distribution**(121) 126:7 126:17 126:21 127:7 127:10 127:17 128:1 128:7 128:15 129:5 129:21 130:15 130:22 131:5 131:20 132:23 133:4 133:10 133:12 133:18 134:1 134:18 135:5 135:8 135:19 136:13 136:19 136:25 137:3 137:5 137:8 137:19 138:4 149:9 149:10 150:1 151:10 151:14 152:2 152:5 152:22 154:3 154:15 155:5 156:21 158:3 158:10 158:11 160:3 160:4 160:5 160:16 161:7 161:11 161:15 161:20 161:22 162:4 162:15 162:18 164:2 164:8 164:13 164:20 165:10 165:11 166:12 167:14 167:23 168:11 168:14 169:7 169:17 170:7 169:24 170:9 171:4 171:5 171:9 171:11 171:15 171:19 171:23 172:6 172:7 172:17 172:18 173:4 173:12 173:13 173:13 173:21 173:22 174:2 174:8 174:8 174:16 174:24 174:24 175:1 175:5 175:11 175:18 175:25 176:3 176:10 176:13 176:15 176:17 177:15 177:22 178:24 197:7 197:17 198:2 198:7 198:8 198:12 198:14 207:17

**district**(1) 1:2
**diverge**(2) 176:22 177:16
**diversity**(1) 30:3
**divide**(1) 203:2
**divided**(1) 171:24
**division**(1) 106:18
**dla**(1) 2:28

**document**(11) 49:25 64:2 82:17 84:2 85:20 94:23 95:4 103:18 163:16 163:17 178:2
**documents**(7) 43:23 71:23 71:24 158:21 158:24 169:16 206:19

**does**(59) 25:25 26:2 35:15 35:21 35:25 41:16 42:1 44:10 44:23 47:17 48:16 49:15 49:16 49:22 49:23 60:1 60:3 60:4 73:1 74:13 74:15 74:18 81:24 91:16 93:24 94:3 94:12 94:12 95:17 95:21 121:4 121:8 121:17 124:9 124:12 124:16 135:17 137:15 139:25 144:22 146:2 148:3 152:23 158:16 158:19 170:12 170:20 171:9 180:10 180:16 180:24 181:7 181:11 181:11 181:12 182:18 196:10 196:24 197:2

**doesn't**(18) 30:21 30:22 41:19 49:19 51:21 74:5 110:15 136:25 137:3 140:1 142:23 145:9 145:17 146:15 146:25 150:9 157:3 170:10
**doesn't**(2) 179:24 191:5
**doing**(5) 21:9 64:7 83:17 142:4 148:10
**dol**(1) 19:3
**dollars**(1) 134:12
**dominant**(1) 196:3
**don**(1) 3:7
**don't**(75) 15:2 15:10 16:25 30:18 33:4 38:7 38:11 38:13 40:4 44:14 45:4 50:25 51:16 56:24 56:25 57:4 58:1 58:13 69:17 70:7 70:15 73:7 77:14 79:17 87:14 100:8 103:19 104:10 107:1 107:3 107:5 111:5 111:9 111:18 113:1 117:1 117:1 118:11 119:5 119:10 119:10 121:3 121:16 123:4 128:19 129:20 132:12 132:13 132:17 133:13 133:15 135:20 137:17 138:5 144:4 147:21 148:1 150:18 153:22 153:24 156:8 156:18 157:5 158:15 162:9 164:15 164:25 165:6 165:6 165:16 166:17 168:1 168:18 170:23 171:18
**don't**(15) 129:19 180:1 180:4 181:22 182:4 182:9 188:12 189:14 194:14 196:1 197:14 198:14 205:16 208:11 208:17
**door**(1) 188:21

**doorstep**(1) 16:15
**dorr**(1) 10:36
**doshi**(1) 10:10
**dot**(3) 165:9 165:9 165:9
**dougherty**(2) 6:5 6:6
**douglas**(1) 4:16
**dow**(1) 5:33
**down**(36) 14:4 14:24 39:5 43:5 61:20 63:8 65:10 71:21 102:20 105:13 136:12 136:19 136:20 137:1 137:6 141:18 145:22 146:11 150:18 150:23 152:7 153:1 153:9 154:9 154:10 154:11 154:12 154:12 154:22 159:24 163:9 192:5 192:15 199:10 209:24 211:12
**downside**(2) 161:21 177:12
**dozen**(1) 119:19
**dozens**(1) 178:11
**dramatic**(1) 204:5
**draw**(3) 34:9 39:5 115:19
**drawing**(1) 42:4
**draws**(1) 72:12
**ducayet**(53) 1:26 108:5 108:6 108:10 108:18 108:23 108:25 109:3 110:18 110:23 111:25 112:4 112:18 112:9 116:22 117:10 123:13 123:15 123:21 123:23 124:1 124:3 124:5 124:21 125:5 125:6 125:18 125:21 126:9 126:11 134:3 134:5 138:21 138:25 139:5 139:9 139:11 140:13 140:15 140:19 140:21 140:24 141:12 148:10 148:14 179:12 183:5 183:6 195:8 195:9 196:16 196:17 199:6
**due**(4) 64:17 66:19 187:10 201:11
**dueling**(1) 205:23
**during**(11) 20:24 46:23 63:8 63:14 69:24 76:12 76:25 107:6 139:4 139:18 201:19

**duties**(15) 106:6 170:15 170:19 171:8 171:10 171:12 171:19 172:6 172:10 172:1 172:19 173:3 173:15 173:21 174:13
**duty**(5) 131:12 131:17 132:2 133:2 175:20
**each**(23) 14:18 23:24 33:1 45:5 47:8 86:19 101:10 120:14 179:21 179:22 180:1 181:9 181:20 203:24 204:25 205:24

**earlier**(10) 16:3 38:10 71:15 88:5 95:9 102:14 139:16 140:22 148:18 200:25
**early**(1) 98:9
**easier**(4) 19:4 19:8 148:7 167:1
**east**(4) 2:37 3:40 12:36 12:36
**easy**(2) 138:3 138:13
**econometrics**(1) 114:7
**economic**(1) 30:4
**economics**(2) 116:4 116:6
**ecro**(1) 1:40
**edgar**(1) 12:6
**edition**(1) 115:24
**edward**(2) 5:27 20:5
**effect**(17) 37:16 46:4 58:12 75:23 76:1 78:24 89:23 96:23 133:20 134:10 143:22 145:9 156:6 157:20 159:8 182:12 191:3

**effecting**(1) 180:18
**effective**(2) 152:1 191:1
**effectively**(6) 70:25 87:25 90:5 137:20 187:14 187:16

**effectuate**(2) 24:22 31:5
**efficient**(4) 19:24 24:16 43:15 107:1
**efficiently**(2) 27:13 97:14
**effort**(4) 136:11 150:17 150:19 150:20
**efforts**(2) 136:17 201:3
**egi**(1) 19:2
**egi-trb**(1) 10:27
**eight**(1) 160:21

**either**(25) 14:14 14:16 14:25 33:12 35:7 41:12 43:17 45:12 45:14 65:6 65:20 91:2 97:15 111:20 133:1 139:20 141:2 143:16 143:18 154:24 169:7 190:13 193:21 195:1 195:19

**elaborate**(2) 127:24 143:13
**elden**(1) 6:5
**elect**(7) 72:20 79:1 79:15 80:12 80:17 128:21 197:6

**elected**(3) 45:10 70:25 71:19
**election**(3) 80:3 80:9 96:6
**electronic**(2) 1:48 212:3
**elements**(6) 113:4 113:5 113:25 114:2 114:3 117:17

**eli**(1) 3:12
**elicit**(1) 111:25
**eliciting**(1) 140:21
**eliminate**(5) 36:12 38:18 38:19 130:6 137:12

**eliminated**(2) 14:22 54:16
**eliminating**(3) 17:25 37:16 43:16
**elizabeth**(1) 7:13
**elkins**(1) 9:5
**elliot**(1) 3:5
**else**(12) 31:2 40:20 59:5 124:12 126:22 129:24 130:16 142:23 157:1 200:8 202:1 211:15
**elsewhere**(1) 114:17
**emanating**(1) 96:25
**embodied**(3) 139:14 151:2 196:25
**embody**(1) 69:6
**emergence**(4) 29:14 46:21 53:15 178:12
**emphasize**(1) 31:3
**emphatically**(2) 41:25 42:11
**empirical**(1) 114:6
**empirically**(1) 114:12
**employ**(1) 56:3
**employed**(3) 23:10 23:11 118:20
**employment**(2) 24:1 130:17
**enable**(1) 27:11
**encompasses**(1) 23:18
**encountered**(1) 71:2
**encourage**(1) 13:15
**end**(12) 15:24 16:1 19:10 111:21 126:19 127:1 131:10 137:2 198:4 198:12 206:6 206:8
**endeavored**(1) 198:24
**energy**(1) 143:1
**enforcement**(1) 42:13
**engage**(1) 177:4
**engaged**(6) 26:13 59:17 59:20 117:14 117:20 117:23

**engages**(1) 165:10
**engender**(1) 45:21
**england**(1) 25:12
**english**(3) 4:38 9:25 208:15
**enough**(2) 33:15 193:13
**ensue**(1) 107:10
**ensure**(6) 30:5 36:10 54:14 170:20 202:17 203:20

**entails**(3) 36:7 37:2 72:13
**enter**(4) 128:9 133:1 152:14 181:8
**entering**(1) 164:12
**enterprise**(7) 120:19 121:12 122:6 126:1 131:7 150:13 154:6

**entire**(2) 51:22 115:16
**entirely**(6) 114:5 115:15 121:18 128:23 189:10 190:13

**entirety**(1) 98:4
**entities**(2) 36:5 51:11
**entitle**(1) 207:11

**entitled**(19) 50:18 51:8 52:5 52:5 52:9 52:16 52:23 85:7 85:21 86:15 86:23 95:4 128:22 128:23 141:3 163:20 192:14 192:18 192:23 193:22

**entity**(4) 29:10 31:1 81:10 81:11
**environment**(1) 131:1
**eos**(2) 9:9 9:9
**ephraim**(1) 9:22
**equally**(4) 27:21 46:14 177:1 203:2
**equation**(1) 46:20
**equipoise**(1) 141:18
**equipped**(1) 136:23
**equity**(17) 25:2 25:5 25:8 36:18 36:21 149:17 150:2 150:16 151:4 151:5 151:16 152:3 152:21 153:12 154:2 154:21 178:11

**equivalent**(5) 189:1 189:12 190:3 190:7 193:5

**erroneous**(1) 40:14
**especially**(3) 15:6 107:18 204:20
**esq**(120) 1:24 1:25 1:26 1:27 1:28 1:35 2:6 2:13 2:14 2:20 2:21 2:29 2:36 2:42 3:5 3:6 3:7 3:8 3:9 3:10 3:11 3:12 3:18 3:25 3:26 3:32 3:39 4:6 4:7 4:13 4:14 4:15 4:16 4:17 4:18 4:19 4:25 4:26 4:33 4:39 4:40 5:5 5:6 5:7 5:13 5:14 5:20 5:27 5:28 5:34 5:44 6:6 6:11 6:13 6:15 6:19 6:20 6:21 6:22 6:26 6:31 6:33 6:37 7:5 7:7 7:9 7:11 7:13 7:16 7:18 7:19 7:21 7:23 7:25 7:29 7:36 7:40 8:7 8:11 8:13 8:18 8:22 8:26 8:30 8:34 8:36 8:38 8:40 8:44 9:6 9:10 9:14 9:16 9:18 9:22 9:26 9:33 9:41 10:6 10:10 10:14 10:18 10:20 10:24 10:28 10:32 10:37 10:39 10:43 10:44 11:6 11:8 11:12 11:19 11:23 11:34 11:36 11:38 12:10 12:19

**essential**(1) 42:13
**essentially**(9) 30:11 31:16 51:15 56:9 58:8 118:24 152:5 161:14 169:12

**establish**(1) 73:15
**established**(2) 97:25 175:19
**establishes**(1) 67:2
**estate**(3) 186:9 186:23 193:22
**esther**(1) 6:37
**estimate**(10) 122:13 142:3 154:2 154:4 154:7 154:9 155:6 159:21 160:1 203:7

**estimated**(1) 154:11
**estimation**(1) 209:18
**evaluate**(5) 26:16 29:6 29:12 40:3 136:23
**evaluating**(3) 32:24 115:15 122:1
**eve**(1) 3:25
**even**(24) 19:8 33:15 37:1 38:15 41:3 43:1 44:19 47:24 52:11 71:24 79:21 80:13 80:13 84:16 95:14 135:7 144:17 150:8 157:18 163:8 165:21 166:20 188:15 189:14

**event**(10) 37:8 44:19 49:24 56:8 64:14 65:19 92:21 95:9 102:22 148:14
**eventual**(1) 146:22
**ever**(3) 50:14 102:9 134:4
**every**(2) 195:25 196:1
**everyone**(1) 13:3
**everything**(1) 70:6
**evidence**(12) 20:11 20:14 21:11 21:12 105:10 124:22 142:10 142:20 142:25 143:19 143:25 203:3

**evidentiary**(3) 17:2 57:11 206:18
**evidently**(1) 100:15
**exact**(3) 168:18 182:12 190:5
**exactly**(5) 64:7 104:4 181:22 181:25

| Word | Page:Line |
| --- | --- |
| examination(20) | 20:24 23:6 58:15 59:13 76:13 76:25 84:5 91:2 91:4 98:2 102:12 106:6 109:2 117:4 117:7 124:4 148:16 149:5 195:7 196:11 |
| examine(2) | 31:17 39:24 |
| examiner(24) | 141:17 141:23 142:3 142:17 142:23 143:20 143:21 143:22 145:17 179:13 179:20 180:12 180:23 180:24 181:7 181:19 181:24 182:13 183:9 184:8 185:13 186:4 189:7 196:4 |
| examiner's(1) | 141:21 |
| examiner's(4) | 180:19 180:22 182:6 182:9 |
| examining(1) | 107:19 |
| example(19) | 18:2 19:2 19:6 72:19 89:4 98:3 104:25 114:13 120:17 121:4 141:23 142:15 143:15 144:7 145:3 145:4 145:24 178:10 187:6 |
| examples(15) | 113:18 119:7 142:6 142:16 153:20 153:24 183:5 183:7 183:10 183:11 183:14 184:7 188:16 195:12 196:13 |
| exceed(2) | 51:16 51:21 |
| exceeds(1) | 84:15 |
| except(1) | 146:9 |
| exception(2) | 51:5 51:6 |
| exceptions(1) | 33:24 |
| excerpt(4) | 48:14 48:16 49:16 180:8 |
| excerpts(1) | 82:16 |
| exchange(1) | 55:9 |
| exchanged(2) | 201:9 206:23 |
| excludes(1) | 128:21 |
| exclusive(2) | 167:9 170:6 |
| excuse(1) | 140:17 |
| executive(2) | 78:4 82:23 |
| executives(4) | 126:6 130:16 130:20 131:2 |
| executory(3) | 18:3 18:9 18:16 |
| exercisable(2) | 126:17 127:8 |
| exercise(5) | 58:9 73:14 126:22 191:22 191:24 |
| exercised(3) | 32:19 96:4 103:3 |
| exercising(2) | 90:7 98:5 |
| exhibit(32) | 20:15 20:16 20:18 25:19 26:18 26:21 35:23 36:4 36:25 37:22 43:4 47:22 48:9 48:9 48:9 48:10 55:14 55:15 63:25 64:8 77:21 82:11 82:17 93:20 93:23 94:4 95:11 102:12 102:16 124:24 125:4 180:5 |
| exhibits(16) | 20:10 20:19 21:6 21:10 21:12 21:16 21:23 22:5 22:8 22:9 22:15 23:3 47:25 58:24 64:1 213:19 |
| exist(4) | 28:2 43:17 46:18 168:10 |
| existence(1) | 160:2 |
| existing(2) | 28:23 29:13 |
| exists(1) | 177:9 |
| exit(2) | 135:3 136:5 |
| expand(5) | 60:17 85:24 86:6 86:7 113:22 |
| expanded(1) | 82:2 |
| expect(4) | 15:19 73:7 202:24 208:17 |
| expectation(1) | 98:6 |
| expectations(1) | 203:21 |
| expected(6) | 117:23 120:14 121:23 135:23 135:25 170:13 |
| expedited(2) | 166:16 167:18 |
| expense(3) | 129:16 167:24 171:14 |
| expenses(2) | 128:24 129:1 |
| experience(31) | 24:24 26:1 32:19 32:21 43:20 50:12 56:7 68:6 68:9 69:1 69:4 71:3 71:17 71:25 92:9 92:13 98:7 98:23 101:17 101:22 102:2 103:7 109:19 109:25 110:12 112:1 112:12 112:13 118:23 118:25 120:7 |
| experiences(1) | 119:4 |

| Word | Page:Line |
| --- | --- |
| expert(21) | 25:23 26:4 33:1 54:18 110:19 111:4 111:5 111:6 111:22 113:11 116:24 117:16 119:17 119:21 119:23 120:25 123:2 123:16 148:2 177:18 177:21 |
| expertise(14) | 109:16 111:12 111:13 114:23 115:20 121:3 121:18 121:10 121:16 125:1 140:21 141:7 148:4 196:9 |
| experts(1) | 105:25 |
| explain(10) | 60:18 74:13 86:12 100:2 103:12 126:2 126:12 132:20 134:9 141:15 |
| explained(2) | 91:20 96:19 |
| explanatory(4) | 68:2 68:24 69:1 69:4 |
| explicit(1) | 198:8 |
| explicitly(2) | 170:16 179:24 |
| expose(1) | 175:19 |
| exposure(1) | 177:12 |
| express(4) | 71:23 71:24 80:14 158:25 |
| expressed(4) | 84:13 86:8 109:11 139:12 |
| expression(1) | 165:23 |
| expressly(10) | 31:25 49:23 74:5 119:25 158:19 181:7 181:12 181:14 181:19 181:25 |
| extend(1) | 106:11 |
| extended(2) | 188:19 203:5 |
| extensive(1) | 39:10 |
| extent(18) | 34:25 58:9 103:3 111:3 111:6 129:4 137:4 150:20 150:22 151:8 155:1 155:4 159:20 167:11 176:22 177:3 177:8 207:17 |
| extract(1) | 152:15 |
| face(1) | 149:24 |
| facilitate(1) | 106:9 |
| facilitated(1) | 194:10 |
| fact(33) | 27:22 32:11 43:22 50:18 53:12 54:5 54:6 64:2 65:3 71:18 75:5 88:9 90:1 94:1 96:21 96:23 98:6 117:14 122:6 127:15 153:11 158:21 159:19 166:12 169:20 170:4 171:9 171:19 173:14 178:10 185:18 186:9 198:24 |
| factor(2) | 87:8 87:10 |
| factors(7) | 27:17 28:1 44:25 45:1 45:5 90:14 122:15 |
| facts(3) | 32:1 44:7 54:7 |
| failed(2) | 146:19 178:9 |
| fails(1) | 150:20 |
| failure(7) | 141:14 146:18 180:17 180:21 180:22 181:2 191:13 |
| fair(6) | 24:16 166:2 169:13 180:15 191:25 193:13 |
| fairly(4) | 102:2 128:13 196:10 203:5 |
| fairness(1) | 107:14 |
| fairpoint(1) | 25:11 |
| faith(2) | 14:15 166:5 |
| falling(2) | 19:11 28:14 |
| fallon(1) | 11:8 |
| faltas(2) | 11:11 11:12 |
| familiar(14) | 28:1 36:1 55:24 74:7 85:6 85:11 89:12 104:22 110:8 113:9 113:12 114:5 131:23 159:3 |
| familiarity(1) | 119:3 |
| far(3) | 48:5 53:1 112:20 |
| fargo(1) | 11:22 |
| farther(1) | 16:7 |
| fast(2) | 73:2 73:5 |
| favor(2) | 14:16 176:21 |
| favorable(1) | 88:17 |

| Word | Page:Line |
| --- | --- |
| fcc(148) | 20:9 20:11 20:15 21:23 22:5 22:8 23:16 23:18 24:12 24:15 24:20 26:24 27:2 27:16 27:18 27:21 27:23 28:6 28:9 29:1 29:3 29:6 30:10 30:12 30:16 32:12 32:13 32:19 32:22 32:23 33:24 34:2 34:6 34:22 37:15 38:5 38:22 39:19 39:23 40:9 40:16 40:17 40:22 41:4 41:10 41:16 41:17 41:24 42:5 42:21 43:1 43:9 44:9 44:10 44:19 45:10 47:21 47:25 48:4 48:9 49:22 50:1 50:13 51:8 52:6 53:14 54:9 55:12 55:16 55:18 56:3 56:7 56:11 56:12 56:17 56:19 56:22 58:3 63:20 64:16 64:17 65:4 65:4 65:24 66:3 66:6 66:15 66:18 67:13 67:24 68:2 68:25 69:5 69:25 70:1 70:3 70:11 70:24 71:17 72:1 72:2 72:12 72:21 73:1 73:6 73:9 73:11 74:2 74:4 74:7 74:11 74:20 74:24 75:1 75:8 75:15 75:22 76:3 77:8 82:10 87:23 88:13 89:1 89:3 89:8 89:18 93:5 93:7 93:8 93:11 93:12 97:9 101:19 101:24 102:4 102:7 102:23 103:4 103:10 105:1 127:12 127:14 162:6 162:12 213:23 213:24 213:25 |
| fcc's(32) | 27:19 29:17 30:8 31:12 31:13 32:2 32:3 32:17 34:14 36:20 38:3 38:19 38:22 38:24 39:11 39:21 40:25 41:9 45:3 45:9 46:10 47:1 47:22 50:2 53:4 54:3 54:8 58:4 58:5 88:18 89:17 96:13 |
| feasible(1) | 113:6 |
| feature(1) | 147:6 |
| february(2) | 55:22 209:16 |
| federal(2) | 85:6 85:13 |
| fees(2) | 166:20 168:2 |
| feld(9) | 5:4 8:10 16:19 106:4 118:8 179:11 199:17 204:14 211:2 |
| felt(2) | 92:20 |
| few(10) | 14:12 25:1 37:20 71:21 107:13 109:13 114:22 153:16 196:18 206:24 |
| fewer(1) | 154:24 |
| fiduciary(17) | 170:10 170:12 170:15 170:19 171:8 171:10 171:12 171:19 172:6 172:10 172:14 172:19 173:12 173:15 173:21 174:13 175:20 |
| fifteen(7) | 145:22 152:3 152:7 153:1 153:9 154:12 154:16 |
| fifteen-percent(1) | 145:20 |
| fifty(4) | 136:20 146:8 150:2 150:7 |
| fifty/fifty(1) | 164:18 |
| figure(2) | 120:13 203:12 |
| file(1) | 163:1 |
| filed(12) | 17:1 18:2 28:9 48:25 55:21 65:4 74:3 76:14 82:12 93:7 201:9 208:16 |
| filing(10) | 55:12 55:15 64:3 68:22 68:24 69:4 69:6 99:5 193:4 209:11 |
| filings(3) | 62:5 69:1 87:5 |
| final(6) | 48:12 76:14 76:20 77:7 132:19 198:16 |
| finally(6) | 15:8 15:8 19:10 46:5 10:11 146:18 |
| finance(15) | 109:20 110:1 110:2 110:4 113:18 115:4 115:9 115:10 115:14 116:1 116:2 116:7 118:12 118:24 119:4 |
| financial(4) | 116:4 116:16 118:17 118:21 |
| financing(2) | 163:6 163:10 |
| find(13) | 120:13 129:24 143:19 144:5 155:9 179:21 179:25 180:13 184:16 187:7 188:16 190:6 203:18 |

| Word | Page:Line |
| --- | --- |
| finding(11) | 89:19 90:17 143:2 144:8 144:9 185:15 186:25 187:11 187:19 187:20 187:22 |
| findings(2) | 181:3 181:9 |
| fine(1) | 200:3 |
| finger(2) | 3:17 8:25 |
| finish(4) | 68:18 83:22 83:23 188:17 |
| finished(3) | 38:16 83:24 83:24 |
| firm(9) | 23:11 23:16 24:3 59:23 60:3 60:4 60:5 60:6 114:16 |
| firm's(2) | 23:25 59:25 |
| first(48) | 17:24 20:7 22:19 23:1 26:15 27:1 27:6 28:15 30:3 33:23 36:1 37:22 37:24 38:9 41:4 45:7 47:6 47:8 47:9 55:7 64:2 66:15 67:18 78:17 82:22 85:23 91:21 93:24 95:8 96:21 103:24 107:16 109:18 111:12 126:1 128:10 134:22 140:13 141:13 148:18 177:17 181:17 185:9 195:11 200:6 202:10 206:18 208:7 |
| fit(1) | 30:9 |
| five(5) | 18:22 58:18 138:25 146:10 151:5 |
| five-minute(1) | 139:2 |
| fix(3) | 138:13 198:24 199:4 |
| fixable(3) | 137:24 198:22 198:23 |
| flagg(45) | 1:28 21:2 21:4 21:8 21:8 21:24 22:1 22:10 22:18 22:22 23:2 23:5 23:7 23:9 26:3 26:11 26:12 34:13 42:20 49:1 49:5 49:10 49:14 56:24 57:3 57:9 57:12 57:16 58:13 68:11 68:13 83:15 83:25 88:1 91:3 91:5 92:8 98:14 98:16 99:8 101:14 103:24 104:7 104:16 104:19 |
| flagg's(1) | 99:10 |
| flawed(1) | 27:8 |
| flexibility(8) | 44:1 126:5 126:13 126:24 129:3 130:3 161:9 206:10 |
| flip(2) | 19:4 82:14 |
| flom(1) | 7:35 |
| floor(2) | 2:8 2:24 |
| florsheim(1) | 10:43 |
| flow(4) | 17:20 30:5 144:9 204:1 |
| flows(1) | 120:14 |
| focus(6) | 14:10 15:5 65:21 125:7 147:9 183:3 |
| focused(4) | 46:23 96:3 172:22 194:16 |
| focusing(3) | 14:17 30:25 112:14 |
| follow(7) | 138:14 183:16 184:18 186:25 187:2 187:5 206:11 |
| following(3) | 78:11 158:5 201:16 |
| follows(2) | 48:11 201:8 |
| footnote(1) | 178:16 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

for(255) 1:2 1:23 2:4 2:19 2:28 2:34 2:41 3:4 3:31 4:4 4:32 4:38 5:4 5:42 6:5 6:9 6:30 6:40 7:4 7:15 7:32 7:43 8:5 8:21 8:33 9:5 9:9 9:13 9:21 9:25 9:36 9:39 10:4 10:9 10:13 10:17 10:23 10:27 10:30 10:42 11:5 11:11 11:16 11:22 11:27 11:32 11:41 12:4 12:9 12:12 12:16 12:22 12:26 12:32 12:36 12:40 13:9 13:15 13:16 13:18 14:4 14:5 14:21 15:12 15:15 15:18 16:2 16:5 16:12 16:19 18:2 18:7 19:2 19:6 20:11 21:9 22:23 23:23 24:4 24:6 24:9 24:19 24:23 25:8 25:13 25:15 26:24 26:25 27:3 27:6 28:21 29:20 30:25 33:4 33:15 35:2 39:12 40:5 40:20 41:22 42:4 47:19 50:2 51:10 52:1 52:13 53:19 55:10 55:17 55:23 57:7 59:3 59:3 60:1 60:8 60:16 61:17 63:10 63:11 63:11 65:1 69:2 72:19 74:5 74:22 78:3 78:6 78:9 79:10 79:22 79:25 80:6 81:10 84:1 85:1 85:2 85:3 85:12 85:15 87:11 88:16 89:4 89:9 90:17 90:22 91:20 94:8 95:24 98:3 101:1 101:23 105:7 105:23 106:3 106:4 107:8 108:19 109:18 110:17 113:1 114:12 114:2 115:11 117:18 117:18 120:10 120:14 121:3 121:11 121:21 121:22 121:23 122:1 122:3 122:14 126:5 126:7 126:16 126:18 127:15 130:7 130:18 130:22 135:23 136:1 136:9 137:12 140:18 141:23 143:15 143:19 143:25 144:7 146:4 146:6 147:1 152:10 153:15 155:4 156:4 157:9 160:3 161:4 161:10 162:6 163:5 164:7 168:7 168:9 168:10 168:11 170:17 173:24 177:24 179:11 179:11 182:19 183:14 186:7 189:12 189:24 192:3 192:12 193:15 195:10 195:22 195:25 196:1 197:7 199:16 199:17 200:5 200:23 201:8 201:22 202:2 202:25 203:5 203:9 203:24 204:14 204:18 205:3 205:21 207:7 208:7 208:8 208:14 209:4 209:18 211:1 211:3 211:9 211:16

force(1) 150:22
foreclose(1) 184:4
foregoing(1) 212:2
foreign(3) 89:21 90:4 91:22
forensic(2) 119:12 119:15
forgive(1) 167:8
form(10) 34:23 46:3 64:5 64:5 74:7 88:1 123:4 132:4 155:1 206:4

formal(8) 119:5 119:9 119:11 184:21 185:1 186:15 186:16 186:19

formally(1) 176:5
forman(1) 1:33
formed(1) 109:10
former(4) 7:32 35:12 122:3 122:4
formidable(1) 107:21
forms(1) 34:22
formulation(1) 105:4
forth(13) 60:25 64:12 70:4 81:24 82:18 83:5 92:18 97:24 98:4 99:1 175:9 205:17 207:21

forthcoming(1) 116:5
fortification(1) 107:17
forty(1) 153:17
forty-eight(1) 166:10
forty-five(1) 156:20
forum(2) 166:17 166:19
forward(7) 17:2 17:3 29:14 164:11 165:14 174:3 199:13

found(4) 43:17 184:19 190:1 190:5
foundation(2) 12:17 12:18
four(8) 18:22 46:24 53:24 82:24 106:22 134:12 135:19 182:18

four-and-a-half-billion(1) 134:12
fourth(2) 44:11 52:18
fox(2) 8:18 25:14
fraction(1) 158:13

framework(1) 51:25
francisco(1) 6:15
frank(2) 11:16 11:17
frankel(1) 9:30
fraudulent(19) 16:13 110:9 116:13 116:19 182:19 183:13 184:9 184:17 184:19 185:1 185:16 185:20 186:3 186:6 186:11 186:13 186:24 187:1 187:7

free(1) 41:12
freed(1) 190:14
freedom(9) 50:5 60:5 60:6 62:13 83:8 83:21 89:5 89:10 91:8

freely(1) 92:18
frequently(1) 116:2
friday(3) 18:2 54:23 211:9
friedman(63) 5:25 5:27 8:16 11:33 20:5 20:6 20:16 20:21 20:25 21:20 21:23 22:12 26:9 48:18 48:20 49:7 56:23 56:25 58:16 58:21 58:23 59:2 59:8 59:10 59:11 59:12 59:14 68:12 68:17 68:18 68:20 68:23 69:4 83:19 83:22 83:24 84:9 87:17 87:20 88:3 88:4 91:1 91:14 91:21 92:4 92:6 95:14 96:9 97:2 97:17 98:11 98:19 98:21 100:21 100:24 103:15 104:5 104:9 104:15 104:20 105:3 105:9

friedman's(4) 49:16 93:10 93:17 93:24
friendly(2) 33:10 51:3
from(74) 14:9 18:1 19:12 21:8 30:3 32:13 32:17 33:21 36:12 38:18 41:16 42:21 48:14 48:10 58:19 64:4 64:6 65:24 66:1 67:24 69:25 77:1 82:16 96:25 102:20 107:9 108:3 108:6 112:1 114:5 119:4 122:19 129:25 130:23 134:23 136:5 136:1 140:3 140:22 141:18 141:21 146:24 154:10 154:17 156:10 160:10 163:8 166:1 167:23 173:14 174:18 176:11 177:16 191:1 191:17 192:5 192:15 193:23 198:9 202:4 202:11 204:23 205:3 205:9 207:24 208:15 208:16 208:21 212:3

front(8) 63:25 77:20 85:10 123:3 155:8 155:15 155:21 178:5

fruitful(1) 112:17
full(14) 22:23 36:16 108:19 113:5 135:23 145:7 146:11 146:17 146:24 150:22 177:1 177:12 177:13 193:10

fullest(1) 167:11
fund(7) 9:5 52:4 52:4 52:9 52:10 52:15 86:14

fundamental(2) 11:27 11:28
funds(6) 51:6 84:23 84:25 85:2 86:1 87:2
further(17) 20:21 45:21 47:1 55:1 55:11 58:13 64:14 71:21 91:1 98:16 105:11 148:15 195:15 195:7 199:6 210:18 213:2

future(3) 127:2 135:22 165:14
gain(4) 173:24 174:11 175:12 177:12
gannette(5) 50:22 50:24 51:24 60:3 60:4
garrison(1) 10:5
gather(4) 121:7 151:14 152:19 159:4
gave(23) 17:6 71:5 71:8 72:6 72:9 73:24 79:6 76:24 80:19 101:13 102:14 154:16 161:2 179:13 179:16 181:1 183:4 183:6 183:11 184:8 186:4 188:25 196:2

gavin(1) 10:32
gbs(1) 212:9
gears(1) 168:9
geddes(1) 5:19
gee(2) 130:17 133:18
general(4) 74:19 115:6 146:5 147:4
generally(3) 42:14 113:12 174:21
generic(1) 138:7

george(2) 6:5 6:6
germane(2) 54:20 56:16 90:1
get(55) 16:21 18:23 37:12 44:23 48:21 51:2 68:14 78:18 79:2 95:17 98:8 106:8 107:16 115:23 127:4 127:6 129:13 130:1 132:14 132:17 133:19 137:1 145:8 146:6 146:7 147:3 152:7 152:25 153:9 154:6 154:12 158:1 162:13 162:17 162:20 162:22 162:23 163:1 163:8 166:20 167:22 168:3 168:6 169:6 172:25 174:4 174:4 175:17 183:4 184:7 188:11 197:17 198:7 198:9 198:10

gets(1) 190:20
getting(3) 42:10 146:14 146:14
give(21) 14:11 15:23 34:8 69:1 74:14 79:15 81:21 101:25 112:5 119:6 119:10 145:19 145:19 153:20 156:15 179:7 186:2 189:3 203:9 205:5 206:6

given(13) 13:13 51:25 106:18 120:7 140:22 144:12 147:19 147:21 153:5 201:1 202:3 203:7 205:4

gives(5) 73:10 151:22 164:2 169:21 192:9
giving(1) 161:6
global(1) 11:11
gloss(1) 34:6
gnet(5) 83:21 84:11 84:14 84:23 87:1
goes(8) 67:9 67:11 83:16 103:25 154:22 173:14 196:8 196:14

going(56) 15:24 27:2 27:23 28:4 33:22 37:19 39:19 44:1 44:4 48:21 46:18 48:21 48:23 57:3 57:4 64:18 67:23 68:9 70:25 77:23 84:15 85:9 86:12 92:21 93:5 103:23 104:16 106:1 106:6 106:18 106:21 106:25 109:13 112:10 115:24 116:14 125:19 129:2 130:18 130:21 132:5 132:15 132:17 134:11 145:19 150:24 165:13 168:7 179:6 180:18 184:20 190:19 199:20 206:8 208:20

golden(7) 5:5 16:18 16:19 17:9 204:13 204:14 206:7

goldfarb(2) 4:26 6:20
goldis(1) 10:37
goldman(3) 10:39 11:5 11:5
gone(3) 13:15 153:2 153:10
good(30) 3:14 14:15 16:18 17:12 22:20 23:8 23:9 59:5 59:16 61:21 106:3 108:5 109:4 109:5 117:9 118:10 133:9 133:9 133:13 136:25 137:11 138:6 146:7 147:7 166:5 179:9 207:4 208:4 211:12

gordon(51) 2:4 7:7 10:31 37:25 38:3 38:12 39:9 43:7 47:11 47:17 47:24 48:17 50:6 52:24 60:12 61:12 61:24 62:6 62:14 62:23 63:5 63:14 65:5 76:10 76:15 76:19 76:21 77:7 77:8 77:12 77:17 79:8 79:8 79:11 79:15 79:23 80:6 81:14 83:20 87:24 88:5 88:24 89:9 91:9 93:16 97:4 99:23 100:4 101:1 101:7 207:6

gordon's(9) 44:8 47:10 48:3 48:7 48:17 49:17 50:4 76:11 100:6

got(9) 19:2 75:7 88:16 106:21 113:17 115:23 127:12 129:21 143:4

govern(1) 49:25
governance(20) 34:2 36:18 77:25 82:20 110:13 110:14 110:15 110:21 110:24 111:14:13 123:17 123:19 124:17 132:20 148:19 149:8 152:4 159:23 197:3

governing(1) 85:8
governs(1) 75:14
graem(1) 6:19
grand(1) 2:15

grant(2) 88:14 155:21
granted(5) 28:22 46:5 76:3 99:2 101:23
granting(2) 94:4 209:18
grants(1) 157:19
great(5) 4:32 10:17 17:25 19:3 211:8
greater(1) 115:19
greg(1) 7:16
gregory(1) 8:18
greissman(1) 11:23
grippo(1) 6:5
grounds(2) 14:21 196:7
group(14) 25:7 25:8 54:25 55:9 80:20 80:23 80:25 81:15 81:16 82:3 82:5 101:2 101:9 210:16

groupings(1) 19:24
groups(1) 23:24
growth(1) 121:23
gruss(1) 12:32
gruszka(1) 11:19
guarantees(1) 190:20
guess(5) 44:25 107:14 148:6 205:2 205:22
guidance(3) 16:22 203:9 204:18
guide(1) 33:10
gump(9) 5:4 8:10 16:19 106:4 118:7 179:10 199:17 204:14 211:2

guys(1) 129:9
had(55) 16:4 18:25 19:18 25:7 32:4 32:6 32:7 42:15 51:11 52:20 54:23 54:24 69:13 76:22 83:11 90:10 90:14 96:4 96:6 98:23 101:22 105:22 107:24 109:6 117:4 117:22 117:24 118:2 121:20 125:11 127:7 127:10 134:7 139:16 147:10 149:20 167:3 177:12 178:21 184:9 190:25 191:12 194:6 195:12 197:8 197:24 198:5 201:12 203:1 203:15 204:7 204:25 205:7 207:8 210:15

hadn't(1) 199:2
hale(1) 10:35
half(2) 53:8 106:12
half-hour(1) 200:2
hampshire(1) 5:35
hand(9) 31:18 34:10 53:1 58:24 72:6 72:13 108:13 108:14 146:12

handed(2) 124:24 185:6
handling(6) 38:22 40:25 41:17 45:3 96:14 148:18

hanging(1) 128:18
happen(6) 36:22 39:21 127:3 134:4 168:22 168:25

happened(1) 174:7
happens(2) 66:16 78:4
happy(2) 111:25 207:21
hard(5) 73:2 73:4 73:18 106:23 188:2
harmed(1) 166:14
harrisburg(1) 1:44
hartford(2) 3:34 88:10
hartson(1) 24:5
harvard(1) 24:9
has(74) 13:14 14:1 14:18 15:1 15:2 18:22 29:6 29:12 32:9 32:23 33:12 34:6 34:11 36:14 38:16 40:9 41:8 41:24 45:14 45:16 46:5 47:11 49:2 49:7 50:6 52:6 52:7 52:9 52:12 59:6 60:6 63:20 66:6 66:7 66:25 67:6 69:25 70:1 74:11 81:9 84:14 87:1 87:5 87:6 90:25 91:9 93:16 110:16 115:5 117:17 128:2 129:22 131:21 141:17 145:7 156:6 156:16 158:11 161:17 170:1 170:5 171:12 174:25 175:6 190:18 190:19 197:11 202:10 202:23 204:22 205:13 208:9 208:10 209:5

hauer(9) 5:4 8:10 16:19 106:4 118:7 179:11 199:17 204:14 211:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**have**(301) 13:7 13:12 13:21 14:3 14:7 14:12 15:4 15:15 16:10 17:1 17:16 17:18 17:25 18:4 19:3 19:6 19:9 19:10 19:25 20:9 20:12 21:10 21:21 22:6 22:12 24:19 25:10 26:18 26:20 29:5 35:1 35:6 35:6 35:8 35:13 35:16 35:17 37:16 40:9 43:20 44:1 44:11 47:17 48:22 48:25 50:14 50:16 51:2 52:20 53:12 54:1 54:19 54:21 55:20 56:2 56:18 56:21 57:20 58:12 58:1 58:16 58:23 59:2 59:17 60:12 60:13 60:1 60:19 60:23 61:7 61:8 61:12 61:22 62:4 62:7 62:14 62:25 63:6 63:15 64:1 64:11 65:5 65:7 65:12 65:15 65:20 65:22 67:24 68:25 69:10 69:13 69:14 69:18 69:19 70:13 71:2 71:7 71:12 71:22 73:2 73:7 74:20 76:2 76:21 77:10 77:11 77:15 77:22 77:24 79:12 79:22 79:25 80:23 81:8 81:15 81:17 82:5 82:11 83:7 85:9 86:8 87:4 88:6 91:1 92:1 92:2 92:9 92:22 92:23 93:2 93:14 97:4 97:13 100:5 100:11 101:10 101:22 102:9 102:10 103:16 103:1 103:22 104:24 105:11 106:22 106:24 107:5 109:6 109:9 109:10 109:12 110:1 111:13 112:17 114:17 115:17 115:17 115:20 115:25 116:3 116:5 117:5 118:3 118:11 118:18 118:19 118:20 119:3 119:5 119:9 119:10 119:11 119:13 119:16 119:2 119:23 120:8 121:3 121:7 121:11 121:16 122:5 122:9 122:24 123:11 123:24 124:6 125:14 127:18 127:19 128:23 130:4 130:1 130:18 130:20 130:23 131:4 132:18 132:23 133:4 133:8 134:14 136:25 137:4 137:20 138:7 138:8 138:15 138:16 138:21 140:9 143:1 143:16 144:4 144:10 144:23 145:21 148:15 149:21 150:19 152:14 153:14 153:16 153:24 155:8 155:15 155:20 156:5 156:23 157:5 157:10 157:1 158:16 159:22 160:9 160:15 160:24 162:1 162:17 163:8 163:11 163:11 163:16 164:20 165:21 167:3 167:6 167:20 168:7 170:20 171:10 171:23 172:6 172:10 173:1 174:2 175:1 176:23 177:5 177:16 177:22 178:4 178:9 178:11 178:25 180:2 183:8 183:17 186:15 187:24 188:24 189:16 191:19:25 192:21 192:25 193:21 194:8 194:18 194:22 195:4 196:10 197:15 198:12 198:24 199:1 199:6 199:22 201:5 202:25 203:14 203:15 205:7 206:4 206:10 206:12 207:11 207:18 208:6

**have**(3) 208:11 208:20 211:4
**haven't**(4) 13:13 88:16 151:6 172:21
**haven't**(1) 178:2
**having**(16) 16:4 34:7 44:3 71:13 77:9 81:1 90:9 90:13 113:22 129:25 157:1 158:22 197:11 197:20 198:9 211:7
**hay**(1) 31:16
**hazeltine**(1) 3:37
**he'd**(1) 107:9
**he's**(8) 38:12 45:20 48:23 57:3 107:15 111:6 121:15 142:4
**he,"**(1) 185:13
**head,"**(5) 75:7 132:16 153:20 181:24 182:16
**headed**(2) 36:5 36:25
**heading**(2) 155:12 178:7
**hear**(10) 14:1 14:2 14:8 16:25 65:9 118:4 167:18 202:11 205:2 209:2
**heard**(6) 19:9 30:7 35:4 140:18 147:17 202:6
**hearing**(7) 48:14 76:16 203:1 209:7 210:3 210:4 211:21
**hearings**(2) 203:3 206:18
**hearsay**(2) 20:17 48:21
**heartburn**(1) 14:5
**heavily**(1) 120:4

**held**(25) 28:17 35:19 38:2 52:9 54:19 78:25 80:16 86:20 87:2 87:24 101:6 103:1 127:16 130:15 136:12 150:1 151:10 152:2 152:5 154:3 154:8 155:1 158:3 173:15 207:14
**helpful**(9) 13:19 14:17 14:20 14:20 14:21 16:21 203:9 203:18 206:2

**hence**(1) 29:21
**henderson**(1) 7:18
**hercules**(1) 2:22
**here**(36) 24:25 38:20 39:21 40:1 40:8 42:12 43:3 44:23 59:8 62:9 70:10 71:22 72:3 83:5 92:15 95:15 100:8 107:7 107:15 109:15 122:5 127:15 130:9 131:12 131:17 132:19 141:14 143:4 143:21 147:9 177:22 183:25 197:9 208:10 209:14

**here's**(4) 120:12 121:21 121:22 159:25
**hereby**(1) 78:23
**hesitation**(1) 61:17
**he's**(1) 205:4
**high**(2) 122:19 187:5
**higher**(9) 51:9 51:18 52:16 85:15 86:10 86:16 86:23 86:23 188:3
**highlight**(2) 13:17 112:17
**highlighted**(1) 172:4
**highly**(12) 141:18 141:19 143:18 144:5 145:18 182:9 185:20 189:8 189:9 190:13 190:24 199:19
**him**(11) 80:12 104:2 107:4 107:5 107:8 107:19 141:1 141:3 147:23 182:14 196:13
**himself**(3) 18:19 27:9 180:25
**hinder**(2) 142:18 142:20
**hire**(1) 129:15
**his**(48) 32:11 37:23 40:8 43:4 43:5 44:6 44:17 44:24 44:25 46:9 46:23 48:8 48:24 50:4 50:5 57:1 57:5 68:15 68:18 83:18 84:4 104:2 107:9 107:10 111:12 111:17 111:19 112:1 125:9 132:2 139:18 139:20 139:21 141:2 141:2 141:3 147:11 148:12 179:13 179:16 179:21 180:13 180:14 181:18 181:13 195:14 195:22 196:3

**history**(1) 24:1
**hoc**(2) 31:22 32:8
**hogan**(2) 24:4 24:5
**hold**(15) 23:21 84:23 96:1 126:17 134:23 135:9 135:19 135:19 137:7 137:8 151:14 155:5 174:10 207:12 207:13
**holder**(3) 100:14 100:17 138:4
**holders**(12) 94:20 99:15 99:19 100:3 100:10 100:16 101:5 155:21 170:8 172:7 173:13 209:8
**holding**(7) 31:2 84:16 90:21 132:15 149:9 182:16 192:13
**holdings**(2) 82:21 82:23
**holds**(4) 52:10 128:1 158:12 197:4

**honor**(133) 13:4 15:13 16:1 16:18 16:21 17:9 17:12 17:20 17:24 18:15 20:3 20:5 20:25 21:2 21:8 21:21 22:10 22:18 22:22 23:2 26:3 26:9 26:11 27:1 33:9 33:18 37:5 41:22 42:10 45:10 48:18 56:9 56:23 57:3 58:14 58:17 58:21 59:2 59:3 59:10 68:11 83:15 83:25 87:18 91:3 92:4 98:11 98:14 100:21 103:16 105:15 106:3 106:20 107:25 108:5 108:7 108:18 108:25 110:18 110:24 111:1 111:9 111:25 116:22 117:2 118:2 118:6 123:10 123:24 124:3 124:21 138:21 139:1 139:5 139:9 140:17 140:24 147:16 147:19 148:1 148:10 148:14 148:1 148:18 148:22 149:2 178:25 179:7 179:10 185:3 194:18 194:23 195:4 196:7 196:9 196:16 199:7 199:9 199:16 199:18 200:1 200:12 200:19 200:22 201:20 201:25 202:2 202:15 202:21 203:23 204:13 204:16 204:19 204:22 205:13 205:22 206:7 206:1 206:16 206:16 207:3 207:4 208:4 208:14 208:24 209:3 209:4 209:16 210:11 210:17 211:1 211:3 211:11

**honor's**(2) 51:2 59:3
**honorable**(1) 1:18
**hope**(5) 18:12 33:18 104:12 115:23 206:23
**hopefully**(1) 106:2
**horan**(1) 4:33
**hour**(5) 106:12 106:21 107:2 107:9 200:1
**hours**(2) 106:22 166:10
**how**(51) 13:23 13:25 14:12 17:19 17:21 19:17 20:1 30:9 32:19 35:14 41:16 59:5 59:5 67:4 68:7 70:7 71:17 75:22 94:12 98:12 99:25 100:5 103:21 105:19 111:12 113:20 114:12 115:12 119:16 129:3 131:7 141:15 143:8 147:21 148:1 148:11 165:7 169:5 171:17 171:24 181:19 182:6 182:9 183:9 200:2 200:12 203:6 203:23 206:25 207:21 209:9

**howard**(1) 4:14
**however**(2) 18:25 200:18
**huh**(2) 107:17 148:7
**hundred**(1) 153:19
**hundreds**(1) 121:15
**hypothetical**(3) 53:23 54:3 81:3
**hypothetically**(2) 135:9 162:15
**i'd**(11) 13:8 14:24 53:23 58:24 68:7 68:21 93:22 100:18 102:17 105:9 107:8
**i'll**(19) 13:9 14:4 39:7 42:11 43:5 44:6 51:2 60:17 61:20 68:18 71:10 75:10 85:22 88:3 104:5 104:7 112:5 126:15 174:5
**i'm**(83) 13:23 14:12 16:5 16:7 16:8 16:16 18:7 18:13 20:1 20:12 23:14 23:23 32:21 32:22 41:10 62:24 64:18 66:9 68:9 69:18 72:3 72:23 75:8 77:23 78:2 78:11 78:11 80:7 80:7 83:17 83:23 83:24 85:12 85:19 90:24 102:8 102:9 102:9 102:15 103:11 103:20 104:16 107:6 109:13 110:4 110:8 111:25 113:1 113:12 114:5 114:6 115:14 116:4 119:12 119:24 120:2 121:18 122:2 122:13 122:16 123:2 127:6 127:15 129:8 132:10 132:14 132:17 133:14 133:1 136:22 136:23 137:2 140:25 141:3 143:20 150:17 158:5 158:24 158:25 162:8 167:25 173:7
**i've**(11) 15:3 18:11 25:1 32:18 37:10 58:11 112:20 119:17 119:1 129:21 163:24
**idea**(5) 133:9 133:9 133:10 133:13 177:5
**identical**(1) 135:1
**identification**(1) 83:12
**identified**(18) 20:20 21:18 40:7 46:24 61:15 82:25 132:19 134:8 140:10 141:14 195:12 195:22 198:21 198:25 199:3 202:1 205:14 213:19

**identifies**(1) 44:24
**identify**(3) 70:8 83:5 134:7
**identifying**(1) 104:17
**ignored**(2) 146:1 147:7
**ignores**(1) 144:16
**iii**(1) 82:20
**illiquid**(1) 135:12
**illiquidity**(1) 155:3
**imagine**(10) 106:23 132:10 133:7 133:17 134:1 134:3 157:1 168:4 172:21 174:15

**immediately**(1) 199:12
**immergenc**(1) 28:24
**impact**(8) 124:18 126:4 126:16 129:3 141:16 154:5 157:20 177:5

**impair**(1) 126:24
**impede**(1) 132:25
**impediment**(5) 131:6 163:12 164:9 164:10 197:21

**impermissible**(1) 35:18
**implausible**(1) 164:19
**implicate**(1) 89:21
**implication**(2) 39:18 126:19
**important**(10) 41:17 92:20 113:4 115:11 117:17 120:1 136:4 147:6 175:16 191:25

**impossible**(1) 191:8
**improper**(1) 31:1
**improve**(1) 187:4
**inability**(1) 187:9
**inc**(1) 11:16
**incented**(1) 98:8
**incentives**(2) 168:10 177:16
**incidentally**(1) 58:10
**inclination**(1) 14:6
**include**(13) 25:25 28:21 49:22 49:23 56:13 67:20 85:25 86:18 102:2 157:21 191:13 203:10 203:10

**included**(4) 42:21 60:7 82:4 167:8
**includes**(3) 27:11 33:2 150:5
**including**(13) 24:20 25:14 26:1 34:23 45:18 88:10 122:16 154:5 156:22 156:23 165:8 192:2 202:12

**inconsistency**(3) 49:24 95:4 95:10
**inconsistent**(1) 172:13
**incorporated**(2) 43:23 103:13
**incorporation**(1) 155:10
**increase**(4) 171:16 175:8 175:15 183:25
**indeed**(4) 113:2 122:5 135:7 143:12
**indemnification**(5) 128:22 137:22 138:12 163:23 164:22

**independence**(1) 176:18
**independent**(9) 82:24 114:14 143:5 144:15 144:17 176:1 176:5 176:11 195:25

**index**(1) 213:1
**indicated**(4) 125:10 199:11 201:12 209:5
**indicates**(3) 103:9 125:25 208:9
**indicating**(2) 89:17 208:12
**indirect**(4) 129:22 137:1 149:9 150:22
**indirectly**(4) 127:16 130:14 131:3 197:4
**individual**(10) 18:18 19:13 32:14 72:5 72:14 72:21 112:19 115:16 135:20 141:22

**individualized**(1) 19:3
**individually**(1) 168:5
**individuals**(4) 78:19 82:24 83:6 83:12
**induced**(1) 203:3
**indulgence**(1) 51:2
**industry**(3) 121:22 121:23 198:1
**infer**(1) 181:13
**inference**(1) 114:21
**influence**(4) 73:13 73:14 100:18 151:25
**influential**(2) 151:20 153:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**informal**(1) 186:20

**information**(18) 20:22 40:7 40:14 40:17 40:21 40:22 41:2 41:23 42:14 42:18 56:15 92:24 104:1 104:4 113:15 114:8 115:1 116:11

**initial**(6) 14:6 63:7 82:22 102:25 124:10 146:21

**initially**(1) 176:4

**injunction**(1) 132:4

**insolvency**(5) 144:4 144:8 144:10 187:20 187:22

**insolvent**(8) 122:12 123:5 143:23 143:24 143:25 188:5 193:2 193:3

**instance**(5) 29:20 40:23 67:18 153:14 193:20

**instances**(5) 54:4 54:6 92:14 181:18 195:11

**instantaneously**(1) 188:21

**instead**(1) 136:14

**institutional**(1) 86:1

**instructions**(1) 34:25

**insufficient**(1) 80:12

**insurance**(6) 51:7 129:1 137:22 138:13 163:23 164:22

**insure**(1) 80:3

**integrated**(2) 188:20 188:25

**integration**(11) 184:21 185:1 186:15 186:16 186:19 186:20 188:18 189:17 189:20 190:1 190:5

**intellectual**(1) 23:19

**intend**(4) 13:11 205:1 205:2 205:9

**intended**(7) 13:16 33:8 37:3 156:15 199:13 206:1 210:15

**intent**(8) 142:18 142:20 143:2 143:19 143:20 143:25 144:5 170:19

**intentional**(6) 184:9 184:17 184:19 185:14 185:16 185:20

**intentionally**(1) 194:10

**interest**(107) 26:7 29:11 29:15 30:13 30:14 30:15 30:19 30:21 31:2 31:12 31:13 31:14 31:18 31:20 31:25 32:3 32:12 32:16 33:24 34:3 35:4 35:5 35:13 35:19 36:13 36:13 37:4 37:13 38:12 40:1 42:24 43:6 43:25 45:20 46:6 47:9 47:10 48:4 48:7 48:17 49:17 50:3 50:5 50:6 50:22 51:4 51:12 51:13 51:16 51:18 52:14 52:11 52:19 53:3 53:9 53:10 53:11 54:24 55:5 55:7 55:8 60:19 60:24 61:6 61:8 65:12 65:15 65:23 70:16 71:14 73:11 74:14 76:12 76:21 77:9 79:16 81:1 81:17 81:20 82:6 83:8 84:1 84:11 84:14 84:17 89:19 90:17 90:23 91:9 91:11 93:13 93:15 100:1 100:10 100:14 101:10 101:17 130:6 134:1 135:10 145:12 152:5 153:4 173:13 174:1 178:23 193:4

**interested**(7) 10:23 17:7 17:8 41:25 197:19 198:11 207:9

**interesting**(2) 33:7 95:23

**interestingly**(1) 25:7

**interests**(94) 27:8 27:25 28:2 28:6 29:19 29:21 30:25 31:6 31:7 31:8 32:15 32:24 33:13 34:16 34:18 34:19 34:20 35:1 35:7 35:8 35:9 35:15 35:17 35:18 36:6 37:10 37:25 38:2 38:14 39:8 39:10 39:19 39:22 40:2 40:15 40:22 41:1 41:3 41:24 42:13 42:25 43:16 43:17 43:18 44:2 44:8 44:18 44:19 46:1 46:9 46:16 46:20 46:22 46:25 47:7 51:20 51:21 52:23 53:24 54:1 54:2 54:5 54:14 54:19 56:14 60:13 60:16 61:13 63:20 65:20 66:3 69:23 70:17 76:16 83:20 83:21 84:20 87:24 88:24 89:9 89:25 92:19 97:3 97:7 97:15 135:5 135:6 135:12 170:9 172:7 176:21 176:22 209:8

**internationally**(1) 110:16

**interpret**(1) 182:12

**interpretation**(11) 154:17 156:4 157:7 157:9 157:24 160:2 160:8 161:5 162:1 166:1

**interpretations**(1) 198:17

**interrupt**(3) 68:22 100:21 202:18

**interrupted**(1) 68:14

**interrupting**(1) 18:8

**intersection**(1) 24:17

**intimately**(1) 40:4

**into**(60) 16:6 20:11 20:14 21:10 21:12 27:23 28:14 30:5 30:9 30:16 30:23 32:24 34:19 37:24 38:2 39:8 39:19 40:17 41:23 42:1 43:6 44:23 48:21 55:7 56:16 61:20 72:5 75:23 76:1 88:16 95:17 101:18 101:24 124:22 127:8 127:13 128:9 133:1 134:13 141:6 146:25 150:2 150:15 151:3 151:16 152:3 152:14 153:12 156:21 158:1 161:8 164:12 172:4 175:18 180:11 194:1 195:13 195:22 196:9 201:16

**introduction**(1) 41:23

**invest**(1) 52:13

**investing**(2) 86:21 135:16

**investment**(21) 10:9 11:28 11:28 51:6 52:12 52:15 84:22 85:1 85:16 86:2 86:2 86:9 86:14 86:18 86:21 86:25 87:9 87:11 113:21 113:23 146:23

**investments**(3) 92:20 115:5 115:6

**investor**(13) 50:17 74:11 84:18 85:1 85:2 86:10 86:18 86:22 87:11 92:25 96:2 96:5 96:6

**investor's**(1) 93:1

**investors**(9) 91:11 43:25 85:16 85:22 85:25 86:1 86:6 102:5 135:2

**invoked**(1) 129:17

**involve**(3) 154:15 163:5 178:23

**involved**(9) 18:14 25:3 25:10 72:2 90:3 115:2 136:16 163:4 177:20

**involves**(3) 113:20 113:25 114:3

**involving**(7) 26:6 50:15 98:23 141:20 141:20 153:17 177:21

**irrelevant**(1) 139:17

**isn't**(15) 73:17 74:7 74:10 118:25 120:19 121:4 122:7 123:5 128:23 129:12 150:3 154:20 170:4 170:10 170:11

**isn't**(3) 176:8 177:17 193:14

**issuance**(2) 158:1 165:9

**issue**(43) 14:15 15:2 18:11 18:12 19:1 24:25 29:3 39:22 40:10 42:5 52:7 85:24 86:17 91:17 95:25 118:3 127:5 137:19 141:15 157:22 159:25 160:23 179:22 188:18 189:10 190:9 190:14 191:10 204:1 204:1 204:3 204:3 204:19 206:13 206:23 206:15 207:18 208:20 208:23 208:23 208:24 210:10

**issues**(51) 18:23 18:23 19:6 28:25 35:25 40:1 63:19 64:20 69:3 85:13 85:18 89:25 90:3 91:21 102:4 106:8 106:19 110:5 110:9 115:2 120:1 120:4 124:16 125:9 136:23 137:24 138:4 143:14 154:5 180:14 182:1 182:6 182:8 182:13 183:7 195:14 195:18 195:22 198:21 202:10 202:22 203:16 203:19 205:1 205:2 205:9 205:13 206:19 206:20 207:1 209:5

**issuing**(1) 85:14

**it's**(96) 16:15 18:10 18:14 24:16 27:6 27:10 27:17 30:16 33:3 33:6 34:21 36:22 37:7 40:3 40:16 42:23 44:16 45:24 52:21 55:6 56:9 56:17 60:2 64:2 67:23 71:9 73:18 77:22 82:20 83:17 85:9 95:23 97:11 98:12 102:10 102:16 105:5 106:7 106:21 106:23 107:20 112:25 115:10 115:24 120:14 120:21 120:23 122:8 124:24 125:19 127:21 127:10 127:11 128:6 129:4 129:7 130:4 130:21 130:25 132:2 132:16 133:9 133:10 133:13 141:5 141:21 141:24 141:25 142:2 143:3 144:5 147:7 148:6 151:20 153:8 155:12 155:15 156:14 163:10 164:17 164:18 164:19 164:19 164:21 165:25 166:24 168:6 168:13 168:21 170:13 171:25 171:24 172:23 173:11 173:14 173:19

**item**(3) 104:11 204:21 208:8

**items**(2) 205:23 208:6

**its**(39) 25:14 28:1 28:19 29:6 29:8 30:17 31:16 31:17 36:13 37:13 37:13 40:16 40:18 41:5 41:5 41:6 42:14 42:22 45:10 45:12 46:3 53:17 53:18 56:3 58:3 85:24 86:6 86:21 88:19 90:2 130:23 144:12 159:8 161:21 168:7 172:14 174:13 175:11 191:19

**itself**(14) 32:9 47:23 51:18 64:4 69:6 74:15 96:2 129:2 131:18 161:16 171:7 174:12 174:17 175:20

**it'll**(2) 210:14

**it's**(8) 72:2 180:4 180:5 186:1 187:10 192:3 194:16 196:25

**i'd**(2) 177:24 207:18

**i'll**(9) 194:14 196:16 200:4 201:19 201:19 201:22 201:22 205:22 207:20

**i'm**(12) 179:6 181:18 181:22 181:23 182:15 186:22 187:15 200:9 200:20 202:1 206:7 206:9

**i've**(1) 185:6

**james**(10) 1:24 1:25 1:26 2:14 4:15 4:25 6:21 10:20 15:13 200:22

**jane**(1) 9:18

**janet**(1) 7:18

**january**(1) 82:13

**jarashow**(1) 5:28

**jason**(1) 8:44

**jean-marie**(1) 8:36

**jefferies**(2) 9:36 9:36

**jenner**(1) 10:27

**jessica**(1) 6:13

**jim**(1) 3:26 108:5 195:9 207:4

**job**(5) 17:25 115:18 120:15 171:15 171:23

**joe**(1) 9:26

**john**(2) 5:34 12:19

**johnston**(5) 2:14 207:4 207:5 207:20 208:3

**joined**(1) 24:3

**joint**(7) 35:23 36:2 94:6 94:7 110:1 152:13 152:14

**jonathan**(1) 9:16

**jones**(2) 3:25 7:39

**jordan**(1) 9:33

**journal**(3) 116:4 116:5 116:8

**journals**(3) 115:25 116:3 116:7

**jr.,esq**(1) 9:31

**judge**(8) 1:18 1:19 15:6 24:1 33:15 190:1 190:5 193:3

**judgment**(10) 29:13 39:25 122:21 131:20 141:14 142:7 142:9 164:19 171:13 180:18

**judgments**(4) 112:17 112:19 183:5 183:8

**judicial**(1) 45:15

**jump**(1) 44:22

**june**(3) 16:5 201:14 201:21

**jurisdiction**(3) 167:3 167:9 167:13

**jurisdictions**(1) 151:25

**just**(94) 13:8 13:16 14:12 15:22 16:10 17:20 18:8 19:10 19:23 21:10 21:22 22:1 22:2 22:7 28:4 28:11 37:7 37:24 38:15 39:5 40:19 42:4 42:20 43:5 43:13 44:18 44:22 49:15 51:25 65:18 68:3 70:10 70:15 71:6 71:22 75:7 75:8 84:19 85:22 87:21 98:12 98:19 100:18 100:18 101:4 103:16 103:17 103:20 104:16 105:20 106:25 107:5 108:9 109:17 109:24 110:11 113:14 116:11 129:19 131:13 136:9 138:1 138:14 138:21 138:25 140:1 140:20 141:6 143:11 143:17 144:16 147:21 162:17 168:21 168:24 171:25 172:4 178:7 179:7 183:2 184:7 194:22 195:11 195:17 196:13 199:22 200:9 200:19 202:2 204:17 206:3 206:11 207:7 209:24

**justin**(1) 9:37

**kalenchits**(2) 7:43 7:43

**kaplan**(3) 5:25 8:16 20:6

**karen**(1) 10:24

**kasowitz**(1) 11:32

**katharine**(1) 4:39

**katten**(1) 12:18

**kavalis**(1) 10:14

**kaye**(2) 9:13 9:33

**keep**(4) 18:9 43:3 73:18 208:21

**kellogg**(1) 110:3

**kenney**(1) 7:19

**kevin**(4) 1:18 1:27 17:12 208:4

**key**(1) 138:11

**kicking**(1) 209:24

**kim**(1) 8:22

**kind**(4) 40:4 130:21 156:5 204:6

**kinds**(2) 115:7 130:24

**king**(3) 2:43 3:40 4:41

**kira**(1) 7:5

**kizzy**(1) 5:28

**klauder**(1) 2:42

**knocked**(1) 193:9

**know**(58) 14:6 15:1 15:2 16:14 16:15 20:13 30:18 35:9 37:3 39:22 43:25 44:16 57:10 59:5 70:7 72:24 84:5 89:5 89:23 89:24 91:23 96:19 99:18 99:22 99:25 100:25 104:2 105:5 105:7 106:7 107:9 107:12 107:14 112:20 121:15 127:1 133:13 134:23 135:21 136:22 141:17 148:1 150:9 156:18 165:7 165:16 166:17 182:5 182:9 186:14 188:12 195:21 199:25 202:4 205:4 205:8 205:25 208:11

**knowing**(1) 194:11

**knowledge**(3) 59:24 77:11 207:23

**known**(1) 137:9

**kohr**(1) 212:8

**komnetzky**(1) 3:9

**korpus**(1) 11:34

**kramer**(1) 9:29

**labeled**(1) 40:23

**lack**(3) 163:23 164:21 168:11

**lam**(1) 11:42

**lance**(1) 9:6

**landis**(3) 4:5 4:7 6:25

**language**(11) 42:21 49:25 80:8 90:20 102:3 138:11 166:2 168:19 169:20 173:14 173:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| lantry(10) 1:27 17:12 17:13 17:24 18:15 18:17 20:3 208:4 208:5 209:4 | | let(51) 14:6 15:22 17:5 18:19 18:22 36:8 36:8 37:23 42:19 49:12 63:18 63:24 65:10 65:18 66:14 68:18 71:4 71:9 71:21 78:14 78:16 80:1 81:5 81:8 82:10 93:24 99:9 100:2 102:11 103:15 104:15 109:14 114:22 119:6 124:3 125:18 128:17 129:11 129:22 129:24 133:10 142:16 147:9 151:23 169:1 182:3 184:20 191:10 196:18 199:24 208:22 | | liquid(5) 134:24 135:1 135:10 137:7 137:9 | | main(5) 110:16 134:21 136:11 141:17 180:25 | |
| large(5) 82:4 140:3 158:13 162:7 182:23 | | | | liquidity(1) 135:2 | | maintained(1) 103:23 | |
| largely(1) 17:18 | | | | list(9) 16:24 17:3 22:4 119:10 128:23 202:14 205:3 205:5 208:8 | | major(7) 125:25 133:22 134:7 153:22 165:11 174:3 197:25 | |
| largest(1) 89:6 | | | | | | | |
| last(37) 14:7 15:8 15:24 16:2 22:24 25:1 27:9 40:8 44:5 46:24 48:8 52:22 64:2 82:16 82:17 82:18 82:19 93:10 93:17 98:12 102:12 102:16 104:11 105:15 108:20 116:4 138:14 146:18 173:6 173:11 181:6 181:15 181:22 191:10 203:1 208:17 210:2 | | | | listed(1) 178:17 | | majority(16) 80:10 80:10 100:3 100:17 101:6 126:18 126:23 127:16 129:23 130:14 134:13 152:18 154:10 176:4 178:23 197:4 | |
| | | | | listen(2) 49:1 104:7 | | | |
| | | | | lists(2) 203:19 205:23 | | | |
| | | | | literally(1) 16:15 | | | |
| | | letter(7) 104:17 104:21 104:22 104:23 105:10 105:10 206:4 | | literature(2) 113:9 113:12 | | make(31) 19:23 29:12 31:11 37:15 48:20 65:18 66:24 71:6 72:2 75:5 76:22 113:21 114:14 114:14 114:15 114:16 120:11 127:12 166:5 184:4 184:14 187:21 197:2 199:12 201:16 204:4 204:9 205:21 205:21 206:24 208:19 | |
| lastly(2) 55:19 97:2 | | | | litigation(61) 19:7 27:19 45:8 45:11 45:13 46:15 109:22 112:18 112:23 113:19 117:24 126:8 128:16 131:20 133:19 133:21 135:17 135:18 135:22 135:24 135:25 136:6 146:7 146:11 146:17 146:19 146:24 147:17 147:5 168:16 169:11 169:18 169:22 169:2 169:25 170:1 170:5 170:6 170:9 170:12 170:15 170:20 170:21 170:22 171:2 171:6 171:7 171:17 171:9 173:25 174:2 174:18 174:23 175:13 175:17 175:20 183:13 186:10 192:2 192:19 193:12 | | | |
| late(5) 13:23 32:5 54:23 55:11 201:16 | | | | | | | |
| later(3) 15:20 126:15 163:24 | | | | | | | |
| latham(1) 8:43 | | | | | | | |
| latter(2) 118:5 122:1 | | let's(7) 184:7 186:3 187:6 188:9 188:16 189:18 190:8 | | | | makes(9) 14:19 32:11 52:7 68:24 105:17 105:18 156:13 197:5 199:1 | |
| laughable(1) 129:7 | | | | | | | |
| laughter(16) 17:10 33:17 49:9 57:8 57:14 59:7 107:22 118:15 134:2 141:11 148:8 194:25 200:7 200:11 210:8 211:14 | | | | | | making(5) 68:1 72:3 109:22 172:14 172:16 | |
| | | level(10) 113:13 115:3 133:15 144:25 144:25 145:6 145:22 187:8 190:10 190:15 | | little(25) 15:19 16:4 17:21 18:18 19:19 39:5 44:23 45:12 51:3 73:18 112:12 113:14 114:8 115:1 116:11 148:6 160:24 162:16 201:1 201:22 204:4 205:12 206:4 206:10 207:19 | | management(16) 5:43 6:41 6:41 8:6 8:6 9:5 12:5 12:5 12:32 82:21 110:3 130:10 133:5 133:8 161:18 162:19 | |
| lauren(1) 2:36 | | | | | | | |
| laurie(1) 2:20 | | | | | | | |
| law(15) 11:32 16:13 23:11 23:16 24:10 59:3 105:8 109:20 110:2 110:10 114:12 115:8 116:2 167:11 177:25 | | levels(1) 114:16 | | | | manager(3) 52:4 52:4 52:9 | |
| | | lever(1) 133:20 | | living(1) 113:1 | | managing(3) 52:15 86:22 119:2 | |
| | | leverage(9) 110:8 116:14 116:17 168:16 173:24 174:11 175:12 175:16 188:20 | | llc(5) 3:38 6:5 10:9 12:28 12:32 | | mandate(1) 106:21 | |
| | | | | llp(18) 1:23 2:19 3:24 4:12 5:26 6:10 6:18 6:25 8:21 8:33 8:43 9:5 9:13 9:30 10:17 10:23 10:27 12:18 | | manner(2) 172:8 172:13 | |
| lawsuits(2) 138:7 146:23 | | | | | | many(10) 25:13 31:5 39:19 51:8 69:13 90:13 99:25 119:16 144:6 144:17 | |
| lawyer(1) 68:8 | | levin(1) 9:29 | | | | | |
| lawyers(2) 75:4 205:19 | | levy(1) 7:9 | | | | | |
| layton(2) 3:17 8:25 | | lewis(1) 10:17 | | loan-sharing(3) 202:12 204:22 207:8 | | maps(1) 182:5 | |
| lazard(3) 115:18 120:15 121:4 | | lexi(1) 11:8 | | loans(1) 188:19 | | marc(2) 4:19 6:11 | |
| lbo(6) 168:16 169:17 169:22 170:25 175:13 192:13 | | lexington(1) 3:13 | | locked(2) 15:2 15:15 | | march(1) 123:3 | |
| | | liability(3) 128:25 183:25 188:1 | | lodged(1) 45:23 | | marino(1) 2:29 | |
| lead(5) 53:3 54:7 69:1 144:8 144:9 | | licenses(2) 28:17 29:9 | | logan(1) 5:34 | | mark(1) 8:26 | |
| leading(2) 52:24 113:3 | | lieberman(4) 53:3 53:9 53:11 53:16 | | logic(3) 135:11 158:6 183:16 | | marked(2) 103:19 124:24 | |
| learned(2) 54:19 164:16 | | lien(7) 99:16 99:19 99:24 100:3 100:6 100:11 101:6 | | logical(2) 187:2 197:13 | | market(9) 1:11 2:23 4:8 28:23 31:21 37:18 43:15 120:10 122:14 | |
| least(15) 18:13 18:17 19:17 48:3 48:5 53:24 55:2 55:20 68:14 79:8 79:9 92:22 106:8 119:23 137:8 181:23 191:1 205:9 | | | | logically(1) 191:8 | | | |
| | | | | lohnes(1) 5:33 | | | |
| | | lieu(1) 36:15 | | long(5) 78:23 82:16 104:19 105:19 106:21 | | markets(9) 39:11 55:2 76:6 88:9 88:10 88:13 88:18 88:20 89:1 | |
| leave(5) 200:4 200:9 205:14 205:22 206:9 | | life(1) 105:8 | | longer(1) 37:1 | | | |
| leaving(1) 193:20 | | light(4) 15:6 44:7 201:2 204:21 | | look(43) 15:11 25:19 33:4 34:1 35:22 36:1 36:4 36:24 39:6 39:7 42:3 44:5 47:7 50:21 52:18 55:14 61:14 63:24 64:8 71:5 71:7 77:20 78:3 82:10 85:20 90:20 93:22 102:11 103:15 104:11 129:19 132:10 132:11 139:17 155:7 167:4 171:25 172:23 180:4 182:2 183:17 185:8 | | marrero(1) 6:13 | |
| leboeuf(1) 2:12 | | like(36) 13:8 14:10 14:24 16:8 18:12 19:13 19:20 20:10 20:14 21:10 22:18 53:23 58:24 68:7 81:11 93:22 102:17 110:19 124:22 127:3 132:12 134:12 141:5 145:17 155:10 163:10 174:7 177:24 182:1 194:20 202:11 203:6 204:24 206:12 207:18 210:6 | | | | marsal(1) 11:16 | |
| leboeuf(1) 207:5 | | | | | | martin(1) 3:32 | |
| lee(1) 12:6 | | | | | | marvin(1) 7:40 | |
| left(4) 108:14 137:22 193:11 193:15 | | | | | | mas(2) 89:14 91:16 | |
| leftover(1) 14:8 | | | | | | master(2) 131:4 158:24 | |
| legal(15) 16:22 16:25 17:1 60:6 114:6 128:24 141:20 142:7 168:2 188:15 201:2 202:7 203:2 203:12 204:7 | | | | looked(3) 37:8 78:18 140:2 | | masters(2) 131:3 162:20 | |
| | | | | looking(5) 19:24 80:7 85:12 141:13 180:19 | | material(2) 40:24 75:6 | |
| | | likelihood(5) 122:17 122:20 142:17 143:2 164:24 | | looks(2) 51:15 135:6 | | materially(1) 41:6 | |
| | | | | los(3) 2:16 88:10 89:4 | | materials(1) 52:21 | |
| legitimate(1) 42:17 | | | | losing(6) 164:14 164:17 164:24 165:1 166:3 184:3 | | math(1) 118:14 | |
| lemay(1) 4:13 | | | | | | matter(19) 34:24 37:5 53:15 85:8 110:15 142:23 143:1 145:9 160:7 167:18 187:2 188:15 188:15 191:5 191:9 197:3 197:13 198:6 212:4 | |
| lender(16) 35:13 35:16 36:15 37:12 37:14 37:14 46:22 62:13 66:4 69:9 69:14 81:16 90:4 90:9 90:9 90:12 | | likely(32) 122:13 127:11 129:15 130:25 132:23 135:23 141:18 142:12 144:9 147:1 157:24 160:1 161:12 162:5 164:17 166:3 184:4 184:14 184:14 185:14 185:20 186:1 187:21 188:4 188:5 188:14 190:6 190:24 191:1 201:4 202:4 204:4 | | | | | |
| | | | | losquadro(1) 6:42 | | | |
| | | | | loss(5) 3:11 126:1 130:3 130:6 136:4 | | matters(9) 20:9 20:11 21:23 22:5 24:25 70:8 110:14 114:12 167:9 | |
| lender's(1) 46:20 | | | | lot(5) 18:1 30:7 36:8 139:25 143:14 | | | |
| lenders(20) 10:31 36:13 37:9 54:1 65:12 65:15 81:15 82:25 83:3 83:5 83:7 83:11 151:1 151:9 192:4 192:13 194:10 207:12 207:14 208:1 | | likewise(5) 29:11 153:3 162:25 176:13 184:19 | | lovells(1) 24:5 | | | |
| | | | | low(5) 122:19 136:21 137:2 151:5 151:6 | | matthew(4) 6:26 8:7 11:16 11:17 | |
| | | | | lower(4) 133:7 134:8 183:12 188:5 | | mauceri(1) 10:18 | |
| | | | | lowly(1) 75:8 | | maximize(4) 170:21 175:6 175:9 175:12 | |
| length(3) 97:13 106:11 203:10 | | limit(6) 29:19 31:5 67:2 67:5 201:10 | | lugano(1) 1:40 | | maximizing(1) 131:10 | |
| lenient(1) 51:9 | | limitation(3) 125:3 156:22 156:23 | | lunch(3) 105:17 107:4 107:10 | | maximum(8) 149:17 150:15 151:4 151:16 152:21 153:12 154:8 154:22 | |
| lent(1) 194:10 | | limitations(3) 16:14 157:4 198:18 | | lunchtime(2) 107:6 205:14 | | | |
| leonard(1) 1:34 | | limited(6) 32:1 36:15 36:19 68:1 118:24 165:9 | | lynch(2) 2:19 9:13 | | | |
| lerman(1) 5:12 | | | | lynn(2) 3:8 7:40 | | | |
| less(14) 61:6 61:24 90:19 131:11 131:17 134:25 137:2 137:5 153:6 164:17 164:18 177:10 184:14 190:6 | | | | m-a-c-e(1) 23:1 | | | |
| | | limits(2) 97:23 97:25 | | mace(5) 22:19 22:21 22:25 103:21 213:6 | | | |
| | | line(9) 34:9 48:10 48:10 71:8 71:8 81:8 83:15 123:4 185:12 | | macquarie(2) 12:40 12:40 | | | |
| | | | | made(14) 16:11 42:5 55:12 69:5 71:23 71:24 87:5 100:15 112:17 113:22 149:21 165:25 171:13 183:8 | | | |
| | | lines(4) 55:10 71:21 102:21 142:7 | | | | | |
| | | link(1) 158:19 | | | | | |
| | | linkage(2) 158:25 159:1 | | madlyn(1) 9:14 | | | |

| Word | Page:Line |
|------|-----------|
| **may**(64) 15:10 15:10 16:1 16:2 16:2 16:8 17:7 19:9 22:22 23:2 23:4 26:10 48:22 58:16 58:21 58:22 58:25 61:14 65:19 66:13 67:20 69:13 69:13 70:13 71:18 87:3 87:17 87:19 88:25 98:13 100:21 100:23 103:10 105:1 105:13 106:10 108:8 108:18 108:25 109:1 123:25 130:19 139:9 147:16 148:22 148:24 149:2 149:3 152:14 159:7 178:25 179:2 179:4 185:3 185:4 192:15 199:10 201:9 201:11 201:13 203:1 204:2 205:11 | |
| **maybe**(9) 73:8 78:17 104:10 130:16 136:20 142:11 160:21 160:23 166:20 | |
| **mayer**(2) 4:39 8:33 | |
| **mccarter**(4) 4:38 9:25 208:15 | |
| **mccolm**(1) 7:13 | |
| **mccormack**(1) 4:17 | |
| **mccormick**(1) 12:16 | |
| **mcguire**(1) 6:26 | |
| **mcneill**(1) 2:21 | |
| **meagher**(1) 7:34 | |
| **mean**(20) 19:21 39:23 42:9 49:5 68:6 69:17 70:7 71:15 100:2 106:17 121:13 126:2 132:21 134:9 144:22 187:10 189:21 197:23 203:24 207:10 | |
| **meaning**(2) 103:19 185:13 | |
| **meaningful**(2) 31:20 31:21 | |
| **means**(7) 30:10 30:12 72:15 142:22 145:19 145:20 156:23 | |
| **meanwhile**(1) 104:12 | |
| **measure**(2) 140:3 182:23 | |
| **mechanism**(3) 94:14 97:18 103:13 | |
| **mechanisms**(3) 38:16 43:21 97:13 | |
| **media**(39) 23:17 29:21 30:6 31:20 35:9 35:17 36:6 38:2 38:3 39:8 39:12 43:24 44:8 45:13 46:1 46:22 47:10 47:18 47:20 47:23 48:17 48:23 49:18 52:24 52:25 53:4 53:24 54:1 54:8 54:25 55:9 63:20 66:3 70:17 87:23 88:23 92:20 97:3 97:4 | |
| **meeting**(1) 13:21 | |
| **meetings**(3) 92:23 92:24 93:4 | |
| **meisel**(1) 1:33 | |
| **member**(13) 48:12 76:14 76:20 77:7 78:5 80:24 80:25 82:5 94:19 99:14 99:20 101:2 101:2 | |
| **members**(11) 63:16 81:16 82:4 101:9 102:25 159:9 172:8 173:11 176:5 176:7 176:23 | |
| **memorandum**(1) 177:25 | |
| **memorized**(1) 21:21 | |
| **memorizing**(1) 181:22 | |
| **memory**(1) 73:8 | |
| **mention**(1) 32:11 | |
| **mentioned**(9) 37:4 67:10 67:20 76:12 84:2 84:6 115:22 120:17 190:9 | |
| **meredith**(1) 5:13 | |
| **merge**(1) 197:25 | |
| **merger**(1) 178:13 | |
| **merrill**(2) 2:19 9:13 | |
| **methods**(1) 114:20 | |
| **metric**(1) 41:12 | |
| **michael**(3) 3:10 7:29 8:38 | |
| **michelle**(2) 2:29 10:37 | |
| **microphone**(1) 108:17 | |
| **middle**(8) 42:5 68:13 77:22 85:20 85:23 99:13 106:25 173:3 | |

| Word | Page:Line |
|------|-----------|
| **might**(78) 13:11 17:20 17:21 19:4 19:8 30:13 31:20 35:17 42:25 54:15 54:20 54:24 56:15 57:13 63:19 96:17 107:16 122:21 126:4 126:5 126:25 127:14 127:19 128:9 128:10 129:19 133:1 133:12 133:12 133:23 136:18 144:10 150:6 150:7 150:7 150:8 151:9 151:14 160:2 160:4 161:8 162:19 163:4 164:4 164:20 166:19 167:18 168:5 168:10 168:14 168:22 168:25 169:8 171:14 171:15 171:23 173:22 174:1 174:1 174:12 174:13 174:17 174:23 174:23 175:11 175:14 175:23 176:22 177:5 191:1 192:5 198:2 198:10 198:11 201:14 203:8 203:15 203:22 | |
| **might've**(1) 182:15 | |
| **mike**(1) 9:10 | |
| **miller**(2) 12:26 12:27 | |
| **million**(3) 146:22 160:16 160:17 | |
| **mina**(2) 11:11 11:12 | |
| **mind**(10) 18:8 18:9 49:16 74:20 121:11 142:8 153:25 192:25 197:24 204:7 | |
| **minded**(2) 201:18 203:8 | |
| **minimum**(1) 146:9 | |
| **ministerial**(1) 132:2 | |
| **minkove**(1) 8:30 | |
| **minor**(1) 15:17 | |
| **minority**(4) 96:2 99:23 100:14 102:5 | |
| **minute**(4) 14:5 58:18 84:5 177:24 185:2 | |
| **minutes**(6) 37:20 107:13 138:25 194:19 199:25 208:18 | |
| **misleading**(1) 75:6 | |
| **mitigate**(1) 130:2 | |
| **mitigated**(1) 183:11 | |
| **mix**(1) 16:6 | |
| **model**(3) 143:21 183:9 191:13 | |
| **modeled**(1) 142:13 | |
| **modeling**(1) 196:3 | |
| **modifications**(1) 94:5 | |
| **modified**(2) 94:5 94:7 | |
| **moment**(14) 28:5 30:25 33:4 40:20 43:14 100:8 108:9 138:22 140:18 152:10 161:4 168:9 178:25 179:7 | |
| **monarch**(2) 9:39 9:40 | |
| **money**(7) 128:21 146:2 146:13 189:21 190:20 191:5 194:11 | |
| **montenegro**(1) 11:36 | |
| **month**(5) 27:9 40:8 46:24 48:8 93:17 | |
| **more**(51) 16:4 19:22 25:9 33:25 35:24 39:5 44:23 50:23 51:9 54:4 54:6 55:22 60:20 64:4 64:24 65:6 90:19 102:24 103:17 106:12 112:13 113:14 114:8 115:1 116:11 120:22 131:18 144:9 150:2 152:15 154:12 157:7 160:1 160:25 161:15 162:20 175:17 177:13 184:14 184:14 187:2 188:4 188:5 191:1 199:1 201:4 204:4 206:5 206:10 208:18 | |
| **morgan**(43) 3:4 8:21 8:29 10:17 37:25 38:2 38:12 39:8 43:6 50:23 51:24 52:23 54:23 55:5 55:7 55:12 60:1 60:12 61:12 61:24 62:6 62:14 62:23 63:5 63:15 65:5 76:10 81:13 83:10 83:20 84:4 84:15 84:20 84:22 86:9 86:13 86:25 87:5 87:24 88:5 88:24 89:9 97:3 | |
| **morgan's**(2) 44:8 50:22 84:10 | |
| **morning**(25) 13:3 13:4 13:22 15:20 16:18 17:12 19:19 22:20 23:8 23:9 33:23 56:21 59:15 59:16 92:16 97:13 107:15 202:8 202:24 204:16 205:14 208:7 208:20 208:21 211:20 | |
| **moskowitz**(1) 3:5 | |

| Word | Page:Line |
|------|-----------|
| **most**(12) 13:17 13:19 14:17 17:6 17:8 20:11 24:16 24:18 132:23 166:1 186:7 195:24 | |
| **mostly**(1) 136:13 | |
| **motion**(4) 16:12 49:2 49:8 209:18 | |
| **move**(12) 20:11 20:14 21:10 21:12 21:12 92:18 98:11 124:22 145:25 186:3 190:8 208:10 | |
| **moved**(2) 68:16 206:20 | |
| **moves**(1) 137:11 | |
| **moving**(1) 43:3 | |
| **much**(14) 14:12 37:7 67:4 106:24 131:18 137:2 141:5 145:17 183:4 211:2 211:18 | |
| **muchin**(1) 12:18 | |
| **muck**(1) 165:18 | |
| **mulhern**(1) 9:6 | |
| **multiple**(11) 24:20 26:6 27:12 28:22 29:17 29:21 36:10 44:24 50:18 66:7 66:11 | |
| **murdock**(1) 25:17 | |
| **murphy**(1) 10:44 | |
| **must**(3) 34:19 40:15 176:10 | |
| **mutual**(6) 15:7 51:6 52:4 52:15 86:14 87:2 | |
| **myers**(1) 6:30 | |
| **myrick**(1) 7:21 | |
| **myself**(2) 113:11 121:21 | |
| **naftalis**(1) 9:29 | |
| **name**(6) 22:23 22:25 23:1 81:14 108:19 108:20 | |
| **names**(1) 73:20 | |
| **nancy**(1) 8:13 | |
| **narrative**(1) 47:25 | |
| **narrow**(4) 132:3 132:14 132:16 185:17 | |
| **nature**(7) 23:15 24:14 34:17 34:25 66:2 96:5 136:9 | |
| **near**(1) 127:2 | |
| **nearly**(1) 31:24 | |
| **neat**(1) 106:17 | |
| **necessary**(7) 14:25 15:1 36:9 65:1 65:11 163:5 163:6 | |
| **necessitate**(1) 117:5 | |
| **necessity**(5) 184:18 186:12 186:25 187:3 187:10 | |
| **need**(20) 13:20 20:21 22:7 30:22 34:21 65:16 65:19 65:24 72:23 89:2 107:17 119:10 130:25 138:1 158:12 197:17 198:1 198:3 200:5 206:5 | |
| **needed**(3) 98:8 199:11 207:1 | |
| **needn't**(1) 14:15 | |
| **neel**(1) 10:10 | |
| **negative**(4) 88:14 88:18 88:22 144:11 | |
| **negatives**(1) 69:13 | |
| **negotiate**(1) 44:3 | |
| **neil**(1) 6:42 | |
| **neither**(5) 21:4 31:4 39:22 43:24 47:23 | |
| **nested**(12) 143:5 144:2 144:15 181:3 181:9 182:20 183:8 183:18 183:24 184:2 195:14 195:19 | |
| **never**(13) 18:11 18:12 84:2 84:6 117:14 117:20 117:22 118:16 119:20 120:24 132:14 153:13 177:20 | |
| **nevertheless**(1) 52:5 | |
| **new**(24) 2:31 2:38 3:14 4:21 5:9 5:30 5:35 25:12 25:17 25:18 28:19 29:10 48:12 56:14 76:15 76:20 88:19 94:19 99:14 111:13 111:15 130:19 136:14 175:2 | |
| **news**(3) 25:13 54:25 55:9 | |
| **newspaper**(11) 25:16 26:7 29:23 29:24 39:10 55:1 55:2 75:18 89:6 197:25 198:1 | |

| Word | Page:Line |
|------|-----------|
| **next**(21) 13:21 37:20 47:10 47:18 47:20 47:22 48:17 48:23 49:17 108:7 126:9 130:9 130:19 134:6 143:4 145:8 145:25 199:25 201:1 202:3 206:24 | |
| **nextmedia**(10) 76:12 76:21 77:16 79:16 83:20 93:15 94:6 99:9 100:12 101:1 | |
| **nick**(1) 7:36 | |
| **nimbly**(1) 44:2 | |
| **nobody**(5) 105:20 135:22 145:7 145:15 190:18 | |
| **nominate**(1) 102:24 | |
| **nominated**(10) 70:25 72:4 72:14 72:21 73:12 73:14 79:7 79:22 80:3 80:17 | |
| **nominates**(1) 79:11 | |
| **nomination**(31) 34:10 70:18 70:23 71:11 71:13 71:16 72:1 72:3 72:13 72:19 72:22 73:2 73:10 79:19 80:5 89:24 90:14 91:7 91:16 91:25 94:2 95:15 95:18 95:19 95:24 101:14 101:19 101:22 102:8 103:10 105:1 | |
| **nominee**(1) 71:18 | |
| **nominees**(1) 96:5 | |
| **nomura**(2) 10:13 10:13 | |
| **non**(5) 17:1 27:24 30:20 61:12 92:18 | |
| **non-attributable**(33) 27:24 28:6 30:19 31:19 32:23 34:15 34:20 36:21 37:14 39:20 40:15 40:23 41:2 41:24 42:12 42:24 44:18 46:9 46:16 48:4 50:17 50:20 51:17 51:19 51:22 55:8 61:8 73:3 73:25 88:25 92:11 93:1 93:8 | |
| **non-avoided**(2) 207:12 207:14 | |
| **non-conforming**(3) 31:9 36:12 37:10 | |
| **non-fcc**(1) 75:4 | |
| **non-party**(1) 74:11 | |
| **non-voting**(2) 55:10 61:4 | |
| **none**(4) 42:19 45:24 130:5 209:2 | |
| **nonetheless**(1) 175:10 | |
| **noon**(1) 206:4 | |
| **nor**(7) 31:4 39:23 43:24 47:23 118:20 119:11 121:7 | |
| **norman**(1) 1:35 | |
| **north**(2) 2:23 3:20 | |
| **northwestern**(2) 109:20 114:20 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**not**(298) 13:23  14:12  14:20  14:21  14:24  15:1  15:4  15:8  15:15  16:11  16:15  17:3  18:13  20:12  21:21  21:24  22:2  22:8  27:2  30:22  31:3  32:2  32:24  34:12  34:21  35:25  38:5  39:4  39:16  39:17  40:9  41:4  41:5  41:6  41:20  41:25  42:1  43:1  43:12  44:18  44:21  46:11  46:12  47:5  47:15  47:17  48:21  49:22  50:13  51:1  53:7  54:10  54:11  56:19  57:6  59:19  59:24  61:7  62:6  62:11  62:24  64:17  64:18  65:5  65:7  65:15  65:16  65:19  66:9  66:19  66:22  67:16  67:16  68:9  68:21  69:10  69:12  69:18  69:24  70:1  70:19  71:2  71:11  71:18  71:24  72:23  73:2  73:10  74:3  74:14  74:15  75:5  76:2  77:11  77:12  78:11  78:17  79:19  80:7  81:13  83:9  83:17  83:21  84:3  84:3  84:15  85:16  86:5  86:11  86:20  86:21  87:3  87:7  87:23  89:1  89:2  89:3  89:8  89:21  90:15  90:21  90:22  90:24  90:25  91:10  91:19  91:23  92:15  93:1  93:11  93:12  94:2  94:3  95:21  95:22  96:1  96:1  97:8  97:10  99:21  100:4  100:13  100:16  100:17  101:7  101:21  103:11  103:22  104:12  105:9  106:2  110:23  111:18  111:2  112:25  113:11  117:13  118:19  119:7  119:9  119:13  119:13  119:23  120:3  120:6  122:3  122:6  122:8  122:10  123:7  127:6  127:15  127:18  128:5  128:25  129:1  129:4  129:17  129:23  131:2  131:21  132:8  132:9  132:17  133:23  136:22  136:23  137:12  137:18  137:21  138:5  138:20  139:3  139:24  141:1  141:8  141:15  141:22  142:8  142:12  142:13  143:9  143:24  144:2  144:18  145:1  145:2  145:10  145:23  147:7  147:22  148:2  148:3  148:5  151:17  151:19  151:22  151:23  152:23  156:14  157:11  158:16  158:19  158:21  158:24  158:25  159:25  162:11  164:19  165:9  165:14  166:1  167:6  167:15  167:25  168:6  168:20  169:13  169:15  170:1  171:4  171:16  171:21  172:12  172:14  172:16  174:5  176:16  178:21  178:23  180:24  181:7  181:11  181:22  181:25  182:16  182:18  182:25  184:21  186:7  186:8  187:2  187:4  187:19  188:6  188:11  188:15  189:10  189:16  189:20  190:2  191:8  191:23  192:20  192:22  193:4  193:11  193:18  194:16  194:7  195:13  195:25  196:10  196:11  198:10  198:11  198:13  199:1  199:24  203:2  203:10  206:19  206:20  209:11  210:9  210:10

**note**(5) 25:13  95:8  136:15  137:22  175:2
**noteholder**(72) 14:9  16:20  16:23  17:16  20:10  20:14  20:16  20:17  20:19  21:6  26:10  27:21  28:1  46:14  46:18  57:18  57:21  58:1  58:6  58:8  60:8  61:10  61:22  61:23  62:4  62:4  62:5  64:1  65:2  65:3  124:15  124:19  125:8  125:12  126:4  126:14  130:3  131:8  134:8  134:11  136:5  137:12  137:14  137:23  138:18  150:5  150:11  151:3  155:10  155:19  158:25  159:23  166:24  167:5  167:10  169:15  169:21  170:5  171:2  176:19  177:14  177:25  179:11  194:6  196:19  196:25  197:4  201:7  204:15  206:22  208:17  213:21

**noteholder's**(1) 96:18
**noteholders**(30) 13:11  15:17  21:11  48:9  55:19  55:20  55:22  55:25  56:3  56:22  106:  118:8  136:6  146:5  146:22  149:12  149:21  150:18  151:8  152:20  153:12  191:18  193:1  194:8  198:24  199:11  199:18  206:13  207:16  211:4

**notes**(7) 15:10  80:8  113:18  135:10  147:3  155:2  192:10

**nothing**(4) 156:16  193:15  199:3  199:6
**notice**(1) 64:3
**noting**(2) 34:22  42:23
**notion**(3) 45:2  105:19  206:6
**notwithstanding**(3) 77:4  173:21  176:18

**now**(102) 13:14  14:12  24:5  27:20  28:8  30:7  30:25  31:11  32:2  32:11  33:1  34:14  34:24  35:3  35:12  36:17  37:19  40:6  40:19  41:8  43:3  43:5  43:22  43:23  44:5  46:19  47:6  48:8  50:21  52:18  53:14  53:23  54:18  55:19  56:18  60:7  63:18  64:19  65:21  68:7  68:20  69:22  70:16  73:1  73:23  74:19  76:9  76:11  77:15  80:1  80:19  82:10  84:4  85:12  89:12  91:7  91:14  96:9  97:2  101:8  101:13  102:13  104:15  105:10  106:8  106:14  106:2  107:23  108:1  114:22  119:3  125:25  136:6  139:12  147:10  149:7  154:1  154:13  155:18  157:18  160:22  161:4  162:3  166:12  168:12  175:25  180:16  181:6  181:21  182:17  183:4  184:7  187:6  188:9  189:9  190:12  192:8  194:5  196:8  202:5  204:21  205:4

**nppfcc**(1) 77:21
**number**(19) 18:20  18:25  19:3  19:6  19:12  25:3  31:6  38:15  80:2  80:12  82:4  93:14  93:15  97:2  107:19  125:19  144:23  178:17  182:8
**numbers**(2) 20:15  21:21
**numeral**(1) 82:20

**oaktree**(19) 2:4  12:4  12:5  52:24  53:2  53:13  60:12  61:12  61:24  62:6  62:14  62:23  63:6  63:15  65:5  87:24  88:24  207:5
**oaktree's**(2) 53:2  53:11
**object**(7) 111:1  111:5  111:5  111:19  111:19  147:16  190:23
**objected**(5) 14:1  20:12  20:17  21:11  194:9
**objecting**(1) 22:4
**objection**(30) 14:22  18:18  20:12  21:2  21:5  21:19  22:6  22:12  22:14  26:8  26:9  48:18  48:25  49:2  49:16  56:23  84:8  88:1  92:4  103:22  111:8  123:18  124:25  132:3  141:10  148:13  194:6  196:7  208:16  208:25
**objections**(32) 13:24  14:8  16:22  16:25  17:1  17:2  17:15  18:1  18:5  19:1  19:4  19:11  19:13  27:20  45:21  45:23  46:15  57:11  58:10  96:24  123:22  201:2  201:3  202:2  202:4  202:5  202:7  203:2  203:13  204:7  204:23  205:18
**objective**(2) 36:23  182:24
**objectives**(1) 30:2
**objector**(4) 14:1  14:2  14:3  18:22
**objectors**(4) 18:21  19:9  19:13  46:1
**obligation**(4) 163:14  164:5  175:6  175:11
**obligations**(4) 170:10  170:13  198:19  208:9
**obliged**(1) 138:10
**observation**(1) 74:6
**observe**(1) 100:19
**observer**(25) 50:7  50:13  50:15  50:18  73:23  73:24  74:4  74:12  74:13  89:14  89:15  89:24  90:10  90:14  90:15  90:22  91:6  91:10  91:15  91:24  92:2  92:10  92:23  93:3  99:1
**observers**(2) 50:19  98:23
**obtain**(3) 102:23  162:6  168:5
**obtained**(4) 64:17  66:19  66:22  153:14
**obtaining**(1) 162:4
**obtuse**(1) 69:17
**obvious**(3) 13:12  78:17  170:17
**obviously**(5) 19:16  19:22  22:3  41:8  82:16
**occur**(2) 74:18  168:21
**occurred**(2) 97:1  184:10
**occurring**(2) 24:17  169:5
**off**(8) 37:21  37:22  93:2  129:9  131:5  145:10  153:19  181:24
**offer**(5) 123:7  142:16  147:24  161:10  162:  163:15  166:8  168:13  180:16  183:10
**offered**(9) 122:4  152:11  154:14  157:15  163:15  166:8  168:13  180:16  183:10

**offering**(5) 122:10  122:13  122:16  123:18  157:6
**office**(2) 72:5  79:2
**officer**(3) 71:11  78:4  82:24
**officers**(11) 37:1  102:18  128:15  128:18  128:25  131:19  132:5  138:6  143:23  164:4  167:23
**official**(3) 4:4  6:9  172:8
**often**(3) 43:17  43:12  95:23
**okay**(245) 16:3  16:3  18:16  20:4  21:1  21:5  21:25  22:3  22:11  34:14  36:24  37:19  49:10  49:15  50:3  55:19  57:9  59:22  60:3  60:7  64:12  65:10  65:21  66:6  66:12  67:4  67:19  68:17  69:8  69:21  71:4  73:1  73:6  73:23  74:19  75:9  76:24  77:11  77:15  78:12  79:18  79:21  80:1  80:19  82:10  82:25  83:10  85:13  85:19  86:8  87:13  87:17  87:21  88:21  89:8  89:12  98:16  98:25  99:8  99:22  99:25  100:9  100:25  101:8  101:13  102:15  104:21  104:2  109:13  110:25  111:7  111:15  111:24  112:  116:21  117:14  118:1  118:4  118:16  118:20  118:23  119:5  119:11  119:14  119:16  119:2  120:17  120:24  121:2  122:10  122:23  123:4  123:23  124:9  124:20  125:5  125:17  125:25  126:12  127:3  129:11  130:9  131:7  131:16  132:9  133:13  134:19  138:17  140:7  140:1  141:9  141:13  145:25  146:18  148:14  149:20  150:10  152:10  153:1  154:1  154:7  155:7  155:14  155:25  156:3  156:9  156:19  156:25  157:6  157:18  158:5  158:15  159:19  161:14  161:14  162:3  163:4  163:18  163:3  165:15  165:20  165:23  166:6  166:12  167:2  167:7  168:9  168:24  169:5  169:20  170:4  170:8  171:8  172:12  172:17  172:23  173:18  173:20  174:7  174:16  175:3  176:10  176:18  177:1  177:8  177:20  177:24  179:19  180:2  180:4  180:7  180:10  180:16  181:1  181:6  181:12  181:15  181:21  182:3  182:1  182:17  183:11  183:23  184:2  184:7  184:13  184:16  184:23  185:2  185:3  185:10  185:11  185:24  186:1  186:3  186:8  186:20  187:6  187:18  188:9  188:16  189:3  189:9  189:18  189:18  190:8  191:10  191:16  191:27  198:16  199:6  199:11  200:3  200:12  200:17  202:1  202:16  206:2  208:3  210:1  210:17  210:18  210:21  211:6  211:15

**once**(4) 19:2  40:13  40:16  121:14
**one**(116) 1:29  3:19  5:8  12:36  12:36  14:1  34:9  35:4  36:13  37:9  37:10  47:9  47:13  54:4  54:6  54:19  55:2  59:3  59:3  60:19  63:11  63:11  72:6  72:13  83:10  83:15  85:18  90:8  91:16  92:14  94:19  99:14  101:5  102:24  103:17  106:8  108:9  110:16  112:21  113:8  113:18  114:11  116:5  116:6  116:18  119:23  120:17  122:18  122:21  126:20  127:25  133:7  134:19  138:10  142:4  142:17  142:17  143:18  143:19  144:3  144:5  145:5  145:23  146:4  150:9  153:18  157:13  161:5  161:10  162:21  164:19  164:19  171:1  177:9  180:20  181:1  183:16  184:4  184:10  184:13  184:17  185:2  185:19  186:5  186:10  186:17  186:24  187:4  188:17  188:18  190:1  193:1  193:2  193:10  193:10  193:15  193:21  194:14  196:8  197:10  198:16  199:4  203:25  203:24  203:25  207:7  207:23  209:5

**one-third**(1) 146:6
**one?"**(1) 185:17
**oneal**(1) 7:29
**onerous**(2) 152:15
**ones**(1) 145:1
**ongoing**(1) 45:14

**only**(21) 31:7  41:22  53:8  76:22  103:3  106:21  107:20  111:10  117:5  120:18  128:4  131:2  150:15  152:3  152:20  157:19  157:19  159:8  186:17  193:10  199:21
**onto**(1) 182:5
**open**(4) 16:7  53:25  63:24  206:10
**opening**(3) 15:9  174:12  201:8
**operate**(3) 29:22  144:24  144:25
**operated**(1) 31:14
**operates**(1) 55:3
**operating**(1) 161:25
**operative**(1) 51:23
**opine**(1) 117:23
**opined**(6) 46:25  47:1  53:2  53:25  56:18  57:22

**opinion**(80) 27:2  37:23  37:24  38:4  38:6  43:5  43:10  44:11  44:11  44:16  44:25  47:10  47:14  47:19  50:5  50:9  50:21  50:24  53:5  53:8  56:2  56:6  56:19  56:21  56:25  57:5  57:17  57:20  57:25  70:18  71:12  79:21  80:13  80:25  81:16  81:25  82:8  84:13  84:13  84:25  86:8  87:8  87:10  87:23  88:23  94:1  94:9  94:13  104:3  122:10  122:17  123:4  123:8  130:23  132:7  139:21  141:3  147:14  151:14  152:10  152:16  154:14  155:18  157:5  157:8  157:11  159:11  161:11  162:9  164:1  167:20  168:13  173:20

**opinions**(24) 27:7  27:15  38:21  39:2  40:6  44:6  44:17  47:4  77:16  91:8  109:10  123:2  124:10  125:18  127:18  131:23  133:8  139:13  140:10  143:10  147:24  148:12  148:12  163:15
**opponent's**(1) 14:20
**opportunities**(1) 130:17
**opportunity**(5) 13:14  17:6  93:2  109:6  130:5  139:17  147:10

**opposed**(7) 14:16  70:19  137:9  159:1  162:15  164:13  166:15
**opposing**(1) 41:13
**optimistic**(1) 205:12
**options**(1) 66:11
**orange**(1) 89:7
**order**(27) 17:14  17:15  17:17  19:12  21:10  24:20  24:22  36:9  36:11  42:21  73:9  86:13  92:19  94:4  97:16  98:9  99:9  151:18  156:4  173:24  174:11  175:12  191:25  197:7  209:17  209:17  210:2
**orders**(2) 16:11  16:12
**ordinary**(2) 43:2  45:18
**organize**(1) 19:8
**original**(3) 93:23  120:1  182:7
**other**(82) 13:18  13:24  14:8  14:16  15:2  16:20  17:1  22:5  22:8  26:1  34:1  34:11  35:7  37:3  37:15  38:2  40:22  46:1  46:19  48:22  49:25  51:9  52:13  52:24  54:19  56:15  63:20  66:3  66:19  72:2  72:20  76:10  88:10  88:23  90:3  90:13  91:2  92:19  97:16  98:12  101:6  102:4  118:4  122:7  122:15  122:21  130:17  131:4  132:13  138:9  142:6  142:16  143:17  144:3  144:6  145:6  145:11  145:21  157:13  169:23  170:8  174:24  175:23  178:22  181:10  181:20  183:19  184:14  191:17  191:18  192:5  195:18  196:14  197:25  204:1  204:15  204:23  204:25  205:8  207:23  208:9  210:13
**others**(9) 14:21  63:11  84:21  102:5  102:10  128:12  192:19

**otherwise**(13) 50:17  68:21  119:15  131:10  133:23  134:24  135:1  170:1  174:5  174:10  194:2  197:14  198:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| our(19) 16:3 22:19 23:17 33:22 81:2 105:15 108:7 115:7 160:1 199:23 199:23 199:23 200:13 201:2 203:1 203:7 204:23 205:9 207:21 | | paper(1) 197:25 | | percent(78) 33:25 50:23 51:4 51:11 51:13 51:14 51:16 51:16 51:19 51:20 51:21 51:21 52:2 52:5 52:6 52:14 52:16 60:20 61:6 61:25 65:6 79:8 79:10 84:15 84:17 84:19 84:21 85:3 85:3 85:15 86:15 127:8 136:19 136:20 136:21 137:1 142:23 143:3 145:22 146:8 146:10 149:17 149:19 150:2 150:6 150:7 150:8 150:9 150:15 150:21 151:4 151:5 151:15 151:18 151:25 152:3 152:8 152:12 152:16 152:21 152:24 153:1 153:5 153:6 153:8 153:9 153:11 153:15 153:18 153:19 153:22 154:8 154:11 154:17 154:22 160:22 160:24 | | plan(232) 14:9 14:18 14:18 14:20 14:25 15:17 16:23 16:23 17:15 17:16 18:24 19:11 19:16 20:10 20:15 20:16 20:17 20:19 21:6 26:16 27:5 27:8 27:11 27:14 27:21 27:25 28:2 33:13 35:7 35:16 35:15 35:15 35:22 35:23 35:24 36:2 38:1 38:4 38:16 39:9 43:7 43:13 43:15 44:7 44:21 46:8 46:14 46:16 46:18 46:21 47:20 47:23 48:2 48:2 48:11 48:23 49:21 49:24 49:25 49:25 50:1 54:13 54:15 55:19 55:20 55:21 55:23 55:24 55:25 56:3 56:8 56:10 56:11 56:19 56:22 57:18 57:21 57:22 58:1 58:2 58:6 58:8 58:9 59:17 59:23 60:8 60:9 60:11 60:23 61:1 61:3 61:10 61:1 61:22 61:23 62:4 62:4 62:5 62:13 62:21 63:6 63:19 63:21 64:4 64:5 64:21 65:2 65:2 65:3 65:22 65:23 66:7 66:16 67:9 67:11 67:15 67:19 68:7 76:13 76:19 76:23 76:25 77:5 77:6 77:13 82:14 82:17 92:16 93:19 94:1 94:6 94:7 94:11 94:15 94:16 94:24 94:25 95:9 95:10 95:10 95:12 96:18 97:8 97:14 97:16 98:2 98:10 99:9 102:17 124:13 124:15 124:19 124:19 125:8 125:12 126:4 126:14 130:3 131:8 134:8 134:11 136:5 136:7 137:12 137:14 137:16 137:23 138:18 139:13 141:16 143:10 146:4 146:16 146:22 146:25 147:2 147:6 149:13 149:22 150:5 150:11 150:12 150:13 150:14 151:2 151:3 151:7 155:10 155:19 155:19 158:25 159:23 166:24 167:5 167:7 167:11 169:16 169:21 170:5 171:2 172:1 176:19 177:2 177:3 177:9 178:1 178:9 179:11 191:23 191:24 192:1 192:1 192:4 192:9 193:17 194:6 196:19 196:25 199:5 199:24 200:23 201:7 201:7 202:8 203:4 203:25 204:15 204:23 206:14 206:22 213:21 |
| ourselves(2) 203:12 204:6 | | paragraph(6) 42:6 94:17 156:1 163:24 172:2 173:3 | | | | | |
| out(19) 31:18 33:21 47:23 51:4 68:8 113:5 113:8 115:9 120:13 140:9 146:9 153:23 167:9 170:16 185:15 188:21 190:21 193:9 194:11 194:21 200:9 207:24 | | | | | | | |
| | | parallel(1) 37:7 | | | | | |
| | | paraphrase(4) 36:9 168:18 179:23 180:15 | | | | | |
| outcome(14) 41:4 100:18 135:22 136:21 141:24 142:7 142:9 142:10 146:23 150:4 169:25 171:6 200:15 207:18 | | pardon(1) 20:17 | | | | | |
| | | parent(4) 187:8 187:20 187:23 190:16 | | | | | |
| | | park(3) 5:8 6:10 10:24 | | | | | |
| | | parke(1) 4:12 | | | | | |
| outcomes(9) 117:24 141:20 142:12 182:8 183:24 184:2 188:14 195:24 196:1 | | part(21) 20:12 24:11 72:19 77:15 82:15 90:17 94:7 94:8 103:17 109:21 119:2 122:8 129:18 130:7 135:9 150:17 175:2 186:7 191:19 195:24 205:19 | | | | plans(6) 14:2 18:21 19:4 28:3 96:19 204:15 | |
| outlet(1) 31:20 | | | | percentage(6) 136:12 136:18 150:18 150:23 155:4 169:4 | | | |
| outlets(1) 29:21 | | partial(2) 113:7 113:7 | | | | | |
| outline(2) 19:5 20:2 | | partially(1) 209:17 | | percentages(2) 151:6 194:3 | | plausible(9) 156:20 159:13 159:17 166:1 166:5 168:14 168:21 168:25 174:6 | |
| outset(2) 179:21 180:14 | | participants(2) 81:20 146:24 | | perfectly(1) 156:20 | | | |
| outside(11) 35:8 38:13 54:2 67:2 67:5 97:4 97:25 111:16 122:9 128:21 141:7 | | participate(7) 83:11 93:3 192:14 192:19 192:23 193:11 194:12 | | perform(5) 120:6 120:19 122:25 147:22 148:2 | | plausibly(1) 157:9 | |
| | | | | | | play(2) 156:9 165:3 | |
| outstanding(2) 79:10 209:6 | | participating(1) 209:14 | | performed(1) 122:6 | | playback(3) 156:11 160:11 165:4 | |
| outweighed(1) 32:7 | | particular(24) 26:5 30:4 45:14 61:11 64:9 91:8 94:17 96:5 112:23 118:3 125:8 140:6 140:21 141:23 142:7 142:24 157:3 163:8 172:3 176:25 191:23 198:17 209:8 211:9 | | performing(2) 121:12 121:17 | | played(1) 160:9 | |
| over(31) 19:5 19:6 25:1 37:19 90:7 102:20 119:17 128:18 132:15 133:2 134:1 148:19 155:22 156:6 156:16 157:19 157:19 161:7 167:9 176:21 179:2 185:21 186:12 187:25 192:21 193:17 197:9 197:10 198:5 198:5 209:15 | | | | perhaps(4) 106:12 112:14 138:10 201:16 period(7) 63:14 66:25 69:2 107:6 110:17 126:5 203:5 | | playing(1) 86:14 | |
| | | | | | | plaza(2) 2:22 4:20 | |
| | | particularly(3) 39:23 40:1 202:23 | | | | please(25) 13:2 22:23 26:24 58:20 64:10 85:19 104:11 108:12 108:16 108:19 126:10 127:24 139:8 140:14 143:13 155:11 156:9 160:9 165:3 172:4 178:4 185:3 185:8 195:3 210:24 | |
| | | particulars(1) 104:17 | | permanent(1) 25:15 | | | |
| overall(2) 160:15 175:15 | | parties(44) 13:8 13:12 14:7 16:8 16:10 18:3 18:25 19:6 19:25 32:9 41:11 42:1 44:1 48:2 48:22 52:3 53:19 56:15 62:22 62:25 70:22 74:25 75:14 79:24 80:23 89:7 97:14 98:3 98:12 101:7 101:17 105:1 175:17 191:18 192:13 193:23 201:15 202:2 202:6 203:15 203:18 204:3 206:3 207:19 211:8 | | permission(1) 117:3 | | | |
| overruled(1) 141:8 | | | | permit(2) 97:16 98:9 | | | |
| owe(2) 170:10 170:12 | | | | permitted(2) 167:11 208:19 | | pleases(1) 205:6 | |
| owes(2) 171:19 172:19 | | | | permitting(3) 29:13 113:17 203:17 | | pllc(2) 5:12 5:33 | |
| owing(1) 45:11 | | | | pernick(1) 1:35 | | | |
| own(19) 35:17 52:13 86:21 89:7 113:3 123:7 129:16 130:20 130:20 130:23 135:6 135:10 140:4 168:6 168:8 178:13 189:6 198:2 199:14 | | | | person(7) 18:19 63:2 70:25 72:16 79:15 79:22 79:25 | | point(24) 41:12 44:24 44:24 105:8 106:19 110:18 116:22 118:16 122:7 124:21 130:9 132:19 134:7 138:14 141:14 143:4 144:19 146:18 150:9 150:24 192:4 193:16 196:13 199:18 205:25 | |
| | | partly(2) 136:13 136:15 | | | | | |
| | | partner(5) 9:5 23:14 24:4 24:6 152:13 | | personal(4) 77:11 167:24 208:23 208:24 | | | |
| | | partners(10) 9:9 9:9 9:21 9:21 11:41 11:41 12:12 12:12 12:36 12:36 | | perspective(3) 38:19 130:24 205:9 | | | |
| owned(6) 28:19 51:13 78:25 79:14 80:16 136:18 | | | | pertain(1) 89:20 | | | |
| | | partway(1) 113:23 | | pertained(2) 73:21 91:21 | | point/counterpoin(1) 204:2 | |
| | | party(17) 10:23 17:15 37:13 43:19 45:21 45:23 46:15 58:10 71:13 73:13 77:17 80:2 81:9 90:18 101:23 153:14 192:16 | | pertains(2) 34:1 51:6 | | pointing(3) 38:12 46:1 80:8 | |
| owner(3) 119:2 126:23 130:19 | | | | peter(2) 8:22 11:29 | | points(5) 47:8 141:22 146:1 203:21 205:21 | |
| owners(5) 29:8 45:25 92:17 92:20 177:13 | | | | phone(1) 209:14 | | | |
| ownership(40) 24:21 25:4 25:16 26:6 26:6 27:5 27:7 27:13 27:19 28:20 28:22 29:17 29:18 29:19 29:21 29:24 30:11 31:5 31:8 31:18 36:11 38:3 39:13 40:2 45:9 46:7 47:2 47:9 52:25 53:4 53:20 54:8 55:8 89:21 90:4 91:22 92:17 96:10 97:9 152:24 | | parver(1) 9:18 | | phones(3) 209:8 209:19 209:22 | | policies(1) 26:5 | |
| | | patrick(1) 7:25 | | photographic(1) 73:8 | | policy(16) 30:1 30:2 31:12 31:13 31:14 31:14 31:16 31:25 32:3 32:5 32:6 32:12 32:22 42:24 46:2 96:25 | |
| | | paul(2) 7:4 10:4 | | phrase(8) 34:5 164:25 168:11 179:24 188:12 188:18 192:8 193:25 | | | |
| | | pause(4) 124:2 125:20 138:24 149:1 | | | | | |
| | | paxson(7) 73:16 73:21 95:16 95:18 95:23 96:1 96:18 | | physics(1) 118:13 | | | |
| owning(3) 90:5 126:19 127:1 | | | | pick(2) 17:6 121:20 | | polk(2) 3:4 8:21 | |
| owns(6) 50:23 79:8 79:9 89:5 135:9 137:5 | | pay(7) 135:23 136:1 136:2 145:10 168:2 171:16 187:9 | | pickering(1) 10:35 | | portion(4) 117:5 154:23 160:13 160:17 | |
| o'clock(1) 211:20 | | | | picking(1) 93:10 | | pose(1) 40:20 | |
| o'melveny(1) 6:30 | | | | picture(1) 30:9 | | posed(3) 81:3 184:24 204:17 | |
| p.a(1) 1:34 | | payment(5) 188:18 189:17 189:19 190:1 190:5 | | pie(1) 171:24 | | poses(1) 40:4 | |
| p.m(7) 108:3 108:3 195:2 195:2 210:23 210:23 211:21 | | | | piece(1) 148:19 | | posit(1) 62:10 | |
| | | payments(3) 188:20 189:11 190:3 | | piggyback(1) 136:15 | | posited(1) 54:16 | |
| pace(1) 202:3 | | peer(1) 116:8 | | piper(1) 2:28 | | position(11) 23:13 52:3 100:16 110:2 149:9 152:18 166:13 187:3 202:7 206:24 207:24 | |
| package(1) 51:22 | | pending(8) 27:18 27:20 34:23 45:8 53:14 56:12 58:10 96:23 | | place(3) 46:15 46:16 108:13 | | | |
| page(48) 17:19 36:4 37:23 42:3 42:6 43:4 44:6 44:22 44:24 47:7 50:22 52:20 52:22 52:23 53:1 71:6 71:8 77:24 81:6 82:16 82:17 82:19 82:19 85:20 85:21 94:11 95:2 99:10 102:17 102:20 103:16 104:2 104:11 155:11 160:14 163:17 163:19 166:24 172:1 172:23 172:24 178:4 178:4 178:16 180:8 185:9 201:10 201:11 | | | | placed(6) 53:13 72:5 72:15 72:16 172:3 178:23 | | | |
| | | | | | | | |
| | | pennock(1) 7:11 | | plainly(1) 209:23 | | positional(1) 34:3 | |
| | | pennsylvania(1) 1:44 | | | | | |
| | | pension(1) 86:1 | | | | | |
| | | people(5) 105:22 107:19 133:8 143:1 | | | | | |
| | | per(3) 31:1 34:4 95:24 | | | | | |
| | | perceive(2) 42:17 211:8 | | | | | |
| paid(8) 145:7 145:8 166:21 168:7 189:15 189:21 190:21 193:10 | | perceived(1) 105:4 | | | | | |
| pair(1) 195:25 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**positions**(1) 23:21
**positive**(3) 88:23 144:10 146:4
**positively**(1) 144:11
**possession**(2) 28:18 59:21
**possibilities**(1) 67:10
**possibility**(15) 35:16 65:23 80:11 101:19 101:24 105:7 126:20 128:17 155:20 161:23 169:3 169:5 176:20 184:5 199:21

**possible**(12) 19:24 67:20 98:9 102:10 127:4 129:12 132:20 133:7 136:18 141:19 193:17 197:17

**possibly**(2) 128:3 128:4
**post**(4) 25:18 28:24 29:14 193:3
**post-consummation**(1) 99:4
**post-graduate**(3) 118:11 118:11 118:13
**post-hearing**(1) 201:8
**potential**(30) 38:24 57:18 126:1 126:7 127:21 129:25 130:7 130:16 130:22 131:4 132:11 132:22 133:24 136:4 151:9 152:13 154:5 154:6 160:3 161:7 161:9 161:13 163:12 164:7 168:16 174:18 175:20 177:1 192:2 197:18

**potentially**(12) 96:13 130:15 131:9 136:20 146:10 150:1 151:4 158:12 161:17 162:19 167:14 174:18

**potter**(1) 2:19
**power**(13) 34:7 36:14 54:14 63:1 63:6 63:15 88:6 127:10 132:22 133:2 149:10 157:11 198:13
**powerful**(1) 164:21
**powers**(1) 63:5
**ppearances**(5) 1:21 2:1 3:1 4:1 5:1
**practical**(3) 188:15 191:9 198:6
**practice**(11) 23:15 23:16 23:17 23:18 23:20 23:24 24:7 24:11 24:17 53:19 187:

**practiced**(1) 24:4
**practitioner**(2) 105:5 105:6
**prak**(33) 26:15 27:9 27:17 32:11 32:13 37:24 38:10 38:23 41:11 41:22 45:8 45:11 46:5 46:12 46:23 46:24 48:8 50:4 52:3 52:19 53:2 53:25 54:4 57:22 83:16 83:19 84:3 84:4 89:13 89:16 91:8 97:6 98:14

**prak's**(30) 27:2 27:7 27:15 27:22 28:5 31:11 34:5 35:3 37:20 37:22 38:8 38:11 38:21 39:2 39:6 39:14 40:6 40:13 41:9 43:4 43:10 44:5 44:11 44:22 47:7 47:9 50:21 52:1 56:18 93:16

**pre**(1) 203:11
**pre-figuring**(1) 204:5
**pre-lbo**(1) 191:18
**precisely**(2) 43:24 98:9
**predictions**(1) 135:21
**preferences**(1) 158:17
**preliminarily**(1) 13:5
**preliminary**(2) 13:25 109:15
**premise**(1) 41:1
**premised**(3) 150:13 150:14 187:23
**premium**(3) 153:15 153:21 153:23
**preparation**(1) 54:18
**prepared**(3) 26:18 124:6 125:14
**preparing**(2) 74:17 121:25
**present**(8) 5:33 15:19 32:14 46:3 53:20 199:20 203:25 211:5

**presentation**(2) 206:25 208:13
**presented**(3) 41:3 90:8 204:10
**preserve**(3) 28:23 133:14 175:8
**presumably**(2) 13:13 13:24
**presume**(1) 105:16
**presumption**(5) 88:14 88:17 88:18 88:22 88:23

**pretty**(6) 33:7 135:6 181:14 202:5 205:17 205:25

**prevail**(1) 186:23
**previous**(2) 44:17 111:8
**previously**(5) 55:11 94:3 97:12 111:10 139:12

**primoff**(1) 9:14
**principal**(2) 28:25 124:14
**principle**(4) 51:15 51:23 149:7 192:25
**principles**(1) 115:6
**prior**(6) 24:2 42:4 53:15 53:21 117:22 167:4

**priority**(1) 209:10
**privacy**(1) 23:19
**private**(6) 25:1 25:2 25:5 25:8 119:3
157:4 158:7 158:17
**privileges**(3) 157:4 158:7 158:17
**probabilities**(9) 122:19 123:6 142:5 143:5 143:8 143:9 144:2 144:6 183:18

**probability**(15) 113:25 114:4 114:9 114:18 122:25 142:3 142:13 142:14 144:4 145:20 145:21 169:4 183:12 183:25 187:5

**probably**(18) 13:15 18:1 19:19 106:17 115:19 119:18 119:18 128:22 131:17 132:17 143:3 143:23 165:25 166:7 206:15 206:15 210:14 210:15

**problem**(1) 31:7
**problematic**(1) 95:25
**problems**(4) 140:6 140:10 198:25 199:2
**procedure**(1) 66:7
**procedures**(8) 26:4 63:18 63:22 64:25 65:1 65:11 65:16 107:20

**proceed**(10) 26:10 58:21 108:25 124:3 139:9 149:2 164:4 203:7 204:3 206:13

**proceeding**(4) 25:11 31:24 82:13 98:10
**proceedings**(8) 1:17 1:48 45:15 124:2 125:20 138:24 149:1 212:4

**proceeds**(4) 169:23 169:25 171:6 174:22
**process**(7) 19:23 32:8 43:9 45:17 56:2 56:7 66:20

**processes**(1) 56:9
**processing**(2) 27:15 40:18
**produce**(1) 52:8
**produced**(1) 140:1
**produces**(1) 140:1
**productively**(1) 106:13
**profess**(1) 121:7
**profession**(1) 112:25
**professional**(3) 114:10 117:12 208:23
**professor**(60) 105:16 106:24 108:7 108:15 109:4 109:7 110:11 110:19 112:10 114:22 116:23 117:9 118:10 123:19 124:6 124:22 125:7 125:9 125:22 125:23 132:3 134:6 138:14 139:3 139:12 141:13 147:20 147:21 147:2 148:11 149:7 151:13 155:11 156:3 156:12 159:3 159:6 159:10 159:16 159:20 159:25 160:12 161:15 162:3 162:10 162:14 165:5 169:6 173:20 175:5 179:9 180:5 183:3 185:6 185:22 195:9 195:10 196:18 199:21 200:5 210:5

**proffer**(1) 118:4
**proffered**(2) 111:4 111:6
**prohibit**(1) 31:5
**prong**(1) 182:24
**prongs**(1) 61:14
**proper**(1) 196:5
**properly**(1) 129:17
**property**(2) 23:19 31:2

**proponent**(19) 20:15 20:16 20:18 20:19 21:6 64:15 66:17 66:21 66:24 66:25 67:6 67:12 67:15 67:21 67:23 67:25 68:24 102:23 103:2

**proponents**(43) 14:9 14:9 15:17 16:20 16:23 17:16 18:24 19:16 20:8 20:10 33:14 46:17 54:15 59:18 59:23 60:23 61:11 61:22 62:4 62:13 63:21 66:4 69:10 69:15 103:19 150:11 178:1 178:9 179:12 199:23 199:25 200:23 201:7 201:7 202:8 203:4 203:25 204:15 206:22 208:17 213:2

**proposals**(1) 206:23
**propose**(2) 202:8 203:16
**proposed**(14) 14:18 15:18 16:12 21:23 22:4 27:4 29:7 94:6 126:15 133:5 136:7 137:15 155:9 197:12

**proposing**(2) 19:14 111:13
**proposition**(1) 95:24
**propriety**(1) 129:13
**prosecuting**(1) 41:13
**prospects**(2) 144:7 144:12
**prospered**(1) 178:12
**protect**(2) 158:10 197:7
**protected**(2) 128:20 158:12
**protecting**(2) 161:16 174:17
**protection**(2) 116:18 138:7
**proved**(1) 186:10
**provide**(19) 23:3 34:2 94:12 105:7 112:12 113:14 114:8 115:1 116:11 117:14 117:20 123:1 123:1 142:15 145:3 148:3 154:4 178:9 201:8

**provided**(8) 40:20 64:14 81:14 94:14 103:1 119:21 189:16 190:7
**provides**(7) 36:9 42:14 43:15 66:11 78:22 95:9 147:1

**providing**(1) 101:23
**proving**(1) 186:23
**provision**(48) 36:6 36:17 37:1 37:2 37:7 37:17 49:23 64:19 67:5 67:9 67:11 77:1 78:3 78:6 78:17 79:12 80:14 94:23 94:23 94:25 95:5 99:12 99:20 100:10 102:21 103:7 103:9 105:5 128:14 128:20 131:13 131:24 156:14 157:19 163:21 163:22 163:22 164:1 164:14 166:25 167:3 167:4 167:8 169:10 171:25 172:25 197:6

**provisions**(23) 15:5 27:11 33:21 35:16 44:7 44:21 64:6 64:21 95:12 114:13 126:13 127:25 149:11 155:20 168:15 197:6 202:13 204:20 204:22 207:9 207:10 207:22 207:25

**proviso**(2) 64:14 103:1
**proxy**(2) 163:1 163:9
**prudent**(3) 105:5 105:6 168:5
**public**(7) 29:10 29:15 30:1 32:16 40:1 119:1 134:24

**publish**(1) 116:2
**published**(2) 115:25 116:3
**publisher**(1) 55:1
**publishes**(1) 55:1
**purport**(1) 154:1
**purporting**(1) 123:1
**purpose**(5) 13:16 42:4 42:17 169:17
**purposes**(4) 55:23 81:10 85:3 189:12
**pursuant**(1) 172:9
**pursue**(3) 112:22 170:6 190:9
**pursuit**(1) 16:12
**pushing**(2) 16:7 201:16
**put**(13) 16:6 17:19 19:17 30:18 49:6 122:23 125:18 134:10 134:12 140:13 142:2 181:3 207:24
**putting**(1) 77:4

**qualification**(1) 171:21
**qualifications**(4) 29:7 45:25 109:16 147:20
**qualified**(11) 111:10 111:14 111:22 111:22 116:23 120:6 120:24 140:24 147:22 147:23 148:2

**qualifies**(2) 85:2 87:11
**qualify**(1) 85:1
**qualifying**(1) 56:15
**quantitatively**(1) 114:12
**quarter**(1) 13:20
**quasi-adjudicatory**(1) 31:23
**quersh**(1) 5:7
**question**(48) 42:20 60:17 65:8 68:19 69:14 71:10 71:10 74:16 74:17 79:10 81:8 81:8 81:11 81:18 82:3 88:3 91:24 93:11 96:11 103:22 104:7 104:16 117:19 129:11 134:14 135:13 162:17 162:19 163:7 172:22 181:21 183:2 183:3 184:23 186:22 188:2 189:14 195:21 196:8 196:22 196:24 198:16 198:20 203:23 204:17 209:12 211:8

**questioning**(2) 46:3 101:14
**questions**(32) 40:25 55:23 58:13 61:20 63:20 66:3 87:21 91:1 93:15 96:9 97:3 97:17 98:17 99:8 100:20 101:25 103:17 105:11 109:13 109:15 114:23 117:6 148:15 195:5 195:11 195:18 196:12 196:18 196:19 196:20 197:16 198:17

**quicker**(1) 183:4
**quickly**(4) 45:7 104:11 171:25 205:16
**quite**(7) 13:23 17:17 37:17 42:10 86:11 96:20 103:21

**quo**(1) 46:7
**quote**(5) 32:12 32:13 41:14 41:16 42:11
**quoting**(2) 41:10 41:11
**qureshi**(28) 106:5 117:3 118:6 118:7 118:9 123:10 147:18 147:19 148:17 148:22 148:25 149:2 149:4 149:6 157:14 160:9 161:1 165:22 172:25 173:2 178:25 179:2 179:5 194:5 196:19 196:20 198:16 199:9

**r-o-s-e-n-s-t-e-i-r**(1) 23:1
**rachel**(1) 10:18
**radio**(4) 28:17 29:20 29:23 29:23
**raise**(11) 102:15 108:13 110:9 163:5 203:5 204:24 205:1 205:2 205:4 205:10 205:24

**raised**(5) 16:22 85:23 91:15 204:19 206:1
**raising**(1) 66:3
**range**(6) 84:1 121:21 122:13 140:5 142:11 154:16

**ranges**(1) 141:21
**ranging**(2) 122:19 141:18
**rate**(1) 145:12
**rates**(1) 121:23
**rath**(3) 4:5 4:6 6:25
**rather**(10) 14:3 61:5 81:14 86:22 95:15 96:3 147:22 155:2 203:12 204:4

**rational**(1) 19:21
**re-solicitation**(1) 15:1
**reach**(5) 39:24 89:25 91:23 122:21 189:24
**reached**(1) 201:6
**reaching**(3) 15:16 112:18 164:10
**read**(19) 15:4 22:2 37:24 39:8 43:6 44:6 64:19 71:9 71:22 87:14 104:2 105:10 121:14 140:2 172:4 178:1 178:21 180:11 194:6

**reading**(8) 78:17 85:22 104:14 104:15 121:18 155:25 159:13 159:16

**reads**(3) 48:11 173:4 178:8
**reaffirmed**(1) 42:22
**real**(4) 44:4 92:1 199:2 199:3
**realized**(1) 174:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**really(20)** 29:4 30:2 34:17 37:7 44:16 44:16 56:9 95:17 95:25 96:20 114:12 114:14 119:25 120:6 132:13 132:17 133:18 143:2 172:22 182:4

**realm(1)** 128:7
**reason(7)** 60:19 61:17 138:6 158:11 161:22 162:12 186:14

**reasonable(4)** 140:4 146:16 157:7 191:20
**reasonableness(8)** 111:11 113:4 124:13 139:13 139:22 140:25 141:16 147:14

**reasonably(16)** 64:15 66:17 66:21 127:2 127:2 142:8 142:9 142:11 142:12 142:19 142:22 188:25 189:12 190:2 190:7 193:4

**reasoned(1)** 39:25
**reasons(8)** 27:6 38:9 60:17 78:6 79:5 133:7 161:10 170:17

**rebecca(1)** 12:23
**rebuttal(25)** 13:9 13:11 13:15 20:7 22:19 25:22 84:3 105:16 111:17 111:19 123:14 124:6 124:9 124:16 124:22 125:11 152:11 154:1 154:13 168:13 183:5 190:12 191:11 199:13 199:14

**recall(30)** 32:17 41:13 46:23 48:14 51:3 62:9 63:21 70:1 80:20 81:2 82:2 82:6 84:11 93:16 93:20 96:10 97:19 98:25 101:15 102:9 154:3 179:14 180:1 192:10 194:14 195:15 195:19 196:22 197:21 209:19

**receipt(1)** 60:20
**receive(5)** 61:4 61:24 135:14 169:23 171:5
**received(1)** 64:16
**receives(1)** 169:24
**recent(8)** 15:6 18:9 24:24 35:24 55:23 64:5 126:16 204:21

**recently(3)** 25:10 136:7 199:5
**receptive(1)** 190:2
**recess(9)** 58:18 58:19 108:3 139:2 139:6 194:24 195:2 210:22 210:23

**recognition(1)** 103:9
**recognize(1)** 105:1
**recognized(2)** 116:6 159:11
**recollection(6)** 90:11 90:12 90:19 149:19 180:10 180:12

**recommendation(1)** 34:11
**reconvene(1)** 108:1
**record(24)** 21:22 22:7 22:24 30:19 37:24 39:8 41:23 43:6 48:6 71:9 78:25 80:16 106:4 108:20 118:7 172:5 179:10 180:11 195:10 199:17 200:21 207:1 208:14 211:1

**recorded(3)** 1:48 34:21 90:24
**recording(2)** 1:48 58:13
**recoveries(16)** 146:19 146:21 147:2 147:3 147:6 191:13 192:2 192:4 192:10 192:15 192:19 192:23 193:12 193:23 194:13 207:13

**recovery(3)** 146:6 146:8 146:10
**recross(6)** 98:18 98:20 149:5 199:8 199:9 213:3

**recruit(2)** 126:6 130:10
**redemption(1)** 197:11
**redirect(8)** 91:2 91:4 101:13 103:25 195:6 195:7 213:3 213:3

**reduce(1)** 151:9
**reduced(1)** 154:21
**reed(1)** 3:25
**reexamination(1)** 32:2

**refer(8)** 43:13 54:12 71:15 71:21 104:1 135:16 135:17 146:2

**reference(9)** 26:5 31:12 53:1 55:24 93:18 97:23 126:1 131:12 165:7

**referenced(3)** 32:20 41:8 41:10
**referred(10)** 48:1 48:8 55:16 70:6 95:9 103:18 104:22 104:23 197:19 197:21

**referring(11)** 37:19 41:22 64:20 70:4 72:24 87:13 94:18 94:18 95:5 98:22 143:20 146:20

**refers(7)** 47:24 78:9 78:13 78:19 79:3 135:18 144:19

**reflect(1)** 15:10
**reflection(1)** 69:5
**reflects(2)** 19:15 48:6
**refresh(2)** 180:10 180:12
**regard(18)** 17:14 39:3 89:24 92:13 96:20 109:17 126:14 129:14 130:2 130:13 138:8 158:8 164:3 166:10 166:6 171:13 171:24 209:17

**regarding(12)** 27:7 27:19 40:15 41:3 41:17 41:23 45:11 45:14 92:16 131:24 151:13 209:7

**regardless(2)** 44:9 190:19
**regards(2)** 71:17 113:16
**register(1)** 89:7
**regularly(1)** 42:17
**regulation(1)** 24:17
**regulations(2)** 26:5 85:8
**regulatory(2)** 23:18 162:6
**rein(1)** 3:24
**rejected(4)** 42:11 42:15 189:19 191:4
**relate(3)** 22:5 94:13 103:17
**related(13)** 22:8 28:14 132:22 143:5 143:9 143:15 144:3 144:7 152:4 167:10 181:3 181:19 188:10

**relatedly(1)** 28:20
**relating(6)** 20:11 21:23 124:16 125:8 143:4 206:19

**relationship(3)** 91:11 196:21 196:25
**relative(4)** 124:14 134:17 135:15 136:5
**relatively(4)** 144:11 145:11 145:12 153:16
**release(1)** 15:5
**released(1)** 192:4
**relevant(8)** 24:24 26:1 33:2 37:5 42:25 46:10 68:10 87:23 89:1 89:3 89:9 116:13 122:24 155:12

**relief(8)** 28:11 28:13 29:5 166:16 166:20 167:22 168:3 205:3

**relinquish(3)** 69:10 69:15 92:21
**relinquished(1)** 102:22
**relinquishing(3)** 53:17 102:23
**remain(3)** 46:4 46:16 78:24
**remaining(4)** 14:21 18:4 18:18 124:15
**remains(2)** 17:7 46:15
**remedies(2)** 37:11 44:4
**remedy(1)** 191:1
**remember(7)** 70:15 73:16 97:20 168:18 169:2 191:3 209:23

**remembering(1)** 190:4
**removed(3)** 176:7 176:14 176:15
**render(2)** 36:21 57:17
**rendering(1)** 56:17
**renders(1)** 147:23
**renew(1)** 116:23
**renewal(1)** 111:7
**reorganization(6)** 26:17 47:20 61:1 92:16 94:6 94:8

**reorganizations(1)** 178:11

**reorganized(22)** 28:19 29:8 37:1 38:1 60:13 60:21 60:24 61:4 61:8 61:25 62:7 62:15 62:19 81:10 82:21 82:23 102:19 102:25 126:18 138:18 149:17 151:5

**repeal(2)** 32:22 42:23
**repealed(2)** 31:16 32:10
**repealing(1)** 32:12
**repeatedly(2)** 41:8 41:25
**rephrase(1)** 92:7
**replacement(3)** 63:7 64:13 78:9
**replacing(1)** 78:6
**replies(1)** 15:10
**reply(1)** 201:10
**report(45)** 25:23 25:25 26:15 27:10 31:11 31:11 32:11 33:1 40:8 42:3 54:19 57:1 57:17 70:5 70:7 70:12 87:15 103:16 103:18 103:18 111:17 111:19 117:16 119:24 124:6 124:9 124:16 124:23 125:11 139:17 139:20 141:2 141:21 147:11 152:1 154:1 154:13 159:22 160:14 168:13 179:20 180:17 183:9 200:24 201:3

**reported(2)** 30:22 43:1
**reporting(1)** 42:12
**reports(1)** 109:6
**represent(5)** 53:19 60:3 60:4 176:24
**representative(2)** 24:24 99:24
**representatives(7)** 94:20 99:15 99:18 99:22 99:25 100:10 101:2

**represented(6)** 25:1 25:4 25:7 25:13 53:13 172:11

**representing(1)** 177:11
**represents(3)** 18:19 59:25 60:5
**request(7)** 29:11 35:2 55:17 58:5 116:23 207:7 208:18

**requested(1)** 88:15
**requests(9)** 28:21 29:12 41:13 45:22 45:23 58:7 58:11 88:22 96:24

**require(2)** 69:2 128:10
**required(15)** 25:6 43:1 64:16 66:18 66:22 72:20 74:20 74:21 74:25 75:5 75:15 162:12 162:22 162:25 191:16

**requirement(1)** 74:3
**requirements(2)** 34:14 102:7
**requires(2)** 75:5 98:2
**requiring(2)** 48:6 128:14
**requite(1)** 42:19
**research(2)** 114:6 114:20
**reserve(1)** 111:21
**reserved(1)** 131:19
**residing(1)** 96:2
**resign(1)** 63:8
**resignation(1)** 53:18
**resolution(4)** 69:2 69:7 202:3 207:18
**resolve(2)** 201:3 206:22
**resolved(2)** 174:2 174:4
**respect(39)** 26:4 29:4 29:11 34:15 35:24 46:12 48:23 52:11 52:15 55:5 56:10 58:5 62:7 64:6 73:23 76:11 91:7 91:15 92:24 94:22 96:16 102:3 115:21 122:24 134:19 143:8 143:10 147:20 151:12 157:11 182:18 184:3 186:5 187:18 190:3 195:11 197:18 201:5 204:9

**respectfully(1)** 208:18
**respective(3)** 14:23 204:20 204:23
**respond(2)** 18:24 106:2
**responding(1)** 121:5
**response(11)** 13:6 57:2 111:24 117:10 148:9 179:1 179:12 194:5 209:1 210:20 211:17

**responsible(1)** 23:23
**rest(4)** 40:6 68:14 157:2 205:14

**restrict(1)** 180:24
**restricted(6)** 52:6 134:22 134:23 134:25 135:7 137:6

**restructured(1)** 43:8
**restructuring(2)** 43:8 47:23
**result(14)** 14:22 35:17 37:10 38:4 40:5 43:8 44:21 47:1 52:8 71:13 90:16 131:7 182:23 207:25

**resulting(2)** 36:12 40:18
**results(1)** 140:2
**retain(2)** 32:14 167:9
**retained(1)** 120:19
**retention(1)** 167:3
**review(18)** 13:8 22:4 26:15 26:16 32:14 32:16 40:2 45:15 56:3 58:3 85:8 109:6 109:18 116:8 139:17 147:11 178:19 203:20

**reviewed(2)** 77:16 104:24
**richards(2)** 3:17 8:25
**rid(1)** 37:12
**rifkind(2)** 7:4 10:4
**right(170)** 13:7 17:11 22:13 30:20 34:5 34:7 34:9 34:11 34:24 35:10 36:14 37:6 37:9 46:12 47:18 47:24 49:13 49:22 50:13 53:1 53:11 54:4 54:13 57:12 62:14 71:11 71:13 71:16 72:3 72:6 72:13 72:15 72:19 72:22 72:22 73:10 74:11 74:13 76:22 79:19 79:19 80:5 80:6 80:23 81:19 81:21 83:11 85:10 86:11 87:6 93:9 93:14 93:19 94:2 94:2 95:15 95:16 95:19 95:24 96:1 96:2 96:4 96:14 97:21 97:25 99:6 103:15 104:5 104:10 104:18 105:10 105:12 105:17 108:13 117:19 117:22 118:25 119:3 120:5 120:8 120:20 121:5 122:7 123:5 123:12 125:2 125:12 128:2 128:2 128:3 128:4 128:8 137:20 139:2 139:14 139:18 148:21 150:3 151:22 151:24 152:6 152:20 153:3 155:22 156:6 156:15 156:18 156:23 157:5 157:19 157:21 157:23 158:3 158:23 159:4 159:8 160:1 160:4 160:7 161:10 162:10 163:3 163:6 163:25 164:6 166:17 167:17 169:2 169:3 170:11 170:15 170:17 170:22 171:4 171:5 172:21 173:9 174:19 174:22 175:7 175:10 175:13 175:19 175:21 176:7 176:8 177:2 177:22 179:2 180:20 183:16 183:23 188:6 189:25 191:3 191:10 192:3 192:22 193:8 193:8 193:17 195:6 200:6 200:8 207:2 208:25 209:25 210:7 211:6

**rights(93)** 34:2 36:19 37:13 47:12 48:2 50:7 50:15 53:17 60:25 61:7 62:7 64:10 64:13 64:13 64:18 65:7 66:19 69:11 69:16 70:19 70:19 70:23 70:23 70:23 70:24 72:1 73:2 73:21 73:23 73:25 74:4 74:6 80:20 81:9 81:12 81:14 82:4 89:14 89:18 89:24 89:24 90:10 90:14 90:15 90:22 91:9 91:10 91:15 91:16 91:24 91:25 92:2 92:10 92:11 92:21 92:22 92:24 98:5 99:1 101:10 101:14 101:19 101:22 101:24 101:25 102:4 102:8 102:22 102:24 102:24 103:2 103:3 103:10 105:1 155:7 156:7 157:3 158:7 158:10 158:11 158:16 158:23 159:12 159:21 161:7 161:7 168:15 197:1 197:12 198:5 198:18 198:19

**rise(8)** 34:8 58:20 73:10 74:14 101:25 139:7 195:3 210:24
**risk(10)** 105:4 109:23 113:19 129:20 133:16 161:12 161:21 174:21 175:22 176:23
**risk-averse(1)** 177:15
**risks(1)** 175:23
**risky(3)** 133:14 161:18 174:19
**road(5)** 146:11 163:9 192:5 192:15 209:24
**robert(3)** 3:18 9:41 12:16
**roberts(2)** 12:26 12:27

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **rochester**(1) 8:11 | | **say**(53) 13:10 14:14 34:18 42:16 42:20 44:18 49:2 62:9 68:3 77:4 77:21 90:3 90:6 93:11 105:6 107:24 111:15 115:17 129:8 129:19 130:17 132:12 132:15 133:12 133:12 133:22 135:19 135:19 139:20 146:7 147:13 151:23 153:8 156:13 156:18 156:21 160:22 164:7 165:8 165:12 166:2 171:15 171:23 174:1 182:12 189:20 191:5 196:1 198:11 205:11 206:4 210:5 210:6 | | **seeking**(9) 24:21 27:3 28:15 47:22 76:5 88:11 89:4 132:4 160:5 | | **sheet**(5) 122:11 122:14 122:17 144:8 | |
| **rock**(11) 109:7 125:9 159:6 159:10 159:10 159:25 162:3 162:10 162:14 199:21 200:9 | | | | **seemed**(2) 18:12 100:14 | | **sheffield**(1) 12:13 | |
| | | | | **seems**(2) 19:21 165:24 | | **shelley**(1) 212:8 | |
| | | | | **seen**(7) 15:3 18:1 18:11 32:18 43:20 151:6 153:13 | | **sheron**(1) 11:34 | |
| **rock's**(3) 131:23 159:3 159:16 | | | | | | **short**(7) 58:16 136:2 148:1 194:23 194:24 199:22 208:13 | |
| **rockefeller**(1) 4:20 | | | | | | | |
| **rodney**(1) 3:19 | | | | **seife**(1) 4:14 | | **shorter**(1) 162:5 | |
| **rogers**(1) 12:10 | | **saying**(5) 42:15 46:11 140:7 143:23 168:2 | | **seiler**(2) 5:25 8:16 | | **should**(41) 16:24 17:2 25:13 31:3 34:1 41:21 46:3 46:5 51:23 52:9 57:14 59:2 71:6 77:4 77:21 85:16 85:16 85:24 86:9 90:9 90:13 105:6 112:22 132:24 133:15 142:13 145:19 145:22 147:7 163:16 176:5 181:16 182:2 183:8 191:17 196:6 200:13 202:6 203:10 206:17 209:13 | |
| **roitman**(1) 6:11 | | **says**(19) 67:5 79:13 82:22 102:22 128:19 132:13 133:18 141:23 141:24 141:25 142:2 142:17 142:19 142:22 156:22 167:8 180:23 181:25 182:2 | | **sell**(9) 126:21 127:11 135:3 135:8 135:14 137:3 137:4 153:4 153:7 | | | |
| **role**(3) 86:14 169:22 170:1 | | | | | | | |
| **roman**(1) 82:20 | | | | **senior**(3) 81:14 81:16 126:6 | | | |
| **romanette**(4) 78:8 78:9 78:18 79:3 | | | | **sense**(12) 52:8 75:4 105:17 105:18 131:2 140:1 141:15 180:18 197:2 197:5 198:22 201:17 | | | |
| **ron**(2) 1:28 21:8 | | | | | | **shouldn't**(2) 132:5 138:6 | |
| **room**(2) 16:4 92:23 | | **scenario**(6) 192:17 192:25 193:1 193:9 193:13 193:19 | | | | **shouldn't**(3) 145:15 188:25 189:19 | |
| **rose**(1) 204:16 | | | | **sent**(1) 147:3 | | **show**(2) 17:21 33:8 | |
| **rosenblatt**(1) 4:18 | | | | **sentence**(11) 78:22 82:22 83:1 85:23 95:7 95:8 173:4 173:8 173:11 178:7 178:14 | | **shows**(1) 125:14 | |
| **rosenman**(1) 12:18 | | **scenarios**(3) 192:21 192:22 193:17 | | | | | |
| **rosenstein**(21) 22:19 22:21 22:25 22:25 23:8 26:4 26:13 33:18 34:20 49:12 59:8 59:9 59:15 83:17 84:7 84:10 87:21 98:22 103:21 105:14 213:6 | | **schaible**(1) 3:6 | | | | **side**(19) 14:18 15:1 15:2 38:18 43:18 43:19 46:19 53:1 97:15 97:16 131:5 132:13 177:11 177:14 187:25 188:2 205:8 205:24 207:24 | |
| | | **schedule**(7) 15:9 15:18 95:11 201:15 201:15 201:17 201:18 | | **senter**(2) 5:12 5:13 | | | |
| | | | | **separate**(9) 28:14 60:17 61:20 106:19 163:7 179:22 184:8 184:10 186:5 | | **side's**(1) 13:18 | |
| **rosner**(1) 11:38 | | **scheme**(1) 207:17 | | | | **sides**(6) 14:14 17:1 17:25 157:13 198:10 205:25 | |
| **roth**(1) 10:23 | | **scholar**(2) 114:6 115:13 | | | | | |
| **rough**(1) 154:4 | | **scholarly**(2) 110:17 115:25 | | **separately**(4) 61:15 184:22 184:25 185:18 | | | |
| **roughly**(5) 126:15 146:6 152:24 154:10 179:17 | | **scholer**(1) 9:13 | | **sequence**(1) 66:10 | | **sidley**(5) 1:23 7:15 21:8 108:6 195:9 | |
| | | **school**(5) 24:8 24:10 109:21 110:2 110:3 | | **series**(2) 195:17 198:17 | | **siegel**(10) 3:32 209:15 209:16 209:22 209:25 210:2 210:7 210:9 210:13 210:17 | |
| **routine**(1) 42:18 | | **schott**(1) 9:10 | | **serve**(5) 32:16 78:5 79:5 83:12 138:17 | | | |
| **routinely**(2) 40:3 43:22 | | **schotz**(1) 1:33 | | **served**(2) 42:17 138:15 | | | |
| **roweiss**(1) 204:20 | | **schulte**(1) 10:23 | | **serves**(1) 39:25 | | **sieger**(1) 12:9 | |
| **royal**(2) 12:9 12:9 | | **schuylkill**(1) 1:43 | | **service**(3) 1:42 1:49 29:20 | | **sign**(1) 198:14 | |
| **rudnick**(1) 3:31 | | **scope**(7) 16:22 42:18 103:25 111:16 131:24 196:15 202:4 | | **services**(2) 1:42 29:22 | | **significant**(3) 45:24 110:17 132:25 | |
| **rule**(14) 25:16 46:2 46:3 73:2 73:5 74:24 75:3 75:4 75:11 75:14 75:23 76:1 76:3 153:23 | | | | **serving**(4) 25:12 34:3 131:3 162:19 | | **significantly**(1) 143:3 | |
| | | **scotland**(2) 12:9 12:9 | | **session**(2) 181:17 211:19 | | **silence**(1) 107:6 | |
| **ruled**(2) 69:25 196:9 | | **scott**(2) 11:6 11:23 | | **set**(17) 35:7 35:12 54:7 60:25 70:4 81:24 83:5 97:23 98:4 107:13 110:9 115:5 117:23 171:14 203:24 205:17 207:21 | | **silent**(2) 104:14 104:15 | |
| **rules**(58) 24:20 24:21 24:22 25:4 27:5 27:19 28:22 29:17 29:18 29:24 30:1 30:8 30:8 30:11 30:13 30:17 30:24 31:4 31:4 31:10 31:15 32:25 33:2 33:10 33:12 34:2 34:4 34:6 35:19 36:11 36:20 38:3 39:13 41:9 42:14 42:22 44:3 45:9 45:12 45:14 45:16 47:2 52:25 53:4 54:3 54:8 75:19 88:14 88:19 89:20 96:1 96:12 96:22 96:25 97:9 103:4 107:7 193:3 | | **screen**(5) 33:6 166:25 172:3 173:1 173:10 | | | | **silverstein**(1) 2:20 | |
| | | **scrutiny**(1) 112:19 | | | | **simes**(1) 8:38 | |
| | | **seat**(1) 79:12 | | **sets**(4) 46:24 82:18 140:9 203:4 | | **similar**(10) 75:3 116:20 135:7 177:21 184:5 187:11 187:14 187:16 187:20 204:17 | |
| | | **seated**(9) 13:2 58:20 73:12 79:4 108:4 108:16 139:8 195:3 210:24 | | **setting**(2) 64:12 99:1 | | | |
| | | | | **settle**(7) 113:19 151:1 151:8 169:10 169:17 170:6 175:17 | | **similarly**(2) 34:6 96:20 | |
| | | **sec**(3) 87:5 112:21 112:22 | | | | **simple**(1) 33:15 | |
| | | **second**(35) 22:4 27:9 27:14 28:20 30:4 35:22 36:2 45:19 50:3 52:20 52:22 78:22 89:6 91:22 99:16 99:19 99:24 100:3 100:6 100:11 101:6 105:15 113:20 124:23 128:13 133:12 134:7 136:3 150:4 151:7 166:23 172:1 190:19 196:10 203:23 | | **settlement**(19) 111:11 122:19 122:20 123:7 133:21 134:1 136:16 139:14 139:22 140:5 140:25 147:15 151:2 174:11 191:19 192:1 192:24 194:1 194:9 | | **simply**(4) 68:1 143:15 162:17 198:20 | |
| **ruling**(8) 85:14 111:21 125:1 127:5 127:6 129:13 147:20 190:15 | | | | | | **sina**(1) 12:37 | |
| | | | | | | **since**(8) 16:25 21:9 21:21 32:22 45:15 61:19 76:1 208:6 | |
| **rulings**(5) 70:3 70:10 87:13 87:14 140:22 | | **secondly**(2) 181:1 209:4 | | **seven**(9) 62:15 63:2 76:6 88:6 115:10 119:18 141:17 179:17 180:25 | | | |
| **run**(4) 114:20 167:22 171:10 174:13 | | **seconds**(2) 87:17 123:24 | | | | **single**(7) 17:19 18:22 48:9 48:10 178:10 195:25 196:1 | |
| **rushabh**(1) 12:40 | | **secret**(1) 131:1 | | **seven-point**(1) 179:13 | | | |
| **russano**(1) 3:10 | | **section**(27) 36:5 36:5 36:25 36:25 43:13 54:12 64:9 77:25 78:17 79:1 82:19 94:12 95:4 97:21 97:24 102:18 102:19 116:20 128:20 155:12 155:15 163:19 163:20 166:25 172:4 172:9 172:24 | | **seventh**(2) 18:10 62:18 | | **singleton**(1) 25:5 | |
| **sachs**(2) 11:5 11:5 | | | | **several**(4) 24:6 24:19 25:12 85:23 | | **sir**(29) 105:13 108:12 110:6 116:8 118:11 119:20 121:2 121:7 121:16 150:25 153:14 154:20 155:18 157:15 157:18 158:15 161:2 163:21 166:8 166:22 167:7 168:12 170:4 171:18 172:12 177:17 178:4 178:19 199:10 | |
| **sadly**(1) 25:9 | | | | **shachar**(1) 8:30 | | | |
| **said**(37) 15:1 18:5 18:9 34:12 42:7 42:9 49:7 51:5 52:12 64:20 69:25 73:9 77:1 86:11 86:13 90:15 90:25 120:12 141:1 141:4 142:23 160:20 162:21 165:1 169:14 179:20 181:22 182:7 182:15 190:22 191:12 192:9 194:5 207:9 209:6 210:2 211:7 | | | | **shall**(13) 42:19 78:24 78:24 79:13 80:9 80:15 82:23 99:14 102:24 103:2 172:6 173:12 210:2 | | | |
| | | **securing**(2) 24:21 25:15 | | | | **sit**(4) 14:4 14:4 70:10 171:7 | |
| | | **securities**(13) 10:9 10:13 10:13 12:27 12:28 55:10 55:10 60:21 61:4 61:5 61:6 61:6 61:7 | | **shamah**(1) 6:33 | | **sites**(1) 27:17 | |
| | | | | **shannon**(1) 7:11 | | **sitting**(7) 62:9 100:8 107:15 131:5 197:9 197:10 211:12 | |
| **sally**(1) 5:14 | | | | **share**(9) 38:11 44:14 66:9 81:19 128:1 135:21 193:23 197:10 207:13 | | | |
| **same**(38) 14:3 14:3 19:1 19:1 29:4 29:20 31:20 36:25 52:10 56:9 58:8 58:12 64:7 71:7 80:8 95:3 121:8 121:16 129:11 138:7 142:6 142:8 142:13 142:14 144:7 144:13 146:14 151:1 162:13 163:15 172:7 172:23 173:14 173:19 174:16 174:20 182:2 205:2 | | **security**(2) 23:19 36:22 | | | | **situated**(1) 96:20 | |
| | | **securities**(44) 18:12 19:5 21:5 30:20 33:5 39:13 43:22 47:6 47:12 47:13 49:12 50:7 51:15 72:15 71:19 72:23 78:1 83:1 83:2 86:3 94:19 99:16 103:5 104:13 113:2 173:17 178:14 178:17 180:8 184:7 185:22 188:16 197:14 201:22 201:22 205:15 211:20 | | **shareholder**(4) 79:13 162:22 163:9 190:3 | | **situation**(7) 65:11 65:21 83:3 142:24 145:4 162:14 168:4 | |
| | | | | **shareholders**(13) 72:20 79:22 79:24 80:1 80:3 80:17 131:4 133:22 188:21 189:11 189:16 189:21 194:12 | | | |
| | | | | | | **situations**(1) 133:17 | |
| | | | | | | **six**(10) 62:15 63:1 63:10 63:16 76:5 76:6 88:6 119:18 123:6 160:23 | |
| **samples**(1) 24:24 | | | | | | | |
| **sanjana**(1) 8:44 | | | | **shares**(22) 87:1 87:6 87:9 126:18 127:8 127:13 129:23 130:14 135:1 135:6 135:8 136:12 136:14 136:14 136:18 137:5 157:23 158:2 158:14 196:21 197:1 197:2 | | **sixteen**(1) 151:4 | |
| **satisfactory**(1) 15:20 | | | | | | **sixty**(4) 127:8 136:19 149:19 150:21 | |
| **satisfied**(1) 51:18 | | | | | | **sixty-five**(9) 127:8 136:19 149:16 149:17 149:19 150:6 150:21 152:12 152:16 | |
| **satisfy**(2) 137:25 163:11 | | **seeing**(1) 42:1 | | **sharing**(6) 106:6 147:5 193:14 194:2 207:10 207:25 | | | |
| **savings**(2) 102:3 103:13 | | **seek**(8) 28:13 126:21 127:22 132:25 166:15 166:20 174:1 211:4 | | | | **size**(1) 152:4 | |
| **saw**(1) 140:6 | | | | **shaya**(1) 8:11 | | **skadden**(1) 7:34 | |
| | | | | **she**(1) 59:6 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**slate**(1) 7:34
**slater**(1) 10:42
**slide**(10) 125:14 125:19 125:22 125:25 126:9 131:12 134:6 135:16 140:9 140:13

**slightly**(1) 201:17
**small**(7) 145:12 145:12 182:23 182:25 187:9 187:13 187:15

**smaller**(1) 155:3
**sold**(3) 130:16 153:18 153:19
**sole**(1) 67:21
**solely**(1) 46:2
**solicitation**(2) 14:25 204:19
**solvency**(15) 109:25 110:6 110:9 110:20 116:10 116:12 116:13 116:25 122:22 123:17 123:20 141:20 182:22 182:24 182:24
**solvent**(10) 122:12 122:18 123:5 143:15 143:16 143:17 145:10 188:4 193:1 193:2

**some**(96) 13:7 14:11 14:12 14:20 15:17 19:8 21:10 24:23 33:12 35:5 40:7 42:22 42:24 44:17 44:19 63:10 67:10 69:22 71:4 76:9 80:19 84:20 88:17 89:22 91:7 94:23 96:9 97:17 97:23 102:2 105:8 105:23 106:14 111:2 112:1 112:14 119:24 125:11 126:3 127:4 128:5 128:8 129:13 129:18 129:25 130:1 130:4 130:16 131:2 135:24 136:7 136:16 137:13 139:12 140:1 142:11 144:24 144:25 145:2 145:13 146:10 150:5 150:23 151:24 152:14 153:23 154:12 162:12 163:15 163:21 165:11 166:19 167:22 175:22 181:11 181:11 181:14 183:10 183:24 184:3 188:13 188:16 192:1 192:20 195:12 196:20 197:16 197:25 198:22 203:9 203:14 204:18 205:3 206:6 209:7 210:13

**somebody**(4) 40:20 92:22 106:1 130:16
**somehow**(2) 46:7 176:21
**someone**(7) 79:7 111:10 126:22 127:11 129:24 132:12 157:1

**something**(30) 13:10 13:14 15:23 18:8 18:14 19:18 59:6 67:1 68:9 85:10 104:2 107:24 112:25 114:25 127:3 134:2 137:9 137:10 161:17 174:7 182:15 194:16 196:6 201:4 206:3 209:6 209:13 210:6 210:10
**sometimes**(5) 70:22 141:23 141:24 141:25 180:23

**somewhat**(6) 13:12 141:24 141:25 142:1 142:1 180:23

**somewhere**(1) 144:16
**song**(1) 12:23
**soon**(1) 98:8
**sooner**(1) 146:14
**sorry**(15) 18:7 22:22 40:21 76:6 77:21 78:11 102:15 116:4 173:7 180:5 186:22 187:15 200:20 202:16 206:7

**sort**(19) 30:2 35:4 37:11 42:5 46:19 57:21 61:19 71:7 77:22 95:18 95:19 96:24 102:5 118:17 127:4 129:13 156:14 203:19 206:14
**sorts**(2) 43:20 94:25
**sottile**(23) 4:25 6:21 15:13 15:13 16:1 200:19 200:22 200:22 201:20 201:24 202:2 202:14 202:17 202:19 202:21 204:17 205:3 205:11 206:11 206:16 207:3 211:10 211:13

**sought**(1) 28:11
**sound**(2) 1:48 212:3
**sounds**(3) 141:5 182:15 210:6
**source**(4) 127:23 129:10 136:3 155:24

**sources**(6) 134:21 134:23 163:8 191:14 192:6 192:16

**south**(1) 1:29
**spaeder**(4) 4:24 6:18 15:14 200:23
**speak**(1) 202:23
**speaking**(1) 209:23
**special**(4) 2:34 7:32 15:14 112:21
**specific**(13) 33:21 70:8 76:9 90:2 91:8 97:18 119:7 121:10 142:15 153:24 183:7 196:12 203:14

**specifically**(10) 39:6 62:10 81:5 81:13 82:3 101:21 102:8 112:14 116:19 205:13

**specifics**(2) 69:22 104:3
**speculate**(1) 170:23
**speculation**(2) 48:21 98:12
**spell**(2) 22:24 108:20
**spend**(3) 14:15 24:18 207:19
**spent**(1) 17:16
**sperling**(1) 10:42
**split**(1) 117:4
**splitting**(1) 117:5
**spoke**(3) 15:8 74:19 208:6
**spoken**(2) 15:2 103:20
**staff**(3) 40:9 56:17 69:6
**stake**(16) 127:16 151:13 151:17 151:18 151:19 151:20 151:21 152:12 153:6 153:13 153:22 153:23 154:6 197:5 197:8

**stakes**(1) 153:17
**stand**(7) 58:18 108:11 182:4 182:11 182:17 185:24 211:19

**standing**(7) 145:7 190:9 190:18 190:20 190:23 190:25 191:4

**stands**(1) 210:22
**stargatt**(1) 2:4
**start**(10) 13:22 35:12 37:21 37:22 85:22 105:17 115:9 120:10 121:12 163:9

**started**(1) 32:4
**starting**(3) 32:5 81:7 146:9
**starts**(5) 133:21 64:3 64:14 66:20 104:12
**state**(4) 16:12 22:23 108:19 169:16
**stated**(6) 27:10 41:24 62:5 77:13 81:18 189:19

**statement**(24) 32:17 41:10 42:5 42:8 48:24 62:24 75:6 76:19 77:1 77:6 82:12 82:15 90:3 93:18 93:25 94:17 95:11 95:12 99:1 163:1 163:10 169:13 186:1 209:7

**statements**(1) 60:7
**states**(6) 1:1 1:19 2:41 25:12 49:23 114:17
**stating**(3) 76:14 87:6 93:19
**station**(1) 28:17
**stations**(3) 25:6 29:20 55:3
**statistics**(5) 114:2 114:4 114:7 114:9
**status**(4) 46:7 85:1 85:3 87:11
**statute**(3) 16:14 29:6 30:3
**statutory**(2) 144:19 144:23
**stay**(1) 189:18
**ste**(5) 1:36 2:15 2:43 4:34 5:15
**stearn**(1) 3:18
**stenger**(1) 4:15
**step**(48) 63:8 105:13 122:18 122:18 142:17 143:16 143:16 143:18 143:18 184:10 184:10 184:17 184:18 184:21 185:1 185:15 185:16 185:19 185:21 186:5 186:7 186:10 186:13 186:16 186:16 186:17 186:17 186:18 186:19 186:20 186:24 187:1 187:4 187:14 193:1 193:2 193:2 193:3 193:7 193:9 193:9 193:10 193:15 193:16 193:21 193:21 194:21 199:10

**step-one**(1) 192:14
**step-two**(1) 192:14
**stephen**(2) 2:21 11:42
**stepped**(1) 93:1
**steps**(2) 66:7 66:10
**steven**(2) 10:43 108:21
**stick**(1) 91:6
**still**(13) 49:19 72:10 81:24 82:5 82:8 135:10 137:7 138:9 150:1 150:6 150:20 152:25 155:2
**stock**(43) 33:24 50:24 51:4 78:25 79:9 79:10 79:14 80:16 84:15 84:23 128:1 134:13 134:22 134:24 134:24 134:25 135:1 137:6 138:5 155:2 155:4 155:5 155:13 155:21 156:7 156:15 156:17 157:10 157:1 158:9 158:16 158:20 158:22 159:2 159:7 160:19 165:10 165:13 177:13 197:8 197:1 197:14 198:19

**stock's**(1) 159:21
**stockholder**(7) 77:17 77:23 77:24 78:23 79:1 80:15 156:5

**stockholder's**(1) 157:21
**stockholders**(5) 78:24 79:13 80:10 80:10 158:8

**stop**(2) 133:11 166:4
**story**(1) 53:8
**strange**(2) 140:1 143:12
**strategic**(1) 133:24
**strategically**(2) 168:12 173:23
**strategy**(2) 112:23 196:3
**strauss**(9) 5:4 8:10 16:19 106:4 118:7 179:10 199:17 204:14 211:2

**stream**(1) 206:14
**streamline**(1) 22:1
**streamlining**(1) 106:9
**street**(14) 1:11 1:43 2:8 2:23 2:37 2:43 3:20 3:27 3:33 3:40 4:8 4:27 4:41 5:15

**strict**(1) 188:15
**strictly**(1) 144:2
**strike**(8) 38:20 49:3 49:8 98:11 182:3 183:6 186:9 191:23

**strip**(1) 136:14
**structural**(2) 30:11 30:13
**structure**(9) 23:25 27:4 48:4 48:5 55:9 92:17 130:22 160:16 161:23

**structured**(7) 36:23 38:5 50:14 50:16 56:20 92:1 92:25

**structures**(1) 36:18
**structuring**(4) 24:19 71:25 101:18
**study**(3) 110:7 114:11 116:14
**sub-clause**(1) 157:2
**sub-statutory**(1) 190:18
**sub-trade**(1) 145:11
**subject**(24) 20:1 30:13 33:23 51:12 51:13 51:16 51:18 52:14 57:21 57:22 58:2 71:1 79:1 86:9 86:15 86:22 102:5 112:19 119:21 135:23 201:5 201:10 201:11 201:1

**submission**(3) 15:24 16:2 42:18
**submissions**(1) 15:3
**submit**(4) 27:22 203:18 205:23 206:3
**submitted**(8) 47:21 47:25 48:5 49:22 50:1 56:11 99:1 99:4

**subs**(8) 143:16 145:13 187:14 187:17 187:25 188:4 188:5 193:2

**subsection**(3) 99:13 99:14 155:16
**subsequent**(2) 54:18 94:23
**subsequently**(1) 178:12
**subset**(3) 181:25 182:25

**subsidiaries**(6) 28:18 28:19 145:7 145:10 187:11 187:21

**subsidiary**(5) 144:25 145:6 145:21 190:10 190:15

**substance**(1) 41:5
**substantial**(9) 43:9 45:2 57:21 58:2 88:25 100:6 135:4 143:1 147:2

**substantially**(3) 134:17 134:25 153:2
**substantive**(10) 30:11 31:4 31:10 31:15 32:25 35:18 36:10 159:1 180:20 197:13

**subsumed**(3) 44:17 189:10 190:13
**subsumes**(1) 71:18
**subtracting**(2) 187:25 188:1
**succeed**(2) 136:24 150:19
**succeeded**(1) 190:25
**succeeding**(1) 189:4
**success**(1) 136:17
**successful**(1) 183:12
**such**(32) 27:18 29:22 32:16 34:3 37:15 42:16 43:8 61:5 64:18 66:6 70:23 73:14 78:24 79:1 80:16 85:25 94:23 97:13 101:23 102:24 103:2 103:2 103:3 117:16 117:21 120:3 164:16 167:18 172:11 174:15 178:10 197:6

**sudden**(1) 84:5
**sue**(1) 170:14
**sued**(4) 132:6 132:14 132:17 168:5
**suffice**(1) 55:24
**sufficient**(4) 73:15 80:2 90:16 148:4
**suggest**(6) 49:1 106:7 201:14 203:8 203:17 204:2

**suggested**(1) 204:22
**suggesting**(6) 17:18 18:20 111:16 111:18 172:12 205:5

**suggestions**(2) 203:14 204:8
**suggests**(5) 30:15 31:21 66:10 80:11 135:2
**suitable**(1) 131:22
**suite**(4) 3:40 4:8 4:28 5:36
**sullivan**(2) 3:37 3:39
**sum**(2) 51:20 51:21
**summarize**(6) 26:25 28:11 33:11 37:2 109:24 110:12

**summarized**(1) 112:11
**summarizing**(2) 26:18 33:2
**summary**(1) 38:10
**summer**(1) 114:19
**sunday**(3) 157:16 157:17 169:1
**supplement**(14) 48:11 48:11 76:13 76:19 77:2 77:6 77:13 93:18 93:19 93:25 94:1 94:24 94:24 95:10

**support**(7) 44:25 45:2 82:14 82:18 142:10 174:6 178:1

**suppose**(3) 160:20 160:22 197:24
**supposed**(1) 133:14
**sure**(34) 13:23 14:12 15:12 15:15 27:1 45:7 48:20 61:6 61:18 62:24 66:9 68:9 70:6 71:7 72:23 80:7 83:17 90:20 102:10 103:11 103:21 114:1 114:24 115:4 127:6 127:12 127:15 134:10 140:19 141:17 142:16 146:6 167:25 205:7

**surprised**(1) 105:21
**surrebuttal**(2) 199:20 211:4
**sustain**(1) 123:22
**sustained**(4) 57:15 84:8 88:2 148:13
**suttonbrook**(2) 5:42 5:42
**svp**(1) 79:9
**swap**(1) 145:12
**switch**(2) 147:9 168:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **sworn**(3) 22:21 108:11 108:15 | | **testify**(6) 48:24 57:4 59:17 59:20 106:10 140:25 | | **that**(301) 62:10 62:11 62:20 62:21 62:24 62:25 63:3 63:4 63:9 63:12 63:14 63:19 64:5 64:14 64:14 64:16 64:20 64:21 64:22 64:25 65:2 65:3 65:5 65:11 65:14 65:17 65:18 65:19 65:20 65:22 65:23 65:24 66:5 66:7 66:8 66:9 66:10 66:10 66:13 66:14 66:15 66:16 66:18 66:21 66:22 66:25 67:5 67:5 67:6 67:6 67:12 67:16 67:19 67:25 68:6 68:21 69:1 69:2 69:8 69:9 69:9 69:12 69:18 70:1 70:1 70:3 70:6 70:11 70:11 70:18 70:20 70:21 70:22 71:2 71:5 71:12 71:15 71:16 71:18 71:19 72:7 72:9 72:12 72:16 72:20 72:20 72:21 72:22 72:23 72:24 73:1 73:2 73:9 73:9 73:13 73:16 73:24 74:1 74:2 74:10 74:13 74:16 74:16 74:17 75:3 75:3 75:4 75:14 75:18 75:20 75:23 76:1 76:3 76:4 76:5 76:8 76:11 76:13 76:13 76:14 76:18 76:19 76:22 76:25 77:1 77:2 77:5 77:13 77:19 77:24 77:25 77:25 78:1 78:6 78:22 78:23 79:7 79:13 79:15 79:15 79:18 79:25 80:4 80:7 80:8 80:11 80:14 80:21 80:25 80:25 81:3 81:3 81:4 81:9 81:10 81:20 81:22 81:24 82:2 82:6 82:8 82:11 82:12 82:18 83:1 83:2 83:4 83:4 83:7 83:10 83:11 83:19 84:11 84:13 84:14 84:15 84:22 84:23 84:23 84:24 84:25 85:1 85:5 85:7 85:10 85:10 85:18 85:23 86:3 86:5 86:8 86:13 86:16 86:19 86:20 86:23 86:25 87:3 87:5 87:6 87:8 87:10 87:13 87:23 88:5 88:9 88:17 88:18 88:23 89:2 89:6 89:8 89:11 89:19 89:16 89:17 89:18 89:20 89:22 89:23 90:9 90:12 90:12 90:18 90:19 90:21 90:25 91:9 91:10 91:11 91:11 91:14 91:16 91:17 92:13 92:21 93:1 93:7 93:8 93:9 93:9 93:11 93:12 93:15 93:19 93:20 93:25 94:1 94:6 94:8 94:12 94:12 94:14 94:17 94:19 94:25 95:2 95:4 95:9 95:12 95:14 95:18 95:24 96:2 96:4 96:6 96:11 96:14 96:16 96:20 96:21 96:23 97:3 97:6 97:7 97:8 97:11 97:12 97:19 97:20 97:24 97:25 98:1 98:2 98:7 98:23 98:25 99:14 99:16 99:23 100:3 100:9 100:14 100:14 100:17 100:20 101:2 | | **that**(301) 101:4 101:5 101:9 101:15 101:19 101:24 102:9 102:10 102:19 102:22 103:2 103:5 103:7 103:9 103:9 103:9 103:11 103:11 103:18 103:22 103:22 104:5 104:12 104:13 104:17 104:21 104:25 105:1 105:4 105:16 105:17 105:18 105:21 106:1 106:2 106:13 106:18 106:23 106:24 107:4 107:5 107:13 107:14 107:17 107:19 109:10 109:13 109:14 109:17 109:21 111:1 111:3 111:10 111:11 111:13 111:16 111:21 111:21 112:12 112:15 112:16 112:17 112:25 113:1 113:1 113:4 113:6 113:13 113:15 113:16 113:20 113:24 114:11 114:17 114:19 114:25 114:25 115:2 115:6 115:7 115:10 115:17 115:18 115:19 115:19 115:21 115:22 116:8 116:12 116:18 116:23 118:2 118:3 118:21 118:22 118:23 118:25 119:20 119:24 119:25 120:5 120:8 120:9 120:15 120:15 120:17 120:18 120:18 120:22 120:23 120:24 121:2 121:3 121:3 121:4 121:8 121:13 121:13 121:15 121:15 121:16 121:16 122:7 122:8 122:9 122:15 122:17 122:20 122:20 122:23 122:25 123:3 123:5 124:23 125:9 125:11 125:12 125:14 125:22 125:22 126:2 126:3 126:19 126:20 126:24 127:3 127:7 127:10 127:11 127:13 127:16 127:22 127:24 128:6 128:7 128:9 128:10 128:13 128:21 129:1 129:3 129:5 129:10 129:12 129:17 129:21 129:21 130:4 130:11 130:13 130:19 130:24 131:7 131:13 132:7 132:19 132:21 133:1 133:21 134:4 134:7 134:9 134:15 134:16 134:23 134:24 134:25 135:2 135:2 135:4 135:6 135:17 135:18 135:21 135:21 136:2 136:3 136:3 136:6 136:12 136:22 136:23 137:4 137:17 137:24 138:8 138:14 139:3 139:14 139:16 139:20 139:25 140:6 140:9 140:10 140:13 141:1 141:2 141:6 141:10 141:15 141:21 142:7 142:9 142:25 143:2 143:3 143:7 143:9 143:11 143:13 143:14 143:18 144:2 144:5 144:6 144:8 144:13 144:16 144:20 144:22 145:8 145:15 145:17 145:19 145:19 145:20 145:22 146:1 146:2 146:7 146:13 146:20 146:25 146:25 147:1 147:6 147:13 147:21 147:22 147:23 147:23 147:25 147:25 148:3 148:14 149:15 149:15 149:16 149:21 149:25 149:25 150:3 150:6 150:7 150:8 150:10 150:10 150:11 150:12 150:14 150:16 150:21 150:19 150:22 150:23 150:25 151:2 151:2 151:6 151:8 151:9 151:10 151:12 151:13 151:15 151:15 151:15 151:17 151:18 151:25 152:7 |
| **tab**(28) 25:20 26:21 33:1 35:23 37:21 52:22 52:22 55:14 55:15 55:21 71:6 77:21 81:7 85:10 93:22 99:10 102:15 102:16 124:23 155:9 163:16 166:22 166:23 171:2 177:24 180:4 180:5 185:8 | | **testifying**(8) 20:9 63:21 64:6 70:11 89:13 120:5 168:20 191:3 | | | | | |
| | | | | | | | |
| **tabak**(2) 12:26 12:27 | | **testimony**(58) 41:9 46:24 48:8 59:22 60:7 69:23 69:25 71:4 71:8 72:7 72:9 73:24 74:2 76:9 80:19 81:6 81:22 81:24 84:4 93:17 98:1 101:9 101:13 107:10 109:7 112:1 119:21 121:14 125:10 139:3 139:18 139:21 140:22 141:2 147:11 147:21 157:17 157:17 159:3 161:2 162:8 166:8 180:17 181:13 181:16 181:16 182:4 182:7 182:11 183:5 185:8 185:22 185:24 190:5 190:12 191:11 196:22 199:20 | | | | | |
| **table**(1) 45:10 | | | | | | | |
| **tackle**(1) 106:18 | | | | | | | |
| **take**(59) 18:18 20:23 25:2 25:19 27:23 28:8 30:16 33:4 35:22 36:1 36:4 36:5 36:24 39:6 39:19 42:1 42:3 44:5 47:7 50:3 52:18 55:14 67:7 67:12 67:12 69:2 77:20 79:11 82:10 86:15 87:17 93:22 101:18 104:11 106:23 107:8 107:12 130:2 130:25 132:16 136:12 136:18 138:12 138:25 139:17 146:25 150:11 151:25 162:23 162:23 163:1 166:13 175:14 182:17 192:21 195:13 207:10 210:21 211:7 | | **tests**(2) 182:18 186:6 | | | | | |
| | | **textbook**(2) 115:21 115:22 | | | | | |
| | | **than**(31) 14:3 19:23 22:6 50:23 61:5 61:6 61:25 64:5 65:6 95:16 115:20 120:22 130:5 133:5 135:1 146:8 150:2 153:6 155:2 155:3 157:13 161:17 162:5 162:5 162:20 164:18 169:23 170:8 203:12 204:5 208:18 | | | | | |
| **taken**(13) 17:19 30:23 32:23 34:19 40:17 48:23 55:4 55:6 56:16 66:8 67:17 67:25 95:24 | | | | | | | |
| **takes**(3) 51:20 101:24 162:20 | | **thank**(50) 17:9 17:23 18:15 20:3 20:4 22:14 23:2 23:5 26:11 33:19 59:9 59:11 59:12 60:18 91:3 98:16 100:25 105:11 105:12 105:12 105:14 108:23 108:24 112:1 118:6 123:10 124:1 139:5 139:10 141:9 148:17 148:25 149:4 179:5 179:19 195:1 195:4 199:10 199:16 200:12 201:20 204:1 206:16 207:3 208:3 209:3 210:17 211:2 211:6 211:18 | | | | | |
| **taking**(3) 38:1 52:3 133:15 | | | | | | | |
| **talk**(9) 17:21 46:22 75:21 126:15 152:10 155:7 158:22 168:9 199:23 | | | | | | | |
| **talked**(5) 43:14 46:20 56:20 141:6 200:25 | | | | | | | |
| **talking**(9) 17:17 33:10 35:25 45:20 75:22 102:18 105:23 125:23 162:14 | | | | | | | |
| **taxing**(1) 18:3 | | | | | | | |
| **taylor**(1) 2:5 | | | | | | | |
| **teach**(8) 109:20 110:1 110:7 110:9 113:13 113:16 115:1 116:16 | | **that**(301) 13:8 13:11 13:12 13:16 13:17 13:21 13:25 14:5 14:6 14:11 15:2 15:2 15:3 15:12 15:15 15:18 15:19 15:20 16:6 16:7 16:8 16:14 16:15 16:16 16:16 16:24 17:21 18:2 18:4 18:4 18:11 18:11 18:19 18:21 18:22 19:4 19:7 19:18 19:18 20:7 20:10 20:11 20:13 20:17 21:22 22:22 22:5 22:8 23:23 24:4 25:7 25:13 25:21 25:22 25:25 26:21 27:1 27:2 27:4 27:6 27:10 27:11 27:13 27:14 27:17 27:17 27:18 27:22 27:23 28:5 28:13 28:17 29:1 29:3 29:5 29:10 29:22 30:5 30:13 30:14 30:16 30:21 30:21 30:22 31:3 31:4 31:8 31:24 32:6 32:12 32:13 32:14 32:17 33:4 33:5 33:10 33:12 33:18 33:23 34:1 34:2 34:7 34:18 34:22 34:23 35:1 35:5 35:8 35:10 35:12 35:13 35:16 35:17 36:9 36:11 36:14 36:19 36:21 36:22 36:23 37:4 37:5 37:8 37:8 37:10 37:12 37:12 37:16 38:6 38:8 38:11 38:14 38:17 38:20 39:2 39:13 39:15 39:18 39:20 39:22 40:2 40:5 40:7 40:7 40:10 40:12 40:13 40:14 40:16 40:16 40:20 40:21 40:23 41:1 41:13 41:16 42:5 42:8 42:12 42:15 42:16 42:20 42:23 43:14 43:14 44:13 44:15 44:16 44:18 44:19 44:25 45:1 45:2 45:8 45:10 45:19 45:20 45:20 45:24 46:6 46:8 46:9 46:12 46:23 46:25 46:25 47:10 47:12 47:13 47:14 47:16 47:19 47:23 48:5 48:10 48:14 48:16 48:22 48:25 49:15 49:20 49:23 49:23 50:1 50:1 50:3 50:6 50:7 50:9 50:22 50:24 51:4 51:5 51:10 51:18 51:21 51:23 52:1 52:3 52:4 52:5 52:7 52:7 52:7 52:8 52:8 52:9 52:10 52:19 52:20 52:22 52:3 52:4 52:8 53:15 53:15 53:20 53:20 53:25 54:2 54:3 54:4 54:5 54:7 54:7 54:14 54:15 54:16 54:16 54:20 54:22 54:23 54:24 54:24 55:1 55:5 55:6 55:7 55:7 55:10 55:11 55:15 55:15 56:2 56:6 56:7 56:12 56:15 56:18 56:19 56:21 57:4 57:13 57:22 57:25 58:1 58:7 58:10 59:25 60:1 60:11 60:22 61:2 61:3 61:5 61:7 61:9 61:10 61:11 61:14 61:17 61:22 61:23 62:3 62:5 62:9 62:9 | | | |
| **teacher**(1) 115:13 | | | | | | | |
| **teaching**(4) 112:15 113:15 115:3 120:7 | | | | | | | |
| **technical**(3) 51:3 132:14 132:17 | | | | | | | |
| **techniques**(1) 196:12 | | | | | | | |
| **technology**(1) 23:17 | | | | | | | |
| **telecommunication**(1) 45:13 | | | | | | | |
| **telemundo**(2) 73:7 73:19 | | | | | | | |
| **telephone**(1) 25:12 | | | | | | | |
| **telephonic**(8) 5:40 6:2 7:1 8:2 9:2 10:1 11:2 12:1 | | | | | | | |
| **television**(7) 25:6 25:14 25:17 28:16 29:22 29:23 55:3 | | | | | | | |
| **tell**(14) 24:1 33:7 42:6 64:10 93:5 132:16 160:13 181:8 181:12 182:18 184:13 185:1 189:25 200:5 | | | | | | | |
| **telling**(1) 194:20 | | | | | | | |
| **tells**(3) 53:8 181:14 181:19 | | | | | | | |
| **tempted**(1) 203:11 | | | | | | | |
| **tempting**(1) 106:15 | | | | | | | |
| **ten**(3) 13:20 106:7 126:15 | | | | | | | |
| **tender**(4) 26:3 107:4 110:19 209:12 | | | | | | | |
| **tendered**(1) 209:10 | | | | | | | |
| **tentative**(1) 15:9 | | | | | | | |
| **tentatively**(3) 16:5 16:6 20:1 | | | | | | | |
| **term**(1) 31:21 | | | | | | | |
| **terms**(17) 17:25 38:1 62:3 63:8 63:10 66:16 68:10 82:18 114:16 133:21 151:1 152:15 155:4 169:11 205:12 209:9 209:12 | | | | | | | |
| **terrible**(1) 177:5 | | | | | | | |
| **test**(2) 182:22 187:18 | | | | | | | |
| **testified**(38) 27:9 38:23 53:25 67:10 70:16 70:18 80:24 81:9 83:16 83:17 83:19 84:10 91:7 94:3 97:12 97:24 101:4 101:8 109:15 114:25 117:10 119:16 121:2 121:13 123:3 139:16 149:20 154:13 157:18 159:6 159:11 162:3 168:12 178:21 179:7 179:9 179:12 181:15 190:17 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) 152:11 152:13 152:15 152:19 | | **that**(147) 190:14 190:22 190:23 190:23 | | **the**(301) 1:1 1:2 1:18 2:7 2:30 2:34 13:2 | | **the**(301) 34:7 34:8 34:9 34:9 34:10 34:11 | |

that(301) 152:11 152:13 152:15 152:19 152:19 152:20 152:20 152:22 153:5 153:11 153:23 154:3 154:7 154:8 154:8 154:8 154:11 154:14 154:20 154:20 154:24 155: 155:4 155:8 155:9 155:15 155:18 155:20 155:20 155:25 156:3 156:4 156:8 156:13 156:13 156:14 156:16 156:20 156:22 157: 157:8 157:8 157:9 157:15 157:18 157:20 157:21 157:21 157:24 158:6 158:11 158:1 158:17 158:20 158:22 159:4 159:6 159:7 159:8 159:10 159:10 159:11 159:12 159:1 159:19 159:21 159:22 160:4 160:17 161:4 161:6 161:8 161:11 161:11 161:15 161:16 161:18 161:22 161:25 162:3 162:4 162:8 162:10 162:14 162:18 162:23 163:1 163:1 163:14 163:15 163:16 163:17 163:20 163:21 163:25 164:1 164:3 164:4 164:6 164:8 164:9 164:12 164:12 164:13 164:14 164:19 164:20 164:23 164:23 164:25 165: 165:13 165:15 165:24 165:24 165:25 166:2 166:3 166:3 166:13 166:15 166:18 166:23 167:4 167:7 167:8 167:12 167:15 167:17 167:21 167:22 167:23 167:24 167:25 168:1 168:1 168:6 168:7 168:7 168:10 168:13 168:14 168:20 168:20 168:21 168:24 168:25 169:2 169:6 169:8 169:9 169:9 169:12 169:16 169:16 169:19 169:21 169:21 170:2 170:4 170:11 170:20 170:20 171:1 171:10 171:13 171:17 171:1 171:21 172:4 172:8 172:12 172:14 172:16 172:18 172:21 172:22 172:25 173:17 173:19 173:20 173:23 174:7 174:9 174:10 174:12 174:13 174:13 174:14 174:16 174:20 174:23 174:23 174:24 174:25 175:1 175:14 175:14 175:22 176:1 176:1 176:3 176:5 176:8 176:9 176:18 176:19 176:20 176:22 176:24 177:1 177:3 177:4 177:5 177:6 177:7 177:8 177:10 177:16 177:18 177:22 178:10 178:14 178:17 178:21 178:22 178:22 179:12 179:14 179:17 179:19 179:20 180:10 180:12 180:16 180:21 181:7 181:8 181:12 181:13 181:13 181:14 182:4 182:4 182:12 182:15 182:17 182:19 182:21 183:6 183:13 183:7 183:8 183:14 183:18 183:24 184:16 184:16 184:18 185:14 185:16 185:18 185:1 185:19 185:22 185:24 186:4 186:9 186:9 186:10 186:12 186:16 186:19 186:21 186:23 187:2 187:7 187:10 187:10 187:19 188:2 188:10 188:10 188:13 188:13 188:20 188:24 189:3 189:9 189:14 189:15 189:18 189:19 189:21 189:23 190:1 190:5 190:6 190:13 190:13

that(147) 190:14 190:22 190:23 190:23 190:23 190:24 191:3 191:7 191:12 191:17 191:23 192:5 192:10 192:12 192:15 192:1 192:18 192:25 193:3 193:9 193:13 193:1 193:18 193:20 193:22 193:23 194:8 194:9 194:9 194:11 194:14 194:14 194:19 194:2 195:15 195:18 195:19 195:22 196:1 196: 196:2 196:6 196:8 196:9 196:13 196:19 196:22 197:2 197:8 197:18 197:21 197:21 197:23 198:9 198:21 198:25 199:1 199:2 199:11 199:14 199:19 200:1 200:3 200:9 201:7 201:12 201:15 201:16 201:18 202:5 202:6 202:9 202:10 202:11 202:14 202:19 202:21 202:22 202:24 202:24 202:25 203: 203:4 203:8 203:10 203:11 203:14 203:1 203:18 203:19 203:20 203:21 204:2 204:4 204:4 204:5 204:7 204:8 204:10 204:17 204:19 204:22 205:3 205:5 205:6 205:7 205:8 205:9 205:11 205:12 205:13 205:18 205:23 206:2 206:9 206:19 206:23 207:9 207:10 207:11 207:18 207:19 207:24 207:25 208:9 208:10 208:10 208:12 208:1 208:19 208:19 209:5 209:5 209:10 209:1 209:13 209:13 209:24 210:2 210:15 210:1 211:3 211:4 211:7 211:7 211:18 212:2

that's(82) 13:18 16:7 22:10 37:17 50:4 51:22 52:11 52:23 57:6 57:19 59:19 62:2 66:20 67:2 67:8 68:3 68:9 73:16 75:14 79:18 79:20 79:21 80:13 82:15 86:11 88:15 90:24 91:13 93:5 95:6 96:15 97:21 98:1 100:19 103:13 104:18 104:22 104:23 107:1 117:21 117:25 118:2 120:18 120:21 122:5 123:6 123:10 130:18 131:1 131:6 131:16 131:11 131:18 133:24 135:23 138:13 139:14 141:4 145:23 146:8 147:4 149:14 155:24 157:12 158:3 158:4 160:14 161:13 163:3 164:14 165:25 167:1 169:3 169:13 170:7 170:13 170:18 170:19 172:2 174:6

that's(19) 176:23 177:23 180:15 180:20 182:21 182:25 183:1 183:14 185:20 191:16 192:12 193:11 193:25 194:14 195:25 203:6 208:20 210:10 211:10

thau(1) 12:29

the(301) 1:1 1:2 1:18 2:7 2:30 2:34 13:2 13:3 13:5 13:7 13:8 13:9 13:9 13:11 13:16 13:17 13:17 13:18 13:21 14:3 14:3 14:7 14:8 14:9 14:9 14:15 14:16 14:17 14:19 14:19 14:22 15:2 15:3 15:14 15:16 15:16 15:17 15:18 15:20 15:22 15:24 15:24 16:1 16:2 16:3 16:6 16:7 16:10 16:11 16:12 16:15 16:16 16:20 16:21 16:22 16:22 16:23 16:23 16:24 16:25 17: 17:5 17:6 17:6 17:7 17:11 17:13 17:14 17:15 17:15 17:15 17:16 17:17 17:19 17:23 18:1 18:1 18:7 18:9 18:10 18:10 18:13 18:16 18:23 19:1 19:1 19:2 19:6 19:7 19:9 19:10 19:11 19:12 19:13 19:15 19:20 19:21 19:23 19:24 19:25 20:4 20:7 20:8 20:10 20:11 20:23 21:1 21:3 21:3 21:3 21:5 21:9 21:11 21:19 21:21 21:22 22:4 22:6 22:7 22:8 22:11 22:13 22:20 22:23 22:23 23:1 23:2 23:3 23:4 23:11 23:15 23:16 23:16 23:17 23:18 23:24 23:25 24:1 24:3 24:6 24:10 24:11 24:14 24:14 24:15 24:16 24:17 24:23 24:24 25:16 25:5 25:4 25:5 25:8 25:10 25:13 25:16 25:18 26:8 26:10 26:15 26:16 26:21 26:24 26:25 27:2 27:2 27:3 27:4 27:4 27:5 27:7 27:8 27:10 27:11 27:12 27:14 27:15 27:15 27:16 27:17 27:18 27:18 27:19 27:20 27:21 27:21 27:23 27:25 28:1 28:6 28:8 28:9 28:9 28:11 28:13 28:15 28:15 28:16 28:16 28:20 28:21 28:23 28:25 29:1 29:3 29:3 29:4 29:5 29:5 29:6 29:6 29:7 29:9 29:9 29:10 29:11 29:14 29:17 29:18 29:1 29:20 29:24 30:1 30:3 30:3 30:4 30:7 30:8 30:10 30:10 30:10 30:11 30:12 30:1 30:15 30:16 30:18 30:19 30:24 31:4 31:4 31:5 31:7 31:10 31:12 31:12 31:14 31:14 31:15 31:16 31:17 31:17 31:18 31:19 31:20 31:21 31:21 31:25 32:2 32:2 32:4 32:5 32:6 32:6 32:7 32:9 32:9 32:11 32:12 32:12 32:13 32:16 32:17 32:19 32:19 32:22 32:22 32:22 32:23 32:25 33:3 33:6 33:7 33:11 33:11 33:12 33:13 33:13 33:15 33:19 33:23 33:24 34:1 34:2 34:4 34:4 34:5 34:6 34:7

the(301) 34:7 34:8 34:9 34:9 34:10 34:11 34:11 34:14 34:17 34:17 34:20 34:22 34:23 34:23 34:24 34:25 35:1 35:5 35:5 35:5 35:6 35:7 35:7 35:8 35:9 35:12 35:12 35:13 35:13 35:14 35:15 35:15 35:16 35:18 35:22 35:22 35:24 35:25 36: 36:2 36:10 36:13 36:14 36:14 36:15 36:16 36:16 36:18 36:19 36:20 36:24 37:3 37:5 37:7 37:8 37:9 37:12 37:13 37:14 37:15 37:16 37:16 37:18 37:19 37:20 37:22 37:24 37:24 37:25 38:1 38:1 38:3 38:4 38:5 38:11 38:16 38:17 38:17 38:18 38:18 38:19 38:20 38:22 38:22 38:23 38:24 38:25 38:25 39:8 39:8 39:9 39:11 39:12 39:18 39:19 39:21 39:22 39:23 39:25 39:25 40:1 40:1 40:4 40:6 40:7 40:9 40:16 40:17 40:18 40:21 40:21 40:22 40:24 40:25 41:1 41:4 41:4 41:5 41:6 41:9 41:10 41:11 41:17 41:17 41:23 41:23 41:24 42:4 42:5 42:5 42:6 42:7 42:7 42:7 42:7 42:9 42:12 42:13 42:17 42:18 42:18 42:21 42:23 42:23 42:25 43:2 43:6 43:6 43:7 43:9 43:13 43:14 43:18 43:18 43:19 43:23 44:1 44:1 44:3 44:5 44:7 44:7 44:7 44:9 44:10 44:19 44:19 44:20 44:21 45:2 45:3 45:3 45:5 45:8 45:9 45:10 45:12 45:13 45:15 45:16 45:17 45:18 45:20 45:21 45:23 45:24 45:25 46:1 46:2 46:3 46:3 46:6 46:7 46:8 46:10 46:14 46:14 46:15 46:16 46:16 46:17 46:18 46:19 46:20 46:21 46:21 46:22 46:22 47:1 47:6 47:8 47:9 47:19 47:20 47:20 47:21 47:21 47:22 47:22 47:25 48:1 48:1 48:2 48:2 48:2 48:4 48:4 48:6 48:10 48:11 48:12 48:12 48:13 48:19 48:20 48:23 48:24 48:24 48:25 49:1 49:4 49:6 49:11 49:13 49:15 49:21 49:21 49:22 49:24 49:24 49:25 49:25 50:1 50:1 50:1 50:2 50:3 50:13 50:23 51:4 51:6 51:8 51:11 51:12 51:12 51:14 51:15 51:16 51:16 51:18 51:18 51:20 51:20 51:20 51:22 51:23 51:24 51:24 51:25 52:1 52:1 52:3 52:4 52:4 52:5 52:6 52:6 52:9 52:9 52:10 52:10 52:10 52:11 52:12 52:14 52:16 52:16 52:18 52:22 52:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 53:1 53:1 53:3 53:4 53:8 53:8 53:9 53:9 53:13 53:14 53:17 53:21 53:21 53:21 53:24 54:1 54:3 54:3 54:8 54:9 54:12 54:13 54:13 54:13 54:14 54:14 54:14 54:16 54:18 54:20 55:2 55:8 55:9 55:10 55:12 55:15 55:15 55:18 55:19 55:20 55:20 55:21 55:21 55:23 55:25 56:3 56:3 56:7 56:7 56:8 56:9 56:10 56:11 56:11 56:12 56:14 56:17 56:19 56:19 56:21 56:22 57:2 57:6 57:10 57:13 57:15 57:18 57:20 57:21 57:22 58:1 58:1 58:2 58:3 58:4 58:5 58:5 58:6 58:7 58:7 58:8 58:8 58:9 58:9 58:11 58:12 58:15 58:18 58:20 58:22 58:24 58:24 59:1 59:5 59:11 59:17 59:21 59:22 59:23 60:4 60:5 60:6 60:8 60:8 60:11 60:17 60:20 60:23 60:25 61:3 61:10 61:11 61:14 61:17 61:19 61:22 61:23 61:25 62:3 62:3 62:4 62:5 62:11 62:13 62:13 62:14 62:15 62:18 62:18 62:19 62:22 62:22 63:1 63:1 63:1 63:2 63:3 63:6 63:6 63:10 63:15 63:16 63:18 63:19 63:20 63:21 63:24 64:1 64:1 64:2 64:3 64:4 64:5 64:7 64:9 64:12 64:13 64:14 64:15 64:16 64:16 64:17 64:19 64:19 64:21 65:2 65:3 65:3 65:3 65:4 65:4 65:6 65:7 65:12 65:15 65:19 65:21 65:21 65:23 65:23 65:24 66:2 66:3 66:3 66:6 66:6 66:7 66:15 66:15 66:16 66:16 66:16 66:17 66:18 66:18 66:19 66:20 66:20 66:21 66:24 66:25 66:25 67:5 67:6 67:9 67:9 67:10 67:11 67:11 67:11 67:12 67:13 67:15 67:15 67:16 67:18 67:19 67:19 67:21 67:21 67:23 67:24 67:25 67:25 68:2 68:3 68:8 68:10 68:13 68:14 68:16 68:18 68:21 68:22 68:25 69:4 69:5 69:6 69:6 69:8 69:9 69:14 69:22 69:24 69:25 69:25 70:3 70:11 70:24 70:25 71:1 71:4 71:5 71:7 71:9 71:10 71:13 71:16 71:17 71:18 71:18 71:23 71:24 72:1 72:2 72:4 72:5 72:6 72:6 72:12 72:13 72:14 72:15 72:16 72:16 72:20 72:21 72:24 72:24 73:1 73:6 73:6 73:8 73:9 73:11 73:11 73:12 73:12 73:13 73:13 73:16 73:19 73:20 73:21 74:4 74:5

**the(301)** 74:10 74:11 74:11 74:12 74:15 74:20 74:25 75:4 75:4 75:11 75:14 75:15 75:17 75:18 75:22 75:23 75:23 75:23 76:2 76:3 76:7 76:9 76:13 76:14 76:14 76:14 76:16 76:19 76:20 76:20 76:22 76:23 77:2 77:5 77:6 77:7 77:7 77:8 78:5 78:7 78:9 78:10 78:15 78:16 78:19 78:19 78:22 78:25 79:4 79:4 79:8 79:10 79:12 79:12 79:12 79:13 79:14 79:21 79:22 79:24 80:1 80:3 80:4 80:5 80:5 80:8 80:9 80:9 80:10 80:13 80:15 80:15 80:17 80:23 80:24 80:25 81:2 81:4 81:7 81:10 81:11 81:11 81:12 81:14 81:16 81:18 81:20 81:21 82:3 82:3 82:5 82:11 82:12 82:14 82:15 82:20 82:23 82:18 82:19 82:19 82:22 82:22 82:23 82:25 83:3 83:4 83:4 83:5 83:6 83:6 83:7 83:10 83:11 83:11 83:12 83:19 83:22 84:5 84:8 84:13 84:14 84:17 84:19 84:20 84:20 84:25 85:1 85:3 85:6 85:6 85:7 85:8 85:13 85:13 85:15 85:15 85:18 85:20 85:20 85:21 85:22 85:22 85:24 85:24 86:1 86:8 86:9 86:14 86:15 86:16 86:16 86:17 86:22 86:23 87:1 87:1 87:2 87:3 87:6 87:9 87:10 87:13 87:14 87:19 87:23 87:25 88:1 88:2 88:6 88:6 88:7 88:9 88:13 88:14 88:15 88:16 88:18 89:1 89:3 89:7 89:8 89:9 89:12 89:14 89:16 89:16 89:18 89:18 89:21 89:23 89:23 90:1 90:2 90:3 90:5 90:7 90:8 90:8 90:9 90:12 90:12 90:15 90:17 90:17 90:20 90:22 90:25 91:2 91:6 91:6 91:8 91:10 91:16 91:21 91:23 91:23 92:1 92:5 92:7 92:9 92:16 92:20 92:20 92:23 93:2 93:5 93:7 93:23 93:25 94:1 94:4 94:5 94:5 94:6 94:7 94:7 94:8 94:11 94:14 94:15 94:15 94:19 94:20 94:24 94:24 94:25 95:3 95:4 95:8 95:9 95:9 95:10 95:10 95:11 95:12 95:12 95:15 95:16 95:17 95:17 95:20 95:24 95:25 96:1 96:2 96:3 96:4 96:4 96:5 96:5 96:6 96:7 96:10 96:10 96:13 96:14 96:16 96:17 96:19 96:21

**the(301)** 96:21 96:22 96:23 96:24 96:25 96:25 97:4 97:6 97:8 97:9 97:13 97:14 97:14 97:15 97:15 97:16 97:17 97:18 97:23 98:2 98:3 98:3 98:3 98:4 98:4 98:9 98:10 98:10 98:11 98:15 98:18 98:22 98:24 98:25 99:2 99:2 99:2 99:6 99:8 99:9 99:12 99:13 99:14 99:15 99:18 99:18 99:20 99:22 99:24 100:3 100:3 100:6 100:10 100:10 100:10 100:14 100:15 100:17 100:18 100:20 100:21 100:23 100:25 101:1 101:2 101:2 101:5 101:18 101:19 101:22 101:23 101:24 101:24 102:11 102:12 102:14 102:16 102:17 102:20 102:22 102:25 103:3 103:4 103:10 103:17 103:18 103:18 103:20 103:21 103:25 103:25 104:1 104:1 104:3 104:4 104:7 104:11 104:12 104:17 104:21 104:2 104:22 105:1 105:4 105:7 105:8 105:10 105:12 105:18 105:21 105:25 106:1 106:5 106:6 106:6 106:8 106:9 106:10 106:15 106:18 106:20 106:24 106:25 106:25 107:2 107:6 107:7 107:8 107:11 107:15 107:17 107:18 107:20 107:23 108:1 108:4 108:6 108:8 108:9 108:11 108:13 108:14 108:16 108:16 108:19 108:22 108:22 108:24 109:1 109:6 109:7 109:10 109:19 109:21 109:25 110:2 110:2 110:7 110:12 110:15 110:19 110:22 110:2 110:25 111:2 111:3 111:5 111:7 111:7 111:11 111:11 111:12 111:15 111:16 111:20 111:21 111:22 111:24 112:1 112:3 112:5 112:10 112:13 112:20 112:21 112:2 113:9 113:9 113:11 113:12 113:15 113:15 113:20 113:23 113:24 114:7 114:9 114:9 114:11 114:17 114:19 114:23 115:2 115:8 115:8 115:18 115:21 116:1 116:3 116:5 116:6 116:7 116:10 116:18 116:19 116:24 117:1 117:2 117:3 117:4 117:19 117:23 118:3 118:4 118:5 118:5 118:7 118:8 118:21 119:17 119:21 120:8 120:9 121:7 121:16 121:21 121:23 122:1 122:3 122:4 122:9 122:13 122:16 122:17 122:18 122:20 122:21 122:22 122:24 123:4 123:1 123:16 123:22 123:25 124:10 124:13 124:13 124:14 124:14 124:15 124:18 124:18 124:18 124:24 124:23 124:23 124:25 125:1 125:2 125:8 125:9 125:10 125:11 125:22 125:25 126:1 126:3 126:4 126:7 126:8 126:8 126:9 126:14 126:16 126:16 126:18 126:19

**the(301)** 126:20 126:21 127:2 127:5 127:7 127:8 127:10 127:10 127:11 127:12 127:13 127:15 127:17 127:17 127:19 127:19 127:21 128:1 128:2 128:2 128:3 128:4 128:5 128:6 128:7 128:8 128:9 128:10 128:13 128:14 128:14 128:15 128:16 128:16 128:18 128:18 128:22 128:23 128:24 128:24 129:1 129:4 129:4 129:6 129:7 129:8 129:11 129:13 129:13 129:15 129:17 129:18 129:20 129:22 129:23 130:1 130:3 130:3 130:6 130:9 130:15 130:19 130:22 130:22 130:24 131:2 131:3 131:3 131:3 131:5 131:5 131:8 131:9 131:12 131:13 131:17 131:17 131:18 131:19 131:20 131:20 131:20 131:21 131:24 131:24 132:4 132:10 132:12 132:16 132:19 132:22 132:22 133:2 133:3 133:5 133:9 133:10 133:12 133:17 133:18 133:21 133:21 133:22 133:24 134:1 134:1 134:4 134:6 134:7 134:8 134:10 134:10 134:11 134:14 134:14 134:14 134:15 134:16 134:16 134:17 134:17 134:22 134:25 135:1 135:2 135:3 135:5 135:5 135:8 135:8 135:11 135:11 135:12 135:13 135:13 135:15 135:15 135:15 135:16 135:18 135:19 135:22 135:24 136:4 136:4 136:6 136:9 136:11 136:12 136:13 136:15 136:16 136:17 136:18 136:19 136:21 136:25 137:2 137:2 137:4 137:4 137:6 137:8 137:12 137:13 137:15 137:16 137:19 137:20 137:21 137:21 137:23 137:23 138:1 138:2 138:3 138:4 138:4 138:6 138:7 138:8 138:10 138:11 138:12 138:18 138:18 138:20 139:2 139:4 139:7 139:13 139:13 139:13 139:22 139:22 140:9 140:20 140:25 140:25 141:3 141:4 141:6 141:7 141:7 141:8 141:10 141:13 141:16 141:17 141:21 141:23 142:3 142:6 142:8 142:9 142:10 142:12 142:14 142:17 142:17 142:23 143:2 143:4 143:8 143:10 143:16 143:19 143:20 143:21 143:22 143:25 144:3 144:7 144:13 144:19 144:23 144:24 144:25 145:1 145:5 145:6 145:7 145:8 145:9 145:11 145:12 145:13 145:14 145:17 145:21 145:25 146:1 146:2 146:4 146:4 146:5 146:7 146:11 146:12 146:12 146:14 146:16 146:16 146:18 146:21 146:21 146:22 146:22 146:25 147:2 147:3 147:4 147:5 147:5 147:6 147:14 147:14 147:18 147:19 147:24 148:3 148:6 148:9 148:13 148:16 148:18 148:21 148:24 149:3 149:8 149:9 149:10 149:11 149:12 149:17 149:18 149:21 149:21 149:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 149:25 150:1 150:2 150:4 150:4 150:10 150:10 150:11 150:11 150:12 150:12 150:13 150:14 150:14 150:16 150:17 150:18 150:20 150:20 150:20 150:22 150:25 151:1 151:1 151:1 151:2 151:2 151:3 151:4 151:5 151:7 151:8 151:8 151:8 151:9 151:10 151:10 151:12 151:13 151:14 151:15 151:16 151:18 151:24 151:25 152:2 152:3 152:3 152:4 152:4 152:5 152:10 152:12 152:12 152:14 152:16 152:18 152:20 152:22 152:24 153: 153:3 153:3 153:9 153:11 153:12 153:13 153:16 153:19 154:2 154:2 154:3 154:4 154:5 154:8 154:9 154:14 154:14 154:14 154:15 154:16 154:17 154:17 154:17 154:20 154:21 154:21 154:23 154:23 155: 155:1 155:1 155:4 155:4 155:5 155:6 155:8 155:9 155:10 155:12 155:12 155:18 155:19 155:20 155:20 155:21 156:5 156:6 156:7 156:7 156:15 156:17 156:20 156:23 157:2 157:8 157:10 157:12 157:20 157:22 157:24 158:1 158:2 158:2 158:3 158:6 158:6 158:7 158:7 158:7 158:8 158:9 158:10 158:10 158:11 158:11 158:12 158:16 158:18 158:19 158:19 158:20 158:22 158:23 158:24 158:25 159:1 159:2 159:7 159:7 159:11 159:13 159:20 159:20 159:22 159:22 159:23 159:25 160:1 160:2 160:2 160:3 160:3 160:3 160:4 160:5 160:8 160:10 160:15 160:15 160:18 161:2 161:4 161:5 161:5 161:6 161:10 161:11 161:15 161:16 161:18 161:20 161:23 161:24 161:25 162:1 162:5 162:13 162:14 162:15 162:15 162:18 162:22 162:25 162:25 163:5 163:5 163:6 163:6 163:9 163:14 163:15 163:19 163:19 163:20 163:20 163:22 163:22 163:23 163:23 163:25 164:2 164:3 164:3 164:4 164:7 164:7 164:9 164:10 164:11 164:11 164:13 164:20 164:21 164:25 165:6 165:7 165:7 165:9 165:11 165:12 165:13 165:13 165:1 165:23 166:1 166:1 166:7 166:12 166:13 166:13 166:13 166:15 166:15 166:16 166:17 166:17 166:18 166:19 166:23 166:25 166:25 167:3 167:5 167:7 167:8 167:10 167:10 167:11 167:13 167:13 167:14 167:16 167:16 167:17 167:21 167:22 167:23 167:23 168:1 168:2 168:2 168:4 168:7 168:10 168:10 168:13 168:14 168:14 168:15 168:16 168:18 169:5 169:7 169:8 169:10 169:10 169:11 169:11 169:1 169:12 169:17 169:17 169:17 169:21 169:21 169:22 169:23 169:24 169:25 169:25

**the**(301) 169:25 170:1 170:4 170:5 170:5 170:5 170:6 170:9 170:10 170:11 170:12 170:13 170:15 170:16 170:19 170:19 170:20 170:20 170:21 170:21 170:22 170:23 170:23 170:25 171:1 171:2 171:4 171:5 171:5 171:6 171:6 171:6 171:7 171:8 171:8 171:9 171:10 171:11 171:11 171:14 171:15 171:16 171:16 171:18 171:19 171:21 171:22 171:25 172:1 172:3 172:3 172:4 172:6 172:7 172:9 172:10 172:12 172:17 172:18 172:19 172:23 173: 173:3 173:3 173:4 173:6 173:10 173:11 173:11 173:13 173:13 173:14 173:15 173:15 173:19 173:21 173:22 173:24 173:24 174:1 174:2 174:2 174:6 174:8 174:8 174:12 174:13 174:16 174:20 174:2 174:23 174:24 174:24 174:25 175:1 175: 175:5 175:6 175:6 175:10 175:12 175:12 175:13 175:14 175:14 175:15 175:15 175:15 175:17 175:17 175:18 175:25 176: 176:5 176:7 176:10 176:13 176:15 176:16 176:16 176:19 176:21 176:21 177:2 177:3 177:3 177:4 177:5 177:6 177:6 177:6 177:8 177:9 177:10 177:11 177:13 177:14 177:14 177:17 177:21 177:25 177:25 178:6 178:10 178:16 178:16 179:4 179:10 179:11 179:13 179:19 179:20 179:21 179:22 179:24 180:8 180:11 180:12 180:1 180:14 180:16 180:18 180:19 180:20 180:21 180:22 180:22 180:23 180:24 180:25 181:2 181:3 181:7 181:8 181:15 181:17 181:18 181:24 181:24 182:2 182:5 182:9 182:12 182:18 182:18 182:21 182:22 182:22 182:24 182:25 183:1 183:3 183:3 183:3 183:9 183:11 183:12 183:13 183:14 183:16 183:19 183:25 184:3 184:8 184:14 184:23 184:23 185:3 185:4 185:6 185:11 185:13 185:17 185:18 186:4 186:6 186:7 186:9 186:10 186:11 186:14 186:16 186:16 186:20 186:22 186:23 187: 187:11 187:13 187:14 187:16 187:18 187:19 187:20 187:22 187:25 187:25 188:1 188:1 188:2 188:2 188:3 188:3 188:4 188:4 188:4 188:5 188:5 188:9 188:10 188:11 188:12 188:13 188:1 188:13 188:14 188:17 188:17 188:19 188:19 188:20 188:20 188:21 188:21 188:24 189:1 189:6 189:7 189:10 189:11 189:11 189:19 189:21 189:21 189:22 190: 190:6 190:9 190:9 190:14 190:14 190:15 190:16 190:19 190:20 190:20 190:21 191: 191:4 191:4 191:5 191:8 191:10 191:12 191:13 191:16 191:18 191:22

**the**(300) 191:22 191:23 191:24 191:24 192:1 192:1 192:2 192:3 192:5 192:8 192:9 192:10 192:12 192:13 192:13 192:15 192:23 192:25 193:2 193:3 193:10 193:10 193:11 193:13 193:17 193:18 193:22 193:25 194:1 194:2 194:6 194:6 194:8 194:9 194:9 194:10 194:11 194:11 194:12 194:20 194:24 195:3 195:6 195:10 195:10 195:22 195:24 195:25 196:2 196:4 196:9 196:11 196:14 196:14 196:19 196:17 196:20 196:21 196:21 196:24 196:25 197:1 197:1 197:1 197:2 197:4 197:6 197:6 197:7 197:8 197:9 197:12 197:13 197:14 197:17 197:18 197:25 198:1 198:3 198:8 198:10 198:11 198:12 198:12 198:1 198:13 198:14 198:14 198:18 198:18 198:18 198:19 198:19 198:21 198:23 198:24 199:4 199:8 199:10 199:11 199:12 199:12 199:16 199:18 199:19 199:21 199:24 199:25 199:25 200:2 200:4 200:6 200:8 200:14 200:16 200:18 200:20 200:21 200:23 200:24 201:1 201:1 201:3 201:4 201:5 201:6 201:7 201:9 201:12 201:13 201:15 201:15 201:16 201:18 201:19 201:19 201:21 201:24 202:1 202:3 202:3 202:4 202:5 202:8 202:9 202:9 202:10 202:12 202:12 202:14 202:18 202:20 202:23 202:23 202:25 202:25 203:3 203:4 203:6 203:6 203:8 203:9 203:14 203:15 203:16 203:17 203:1 203:18 203:19 203:19 203:21 203:24 204:1 204:2 204:3 204:6 204:7 204:8 204:9 204:12 204:15 204:18 204:20 204:19 204:20 204:21 204:21 204:24 205: 205:5 205:5 205:6 205:7 205:8 205:8 205:13 205:14 205:15 205:17 205:17 205:19 205:20 205:21 206:2 206:3 206:5 206:9 206:12 206:13 206:15 206:17 206:1 206:21 206:24 206:25 207:1 207:2 207:7 207:8 207:10 207:10 207:12 207:16 207:1 207:17 207:17 207:18 207:19 207:22 207:23 207:24 207:24 207:25 207:25 208:2 208:5 208:7 208:7 208:8 208:14 208:16 208:22 208:25 209:2 209:5 209:6 209:7 209:9 209:11 209:12 209:17 209:18 209:2 209:21 209:22 209:23 209:24 209:25 210:1 210:2 210:3 210:3 210:5 210:9 210:10 210:10 210:12 210:14 210:16 210:1 210:21 210:22 210:24 210:25 211:1 211:3 211:3 211:6 211:8 211:10 211:12 211:15 211:16 211:18 211:19 211:21 212:2 212:3 212:3 212:4

**their**(54) 13:13 18:23 22:6 24:7 24:20 25:2 25:9 32:1 38:14 39:9 41:12 46:1 52:13 60:20 60:25 61:5 63:4 63:7 63:8 69:10 69:15 74:17 92:19 92:21 92:22 96: 96:7 97:15 98:5 101:18 106:23 126:5 129:16 130:20 130:20 136:7 138:9 149:13 149:21 164:5 166:20 168:6 170:8 170:16 176:22 178:12 178:12 198:2 199:5 199:14 203:25 205:21 207:17 209:10

**them**(29) 15:4 17:3 17:4 21:11 25:15 31:5 40:5 43:22 45:7 45:24 63:24 64:22 70:9 73:14 79:14 87:4 99:21 100:13 113:18 142:3 142:5 146:7 163:12 170:14 182:2 182:19 203:20 205:1 205:4

**theme**(1) 100:19
**themselves**(3) 34:22 84:25 98:13

**then**(69) 18:19 18:23 19:10 19:11 22:12 22:18 28:20 33:25 37:11 41:2 43:1 51:11 51:17 51:20 56:16 57:9 62:11 64:3 64:18 65:16 66:6 66:25 71:9 74:13 76:20 77:8 78:11 79:2 80:4 102:19 103:1 104:7 110:11 112:5 116:10 116:17 120:11 129:24 132:15 132:16 133:17 134:14 137:2 137:5 142:6 143:25 145:13 146:18 147:2 148:19 150:21 150:23 152:8 153:1 153:9 154:25 155:5 165:3 165:8 169:15 171:22 177:2 184:10 185:2 186:4 186:18 189:20 197:5 207:13

**theoretically**(1) 31:6
**theories**(1) 186:12
**theory**(2) 169:12 187:9
**there**(152) 13:5 14:1 14:13 14:22 16:14 16:25 18:2 18:6 18:11 18:17 18:20 18:25 19:18 20:12 21:19 21:22 23:14 25:6 26:8 31:1 32:20 36:8 36:8 37:11 40:24 43:10 45:2 45:22 49:7 51:5 55:22 58:10 64:3 64:10 64:20 65:24 66:10 66:15 67:24 70:10 70:13 70:14 72:4 74:10 74:24 75:18 76:2 76:13 76:25 77:23 80:11 82:22 84:1 88:17 89:17 89:20 89:22 91:2 91:14 93:14 93:14 93:17 93:19 94:19 94:24 95:2 95:7 97:23 98:2 99:25 104:23 111:24 119:25 123:18 123:19 126:7 127:21 127:25 128:12 128:13 131:21 132:3 134:21 135:24 135:25 140:6 142:6 142:9 143:14 144:6 144:19 145:15 145:21 152:16 152:18 152:25 153:7 153:21 153:23 154:24 154:25 155:2 155:18 158:1 158:10 159:12 159:15 161:6 161:9 161:22 162:12 164:16 166:19 167:12 169:6 171:12 171:22 173:14 175:22 175:23 178:17 180:22 183:17 183:23 184:2 185:14 185:16 185:19 186:10 186:12 186:17 186:25 187:7 187:11 188:10 188:16 189:19 190:17 190:23 193:4 197:10 197:15 199:20 200:5 200:10 206:19 206:20 208:25 209:19

**there's**(35) 19:12 30:5 35:24 49:2 53:1 64:12 64:13 72:16 74:3 78:3 78:6 85:21 88:14 88:22 99:13 102:21 103:1 103:25 106:17 129:25 137:19 142:19 142:25 143:17 145:14 146:13 150:17 154:25 159:15 160:20 162:22 163:7 169:20 173:3

**thereby**(2) 126:22 175:19
**therefore**(12) 38:13 39:20 51:17 92:25 132:4 132:25 153:6 153:20 157:4 177:8 188:25 191:2
**there's**(7) 178:7 186:17 186:19 188:6 193:15 203:23 207:23

**these**(29) 19:25 20:23 22:8 30:1 33:10 42:1 43:20 45:14 46:13 54:15 55:13 64:6 64:25 65:1 65:10 65:16 66:2 69:1 82:16 96:22 98:7 103:13 103:17 111:16 129:1 144:2 173:21 181:25 199:2

| Word | Page:Line |
|------|-----------|
| **they**(120) 30:2 30:9 32:6 33:22 34:17 38:14 38:15 39:24 40:2 40:3 41:2 42:15 43:1 46:10 46:13 51:19 52:13 53:12 54:6 58:11 60:16 60:19 61:7 61:7 62:11 65:19 65:20 65:22 69:18 69:19 73:12 85:18 87:16 89:2 89:7 90:1 90:16 92:6 92:21 93:2 96:17 98:7 101:5 103:19 105:22 106:7 110:8 111:10 111:12 111:13 117:18 127:1 127:12 127:12 127:13 129:19 131:4 132:5 134:19 135:3 135:3 135:13 135:14 137:11 137:12 137:13 137:17 137:18 138:9 138:8 138:20 142:12 142:13 144:14 144:14 144:15 144:15 144:17 145:10 145:14 145:15 146:6 157:10 164:6 165:15 165:15 165:18 165:21 168:4 168:6 177:12 182:10 183:12 187:9 188:24 188:25 192:5 192:18 192:20 192:20 192:22 193:22 198:2 198:3 198:6 199:1 199:4 199:5 199:11 199:13 205:2 205:4 205:8 205:17 205:20 207:22 207:22 209:9 211:4 | |
| **they're**(9) 22:13 30:10 43:17 43:23 44:20 57:4 90:25 143:24 144:3 | |
| **they've**(1) 109:11 | |
| **they're**(1) 203:20 | |
| **they've**(1) 205:1 | |
| **thing**(4) 64:19 66:15 136:25 211:12 | |
| **things**(12) 13:7 13:17 16:16 17:6 17:7 21:9 21:20 26:15 98:19 114:11 136:22 164:16 | |
| **think**(169) 13:17 14:17 14:19 15:15 15:23 15:24 17:19 17:24 18:3 18:9 24:16 27:9 29:3 30:18 31:21 33:6 33:22 34:1 34:5 34:21 37:21 38:9 39:22 40:4 41:21 41:22 41:25 42:10 43:22 45:9 45:24 46:8 46:12 52:21 53:8 55:23 57:3 57:4 58:7 64:2 66:11 69:13 71:14 71:16 73:4 73:19 73:19 75:4 78:14 78:16 81:2 91:20 92:14 93:10 94:19 95:23 95:25 96:19 97:12 100:19 101:4 103:24 104:18 105:18 105:21 106:16 107:1 112:16 112:22 112:24 113:1 113:6 113:7 113:7 113:12 115:10 115:14 120:11 121:11 121:18 121:21 121:23 122:4 122:8 122:20 123:2 125:10 130:25 131:10 132:1 133:15 133:19 134:21 135:11 138:3 139:25 140:3 141:3 142:2 142:24 142:25 143:11 144:4 147:4 152:24 153:1 153:8 153:18 154:16 155:2 156:13 157:8 157:24 159:10 160:24 161:9 161:20 162:14 163:7 164:17 164:25 165:1 165:1 165:12 165:24 166:3 167:12 168:5 168:25 169:13 173:6 174:1 174:6 174:20 175:14 176:23 181:6 182:8 183:6 183:7 183:23 185:19 187:4 188:17 189:14 189:15 189:23 189:25 190:17 190:22 191:16 192:5 194:19 196:8 196:14 197:19 198:9 201:3 202:9 204:4 204:17 205:11 205:16 205:25 206:3 206:11 208:12 209:23 | |
| **thinking**(8) 16:5 16:8 95:6 119:24 120:2 181:18 181:23 186:8 | |
| **thinks**(3) 133:8 133:9 133:10 | |
| **third**(20) 17:15 27:16 37:13 43:5 43:19 44:24 45:21 45:22 46:15 50:21 58:10 115:24 133:17 144:19 187:6 192:15 193:2 202:4 202:6 204:21 | |
| **third-party**(2) 191:14 194:12 | |
| **thirty**(10) 123:24 142:22 143:3 150:8 151:18 151:25 152:24 153:17 153:21 154:10 | |
| **thirty-five**(1) 153:17 | |

| Word | Page:Line |
|------|-----------|
| **this**(199) 13:10 15:20 15:22 17:5 19:5 19:15 19:17 19:19 20:2 21:9 22:1 26:13 28:5 29:7 30:9 32:5 32:7 32:13 33:6 33:12 33:23 36:4 36:6 36:17 37:2 37:3 37:5 37:17 38:10 39:24 41:21 42:9 42:20 42:23 44:24 45:19 46:11 49:6 49:16 50:2 53:16 53:18 53:24 54:20 55:24 56:8 56:2 56:25 64:19 68:7 69:9 69:18 70:1 71:17 77:7 77:16 78:13 78:23 79:24 81:8 82:1 83:9 83:15 84:2 84:5 85:14 86:12 86:13 86:17 88:16 92:15 93:18 93:23 93:24 94:22 95:7 95:8 95:18 95:19 96:20 97:13 99:20 100:8 100:9 100:19 103:24 103:24 104:10 104:14 105:21 106:22 109:8 109:1 110:18 110:22 111:3 111:7 111:12 111:1 113:6 114:25 116:3 116:5 116:22 117:5 117:16 117:18 117:22 120:2 120:10 120:11 121:22 121:23 122:5 122:11 123:3 123:13 124:7 124:21 125:18 129:8 129:9 129:14 129:21 129:24 130:2 130:21 131:4 132:10 132:11 132:12 132:12 132:13 132:15 132:22 133:9 133:13 133:15 133:19 134:1 136:16 137:1 139:18 140:21 140:22 156:1 156:4 156:10 157:3 157:18 160:18 161:23 164:1 164:14 164:16 165:12 166:2 169:3 169:5 169:15 172:1 174:3 174:16 174:20 175:16 177:17 177:25 178:2 181:7 182:3 182:12 183:4 185:11 187:5 191:11 191:19 192:4 195:5 196:8 196:9 196:14 197:10 198:13 199:3 199:18 200:4 204:16 205:25 208:6 208:22 211:7 211:9 | |
| **thomas**(2) 4:17 4:33 | |
| **thompson**(2) 12:32 12:33 | |
| **those**(101) 20:22 21:12 21:24 22:1 22:2 22:3 22:5 23:24 24:22 27:25 28:2 28:12 28:18 29:1 29:4 29:12 29:13 29:24 30:13 34:6 35:8 35:14 37:10 37:21 40:22 41:3 42:15 44:2 45:1 45:1 47:4 47:6 51:0 54:4 54:4 54:6 60:16 62:25 63:10 63:22 68:18 69:7 75:22 85:2 87:6 87:14 88:13 89:1 89:25 90:15 94:25 96:13 97:7 97:25 101:25 112:2 112:19 114:5 119:4 123:22 125:14 132:1 135:12 135:14 136:10 136:24 136:24 137:11 137:24 141:21 142:12 144:11 145:11 146:15 147:2 149:12 149:25 150:24 168:24 169:1 171:1 171:4 177:16 178:19 177:18 178:22 184:8 188:14 192:21 198:22 198:23 198:25 202:10 202:22 203:18 204:8 206:22 206:25 207:2 209:10 | |
| **though**(7) 19:8 33:20 75:7 79:21 80:13 84:14 119:24 | |
| **thought**(18) 13:25 18:5 18:17 18:21 19:2 19:7 19:22 100:13 117:18 127:21 129:6 129:10 136:3 159:10 177:4 189:14 191:25 200:4 | |
| **thoughts**(1) 14:11 | |
| **three**(15) 47:6 47:8 63:10 63:14 105:25 106:2 106:18 111:13 111:22 116:7 119:19 133:7 149:7 160:21 186:11 | |
| **threshold**(6) 84:18 84:19 84:21 85:4 85:15 86:10 | |
| **through**(19) 16:11 17:21 20:15 21:13 31:23 45:5 45:7 55:9 71:8 111:20 127:21 136:13 136:15 141:18 145:25 160:24 166:14 178:13 183:4 | |
| **thursday**(9) 202:8 202:24 202:25 204:11 205:14 205:24 206:5 208:10 208:19 | |
| **tie**(1) 46:11 | |

| Word | Page:Line |
|------|-----------|
| **time**(54) 14:2 14:3 14:7 14:12 14:15 15:8 15:23 17:7 17:9 24:18 44:4 65:1 69:25 69:25 81:2 86:19 96:21 97:23 98:4 106:25 110:17 111:12 113:17 114:7 120:18 144:17 146:2 146:13 149:15 161:7 162:5 162:13 162:20 162:23 163:1 163:5 176:23 177:5 181:6 181:15 181:23 195:5 199:22 200:6 201:21 203:2 203:5 203:10 203:16 205:20 206:5 206:8 207:19 | |
| **times**(6) 5:29 40:19 48:3 102:6 119:16 121:15 | |
| **timing**(3) 201:4 205:12 206:6 | |
| **title**(1) 115:8 | |
| **today**(22) 13:9 13:21 20:8 35:8 35:25 37:18 53:10 59:17 60:7 62:9 70:11 82:8 83:25 84:7 87:14 88:16 93:17 115:18 146:6 146:9 167:4 181:16 | |
| **together**(3) 52:21 174:8 182:1 | |
| **told**(3) 14:10 180:13 205:1 | |
| **tomorrow**(15) 13:22 13:24 17:14 19:19 20:1 202:6 203:9 206:4 206:10 208:7 208:21 209:13 210:11 210:15 211:20 | |
| **too**(6) 25:6 28:2 69:13 162:23 163:1 | |
| **took**(3) 138:20 174:9 195:21 | |
| **top**(4) 102:20 116:6 153:20 181:24 | |
| **topic**(1) 185:11 | |
| **topical**(2) 19:1 19:5 | |
| **topics**(2) 109:17 147:9 | |
| **torres**(1) 11:32 | |
| **touched**(1) 191:11 | |
| **toussi**(1) 12:37 | |
| **toward**(1) 19:10 | |
| **towards**(2) 64:1 173:3 | |
| **track**(2) 34:17 73:18 | |
| **traded**(1) 135:1 | |
| **transaction**(51) 25:3 27:3 27:4 32:24 35:2 39:24 39:25 40:18 50:14 50:16 53:22 127:14 129:5 129:9 129:22 130:7 133:20 160:6 161:18 161:24 162:7 162:11 162:16 162:22 162:25 163:4 163:13 164:3 164:8 164:10 164:11 164:12 165:11 165:19 166:2 166:15 169:8 169:9 173:23 174:4 174:6 174:10 174:19 175:16 177:4 194:10 194:1 197:18 198:6 198:8 198:13 | |
| **transaction."**(1) 178:13 | |
| **transactions**(15) 24:18 24:19 24:22 45:11 45:17 72:1 92:1 92:10 127:20 127:22 128:9 131:9 133:1 153:16 161:8 | |
| **transcriber**(1) 212:8 | |
| **transcript**(5) 1:17 1:49 15:11 81:6 212:3 | |
| **transcription**(2) 1:42 1:49 | |
| **transcripts**(1) 185:7 | |
| **transfer**(17) 16:13 45:18 182:19 183:13 184:9 184:17 184:19 185:15 185:16 185:2 186:4 186:6 186:11 186:13 186:24 187:1 187:8 | |
| **transformativ**(1) 174:3 | |
| **trap**(1) 18:13 | |
| **treat**(2) 33:24 181:2 | |
| **treated**(4) 35:15 143:8 195:24 209:9 | |
| **treating**(1) 189:15 | |
| **treatment**(2) 51:10 55:18 | |
| **treats**(2) 144:17 185:18 | |
| **tree**(24) 109:19 110:20 111:4 112:11 112:14 112:16 112:24 113:2 113:5 113:10 113:16 113:17 114:3 114:3 116:24 117:17 117:12 117:15 117:17 117:20 123:16 123:20 196:3 196:5 | |
| **trees**(1) 109:22 | |
| **trehan**(1) 8:34 | |
| **trepidation**(1) 211:8 | |
| **trial**(4) 139:18 139:21 147:11 185:7 | |

| Word | Page:Line |
|------|-----------|
| **tribune**(120) 1:8 7:15 7:28 27:3 27:16 27:20 28:9 28:18 28:19 29:8 33:3 33:13 34:24 35:6 35:9 35:14 35:20 36:14 37:1 37:14 38:1 38:13 38:15 38:18 38:22 39:11 41:17 43:7 43:18 45:18 45:21 45:25 46:21 53:14 54:2 55:2 59:21 60:14 60:21 60:24 61:5 61:8 62:1 62:8 62:15 62:19 62:22 65:12 65:16 67:16 69:9 76:5 81:12 87:25 88:7 88:11 88:15 89:4 92:16 97:4 97:15 102:19 102:25 115:18 122:6 122:11 122:14 122:17 123:5 126:8 126:18 126:20 126:23 126:25 127:2 127:16 128:9 128:14 129:23 130:25 132:11 132:24 133:1 133:15 133:23 134:11 136:14 138:18 142:18 143:15 143:17 143:22 144:24 146:5 147:4 149:18 151:5 152:14 159:9 161:8 161:18 165:10 167:15 167:16 173:24 175:2 176:21 177:3 177:7 177:16 187:16 187:24 188:3 189:16 190:7 193:1 197:5 197:12 197:18 197:24 | |
| **tribune's**(16) 38:25 39:12 54:9 75:21 87:22 126:4 130:14 134:13 142:20 143:22 144:7 144:11 145:13 154:6 155:22 158:14 | |
| **tribune-only**(2) 188:1 188:2 | |
| **tribune's**(3) 7:33 187:3 190:21 | |
| **tried**(2) 33:11 174:9 | |
| **true**(8) 25:22 119:20 157:15 161:2 166:8 177:1 184:11 193:19 | |
| **trust**(101) 3:31 10:17 11:32 19:7 19:7 51:7 126:17 127:7 127:10 127:17 128:1 128:15 128:16 128:17 131:21 133:14 133:16 134:13 134:15 135:5 135:6 135:8 135:10 135:15 135:18 135:19 136:13 136:19 136:25 137:3 137:5 137:8 137:19 138:4 146:7 146:19 147:1 147:5 149:9 149:10 149:18 150:1 151:11 151:14 152:2 152:5 152:13 152:17 152:18 152:22 154:3 154:15 154:18 154:21 154:23 155:5 158:3 160:16 161:7 161:11 161:24 162:4 165:8 167:15 167:15 169:17 169:24 170:5 170:22 171:2 171:4 171:5 171:7 171:12 171:16 172:7 173:4 173:12 173:13 173:22 174:2 174:9 174:24 174:25 175:1 175:6 175:15 175:18 175:25 176:3 176:16 177:21 177:22 178:11 178:24 192:2 192:19 192:23 193:12 197:7 209:5 | |
| **trust's**(1) 153:4 | |
| **trustee**(77) 2:41 2:41 126:8 126:8 126:21 127:19 127:22 128:7 129:5 129:7 129:22 130:15 130:23 131:5 131:20 131:21 131:21 132:23 133:4 133:10 133:12 133:14 133:18 156:21 158:10 158:11 160:3 160:4 160:5 161:15 161:20 162:15 164:2 164:8 164:13 164:20 165:11 166:12 166:15 167:23 168:11 168:14 169:7 169:11 169:22 170:9 170:12 170:20 170:21 171:9 171:9 171:15 171:19 171:23 172:6 172:13 172:17 172:18 173:15 173:22 174:8 174:12 174:16 174:20 175:6 175:11 175:14 176:10 176:13 176:15 197:17 198:3 198:4 198:5 198:7 198:12 198:15 | |
| **trustee's**(3) 129:14 162:18 170:15 | |
| **trustee's**(2) 177:15 198:8 | |
| **trusts**(2) 134:18 170:9 | |
| **try**(18) 41:21 65:10 67:4 104:5 106:13 114:11 133:10 133:20 152:15 167:22 168:14 181:21 182:3 183:3 187:6 198:7 205:15 205:20 | |
| **trying**(8) 33:9 102:9 107:6 136:15 143:21 168:3 169:4 205:20 | |
| **tuesday**(1) 13:1 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **tuliano**(9) 109:7 121:8 121:11 124:11 147:10 147:13 147:25 148:5 148:5 | | **undertaking**(2) 37:15 56:10 **unfortunately**(2) 57:6 106:9 **unfounded**(2) 27:6 27:16 **unhappy**(1) 57:4 **uniform**(1) 116:19 | | **various**(11) 18:23 35:9 38:21 67:20 70:17 79:5 136:11 141:19 154:5 185:7 186:6 | | **waiving**(1) 129:8 **walk**(1) 45:7 **walrath's**(1) 15:6 **wamu**(1) 204:21 **want**(55) 15:23 16:9 16:10 16:25 19:16 |
| **tuliano's**(3) 121:14 147:11 148:11 **turn**(33) 33:21 41:11 46:9 46:19 55:19 63:25 69:22 71:6 77:24 81:6 94:11 99:10 102:17 102:19 126:9 130:9 134:6 148:19 160:14 163:14 163:17 166:22 166:24 172:18 177:24 178:4 179:2 188:9 189:20 191:4 191:10 202:7 209:14 | | **unit**(1) 25:14 **united**(4) 1:1 1:19 2:41 114:17 **university**(2) 24:10 114:20 **univision**(1) 25:2 98:24 **unless**(5) 59:6 103:22 138:20 169:10 **unlike**(1) 92:15 | | **vasquez**(1) 6:15 **vein**(1) 30:14 **venture**(2) 152:13 152:15 **verge**(1) 15:16 **versa**(2) 16:24 144:10 **version**(3) 35:24 55:20 75:23 **very**(37) 14:12 16:21 19:3 29:25 36:17 | | 19:17 20:23 33:21 34:9 44:1 46:11 48:20 70:7 70:8 71:6 76:10 92:7 100:18 103:20 105:3 105:6 107:13 109:16 113:11 118:3 121:24 127:12 128:9 129:19 129:21 130:18 130:19 132:10 133:1 133:18 134:22 153:22 156:18 161:8 164:4 170:23 173:6 174:4 180:11 184:25 186:14 186:18 196:1 198:4 198:14 200:20 205:3 205:4 205:7 205:23 |
| **turned**(1) 185:15 **tweak**(1) 138:10 **twenty**(6) 24:4 120:22 136:21 137:1 150:9 152:20 **twenty-five**(2) 153:17 154:16 **twin**(1) 30:2 **two**(75) 19:15 21:11 21:22 22:6 26:15 28:14 31:8 33:21 35:4 38:9 38:15 52:20 55:6 59:3 60:16 63:11 63:11 91:14 103:17 106:8 107:20 107:21 111:22 113:17 117:5 119:1 119:19 122:18 123:22 125:25 127:2 128:2 134:21 143:16 143:18 145:25 163:8 163:11 168:24 169:1 180:16 181:19 184:11 184:18 185:15 185:18 186:5 186:1 186:17 186:18 187:1 187:4 188:11 188:12 190:17 193:2 193:3 193:7 193:9 193:16 193:21 194:18 196:7 197:7 197:20 201:1 202:3 203:4 208:6 | | **unlikely**(18) 141:19 141:24 141:25 142:1 142:8 142:9 142:12 142:19 142:22 143:18 144:5 145:18 180:24 189:8 189:23 191:7 191:9 199:19 **unlimited**(1) 31:6 **unpredictable**(1) 32:8 **unrealistic**(1) 142:25 **unreasonably**(5) 182:22 182:25 187:8 187:13 187:15 | | 37:7 39:24 45:12 58:16 61:21 67:19 82:11 82:17 90:2 101:9 102:11 102:16 104:11 107:1 107:21 116:20 140:1 141:5 142:1 143:12 143:25 145:17 151:20 153:24 179:20 187:5 194:23 200:19 208:13 211:2 211:18 **vet**(1) 19:19 **veto**(11) 149:10 155:22 156:5 156:15 157:10 157:19 159:21 161:7 161:7 198:5 198:13 | | **wanted**(13) 16:17 19:17 19:23 92:16 106:8 111:10 135:14 166:4 177:4 186:14 200:24 206:11 208:11 **wants**(6) 68:8 111:20 197:24 205:16 205:24 210:11 |
| **two.''**(1) 185:21 **twoomey**(1) 7:23 **type**(2) 168:20 174:9 **types**(2) 103:13 115:2 **typical**(4) 102:2 103:7 103:12 128:20 **typically**(1) 31:25 **u.s**(2) 110:15 153:16 **ual**(1) 18:10 **ubs**(2) 10:9 10:9 **uh-huh**(4) 116:15 123:21 127:9 147:18 **ultimately**(8) 19:16 44:10 44:10 72:4 123:4 127:1 160:7 209:11 | | **vez**(2) 89:14 91:16 **vice**(2) 16:24 144:10 **video**(4) 156:11 160:11 165:4 165:23 **vies-a-vies**(1) 97:18 **view**(79) 27:1 27:6 27:14 27:17 38:11 39:20 40:14 40:14 45:1 46:6 46:8 46:9 47:17 48:16 48:24 49:17 50:12 51:23 52:7 58:4 72:10 72:22 73:24 75:22 79:18 87:25 88:25 89:2 89:8 89:8 89:11 89:18 91:17 95:18 97:8 97:8 101:19 103:10 105:1 132:2 132:23 133:5 134:16 136:24 137:24 140:4 141:16 144:7 144:11 145:2 148:3 150:11 150:19 151:18 151:25 153:5 153:1 159:11 161:18 162:11 162:18 175:10 175:14 177:5 182:5 182:6 182:9 185:19 186:16 187:10 187:19 189:16 190:22 191:22 191:24 192:18 196:5 206:12 | | **warrant**(25) 126:17 126:21 127:7 127:11 127:12 127:13 149:25 150:14 151:3 151:16 152:2 153:13 158:2 158:6 158:13 158:18 158:20 158:23 159:2 174:25 175:1 175:12 196:21 197:9 197:14 **warrants**(1) 197:2 **was**(185) 13:25 14:6 16:21 17:6 20:12 20:17 24:6 25:9 31:12 31:15 31:22 31:22 32:10 33:9 33:9 33:18 34:5 39:1 40:22 42:10 42:21 42:23 48:10 50:1 50:18 51:5 52:19 54:22 54:23 61:17 68:13 68:14 70:6 70:25 71:10 72:9 72:19 75:18 76:13 76:13 76:25 77:1 81:18 82:6 82:12 84:2 84:3 84:3 84:6 85:14 85:18 86:11 86:13 86:13 86:15 86:21 86:22 89:13 89:22 90:2 90:9 90:12 90:16 91:23 92:20 93:7 93:8 93:12 93:18 93:19 94:2 95:6 95:25 96:1 96:2 96:3 96:3 97:23 98:1 99:1 99:4 99:12 99:23 100:6 100:15 101:1 101:9 101:14 106:6 111:10 111:11 112:20 113:6 113:8 119:24 119:25 120:10 120:22 122:8 122:11 122:17 123:5 124:23 126:3 126:7 126:14 126:17 126:19 126:20 127:7 129:17 132:3 134:16 136:1 136:3 136:4 137:21 137:22 140:7 140:24 141:10 143:12 144:12 149:15 151:10 152:11 152:15 152:16 152:18 153:18 153:21 154:16 157:15 159:11 159:13 162:14 167:15 167:21 171:11 177:4 178:22 180:17 181:2 183:2 184:13 185:16 185:20 186:10 186:23 187:7 189:15 189:16 189:21 190:1 190:22 190:23 191:12 191:25 193:4 196:2 196:2 196:10 197:8 197:24 199:3 200:6 203:1 204:17 206:17 208:12 208:16 209:6 209:17 209:19 210:9 211:12 211:21 |
| **una**(2) 89:14 91:16 **uncertain**(1) 137:10 **uncertainty**(2) 72:4 72:14 **unchanged**(1) 137:23 **unclear**(1) 126:20 **under**(63) 28:2 28:19 29:6 31:10 35:15 35:18 38:1 39:9 40:2 43:7 44:20 46:5 46:8 46:18 46:21 48:2 55:8 58:6 58:8 58:9 60:11 62:3 62:13 63:6 63:19 65:1 65:5 65:21 66:7 66:16 67:15 75:23 76:3 76:23 77:25 88:13 88:19 91:22 94:15 94:15 96:22 99:20 100:9 100:25 107:5 130:3 131:8 138:18 146:21 147:2 151:3 155:10 159:7 161:25 167:15 170:5 171:2 177:2 177:3 192:23 197:12 198:13 198:15 | | **used**(13) 43:21 112:20 115:22 115:24 164:25 168:24 179:17 182:16 183:14 188:12 192:8 193:25 206:19 **useful**(3) 33:22 42:14 112:16 **user**(2) 33:9 51:3 **using**(2) 133:2 133:2 **usual**(1) 131:3 **usually**(1) 31:23 **utilized**(1) 178:11 | | **viewed**(11) 70:24 77:8 81:1 84:16 89:1 89:3 90:5 90:6 90:9 90:13 187:13 **viewpoint**(1) 30:3 **views**(6) 13:10 109:10 122:23 135:12 186:1 207:21 | | |
| **undergraduate**(1) 24:9 **underlying**(4) 30:1 46:2 135:15 154:17 **understand**(29) 19:9 20:7 33:16 40:3 55:1 55:11 65:7 67:4 68:7 86:12 95:1 95:2 105:25 107:7 112:24 120:4 123:13 123:18 136:6 140:3 149:8 158:5 161:14 164:2 169:6 171:1 176:1 187:19 194:8 **understanding**(30) 28:25 29:17 29:25 52:1 55:4 55:6 62:2 68:25 69:8 69:12 69:14 71:7 84:24 100:2 100:5 101:4 115:12 115:15 121:19 149:16 149:24 158:9 169:2 170:2 170:7 170:18 170:24 175:4 176:3 178:22 **understands**(1) 205:7 **understood**(4) 49:11 83:25 205:21 208:2 **undertake**(1) 56:8 **undertaken**(3) 65:17 65:19 66:13 | | **vagaries**(1) 135:24 **vail**(1) 10:28 **valid**(1) 193:11 **valor**(1) 205:19 **valuation**(37) 109:25 110:3 110:5 110:20 111:5 114:23 115:2 115:5 115:6 115:16 116:25 119:4 119:5 119:7 119:9 119:22 119:25 120:1 120:3 120:4 120:6 120:9 120:25 121:13 121:17 121:19 121:25 122:1 122:6 122:24 123:17 123:20 144:12 147:22 147:25 148:2 148:3 **valuations**(3) 121:4 121:9 122:16 **value**(56) 110:4 114:16 117:23 120:11 120:19 126:1 131:8 131:10 134:9 134:11 134:14 134:16 134:17 134:25 135:1 135:2 135:4 135:11 135:15 135:23 135:25 136:4 137:9 137:10 146:1 146:2 146:13 146:14 150:13 151:10 154:6 154:14 154:17 158:2 158:6 165:12 170:21 175:6 175:12 175:15 187:24 187:24 188:3 188:9 189:1 189:12 189:15 189:22 190:3 190:6 190:7 190:14 191:2 191:17 193:5 197:11 **valued**(2) 115:12 189:10 **valuing**(2) 115:7 115:18 **variety**(1) 134:23 | | **viking**(1) 11:11 **vinson**(1) 9:5 **violate**(5) 27:5 38:3 97:9 169:9 175:11 **violates**(1) 164:8 **violation**(4) 53:3 54:2 54:8 129:6 **violations**(2) 47:1 52:25 **virtually**(1) 189:3 **virtue**(4) 53:11 60:24 65:2 209:11 **vis-à-vis**(1) 34:14 **voir**(3) 111:20 112:6 118:4 **volume**(6) 155:8 163:16 166:23 172:1 177:25 180:4 **vonnegut**(1) 3:12 **vora**(1) 12:1 **vote**(24) 78:24 79:13 79:22 79:25 80:5 80:9 80:15 87:1 87:6 87:9 100:16 128:3 128:3 128:4 128:8 138:5 138:5 156:24 157:5 159:7 159:12 160:4 162:22 169:7 **votes**(1) 80:12 **voting**(21) 33:24 36:15 36:16 36:19 50:23 51:4 55:9 60:20 61:5 61:6 61:25 65:6 78:25 79:14 80:15 84:15 92:21 155:7 155:20 168:15 178:23 | | **washington**(7) 3:28 4:29 5:16 5:37 15:7 23:12 24:5 **wasn't**(4) 16:24 120:22 165:2 169:3 **waterfall**(2) 37:11 146:10 **watkins**(1) 8:43 **way**(24) 16:11 17:5 19:8 27:13 49:6 56:11 75:7 96:4 103:11 112:17 114:9 122:21 129:8 132:10 138:2 175:15 178:12 182:2 182:21 184:23 188:17 203:24 205:6 207:22 **ways**(5) 14:20 127:21 132:18 136:11 140:1 **we'd**(6) 21:10 21:12 22:12 22:18 105:16 106:22 **we'll**(10) 13:20 13:23 30:20 39:7 43:13 43:18 105:11 107:2 107:4 107:23 |
| | | **wackerly**(1) 7:25 **waiver**(19) 25:16 27:20 28:21 29:11 41:13 45:22 45:23 46:4 58:5 58:7 58:11 75:17 75:21 87:22 88:15 88:21 89:5 96:14 96:24 **waivers**(11) 24:21 25:4 25:6 39:12 74:22 76:3 76:5 76:6 88:11 96:17 96:22 | | | | |

| Word | Page:Line |
|------|-----------|
| **we're**(19) 16:2  19:11  21:9  22:3  28:4  33:10  35:25  37:19  43:5  61:19  75:22  102:13  102:17  106:25  143:23  143:23  148:10  161:25  165:13 | |
| **we've**(15) 30:7  34:18  35:4  36:11  40:19  46:20  56:10  68:12  92:15  105:21  106:21  115:23  125:22  164:16  172:3 | |
| **weak**(2) 144:1  189:7 | |
| **weakening**(1) 169:2 | |
| **web**(1) 39:10 | |
| **website**(1) 59:25 | |
| **wednesday**(2) 206:5  206:7 | |
| **week**(4) 14:7  201:16  203:1  211:9 | |
| **weeks**(2) 69:2  206:18 | |
| **weigh**(1) 205:6 | |
| **weight**(1) 164:21 | |
| **weighted**(2) 121:21  192:21 | |
| **weiss**(2) 7:4  10:4 | |
| **well**(100) 15:8  15:22  17:5  19:20  21:20  23:18  30:10  32:21  34:17  38:20  39:18  40:13  41:21  44:6  46:18  48:20  49:4  51:25  56:7  57:6  57:9  59:6  59:22  60:5  65:18  66:9  66:14  67:4  68:5  68:16  70:6  70:10  70:13  71:4  71:21  73:19  74:7  74:15  76:24  78:16  79:24  80:7  81:5  83:19  85:15  86:25  90:2  91:20  93:10  93:24  94:14  95:23  101:4  103:25  105:20  106:15  107:3  107:12  107:11  107:21  112:15  119:4  121:12  122:13  124:3  127:6  127:14  128:6  129:10  132:13  135:15  135:25  137:16  138:11  148:6  150:6  150:7  156:9  156:13  159:25  162:22  164:23  165:3  169:15  171:25  172:23  174:7  175:24  177:9  179:24  185:8  196:15  200:2  205:17  205:21  205:25  206:9  208:22  210:14  211:6 | |
| **wells**(1) 11:22 | |
| **went**(5) 42:16  75:23  76:1  96:23  175:8 | |
| **were**(96) 17:1  17:18  18:2  18:17  18:20  19:13  21:23  21:24  22:1  25:6  26:13  32:7  35:14  36:17  38:20  38:22  41:3  42:8  43:1  45:16  46:25  47:7  48:25  51:8  55:6  56:4  56:8  64:5  64:20  70:4  70:11  70:11  71:24  72:1  79:24  80:1  81:7  91:14  92:10  92:21  93:5  93:15  94:15  97:6  97:6  97:7  99:8  100:1  100:4  100:17  101:5  101:6  105:9  109:15  115:17  117:18  120:24  120:25  127:3  127:11  127:21  127:22  129:12  131:13  135:8  138:17  140:6  142:2  143:9  144:12  150:25  151:8  159:12  160:5  167:7  168:5  177:6  181:7  181:9  183:7  183:12  183:16  183:18  184:16  185:11  187:7  188:1  190:17  197:16  201:13  203:17  206:19  207:9  209:10  209:11 | |
| **weren't**(1) 90:1 | |
| **west**(1) 2:8 | |
| **we'll**(7) 183:4  205:6  205:15  205:15  205:24  206:5  210:21 | |
| **we're**(3) 194:19  198:11  206:8 | |
| **we've**(5) 175:19  204:25  204:25  205:3  206:22 | |
| **wharton**(2) 7:4  10:4 | |

| Word | Page:Line |
|------|-----------|
| **what**(156) 13:19  14:10  14:16  14:21  16:7  17:18  18:5  18:5  18:20  20:22  23:13  26:13  27:24  30:8  30:12  30:14  30:19  31:9  31:12  31:19  33:7  33:9  34:14  36:6  37:2  40:2  40:12  42:7  42:7  42:9  42:10  44:10  44:13  45:1  46:4  46:7  47:6  49:1  49:7  49:12  51:12  54:22  55:4  56:6  57:25  58:4  64:7  66:20  67:16  67:23  68:3  68:4  68:6  74:19  74:21  74:25  75:3  75:14  78:4  82:3  83:17  86:11  86:12  86:13  92:13  92:15  93:5  94:12  94:17  95:6  95:8  95:25  96:3  96:15  100:2  102:15  106:10  107:5  107:7  110:6  110:14  114:2  114:13  114:14  114:15  114:15  120:5  121:10  121:21  121:22  124:9  126:2  126:12  127:6  127:15  130:13  132:1  132:12  132:21  132:24  134:9  134:14  135:13  135:17  135:2  137:18  138:2  138:4  139:25  140:3  140:4  140:6  140:20  142:3  142:4  142:23  144:11  144:12  144:22  146:2  146:19  154:4  160:13  160:13  160:17  162:17  169:13  173:6  181:22  182:9  182:12  182:16  184:21  185:13  192:25  194:1  196:4  196:12  197:23  197:24  198:6  199:14  199:22  201:22  202:3  202:9  203:9  204:6  204:16  204:22  205:1  205:2  205:4  205:25  206:8  207:20 | |
| **what's**(12) 15:23  23:15  24:14  28:25  29:25  40:3  47:19  51:25  69:23  69:24  98:22  130:23 | |
| **whatever**(7) 32:6  64:25  98:8  120:14  145:20  187:24  190:6 | |
| **what's**(2) 188:3  201:23 | |
| **when**(34) 14:1  14:1  18:8  38:23  42:24  43:25  52:13  64:10  64:20  65:3  67:10  68:21  72:9  74:2  74:19  75:21  79:11  84:6  86:13  89:13  101:8  101:13  109:15  111:15  112:20  127:1  144:17  152:16  152:18  156:13  157:1  166:8  199:5  206:17 | |
| **where**(37) 19:12  24:8  32:15  51:12  55:2  65:11  65:22  72:1  72:3  77:24  83:3  84:25  86:20  89:4  90:25  100:15  101:22  116:17  120:2  121:20  145:4  151:24  153:14  153:18  153:21  160:14  160:21  160:23  162:19  168:5  181:18  181:24  182:8  183:7  184:3  193:1  193:20 | |
| **whereby**(1) 104:25 | |
| **whereupon**(1) 211:21 | |
| **whether**(72) 15:11  29:9  29:13  39:25  46:3  46:4  46:13  51:15  56:21  57:20  69:17  70:1  71:12  72:14  72:14  73:10  73:14  74:11  77:1  81:16  81:19  85:3  85:14  85:15  85:24  86:17  87:8  87:10  88:22  90:4  90:6  91:24  95:19  98:25  100:25  101:25  112:22  122:11  123:15  127:18  129:16  141:1  143:8  145:9  146:16  147:7  148:4  150:19  159:25  160:6  162:9  162:11  166:17  174:5  182:5  183:17  184:9  184:13  184:20  188:19  189:11  190:1  190:19  191:19  198:11  199:13  203:6  206:12  209:20  210:10 | |

| Word | Page:Line |
|------|-----------|
| **which**(117) 13:10  13:16  19:3  20:16  23:17  25:3  25:11  25:16  25:19  28:22  30:10  30:11  32:22  32:23  33:1  34:10  34:11  34:18  35:22  37:23  38:18  39:7  40:23  41:24  42:21  46:10  46:17  48:10  48:11  50:16  51:8  52:12  53:23  54:13  54:25  55:16  63:25  64:9  67:1  67:20  71:9  71:23  72:13  72:15  74:25  77:17  78:9  79:3  80:8  80:11  81:7  82:19  87:13  88:24  89:20  92:9  92:10  92:17  92:25  94:4  94:11  94:14  95:7  96:4  101:6  102:11  102:16  120:10  122:25  124:14  124:23  126:17  127:21  128:2  128:18  129:4  129:5  130:9  133:18  135:6  141:9  142:4  143:1  145:12  145:20  150:5  150:12  150:14  151:16  153:15  157:7  158:13  160:7  162:12  162:15  164:7  165:23  166:19  172:18  178:7  181:8  185:8  192:17  192:22  193:10  195:13  200:25  203:16  208:8 | |
| **while**(2) 17:17  165:25 | |
| **white**(1) 11:2 | |
| **whittle**(1) 32:4 | |
| **whittman**(1) 11:19 | |
| **who**(30) 18:22  18:25  41:11  59:20  62:19  62:22  78:19  79:3  79:24  80:1  83:6  83:12  87:24  87:25  99:18  99:19  126:19  127:1  129:22  129:22  130:19  133:22  145:11  177:11  190:1  190:5  194:10  207:12  207:12  207:14 | |
| **whole**(8) 30:9  64:19  134:15  191:23  191:24  192:1  195:17  198:17 | |
| **whom**(1) 23:10 | |
| **why**(43) 14:18  14:19  14:24  14:24  19:25  30:18  33:4  38:8  39:17  41:20  43:12  44:15  47:16  49:20  50:11  51:1  53:7  54:11  56:24  57:13  91:19  95:22  104:10  122:5  130:17  132:9  132:15  133:4  133:4  138:6  139:24  141:4  158:9  158:11  162:13  180:4  186:14  193:25  197:10  197:15  199:4  207:21  207:2 | |
| **wide**(1) 84:1 | |
| **widely**(2) 115:22  115:24 | |
| **wiley**(1) 3:24 | |
| **will**(107) 13:19  13:22  13:23  14:13  14:16  16:13  20:8  28:2  28:6  30:16  30:22  33:24  34:8  37:25  38:4  39:11  39:23  39:24  43:8  44:9  45:2  45:9  45:20  46:6  46:17  48:12  49:7  49:25  52:17  53:15  53:21  55:24  56:1  59:5  60:13  60:16  61:24  62:6  62:10  63:15  64:17  65:1  65:4  65:12  65:16  65:24  66:7  66:18  66:22  67:12  67:16  70:22  72:5  72:1  73:11  75:22  76:15  78:19  79:3  83:6  86:11  87:3  87:25  88:6  88:17  89:1  99:19  101:19  101:24  102:4  104:14  105:19  106:5  106:11  108:1  133:22  135:9  135:18  135:19  136:22  146:7  148:18  150:15  150:19  151:25  155:19  161:15  162:5  165:21  167:8  171:5  171:7  175:1  176:20  200:20  202:6  202:14  204:4  204:5  205:11  205:12  205:19  205:19  206:2  206:25  211:19  211:20 | |
| **william**(2) 3:39  5:20 | |
| **willing**(3) 139:18  164:11  167:18 | |
| **wilmer**(1) 10:35 | |
| **wilmington**(14) 1:12  1:37  2:9  2:25  2:44  3:21  3:31  3:41  4:9  4:35  4:42  5:22  13:1  209:5 | |
| **wilson**(1) 8:40 | |
| **win**(2) 165:15  165:21 | |
| **winning**(1) 184:5 | |
| **wise**(1) 130:23 | |
| **wish**(1) 204:3 | |
| **wishes**(1) 203:21 | |

| Word | Page:Line |
|------|-----------|
| **with**(299) 13:8  13:24  14:25  15:10  17:3  17:3  17:14  17:18  18:5  18:20  18:23  19:2  19:22  24:20  25:15  26:4  26:5  28:8  29:1  29:4  29:10  29:11  30:23  32:25  34:15  34:24  35:1  35:12  35:16  35:19  35:24  36:1  36:5  36:10  36:13  36:20  37:7  37:21  37:22  38:6  38:9  38:14  38:21  38:24  39:2  39:9  39:15  43:10  44:2  44:3  46:12  47:4  48:1  48:23  48:25  49:7  49:15  50:9  50:24  51:13  52:11  52:15  53:4  55:5  55:24  56:10  56:18  57:5  58:2  58:3  58:5  58:23  60:11  61:3  61:19  61:10  62:21  62:24  62:25  63:4  63:19  64:3  64:9  64:21  65:4  65:25  66:14  68:25  69:5  70:22  72:21  73:1  73:23  74:7  74:21  74:24  75:11  75:17  76:11  76:14  76:18  76:18  77:5  77:6  78:2  78:7  79:5  80:4  82:4  83:7  85:6  85:11  86:25  87:9  87:22  88:21  89:12  89:16  90:19  91:6  91:7  91:10  91:15  92:24  94:22  94:25  95:7  96:15  96:16  96:17  98:23  100:4  100:9  100:17  101:7  101:9  102:3  102:6  102:6  102:7  103:4  104:12  104:21  104:22  105:3  105:4  106:1  106:24  107:10  107:18  108:8  108:21  110:4  110:5  110:8  112:12  113:2  113:9  113:13  114:5  114:18  115:3  115:5  115:10  115:15  115:21  115:23  116:11  117:2  118:23  119:3  120:8  120:9  120:10  121:12  122:24  124:25  125:11  126:14  126:25  128:15  128:16  128:16  128:17  129:20  129:21  129:24  130:21  130:22  131:10  131:19  131:23  132:7  133:16  134:8  137:5  137:9  137:10  137:13  137:16  138:7  138:8  139:4  140:6  143:8  143:10  145:3  146:9  147:20  147:23  148:4  148:23  150:21  151:1  151:8  151:12  151:15  152:7  152:8  156:16  157:11  157:17  158:17  158:17  158:23  159:3  159:19  160:6  161:6  161:16  161:17  161:21  161:23  162:4  164:1  164:4  164:11  165:15  166:14  167:12  167:15  168:2  168:16  169:19  170:7  170:18  170:24  171:13  171:21  172:14  174:3  174:8  175:22  175:23  177:7  177:10  181:6  182:18  184:3  184:22  184:25  185:2  185:6  186:5  186:16  186:21  187:18  188:19  188:20  189:18  190:3  193:12  195:11  195:14  197:17  197:25  198:4  199:13  200:4  201:5  201:9  203:21  204:9  204:25  205:8  205:22  206:20  206:21  206:21  206:25  209:17  210:3  211:8 | |
| **withdraw**(1) 196:16 | |
| **withdrawn**(1) 59:22 | |
| **withhold**(1) 56:22 | |
| **within**(13) 23:25  44:17  67:1  67:5  71:18  102:19  105:8  128:6  128:6  142:11  189:10  190:14  199:25 | |
| **without**(15) 21:5  22:13  44:3  48:6  104:3  104:17  125:2  153:19  156:22  156:23  160:6  171:24  184:22  185:1  190:4 | |
| **witness**(28) 20:7  20:8  22:19  22:21  23:3  25:20  26:22  48:21  49:2  58:24  68:22  100:22  104:1  105:16  106:10  106:18  107:15  108:7  108:8  108:21  111:4  111:14  112:1  123:13  148:3  185:3  196:10  196:11 | |
| **witness's**(1) 141:7 | |
| **witnesses**(2) 206:20  213:4 | |
| **wnyw**(1) 25:17 | |
| **womble**(1) 4:32 | |
| **won**(1) 186:10 | |
| **won't**(1) 21:12 | |
| **wonder**(1) 197:10 | |
| **wonderful**(1) 165:2 | |
| **wonders**(1) 199:4 | |
| **won't**(1) 208:9 | |
| **word**(2) 30:15  104:12 | |
| **words**(14) 36:8  48:24  51:9  66:20  68:3  68:8  68:16  83:4  102:4  168:24  169:1  169:2  181:25  182:16 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **work**(8) 17:22 24:14 60:1 60:6 114:10 130:18 207:22 207:22 | | **wouldn't**(7) 127:4 130:6 137:7 144:15 165:21 167:24 174:11 | | **you**(301) 13:13 13:15 13:17 14:10 14:11 14:14 14:19 14:24 15:22 15:23 15:24 16:25 17:5 17:7 17:9 17:18 17:21 17:23 18:5 18:8 18:15 18:20 19:5 19:9 19:13 19:16 19:17 20:3 20:4 20:21 20:23 22:14 23:2 23:4 23:5 23:10 23:21 24:1 24:8 24:11 24:23 26:10 26:11 26:13 26:18 26:24 28:5 28:8 28:11 29:16 30:18 32:2 32:16 33:7 33:19 35:9 36:1 36:6 37:2 37:3 38:6 38:20 38:23 39:2 39:13 39:15 39:22 40:9 40:24 41:13 42:3 42:6 43:9 43:20 44:11 44:16 45:1 45:5 46:23 47:4 47:12 47:14 48:14 49:6 50:7 50:9 50:11 50:14 50:24 51:25 53:4 53:23 54:19 55:11 55:24 56:2 56:6 56:18 56:18 56:21 56:24 57:10 57:17 57:20 58:22 59:8 59:9 59:11 59:12 59:17 59:20 59:22 60:8 60:11 60:18 60:13 61:10 61:22 62:3 62:10 62:21 62:25 63:4 63:18 63:18 63:21 63:24 63:25 64:5 64:19 64:20 64:24 65:7 65:25 66:14 67:10 67:10 67:20 68:21 68:25 69:17 69:25 70:1 70:4 70:7 70:8 70:10 70:11 70:16 70:18 70:22 71:5 71:5 71:7 71:8 71:10 71:12 71:19 71:21 71:22 72:6 72:9 72:21 72:24 73:1 73:6 73:7 73:8 73:24 73:24 74:19 74:20 74:24 75:3 75:7 75:9 76:9 76:11 76:12 76:18 76:24 77:1 77:5 77:11 77:15 77:16 77:20 77:21 77:23 78:1 78:2 78:3 78:7 78:11 78:18 78:18 79:5 79:11 79:18 80:1 80:4 80:19 80:20 80:24 81:3 81:5 81:6 81:7 81:8 81:11 81:15 81:21 82:2 82:3 82:6 82:10 82:17 82:24 82:14 83:1 83:6 83:10 83:22 83:25 84:5 84:10 84:11 84:13 84:22 85:10 85:20 86:2 86:8 86:25 87:5 87:19 89:5 89:6 89:12 89:16 89:23 89:24 90:3 91:3 91:7 91:9 91:22 92:1 92:7 92:9 93:5 93:5 93:16 93:20 93:22 93:24 94:11 94:18 95:1 95:14 95:16 96:9 96:10 96:19 97:2 97:17 97:19 97:24 98:16 98:23 98:25 99:8 99:10 99:11 99:16 99:18 99:22 99:25 100:5 100:9 100:23 100:25 100:25 101:8 101:13 101:1 101:15 101:22 102:4 102:11 102:14 102:17 102:20 103:5 103:15 104:2 104:10 104:13 104:18 104:21 | | **you**(301) 104:22 105:3 105:5 105:7 105:11 105:12 105:12 105:13 105:14 105:7 107:12 107:13 107:14 108:11 108:23 108:24 109:1 109:6 109:10 109:13 109:14 109:15 109:15 109:18 109:24 110:11 111:15 111:15 112:5 112:7 112:11 112:11 112:12 112:20 112:3 112:9 113:14 113:15 113:16 113:19 113:19 113:20 113:21 113:22 113:22 113:22 114:8 114:9 114:17 114:22 114:25 114:25 115:1 115:2 115:17 115:22 115:25 116:10 117:10 117:11 117:12 117:22 117:24 118:3 118:6 118:11 118:12 118:18 118:20 118:23 119:5 119:6 119:6 119:8 119:9 119:11 119:16 120:12 120:17 120:24 120:25 121:2 121:2 121:3 121:3 121:7 121:9 121:10 121:14 121:16 121:16 122:5 122:11 122:23 122:25 122:25 123:1 123:2 123:3 123:10 123:25 124:1 124:6 125:7 125:10 125:11 125:14 126:2 126:2 126:12 127:6 127:15 127:18 127:24 128:19 128:19 128:21 128:23 128:25 129:9 129:11 130:4 130:10 131:9 131:9 131:10 131:10 131:12 131:23 132:7 132:15 132:18 132:20 132:21 134:7 134:9 134:9 134:14 134:23 135:10 135:13 135:16 135:25 136:1 136:1 136:6 136:9 136:22 137:1 137:7 137:8 138:1 138:2 138:15 138:17 138:18 139:3 139:5 139:10 139:12 139:16 139:21 140:6 140:9 140:10 141:9 141:15 141:17 142:2 142:15 142:15 143:9 143:13 144:4 144:10 144:20 145:3 145:13 146:1 147:9 147:10 147:10 147:13 148:1 148:7 148:24 148:25 149:3 149:4 149:12 149:20 150:10 150:16 150:25 151:15 152:7 152:10 152:19 152:25 153:9 153:14 153:20 154:1 154:3 154:7 154:10 154:11 154:14 154:16 155:7 155:8 155:8 155:9 155:15 155:15 155:20 155:21 156:3 156:13 156:14 157:6 157:6 157:15 157:18 157:21 158:1 158:5 158:15 158:16 159:16 159:19 159:21 159:22 160:13 160:13 160:20 160:22 161:2 161:5 161:10 161:11 161:22 162:3 162:9 162:13 162:17 163:7 163:8 163:11 163:11 163:16 163:16 163:20 163:25 164:14 164:15 164:23 165:14 165:24 165:24 166:4 166:5 166:7 166:8 166:22 166:24 167:3 167:7 167:12 167:17 167:21 168:1 168:10 169:1 169:2 169:5 169:15 169:16 170:25 171:18 171:18 172:12 173:6 174:3 174:4 174:11 174:17 175:5 175:25 176:18 176:23 177:24 178:2 178:4 178:5 178:14 178:16 178:19 |

| Word | Page:Line | Word | Page:Line |
|---|---|---|---|
| **you'll**(7) 14:6  51:3  52:25  94:19  95:8 | | **you'd**(4) 192:20  194:20  202:11  206:12 | |
| 121:15  132:14 | | **you'll**(3) 178:17  209:19  210:14 | |
| | | **you're**(4) 184:20  186:8  186:18  192:17 | |
| **you're**(46) 17:8  28:8  30:20  54:5  64:10 | | **you've**(4) 177:18  177:20  178:1  198:21 | |
| 72:24  74:7  78:8  80:8  85:6  85:11  86:12 | | **zabel**(1) 10:23 | |
| 87:13  90:21  95:5  98:22  106:15  116:14 | | **zell**(1) 19:2 | |
| 119:7  120:5  120:5  120:7  122:3  122:10 | | **zensky**(47) 5:6  105:19  106:3  106:4  106:15 | |
| 134:11  146:14  146:14  148:2  150:6  150:8 | | 106:17  111:1  111:3  111:9  111:18  112:5 | |
| 150:8  150:20  150:23  151:24  156:14  158:2 | | 112:7  117:1  117:2  117:8  118:2  124:25 | |
| 159:3  159:6  165:14  168:20  168:21  169:15 | | 140:17  140:20  141:5  141:9  148:20  179:3 | |
| 169:21  172:12  172:14  173:9 | | 179:6  179:8  179:10  185:2  185:5  194:18 | |
| | | 194:22  195:1  195:4  195:17  195:22  196:2 | |
| **you've**(28) 18:1  19:22  24:14  40:23  53:23 | | 196:7  199:16  199:17  200:3  200:9  200:12 | |
| 54:16  61:14  117:14  117:19  118:16  119:20 | | 200:15  200:17  200:21  210:25  211:1  211:2 | |
| 119:20  120:18  121:13  121:13  132:19 | | | |
| 139:16  141:14  143:4  149:7  149:20  151:12 | | **zloto**(1) 8:7 | |
| 153:13  154:13  162:16  163:14  168:12 | | **zone**(5) 120:12  120:16  121:20  122:4  122:9 | |
| 168:12 | | **zuckerman**(4) 4:24  6:18  15:14  200:23 | |
| **young**(1) 2:4 | | **'difficulties'**(1) 178:10 | |
| **your**(301) 13:4  13:14  13:18  14:18  15:13 | | **'did'**(1) 185:13 | |
| 16:1  16:6  16:18  16:21  17:9  17:12  17:20 | | **'notably'**(1) 178:9 | |
| 17:24  18:15  20:3  20:5  20:16  20:25  21:2 | | **'tell'**(1) 185:13 | |
| 21:8  21:21  22:10  22:18  22:22  22:23  22:24 | | | |
| 23:13  23:15  24:1  24:11  25:20  25:22  25:25 | | | |
| 26:3  26:9  26:11  26:18  26:24  26:25  27:1 | | | |
| 28:25  29:16  29:25  31:11  32:19  33:1  33:9 | | | |
| 33:18  35:3  37:4  41:1  41:8  41:17  41:22 | | | |
| 42:3  42:4  42:10  42:20  43:20  45:1  45:6 | | | |
| 45:10  48:16  48:18  49:16  51:2  52:1  52:21 | | | |
| 54:18  55:4  55:14  55:20  56:9  56:23  57:3 | | | |
| 57:17  58:4  58:14  58:17  58:21  59:2  59:3 | | | |
| 59:3  59:10  59:23  59:25  60:3  60:7  64:2 | | | |
| 64:7  68:8  68:9  68:11  68:25  69:8  69:14 | | | |
| 69:22  69:24  70:4  70:12  70:18  71:14  71:22 | | | |
| 72:10  74:2  75:10  76:12  76:25  77:4  77:15 | | | |
| 77:16  79:21  80:13  80:19  80:25  81:5  81:6 | | | |
| 81:18  81:22  81:25  82:2  82:6  82:8  83:15 | | | |
| 83:23  83:25  84:13  84:25  85:19  87:8  87:10 | | | |
| 87:15  87:17  87:22  88:23  88:25  89:8  91:3 | | | |
| 91:17  92:4  92:13  93:23  94:1  94:8  94:13 | | | |
| 95:3  95:18  97:8  97:8  98:11  98:14  100:21 | | | |
| 101:8  101:8  101:17  102:13  103:7  103:16 | | | |
| 103:16  105:4  105:15  106:3  106:20  106:20 | | | |
| 107:5  107:24  108:5  108:7  108:13  108:13 | | | |
| 108:18  108:19  108:20  108:25  109:16 | | | |
| 109:18  109:24  110:12  110:18  110:24  111:1 | | | |
| 111:9  111:25  112:11  112:13  112:15 | | | |
| 114:10  114:23  115:3  116:12  116:22  117:2 | | | |
| 118:2  118:6  118:16  118:23  118:24  119:17 | | | |
| 120:7  120:7  120:18  121:14  123:10  123:24 | | | |
| 124:3  124:9  124:16  124:21  125:8  125:10 | | | |
| 126:12  128:24  130:2  130:13  131:12  135:25 | | | |
| 137:15  137:24  137:25  138:21  139:1  139:3 | | | |
| 139:5  139:9  139:21  140:17  140:24  141:16 | | | |
| 143:10  146:9  147:14  147:16  147:19  148:1 | | | |
| 148:10  148:14  148:17  148:17  148:22  149:2 | | | |
| 149:15  149:24  149:25  150:7  151:6  151:14 | | | |
| 152:11  152:15  153:5  154:1  154:13  155:11 | | | |
| 155:18  155:25  156:10  157:3  158:5  159:21 | | | |
| 159:22  160:14  160:15  161:4  161:14  161:25 | | | |
| 164:1  164:23  165:23  166:22  168:13 | | | |
| 168:25  170:2  170:24  172:2  173:20  175:10 | | | |
| 177:17  178:25  179:7  179:10  180:2  180:5 | | | |
| 180:10  180:12  180:17  181:1  181:16  181:16 | | | |
| 182:4  182:5  182:11  182:12  182:17  183:5 | | | |
| 183:16  183:17  185:3  185:7  185:7  185:9 | | | |
| 185:17  186:1 | | | |
| | | | |
| **your**(54) 187:10  187:19  189:6  189:25 | | | |
| 190:12  190:25  191:11  194:15  194:18 | | | |
| 194:23  195:4  196:5  196:7  196:9  196:16 | | | |
| 199:6  199:9  199:16  199:18  200:1  200:12 | | | |
| 200:15  200:19  200:22  201:20  201:25  202:2 | | | |
| 202:15  202:21  203:23  204:13  204:16 | | | |
| 204:19  204:22  205:13  205:22  206:7  206:11 | | | |
| 206:16  206:16  207:3  207:4  208:4  208:14 | | | |
| 208:24  209:3  209:4  209:16  209:16  210:11 | | | |
| 210:17  211:1  211:3  211:10 | | | |
| | | | |
| **yours**(1) 14:16 | | | |
| **yourself**(3) 50:14  117:11  117:11 | | | |