**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:  April 18, 2011 at 4:00 p.m.**<br>**Hearing Date:  April 25, 2011 at 1:00 p.m.** |
| | **Related Docket Nos.: 8478** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
SAM ZELL'S MOTION FOR CLARIFICATION THAT LEAVE IS NOT NECESSARY,
OR IN THE ALTERNATIVE, FOR LEAVE, TO SERVE
MOTION FOR RELIEF UNDER RULE 9011**

The Official Committee of Unsecured Creditors of the Tribune Company and its various debtor-subsidiaries (the "Committee" or "UCC") hereby submits its objection to the motion of Sam Zell ("Zell") for clarification that leave is not necessary, or in the alternative, for leave, to serve a motion for relief under Rule 9011 of the Federal Rules of Bankruptcy Procedure [D.I. 8478] ("Zell Clarification Motion").

In support of its Objection, the Committee respectfully submits as follows.

## I.    PRELIMINARY STATEMENT

1.    The Zell Clarification Motion should be denied because service by Zell of his Rule 9011 motion (the "Rule 9011 Motion") would violate the letter, spirit and purpose of the heavily-negotiated agreed Order entered by the Court on October 27, 2010 (D.I. 6150, the "UCC Standing Order").  That Order granted the Committee standing to file certain adversary proceedings (the "LBO Actions") on behalf of the Debtors' estates, subject to certain conditions designed to prevent the lapse of important statutes of limitation while not prejudicing the parties'

rights to prosecute the LBO Actions after confirmation (or denial of confirmation) of plans of reorganization.

2.     Specifically, in connection with the Committee's grant of authority to file and prosecute the LBO Actions, the parties agreed, and the Court ordered, that pending a "Termination Event" defined to coincide with the confirmation or withdrawal of support of the plan of reorganization jointly proposed by the Debtors, Committee, and certain senior lenders (the "DCL Plan"), **all** motion practice in connection with the LBO Actions would be subject to a broad stay (the "Stay"). In this way, the Debtors' estates would be sure to preserve the statutes of limitations with respect to the full panoply of potential claims that could be brought against multiple parties, and all potential plaintiffs' rights would be preserved pending the litigation and resolution of disputes in connection with the confirmation of multiple plans of reorganization.

3.     Although the Zell Clarification Motion would seek "only" to effectuate service of the Zell Rule 9011 Motion, such service plainly would violate the UCC Standing Order – the Zell Rule 9011 Motion is precisely the kind of motion practice that is prohibited by the express terms of the UCC Standing Order pending a Termination Event.[1] Moreover, granting the Zell Clarification Motion would also violate the purpose of the Stay, which was to allow the parties to focus exclusively on conducting the plan confirmation proceedings which will determine who, if anyone, ultimately will prosecute the LBO Actions. Of course, the confirmation proceedings continue to occupy the time and attention of the Court and the parties in interest, including the Committee, and are not expected to be completed until late May 2011 at the earliest. Motion

---

[1] By his Clarification Motion, Zell seeks leave only to serve the Rule 9011 Motion. There is no dispute that Zell has not yet served that Motion, and thus no dispute that the 21-day "safe harbor" period provided in Rule 9011(c)(1)(A) has not been triggered. Moreover, as Zell acknowledges (Zell Clarification Mot. at 1), leave of Court would be necessary before he could file his Rule 9011 Motion in advance of a Termination Event.

practice in connection with the LBO Actions is particularly inappropriate now, when the Committee is focused on myriad critical plan confirmation activities, including resolution of evidentiary issues, trial, plan amendments, briefing, and continued negotiations among the DCL Plan proponents and the Noteholder Plan proponents. Service of the Zell Rule 9011 Motion would be more than merely a distraction – it would trigger the Committee's obligation pursuant to Rule 9011(c)(1)(A) of the Federal Rules of Bankruptcy Procedure to withdraw or correct its allegations and claims against Zell within 21 days (unless the Court sets another time period) or face a motion for sanctions. At this crucial point in the bankruptcy process – and when there simply is no prejudice to Zell in waiting – the Committee should not have to divert substantial attention away from the plan confirmation activities to join motion practice with Zell. Forcing the Committee to address the Zell Rule 9011 Motion would cause precisely the disruption to the bankruptcy proceeding that the Stay was put in place to avoid.

4.      In addition, service of the Rule 9011 Motion would be inappropriate and premature because the Committee was granted standing to file the complaints in the LBO Actions to preserve all valuable claims on behalf of the Debtors' estates, not to immediately litigate those claims during the complex plan confirmation process. With a statute of limitations threatening to extinguish claims after December 8, 2010, it was incumbent on the Committee to file the LBO Actions to ensure that all colorable and potentially valuable estate claims would be preserved. It is unclear at this point, however, whether the Committee ultimately will be the party charged with litigating the LBO Actions after the Stay is lifted. Under either of the two competing plans of reorganization, a litigation trust will be formed and vested with the authority to prosecute the LBO Actions as it sees fit, including the claims against Zell. Obviously, no litigation trust yet exists. It would be unfair to the Committee and to all parties in interest to

3

allow Zell to initiate a process that could affect potentially valuable claims of the estates without giving the party most likely to prosecute those claims an opportunity to participate in the process.

     5.     The Court should confirm that the UCC Standing Order bars service of the Zell Rule 9011 Motion, and should deny Zell's request for leave to serve that motion.

## II.    FACTUAL BACKGROUND

     6.     The UCC Standing Order states in relevant part:

> [A]pplicable deadlines, other than those applicable to the discovery permitted in this Order, are suspended during the period of the Stay. All motion practice (other than motions respecting confidentiality, motions to lift, extend or otherwise respecting the Stay, motions with respect to the discovery permitted by this Order, motions to intervene and motions regarding settlements consistent with the terms of this Order) and contested hearings or trials are prohibited...
>
> [D]uring the pendency of the Stay no defendant to the LBO Actions shall answer or otherwise respond to the LBO Actions.

UCC Standing Order at 4. By its terms, the Stay in the UCC Standing Order suspends all activity in the LBO Actions, subject to the limited exceptions set out in the UCC Standing Order itself, until the occurrence of a "Termination Event."[2] It is undisputed that none of the three defined Termination Events has occurred. Service of motions pursuant to Rule 9011 is not among the enumerated motions that are exempt from the Stay, and Zell does not contend otherwise.

     7.     In proposing and negotiating the terms of the UCC Standing Order, the Committee sought to (i) ensure that, before the statute of limitations expired, all colorable claims

---

[2] The three "Termination Events" are defined as "(i) the Committee and/or the Debtors withdraw their support from the [DCL] Plan; (ii) the Court declines to confirm the [DCL] Plan, or (iii) April 1, 2011." UCC Standing Order at 3. As noted *infra*, the Committee has moved to modify the date of the third Termination Event.

that could return value to the Debtors' estates would be preserved (by the filing of the LBO Actions) and (ii) suspend all activity in the LBO Actions except as necessary to accomplish the first goal, so that the parties could complete the complex plan confirmation process without distraction or prejudice to any party to LBO Actions. *See, e.g.*, 10/22/2010 Hearing Tr. at 26:2-15, 27:6-13, 30:8-18 (statements of special counsel to Committee); *see id.* at 48:19-25 (statement of counsel for Wilmington Trust). Zell did not object to the Stay language in the UCC Standing Order.

8.    Consistent with the above-mentioned goals and pursuant to the UCC Standing Order, on November 1, 2010, the Committee filed its initial complaints in the LBO Actions contemplated in the UCC Standing Order, one of which was *Official Committee Of Unsecured Creditors Of Tribune Company v. Fitzsimons, et al.*, Adv. No. 10-54010 (KJC). On December 7, 2010, the Committee filed an amended complaint in the *FitzSimons* proceeding. The amended complaint contains claims against Zell and entities linked to him, including the three claims against Zell that he contends "lack a reasonable basis under Rule 9011." Zell Clarification Mot. at 1.[3]

9.    Because the confirmation process is ongoing, on March 21, 2010 the Committee filed a motion to change one of the three defined "Termination Events" in the UCC Standing

---

[3] The substance of the Rule 9011 Motion is not relevant to resolution of the Zell Clarification Motion, and the Committee therefore need not and does not address the substance of Zell's Rule 9011 arguments here. Based on its preliminary review of the Rule 9011 Motion (Ex. 1 to the Zell Clarification Motion), the Committee believes that it is without legal or factual merit.

       Zell claims that there are "at least" three claims that violate Rule 9011 but does not identify any other claim besides the three described in the Zell Clarification Motion.

Order – the April 1, 2011 date – to a later date [D.I. 8469].[4]  The Committee believes that the proponents of the competing plans of reorganization all support the extension of the April 1, 2011 Termination Event in order to maintain the status quo pending the conclusion of the plan confirmation process.

## III.   ARGUMENT

### A.   Service of the Motion Would Violate the Letter and Spirit of the Stay in the UCC Standing Order

10.    The UCC Standing Order expressly authorized the Committee to assert claims against Zell and related entities, including EGI-TRB LLC.  UCC Standing Order at 2-3.[5]  Zell now wrongly contends that the very order which (i) authorized the Committee to plead claims against Zell and (ii) imposed the broad Stay of the LBO Actions nevertheless allows him to commence the process of challenging those claims during the Stay.  That reading of the UCC Standing Order is at odds with both the letter and spirit of the UCC Standing Order.

11.    First, Zell is incorrect that the UCC Standing Order permits the service of the Rule 9011 Motion, as long as he does not actually file that motion for twenty-one days thereafter. Zell claims that service would not be "motion practice" because the "mere service of a motion does not include the filing of any papers with the Court and does not ask the Court to take any action." Zell Clarification Mot. at 4.  But the text of the Rule makes plain that service is an essential component of the motion practice relating to charges of Rule 9011 violations.  See Fed.

---

[4] In its opening filing, the Committee requested that the third "Termination Event" be moved from April 1, 2011, to June 15, 2011.  Given that closing arguments are currently scheduled for June 14, 2011, the Committee expects to modify its sought relief to request a date later than June 15, 2011.  Zell filed a limited objection to the Committee's motion to modify the April 1 "Termination Event" date.

[5] The UCC Standing Order also authorized the Committee to pursue other categories of claims, including claims consented to by the Debtors.  UCC Standing Order at 3.

R. Bankr. P. 9011(c)(1)(A) (describing how to initiate sanctions proceedings "by motion"). Service of a Rule 9011 motion triggers the 21-day "safe harbor" period during which the served party must provide the movant the relief it seeks or face the motion for sanctions. Accordingly, service of the Zell Rule 9011 Motion would constitute "motion practice" which is expressly precluded by the UCC Standing Order.

12.    Initiation of the Rule 9011 motion process during the pendency of the Stay would also contravene the direction in the UCC Standing Order (at 4) that "no defendant to the LBO Actions shall . . . otherwise respond to the LBO Actions" while the Stay is in place. Zell does not and cannot contend that he will suffer any legal prejudice from holding his Rule 9011 Motion until the Stay terminates.

13.    Second, service of the Rule 9011 Motion would contravene the purpose of the stay because it would impose a substantial burden on the Committee by forcing it to take action within 21 days or face the sanctions motion. According to Zell, the Stay would not suspend the running of the 21-day "safe harbor" period. *See* Zell Clarification Mot. at 3 (arguing that the UCC Standing Order "did not purport to suspend counsel's professional obligations nor prohibit the service of motions in furtherance of that objective"); Ex. 3 to Zell Clarification Mot. (3/19/2010 email) (informing Committee of Zell's intent to file the Rule 9011 Motion 21 days after service if the Committee does not withdraw the claims against him).

14.    The parties agreed to incorporate the Stay into the UCC Standing Order and the Court put the Stay in place – without any objection by Zell – so that the parties and the Court could focus on the plan confirmation process without having to simultaneously litigate the LBO Actions. To date, the Stay has done that successfully. Service of the Zell Rule 9011, however, would run contrary to that purpose by forcing the Committee, at this critical stage in the plan

confirmation process, to divide its attention between the confirmation activities and the
*FitzSimons* litigation while the Stay remains in place. Thus, contrary to Zell's contention, the
Committee would be significantly prejudiced by the service of the Rule 9011 Motion.

15.    Third, the Court should not permit Zell's reading of Rule 9011 and of the UCC
Standing Order to set up a backdoor attack on the Committee's claims against Zell while the Stay
is pending.    The Committee respectfully submits that modifying the Stay to permit the
preemptive use of Rule 9011 would open the floodgates to other defendants in the LBO Actions
teeing up their own motions challenging the claims against them.    Such conduct would further
contribute to the diversion of attention, time and resources that the Court sought to avoid by
entering the Stay.    Since the UCC Standing Order directs that "[a]ll the rights" of defendants in
the LBO Actions are "fully preserved" during the Stay (UCC Standing Order at 4), the Court
should enforce the Stay by its terms and preclude the service or filing of any motions except
those expressly permitted by the UCC Standing Order until the Stay is lifted.

**B.    Service of The Motion Would Be Premature and Unfair To the Ultimate
Plaintiff**

16.    Finally, if the Court were to confirm either the DCL Plan or the Noteholder Plan,
the claims against Zell would be assigned to a litigation trust.    A litigation trustee, as the party
that will ultimately litigate the claims against Zell, would be the appropriate party to evaluate the
claims and decide whether to withdraw or modify them.    The point of the exercise in proposing
and obtaining the UCC Standing Order was for the Committee to preserve all claims for the
benefit of the Debtors' estates, including claims against Zell.    Such claims should remain
preserved until the likely ultimate plaintiff has an opportunity to determine whether and in what
form to pursue them.    The Court thus should reject Zell's attempt to force a premature resolution
of the claims against him.

17.    In the alternative, should the Court grant the relief sought by Zell and allow the service – but not filing – of the Zell Rule 9011 Motion during pendency of the Stay, the Court should exercise the discretion afforded it under Rule 9011(c)(1)(A)[6] and preclude Zell from filing his Rule 9011 Motion until at least 21 days after the Stay is lifted.

## IV.    CONCLUSION

For the foregoing reasons, the Zell Clarification Motion should be denied.

Dated:  April 18, 2011
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

*Counsel to the Official Committee of
Unsecured Creditors*

- and -

Thomas G. Macauley (No. 3411)
**ZUCKERMAN SPAEDER LLP**
919 Market Street, Suite 990
Wilmington, DE  19801
Telephone:  (302) 427-0400
Facsimile:  (302) 427-8242

- and –

---

[6] Rule 9011 expressly authorizes the court to prescribe the length of the period that a party serving a Rule 9011 motion must wait before filing such motion. Fed. R. Bankr. P. 9011(c)(1)(A).

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC  20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

*Special Counsel to the Official Committee of
Unsecured Creditors*