```
                 IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE


IN RE:                          )      Case No. 08-13141(KJC)
                                )
                                )
TRIBUNE COMPANY                 )      Chapter 11
                                )
                                )      Courtroom 5
                                )      824 Market Street
            Debtors.            )      Wilmington, Delaware
                                )
                                )      April 14, 2011
                                )      10:00 a.m.


                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: JAMES BENDERNAGEL, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                BY: KEN KANSA, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000


                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131


ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For Oaktree & Angelo Gordon:    Young Conaway Stargatt &
                                Taylor
                                BY: BLAKE CLEARY, ESQ.
                                BY: ROBERT BRADY, ESQ.
                                The Brandywine Building
                                1000 West Street, 17th Floor
                                Wilmington, DE 19801
                                (302) 571-6600


                                Dewey & LeBeouf
                                BY: BRUCE BENNETT, ESQ.
                                BY: JAMES JOHNSTON, ESQ.
                                BY: JOSH MESTER, ESQ.
                                333 S. Grand Ave., Ste. 2600
                                Los Angeles, CA  90071-1530
                                (213) 621-6021


For Merrill Lynch:              Potter Anderson & Carroon, LLP
                                BY: LAURIE SILVERSTEIN, ESQ.
                                BY: R. STEPHEN MCNEILL, ESQ.
                                Hercules Plaza
                                1313 North Market Street
                                6th Floor
                                Wilmington, DE  19801
                                (302) 984-6033


For Barclays:                   DLA Piper
                                BY: MICHELLE MARINO, ESQ.
                                1251 Avenue of the Americas
                                New York, NY  10020-1104
                                (212) 335-4500
For Special Committee of the
Board of Directors:             Jones Day
                                BY: LAUREN BUONOME, ESQ.
                                222 East 41st Street
                                New York, NY  10017-6702
                                (212) 326-3787


For U. S. Trustee:              United States Trustee
                                BY: DAVID KLAUDER, ESQ.
                                844 King Street, Ste. 2207
                                Wilmington, DE  19801

APPEARANCES:
(Continued)

For JP Morgan:                          Davis Polk & Wardwell
                                        BY: ELLIOT MOSKOWITZ, ESQ
                                        BY: DAMIEN SCHAIBLE, ESQ.
                                        BY: DON BERNSTEIN, ESQ.
                                        BY: MICHAEL RUSSANO, ESQ.
                                        BY: ELI VONNEGUT, ESQ.
                                        450 Lexington Avenue
                                        New York, NY 10017
                                        (212) 450-4000

                                        Richards Layton & Finger
                                        BY: ROBERT STEARN, ESQ.
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, DE  19801
                                        (302) 651-7700

For Wilmington Trust:                   Brown Rudnick
                                        BY: MARTIN SIEGEL, ESQ.
                                        185 Asylum Street
                                        Hartford, CT  06103
                                        (860)509-6519

For Official Committee
of Unsecured Creditors:                 Landis, Rath & Cobb
                                        BY: DANIEL B. RATH, ESQ.
                                        BY: ADAM G. LANDIS, ESQ.
                                        919 Market Street, Suite 1800
                                        Wilmington, DE 19801
                                        (302) 467-4400

                                        Chadbourne & Parke, LLP
                                        BY: DAVID LEMAY, ESQ.
                                        BY: HOWARD SEIFE, ESQ.
                                        BY: JAMES STENGER, ESQ.
                                        BY: DOUGLAS DEUTSCH, ESQ.
                                        BY: THOMAS MCCORMACK, ESQ.
                                        BY: ANDREW ROSENBLATT, ESQ.
                                        BY: MARC ASHLEY, ESQ.
                                        30 Rockefeller Plaza
                                        New York, NY 10112
                                        (212) 408-5100

APPEARANCES:
(Continued)

For Official Committee
of Unsecured Creditors:          Zuckerman Spaeder
(Continued)                      BY: JAMES SOTTILE, ESQ.
                                 BY: ANDREW GOLDFARB, ESQ.
                                 1800 M Street, NW
                                 Suite 1000
                                 Washington, DC 20036
                                 (202) 778-1800

For Great Banc:                  Womble Carlyle
                                 BY: THOMAS M. HORAN, ESQ.
                                 222 Delaware Avenue, Ste. 1501
                                 Wilmington, DE  19801
                                 (302) 252-4339

For DBTCA:                       McCarter & English
                                 BY: KATHARINE MAYER, ESQ.
                                 BY: DAVID ADLER, ESQ.
                                 405 N. King Street, 8th Fl.
                                 Wilmington, DE  19801
                                 (302) 984-6312

For Aurelius:                    Akin Gump Strauss Hauer & Feld
                                 BY: DANIEL GOLDEN, ESQ.
                                 BY: DAVID ZENSKY, ESQ.
                                 BY: ABID QUERSHI, ESQ.
                                 BY: PHILIP DUBLI, ESQ.
                                 One Bryant Park
                                 New York, NY 10036
                                 (212) 872-1000

                                 Ashby & Geddes
                                 BY: WILLIAM BOWDEN, ESQ.
                                 500 Delaware Avenue
                                 Wilmington, DE  19809
                                 (302) 654-1888

For Zell & EGI-TRB:              Jenner & Block
                                 BY: DAVID BRADFORD, ESQ.
                                 353 N. Clark Street
                                 Chicago, IL  60654-3456
                                 (312) 923-2975

```
APPEARANCES:
(Continued)

For Certain former Officers
And Directors:                    Connoly Bove Lodge Hutz, LLP
                                  BY: MARK PHILLIPS, ESQ.
                                  The Nemours Building
                                  1007 North Orange Street
                                  Wilmington, DE  19899
                                  (302) 884-6581

TELEPHONIC APPEARANCES:

For SuttonBrook Capital:          SuttonBrook Capital
                                  Management, LP
                                  BY: CAROL L. BALE, ESQ.
                                  (212) 588-6640


For George Dougherty:             Grippo & Elden, LLC
                                  BY: GEORGE DOUGHERTY, ESQ.
                                  (312) 704-7700


For Official Committee of
Unsecured Creditors:              Chadbourne & Park, LLP
                                  BY: MARC ASHLEY, ESQ.
                                  (212)408-5194
                                  BY: JESSICA MARRERO, ESQ.
                                  (212) 408-5100
                                  BY: FRANCISCO VASQUEZ, ESQ.
                                  (212) 408-5111
                                  BY: DOUGLAS DEUTSCH, ESQ.
                                  (212) 408-5169

                                  Zuckerman & Spaeder, LLP
                                  BY: GRAEM BUSH, ESQ.
                                  BY: ANDREW GOLDFARB, ESQ.
                                  BY: ANDREW CARIDAS, ESQ.
                                  (202) 778-1800

                                  Landis Rath & Cobb, LLP
                                  BY: MATTHEW B. MCGUIRE, ESQ
                                  (302) 467-4431
```

TELEPHONIC APPEARANCES:
(Continued)

For Bank of America:              Bank of America
                                  BY: ESTHER CHUNG, ESQ.
                                  (646) 855-6705

For Brigade Capital
Management:                       Brigade Capital Management
                                  BY: NEIL LOSQUADRO
                                  (212) 745- 9758

                                  Stutman Treister & Glatt
                                  BY: ISAAC PACHULSKI, ESQ.
                                  (310) 228-5655

For Citibank:                     Paul Weiss Rifkind Wharton
                                  BY: KIRA DAVIS, ESQ.
                                  (212) 373-3000
                                  BY: ANDREW GORDON, ESQ.
                                  (212)373-3543
                                  BY: ANDREW LEVY, ESQ.
                                  (202)223-7328
                                  BY: SHANNON PENNOCK, ESQ.
                                  (212) 373-3000
                                  BY: ELIZABETH MCCOLM, ESQ.
                                  (212) 373-3000

For Tribune:                      Sidley Austin
                                  BY: GREG DEMO, ESQ.
                                  (312) 853-7758
                                  BY: JANET HENDERSON, ESQ.
                                  BY: COLLEEN KENNEY, ESQ.
                                  (312) 853-2931
                                  BY: BRETT MYRICK, ESQ.
                                  (312) 853-1049
                                  BY: DENNIS TWOOMEY, ESQ.
                                  (312) 853-7824
                                  BY: PATRICK WACKERLY, ESQ.
                                  (312) 853-7000
                                  BY: BRYAN KRAKAUER, ESQ.
                                  (312)853-7515

```
TELEPHONIC APPEARANCES:
(Continued)

For Tribune:                    Tribune Company
                                BY: MICHAEL D. ONEAL, ESQ.
                                (312) 222-3490
                                BY: GARY WEITMAN, ESQ.
                                (312) 222-3394
                                BY: DAVE ELDERSVELD, ESQ.
                                (312) 222-4707
For Aurelius Capital
Management:                     Aurelius Capital Management LP
                                BY: MATTHEW A. ZLOTO, ESQ.
                                (646) 445-6518

                                Akin Gump Strauss Hauer & Feld
                                BY: SHAYA ROCHESTER, ESQ.
                                (212) 872-1076
                                BY: NANCY CHUNG, ESQ.
                                (212) 872-1043

For JP Morgan Chase Bank:       Davis Polk & Wardwell, LLP
                                BY: PETER KIM, ESQ.
                                (212) 450-3028

                                JP Morgan Chase Bank, NA
                                BY: SHACHAR MINKOVE, ESQ.
                                (212) 834-7174

For Barclays:                   Mayer & Brown, LLP
                                BY: AMIT K. TREHAN, ESQ.
                                (212) 506-1717
                                BY: JEAN-MARIE ATAMIAN, ESQ
                                (212) 506-2678
                                BY: MICHAEL L. SIMES, ESQ.
                                (212) 506-2607

                                Latham & Watkins, LLP
                                BY: JASON B. SANJANA, ESQ.
                                (212) 906-4587

For Partner Fund Management:    Vinson & Elkins, LLP
                                BY: LANCE A. MULHERN, ESQ.
                                (212) 237-0184
```

TELEPHONIC APPEARANCES:
(Continued)

For Eos Partners:                    Eos Partners
                                     BY: MIKE J. SCHOTT, ESQ.
                                     (212) 593-4046

For Merrill Lynch:                   Kaye Scholer, LLP
                                     BY: MADLYN G. PRIMOFF, ESQ.
                                     (212) 836-7042
                                     BY: JONATHAN AGUDELO, ESQ.
                                     (212) 836-8369
                                     BY: JANE PARVER, ESQ.
                                     (212 836-8510

For DK Partners:                     DK Partners
                                     BY: EPHRAIM DIAMOND, ESQ.
                                     (646) 282-5841

For Deutsche Bank:                   Kramer Levin, Naftalis &
                                     Frankel, LLP
                                     BY: JORDAN KAYE, ESQ.
                                     (212) 715-9489

For Jefferies & Co.:                 Jefferies & Company
                                     BY: JUSTIN BRASS
                                     (203)708-5847

For CitiGroup:                       Paul Weiss Rifkind Wharton &
                                     Garrison
                                     BY: AMY DEITERICH, ESQ.
                                     (212) 373-3688

For Nomura Securities:               Nomura Securities
                                     BY: ARTHUR KAVALIS, ESQ.
                                     (212) 667-2370

For Great Banc Trust Co.:            Morgan Lewis & Brockius, LLP
                                     BY: RACHEL MAUCERI, ESQ.
                                     (215) 963-5000

For Interested Party:                Schulte Roth & Zabel, LLP
                                     BY: KAREN S. PARK, ESQ.
                                     (212) 756-2036

```
TELEPHONIC APPEARANCES:
(Continued)

For EGI-TRB:                    Jenner & Block, LLP
                               BY: ANDREW VAIL, ESQ.
                               (312) 840-8688
For Credit Agreement
Lenders:                       Angelo Gordon & Company, LP
                               BY: GAVIN BAIERA, ESQ.
                               (212) 692-0217

                               Wilmer Cutler Pickering Hale &
                               Dorr
                               BY: MICHELLE GOLDIS, ESQ.
                               (212) 295-6329
                               BY: ANDREW GOLDMAN, ESQ.
                               (212) 230-8836

For Chandler Bigelow:          Sperling & Slater
                               BY: STEVEN C. FLORSHEIM, ESQ.
                               BY: CLAIRE P. MURPHY, ESQ.
                               (312)641-3200

For Goldman Sachs & Co.:       Goldman Sachs & Company
                               BY: SCOTT BYNUM, ESQ.
                               (212) 902-8060
                               BY: LEXI FALLON, ESQ.
                               (212) 902-0791

For Mina Faltas:               Viking Global Investors
                               BY: MINA FALTAS, ESQ.
                               (212) 672-7011

For Matthew Frank:             Alvarez & Marsal, Inc.
                               BY: MATTHEW FRANK
                               (312)371-9955
                               BY: BRIAN WHITTMAN, ESQ.
                               (312) 601-4227

For Wells Fargo:               White & Case
                               BY: SCOTT GREISSMAN, ESQ.
                               (212) 819-8567
```

TELEPHONIC APPEARANCES:
(Continued)

For Law Debenture Trust:        Kasowitz Benson Torres &
                                Friedman
                                BY: SHERON KORPUS, ESQ.
                                (212)506-1700
                                BY: CHRISTINE MONTENEGRO, ESQ.
                                (212)506-1715
                                BY: DAVID ROSNER, ESQ.
                                (212)506-1726

For Oaktree Capital
Management:                     Oaktree Capital Management
                                BY: EDGAR LEE
                                (213) 830-6415
                                BY: KENNETH C. LIANG, ESQ.
                                (213) 830-6422

For Canyon Partners:            Canyon Partners
                                BY: CHANEY M. SHEFFIELD
                                (310) 272-1062

For Robert R. McCormick
Foundation &
Cantigny Foundation:            Katten Muchin Rosenman, LLP
                                BY: JOHN SIEGER, ESQ.
                                (312) 902-5294

For Citi:                       Citi
                                BY: REBECCA SONG
                                (212) 559-9933

For One East Partners:          One East Partners
                                BY: SINA TOUSSI
                                (212) 230-4510

For Macquarie Capital (USA):    Macquarie Capital (USA)
                                BY: RUSHABH VORA
                                (212) 231-6311

For Deutsche Bank:              McCarter & English
                                BY: JOSEPH T. BOCCSSINI, ESQ.
                                (973)639-5935

TELEPHONIC APPEARANCES:
(Continued)

For Dow Jones News Wires:      Dow Jones & Company
                               BY: PEG BRICKLEY, ESQ.
                               (2140 462-0953

For Cooperstown Capital
Management:                    Cooperstown Capital Management
                               BY:  PETER COURT, ESQ.
                               (203) 552-6900


For Arrowgrass Capital:        Arrowgrass Capital Services
                               BY: DAVID DUNN, ESQ.
                               (212) 584-5946


For Bank of America:           O'Melveny & Myers, LLP
                               BY: EVAN JONES, ESQ.
                               (213)430-6236
                               BY: LYNN SIMMONS, ESQ.
                               (212) 408-2409


For Contrarian Capital
Management:                    Contrarian Capital Management
                               BY: JOSHUA TRUMP, ESQ.
                               (203) 862-8299


For Smith Management:          Smith Management
                               BY: JENNIFER WILD, ESQ.
                               (212) 418-6877

1  WILMINGTON, DELAWARE, THURSDAY, APRIL 14, 2011, 10:06 A.M.

2             THE COURT:  Good morning, everyone.

3             ALL:  Good morning, Your Honor.

4             MR. SOTTILE:  Your Honor, James Sottile of

5  Zuckerman, Spaeder, Special Counsel to the Official

6  Committee of Unsecured Creditors.  Your Honor, we've had

7  some discussions with the noteholder plan proponents about

8  how we would present, subject to the Court's views, the

9  arguments this morning and through the afternoon, which

10 involve some small modifications to what we had discussed

11 yesterday.  May I describe those and see if they're

12 satisfactory to the Court?

13             THE COURT:  You certainly may.

14             MR. SOTTILE:  Your Honor, what we would propose

15 is that the DCL plan proponents would begin by describing

16 the principal amendments to their plan of reorganization,

17 the ones contained in the second amended plan and set forth

18 their views with respect to resolicitation relating to those

19 amendments.  The noteholders would then rise and describe

20 the amendments to their plan, their views with respect to

21 resolicitation concerning the modifications to their plan,

22 and then each of us would have an opportunity to respond

23 with our views about one another's plans, resolicitation,

24 and so forth.  And in the course of that, Your Honor,

25 because the issue of senior loan sharing is addressed by the

1  noteholders' most recent amendments, we would address that

2  issue that the Court raised yesterday as well.  Once we

3  conclude that, Your Honor, which I do not anticipate should

4  take more than about an hour, we would propose to turn to

5  the objections of the noteholder plan proponents set forth

6  in the letter that Akin Gump provided Your Honor, beginning

7  with the issue of releases, exculpation, and bar order,

8  which was another issue that the Court had asked the parties

9  to address.  So we would turn to that immediately after the

10 amendments and then we would simply continue in the order of

11 their letter to go through the objections by the noteholder

12 plan proponents and then turn to the objections of the DCL

13 proponents to the noteholder plan.

14            THE COURT:  Okay.  In terms of the order of

15 addressing those issues I'm fine with that.  I do want to

16 give you my boundaries today in terms of timing.

17            MR. SOTTILE:  Thank you, Your Honor.

18            THE COURT:  I have scheduled a teleconference in

19 the courtroom for 1:00 today.  I don't anticipate it being

20 more than a half an hour.  It should be less, but I've

21 blocked out a half an hour for that.  I have a hard stop at

22 5:30 today.  I have an in chambers conference call at that

23 time.  So the time available is between now and I guess noon

24 and 1:30 and 5:30.  So the parties should satisfy themselves

25 that they can divide it equally.  I'm assuming they've had

1  those discussions already, but just so we avoid any issues

2  of you know he's 30 seconds too long.

3        MR. SOTTILE:  Thank you, Your Honor.  Your Honor,

4  our expectation is, based on our discussions, that we can

5  present all of the arguments that we've just described to

6  the Court within that time.  If it looks like we may run

7  short, then I think we'll have some equilibrium to be

8  restored with respect to each side's set of arguments.  Per

9  the Court's prior order we understand the time is to be

10 divided roughly evenly between the two sides.

11       THE COURT:  Okay.

12       MR. SOTTILE:  Your Honor, let me speak to the

13 most recent amendments to the DCL plan and set forth why

14 they eliminate two of the principal objections that the

15 noteholders have presented to the DCL plan, both in their

16 written objections, in the confirmation hearing, at opening,

17 and through evidence.

18       First of all, as the Court will recall, the

19 noteholders objected to the provision in the DCL plan that

20 gave the senior noteholders their consideration in the form

21 of all cash instead of a strip of consideration which would

22 be part debt, part equity, and cash.  And the senior lenders

23 are receiving a strip under the prior version of the DCL

24 plan, while under the prior version the noteholders would

25 get all cash.  And as the Court has heard, the noteholders

1    say the debtors valuation is in fact significantly higher

2    than is contemplated by the DCL plan.  The DCL plan is

3    premised on a valuation, as the Court heard from testimony

4    of Mr. Mondave of Lazard, on a valuation of $6.75 billion,

5    distributable enterprise value.  The noteholders say no, no,

6    no, that's not right, it's really much more money and

7    therefore this different form of consideration given to the

8    noteholders shortchanges them because if it's worth more as

9    they say, upside all goes to the senior lenders, none of it

10    goes to the noteholders, and they contend that unfairly

11    discriminates against the noteholders and violates Section

12    1129(b)(1) because the senior lenders would be getting more

13    valuable form of consideration than the noteholders.

14        Your Honor, as the Court has heard repeatedly,

15    the DCL plan proponents disagree that the valuation is

16    higher.  We continue to believe that the $6.75 billion

17    valuation on which the plan is based and on which ample

18    evidence was presented to support in the course of the

19    hearings, is the right valuation.  However, in order to take

20    this issue off the table, to eliminate this argument that

21    somehow there's unfair discrimination because outrageously

22    you're being given all cash instead of having to take the

23    risk of owning equity, let's take that off the table.  Our

24    plan amendment does so by giving the noteholders the option

25    to elect either cash if they want the certainty of cash or

1  if they prefer to take the upside potential that the value

2  either is higher now as the noteholders contend or may

3  increase in the future, they can have that choice under the

4  modifications to the DCL plan.  And if the noteholders are

5  right, they can by taking that election share in an increase

6  in value and they'll share dollar for dollar as it goes up

7  in proportion to their share of the strip of consideration.

8  Your Honor, that amendment moots out the unfair

9  discrimination objection based on the form of consideration

10 that was advanced by the noteholders and therefore narrows

11 the issues that this Court has to resolve in considering

12 confirmation of the DCL plan.

13           Your Honor, there's one other principal amendment

14 that I want to highlight for the Court that is contained in

15 the most recent version of the DCL plan.  As the Court will

16 recall, the noteholders have objected to many of the

17 releases provided for in the DCL plan and one that they have

18 spent a fair amount of intention on is the release that was

19 given to Step 1 selling shareholders.  As the Court is all

20 too well aware from the recent motion practice about state

21 law constructive fraudulent conveyance claims, that release

22 would not in any event have extended to the state law

23 constructive fraudulent conveyance claims.  Those claims to

24 the extent pursued are being pursued by individual

25 creditors.  The states no longer control those claims and

1    the states are not releasing those claims in any event.   So

2    the release that would remain under the prior version of the

3    DCL plan would have been a release for intentional

4    fraudulent conveyance against the Step 1 selling

5    shareholders.   However, in order to eliminate this objection

6    and to take another issue off the table that the Court need

7    not address, the most recent modifications to the DCL plan

8    eliminate that release.   Therefore, the Step 1 selling

9    shareholders cannot only be sued as they're about to be on

10   the state law constructive fraudulent conveyance claims, but

11   the estate claims, which are likely to be pursued via

12   litigation trust for intentional fraudulent conveyance, will

13   not be released as against the Step 1 selling shareholders.

14   They can be pursued, as can the claims against the Step 2

15   selling shareholders.   Those two changes, Your Honor,

16   eliminate two material objections that have been advanced by

17   the noteholders throughout the course of these proceedings

18   and we believe narrows at least to some extent the process

19   the Court has to go through in determining whether or not to

20   confirm the DCL plan.

21          Let me speak to the question of resolicitation,

22   Your Honor.   The amendment that I've just described for the

23   Court that gives the noteholders the option to elect a strip

24   of consideration, has an effect on the consideration that

25   goes to the senior lenders.   As they elect a strip of

1  consideration, that obviously changes the consideration that

2  goes to the senior lenders to some extent.  And we have

3  considered whether or not in light of that change,

4  resolicitation of the senior lender class is required.  We

5  do not believe it is entirely clear whether or not

6  resolicitation is required, but at an abundance of caution,

7  the DCL plan proponents do intend to proceed with a limited

8  resolicitation that would go only to the senior lenders and

9  relate to this change.  We believe that can be accomplished

10 via a short supplement to the existing disclosure statement

11 that describes this change and we will be filing before the

12 end of this week a motion that will seek this Court's

13 approval of that short supplemental disclosure and a

14 resolicitation package to go to the senior lenders.  We have

15 considered, Your Honor, whether or not that has any effect

16 on the Court's schedule for consideration of the DCL plan

17 and we believe with a little assistance from the Court that

18 it will not do so.  We will ask the Court to consider acting

19 on an expedited basis to consider the motion for approval of

20 that supplemental disclosure statement and resolicitation

21 package and if the Court were so minded we would ask the

22 Court to take that up on April the 25th.  If the Court

23 believed that that was too short a time, then we would ask

24 the Court to consider setting some date in advance of the

25 May omnibus in order to consider that, with the objective of

1  getting the resolicitation package out to senior lenders,

2  giving them the time required and then being in a position

3  to report the results of that resolicitation in advance of

4  the completion of briefing.  Your Honor, I -- we have a high

5  degree of confidence that the results of that resolicitation

6  will not result in a material change to the votes of the

7  senior lender class, which as the Court knows overwhelmingly

8  voted to accept the plan before.  We'd note, as the Court is

9  aware, that the plan proponents alone represent over $5.5

10  billion in value of the senior lender class.

11          Your Honor, I should flag a related point that

12  the motion we intend to file before the end of the week will

13  address.  We will also be seeking --

14          THE COURT:  Tomorrow is the end of the week

15  really.

16  (Laughter)

17          MR. SOTTILE:  Indeed.  We will be filing it

18  tomorrow, Your Honor.  So before maybe a little bit of a

19  euphemism, by the end of the day tomorrow, Your Honor.

20  Sorry.

21          Your Honor, the motion would also seek this

22  Court's approval of a package to go to those creditors that

23  are now under the DCL plan going to have the option of

24  electing a strip that would give them the ability to make

25  that choice if they so desire.  And in addition, the package

1  we will propose to go to those creditors that made various

2  elections under the old plan, would give those creditors the

3  opportunity if they wish to change those elections in light

4  of the various plan amendments.  None of those election

5  changes would affect the confirmation process in our view,

6  Your Honor.  They simply insure that people who made choices

7  on the previous version of the plan get a chance to consider

8  again whether they want to make different elections now in

9  light of all of the amendments.

10         Your Honor, that completes a description of our

11 plan amendments, our views and plans on resolicitation.  I'm

12 happy to answer any questions that the Court may have or to

13 yield the podium to the noteholders.

14         THE COURT:  I have none.  Thank you.

15         MR. DUBLIN:  Good morning, Your Honor.  Phil

16 Dublin, Akin Gump on behalf of Aurelius and the other

17 noteholder plan proponents.  Your Honor, I have a short,

18 small one page demonstrative that I'd like to use in

19 connection with explaining some of the changes.  The numbers

20 that are on the demonstrative are contained in the notice

21 that we filed with our second amended plan, so there's

22 nothing here that the DCL plan proponents do not already

23 have.  May I approach?

24         THE COURT:  Yes.  Thank you.

25         MR. DUBLIN:  Your Honor, the noteholder plan

1    proponents filed their second amended plan on March 28.  The

2    amendments did two things.  One, we addressed and

3    incorporated changes to resolve certain third party

4    objections that enabled us to have a shorter hearing

5    yesterday than we otherwise would have had.  We also made

6    some changes to address some of the primary objections that

7    the DCL plan proponents had to the noteholder plan.  I'm

8    just going to focus on modifications with respect to DCL

9    plan related objections.

10            Your Honor, the two primary modifications related

11   to DCL plan proponent objections related to the amount of

12   distributable enterprise value that had to be reserved under

13   our plan, as well as the form of the consideration that was

14   to be placed in our distribution trust reserve.  With

15   respect to the distributable enterprise value modifications,

16   the way we implemented distributing more DEV is through

17   adopting the sharing provisions in the senior loan credit

18   agreement.  As the Court is aware previously there was a

19   group of Step 1 senior lenders that were objecting to the

20   sharing provisions.  They did not prosecute those

21   objections.  We had noted in our disclosure statement, as

22   well as in our plan, that to the extent the Step 1 lenders

23   and Step 2 lenders did not dispute the applicability of the

24   sharing provisions that we had no objection to incorporating

25   those into our plan.  As the hearing went forward over the

1  last two weeks and no objections were raised, we thought it

2  appropriate to implement the sharing provision and in the

3  supplement provide the supplemental objection filed by the

4  DC plan proponent -- DCL plan proponents.  They praised our

5  incorporation of resolution of the sharing provision to

6  enable additional distributable enterprise value to be

7  distributed as of the effective date of the noteholder plan.

8          Now just as the Court may recall the way our

9  structure works is in order to establish the appropriate

10  reserves is for initial distributions to non-LBO creditors,

11  we give the non-LBO creditors their worst possible

12  distribution assuming that all LBO causes of action are

13  lost.  So for general unsecured creditors at the parent it's

14  about a 4.3 percent recovery.  For the senior notes who have

15  the benefit of subordination it's about 4.8 percent, so on

16  and so forth.  We then take enough extra distributable

17  enterprise value, whether it's the 6.75 billion that the DCL

18  plan proponents assert or something higher, as it will be

19  determined by the Court ultimately at the end of the day.

20  We take enough of the DEV which will be a set amount to pay

21  all non-LBO creditors in full in the event that the LBO

22  causes of action are successful.  So it's a finite amount of

23  value that we need to put in reserve.  One of the main

24  gating items as to how much value has to be put in reserve

25  is whether the Court determines it's the low PHONES claims

1 or the high PHONES claims.  The lower the PHONES claims the

2 lower the amount of reserve, the higher the PHONES claims

3 the higher the amount of reserve.  Accordingly, Your Honor,

4 based on that structure we have -- no matter what the value

5 is at the end of the day we're going to have a lot of extra

6 value because in order to have the appropriate reserve for

7 the non-LBO creditors, it's about 2.6 billion to 3.1

8 billion, again depending on the PHONES notes resolution.

9        So what do we do with all this extra value is --

10 well, it goes to the LBO lenders.  But the question is how

11 do we allocate it among the LBO lenders?  Well, we know that

12 no matter what, Step 1 is going to get a big chunk of this

13 pro rata extra DEV because at the end of the day even if all

14 the LBO debt is avoided, Step -- then we have this extra

15 value, Step 1 is guaranteed to get a distribution.  We then

16 have an allocation of a pro rata amount for Step 2 and

17 that's where the sharing resolution issue comes into play.

18 If just Step 2 is avoided, we have a question as to whether

19 Step 2 gets to share in Step 1 distributions.  Well, the DCL

20 plan proponents have taken the position that yes, Step 2

21 will always share.  So regardless of whether Step 2 is

22 avoided or not, they will essentially end up with the same

23 recovery because they'll pull away from Step 1.

24        Then there's the bridge.  Now the bridge had made

25 some arguments previously before they became party to the

1  bridge settlement under the DCL plan, that if all of the LBO

2  debt is avoided, the credit agreement no longer governs and

3  the subordination provisions at the subsidiaries no longer

4  apply.  And then there's also the possibility if all the LBO

5  debt is avoided, all the value flows up to the parent

6  company and the bridge is parody with Step 1 and Step 2 at

7  the parent company, so it was appropriate to reserve a pro

8  rata allocation for the bridge and I'll come back to the

9  bridge later.  So by implementing the sharing provisions, we

10 now are able to distribute more value to the LBO lenders on

11 day one.

12            So if I can direct your attention to the

13 demonstrative that I handed out under the heading DEV

14 Distributed as of the Effective Date, we compare the prior

15 version which was the amended noteholder plan, to the second

16 amended noteholder plan.  Now this is at a 6.75

17 distributable enterprise value.  Again we believe it's

18 substantially higher, but for illustrative purposes that is

19 what we're using today.  And this shows that under the prior

20 version of our plan the distributable enterprise value,

21 distributed as of the effective date would have ranged

22 between 34.7 percent and 51.2 percent, again based on where

23 we come out with the PHONES resolution and also sharing was

24 in dispute at that point.  Once we allow sharing to go to

25 the Step 2 lenders, it allows the minimum amount of DEV

1  distributed on the effective date to go from 34.7 percent to

2  45.3 percent and that will go directly to the Step 2

3  lenders.

4          As a result, Your Honor, we think we have

5  addressed one of the concerns raised by the DCL plan

6  proponents, which is there is too much value being held in

7  reserve.  And again with the PHONES, depending on how the

8  PHONES sharing resolution comes out, the amount of value

9  distributed just at a 6.75 valuation could reach 51.2

10  percent.

11          Now the second modification that we made to the

12  noteholder plan was to address another primary objection

13  from the DCL plan proponents.  In fact it's a request --

14  it's a change that we believe they requested at page 22 of

15  their objection where they state, "Instead of distributing

16  as much equity in reorganized Tribune as possible and

17  funding the reserve with alternative currency, the

18  noteholder plan would maximize the amount of equity that is

19  held back by funding the reserve with a 'strip of equity,

20  newly issued debt, securities, and cash.'"

21          Your Honor, they express the desire for more

22  equity to be distributed throughout their objection to our

23  plan: pages 22, 23, 24, 25, 28, 29, 45 -- in their brief in

24  support of their own plan: 65, 67, 235, 236.  And of course

25  we heard Professor Black focus on it numerous times

1  throughout the evidentiary testimony.  So what we did is we

2  took into account this concern and said okay, we can make

3  this change.  We will modify how we populate the

4  distribution trust reserve.  What we will do is we will put

5  as much cash and term loan as we can into the distribution

6  trust reserve and give the LBO lenders who are taking 100

7  percent of the equity in the prior version of their plan, as

8  much equity as we can give them.  And by doing so, Your

9  Honor, if I can direct you back to the demonstrative, we

10  have been able to modify the amount of equity distributed as

11  of the effective date on the noteholder plan from 34.6

12  percent at a low to 51.2 percent at a high, all the way up

13  to 70.5 percent at a low and 79.8 percent at a high, again

14  depending on the outcome of the PHONES notes resolution.

15            Your Honor, we are also -- a portion of the

16  distribution trust reserve is on account of the bridge

17  claims.  And we also -- for the portion that is allocable to

18  the bridge, we are reserving equity as opposed to a strip of

19  consideration as well.

20            Your Honor, based on these changes, the Step 1

21  and Step 2 lenders under our plan will receive an initial

22  distribution of equity amounting to 69 and a half percent of

23  the equity to 78.8 percent of the equity.  Again, this is at

24  a $6.75 billion valuation.  As valuation goes up they will

25  get even more equity because the amount of equity that has

1  to be put in reserve to satisfy non-LBO creditors in full

2  will go down.  And we included a chart in our notice that at

3  an 8 for illustrative purposes, an $8 billion valuation, how

4  you can see even more equity gets to go out to the LBO

5  lenders.

6              Your Honor, we believe that based on the

7  testimony elicited by the DCL plan proponents themselves, of

8  their own witnesses, that by making this modification they

9  would be very happy with us and that it would resolve all of

10  their -- I would say their equity based -- equity reserve

11  based objections to the DCL plan, but in their supplemental

12  objection they say no, that's not the case.  Now because

13  we're giving the Step 1 and Step 2 lenders all equity,

14  they're taking too much risk in the company.  This, despite

15  the fact that a week ago they were taking 100 percent of the

16  risk in the value of the company.  Well, Your Honor, the

17  value of the stock ultimately that you determine -- the

18  value of the company that you determine, the stock will

19  equal a dollar, which will equal a dollar cash, which will

20  equal a dollar term loan.  The form of the consideration

21  does not matter because the value will be the same, which is

22  different than how the plan was set up -- the DCL plan was

23  set up previously for the non-LBO creditors who were stuck

24  with that $431 million valuation recovery all cash

25  regardless of the value of the company.  So we don't see

1  where this objection comes from at this point.

2          Your Honor, we've also noted in the notice that

3  we filed that we are happy to incorporate into our plan to

4  the extent the senior lenders wish their bridge loan

5  settlement.  Now the bridge -- pursuant to the modifications

6  to our plan, that's about 12.9 percent to 14.6 percent of

7  the equity held back in respect of the bridge.  To the

8  extent the bridge settlement is implemented, all that equity

9  will go out, too, which will knock down the amount of equity

10  held in reserve on respective and non-LBO creditors to

11  between 5.5 percent and 16.6 percent at a 6.75 valuation and

12  that number of course would drop if value is higher.  Now

13  the senior lenders for the -- or the DCL plan proponents

14  have said in their supplemental objection that the senior

15  lenders did not negotiate the bridge loan settlement.  Okay?

16  If that's the case that's fine.  We told the debtors and the

17  committee, who the supplemental objection asserts did

18  negotiate the settlement, that if they want to adopt the

19  bridge loan settlement we are happy to do so and we are

20  waiting to hear back from them on that point.

21          Your Honor, in addition to those changes we,

22  after further reflection of two weeks of trial, we decided

23  to make further amendments that have not yet been

24  incorporated, but that we will make and just to touch on

25  those briefly and we did advise the debtors and the

1  committee of them yesterday.  They are both to the

2  certificate of incorporation for reorganized Tribune.

3          One of the modifications is that we will remove

4  from the certificate of incorporation what we call the

5  cooperation provisions, which required under the terms of

6  the certificate of incorporation the board and officers to

7  cooperate with the litigation trust, the creditors trust,

8  and the distribution trust.  We have provisions in the plan

9  that we believe and the trust agreements that are sufficient

10 to require that cooperation so it does not need to be set

11 forth in the certificate of incorporation.  We likewise have

12 agreed and will remove the provision in the certificate of

13 incorporation that limited the ability of officers and

14 directors to be indemnified or get the benefit of DNO

15 insurance for failure to cooperate.  Again, we will rely on

16 the contractual requirements that will be set forth in the

17 plan and the trust agreements.

18          Your Honor, that takes me to resolicitation with

19 respect to our plan.  On the issue of resolicitation first

20 with respect to the form of the consideration, we do not

21 believe that resolicitation is required.  As I mentioned a

22 few moments ago, the form of the consideration is really not

23 an issue when there's no cap on somebody's recovery.  A

24 dollar of stock is worth a dollar of cash is worth a dollar

25 of term loan.  We do not view that as a material or adverse

1    modification to our plan, but rather just a technical

2    modification in order to implement modifications requested

3    by the DCL plan proponents.

4         With respect to the sharing issue, again we had

5    in connection with our disclosure statement as well as our

6    plan, put the world on notice that if the first and second

7    lien lenders did not object to the sharing provisions we

8    would implement them.  That has been the case and we will

9    implement sharing with respect to Step 1 and Step 2.

10        Now as far as the DCL plan proponents go with

11   respect to their plan, again I -- we don't really have a

12   different view than them.  We're not really sure if

13   resolicitation is required or not.  We can understand why

14   they want to resolicit because under their prior version of

15   their plan they capped our -- the senior lender recovery

16   regardless of value and now if value goes up they are

17   rightly permitting the senior noteholders to receive the

18   benefit of the increase in value, so we can understand why

19   they're concerned, why certain senior lenders may find that

20   to be a material change.  We don't think it's material, but

21   we don't have an objection to them resoliciting, so long as

22   it does not slow down the confirmation process.

23        Your Honor, that's all I had with respect to the

24   modifications of our plan at this time and do you have any

25   questions?

1            THE COURT:  No, I don't.  Thank you.

2            MR. DUBLIN:  Thank you.

3            MR. SOTTILE:  Your Honor, let me start with an

4  unusual note of concord.  I agree with Mr. Dublin that some

5  of the amendments are helpful in ameliorating the concerns

6  of the DCL plan proponents about the noteholders plan.  In

7  particular, on the issue of sharing among the senior lenders

8  pursuant to the terms of the credit agreement, parties are

9  now in agreement that sharing would apply as between the

10  Step 1 and Step 2 lenders, irrespective of avoidance of Step

11  2, so that's not an issue that the Court need address.  No

12  one is disputing that the sharing provisions would apply in

13  that circumstance.

14            I also agree with Mr. Dublin that the amendments

15  that have the effect of freeing up some of the equity that

16  was previously reserved under the noteholders plan are

17  helpful.  One of the concerns that the DCL plan proponents

18  expressed with regard to the noteholders plan is that it was

19  likely to end up tying up more than half the equity of the

20  debtors for a substantial period of time.  While the change

21  is helpful because it's no longer as high and it would

22  appear to be likely to be in the range of 20 to 30 percent

23  as I understand the presentation by the noteholders, that

24  doesn't eliminate our concern.  We still have a very

25  substantial portion of the equity being held back.  There

1    are still provisions that would give the litigation trust

2    influence over the -- I'm sorry -- the distribution trust

3    influence over the operations of the debtors that we believe

4    is unwarranted.  So there are still live concerns, live

5    objections about the degree of equity being reserved, about

6    the degree of control of the debtors, but those concerns are

7    clearly ameliorated as Professor Black testified before Your

8    Honor on Monday by the amendments that the noteholders have

9    presented here.

10              I would note however, Your Honor, to depart from

11   that brief moment of agreement that the noteholders

12   amendments leave untouched the principal objections that the

13   DCL proponents have to the noteholders plan that we are

14   going to be addressing later today and that we will be

15   addressing in post-hearing briefs and in the closings.  And

16   as Mr. Dublin alluded to it's our view that the noteholders

17   amendments have created an additional basis for objection to

18   their plan that we will speak to this afternoon.  Senior

19   lenders are now being offered a different form of

20   consideration.  They are being offered only equity as

21   consideration under the noteholders plan and we believe that

22   raises an unlawful discrimination issue that is problematic

23   for the noteholders plan that we will address later today.

24              Mr. Dublin also described, Your Honor, some

25   changes to the noteholders plan concerning the cooperation

1   provisions with the litigation trust and exclusions from

2   indemnity with respect to failure to cooperate.  Those are

3   matters that as the Court will recall Professor Black had

4   highlighted in his testimony and their removal is helpful

5   and moots out our objections in regard to the provisions

6   that were in the prior version of the noteholders plan.

7           And Your Honor, Mr. Dublin told us at the end

8   that the 20 or 30 percent of equity that would be reserved

9   under their plan could be reduced much, much further if only

10  the DCL plan proponents were prepared to accept the

11  noteholders invitation to import the bridge lender

12  settlement under the DCL plan into the noteholder plan.

13  Your Honor, I think the Court will see pretty readily why

14  that doesn't make any sense at all to the DCL plan

15  proponents.  Under the DCL plan all of the claims against

16  the senior lenders, who are senior to the bridge lenders,

17  are being settled.  In that circumstance they are perfectly

18  content to enter into a reasonable settlement with LBO

19  lenders who are junior to them that permits the DCL plan to

20  proceed to confirmation without further objection by the

21  bridge lenders.  In a circumstance however under the

22  noteholders plan where the senior lenders are exposed to all

23  the risks of litigation, it would make no sense in the world

24  for them to agree that a class of LBO lenders who are junior

25  to them should be paid before them and be paid with

1   certainty when they face the risk of getting nothing.  Your

2   Honor, that makes no sense at all, not getting nothing -- of

3   much greater avoidance, Your Honor.  That makes no sense at

4   all and I think illustrates for the Court why the invitation

5   is an illusory one.

6           I would also note, Your Honor, that it is a bit

7   puzzling to have the noteholders who have spent months and

8   months in these proceedings and two weeks of evidentiary

9   hearings setting forth their views about the strength of

10  their claims for avoidance of the LBO debt and in particular

11  the Step 2 debt where the bridge debt is located, all of a

12  sudden be eager to embrace a settlement that they have

13  otherwise -- of bridge lender claims that they have

14  otherwise characterized as far too low.  And all I can say,

15  Your Honor, on that question is that they display a level of

16  pragmatism that has otherwise been absent from their

17  presentation to the Court concerning their plan of

18  reorganization and while I applaud the pragmatism, Your

19  Honor, I think the Court should see it for what it is.

20          Your Honor, on the question of resolicitation

21  with respect to the noteholder plan amendments, the DCL plan

22  proponents take no position on whether or not resolicitation

23  is required and leave that to the Court to evaluate in light

24  of the presentation that has been made by the noteholders.

25  Unless the Court has questions, that's -- concludes my

1   presentation with respect to our views on the amendments to

2   the noteholders plan.

3                    THE COURT:  Thank you.

4                    MR. QURESHI:  Good morning, Your Honor.  For the

5   record Abid Qureshi, Akin Gump Strauss Hauer & Feld on

6   behalf of Aurelius and the noteholder plan proponents.  Your

7   Honor, I will address very briefly the amendments to the DCL

8   plan with respect to the strip of consideration.

9                    On the positive side, Your Honor, we agree that

10  this change does resolve our unfair discrimination argument

11  under 1129(b)(1).  However the DCL proponents in their

12  notice of filing they go a little further than that, Your

13  Honor, and what they say in their notice of filing is that

14  this change and I'm quoting, further strengthens the

15  reasonableness of the settlement embodied in the DCL plan.

16  And with that, Your Honor, we strenuously disagree.  The

17  amendment does no such thing.  At the DCL proponents plan

18  value of 6.75 billion, with which we disagree, Your Honor,

19  this amendment has no impact whatsoever on the

20  reasonableness of the settlement and does absolutely nothing

21  to remedy the fact that in our view this settlement falls

22  woefully short of the 9019 requirements.  At their plan

23  value this amendment does not provide a single dollar of

24  additional consideration coming from the senior lenders to

25  settle the LBO causes of action.  So the amendment in our

1 view, Your Honor, is really nothing more than an

2 acknowledgment that the prior plan by reserving all of the

3 potential upside of owning the equity was untenable and

4 discriminatory.

5           Now, Your Honor, in their notice of filing, the

6 DCL proponents, they included a chart and what the chart

7 purports to show is how senior noteholder recoveries

8 increase if enterprise value in fact does go from 6.75

9 billion to what we think is a more accurate number which is

10 8 billion.  But what the DCL proponents ignore, Your Honor,

11 is that at $8 billion, the LBO related causes of action are

12 themselves much more valuable because, Your Honor, absent a

13 settlement if that valuation of Step 2 is avoided and Step 1

14 is not, there would be sufficient value to satisfy Step 1

15 lenders in full, senior noteholders in full, and on top of

16 that leave a 34 percent recovery for the PHONES.  And so at

17 higher plan value a settlement becomes more unreasonable,

18 not less so.

19           So Your Honor, there's one way to improve the

20 settlement that's in their plan and that is at their

21 enterprise value of 6.75 billion, to provide more

22 consideration coming from the senior lenders.  And Your

23 Honor, this amendment does no such thing.  Thank you.

24           MR. GOLDEN:  Good morning, Your Honor.  Daniel

25 Golden, Akin Gump Strauss Hauer & Feld, Counsel for Aurelius

1  and the other noteholder plan proponents.  Your Honor, I

2  will address the second major amendment to the DCL plan that

3  Mr. Sottile alluded to.  I will touch on briefly one comment

4  he made regarding the bridge settlement and then we will

5  roll into our remaining objections to the DCL plan.  One

6  point that Mr. Sottile I think inadvertently neglected to

7  mention this morning is that we have agreed that with

8  respect to both our remaining objections and then when we

9  get to the DCL's remaining objections, it will go point by

10  point.  We will raise the objection, they will have an

11  opportunity to respond.  I think in keeping with yesterday's

12  absent something way off the tracks, there won't be

13  rebuttal, all in an effort to try and get done by the hard

14  stop of 5:30.

15          THE COURT:  Thank you.

16          MR. GOLDEN:  Your Honor, Mr. Sottile mentioned

17  the other second -- the other major amendment to the DCL

18  plan.  That is their decision to remove the release of

19  claims and causes of action against the Step 1 selling

20  shareholders.  Not to look a gift horse in the mouth, we

21  accept that amendment and we do agree that it does resolve

22  one of our significant objections to their prior plan.  But

23  for reasons I will get to in a few moments when I start

24  discussing releases in general, it is our view that that

25  release should have never been granted in the first place.

1  It was granted without any consideration whatsoever for that

2  release and in some respects it's still -- a problem still

3  remains because despite excising that release with respect

4  to Step 1 selling shareholders, there's still going to be a

5  mini form of release with respect to those shareholders in

6  the form of the release to the so-called release selling

7  shareholders, which we'll talk about in a few moments.

8          And then finally, Your Honor, Mr. Sottile's

9  comments regarding the bridge settlement were puzzling to

10 us.  We thought originally that the bridge settlement had

11 been arrived at by the senior lenders.  That seemed to make

12 sense to us.  When we inquired about that we were told no,

13 the bridge -- the senior lenders were not parties and did

14 not negotiate the bridge settlement.  The bridge settlement

15 was negotiated by the debtors and the creditors committee.

16 We said great.  We offered, as Mr. Dublin said, to

17 incorporate that bridge settlement into our plan all for the

18 purpose of allowing more equity to be distributed.  The

19 equity would seem to be a couple of weeks ago the favored

20 form of consideration for the senior lenders, all with the

21 goal of distributing more equity to the senior lenders.  We

22 thought that was an inviting offer.  We are surprised to

23 hear that they have declined the offer.  It's their choice

24 to do so obviously, but it's curious why the debtors and the

25 official creditors committee, who supposedly were the

1  architects of that bridge settlement, would decline the

2  offer.  Maybe I could understand it from the senior lenders.

3  I don't understand it from the so-called fiduciaries.

4         Your Honor, turning to our remaining objections,

5  for the most part I will speak to them.  In a couple of

6  instances I will share the podium with my colleague, Mr.

7  Zensky.  And I will turn first to the issue of releases,

8  which is one of the points Your Honor specifically asked us

9  to address.

10        Your Honor, despite the recent amendments to the

11 DCL plan, their plan still provides a potpourri of broad

12 releases running to the benefit of third parties, which are

13 not supported in our view by adequate consideration and in

14 some cases any consideration at all.  In reviewing the

15 propriety of these type of third party releases, Courts in

16 the circuit generally follow or analyze them through the

17 prism of five factors commonly referred to as the zenith

18 factors.  First, whether there is an identity of interest

19 between the debtor and the proposed third party releasee

20 such that a suit against a non-debtor would deplete the

21 estate's resources.  Second, whether a substantial

22 contribution was made to the plan by the non-debtor proposed

23 releasee.  Three, whether the proposed release is necessary

24 for an effective reorganization.  Four, whether there is

25 overwhelming acceptance of the plan with a focus on those

1  creditors who were most affected by the plan.  And five,

2  whether the plan provides for payment of all or

3  substantially all of the claims of creditors and interest

4  holders.

5          Your Honor, I think you're well aware having

6  written on this topic many times, it is the burden of proof

7  on the plan proponent to justify the releases.  As an

8  initial matter, the original DCL plan attempted to release

9  causes of action that it didn't own.  Specifically the DCL

10 plan contemplated releases to the Step 1 selling

11 shareholders and the so-called released Step 2 shareholders,

12 which included releasing third parties with respect to state

13 law constructive fraudulent conveyance claims.  We've heard

14 a lot about that.  We had a very long and contentious

15 hearing last month.  Suffice to say that those state law

16 constructive fraudulent conveyance claims do not belong to

17 the debtors estates by virtue of their failure to commence

18 those actions within the timeframes of Section 546(a) of the

19 Bankruptcy Code.  They don't own them.  They can't release

20 them.  And we'll get to that in a few more minutes.

21         As stated, the DCL plan proponents have now

22 modified their plan to conform to that ruling and they are

23 not releasing state law constructive fraudulent conveyance

24 claims, again except with respect to the so-called release

25 stockholder parties.

1          THE COURT:  What's the new threshold or did it

2    change?

3          MR. GOLDEN:  It didn't change.

4          THE COURT:  Okay.

5          MR. GOLDEN:  I -- actually I think a category was

6    added and I will describe generally what those categories

7    are.  We believe that the continuing release granted to

8    these release stockholder parties as it relates to

9    intentional fraudulent conveyance claims, both with respect

10   to Step 1 selling shareholders and Step 2 shareholders are

11   impermissible and not supported by any consideration

12   whatsoever.

13          Incidentally, just so it's stated, the creditors

14   trust under the DCL plan has been slightly modified where

15   parties who opt in or those parties who didn't opt out of

16   the creditor trust are put -- are now put on notice that the

17   creditors trust will not pursue the so-called release

18   stockholder parties.

19          All right, Your Honor.  Let's turn to the

20   releases of estate causes of actions that they do own.  As I

21   said, the analysis is generally reviewed based upon the

22   zenith factors and we will do so as amplified by Judge

23   Walrath's recent Decision in the Washington Mutual case.

24   And we think based upon analysis of those five factors as

25   amplified by Judge Walrath, that the proposed releases that

1   remain in the debtors, creditors committee, lenders plan are

2   not legally permissible.

3          One point of clarification, Your Honor, we will

4   not touch on the DCL's proposed releases of the senior

5   lenders, the bridge lenders, their agents, the proponents

6   consisting of Oaktree, Angelo, and JPM and the settling Step

7   1, Step 2 payees because we believe that that is wrapped up

8   with the evidence we've heard, the rules of the road where

9   we were not supposed to get into the evidence and we won't.

10  We will reserve argument on that with respect to the post

11  trial briefing and the closing arguments.  So to the extent

12  that I don't talk about the senior lenders, the bridge

13  lenders, it's not because I automatically have had an

14  epiphany and I believe that their releases --

15  (Laughter)

16          MR. GOLDEN:  -- are appropriate.  It's just

17  consistent with the rulings of this Court.

18          All right.  So a review of the proposed releases

19  against the five zenith factors.  The first factor as I said

20  requires an identity of interest.  With the possible

21  exception of the proposed releases for the debtors,

22  officers, and directors who presumably have either

23  contractual or indemnification -- statutory indemnification

24  rights, we don't believe that there's been any demonstration

25  that the other proposed releases have an identity of

1    interest with the debtors.  Even where there are

2    indemnification obligations, either statutory or

3    contractual, the cases in the Third Circuit in cases like

4    Continental, Coram, Genesis, your Decision in Exide, and

5    Washington Mutual, teaches us that a naked indemnification

6    right without more is not a sufficient basis to grant those

7    releases.  The something more, the substantial contribution

8    generally takes the form of a release of significant claims

9    against the debtors estate, the making of a significant

10   financial contribution to the debtors estate, an agreement

11   to provide critical funding or financing or the making of

12   significant financial contribution to a trust established

13   pursuant to a Chapter 11 plan for the benefit of unsecured

14   creditors.  In our view it is difficult to discern how any

15   of the proposed releases under the DCL plan have made this

16   requisite showing of substantial contribution.  Cases like

17   Genesis, Health, and Washington Mutual teach us that with

18   respect to officer and directors, when they're simply doing

19   their job as they're required to do, that is not a

20   sufficient basis to satisfy the substantial contribution

21   test.

22            Turning to the next factor, the releases being

23   necessary for an effective reorganization.  Another

24   formulation of that test is a demonstration that the success

25   of the reorganization bears a substantial and direct

1  relationship to the proposed release and is hinged on the

2  approval of such release.  Your Honor, in evaluating this

3  requirement, we ask you to turn no further than to the

4  noteholder plan that doesn't have any of these releases, to

5  stand for the proposition that the reorganization of these

6  debtors are not hinged on the granting or the approval of

7  these releases.  We believe that the noteholder plan can be

8  confirmed, should be confirmed, and would provide the

9  rehabilitation efforts that the debtors have sought for now

10 more than two years without the necessity of granting those

11 releases.  So we don't believe that the DCL plan proponents

12 have made the requisite showing of necessity.

13          Fourth item turns on whether there is an

14 agreement by a substantial majority of the creditors to

15 support the non-debtor release.  This requirement generally

16 requires the impacted classes of creditors to vote on the

17 plan.  In this regard, the DCL plan proponents trumpet the

18 affirmative consenting votes of the senior noteholders, the

19 general unsecured creditors at both the subsidiaries, and at

20 the Tribune parent level.  But in our view is it -- I don't

21 think there's any real doubt who are the true impacted

22 parties under the DCL plan and we believe the answer is

23 clear, it is the senior noteholders and the PHONE

24 noteholders.  Those -- both those classes have

25 overwhelmingly rejected the DCL plan and implacably have

1  rejected the releases contained in that plan.  And we don't

2  believe -- and therefore we don't believe the fourth zenith

3  factor has been satisfied.

4            And finally the fifth zenith factor, which

5  inquires whether the plan granting the non-debtor releases

6  provided for payment of all or substantially all of the

7  creditors claimed, especially the impacted classes of

8  creditors claimed.  As Your Honor is well aware through two

9  and a half weeks of testimony, only one class, that being

10 the GUC's or the general unsecured creditors at the

11 subsidiary levels are being paid in full.  The truly

12 impacted parties, the PHONES are getting nothing under the

13 DCL plan, at least initially.  You heard some testimony --

14 you heard some argument yesterday that it's -- in their view

15 it's unlikely that there will be any value for the PHONES

16 and the senior noteholders are getting approximately a

17 third.  That's far away from what we think the fifth zenith

18 factor requires and therefore we don't believe that that

19 factor has been satisfied either.

20            Your Honor, I just would like to spend a couple

21 of minutes though because Your Honor specifically asked that

22 we review the proposed DCL plan releases under the prism of

23 the Washington Mutual case.  As Your Honor is well aware in

24 January of this year, Judge Walrath issued a very extensive

25 Decision denying confirmation in the Washington Mutual case

1    for a host of reasons, including overly broad release

2    provisions.  Judge Walrath spent a considerable amount of

3    the time in her Decision analyzing the proposed plan

4    releases and giving a fairly in-depth analysis of the

5    standard for analyzing the propriety of such proposed

6    releases.  What was interesting to me in reviewing the Judge

7    Walrath Washington Mutual Decision is the many similarities

8    between the releases she was considering in that case and

9    the releases that are being proposed in this case under the

10   DCL plan.  In fact, at times it seemed like Judge Walrath

11   was writing on the DCL plan, as opposed to the Washington

12   Mutual plan.

13            THE COURT:  Well, that ought to save me some time

14   anyway.

15   (Laughter)

16            MR. GOLDEN:  So I'd like to just spend a few

17   minutes reviewing her analysis.  First with -- again we'll

18   not touch senior lenders, bridge lenders, their respective

19   agents, Oaktree, Angelo, and JPM or the settling Step 2

20   payees.  With respect to directors, officers, and

21   professionals of the debtors, like in the Washington Mutual

22   case, the DCL plan proponents argue that there's an identity

23   of interest between the debtors on the one hand and their

24   officers, directors, and their professionals.  Judge Walrath

25   acknowledged that this may in fact satisfy the first tier or

1   the first zenith factor, but this alone does not satisfy the

2   balance of the factors.  Judge Walrath concluded in that

3   case and as we think is true here that the other four zenith

4   factors are not -- do not justify these releases.  No

5   evidence of substantial contribution.  No evidence that the

6   officers, directors, or professionals were essential for the

7   reorganization.  The plan was accepted by those classes of

8   creditors accepting the plan not because of the efforts of

9   the officers and directors and professionals of the debtors,

10  but because they were getting the recoveries that they

11  negotiated to get under the plan and significant classes of

12  creditors in Washington Mutual like here did not accept the

13  plan and voted to reject the plan.  Your Honor, let me just

14  pause and say I don't mean this to be a disparagement of the

15  debtors, their professionals, their officers and directors.

16  I'm sure that they intended to cooperate and work in good

17  faith.  We don't believe, though, under the standards

18  articulated by zenith as amplified by Judge Walrath that

19  those efforts alone, as the evidence has been presented

20  today, justify the granting of those releases.

21          Let me turn to the creditors committee, the

22  members thereof, and the committee professionals.  Here it

23  gets a little confusing because there was a reference in the

24  committee -- in the DCL memorandum of law that the releases,

25  the proposed plan releases for the committee were being

1   struck from the plan.  But as I read the plan and Your

2   Honor, you've read hundreds of them, all the action is in

3   the definitions.  And the definitions, you have to go from

4   one definition to another to another.  But as I read the

5   definitions, it appears because the committee is a plan

6   proponent that the DCL plan still is intending to grant

7   releases to the creditors committee, the members thereof,

8   and their professionals.  If I'm wrong I'm sure I will be

9   corrected.  For much the same reason that Judge Walrath

10  rejected the proposed releases for officers and directors

11  and professionals of the debtors in the Washington Mutual

12  case, she also rejected the proposed releases for the

13  committee, its members, and its professionals.  In fact, she

14  said that they had less of a stake in trying to get releases

15  because they couldn't show, they being the committee and its

16  professionals, couldn't show that they had an identity in --

17  of interest with the debtors.  Again, like the Washington

18  Mutual case, there has been no evidence here to show the

19  substantial contribution that these releases are necessary

20  for reorganization or that the accepting classes did so

21  based upon the contribution of the committee, its members,

22  or its professionals.  Judge Walrath points out that the

23  committee and its professionals and its members are getting

24  the benefits of exculpation provisions and therefore that

25  was another rationale for her denying the committee

1   releases.  Here, too, the committee, its members, and its
2   professionals are getting the benefit of exculpation
3   provisions, so we believe that that's another basis for
4   denying the object -- to denying the releases for the
5   committee, its professionals, and its members.
6          Turning to the release stockholder parties.  This
7   is a group of selling stockholders.  Here I'm going to have
8   to read a little, Your Honor, because it's -- as I said
9   before all the fun is in the details, so with respect to a
10  group of stockholders consisting of four categories: those
11  persons that redeem stock through the Tribune company 401k
12  savings plan, those persons employed by the debtors from
13  October 22, 2010 through the effective date with respect to
14  the first $100,000 of cash received from the redemption of
15  stock, those parties consisting of retiree claimants that
16  elected under the plan to receive only cash, and finally
17  those retiree claimants that elected to receive cash and
18  trust interests, but only with respect to the first $100,000
19  received from the redemption of common stock that they own.
20  Now Your Honor, I'll acknowledge that this seems to be a
21  sympathetic group, certainly more sympathetic than the other
22  proposed releasees under the DCL plan.  But that fact
23  notwithstanding, they don't satisfy any of the zenith
24  factors.  Not one of them.  And there is simply no basis to
25  support those releases.  This is especially true because

1   even though the debtors have now stricken -- struck the

2   release with respect to the Step 1 selling shareholders,

3   there's an exception here as I mentioned before.  That

4   exception is for the so-called release stockholders.  We

5   have no idea how much money we are talking about, how much

6   money is within the confines of the definition of those four

7   categories of persons.  The debtors have never disclosed

8   that amount.  I don't know whether they even know that

9   amount.  I don't know if we're talking about a couple of

10  hundred thousand dollars, probably unlikely, or we're

11  talking about tens of millions of dollars that we would be

12  giving up by virtue of granting this release to the release

13  stockholder parties.  So that fact, coupled with the fact

14  that they have satisfied none of the zenith factors,

15  suggested to us that those releases should not be confirmed.

16          Another related point that Judge Walrath

17  discussed in the Washington Mutual case, in their case there

18  were releases for related persons to release parties.  We

19  have the same construct here.  Judge Walrath ruled that

20  there was no explanation at all why this exponentially

21  expanded universe of potential release parties should get

22  the benefit of those releases and she struck those releases.

23  We say same here, Your Honor.  There is the concept of

24  released -- related persons to release parties.  You can't

25  tell under that definition who is getting a release, how

1  many people are getting a release, what they're getting a

2  release for.  We think those provisions need to be struck as

3  well.

4            Your Honor, my last item is a little bit -- it's

5  only a little bit indirectly tied to this issue of release.

6  You may recall a rather contentious hearing, many of them

7  have been contentious, but a contentious hearing where

8  Aurelius filed a motion in effect seeking a direction that

9  the debtors and the creditors committee institute all

10  available preference actions because the two-year statute of

11  limitations was about to run.  Hotly contested.  Debtors and

12  the committee called us all kinds of names for making that

13  motion and frankly I don't think Your Honor was very happy

14  that we made that motion.  We did so for one purpose and one

15  purpose only, to try and preserve as it maximized the

16  estate.  Your Honor determined, based upon the pleadings

17  filed by the debtors and the creditors committee, that the

18  Court would authorize only a subset of the potential

19  preference actions to either be instituted or tolling

20  agreements obtained in order to toll the statute of

21  limitations and the creditors committee and the debtors have

22  done so.  We haven't heard very much about those preference

23  actions since that hearing and now although it's not -- it's

24  not in the headlines.  Our reading of the DCL plan suggests

25  that all of those preference actions, either the ones that

1  were instituted or the ones for which tolling agreements

2  have been obtained, all of those preference actions are

3  going to be released under the DCL plan.  If you analyze

4  that proposed release under the zenith factors, we don't

5  think they satisfy any of them.  There's been no evidence to

6  support satisfaction of those -- of the zenith factors and

7  we believe the blanket release of all those preference

8  actions is inappropriate and should not be condoned.

9           Your Honor, I'll just speak one more minute about

10 one related topic, which is the exculpation provisions.  I

11 think that the DCL plan proponents actually did a better job

12 in tailoring their exculpation provision.  They limited the

13 exculpation protections to events that occurred during the

14 pendency of the Chapter 11 case.  They don't relate to pre-

15 petition activity.  But where they run afoul is who they

16 intend to include in the exculpation provisions and here I

17 will discuss the senior lenders, the bridge lenders,

18 Oaktree, JPM, and Angelo Gordon as plan proponents.  This is

19 not based on the evidence.  Judge Walrath said only estate

20 fiduciaries and by that she defined estate professionals,

21 the committee, their members, and the debtors and their

22 officers and directors.  Only that subset of parties,

23 labeled as estate fiduciaries, are entitled to get the

24 protections of the exculpation provision.  We think that

25 that was a correct ruling.  We think that that ruling should

1   be adopted in connection with the DCL plan, which means that

2   the expanded universe for who the DCL plan seeks exculpation

3   provisions, the plan proponents, Oaktree, Angelo, JP Morgan

4   and again related persons to the proponents, all of that

5   needs to be struck as in connection with obtaining

6   exculpation provisions.

7           And with that, Your Honor, I'm going to turn this

8   to Mr. Zensky to talk about a related topic, the bar order.

9           THE COURT:  Thank you.

10          MR. GOLDEN:  Thank you.

11          MR. ZENSKY:  Good morning, Your Honor.  For the

12  record David Zensky of Akin Gump Strauss Hauer & Feld for

13  Aurelius and the noteholder plan proponents.  Your Honor,

14  I'm going to speak to a very limited aspect of the bar

15  order, but nonetheless a very important one.  As you heard

16  Mr. Golden tell you yesterday between -- by agreement of the

17  parties for this week it's been agreed it's appropriate to

18  address the application of the bar order -- a proposed

19  application of the DCL bar order to the disclaimed state law

20  fraudulent transfer actions and whether it can apply to the

21  claims that are going into the litigation trust is an issue

22  for June.  So I'm going to confine my comments to the first

23  issue at this point, Your Honor.

24          As you know the Court has ruled that the

25  constructive fraudulent transfer actions against the

1  shareholders that arise under state law and belong to

2  individual creditors can once again have reverted to the

3  individual creditors and can be asserted and as I'm sure the

4  Court appreciates they will be asserted following the entry

5  of an order that formalizes the Court's ruling in this

6  matter.

7            THE COURT:  Still working on it.

8            MR. ZENSKY:  Yes.  Understood.  And that was not

9  intended in any way as a hint, Your Honor, just that they

10 will be brought.

11           THE COURT:  Not taken that way, Mr. Zensky.

12           MR. ZENSKY:  Now that will undeniably be a

13 litigation between non-debtors on both sides of the V,

14 certainly the individual creditors asserting non-estate

15 claims against non-debtors.  Nevertheless, following the

16 hearing we had on that matter, the DCL plan proponents

17 amended their bar order to propose inserting into it that it

18 encompass what they define as the disclaimed state law

19 avoidance actions, which are the individual creditor actions

20 we're talking about, Your Honor.  And what they would like

21 to happen is that once we go ahead and bring those actions,

22 that as with the claims that are going into the litigation

23 trust under their plan, that the shareholders when sued are

24 irrevocably barred from asserting any sort of contribution

25 claim or non-contractual indemnification claim that they may

1  have against any of the original LBO lenders or arrangers of

2  the debt or any release party for that matter.  And that

3  instead the defendants in those actions, the Step 1 and Step

4  2 selling shareholders, assert that claim back against us as

5  an offset or a judgment reduction either to eradicate the

6  judgment in its entirety or liability or reduce it

7  proportionately.  Now that not only puts a huge financial

8  risk on the individual creditors that those actions will

9  turn out to be worthless or worth far less than they should

10  be and it also puts a burden on us that is a very real

11  burden from a litigation and pragmatism perspective, to

12  litigate an issue that the individual creditors would

13  otherwise not have to litigate.  In other words, if we were

14  to pursue those actions and there was no bar order, the

15  shareholders would then pursue whatever rights they have at

16  common law for contribution or non-contractual

17  indemnification, and we wouldn't have a dog in that fight.

18  Instead the risk of that and the burden of pursuing that

19  argument is now placed on us where we have to go into those

20  litigations and say it was a fraudulent transfer, the

21  company was rendered insolvent under any or all of the state

22  law tests for fraudulent conveyance, and we may have to rely

23  and no doubt will rely on evidence concerning the bank's

24  approach to the transaction, documents from their file,

25  testimony from their witnesses, but at the same time we will

1  have the burden to say to the Court or jury in those actions

2  don't listen to what they're saying, meaning the

3  shareholders, that the fault should be shifted to the banks.

4  It's all the shareholders fault and all the liability should

5  reside with them.  So it puts us in a very kind of a catch-

6  22 from a litigation perspective which is we have to prove

7  the fraudulent transfer, but at the same time convince the

8  fact finder that none of the liability should be pushed over

9  to the banks, which is what the shareholders will be

10 arguing.

11           Now you heard argument from Counsel to the

12 directors and officers which was joined in by other parties.

13 They are fearful that the bar order, if accepted by Your

14 Honor and the DCL plan is confirmed, will not be recognized

15 or enforced by other Courts around the country.  We couldn't

16 disagree more.  We are convinced that if Your Honor upholds

17 it and if the Courts determining these third party actions

18 believe that there is a claim for contribution or non-

19 contractual indemnification, that it will be enforced

20 exactly as they would like it enforced and bar the cross

21 claim and put all the risk on us.

22           Now again I'm not going to talk to how it --

23 whether it can or should apply to the trust claims, but let

24 me tell you what makes it very different as applied to the

25 state law avoidance actions we're talking about now and what

1    takes this totally out of the normal construct and dynamic

2    in which bar orders are typically agreed to and ordered by a

3    Court.  Indeed you heard Mr. Moskowitz yesterday tell you

4    that this is a common feature of multi-party tort

5    litigation.  Well, let me tell you what the differences are

6    from our perspective, Your Honor.  The first is that these

7    claims were never estate property and are certainly not

8    estate property now and no consideration has been provided

9    to the individual creditors to take on the risk associated

10   with a proportionate judgment reduction bar order.  And

11   whatever the Court may rule about the sufficiency of the

12   consideration being provided to settle the released claims

13   that are being released under the DCL plan, these claims are

14   not being released and no consideration is being paid to

15   settle or release these claims or to impact them in any way.

16   Mr. Moskowitz said to you yesterday well, they don't want to

17   pay twice, which sounds like it makes sense, but they

18   haven't paid once with respect to these claims.  Again these

19   are outside the claims that the committee ever had standing

20   to bring or ever did bring.  So that's one major difference.

21          The second and I think this is equally if not

22   more important, Your Honor, is to think about how a bar

23   order normally is negotiated and approved.  And when Mr.

24   Moskowitz was discussing the Eichenholtz case with you

25   yesterday, I think he said this inadvertently, but he told

1    you it was the plaintiff that challenged the bar order in

2    that case and I think when he gets up here he'll tell you or

3    agree with me that that's not correct and that if you look

4    at page 482 of that case, which is 52F(3rd)(478), the Court

5    says that here it is the non-settling defendants that argue

6    that their rights to indemnification and contribution have

7    been cut off and that they've been prejudiced.  And that

8    underscores what I think is perhaps the most important

9    difference here is that when a plaintiff or a party pursuing

10   multi-party tort litigation negotiates a partial settlement

11   and agrees to a bar order that has proportionate judgment

12   reduction, which is what they have here, we all would agree

13   that the risk of a bad deal is on the plaintiff.  And I

14   think you heard Mr. Pachulski refer to this yesterday, that

15   in a proportionate judgment reduction, if the plaintiff

16   makes a mistake and takes too little from the settling

17   defendant that does not bear the right proportion to that

18   party's ultimate fault, the plaintiff is taking that risk.

19   And I think you heard Mr. Moskowitz say well, he has no dog

20   in that fight because once the bar order is entered, they

21   don't really care how liability is sorted out in these other

22   actions and that's right.  The risk is put to the plaintiff.

23   And in this case the plaintiff is the individual creditors,

24   Your Honor, who did not negotiate the bar order or receive

25   any consideration or approve of its terms.  That was Mr.

1  Sottile.  Now Mr. Sottile may get up here in June when we're

2  discussing the larger application of the bar order and he

3  may tell you yes, we recognize we're taking an enormous risk

4  in agreeing to proportionate judgment reduction and it may

5  be that as I pursue the claims or if the committee is

6  allowed to pursue them, as those claims are pursued it ends

7  up walloping us in the head that we agreed to that, but you

8  know that's the deal that we made.  Well, he didn't make

9  that deal with respect to these claims, Your Honor.  The

10 state law claims we're talking about now were never in the

11 committee complaint, they never had standing to bring them,

12 and he wasn't negotiating for consideration in respect of

13 those claims, if at all, when this settlement was being

14 discussed.  So that takes this all the way outside the

15 normal architecture and setup for a bar order and judgment

16 reduction in multi-party litigation.

17          It also goes to the issue I started my comments

18 about with respect to the burden.  In other words the

19 plaintiff pursuing multi-party litigation could say I'll

20 take on the burden as I go down the road of sorting out

21 relative fault, but again we were not at the table, we did

22 not agree with the bar order, and don't want the burden of

23 having to fight over that issue.  You know if Your Honor

24 were to approve the DCL settlement and find that the amount

25 of consideration being proffered is acceptable and

1  reasonable, they can cite that.  Let them have the burden of

2  defending whatever cross claim for -- or third party claim

3  for contribution or indemnification is brought and let them

4  point to this Court's approval of the settlement as evidence

5  that it was reasonable, but they as the party getting the

6  release should have the burden to do that and the burden

7  that they lose, it should not be put on the individual

8  creditors.

9           Now after the lenders spoke you heard the debtors

10  get up here, Your Honor, yesterday.  And the debtors said

11  this is all a big deal about nothing, Your Honor, because

12  there is no claim for contribution or non-contractual

13  indemnification that arises out of fraudulent transfer

14  litigation.  Now that may or may not be right.  We know

15  that's way down the road when we get to it.  I would refer,

16  Your Honor, to -- excuse me one second -- I believe Counsel

17  to the debtors referred you to two Decisions and I would

18  refer you to a case called Lagrone v. American Mortel Corp.,

19  which is a Delaware State Court case, Your Honor, at -- it's

20  a 2008 West Law 4152677, which discusses whether -- what the

21  standards are for non-contractual indemnification and talks

22  about how undecided and open and gray an area of law it is.

23  So I think it's difficult for anyone to come in here and say

24  that don't worry about it, there is no claim, so this will

25  not harm the creditors as they go down the road.  You

1  certainly can hear the argument and I think you heard some

2  of it at the original hearing on this issue about how

3  sympathetic and blameless the shareholders are, that hey

4  they had no choice, but to tender their shares into the

5  merger and certainly with respect to the charities.  That

6  will be played up and the argument will be as between us and

7  the banks that facilitated this transaction and received

8  hundreds of millions of dollars of fees, who should bear the

9  risk?  And that will be the argument that we will confront.

10  The shareholders will be arguing that the blame should be

11  placed on the banks and because the bar order bars them from

12  pursuing the banks, we get nothing.  Okay?  So you know I

13  can't tell you how it's going to come out and certainly

14  that's not Mr. Moskowitz's view because he gave a very

15  lengthy and well thought out argument about why he thinks

16  his client should get the benefit of a bar order.  He didn't

17  join in that argument and say this is a big to do about

18  nothing.  So while he and the lenders apparently disagree

19  with their co-proponent on whether there is a risk or not of

20  a valid non-contractual indemnification claim, what they all

21  agree about is that we should bear the risk of that and not

22  just we in the sense of parties who may receive some

23  benefits under the proposed settlement, but we should bear

24  that risk with respect to the state law claims, which this

25  Court has ruled belong to us and are not being settled.  I

1    think, Your Honor, they have the burden as you know under

2    9019 or 1129 either to -- either case to prove the fairness,

3    the equitableness and reasonableness of their proposed

4    settlement and on this issue they certainly cannot, Your

5    Honor.  The bar order should not be deemed to encompass

6    these claims.  Our plan of course has no bar order, so this

7    issue is not presented at all by our plan, Your Honor.

8              And finally, before I sit down because I know

9    there was no rebuttal today, there may be a reference and I

10   -- and you may have heard it yesterday that in the Lyondell

11   plan there was a bar order entered.  It was not objected to

12   at all there and there were no state law claims that

13   individual creditors are pursuing outside the bankruptcy

14   court.  Everything is being pursued through a litigation

15   trust.  So this particular issue was neither litigated nor

16   would have come up at all.  So we don't see that as a

17   precedent for whether a bar order should be applied in this

18   case as to the disclaimed state law fraudulent transfer

19   actions.

20             THE COURT:  Thank you.

21             MR. ZENSKY:  Thank you.

22             MR. CONLAN:  Good morning, Your Honor.  Jim

23   Conlan on behalf of the Debtor.  I'll be brief.  Mr. Sottile

24   and Mr. Moskowitz will provide the counterpoint to each of

25   the detailed assertions you just heard from Mr. Golden and

1  Mr. Zensky, but one point narrow and broad at the same time.

2  Mr. Golden referred to the debtor and the committee as so-

3  called fiduciaries in connection with the bridge settlement.

4  I take that as a compliment and I take it as a compliment

5  because believe me we've been called that and worse from the

6  other side of the courtroom as well in various times during

7  the case.  And I think when you take those two together it

8  equals fiduciary.  We absolutely along with the committee

9  orchestrated the bridge settlement, but there's a critical

10  point and that is the debtor cannot agree to leave money

11  behind for the bridge lenders without the consent of the

12  lenders.  So we and the committee are simply powerless to

13  agree to that settlement without the lenders.  That is one

14  of the fundamental features of these cases.  The debtor

15  can't make the lenders vote for a plan that they disagree

16  with any more than we can make the noteholders agree as a

17  class for a plan with which they disagree, even one that we

18  think is in their interest.  That has been a fundamental

19  dilemma and I rise to make the point that I'm sure is

20  obvious to Your Honor, but to let you know that it's obvious

21  to us as well.  The last thing I'll say before I turn the

22  podium over to Mr. Sottile is that I want to emphasize the

23  positive, as little as there may be, and that is we do

24  appreciate the changes that the noteholders made to their

25  plan.  They are helpful.  We also appreciate the changes the

1  lenders agreed to make to the DCL plan in terms of

2  converting to a strip.  There's still a big gap.  Doesn't

3  feel like an agreement is anywhere close, frankly, Your

4  Honor.

5          THE COURT:  Doesn't seem that way.  Maybe I

6  should have suggested baseball arbitration.

7  (Laughter)

8          MR. CONLAN:  What I can tell you is that we, like

9  everyone else in this courtroom, are hanging on your every

10  word.  So with that I will --

11          THE COURT:  Don't be fooled by some of the

12  questions I ask.  You know they may not necessarily reflect

13  the view you think that I'm holding.

14          MR. CONLAN:  Your Honor, boy do I understand that

15  because the interpretations of them vary, as you might

16  expect.

17  (Laughter)

18          MR. CONLAN:  With that I'll turn the podium over

19  to Mr. Sottile.

20          THE COURT:  Thank you.

21          MR. SOTTILE:  Your Honor, would the Court be

22  willing to indulge me for a two or three minute break before

23  we launch into response?

24          THE COURT:  I'll give you five.

25          MR. SOTTILE:  Thank you very much.

1            THE COURT:  Stand in recess.

2   (Recess from 11:26 a.m. to 11:37 a.m.)

3            MR. SOTTILE:  Thank you, Your Honor.  Your Honor,

4   James Sottile of Zuckerman Spaeder, Special Counsel to the

5   Official Committee.  Let me start with taking some things

6   off the table here.  There are a couple of areas where I

7   think Mr. Golden is mistaken in reading our plan and if

8   that's created by any ambiguity in the wording, we are

9   prepared to amend the wording to make it absolutely clear.

10  The plan is not intended to provide any releases for the

11  creditors committee or its professionals, only exculpation

12  provisions that I believe Mr. Golden does not object to and

13  they're certainly consistent with the standards laid down in

14  PWS and in later Decisions out of this Court.  He pointed to

15  the fact that the -- there's a release of proponents, which

16  include the creditors committee and to the extent that

17  creates an ambiguity we will fix it to make it clear that

18  there is no such release.

19            Second, Mr. Golden suggested that perhaps there

20  was a release of preference claims by the debtors.  That's

21  not the case, Your Honor.  There is not a release of

22  preference claims contained in the plan and again, we're

23  happy to work with the noteholders to eliminate any

24  potential ambiguity in the language on that question.  The

25  plan is not intended to release preference claims.

1              Let me touch for just a moment, Your Honor, on

2    the standard the Court ought to apply in evaluating the

3    various releases here.  I agree with Mr. Golden that the

4    zenith factors have been widely used by this Court and other

5    Courts in the Third Circuit and provide a good framework for

6    evaluating the propriety of such releases.  As this Court

7    and a number of other Courts have held, however, those

8    factors are neither exclusive nor is it necessary that they

9    all be satisfied.  They are instead factors that Courts

10   consider in passing on the ultimate question of whether or

11   not the releases are fair, are reasonable, and are

12   reasonably necessary in connection with the reorganization.

13   I would also note that this Court in Spansion has also

14   evaluated releases by a debtor through the prism of Section

15   1123(b)(3)(a) and notes that a release by a debtor in a plan

16   may be justified if it is a valid exercise of the debtor's

17   business judgment, if it is fair, reasonable, and the Court

18   concludes its in the best interest of the debtors estates

19   and this Court applied that standard in evaluating debtor

20   releases in Spansion and concluded that a number of those

21   releases met that standard.

22              Let me turn now, Your Honor, to the specific

23   releases that Mr. Golden has focused on and I want to begin

24   with releases of directors, officers, and employees of the

25   debtors, which I believe is where Mr. Golden focused a lot

1    of his attention.  As with releases as a whole, let me tell

2    you what is not at issue, what's not being released.  LBO

3    related causes of action against those individuals, Your

4    Honor, are not being released.  In fact, 37 of them have

5    been sued, Your Honor, in the complaint brought by the

6    committee in the adversary proceeding.  Those claims will be

7    prosecuted following the conclusion of these confirmation

8    hearings by whoever is the right party to do so.  So while

9    there are some releases, they are pretty limited in scope

10   and I'll describe them for the Court and why we believe they

11   are clearly justified.  But what isn't being released as to

12   directors, officers, employees, is the LBO related causes of

13   action that have been the focus of this bankruptcy.

14           I'd also note, Your Honor, that with respect to

15   claims that are being released, I'm not sure that anybody

16   knows what claims, if any, there are that exist that are

17   being released as to the directors, officers, and employees.

18           THE COURT:  Isn't that an argument that really

19   cuts both ways?

20           MR. SOTTILE:  Your Honor, it can be, although

21   given the enormous resources that have been devoted in this

22   case to trying to identify potential claims, I would submit

23   that the diligence that all the professionals have exercised

24   and that the parties have exercised in the last couple of

25   years, if it hasn't turned up anything, Your Honor, nothing

1  is showing on the debtors schedules, that that suggests that

2  there may not be any such claims.

3           THE COURT:  So then it follows that there's no

4  need for release.

5           MR. SOTTILE:  Your Honor, I understand that

6  argument and I appreciate the force of that argument.  I

7  would suggest however, Your Honor, that there is a need for

8  the release.  We are not talking about sophisticated

9  corporate entities, who might make a reason business

10 judgment that there's no real risk that they're going to be

11 sued.  We are talking about a number of individuals who've

12 been working for the debtors in very difficult circumstances

13 throughout the course of these restructuring proceedings,

14 not knowing whether they're going to continue to have jobs,

15 not getting, as Mr. Hartenstein testified, the compensation

16 they would normally get in a non-bankrupt entity, 37 of them

17 being sued, the rest of them facing the risk of being sued.

18          THE COURT:  Well, you know a lot of people

19 undertake professional challenges for less than that which

20 they think they should be earning because of their passion

21 for what they do.

22 (Laughter)

23          THE COURT:  Maybe that's enough.

24 (Laughter)

25          MR. SOTTILE:  Your Honor, I take the Court's

1  point --

2  (Laughter)

3          MR. SOTTILE:  -- which is somewhat particularly

4  pointed.  But I would note that you are talking here, Your

5  Honor, about people, many people who didn't have that

6  choice.  You might point to that justification or argument

7  with respect to people who came to work for the debtors

8  recently.  They accepted compensation knowing what it was.

9  That certainly doesn't apply to employees who have been with

10  the debtors throughout this process.  Through no choice of

11  their own, they've had to ride through very difficult

12  circumstances and are facing the very real risk of personal

13  liability and we submit, Your Honor, that those kinds of

14  claims, when nobody can tell you what they are, but where

15  they hang over the heads of individual employees who have

16  gone through the circumstances here, are appropriate to be

17  released in the context of a plan like this one.

18          And in fact, Your Honor, I would point out that

19  this Court in Spansion relied on precisely the argument that

20  we just made, as the Court will recall.  The Court noted

21  that there was no evidence that there were any such claims

22  and concluded that that supported the conclusion that the

23  debtors had you know engaged in a valid exercise of business

24  judgment in releasing potential claims against directors,

25  officers, and employees because it didn't appear that there

1  were any and because there were in fact, as you heard from

2  Mr. Hartenstein as we'll discuss later in evidentiary

3  argument, there was significant evidence about the effect on

4  employees of facing potential liability and more than

5  potential liability for 37 of them, who have already been

6  sued and aren't going to be released with respect to those

7  LBO related causes of action.

8          And now let me turn to the question of release

9  stockholder parties, which Mr. Golden expanded on.  There

10  are several categories of these.  Let me start with what I

11  think is the easiest one, which is participants in the 401k

12  retirement plans of the debtors that held Tribune stock and

13  had their Tribune stock sold or redeemed in the process of

14  the leveraged buyout transaction.  And Mr. Golden is right

15  that the DCL plan provides for a release of claims with

16  respect to stock tendered by the 401k plans.  And the reason

17  for that, Your Honor, is that ERISA prohibits claims against

18  401k plans that seek to alienate or assign any of the assets

19  of those plans.  And the Supreme Court in a Decision called

20  Goody [ph] held that there was no basis in the statute to

21  imply any equitable exceptions to that protection for assets

22  held within a 401k plan and since then the Courts have

23  consistently declined to find equitable exceptions.  None of

24  the statutory exceptions that would permit someone to levy

25  or garnish on or attach assets of a 401k plan apply here.

1    And so, Your Honor, the release is given because there's no

2    claim that could be asserted in any event with respect to

3    the assets held in 401k plans.  All this is doing, Your

4    Honor, is simply confirming the effect of the statute as it

5    has been construed by the Supreme Court and therefore we

6    submit, Your Honor, that that's a release that should be

7    approved by the Court.

8                Your Honor, with respect to other parties as the

9    Court will recall current employees of the debtors who are

10   employed now or employed as of October 22, 2010 and as of

11   the effective date is the relevant language, Your Honor,

12   would receive a limited release to the extent that they sold

13   shares in connection with the leveraged buyout.  That

14   limited release is the first $100,000 that those employees

15   received in connection with the leveraged buyout.  For some

16   employees that's -- that exemption would be the entire

17   amount they received.  For a number of employees, however,

18   it would be only a portion of what they received.  And those

19   employees who got more than $100,000 would not be released,

20   would continue to be subject to suit and in fact have been

21   sued for a return of the consideration they received in

22   selling their shares into the leveraged buyout.  Your Honor,

23   we believe that applying the zenith factors, applying this

24   Court's analysis in Spansion, that that release is entirely

25   appropriate.  First, we note the limited extent of the

1  release.  We're talking about $100,000 per individual.

2  Second --

3  　　　　　　THE COURT:  Well, what about the point that we

4  don't know what the aggregate amount is or do we?

5  　　　　　　MR. SOTTILE:  Your Honor, as I stand here I don't

6  know what the aggregate amount is.  We'd be happy to provide

7  the Court with an analysis of what the aggregate number is.

8  　　　　　　THE COURT:  Has it previously been disclosed

9  anywhere?

10  　　　　　　MR. SOTTILE:  Your Honor, I'm going to have to

11  turn to the debtors and ask them to address the point

12  because I confess I don't personally know.

13  　　　　　　MR. LANTRY:  Your Honor, Kevin Lantry on behalf

14  of the Debtors.  Your Honor, this number is never knowable

15  given the universe because we don't know the individual

16  holdings of all of the employees.  We know the individual

17  holdings of the top group.  The amount is not particularly

18  large.  We can quantify that and get that, but we do not

19  know and have no access to getting that, aside from deposing

20  so to speak or demanding discovery from each individual

21  employee.  But the general feeling from folks and you know

22  I'm sure we can you know if need be get you testimony from

23  that is that the holdings in excess of 100,000 are rather

24  small given the nature of the employees across the cross

25  section of the company.

1          THE COURT:  Well, I guess the point is that just

2    assuming for the moment that's to be reviewed on a business

3    judgment standard, if it's you know a couple of million

4    dollars it would be one thing, but what if it is tens of

5    millions of dollars?

6          MR. LANTRY:  Your Honor, I think the business

7    judgment that the debtors went through in this analysis was

8    reflected by Mr. Hartenstein.  It has to do with the impact

9    on the employee morale.

10         THE COURT:  I heard that and that would be a

11   factor, but the noteholders have suggested that there's

12   another factor.

13         MR. LANTRY:  The second business judgment that

14   went into this and the committee can speak to it in that

15   they certainly are focused on this, is what I would describe

16   as the cost benefit analysis, how would it be in terms of

17   the efficiency of the litigation, in terms of collecting any

18   judgments on individuals of 100,000 or less, and the thought

19   was at some point it's a waste of estate resources to be

20   pursuing that.  And we talked long and hard about where to

21   draw this line and 100,000 was based on a long discourse

22   between the debtors and the committee on a cost benefit

23   analysis.

24         THE COURT:  All right.  Thank you.

25         MR. ZENSKY:  Your Honor, can I speak to this

1    issue briefly?  I'm sorry.  David Zensky, Akin Gump Strauss

2    Hauer & Feld.  Needless to say, we sought discovery on that

3    issue during the pretrial discovery phrase and specifically

4    asked for any documents or evidence about the impact of this

5    particular issue and there was no discovery provided on

6    that.

7              THE COURT:  For reasons which have just been

8    explained I think, isn't it?

9              MR. ZENSKY:  Exactly.

10             THE COURT:  All right.  Thank you.

11             MR. SOTTILE:  Thank you, Your Honor.  I would

12   join with Mr. Lantry in the point about why this is an

13   appropriate exercise in business judgment, assuming that's

14   the right standard.  And one factor that the Court should

15   bear in mind is the extent of the release given.  The

16   release is $100,000 per individual.  Your Honor, in the

17   aggregate, the payments to selling shareholders of

18   approximate $8 billion.  Giving $100,000 exemption to a

19   limited universe of individuals, even though we don't know

20   exactly how many they are, cannot we would submit, Your

21   Honor, materially affect the ultimate ability to recover

22   sufficient amounts to pay all of the claims of those

23   creditors that are impaired under the plan.  If these causes

24   of action are successful, there are plainly ample assets out

25   there and as Mr. Lantry indicated, the litigation trust that

1  is pursuing these claims we think would make a judgment

2  similar to ours that it doesn't make sense to chase people

3  for $100,000 or less, particularly when we know that there

4  are very large holders who hold hundreds of millions of

5  dollars, held hundreds of millions of dollars worth of stock

6  that were tendered in the LBO that could readily be pursued

7  to recover those amounts.  Your Honor, in short the limited

8  release given to current employees we believe is appropriate

9  under both the business judgment test and under the zenith

10  factors because as you've heard in argument today and from

11  Mr. Hartenstein, those current employees are devoting and

12  providing substantial consideration to the estates in the

13  form of their continued service in very difficult

14  circumstances and you've heard the evidence that -- about

15  the effect on their morale and on their ability to

16  effectively continue their work through the reorganization

17  process and following it if they continue to face the risk

18  of liability on these claims and we submit, Your Honor, that

19  that is sufficient to justify the releases being provided to

20  them.

21          Your Honor, let me turn now to the retiree

22  claimants, who are also afforded a release with respect to

23  amounts that they received in tendering shares.  That

24  release is either a complete release for one group, that is

25  for those folks who elected the -- excuse me -- the cash and

1  trust option or it is a release limited to $100,000 for

2  others who elected a different option.  The retirees, Your

3  Honor, as the Court will recall, originally presented a

4  claim in these cases that aggregated some $113 million.

5  That claim was settled, Your Honor, and the settlement is

6  incorporated into the DCL plan and in connection with that

7  settlement the aggregate amount of the claims of those

8  retirees entering into the settlement was compromised at

9  $103 million.  We submit, Your Honor, that that compromise

10  provides substantial consideration to the estate to justify

11  the releases that are being provided to the retirees in

12  connection with their sale of shares into the leveraged

13  buyout.

14            THE COURT:  Mr. Sottile, let me ask you to pause.

15  My notes are in conflict here.  I thought that the

16  noteholders said that the retirees who took cash got a

17  complete release and that those who took cash and trust

18  rights had the first 100,000 exempted.  One of them is

19  backwards.

20            MR. SOTTILE:  Your Honor, I think that I misspoke

21  earlier and --

22            THE COURT:  Okay.

23            MR. SOTTILE:  -- the noteholders are correct.  My

24  apologies.

25            THE COURT:  All right.  Thank you.

1           MR. SOTTILE:  In short, Your Honor, we believe

2    that the compromise embodied in the retirees settlement that

3    is part of the DCL plan under which they gave up $10 million

4    of their aggregate claim in return for the treatment now

5    afforded under the plan provides ample consideration to

6    justify the releases with respect to the shares that they

7    sold in connection with the leveraged buyout and therefore

8    would satisfy the zenith factors.

9           Your Honor, the last subject -- actually two

10   additional subjects I want to touch on are the issue of

11   related parties and exculpation.

12          THE COURT:  Well, I do want to break at noon.  So

13   --

14          MR. SOTTILE:  Happy to proceed as the Court would

15   like.

16          THE COURT:  -- can you -- well, if you can finish

17   one or both in four minutes, the floor is yours.  If not I'd

18   prefer not to interrupt you and I'm sure you'd prefer not to

19   be interrupted.

20          MR. SOTTILE:  Your Honor, while I think I have

21   improved on some of my previous time estimates, I think it

22   would be hazardous to undertake to the Court that I could

23   conclude in four minutes.

24          THE COURT:  All right.  Well, it's always good to

25   see improvement.

1  (Laughter)

2          MR. SOTTILE:  Sometimes it is sorely needed, Your

3  Honor.

4          THE COURT:  All right.  We will recess now and

5  reconvene at 1:30.  Court will stand in recess.

6  (Recess from 11:57 a.m. to 1:35 p.m.)

7          THE CLERK:  All rise.  Be seated, please.

8          MR. SOTTILE:  Good afternoon, Your Honor.  Your

9  Honor, before I complete the argument, I wanted to report on

10 the discussion we had about timing at the lunch break in

11 light of where we are.  While we still hope to get through

12 all of the objections this afternoon, if we don't pursuant

13 to our discussion earlier this week and this morning, we

14 will divide the remaining time equally between the plan

15 proponents commencing with when we finish this argument on

16 releases since we're now addressing an issue that the Court

17 asked to address.

18          THE COURT:  Thank you.

19          MR. SOTTILE:  Thank you, Your Honor.  Your Honor,

20 there are two additional issues I want to speak to with

21 respect to releases.  The first is the release granted to

22 related parties of released persons.  And the second

23 concerns the exculpation clause.

24          Now Mr. Golden said in argument, Your Honor, that

25 we don't know what claims are being released as to the

1  related parties.  With respect, Your Honor, that's just not

2  right.  If one looks at the definitions and I would point

3  the Court to the current version of the DCL plan at Page 25

4  in definition -- the definition of released parties, Section

5  1.1.198, the relevant language as to what claims are being

6  released as to related persons of the senior lenders and

7  other parties included here, setting aside the debtors for

8  the moment is pretty clear.  There are two qualifications in

9  for a claim against a related person to be released.

10        First of all, the claim has to arise from an

11  action that is taken by the related person in its capacity

12  as a related person to somebody who's released.  So if you

13  do something that has nothing to do with your connection

14  with a senior lender and that leads to a claim, you're not

15  released for that.  It's only if the related person acts in

16  connection with its relationship because it's a subsidiary

17  of JP Morgan for example.  If it takes an action as a

18  subsidiary or former subsidiary and it's sued for that, then

19  that would satisfy the first test for such a claim to be

20  released.

21        The second test is that the claim at issue has to

22  be one that would be released against the person they're

23  related to.  If JP Morgan isn't released from the claim,

24  then its affiliates and related persons are not either.

25  And, Your Honor, I think that fairly cabins in what's being

1   released.  And the intent of this provision, Your Honor, is

2   I think relatively clear.  It's to avoid liability coming in

3   through the back door, that is precluded from coming in

4   through the front door by virtue of the release given to

5   release parties.  No parties will settle and pay substantial

6   amounts of money if a related person to them can be sued on

7   exactly the same claims that they paid hundreds of millions

8   of dollars to settle.

9           Neither JP Morgan, the senior lenders here, nor

10  any other parties in sophisticated commercial settlements

11  are going to be prepared to enter into those settlements

12  unless they know that they're buying peace for what they

13  pay.  And you can't get peace on claims if someone is

14  released as to the principal party, but you can sue their

15  subsidiaries, you can sue their parent, you can sue their

16  officers and directors all on the same claims, Your Honor.

17          That kind of release is absolutely essential in

18  order to give parties the comfort they need in order to

19  enter into settlements like this.  And settlements like this

20  that are critical to the emergence of debtors from

21  bankruptcy with claims resolved don't happen without those

22  releases.

23          Your Honor, let me turn to the exculpation clause

24  and speak to that briefly.  First of all, as Mr. Golden

25  indicated in argument, it's limited to post-petition claims.

1    And it's limited to activities in connection with these

2    Chapter 11 reorganization proceedings.  Mr. Golden as I

3    understand his argument, does not take issue with the scope

4    of exculpation.  It's with the parties that are receiving

5    the benefits of the exculpation.  And I think he agrees that

6    the creditors' committee, estate professionals, fiduciaries

7    are properly entitled under the governing case law to

8    exculpation limited to the scope that's provided for in the

9    DCL plan.  Where he takes issue is to the extent the

10   exculpation is given to other plan proponents.  In this

11   case, notably JP Morgan, Angelo Gordon, and Oaktree who are

12   included in the exculpation clause which again is limited to

13   conduct in connection with these reorganization proceedings.

14           Now, Your Honor, I think it should be apparent to

15   the Court, I think it is apparent to the Court from

16   presiding over these proceedings for the last two years, why

17   parties who have been in the middle of these proceedings

18   want to close the door on claims against them arising from

19   their participation in these proceedings.  If there is going

20   to be a settlement of claims by the senior lenders, if

21   they're going to give up hundreds of millions of dollars of

22   consideration they would otherwise be entitled to, I think

23   the Court will understand why they don't want to turn around

24   and find that they are sued for things that they did in

25   connection with the reorganization proceedings that lead to

1   a settlement that we believe the Court will conclude is fair

2   and reasonable and should be approved.

3          And if this Court does make those findings and

4   approve the settlement embodied in the DCL plan, we believe

5   it's entirely appropriate that the Court would provide

6   protection to the proponents who hammered out that plan, who

7   hammered out that settlement, who fought in the trenches in

8   this case to get it done and get the debtors out of

9   bankruptcy to be protected for actions they took in that

10  limited window participating in these cases.

11         Now I don't want to go too far in discussing the

12  arguments on this, Your Honor, because I think they fall in

13  the category Mr. Golden identified earlier.  That is they

14  depend on this Court's evaluation of the sufficiency of the

15  consideration that's provided by the senior lenders and how

16  essential that is to the reorganization of the debtors and

17  their emergence from bankruptcy.

18         That all turns, Your Honor, as Mr. Golden quite

19  rightly said on the evidence that was presented in the last

20  couple of weeks of confirmation hearings and it will be

21  tested, Your Honor, against the standards that apply in this

22  Court with respect to non-consensual third party releases to

23  the extent that the exculpation applies to claims by third

24  parties against them and those are as the Court is obviously

25  well aware, more stringent standards than the Zenith factors

1  whether they are satisfied though is going to depend on a

2  close evaluation of the evidence about the adequacy of the

3  consideration and how important the settlement by the

4  proponents was to these reorganization proceedings and how

5  important their participation in this reorganization

6  proceedings was to the ultimate outcome.

7          So, Your Honor, with your permission, I would

8  defer further argument there because I think it does turn

9  heavily on the evidence that's been before the Court and we

10 would propose to take it up in connection with post trial

11 briefs and closing arguments.

12         THE COURT:  That's fine.

13         MR. SOTTILE:  Your Honor, that concludes my

14 response on the issues of the release clauses and the

15 exculpation clause.  If the Court has questions, I'm happy

16 to address them.  Otherwise, Mr. Moskowitz of Davis Polk

17 would rise briefly to address the issues concerning the bar

18 order.

19         THE COURT:  All right.

20         MR. SOTTILE:  Thank you, Your Honor.

21         MR. MOSKOWITZ:  Good afternoon, Your Honor.

22 Elliot Moskowitz from the law firm of Davis, Polk & Wardwell

23 representing JP Morgan Chase.

24         I am here to respond briefly to the additional

25 comments that were raised by Mr. Zensky with respect to the

1   bar order.  Mr. Zensky's remarks were actually helpful in a

2   number of respects.  I'm not sure that he added much, if

3   anything, to Mr. Pachulski's presentation, but it was

4   helpful to hear him speak as it crystallized in my mine at

5   least, the noteholders' position with respect to the bar

6   order that's contained in the DCL plan.

7         Today is the day for legal arguments with respect

8   to both plans.  That's not in dispute.  Having now listened

9   to the entirety of the noteholders' presentation, it appears

10  that they do not have a legal objection to the concept of

11  bar orders generally in life.  And they acknowledge that bar

12  orders are typical and common in complex multiparty

13  proceedings.

14        They appear to have really what I think is a

15  single legal problem with respect to this bar order and that

16  is the treatment of disclaimed state law avoidance claims

17  under the bar order that has been the subject of some

18  discussion.  And this is also confirmed, Your Honor, by the

19  position that they took in their confirmation objection.

20  And I refer the Court respectfully to Page 176 of their 217

21  page objection.  There buried at the end in a single

22  paragraph is their sole legal objection to the bar order.

23  You don't hear anything more about it in that massive brief.

24  You don't hear anything more about it in their subsequent

25  brief, their brief in support of confirmation.  You don't

1   hear anything about it in their supplemental objection filed
2   a couple of days ago which mind you, came after the most
3   recent plan amendment so it was certainly an opportunity to
4   comment about it there.  And you don't hear about it in
5   their amended supplemental objection which they filed after
6   that.  So I just think all of this is helpful by way of
7   introduction in caveating the ambit of the dispute that's
8   before Your Honor.
9           The dispute is over this discrete issue in the
10  bar order and I'll speak about it some more shortly.  Let me
11  just jump around a bit for a couple of minutes so that I
12  cover all the necessary points.
13          First, Mr. Zensky made some points with regard to
14  the *Lyondell* case.  And let me just say this.  And he
15  predicted rightly that it would come up.  I agree that
16  *Lyondell* is not the be all or end all for this Court and for
17  this proceeding.  There are certainly differences among the
18  two cases.  And this Court has diverged from that Court in
19  this proceeding before in issues that have come up.
20          I just simply note a correction.  Mr. Zensky said
21  that there were no disclaim state law avoidance claims in
22  the *Lyondell* matter and that's not an accurate recitation.
23  There were disclaimed state law avoidance claims in that
24  case, as well as, a creditor's trust.  And Mr. Zenksy should
25  remember this since he and I and his colleagues spent many

1  late hours going over the bar order there and many of the

2  provisions of that plan.

3          THE COURT:  Well maybe he didn't get enough

4  sleep.

5  (Laughter)

6          MR. MOSKOWITZ:  I excuse him for that, certainly.

7  Now moving onto a different topic.  I am glad to hear that

8  they believe that the bar order if entered by this Court,

9  would be enforced by other Courts around the nation.  We

10 firmly believe that as well.  And the case law and practical

11 experience bears that out.  And I think if the Court agrees

12 with both of us and this is perhaps a rare area of agreement

13 among us, it would actually help resolve nearly all of the

14 objections posited by the directors and officers who

15 expressed their concern at length that other Courts would

16 disregard the bar order entered by this Court.  So I just

17 thought that that was helpful.

18         Let me also make a small historical correction.

19 Mr. Zensky said that the bar order was amended for the first

20 time the other day to cover disclaimed state law avoidance

21 claims, but that's not true either.  It always covered those

22 claims.  The prior plan which has been on file for months

23 included preserved causes of action in the bar order.  And

24 disclaimed state law avoidance claims were part of the

25 definition of preserved causes of action.  So these claims

1  were always in there.

2          To be clear, the only change that was made in the

3  recent amendment was helpful to his client to ensure that

4  the bar order does not cover selling stockholders for

5  contribution liability in respect of disclaimed state law

6  avoidance claims and that there's no -- and that as a

7  consequence there's no judgment reduction problem for his

8  client who would be the plaintiff.

9          So I just want the record to be clear on that.

10  The change we made, may not go far enough for his client's

11  liking, it certainly doesn't, but it's fundamentally a

12  beneficial change for his client for what it's worth.

13          Turning to Mr. Zenky's core legal point that the

14  bar order impacts state law avoidance claims that belong to

15  creditors and have nothing to do with the estate, I believe

16  his description was not exactly precise.  To reprise my

17  comments of yesterday which I adopt and incorporate, the

18  only state law avoidance claims that arguably reverted to

19  creditors like Aurelius are state law avoidance claims

20  against shareholders.

21          And we've amended the DCL plan to make clear that

22  the bar order does not protect a release party in the event

23  a contribution claim is brought against it in its capacity

24  as a shareholder, just as we did not settle and are

25  therefore exposed on direct liability for those claims, so

1    to we are theoretically exposed to a contribution claim in

2    respect of those same non-settled claims.

3            But just to be clear, the state law avoidance

4    claims against lenders in their lender capacity were

5    property of the estate, were brought by the estate under

6    544(b) and are proposed to be settled by the estate and the

7    lenders are paying for a release in that capacity in respect

8    of that liability.  It doesn't make sense to allow Aurelius,

9    we think, to benefit from that settlement and then later on

10   if the lenders are sued for contribution, that they should

11   be made to pay twice for that same liability so that

12   Aurelius can recover yet again on that settled liability.

13   And all the bar order does with respect to disclaimed state

14   law avoidance claims is to prevent that double recovery

15   scenario from happening.

16           And Mr. Zensky said several times that we did not

17   settle the state law avoidance claims with him.  But he's

18   not really describing that correctly.  We did settle with

19   him with respect to the state law avoidance claims that are

20   owned by the -- that were owned by the estate.  Mr. Zensky

21   might believe that the settlement consideration we're paying

22   to his client as a result of the settlement of those claims

23   is insufficient, but we will hear argument about that on

24   another day.

25           If the Court agrees that the settlement in the

1    DCL plan is reasonable and conforms the DCL plan, the effect

2    of that is we will have settled in a very real sense those

3    state law claims with Mr. Zensky's client and with other

4    estate creditors.  So we believe then it is perfectly

5    appropriate for this provision of the bar order in the

6    precise way that it is written, to be confirmed.

7         Let me also briefly address a comment Mr. Zensky

8    made about what we heard from the debtors' counsel

9    yesterday, Mr. Steen about whether such contribution claims

10   exist in the real world.  Let me be crystal clear on what

11   our position.  We agreed with the debtors that the better

12   interpretation of the law is that there is no such thing as

13   a contribution claim by shareholders on account of

14   fraudulent conveyance liability and as a result, it is

15   unlikely that this provision will have any practical impact

16   on the plaintiffs' claims.

17        And Mr. Zensky cited one case to you in his

18   description of his position on this argument, the *Legrown*

19   case, which by the way is an unpublished opinion.  But that

20   opinion for what it's worth, says nothing about fraudulent

21   conveyance and contribution.  And so I would just simply

22   refer the Court respectfully to the cases that were cited in

23   Mr. Steen's presentation of yesterday.

24        Now of course from the perspective of the

25   released parties, regardless of what the actual merit of

1  these claims would be, the provision is very important

2  because you need look no further than this side of the room

3  and arguments that were advanced just a few moments ago by

4  Mr. Zensky to realize that people can take a different

5  position on the issue of whether such claims exist.

6          Let me just then conclude with the way that I

7  began yesterday.  The leading cases in the jurisdiction are

8  entirely supportive of the provision in the DCL plan.

9  Public policy is supportive of a provision of this sort.

10 And so for all the reasons I discussed yesterday and today

11 and as set forth more fully at Pages 111 to 117 of our

12 confirmation brief where you see a number of cases that have

13 not been discussed by any other party either in papers or in

14 person, we believe that the release parties are entitled to

15 protection from having to litigate against an contribution

16 claims with respect to this settled liability regardless of

17 whether the claims would actually have merit in the real

18 world.  Thank you, Your Honor.

19          THE COURT:  Thank you.

20          MR. GOLDEN:  Good afternoon, Your Honor.  Just

21 for clock keeping purposes, I note it's 1:52 and we'll start

22 allocating the time as of now.

23          Your Honor, our -- the next noteholder proponent

24 objection deals with the -- what's called in the DCL plan,

25 the parent trust preference and why we believe that that

1    trust preference inappropriately discriminates against

2    creditors who have opted out of the creditors' trust.

3         In an effort to demonstrate just how reasonable

4    the senior lenders and the underlying LBO settlement are,

5    the DCL plan provides that the LBO lenders will not share in

6    recoveries from the litigation trust or the creditors' trust

7    until holders of senior note claims, EGI note claims, PHONES

8    note claims, and other parent claims including the Oaktree

9    swap claim receives the first $90 million in aggregate

10   proceeds from either the litigation trust or the creditors'

11   trust and the repayment of the proposed $20 million funding

12   loan to those trusts.

13        But as usual with these cases, what the senior

14   lenders give with one hand, they take away with another.  As

15   Your Honor is well aware, the noteholder plan proponents and

16   most of the holders of senior notes and holders of PHONE

17   notes have opted out from participating in the creditors'

18   trust for some very valid reasons including number one, the

19   noteholders would rather pursue their own individual state

20   law constructive fraudulent conveyance claims rather than be

21   part of the creditor trust controlled by a creditors'

22   committee who in the opinion of the noteholders has not

23   always shown that it's the noteholders interest that they

24   seek to protect.

25        Number two, participating in the creditors' trust

1  meant you were agreeing to release the released stockholder
2  parties for no consideration as we discussed earlier this
3  morning.  And perhaps most importantly, by opting out of the
4  creditors' trust which will house individual state law
5  constructive fraudulent conveyance claims.  So to opt out of
6  that trust meant that you didn't have to share your
7  recoveries that come into the creditor trust or 35 cents of
8  every recovery with the senior noteholders and the bridge
9  lenders even though their claims because they don't possess
10 state law constructive fraudulent conveyance claims.
11 Nevertheless, they wanted to impose their ability to share
12 35 percent of the trust.  And so the only way to protect
13 against that for the senior noteholders and for the PHONE
14 noteholders was to decide to opt out of the creditor trust.
15         But the DCL plan has created a Hobson's choice by
16 giving you the option of whether you opt in or opt out of
17 that creditor trust.  If you choose to opt out of that
18 creditor trust, you are going to lose your GOC preference,
19 the present that the senior lenders gave us which is the
20 first -- they subordinate their 35 percent participation to
21 the first $90 million of recovery.  Well the first $90
22 million of trust recoveries come into the creditor trust,
23 but you've opted out of the creditor trust.  You get no
24 benefit from that GOC preference.
25         We think that that is an unfair discrimination

1   and should not be countenanced by this Court.  We think it

2   represents a violation of 1129(b) of the Bankruptcy Code.

3   You will hear the DCL plan proponent say well we gave you

4   the option.  You could have chose to stay in or opt out.

5   And as long as we gave you an option, it can't be unfair

6   discrimination.

7            I suggest to the Court that given the parameters

8   and the Hobson choice created by opting in or opting out,

9   that that is a wrong view of the law and that this GOC trust

10  preference as it currently is constituted under the DCL plan

11  is violative of 1129(b) of the Bankruptcy Code.

12            THE COURT:  Thank you.

13            MR. LEMAY:  Good afternoon, Your Honor.  David

14  Lemay from Chadbourne and Parke for the official committee

15  of unsecured creditors and for this purpose for the DCL plan

16  proponents.

17            The objection that Mr. Golden just articulated

18  begins at Page 198 of their brief.  And I was glad to hear

19  Mr. Golden's remarks because when I read Pages 198 and 199

20  of that brief, I did take away that they didn't like what we

21  had done.  But what I didn't take away was any legal basis

22  for why it was a plan objection.  It might have been a

23  reason to vote against the plan and I'm sure they did.  But

24  now I think what we've heard is a legal basis.  And they did

25  use in their title the word discriminates.  So I think what

1   they're setting up is -- and near as I can tell because the

2   brief is anything but clear on this.  I think what they're

3   setting up is a claim of unfair discrimination.

4           With respect to the claim of unfair

5   discrimination, I have a couple of thoughts.  One, Mr.

6   Golden is right, there is a choice.  He characterized it as

7   a Hobson's choice.  But everybody had the right to either

8   opt into or opt out of the creditors' trust based on whether

9   they thought it was in their best interest to be in that

10  trust or to pursue as his clients I believe have their own

11  claims.  So what Mr. Golden describes as a Hobson's choice,

12  I think we'd characterize more as let a thousand blossoms

13  bloom.  This is a choice.

14          And the relevant case, I think, Your Honor is the

15  *Washington Mutual* case which is a case about more than

16  releases.  It turns out that Judge Walrath actually had to

17  deal with some other things.  And one of the things she

18  dealt with in *Washington Mutual* was claims of unfair

19  discrimination in a somewhat related, but not quite

20  analogous context.  And what she said was that -- and I'm

21  quoting, "What is important is that each claimant within a

22  class have the same opportunity to receive equal treatment."

23  The *Dana* case in the Southern District says the same thing.

24          So here I think what we've heard is more an

25  expression of dissatisfaction than any kind of legitimate

1  legal objection to confirmation.  One thing I guess that Mr.

2  Golden didn't mention.  He said that well, this is going to

3  be terrible if we opt out of the creditors' trust and if the

4  first $90 million of recovery come in from the creditors'

5  trust that we've opted out of, then we are going to lose our

6  shot or our share of the $90 million priority.  Fair enough.

7        What he didn't say is that if you opt out of the

8  trust and pursue your own litigation as his clients intend

9  to do, you don't have to share one dime with anyone.  So it

10  seems to me that in this context it can be very justly said

11  that the bondholders who opted out, opted out A, without

12  compulsion and B, on the proposition that their own recovery

13  potential was best enhanced by staying away from the

14  creditors' trust, tracing their own state law fraudulent

15  transfer claims, and not sharing them with anyone else.

16  Under that circumstance, Your Honor, I don't see how a claim

17  of unfair discrimination can conceivably be constructed.

18        THE COURT:  Well, Mr. Lemay, that was very

19  elegantly put, but one way they might say it's unfair is as

20  you describe it, there really is no choice.  There's just no

21  economic reason why they would make the choice that is

22  offered to them to share in the trust.

23        MR. LEMAY:  I'm not sure I follow, Your Honor,

24  they --

25        THE COURT:  They might go so far as to say

1   they're compelled to opt out based upon the disincentives

2   offered by staying in.

3           MR. LEMAY:  But I don't think that's actually

4   true, Your Honor, with all respect.  If they stayed in, they

5   said that essentially these -- the creditors' trust would be

6   pursued by, I forget what Mr. Golden's term was he was

7   trying to be gentle.  But I think what he was saying is

8   faithless fiduciaries.  The people who had run the

9   creditors' trust, probably wouldn't do such a good job.

10  That's the worry in a nutshell.  He was a little kinder than

11  that, but I think that's the worry.

12          I submit, Your Honor, that there's no basis for

13  that worry.  I know they've said it.  The creditors' trust

14  if you opt into it will have every incentive to pursue the

15  claims that are put to it.  Those will include -- those will

16  be claims that are voluntarily donated by those creditors

17  who want to put their fortunes in with the creditors' trust

18  and not take their own chances.  I'm not sure why there's an

19  element of compulsion at all.  Perhaps I'm missing Your

20  Honor's thinking.

21          THE COURT:  Well I was trying to state it in the

22  extreme and that's probably why it didn't connect with you.

23          MR. LEMAY:  I think, Your Honor, very

24  respectfully, I think that is the extreme.  And I think it

25  would depend upon, I suppose, if Your Honor shared Mr.

1  Golden's view that the people running the creditors' trust
2  were not going to do a great job there might be some truth
3  to that.  But as I said yesterday in another context, if
4  that's Your Honor's view, this side of the room has much
5  deeper problems than that.
6              THE COURT:  Thank you.
7              MR. LEMAY:  Thank you, Your Honor.
8              MR. GOLDEN:  Thank you.  Daniel Golden, Akin,
9  Gump, Strauss, Hauer & Feld, counsel for Aurelius Capital
10 and the other noteholder proponents.
11             Your Honor, I'd like to now turn to the
12 noteholder proponent objection dealing with the problems we
13 have with the governance and structure of the litigation
14 trust and why we think that the structuring of that
15 litigation trust is inappropriate.
16             Although our objection to the litigation trust
17 governance and structures apply with equal force to the
18 creditors' trust, as you just heard, Aurelius and most of
19 the other senior noteholders and PHONE noteholders have
20 opted out of the creditors' trust.  So I will restrict my
21 remarks with respect to the litigation trust.  And there are
22 many problems with respect to those trusts.  Even though
23 that trust is being held out by the DCL plan proponents as
24 the ultimate salvation for the senior noteholders and the
25 PHONES in order to get enhanced recoveries.

1           First and foremost, well at least first, the DCL

2    plan proponents have failed to identify the litigation

3    trustee or the members of the litigation trust advisory

4    board whose job it will be to assist the litigation trustee.

5    The only insight we have as to who might be members of the

6    litigation trust advisory board will be that they will be

7    members of the creditors' committee, although it's not clear

8    and the DCL plan is inconsistent on this point, whether it

9    can be creditors' committee members who have an interest in

10   the trust or need not have an interest in the trust.  So at

11   this stage in the proceeding, it is absolutely unclear who

12   the trustee will be, who the trust advisory members will be,

13   and from what universe they will be picked.

14           One of the many things we don't know about the

15   litigation trust is what the selection process will be for

16   the litigation trustee or how that process will unfold.  We

17   won't know whether as I said the committee members are going

18   to be -- I'm sorry, the trust advisory committee members

19   will be compelled to have a financial interest in the

20   litigation trust or not.  The DCL plan suggests that the

21   only universe to pick the litigation trust advisory board

22   are from members -- in one place it says from members of the

23   creditors' committee who have a financial interest in the

24   trust.

25           It occurs to us that based upon that definition,

1    JPM as a committee member, could be a member of the

2    litigation trust advisory board with the obvious implication

3    that a party who we believe was a primary instigator of this

4    disastrous LBO transaction, could actually be in a

5    governance position on the litigation trust.  We find that

6    to say a word, unsettling.

7           What was equally confounding to us is why the DCL

8    plan proponents have not reached out to two members of their

9    creditors' committee who should, who could and could -- who

10   could and should be members of the litigation trust advisory

11   board.  Obviously, I'm speaking about Wilmington Trust and

12   Deutsche Bank, the respective indenture trustees for the

13   PHONE notes and one issue of the senior notes.  To date,

14   neither of those parties have been contacted to understand

15   or figure out whether they have a willingness to sit on the

16   litigation trust advisory board.

17           Your Honor, you have to excuse a healthy amount

18   of skepticism on our part as to what the real intention of

19   this litigation trust is when we can't get answers to the

20   most fundamental questions as who's going to be the trustee,

21   how the trustee is to be selected, and who are going to be

22   members of the litigation trust advisory board. other

23   fundamental problems with the governance structure of the

24   litigation trust.

25           Rather than the estates making an outright grant

1   to the two post confirmation litigation trusts, that being

2   the litigation trust and the creditors' trust under the DCL

3   plan, the proposal is to make a $20 million loan to those

4   trusts which loan will have to be repaid.  We have

5   significant issues with that.  First of all, we don't think

6   $20 million is near enough to appropriately prosecute the

7   litigations that are to be brought by these two trusts.  And

8   we believe it is totally inappropriate that this funding be

9   done in the form of a loan as opposed to an outright grant.

10  There are many cases both inside and outside this district

11  where post confirmation litigation trusts have been set up

12  and they have been adequately funded without requiring the

13  trust to repay the loans.  So in cases like *CTC*

14  *Communications, Fruit of the Loom, Globe Manufacturing, IDR,*

15  *Imperial Home, Insilco, The IT Group, Lyondell, Semcrude*

16  more than half of those coming out of the District of

17  Delaware, there were funding through an outright grant

18  without the obligation to repay.

19          Your Honor, if these litigations had been

20  commenced and prosecuted by the debtors' estates, that would

21  have been an administrative charge on all creditors.  It

22  wouldn't be borne by only those parties who were going to be

23  participating in the litigation trust and we think that's

24  inappropriate.

25          Second issue.  Noticeably absent from the DCL

1    plan and the respective litigation trust agreements is an

2    affirmative contractual obligation on the part of the

3    reorganized debtors to cooperate with the respective

4    litigation trust and the litigation trust trustee at the

5    company's own expense.  We've examined a number of

6    litigation trust agreements in cases like *Congoleum, CTC*

7    *Communications, Fruit of the Loom, Globe Manufacturing,*

8    *Imperial Homes, Lyondell, Meridian, National Steel.*  All of

9    the -- *Semcrude, Trenwick America*, all of those cases and

10   all of the plans coming out of those cases establish

11   litigation trust where there were affirmative obligations on

12   the reorganized debtor to cooperate with the litigation

13   trust at their own respective expense, noticeably absent

14   here.  Further defect.

15           There is no provision in the litigation trust

16   that provides for the unconditional transferring of work

17   product, attorney/client, and other privileges critical to

18   the litigation trust causes of action.  Again, we looked at

19   other post confirmation litigation trust where it is common

20   place to build in these unconditional agreements to transfer

21   work product, attorney/client, and other privileges.  So in

22   many of the cases I've just named, those -- that -- those

23   provisions were built right in.  The fact that they're not

24   built in here, we believe demonstrates an implicit

25   unwillingness or reluctance for the litigation trust and the

1   reorganized debtors to aggressively pursue the causes of

2   action that are to be placed in this litigation trust.  This

3   is exactly what happens when plans are negotiated and

4   settlements are reached and litigation trust agreements are

5   negotiated, but the real party and interest is not at the

6   other side of the table.

7            Your Honor, just a few further technical

8   objections to the litigation trust.  The litigation trust

9   agreement provides that the litigation trust will have as of

10  yet unspecified indemnification protections for the benefit

11  of the reorganized debtors.  That could be potential drain

12  on the litigation trust assets, those indemnification

13  obligations are not spelled out.  We don't know when they'll

14  ever be spelled out.

15           The litigation trust, the proposed litigation

16  trust agreement prohibits the transferability of litigation

17  trust interest and conditions the transfer of those

18  litigation interests to determination made by the trustee

19  and the trust advisory board in their sole and absolute and

20  unilateral discretion.  We don't understand why there is a

21  restriction on the ability to transfer trusts interests.

22           Unlike the noteholder plans trust agreement, this

23  litigation trust does not disclose the compensation

24  arrangements for the litigation trust trustee and allows

25  these compensation arrangements whatever they turn out to be

1    to be modified or revised without the need for Bankruptcy

2    Court approval.

3              We believe it's absolutely essential that any

4    attempt by the litigation trust to settle a cause of action

5    or a claim where the controversy exceeded $1 million, that

6    proposed settlement needs to come to the Bankruptcy Court so

7    that the beneficiaries of that trust will have some comfort

8    that an appropriate settlement for major assets are being

9    done in an appropriate way.  That issue -- their litigation

10   trust is absolutely silent on these points.

11             Your Honor, you would have thought since our

12   confirmation objection listing all of these objections has

13   been around for weeks if not months, somebody on the DCL

14   side might have picked up the phone and said okay, we

15   understand your issues, maybe we could massage some of them,

16   maybe we can make some corrections, revisions.  You'd be

17   wrong.  We haven't heard one word as to how they might fix

18   what we think are glaring deficiencies with respect to their

19   proposed litigation trust.  And as I said, Your Honor, it

20   leaves us with a significant concern that the real intention

21   here is not to pursue aggressively the causes of action that

22   are to be placed into this trust.

23             THE COURT:  You know, I don't mean to

24   oversimplify what on a number of different levels is a

25   complex situation and set of circumstances.  And I'm not

1    excusing the failure of any party to try to resolve an

2    objection that's resolvable, but it's really about the

3    money.  And nipping around the edges on some of these issues

4    and that's not to minimize the importance of any objection

5    that's been raised, isn't going to solve the problem here.

6              MR. GOLDEN:  It will not.  Certainly, I -- we

7    agree, Your Honor.  It will certainly not solve the central

8    problem that has dogged these cases for months, if not years

9    now.

10             THE COURT:  Yeah, and --

11             MR. GOLDEN:  We recognize that fact.  But, Your

12   Honor, we have to deal the cards we're dealt.

13             THE COURT:  I understand.

14             MR. GOLDEN:  And so we are at a confirmation

15   hearing with respect to their plan.  This is not our most

16   important objection.  I think Your Honor recognizes --

17             THE COURT:  I know and I'm not questioning your

18   entitlement to make it --

19             MR. GOLDEN:  Right.

20             THE COURT:  -- or that you must make it for

21   obvious reasons.

22             MR. GOLDEN:  But you're right.  Many of these

23   might go away, if the more central focus --

24             THE COURT:  You know what, the sun would shine

25   from the heavens, the angels would sing.

1    (Laughter)

2           THE COURT:  Everything would follow from

3    resolution of the central issue.

4           MR. GOLDEN:  Yeah, I don't disagree with that,

5    Your Honor.

6           THE COURT:  All right.

7           MR. LEMAY:  David Lemay again, Your Honor, for

8    the creditors' committee and the DCL proponents.

9           First, just to clarify some things that maybe

10   possibly we should have made clear before and actually to

11   correct one ambiguity that Mr. Golden, I think is right on

12   and it just hadn't occurred to me.

13          Mr. Golden is right.  The DCL plan does have a

14   minor inconsistency wherein one place it says that the

15   members of the creditors' trust -- litigation trust advisory

16   board will be those members of the creditors' committee who

17   have an interest in the litigation trust.  And another place

18   it refers to it just as members of the creditors' committee.

19   We can fix that.  We will fix that.  It was never the

20   intention of the DCL proponents to make the creditors' trust

21   advisory board consist of anyone other than committee

22   members who had an interest in the trust.

23          Second, Mr. Golden has said that the two

24   indenture trustees have not been contacted about serving on

25   the creditor -- the litigation trust advisory board.  And

1    that's true, neither has anyone else.  At this point, given

2    everything that's been happening, to be honest, we've been

3    focused on sort of first things first.  And the committee

4    has not had a conversation with any of its members about

5    being members of the advisory board.  I will state on the

6    record that it is the committees' contemplation that both of

7    those indenture trustees would be members of the litigation

8    trust advisory board.  And we will prove that record out,

9    we'll make the necessary fixes.  So that should be off the

10   table.

11              As to JP Morgan Chase's possible participation on

12   the litigation trust advisory board, during the course of

13   Mr. Golden's argument, I was advised by their counsel that

14   they are prepared to stand away from that, not to have a

15   role on that board, not to have a role in the selection of

16   litigation trustee.  I hope that makes that problem go away.

17              With respect to Mr. Golden's other comments, a

18   few things.  First, I don't really see the subsection of

19   Section 1129 of the Bankruptcy Code that talks about these

20   issues or perhaps to be a little bit more -- a little bit

21   less facetious, I think these are reasons not to like our

22   plan.  Possibly reasons to vote against our plan.  I don't

23   think any of these amount to a confirmation objection.  It

24   probably would have been good had there been more

25   conversation between now and then -- between then and now on

1   some of these issues.

2            And I think I can speak for the fellow DCL plan

3   proponents to say that in the intervening month we're

4   perfectly happy to sit down with Mr. Golden and his

5   colleagues and see if we can work some of these out.

6   Perhaps the Court need not detain itself until we do.  We're

7   criticized for not picking up the phone and calling.  On the

8   other hand, I would say they know how to find us.  And also,

9   it's a little bit hard to have the sort of cooperative

10  exchange of ideas that you'd like to have when you read in

11  papers that your client sold out the senior noteholders and

12  holders of the PHONES note with an artificially low

13  settlement for their own personal gain.

14            THE COURT:  You know and I often advise parties

15  in proceedings when I think there's some hope that they

16  could come to a resolution that to have those conflicting

17  dynamics while often things proceed on parallel tracks and

18  that I will understand, it is hard to after having exchange

19  that bit and things like to sit down and try to make a deal.

20  I agree with you.

21            MR. LEMAY:  That said Your Honor, Mr. Golden and

22  his colleagues are professionals and their gentlemen and

23  their friends and we probably should talk about some of this

24  stuff because some of it can be fixed.  Other aspects I

25  think go to the deal.  Mr. Golden doesn't like the fact that

1    the trust is funded with a $20 million loan rather than a

2    $40 million grant.  Well, you know, I would like $100

3    million grant, but that's not the way the world is, it's the

4    result of negotiation.

5         THE COURT:  No, but I will say in response to

6    your comment that, you know, where is that among the

7    confirmation standards, it may be if I ultimately determine

8    that both plans are confirmable, be something to be put on

9    one side of the scale with respect to which plan the Court

10   should choose to confirm.

11        MR. LEMAY:  Totally understood, Your Honor.  What

12   I'd like to suggest, I mean, talking about money items like

13   the $20 million grant I think is a little bit difficult.

14   We've made our deal.  We're here to defend and to present

15   that economic deal.  Obviously, the banks as part of that

16   deal agreed to a $20 million loan.  They didn't agree to a

17   $40 million grant, I wish they had.  I bet there are some

18   things that we get that they wish we hadn't got.  That's the

19   way negotiations are.

20        That said, on some of what Mr. Golden

21   characterized as his technical issues, we've got some time

22   now.  We have a schedule.  We'll be writing briefs.  We'll

23   be submitting findings.  I'd be happy to sit down with Mr.

24   Golden and talk about some of those things and I suspect my

25   co-proponent's counsel would be happy to do the same.  I

1  think we can work some of that out.  And then if we can't

2  work them out, I think what we're going to come back to Your

3  Honor and say is that the reason we can't work them out is

4  they're part of the deal.

5          So I think really, Your Honor, and I do take your

6  point that this could go to a choosing one plan over the

7  other issue.  But I think really much of this falls into one

8  of three buckets.  Stuff that I've either clarified on the

9  record now and perhaps ought to have done so before and I'll

10  take the bullet on that and apologize.  Second, stuff that

11  really goes to the deal that we negotiated and that's going

12  to stand or fall based on the Court's ruling.  And third,

13  these technical things which I think smart, intelligent,

14  well minded counsel ought to and should give a try to and

15  I'm perfectly prepared to do that.

16          THE COURT:  Thank you.

17          MR. LEMAY:  Thank you.

18          MR. GOLDEN:  Your Honor, we turn to the -- I'm

19  sorry, Daniel Golden, Akin, Gump, Strauss, Hauer & Feld,

20  counsel for Aurelius and the noteholder plan proponents.

21          We turn, Your Honor, to the noteholder plan

22  proponents objection to the classification of the swap claim

23  that you've heard so much about.  Your Honor, the underlying

24  facts regarding the $150 million swap claim now owned by

25  Oaktree are not really in dispute.  Pursuant to the senior

1  loan agreement which provided financing for the LBO

2  transaction, Tribune was required, contractually required to

3  enter into a hedging agreement to offset a percentage of its

4  interest rate exposure under the senior loan agreement.  As

5  a result, Tribune did, in fact, enter into and is the

6  international swap and derivatives master agreement and

7  three accompanying interest rate swap confirmations with

8  Barclays then an agent and a lender under the original

9  senior loan agreement.

10          All of the obligations under the senior loan

11  agreement and the swap agreement are guaranteed by the

12  guarantor subsidiaries pursuant to a senior guarantee

13  agreement.  Barclays terminated its obligations under the

14  swap agreement on the petition date resulting in obligations

15  owing then to Barclays now to Oaktree in the amount of just

16  under $151 million.

17          Your Honor may recall that in connection with the

18  April 2010 plan, the debtors classified the swap claim in

19  the same class of holders as the other senior loan claims at

20  the Tribune parent level and as a senior guarantee claim at

21  the guarantor subsidiaries.  Presumably, when the debtors

22  made that classification scheme, they had a good faith basis

23  for doing so.

24          But now let's dial ahead a few months.  The April

25  plan is withdrawn and you've heard from testimony it was

1 largely withdrawn based upon the resistance from Oaktree.

2 In July 2010, an affiliate of Oaktree purchased this $150

3 million swap claim and then subsequent thereto, the debtors,

4 the senior lenders, the creditors' committee all joined

5 forces to settle all potential LBO related causes of action

6 against the senior lenders which settlement forms the basis

7 of the current version of the DCL plan.  But a slight of

8 hand has now taken place with respect to this new DCL plan.

9              First, the swap claim is no longer classified as

10 a senior loan claim at the Tribune parent level, but rather

11 is lumped in to the class known as the other parent claims

12 at the Tribune parent level.  This seemingly innocuous

13 change results in a dramatic benefit to the holder of the

14 swap claim, the same party who had been the most ardent foe

15 of the debtors' April 2010 plan.  As a result of this

16 reclassification of the swap claim at the Tribune parent

17 level, coupled with the ability under this plan to share in

18 the settlement consideration made available under the

19 proposed settlement, Oaktree will recover 100 percent --

20 will obtain 100 percent recovery with respect to the swap --

21 it's swap claim with $51 million coming from the Tribune

22 parent of which $43 million comes from settlement

23 consideration.  The shifting of this settlement

24 consideration comes at the direct expense of innocent non-

25 LBO creditors.

1          In the debtors or in the DCL's specific

2   disclosure statement, they attempt rationalize this

3   classification scheme by asserting that the swap claim may

4   have the benefit of certain statutory defenses not available

5   to other senior loan claimants, thereby apparently making it

6   dissimilar from other senior loan claims.  Yet as I said

7   back in April, the debtors classified the swap claim as a

8   senior loan claim, an apparent acknowledgement of the

9   substantial similarities between the swap claim and the

10  senior loan claim including that the claims involved -- both

11  claims involved the same parties, both claims arise in

12  connection with the same loan agreement, both have the

13  benefit of the same guarantees from the guarantor debtors.

14          Naturally, Your Honor, the starting point in

15  issues of classification is Section 1122 of the Bankruptcy

16  Code which requires claims within a single class to be

17  substantially similar to one another.  While admittedly, the

18  case law under Section 1122(a) is murky, one thing is

19  probably crystal clear.  A plan proponent may not quote

20  "gerrymander" the classification system in order to obtain

21  an affirmative vote for a plan of reorganization.  And that,

22  Your Honor is exactly what we think has happened here.

23          In their response to the noteholder proponents'

24  confirmation objection on this issue, the DCL plan

25  proponents make two points.  First, they argue that there

1    are substantial differences between the swap claim on the

2    one hand and the senior loan claims.  They state that the

3    basic nature of the swap claim involves an exchange of

4    periodic payments, calculated by reference to interest rates

5    while swap claims are for money actually loaned.

6              What's interesting about this argument is that

7    they don't make any attempt to argue how the swap claim is

8    substantially similar to the new class where it is currently

9    being housed, the other parent claims.  They only want to

10   argue it's not like the senior loan claim, but they don't

11   bother to argue how it's substantially similar to the other

12   parent company claims where that claim is now classified.

13             Second and probably more to the point, the plan -

14   - the DCL plan proponents argue that the swap claim may have

15   statutory protections under Section 546(g) and potentially

16   others which are simply not available to other senior loan

17   claims.  We think this argument misses the mark for at least

18   three reasons.

19             First, a determination of whether claims are

20   substantially similar or not is not based on what defenses

21   that may be available to the underlying claims as opposed to

22   the nature of the claims themselves.  The DCL plan

23   proponents have not cited one single case that stands for

24   the proposition that classification schemes are based upon

25   defenses that may be available to the claims as opposed to

1    the nature of the claims themselves.  So for example, if you

2    had two unsecured claims, one was the subject of a

3    preference attack, one was not the subject of a preference

4    attack.  Do you mean you put them in different class -- in a

5    different classification?  We think not.

6            Second, Section 546(g) provides a safe harbor for

7    transfers, not obligations.  The swap claim is an obligation

8    of the Tribune parent.  It is not a transfer.  So whether or

9    not they think Section 546(g) provides a basis for this

10   differential classification scheme, we don't even think

11   546(g) is applicable.  As I said, it's not -- it protects

12   transfers not obligations.

13           And third, 546(g) by its very terms does not

14   protect against intentional fraudulent conveyance claims.

15   And I know that their response is well there is no

16   intentional fraudulent conveyance claim as it relates to the

17   swap.  Well that may or may not be the case, time will tell.

18   And I know that we will hear an argument that there can't

19   possibly an attack on the swap claim because it was value

20   for value given.  The very definition of what makes a

21   transaction not a fraudulent conveyance.  Again, that

22   remains to be seen.  The point we're making that it's not

23   the defenses that a claim may or may not have that should

24   drive the classification scheme, but rather the nature of

25   the claim.

1           Your Honor, it's our view at a bare minimum, the

2    swap claim needs to be separately classified.  It should not

3    be classified as another parent company claim because by

4    doing so, you are allowing or the -- I should say, the DCL

5    plan is allowing a substantial shift of settlement

6    consideration to the holder of a swap claim and away from

7    the innocent pre-LBO creditors primarily in the form of the

8    senior noteholders.

9           One last point, Your Honor.  Just so that it

10   doesn't go unstated.  At least the committee had the good

11   grace not to be a party to this charade when it dropped a

12   footnote at Page 145 of the DCL memorandum of law on this

13   issue indicating that the committee takes no position on the

14   swap classification issues and specifically does not join in

15   now -- in the now debtors' lender's defense of the swap

16   claim classification.

17          Your Honor, we don't believe that this Court

18   should countenance this what we believe is a very direct

19   apparent intentional money grab by this classification

20   scheme which had attendant benefits for the DCL plan

21   proponents to get an otherwise hostile creditor onboard for

22   their new plan of reorganization.  Thank you.

23          MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

24   Johnston of Dewey & LeBoeuf on behalf of both Oaktree and

25   Angelo Gordon.

1          Back again on the swap claim and I guess we now

2    have the full picture which we didn't have yesterday after

3    Mr. Pachulski's argument.  I'll try address both Mr.

4    Golden's argument and the remarks that were made by Mr.

5    Pachulski to the extent there were some different ones.

6          Taking Mr. Golden's last point first.  As I'm

7    sure you noted when you read the brief of the DCL

8    proponents, actually the briefs of the DCL proponents, there

9    are a number of footnotes in there where certain of the

10   proponents basically disclaim arguments made on behalf of

11   other proponents.  It's the nature, unfortunately, of the

12   exercise we went through.  You have plaintiff and defendants

13   joining a brief to support a settlement.  And obviously,

14   when you're discussing merits or demerits of certain claims

15   or positions, one side or another is going to reserve their

16   rights in case Your Honor chooses not to confirm the plan.

17   So no more significance than that should be attributed to

18   those footnotes.

19          Starting with the argument that the swap claim

20   should not be classified with other parent claims against

21   Tribune.  Your Honor, the bottom line is that the swap claim

22   simply is not substantially similar to the credit agreement

23   claims against Tribune.  And in a moment, I'll get to the

24   reasons why it is, in fact, substantially similar to the

25   other parent claims against Tribune and is properly

1  classified there.

2         Consider the following.  First, as we heard Mr.

3  Golden describe, the swap claim arises under a completely

4  different agreement than the credit agreement.  Is the

5  master agreement in the confirmations.  It's an agreement

6  with different parties than the parties to the credit

7  agreement and it was executed almost a month after the

8  credit agreement.

9         Second, the nature of the liability represented

10  by the swap claim is completely different than the liability

11  represented by the credit agreement claims.  The credit

12  agreement claims are for money loaned in connection with the

13  2007 LBO transactions.  In contrast, as we heard Mr.

14  Pachulski state at length yesterday, the swap claim is not

15  for money loaned.  It represents Tribune's liability under

16  an interest rate swap agreement that was terminated as a

17  consequence of Tribune's bankruptcy filing.  And here, I'd

18  refer the Court to the Ninth Circuit's decision in the

19  *Thrifty Oil* case at *322 F.3rd 1039 Pin cite 148*, where the

20  Circuit observed that "A fundamental characteristic of an

21  interest rate swap is that the counterparties never actually

22  loan or advance the notional amount.  The swap involves an

23  exchange of periodic payments calculated by reference to

24  interest rates in a hypothetical notional amount."

25         So the liability on the swap claim doesn't arise

1  from a loan, it arises basically from Tribune's hedging of

2  the risk associated with the variable interest rate called

3  for in the credit agreement.  And, in fact, Your Honor,

4  unlike a loan where there's principal outstanding; you loan

5  principal and then you have a claim for the principal, had

6  interest rates moved in other ways in 2008, Tribune could

7  have had little to no liability under the swap agreement. It

8  had to do with interest rate hedging.  The nature of the

9  claims is different.

10      Third, the risk profile of the swap claim is

11 vastly different than the risk profile of the credit

12 agreement claims.  Simply put, notwithstanding some of the

13 new arguments you've heard in the last few days, there is no

14 colorable claim to be made that the swap claim somehow could

15 or should be avoided as a fraudulent conveyance.  And this

16 is so for a number of reasons.

17      One, unlike with the credit agreement loans as t

18 which so many arguments have been made, no one can credibly

19 argue that Tribune did not receive reasonably equivalent

20 value in connection with the swap.  By definition, an

21 interest rate swap agreement that gives rise to the swap

22 claim provides value.  In enabled Tribune to hedge its risk

23 associated with its variable interest rate loans and to

24 effectively convert at least a portion of that loan into a

25 fixed rate loan.  It was done pursuant to market standard

1    forms on market standard terms.  And you need look no

2    further than the code itself to confirm this point.  Section

3    548(d)(2)(D), specifically provides that a swap participant

4    that receives a transfer in connection with a swap agreement

5    takes for value to the extent of the transfer.

6              Two, the Bankruptcy Code specifically exempts

7    swap claims from avoidance.  First, you have Section 546(g)

8    which provides that the trustee may not avoid a transfer

9    made by or to or for the benefit of a swap participant or

10   financial participant under or in connection with any swap

11   agreement.

12             Now you heard Mr. Golden say today that Section

13   546(d) doesn't apply here because it only applies to

14   transfers.  That's a brand new argument, not in the briefs,

15   but fair enough.  I'd only observe that the argument makes

16   no sense when you think about it.  According to that theory,

17   if the swap had been terminated the day before bankruptcy,

18   liquidated and paid, there would be absolutely no right to

19   avoid and recover the termination payments made by the

20   debtor.  However, if the swap was terminated the day after

21   bankruptcy giving rise to a very substantial claim against

22   the estate, that claim apparently could be avoided and would

23   not be insulated by Section 546.  I'd suggest that the code

24   doesn't provide for that bizarre result.

25             In fact, the code goes on to provide in Section

1    560, that the termination of a swap agreement and any

2    offsetting or netting out of termination values or payment

3    amounts arising under or in connection with such a

4    termination are completely and entirely exempt from

5    avoidance.  It provides that termination actions and

6    payments "Shall not be stayed, avoided, or otherwise limited

7    by operation of any provision of this title or by order of a

8    Court or administrative agency in any proceeding under this

9    title."

10            THE COURT:  Gee, and here the landlords thought

11   they had a good lobby.

12   (Laughter)

13            MR. JOHNSTON:  Financial participants have a

14   better one.

15            There also was a reference to the fact that

16   Section 546(e) -- 546(g) does not exempt intentional

17   fraudulent conveyances.  That is true.  I'll note that that

18   carve out is a bit inconsistent with the unequivocal and

19   sweeping protections of Section 560.  To my knowledge,

20   there's no law addressing that discordance provision in the

21   statute.  But more importantly, even if the Step 1 credit

22   agreement loans somehow were the product of an intentional

23   fraud and we, of course, think that allegation is basically

24   ludicrous and we think it's -- and it is an allegation as to

25   which the examiner could find no credible evidence to

1    support, the swap itself wouldn't be intentionally

2    fraudulent, but hedging its interest rate risk under the

3    credit agreement, Tribune was limiting its exposure in

4    respect to the credit agreement loans.  There's no remotely

5    plausibly allegation that could be made that in entering the

6    swap, Tribune somehow intended to hinder or delay its

7    creditors.

8             So I keep saying that there's no plausible

9    argument for avoidance of the swap claim.  It's easy for me

10   to say, right?  You don't have to take my word for it.  I

11   want you to consider two things.  First, note that the

12   examiner looked at the issue and concluded that "it's

13   reasonably likely that a Court would find that the

14   obligations resulting from termination of the swap documents

15   are not avoidable in accordance with Bankruptcy Code.  Thus,

16   the examiner's financial advisor assumes that these claims

17   would remain valid obligations of Tribune and the guarantor

18   subsidiaries notwithstanding the avoidance of the LBO lender

19   debt."  That's Volume 2, E-6.

20            Yesterday, you heard Mr. Pachulski latch on to

21   the examiner's use of the phrase reasonably likely.  And he

22   says, ah-hah, what means is that there must be some risk of

23   avoidance.  But Mr. Pachulski did so in a manner kind of

24   eerily similar to what Dr. Beron did.  He completely ignored

25   the immediately surrounding text, most notably the next

1  sentence which I read to which provides that the examiner

2  assumed for all purposes including his recovery scenarios

3  that the swap claim was a valid obligation, notwithstanding

4  a number of scenarios that provided for avoidance of credit

5  agreement debt.  And when it counted in his scenarios in his

6  modeling, they examiner assumed the swap claim was valid.

7  He never considered the swap claim susceptible to avoidance

8  and I would submit that Professor Klee wouldn't have done

9  this if there was a colorable claim for avoidance.

10         I'll also note that the examiner apparently

11  considered only defenses under 560 based on the text I read

12  to you.  It didn't consider the defenses under Section

13  546(g).  Or more importantly, he didn't consider the

14  reasonably equivalent value argument that I made to you

15  earlier.

16         Setting that aside, I think we have something

17  even more telling, probably dispositive.  And that's that

18  unlike the credit agreement loans which are, in fact,

19  subject to a myriad of claims and allegations and complaints

20  filed by the committee, the swap claim is not and never has

21  been the subject of a single count and a single complaint

22  filed in these cases.  And that includes the complaint filed

23  the committee with extensive input and the -- from and the

24  endorsement of Mr. Golden's clients.  No one's ever

25  challenged the swap claim.  The statutes run and the

1  diatribe about the infirmities of the swap claim ignores

2  that the claim is not now susceptible avoidance.

3           So for all of those reasons, we would say that

4  the swap claim is not substantially similar to the credit

5  agreement claims which were separately classified because

6  they were subject to challenge and are the product of

7  delivering a settlement that's up for approval.  We do think

8  that the swap claim is just like the other parent claims

9  which basically is the catchall at Tribune.  Why is that?

10 It arises from like any other contractual obligation of

11 Tribune.  It arises under the swap agreement, the damages

12 were calculated, and there's money due and owing.  It's just

13 any other contractual claim, all of which go into the other

14 parent class other than the credit agreements.

15          Let me pause to draw a distinction between the

16 swap claim and the guarantee of the swap claim.  As noted by

17 Mr. Golden, the swap claim is, in fact, guaranteed by all of

18 the same entities who guaranteed the credit agreement loans.

19 And it's, in fact, guaranteed under the same guarantee

20 agreement.  So we would submit that unlike at Tribune, it's

21 at least arguable that the guarantors did not receive

22 reasonably equivalent value in connection with the guarantee

23 of the swap claim, just as it is at least arguable that the

24 guarantors did not receive reasonably equivalent value in

25 connection with the credit agreement loans.

1          So as a result of this what did we do?  We

2    classified the guarantee of the swap claim together with the

3    guarantee of the credit agreement claims.  The swap claim is

4    classified with the credit agreement guarantee claims at all

5    of the guarantor debtors.  Those claims are substantially

6    similar in that they arise under the same agreement and they

7    have a similar risk profile.  Where the same claims are

8    classified together -- or excuse me, where the claims are

9    similar, they're classified together.  Where they are not

10   substantially similar, they're classified separately.  The

11   DCL plan gets the classification right.

12         Now Mr. Golden made a passing reference and there

13   was a reference in the brief to classification of the swap

14   claim as gerrymandering.  That's puzzling, Your Honor.  As

15   the Court is aware, the class of other parent claims into

16   which the swap claim is classified resounding accepted the

17   DCL plan.  If you take the swap claim out of that class, the

18   resounding acceptance still exists.  And so there was no

19   gerrymandering.  There was no need to put the swap claim in

20   the other parent claims class to get an acceptance.

21         You heard Mr. Pachulski and Mr. Golden make a lot

22   of the fact that under the April plan, the swap claim was

23   classified together with the credit agreement claims.  I

24   guess in that vein, I could note that in the same April

25   plan, the noteholders accepted a settlement of the LBO

claims that delivered less value than the plan currently on
the table.  In the April plan, the noteholders agreed to
release all of the LBO claims.  The noteholders signed off
on waivers of the state claims for disgorgement of payments.
But we all know that the April plan wasn't confirmed.  It
has no precedential effect.  It's totally irrelevant to the
questions and the plans now before the Court.  The focus on
it somewhat mystifying.  And I do observe that Mr. Golden
noted, Oaktree, my client, the holder of the swap claim now
didn't support the April plan and certainly didn't endorse
the classification of the swap claim with the credit
agreement claims.

        So there was the argument that despite all of
this, somehow it's inappropriate to have the swap claim
classified with other parent claims, I guess because the
lenders somehow are paying settlement consideration to
themselves.  The brief says this is an LBO lender paying an
LBO lender.  Let's be clear.  Oaktree was not involved in
the LBO.  It acquired certain credit agreement claims after
the fact.  It acquired the swap claim even later.  And just
because Oaktree holds one claim subject to allegations of
avoidance, it doesn't mean that the other claims it holds in
other funds somehow are at risk or that it somehow shouldn't
receive distributions provided to -- on the other claim
provided to other similarly situated creditors.  The

1  argument, I would submit, Your Honor proves nothing.

2         For all of these reasons, I submit that the DCL

3  plan does properly classify the swap claim and that it is,

4  in fact, a noteholder plan that improperly classifies the

5  swap claim with the credit agreement claims.  You may have

6  observed that that is actually one of the issues that we

7  raised in objection to the noteholder plan.  It was on our

8  list of issues to argue today, but it is precisely the same

9  argument I just made so I won't be making it again later.

10 Thank you.

11         THE COURT:  Thank you.

12         MR. GOLDEN:  May I have that time?

13 (Laughter)

14         MR. GOLDEN:  Thank you, Your Honor.  I have one

15 last confirmation objection, then my partner, Mr. Zensky

16 will argue one point and then we will finish I think

17 comfortably by what I calculate is by 3:51 our -- oh, two

18 more, I'm sorry.  Can I have a minute, Your Honor?  I'm

19 sorry, I thought I said Mr. Zensky and then followed by Mr.

20 Dublin.  But I think we will comfortably get through with

21 our allotted time.

22         Your Honor, Daniel Golden, Akin, Gump, Strauss,

23 Hauer & Feld, counsel for Aurelius and the other noteholder

24 proponents.

25         Your Honor, I rise to talk about our objection to

1  the DCL plan involving unfair discrimination and improper

2  enforcement of the subordination provisions.

3        Your Honor, at Section 7.15 of the DCL plan, it

4  provides in pertinent part as follows and I'll read.  The

5  distributions and treatments provided to claims under this

6  plan take into account and/or conform to the relative

7  priority and rights of such claims under any applicable

8  subordination and turnover provisions in any applicable

9  contracts, including without limitation the PHONES notes

10 indenture and the EGI-TRB, LLC notes, and nothing in this

11 plan should be deemed to impair, diminish, eliminate, or

12 otherwise adversely affect the rights or remedies of

13 beneficiaries of any contractual subordination and turnover

14 provisions.

15        Your Honor, whether intentional or not, we

16 believe that that is not a correct statement of the DCL Plan

17 as it's currently constructed.  And we believe that the DCL

18 plan fails to properly execute the waterfall recovery both

19 with respect to regular plan consideration and settlement

20 consideration as it relates to the distribution to Tribune

21 parent company creditors.  This problem is then compounded

22 when the DCL plan improperly enforces the applicable

23 subordination provisions found in the PHONES notes and the

24 EGI-TRB notes.  The cumulative effect of these errors all of

25 which we believe constitute violations of Section 510(a),

1   1129(a)(1), 1129(a)(3), and 1129(b)(1) of the Bankruptcy

2   Code render in our view the DCL plan un-confirmable.

3          Your Honor, it would have been so easy to execute

4   the waterfall analysis with respect to the Tribune parent

5   company creditors in a straightforward manner.  Two steps.

6   First, with respect to the plan's natural recovery for those

7   creditors, that consideration -- I'm sorry.  First, with

8   respect to natural recovery consideration and settlement

9   consideration, each of the senior notes, the swap claim, the

10  other parent company creditors, the PHONE notes and EGI-TRB

11  notes should have been initially distributed their pro-rata

12  share of both the natural recovery and the settlement

13  consideration, a very easy math exercise.

14          Second, the subordination provisions contained in

15  the PHONES notes and the EGI-TRB notes should have been

16  properly enforced to redistribute all of the respective

17  recoveries to those two parties and turn that over solely to

18  the senior notes as the only legitimate beneficiaries of

19  these two subordination provisions.

20          As Mr. Pachulski stated yesterday, it is clear

21  that the swap claim by definition even assuming its properly

22  classified as another parent company claim, a point we just

23  argued about a couple of minutes ago, simply does not get

24  the benefit of the subordination provisions under the PHONES

25  notes.  And it's highly questionable whether the swap claim

1  gets the benefit of the subordination provisions under the

2  EGI-TRB notes.  Nor does any other parent company claim or

3  claimant get the benefit of these subordination provisions.

4           The results we suggest, both sets of results

5  contained in the DCL plan are both startling and material

6  and it is pure math, a pure mathematical calculation to

7  determine the results of these faults.  As a result of the

8  misapplication of the waterfall recovery analysis and the

9  improper enforcement of the subordination provisions, the

10  swap claim is being overpaid by $22 million.  And that

11  again, assuming it stays in the other parent company class.

12  We're not even arguing this point now.  The other parent

13  company claims are overpaid by $16 million.  And guess what?

14  The senior notes are underpaid by $38 million.  The reverse

15  of the two overpayments to the swap claim and the other

16  parent company claims.  And as I said, Your Honor, this is

17  just a math calculation and it results in significant

18  discriminatory treatment in violation of the Bankruptcy

19  Code.

20           So what is the DCL plan proponent's response to

21  this?  It's the response that we find the most remarkable.

22  At Page 171 of the DCL memorandum of law, they state the

23  treatment afforded to the ordinary course trade claimants

24  and retirees pursuant to the DCL plan is part of the

25  settlement consideration provided by the senior lenders and

1    bridge lenders as part of the settlement of the released LBO

2    causes of action.   Continuing.   The trade creditors are a

3    necessary and an integral part of the continued operation of

4    the debtors' businesses.   Continuing.   With respect to the

5    retiree obligations, the debtors and the senior lenders have

6    a similar incentive to maintain good relations with former

7    Tribune employees.

8              And finally, and perhaps most startling, "Most

9    importantly the senior lenders have determined that it is in

10   their best interest as consideration for the settlement of

11   the LBO related causes of action to provide for the recovery

12   of Tribune's trade claims and retiree claims as other parent

13   company creditors.   Could there be a clearer indication that

14   the DCL plan proponents have determined that somehow the

15   provisions of the Bankruptcy Code no longer apply to them

16   and that they can unilaterally determine how to sprinkle

17   both estate consideration and settlement consideration,

18   settlement consideration consisting of proceeds from an

19   estate cause of action in any way that they see fit, even if

20   it violates the provisions of the Bankruptcy Code.

21             We believe that this is a patent violation of the

22   enforcement of the subordination provisions and the

23   waterfall recovery analysis, results in unfair

24   discrimination directed directly at the senior lenders

25   rendering the DCL plan un-confirmable as a matter of law.

1    Thank you, Your Honor.

2              THE COURT:  Thank you.

3              MR. LEMAY:  Your Honor, David Lemay for the

4    creditors' committee and the DCL proponents.

5              At heart I believe what is being propounded here

6    is an unfair discrimination argument.  It is effectively the

7    same thing that Mr. Pachulski and I were chatting about in

8    front of Your Honor yesterday.  It is the claim that the

9    money that was in a sense captured through the subordination

10   of the PHONES contractually and the EGI-TRB note was

11   improperly applied and that it was paid over to the parent

12   company creditors in contravention of their rights and

13   derogation of the rights of the bondholders.

14             And certainly, we did talk about that a little

15   bit.  I talked about some law.  Let me do a couple of things

16   to lay the groundwork.  A big question or a big element, I'm

17   sorry, Your Honor, of the answer to this question is whether

18   the swap claim which is a large claim, does have the benefit

19   of the subordination of the PHONES and the EGI-TRB notes.

20   Mr. Golden, I believe has just said that the swap claim does

21   not have that benefit.  But I go to Pages 215 and 216 of the

22   confirmation objection that they filed, excuse me.  And this

23   was signed not only by Aurelius, but also by Wilmington

24   Trust as the PHONES indenture trustee.

25             And they specifically, very specifically state in

1  their own objection that the swap claim has the benefit of

2  subordination of both the PHONES and EGI-TRB notes.  And I

3  guess I'll read because I think it is important.  They're

4  explaining at the top of Page 216 how the proper allocation

5  of PHONES and EGI-TRB subordination would be done if it were

6  done right.  And they say and I'm going to quote because

7  this is important "Second, the initial allocation to the

8  PHONES notes claims and EGI-TRB, LLC notes claims would be

9  reallocated on a pro-rata basis to senior noteholder claims

10 and the swap claim, but not to other parent claims."

11         Going on in a couple sentences further.  "Based

12 upon a proper implementation of the waterfall and

13 reallocation of the settlement consideration, recoveries in

14 respect of other parent claims excluding the swap claim

15 would drop by approximately 42 percent."  I'm ellipsing a

16 bit here now.  And it goes on to say that recoveries on

17 senior noteholder claims and the swap claims would increase.

18 It's a very, very clear, just absolutely crystal clear

19 statement by that team that the swap claim which is a large

20 piece of the parent general unsecured other claim class

21 properly has the benefit of the subordination.

22         Now what's the significance of that?  The

23 significance of that as I mentioned yesterday is that Mr.

24 Whitman testified about the financial effect of the

25 application of subordination.  Mr. Golden did his analysis

1  just now from the podium.  Mr. Whitman did his analysis from

2  the witness stand having first sworn -- having first sworn n

3  oath.

4           I would submit, Your Honor, that Mr. Golden's

5  colloquy is no substitute for Mr. Whitman's evidence.  It's

6  the only evidence in the record.  And what did Mr. Whitman

7  say?  Mr. Whitman said and I need to pause for a moment to

8  find the actual testimony.  But what Mr. Whitman said on

9  direct and then on cross and I'm looking at Page 1460, Lines

10 22 and following where he's talking about the effect of the

11 subordination.  And he says if you remove the swap which is

12 not in dispute, the remaining benefit to the retiree

13 claimants and the trade claimants at the parent is

14 approximately $400,000.  Of that amount?  The majority comes

15 out of the recoveries from the senior lenders with only

16 approximately $40,000 coming out of the recovery of the --

17 recoveries of the senior noteholders.  There's some

18 testimony on cross examination a bit later which I believe

19 is entirely consistent with that.

20           What is the significance of this?  The

21 significance of this, Your Honor, I think, goes back to the

22 way that I stated the legal test for unfair discrimination

23 yesterday.  We were having some colloquy about the *Armstrong*

24 case.  And I mentioned that the *Armstrong* case at the

25 District Court, not the Third Circuit affirmance which

1    really didn't deal with the matter, but the District Court

2    which I then thought and still think is the right way to

3    think about these things, basically sets up a test for

4    unfair discrimination which hinges completely on the issue

5    of materiality.  And what *Armstrong* and what the District

6    Court in *Armstrong* basically said is that if there's

7    material discrimination, you need to then get into some

8    further testing.  Mr. Whitman's evidence, I think is

9    conclusive of this matter.  Mr. Golden's colloquy is not

10   evidence.  I think we are dealing with a de minimus problem.

11          And just to give a little bit of the sort of

12   scale and scope of what Courts think about in applying this

13   notion of unfair discrimination and how much misapplication

14   would have to happen before it became a real problem.  I

15   mentioned yesterday a case called *Greate Bay* and I forgot to

16   actually cite it so let me cite it into the record now

17   because I think it's a pretty helpful case.  It's called

18   *Greate Bay Hotel & Casino* Greate being spelled G-R-E-A-T-E

19   for reasons that I don't know.  And it's reported at *251*

20   *Bankruptcy Reporter 213*.  The jump is to Page 231.  It's

21   from the Bankruptcy Court in the District of New Jersey.

22       And what that case says -- excuse me, at Page 231 is

23   this.  Courts which have rejected confirmation on the basis

24   of unfair discrimination, have confronted plans proposing

25   grossly disparate treatment (50 percent or more) to

1    similarly situated creditors.  Other cases I think hammer

2    that point home as well.

3            So I think, Your Honor, all in all, as a legal

4    matter, the framework of the objection is one of unfair

5    discrimination, unfair discrimination presupposes

6    materiality.  The evidence in the record shows that if there

7    is discrimination at all, it's immaterial.  And certainly,

8    as to the question of whether the swap claim is or is not

9    properly entitled to the benefit of the subordination of the

10   two classes of subordinated notes, Page 216 of the

11   noteholders' brief must be dispositive against them.  Thank

12   you, Your Honor.

13           THE COURT:  Thank you.

14           MR. ZENSKY:  Good afternoon, Your Honor.  David

15   Zensky again, Akin, Gump, Strauss, Hauer & Feld for Aurelius

16   and the noteholder plan proponents.

17           I'm going to address a third issue regarding the

18   litigation trust.  You heard Mr. Golden speak earlier about

19   objections we have to the governance of the litigation

20   trust.  You heard him also speak about the problem with the

21   option regarding the creditor trust.  Interestingly enough,

22   you had a colloquy with Mr. Golden about money issues or

23   words to that effect and this is a money issue, Your Honor.

24   And this goes to whether it is appropriate at all for the

25   LBO lenders, the banks, the parties holding the Step 1 and

1   Step 2 paper to receive a share of the litigation trust and

2   the proceeds that will flow into that trust.

3           As Your Honor knows, under the DCL plan at the

4   stated plan value, the senior notes and the parent general

5   unsecured creditors recover something on the order of 33

6   percent of their allowed claim and the PHONES get a bagel as

7   you know.  And under that plan, the initial --

8           THE COURT:  I hope it's toasted.

9   (Laughter)

10          THE COURT:  Maybe with some locks, I don't know.

11          MR. ZENSKY:  That would be better than what's

12  been offered.

13  (Laughter)

14          MR. ZENSKY:  At the same time, Your Honor, under

15  the DCL plan, we know that the holders of the Step 1 and the

16  Step 2 debt get 71 percent or thereabouts of their allowed

17  claim.  And, of course, if the enterprise value of the

18  company is higher, that percentage goes up as well.  Now not

19  content with that recovery, the lenders demanded and the

20  debtors agreed that they can and should participate in

21  recoveries that might flow into the litigation trust and

22  that we are hopeful will flow into the litigation trust from

23  third party claims.  And those are claims against directors

24  and officers, claims against advisors on the transaction not

25  being released here against Merrill Lynch, against, Citi,

1    VRC, Morgan Stanley, and the intentional fraudulent transfer

2    claims against the shareholders.  And as you know, their

3    plan provides that after the $90 million preference and

4    after the $20 million loan is repaid, that the lenders get

5    35 percent of every dollar that comes in.

6              Now this is not like what I believe to be a more

7    typical situation, Your Honor, where perhaps if Tribune had

8    a large claim for breach of contract against a party for

9    breaking an advertising contract or a trademark copyright

10   claim or something along the order of something like that,

11   that was expected to produce a material amount of

12   consideration post-petition that a claim like that might be

13   put into a creditor trust and creditors could share in that

14   under a consensual plan to help satisfy their deficiency

15   judgments.

16             This is completely different.  This is a hotly

17   contested plan which I know has not been lost on the Court.

18   And the claims that are in the litigation trust, Your Honor,

19   and this is the key point, are all premised on attacking the

20   same transaction that is being challenged in this proceeding

21   and that the lenders who now want to participate,

22   participated in. And the success of those claims will depend

23   on proving what they have denied throughout these

24   proceedings that that transaction that the Zell LBO

25   transaction rendered the company insolvent under any or all

1  of the tests.

2        So if those third party claims proceed as we go

3  into the future, Your Honor, whether by judgment or produce

4  material dollars by way of settlement, it essentially would

5  mean as far as I can see, that the claims would have been

6  successful.  The claims that are now being settled for 15

7  cents on the dollar if you look at the entirety of the non-

8  LBO debt, those claims would have prevailed.  The estate

9  would have prevailed in proving a fraudulent transfer

10  against the banks if the litigation trust prevails in

11  proving that the company was rendered insolvent in the

12  intentional fraudulent transfer, claims against the

13  shareholders, and the claims against the D's and O's or

14  perhaps the claims against some of the advisors.

15        So we'll find ourselves with a set of affairs

16  down the road up pace, where number one as we have

17  maintained throughout, the settlement consideration being

18  offered is way too low with respect to the exposure of the

19  lenders in respect to this claim.  And you know what that

20  consideration is, $240 million to the notes from the Step 1

21  holders for Step 1 avoidance and disgorgement claims; $120

22  million is being paid for Step 2 disgorgement; nothing is

23  being paid to the notes for the Step 2 avoidance being

24  released and the Step 2 claims allowed and so on.

25        So  we'll be in a situation where I think it will

1    have been proved up that that amount was too low,

2    notwithstanding that it would have been approved because

3    we're down the road under the assumption that the DCL plan

4    has been approved.  And the same lenders who now got out of

5    their liability or the avoidance claims and disgorgement

6    claims for far too little, are now going to start clawing

7    back the little that they gave to settle those claims, Your

8    Honor.  And they're going to start clawing back money

9    towards that settlement before the notes are paid in full

10   and they'll get back by my math, all of what they have put

11   into the settlement before the PHONES begin to receive a

12   dollar.

13            So from our perspective, Your Honor, that just

14   can't be right. That it is not fair and equitable under 1129

15   standards to approve a settlement like that.  It is not --

16   or a plan like that.  It is not appropriate under 9019

17   whether a best interest of the creditors' test or whether

18   it's an appropriate settlement from perspective of the

19   creditors who have not settled.  And why do I say that?  Let

20   me, you know, try to delve a little further.  And you see in

21   our brief, we talked about the policies underlying tort law

22   and we know that fraudulent transfer litigation is a species

23   of tort law and that Courts are concerned with the policies

24   of compensation and deterrence.

25            Well let me talk about compensation first.  If

1   the LBO transaction was a fraudulent transfer, the injured

2   parties were the non-LBO creditors.  Those are the ones who

3   are entitled to compensation, Your Honor, from any third

4   party recoveries, not the banks that facilitated it.  And by

5   approving their plan construct, you're basically redirecting

6   that compensation from the injured parties to the parties

7   that facilitated the transaction.

8           Let me look -- talk about deterrence.  You heard

9   a very colorful metaphor yesterday from Mr. Lemay about how

10  this was an expedition led by Mr. Zell as the captain that

11  set off on a ship across a lake and unfortunately sank 100

12  yards into its venture.

13          THE COURT:  At the bottom of the ocean so --

14          MR. ZENSKY:  Yes.

15  (Laughter)

16          THE COURT:  -- there was a mixing of things there

17  --

18          MR. ZENSKY:  Yes.

19          MR. LEMAY:  There was, Your Honor.

20          THE COURT:  -- but I got the point.

21          MR. ZENSKY:  So, you know, what he didn't add as

22  part of his, I think somewhat at metaphor was that the non-

23  LBO creditors, the creditors that existed at the time the

24  notes and PHONES were unwilling passengers on that ship,

25  Your Honor.  And what he also didn't include was that the

1  lender sitting on the side of the room financed the

2  expedition.

3            So when we talk about deterrence, I think Your

4  Honor should ask yourself number one, is that -- do we need

5  more failed expeditions like this LBO?  Do we really need

6  more?  And if the answer to that is no, the Court should ask

7  itself would a ruling here that the lenders that financed

8  that failed expedition are allowed to participate in

9  whatever money might come back to now help make whole the

10 creditors who were unwilling passengers on that ship, would

11 that facilitate or induce more transactions like this or

12 inhibit them?

13           THE COURT:  Ah, the moral hazard.

14           MR. ZENSKY:  Yes.  So on top of the fact that the

15 lenders in this and other cases like it take whatever

16 structural superiority they can get, get guarantees, get

17 security, treat the existing debt as their equity cushion.

18 You may recall that phrase.  That on top of that and on top

19 of the panoply of defenses that have been mounted in this

20 case, the Court is going to say if their plan is accepted

21 that they should participate in the recoveries that come

22 from that failed expedition before the unwilling passengers

23 get made whole.  And we don't think that that is an

24 appropriate way to resolve this, Your Honor.

25           Let me talk about some of the cases that are in

1    our brief.  Your Honor will see that we cited and I think

2    this is probably one of the most important authorities on

3    this point, the *Refco* decision out of the Southern District

4    which dismissed a fraudulent transfer action because the

5    only creditor identified in the complaint was *Refco* who had

6    loaned the debtor in that entity, and entity called Suffolk,

7    the money to buy the company that rendered the debtor

8    insolvent.  So the Court clearly held and said repeatedly

9    this is not an entity that can benefit from avoidance

10   litigation, they facilitated the transaction.

11          We also cited to Your Honor the *Yellowstone* case

12   out of Montana which I'm sure Your Honor's familiar with

13   which held that the lenders who facilitated the transaction,

14   that rendered the debtor insolvent, could not benefit from

15   fraudulent transfer litigation and other claims against the

16   original sponsor of that company.

17          Now I know Your Honor always brightens up a bit

18   when you hear that the parties actually agree on something.

19   And this actually might be one area because you'll recall

20   that in our brief, we cited to a brief filed on behalf of

21   our friends at JP Morgan in the *Lyondell* case in which they

22   take the exact same position.  In *Lyondell*, JP Morgan was

23   not an LBO lender, they actually were a shareholder that got

24   cashed out in the transaction and filed the brief along with

25   the other shareholders citing the *Refco* case and arguing

1  that the lenders who are part of the trust in that case,

2  although subordinated behind all the pre-LBO creditors can't

3  be appropriate party plaintiffs in that action.  So this

4  appears to be one area where we agree that *Refco* is the

5  right case to look to and that the lenders should not, the

6  LBO lenders cannot and should not participate in the third

7  party litigation.

8           THE COURT:  I'm not sure that's kind of agreement

9  that actually brightens me, but --

10  (Laughter)

11           MR. ZENSKY:  I thought I would give it a try.

12           THE COURT:  Well, that's okay.

13           MR. ZENSKY:  Now we also cited, Your Honor, cases

14  regarding *in pari delicto* and the concern we have that if

15  the lenders are allowed to be beneficiaries of the

16  litigation trust, that the trustee will be hit with an *in*

17  *pari delicto* defense and we have cited *Synco and Lafferty*,

18  Your Honor, and I think the law is pretty straightforward.

19  We certainly don't want to have the trust confront that

20  defense, particularly whereas you heard Mr. Golden say the

21  trust has been held out here as the saving grace of their

22  plan because it will produce material recoveries to the

23  notes and perhaps the PHONES down the road.

24           Now even if that defense is not mounted, meaning

25  *in pari delicto* or if it's mounted but not successful,

1    there's another problem that I think we'll confront or the

2    trust will confront as it proceeds with this litigation and

3    that is that the positions taken by the lenders in this case

4    will be cited back to the Court determining that action,

5    whoever that may be to use against the trust.  So we'll have

6    a situation where the lenders have a one-third interest in

7    that trust and took positions here in their brief for

8    example at Page 4, their brief in response to our objection

9    in which they argued why the economic evidence supports the

10   conclusion that Tribune and guarantor subsidiaries were

11   solvent at the times of the leverage ESOP transaction.

12            On Page 22, they state in their brief that the

13   senior lenders believe for example, that the examiner's

14   conclusions regarding fraudulent conveyance claims with

15   respect to the Step 1 transactions reinforce their views

16   that those claims were week.  So whatever strength the

17   trustee might believe the claims have, the Defendants in the

18   litigation are going to cite the positions taken by the

19   lenders, the lenders have a one-third interest in that

20   trust.

21            I suspect we'll see Mr. Fischel's testimony

22   trotted and say, you know, whatever lucky Judge is hearing

23   that case whether it's Your Honor or someone else, you know,

24   look Judge, the trustee is pursuing this case, the lenders

25   have a one-third share, look at the positions they've taken

1  on the strength of these claims.  They say there is no claim

2  here.  So that is a if not strict in pari delicto, it's kind

3  of another form, judicial estoppel, whatever doctrine the

4  argument might take that the trust will confront and will

5  further impair its ability to collect.

6              Now in their brief, the DCL plan proponents cite

7  two cases, *Telesphere and Best Products* to support the

8  proposition that it is appropriate for them to share in the

9  trust.  And those were both 9019 cases.  Your Honor, in

10 neither case was it actually determined over an objection, I

11 believe or it was certainly not determined as to the

12 propriety of an LBO lender sharing in the recovery.  And

13 what the Court's analysis in those two cases show, I believe

14 is that if the litigation proceeded to judgment which is

15 part of the 9019 analysis, what would result from it?  And

16 both of those Courts said well, the lenders in this case

17 would have their claim avoided and might have to put back

18 into the estate the consideration they took out pre-

19 petition, but they would still have a claim.  And where they

20 would be in line, we're not sure.  They might be behind the

21 junior creditors.  The might be *pari passu* of the junior

22 creditors, but they'll be in the mix.

23             And therefore, the settlement that has been

24 reached has to take into account what would happen if the

25 litigation went full distance. That's not the situation.

1  This situation is a 15 cent on the dollar settlement and at

2  the same time the lenders are demanding to take 35 percent

3  of the trust proceeds.

4          So I don't believe the analysis in *Telesphere or*

5  *Best Products* supports in any way the claim being made here

6  that it is appropriate for them to participate.  It would be

7  appropriate if the claim was avoided in its entirety.

8          Now Your Honor may ask as you sit down to resolve

9  this, well why isn't this an issue for the Court down the

10 road?  I know you've asked that question in other context

11 during the course of these proceedings.  I don't believe it

12 works to say well, we'll just kick this issue down the road

13 and let the Courts hearing the third party action, the

14 litigation trust proceedings decide it.

15         One, once this plan becomes final and non-

16 appealable, if you approve it, the 35 percent sharing is

17 then fixed in stone and whatever may happen down the road in

18 those other cases, the trustee and the lenders will claim

19 they're bound to follow the dictates of this plan and they

20 get 35 percent of whatever recoveries come in

21 notwithstanding the rulings of the subsequent Court.

22         But a more practical consideration is the

23 following.  It's certainly our view that some of the claims

24 in the litigation trust will settle.  And if they settle

25 before the issue is teed up as to whether an in pari delicto

1  defense is available or whether the lenders who facilitated

2  the transaction can be beneficiaries, then they'll never be

3  a ruling on that issue.  The money would flow in and again,

4  the lenders would demand the 35 percent of the proceeds once

5  the first $90 million is exceeded.  So in this instance,

6  while -- in this instance, I don't believe it would be

7  satisfactory to say well, this is an issue for the later

8  tribunals to decide.

9          So, you know, I come back to Your Honor on this

10  motion.  They have the burden to prove that the plan is

11  appropriate.  That the settlement is in the best interest of

12  creditors and that it's fair and equitable.  And I think for

13  the reasons that I have identified and the course of the

14  trial, it's certainly our strong view that this aspect of

15  the plan certainly is not fair and equitable and should not

16  be approved.

17          THE COURT:  I'm going to take a ten minute break.

18  Court will stand in recess.

19  (Recess from 3:17 p.m. to 3:32 p.m.)

20          THE CLERK:  All rise.  Be seated, please.

21          MR. JOHNSTON:  For the record, Jim Johnston

22  again.  I'll be pretty brief on this point, Your Honor.

23  It's really hard to understand how the arguments that Mr.

24  Zensky was articulating are anything other than a direct

25  attack on the settlement in the DCL plan.  And frankly, I'm

1  not really sure what we're doing arguing about it today when

2  we're going to see all the same arguments in the post trial

3  brief and hear all the same arguments at closing.  Mr.

4  Zensky's entire argument is premised on the unproven

5  allegations that form the basis for the noteholders'

6  objection to the settlement and the avoidance claims that

7  they so vigorously want to assert.

8            THE COURT:  But for which the lenders ostensibly

9  have given up value to settle.

10            MR. JOHNSTON:  That is precisely right.  And I

11  will get to why that is important in a moment.  And it's

12  actually the key response here.  And actually, the argument

13  is absolutely bound up with the Court's consideration of the

14  fairness of what the lenders are giving as consideration.

15  When you go back to the argument as articulated, I think

16  it's best summarized in their brief where they do a lead in

17  paragraph to the sections, it's Paragraph 347 at Page 185.

18  And there the noteholders claim that the LBO lenders must be

19  prohibited from recovering proceeds from the litigation

20  trust because and then they give three things.

21            One, the LBO lenders consented to the fraudulent

22  transaction upon which the remaining LBO causes of action

23  are premised and therefore must be estopped from challenging

24  its validity.

25            Two, the LBO lenders and/or the debtors bad acts

1  may be imputed to the trustees if the LBO lenders

2  participate in the LBO related causes of action.

3         And three, the LBO lenders could jeopardize the

4  litigation trustees' ability to prosecute the remaining LBO

5  related causes of action through application of in pari

6  delicto under which a plaintiff who shares fault with the

7  defendant is barred from recovering on the action.  The

8  operative words there, fraudulent transaction, bad acts,

9  share's fault.

10         You heard Mr. Zensky use similar words this

11  afternoon.  This is all what the noteholders allege. None of

12  this alleged wrongful conduct or bad acts has been proven.

13  There's been no determination that any one of the lender's

14  claims is even avoidable, let alone that the lenders engaged

15  in the type of egregious conduct necessary to invoke the

16  doctrine that Mr. Zensky addresses.  And the DCL plan

17  settles the claims premised on those unproven allegations.

18  It's a settlement.  It's not an admission of liability.  And

19  one important component of that settlement is the division

20  of proceeds of litigation on claims that aren't settled

21  under the DCL plan.

22         In fact, in the settlement negotiations, the

23  committee bargained hard to get as favorable as possible an

24  allocation of litigation proceeds for the noteholders and

25  the other parent claims.  And frankly, the committee

1  succeeded wildly in that regard.

2          Mr. Zensky summarizes, but I think it's important

3  to stop and focus on that for a moment.  The settlement

4  reach provides first for those so called non-LBO creditors

5  to keep the first $90 million of the net litigation

6  recoveries all to themselves, no sharing by my clients or

7  other lenders.  And then to take 65 percent of the future

8  net recoveries from the litigation trust after the $20

9  million loan is repaid.

10          This is in stark contrast to the natural order of

11  things which would have credit agreement lenders taking

12  nearly 85 cents of every dollar of recovery from any

13  litigation proceeds brought into the estate.  That

14  disproportionate allegation of litigation proceeds in favor

15  of the so called non-LBO creditors is part of the settlement

16  consideration provided by the credit agreement lenders.

17          At the end of the day, Your Honor is going to be

18  called upon to decide whether the entire package of

19  settlement consideration including the allocation of

20  litigation recoveries is within the range of reasonableness.

21  That's what this case is all about.  But what the

22  noteholders want you to do is sweep all of that under the

23  rug and act like they've already won the litigation that's

24  settled in the plan.

25          They ask you to assume that the lenders committed

1   bad acts.  They ask you to assume that the lenders acted in

2   equitably.  You may ultimately conclude that it's likely

3   that the lenders acted in the manner that they allege.  We

4   don't think you will.  We don't think the evidence supports

5   the allegations.  If you do, you probably won't confirm our

6   plan.  You probably won't approve our settlement.

7           But you can't do as Mr. Zensky suggests which is

8   to toss out the settlement on the grounds that one of its

9   components is a provision for credit agreement lenders to

10  share in a manner highly unfavorable to credit agreement

11  lenders in future litigation proceeds.  Doing that, assumes

12  the conclusion of this litigation.  It assumes that the

13  lenders are already equitably subordinated.  That they've

14  already been found to have acted wrongly.  Those are the

15  claims and allegations that are the very things that are the

16  subject of the settlement.

17          The noteholders have cited no authority

18  whatsoever for the proposition that as part of a settlement

19  of a fraudulent conveyance claim -- and I hark back to

20  something you said earlier in the case which is that the

21  term fraudulent conveyance itself is something of a

22  misnomer --

23          THE COURT:  Well, at least with respect to

24  constructive fraudulent.

25          MR. JOHNSTON:  At least with respect to

1   constructive fraudulent conveyance, and even an intentional

2   fraudulent conveyance, it's the intent of the transferor,

3   not the transferee, not the people who actions they're

4   complaining about right now.  This is part of the settlement

5   to fraudulent conveyance claims.  As part of a settlement of

6   fraudulent conveyance claims, there's not authority that

7   says that a defendant lender cannot bargain to receive a

8   portion of future litigation recoveries in respective claims

9   that aren't settled, even if they're based on the same

10  operative facts.

11          All of the cases cited in their brief and all of

12  the cases you've heard about this afternoon are based upon

13  variations of the same theme.  That's where a party's found

14  to have committed a wrong or to have acted inequitably may

15  be unable to benefit from their misconduct.  And the key

16  there is found.  The cases discuss situations where a party

17  has been adjudicated to be wrong.  They don't involve

18  settlements of unproven allegations, and they aren't

19  applicable to this settlement.

20          If Your Honor decides that our settlement is

21  inadequate, we'll deal with the consequences.  But we don't,

22  and we submit that you shouldn't abide the argument that the

23  mere fact that allegations of misconduct have been made

24  somehow renders a settlement of the claims based on those

25  allegations inadequate, and at bottom, that's what you

1   heard.

2          THE COURT:  Should it have any relevance

3   whatsoever?

4          MR. JOHNSTON:  No, I don't think so.  It's not

5   separate and apart from your consideration as to whether the

6   package of settlement consideration is reasonable, based on

7   the evidence that's been presented to you and the claims

8   that have been asserted.

9          Two final points.  One, Mr. Zensky referenced

10  positions taken by JPMorgan, a co-plan proponent in the

11  Lyondell case.  Frankly, from what I could tell, reading the

12  one-sentence blurb about that case in their brief, it seems

13  relatively consistent.  There were arguments made in the

14  motion to dismiss in an adversary proceeding, but, you know,

15  we've heard a lot about Lyondell in this case.  I don't know

16  what was argued in that particular motion.  My client

17  certainly didn't make the arguments.  You've -- we've heard

18  a number of times in which Mr. Zensky's firm has taken

19  positions with which they now take contrary positions.  It's

20  just not precedential, frankly.

21         THE COURT:  Well, often amusing, but almost never

22  the subject for something like judicial estoppel.

23         MR. JOHNSTON:  And I will say nothing further on

24  that point.

25         One final point, though, which is about the plea

1  that was made to Your Honor not to kick this can down the

2  road, not to leave it to some other court to decide.  If Mr.

3  Zensky was right about that, it would be a fatal blow to the

4  noteholder plan.  That's exactly what the noteholder plan

5  does with every single cause of action arising out of the

6  2007 transactions.  It provides for everybody to get an

7  interest in potential litigation recoveries to be determined

8  at some future date by some future court as to who can share

9  and how.  Talk about kicking the can down the road: that's

10 what they do in spades.

11        That's all I have.  Thank you.

12        MR. DUBLIN:  Good afternoon, Your Honor.  Again,

13 for the record, Phil Dublin, Akin Gump Strauss Hauer & Feld

14 on behalf of Aurelius and the other noteholder plan

15 proponents.

16        Your Honor, we're now on the last legal objection

17 that the noteholder plan proponents have today, and it, I

18 think, works out quite well, because it runs into the first

19 legal objection that the DCL plan proponents have to the

20 noteholder plan.

21        THE COURT:  Wouldn't it be something if that were

22 the dispositive and threshold issue --

23 (Laughter)

24        THE COURT:  -- of each of these matters?

25        MR. DUBLIN:  And it very well may be, depending

1   on how Your Honor rules.

2         THE COURT:  Um-hum.

3         MR. DUBLIN:  The last issue involves 1129(a)(10).

4   And the issue at hand is where you have a proposed joint

5   Chapter 11 plan of reorganization for multiple debtors, as

6   we have with both of the competing plans and whether, with

7   respect to that joint plan of reorganization, for purposes

8   of satisfying 1129(a)(10), the plan must have an impaired

9   accepting class for -- one impaired accepting class for each

10  debtor or one impaired accepting class for the entirety of

11  the plan.  The noteholder plan proponents' position is it's

12  a per-plan requirement.  The DCL plan proponents' position

13  is it's a per-debtor requirement.

14        We acknowledge that if it's a per-debtor

15  requirement, the noteholder plan does not meet the

16  requirement.  The interesting factor, however -- the

17  interesting fact is neither does the DCL plan.  The DCL plan

18  has 37 debtors where there was not an impaired accepting

19  class.  Now, I will note that that is not where they had 37

20  affirmatively rejecting classes.  There were 37 debtors

21  where the impaired accepting class had no creditor vote.

22  And I'll come back to that in a little while, and it's also

23  something that we discussed at the disclosure statement

24  hearing, but people were arguing maybe at different points

25  at that time.

1              But let's focus on 1129(a)(10) to begin with,

2    because I think the analysis begins and ends with the plain

3    language of the statute.  As the Supreme Court held in

4    Caminetti v. U.S. at 242 U.S. 470 (1917): "When a statute's

5    language is plain, the sole function of the courts is to

6    enforce it according to its terms."

7              The language of Section 1129(a)(10) is as plain

8    as it gets.  "If a class of claims is impaired under the

9    plan, at least one class of claims that is impaired under

10   the plan has accepted the plan, determined without including

11   the acceptances of the plan by any insider."  As I

12   mentioned, each of the noteholder plan and the DCL plan

13   satisfies the plain language of the section.

14             Now, we talked about plain language a little bit

15   yesterday, and the Court mentioned that even when language

16   is plain, sometimes the Court likes to look at legislative

17   history to see if it confirms the Court's plain language

18   reading of the statute.  Well, as the Central District of

19   California noted in *Barakat* at 173 B.R. 672 (Bankr. CD Cal.

20   1994), the legislative history in 1129(a)(10) is sparse.  It

21   does not discuss at all whether the section is a per-plan or

22   per-debtor requirement.  So we can look even further -- even

23   though we don't need to look past the plan language, we can,

24   and we can go look at case law.  And both the noteholder

25   plan brief and the DCL plan proponents' brief talk about

1   cases.  Now, I say one talks about case law analysis and one

2   talks about orders that have been entered, and we'll get to

3   that in a moment.

4          Each case that was cited by the noteholder plan

5   proponents critically analyzes the application of

6   1129(a)(10) to a joint plan as to whether it is a per-debtor

7   or per-plan requirement.  The first case I'd like to start

8   with discussing is In Re: SGPA 2001 Bankruptcy Lexus 2291,

9   Bankruptcy Middle District of Pennsylvania, September 28,

10  2001.  In SGPA, Chief Judge Woodside considered whether a

11  joint plan must have an impaired accepting class under

12  Section 1129(a)(10) for each of the 11 debtors that were

13  subject of the joint plan of reorganization.

14         However, for 10 of the 11 debtors, that

15  requirement was not satisfied.  In that case, a group of

16  subordinated bondholders was arguing the same position that

17  the DCL plan proponents were arguing today, that without an

18  impaired accepting class of each debtor, the plan has to

19  fail.  In conducting its analysis, the SGPA Court

20  considered, among other things, two cases that the DCL plan

21  proponents cite in their objection to the noteholder plan:

22  Drexel Burnham and In Re: Medic, Inc.  In Drexel Burnham, at

23  138 B.R. 723, Bankruptcy Southern District New York (1992),

24  the SGPA Court looked at a holding, looked at the case.

25  Well, the case didn't discuss 1129(a)(10).  There was no

1   critical analysis.  All it said was that 1129(a)(10) has

2   been satisfied, because there's an impaired accepting class

3   at each debtor.  But there was no critical discussion of the

4   rule or of the statute.  Medic, there wasn't even a holding.

5   Now, that is Judge Walrath, and as the DCL plan proponents

6   acknowledge, it was a colloquy between Judge Walrath and

7   counsel.  And I think the way they, the DCL plan proponents,

8   phrase the case, it's almost an attempt to -- it appears to

9   be an attempt to potentially mislead the Court, but it was

10  clearly a colloquy.

11          And what Judge Walrath said is the way she was

12  looking at the issue was she found it hard to believe that

13  it would be a per-plan requirement as a per-debtor

14  requirement, but she acknowledged that there was no case law

15  in front of her.  She did not know of any holdings on the

16  issue, and she asked for supplemental briefing.  However,

17  before Judge Walrath had an opportunity to rule on the

18  issue, the underlying plan was modified, and she did not

19  rule.  And in that regard, the SGPA Court looked back at the

20  colloquy that Judge Walrath had with counsel and noted that

21  it resulted in "little more than an intellectual exercise,

22  unpersuasive as precedent in the matter before me."  That's

23  SGPA at 17.

24          The SGPA Court ultimately agreed with the

25  debtors' position that, in a joint plan of reorganization,

1   it is not necessary to have an impaired class at each

2   debtor; it is a per-plan requirement when you have a joint

3   Chapter 11 plan.

4          The next case that we talk about in our brief,

5   Your Honor, is Enron.  Judge Gonzales in Enron at 2004

6   Bankruptcy Lexus 2549, Bankruptcy Southern District of New

7   York, July 15, 2004 also undertook an analysis to determine

8   whether 1129(a)(10) was a per-plan or per-debtor

9   requirement.  He held, "The plain language and inherent

10  fundamental policy behind Section 1129(a)(10) of the

11  Bankruptcy Code provides that an affirmative vote of one

12  impaired class under a plan is sufficient to satisfy Section

13  1129(a)(10) of the Bankruptcy Code."  Enron at 235.

14         Now, the DCL plan proponents try to distinguish

15  Enron under -- in their objection by saying it was a

16  substantive consolidation plan.  Well, it was a substantive

17  consolidation plan, but Judge Gonzales pointed out that it

18  was aside from the plain meaning analysis.  And he said,

19  "Further, aside from the plain meaning analysis, by virtue

20  of the substantive consolidation component of the global

21  compromise, the requirements of Section 1129(a)(10) are

22  satisfied as to each of the debtors lacking an impaired

23  accepting class, because those debtors are part of the

24  global compromise under the plan."  That's Enron at 234.

25  Now, again, it was a joint plan, multiple debtors, as we

1   have here, for both the DCL plan and the noteholder plan.

2           The same thing happened in Charter Communications

3   recently, 419 B.R. 221 (Bankr. S.D.N.Y. 2009), Judge Peck

4   held the same thing.  He said, "It is appropriate to test

5   compliance with Section 1129(a)(10) on a per-plan basis, not

6   as the objecting noteholders argue, on a per-debtor basis."

7   That's Charter at 226.  Judge Gambardella in Resorts

8   International held the same thing, with only three of four

9   debtors had impaired accepting classes in a joint, multi-

10  debtor Chapter 11 plan.  That's at 145 B.R. 412 (Bankr. D.

11  N.J. 1990).

12          Now, the DCL proponents cite to other decisions,

13  in addition to Medic and in addition to Drexel Burnham.

14  They cite to Nina Enterprises.  They cite to International

15  Wireless.  However, these aren't decisions.  These are

16  confirmation orders.  They're standard confirmation order

17  that many courts will enter when there is no objection, and

18  I believe it was Mr. LeMay yesterday who astutely observed

19  that when there is just a confirmation order and it's not

20  the result of a litigated decision, its precedential value

21  should be "limited or probably discounted entirely".  And

22  all of the cases that are relied upon by the DCL plan

23  proponents, to assert that 1129(a)(10) is a per-debtor

24  requirement and not a per-plan requirement, has absolutely

25  none of a -- no critical analysis.  All of the cases --

1  where there is critical analysis, all of them have come out
2  and held it is a per-plan and not a per-debtor requirement.
3          I submit, Your Honor, that that ends the analysis
4  with respect to 1129(a)(10), based on the plain language and
5  the legal precedent.  But then, we get into an interesting
6  situation if this Court disagrees.  We have a situation
7  where we do not have an impaired accepting class at each
8  debtor in either plan.  And I mentioned earlier, it was
9  going to bring us back to the disclosure statement hearing.
10 And the Court may recall, back at the disclosure statement
11 hearing, we had this exact issue.  And it was I who raised
12 this issue and advised the Court that we were going to have
13 a provision in our plan that said if we had an impaired
14 accepting class -- I'm sorry -- if we had an impaired class
15 of creditors where no creditor voted, they would be deemed
16 to accept.  The Court said, essentially, that's interesting.
17 Not aware of any 3rd Circuit precedent on the issue.  And
18 that was correct; there's no 3rd Circuit precedent on the
19 issue.  And Mr. Lantry for the debtor stated --
20 acknowledging that it was a confirmation issue, that this
21 would be "unusual treatment".
22          So, the Court required us to put in, explicitly
23 in our disclosure statement as well as in our plan, a
24 provision that notified holders voting on the plan or
25 eligible to vote on the plan, what would happen if they

1    didn't vote.  So what we did is exactly that, and then put

2    in a special heading entitled "failure to vote on the

3    noteholder plan".  It was at page 69 of our disclosure

4    statement, and it said, "If noteholder of claims in a

5    particular class vote to accept or reject the noteholder

6    plan, except for such classes that are deemed to reject the

7    noteholder plan, the noteholder plan shall be deemed

8    accepted by holders of such claims in such class."  And as

9    this Court required, we cited applicable legal precedent for

10   that proposition, and we cited In Re: Ruti Sweetwater, Inc.

11   at 836 F. 2d 1263, 1266 (10th Cir. 1988) as well as In Re:

12   Adelphia Communications Corporation, 368 B.R. 140, 261, 263.

13   And we also noted that you should take a look at -- and I

14   can't even pronounce it, so I'm just going to spell it In

15   Re: Szostek, 836 F. 2d. 1045 --

16              THE COURT:  Szostek.

17              MR. DUBLIN:  Thank you, sir.  3rd Circuit (1989).

18   Now, in Sweetwater, it was an interesting situation, because

19   it was a -- there was the class that did not vote but was

20   impaired was a one-member class, so there was nobody else to

21   solicit for that class.  And when that party didn't vote,

22   the Court said, you sat on your heels, and I'm not going to

23   let somebody not -- just sit on their heels and not -- and

24   allow a plan to go down that is otherwise widely accepted.

25   In Adelphia, Judge Gerber looked at the Ruti Sweetwater

1   case, and he liked some things about it, but he was really

2   focused on disclosure.  And he was of a similar view where

3   he said, "If noteholders of claims" -- I'm sorry.  He

4   required disclosure and a supplemental disclosure statement

5   that was filed, and the plan in *Adelphia* and the disclosure

6   statement contained the following provision: "If noteholders

7   of claims or equity interests eligible to vote in a

8   particular class vote to accept or reject the plan, the plan

9   will be deemed accepted by the holders of such claims or

10  equity interests in such class." *Adelphia* 368 B.R. at 260.

11  Now, Judge Gerber, again, as I mentioned, was highly focused

12  on there being disclosure to the people that were being

13  solicited to vote on the plan and what the consequences

14  would be to them if they did not.  And he went on to say, "I

15  think *Ruti Sweetwater* is rightly decided, especially in a

16  situation like that one and here, where dozens of classes

17  vote, where the effect of not voting is announced in

18  advance, and everyone else will be burdened by those who

19  simply don't vote at all." *Adelphia* 368 B.R. at 261.

20          Now, there are two important factors at play in

21  this case that differ from Sweetwater and *Adelphia.*  One is

22  the position that the debtors took at the disclosure

23  statement hearing.  Now, I'm not going to say it's judicial

24  estoppel, because we didn't have a ruling, and it was not a

25  litigated issue.  But you don't necessarily have to have a

1  litigated issue on the point.  It was clear from that

2  hearing that the debtors took issue with whether this

3  provision, where you could have an impaired class not vote,

4  could otherwise be deemed to vote.  They also did not

5  include the disclosure that was required by this Court to be

6  included in the noteholder disclosure statement as to what

7  would be the ramifications to a class if they did not -- if

8  no creditor in that class voted.  To allow the debtors to

9  now completely flip-flop their position and come back and

10  try to say, we acknowledge that we don't satisfy

11  1129(a)(10), to the extent it's a debtor-by-debtor

12  requirement, but we're going to go ahead and rely on that

13  line of cases that we criticized at the disclosure

14  statement.  Oh, and don't worry about the fact that we

15  didn't put in a disclosure that you required the noteholder

16  plan proponents to do.  That just does not seem like it

17  would be an equitable solution or an equitable outcome in

18  these cases.

19        Unless the Court has any questions --

20        THE COURT:  No, well, just comment.  I -- you

21  know -- well, you know what the so-called standard

22  confirmation orders are like, and I just have something in

23  the back of my head that I did approve a plan, which had

24  such a provision in it, but I do believe it was in the

25  absence of objection.

1          MR. DUBLIN:  Thank you, Your Honor.

2          THE COURT:  All right.

3          MR. LEMAY:  Your Honor, may I have one moment?  I

4    just need to get some more ammunition here.

5    (Laughter)

6          MR. LEMAY:  Your Honor, David LeMay from

7    Chadbourne & Parke for the official committee.

8          First, on a procedural note, I believe the

9    noteholder proponents were finishing off their objection --

10   objections to our plan.  Mr. Dublin just gave a very nice

11   speech.  It wasn't really an objection to our plan.  I think

12   what he really did was he gave his argument on why their

13   plan should withstand the Section 1129(a)(10) objection by

14   me.  And the reason I make that point is I think it'd be

15   pretty unfair right now if he get another crack at this when

16   I'm done, so I hope we have agreement that once I sit down,

17   1129(a)(10) is done.  Or certainly -- I don't know why I'm

18   looking at Mr. Dublin.  It's actually to Your Honor.

19   (Laughter)

20         MR. LEMAY:  I apologize.

21         THE COURT:  Well, I would consider his view.

22         MR. LEMAY:  I'm sorry, Your Honor?

23         THE COURT:  I said I would consider his view.

24         MR. DUBLIN:  Your Honor, I would expect that if I

25   had any comments, they'd be very brief.

1          THE COURT:  All right.

2          MR. LEMAY:  So we're here, Your Honor, to talk

3     about Section 1129(a)(10), which is sort of the orphaned

4     stepchild, I guess, of confirmation jurisprudence.  It's the

5     first time in my career I've ever had to think very hard

6     about it.

7          In order to unpack this issue, I think what we

8     need to do is to distinguish a little bit between the facts

9     relating to the DCL plan and the facts relating to the

10    noteholder plan.  So let me talk about some facts that I

11    don't think are in dispute and certainly are --

12         THE COURT:  Oh, I'm sorry.  It comes up in the

13    artificial impaired subject sometimes, yeah.

14         MR. LEMAY:  It does.

15         THE COURT:  Okay.

16         MR. LEMAY:  It does.

17         THE COURT:  Not quite this way.

18         MR. LEMAY:  I just haven't had occasion to bump

19    into it.

20         THE COURT:  Understood.

21         MR. LEMAY:  It's been a new learning experience

22    for me, and I'm proud of myself for having figured it out.

23    (Laughter)

24         MR. LEMAY:  Or trying to.

25         THE COURT:  Are you still going to books in the

1    library, or are you researching online, Mr. LeMay?

2              MR. LEMAY:  That's why we have associates, Your

3    Honor.

4              THE COURT:  Okay.

5    (Laughter)

6              MR. LEMAY:  I want to talk a little bit about the

7    DCL plan.  The DCL plan covers 111 debtors and 178 voting

8    classes in the DCL plan.  Of that 178 voting classes, 138

9    voted yes; 3 voted no.  those three are all at the parent,

10   so they all -- the three voting classes all happen to be at

11   the parent, and the relevance of that, for this discussion,

12   is that since the parent has several accepting classes under

13   the DCL plan, we don't have an 1129(a)(10) issue on our plan

14   at the parent.

15             Mr. Dublin is right.  There are 37 other debtors,

16   almost exclusively non-operating shell companies, where no

17   one bothered to vote either way on the DCL plan.  But the

18   fundamental template against which Your Honor has to think

19   about these 1129(a)(10) arguments on the DCL plan is one in

20   which, across the wide spectrum of debtors, and in all but a

21   few classes, there has been affirmative acceptance of the

22   DCL plan.  As a result of the recent stipulated resolution

23   of the objections by some -- by certain claims traders, and

24   I think the -- that stipulation has not yet reached Your

25   Honor, but it has been signed, several previously rejecting

1   classes of OPGO subs have now changed their votes or seek to

2   change their votes and want to accept the plan.

3           So you've got the 3 rejecting classes and the 37

4   classes where no votes at all were cast.  As to our plan,

5   that brings Section 1129(a)(10) into play.  No parties

6   objected, in its confirmation briefing, to the confirmation

7   of the DCL plan on an 1129(a)(10) basis.  I scoured -- as

8   you could tell from the last time I was up here, I've paid

9   some attention to the noteholders' brief, and I scoured the

10  noteholders' brief on this issue, and they don't complain

11  about Section 1129(a)(10).  But I think what Mr. Dublin is

12  saying is that if he has a problem, so do I, and I don't

13  think that's quite right.

14          I think it's well-established that, as to the 37

15  debtors at which no votes were cast, I think the law's

16  pretty clear that in a large, jointly administered case,

17  such as this one, when a class casts no vote, despite being

18  solicited to cast votes, that class can be treated as having

19  accepted.  Mr. Dublin is right that the *Ruti Sweetwater* case

20  is the precedent for that.  So is *Adelphia*.  Those cases

21  aren't quite on all fours with the 1129(a)(10) posture that

22  we're addressing, and the reason that they're not is that

23  they both come up under the rubric of Section 1129(a)(8),

24  which is the rule that says you have to have all impaired

25  accepting classes accept; otherwise, you default to 1129(b)

1  cram-down.   That will be relevant in a moment.   There is

2  some relevance to the fact that these come up under

3  1129(a)(8).

4         But they do stand for the basic proposition that

5  courts will now allow creditor apathy to derail cases,

6  particularly when you're talking about *de minimis* creditors.

7  That's consistent, too, with the statutory framework of the

8  Bankruptcy Code itself.   Section 1126(c) is the section of

9  the Bankruptcy Code that tells us how you count votes in a

10  class.   And what Section 1126(c) does is it says you judge

11  acceptance or rejection based on the votes cast.   That

12  actually is a change from the former Chapter 10 rule.   Under

13  the former Chapter 10 rule, you had to judge acceptance or

14  rejection based on the total number of available votes, or

15  votes that could be cast.

16         So Congress, in enacting Section 1126(c), clearly

17  was worried about the issue of voter apathy and not wanting

18  to stymie plans over people who could but didn't vote.   And

19  so, I think the *Ruti Sweetwater* case, which stresses that

20  rationale, is well grounded.   The noteholders do say, in

21  their disclosure statement, that *Ruti Sweetwater* is good

22  law, so I'm happy to hear that we don't have any disclosure

23  -- any -- I'm sorry.   I'm happy to hear that we don't have

24  any dispute about that.   It was also, I think, their

25  position at argument.   I don't think there's any dispute

1   about *Ruti Sweetwater* being good law.

2          With respect to *Adelphia*, I think you -- first, I

3   think that the supplemental solicitation that happened in

4   *Adelphia* is not critical to the holding of that case.  In

5   any event, it certainly wasn't a component of *Ruti*

6   *Sweetwater*.  I think that the Court can, just based on

7   eliciting the purpose of Section 1126(c), and basically just

8   looking at what happens when no one votes at all at a few

9   minor debtors, easily decide that *Ruti Sweetwater* applies.

10          Now, some later cases have taken shots at *Ruti*

11  *Sweetwater*, and they've criticized it, but this is where the

12  distinction between 1129(a)(8) and 1129(a)(10) becomes

13  relevant for the Court.  The cases that have criticized *Ruti*

14  *Sweetwater* have all done so because they perceive that the

15  invocation of *Ruti Sweetwater*, in the 1129(a)(8) context,

16  would, in effect, be an impermissible shortcut around

17  putting on a cram-down case.  What the courts have said is,

18  why are you doing this, when the default would be you've

19  just got to make out a cram-down case and confirm under

20  1129(b)?

21          That, of course -- that option, that default

22  option, isn't available under Section 1129(a)(10), and so

23  the choice that the Court -- that a Court has in a situation

24  like the DCL plan is, do we apply *Ruti Sweetwater* and do we

25  confirm, or do we say that these 37 debtors, which are

1  basically shell companies, should linger in bankruptcy

2  forever?  And in the face of massive affirmative acceptance

3  of the DCL plan, I think there is more than ample basis to

4  apply the *Ruti Sweetwater* doctrine, and I think *Adelphia*

5  stands for this as well, and to say that the failure of the

6  creditors in those 37 shell entities to vote, even though

7  they were asked to vote, should not stop the show.

8          The flipside of this, of course, is the

9  noteholder plan.  And it's a pretty different story.  In

10  contrast to the very overwhelming acceptance at all but

11  three classes of the DCL plan, the noteholder plan was

12  massively rejected.  I think there are three classes that

13  accepted the noteholder plan.  The senior notes and the

14  PHONES at the parent both accepted the noteholder plan, not

15  surprising.  There is an OPGO class where the vote is, I

16  believe, $48.10 one claim was voted, creating acceptance in

17  that class.

18          So I think we have a dramatically different

19  factual posture against which to assess Section 1129(a)(10)

20  compliance: on the one hand, acceptance in all but a very

21  few classes; on the other hand, affirmative rejection and

22  repudiation by almost every class.

23          The noteholder proponents now say that they can

24  confirm, notwithstanding that massive and almost across-the-

25  board repudiation, because Section 1129(a)(10) should be

1  tested on a per-plan basis and not on a debtor-by-debtor

2  basis.  And they have put, in their plan, a quote that says

3  that.  Section 1129(a)(10) of the Bankruptcy Code, they say,

4  Section 4.6.1 of their plan says that Section 1129(a)(10)

5  "shall be satisfied for purposes of confirmation by

6  acceptance of the noteholder plan by an impaired class of

7  claims".  And so, I think what they're trying to do is erect

8  an *ipse dixit* argument where, because they've said it in

9  their plan, it's going to be true.  And they've done that a

10  little further on, with respect to an amendment that they've

11  made, that I'll get to in due course.

12          But Your Honor, if substantive requirements for

13  confirmation could be satisfied by people putting things in

14  their plan, we would've had a much shorter confirmation

15  hearing, because we would've put in our plan that it was

16  proposed in good faith and that it was a valid compromise

17  under Rule 9019, and we would've said we could all go home.

18  We know we can't do that, and neither can they.  These are

19  independent requirements of law.

20          Mr. Dublin, in parsing through the authorities,

21  did look at the colloquy in the Medic case in front of Judge

22  Walrath in which she, in colloquy, pretty much said that you

23  -- she thought you had to test on a plan-by-plan basis.  I

24  thought I heard a suggestion that we were somehow

25  intentionally misleading the Court in our brief by

1    suggesting that Medic was more than colloquy, but I'd invite

2    Your Honor's attention -- just because I feel like I had a

3    little dirt kicked on myself there, I'd invite Your Honor's

4    attention to page 6 of our brief, in which we cited the

5    colloquy, called it colloquy, and said that the Court did

6    not ultimately issue a decision on the substance of

7    1129(a)(10) because, following the above colloquy, the plan

8    was amended in a manner that mooted the concerns raised by

9    Judge Walrath.  So just as a sort of point of personal

10   privilege, I would like to reject the notion that there's

11   been any misleading, intentional or otherwise, based on

12   Medic.

13          But I think Medic, although it's not a holding,

14   and its, at best, persuasive authority, does stand for the

15   proposition that 1129(a)(10) needs to mean something, and it

16   needs to mean, in this context, that you go debtor by

17   debtor, subject only to the *Ruti Sweetwater* exception for

18   those people who can't be bothered to vote.  And again, I

19   don't like to do these gulches, because I just heard Your

20   Honor speak with respect to people's inconsistent positions

21   not amounting to judicial estoppel.

22          THE COURT:  I said not usually.

23          MR. LEMAY:  Not usually.  I do think, though,

24   that when a litigant, a sort of frequent-flyer customer of

25   this Bankruptcy Court, comes to the Court and takes

1  completely diametrically opposed positions on the very same

2  issue of law, I don't know if it's judicial estoppel or any

3  other kind of estoppel, but it is peculiar.

4          I have to distinguish between counsel and

5  litigants.  We're paid mouthpieces.  That's what lawyers do.

6  And within the bounds of ethical rules and legal rules, it's

7  perfectly appropriate for lawyers to take inconsistent

8  positions.  I think we probably all do it all the time.  I'm

9  not sure, though, that that applies with respect to a

10 litigant itself.  And obviously, what I'm getting at is the

11 position that Aurelius took in the Abitibi case, where they

12 basically briefed it, and they said that -- they advocated

13 exactly the position that I am advocating now.  And in the

14 Abitibi case, when it was consistent with their interests,

15 they very much said to Your Honor that a single impaired

16 accepting class can support multiple debtors, I'll quote,

17 "only when substantive consolidation is requested and

18 ordered".  Now, in their brief, the noteholders have

19 attempted to say, well, that doesn't count.  People take

20 inconsistent positions all the time.  I do think, as I say,

21 that inconsistent positions from a litigant itself are of a

22 different order than inconsistent positions from an

23 advocate.  And I think, honestly, Your Honor, I'd be a

24 little troubled, because there's just no way to make those

25 two square up.

1          So I'll leave that topic.  I know Your Honor is

2   probably familiar with what happened in *Abitibi*.  The plan -

3   -

4          THE COURT:  Well, maybe I was only half-right.  I

5   approved it, I'm pretty sure, but maybe it was over

6   objection.

7          MR. LEMAY:  I think what happened in -- well, my

8   understanding of the procedural posture in *Abitibi* is that

9   the plan proponents, realizing that they had a problem,

10  amended the plan to take out the debtor where there was no

11  impaired accepting class, and then Your Honor approved the

12  plan, because the problem had gone away.  The noteholder

13  proponents might wish that they could do that, but that

14  would leave them short 100-and-something debtors, and that

15  wouldn't work for them.

16         Mr. Dublin went through a number of cases from

17  other jurisdictions, which purport to, or in some cases

18  actually do, in fairness to Mr. Dublin, support the

19  proposition that you can test 1129(a)(10) on a consolidated

20  basis.  Resorts seems to say that, although there's no

21  articulated thinking there about 1129(a)(10).  Mr. Dublin

22  mentioned SGPA case.  I think SGPA is at odds with the

23  position that I'm advocating, but I'd like to say that with

24  respect to SGPA, which is a case emanating from the Middle

25  District of Pennsylvania, and thus a 3rd Circuit case, I

1 | think if the 3rd Circuit's decision under Owens Corning had

2 | been in place at the time of SGPA, I think that the SGPA

3 | Court might've had pause.

4 | Owens Corning Circuit Court decision obviously is

5 | not about Section 1129(a)(10), and I don't purport that -- I

6 | don't mean to purport that it is. But what it does do is

7 | send us all home with a strong, strong message about the

8 | importance of corporate separateness. And one way to read

9 | Owens Corning is that when it comes to corporate

10 | separateness, form is substance. Noteholders' argument here

11 | is that to invoke 1129(a)(10) to stop confirmation of their

12 | plan would be to elevate form over substance. But Owens

13 | Corning tells us that, for corporate separateness, form is

14 | substance. And so I think that the SGPA case, to the extent

15 | that it's inconsistent with the position that I'm

16 | advocating, is inconsistent, or is at least suspect, under

17 | an Owens Corning analysis.

18 | Enron is the case that was very much mixed up in

19 | the threat and the partial reality of substantive

20 | consolidation. One can see how the Enron Court got to the

21 | conclusion it did on 1129(a)(10) in a situation where one of

22 | the major issues that was being resolved in that plan was an

23 | allegation that it should all be substantively consolidated.

24 | That is notably absent here.

25 | I guess the Charter case talks a little bit about

1    1129(a)(10) and says you should test on a per-plan, not a

2    per-debtor basis.  That's a case out of the Southern

3    District.  I don't think it is entirely consistent with the

4    thinking behind Owens Corning, just as the law of

5    substantive consolidation in this Circuit and in the 2nd

6    Circuit right now, I don't believe, entirely on all fours.

7          So I think that it's just pretty clear that the

8    cases that talk about 1129(a)(10), properly read, do support

9    the proposition that you have to invoke it debtor by debtor.

10   They do support the proposition that an exception to that

11   exists when you have non-marginal, non-voting debtors, where

12   people were solicited to vote but didn't do so.  I think

13   that exception exists.  But the proposition that Section

14   1129(a)(10) is a mere technicality and can be undone by just

15   adding language to your plan is probably not supportable.

16         And I must point out that the noteholders must

17   realize that they had a Section 1129(a)(10) problem, because

18   after their initial plan was filed, we called them out on

19   the fact that their initial plan said that it was a separate

20   plan for each debtor.  And they realized that was

21   inconsistent with the position that they were going to have

22   to advocate, so they amended their plan to basically take

23   that away.  And they say, in their brief, that it was

24   impotent language, in any event.

25         Once again, Your Honor, what I come back to is

1  this.  if a plan proponent can deal with a substantive issue

2  of law simply by changing something, some language, in its

3  plan and invoking *ipse dixit*, I think we're in a very

4  strange world of legal rules, and I don't believe that can

5  be the case.

6          Your Honor, for all those reasons, I would submit

7  that the following should be the decisional rule that I

8  would ask the Court to implement.  First, that compliance

9  with Section 1129(a)(10) ought to be, and must be, tested on

10  a debtor-by-debtor basis, individually by debtor, unless

11  several debtors are combined substantively in the same plan.

12  Second, that the *Ruti Sweetwater* exception is valid and

13  applies and that that exception is available and should

14  properly be invoked to deal with marginal debtors,

15  particularly shell entities, where people were solicited to

16  vote but did not do so, but that the *Ruti Sweetwater*

17  exception has no relevance to a massive rejection of a plan

18  almost across the board.

19          Thank you, Your Honor.

20          THE COURT:  Thank you.

21          MR. DUBLIN:  Phil Dublin, Akin Gump for Aurelius

22  and then all of the plan proponents, Your Honor.  I'll be

23  very brief.

24          Mr. LeMay, I guess, canvasses.  He probably needs

25  to work a little bit on his canvassing.  If he can look on

1    page 79 of our brief in support of our plan, footnote 49, he

2    will see our statement where the DCL plan proponents argue

3    that Bankruptcy Code Section 1129(a)(10) imposes a per-

4    debtor impaired accepting class requirement, and we note

5    that they do not satisfy that requirement.  So we did raise

6    the issue for them and for other parties' interest.

7              Your Honor, again, I'd like to note that each

8    case that analyzed the issue has come out on a per-plan, not

9    a per-debtor, requirement.  No matter how Mr. LeMay would

10   like to turn the facts of the cases, including Enron, Judge

11   Gonzales said plain meaning per plan, not per debtor.

12             And the last item, Your Honor, is that, as the

13   Court required us, at the request of the DCL plan

14   proponents, we included the provision in our disclosure

15   statement, advising creditors what would happen if they did

16   not vote.  The DCL plan proponents did not do the same.

17             Thank you, Your Honor.

18             THE COURT:  Thank you.

19             MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

20   Johnston again, for the record.  We are going to get done in

21   the time allotted.  I have a series of relatively brief

22   arguments to outline for Your Honor with respect to the

23   noteholder plan.  We may reserve one or two of the arguments

24   that were outlined in our letter for closing argument, post-

25   trial briefing, both in the interest of time and because,

1   frankly, they probably are better considered there, and I'll

2   address that --

3              THE COURT:  Okay.

4              MR. JOHNSTON:  -- at the end.

5              The first argument:  The noteholder plan, we

6   submit, violates Section 1129(b) and the absolute priority

7   rule in 1129(b) as to the credit agreement claims against

8   the guarantor debtors.  And I'll explain.  Your Honor will

9   recall that a number of Tribune subsidiaries, called the

10  guarantor debtors, guaranteed Tribune's obligations under

11  the credit agreement.  As a consequence of those guarantees,

12  the credit agreement lenders have more than $8 billion in

13  claims against each and every one of the guarantors.  And

14  those guarantee claims are on equal footing with the other

15  general unsecured liabilities of those guarantor entities,

16  and those, you know, primarily trade in similar claims.

17             The noteholder plan provides for an initial cash

18  distribution of 8 percent of the allowed amount of those

19  other unsecured claims asserted against the guarantor

20  debtors.  And this 8-percent distribution is supposed to be

21  the worst-case scenario for those creditors.  I think you

22  heard Mr. Dublin this morning call it the worst-possible

23  case, representing what the trade would get in the event

24  that the actions to avoid the credit agreement guarantees

25  ultimately fail.  The problem is that an 8-percent

1   distribution is actually much higher than the recoveries

2   that the trade and other unsecured claims against the

3   guarantors actually would receive in that worst-possible

4   case.   The actual recoveries in respective claims against

5   most of the guarantors is closer to 2 percent.   And the

6   noteholders candidly concede in their brief that there's not

7   a single guarantor debtor that could provide a recovery

8   higher than 7 percent on the dollar to its other general

9   unsecured creditors in the worst-case scenario.   And that's

10  at the noteholder reply, paragraph 174, page 96.

11          So the trade in related claims against the

12  guarantor debtors are being overpaid, as an initial matter.

13  I think there's just no dispute as to that.   And where are

14  the funds coming from to make the overpayment?   They're

15  coming directly from my clients and the other credit

16  agreement lenders.   It would be entitled to all of the funds

17  above the trade creditors natural recoveries that the

18  noteholders want to give away as an initial distribution.

19  Every dollar that the noteholders propose to overpay other

20  creditors comes right out of the pocket of the credit

21  agreement lenders.   And so I'd submit, Your Honor, that as a

22  result, we have a very clear violation of Section 1129(b).

23  You have one class of unsecured creditors receiving more

24  than that to which they are entitled and one rejecting class

25  of similarly situated unsecured creditors receiving less.

1              In their brief, the reply after we made this

2    argument, the noteholders didn't actually deny that a

3    violation of Section 1129(b) exists and has occurred.  But

4    they attempt to justify it in three ways.  First, they say

5    that the 8-percent distributions "were proposed for purposes

6    of administrative convenience", and they claim the cost of

7    the overpayment is, at most, $12 million.  That's the

8    noteholder reply at paragraph 174.  But they cite nothing

9    for an administrative convenience exception at the absolute

10   priority rule, and we're certainly not aware of any law to

11   that effect.  A plan either complies with 1129(b) or it

12   doesn't, and a proponent can't evade Section 1129(b) by

13   claiming that the absolute priority rule is violated but

14   only by a little bit.

15             Next, they argue that it doesn't really matter

16   that the cash -- the violation doesn't really matter because

17   the cash used to overpay the trade creditors or the

18   guarantors "will not be taken from distributable cash,"

19   defined term B, C, "but will instead come from the company's

20   remaining cash balance after accounting for distributable

21   cash," again in paragraph 174.  That makes no sense at all,

22   Your Honor.  Cash is cash.  Value is value.  Every dollar

23   that can be distributed is value, and every distributed

24   dollar used to overpay trade and related claims is a dollar

25   that is denied to the credit agreement lenders.  A plan

1  proponent doesn't get to say that certain value can't be

2  distributed, that it isn't distributable cash, to use the

3  parlance of the noteholder plan, and then go ahead and

4  distribute that cash in violation of the absolute priority

5  rule and say that it doesn't matter.  It doesn't work that

6  way.

7          So the last argument the noteholders fall back on

8  is they say, well, gee, what we do in our plan must be okay,

9  because the DCL plan also treats all of the trade creditors

10  of the guarantor debtors the same, and it pays them even

11  more.  In fact, it pays them 100 cents on the dollar.

12  Indeed it does, but the key distinction between the two

13  plans is that the DCL plan does this with the consent of the

14  credit agreement lenders and as part of a settlement, while

15  the noteholder plan does it in an attempted cram-down, over

16  the objection of the lenders, who are forced to give up

17  millions, $12 million they say, of dollars that they

18  otherwise would be entitled to if their claims were not

19  avoided.  One plan violates absolute priority, the other

20  doesn't.

21          One last point.  As we noted in our objection, by

22  totally ignoring the assets and liabilities of each

23  individual guarantor debtor, the noteholder plan essentially

24  deems the guarantor debtors to be substantively consolidated

25  together, such that the trade and other creditors get the

1  exact same overpayment recovery, regardless of any

2  individual debtor's particular asset and liability

3  situation.  Just as they do for 1129(a)(10) purposes, as we

4  heard from Mr. LeMay, I'd submit that the noteholders are

5  playing fast and loose with the debtors' corporate

6  structure, and you just can't do that, especially not in

7  this Circuit, especially not in light of the Owens Corning

8  Decision that Mr. LeMay mentioned.  To comply with the Code,

9  and frankly to stay true to the stated purpose of the

10  noteholder plan, which is purportedly to preserve all

11  creditors' maximum entitlements until after litigation, the

12  noteholders need to make individual determinations of the

13  recoveries available to creditors of each individual

14  guarantor.  Failure to do that violates the strictures of

15  Owens Corning, and it violates 1129(b), rendering their plan

16  unconfirmable.

17        Thank you.

18        THE COURT:  Thank you.

19        MR. DUBLIN:  Phil Dublin, Akin Gump on behalf of

20  Aurelius and the other noteholder plan proponents.

21        Your Honor, I'd make a couple of corrections.

22  One is, my statement earlier about worst-case scenario

23  recoveries for general unsecured creditors, I specifically

24  said that was the parent company.  I did not reference the

25  subsidiaries.  The subsidiary -- we have two groups of

1  subsidiary creditors under our plan.  Unlike the DCL plan,

2  we have the guarantor subsidiaries and the non-guarantor

3  subsidiaries.  The non-guarantor subsidiaries receiving 100

4  cents and the guarantor subsidiaries 8 cents.

5           Your Honor, in order to come to the 8 cent

6  number, we took the best information that was available to

7  us at the time, which was a less-than-complete, entity-by-

8  entity analysis that the debtors had prepared before the

9  examiner's report came out and what the examiner used to get

10 rough justice as to what creditor recoveries would be when

11 he did his six or eight scenarios that he decided to use in

12 connection with the examiner's report.  In doing so and

13 using the low valuation of 6.75 that the debtors and their

14 co-proponents have -- had proffered, we determined that the

15 highest recovery would be, at that valuation, 7 percent.  To

16 go through, at the time, a valuation analysis on an entity-

17 by-entity basis, I would say we would be in front of Your

18 Honor, not for 12 days, for 111 times, maybe a little less,

19 because we would have to do a valuation for each and every

20 debtor, and that would cost not the $12 million that it may

21 cost, at most, to have this administratively convenient

22 treatment for this group of creditors, but exponentially

23 more than that, especially when we know that the estate, if

24 their plan is confirmed, is picking up every dollar on this

25 side of the table, where they've already paid $50 million to

1   the bank's professionals during the pendency of this case,

2   where they proposed to pay $7 million to the bridge

3   professionals out of cash, but not distributable cash, cash

4   before you get to distributable value.  So the complaints

5   that Mr. Johnston is making about the $12 million that we're

6   using here is being exponentially taken away from all

7   creditors, I would call "natural recoveries", under the DCL

8   plan.

9           Your Honor, to the extent the debtors, however,

10  have a more updated entity-by-entity analysis, we are happy

11  to modify the plan accordingly, to give those recoveries, as

12  Mr. Johnston would like us to, I reckon that would cost a

13  lot more than $12 million for them to prepare, but that

14  being said, we would incorporate that into our plan.  We

15  believe that providing for this treatment is akin to a

16  convenience class, nothing more, nothing less, and is the

17  proper way to maximize value for all constituencies,

18  including the LBO lenders, who will have the lion's share of

19  the value in this estate, whichever plan is confirmed.

20          Thank you, Your Honor.

21          THE COURT:  Thank you.

22          MR. JOHNSTON:  We appreciate that concession.  I

23  believe the analysis is already done, so we will provide it

24  to the noteholders.

25          The next objection, Your Honor, relates to one of

1   the recent amendments to the noteholder plan that you heard

2   about this morning.  And I refer specifically to the

3   amendments that changed the distributions to be made to

4   credit agreement lenders from a strip of consideration,

5   consisting of cash, new notes in stock in the reorganized

6   Tribune, to a distribution consisting solely of stock -- no

7   cash, no notes.  Our objection relates to what that change -

8   - to actually what did not change in the noteholder plan

9   vis-à-vis what changed with respect to the lenders.  And I

10  refer here to -- the nature of the distributions to the

11  noteholders, who have chosen to keep for themselves the very

12  same strip distributions previously provided in the

13  noteholder plan, meaning that they still get the cash and

14  they still get the notes.  This is disparate treatment over

15  the objection and dissenting vote of the lender class, and

16  it's discrimination against the lenders, plain and simple,

17  and it's discrimination that's very unfair.

18          By taking away the cash in the notes and

19  substituting equity for it, the noteholders are attempting

20  to foist upon the lenders the riskiest of distribution

21  assets: equity.  And they've taken away the safest: cash and

22  notes.  We've all heard the phrase that cash is king, and

23  that phrase is as true here as it is anywhere.  The

24  amendments take away the best consideration and leave us

25  with the worst, relatively speaking.

1              Now you heard this morning, and you saw in their

2    brief, that the noteholders accuse of having the temerity to

3    make this argument, and they said that it's logically

4    inconsistent for us on one hand to argue that the noteholder

5    plan's huge reserve of equity, pending years of litigation,

6    is inappropriate and harmful, which we did, while at the

7    same time objecting to a change that, as we acknowledged,

8    reduces the amount of equity held in the reserve, which we

9    do.  I don't think the point is very hard to grasp, and it's

10   certainly not logically inconsistent, but let me explain.

11   On one hand, we believe, and you heard substantial evidence

12   on the point, that a large reserve of equity is harmful to

13   Tribune.  It will impair Tribune's business opportunities;

14   it will hinder its ability to do deals and attract talented

15   personnel; it'll even depress the value of the stock that

16   isn't reserved and that is issued and distributed.  We still

17   believe that as strongly as we ever did.  And you heard Mr.

18   Sottile explain this morning that, while the recent

19   noteholder amendments to reduce the amount of equity in the

20   reserve certainly lessens some of that harm that would be

21   inflicted on Tribune by the noteholder plan, they don't

22   eliminate it entirely.

23             Counterbalanced against this, you have, on the

24   other hand, our argument with respect to the noteholder plan

25   amendments.  And this argument relates to the

1  disproportionate impact of the amendments on the lenders.

2  In order to lessen the equity in the reserve, what did they

3  do?  The noteholders changed the lenders' distributions to

4  be all equity.  This certainly had the impact of reducing

5  the amount of stock in the reserve, but the noteholders

6  forced the burden of the change completely on the lenders.

7  They didn't give themselves more equity; they didn't give

8  the other parent classes more equity; they didn't give

9  subsidiary trade any equity.  They shoved it all to the

10 lenders.  We don't like that change, and we object to it.

11        The noteholders may claim that they believe that

12 Tribune's worth more than $6.75 billion, we've heard that,

13 and that the stock, you know, is somehow more valuable than

14 cash, but we don't believe it.  And while the noteholders

15 bitterly objected to the prior iteration of the DCL plan

16 that gave them an all-cash recovery, I think it's very

17 telling that, in their own plan amendments, they decline to

18 exchange even a dollar of cash or new notes for more equity.

19 They didn't put their money where their mouth is.  And it

20 turns out that they like the cash.  They like the new notes,

21 and they're not willing to part with what they're giving

22 themselves.  So they force the lenders to bear the entire

23 burden of the changes made to address our legitimate, and

24 obviously effective, argument that a huge reserve of equity

25 is value destroying to Tribune.

1          Our point's simply that the noteholders can't

2   attempt to address the harmful effects of the huge proposed

3   reserve of equity by discriminating against the lenders.

4   Section 1129(b) clearly prohibits unfair discrimination of

5   this sort, as the disparity in treatment between the lenders

6   and the noteholders has no reasonable basis.  there was no

7   reason why they couldn't have done the exact same thing they

8   did for us to themselves, and the noteholders do not even

9   attempt to argue that it's necessary for their plan to be

10  confirmed.  Indeed, until last week, the noteholders of the

11  plan that, while defective in other ways, at least provided

12  equal distributions across the classes.  This new change

13  violates 1129(b) and renders the noteholder plan

14  unconfirmable yet again.

15          Thank you.

16          THE COURT:  Thank you.

17          MR. DUBLIN:  Phil Dublin, Akin Gump for Aurelius

18  and the noteholder plan proponents.

19          I'm still really baffled by this one, Your Honor.

20  We did exactly what they asked us to do.  We got as much --

21  we got a bunch of equity out of the distribution trust

22  reserve, and we got it out to them: the same people that

23  were taking all the equity a week ago.  Now, they say we

24  complained when we didn't have a strip of consideration

25  under their plan, but that's because the value of our

1    recovery was capped.  If they want to elevate us, dollar for

2    dollar, based on the valuation that Your Honor determines

3    this company to actually be worth at the end of the day, if

4    their plan is confirmed, we'd be happy to take it in all

5    cash at the higher valuation.  But they capped us so that,

6    as valuation goes up, settlement consideration goes down.

7    That was the complaint that we had to their plan.  That's

8    why we needed a strip of consideration, so that their plan

9    did not provide unfair discrimination treatment.

10             Now, a case that Mr. LeMay goes back to over and

11   over and over again is *Greate Bay*, and *Greate Bay*, I think

12   is now maybe a good time to use it.  In *Greate Bay*, we had

13   two groups of creditors, one that was receiving cash and

14   another one that was receiving a recovery and primarily

15   equity and some debt.  In that case, the Court analyzed what

16   the value of the recoveries were.  And while there is some

17   dispute with respect to what the equity was worth, the Court

18   came out and said, well, the recovery to the people that

19   were receiving the equity was about 76 cents, give or take,

20   and the cash was worth 80.  In this case, Your Honor will

21   determine the valuation, and the stock, as I mentioned

22   earlier, a dollar a stock, will be worth a dollar of cash,

23   will be worth a dollar [indiscernible].

24             The *Greate Bay* Court determined that their --

25   while there was a small disparity between the potential

1  recovery, it was not material.  I believe Mr. LeMay said

2  earlier today that the -- in order to have disparate

3  treatment, it had to be something about 50 percent in value.

4  Well, I think 50 percent's a little high, but when we're

5  talking about equal-value treatment, as we'll have in this

6  case, regardless of the form of the distribution to the

7  senior lenders, I don't think we have any disparate

8  treatment.  The *Greate Bay* Court also noted that the

9  allocation of equity proposed by the plan did not impose a

10  materially greater risk on the dissenting class, and

11  concluded that the plan there should be confirmed.

12      Your Honor, the modifications that we've made to

13  our plan do exactly what the DCL plan proponents asked us to

14  do.  For them to come back now, in front of this Court, to

15  say, yes, you did what we want you to do, but no, it doesn't

16  work, there's really no explanation for it.

17      Thank you, Your Honor.

18      MR. JOHNSTON:  Jim Johnston, again, Your Honor.

19  Another brief objection, relating to what I'd say is another

20  harmful aspect of the large reserve created under the

21  noteholder plan, designed to hold back value, pending the

22  litigation to be conducted with respect to allowance or

23  avoidance of the credit agreement claims.

24      There's no dispute that whatever form it takes --

25  whether it's equity, cash, notes, some mix -- that reserve,

1    called the distribution trust reserve in their plan, will be

2    huge.   It has to contain upwards of $4 billion, an amount

3    the noteholders say is needed to pay themselves and all the

4    other non-LBO creditors in full with years of post-petition

5    interest if they win the avoidance litigation they want to

6    bring.

7              We explained in our objection that creating a

8    reserve of that size has some, probably unintended but

9    severely negative, tax consequences.   The distribution trust

10   that holds this reserve, which is to be held back on account

11   of the lender claims that the noteholders dispute, is highly

12   likely, we think, to be treated as disputed ownership funds

13   under the federal tax laws.   What does that mean?   It means

14   that, should there be any gains associated with assets in

15   the distribution trust before they're distributed during the

16   years of litigation, those gains would be subject to entity-

17   level taxation, basically the corporate tax rate, before

18   they could be distributed to creditors.   So take, for

19   example, the stock to be held in the trust, and there will

20   be a lot of stock in the trust no matter what, even with the

21   recent amendments.   Say there's a billion dollars' worth of

22   stock in the trust on day one and that, notwithstanding some

23   of the dire views we heard about during the company's future

24   prospects for Mr. Tuliano and others, Tribune's fortunes and

25   prospects brighten, and the stock appreciates by, say, 50

1   percent over the five years that the litigation trust is

2   pursuing claims against the lenders.  At the end of the day,

3   when it comes time to distribute that stock, now worth a

4   billion-and-a-half dollars under my hypothetical, the trust

5   is going to have to pay taxes on the 500 million in gains.

6   Forty percent or more of those gains are going to go to the

7   government, rather than creditors.  $200 million would just

8   disappear.  The same result would occur with any

9   appreciation of the notes in the trust.

10          In contrast, due to Tribune's current S-corp.

11  status, there wouldn't be any taxes payable if Tribune

12  remained in Chapter 11 during the litigation, if Your Honor

13  thought that that was the preferred course of action to have

14  litigation rather than a settlement.  Similarly, if they

15  held the assets themselves, individual creditors would be

16  able to hold the assets as they see fit, taking advantage of

17  losses or other ways to potentially shelter gains in the

18  assets that are distributed.  That's not possible under the

19  noteholder plan reserve construct.

20          So what's the noteholder response to this?  It's

21  interesting.  At page 62 of their reply brief, they say,

22  "The distribution trust structure is not intended to have

23  adverse tax consequences."  More specifically, they say that

24  they want the distribution trust to be a grantor trust and

25  hence not subject to entity-level tax, with each trust

1  beneficiary bearing its own share of the taxes, otherwise

2  attributable to assets in the trust.

3         Your Honor, I'm not a tax lawyer, but I think

4  it's safe to say that that assertion that the distribution

5  trust would be grantor trust is controversial, at best.  A

6  liquidating grantor trust works when you know who the

7  beneficiaries are.  It doesn't work, as in the case of the

8  noteholder plan, where the identity of the beneficiaries are

9  completely subject to doubt and are dependent on the outcome

10  of future litigation.  What you have in that case is what

11  the regulations call a disputed ownership fund, which is

12  subject to entity-level taxation.  I think it's telling that

13  the noteholders have not sought a letter of ruling or

14  guidance from the IRS on the point.  They may not want to

15  know the answer.  And I guess creditors, beneficiaries of

16  the trust, are just supposed to hope or trust that it'll

17  work out all right.

18         We'd submit that, given the massive amounts at

19  stake and the potential severe tax consequences, that's not

20  an acceptable alternative and not one that the Court should

21  endorse and that this is yet another value-destroying

22  feature of the noteholder plan that needs to be rectified

23  before it conceivably could be confirmed.

24         Thank you.

25         THE COURT:  Thank you.

1          MR. DUBLIN:  Phil Dublin, Akin Gump on behalf of

2    Aurelius and the other noteholder plan proponents.

3          I think Mr. Johnston's wrong on the facts and

4    wrong on the law.  First, we have consulted with the IRS.

5    The way our plan is structured is based on consultation with

6    the IRS.  And I apologize in advance, Your Honor, but I,

7    too, am not a tax lawyer, but I have consulted one, and I'm

8    going to do a little reading so that I don't get this

9    incorrect.

10         THE COURT:  You're not a tax lawyer; you only

11   play one in Court.  Okay.

12         MR. DUBLIN:  Exactly.  Your Honor, Mr. Johnston

13   was right about one thing: we do evidence the clear intent

14   that the -- a distribution trust agreement and -- the plan

15   and the distribution trust agreement state that the

16   distribution trust will be treated as a liquidating trust,

17   taxable as a grantor trust from the date of its inception.

18   That's the noteholder plan, Section 716-14(a)(1) and the

19   distribution trust agreement at page 1.

20         Under Treasury Regulation, Section 1.468(b), a

21   liquidating trust is not treated as a disputed ownership

22   fund unless the trustee elects such treatment under Treasury

23   Regulation, Section 1.468b-9(c)(22).  Otherwise, the

24   presumption is that the trust is a liquidating trust under

25   Treasury Regulation, Section 301.7701-4(d).  It is taxable

1  as a grantor trust under Section 671 and 677 of the Tax

2  Code.   And treatment as a grantor trust avoids the entity-

3  level tax that Mr. Johnston was complaining about, as the

4  distribution trust assets will be treated as owned directly

5  by creditors and not subject to the -- at the higher tax

6  level.

7          Your Honor, the -- anything that might be treated

8  as a disputed ownership fund, under our plan, would be

9  limited to disputed general unsecured claims, which is a

10 mere fraction of the claims against the estate, and is not

11 something that rises to a level that should provide -- that

12 should prevent confirmation of our plan.   We do not take

13 compliance with tax law or any Bankruptcy Code Section

14 lightly.   Our plan satisfies 1129(a)(10), and it complies

15 with the tax laws.

16         Thank you.

17         MR. JOHNSTON:   Your Honor, we had one more point

18 in our letter that we thought we would want to argue today,

19 and after thinking about it and looking at the clock, I

20 think we want to defer it, because it's more appropriately

21 considered at closing argument and in the post-trial briefs.

22 And that objection, briefly, relates to the noteholder

23 plan's inability to terminate or waive or achieve the

24 release of the guarantees against several non-debtor Tribune

25 affiliates -- non-debtor affiliates that guaranteed the

1    credit agreement that now worth -- or have, you know,

2    upwards of $2 billion worth of assets.  Under the DCL plan,

3    as part of the settlement, the credit agreement lenders

4    agreed to lift or waive or release the guarantees against

5    those non-debtor entities.  The noteholders have conceded,

6    in their reply brief, that their plan can't accomplish that

7    without the consent of the lenders, and actually, they

8    indicated in their brief that they simply, you know, would

9    not accomplish that if the debtors or the proponents of the

10   DCL plan instructed them not to.

11          We think that has some very serious consequences,

12   but it's serious consequences that are kind of wrapped up in

13   the evidence, and so, rather than expound on them now, we'll

14   do that at the later date.  So I won't say anything further

15   on that point.  I do think that Mr. Sottile has one issue or

16   some points to make, and otherwise, we may be concluded

17   here.

18          Thank you.

19          MR. SOTTILE:  Your Honor, James Sottile of

20   Zuckerman Spaeder for the committee.

21          The only point I have to make is that I'm batting

22   three for three this week in time estimates.  We are

23   concluded, Your Honor, with the presentation of those legal

24   objections that the noteholder plan proponents and DCL plan

25   proponents wanted to submit to the Court today.

1        Your Honor, as the Court will recall, we did set

2  over argument on one legal objection, that is by Wilmington

3  Trust, to today.  I am told that it should be relatively

4  short and --

5              THE COURT:  Deutsch Bank, I thought.

6              MR. DUBLIN:  It's Deutsch Bank.

7              MR. ADLER:  Oh, Deutsch Bank.  I'm sorry.  Your

8  Honor, I'll be very brief.

9        Listening to the arguments today on behalf of

10  Aurelius, I believe that Deutsch Bank's objection is

11  subsumed within some of the larger arguments that have been

12  made.  That's point one.

13        Point two is, in light of what Mr. Sottile said

14  earlier this morning, which is that there is going to be a

15  further solicitation that will be sent to the noteholders

16  regarding their election as to whether they will receive a

17  form of a strip or cash, we will reserve our rights to

18  address our confirmation-related issues within that motion

19  itself.  So in other words, Your Honor, we may have some

20  objection to what they propose to send out to the

21  noteholders, but I would think that we could work through

22  that issue consensually prior to the hearing on the approval

23  of that document to the noteholders.

24              THE COURT:  All right.

25              MR. ADLER:  So with that, Your Honor, I'm done.

1            THE COURT:  Thank you.

2            MR. ADLER:  Thank you.

3            MR. GOLDEN:  One brief comment, Your Honor.  I'm

4   not arguing or responding to any further legal objections.

5            But based upon the commentary we've heard today

6   and the decision by the DCL plan proponents to engage in a

7   further re-solicitation with respect to the plan amendments

8   they've made, even though they don't actually believe it's

9   necessary, but I guess out of an abundance of caution, we've

10  considered that issue -- our initial impression was that,

11  based upon the noteholder plan proponents, re-solicitation

12  was not necessary.  But I am concerned, given so much of

13  what I've heard today about people saying one thing on one

14  day and having a different view, that we are going to

15  reconsider that issue as to whether re-solicitation is

16  necessary, as it relates to the amendments for the

17  noteholder plan proponent.  And if we decide that re-

18  solicitation is either required, which I don't think we'll

19  ever get to, or is appropriate being -- you know, valor

20  being the better part of discretion, we will file a similar

21  motion to the debtors.  I won't be able to file it by close

22  of business tomorrow, but we will do it Monday or Tuesday of

23  next week, and I just wanted to make sure that the Court was

24  aware of that prospect.

25            THE COURT:  Well, let me -- now that you raised

1   that, I mean, I don't know that that's a bad idea.  Okay.

2   What about the component of voting, in which creditors were

3   asked, initially among four plans, now between two, you

4   know, if both were confirmed, which would you prefer.  And

5   it seems to me that's an appropriate inquiry, given the fact

6   in some, but not all, respects, you know, the plans have

7   gone like this and come a little closer together, so I think

8   that's not a bad idea.

9              MR. GOLDEN:  Okay.  In that regard, Your Honor,

10  what I would pledge is that we would work with the DCL plan

11  proponents.  Maybe we can agree upon a joint form of re-

12  solicitation so that the people being solicited would have

13  the opportunity to indicate a preference.  I haven't,

14  obviously, thought this all the way through.  There may be

15  some procedural issues, because I think the creditors that

16  the DCL plan proponents intend to re-solicit may be

17  different than the creditors that the noteholder plan

18  proponents think they need to re-solicit.  And as I said,

19  Your Honor, we may ultimately determine that, based upon our

20  amendment, we don't need to re-solicit.  But what I would

21  suggest is that we have an opportunity to have those

22  conversations with the DCL -- with representatives of the

23  DCL plan proponents, and maybe we could schedule a

24  conference call with the Court early next week to give you

25  our input on that.

1          THE COURT:  Well, you anticipated that I was

2     going to suggest that.  I -- of course, next week is a

3     holiday week for everybody, so scheduling is difficult.

4     Monday, it seems to me, is too soon.  I would assume that

5     Tuesday and Wednesday availability will be limited, but --

6          MR. GOLDEN:  I have a feeling, Your Honor, that

7     people will work around your schedule.

8          THE COURT:  I have some time on Thursday, the

9     21st.  It seems to me that that would give the parties enough

10    time to confer.  You know, and I think maybe, you know, we

11    should rethink the scheduling we've tentatively agreed to,

12    in light of that.  and I know -- well, I'm getting the sense

13    that nobody really wants to slow down the process at this

14    point, and I'm -- I don't think I do, either, because at

15    this point, given the number of efforts that have been made,

16    both formal and not, to try to resolve these issues, drawing

17    it out I just don't think helps anybody.  I mean, I sat the

18    other day, and I looked at the appearance sheet and the

19    phone list, and I'm thinking to myself, every day in Court's

20    got to cost at least a million dollars.  You know?  Maybe

21    it's more; maybe it's a little less.  I don't know.  but I -

22    - I'd like to keep us moving along but in a way that's

23    organized, and as I said before, in a way that just stops

24    things so that everyone can make a judgment based on things

25    that aren't going to change at least until the Court makes a

1 decision, you know, because papers still continue to filter

2 in.  And it's difficult for me to catch up, because I don't

3 have associates.  I've got one law clerk, and thank God

4 she's as good as she is.

5         Okay.  Any thought about -- I have things

6 scheduled for Thursday morning, but I would move them around

7 a little bit to make some time, and how much time do you

8 think  you need?

9         MR. GOLDEN:  Judge, you -- would you prefer a

10 Court appearance or telephonic conference call?

11         THE COURT:  Well, let's put it this way.  The

12 difficulty with telephonic conferences is, especially with a

13 large number of people, sometimes cumbersome.  But I think I

14 would like to see if we can do it by phone, given the

15 holidays and everybody's schedule, unless somebody tells me

16 they think it's imperative we be here.  You -- would the

17 parties like a couple minutes to talk about this and then --

18         UNKNOWN:  Yeah, I think that would be very

19 helpful, if we could have --

20         THE COURT:  Okay.

21         UNKNOWN:  -- just a moment to discuss this.

22         THE COURT:  All right.  We'll take a short

23 recess.

24         MR. SOTTILE:  Thank you, Your Honor.

25 (Recess at 4:52 p.m. to 5:04 p.m.)

1          THE CLERK:  All rise.

2          MR. SOTTILE:  Your Honor, James Sottile of

3   Zuckerman Spaeder for the official committee of unsecured

4   creditors.

5          We were able, Your Honor, to have some discussion

6   among all of the plan proponents about the issue of re-

7   solicitation and the Court's suggestions about points that

8   we might think about dealing with, as well as Mr. Golden's

9   suggestions about how we might proceed.

10          I think, Your Honor, that we are going to take

11   those away, talk among ourselves on each side and talk

12   between ourselves, so that we can be prepared to address

13   those issues on next Thursday, the 21st.  I think I heard the

14   Court suggest that there was time available in the morning.

15          THE COURT:  11:30.

16          MR. SOTTILE:  And all of the parties are

17   available that morning, Your Honor, for a telephonic

18   conference.

19          THE COURT:  Okay.  Great.

20          MR. SOTTILE:  So we appreciate the Court's

21   indulgence in carving out some time for us in a difficult

22   week.

23          If the Court has just a moment, I thought we

24   might speak to a couple of outstanding issues on dates for

25   things like closings and findings and so forth, recognizing

1    that some of that, you know, could conceivably adjust,

2    depending on how the Court and the parties proceed.

3             With respect to closing arguments, the Court had

4    suggested either June 14 or June 15, and what would work

5    best for the parties, subject to the Court's schedule, would

6    be June 14.

7             THE COURT:  That's fine.

8             MR. SOTTILE:  Your Honor, we continue to work to

9    resolve objections to documents and deposition designations

10   that haven't actually been used and introduced into

11   evidence.  We continue to make progress, but we'd like to

12   ask the Court's indulgence to continue that work, and if we

13   could schedule some time on the agenda at the April 25

14   omnibus, I think that we ought to be able to report to the

15   Court then on at least a process to finish resolving those

16   issues.

17            THE COURT:  That's fine, but let me ask.  What's

18   coming up for the omnibus?

19            MR. SOTTILE:  Your Honor, I will have to defer to

20   --

21            THE COURT:  There's only --

22            MR. SOTTILE:  -- debtor's counsel as to what is

23   scheduled that day.

24            THE COURT:  There's only an hour allotted, at

25   this point.

1          MR. SOTTILE:  I would not expect, Your Honor,

2    that we would need a significant amount of time to deal with

3    this issue.  It's more in the nature of a placeholder so

4    that we can come back and report --

5          THE COURT:  Understood.

6          MR. SOTTILE:  -- to the Court.

7          MR. KANSA:  Your Honor, Ken Kansa of Sidley

8    Austin.  If you can indulge us for one moment, I'm just

9    going through the agenda for the April 25 omnibus, and I

10   believe I can report that we won't have anything that's

11   taking up a significant period of time or that I don't think

12   will, but if I can indulge of the Court for one minute.

13         THE COURT:  Sure.

14         MR. KANSA:  Your Honor, I believe that my initial

15   impression was correct: there shouldn't be anything on for

16   April 25.  It appears, at this moment, that it will be

17   significantly contested or contested in a way that will

18   consume a great deal of the hour that the Court has allowed.

19         THE COURT:  Okay.  Thank you.

20         MR. SOTTILE:  Your Honor, the final issue I

21   wanted to briefly address is proposed findings of fact and

22   conclusions of law.  The parties have consulted about timing

23   for those.  Subject to the Court's views and agreement, we

24   would propose that we would submit findings and conclusions

25   to the Court with the reply briefs.  That's now scheduled

1  for May 27, if that is satisfactory to Your Honor.

2              THE COURT:  It is.

3              MR. SOTTILE:  Your Honor, two questions about the

4  findings and conclusions that would provide the parties with

5  some guidance so that we might try to develop those in a way

6  that would be most helpful to the Court.

7              One is, is there -- are there a set of proposed

8  findings and conclusions that we might look to on the docket

9  that the Court found helpful, in terms of level of detail

10  and approach?  Or if not, does the Court have some general

11  views about what would be most useful that we could hear

12  briefly about and seek to apply?

13             THE COURT:  Well, I don't -- I lately haven't

14  asked for them frequently, and the point of it is that,

15  especially in situations where -- well, in situations in

16  which the parties are looking for a relatively quick

17  turnaround, I do ask for them.  And I'm trying to think when

18  I've done that in a situation that would be helpful to you.

19  I can't think of something off-hand, but I will get back to

20  you.

21             MR. SOTTILE:  Thank you, Your Honor.  That would

22  be most helpful.

23             THE COURT:  Now, let me add a couple other

24  comments about that.  Appellate courts criticize -- in fact,

25  there's been a decision lately, not in this Circuit, where

1  they tell trial courts they are not to adopt wholesale

2  findings and conclusions.  I've never done that.  And of

3  course, proposed findings and conclusions are offered by

4  advocates of particular positions.  But when given in the

5  extreme, they are less helpful to me, for reasons you might

6  understand.  Whether that helps you in developing them, I

7  can't say.  But I may also ask that you provide disks with

8  them.

9          Anything else?

10          MR. SOTTILE:  Your Honor, one further question on

11 the conclusions of law.  It wasn't entirely clear to us

12 whether the Court wished us to submit conclusions of law

13 only with respect to the issues ventilated in the

14 evidentiary hearings or also with respect to the issues that

15 have been argued today.

16          THE COURT:  No, they're most helpful to me in

17 connection with the evidentiary record.

18          MR. SOTTILE:  That was what a number of us had

19 assumed, Your Honor, but rather than get it wrong, we wanted

20 to be sure we understood.

21          THE COURT:  No, I appreciate that.

22          MR. SOTTILE:  Your Honor, I think that that

23 concludes the -- Your Honor, Mr. Zensky has rightly raised

24 the question about how much time the Court would be able to

25 afford us on June 14 for closings, and that would be helpful

1   to the parties if the Court has a view on that.

2           THE COURT:  Well, I'm setting aside the entire

3   day, which I, as I've said before, should never be thought

4   of as a goal --

5   (Laughter)

6           THE COURT:  -- but it is available.  I'm assuming

7   that that will be sufficient time for all concerned.  And to

8   the extent there are pressures, not just from competing plan

9   proponents but from others who might wish to be heard, and

10  they're -- and you can't resolve how to divide the time, let

11  me know, and we'll work it out.

12          MR. SOTTILE:  Understood, Your Honor.  May I beg

13  the Court's indulgence for just one moment?

14          THE COURT:  Certainly.

15          MR. SOTTILE:  Your Honor, let me yield the podium

16  to Mr. Golden.  I think that we've raised all of the common

17  issues on which we wanted to seek the Court's guidance.

18  Thank you, Your Honor.

19          MR. GOLDEN:  Your Honor, I just want to -- I just

20  rise, and this is one thing I am confident that the DCL plan

21  proponents share with the noteholder plan proponents in

22  thanking the Court for an unbelievable amount of patience

23  during this trial.  This hasn't been easy for us, but I --

24  we always feel that it will be less easy for you in

25  grappling with these issues, so we did want to collectively

1   express our appreciation.

2           I would like to make the request on the record,

3   in one of the colloquies on the back-and-forth of the

4   confirmation objection, we understand now that an entity-by-

5   entity valuation has been prepared.  Mr. Johnston said it's

6   prepared and ready to be shared.  We'd ask that the debtors

7   share it with us immediately so, to the extent we need to

8   make an amendment to the plan to reflect that entity-by-

9   entity allocation, we can do so forthwith.

10          And with that, Your Honor, enjoy the weekend.

11          THE COURT:  I see an affirmative nod from

12  debtor's counsel --

13          MR. SOTTILE:  Right.

14          THE COURT:  -- just for the record.

15          MR. SOTTILE:  Your Honor, not only do the DCL

16  plan proponents join in thanking the Court for the Court's

17  patience, but I, who have proved a particular trial in terms

18  of my ability to estimate time, thank the Court for patience

19  and good humor through long and difficult proceedings.

20          THE COURT:  Well, that's all true, but --

21  (Laughter)

22          THE COURT:  -- the joy in it for me is the

23  quality of the oral and written presentations, so for that,

24  I thank you.

25          MR. PHILLIPS:  Your Honor, just one point.  Marc

1  Phillips from Connolly Bove Lodge & Hutz, we represent

2  certain former officers and directors.

3        I believe yesterday Your Honor said that you

4  would consider short replies from third-party objectors and

5  that you would think about it.  I'm just wondering if Your

6  Honor would allow those and when they would be due and how

7  long.

8        THE COURT:  Well, the answer to the first

9  question is yes.  But let's talk about it at the conference

10 call scheduled for next week to see how things will fall out

11 with additional solicitations and timings and --

12        MR. PHILLIPS:  When is that conference call, Your

13 Honor?

14        THE COURT:  Next Thursday at 11:30 Eastern.

15        MR. PHILLIPS:  Thank you, Your Honor.

16        THE COURT:  All right.  Anything else for today?

17 (No audible response.)

18        THE COURT:  All right.  Thank you all very much.

19 That concludes this hearing.  The Court will stand

20 adjourned.  Safe trip home and good holidays to everyone.

21        ALL:  Thank you, Your Honor.

22

1    (Whereupon, at 5:15 p.m., the hearing was adjourned.)

2                          CERTIFICATION

3              I certify that the foregoing is a correct

4    transcript from the electronic sound recording of the

5    proceedings in the above-entitled matter.

6

7

8    _____          15 April 2011
9    Shelley M. Kohr,                                Date
10   Transcriber
11   /gbs

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **08-13141(kjc**(1) 1:5 | | **accepted**(13) 47:7 56:13 69:8 124:16 124:25 141:20 156:10 162:8 162:24 163:9 168:19 171:13 171:14 | | **adelphia**(10) 162:12 162:25 163:5 163:10 163:19 163:21 168:20 170:2 170:4 171:4 | | **agency**(1) 120:8 **agenda**(2) 205:13 206:9 **agent**(1) 110:8 | |
| **1.468b-9(c)(22**(1) 196:23 | | | | **adequacy**(1) 83:2 | | **agents**(2) 42:5 46:19 | |
| **100-and-something**(1) 175:14 | | **accepting**(19) 47:8 48:20 155:9 155:9 155:10 155:18 155:21 157:11 157:18 158:2 159:23 160:9 161:7 161:14 167:12 168:25 174:16 175:11 179:4 | | **adequate**(1) 39:13 | | **aggregate**(7) 72:4 72:6 72:7 74:17 76:7 77:4 91:9 | |
| **1123(b)(3)(a**(1) 66:15 | | | | **adequately**(1) 100:12 | | | |
| **1129(a)(1)**(1) 128:1 | | | | **adjourned**(2) 211:20 212:1 | | **aggregated**(1) 76:4 | |
| **1129(a)(10**(47) 155:3 155:8 156:1 156:7 156:20 157:6 157:12 157:25 158:1 159:8 159:10 159:13 159:21 160:5 160:23 161:4 164:11 165:13 165:17 166:3 167:13 167:19 168:5 168:7 168:11 168:21 170:12 170:22 171:19 171:25 172:3 172:4 173:7 173:15 175:19 175:21 176:5 176:11 176:21 177:1 177:8 177:14 177:17 178:9 179:3 184:3 197:14 | | | | **adjudicated**(1) 152:17 | | **aggressively**(2) 102:1 103:21 | |
| | | **access**(1) 72:19 | | **adjust**(1) 205:1 | | **ago**(7) 27:15 29:22 38:19 85:2 90:3 128:23 190:23 | |
| | | **accompanying**(1) 110:7 | | **adler**(4) 4:21 199:7 199:25 200:2 | | | |
| | | **accomplish**(2) 198:6 198:9 | | **administered**(1) 168:16 | | **agree**(20) 31:4 31:14 33:24 35:9 37:21 58:3 58:12 59:22 61:21 63:10 63:13 63:16 66:3 85:15 104:7 107:20 108:16 142:18 143:4 201:11 | |
| | | **accomplished**(1) 18:9 | | **administrative**(4) 100:21 120:8 182:6 | | | |
| | | **accordance**(1) 121:15 | | **administratively**(1) 185:21 | | | |
| | | **according**(2) 119:16 156:6 | | **admission**(1) 149:18 | | | |
| **1129(a)(3**(1) 128:1 | | **accordingly**(2) 23:3 186:11 | | **admittedly**(1) 112:17 | | **agreed**(13) 29:12 37:7 53:17 57:2 59:7 64:1 89:11 108:16 125:2 136:20 158:24 198:4 202:11 | |
| **1129(a)(8**(4) 168:23 169:3 170:12 170:15 | | **account**(6) 26:2 26:16 89:13 127:6 145:24 193:10 | | **adopt**(3) 28:18 87:17 208:1 | | | |
| **1129(b)(1**(3) 15:12 35:11 128:1 | | | | **adopted**(1) 53:1 | | **agreeing**(2) 59:4 92:1 | |
| **52f(3rd)(478**(1) 58:4 | | **accounting**(1) 182:20 | | **adopting**(1) 21:17 | | **agreement**(81) 9:7 21:18 24:2 31:8 31:9 32:11 43:10 44:14 53:16 64:3 86:12 102:9 102:16 102:22 110:1 110:3 110:4 110:6 110:9 110:11 110:11 110:13 110:14 112:12 116:22 117:4 117:4 117:5 117:5 117:7 117:8 117:11 117:12 117:16 118:3 118:7 118:12 118:17 118:21 119:4 119:11 120:1 120:22 121:3 121:4 122:5 122:18 123:5 123:11 123:18 123:20 123:25 124:3 124:4 124:6 124:23 125:12 125:19 126:5 143:8 150:11 150:16 151:9 151:10 165:16 180:7 180:11 180:12 180:24 181:16 181:21 182:25 183:14 187:4 192:23 196:14 196:15 196:19 198:1 198:3 206:23 | |
| **548(d)(2)(d**(1) 119:3 | | **accurate**(2) 36:9 85:22 | | **advance**(5) 18:24 19:3 117:22 163:19 | | | |
| **716-14(a)**(1) 196:18 | | **accuse**(1) 188:2 | | **advanced**(3) 16:10 17:16 90:3 | | | |
| **8-percent**(3) 180:20 180:25 182:5 | | **achieve**(1) 197:23 | | **advantage**(1) 194:16 | | | |
| **a.m**(5) 1:15 12:1 65:2 65:2 78:6 | | **acknowledge**(5) 49:20 84:11 155:14 158:6 164:10 | | **adversary**(2) 67:6 153:14 | | | |
| **abid**(2) 4:29 35:5 | | | | **adverse**(2) 29:25 194:23 | | | |
| **abide**(1) 152:22 | | **acknowledged**(3) 46:25 158:14 188:7 | | **adversely**(1) 127:12 | | | |
| **ability**(11) 19:24 29:13 74:21 75:15 92:11 102:21 111:17 145:5 149:4 188:14 210:18 | | **acknowledgement**(1) 112:8 | | **advertising**(1) 137:9 | | **agreements**(9) 29:9 29:17 51:20 52:1 101:1 101:6 101:20 102:4 123:14 | |
| | | **acknowledging**(1) 161:20 | | **advise**(2) 28:25 107:14 | | | |
| **abitibi**(4) 174:11 174:14 175:2 175:8 | | **acknowledgmen**(1) 36:2 | | **advised**(2) 106:13 161:12 | | **agrees**(4) 58:11 81:5 86:11 88:25 | |
| **able**(7) 24:10 26:10 194:16 200:21 204:5 205:14 208:24 | | **acquired**(2) 125:19 125:20 | | **advising**(1) 179:15 | | **agudelo**(1) 8:11 | |
| | | **across**(5) 72:24 140:11 167:20 178:18 190:12 | | **advisor**(1) 121:16 | | **ah-hah**(1) 121:22 | |
| **about**(149) 12:7 12:23 13:4 16:20 17:9 22:14 22:15 23:7 28:6 31:6 32:5 32:5 34:9 38:7 38:12 40:14 42:12 50:5 50:9 50:11 51:11 51:22 52:9 53:8 54:20 56:25 57:11 57:22 59:10 59:18 60:11 60:22 60:24 61:2 61:15 61:17 61:21 68:8 68:11 69:5 70:3 72:1 72:3 73:20 74:4 74:12 75:14 78:10 83:2 84:23 84:24 85:1 85:4 85:4 85:10 88:23 89:8 89:9 89:20 94:15 98:14 99:11 104:2 105:24 106:4 106:19 107:23 108:12 108:24 109:23 113:6 119:1 123:1 126:25 128:23 131:7 131:14 131:15 132:24 133:10 133:23 134:1 134:12 135:15 135:20 135:22 139:21 139:25 140:8 140:9 141:3 141:25 148:1 150:21 152:4 152:12 153:12 153:15 153:25 154:3 154:9 156:14 156:25 157:1 157:2 159:4 163:1 164:14 166:3 166:6 166:10 167:6 167:19 168:11 169:6 169:17 169:24 170:1 175:21 176:5 176:7 176:25 177:8 184:22 186:5 187:2 191:19 192:3 192:5 193:23 196:13 197:3 197:19 200:13 201:2 203:5 203:17 204:6 204:7 204:8 204:9 206:22 207:3 207:11 207:12 207:24 208:24 211:5 211:9 | | **advisors**(2) 136:24 138:14 | | **ahead**(4) 54:21 110:24 164:12 183:3 | |
| | | **act**(1) 150:23 | | **advisory**(16) 98:3 98:6 98:12 98:18 98:21 99:2 99:10 99:16 99:22 102:19 105:15 105:21 105:25 106:5 106:8 106:12 | | **akin**(18) 4:26 7:16 13:6 20:16 35:5 36:25 53:12 74:1 97:8 109:19 126:22 135:15 154:13 178:21 184:19 186:15 190:17 196:1 | |
| | | **acted**(4) 151:1 151:3 151:14 152:14 | | | | | |
| | | **acting**(1) 18:18 | | **advocate**(2) 174:23 177:22 | | **alienate**(1) 70:18 | |
| | | **action**(33) 22:12 22:22 35:25 36:11 37:19 40:9 48:2 67:3 67:13 70:7 74:24 79:11 79:17 86:23 86:25 101:18 102:2 103:4 103:21 111:5 130:2 130:11 130:19 142:4 143:13 144:4 146:13 148:22 149:2 149:5 149:7 154:5 194:13 | | **advocated**(1) 174:12 | | **all**(180) 13:2 14:5 14:18 14:21 14:25 15:9 15:22 16:19 20:9 22:12 22:21 23:9 23:13 24:1 24:4 24:5 26:12 27:9 27:13 27:24 28:8 30:23 33:14 33:15 33:22 34:2 34:4 34:11 34:14 36:2 37:13 38:17 38:20 39:14 40:2 40:3 41:9 42:18 45:6 45:6 48:2 49:9 50:20 51:9 51:12 51:25 52:2 52:7 53:4 55:21 56:4 56:4 56:21 58:12 59:13 59:14 60:11 61:20 62:7 62:12 62:16 66:9 67:23 71:3 72:16 73:24 74:10 74:22 76:25 77:24 78:4 78:7 78:12 79:10 80:16 80:24 82:18 83:19 85:6 85:12 85:16 85:16 86:13 88:13 90:10 96:4 96:19 100:5 100:21 101:8 101:9 101:10 103:12 105:6 110:10 111:4 111:5 122:2 123:3 123:17 123:17 124:4 125:3 125:5 125:13 126:2 127:24 128:16 135:3 135:3 135:7 135:24 137:19 137:25 139:10 143:2 147:20 148:2 148:3 149:11 150:6 150:21 150:22 152:11 152:11 154:11 156:21 158:1 160:22 160:25 161:1 165:2 166:1 167:9 167:10 167:10 167:20 168:4 168:21 168:24 170:8 170:14 171:10 171:20 172:17 174:8 174:8 174:20 176:7 176:23 177:6 178:6 178:22 181:16 182:21 183:9 184:10 186:6 186:17 187:22 189:4 189:9 190:23 191:4 193:3 195:17 199:24 201:6 201:14 203:22 204:1 204:6 204:16 209:7 209:16 210:20 211:16 211:18 211:18 211:21 | |
| | | **actions**(25) 40:18 41:20 51:10 51:19 51:25 51:25 52:2 52:8 53:20 53:25 54:19 54:19 54:21 55:3 55:8 55:14 56:1 56:17 56:25 58:22 62:19 82:9 120:5 152:3 180:24 | | **advocates**(1) 174:5 | | | |
| | | | | **advocates**(1) 208:4 | | | |
| | | **activities**(1) 81:1 | | **advocating**(3) 174:13 175:23 176:16 | | | |
| **above**(2) 173:7 181:17 | | **activity**(1) 52:15 | | **affairs**(1) 138:15 | | | |
| **above-entitled**(1) 212:5 | | **acts**(5) 79:15 148:25 149:8 149:12 151:1 | | **affect**(3) 20:5 74:21 127:12 | | | |
| **absence**(1) 164:25 | | **actual**(3) 89:25 133:8 181:4 | | **affected**(1) 40:1 | | | |
| **absent**(6) 34:16 36:12 37:12 100:25 101:13 176:24 | | **actually**(33) 41:5 52:11 77:9 84:1 86:13 90:17 94:16 96:3 99:4 105:10 113:5 116:5 117:21 126:6 134:16 142:18 142:19 142:22 143:9 145:10 148:12 148:12 165:18 169:12 175:18 181:1 181:3 182:2 187:8 191:3 198:7 200:8 205:10 | | **affiliate**(1) 111:2 | | | |
| | | | | **affiliates**(3) 79:24 197:25 197:25 | | | |
| **absolute**(6) 102:19 180:6 182:9 182:13 183:4 183:19 | | **adam**(1) 3:29 | | **affirmance**(1) 133:9 | | | |
| | | **add**(2) 140:21 207:23 | | **affirmative**(9) 44:18 101:2 101:11 112:21 159:11 167:21 171:2 171:21 210:11 | | | |
| **absolutely**(11) 35:20 63:8 65:9 80:17 98:11 103:3 103:10 119:18 132:18 148:13 160:24 | | **added**(2) 41:6 84:2 | | | | | |
| | | **adding**(1) 177:15 | | **affirmatively**(1) 155:20 | | | |
| **abundance**(2) 18:6 200:9 | | **addition**(4) 19:25 28:21 160:13 160:13 78:20 83:24 211:11 | | **afford**(1) 208:25 | | | |
| **accept**(9) 19:8 33:10 37:21 47:12 161:16 162:5 163:8 168:2 168:25 | | | | **afforded**(3) 75:22 77:5 129:23 | | | |
| | | **address**(25) 13:1 13:9 17:7 19:13 21:6 25:12 31:11 32:23 35:7 37:2 39:9 53:18 72:11 78:17 83:16 83:17 89:7 116:3 135:17 180:2 189:23 190:2 199:18 204:12 206:21 | | **afoul**(1) 52:15 | | | |
| **acceptable**(2) 59:25 195:20 | | | | **after**(18) 13:9 28:22 60:9 85:2 85:5 107:18 116:2 117:7 119:20 125:19 137:3 137:4 150:8 177:18 182:1 182:20 184:11 197:19 | | | |
| **acceptance**(11) 39:25 124:18 124:20 167:21 169:11 169:13 171:2 171:10 171:1 171:20 172:6 | | **addressed**(3) 12:25 21:2 25:5 | | | | | |
| | | **addresses**(1) 149:16 | | **afternoon**(11) 12:9 32:18 78:8 78:12 83:21 90:20 93:13 115:23 135:14 149:11 152:12 154:12 179:19 | | | |
| **acceptances**(1) 156:11 | | **addressing**(6) 13:15 32:14 32:15 78:16 120:20 168:22 | | **again**(41) 20:8 23:8 24:17 24:22 25:7 26:13 26:23 29:15 30:4 30:11 40:24 46:11 48:17 53:4 54:2 56:22 57:18 59:21 65:22 81:12 88:12 101:18 105:7 114:21 116:1 126:9 129:11 135:15 147:3 147:22 154:12 159:25 163:11 173:18 177:25 179:7 179:25 182:21 190:14 191:11 192:18 | | | |
| | | | | **against**(63) 15:11 17:4 17:13 17:14 33:15 37:19 39:20 42:19 43:9 53:25 54:15 55:1 55:4 67:3 69:24 70:17 79:9 79:22 81:18 82:21 82:24 87:20 87:23 88:4 90:15 91:1 92:13 93:23 106:22 111:6 114:14 116:20 116:23 116:25 119:21 135:11 136:23 136:24 136:25 136:25 137:3 137:8 138:10 138:12 138:13 138:14 142:15 144:5 167:7 171:19 180:7 180:13 180:19 181:2 181:4 181:11 187:16 188:23 190:3 194:2 197:10 197:24 198:4 | | **all-cash**(1) 189:16 | |
| | | | | | | **all.'"**(1) 163:19 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **allegation**(5) 120:23 120:24 121:5 150:14 176:23 | | **amount**(37) 16:18 21:11 22:20 22:22 23:2 23:3 23:16 24:25 25:8 25:18 26:10 26:25 28:9 46:2 50:8 50:9 59:24 71:17 72:4 72:6 72:17 76:7 99:17 106:23 110:15 117:22 117:24 133:14 137:11 139:1 180:1 188:8 188:19 189:5 193:2 206:2 209:22 | | **and**(301) 63:2 63:4 63:5 63:7 63:10 63:12 63:19 63:23 65:7 65:12 65:14 65:16 65:22 66:4 66:5 66:7 66:11 66:15 66:17 66:19 66:20 66:23 66:24 67:10 67:10 67:17 67:24 68:6 69:12 69:13 69:18 69:22 69:25 70:1 70:4 70:6 70:8 70:12 70:14 70:16 70:19 70:22 71:1 71:5 71:10 71:18 71:20 72:11 72:18 72:19 72:21 73:10 73:14 73:18 73:20 73:20 73:21 73:22 74:3 74:5 74:14 74:25 75:9 75:10 75:11 75:14 75:15 75:17 75:18 75:25 76:5 76:6 76:17 76:17 76:21 77:7 77:11 77:18 78:4 78:13 78:22 79:2 79:6 79:14 79:18 79:24 79:25 80:1 80:5 80:13 80:16 80:19 80:24 81:1 81:5 81:11 81:24 82:2 82:2 82:3 82:3 82:8 82:15 82:16 82:20 83:3 83:4 83:9 83:11 83:14 84:11 84:12 84:15 84:18 84:20 85:4 85:10 85:14 85:14 85:16 85:18 85:22 85:24 85:25 85:25 86:1 86:10 86:10 86:11 86:12 86:14 86:23 87:6 87:6 87:15 87:17 87:21 87:24 88:6 88:6 88:9 88:13 88:19 89:1 89:3 89:14 89:17 89:21 89:21 90:3 90:10 90:10 90:11 90:21 90:25 91:4 91:8 91:11 91:15 91:16 92:2 92:9 92:12 92:13 93:1 93:5 93:8 93:9 93:14 93:15 93:18 93:19 93:23 93:24 94:1 94:14 94:17 94:20 94:20 95:3 95:8 95:12 95:15 96:18 96:22 96:24 97:10 97:13 97:14 97:17 97:18 97:19 97:21 97:24 98:1 98:8 98:13 99:9 99:10 99:11 99:13 99:21 100:2 100:7 100:10 100:12 100:20 100:23 101:1 101:4 101:9 101:17 101:21 101:25 102:3 102:4 102:5 102:17 102:19 102:19 102:19 102:22 103:14 103:19 103:25 103:25 104:3 104:4 104:10 104:14 104:17 105:8 105:10 105:17 105:17 105:25 106:3 106:8 106:25 106:25 107:2 107:4 107:5 107:7 107:8 107:11 107:14 107:17 107:19 107:19 107:21 107:22 107:22 107:23 108:14 108:24 108:24 109:1 109:3 109:5 109:9 109:9 109:10 109:11 109:12 109:14 109:14 109:20 110:5 110:6 110:6 110:8 110:11 110:20 110:25 111:3 112:9 112:21 113:2 113:13 113:15 114:13 114:15 114:18 115:14 115:24 116:1 116:4 116:12 116:15 116:23 116:25 117:7 117:17 118:3 118:5 118:15 118:23 119:1 | | **and**(301) 119:18 119:19 119:22 120:1 120:4 120:5 120:10 120:18 120:23 120:24 120:24 121:12 121:17 121:21 122:5 122:8 122:17 122:19 122:19 122:20 122:21 122:22 122:23 122:23 122:25 123:6 123:12 123:12 123:16 123:19 124:6 124:12 124:18 124:21 125:7 125:8 125:10 125:20 126:3 126:16 126:19 126:23 127:1 127:4 127:5 127:7 127:8 127:10 127:10 127:11 127:17 127:19 127:23 128:1 128:8 128:10 128:12 128:15 128:17 128:25 129:5 129:6 129:8 129:10 129:13 129:15 129:16 129:17 129:24 129:25 130:3 130:5 130:8 130:8 130:12 130:16 130:17 130:22 131:4 131:7 131:10 131:11 131:12 131:14 131:19 131:21 131:22 131:25 132:2 132:2 132:3 132:6 132:6 132:8 132:10 132:12 132:16 132:17 133:6 133:7 133:9 133:9 133:10 133:11 133:13 133:24 134:2 134:5 134:5 134:11 134:12 134:13 134:15 134:19 134:22 135:7 135:16 135:23 135:24 135:25 136:1 136:4 136:6 136:7 136:15 136:17 136:19 136:20 136:21 136:23 136:24 137:1 137:2 137:3 137:13 137:18 137:19 137:21 137:22 138:13 138:13 138:19 138:21 138:24 138:24 139:4 139:5 139:8 139:10 139:14 139:19 139:20 139:22 139:23 139:24 140:4 140:11 140:24 140:25 141:6 141:15 141:18 141:23 142:1 142:6 142:8 142:15 142:19 142:24 142:25 143:5 143:6 143:14 143:17 143:17 143:18 143:23 144:2 144:7 144:10 144:22 145:4 145:7 145:9 145:12 145:15 145:17 145:19 145:23 146:1 146:13 146:15 146:17 146:18 146:19 146:24 147:3 147:12 147:12 147:12 147:13 147:15 147:15 147:25 148:3 148:6 148:10 148:11 148:12 148:18 148:20 148:23 149:3 149:16 149:18 149:24 149:25 150:3 150:7 150:23 151:15 151:19 152:1 152:11 152:15 152:18 152:22 152:25 153:5 153:7 153:23 154:9 154:14 154:17 154:22 154:25 155:4 155:6 155:22 155:22 156:2 156:12 156:15 156:24 156:24 156:25 157:1 157:2 157:22 158:5 158:6 158:7 158:11 158:16 158:18 158:19 158:20 159:9 159:18 160:1 160:13 160:17 160:19 160:21 160:24 161:2 161:12 162:13 162:21 162:4 162:8 162:10 162:13 162:13 162:21 162:22 162:23 163:1 163:2 163:3 163:5 163:5 163:13 163:14 163:16 163:18 163:21 163:24 164:9 164:9 164:12 164:14 164:22 165:14 |
| **allegations**(9) 122:19 125:21 148:5 149:17 151:5 151:15 152:18 152:23 152:25 | | **amounting**(2) 26:22 173:21 | | | | | |
| | | **amounts**(6) 74:22 75:7 75:23 80:6 120:3 195:18 | | | | | |
| **allege**(2) 149:11 151:3 | | | | | | | |
| **alleged**(1) 149:12 | | **ample**(4) 15:17 74:24 77:5 171:3 | | | | | |
| **allocable**(1) 26:17 | | **amplified**(3) 41:22 41:25 47:18 | | | | | |
| **allocate**(1) 23:11 | | **amusing**(1) 153:21 | | | | | |
| **allocating**(1) 90:22 | | **amy**(1) 8:31 | | | | | |
| **allocation**(8) 23:16 24:8 132:4 132:7 149:24 150:19 192:9 210:9 | | **analogous**(1) 94:20 | | | | | |
| | | **analysis**(32) 41:21 41:24 46:4 46:17 71:24 72:7 73:7 73:16 73:23 128:4 129:8 130:2 132:25 133:1 145:13 145:15 146:4 156:2 157:1 157:19 158:1 159:7 159:18 159:19 160:25 161:1 161:3 176:17 185:8 185:16 186:10 186:23 | | | | | |
| **allotted**(3) 126:21 179:21 205:24 | | | | | | | |
| **allow**(6) 24:24 88:8 162:24 164:8 169:5 211:6 | | | | | | | |
| | | **analyze**(2) 39:16 52:3 | | | | | |
| **allowance**(1) 192:22 | | **analyzed**(2) 179:8 191:15 | | | | | |
| **allowed**(8) 59:6 136:6 136:16 138:24 141:8 143:15 180:18 206:18 | | **analyzes**(1) 157:5 | | | | | |
| | | **analyzing**(2) 46:3 46:5 | | | | | |
| **allowing**(3) 38:18 115:4 115:5 | | | | | | | |
| **allows**(2) 24:25 102:24 | | **and**(301) 5:5 12:9 12:11 12:17 12:19 12:22 12:24 12:24 13:7 13:10 13:12 13:23 13:24 13:24 14:13 14:17 14:22 14:22 14:25 15:6 15:10 15:11 15:17 16:4 16:6 16:10 16:17 16:25 17:6 17:18 18:2 18:9 18:11 18:13 18:17 18:20 18:21 19:2 19:25 20:11 20:16 21:2 21:23 22:1 22:2 22:16 23:16 24:2 24:4 24:6 24:6 24:8 24:19 24:22 24:23 25:2 25:7 25:16 25:20 25:24 26:2 26:5 26:6 26:8 26:13 26:17 26:21 26:22 27:2 27:9 27:13 28:10 28:11 28:11 28:16 28:19 28:24 28:25 29:6 29:8 29:19 29:12 29:13 29:17 30:6 30:8 30:9 30:16 30:24 31:10 31:21 32:4 32:14 32:15 32:21 33:1 33:4 33:5 33:7 33:25 34:4 34:7 34:8 34:10 34:14 34:18 34:23 35:6 35:13 35:14 35:16 35:20 36:3 36:6 36:13 36:15 36:16 36:20 36:22 37:1 37:4 37:8 37:13 37:19 37:21 38:2 38:8 38:13 38:15 38:24 39:7 39:13 39:19 40:1 40:3 40:11 40:14 40:20 40:22 41:6 41:10 41:11 41:22 41:24 42:6 42:6 42:9 42:12 42:14 42:22 43:4 43:17 43:18 43:25 44:1 44:8 44:19 44:22 44:23 44:25 45:1 45:2 45:4 45:9 45:16 45:18 46:4 46:8 46:19 46:20 46:23 46:24 47:3 47:9 47:9 47:11 47:13 47:14 47:15 47:16 47:22 48:1 48:3 48:8 48:10 48:11 48:13 48:15 48:23 48:23 48:24 49:1 49:5 49:16 49:17 49:24 50:22 51:9 51:11 51:13 51:14 51:15 51:17 51:21 51:21 51:23 52:6 52:8 52:16 52:18 52:20 52:21 52:21 52:22 53:4 53:7 53:13 53:20 54:1 54:3 54:3 54:8 54:20 54:21 55:2 55:3 55:10 55:11 55:14 55:17 55:18 55:20 55:22 55:23 56:4 56:12 56:14 56:17 56:20 56:21 56:25 57:1 57:2 57:7 57:8 57:10 57:14 57:21 57:23 57:23 58:2 58:3 58:6 58:7 58:7 58:11 58:13 58:16 58:19 58:22 58:23 59:2 59:4 59:12 59:15 59:15 59:22 59:24 59:25 60:3 60:6 60:10 60:17 60:21 60:22 60:22 60:23 61:1 61:3 61:5 61:6 61:6 61:7 61:9 61:11 61:13 61:15 61:17 61:18 61:21 61:25 62:3 62:4 62:8 62:9 62:10 62:12 62:24 62:25 63:1 | | | | | |
| **alluded**(2) 32:16 37:3 | | | | | | | |
| **almost**(7) 117:7 153:21 158:8 167:16 171:22 171:24 178:18 | | | | | | | |
| **alone**(4) 19:9 47:1 47:19 149:14 | | | | | | | |
| **along**(4) 63:8 137:10 142:24 202:22 | | | | | | | |
| **already**(8) 14:1 20:22 70:5 150:23 151:13 151:14 185:25 186:23 | | | | | | | |
| **also**(39) 19:13 19:21 21:5 24:4 24:23 26:15 26:17 28:2 31:14 32:24 34:6 48:12 55:10 59:17 63:25 66:13 66:13 67:14 75:22 84:18 86:18 89:7 107:8 120:15 122:10 131:23 135:20 140:25 142:11 143:13 155:22 159:7 162:13 164:4 169:24 183:9 192:8 208:7 208:14 | | | | | | | |
| **alternative**(2) 25:17 195:20 | | | | | | | |
| **although**(7) 51:23 67:20 97:16 98:7 143:2 173:13 175:20 | | | | | | | |
| **alvarez**(1) 9:34 | | | | | | | |
| **always**(7) 23:21 77:24 86:21 87:1 91:23 142:17 209:24 | | | | | | | |
| **ambiguity**(4) 65:8 65:17 65:24 105:11 | | | | | | | |
| **ambit**(1) 85:7 | | | | | | | |
| **ameliorated**(1) 32:7 | | | | | | | |
| **ameliorating**(1) 31:5 | | | | | | | |
| **amend**(1) 65:9 | | | | | | | |
| **amended**(12) 12:17 20:21 21:1 24:15 24:16 54:17 85:5 86:19 87:21 173:8 175:10 177:22 | | | | | | | |
| **amendment**(17) 15:24 16:8 16:13 17:22 35:17 35:19 35:23 35:25 36:23 37:7 37:11 37:21 85:3 87:3 172:10 201:20 210:8 | | | | | | | |
| **amendments**(30) 12:16 12:19 12:20 13:1 13:10 14:13 20:4 20:9 20:11 21:2 28:23 31:5 31:14 32:8 32:12 32:17 34:21 35:1 35:7 39:10 187:1 187:3 187:24 188:19 188:25 189:1 189:17 193:21 200:7 200:16 | | | | | | | |
| **america**(4) 6:4 6:4 11:16 101:9 | | | | | | | |
| **american**(1) 60:18 | | | | | | | |
| **americas**(1) 2:32 | | | | | | | |
| **amit**(1) 7:31 | | | | | | | |
| **ammunition**(1) 165:4 | | | | | | | |
| **among**(9) 23:11 31:7 85:17 86:13 108:6 157:20 201:3 204:6 204:11 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **and**(255) 166:9 166:11 166:22 167:7 167:11 167:20 167:23 168:2 168:3 168:9 168:10 168:12 168:22 169:10 169:17 169:18 170:7 170:11 170:12 170:19 170:2 170:24 171:2 171:4 171:5 171:9 171:13 171:21 171:24 172:1 172:2 172:7 172:9 172:16 172:17 172:18 173:5 173:14 173:15 173:18 173:25 174:4 174:6 174:6 174:10 174:12 174:13 174:17 174:23 175:11 175:14 175:25 176:5 176:8 176:14 176:19 177:1 177:5 177:14 177:16 177:20 177:23 178:3 178:4 178:9 178:12 178:13 178:13 178:22 179:4 179:6 179:12 179:25 180:1 180:6 180:8 180:13 180:13 180:16 180:20 181:2 181:5 181:9 181:13 181:15 181:21 181:24 182:3 182:6 182:10 182:22 182:24 183:3 183:3 183:5 183:10 183:14 183:22 183:25 184:2 184:5 184:6 184:9 184:15 184:20 185:2 185:4 185:9 185:12 185:13 185:19 185:20 186:16 187:2 187:9 187:13 187:15 187:16 187:17 187:18 187:21 187:21 187:22 187:24 188: 188:3 188:6 188:9 188:11 188:14 188:16 188:16 188:17 188:25 189:10 189:13 189:14 189:19 189:21 189:23 190:6 190:15 190:13 190:18 190:22 191:10 191:11 191:13 191:14 191:15 191:16 191:18 191:20 191:21 192:10 193:3 193:1 193:22 193:24 193:24 193:25 194:24 195:9 195:15 195:19 195:20 195:21 196:2 196:3 196:6 196:7 196:14 196:15 196:18 197:1 197:2 197:5 197:10 197:14 197:19 197:19 197:21 197:22 198:7 198:13 198:1 198:24 199:4 200:6 200:14 200:17 200:2 201:4 201:7 201:18 201:23 202:5 202:10 202:12 202:14 202:16 202:18 202:18 202:19 202:23 203:2 203:3 203:7 203:15 203:17 204:7 204:11 204:16 204:25 204:2 205:2 205:4 205:9 205:10 205:12 206:4 206:9 206:21 206:23 206:24 207:4 207:8 207:10 207:12 207:14 207:17 208:2 208:2 208:3 208:25 209:7 209:9 209:10 209:11 209:20 210:6 210:10 210:19 210:19 210:23 211:2 211:4 211:6 211:6 211:11 211:11 211:20 | | **any**(88) 14:1 16:22 17:1 18:15 20:12 30:24 33:14 38:1 39:14 41:11 42:24 43:14 44:4 44:21 45:15 49:23 52:5 54:9 54:24 55:12 55:21 57:15 58:25 63:16 65:8 65:10 65:23 67:16 68:2 69:21 70:1 70:18 70:21 71:2 73:17 74:4 80:10 89:15 90:13 93:21 94:25 103:3 104:1 104:4 106:4 106:23 113:7 119:10 120:1 120:7 120:8 123:10 123:13 127:7 127:8 127:13 129:2 130:19 137:25 140:3 146:5 149:13 150:12 153:2 156:11 158:15 161:17 164:19 165:2 169:22 169:23 169:24 169:25 170:5 173:11 174:2 177:24 182:10 184:1 189:9 192:7 193:14 194:8 194:11 197:13 200:4 203:5 | | **april**(16) 1:14 12:1 18:22 110:18 110:24 111:15 112:7 122:24 124:24 125:2 125:5 125:10 205:13 206:9 206:16 212:8 <br><br>**arbitration**(1) 64:6 <br>**architects**(1) 39:1 <br>**architecture**(1) 59:15 <br>**ardent**(1) 111:14 <br>**are**(262) 14:23 16:4 16:24 17:1 17:11 19:23 20:20 20:20 22:12 22:22 24:10 26:2 26:15 26:18 28:3 28:19 28:19 29:1 29:9 30:16 31:5 31:8 31:16 32:1 32:4 32:6 33:19 33:22 33:24 36:11 38:22 39:12 40:22 41:7 41:10 41:16 41:16 42:1 42:16 43:1 44:6 44:21 45:11 45:12 45:16 46:9 47:4 48:19 48:23 49:2 50:5 51:1 52:2 52:23 53:21 54:19 54:22 54:23 56:13 56:16 57:2 57:5 57:7 57:13 57:13 57:19 59:6 60:21 61:3 61:25 62:13 63:12 63:25 64:9 65:6 65:8 66:8 66:9 66:1 66:11 66:11 67:4 67:9 67:9 67:11 67:16 67:16 68:8 68:11 69:4 69:12 69:14 69:16 70:10 71:9 72:23 73:15 74:20 74:24 74:24 75:4 75:11 75:22 76:11 76:15 76:2 77:10 78:11 78:20 78:25 79:9 79:24 80:11 80:20 81:4 81:7 81:11 81:24 82:24 83:1 84:12 85:17 87:19 87:24 88:1 88:6 88:7 88:10 88:19 90:7 90:14 91:4 92:18 95:9 96:15 96:16 97:21 98:17 98:22 99:21 100:7 100:10 102:2 102:3 102:4 102:4 102:13 103:8 103:18 103:22 104:14 106:1 106:21 107:22 108:8 108:17 108:19 109:25 110:11 113:1 113:5 113:16 113:19 113:24 115:4 116:9 117:12 120:4 121:15 122:18 123:6 124:5 124:7 124:8 124:9 125:16 125:23 129:5 129:13 129:14 130:2 134:10 136:22 136:23 137:18 137:19 138:9 139:6 139:9 139:23 140:2 140:3 141:8 141:25 143:1 143:15 144:18 146:2 147:24 148:14 148:23 151:13 151:14 151:15 151:15 152:12 159:21 159:23 160:5 160:22 162:6 163:20 164:22 166:11 166:1 166:25 167:1 167:9 167:15 170:18 170:25 171:12 172:18 174:21 178:11 179:20 180:5 180:14 181:12 181:13 181:24 183:16 184:4 186:10 187:19 194:6 194:18 195:7 195:8 195:9 195:16 198:12 198:22 200:14 204:10 204:16 207:7 207:16 208:1 208:3 208:5 209:8 | | **arguments**(23) 12:9 14:5 14:8 23:25 42:11 82:12 83:11 84:7 90:3 116:10 118:13 118:18 147:23 148:2 148:3 153:13 153:17 167:19 179:22 179:23 199:9 199:11 205:3 <br><br>**arise**(5) 54:1 79:10 112:11 117:25 124:6 <br>**arises**(5) 60:13 117:3 118:1 123:10 123:11 <br>**arising**(3) 81:18 120:3 154:5 <br>**armstrong**(4) 133:23 133:24 134:5 134:6 <br>**around**(9) 56:15 81:23 85:11 86:9 103:13 104:3 170:16 202:7 203:6 <br><br>**arrangements**(2) 102:24 102:25 <br>**arrangers**(1) 55:1 <br>**arrived**(1) 38:11 <br>**arrowgrass**(2) 11:12 11:12 <br>**arthur**(1) 8:35 <br>**articulated**(4) 47:18 93:17 148:15 175:21 <br>**articulating**(1) 147:24 <br>**artificial**(1) 166:13 <br>**artificially**(1) 107:12 <br>**ashby**(1) 4:35 <br>**ashley**(2) 3:41 5:25 <br>**aside**(6) 72:19 79:7 122:16 159:18 159:19 209:2 <br><br>**ask**(18) 18:18 18:21 18:23 44:3 64:12 72:11 76:14 141:4 141:6 146:8 150:25 151:1 178:8 205:12 205:17 207:17 208:7 210:6 <br>**asked**(12) 13:8 39:8 45:21 74:4 78:17 146:10 158:16 171:7 190:20 192:13 201:3 207:14 <br>**aspect**(3) 53:14 147:14 192:20 <br>**aspects**(1) 107:24 <br>**assert**(4) 22:18 55:4 148:7 160:23 <br>**asserted**(5) 54:3 54:4 71:2 153:8 180:19 <br>**asserting**(3) 54:14 54:24 112:3 <br>**assertion**(1) 195:4 <br>**assertions**(1) 62:25 <br>**asserts**(1) 28:17 <br>**assess**(1) 171:19 <br>**asset**(1) 184:2 <br>**assets**(16) 70:18 70:21 70:25 71:3 74:24 102:12 103:8 183:22 187:21 193:14 194:15 194:16 194:18 195:2 197:4 198:2 <br><br>**assign**(1) 70:18 <br>**assist**(1) 98:4 <br>**assistance**(1) 18:17 <br>**associated**(4) 57:9 118:2 118:23 193:14 <br>**associates**(2) 167:2 203:3 <br>**assume**(3) 150:25 151:1 202:4 <br>**assumed**(3) 122:2 122:6 208:19 <br>**assumes**(3) 121:16 151:11 151:12 <br>**assuming**(7) 13:25 22:12 73:2 74:13 128:21 129:11 209:6 <br><br>**assumption**(1) 139:3 <br>**astutely**(1) 160:18 <br>**asylum**(1) 3:23 <br>**atamian**(1) 7:33 <br>**attach**(1) 70:25 <br>**attack**(4) 114:3 114:4 114:19 147:25 <br>**attacking**(1) 137:19 <br>**attempt**(8) 103:4 112:2 113:7 158:8 158:9 182:4 190:2 190:9 <br><br>**attempted**(3) 40:8 174:19 183:15 <br>**attempting**(1) 187:19 <br>**attendant**(1) 115:20 <br>**attention**(5) 24:12 67:1 168:9 173:2 173:4 <br>**attorney/client**(2) 101:17 101:21 <br>**attract**(1) 188:14 <br>**attributable**(1) 195:2 <br>**attributed**(1) 116:17 <br>**audible**(1) 211:17 |
| **and/or**(2) 127:6 148:25 <br>**anderson**(1) 2:21 <br>**andrew**(8) 3:40 4:7 5:36 5:37 6:20 6:22 9:5 9:16 <br><br>**angeles**(1) 2:18 <br>**angelo**(8) 2:4 9:8 42:6 46:19 52:18 53:3 81:11 115:25 <br><br>**angels**(1) 104:25 <br>**announced**(1) 163:17 <br>**another**(25) 13:8 17:6 25:12 43:23 48:4 48:4 48:25 49:3 50:16 73:12 88:24 91:14 97:3 105:17 112:17 115:3 116:15 128:22 144:1 145:3 165:15 191:14 192:19 192:19 195:21 <br>**another's**(1) 12:23 <br>**answer**(6) 20:12 44:22 131:17 141:6 195:15 211:8 <br><br>**answers**(1) 99:19 <br>**anticipate**(2) 13:3 13:19 <br>**anticipated**(1) 202:1 | | **anyway**(1) 46:14 <br>**anywhere**(3) 64:3 72:9 187:23 <br>**apart**(1) 153:5 <br>**apathy**(2) 169:5 169:17 <br>**apologies**(1) 76:24 <br>**apparatie**(2) 67:15 202:17 <br>**apparent**(4) 81:14 81:15 112:8 115:19 <br>**apparently**(4) 61:18 112:5 119:22 122:10 <br>**appealable**(1) 146:16 <br>**appear**(3) 31:22 69:25 84:14 <br>**appearance**(2) 202:18 203:10 <br>**appearances**(7) 5:12 6:1 7:1 8:1 9:1 10:1 11:1 <br><br>**appears**(5) 48:5 84:9 143:4 158:8 206:16 <br>**appellate**(1) 207:24 <br>**applaud**(1) 34:18 <br>**applicability**(1) 21:23 <br>**applicable**(6) 114:11 127:7 127:8 127:2 152:19 162:9 <br><br>**application**(6) 53:18 53:19 59:2 132:25 149:5 157:5 <br><br>**applied**(4) 56:24 62:17 66:19 131:11 <br>**applies**(5) 82:23 119:13 170:9 174:9 <br>**apply**(15) 24:4 31:9 31:12 53:20 56:23 66:2 69:9 70:25 82:21 97:17 119:13 130:15 170:24 171:4 207:12 <br><br>**applying**(3) 71:23 71:23 134:12 <br>**appreciate**(6) 63:24 63:25 68:6 186:22 204:20 208:21 <br><br>**appreciates**(2) 54:4 193:25 <br>**appreciation**(2) 194:9 210:1 <br>**approach**(3) 20:23 55:24 207:10 <br>**appropriate**(27) 22:2 22:9 23:6 24:7 42:16 53:17 69:16 71:25 74:13 75:8 82:5 89:5 103:13 109:3 135:24 139:16 139:18 141:24 143:3 145:8 146:6 146:7 147:11 160:4 174:7 200:19 201:5 <br><br>**appropriately**(2) 100:6 197:20 <br>**approval**(9) 18:13 18:19 19:22 44:2 44:6 60:4 103:2 123:7 199:22 <br><br>**approve**(7) 58:25 59:24 82:4 139:15 146:16 151:6 164:23 <br>**approved**(8) 57:23 71:7 82:2 139:2 139:4 147:16 175:5 175:11 <br><br>**approving**(1) 140:5 <br>**approximate**(1) 74:18 <br>**approximately**(4) 45:16 132:15 133:14 133:16 | | **aren't**(2) 70:6 149:20 <br>**aren't**(5) 152:9 152:18 160:15 168:21 202:25 <br><br>**arguable**(2) 123:21 123:23 <br>**arguably**(1) 87:18 <br>**argue**(6) 46:22 58:5 112:25 113:7 113:10 113:11 113:14 118:19 126:8 126:16 160:6 179:2 182:15 188:4 190:9 197:18 <br><br>**argued**(4) 128:23 144:9 153:16 208:15 <br>**arguing**(9) 56:10 61:10 129:12 142:25 148:1 155:24 157:16 157:17 200:4 <br><br>**argument**(60) 15:20 35:10 42:10 45:14 55:19 56:11 61:1 61:6 61:9 61:15 61:17 67:18 68:6 68:6 69:6 69:19 70:3 75:10 78:9 78:15 78:24 80:25 81:3 83:8 88:23 89:18 106:13 113:6 113:17 114:18 116:3 116:4 116:19 119:14 119:15 121:9 122:14 125:13 126:1 126:9 131:6 145:4 148:4 148:12 148:15 152:22 165:12 169:25 172:7 176:10 179:24 180:5 182:2 183:7 188:3 188:24 188:25 189:24 197:21 199:2 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **aurelius**(24) 4:26 7:11 7:12 20:16 35:6 36:25 51:8 53:13 87:19 88:8 88:12 97:9 97:18 109:20 126:23 131:23 135:15 154:1 174:11 178:21 184:20 190:17 196:2 199:10 | | **bar**(44) 13:7 53:8 53:14 53:18 53:19 54:17 55:14 56:13 56:20 57:2 57:10 57:22 58:1 58:11 58:20 58:24 59:2 59:15 59:22 61:11 61:16 62:5 62:6 62:11 62:17 83:17 84:1 84:5 84:11 84:11 84:15 84:17 84:22 85:10 86:1 86:8 86:16 86:19 86:23 87:4 87:14 87:22 88:13 89:5 | | **before**(35) 1:18 18:11 19:8 19:12 19:18 23:25 32:7 33:25 49:9 50:3 62:8 62:21 64:22 78:9 83:9 85:8 85:19 105:10 109:9 119:17 125:7 134:14 139:9 139:11 141:22 146:25 158:17 158:22 185:8 186:4 193:15 193:17 195:23 202:23 209:3 | | **billion**(19) 15:4 15:16 19:10 22:17 23:7 23:8 26:24 27:3 35:18 36:9 36:10 36:11 36:21 74:18 180:12 189:12 193:2 193:21 198:2 |
| **austin**(3) 1:23 6:29 206:8 | | | | **beg**(1) 209:12 | | **billion-and-a-half**(1) 194:4 |
| **authorities**(2) 142:2 172:20 | | **barakat**(1) 156:19 | | **began**(1) 90:7 | | **bit**(23) 19:18 34:6 51:4 51:5 85:11 106:20 106:20 107:9 107:19 108:13 120:18 131:15 132:16 133:18 134:11 142:17 156:14 166:8 167:6 176:25 178:25 182:14 203:7 |
| **authority**(3) 151:17 152:6 173:14 | | **barclays**(5) 2:30 7:30 110:8 110:13 110:15 | | **begin**(4) 12:15 66:23 139:11 156:1 | | |
| **authorize**(1) 51:18 | | **bare**(1) 115:1 | | **beginning**(1) 13:6 | | **bitterly**(1) 189:15 |
| **automatically**(1) 42:13 | | **bargain**(1) 152:7 | | **begins**(2) 93:18 156:2 | | **bizarre**(1) 119:24 |
| **availability**(1) 202:5 | | **bargained**(1) 149:23 | | **behalf**(11) 20:16 35:6 62:23 72:13 115:24 116:10 142:20 154:14 184:19 196:1 199:9 | | **black**(3) 25:25 32:7 33:3 |
| **available**(16) 13:23 51:10 111:18 112:4 113:16 113:21 113:25 147:1 169:14 170:2 178:13 184:13 185:6 204:14 204:17 209:6 | | **barred**(1) 54:24 149:7 | | | | **blake**(1) 2:6 |
| | | **bars**(1) 61:11 | | **behind**(5) 63:11 143:2 145:20 159:10 | | **blame**(1) 61:10 |
| **ave**(2) 1:35 2:17 | | **baseball**(1) 64:6 | | **being**(63) 13:19 15:22 16:24 19:2 25:6 | | **blameless**(1) 61:3 |
| **avenue**(4) 2:32 3:10 4:15 4:37 | | **based**(39) 14:4 15:17 16:9 23:4 24:22 26:20 27:6 27:10 27:11 41:21 41:24 48:2 51:16 52:19 73:21 94:8 96:1 98:25 109:1 111:1 113:20 113:24 122:11 132:11 152:9 152:12 152:24 153:6 161:14 169:11 169:14 170:6 173:11 191:2 196:5 200:5 200:11 201:19 202:24 | | 31:25 32:5 32:19 32:20 33:17 43:22 45:9 45:11 46:9 47:25 48:15 57:12 57:13 57:14 57:14 59:13 59:25 61:24 62:17 67:14 67:15 67:17 68:17 68:17 75:19 76:11 78:25 79:5 79:25 97:23 100:1 105:3 106:5 113:9 129:10 131:5 134:18 136:25 137:20 138:16 138:17 138:22 138:23 138:2 146:5 163:12 163:12 168:17 170:1 176:22 181:12 186:6 186:14 200:19 200:20 201:1 | | **blanket**(1) 52:7 |
| **avoid**(5) 14:1 80:2 119:8 119:19 180:24 | | | | | | **block**(2) 4:41 9:4 |
| **avoidable**(2) 121:15 149:14 | | | | | | **blocked**(1) 13:21 |
| **avoidance**(35) 31:10 34:3 34:10 54:19 56:25 84:16 85:21 85:23 86:20 86:24 87:14 87:18 87:19 88:3 88:14 88:17 88:19 119:7 120:5 121:9 121:18 121:23 122:4 122:7 122:23 122:25 138:21 138:23 139:5 142:9 148:6 192:23 193:5 | | | | | | **bloom**(1) 94:13 |
| | | | | | | **blossoms**(1) 94:12 |
| | | | | | | **blow**(1) 154:3 |
| | | | | | | **blurb**(1) 153:12 |
| | | **basic**(2) 113:3 169:4 | | **believe**(84) 15:16 17:18 18:5 18:9 18:17 24:17 25:14 27:6 29:9 29:21 32:3 32:21 41:7 42:7 42:14 42:24 44:7 44:11 44:22 45:2 45:2 45:18 47:17 49:3 52:7 56:18 60:16 63:5 65:12 66:25 67:10 71:23 75:8 77:1 82:1 82:4 86:8 86:10 87:15 88:21 89:4 90:14 90:25 94:10 99:3 100:8 101:24 103:3 115:17 115:18 127:16 127:17 127:2 130:21 131:5 131:20 133:18 137:6 144:13 144:17 145:11 145:13 146:4 146:11 147:6 158:12 160:18 164:24 165:8 171:16 177:6 178:4 186:15 186:23 188:11 188:17 189:1 189:14 192:1 199:10 200:8 206:10 206:1 211:3 | | **board**(19) 2:36 29:6 98:4 98:6 98:21 99:2 99:11 99:16 99:22 102:19 105:16 105:21 105:25 106:5 106:8 106:12 106:15 117:25 178:18 |
| | | **basically**(12) 116:10 118:1 120:23 123:9 134:3 134:6 140:5 170:7 171:1 174:12 177:22 193:17 | | | | **boccssini**(1) 10:42 |
| | | | | | | **bondholders**(3) 95:11 131:13 157:16 |
| **avoided**(12) 23:14 23:18 23:22 24:2 24:5 36:13 118:15 119:22 120:6 145:17 146:7 183:19 | | **basis**(27) 18:19 32:17 43:6 43:20 49:3 49:24 70:20 93:21 93:24 96:12 110:22 111:6 114:9 132:9 134:23 148:5 160:5 168:7 171:3 172:1 172:2 172:23 175:20 177:2 178:10 185:17 190:6 | | | | **books**(1) 166:25 |
| **avoids**(1) 197:2 | | | | | | **borne**(1) 100:22 |
| **aware**(12) 16:20 19:9 21:18 40:5 45:8 45:23 82:25 91:15 124:15 161:17 182:10 200:24 | | **basis."**(1) 160:6 | | | | **both**(36) 14:15 29:1 37:8 41:9 44:19 44:24 54:13 67:19 75:9 77:17 84:8 86:12 100:10 106:6 108:8 112:10 112:11 112:12 115:24 116:3 127:18 128:12 129:4 129:5 130:17 132:2 145:9 145:16 155:6 156:24 160:1 168:23 171:14 179:25 201:4 202:16 |
| | | **batting**(1) 198:21 | | | | |
| **away**(18) 23:23 45:17 91:14 93:20 93:21 95:13 104:23 106:14 106:16 115:6 175:12 177:23 181:18 186:6 187:18 187:21 187:22 204:11 | | **bay**(7) 134:15 134:18 191:11 191:11 191:12 191:24 192:8 | | **believed**(1) 18:23 | | |
| | | | | **belong**(4) 40:16 54:1 61:25 87:14 | | **bother**(1) 113:11 |
| **b.r**(7) 156:19 157:23 160:3 160:10 162:12 163:10 163:19 | | **bear**(6) 58:17 61:8 61:21 61:23 74:15 189:22 | | **bendernagel**(1) 1:25 | | **bothered**(2) 167:17 173:18 |
| | | | | **beneficial**(1) 87:12 | | **bottom**(3) 116:21 140:13 152:25 |
| **back**(35) 24:8 25:19 26:9 28:7 28:20 31:25 55:4 80:3 109:2 112:7 116:1 133:2 139:7 139:8 139:10 141:9 144:4 145:17 147:9 148:15 151:19 155:22 158:19 161:9 161:10 164:9 164:23 177:25 183:7 191:10 192:14 192:21 193:10 206:4 207:19 | | **bearing**(1) 195:1 | | **beneficiaries**(8) 103:7 127:13 128:18 143:15 147:2 195:7 195:8 195:15 | | **bound**(2) 146:19 148:13 |
| | | **bears**(2) 43:25 86:11 | | | | **boundaries**(1) 13:16 |
| | | **became**(2) 23:25 134:14 | | **beneficiary**(1) 195:1 | | **bounds**(1) 174:6 |
| | | **because**(87) 12:25 15:8 15:12 15:21 23:6 23:13 23:23 26:25 27:12 27:21 30:14 31:21 36:12 38:3 42:7 42:13 45:7 47:10 47:23 48:5 48:15 49:8 49:25 51:10 58:20 60:11 61:11 61:14 62:8 63:5 64:15 68:20 69:25 70:1 71:1 72:12 72:15 75:10 79:16 82:12 83:8 90:2 92:9 93:19 94:1 107:24 114:19 115:3 119:13 123:5 125:15 125:21 132:3 132:6 134:17 139:2 142:1 142:19 143:22 148:20 154:18 156:2 158:2 159:23 162:18 163:24 170:14 171:25 172:1 172:15 173:2 173:7 173:19 174:24 175:12 177:17 179:25 182:16 183:9 185:19 190:2 197:20 201:15 202:14 203:1 203:2 | | **benefit**(29) 22:15 29:14 30:18 39:12 43:13 49:2 50:22 61:16 73:16 73:22 88:9 92:24 102:10 111:13 112:4 112:13 119:9 128:24 129:1 129:3 131:18 131:21 132:1 132:21 133:12 135:9 142:9 142:14 152:15 | | **bove**(2) 5:5 211:11 |
| | | | | | | **bowden**(1) 4:36 |
| | | | | | | **boy**(1) 64:14 |
| | | | | | | **bradford**(1) 4:42 |
| | | | | | | **brady**(1) 2:7 |
| **back-and-forth**(1) 210:3 | | | | | | **brand**(1) 119:14 |
| **backwards**(1) 76:19 | | | | | | **brandywine**(1) 2:8 |
| **bad**(7) 58:13 148:25 149:8 149:12 151:1 201:1 201:8 | | | | **benefits**(4) 48:24 61:23 81:5 115:20 | | **brass**(1) 8:26 |
| | | | | **bennett**(1) 2:14 | | **breach**(1) 137:8 |
| **baffled**(1) 190:19 | | | | **benson**(1) 10:4 | | **break**(4) 64:22 77:12 78:10 147:17 |
| **bagel**(1) 136:6 | | | | **bernstein**(1) 3:7 | | **breaking**(1) 137:9 |
| **baiera**(1) 9:9 | | | | **beron**(1) 121:24 | | **brett**(1) 6:35 |
| **balance**(2) 47:2 182:20 | | | | **best**(14) 66:18 94:9 95:13 130:10 139:17 145:7 146:5 147:11 148:16 173:14 185:6 187:24 195:5 205:5 | | **brian**(1) 9:37 |
| **bale**(1) 5:16 | | **becomes**(3) 36:17 146:15 170:12 | | | | **brickley**(1) 11:5 |
| **banc**(2) 4:13 8:38 | | **been**(90) 17:3 17:16 26:10 28:23 30:8 34:16 34:24 37:25 38:11 41:14 42:24 45:3 45:19 47:19 48:18 51:7 52:2 52:5 53:17 57:8 58:7 58:7 63:5 63:18 66:4 67:5 67:13 67:21 68:12 69:9 70:5 71:5 71:20 73:4 74:7 81:17 83:9 84:17 86:22 90:13 93:22 99:14 100:1 100:12 100:19 100:21 100:23 104:5 105:24 106:2 106:2 106:24 106:24 111:14 118:18 119:17 121:22 128:1 128:11 128:15 136:12 137:17 138:5 139:1 139:2 139:4 141:19 143:21 145:23 149:12 149:13 151:14 152:17 152:23 153:7 153:8 157:2 158:2 166:21 167:21 167:25 178:11 176:2 199:11 202:15 205:10 207:25 208:11 209:23 210:5 | | | | **bridge**(37) 23:24 23:24 24:1 24:6 24:8 24:9 26:16 26:18 28:4 28:5 28:7 28:8 28:15 28:19 33:11 33:16 33:21 34:11 34:13 37:4 38:9 38:10 38:14 38:14 38:17 39:1 42:5 42:12 46:18 52:17 63:3 63:9 63:11 92:8 130:1 186:2 |
| **bank**(11) 6:4 6:4 7:22 7:26 8:20 10:41 11:16 99:12 199:5 199:6 199:7 | | | | | | |
| | | | | | | **brief**(51) 25:23 32:11 62:23 84:23 84:25 84:25 90:12 93:18 93:20 94:2 116:7 116:13 124:13 125:17 135:11 139:21 142:1 142:20 142:20 142:24 144:7 144:8 144:12 145:6 147:22 148:3 148:16 152:11 153:12 156:25 156:25 159:4 165:25 168:9 168:10 172:25 173:4 174:18 177:23 178:23 179:1 179:21 181:6 182:1 188:2 192:19 194:21 198:6 198:8 199:8 200:3 |
| **bank's**(1) 55:23 | | | | | | |
| **bankr**(3) 156:19 160:3 160:10 | | | | **bet**(1) 108:17 | | |
| **bankruptcy**(39) 1:1 1:19 40:19 62:13 67:13 80:21 82:9 82:17 93:2 93:11 103:1 103:6 106:19 112:15 117:17 119:6 119:17 119:21 121:15 128:1 129:18 130:15 130:2 134:20 134:21 157:8 157:9 157:23 159:6 159:6 159:11 159:13 169:8 169:9 171:1 172:3 173:25 179:3 197:13 | | | | **better**(6) 52:11 89:11 120:14 136:11 180:1 200:20 | | **briefed**(1) 117:12 |
| | | | | | | **briefing**(5) 19:4 42:11 158:16 168:6 179:2 |
| | | | | **between**(27) 13:23 14:10 24:22 28:11 31:9 39:19 46:8 46:23 53:16 54:13 61:6 73:22 104:18 106:25 106:25 112:9 113:1 123:15 158:6 166:8 170:12 174:4 183:12 190:5 191:25 201:3 204:12 | | **briefly**(11) 28:25 35:7 37:3 74:1 80:24 83:17 83:24 89:7 197:22 206:21 207:12 |
| **banks**(6) 56:3 56:9 61:7 61:11 61:12 108:15 135:25 138:10 140:4 | | | | | | |
| **bank's**(2) 186:1 199:10 | | | | **big**(6) 23:12 60:11 61:17 64:2 131:16 131:16 | | |
| | | | | **bigelow**(1) 9:19 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **briefs**(7) 32:15 83:11 108:22 116:8 119:14 197:21 206:25 | | **calculated**(3) 113:4 117:23 123:12 | | **case**(105) 1:5 9:40 27:12 28:16 30:8 41:23 45:23 45:25 46:8 46:9 46:22 47:3 48:12 48:18 50:17 50:17 52:14 57:24 58:2 58:4 58:23 60:18 60:19 62:2 62:18 63:7 65:21 67:22 81:7 81:11 82:8 85:14 85:24 86:10 89:17 89:19 94:14 94:15 94:15 94:23 112:18 113:23 114:17 116:16 117:19 133:24 133:24 134:15 134:17 134:22 141:20 142:11 142:21 142:25 143:1 143:5 143:3 144:23 144:24 145:10 145:16 150:2 151:20 153:11 153:12 153:15 156:24 157:1 157:4 157:7 157:15 157:24 157:25 158:8 158:14 159:4 163:1 163:21 168:16 168:19 169:19 170:4 170:17 170:19 172:2 174:11 174:14 175:22 175:24 175:25 176:14 176:18 176:25 177:2 178:5 179:8 180:23 181:4 186:1 191:10 191:15 191:20 192:6 195:7 195:10 | | **chance**(1) 20:7 | |
| **brigade**(2) 6:8 6:9 | | **calculation**(2) 129:6 129:17 | | | | **chances**(1) 96:18 | |
| **brighten**(1) 193:25 | | **california**(1) 156:19 | | | | **chandler**(1) 9:19 | |
| **brightens**(2) 142:17 143:9 | | **call**(9) 13:22 29:4 180:22 186:7 195:11 201:24 203:10 211:10 211:12 | | | | **chaney**(1) 10:20 | |
| **bring**(6) 54:21 57:20 57:20 59:11 161:9 193:6 | | | | | | **change**(26) 18:3 18:9 18:11 19:6 20:3 25:14 26:3 30:20 31:20 35:10 35:14 41:2 41:3 87:2 87:10 87:12 111:13 168:2 169:12 187:7 187:8 188:7 189:6 189:10 190:12 202:25 | |
| | | **called**(17) 51:12 60:18 63:3 63:5 70:19 90:24 118:2 134:15 134:17 142:6 150:4 150:15 150:18 173:5 177:18 180:9 193:1 | | | | | |
| **brings**(1) 168:5 | | | | | | **changed**(4) 168:1 187:3 187:3 187:9 189:3 | |
| **broad**(3) 39:11 46:1 63:1 | | **calling**(1) 107:7 | | | | **changes**(12) 17:15 18:1 20:5 20:19 21:3 21:6 26:20 28:21 32:25 63:24 63:25 189:23 | |
| **brockius**(1) 8:38 | | **came**(4) 69:7 85:2 185:9 191:18 | | | | | |
| **brought**(7) 54:10 60:3 67:5 87:23 88:5 100:7 150:13 | | **caminetti**(1) 156:4 | | **can**(84) 13:25 14:4 16:3 16:5 17:14 17:14 18:9 24:12 26:2 26:5 26:8 26:9 27:4 30:13 30:18 34:14 44:7 53:20 54:2 54:3 56:23 60:1 61:1 63:16 64:8 67:20 69:14 72:18 72:22 73:14 73:25 77:16 77:16 80:6 80:14 80:15 80:15 88:12 90:4 94:1 95:10 95:17 98:9 103:16 105:19 107:2 107:5 107:24 109:1 118:18 126:18 130:16 136:2 138:5 141:16 142:9 147:2 154:1 154:8 154:9 156:22 156:23 156:24 168:18 170:6 171:23 172:18 174:16 175:19 176:20 177:14 178:1 178:4 178:25 182:23 201:11 202:24 203:14 204:12 206:4 206:8 206:10 206:12 210:9 | | **characteristic**(1) 117:20 | |
| **brown**(3) 3:21 7:30 | | | | | | **characterize**(1) 94:12 | |
| **bruce**(1) 2:14 | | | | | | **characterized**(3) 34:14 94:6 108:21 | |
| **bryan**(1) 6:41 | | | | | | **charade**(1) 115:11 | |
| **bryant**(1) 4:31 | | | | | | **charge**(1) 100:21 | |
| **buckets**(1) 109:8 | | | | | | **charities**(1) 61:5 | |
| **build**(1) 101:20 | | **can't**(13) 40:19 50:24 61:13 63:15 80:13 93:5 99:19 109:1 109:3 114:18 139:14 143:2 151:7 | | **cases**(45) 39:14 43:3 43:3 43:16 63:14 76:4 82:10 85:18 89:22 90:7 90:12 91:3 100:10 100:13 101:6 101:9 101:10 102:2 104:8 122:22 135:1 141:15 141:25 143:13 145:7 145:9 145:13 146:18 152:11 152:12 152:16 157:1 157:20 160:22 160:25 164:1 164:18 168:20 169:5 170:10 170:13 175:16 175:17 177:8 179:10 | | **chart**(3) 27:2 36:6 36:6 | |
| **building**(2) 2:8 5:7 | | | | | | **charter**(3) 160:2 160:7 176:25 | |
| **built**(2) 101:23 101:24 | | | | | | **chase**(4) 7:22 7:26 75:2 83:23 | |
| **bullet**(1) 109:10 | | | | | | **chase's**(1) 106:11 | |
| **bump**(1) 166:18 | | **candidly**(1) 181:6 | | | | **chatting**(1) 131:7 | |
| **bunch**(1) 190:21 | | **cannot**(6) 17:9 62:4 63:10 74:20 143:6 152:7 | | **cash**(42) 14:21 14:22 14:25 15:22 15:25 15:25 26:5 27:19 27:24 29:24 49:14 49:10 49:17 75:25 76:16 76:17 180:17 182:16 182:17 182:20 182:22 182:22 183:2 183:4 186:3 186:3 186:3 187:5 187:7 187:13 187:18 187:21 187:22 189:14 189:18 189:20 191:5 191:13 191:13 191:20 191:22 192:25 199:17 | | **chicago**(2) 1:29 4:44 | |
| **buonome**(1) 2:37 | | | | | | **chief**(1) 157:10 | |
| **burden**(15) 40:6 55:10 55:11 55:18 56:1 59:18 59:20 59:22 60:1 60:5 60:6 60:6 62:1 147:10 189:6 189:23 | | **cantigny**(1) 10:25 | | | | **choice**(15) 16:3 19:25 38:23 61:4 69:6 69:10 92:15 93:8 94:6 94:7 94:11 94:13 95:20 95:21 170:23 | |
| | | **canvasses**(1) 178:24 | | | | | |
| | | **canvassing**(1) 178:25 | | **cash,"**(2) 182:18 182:21 | | **choices**(1) 20:6 | |
| **burdened**(1) 163:18 | | **canyon**(2) 10:19 10:19 | | **cash.**(1) 25:20 | | **choose**(2) 92:17 108:10 | |
| **buried**(1) 84:21 | | **cap**(1) 29:23 | | **cashed**(1) 142:24 | | **chooses**(1) 116:16 | |
| **burnham**(3) 157:22 157:22 160:13 | | **capacity**(4) 79:11 87:23 88:4 88:7 | | **casino**(1) 134:18 | | **choosing**(1) 109:6 | |
| **bush**(1) 5:35 | | **capital**(17) 5:14 5:14 6:8 6:9 7:11 7:12 10:12 10:13 10:37 10:37 11:7 11:8 11:12 11:12 11:22 11:23 97:9 | | **cast**(5) 168:14 168:15 168:18 169:11 169:16 | | **chose**(1) 93:4 | |
| **business**(10) 66:17 68:9 69:23 73:2 73:6 73:13 74:13 75:9 188:13 200:22 | | | | **casts**(1) 168:17 | | **chosen**(1) 187:1 | |
| | | | | **catch**(2) 56:5 203:2 | | **christine**(1) 10:8 | |
| **businesses**(1) 130:4 | | **capped**(3) 30:15 191:1 191:5 | | **catchall**(1) 123:9 | | **chung**(2) 6:5 7:19 | |
| **but**(180) 13:20 14:1 17:10 18:6 23:10 24:18 27:11 28:24 30:1 30:20 32:6 36:10 37:22 38:24 44:20 47:1 47:10 48:1 48:4 49:18 49:22 51:7 52:15 53:15 55:25 56:7 56:23 57:17 57:25 59:7 59:21 60:5 61:4 61:23 63:1 63:9 63:20 67:11 69:4 69:4 72:18 72:21 73:4 73:11 80:14 84:3 86:21 87:11 88:3 88:17 88:23 89:19 91:13 92:23 93:21 93:23 94:2 94:7 94:19 95:19 96:3 96:7 96:11 97:3 102:5 104:2 104:11 104:22 108:3 108:5 109:7 110:24 111:7 111:10 113:10 114:24 119:15 120:21 121:23 125:5 126:8 126:20 131:21 131:23 132:10 133:8 134:1 140:20 143:9 143:25 145:19 145:22 146:22 148:8 150:21 151:7 152:21 153:14 153:21 155:24 156:1 158:3 158:9 158:14 159:17 161:5 162:19 163:1 163:25 164:12 164:24 167:17 167:25 168:11 169:4 169:18 170:11 171:10 171:20 172:12 173:1 173:13 174:3 175:5 175:13 175:23 176:6 176:12 177:2 177:13 178:16 178:16 182:3 182:18 183:12 185:22 186:3 186:13 188:10 189:5 189:14 190:25 191:5 192:4 192:15 193:8 195:3 196:6 196:7 198:12 199:21 200:5 200:9 200:12 200:22 201:6 201:20 202:5 202:21 202:22 203:6 203:13 205:11 205:17 206:12 207:19 208:4 208:7 208:19 209:6 209:9 209:23 210:17 210:20 211:9 | | **captain**(1) 140:10 | | **categories**(4) 41:6 49:10 50:7 70:10 | | **cir**(1) 162:11 | |
| | | **captured**(1) 131:9 | | **category**(2) 41:5 82:13 | | **circuit**(14) 39:16 43:3 66:5 117:20 133:25 161:17 161:18 162:17 175:25 176:4 177:5 177:6 184:7 207:25 | |
| | | **cards**(1) 104:12 | | **cause**(3) 103:4 130:19 154:5 | | | |
| | | **care**(1) 58:21 | | **causes**(22) 22:12 22:22 35:25 36:11 37:19 40:9 41:20 67:3 67:12 70:7 74:23 86:23 86:25 101:18 102:1 103:21 111:5 130:2 130:11 148:22 149:2 149:5 | | **circuit's**(1) 117:18 | |
| | | **career**(1) 166:5 | | | | **circuit's**(1) 176:5 | |
| | | **carey**(1) 1:18 | | | | **circumstance**(4) 31:13 33:17 33:21 95:16 | |
| | | **caridas**(1) 5:37 | | **caution**(2) 18:6 200:9 | | **circumstances**(5) 68:12 69:12 69:16 75:14 103:25 | |
| | | **carl**(1) 5:16 | | **caveating**(1) 85:7 | | | |
| | | **carol**(1) 5:16 | | **cent**(2) 146:1 185:5 | | **cite**(11) 60:1 117:19 134:16 134:16 144:18 145:6 157:21 160:14 160:14 182:8 | |
| | | **carroon**(1) 2:21 | | **central**(4) 104:7 104:23 105:3 156:18 | | | |
| | | **carlyle**(1) 4:13 | | **cents**(7) 92:7 138:7 150:12 183:11 185:4 185:4 191:19 | | **cited**(15) 89:17 89:22 113:23 142:1 142:11 142:20 143:13 143:17 144:4 151:17 152:11 157:4 162:9 162:10 173:4 | |
| | | **carve**(1) 120:18 | | | | | |
| | | **carving**(1) 204:21 | | **certain**(10) 5:4 21:3 30:19 112:4 116:9 116:14 125:19 167:23 183:1 211:2 | | **citi**(3) 10:29 10:29 136:25 | |
| | | | | | | **citibank**(1) 6:17 | |
| | | | | | | **citigroup**(1) 8:29 | |
| | | | | **certainly**(34) 12:13 49:21 54:14 57:7 61:1 61:5 61:13 62:4 65:13 69:9 73:15 85:3 85:17 86:6 87:11 104:6 104:7 125:10 131:14 135:7 143:19 145:11 146:23 147:14 147:15 153:17 165:17 166:11 170:5 182:10 188:10 188:20 189:4 209:14 | | **citing**(1) 142:25 | |
| **buy**(1) 142:7 | | | | | | | |
| **buying**(1) 80:12 | | | | **certainty**(2) 15:25 34:1 | | | |
| **buyout**(6) 70:14 71:13 71:15 71:22 76:13 77:7 | | | | **certificate**(5) 29:2 29:4 29:6 29:11 29:12 | | | |
| | | | | **certification**(1) 212:2 | | | |
| **by-entity**(1) 185:17 | | | | **certify**(1) 212:3 | | | |
| **bynum**(1) 9:25 | | | | **chadbourne**(4) 3:34 5:24 93:14 165:7 | | | |
| **cabins**(1) 79:25 | | | | **challenge**(1) 123:6 | | | |
| **cal**(1) 156:19 | | | | **challenged**(3) 58:1 122:25 137:20 | | | |
| **calculate**(1) 126:17 | | | | **challenges**(1) 68:19 | | | |
| | | | | **challenging**(1) 148:23 | | | |
| | | | | **chambers**(1) 13:22 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**claim**(137) 54:25 54:25 55:4 56:18 56:21 60:2 60:2 60:12 60:24 61:20 71:2 76:4 76:5 77:4 79:9 79:10 79:14 79:19 79:21 79:23 87:23 88:1 89:13 91:9 94:3 94:4 95:16 103:5 109:22 109:24 110:18 110:20 111:3 111:9 111:10 111:14 111:16 111:21 112:3 112:7 112:8 112:9 112:10 113:1 113:3 113:7 113:10 113:12 113:14 114:7 114:16 114:19 114:23 114:25 115:2 115:3 115:6 115:16 116:1 116:19 116:21 117:3 117:10 117:14 117:25 118:5 118:10 118:14 118:14 118:22 119:21 119:22 121:9 122:3 122:6 122:7 122:9 122:20 122:25 123:1 123:2 123:4 123:8 123:13 123:16 123:16 123:17 123:23 124:2 124:3 124:14 124:16 124:17 124:19 124:22 125:9 125:11 125:11 125:20 125:21 125:24 126:3 126:5 126:9 128:21 128:22 128:25 129:2 129:10 129:15 131:8 131:18 131:18 131:20 132:1 132:10 132:14 132:19 132:20 135:8 136:6 136:17 137:8 137:10 137:12 138:19 145:1 145:7 145:19 146:5 146:7 146:18 148:18 151:19 171:16 182:6 189:11

**claimant**(2) 94:21 129:3

**claimants**(7) 49:15 49:17 75:22 112:5 129:23 133:13 133:13

**claimed**(2) 45:7 45:8
**claiming**(1) 182:13
**claims**(224) 16:21 16:23 16:25 17:1 17:10 17:11 17:14 22:25 23:1 23:1 23:2 26:17 33:15 34:10 34:13 37:19 40:3 40:1 40:16 40:24 41:9 43:8 53:21 54:15 54:22 56:23 57:7 57:12 57:13 57:15 57:18 57:19 59:5 59:6 59:9 59:10 59:13 61:24 62:6 62:12 65:20 65:22 65:25 67:6 67:15 67:16 67:22 68:2 69:19 69:24 70:15 70:20 74:22 75:1 75:18 76:7 78:25 79:5 80:7 80:13 80:16 80:21 80:25 81:18 81:20 82:23 84:16 85:21 85:23 86:21 86:22 86:24 86:25 87:6 87:14 87:18 87:19 87:25 88:2 88:4 88:14 88:17 88:19 88:22 89:3 89:9 89:16 90:1 90:5 90:16 90:17 91:7 91:8 91:18 95:15 96:15 96:16 110:19 111:1 111:2 112:6 112:10 112:11 112:17 112:17 112:23 113:9 113:12 113:21 113:22 113:25 114:1 114:2 114:14 116:14 116:20 116:23 116:25 117:11 117:12 118:9 118:12 119:7 121:16 122:19 123:5 123:8 124:3 124:4 124:5 124:7 124:8 124:15 124:20 124:23 125:1 125:3 125:4 125:12 125:15 125:19 125:22 126:5 127:5 127:7 129:13 129:16 130:12 130:17 132:8 132:18 132:9 132:10 132:14 132:17 132:17 136:23 136:23 136:24 137:2 137:1 137:22 138:2 138:5 138:6 138:8 138:12 138:13 138:14 138:21 138:24 139:5 139:6 139:7 142:15 144:14 144:16 144:17 145:1 146:23 148:6 149:14 149:17 149:20 149:2 151:15 152:5 152:6 152:8 152:24 153:7 156:8 156:9 162:4 162:8 163:7 163:9 167:23 180:7 180:13 180:14 180:16 180:1 181:2 181:4 181:11 182:24 183:18 192:23 193:11 194:2 197:9 197:10

**claims"**(2) 163:3 172:7

**claire**(1) 9:21
**clarification**(1) 42:3
**clarified**(1) 109:8
**clarify**(1) 105:9
**clark**(1) 4:43

**class**(57) 18:4 19:7 19:10 33:24 45:9 63:17 94:22 110:19 111:11 112:16 113:8 114:4 123:14 124:15 124:17 124:20 129:1 132:20 155:9 155:9 155:10 155:19 155:23 156:8 156:9 157:11 157:18 158:2 159:1 159:12 159:23 161:7 161:14 161:14 164:23 162:19 162:20 162:21 163:8 164:3 164:7 164:8 168:17 168:18 169:10 171:15 171:17 171:22 172:6 174:16 175:11 179:4 181:23 181:24 186:16 187:15 192:10

**class."**(2) 162:8 163:10

**classes**(25) 44:16 44:24 45:7 47:7 47:11 48:20 135:10 155:20 160:9 162:6 163:16 167:8 167:8 167:10 167:12 167:21 168:1 168:4 168:25 171:11 171:12 171:21 189:8 190:12

**classification**(15) 109:22 110:22 112:3 112:15 112:20 113:24 114:5 114:10 114:2 115:14 115:16 115:19 124:11 124:13 125:11

**classified**(18) 110:18 111:9 112:7 113:12 115:2 115:3 116:20 117:1 123:5 124:2 124:4 124:8 124:9 124:10 124:16 124:23 125:15 128:22

**classifies**(1) 126:4
**classify**(1) 126:3
**clause**(4) 78:23 80:23 81:12 83:15
**clauses**(1) 83:14
**clawing**(2) 139:6 139:8
**clear**(26) 18:5 44:23 65:9 65:17 79:8 80:2 87:27 87:9 87:21 88:3 89:10 94:2 98:7 105:10 112:19 125:18 128:20 132:18 132:18 164:1 168:16 177:7 181:22 196:13 208:11

**clearer**(1) 130:13
**clearly**(6) 32:7 67:11 142:8 158:10 169:16 190:4

**cleary**(1) 2:6
**clerk**(4) 78:7 147:20 203:3 204:1
**client**(9) 61:16 87:3 87:8 87:12 88:22 89:3 107:11 125:9 153:16

**client's**(1) 87:10
**clients**(5) 94:10 95:8 122:24 150:6 181:15
**clock**(2) 90:21 197:19
**close**(4) 64:3 81:18 83:2 200:21
**closer**(2) 181:5 201:7
**closing**(6) 42:11 83:11 148:3 179:24 197:21 205:3

**closings**(3) 32:15 204:25 208:25
**co-plan**(1) 153:10
**co-proponent**(1) 61:19
**co-proponent's**(1) 108:25
**co-proponents**(1) 185:14
**cobb**(2) 3:27 5:40
**code**(22) 40:19 93:2 93:11 106:19 112:16 119:2 119:6 119:23 119:25 121:15 128:2 129:19 130:15 130:20 159:11 169:8 169:9 172:3 179:3 184:8 197:2 197:13

**code."**(1) 159:13
**cole**(1) 1:32
**colleague**(1) 39:6
**colleagues**(3) 85:25 107:5 107:22
**collect**(1) 145:5
**collecting**(1) 73:17
**collectively**(1) 209:25
**colleen**(1) 6:33
**colloquies**(1) 210:3
**colloquy**(13) 133:5 133:23 134:9 133:22 158:6 158:10 158:20 172:21 172:22 173:1 173:5 173:5 173:7

**colorable**(2) 118:14 122:9

**colorful**(1) 140:9
**combined**(1) 178:11
**come**(29) 24:8 24:23 60:23 61:13 62:16 85:15 85:19 92:7 92:22 95:4 103:6 107:16 109:2 141:9 141:21 146:20 147:9 155:22 161:1 164:9 168:23 169:2 177:25 179:8 182:19 185:5 192:14 201:7 206:4

**comes**(12) 23:17 25:8 28:1 111:22 111:24 133:14 137:5 166:12 173:25 176:9 181:20 194:3

**comfort**(2) 80:18 103:7
**comfortably**(2) 126:17 126:20
**coming**(11) 35:24 36:22 80:2 80:3 100:16 101:10 111:21 113:16 181:14 181:15 205:18

**commence**(1) 40:17
**commenced**(1) 100:20
**commencing**(1) 78:15
**comment**(6) 37:3 85:4 89:7 108:6 164:20 200:3

**commentary**(1) 200:5
**comments**(8) 38:9 53:22 59:17 83:25 87:17 106:17 165:25 207:24

**commercial**(1) 80:10
**committed**(2) 150:25 152:14
**committee**(66) 2:35 3:26 4:4 5:23 12:6 28:17 29:1 38:15 38:25 42:1 47:21 47:22 47:24 47:25 48:5 48:7 48:13 48:15 48:21 48:23 48:25 49:1 49:5 51:9 51:12 51:17 51:21 52:21 57:19 59:5 59:11 63:2 63:8 63:12 65:15 65:16 65:16 73:14 73:22 81:6 91:22 93:14 98:7 98:9 98:17 98:18 98:23 99:1 99:9 105:8 105:16 105:18 105:21 106:3 111:14 115:10 115:13 122:20 122:23 131:4 149:23 149:25 165:7 198:20 204:3

**committees**(1) 106:6
**common**(6) 49:19 55:16 57:4 84:12 101:19 209:16

**commonly**(1) 39:17
**communications**(4) 100:14 101:7 160:2 162:12

**companies**(2) 167:16 171:1
**company**(34) 1:8 7:4 8:25 9:8 9:24 11:4 24:6 24:7 27:14 27:16 27:18 27:25 49:11 55:21 72:25 113:12 115:3 127:21 128:5 128:10 128:22 129:2 129:11 129:13 129:1 130:13 131:12 136:18 137:25 138:11 142:7 142:16 184:24 191:3

**company's**(1) 101:5
**company's**(2) 182:19 193:23
**compare**(1) 24:14
**compelled**(2) 96:1 98:19
**compensation**(8) 68:15 69:8 102:23 102:25 139:24 139:25 140:3 140:6

**competing**(2) 155:6 209:8
**complain**(1) 168:10
**complained**(1) 190:24
**complaining**(2) 152:4 197:3
**complaint**(6) 59:11 67:5 122:21 122:22 142:5 191:7

**complaints**(2) 122:19 186:4
**complete**(3) 75:24 76:17 78:9
**completely**(10) 117:3 117:10 120:4 121:24 134:4 137:16 164:9 174:1 189:6 195:9

**completes**(1) 20:10
**completion**(1) 19:4
**complex**(2) 84:12 103:25
**compliance**(4) 160:5 171:20 178:8 197:13
**complies**(1) 197:14
**compliment**(2) 63:4 63:4

**comply**(1) 184:8
**component**(4) 149:19 159:20 170:5 201:2
**components**(1) 151:9
**compounded**(1) 107:1
**compromis**(5) 76:9 77:2 159:21 159:24 172:16

**compromised**(1) 76:8
**compulsion**(2) 95:12 96:19
**conaway**(1) 2:4
**concede**(1) 181:6
**conceded**(1) 198:5
**conceivably**(3) 95:17 195:23 205:1
**concept**(2) 50:23 84:10
**concern**(5) 26:2 31:24 86:15 103:20 143:1
**concerned**(4) 30:19 139:23 200:12 209:7
**concerning**(5) 12:21 32:25 34:17 55:23 83:17

**concerns**(7) 25:5 31:5 31:17 32:4 32:6 78:23 173:8

**concession**(1) 186:22
**conclude**(5) 13:3 77:23 82:1 90:6 151:2
**concluded**(7) 47:2 66:20 69:22 121:12 192:11 198:16 198:23

**concludes**(5) 34:25 66:18 83:13 208:23 211:19

**conclusion**(5) 67:7 69:22 144:10 151:12 176:21

**conclusions**(9) 144:14 206:22 206:24 207:4 207:8 208:2 208:3 208:11 208:12

**conclusive**(1) 134:9
**concord**(1) 31:4
**conditions**(1) 102:17
**condoned**(1) 52:8
**conduct**(3) 81:13 149:12 149:15
**conducted**(1) 192:22
**conducting**(1) 157:19
**confer**(1) 202:10
**conference**(6) 13:22 201:24 203:10 204:18 211:9 211:12

**conferences**(1) 203:12
**confess**(1) 72:12
**confidence**(1) 19:5
**confident**(1) 209:20
**confine**(1) 53:22
**confines**(1) 50:6
**confirm**(8) 17:20 108:10 116:16 119:2 151:5 170:19 170:25 171:24

**confirmable**(1) 108:8
**confirmation**(37) 14:16 16:12 20:5 30:22 33:20 45:25 67:7 82:20 84:19 84:25 90:12 95:1 100:1 100:11 101:19 103:12 104:14 106:23 108:7 112:24 126:15 131:22 134:23 160:16 160:16 160:19 161:20 164:22 164:4 168:6 168:6 172:5 172:13 172:14 176:11 197:12 210:4

**confirmation-relate**(1) 199:18
**confirmations**(1) 110:7 117:5
**confirmed**(14) 44:8 44:8 50:15 56:14 84:18 89:6 125:5 185:24 186:19 190:10 191:4 192:11 195:23 201:4

**confirming**(1) 71:4
**confirms**(1) 156:17
**conflict**(1) 76:15
**conflicting**(1) 107:16
**conform**(2) 40:22 127:6
**conforms**(1) 89:1
**confounding**(1) 199:8
**confront**(5) 61:9 143:19 144:1 144:2 145:4

| Word | Page:Line |
|---|---|
| **confronted**(1) 134:24 | |
| **confusing**(1) 47:23 | |
| **congoleum**(1) 101:6 | |
| **congress**(1) 169:16 | |
| **conlan**(6) 1:24 62:22 62:23 64:8 64:14 64:18 | |
| **connect**(1) 96:22 | |
| **connection**(28) 20:19 30:5 53:1 53:5 63:3 66:12 71:13 71:15 76:6 76:12 77:7 79:13 79:16 81:1 81:13 81:25 83:10 110:17 112:12 117:12 118:20 119:4 119:10 120:3 123:22 123:25 185:12 208:17 | |
| **connolly**(1) 211:1 | |
| **connoly**(1) 5:5 | |
| **consensual**(1) 137:14 | |
| **consensually**(1) 199:22 | |
| **consent**(3) 63:11 183:13 198:7 | |
| **consented**(1) 148:21 | |
| **consenting**(1) 44:18 | |
| **consequence**(3) 87:7 117:17 180:11 | |
| **consequences**(6) 152:21 163:13 193:9 195:19 198:11 198:12 | |
| **consequences.'**(1) 194:23 | |
| **consider**(13) 13:18 18:19 18:24 18:25 20:7 66:10 117:2 121:11 122:12 122:13 165:23 165:23 211:4 | |
| **considerable**(1) 46:2 | |
| **consideration**(74) 14:20 14:21 15:7 15:13 16:7 16:9 17:24 17:24 18:1 18:1 18:16 21:13 26:19 27:20 29:20 29:22 32:20 32:21 35:8 35:24 36:22 38:1 38:20 39:13 39:14 41:11 57:8 57:12 57:14 58:25 59:1 59:25 71:21 75:12 76:10 77:5 81:22 82:15 83:3 88:21 92:2 111:18 111:23 111:24 115:6 115:16 127:19 127:20 128:7 128:8 128:9 128:13 129:25 130:10 130:17 130:1 130:18 132:13 137:12 138:17 138:20 145:18 146:22 148:13 148:14 150:16 150:19 153:5 153:6 187:4 187:24 190:24 191:6 191:8 | |
| **considered**(9) 18:3 18:15 122:7 122:11 157:10 157:20 180:1 197:21 200:10 | |
| **considering**(2) 16:11 46:8 | |
| **consist**(1) 105:21 | |
| **consistent**(7) 42:17 65:13 133:19 153:13 169:7 174:14 177:3 | |
| **consistently**(1) 70:23 | |
| **consisting**(3) 42:6 49:10 49:15 130:18 187:5 187:6 | |
| **consolidated**(3) 175:19 176:23 183:24 | |
| **consolidation**(6) 158:16 159:17 159:20 174:17 176:20 177:5 | |
| **constituencies**(1) 186:17 | |
| **constitute**(1) 127:25 | |
| **constituted**(1) 93:10 | |
| **construct**(4) 50:19 57:1 140:5 194:19 | |
| **constructed**(2) 95:17 127:17 | |
| **constructive**(12) 16:21 16:23 17:10 40:13 40:16 40:23 53:25 91:20 92:5 92:10 151:24 152:1 | |
| **construed**(1) 71:5 | |
| **consultation**(1) 196:5 | |
| **consulted**(3) 196:4 196:7 206:22 | |
| **consume**(1) 206:18 | |
| **contacted**(2) 99:14 105:24 | |
| **contain**(1) 193:2 | |
| **contained**(9) 12:17 16:14 20:20 45:1 65:22 84:6 128:14 129:5 163:6 | |
| **contemplated**(2) 15:2 40:10 | |

| Word | Page:Line |
|---|---|
| **contemplation**(1) 106:6 | |
| **contend**(2) 15:10 16:2 | |
| **content**(2) 33:18 136:19 | |
| **contentious**(4) 40:14 51:6 51:7 51:7 | |
| **contested**(4) 51:11 137:17 206:17 206:17 | |
| **context**(7) 69:17 94:20 95:10 97:3 146:10 170:15 173:16 | |
| **continental**(1) 43:4 | |
| **continue**(10) 13:10 15:16 68:14 71:20 75:16 75:17 203:1 205:8 205:11 205:12 | |
| **continued**(13) 2:2 3:2 4:2 4:6 5:2 6:2 7:2 8:2 9:2 10:2 11:2 75:13 130:3 | |
| **continuing**(3) 41:7 130:2 130:4 | |
| **contract**(2) 137:8 137:9 | |
| **contracts**(1) 127:9 | |
| **contractual**(8) 29:16 42:23 43:3 56:19 101:2 123:10 123:13 127:13 | |
| **contractually**(2) 110:2 131:10 | |
| **contrarian**(2) 11:22 11:23 | |
| **contrary**(1) 153:19 | |
| **contrast**(4) 117:13 150:10 171:10 194:10 | |
| **contravention**(1) 131:12 | |
| **contribution**(23) 39:22 43:7 43:10 43:12 43:16 43:20 47:5 48:19 48:21 54:24 55:1 56:18 58:6 60:3 60:12 87:5 87:23 88:1 88:10 89:9 89:13 89:21 90:15 | |
| **control**(2) 16:25 32:6 | |
| **controlled**(1) 91:21 | |
| **controversial**(1) 195:5 | |
| **controversy**(1) 103:5 | |
| **convenience**(2) 182:9 186:16 | |
| **convenience'**(1) 182:6 | |
| **convenient**(1) 185:21 | |
| **conversation**(2) 106:4 106:25 | |
| **conversations**(1) 201:22 | |
| **convert**(1) 118:24 | |
| **converting**(1) 64:2 | |
| **conveyance**(26) 16:21 16:23 17:4 17:10 17:12 40:13 40:16 40:23 41:9 55:22 89:14 89:21 91:20 92:5 92:10 114:14 114:16 114:21 118:15 144:14 151:19 151:21 152:2 152:2 152:5 152:6 | |
| **conveyances**(1) 120:17 | |
| **convince**(1) 56:7 | |
| **convinced**(1) 56:16 | |
| **cooperate**(29) 29:7 29:15 33:2 47:16 101:3 101:12 | |
| **cooperation**(3) 29:5 29:10 32:25 | |
| **cooperative**(1) 107:9 | |
| **cooperstown**(2) 11:7 11:8 | |
| **copyright**(1) 137:9 | |
| **coram**(1) 43:4 | |
| **core**(1) 87:13 | |
| **corning**(8) 176:1 176:4 176:9 176:13 176:17 177:4 184:7 184:15 | |
| **corp**(1) 60:18 | |
| **corporate**(6) 68:9 176:8 176:9 176:13 184:5 193:17 | |
| **corporation**(1) 162:12 | |
| **correct**(8) 52:25 58:3 76:23 105:11 127:16 161:18 206:11 212:3 | |
| **corrected**(1) 48:9 | |
| **correction**(2) 85:20 86:18 | |
| **corrections**(2) 103:16 184:21 | |
| **correctly**(1) 88:18 | |
| **cost**(7) 73:16 73:22 182:6 185:20 185:21 186:12 202:20 | |

| Word | Page:Line |
|---|---|
| **could**(45) 25:9 33:9 39:2 59:19 71:2 75:6 77:22 93:4 99:1 99:4 99:9 99:9 99:10 102:11 103:15 107:16 109:6 118:6 118:14 119:22 120:25 121:5 124:24 130:13 137:1 142:14 149:3 153:11 164:3 164:4 168:8 169:15 169:18 172:13 172:17 175:13 181:1 193:18 195:23 199:21 201:23 203:19 205:1 205:13 207:11 | |
| **couldn't**(3) 48:15 48:16 56:15 | |
| **couldn't**(1) 190:7 | |
| **counsel**(17) 12:5 36:25 56:11 60:16 65:4 89:8 97:9 106:13 108:25 109:14 109:20 126:23 158:7 158:20 174:4 205:22 210:12 | |
| **count**(3) 122:21 169:9 174:19 | |
| **counted**(1) 122:5 | |
| **countenance**(1) 115:18 | |
| **countenanced**(1) 93:1 | |
| **counterbalanced**(1) 188:23 | |
| **counterparties**(1) 117:21 | |
| **counterpoint**(1) 62:24 | |
| **country**(1) 56:15 | |
| **couple**(18) 38:19 39:5 45:20 50:9 65:6 67:24 73:3 82:20 85:2 85:11 94:5 128:23 131:15 132:11 184:21 203:17 204:24 207:23 | |
| **coupled**(2) 50:13 111:17 | |
| **course**(20) 12:24 15:18 17:17 25:24 28:12 62:6 68:13 89:24 106:12 120:23 129:23 136:17 146:11 147:13 170:21 171:8 172:1 194:13 202:2 208:3 | |

| Word | Page:Line |
|---|---|
| **court**(301) 1:1 1:1 11:9 12:2 12:12 12:13 13:2 13:8 13:14 13:18 14:6 14:11 14:18 14:25 15:3 15:14 16:11 16:14 16:15 16:19 17:6 17:19 17:23 18:17 18:18 18:21 18:22 18:22 18:24 19:7 19:8 19:14 20:12 20:14 20:24 21:18 22:8 22:19 22:25 31:1 31:11 33:3 33:13 34:4 34:17 34:19 34:23 34:25 35:3 37:15 41:1 41:4 42:17 46:13 51:18 53:9 53:24 54:4 54:7 54:11 56:1 57:3 57:11 58:4 60:19 61:25 62:14 62:20 64:5 64:11 64:20 64:21 64:24 65:1 65:14 66:2 66:4 66:6 66:16 66:19 66:19 67:10 67:18 68:3 68:18 68:23 69:19 69:20 69:20 70:19 71:5 71:7 71:22 72:7 72:8 73:1 73:10 73:24 74:7 74:10 74:14 76:3 76:4 76:22 76:25 77:12 77:14 77:16 77:22 77:24 78:4 78:5 78:16 78:18 79:3 81:15 81:15 81:23 82:1 82:3 82:5 82:22 82:24 83:9 83:12 83:15 83:19 84:20 85:16 85:18 85:18 86:3 86:8 86:11 86:16 88:25 89:22 90:19 92:1 93:7 93:12 95:18 95:25 96:21 97:6 103:2 103:6 103:23 104:10 104:13 104:17 104:20 104:24 105:2 105:6 107:6 107:14 108:5 108:9 109:16 115:17 117:18 120:8 120:10 121:13 124:15 125:7 126:11 131:2 133:25 134:1 134:6 134:21 135:13 136:8 136:10 137:17 140:13 140:16 140:20 141:6 141:13 141:20 142:8 143:8 143:12 144:4 146:9 146:21 147:17 147:18 148:8 151:23 153:2 153:21 154:2 154:8 154:21 154:24 155:2 156:3 156:15 156:16 157:19 157:24 158:9 158:19 158:24 161:6 161:10 161:12 161:16 162:1 162:9 162:16 162:22 164:5 164:19 164:20 165:2 165:21 165:23 166:1 166:12 166:15 166:17 166:20 166:25 167:4 170:6 170:13 170:23 170:23 172:25 173:5 173:22 173:25 173:25 175:4 175:4 176:3 176:4 176:20 178:8 178:20 179:13 179:18 180:3 184:18 186:21 190:16 191:15 191:17 191:24 192:8 192:14 195:20 195:25 196:10 196:11 198:25 199:1 199:5 199:24 200:1 200:23 200:25 201:24 202:1 202:8 202:25 203:10 203:11 203:20 203:22 204:14 204:15 204:19 204:23 205:2 205:3 205:7 205:15 205:17 205:21 205:24 206:5 206:6 206:12 206:13 206:18 206:19 206:25 207:6 207:9 207:10 207:13 207:23 208:12 208:16 208:21 | |
| **court**(17) 208:24 209:1 209:2 209:6 209:14 209:22 210:11 210:14 210:16 210:18 210:20 210:22 211:8 211:14 211:16 211:18 211:19 | |
| **court's**(13) 12:8 14:9 18:12 18:16 19:22 54:5 60:4 68:25 71:24 82:14 109:12 145:13 148:13 | |
| **courtroom**(4) 1:10 13:19 63:6 64:9 | |
| **courts**(20) 39:15 56:15 56:17 66:5 66:7 66:9 70:22 86:9 86:15 134:12 134:23 139:23 145:16 146:13 156:5 160:17 169:5 170:17 207:24 208:1 | |
| **court's**(10) 156:17 202:19 204:7 204:20 205:5 205:12 206:23 209:13 209:17 210:16 | |
| **cover**(3) 85:12 86:20 87:4 | |
| **covered**(1) 86:21 | |
| **covers**(1) 167:7 | |
| **crack**(1) 165:15 | |
| **cram-down**(4) 169:1 170:17 170:19 183:15 | |
| **created**(5) 32:17 65:8 92:15 93:8 192:20 | |
| **creates**(1) 65:17 | |
| **creating**(1) 171:6 193:7 | |
| **credible**(1) 120:25 | |
| **credibly**(1) 118:18 | |

| Word | Page:Line |
| --- | --- |
| **credit**(44) 9:7 21:17 24:2 31:8 116:22 117:4 117:6 117:8 117:11 117:11 118:3 118:11 118:17 120:21 121:3 121:14 122:4 122:18 123:4 123:14 123:18 123:25 124:3 124:4 124:23 125:11 125:19 126:5 150:11 150:16 151:9 151:10 180:7 180:11 180:12 180:24 181:15 181:20 182:25 183:14 187: 192:23 198:1 198:3 | |
| **creditor**(19) 41:16 54:19 91:21 92:7 92:14 92:17 92:18 92:22 92:23 105:25 115:21 135:21 137:13 142:5 155:21 161:15 164:8 169:5 185:10 | |
| **creditor's**(1) 85:24 | |
| **creditors**(144) 3:27 4:5 5:24 12:6 16:25 19:22 20:1 20:2 22:10 22:11 22:13 22:21 23:7 27:1 27:23 28:10 29:7 38:15 38:25 40:1 40:3 41:13 41:17 42:1 43:14 44:14 44:16 44:19 45:9 45:15 45:10 47:8 47:12 47:21 48:7 51:9 51:17 51:21 54:2 54:3 54:14 55:8 55:12 57:9 58:23 60:8 60:25 62:13 65:11 65:16 74:23 81:6 87:15 87:15 89:4 91:2 91:2 91:16 91:10 91:17 91:21 91:25 92:2 93:15 94:8 95:3 95:4 95:14 96:5 96:9 96:13 96:16 96:17 97:1 97:18 97:20 98:7 98:9 98:23 99:9 100:2 100:21 105:8 105:15 105:16 105:18 105:20 111:4 111:25 115:7 121:7 125:25 127:21 128:5 128:7 128:10 130:2 130:13 131:4 131:12 135:1 136:5 137:13 139:17 139:19 140:2 140:23 140:23 141:10 143:2 145:21 145:2 147:12 150:4 150:15 161:15 169:6 171:6 179:15 180:21 181:9 181:17 181:20 181:2 181:25 182:17 183:9 183:25 184:13 184:23 185:1 185:22 186:7 191:13 193:4 193:18 194:7 194:15 195:15 197:5 201:2 201:15 201:17 204:4 | |
| **creditors'**(1) 157:5 | |
| **critical**(9) 43:11 63:9 80:20 101:7 158:1 158:3 160:25 161:1 170:4 | |
| **critically**(1) 184:11 | |
| **criticize**(1) 207:24 | |
| **criticized**(4) 107:7 164:13 170:11 170:13 | |
| **cross**(5) 56:20 60:2 72:24 133:9 133:18 | |
| **crystal**(3) 89:10 112:19 132:18 | |
| **crystallized**(1) 84:4 | |
| **ctc**(2) 100:13 101:6 | |
| **cumbersome**(1) 203:13 | |
| **cumulative**(1) 127:24 | |
| **curious**(1) 38:24 | |
| **currency**(1) 25:17 | |
| **current**(6) 71:9 75:8 75:11 79:3 111:7 194:10 | |
| **currently**(4) 93:10 113:8 125:1 127:17 | |
| **cushion**(1) 141:17 | |
| **customer**(1) 173:24 | |
| **cut**(1) 58:7 | |
| **cutler**(1) 9:12 | |
| **cuts**(1) 67:19 | |
| **d's**(1) 138:13 | |
| **damages**(1) 123:11 | |
| **damien**(1) 3:6 | |
| **dana**(1) 94:23 | |
| **daniel**(6) 3:28 4:27 36:24 97:8 109:19 126:22 | |
| **data**(1) 1:41 | |
| **date**(14) 18:24 22:7 24:14 24:21 25:1 26:11 49:13 71:11 99:13 110:14 154:8 196:17 198:14 212:9 | |
| **dates**(1) 204:24 | |
| **dave**(1) 7:9 | |

| Word | Page:Line |
| --- | --- |
| **david**(14) 2:43 3:35 4:21 4:28 4:42 10:10 11:13 53:12 74:1 93:13 105:7 131:3 135:14 165:6 | |
| **davis**(5) 3:4 6:18 7:22 83:16 83:22 24:11 84:7 86:20 88:24 119:17 119:20 150:17 191:3 193:22 194:2 200:14 202:18 202:19 205:23 209:3 | |
| **day**(20) 2:36 19:19 22:19 23:5 23:13 | |
| **days**(3) 85:2 118:13 185:18 | |
| **dbtca**(1) 4:19 | |
| **dcl**(189) 12:15 13:12 14:13 14:15 14:19 14:23 15:2 15:2 15:15 16:4 16:12 16:15 16:17 17:3 17:7 17:20 18:7 18:16 19:23 20:22 21:7 21:8 21:11 22:4 22:17 23:19 24:1 25:5 25:13 27:7 27:11 27:22 28:13 35:17 36:6 36:10 37:2 37:5 37:17 39:11 40:8 40:9 40:21 41:14 43:15 44:11 44:17 44:22 44:25 45:13 45:22 46:3 46:11 46:22 47:24 48:6 49:22 51:24 52:3 52:11 53:1 53:2 53:19 54:16 56:14 57:13 59:24 64:1 70:16 76:6 77:3 79:3 81:9 82:4 84:24 87:21 89:1 89:1 90:8 90:24 91:5 92:15 93:3 93:10 93:15 97:23 98:1 98:8 98:20 99:7 100:2 100:25 103:13 105:8 105:13 105:20 107:2 111:7 111:8 112:24 113:14 113:22 115:4 115:12 116:5 116:7 116:8 124:11 124:17 126:2 127:1 127:3 127:16 127:17 127:22 128:2 129:5 129:20 129:22 129:24 130:14 130:25 131:4 136:3 136:15 139:3 145:6 147:25 149:16 149:21 154:19 155:12 155:17 155:11 156:12 156:25 157:17 157:20 158:5 158:7 159:14 160:1 160:12 160:22 166:9 167:7 167:7 167:8 167:13 167:17 167:19 167:22 168:7 170:2 171:3 171:11 179:2 179:13 179:16 183:9 183:13 185:1 186:7 189:15 192:13 198:2 198:10 198:24 200:6 201:10 201:16 201:2 201:23 209:20 210:15 | |
| **dcl's**(3) 37:9 42:4 112:1 | |
| **deal**(19) 58:13 59:8 59:9 60:11 94:17 104:12 107:19 107:25 108:14 108:15 108:16 109:4 109:11 134:1 152:21 178:1 178:14 206:2 206:18 | |
| **dealing**(3) 97:12 134:10 204:8 | |
| **deals**(2) 90:24 188:14 | |
| **dealt**(2) 94:18 104:12 | |
| **dearborn**(1) 1:28 | |
| **debenture**(1) 10:4 | |
| **debt**(15) 14:22 23:14 24:2 24:5 25:20 34:10 34:11 34:11 55:2 121:19 122:5 136:16 138:8 141:17 191:15 | |
| **debtor**(32) 39:19 62:23 63:2 63:10 63:14 66:14 66:15 66:19 101:12 119:20 142:6 142:7 142:14 155:10 157:18 158:3 159:22 160:10 161:8 161:19 173:16 173:17 175:1 177:9 177:9 177:20 178:10 179:4 179:11 181:7 183:23 185:20 | |
| **debtor's**(1) 66:16 | |
| **debtor-by-debtor**(3) 164:11 172:1 178:10 | |

| Word | Page:Line |
| --- | --- |
| **debtors**(107) 1:12 1:23 15:1 28:16 28:25 31:20 32:3 32:6 38:15 38:24 40:17 42:1 42:21 43:1 43:9 43:10 44:6 44:9 46:21 46:23 47:9 47:15 48:11 48:17 49:12 50:1 50:7 51:9 51:11 51:17 51:21 52:21 60:9 60:10 60:17 65:20 66:18 66:25 68:1 68:12 69:7 69:10 69:23 70:12 71:9 72:11 72:14 73:7 73:22 79:7 80:20 82:8 82:16 89:8 89:11 100:20 101:3 102:1 102:11 110:18 110:21 111:3 111:15 112:1 112:7 112:13 115:15 124:5 130:4 130:5 136:20 148:25 155:5 155:18 155:20 157:12 157:14 159:2 159:23 159:25 160:9 163:22 164:2 164:8 167:7 167:15 167:20 168:15 170:9 170:17 174:16 175:14 177:11 178:11 178:14 180: 180:10 180:20 181:12 183:10 183:24 185:8 185:13 186:9 198:9 200:21 210:6 | |
| **debtors'**(2) 158:25 184:5 | |
| **debtor's**(3) 184:2 205:22 210:12 | |
| **decide**(7) 92:14 146:14 147:8 150:18 154:2 170:9 200:17 | |
| **decided**(3) 28:22 163:15 185:11 | |
| **decides**(1) 152:20 | |
| **decision**(17) 37:18 41:23 43:4 45:25 46:3 46:7 70:19 117:18 142:3 160:20 173:6 176:1 176:4 184:8 200:6 203:1 207:25 | |
| **decisional**(1) 178:7 | |
| **decisions**(4) 60:17 65:14 160:12 160:15 | |
| **decline**(2) 39:1 189:17 | |
| **declined**(2) 38:23 70:23 | |
| **deemed**(7) 62:5 127:11 161:15 162:6 162:7 163:9 164:4 | |
| **deems**(1) 183:24 | |
| **deeper**(1) 97:5 | |
| **default**(3) 168:25 170:18 170:21 | |
| **defect**(1) 101:14 | |
| **defective**(1) 190:11 | |
| **defend**(1) 108:14 | |
| **defendant**(3) 58:17 149:7 152:7 | |
| **defendants**(4) 55:3 58:5 116:12 144:17 | |
| **defending**(1) 60:2 | |
| **defense**(5) 115:15 143:17 143:20 143:24 147:1 | |
| **defenses**(7) 112:4 113:20 113:25 114:23 122:11 122:12 141:19 | |
| **defer**(3) 83:8 197:20 205:19 | |
| **deficiencies**(1) 103:18 | |
| **deficiency**(1) 137:14 | |
| **define**(1) 54:18 | |
| **defined**(2) 52:20 182:19 | |
| **definition**(10) 48:4 50:6 50:25 79:4 79:4 86:25 98:25 114:20 118:20 128:21 | |
| **definitions**(4) 48:3 48:3 48:5 79:2 | |
| **degree**(3) 19:5 32:5 32:6 | |
| **delaware**(8) 1:2 1:12 1:35 4:15 4:37 12:1 60:19 100:17 | |
| **delay**(1) 121:6 | |
| **delicto**(6) 143:14 143:17 143:25 145:2 146:25 149:6 | |
| **delivered**(1) 125:1 | |
| **delivering**(1) 123:7 | |
| **delve**(1) 139:20 | |
| **demand**(1) 147:4 | |
| **demanded**(1) 136:19 | |
| **demanding**(2) 72:20 146:2 | |
| **demerits**(1) 116:14 | |
| **demo**(1) 6:30 | |
| **demonstrate**(1) 91:3 | |
| **demonstrates**(1) 101:24 | |

| Word | Page:Line |
| --- | --- |
| **demonstration**(2) 42:24 43:24 | |
| **demonstrativ**(4) 20:18 20:20 24:13 26:9 | |
| **denied**(2) 137:23 182:25 | |
| **dennis**(1) 6:37 | |
| **deny**(1) 182:2 | |
| **denying**(4) 45:25 48:25 49:4 49:4 | |
| **depart**(1) 32:10 | |
| **depend**(4) 82:14 83:1 96:25 137:22 | |
| **dependent**(1) 195:9 | |
| **depending**(5) 23:8 25:7 26:14 154:25 | |
| **deplete**(1) 39:20 | |
| **deposing**(1) 72:19 | |
| **deposition**(1) 205:9 | |
| **depress**(1) 188:15 | |
| **derail**(1) 169:5 | |
| **derivatives**(1) 110:6 | |
| **derogation**(1) 131:13 | |
| **describe**(7) 12:11 12:19 41:6 67:10 73:15 95:20 117:3 | |
| **described**(3) 14:5 17:22 32:24 | |
| **describes**(2) 18:11 94:11 | |
| **describing**(2) 12:15 88:18 | |
| **description**(2) 20:10 87:16 89:18 | |
| **designations**(1) 205:9 | |
| **designed**(1) 192:21 | |
| **desire**(2) 19:25 25:21 | |
| **despite**(5) 27:14 38:3 39:10 125:13 168:17 | |
| **destroying**(1) 189:25 | |
| **detail**(1) 207:9 | |
| **detailed**(1) 62:25 | |
| **details**(1) 49:9 | |
| **detain**(1) 107:6 | |
| **determination**(3) 102:18 113:19 149:13 | |
| **determinations**(1) 184:12 | |
| **determine**(8) 27:17 27:18 108:7 129:7 130:16 159:7 191:21 201:19 | |
| **determined**(10) 22:19 51:16 130:9 130:14 145:10 145:11 154:7 156:10 185:14 191:24 | |
| **determines**(2) 22:25 191:2 | |
| **determining**(3) 17:19 56:17 144:4 | |
| **deterrence**(3) 139:24 140:8 141:3 | |
| **deutsch**(6) 3:38 5:31 199:5 199:6 199:7 199:10 | |
| **deutsche**(3) 8:20 10:41 99:12 | |
| **dev**(5) 21:16 22:20 23:13 24:13 24:25 | |
| **develop**(1) 207:5 | |
| **developing**(1) 208:6 | |
| **devoted**(1) 67:21 | |
| **devoting**(1) 75:11 | |
| **dewey**(2) 2:13 115:24 | |
| **dial**(1) 110:20 | |
| **diametrically**(1) 174:1 | |
| **diamond**(1) 8:17 | |
| **diatribe**(1) 123:1 | |
| **diaz**(1) 1:41 | |
| **dictates**(1) 146:19 | |
| **did**(64) 21:2 21:20 21:23 26:1 28:15 28:17 28:25 30:7 38:13 41:1 47:12 48:20 51:14 52:11 57:20 58:24 59:21 81:24 87:24 88:16 88:18 93:20 93:23 93:24 110:5 118:19 121:23 121:24 123:21 123:24 124:1 131:14 132:25 133:1 133:6 135:7 155:18 158:18 162:1 162:19 163:14 164:4 164:7 164:23 165:12 172:21 173:17 176:1 176:16 178:16 179:3 179:16 184:24 185:11 187:8 188:6 188:17 189:2 190:8 190:20 191:9 192:5 192:15 199:1 209:25 | |
| **didn't**(23) 40:9 41:3 41:15 59:8 61:16 69:5 69:25 86:3 92:6 93:20 93:21 95:2 95:7 96:22 108:16 116:2 122:12 122:13 125:10 125:10 134:1 140:21 140:25 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| didn't(14) 153:17 157:25 162:1 162:21 163:24 164:15 169:18 177:12 182:2 189:7 189:7 189:8 189:19 190:24 | | discussion(6) 78:10 78:13 84:18 158:3 167:11 204:5 | | dog(2) 55:17 58:19 | | dynamics(1) 107:17 |  |
| | | | | dogged(1) 104:8 | | e-6(1) 121:19 | |
| | | discussions(3) 12:7 14:1 14:4 | | doing(9) 26:8 43:18 71:3 110:23 115:4 148:1 151:11 170:18 185:12 | | each(21) 12:22 14:8 62:24 72:20 94:21 128:9 154:24 155:9 156:12 157:4 157:12 157:18 158:3 159:1 159:22 161:7 177:20 179:7 180:13 183:22 184:13 185:19 194:25 204:11 | |
| differ(1) 163:21 | | disgorgement(4) 125:4 138:21 138:22 | | dollar(27) 16:6 16:6 27:19 27:19 27:20 29:24 29:24 29:24 35:23 137:5 138:7 139:12 146:1 150:12 181:8 181:19 182:22 182:24 182:24 183:11 185:24 189:18 191: 191:2 191:22 191:22 191:23 | | |  |
| difference(2) 57:20 58:9 | | disincentives(1) 96:1 | | | | | |
| differences(3) 57:5 85:17 113:1 | | disks(1) 208:7 | | | | eager(1) 34:12 | |
| different(25) 15:7 20:8 27:22 30:12 32:19 56:24 76:2 86:7 90:4 103:24 114:4 114:5 116:5 117:4 117:6 117:10 118:9 118:11 137:16 155:24 171:9 171:18 174:22 200:1 201:17 | | dismiss(1) 153:14 | | | | earlier(12) 76:21 78:13 82:13 92:2 122:15 135:18 151:20 161:8 184:22 191:22 192:2 199:14 | |
| | | dismissed(1) 142:4 | | dollars(13) 50:10 50:11 61:8 73:4 73:5 75:5 75:5 80:8 81:2 138:4 183:17 194:4 202:20 | | | |
| | | disparagement(1) 47:14 | | | | early(1) 201:24 | |
| | | disparate(4) 134:25 187:14 192:2 192:7 | | | | earning(1) 68:20 | |
| | | disparity(2) 190:5 191:25 | | dollars'(1) 193:21 | | easiest(1) 70:11 | |
| differential(1) 114:10 | | display(1) 34:15 | | don(1) 3:7 | | easily(1) 170:9 | |
| difficult(10) 43:14 60:23 68:12 69:11 75:13 108:13 202:3 203:2 204:21 210:19 | | dispositive(3) 122:17 135:11 154:22 | | don't(70) 13:19 27:25 30:11 30:20 30:21 31:1 39:3 40:19 42:12 42:24 44:11 44:20 45:1 45:2 45:18 47:14 47:17 49:23 50:8 50:9 51:13 52:4 52:14 56:2 57:16 58:21 59:22 60:24 62:16 64:11 72:4 72:5 72:12 72:15 74:19 78:12 78:25 80:21 81:23 82:11 84:23 84:24 84:25 85:4 92:9 95:9 95:16 96:3 98:14 100:5 102:13 102:20 103:23 105:4 106:18 106:22 113:7 113:10 114:10 115:17 121:10 134:19 136:10 141:23 143:19 146:4 146:11 147:6 151:4 151:4 | | east(3) 2:38 10:33 10:33 | |
| | | disproportionate(2) 150:14 189:1 | | | | eastern(1) 211:14 | |
| difficulty(1) 203:12 | | dispute(14) 21:23 24:24 84:8 85:7 85:9 109:25 133:12 166:11 169:24 169:25 181:13 191:17 192:24 193:11 | | | | easy(5) 121:9 128:3 128:13 209:23 209:24 | |
| dilemma(1) 63:19 | | | | | | economic(1) 95:21 108:15 144:9 | |
| diligence(1) 67:23 | | | | | | ecro(1) 1:39 | |
| dime(1) 95:9 | | | | | | edgar(1) 10:14 | |
| diminish(1) 127:11 | | disputed(5) 193:12 195:11 196:21 197:8 197:9 | | | | edges(1) 104:3 | |
| dire(1) 193:23 | | | | | | eerily(1) 121:24 | |
| direct(8) 24:12 26:9 43:25 87:25 111:24 115:18 133:9 147:24 | | disputing(1) 31:12 | | | | effect(16) 17:24 18:15 31:15 51:8 70:3 71:4 75:15 89:1 125:6 127:24 132:24 133:10 135:23 163:17 170:16 182:11 | |
| | | disregard(1) 86:16 | | | | | |
| | | dissatisfaction(1) 94:25 | | | | | |
| directed(1) 130:24 | | dissenting(2) 187:15 192:10 | | donated(1) 96:16 | | | |
| direction(1) 51:8 | | dissimilar(1) 112:6 | | done(21) 37:13 51:22 82:8 93:21 100:9 103:9 109:9 118:25 122:8 132:5 132:6 165:16 165:17 170:14 172:9 179:20 186:22 190:7 199:25 207:18 208:2 | | effective(10) 22:7 24:14 24:21 25:1 26:11 39:24 43:23 49:13 71:11 189:24 | |
| directly(4) 25:2 130:24 181:15 197:4 | | distance(1) 145:25 | | | | | |
| directors(21) 2:36 5:5 29:14 42:22 43:18 46:20 46:24 47:6 47:9 47:15 48:10 52:22 56:12 66:24 67:12 67:17 69:24 80:16 86:14 136:23 211:2 | | distinction(3) 123:15 170:12 183:12 | | | | effectively(3) 75:16 118:24 131:6 | |
| | | distinguish(3) 159:14 166:8 174:4 | | | | effects(1) 190:2 | |
| | | distributable(12) 15:5 21:12 21:15 22:6 22:16 24:17 24:20 182:18 182:20 183:2 186:3 186:4 | | don't(40) 152:17 152:21 153:4 153:15 156:23 163:19 163:25 164:10 164:14 165:17 166:11 167:13 168:10 168:12 169:22 169:23 169:25 173:19 174:2 176:5 176:6 177:3 177:6 178:4 188:9 188:21 189:10 189:14 192:7 196:8 200:8 200:18 201:1 201:20 202:14 202:17 202:21 203:2 206:11 207:13 | | efficiency(1) 73:17 | |
| dirt(1) 173:3 | | distribute(3) 24:10 183:4 194:3 | | | | effort(2) 37:13 91:3 | |
| disagree(8) 15:15 35:16 35:18 56:16 61:18 63:15 63:17 105:4 | | distributed(16) 22:7 24:14 24:21 25:1 25:9 25:22 26:10 38:18 128:11 182:23 182:23 183:2 188:16 193:15 193:18 194:1 | | | | efforts(4) 44:9 47:8 47:19 202:15 | |
| | | | | | | egi(1) 91:7 | |
| disagrees(1) 161:6 | | | | | | egi-trb(12) 4:41 9:4 127:10 127:24 128:10 128:15 129:2 131:10 131:19 132:2 132:5 132:8 | |
| disappear(1) 194:8 | | distributing(3) 21:16 25:15 38:21 | | | | | |
| disastrous(1) 99:4 | | distribution(29) 21:14 22:12 23:15 26:4 26:5 26:16 26:22 29:8 32:2 127:20 180:18 180:20 181:1 181:18 187:6 187:20 190:21 192:6 193:1 193:9 193:15 194:22 194:24 195:4 196:14 196:15 196:16 196:19 197:4 | | door(3) 80:3 80:4 81:18 | | egregious(1) 140:19 | |
| discern(1) 43:14 | | | | dorr(1) 9:13 | | eichenholtz(1) 57:24 | |
| disclaim(2) 85:21 116:10 | | | | double(1) 88:14 | | eight(1) 185:11 | |
| disclaimed(9) 53:19 54:18 62:18 84:16 85:23 86:20 86:24 87:5 88:13 | | | | doubt(3) 44:21 55:23 195:9 | | either(23) 15:25 16:2 42:22 43:2 45:19 51:19 51:25 55:5 62:2 62:2 75:24 79:24 86:21 90:13 91:10 94:7 109:8 161:8 167:17 182:11 200:18 202:14 205:4 | |
| | | | | dougherty(2) 5:19 5:20 | | | |
| disclose(1) 102:23 | | distributions(10) 22:10 23:19 125:24 127:5 182:5 187:3 187:10 187:12 189:3 190:12 | | douglas(2) 3:38 5:31 | | | |
| disclosed(2) 50:7 72:8 | | | | dow(2) 11:4 11:4 | | | |
| disclosure(24) 18:10 18:13 18:20 21:21 30:5 112:2 155:23 161:9 161:10 161:23 162:3 163:2 163:4 163:4 163:5 163:12 163:22 164:5 164:6 164:13 164:15 169:21 169:22 179:14 | | district(15) 1:2 94:23 100:10 100:16 133:25 134:1 134:5 134:21 142:3 156:18 157:9 157:23 159:6 175:25 177:3 | | down(24) 27:2 28:9 30:22 59:20 60:15 60:25 62:8 65:13 107:4 107:19 108:23 138:16 139:3 143:23 146:8 146:9 146:12 146:17 154:1 154:9 162:24 165:16 165:16 191:6 202:13 | | elden(1) 5:19 | |
| | | | | | | eldersveld(1) 7:9 | |
| | | | | | | elect(3) 15:25 17:23 17:25 | |
| | | | | | | elected(4) 49:16 49:17 75:25 76:2 | |
| | | diverged(1) 85:18 | | | | electing(1) 19:24 | |
| | | divide(3) 13:25 78:14 209:10 | | | | election(3) 16:5 20:4 199:16 | |
| discordance(1) 120:20 | | divided(1) 14:10 | | dozens(1) 163:16 | | elections(3) 20:2 20:3 20:8 | |
| discounted(1) 160:21 | | division(1) 149:19 | | drain(1) 102:11 | | electronic(1) 1:47 212:4 | |
| discourse(1) 73:21 | | dixit(2) 172:8 178:3 | | dramatic(1) 111:13 | | elects(1) 196:22 | |
| discovery(4) 72:20 74:2 74:3 74:5 | | dla(1) 2:30 | | dramatically(1) 171:18 | | elegantly(1) 95:19 | |
| discrete(1) 85:9 | | dno(1) 29:14 | | draw(1) 73:21 123:15 | | element(2) 96:19 131:16 | |
| discretion(2) 102:20 200:20 | | docket(1) 207:8 | | drawing(1) 202:16 | | elevate(2) 176:12 191:1 | |
| discriminates(3) 15:11 91:1 93:25 | | doctrine(3) 145:3 149:16 171:4 | | drexel(3) 157:22 157:22 160:13 | | eli(1) 3:9 | |
| discriminating(1) 190:3 | | document(1) 199:23 | | drive(1) 114:24 | | elicited(1) 27:7 | |
| discrimination(25) 15:21 16:5 16:9 32:22 35:10 92:25 93:6 94:3 94:5 94:19 95:17 127:1 130:24 131:16 133:22 134:4 134:7 134:13 134:24 135:5 135:5 135:7 187:16 187:17 190:4 191:9 | | documents(4) 55:24 74:4 121:14 205:9 | | drop(2) 28:12 132:15 | | eliciting(1) 170:7 | |
| | | does(45) 15:24 27:21 29:10 30:22 35:10 35:17 35:20 35:23 36:8 36:23 37:21 47:1 58:17 65:12 81:3 82:3 83:8 87:4 87:22 88:13 102:23 105:13 114:3 115:14 120:1 126:3 128:23 129:2 131:18 131:20 154:5 155:15 155:17 156:21 164:16 166:14 166:16 166:16 169:10 173:14 176:6 183:12 183:1 183:15 183:5 183:20 192:15 195:7 | | dropped(1) 115:11 | | eligible(2) 161:25 163:7 | |
| | | | | dubli(1) 4:30 | | eliminate(9) 14:14 15:20 17:5 17:8 17:16 31:24 65:23 127:11 188:22 | |
| | | | | dublin(38) 20:15 20:16 20:25 31:2 31:4 31:4 32:16 32:24 33:7 38:16 126:20 154:12 154:13 154:24 155:3 162:17 165:1 165:10 165:18 165:24 167:15 168:11 168:19 172:20 175:16 175:18 175:21 178:21 178:21 180:22 184:19 184:19 190:17 190:17 196:1 196:1 196:12 199:6 | | | |
| discriminatory(2) 36:4 129:18 | | | | | | elizabeth(1) 6:26 | |
| discuss(6) 52:17 70:2 152:16 156:21 157:25 203:21 | | | | | | elkins(1) 7:42 | |
| | | | | | | elliot(2) 3:5 83:22 | |
| | | | | | | ellipsing(1) 132:15 | |
| discussed(7) 12:10 50:17 59:14 90:10 90:13 92:2 155:23 | | doesn't(15) 31:24 33:14 44:4 64:2 64:5 69:9 75:2 87:11 88:8 107:25 115:10 117:25 119:13 119:24 125:22 | | due(4) 123:12 172:11 194:10 211:6 | | else(8) 64:9 95:15 106:1 144:23 162:20 163:18 208:9 211:16 | |
| | | | | dunn(1) 11:13 | | | |
| discusses(1) 60:20 | | | | during(10) 52:13 63:6 74:3 106:12 146:11 186:1 193:15 193:23 194:12 209:23 | | emanating(1) 175:24 | |
| discussing(6) 37:24 57:24 59:2 82:11 116:14 157:8 | | doesn't(10) 174:19 182:12 182:15 182:16 183:1 183:5 183:5 183:20 192:15 195:7 | | | | embodied(3) 35:15 77:2 82:4 | |
| | | | | dynamic(1) 57:1 | | embrace(1) 34:12 | |
| | | | | | | emergence(2) 80:20 82:17 | |
| | | | | | | emphasize(1) 63:22 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| employed(3) 49:12 71:10 71:10 | | equity(56) 14:22 15:23 25:16 25:18 25:19 25:22 26:7 26:8 26:10 26:18 26:22 26:23 26:23 26:25 26:25 27:4 27:10 27:10 27:13 28:7 28:8 28:9 31:15 31:19 31:25 32:5 32:20 33:8 36:3 38:18 38:19 38:21 141:1 163:7 163:10 187:19 187:21 188:5 188:8 188:12 188:19 189:2 189:4 189:7 189:8 189:9 189:18 189:24 190:3 190:21 190:23 191:15 191:17 191:19 192:9 192:25 | | every(14) 64:9 92:8 96:14 137:5 150:12 154:5 171:22 180:13 181:19 182:22 182:2 185:19 185:24 202:19 | | explained(2) 74:8 193:7 |
| employee(2) 72:21 73:9 | | | | | | explaining(2) 20:19 132:4 |
| employees(17) 66:24 67:12 67:17 69:9 69:15 69:25 70:4 71:9 71:14 71:17 71:19 72:16 72:24 75:8 75:11 130:7 | | | | | | explanation(2) 50:20 192:16 |
| | | | | | | explicitly(1) 161:22 |
| | | | everybody(3) 94:7 154:6 202:3 | | exponentially(3) 50:20 185:22 186:6 |
| enable(1) 22:6 | | | | everybody's(1) 203:15 | | exposed(3) 33:22 87:25 88:1 |
| enabled(2) 21:4 118:22 | | | | everyone(5) 12:2 64:9 163:18 202:24 | | exposure(3) 110:4 121:3 138:18 |
| enacting(1) 169:16 | | | | everything(2) 62:14 105:2 106:2 | | expound(1) 198:13 |
| encompass(2) 54:18 62:5 | | | | evidence(32) 14:17 15:18 42:8 42:9 47:5 47:5 47:19 48:18 52:5 52:19 55:23 60:4 | | express(3) 25:21 210:1 |
| end(16) 18:12 19:12 19:14 19:19 22:19 23:5 23:13 23:22 31:19 33:7 84:21 85:16 150:17 180:4 191:3 194:2 | | equivalent(4) 118:19 122:14 123:22 123:24 | | 62:1 70:3 74:4 75:14 82:19 83:2 83:9 120:25 133:5 133:6 134:8 134:10 135:6 144:9 151:4 153:7 188:11 196:13 198:13 205:11 | | expressed(2) 31:18 86:15 |
| | | erect(1) 172:7 | | | | expression(1) 94:25 |
| | | erisa(1) 70:17 | | | | extended(1) 16:22 |
| endorse(2) 125:10 195:21 | | errors(1) 127:24 | | | | extensive(2) 45:24 122:23 |
| endorsement(1) 122:24 | | esop(1) 144:11 | | evidentiary(5) 26:1 34:8 70:2 208:14 | | extent(20) 16:24 17:18 18:2 21:22 28:4 28:8 42:11 65:16 71:12 71:25 74:15 81:9 82:23 116:5 119:5 164:11 176:14 186:9 209:8 210:7 |
| ends(3) 59:6 156:2 161:3 | | especially(4) 45:7 49:25 163:15 184:6 184:7 185:23 203:12 207:15 | | exact(4) 142:22 161:11 184:1 190:7 | | |
| enforce(1) 156:6 | | | | exactly(13) 56:20 74:9 74:20 80:7 87:16 102:3 112:22 154:4 162:1 174:13 190:20 192:13 196:12 | | |
| enforced(5) 56:15 56:19 56:20 86:9 128:16 | | | | | | |
| enforcement(1) 127:2 129:9 130:22 | | esq(114) 1:24 1:25 1:26 1:27 1:34 2:6 2:7 2:14 2:15 2:16 2:22 2:23 2:31 2:37 2:43 3:5 3:6 3:7 3:8 3:9 3:15 3:22 3:28 3:29 3:35 3:36 3:37 3:38 3:39 3:40 3:41 4:6 4:7 4:14 4:20 4:21 4:27 4:28 4:29 4:30 4:36 4:42 5:6 5:16 5:20 5:25 5:27 5:29 5:31 5:35 5:36 5:37 5:41 6:5 6:14 6:18 6:20 6:22 6:24 6:26 6:30 6:32 6:33 6:35 6:37 6:39 6:41 7:5 7:7 7:9 7:13 7:17 7:19 7:23 7:27 7:31 7:33 7:35 7:39 7:43 8:5 8:9 8:11 8:13 8:17 8:22 8:31 8:35 8:39 8:43 9:5 9:9 9:14 9:16 9:20 9:21 9:25 9:27 9:31 9:37 9:41 10:4 10:8 10:10 10:16 10:26 10:42 11:5 11:9 11:13 11:17 11:19 11:24 11:28 | | | | extra(5) 22:16 23:5 23:9 23:13 23:14 |
| enforces(1) 127:22 | | | | examination(1) 133:18 | | extreme(3) 96:22 96:24 208:5 |
| engage(1) 200:6 | | | | examined(1) 101:5 | | f.3rd(1) 117:19 |
| engaged(2) 69:23 149:14 | | | | examiner(6) 120:25 121:12 122:1 122:6 122:10 185:9 | | face(3) 34:1 75:17 171:2 |
| english(2) 4:19 10:41 | | | | | | facetious(1) 106:21 |
| enhanced(2) 95:13 97:25 | | | | | | facilitate(1) 141:11 |
| enjoy(1) 210:10 | | | | examiner's(3) 121:16 121:21 144:13 | | facilitated(6) 61:7 140:4 140:7 142:10 142:13 147:1 |
| enormous(2) 59:3 67:21 | | | | examiner's(1) 185:9 185:12 | | |
| enough(10) 22:16 22:20 68:23 86:3 87:10 95:6 100:6 119:15 135:21 202:9 | | | | example(5) 79:17 114:1 144:8 144:13 193:19 | | facing(3) 68:17 69:12 70:4 |
| | | | | | | fact(42) 15:1 25:13 27:15 35:21 36:8 46:10 46:25 48:13 49:22 50:13 50:13 56:8 65:15 67:4 69:18 70:1 71:20 101:23 104:11 107:25 110:5 116:24 118:3 119:25 120:15 122:18 123:17 123:19 124:22 125:20 126:4 141:14 149:22 152:23 155:17 164:14 169:2 177:19 183:11 201:5 206:21 207:24 |
| enron(8) 159:5 159:5 159:13 159:15 159:24 176:18 176:20 179:10 | | | | exceeded(2) 103:5 147:5 | | |
| | | | | except(2) 40:24 162:6 | | |
| | | essential(4) 47:6 80:17 82:16 103:3 | | exception(10) 42:21 50:3 50:4 173:17 177:10 177:13 178:12 178:13 178:17 182: | | |
| ensure(1) 87:3 | | essentially(5) 23:22 96:5 138:4 161:16 183:23 | | | | |
| enter(6) 33:18 80:11 80:19 110:3 110:5 160:17 | | | | exceptions(3) 70:21 70:23 70:24 | | factor(11) 42:19 43:22 45:3 45:4 45:18 45:19 47:1 73:11 73:12 74:14 155:16 |
| | | establish(2) 22:9 101:10 | | excess(1) 72:23 | | |
| entered(5) 58:20 62:11 86:8 86:16 157:2 | | established(1) 43:12 | | exchange(5) 107:10 107:18 113:3 117:23 189:18 | | factors(19) 39:17 39:18 41:22 41:24 42:19 47:2 47:4 49:24 50:14 52:4 52:6 66:4 66:8 66:9 71:23 75:10 77:8 82:25 163:20 |
| entering(2) 76:8 121:5 | | estate(28) 17:11 41:20 43:9 43:10 51:16 52:19 52:20 52:23 57:7 57:8 73:19 76:10 81:6 87:15 88:5 88:5 88:6 88:20 89:4 119:22 130:17 130:19 138:8 145:18 150:1 185:23 186:19 197:10 | | | | |
| enterprise(10) 15:5 21:12 21:15 22:6 22:17 24:17 24:20 36:8 36:21 136:17 | | | | | | |
| | | | | excising(1) 38:3 | | |
| | | | | excluding(1) 132:14 | | facts(7) 109:24 152:10 166:8 166:9 166:10 179:10 196:3 |
| enterprises(1) 160:14 | | | | exclusions(1) 33:1 | | |
| entire(5) 71:16 148:4 150:18 189:22 209:2 | | | | exclusive(1) 66:8 | | |
| entirely(10) 18:5 71:24 82:5 90:8 120:4 133:19 177:3 177:6 188:22 208:11 | | estate's(1) 39:21 | | exculpation(21) 13:7 48:24 49:2 52:10 52:12 52:13 52:16 52:24 53:2 53:6 65:11 77:11 78:23 80:23 81:4 81:5 81:8 81:10 81:12 82:23 83:15 | | factual(1) 171:19 |
| | | estates(4) 40:17 66:18 75:12 99:25 100:20 | | | | fail(2) 157:19 180:25 |
| entirely"(1) 160:21 | | esther(1) 6:5 | | | | failed(4) 98:2 141:5 141:8 141:22 |
| entirety(5) 55:6 84:9 138:7 146:7 155:10 | | estimate(1) 210:18 | | | | fails(1) 127:18 |
| entities(6) 68:9 123:18 171:6 178:15 180:15 198:5 | | estimates(2) 77:21 198:22 | | | | failure(6) 29:15 33:2 40:17 104:1 171:5 184:14 |
| | | estopped(1) 148:23 | | excusing(1) 104:1 | | |
| entitled(10) 52:23 81:7 81:22 90:14 135:9 140:3 162:2 181:24 183:16 | | estoppel(6) 145:3 153:22 163:24 173:21 174:2 174:3 | | execute(2) 127:18 128:3 | | fair(9) 16:18 66:11 66:17 82:1 95:6 119:15 139:14 147:12 147:15 |
| | | | | executed(1) 117:7 | | |
| | | | | exempt(2) 120:4 120:16 | | fairly(2) 46:4 79:25 |
| entitlement(1) 104:18 | | ethical(1) 174:6 | | exempted(1) 76:18 | | fairness(3) 62:2 148:14 175:18 |
| entitlements(1) 184:11 | | euphemism(1) 19:19 | | exemption(2) 71:16 74:18 | | faith(3) 47:17 110:22 172:16 |
| entity(10) 68:16 142:6 142:6 142:9 185:8 185:16 193:16 197:2 210:5 210:9 | | evade(1) 182:12 | | exempts(1) 119:6 | | faithless(1) 96:8 |
| | | evaluate(1) 34:23 | | exercise(6) 66:16 69:23 74:13 116:12 128:13 158:21 | | fall(4) 82:12 109:12 183:7 211:10 |
| | | evaluated(1) 66:14 | | | | fallon(1) 9:27 |
| entity-by(1) 185:7 210:4 210:8 | | evaluating(4) 44:2 66:2 66:6 66:19 | | | | falls(3) 35:21 109:7 |
| entity-by-entity(1) 186:10 | | evaluation(2) 82:14 83:2 | | exercised(2) 67:23 67:24 | | faltas(2) 9:30 9:31 |
| entry(1) 54:4 | | evan(1) 11:17 | | exide(1) 43:4 | | familiar(2) 142:12 175:2 |
| eos(2) 8:4 8:4 | | even(33) 23:13 26:25 27:4 43:1 50:1 50:8 63:17 74:19 92:9 97:22 114:10 120:21 122:17 125:20 128:21 129:12 130:19 143:24 149:14 152:1 152:9 156:15 156:22 156:22 158:4 162:14 171:6 183:10 188:15 189:18 190:8 193:20 200:8 | | exist(3) 67:16 89:10 90:5 | | far(9) 30:10 34:14 45:17 55:9 82:11 87:10 95:25 138:5 139:6 |
| ephraim(1) 8:17 | | | | existed(1) 140:23 | | |
| epiphany(1) 42:14 | | | | existing(2) 18:10 141:17 | | |
| equal(7) 27:19 27:19 27:20 94:22 97:17 180:14 190:12 | | | | exists(4) 124:18 177:11 177:13 182:3 | | fargo(1) 9:40 |
| | | | | expanded(5) 50:21 53:2 70:9 | | fast(1) 184:5 |
| | | | | expect(3) 64:16 165:24 206:1 | | fatal(1) 154:3 |
| equal-value(1) 192:5 | | | | expectation(1) 14:4 | | fault(6) 56:3 56:4 58:18 59:21 149:6 149:9 |
| equally(4) 13:25 57:21 78:14 99:7 | | evenly(1) 14:10 | | expected(1) 137:11 | | faults(1) 129:7 |
| equals(1) 63:8 | | event(8) 16:22 17:1 22:21 71:2 87:22 170:5 177:24 180:23 | | expedited(1) 18:19 | | favor(1) 150:14 |
| equilibrium(1) 14:7 | | | | expedition(4) 140:10 141:2 141:8 141:22 | | favorable(1) 149:23 |
| | | | | expeditiously(1) 141:5 | | favored(1) 38:19 |
| equitable(7) 70:21 70:23 139:14 147:12 147:15 164:17 164:17 | | ever(7) 57:19 57:20 102:14 122:24 166:5 188:17 200:19 | | expense(3) 101:5 101:13 111:24 | | fearful(1) 56:13 |
| | | | | experience(2) 86:11 166:21 | | feature(2) 57:4 195:22 |
| equitableness(1) 62:3 | | events(1) 52:13 | | explain(3) 180:8 188:10 188:18 | | features(1) 63:14 |
| equitably(2) 151:2 151:13 | | | | | | |

| Word | Page:Line |
|---|---|
| federal(1) 193:13 | |
| feel(3) 64:3 173:2 209:24 | |
| feeling(2) 72:21 202:6 | |
| fees(1) 61:8 | |
| feld(11) 4:26 7:16 35:5 36:25 53:12 74:2 97:9 109:19 126:23 135:15 154:13 | |
| fellow(1) 107:2 | |
| few(13) 29:22 37:23 38:7 40:20 46:16 90:3 102:7 106:18 110:24 118:13 167:21 170:8 171:21 | |
| fiduciaries(6) 39:3 52:20 52:23 63:3 81:6 96:8 | |
| fiduciary(1) 63:8 | |
| fifth(2) 45:4 45:17 | |
| fight(3) 51:17 58:20 59:23 | |
| figure(1) 99:15 | |
| figured(2) 166:22 | |
| file(5) 19:12 55:24 86:22 200:20 200:21 | |
| filed(16) 20:21 21:1 22:3 28:3 51:8 51:17 85:1 85:5 122:20 122:22 122:22 131:22 142:20 142:24 163:5 177:18 | |
| filing(6) 18:11 19:17 35:12 35:13 36:5 117:17 | |
| filter(1) 203:1 | |
| final(4) 146:15 153:9 153:25 206:20 | |
| finally(5) 38:8 45:4 49:16 62:8 130:8 | |
| financed(2) 141:1 141:7 | |
| financial(9) 43:10 43:12 55:7 98:19 98:23 119:10 120:13 121:16 132:24 | |
| financing(2) 43:11 110:11 | |
| find(11) 30:19 59:24 70:23 81:24 99:5 107:8 120:25 121:13 129:21 133:8 138:15 | |
| finder(1) 56:8 | |
| findings(9) 82:3 108:23 204:25 206:21 206:24 207:4 207:8 208:2 208:3 | |
| fine(5) 13:15 28:16 83:12 205:7 205:17 | |
| finger(1) 3:14 | |
| finish(4) 77:16 78:15 126:16 205:15 | |
| finishing(1) 165:9 | |
| finite(1) 22:22 | |
| firm(2) 83:22 153:18 | |
| firmly(1) 86:10 | |
| first(60) 14:18 29:19 30:6 37:25 39:7 39:18 42:19 46:17 46:25 47:1 49:14 49:18 53:22 57:6 71:14 71:25 76:18 78:21 79:11 79:19 80:24 85:13 86:19 91:9 92:20 92:21 92:21 95:4 98:1 98:1 100:5 106:3 106:3 106:18 111:9 112:25 113:9 116:6 117:2 119:7 121:11 128:6 128:7 133:2 133:2 139:25 147:5 150:4 150:5 154:18 157:7 165:8 166:5 170:2 178:8 180:5 182:4 196:4 211:8 | |
| fischel's(1) 144:21 | |
| fit(2) 130:19 194:16 | |
| five(6) 39:17 40:1 41:24 42:19 64:24 194: | |
| fix(4) 65:17 103:17 105:19 105:19 | |
| fixed(3) 107:24 118:25 146:17 | |
| fixes(1) 106:9 | |
| flag(1) 19:11 | |
| flip-flop(1) 164:9 | |
| flipside(1) 171:8 | |
| floor(3) 2:9 2:26 77:17 | |
| florsheim(1) 9:20 | |
| flow(4) 136:2 136:21 136:22 147:3 | |
| flows(1) 24:5 | |
| focus(8) 21:8 25:25 39:25 67:13 104:23 125:7 150:3 156:1 | |
| focused(6) 66:23 66:25 73:15 106:3 163:2 163:11 | |

| Word | Page:Line |
|---|---|
| foe(1) 111:14 | |
| foist(1) 187:20 | |
| folks(2) 72:21 75:25 | |
| follow(4) 39:16 95:23 105:2 146:19 | |
| followed(1) 126:19 | |
| following(10) 54:4 54:15 67:7 75:17 117:23 133:10 146:23 163:6 173:7 178:7 | |
| follows(2) 68:3 127:4 | |
| fooled(1) 64:11 | |
| footing(1) 180:14 | |
| footnote(2) 115:12 179:1 | |
| footnotes(2) 116:9 116:18 | |
| for(301) 1:2 1:23 2:4 2:21 2:30 2:35 2:42 3:4 3:21 3:26 4:4 4:13 4:19 4:26 4:41 5:4 5:14 5:19 5:23 6:4 6:8 6:17 6:29 7:4 7:11 7:22 7:30 7:42 8:4 8:8 8:16 8:20 8:25 8:29 8:34 8:38 8:42 9:4 9:7 9:19 9:24 9:30 9:34 9:40 10:4 10:12 10:19 10:23 10:29 10:33 10:37 10:41 11:4 11:7 11:12 11:16 11:22 11:27 13:19 13:21 16:2 16:14 16:17 17:3 17:12 17:22 18:16 18:15 22:10 22:13 22:14 23:6 23:16 24:8 24:18 25:21 26:17 27:3 27:23 28:13 29:2 29:15 31:20 32:17 32:23 33:24 34:4 34:10 34:16 35:4 36:16 36:25 37:23 38:1 38:17 38:20 39:5 39:24 40:2 42:23 43:13 43:23 44:5 44:9 45:6 45:15 46:1 46:5 47:6 47:25 48:9 48:10 48:12 48:20 48:25 49:3 49:4 50:4 50:18 51:2 51:12 51:14 52:1 53:2 53:11 53:12 53:17 53:22 55:2 55:16 55:22 56:18 59:12 59:15 60:2 60:3 60:12 60:21 60:23 62:17 63:11 63:15 63:17 64:22 65:10 66:1 66:5 67:10 68:4 68:7 68:12 68:19 68:21 69:7 70:5 70:15 70:17 70:21 71:15 71:17 71:21 73:2 74:4 74:7 75:3 75:24 75:25 76:1 77:4 79:7 79:9 79:15 79:17 79:18 79:19 80:12 81:8 81:16 81:22 82:9 84:7 85:11 85:16 85:16 86:6 86:19 86:22 87:4 87:7 87:10 87:12 87:12 87:25 88:7 88:10 88:11 89:5 89:20 90:10 90:21 91:18 92:2 92:13 92:13 93:14 93:15 93:15 93:22 96:12 97:9 97:24 98:15 99:12 101:16 101:25 102:10 102:24 103:1 103:8 103:13 104:8 104:20 105:7 107:2 107:7 107:13 109:20 110:1 110:23 112:21 113:5 113:17 113:23 114:1 114:6 114:9 114:22 115:20 115:21 117:12 117:15 118:3 118:5 118:16 119:5 119:19 119:24 121:19 121:19 121:21 122:4 122:9 123:3 123:7 125:4 126:2 126:23 128:6 130:10 130:11 131:3 133:5 133:7 133:22 134:3 134:19 135:15 135:24 137:8 137:8 138:6 138:21 138:22 138:23 139:6 144:7 144:13 145:8 146:8 146:9 147:7 147:12 147:21 148:5 148:8 149:24 150:3 150:4 151:9 151:18 153:22 154:6 154:13 155:5 155:7 155:9 155:9 155:10 157:12 157:14 | |
| for(90) 158:16 160:1 161:19 162:6 162:9 162:21 165:7 166:22 166:22 167:11 168:2 169:4 170:13 171:5 172:5 172:12 173:14 173:17 174:7 175:15 176:13 177:20 178:6 180:17 180:21 182:5 182:9 182:20 184:3 184:23 185:18 185:18 185:19 185:22 186:13 186:15 186:17 187:11 187:19 188:5 189:18 190:8 190:9 190:17 191:1 192:14 192:16 193:18 193:20 198:22 200:16 200:3 203:2 203:2 203:6 204:3 204:17 204:21 204:24 205:5 205:18 206:8 206:9 206:12 206:15 206:23 207:1 207:14 207:1 207:17 208:5 208:25 209:7 209:13 209:22 209:23 209:24 210:14 210:16 210:18 210:22 210:23 211:10 211:16 | |
| force(3) 68:6 97:17 189:22 | |
| forced(2) 183:16 189:6 | |
| forces(1) 111:5 | |
| foregoing(1) 212:3 | |

| Word | Page:Line |
|---|---|
| foremost(1) 98:1 | |
| forever(1) 171:2 | |
| forget(1) 96:6 | |
| forgot(1) 134:15 | |
| form(25) 14:20 15:7 15:13 16:9 21:13 27:20 29:20 29:22 32:19 38:5 38:6 38:20 43:8 75:13 100:9 115:7 145:3 148:5 176:10 176:12 176:13 192:6 192:24 199:1 201:11 | |
| formal(1) 202:16 | |
| formalizes(1) 54:5 | |
| forman(1) 1:32 | |
| former(6) 5:4 79:18 130:6 169:12 169:13 211:2 | |
| forms(2) 111:6 119:1 | |
| formulation(1) 43:24 | |
| forth(10) 12:17 12:24 13:5 14:13 22:16 29:11 29:16 34:9 90:11 204:25 | |
| forthwith(1) 210:9 | |
| fortunes(2) 96:17 193:24 | |
| forty(1) 194:6 | |
| forward(1) 21:25 | |
| fought(1) 82:7 | |
| found(6) 127:23 151:14 152:13 152:16 158:12 207:9 | |
| foundation(2) 10:24 10:25 | |
| four(8) 39:24 47:3 49:10 50:6 77:17 77:23 160:8 201:3 | |
| fours(2) 168:21 177:6 | |
| fourth(2) 44:13 45:2 | |
| fraction(1) 197:10 | |
| framework(3) 66:5 135:4 169:7 | |
| francisco(1) 5:29 | |
| frank(2) 9:34 9:35 | |
| frankel(1) 8:21 | |
| frankly(8) 51:13 64:3 147:25 149:25 153:11 153:20 180:1 184:9 | |
| fraud(1) 120:23 | |
| fraudulent(45) 16:21 16:23 17:4 17:10 17:12 40:13 40:16 40:23 41:9 53:20 53:25 55:20 55:22 56:7 60:13 62:18 89:14 89:20 91:20 92:5 92:10 95:14 114:14 114:16 114:21 118:15 120:17 121:2 137:1 138:9 138:12 139:22 140:1 142:4 142:15 144:14 148:21 149:8 151:19 151:21 151:24 152:1 152:2 152:5 152:6 | |
| freeing(1) 31:15 | |
| frequent-flyer(1) 173:24 | |
| frequently(1) 207:14 | |
| friedman(1) 10:5 | |
| friends(2) 107:23 142:21 | |
| from(137) 15:3 16:20 18:17 23:23 25:1 25:13 26:11 28:1 28:20 29:4 32:10 33:1 34:16 35:24 36:8 36:22 39:2 39:3 47:5 48:1 48:3 49:12 49:14 49:19 54:24 55:11 55:24 55:25 56:6 56:11 57:6 58:16 61:11 62:25 63:5 65:2 70:1 72:19 72:20 72:21 72:22 75:10 78:6 79:10 79:23 80:3 80:20 81:15 81:18 82:17 83:22 85:18 88:9 89:8 89:24 90:15 91:6 91:10 91:17 92:24 93:14 95:4 95:13 98:3 98:22 98:22 100:25 104:25 105:2 106:14 110:25 111:1 112:8 111:21 111:22 112:6 112:13 115:6 118:1 118:1 119:7 120:4 121:14 122:23 123:10 130:18 139:13 139:18 140:3 140:6 140:9 141:22 142:9 142:14 145:15 147:19 148:15 148:19 148:23 149:7 150:8 150:12 152:12 153:5 153:11 159:18 159:19 163:21 164:1 165:6 168:8 169:12 174:21 174:22 175:16 175:24 181:14 181:15 182:18 182:19 184:4 186:6 187:4 195:14 196:17 209:8 209:9 210:11 211:1 211:4 212:4 | |

| Word | Page:Line |
|---|---|
| front(6) 80:4 131:8 158:15 172:21 185:17 192:14 | |
| fruit(2) 100:14 101:7 | |
| full(9) 22:21 27:1 36:15 36:15 45:11 116:2 139:9 145:25 193:4 | |
| fully(1) 90:11 | |
| fun(1) 49:9 | |
| function(1) 156:5 | |
| fund(4) 7:42 195:11 196:22 197:8 | |
| fundamental(7) 63:14 63:18 99:20 99:23 117:20 159:10 167:15 | |
| fundamentally(1) 87:11 | |
| funded(3) 100:12 108:1 | |
| funding(6) 25:17 25:19 43:11 91:11 100:8 100:17 | |
| funds(4) 125:23 181:14 181:16 193:12 | |
| further(24) 28:22 28:23 33:9 33:20 35:12 35:14 44:3 83:8 90:2 101:14 102:7 119:2 132:11 134:8 139:20 145:5 153:23 156:22 172:10 198:14 199:15 200:4 200:7 208:10 | |
| future(9) 16:3 138:3 150:7 151:11 152:8 154:8 154:8 193:23 195:10 | |
| g-r-e-a-t-e(1) 134:18 | |
| gain(1) 107:13 | |
| gains(5) 193:14 193:16 194:5 194:6 194:17 | |
| gambardella(1) 160:7 | |
| gap(1) 64:2 | |
| garnish(1) 70:25 | |
| garrison(1) 8:30 | |
| gary(1) 7:7 | |
| gating(1) 22:24 | |
| gave(10) 14:20 61:14 77:3 92:19 93:3 93:5 139:7 165:10 165:12 189:16 | |
| gavin(1) 9:9 | |
| geddes(1) 4:35 | |
| gee(2) 120:10 183:8 | |
| general(12) 22:13 37:24 44:19 45:10 72:21 132:20 136:4 180:15 181:8 184:23 197:9 207:10 | |
| generally(6) 39:16 41:6 41:21 43:8 44:15 84:11 | |
| genesis(2) 43:4 43:17 | |
| gentle(1) 96:7 | |
| gentlemen(1) 107:22 | |
| george(2) 5:19 5:20 | |
| gerber(2) 162:25 163:11 | |
| gerrymander(1) 112:20 | |
| gerrymandering(2) 124:14 124:19 | |
| get(68) 14:25 20:7 23:12 23:15 26:25 29:14 37:9 37:13 37:23 40:20 42:9 47:11 48:14 50:21 52:23 59:1 60:10 60:15 61:12 61:16 68:16 72:18 72:22 78:11 80:13 82:8 82:8 86:3 92:23 97:25 99:19 108:18 115:21 116:23 124:20 126:20 128:23 129:3 134:7 136:6 136:16 137:4 139:10 141:16 141:16 141:16 141:23 146:20 148:11 149:23 154:6 157:2 161:5 165:4 165:15 172:11 179:20 180:23 183:1 183:25 185:9 186:4 187:13 187:14 196:8 200:19 207:19 208:19 | |
| gets(7) 23:19 27:4 47:23 58:2 124:11 129:1 156:8 | |
| getting(17) 15:12 19:1 34:1 34:2 45:12 45:16 47:10 48:23 49:2 50:25 51:1 51:1 56:0:5 68:15 72:19 174:10 202:12 | |
| gift(1) 37:20 | |

| Word | Page:Line |
|------|-----------|
| give(24) | 13:16 19:24 20:2 22:11 26:6 26:8 32:1 64:24 80:18 81:21 91:14 109:14 134:11 143:11 148:20 181:18 183:16 186:11 189:7 189:7 189:8 191:19 201:24 202:9 |
| given(21) | 15:7 15:22 16:19 67:21 71:1 72:15 74:24 74:15 75:8 80:4 81:10 93:7 106:1 114:20 148:9 195:18 200:12 201:5 202:15 203:14 208:4 |
| gives(2) | 17:23 118:21 |
| giving(10) | 15:24 19:2 27:13 46:4 50:12 74:18 92:16 119:21 148:14 189:21 |
| glad(2) | 86:7 93:18 |
| glaring(1) | 103:18 |
| glatt(1) | 6:13 |
| global(3) | 9:30 159:20 159:24 |
| globe(2) | 100:14 101:7 |
| goal(2) | 38:21 209:4 |
| goc(3) | 92:18 92:24 93:9 |
| god(1) | 203:3 |
| goes(18) | 15:19 15:10 16:6 17:25 18:2 23:10 26:24 30:16 59:17 109:11 119:25 132:16 133:21 135:24 136:18 191:6 191:6 191:10 |
| going(65) | 19:23 21:8 23:5 23:12 32:14 38:4 49:7 52:3 53:7 53:14 53:21 53:22 54:22 56:22 61:13 68:10 68:14 70:6 72:10 80:11 81:19 81:21 83:1 86:1 92:18 95:2 95:5 97:2 98:17 99:20 99:21 100:22 104:1 109:2 109:11 116:15 132:6 132:11 135:17 139:6 139:8 141:20 144:18 147:17 148:2 150:17 161:9 161:12 162:14 162:22 163:2 164:12 166:25 172:9 177:21 179:20 194:5 194:6 196:8 199:14 200:14 202:2 202:25 204:10 206:9 |
| golden(68) | 4:27 36:24 36:25 37:16 41:3 41:5 42:16 46:16 53:10 53:16 62:25 63:2 65:7 65:12 65:19 66:3 66:23 66:25 70:9 70:14 78:24 80:24 81:2 82:13 82:18 90:20 93:17 94:6 94:11 95:2 97:8 97:8 104:6 104:11 104:14 104:19 104:22 105:4 105:1 105:13 105:23 107:4 107:21 107:25 108:20 108:24 109:18 109:19 117:3 119:1 123:17 124:12 124:21 125:8 126:12 126:14 126:22 131:20 132:25 135:18 135:22 143:20 200:3 201:9 202:6 203:9 209:16 209:19 |
| golden's(10) | 93:19 96:6 97:1 106:13 106:17 116:4 116:6 122:24 133:4 134:9 |
| golden's(1) | 204:8 |
| goldfarb(2) | 4:7 5:36 |
| goldis(1) | 9:14 |
| goldman(3) | 9:16 9:24 9:24 |
| gone(3) | 69:16 175:12 201:7 |
| gonzales(3) | 159:5 159:17 179:11 |
| good(31) | 12:2 12:3 20:15 34:6 36:24 47:16 53:11 62:22 66:5 77:24 78:8 83:21 90:20 93:13 96:9 106:24 110:22 115:10 115:23 120:11 130:6 135:14 154:12 169:2 170:1 172:16 179:19 191:12 203:4 210:19 211:20 |
| goody(1) | 70:20 |
| gordon(6) | 2:4 6:20 9:8 52:18 81:11 115:2 |
| got(15) | 71:19 76:16 108:18 108:21 139:4 140:20 142:23 168:3 170:19 176:20 190:2 190:21 190:22 202:20 203:3 |
| governance(5) | 97:13 97:17 99:5 99:23 135:19 |
| governing(1) | 81:7 |
| government(1) | 194:7 |
| governs(1) | 24:2 |
| grab(1) | 115:19 |
| grace(2) | 115:11 143:21 |
| graem(1) | 5:35 |
| grand(1) | 2:17 |
| grant(9) | 43:6 48:6 99:25 100:9 100:17 108:2 108:3 108:13 108:17 |
| granted(4) | 37:25 38:1 41:7 78:21 |
| granting(5) | 44:6 44:10 45:5 47:20 50:12 |
| grantor(6) | 194:24 195:5 195:6 196:17 197:1 197:2 |
| grappling(1) | 209:25 |
| grasp(1) | 188:9 |
| gray(1) | 60:22 |
| great(6) | 4:13 8:38 38:16 97:2 204:19 206:18 |
| greate(8) | 134:15 134:18 134:18 191:11 191:11 191:12 191:24 192:8 |
| greater(2) | 34:3 192:10 |
| greg(1) | 6:30 |
| greissman(1) | 9:41 |
| grippo(1) | 5:19 |
| grossly(1) | 134:25 |
| grounded(1) | 169:20 |
| grounds(1) | 151:8 |
| groundwork(1) | 131:16 |
| group(9) | 21:19 49:7 49:10 49:21 72:17 75:24 100:15 157:15 185:22 |
| groups(2) | 184:25 191:13 |
| guarantee(9) | 110:12 110:20 123:16 123:17 123:22 124:2 124:3 124:4 180:14 |
| guaranteed(7) | 23:15 110:11 123:17 123:18 123:19 180:10 197:25 |
| guarantees(6) | 112:13 141:16 180:11 180:24 197:24 198:4 |
| guarantor(18) | 110:12 110:21 112:13 121:17 124:5 144:10 180:8 180:10 180:15 180:19 181:7 181:12 183:10 183:23 183:2 184:14 185:2 185:4 |
| guarantors(6) | 123:21 123:24 180:13 181:3 181:5 182:18 |
| gue's(1) | 45:10 |
| guess(13) | 13:23 73:1 95:1 116:1 124:24 125:15 129:13 132:3 166:4 176:25 178:24 195:15 200:9 |
| guidance(3) | 195:14 207:5 209:17 |
| gulches(1) | 173:19 |
| gump(17) | 4:26 7:16 13:6 20:16 35:5 36:25 53:12 74:1 97:9 109:19 126:22 135:15 154:13 178:21 184:19 190:17 196:1 |
| had(79) | 12:6 12:10 13:8 13:25 21:5 21:7 21:12 21:21 21:24 23:24 30:4 30:23 33:3 38:10 40:14 42:13 48:14 48:16 54:16 57:19 59:11 61:4 69:11 69:23 70:13 76:18 78:10 93:21 94:7 94:16 96:8 100:19 105:22 106:4 106:24 108:17 110:22 111:14 114:2 115:10 115:20 118:5 118:7 118:8 119:17 120:11 135:22 137:7 142:5 155:19 155:21 158:17 158:20 160:9 161:11 161:13 161:14 164:23 165:25 166:5 166:18 169:13 172:14 172:23 173:2 175:9 175:12 176:1 176:3 177:17 185:8 185:14 189:4 191:7 191:12 192:3 197:17 205:3 208:18 |
| hadn't(2) | 105:12 108:18 |
| hale(1) | 9:12 |
| half(6) | 13:20 13:21 26:22 31:19 45:9 100:16 |
| half-right(1) | 175:4 |
| hammer(1) | 135:1 |
| hammered(2) | 82:6 82:7 |
| hand(11) | 46:23 91:14 107:8 111:8 113:2 155:4 171:20 171:21 188:4 188:11 188:24 |
| handed(1) | 24:13 |
| hang(1) | 69:15 |
| hanging(1) | 64:9 |
| happen(8) | 54:21 80:21 134:14 145:24 146:17 161:25 167:10 179:15 |
| happened(5) | 112:22 160:2 170:3 175:2 175:7 |
| happening(2) | 88:15 106:2 |
| happens(2) | 102:3 170:8 |
| happy(16) | 20:12 27:9 28:3 28:19 51:13 65:23 72:6 77:14 83:15 107:4 108:23 108:25 169:22 169:23 186:10 191:4 |
| harbor(1) | 114:6 |
| hard(10) | 13:21 37:13 73:20 107:9 107:18 147:23 149:23 158:12 166:5 188:9 |
| hark(1) | 151:19 |
| harm(2) | 60:25 188:20 |
| harmful(4) | 188:6 188:12 190:2 192:20 |
| harrisburg(1) | 1:43 |
| hartenstein(4) | 68:15 70:2 73:8 75:11 |
| hartford(1) | 3:24 |
| has(86) | 14:25 15:14 16:11 17:19 17:24 18:15 22:24 26:25 30:8 34:16 34:24 34:25 35:19 41:14 45:3 45:19 47:19 48:18 53:24 57:8 58:11 58:19 61:25 62:6 63:18 66:13 66:23 71:5 72:8 73:8 79:10 79:13 79:21 83:15 84:17 85:18 86:22 91:22 92:15 97:4 103:12 104:8 105:23 106:1 106:4 111:8 112:22 122:20 125:6 131:20 132:1 132:21 137:17 139:4 143:21 145:23 145:24 149:1 152:17 153:18 155:18 156:10 157:18 158:1 160:24 164:19 167:12 167:18 167:22 167:24 167:25 168:12 170:23 178:17 179:8 182:3 190:6 193:2 193:8 198:11 198:15 204:23 206:18 208:23 209:1 210:5 |
| hasn't(1) | 67:25 |
| hasn't(1) | 209:23 |
| hauer(11) | 4:26 7:16 35:5 36:25 53:12 74:2 97:9 109:19 126:23 135:15 154:13 |
| have(301) | 12:22 13:18 13:21 13:22 14:7 14:15 16:3 16:16 16:17 16:22 17:3 17:16 18:2 18:14 19:4 19:23 20:12 20:14 20:17 20:23 21:4 21:5 22:14 23:4 23:5 23:6 23:14 23:16 23:18 23:20 24:21 25:4 26:10 28:14 28:23 29:8 29:11 30:11 30:21 30:24 31:15 31:24 32:8 32:13 32:17 34:7 34:7 34:12 34:13 37:7 37:10 37:25 38:23 40:21 42:13 42:22 42:25 43:15 44:4 44:9 44:12 44:24 44:25 48:3 49:7 50:5 50:7 50:14 50:19 51:7 51:21 52:2 54:2 55:1 55:13 55:15 55:17 55:19 55:22 56:1 56:6 58:6 58:12 60:1 60:6 62:1 62:10 62:16 64:6 66:4 66:7 67:4 67:13 67:21 67:23 67:24 68:14 69:5 69:9 69:15 70:5 70:22 71:20 72:10 72:19 73:11 74:7 77:20 81:17 84:10 84:14 85:19 87:15 89:2 89:15 90:12 90:17 91:2 91:17 92:6 93:4 93:22 94:5 94:10 94:22 95:9 96:14 97:13 97:19 98:2 98:5 98:9 98:10 98:19 98:23 99:8 99:14 99:15 99:17 100:4 100:11 100:12 100:21 102:9 103:7 103:11 103:14 104:12 105:10 105:13 105:17 105:24 106:14 106:15 106:24 107:9 107:10 107:16 108:22 109:9 112:4 112:12 113:14 113:23 114:23 116:2 116:2 116:12 118:5 118:7 118:18 119:7 120:13 121:10 122:8 122:16 124:7 125:14 126:5 126:12 126:14 126:18 128:3 128:11 128:15 130:5 130:9 130:14 131:18 131:21 134:14 134:23 134:24 135:19 137:23 138:5 138:8 138:9 138:16 139:1 139:2 139:10 139:19 141:19 143:14 143:17 143:19 144:5 144:6 144:17 144:19 144:25 145:17 145:17 145:19 147:10 147:13 148:9 150:11 151:14 151:17 152:14 152:14 152:23 153:2 153:8 154:11 154:17 154:19 154:23 155:4 155:6 155:8 157:2 157:11 159:1 159:2 160:1 161:1 161:6 161:7 161:12 163:24 163:25 163:25 164:3 164:22 165:3 165:16 167:2 167:13 168:1 168:24 168:24 169:22 169:23 170:10 170:13 170:14 170:17 171:18 172:2 174:4 174:18 177:9 177:11 177:21 179:21 180:12 181:22 181:23 184:25 185:2 185:14 185:19 185:23 186:10 186:18 187:11 188:23 190:7 190:24 192:2 192:5 192:7 194:5 194:13 194:22 195:10 195:13 196:4 196:7 198:1 198:5 198:21 199:11 199:19 201:6 201:12 201:21 |
| have(14) | 201:21 202:6 202:8 202:15 203:3 203:5 203:19 204:5 205:19 206:10 206:22 207:10 208:15 210:17 |
| haven't(3) | 51:22 57:18 103:17 |
| haven't(4) | 166:18 201:13 205:10 207:13 |
| having(13) | 15:22 40:5 59:23 84:8 90:15 107:18 133:2 133:2 133:23 166:22 168:18 188:2 200:14 |
| hazard(1) | 141:13 |
| hazardous(1) | 77:22 |
| he'll(1) | 58:2 |
| he's(3) | 14:2 88:17 133:10 |
| head(2) | 59:7 164:23 |
| heading(2) | 24:13 162:2 |
| headlines(1) | 51:24 |
| heads(1) | 69:15 |
| health(1) | 43:17 |
| healthy(1) | 99:17 |
| hear(18) | 28:20 38:23 61:1 84:4 84:23 84:24 85:1 85:4 86:7 88:23 93:3 93:18 114:18 142:18 148:3 169:22 169:23 207:11 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **heard**(59) 14:25 15:3 15:14 25:25 40:13 42:8 45:13 45:14 51:22 53:5 56:11 57:3 58:14 58:19 60:9 61:1 62:10 62:25 70:1 73:10 75:10 75:14 89:8 93:24 94:24 97:18 103:17 109:23 110:25 117:2 117:13 118:1 119:12 121:20 124:21 135:18 135:20 140:8 143:20 149:10 152:12 153:1 153:15 153:17 172:24 173:19 180:22 184:4 187:1 187:22 188:1 188:11 188:17 189:12 193:2 200:5 200:13 204:13 209:9 | | **holders**(12) 40:4 75:4 91:7 91:16 91:16 107:12 110:19 136:15 138:21 161:24 162:1 163:9 | | **horan**(1) 4:14<br>**horse**(1) 37:20<br>**host**(1) 46:1<br>**hostile**(1) 115:21<br>**hotel**(1) 134:18<br>**hotly**(2) 51:11 137:16<br>**hour**(5) 13:4 13:20 13:21 205:24 206:18<br>**hours**(1) 86:1<br>**house**(1) 92:4<br>**housed**(1) 113:9<br>**how**(48) 12:8 22:24 23:10 25:7 26:3 27:3 27:22 36:7 43:14 50:5 50:5 50:25 56:22 57:22 58:21 60:22 61:2 61:13 74:16 74:20 82:15 83:3 83:4 91:3 95:16 98:16 99:21 103:17 107:8 113:7 113:11 130:16 132:4 134:13 140:9 147:23 154:9 155:1 169:9 176:20 179:9 203:7 204:9 205:2 208:24 209:10 211:6 211:10 | | **implement**(5) 22:2 30:2 30:8 30:9 178:8<br>**implementation**(1) 132:12<br>**implemented**(2) 21:16 28:8<br>**implementing**(1) 24:9<br>**implication**(1) 99:2<br>**implicit**(1) 101:24<br>**imply**(1) 70:21<br>**import**(1) 33:11<br>**importance**(2) 104:4 176:8<br>**important**(15) 53:15 57:22 58:8 83:3 83:5 90:1 94:21 104:16 132:3 132:7 142:2 148:11 149:19 150:2 163:20 |
| **hearing**(21) 14:16 21:4 21:25 40:15 51:6 51:7 51:23 54:16 61:2 104:15 144:22 146:13 155:24 161:9 161:11 163:23 164:2 172:15 199:22 211:19 212:1 | | **holding**(6) 64:13 135:25 157:24 158:4 170:4 173:13 | | | | **importantly**(4) 92:3 120:21 122:13 130:9<br>**impose**(2) 92:11 192:9<br>**imposes**(1) 179:3<br>**impotent**(1) 177:24 |
| **hearings**(5) 15:19 34:9 67:8 82:20 208:14 | | **holdings**(4) 72:16 72:17 72:23 158:15<br>**holds**(3) 125:21 125:22 193:10<br>**holiday**(1) 202:3<br>**holidays**(2) 203:15 211:20 | | **howard**(1) 3:36 | | **impression**(2) 200:10 206:15<br>**improper**(2) 127:1 129:9 |
| **heart**(1) 131:5<br>**heavens**(1) 104:25<br>**heavily**(1) 83:9 | | **homes**(1) 101:8 | | **however**(14) 15:19 17:5 32:10 33:21 35:11 66:7 68:7 71:17 119:20 155:16 157:14 158:16 160:15 186:9 | | **improperly**(3) 126:4 127:22 131:11<br>**improve**(1) 36:19<br>**improved**(1) 77:21 |
| **hedge**(1) 118:22 | | **honest**(1) 106:2 | | | | **improvement**(1) 77:25 |
| **hedging**(4) 110:3 118:1 118:8 121:2 | | **honestly**(1) 174:23 | | **huge**(5) 55:7 188:5 189:24 190:2 193:2 | | **imputed**(1) 149:1 |
| **heels**(2) 162:22 162:23 | | **honor**(301) 12:3 12:4 12:6 12:14 12:24 | | **humor**(1) 210:19 | | **in-depth**(1) 46:4 |
| **held**(24) 25:6 25:19 28:7 28:10 35:25 66:7 70:12 70:20 70:22 71:3 75:5 97:23 142:8 142:13 143:21 156:3 159:9 160:4 160:8 161:2 188:8 193:10 193:19 194:15 | | 13:3 13:6 13:17 14:3 14:3 14:12 15:14 16:8 16:13 17:15 17:22 18:15 19:4 19:11 19:18 19:19 19:21 20:6 20:10 20:15 20:17 20:25 21:10 23:3 25:4 25:21 26:9 26:15 26:20 27:6 27:16 28:2 28:21 29:18 30:23 31:3 32:8 32:10 32:24 33:7 33:13 34:2 34:3 34:6 34:15 34:19 34:20 35:4 35:7 35:9 35:13 35:16 35:18 36:1 36:5 36:10 36:12 36:19 36:23 36:24 37:1 37:16 38:8 39:4 39:8 39:10 40:5 41:19 42:3 44:2 45:8 45:20 45:21 45:23 47:13 48:2 49:8 49:20 50:23 51:4 51:13 51:16 52:9 53:7 53:11 53:13 53:23 54:9 54:20 56:14 56:16 57:6 57:22 58:24 59:9 59:23 60:10 60:11 60:16 60:19 62:1 62:5 62:7 62:22 63:20 64:4 64:14 64:21 65:3 65:3 65:21 66:1 66:22 67:4 67:5 67:14 67:20 67:25 68:5 68:7 68:25 69:5 69:13 69:18 70:17 71:1 71:4 71:6 71:8 71:11 71:22 72:5 72:10 72:13 72:14 73:6 73:25 74:11 74:16 74:2 75:7 75:18 75:21 76:3 76:5 76:9 76:20 77:1 77:9 77:20 78:3 78:8 78:9 78:19 78:19 78:24 79:1 79:25 80:1 80:16 80:23 81:14 82:12 82:18 82:21 83:7 83:13 83:20 83:21 84:18 85:8 90:18 90:20 90:23 91:2 93:13 94:14 95:16 95:23 96:4 96:12 96:21 96:25 97:7 97:11 99:17 100:19 102:7 103:11 103:19 104:7 104:12 104:16 105:5 105:7 107:21 108:11 109:3 109:5 109:18 109:21 109:23 110:17 112:14 112:22 115:2 115:9 115:17 115:23 116:16 116:21 118:2 124:14 126:1 126:14 126:18 126:22 126:2 127:3 127:15 128:3 129:16 131:1 131:3 131:8 131:17 133:4 133:21 133:3 135:12 135:14 135:23 136:3 136:14 137:7 137:18 138:3 139:8 139:13 140:3 140:19 140:25 141:4 141:24 142:11 142:17 143:13 143:18 144:23 145:9 146:8 147:9 147:22 150:17 152:20 154:1 154:12 154:16 155:1 159:5 161:3 165:1 165:3 165:6 165:18 165:22 165:24 166:2 167:3 167:18 167:25 172:12 173:20 174:15 174:23 175:1 175:1 177:25 178:6 178:19 178:22 179:7 179:13 179:17 179:19 179:22 180:8 181:21 182:2 184:21 185:5 185:18 186:9 186:20 | | **howard**(1) 3:36<br>**hundred**(1) 50:10<br>**hundreds**(6) 48:2 61:8 75:4 75:5 80:7<br>**hutz**(2) 5:5 211:1<br>**hypothetical**(2) 117:24 194:4<br>**i'd**(10) 20:18 46:16 67:14 77:17 97:11 108:12 108:23 117:17 119:15 119:23 | | **inappropriately**(1) 91:1<br>**inc**(3) 9:34 157:22 162:10<br>**incentive**(2) 96:14 130:6<br>**inception**(1) 196:17<br>**incidentally**(1) 41:13<br>**include**(5) 52:16 65:16 96:15 140:25 164:5 86:23 164:6 179:14 |
| **help**(3) 86:13 137:14 141:9 | | | | **i'll**(18) 24:8 49:20 52:9 59:19 62:23 63:21 64:18 64:24 67:10 85:10 109:9 116:3 116:23 120:17 122:10 127:4 132:3 147:22 | | **includes**(1) 122:22 |
| **helpful**(19) 31:5 31:17 31:21 33:4 63:25 84:1 84:4 85:6 86:17 87:3 134:17 203:19 207:6 207:9 207:18 207:22 208:5 208:16 208:25 | | | | **i'm**(48) 13:15 13:25 20:11 21:7 32:2 35:14 47:16 48:8 48:8 49:7 53:7 53:14 53:22 54:3 56:22 63:19 64:13 67:15 72:10 72:2 74:1 77:18 83:15 84:2 93:23 94:20 95:23 96:18 96:19 98:18 99:11 103:25 104:17 109:15 109:18 116:6 126:18 126:18 128:7 131:16 132:6 132:15 133:9 135:17 142:12 143:8 147:17 147:25 | | **including**(10) 46:1 91:8 91:18 112:10 122:2 127:19 150:19 156:10 179:10 186:18 |
| **helps**(2) 202:17 208:6 | | | | | | **inconsistency**(1) 105:14 |
| **hence**(1) 194:25 | | | | **i've**(4) 33:18 120:18 173:20 174:7 174:20 174:21 174:22 176:15 176:16 177:21 188:4 188:10 | | **inconsistent**(12) 98:8 120:18 173:20 174:7 174:20 174:21 174:22 176:15 176:16 177:21 188:4 188:10 |
| **henderson**(1) 6:32 | | | | **idea**(3) 50:5 201:1 201:8<br>**ideas**(1) 107:10 | | |
| **her**(4) 46:3 46:17 48:25 158:15 | | | | **identified**(3) 82:13 142:5 147:13<br>**identify**(2) 67:22 98:2<br>**identity**(6) 39:18 42:20 42:25 46:22 48:16 195:8 | | **incorporate**(4) 28:3 38:17 87:17 186:14<br>**incorporated**(3) 21:3 28:24 76:6<br>**incorporating**(1) 122:5<br>**incorporation**(6) 22:5 29:2 29:4 29:6 29:11 29:13 |
| **hercules**(1) 2:24 | | | | | | |
| **here**(40) 20:22 32:9 47:3 47:12 47:22 48:18 49:1 49:7 50:3 50:19 50:23 52:16 58:2 58:5 58:9 58:12 59:1 60:10 60:23 65:6 66:3 69:4 69:16 70:25 72:5 76:15 79:7 80:9 83:24 94:24 101:14 101:24 103:21 104:5 108:14 112:22 117:17 119:1 120:10 131:5 132:16 136:25 141:7 143:21 144:7 145:2 146:5 148:12 160:1 163:16 165:4 166:2 168:8 176:10 176:24 186:6 187:10 187:23 198:17 203:16 | | | | **idr**(1) 100:14<br>**ignore**(1) 36:10<br>**ignored**(1) 121:24<br>**ignores**(1) 123:1<br>**ignoring**(1) 183:22<br>**illusory**(1) 34:5<br>**illustrates**(1) 34:4<br>**illustrative**(2) 24:18 27:3 | | **incorrect**(1) 196:9<br>**increase**(5) 16:3 16:5 30:18 36:8 132:17<br>**indeed**(4) 19:17 57:3 183:12 190:10<br>**indemnification**(14) 42:23 42:23 43:2 43:5 54:25 55:17 56:19 58:6 60:3 60:13 60:21 61:20 102:10 102:12 |
| **hey**(1) 61:3 | | | | | | |
| **high**(6) 19:4 23:1 26:12 26:13 31:21 192:4 | | | | **immaterial**(1) 135:7<br>**immediately**(3) 13:9 121:25 210:7 | | **indemnified**(1) 29:14<br>**indemnity**(1) 133:2 |
| **higher**(14) 15:1 15:16 16:2 22:18 23:2 23:3 24:18 28:12 36:17 136:18 181:1 181:8 191:5 197:5 | | | | **impact**(7) 35:19 57:15 73:8 74:4 89:15 189:1 189:4 | | **indenture**(5) 99:12 105:24 106:7 127:10 131:24 |
| **highest**(1) 185:15 | | | | **impacted**(4) 44:16 44:21 45:7 45:12<br>**impacts**(1) 87:14<br>**impair**(3) 127:11 145:5 188:13<br>**impaired**(6) 74:23 155:8 155:9 155:10 155:18 155:21 156:8 156:9 157:11 158:7 158:2 159:1 159:12 159:22 160:9 161:7 161:13 161:14 162:20 164:3 166:13 168:2 172:6 174:15 175:11 179:4 | | **independent**(1) 172:19 |
| **highlight**(1) 16:14 | | | | | | **indicate**(1) 201:13 |
| **highlighted**(1) 33:4 | | | | | | **indicated**(3) 74:25 80:25 198:8 |
| **highly**(4) 128:25 151:10 163:11 193:11 | | | | | | **indicating**(1) 115:13 |
| **him**(5) 84:4 86:6 88:17 88:19 135:20 | | | | | | **indication**(1) 130:13 |
| **hinder**(2) 121:6 188:14 | | | | | | **indirectly**(1) 51:5 |
| **hinged**(2) 44:1 44:6 | | | | | | **indiscernible**(1) 191:23 |
| **hinges**(1) 134:4 | | | | | | **individual**(24) 16:24 54:2 54:3 54:14 54:19 55:8 55:12 57:9 58:23 60:7 62:13 69:15 72:1 72:15 72:16 72:20 74:16 91:19 92:4 183:23 184:2 184:12 184:13 194:11 |
| **hint**(1) 54:9 | | | | | | |
| **his**(29) 33:4 61:16 67:1 81:3 85:25 87:3 87:7 87:10 87:12 87:16 88:22 89:17 89:18 94:10 95:8 107:4 107:22 108:21 122:2 122:5 122:5 122:25 133:1 140:22 165:12 165:21 165:23 178:25 185:11 | | | | **honor's**(3) 96:20 97:4 142:12<br>**honorable**(1) 1:18<br>**honor's**(2) 173:2 173:3<br>**hope**(6) 78:11 106:16 107:15 136:8 165:16 195:16 | | **imperative**(1) 203:16<br>**imperial**(2) 100:15 101:8<br>**impermissible**(2) 41:11 170:16<br>**implacably**(1) 44:25 |
| **historical**(1) 86:18 | | | | | | |
| **history**(2) 156:17 156:20 | | | | | | |
| **hit**(1) 143:16 | | | | | | |
| **hobson**(1) 93:8 | | | | | | |
| **hobson's**(3) 92:15 94:7 94:11 | | | | | | |
| **hold**(3) 75:4 192:21 194:16 | | | | | | |
| **holder**(3) 111:13 115:6 125:9 | | **hopeful**(1) 136:22 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| individually(1) 178:10 | | interrupt(1) 77:18 | | its(44) 48:13 48:13 48:15 48:21 48:22 | | judge(37) 1:18 1:19 41:22 41:25 45:24 |
| individuals(4) 67:3 68:11 73:18 74:19 | | interrupted(1) 77:19 | | 48:23 48:23 49:1 49:1 49:5 49:5 55:6 | | 46:2 46:6 46:10 46:24 47:2 47:18 48:9 |
| induce(1) 141:11 | | intervening(1) 107:3 | | 58:25 65:11 66:18 79:11 79:16 79:24 | | 48:22 50:16 50:19 52:19 94:16 144:22 |
| indulge(3) 64:22 206:8 206:12 | | into(53) 21:25 23:17 26:2 26:5 28:3 33:12 | | 87:23 106:4 110:3 110:13 114:13 118:22 | | 144:24 157:10 158:5 158:6 158:11 158:17 |
| indulgence(3) 204:21 205:12 209:13 | | 33:18 37:5 38:17 42:9 53:21 54:17 54:22 | | 118:23 121:2 121:3 121:6 128:21 140:12 | | 158:20 159:5 159:17 160:3 160:7 162:25 |
| inequitably(1) 152:14 | | 55:19 61:4 64:23 71:22 73:14 76:6 76:8 | | 145:5 146:7 148:24 151:8 156:6 157:19 | | 163:11 169:10 169:13 172:21 173:9 179:10 |
| infirmities(1) 123:1 | | 76:12 80:11 80:19 92:7 92:22 94:8 96:14 | | 160:20 168:6 173:14 178:2 181:8 188:14 | | 203:9 |
| inflicted(1) 188:21 | | 103:22 109:7 110:3 110:5 118:24 123:13 | | 195:1 196:17 | | |
| influence(2) 32:2 32:3 | | 124:15 127:6 134:7 134:16 136:2 136:21 | | itself(9) 107:16 119:2 121:1 141:7 151:21 | | judgment(20) 55:5 55:6 57:10 58:11 58:15 |
| information(1) 185:6 | | 136:22 137:13 138:3 139:11 140:12 145:1 | | 169:8 174:10 174:21 199:19 | | 59:4 59:15 66:17 68:10 69:24 73:3 73:7 |
| inherent(1) 159:9 | | 145:24 150:13 154:18 161:5 166:19 168:5 | | | | 73:13 74:13 75:1 75:9 87:7 138:3 145:14 |
| inhibit(1) 141:12 | | 186:14 205:10 | | it'd(1) 165:14 | | 202:24 |
| initial(12) 22:10 26:21 40:8 132:7 136:7 | | | | it'll(2) 188:15 195:16 | | judgments(2) 73:18 137:15 |
| 177:18 177:19 180:17 181:12 181:18 | | introduced(1) 205:10 | | it's(42) 152:2 153:4 153:19 155:11 155:13 | | judicial(5) 145:3 153:22 163:23 173:21 |
| 200:10 206:14 | | introduction(1) 85:7 | | 155:14 155:22 158:8 160:19 163:23 164:11 | | 174:2 |
| | | investors(1) 9:30 | | 165:18 166:4 166:21 168:14 171:9 172:9 | | |
| initially(3) 45:13 128:11 201:3 | | invitation(2) 33:11 34:4 | | 173:13 174:2 174:6 176:15 177:7 187:16 | | july(2) 111:2 159:7 |
| injured(2) 140:1 140:6 | | invite(2) 173:1 173:3 | | 187:17 188:3 188:9 189:16 190:9 192:25 | | jump(2) 85:11 134:20 |
| innocent(2) 111:24 115:7 | | inviting(1) 38:22 | | 194:20 195:4 195:12 197:20 198:12 199:6 | | june(6) 53:22 59:1 205:4 205:4 205:6 |
| innocuous(1) 111:12 | | invocation(1) 170:15 | | 200:8 202:21 202:21 203:2 203:16 206:3 | | 208:25 |
| input(2) 122:23 201:25 | | invoke(3) 149:15 176:11 177:9 | | 210:5 | | |
| inquired(1) 38:12 | | invoked(1) 178:14 | | | | junior(4) 33:19 33:24 145:21 145:21 |
| inquires(1) 45:5 | | invoking(1) 178:3 | | i'd(11) 157:7 173:1 173:3 174:23 175:23 | | jurisdiction(1) 90:7 |
| inquiry(1) 201:5 | | involve(2) 12:10 152:17 | | 179:7 181:21 184:4 184:21 192:19 202:22 | | jurisdictions(1) 175:17 |
| inserting(1) 54:17 | | involved(3) 112:10 112:11 125:18 | | | | jurisprudence(1) 166:4 |
| inside(1) 100:10 | | involves(3) 113:3 117:22 155:3 | | i'll(8) 155:22 172:11 174:16 175:1 178:22 | | jury(1) 56:1 |
| insider."(1) 156:11 | | involving(1) 127:1 | | 180:1 180:8 199:8 | | just(97) 14:1 14:5 17:22 21:8 22:8 23:18 |
| insight(1) 98:5 | | ipse(2) 172:8 178:3 | | | | 25:9 28:24 30:1 41:13 42:16 45:20 46:16 |
| insilco(1) 100:15 | | irrelevant(1) 125:6 | | i'm(33) 161:14 162:14 162:22 163:3 | | 47:13 52:9 54:9 61:22 62:25 66:1 69:20 |
| insolvent(5) 55:21 137:25 138:11 142:8 | | irrespective(1) 31:10 | | 163:23 165:16 165:17 166:12 166:16 | | 73:1 74:7 79:1 85:6 85:11 85:14 85:20 |
| 142:14 | | irrevocably(1) 54:24 | | 166:22 169:22 169:23 169:23 174:8 174:1 | | 86:16 87:9 87:24 88:3 89:21 90:3 90:6 |
| | | irs(3) 195:14 196:4 196:6 | | 175:5 175:23 176:15 190:19 198:5 197:7 | | 90:20 91:3 93:17 95:20 97:18 101:22 |
| instance(2) 147:5 147:6 | | isaac(1) 6:14 | | 198:21 199:7 199:25 200:3 202:12 202:14 | | 102:7 105:9 105:12 105:18 110:15 115:9 |
| instances(1) 39:6 | | isn't(6) 67:11 67:18 74:8 79:23 104:5 | | 202:19 206:8 207:17 209:2 209:6 211:5 | | 123:8 123:12 123:23 125:20 126:9 128:22 |
| instead(7) 14:21 15:22 25:15 55:3 55:18 | | 104:8 | | | | 129:17 131:20 132:18 133:1 134:11 139:13 |
| 66:9 182:19 | | isn't(3) 170:22 183:2 188:16 | | i've(5) 166:5 168:8 200:13 203:3 207:18 | | 146:12 153:20 160:19 162:14 162:23 |
| | | issue(81) 12:25 13:2 13:7 13:8 15:20 17:6 | | 208:2 209:3 | | 164:16 164:20 164:22 165:4 165:10 166:18 |
| instigator(1) 99:3 | | 23:17 29:19 29:23 30:4 31:7 31:1 32:22 | | | | 170:6 170:7 170:19 173:2 173:9 173:9 |
| institute(1) 51:9 | | 39:7 51:5 53:21 53:23 55:12 59:17 59:23 | | james(9) 1:24 1:25 2:15 3:37 4:6 12:4 | | 174:24 177:4 177:7 177:14 181:13 184:3 |
| instituted(2) 51:19 52:1 | | 61:2 62:4 62:7 62:15 67:2 74:1 74:3 74:5 | | 65:4 198:19 204:2 | | 184:6 194:7 195:16 200:23 202:17 202:23 |
| instructed(1) 198:10 | | 77:10 78:16 79:21 81:3 81:9 85:9 90:5 | | | | 203:21 204:23 206:8 209:8 209:13 209:19 |
| insufficient(1) 88:23 | | 99:13 100:25 103:9 105:3 109:7 112:24 | | jane(1) 8:13 | | 209:19 210:14 210:25 211:5 |
| insulated(1) 119:23 | | 115:13 121:12 134:4 135:17 135:23 146:9 | | janet(1) 6:32 | | |
| insurance(1) 29:15 | | 146:12 146:25 147:3 147:7 154:22 155:3 | | january(1) 45:24 | | justice(1) 185:10 |
| insure(1) 20:6 | | 155:4 158:12 158:16 158:18 161:11 161:1 | | jason(1) 7:39 | | justification(1) 69:6 |
| integral(1) 130:3 | | 161:17 161:19 161:20 163:25 164:1 164:5 | | jean-marie(1) 7:33 | | justified(2) 66:16 67:11 |
| intellectual(1) 158:21 | | 166:7 167:13 168:10 169:17 173:6 174:2 | | jefferies(2) 8:25 8:25 | | justify(7) 40:7 47:20 47:20 75:19 76:10 |
| intelligent(1) 109:13 | | 178:1 179:6 179:8 198:15 199:22 200:10 | | jenner(2) 4:41 9:4 | | 77:6 182:4 |
| intend(5) 18:7 19:12 52:16 95:8 201:16 | | 200:15 204:6 206:3 206:20 | | jennifer(1) 11:28 | | |
| intended(6) 47:16 54:9 65:10 65:25 121:6 | | | | jeopardize(1) 149:3 | | justin(1) 8:26 |
| 194:22 | | issued(3) 25:20 45:24 188:16 | | jersey(1) 134:21 | | justly(1) 95:10 |
| | | issues(29) 13:15 14:1 16:11 78:20 83:14 | | jessica(1) 5:27 | | kansa(4) 1:27 206:7 206:7 206:14 |
| intending(1) 48:6 | | 83:17 85:19 100:5 103:15 104:3 106:20 | | jim(5) 62:22 115:23 147:21 179:19 192:18 | | karen(1) 8:43 |
| intent(3) 80:1 152:2 196:13 | | 107:1 108:21 112:15 115:14 126:6 126:8 | | job(5) 43:19 52:11 96:9 97:2 98:4 | | kasowitz(1) 10:4 |
| intention(4) 16:18 99:18 103:20 105:20 | | 135:22 176:22 199:18 201:15 202:16 | | jobs(1) 68:14 | | katharine(1) 4:20 |
| intentional(13) 17:3 17:12 41:9 114:14 | | 204:13 204:24 205:16 208:13 208:14 | | john(1) 10:26 | | katten(1) 10:25 |
| 114:16 115:19 120:16 120:22 127:15 137: | | 209:17 209:25 | | johnston(22) 2:15 115:23 115:24 120:13 | | kavalis(1) 8:35 |
| 138:12 152:1 173:11 | | | | 147:21 147:21 148:10 151:25 153:4 153:2 | | kaye(2) 8:8 8:22 |
| | | it's(97) 15:6 15:8 22:13 22:15 22:17 22:22 | | 179:19 179:20 180:4 186:5 186:12 186:22 | | keep(4) 121:8 150:5 187:11 202:22 |
| intentionally(2) 121:1 172:25 | | 22:25 23:7 24:17 25:13 25:9 29:4 31:7 | | 192:18 192:18 196:12 197:3 197:17 210:5 | | keeping(2) 37:11 90:21 |
| interest(39) 39:18 40:3 40:3 42:20 43:1 46:23 | | 32:16 38:2 38:23 38:24 41:13 42:13 42:1 | | | | ken(2) 1:27 206:7 |
| 48:17 63:18 66:18 91:23 94:9 98:9 98:18 | | 45:14 45:15 49:8 51:4 51:23 52:15 52:15 | | | | kenneth(1) 10:16 |
| 98:19 98:23 102:5 102:17 105:17 105:22 | | 53:17 56:4 60:19 60:23 61:13 63:20 73:3 | | | | kenney(1) 6:33 |
| 110:4 110:7 113:4 117:16 117:21 117:24 | | 73:19 77:24 79:15 79:16 79:18 80:2 80:25 | | johnston's(1) 196:3 | | kevin(3) 1:18 1:26 72:13 |
| 118:2 118:6 118:8 118:21 118:23 121:2 | | 81:1 81:4 82:5 87:11 87:12 89:20 90:21 | | join(4) 61:17 74:12 115:14 210:10 | | key(4) 137:19 148:12 152:15 183:12 |
| 130:10 139:17 144:16 144:19 147:11 154:7 | | 91:23 95:19 98:7 103:3 104:2 107:9 108:2 | | joined(2) 56:12 111:4 | | kick(2) 146:12 154:1 |
| 179:6 179:25 193:5 | | 111:21 113:10 113:11 114:11 114:22 115:2 | | joining(1) 116:13 | | kicked(1) 173:3 |
| | | 116:11 117:5 120:24 121:9 121:12 123:12 | | joint(10) 155:4 155:7 157:6 157:11 157:13 | | kicking(1) 154:9 |
| interested(1) 8:42 | | 123:19 123:20 125:6 125:14 127:17 128:2 | | 158:25 159:2 159:25 160:9 201:11 | | kim(1) 7:23 |
| interesting(8) 46:6 113:6 155:16 155:17 | | 129:21 132:18 133:5 134:17 134:17 | | | | kind(8) 56:5 80:17 94:25 121:23 143:8 |
| 161:5 161:16 162:18 194:21 | | 134:19 134:20 135:7 136:8 139:18 143:25 | | jointly(1) 168:16 | | 145:2 174:3 198:12 |
| | | 144:23 145:2 146:23 147:12 147:14 147:2 | | jonathan(1) 8:11 | | |
| interestingly(1) 135:21 | | 148:11 148:16 148:17 149:18 149:18 | | jones(4) 2:36 11:4 11:4 11:17 | | kinder(1) 96:10 |
| interests(6) 49:18 102:18 102:21 163:7 | | 150:2 151:2 | | jordan(1) 8:22 | | kinds(2) 51:12 69:13 |
| 163:10 174:14 | | | | joseph(1) 10:42 | | king(4) 2:44 3:17 4:22 187:22 |
| | | item(3) 44:13 51:4 179:12 | | josh(1) 2:16 | | kira(1) 6:18 |
| international(3) 110:6 160:8 160:14 | | items(2) 22:24 108:12 | | joshua(1) 11:24 | | klauder(1) 2:43 |
| interpretation(1) 89:12 | | iteration(1) 189:15 | | joy(1) 210:22 | | klee(1) 122:8 |
| interpretations(1) 64:15 | | | | jpm(4) 42:6 46:19 52:18 99:1 | | knock(1) 28:9 |
| | | | | jpmorgan(1) 153:10 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**know**(86) 14:2 23:11 50:8 50:8 50:9 53:24 59:8 59:23 60:14 61:12 62:1 62:8 63:20 64:12 68:18 69:23 72:4 72:6 72:12 72:15 72:16 72:19 72:21 72:22 73:3 74:19 75:3 78:25 80:12 96:13 98:14 98:17 102:13 103:23 104:17 104:24 107:8 107:14 108:2 108:6 114:15 114:18 125:5 134:19 136:7 136:10 136:15 137:2 137:17 138:19 139:2 139:22 140:21 142:17 144:22 144:23 146:10 147:9 153:14 153:15 158:15 164:2 164:21 165:17 172:18 174:2 175:1 180:16 185:23 189:13 195:6 195:15 198:1 198:8 200:19 201:1 201:4 201:6 202:10 202:12 202:12 202:20 202:21 203:1 205:1 209:11
**knowable**(1) 72:14
**knowing**(2) 68:14 69:8
**knowledge**(1) 120:19
**known**(1) 111:11
**knows**(3) 19:7 67:16 136:3
**kohr**(1) 212:9
**korpus**(1) 10:6
**krakauer**(1) 6:41
**kramer**(1) 8:20
**labeled**(1) 52:23
**lacking**(1) 159:22
**lafferty**(1) 143:17
**lagrone**(1) 60:18
**laid**(1) 65:13
**lake**(1) 140:11
**lance**(1) 7:43
**landis**(3) 3:27 3:29 5:40
**landlords**(1) 120:10
**language**(16) 65:24 71:11 79:5 156:3 156:5 156:7 156:13 156:14 156:15 156:17 156:23 159:9 161:4 177:15 177:24 178:2
**lantry**(8) 1:26 72:11 72:13 73:6 73:13 74:12 74:25 161:19
**large**(9) 72:18 75:4 131:18 132:19 137:8 168:16 188:12 192:20 203:13
**largely**(1) 111:1
**larger**(2) 59:2 199:11
**last**(19) 22:1 40:15 51:4 63:21 67:24 77:9 81:16 82:19 115:9 116:6 118:13 126:15 154:16 155:3 168:8 179:12 183:7 183:21 190:10
**latch**(1) 121:20
**late**(1) 86:1
**lately**(2) 207:13 207:25
**later**(12) 24:9 32:14 32:23 65:14 70:2 88:9 125:20 126:9 133:18 147:7 170:10 198:14
**latham**(1) 7:38
**laughter**(24) 19:16 42:15 46:15 64:7 64:17 68:22 68:24 69:2 78:1 86:5 105:1 120:12 126:13 136:9 136:13 140:15 143:10 154:2 165:5 165:19 166:23 167:5 209:5 210:21
**launch**(1) 64:23
**lauren**(1) 2:37
**laurie**(1) 2:22
**law**(68) 10:4 16:21 16:22 17:10 40:13 40:15 40:23 47:24 53:19 54:1 54:18 55:16 55:22 56:25 59:10 60:20 60:22 61:24 62:12 62:18 81:7 83:22 84:16 85:21 85:23 86:10 86:20 86:24 87:14 87:18 87:19 88:3 88:14 88:17 88:19 89:3 89:12 91:20 92:4 92:10 93:9 95:14 112:18 115:12 120:20 129:22 130:25 131:15 139:21 139:23 143:18 156:24 157:1 158:14 164:23 170:1 172:19 174:2 177:4 178:2 182:10 196:4 197:13 203:23 206:22 208:11 208:12
**laws**(2) 193:13 197:15
**lawyer**(3) 195:3 196:7 196:10
**lawyers**(2) 174:5 174:7

**law's**(1) 168:15
**lay**(1) 131:16
**layton**(1) 3:14
**lazard**(1) 15:4
**lbo**(53) 22:12 22:21 23:10 23:11 23:14 24:1 24:4 24:10 26:6 27:4 33:18 33:24 34:10 35:25 36:11 55:1 67:2 67:12 70:7 75:6 91:4 91:5 99:4 110:1 111:5 111:25 117:13 121:18 124:25 125:3 125:17 125:1 125:19 130:1 130:11 135:25 137:24 138:5 140:1 140:23 141:5 142:23 143:6 145:12 148:18 148:21 148:22 148:25 149:1 149:2 149:3 149:4 186:18
**lead**(2) 81:25 148:16
**leading**(1) 90:7
**leads**(1) 79:14
**learning**(1) 166:21
**least**(17) 11:18 45:13 84:5 98:1 113:17 115:10 118:24 123:21 123:23 151:23 151:25 156:9 176:16 190:11 202:20 202:2 205:15
**leave**(8) 32:12 34:23 36:16 63:10 154:2 175:1 175:14 187:24
**leaves**(1) 103:20
**lebeouf**(1) 2:13
**lebeouf**(1) 115:24
**led**(1) 140:10
**lee**(1) 110:14
**legal**(19) 84:7 84:10 84:15 84:22 87:13 93:21 93:24 95:1 133:22 135:3 154:16 154:19 161:5 162:9 174:6 178:4 198:23 199:2 200:4
**legally**(1) 42:2
**legislative**(2) 156:16 156:20
**legitimate**(3) 94:25 128:18 189:23
**legrown**(1) 89:18
**lemay**(40) 3:35 93:13 93:14 95:18 95:23 96:3 96:23 97:7 105:7 105:7 107:21 108:11 109:17 131:3 131:3 140:9 140:19 160:18 165:3 165:6 165:6 165:20 165:22 166:2 166:14 166:16 166:18 166:21 166:2 167:1 167:2 167:6 173:23 175:7 178:24 179:9 184:4 184:8 191:10 192:1
**lender**(18) 18:4 19:7 19:10 30:15 33:11 34:13 79:14 88:4 110:8 121:18 125:17 125:18 141:1 142:23 145:12 152:7 187:15 193:11
**lender's**(2) 115:15 149:13
**lenders**(19) 9:8 14:22 15:9 15:12 17:25 18:2 18:8 18:14 19:1 21:19 21:22 21:23 23:10 23:11 24:10 24:25 25:3 26:6 26:21 27:5 27:13 28:4 28:13 28:15 30:7 31:7 31:7 31:10 32:19 33:16 33:16 33:19 33:21 33:22 33:24 35:24 36:15 36:22 38:11 38:13 38:20 38:21 39:2 42:1 42:5 42:5 42:12 42:13 46:18 46:18 52:17 52:17 55:1 60:9 61:18 63:11 63:12 63:13 63:15 64:1 79:6 80:9 81:20 82:15 88:4 88:7 88:10 91:4 91:5 91:14 92:9 92:19 111:4 111:6 125:16 129:25 130:1 130:5 130:9 130:24 133:15 135:25 136:19 137:4 137:21 138:1 139:4 141:7 141:9 141:21 143:6 144:6 144:19 144:24 145:16 146:2 146:18 147:1 147:4 148:8 148:14 148:18 148:21 149:2 149:3 149:4 149:11 150:7 150:11 151:9 151:13 180:12 181:16 181:21 182:25 183:14 183:16 186:18 187:4 187:9 187:16 187:20 189:1 189:6 189:10 189:22 190:3 190:5 192:7 194:2 198:3 198:7
**lenders'**(1) 189:3
**length**(2) 86:15 117:14
**lengthy**(1) 61:15

**leonard**(1) 1:33
**less**(15) 13:20 36:18 48:14 55:9 68:19 73:18 75:3 106:21 125:1 181:25 185:18 186:16 202:21 208:5 209:24
**less-than-complete**(1) 185:7
**lessen**(1) 189:2
**lessens**(1) 188:20
**let**(43) 14:12 17:21 31:3 47:13 47:21 56:23 57:5 60:1 60:3 63:20 65:5 66:1 66:22 67:1 70:8 70:10 75:21 76:14 80:23 85:10 85:14 86:18 89:7 89:10 90:6 94:12 123:15 131:15 134:16 139:19 139:25 140:1 141:25 146:13 154:14 162:23 166:10 188:10 200:25 205:17 207:23 209:15
**let's**(4) 15:23 41:19 110:24 125:18
**letter**(5) 13:6 13:11 179:24 195:13 197:18
**let's**(3) 156:1 203:11 211:9
**level**(11) 34:15 44:20 110:20 111:10 111:12 111:17 193:17 197:3 197:6 197:11 207:9
**levels**(2) 45:11 103:24
**leverage**(1) 144:11
**leveraged**(6) 70:14 71:13 71:15 71:22 76:12 77:7
**levin**(1) 8:20
**levy**(2) 6:22 70:24
**lewis**(1) 8:38
**lexi**(1) 9:27
**lexington**(1) 3:10
**lexus**(2) 157:8 159:6
**liabilities**(2) 180:15 183:22
**liability**(24) 55:6 56:4 56:8 58:21 60:13 70:4 70:5 75:18 80:2 87:5 87:25 88:8 88:11 88:12 89:14 90:16 117:9 117:10 117:15 117:25 118:7 139:5 149:18 184:2
**liang**(1) 10:16
**library**(1) 167:1
**lien**(1) 30:7
**life**(1) 84:11
**lift**(1) 198:4
**light**(8) 18:3 20:3 20:9 34:23 78:11 184:7 199:13 202:12
**lightly**(1) 197:14
**like**(66) 14:6 20:18 43:3 43:16 45:20 46:10 46:16 46:21 47:12 48:17 54:20 56:20 57:17 64:3 64:8 69:17 77:15 80:19 80:19 87:19 93:20 97:11 100:13 101:6 106:21 107:10 107:19 107:25 108:2 108:1 108:12 113:10 123:8 123:10 137:6 137:10 137:12 139:15 139:16 141:5 141:11 141:1 150:23 153:22 157:7 163:16 164:16 164:22 170:24 173:2 173:10 173:19 189:20 189:20 201:7 202:22 203:14 203:17 204:2 205:11 210:2
**liked**(1) 163:1
**likely**(17) 11:7 31:19 31:22 121:13 121:21 151:2 193:12
**likes**(1) 156:16
**likewise**(1) 29:11
**liking**(1) 87:11
**limitation**(1) 127:9
**limitations**(2) 51:1 51:21
**limited**(19) 18:7 29:13 52:12 53:14 67:9 71:12 71:14 71:25 74:19 75:7 76:1 80:25 81:1 81:8 81:12 82:10 120:6 197:9 202:5
**limiting**(1) 121:3
**line**(4) 73:21 116:21 145:20 164:13
**lines**(1) 133:9
**linger**(1) 171:1
**lion's**(1) 186:18
**liquidated**(1) 119:18

**liquidating**(4) 195:6 196:16 196:21 196:24
**list**(2) 126:8 202:19
**listen**(1) 56:2
**listened**(1) 84:8
**listening**(1) 199:9
**listing**(1) 103:12
**litigant**(3) 173:24 174:10 174:21
**litigants**(1) 174:5
**litigate**(3) 55:12 55:13 90:15
**litigated**(4) 62:15 160:20 163:25 164:1
**litigation**(116) 17:12 29:7 32:1 33:1 33:23 53:21 54:13 54:22 55:11 56:6 57:5 58:10 59:16 59:19 60:16 62:14 73:17 74:25 91:6 91:10 95:8 97:13 97:13 97:15 97:16 97:21 98:2 98:3 98:4 98:6 98:15 98:16 98:20 98:21 99:2 99:5 99:10 99:16 99:16 99:19 99:22 99:24 100:1 100:2 100:11 100:23 101:1 101:4 101:4 101:6 101:11 101:12 101:15 101:18 101:19 101:25 102:2 102:4 102:8 102:8 102:9 102:12 102:15 102:16 102:18 102:23 102:24 103:4 103:9 103:19 105:15 105:17 105:25 106:7 106:12 106:16 135:18 135:19 136:1 136:21 136:22 137:18 138:10 139:22 142:10 142:15 143:7 143:16 144:2 144:18 145:14 145:25 146:14 146:24 148:19 149:4 149:20 149:24 150:5 150:8 150:13 150:14 150:20 150:23 151:11 151:12 152:8 154:7 184:11 188:5 192:22 193:5 193:16 194:1 194:12 194:14 195:10
**litigations**(3) 55:20 100:7 100:19
**little**(36) 18:17 19:18 35:12 47:23 49:8 51:4 51:5 58:16 63:23 96:10 106:20 106:20 107:9 108:13 118:17 134:11 139:6 139:7 139:20 155:22 156:14 166:8 167:6 172:10 173:3 174:24 176:25 178:25 182:14 185:18 192:4 196:8 201:7 202:21 203:7
**live**(2) 32:4 32:4
**llc**(3) 5:19 127:10 132:8
**llp**(18) 1:23 2:31 3:34 5:5 5:24 5:34 5:40 7:22 7:30 7:38 7:42 8:8 8:21 8:38 8:42 9:4 10:25 11:16
**loan**(36) 12:25 21:17 26:5 27:20 28:4 28:15 28:19 29:25 91:12 100:3 100:4 100:9 108:1 108:16 110:1 110:4 110:9 110:10 110:19 111:10 112:5 112:6 112:8 112:10 112:12 113:2 113:10 113:16 117:22 118:1 118:4 118:4 118:24 118:25 117:3 150:9
**loaned**(4) 113:5 117:12 117:15 142:6
**loans**(8) 100:13 118:17 118:23 120:22 121:4 122:18 123:18 123:25
**lobby**(1) 120:11
**located**(1) 34:11
**locks**(1) 136:10
**lodge**(2) 5:5 211:1
**logically**(2) 188:3 188:10
**long**(8) 14:2 30:21 40:14 73:20 73:21 93:5 210:19 211:7
**longer**(6) 16:25 24:2 24:3 31:21 111:9 130:15
**look**(17) 37:20 58:3 90:2 119:1 138:7 140:8 143:5 144:24 144:25 156:16 156:22 156:23 156:24 162:13 172:21 178:25 207:8
**looked**(7) 101:18 121:12 157:24 157:24 158:19 162:25 202:18
**looking**(6) 133:9 158:12 165:18 170:8 197:19 207:16
**looks**(2) 14:6 79:2
**loom**(2) 100:14 101:7
**loose**(1) 184:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

los(1) 2:18

lose(3) 60:7 92:18 95:5

losquadro(1) 6:10

losses(1) 194:17

lost(2) 22:13 137:17

lot(8) 23:5 40:14 66:25 68:18 124:21 153:15 186:13 193:20

low(8) 22:25 26:12 26:13 34:14 107:12 138:18 139:1 185:13

lower(2) 23:1 23:2

lucky(1) 144:22

ludicrous(1) 120:24

lugano(1) 1:39

lumped(1) 111:11

lunch(1) 78:10

lynch(3) 2:21 8:8 136:25

lynn(1) 11:19

lyondell(10) 62:10 85:14 85:16 85:22 100:15 101:8 142:21 142:22 153:11 153:15

macquarie(2) 10:37 10:37

made(47) 20:1 20:6 21:5 23:24 25:11 34:24 37:4 39:22 43:15 44:12 51:14 59:8 63:24 69:20 85:13 87:2 87:10 88:11 89:8 102:18 105:10 108:14 110:22 111:18 116:10 118:14 118:18 119:9 119:19 121:5 122:14 124:12 126:9 141:23 146:5 152:23 153:13 154:1 172:11 182:1 187:3 189:23 192:12 199:12 200:8 202:15

madlyn(1) 8:9

main(1) 22:23

maintain(1) 130:6

maintained(1) 138:17

major(5) 37:2 37:17 57:20 103:8 176:22

majority(2) 44:14 133:14

make(50) 19:24 20:8 26:2 28:23 28:24 33:14 33:23 38:11 59:8 63:15 63:16 63:19 64:1 65:9 65:17 68:9 75:1 75:2 82:3 86:18 87:21 88:8 95:21 100:3 103:16 104:18 104:20 105:20 106:9 107:19 112:2 113:7 124:21 141:9 153:17 165:14 170:19 174:24 181:14 184:12 184:21 188:3 198:1 198:21 200:23 202:24 203:7 205:11 210:21 210:8

makes(10) 34:2 34:3 56:24 57:17 58:16 106:16 114:20 119:15 182:21 202:25

making(9) 27:8 43:9 43:11 51:12 99:25 112:5 114:22 126:9 186:5

managemen(14) 5:15 6:9 6:9 7:12 7:42 10:13 10:13 11:8 11:23 11:23 11:27 11:27

manner(5) 121:23 128:5 151:3 151:10

manufacturing(2) 100:14 101:7

many(16) 16:16 40:6 46:7 51:1 51:6 69:5 74:20 85:25 86:1 97:22 98:14 100:10 101:22 104:22 118:18 160:17

marc(3) 3:41 5:25 210:25

march(1) 21:1

marginal(1) 178:14

marino(1) 2:31

mark(2) 5:6 113:17

market(5) 1:11 2:25 3:30 118:25 119:1

marrero(1) 5:27

marsal(1) 9:34

martin(1) 3:22

massage(1) 103:15

massive(5) 84:23 171:2 171:24 178:17 195:18

massively(1) 171:12

master(2) 110:6 117:5

material(11) 17:16 19:6 29:25 30:20 30:20 129:5 134:7 137:11 138:4 143:22 192:1

materiality(2) 134:5 135:6

materially(2) 74:21 192:10

math(4) 128:13 129:6 129:17 139:10

mathematical(1) 129:6

matter(20) 23:4 23:12 27:21 40:8 54:6 54:16 55:2 85:22 130:25 134:1 134:9 135:4 158:22 179:9 181:12 182:15 182:16 183:5 193:20 212:5

matters(2) 33:3 154:24

matthew(4) 5:41 7:13 9:34 9:35

mauceri(1) 8:39

maximize(2) 25:18 186:17

maximized(1) 51:15

maximum(1) 184:11

may(63) 12:11 12:13 14:6 16:2 18:25 20:12 20:23 22:8 30:19 46:25 51:6 54:25 55:22 57:11 59:1 59:3 59:4 60:14 60:14 61:22 62:9 62:10 63:23 64:12 66:16 68:2 87:10 108:7 110:17 112:3 112:19 113:14 113:21 113:25 114:17 114:17 114:23 114:23 119:8 126:5 126:12 141:18 144:5 146:8 146:17 149:1 151:2 152:14 154:25 161:10 165:3 179:23 185:20 189:11 195:1 198:16 199:19 201:14 201:16 201:19 207:1 208:7 209:12

maybe(19) 19:18 39:2 64:5 68:23 86:3 103:15 103:16 105:9 136:10 155:24 175:4 175:5 185:18 191:12 201:11 201:23 202:1 202:20 202:21

mayer(2) 4:20 7:30

mccarter(2) 4:19 10:41

mccolm(1) 6:26

mccormack(1) 3:39

mccormick(1) 10:23

mcguire(1) 5:41

mcneill(1) 2:23

me."(1) 158:22

mean(12) 47:14 103:23 108:12 114:4 122:22 138:5 173:15 173:16 176:6 193:13 201:1 202:17

meaning(6) 56:2 143:24 159:18 159:19 179:11 187:13

means(3) 53:1 121:22 193:13

meant(2) 92:1 92:6

medic(7) 157:22 158:4 160:13 172:21 173:1 173:12 173:13

meet(1) 155:15

meisel(1) 1:32

member(2) 99:1 99:1

members(27) 47:22 48:7 48:13 48:21 48:23 49:1 49:5 52:21 98:3 98:5 98:7 98:9 98:12 98:17 98:18 98:22 98:22 99:8 99:10 99:22 105:15 105:16 105:18 105:22 106:4 106:5 106:7

memorandum(3) 47:24 115:12 129:22

mention(2) 37:7 95:2

mentioned(13) 29:21 37:16 50:3 132:23 133:24 134:15 156:12 156:15 161:8 163:1 175:22 184:8 191:21

mere(3) 152:23 177:14 197:10

merger(1) 61:5

meridian(1) 101:8

merit(2) 89:25 90:17

merits(1) 116:14

merrill(3) 2:21 8:8 136:25

message(1) 176:7

mester(1) 2:16

met(1) 66:21

metaphor(2) 140:9 140:22

michael(3) 3:8 7:5 7:35

michelle(2) 2:31 9:14

middle(3) 81:17 157:9 175:24

might(30) 64:15 68:9 69:6 88:21 93:22 95:19 95:25 97:2 98:5 103:14 103:7 104:23 136:21 137:12 141:9 142:19 144:1 145:4 145:17 145:20 145:21 175:13 197:2 204:8 204:9 204:24 207:5 207:8 208:5 209:9

might've(1) 176:3

mike(1) 8:5

million(45) 27:24 73:3 76:4 76:9 77:3 91:9 91:11 92:21 92:22 95:4 95:6 100:3 100:6 103:5 108:1 108:2 108:3 108:3 108:16 108:17 109:24 110:16 111:3 111:21 111:22 129:10 129:13 129:14 137:3 137:6 138:20 138:22 147:5 150:5 150:9 182:7 183:17 185:20 185:25 186:2 186:5 186:13 194:5 194:7 202:20

millions(8) 50:11 61:8 73:5 75:4 75:5 80:7 81:21 183:17

mina(2) 9:30 9:31

mind(2) 74:15 85:2

minded(2) 18:21 109:14

mine(1) 84:4

mini(1) 38:5

minimis(1) 169:6

minimize(1) 104:4

minimum(2) 24:25 115:1

minimus(1) 134:10

minkove(1) 7:27

minor(2) 105:14 170:9

minute(5) 52:9 64:22 126:18 147:17

minutes(8) 40:20 45:21 46:17 77:17 77:23 85:11 128:23 203:17

misapplication(2) 129:8 134:13

misconduct(2) 152:15 152:23

mislead(1) 158:9

misleading(2) 172:25 173:11

misnomer(1) 151:22

misses(1) 113:17

missing(1) 96:19

misspoke(1) 76:20

mistake(1) 58:16

mistaken(1) 65:7

mix(2) 145:22 192:25

mixed(1) 176:18

mixing(1) 140:16

modeling(1) 122:6

modification(4) 25:11 27:8 30:1 30:2

modifications(12) 12:10 12:21 16:4 17:7 21:8 21:10 21:15 28:5 29:3 30:2 30:24 192:12

modified(4) 40:22 41:14 103:1 158:18

modify(3) 26:3 26:10 186:11

moment(16) 32:11 66:1 73:2 79:8 116:23 133:7 148:11 150:3 157:3 165:3 169:1 203:21 204:23 206:8 206:16 209:13

moments(4) 29:22 37:23 38:7 90:3

mondave(1) 15:4

monday(3) 32:8 200:22 202:4

money(20) 15:6 50:5 50:6 63:10 80:6 104:3 108:12 113:5 115:19 117:12 117:15 123:12 131:9 135:23 135:23 139:8 141:9 142:7 147:3 189:19

montana(1) 142:12

montenegro(1) 10:8

month(3) 40:15 107:3 117:7

months(6) 34:7 34:8 86:22 103:13 104:8 110:24

mooted(1) 173:8

moots(2) 16:8 33:5

moral(1) 141:13

morale(2) 73:9 75:15

more(75) 13:4 13:20 15:6 15:8 15:12 21:16 24:10 25:21 26:25 27:4 31:19 36:1 36:9 36:12 36:17 36:21 38:18 38:21 40:20 43:6 43:7 44:10 49:21 52:9 56:16 57:22 63:16 70:4 71:19 82:25 84:23 84:24 85:10 90:11 94:12 94:15 94:24 100:16 104:23 106:20 106:24 113:13 116:17 120:21 122:13 122:17 126:18 134:25 137:6 141:5 141:6 141:11 146:22 158:21 164:5 171:3 173:1 180:12 181:23 183:11 185:23 186:1 186:13 186:16 186:17 189:8 189:12 189:13 189:18 194:6 194:23 197:17 197:20 202:21 206:3

morgan(14) 3:4 7:22 7:26 8:38 53:3 79:17 79:23 80:9 81:11 83:23 106:11 137:1 142:21 142:22

morning(19) 12:2 12:3 12:9 20:15 35:4 36:24 37:7 53:11 62:22 78:13 92:3 180:22 187:2 188:1 188:18 199:14 203:6 204:14 204:17

mortel(1) 60:18

moskowitz(10) 3:5 57:3 57:16 57:24 58:19 62:24 83:16 83:21 83:22 86:6

moskowitz's(1) 61:14

most(26) 13:1 14:13 16:15 17:7 39:5 40:1 58:8 85:2 91:16 92:3 97:18 99:20 104:15 111:14 121:25 129:21 130:8 130:8 142:2 181:5 182:7 185:21 207:6 207:11 207:22 208:16

motion(13) 16:20 18:12 18:19 19:12 19:21 51:8 51:13 51:14 147:10 153:14 153:16 199:18 200:21

mounted(3) 141:19 143:24 143:25

mouth(2) 37:20 189:19

mouthpieces(1) 174:5

move(1) 203:6

moved(1) 118:6

moving(2) 86:7 202:22

much(31) 15:6 22:24 25:6 25:16 26:5 26:8 27:14 33:9 33:9 34:3 36:12 48:9 50:5 50:5 52:22 64:25 84:2 97:4 109:7 109:23 134:13 172:14 172:22 174:15 176:18 181:1 190:20 200:12 203:7 208:24 211:18

muchin(1) 10:25

mulhern(1) 7:43

multi(1) 160:9

multi-party(4) 57:4 58:10 59:16 59:19

multiparty(1) 84:12

multiple(5) 155:5 159:25 174:16

murky(1) 112:18

murphy(1) 9:21

must(11) 104:20 121:22 135:11 148:18 148:23 155:8 157:11 177:16 177:16 178:9 183:8

mutual(14) 41:23 43:5 43:17 45:23 45:25 46:7 46:12 46:21 47:12 48:11 48:18 50:17 94:15 94:18

myers(1) 11:16

myriad(1) 122:19

myrick(1) 6:35

myself(3) 166:22 173:3 202:19

mystifying(1) 125:8

n.j(1) 160:11

naftalis(1) 8:20

naked(1) 43:5

named(1) 101:22

names(1) 51:12

nancy(1) 7:19

narrow(1) 63:1

narrows(2) 16:10 17:18

nation(1) 86:9

national(1) 101:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **natural**(5) 128:6 128:8 128:12 150:10 181:17 | | **non-marginal**(1) 177:11 | | **noteholder**(95) 12:7 13:5 13:11 13:13 20:17 20:25 21:7 24:15 24:16 25:12 25:18 26:11 33:12 34:21 35:6 36:7 37:1 44:4 44:7 53:13 90:23 91:15 97:10 97:12 102:22 109:20 109:21 112:23 126:4 126:7 126:23 132:9 132:17 135:16 154:4 154:4 154:14 154:17 154:20 155:11 155:15 156:12 156:24 157:4 157:21 160:1 162:3 162:4 162:5 162:7 162:7 164:6 164:15 165:9 166:10 171:9 171:11 171:13 171:14 171:23 172:6 175:12 179:23 180:5 180:17 181:10 182:8 183:3 183:15 183:23 184:3 184:20 187:1 187:8 187:13 188:4 188:19 188:21 188:24 190:13 190:18 192:21 194:19 194:20 195:8 195:22 196:2 196:18 197:22 198:24 200:11 200:17 201:17 209:21 | | **number**(27) 28:12 36:9 66:7 66:20 68:11 71:17 72:7 72:14 84:2 90:12 91:18 91:25 101:5 103:24 116:9 118:16 122:4 138:16 141:4 153:18 169:14 175:16 180:9 185:6 202:15 203:13 208:18 | |
| | | **non-operating**(1) 167:16 | | | | | |
| | | **non-settled**(1) 88:2 | | | | | |
| **naturally**(1) 112:14 | | **non-settling**(1) 58:5 | | | | | |
| **nature**(10) 72:24 113:3 113:22 114:1 114:24 116:11 117:9 118:8 187:10 206:3 | | **non-voting**(1) 177:11 | | | | **numbers**(1) 20:19 | |
| | | **none**(8) 15:9 20:4 20:14 50:14 56:8 70:23 149:11 160:25 | | | | **numerous**(1) 125:25 | |
| **near**(2) 94:1 100:6 | | | | | | **nutshell**(1) 96:10 | |
| **nearly**(2) 86:13 150:12 | | **nonetheless**(1) 53:15 | | | | **o's**(1) 138:13 | |
| **necessarily**(2) 64:12 163:25 | | **noon**(2) 13:23 77:12 | | | | | |
| **necessary**(14) 39:23 43:23 48:19 66:8 66:12 85:12 106:9 130:3 149:15 159:1 190:9 200:9 200:12 200:16 | | **nor**(4) 62:15 66:8 80:9 129:2 | | | | **oaktree**(18) 2:4 10:12 10:13 42:6 46:19 52:18 53:3 81:11 91:8 109:25 110:15 111:1 111:2 111:19 115:24 125:9 125:18 125:21 | |
| | | **normal**(2) 57:1 59:15 | | | | | |
| | | **normally**(2) 57:23 68:16 | | | | **oath**(1) 133:3 | |
| **necessity**(2) 44:10 44:12 | | **norman**(1) 1:34 | | | | **object**(4) 30:7 49:4 65:12 189:10 | |
| **need**(28) 11:16 22:23 29:10 31:11 51:2 68:4 68:7 72:22 80:18 90:2 98:10 103:1 107:6 119:1 124:19 133:7 134:7 141:4 141:5 156:23 165:4 166:8 184:12 201:18 201:20 203:8 206:2 210:7 | | **north**(3) 2:25 3:17 5:8 | | | | **objected**(5) 14:19 16:16 62:11 168:6 | |
| | | **not**(301) 13:3 15:6 16:22 17:1 17:7 17:13 17:19 18:3 18:5 18:5 18:15 18:18 19:6 20:22 21:20 21:23 23:22 27:12 27:21 28:15 28:23 29:10 29:20 29:22 29:25 30:12 30:13 30:22 31:11 34:2 34:22 35:2 36:14 36:18 37:20 38:13 38:14 39:13 40:16 40:23 41:11 41:17 42:2 42:4 42:9 42:13 43:6 43:19 44:6 46:18 47:1 47:4 47:4 47:8 47:12 49:24 50:15 51:23 51:24 52:8 52:19 54:8 54:11 55:7 55:8 56:14 56:22 57:7 57:14 57:21 58:3 58:17 58:24 59:21 59:22 60:7 60:14 60:25 61:14 61:16 61:21 61:25 62:5 62:7 62:11 64:12 65:10 65:12 65:21 65:21 65:25 66:11 67:2 67:2 67:4 67:15 68:2 68:8 68:14 68:15 71:19 72:17 72:18 77:17 77:18 77:18 79:1 79:6 79:24 81:3 84:2 84:8 84:10 85:16 85:22 86:21 87:4 87:10 87:16 87:22 87:24 88:10 88:18 90:13 91:5 91:22 93:1 94:19 95:15 95:23 96:18 96:18 97:2 98:7 98:10 98:20 99:8 101:23 102:5 102:13 102:23 103:13 103:21 103:25 104:4 104:6 104:7 104:8 104:15 104:17 105:24 106:4 106:14 106:1 106:21 107:6 107:7 108:3 109:25 112:4 112:19 113:10 113:16 113:20 113:20 113:23 114:3 114:5 114:7 114:8 114:9 114:11 114:12 114:13 114:17 114:21 114:22 114:23 115:2 115:11 115:14 116:1 116:20 116:22 117:14 118:19 119:8 119:14 119:23 120:6 120:16 121:15 122:2 123:2 123:4 123:21 123:24 124:9 125:18 127:15 127:16 128:23 129:12 131:21 131:23 131:10 133:12 133:25 134:9 135:8 136:18 136:24 137:6 137:14 139:11 139:16 139:19 140:4 142:9 142:14 142:23 143:5 143:8 143:8 143:24 143:25 145:2 145:11 145:20 145:25 147:15 147:15 148:9 149:18 152:3 152:3 152:6 153:4 153:20 154:1 154:2 155:15 155:18 155:19 156:21 157:15 158:15 158:18 159:1 160:5 160:19 160:24 161:2 161:7 161:17 162:10 162:22 162:23 162:23 163:14 163:17 163:23 163:24 164:3 164:13 164:14 164:7 164:16 166:17 167:24 168:22 169:17 170:4 171:7 171:14 172:1 173:6 173:13 173:21 173:22 173:23 174:9 174:9 176:5 177:1 177:15 178:16 179:5 179:8 179:11 179:16 179:16 181:6 182:10 182:18 183:18 184:6 184:7 184:24 185:18 185:10 | | **noteholders**(104) 12:19 14:15 14:19 14:20 14:24 14:25 15:5 15:8 15:10 15:11 15:13 15:24 16:2 16:4 16:16 16:18 17:17 17:23 20:13 30:17 31:6 31:16 31:18 31:23 32:8 32:11 32:13 32:16 32:21 32:23 32:25 33:6 33:11 33:22 34:7 34:14 35:2 36:15 44:18 44:23 44:24 45:16 63:16 63:24 65:23 73:11 76:16 76:23 84:5 84:9 91:19 91:22 91:23 92:8 92:13 92:14 97:19 97:19 97:19 107:11 115:8 124:25 125:2 125:3 133:17 135:11 148:5 148:18 149:11 149:24 150:2 151:17 160:6 163:3 163:6 169:20 174:18 177:16 181:6 181:18 181:19 182:2 183:7 184:4 184:12 186:24 187:11 187:19 187:22 189:3 189:5 199:15 199:21 199:23 | | | |
| | | | | | | **objections**(31) 13:5 13:11 13:12 14:14 14:16 17:16 21:4 21:6 21:9 21:11 21:21 22:1 27:11 32:5 32:13 33:5 37:5 37:8 37:9 37:22 39:4 78:12 86:14 102:8 103:12 135:19 165:10 167:23 198:24 200:4 205:9 | |
| **needed**(3) 78:2 191:8 193:3 | | | | | | | |
| **needless**(1) 74:2 | | | | | | | |
| **needs**(5) 53:5 103:6 115:2 173:15 173:16 178:24 195:22 | | | | **notes**(43) 22:14 23:8 26:14 66:15 76:15 91:16 91:17 99:13 99:13 127:9 127:10 127:23 127:24 128:9 128:10 128:11 128:1 128:15 128:18 128:25 129:2 129:14 131:19 132:2 132:8 132:3 135:10 136:4 138:20 138:23 139:9 140:24 143:23 171:1 187:5 187:7 187:14 187:18 187:22 189:18 189:20 192:25 194:9 | | **objective**(1) 18:25 | |
| | | | | | | **objectors**(1) 211:4 | |
| **negative**(1) 193:9 | | | | | | **obligation**(5) 100:18 101:2 114:7 122:3 123:10 | |
| **neglected**(1) 37:6 | | | | | | | |
| **negotiate**(4) 28:15 28:18 38:14 58:24 | | | | | | **obligations**(12) 43:2 100:11 102:13 110:10 110:13 110:14 114:7 114:12 121:14 121:17 130:5 180:10 | |
| **negotiated**(6) 38:15 47:11 57:23 102:3 102:5 109:11 | | | | **nothing**(20) 20:22 34:1 34:2 35:20 36:1 45:12 60:11 61:12 61:18 67:25 79:13 87:15 89:20 126:1 127:10 138:22 153:23 182:8 186:16 186:16 | | | |
| | | | | | | | |
| **negotiates**(1) 58:10 | | **never**(14) 37:25 50:7 57:7 59:10 59:11 72:14 105:19 117:21 122:7 122:20 147:2 153:21 208:2 209:3 | | | | **observe**(2) 119:15 125:8 | |
| **negotiating**(1) 59:12 | | | | | | **observed**(3) 117:20 126:6 160:18 | |
| **negotiation**(1) 108:4 | | | | **notice**(8) 20:20 27:2 28:2 30:6 35:12 35:13 36:5 41:16 | | **obtain**(1) 111:20 112:20 | |
| **negotiations**(2) 108:19 149:22 | | | | | | **obtained**(2) 51:20 52:2 | |
| **neil**(1) 6:10 | | **nevertheless**(2) 54:15 92:11 | | | | **obtaining**(1) 53:5 | |
| **neither**(8) 62:15 66:8 80:9 99:14 106:1 145:10 155:17 172:18 | | **new**(19) 2:33 2:39 3:11 3:43 4:32 41:1 111:8 113:8 115:22 118:13 119:14 134:21 157:23 159:6 166:21 187:5 189:18 189:20 190:12 | | **noticeably**(2) 100:25 101:13 | | **obvious**(4) 63:20 63:20 99:2 104:21 | |
| | | | | **notified**(1) 161:24 | | **obviously**(10) 18:1 38:24 82:24 99:11 108:15 116:13 174:10 176:4 189:24 201:14 | |
| **nemours**(1) 5:7 | | | | **notion**(2) 134:13 173:10 | | | |
| **net**(2) 150:5 150:8 | | | | **notional**(2) 117:22 117:24 | | | |
| **netting**(1) 120:2 | | **newly**(1) 25:20 | | **notwithstanding**(8) 49:23 118:12 121:18 122:3 139:2 146:21 171:24 193:22 | | **occasion**(1) 166:18 | |
| **never**(14) | | **news**(1) 11:4 | | | | **occur**(1) 194:8 | |
| | | **next**(12) 43:22 90:23 121:25 159:4 182:15 186:25 200:23 201:24 202:2 204:13 211:1 211:14 | | | | **occurred**(3) 52:13 105:12 182:3 | |
| | | | | **now**(121) 13:23 16:2 19:23 20:8 22:8 23:24 24:10 24:16 25:11 27:12 28:5 28:12 44:9 49:20 50:1 51:23 54:12 55:7 55:19 56:11 56:22 56:25 57:8 59:1 59:10 60:14 66:22 70:8 71:10 75:21 77:4 78:4 78:16 78:24 81:14 82:11 84:8 86:7 89:24 90:22 93:24 97:11 104:9 106:25 106:26 108:22 109:9 109:24 110:15 110:24 111:8 113:12 115:15 115:15 116:1 119:12 123:2 124:12 125:7 129:25 129:12 132:16 132:22 133:1 134:16 136:18 137:6 137:21 138:6 139:4 139:6 141:9 142:17 143:13 143:24 145:6 146:8 152:1 153:9 154:16 155:19 156:14 157:11 158:5 159:14 159:25 160:12 162:18 163:11 163:20 163:23 164:9 165:15 168:1 169:5 170:10 171:23 174:13 174:18 187:25 177:6 188:1 190:23 191:10 191:12 192:14 194:3 198:1 198:13 200:25 201:3 206:25 207:23 210:4 | | **occurs**(1) 98:25 | |
| | | | | | | **ocean**(1) 140:13 | |
| **nice**(1) 165:10 | | | | | | **october**(2) 49:13 71:10 | |
| **nina**(1) 160:14 | | | | | | **odds**(1) 175:22 | |
| **ninth**(1) 117:18 | | | | | | **off**(10) 15:20 15:23 17:6 37:12 58:7 65:6 106:9 125:3 140:11 165:9 | |
| **nipping**(1) 104:3 | | **not**(35) 186:3 187:8 188:10 189:21 190:8 190:19 192:1 192:9 194:18 194:22 194:25 195:3 195:13 195:14 195:19 195:20 196:7 196:10 196:21 197:5 197:10 197:12 198:9 198:10 200:4 200:12 201:6 201:8 202:6 206:1 207:10 207:25 208:1 209:8 210:15 | | | | | |
| **nobody**(3) 69:14 162:20 202:13 | | | | | | **off-hand**(1) 207:19 | |
| **nod**(1) 210:11 | | | | | | **offer**(3) 38:22 38:23 39:2 | |
| **nomura**(2) 8:34 8:34 | | | | | | **offered**(8) 32:19 32:20 38:16 95:22 96:2 136:12 138:18 208:3 | |
| **non**(5) 56:18 111:24 138:7 140:22 146:15 | | **notably**(1) 81:11 121:25 176:24 | | | | | |
| **non-bankrupt**(1) 68:16 | | **note**(23) 19:8 31:4 32:10 34:6 66:13 67:14 69:4 71:25 85:20 90:21 91:7 91:7 91:8 107:12 120:17 121:11 122:10 124:24 131:10 155:19 165:8 179:4 179:7 | | | | **officer**(1) 43:18 | |
| **non-consensual**(1) 82:22 | | | | | | **officers**(20) 5:4 29:6 29:13 42:22 46:20 46:24 47:6 47:9 47:15 48:10 52:22 56:12 66:24 67:12 67:17 69:25 80:16 86:14 136:24 211:2 | |
| **non-contractual**(5) 54:25 55:16 60:12 60:21 61:20 | | | | **noticed**(11) 21:21 28:2 69:20 116:7 123:16 125:9 156:19 158:20 162:13 183:21 192:8 | | | |
| | | | | | | **official**(3) 3:26 4:4 5:23 12:5 38:25 65:5 93:14 165:7 204:3 | |
| **non-debtor**(7) 39:20 39:22 44:15 45:5 197:24 197:25 198:5 | | | | | | | |
| **non-debtors**(2) 54:13 54:15 | | | | | | | |
| **non-estate**(1) 54:14 | | | | | | **offset**(2) 55:5 110:3 | |
| **non-guarantor**(2) 185:2 185:3 | | | | | | **offsetting**(1) 120:2 | |
| **non-lbo**(11) 22:10 22:11 22:21 23:17 26:7 28:23 31:2 140:2 150:4 150:15 193:4 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **often**(3) 107:14 107:17 153:21 | | **orchestrated**(1) 63:9 | | **out**(95) 13:21 16:8 19:1 24:13 24:23 25:8 27:4 28:9 33:5 41:15 48:22 55:9 57:1 58:21 59:20 60:3 61:13 61:15 65:14 69:18 74:24 82:6 82:7 82:8 86:11 91:2 91:17 92:3 92:5 92:14 92:16 92:17 92:23 93:4 93:8 94:8 94:16 95:3 95:5 95:7 95:11 95:11 96:1 97:20 97:23 99:8 99:15 100:16 101:10 102:13 102:14 102:25 106:7 107:5 107:11 109:1 109:2 109:3 120:2 120:18 124:17 133:15 133:16 139:14 142:1 142:12 142:24 143:21 145:18 151:8 154:5 154:18 159:17 161:1 166:22 170:19 175:11 177:2 177:16 177:18 177:8 181:20 185:9 186:3 189:20 190:21 190:22 191:18 195:1 199:20 200:9 202:17 204:21 209:11 211:10 | | **parent**(47) 22:13 24:5 24:7 44:20 80:15 90:25 91:8 110:20 111:10 111:11 111:12 111:16 111:22 113:9 113:12 114:8 115:3 116:20 116:25 123:8 123:14 124:15 124:20 125:15 127:21 128:4 128:10 128:22 129:2 129:11 129:12 129:16 130:12 131:11 132:10 132:14 132:20 133:13 136:4 149:25 167:9 167:11 167:12 167:14 171:14 184:24 189:8 |
| **oil**(1) 117:19 | | **order**(66) 13:7 13:10 13:14 14:9 15:19 17:5 18:25 22:3 23:6 30:2 51:20 53:8 53:13 53:18 53:19 54:5 54:17 55:14 56:1 57:10 57:23 58:1 58:11 58:20 58:24 59:2 59:15 59:22 61:11 61:16 62:5 62:6 62:11 62:17 80:18 80:18 83:18 84:1 84:6 84:15 84:17 84:22 85:10 86:1 86:8 86:16 86:19 86:23 87:4 87:14 87:22 88:13 89:5 97:25 112:20 120:7 136:5 137:10 150:10 160:16 160:19 166:7 174:22 185:5 189:2 192:2 | | | | |
| **okay**(20) 13:14 14:11 26:2 28:15 41:4 61:12 76:22 103:14 143:12 166:15 167:4 180:3 183:8 196:11 201:1 201:9 203:5 203:20 204:19 206:19 | | | | | | **pari**(5) 143:14 143:17 143:23 145:2 145:21 146:25 149:5 |
| **old**(1) 20:2 | | | | **outcome**(4) 26:14 83:6 164:17 195:9 | | **park**(3) 4:31 5:24 8:43 |
| **omnibus**(4) 18:25 205:14 205:18 206:9 | | | | **outline**(1) 179:22 | | **parke**(3) 3:34 93:14 165:7 |
| **onboard**(1) 115:21 | | **ordered**(1) 57:2 | | **outline**(1) 179:24 | | **parlance**(1) 183:3 |
| **once**(10) 13:2 24:24 54:2 54:21 57:18 58:20 146:15 147:4 165:16 177:25 | | **ordered''**(1) 174:18 | | **outrageous**(1) 15:21 | | **parody**(1) 24:6 |
| | | **orders**(5) 57:2 84:11 84:12 157:2 160:16 164:22 | | **outright**(3) 99:25 100:9 100:17 | | **parsing**(5) 172:20 |
| **one**(143) 1:28 3:16 4:31 10:33 10:33 12:23 16:13 16:17 20:18 21:2 22:23 24:1 25:5 29:3 31:12 31:17 34:5 36:9 37:3 37:5 37:22 39:8 42:3 45:9 46:23 48:4 49:24 51:14 52:9 52:10 53:15 57:20 60:16 63:1 63:13 63:17 69:17 70:11 73:4 74:14 75:24 76:18 77:17 79:2 79:22 89:1 91:14 91:18 94:5 94:17 95:1 95:9 95:19 98:14 98:22 99:13 105:11 105:14 108:9 109:6 109:7 112:17 112:18 113:2 113:23 114:2 114:3 115:9 116:15 118:17 118:18 120:14 125:21 126:6 126:14 126:1 135:4 138:16 141:4 142:2 142:19 143:4 146:15 148:21 149:13 149:19 151:8 153:9 153:25 155:9 155:10 156:9 157:1 157:1 159:11 163:16 163:21 165:3 167:17 167:1 168:17 170:8 171:16 171:20 176:8 176:20 176:21 179:23 180:13 181:23 181:24 183:19 183:21 184:22 186:25 188:4 188:1 190:19 191:13 191:14 193:22 195:20 196:7 196:11 196:13 197:17 198:15 199:2 199:12 200:3 200:13 200:13 203:3 206:8 206:12 207:7 208:10 209:13 209:20 210:3 210:25 | | **ordinary**(1) 129:23 | | **outside**(4) 57:19 59:14 62:13 100:10 | | **part**(26) 14:22 14:22 39:5 77:3 86:24 91:21 99:18 101:2 108:15 109:4 127:4 129:24 130:1 130:3 140:22 143:1 145:15 150:15 151:18 152:4 152:5 159:23 183:14 189:21 198:3 200:20 |
| | | **organized**(1) 202:23 | | **outstanding**(1) 184:8 204:24 | | |
| | | **original**(5) 40:8 55:1 61:2 110:8 142:16 | | **over**(26) 19:9 21:25 32:2 32:5 56:8 59:23 63:22 64:18 69:15 81:16 85:9 86:1 109:6 128:17 131:11 145:10 169:18 175:5 176:1 183:15 187:14 191:10 191:11 191:11 194:1 199:2 | | **partial**(2) 58:10 176:19 |
| | | **originally**(2) 38:10 76:3 | | | | **participant**(3) 119:3 119:9 119:10 |
| | | **orphaned**(1) 166:3 | | | | **participants**(2) 70:11 120:13 |
| **one's**(1) 122:24 | | **ostensibly**(1) 148:8 | | | | **participate**(7) 136:20 137:21 141:8 141:21 143:6 146:6 149:2 |
| **one-member**(1) 162:20 | | **other**(108) 16:13 20:16 37:1 37:17 37:17 42:25 47:3 49:21 53:13 56:12 56:15 58:2 59:18 63:6 66:4 66:7 71:8 79:7 80:10 84:9 86:9 86:15 86:20 89:3 90:13 91:8 94:17 97:10 97:19 99:22 101:17 101:19 101:21 102:6 105:21 106:17 107:8 107:24 109:7 110:19 111:11 112:5 112:6 113:9 113:11 113:16 116:11 116:20 116:25 118:23:8 123:10 123:13 123:13 123:14 124:15 124:20 125:15 125:22 125:23 125:24 125:25 126:23 128:10 129:2 129:1 129:12 129:15 130:12 132:10 132:14 132:20 135:1 141:15 142:15 142:25 146:1 146:18 147:24 149:25 150:7 154:2 154:14 157:20 160:12 167:15 171:21 174:3 175:1 179:6 180:14 180:19 181:2 181:8 181:1 181:19 183:19 183:25 184:20 188:24 189:1 190:11 193:4 194:17 196:2 199:19 202:18 207:23 | | **over**(26) | | |
| **one-sentence**(1) 153:12 | | | | **overall**(2) 204:28 | | |
| **one-third**(1) 144:6 144:19 144:25 | | | | **overpaid**(3) 129:10 129:13 181:12 | | **participated**(1) 137:22 |
| **oneal**(1) 7:5 | | | | **overpay**(3) 181:19 182:17 182:2 | | **participating**(4) 82:10 91:17 91:25 100:23 |
| **ones**(5) 12:17 51:25 52:1 116:5 140:2 | | | | **overpayment**(3) 181:14 182:7 184:1 | | **participation**(4) 81:19 83:5 92:20 106:11 |
| **online**(1) 167:1 | | | | **overpayments**(1) 129:15 | | **particular**(10) 31:7 34:10 62:15 74:5 153:16 162:5 163:8 184:2 208:4 210:17 |
| **only**(41) 17:9 18:8 32:20 33:9 45:9 49:6 49:18 51:5 51:15 51:18 52:19 52:22 55:7 65:11 71:18 79:15 87:2 87:18 92:12 98:5 98:21 100:22 113:9 119:13 119:15 122:11 128:18 131:23 133:6 133:15 142:5 160:8 173:17 175:4 182:14 196:10 198:21 205:2 | | **others**(4) 76:2 113:16 193:24 209:9 | | **oversimplify**(1) 103:24 | | |
| | | **otherwise**(18) 21:5 34:13 34:14 34:16 55:13 81:22 83:16 115:21 120:6 127:12 162:24 164:4 168:25 173:11 183:18 195:1 196:23 198:16 | | **overwhelming**(2) 39:25 171:10 | | **particularly**(6) 69:3 72:17 75:3 143:20 169:6 178:15 |
| | | | | **overwhelmingly**(2) 19:7 44:25 | | |
| | | | | **owens**(8) 176:1 176:4 176:9 176:12 176:1 177:4 184:7 184:15 | | **parties**(63) 13:8 13:24 31:8 38:13 39:12 40:12 40:25 41:8 41:15 41:15 41:18 44:22 45:12 49:6 49:15 50:13 50:18 50:21 50:24 52:22 53:17 56:12 61:22 67:24 70:9 71:8 77:11 78:22 79:1 79:4 79:7 80:5 80:5 80:10 80:18 81:4 81:17 82:24 89:25 90:14 92:2 99:14 100:22 107:14 112:11 117:6 117:6 128:17 135:25 140:2 140:6 140:6 142:18 168:5 202:9 203:17 204:16 205:2 205:5 206:22 207:16 209:1 |
| **onto**(1) 86:7 | | **ought**(6) 46:13 66:2 109:9 109:14 178:9 205:14 | | **owing**(2) 110:15 123:12 | | |
| **open**(1) 60:22 | | | | **own**(19) 25:24 27:8 40:9 40:19 41:20 49:19 69:11 91:19 94:10 95:8 95:12 95:1 96:18 101:5 101:13 107:13 132:1 189:17 195:1 | | **parties'**(1) 179:6 |
| **opening**(1) 14:16 | | | | **owned**(4) 88:20 88:20 109:24 197:4 | | **partner**(2) 7:42 126:15 |
| **operation**(2) 120:7 130:3 | | **our**(117) 12:23 14:4 14:4 15:23 20:5 20:10 20:11 20:21 21:13 21:14 21:21 21:22 21:25 22:4 22:8 24:20 25:22 26:21 27:2 28:3 28:6 29:19 30:1 30:5 30:5 30:15 30:24 31:24 32:16 33:5 35:1 35:10 35:21 35:25 37:5 37:8 37:22 37:24 38:17 39:4 39:13 43:14 44:20 51:24 57:6 62:6 62:7 65:7 78:13 89:11 90:11 90:23 95:5 95:6 97:16 99:18 103:11 104:15 106:21 106:22 108:14 115:1 126:7 126:17 126:21 126:25 128:2 139:13 139:21 142:1 142:20 142:21 144:8 146:23 147:14 151:5 151:6 152:20 159:4 161:13 161:23 161:23 162:3 165:10 165:11 167:13 168:4 172:15 172:7 173:4 179:1 179:1 179:2 179:14 179:24 183:8 183:21 185:1 186:14 187:7 188:24 189:23 190:1 190:25 192:13 193:7 196:5 197:8 197:12 197:14 197:18 199:17 199:1 200:10 201:19 201:25 210:1 | | **ownership**(4) 193:12 195:1 196:21 197:8 | | **partners**(8) 8:4 8:4 8:16 8:16 10:19 10:19 10:33 10:33 |
| **operations**(1) 32:3 | | | | **owning**(2) 15:23 36:3 | | **party**(29) 8:42 21:3 23:25 39:15 39:19 55:2 56:17 58:9 60:2 60:5 67:8 80:14 82:22 87:22 90:13 99:3 102:5 104:1 111:14 115:11 136:23 137:8 138:2 140:4 143:3 143:7 146:13 152:16 162:21 |
| **operative**(2) 149:8 152:10 | | | | **o'melveny**(1) 11:16 | | |
| **opgo**(2) 168:1 171:15 | | | | **p.a**(1) 1:33 | | |
| **opinion**(3) 89:19 89:20 91:22 | | | | **p.m**(6) 78:6 147:19 147:19 203:25 203:25 212:1 | | **party's**(1) 58:18 |
| **opportunities**(1) 188:13 | | | | | | **party's**(1) 152:13 |
| **opportunity**(8) 122:21 30:21 37:11 85:3 94:22 158:17 201:13 201:21 | | | | **pace**(1) 138:16 | | **parver**(1) 8:13 |
| | | | | **pachulski**(9) 6:14 58:14 116:5 117:14 121:20 121:23 124:21 128:20 131:7 | | **passengers**(3) 140:24 141:10 141:22 |
| **opposed**(6) 26:18 46:11 100:9 113:21 113:25 174:1 | | | | | | **passing**(2) 66:10 124:12 |
| | | | | **pachulski's**(2) 84:3 116:3 | | **passion**(1) 68:20 |
| **opt**(14) 41:15 41:15 92:5 92:14 92:16 92:16 92:17 93:4 94:8 94:8 95:3 95:7 96:1 96:14 | | | | **package**(7) 13:16 19:1 19:22 19:25 150:18 153:6 | | **passu**(1) 145:21 |
| **opted**(7) 91:2 91:17 92:23 95:5 95:11 95:11 97:20 | | | | | | **past**(1) 156:23 |
| | | | | **page**(23) 20:18 25:14 58:4 79:3 84:20 84:21 93:18 115:12 129:22 132:4 133:9 134:20 134:22 135:10 144:8 144:12 148:1 162:3 173:4 179:1 181:10 194:21 196:19 | | **patent**(1) 130:21 |
| **opting**(3) 92:3 93:8 93:8 | | | | | | **patience**(3) 209:22 210:17 210:18 |
| **option**(11) 15:24 17:23 19:23 76:1 76:2 92:16 93:4 93:5 135:21 170:21 170:22 | | | | **pages**(4) 25:23 90:11 93:19 131:21 | | **patrick**(1) 6:39 |
| | | | | **paid**(14) 33:25 33:25 45:11 57:14 57:18 72:18 111:18 131:11 138:22 138:23 139:9 168:8 174:5 185:25 | | **paul**(2) 6:17 8:29 |
| | | | | | | **pause**(5) 47:14 76:14 123:15 133:7 176:3 |
| **oral**(1) 210:23 | | **ours**(1) 75:2 | | **panoply**(1) 141:19 | | **pay**(9) 22:20 57:17 74:22 80:5 80:13 88:11 186:2 193:3 194:5 |
| **orange**(1) 5:8 | | **ourselves**(3) 138:15 204:11 204:12 | | **paper**(1) 136:1 | | |
| | | | | **papers**(3) 90:13 107:11 203:1 | | **payable**(1) 194:11 |
| | | | | **paragraph**(6) 84:22 148:17 148:17 181:10 182:8 182:21 | | **payees**(2) 42:7 46:20 |
| | | | | | | **paying**(4) 88:7 88:21 125:16 125:17 |
| | | | | **parallel**(1) 107:17 | | |
| | | | | **parameters**(1) 93:7 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| payment(3) 40:2 45:6 120:2 | | phones(30) 22:25 23:1 23:1 23:2 23:8 | | plan(180) 154:19 154:20 155:5 155:7 | | posited(1) 86:14 | |
| payments(6) 74:17 113:4 117:23 119:19 120:6 125:4 | | 24:23 25:7 25:8 26:14 36:16 45:12 45:15 91:7 97:25 107:12 127:9 127:23 128:15 | | 155:8 155:11 155:11 155:12 155:15 155:1 155:17 156:9 156:10 156:10 156:11 156:12 156:12 156:23 156:25 156:25 157:5 | | position(23) 19:2 23:20 34:22 84:5 84:19 89:11 89:18 90:5 99:5 115:13 142:22 155:11 155:12 157:16 158:25 163:22 164:9 | |
| pays(2) 183:10 183:11 | | 128:24 131:10 131:19 131:24 132:2 132:5 132:8 136:6 139:11 140:24 143:23 171:14 | | 157:6 157:11 157:13 157:17 157:18 157:20 157:21 158:5 158:7 158:18 158:25 | | 169:25 174:11 174:13 175:23 176:15 177:21 | |
| peace(2) 80:12 80:13 | | | | 159:3 159:12 159:14 159:16 159:17 159:25 | | positions(15) 116:15 144:3 144:7 144:18 | |
| peck(1) 160:3 | | phrase(6) 74:3 121:21 141:18 158:8 | | 160:1 160:1 160:10 160:22 161:8 161:13 | | 144:25 153:10 153:19 153:19 173:20 174:1 | |
| peculiar(1) 174:3 | | 187:22 187:23 | | 161:23 161:24 161:25 162:6 162:7 162:7 | | 174:8 174:20 174:21 174:22 208:4 | |
| peg(1) 11:5 | | | | 162:24 163:5 163:8 163:8 163:13 164:16 | | | |
| pendency(2) 52:14 186:1 | | pick(1) 98:21 | | 164:23 165:10 165:11 165:13 166:9 166:10 | | positive(2) 35:9 63:23 | |
| pending(2) 188:5 192:21 | | picked(2) 98:13 103:14 | | 167:7 167:7 167:8 167:13 167:13 167:17 | | possess(1) 92:9 | |
| pennock(1) 6:24 | | pickering(1) 9:12 | | 167:19 167:22 168:2 168:4 168:7 170:24 | | possibility(1) 24:4 | |
| pennsylvania(3) 1:43 157:9 175:25 | | picking(2) 107:7 185:24 | | 171:3 171:9 171:11 171:11 171:13 171:14 | | possible(6) 22:11 25:16 42:20 106:11 | |
| people(25) 20:6 51:1 68:18 69:5 69:5 69:7 | | picture(1) 116:2 | | 172:2 172:4 172:6 172:9 172:14 172:15 | | 149:23 194:18 | |
| 75:2 90:4 96:8 97:1 132:3 155:24 163:12 | | piece(1) 132:20 | | 173:7 175:2 175:9 175:10 175:12 176:12 | | | |
| 169:18 172:13 173:18 174:19 177:12 | | pin(1) 117:19 | | 176:22 177:15 177:18 177:19 177:20 | | possibly(3) 105:10 106:22 114:19 | |
| 178:15 190:22 191:18 200:13 201:12 202: | | piper(1) 2:30 | | 177:22 178:1 178:3 178:11 178:17 178:22 | | post(7) 42:10 83:10 100:1 100:11 101:19 | |
| 203:13 | | place(7) 37:25 98:22 101:20 105:14 | | 179:1 179:2 179:11 179:13 179:16 179:23 | | 148:2 179:24 | |
| | | 105:17 111:8 176:2 | | 180:5 180:17 182:11 182:25 183:3 183:8 | | | |
| people's(1) 173:20 | | | | 183:9 183:13 183:15 183:19 183:23 184:11 | | post-hearing(1) 32:15 | |
| per(6) 14:8 72:1 74:16 179:3 179:11 | | placed(5) 21:14 55:19 61:11 102:2 103:22 | | 184:15 184:20 185:1 185:1 185:24 186:8 | | post-petition(3) 80:25 137:12 193:4 | |
| per-debtor(11) 155:13 155:14 156:22 | | placeholder(1) 206:3 | | 186:11 186:14 186:19 187:1 187:8 187:13 | | post-trial(1) 197:21 | |
| 157:6 158:13 159:8 160:6 160:23 161:2 | | plain(13) 156:2 156:5 156:7 156:13 156:14 | | 188:21 188:24 189:15 189:17 190:9 190:1 | | posture(3) 168:21 171:19 175:8 | |
| 177:2 179:9 | | 156:16 156:17 159:9 159:18 159:19 161:4 | | 190:13 190:18 190:25 191:4 191:7 191:8 | | potential(15) 16:1 36:3 50:21 51:8 65:24 | |
| per-plan(12) 155:12 156:21 157:7 158:13 | | 178:11 187:16 | | 192:9 192:11 192:13 192:13 192:21 193:1 | | 67:22 69:20 70:4 70:5 95:13 102:11 111:5 | |
| 159:2 159:8 160:5 160:24 161:2 172:1 | | | | 194:19 195:8 195:22 196:2 196:5 196:14 | | 154:7 191:25 195:19 | |
| 177:1 179:8 | | plainly(1) 74:24 | | 196:18 197:8 197:12 197:14 198:2 198:9 | | | |
| | | plaintiff(11) 58:1 58:9 58:13 58:15 58:18 | | 198:10 198:24 198:24 200:6 200:7 200:11 | | potentially(3) 113:15 158:9 194:17 | |
| perceive(1) 170:14 | | 58:22 58:23 59:19 87:8 116:12 149:6 | | 200:17 201:10 201:16 201:17 201:23 204: | | potpourri(1) 39:11 | |
| percent(43) 22:14 22:15 24:22 24:22 25:1 | | | | 209:8 209:20 209:21 210:8 210:16 | | potter(1) 2:21 | |
| 25:2 25:10 26:7 26:12 26:12 26:13 26:19 | | plaintiffs(2) 89:16 143:3 | | | | powerless(1) 63:12 | |
| 26:22 26:23 27:15 28:6 28:6 28:11 28:11 | | plan(301) 12:7 12:15 12:16 12:17 12:20 | | | | ppearances(5) 1:21 2:1 3:1 4:1 5:1 | |
| 31:22 33:8 36:16 92:22 92:20 111:19 | | 12:21 13:5 13:12 13:13 14:13 14:15 14:19 | | | | practical(3) 86:10 89:15 146:22 | |
| 111:20 132:15 134:25 136:6 136:16 137:5 | | 14:24 15:2 15:6 16:12 16:15 16:17 16:18 | | plan's(1) 128:6 | | practice(1) 16:20 | |
| 146:2 146:16 146:20 147:4 150:7 180:18 | | 16:12 16:15 16:17 17:3 17:7 17:20 18:7 | | plan-by-plan(1) 172:23 | | pragmatism(3) 34:16 34:18 55:11 | |
| 181:5 181:8 185:15 192:3 194:1 194:6 | | 18:16 19:8 19:9 19:23 20:2 20:4 20:7 | | plan."(1) 159:24 | | praised(1) 22:4 | |
| | | 20:11 20:17 20:21 20:22 20:25 21:1 21:7 | | plans(19) 12:23 20:11 70:12 70:16 70:18 | | pre(2) 52:14 145:18 | |
| percentage(2) 110:3 136:18 | | 21:7 21:9 21:11 21:13 21:22 21:25 22:4 | | 70:19 71:3 84:8 101:10 102:3 102:22 | | pre-lbo(2) 115:7 143:2 | |
| percent's(1) 192:4 | | 22:4 22:7 22:18 23:20 24:1 24:15 24:16 | | 108:8 125:7 134:24 155:6 169:18 183:13 | | precedent(7) 62:17 158:22 161:5 161:17 | |
| perfectly(5) 33:17 89:4 107:4 109:15 114: | | 24:20 25:5 25:12 25:13 25:18 25:23 25:24 | | 201:3 201:6 | | 161:18 162:9 168:20 | |
| perhaps(12) 58:8 65:19 86:12 92:3 96:19 | | 26:7 26:11 26:21 27:7 27:11 27:22 27:22 | | | | | |
| 106:20 107:6 109:9 130:8 137:7 138:14 | | 28:3 28:6 28:13 29:8 29:9 29:17 29:19 30:1 | | plan's(2) 188:5 197:23 | | precedential(3) 125:6 153:20 160:20 | |
| 143:23 | | 30:3 30:6 30:10 30:11 30:15 30:24 31:6 | | plan"(1) 162:3 | | precise(2) 87:16 89:6 | |
| | | 31:6 31:16 31:17 31:18 32:13 32:18 32:2 | | plausible(1) 121:8 | | precisely(3) 69:19 126:8 148:10 | |
| period(2) 31:20 206:11 | | 32:23 32:25 33:6 33:9 33:10 33:12 33:12 | | plausibly(1) 121:5 | | precluded(1) 80:3 | |
| periodic(2) 113:4 117:23 | | 33:14 33:15 33:19 33:22 34:17 34:21 | | play(4) 23:17 163:20 168:5 196:11 | | predicted(1) 85:15 | |
| permissible(1) 42:2 | | 34:21 35:2 35:6 35:8 35:15 35:17 35:22 | | played(1) 61:6 | | prefer(5) 16:1 77:18 77:18 201:4 203:9 | |
| permission(1) 83:7 | | 36:2 36:17 36:20 37:1 37:2 37:5 37:18 | | playing(1) 184:5 | | preference(18) 51:10 51:19 51:22 51:25 | |
| permit(1) 70:24 | | 37:22 38:17 39:11 39:11 39:22 39:25 40: | | plaza(2) 2:24 3:42 | | 52:2 52:7 65:20 65:22 65:25 90:25 91:1 | |
| permits(1) 33:19 | | 40:2 40:7 40:8 40:10 40:21 40:22 41:14 | | plea(1) 153:25 | | 92:18 92:24 93:10 114:3 114:3 137:3 | |
| permitting(1) 30:17 | | 41:14 44:3 43:15 44:4 44:7 44:11 44:17 | | pleadings(1) 51:16 | | 201:13 | |
| pernick(1) 1:34 | | 44:17 44:22 44:25 45:1 45:5 45:13 45:22 | | please(2) 78:7 147:20 | | preferred(1) 194:13 | |
| person(7) 79:9 79:11 79:12 79:15 79:22 | | 46:3 46:10 46:11 46:12 46:22 47:7 47:8 | | pledge(1) 201:10 | | prejudiced(1) 58:7 | |
| 80:6 90:14 | | 47:11 47:13 47:13 47:25 48:1 48:1 48:5 | | pocket(1) 181:20 | | premised(5) 15:3 137:19 148:4 148:23 | |
| | | 48:6 49:12 49:16 49:22 51:24 52:3 52:1 | | podium(6) 20:13 39:6 63:22 64:18 133:1 | | 149:17 | |
| personal(3) 69:12 107:13 173:9 | | 52:18 53:1 53:2 53:3 53:13 54:16 54:23 | | 209:15 | | | |
| personally(1) 72:12 | | 56:14 57:13 62:6 62:7 62:11 63:5 63:17 | | | | prepare(1) 186:13 | |
| personnel(1) 188:15 | | 63:25 64:1 65:7 65:10 65:22 65:25 66:15 | | point(61) 19:11 24:24 28:1 28:20 37:6 | | prepared(9) 33:10 65:9 80:11 106:14 | |
| persons(9) 49:11 49:12 50:7 50:18 50:24 | | 69:17 70:15 70:22 70:25 74:23 76:6 77:3 | | 37:9 37:10 42:3 50:16 53:20 60:8 63:11 | | 109:15 185:8 204:12 210:5 210:6 | |
| 53:4 78:22 79:6 79:24 | | 77:5 78:14 79:3 81:9 81:10 82:4 82:6 | | 63:10 63:19 69:1 69:6 69:18 72:3 72:11 | | | |
| | | 84:6 85:3 86:2 86:22 87:21 89:1 89:1 | | 73:1 73:19 74:12 79:2 87:13 98:8 106:1 | | present(4) 12:8 14:5 92:19 108:14 | |
| perspective(6) 55:11 56:6 57:6 89:24 | | 90:8 90:24 91:5 91:15 92:15 93:3 93:10 | | 119:2 126:16 112:14 113:13 114:22 115:6 | | presentation(8) 31:23 34:17 34:24 35:1 | |
| 139:13 139:18 | | 93:15 93:22 93:23 97:23 98:2 98:8 98:20 | | 116:9 112:4 112:2 129:12 135:2 137:19 | | 84:3 84:9 89:23 198:23 | |
| | | 99:8 100:3 101:1 104:15 105:13 106:22 | | 140:20 142:3 147:22 153:24 153:25 164:1 | | | |
| persuasive(1) 173:14 | | 106:22 107:2 108:9 109:6 109:20 109:21 | | 165:14 173:9 177:16 183:21 188:9 188:12 | | presentations(1) 210:23 | |
| pertinent(1) 127:4 | | 110:18 110:25 111:7 111:8 111:15 111:17 | | 195:14 197:17 198:15 198:21 199:12 | | presented(8) 14:15 15:18 32:9 47:19 62:7 | |
| peter(2) 7:23 11:9 | | 112:19 112:21 112:24 113:13 113:14 | | 199:13 202:14 202:15 205:25 207:14 | | 76:3 82:19 153:7 | |
| petition(3) 52:15 110:14 145:19 | | 113:22 115:5 115:20 115:22 116:16 124:1 | | 210:25 | | | |
| phil(6) 20:15 154:13 178:21 184:19 190:17 | | 124:17 124:22 124:25 125:1 125:2 125:5 | | pointed(3) 65:14 69:4 159:17 | | preserve(2) 51:15 184:10 | |
| 196:1 | | 125:10 126:3 126:4 126:7 127:1 127:3 | | points(10) 39:8 48:22 85:12 85:13 103:10 | | preserved(3) 86:23 86:25 | |
| | | 127:6 127:11 127:16 127:18 127:19 127:2 | | 112:25 153:9 155:24 198:16 204:7 | | presiding(1) 81:16 | |
| philip(1) 4:30 | | 128:2 129:5 129:20 129:24 130:14 130:25 | | | | pressures(1) 209:8 | |
| phillips(5) 5:6 210:25 211:1 211:12 211:15 | | 135:16 136:3 136:4 136:7 136:15 137:3 | | point's(1) 190:1 | | presumably(2) 42:22 110:21 | |
| phone(10) 44:23 91:16 92:13 97:19 99:13 | | 137:14 137:17 139:3 139:16 140:5 141:20 | | policies(2) 139:21 139:23 | | presumption(1) 196:24 | |
| 103:14 107:7 128:10 202:19 203:14 | | 143:22 145:6 146:15 146:19 147:10 147:1 | | policy(2) 90:9 190:7 | | presupposes(1) 135:5 | |
| | | 147:25 149:16 149:21 150:24 151:6 154: | | polk(4) 3:4 7:22 83:16 83:22 | | pretrial(1) 74:3 | |
| | | 154:4 154:14 154:17 | | populate(1) 26:3 | | | |
| | | | | portion(6) 26:15 26:17 31:25 71:18 118:24 | | | |
| | | | | 152:8 | | | |

| Word | Page:Line |
| --- | --- |

pretty(12) 33:13 67:9 79:8 134:17 143:18 147:22 165:15 168:16 171:9 172:22 175:5 177:7
prevailed(2) 138:8 138:9
prevails(1) 138:10
prevent(2) 88:14 197:12
previous(2) 20:7 77:21
previously(7) 21:18 23:25 27:23 31:16 72:8 167:25 187:12

primarily(3) 115:7 180:16 191:14
primary(4) 16:21 21:10 25:12 99:3
primoff(1) 8:9
principal(8) 12:16 14:14 16:13 32:12 80:14 118:4 118:5 118:5

prior(14) 14:9 14:23 14:24 17:2 24:14 24:19 26:7 30:14 33:6 36:2 37:22 86:22 189:15 199:22
priority(7) 95:6 127:7 180:6 182:10 182:13 183:4 183:19
prism(3) 39:17 45:22 66:14
privilege(1) 173:10
privileges(2) 101:17 101:21
pro(3) 23:13 23:16 24:7
pro-rata(2) 128:11 132:9
probably(18) 50:10 96:9 96:22 106:24 107:23 112:19 113:13 122:17 142:2 151:5 151:6 160:21 174:8 175:2 177:15 178:24 180:1 193:8

problem(16) 38:2 84:15 87:7 104:5 104:8 106:16 127:21 134:10 134:14 135:20 144: 168:12 175:9 175:12 177:17 180:25

problematic(1) 32:22
problems(4) 97:5 97:12 97:22 99:23
procedural(3) 165:8 175:8 201:15
proceed(7) 18:7 33:20 77:14 107:17 138:2 204:9 205:2

proceeded(1) 145:14
proceeding(7) 67:6 85:17 85:19 98:11 120:8 137:20 153:14

proceedings(20) 1:17 1:47 17:17 34:8 68:13 81:2 81:13 81:16 81:17 81:19 81:25 83:4 83:6 84:13 107:15 137:24 146:11 146:14 210:19 212:5

proceeds(12) 91:10 130:18 136:2 144:2 146:3 147:4 148:19 149:20 149:24 150:13 150:14 151:11

process(10) 17:18 20:5 30:22 69:10 70:13 75:17 98:15 98:16 202:13 205:15

produce(3) 137:11 138:3 143:22
produced(1) 1:48
product(4) 101:17 101:21 120:22 123:6
products(2) 145:7 146:5
professional(1) 68:19
professionals(21) 46:21 46:24 47:6 47:9 47:15 47:22 48:8 48:11 48:13 48:16 48:22 48:23 49:2 49:5 52:20 65:11 67:23 81:6 107:22 186:1 186:3

professor(4) 25:25 32:7 33:3 122:8
proffered(2) 59:25 185:14
profile(3) 118:10 118:11 124:7
progress(1) 205:11
prohibited(1) 148:19
prohibits(3) 70:17 102:16 190:4
pronounce(1) 162:14
proof(1) 40:6
proper(3) 132:4 132:12 186:17
properly(10) 81:7 116:25 126:3 127:18 128:16 128:21 132:21 135:9 177:8 178:14

property(3) 57:7 57:8 88:5
proponent(13) 21:11 22:4 40:7 48:6 90:23 93:3 97:12 112:19 153:10 178:1 182:12 183:1 200:17

proponent's(1) 129:20
proponents(112) 12:7 12:15 13:5 13:12 13:13 15:15 18:7 19:9 20:17 20:22 21:1 21:7 22:4 22:18 23:20 25:6 25:13 27:7 28:13 30:3 30:10 31:6 31:17 32:13 33:10 33:15 34:22 35:6 35:11 35:17 36:6 36:10 37:1 40:21 42:5 44:11 44:17 46:22 52:1 52:18 53:3 53:4 53:13 54:16 65:15 78:15 81:10 82:6 83:4 91:15 93:16 97:10 97:23 98:2 99:8 105:8 105:20 107:3 109:20 109:22 112:23 112:25 113:14 113:23 115:21 116:8 116:8 116:10 116:11 126:24 130:14 131:4 135:16 145:6 154:15 154:17 154:19 157:5 157:17 157:21 158:5 158:7 159:14 160:12 160:23 164:16 165:9 171:2 175:9 175:13 178:22 179:2 179:14 179:14 184:20 190:18 192:13 196:2 198:9 198:24 198:25 200:6 200:11 201:11 201:16 201:1 201:23 204:6 209:9 209:21 209:21 210:1

proponents'(3) 155:11 155:12 156:25
proportion(2) 16:7 58:17
proportionate(4) 57:10 58:11 58:15 59:4
proportionately(1) 55:7
proposal(1) 100:3
propose(8) 12:14 13:4 20:1 54:17 83:10 181:19 190:20 206:24

proposed(37) 39:19 39:22 39:23 41:25 42:4 42:18 42:21 42:25 43:15 44:1 45:22 46:3 46:5 46:9 47:25 48:10 48:12 49:22 52:4 53:18 61:23 62:3 88:6 91:11 102:15 103:6 103:19 111:19 155:4 172:16 182:5 186:2 190:22 192:21 206:21 207:7 208:3

proposing(1) 134:24
proposition(12) 44:5 95:12 113:24 145:8 151:18 162:10 169:4 173:15 175:19 177:9 177:10 177:13

propounded(1) 131:5
propriety(4) 39:15 46:5 66:6 145:12
prosecute(3) 21:20 100:6 149:4
prosecuted(2) 67:7 100:20
prospect(1) 200:24
prospects(2) 193:24 193:25
protect(4) 87:22 91:24 92:12 114:14
protected(1) 82:9
protection(3) 70:21 82:6 90:15
protections(5) 52:13 52:24 102:10 113:15 120:19

protects(1) 114:11
proud(1) 166:22
prove(4) 56:6 62:2 106:8 147:10
proved(2) 139:1 210:17
proven(1) 149:12
proves(1) 126:1
provide(19) 22:3 35:23 36:21 43:11 44:8 52:24 65:10 66:5 72:6 82:5 119:24 119:25 130:11 181:7 186:23 191:9 197:11 207:4 208:7

provided(19) 13:6 16:17 45:6 57:8 57:12 74:5 75:19 76:11 81:8 82:15 110:1 122:4 125:24 125:25 127:5 129:25 150:16 187:1 190:11

provides(21) 39:11 40:2 70:15 76:10 77:5 91:5 101:16 102:9 114:6 114:9 118:22 119:3 119:18 120:5 122:1 127:4 137:3 150:4 154:6 159:11 180:17

providing(2) 75:12 186:15
proving(3) 137:23 138:9 138:11

provision(22) 14:19 22:2 22:5 29:12 52:12 52:24 80:1 89:5 89:15 90:1 90:8 90:9 101:15 120:7 120:20 151:9 161:13 161:24 163:6 164:3 164:24 179:14

provisions(36) 21:17 21:20 21:24 24:3 24:9 29:5 29:8 30:7 31:12 32:1 33:1 33:5 46:2 48:24 49:3 51:2 52:10 52:16 53:3 53:6 65:12 86:2 101:23 127:2 127:8 127:14 127:23 128:14 128:19 128:24 129: 129:3 129:9 130:15 130:20 130:22

public(1) 90:9
pull(1) 23:23
purchased(1) 111:2
pure(2) 129:6 129:6
purport(3) 175:17 176:5 176:6
purportedly(1) 184:10
purports(1) 36:7
purpose(6) 38:18 51:14 51:15 93:15 170:7 184:9

purposes(8) 24:18 27:3 90:21 122:2 155:7 172:5 182:5 184:3

pursuant(8) 28:5 31:8 43:13 78:12 109:25 110:12 118:25 129:24

pursue(11) 41:17 55:14 55:15 59:5 59:6 91:19 94:10 95:8 96:14 102:1 103:21

pursued(8) 16:24 16:24 17:11 17:14 59:6 62:14 75:6 96:6

pursuing(9) 55:18 58:9 59:19 61:12 62:13 73:20 75:1 144:24 194:2

pushed(1) 56:8
put(27) 22:23 22:24 26:4 27:1 30:6 41:16 41:16 56:21 58:22 60:7 95:19 96:15 96:17 108:8 114:4 118:12 124:19 137:13 139:10 145:17 161:22 162:1 164:15 172:2 172:15 189:19 203:11

puts(3) 55:7 55:10 56:5
putting(2) 170:17 172:13
puzzling(3) 34:7 38:9 124:14
pws(1) 65:14
qualifications(1) 79:8
quality(1) 210:23
quantify(1) 72:18
quershi(1) 4:29
question(15) 17:21 23:10 23:18 34:15 34:20 65:24 66:10 70:8 131:16 131:17 135:8 146:10 208:10 208:24 211:9

questionable(1) 128:25
questioning(1) 104:17
questions(9) 20:12 30:25 34:25 64:12 83:15 99:20 125:7 164:19 207:3

quick(1) 207:16
quite(6) 82:18 94:19 154:18 166:17 168:15 168:21

quote(4) 112:19 132:6 172:2 174:16
quoting(2) 35:14 94:21
qureshi(2) 35:4 35:5
rachel(1) 8:39
raise(2) 37:10 179:5
raised(11) 13:2 22:1 25:5 83:25 104:5 126:7 161:11 173:8 200:25 208:23 209:16

raises(1) 32:22
ramifications(1) 164:7
range(2) 31:22 150:20
ranged(1) 24:21
rare(1) 86:12
rata(3) 23:13 23:16 24:8

rate(11) 110:4 110:7 117:16 117:21 118:2 118:8 118:21 118:23 118:25 121:2 193:17
rates(3) 113:4 117:24 118:6
rath(3) 3:27 3:28 5:40
rather(13) 30:1 51:6 72:23 91:19 91:20 99:25 108:1 111:10 114:24 194:7 194:14 198:13 208:19

rationale(2) 48:25 169:20
rationalize(1) 112:2
re-solicit(3) 201:16 201:18 201:20
re-solicitation(3) 200:7 200:11 200:15
reach(2) 25:9 150:4
reached(4) 99:8 102:4 145:24 167:24
read(13) 48:1 48:2 48:4 49:8 93:19 107:10 116:7 122:1 122:11 127:4 132:3 176:8 177:8

readily(2) 33:13 75:6
reading(5) 51:24 65:7 153:11 156:18 196:8
ready(1) 210:6
real(11) 44:21 55:10 68:10 69:12 89:2 89:10 90:17 99:18 102:5 103:20 134:14

reality(1) 176:19
realize(2) 90:4 177:17
realized(1) 177:20
realizing(1) 175:9
reallocated(1) 132:9
reallocation(1) 132:13
really(29) 15:6 19:15 29:22 30:11 30:12 36:1 58:21 67:18 84:14 88:18 95:20 104:2 106:18 109:5 109:7 109:11 109:25 134:1 141:5 147:23 148:1 163:1 165:11 165:12 182:15 182:16 190:19 192:16 202:13

reason(4) 48:9 68:9 70:16 93:23 95:21 109:3 165:14 168:22 190:7

reasonable(10) 33:18 60:1 60:5 66:11 66:17 82:2 89:1 91:3 153:6 190:6
reasonableness(4) 35:15 35:20 62:3 150:20
reasonably(7) 66:12 118:19 121:13 121:21 122:14 123:22 123:23

reasons(17) 37:23 46:1 74:7 90:10 91:18 104:21 106:21 106:22 113:18 116:24 118:16 123:3 126:2 134:19 147:13 178:6 208:5

rebecca(1) 10:30
rebuttal(2) 37:13 62:9
recall(14) 14:18 16:16 22:8 33:3 51:6 69:20 71:9 76:3 110:17 141:18 142:19 161:10 180:9 199:1

receive(17) 26:21 30:17 49:16 49:17 58:24 61:22 71:22 94:22 118:19 123:21 123:24 125:24 136:1 139:11 152:7 181:3 199:16

received(8) 49:14 49:19 61:7 71:15 71:17 71:18 71:21 75:13

receives(2) 91:9 119:24
receiving(8) 14:23 81:4 181:23 181:25 185:3 191:13 191:14 191:19

recent(13) 13:1 14:13 16:15 16:20 17:7 39:10 41:23 85:3 87:3 167:22 187:1 188:18 193:21

recently(2) 69:8 160:3
recess(9) 65:1 65:2 78:4 78:5 78:6 147:18 147:19 203:23 203:25

recitation(1) 85:22
reckon(1) 186:12
reclassification(1) 111:16
recognize(2) 59:3 104:11
recognized(1) 56:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **recognizes**(1) 104:16 | | **related**(32) 19:11 21:9 21:10 21:11 36:11 50:16 50:18 50:24 52:10 53:4 53:8 67:3 67:12 70:7 77:11 78:22 79:1 79:6 79:9 79:11 79:12 79:15 79:23 79:24 80:6 94:15 111:5 130:11 149:2 149:5 181:11 182:24 | | **reorganized**(7) 25:16 29:2 101:3 101:12 102:1 102:11 187:5 | | **respect**(94) 12:18 12:20 14:8 21:8 21:15 28:7 29:19 29:20 30:4 30:9 30:11 30:23 33:2 34:21 35:1 35:8 37:8 38:3 38:5 40:12 40:24 41:9 42:10 43:18 46:20 49:9 49:13 49:18 50:2 57:18 59:9 59:22 59:18 61:5 61:24 67:14 69:7 70:6 70:16 71:2 71:8 75:22 77:6 78:21 79:1 82:22 83:25 84:5 84:7 84:15 87:5 88:2 88:7 88:13 88:19 90:16 94:4 96:4 97:21 97:22 103:18 104:15 106:17 108:9 111:8 111:20 121:4 127:19 128:4 128:6 128:8 130:4 132:14 138:18 138:19 144:15 151:23 151:25 155:7 161:4 170:2 172:10 173:20 174:9 175:24 179:22 187:9 188:24 191:17 192:22 200:7 205:3 208:13 208:14 |
| **recognizing**(1) 204:25 | | | | **repaid**(3) 100:4 137:4 150:9 | | |
| **reconsider**(1) 200:15 | | **relates**(8) 41:8 114:16 127:20 186:25 187:7 188:25 197:22 200:16 | | **repay**(2) 100:13 100:18 | | |
| **reconvene**(1) 78:5 | | | | **repayment**(1) 91:11 | | |
| **record**(15) 35:5 53:12 87:9 106:6 106:8 109:9 133:6 134:16 135:6 147:21 154:13 179:20 208:17 210:2 210:14 | | **relating**(4) 112:18 166:9 166:9 192:19 | | **repeatedly**(2) 15:14 142:8 | | |
| | | **relations**(1) 130:6 | | **replies**(1) 211:4 | | |
| | | **relationship**(2) 44:1 79:16 | | **reply**(6) 181:10 182:1 182:8 194:21 198:6 206:25 | | |
| **recorded**(1) 1:47 | | **relative**(2) 59:21 127:6 | | | | |
| **recording**(2) 1:47 212:4 | | **relatively**(6) 80:2 153:13 179:21 187:25 199:3 207:16 | | **report**(7) 19:3 78:9 185:9 185:12 205:14 206:4 206:10 | | **respectfully**(3) 84:20 89:22 96:24 |
| **recover**(6) 74:21 75:7 88:12 111:19 119:19 136:5 | | | | | | **respective**(9) 28:10 46:18 99:12 101:1 101:3 101:13 128:16 152:8 181:4 |
| | | **release**(77) 16:18 16:21 17:2 17:3 17:8 37:18 37:25 38:2 38:3 38:5 38:6 38:6 39:23 40:8 40:19 40:24 41:7 41:8 41:17 43:8 44:1 44:2 44:15 46:1 49:6 50:2 50:5 50:12 50:12 50:18 50:21 50:24 50:25 51:1 51:2 51:5 52:4 52:7 55:2 57:15 60:6 65:15 65:18 65:20 65:21 65:25 66:15 68:5 68:8 70:8 70:15 71:1 71:6 71:12 71:14 71:24 72:1 74:15 74:16 75:8 75:22 75:24 75:24 76:1 76:17 78:21 80:4 80:5 80:17 83:14 87:22 88:7 90:14 92:1 125:3 197:2 198:4 | | **reported**(1) 134:19 | | **respects**(3) 38:2 84:2 201:6 |
| **recoveries**(29) 36:7 47:10 91:6 92:7 92:22 97:25 128:17 132:13 132:16 133:15 133:1 136:21 140:4 141:21 143:22 146:20 150:6 150:8 150:20 152:8 154:7 181:1 181:4 181:17 184:13 184:23 185:10 186:11 191:16 | | | | **reporter**(1) 134:20 | | **respond**(3) 12:22 37:11 83:24 |
| | | | | **represent**(2) 19:9 211:1 | | **responding**(1) 200:4 |
| | | | | **representative**(1) 201:22 | | **response**(11) 64:23 83:14 108:5 112:23 114:15 129:20 129:21 144:8 148:12 194:20 211:17 |
| | | | | **represented**(2) 117:9 117:11 | | |
| | | | | **representing**(2) 83:23 180:23 | | |
| | | | | **represents**(2) 93:2 117:15 | | |
| **recoveries"**(1) 186:7 | | | | **reprise**(1) 87:16 | | **rest**(1) 68:17 |
| **recovering**(2) 148:19 149:7 | | | | **repudiation**(2) 171:22 171:25 | | **restored**(1) 14:8 |
| **recovery**(32) 22:14 23:23 27:24 29:23 30:15 36:16 88:14 92:8 92:21 95:4 95:12 111:20 122:2 127:18 128:6 128:8 128:12 129:8 130:11 130:23 133:16 136:19 145:1 150:12 181:7 184:1 185:15 189:16 191:1 191:14 191:18 192:1 | | | | **request**(3) 25:13 179:13 210:2 | | **restrict**(1) 97:20 |
| | | | | **requested**(3) 25:14 30:2 174:17 | | **restriction**(1) 102:21 |
| | | | | **require**(1) 29:10 | | **restructuring**(1) 68:13 |
| | | **released**(32) 17:13 40:11 50:24 52:3 57:12 57:13 57:14 67:2 67:4 67:11 67:15 67:17 69:17 70:6 71:19 78:22 78:25 79:4 79:6 79:9 79:12 79:15 79:20 79:22 79:23 80:1 80:14 89:25 92:1 130:1 136:25 138:24 | | **required**(17) 18:4 18:6 19:2 29:5 29:21 30:13 34:23 43:19 110:2 110:2 161:22 162:9 163:4 164:5 164:15 179:13 200:18 | | **result**(15) 19:6 25:4 88:22 89:14 108:4 110:5 111:15 129:14 124:1 129:7 145:15 160:20 167:22 181:22 194:8 |
| **rectified**(1) 195:22 | | | | | | |
| **redeem**(1) 49:11 | | | | | | |
| **redeemed**(1) 70:13 | | | | | | |
| **redemption**(2) 49:14 49:19 | | | | **requirement**(20) 44:3 44:15 155:12 155:13 155:15 155:16 156:22 157:7 157:15 158:13 158:14 159:12 159:9 160:24 160:24 161:2 164:12 179:4 179:5 179:9 | | |
| **redirecting**(1) 140:5 | | | | | | **resulted**(1) 158:21 |
| **redistribute**(1) 128:16 | | **releasee**(2) 39:19 39:23 | | | | **resulting**(2) 110:14 121:14 |
| **reduce**(2) 55:6 188:19 | | **releasees**(1) 49:22 | | | | **results**(8) 19:3 19:5 111:13 129:4 129:4 129:7 129:17 130:23 |
| **reduced**(1) 33:9 | | **releases**(63) 13:7 16:17 37:24 39:7 39:12 39:15 40:7 40:10 41:20 41:25 42:4 42:14 42:18 42:21 42:25 43:7 43:15 43:22 44:4 44:7 44:11 45:1 45:5 45:22 46:4 46:6 46:8 46:9 47:4 47:20 47:24 47:25 48:7 48:10 48:12 48:14 48:19 49:1 49:4 49:25 50:15 50:18 50:22 50:22 65:10 66:3 66:6 66:11 66:14 66:20 66:21 66:23 66:24 67:7 67:9 75:19 76:11 77:6 78:16 78:21 80:22 82:22 94:16 | | **requires**(4) 42:20 44:16 45:18 112:16 | | |
| **reduces**(1) 188:8 | | | | **requiring**(1) 100:12 | | **rethink**(1) 202:11 |
| **reducing**(1) 189:4 | | | | **requisite**(2) 43:16 44:12 | | **retiree**(6) 49:15 49:17 75:21 130:5 130:12 133:12 |
| **reduction**(7) 55:5 57:10 58:12 58:15 59:4 59:16 87:7 | | | | **researching**(1) 167:1 | | |
| | | | | **reserve**(35) 21:14 22:23 22:24 23:2 23:3 23:6 24:7 25:7 25:19 26:4 26:6 26:16 27:1 27:10 28:10 42:10 116:15 179:23 188:5 188:8 188:12 188:20 189:2 189:5 189:24 190:3 190:22 192:20 192:25 193:1 193:8 193:10 194:19 199:17 | | **retirees**(6) 76:2 76:8 76:11 76:16 77:2 129:24 |
| **refco**(4) 142:3 142:5 142:25 143:4 | | | | | | |
| **refer**(8) 58:14 60:15 60:18 84:20 89:22 117:18 187:2 187:10 | | | | | | **retirement**(1) 70:12 |
| | | **releasing**(4) 17:1 40:12 40:23 69:24 | | | | **return**(2) 71:21 77:4 |
| | | **relevance**(4) 153:2 167:11 169:2 178:17 | | **reserved**(5) 21:12 31:16 32:5 33:8 188:16 | | **reverse**(1) 129:14 |
| **reference**(8) 47:23 62:9 113:4 117:23 120:15 124:12 124:13 184:24 | | **relevant**(5) 71:11 79:5 94:14 169:1 170:13 | | **reserving**(1) 22:10 | | **reverted**(2) 54:2 87:18 |
| | | **relied**(2) 69:19 160:22 | | **reserving**(2) 26:18 36:2 | | **review**(2) 42:18 45:22 |
| | | **reluctance**(1) 101:25 | | **reside**(1) 56:5 | | **reviewed**(2) 41:21 73:2 |
| **referenced**(1) 153:9 | | **rely**(4) 29:15 55:22 55:23 164:12 | | **resistance**(1) 111:1 | | **reviewing**(3) 39:14 46:6 46:17 |
| **referred**(3) 39:17 60:17 63:2 | | **remain**(3) 17:2 42:1 121:17 | | **resolicit**(1) 30:14 | | **revised**(1) 103:1 |
| **refers**(1) 105:18 | | **remained**(1) 194:12 | | **resolicitation**(19) 12:18 12:21 12:23 17:21 18:4 18:6 18:8 18:14 18:14 18:20 19:1 19:3 19:5 20:11 29:18 29:19 29:21 30:13 34:20 34:22 | | **revisions**(1) 103:16 |
| **reflect**(2) 64:12 210:8 | | **remaining**(9) 37:5 37:8 37:9 39:4 78:14 133:12 148:22 149:4 182:20 | | | | **richards**(1) 3:14 |
| **reflected**(1) 73:8 | | | | | | **ride**(1) 69:11 |
| **reflection**(1) 28:22 | | | | | | **rifkind**(2) 6:17 8:29 |
| **regard**(7) 31:18 33:5 44:17 85:13 150:1 158:19 201:9 | | **remains**(2) 38:3 114:22 | | **resoliciting**(1) 30:21 | | **right**(52) 15:6 15:19 16:5 41:19 42:18 43:6 58:17 58:22 60:14 67:8 70:14 73:24 74:10 74:14 76:25 77:24 78:4 79:2 83:19 94:6 94:7 101:23 104:19 104:22 105:6 105:11 105:13 119:18 121:10 124:11 132:5 134:2 139:14 143:5 148:10 152:4 154:3 165:2 165:15 166:1 167:15 168:13 168:19 177:6 181:20 195:17 196:13 199:24 203:22 210:13 211:16 211:18 |
| | | **remarkable**(1) 129:21 | | **resolution**(9) 22:5 23:8 23:17 24:23 25:8 26:14 105:3 107:16 167:22 | | |
| **regarding**(8) 37:4 38:9 109:24 135:17 135:21 143:14 144:14 199:16 | | **remarks**(4) 84:1 93:19 97:21 116:4 | | | | |
| | | **remedies**(1) 127:12 | | | | |
| | | **remedy**(1) 35:21 | | **resolvable**(1) 104:2 | | |
| **regardless**(7) 23:21 27:25 30:16 89:25 90:16 184:1 192:6 | | **remember**(1) 85:25 | | **resolve**(12) 16:11 21:3 27:9 35:10 37:21 86:13 104:1 141:24 146:8 202:16 205:9 209:10 | | **rightly**(5) 30:17 82:19 85:15 163:15 208:2 |
| | | **remotely**(1) 121:4 | | | | **rights**(10) 42:24 55:15 58:6 76:18 116:16 127:7 127:12 131:12 131:13 199:17 |
| | | **removal**(1) 33:4 | | | | |
| **regular**(1) 127:19 | | **remove**(4) 29:3 29:12 37:18 133:11 | | **resolved**(2) 80:21 176:22 | | |
| **regulation**(3) 196:20 196:23 196:25 | | **render**(1) 128:2 | | **resolving**(1) 205:15 | | |
| **regulations**(1) 195:11 | | **rendered**(5) 55:21 137:25 138:11 142:7 142:14 | | **resorts**(2) 160:7 175:20 | | **rise**(10) 12:19 63:19 78:7 83:17 118:21 119:21 126:25 147:20 204:1 209:20 |
| **rehabilitation**(1) 44:9 | | | | **resounding**(2) 124:16 124:18 | | |
| **reinforce**(1) 144:15 | | | | **resources**(3) 39:21 67:21 73:19 | | |
| **reject**(5) 41:9 162:5 162:6 163:8 173:10 | | **rendering**(2) 130:25 184:15 | | | | |
| **rejected**(6) 44:25 45:1 48:10 48:12 134:23 171:12 | | **renders**(2) 152:24 190:13 | | | | **rises**(1) 197:11 |
| | | **reorganization**(22) 12:16 34:18 39:24 43:23 43:25 44:5 47:7 48:20 66:12 75:16 81:2 81:13 81:25 82:16 83:4 83:5 112:21 115:22 155:5 155:7 157:13 158:25 | | | | |
| **rejecting**(4) 155:20 167:25 168:3 181:24 | | | | | | |
| **rejection**(4) 169:11 169:14 171:21 178:17 | | | | | | |
| **relate**(2) 18:9 52:14 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| risk(29) 15:23 27:14 27:16 34:1 55:8 55:18 56:21 57:9 58:13 58:18 58:22 59:3 61:9 61:19 61:21 61:24 68:10 68:17 69:1 75:17 118:2 118:10 118:11 118:22 121:2 121:22 124:7 125:23 192:10 | | satisfaction(1) 52:6 satisfactory(3) 12:12 147:7 207:1 satisfied(10) 45:3 45:19 50:14 66:9 83:1 157:15 158:2 159:22 172:5 172:13 | | securities(3) 8:34 8:34 25:20 security(1) 141:17 see(24) 12:11 27:4 27:25 33:13 34:19 62:16 77:25 90:12 95:16 106:18 107:5 130:19 138:5 139:20 142:1 144:21 148:2 156:17 176:20 179:2 194:16 203:14 210:1 211:10 | | settlement(98) 24:1 28:5 28:8 28:15 28:18 28:19 33:12 33:18 34:12 35:15 35:20 35:21 36:13 36:17 36:20 37:4 38:9 38:10 38:14 38:14 38:17 39:1 58:10 59:13 59:24 60:4 61:23 62:4 63:3 63:9 63:13 76:5 76:7 76:8 77:2 81:20 82:1 82:4 82:7 83:3 88:9 88:21 88:22 88:25 91:4 103:6 103:8 107:13 111:6 111:18 111:19 111:22 111:23 115:5 116:13 123:7 124:25 125:16 127:19 128:8 128:12 129:25 130:1 130:10 130:17 130:18 132:13 138:4 138:17 139:19 139:11 139:15 139:18 145:23 146:1 147:11 147:25 148:6 149:18 149:19 149:22 150:3 150:15 150:19 151:6 151:8 151:16 151:18 152:4 152:5 152:19 152:20 152:24 153:6 183:14 191:6 194:14 198:3 |
| riskiest(1) 187:20 risks(1) 33:23 road(12) 42:8 59:20 60:15 60:25 138:16 139:3 143:23 146:10 146:12 146:17 154:2 154:9 robert(3) 2:7 3:15 10:23 rochester(1) 7:17 rockefeller(1) 3:42 rodney(1) 3:16 role(2) 106:15 106:15 roll(1) 37:5 room(3) 90:2 97:4 141:1 rosenblatt(1) 3:40 rosenman(1) 10:25 rosner(1) 10:10 roth(1) 8:42 rough(1) 185:10 roughly(1) 14:10 rubric(1) 168:23 rudnick(1) 3:21 rug(1) 150:23 | | satisfies(2) 156:13 197:14 satisfy(14) 13:24 27:1 36:14 43:20 46:25 47:1 49:23 52:5 77:8 79:19 137:14 159:12 164:10 179:5 satisfying(1) 155:8 save(1) 46:13 saving(1) 143:21 savings(1) 49:12 saw(1) 188:1 say(74) 15:1 15:5 15:9 27:10 27:12 34:14 35:13 40:15 47:14 50:23 55:20 56:1 58:19 59:19 60:23 61:17 63:21 74:2 85:14 93:3 95:7 95:19 95:25 99:6 107:3 107:8 108:5 109:3 115:4 119:12 121:10 123:3 123:6 132:16 133:7 139:19 141:20 143:20 144:2 145:1 146:12 147:7 153:23 157:1 163:14 163:23 164:10 169:20 170:25 171:5 171:2 172:3 174:19 174:20 175:20 175:23 177:23 182:4 183:1 183:5 183:8 183:17 185:17 190:23 192:15 192:19 193:3 193:2 193:25 194:21 194:23 195:4 198:14 208:2 | | seek(7) 18:12 19:21 70:18 91:24 168:1 207:12 209:17 seeking(2) 19:13 51:8 seeks(1) 53:2 seem(3) 38:19 64:5 164:16 seemed(2) 38:11 46:10 seemingly(1) 111:12 seems(7) 49:20 95:10 153:12 175:20 201:5 202:4 202:9 seen(1) 114:22 seife(1) 3:36 selection(2) 98:15 106:15 selling(16) 16:19 17:4 17:8 17:13 17:15 37:19 38:4 38:6 40:10 41:10 49:7 50:2 55:4 71:22 74:2 87:4 87:4 semcrude(2) 100:15 101:9 send(2) 176:7 199:20 senior(92) 12:25 14:20 14:22 15:9 15:12 17:25 18:2 18:4 18:8 18:14 19:1 19:7 19:10 21:17 21:19 21:24 28:4 28:13 28:14 30:15 30:17 30:19 31:7 32:18 33:16 33:16 33:22 35:24 36:7 36:15 36:22 38:11 38:1 38:20 38:21 39:2 42:4 42:12 44:18 44:23 45:16 46:18 52:17 79:6 79:14 80:9 81:20 82:15 91:4 91:7 91:13 91:16 92:8 92:13 92:19 97:19 97:24 99:13 107:11 109:25 110:4 110:9 110:10 110:12 110:19 110:20 111:4 111:6 111:10 112:5 112:6 112:8 112:10 113:2 113:10 113:16 115:8 128:9 128:18 129:14 129:25 130:5 130:9 132:4 132:9 132:17 133:15 133:17 136:4 144:13 171:13 192:7 | | settlement's(1) 149:9 shared(2) 96:25 210:6 shareholder(2) 87:24 142:23 shareholders(29) 16:19 17:5 17:9 17:13 17:15 37:20 38:4 38:5 38:7 40:1 40:11 41:10 41:10 50:2 54:1 54:23 55:4 55:15 56:3 56:4 56:9 61:3 61:10 74:17 87:20 89:13 137:2 138:13 142:25 shares(7) 61:4 71:13 71:22 75:23 76:12 77:6 149:6 sharing(21) 12:25 21:17 21:20 21:24 22:2 22:5 23:17 24:9 24:23 24:24 25:8 30:4 30:7 30:9 31:7 31:9 31:12 95:15 145:12 146:16 150:6 shaya(1) 7:17 she(16) 46:8 48:12 48:13 50:22 52:20 94:17 94:20 158:11 158:12 158:14 158:15 158:16 158:18 172:22 172:23 203:4 sheet(1) 202:18 sheffield(1) 10:20 shell(4) 167:16 171:1 171:6 178:15 shelley(1) 212:9 shelter(1) 194:17 sheron(1) 10:6 she's(1) 203:4 shift(1) 115:5 shifted(1) 56:3 shifting(1) 111:23 shine(1) 104:24 ship(3) 140:11 140:24 141:10 short(12) 14:7 18:10 18:13 18:23 20:17 35:22 75:7 77:1 175:14 199:4 203:22 211:4 |
| ruled(3) 50:19 53:24 61:25 rules(5) 42:8 155:1 174:6 174:6 178:4 ruling(9) 40:22 52:25 52:25 54:5 109:12 141:7 147:3 163:24 195:13 | | | | | | |
| rulings(2) 42:17 146:21 run(5) 14:6 51:11 52:15 96:8 122:25 running(2) 39:12 97:1 runs(1) 154:18 rushabh(1) 10:38 russano(1) 3:8 ruti(17) 162:10 162:25 163:15 168:19 169:19 169:21 170:1 170:5 170:9 170:10 170:13 170:15 170:24 171:4 173:17 178:1 178:16 | | saying(6) 56:2 96:7 121:8 159:15 168:12 200:13 says(15) 58:5 89:20 94:23 98:22 105:14 121:22 125:17 133:11 134:22 152:7 168:2 169:10 172:2 174:2 177:1 scale(2) 108:9 134:12 scenario(4) 88:15 180:21 181:9 184:22 scenarios(4) 122:2 122:4 122:5 185:11 schaible(1) 3:6 schedule(7) 18:16 108:22 201:23 202:7 203:15 205:5 205:13 | | sense(14) 33:14 33:23 34:2 34:3 38:12 57:17 61:22 75:2 88:8 89:2 119:16 131:9 182:21 202:12 sent(1) 199:15 sentence(1) 122:11 sentences(1) 132:11 separate(2) 153:5 177:19 separately(3) 115:2 123:5 124:10 separateness(3) 176:8 176:10 176:13 september(1) 157:9 series(1) 179:21 serious(2) 198:11 198:12 service(3) 1:41 1:48 75:13 services(2) 1:41 11:12 serving(1) 105:24 set(16) 12:17 13:5 14:8 14:13 22:20 27:22 27:23 29:10 29:16 90:11 100:11 103:25 138:15 140:11 199:1 207:7 | | shortchanges(1) 15:8 shortcut(1) 170:16 shorter(2) 21:4 172:14 |
| s-corp(1) 194:10 s.d.n.y(1) 160:3 sachs(1) 9:24 9:24 safe(3) 114:6 195:4 211:20 safest(1) 187:21 said(72) 26:2 28:14 38:16 38:16 41:21 42:19 48:14 49:8 52:19 57:16 57:25 60:1 76:16 78:24 82:19 85:20 86:19 88:16 94:20 95:2 95:10 96:5 96:13 97:3 98:17 103:14 103:19 105:23 107:21 108:20 112:1 114:11 126:19 129:16 131:20 133:7 133:8 134:6 142:8 145:16 151:20 158:1 158:11 159:18 160:4 161:13 161:16 162:4 162:22 163:3 165:23 170:17 172:8 172:17 172:22 173:5 173:22 174:12 174:15 177:19 179:1 184:24 186:14 188:3 191:18 192:1 199:15 201:18 202:23 209:3 210:5 211:3 | | scheduled(5) 13:18 203:6 205:23 206:25 211:10 schedules(1) 68:1 scheduling(2) 202:3 202:11 scheme(5) 110:22 112:3 114:10 114:24 115:20 schemes(1) 113:24 scholer(1) 8:8 schott(1) 8:5 schotz(1) 1:32 schulte(1) 8:42 schuylkill(1) 1:42 scope(4) 67:9 81:3 81:8 134:12 scott(2) 9:25 9:41 scoured(2) 168:7 168:9 seated(2) 78:7 147:20 second(25) 12:17 20:21 21:1 24:15 25:11 30:2 37:2 37:17 39:21 57:21 60:16 65:19 72:2 73:13 78:22 79:21 100:25 105:23 109:10 113:13 114:6 117:9 128:14 132:7 178:12 seconds(1) 14:2 section(61) 15:10 40:18 66:14 72:25 79:4 106:19 112:15 112:18 113:15 114:6 114:9 119:2 119:7 119:12 119:23 119:25 120:16 120:19 122:12 127:3 127:25 156:7 156:13 156:20 157:12 159:10 159:12 159:22 160:5 165:13 166:3 168:5 168:11 168:23 169:8 169:8 169:10 169:16 170:7 170:22 171:19 171:25 172:3 172:4 172:4 176:5 177:13 177:17 178:9 179:3 180:6 181:22 182:3 182:12 190:4 196:18 196:20 196:23 196:25 197:1 197:13 sections(1) 148:17 | | sets(2) 129:4 134:3 setting(3) 18:24 34:9 79:7 94:1 94:3 122:16 209:2 settle(14) 35:25 57:12 57:15 80:5 80:8 82:24 88:17 88:18 103:4 111:5 139:7 146:24 146:24 148:9 settled(12) 33:17 61:25 76:5 88:6 88:12 89:2 90:16 138:6 139:19 149:20 150:24 152:9 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| shortly(1) 85:10 | | sleep(1) 86:4 | | sought(3) 44:9 74:2 195:13 | | stay(2) 93:4 184:9 | |
| shot(1) 95:6 | | slight(1) 11:7 | | sound(2) 1:47 212:4 | | stayed(2) 96:4 120:6 | |
| shots(1) 170:10 | | slightly(1) 41:14 | | sounds(1) 57:17 | | staying(2) 95:13 96:2 | |
| should(78) 13:3 13:20 13:24 19:11 33:25 | | slow(2) 30:22 202:13 | | south(1) 1:28 | | stays(1) 129:11 | |
| 34:19 37:25 44:8 50:15 50:21 52:8 52:25 | | small(5) 12:10 20:18 72:24 86:18 191:25 | | southern(5) 94:23 142:3 157:23 159:6 | | ste(4) 1:35 2:17 2:44 4:15 | |
| 55:9 56:3 56:4 56:8 56:23 60:6 60:7 61:8 | | smart(1) 109:13 | | spades(1) 154:10 | | stearn(1) 3:15 | |
| 61:10 61:16 61:21 61:23 62:5 62:17 64:6 | | smith(2) 11:27 11:27 | | spaeder(6) 4:5 5:34 12:5 65:4 198:20 | | steel(1) 101:8 | |
| 68:20 71:6 74:14 81:14 82:2 85:24 88:10 | | so-called(7) 38:6 39:3 40:11 40:24 41:17 | | spansion(4) 66:13 66:20 69:19 71:24 | | steen(1) 89:9 | |
| 93:1 99:9 99:10 105:10 106:9 107:23 | | 50:4 164:21 | | sparse(1) 156:20 | | steen's(1) 89:23 | |
| 108:10 109:14 114:23 115:2 115:4 115:18 | | | | speak(18) 14:12 17:21 32:18 39:5 52:9 | | stenger(1) 3:37 | |
| 116:17 116:20 118:15 127:11 128:11 | | sold(4) 70:13 71:12 77:7 107:11 | | 53:14 72:20 73:14 73:25 78:20 80:24 84:4 | | step(58) 16:19 17:4 17:8 17:13 17:14 | |
| 128:15 136:20 141:4 141:6 141:21 143:5 | | sole(3) 84:22 102:19 156:5 | | 85:10 107:2 135:18 135:20 173:20 204:24 | | 21:19 21:22 21:23 23:12 23:14 23:15 | |
| 143:6 147:15 153:2 160:21 162:13 165:13 | | solely(2) 128:17 187:6 | | | | 23:16 23:18 23:19 23:19 23:20 23:21 | |
| 171:1 171:7 171:25 176:23 177:1 178:7 | | solicit(1) 162:21 | | speaking(2) 99:11 187:25 | | 23:23 24:6 24:6 24:25 25:2 26:20 26:21 | |
| 178:13 192:11 193:14 195:20 197:11 | | solicitation(5) 170:3 199:15 200:18 201:12 | | special(4) 2:35 12:5 65:4 162:2 | | 27:13 27:13 30:9 30:9 31:10 31:10 31:10 | |
| 197:12 199:3 202:11 209:3 | | 204:7 | | species(1) 139:22 | | 34:11 36:13 36:13 36:14 37:19 38:4 40:10 | |
| | | | | specific(2) 66:22 112:1 | | 40:11 41:10 41:10 42:6 42:7 46:19 50:2 | |
| shouldn't(1) 125:23 | | solicitations(1) 211:11 | | specifically(12) 39:8 40:9 45:21 74:3 | | 55:3 55:3 120:21 135:25 136:1 136:15 | |
| shouldn't(2) 152:22 206:15 | | solicited(5) 163:13 168:18 177:12 178:15 | | 115:14 119:3 119:6 131:25 131:25 184:23 | | 136:16 138:20 138:21 138:22 138:23 | |
| shoved(1) 189:9 | | 201:12 | | 187:2 194:23 | | 138:24 144:15 | |
| show(6) 36:7 48:15 48:16 48:18 145:13 | | | | spectrum(1) 167:20 | | | |
| 171:7 | | solution(1) 164:17 | | speech(1) 165:11 | | stepchild(1) 166:4 | |
| | | solve(2) 104:5 104:7 | | spell(1) 162:14 | | stephen(1) 2:23 | |
| showing(3) 43:16 44:12 68:1 | | solvent(1) 144:11 | | spelled(3) 102:13 102:14 134:18 | | steps(1) 128:5 | |
| shown(1) 91:23 | | some(91) 12:7 12:10 14:7 17:18 18:2 | | spend(2) 45:20 46:16 | | steven(1) 9:20 | |
| shows(2) 24:19 135:6 | | 18:24 20:19 21:6 21:6 23:25 31:4 31:15 | | spent(4) 16:18 34:7 46:2 85:25 | | still(20) 31:24 32:1 32:4 38:2 38:2 38:4 | |
| side(11) 35:9 63:6 90:2 97:4 102:6 103:14 | | 34:22 38:2 39:14 45:13 45:14 46:13 61:1 | | sperling(1) 9:19 | | 39:11 48:6 54:7 64:2 78:11 124:18 134:2 | |
| 108:9 116:15 141:1 185:25 204:11 | | 61:22 64:11 65:5 67:9 71:15 73:19 76:4 | | spoke(1) 60:9 | | 145:19 166:25 187:13 187:14 188:16 | |
| | | 77:21 84:17 85:10 85:13 91:18 94:17 97: | | sponsor(1) 142:16 | | 190:19 203:1 | |
| side's(1) 14:8 | | 103:7 103:15 103:16 104:3 105:9 107:1 | | sprinkle(1) 130:16 | | | |
| sides(2) 14:10 54:13 | | 107:5 107:15 107:23 107:24 108:17 108: | | square(2) 3:16 174:25 | | stipulated(1) 167:22 | |
| sidley(3) 1:23 6:29 206:7 | | 108:21 108:24 109:1 116:5 118:12 121:2 | | stage(1) 98:11 | | stipulation(1) 167:24 | |
| siegel(1) 3:22 | | 131:15 133:17 133:23 134:7 136:10 138:1 | | stake(2) 48:14 195:19 | | stock(22) 27:17 27:18 29:24 49:11 49:15 | |
| sieger(1) 10:26 | | 141:25 146:23 154:2 154:8 154:8 163:1 | | stand(11) 44:5 65:1 72:5 78:5 106:14 | | 49:19 70:12 70:13 70:16 75:5 187:5 187:6 | |
| signed(3) 125:3 131:23 167:25 | | 165:4 166:10 167:23 168:9 169:2 170:10 | | 109:12 133:2 147:18 169:4 173:14 211:19 | | 188:15 189:5 189:13 191:21 191:22 193:19 | |
| significance(5) 116:17 132:22 132:23 | | 175:17 178:2 188:20 191:15 191:16 192:5 | | | | 193:20 193:22 193:25 194:3 | |
| 133:20 133:21 | | 193:8 193:22 198:11 198:16 199:11 | | standard(10) 46:5 66:2 66:19 66:21 73:3 | | | |
| | | 199:19 201:6 201:15 202:8 203:7 204:5 | | 74:14 118:25 119:1 160:16 164:21 | | stockholder(7) 40:25 41:8 41:18 49:6 | |
| significant(11) 37:22 43:8 43:9 43:12 | | 204:21 205:1 205:13 207:5 207:10 | | | | 50:13 70:9 92:1 | |
| 47:11 70:3 100:5 103:20 129:17 206:2 | | | | standards(7) 47:17 60:21 65:13 82:21 | | | |
| 206:11 | | somebody(4) 79:12 103:13 162:23 203:15 | | 82:25 108:7 139:15 | | stockholders(4) 49:7 49:10 50:4 87:4 | |
| | | somebody's(1) 29:23 | | | | stone(1) 146:17 | |
| significantly(2) 15:1 206:17 | | somehow(12) 15:21 118:14 120:22 121:6 | | standing(2) 57:19 59:11 | | stop(5) 13:21 37:14 150:3 171:7 176:11 | |
| silent(1) 103:10 | | 125:14 125:16 125:23 125:23 130:14 | | stands(2) 113:23 171:5 | | stops(1) 202:23 | |
| silverstein(1) 2:22 | | 152:24 172:24 199:13 | | stanley(1) 137:1 | | story(1) 171:9 | |
| simes(1) 7:35 | | | | stargatt(1) 2:4 | | straightforward(2) 128:5 143:18 | |
| similar(18) 75:2 112:17 113:8 113:11 | | someone(3) 70:24 80:13 144:23 | | stark(1) 150:10 | | strange(1) 178:4 | |
| 113:20 116:22 116:24 121:24 123:4 124:6 | | something(21) 22:18 37:12 43:7 79:13 | | start(8) 31:3 37:23 65:5 70:10 90:21 | | strauss(11) 4:26 7:16 35:5 36:25 53:12 | |
| 124:7 124:9 124:10 130:6 149:10 163:2 | | 108:8 122:16 136:5 137:10 137:10 142:18 | | 139:6 139:8 157:7 | | 74:1 97:9 109:19 126:22 135:15 154:13 | |
| 180:16 200:20 | | 151:20 151:21 153:22 154:21 155:23 | | | | | |
| | | 164:22 173:15 178:2 192:3 197:11 207:19 | | started(1) 59:17 | | street(13) 1:11 1:42 2:9 2:25 2:38 2:44 | |
| similarities(2) 46:7 112:9 | | | | starting(2) 112:14 116:19 | | 3:17 3:23 3:30 4:8 4:22 4:43 5:8 | |
| similarly(4) 125:25 135:1 181:25 194:14 | | sometimes(4) 78:2 156:16 166:13 203:13 | | startling(2) 129:5 130:8 | | | |
| simmons(1) 11:19 | | somewhat(4) 69:3 94:19 125:8 140:22 | | state(44) 16:20 16:22 17:10 25:15 40:12 | | strength(3) 34:9 144:16 145:1 | |
| simple(1) 187:16 | | song(1) 10:30 | | 40:15 40:23 53:19 54:1 54:18 55:21 56:23 | | strengthens(1) 35:14 | |
| simply(16) 13:10 20:6 43:18 49:24 63:12 | | soon(1) 202:4 | | 59:10 60:19 61:24 62:12 62:18 84:16 | | strenuously(1) 35:16 | |
| 71:4 85:20 89:21 113:16 116:22 118:12 | | sophisticated(2) 68:8 80:10 | | 85:21 85:23 86:20 86:24 87:5 87:14 87:18 | | stresses(1) 169:19 | |
| 128:23 163:19 178:2 190:1 198:8 | | sorely(1) 78:2 | | 87:19 88:3 88:13 88:17 88:19 89:3 91:19 | | stricken(1) 50:1 | |
| | | sorry(15) 19:20 32:2 74:1 98:18 109:19 | | 92:4 92:10 95:14 96:21 106:5 113:2 | | strict(1) 145:2 | |
| sina(1) 10:34 | | 126:18 126:19 128:7 131:17 161:14 163:3 | | 117:14 125:4 129:22 131:25 144:12 196:1 | | strictures(1) 184:14 | |
| since(6) 51:23 70:22 78:16 85:25 103:11 | | 165:22 166:12 169:23 199:7 | | | | stringent(1) 82:25 | |
| 167:12 | | | | stated(7) 40:21 41:13 128:20 133:22 136:4 | | strip(15) 14:21 14:23 16:7 17:23 17:25 | |
| | | sort(9) 54:24 90:9 106:3 107:9 134:11 | | 161:19 184:9 | | 19:24 25:19 26:18 35:8 64:2 187:4 187:12 | |
| sing(1) 104:25 | | 166:3 173:9 173:24 190:5 | | | | 190:24 191:8 199:17 | |
| single(10) 35:23 84:15 84:21 112:16 | | | | statement(21) 18:10 18:20 21:21 30:5 | | | |
| 113:23 122:21 122:21 154:5 174:15 181:7 | | sorted(1) 58:21 | | 112:2 127:16 132:19 155:23 161:9 161:10 | | strong(3) 147:14 176:7 176:7 | |
| | | sorting(1) 59:20 | | 161:23 162:4 163:4 163:6 163:23 164:6 | | strongly(1) 188:17 | |
| sir(1) 162:17 | | sottile(64) 4:6 12:4 12:4 12:14 13:17 14:3 | | 164:14 169:21 179:2 179:15 184:22 | | struck(5) 48:1 50:1 50:22 51:2 53:5 | |
| sit(8) 62:8 99:15 107:4 107:19 108:23 | | 14:12 19:12 31:3 37:3 37:6 37:16 59:1 | | | | structural(1) 141:16 | |
| 146:8 162:23 165:16 | | 59:1 62:23 63:22 64:19 64:21 64:23 65:3 | | states(5) 1:1 1:19 2:42 16:25 17:1 | | structure(6) 22:9 23:4 97:13 99:23 184:6 | |
| | | 65:4 67:20 68:5 68:25 69:3 72:5 72:10 | | status(1) 194:11 | | 194:22 | |
| sitting(1) 141:1 | | 74:11 76:14 76:20 76:23 77:1 77:14 77:20 | | statute(8) 51:10 51:20 70:20 71:4 120:21 | | | |
| situated(3) 125:25 135:1 181:25 | | 78:2 78:8 78:19 83:13 83:20 188:18 | | 156:3 156:18 158:4 | | structured(1) 196:5 | |
| situation(14) 103:25 137:7 138:25 144:6 | | 198:15 198:19 198:19 199:13 203:24 204: | | | | structures(1) 97:17 | |
| 145:25 146:1 161:6 161:6 162:18 163:16 | | 204:2 204:16 204:20 205:8 205:19 205:22 | | statutes(1) 122:25 | | structuring(1) 97:14 | |
| 170:23 176:21 184:3 207:18 | | 206:1 206:6 206:20 207:3 207:21 208:10 | | statute's(1) 156:4 | | stuck(1) 27:23 | |
| | | 208:18 208:22 209:12 209:15 210:13 | | statutory(6) 42:23 43:2 70:24 112:4 | | stuff(3) 107:24 109:8 110:10 | |
| situations(3) 152:16 207:15 207:15 | | 210:15 | | 113:15 169:7 | | stutman(1) 6:13 | |
| six(1) 185:11 | | | | | | stymie(1) 169:18 | |
| size(1) 193:8 | | | | | | | |
| skepticism(1) 99:18 | | sottile's(1) 38:8 | | | | | |
| slater(1) 9:19 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| subject(22) 12:8 71:20 77:9 84:17 114:2 114:3 122:19 122:21 126:3 125:21 151:16 153:22 157:13 166:13 173:17 193:16 194:25 195:9 195:12 197:5 205:5 206:23 | | superiority(1) 141:16 | | taking(13) 16:5 26:6 27:14 27:15 58:18 59:3 65:5 116:6 150:11 187:18 190:23 194:16 206:11 | | than(56) 13:4 13:20 15:2 15:13 21:5 27:22 30:12 31:19 35:12 36:1 44:3 44:10 49:21 55:9 63:16 68:19 70:4 71:19 82:25 90:2 91:20 94:15 94:25 96:10 97:5 99:25 100:16 105:21 108:1 116:17 117:4 117:6 117:10 118:11 119:2 123:14 125:1 136:11 147:24 158:21 171:3 173:1 174:22 180:12 181:1 181:8 181:24 185:23 186:13 189:12 189:13 194:7 194:14 198:13 201:17 208:19 |
| | | supplement(2) 18:10 22:3 | | | | |
| | | supplemental(11) 18:13 18:20 22:3 27:11 28:14 28:17 85:1 85:5 158:16 163:4 170: | | talented(1) 188:14 | | |
| | | | | talk(23) 38:7 42:12 53:8 56:22 107:23 108:24 126:25 131:14 139:25 140:8 141:3 141:25 154:9 156:25 159:4 166:2 166:10 167:6 177:8 203:17 204:11 204:11 211:9 | | |
| | | support(15) 15:18 25:24 44:15 49:25 52:6 84:25 116:13 121:1 125:10 145:7 174:16 175:18 177:8 177:10 179:1 | | | | |
| subjects(1) 77:10 | | | | | | |
| submit(22) 67:22 69:13 71:6 74:20 75:18 76:9 96:12 122:8 123:20 126:1 126:2 133:4 152:22 161:3 178:6 180:6 181:21 184:4 195:18 198:25 206:24 208:12 | | | | talked(4) 73:20 131:15 139:21 156:14 | | thank(69) 13:17 14:3 20:14 20:24 31:1 31:2 35:3 36:23 37:15 53:9 53:10 62:20 62:21 64:20 64:25 65:3 73:24 74:10 74:11 76:25 78:18 78:19 83:20 90:18 90:19 93:12 97:6 97:7 97:8 109:16 109:17 115:22 126:10 126:11 126:14 131:1 131:2 135:11 135:13 154:11 162:17 165:1 178:19 178:20 179:17 179:18 184:17 184:18 186:20 186:21 190:15 190:16 192:17 195:24 195:25 197:16 198:18 200:1 200:2 203:3 203:24 206:19 207:21 209:18 210:18 210:24 211:15 211:18 211:21 |
| | | supportable(1) 177:15 | | talking(14) 50:5 50:9 50:11 54:20 56:25 59:10 68:8 68:11 69:4 72:1 108:12 133:10 169:6 192:5 | | |
| | | supported(3) 39:13 41:11 69:22 | | | | |
| submitting(1) 108:23 | | supportive(2) 90:8 90:9 | | | | |
| subordinate(1) 92:20 | | supports(3) 144:9 146:5 151:4 | | | | |
| subordinated(4) 135:10 143:2 151:13 157:16 | | suppose(1) 96:25 | | talks(5) 60:21 106:19 157:1 157:2 176:25 | | |
| | | supposed(3) 42:9 180:20 195:16 | | tax(14) 193:9 193:13 193:17 194:23 194:25 195:3 195:19 196:7 196:10 197:1 197:3 197:5 197:13 197:15 | | |
| | | supposedly(1) 38:25 | | | | |
| subordination(21) 22:15 24:3 127:2 127:8 127:13 127:23 128:14 128:19 128:24 129: 129:3 129:9 130:22 131:9 131:19 132:2 132:5 132:21 132:25 133:11 135:9 | | supreme(3) 70:19 71:5 156:3 | | | | thanking(2) 209:22 210:16 |
| | | sure(22) 30:12 47:16 48:8 54:3 63:19 67:15 72:22 77:18 84:2 93:23 95:23 96:18 116:7 142:12 143:8 145:20 148:1 174:9 175:5 200:23 206:13 208:20 | | taxable(2) 196:17 196:25 | | that(301) 12:15 12:24 13:1 13:2 13:3 13:6 13:8 13:9 13:15 13:21 13:22 13:25 14:4 14:5 14:6 14:14 14:19 15:10 15:15 15:16 15:20 15:23 16:1 16:3 16:5 16:8 16:10 16:11 16:14 16:14 16:17 16:18 16:21 17:2 17:6 17:8 17:16 17:22 17:23 17:24 18:1 18:1 18:3 18:8 18:9 18:11 18:12 18:13 18:15 18:17 18:20 18:22 18:23 18:25 18:25 19:3 19:5 19:5 19:9 19:11 19:22 19:24 19:25 20:1 20:6 20:10 20:12 20:18 20:20 20:21 20:22 21:4 21:6 21:12 21:13 21:19 21:22 21:24 22:12 22:17 22:21 22:23 23:4 23:11 23:20 24:1 24:3 24:18 24:19 24:24 25:2 25:11 25:14 25:18 26:17 26:25 27:2 27:6 27:8 27:9 27:15 27:17 27:18 27:24 28:2 28:3 28:8 28:12 28:14 28:18 28:20 28:23 28:24 29:3 29:9 29:9 29:10 29:13 29:16 29:18 29:21 29:25 30:6 30:8 30:19 31:4 31:9 31:11 31:12 31:13 31:14 31:15 31:15 31:17 31:18 31:23 32:1 32:3 32:8 32:11 32:11 32:12 32:13 32:14 32:16 32:18 32:21 32:22 32:23 33:3 33:6 33:8 33:8 33:14 33:17 33:19 33:24 34:3 34:6 34:12 34:13 34:15 34:15 34:16 34:23 34:24 35:9 35:12 35:13 35:16 35:21 36:2 36:11 36:13 36:16 36:20 37:2 37:6 37:7 37:7 37:18 37:21 37:21 37:24 37:24 38:1 38:3 38:10 38:11 38:12 38:17 38:22 38:23 39:1 39:20 40:9 40:14 40:15 40:20 40:22 41:7 41:16 41:20 41:25 41:25 42:7 42:7 42:10 42:12 42:14 42:24 42:25 43:5 43:17 43:19 43:24 43:24 44:4 44:5 44:7 44:9 44:11 45:1 45:9 45:14 45:15 45:18 45:18 45:21 46:8 46:9 46:13 46:22 46:25 47:2 47:3 47:5 47:10 47:16 47:18 47:24 48:6 48:9 48:14 48:16 48:19 48:20 48:22 48:24 49:1 49:11 49:15 49:17 49:19 49:20 49:22 50:3 50:8 50:8 50:11 50:13 50:14 50:15 50:16 50:19 50:25 51:8 51:12 51:14 51:14 51:17 51:23 51:25 51:25 52:4 52:11 52:13 52:20 52:22 52:24 52:25 52:25 52:25 53:1 53:4 53:7 53:21 53:24 54:1 54:5 54:8 54:9 54:11 54:12 54:16 54:17 54:21 54:22 54:22 54:23 |
| subs(1) 168:1 | | | | taxation(2) 193:17 195:12 | | |
| subsection(1) 106:18 | | | | taxes(3) 194:5 194:11 195:1 | | |
| subsequent(3) 84:24 111:3 146:21 | | surprised(1) 38:22 | | taylor(1) 2:5 | | |
| subset(2) 51:18 52:22 | | surprising(1) 171:15 | | teach(1) 43:17 | | |
| subsidiaries(13) 24:3 44:19 80:15 110:12 110:21 121:18 144:10 180:9 184:25 185:2 185:3 185:3 185:4 | | surrounding(1) 121:25 | | teaches(1) 43:5 | | |
| | | susceptible(2) 122:7 123:2 | | team(1) 132:19 | | |
| | | suspect(3) 108:24 144:21 176:16 | | technical(4) 30:1 102:7 108:21 109:13 | | |
| subsidiary(7) 45:11 79:16 79:18 79:18 184:25 185:1 189:9 | | suttonbrook(2) 5:14 5:14 | | technicality(1) 177:14 | | |
| | | swap(97) 91:9 109:22 109:24 110:6 110:7 110:11 110:14 110:18 111:3 111:9 111:14 111:16 111:20 111:21 112:3 112:7 112:9 113:1 113:3 113:5 113:7 113:14 114:7 114:17 114:19 115:2 115:6 115:14 115:15 116:1 116:19 116:21 117:3 117:10 117:14 117:16 117:21 117:22 117:25 118:7 118:1 118:14 118:20 118:21 118:21 119:3 119:7 119:9 119:10 119:17 119:20 120:1 121:1 121:6 121:9 121:14 122:3 122:6 122:7 122:20 122:25 123:1 123:4 123:8 123:11 123:16 123:16 123:17 123:23 124:3 124:13 124:16 124:17 124:19 124:22 125:9 125:11 125:14 125:20 126:3 126:5 128:9 128:21 128:25 129:10 129:15 131:18 131:20 132:1 132:10 132:14 132:1 132:19 133:11 135:8 | | teed(1) 146:25 | | |
| substance(4) 173:6 176:10 176:12 176:14 | | | | teleconference(1) 13:18 | | |
| substantial(18) 31:20 31:25 39:21 43:7 43:16 43:20 43:25 44:14 47:5 48:19 75:12 76:10 80:5 112:9 113:1 115:5 119:21 188:11 | | | | telephonic(10) 5:12 6:1 7:1 8:1 9:1 10:1 11:1 203:10 203:12 204:17 | | |
| | | | | telesphere(2) 145:7 146:4 | | |
| substantially(12) 24:18 40:3 45:6 112:17 113:8 113:11 113:20 116:22 116:24 123:4 124:5 124:10 | | | | tell(16) 50:25 53:16 56:24 57:3 57:5 58:2 59:3 61:13 64:8 67:1 69:14 94:1 114:17 153:11 168:8 208:1 | | |
| | | | | telling(3) 122:17 189:17 195:12 | | |
| substantive(8) 159:16 159:16 159:20 172:12 174:17 176:19 177:5 178:1 | | | | tells(3) 169:9 176:13 203:15 | | |
| | | | | temerity(1) 188:2 | | |
| substantively(3) 176:23 178:11 183:24 | | | | template(1) 167:18 | | |
| substitute(1) 133:5 | | sweep(1) 150:22 | | ten(1) 147:17 | | |
| substituting(1) 187:19 | | sweeping(1) 120:19 | | tender(1) 61:4 | | |
| subsumed(1) 199:11 | | sweetwater(19) 162:10 162:18 162:25 163:15 163:21 168:19 169:19 169:21 170: 170:6 170:9 170:11 170:14 170:15 170:24 171:4 173:17 178:12 178:16 | | tendered(2) 70:16 75:6 | | |
| succeeded(1) 150:1 | | | | tendering(1) 75:23 | | |
| success(2) 43:24 137:22 | | | | tens(2) 50:11 73:4 | | |
| successful(4) 22:22 74:24 138:6 143:25 | | | | tentatively(1) 202:11 | | |
| such(25) 35:17 36:23 39:20 44:2 46:5 65:18 66:6 68:2 69:21 79:19 89:9 89:12 90:5 96:9 120:3 127:7 162:6 162:8 162:8 163:9 163:10 164:24 168:17 183:25 196:2 | | | | term(6) 26:5 27:20 29:25 96:6 151:21 182:19 | | |
| | | sworn(2) 133:2 133:2 | | | | |
| | | sympathetic(3) 49:21 49:21 61:3 | | terminate(1) 197:23 | | |
| sudden(1) 34:12 | | synco(1) 143:17 | | terminated(4) 110:13 117:16 119:17 | | |
| sue(3) 80:14 80:15 80:15 | | system(1) 112:20 | | termination(6) 119:19 120:1 120:2 120:4 120:5 121:14 | | |
| sued(12) 17:9 54:23 67:5 68:11 68:17 68:17 70:6 71:21 79:18 80:6 81:24 88:10 | | szostek(2) 162:15 162:16 | | | | terrible(1) 95:3 |
| | | table(9) 15:20 15:23 17:6 59:21 65:6 102:6 106:10 125:2 185:25 | | terms(12) 13:14 13:16 29:5 31:8 58:25 64:1 73:16 73:17 114:13 119:1 207:9 210:17 | | |
| | | | | terms."(1) 156:6 | | |
| suffice(1) 40:15 | | | | test(12) 43:21 43:24 75:9 79:19 79:21 133:22 134:3 139:17 160:4 172:23 175:19 177:1 | | test(12) 43:21 43:24 75:9 79:19 79:21 133:22 134:3 139:17 160:4 172:23 175:19 177:1 |
| sufficiency(2) 57:11 82:14 | | tailoring(1) 52:12 | | | | |
| sufficient(8) 29:9 36:14 43:6 43:20 74:22 75:19 159:12 209:7 | | take(48) 13:4 15:19 15:22 15:23 16:1 17:5 18:22 22:16 22:20 34:22 57:9 59:20 63:4 63:4 63:7 68:25 81:3 83:10 90:4 91:14 93:20 93:21 96:18 109:5 109:10 121:10 124:17 127:6 141:15 146:22 145:4 145:24 146:2 147:17 150:7 153:19 162:13 174:7 174:19 175:10 177:22 187:24 191:4 191:1 193:18 197:12 203:22 204:10 | | tested(3) 82:21 172:1 178:9 | | |
| | | | | testified(3) 32:7 68:15 132:24 | | |
| suffolk(1) 142:6 | | | | testimony(12) 15:3 26:1 27:7 33:4 45:9 45:13 55:25 72:22 110:25 133:8 133:18 144:21 | | tested(3) 82:21 172:1 178:9 |
| suggest(8) 68:7 93:7 108:12 119:23 129:4 201:21 202:2 204:14 | | | | | | |
| | | | | testing(1) 134:8 | | |
| suggested(5) 50:15 64:6 65:19 73:11 205:4 | | | | tests(2) 55:22 138:1 | | |
| suggesting(1) 173:1 | | taken(13) 23:20 54:11 79:11 111:8 144:3 144:18 144:25 153:10 153:18 170:10 182:18 186:6 187:21 | | text(2) 121:25 122:11 | | |
| suggestion(1) 172:24 | | | | | | |
| suggestions(2) 204:7 204:9 | | | | | | |
| suggests(4) 51:24 68:1 98:20 151:7 | | | | | | |
| suit(2) 39:20 71:20 | | | | | | |
| suite(2) 3:30 4:9 | | | | | | |
| summarized(1) 148:16 | | takes(11) 29:18 43:8 57:1 58:16 59:14 79:17 81:9 115:13 119:5 173:25 192:24 | | | | |
| summarizes(1) 150:2 | | | | | | |
| sun(1) 104:24 | | | | | | |

Page : 24

| Word | Page:Line |
|---|---|

**that**(301) 54:25 55:2 55:2 55:4 55:7 55:8
55:10 55:12 55:17 55:18 55:18 56:3 56:8
56:13 56:16 56:18 56:19 57:4 57:6 57:13
57:19 58:1 58:2 58:3 58:3 58:4 58:5 58:5
58:6 58:7 58:7 58:9 58:11 58:13 58:14
58:17 58:17 58:18 58:20 58:25 59:5 59:7
59:7 59:8 59:9 59:14 59:23 59:24 60:1
60:5 60:6 60:7 60:13 60:14 60:24 61:3
61:5 61:7 61:9 61:9 61:10 61:17 61:21
61:21 61:22 62:10 62:12 62:16 63:4 63:5
63:10 63:13 63:13 63:15 63:17 63:18
63:19 63:20 63:22 63:23 63:24 64:5 64:8
64:10 64:13 64:14 64:18 65:12 65:15
65:16 65:17 65:19 65:24 66:3 66:8 66:9
66:13 66:15 66:19 66:20 66:21 66:23
67:13 67:14 67:15 67:15 67:16 67:16
67:18 67:18 67:21 67:23 67:23 67:24 68:
68:1 68:1 68:3 68:5 68:6 68:6 68:7 68:10
68:10 68:19 69:4 69:5 69:6 69:9 69:13
69:18 69:19 69:21 69:21 69:22 69:22
69:22 69:25 70:12 70:15 70:17 70:17
70:18 70:20 70:21 70:24 71:2 71:6 71:6
71:12 71:13 71:14 71:16 71:23 71:24
71:24 72:3 72:18 72:18 72:19 72:23 72:23
73:1 73:7 73:10 73:10 73:11 73:13 73:14
73:20 74:2 74:6 74:14 74:23 74:25 75:2
75:3 75:6 75:6 75:14 75:18 75:19 75:23
75:23 75:24 76:4 76:5 76:6 76:9 76:9
76:11 76:15 76:16 76:17 76:20 77:2 77:2
77:6 77:22 78:16 78:24 79:11 79:13 79:14
79:15 79:18 79:19 79:22 79:25 80:
80:7 80:12 80:17 80:20 80:24 81:4 81:5
81:24 81:24 81:25 82:1 82:5 82:6 82:7
82:9 82:13 82:16 82:18 82:19 82:21 82:23
83:13 83:25 84:2 84:10 84:11 84:15 84:
84:19 84:23 85:6 85:11 85:15 85:15 85:
85:19 85:21 85:23 86:2 86:6 86:7 86:8
86:10 86:11 86:15 86:17 86:19 87:
87:3 87:6 87:6 87:9 87:13 87:14 87:18
87:21 88:7 88:8 88:9 88:10 88:11 88:11
88:12 88:14 88:16 88:18 88:19 88:20
88:21 88:23 88:25 89:2 89:6 89:11 89:12
89:15 89:19 89:22 90:3 90:4 90:6 90:12
90:14 90:25 90:25 91:5 91:23 91:23 92:6
92:6

**that**(301) 92:7 92:13 92:17 92:17 92:19
92:24 92:25 92:25 93:7 93:9 93:9 93:9
93:17 93:20 93:20 94:9 94:16 94:20 94:2
95:1 95:2 95:5 95:7 95:10 95:11 95:12
95:16 95:18 95:21 96:5 96:11 96:12 96:1
96:15 96:16 96:24 97:1 97:3 97:5 97:14
97:14 97:23 98:6 98:16 98:20 98:25 98:2
99:3 99:5 100:1 100:5 100:7 100:8 100:2
101:16 101:22 101:23 102:2 102:9 102:11
103:3 103:5 103:7 103:7 103:8 103:9
103:20 103:21 104:8 104:11 104:20 105:4
105:9 105:11 105:14 105:19 105:19 105:2
106:6 106:6 106:8 106:9 106:13 106:14
106:15 106:16 106:16 106:19 107:3 107:1
107:11 107:15 107:16 107:18 107:19
107:21 107:25 108:6 108:6 108:8 108:1
108:15 108:18 108:18 108:20 109:1 109:3
109:6 109:8 109:10 109:10 109:11 109:15
109:23 110:17 110:22 112:3 112:10 112:2
112:25 113:2 113:6 113:12 113:14 113:2
113:23 113:24 113:25 114:15 114:17
114:18 114:18 114:21 114:22 114:23
114:23 115:9 115:13 115:17 116:4 116:17
116:19 116:21 117:16 117:20 117:21
118:14 118:19 118:21 118:24 119:3 119:4
119:8 119:12 119:15 119:16 119:22 119:2
119:24 120:1 120:5 120:15 120:17 120:17
120:17 120:20 120:23 121:5 121:5 121:8
121:11 121:12 121:13 121:13 121:16
122:1 122:1 122:3 122:4 122:8 122:10
122:14 122:16 122:17 122:22 123:2 123:3
123:8 123:9 123:20 123:21 123:23 124:6
124:17 124:22 124:24 124:24 125:1 125:5
125:8 125:13 125:22 125:23 126:2 126:3
126:4 126:6 126:6 126:6 126:12 127:16
127:16 127:17 128:7 128:17 128:21 129:1
129:21 130:9 130:13 130:14 130:16
130:19 130:21 131:7 131:8 131:9 131:11
131:14 131:20 131:21 131:22 132:1 132:1
132:12 132:19 132:22 132:23 132:23
133:4 133:14 133:19 133:22 133:24 134:6
134:19 134:22 135:2 135:6 135:23 136:2
136:2 136:7 136:11 136:15 136:18 136:19
136:20 136:21 136:22 137:3 137:4 137:5
137:10 137:11 137:12 137:12 137:13
137:18 137:20 137:21 137:24 137:24
137:24 138:5 138:6 138:11 138:19 139:1
139:1 139:2 139:3 139:7 139:9 139:13
139:14 139:15 139:16 139:19 139:22
139:23 140:4 140:6 140:7 140:10 140:22
140:23 140:24 140:25 141:4 141:6

**that**(301) 141:7 141:7 141:8 141:10
141:11 141:14 141:14 141:18 141:18
141:19 141:21 141:21 141:22 141:23
141:23 141:25 142:1 142:6 142:7 142:9
142:12 142:14 142:16 142:18 142:20
142:23 143:1 143:1 143:3 143:4 143:5
143:9 143:14 143:16 143:19 143:24 144:1
144:3 144:3 144:4 144:5 144:7 144:10
144:12 144:13 144:16 144:19 144:23 145:
145:4 145:8 145:14 145:23 146:6 146:10
146:23 147:3 147:10 147:11 147:12 147:1
147:14 147:23 148:5 148:6 148:10 148:11
148:18 149:13 149:14 149:16 149:19
149:20 150:1 150:3 150:13 150:22 150:25
151:1 151:2 151:3 151:3 151:8 151:11
151:12 151:13 151:15 151:15 151:18
151:20 152:6 152:7 152:9 152:20 152:22
152:22 152:23 153:8 153:12 153:16 153:2
154:1 154:3 154:17 154:19 154:21 155:7
155:15 155:19 155:19 155:22 155:23
155:25 156:9 156:15 157:2 157:3 157:4
157:12 157:14 157:15 157:16 157:17
157:20 158:1 158:5 158:12 158:14 158:19
158:20 158:20 158:25 159:4 159:11 159:1
160:17 160:19 160:22 160:23 161:3 161:1
161:12 161:13 161:18 161:20 161:20
161:24 162:1 162:6 162:10 162:13 162:19
162:21 162:21 162:24 163:5 163:12 163:1
163:21 163:22 164:1 164:2 164:5 164:8
164:10 164:12 164:13 164:14 164:15
164:16 164:23 165:14 165:16 165:24
166:10 167:8 167:11 167:12 167:24 168:5
168:12 168:14 168:16 168:18 168:19
168:20 168:21 168:22 168:22 168:24
169:21 169:4 169:9 169:11 169:15 169:19
169:21 169:22 169:23 169:24 170:3 170:3
170:4 170:6 170:9 170:13 170:14 170:21
170:21 170:21 170:23 170:23 170:25 171:5
171:12 171:17 171:23 171:24 172:2 172:7
172:4 172:9 172:10 172:11 172:15 172:16
172:18 172:22 172:24 173:1 173:5 173:8
173:10 173:15 173:16 173:24 174:9 174:9
174:11 174:12 174:13 174:15 174:19
174:21 175:1 175:8 175:9 175:13 175:13
175:13 175:14 175:19 175:20 175:23
175:23 176:2 176:5 176:6 176:9 176:11
176:13 176:14 176:15 176:15 176:18
176:22 176:22 176:24 177:7 177:7 177:7
177:7 177:9 177:10 177:10 177:13 177:13
177:16 177:17 177:19 177:19 177:20
177:21 177:23 177:23 178:4 178:7 178:7
178:8 178:12 178:13 178:13 178:16 179:3
179:5 179:5 179:7 179:8 179:12 179:24

**that**(245) 180:2 180:9 180:24 180:25
181:2 181:3 181:6 181:7 181:13 181:17
181:19 181:21 181:24 182:2 182:5 182:11
182:13 182:15 182:16 182:21 182:23
182:25 183:1 183:2 183:4 183:5 183:5
183:13 183:17 183:25 184:4 184:6 184:8
184:14 184:24 185:6 185:8 185:11 185:13
185:14 185:15 185:20 185:20 185:23
185:23 186:5 186:5 186:12 186:13 186:14
186:15 186:22 187:1 187:3 187:7 187:13
187:22 187:23 188:2 188:3 188:4 188:7
188:12 188:15 188:16 188:17 188:18
188:20 188:20 189:10 189:11 189:11
189:12 189:13 189:16 189:17 189:20
189:24 190:1 190:9 190:11 190:22 191:2
191:5 191:7 191:7 191:8 191:10 191:13
191:14 191:15 191:18 191:24 192:2 192:8
192:11 192:12 192:24 192:25 193:7 193:8
193:10 193:11 193:13 193:14 193:22 194:1
194:3 194:13 194:13 194:18 194:23 195:2
195:4 195:4 195:10 195:12 195:16 195:18
195:20 195:21 195:22 196:8 196:14 196:15
196:24 197:3 197:7 197:11 197:11 197:11
197:18 197:22 197:25 198:1 198:6 198:6
198:8 198:9 198:11 198:12 198:14 198:15
198:15 198:21 198:24 199:2 199:3 199:10
199:11 199:14 199:15 199:18 199:21
199:22 199:23 199:25 200:10 200:10
200:14 200:15 200:17 200:23 200:24
200:25 201:1 201:1 201:9 201:10 201:12
201:15 201:17 201:19 201:21 201:25 202:1
202:2 202:4 202:6 202:9 202:9 202:12
202:13 202:15 202:23 202:24 202:25
203:18 204:7 204:10 204:12 204:14 204:17
205:1 205:1 205:10 205:12 205:14 205:23
206:2 206:4 206:10 206:11 206:14 206:16
206:17 206:18 206:24 207:1 207:4 207:5
207:6 207:8 207:9 207:11 207:14 207:18
207:18 207:21 207:24 208:2 208:6 208:7
208:14 208:18 208:21 208:22 208:22
208:25 209:1 209:7 209:7 209:16 209:20
209:24 210:4 210:6 210:8 210:10 210:23
211:3 211:5 211:12 211:19 212:3

**that's**(59) 15:6 23:17 27:12 28:6 28:16
28:16 30:23 31:11 34:25 36:20 45:17 49:3
57:20 58:3 58:22 59:8 60:15 61:14 65:8
65:20 68:23 71:6 71:16 73:2 74:13 79:1
81:8 82:15 83:9 83:12 84:6 84:8 85:7
85:22 86:21 96:3 96:10 96:11 96:22 97:4
100:23 104:2 104:4 104:5 106:1 106:2
108:3 108:18 109:11 119:14 121:19 122:17
123:7 124:14 143:8 143:12 145:25 150:21
150:23

**that's**(34) 152:13 152:25 153:7 154:4
154:9 154:11 158:22 159:24 160:7 160:10
161:16 167:2 168:13 169:7 174:5 177:2
181:9 182:7 187:17 190:25 191:7 194:18
195:19 196:18 199:12 201:1 201:5 201:8
202:22 205:7 205:17 206:10 206:25 210:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 1:1 1:2 1:18 2:8 2:32 2:35 5:7 12:2 12:5 12:7 12:8 12:8 12:9 12:12 12:13 12:15 12:16 12:17 12:17 12:19 12:20 12:21 12:24 12:25 12:25 13:2 13:5 13:5 13:6 13:7 13:8 13:8 13:9 13:10 13:11 13:11 13:12 13:12 13:13 13:14 13:14 13:18 13:19 13:23 13:24 14:5 14:6 14:9 14:9 14:10 14:11 14:12 14:13 14:14 14:14 14:15 14:16 14:18 14:18 14:19 14:19 14:20 14:20 14:22 14:23 14:23 14:24 14:24 14:25 14:25 15:1 15:2 15:2 15:3 15:5 15:7 15:9 15:10 15:11 15:12 15:13 15:14 15:15 15:15 15:16 15:17 15:18 15:18 15:19 15:20 15:22 15:23 15:24 15:24 15:25 16:1 16:1 16:2 16:3 16:3 16:4 16:4 16:7 16:8 16:9 16:10 16:11 16:12 16:14 16:15 16:15 16:15 16:16 16:16 16:17 16:18 16:19 16:20 16:22 16:24 16:25 17:1 17:2 17:2 17:2 17:4 17:6 17:6 17:7 17:7 17:8 17:10 17:11 17:13 17:14 17:14 17:17 17:17 17:18 17:19 17:20 17:21 17:22 17:22 17:23 17:23 17:24 17:25 18:1 18:2 18:4 18:7 18:8 18:10 18:11 18:14 18:16 18:16 18:17 18:18 18:19 18:21 18:21 18:22 18:22 18:24 18:24 18:25 19:1 19:2 19:3 19:4 19:5 19:6 19:6 19:7 19:8 19:8 19:9 19:10 19:12 19:12 19:12 19:14 19:14 19:14 19:19 19:19 19:21 19:23 19:23 19:24 19:25 20:2 20:2 20:4 20:5 20:7 20:7 20:9 20:12 20:13 20:13 20:14 20:16 20:19 20:19 20:20 20:20 20:22 20:24 20:25 21:1 21:6 21:7 21:7 21:10 21:11 21:13 21:13 21:15 21:16 21:17 21:17 21:18 21:19 21:22 21:22 21:23 21:23 21:25 21:25 22:2 22:2 22:3 22:3 22:5 22:7 22:7 22:8 22:8 22:9 22:11 22:13 22:14 22:15 22:17 22:17 22:19 22:19 22:19 22:20 22:21 22:21 22:23 22:25 22:25 23:1 23:1 23:1 23:2 23:2 23:23 23:3 23:3 23:4 23:5 23:5 23:6 23:7 23:8 23:10 23:10 23:11 23:13 23:13 23:14 23:17 23:19 23:20 23:22 23:24 23:24 23:25 24:1 24:1 24:2 24:3 24:3 24:4 24:4 24:5 24:6 24:7 24:8 24:8 24:9 24:10 24:12

**the(301)** 24:13 24:14 24:14 24:15 24:15 24:19 24:20 24:21 24:23 24:25 24:25 25: 25:2 25:5 25:5 25:7 25:7 25:8 25:11 25:11 25:13 25:17 25:17 25:18 25:19 25:21 26:1 26:3 26:5 26:6 26:7 26:7 26:9 26:10 26:11 26:11 26:12 26:14 26:14 26:15 26:16 26:17 26:18 26:20 26:23 26:23 26:25 27:4 27:6 27:7 27:11 27:12 27:13 27:14 27:15 27:15 27:16 27:16 27:17 27:17 27:17 27:18 27:18 27:20 27:20 27:21 27:21 27:22 27:22 27:23 27:25 27:25 28:2 28:4 28:4 28:5 28:5 28:7 28:7 28:7 28:8 28:9 28:13 28:13 28:13 28:14 28:15 28:16 28:16 28:16 28:17 28:18 28:18 28:25 28:25 29:1 29:3 29:4 29:4 29:5 29:6 29:6 29:7 29:7 29:8 29:8 29:9 29:11 29:12 29:12 29:13 29:14 29:16 29:16 29:17 29:19 29:20 29:20 29:22 29:22 30:3 30:4 30:6 30:6 30:7 30:8 30:10 30:15 30:17 30:17 30:18 30:23 31:1 31:5 31:5 31:6 31:6 31:7 31:7 31:8 31:8 31:9 31:11 31:12 31:14 31:15 31:15 31:16 31:17 31:17 31:18 31:19 31:19 31:20 31:22 31:23 31:23 31:25 32: 32:2 32:2 32:3 32:3 32:5 32:6 32:6 32:8 32:21 32:23 32:25 32:25 33:1 33:3 33:5 33:6 33:6 33:7 33:8 33:10 33:11 33:12 33:12 33:13 33:14 33:15 33:15 33:16 33:16 33:19 33:20 33:21 33:22 33:23 33:23 34:1 34:4 34:4 34:7 34:9 34:10 34:11 34:11 34:17 34:18 34:18 34:20 34:21 34:21 34:23 34:24 34:24 34:25 35:1 35:2 35:3 35:4 35:6 35:7 35:7 35:8 35:9 35:11 35:14 35:15 35:15 35:16 35:17 35:19 35:20 35:21 35:22 35:24 35:25 35:25 36:2 36:2 36:3 36:5 36:6 36:10 36:16 36:16 36:19 36:22 37:1 37:2 37:2 37:4 37:5 37:9 37:10 37:12 37:13 37:15 37:17 37:17 37:17 37:18 37:19 37:20 37:25 38:6 38:6 38:6 38:9 38:10 38:11 38:13 38:13 38:14 38:14 38:15 38:15 38:17 38:18 38:18 38:19 38:20 38:20 38:21 38:23 38:24 38:24 38:25 39:1 39:2 39:3 39:5 39:6 39:7 39:8 39:10 39:10

**the(301)** 39:12 39:14 39:16 39:16 39:17 39:19 39:19 39:20 39:22 39:22 39:23 39:25 40:1 40:2 40:3 40:6 40:7 40:7 40:8 40:9 40:10 40:11 40:17 40:18 40:18 40:2 40:24 41:1 41:1 41:4 41:7 41:13 41:14 41:16 41:16 41:17 41:19 41:21 41:21 41:23 41:25 42:1 42:4 42:4 42:5 42:5 42:6 42:8 42:8 42:8 42:9 42:10 42:11 42:11 42:12 42:12 42:17 42:18 42:19 42:19 42:20 42:21 42:21 42:25 43:1 43:3 43:3 43:7 43:7 43:8 43:9 43:9 43:10 43:11 43:13 43:15 43:15 43:20 43:22 43:22 43:24 43:25 44:1 44:1 44:3 44:5 44:5 44:6 44:6 44:7 44:8 44:9 44:10 44:11 44:12 44:14 44:15 44:16 44:16 44:17 44:17 44:18 44:18 44:19 44:20 44:21 44:22 44:22 44:23 44:23 44:25 45: 45:2 45:4 45:5 45:5 45:6 45:7 45:10 45:10 45:10 45:11 45:12 45:12 45:15 45:15 45:16 45:17 45:22 45:22 45:23 45:25 46: 46:3 46:4 46:5 46:6 46:7 46:8 46:9 46:9 46:11 46:11 46:13 46:19 46:21 46:21 46:22 46:23 46:23 46:25 47:1 47:1 47:2 47:3 47:5 47:6 47:7 47:8 47:8 47:9 47:9 47:10 47:11 47:12 47:13 47:14 47:17 47:20 47:21 47:21 47:22 47:23 47:24 47:24 47:25 47:25 48:1 48:1 48:2 48:3 48:3 48:4 48:5 48:6 48:7 48:7 48:9 48:11 48:11 48:12 48:12 48:15 48:17 48:17 48:18 48:20 48:21 48:25 49:1 49:2 49:4 49:4 49:4 49:6 49:9 49:9 49:11 49:12 49:13 49:14 49:14 49:16 49:18 49:19 49:21 50:2 50:3 50:1 50:1 50:2 50:4 50:6 50:7 50:7 50:10 50:12 50:13 50:14 50:17 50:19 50:21 51:1 51:1 51:4 51:5 51:10 51:12 51:15 51:16 51:17 51:17 51:17 51:18 51:20 51:21 51:21 51:24 51:24 51:25 52:1 52:3 52:4 52:6 52:7 52:10 52:11 52:12 52:13 52:14 52:16 52:17 52:17 52:19 52:21 52:21 52:23 52:24 53:1 53:2 53:2 53:3 53:4 53:8 53:9 53:11 53:13 53:14 53:16 53:18 53:18 53:19 53:19 53:20 53:21 53:22 53:24 53:24 53:25 54:2 54:3 54:4 54:5 54:7 54:11 54:13 54:14 54:15 54:16

**the(301)** 54:18 54:19 54:22 54:22 54:23 55:1 55:2 55:3 55:3 55:5 55:8 55:12 55:14 55:18 55:18 55:20 55:21 55:23 55:24 55:25 56:1 56:1 56:2 56:3 56:3 56:4 56:4 56:7 56:7 56:7 56:8 56:9 56:9 56:11 56:13 56:14 56:15 56:17 56:20 56:21 56:23 56:24 57:1 57:5 57:6 57:9 57:9 57:11 57:11 57:11 57:12 57:13 57:19 57:19 57:21 57:24 58:1 58:1 58:4 58:5 58:8 58:13 58:13 58:15 58:16 58:17 58:18 58:20 58:22 58:22 58:23 58:23 58:24 59:2 59:2 59:5 59:5 59:7 59:8 59:9 59:10 59:14 59:14 59:17 59:18 59:18 59:20 59:20 59:21 59:22 59:22 59:24 59:24 60:1 60:4 60:5 60:5 60:6 60:6 60:7 60:9 60:9 60:10 60:15 60:17 60:20 60:25 60:25 61: 61:2 61:3 61:4 61:5 61:6 61:7 61:8 61:9 61:10 61:10 61:11 61:11 61:12 61:16 61:18 61:21 61:22 61:23 61:24 62:1 62:2 62:3 62:5 62:10 62:13 62:18 62:20 62:23 62:24 62:25 63:1 63:2 63:2 63:3 63:5 63:6 63:7 63:8 63:9 63:10 63:11 63:11 63:11 63:12 63:13 63:14 63:14 63:15 63:16 63:19 63:21 63:21 63:22 63:24 63:24 63:25 63:25 64:1 64:5 64:11 64:11 64:13 64:15 64:18 64:20 64:21 64:24 65:1 65:4 65:6 65:8 65:9 65:10 65:10 65:13 65:15 65:15 65:16 65:16 65:20 65:21 65:22 65:23 65:24 65:24 66:2 66:2 66:3 66:5 66:6 66:10 66:11 66:12 66:14 66:16 66:17 66:18 66:18 66:22 66:24 67:5 67:5 67:6 67:7 67:8 67:10 67:12 67:13 67:17 67:18 67:21 67:23 67:23 67:24 67:24 68:1 68:3 68:6 68:8 68:12 68:13 68:15 68:17 68:18 68:18 68:23 68:25 69: 69:10 69:12 69:15 69:16 69:17 69:19 69:20 69:20 69:22 69:22 70:3 70:8 70:11 70:11 70:12 70:13 70:14 70:15 70:16 70:16 70:18 70:19 70:20 70:22 70:24 71: 71:3 71:4 71:4 71:5 71:7 71:8 71:9 71:11 71:11 71:12 71:13 71:14 71:15 71:16 71:21 71:22 71:23 71:25 72:2 72:3 72:4 72:6 72:7 72:7 72:7 72:8 72:11 72:11 72:14 72:15 72:15 72:16 72:16 72:17 72:17 72:21 72:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) 72:24 72:24 72:24 72:25 73:1 | | the(301) 91:10 91:10 91:11 91:11 91:13 | | the(301) 110:11 110:13 110:14 110:15 | | the(301) 125:9 125:9 125:10 125:11 |  |

the(301) 72:24 72:24 72:24 72:25 73:1
73:1 73:2 73:6 73:7 73:8 73:9 73:10
73:11 73:13 73:14 73:16 73:17 73:17
73:18 73:22 73:22 73:24 73:24 74:3 74:4 74:7
74:10 74:12 74:14 74:14 74:15 74:15
74:15 74:16 74:17 74:21 74:22 74:23
74:25 75:6 75:7 75:9 75:9 75:12 75:12
75:14 75:15 75:16 75:17 75:19 75:21
75:25 75:25 76:2 76:3 76:5 76:6 76:7
76:7 76:8 76:10 76:11 76:11 76:12 76:14
76:15 76:16 76:18 76:22 76:23 76:25 77:2
77:2 77:3 77:4 77:5 77:6 77:6 77:7 77:8
77:9 77:10 77:12 77:14 77:16 77:17 77:22
77:24 78:4 78:7 78:9 78:10 78:10 78:12
78:14 78:14 78:16 78:18 78:21 78:21
78:22 78:23 78:25 79:2 79:3 79:3 79:9
79:4 79:5 79:6 79:7 79:8 79:10 79:11
79:15 79:19 79:21 79:21 79:22 79:23 80:1
80:3 80:4 80:4 80:7 80:9 80:14 80:16
80:18 80:20 80:23 81:1 81:4 81:5 81:5
81:6 81:7 81:8 81:8 81:9 81:9 81:12
81:15 81:15 81:16 81:17 81:18 81:20
81:23 81:25 82:1 82:4 82:4 82:5 82:6
82:7 82:8 82:11 82:13 82:14 82:14 82:15
82:16 82:16 82:19 82:19 82:21 82:23
82:23 82:24 82:25 83:2 83:2 83:2 83:3
83:3 83:6 83:9 83:9 83:12 83:14 83:14
83:14 83:15 83:17 83:17 83:19 83:22
83:24 83:25 84:5 84:5 84:6 84:7 84:9
84:9 84:16 84:16 84:17 84:17 84:18 84:20
84:21 84:22 85:2 85:7 85:7 85:9 85:9
85:12 85:14 85:16 85:17 85:22 86:1 86:1
86:3 86:8 86:9 86:10 86:11 86:13 86:14
86:16 86:19 86:19 86:20 86:22 86:23
86:24 87:2 87:2 87:4 87:8 87:9 87:10
87:13 87:15 87:17 87:21 87:22 87:22 88:3
88:5 88:5 88:6 88:6 88:10 88:13 88:17
88:19 88:20 88:20 88:25 89:1 89:1 89:8
88:25 88:25 89:1 89:1 89:5 89:5 89:8
89:10 89:11 89:11 89:12 89:16 89:18
89:19 89:22 89:22 89:24 89:24 89:25 90:1
90:2 90:5 90:6 90:7 90:7 90:8 90:9 90:10
90:14 90:17 90:17 90:19 90:22 90:23
90:24 90:24 90:25 91:2 91:4 91:4 91:5
91:5 91:6 91:6 91:8 91:9

the(301) 91:10 91:10 91:11 91:11 91:13
91:15 91:16 91:17 91:18 91:21 91:22
91:22 91:23 91:25 92:1 92:3 92:7 92:8
92:8 92:12 92:12 92:13 92:13 92:14 92:15
92:16 92:19 92:19 92:19 92:21 92:21
92:22 92:23 93:2 93:3 93:4 93:7 93:7
93:8 93:9 93:10 93:11 93:12 93:14 93:15
93:17 93:23 93:25 94:1 94:4 94:7 94:8
94:14 94:14 94:17 94:22 94:23 94:23
94:23 95:3 95:3 95:4 95:6 95:7 95:11
95:12 95:13 95:18 95:21 95:22 95:25 96:1
96:5 96:8 96:8 96:10 96:11 96:13 96:14
96:17 96:21 96:21 96:24 97:1 97:1 97:4
97:6 97:10 97:11 97:12 97:13 97:13 97:14
97:16 97:17 97:19 97:20 97:21 97:23
97:24 97:24 97:24 98:1 98:2 98:3 98:3
98:4 98:5 98:5 98:7 98:8 98:10 98:10
98:11 98:12 98:12 98:14 98:14 98:15
98:16 98:17 98:18 98:19 98:20 98:20
98:21 98:22 98:23 99:1 99:2 99:5 99:7
99:10 99:12 99:12 99:13 99:15 99:18
99:19 99:20 99:21 99:22 99:23 99:23
99:25 100:1 100:2 100:2 100:2 100:3
100:6 100:9 100:12 100:13 100:14 100:15
100:16 100:18 100:20 100:23 100:25 101:1
101:2 101:2 101:3 101:4 101:4 101:7
101:9 101:10 101:12 101:12 101:15 101:17
101:18 101:22 101:23 101:25 101:25
102:1 102:5 102:5 102:6 102:8 102:8
102:9 102:10 102:11 102:12 102:15 102:16
102:16 102:17 102:18 102:19 102:21
102:22 102:23 102:24 103:1 103:4 103:5
103:6 103:7 103:13 103:14 103:20 103:21
103:23 104:1 104:2 104:3 104:4 104:5
104:7 104:10 104:12 104:13 104:17 104:20
104:23 104:24 104:24 104:25 104:25
105:2 105:3 105:6 105:8 105:8 105:13
105:14 105:15 105:16 105:17 105:18
105:19 105:20 105:20 105:22 105:23
105:25 105:25 106:3 106:5 106:5 106:6
106:7 106:9 106:9 106:12 106:12 106:15
106:16 106:19 107:2 107:3 107:6 107:7
107:7 107:9 107:11 107:12 107:14 107:25
107:25 108:1 108:3 108:3 108:3 108:5
108:6 108:9 108:9 108:13 108:15 108:18
108:25 109:3 109:4 109:6 109:8 109:10
109:11 109:12 109:16 109:18 109:20
109:21 109:22 109:22 109:23 109:24
109:25 110:1 110:4 110:5 110:8 110:10
110:10 110:11

the(301) 110:11 110:13 110:14 110:15
110:17 110:18 110:18 110:19 110:19
110:20 110:21 110:21 110:24 111:1 111:3
111:4 111:4 111:6 111:6 111:7 111:7
111:9 111:10 111:11 111:11 111:12 111:13
111:13 111:14 111:14 111:15 111:16
111:16 111:17 111:18 111:18 111:20
111:21 111:23 111:24 112:1 112:1 112:3
112:4 112:7 112:7 112:8 112:9 112:9
112:10 112:11 112:12 112:12 112:13
112:13 112:14 112:15 112:17 112:20
112:23 112:24 113:1 113:1 113:2 113:2
113:3 113:7 113:8 113:9 113:10 113:11
113:21 113:22 113:22 113:22 113:24
114:8 114:16 114:17 114:19 114:20 114:2
114:23 114:24 114:24 114:25 115:1 115:4
115:4 115:6 115:7 115:7 115:7 115:10
115:10 115:12 115:13 115:13 115:15
115:15 115:20 116:1 116:2 116:4 116:5
116:7 116:7 116:8 116:8 116:9 116:11
116:11 116:16 116:16 116:19 116:21
116:21 116:22 116:23 116:24 117:2 117:3
117:4 117:4 117:5 117:6 117:6 117:7
117:9 117:9 117:10 117:10 117:11 117:11
117:12 117:14 117:18 117:18 117:18
117:19 117:21 117:22 117:22 117:25
117:25 118:2 118:2 118:3 118:5 118:7
118:8 118:8 118:10 118:10 118:11 118:11
118:12 118:13 118:14 118:17 118:20
118:21 119:2 119:5 119:5 119:6 119:8
119:9 119:14 119:15 119:17 119:17 119:1
119:19 119:20 119:20 119:22 119:23
119:25 120:1 120:10 120:10 120:15 120:1
120:20 120:21 120:22 120:25 121:1 121:1
121:4 121:5 121:9 121:11 121:12 121:13
121:14 121:16 121:17 121:18 121:18
121:21 121:21 121:25 121:25 122:1 122:3
122:6 122:7 122:10 122:11 122:12 122:13
122:18 122:20 122:20 122:21 122:22
122:23 122:23 122:23 122:25 122:25
122:25 123:1 123:1 123:2 123:4 123:4
123:6 123:8 123:8 123:9 123:11 123:11
123:13 123:14 123:15 123:16 123:16
123:17 123:18 123:18 123:19 123:21
123:22 123:23 123:23 123:25 124:2 124:2
124:2 124:3 124:3 124:4 124:5 124:6
124:7 124:8 124:10 124:11 124:13 124:13
124:15 124:15 124:16 124:16 124:17
124:17 124:19 124:20 124:22 124:22
124:22 124:23 124:24 124:25 124:25 125:
125:2 125:2 125:2 125:3 125:3 125:4
125:5 125:6 125:7 125:7 125:7

the(301) 125:9 125:9 125:10 125:11
125:11 125:11 125:13 125:14 125:15
125:17 125:19 125:20 125:20 125:22
125:24 125:25 126:2 126:3 126:4 126:5
126:6 126:7 126:8 126:11 126:23 127:1
127:2 127:3 127:4 127:6 127:9 127:10
127:12 127:16 127:17 127:18 127:20
127:22 127:22 127:23 127:23 127:24 128:1
128:2 128:4 128:4 128:6 128:9 128:9
128:9 128:10 128:12 128:12 128:14 128:15
128:15 128:16 128:18 128:18 128:21
128:24 128:24 128:24 128:25 129:1 129:1
129:1 129:3 129:4 129:5 129:7 129:7
129:8 129:8 129:9 129:9 129:11 129:12
129:14 129:14 129:15 129:15 129:15
129:18 129:20 129:21 129:21 129:22
129:22 129:23 129:24 129:24 129:25 130:1
130:1 130:2 130:3 130:4 130:4 130:5
130:5 130:9 130:10 130:11 130:11 130:14
130:14 130:15 130:20 130:20 130:21
130:22 130:22 130:24 130:25 131:2 131:3
131:4 131:6 131:8 131:8 131:9 131:10
131:10 131:11 131:13 131:13 131:16
131:17 131:18 131:18 131:19 131:19
131:19 131:20 131:21 131:24 132:1 132:1
132:2 132:4 132:4 132:7 132:7 132:10
132:12 132:13 132:14 132:17 132:19
132:20 132:21 132:21 132:22 132:22
132:24 132:24 133:1 133:2 133:6 133:6
133:8 133:10 133:10 133:11 133:12 133:12
133:13 133:13 133:14 133:15 133:15
133:16 133:16 133:17 133:20 133:20
133:21 133:22 133:23 133:24 133:24
133:25 134:1 134:1 134:2 134:4 134:5
134:11 134:16 134:20 134:21 134:21
134:23 135:4 135:4 135:6 135:6 135:8
135:8 135:9 135:9 135:9 135:10 135:13
135:16 135:17 135:19 135:19 135:20
135:20 135:21 135:24 135:25 135:25
135:25 136:1 136:2 136:3 136:3 136:4
136:4 136:5 136:6 136:7 136:8 136:10
136:14 136:15 136:15 136:15 136:15
136:17 136:17 136:19 136:19 136:21
136:22 136:24 137:1 137:2 137:3 137:4
137:4 137:10 137:17 137:18 137:18 137:19
137:19 137:21 137:22 137:24 137:25
138:1 138:3 138:5 138:6 138:7 138:7
138:7 138:8 138:10 138:10 138:11 138:11
138:12 138:13 138:13 138:13 138:14 138:14
138:16 138:17 138:18 138:18 138:20
138:20 138:23 138:23 138:24 139:3 139:3
139:3 139:4 139:5 139:7 139:9 139:11
139:11 139:17 139:18 139:21 139:23 140:1
140:1 140:2 140:2 140:4 140:6 140:6
140:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) 140:10 140:13 140:13 | | the(301) 155:15 155:15 155:16 155:16 | | the(301) 177:13 177:16 177:19 177:21 | | the(259) 193:23 193:25 194:1 194:1 194:2 | |

the(301) 140:10 140:13 140:13 140:13 140:16 140:20 140:20 140:22 140:23 140:23 140:23 140:25 141:1 141:1 141:1 141:6 141:6 141:7 141:9 141:13 141:13 141:14 141:14 141:17 141:19 141:20 141:21 141:22 141:25 142:2 142:3 142:3 142:4 142:5 142:6 142:7 142:7 142:7 142:8 142:10 142:11 142:13 142:13 142:13 142:15 142:18 142:21 142:22 142:24 142:24 142:25 142:25 143:1 143:1 143:2 143:4 143:5 143:5 143:6 143:8 143:12 143:14 143:15 143:15 143:16 143:18 143:19 143:20 143:21 143:22 143:23 143:23 144:1 144:3 144:3 144:4 144:5 144:6 144:9 144:9 144:11 144:11 144:12 144:13 144:15 144:16 144:17 144:17 144:17 144:18 144:19 144:24 144:24 144:25 145:1 145:3 145:4 145:6 145:7 145:8 145:11 145:12 145:13 145:14 145:15 145:16 145:18 145:18 145:20 145:21 145:21 145:22 145:23 145:24 145:25 146:1 146:2 146:2 146:3 146:4 146:5 146:7 146:9 146:9 146:11 146:12 146:13 146:13 146:13 146:16 146:17 146:18 146:18 146:19 146:21 146:21 146:22 146:23 146:24 146:25 147:1 147:2 147:3 147:4 147:4 147:4 147:5 147:7 147:10 147:10 147:11 147:11 147:13 147:13 147:14 147:15 147:17 147:20 147:21 147:23 147:25 147:25 148:2 148:2 148:3 148:4 148:5 148:5 148:6 148:6 148:8 148:8 148:12 148:12 148:13 148:13 148:14 148:15 148:17 148:18 148:18 148:19 148:21 148:21 148:22 148:25 148:25 149:1 149:1 149:2 149:3 149:3 149:4 149:6 149:7 149:7 149:11 149:13 149:14 149:15 149:15 149:16 149:17 149:19 149:21 149:22 149:22 149:24 149:25 149:25 150:3 150:5 150:5 150:7 150:8 150:8 150:10 150:13 150:15 150:15 150:16 150:17 150:17 150:18 150:19 150:20 150:21 150:22 150:23 150:24 150:25 151:1 151:3 151:3 151:4 151:5 151:8 151:8 151:12 151:12 151:14 151:15 151:15 151:16 151:17 151:18 151:20 151:20 151:23 152:2 152:2 152:3 152:3 152:4 152:9 152:11 152:12 152:12 152:15 152:16 152:21 152:22 152:22 152:24 153:3 153:5 153:7 153:7 153:10 153:11 153:13 153:17 153:21 153:22 153:25 154:1 154:3 154:4 154:5 154:9 154:9 154:13 154:14 154:16 154:17 154:18 154:19 154:19 154:21 154:22 154:24 155:2 155:3 155:4 155:6 155:8 155:10 155:11 155:11 155:12

the(301) 155:15 155:15 155:16 155:16 155:17 155:17 155:21 155:23 156:2 156:2 156:3 156:3 156:5 156:5 156:7 156:8 156:10 156:10 156:11 156:11 156:12 156:12 156:13 156:13 156:15 156:16 156:17 156:18 156:18 156:20 156:21 156:23 156:24 156:25 157:4 157:5 157:7 157:12 157:13 157:14 157:16 157:17 157:18 157:19 157:20 157:21 157:24 157:24 157:25 158:3 158:4 158:5 158:7 158:7 158:8 158:9 158:11 158:12 158:15 158:17 158:18 158:19 158:19 158:22 158:24 158:24 159:4 159:10 159:13 159:1 159:18 159:19 159:20 159:20 159:21 159:22 159:23 159:24 160:1 160:1 160:2 160:4 160:6 160:8 160:12 160:20 160:22 160:22 160:25 161:3 161:4 161:5 161:9 161:10 161:10 161:12 161:16 161:17 161:18 161:19 161:21 161:24 161:25 162: 162:5 162:6 162:7 162:16 162:19 162:22 162:25 163:5 163:5 163:6 163:8 163:8 163:9 163:12 163:13 163:17 163:2 163:22 163:22 164:1 164:2 164:5 164:6 164:7 164:8 164:11 164:13 164:14 164:15 164:19 164:20 164:21 164:23 164:24 165: 165:7 165:8 165:13 165:14 165:21 165:23 166:1 166:3 166:4 166:8 166:9 166:9 166:9 166:12 166:12 166:15 166:17 166:25 166:25 167:4 167:6 167:7 167:8 167:9 167:10 167:11 167:11 167:12 167:1 167:14 167:17 167:17 167:19 167:20 167:21 167:22 167:23 167:24 168:2 168:3 168:3 168:6 168:7 168:8 168:9 168:9 168:14 168:15 168:19 168:20 168:21 168:22 168:23 168:24 169:2 169:4 169:7 169:7 169:8 169:9 169:11 169:12 169:13 169:14 169:17 169:19 169:20 170:3 170:4 170:6 170:7 170:11 170:13 170:13 170:14 170:15 170:17 170:18 170:23 170:23 170:24 171:2 171:3 171:4 171:5 171:5 171:7 171:8 171:8 171:10 171:11 171:11 171:13 171:13 171:13 171:14 171:14 171:15 171:20 171:21 171:21 172:3 172:6 172:20 172:21 172:21 172:25 173:4 173:5 173:6 173:7 173:7 173:8 173:10 173:14 173:17 173:22 173:25 174:1 174:6 174:8 174:10 174:11 174:13 174:13 174:18 174:20 175:2 175:4 175:8 175:9 175:10 175:22 175:24 176:1 176:2 176:2 176:7 176:14 176:14 176:16 176:18 176:19 176:19 176:20 176:20 176:22 176:25 177: 177:3 177:4 177:5 177:7 177:9 177:10

the(301) 177:13 177:16 177:19 177:21 178:5 178:7 178:7 178:8 178:11 178:12 178:16 178:18 178:20 178:22 179:2 179:6 179:8 179:10 179:10 179:12 179:12 179:1 179:13 179:14 179:16 179:16 179:18 179:20 179:21 179:22 179:23 179:25 180: 180:4 180:5 180:5 180:6 180:7 180:8 180:9 180:11 180:12 180:13 180:14 180:1 180:18 180:19 180:21 180:22 180:23 180:23 180:24 180:24 180:25 181:1 181:2 181:2 181:4 181:5 181:5 181:8 181:9 181:10 181:11 181:11 181:14 181:14 181:15 181:16 181:17 181:17 181:19 181:20 181:20 182:2 182:2 182:5 182:6 182:7 182:7 182:9 182:13 182:16 182:16 182:17 182:17 182:17 182:19 182:25 183: 183:3 183:4 183:7 183:7 183:9 183:9 183:10 183:10 183:11 183:12 183:12 183:13 183:13 183:13 183:15 183:16 183:16 183:19 183:22 183:23 183:24 183:25 183:25 184:4 184:5 184:7 184:8 184:9 184:9 184:11 184:12 184:14 184:18 184:20 184:24 184:24 184:25 185:1 185:2 185:2 185:3 185:4 185:5 185:6 185:7 185:8 185:8 185:9 185:12 185:13 185:13 185:14 185:16 185:20 185:23 185:25 186:2 186:2 186:4 186:5 186:7 186:9 186:9 186:11 186:16 186:18 186:18 186:21 186:23 186:24 186:25 187:1 187:2 187:3 187:5 187:8 187:9 187:10 187:10 187:10 187:11 187:12 187:13 187:14 187:15 187:15 187:16 187:18 187:19 187:20 187:20 187:21 187:22 187:23 187:24 187:25 188:2 188:4 188:6 188:8 188:8 188:9 188:12 188:15 188:15 188:18 188:19 188:19 188:21 188:23 188:24 188:25 189:1 189:2 189:3 189:4 189:5 189:6 189:8 189:9 189:11 189:13 189:14 189:15 189:20 189:20 189:22 189:22 189:23 190:1 190:2 190:3 190:5 190:5 190:6 190:7 190:8 190:10 190:10 190:12 190:13 190:16 190:18 190:21 190:22 190:23 190:25 191:2 191:3 191:3 191:5 191:7 191:15 191:16 191:16 191:17 191:17 191:18 191:18 191:19 191:20 191:21 191:21 191:24 191:25 192:2 192:6 192:6 192:6 192:8 192:8 192:9 192:10 192:11 192:12 192:13 192:20 192:20 192:20 192:23 193:1 193:3 193:3 193:5 193:9 193:11 193:11 193:13 193:15 193:15 193:17 193:19 193:19 193:19 193:20 193:20 193:22 193:23

the(259) 193:23 193:25 194:1 194:1 194:2 194:2 194:2 194:4 194:5 194:6 194:8 194:9 194:9 194:9 194:12 194:13 194:15 194:16 194:17 194:18 194:20 194:24 195:1 195:2 195:4 195:6 195:7 195:7 195:8 195:8 195:9 195:11 195:13 195:14 195:14 195:15 195:16 195:18 195:19 195:20 195:22 195:25 196:2 196:3 196:4 196:4 196:5 196:6 196:10 196:13 196:14 196:14 196:15 196:15 196:17 196:18 196:18 196:22 196:23 196:24 197:1 197:2 197:3 197:5 197:5 197:7 197:10 197:10 197:15 197:19 197:21 197:22 197:23 197:24 197:25 198:2 198:3 198:3 198:4 198:5 198:7 198:7 198:9 198:9 198:9 198:9 198:13 198:14 198:20 198:21 198:23 198:24 198:25 199:1 199:5 199:9 199:11 199:15 199:20 199:22 199:22 199:23 199:24 200:1 200:5 200:6 200:6 200:7 200:11 200:16 200:20 200:21 200:23 200:25 201:2 201:5 201:6 201:10 201:12 201:13 201:14 201:15 201:16 201:17 201:17 201:22 201:22 201:24 202:1 202:8 202:8 202:9 202:11 202:12 202:13 202:15 202:17 202:18 202:18 202:25 203:11 203:11 203:14 203:16 203:20 203:22 204:1 204:3 204:6 204:6 204:7 204:13 204:13 204:14 204:15 204:16 204:19 204:20 204:23 205:2 205:2 205:3 205:5 205:5 205:7 205:12 205:13 205:13 205:14 205:17 205:18 205:21 205:24 206:3 206:5 206:6 206:9 206:9 206:12 206:13 206:18 206:18 206:19 206:20 206:22 206:23 206:25 206:25 207:2 207:3 207:4 207:6 207:8 207:9 207:10 207:13 207:14 207:16 207:23 208:4 208:11 208:12 208:13 208:13 208:14 208:16 208:17 208:21 208:23 208:24 208:24 209:1 209:1 209:2 209:2 209:6 209:8 209:10 209:13 209:14 209:15 209:16 209:17 209:20 209:21 209:22 210:2 210:2 210:3 210:3 210:3 210:6 210:7 210:8 210:10 210:11 210:14 210:14 210:15 210:16 210:16 210:18 210:20 210:22 210:22 210:22 210:23 211:8 211:8 211:8 211:9 211:14 211:16 211:18 211:19 212:1 212:3 212:4 212:4 212:5

their(185) 12:16 12:18 12:20 12:20 12:21 13:11 14:15 14:20 16:7 21:1 22:11 25:15 25:22 25:23 25:24 26:7 27:8 27:10 27:10 27:11 28:4 28:14 30:11 30:14 30:15 32:18 33:4 33:9 34:9 34:10 34:16 34:17 35:11 35:13 35:22 36:5 36:20 36:20 37:18 37:22 38:23 39:11 40:17 40:22 42:5 42:14 43:19 45:14 46:18 46:23 46:24 47:15 47:15 48:8 50:17 52:12 52:21 52:21 54:17 54:23 55:24 55:25 58:6 61:4 61:19 62:3 63:18 63:24 68:20 69:11 70:13 71:22 75:13 75:15 75:15 75:16 76:12 77:9 80:14 80:15 80:15 81:19 82:17 83:5 84:19 84:20 84:22 84:24 84:25 85:1 85:5 86:15 88:4 91:19 92:9 92:11 92:20 93:18 93:25 94:9 94:10 95:12 95:14 96:17 96:18 99:8 101:13 102:19 103:9 103:18 104:15 106:13 107:13 107:22 107:23 112:23 114:15 115:22 116:15 128:11 130:10 131:12 132:1 136:6 136:16 137:2 137:14 139:5 140:5 141:17 141:20 143:21 144:7 144:12 144:15 145:6 145:17 148:16 152:11 152:15 153:12 157:21 159:15 162:23 164:9 165:9 165:12 168:1 168:2 169:21 169:24 172:2 172:4 172:9 172:14 174:14 174:18 176:11 177:18 177:19 177:22 177:23 181:6 182:1 183:18 184:15 185:13 185:24 188:1 189:17 189:19 189:19 190:9 190:25 191:4 191:7 191:8 191:24 193:1 194:21 198:6 198:6 198:8 199:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **them**(71) 15:8  19:2  19:24  26:8  28:20  29:1  30:8  30:12  30:21  33:19  33:24  33:25  33:4  39:5  39:16  40:19  40:20  48:2  49:24  51:6  52:5  56:5  57:15  59:6  59:11  60:1  60:3  61:11  64:15  67:4  67:10  68:16  68:17  70:5  72:11  75:20  76:18  80:6  81:18  82:24  83:16  95:15  95:22  103:15  109:2  109:3  114:4  130:15  135:11  141:12  145:8  146:6  161:1  163:14  175:14  175:15  177:18  179:6  183:1  183:11  186:13  189:16  192:10  192:14  198:10  198:13  203:6  207:14  207:17  208:6  208:8 | | **these**(75) 17:17  26:20  34:8  39:15  41:8  44:4  44:5  44:7  47:4  48:19  56:17  57:6  57:13  57:15  57:18  57:18  58:21  59:9  62:6  63:14  67:7  68:13  70:10  74:23  75:1  75:18  76:4  81:1  81:13  81:16  81:17  81:19  82:10  83:4  86:25  90:1  91:13  96:5  100:7  100:9  101:20  102:25  103:10  103:12  104:3  104:8  104:22  106:19  106:21  106:23  107:1  107:5  109:12  121:16  122:22  126:2  127:24  128:1  129:3  129:7  134:3  137:23  145:1  146:11  154:24  160:15  160:15  164:18  167:19  169:2  170:25  172:18  173:19  202:16  209:25 | | **thing**(16) 35:17  36:23  63:21  73:4  89:12  94:23  95:1  112:18  131:7  160:2  160:4  160:8  190:7  196:13  200:13  209:20 | | **this**(301) 12:9  15:7  15:20  15:20  16:11  17:5  18:9  18:11  18:12  18:12  19:21  23:9  23:12  23:14  24:16  24:19  26:2  26:3  26:23  27:8  27:14  28:1  28:1  30:24  32:18  35:10  35:14  35:19  35:21  35:23  36:23  37:7  40:6  42:17  43:15  44:2  44:15  44:17  45:24  46:9  46:25  47:1  47:14  49:6  49:20  49:25  50:12  50:20  51:5  52:18  53:7  53:17  53:23  54:5  57:1  57:4  57:21  57:25  58:14  58:23  59:13  59:14  60:4  60:11  60:24  61:2  61:7  61:17  61:24  62:4  62:6  62:15  62:17  64:9  65:14  66:4  66:6  66:13  66:19  67:13  67:21  69:10  69:17  69:19  71:3  71:23  72:14  73:7  73:14  73:15  73:21  73:25  74:4  74:12  78:12  78:13  78:13  78:15  80:1  80:19  80:19  81:10  82:3  82:8  82:12  82:14  82:21  83:5  84:15  84:18  85:6  85:9  85:14  85:16  85:17  85:18  85:19  85:25  86:8  86:12  86:16  89:5  89:15  89:18  90:2  90:9  90:16  92:2  93:1  93:9  93:15  94:2  94:13  95:2  95:10  97:4  98:8  98:11  99:3  99:19  100:8  100:10  102:2  102:2  102:22  103:22  104:15  106:1  107:23  109:6  109:7  111:2  111:8  111:12  111:15  111:17  111:23  112:2  112:24  113:6  113:17  114:9  115:11  115:12  115:17  115:18  115:19  118:15  119:2  120:7  120:8  122:9  124:1  125:14  125:17  127:5  127:10  127:21  129:12  129:16  129:21  130:21  131:17  131:22  132:7  133:20  133:21  134:9  134:12  134:23  135:23  135:24  137:6  137:16  137:16  137:19  137:20  138:19  140:10  141:5  141:11  141:15  141:19  141:24  142:2  142:3  142:9  142:19  143:3  144:2  144:3  144:24  145:16  146:1  146:9  146:9  146:12  146:15  146:19  147:5  147:6  147:7  147:9  147:14  147:22  149:10  149:11  149:12  150:10  150:21  151:12  152:4  152:12  152:19  153:15  154:1  161:6  161:11  161:12  161:20  162:9  163:21  164:2  164:5  165:15  166:7  166:17  167:11  168:10  168:17  170:11  170:18  171:5  171:8  173:16  173:25  177:5  178:1  180:20  180:22  182:1  183:13  184:7  185:21  185:24  186:1  186:15  186:19  187:2  187:14  188:1  188:3  188:18  188:23  188:25  189:4  190:5  190:12  190:19  191:3  191:20  192:5  192:14  201:7  201:14  202:13  202:15  203:11  203:17  203:21  205:25  206:3  206:16  207:25 |
| **theme**(1) 152:13 | | | | | | | |
| **themselves**(13) 13:24  27:7  36:12  113:22  114:1  125:17  150:6  187:11  189:7  189:22  190:8  193:3  194:15 | | **they**(290) 13:25  14:14  15:9  15:10  15:25  16:1  16:3  16:5  16:17  17:14  17:25  19:25  20:3  20:6  20:8  21:20  22:4  23:22  23:25  25:14  25:15  25:21  26:24  27:8  27:12  27:15  28:18  29:1  30:14  30:15  30:16  32:20  33:17  34:1  34:12  34:13  34:15  35:12  35:13  36:6  37:10  38:23  40:19  40:19  40:22  41:20  47:10  47:10  47:16  48:14  48:15  48:15  48:16  49:19  49:23  50:8  50:14  52:5  52:12  52:14  52:15  52:15  54:4  54:9  54:18  54:20  54:25  55:9  55:15  56:13  56:20  57:16  57:25  58:12  58:20  59:11  60:1  60:5  60:7  60:25  61:4  61:20  62:1  62:4  63:15  63:17  63:25  64:12  66:8  66:9  67:9  67:10  68:16  68:20  68:20  68:21  69:8  69:14  69:15  71:12  71:17  71:18  71:21  73:15  74:20  75:17  75:23  77:6  80:7  80:12  80:12  80:18  81:22  81:23  81:24  82:14  82:9  82:12  82:13  83:1  84:10  84:11  84:14  84:19  85:5  86:8  88:10  91:14  91:23  92:9  92:11  92:20  93:20  93:23  93:24  94:9  95:19  95:21  95:24  95:25  96:4  96:4  98:6  98:13  99:15  100:12  102:25  103:17  106:14  107:8  107:15  108:16  108:17  108:1  110:22  112:2  112:25  113:2  113:7  113:9  113:10  114:9  120:11  122:6  123:6  124:6  124:6  124:9  129:22  130:16  130:19  131:22  131:25  132:6  136:20  137:23  139:7  139:10  141:16  141:21  142:10  142:21  142:23  144:4  144:12  145:1  145:18  145:19  145:19  148:20  150:25  151:1  151:3  152:17  152:18  153:19  154:10  155:19  158:7  160:14  160:17  161:15  161:25  163:14  164:4  164:7  167:10  168:10  168:23  169:4  170:14  171:7  171:23  172:2  172:3  172:18  174:11  174:12  174:12  174:15  175:9  175:13  177:10  177:17  177:22  177:23  179:5  179:15  180:1  181:24  182:4  182:4  182:6  182:8  182:15  183:8  183:17  183:17  184:3  186:2  187:13  188:21  188:22  189:1  189:7  189:9  189:11  189:17  189:19  189:20  189:20  189:22  190:7  190:7  190:20  190:23  191:1  191:5  193:5  193:8  194:4  194:21  194:24  195:14  198:7  198:8  199:16  199:20  200:8  201:18  203:16  208:1  208:1  208:5  211:6 | | **think**(197) 14:7  25:4  30:20  33:13  34:4  34:19  36:9  37:6  37:11  40:5  41:5  41:24  44:21  45:17  47:3  51:2  51:13  52:5  52:11  52:24  52:25  57:21  57:22  57:25  58:2  58:8  58:14  58:19  60:23  61:1  62:1  63:7  63:18  64:13  65:7  68:20  70:11  73:6  74:8  75:1  76:20  77:20  77:21  79:25  80:2  81:5  81:14  81:15  81:22  82:12  83:8  84:14  85:6  86:11  88:9  92:25  93:1  93:24  93:25  94:2  94:12  94:14  94:24  96:3  96:7  96:11  96:23  96:24  96:24  97:14  100:5  100:23  103:18  104:16  105:11  106:21  106:23  107:2  107:15  107:22  108:13  109:1  109:2  109:5  109:7  109:13  112:22  113:17  114:5  114:9  114:10  119:16  120:23  120:24  122:16  123:7  126:16  126:23  132:3  133:21  134:2  134:3  134:8  134:10  134:12  134:17  135:1  135:3  138:25  140:20  141:3  141:23  142:1  143:18  144:1  147:12  148:15  150:2  151:4  153:4  154:18  156:2  158:7  163:15  165:11  165:14  166:5  166:7  166:11  167:18  167:24  168:11  168:1  168:14  168:15  169:19  169:24  169:25  170:2  170:3  170:9  171:3  171:4  171:17  171:18  172:7  173:13  173:23  174:8  174:20  174:23  175:7  175:22  176:1  176:2  176:14  177:3  177:7  177:12  178:3  180:21  181:13  188:9  189:16  191:17  192:7  193:12  195:3  195:12  196:3  197:20  198:11  198:15  199:21  200:18  201:7  201:8  201:21  201:9  202:14  202:17  203:8  203:13  203:16  203:18  204:8  204:10  204:13  205:14  206:1  207:17  207:19  208:22  209:16  211:5 | | |
| **theoretically**(1) 88:1 | | | | | | | |
| **theory**(1) 119:16 | | | | **thinking**(5) 96:20  175:21  177:4  197:19  202:19 | | |
| **there**(133) 21:18  25:6  31:25  32:4  36:14  37:12  39:18  39:24  43:1  44:13  45:15  47:25  48:18  49:24  50:17  50:20  50:23  55:14  56:18  60:12  60:24  61:19  62:9  62:9  62:11  62:12  62:12  63:23  65:6  65:18  65:19  65:22  67:9  67:16  68:2  68:7  69:21  69:21  69:25  70:1  70:3  70:20  70:24  74:5  74:24  74:25  75:3  78:20  79:8  81:19  83:8  84:21  85:4  85:17  85:21  85:23  86:1  87:1  89:12  94:6  95:20  97:2  97:21  100:10  100:17  101:11  101:15  102:20  106:24  108:17  112:25  114:15  114:18  116:5  116:8  116:9  117:1  118:13  119:18  120:15  121:22  122:9  124:1  124:18  124:19  125:13  130:13  135:6  140:16  140:16  140:19  145:1  148:18  149:8  152:16  153:13  155:18  155:20  157:25  158:1  158:4  158:14  160:17  160:19  161:1  162:19  162:20  163:12  163:20  167:15  167:21  169:1  171:2  171:12  171:15  173:3  175:10  175:21  180:1  190:6  191:16  191:25  192:11  193:14  193:19  194:11  199:14  201:14  204:14  206:15  207:7  207:7  209:8 | | **they'll**(6) 16:6  23:23  102:13  139:10  145:22  147:2 | | **third**(22) 21:3  39:12  39:15  39:19  40:12  43:3  45:17  56:17  60:2  66:5  82:22  82:23  109:12  114:13  118:10  133:25  135:17  136:23  138:2  140:3  143:6  146:13 | | |
| | | | | **third-party**(1) 211:4 | | |
| | | **they're**(24) 12:11  17:9  27:14  30:19  43:18  43:19  51:1  56:2  65:13  68:10  68:14  79:22  80:12  81:21  94:1  94:2  96:1  101:23  109:4  124:10  132:3  139:8  146:19 | | | | |
| **there's**(35) 15:21  16:13  20:21  23:24  24:4  29:23  36:19  38:4  42:24  44:21  46:22  50:3  52:5  63:9  64:2  65:15  68:3  68:10  71:1  73:11  87:6  87:7  95:20  96:12  96:18  107:15  118:4  120:20  121:4  121:8  123:12  133:17  134:6  144:1  149:13 | | | | | | |
| | | **they've**(7) 13:25  58:7  69:11  96:13  144:25  150:23  151:13 | | | | |
| **thereabouts**(1) 136:16 | | | | | | | |
| **thereby**(1) 112:5 | | **they'd**(1) 165:25 | | | | |
| **therefore**(11) 15:7  16:10  17:8  45:2  45:18  48:24  71:5  77:7  87:25  145:23  148:23 | | **they're**(11) 152:3  152:9  160:16  168:22  172:7  181:14  189:21  189:21  193:15  208:16  209:10 | | | | |
| **thereof**(2) 47:22  48:7 | | | | | | | |
| **thereto**(1) 111:3 | | **they've**(7) 170:11  172:8  172:9  172:10  185:25  187:21  200:8 | | | | |
| **there's**(15) 152:6  158:2  161:18  169:25  173:10  174:24  175:20  181:6  181:13  192:1  192:24  193:21  205:21  205:24  207:25 | | | | | | **though**(13) 45:21  47:17  50:1  74:19  83:1  92:9  97:22  153:25  156:23  171:6  173:23  174:9  200:8 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **thought**(22) 22:1 38:10 38:22 61:15 73:18 76:15 86:17 94:9 103:11 120:10 126:19 134:2 143:11 172:23 172:24 194:13 197:17 199:5 201:14 203:5 204:23 209:3 | | **trade**(14) 129:23 130:2 130:12 133:13 180:16 180:23 181:2 181:11 181:17 182:1 182:24 183:9 183:25 189:9 | | **trust**(187) 3:21 8:38 10:4 17:12 21:14 26:4 26:6 26:16 29:7 29:7 29:8 29:9 29:17 32:1 32:2 33:1 41:14 41:16 41:17 43:12 49:18 53:21 54:23 56:23 62:15 74:25 76:1 76:17 85:24 90:25 91:1 91:2 91:6 91:6 91:10 91:11 91:18 91:21 92:5 92:4 92:6 92:7 92:12 92:14 92:17 92:18 92:22 92:22 92:23 93:9 94:8 94:10 95:3 95:5 95:8 95:14 95:22 96:5 96:9 96:13 96:17 97:1 97:14 97:15 97:16 97:18 97:20 97:21 97:23 98:3 98:6 98:10 98:10 98:12 98:15 98:18 98:20 98:24 98:24 99:2 99:5 99:10 99:11 99:16 99:19 99:22 99:24 100:2 100:2 100:13 100:23 101:1 101:4 101:4 101:6 101:11 101:13 101:15 101:18 101:19 101:25 102:2 102:4 102:8 102:8 102:9 102:12 102:15 102:16 102:17 102:17 102:22 102:22 102:24 103:4 103:7 103:10 103:19 103:22 105:15 105:15 105:17 105:20 105:22 105:25 106:8 106:12 108:1 131:24 135:18 135:20 135:21 136:1 136:2 136:21 136:22 137:13 137:18 138:10 143:1 143:16 143:19 143:21 144:2 144:5 144:7 144:20 145:4 145:9 146:3 146:14 146:24 148:20 150:8 190:21 193:1 193:9 193:15 193:19 193:20 193:22 194:1 194:4 194:9 194:22 194:24 194:24 194:25 195:2 195:5 195:5 195:6 195:16 195:16 196:14 196:15 196:16 196:16 196:17 196:19 196:21 196:24 196:24 197:1 197:2 197:4 199:3 | | **ultimately**(8) 22:19 27:17 108:7 151:2 158:24 173:6 180:25 201:19 |
| | | | | | | **um-hum**(1) 155:2 | |
| | | **trademark**(1) 137:9 | | | | **un-confirmabl**(2) 128:2 130:25 | |
| **thoughts**(1) 94:5 | | **traders**(1) 167:23 | | | | **unable**(1) 152:15 | |
| **thousand**(2) 50:10 94:12 | | **transaction**(19) 55:24 61:7 70:14 99:4 | | | | **unbelievabl**(1) 209:22 | |
| **threat**(1) 176:19 | | 110:2 114:21 136:24 137:20 137:24 137:22 | | | | **unclear**(1) 98:11 | |
| **three**(15) 39:23 64:22 109:8 110:7 113:18 | | 140:1 140:7 142:10 142:13 142:24 144:1 | | | | **unconditional**(2) 101:16 101:20 | |
| 148:20 149:3 160:8 167:9 167:10 171:11 | | 147:2 148:22 149:8 | | | | **unconfirmabl**(2) 184:16 190:14 | |
| 171:12 182:4 198:22 198:22 | | | | | | **undecided**(1) 60:22 | |
| | | **transactions**(4) 117:13 141:11 144:15 | | | | **undeniably**(1) 54:12 | |
| **threshold**(2) 41:1 154:22 | | **transcriber**(1) 212:10 | | | | **under**(116) 44:23 124:4 126:3 136:6 144:16 | |
| **thrifty**(1) 117:19 | | **transcript**(3) 1:17 1:48 212:4 | | | | 16:3 17:2 19:23 20:2 21:12 24:1 24:13 24:19 26:21 29:5 | |
| **through**(31) 12:9 13:11 14:17 17:19 21:16 | | **transcription**(2) 1:41 1:48 | | | | 30:14 31:16 32:21 33:9 33:12 33:15 33:21 | |
| 39:16 45:8 49:11 49:13 62:14 66:14 69:1 | | **transfer**(21) 53:20 53:25 55:20 56:7 60:13 | | | | 35:11 41:14 43:15 44:22 45:12 45:22 46:9 | |
| 69:11 69:16 73:7 75:16 78:11 80:3 80:4 | | 62:18 95:15 101:20 102:17 102:21 114:8 | | | | 47:11 47:17 49:16 49:22 50:25 52:3 52:4 | |
| 100:17 116:12 126:20 131:9 149:5 172:20 | | 119:4 119:5 119:8 137:1 138:9 138:12 | | | | 54:1 54:23 55:21 57:13 61:23 62:1 74:23 | |
| 175:16 185:16 199:20 206:9 210:11 | | 139:22 140:1 142:12 142:15 | | | | 75:9 75:9 77:3 77:5 81:7 84:17 88:5 | |
| | | | | | | 93:10 95:16 100:2 110:4 110:8 110:10 | |
| | | **transferability**(1) 102:16 | | | | 110:13 110:16 111:17 111:18 112:18 | |
| **throughout**(7) 17:17 25:22 26:1 68:13 | | **transferee**(1) 152:3 | | | | 113:15 117:3 117:15 118:7 119:10 120:3 | |
| 69:10 137:23 138:17 | | **transferor**(1) 152:2 | | | | 120:8 121:2 122:11 122:12 123:11 123:19 | |
| | | **transferring**(1) 101:16 | | | | 124:6 124:22 127:5 127:7 128:24 129:1 | |
| **thursday**(5) 12:1 202:8 203:6 204:13 | | **transfers**(3) 114:7 114:12 119:14 | | | | 136:3 136:7 136:14 137:14 137:25 139:3 | |
| **thus**(2) 121:15 175:25 | | **treasury**(3) 196:20 196:22 196:25 | | | | 139:14 139:16 149:6 149:21 150:22 156:8 | |
| **tied**(1) 51:5 | | **treat**(1) 141:17 | | | | 156:9 157:11 159:12 159:15 159:24 167:12 | |
| **tier**(1) 46:25 | | **treated**(6) 168:18 193:12 196:16 196:21 | | | | 168:23 169:2 169:12 170:19 170:22 | |
| **time**(51) 13:23 13:23 14:6 14:9 18:23 19:2 | | 197:4 197:7 | | | | 172:17 176:1 176:16 180:10 185:1 186:7 | |
| 30:24 31:20 46:3 46:13 55:25 56:7 63:1 | | | | | | 190:25 192:20 193:13 194:4 194:18 196:20 | |
| 77:21 78:14 86:20 90:22 108:21 114:17 | | **treatment**(16) 77:4 84:16 94:22 129:18 | | | | 196:22 196:24 197:1 197:8 198:2 | |
| 126:12 126:21 136:14 140:23 146:2 155:2 | | 129:23 134:25 185:22 186:15 187:14 190:1 | | | | | |
| 166:5 168:8 174:8 174:20 176:2 179:21 | | 191:9 192:3 192:5 192:8 196:22 197:2 | | | | | |
| 179:25 185:7 185:16 188:7 191:12 194:3 | | | | | | **underlying**(5) 91:4 109:23 113:21 139:21 | |
| 198:22 202:8 202:10 203:7 203:7 204:14 | | **treatments**(1) 127:5 | | | | 158:18 | |
| 204:21 205:13 206:2 206:11 208:24 209:7 | | **treatment"**(1) 161:21 | | **trustee**(19) 2:42 2:42 98:3 98:4 98:12 | | | |
| 209:10 210:18 | | **treats**(1) 183:9 | | 98:16 99:20 99:21 101:4 102:18 102:24 | | **underpaid**(1) 129:14 | |
| | | **trehan**(1) 7:31 | | 106:16 119:8 131:24 143:16 144:17 144:24 | | **underscores**(1) 58:8 | |
| **timeframes**(1) 40:18 | | **treister**(1) 6:13 | | 146:18 196:22 | | **understand**(18) 14:9 30:13 30:18 31:23 | |
| **times**(8) 25:25 40:6 46:10 63:6 88:16 | | **trenches**(1) 82:7 | | | | 39:2 39:3 64:14 68:5 81:3 81:23 99:14 | |
| 144:11 153:18 185:18 | | **trenwick**(1) 101:9 | | **trustees**(5) 99:12 105:24 106:7 149:1 149: | | 102:20 103:15 104:13 107:18 147:23 208:5 | |
| | | **trial**(9) 28:22 42:11 83:10 147:14 148:2 | | **trusts**(7) 91:12 97:22 100:1 100:4 100:7 | | 210:4 | |
| **timing**(3) 13:16 78:10 206:22 | | 179:25 208:1 209:23 210:17 | | 100:11 102:21 | | **understanding**(1) 175:8 | |
| **timings**(1) 211:11 | | | | | | **understood**(6) 54:8 108:11 166:20 206:5 | |
| **title**(3) 93:25 120:7 120:9 | | **tribunals**(1) 147:8 | | **truth**(1) 97:2 | | 208:20 209:12 | |
| **toasted**(1) 136:8 | | **tribune**(42) 1:8 6:29 7:4 7:4 25:16 29:2 | | **try**(12) 37:13 51:15 104:1 107:19 109:14 | | | |
| **today**(25) 13:16 13:19 13:22 24:19 32:14 | | 34:20 49:11 70:12 70:13 110:2 110:5 | | 116:3 139:20 143:11 159:14 164:10 202:1 | | **undertake**(2) 68:19 77:22 | |
| 32:23 47:20 62:9 75:10 84:7 90:10 119:12 | | 110:20 111:10 111:12 111:16 111:21 114:8 | | 207:5 | | **undertook**(1) 159:7 | |
| 126:8 148:1 154:17 157:17 192:2 197:18 | | 116:21 116:23 116:25 118:6 118:19 | | | | **undone**(1) 177:14 | |
| 198:25 199:3 199:9 200:5 200:13 208:15 | | 118:22 121:3 121:6 121:17 123:9 123:15 | | **trying**(7) 48:14 67:22 96:7 96:21 166:24 | | **unequivocal**(1) 120:18 | |
| 211:16 | | 123:20 127:20 128:4 130:7 137:7 144:10 | | 172:7 207:17 | | **unfair**(23) 15:21 16:8 35:10 92:25 93:5 | |
| **together**(7) 63:7 124:2 124:8 124:9 124:23 | | 180:9 187:6 188:13 188:21 189:25 194:11 | | | | 94:3 94:4 94:18 95:17 95:19 127:1 130:23 | |
| 183:25 201:7 | | 197:24 | | **tuesday**(2) 200:22 202:5 | | 131:6 133:22 134:4 134:13 134:24 135:4 | |
| | | **tribune's**(4) 117:15 117:17 118:1 130:12 | | **tuliano**(1) 193:24 | | 135:5 165:15 187:17 190:4 191:9 | |
| **told**(5) 28:16 33:7 38:12 57:25 199:3 | | **tribune's**(5) 180:10 188:13 189:12 193:24 | | **turn**(24) 13:4 13:9 13:12 39:7 41:19 44:3 | | | |
| **toll**(1) 51:20 | | 194:10 | | 47:21 53:7 55:9 63:21 64:18 66:22 70:8 | | **unfairly**(1) 15:10 | |
| **tolling**(2) 51:19 52:1 | | | | 72:11 75:21 80:23 81:23 83:8 97:11 | | **unfavorable**(1) 151:10 | |
| **tomorrow**(4) 19:14 19:18 19:19 200:22 | | **trip**(1) 211:20 | | 102:25 109:18 109:21 128:17 179:10 | | **unfold**(1) 98:16 | |
| **too**(16) 14:2 16:20 18:23 25:6 27:14 28:9 | | **trotted**(1) 144:22 | | | | **unfortunately**(2) 116:11 140:11 | |
| 34:14 49:1 58:16 82:11 138:18 139:1 | | **troubled**(1) 174:24 | | **turnaround**(1) 207:17 | | **unilateral**(1) 102:20 | |
| 139:6 169:7 196:7 202:4 | | **true**(11) 44:21 47:3 49:25 86:21 96:4 | | **turned**(1) 67:25 | | **unilaterally**(1) 130:16 | |
| **took**(11) 26:2 76:16 76:17 82:9 84:19 | | 106:1 120:17 172:9 184:9 187:23 210:20 | | **turning**(4) 39:4 43:22 49:6 87:13 | | **unintended**(1) 193:8 | |
| 144:7 145:18 163:22 164:2 174:11 185:6 | | | | **turnover**(2) 127:8 127:13 | | **united**(3) 1:1 1:19 2:42 | |
| **top**(6) 36:15 72:17 132:4 141:14 141:18 | | **truly**(1) 45:11 | | **turns**(4) 44:3 82:18 94:16 189:20 | | **universe**(6) 50:21 53:2 72:15 74:19 98:13 | |
| 141:18 | | **trump**(1) 11:24 | | **twice**(2) 57:17 88:11 | | 98:21 | |
| **topic**(5) 40:6 52:10 53:8 86:7 175:1 | | **trumpet**(1) 44:17 | | **two**(48) 14:10 14:14 17:15 17:16 21:2 | | | |
| **torres**(1) 10:4 | | | | 21:10 22:1 28:22 34:8 44:10 45:8 60:17 | | **unknown**(2) 203:18 203:21 | |
| **tort**(4) 57:4 58:10 139:21 139:23 | | | | 63:7 64:22 77:9 78:20 79:8 81:16 85:18 | | **unlawful**(1) 32:22 | |
| **toss**(1) 151:8 | | | | 91:25 99:8 100:1 100:7 105:23 112:25 | | **unless**(6) 34:25 80:12 164:19 178:10 | |
| **total**(1) 169:14 | | | | 114:2 119:6 121:11 126:17 128:5 128:17 | | 196:22 203:15 | |
| **totally**(5) 57:1 100:8 108:11 125:6 183:22 | | | | 128:19 129:15 135:10 145:7 145:13 148:2 | | | |
| **touch**(6) 28:24 37:3 42:4 46:18 66:1 77:10 | | | | 153:9 157:20 163:20 174:25 179:23 183:23 | | **unlike**(6) 102:22 118:4 118:17 122:18 | |
| **toussi**(1) 10:34 | | | | 183:12 184:25 191:13 199:13 201:3 207:3 | | 123:20 185:1 | |
| **towards**(1) 139:9 | | | | | | | |
| **tracing**(1) 95:14 | | | | **two-year**(1) 51:10 | | **unlikely**(3) 45:15 50:10 89:15 | |
| **tracks**(2) 37:12 107:11 | | | | **twoomey**(1) 6:37 | | **unpack**(1) 166:7 | |
| | | | | **tying**(1) 31:19 | | **unpersuasive**(1) 158:22 | |
| | | | | **type**(2) 39:15 149:15 | | **unproven**(3) 148:4 149:17 152:18 | |
| | | | | **typical**(2) 84:12 137:7 | | **unpublished**(1) 89:19 | |
| | | | | **typically**(1) 57:2 | | **unreasonabl**(1) 36:17 | |
| | | | | **u.s**(2) 156:4 156:4 | | | |
| | | | | **ultimate**(5) 58:18 66:10 74:21 83:6 97:24 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **unsecured**(21) 3:27 4:5 5:24 12:6 22:13 43:13 44:19 45:10 93:15 114:12 132:20 136:5 180:15 180:19 181:2 181:9 181:23 181:25 184:23 197:9 204:3 | | **very**(55) 27:9 31:24 35:7 40:14 45:24 51:13 51:22 53:14 53:15 55:10 56:5 56:24 61:14 64:25 68:12 69:11 69:12 75:4 71:25 89:2 90:1 91:18 95:10 95:18 96:23 114:12 114:20 115:18 119:21 128:13 131:25 132:18 132:18 140:9 151:15 154:25 165:25 166:5 171:10 171:20 174:1 174:1 176:18 178:3 178:23 181:22 187:11 187:1 188:9 189:16 198:11 199:8 203:18 211:18 | | **wardwell**(3) 3:4 7:22 83:22 **was**(210) 13:8 15:18 16:10 16:18 18:23 21:13 21:18 24:7 24:15 24:23 25:12 27:22 27:22 31:16 31:18 36:3 38:1 38:15 38:22 39:22 41:5 46:6 46:8 46:11 47:7 47:23 48:25 50:20 51:11 51:13 52:25 54:8 55:14 55:20 55:21 56:12 57:24 58:1 58:25 59:15 60:5 62:9 62:11 62:11 62:15 65:20 69:8 69:21 70:3 70:20 73:7 73:19 73:21 74:5 76:5 76:8 82:19 83:4 83:6 84:3 85:3 86:17 86:19 87:2 87:3 87:16 92:14 93:18 93:21 93:22 94:9 94:18 94:20 95:13 96:6 96:6 96:7 96:10 96:21 99:3 99:7 105:19 106:13 110:2 110:25 114:2 114:3 114:19 117:7 117:16 118:25 119:20 120:1 121:3 122:3 122:6 122:9 124:13 124:18 124:19 124:22 125:13 125:18 126:7 131:9 131:10 131:11 131:13 131:23 137:11 138:1 139:1 140:1 140:10 140:16 140:19 140:22 140:25 142:5 142:22 145:10 145:11 146:7 147:24 153:16 154:1 154:3 155:18 157:4 157:15 157:16 157:25 158:1 158:3 158:6 158:9 158:11 158:12 158:14 158:18 159:8 159:15 159:16 159:18 159:25 160:18 161:2 161:11 161:18 161:20 162:3 162:18 162:19 162:19 162:19 162:20 163:2 163:2 163:5 163:11 163:24 164:1 164:5 164:24 165:12 168:8 169:17 169:24 171:1 171:16 172:15 172:16 173:1 173:8 174:14 175:4 175:15 175:10 176:18 176:22 176:22 177:18 177:19 177:22 177:23 184:24 185:7 190:6 191:1 191:7 191:13 191:14 191:17 191:19 191:20 191:25 192:1 194:1 196:13 197:3 200:10 200:12 200:23 202:1 204:14 206:15 208:18 212:1 | | **weiss**(2) 6:17 8:29 **weitman**(1) 7:7 **well**(81) 13:2 16:20 21:13 21:22 23:10 23:11 23:19 26:19 27:16 30:5 40:5 45:8 45:23 46:13 51:3 57:5 57:16 58:19 59:8 61:15 63:6 63:20 68:18 72:3 73:1 77:12 77:16 77:24 82:25 85:24 86:3 86:10 91:15 92:21 93:3 95:2 95:18 96:2 98:1 108:2 109:14 114:15 114:17 135:2 136:18 139:25 143:12 145:16 146:9 146:12 147:7 151:23 153:21 154:18 154:25 156:18 157:25 159:16 161:23 162:11 164:20 164:21 165:21 169:20 171:5 174:19 175:4 175:7 183:8 191:18 192:4 200:25 202:1 202:12 203:11 204:8 207:13 207:15 209:2 210:20 211:8 **well-established**(1) 168:14 **wells**(1) 9:40 **went**(7) 21:25 73:7 73:14 116:12 145:25 163:14 175:16 |
| **unsettling**(1) 99:6 **unspecified**(1) 102:10 **unstated**(1) 115:10 **untenable**(1) 36:3 **until**(5) 91:7 107:6 184:11 190:10 202:25 **untouched**(1) 32:12 **unusual**(1) 31:4 **unwarranted**(1) 32:4 **unwilling**(3) 140:24 141:10 141:22 **unwillingness**(1) 101:25 **updated**(1) 186:10 **upholds**(1) 56:16 **upon**(19) 41:21 41:24 48:21 51:16 96:1 96:25 98:25 111:1 113:24 132:12 148:22 150:18 152:12 160:22 187:20 200:5 200:11 201:11 201:19 **upside**(3) 15:9 16:1 36:3 **upwards**(2) 193:2 198:2 **usa**(2) 10:37 10:37 **use**(8) 20:18 93:25 121:21 144:5 149:10 183:2 185:11 191:12 | | **via**(2) 17:11 18:10 **view**(25) 20:5 29:25 30:12 32:16 35:21 36:1 37:24 39:13 43:14 44:20 45:14 61:14 64:13 93:9 97:1 97:4 115:1 128:2 146:23 147:14 163:2 165:21 165:23 200:14 209:1 **views**(11) 12:8 12:18 12:20 12:23 20:11 34:9 35:1 144:15 193:23 206:23 207:11 **vigorously**(1) 148:7 **viking**(1) 9:30 **vinson**(1) 7:42 **violated**(1) 182:13 **violates**(7) 15:11 130:20 180:6 183:19 184:14 184:15 190:13 **violation**(7) 93:2 129:18 130:21 181:22 182:3 182:16 183:4 **violations**(1) 127:25 **violative**(1) 93:11 **virtue**(4) 40:17 50:12 80:4 159:19 **vis-à-vis**(1) 187:9 **volume**(1) 121:19 **voluntarily**(1) 96:16 **vonnegut**(1) 3:9 **vora**(1) 10:38 | | | | **were**(85) 18:21 21:19 22:1 27:15 27:23 33:6 33:10 38:9 38:12 38:13 38:25 40:1 42:9 47:6 47:10 47:25 50:18 52:1 55:13 57:7 59:10 59:21 59:24 62:12 69:21 70:1 70:1 75:6 83:25 84:1 85:21 85:23 86:24 87:1 88:4 88:5 88:20 89:22 90:3 92:1 97:2 100:17 100:22 101:11 101:23 116:4 116:5 120:22 123:5 123:6 123:12 131:7 132:5 133:23 140:2 140:24 141:10 142:23 144:10 144:16 145:9 153:13 154:21 155:20 155:24 157:12 157:17 161:12 163:12 165:9 168:4 168:15 171:7 172:24 177:12 177:21 178:15 179:24 183:18 190:23 191:16 191:19 201:2 201:4 204:5 **west**(2) 2:9 60:20 **we'd**(4) 191:4 195:18 205:11 210:6 **we'll**(7) 152:21 157:2 192:5 198:13 200:18 203:22 209:11 |
| **used**(5) 66:4 182:17 182:24 185:9 205:10 **useful**(1) 207:11 **using**(3) 24:19 185:13 186:6 **usual**(1) 91:13 **usually**(2) 173:22 173:23 **vail**(1) 9:5 **valid**(9) 61:20 66:16 69:23 91:18 121:17 122:3 122:6 172:16 178:12 **validity**(1) 148:24 **valor**(1) 200:19 **valuable**(3) 15:13 36:12 189:13 **valuation**(22) 15:1 15:3 15:4 15:15 15:17 15:19 25:9 26:24 26:24 27:3 27:24 28:11 36:13 185:13 185:15 185:16 185:19 191:2 191:5 191:6 191:21 210:5 | | **vote**(31) 44:16 63:15 93:23 106:22 112:21 155:21 159:11 161:25 162:1 162:2 162:5 162:19 162:21 163:7 163:8 163:13 163:17 163:19 164:3 164:4 167:17 168:17 169:18 171:6 171:7 171:15 173:18 177:12 178:16 179:16 187:15 **voted**(7) 19:8 47:13 161:15 164:8 167:9 167:9 171:16 **voter**(1) 169:17 **votes**(12) 19:6 44:18 168:1 168:2 168:4 168:15 168:18 169:9 169:11 169:14 169:16 170:8 **voting**(6) 161:24 163:17 167:7 167:8 167:10 201:2 | | **washington**(15) 4:10 41:23 43:5 43:17 45:23 45:25 46:7 46:11 46:21 47:12 48:1 48:17 50:17 94:15 94:18 **wasn't**(2) 59:12 125:5 **wasn't**(4) 158:4 165:11 170:5 208:11 **waste**(1) 73:19 **waterfall**(5) 127:18 128:4 129:8 130:23 132:12 **watkins**(1) 7:38 **way**(42) 21:16 22:8 26:12 36:19 37:12 54:9 54:11 57:15 59:14 60:15 64:5 85:6 89:6 89:19 90:6 92:12 95:19 103:9 108:3 108:19 130:19 133:22 134:2 138:4 138:18 141:24 146:5 158:7 158:11 166:17 167:17 174:24 176:8 183:6 186:17 196:5 201:14 202:22 202:23 203:11 206:17 207:5 **ways**(5) 67:19 118:6 182:4 190:11 194:17 **we'd**(3) 19:8 72:6 94:12 **we'll**(15) 14:7 38:7 40:20 46:17 70:2 90:21 106:9 108:22 108:22 138:15 138:25 144:1 144:5 144:21 146:12 **we're**(26) 23:5 24:19 27:13 30:12 50:9 50:10 54:20 56:25 59:1 59:3 59:10 65:22 72:1 78:16 88:21 104:12 107:3 107:6 108:14 109:2 114:22 129:12 139:3 145:20 148:1 148:2 **we've**(14) 12:6 14:5 28:2 40:13 42:8 63:5 87:21 93:24 94:24 95:5 101:5 106:2 108:14 108:21 **wednesday**(1) 202:5 **week**(16) 18:12 19:12 19:14 27:15 53:17 78:13 144:16 190:10 190:23 198:22 200:2 201:24 202:2 202:3 204:22 211:10 **weekend**(1) 210:10 **weeks**(7) 22:1 28:22 34:8 38:19 45:9 82:20 103:13 | | **wharton**(2) 6:17 8:29 **what**(163) 12:10 12:14 23:4 23:9 23:12 24:19 26:1 26:4 29:4 34:19 35:13 36:6 36:9 36:10 41:6 45:7 46:6 51:1 54:18 54:20 56:2 56:9 56:24 56:25 57:5 58:8 58:12 60:20 61:20 64:8 67:2 67:11 67:16 68:21 69:8 69:14 70:10 71:18 72:3 72:4 72:6 72:7 73:4 73:15 78:25 79:5 80:12 84:14 87:12 89:8 89:10 89:20 89:25 91:13 93:20 93:21 93:24 93:25 94:2 94:11 94:20 94:21 94:24 96:6 96:7 98:13 98:15 99:7 99:18 102:3 103:18 103:24 104:24 108:11 108:20 109:2 112:22 113:20 114:20 115:18 121:22 121:24 124:1 126:17 129:13 129:20 131:5 133:6 133:8 133:20 134:5 134:5 134:12 134:22 137:6 137:23 138:19 139:10 140:21 140:25 145:13 145:15 145:24 148:1 148:14 149:11 150:21 150:21 152:25 153:11 153:16 154:4 154:10 158:11 161:25 162:1 163:13 164:6 164:21 165:12 166:7 168:11 169:10 170:8 170:17 172:7 174:5 174:10 175:2 175:7 176:6 177:25 179:15 180:23 183:8 185:9 185:10 187:7 187:8 187:9 189:2 189:21 190:20 191:15 191:17 192:13 192:15 192:19 193:3 193:20 195:10 195:10 199:13 199:20 200:13 201:2 201:10 201:20 205:4 205:22 207:11 208:18 **what's**(7) 41:1 67:2 79:25 90:24 113:6 132:22 136:11 |
| **value**(62) 15:5 16:1 16:6 19:10 21:12 21:15 22:6 22:17 22:23 22:24 23:4 23:6 23:9 23:15 24:5 24:10 24:17 24:20 25:6 25:8 27:16 27:17 27:18 27:21 27:25 28:1 30:16 30:16 30:18 35:18 35:23 36:8 36:14 36:17 36:21 45:15 114:19 114:20 118:20 118:22 119:5 122:14 123:22 123:24 125:1 136:4 136:17 148:9 160:20 182:22 182:22 182:23 183:1 186:4 186:17 186:19 188:15 189:25 190:25 191:16 192:3 192:21 **value-destroying**(1) 195:21 **values**(1) 120:2 **variable**(2) 118:2 118:23 **variations**(1) 152:13 **various**(4) 20:1 20:4 63:6 66:3 **vary**(1) 64:15 **vasquez**(1) 5:29 **vastly**(1) 118:11 **vein**(1) 124:24 **ventilated**(1) 208:13 **venture**(1) 140:12 **version**(12) 14:23 14:24 14:24 20:7 24:15 24:20 26:7 30:14 33:6 79:3 111:7 | | **vrc**(1) 137:1 **wackerly**(1) 6:39 **waiting**(1) 28:20 **waive**(2) 197:23 198:4 **waivers**(1) 125:4 **walloping**(1) 59:7 **walrath**(21) 41:25 45:24 46:2 46:7 46:10 46:24 47:2 47:18 48:9 48:22 50:16 50:19 52:19 94:16 158:5 158:6 158:11 158:17 158:20 172:22 173:9 **walrath's**(1) 41:23 **want**(36) 13:15 15:25 16:14 20:8 28:18 30:14 57:16 59:22 63:22 66:23 77:10 77:12 78:20 81:18 81:23 82:11 87:9 96:17 113:9 121:11 137:21 143:19 148:7 150:22 167:6 168:2 181:18 191:1 192:15 193:5 194:24 195:14 197:18 197:20 209:19 209:25 **wanted**(7) 78:9 92:11 198:25 200:23 206:21 208:19 209:17 **wanting**(1) 169:17 **wants**(1) 202:13 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **whatever**(12) 55:15  57:11  60:2  102:25 141:9  141:15  144:16  144:22  145:3  146:17 146:20  192:24 | | **who**(85) 20:6  22:14  26:6  27:23  28:17 33:16  33:19  33:24  34:7  38:25  40:1  41:15 41:15  42:22  44:21  50:25  52:15  53:2  58:2 61:8  61:22  68:9  69:5  69:7  69:9  69:15 70:5  71:9  71:19  75:4  72:22  75:25  76:2 76:16  76:17  81:11  81:17  82:6  82:6  82:7 86:14  87:8  91:2  91:22  95:11  96:8  96:17 98:5  98:9  98:11  98:12  98:23  99:3  99:9 99:9  99:9  99:21  100:22  105:16  105:22 111:14  123:18  137:21  139:4  139:19  140:2 141:10  142:5  142:13  143:1  147:1  149:6 152:3  154:8  160:18  161:11  163:18  169:18 173:18  183:16  186:18  187:11  195:6  209:9 210:17 | | **with**(301) 12:7  12:18  12:20  12:23  13:7 13:15  14:8  18:7  18:17  18:25  20:19  20:21 21:8  21:14  23:9  23:22  24:6  24:23  25:7 25:17  25:19  27:9  27:24  29:7  29:18  29:20 30:4  30:5  30:9  30:10  30:23  31:3  31:4 31:14  31:18  33:1  33:2  33:18  33:25  34:21 35:1  35:8  35:16  35:18  37:7  37:11  38:3 38:5  38:20  39:6  39:25  40:12  40:24  41:9 42:8  42:10  42:17  42:20  43:1  43:17  46:17 46:20  48:17  49:9  49:13  49:18  50:2  50:13 51:3  53:5  53:7  54:22  56:5  57:10  57:18 57:24  58:3  59:9  59:18  59:22  61:5  61:19 61:24  63:3  63:8  63:16  63:17  64:10  64:18 65:5  65:13  65:23  66:3  66:12  66:24  67:1 67:14  69:7  69:9  70:6  70:10  70:15  71:2 71:8  71:13  71:15  72:7  73:8  74:12  75:22 76:6  76:12  77:6  77:7  78:15  78:20  79:1 79:13  79:14  79:16  80:21  81:1  81:3  81:4 81:13  81:25  82:22  83:7  83:10  83:25  84:5 84:7  84:15  85:13  86:12  87:15  88:13  88:17 88:18  88:19  89:3  89:3  89:11  90:6  90:16 90:24  91:13  91:14  91:14  92:8  94:4  94:17 94:18  95:9  95:15  96:4  96:17  96:22  97:12 97:13  97:17  97:21  97:22  99:2  99:23  100:5 101:3  101:12  103:18  103:20  104:15  105:4 106:4  106:17  107:4  107:12  107:20  108:1 108:9  108:23  110:7  110:17  111:8  111:17 117:12  118:2  118:8  118:17  118:20  118:23 119:4  119:10  120:3  120:18  121:15  122:23 123:22  123:25  124:2  124:4  124:23  125:11 125:15  126:5  126:20  127:19  128:4  128:6 128:7  130:4  130:6  133:15  133:19  134:1 134:10  135:20  135:22  136:10  136:19 138:15  138:18  139:23  142:12  142:24 143:16  144:2  144:14  148:13  149:6  151:23 151:25  152:21  153:19  154:5  155:6  155:6 156:1  156:2  157:8  158:20  158:24  160:5 160:8  161:4  164:2  168:21  169:7  170:2 172:10  173:20  174:9  174:14  175:2  175:22 175:23  176:7  176:15  177:3  177:21  178:1 178:9  178:14  179:22  180:14  182:11  183:1 184:5  184:8  185:12  187:9  187:25  188:24 189:21  191:17  192:22  193:4  193:14  193:22 194:8  194:25  196:4  196:5  197:13  197:15 198:23  199:25  200:7  201:10  201:22  201:2 201:24  203:12  203:22  204:8  205:3 | | **work**(23) 47:16  65:23  69:7  75:16  101:16 101:21  107:5  109:1  109:2  109:3  175:15 178:25  183:5  192:16  195:7  195:17  199:21 201:10  202:7  205:4  205:8  205:12  209:11 |
| **whatsoever**(5) 35:19  38:1  41:12  151:18 153:3 | | | | | | **working**(2) 54:7  68:12 | |
| **what's**(2) 194:20  205:17 | | **who's**(2) 79:12  99:20 | | | | **works**(4) 22:9  146:12  154:18  195:6 | |
| **when**(59) 29:23  34:1  37:8  37:23  38:12 43:18  54:23  57:23  58:2  58:9  59:1  59:13 60:15  63:7  69:14  75:3  78:15  93:19  99:19 102:3  102:13  107:10  107:15  110:21  115:1 116:7  116:14  119:16  122:5  127:22  141:3 142:18  148:1  148:15  156:15  159:2  160:17 160:19  162:21  165:15  168:17  169:6  170:8 170:18  173:24  174:14  174:17  176:9  177:1 185:10  185:23  190:24  192:4  194:3  195:6 207:17  208:4  211:6  211:12 | | **who've**(1) 68:11 | | | | **world**(6) 30:6  33:23  89:10  90:18  108:3 178:4 | |
| | | **whoever**(2) 67:8  144:5 | | | | | |
| | | **whole**(3) 67:1  141:9  141:23 | | | | **worried**(1) 169:17 | |
| | | **wholesale**(1) 208:1 | | | | **worry**(5) 60:24  96:10  96:11  96:13  164:14 | |
| | | **whose**(1) 98:4 | | | | **worse**(1) 63:5 | |
| **where**(71) 23:17  24:22  25:15  28:1  33:22 34:11  41:14  42:8  43:1  51:7  52:15  55:19 65:6  66:25  69:14  73:20  78:11  81:9  90:12 100:11  101:11  101:19  103:5  108:6  113:8 113:12  116:9  117:19  118:4  124:7  124:8 124:9  133:10  137:7  138:16  138:25  143:4 144:6  145:19  148:16  152:13  152:16  155:4 155:18  155:19  155:21  161:1  161:7  161:15 163:2  163:16  163:17  164:3  167:16  168:4 170:11  171:15  172:8  174:11  175:10  176:2 177:11  178:15  179:2  181:13  185:25  186:1 189:19  195:8  207:15  207:25 | | **why**(33) 14:13  30:13  30:18  30:19  33:13 34:4  38:24  50:20  61:15  67:10  74:12  81:16 81:23  90:25  93:22  95:21  96:18  96:22 97:14  99:7  102:20  116:24  123:9  139:19 144:9  146:9  148:11  165:12  165:17  167:2 170:18  190:7  191:8 | | | | **worst**(2) 22:11  187:25 | |
| | | | | | | **worst-case**(3) 180:21  181:9  184:22 | |
| | | | | | | **worst-possible**(2) 180:22  181:3 | |
| | | | | | | **worth**(17) 15:8  29:24  29:24  55:9  75:5 87:12  89:20  189:12  191:3  191:17  191:20 191:22  191:23  193:21  194:3  198:1  198:2 | |
| | | | | | | **worthless**(1) 55:9 | |
| | | **wide**(1) 167:20 | | | | **would**(215) 12:8  12:14  12:15  12:19  12:22 13:1  13:4  13:9  13:10  14:21  14:24  15:12 16:22  17:2  17:3  18:8  18:21  18:23  19:21 19:24  20:2  20:5  21:5  24:21  25:18  27:9 27:9  27:10  28:12  30:8  31:9  31:12  31:21 32:1  32:10  33:8  33:23  34:6  36:14  38:19 39:1  39:20  44:8  45:20  50:11  51:18  54:20 55:12  55:15  56:20  58:12  60:15  60:17 62:16  64:21  66:13  67:22  68:7  68:16  69:4 69:18  70:24  71:12  71:16  71:18  71:19 71:20  73:4  73:10  73:15  73:16  74:11  74:20 75:1  77:8  77:14  77:22  79:2  79:19  79:22 81:22  82:5  83:7  83:10  83:17  85:15  86:9 86:13  86:15  87:8  89:21  90:1  90:17  91:19 95:21  96:5  96:25  100:20  103:11  104:24 104:25  105:2  106:7  106:24  107:8  108:2 108:25  119:18  119:22  121:13  121:17  122:8 123:3  123:20  126:1  128:3  132:5  132:8 132:15  132:17  133:4  134:14  136:11  138:4 138:5  138:8  138:9  139:2  141:7  141:10 143:11  145:15  145:17  145:19  145:20 145:24  146:6  147:3  147:4  147:6  150:11 154:3  158:13  161:15  161:21  161:25  163:14 164:7  164:17  165:21  165:23  165:24 170:16  170:18  173:10  175:14  176:12  178:5 178:8  179:9  179:15  180:23  181:3  181:16 183:18  185:10  185:15  185:17  185:17 185:19  185:20  186:7  186:12  186:12  186:14 188:20  193:16  194:7  194:8  194:15  195:5 197:8  197:18  198:8  199:21  201:4  201:10 201:10  201:12  201:20  202:4  202:9  203:6 203:9  203:14  203:16  203:18  205:4  205:5 206:1  206:2  206:24  206:24  207:4  207:6 207:11  207:18  207:21  208:24  208:25  210:2 211:4  211:5  211:6  211:6 | |
| | | **widely**(2) 66:4  162:24 | | | | | |
| | | **wild**(1) 11:28 | | | | | |
| | | **wildly**(1) 150:1 | | | | | |
| **whereas**(1) 143:20 | | **will**(179) 14:18  16:15  17:12  18:11  18:12 18:18  18:18  19:6  19:12  19:13  19:17  20:1 22:18  22:20  23:21  23:22  25:2  26:3  26:4 26:4  26:21  26:24  27:2  27:18  27:19  27:19 27:21  28:9  28:9  28:24  29:3  29:12  29:15 29:16  30:8  32:14  32:18  32:23  33:3  33:13 35:7  37:2  37:3  37:4  37:9  37:10  37:10 37:23  39:5  39:6  39:7  41:6  41:17  41:22 42:3  42:10  45:15  48:8  52:17  54:4  54:10 54:12  55:8  55:23  55:25  56:9  56:14  56:19 60:24  61:6  61:6  61:9  61:9  61:10  62:24 64:10  65:17  67:6  69:20  71:9  76:3  78:4 78:5  78:14  80:5  81:23  82:1  82:20  88:23 89:2  89:15  91:5  92:4  93:3  96:14  96:15 96:15  97:20  98:4  98:6  98:6  98:12  98:12 98:15  98:15  98:16  98:19  100:4  102:9 103:7  104:6  104:7  105:16  105:19  106:5 106:8  107:18  108:5  111:19  111:20  114:17 114:18  126:16  126:16  126:20  136:2  136:2 137:22  138:25  142:1  143:16  143:22  144:2 144:4  145:4  145:4  146:18  146:24  147:18 148:11  151:4  153:23  155:19  160:17  163:9 163:18  169:1  169:5  179:2  180:8  182:19 186:18  186:23  188:13  188:14  191:20 191:22  191:23  193:1  193:19  196:16  197:4 199:1  199:15  199:16  199:17  200:20  200:2 202:5  202:7  205:19  206:12  206:16  206:17 207:19  209:7  209:24  211:10  211:19 | | | | | |
| **wherein**(1) 105:14 | | | | | | | |
| **whereupon**(1) 212:1 | | | | | | | |
| **whether**(60) 17:19  18:3  18:5  18:15  20:8 22:17  22:25  23:18  23:21  34:22  39:18 39:21  39:23  39:24  40:2  44:13  45:5  50:8 53:20  56:23  60:20  61:19  62:17  66:10 68:14  83:1  89:9  90:5  90:17  92:16  94:8 98:8  98:17  99:15  113:19  114:8  127:15 128:25  131:17  135:8  135:24  138:3  139:17 139:17  144:23  146:25  147:1  150:18  153:5 155:6  156:21  157:6  157:10  159:8  164:2 192:25  199:16  200:15  208:6  208:12 | | | | | | | |
| | | | | **with**(12) 206:2  206:25  207:4  208:7  208:13 208:14  208:17  209:21  209:25  210:7  210:1 211:11 | | | |
| **which**(128) 12:9  13:3  13:8  14:21  15:17 15:17  17:11  19:7  22:20  24:15  25:6  27:19 27:19  27:21  28:9  29:5  35:18  36:9  38:7 39:8  39:12  40:12  45:4  52:1  52:10  53:1 54:19  56:6  56:9  56:12  57:2  57:17  58:4 58:12  60:19  60:20  61:24  63:17  65:15 66:25  68:19  69:3  70:9  70:11  74:7  77:3 81:12  85:2  85:5  86:22  87:17  89:19  92:4 92:19  94:15  100:4  108:9  109:13  110:1 111:6  111:22  112:16  113:16  115:20  116:2 118:18  119:8  120:25  122:1  122:1  122:18 123:5  123:9  123:13  124:16  127:25  131:18 132:19  133:11  133:18  133:25  134:2  134:4 134:23  137:17  142:4  142:12  142:13  142:21 144:9  145:14  148:8  148:22  149:6  150:11 151:7  151:20  153:18  153:19  153:25  164:2 166:3  167:18  167:20  168:15  168:24 169:19  170:25  171:19  172:22  173:4  175:1 175:24  181:24  184:10  185:7  188:6  188:8 193:10  195:11  197:9  199:14  200:18  201:2 201:4  207:16  209:3  209:17 | | **william**(1) 4:36 | | **withdrawn**(2) 110:25  111:1 | | | |
| | | **willing**(2) 64:22  189:21 | | **within**(10) 14:6  40:18  50:6  70:22  94:21 112:16  150:20  174:6  199:11  199:18 | | | |
| | | **willingness**(1) 99:15 | | | | | |
| | | **wilmer**(1) 9:12 | | **without**(15) 33:20  38:1  43:6  44:10  63:11 63:13  80:21  91:5  100:12  100:18  103:1 127:9  156:10  157:17  198:7 | | **wouldn't**(5) 55:17  96:9  100:22  121:1  122:8 | |
| | | **wilmington**(16) 1:12  1:36  2:10  2:27  2:45 3:18  3:21  3:31  4:16  4:23  4:38  5:9  12:1 99:11  131:23  199:2 | | | | **wouldn't**(3) 154:21  175:15  194:11 | |
| | | | | | | **would've**(3) 172:14  172:15  172:17 | |
| | | | | **withstand**(1) 165:13 | | **wrapped**(2) 42:7  198:12 | |
| | | | | **witness**(1) 133:2 | | **writing**(2) 46:11  108:22 | |
| | | | | **witnesses**(2) 37:8  55:25 | | **written**(4) 14:16  40:6  89:6  210:23 | |
| | | | | **woefully**(1) 35:22 | | **wrong**(8) 48:8  93:9  103:17  152:14  152:17 196:3  196:4  208:19 | |
| | | | | **womble**(1) 4:13 | | | |
| **whichever**(1) 186:19 | | **win**(1) 193:5 | | **won**(1) 150:23 | | | |
| **while**(19) 14:24  31:20  34:18  61:18  67:8 77:20  78:11  107:17  112:17  113:5  147:6 155:22  183:14  188:6  188:18  189:14  190:1 191:16  191:25 | | **window**(1) 82:10 | | **won't**(6) 37:12  42:9  98:17  126:9  151:5 151:6 | | **wrongful**(1) 149:12 | |
| | | **wireless**(1) 160:15 | | | | **wrongly**(1) 151:14 | |
| | | **wires**(1) 11:4 | | | | **www.diazdata.com**(1) 1:45 | |
| | | **wish**(6) 20:3  28:4  80:17  108:18  175:13 209:9 | | **wondering**(1) 211:5 | | **yards**(1) 140:12 | |
| | | | | **won't**(3) 198:14  200:21  206:10 | | **yeah**(4) 104:10  105:4  166:13  203:18 | |
| | | | | **woodside**(1) 157:10 | | **year**(1) 45:24 | |
| **white**(1) 9:40 | | | | **word**(5) 64:10  93:25  99:6  103:17  121:10 | | **years**(8) 44:10  67:25  81:16  104:8  188:5 193:4  193:16  194:1 | |
| **whitman**(5) 132:24  133:1  133:6  133:7 | | **wished**(1) 208:10 | | **wording**(2) 65:8  65:9 | | | |
| **whitman's**(2) 133:5  134:8 | | | | **words**(6) 55:13  59:18  135:23  149:8  149:10 199:19 | | **yellowstone**(1) 142:11 | |
| **whitman**(1) 9:37 | | | | | | **yes**(10) 20:24  23:20  54:8  59:3  140:14 140:18  141:14  167:9  192:15  211:9 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|

**yesterday**(30) 12:11  13:2  21:5  29:1  45:14
53:16  57:3  57:16  57:25  58:14  60:10  62:10
87:17  89:9  89:23  90:7  90:10  97:3  116:2
117:14  121:20  128:20  131:8  132:23  133:2
134:15  140:9  156:15  160:18  211:3

**yesterday's**(1) 37:11
**yet**(7) 28:23  88:12  102:10  112:6  167:24
190:14  195:21

**yield**(2) 20:13  209:15
**york**(7) 2:33  2:39  3:11  3:43  4:32  157:23
159:7

**you**(301) 12:13  13:16  13:17  14:2  14:3
20:14  20:24  26:9  27:4  27:17  27:18  30:24
31:1  31:2  35:3  36:23  37:15  44:3  45:13
45:14  48:3  50:24  51:6  52:3  53:9  53:10
53:15  53:16  53:24  56:11  56:24  57:3  57:3
57:5  57:16  57:24  58:1  58:2  58:3  58:14
58:19  59:3  59:7  59:23  60:9  60:17  60:18
60:25  61:1  61:12  61:13  62:1  62:10  62:20
62:21  62:25  63:7  63:20  64:8  64:12  64:13
64:15  64:20  64:24  64:25  65:3  67:2  68:18
69:4  69:6  69:14  69:23  70:1  72:21  72:22
72:22  73:3  73:24  74:10  74:11  76:14  76:25
77:16  77:16  77:18  78:18  78:19  79:12
80:13  80:14  80:15  80:15  83:20  84:23
84:24  84:25  85:2  85:4  89:17  90:2  90:12
90:18  90:19  92:1  92:6  92:16  92:17
92:18  92:23  93:3  93:3  93:4  93:5  93:12
95:7  95:9  95:20  96:14  96:22  97:6  97:7
97:8  97:18  99:17  103:11  103:23  104:20
104:24  107:10  107:14  107:20  108:2  108:6
109:16  109:17  114:1  114:4  114:4  115:4
115:22  116:7  116:7  116:12  118:4  118:5
119:1  119:7  119:12  119:16  121:10  121:11
121:20  122:12  122:14  124:17  124:21  126:1
126:10  126:11  126:14  131:1  131:2  133:1
134:7  135:12  135:13  135:18  135:20  135:2
136:7  137:2  138:7  138:19  139:20  139:20
140:8  140:21  141:18  142:18  143:20  144:2
144:23  146:8  146:16  147:9  148:15  149:10
150:22  150:25  151:1  151:2  151:4  151:5
151:5  151:6  151:7  151:20  152:22  152:25
153:7  153:14  154:11  155:4  159:2  162:13
162:17  162:22  163:25  164:3  164:15  164:20
164:21  165:1  166:25  167:1  168:8  168:24
168:25  169:9  169:10  169:13  170:2  170:18
172:22  172:23  173:16  175:19  177:1  177:9
177:11  178:19  178:20  179:17  179:18
180:16  180:21  181:23  184:6  184:17  184:1
186:4  186:20  186:21  187:1  188:1  188:1
188:11  188:17  188:23  189:13  190:15
190:16  192:15  192:15  192:17  195:6  195:1
195:24  195:25  196:10  197:16  198:1  198:8
198:18  200:1  200:2  200:19  200:25  201:3
201:4  201:6  201:24  202:1  202:10  202:10
202:20  203:1  203:7  203:8  203:9  203:9
203:16  203:24  205:1  206:8  206:19  207:18
207:20  207:21  208:5  208:6  208:7  209:10
209:18  209:24  210:24  211:3  211:5  211:15
211:18

**you**(1) 211:21
**you'd**(3) 77:18  103:16  107:10
**you'll**(1) 142:19
**you're**(6) 15:22  40:5  79:14  104:22  116:14
140:5

**you've**(8) 48:2  75:10  75:14  92:23  109:23
110:25  118:13  146:10

**young**(1) 2:4

**your**(301) 12:3  12:4  12:6  12:14  12:24
13:3  13:6  13:17  14:3  14:3  14:12  15:14
16:8  16:13  17:15  17:22  18:15  19:4  19:11
19:18  19:19  19:21  20:6  20:10  20:15  20:17
20:25  21:10  23:3  24:12  25:4  25:21  26:8
26:15  26:20  27:6  27:16  28:2  28:21  29:18
30:23  31:3  32:7  32:10  32:24  33:7  33:13
34:1  34:3  34:6  34:15  34:18  34:20  35:4
35:6  35:9  35:12  35:16  35:18  36:1  36:5
36:10  36:12  36:19  36:22  36:24  37:1  37:16
38:8  39:4  39:8  39:10  40:5  41:19  42:3
43:4  44:2  45:8  45:20  45:21  45:23  47:13
48:1  49:8  49:20  50:23  51:4  51:13  51:16
52:9  53:7  53:11  53:13  53:23  54:9  54:20
56:13  56:16  57:6  57:22  58:24  59:9  59:23
60:10  60:11  60:16  60:19  62:1  62:4  62:7
62:22  63:20  64:3  64:9  64:14  64:21  65:3
65:3  65:21  66:1  66:22  67:3  67:5  67:14
67:20  67:25  68:5  68:7  68:25  69:4  69:13
69:18  70:17  71:1  71:3  71:6  71:8  71:11
71:22  72:5  72:10  72:13  72:14  73:6  73:25
74:11  74:16  74:25  75:7  75:18  75:21  76:2
76:5  76:9  76:20  77:1  77:9  77:20  78:2
78:8  78:8  78:19  78:19  78:24  79:1  79:13
79:25  80:1  80:16  80:23  81:14  82:12  82:18
82:21  83:7  83:7  83:13  83:20  83:21  84:18
85:8  90:18  90:20  90:23  91:15  92:6  92:18
93:13  94:14  95:8  95:16  95:23  96:4  96:12
96:19  96:23  96:25  97:4  97:7  97:11  99:17
100:19  102:7  103:11  103:15  103:19  104:7
104:11  104:16  104:17  105:5  105:7  107:11
107:21  108:6  108:11  109:2  109:5  109:5
109:18  109:21  109:23  110:17  112:14
112:22  115:1  115:9  115:17  115:23  116:16
116:21  118:3  124:14  126:1  126:14  126:18
126:22  126:25  127:3  127:15  128:3  129:16
131:1  131:3  131:8  131:17  133:4  133:21
135:3  135:12  135:14  135:23  136:3  136:14
137:7  137:18  138:3  139:7  139:13  140:3
140:19  140:25  141:3  141:24  142:1  142:11
142:12  142:17  143:13  143:18  144:23  145:9
146:8  147:9  147:22  150:17  152:20  153:5
154:1  154:12  154:16  155:1  159:5  161:3
162:22  165:1  165:3  165:6  165:18  165:22
165:24  166:2  167:2  167:18  167:24  172:12
173:2  173:3  173:19  174:15  174:23

**your**(74) 175:1  175:11  177:15  177:25
178:6  178:19  178:22  179:7  179:12  179:17
179:19  179:22  180:8  181:21  182:22  184:21
185:5  185:17  186:9  186:20  186:25  190:19
191:2  191:20  192:12  192:17  192:18  194:12
195:3  196:6  196:12  197:7  197:17  198:19
198:23  199:1  199:7  199:19  199:25  200:3
201:9  201:19  202:6  202:7  203:24  204:2
204:5  204:10  204:17  205:8  205:19  206:1
206:7  206:14  206:20  207:1  207:3  207:21
208:10  208:19  208:22  208:23  209:12
209:15  209:18  209:19  210:10  210:15
210:25  211:3  211:5  211:12  211:15  211:21

**yours**(1) 77:17
**yourself**(1) 141:4
**you're**(2) 169:6  196:10
**you've**(4) 152:12  153:17  168:3  170:18
**zabel**(1) 8:42
**zell**(3) 4:41  137:24  140:10
**zenith**(18) 39:17  41:22  42:19  45:2  45:4
45:17  47:1  47:3  47:18  49:23  50:14  52:4
52:6  66:4  71:23  75:9  77:8  82:25

**zenksy**(1) 85:24
**zenky's**(1) 87:13

**zensky**(42) 4:28  39:7  53:8  53:11  53:12
54:8  54:11  54:12  62:21  63:1  73:25  74:1
74:9  83:25  85:13  85:20  86:19  88:16  88:20
89:7  89:17  90:4  126:15  126:19  135:14
135:15  136:11  136:14  140:14  140:18
140:21  141:14  143:11  143:13  147:24
149:10  149:16  150:2  151:7  153:9  154:3
208:23

**zensky's**(3) 84:1  89:3  148:4
**zensky's**(1) 153:18
**zloto**(1) 7:13
**zuckerman**(6) 4:5  5:34  12:5  65:4  198:20
204:3

**"but**(1) 182:19
**"failure**(1) 162:2
**"further**(1) 159:19
**"limited**(1) 160:21
**"little**(1) 158:21
**"natural**(1) 186:7
**"only**(1) 174:17
**"shall**(1) 172:5
**"the**(2) 159:9  194:22
**"unusual**(1) 161:21
**"were**(1) 182:5
**"when**(1) 156:4
**"will**(1) 182:18