IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: 4/25/11 at 1:00 p.m.<br>Ref. Nos. 8594, 8595, 8596, 8597, & 8689 |

## REPLY OF MARK W. HIANIK, JOHN BIRMINGHAM, TOM E. EHLMANN, AND PETER A. KNAPP TO THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THEIR MOTIONS TO DEEM THEIR PROOFS OF CLAIM TIMELY FILED

Mark W. Hianik, John Birmingham, Tom E. Ehlmann, and Peter A. Knapp, each a former officer of various of the Debtors (collectively, the "Former Officers"), moved this Court to deem their respective Proofs of Claim as being timely filed. [D.I. 8594, 8595, 8596, & 8597.] Each of the movants sought indemnification from various Tribune entities in connection with avoidance actions commenced against them [see D.I. 6744, 6856, 6860, & 6903 (the "Preference Actions")]; Mr. Hianik also sought indemnification on account of having been named a defendant in the action commonly known as the FitzSimons Action [D.I. 6739]. The Former Officers have asked the Court to deem their proofs of claim as timely because, as of June 12, 2009 (when the Bar Date passed),[1] they could not have reasonably anticipated the Preference Actions and the FitzSimons Actions, which were filed in November and December of 2010.

The Official Committee of Unsecured Creditors (the "Committee") objected to having the Former Officers' claims deemed timely. [D.I. 8689] In making this objection, the Committee concedes that it has no reason to believe that the Former Officers have acted in anything other than good faith (see id. ¶ 10). Likewise, the Committee does not controvert – or

---

[1] As Mr. Hianik notes in his motion, the relevant Bar Date for his claim against Tribune CNLBC, LLC is July 26, 2010. However, the Committee does not take issue with this other Bar Date in its objection.

submit any evidence against – the Former Officers' attestations that prior to late 2010, they had no knowledge that they could be subjected to liability for their work for any of the Debtors, or that they held potential claims against any Debtor (Hianik Mot. Ex. C ¶ 16; Birmingham Mot. Ex. C ¶ 13; Ehlmann Mot. Ex. C ¶ 15; Knapp Mot. Ex. C ¶ 13). Rather, the Committee suggests that the Former Officers should have known of their potential for liability and should have filed contingent, unliquidated claims on a protective basis. This position leaves three factors to consider: (a) The reason for delay; (b) prejudice; and (c) the delay's length and impact on the proceedings. Each of these factors favors granting the Former Officers' motions.

(a) *The Reason for Delay.* The Committee seeks to impute knowledge of the Preference Actions and the FitzSimons Action to the Former Officers, contending that each of the Preference Actions was merely "mechanical" in nature and the FitzSimons Action concerned the substance of a "well-known and publicized" transaction that resulted in the Tribune Company's "spectacular and highly-publicized" bankruptcy. (Comm. Objection ¶¶ 12-15 & n.3.) From these premises, the Committee concludes that, prior to June 12, 2009, the Former Officers had sufficient reason to foresee the lawsuits filed against them. (*Id.* ¶ 15.[2]) However, the Committee offers no reason or evidence to support the position that these lawsuits were so mechanical and inevitable that the Former Officers should lose their claims for failing to have foreseen these lawsuits.

The Committee's far-reaching premise finds no support in the record of this case. As the Committee itself explained in seeking standing to bring these Preference Actions, whether to file these claims is a matter of discretion. [D.I. 6620 ¶¶ 3, 4, 15-20.] The Committee explicitly

---

[2] The Committee takes a passing shot at the time it took the movants to file their Proofs of Claim after they became aware of the lawsuits against them. (Comm. Objection at n.4.) As each movant noted in his motion, that gap was a function of the movants seeking counsel and the counsel becoming familiar with the Tribune bankruptcy, an obviously complex and lengthy task. (*See, e.g.*, Hianik Mot. ¶ 6c.) It is quite understandable that the movants would need the time they took to submit their Proofs of Claim and file their motions in support.

repudiated the "Objectants' view that the Committee should bring _every_ potential preference action, against _every_ potential preference defendant, without regard to potential defenses and without regard to whether the preference action would maximize value to the Debtors' estate." (_Id._ ¶ 3.) Hence, the Committee brought some preference actions – but not all of the preference actions that it could have brought.

It necessarily follows that preference claims are not "mechanical" in the sense that all insiders should anticipate a claim against all payments within one year of the debtor filing for bankruptcy. There is no reason to believe, as the Committee asserts, that as a blanket matter, "there are few things less unpredictable in large chapter 11 cases than preference claims against the Debtors' insiders." (Comm. Objection ¶ 12.) The defenses and statutory requirements codified at 11 U.S.C. § 547 assume that not every insider receiving payment within a year of bankruptcy inevitably must face avoidance litigation.

The Committee therefore has failed to explain how any of the Former Officers reasonably should have known by June 2009 that the Tribune Company was insolvent when he allegedly received payment in December 2007 (and, in Mr. Ehlmann's case, one payment in August 2008). (_See_ Ex. A to each Preference Action's complaint.) The Committee has not explained how Mr. Hianik should have known that any of the subsidiaries was insolvent as of December 2007; how Mr. Birmingham should have known so about the Chicago Tribune Company, Mr. Ehlmann about WGN Continental Broadcasting Company, or Mr. Knapp about the Tribune Publishing Company.

The Examiner investigated and reported on the solvency of the Tribune Company and potential causes of action that could arise from its insolvency. The length, complexity, and duration of the Examiner's engagement demonstrate that any analysis of solvency and liability in this case is far from simple or mechanical. (_See generally_ [D.I. 5130 (Report Volume 1) & 5131

(Report Volume 2)]). The Examiner expressly drew no conclusion as to preferential transfer claims against the Debtors' officers and directors. Rather, the Examiner noted that "[d]epending on the circumstances, these payments may or may not qualify as preferences and could also be subject to an ordinary course of business defense that would make them unavoidable." (Report Vol. 2 at 321-22.) The Committee has given no reason for any of the Former Officers to believe that the payments made to him improved his position or were outside of the ordinary course of business. Indeed, these are precisely the issues that will be resolved if the Preference Actions proceed to trial.

The Committee alludes to the high-profile nature of the leveraged buy-out of the Tribune Company and the Tribune Company's subsequent bankruptcy as reasons for Mr. Hianik to have anticipated the breach of fiduciary claim pending against him in the FitzSimons Action. The Committee cites nothing in particular about either event that should have led Mr. Hianik to reasonably anticipate that he would be accused of violating his fiduciary duties. Indeed, in a transaction where the Debtors were advised by some of the most capable and sophisticated firms in the country, it was wholly reasonable for Mr. Hianik to have reached the opposite conclusion: that the transaction was properly structured and documented, and that he would have no risk of liability requiring indemnification.

The Committee cites *In re Engage* in support of its argument that the Former Officers should have foreseen the Preference Actions and the FitzSimons Action. (Comm. Objection ¶ 14.) However, *Engage* is an example of what the Former Officers' claims are not. In *Engage*, the debtor corporation filed for bankruptcy after buying itself from its parent. The debtor's former chairman and other directors (who also served as the parent's CEO and directors) sought indemnification for lawsuits filed against them arising from their corporate capacities at the time of the transaction. The *Engage* officers and directors failed to submit any evidence – not even

any affidavits – to create a record of their lack of any actual knowledge prior to the bar date of their potential exposure. The court concluded on that record that it was just as reasonable to infer that these directors and high-ranking officers "had actual knowledge of the Bar Date and their potential exposure to be sued." The court simply disbelieved the directors when they argued that they were not sufficiently involved with the debtor or its parent to have no awareness of any potential liability. 315 B.R. 217, 225 (Bankr. D. Mass. 2004). In contrast, Mr. Hianik, Mr. Birmingham, Mr. Ehlmann, and Mr. Knapp have submitted uncontroverted affidavits in support of their proofs of claim, and this record contains no evidence sufficient to charge the Former Officers with knowledge of their potential liabilities.

The Committee argues that the Former Officers' failure to file their proofs of claim by June 2009 was "mere ignorance" of their contingent indemnification claims and, therefore, inexcusable. (Comm. Objection ¶ 16.) The Committee notes that the Former Officers had a contingent, unliquidated claim when their indemnification rights were granted and claims that they had a "responsibility" to file their indemnification claims before having even a suspicion that they would be sued. (*Id.*) This argument suggests that a director should always file an indemnification claim before the bar date and, if he files after the bar date, his claim should never be allowed. This simply is not the law, as an officer's late indemnification claim has been allowed in at least one reported case. (*See, e.g.,* Hianik Mot. ¶ 4 (citing *In re BuildNet, Inc.,* 2003 WL 22078079 (M.D.N.C. Aug. 26, 2003)).)

The Committee purports to distinguish *In re Buildnet* on the grounds that "[i]n that case, potential claims that would trigger the indemnification rights of officers and directors were not identified until the examiner filed his report, which occurred five months after the bar date." (Comm. Objection ¶ 13.) Despite the Committee's unsubstantiated assertion that former officers in a bankruptcy like this case just should have known better, this is precisely what happened to

Mr. Hianik, Mr. Birmingham, Mr. Ehlmann, and Mr. Knapp, and the reason for their delay in filing their Proofs of Claim tilts in their favor.

*(b)     Prejudice.* There is no credible threat of prejudice to the Debtors or to the other unsecured creditors. The Committee claims that allowing these four claims would "open the floodgates" to other claims. (Comm. Objection ¶ 11.) However, applicable law dictates that each late claimant's neglect should be considered on a case by case basis, considering the totality of each individual claimant's circumstances. *See In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 613 (Bankr. D. Del. 2006). Further, and as the Committee acknowledges, current officers and directors were exempted from filing claims prior to the Bar Date. Accordingly, the Debtors already have accepted ongoing uncertainty as to liability for indemnifying officers and directors. The Committee attempts to manufacture prejudice by aggregating the four claims together into a lump sum of $2.5 million. This aggregation is unfair to each claimant, as each claimant should be considered on a case by case basis, but even still it shows how immaterial these claims truly are on a relative basis. These claims are asserted against estates that have already acknowledged at least $64 billion in other unsecured, nonpriority claims. (*See* ¶ 6a of each motion.) The amount of the proposed claims simply will not have a material effect on the Debtors or other unsecured creditors.

*(c)     The Delay's Length and Impact on the Proceedings.* The Former Officers' motions are concisely presented and may be disposed of without delay. Allowing these claims to be timely would not add to the proceedings, as the Former Officers' indemnification claims are merely more of the same kind of claims as the current officers' claims that are yet to be determined in any event. Allowing these claims to be timely would not delay the proceedings. Currently, no plan of reorganization has been confirmed, and no distribution to creditors is yet in

prospect. Certainly, allowing the Former Officers' claims would not require any recovery of any funds already distributed. The Committee does not suggest otherwise.

The Committee's sole argument on this point is that each of the Former Officers always had the ability to file a contingent, unliquidated indemnification claim. (Comm. Objection ¶ 16.) This contention cannot defeat the officers' motion, or else no late indemnification claim would ever be allowed. As noted above, that simply is not the law.

For these reasons, as well as the reasons given in each movant's motion, Mark W. Hianik, John Birmingham, Tom E. Ehlmann, and Peter A. Knapp respectfully request that this Court enter an Order deeming each movant's Proof of Claim timely filed and grant such other and further relief as this Court deems proper and just.

Dated: April 20, 2011

COZEN O'CONNOR

Mark E. Felger (No. 3919)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

- and -

Michael Dockterman, Esq.
Jonathan Young, Esq.
Patrick Frye, Esq.
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229
Telephone: (312) 201-2000
Facsimile:   (312) 201-2555

*Counsel to Mark W. Hianik,*
*John Birmingham, Tom E. Ehlmann,*
*and Peter A. Knapp*