**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> TRIBUNE COMPANY, *et al.*, <br><br>                                Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 08-13141 (KJC) <br> ) <br> ) Jointly Administered <br> ) <br> ) <br> ) <br> ) **Re: D.I. 8478 & 8688** |

**REPLY OF SAM ZELL IN SUPPORT OF MOTION FOR CLARIFICATION THAT LEAVE IS NOT NECESSARY OR IN THE ALTERNATIVE, FOR LEAVE, TO SERVE HIS MOTION FOR RELIEF UNDER RULE 9011**

Samuel Zell ("Mr. Zell") respectfully submits this reply in support of his Motion for Clarification That Leave Is Not Necessary, Or In The Alternative, For Leave, to Serve Samuel Zell's Motion For Relief Under Rule 9011 (the "Zell Clarification Motion," D.I.8478), and states as follows in support:

**ARGUMENT**

**A.     The Court Has Not Suspended—And Should Not Suspend—Rule 9011.**

The Committee's claims against Mr. Zell violate Rule 9011 and should be withdrawn immediately. But rather than withdrawing the claims, as they should, or standing behind the claims, as Rule 9011 would otherwise require, the Committee and its counsel attempt to avoid Rule 9011 altogether. They argue that the Court has suspended Rule 9011 or that, if it has not, it should defer even the *service* of Mr. Zell's Rule 9011 motion because the Committee and its counsel are simply too busy to assess whether their allegations should be withdrawn.

The Court should reject the Committee's approach, which would create an unprecedented "Rule 9011-Free Zone" in this Court. The Court has no more authority or reason to suspend Rule 9011 than it does the canons of ethics or code of professional responsibility. A person who

is subjected to unfounded and vilifying public accusations in pleadings filed with this Court is entitled to the timely protections of Rule 9011.  No attorney who files a pleading should be immunized—even temporarily—from complying with his or her professional obligations.

The Committee does not cite a single case in which a Court has prohibited a party from serving a motion under Rule 9011.  In fact, federal courts have made clear that Rule 9011 (or Fed. R. Civ. P. 11) motions should be filed and adjudicated at the earliest opportunity, to avoid wasteful proceedings and to mitigate the damage of unfounded allegations.  *Ann Pensiero, Inc., v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) (Rule 11 motion should be filed "as soon as practicable after discovery of Rule 11 violation" because "promptness in filing valid motions will serve not only to foster efficiency, but in many instances will deter further violations of Rule 11 which might otherwise occur during the remainder of the litigation"); *see also Kaplan v. Zenner*, 956 F.2d 149, 151-52 (7th Cir. 1992) ("such motions should be filed . . . as soon as practicable after discovery of a Rule 11 violation"); *In re Gen. Plastics, Corp.*, 184 B.R. 1008, 1017 (Bankr. S.D. Fla. 1995) (Rule 9011's duty to mitigate "strongly encourage[s]" litigants "to use the least expensive alternative to alert the court and the offending party of a possible Rule 11 violation").

Indeed, federal courts have recognized that, consistent with Fed. R. Civ. P. 1 (which has an analogue in Bankruptcy Rule 1001), "[m]eritless claims should be disposed of at the first appropriate opportunity."  *Hungate v. United States*, 626 F.2d 60, 62 (8th Cir. 1990); *see also Colorado v. Carter*, 678 F.Supp. 1484, 1486 (D. Colo. 1986) (Under Rule 1, "Defendants have a right to be free from harassing, abusive, and meritless litigation.  Federal courts have a clear obligation to exercise their authority to protect litigations from such behavior.").

The suspension of Rule 9011 would be especially inappropriate here.  The Committee's *own expert* has admitted in sworn testimony that the Committee's claims against Mr. Zell "***do***

*not have a meaningful chance of success*" and "*do not have a significant recovery value*." (Ex. A, 3/10/11 Tr. at 51:24-52:8.)  Those admissions accord with the prior findings of the Court-appointed Examiner and the Committee's own investigation, which resulted in a proposed April 2010 plan of reorganization that would have released Mr. Zell from liability based upon these supposed claims.

The prejudice to Mr. Zell from allowing these baseless allegations to remain pending without the safeguard of Rule 9011 is patent.  Indeed, that prejudice was unfortunately illustrated during the course of arguments on third-party plan objections, when false headlines were published proclaiming that this Court had found merit to the claims against Mr. Zell—because a reporter misheard this Court's remarks when the Court stated, "I don't tell you that I think they [the claims against Mr. Zell] have merit."  (Ex. B, Tr. at 4/13/11 Tr. at 54:16.)  The continued pendency of these unfounded allegations without the check that Rule 9011 provides can only invite further unfair reputational injury.[1]

In short, to suspend the operation of Rule 9011 would be unprecedented, prejudicial, and unwise.  Mr. Zell believes that the service of his Rule 9011 motion should cause the Committee to withdraw its unfounded claims—avoiding wasteful litigation, preserving Estate assets, and reducing the matters to be decided by this Court.  The Court should grant Mr. Zell's motion.

---

[1] During the April 13, 2011objection arguments, the Court instructed counsel for Mr. Zell not to address the merits of these claims and made plain that, in doing so, it was not saying the claims have merit. (Ex. B, 4/13/11 Tr. at 54:13-19.)  A reporter for Bloomberg misheard the Court's remarks and promptly published a headline proclaiming that this Court had found the claims against Mr. Zell "*have merit*." (Ex. C.)  That incorrect report was republished nationwide, including in the *Los Angeles Times*. (*Id.*)  Corrections, published the next day, could not fully undo the harm.

**B.     The Committee's Remaining Counterarguments Are Incorrect.**

The Committee makes six arguments not already addressed, but each fails.

<u>First</u>, the Committee argues that the Court has already decided to stay Rule 9011 proceedings in the issuance of its October 27, 2010 Stay Order. The Committee, however, ignores the fact that it had not even *filed* its amended complaint at the time of the Stay Order. It is absurd to contend that the Court contemplated a suspension of Rule 9011's safeguards before the Court even had the opportunity to review the specific pleading in question.

<u>Second</u>, the Committee argues that Mr. Zell did not object to the October 27 Stay Order. Mr. Zell has already recounted why, at the October 22, 2010 hearing, he objected to the filing of meritless claims against him, but, in the interest of permitting the Committee to address claimed statute of limitations concerns, he did not then object to the Committee's standing motion. (*See* D.I. 7613, Jan. 21, 2011 Suppl. Obj. to Committee's Complaint Confirmation Mot.) Since then, Mr. Zell has attempted to address his objections to the pleading through informal discussions with the Committee's counsel, an objection to the Committee's motion to confirm standing, and an informal letter concerning the Rule 9011 issues in the pleading. Only after diligently exhausting all other means for relief does Mr. Zell seek to serve the Rule 9011 motion.

<u>Third</u>, the Committee argues that permitting the service of a Rule 9011 motion would "violate the purpose of the Stay, which was to allow the parties to focus exclusively on conducting the plan confirmation proceedings." (Objection at 2.) But the service of the Rule 9011 motion will only require the Committee and its counsel to decide if they will withdraw the unfounded claims against Mr. Zell—that should take no time, because the Committee and its counsel should have *already* determined, when they filed these claims, whether the Committee has a good faith basis for filing them. If the Committee and its counsel know the claims lack a

4

good faith basis—as the DCL plan proponents' expert effectively admitted on cross-examination—it should withdraw the claims without another moment's delay.  If the Committee and its counsel believe the Committee has a good faith basis for the claims and has decided not to withdraw them, they should simply say so.  In either case, it will take less time to say "yes" or "no" to withdrawing the claims than it has for the Committee and its counsel to prepare its opposition to this motion.

Fourth, the Committee argues that "service of the Rule 9011 Motion would be inappropriate and premature because . . . it is unclear at this point . . . whether the Committee ultimately will be the party charged with litigating the LBO Actions after the Stay is lifted." (Objection at 3.)  In other words, the Committee does not want the responsibility for making the decision whether to withdraw the claims that *it* and *its own lawyers* filed because someone else might someday believe they satisfy Rule 9011.  That argument is untenable and highly prejudicial to Mr. Zell.  The federal rules do not contemplate that a party may file frivolous claims so long as they are doing so only as a "caretaker" on behalf of some unidentified person who might try to pursue them in the future.  It is the Committee and its counsel who chose to file a public pleading and sign their name to it—and did so notwithstanding Mr. Zell's offer to enter into a tolling agreement to preserve any purported claims.   That pleading contains unfounded allegations of misconduct that are highly injurious to Mr. Zell's reputation.  It is the Committee and its counsel who must comply with Rule 9011 in relation to their own pleading—the Rules do not give any party or its counsel a "free pass" on Rule 9011 compliance.

Fifth, the Committee argues that permitting the service of a Rule 9011 motion "would open the floodgates to other defendants in the LBO Actions teeing up their own motions challenging the claims against them."  (Objection at 8.)  But *no* other defendant has indicated

that they intend to serve a Rule 9011 motion; *no* other defendant was so definitively vindicated by the Examiner; and *no* other defendant has elicited testimony from the Committee's own expert that there is no merit to the claims against them.  The only "flood" this Court should be concerned about is the flood of unfounded pleadings and claims that could be asserted in bankruptcy cases if this Court sets a precedent that a Committee may file claims, stay them, and not timely determine whether they have an obligation to withdraw them under Rule 9011.

Sixth, and last, the Committee argues in the alternative that this Court should permit only the service of the Rule 9011 motion but—if the Committee does not withdraw all of the identified claims—not allow Mr. Zell to actually file his Rule 9011 motion until 21 days after the Stay has lifted.  Although that issue is not before this Court on the present motion, there is no basis for the Court to enjoin the filing of a Rule 9011 motion if the Committee, following the 21-day safe harbor, chooses not to withdraw the pleading.  To do so would violate the fundamental policies of Rules 1001 and 9011 to avoid wasteful proceedings and to protect litigants "harassing, abusive, and meritless litigation."  *Carter*, 678 F. Supp. at 1486; *see also Ann Pensiero*, 847 F.2d at 99.

## **CONCLUSION**

For all of the foregoing reasons, the Court should enter an Order clarifying that Mr. Zell can serve his Rule 9011 motion or, in the alternative, grant him leave to do so.

Dated: April 20, 2011                                **BLANK ROME LLP**

                                          /s/ *Alan M. Root*
                                        David W. Carickhoff (DE No. 3715)
                                        Alan M. Root (DE No. 5427)
                                        1201 Market Street, Suite 800
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 425-6400
                                        Facsimile: (302) 425-6464

                                                    and

                                        David J. Bradford (admitted *pro hac vice)*
                                        Catherine L. Steege (admitted *pro hac vice*)
                                        Andrew W. Vail (admitted *pro hac vice)*
                                        JENNER & BLOCK LLP
                                        353 North Clark Street
                                        Chicago, Illinois 60654
                                        Telephone: (312) 222-9350
                                        Facsimile: (312) 840-7375

                                        Co-Counsel for Samuel Zell

# **<u>EXHIBIT A</u>**

```
              IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                          )     Case No. 08-13141-KJC
                                )
                                )
TRIBUNE COMPANY,                )     Chapter 11
                                )
                                )     Courtroom 5
                                )     824 Market Street
          Debtors.              )     Wilmington, Delaware
                                )
                                )     March 10, 2011
                                )     10:00 a.m.


                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: JAMES BENDERNAGEL, ESQ.
                                BY: JAMES DUCAYET, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000

                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131

ECRO:                           BRANDON McCARTHY

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1 examination?

2       MS. STEEGE: Good morning, Your Honor. Catherine

3 Steege on behalf of EGI, TRB, and Mr. Zell.

4 BY MS. STEEGE:

5 Q    Good morning, Professor Black.

6 A    Good morning.

7 Q    Just a few questions for you. Do you recall that you

8 testified yesterday afternoon on direct that you had

9 allocated $300 million of value to the litigation trust in

10 connection with offering your opinion about the

11 reasonableness of the DCL plan settlement?

12

13 A    As a moderately conservative estimate, yes.

14 Q    Okay. And you also testified as to how you arrived at

15 that $300 million which claims you included in arriving at

16 that number. Do you recall that testimony?

17 A    Yes, I do.

18 Q    Okay. And do you recall that one of the claims that

19 you did not list among those claims were the alleged bridge

20 of fiduciary duty and aiding and abetting breach of

21 fiduciary duty claims that have been alleged against my

22 client, Mr. Zell?

23 A    That's correct.

24 Q    Okay. And, in fact, your opinion is that these

25 alleged claims against Mr. Zell do not have a significant

1  recovery value.  Isn't that correct?
2  A    That is my opinion.
3  Q    And you come to that conclusion, come that opinion
4  because you do not believe that these claims have a
5  meaningful chance of success.  Isn't that correct?
6  A    That's correct.  If they were to succeed, there were
7  large dollars attached, but I do not think they have a
8  meaningful chance of success.
9  Q    And that's true both for any claims alleged at Step 1
10 or any claims alleged at Step 2.
11 A    Yes.
12 Q    Okay.  Now there's been some questions asked about
13 your bankruptcy law experience and you've been candid that
14 you don't hold yourself out as a bankruptcy law expert, but
15 one of the things you do hold yourself out as, as a
16 corporate governance expert.  Correct?
17 A    Corporate law, corporate governance, corporate
18 acquisitions, yes.
19 Q    Okay.  And in connection with that expertise, one of
20 the reasons why you reach the opinion that there are not
21 claims with a meaningful chance of success against Mr. Zell
22 at Step 1 is because Mr. Zell was on the other side of the
23 deal from the Tribune.  Correct?
24 A    That is an important source of my opinion.  So he

# **EXHIBIT B**

```
                IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 08-13141(KJC)
                                )
                                )
TRIBUNE COMPANY                 )    Chapter 11
                                )
                                )    Courtroom 5
                                )    824 Market Street
           Debtors.             )    Wilmington, Delaware
                                )
                                )    April 13, 2011
                                )    10:00 a.m.

                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: BRYAN KRAKAUER, ESQ.
                                BY: KEN KANSA, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000

                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131

ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1  in Item B1A to the priority of EGI's claims, an objection to
2  the bridge settlement, and objections that I think come
3  later in the agenda under the topics of creditor trust
4  related to the 346(e) priority issue in the bar order.
5           It's our understanding that those objections will
6  be addressed later because they're part of a group of
7  objections where others will also be appearing, but that I
8  together with my partner, Cathy Steege who will address the
9  issue of priority of EGI's claims, will address everything
10 that is in Items B1 and B2A at this time and then we'll move
11 further down the agenda if that's agreeable to the Court.
12          THE COURT:  That's fine, I just have on request.
13 You mentioned at the beginning of your statement that you
14 wanted to address why claims, alleged claims don't have any
15 merit.  I would say spend no time on that.  And by saying
16 that, I don't tell you that I think they have merit, I know
17 we have a hearing scheduled at some time in the future on
18 the standing issue, but that's not an issue for now as far
19 as I'm concerned.
20          MR. BRADFORD:  If I might just be heard briefly
21 on why we believe it's an issue for now Your Honor.
22          THE COURT:  Certainly.
23          MR. BRADFORD:  With respect to the -- both plans,
24 each of them effectively seek to finance and fund their
25 plans on the basis of claims that are being asserted.  The

# **EXHIBIT C**

**Bloomberg Businessweek**

**Tribune Judge Says Claims Against Chairman Zell 'Have Merit'**

By Steven Church - Apr 13, 2011 12:22 PM CT

Tribune Co.'s bankruptcy judge said potential lawsuits against company Chairman Sam Zell related to the billionaire's $8.2 billion buyout of the newspaper publisher "have merit."
U.S. Bankruptcy Judge Kevin Carey didn't immediately rule on a request by Zell, 69, to either prevent any lawsuits against him from going forward or require that an independent trustee pursue the litigation. In a lawsuit in November, creditors accused Zell of pushing forward with the buyout even though he and others involved knew the transaction would add too much debt on Tribune for the company to survive.
Tribune creditors have said they plan to pursue lawsuits against Zell after the Chicago-based company exits bankruptcy. Both of the competing reorganization proposals for Tribune would create a litigation trust to sue some of the banks, former shareholders and Tribune managers involved in the 2007 buyout organized by Zell.
"It is for some court down the road to determine whether or not those claims have merit and will succeed," James Sottile, a creditor attorney, told Carey today.
Carey is hearing objections to the two plans today in U.S. Bankruptcy Court in Wilmington, Delaware. Final arguments about the plans are scheduled for June.
Tribune filed for bankruptcy in 2008, a year after Zell took the company private. Creditors are owed about $13 billion. The company is worth about $6.75 billion, according to court records.
The bankruptcy case is In re Tribune Co., 08-bk-13141, U.S. Bankruptcy Court, District of Delaware (Wilmington).
To contact the reporter on this story: Steven Church in Wilmington, Delaware, at schurch3@bloomberg.net

# Los Angeles Times

Friday, April 14, 2011
3:02 p.m. PDT

**BUSINESS BRIEFING; BANKRUPTCY; Tribune judge eyes Zell claims**
14 April 2011
The Los Angeles Times (Wire Reports)

Tribune Co.'s bankruptcy judge said potential lawsuits against Chairman Sam Zell related to the billionaire's $8.2-billion buyout of the newspaper publisher "have merit."

U.S. Bankruptcy Judge Kevin Carey didn't immediately rule on a request by Zell, 69, to either prevent any lawsuits against him from going forward or require that an independent trustee pursue the litigation.

In a lawsuit in November, creditors accused Zell of pushing forward with the buyout even though he and others involved knew the transaction would add too much debt on Tribune for the company to survive.

Chicago-based Tribune's properties include the Los Angeles Times.