IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Objections Due: May 6, 2011 at 4:00 p.m.<br>Hearing Date: May 25, 2011 at 1:00 p.m. |

### APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL., PURSUANT TO 11 U.S.C. §§ 328 AND 1103 AND FED. R. BANKR. P. 2014, FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SEITZ VAN OGTROP & GREEN, P.A. AS SPECIAL CONFLICTS COUNSEL NUNC PRO TUNC TO APRIL 21, 2011

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Tribune Company, et al. (collectively, the "Debtors") hereby submits this application (the "Application"), pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing the employment and retention of Seitz Van Ogtrop & Green, P.A. ("SVG") as special conflicts counsel in connection with the Debtors' chapter 11 cases, *nunc pro tunc* to April 21, 2011. In support of this Application, the Committee respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

{698.001-W0014261}

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Application are Bankruptcy Code sections 328(a) and 1103 and Bankruptcy Rule 2014.

## BACKGROUND

2. On December 8, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors remain in possession of their assets and continue to manage their property as debtors-in-possession.

3. On December 18, 2008, the United States Trustee for the District of Delaware (the "UST"), pursuant to Bankruptcy Code section 1102, appointed the Committee to represent the interests of all unsecured creditors in the Debtors' cases. The current members of the Committee are: JPMorgan Chase Bank, N.A., in its capacity as lender; Deutsche Bank Trust Company Americas, as successor Indenture Trustee; Wilmington Trust Company, as successor Indenture Trustee; Warner Brothers Television; Buena Vista Television; William Niese; Pension Benefit Guaranty Corporation; and Washington-Baltimore Newspaper Guild, Local 32035. *See* Second Amended Notice of Appointment of Committee of Unsecured Creditors (May 26, 2009) [Docket No. 1238].

4. On January 16, 2009, the Committee filed the Application of the Official Committee of Unsecured Creditors of Tribune Company, *et al.* for an Order Authorizing the Employment and Retention of Chadbourne & Parke LLP as Co-Counsel [Docket No. 243] (as

further supplemented from time-to-time, the "Chadbourne Retention Application") seeking this Court's approval to retain and employ Chadbourne & Parke LLP ("Chadbourne") as co-counsel to the Committee. By order dated February 20, 2009 [Docket No. 429], the Court approved the Chadbourne Retention Application.

5. On January 16, 2009, the Committee filed the Application to Employ and Retain Landis Rath & Cobb LLP as Co-Counsel to the Official Committee of Unsecured Creditors [Docket No. 242] (as further supplemented from time-to-time, the "LRC Retention Application") seeking this Court's approval to retain and employ Landis Rath & Cobb LLP ("LRC") as co-counsel to the Committee. By order dated February 20, 2009 [Docket No. 428], the Court approved the LRC Retention Application.

6. On August 13, 2009, the Committee filed the Application of the Official Committee of Unsecured Creditors of Tribune Company, et al., Pursuant to 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014, for an Order Authorizing the Employment and Retention of Zuckerman Spaeder LLP As Special Counsel *Nunc Pro Tunc* to August 6, 2009 [Docket No. 1953] (as further supplemented from time-to-time, the "Zuckerman Retention Application") seeking this Court's approval to retain and employ Zuckerman Spaeder LLP ("Zuckerman") as special counsel to the Committee. By order dated September 3, 2009 [Docket No. 2088], the Court approved the Zuckerman Retention Application.

7. From the inception of these cases, it has been apparent to all parties that a major issue in connection with the Debtors' reorganization and exit from bankruptcy is the investigation and resolution of certain potential claims and causes of action arising from the series of transactions during calendar year 2007 pursuant to which the Debtors became privately held (the "LBO-Related Transactions").

8. By motion dated February 1, 2010, as supplemented by motion dated September 14, 2010 (Docket Nos. 3281 and 5668, together, the "First Standing Motion"), the Committee requested that this Court authorize it to commence, prosecute and settle on behalf of the Debtors' estates claims and counterclaims against, among others, various lenders arising out of or in connection with the LBO-Related Transactions (the "LBO-Related Claims"). By separate motion dated September 13, 2010 (Docket No. 5698, the "Second Standing Motion" and together with the First Standing Motion as, the "LBO Standing Motions"), the Committee requested that this Court authorize it to commence, prosecute and settle certain additional LBO-Related Claims on behalf of the Debtors' estates.

9. On October 27, 2010, this Court granted the LBO Standing Motions [Docket No. 6150] (the "Standing Order"). The Standing Order provides that, pending the occurrence of a "Termination Event" as defined in the Standing Order, any litigation commenced by the Committee pursuant to the authority granted in the Standing Order (a) may not be settled absent the agreement of the Debtors and the Committee and (b) broadly shall be stayed until the occurrence of such a "Termination Event."[2]

10. Since the entry of the Standing Order, the Committee has filed certain complaints and/or negotiated tolling agreements with respect to applicable statutes of limitations, all as contemplated by and consistent with the terms of the Standing Order. None of the litigation that the Committee has commenced pursuant to the authority it was granted in the Standing Order has settled or been further prosecuted. And, critically, consistent with the

---

[2] One such "Termination Event" includes the occurrence of the date of April 1, 2011 (the "April 1 Termination Event"). The Committee has filed a motion seeking to extend the April 1, 2011 Termination Event through June 15, 2011 to permit the parties to continue to enjoy the benefits of the Standing Order while the Competing Plans (as defined herein) are litigated, a ruling is made or a settlement achieved [Docket No. 8469] (the "Motion to Extend"). The Motion to Extend currently is scheduled to be heard on April 25, 2011 and, by operation of rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the April 1 Termination Event is extended until that time.

Standing Order, the litigation the Committee has commenced is stayed, pending the occurrence of a Termination Event.

11. Among the various actions commenced pursuant to the Standing Order was the complaint filed by Zuckerman on behalf of the Committee against each of the banks and other lenders (the "LBO Lenders") who participated in the LBO-Related Transactions (as subsequently amended, the "LBO Lender Complaint"). Filed to preserve potentially valuable estate causes of action, the LBO Lender Complaint seeks, *inter alia*, to avoid, subordinate and/or disallow the obligations arising from the loans made and arranged by the defendants (the "LBO Lender Defendants") as part of the LBO-Related Transactions. Specifically, the LBO Lender Complaint asserts the following causes of action against some or all of the LBO Lender Defendants as identified therein with regard to various steps of the LBO-Related Transactions: (i) constructive fraud, (ii) actual fraud, (iii) estoppel, (iv) unjust enrichment, (v) avoidable preferences, (vi) equitable subordination, (vii) claim disallowance, (viii) aiding and abetting breaches of fiduciary duties, and (ix) professional malpractice (collectively, the "LBO Lender Actions").

12. After the filing of the LBO Lender Complaint, and during the stay of all activity therein, the Court and the parties in interest completed the initial phase of trial, including ten days of evidentiary hearings, in connection with two competing plans of reorganization proposed by the Debtors, the Committee and certain senior lenders (the "DCL Plan") and by certain noteholders (the "Noteholder Plan" and, together with the DCL Plan, the "Competing Plans"). The confirmation hearing with respect to the Competing Plans concluded on April 14, 2011. Post-trial briefing of Competing Plan issues is not expected to be completed before the end of May 2011 at the earliest.

13. Notably, both of the Competing Plans contain mechanisms for the resolution of the LBO-Related Claims through the creation of litigation trusts. Should either Competing Plan be confirmed, the LBO-Related Claims (including the LBO Lender Complaint) will be transferred to and pursued by a litigation trust. Until that time however, and consistent with the Standing Order, the LBO Lender Complaint remains stayed and the Committee is not prosecuting the LBO Lender Complaint at this time.

14. The LBO Lender Complaint named as defendants, among numerous others, certain affiliates of Goldman Sachs & Co. (the "Goldman Affiliates").[3] Prior to its retention as special counsel, Zuckerman disclosed to the Court and the Committee that it represented Goldman Sachs & Co. ("Goldman"), an entity that is not an LBO Lender Defendant, in certain matters unrelated to the Debtors' cases. At no time has Zuckerman represented any of the Goldman Affiliates in any capacity.

15. At the time of its retention, Zuckerman and the Committee did not believe Zuckerman's representation of Goldman in unrelated matters would limit its ability to represent the Committee in pursuing claims against the LBO Lenders. The Committee, after consultation with its counsel, nonetheless has determined that it would be best served by the retention of special conflicts counsel for the limited purpose of appearing on behalf of the Committee in the presently-stayed LBO Lender Complaint, solely with respect to claims against the Goldman Affiliates and, to the extent the Committee determines it to be appropriate, other parties, if any.

16. On April 21, 2011, the Committee selected SVG to serve as special conflicts counsel to the Committee.

---

[3] The Goldman Affiliates that are LBO Lender Defendants are: Goldman Sachs Asset Management CLO PLC (c/o Deutsche International Finance), Goldman Sachs CR Parts LP, Goldman Sachs Group Inc. (Special Situations Investing Group Inc.), Goldman Sachs Int'l – P&S Capital Partners LLC (GPC 83 LLC), Goldman Sachs Int'l – P&S Credit Management LP (Gracie Credit Opportunities Master Fund LP), Goldman Sachs Lending Partners LLC, GPC 69 LLC, and Goldman Sachs-ABS Loans 2007 Ltd.

**RELIEF REQUESTED**

17. By this Application, the Committee seeks to employ and retain SVG as its special conflicts counsel, pursuant to Bankruptcy Code sections 328(a) and 1103, effective as of April 21, 2011.

**BASIS FOR RELIEF**

18. The Committee respectfully submits that it is necessary and appropriate for it to employ and retain SVG to provide to the Committee services in connection with the LBO Lender Complaint, solely with respect to matters involving the Goldman Affiliates and, to the extent the Committee determines it to be appropriate, other parties, if any. Because the LBO Lender Complaint is stayed and the Committee anticipates that it will remain stayed pending the transfer of the LBO Lender Actions to a litigation trust established pursuant to either of the Competing Plans, the Committee does not believe that the retention of SVG will require extensive involvement, effort or expense.

19. The Committee believes that SVG possesses extensive knowledge and expertise in the areas of law relevant to these chapter 11 cases, and that SVG is well qualified to represent the Committee as special conflicts counsel in these chapter 11 cases. In selecting special conflicts counsel, the Committee sought attorneys with considerable experience representing plaintiffs in complex commercial litigation. SVG has such experience. For instance, SVG has represented plaintiffs, including trusts and trustees in a wide range of complex commercial litigation in state and federal courts, including the United States Bankruptcy Court for the District of Delaware.

20. Pursuant to 11 U.S.C. § 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an

adverse interest in connection with this case. To the best of the Committee's knowledge, the partners, counsel and associates of SVG do not hold or represent any interest adverse to the estates, as set forth in the Declaration of James S. Green, Sr. (the "Green Declaration"), attached hereto as Exhibit A.

21. As set forth in the Green Declaration, SVG has conducted an extensive search of its conflict database and has made other extensive internal inquiries with respect to the Debtors and a voluminous list of parties in interest and potential parties in interest in these chapter 11 cases. The scope of that search and of those inquiries is set out on Exhibit 1 to the Green Declaration, while the results are set forth on Exhibit 2 to the Green Declaration. Based on the Green Declaration, SVG does not represent or hold any interest adverse to the Debtors, their estates, creditors, or equity security holders in the matters on which SVG is to be engaged.

22. The Committee believes that the employment and retention of SVG as special conflicts counsel is necessary for the Committee to fulfill its obligations to the Debtors' unsecured creditor constituency and in the best interests of the Debtors' estates and their creditors. Chadbourne, Zuckerman, LRC and SVG have discussed each firm's respective roles and are committed to making every effort to minimize the incurrence of duplicative fees and expenses.[4] The Committee believes that the retention of SVG will not involve any material or substantial expense since the LBO Lender Complaint is stayed and the Committee expects it to remain so through the plan confirmation process. Once the confirmation process is completed and the claims are transferred to a litigation trust, that trust will make its own decision regarding which counsel should represent the trust with respect to the LBO Lender Complaint.

---

[4] For the same reasons that neither Chadbourne nor LRC appeared as counsel of record in the LBO Lender Complaint (i.e., as previously disclosed to the Committee and to the Court, Chadbourne and LRC each represent certain parties or their affiliates in matters unrelated to the Debtors' cases), they cannot serve as conflicts counsel to prosecute the LBO Lender Complaint.

{698.001-W0014261}  8

23.  The Committee requests that all fees and related costs and expenses incurred by the Committee on account of services rendered by SVG be paid as administrative expenses pursuant to Bankruptcy Code sections 330(a), 331 and 503(b). Subject to the Court's approval, and subject to any such further orders as the Court may enter relating to SVG's fee structure (e.g., a possible contingent or other alternative fee arrangement in the event that litigation is initiated), SVG will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered, subject to Bankruptcy Code section 330. The current hourly rates charged by SVG for professionals and paraprofessionals employed in its offices are:

| Billing Category | Range |
| --- | --- |
| Partners and Counsel | $300 - $490 |
| Associates | $200 - $250 |
| Paraprofessionals | $100 - $125 |

24.  The hourly rates set forth above are subject to periodic adjustments, subject to approval of the client, typically in January of each year, to reflect economic and other conditions. SVG will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services provided to the Committee.

25.  In addition to the hourly rates set forth above, SVG customarily charges its clients for all costs and expenses incurred in connection with a client's case. These charges include, among other things, long-distance telephone and telecopier charges, mail and express mail charges, special or hand delivery charges, filing fees, photocopying charges, travel expenses, expenses for "working meals," computerized research, and transcription costs, as well as non-ordinary overhead expenses such as secretarial overtime. SVG will seek reimbursement

for such expenses pursuant to, among other things, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, any applicable guidelines established by the Court or the UST, and any orders of the Court.

26. SVG has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Green Declaration. Further, SVG has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

**WHEREFORE**, the Committee respectfully requests that the Court (i) enter an order, substantially in the form annexed hereto as Exhibit "B", authorizing the Committee to employ and retain SVG as its special conflicts counsel, *nunc pro tunc* to April 21, 2011, in these chapter 11 cases on the terms and conditions set forth herein, and (ii) grant such other and further relief as may be just and proper. Dated: April 21, 2011

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL.**

Warner Bros., solely in its capacity as Co-Chair of the Committee and not in its individual capacity.

By: _____
Wayne M. Smith Vice President, Senior Litigation & Chief Patent Counsel