# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: May 17, 2011 at 10:00 a.m. ET**<br>**Objection Deadline: May 10, 2011 at 4:00 p.m. ET** |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER APPROVING (I) FORM, SCOPE AND PROCEDURES TO (A) PROVIDE HOLDERS OF SENIOR LOAN CLAIMS AND SENIOR GUARANTY CLAIMS WITH OPPORTUNITY TO CHANGE VOTES ON DEBTOR/COMMITTEE/ LENDER PLAN; (B) ALLOW HOLDERS OF SENIOR NOTEHOLDER CLAIMS AND OTHER PARENT CLAIMS TO MAKE NEW TREATMENT ELECTIONS; (C) ALLOW HOLDERS OF CLAIMS THAT PREVIOUSLY GRANTED CERTAIN RELEASES TO MAKE ELECTIONS CONCERNING SUCH RELEASES AS MODIFIED; AND (D) ALLOW HOLDERS OF CLAIMS AGAINST TRIBUNE COMPANY TO OPT OUT OF TRANSFER OF DISCLAIMED STATE LAW AVOIDANCE CLAIMS TO CREDITORS' TRUST UNDER DEBTOR/COMMITTEE/LENDER PLAN; AND (II) SUPPLEMENT TO

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## DISCLOSURE STATEMENT AND EXPLANATORY STATEMENT
## AND DISTRIBUTION OF SAME

The debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"),[2] by and through their undersigned counsel, hereby move this Court

for entry of an order pursuant to sections 105(a), 1125, 1126 and 1127 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002, 3018 and 3019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") approving (i) the form, scope and procedures

for (a) providing Holders of Senior Loan Claims and Senior Guaranty Claims with the

opportunity to change their votes to accept or reject the Second Amended Joint Plan of

Reorganization for the Debtors proposed by the Debtors, the Official Committee of Unsecured

Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan

Chase Bank, N.A. (as modified), which was filed with the Bankruptcy Court on April 5, 2011

[Docket No. 8580] (the "Debtor/Committee/Lender Plan");[3] (b) allowing the Holders of Senior

Noteholder Claims and Other Parent Claims to make elections to receive new treatment for such

Claims under the Debtor/Committee/Lender Plan that are in addition to the treatment options

already provided for those claims under that plan; (c) allowing the Holders of Claims that

already elected to grant certain releases provided for in the Debtor/Committee/Lender Plan to

make additional elections concerning the scope of those releases that result from post-solicitation

modifications made to the Debtor/Committee/Lender Plan; and (d) allowing Holders of Claims

against Tribune Company to reconsider and, if they wish, opt out of the deemed transfer of

---

[2] Capitalized terms not defined in this Motion shall have the meanings ascribed to them in the Debtor/Committee/ Lender Plan.

[3] Certain of the modifications to the Debtor/Committee/Lender Plan that are described in summary herein are described in more detail in the Notice of Filing of Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (As Modified), which was filed together with the Debtor/Committee/Lender Plan. [Docket No. 8520].

Disclaimed State Law Avoidance Claims to the Creditors' Trust under the Debtor/Committee/

Lender Plan; and (ii) a supplement to the previously-approved Disclosure Statement respecting

the Debtor/Committee/Lender Plan, an explanatory statement respecting treatment, release and

Creditors' Trust opt out elections under the Debtor/Committee/Lender Plan as modified, and the

distribution of such materials to certain Holders of claims against the Debtors.  In support of this

Motion, the Debtors respectfully state as follows:

## INTRODUCTION

1.    This Motion is filed because of modifications that have been made to the

Debtor/Committee/Lender Plan since votes were originally solicited to accept or reject that Plan,

which occurred in December 2010 and January 2011.  See Solicitation Order [Docket No. 7126];

see also Affidavit of Solicitation Mailing by Stephenie Kjontvedt [Docket No. 7813].  The

version of the Debtor/Committee/Lender Plan on which votes were solicited (the "December

2010 DCL Plan")[4] was accepted by a strong majority of creditor classes, reflecting the broad-

based support for that plan.  See Declaration of Stephenie Kjontvedt on Behalf of Epiq

Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and

Rejecting the Joint Plans of Reorganization Proposed for Tribune Company and Its Subsidiaries

[Docket No. 7918, amended at Docket No. 8114] (as amended, the "Voting Report").

Notwithstanding that result, the Debtors and the co-proponents of the Debtor/Committee/Lender

Plan (collectively, the "DCL Plan Proponents") have engaged those objecting parties that are

amenable to a consensual resolution of their objections, as well as certain constituencies that

---

[4] The Debtors use the terms "December 2010 DCL Plan" herein to refer to the Debtor/Committee/Lender Plan as it was voted on December 2010 and January 2011.  As a matter of law, the December 2010 DCL Plan and the Debtor/ Committee/Lender Plan are one and the same, with the only difference being the modifications contained in the Debtor/Committee/Lender Plan as it has now been filed with the Bankruptcy Court.  See 11 U.S.C. § 1127(a) ("[a]fter the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.").  References herein to the December 2010 DCL Plan thus do not suggest that that plan is anything other than a prior version of the Debtor/Committee/Lender Plan.

voted to reject the Debtor/Committee/Lender Plan, to reach terms that are acceptable to an even broader base of creditors than those that voted to accept the December 2010 DCL Plan. The DCL Plan Proponents have also evaluated means by which to address various objections raised by the proponents of the competing plan of reorganization that has been proposed by Aurelius Capital Management, LP, and various co-proponents (the "Noteholder Plan").

2.        Those efforts have been fruitful. The DCL Plan Proponents have modified the Debtor/Committee/Lender Plan to address and resolve a wide range of objections that were filed respecting the Debtor/Committee/Lender Plan and to implement settlements reached with various constituencies, both through the initiative of the DCL Plan Proponents and – in the case of the previously-announced settlement with the Bridge Lenders – with the assistance of the Court-appointed mediator.[5] The modifications to the Debtor/Committee/Lender Plan also reflect new treatment options for Senior Noteholder Claims and Other Parent Claims that provide the Holders of those Claims with the option to receive their distributions in the form of a "strip" of common stock in Reorganized Tribune, new debt issued by Reorganized Tribune, and cash instead of the all-cash (plus applicable trust interests) distribution provided by the December 2010 DCL Plan. The scope of the consensual releases provided in the Debtor/Committee/Lender Plan has also been revised.

3.        The details of the relief sought by this Motion and the modifications to the Debtor/Committee/Lender Plan giving rise to this Motion are discussed in more detail below (at ¶¶ 9-23). In summary, however, the DCL Plan Proponents seek to effect a limited change of

---

[5] In addition to the resolution of objections to confirmation, the Debtors recently filed a motion seeking to change the votes of several Holders of General Unsecured Claims at the Filed Subsidiary Debtors [Docket No. 8602]. The Bankruptcy Court granted this motion on April 21, 2011 [Docket. No. 8724], resulting in 20 Classes of General Unsecured Claims against the Filed Subsidiary Debtors that previously voted to reject the Debtor/Committee/Lender Plan accepting the Debtor/Committee/Lender Plan.

votes on the Debtor/Committee/Lender Plan and to provide an opportunity for some creditors to change certain elections thereunder as follows:

- Holders of Senior Loan Claims and Senior Guaranty Claims will be provided the opportunity to change their vote to accept or reject the Debtor/Committee/Lender Plan as a result of the potential change in the composition of consideration to be provided to the Holders of Senior Loan Claims and Senior Guaranty Claims in the event that Holders of Senior Noteholder Claims and Other Parent Claims elect to receive their distributions in the form of a "strip" of New Senior Secured Term Loan, New Common Stock, and Cash (which would result in Holders of Senior Loan Claims and Senior Guaranty Claims receiving more Cash and less of the New Senior Secured Term Loan and New Common Stock), as described above;

- Holders of Senior Noteholder Claims and Other Parent Claims will be provided the opportunity to make new treatment elections, or change existing treatment elections, respecting their Claims as a result of the addition of new treatment options for those Classes of Claims under the Debtor/Committee/Lender Plan that permit those Holders to receive their distributions in the form of a "strip," as described above;

- all Holders of Claims that previously elected to grant the releases provided for in Section 11.2.2 of the Debtor/Committee/Lender Plan will have the opportunity to (i) decline to include the Bridge Loan Agent and the Bridge Lenders in such releases, as provided for in the Bridge Loan Settlement (as defined below) and (ii) decline to release claims that would otherwise constitute Disclaimed State Law Avoidance Claims against Released Stockholder Parties; and

- Holders of Claims against Tribune Company, who were afforded the opportunity on their ballots for voting to accept or reject the Debtor/Committee/Lender Plan to opt out of the deemed transfer of Disclaimed State Law Avoidance Claims to the Creditors' Trust under Section 14.3.1 thereof, but did not previously do so, will have an additional opportunity to opt out of that deemed transfer based on revisions to the definition of Disclaimed State Law Avoidance Claims.

The Debtors also seek approval of (i) a brief supplement to the previously-approved Specific Disclosure Statement for the Debtor/Committee/Lender Plan, a copy of which is attached hereto as Exhibit B (the "Supplemental Disclosure Statement"), to be provided to the Holders of Senior Loan Claims and Senior Guaranty Claims in connection with the reconsideration of their votes to accept or reject the Debtor/Committee/Lender Plan and (ii) a brief explanatory statement, a copy of which is attached hereto as Exhibit H (the "Explanatory Statement"), to be provided to

5

Holders of Claims entitled to make the treatment, release and/or Creditors' Trust opt out elections discussed herein. None of the relief sought in this Motion has any effect on the Noteholder Plan.

## STATUS OF THE CASE AND JURISDICTION

4.      On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

5.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333.]

6.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases.

8.      The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 1125, 1126 and 1127 of the Bankruptcy Code and Rules 2002, 3018 and 3019 of the Bankruptcy Rules.

46429/0001-7559765v1

## MODIFICATIONS TO THE DEBTOR/COMMITTEE/LENDER PLAN

9.       The Debtor/Committee/Lender Plan, as noted above, has been modified to effect consensual resolutions of numerous objections to confirmation and otherwise narrow the scope of confirmation-related issues to be addressed by the Bankruptcy Court.  The relief sought by this Motion is sought as the result of three (3) particular modifications to the Debtor/Committee/ Lender Plan: (i) the inclusion of new treatment options under the Debtor/Committee/Lender Plan that allow the Holders of Senior Noteholder Claims and Other Parent Claims to receive a "strip" of new debt, equity, and cash as their distributions under the Debtor/Committee/Lender Plan, which are entirely elective treatment options that are in addition to those provided under the December 2010 DCL Plan, (ii) revisions to the releases contained in Section 11.2.2 of the Debtor/Committee/Lender Plan that, in summary and of relevance here, (a) implement a settlement with the Bridge Loan Agent and the Bridge Lenders in relevant part by including the Bridge Loan Agent and the Bridge Lenders as Released Parties, and (b) clarify the scope of the claims released under Section 11.2.2 of the Debtor/Committee/Lender Plan respecting the Disclaimed State Law Avoidance Claims, and (iii) revisions to the definition of Disclaimed State Law Avoidance Claims in the Debtor/Committee/Lender Plan.  Each of these modifications is discussed in detail below.

### I.       New Treatment Options for Holders of Senior Noteholder Claims and Other Parent Claims under Debtor/Committee/Lender Plan

10.       The December 2010 DCL Plan, at § 3.2.5, provided for a fixed cash distribution of approximately $420 million to the Holders of Senior Noteholder Claims, plus applicable Litigation Trust Interests and Creditors' Trust Interests.[6]  A similar percentage recovery in cash, plus applicable Litigation Trust Interests and Creditors' Trust Interests, was also provided for

---

[6] The December 2010 DCL Plan contemplated a fixed cash distribution of $420 million plus a share of the Remaining Bridge Loan Reserve, which was estimated at approximately $11 million.

7

Holders of Allowed Other Parent Claims thereunder, with the Holders of such Claims being able to elect an exactly equivalent cash recovery with Litigation Trust Interests and Creditors' Trust Interests (if applicable) or a higher cash recovery without Litigation Trust Interests or Creditors' Trust Interests. See December 2010 DCL Plan § 3.2.6. The proponents of the Noteholder Plan (the "Noteholder Plan Proponents") have objected to the treatment provided to the Holders of Senior Noteholder Claims under the Debtor/Committee/Lender Plan, asserting that the aggregate distributable enterprise value ("DEV") of the Debtors is as much as $8.291 billion[7] rather than the $6.75 billion proposed by the DCL Plan Proponents,[8] and that as a result the cash recoveries to be provided to holders of Senior Noteholder Claims and Other Parent Claims prejudice those holders by denying them the potential upside from receiving all or part of their recoveries in allegedly-undervalued equity. See Noteholder Plan Proponents' Objection to the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Noteholder Objection") [Docket No. 8013] at ¶¶ 378-379.

11.    The DCL Plan Proponents reject the Noteholder Plan Proponents' valuation. The DCL Plan Proponents have, however, modified the Debtor/Committee/Lender Plan to address the Noteholder Plan Proponents' objection that the Holders of Senior Noteholder Claims should be able to benefit from an increased valuation. Under the modified Debtor/Committee/Lender Plan, Holders of Senior Noteholder Claims will have the option to elect to receive their

---

[7] The Noteholder Plan Proponents' valuation expert initially asserted a DEV of $8.331 billion, which was subsequently amended to $8.291 billion. In their recently filed notice of plan amendments [Docket No. 8509], the Noteholder Plan Proponents use a further reduced illustrative DEV of $8.0 billion.

[8] The Debtor/Committee/Lender Plan also includes $120 million in Step Two/Disgorgement Proceeds in its calculation of DEV, so the DEV used respecting the Debtor/Committee/Lender Plan as modified is actually $6.87 billion.

8

distributions either in cash or, in the alternative, in a "strip" of consideration, consisting of Pro Rata portions of 6.27425% of the Distributable Cash, 6.27425% of the New Senior Secured Term Loan and 6.27425% of the New Common Stock in Reorganized Tribune.[9] See Debtor/Committee/Lender Plan § 3.2.5(c)(i).

12.    The proposed "strip" distributions under the Debtor/Committee/Lender Plan as modified are equal in value to the cash distributions that were provided for under the December 2010 DCL Plan and that are still available under the Debtor/Committee/Lender Plan as modified, using the assumed DEV of $6.75 billion and after taking into account the $120 million in additional value from the Step Two/Disgorgement Settlement.  In short, the "strip" option allows any Holder of Senior Noteholder Claims that believes that the DEV of the Debtors is higher than $6.75 billion to follow that belief by electing to receive the "strip" distribution, while Holders of Senior Noteholder Claims that do not share that belief can continue to receive the same treatment they were afforded in the December 2010 DCL Plan – a distribution comprised of cash and applicable trust interests.

13.    The Debtor/Committee/Lender Plan has also been modified to allow Holders of Other Parent Claims, which are principally General Unsecured Claims against Tribune Company, to receive at their election a similar "strip" of cash, new debt, and new equity.  See Debtor/Committee/Lender Plan §§ 3.2.6(c)(ii), 3.2.6(c)(iii).[10]  This would accordingly permit Holders of Other Parent Claims that perceive a higher value in receiving distributions that are

---

[9] In each case, the distributions to Holders of Senior Noteholder Claims would also include, as applicable, a Pro Rata share of relevant Litigation Trust Interests and Creditors' Trust Interests, which entitle such Holders, together with other non-LBO creditors, to the first $90 million in recoveries from the trusts as well as a 65% share of any residual distributions, as was the case under the December 2010 DCL Plan.

[10] Holders of Other Parent Claims were provided with the ability to elect under the December 2010 DCL Plan between a 32.73% cash recovery that provided them with a Pro Rata share of Class 1F Creditors' Trust Interests and Class 1F Litigation Trust Interests, or a 35.18% cash recovery that did not include such trust interests.  The default treatment under the December 2010 DCL Plan was a 32.73% cash recovery that included the Pro Rata share of Class 1F Creditors' Trust Interests and Class 1F Litigation Trust Interests, and that treatment continues as the default treatment for Other Parent Claims under the Debtor/Committee/Lender Plan as modified.

9

partially in equity to choose to do so.  Holders of Other Parent Claims will also retain the option

to continue to receive their distributions in cash in either of the two forms that were provided for

in the December 2010 DCL Plan.  See Debtor/Committee/Lender Plan §§ 3.2.6(c)(i),

3.2.6(c)(iv).  The modifications to the Debtor/Committee/Lender Plan thus add new, entirely

elective, treatment options for Holders of Other Parent Claims while retaining the pre-existing

treatment options specified in the December 2010 DCL Plan.

      14.     In the case of both Senior Noteholder Claims and Other Parent Claims, the default

treatment remains as it was under the December 2010 DCL Plan.  Holders of Senior Noteholder

Claims will continue to receive a distribution of Cash, enhanced by the Bridge Settlement

Proceeds, plus applicable Litigation Trust Interests and Creditors' Trust Interests, absent their

affirmative election to receive the "strip" consideration.  See Debtor/Committee/Lender Plan §

3.2.5(c).  Holders of Other Parent Claims will continue to receive, as a default, a distribution

comprised of 32.73% of the Allowed amount of their Claim in Cash, plus applicable Litigation

Trust Interests and Creditors' Trust Interests, enhanced by the Bridge Settlement Proceeds.  See

Debtor/Committee/Lender Plan § 3.2.6(c).  Alternatively, Holders of Other Parent Claims may

elect to receive a higher cash distribution (35.18% of the allowed amount of their claim) plus

applicable Bridge Settlement Proceeds only, as they were permitted to do under the December

2010 DCL Plan,[11] or they may elect the "strip" consideration described above, paired with either

the 35.18% cash distribution without trust interests or the 32.73% cash distribution with trust

interests.  See id. The Debtor/Committee/Lender Plan further provides that elections by Holders

of Senior Noteholder Claims or Other Parent Claims of these alternative treatments are to be

---

[11] Under both the December 2010 DCL Plan and Debtor/Committee/Lender Plan, if a Holder of an Other Parent Claim elects to receive the higher cash distribution, such Holder cannot elect not to transfer its Disclaimed State Law Avoidance Claims to the Creditors' Trust as provided in Section 14.3.1.

accomplished by the procedures that are the subject of this Motion. See Debtor/Committee/ Lender Plan §§ 3.2.5(c), 3.2.6(c).

15.     The December 2010 DCL Plan provided that the New Senior Secured Term Loan and the New Common Stock of Reorganized Tribune were to be distributed in their entirety to the Holders of Senior Loan Claims and Senior Guaranty Claims. See, e.g., December 2010 DCL Plan §§ 1.1.219 (definition of "Senior Loan Claims Distribution"), 3.2.3(c) (treatment of Senior Loan Claims, and 3.3.3(c) (treatment of Senior Guaranty Claims). The Debtor/Committee/ Lender Plan as modified, in order to effect the enhanced treatment elections for Senior Noteholder Claims and Other Parent Claims described above, provides that the percentage of the New Senior Secured Term Loan and the New Common Stock to be distributed to the Holders of Senior Loan Claims and Senior Guaranty Claims will be reduced by the amounts of New Senior Secured Term Loan and New Common Stock to be distributed to Holders of Senior Noteholder Claims and Other Parent Claims. See Debtor/Committee/Lender Plan §§ 1.1.201 (definition of "Remaining New Common Stock") and 1.1.202 (definition of "Remaining New Senior Secured Term Loan"). Cash to be distributed under the Debtor/Committee/Lender Plan will, however, be allocated to the Holders of Senior Loan Claims and Senior Guaranty Claims in an amount equal to the value (using an assumed DEV of $6.75 billion) of the New Senior Secured Term Loan and New Common Stock to be distributed under the Debtor/Committee/Lender Plan to Holders of Senior Noteholder Claims and Other Parent Claims.

II.     **Modifications to Releases in Section 11.2.2 of the Debtor/Committee/Lender Plan**

16.     The second major group of modifications to the Debtor/Committee/Lender Plan that gives rise to this Motion is a set of modifications to the releases contained in the Debtor/ Committee/Lender Plan. Those releases have been modified in a number of ways to limit their

11

scope, including the removal of releases of claims against Step One Selling Stockholders (as defined in the December 2010 DCL Plan) for disgorgement of amounts received in connection with the 2007 leveraged buyout of Tribune Company, except to the extent that such parties fall within the exceptions contained in the definition of Released Stockholder Parties in the Debtor/Committee/Lender Plan, as modified. See Debtor/Committee/Lender Plan § 1.1.198 (definition of "Released Parties"). Two modifications that do not expressly involve limitations to the release provisions, however, are respectively the result of (i) the Bridge Loan Settlement (as defined below) and (ii) the recent clarification by this Court that neither the automatic stay nor this Court's mediation order prevent individual creditors from asserting whatever Disclaimed State Law Avoidance Claims they may otherwise be able to assert. Each of these is discussed in turn below.

**A.      The Bridge Loan Settlement**

17.      Since the filing of and solicitation of votes to accept or reject the December 2010 DCL Plan, the DCL Plan Proponents have reached a settlement with the Bridge Loan Agent and the Bridge Lenders under the mediation conducted by Judge Gross. Specifically, on January 28, 2011, the Bridge Loan Agent and the Bridge Lenders agreed to withdraw their proposed alternative plan for the Debtors and to support the Debtor/Committee/Lender Plan, subject to its modification to incorporate, among other things, a settlement of claims by and against the Bridge Loan Agent and Bridge Lenders (the "Bridge Loan Settlement"). The changes to the Debtor/Committee/Lender Plan necessary to implement the Bridge Loan Settlement were thereafter embodied in pre-confirmation hearing modifications to the Debtor/Committee/Lender Plan that were filed with the Bankruptcy Court on February 4, 2011. See Docket No. 7801.

12

18.    Pursuant to the Bridge Loan Settlement, the Holders of Bridge Loan Claims and Bridge Loan Guaranty Claims will receive, among other things, their pro rata share of $64.5 million in cash. See Mediator's Third Report, Ex. A [Docket No. 7656]; Debtor/Committee/ Lender Plan § 3.2.4(c). The remaining $13.319 million balance of the Bridge Loan Reserve established under the December 2010 DCL Plan will be distributed ratably to Holders of Senior Noteholder Claims and Other Parent Claims. See Mediator's Third Report, Ex. A [Docket No. 7656]. By virtue of the allowance of their Claims, the Bridge Lenders will also receive a pro rata share of Litigation Trust Interests and Creditors' Trust Interests, which will entitle them to a pro rata share of certain trust proceeds to be shared with the Holders of Senior Loan Claims and Senior Guaranty Claims, rather than having such Litigation Trust Interests and Creditors' Trust Interests reserved pending allowance of the Bridge Loan Claims. See Mediator's Third Report, Ex. A [Docket No. 7656]; Debtor/Committee/Lender Plan §§ 1.1.36 (definition of "Class 1D Creditors' Trust Interests"), 1.1.37 (definition of "Class 1D Litigation Trust Interests").

19.    The Bridge Loan Settlement also provides that the Bridge Loan Agent and Bridge Lenders will also be included in the Debtor/Committee/Lender Plan's definition of Released Parties and will have the ability to obtain voluntary and consensual releases from Holders of Claims who elect to grant such releases. Accordingly, the Debtor/Committee/Lender Plan as modified provides that the Bridge Loan Agent and Bridge Lenders are Released Parties that receive the benefit of the consensual releases in Section 11.2.2 (see Debtor/Committee/Lender Plan § 1.1.198), but only to the extent that parties who granted the Section 11.2.2 releases have the opportunity to elect not to include the Bridge Loan Agent and the Bridge Lenders within the scope of those releases. See Debtor/Committee/Lender Plan § 11.2.2.

B.     **Clarification Respecting Release of Disclaimed State Law Avoidance Claims**

20.     The December 2010 DCL Plan contemplated that the Debtors would release,

among others, the Step One Selling Stockholders and the Released Step Two Stockholder Parties

from, among other claims, the Disclaimed State Law Avoidance Claims, which are in summary

certain state law fraudulent conveyance causes of action relating to the 2007 leveraged buyout of

Tribune Company.[12]  At the time the December 2010 DCL Plan was initially filed, the Debtors

and their Estates had the exclusive right to assert, prosecute, settle, or take other actions with

respect to certain Disclaimed State Law Avoidance Claims, including releasing such actions.

21.     However, in recent months, the two-year statute of limitations in section

546(a)(1)(A) of the Bankruptcy Code has run, as December 8, 2010 was the second anniversary

of the chapter 11 filing for most of the Debtors.  Neither the Debtors nor any other representative

of the Debtors' estates commenced any actions or otherwise pursued the Disclaimed State Law

Avoidance Claims prior to the expiration of that statute of limitations.  As a result, whatever

ability to pursue the Disclaimed State Law Avoidance Claims exists may now reside with

individual creditors, except to the extent, if any, that the Debtors' Estates have retained the right

to pursue such claims.  The Bankruptcy Court, in response to a motion filed by the Noteholder

Plan Proponents, has entered an order clarifying that the neither the automatic stay nor this

Court's mediation order[13] prevent individual creditors from asserting whatever Disclaimed State

Law Avoidance Claims they may otherwise be able to assert.[14]

---

[12] Separate from the changes described in this Motion, the definition of Released Parties has also now been modified generally to exclude the Step One Selling Stockholders.

[13] See Order Appointing Mediator [Docket No. 5591].

[14] See Order Granting (I) Relief from the Automatic Stay to the Extent the Automatic Stay Bars Commencement by Creditors of State Law Constructive Fraudulent Conveyance Claims to Recover Stock Redemption Payments Made to Step One Shareholders and Step Two Shareholders and (II) Leave from the Mediation Order to Permit Commencement of Litigation on Account of Such Claims [Docket No. 8740].

14

22.     In light of this clarification, the DCL Plan Proponents have amended Section 11.2.2 of the Debtor/Committee/Lender Plan to clarify that Holders of Claims may elect to release their Disclaimed State Law Avoidance Claims against Released Stockholder Parties. Specifically, Section 11.2.2 provides that any party that elected to grant the releases in that section will be provided the opportunity to reconsider its release of claims that would otherwise constitute Disclaimed State Law Avoidance Claims against Released Stockholder Parties.[15]

### III.    Modifications to Definition of Disclaimed State Law Avoidance Claims

23.     The definition of Disclaimed State Law Avoidance Claims has also been revised in the Debtor/Committee/Lender Plan as modified.  Previously, Disclaimed State Law Avoidance Claims were LBO-Related Causes of Action that could have been asserted by the Debtors or the Debtors' Estates pursuant to section 544(b) of the Bankruptcy Code against Step Two Selling Stockholders with respect to funds received by the Step Two Selling Stockholders in their capacities as such.  See December 2010 DCL Plan § 1.1.80.  As modified, the definition of Disclaimed State Law Avoidance Claims includes any and all LBO-Related Causes of Action arising under state constructive fraudulent conveyance law that existed in favor of any Holder of a Claim (not just the Debtors or the Debtors' Estates) prior to the Petition Date against Selling Stockholders, solely in the Selling Stockholders' capacities as such and solely with respect to funds received in their capacities as such.  See Debtor/Committee/Lender Plan § 14.3.1.

---

[15] Holders of Claims and Interests elected to grant the releases provided in Section 11.2.2 of the Debtor/Committee/ Lender Plan by (i) voting to accept the Debtor/Committee/Lender Plan and not opting out of granting the releases in Section 11.2.2, (ii) voting to reject the Debtor/Committee/Lender Plan but opting to grant the releases in Section 11.2.2, (iii) being deemed to accept the Debtor/Committee/Lender Plan and having been provided an opportunity to opt out of granting the releases in Section 11.2.2 but not having done so, or (iv) otherwise agreeing to grant the releases in Section 11.2.2.

**RELIEF REQUESTED**

24.     By this Motion, the Debtors and the other DCL Plan Proponents seek the

Bankruptcy Court's approval for the form, scope and procedures for a process to (i) allow the

Holders of Senior Loan Claims and Senior Guaranty Claims to reconsider their votes to accept or

reject the Debtor/Committee/Lender Plan, (ii) provide election forms and related instructions to

the Holders of Senior Noteholder Claims and Other Parent Claims to allow them to elect to

receive their distributions as "strips" instead of primarily cash, (iii) provide election forms and

related instructions to the Holders of certain Claims that allow such Holders (a) not to include the

Bridge Loan Agent and Bridge Lenders within the scope of their releases, and/or (b) elect to

reconsider their release of Claims that would otherwise constitute Disclaimed State Law

Avoidance Claims against Released Stockholder Parties, in light of the clarification described in

paragraphs 20-22 above, and (iv) provide the Holders of Claims in voting Classes against

Tribune Company with the further opportunity to opt out of the deemed transfer of any

Disclaimed State Law Avoidance Claims they may have to the Creditors' Trust.  In addition, the

Debtors and the other DCL Plan Proponents seek approval by this Court of the form of the

Supplemental Disclosure Statement and the Explanatory Statement and the extent of distribution

of those documents and related materials in connection with the changes in votes and the new or

changed elections to be made as described herein.  The specific form, scope and procedures

sought to be approved by this Motion for each of these elements of the relief requested are

described in turn below.

**I.      Changes of Votes Previously Cast by Holders of Senior Loan Claims and Senior Guaranty Claims**

25.     The Debtors and the other DCL Plan Proponents believe that affording the

Holders of Senior Loan Claims and Senior Guaranty Claims an opportunity to change their

16

previous votes to accept or reject the Debtor/Committee/Lender Plan is prudent given the

reallocation of a portion of the New Senior Secured Term Loan and New Common Stock from

those Holders to Holders of Senior Noteholder Claims and Other Parent Claims. For all other

Classes of Claims against the Debtors, the DCL Plan Proponents submit that no such opportunity

need be provided, given that those Classes' treatment has either remained unaffected or has been

demonstrably improved through the addition of further treatment options.

26.    The Bankruptcy Code provides that after votes are cast on a plan of

reorganization, a plan proponent may modify a plan prior to confirmation so long as the plan still

satisfies all requirements concerning the contents of the plan and the classification of claims and

interests. See 11 U.S.C. § 1127(d); In re The New Power Co., 438 F.3d 1113, 1117-18 (11th Cir.

2006). In general, a creditor that has voted to accept or reject a plan is also deemed to accept or

reject a modifying proposal. However, "when a modification materially and adversely affects

[the voting parties'] interests, they must be afforded an opportunity to change their vote." In re

Am. Solar King Corp., 90 B.R. 808, 825 (Bankr. W.D. Tex. 1988); see also 11 U.S.C. § 1127(d);

Fed. R. Bankr. P. 3019; In re Sentinel Mgmt. Group, Inc., 398 B.R. 281, 301 (Bankr. N.D. Ill.

2008); In re USN Commc'ns, Inc., 280 B.R. 573, 594-97 (Bankr. D. Del. 2002). The court in

Am. Solar King took guidance from the legislative history of the Bankruptcy Code's adoption

stating that "a creditor or stockholder who voted for or against a plan is deemed to have accepted

or rejected the modifying proposal. But if the modification materially and adversely affects any

of their interests, they must be afforded an opportunity to change their vote...." S. Rep. No. 95-

989, at 124 (1978), reprinted in 1978 U.S.C.C.A.N. 5910.

27.    Case law interpreting the "material and adverse" standard for determining

whether or not an opportunity for creditors affected by plan modifications to revote is sparse.

However, "the severity of the [potentially material and adverse] modification need not be such as would motivate a claimant to *change* their vote—only that they would be apt to *reconsider* acceptance." Am. Solar King, 90 B.R. at 824 (emphasis in original).

28.    In the present circumstance, it is conceivable that a Holder of Senior Loan Claims and Senior Guaranty Claims might reconsider its vote to accept the Debtor/Committee/Lender Plan based on the potential reallocation of a portion of the New Senior Secured Term Loan and New Common Stock to the Holders of electing Senior Noteholder Claims and Other Parent Claims because the form of the consideration to the Holders of Senior Loan Claims and Senior Guaranty Claims will change. Accordingly, the Debtors and the other DCL Plan Proponents believe that it is prudent under these circumstances to afford the Holders of Senior Loan Claims and Senior Guaranty Claims the opportunity to change their votes on the Debtor/Committee/ Lender Plan, consistent with section 1127(d), Rule 3019 and applicable case law, in order to moot any argument that any such Holder may raise that it is entitled to change its vote.

29.    The Debtors and the other DCL Plan Proponents seek Bankruptcy Court approval for the following procedures to govern the distribution, return, and tabulation of potential changed votes from the Holders of Senior Loan Claims and Senior Guaranty Claims:

- Each person or entity that was a Holder of Senior Loan Claims and/or Senior Guaranty Claims as of December 6, 2010, the record date for voting on the December 2010 DCL Plan (the "Voting Record Date") will be mailed a supplemental ballot substantially in the form attached to this Motion as Exhibit A (a "Supplemental Ballot"), which Supplemental Ballot explains briefly the nature of the modifications to the Debtor/ Committee/Lender Plan and informs the Holders of Senior Loan Claims and Senior Guaranty Claims of their opportunity to change their votes.[16]

- The DCL Plan Proponents will additionally provide each Holder of Senior Loan Claims and Senior Guaranty Claims with (i) a copy of the Debtor/Committee/Lender Plan as modified, and (ii) a copy of the Supplemental Disclosure Statement. The Supplemental

---

[16] There were 461 Holders of Senior Loan Claims and/or Senior Guaranty Claims as of the Voting Record Date. Accordingly, the Debtors propose that those 461 Holders are the full measure of Holders from which changes in votes to accept or reject the Debtor/Committee/Lender Plan will be sought.

Disclosure Statement is tailored to the Holders of Senior Loan Claims and Senior Guaranty Claims and provides such Holders with information respecting the modifications that have been made to the Debtor/Committee/Lender Plan affecting the Senior Loan Claims and Senior Guaranty Claims.

- Such persons or entities will have until June 10, 2011 (approximately twenty (20) days from the date supplemental ballots and related materials will be mailed to Holders of Senior Loan Claims and Senior Guaranty Claims) to return their Supplemental Ballots to the Voting Agent. If a Supplemental Ballot is not received from a particular Holder of Senior Loan Claims and Senior Guaranty Claims within the twenty (20) day period provided, such Holder's previously-cast vote in connection with the solicitation process on the December 2010 DCL Plan shall continue to be counted as a vote to accept or reject the Debtor/Committee/Lender Plan as modified.

- The procedures established by the Bankruptcy Court to tabulate ballots respecting the various plans of reorganization and elections thereunder shall also apply to the tabulation of votes and elections on any Supplemental Ballots, as shall the remaining provisions of the Solicitation Order except to the extent expressly modified by the order approving this Motion.[17]

These procedures establish an efficient process that will afford the Holders of Senior Loan Claims and Senior Guaranty Claims an appropriate opportunity to change their votes respecting the Debtor/Committee/Lender Plan, and should accordingly be approved. In particular, given that there were 461 Holders of record of Senior Loan Claims and Senior Guaranty Claims as of the Voting Record Date, the Debtors submit that such Holders can be quickly and efficiently afforded the opportunity to reconsider their votes within the twenty (20) day period contemplated in this Motion. Further, these procedures will have no effect on any votes cast by the Holders of Senior Loan Claims or Senior Guaranty Claims respecting the Noteholder Plan, so the relief sought herein is appropriately limited and comparatively uncomplicated.

30.    The Debtors propose that the Supplemental Disclosure Statement be provided only to the Holders of Senior Loan Claims and Senior Guaranty Claims, as the only Class being provided with Supplemental Ballots to reconsider their votes. Section 1127(c) of the Bankruptcy Code provides that a plan proponent must comply with section 1125 of the Bankruptcy Code

---

[17] See Solicitation Order ¶¶ 30-40.

with respect to a modified plan.  Section 1125(c) of the Bankruptcy Code, in turn provides that

the Holders of Claims in one Class under a plan may be provided with a disclosure statement

tailored to that class, as long as all members of the class receive the same disclosure statement.

See 11 U.S.C. § 1125(c) ("[t]he same disclosure statement shall be transmitted to each holder of

a claim or interest of a particular class, but there may be transmitted different disclosure

statements, differing in amount, detail, or kind of information, as between classes.")  Moreover,

section 1125(b) requires that the disclosure statement contain adequate information.  See 11

U.S.C. § 1125(b).

31.     Here, the Supplemental Disclosure Statement provides the requisite adequate

information.  The already-approved disclosure statement respecting the Debtor/Committee/

Lender Plan provided sufficient information to the Holders of Claims other than Senior Loan

Claims and Senior Guaranty Claims to make their judgment respecting the Debtor/Committee/

Lender Plan.  The Supplemental Disclosure Statement provides the additional information that is

necessary to allow the Holders of Senior Loan Claims and Senior Guaranty Claims to determine

whether to change their vote on the Debtor/Committee/Lender Plan.  It accomplishes that goal in

an efficient and comprehensive fashion, and should be approved.  Moreover, a tailored

Supplemental Disclosure Statement distributed only to the Classes that are to reconsider their

votes is appropriate and will reduce both waste – by eliminating the dissemination of extraneous

documents – and the confusion that would result from the provision of further documentation to

parties to which such documents do not apply.

32.     The Debtors do not propose to solicit changes in votes from the Holders of Claims

in any other Classes under the Debtor/Committee/Lender Plan, given that all other Classes of

Claims under the Debtor/Committee/Lender Plan are receiving either identical treatment or

enhanced treatment when compared with the December 2010 DCL Plan. The DCL Plan

Proponents note that they have modified the Debtor/Committee/Lender Plan to provide that the

Holders of Securities Litigation Claims against Tribune Company will now receive Class 1L

Litigation Trust Interests on account of such Claims, in accordance with the Bankruptcy Court's

ruling on the objection to confirmation of the Debtor/Committee/Lender Plan made by

GreatBanc Trust Company. See Hr'g Tr. 52:21, Apr. 13, 2011. The Class of Securities

Litigation Claims against Tribune Company (Class 1L) was previously deemed to reject the

Debtor/Committee/Lender Plan, as it was to receive no distributions thereunder.

33.     The Debtors do not propose to reopen solicitation on the Debtor/Committee/

Lender Plan to solicit votes from the Holders of Securities Litigation Claims against Tribune

Company, but instead propose to leave that Class as a rejecting Class due to the absence of any

meaningful prospect that Class 1L would vote to accept the Debtor/Committee/Lender Plan if

their votes were solicited. Under such circumstances, it is appropriate to avoid a time-

consuming, expensive, and fruitless disclosure and solicitation exercise, and instead continue to

deem Class 1L to reject the Debtor/Committee/Lender Plan.

## II.     Treatment Elections for Holders of Senior Noteholder Claims and Other Parent Claims

34.     The Debtors and the other DCL Plan Proponents also seek to establish by this

Motion a mechanism for all Holders of Senior Noteholder Claims and Other Parent Claims to

elect to receive the "strip" consideration that is now provided for them as an option under the

Debtor/Committee/Lender Plan in lieu of the alternative, principally-Cash distribution otherwise

provided. In order to establish a fair and equitable process for Holders of Senior Noteholder

Claims and Other Parent Claims to make these elections, the Debtors propose the following:

46429/0001-7559765v1

- The DCL Plan Proponents will cause appropriate election forms for the Holders of Senior Noteholder Claims (the "Senior Noteholder Election Form"), which will be substantially in the form attached hereto as Exhibit C, to be distributed to the beneficial holders of Senior Noteholder Claims through the record holders of such Senior Noteholder Claims as of the Voting Record Date. The beneficial holders of Senior Noteholder Claims will then return their Senior Noteholder Election Forms to the applicable record holders of the Senior Notes for tabulation and to be returned to the Voting Agent on a master tabulation form (a "Senior Noteholder Tabulation Form"), which will be substantially in the form attached hereto as Exhibit D. These procedures follow those that were established in the Solicitation Order to solicit votes on the plans of reorganization and facilitate the making of elections thereunder by the Holders of Senior Noteholder Claims.[18]

- The Debtors will cause appropriate election forms for the Holders of Other Parent Claims (the "Other Parent Claim Election Form"), which will be substantially in the form attached hereto as Exhibit E, to be distributed to the Holders of Other Parent Claims as of the Voting Record Date.[19]

- The Senior Noteholder Election Forms and the Other Parent Claim Election Forms will be distributed together with copies of the Explanatory Statement attached hereto as Exhibit H.

- The record holders of Senior Noteholder Claims and the Holders of Other Parent Claims will have until June 30, 2011 to return the Senior Noteholder Tabulation Forms and the Other Parent Claim Election Forms, as applicable, to the Voting Agent. Elections reflected on Senior Noteholder Tabulation Forms or Other Parent Claim Election Forms

---

[18] Some parties that return Senior Noteholder Election Forms with respect to particular Senior Notes may be different than the parties that originally voted those Senior Notes, given that the Senior Notes have continued to trade during the Debtors' chapter 11 cases. It is not practical to attempt to identify through the record holders all of the parties that originally voted particular Senior Notes or were the beneficial holders thereof as of the Record Date. Accordingly, the Debtors propose that the order approving this Motion also expressly permit the beneficial holders of Senior Noteholder Claims as of two (2) days prior to the date scheduled for the hearing on this Motion to make the election called for on the Senior Noteholder Election Form.

In addition, a Holder of a Senior Noteholder Claim's (i) election to receive the alternative treatment provided in Section 3.2.5(c)(i) of the Debtor/Committee/Lender Plan and/or election not to transfer its Disclaimed State Law Avoidance Claims to the Creditors' Trust established under the Debtor/Committee/Lender Plan will be valid only if such Holder has electronically delivered its Senior Notes, as of June 30, 2011, into the Automated Tender Offer Program at The Depository Trust Company (the "ATOP System"). Only the Nominee of a Holder of a Senior Noteholder Claim can submit this election on such Holder's behalf. Holders of Senior Noteholder Claims that electronically deliver their Senior Notes into the ATOP System in order to make these elections can withdraw their Senior Notes from the ATOP System up to and until the election deadline on June 30, 2011, but following such election deadline the Senior Notes electronically delivered to the ATOP System will not be freely tradable.

[19] In connection with the prior solicitation of votes to accept or reject the Debtor/Committee/Lender Plan in December 2010, solicitation materials were distributed to approximately 3,900 beneficial holders of Senior Noteholder Claims and 843 Other Parent Claims. As discussed above, Senior Noteholder Election Forms will be provided to the beneficial holders of Senior Noteholder Claims through the relevant record holders. Other Parent Claims Election Forms and related materials will be mailed directly to the 843 Holders of Other Parent Claims.

46429/0001-7559765v1

that are received by the Voting Agent after June 30, 2011 will be disregarded and will not be considered in computing distributions under the Debtor/Committee/Lender Plan.

- If the Voting Agent does not receive a Senior Noteholder Tabulation Form or an Other Parent Claim Election Form providing that a particular Holder of a Claim wishes to make the applicable treatment elections, such Holder will (i) be bound by any treatment election made by that Holder under the December 2010 DCL Plan (in the case of Other Parent Claims) or, in the absence of any such prior election, (ii) receive the default treatment provided in Section 3.2.5(c)(ii) of the Debtor/Committee/Lender Plan for Senior Noteholder Claims or Section 3.2.6(c)(iv) of the Debtor/Committee/Lender Plan for Other Parent Claims (as applicable).

- The provisions of the Solicitation Order applicable to treatment elections under the December 2010 DCL Plan shall also apply to the tabulation and evaluation of any Senior Noteholder Election Forms, Senior Noteholder Tabulation Forms, and Other Parent Claim Election Forms.

35.     The Debtors believe that an approximately forty (40) day period for the Holders of Senior Noteholder Claims and Other Parent Claims to return their applicable treatment election forms provides those Holders with a reasonable period in which to consider whether they wish to make such elections and then return the appropriate form while not delaying the progress of the Debtors' chapter 11 cases. The treatment election forms themselves and the Explanatory Statement explain the new treatment elections and related plan modifications, and provide instructions for the relevant Holders as to how to make the elections if they wish, while explaining their voluntary nature. The Debtors have further verified with the Voting Agent that the forty (40) day time period will permit the Voting Agent to distribute the treatment election forms and the Senior Noteholder Tabulation Forms in sufficient time for the Holders of Senior Noteholder Claims and Other Parent Claims to make any treatment elections they wish and return their documentation by the deadline. Accordingly, the Debtors seek the Bankruptcy Court's approval of the forms and procedures for providing notice to the Holders of Senior Noteholder Claims and Other Parent Claims of the new treatment elections under the Debtor/Committee/Lender Plan and the making of those elections.

### III.    Elections Respecting Modified Releases Under Debtor/Committee/Lender Plan

36.    The Debtors additionally seek approval for the forms and procedures for allowing all Holders of Claims against the Debtors that elected to grant the releases provided in Section 11.2.2 of the Debtor/Committee/Lender Plan to elect (a) not to include the Bridge Loan Agent and the Bridge Lenders within the scope of those releases, as was reflected in the Debtor/ Committee/Lender Plan as a result of the Bridge Loan Settlement described above (at ¶¶ 17-19) and/or (b) to reconsider their release of claims that would otherwise constitute Disclaimed State Law Avoidance Claims against Released Stockholder Parties in light of the clarification that any right to pursue or prosecute any Disclaimed State Law Avoidance Claims that may now reside with such Holders is not precluded by the automatic stay or the Bankruptcy Court's mediation order.  As the Bankruptcy Court is aware, non-debtor releases are permitted in this Circuit so long as the holder of a claim granting such release consents to that release, whether by voting for a plan containing the release, being deemed to accept such plan, or by other affirmative action. See, e.g., In re Combustion Eng'g, Inc., 391 F.3d 190, 214 n.11 (3d Cir. 2005) (citing In re Zenith Elecs. Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release requires creditor consent)); In re Arrowmill Dev. Corp., 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (same).  In these chapter 11 cases, the Bankruptcy Court previously approved solicitation procedures and forms of ballot that provided that (i) Holders of Claims that voted to accept the Debtor/Committee/Lender Plan were deemed to consent to third-party releases unless they affirmatively opted out of the releases by checking the appropriate box on their ballot, (ii) Holders of Claims that voted to reject the Debtor/ Committee/Lender Plan were deemed not to consent to third-party releases unless they affirmatively opted to grant such releases by checking the appropriate box on their ballot, (iii) Holders of Claims that were deemed to accept the Debtor/Committee/Lender Plan were deemed

to consent to the third-party releases if they were provided an opportunity to opt out of granting the releases but did not do so, and (iv) Holders of Claims that did not vote on the Debtor/Committee/Lender Plan and were not deemed to accept the Debtor/Committee/Lender Plan were not deemed to grant the third-party releases absent some other affirmative action stating that they elected to grant the releases.[20] See Solicitation Order at ¶ 19 (approving form of ballots, mater ballots and instructions). The third-party releases contained in the Debtor/Committee/Lender Plan implement this consensual release structure. See Debtor/Committee/Lender Plan § 11.2.2. Accordingly, any party that has granted the Section 11.2.2 releases in the Debtor/Committee/Lender Plan has done so by consenting to those releases either by voting to accept the Debtor/Committee/Lender Plan (and not opting out of the releases) or comparable action.

37.    The Debtors and the other DCL Plan Proponents now propose procedures to ensure that Holders of Claims that have previously granted the relevant releases in the Debtor/Committee/Lender Plan have the opportunity to reconsider their release elections solely to the extent the scope of those releases has changed as a result of modifications to the applicable provisions of the Debtor/Committee/Lender Plan; i.e., to include the Bridge Loan Agent and the Bridge Lenders as Released Parties and the clarification that Disclaimed State Law Avoidance Claims against Released Stockholder Parties fall within the scope of Holder Released Claims. Accordingly, the Debtors propose the following procedures to enable that reconsideration:

- The DCL Plan Proponents will cause appropriate election forms (the "Release Election Form"), which will be substantially in the form attached hereto as Exhibit F, to be distributed to all Holders of Claims against Tribune Company (other than Holders of Other Parent Claims, discussed below) that were either entitled to vote to accept or reject the Debtor/Committee/Lender Plan or were afforded an opportunity to opt out of the Section 11.2.2 releases thereunder (and were thus deemed to grant the Section 11.2.2

---

[20] Of the 2,520 conforming ballots cast on the Debtor/Committee/Lender Plan, 280 (11.11%) reflected votes to accept the Plan but did not grant the releases in Section 11.2.2 of the Debtor/Committee/Lender Plan. Eight (8) Holders of Claims (0.3%) voted to reject the Plan but nonetheless opted to grant the Section 11.2.2 releases.

46429/0001-7559765v1

releases unless they affirmatively opted out of such releases).[21] Holders of Other Parent Claims will have an opportunity to make such release elections on their Other Parent Claim Election Forms.

- The DCL Plan Proponents will further cause Release Election Forms to be distributed to all Holders of Claims against Debtors other than Tribune Company where such Holders previously granted or were deemed to grant the Section 11.2.2 releases.[22]

- The Release Election Form explains, in brief, the modifications that have been made to the release provisions of the Debtor/Committee/Lender Plan and provides the relevant Holders of Claims the opportunity to (a) elect not to include the Bridge Loan Agent and the Bridge Lenders within the scope of such releases and (b) opt out of including within their Holder Released Claims any Disclaimed State Law Avoidance Claims against Released Stockholder Parties that may have reverted to them.

- Holders of Claims will have until June 30, 2011 to return Release Election Forms (or Other Parent Claim Election Forms, as applicable) to the Voting Agent. In the case of Senior Noteholder Claims, Beneficial Holders of Senior Noteholder Claims will submit their Release Election Forms, which will be distributed through the record holders of Senior Noteholder Claims, to the applicable record holders of the Senior Notes for tabulation and the record holders will record such elections on the Senior Noteholder Tabulation Form.[23] Record holders of Senior Noteholder Claims will have until June 30, 2011 to return Senior Noteholder Tabulation Forms to the Voting Agent. Release elections reflected on Release Election Forms, Other Parent Claim Election Forms or Senior Noteholder Tabulation Forms, as applicable, that are received by the Voting Agent after that date will be disregarded.

- If the Voting Agent does not receive a Senior Noteholder Tabulation Form, Other Parent Claim Election Form or Release Election Form, as applicable, providing that a particular Holder of a Claim wishes to opt out of extending the releases in Section 11.2.2 of the

---

[21] Where a Holder of a Claim against Tribune Company previously elected not to grant the Section 11.2.2 releases, or was deemed not to grant such releases, but nonetheless receives a Release Election Form, the failure of such Holder to return a Release Election Form will not affect that Holder's prior release elections, and such Holder will further be deemed not to grant the Section 11.2.2 releases in their entirety.

[22] According to the Voting Agent, 781 Holders of General Unsecured Claims against Debtors other than Tribune Company granted or were deemed to grant the Section 11.2.2 releases, out of 31,423 such Holders solicited. The remaining 30,642 Holders of General Unsecured Claims against the subsidiary Debtors did not grant the releases either because they did not vote on the Debtor/Committee/Lender Plan at all or because they voted to reject the Plan and did not opt into granting the releases. The Debtors submit that sending Release Election Forms to more than 30,000 Holders of Claims that did not grant the releases in the first place, and would not be deemed to do so under any order granting this Motion, is unnecessary under the circumstances and likely to cause far more confusion than it would solve. The Debtors accordingly propose not to send Release Election Forms to such Holders.

[23] Any beneficial holder of Senior Noteholder Claims that makes any elections respecting its releases on a Senior Noteholder Election Form will be required to certify that it previously granted (or was deemed to grant) the releases contained in Section 11.2.2 of the Debtor/Committee/Lender Plan. In the event that a Holder of Senior Noteholder Claims did not previously elect to grant the applicable releases (or was not previously deemed to grant those releases), then such Holder will have no need to return a Release Election Form.

Debtor/Committee/Lender Plan, then such Holder will have granted such releases to the full extent set forth in Section 11.2.2 of the Debtor/Committee/Lender Plan. Notwithstanding the foregoing, if a particular Holder of a Claim previously elected not to grant the Section 11.2.2 releases or was deemed not to grant such releases pursuant to the terms of the Debtor/Committee/Lender Plan and the Solicitation Order, that election or deemed non-granting, as applicable, will continue to apply regardless of whether the relevant Holder returns a Release Election Form.

- The provisions of the Solicitation Order applicable to release elections under the December 2010 DCL Plan shall also apply to the tabulation and evaluation of any Senior Noteholder Tabulation Forms, Other Parent Claim Election Forms and Release Election Forms.

38.    These procedures provide for a fair, reasonable, and efficient process for Holders of Claims that have already elected to grant the consensual releases under the Debtor/Committee/Lender Plan to determine whether they wish to grant those releases to the full extent that those releases have been modified in that plan. The bulk of the parties that will receive Release Election Forms (or, in the case of Holders of Other Parent Claims, Other Parent Claim Election Forms on which release elections may be made) have previously consented or been deemed to consent to the releases through a process that was approved in the Solicitation Order. Consent to such releases continues to follow a party's decision to accept the Debtor/Committee/Lender Plan or their election to opt into the releases notwithstanding rejection of that plan. The relief sought herein is solely for the limited purpose of permitting Holders of Claims to elect not to include the Bridge Loan Agent and Bridge Lenders within the scope of the Released Parties, and not to include Disclaimed State Law Avoidance Claims against Released Stockholder Parties within the scope of Holder Released Claims, as the Debtor/Committee/Lender Plan now does.[24]

---

[24] For reasons similar to those articulated above in paragraph 35 with respect to notice of the treatment elections, the Debtors believe it is sufficient to provide the Holders of Claims with copies of the Debtor/Committee/Lender Plan as modified by making it available on the Debtors' reorganization website, rather than mailing copies of the Debtor/Committee/Lender Plan directly to these Holders of Claims.

46429/0001-7559765v1

IV.    **Opt-Out Election Concerning Disclaimed State Law Avoidance Claims**

39.    The Debtors and the other DCL Plan Proponents also seek by this Motion the Bankruptcy Court's approval of procedures for providing all Holders of Claims against Tribune Company that were entitled to vote on the December 2010 DCL Plan, and hence previously had the opportunity to opt out of transferring their Disclaimed State Law Avoidance Claims to the Creditors' Trust, with a further opportunity to so opt out. Under Section 14.3.1 of the Debtor/Committee/Lender Plan, Holders of Claims against Tribune Company are deemed to transfer any Disclaimed State Law Avoidance Claims to the Creditors' Trust established under the Debtor/Committee/Lender Plan, unless they opt out of that transfer.[25] The deemed transfer of Disclaimed State Law Avoidance Claims was provided for in the December 2010 DCL Plan and any creditors that wished to opt out of such transfer did so through the ballots distributed to the Holders of Claims against Tribune Company in connection with the solicitation process on the Debtor/Committee/Lender Plan. Approximately 223 Holders of Claims against Tribune Company opted out of the deemed transfer of their Disclaimed State Law Avoidance Claims to the Creditors' Trust during the prior solicitation process. See Voting Report [Docket No. 7918], Ex. A-2(a) at 1, 14, 32, 44-45; [Docket No. 8114], Ex. A-1.

40.    The Debtors and the other DCL Plan Proponents believe it is prudent to permit all Holders of Claims against Tribune Company that previously had the opportunity to opt out of the deemed transfer of their Deemed State Law Avoidance Claims to the Creditors' Trust to once again have the opportunity to opt out, given the change to the definition of Disclaimed State Law Avoidance Claims. Accordingly, the DCL Plan Proponents propose the following procedures for

---

[25] The Disclaimed State Law Avoidance Claims transferred to the Creditors' Trust will in no event include any Released Claims against any Released Parties or any Disclaimed State Law Avoidance Claims against any Released Stockholder Parties, and the Creditors' Trust will not have the right to assert any Released Claims against any Released Parties or any Disclaimed State Law Avoidance Claims against any Released Stockholder Parties. See Debtor/Committee/Lender Plan at § 14.3.1.

28

permitting such Holders of Claims to reconsider whether they wish to transfer their Disclaimed

State Law Avoidance Claims to the Creditors' Trust, or opt out of that transfer:

- The DCL Plan Proponents will cause appropriate election forms (the "Creditors' Trust Election Form"), which will be substantially in the form attached hereto as Exhibit G, to be distributed to all Holders of Claims against Tribune Company in Classes that were entitled to vote to accept or reject the Debtor/Committee/Lender Plan (other than Senior Noteholder Claims and Other Parent Claims, discussed below in this paragraph). The Creditors' Trust Election Form explains, in brief, the modifications that have been made to the definition of Disclaimed State Law Avoidance Claims, the fact that under the Debtor/Committee/Lender Plan, holders of such claims are deemed to transfer those claims absent opting out of doing so, and their ability to opt out using the Creditors' Trust Election Form.

- Beneficial Holders of Senior Noteholder Claims will be provided an opportunity on their Senior Noteholder Election Forms to opt out of the deemed transfer their Disclaimed State Law Avoidance Claims to the Creditors' Trust which will be distributed through the record holders of Senior Noteholder Claims and returned as described in paragraph 34 above, and then tabulated by the record holders as set forth in that paragraph and returned to the Voting Agent on Senior Noteholder Tabulation Forms.

- Holders of Other Parent Claims will be provided an opportunity on their Other Parent Claim Election Forms to opt out of the deemed transfer of their Disclaimed State Law Avoidance Claims to the Creditors' Trust.

- Holders of Claims against Tribune Company will have until June 30, 2011 to return Creditors' Trust Election Forms (or, in the case of Holders of Other Parent Claims, the Other Parent Claim Election Forms) to the Voting Agent. In the case of Senior Noteholder Claims, record holders of Senior Noteholder Claims will have until June 30, 2011 to return Senior Noteholder Tabulation Forms to the Voting Agent. Creditors' Trust Election Forms, Other Parent Claim Election Forms or Senior Noteholder Tabulation Forms that are received by the Voting Agent after that date will be disregarded.

- If the Voting Agent does not receive a Creditors' Trust Election Form, Other Parent Claim Election Form or Senior Noteholder Tabulation Form (as applicable) providing that a particular Holder of a Claim against Tribune Company wishes to opt out of the deemed transfer of their Disclaimed State Law Avoidance Claims to the Creditors' Trust, and such Holder did not previously opt out of the deemed transfer of its Disclaimed State Law Avoidance Claims by checking the appropriate box on its ballot in connection with voting on the December 2010 DCL Plan, then such Holder will be deemed to have transferred its Disclaimed State Law Avoidance Claims (other than those against Released Stockholder Parties) to the Creditors' Trust pursuant to Section 14.3.1 of the Debtor/Committee/Lender Plan; provided, however, that Holders that transfer or are deemed to transfer claims to the Creditors' Trust will be permitted to take steps necessary

46429/0001-7559765v1

to prevent the expiration of any applicable statute of limitations with respect to any Disclaimed State Law Avoidance Claims they may have against Step One Selling Stockholders, but not to prosecute any such claims in any manner prior to the formation of the Creditors' Trust on the Effective Date of the Debtor/Committee/Lender Plan.[26]

- For the avoidance of doubt, where a Holder of a Claim previously returned a ballot opting out of the deemed transfer of Disclaimed State Law Avoidance Claims to the Creditors' Trust, the failure of such a Holder to return a Creditors' Trust Election Form, Other Parent Claim Election Form or Senior Noteholder Tabulation Form will not affect that prior opt-out.

- The provisions of the Solicitation Order applicable to elections under Section 14.3.1 of the December 2010 DCL Plan shall also apply to the tabulation and evaluation of any Senior Noteholder Election Forms, Senior Noteholder Tabulation Forms, Other Parent Claim Election Forms and Creditors' Trust Election Forms.

## V.    Approval of the Explanatory Statement

41.    The Debtors and the other DCL Plan Proponents also propose to send the Explanatory Statement to Holders of Claims that receive the Senior Noteholder Election Forms, the Other Parent Claim Election Form, the Release Election Form, and/or the Creditors' Trust Election Form (collectively, the "Election Forms").  It is not necessary to provide such Holders with a supplemental disclosure statement pursuant to section 1125 of the Bankruptcy Code given that no changes to previously-cast votes are being solicited from any Holders of Claims other than Senior Loan Claims and Senior Loan Guaranty Claims.  Nonetheless, the Debtors and the other DCL Plan Proponents believe it is prudent and helpful to provide a brief statement to the Holders of Claims receiving the various Election Forms that explains the circumstances giving rise to those elections, identifies the provisions of the Debtor/Committee/Lender Plan relevant to those elections, and the effect of those elections.  In short, the Explanatory Statement provides key information to Holders of Claims allowing them to make decisions respecting the various elections in an informed and timely manner.  The Explanatory Statement also directs the Holders

---

[26] Any Holder that preserves such claims will be given the option to later elect to transfer such claims to the Creditors' Trust, after the Creditors' Trust is formed under the Debtor/Committee/Lender Plan on the Effective Date.

46429/0001-7559765v1

of Claims to the Debtors' reorganization website at http://chapter11.epiqsystems.com should

they wish to receive more information or a copy of the Debtor/Committee/Lender Plan.

42.    The Debtors seek approval for the Explanatory Statement under section 105(a) of

the Bankruptcy Code.  As noted above, section 1125 of the Bankruptcy Code is inapplicable to

the Explanatory Statement because the Explanatory Statement is not being transmitted to Holders

of Claims in connection with the solicitation of votes or changes in votes.  Instead, the Debtors

seek approval pursuant to section 105(a), which provides that the Bankruptcy Court has the

power to issue any "order…necessary or appropriate to carry out the provisions of [the

Bankruptcy Code]."  11 U.S.C. § 105(a).  Here, the Election Forms should be approved for

several reasons.  First, they provide a brief description of the elections available under the

Debtor/Committee/Lender Plan, the reasons for such elections, and the effects thereof that is

sufficient to allow the relevant Holders of Claims to make the elections if they wish or, at a

minimum, to direct such Holders to readily-accessible sources of all available information.

Second, providing copies of the Debtor/Committee/Lender Plan to all Holders of Claims

receiving one of the Election Forms (other than the Holders of Senior Loan Claims and Senior

Loan Guaranty Claims) would be a considerable and expensive undertaking, as there are

numerous Holders of such Claims.  Finally, providing the Debtor/Committee/Lender Plan, a new

supplemental disclosure statement, and other similar materials to Holders of Claims to make the

elections will doubtless cause more confusion than it will resolve, again at considerable expense.

The Explanatory Statement is a reasonable approach for providing information to Holders of

Claims in as straightforward and efficient a manner as practicable under the circumstances.

## NOTICE

43.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for the Debtors' post-petition loan facility; (v) the Noteholder Plan Proponents; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

44.     No prior request for the relief sought herein has been made to this or to any other Court.

## CONCLUSION

45.     The DCL Plan Proponents have made a concerted and substantial effort to reach out to parties that objected to the Debtor/Committee/Lender Plan and/or voted to reject the Debtor/Committee/Lender Plan to resolve consensually as many objections as possible. That exercise has been productive, resulting in a major settlement with the Bridge Agent and the Holders of Bridge Loan Claims and the withdrawal of the competing plan proposed thereby, as well as numerous other resolutions. The DCL Plan Proponents have then gone further and proposed resolutions to objections raised by other parties in order to narrow the confirmation-related issues before the Bankruptcy Court. Those settlements and resolutions have caused the DCL Plan Proponents to make various modifications to the Debtor/Committee/Lender Plan, which was already overwhelmingly favored by the Holders of Claims against the Debtors. The procedures proposed in this Motion are tailored to provide the Holders of Claims affected or potentially affected by the modifications to reconsider their votes, make elections for new

32

treatment, or make release or Creditors' Trust opt out elections in a fair, effective and informed manner with a minimum of disruption to the confirmation process.  Such procedures should be approved.


[Remainder of Page Intentionally Left Blank]

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached hereto, (i) approving the form, scope and procedures for providing the Holders of Senior Loan Claims and Senior Guaranty Claims with the opportunity to change their previously-cast votes on the Debtor/Committee/Lender Plan; (ii) approving the form, scope and procedures for the distribution, return and tabulation of election forms to Holders of Senior Noteholder Claims and Other Parent Claims to allow them to elect any of the new, alternative treatments provided for under the Debtor/Committee/Lender Plan; (iii) approving the form, scope and procedures for the distribution, return and tabulation of release elections from Holders of Claims that previously granted releases under the Debtor/Committee/ Lender Plan; (iv) approving the form of the distribution, return and tabulation of further opt-out elections from Holders of Claims against Tribune Company concerning any Disclaimed State Law Avoidance Claims they may have; (v) approving the Explanatory Statement and the Supplemental Disclosure Statement and the distribution thereof, and (vi) such other and further relief as the Court deems just and proper.

Dated: April 25, 2011

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Kenneth P. Kansa
Allison Ross Stromberg
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-0199

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131

Counsel for Debtors and Debtors in Possession

35