# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*,[1] | Jointly Administered |
| Debtors. | **Hearing Date: May 17, 2011 at 10:00 a.m. ET** |
| | **Objection Deadline: May 10, 2011 at 4:00 p.m. ET** |

## MOTION BY THE NOTEHOLDER PLAN PROPONENTS FOR ENTRY OF AN ORDER DETERMINING THAT (I) THE AMENDMENTS THAT HAVE BEEN MADE TO THE NOTEHOLDER PLAN ARE NOT MATERIAL AND ADVERSE TO ANY CLASS OF CREDITORS OR (II) TO THE EXTENT THE AMENDMENTS ARE MATERIAL AND ADVERSE TO ANY CLASS(ES) OF CREDITORS, BASED ON SUCH CLASS(ES)' PRIOR REJECTION OF THE INITIAL NOTEHOLDER PLAN, SUCH CLASS(ES) SHALL BE DEEMED TO ALSO REJECT THE THIRD AMENDED NOTEHOLDER PLAN

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WCCT Inc., f/k/a WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Aurelius Capital Management, LP, on behalf of its managed entities, ("Aurelius"),

Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee  for

certain series of Senior Notes ("Deutsche Bank"), Law Debenture Trust Company of New York,

in its capacity as successor Indenture Trustee for certain series of Senior Notes ("Law

Debenture") and Wilmington Trust Company, in its capacity as successor Indenture Trustee for

the PHONES Notes ("Wilmington Trust" and, collectively with Aurelius, Deutsche Bank and

Law Debenture, the "Noteholder Plan Proponents"), by and through their undersigned counsel,

hereby move (the "Motion"), pursuant to sections 105(a), 1125, 1126 and 1127 of title 11 of the

United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 3018 and 3019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (a)

determining that (i) the amendments that have been made to the Noteholder Plan[2] are not

material and adverse to any Class of Creditors or (ii) to the extent the amendments are material

and adverse to a Class(es) of Creditors, based on such Class(es)' prior rejection of the Initial

Noteholder Plan, such Class(es) shall be deemed to also reject the Third Amended Noteholder

Plan, and (b) approving the form of Joint Notice attached hereto as Exhibit B.[3]  In support of this

Motion, the Noteholder Plan Proponents submit as follows:

## PRELIMINARY STATEMENT

1.      For the past five months, the Noteholder Plan Proponents have been actively

engaged with the proponents of the Debtor/Committee/Lender Plan (the "DCL Plan Proponents")

and other third parties in discussions over the treatment of Creditor Classes and implementation

mechanics embodied in the Noteholder Plan.  These discussions have resulted in three amended

plans, all of which reflect modifications to the version of the Noteholder Plan on which Creditor

---

[2] Where the context requires, the term "Noteholder Plan" refers to the applicable version of such plan.

[3] Terms not otherwise defined herein shall have the meanings ascribed to them in the Third Amended Noteholder Plan.

votes were cast.  These modifications range from discrete modifications to tax and

indemnification provisions to more substantive changes made to minimize the breadth of issues

before this Court in connection with the Confirmation Hearing.  For example (and as discussed

in greater detail below), the Noteholder Plan has been modified to: (i) permit substantially more

equity value in Reorganized Tribune to be distributed to Creditors on the Effective Date while

preserving sufficient DEV to pay all Non-LBO Creditors in full, including Postpetition Interest,

in the event that the Litigation Trust is successful in prosecuting the LBO-Related Causes of

Action; (ii) enforce the Senior Loan Sharing Provisions contained in the Senior Loan Agreement

and therefore provide Step Two Lenders with an Initial Distribution; (iii) provide for each Holder

of an Allowed Other Guarantor Debtor Claim to receive its "natural recovery" based on an

entity-by-entity valuation prepared by the Debtors or, to the extent disputed by any such Holder,

a higher recovery as may be determined by a Final Order; and (iv) provide for the separate

classification of the Swap Parent Claim and the Swap Guaranty Claim from the Step One Senior

Loan Claims and Step One Senior Loan Guaranty Claims, respectively.

      2.      The modifications made to each iteration of the Noteholder Plan are summarized

herein.  For the reasons set forth in this Motion, the Noteholder Plan Proponents do not believe

that any of the modifications necessitate resolicitation, but they have prepared a notice

summarizing the primary changes made to each version of the Noteholder Plan for the benefit of

all parties in interest (the "Noteholder Notice").  Assuming approval of this Motion, the

Noteholder Plan Proponents intend to (i) file the Noteholder Notice, substantially in the form

attached hereto as Exhibit A and (ii) serve the Noteholder Notice on the 2002 List.

      3.      The DCL Plan Proponents have similarly evaluated whether recent modifications

made to the Debtor/Committee/Lender Plan require resolicitation, and have determined to

3

resolicit Holders of Senior Loan Claims and Senior Guaranty Claims (as such terms are defined

under the Debtor/Committee/Lender Plan).  The DCL Plan Proponents also intend to allow

certain holders of claims to (i) elect to receive a strip of consideration, (ii) reconsider the scope

of releases granted, to the extent applicable, under the Debtor/Committee/Lender Plan, and/or

(iii) reconsider whether to opt out of the transfer of such holders' Disclaimed State Law

Avoidance Claims (as defined in the Debtor/Committee/Lender Plan), if applicable, to the

creditors' trust created under the Debtor/Committee/Lender Plan.

4.       Because the Noteholder Plan Proponents have determined not to resolicit any

Classes of Claims or provide any Classes of Claims with re-election options under the

Noteholder Plan, the Noteholder Plan Proponents will not be sending resolicitation/re-election

packages to any Creditors.  As noted above, the DCL Plan Proponents will be sending certain

forms of resolicitation/re-election packages to, among others, all creditors who assert claims

against Tribune under the Debtor/Committee/Lender Plan.

5.       Accordingly, the Noteholder Plan Proponents believe it is appropriate to provide

parties in interest with a joint notice (the "Joint Notice"), substantially in the form attached

hereto as Exhibit B, as approved by the Court, advising all parties in interest that, among other

things, (a) the Court is considering confirmation of both the Debtor/Committee/Lender Plan and

the Noteholder Plan (together, the "Competing Plans"), (b) the Court has concluded both the

evidentiary and legal arguments concerning confirmation of the Competing Plans and has set a

briefing schedule and date for closing arguments, (c) both the Noteholder Plan Proponents and

the DCL Plan Proponents have made modifications to their respective plans, with a reference to

the ECF filings describing the latest respective plan amendments, (d) while the DCL Plan

Proponents do intend to resolicit certain Classes of Claims, modifications to the Noteholder Plan

does not require resolicitation and (e) the Court has approved procedures for the resolicitation to be conducted in connection with the Debtor/Committee/Lender Plan.  The Noteholder Plan Proponents propose to (x) file the Joint Notice, (y) serve the Joint Notice on the 2002 List, and (z) distribute the Joint Notice to all creditors whose votes were solicited in connection with the Competing Plans; the expense of which distribution shall be borne by the Debtors' Estates.

## BACKGROUND

### Case Background

6.     On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors comprise 111 entities.

7.     The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [ECF Nos. 43, 2333].

8.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     On December 18, 2008, the Office of the United States Trustee appointed the Creditors' Committee.

### Background Related to the Noteholder Plan

10.     On December 9, 2010, the Noteholder Plan Proponents filed the Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital

Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Initial Noteholder Plan") [ECF No. 7127].

11.    On February 25, 2011, the Noteholder Plan Proponents filed the Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed By Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, In Its Capacity as Successor Indenture for the PHONES Notes (the "Amended Noteholder Plan") [ECF No. 8169].

12.    Also on February 25, 2011, the Noteholder Plan Proponents filed the Memorandum of Law of Noteholder Plan Proponents (I) In Support of the Noteholder Plan and (II) In Response to Objections to the Noteholder Plan (the "Noteholder Memorandum of Law") [ECF No. 8171].

13.    On March 28, 2011, the Noteholder Plan Proponents filed the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed By Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, In Its Capacity as Successor Indenture for the PHONES Notes (the "Second Amended Noteholder Plan") [ECF No. 8509].

Concurrently with the Second Amended Noteholder Plan, the Noteholder Plan Proponents filed the Notice of Filing of the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed By Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, In Its Capacity as Successor Indenture for the PHONES Notes  [ECF No. 8509], summarizing the most significant changes made to the Amended Noteholder Plan.

14.    Concurrently with the filing of this Motion, the Noteholder Plan Proponents filed the Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed By Aurelius Capital Management, LP, on Behalf of Its Managed Entities, Deutsche Bank Trust Company Americas, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, In Its Capacity as Successor Indenture for the PHONES Notes (the "Third Amended Noteholder Plan").

## JURISDICTION

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 1125, 1126 and 1127 of the Bankruptcy Code and Bankruptcy Rules 2002, 3018 and 3019.

## MODIFICATIONS TO THE NOTEHOLDER PLAN

16.     This section summarizes the modifications referenced above, which modifications were largely implemented to resolve third party confirmation objections or, with respect to objections raised by the DCL Plan Proponents, narrow the scope of the issues that this Court will be required to decide as part of the contested confirmation process.  Part A of this section contains a chart that summarizes modifications, if any, to the classification and treatment of Claims against the Debtors from the Initial Noteholder Plan to the Third Amended Noteholder Plan.  Part B summarizes certain changes made to the Initial Noteholder Plan as reflected in the Amended Noteholder Plan.  Part C summarizes certain changes made to the Amended Noteholder Plan as reflected in the Second Amended Noteholder Plan.  Part D summarizes certain changes made to the Second Amended Noteholder Plan as reflected in the Third Amended Noteholder Plan.  Finally, Part E describes changes the Noteholder Plan Proponents intend to make to certain Plan Supplement documents.

A.  Changes in Classification and Treatment of Claims from the Initial Noteholder Plan to the Third Amended Noteholder Plan[4]

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| Step One Senior Loan Claims/Step One Senior Loan Guaranty Claims (collectively, "Step One Lender Claims") | (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step One Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions:  34.2% - 38.7%. | The value of the Initial Distributions to the Step One Lenders remains the same; *provided*, that the form of the Initial Distributions has been changed from a "strip" of consideration to all New Common Stock/New Warrants. In addition, based on the enforcement of the loan sharing provisions of the Senior Loan Agreement, the Step One Lenders will no longer have a contingent interest in value that was originally reserved for Step Two Lender Claims pending the determination of the enforcement of such loan sharing provisions. Estimated recovery on account of Initial Distributions: 34.1%[5] - 38.7%. |
| Swap Parent Claim/Swap Guaranty Claims (collectively, "Swap Claims") | The Swap Parent Claim and Swap Guaranty Claims were classified as a Step One Senior Loan Claim and Step One Senior Loan Guaranty Claims, respectively, and were to receive the treatment afforded to Step One Lender Claims. Estimated recovery on account of Initial Distributions:  34.2% - 38.7%. | The value of the Initial Distributions to the Holder of the Swap Claims remains the same; *provided*, that the form of the Initial Distribution has been changed from a "strip" of consideration to all New Common Stock/New Warrants. The Swap Claims are now separately classified from the Step One Lender Claims.  Estimated recovery on account of Initial Distributions: 34.1%[6] - 38.7%. |

[4] All estimated recoveries are based on the Debtors' asserted DEV for the Debtors' of $6.75 billion, with such DEV allocated 8.4% to Tribune and 91.6% to Tribune's subsidiaries (on a consolidated basis).  Estimated recoveries are also dependant on the outcome of the PHONES Notes Claims Resolution.  The Noteholder Plan Proponents believe the actual DEV is materially higher than $6.75 billion and, in that regard, have submitted the Rebuttal Report to Expert Valuation Report Submitted by Lazard Frères & Co. LLC prepared by Raymond James, challenging the $6.75 billion DEV.

[5] Estimated low-end Initial Distribution recovery percentage has decreased slightly after taking into account higher reserve necessary to provide for satisfaction in full of Other Guarantor Debtor Claims based on revisions to the treatment of such Creditor Classes.

[6] *See* footnote 5, *supra*.

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| Step Two Senior Loan Claims/Step Two Senior Loan Guaranty Claims (collectively, "<u>Step Two Lender Claims</u>") | <u>If the loan sharing provisions contained in Senior Loan Agreement were enforced</u>:  (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step Two Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions if loan sharing provisions were enforced:  34.2% - 38.7%.<br><u>If the loan sharing provisions were not enforced or if consideration of the enforceability of the loan sharing provisions was deferred</u>:  the value of the Initial Distributions otherwise allocable to the Step Two Lenders would have been placed in reserve. Estimated recovery on account of Initial Distributions if loan sharing provisions were not enforced or if consideration of the enforceability of the loan sharing provisions was deferred: 0% | Under the Third Amended Noteholder Plan, the loan sharing provisions contained in the Senior Loan Agreement are deemed to be enforceable; accordingly, Holders of Step Two Lender Claims will receive: (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step Two Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions:  34.1%[7] - 38.7%. With enforcement of the loan sharing provisions, the value of the Initial Distributions to the Step Two Lenders in connection with such enforcement remains the same; *provided*, that the form of the Initial Distribution has been changed from a "strip" of consideration to all New Common Stock/New Warrants. |
| Bridge Loan Claims/Bridge Loan Guaranty Claims | (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New | No change provided that the reserve in respect of the Bridge Lender Claims has been changed from a "strip" of consideration to all New Warrants. |

[7] *See* footnote 5, *supra*.

10

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| (collectively, "<u>Bridge Lender Claims</u>") | Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012) would be placed in reserve for ultimate distribution to Step One Lenders, Holder of Swap Claims, Step Two Lenders and/or Bridge Lenders; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Bridge Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. | |
| Senior Noteholder Claims | (i) a pro rata share of the distributable enterprise value allocable to Tribune, plus a pro rata share of the Initial Distributions otherwise allocable to the PHONES Notes Claims and the EGI-TRB LLC Notes Claims pursuant to applicable subordination provisions (in each case, in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants), less the amount of Cash necessary to ensure that all Holders of Other Non-Guarantor Debtor Claims are paid in full, in cash, including Postpetition Interest; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Senior Noteholder Claim elected not to transfer its state law avoidance claims to the Creditors' Trust. | No change. |
| Other Parent Claims | (i) a pro rata share of distributable value allocable to Tribune (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants); (ii) Distribution Trust Interests; and (iii) Creditors' Trust | No change |

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | Interests, unless the Holder of an Other Parent Claim elected not to transfer its state law avoidance claims to the Creditors' Trust. | |
| Other Non-Guarantor Debtor Claims | Payment in full, in Cash, including Postpetition Interest. | No change. |
| Other Guarantor Debtor Claims | (i) Cash equal to 8% of the allowed amount of the Other Guarantor Debtor Claim; and (ii) Distribution Trust Interests. | Instead of receiving a flat 8% Cash recovery as an Initial Distribution, each Holder of an Allowed Other Guarantor Debtor Claim will receive an Initial Distribution of Cash equal to (i) the percentage recovery ascribed to the applicable Other Guarantor Debtor as set forth on Exhibit C hereto, or (ii) in the event any Holder of an Allowed Other Guarantor Debtor Claim disputes the recovery percentage set forth in (i) above, such other percentage as determined by a Final Order.  Treatment is otherwise not changed. |
| EGI-TRB LLC Notes Claims | (i) no Initial Distribution; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of an EGI-TRB LLC Notes Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust.  Any distributions received by Holders of EGI-TRB LLC Notes Claims on account of trust interests will be allocated in accordance with the subordination provisions in the EGI-TRB LLC Notes. | No change. |
| PHONES Notes Claims | (i) no Initial Distribution; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a PHONES Notes Claim elected not to transfer its state law avoidance claims (if any) to the creditors' trust.  Any distributions received by Holders of PHONES Notes Claims on account of trust | No change. |

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | interests will be allocated in accordance with the subordination provisions in the PHONES Notes Indenture. | |
| Subordinated Securities Claims | (i) no Initial Distribution; (ii) Distribution Trust Interests; and (ii) Creditors' Trust Interests, unless the Holder of a Subordinated Securities Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. | No change. |

### B.   Modifications Implemented in the Amended Noteholder Plan

As explained in the Noteholder Memorandum of Law, in addition to modifying the Initial Noteholder Plan to address certain third party Confirmation objections, the modifications contained in the Amended Noteholder Plan provided for, among other things, the following:[8]

- Moving the resolution process for all Disputed General Unsecured Claims, other than those unsecured Claims that are disputed in connection with the LBO-Related Causes of Action, from the Litigation Trust to the Distribution Trust.  *See* Third Amended Noteholder Plan §§ 7.16.2, 7.16.15 and 8.1.

- Refining the federal income tax treatment of the Litigation Trust, Creditors' Trust and Distribution Trust.  *See* Third Amended Noteholder Plan §§ 5.17.12, 5.18.13 and 7.16.14.

- Providing that the CEO of Reorganized Tribune will only serve on the Board of Reorganized Tribune if such CEO's employment agreement so provides.  *See* Third Amended Noteholder Plan § 5.3.2.

- Refining certain indemnification provisions in connection with the Litigation Trust, the Creditors' Trust and the Distribution Trust.  *See* Third Amended Noteholder Plan §§ 5.17.10, 5.18.15 and 7.16.12.

- Clarifying the provisions for the prosecution of State Law Avoidance Claims by the Creditors' Trust and the transfer of certain causes of action commenced on behalf of Tribune's Estate to the Creditors' Trust.  *See* Third Amended Noteholder Plan §§ 5.15 and 5.18.2.

---

[8] Although the changes set forth in this Part B were first incorporated in the Amended Noteholder Plan, references indicate where such provisions appear in the Third Amended Noteholder Plan for ease of reference.

- Providing that Classes of Claims entitled to vote in which no Creditor voted are deemed to reject the Noteholder Plan as opposed to accept the Noteholder Plan. *See* Third Amended Noteholder Plan § 4.5.

- Clarifying that the Noteholder Plan is a single joint plan for all of the Debtors, but is not premised on substantive consolidation. *See* Third Amended Noteholder Plan § 5.1.

- Incorporating the Intercompany Claims Settlement. *See* Third Amended Noteholder Plan §§ 1.1.139, 3.2.11(b), 3.3.4(b), 3.4.8(b), 3.5.3(e) and 5.19.

- Clarifying the Reorganized Debtors' document retention responsibilities. *See* Third Amended Noteholder Plan §§ 5.17.15, 5.18.18, and 7.16.17.

- Reinstating certain officers, directors and employees rights to retain bonuses and equity based compensation. *See* Third Amended Noteholder Plan § 6.5.

- Clarifying Reorganized Tribune's indemnification obligations with respect to prepetition Claims of certain directors, officers and employees. *See* Third Amended Noteholder Plan §§ 6.5 and 6.7.

- Modifying the procedures pursuant to which the Noteholder Plan Proponents can seek to have reasonable fees and expenses of their professionals reimbursed. *See* Third Amended Noteholder Plan § 9.1.1.

C.    Modifications Implemented in the Second Amended Noteholder Plan

17.    Pursuant to the Second Amended Noteholder Plan, two primary modifications were made to the Amended Noteholder Plan.  First, changes were made in order to permit a significantly greater amount of equity value (in the form of New Common Stock and/or New Warrants) in Reorganized Tribune to be distributed to Creditors as of the Effective Date of the Noteholder Plan, while at the same time holding sufficient DEV in reserve to pay non-LBO Creditors in full, plus Postpetition Interest, in the event the Litigation Trust is successful in prosecuting the LBO-Related Causes of Action against the Senior Lenders.  Second, changes were made in order to enforce the Senior Loan Sharing Provisions contained in the Senior Loan Agreement such that Step Two Lenders will receive their Initial Distributions under the Noteholder Plan even if obligations incurred in connection with Step Two of the LBO are avoided and obligations incurred in connection with Step One are not avoided as a result of the LBO-Related Causes of Action.

14

18.    As a result of the modifications set forth initially in the Second Amended
Noteholder Plan, and carried over to the Third Amended Noteholder Plan, the Third Amended
Noteholder Plan provides for between 70.5% and 79.8% (assuming a DEV of $6.75 billion)[9,10] of
the equity value in Reorganized Tribune to be distributed to Creditors as of the Effective Date of
the Third Amended Noteholder Plan, whereas the Amended Noteholder Plan provided for
between 34.6% and 51.2% (assuming a DEV of $6.75 billion)[11,12] of the equity value in
Reorganized Tribune to be distributed to Creditors as of the Effective Date.

19.    Pursuant to the Third Amended Noteholder Plan, between 45.2% and 51.1%
(assuming a DEV of $6.75 billion)[13] of the Debtors' DEV will be initially distributed to Creditors
upon the Debtors' emergence from chapter 11.  In addition, as noted above, based on non-
material modifications to the reserve structure in the Noteholder Plan, between 70.5% and 79.8%
(assuming a DEV of $6.75 billion)[14] of the equity value of Reorganized Tribune will be
distributed to Creditors on the Effective Date, leaving only 20.2% to 29.5% (assuming a DEV of
$6.75 billion)[15] of the equity value of Reorganized Tribune held in reserve pending the outcome
of the LBO-Related Causes of Action.  To the extent the Bankruptcy Court determines that the

---

[9] The $6.75 billion DEV is the estimate upon which the Debtor/Committee/Lender Plan [ECF No. 7801] is based, with 8.4% of the DEV allocated to Tribune and 91.6% of the DEV allocated to its Subsidiaries (on a consolidated basis).  The ultimate determination of the amount of DEV as well as the allocation of such DEV as between Tribune and its Subsidiaries will be made by the Bankruptcy Court.  Recoveries by Creditors of Tribune and its Subsidiaries will depend on these determinations as well as the PHONES Notes Claims Resolution.

[10] The outcome of the PHONES Notes Claims Resolution will determine whether the higher or lower percentage will be distributed.

[11] The low end of the range assumed that in connection with Confirmation of the Noteholder Plan the Bankruptcy Court either (i) determined that the Step Two Lenders would not be entitled to share in Step One Lender distributions if Step Two Lender Claims were avoided but Step One Lender Claims were not avoided or (ii) deferred consideration of the issue.  The Third Amended Noteholder Plan now provides that Step Two Lenders will share in Step One Lender distributions in the event Step Two Lender Claims are avoided but Step One Lender Claims are not avoided.

[12] *See* footnote 10, *supra*.

[13] *See* footnote 10, *supra*.

[14] *See* footnote 10, *supra*.

[15] The outcome of the PHONES Notes Claims Resolution will determine whether the higher or lower percentage will be held in reserve.

actual DEV is greater than $6.75 billion (which the Noteholder Plan Proponents believe is the case), the percentage of equity distributed to Creditors as of the Effective Date would increase and the percentage of equity held in reserve would decrease correspondingly.

D. <u>Modifications Implemented in the Third Amended Noteholder Plan</u>

20.    Pursuant to the Third Amended Noteholder Plan, two additional primary modifications have been incorporated.  First, as noted in the chart in Part A, above, the Third Amended Noteholder Plan provides for the separate classification of the Swap Parent Claim and Swap Guaranty Claim from the Step One Senior Loan Claims and Step One Senior Loan Guaranty Claims, respectively.  Through this modification, the Initial Distributions to the Holder of the Swap Claims do not change and, thus, the Holder of the Swap Claims will still receive, as of the Effective Date of the Third Amended Noteholder Plan, its pro rata share of the Debtors' remaining DEV after taking into account (i) Initial Distributions to Holders of Senior Noteholder Claims, Other Parent Claims and Other Guarantor Debtor Claims and (ii) the reserves established to pay all non-LBO creditors in full, plus Postpetition Interest through December 8, 2012.

21.    The second primary modification contained in the Third Amended Noteholder Plan, also reflected in the chart in Part A above, provides for each Holder of an Allowed Other Guarantor Debtor Claim to receive (i) its "natural recovery" based on an entity-by-entity valuation prepared by the Debtors, which is premised on a $6.75 billion total DEV and the allocation of the total DEV among all of the Debtor entities, as opposed to a flat 8% Initial Distribution or (ii) to the extent disputed by any such Holder, such other recovery as may be determined by a Final Order.  The estimated Other Guarantor Debtor Claims Initial Distributions is reflected on <u>Exhibit C</u> hereto.  If and to the extent the Court ultimately determines that the DEV is higher than $6.75 billion, then the natural recovery to which each Holder of an Allowed

Other Guarantor Debtor Claim is entitled will increase accordingly.  While the Noteholder Plan Proponents do not believe this change was necessary, it has been made to resolve an objection by the DCL Proponents that the flat 8% recovery to Holders of Other Guarantor Debtor Claims violated provisions of the Bankruptcy Code.

     E.   <u>Modifications to be made to Noteholder Plan Supplement Documents</u>

     22.    In addition, the Noteholder Plan Proponents will be modifying the proposed Certificate of Incorporation included in the Plan Supplement to remove the provisions thereof that require the Reorganized Debtors' officers, directors and employees to cooperate with the Distribution Trust, Litigation Trust and Creditors' Trust as comparable provisions are contained in the Third Amended Noteholder Plan and applicable trust agreements.  Finally, the Noteholder Plan Proponents will be revising the Certificate of Incorporation for Reorganized Tribune to eliminate restrictions on the ability of the Reorganized Debtors' officers and directors to obtain the benefit of directors and officers liability insurance in connection with asserted violations of the foregoing cooperation provisions and to permit the size of Reorganized Tribune's board to be increased from seven (7) to nine (9) members.

<b><u>RELIEF REQUESTED</u></b>

     23.    By the Motion, the Noteholder Plan Proponents seek entry of an order determining that (i) the amendments that have been made to the Noteholder Plan are not material and adverse to any Class of Creditors or (ii) to the extent the amendments are material and adverse to a Class(es) of Creditors, based on such Class(es)' prior rejection of the Initial Noteholder Plan, such Class(es) shall be deemed to also reject the Third Amended Noteholder Plan.  In addition, the Noteholder Plan Proponents seek approval of the form of the Joint Notice, substantially in the form attached hereto as <u>Exhibit B</u>.

17

## BASIS FOR RELIEF REQUESTED

I.   **Modifications Made to the Noteholder Plan are Not Material and Adverse or, to the Extent Determined to be Material and Adverse, do Not Necessitate Resolicitation.**

24.     Pursuant to Bankruptcy Code section 1127(a), a plan proponent may modify a plan "at any time" prior to confirmation provided that such modifications comply with applicable classification, content, and disclosure requirements.  *See* 11 U.S.C. § 1127(a).  Section 1127(d) provides, in turn, that "any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection." 11 U.S.C. 1127(d).

25.     Where pre-confirmation changes to a plan of reorganization do not substantially and adversely alter a creditor's recoveries, resolicitation and supplemental disclosure are not required.  *See In re Am. Solar King Corp.*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) (internal citations omitted) ("If a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.").  Indeed, plan proponents need only provide creditors and equity holders notice and an opportunity to vote on a modified plan where the proposed changes "***adversely*** change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, [otherwise] it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan."  *See* Fed. R. Bankr. P. 3019 (emphasis added); 7 COLLIER ON BANKRUPTCY ¶ 1127.02[3] (Alan N. Reskick and Henry J. Sommer, eds., 16th ed. 2011) (noting that Bankruptcy Rule 3019 is intended to apply to "minor modifications").  Moreover, Bankruptcy Rule 3019 is "not to be enforced with blind routine [but] must instead be applied with an eye toward the fundamental principles of Chapter 11 … [A]

mechanical reading of Rules 3018 and 3019 would inhibit the give-and-take that occurs literally, on the courthouse steps, and 'frustrate a fundamental objective of Chapter 11 to promote fully negotiated consensual plans.'" *In re Sentinel Mgmt. Grp., Inc.*, 398 B.R. 281, 301 (Bankr. N.D.Ill. 2008) (citing *In re American Solar King Corp.*, 90 B.R. at 827, 825 n.33).

26.    In light of the foregoing, courts routinely allow plan proponents to make non-material modifications to a proposed plan without mandating additional disclosure and solicitation. *See In re G-I Holdings, Inc.*, 420 B.R. 216, 256 (D.N.J. 2009) (finding that only if a pre-confirmation modification is "material and adversely affect[s] the way creditors are treated, [does] § 1127 require a new disclosure statement and balloting of the amended plan"); *Enron Corp. v. the New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1117-18 (11th Cir. 2006) (finding that "the bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated"); *JM Convenience Corp. v. Plait Second Towing & Transport, Inc. (In re Split Second Towing & Transport Inc.)*, Case No. 08-11066, 2010 WL 3385482, at *4 (Bankr. M.D. Fla. August 26, 2010) (stating the same and noting that the policy behind the rule is to "prevent[] a plan proponent from pulling a bait and switch"); *In re Calpine Corp.*, No. 05-60200, 2007 WL 4565223, at *6 (Bankr. S.D.N.Y.  Dec. 19, 2007), *aff'd* 354 Fed Appx. 479 (2d Cir. 2009) (approving non-material plan modifications without mandating resolicitation).

27.    In determining whether a particular modification requires additional disclosure and solicitation of a particular claim or creditor, courts focus on the extent to which the proposed modification alters such creditor's treatment under the plan. *See* 9 COLLIER ON BANKRUPTCY ¶ 3019.01 (comparing a reduction in consideration or the elimination of a guaranty claim, which

generally constitute "adverse changes," with increased payments to a particular class that may

"impinge on the debtor's ability to perform").  Courts permit modification without affording

creditors the opportunity to re-cast their votes where such modification would not compel a

creditor to reconsider its acceptance of the plan.  *See In re Split Second Towing & Transport Inc.*,

2010 WL 3385484, at *4 (holding that the mandates of section 1127 did not preclude

confirmation on the grounds of insufficient notice where the objecting party had previously

rejected the plan and had been given ample opportunity to be heard, noting that the "notice and

lack of re-solicitation did not deprive [the objecting party] of any substantive rights it would

have had if the Bankruptcy Court had continued the confirmation hearing and ordered [the

debtor] to resolicit all the creditors."); *In re Sentinel Mgmt. Grp., Inc.,* 398 B.R. at 302

(approving modifications which affected an almost 2% reduction in the amount of certain

creditors' distributions under the plan, and holding that the affected creditors would "not suffer

any meaningful or material dilution of their pro rata share"); *In re Am. Solar King Corp.*, 90 B.R.

at 826 (approving modifications where the debtor modified the plan to properly render a class

unimpaired such that it would be deemed to have accepted the plan); *Cf. In re Concrete

Designers, Inc.*, 173 B.R. 354, 357-58 (Bankr. S.D. Ohio 1994) (requiring additional disclosure

and resolicitation where the proposed dividend to unsecured creditors was changed from (i) full

payment over five years or a lump sum payment of 40% to (ii) 80% over five years or a lump

sum payment of 50%).

28.     If a class of creditors rejects a plan, however, subsequent modifications that

negatively impact such creditors do not necessitate resolicitation because "a modification is

material if it so affects a creditor or interest holder who accepted the plan that such entity, if it

knew of the modification, would be likely to reconsider its acceptance."  *See In re Am. Solar*

*King Corp.*, 90 B.R. at 826 (holding that where the debtor modified the plan to properly render a

class unimpaired such that it would be deemed to accept, resolicitation of the other creditors was

unnecessary); *see also In re Armstrong World Indus.*, 348 B.R. 136, 148 (D. Del. 2006) (finding

that voting results, including previously rejecting parties deemed to reject, applied to a modified

plan).  The court in *In re Am. Solar King Corp.* further opined that if the plan modification at

issue is found to have a material impact on certain classes that previously voted to accept the

plan, "***these classes*** should be given an opportunity to change their votes," but that other

accepting classes will be deemed to accept the modified plan.  90 B.R. at 824 (emphasis added).

29.     Of the plan modifications set forth above, only a handful impact the treatment

and/or classification of Claims and thus could even potentially result in a material adverse

change:  (i) the change in the form of consideration to be distributed or reserved, as applicable, to

Holders of Step One Lender Claims, Swap Claims, Step Two Lender Claims and Bridge Lender

Claims; (ii) the resolution of the enforceability of loan sharing provisions in the Senior Loan

Agreement; (iii) classification of the Swap Claims; and (iv) treatment of the Other Guarantor

Debtor Claims.  For the reasons set forth below, however, these changes do not materially or

adversely affect any such Class of Creditors.  Moreover, to the extent the modifications to the

treatment of Other Guarantor Debtor Claims is determined to be a material adverse change, for

the reasons set forth below, the Noteholder Plan Proponents do not believe that resolicitation is

required on these facts.

A.   Change in Form of Consideration

30.     By the Third Amended Noteholder Plan, the Noteholder Plan Proponents have

modified the form of consideration to be distributed or reserved, as appropriate, on account of (i)

Step One Lender Claims, (ii) Swap Claims, (iii) Step Two Lender Claims, and (iv) Bridge

Lender Claims (collectively, the "Affected Senior Lender Classes").  Because the Court will determine the DEV of the Debtors' Estates in connection with Confirmation, the value of the Initial Distributions to be made to Holders of Claims in the Affected Senior Lender Classes, other than the Bridge Lender Classes, remains the same, but instead of receiving a "strip" of consideration, consisting of (x) Cash, (y) New Senior Secured Term Loan and (z) New Common Stock and New Warrants, such Holders will receive a distribution comprised entirely of New Common Stock and/or New Warrants.  The Bridge Lenders' Pro Rata allocation of the LBO Debt Reserve DEV, which will be transferred to the Distribution Trust Reserve, will likewise be in the form of New Common Stock and/or New Warrants.  Such a modification is not material and adverse and thus does not mandate additional disclosure and solicitation because courts have held that a distribution of equity does not "impose a materially greater risk" than a distribution of cash.  *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 232 (Bankr. D.N.J. 2000) (holding that "the allocation of equity proposed by the [plan]" did not "impose a materially greater risk to the dissenting class" than the distribution of cash to a similarly situated creditor class); *In re Hawaiian Telecom Comm'ns, Inc.*, 430 B.R. 564, 605 (Bankr. D. Hawaii 2009) (same). Therefore, the fact that the Third Amended Noteholder Plan provides Holders of Claims in the Affected Senior Lender Classes with Common Stock and/or New Warrants rather than a "strip" of consideration does not materially and adversely alter their treatment such that additional disclosure and/or resolicitation are required.

   B.  Enforcement of Senior Loan Sharing Provisions

        31.     The Initial Noteholder Plan contemplated two scenarios regarding the enforceability of loan sharing provisions in the Senior Loan Agreement.  First, if the loan sharing provisions were found to be enforceable prior to the Initial Distribution Date, the Initial

Noteholder Plan provided that an Initial Distribution would be made on account of Step Two

Lender Claims.  Second, if no determination had been made or if the loan sharing provisions

were deemed not to apply, the Initial Noteholder Plan provided that the value that would have

constituted the Step Two Lenders' Initial Distribution would be put in reserve for ultimate

allocation to the Step One Lenders[16] and/or the Step Two Lenders in accordance with the

Litigation Distribution Orders.  *See* Initial Noteholder Plan §§ 1.1.256, 3.2.4(c), 3.4.4(c).  By

contrast, the Third Amended Noteholder Plan treats the loan sharing provisions as enforceable,

thus entitling Step Two Lenders to an Initial Distribution and arguably depriving the Step One

Lenders of their ability to contest the enforceability of the loan sharing provisions.  *See* Third

Amended Noteholder Plan §§ 1.1.266, 3.2.5(c), 3.4.5(c).

      32.     The modifications to the Noteholder Plan in this regard do not constitute a

material modification.  As an initial matter, all Creditors – including the Step One Lenders –

were on notice that the Noteholder Plan could be modified to incorporate a resolution of the

enforceability of the loan sharing provisions in response to objections made by the DCL Plan

Proponents that the Noteholder Plan would excessively delay creditor recoveries.  *See* Initial

Noteholder Plan §§ 1.1.256, 3.2.4(c), 3.4.4(c); Noteholder Memorandum of Law at p. 67 (stating

that "substantially all" of the value allocated to the LBO Lenders under the Noteholder Plan "can

be distributed to the Senior Lenders on the Effective Date if the Senior Loan Claims Sharing

Resolution is resolved.").  Moreover, no party in interest has appeared to contest the

enforceability of the loan sharing provisions either before or during the 13-day confirmation

hearing conducted in March and April.  Indeed, the Senior Lenders have already agreed among

themselves to enforce the loan sharing provisions and have communicated as much to this Court,

---

[16] The Step One Lenders included the Holder of the Swap Claims under the Initial Noteholder Plan.

thus negating any argument that enforcing the sharing provisions and providing Step Two

Lenders with an Initial Distribution could constitute a material adverse change.  *See* Transcript of

April 14, 2011 Hearing at p. 30-31.[17]  Accordingly, the Noteholder Plan Proponents do not

believe additional disclosure or resolicitation of any affected Class(es) is required on account of

amendments made to the Noteholder Plan to enforce the loan sharing provisions.

C.    Classification of Swap Claims

33.      The Swap Claims were initially classified as Step One Lender Claims for all

purposes under the Noteholder Plan, including distributions.  *See* Noteholder Plan §§ 1.1.252,

1.1.253, 3.2.3(b), 3.4.3(b).  The Third Amended Noteholder Plan separately classifies the Swap

Claims (comprised of the Swap Parent Claim and the Swap Guaranty Claims) from the Step One

Lender Claims, consistent with the legal objections raised by the Noteholder Plan Proponents in

the Amended Objection of the Noteholder Plan Proponents to Confirmation of the

Debtor/Committee/Lender Plan (Part I) [ECF No. 8026] (the "Objection").  *See* Third Amended

Noteholder Plan §§ 1.1.262, 1.1.263, 1.1.276, 1.1.278, 1.1.279, 1.1.280, 3.2.4, 3.4.4.  By

separately classifying the Swap Claims from the Step One Lender Claims, the Noteholder Plan

Proponents also seek to clarify their position that the Swap Claims should *not* benefit from the

subordination provisions in the PHONES Notes Indenture and the EGI-TRB LLC Notes

(although the Third Amended Noteholder Plan does continue to defer consideration of the issue).

To the extent the assertions made on page 216 of the Objection are contrary to the Noteholder

Plan Proponents' position as articulated herein, such assertions were erroneous and should not be

---

[17]      MR SOTTILE:  [O]n the issue of sharing among the senior lenders pursuant to the terms of the
credit agreement, parties are now in agreement that sharing would apply as between the Step 1 and
Step 2 lenders, irrespective of avoidance of Step 2, so that's not an issue that the Court need
address.  No one is disputing that the sharing provisions would apply in that circumstance.

considered an admission by the Noteholder Plan Proponents that the Holder of the Swap Claims is entitled to the benefit of subordination.[18]

34.     Although the Swap Claims have now been reclassified at Tribune and the remaining Guarantor Debtors, the *value* of the Initial Distributions provided to the Swap Claims under the Third Amended Noteholder Plan has not changed.  The consideration given to the Holder of the Swap Claims, consistent with the changes in consideration given to the Senior Lenders, has been changed from a strip of consideration to an all equity-based recovery.  For the reasons set forth above, however, modifying the form but not the value of the consideration given to the Swap Claims does not constitute a material adverse change and thus does not require resolicitation.  Moreover, the Initial Noteholder Plan deferred the question of whether Step One Senior Loan Claims (including, at the time, the Swap Parent Claim) would receive the benefit of subordination provisions contained in the PHONES Notes Indenture and the EGI-TRB LLC Notes.  *See* Initial Noteholder Plan §§ 3.2.8(c), 3.2.9(c).  The Third Amended Plan similarly defers whether the Step One Senior Loan Claims and Swap Parent Claim (as well as the Step Two Senior Loan Claims and Bridge Loan Claims) are entitled to the benefit of these same subordination provisions.  *See* Third Amended Noteholder Plan §§ 3.2.9(c), 3.2.10(c).  In any event, the Holder of the Swap Claims previously voted to reject the Noteholder Plan and, therefore, should be deemed to reject the Third Amended Noteholder Plan without the need for further resolicitation.  *See e.g., In re Armstrong World Indus.*, 348 B.R. at 148.

---

[18] On page 216 of the Objection, the Noteholder Plan Proponents stated that "[I]nitial allocations to the PHONES Notes Claims and the EGI-TRB LLC Notes Claims would be reallocated on a pro rata basis to Senior Noteholder Claims and the Swap Claim, but not to Other Parent Claims because such claims are not entitled to the benefit of the subordination provisions according to the [t]erms of the PHONES Notes Indenture and EGI-TRB LLC Notes."  *See* Objection at 216.

D.  Treatment of Other Guarantor Debtor Claims

35.     Under the Initial Noteholder Plan, Holders of Other Guarantor Debtor Claims

were to receive (i) a flat 8% cash recovery and (ii) Distribution Trust Interests.  Initial

Noteholder Plan §§ 1.1.186, 3.4.6(c).  In response to objections that the flat 8% recovery

afforded Holders of Other Guarantor Debtor Claims constituted an impermissible "*de facto* or

'deemed' substantive consolidation,"[19] the Third Amended Noteholder Plan alters the treatment

of Other Guarantor Debtor Claims to provide Holders of such Claims with an Initial Distribution

equal to what their natural recovery would be at each respective Guarantor Debtor or such other

recovery as determined by Final Order.  Third Amended Noteholder Plan §§ 1.1.194, 3.4.7(c).  A

chart setting forth estimated Other Guarantor Debtor Claims Initial Distributions is attached

hereto as Exhibit C.

36.     While the attached chart reflects that the recoveries for all Classes of Other

Guarantor Debtor Claims have been reduced from 8% to as low as 0%, the Noteholder Plan

Proponents do not believe that resolicitation of the Other Guarantor Debtor Claims is required.

Of the 61 Classes of Other Guarantor Debtor Claims, 47 voted to affirmatively reject the

Noteholder Plan, and 13 cast no vote and were thus subsequently deemed to reject the

Noteholder Plan by its amended terms.  *See* Final Voting Tabulation Report [ECF No. 7918].

Because these Classes voted to reject or were deemed to reject the Initial Noteholder Plan and

because the treatment of such Classes has been adversely affected by amendments to the Initial

Noteholder Plan, such Classes should be deemed to reject the Third Amended Noteholder Plan.

37.     One Class of Other Guarantor Debtor Claims voted to accept the Initial

Noteholder Plan, by virtue of the vote of a single Creditor holding a $47.10 Claim in Class 93G.

---

[19] Joint Objection of the Debtors, the Official Committee of Unsecured Creditors, Angelo, Gordon & Co. L.P., Oaktree Capital Management, L.P. and JPMorgan Chase Bank, N.A. to Confirmation of the Noteholder Plan at p. 20 [ECF No. 8011].

Both the Initial Noteholder Plan and the Third Amended Noteholder Plan, however, include a *de minimis* distribution exception, which states in relevant part that "[n]o distributions shall be made on account of an Allowed Claim if the amount to be distributed to the specific Holder of an Allowed Claim on the applicable Distribution Date has an economic value of less than $25." Initial Noteholder Plan § 7.13; Third Amended Noteholder Plan § 7.13.  As stated above, the accepting Creditor in Class 93G has asserted a Claim against Tribune CNLBC, LLC for $47.10. Even though proposed Initial Distributions at Tribune CNLBC, LLC have been reduced from a flat 8% to 4.4% on account of the value attributable to such Guarantor Debtor, recoveries would have had to *exceed* 53% (i.e., economic value greater than or equal to $25) for the accepting Creditor to have received *any* Initial Distribution under *any* iteration of the Noteholder Plan. Accordingly, the treatment of the accepting Creditor under the Third Amended Plan is exactly the same as it was under the Initial Noteholder Plan – (i) an Initial Distribution of $0, and (ii) Distribution Trust Interests.  Pursuant to the applicable legal standards discussed above, resolicitation is only required when a proposed modification "materially and adversely change[s]" the way a creditor is treated.[20]  *In re New Power Co.*, 438 F.3d at 1117-18.  Because the Third Amended Noteholder Plan has no affect whatsoever on the way the accepting Creditor in Class 93G will be treated, the Noteholder Plan Proponents submit that resolicitation is not required.

## II.    The Form of Joint Notice is Appropriate and Should be Approved

38.    By the Motion, the Noteholder Plan Proponents also seek this Court's approval of the form of proposed Joint Notice attached hereto as <u>Exhibit B</u>.  The Joint Notice advises parties

---

[20]    Additionally, because under applicable case law, resolicitation is only required if a material change would cause a creditor to reconsider its vote, the Creditors in Class 93G who did not vote, need not be resolicited.  *See In re Am. Solar King Corp.*, 90 B.R. at 825 (quoting S. Rep. No. 989, 95th Cong., 2d Sess 124 (1978), U.S. Code Cong. & Admin News 1978, p. 5910) (holding that "if a modification materially and adversely affects any of [a creditor or equity holder's] interests, they must be afforded an opportunity to change their vote").

in interest that, among other things, (a) the Court is considering confirmation of both the

Debtor/Committee/Lender Plan and the Noteholder Plan (together, the "Competing Plans"), (b)

the Court has concluded both the evidentiary and legal arguments concerning confirmation of the

Competing Plans and has set a briefing schedule and date for closing arguments, (c) both the

Noteholder Plan Proponents and the DCL Plan Proponents have made modifications to their

respective plans, with a reference to the ECF filings describing the latest respective plan

amendments, (d) while the DCL Plan Proponents do intend to resolicit certain Classes of Claims,

modifications to the Noteholder Plan does not require resolicitation and (e) the Court has

approved procedures for the resolicitation to be conducted in connection with the

Debtor/Committee/Lender Plan.  The Noteholder Plan Proponents believe that provision of the

Joint Notice is necessary and appropriate to ensure that all parties are advised as to the current

status of the Competing Plan process and the contested confirmation proceedings.  Accordingly,

the Noteholder Plan Proponents believe this Joint Notice should be: (i) filed; (ii) served on the

2002 List; and (iii) distributed to all creditors whose votes were solicited in connection with the

Competing Plans; the expense of which distribution shall be borne by the Debtors' Estates.

     39.     In addition, upon approval of this Motion, the Noteholder Plan Proponents intend

to: (i) file the Noteholder Notice, substantially in the form attached hereto as Exhibit A; and (ii)

serve the Noteholder Notice on the 2002 List.  The Noteholder Notice is intended to provide

parties in interest with a cumulative understanding of the primary amendments made to the

Noteholder Plan.  Specifically, the Noteholder Notice explains, in summary form, the

modifications contained in the Third Amended Noteholder Plan from the versions of the

Noteholder Plan previously filed.  While plan proponents are not required to provide parties in

interest with a detailed summary of the amendments to a plan, the Noteholder Plan Proponents

believe that providing Creditors with the Noteholder Notice will prevent creditor confusion and enable all parties in interest to readily identify the primary modifications made to the Noteholder Plan.

## NOTICE

40.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the proponents of the Debtor/Committee/Lender Plan; (iii) the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for the Debtor's post-petition loan facility; (v) Holders of Claims in all Other Guarantor Debtor Claims classes as of the Voting Record Date; (vi) Holder(s) of Swap Claims as of the Voting Record Date; and (vii) all parties having requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Noteholder Plan Proponents submit that no other or further notice is necessary.

## NO PRIOR REQUEST

41.     No prior request for the relief sought herein has been made to this or to any other Court.

## **CONCLUSION**

WHEREFORE, the Noteholder Plan Proponents respectfully request that the Bankruptcy Court (I) enter an order, substantially in the form attached hereto as Exhibit D, (a) determining that (i) the amendments that have been made to the Initial Noteholder Plan are not material and adverse to any Class of Creditors or (ii) to the extent the amendments are material and adverse to any Class(es) of Creditors, based on such Class(es)' prior rejection of the Initial Noteholder Plan, such Class(es) shall be deemed to also reject the Third Amended Noteholder Plan, (b) approving the form of Joint Notice attached hereto as Exhibit B, and (c) directing that the Joint Notice be (x) filed, (y) served on the 2002 List, and (z) distributed to all creditors whose votes were solicited in connection with the Competing Plans; the expense of which distribution shall be borne by the Debtors' Estates, and (II) grant the Noteholder Plan Proponents such other relief as the Court may deem just, proper and equitable.

Dated: April 25, 2011

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, NY  10036
(212) 872-1000

*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.

William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

Signature Page for Noteholder Plan Proponents' Motion in Connection with Amendments to the
Noteholder Plan

McCARTER & ENGLISH, LLP

David J. Adler

245 Park Avenue

New York, NY 10167

212-609-6800

McCARTER & ENGLISH, LLP

/s Katharine L. Mayer

Katharine L. Mayer (I.D. No. 3758)

Renaissance Centre

405 N. King Street

Wilmington, DE 19801

302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

Signature Page for Noteholder Plan Proponents' Motion in Connection with Amendments to the Noteholder Plan

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
/s Matthew B. Stein_____
David S. Rosner
Sheron Korpus
Matthew B. Stein
1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700
Fax:  (212) 506-1800

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Tel:  (302) 429-1900
Fax:  (302) 429-8600

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor*
*Indenture Trustee for certain series of Senior Notes*

Signature Page for Noteholder Plan Proponents' Motion in Connection with Amendments to the
Noteholder Plan

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC

_____
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

Signature Page for Noteholder Plan Proponents' Motion in Connection with Amendments to the Noteholder Plan

# Exhibit A to Motion

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re )<br><br>TRIBUNE COMPANY, *et al.*,[1] )<br><br>Debtors. )<br> ) | Chapter 11<br>Case No. 08-13141 (KJC)<br>Jointly Administered |

**NOTICE OF FILING OF THIRD AMENDED JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON
BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK
TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR
INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW
DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY
AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF
SENIOR NOTES, AND WILMINGTON TRUST COMPANY, IN ITS
CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES**

---

[1]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WA TL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WL VI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

**PLEASE TAKE NOTICE** that on April 25, 2011, Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius"), Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of senior notes ("Deutsche Bank"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of senior notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES notes ("Wilmington Trust Company" and, collectively with Aurelius, Deutsche Bank, Law Debenture and Wilmington Trust, the "Noteholder Plan Proponents") filed the Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes (the "Third Amended Noteholder Plan").[2]

This Notice is being provided to explain, in summary form, the primary modifications contained in the Third Amended Noteholder Plan as compared to the prior versions of the Noteholder Plan previously filed on: (i) December 9, 2010 [ECF No. 7127] (the "Initial Noteholder Plan"), (ii) February 25, 2011 [ECF No. 8169] (the "Amended Noteholder Plan") and (iii) March 28, 2011 [ECF No. 8509] (the "Second Amended Noteholder Plan"). Where the context requires, the term "Noteholder Plan" refers to the applicable version of such plan. The Third Amended Noteholder Plan, like the Amended Noteholder Plan and the Second Amended Noteholder Plan, has been filed in order to: (i) address or resolve confirmation objections filed or

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Third Amended Noteholder Plan.

asserted by various parties in interest; (ii) address or resolve concerns that were communicated to the Noteholder Plan Proponents outside the context of formal confirmation objections; (iii) make clarifying changes to the Noteholder Plan; and (iv) make certain changes to more easily facilitate the post-Effective Date administration of the Noteholder Plan.

While the Noteholder Plan Proponents have filed black-lined versions of each iteration of the Noteholder Plan with the Bankruptcy Court and, in connection with certain modifications, filed a notice with the Bankruptcy Court explaining such modifications, this Notice is intended to provide parties in interest with a cumulative understanding of the primary modifications made to the Noteholder Plan from the Initial Noteholder Plan to the Third Amended Noteholder Plan. The modifications discussed herein are for information purposes only and are not intended to supersede the provisions of the Third Amended Noteholder Plan or constitute a resolicitation thereof. Indeed, the Bankruptcy Court has determined that either (i) the modifications that have been made to the Initial Noteholder Plan are not material and adverse to any Class of Creditors or (ii) to the extent the amendments are material and adverse to a Class(es) of Creditors, based on such Class(es)' prior rejection of the Initial Noteholder Plan, such Class(es)' shall be deemed to also reject the Third Amended Noteholder Plan. Accordingly, **THE NOTEHOLDER PLAN PROPONENTS ARE NOT RESOLICITING VOTES ON THE NOTEHOLDER PLAN**.

Copies of the Third Amended Noteholder Plan and a cumulative blackline reflecting modifications from the Initial Noteholder Plan to the Third Amended Noteholder Plan may be: (i) obtained free of charge from Epiq Bankruptcy Solutions, LLC's ("Epiq") dedicated website related to the Debtors' Chapter 11 Cases (http://chapter11.epiqsystems.com/tribune) or by telephoning Epiq at (646) 282- 2400; (ii) inspected during regular business hours at the Office of the Clerk of the Bankruptcy Court, 3rd Floor, 824 Market Street, Wilmington, DE 19801; or (iii)

viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

This Notice is divided into four sections. The first section contains a chart that sets forth modifications, if any, to the classification and treatment of Claims against the Debtors from the Initial Noteholder Plan to the Third Amended Noteholder Plan. The second section summarizes certain changes made to the Initial Noteholder Plan as reflected in the Amended Noteholder Plan. The third section summarizes certain changes made to the Amended Noteholder Plan as reflected in the Second Amended Noteholder Plan. Finally, the fourth section summarizes certain changes made to the Second Amended Noteholder Plan as reflected in the Third Amended Noteholder Plan:[3]

I. **Changes in Classification and Treatment of Claims from Initial Noteholder Plan to Third Amended Noteholder Plan**[4]

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| Step One Senior Loan Claims/Step One Senior Loan Guaranty | (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after | The value of the Initial Distributions to the Step One Lenders remains the same; *provided*, that the form of the Initial Distributions has been changed from a "strip" of consideration to all New Common Stock/New Warrants. |

[3] Portions of this Notice are repetitive of discussions contained in the (i) Memorandum of Law of Noteholder Plan Proponents (I) in Support of Confirmation of the Noteholder Plan and (II) in Response to Objections to the Noteholder Plan [ECF No. 8171] (the "Noteholder Memorandum of Law") and (ii) Notice of Filing of Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [ECF No. 8509] (the "Second Amended Plan Notice"), but are provided herein for ease of reference for parties in interest.

[4] All estimated recoveries are based on the Debtors' asserted distributable enterprise value ("DEV") for the Debtors of $6.75 billion, with such distributable enterprise value allocated 8.4% to Tribune and 91.6% to Tribune's subsidiaries (on a consolidated basis). Estimated recoveries are also dependant on the outcome of the PHONES Notes Claims Resolution. The Noteholder Plan Proponents believe the actual DEV is materially higher than $6.75 billion and, in that regard, have submitted the Rebuttal Report to Expert Valuation Report Submitted by Lazard Frères & Co. LLC prepared by Raymond James, challenging the $6.75 billion DEV.

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| Claims (collectively, "Step One Lender Claims") | accounting for (x) Initial Distributions in respect of non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step One Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions: 34.2% - 38.7%. | In addition, based on the enforcement of the loan sharing provisions of the Senior Loan Agreement, the Step One Lenders will no longer have a contingent interest in value that was originally reserved for Step Two Lender Claims pending the determination of the enforcement of such loan sharing provisions. Estimated recovery on account of Initial Distributions: 34.1%[5] to 38.7%. |
| Swap Parent Claim/Swap Guaranty Claims (collectively, "Swap Claims") | The Swap Parent Claim and Swap Guaranty Claims were classified as a Step One Senior Loan Claim and Step One Senior Loan Guaranty Claims, respectively, and were to receive the treatment afforded to Step One Lender Claims. Estimated recovery on account of Initial Distributions: 34.2% - 38.7%. | The value of the Initial Distributions to the Holder of the Swap Claims remains the same; *provided*, that the form of the Initial Distribution has been changed from a "strip" of consideration to all New Common Stock/New Warrants. The Swap Claims are now separately classified from the Step One Lender Claims. Estimated recovery on account of Initial Distributions: 34.1%[6]-38.7%. |
| Step Two Senior Loan Claims/Step Two Senior Loan Guaranty Claims (collectively, "Step Two Lender Claims") | If the loan sharing provisions contained in Senior Loan Agreement were enforced: (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus | Under the Third Amended Noteholder Plan, the loan sharing provisions contained in the Senior Loan Agreement are deemed to be enforceable; accordingly, holders of Step Two Lender Claims will receive: (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves |

---

[5] Estimated low-end Initial Distribution recovery percentage has decreased slightly after taking into account higher reserve necessary to provide for satisfaction in full of Other Guarantor Debtor Claims based on revisions to the treatment of such Creditor Classes.

[6] *See* footnote 5, *supra*.

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step Two Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions if loan sharing provisions were enforced: 34.2% - 38.7%. | sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step Two Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions: 34.1%[7] -38.7%. |
| | If the loan sharing provisions were not enforced or if consideration of the enforceability of the sharing provisions was deferred:  the value of the Initial Distributions otherwise allocable to the Step Two Lenders would have been placed in reserve. Estimated recovery on account of Initial Distributions if loan sharing provisions were not enforced or if consideration of the enforceability of the loan sharing provisions was deferred: 0%. | With enforcement of the loan sharing provisions, the value of the Initial Distributions to the Step Two Lenders in connection with such enforcement remains the same; *provided*, that the form of the Initial Distribution has been changed from a "strip" of consideration to all New Common Stock/New Warrants. |
| Bridge Loan Claims/Bridge Loan Guaranty Claims (collectively, "Bridge Lender Claims") | (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012) would be placed in reserve for ultimate distribution to Step One Lenders, Holder of Swap Claims, Step Two Lenders and/or Bridge Lenders; (ii) | No change provided that the reserve in respect of the Bridge Lender Claims has been changed from a "strip" of consideration to all New Warrants. |

---

[7] *See* footnote 5, *supra*.

6

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Bridge Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. | |
| Senior Noteholder Claims | (i) a pro rata share of the distributable enterprise value allocable to Tribune, plus a pro rata share of the Initial Distributions otherwise allocable to the PHONES Notes Claims and the EGI-TRB LLC Notes Claims pursuant to applicable subordination provisions (in each case, in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants), less the amount of Cash necessary to ensure that all holders of Other Non-Guarantor Debtor Claims are paid in full, in Cash, including Postpetition Interest; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Senior Noteholder Claim elected not to transfer its state law avoidance claims to the Creditors' Trust. | No change. |
| Other Parent Claims | (i) a pro rata share of distributable value allocable to Tribune (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of an Other Parent Claim elected not to transfer its state law avoidance claims to the Creditors' Trust. | No change |
| Other Non-Guarantor Debtor Claims | Payment in full, in Cash, including Postpetition Interest. | No change. |
| Other Guarantor Debtor Claims | (i) Cash equal to 8% of the allowed amount of the Other Guarantor Debtor Claim; and (ii) Distribution Trust | Instead of receiving a flat 8% Cash recovery as an Initial Distribution, each Holder of an Allowed Other |

7

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | Interests. | Guarantor Debtor Claim will receive an Initial Distribution of Cash equal to (i) the percentage recovery ascribed to the applicable Other Guarantor Debtor as set forth on <u>Exhibit A</u> hereto, or (ii) in the event any Holder of an Allowed Other Guarantor Debtor Claim disputes the recovery percentage set forth in (i) above, such other percentage recovery as determined by a Final Order. Treatment is otherwise not changed. |
| EGI-TRB LLC Notes Claims | (i) no Initial Distributions; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of an EGI-TRB LLC Notes Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Any distributions received by holders of EGI-TRB LLC Notes Claims on account of trust interests will be allocated in accordance with the subordination provisions in the EGI-TRB LLC Notes. | No change. |
| PHONES Notes Claims | (i) no Initial Distribution; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a PHONES Notes Claim elected not to transfer its state law avoidance claims (if any) to the creditors' trust. Any distributions received by holders of PHONES Notes Claims on account of trust interests will be allocated in accordance with the subordination provisions in the PHONES Notes indenture. | No change. |
| Subordinated Securities Claims | (i) no Initial Distributions; (ii) Distribution Trust Interests; and (ii) Creditors' Trust Interests, unless the Holder of a Subordinated Securities Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. | No change. |

II.    **Amendments Implemented in Amended Noteholder Plan**

As explained in the Noteholder Memorandum of Law, in addition to modifying the Initial Noteholder Plan to address certain third party confirmation objections, the modifications contained in the Amended Noteholder Plan provided for, among other things, the following:[8]

- Moving the resolution process for all Disputed General Unsecured Claims, other than those unsecured Claims that are disputed in connection with the LBO-Related Causes of Action, from the Litigation Trust to the Distribution Trust. *See* Third Amended Noteholder Plan §§ 7.16.2, 7.16.15 and 8.1.

- Refining the federal income tax treatment of the Litigation Trust, Creditors' Trust and Distribution Trust. *See* Third Amended Noteholder Plan §§ 5.17.12, 5.18.13 and 7.16.14.

- Providing that the CEO of Reorganized Tribune will only serve on the Board of Reorganized Tribune if such CEO's employment agreement so provides. *See* Third Amended Noteholder Plan § 5.3.2.

- Refining certain indemnification provisions in connection with the Litigation Trust, the Creditors' Trust and the Distribution Trust. *See* Third Amended Noteholder Plan §§ 5.17.10, 5.18.15 and 7.16.12.

- Clarifying the provisions for the prosecution of State Law Avoidance Claims by the Creditors' Trust and the transfer of certain causes of action commenced on behalf of Tribune's Estate to the Creditors' Trust. *See* Third Amended Noteholder Plan §§ 5.15 and 5.18.2.

- Providing that Classes of Claims entitled to vote in which no Creditor voted are deemed to reject the Noteholder Plan as opposed to accept the Noteholder Plan. *See* Third Amended Noteholder Plan § 4.5.

- Clarifying that the Noteholder Plan is a single joint plan for all of the Debtors, but is not premised on substantive consolidation. *See* Third Amended Noteholder Plan § 5.1.

- Incorporating the Intercompany Claims Settlement. *See* Third Amended Noteholder Plan §§ 1.1.139, 3.2.11(b), 3.3.4(b), 3.4.8(b), 3.5.3(e) and 5.19.

- Clarifying the Reorganized Debtors' document retention responsibilities. *See* Third Amended Noteholder Plan §§ 5.17.15, 5.18.18, and 7.16.17.

---

[8] Although the changes set forth in this section II were first incorporated in the Amended Noteholder Plan, references indicate where such provisions appear in the Third Amended Noteholder Plan for ease of reference.

- Reinstating certain officers, directors and employees rights to retain bonuses and equity based compensation. *See* Third Amended Noteholder Plan § 6.5.

- Clarifying Reorganized Tribune's indemnification obligations with respect to prepetition Claims of certain directors, officers and employees. *See* Third Amended Noteholder Plan §§ 6.5 and 6.7.

- Modifying the procedures pursuant to which the Noteholder Plan Proponents can seek to have reasonable fees and expenses of their professionals reimbursed. *See* Third Amended Noteholder Plan § 9.1.1.

**III.    Amendments Implemented in Second Amended Noteholder Plan**

Pursuant to the Second Amended Noteholder Plan, two primary modifications were made to the Amended Noteholder Plan. First, changes were made in order to permit a significantly greater amount of equity value (in the form of New Common Stock and/or New Warrants) in Reorganized Tribune to be distributed to Creditors as of the Effective Date of the Noteholder Plan, while at the same time holding sufficient DEV in reserve to pay Non-LBO Creditors in full, plus Postpetition Interest, in the event the Litigation Trust is successful in prosecuting the LBO-Related Causes of Action against the Senior Lenders. Second, changes were made in order to enforce the Senior Loan Sharing Provisions contained in the Senior Loan Agreement such that Step Two Lenders will receive their Initial Distributions under the Noteholder Plan even if obligations incurred in connection with Step Two of the LBO are avoided and obligations incurred in connection with Step One are not avoided as a result of the LBO-Related Causes of Action.

As a result of the modifications set forth initially in the Second Amended Noteholder Plan and carried over to the Third Amended Noteholder Plan, the Third Amended Noteholder

Plan provides for between 70.5% and 79.8% (assuming a DEV of $6.75 billion)[9,10] of the equity value in Reorganized Tribune to be distributed to Creditors as of the Effective Date of the Third Amended Noteholder Plan, whereas the Amended Noteholder Plan provided for between 34.6% and 51.2% (assuming a DEV of $6.75 billion)[11,12] of the equity value in Reorganized Tribune to be distributed to Creditors as of the Effective Date.

Pursuant to the Third Amended Noteholder Plan, between 45.2% and 51.1% (assuming a DEV of $6.75 billion)[13] of the Debtors' DEV will be initially distributed to Creditors upon the Debtors' emergence from chapter 11.  In addition, as noted above, based on non-material modifications to the reserve structure in the Noteholder Plan, between 70.5% and 79.8% (assuming a DEV of $6.75 billion)[14] of the equity value of Reorganized Tribune will be distributed to Creditors on the Effective Date, leaving only 20.2% to 29.5% (assuming a DEV of $6.75 billion)[15] of the equity value of Reorganized Tribune held in reserve pending the outcome of the LBO-Related Causes of Action.  To the extent the Bankruptcy Court determines that the actual DEV is greater than $6.75 billion (which the Noteholder Plan Proponents believe is the

---

[9] The $6.75 billion DEV is the estimate upon which the Debtor/Committee/Lender Plan [ECF No. 7801] is based, with 8.4% of the DEV allocated to Tribune and 91.6% of the DEV allocated to its Subsidiaries (on a consolidated basis).  The ultimate determination of the amount of DEV as well as the allocation of such DEV as between Tribune and its Subsidiaries will be made by the Bankruptcy Court.  Recoveries by Creditors of Tribune and its Subsidiaries will depend on these determinations as well as the PHONES Notes Claims Resolution.

[10] The outcome of the PHONES Notes Claims Resolution will determine whether the higher or lower percentage will be distributed.

[11] The low end of the range assumed that; in connection with Confirmation of the Noteholder Plan, the Bankruptcy Court either (i) determined that the Step Two Lenders would not be entitled to share in Step One Lender distributions if Step Two Lender Claims were avoided but Step One Lender Claims were not avoided or (ii) deferred consideration of the issue.  The Third Amended Noteholder Plan provides that Step Two Lenders will share in Step One Lender distributions even when Step Two Lender Claims are avoided but Step One Lender Claims are not avoided.

[12] *See* footnote 10, *supra*.

[13] *See* footnote 10, *supra*.

[14] *See* footnote 10, *supra*.

[15] The outcome of the PHONES Notes Claims Resolution will determine whether the higher or lower percentage will be held in reserve.

case), the percentage of equity distributed to Creditors as of the Effective Date would increase and the percentage of equity held in reserve would decrease correspondingly.

For example, if the Bankruptcy Court determines that the DEV is $8.00 billion, between 51.5% and 56.5%[16] of the Debtors' DEV will be initially distributed to Creditors upon the Debtors' emergence from chapter 11.  In addition, at an $8.00 billion DEV, based on non-material modifications to the reserve structure in the Noteholder Plan, between 73.9% and 81.1%[17] of the equity value of Reorganized Tribune will be distributed to Creditors as of the Effective Date, leaving only 18.9% to 26.1%[18] of the equity value of Reorganized Tribune held in reserve pending the outcome of the LBO-Related Causes of Action.

The following charts compare the initial allocation of equity value in Reorganized Tribune as of the Effective Date among Creditors and the reserves established under the Amended Noteholder Plan and the current version of the Noteholder Plan, respectively, based on (i) an illustrative DEV for the Debtors of $6.75 billion and $8.00 billion with such DEV allocated 8.4% to Tribune and 91.6% to Tribune's subsidiaries (on a consolidated basis) and (ii) the outcome of the PHONES Notes Claims Resolution.

---

[16] *See* footnote 10, *supra*.

[17] *See* footnote 10, *supra*.

[18] *See* footnote 15, *supra*.



## Initial Allocation of Equity (Low PHONES)*

**Legend:**
- Non-LBO Creditors Debt Reserve
- Non-LBO Creditors – Initial Distribution
- Bridge Loan Claims – Reserve
- Step Two Lender Claims – Initial Distribution
- Swap Claims - Initial Distribution
- Step One Lender Claims – Initial Distribution

*\* Percentages assume that all initial distributions are in the form of Class A New Common Stock and the Warrants allocable to the Distribution Trust on an as-converted basis.*



**Initial Allocation of Equity (High PHONES)***

Legend:
- Non-LBO Creditors Debt Reserve
- Non-LBO Creditors – Initial Distribution
- Bridge Loan Claims – Reserve
- Step Two Lender Claims – Initial Distribution
- Swap Claims - Initial Distribution
- Step One Lender Claims – Initial Distribution

*\* Percentages assume that all initial distributions are in the form of Class A New Common Stock and the Warrants allocable to the Distribution Trust on an as-converted basis.*

The foregoing percentages of distribution are premised upon (i) the enforcement of the Senior Loan Sharing Provisions contained in Senior Loan Agreement and (ii) an Initial Distribution only in the form of New Common Stock and/or New Warrants to the holders of Step One Lender Claims and Step Two Lender Claims.

In addition to the foregoing modifications, further amendments were contained in the Second Amended Noteholder Plan to, among other things, resolve additional third party objections to the Noteholder Plan.

## IV.    Amendments Implemented in Third Amended Noteholder Plan

Pursuant to the Third Amended Noteholder Plan, two additional primary modifications have been incorporated.  First, as noted in the chart in Section I above, the Third Amended Noteholder Plan provides for the separate classification of the Swap Parent Claim and Swap Guaranty Claim from the Step One Senior Loan Claims and Step One Guaranty Claims, respectively.  Through this amendment, the Initial Distributions to the Holder of the Swap Claims does not change and, thus, the Holder of the Swap Claims will still receive, as of the Effective Date of the Third Amended Noteholder Plan, its pro rata share of the Debtors' remaining distributable enterprise value after taking into account (i) Initial Distributions to holders of Senior Noteholder Claims, Other Parent Claims and Other Guarantor Debtor Claims and (ii) the reserves established to pay all non-LBO creditors in full, plus Postpetition Interest through December 8, 2012.

The second primary modification contained in the Third Amended Noteholder Plan, also reflected in the chart in Section I above, provides for each Holder of an Allowed Other Guarantor Debtor Claim to receive its (i) "natural recovery" based on an entity-by-entity valuation prepared by the Debtors, which is premised on a $6.75 billion total DEV and the allocation of the total DEV among all of the Debtor entities, as opposed to a flat 8% Initial Distribution or (ii) to the extent disputed by any such Holder, such other percentage recovery as is determined by a Final Order.  The estimated Other Guarantor Debtor Claims Initial Distribution is reflected on Exhibit A hereto.  If and to the extent the Court ultimately determines that the DEV is higher than $6.75 billion, then the natural recovery to which each Holder of an Allowed Other Guarantor Debtor

15

Claim is entitled will increase accordingly.  While the Noteholder Plan Proponents do not believe this change was necessary, it has been made to resolve an objection by the proponents of the DCL Plan Proponents that the flat 8% recovery to Holders of Other Guarantor Debtor Claims violated provisions of the Bankruptcy Code.

In addition, the Noteholder Plan Proponents will be modifying the proposed Certificate of Incorporation included in the Plan Supplement to remove the provisions thereof that require the Reorganized Debtors' officers, directors and employees to cooperate with the Distribution Trust, Litigation Trust and Creditors' Trust as comparable provisions are contained in the Third Amended Noteholder Plan and applicable trust agreements.  Finally, the Noteholder Plan Proponents will be revising the Certificate of Incorporation for Reorganized Tribune to eliminate restrictions on the ability of the Reorganized Debtors' officers and directors to obtain the benefit of directors and officers liability insurance in connection with violation of the foregoing cooperation provisions and to permit the size of Reorganized Tribune's board to be increased from seven (7) to nine (9) members.

Dated: April 25, 2011

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, NY 10036
(212) 872-1000

*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.

William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Signature Page for Notice of Filing of Third Amended Noteholder Plan

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP

/s Katharine L. Mayer
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

Signature Page for Notice of Filing of Third Amended Noteholder Plan

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
/s Matthew B. Stein____
David S. Rosner
Sheron Korpus
Matthew B. Stein
1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700
Fax:  (212) 506-1800

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Tel:  (302) 429-1900
Fax:  (302) 429-8600

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

Signature Page for Notice of Filing of Third Amended Noteholder Plan

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC

_____
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

Signature Page for Notice of Filing of Third Amended Noteholder Plan

# Exhibit A to Noteholder Notice

OTHER GUARANTOR DEBTOR CLAIMS INITIAL DISTRIBUTIONS

This Exhibit is subject to all of the provisions of the Noteholder Plan, including, without limitation, Section 13.8, pursuant to which the Proponents have reserved the right, subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, to alter, amend or modify the Noteholder Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to substantial confirmation of the Noteholder Plan.

## Other Guarantor Debtor Claims Initial Distributions

All calculations expressed herein are based upon the $6.75 billion DEV[1] supported by the Debtor/Committee/Lender Plan proponents, with 8.4% of the DEV allocated to Tribune and 91.6% of the DEV allocated to its Subsidiaries (on a consolidated basis).  The ultimate determination of the amount of DEV as well as the allocation of such DEV as between Tribune and its Subsidiaries will be made by the Bankruptcy Court.  Recoveries by Holders of Other Guarantor Debtor Claims will depend on these determinations. The Noteholder Plan Proponents believe the actual DEV is materially higher than $6.75 billion and, in that regard, have submitted the Rebuttal Report to Expert Valuation Report Submitted by Lazard Frères & Co. LLC prepared by Raymond James, challenging the $6.75 billion DEV.

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|-------------------------------------------------------------------------------------|
| 50G | 5800 Sunset Production, Inc. | 0.0% |
| 51G | California Community News Corporation | 0.1% |
| 52G | Channel 39, Inc. | 0.6% |
| 53G | Channel 40, Inc. | 0.9% |
| 54G | Chicago Tribune Company | 2.3% |
| 55G | Chicagoland Publishing Company | 0.0% |
| 56G | ChicagoLand Television News, Inc. | 0.2% |
| 57G | Courant Speciality Products, Inc. | 0.0% |
| 58G | Distribution Systems of America, Inc. | 0.0% |
| 59G | Eagle New Media Investments, LLC (Tribune Company) | 0.0% |
| 60G | Eagle Publishing Investments, LLC (Tribune Company) | 0.0% |
| 61G | Forsalebyowner.com Corp. | 0.1% |

---

[1] Capitalized terms used but not defined, herein shall bear the meanings ascribed to them in the Noteholder Plan.

[2] The Estimated Percentage Initial Distributions on Allowed Other Guarantor Debtor Claims at each Other Guarantor Debtor entity expressed herein are based entirely on calculations performed by the Debtors.  The Noteholder Plan Proponents do not express any opinion on the accuracy of the Estimated Percentage Initial Distributions on Allowed Other Guarantor Debtor Claims expressed herein.

**Other Guarantor Debtor Claims Initial Distributions**

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|---|---|---|
| 62G | Forum Publishing Group, Inc. | 0.1% |
| 63G | Gold Coast Publications, Inc. | 0.1% |
| 64G | Homeowners Realty, Inc. | 0.0% |
| 65G | Homestead Publishing Company | 0.1% |
| 66G | Hoy Publications, LLC (Tribune Company) | 0.2% |
| 67G | Internet Foreclosure Service, Inc. | 0.0% |
| 68G | KIAH, Inc. | 1.1% |
| 69G | KPLR, Inc. | 0.5% |
| 70G | KSWB, Inc. | 0.1% |
| 71G | KTLA, Inc. | 1.3% |
| 72G | KWGN, Inc. | 0.4% |
| 73G | LA Times Communications LLC (Tribune Los Angeles, Inc.) | 1.9% |
| 74G | New Mass. Media, Inc. | 0.0% |
| 75G | Orlando Sentinel Communications Company | 0.6% |
| 76G | Patuxent Publishing Company | 0.1% |
| 77G | Southern Connecticut Newspapers, Inc. | 0.0% |
| 78G | Star Community Publishing, LLC (50% Tribune NM, Inc. / 50% DSA, Inc.) | 0.0% |
| 79G | Stemweb, Inc. | 0.0% |
| 80G | Sun-Sentinel Company | 0.8% |
| 81G | The Baltimore Sun Company | 0.4% |

**Other Guarantor Debtor Claims Initial Distributions**

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|-------------------------------------------------------------------------------------------|
| 82G | The Daily Press, Inc. | 0.2% |
| 83G | The Hartford Courant Company | 0.3% |
| 84G | The Morning Call, Inc. | 0.5% |
| 85G | TMLH 2, Inc. | 0.1% |
| 86G | TMLS 1, Inc. | 0.0% |
| 87G | TMS Entertainment Guides, Inc. | 0.3% |
| 88G | Tower Distribution Company | 4.3% |
| 89G | Tribune Broadcast Holdings, Inc. | 0.4% |
| 90G | Tribune Broadcasting Company | 0.4% |
| 91G | Tribune Broadcasting Holdco, LLC (Tribune Company) | 0.0% |
| 92G | Tribune California Properties, Inc. | 0.0% |
| 93G | Tribune CNLBC LLC | 4.4% |
| 94G | Tribune Direct Marketing, Inc. | 0.5% |
| 95G | Tribune Entertainment Company | 0.0% |
| 96G | Tribune Finance, LLC (Tribune Company) | 0.4% |
| 97G | Tribune Los Angeles, Inc. | 0.0% |
| 98G | Tribune Manhattan Newspaper Holdings, Inc. | 0.0% |
| 99G | Tribune Media Net, Inc. | 0.1% |
| 100G | Tribune Media Services, Inc. | 1.6% |
| 101G | Tribune New York Newspaper Holdings, LLC | 0.0% |

**Other Guarantor Debtor Claims Initial Distributions**

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|:-:|
| 102G | Tribune NM, Inc. | 0.0% |
| 103G | Tribune Television Company | 3.2% |
| 104G | Tribune Television Holdings, Inc. | 0.3% |
| 105G | Tribune Television New Orleans, Inc. | 0.2% |
| 106G | Tribune Television Northwest, Inc. | 1.2% |
| 107G | Virginia Gazette Companies, LLC (The Daily Press, Inc.) | 0.1% |
| 108G | WDCW Broadcasting, Inc. | 0.7% |
| 109G | WGN Continental Broadcasting Company | 7.3% |
| 110G | WPIX, Inc. | 2.5% |
| 111G | WTXX, Inc. | 0.0% |

# Exhibit B to Motion

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) |
| TRIBUNE COMPANY, *et al.*, | )    Chapter 11 |
| | )    Case No. 08-13141 (KJC) |
| Debtors. | )    Jointly Administered |
| | ) |

## JOINT NOTICE OF THE DEBTOR/COMMITTEE/LENDER PLAN PROPONENTS AND THE NOTEHOLDER PLAN PROPONENTS REGARDING STATUS OF PROCEEDINGS TO CONSIDER CONFIRMATION OF THE COMPETING PLANS[1]

**PLEASE TAKE NOTICE THAT** on April 5, 2011, the Debtor/Committee/Lender Plan Proponents filed the Second Amended Joint Plan of Reorganization for the Debtors Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank N.A. (as modified) [ECF No. 8580] (the "Debtor/Committee/Lender Plan").

**PLEASE TAKE FURTHER NOTICE THAT** on April 25, 2011, the Noteholder Plan Proponents filed the Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [ECF No. __ ] (the "Noteholder Plan" and, together with the Debtor/Committee/Lender Plan, the "Competing Plans").

**PLEASE TAKE FURTHER NOTICE THAT** on December 23, 2010, Epiq Systems Inc. (the "Voting Agent") distributed solicitation materials regarding prior versions of the Competing Plans to the Classes of Creditors eligible to vote under each respective plan.  On February 11, 2011, the Voting Agent filed the Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Joint Plans of Reorganization Proposed for Tribune Company and its Subsidiaries [ECF No. 7918].

**PLEASE TAKE FURTHER NOTICE THAT** subsequent to solicitation of their prior versions of the Competing Plans, the Debtor/Committee/Lender Plan Proponents and the Noteholder Plan Proponents have made certain amendments to their respective plans, which amendments are summarized in (i) Notice of Filing of Second Amended Joint Plan of Reorganization of Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified), dated April 5, 2011 (the "Debtor/Committee/Lender Notice") [ECF No. 8580]; and (ii) Notice of Filing of Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes, dated May [ __ ], 2011 (the "Noteholder Notice") [ECF No. __ ].

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to an order of the Bankruptcy Court, the Debtor/Committee/Lender Plan Proponents intend to: (i) resolicit votes from Holders of Senior Loan Claims and Senior Guaranty Claims; (ii) distribute election forms to Holders of Senior Noteholder Claims and Other Parent Claims to allow such Holders to elect any of the new, alternative treatments provided under the Debtor/Committee/Lender Plan; (iii) distribute new release elections to Holders of Claims that previously granted releases under the Debtor/Committee/Lender Plan; (iv) distribute new opt-out elections to Holders of Claims against Tribune Company concerning any Disclaimed State Law Avoidance Action Claims they may have; and (v) distribute an explanatory statement and supplemental disclosure statement.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtor/Committee/Lender Plan or the Noteholder Plan as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to an order of the Bankruptcy Court, the Noteholder Plan Proponents will not be resoliciting votes on the Noteholder Plan, or otherwise distributing supplemental election materials to any Class of Creditors under the Noteholder Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the confirmation process with respect to the Competing Plans is ongoing.  In connection therewith, the Bankruptcy Court conducted confirmation hearings during March and April 2011, at which hearings the Bankruptcy Court heard evidentiary and legal arguments relating to confirmation of the Competing Plans.  The evidentiary record has now been completed.  The Bankruptcy Court has set the following schedule for the filing of post-trial briefs and final closing arguments:

May 11, 2011 –

    (a)  Opening post-trial briefs to be filed by the each of the Competing Plan proponents.

    (b)  Opening supplemental briefs, to be submitted in letter form not to exceed five pages, to be filed by any third party who has filed a confirmation objection to either or both of the Competing Plans  (collectively, the "Third Party Supplemental Briefs").

May 20, 2011 –

    (a)  Reply briefs, to be submitted in letter form not to exceed ten pages in the aggregate, to be filed by each of the Competing Plan proponents in reply to the Third Party Supplemental Briefs.

May 27, 2011 –

    (a)  Reply post-trial briefs to be filed by each of the Competing Plan proponents.

June 14, 2011 ( __:00 a.m.) –

    (a)  Closing arguments.

**PLEASE TAKE FURTHER NOTICE THAT** copies of (i) the Debtor/Committee/Lender Plan, (ii) the Debtor/Committee/Lender Notice, (iii) the Noteholder Plan and (iv) the Noteholder Notice may be: (a) obtained free of charge from Epiq Bankruptcy Solutions, LLC's ("Epiq") dedicated website related to the Debtors' chapter 11 cases (http://chapter11.epiqsystems.com/tribune) or by telephoning Epiq at (646) 282-2400; (b) inspected during regular business hours at the Office of the Clerk of the Bankruptcy Court, 3rd Floor, 824 Market Street Wilmington, DC 19801; or (c) viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

---

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO (I) YOUR RIGHTS UNDER THE DEBTOR/COMMITTEE/LENDER PLAN, (II) YOUR RIGHTS UNDER THE NOTEHOLDER PLAN OR (III) ANYTHING STATED HEREIN, OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE VOTING AGENT REFERENCED ABOVE.

---

Wilmington, Delaware
Dated: May [__], 2011

| | |
|---|---|
| SIDLEY AUSTIN LLP | COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A. |
| James F. Conlan | Norman L. Pernick (No. 2290) |
| Bryan Krakauer | J. Kate Stickles (No. 2917) |
| Janet E. Henderson | Patrick J. Reilley (No. 4451) |
| Kevin T. Lantry | 500 Delaware Avenue, Suite 1410 |
| Jessica C.K. Boelter | Wilmington, DE  19801 |
| One South Dearborn Street | (302) 652-3117 |
| Chicago, IL  60603 | |
| (312) 853-7036 | |

*Counsel for Debtors and Debtors In Possession and Certain Non-Debtor Affiliates*

| | |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD LLP | ASHBY & GEDDES, P.A. |
| Daniel H. Golden | William P. Bowden (I.D. No. 2553) |
| Philip C. Dublin | Amanda M. Winfree (I.D. No. 4615) |
| One Bryant Park | 500 Delaware Avenue, P.O. Box 1150 |
| New York, NY  10036 | Wilmington, DE  19899 |
| (212) 872-1000 | (302) 654-1888 |

*Counsel for Aurelius Capital Management, LP*

# Exhibit C to Motion

OTHER GUARANTOR DEBTOR CLAIMS INITIAL DISTRIBUTIONS

This Exhibit is subject to all of the provisions of the Noteholder Plan, including, without limitation, Section 13.8, pursuant to which the Proponents have reserved the right, subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, to alter, amend or modify the Noteholder Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to substantial confirmation of the Noteholder Plan.

## Other Guarantor Debtor Claims Initial Distributions

All calculations expressed herein are based upon the $6.75 billion DEV[1] supported by the Debtor/Committee/Lender Plan proponents, with 8.4% of the DEV allocated to Tribune and 91.6% of the DEV allocated to its Subsidiaries (on a consolidated basis).  The ultimate determination of the amount of DEV as well as the allocation of such DEV as between Tribune and its Subsidiaries will be made by the Bankruptcy Court.  Recoveries by Holders of Other Guarantor Debtor Claims will depend on these determinations. The Noteholder Plan Proponents believe the actual DEV is materially higher than $6.75 billion and, in that regard, have submitted the Rebuttal Report to Expert Valuation Report Submitted by Lazard Frères & Co. LLC prepared by Raymond James, challenging the $6.75 billion DEV.

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|-----------------------------------------------------------------------------------|
| 50G | 5800 Sunset Production, Inc. | 0.0% |
| 51G | California Community News Corporation | 0.1% |
| 52G | Channel 39, Inc. | 0.6% |
| 53G | Channel 40, Inc. | 0.9% |
| 54G | Chicago Tribune Company | 2.3% |
| 55G | Chicagoland Publishing Company | 0.0% |
| 56G | ChicagoLand Television News, Inc. | 0.2% |
| 57G | Courant Speciality Products, Inc. | 0.0% |
| 58G | Distribution Systems of America, Inc. | 0.0% |
| 59G | Eagle New Media Investments, LLC (Tribune Company) | 0.0% |
| 60G | Eagle Publishing Investments, LLC (Tribune Company) | 0.0% |
| 61G | Forsalebyowner.com Corp. | 0.1% |

---

[1] Capitalized terms used but not defined, herein shall bear the meanings ascribed to them in the Noteholder Plan.

[2] The Estimated Percentage Initial Distributions on Allowed Other Guarantor Debtor Claims at each Other Guarantor Debtor entity expressed herein are based entirely on calculations performed by the Debtors.  The Noteholder Plan Proponents do not express any opinion on the accuracy of the Estimated Percentage Initial Distributions on Allowed Other Guarantor Debtor Claims expressed herein.

**Other Guarantor Debtor Claims Initial Distributions**

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|:---:|
| 62G | Forum Publishing Group, Inc. | 0.1% |
| 63G | Gold Coast Publications, Inc. | 0.1% |
| 64G | Homeowners Realty, Inc. | 0.0% |
| 65G | Homestead Publishing Company | 0.1% |
| 66G | Hoy Publications, LLC (Tribune Company) | 0.2% |
| 67G | Internet Foreclosure Service, Inc. | 0.0% |
| 68G | KIAH, Inc. | 1.1% |
| 69G | KPLR, Inc. | 0.5% |
| 70G | KSWB, Inc. | 0.1% |
| 71G | KTLA, Inc. | 1.3% |
| 72G | KWGN, Inc. | 0.4% |
| 73G | LA Times Communications LLC (Tribune Los Angeles, Inc.) | 1.9% |
| 74G | New Mass. Media, Inc. | 0.0% |
| 75G | Orlando Sentinel Communications Company | 0.6% |
| 76G | Patuxent Publishing Company | 0.1% |
| 77G | Southern Connecticut Newspapers, Inc. | 0.0% |
| 78G | Star Community Publishing, LLC (50% Tribune NM, Inc. / 50% DSA, Inc.) | 0.0% |
| 79G | Stemweb, Inc. | 0.0% |
| 80G | Sun-Sentinel Company | 0.8% |
| 81G | The Baltimore Sun Company | 0.4% |

**Other Guarantor Debtor Claims Initial Distributions**

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|-----------------------------------------------------------------|
| 82G | The Daily Press, Inc. | 0.2% |
| 83G | The Hartford Courant Company | 0.3% |
| 84G | The Morning Call, Inc. | 0.5% |
| 85G | TMLH 2, Inc. | 0.1% |
| 86G | TMLS 1, Inc. | 0.0% |
| 87G | TMS Entertainment Guides, Inc. | 0.3% |
| 88G | Tower Distribution Company | 4.3% |
| 89G | Tribune Broadcast Holdings, Inc. | 0.4% |
| 90G | Tribune Broadcasting Company | 0.4% |
| 91G | Tribune Broadcasting Holdco, LLC (Tribune Company) | 0.0% |
| 92G | Tribune California Properties, Inc. | 0.0% |
| 93G | Tribune CNLBC LLC | 4.4% |
| 94G | Tribune Direct Marketing, Inc. | 0.5% |
| 95G | Tribune Entertainment Company | 0.0% |
| 96G | Tribune Finance, LLC (Tribune Company) | 0.4% |
| 97G | Tribune Los Angeles, Inc. | 0.0% |
| 98G | Tribune Manhattan Newspaper Holdings, Inc. | 0.0% |
| 99G | Tribune Media Net, Inc. | 0.1% |
| 100G | Tribune Media Services, Inc. | 1.6% |
| 101G | Tribune New York Newspaper Holdings, LLC | 0.0% |

**Other Guarantor Debtor Claims Initial Distributions**

| Class | Debtor | Estimated Percentage Initial Distribution on Allowed Other Guarantor Debtor Claims[2] |
|-------|--------|--------|
| 102G | Tribune NM, Inc. | 0.0% |
| 103G | Tribune Television Company | 3.2% |
| 104G | Tribune Television Holdings, Inc. | 0.3% |
| 105G | Tribune Television New Orleans, Inc. | 0.2% |
| 106G | Tribune Television Northwest, Inc. | 1.2% |
| 107G | Virginia Gazette Companies, LLC (The Daily Press, Inc.) | 0.1% |
| 108G | WDCW Broadcasting, Inc. | 0.7% |
| 109G | WGN Continental Broadcasting Company | 7.3% |
| 110G | WPIX, Inc. | 2.5% |
| 111G | WTXX, Inc. | 0.0% |

# Exhibit D to Motion

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| TRIBUNE COMPANY, *et al.*,[1] | ) Chapter 11 |
| | ) Case No. 08-13141 (KJC) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER DETERMINING THAT (I) THE AMENDMENTS THAT HAVE BEEN MADE
TO THE NOTEHOLDER PLAN ARE NOT MATERIAL AND ADVERSE
TO ANY CLASS OF CREDITORS OR (II) TO THE EXTENT THE AMENDMENTS
ARE MATERIAL AND ADVERSE TO ANY CLASS(ES) OF CREDITORS, BASED
ON SUCH CLASS(ES)' PRIOR REJECTION OF THE INITIAL NOTEHOLDER PLAN,
SUCH CLASS(ES) SHALL BE DEEMED TO ALSO REJECT
THE THIRD AMENDED NOTEHOLDER PLAN**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WCCT Inc., f/k/a WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Upon the Motion[2] of the Noteholder Plan Proponents for entry of an order pursuant to sections 105(a), 1125, 1126 and 1127 of the Bankruptcy Code and Bankruptcy Rules 2002, 3018 and 3019 determining that: (i) the amendments that have been made to the Third Amended Noteholder Plan are not material and adverse to any Class of Creditors; or (ii) to the extent the amendments are material and adverse to any Class(es) of Creditors, based on such Class(es)' proper rejection of the Initial Noteholder Plan, such Classes shall be deemed also to reject the Third Amended Noteholder Plan; and due and proper notice of the Motion having been given under the circumstances; and it appearing that no other or further notice is required; and it appearing that the Court has jurisdiction pursuant to 28 U.S.C. § 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested is in the best interest of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:

The amendments made to the Noteholder Plan, as incorporated in the Third Amended Noteholder Plan, are either (i) not material and adverse to the interests of Creditors, or (ii) to the extent the Court finds that certain of the amendments made to the Noteholder Plan, as incorporated in the Third Amended Noteholder Plan, are material and adverse to any Class(es) of Creditors, based on such Class(es)' prior rejection of the Initial Noteholder Plan, such Classes shall be deemed to reject the Third Amended Noteholder Plan.

---

[2] Capitalized terms used by not defined herein shall have the meanings ascribed to such terms in the Motion.

NOW, THEREFORE, IT IS HEREBY:

ORDERED that the relief requested in the Motion is granted, subject to the terms of this Order; and it is further

ORDERED that the Noteholder Plan Proponents are not required to resolicit the votes of any Classes of Claims under the Third Amended Noteholder Plan; and it is further

ORDERED that no objection to the Third Amended Noteholder Plan may be made on the basis that the vote of any Creditor was not resolicited in connection therewith; and it is further

ORDERED that, with the exception of the preceding paragraph, this Order does not dispose of, reject or impact confirmation objections made to the Noteholder Plan; and it is further

ORDERED that the form of Joint Notice is approved and the Joint Notice shall be (i) filed, (ii) served on the 2002 List, and (iii) distributed to all creditors whose votes were solicited in connection with the Competing Plans; the expense of which distribution shall be borne by the Debtors' Estates; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: Wilmington, DE
          May [__], 2011

_____

THE HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE