# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: May 24, 2011 at 4:00 p.m.**<br>**Hearing Date:  TBD**<br>**Related to Docket Nos. 6655, 6758 and 6759** |

## SEVENTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF JUNE 1, 2010 THROUGH AUGUST 31, 2010

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide Professional Services to: | **Debtors** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Date of Retention:                              **February 20, 2009 (*nunc pro tunc* to**
                                                **December 8, 2008)**

Period for Which Compensation                   **June 1, 2010 through August 31, 2010**
and Reimbursement is Sought:

Amount of compensation sought as actual,        **$7,081,656.37[2]**
reasonable and necessary:

Amount of Expense Reimbursement sought as       **$310,093.90[3]**
actual, reasonable and necessary

This is a(n):      _____ monthly      __X__ interim      _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee
applications, including time expended for review and response to fee auditor preliminary and
final reports and recommendations, during the Seventh Interim Fee Period is approximately
263.50 hours and the corresponding compensation requested is approximately $85,194.50.

<u>Prior Interim Applications</u>

| Quarter | Date Filed | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Fees | Expenses |
| 1 | 4/15/09 | 12/8/08-2/28/09 | $3,897,043.25 | $165,360.71 | $3,886,289.75 | $158,441.67 |
| 2 | 7/16/09 | 3/1/09-5/31/09 | $4,209,274.75 | $105,524.36 | $4,203,235.50 | $104,118.90 |
| 3 | 10/15/09 | 6/1/09-8/31/09 | $4,513,018.00 | $99,429.34 | $4,510,127.00 | $99,253.67 |
| 4 | 1/15/10 | 9/1/09-11/30/09 | $5,292,782.75 | $221,808.01 | | |
| 5 | 4/15/10 | 12/1/09-2/28/10 | $5,426,757.50 | $205,852.05 | | |
| 6 | 12/14/10 | 3/1/10-5/31/10 | $6,581,178.43 | $425,733.29 | | |

---

[2] As described in <u>Attachment A</u> to the Application, Sidley identified a typographical error in the Twentieth Monthly
Fee Application for fees in the month of August 2010, which resulted in an additional 0.05 hours ($35.00) being
billed in error. The total fees requested in this Seventh Quarterly Fee Application reflect a reduction in fees by that
amount.

[3] As described in <u>Attachment B</u> to the Application, Sidley agreed to waive $20.00 in expenses sought in the
Twentieth Monthly Fee Application at the request of the Office of the United States Trustee. *See* Certification of
Counsel at D.I. 7297. The total expenses requested to be reimbursed in this Seventh Quarterly Fee Application
reflect a reduction in expenses by that amount.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: May 24, 2011 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 6655, 6758 and 6759** |

## SEVENTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF JUNE 1, 2010 THROUGH AUGUST 31, 2010

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (D.I. 225) (the "Interim Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications (D.I. 546) (the "Fee Examiner Order") for approval of interim compensation and reimbursement of expenses for the seventh quarterly period from June 1, 2010 through August 31, 2010 (the "Seventh Interim Fee Period").  In support of the Application, Sidley respectfully states as follows:

## FACTUAL BACKGROUND OF THE CASES

1.     On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC) ("Tribune CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.[2]  On March 22, 2010, this Court entered an order dismissing the chapter 11 petition of New River Center Maintenance Association, Inc.  In all, the Debtors comprise 111 entities.

---

[2] Orders of the Court applicable to this Application have subsequently been extended to Tribune CNLBC.  (*See* Order Directing (I) Joint Administration of Chapter 11 Cases and (II) that Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. be Made Applicable to the Chapter 11 Case of Chicago National League Ball Club, LLC (entered Oct. 14, 2009) (D.I. 2333) (the "CNLBC Joint Administration Order").

2.    The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  (D.I. 43, 2333.)

3.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On December 18, 2008, the Office of the United States Trustee (the "UST") appointed an official committee of unsecured creditors (the "Committee").

5.    On March 19, 2009, pursuant to the Fee Examiner Order, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective *nunc pro tunc* to February 20, 2009.  (D.I. 546.)

6.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

7.    The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and

regulatory, employee-related, and real estate matters. In particular, Sidley's retention application

sets forth the following scope of services:

(a)    to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b)    to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

(c)    to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(d)    to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

(e)    to perform any and all other legal services for the Debtors in connection with both their chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

(f)    to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

(g)    to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

(h)    to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

(i)    to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

(j)    to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or

4

appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, *nunc pro tunc* to the Petition Date, was approved by this Court by order dated

February 20, 2009. (D.I. 435.)

8.      The Interim Compensation Order and the Fee Examiner Order (together,

the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327,

328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and

provide to the Fee Examiner monthly applications for interim allowance of compensation for

services rendered and reimbursement of expenses incurred, together with the applicable time

entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in

the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee

Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon

expiration of the Objection Deadline, the applicable Case Professional must certify in writing

that no objection or partial objection has been filed with the Court relative to that professional's

Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an

amount equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the

Monthly Fee Application or (ii) 80% of the fees and 100% of the expenses not subject to an

objection.

9.      Pursuant to the procedures set forth in the Fee Orders, Sidley prepared,

filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee

Applications for the months of June 2010, July 2010 and August 2010, which Monthly Fee

Applications are incorporated herein by reference.[3]  Sidley has accordingly submitted all of its

Monthly Fee Applications for the Debtors' chapter 11 cases for the Seventh Interim Fee Period.

10.    In addition to the Monthly Fee Applications, beginning with the three-

month period ending February 28, 2009, and each three-month period thereafter, all Case

Professionals must file with the Court and serve on the Notice Parties interim applications for

allowance of compensation and reimbursement of expenses of the amounts sought in the

Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request").

(*See* Interim Compensation Order at 3.)  Quarterly Fee Application Requests must include a

summary of the Monthly Fee Applications that are the subject of the request and any other

information requested by the Court or required by the Local Rules.  (*Id.*)  This Application

represents the seventh Quarterly Fee Application Request that Sidley has filed with the Court in

connection with these chapter 11 cases, and it covers the period from June 1, 2010 through

August 31, 2010, both dates inclusive.

## RELIEF REQUESTED

11.    By this Application, Sidley respectfully requests that the Court approve

the interim allowance and award of compensation for professional services rendered and

reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy

counsel to the Debtors during the Seventh Interim Fee Period.

12.    The amount of fees sought for services rendered during the Seventh

Interim Fee Period is $7,081,656.37, representing 12,282.30 hours in professional and

paraprofessional time for such services.  Reimbursement of actual, necessary expenses incurred

by Sidley during the Seventh Interim Fee Period in connection with these services is requested in

---

[3] The docket numbers of Sidley's Monthly Fee Applications for June 2010, July 2010, and August 2010 are 4820, 5329, and 6088, respectively.

the amount of $310,093.90. Sidley seeks the interim allowance of such compensation and

reimbursement, and this Court's authorization for payment of such amounts by the Debtors to

Sidley, less amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the

period covered by this Application and the procedures set forth in the Fee Orders.

13.     The hourly rates charged by Sidley professionals and paraprofessionals

during the Seventh Interim Fee Period are no greater than the customary hourly rates for such

individuals both inside and outside of bankruptcy cases. The highest billing rate charged by any

Sidley attorney for services rendered under Sidley's then-current billing rates that became

effective on January 1, 2010 and continuing until Sidley's Firm-wide rate adjustment on January

1, 2011 was $950 per hour. (*See* Supplemental Affidavit (Second) of James F. Conlan in

Support of Application for an Order Authorizing the Employment and Retention of Sidley

Austin LLP as Attorneys for the Debtors and Debtors in Possession ¶ 3, D.I. 424.) Sidley

believes these rates are comparable to those charged by the bankruptcy and other professionals of

other firms of comparable size, stature, and experience.

14.     Sidley has received no payment and no promises for payment from any

source other than the Debtors for services rendered in these chapter 11 cases. There is no

agreement between Sidley and any other party for the sharing of compensation to be received for

the services rendered by Sidley in these chapter 11 cases. All professional and paraprofessional

services for which compensation is sought herein were rendered solely on behalf of the Debtors

in these cases.

## SERVICES RENDERED

15.     Sidley has rendered substantial services to the Debtors in connection with

these chapter 11 cases during the period covered by this Application, both in its capacity as

general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation,

and transactional counsel to the Debtors in their ordinary course of business.  The services performed by Sidley's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.     A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of <u>Attachment A</u> to this Application, as required by Local Rule 2016-2.  A detailed description of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed by Sidley with the Court.  The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Seventh Interim Fee Period:

**A.     FCC Matters (20100):   Hours: 178.00  Fees: $101,164.50[4]**

17.     During the Seventh Interim Fee Period, Sidley's professionals represented the Debtors' broadcast stations on several matters as communications regulatory counsel.  In this capacity, Sidley's professionals and paraprofessionals handled various matters on behalf of the Debtors relating to regulatory compliance, including advising on compliance with technical and operational rules and regulations of the Federal Communications Commission ("FCC"), transactional matters that require FCC approval; seeking waivers of applicable newspaper/broadcasting cross-ownership rules; preparing and filing periodic license renewal applications and license modification applications, and responding to various complaints filed

---

[4] Commencing in December 2009, the Debtors requested that Sidley provide separate invoices for professional fees for certain discrete FCC-related services attributable to KWGN/FCC General, KPLR-TV, Nextel Negotiations, and Newspaper Crossownership matters, on which Sidley represents the Debtors in the ordinary course of business.  In accordance with this request, and after consultation with the Fee Examiner, Sidley has included such invoices within the broader category of FCC Matters for the purposes of calculating the total fees and expenses in Sidley's Monthly Fee Applications and Quarterly Fee Application Requests.

with the FCC. Additionally, Sidley represented Tribune in appeals to the U.S. Courts of Appeals from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

18.     During the Seventh Interim Fee Period, Sidley's professionals and communications specialist drafted and filed applications, reports, notifications, and other materials that were required to be filed with the FCC in connection with the Debtors' 23 television stations, cable "Superstation" WGN America, and WGN Radio, including, but not limited to, preparing post-bankruptcy Public Notice text and instructions and drafting biennial ownership reports. In addition, Sidley represented the Debtors in briefing an appeal currently before the U.S. Court of Appeals for the Third Circuit regarding the application of media cross-ownership rules, the outcome of which is of substantial importance to the Debtors' broadcasting and publishing operations in several key markets in which the Debtors conduct business. Sidley's professionals drafted the opening and reply briefs in support of petitions for review of the FCC's newspaper cross-ownership rules, which prohibit newspapers from owning certain television or radio stations within the same markets. The Debtors challenged these rules on constitutional and Administrative Procedure Act grounds. Sidley's professionals handled the court of appeals briefing, as well as coordinated with counsel for eight other petitioners challenging these rules, and prepared the joint appendix.

**B.     Fee Applications (30390):    Hours: 233.60  Fees: $70,472.00**

19.     This matter category encompasses all tasks relating to the preparation and filing of Sidley's Monthly Fee Applications and Quarterly Fee Application Requests with the Court. In this Seventh Interim Fee Period, Sidley's professionals and paraprofessionals drafted and filed Sidley's fifteenth and sixteenth Monthly Fee Applications, drafted Sidley's seventeenth, eighteenth, and nineteenth Monthly Fee Applications, and reviewed and complied

with the Court's Fee Orders respecting all of the foregoing. During the Seventh Interim Fee

Period, Sidley also prepared portions of its Sixth Quarterly Fee Application.

**C.      Intellectual Property Issues (30400):   Hours: 6.80  Fees: $4,539.59**

            20.      In February and March 2010, Sidley was asked by the Debtors to provide

advice and counsel on the application of the laws of England and Wales to certain of the

Debtors' intellectual property contracts on a matter arising in the ordinary course of business, as

described more fully in Sidley's Sixth Quarterly Fee Application. Although these services were

rendered prior to the Seventh Interim Fee Period, certain of the professional services related to

this work were first invoiced in June 2010 and are thus part of this Quarterly Fee Application

Request.

**D.      Executory Contracts and Leases (30410):    Hours: 138.50  Fees: $64,953.00**

            21.      As of the Petition Date, the Debtors in these cases were party to

approximately 45,000 executory contracts and unexpired leases. During the Seventh Interim Fee

Period, Sidley's professionals continued to assist the Debtors with obtaining Court approval to

assume, or to assume and assign, certain executory contracts under section 365 of the

Bankruptcy Code on terms favorable to the Debtors. Sidley's professionals also addressed

numerous inquiries from executory contract and lease counterparties concerning the status of

certain contracts and leases and claims arising therefrom.

            22.      Specifically, Sidley's professionals researched and reviewed certain of the

Debtors' contracts, as well as applicable law regarding the treatment of those contracts under the

Bankruptcy Code, and evaluated the rejection of certain of the Debtors' contracts and unexpired

leases. In late June 2010, Sidley's professionals prepared and filed a motion on behalf of six of

the Debtors seeking this Court's authorization for the assumption of syndicated programming

agreements for the television series *That '70s Show* (D.I. 4885). The motion was approved by an

order entered on July 14, 2010 (D.I. 5010).  Sidley's professionals also consulted with the

Debtors' management and financial advisors in connection with the preparation and filing of a

list of executory contracts and unexpired leases proposed to be rejected pursuant to the then-

proposed Joint Plan of Reorganization for Tribune Company and its Subsidiaries, which was

filed by the Debtors on April 12, 2010 (the "Original Plan"), as part of the Plan Supplement filed

on July 30, 2010 (D.I. 5203).

**E.      Vendor Issues (30420):    Hours: 0.90  Fees: $504.00**

          23.      In this period, Sidley's professionals continued to address issues

concerning postpetition vendor performance, which has periodically required Sidley's

professionals to review existing contracts between the Debtors and relevant vendors and, in some

cases, arrange and participate in calls with the Debtors' business personnel, financial advisors at

Alvarez and Marsal North America, LLC ("A&M"), vendors, and/or vendors' counsel to ensure

or facilitate continued vendor performance.

**F.      Use/Sale/Lease of Assets (30430):    Hours: 99.00  Fees: $75,872.50**

          24.      Sidley's professionals remained engaged in negotiating and documenting

transactions for the use, sale, and lease of assets on behalf of the Debtors, both in connection

with these chapter 11 cases and with Sidley's ongoing representation of the Debtors in their

ordinary course of business.  During the Seventh Interim Fee Period, Sidley worked with the

Debtors' in-house counsel and management and the Debtors' outside professionals to review and

analyze the Debtors' existing business operations and strategic opportunities as they arose,

taking into account the impact of the Bankruptcy Code on potential transactions.  Sidley's

professionals also reviewed potential transactions contemplated by certain non-Debtor affiliates

to the extent that such transactions may implicate the Debtors, at the request of the Debtors'

management.

                                              11

**G.      DIP Financing/Cash Collateral (30440):    Hours: 0.30  Fees: $150.00**

        25.      During the Seventh Interim Fee Period, Sidley's professionals in the Bankruptcy and Banking practice groups received executed letter of credit amendments and fee letters for review and ongoing maintenance.

**H.      Insurance Matters (30450):    Hours: 3.20  Fees: $2,502.50**

        26.      During the Seventh Interim Fee Period, Sidley's professionals continued to work with the Debtors, their outside insurance counsel, and various insurance providers to resolve certain insurance coverage issues, and to advise upon the impact of these chapter 11 cases on the Debtors' insurance and risk management procedures.  Sidley's professionals also reviewed and addressed various legal issues arising in connection with the Debtors' primary and excess liability policies covering certain prepetition claims against the Debtors.

**I.      Committee-Related Matters (30460):    Hours: 3.80  Fees: $3,185.00**

        27.      Sidley's professionals continued during the Seventh Interim Fee Period to work diligently to maintain a cooperative and responsive relationship with the Debtors' major creditor constituencies, including the Committee.  During the Seventh Interim Fee Period, Sidley's professionals conferred with the Committee and their professionals and advisors on pending motions and general case administration issues and participated in periodic conference calls and meetings in order to address case issues as they arose.  Communications with the Committee related to specific substantive matters, including the development of the Debtors' plan of reorganization and disclosure statement or discovery-related matters, are reflected in the applicable substantive matter categories.

**J.      Litigated Matters (30470):    Hours: 3,986.90  Fees: $2,075,566.00**

        28.      The "Litigated Matters" category encompasses all of Sidley's activities relating to actual and potential litigation, contested matters, and adversary proceedings, as

discussed in more detail below. Notably, this category also includes much of Sidley's activities

relating to the review and analysis of the series of transactions that returned Tribune to private

ownership in 2007 (the "Leveraged ESOP Transactions") and corresponding document discovery

and production activities, negotiations with creditor constituencies, and matters concerning the

Debtors' participation in the examination of the Leveraged ESOP Transactions by Kenneth N.

Klee, the Court-appointed Examiner. The resolution of potential claims arising out of the

Leveraged ESOP Transactions—whether through settlement or, to the extent required,

litigation—remains a pivotal issue in these chapter 11 cases, requiring substantial attention from

Sidley, the Debtors' senior management, the Committee, the Debtors' prepetition lenders and

noteholders, and other key creditor constituencies during the Seventh Interim Fee Period. The

substantial professional fees incurred by Sidley's professionals during this period reflects the

increased scope of the foregoing activities during the Seventh Interim Fee Period.[5]

        (a)    The Examiner's Investigation

        29.    As described in detail in Sidley's Sixth Quarterly Fee Application Request

and incorporated herein by reference, Kenneth N. Klee was appointed as Examiner in these

chapter 11 proceedings pursuant to orders of this Court dated April 20, 2010 (D.I. 4187) and

May 11, 2010 (D.I. 4320). The scope of the Examiner's investigation included the evaluation of:

(i) potential claims and causes of action that may be asserted arising from and in connection with

the Leveraged ESOP Transactions (the "LBO-Related Claims"), (ii) whether Wilmington Trust

Company violated the automatic stay by filing, on March 4, 2010, its Complaint for Equitable

---

[5] By way of comparison, during the months of April through August 2010, the Examiner and his legal professionals
Klee, Tuchin, Boganoff & Stern LLP and Saul Ewing LLP incurred fees of $8,321,893.25 and the Examiner's
financial advisors incurred fees of $3,357,246.70, each relating to the Examiner's Investigation and preparation of
the Examiner's Report, reflecting the intense level of activity relating to those matters during a relatively short
period of time. *See* D.I. 6077, Exhibit A.

Subordination and Disallowance of Claims, Damages, and Constructive Trust (docketed at Adv.

No. 10-50732, D.I. 1), and (iii) assertions and defenses of the parties in connection with the

Motion of JPMorgan Chase Bank, N.A. for Sanctions Against Wilmington Trust Company for

Improper Disclosure of Confidential Information in Violation of Court Order (collectively, the

"Investigation").

    30.  During the Sixth Interim Fee Period and continuing through nearly all of

the Seventh Interim Fee Period, Sidley's professionals in the Bankruptcy and Litigation practice

groups assisted the Debtors in offering their full cooperation to the Examiner in connection with

the Investigation, including responding to the extensive document discovery requests of the

Examiner and his professionals and advisors, participating in formal depositions and informal

interviews with the Debtors' senior management,[6] and preparing and submitting two rounds of

voluminous briefing to the Examiner, with supporting documents, that set forth in great detail the

relevant facts and legal issues pertaining to the LBO-Related Claims.  Sidley's professionals also

reviewed and analyzed the submissions of other parties-in-interest to the Examiner in connection

with the Investigation.  The Examiner expressly noted in this Report that the Debtors "facilitated

the Investigation and were responsive to the Examiner's many requests for documents and

information." (*See* Examiner's Report, Vol. I, at 7.)

    (b)  <u>Discovery Activities Relating to Leveraged ESOP Transactions and
Investigation</u>

    31.  As discussed in Sidley's prior Quarterly Fee Application Requests, since

the spring of 2009, more than 45 individuals and entities involved with the Leveraged ESOP

Transactions, including the Debtors (collectively, the "<u>Producing Parties</u>"), have participated in

---

[6] During the course of the Investigation, the Examiner and his legal and financial advisors interviewed 38 witnesses, of which 33 interviews were conducted in person.

informal (but comprehensive) discovery to facilitate the Committee's investigation of the Leveraged ESOP Transactions and LBO-Related Claims. Sidley and the Debtors have supported requests for access to these materials from Law Debenture, Centerbridge, JPMorgan, and other creditor constituencies with respect to their independent reviews of the Leveraged ESOP Transactions, through the Document Depository procedures discussed in detail in Sidley's Fifth Quarterly Fee Application Request.

      32.     Sidley's considerable ongoing discovery activities in these chapter 11 cases continued during the Seventh Interim Fee Period and expanded to facilitate the Examiner's Investigation, including the production of relevant documents and data to the Examiner and his legal and financial advisors, as well as the collection and analysis of documents relevant to preparing the Debtors' briefs and submissions to the Examiner. Document discovery activities also continued during the Seventh Interim Fee Period among the Debtors and their various creditor constituencies relating to the Leveraged ESOP Transactions. For example, in addition to the Examiner's requests for documents and information, during the Seventh Interim Fee Period the Debtors received discovery requests from Wilmington Trust Company and Wells Fargo regarding the Leveraged ESOP Transactions, the PHONES Notes, and the negotiation of the proposed settlement of the LBO-Related Claims embodied in the Original Plan. Sidley's professionals assisted in reviewing materials for compliance with the discovery requests propounded by both Wilmington Trust Company and Wells Fargo. Compliance with these discovery requests required the collection and review of more than twenty thousand documents and coordination among multiple Sidley professionals to ensure that documents were correctly produced. This extensive discovery effort was completed over a three-month period between mid-May and mid-August 2010.

33.    The discovery process that continued throughout the Seventh Interim Fee Period and thereafter has been a massive undertaking. To date, Sidley's team of Litigation professionals and paraprofessionals have received the equivalent of approximately 4.5 million pages of discovery documents produced by the Producing Parties in connection with the Leveraged ESOP Transactions, which are maintained in the Document Depository. Many of the materials gathered in connection with the discovery process were ultimately used in connection with the confirmation process, either formally as evidentiary exhibits or informally by Debtors and their creditor constituencies in negotiations and the development of their positions regarding contested legal and factual confirmation issues.[7] Throughout this process, Sidley's professionals have worked closely with the Debtors' senior management to advise on the legal issues implicated by the document production requests received by the Debtors from numerous third parties.

34.    During the Seventh Interim Fee Period, Sidley continued to receive, process, review, and analyze documents submitted by the other Producing Parties that were responsive to the Debtors' discovery requests. Sidley's professionals also collected and reviewed several hundred thousand pages of the Debtors' documents and electronic records for relevance and privilege, including corporate documents, financial records, board of directors' minutes and resolutions, and electronic computer files from certain of the Debtors' employees, for production to the Examiner and to other parties in interest authorized to receive the discovery materials in the Document Depository (the "Depository Designees"). Upon completing their

---

[7] By way of illustration, the DCL Proponents (defined below) designated 1,587 exhibits and the Noteholder Plan Proponents (defined below) designated 2,648 exhibits for use at the contested plan confirmation hearings held in March and April 2011.

review of the Debtors' documents, Sidley's professionals also prepared appropriate privilege logs relating to such documents as part of the discovery process.

35.    The collection, review, and analysis of such a volume of documents in connection with the discovery efforts undertaken in these chapter 11 cases requires a team of professionals, paraprofessionals, litigation support specialists, and other personnel.  Much of the collection, review, and production of discovery documents has been accomplished by means of an electronic data discovery system ("EDD") maintained by Sidley's litigation support specialists, analysts, and technicians.  Sidley's litigation support specialists received and processed the raw data and physical documents provided by the Debtors into the 4.5 million-document database so that they can be reviewed by attorneys.  Sidley's professionals reviewed the documents, prepared privilege logs, and prepared approved documents for production.  In connection with those discovery activities, Sidley's professionals and paraprofessionals coordinated with third parties the claw-back and replacement of inadvertently produced documents and resolved issues related to data spoliation, preservation, and quality control.

(c)    The Examiner's Report and Discharge of the Examiner

36.    The Examiner's appointment was intended to assist the Court and the parties in the analysis and disposition of issues related to, *inter alia*, the LBO-Related Claims, and for that reason, the Examiner's Report of the legal and factual findings arising from the Investigation was much anticipated by all parties in these chapter 11 cases.  The Examiner analyzed recoveries to the creditors of the Debtors other than the senior lenders and the Bridge Lenders in six different litigation scenarios (plus two additional scenarios that consider disgorgement proceeds recovered from stockholders who sold their stock during "Step Two" of the Leveraged ESOP Transactions).  Following the release of the Examiner's Report, Sidley's professionals expended considerable time and effort reviewing and analyzing the Examiner's

17

findings and conclusions with respect to these litigation scenarios as well as the other issues the

Examiner opined on in his Report.  As discussed below in the context of the Debtors' plan

process, the Examiner's Report precipitated the termination of the Original Plan and served as a

backdrop for the mediation and extensive negotiations conducted by the parties since its

issuance.  Additionally, the proponents to the competing plans of reorganization proposed for the

Debtors stipulated to admit the Examiner's Report into evidence for consideration by the Court

in connection with the confirmation hearings conducted in March and April 2011.

       37.     The Examiner's Report is comprised of four volumes totaling 1,425 pages

and is supported by approximately 1,100 exhibits totaling 21,290 pages and 15 transcripts of

witness depositions and interviews (including exhibits thereto) totaling 5,853 pages.  (D.I. 5247-

5250.)  In sum, the complete Report totals over 28,500 pages of materials.  The Report was filed

with the Court under seal on July 26, 2010, with a summary and heavily-redacted version filed

publicly.  (D.I. 5130-5133.)  Sidley's professionals consulted extensively with the Examiner and

his professionals and other parties-in-interest regarding the scope and terms of the public release

of the unredacted Examiner's Report, and participated in omnibus hearings held on this issue on

July 29, 2010 and August 3, 2010.  Following the August 3 hearing, the Examiner filed the full,

public version of the Report, along with supporting exhibits and transcripts of the testimony

taken by the Examiner.

       38.     On July 23, 2010, the Examiner filed a motion seeking an order (i)

discharging the Examiner, (ii) granting the Examiner and his professionals relief from third-party

discovery, (iii) authorizing the disposition of the non-confidential documents comprising the

record of the Examiner's Investigation, (iv) exculpating the Examiner and his professionals in

connection with the Examiner's Investigation and the report filed by the Examiner with the

Bankruptcy Court, (v) approving a procedure for the filing and consideration of final fee

applications of the Examiner and his professionals, and (vi) authorizing and directing the

reimbursement of the reasonable fees and costs incurred by the Examiner and his professionals in

connection with any future services provided by the Examiner (D.I. 5115) (the "Discharge

Motion").[8] Sidley's professionals reviewed the proposed terms of the Examiner's discharge and

the disposition of the record resulting from the Investigation and prepared and filed a response

on behalf of the Debtors on August 13, 2010. (D.I. 5382) After substantive negotiations with

the Examiner and his counsel relating to the Discharge Motion, the Debtors and the Examiner

reached an agreement that was reflected in the order approving the Discharge Motion, which was

entered on August 26, 2010. (D.I. 5541)

        (d)    Adversary Proceedings

        39.    As described in Sidley's Sixth Quarterly Fee Application Request, on

March 4, 2010 Wilmington Trust Corporation filed a voluminous adversary complaint against

numerous parties that participated or served a role in the Leveraged ESOP Transactions,

purporting to seek equitable subordination, disallowance of claims, damages, and imposition of a

constructive trust against such parties (Adv. No. 10-50732, D.I. 1) (the "WTC Complaint"). In

response, on March 18, 2010 Sidley filed a motion on behalf of the Debtors seeking a

determination that the WTC Complaint violated the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent it raised estate claims. (D.I. 3759). In that motion the Debtors

requested that WTC be required to demonstrate why it should not be held in contempt of court

for filing the WTC Complaint, and sought to halt all proceedings respecting the WTC Complaint.

(*Id.*)

---

[8] As noted above, the Court approved fees of the Examiner and his professionals in the aggregate amount of
$11,679,139.95, plus costs, in connection with the Investigation and preparation of the Examiner's Report.

40.    As part of the Investigation, the Examiner was directed by the Court to review and analyze the parties' contentions raised in the WTC Complaint and related pleadings. Sidley's professionals in the Bankruptcy and Litigation practice groups prepared briefs and submissions to the Examiner on these issues during the Sixth Interim Fee Period and continuing through June and July 2010. Part V of the Examiner's Report detailed the Examiner's findings and conclusions on this issue, specifically that the WTC Complaint is reasonably unlikely to have violated the automatic stay because it does not assert estate causes of action, but actions personal to WTC. The adversary proceeding relating to the WTC Complaint has been and remains stayed by order of the Bankruptcy Court.

(e)    Stay Relief Motions

41.    The Debtors were involved in over one hundred active or threatened lawsuits as of the Petition Date, all of which were stayed as a result of the commencement of these chapter 11 cases. As in most chapter 11 cases, the Debtors have been the subject of numerous requests by third parties for relief from the automatic stay throughout these cases. Specifically, the Debtors have received eighteen (18) requests for relief from stay since the commencement of these cases, one of which was received during the Seventh Interim Fee Period. That request, filed by Ivan J. Bates on June 8, 2010 (D.I. 4725) was opposed by the Debtors on various grounds, including that the underlying litigation was filed in violation of the automatic stay and that grounds for relief from the stay were not met. Sidley's professionals prepared and filed an objection to Mr. Bates's motion on July 7, 2010 (D.I. 4951) and participated in an oral argument before the Court at the hearing held on September 15, 2010. As a result of these efforts, the Court denied the relief requested by Mr. Bates by order entered on September 20, 2010 (D.I. 5733).

(f)    Other Pending and Potential Litigation Matters

42.    Prior to the Petition Date and since, Sidley has served the Debtors as defense counsel with respect to a number of litigation matters pending in all levels of state and federal courts across the country, including such matters as *Neuman v. Goldstone*, a prepetition employment contract lawsuit in Los Angeles, and certain litigation matters pending in New York, including the cases styled *Schultz v. Tribune*, *Crab House of Douglaston, Inc. v. Newsday*, and *Furnell v. Tribune*. Sidley continued to represent the Debtors in connection with these litigation matters during the Seventh Interim Fee Period, to the extent such matters were not stayed by section 362(a) of the Bankruptcy Code, and also provided advice to the Debtors with connection with proofs of claim filed by the plaintiffs on account of such litigated matters. In addition, in May 2010, Sidley was asked by the Debtors to provide advice and counsel on the application of the laws of England to a potential litigation matter. Although these services were rendered prior to the Seventh Interim Fee Period, certain of the professional services related to this work were first invoiced in June 2010 and are thus part of this Quarterly Fee Application Request.

**K.      Travel Time (30480):    Hours: 158.90  Fees: $59,854.75**

43.    During the Seventh Interim Fee Period, Sidley's professionals spent time traveling to Wilmington, Delaware to attend various hearings in the Debtors' cases, including disclosure statement hearings and omnibus hearings. In addition, Sidley's professionals traveled to a variety of locations to attend meetings with the Debtors and various creditor constituencies on a range of subjects, but primarily related to negotiations to resolve the Debtors' chapter 11 cases and the formulation and confirmation of a plan or reorganization. The hours reflect non-working travel time and the fees requested in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

21

**L.      Labor Issues (30490):   Hours: 8.30  Fees: $5,932.50**

44.      Approximately 15% of the Debtors' employees are represented by labor

unions.  During the Seventh Interim Fee Period, Sidley's professionals continued to address and

analyze a variety of legal issues concerning the impact of these chapter 11 cases on the Debtors'

collective bargaining agreements, multiemployer pension plans, and obligations thereunder.

45.      In addition, Sidley's professionals continued to work with the Debtors to

respond to various bankruptcy-related issues and questions raised by the Pension Benefit

Guaranty Corporation ("PBGC") in connection with certain of the Debtors' labor contracts.

Sidley's professionals also continued to analyze the implications of the sale of substantially all of

the assets of the Chicago Sun-Times newspaper business (in connection with its chapter 11

proceedings) on the multiemployer pension plan shared between the Chicago Sun-Times and the

Chicago Tribune Company, and researched and provided guidance to the Debtors regarding

various tax disclosure and deferred compensation issues arising in conjunction with the Original

Plan.

**M.      Plan and Disclosure Statement (30500):   Hours: 4,989.90  Fees: $3,312,620.50**

46.      Beginning shortly after the commencement of the chapter 11 cases, Sidley,

together with the Debtors' management and other professionals, commenced the formulation of a

chapter 11 plan for the Debtors with the goal of achieving a resolution of claims against the

Debtors' estates, including the LBO-Related Claims, that would be acceptable to a wide range of

constituencies and that could form the basis for a consensual plan of reorganization.  These

discussions, in turn, led to the proposal of the Original Plan and related Disclosure Statement,

which embodied the substantive terms of the "Settlement Support Agreement" executed on April

8, 2010 by the Debtors' senior lenders JPMorgan and Angelo, Gordon & Co. ("Angelo Gordon")

and senior noteholders Law Debenture and Centerbridge, and which was supported by the

22

Committee. The parties to the Settlement Support Agreement anticipated that consensual

confirmation of the Original Plan, which was centered around a global settlement of the LBO-

Related Claims, could be achieved in August 2010. The Court scheduled confirmation hearings

relating to the Original Plan for the week of August 30 through September 3, 2010 (D.I. 4928).

In furtherance of that objective, during the Seventh Interim Fee Period Sidley's professionals met

and conferred on a regular basis with the Debtors' senior management, other professionals, and

various creditor constituencies to analyze and negotiate a variety of legal issues raised by the

plan, confirmation, and the Debtors' eventual emergence from chapter 11.

        47.     Sidley's professionals in the bankruptcy, corporate, tax, litigation, and

FCC regulatory practice groups continued to conduct the extensive operational, financial, and

legal analyses necessary to the development of the Original Plan and Disclosure Statement, as

they evolved based on such negotiations. In the case of Sidley's practice groups other than the

Bankruptcy practice, these efforts included (i) drafting documents relating to the post-bankruptcy

corporate governance of the Debtors, including the articles of incorporation, by-laws and other

corporate documents required by the plan of reorganization (each of which were filed as part of

the Plan Supplement discussed below); (ii) developing the Restructuring Transactions and

related exhibits to the Original Plan, which, as modified in the DCL Plan (defined below), will

be implemented by the reorganized Debtors through the plan; (iii) preparation of the extensive

tax disclosures contained in the Disclosure Statement prepared and circulated with the Original

Plan as part of the solicitation of votes thereon and related elections; (iv) preparation and

negotiation of the tax-related provisions of the Original Plan, and evaluation of the Original Plan

from a tax perspective; (v) working with the co-proponents of the Original Plan and the Debtors'

in-house personnel and other professionals to structure the process for obtaining FCC approvals

that are necessary prior to the Debtors' emergence from these chapter 11 cases, and draft the

relevant provisions in the plan of reorganization; and (vi) the Original Plan's treatment of various

litigation claims involving the Debtors, including the LBO-Related Claims.

        (a)    Preparation and Filing of the Plan Supplement

        48.    The Original Plan provided that a "Plan Supplement" containing various

exhibits to the plan was to be filed with the Bankruptcy Court prior to the deadline established

for objecting to confirmation of the plan, which, at the time, was scheduled for August 13, 2010.

The Plan Supplement was filed on July 29, 2010 (*See* D.I. 5202, 5203, 5204, and 5206).

Included in the Plan Supplement were the following substantive exhibits: (i) the New Warrant

Agreement, (ii) a detailed description of the Restructuring Transactions, (iii) Certificate of

Incorporation of Reorganized Tribune, (iv) By-Laws of Reorganized Tribune, (v) Directors and

Officers of Reorganized Tribune, (vi) Directors and Officers of Reorganized Debtors Other Than

Reorganized Tribune, (vii) Terms of New Senior Secured Term Loan Agreement, (viii) Terms of

Exit Facility Credit Agreement, (ix) Rejected Executory Contracts and Unexpired Leases, and

(x) Indemnification Claim Procedures.  The preparation of each of the Plan Supplement exhibits

required the involvement of Sidley's professionals in the bankruptcy, corporate, tax, litigation,

and other practice groups, in conjunction and cooperation with the Debtors and the co-

proponents of the Original Plan and their professionals.

        (b)    Solicitation and Balloting

        49.    Sidley's professionals, together with the Court-appointed claims,

noticing, and balloting agent (the "Voting Agent"), also undertook the solicitation of votes on the

Original Plan during the Seventh Interim Fee Period.  Sidley prepared and filed additional

revisions to the proposed form of order accompanying the Motion of the Debtors for an Order (I)

Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Joint Plan

of Reorganization for Tribune Company and Its Subsidiaries; (II) Establishing Deadline for

Return of Media Ownership Certifications; (III) Scheduling Confirmation Hearing; (IV)

Establishing Notice and Objection Procedures in Respect of Confirmation of Joint Plan of

Reorganization; and (V) Granting Related Relief (D.I. 4204) (the "Solicitation Procedures

Motion") on June 1, 2010 (D.I. 4651), and June 4, 2010 (D.I. 4692). The Order approving the

Solicitation Procedures Motion was entered by the Bankruptcy Court on June 7, 2010 (D.I.

4707). Sidley's professionals also worked extensively with the Voting Agent to effect the

distribution of solicitation packages and other materials to the holders of claims against the

Debtors. More than 37,950 solicitation packages and 133,950 other notices to creditors were

distributed as part of the solicitation process, plus an additional 398,000 notices to former

customers regarding credit/refund claims, making the solicitation of the Original Plan

remarkably large even by the standards of large, complex chapter 11 reorganizations. Sidley's

professionals also worked with the Voting Agent and the other proponents of the Original Plan to

address all noticing issues as they arose in the solicitation process. Following the distribution of

ballots and solicitation materials to the holders of claims entitled to vote on the Original Plan,

Sidley's professionals responded to numerous substantive and procedural inquiries from the

Debtors' various creditor constituencies.

        (c)      Objections to the Disclosure Statement and Approval of the Adequacy of
                       the Disclosure Statement

        50.      Following the filing of the Original Plan and Disclosure Statement and

prior to the initial deadline for filing objections to the approval of the Disclosure Statement and

Solicitation Procedures Motion, the Debtors received approximately fourteen (14) objections (the

"Disclosure Statement Objections") to the Disclosure Statement and Solicitation Procedures

Motion, plus numerous other informal objections or responses thereto. Sidley's professionals

reviewed and analyzed each of the Disclosure Statement Objections and expended substantial time and effort to engage with each of the objecting parties, to the extent practicable, to resolve the Disclosure Statement Objections consensually. As a result of these efforts, all objections to the Disclosure Statement and the Solicitation Procedures Motion were Resolved consensually or overruled by the Bankruptcy Court, as discussed below.

51.    Based on the then-outstanding Disclosure Statement Objections and the statements of the Court made at the supplemental hearing on the fourth iteration of the Original Plan and Disclosure Statement held on May 28, Sidley's professionals continued their efforts into the Seventh Interim Fee Period to negotiate and revise the Disclosure Statement and Original Plan. Specifically, Sidley prepared and filed further proposed revisions to the Disclosure Statement on June 1, 2010 (D.I. 4650) and June 4, 2010 (D.I. 4690), principally for the purpose of addressing remaining outstanding Disclosure Statement Objections. The Court held a final hearing on the adequacy of the Disclosure Statement on June 4, 2010 and entered an order approving the Disclosure Statement and Solicitation Procedures Motion, each as amended, on June 7, 2010 (D.I. 4707).

(d)    Impact of the Examiner's Report on the Original Plan

52.    After the issuance of the Examiner's Report, Sidley's professionals and counsel to each of the other parties to the Global Settlement embodied in the Original Plan independently reviewed the Examiner's findings and conclusions and assessed the implications of the Examiner's Report on the Global Settlement as a whole. On August 9, 2010, in light of the Examiner's Report and the parties' differing views of its implications, the Settlement Support Agreement was terminated and efforts to confirm the Original Plan were abandoned.

53.    After the termination of the Global Settlement, Sidley's professionals redoubled their efforts to strive for a consensual resolution of the LBO-Related Claims and,

26

throughout the month of August, Sidley's professionals and counsel for all major stakeholders

negotiated to achieve a new compromise that would reflect the parties' assessment of the

Examiner's Report and its findings. The results of those ongoing discussions were reported to

the Court at successive hearings held on August 17 and 20, 2010. After the parties' plan

negotiation efforts were ultimately unsuccessful, the Debtors requested the appointment of a

mediator to assist with negotiations and, on September 1, 2010, the Bankruptcy Court appointed

Judge Kevin Gross as mediator.[9]

54.    Meanwhile, the Debtors created a Special Committee of the Board of

Directors to review and approve any potential settlement on behalf of the Debtors. As described

in the following section, Sidley's professionals assisted the Debtors with retaining Jones Day as

counsel to the Special Committee. Sidley's professionals coordinated with the professionals at

Jones Day by communicating the status of the parties' settlement discussions and providing an

analysis of the parties' respective positions and the various settlement proposals, to assist Jones

Day in carrying out its duties as counsel to the independent Special Committee of the Board of

Directors.

**N.    Professional Retention (30510):    Hours: 71.70  Fees: $3,960.00**

55.    The Debtors' large and diverse businesses require the employment and

retention of a variety of professionals to support these bankruptcy proceedings and to continue

managing the litigation, real estate, tax, accounting, and other needs of their business operations

---

[9] On October 22, 2010, the Debtors, the Committee, Angelo Gordon, JPMorgan, and Oaktree Capital Management, L.P. ("Oaktree") (collectively, the "DCL Plan Proponents") filed a Joint Plan of Reorganization for Tribune Company and Its Subsidiaries, together with general and specific disclosure statements, as directed by the Court (the "DCL Plan"). On October 29, 2010, Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture, and Wilmington Trust Company (collectively, the Noteholder Plan Proponents") filed a competing Joint Plan of Reorganization and specific disclosure statement (the "Noteholder Plan"). Further discussion of Sidley's efforts in connection with the DCL Plan and Noteholder Plan will be provided in Sidley's subsequent Quarterly Fee Application Requests to this Court.

in the ordinary course. During the Seventh Interim Fee Period, Sidley's professionals assisted

the Debtors with modification of the scope of the existing retentions of Ernst & Young LLP

("E&Y") and Jones Day in connection with additional services to be provided to the Debtors by

such professionals. In each instance, Sidley's professionals consulted with the Debtors'

management to determine the appropriate scope and terms of the supplemental retention, and

coordinated with counsel for and personnel of each of E&Y and Jones Day that Sidley could

prepare the necessary pleadings to obtain Court approval of such retention. In addition, Sidley's

professionals reviewed and responded to certain issues raised by the UST in its objection to the

proposed modification to the scope of Jones Day's retention. The Order modifying the scope of

the retention of E&Y was approved by the Court on June 14, 2010 (D.I. 4779) and the Order

authorizing the retention of Jones Day as Special Counsel for the Special Committee of Tribune

Company's Board of Directors *nunc pro tunc* to August 22, 2010 was approved by the Court on

September 13, 2010 (D.I. 5665). During the Seventh Interim Fee Period, Sidley's professionals

researched and responded to the United States' Trustee's objection to Jones Day's retention.

56.     In addition, Sidley's professionals prepared and filed several additional

supplements to the list of the Debtors' ordinary course professionals ("OCP") and coordinated

with the Debtors' legal department and financial advisors to prepare and file monthly and

quarterly reports of proposed payments to OCPs. In connection therewith, Sidley's professionals

assisted three OCPs in preparing and filing applications with the Court for allowance of their

fees, in connection with the Court's order governing the retention and compensation of OCPs.

**O.     Tax Issues (30520):    Hours: 203.30 Fees: $109,206.53**

57.     During the Seventh Interim Fee Period, Sidley's tax professionals

contributed substantially to the analysis of the tax implications of the Debtors' proposed plan of

reorganization on the Debtors' emergence from chapter 11. For example, Sidley's professionals

in the Tax and Corporate practice groups collaborated on the formulation of the Restructuring

Transactions (discussed above in connection with the Plan and Disclosure Statement matter) to

accomplish several tax, administrative and strategic business objectives.

58.     The tax consequences of the Original Plan – both to the Debtors and to

holders of claims under the Plan – are described in detail for approximately 10 pages of the

Disclosure Statement accompanying the Original Plan, the preparation of which required careful

and detailed analysis of numerous tax issues.  Sidley's tax professionals analyzed and

participated in the drafting of disclosures relating to the U.S. federal income tax consequences of

the Original Plan and related Restructuring Transactions to the Debtors.  Sidley's professionals

also analyzed and prepared disclosures relating to the potential tax consequences of the Original

Plan on holders of claims and interests, which analysis included specific descriptions and

disclosures relevant to holders of Loan Claims and Loan Guaranty Claims (as defined in the

Disclosure Statement), Senior Noteholder Claims, General Unsecured Claims, Convenience

Claims, claims arising from certain employee benefit plans, holders of certain notes claims,

holders of securities litigation claims, and holders of Tribune interests.

59.     In addition, Sidley's professionals reviewed and analyzed a variety of

discrete tax issues on behalf of the Debtors, both arising from and in connection with these

chapter 11 cases and in connection with Sidley's representation of the Debtors in tax matters in

the ordinary course of the Debtors' business.  Among other tasks, Sidley's professionals

reviewed and analyzed tax-related claims and liabilities, considered the tax implications of

proposed transactions, handled appeals of tax assessments, advised the Debtors with respect to

potential settlements of tax claims, and communicated with taxing authorities concerning all

such matters.

**P.   Claims Processing (30530):   Hours: 366.70  Fees: $195,120.50**

60.   During the Seventh Interim Fee Period, Sidley's professionals continued

evaluating, researching, and analyzing the treatment of various types of claims arising in the

Debtors' chapter 11 cases, covering the full spectrum of potential liabilities.  To date,

approximately 7,000 proofs of claim have been filed in these chapter 11 cases.  Sidley's

professionals assigned to handle claims-related matters participated in regular conference calls

with the Debtors' financial advisors, A&M, in order to coordinate the processing of the proofs of

claim, evaluating the legal sufficiency of the claims, and preparing objections thereto.

61.   During the Seventh Interim Fee Period, Sidley's professionals, working

together with the Debtors' management, business personnel, and A&M, prepared and filed the

Debtors' 32nd through 35th omnibus objections to claims.  Sidley's professionals reviewed and

responded to formal and informal responses by claimants to the claims objections, and

coordinated with the Debtors' personnel to negotiate the consensual resolution of objections

where feasible.  During the Seventh Interim Fee Period, the Bankruptcy Court entered orders

sustaining, in whole or in part, the Debtors' 19th omnibus objection and the Debtors' 27th through

32nd omnibus objections that had previously been filed by Sidley on behalf of the Debtors

(subject to the continuance of objections to certain claims of creditors who filed responses to

such objections).

62.   In addition, Sidley's professionals assisted the Debtors with negotiating

and implementing agreements and stipulations settling disputed claims without need for formal

objections, in accordance with the Order approving claims settlement procedures that was

entered by the Court to facilitate consensual resolution of claims.  (*See* D.I. 2657.)  Those

procedures provide the Debtors with authority to settle or compromise disputed claims of less

than $50,000 in their discretion, claims equal to or greater than $50,000 but less than $1,000,000

30

upon notice to the UST and counsel to the Committee and certain senior lenders, and claims

equal to or greater than $1,000,000 with the approval of the Court pursuant to Bankruptcy Rule

9019.  On August 25, 2010, Sidley's professionals prepared and filed a quarterly report reflecting

that 24 such consensual stipulations for amounts less than $1,000,000 had been negotiated and

executed by the Debtors during the preceding quarter.  (*See* D.I. 5503.)

**Q.    Business Operations (30550):    Hours: 299.20 Fees: $131,767.50**

63.    The Business Operations matter category encompasses the activities of

Sidley's professionals with respect to their representation of the Debtors in corporate and

transactional matters in the ordinary course of the Debtors' business, as well as other general

corporate law and transactional advice, both related to these chapter 11 cases and otherwise

related to the Debtors' businesses.  These services are necessary to facilitate the Debtors' efforts

to stabilize and reposition their businesses through cost saving and revenue enhancing strategies,

as well as to prepare the Debtors for their emergence from chapter 11.   In addition to the

foregoing, Sidley's professionals addressed a variety of discrete matters arising postpetition in

the ordinary course of the Debtors' business, including the review of proposed transactions,

contracts, and leases.

64.    During the Seventh Interim Fee Period, Sidley's professionals in the

corporate practice group expended substantial time and effort to prepare, research, and analyze

potential value maximization strategies regarding the Debtors and certain of the Debtors'

properties that are embodied in the Restructuring Transactions exhibit filed with the Plan

Supplement, discussed above.  The Restructuring Transactions exhibit describes the

Restructuring Transactions to be consummated by the Debtors and their successors for each of

Tribune's primary business groups: (i) Broadcasting; (ii) Publishing; and (iii)

Corporate/Investments.  The Restructuring Transactions include certain mergers and

31

consolidations within the Company, conversions to limited liability companies, formations of new limited liability companies where conversion is not possible, and intercompany conveyances. In addition to the expected tax advantages described above in the Tax Matters section, the Restructuring Transactions are designed to simplify the company's organizational structure, which has grown to more than one hundred entities, and more closely align the Tribune organizational structure with its operations, by eliminating certain entities and standardizing the organizational documents of its subsidiaries. The proposed structure will reduce the administrative complexity and expense associated with operating and maintaining such a large number of entities in different jurisdictions with different formation and organizational documents. As part of the formulation of the Restructuring Transactions, in advance of the July 30, 2010 filing of the Plan Supplement, Sidley's professionals conducted a detailed review of the formation documents of each of the Debtors and their non-debtor affiliates and analyzed the corporate laws applicable to each entity to determine the most efficient means for accomplishing the Debtors' objectives in implementing the Restructuring Transactions.

**R.**    **Case Administration (30560):    Hours: 263.40  Fees: $113,314.50**

65.    During the Seventh Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings to the Debtors, the Committee, the United States Trustee, and other interested parties, and maintaining a schedule of critical dates and deadlines. On a periodic basis during this Seventh Interim Fee Period, Sidley's professionals participated in status calls with the Debtors' senior management and financial advisors to discuss pending motions and issues and the outcome of hearings. In addition, Sidley's paraprofessionals are responsible for monitoring the docket for all filed pleadings and preparing and distributing a daily status report to the Debtors' senior management and Sidley professionals.

32

**S.    Creditor Communications (30570):    Hours: 1.80  Fees: $1,108.00**

66.    Throughout the Seventh Interim Fee Period, Sidley's professionals have responded to inquiries and communications from individual creditors as well as from representatives of larger groups of the Debtors' creditor constituencies regarding the status of these chapter 11 cases.

**T.    Employee Issues (30590):    Hours: 1,210.30  Fees: $678,024.00**

67.    During the Seventh Interim Fee Period, Sidley's professionals in the Bankruptcy and Employment practice groups advised the Debtors with respect to emergence equity and severance plans, including provisions thereof intended to be effective with respect to certain individuals employed by the Debtors as of the effective date of a plan of reorganization and provisions intended to be effective on a "going forward" basis. Sidley continued to prepare drafts of such plans and addressed inquiries from creditors and made appropriate adjustments to the equity and severance plans in response.

68.    Additionally, Sidley's professionals remained substantially engaged in assisting the Debtors with various issues pertaining to employee-related matters. Specifically, Sidley's professionals continued to advise the Debtors with respect to the development of the 2010 management incentive plans ("MIP") during this period. As discussed in Sidley's Sixth Quarterly Fee Application, Sidley filed the Motion of the Debtors for an Order Authorizing the Debtor to Implement a Management Incentive Plan for 2010 on May 26, 2010 (D.I. 4620) (the "2010 MIP Motion"). Subsequently, the Sidley's professionals filed responses to objections to the 2010 MIP Motion filed by Wells Fargo and the United States Trustee. On July 23, 2010, based on subsequent discussions with the Committee, Sidley prepared and filed a notice of certain revisions to the 2010 MIP Motion. The hearing on the 2010 MIP Motion, as revised

occurred on November 10, 2010, following which the Bankruptcy Court entered an order approving the substantial majority of the relief requested therein.

69.    In addition to the foregoing, Sidley's professionals responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, drafted emergence equity and severance plans, responded to numerous information requests from and/or regarding current and former employees, analyzed employee-related claims, and handled various other issues in connection with the Debtors' employees.

**U.    2010 Exit Credit Facility (13700):    Hours: 57.80  Fees: $36,481.00**

70.    In May 2010, Sidley commenced providing services to the Debtors relating to the evaluation, negotiation, and eventual implementation of a post-confirmation financing facility that will provide a source of funding for the reorganized Debtors upon their emergence from these chapter 11 cases.  During the Seventh Interim Fee Period, the fees incurred by Sidley in connection with this matter related to certain initial planning and preparatory steps with the Debtors' management and potential lenders.  Sidley's professionals in the Banking and Bankruptcy practice groups reviewed, researched, analyzed, and drafted a proposed term sheet for an Exit Facility Credit Agreement consisting of a $300 million revolving facility and a $100 million letter of credit sub-facility.  The term sheet regarding such exit financing was filed in conjunction the Plan Supplement on July 30, 2010 (*see* D.I. 5205).

**EXPENSES INCURRED**

71.    Sidley has incurred expenses of $310,093.90 in connection with its services rendered to the Debtors during the Seventh Interim Fee Period.  These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related

34

expenses, overtime services, in-house document production, and professional services from

contract attorneys relating to discovery activities in connection with the Leveraged ESOP

Transactions and Examiner's Investigation. Sidley submits that all such expenses are necessary

and actual expenses for the performance of its services in these cases, and further submits that

many of such expenses were necessitated by the time constraints under which Sidley's

professionals and staff have operated in these cases.

72.    Computer research and information retrieval services are charged on a

time, item and/or search-type basis which takes advantage of certain discounts that Sidley is able

to negotiate with the relevant service providers because of the Firm's size and volume of usage.

The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate

that recovers no more than the Firm's costs.

73.    Sidley submits that all travel expenses incurred during the period covered

by this Application were necessary, reasonable, and reflect the prevailing market rates. In

particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors'

personnel during the period covered by this Application was at the prevailing coach-class rate for

such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies

for business travel for bankruptcy and non-bankruptcy matters.

74.    Sidley's normal billing practices, as set forth in the pleadings supporting

its retention in these chapter 11 cases, include standard secretarial services as part of normal

overhead. For certain projects involving large and/or time-sensitive administrative and logistical

requirements resulting from client needs, Sidley utilizes the services of third-party providers in

the place of clerical personnel on staff during normal business hours and bills those services to

the client at Sidley's cost for such services. During the Seventh Interim Fee Period, Sidley

charged a total of $5,803.68 relating to outside document production, word processing and/or document binding/drilling services that were billed to the Debtors at cost; that is, no markup for such services is applied by Sidley.

75.    In connection with Sidley's maintenance of the Document Depository, in which the equivalent of approximately 4.5 million pages of documents relating to the Leveraged ESOP Transactions are electronically stored, Sidley utilized the services of an outside vendor to process electronic data files for production upon request to the Examiner and Depository Designees. During the Seventh Interim Fee Period, Sidley was subject to substantial time constraints imposed by the need to pursue the confirmation of the Original Plan and facilitate the Examiner's Investigation simultaneously, in accordance with the schedule approved by the Bankruptcy Court. Sidley utilized the services of contract attorneys to supplement the Firm's Litigation professionals in the review and analysis of documents received and produced in discovery to meet the deadlines imposed by this schedule. During the Seventh Interim Fee Period, Sidley charged a total of $125,692.61 relating to such outside document processing and professional services (under the expense category "Professional Services/Specialists") that were billed to the Debtors at cost. A detailed breakdown of Sidley's expenses incurred in rendering services to the Debtors during the period covered by this application is incorporated into this Application as part of Attachment B hereto.

## REVIEW OF APPLICABLE LOCAL RULE

76.    The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this application substantially complies with Rule 2016-2.

## **NOTICE**

77.     Notice of this Application has been served upon the Notice Parties specified in the Fee Orders.  In accordance with the terms of the Fee Orders, no other or further notice is required.

## **NO PRIOR REQUEST**

78.     Other than the applicable Monthly Fee Applications, no previous application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $7,081,656.37 and reimbursement of expenses in the amount of $310,093.90, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this seventh Quarterly Fee Application Request and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: May 4, 2011

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION