## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: May 25, 2011 at 1:00 p.m. (ET)**<br>**Objection Deadline: May 18, 2011 at 4:00 p.m. (ET)** |

## MOTION OF DEBTOR HOMESTEAD PUBLISHING CO. FOR AN ORDER PURSUANT TO SECTIONS 363(b), (f), (m) AND (n) OF THE BANKRUPTCY CODE AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED IN COLUMBIA, MARYLAND

Homestead Publishing Co., one of the debtors and debtors in possession in the

above-captioned chapter 11 cases ("Homestead" or the "Debtor" and collectively, with its

affiliates that have commenced these chapter 11 cases, the "Debtors"), by and through its

undersigned counsel, hereby moves the Court (the "Motion") for entry of an order pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (7384); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

section 363 of title 11 of the United States Code (the "Bankruptcy Code") authorizing

Homestead to sell a parcel of real property commonly known as 10750 Little Patuxent Parkway,

Columbia, Maryland (the "Columbia Property") to 175 LLC (the "Purchaser"), on the terms and

conditions as set forth in that certain Purchase and Sale Agreement dated May 3, 2011 (the "Sale

Agreement") attached hereto as Exhibit A free and clear of all liens, claims and encumbrances.

The proposed purchase price for the Columbia Property is $3,850,000.00 (the "Purchase Price").

In support of this Motion, Homestead (i) submits the attached Declaration of Michael H. Sacks,

Vice President of Operations of Tribune Publishing Company, which is attached hereto as

Exhibit B (the "Sacks Declaration"), and (ii) respectfully states the following:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008,

the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes

only.  An additional Debtor, Chicago National League Ball Club, LLC (n/k/a Tribune CNLBC,

LLC), voluntarily commenced a chapter 11 case on October 12, 2009, and that case was

procedurally consolidated with the other Debtors' chapter 11 cases by an order of the Court

entered October 14, 2009.

2.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On December 18, 2008, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors in these cases (the

"Committee").

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND TO THE MOTION

5.      The Columbia Property, located approximately 25 miles from Baltimore, is a commercial property consisting of an office building of approximately 29,450 square feet in size resting on approximately 2.18 acres of real property. Until recently, the Columbia Property was used for the publication of a local newspaper and housed all newspaper personnel, including but not limited to sales people, editors and reporters. However, in a consolidation effort aimed towards greater efficiency, such operations were moved in February 2011 from the Columbia Property to already-owned vacant space in a facility which houses operations for *The Baltimore Sun* in Baltimore, Maryland. The Columbia Property has accordingly been vacant for the past three months. See Sacks Declaration at ¶ 3. Neither Homestead nor any of the other Debtors have conducted business operations on the Columbia Property since such time, nor do any of the Debtors anticipate having any need to use the Columbia Property in the future. See Sacks Declaration at ¶ 4. The Columbia Property also has substantial annual carrying costs. See id.

6.      The Columbia Property was not actively marketed before negotiations with the Purchaser. However, just prior to the Columbia Property becoming vacant, Homestead was approached by the Purchaser with an offer to purchase the Columbia Property for $3,200,000.00. See Sacks Declaration at ¶ 5. Since such time, Homestead and the Purchaser have been in negotiations regarding the terms and sale price of the Columbia Property. See id.

7.      As a result of those negotiations, Homestead and the Purchaser have negotiated and executed the Sale Agreement, which sets forth the terms of the parties' agreement for the sale of the Columbia Property to the Purchaser.  The Sale Agreement provides that the Purchaser will purchase the Columbia Property for the Purchase Price.  No personal property will be transferred as part of the transaction, and there are no leases applicable to the Columbia Property.  Of the Purchase Price, $100,000.00 is to be deposited in an escrow account as earnest money within three (3) business days of entry of an order approving this Motion.  An additional $200,000.00 is to be deposited into the aforementioned escrow account upon expiration of a Study Period[2] provided by the Sale Agreement, as discussed below.  At Closing, such deposits will be credited towards the Purchase Price, and the balance of the Purchase Price will be immediately payable.  See Sale Agreement at § 2.

8.      Upon the Effective Date of the Sale Agreement, the Purchaser will have a ninety (90) day Study Period (subject to a 30-day extension if certain conditions are met) during which it can investigate the Columbia Property to determine, in the Purchaser's sole and absolute discretion, if the Columbia Property is acceptable to the Purchaser and suitable for the Purchaser's use and development.  The Sale Agreement contemplates that the Closing will occur within 60 days from the expiration of the Study Period.  See Sale Agreement at §§ 8, 15.

## RELIEF REQUESTED

9.      By this Motion, Homestead respectfully seeks entry of an order authorizing it to sell the Columbia Property to the Purchaser on the terms set forth in the Sale Agreement, free and clear of all liens, claims and encumbrances, with any such liens, claims, and encumbrances attaching to the proceeds of the sale in the order of their priority, with the same

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Sale Agreement.

validity, force and effect which they now have as against the Columbia Property, subject to any claims and defenses Homestead may possess with respect thereto. Homestead further requests a waiver of the fourteen-day stay provided for in Bankruptcy Rule 6004(h) in order to facilitate the closing of the sale of the Columbia Property as soon as practicable after the entry of the order.

### BASIS FOR RELIEF REQUESTED

10. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (under normal circumstances, courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363).

11. Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

12. Thus, after the debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial

second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion. See, e.g., In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). To impose more exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's provisions for private control" of the estate's administration. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1986).

13.    Courts typically consider the following four factors in determining whether a proposed sale should be approved under section 363: (i) whether a sound business reason exists for the proposed sale; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See In re Delaware & Hudson Ry. Co., 124 B.R. at 176. The sale proposed herein satisfies each of these factors.

## A.    The Sale Should Be Approved as a Proper Exercise of Homestead's Sound Business Judgment

14.    There are substantial business justifications for selling the Columbia Property to the Purchaser on the terms set forth in the Sale Agreement. The Columbia Property provides limited, if any, value to the Debtors' ongoing business operations. Homestead has ceased all business operations at the Columbia Property, and Homestead does not anticipate utilizing the Columbia Property as part of its business operations going forward. See Sacks Declaration at ¶ 4. The proposed sale of the Columbia Property allows Homestead to quickly

monetize a surplus asset pursuant to a sale to a third party for a price that in the commercial

judgment of the Debtors, roughly approximates the value of the Columbia Property and

eliminates substantial yearly carrying costs.  See Sacks Declaration at ¶ 4, 6.  This benefits all

creditors and stakeholders.

15.    Approval of the sale of the Columbia Property as a private sale is

appropriate under the circumstances.  Federal Rule of Bankruptcy Procedure 6004(f)(1) provides

that "sales not in the ordinary course of business may be by private sale or by public auction."

Fed. R. Bankr. P. 6004(f).  Here, while Homestead did not actively market the Columbia

Property, it nonetheless believes that selling the Columbia Property pursuant to the terms of the

Sale Agreement is within its sound business judgment.  The Purchase Price was negotiated over

a three-month period, and the price embodied in the Sale Agreement represents a nearly 20

percent increase over the price the Purchaser originally offered.  See Sacks Declaration at ¶ 5.

The Purchase Price of $3,850,000.00 is also roughly equal to the value of the Columbia Property

as determined by an appraiser retained by Homestead to provide an appraisal for Homestead's

internal use in April 2011.[3]  See id. at ¶ 6.  Homestead believes that further marketing efforts for

public sale are unlikely to result in higher and better offers for the Columbia Property, will result

in additional cash expenses for Homestead and will cause a significant delay in disposing of the

Columbia Property.  Moreover, by selling pursuant to a private sale, Homestead has avoided a

seller-side broker commission that the Debtors anticipate could be over $100,000.00 for the

Columbia Property.  See id.  As a result, and because fair and reasonable consideration will be

provided, the Court should order that no other or further marketing process for the Columbia

---

[3] The appraisal of the Columbia Property contains sensitive business information respecting the Debtors' businesses and is confidential.  The Debtors have, however, made the appraisal available to the Committee and the Debtors' senior lenders, given that such parties have contractual relationships governing the provision of confidential information.

Property is required and that the sale of the Columbia Property may proceed by private sale to the Purchaser.

16.    The Sale Agreement is the product of good faith, arms'-length negotiations among the parties.  Although the Bankruptcy Code does not define the term "good faith purchaser," the Third Circuit, interpreting section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  In re Abbots Dairies, 788 F.2d 143, 147 (3d Cir. 1986).  To constitute a lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  Id. (citing In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings."  In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d at 1198.

17.    The Sale Agreement was agreed to by the parties as a result of negotiations over a three-month period that resulted in the Purchaser substantially increasing the Purchase Price.  See Sacks Declaration at ¶ 5.  The parties negotiated on all material terms of the Sale Agreement in order to reach the sale provided for in the Sale Agreement.  The Purchaser is not affiliated with, nor is the Purchaser an insider of, Homestead or any of the other Debtors. See Sacks Declaration at ¶ 7.  Accordingly, Homestead requests that this Court find that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code[4] and that the sale is not subject to avoidance under section 363(n) of the Bankruptcy Code.[5]

---

[4] Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of an authorization under sections 363(b) or 363(c) of the Bankruptcy Code does not affect the validity of a disposition under that

18.    In light of the foregoing, Homestead respectfully submits that selling the Columbia Property to the Purchaser on the terms set forth in the Sale Agreement is supported by Homestead's sound business judgment and is in the best interests of the Debtors' estates and creditors.

**B.**    **The Sale Should Be Approved Free and Clear of Liens, Claims and Encumbrances**

19.    Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims, interests and encumbrances if "(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests, (2) the entity holding the lien, claim, interest or encumbrance consents to the proposed sale, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

20.    Homestead seeks this Court's approval to sell the Columbia Property to the Purchaser free and clear of all existing liens, claims, and encumbrances that are not expressly assumed by the Purchaser in the Sale Agreement.  Homestead is unaware of any substantial

---

authorization to an entity that has acted in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the relevant transaction were stayed pending the appeal.  See 11 U.S.C. § 363(m).

[5] Section 363(n) of the Bankruptcy Code provides that

> [t]he trustee may avoid a sale under this section if the sale process was controlled by an agreement among the potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.  In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

11 U.S.C. § 363(n).

secured claims against it, and in any event, unaware of any claims that are secured by the
Columbia Property.  See Sacks Declaration at ¶ 8.  Accordingly, a sale free and clear will not
prejudice any of Homestead's creditors.  Furthermore, should Homestead become aware of a lien
or other secured interest on or in the Columbia Property, Homestead believes that the Purchase
Price will be in excess of the value of any such liens, thereby satisfying the conditions for a sale
free and clear under section 363(f)(3).  Upon closing, existing liens, claims and encumbrances (if
any), will attach to the net proceeds of the sale in the order of their priority, with the same
validity, force and effect which they now have against the Columbia Property.  Accordingly,
Homestead submits that the Columbia Property may be sold free and clear of all liens, claims
and encumbrances, pursuant to section 363(f) of the Bankruptcy Code.

## NOTICE

21.     Notice of this Motion has been provided to:  (i) the U.S. Trustee;
(ii) counsel to the Committee; (iii) counsel to the administrative agent for the post-petition
lenders; (iv) counsel to the administrative agents for Tribune Company's prepetition lenders;
(v) counsel to the Purchaser; and (vi) all parties entitled to receive notice in these chapter 11
cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the
Debtors submit no further notice need be given.

WHEREFORE, Homestead respectfully requests that the Court enter an order (i)

authorizing Homestead to sell the Columbia Property to the Purchaser pursuant to the Sale

Agreement and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware        Respectfully submitted,
     May 4, 2011

                        SIDLEY AUSTIN LLP
                        Bryan Krakauer
                        Kenneth P. Kansa
                        Matthew G. Martinez
                        One South Dearborn Street
                        Chicago, IL  60603
                        Telephone:  (312) 853-7000
                        Facsimile:  (312) 853-7036

                              -and-

                        COLE, SCHOTZ, MEISEL,
                        FORMAN & LEONARD, P.A.

                        By: */s/ J. Kate Stickles*
                        Norman L. Pernick (No. 2290)
                        J. Kate Stickles (No. 2917)
                        Patrick J. Reilley (No. 4451)
                        500 Delaware Avenue, Suite 1410
                        Wilmington, DE  19801
                        Telephone:  (302) 652-3131
                        Facsimile:  (302) 652-3117

                        ATTORNEYS FOR DEBTORS AND
                        DEBTORS IN POSSESSION