# EXHIBIT A

*Sale Agreement*

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is made and entered this 3rd day of May, 2011by and between **Homestead Publishing Co.**, a Maryland corporation sometimes also known as **Homestead Publishing Company** (the "Seller") and **175 LLC**, a Maryland limited liability company, its successors or assigns (the "Buyer").

## EXPLANATORY STATEMENT

A.    Seller is the owner of that certain real property located in Howard County (the "County"), State of Maryland, containing approximately 2.18 acres, more or less, located at 10750 Little Patuxent Parkway, Columbia, Maryland, as more particularly described on Exhibit A attached hereto and made a part hereof, and all improvements thereon (the "Real Property").

B.    Buyer wishes to purchase from Seller and Seller wishes to sell to Buyer, under the terms and conditions stated in this Agreement, (i) the Real Property; and (ii) all rights and appurtenances (the "Appurtenances") pertaining to the Real Property including, but not limited to, any right, title and interest of Seller in any adjacent lands, streets, roads, alleys, driveways, ways, waters, easements, privileges, appurtenances, advantages, and rights-of-way.  The Real Property and Appurtenances are hereinafter collectively referred to as the "Property."

In consideration of the Explanatory Statement, which is incorporated herein by reference and deemed a substantive part of this Agreement, the mutual covenants of Seller and Buyer contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Seller and Buyer, Seller and Buyer covenant and agree as follows:

1.    **Purchase and Sale**.  Seller hereby agrees to sell and convey to Buyer and Buyer hereby agrees to purchase from Seller, in fee simple absolute, the Property on the terms and conditions set forth herein, free and clear of all liens, claims, encumbrances and interests, including without limitation any litigation claims and rights of setoff and recoupment (collectively "Liens and Claims"), to the maximum extent permitted by Section 363 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code"), except such liens, claims, encumbrances and interests agreed to in writing by Buyer or waived as set forth herein.

2.    **Purchase Price, Deposit, and Manner of Payment**.

(a)    **Purchase Price**.  The purchase price to be paid by Buyer to Seller for the Property is Three Million Eight Hundred Fifty Thousand Dollars ($3,850,000.00) (the "Purchase Price").

(b)    **Deposit**.  Within three (3) business days after entry of the Sale Approval Order (the "Effective Date"), Buyer shall deliver to a title insurance company designated by the Buyer to handle the settlement of the transaction and insure title to the Property (the "Escrow Agent") the sum of One Hundred Thousand Dollars ($100,000.00) in cash, or by certified or cashier's check or wire transfer of immediately available funds (the "Deposit").  Upon expiration of the Study Period and the Buyer's failure to timely give a Buyer's Notice under Section 8 hereof, the Buyer shall deliver an additional amount of Two Hundred Thousand Dollars ($200,000.00) in cash, or by certified or cashier's check or wire transfer of immediately available funds, which amount, along with all interest thereon and on the original Deposit, shall become a part of the Deposit.  The Escrow Agent shall hold the Deposit in a federally insured interest bearing account.  The Deposit and all interest thereon (less Buyer's share of any Escrow Agent and/or title insurer cancellation fees and charges) shall be fully refundable in the event that this Agreement is terminated for any reason prior to the expiration of the Study Period (as hereinafter defined) or as otherwise set forth in this Agreement.

(c)    **Manner of Payment**.  At Closing (as hereinafter defined), the Deposit shall be credited toward the Purchase Price and the balance of the Purchase Price shall be paid in cash, by wire transfer of immediately available funds in accordance with instructions from Seller to Buyer.  Interest earned on the Deposit shall not be deemed part of the Deposit and shall belong and be paid to the Buyer unless the Deposit is forfeited to Seller pursuant to Section 17 below.

3.    **Recordation and Transfer Taxes**.  The cost of all documentary stamps, recordation, and transfer taxes imposed by law upon this transaction shall be divided equally between Seller and Buyer.  Purchaser shall pay all title insurance premiums charged by Purchaser's title insurance company.  Each party shall bear its own counsel fees.  All other recording and closing costs of any nature or description shall be borne or apportioned in accordance with the custom and practice in the jurisdiction in which the Premises is located.  Purchaser shall pay all costs in connection with any financing of its acquisition of the Property, including any so-called "mortgage tax" or "intangible tax".

4.    **Adjustments**.  All real estate taxes, general or special, and all other public, governmental or private charges or assessments against the Property which are or may be payable on an annual basis including, but not limited to, metropolitan district sanitary commission or other benefit charges or assessments, whether assessments therefore have been levied or not as of the date of Closing (collectively, the "Adjustments"), are to be adjusted or apportioned as of the date of Closing and are to be assumed thereafter by Buyer.

5.    **Insurance and Risk of Loss**.  The Seller shall maintain until Closing or sooner termination of this Agreement fire, hazard, and other insurance policies covering the Property.  The Seller shall name Buyer as an additional insured under Seller's commercial general liability policy.  The risk of loss or damage to or destruction of the Property occurring prior to Closing shall be borne by Seller.  Pending Closing, Seller shall keep the Property in its present condition.  At Closing, Seller shall deliver to Buyer

possession of the Property free and clear of all tenancies and other right or claims of rights to its use and occupancy.

6.   **Seller Deliveries at Closing.**

(a)   **Deed; Assignment.** At Closing, a deed containing covenants of special warranty and further assurances (the "Deed"), conveying fee simple title to the Property to Buyer or Buyer's designee, which title shall be good and merchantable, both of record and in fact, and insurable at regular rates by the Title Company, free of all liens, encumbrances, easements, restrictions, and agreements except those expressly agreed to in writing by Buyer or waived as set forth herein. Notwithstanding anything contained herein to the contrary, the Property shall be conveyed subject to the following matters: the standard or general exceptions to title set forth in the Title Commitment; the lien of all ad valorem real estate and similar taxes and assessments not yet delinquent, subject to apportionment as hereinafter set forth; local, state and federal laws, ordinances or governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property; items appearing of record or shown on the Title Commitment or the survey and, in either case, not objected to by Buyer or waived or deemed waived by Buyer in accordance with Section 7 hereof; and any matter created by, through, under or with the consent of Buyer. From and after the Closing Date, Buyer shall look solely to the title company issuing such title insurance policy for any loss, damage or claim attributable to any matter pertaining to the status of title to the Property. The provisions of this Section 6 shall survive the Closing and the recording of the Deed.

(b)   **FIRPTA.** At Closing, Seller shall provide to Buyer an affidavit that Seller is not a foreign person along with Seller's tax identification number or such other statement, which Buyer must receive under Section 1445 (the "Section") of the Internal Revenue Code of 1986, as amended, in order to avoid the requirements of withholding under the Section. In the event Seller is unable to provide such an affidavit or other statement, Buyer shall withhold from the Purchase Price the amount required to be withheld under the Section.

(c)   **Maryland Withholding.** In accordance with Section 10-912 of Maryland's Tax-General Article (the "Act"), at Closing Seller shall also deliver to Buyer an affidavit certifying the amount of the total payment to Seller from the sale of the Property and the certification (the "Certification") required under the Act. Should Seller fail to comply with the foregoing, then Seller hereby authorizes and directs Buyer or the closing agent (either of which is hereinafter referred to as the "Closing Agent") to withhold from Seller's sale proceeds (the "Proceeds") at Closing and remit to the clerk of the court of the County all amounts required to be withheld and remitted in accordance with the Act. Seller agrees to remit at Closing to the Closing Agent any additional amount required to be withheld and remitted should the Proceeds be less than the amount to be withheld or remitted.

(d)    **Affidavits.** All affidavits, indemnities, and instruments reasonably required by the title company being used by Buyer (the "Title Company") in order to (i) eliminate from Buyer's title policy any exception for unfiled mechanics' liens, and (ii) issue the title policy to Buyer.

(e)    **Bill of Sale.** A bill of sale, assigning, transferring to Buyer all of the right, title and interest of Seller in and to the Personal Property (as hereinafter defined), subject to no liens, claims, charges or encumbrances.

(f)    **Other Instruments.** Such other documents or instruments as may be reasonably required by Buyer to effectuate the transfer and/or assignment to Buyer of all or any portion of the Property or the Personal Property or otherwise to consummate the transaction contemplated hereby, all to be in form and substance mutually acceptable to Buyer and Seller.

7.    **Title.** On or before the forty fifth (45th) day following the Effective Date, Buyer, at its sole cost and expense, shall cause the Title Company to issue to Buyer a title commitment or report for the Property (the "Commitment") along with copies of all special exceptions. Buyer shall promptly deliver a copy of the Commitment to Seller.

On or before fifteen (15) days after the date Buyer receives the Commitment, Buyer shall give Seller written notice (the "Title Notice") that the condition of title as set forth in the Commitment is or is not, in Buyer's sole opinion, satisfactory, listing those title exceptions identified in the Commitment, if any, which are not acceptable to Buyer. If the Title Notice provides that the condition of title is satisfactory, Buyer shall be conclusively deemed to accept the state of title, and all other matters set forth in the Commitment, and to waive any objection thereto. If Buyer shall fail to deliver the Title Notice within the time provided, Buyer shall be conclusively deemed to have accepted the state of title, and all other matters set forth in the Commitment, and to have waived any objection thereto.

In the event the Title Notice provides that the condition of title is not satisfactory, Seller shall have ten (10) days following the receipt of the Title Notice within which to determine whether or not to cure or remove all of those title exceptions which are not acceptable to Buyer. Should Seller elect not to cure or remove any or all of the title exceptions not acceptable to Buyer, Seller shall do so by notice to Buyer of such election within the ten (10) day period, specifying the exceptions not to be cured or removed. Other than title exceptions which Seller elects not to cure or remove hereunder, Seller shall be deemed to have elected to cure or remove any title exceptions which Buyer has listed as not being acceptable. Should Seller elect to cure or remove all of the title exceptions not acceptable to Buyer, then Seller shall be required to convey the Property to Buyer at Closing, subject only to (i) those title exceptions which are identified in the abstract or commitment for title insurance and are acceptable to Buyer, or (ii) which have been created subsequent to the date of this Agreement with Buyer's consent.

Should Seller elect not to cure or remove any or all of the unacceptable title exceptions, then Buyer may, at its option, terminate this Agreement by written notice to Seller within ten (10) days following the effective date of Seller's election, whereupon

the entire Deposit shall be promptly refunded to Buyer, and this Agreement shall become null and void and of no further force or effect at law and in equity. Should Buyer not elect to terminate this Agreement, then Buyer shall accept title to the Property at Closing, without adjustment to the Purchase Price, subject only to those title exceptions (the "Waived Exceptions") which are (i) identified in the abstract or commitment for title insurance and are acceptable to Buyer or as to which Buyer shall have waived its objection, (ii) objected to by Buyer but as to which Seller has elected not to cure or remove, or (iii) which have been created subsequent to the date of this Agreement with Buyer's consent. Buyer's failure to provide written notice to Seller of Buyer's election to terminate this Agreement within the time provided shall be conclusively deemed to constitute Buyer's election to accept title subject to all of the Waived Exceptions, and to waive any objections thereto.

8.    **Studies**. Buyer shall have a period (the "Study Period") commencing on the Effective Date and terminating at 5:00 p.m. Eastern Standard Time ninety (90) days thereafter to investigate the Property to determine, in Buyer's sole and absolute discretion, if the Property is acceptable to Buyer and suitable for Buyer's use and development of the Property. The Study Period may be extended by Buyer for an additional thirty (30) day period in the event that Buyer (with Seller's prior written consent) determines to conduct invasive testing or obtain a "Phase II" environmental study report of the Property. Buyer shall notify Seller of Buyer's election to extend the Study Period by giving Seller written notice thereof prior to the expiration of the Study Period.

Commencing on the Effective Date and continuing until Closing or termination of this Agreement, Seller grants Buyer and its employees, contractors, engineers, agents, and representatives, the right to enter upon the Property (including the interior of any improvements thereon) at any reasonable time or times on business days, upon at least twenty-four (24) hours prior written notice to Seller, to conduct, at Buyer's expense, engineering, structural, soil tests, surveys, environmental assessments, appraisals, water and sewer availability tests, and facilities condition reports, and such other tests, examinations or investigations for these and other purposes as Buyer deems appropriate (collectively, the "Studies") in order for Buyer to determine, in its sole and absolute discretion, if the Property is acceptable to Buyer and suitable for Buyer's use and development. In addition, Seller shall make available Gene Travagline, who is the current facilities and maintenance manager for the Property (the "Facilities Manager"), in person at the Property upon at least twenty four (24) hours prior written notice to Seller, who will conduct a tour of the Property and answer Buyer's questions about the Property. In the event Closing does not occur or this Agreement is terminated prior to Closing, absent a default by Seller, Buyer shall restore the Property to its condition immediately prior to commencement of the Studies. Prior to such entry, Buyer shall name Seller, its subsidiaries and affiliates as an additional insured under Buyer's commercial general liability policy having a combined single limit of not less than One Million Dollars ($1,000,000.00), and shall provide Seller with documentary evidence thereof.

Buyer's and its agents' and consultants' access to the Property and the performance of the Studies and environmental investigations shall be conducted in strict accordance with standards customarily employed in the industry and in compliance with

all governmental laws, rules and regulations. Following each entry by Buyer or its agents or consultants onto the Property, Buyer shall restore the Property to a condition which is as near as possible to its original condition as existed prior to any such entry. Buyer agrees to indemnify, protect, hold harmless and, at Seller's option, defend Seller and its members, managers, officers, directors, shareholders, employees and agents from and against any and all claims, liabilities, costs, suits, actions, expenses (including reasonable attorneys' fees actually incurred), liens, fees, fines, damages or injuries which may be imposed upon, incurred by or asserted against Seller or its members, managers, officers, directors, shareholders, employees and agents arising out of or in any way related to the activities conducted on the Property by Buyer or its agents or contractors but Buyer shall not be liable for any pre-existing environmental conditions, hazards or other defects discovered in Buyer's Studies or environmental investigations, except to the extent that Buyer exacerbates such environmental conditions, hazards or other defects as a result of its activities on the Property . Notwithstanding anything to the contrary in this Agreement, the foregoing indemnity shall survive Closing or any termination of this Agreement.

To assist Buyer in the conduct of the Studies, Seller shall provide to Buyer or Buyer's designee(s), within ten (10) days of the Effective Date complete and accurate copies of the following (collectively referred to herein as the "Documents") with respect to the Property or any portion thereof, to the extent such Documents are in the possession of Seller or Seller's employees:

(a)     The deed by which Seller acquired title to the Property;

(b)     Seller's most recent title insurance policy, including copies of all accompanying exceptions to title;

(c)     Permits, licenses, certificates of occupancy, and applications for same;

(d)     Seller's most recent survey;

(e)     Seller's most recent  Phase I and Phase II (if any) assessments;

(f)     Site plans, as-built drawings for any improvements, and soil studies;

(g)     Reports and surveys relating to topography and grading;

(h)     Information, reports, and authorizations relating to the availability of utilities, sewer, water, existing storm water management and wetlands;

(i)     Information, reports, and authorizations regarding wells, septic systems, and/or private sanitary systems, if any;

(j)     Studies or reports regarding the condition of improvements, including, but not limited to roofing reports or structural analyses;

(k)    Recorded and unrecorded easements, and evidence of compliance of the Property with all recorded and unrecorded easements, private restrictions and covenants;

(l)    Any conditions of development imposed upon the Property;

(m)    Tax bills for the past three (3) years and any notices or letters addressing any actual or potential reassessment or change in the assessed value of the Property;

(n)    Public work agreements currently in effect, if any;

(o)    Evidence of any security or bonding with respect to any current public work agreements;

(p)    Any current leases, ground leases, use or occupancy agreements, management and/or service agreements or any similar leases or agreements;

(q)    Subdivision approvals and special variances;

(r)    Evidence of zoning;

(s)    Seller's certificate of insurance evidencing coverage required hereunder; and

(t)    Within five (5) days after Buyer's specific written request therefor, any such other information, agreements or documents pertaining to the Property reasonably requested by Buyer or those recited in (a)-(s) above, which Seller becomes aware of between the Effective Date and Closing to the extent in Seller's possession and to the extent not subject to the terms of a confidentiality agreement or attorney-client privilege.

Except as required by law, unless otherwise agreed to in writing by Seller, Buyer agrees (a) to keep all Documents confidential and not to disclose or reveal any Documents to any person other than Buyer's Representatives (as hereinafter defined) who are actively and directly participating in Buyer's evaluation of the Property or who otherwise need access to the Documents for the purpose of evaluating the Property and to cause those persons to observe the terms of this Section 8 and (b) not to use Documents for any purpose other than in connection with Buyer's evaluation of the Property or the consummation of the purchase of the Property. The term "Representative" means either party's affiliates and its directors, officers, employees, agents, advisors (including, without limitation, financial advisors, counsel and accountants), lenders and/or financing parties, and controlling persons. Buyer also agrees not to disclose to any person (other than its Representatives who are actively and directly participating in Buyer's evaluation of the Property or who otherwise need to know for the purpose of evaluating the Property and whom Buyer will cause to observe the terms of this Section 8) any information about the Property, or the terms or conditions or any other facts relating thereto, including,

without limitation, the fact that discussions are taking place with respect thereto or the status thereof, or the fact that the Documents have been made available to Buyer or its Representatives. Buyer will be responsible for any breach of this Section 8 by Buyer or its Representatives.

In the event that Buyer is requested pursuant to, or required by, applicable law or regulation or by legal process to disclose any Documents or any other information concerning Seller or the Property, Buyer agrees that it will provide Seller with prompt written notice of such request or requirement in order to enable Seller to take whatever steps it deems appropriate concerning disclosure of the Documents, including seeking an appropriate protective order or other remedy, to consult with Buyer with respect to Seller's taking steps to resist or narrow the scope of such request or legal process, or to waive compliance, in whole or in part, with this Section 8. In the event that (i) no such protective order or other remedy is obtained or (ii) Seller waives compliance with this Section 8, then, in each case, Buyer and its Representatives will furnish only that portion of the information which, upon advice of counsel, is required to be provided. In any such event, Buyer will use its reasonable best efforts to ensure that all Documents and other information that is so disclosed will be accorded confidential treatment.

In the event the Documents or the results of any of the Studies are unsatisfactory to Buyer for any reason whatsoever, or Buyer determines in its sole, exclusive and unreviewable judgment that the Property is not acceptable to Buyer or suitable for Buyer's purposes, Buyer has the right to terminate this Agreement by giving written notice (the "Buyer's Notice") which Buyer's Notice must be received by Seller prior to the expiration of the Study Period, as extended in accordance herewith. If the Buyer's Notice is not given within the time provided, Buyer shall be deemed satisfied. In the event Buyer's Notice is timely delivered, (a) Buyer shall be entitled to a full refund of the Deposit and all interest thereon, less Buyer's share of any Escrow Agent and/or title insurer cancellation fees and charges, (b) Buyer shall promptly deliver to Seller all Documents received by Buyer and copies of any surveys, studies, reports, evaluations and other materials prepared by third parties in connection with Buyer's review of the physical condition of the Property ("Third Party Reports") requested by Seller, provided that (i) Buyer's obligation to deliver any or all of the aforesaid documents shall not be a condition of Buyer's right to terminate this Agreement and (ii) should Seller request the delivery of any Third Party Reports, Seller shall simultaneously with delivery thereof reimburse Buyer for fifty percent (50%) of the costs incurred by Buyer in obtaining those Third Party Reports requested by Seller, (c) this Agreement shall become null and void and of no further force or effect, except for the obligation to pay the Deposit to Buyer and except for those obligations expressly stated to survive the termination of this Agreement, and (d) neither Buyer nor Seller shall have any further liability or obligation to the other under this Agreement, except for the obligation to pay the Deposit to Buyer and except for those obligations expressly stated to survive the termination of this Agreement.

9.    **Sellers Covenants.** Until Closing, Seller shall adhere to the following:

(a)     Seller shall maintain commercial general liability insurance against claims for bodily injury, death and property damage occurring in, on or about the Property as of the Effective Date, and keep all improvements and personal property therein insured against fire and other hazards at full repair or replacement value.

(b)     Seller shall operate and maintain the Property in the manner in which it is presently maintained, and make any and all repairs and replacements to the Property and any improvements thereon required in order to deliver the Property to Buyer at Closing in its present condition; and

(c)     Seller shall promptly notify Buyer if Seller receives written notice or requires knowledge of any violation of any law, ordinance, building code or regulation pertaining to the Property.

10.   **Bankruptcy Court Approval.**

(a)     **Definitions.**  The following terms, as used herein, have the following meanings:

(i)     "Sale Approval Order" means an Order of the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in form and substance reasonably acceptable to Buyer that, among other things (i) grants the Sale Motion; (ii) authorizes Seller to enter into this Agreement (or any amended version agreed upon by Seller and by Buyer) and to consummate the transaction described herein; (iii) determines that this Agreement was proposed by Buyer in good faith; (iv) determines that Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(n) have not been violated;  (v) determines that the Property and the Personal Property (hereinafter defined) may be sold free and clear of all Liens and Claims, in compliance with Section 363(f) of the Bankruptcy Code; (vi) authorizes Seller to sell the Property and the Personal Property to Buyer pursuant to this Agreement (as amended) free and clear of all Liens and Claims; and (vii) authorizes Seller to execute, deliver, perform under, consummate and implement this Agreement (as amended) together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing.

(ii)     "Sale Motion" means the motion or motions, filed and served by Seller, pursuant to all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, seeking to obtain entry of the Sale Approval Order.

(b)     **Bankruptcy Court Approval of Sale**.  Seller and Buyer shall each use their commercially reasonable efforts and shall cooperate, assist and consult with each other, to secure the entry of the Sale Approval Order.

(c)     **Section 363(m) Protection**.  The Sale Approval Order shall meet the requirements of Section 10 (a) above with respect to Section 363(m) of the Bankruptcy Code.

11.    **Seller Cooperation; Seller's Representations and Warranties**.

(a)    **Seller Cooperation**.  Seller shall cooperate with Buyer in Buyer's attempts to obtain final issuance of all licenses, permits, easements, zoning variances, zoning exceptions, and other approvals including, but not limited to, site plan, subdivision, roads, sign permits, and building permits (collectively, the "Approvals") deemed necessary by Buyer for Buyer's intended use and development of the Property; provided, however, such cooperation shall not involve any out-of-pocket expenditures by Seller.

(b)    **Seller's Representations and Warranties**.  Seller hereby represents and warrants to Buyer, that, on the date hereof:

(i)    Seller has the full power to execute, seal, acknowledge, and deliver this Agreement and to consummate each and all of the transactions contemplated hereby, and that this Agreement is its legal and binding obligation, enforceable against it in accordance with its terms.

(ii)    To Seller's actual knowledge, there is no action, suit or proceeding pending or threatened against the Property, the Personal Property or the Seller which, if adversely determined, could individually or in the aggregate have a material adverse effect on title to the Property or any portion thereof or which could in any material way interfere with the consummation by Seller of the transaction contemplated by this Agreement, and there is no bankruptcy or insolvency proceeding or similar action pending or threatened against Seller other than the Chapter 11 case of Tribune Company, et al., Case No. 08-13141-KJC authorizing Seller to enter into this Agreement on or before the day that is forty-five (45) days after the Effective Date .

(iii)    Except for tenants in possession pursuant to leases set forth on Exhibit B attached hereto, there are no parties in possession of any portion of the Property and there is no existing purchase and sale agreement, option agreement, or any other agreement granting a third party any rights to occupy or acquire all or any portion of the Property or the Personal Property.

(iv)    To Seller's actual knowledge, Seller is not in default under any agreement relating to the Property or the Personal Property and the performance of Seller under this Agreement shall not violate any agreement to which Seller is a party.

(v)    Except as may be disclosed in the Title Commitment, the Property is not subject to any currently binding agreement or commitment, which

would obligate Buyer (as owner of the Property) to make any contribution of money or payment of fees or expenses, or to operate, alter, construct or reconstruct the Property, or any improvements thereon, in any particular manner.

(vi)    To Seller's actual knowledge, (A) there are no violations of law, ordinances, statutes, rules, orders, decrees, rulings and/or restrictions, governmental or administrative regulation, or requirements with respect to the Property or the Personal Property, which have not been corrected and (B) Seller is currently in compliance with all of the same.

(vii)    Seller has not received any notice from any mortgagee, insurer, governmental authority or other person (a) advising Seller of the existence of any defaults or any unsafe condition with respect to the Property or the Personal Property, (b) advising Seller of the violation of any building, zoning, subdivision, fire, air-pollution, health, land use or other laws, codes or regulations applicable to the Property or the Personal Property, (c) requiring Seller to do any work to bring the Property or the Personal Property into compliance with any such laws, codes or regulations, or (d) seeking or requiring any improvement, alteration, addition, correction or any work on or about the Property or the Personal Property.

(viii)    Except as set forth on Exhibit B, title to the Property or the Personal Property will not be subject to any tenancy or other right or use of occupancy which will remain in effect at or after Closing.

(ix)    The schedule of personal property annexed hereto as Exhibit C is a complete list of all of the personal property used solely in the operation, repair and maintenance of the property (the "Personal Property").

(x)    The Property and the Personal Property shall be transferred, pursuant to the Sale Approval Order, free and clear of all liens, claims, encumbrances and interests to the maximum extent permitted by Section 363 of the Bankruptcy Code, except as to liens, claims, encumbrances and/or interests agreed to in writing by Buyer or waived as set forth herein.

The term "actual knowledge" means the actual knowledge of Mike Sacks, Vice President/Operations of Tribune Publishing Company, an affiliate of Seller and the actual knowledge of the Facilities Manager, without any duty of independent investigation or inquiry.

The representations and warranties of Seller set forth in Section 11(b) hereof as updated by any certificate of Seller to be delivered to Buyer at Closing, shall survive Closing for a period of one (1) year.  No claim for a breach of any representation or warranty of Seller shall be actionable or payable (a) if the breach in question results from or is based on a condition, state of facts or other matter of which Buyer had actual

knowledge prior to Closing, (b) unless the valid claims for all such breaches (including, without limitation, all attorneys' fees and court costs) collectively aggregate more than Ten Thousand and No/100 Dollars ($10,000.00), in which event the full amount of such claims shall be actionable, and (c) unless an action shall have been commenced by Buyer against Seller prior to the expiration of said one (1) year period. Buyer agrees to first seek recovery under any insurance policies (including title insurance policies) prior to seeking recovery from Seller, and Seller shall not be liable to Buyer if Buyer's claim is satisfied from such insurance policies. Notwithstanding anything herein to the contrary, in no event shall Seller's aggregate liability to Buyer under this Agreement, including, without limitation, liability for breach of any representation or warranty of Seller in this Agreement, exceed the sum of Three Hundred Thousand and No/100 Dollars ($300,000.00).

(c)     **Condition of Property.**  Buyer acknowledges and agrees that, other than as is otherwise expressly provided in this Agreement, Buyer is acquiring the Property in its "AS IS" condition, WITH ALL FAULTS, IF ANY, AND WITHOUT ANY WARRANTY (except warranties expressly provided for herein), EXPRESS OR IMPLIED.  Other than as expressly set forth herein, neither Seller nor any agents, representatives, or employees of Seller have made any representations or warranties, direct or indirect, oral or written, express or implied, to Buyer or any agents represent, representatives, or employees of Buyer with respect to the condition of the Property, its fitness for any particular purpose, or its compliance with any laws, and Buyer is not aware of and does not rely upon any such representation.  Any information, documents, or materials which have been or hereafter are made available to Buyer are made available solely as an accommodation to Buyer in the conduct of its due diligence, and Seller makes no representation or warranty as to the accuracy thereof.

12.     **Buyer's Representations and Warranties.**  Buyer hereby represents and warrants to Seller that it has the full power to execute, seal, acknowledge, and deliver this Agreement and to consummate each and all of the transactions contemplated hereby, and that this Agreement is its legal and binding obligation enforceable against it in accordance with its terms.  The consent of all persons or entities whose consent is required as a condition to Buyer's execution of this Agreement and consummation of the transactions contemplated hereby has been obtained.

13.     **Conditions to Buyer's Obligation to Close.**  Buyer shall have no obligation to consummate the transactions provided by this Agreement and thus to close hereunder, in which event the Deposit shall be immediately returned to Buyer, unless at or before the time of Closing, or the required time for performance hereunder, as applicable, each and every of the following conditions have been fully met and complied with (or such fulfillment and compliance has been waived in writing by Buyer; Buyer's consummation

of said transactions at Closing being conclusive evidence of Buyer's waiver of any unsatisfied conditions):

    (a)    The Bankruptcy Court shall approve this Agreement by having entered the Sale Approval Order, in form and substance reasonably acceptable to Seller and Buyer , and as of Closing the Sale Approval Order shall be in full force and effect and shall not have been stayed, vacated or reversed.

    (b)    Seller's representations and warranties as set forth in Section 11 above shall be true and accurate in all material respects.

    (c)    Seller shall have complied in all material respects with all covenants and agreements required of Seller by this Agreement, including but not limited those set forth in Sections 9 and 10 above.

    (d)    The condition of the Property (including, but not limited to, availability of public sewer, water, and utilities to the Property in quantities as are needed for Buyer's use and development of the Property, and full means of ingress and egress to the Property) shall not have changed materially from the condition existing at the end of the Study Period.

    (e)    Seller shall have removed, complied with, or satisfied all notices of violation of any law, statute, regulation, order or requirement affecting the Property.

    (f)    All deliveries required of Seller pursuant to Section 6 above shall have been provided to Buyer.

    (g)    Seller shall have provided Buyer with the Documents in accordance with Section 8 hereof.

14.    **Condemnation**.  If, prior to Closing, all or any portion of the Property or any means of ingress or egress shall be threatened or taken by condemnation, eminent domain, or similar process (collectively, a "Taking"), Seller shall immediately notify Buyer thereof and if same would have, in Buyer's sole and reasonable opinion, a material adverse impact upon Buyer's use and development of the Property, Buyer shall, within fifteen (15) business days after having received notice thereof, elect by written notice to Seller to either:

    (a)    continue this Agreement in full force and effect, with an irrevocable assignment from Seller to Buyer of all right, title, and interest to any award applicable to such Taking, or

    (b)    terminate this Agreement in which event the Deposit shall be immediately returned to Buyer and the Seller and Buyer shall be relieved of all further rights, duties, and obligations under this Agreement.

Buyer's failure to make a written election in the time and manner set forth above shall constitute conclusive evidence of Buyer's determination that such Taking shall not have a material adverse impact upon Buyer's use and development of the Property.

15.    **Closing**. The consummation of the purchase and sale of the Property (the "Closing") shall occur within sixty (60) days after the expiration of the Study Period and shall take place at 10:00 a.m. Eastern Standard Time at the offices of the Title Company, or at such other time and place mutually agreeable to Seller and Buyer. The delivery at such location of the Purchase Price, Deed, and such other papers as are required from Seller or Buyer pursuant to the terms of this Agreement shall be deemed good and sufficient tender of performance.

16.    **Seller Default**. In the event that Seller fails to consummate this Agreement for any reason other than Buyer's default hereunder or the permitted termination of this Agreement by Seller or Buyer as herein expressly provided, Buyer shall be entitled, as its sole and exclusive remedy at law or in equity, either (a) to receive the return of the Escrow Fund, which return shall operate to terminate this Agreement and release Seller from any and all liability hereunder, or (b) to enforce specific performance of Seller's obligation to execute the documents required to convey the Property to Buyer; provided, however, that (i) Buyer shall only be entitled to such remedy if (A) any such suit for specific performance is filed within six (6) months after Buyer becomes aware of the default by Seller, (B) Buyer is not in default of any terms under this Agreement, and (C) Buyer has furnished ten (10) days' prior written notice to Seller of its intent and election to seek specific enforcement of this Agreement; and (ii) the remedy of specific performance shall not be available to enforce any other obligation of Seller hereunder. Buyer hereby agrees that prior to its exercise of any rights or remedies as a result of any defaults by Seller, Buyer will first deliver written notice of said default to Seller, and if Seller so elects, Seller shall have the opportunity, but not the obligation, to cure such default within ten (10) days after Seller's receipt of such notice. Buyer expressly waives its rights to seek money damages in the event of Seller's default hereunder for failing to consummate this transaction including, without limitation, punitive, consequential or speculative damages

17.    **Buyer Default**. IF THE SALE OF THE PROPERTY IS NOT CONSUMMATED DUE TO ANY DEFAULT BY BUYER HEREUNDER, THEN SELLER SHALL RETAIN THE ESCROW FUND AS LIQUIDATED DAMAGES AS ITS SOLE AND EXCLUSIVE REMEDY HEREUNDER IN LIEU OF ALL OTHER REMEDIES, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO SEEK MONETARY DAMAGES. THE PARTIES HAVE AGREED THAT SELLER'S ACTUAL DAMAGES, IN THE EVENT OF A FAILURE TO CONSUMMATE THIS SALE DUE TO BUYER'S DEFAULT HEREUNDER, WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. AFTER NEGOTIATION, THE PARTIES HAVE AGREED THAT, CONSIDERING ALL THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS AGREEMENT, THE AMOUNT OF THE ESCROW FUND IS A REASONABLE ESTIMATE OF THE DAMAGES THAT SELLER WOULD INCUR IN SUCH EVENT. BY PLACING THEIR INITIALS BELOW, EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENTS MADE ABOVE AND THE FACT THAT

EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED, AT THE TIME THIS AGREEMENT WAS MADE, THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION.  THE FOREGOING IS NOT INTENDED TO LIMIT BUYER'S INDEMNITY OBLIGATIONS UNDER SECTION 8 HEREOF.

Seller: _____*CB*_____          Buyer: _____

18. **Disclaimers and Waivers**.

(a) No Reliance on Documents.  Except as expressly stated herein, Seller makes no representation or warranty as to the truth, accuracy or completeness of any materials, data or information delivered by Seller to Buyer in connection with the transaction contemplated hereby.  Buyer acknowledges and agrees that all materials, data and information delivered by Seller to Buyer in connection with the transaction contemplated hereby are provided to Buyer as a convenience only and that any reliance on or use of such materials, data or information by Buyer shall be at the sole risk of Buyer, except as otherwise expressly stated herein.  Without limiting the generality of the foregoing provisions, Buyer acknowledges and agrees that (a) any environmental or other report with respect to the Property which is delivered by Seller to Buyer shall be for general informational purposes only, (b) Buyer shall not have any right to rely on any such report delivered by Seller to Buyer, but rather will rely on its own inspections and investigations of the Property and any reports commissioned by Buyer with respect thereto, and (c) neither Seller, any affiliate of Seller nor the person or entity which prepared any such report delivered by Seller to Buyer shall have any liability to Buyer for any inaccuracy in or omission from any such report or in verbal communication.

(b) As-Is; Acceptance of Property.  BUYER AND SELLER UNDERSTAND, ACKNOWLEDGE AND AGREE THAT BUYER'S PURCHASE OF THE PROPERTY AND ANY OTHER RIGHTS AND INTERESTS TO BE CONVEYED, SOLD, TRANSFERRED AND/OR ASSIGNED PURSUANT TO THIS AGREEMENT SHALL BE ON AN "AS IS" "WHERE IS" BASIS AND CONDITION WITH ALL FAULTS, AND BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, OR AS TO THE PHYSICAL MEASUREMENTS OR USABLE SPACE OF THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY OR THE EXPENSES OR OPERATIONS OF THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY

EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED, AT THE
TIME THIS AGREEMENT WAS MADE, THE CONSEQUENCES OF THIS
LIQUIDATED DAMAGES PROVISION. THE FOREGOING IS NOT INTENDED TO
LIMIT BUYER'S INDEMNITY OBLIGATIONS UNDER SECTION 8 HEREOF.

Seller: _____          Buyer: 175 LLC _____

18. **Disclaimers and Waivers**.

(a) No Reliance on Documents. Except as expressly stated herein, Seller makes no
representation or warranty as to the truth, accuracy or completeness of any materials, data
or information delivered by Seller to Buyer in connection with the transaction
contemplated hereby. Buyer acknowledges and agrees that all materials, data and
information delivered by Seller to Buyer in connection with the transaction contemplated
hereby are provided to Buyer as a convenience only and that any reliance on or use of
such materials, data or information by Buyer shall be at the sole risk of Buyer, except as
otherwise expressly stated herein. Without limiting the generality of the foregoing
provisions, Buyer acknowledges and agrees that (a) any environmental or other report
with respect to the Property which is delivered by Seller to Buyer shall be for general
informational purposes only, (b) Buyer shall not have any right to rely on any such report
delivered by Seller to Buyer, but rather will rely on its own inspections and investigations
of the Property and any reports commissioned by Buyer with respect thereto, and (c)
neither Seller, any affiliate of Seller nor the person or entity which prepared any such
report delivered by Seller to Buyer shall have any liability to Buyer for any inaccuracy in
or omission from any such report or in verbal communication.

(b) As-Is; Acceptance of Property. BUYER AND SELLER UNDERSTAND,
ACKNOWLEDGE AND AGREE THAT BUYER'S PURCHASE OF THE PROPERTY
AND ANY OTHER RIGHTS AND INTERESTS TO BE CONVEYED, SOLD,
TRANSFERRED AND/OR ASSIGNED PURSUANT TO THIS AGREEMENT SHALL
BE ON AN "AS IS" "WHERE IS" BASIS AND CONDITION WITH ALL FAULTS,
AND BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY
PROVIDED IN THIS AGREEMENT, SELLER HAS NOT MADE, DOES NOT MAKE
AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS,
WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF
ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR
IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO,
CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR
CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE
WATER, SOIL AND GEOLOGY, OR AS TO THE PHYSICAL MEASUREMENTS
OR USABLE SPACE OF THE PROPERTY, (B) THE INCOME TO BE DERIVED
FROM THE PROPERTY OR THE EXPENSES OR OPERATIONS OF THE
PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL
ACTIVITIES AND USES WHICH BUYER MAY CONDUCT THEREON, (D) THE
COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY

LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) THE EXISTENCE OR NONEXISTENCE OF ANY LATENT OR PATENT DEFECTS WITH RESPECT TO THE PROPERTY, (I) THE EXISTENCE OR NONEXISTENCE OR DISPOSAL OF HAZARDOUS SUBSTANCES OR POLLUTANTS AT, IN, ON, UNDER OR IN THE VICINITY OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, ANY "HAZARDOUS SUBSTANCES" AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATIONS AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, "CERCLA") AND ANY "SOLID WASTE" AS DEFINED BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS AT 40 C.F.R., PART 261, (J) COMPLIANCE WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING WITHOUT LIMITATION CERCLA ("ENVIRONMENTAL LAWS"), (K) TITLE TO THE PROPERTY OR THE ASSIGNABILITY, ASSUMABILITY, TRANSFERABILITY OR VALIDITY OF ANY CONTRACTS, AGREEMENTS, FRANCHISES, LICENSES, PERMITS, GOVERNMENT APPROVALS, WARRANTIES OR GUARANTIES RELATING TO THE PROPERTY OR THE USE AND OPERATION THEREOF; (L) COMPLIANCE OR NONCOMPLIANCE WITH LOCAL, STATE OR FEDERAL STATUTES, ORDINANCES, ORDERS, OR REGULATIONS CONCERNING THE PROPERTY OR THE USE THEREOF; (M) PRIOR OR CURRENT OPERATIONS CONDUCTED ON THE PROPERTY, OR (N) ANY OTHER MATTER OR THING WITH RESPECT TO, AFFECTING OR RELATING TO THE PROPERTY.  BUYER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, BUYER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER OR ANY AFFILIATE OF SELLER OR ANY AGENT, EMPLOYEE, SERVANT OR REPRESENTATIVE OF SELLER OR ANY AFFILIATE OF SELLER OR ANY BROKER OR ANY OTHER PERSON.  SELLER IS NOT AND SHALL NOT BE LIABLE OR BOUND IN ANY MANNER BY ANY ORAL OR WRITTEN STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATIONS THEREOF, FURNISHED BY SELLER OR ANY AFFILIATE OF SELLER OR ANY AGENT, EMPLOYEE, SERVANT OR REPRESENTATIVE OF SELLER OR ANY AFFILIATE OF SELLER OR ANY BROKER OR ANY OTHER PERSON.  BUYER ACCEPTS ALL RISK OF LOSS DUE TO FIRE OR OTHER CASUALTY OR CONDEMNATION OCCURRING WITH RESPECT TO THE PROPERTY.  IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE HAS BEEN ADJUSTED BY PRIOR NEGOTIATION TO REFLECT THAT ALL OF THE PROPERTY SOLD BY SELLER AND PURCHASED BY BUYER IS AND SHALL BE SUBJECT TO THE FOREGOING.

(c) Release. EXCEPT FOR RIGHTS OR CLAIMS OTHERWISE PROVIDED OR AUTHORIZED ELSEWHERE IN THIS AGREEMENT, BUYER HEREBY AGREES THAT, TO THE FULLEST EXTENT PERMITTED BY LAW, AS OF THE CLOSING, SELLER AND EACH OF ITS PARTNERS, MEMBERS, TRUSTEES, DIRECTORS, SHAREHOLDERS, OFFICERS, EMPLOYEES, ASSET MANAGERS, ATTORNEYS, AFFILIATES AND RELATED ENTITIES, HEIRS, SUCCESSORS, AND ASSIGNS (COLLECTIVELY, THE "RELEASEES") SHALL BE, AND ARE HEREBY, FULLY AND FOREVER RELEASED AND DISCHARGED FROM ANY AND ALL LIABILITIES, INCLUDING, WITHOUT LIMITATION, STRICT LIABILITIES, LOSSES, CLAIMS (INCLUDING THIRD PARTY CLAIMS), DEMANDS, DAMAGES (OF ANY NATURE WHATSOEVER), CAUSES OF ACTION, COSTS, PENALTIES, FINES, JUDGMENTS, REASONABLE ATTORNEYS' FEES, CONSULTANTS' FEES AND COSTS AND EXPERTS' FEES (COLLECTIVELY, THE "CLAIMS") WITH RESPECT TO ANY AND ALL CLAIMS, WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THAT MAY ARISE ON ACCOUNT OF OR IN ANY WAY BE CONNECTED WITH THE PROPERTY OR THE PHYSICAL, ENVIRONMENTAL AND STRUCTURAL CONDITION OF THE PROPERTY OR ANY LAW OR REGULATION APPLICABLE THERETO, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS FOR COST RECOVERY UNDER CERCLA OR ANY OTHER CLAIMS UNDER ANY ENVIRONMENTAL LAWS, AND ANY CLAIM OR MATTER (REGARDLESS OF WHEN IT FIRST APPEARED) RELATING TO OR ARISING FROM (I) ANY VIOLATION, NONCOMPLIANCE OR OBLIGATION TO COMPLY WITH ENVIRONMENTAL LAWS, THE PRESENCE OF ANY ENVIRONMENTAL PROBLEMS, OR THE USE, PRESENCE, STORAGE, RELEASE, DISCHARGE, OR MIGRATION OF HAZARDOUS MATERIALS ON, IN, UNDER OR AROUND THE PROPERTY REGARDLESS OF WHEN SUCH HAZARDOUS MATERIALS WERE FIRST INTRODUCED IN, ON OR ABOUT THE PROPERTY, (II) ANY PATENT OR LATENT DEFECTS OR DEFICIENCIES WITH RESPECT TO THE PROPERTY, (III) ANY AND ALL MATTERS RELATED TO THE PROPERTY OR ANY PORTION THEREOF, INCLUDING WITHOUT LIMITATION, THE CONDITION AND/OR OPERATION OF THE PROPERTY AND EACH PART THEREOF, AND (IV) THE PRESENCE, RELEASE AND/OR REMEDIATION OF ASBESTOS AND ASBESTOS CONTAINING MATERIALS IN, ON OR ABOUT THE PROPERTY REGARDLESS OF WHEN SUCH ASBESTOS AND ASBESTOS CONTAINING MATERIALS WERE FIRST INTRODUCED IN, ON OR ABOUT THE PROPERTY. BUYER HEREBY WAIVES AND AGREES NOT TO COMMENCE ANY ACTION, LEGAL PROCEEDING, CAUSE OF ACTION OR SUITS IN LAW OR EQUITY, OF WHATEVER KIND OR NATURE, DIRECTLY OR INDIRECTLY, AGAINST THE RELEASEES OR THEIR AGENTS IN CONNECTION WITH CLAIMS DESCRIBED ABOVE. THE RELEASE PROVIDED IN THIS SECTION 18 SHALL SPECIFICALLY APPLY WHETHER OR NOT ANY OF THE FOREGOING IS ATTRIBUTABLE, IN WHOLE OR IN PART, TO THE NEGLIGENCE OF SELLER OR ANY OTHER RELEASEE.

IN CONNECTION WITH THE COVENANTS, AGREEMENTS, ACKNOWLEDGMENTS, WAIVERS, RELEASES AND PROVISIONS CONTAINED IN THIS SECTION 18, BUYER HEREBY AGREES, REPRESENTS AND WARRANTS THAT BUYER REALIZES AND ACKNOWLEDGES THAT FACTUAL MATTERS NOW KNOWN TO IT OR PRESENTLY UNKNOWN TO IT MAY HAVE GIVEN OR MAY HEREAFTER GIVE RISE TO CAUSES OF ACTION, CLAIMS, DEMANDS, DEBTS, CONTROVERSIES, DAMAGE, COSTS, LOSSES AND EXPENSES WHICH ARE PRESENTLY UNKNOWN, UNANTICIPATED AND UNSUSPECTED, AND BUYER FURTHER AGREES, REPRESENTS AND WARRANTS THAT THE WAIVERS AND RELEASES HEREIN HAVE BEEN NEGOTIATED AND AGREED UPON IN LIGHT OF THAT REALIZATION AND THAT BUYER NEVERTHELESS HEREBY INTENDS TO RELEASE, DISCHARGE AND ACQUIT SELLER FROM ANY SUCH UNKNOWN CLAIMS, DEBTS, AND CONTROVERSIES WHICH MIGHT IN ANY WAY BE INCLUDED AS A MATERIAL PORTION OF THE CONSIDERATION GIVEN TO SELLER BY BUYER IN EXCHANGE FOR SELLER'S PERFORMANCE HEREUNDER.  SELLER HAS GIVEN BUYER MATERIAL CONCESSIONS REGARDING THIS TRANSACTION IN EXCHANGE FOR BUYER AGREEING TO THE PROVISIONS OF THIS SECTION 18.  THE PROVISIONS OF THIS SECTION 18 SHALL SURVIVE THE CLOSING AND SHALL NOT BE DEEMED MERGED INTO ANY INSTRUMENT OR CONVEYANCE DELIVERED AT THE CLOSING.

    (d) <u>Survival of Disclaimers</u>.  Seller and Buyer agree that the provisions of this Article 18 shall survive Closing.

19.   **Miscellaneous**.

    (a)   **Escrow Provisions**.  In the event of any dispute under this Agreement between Seller and Buyer with respect to the disbursement by Escrow Agent of the Deposit, the Escrow Agent may, in lieu of disbursing the Deposit to the Seller or Buyer, pay the Deposit to the Clerk of the Circuit Court of Howard County or any other court having jurisdiction over the Seller and Buyer concerning this Agreement, under any legal or equitable proceeding and the Escrow Agent shall have no further obligations under this Agreement.  Absent fraud or willful misconduct, (i) the Escrow Agent shall have no personal liability hereunder; and (ii) in the event of any dispute under this Agreement between the Seller and Buyer, which results in the Escrow Agent being made a party to any litigation, Seller and Buyer shall indemnify the Escrow Agent from its cost in connection with such litigation.

    (b)   **Waiver**.  Seller acknowledges and agrees that Buyer has the right to waive at any time any condition or provision of this Agreement, which grants to Buyer the right to terminate this Agreement or pursue its rights under Section 16 above, and the right to elect to close under this Agreement without regard to any such condition, provision, or right so waived by Buyer.

(c)    **Notices**. Any notice, demand, request, consent, waiver or other communication, which this Agreement requires or permits Seller or Buyer to make to the other shall be in writing and shall be deemed given when delivery is refused or when hand-delivered with the receipt of delivery therefore signed by the recipient or three (3) business days after deposit with the United States mail, registered or certified mail, postage prepaid, with return receipt requested, or the next business day after deposit with a national overnight courier service and addressed as follows:

| If to the Seller: | Homestead Publishing Co.<br>c/o Tribune Company<br>435 N. Michigan Avenue<br>6th Floor<br>Chicago, Illinois 60611<br><br>Attention:  Rita DeBoer, Esq. |
| --- | --- |
| with a copy to: | Jesse D. Delanoy, Esq.<br>Offit Kurman, P.A.<br>8171 Maple Lawn Boulevard<br>Suite 200<br>Maple Lawn, Maryland 20759 |
| If to the Buyer: | 175 LLC<br>3251 Gamber Road<br>Finksburg, Maryland   21048<br><br>Attention:  Garnet Bean |
| with a copy to: | Miles & Stockbridge P.C.<br>10 Light Street<br>Baltimore, Maryland   21202<br><br>Attention:  Paul D. Trinkoff, Esquire |
| If to the Escrow Agent: | First American Title Insurance Company<br>401 East Pratt Street<br>Suite 323<br>Baltimore, MD  21202<br><br>Attention:  Ms. Cailin Quinn |

(d)    **Attorneys' Fees**. Should Seller or Buyer prevail against the other in any legal action concerning this Agreement, such prevailing party shall be entitled, in addition to all other recoveries allowed hereunder, to its reasonable attorneys' fees and court costs.

(e)    **Broker Fees and Commissions**.  Seller and Buyer represent and warrant to one another that neither of them has dealt with a broker, agent, or finder, or any other person who may be entitled to a fee or commission arising out of the sale of the Property other than CB Richard Ellis.  All commissions due and owing to brokers in connection herewith shall be paid by the Seller pursuant to the terms of a separate agreement.  Seller and Buyer indemnify and hold harmless the other party (the "Indemnified Party") from and against any loss, claim, damage or liability (including, but not limited to, court costs and reasonable attorneys' fees), which the Indemnified Party may suffer, incur or expend arising out of or in any way related to any claim by any person or entity for fees or commissions in breach of this warranty.  This indemnity shall survive Closing or the termination of this Agreement.

(f)    **Indemnity Obligations**.  All indemnification obligations in this Agreement shall survive closing of this Agreement for a period specified in Section 11 hereof and shall not be deemed merged in the Deed.

(g)    **Time is of the Essence; Performance on Saturdays, Sundays, and Holidays**.  Time is and shall be of the essence in this Agreement.  Whenever the date fixed for the payment of funds, giving of notice or other performance under this Agreement falls on a day, which is a Saturday, Sunday, legal holiday or any day on which banking institutions in the city or county of payment are authorized by law to close (all other days, being "business days"), then such payment, notice or performance may be made with the same force and effect as if made on the date so fixed, if made on the succeeding business day.

(h)    **Successors and Assigns**.  This Agreement shall bind and inure to the benefit of Seller and Buyer and their respective successors and assigns.  Buyer specifically preserves its right to assign this Agreement in its sole discretion, to any affiliate, parent or subsidiary of Buyer.

(i)    **Entire Agreement; Modifications; Headings**.  This Agreement contains the entire understanding between Seller and Buyer with respect to the Property and supersedes all other arrangements, agreements, promises, statements and/or understandings between Seller and Buyer or by any representative of Seller or Buyer.  This Agreement may not be modified, revised or changed unless in writing signed by and delivered to Seller and Buyer.  The headings in this Agreement and its sub-sections are for convenience only and do not constitute a substantive part of this Agreement.

(j)    **Construction; Severability**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without regard to conflicts of law.  In the event any of the provisions or portions (or applications thereof) of this Agreement are held to be unenforceable or invalid by any court, governmental, or administrative agency of competent jurisdiction, such unenforceable or invalid provision shall in no way effect the validity or

enforceability of the remaining provisions or portions (or applications thereof) of this Agreement.

(k) **Good Faith**. The parties shall act in good faith to execute the terms of this Agreement, and to carry out the intent of this Agreement. The parties also agree to execute and deliver all documents and other assurances reasonably necessary to execute the terms of this Agreement; provided, however, nothing in this Section 19(k) shall require either party to assume any liability or expense not expressly required pursuant to the terms of this Agreement. The parties agree to use reasonable efforts to cause those conditions they are to respectively to satisfy to be so satisfied.

(l) **Rule Against Perpetuities**. In all events this Agreement shall terminate on February 1, 2016, if Closing has not occurred by such date and this Agreement has not been earlier terminated and each party shall have no obligation to the other.

(m) **Nature of Relationship**. Nothing in this Agreement shall be deemed to create a joint venture or partnership between Seller and Buyer, and any such relationship is hereby expressly disclaimed.

(n) **Construction**. As used herein, the term "person" means a natural person, a trustee, a corporation a partnership and any other form of legal entity, and all references made (i) in the neuter, masculine or feminine gender shall be deemed to have been made in all such genders; (ii) in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well; (iii) to the "Seller" or the "Buyer" shall be deemed to refer to each person hereinabove so named and its or their respective heirs, personal representatives, successors and assigns hereunder.

(o) **Effectiveness; Counterparts**. This Agreement shall become effective on and only upon its full execution and delivery by Seller and Buyer. This Agreement may be executed in counterpart originals, all of which shall have the same force and effect as the parties had executed one original of this Agreement.

(p) **Transmission of Agreement by PDF**. The transmission of a signed counterpart of this Agreement by portable document format ("PDF") shall have the same force and effect as delivery of an original signed counterpart of this Agreement, and shall constitute valid and effective delivery for all purposes. If either party delivers a signed counterpart of this Agreement by transmission of a PDF, it shall also send promptly thereafter by overnight courier or personal delivery a signed original counterpart of this Agreement to the other party, but failure to do so shall not render this Agreement void or voidable by either party.

In Witness Whereof, the Seller and Buyer have signed below under seal on the day and year first above written.

WITNESS/ATTEST:                          SELLER:

                                         **Homestead Publishing Co.**

_____          By: _____(SEAL)
                                             Chandler Bigelow III
                                             Assistant Treasurer


WITNESS/ATTEST:                          BUYER:

                                         **175 LLC**

_____          By: _____(SEAL)
                                             Garnet Bean, Managing Member


        The Escrow Agent joins in this Agreement for the sole purpose of acknowledging
its obligations hereunder, as specifically set forth above.


WITNESS/ATTEST:                          _____


_____          By: _____(SEAL)

                                         Name: _____

                                         Title: _____

WITNESS/ATTEST:                    SELLER:

                                   **Homestead Publishing Co.**

_____           By:   _____(SEAL)
                                          Harry A. Amsden
                                          Assistant Treasurer


WITNESS/ATTEST:                    BUYER:

                                   **175 LLC**

_____           By:   _____(SEAL)
                                          Garnet Bean, Managing Member


     The Escrow Agent joins in this Agreement for the sole purpose of acknowledging its obligations hereunder, as specifically set forth above.

WITNESS/ATTEST:                    _____


_____           By: _____(SEAL)

                                   Name: _____

                                   Title: _____

STATE OF ILLINOIS
COUNTY OF COOK

On this 3rd day of May, 2011, before me, the undersigned notary public, personally appeared Chandler Bigelow III, who acknowledged himself to be the Assistant Treasurer of Homestead Publishing Co., the Seller, and that he/she, as such, and being authorized to do so, executed the foregoing instrument for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 7/10/12

OFFICIAL SEAL
SHIRLEY BLASZCZYK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/10/12

STATE OF MARYLAND
CITY/COUNTY OF_____

On this _____ day of _____, 2011, before me, the undersigned notary public, personally appeared Garnet Bean, Managing Member of 175 LLC, the Buyer, and that he, being authorized to do so, executed the foregoing instrument for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:_____

STATE OF MARYLAND
CITY/COUNTY OF_____

On this _____ day of _____, 2011, before me, the undersigned notary public, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, the Escrow Agent, and that he/she, as such, and being authorized to do so, executed the foregoing instrument for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:_____

STATE OF ILLINOIS
COUNTY OF COOK

On this _____ day of April, 2011, before me, the undersigned notary public, personally appeared Harry A. Amsden, who acknowledged himself to be the Assistant Treasurer of Homestead Publishing Co., the Seller, and that he/she, as such, and being authorized to do so, executed the foregoing instrument for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:_____


STATE OF MARYLAND
CITY/~~COUNTY~~ OF _Baltimore_

On this _2nd_ day of _May_____, 2011, before me, the undersigned notary public, personally appeared Garnet Bean, Managing Member of 175 LLC, the Buyer, and that he, being authorized to do so, executed the foregoing instrument for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:_____


STATE OF MARYLAND
CITY/COUNTY OF_____

On this _____ day of _____, 2011, before me, the undersigned notary public, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, the Escrow Agent, and that he/she, as such, and being authorized to do so, executed the foregoing instrument for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:_____

# EXHIBIT A

## The Real Property

Being known and designated as Parcel 27 as shown on a Plat entitled "PARCEL 27, a Resubdivision of Parcels 11, 12, 13 and 14, COLUMBIA, VILLAGE OF WILDE LAKE, which Plat is recorded among the Land Records of Howard County as Plat No. 3646.

Being the same property described in the Deed dated September 19, 1997, and recorded among the Land Records of Howard County in Liber No. 4263, folio 463 from Patuxent Publishing Company to Homestead Publishing Company.

# EXHIBIT B

## Leases

None.

**EXHIBIT C**

**Personal Property**

None.