# EXHIBIT B

*Sacks Declaration*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF MICHAEL H. SACKS FOR AN ORDER AUTHORIZING HOMESTEAD PUBLISHING CO. TO SELL CERTAIN REAL PROPERTY LOCATED IN COLUMBIA, MARYLAND PURSUANT TO SECTIONS 363(b), (f), (m) AND (n) OF THE BANKRUPTCY CODE

MICHAEL H. SACKS hereby states:

1. I am Vice President of Operations of Tribune Publishing Company, a corporation organized under the laws of Delaware and one of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). Tribune Publishing Company is an affiliate of Homestead Publishing Co., both of which are Debtors in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

these chapter 11 cases and which are subsidiaries of Tribune Company. I am generally familiar with the Debtors' publishing operations and real property needs related thereto and I make this Declaration (the "Declaration") on behalf of the Debtors.

2.    I submit this Declaration in support of the Motion of Debtor Homestead Publishing Co. for an Order Pursuant to Sections 363(b), (f), (m) and (n) of the Bankruptcy Code Authorizing the Sale of Certain Real Property Located in Columbia, Maryland (the "Motion").

3.    The Columbia Property,[2] located approximately 25 miles from Baltimore, is a commercial property consisting of an office property of approximately 29,450 square feet in size resting on approximately 2.18 acres of real property. Until recently, the Columbia Property was used for the publication of a local newspaper and housed all newspaper personnel, including but not limited to sales people, editors and reporters. However, in a consolidation effort aimed towards greater efficiency, such operations were moved in February 2011 from the Columbia Property to already-owned vacant space in a facility which houses operations for *The Baltimore Sun* in Baltimore, Maryland.

4.    Neither Homestead nor any of the other Debtors have conducted business operations on the Columbia Property since the Columbia Property was vacated by Homestead in February 2011, nor do any of the Debtors anticipate having any need to use the Columbia Property in the future. The Columbia Property provides limited, if any, value to the Debtors' ongoing business operations. Homestead has ceased all business operations at the Columbia Property, and Homestead does not anticipate utilizing the Columbia Property as part of its business operations going forward. The Columbia Property also has substantial annual carrying costs.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

5. Just prior to the Columbia Property becoming vacant, Homestead was approached by the Purchaser with an offer to purchase the Columbia Property for $3,200,000.00. Since such time, Homestead and the Purchaser have been in negotiations regarding the terms and sale price for purchase of the Columbia Property. The negotiations took place over a period of roughly three (3) months and resulted in the parties agreeing to the terms of the Sale Agreement. The Sale Agreement calls for a Purchase Price for the Columbia Property of $3,850,000.00.

6. The Purchase Price is substantially similar to the value reached by an appraiser for purposes of an appraisal commissioned by Homestead for internal use in April 2011, and which has been shared with the Committee and the Debtors' senior lenders. Homestead believes that further marketing efforts for public sale are unlikely to result in higher and better offers for the Columbia Property, will result in additional cash expenses to the Debtors' estates and will cause a significant delay in disposing of the Columbia Property. Homestead also believes that a seller-side broker commission for the Columbia Property could be approximately, or higher than, $100,000.00.

7. The Purchaser is not affiliated with, nor is the Purchaser an insider of, Homestead or any of the other Debtors.

8. Homestead is unaware of any substantial secured claims against it, and in any event, unaware of any claims that are secured by the Columbia Property.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: May 4, 2011

_____
MICHAEL H. SACKS