# **EXHIBIT A**

```
              IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 08-13141-KJC
                                )
                                )
TRIBUNE COMPANY,                )    Chapter 11
                                )
                                )    Courtroom 5
                                )    824 Market Street
             Debtors.           )    Wilmington, Delaware
                                )
                                )    March 10, 2011
                                )    10:00 a.m.


                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: JAMES BENDERNAGEL, ESQ.
                                BY: JAMES DUCAYET, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000

                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131

ECRO:                           BRANDON McCARTHY

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1  examination?
2           MS. STEEGE:  Good morning, Your Honor.  Catherine
3  Steege on behalf of EGI, TRB, and Mr. Zell.
4  BY MS. STEEGE:
5  Q    Good morning, Professor Black.
6  A    Good morning.
7  Q    Just a few questions for you.  Do you recall that you
8  testified yesterday afternoon on direct that you had
9  allocated $300 million of value to the litigation trust in
10 connection with offering your opinion about the
11 reasonableness of the DCL plan settlement?
12 A    As a moderately conservative estimate, yes.
13 Q    Okay.  And you also testified as to how you arrived at
14 that $300 million which claims you included in arriving at
15 that number.  Do you recall that testimony?
16 A    Yes, I do.
17 Q    Okay.  And do you recall that one of the claims that
18 you did not list among those claims were the alleged bridge
19 of fiduciary duty and aiding and abetting breach of
20 fiduciary duty claims that have been alleged against my
21 client, Mr. Zell?
22 A    That's correct.
23 Q    Okay.  And, in fact, your opinion is that these
24 alleged claims against Mr. Zell do not have a significant
25

1 recovery value.  Isn't that correct?

2 A    That is my opinion.

3 Q    And you come to that conclusion, come that opinion
4 because you do not believe that these claims have a
5 meaningful chance of success.  Isn't that correct?

6 A    That's correct.  If they were to succeed, there were
7 large dollars attached, but I do not think they have a
8 meaningful chance of success.

9 Q    And that's true both for any claims alleged at Step 1
10 or any claims alleged at Step 2.

11 A    Yes.

12 Q    Okay.  Now there's been some questions asked about
13 your bankruptcy law experience and you've been candid that
14 you don't hold yourself out as a bankruptcy law expert, but
15 one of the things you do hold yourself out as, as a
16 corporate governance expert.  Correct?

17 A    Corporate law, corporate governance, corporate
18 acquisitions, yes.

19 Q    Okay.  And in connection with that expertise, one of
20 the reasons why you reach the opinion that there are not
21 claims with a meaningful chance of success against Mr. Zell
22 at Step 1 is because Mr. Zell was on the other side of the
23 deal from the Tribune.  Correct?

24 A    That is an important source of my opinion.  So he

# **EXHIBIT B**

```
            IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE DISTRICT OF DELAWARE


IN RE:                         )    Case No. 08-13141(KJC)
                               )
                               )
TRIBUNE COMPANY                )    Chapter 11
                               )
                               )    Courtroom 5
                               )    824 Market Street
         Debtors.              )    Wilmington, Delaware
                               )
                               )    April 13, 2011
                               )    10:00 a.m.

                TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
              UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:              Sidley Austin, LLP
                          BY: JAMES CONLAN, ESQ.
                          BY: BRYAN KRAKAUER, ESQ.
                          BY: KEN KANSA, ESQ.
                          BY: KEVIN LANTRY, ESQ.
                          One South Dearborn
                          Chicago, IL 60603
                          (312) 853-7000

                          Cole, Schotz, Meisel, Forman
                          & Leonard, P.A.
                          BY: NORMAN PERNICK, ESQ.
                          500 Delaware Ave., Ste. 1410
                          Wilmington, DE 19801
                          (302) 652-3131

ECRO:                     AL LUGANO

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1   in Item B1A to the priority of EGI's claims, an objection to
2   the bridge settlement, and objections that I think come
3   later in the agenda under the topics of creditor trust
4   related to the 346(e) priority issue in the bar order.
5           It's our understanding that those objections will
6   be addressed later because they're part of a group of
7   objections where others will also be appearing, but that I
8   together with my partner, Cathy Steege who will address the
9   issue of priority of EGI's claims, will address everything
10  that is in Items B1 and B2A at this time and then we'll move
11  further down the agenda if that's agreeable to the Court.
12          THE COURT:  That's fine, I just have on request.
13  You mentioned at the beginning of your statement that you
14  wanted to address why claims, alleged claims don't have any
15  merit.  I would say spend no time on that.  And by saying
16  that, I don't tell you that I think they have merit, I know
17  we have a hearing scheduled at some time in the future on
18  the standing issue, but that's not an issue for now as far
19  as I'm concerned.
20          MR. BRADFORD:  If I might just be heard briefly
21  on why we believe it's an issue for now Your Honor.
22          THE COURT:  Certainly.
23          MR. BRADFORD:  With respect to the -- both plans,
24  each of them effectively seek to finance and fund their
25  plans on the basis of claims that are being asserted.  The

# **EXHIBIT C**

# Bloomberg Businessweek

**Tribune Judge Says Claims Against Chairman Zell 'Have Merit'**

By Steven Church - Apr 13, 2011 12:22 PM CT

Tribune Co.'s bankruptcy judge said potential lawsuits against company Chairman Sam Zell related to the billionaire's $8.2 billion buyout of the newspaper publisher "have merit."
U.S. Bankruptcy Judge Kevin Carey didn't immediately rule on a request by Zell, 69, to either prevent any lawsuits against him from going forward or require that an independent trustee pursue the litigation. In a lawsuit in November, creditors accused Zell of pushing forward with the buyout even though he and others involved knew the transaction would add too much debt on Tribune for the company to survive.
Tribune creditors have said they plan to pursue lawsuits against Zell after the Chicago-based company exits bankruptcy. Both of the competing reorganization proposals for Tribune would create a litigation trust to sue some of the banks, former shareholders and Tribune managers involved in the 2007 buyout organized by Zell.
"It is for some court down the road to determine whether or not those claims have merit and will succeed," James Sottile, a creditor attorney, told Carey today.
Carey is hearing objections to the two plans today in U.S. Bankruptcy Court in Wilmington, Delaware. Final arguments about the plans are scheduled for June.
Tribune filed for bankruptcy in 2008, a year after Zell took the company private. Creditors are owed about $13 billion. The company is worth about $6.75 billion, according to court records.
The bankruptcy case is In re Tribune Co., 08-bk-13141, U.S. Bankruptcy Court, District of Delaware (Wilmington).
To contact the reporter on this story: Steven Church in Wilmington, Delaware, at schurch3@bloomberg.net

# Los Angeles Times

Friday, April 14, 2011
3:02 p.m. PDT

**BUSINESS BRIEFING; BANKRUPTCY; Tribune judge eyes Zell claims**
14 April 2011
The Los Angeles Times (Wire Reports)

Tribune Co.'s bankruptcy judge said potential lawsuits against Chairman Sam Zell related to the billionaire's $8.2-billion buyout of the newspaper publisher "have merit."

U.S. Bankruptcy Judge Kevin Carey didn't immediately rule on a request by Zell, 69, to either prevent any lawsuits against him from going forward or require that an independent trustee pursue the litigation.

In a lawsuit in November, creditors accused Zell of pushing forward with the buyout even though he and others involved knew the transaction would add too much debt on Tribune for the company to survive.

Chicago-based Tribune's properties include the Los Angeles Times.