## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, *et al.*, | Cases No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, *et al.*, | |
| Plaintiff, | Adversary Proceeding No. 10-54010 (KJC) |
| v. | |
| DENNIS J. FITZSIMONS, *et al.*, | **Hearing Date:  May 17, 2011 at 10:00 a.m. (Requested)**<br>**Objection Deadline: May 16, 2011 at 5:00 p.m.** |
| Defendants. | |

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR PROTECTIVE ORDER

The Official Committee of Unsecured Creditors (the "Committee") of Tribune Company ("Tribune" or the "Company") and its various debtor-subsidiaries (collectively, the "Debtors"), by and through its undersigned counsel, hereby objects to the subpoena issued by the Aurelius Plaintiff Group (as defined below) on April 29, 2011 and moves this Court (the "Motion") pursuant to Rule 26(c) of the Federal Rules of Civil Procedure (the "Federal Rules") made applicable by Rule 9014 and Rule 7026 of the Federal Rules of Bankruptcy Procedure for entry of a protective order.  In support hereof, the Committee respectfully represents as follows:

### BACKGROUND

1.    On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy

{698.001-W0014555.}

Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On December 18, 2008, the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in the Debtors' cases.

3. By motion dated February 1, 2010, as supplemented by motion dated September 14, 2010 [Docket Nos. 3281 and 5668] (together, the "First Standing Motion"), the Committee requested that this Court authorize it to commence, prosecute and settle on behalf of the Debtors' estates claims and counterclaims arising out of or in connection with the Debtors' 2007 leveraged buyout transaction (the "LBO Transaction"). By separate motion dated September 13, 2010 [Docket No. 5698] (the "Second Standing Motion," and with the First Standing Motion, the "Standing Motions"), the Committee requested that this Court authorize it to commence, prosecute and settle certain additional claims on behalf of the Debtors' estates. The Court granted the Standing Motions on October 27, 2010 [Docket No. 6150] (the "Standing Order").

4. The Standing Order provides in pertinent part that:

> All motion practice (other than motions respecting confidentiality, motions to lift, extend or otherwise respecting the Stay, motions with respect to the discovery permitted by this order, motions to intervene and motions regarding settlements consistent with the terms of this Order) and contested hearings or trials are prohibited. Notwithstanding the foregoing, during the period this Stay is in effect, the Committee may: a) consistent with governing rules, amend the complaints in the LBO Actions; b) complete service of the complaints in the LBO Actions; and c) take such steps, including immediately pursuing discovery, as are necessary for the purpose of preventing applicable statutes of limitations or other time related defenses from barring any of the claims asserted in the LBO Actions.

{698.001-W0014555.}

*See* Standing Order, p. 4 (emphasis added).

5.      Consistent with the terms of the Standing Order, on November 1, 2010, and later amended on December 7, 2010, the Committee filed a complaint, Adversary Proceeding No. 10-54010 (KJC) (as amended, the "Complaint" or the "Shareholder Adversary Proceeding"), that asserts causes of action against certain parties in connection with the LBO Transaction.

6.      As set forth in detail in the Complaint, the LBO Transaction occurred in two steps. On April 1, 2007, Tribune executed the first step of the transaction, by which Tribune agreed to purchase approximately 50% of the Company's outstanding shares for $34.00 per share in a tender offer and paying its accepting shareholders approximately $4.3 billion ("Step One"). (*See* Am. Compl. ¶ 4.) At the end of 2007, Tribune directors and officers facilitated the closing of the second step of the LBO Transaction, by which Tribune converted the remaining outstanding shares of Tribune stock to a right to receive $34.00 per share, paying approximately $4 billion to shareholders holding the remaining 50% of Tribune's outstanding shares ("Step Two"). (*Id.*) Combined, approximately 243,121,164 Tribune shares were transferred in Step One and Step Two back to the Company for approximately $8.3 billion.

7.      A significant part of the Shareholder Adversary Proceeding seeks recovery against shareholders that received payment from the Company as part of Step One or Step Two of the LBO Transaction (the "Shareholder Defendants"). The Committee attached to the Complaint a list of known Shareholder Defendants, consisting of over 38,000 names; however, the complete list of Shareholder Defendants, still to be discovered and added, includes thousands of additional names.

3

8.      Consistent with the Standing Order and as part of its efforts to ascertain information regarding those parties involved in the LBO Transaction, the Committee in November 2010 issued more than 1600 individual subpoenas to more than 900 separate entities based on information that such entities were brokers, banks, investment managers, or mutual funds (the "Subpoenaed Parties") that likely held or managed Tribune shares on behalf of beneficial owners of Tribune stock and, thus, may have received proceeds from Tribune as part of the LBO Transaction. A sample copy of the specific requests is attached hereto as Exhibit A. The Committee has been successful in obtaining from hundreds of entities—over half of the Subpoenaed Parties—information identifying these beneficial owners of Tribune stock who received proceeds from Step One and/or Step Two of the LBO Transaction.

9.      Many of the Subpoenaed Parties refused to produce requested information unless the Committee entered into confidentiality agreements (the "Confidentiality Agreements") that prohibit the Committee from disclosing to any third party the information produced by the Subpoenaed Parties. A sample form confidentiality agreement used by the Committee and the Subpoenaed Parties is attached hereto as Exhibit B.

10.     On April 29, 2011, Aurelius Capital Management, LP, on behalf of its managed entities (collectively "Aurelius"), Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee for certain series of Senior Notes by the Tribune Company ("Deutsche Bank"), and Law Debenture Trust Company of New York, in its capacity as successor Indenture Trustee for certain series of Senior Notes issued by Tribune ("Law Debenture" and, collectively with Aurelius, Deutsche bank, and Wilmington Trust Company, in its capacity as successor Indenture Trustee for the PHONES notes issued by Tribune, the

4

("Aurelius Plaintiff Group") sent to Committee counsel a *Subpoena for Rule 2004 Examination to the Official Committee of Unsecured Creditors* (the "Aurelius Subpoena").

11.    The Aurelius Subpoena seeks from the Committee turnover of the information the Committee obtained, and is pursuing, from the Subpoenaed Parties. Attached as Exhibit C is a copy of the Aurelius Plaintiff Group's subpoena requests.

## RELIEF REQUESTED

12.    By this Motion, the Committee requests pursuant to Federal Rule 26(c) the entry of a protective order with respect to the disclosure of information subject to Confidentiality Agreements obtained during the subpoena process from hundreds of Subpoenaed Parties. Specifically, the Committee requests the Court enter a protective order that will allow the Committee to disclose, to the Aurelius Plaintiff Group and any other requesting party,[1] all information produced by the Subpoenaed Parties, upon agreement of the Aurelius Plaintiff Group (or any other requesting party) to abide by the terms of the Confidentiality Agreements.

## BASIS FOR RELIEF

13.    The Court is authorized to make any order as may be appropriate to protect the recipient of a discovery requests from unreasonable or oppressive demands. Under Rule 26(c) of the Federal Rules, incorporated by Bankruptcy Rules 9014 and 7026, an order may be issued by the Court to:

> protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . .
>
> (A)    forbidding the disclosure or discovery;
> (B)    specifying terms, including time and place, for the disclosure or discovery;

---

[1] The Committee has also received a request from counsel for the Retiree Claimants for the same information sought by the Aurelius Plaintiff Group.

{698.001-W0014555.}

<div style="margin-left:2em">

(C)    prescribing a discovery method other than the one selected by the party seeking discovery;

(D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

...

(G)    requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way....

</div>

Fed. R. Civ. P. 26(c).

14.    A party may obtain a protective order to guard confidential information in the discovery context when "good cause" exists to support such an order. *See Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs.),* 2008 Bankr. LEXIS 2213 (Bankr. D. Del. Aug. 20, 2008) (finding good cause to issue a protective order under Federal Rule 26(c) on the basis of confidentiality). The decision whether to grant a protective order under Federal Rule 26(c) is committed to the discretion of the trial court. *Commissariat a L'Energie Atomique v. Samsung Elecs. Co.,* 430 F. Supp. 2d 366, 368 (D. Del. 2006).

15.    In considering whether good cause exists for a protective order, federal courts have generally adopted a balancing process. . . . One interest which should be recognized in the balancing process is an interest in privacy. It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787 (3d Cir. Pa. 1994). Thus, the list of factors—"which are neither mandatory nor exhaustive"— that may be considered in evaluating whether good cause exists to issue a protective order under Federal Rule 26(c)(1) include "whether disclosure will violate any privacy interests." *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. Pa. 1995). Courts have concluded that the confidential and private nature of personal non-party information satisfies the "good cause" standard under Federal Rule 26(c)(1). *See, e.g., Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (collecting cases); *Millwrights' Local 1102*

*Supplemental Pension Fund v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2010 U.S. Dist. LEXIS 69852, at *7 ( E.D. Mich. July 13, 2010) ("Financial information relating to non-parties is entitled to protection."); *Haas v. Golding Transp., Inc.*, 2010 U.S. Dist. LEXIS 29100, at *15-16 (M.D.N.C. Mar. 26, 2010) (finding good cause for the issuance of a blanket protective order regarding, *inter alia,* personal financial information, which "implicate[s] privacy and other interests of the sort Rule 26(c) exists to protect").

16.     Here, good cause exists to issue a protective order under the present circumstances.  The Committee does not object in principle to producing the requested information from the Aurelius Subpoena: in the end, Tribune's unsecured creditors may benefit by the Aurelius Plaintiff Group's efforts in prosecuting certain actions relating to the LBO Transaction.  Thus, to the extent that the Committee's continuous and considerable efforts over the past six-plus months of investigating, locating, obtaining, and organizing LBO Transaction information from over 1600 subpoenas can be used appropriately to the benefit of all unsecured creditors' interests, the Committee is supportive.

17.     However, the Committee is required contractually to prevent disclosure of the Subpoenaed Parties' confidential information.  The Confidentiality Agreements state that "[a]bsent a written waiver or agreement from the [Subpoenaed] Party or an order of the Bankruptcy Court to the contrary, Documents designated 'Highly Confidential— Attorneys' Eyes Only' or 'Confidential' may be shown only to [certain limited] Parties." (*See* Exhibit A form confi. Agreement at ¶ 7.)  In addition, counsel to the Committee agreed to "(a) promptly notify counsel to the [Subpoenaed] Party in writing of the requested access; and (b) prior to producing any such Documents, provide the [Subpoenaed] Party with a reasonable opportunity

{698.001-W0014555.}

to seek a court order preventing or limiting the production of such Documents." (*Id.* at ¶ 8.).
Further, the Confidentiality Agreements

> acknowledge that irreparable damage would occur to the [Subpoenaed]
> Party if any of the provisions of this Agreement were not performed in
> accordance with their specific terms or were otherwise breached and that
> remedies at law for any actual or threatened breach by it of the covenants
> contained in this Agreement shall be inadequate and that the [Subpoenaed]
> Party will be entitled to equitable relief, including injunction and specific
> performance, in the event of any breach of the provisions of this
> Agreement, in addition to all other remedies available to the [Subpoenaed]
> Party at law or in equity.

(*Id.* at ¶ 10.) Failure to abide by these provisions potentially exposes the Committee, and the Debtors' estate, to additional expenses, costs and fees.

18.    The Committee intends to send the instant motion and proposed order to all of the Subpoenaed Parties immediately upon filing, so that they receive notice and have the opportunity to respond. Accordingly, the instant motion and proposed relief offers an efficient process by which (i) the Committee may satisfy its obligations under the Confidentiality Agreements and (ii) the Court may address and resolve this issue in consolidated fashion, avoiding a flood of separate motions for protection from the Subpoenaed Parties.

19.    Therefore, a protective order governing the disclosure and use of the confidential information produced by the Subpoenaed Parties with respect to the Aurelius Subpoena, and any other third-party's requests for the LBO Transaction shareholder information, will appropriately protect the legitimate interests of the Subpoenaed Parties and the Committee in protecting confidential information. Attached hereto as Exhibit D is a proposed form of Protective Order.

20.    Court resources would be conserved by these prophylactic measures, limiting the need for future Court intervention while (a) ensuring that the information produced

{698.001-W0014555.}

to the Committee by the Subpoenaed Parties continues to receive the same level of confidentiality provided in the Confidentiality Agreements and (b) permitting the information and work already performed in the interests of the general unsecured creditors to be shared efficiently with other creditors. *See Pansy*, 23 F.3d at 787 (discussing balancing interests).   As described above, the Committee is amenable to making a reasonable production to the Aurelius Plaintiff Group (and other requesting creditors) in connection with the Committee's efforts with respect to the LBO Transaction, but a protective order first should be entered, relieving the Committee of any present obligation to respond to confirmation discovery until such time.

   **WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court (i) grant the Motion, (ii) enter the proposed orders, substantially in the form attached hereto, and (iii) grant such other relief as the Court deems just and necessary.

Dated: May 9, 2011
      Wilmington, Delaware

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Daniel B. Rath (No.3022)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
Thomas G. Macauley
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

*Counsel to the Official Committee of Unsecured Creditors*

{698.001-W0014555.}