# EXHIBIT C

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

District of __DELAWARE__

In re  TRIBUNE COMPANY,, ET AL.
      Debtor

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.*  08-13141 (KJC)

To: THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TRIBUNE COMPANY
C/O JAMES SOTILLE, ESQ.
ZUCKERMAN SPAEDER LLP
SUITE 1000
WASHINGTON, DC 20036

Chapter __11__

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A.

| PLACE | DATE AND TIME |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD, LLP<br>ONE BRYANT PARK, NY, NY 10036 | MAY 13, 2011 AT 12:00 PM |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ *David M. Zensky, Esq.* | APRIL 29, 2011 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
DAVID M. ZENSKY, ESQ.   (212) 872-1075
AKIN GUMP STRAUSS HAUER & FELD, LLP, ONE BRYANT PARK, NY, NY 10036

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

### DEFINITIONS

1. **"2006 Bank Debt"** means the indebtedness under the 2006 Credit Agreement and the 2006 Bridge Credit Agreement.

2. **"2006 Bridge Credit Agreement"** means that certain Amended and Restated Bridge Credit Agreement, dated as of June 27, 2006, by and among Tribune, as borrower, the lenders party thereto, Citicorp, as administrative agent, MLPFS, as syndication agent, JPMCB, Bank of America, Morgan Stanley Bank, and The Bank of Tokyo-Mitsubishi UFJ, Ltd., Chicago Branch, as co-documentation agents, and CGMI, MLPFS, and JPMorgan as joint lead arrangers and joint book runners, as amended, restated, modified, or supplemented.

3. **"2006 Credit Agreement"** means that certain Amended and Restated Credit Agreement, dated as of June 27, 2006, by and among Tribune, as borrower, the lenders party thereto, Citicorp, as administrative agent, MLPFS, as syndication agent, JPMCB, as documentation agent, and CGMI, MLPFS, and JPMorgan as joint lead arrangers and joint book runners.

4. **"All"** or **"any"** means each and every.

5. **"And"** or **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be outside of its scope.

6. **"Bank of America"** means Bank of America, N.A.

7. **"Barclays"** means Barclays Bank PLC.

8. **"Bridge Credit Agreement"** means that certain $1.6 Billion Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, by and among, Tribune, as borrower,

MLCC as administrative agent, JPMCB as syndication agent, Citicorp and Bank of America as co documentation agents, and the lenders named therein.

9. **"Bridge Facility"** means the $1.6 billion bridge facility under the Bridge Credit Agreement.

10. **"CGMI"** means Citigroup Global Markets Inc.

11. **"Citicorp"** means Citicorp North America, Inc.

12. **"Communication"** or **"Communications"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether by writing, oral conversation, conversation by telephone, meeting or any other method. A "communication" shall also include, without limitation, all copies of documents that contain or evidence the same.

13. **"Company"** means the Tribune Company and its subsidiaries.

14. **"Credit Agreement"** means that certain $8.028 Billion Credit Agreement, dated as of May 17, 2007, by and among Tribune, as borrower, JPMCB, as administrative agent, MLCC, as syndication agent, Citicorp, Bank of America, and Barclays, as co documentation agents, and the lenders named therein, as the same has been amended, restated, modified, or supplemented.

15. **"Debtors"** means the debtors and debtors-in-possession in these chapter 11 cases as identified in footnote 1.

16. **"Delayed Draw Facility"** means the $263 million Delayed Draw Senior Tranche B Term Loan Facility under the Credit Agreement.

17. **"Document"** is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34, including, without limitation, electronic or

2

computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

18. **"EGI-TRB Purchase Agreement"** means that certain Securities Purchase Agreement, dated as of April 1, 2007 by and among Tribune, EGI-TRB, and Mr. Zell.

19. **"EGI-TRB"** means EGI-TRB, L.L.C.

20. **"ESOP Loan Agreement"** means that certain ESOP Loan Agreement, dated as of April 1, 2007, by and between Tribune and the Trustee (on behalf of the ESOP Trust).

21. **"ESOP Loan"** means the extension of credit under the ESOP Note and the ESOP Loan Agreement.

22. **"ESOP Note"** means that certain ESOP Note, dated as of April 1, 2007, made by GreatBanc (on behalf of the ESOP Trust) in favor of Tribune in the original principal amount of $250 million, to be repaid by the ESOP Trust over the 30 year life of the loan through its use of annual contributions, either in cash or in the form of forgiveness, from Tribune to the ESOP Trust and/or distributions paid on the shares of Tribune Common Stock held by the ESOP Trust.

23. **"ESOP Purchase Agreement"** means that certain ESOP Purchase Agreement, dated as of April 1, 2007, by and between Tribune and GreatBanc (on behalf of the ESOP Trust).

24. **"ESOP Trust"** means that certain Tribune Employee Stock Ownership Trust, dated as of April 1, 2007, with an effective date as of February 7, 2007, by and between Tribune and GreatBanc.

25. **"ESOP"** means that certain Tribune Employee Stock Ownership Plan formed during the first quarter of 2007 with an effective date as of January 1, 2007.

26. **"Exchangeable EGI-TRB Note"** means that certain Subordinated Exchangeable Promissory Note, dated as of April 23, 2007, made by Tribune in favor of EGI-TRB in the

3

original principal amount of $200 million, which was exchangeable at the option of Tribune, or automatically under certain circumstances, into 5,882,353 shares of Tribune Common Stock.

27.  **"FinanceCo Transaction"** means (a) the formation of FinanceCo as a wholly-owned subsidiary of Tribune, (b) the contribution by Tribune of not less than $3.0 billion to FinanceCo, (c) the issuance by certain Guarantor Subsidiaries of the subordinated intercompany promissory notes to FinanceCo, and (d) the direct or indirect dividend or other distribution by such Guarantor Subsidiaries of the aggregate amount of such loaned funds to Tribune.

28.  **"FinanceCo/Holdco Transactions"** means, collectively, the FinanceCo Transaction and the Holdco Transaction.

29.  **"FinanceCo"** means Tribune Finance, LLC.

30.  **"GreatBanc"** means GreatBanc Trust Company in its capacity as trustee of the ESOP Trust.

31.  **"Holdco Transaction"** means the formation of Holdco as a wholly-owned subsidiary of Tribune and the contribution to Holdco of the stock of Tribune Broadcasting Company.

32.  **"Holdco"** means Tribune Broadcasting Holdco, LLC.

33.  **"Including"** means including, but not limited to.

34.  **"Incremental Credit Agreement Facility"** means an additional $2.105 billion in new incremental term loans under the Tranche B Facility or as a new tranche of term loans under the Credit Agreement.

35.  **"Incremental Credit Agreement Facility"** means an additional $2.105 billion in new incremental term loans under the Tranche B Facility or as a new tranche of term loans under the Credit Agreement.

36. **"Initial Zell Investment"** means the investment of EGI-TRB in Tribune with respect to the purchase of $50 million of Tribune's common equity and the Exchangeable EGI-TRB Note.

37. **"JPMCB"** means JPMorgan Chase Bank, N.A.

38. **"JPMorgan"** means J.P. Morgan Securities Inc.

39. **"Leveraged ESOP Transaction"** means collectively, the Tender Offer, the Merger, the Step One Financing, the Step Two Financing, the transactions contemplated by the ESOP Purchase Agreement, and the transactions contemplated by the EGI TRB Purchase Agreement.

40. **"Merger Agreement"** means that certain Agreement and Plan of Merger, dated as of April 1, 2007, by and among Tribune, the Trustee, the Merger Sub, and EGI TRB.

41. **"Merger Sub"** means Tesop Corporation, a Delaware corporation wholly owned by the ESOP.

42. **"Merger"** means the merger of Tribune with and into the Merger Sub pursuant to the Merger Agreement with Tribune surviving the merger and becoming a wholly-owned subsidiary of the ESOP.

43. **"MLCC"** means Merrill Lynch Capital Corporation.

44. **"MLPFS"** means Merrill Lynch, Pierce, Fenner & Smith.

45. **"Morgan Stanley"** means Morgan Stanley & Co. Incorporated.

46. **"Person"** means any natural person or any business, legal or governmental entity or association.

47. **"Refinancing"** means the repayment of the 2006 Bank Debt.

48. **"Relating to"** means concerning, constituting, containing, embodying, identifying, dealing with, reflecting, mentioning, defining, explaining, discussing, commenting upon, monitoring, supporting, evidencing, modifying, contradicting, quoting, criticizing, describing, creating or maintaining, bearing upon, relating to, referring to, having any relationship to, constituting a basis for, deriving from or arising from, or in any manner whatsoever pertinent to that subject.

49. **"Revolving Credit Facility"** means the $750 million Revolving Credit Facility under the Credit Agreement.

50. **"Step One Financing"** means the Tranche X Facility, the Tranche B Facility, the Delayed Draw Facility, and the Revolving Credit Facility under the Credit Agreement.

51. **"Step One Purchase Transaction"** means the purchase by EGI TRB of (a) 1,470,588 newly issued shares of Tribune Common Stock for the purchase price of $50 million and (b) the Exchangeable EGI TRB Note for a purchase price of $200 million.

52. **"Step One Selling Shareholder"** means the shareholders whose stock in Tribune was redeemed for cash pursuant to the Tender Offer.

53. **"Step One Transactions"** means (a) the Tender Offer, (b) the Refinancing, (c) the Initial Zell Investment and issuance of the Exchangeable EGI-TRB Note, (d) the formation of the ESOP, (e) the execution and delivery of the Merger Agreement, (f) the Step One Purchase Transaction, (g) the execution, delivery, and performance of the Credit Agreement, (h) the ESOP Loan and the pledge of shares by ESOP to secure the ESOP Loan, (i) the FinanceCo/Holdco Transactions, (j) all other transactions necessary to effect or incidental to the foregoing, and (k) the payment of fees, costs and expenses related to the foregoing.

54. **"Step One"** or **"at Step One"** means the Step One Transactions or in connection with the Step One Transactions.

55. **"Step Two Financing"** means the Bridge Facility and the Incremental Credit Agreement Facility.

56. **"Step Two Selling Shareholder"** means the shareholders whose stock in Tribune was redeemed for cash pursuant to the Merger.

57. **"Step Two Transactions"** means (a) the Merger, (b) the execution, delivery, and performance of the Bridge Credit Agreement, (c) the making of advances under the Incremental Credit Agreement Facility, (d) all other transactions necessary to effect or incidental to the foregoing, and (e) the payment of fees, costs and expenses related to the foregoing.

58. **"Step Two"** or **"at Step Two"** means the Step Two Transactions or in connection with the Step Two Transactions.

59. **"Tender Offer"** means that certain tender offer for 126 million shares of Tribune Common Stock (52% of shares then outstanding) at $34 per share.

60. **"Tranche B Facility"** means the $5.515 billion Senior Tranche B Term Loan Facility under the Credit Agreement.

61. **"Tranche X Facility"** means the $1.5 billion Senior Tranche X Term Loan Facility under the Credit Agreement.

62. **"Tribune Common Stock"** means the common stock issued by Tribune.

63. **"Tribune"** means the Tribune Company and its subsidiaries.

## INSTRUCTIONS

1. These Requests apply to all documents or tangible things in your possession, custody or control, including documents or tangible things in the possession, custody or control

7

of your members, attorneys, agents, accountants and advisors. A document or tangible thing is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you: (a) own such document or tangible thing in whole or in part; (b) have a right, by contract, statute or otherwise, to use, inspect, examine or copy such document or tangible thing on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document or tangible thing on any terms; or (d) as a practical matter, have been able to use, inspect, examine, or copy such document or tangible thing when you sought to do so. If any requested document or tangible thing was, but no longer is, in your control, state the disposition of each such document or tangible thing.

2. Documents and tangible things produced in response to these Requests shall be organized and labeled to correspond to the paragraphs of the Request to which they are responsive.

3. All documents and tangible things requested herein shall be produced in their original or native, searchable format.

4. The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense as necessary to bring within the scope of these Requests any documents or tangible thing that might otherwise be construed to be outside their scope.

5. The use of the singular form of any word includes the plural and vice versa.

6. If you are unable to answer or respond fully to any Request, answer or respond to the extent possible and specify the reasons for your inability to answer or respond in full.

8

100730442 v1

7. In the event that any document is not produced by reason of a claim of privilege, work product, or any other reason, you shall produce as much of the document concerned as to which no claim of privilege is made. In addition, with respect to documents or portions of documents for which a claim of privilege or limitation is made, you are instructed to provide a list setting forth the following: (a) the author or originator of the document; (b) each addressee or recipient of the document or any copy thereof; (c) the date the document bears, or if it bears no date, the date on which it was made; (d) the title or subject matter of the document and a general description of its contents; (e) the nature of the document (e.g., memorandum, e-mail, chart, etc.); and (f) the basis or bases for the claim of privilege.

8. Each Request shall be deemed continuing so as to require prompt supplementation if you generate, obtain, or discover additional documents or tangible things. If, after responding, you obtain or become aware of any additional documents or tangible things responsive to these Requests, production of such additional documents or tangible things shall be made forthwith.

## DOCUMENTS OR TANGIBLE THINGS REQUESTED

1. A list that compiles, or Documents sufficient to identify: (a) the identity of each Step One Selling Shareholder; (b) the last known address of each Step One Selling Shareholder; (c) the number of shares of Tribune Common Stock tendered, redeemed, sold, or otherwise disposed of by each Step One Selling Shareholder in connection with the Step One Transactions; and (d) the amount of any cash payment and/or other consideration received by each Step One Selling Shareholder in exchange for the Tribune Common Stock tendered, redeemed, sold, or otherwise disposed of in connection with the Step One Transactions.

2. A list that compiles, or Documents sufficient to identify: (a) the identity of each Step Two Selling Shareholder; (b) the last known address of each Step Two Selling Shareholder; (c) the number of shares of Tribune Common Stock tendered, redeemed, sold, or otherwise disposed of by each Step Two Selling Shareholder in connection with the Step Two Transactions; and (d) the amount of any cash payment and/or other consideration received by each Step Two Selling Shareholder in exchange for the Tribune Common Stock tendered, redeemed, sold, or otherwise disposed of in connection with the Step Two Transactions.