# JENNER&BLOCK

May 11, 2011

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel 312 222-9350
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

The Honorable Kevin J. Carey
United States Bankruptcy Court
 District of Delaware
824 North Market Street
Wilmington, Delaware 19801

David J. Bradford
Tel  312  923-2975
Fax  312  840-7375
dbradford@jenner.com

Re:  In re Tribune Company, et al., 08-13141(KJC); Mr. Zell's Letter Brief Regarding Objection to Proposed Plans of Reorganization

Dear Chief Judge Carey:

The Court should not confirm either of the plans as currently drafted because each asks this Court to bless lottery-ticket litigation, including claims against Mr. Zell that the Court-appointed Examiner *and* the Debtor/Committee/Lender ("DCL") Plan Proponents' key expert, Professor Bernard Black, have concluded do not have a meaningful chance of success. (Examiner's Report, Vol. II. at 22, 338-39, 395, 404, 406; 3/10/11 Tr. at 51-52.) In fact, despite the parade of experts who testified at the confirmation hearing, *no one* contradicted the Examiner or Professor Black by suggesting that the claims against Mr. Zell have any likelihood of success or meaningful value to creditors. When given the opportunity to explain why the alleged claims against Mr. Zell are colorable or would benefit the Estate through their motion to authorize standing for an amended complaint, the Committee withdrew the motion rather than participate in a hearing where the colorability of the claims against Mr. Zell would be addressed. (Dkt. 8112.) Instead of justifying the litigation against Mr. Zell, the proponents of both plans argue that the Court should defer to another day and perhaps to another court the decision of whether to allow the claims against Mr. Zell to proceed. (*See* Dkt. 8171 at Summ. of Objections (Noteholders' Confirmation Br.); Dkt. 8607 at pgs. 12-13 (DCL Plan Proponents Summ. of Resolved and Unresolved Objections).) The Court should decline this invitation to allow the Litigation Trust to launch wasteful and baseless litigation on the mere hope of a payday for at least three separate reasons.

*First*, the standards for judicial vigilance in "policing" against frivolous litigation by litigation trustees demand that these claims not go forward into the Litigation Trust. In *Maxwell v. KPMG, LLC*, 520 F.3d 713, 718-19 (7th Cir. 2008), the Seventh Circuit recognized that traditional safeguards against the pursuit of frivolous litigation are missing when a bankruptcy trustee is authorized to sue. As a result, the bankruptcy court must be particularly vigilant to police against claims that are not "reasonably likely to benefit the debtor's estate." *Id.* at 718. Employing almost the exact terminology the Seventh Circuit used in *Maxwell*, both the Examiner and Professor Black found the claims against Mr. Zell did not measure up under the *Maxwell* standard. (Examiner's Report, Vol. II. at 22, 338-39, 395, 404, 406; 3/10/11 Tr. at 51-52.) Of course, in many cases, a court may not be in a position, at the time a litigation trust is established, to evaluate whether particular claims are properly pursued. This case is unusual because the claims against Mr. Zell have been studied at least three different times and, each time, they were either expressly or implicitly found to be without merit. In 2009, the Committee investigated the claims and, following its investigation, agreed to support the Debtors' proposed

plan that would have released the claims against Mr. Zell, implicitly suggesting that Committee did not place any significant value on the alleged claims against Mr. Zell or EGI-TRB LLC ("EGI-TRB"). (3/8/11 Tr. 50-52, 219-21.) Following the Committee's investigation, the Court-appointed Examiner conducted a thorough and independent investigation and issued a report expressly concluding that the claims against Mr. Zell were "highly unlikely" to succeed. (Examiner's Report, Vol. II. at 22, 338-39, 395, 404, 406.) (The Plan Proponents conflate claims against EGI-TRB, which the Examiner found reasonably unlikely to succeed, with claims against Mr. Zell which he found highly unlikely to succeed.) The DCL Plan Proponents' expert, Professor Black, then examined again the claims against Mr. Zell and, like the Examiner, expressly concluded he did "not think they had a meaningful chance of success." (3/10/11 Tr. at 51-52; DCL Ex. 1484 at 154-60.) The fact that the claims against Mr. Zell were found to be without merit or significant value to the estate *three* different times by three independent and highly-regarded professionals provides this Court with a compelling record with which to fulfill its gate-keeper responsibilities under *Maxwell* and exclude frivolous claims from the Litigation Trust.

***Second***, the record demonstrates that neither plan proponent can objectively evaluate whether the pursuit of these claims is in the best interest of creditors. Aurelius is incented to pursue frivolous claims against Mr. Zell, with the costs borne by all creditors in order to gain leverage in its own private battle to subordinate the EGI-TRB notes to the PHONES notes. In fact, Aurelius proposes that this Court postpone resolution of that priority issue – presumably so Aurelius can use the creditors' money and litigation trust to try to litigate EGI-TRB and Mr. Zell into submission. That position is an about-face for Aurelius which, before it purchased its PHONES position, agreed to a plan that would have released the LBO-related causes of action against Mr. Zell and EGI-TRB. (3/8/11 Tr. at 51-52.) Following the Examiner's Report, however, Aurelius substantially increased its position as a holder of the Debtors' Notes and also bought a substantial position in the PHONES. (3/8/11 Tr. at 65-66, 140-42.) Once it bought its ticket to the anticipated LBO litigation, Aurelius sought to promote a litigation feeding-frenzy and accused the DCL Plan Proponents of bias and conflicts in deciding not to pursue claims. (*See, e.g.*, Dkt. Nos. 5680 (Aurelius' Mot. for Appointment of Trustee) & 6293 (Aurelius' Responsive Statement).) Ignoring the Examiner's Report, it particularly set its sights on EGI-TRB (and its potential beneficiary, Mr. Zell) who stood above the PHONES on the creditor food chain. (*See, e.g.*, 3/8/11 Tr. at 117-18.) The DCL Plan Proponents, who are incented to rebut the Aurelius allegation that they are conflicted or "soft" on Mr. Zell, responded by taking the position that, like Aurelius, they too would pursue every imaginable claim against Mr. Zell – even though their expert testified the claims have no meaningful chance of success. An objective judicial assessment of whether these claims should be pursued by the Litigation Trust is warranted because neither Plan Proponent can objectively evaluate that issue.

***Third***, making the decision now to stop wasteful litigation is consistent with the requirements of 11 U.S.C. § 1129. Both Aurelius and the DCL Plan Proponents contend that this is not a confirmation issue – but allowing a junior creditor such as Aurelius (which purchased a significant part of its claims against the estate apparently so it could pursue litigation) to drive the litigation decisions of this estate violates Sections 1129(a)(3), (a)(7) and (b). Neither Aurelius nor the DCL Plan Proponents are proposing their respective plans in good faith when a central premise of both plans is the pursuit of litigation without a meaningful chance of success on the merits. Although proponents assert that the claims have value because any recovery may

be substantial, even if unlikely, the Seventh Circuit has explained that "[t]here is something wrong with this reasoning." *Maxwell*, 520 F.3d at 718. Resting litigation decisions on the fact that an "intimidating" damage claim can be made without regard to the probability that the claim has any meaningful chance of success is an inappropriate exercise of litigation judgment. *Id.* Because "frivolous suits are forbidden," bankruptcy courts must "be vigilant in policing the litigation judgment exercised by trustees" who should not be reimbursed for expenses that are not "reasonably likely" to benefit the Debtors' Estate. *Id.* at 718-19. And the fact that Professor Black did not even ascribe any "hold-up value" to the claims against Mr. Zell further underscores how inappropriate it would be to allow these claims to be assigned to a litigation trust. (*Compare* Tr. 3/9/11 at 147-51 *with* Tr. 3/10/11 at 49-50.)

Allowing that assignment also is not in the best interests of creditors and thus violates Section 1129(a)(7). There is a cost to pursuing frivolous litigation. Here, Mr. Zell holds an indemnification claim, which even if treated as an unsecured claim, is worth 35 cents on the dollar. (Dkt. 8769 at § 3.2.6 (DCL Second Am. Plan).) Pursuing litigation against Mr. Zell increases that claim and reduces recovery for creditors. Mr. Zell also has a right to indemnification under the Debtors' insurance policies. Increasing Mr. Zell's litigation costs reduces the value of the policies to the estate. The Debtors also are loaning money to the litigation trusts to pursue these claims, and given that the claims against Mr. Zell have no meaningful chance of success, it is unlikely that the Debtors will be able to recover the amounts the trusts will spend on litigation against Zell. A truly independent bankruptcy trustee, faced with the Examiner's Report and Professor Black's testimony, and weighing the costs of the litigation against Mr. Zell and its remote chance of success, very likely would not make the same decision to assert these claims as Aurelius or the DCL Plan Proponents. Both have self-interested incentives, described above, that preclude a truly independent decision. Furthermore, as reflected in *Maxwell*, the Bankruptcy Code would not afford a chapter 7 trustee the benefit of the self-serving provisions both Aurelius and the DCL Plan Proponents have included in their plans to protect themselves against the downside of frivolous litigation. Creditors would be better served (and their distributions from the litigation assets would be higher) in a chapter 7 case where this frivolous litigation most likely would never be brought. Finally, Mr. Zell and EGI-TRB are creditors that have voted against both plans. Neither plan provides for fair and equitable treatment of Mr. Zell's or EGI-TRB's claims because they require Mr. Zell and EGI-TRB to defend against baseless litigation before recovering on their claims.

This Court has an ample record to decide that the three identified claims against Mr. Zell should not be pursued at creditors' expense. The three claims assert that:

- Mr. Zell allegedly aided and abetted breaches of fiduciary duties by the Tribune's Special Committee at Step One, at a time when Mr. Zell was sitting across the table from the Special Committee, at its invitation, bargaining at arms-length to purchase Tribune on terms acceptable to the Special Committee. The Examiner found this alleged claim "highly unlikely" to succeed.

- Mr. Zell allegedly breached his fiduciary duties when he became a director after Step One was approved, notwithstanding that he completely abstained from any board actions related to the transaction. This claim is directly contrary to controlling Delaware authority. The Examiner was not even asked to address

whether Mr. Zell could breach fiduciary duties when he abstained from taking any action. Professor Black concluded that because Mr. Zell abstained from the Tribune Board's decision to proceed with Step Two and there was no evidence that he influenced the decision to do so, that any breach of fiduciary duty claims do not have significant merit. (3/10/11 Tr. 51-52.)

- The conclusory allegation that EGI-TRB was Mr. Zell's "alter-ego." This claim is bereft of *any* of the factual allegations that are necessary to pierce a corporate entity. No party considered this newly-minted theory sufficiently credible to ask the Examiner to consider it, and the Examiner nowhere identified it as a plausible basis for liability. It is well beyond the pale.

For reasons more fully set forth in Mr. Zell's Rule 9011 motion (Dkt. 8478 at Ex.1), this Court should not approve a Plan that contemplates the pursuit of these patently frivolous claims.

Alternatively, if this Court allows the claims against Mr. Zell to be assigned to a Litigation Trust, the Court should:

(1) Make clear in its confirmation order that, by doing so, it has not determined that the claims against Mr. Zell or EGI-TRB have merit or that it is in the best interest of the creditors to pursue such claims. The Court should further condition the Litigation Trust's right to pursue claims against Mr. Zell and EGI-TRB (or alternatively claims that the Examiner found unlikely to succeed) upon the Litigation Trust making a *prima facie* showing that the claims are reasonably likely to succeed.

(2) Refuse to allow Aurelius and other holders of PHONES securities to sit on the proposed Trust advisory boards or have their hand-picked representatives serve as Litigation Trustee at least with respect to making decisions about the claims against EGI-TRB and Mr. Zell. Aurelius and other holders of PHONES securities are conflicted because they have reasons to pursue claims against Mr. Zell and EGI-TRB to subordinate the EGI-TRB notes that may not be in the best interests of other creditors.

(3) Require the proponents of the confirmed plan to fully indemnify current Tribune directors and to withdraw those provisions of the proposed plan that purport to limit the assumption of indemnification obligations to only non-LBO related claims. As set forth in Mr. Zell's prior objection, both plans inappropriately pick-and-choose which indemnification obligations the Debtors will honor by proposing to eliminate indemnification rights solely with respect to the 2007 LBO. Section 6.1.1 of Aurelius' Plan implicitly recognizes that the Tribune certificate of incorporation is an executory contract, categorizing the Debtors' "prepetition obligation to indemnify any target of any Litigation Trust Causes of Action" as an executory contract that must be assumed or rejected pursuant to section 365 of the Bankruptcy Code. *See also In re Panolam Holdings*, 2009 WL 7226968, at *20 (Bankr. D. Del. Dec. 10, 2009); *In re NII Holdings, Inc.*, 288 B.R. 356, 376 (Bankr. D. Del. 2002); *In re Crabtree & Evelyn, Ltd.*, 2010 WL 3638369, at *14 (Bankr. S.D.N.Y. Jan. 14. 2010); *In re Celotex Corp.*, 204 B.R. 586, 629-630 (Bankr. M.D. Fla. 1996) (all confirming plans in which debtors assumed their

obligations to indemnify their officers and directors under their certificates of incorporation and treating these obligations as executory contracts).

The Debtors rely on *In re Dana Corp.*, 2007 WL 4589331 (Bankr. S.D.N.Y. Dec. 26, 2007), to argue that they can assume some indemnification obligations while rejecting others. *Dana Corp.* is inapplicable, however, because there the debtor discontinued its indemnification obligations solely as to *former* officers and directors, *id.* at *25, and because the decision runs afoul of the Third Circuit's clear rule that an executory contract must be assumed or rejected in its entirety. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 41 (3d Cir. 1989). The Debtors' reliance on *In re THC Fin. Corp.*, 446 F. Supp. 1329 (D. Haw. 1977) and *In re Baldwin-United Corp.*, 43 B.R. 443 (D. Ohio 1984), is equally misplaced. *THC* – decided under the Bankruptcy Act of 1898 – held that indemnification agreements were not executory contracts because the directors and officers did not serve the debtor postpetition. 446 F. Supp. at 1331. Mr. Zell, of course, continues to serve as Tribune's Chairman. Moreover, the *THC* court expressly left open whether the directors were entitled to a priority administrative claim on the ground that their service had benefitted the estate. *Id.* at 1332. Similarly, the *Baldwin* court held that officers and directors could be entitled to administrative claims for indemnification if their postpetition efforts benefitted the estate.

(4) If this Court determines that the Debtors' certificate of incorporation is not an executory contract, the Court should defer a determination as to whether Mr. Zell is entitled to administrative priority for his indemnification claims until he has had an opportunity to present evidence as to the benefit his post-petition services have afforded the Debtors' estates. Similarly, Section 11.6.1 of the DCL Plan should be clarified to state, at a minimum, that the Debtors' officers and directors are entitled to general unsecured claims for the costs they incurred in defending claims related to the 2007 LBO.

(5) Condition approval of any plan on it making clear that no exculpation or release shall be provided to any person or professional who violates Rule 11 or other similar rules against frivolous litigation. Based on the Examiner's Report and Professor Black's testimony, serious Rule 11 issues are present here. The plan proponents should not be allowed to escape this liability through exculpation and other provisions.

For the reasons set forth herein, in his and EGI-TRB's Objections to Confirmation of both Plans (Dkt. 7983, 7988) and as stated during oral argument held on April 13, 2011, Mr. Zell requests that the Court deny confirmation of both of the pending plans, or alternatively, condition confirmation of the plans on the Plan Proponents making the modifications set forth in Mr. Zell's Objections and herein.

Sincerely,

David J. Bradford,
Counsel to Sam Zell

DJB:fms