# JENNER&BLOCK

May 11, 2011

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel 312 222-9350
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

The Honorable Kevin J. Carey
United States Bankruptcy Court
  District of Delaware
824 North Market Street
Wilmington, Delaware 19801

Catherine Steege
Tel  312 923-2952
Fax  312 840-7352
csteege@jenner.com

Re: In re Tribune Company, et al., 08-13141(KJC)

Dear Chief Judge Carey:

EGI-TRB LLC ("EGI-TRB") joins in the arguments that Samuel Zell advanced in his letter brief. EGI-TRB also makes two additional points.

*First*, EGI-TRB objected to both plans because the plans do not acknowledge the EGI-TRB notes' seniority over the PHONES notes. In their chart of unresolved plan objections, the DCL Plan Proponents state that their plan does not attempt to decide this priority issue. (Dkt. 8607 at 13.) At the April 13, 2011 oral argument, Aurelius and Wilmington Trust also argued that the priority issue should be deferred. (4/13/11 Tr. 96, 98.) EGI-TRB responded that this would be an acceptable result so long as the confirmation order contained language stating that the confirmed plan does not determine the relative priorities between the EGI-TRB notes and the PHONES notes and that no funds will be distributed to the holders of the PHONES until the Court resolves that issue. (4/13/11 Tr. 75-76.) Inexplicably, the DCL Plan Proponents resisted EGI-TRB's request for clarifying language, asserting that paragraphs 1.1.42 and 1.1.43 of the DCL Plan make it clear that the issue will be decided at a later date. (4/13/11 Tr. 82-84.) But those definitions do not clearly state that the relative priority between the EGI-TRB notes and the PHONES notes is an open issue to be decided post-confirmation. Instead, those definitions focus on when senior creditors are entitled to the EGI-TRB distributions – not on protecting EGI-TRB's right to have its seniority over the PHONES decided on the merits. Accordingly, EGI-TRB requests that if the Court confirms one of the pending plans, that the confirmation order clarify that the confirmed plan does not determine the relative priorities between the EGI-TRB notes and the PHONES notes and that no funds will be distributed to the holders of the PHONES notes until the Court resolves the issue whether the PHONES notes are subordinated to the EGI-TRB notes.

*Second*, the Court should not confirm either plan because both plans improperly seek to evade Section 546(e) of the Bankruptcy Code. A plan of reorganization "must comply with the applicable provisions of [the Bankruptcy Code]" and a bankruptcy court has the broad authority to prevent a debtor from carving loopholes in the Bankruptcy Code. *See* 11 U.S.C. §1129(a)(1); *In re Taylor*, 81 F.3d 20, 25 (3d Cir. 1996) (holding that bankruptcy courts have equitable authority to ensure that a debtor does not frustrate Congressional intent by manipulating the Bankruptcy Code); *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 258 (4th Cir. 2007) ("Congress has provided bankruptcy courts with several tools to remedy any 'loophole' [a party may attempt to exploit]"); *In re Weatherford*, 413 B.R. 273, 288 n.13 (Bankr. D.S.C. 2009)

Honorable Kevin J. Carey
May 11, 2011
Page 2

(bankruptcy courts are authorized to "take any action necessary to prevent abuse of process that would undermine the integrity of the bankruptcy system.") (citations omitted). Here, Aurelius and the DCL Plan Proponents seek to create an artifice to avoid the application of the Section 546(e) safe-harbor defense to the LBO litigation. Under this contrivance, the estate will abandon its right to bring state law constructive fraudulent transfer claims to recover payments made to the Step 1 and 2 selling shareholders. (*See* Debtors' Plan, §§ 14 & 5.13; Aurelius Plan, §§ 5.18, 1.1.1 & 1.1.53.) By default, creditors who do not affirmatively elect to pursue such claims on their own behalf will be deemed to automatically assign such claims back to a creditor trust. (*See* Plan Ballots for Debtors and Aurelius.) As the DCL Plan Proponents admit, the sole purpose of this scheme is to avoid the safe harbor defense provided in Section 546(e). (Debtors' Specific Disclosure Statement at 20 n.37, 26 at n.48.)

Both Aurelius and the DCL Plan Proponents attempt to justify this scheme with a few non-controlling lower court decisions that hold that if a trustee does not commence an avoidance action within Section 546(a)'s two-year limitations period, then creditors may bring the fraudulent transfer claims that the trustee chose not to pursue. (Dkt. 8201 at 15 (citing *In re Integrated Agri, Inc.*, 313 B.R. 419 (Bankr. C.D. Ill. 2004) and *Klingman v. Levinson*, 158 B.R. 109 (N.D. Ill. 1993)).) In those cases, however, the trustee elected not to pursue recovery of the transfers at all. None of those cases involved the circumstances present here: the Committee has sued to avoid the transfers made to Step 1 and Step 2 selling shareholders as actual fraudulent transfers and, if one of the plans is confirmed, a creditor trust will then sue to recover the exact same transfers as constructive fraudulent transfers. The plan proponents justify this duplicative litigation by arguing that the actual and constructive fraudulent transfer claims are different because the legal theories of recovery are different. Thus, they assert that because the estate did not bring constructive fraudulent transfer claims, the constructive fraudulent transfer claims must be available for assignment to the creditor trust. They are wrong. That argument depends entirely on the unsupportable argument that a claim to avoid a specific transfer as an actual fraudulent transfer is different from a claim to avoid the exact same transfer as a constructive fraudulent transfer. But in fact, those two actions are the same because federal courts employ the transactional approach to determining whether two lawsuits are based on the same cause of action. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 192 (3d Cir. 1999). Indeed, the Third Circuit takes "a broad view . . . looking to whether there is an essential similarity of the underlying events giving rise to the various legal claims." *Id.* at 194. Two claims are part of the same cause of action where there is a "common nucleus of operative facts," *id.*, and it is not dispositive whether the plaintiff "asserts a different theory of recovery or seeks different relief in the two actions." *United States v. Athlone, Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984).

The actual and constructive fraudulent transfer claims are clearly based on the same nucleus of operative facts – they seek to avoid the same transfers and to recover the same amounts from the same defendants. In other words, rather than being separate *causes of action* that could be prosecuted by different plaintiffs at different times, they are merely different *theories of liability*. It is black-letter law that plaintiffs cannot create new claims simply by slapping a new name on the suit. *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 964 (3d Cir. 1991) ("[M]ultiple claims do not arise merely because the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts."). Indeed, if the Committee asserted claims to avoid and recover the transfers as actually fraudulent, *res judicata* would bar the

Committee (or its assignees) from subsequently seeking to recover the transfers as constructively fraudulent. *See, e.g., In re Downs*, 205 B.R. 93, 95 (Bankr. N.D. Ohio 1996) (prior judgment in suit seeking to avoid a deed transfer as fraudulent barred subsequent objection to debtor's claimed homestead exemption); *In re Surrette Storage Battery Co., Inc.*, 109 B.R. 544, 547 (Bankr. D.N.H. 1989) (*res judicata* barred successor trustee from asserting avoidance actions related to the same "series of connected transactions" as claims brought by original trustee). The plan proponents cannot circumvent that basic rule of law by seeking to vest certain theories of liability in the Committee and abandoning others to the creditors under the fiction that there are two separate causes of action. Because both theories of liability are based on the same facts and seek the same recovery from the same defendants, there is no legal basis for allowing creditors to pursue constructive fraudulent transfer claims either on their own or through the creditor trust and the Court should refuse to confirm the plans so long as they contain a creditor trust.

In response, the plan proponents are likely to argue that (1) the Court should defer deciding the issue, and (2) the Court should approve the dual-track litigation because the plan proponents have all agreed to it. The Court should reject both of those arguments. The plan proponents' "creditor trust" scheme is an impermissible end-run around the protections of the Bankruptcy Code. Moreover, if the Court authorizes the creation of a creditor trust, the plan proponents may attempt to argue that it validates their entire scheme and that any argument to the contrary is an improper collateral attack on a confirmed plan of reorganization. Another court will likely have difficulty parsing through the issue without further clarifying guidance from this Court. Thus, if the Court elects to defer this issue, it should make clear that the confirmation order is not entitled to any *res judicata* effect whatsoever with respect to whether the creditor trust has any standing or ability to bring the constructive fraudulent transfer claims or whether Section 546(e) applies.

As to the second point, the scheme to strip defendants of their safe-harbor defenses and force them to defend the same claim twice is not made any more palatable by the fact that Aurelius and the DCL Plan Proponents have both agreed to the scheme. The plan proponents cite *Baron Financial Corp. v. Natanzon*, 509 F. Supp. 2d 501 (D. Md. 2007) for the supposed proposition that a trustee and creditor can agree to divide up the estate's claims, and that such an agreement itself is sufficient to confer standing on the creditor. *Baron*, however, does not stand for that. In *Baron*, a creditor, Baron brought breach of contract and tort claims against the defendant, Natanzon. Natanzon argued that Baron lacked standing to assert the claims because they belonged to the debtor's chapter 11 estate and that only the chapter 11 trustee had standing to assert them. The district court rejected Natanzon's argument because the claims were Baron's individual claims, *not* the estate's claims:

> The defendants do not seriously argue that the contract claims are part of the bankruptcy estate. Where a cause of action belongs to an injured creditor, it is that creditor who has standing to bring suit and not the bankruptcy trustee, who may sue only if the debtor corporation itself could have done so.

509 F. Supp. 2d at 521 n.34. The district court emphasized that even though Baron sought damages in an amount similar to those sought by the trustee, Baron held distinct claims because Baron "is not trying to recover assets diverted from [the debtor]." *Id.* at 520. Thus, unlike the instant situation where both the Committee and the creditor trust will be seeking to recover for

Honorable Kevin J. Carey
May 11, 2011
Page 4

the same harm that the Debtors allegedly suffered, in *Baron*, the creditor-plaintiff sought to recover for harm suffered solely by that the creditor. Indeed, the *Baron* court stressed that the trustee did not need to abandon the claims to the creditor, because the claims *never* belonged to the estate. *Id.* at 522 n.36. *Baron* is therefore inapposite.

The plan proponents ignore *Baron*'s facts and instead focus on the agreement that Baron reached with the chapter 11 trustee whereby the trustee refrained from interfering with Baron's lawsuits in return for the estate receiving a portion of Baron's recovery. But the trustee's agreement to not interfere with Baron's claims does not mean that those claims belonged to the trustee – a point the above-quoted passage make abundantly clear. Rather, the trustee only forwent his ability to seek a Section 105(a) injunction that could have stayed Baron's lawsuits pending the outcome of the trustee's own claims. *See, e.g., Fisher v. Apostolou (In re Lake States Commodities, Inc.)*, 155 F.3d 876, 882 (7th Cir. 1998). In fact, under the agreement between Baron and the trustee, the trustee retained the right to seek dismissal of Baron's claims if they were property of the estate, but the trustee did not seek dismissal because the claims were not property of the estate. *Baron*, 509 F. Supp. 2d at 520-21. Accordingly, *Baron* is simply irrelevant to the question whether the Debtors may split a single cause of action into separate claims to be prosecuted by separate plaintiffs and, for the reasons discussed above, the Debtors may not such split a cause of action in that manner.

*       *       *

For the reasons set forth herein, in Mr. Zell's letter brief, in EGI-TRB's and Mr. Zell's Objections to Confirmation of both Plans (Dkt. 7983, 7988), and as stated during oral argument held on April 13, 2011, EGI-TRB requests that the Court deny confirmation of both of the pending plans, or alternatively, condition confirmation of the plans on the Plan Proponents making the modifications set forth in Mr. Zell's and EGI-TRB's Objections and in Mr. Zell's letter brief and herein.

Sincerely,

*Catherine Steege*

Catherine Steege,
Counsel to EGI-TRB LLC

CS:fms