

**GRIPPO &ELDEN**

GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
FAX:     (312) 558-1195
             (312) 263-7356

To Call Writer Direct
(312) 704-7735
gdougherty@grippoelden.com

May 11, 2011

**By ECF Filing and Federal Express**

The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge
824 North Market Street # 500
Wilmington, Delaware 19801

    Re:    *In re Tribune Company, et al.*
            Case No. 08-13141 (Bankr. D. Del.) (KJC)

Dear Chief Judge Carey:

    Certain Directors and Officers[1] submit this letter supplementing their (1) Objections to the Creditors' Trusts in DCL and Noteholder Plans; and (2) Objections to the DCL Plan's proposed Bar Order. Order dated May 3, 2011 [D.I. 8817].

**Objections to the Creditors' Trusts in the DCL and Noteholder Plans**

    Two critical points are addressed here: (1) the "disclaimer" mechanism upon which Plan Proponents rely in support of a Creditors' Trust is directly contradicted by the Code, and (2) confirmation of either Plan would thwart the clear Congressional objective embodied in section 546(e).

    1.    Plan Proponents' Disclaimer Mechanism Is Contradicted By The Plain Language Of The Code.

    Sections 544 and 548 allow for the avoidance of a transfer of an "interest of the debtor in property." 11 U.S.C. §§ 544(b)(1), 548(a)(1). The "interest" at issue is the money transferred to selling Tribune shareholders. Committee (on behalf of a Litigation Trustee to be named later) contends that this interest was fraudulently conveyed. Commencement of a bankruptcy gives the Bankruptcy Trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors. Memorandum of Law filed by the DCL Plan Proponents [D.I. 8173] ("DCL Mem.") at 130-31 n.93 (citing numerous cases). This well-established rule is intended to give the Estate first crack at recovering such assets for the benefit of all creditors.

---

[1]    Capitalized terms used herein, unless otherwise defined, have the meaning reflected in Objection of Certain Current and Former Officers and Directors [D.I. 7981] ("Off. Obj.") and Second Amended DCL Plan ("DCL Plan").

1152614



**GRIPPO &ELDEN**

The Honorable Kevin J. Carey
May 11, 2011 - Page 2

Committee laid specific claim to this interest, *i.e.*, payments to selling shareholders, in the LBO Adversary Proceeding, in which it has asserted intentional fraudulent conveyance claims under sections 548(a)(1)(A) and 544, and purportedly not constructive fraudulent conveyance claims, for example, under section 548(a)(1)(B). Motion of Committee for Protective Order [D.I. 8866] at 3 (stating that a "significant part" of the LBO Adversary Proceeding seeks recovery against shareholders for stock payments). Committee's election to pursue only some possible avenues for recovery of amounts paid to selling Tribune shareholders does not vitiate the rule giving exclusivity to the Estate with respect to this "interest of the debtor in property." DCL Mem. at 131 n.95 (citing numerous cases – a creditor may only pursue conveyed assets after a bankruptcy is "closed").

Plan Proponents are wrong when they argue that Committee's decision not to assert (or, in their own invented parlance, to "disclaim") constructive fraudulent conveyance claims gives individual creditors or a "Creditors' Trust" the authority to pursue the identical interest sought by Committee.[2] *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 442 (4th Cir. 1999) (to "allow selected creditors [here, with the connivance of the Committee] to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate"). Plan Proponents' discussion of claim elements (intentional vs. constructive, *see* DCL Mem. at 134) is simply an effort to divert attention from the fact that the same "interest" would impermissibly be the target of simultaneous suits by Committee, a Creditors' Trust and individual creditors.

To obtain confirmation, Plan Proponents must establish "good faith." Each Proponent must show that its respective Plan (a) complies with the Code and (b) "achieve[s] a result consistent with [its] objectives and purposes." *Compare In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986) and 11 U.S.C. § 1129(a)(1) *with* DCL Mem. at 124 (which incorrectly states that objectors have the burden to establish "bad faith"); Objection of Robert McCormick, Tribune Foundation and Cantigny Foundation [D.I. 7972] ("Foundations Obj.") at 10-11 (citing cases). Allowing litigation in numerous jurisdictions seeking to recover the same alleged "interest" thwarts a key objective of the Code: the aggregation in one place of property available for distribution to creditors and the subsequent fair distribution of that property. *Begier v. IRS*, 496 U.S. 53, 54 (1990). Allowing individual creditors, a Creditors' Trust (allegedly not subject to jurisdiction of the Bankruptcy Court) and Committee to pursue the same "interest" will

---

[2] Courts have held that a debtor retains an equitable interest in property that has been purportedly fraudulently conveyed and that those funds constitute property of the Estate under section 541(a)(1), which states that property of the estate includes all equitable "interests of the debtor in property," the same operative language of sections 544 and 548. *In re Mortgage America Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (alleged fraudulently conveyed property now in the hands of a third party, is property of the estate); *see also In re Cannon*, 277 F.3d 838, 849 (6th Cir. 2002) (stating that the Supreme Court has interpreted §§ 541 and 548 as including in a debtor's estate "that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings"); *In re Cybergenics Corp.*, 226 F.3d 237, 246 n.16 (3d Cir. 2000) (recognizing that some courts have said that a debtor retains an equitable interest in fraudulently conveyed property but not deciding the issue). If the transferred interest is property of the Estate, the interest can only be removed from the Estate by formal abandonment proceedings, which has not occurred here, and Plan Proponents' entire construct collapses.

1152614


GRIPPO
&ELDEN

The Honorable Kevin J. Carey
May 11, 2011 - Page 3

result in unnecessary litigation costs and competing actions for the same funds, a result contrary to the purposes and objectives of the Code. *Sears Petroleum & Transport Corp. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 212, 222 (D. Mass. 2006) (creditor pursuing "same money" as trustee could not proceed with state law claims while bankruptcy was pending); *Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 314 (1st Cir. 1988) (section 544 allows the Trustee to prevent a "race to judgment"). Focusing on distinctions between "claims" to the same interest does not cure any of these problems. Proposed Plans should not be confirmed.

  2.  The Proposed Creditors' Trusts Violate Congressional Directive.

One objective of the Code is to ensure that "settlement payments" under section 546(e) are not subject to avoidance under sections 544 and 548(a)(1)(B). Congress has made a policy determination that settled security transactions (not involving intentional fraudulent transfers) should not be subject to avoidance. *Lowenschuss v. Resorts Int'l*, 181 F.3d 505, 515 (3d Cir. 1999) (interpreting section 546(e) broadly to cover any "transfer of cash . . . to complete a securities transaction"). The proposed Creditors' Trusts were constructed to avoid this Congressional directive. Foundations Obj. at 18-23.

Approval of the proposed Creditors' Trusts would expose settlement payments not involving intentional fraudulent conveyance to attack, a clear circumvention of Congressional determination and Third Circuit precedent.[3] Congress plainly did not intend that its determination would be overturned through a "Creditor's Trust" scheme such as this, a point previously recognized by one Plan Proponent. *Id.* No Plan that contains a Creditors' Trust as currently constituted should be confirmed.

**Objections to the DCL Plan's Proposed Bar Order**

Objections to the proposed Bar Order should be sustained because: (1) the proposed Bar Order contains impermissible injunctions; and (2) Plan Proponents have failed to ensure that Barred Persons will receive the protections of the judgment reduction provision. Without such protections, Plan Objectors' rights would be negated without fair and adequate consideration, which would violate existing law.

  1.  The Proposed Bar Order Contains Impermissible Injunctions.

At the April 13, 2011 hearing, DCL Plan Proponents argued that the proposed Bar Order should not be judged by the criteria set forth in *Spansion*[4] and *Continental*.[5] Hr'g Tr. 146:15-25 (April 13, 2011). Plan proponents are wrong.

---

[3]  Plan Objectors maintain their position that section 546(e) is a defense to any Creditors' Trust or individual creditor action.

[4]  Only where (i) a non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is "fair" to non-consenting creditors (judged by whether
1152614



GRIPPO
&ELDEN

The Honorable Kevin J. Carey
May 11, 2011 - Page 4

*Spansion* provides that third party rights cannot be enjoined or released without fair and adequate consideration. *Spansion*, 426 B.R. at 144. Plan Proponents admit that the proposed Bar Order "prevents non-settling defendants . . . from bringing contribution and indemnity claims against released parties for barred claims." Hr'g Tr. 147:17-20. As both the Non-Settling Defendants and the Released Parties[6] are non-debtors, the *Spansion* criteria apply. Because DCL Plan Proponents have not met the *Spansion* burden, their proposed Plan may not be confirmed. *Spansion*, 426 B.R. at 144.

  2. Plan Proponents Have Failed To Ensure That Barred Persons Receive The Protections Of The Judgment Reduction Provision.

The proposed Bar Order also fails under *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) (a proposed Bar Order must be fair and equitable). Off. Obj. at 7-12. Despite numerous revisions, DCL Plan Proponents have still not cured the fundamental problem with the proposed Bar Order: if a Litigation Court does not apply the judgment reduction provision (which is the *only* consideration being proposed), the Barred Person would continue to have no rights of contribution or non-contractual indemnity. This is unacceptable. The burden of non-compliance must fall on the suing Plaintiff, *not* the Barred Person.

Under the latest revisions of the Bar Order, the Litigation Court is to "determine whether the Action gives rise to Barred Claims on which Released Parties would have been liable to the Barred Persons in the absence of this Bar Order." DCL Plan § 11.3. If the Litigation Court does determine that the Released Parties would have been liable to the Barred Person in the absence of this Bar Order, it is then supposed to reduce the amount of any judgment against the Barred Person according to a proportionate fault formula. *Id.*

Multiple problems exist with this process. Off. Obj. at 7-12. First, the Bankruptcy Court lacks jurisdiction to require the Litigation Court to follow these procedures, making them wholly discretionary. *See, e.g., Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 177 n.5 (3d Cir. 1982) (while bankruptcy courts can enjoin proceedings in other courts by enjoining the litigants, bankruptcy courts lack jurisdiction to directly enjoin state courts or other federal courts). Second, it is unrealistic to expect busy state courts to adjudicate hypothetical contribution claims involving non-parties to the litigation before them. Third, the Plaintiff suffers no negative consequences if the Litigation Court declines to apply these procedures, leaving a Plaintiff without any real incentive to seek their application.

---

non-consenting creditors received reasonable compensation in exchange for the release) should such a bar order be allowed. *In re Spansion*, 426 B.R. 114, 144 (Bankr. D. Del. 2010). Bar Order's deficiencies with respect to these points are addressed at Off. Obj. at 4-5.

[5] *Gillman v. Continental Airlines*, 203 F.3d 203 (3d Cir. 2000).

[6] These defined terms include Lenders and Certain Officers and Directors. Plan Objectors reiterate their objections highlighting the ambiguity of these and other terms. Off. Obj. at 12-13.

1152614



**GRIPPO &ELDEN**

The Honorable Kevin J. Carey
May 11, 2011 - Page 5

At each critical point, the risk of non-compliance falls on the Barred Person. If the specified procedures are not followed for any reason, a Plaintiff may blithely continue with its claim to final judgment. The Barred Person, however, would be unable to assert his contribution or indemnity claims without being subject to contempt proceedings and other sanctions built into the Bar Order. Under such a scenario, a Plaintiff may well enjoy a double recovery, keeping 100% of the original settlement *and* collecting in full from the Barred Party without a proportionate fault set-off. Off. Obj. at 10.

DCL Plan Proponents have acknowledged these risks and admitted that this Court may not have jurisdiction to enforce the judgment reduction provision. Hr'g Tr. at 150:9-16. At this same hearing, Plan Objectors identified ways in which these risks could be addressed by revisions to the proposed Bar Order. *Id.* at 123:20-124:20. DCL Plan Proponents included none of these changes in their latest proposed Bar Order.

Plan Objectors are entitled to receive fair consideration (*Spansion*) before their valuable contribution and indemnity rights are enjoined. That standard is not met if the given consideration (*i.e.*, judgment reduction) is not certain to be applied. Nor is it fair and equitable (*Eichenholtz*) to take away Plan Objectors' claims without this protection. Put another way, DCL Plan Proponents have the burden of proving that Plan Objectors will receive what is promised in exchange for the sought injunction. That Plan Objectors "may" obtain what is intended is not sufficient especially when procedures exist which can provide the certainty to which Plan Objectors are entitled. DCL Plan Proponents' refusal to provide those protections renders their proposed DCL Plan unconfirmable.

We thank the Court for this opportunity to further explain and supplement our positions.

Very Truly Yours,

George R. Dougherty
Counsel for Certain Directors and Officers

GRD/db
cc:   *See* attached Service List

1152614