May 11, 2011

The Honorable Kevin J. Carey
United States Bankruptcy Court
 District of Delaware
824 North Market Street
Wilmington, Delaware  19801

      Re:    In re Tribune Company, et al., 08-13141 (KJC)

Dear Chief Judge Carey:

Hilda L. Solis, Secretary (the "Secretary") of the United States Department of Labor (the "DOL") submits this supplementary brief in furtherance of her objection (the "DOL Objection") to the confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management. L.P., Angelo Gordon & Co.., L.P. and JPMorgan Chase Bank, N.A. (collectively, the "D/C/L Proponents"), as amended (the "D/C/L/Plan), and in response to their Omnibus Reply to Objections to the D/C/L/ Plan  (Dkt. No. 8315) (the "D/C/L Brief").[1]  A copy of the DOL Objection is annexed hereto as Exhibit A.[2]

As described more fully in the DOL Objection, the Secretary has filed unliquidated proofs of claim against Tribune and its Subsidiary Debtors in connection with her investigation of the management of the Tribune ESOP by its fiduciaries, who are charged under ERISA with strict duties of care and loyalty and who are made personally liable for any losses stemming from their failure to act in accordance with these duties.  In so doing, the Secretary seeks to vindicate the interests of Tribune's workers as plan participants under ERISA, not as wronged Tribune shareholders

A. <u>Because the ESOP Participants Have Not Voluntarily Assumed the Risks of Insolvency and Illegal Issuance In the Same Way as Equity Investors, the Secretary's ERISA Claims on Their Behalf Should Not Be Subordinated</u>

The D/C/L Proponents seek to obscure the difference between claims under ERISA and claims subject to section 510(b) by wrongly describing the Third Circuit's test for subordination under section 510(b).  The D/C/L Brief states:  "Under the Third Circuit's analysis, a claim falls under the purview of section 510(b) if it 'would not have arisen but for the purchase of [the debtor's] stock.' Telegroup, 281 F.3d at 135-136, 143." D/C/L Brief at 148-149.  This quote, however, is taken from the Telegroup Court's description of the debtor's argument, not from the actual test articulated by the Third Circuit in the opinion.   Telegroup, 281 F.3d at 136.  Instead the Third Circuit in Telegroup recognized, as do most courts, that the text of section 510 – particularly the phrase "arising from" – is ambiguous.  In re Telegroup,Inc., 281 F.3d 133,138 (3d Cir. 2002)

---

[1] As described at the May 13, 2011 hearing, an agreement has been reached to address the Secretary's objections to the proposed subordination of the DOL Claims under the Noteholder Plan subsequent to confirmation.

[2] Capitalized terms have the meaning set forth in the DOL Objection, unless otherwise defined herein.

(recognizing that "[f]or a claim to 'aris[e] from the purchase or sale of … a security' there must obviously be some nexus or causal relationship between the claim and the sale of the security," also noted that section "510(b)'s language alone provides little guidance in delineating the precise scope of the required nexus." Id. at 138.

Given this textual ambiguity, the Telegroup court and others have relied on the legislative history, which in turn relied on the Slain & Kripke rationale for subordinating shareholder claims.[3] See, e.g., Telegroup, 281 F.3d at 138-41; In re Granite Partners, L.P., 208 B.R. 332, 336-37 (Bankr. S.D.N.Y. 1997). Under this rationale, section 510(b) seeks to bar shareholders, who are presumed to have voluntarily assumed both the risk of insolvency and the risk of illegal issuance, from unfairly elevating their securities claims to the level of creditors when a corporation becomes insolvent. While section 510(b) has been interpreted to extend beyond securities fraud claims, its scope nevertheless has been limited to circumstances involving the decisions of a claimant as investor. In contrast, ERISA governs the relationship between employees and fiduciaries in matters involving employee benefit plans, and an ERISA claim seeking to recover investment losses arises not from a plan participant's status as investor, but from the imprudent or disloyal investment decisions made by plan fiduciaries. Thus, section 510(b) takes aim at a different set of legal relations than those governed by ERISA and the fact that claims brought by employees or the Secretary against their ERISA fiduciaries may involve equity holdings does not transform the nature of their claims to those of ordinary shareholders.

The D/C/L Proponents rely on this Court's decision in Touch America, which subordinated ERISA indemnification claims stemming from fiduciary breaches with regard to stock investments by a 401(k) plan. D/C/L Brief at 152. As we explained in the DOL Objection at page 23, Touch America is distinguishable on the facts because in that case, there was no allegation, as here, that the stock purchases by the plan were intended to benefit both the debtor and the creditor, as appears to be the case here. Moreover, for the reasons set forth in this letter as well as the DOL Objection, we believe that Touch America was wrongly decided.[4]

The Secretary does not seek to insulate the claims of ERISA participants from the scope of section 510(b) in situations in which the participants have made the wrong decision. She seeks

---

[3] Although as observed by the Court at the May 13 hearing, contrary statements in a statute's legislative history frequently are used to support competing interpretations of a statute, no such dispute exists with respect to the legislative history of section 510(b).

[4] The Secretary also disagrees with the other two ERISA subordination decision cited in the D/C/L Brief, Brown v. Owens Corning Inv. Review Comm., 541 F. Supp. 2d 958 (N.D. Ohio 2008), and In re Lenco, Inc., 116 B.R. 141 (Bankr.E.D. Mo. 1990), because neither provides any meaningful analysis of how ERISA and section 510(b) should interact. The substantive discussion of that question in Lenco is limited to the following sentence: "Given that this claim is related to the purchase and sale of a security, this Court holds that the mandatory nature of section 510(b) dictates that the DOL's claim must be subordinated." Id. at 144. After taking note of the arguments in other opinions, including Touch America, the court in Owens Corning recognized that subordination was likely, but not inevitable, and rejected the argument that section 510(b) would have doomed the filing of an ERISA claim. Owens Corning, 541 F. Supp. 2d at 969-971. In the Enron bankruptcy, the debtors agreed to compromise an equivalent section 510(b) dispute by the allowance of a $305 million general, unsecured claim. See In re Enron Corp. Chapter 11 Case, No 01-16034, Docket Entries. 26572 and 27321 (Bankr. S.D.N.Y. 2005).

2

only to insure that section 510(b) is not interpreted to encompass claims arising from the imprudent or disloyal decisions of fiduciaries. ERISA was designed to minimize the risk to retirement savings by interposing fiduciaries subject to strict duties of prudence and loyalty between plan participants and the market. Section 510(b) was not intended to override this unique set of protections.

B. <u>Subordination of the Secretary's ERISA Claims is Inconsistent With the Intent to Protect the Claims of Employees Expressed in Many Provisions of the Bankruptcy Code</u>

Subordination of the Secretary's claims also would be inconsistent with the repeated decisions by Congress to provide special protection to the claims of employees and retirees under the Bankruptcy Code. "Statutory construction … is a holistic endeavor." <u>United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.</u>, 484 U.S. 365, 371 (1988). "[T]his is especially true of the Bankruptcy Code." <u>Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery</u>, 330 F.3d 548, 559 (3d Cir. 2003). The language of a statute must be interpreted to ensure that "the statutory scheme is coherent and consistent." <u>Dobrek v. Phelan</u>, 419 F.3d 259, 263 (3d Cir. 2005).

Section 507(a)(4) of the Bankruptcy Code provides a special priority for wages. Section 507(a)(5) provides a special priority for contributions to employee benefit plans. Section 523(a)(4) makes claims against an individual debtor "for …defalcation while acting in a fiduciary capacity" nondischargeable. 11 U.S.C. § 523(a)(4). Section 541(b)(7) excludes contributions to employee benefit plans from property of the bankruptcy estate. Section 1113 imposes a special process upon chapter 11 debtors before they can reject a collective bargaining agreement. Only last year in <u>In re Visteon Corp</u>, 612 F.3d 210 (3d Cir. 2010), the Third Circuit rejected an attempt by the lower courts to limit the special protections afforded to retiree benefits under section 1114. Such heightened protection for the claims of workers and retirees cannot be reconciled with an interpretation of section 510(b) that would impose a mandatory subordination of the claims of an ESOP for breach of fiduciary duty.

In its <u>en banc</u> decision in <u>Cybergenics</u>, the Third Circuit reversed a lower court decision and vacated a panel decision which interpreted section 554(b) of the Bankruptcy Code to bar a creditors' committee from bringing a fraudulent conveyance action. The Third Circuit ruled that such a reading of section 544(b) could not be reconciled with the Bankruptcy Code's other provisions involving the rights of creditors and a creditors' committee. <u>Cybergenics</u>, 330 F.3d at 559-567. As described above, by attempting to read section 510(b) in isolation from the rest of the statute, the D/C/L Proponents' overly broad interpretation of section 510(b) suffers from the same defect.

In <u>Cybergenics</u>, the Third Circuit also was concerned that denying standing to a creditors' committee would remove "a potent deterrent to overreaching by creditors and insiders." <u>Id</u>. at 574. These same concerns arise in the instant case, combined with the added factor that an important deterrent to debtor overreaching also would be eliminated.
In the context of ESOP financing, there always is a danger, as occurred here, that an employer will allow its interest in corporate finance to override its obligations as an ERISA fiduciary. <u>See</u>, <u>e.g.</u>, <u>Reich v. Valley Nat'l Bank</u>, 837 F. Supp. 1259, 1264 (S.D.N.Y. 1993) ("The motivating

factor behind the creation of the ESOP was the fact that its creation would significantly lower the costs" for the sponsoring employer).

If the claims of an ESOP are subject to mandatory subordination simply because the losses in some manner are linked to the value of an ESOP's equity interest, then rather than protecting the legitimate expectations of creditors, section 510(b) would wrongly be used to create a safe harbor for debtors that knowingly abuse their power over their workers' retirement plans to further their own interests. Section 510(b) was not intended to grant chapter 11 debtors that kind of immunity under ERISA,

Subordination of a claim is a drastic remedy. If it is not explicitly consensual, as under section 510(a), or implicitly consensual, as under section 510(b), where it is presumed that shareholders assume the risk of insolvency, a creditor's conduct must be egregious before its claim will be subordinated. E.g., In re Winstar Communications, Inc., 554 F.3d 382, 412 (3d Cir. 2009). Even in egregious situations, the extent of the subordination will be limited to the extent of the harm. Id. at 413. The subordination of the DOL Claims simply does not fit within this framework

In its analysis of the Bankruptcy Code in Kelly v. Robinson, 479 U.S. 36 (1986), the Supreme Court stated that " 'we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" Id. at 43 (quoting Official Logistics, Inc. v. Tallentire, 477 U.S. 207, 222 (1986)). The subordination of the ERISA claims of an ESOP cannot be reconciled as a textual matter with the Bankruptcy Code's specific provisions for subordination or with the heightened protection the Bankruptcy Code and ERISA provide for the claims of workers.

C. The Proposal Ignores Additional Requirements of the Bankruptcy Code

The D/C/L Proponents also have failed to provide any credible basis for their attempt to subordinate the DOL Claims against the Tribune's Subsidiaries, while leaving the equity interests in those subsidiaries unimpaired. Section 510(b) provides that a subordinated claim of an equity holder shall have "the same priority as common stock." 11 U.S.C. § 510(b). As described in the DOL Objection at 34-36, administrative convenience may not be used to override this explicit dictate of Congress.

The case cited by the D/C/L Proponents to support such treatment, In re Ion Media Networks, Inc., 419 B.R. 585 (Bankr. S.D.N.Y. 2009), lacks any persuasive power and the rationales it provides are inapplicable to these cases. Aside from the fact that the objection in Ion Media was brought by a party that lacked standing, Ion Media relied upon the gifting doctrine, which may no longer be viable, and stressed the fact that the unimpaired equity interests had no value. Id. at 601.[5] In contrast, in the instant cases, the gifting doctrine is inapplicable because the Senior Lenders are being compensated under the D/C/L Plan by the receipt of a release, and because payments are being made to unsecured creditors to compensate for such unimpairment in the case of equity interests in Tribune Subsidiaries that did not guarantee the LBO debt.

---

[5] In addition, as reflected in the recent decision by the Second Circuit in In re DBSD North America, Inc., 634 F.3d 79, 93-101 (2d Cir. 2011), "gifting" may no longer be a viable doctrine.

The further revised D/C/L Plan, which was filed on April 26 (Dkt. No. 8769), responds to the Court's ruling that subordinated claims may not simply be extinguished by granting "Allowed Securities Litigation Claims … a Pro Rata share of Class 1L Litigation Trust Interests." D/C/L Plan at § 3.2.11.  It appears from the new language in § 3.3.7 of the D/C/L Plan that the distributions on claims against the parent company also shall be used to satisfy the Securities Litigation Claims against the Tribune Subsidiaries, an unsupportable arrangement, where there has been no substantive consolidation of the Debtors.  See D/C/L Plan at §§ 3.3.7, 3.4.5.  Nor is it explained how such distributions satisfy section 510(b)'s requirement that the subordinated claims have the same priority as the Reinstated Equity Interests in the Debtor Subsidiaries.  Finally, notwithstanding the fact that Securities Litigation Claims are ostensibly being granted some distribution, these classes still are deemed to reject the plan and thereby are denied a vote.  As the Court is aware, a deemed denial is limited by section 1126(g) of the Bankruptcy Code to those claimants who are not entitled "to receive or retain any property under the plan."  11 U.S.C. § 1126(g).

This tendency of the D/C/L Proponents to selectively ignore the dictates of the Bankruptcy Code is nothing new. The definition of "Securities Litigation Claim" in the April 26 D/C/L Plan continues to require that a "Final Order" denying subordination of an ERISA claim be entered before section 510(b) is not applicable to the claim.  Moreover, the Plan defines "Securities Litigation Claim" to subordinate a claim in situations where section 510(b) doesn't even apply.  See DOL Objection at 33-34.

For the foregoing reasons and those previously set forth in the DOL Objection, the Secretary respectfully requests that confirmation of the D/C/L Plan be denied.

                                          Respectfully submitted,

                                          __/s/_ Michael Schloss_____
                                          Michael Schloss
                                          Counsel for Financial Litigation
                                          Leonard H. Gerson
                                          Elizabeth S. Goldberg
                                          Trial Attorneys
                                          U.S. Department of Labor
                                          Office of the Solicitor
                                          Plan Benefits Security Division
                                          P.O. Box 1914
                                          Washington, D.C. 20013
                                          (202) 693-5603
                                          schloss.michael@dol.gov