# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
In re:                                 :    Chapter 11 Cases
                                       :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,               :    (Jointly Administered)
                                       :
        Debtors.                       :
                                       :
                                       :
-----------------------------------------------------X
```

## POST-CONFIRMATION HEARING BRIEF OF WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES

**SULLIVAN HAZELTINE ALLINSON LLC**

William D. Sullivan, Esq. (Del. Bar No. 2820)
Elihu E. Allinson, Esq. (Del. Bar No. 3476)
901 Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: zallinson@sha-llc.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT........................................................................................................................2

I.      **The D/C/L Plan Improperly Subordinates the PHONES Claims** ..........................2

        A.      The PHONES Are Not Subordinated to Certain "Other Parent Claims" ............3

        B.      The PHONES Are Not Subordinated With
                 Respect to Claims that Belong to the PHONES ..................................................7

        C.      The PHONES Are Not Subordinated to the
                 LBO Lenders Due to the LBO Lenders' Lack of Good Faith ............................10

II.     **The PHONES Complaint May Not, As A
       Matter of Law, Be Made Moot By the D/C/L Plan**....................................................16

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

Baker v. America's Mortg. Servicing, Inc.,
    58 F.3d 321 (7th Cir. 1995) .................................................................................. 10

Butner v. U.S.,
    440 U.S. 48 (1979)................................................................................................... 6

Granfinanciera, S.A. v. Nordberg,
    109 S. Ct. 2782 (1989)............................................................................................. 8

In re Armstrong World Indus.,
    348 B.R. 111 (D. Del. 2006)................................................................................... 11

In re Bank of New England Corp.,
    2008 WL 8052903 (Bankr. D. Mass. Mar. 28, 2008) ............................................. 9

In re Carolina Tobacco, Co.,
    360 B.R. 702 (D. Or. 2007) ................................................................................... 16

In re Cypresswood Land Partners, I,
    409 B.R. 396 (Bankr. S.D. Tex. 2009) .................................................................... 6

In re Ionosphere Clubs, Inc.,
    134 B.R. 528 (Bankr. S.D.N.Y. 1991) .................................................................... 9

In re Iridium Operating LLC,
    478 F.3d 452 (2d Cir. 2007)..................................................................................... 4

In re Levitz Furniture, Inc.,
    267 B.R. 516 (Bankr. D. Del. 2000) ...................................................................... 18

In re Lisanti Foods, Inc.,
    329 B.R. 491 (D.N.J. 2005) .................................................................................... 6

In re MCorp Fin., Inc.,
    137 B.R. 219 (Bankr. S.D. Tex. 1992) .............................................................. 17-18

In re Med. Asset Mgmt., Inc.,
    249 B.R. 659 (Bankr. W.D. Pa. 2000) .................................................................... 4

In re PWS Holding Corp.,
    228 F.3d 224 (3d Cir. 2000)................................................................................. 6, 7

In re TCI 2 Holdings, LLC,
    428 B.R. 117 (Bankr. D.N.J. 2010) ...................................................................... 11

In re Time Sales Fin. Corp.,
491 F.2d 841 (3d Cir. 1974) ................................................................................. 9

In re Vitreous Steel Prods Corp.,
911 F.2d 1223 (7th Cir. 1990) ............................................................................ 16

In re Woodbrook Assocs.,
19 F.3d 312 (7th Cir. 1994) .................................................................................. 6

Johnstowne Centre P'ship v. Chin,
99 Ill. 2d 284 (1983) .......................................................................................... 10

Official Creditors Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.),
226 F.3d 237 (3d Cir. 2000) ................................................................................. 8

Perry v. Carpenter,
396 Ill. App.3d 77 (Ill. App. Ct. 2009) .............................................................. 10

Richardson v. Huntington Nat'l Bank (In re CyberCo Holdings, Inc.),
382 B.R. 118 (Bankr. W.D. Mich. 2008) ............................................................ 8

Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n,
322 F.3d 1039 (9th Cir. 2003) ............................................................................. 6

Top Hat, Ltd. v. Aurora Foods, Inc. (In re Aurora Foods, Inc.),
2006 U.S. Dist. LEXIS 91659 (D. Del. Dec. 19, 2006) ...................................... 6

Vincent v. Doebert,
183 Ill. App. 3d 1081 (Ill. App. Ct. 1989) ......................................................... 11

Statutes

11 U.S.C. § 510(a) .................................................................................... 4, 9, 11

11 U.S.C. § 544 ............................................................................................... 7

11 U.S.C. § 548(c) .......................................................................................... 15

11 U.S.C. § 1129(a) ........................................................................................ 11

11 U.S.C. § 1129(a)(1) ............................................................................. 4, 9, 11

11 U.S.C. §1129(a)(7) ...................................................................................... 6

11 U.S.C. § 1129(b) ........................................................................................ 11

11 U.S.C. § 1129(b)(1) .................................................................................. 4, 5

Other

Black's Law Dictionary (8th ed. 2004)..........................................................................11

7 Collier on Bankruptcy (16th ed. 2009) ......................................................................11

**POST-CONFIRMATION HEARING BRIEF OF WILMINGTON TRUST COMPANY,
AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES**

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2 billion (generally referred to as the "PHONES") issued in April 1999 by Tribune Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the "Company"), by and through its undersigned counsel, hereby respectfully submits this post-confirmation hearing brief concerning issues specific to the PHONES (the "PHONES Brief"). In support of the PHONES Brief, Wilmington Trust respectfully states as follows:[1]

**PRELIMINARY STATEMENT**

After a lengthy fact-finding process, including almost two weeks of testimony and argument, and a 1,000 plus page report of the Examiner, Kenneth Klee,[2] the Debtors, in conjunction with the LBO Lenders and the Creditors' Committee *still* press a plan that gives the PHONES *nothing* even though the D/C/L Plan impermissibly compromises the rights of the PHONES Holders. The substantial record before this Court mandates that such an unjust result be rejected. Not only does the D/C/L Plan impermissibly settle all of the estate claims against the LBO Lenders arising from the failed Leveraged Transaction for insufficient consideration, as

---

[1]   This Brief is limited to issues concerning the treatment of the PHONES under the D/C/L Plan and claims arising from the PHONES Indenture. Wilmington Trust, in its capacity as a proponent of the Noteholder Plan with the other proponents of that Plan, also has submitted a separate Post-Trial Brief of the Noteholder Plan Proponents filed contemporaneously herewith (the "Noteholder Brief"), to which the Court is respectfully referred. The Order Setting Schedule for Post-Confirmation Hearing Briefing and Argument [D.I. 8817] granted Wilmington Trust the right to file this brief concerning PHONES-specific issues. Wilmington Trust also reiterates and incorporates by reference the arguments presented in its original Objection to the Second Amended Debtor/Committee/Lender Plan (the "PHONES Objection") [D.I. 7996].

[2]   All Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Noteholder Brief or, to the extent not defined therein, in the Amended Objection of the Noteholder Plan Proponents to Confirmation of the Debtor/Committee/Lender Plan of Reorganization [D.I. 8013] (the "Noteholder Objection").

1

set forth in the Noteholder Brief, there are at least two additional substantial deficiencies in the

D/C/L Plan specific to its treatment of the PHONES that preclude confirmation of the D/C/L

Plan:

- Underline{First}, the D/C/L Plan impermissibly subordinates the PHONES: (1) with regard to certain other parent claims, including the swap claim, and claims of trade creditors and retirees; (2) with regard to certain claims that belong to the PHONES, but are part of the litigation trust; and (3) with regard to the LBO Lenders at the parent company level.

- <u>Second</u>, notwithstanding that Wilmington Trust's Adversary Complaint [Adv. No. 10-50732, D.I. 1] (the "PHONES Complaint") is unresolved, and asserts valid claims fully supported by the Examiner's Report and the record of the confirmation hearing, the D/C/L Plan impermissibly makes moot certain aspects of the relief sought in the PHONES Complaint against certain LBO Lenders.[3]

For these reasons, as well as those stated in the Noteholder Brief, the Court should deny

confirmation of the D/C/L Plan.

## ARGUMENT

### I.    The D/C/L Plan Improperly Subordinates the Phones Claims

The rights of the PHONES were established in an indenture, dated as of April 1, 1999

(the "PHONES Indenture").[4]   While Article 14 of the PHONES Indenture contains certain

subordination provisions, the D/C/L Plan impermissibly applies subordination in at least three

respects:  (1) with regard to "Other Parent Claims" under the D/C/L Plan; (2) with regard to the

proceeds from the Litigation Trust established under the D/C/L Plan; and (3) with regard to

distributions to the LBO Lenders at the parent level.

---

[3]   The Wilmington Trust Complaint was asserted against certain of the LBO Lenders.  See PHONES Complaint. The defendants are JP Morgan Chase Bank, N.A., individually and as Administrative Agent, J.P. Morgan Securities Inc., Merrill Lynch Capital Corporation, individually and as Administrative Agent, Merrill, Lynch, Pierce, Fenner & Smith Incorporated, Citicorp North America, Inc., individually and as Administrative Agent, Citibank, N.A., Citigroup Global Markets, Inc., Bank of America, N.A., Banc of America Securities, LLC, Barclays Bank PLC, Morgan Stanley & Co. Inc. (collectively, the "PHONES Complaint Defendants").

[4]   See PHONES Indenture, NPP 963.

A.     The PHONES Are Not Subordinated to Certain "Other Parent Claims."

The D/C/L Plan, at Section 3.2.6, permits holders of Class 1F Other Parent Claims to benefit from the subordination provisions in the PHONES Indenture, even though these types of claims in Class 1F do not qualify as "Senior Indebtedness" under the PHONES Indenture.  For example, the D/C/L Plan provides a 32.73% recovery to the Class 1F Other Parent Claims in the event that they opt to receive a package of consideration including interests in the Litigation Trust.  This recovery percentage is identical to the 32.73% recovery provided to the Senior Noteholder Claims.  This evidences the improper subordination of the PHONES to holders of the Class 1F Claims since holders of the Senior Noteholder Claims, who purportedly benefit from the PHONES subordination, do not receive a higher recovery than holders of Class 1F Claims.  See Disclosure Statement (Specific) for D/C/L Plan, dated as of December 10, 2010, pg 13-14 [D. I. 7135].

A plain reading of the PHONES Indenture demonstrates the D/C/L Plan's errors.  Section 14.01 of the PHONES Indenture states that the PHONES "shall be subordinated to Senior Indebtedness as set forth in . . . Article Fourteen" of the PHONES Indenture.  Section 14.01 defines "Senior Indebtedness" to be "the principal of (and premium, if any) and interest on . . . and other amounts due on or in connection with any Indebtedness of the Company."  Section 14.01 defines "Indebtedness" to be:

> (i) all obligations represented by notes, bonds, debentures or similar evidences of indebtedness; (ii) all indebtedness for borrowed money or for the deferred purchase price of property or services other than, in the case of any such deferred purchase price, on normal trade terms; . . . and (iv) all Indebtedness of others for the payment of which such Person is responsible or liable as obligor or guarantor.

The PHONES Indenture, however, excludes certain "Indebtedness" from "Senior Indebtedness."  See PHONES Indenture §14.01.  In particular, excluded from "Senior Indebtedness" is any Indebtedness of the Company "constituting trade accounts payable arising

in the ordinary course of business." Id. Here, virtually all trade claims against Tribune Company "constitut[e] trade accounts payable arising in the ordinary course of business" and are excluded from the definition of "Senior Indebtedness." Similarly, "Retiree Claims" (as defined in the D/C/L Plan) do not fall within the definition of "Indebtedness" in §14.01. Nevertheless, by placing trade creditors and retirees in the "Other Parent Claims" class, the D/C/L Plan impermissibly subordinates the PHONES to both trade creditors and retirees.

Brian Whittman, one of the Debtors' "experts," admitted in his expert report (DCL 1110 at 16 n.33) that "[t]he settlements in the Plan also provide the benefit of the subordination [of the PHONES] to the remaining Other Parent Claims for simplicity of **plan construction** . . ." (emphasis in original).[5] Such "plan construction" violates Bankruptcy Code Section 1129(b)(1)'s prohibition against unfair discrimination, in addition to Sections 510(a) and 1129(a)(1). The D/C/L Plan Proponents cannot perform a feat of alchemy simply by characterizing this redistribution of value as part of a "settlement consideration," subject to Rule 9019. See D/C/L Confirmation Brief at 172. The Court must take into account the fairness of any settlement to third parties, and this so called "settlement" is not fair to the PHONES. See In re Med. Asset Mgmt., Inc., 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000) (noting that settlements must be fair to non-parties to the settlement and that the rights of junior creditors must be considered in any fairness analysis); see also In re Iridium Operating LLC, 478 F.3d 452, 464-5 (2d Cir. 2007) (settlements should comply with the Bankruptcy Code's priority scheme). Here, the treatment of the favored Other Parent Claims class does not comply with Sections 510(a),

---

[5] Furthermore, DCL 1110 acknowledges that "any value that would be distributed to Guarantor Subsidiaries on the Account of Intercompany Claims against the Parent is redistributed to the Senior Guarantee Claims" (DCL 1110 (Whittman Rpt.), at 18, but this ignores that the PHONES are not subordinated to Intercompany Claims either (see PHONES Indenture, Section 14.01; definition of "Senior Indebtedness"). Thus, the D/C/L Plan also improperly subordinates the PHONES to recoveries on intercompany claims, notwithstanding the D/C/L Plan Proponents' protestations to the contrary. See D/C/L Confirmation Brief at 172.

1129(a)(1) and 1129(b)(1). See Amended Objection to Second Amended Joint Plan of Reorganization of Brigade Capital Management [D.I. 8324] (citing legislative history illustrating that Congress specifically intended for the misapplication of subordination provisions to constitute unfair discrimination within the meaning of the Bankruptcy Code).

Section 1.1.170 of the D/C/L Plan also improperly classifies as a Class 1F Other Parent Claims the so-called "Swap Claim," held by Oaktree, and then improperly subordinates the PHONES to the Swap Claim. Section 1.1.243 of the D/C/L Plan defines the swap claim as consisting of "any Claims asserted under that certain 1992 ISDA Master Agreement, dated as of July 2, 2007 between Barclays Bank PLC and Tribune." (NPP 2300).[6]

The Swap Claim, however, is not "Indebtedness" as defined in Section 14.01 of the PHONES Indenture. The Swap Claim arises under a contract pursuant to which parties agreed to pay certain amounts to each other under certain circumstances and represents either an asset or liability to each party, depending on the prevailing conditions of the swap. This is not an obligation represented by notes, bonds, or a debenture within the meaning of Section 14.01 of the PHONES Indenture; it is not indebtedness for borrowed money;[7] and it is not Indebtedness of others for which the Debtor is the guarantor. Indeed, as the Ninth Circuit declared:

> A fundamental characteristic of an interest rate swap is that the counterparties never actually loan or advance the notional amount. The swap involves an exchange of periodic payments calculated by reference to interest rates and a hypothetical notional amount. Payments made under an interest rate swap cannot possibly compensate for . . . the delay and risk associated with borrowed money because no loan has taken

---

[6] See 3/7/11 Tr. at 89:22-109:1 (oral argument by Brigade Capital discussing how the treatment of the swap claim became more favorable after it was purchased by Oaktree, a proponent of the D/C/L Plan).

[7] As stated by Oaktree's counsel during oral argument, "the [S]wap [C]laim is not for money loaned. It represents Tribune's liability under an interest rate agreement that was terminated as a consequence of Tribune's bankruptcy filing." 4/14/11 Trial Tr. 3755:14-17. Oaktree's counsel also cited the Ninth Circuit's decision in Thrifty Oil, in which the Ninth Circuit held that "[a] fundamental characteristic of an interest rate swap is that the counterparties never actually loan or advance the notional amount." Thrifty Oil Co. v. Bank of America Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1048 (9th Cir. 2003).

place between the counterparties. The damages due upon termination of the swap merely provide the replacement cost of the lost swap payments and likewise cannot represent interest, unmatured or otherwise.

Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1048 (9th Cir. 2003).

Accordingly, the PHONES are not subordinated to the Swap Claim. The D/C/L Plan must fail as it allows creditors holding the Swap Claim the benefit of subordination to which they are not entitled, and thereby discriminates unfairly against the PHONES.[8]

Due to its misapplication of the Senior Indebtedness provision under the D/C/L Plan, the PHONES receive less than the liquidation value of their claims. This is not permissible under the Bankruptcy Code. See 11 U.S.C. Section 1129(a)(7); PHONES Objection at 7-11; In re PWS Holding Corp., 228 F.3d 224, 230 (3d Cir. 2000) ("a court shall confirm a plan only if the debtor demonstrate[s] . . . that creditors rejecting the plan would not receive a greater recovery in Chapter 7 liquidation"); In re Lisanti Foods, Inc., 329 B.R. 491, 500 (D.N.J. 2005) (same); Top Hat, Ltd. v. Aurora Foods, Inc. (In re Aurora Foods, Inc.), 2006 U.S. Dist. LEXIS 91659, at *24 (D. Del. Dec. 19, 2006) (same). In order to determine whether a plan of reorganization supplies all parties with the liquidation value of their claims, a court looks to each creditor's rights in a liquidation under state law. See Butner v. U.S., 440 U.S. 48, 54-55 (1979); In re Cypresswood Land Partners, I, 409 B.R. 396, 437 (Bankr. S.D. Tex. 2009) (plan is fair and equitable if creditor receives the same treatment under plan as he or she would under applicable state law). Because the PHONES claims would receive better treatment under a Chapter 7 liquidation and/or state law, the D/C/L Plan may not be confirmed.

---

[8] Wilmington Trust hereby incorporates by reference the arguments presented by Brigade Capital at closing arguments with respect to subordination of the swap claim. See 4/13/11 Tr. at 3548:2-3567:19. Wilmington Trust also reiterates and incorporates by reference the arguments presented in the Noteholder Objection at 209-215 (arguing that the classification of the swap claim violates the Bankruptcy Code) [D.I. 8013]. See also In re Woodbrook Assocs., 19 F.3d 312, 321 (7th Cir. 1994) (holding that plan discriminated unfairly against government by providing for distribution on government's unsecured deficiency claim at 5%, while paying off insiders' unsecured claims in full).

The D/C/L Plan Proponents seek to excuse their misapplication of the PHONES subordination by arguing that the PHONES may not invoke the protections of the Bankruptcy Code because of their purported "deeply subordinated position." See D/C/L Confirmation Brief at 179-80. In other words, the D/C/L Plan Proponents assert that, since the PHONES are forced to turn over to Senior Noteholders and other purportedly senior creditors the money they would otherwise receive but for the misapplication of the subordination provision, correcting such misapplication would not result economic gain for the PHONES, nor a better position in a Chapter 7 liquidation. This argument is just wrong. Even if the PHONES were required to turnover to others 100% of the value redistributed through a proper application of the PHONES subordination, such turnover would *reduce* the amount of actual indebtedness senior to the PHONES, hastening the termination of any turnover obligations and markedly *improving* the position of the PHONES relative to the recoveries prescribed in the D/C/L Plan. For these reasons, the D/C/L Plan also must fail because it does not offer the PHONES the protections of the "best interests of creditors test." See In re PWS Holding Corp., 228 F.3d at 230.

B.     The PHONES Are Not Subordinated With
       Respect to Claims That Belong to the PHONES.

The D/C/L Plan further misapplies the subordination provisions with respect to recoveries from the Litigation Trust established by Article XIII of the D/C/L Plan. The Official Creditors' Committee has asserted fraudulent conveyance claims against third-parties arising under state law. According to Professor Klee, these are particularly valuable causes of action. See NPP 782 (Exam'rs Rpt.) Vol. III at 10. But, in pursuing this valuable asset class, the Committee is not asserting claims that belonged to the Debtors pre-petition. Rather, the Committee is asserting claims that belonged to creditors pre-petition. In other words, Section 544(b) merely confers on the Committee (as estate representative) standing to prosecute *creditor*

claims. See Official Creditors Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.), 226 F.3d 237, 245 (3d Cir. 2000). See also NPP 782 (Exam'rs Rpt.), Vol. III at 11-16.

It thus follows that *recoveries* on the fraudulent conveyance claims are not proceeds of the Debtors' pre-petition asset-base. Rather, they are proceeds of an asset class owned exclusively *by creditors* pre-petition, which proceeds are added to the estate (along with the Debtors' pre-petition asset-base) when they are received. See, e.g., Richardson v. Huntington Nat'l Bank (In re CyberCo Holdings, Inc.), 382 B.R. 118, 143 (Bankr. W.D. Mich. 2008). That is especially true when the action does not seek equitable relief, like the disgorgement of a particular item of property conveyed by the Debtors pre-petition (e.g., a parcel of land or a painting), but rather seeks "monetary relief" from the defendants. In that particular instance, the action is one at law, seeking a money judgment for a sum certain, payable from the defendant's property. See Granfinanciera, S.A. v. Nordberg, 109 S. Ct. 2782, 2790 (1989).

These legal distinctions are critically important. As discussed above under Article 14 of the PHONES Indenture, the holders of the PHONES agreed to be contractually subordinated to holders of "Senior Indebtedness," thus giving rise to the obligation to "turn over" value distributions to senior creditors. But, this turnover obligation is limited. Under PHONES Indenture Section 14.02, holders of the PHONES are obligated to turn over to Senior Indebtedness, only "distributions of assets *of the Company*" (emphasis added). Holders of the PHONES are not contractually subordinated respecting – and thus are not obligated to turn over – distributions from non-Debtor third-parties, made on account of money judgments arising under fraudulent conveyance statutes.[9]

---

[9] The confines of the subordination language is further informed by PHONES Indenture Section 5.10 (the so-called "cumulative remedies" provision), which contemplates and preserves Wilmington Trust's rights to pursue third-parties on theories of action arising outside the four corners of the Indenture, such as under state fraudulent conveyance laws. The fact that the PHONES Indenture explicitly contemplates third-party

Stated differently, if the Debtors had not filed for bankruptcy and Wilmington Trust had successfully sued the LBO Lenders on a fraudulent conveyance theory, the PHONES holders would not be required by Section 14.02 to turn over these funds to holders of "Senior Indebtedness," even in a default scenario. That is because the moneys awarded are not "assets *of the Company*" – they are assets that previously belonged to the defendants, payable on (and are the proceeds of) a cause of action that had always belonged to Wilmington Trust.

If the Litigation Trust (as successor to the Creditors' Committee) successfully prosecutes the fraudulent conveyance and preference claims, those recoveries should be duly apportioned to unsecured creditors, including holders of the PHONES. Under the PHONES Indenture, their pro rata allocation is <u>not</u> to be "turned over" to senior creditors because the allocation is <u>not</u> a distribution of an "asset of the Company." Rather, the PHONES Indenture dictates that such value is to be distributed directly to the holders of the PHONES.

The D/C/L Plan provides that all recoveries on fraudulent conveyance claims asserted by the Creditors' Committee shall be delivered to the LBO Lenders and the holders of the Senior Notes; the PHONES do not participate in such recoveries until after the LBO Lenders and Senior Notes claims are first satisfied in full. This extends the subordination language of Section 14.02 beyond its stated limitations. The D/C/L Plan thus compels contractual subordination "turn over" beyond the explicit terms of the PHONES Indenture. This is patently inconsistent with Bankruptcy Code Section 510(a) and thus renders the plan unconfirmable under Section 1129(a)(1).

---

recoveries in Section 5.10, but does not explicitly provide in Section 14.02 that these recoveries are to be turned over to Senior Indebtedness, must mean that they are <u>not</u> to be turned over to such creditors (i.e., such recoveries are to be distributed only to holders of the PHONES). <u>See</u> In re Time Sales Fin. Corp., 491 F.2d 841 (3d Cir. 1974); In re Bank of New England Corp., 2008 WL 8052903 (Bankr. D. Mass. 2008) (Expert Report of Kenneth Klee regarding interpretation of subordination provisions); In re Ionosphere Clubs, Inc., 134 B.R. 528 (Bankr. S.D.N.Y. 1991).

C.   The PHONES Are Not Subordinated to the LBO
     Lenders Due to the LBO Lenders' Lack of Good Faith.

Section 14.09 of the PHONES Indenture requires holders of "Senior Indebtedness" to act

in good faith.  Section 14.09 states, in pertinent part:

> **No right of any present or future holder of any Senior Indebtedness to enforce
> subordination** as herein provided **shall at any time in any way be prejudiced . . .
> by any act or failure to act, in good faith, by any such holder**, or by any
> noncompliance by the Company with the terms . . . regardless of any knowledge
> thereof any such holder may have or be otherwise charged with. (emphasis added).

The plain language of this provision protects holders of "Senior Indebtedness" only so

long as they act in "good faith," and conversely makes the subordination provisions ineffective if

the holders of Senior Indebtedness fail to act in good faith.  Wilmington Trust submits that the

Court should so rule based on the language used.  <u>See</u> <u>Perry v. Carpenter</u>, 396 Ill. App.3d 77, 83

(Ill. App. Ct. 2009) ("Contract terms must be given their plain, ordinary, popular and natural

meaning."); <u>Johnstowne Centre P'ship v. Chin</u>, 99 Ill. 2d 284, 287 (1983).[10]

Nevertheless, in the D/C/L Confirmation Brief [D.I. 8173], at 173, the D/C/L Plan

Proponents reject the PHONES' interpretation of the PHONES Indenture.  Instead, the D/C/L

Plan Proponents disingenuously assert, without benefit of citation, that Section 14.09 only means

that rights of holders of senior indebtedness are not prejudiced even if they do not act in good

faith.  Such a tortured reading of the PHONES Indenture would turn the plain meaning of the

bargained-for protections of the PHONES on its head and should be rejected out of hand.

However, should the Court find that the interpretation of Section 14.09 proffered by the D/C/L

Plan Proponents is as reasonable an interpretation of Section 14.09 as that offered by the

PHONES, then parol evidence was required to establish the intent of the parties.  <u>See</u> <u>Baker v.</u>

<u>America's Mortg. Servicing, Inc.</u>, 58 F.3d 321, 326 (7th Cir. 1995) (contract with two reasonable

---

[10]   The PHONES Indenture at Section 1.12 expressly states that it is governed by the law of the State of Illinois.

and fair interpretations is clarified through judicial examination of extrinsic evidence).

Here, it cannot be disputed that the D/C/L Plan Proponents bear the burden of proof in prosecuting their plan,[11] including establishing that they satisfied Section 510(a) of the Bankruptcy Code in order to meet their burden under Section 1129(a)(1). Yet, the D/C/L Plan Proponents offered no evidence in support of their interpretation of the PHONES Indenture at the confirmation hearing. Therefore, the D/C/L Proponents failed to satisfy their burden under Sections 510(a) and 1129(a)(1). See, e.g., In re TCI 2 Holdings, LLC, 428 B.R. 117, 141 (Bankr. D.N.J. 2010) ("Section 1129(a)(1) requires a plan to conform to the provisions of Title 11, including Section 510(a), which makes subordination agreements enforceable in bankruptcy to the same extent such agreements are enforceable outside of bankruptcy.").

Although "good faith" is not defined within the PHONES Indenture, that term has been recognized to require "honesty in belief or purpose" or an "absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary 713 (8th ed. 2004). Illinois law uses a similar definition. See Vincent v. Doebert, 183 Ill. App. 3d 1081, 1090 (Ill. App. Ct. 1989) ("Good faith between contracting parties requires one vested with contractual discretion to exercise it reasonably and not arbitrarily or capriciously").

The record is replete with evidence proving that the LBO Lenders failed to act in good faith. Rather, the LBO Lenders acted without "honesty" and with "intent to defraud or to seek unconscionable advantage" by, inter alia, funding the LBO Transaction: (1) with the intention that the holders of the PHONES would serve as a ▆▆▆▆▆ to protect the LBO Lenders and bear

---

[11] See, e.g., In re Armstrong World Indus., 348 B.R. 111, 120 & n. 15 (D. Del. 2006) (plan proponent must establish by preponderance of the evidence the satisfaction of requirements of both Bankruptcy Code Section 1129(a) and 1129(b)); 7 Collier on Bankruptcy ¶ 1129.05[1][d] (16th ed. 2009) ("At the [confirmation] hearing, the proponent bears the burdens of both introduction of evidence and persuasion that each subsection of Section 1129(a) has been satisfied. If nonconsensual confirmation is sought, the proponent of such a plan will have to satisfy the court that the requirements of Section 1129(b) are also met. In either situation, the plan proponent bears the burden of proof by a preponderance of the evidence.").

the risk of Tribune's inevitable bankruptcy; and (2) despite knowing before both Step One and Step Two that the incremental indebtedness incurred would render Tribune insolvent and lead, as it did, to its certain bankruptcy. In the interests of efficiency, this PHONES Brief presents only a summary of the evidence of the LBO Lenders' lack of good faith, especially as it affected the PHONES, and incorporates herein Sections II.A-G of the Noteholders' Brief, which further details the evidence of the LBO Lenders' lack of good faith in connection with the ill-fated LBO.

For example, the record establishes that the LBO Lenders intended to exploit the ███████ the PHONES provided in the inevitable bankruptcy that would result from the LBO ESOP Transactions includes the following:



Additional evidence in the record supporting the lack of good faith by the LBO Lenders

[12] ██████████████████████████████████████

[13] NPP 782 (Exam'rs Rpt.), Vol. I at 632.

[14] ██████████████████████████████████████

[15] ██████████████████████████████████████

toward the PHONES arises in connection with the matters at issue in the PHONES Complaint. For example, the confirmation record establishes that, throughout the LBO Transaction, Citibank, N.A. ("Citibank") was the Indenture Trustee for the PHONES, and its affiliate, Citigroup, was one of the architects of the LBO Transaction. The record also establishes that:



---

16

Co., Quarterly Report (Form 10-Q, Ex. 4.3) (Aug. 13, 2008) (resignation agreement).

19



[REDACTED]

Moreover, the evidence at the confirmation hearing set forth in the Noteholder Brief fully supports the conclusion that the LBO Lenders lacked "good faith" at <u>both</u> Step One and at Step Two.[26] Because the LBO Lenders did not act in good faith as required by Section 14.09 of the PHONES Indenture, the LBO Lenders were not entitled to enforce the subordination provisions of the PHONES Indenture.

Section 7.15 of the D/C/L Plan provides, at least in theory, that D/C/L Plan distributions *do* take applicable contracts into account:

> The distributions and treatments provided to Claims and Interests under this Plan take into account and/or confirm to the relative priority and rights of such Claims and Interests under any applicable subordination and turnover provisions in any applicable contracts, including, without limitations, the PHONES Notes Indenture . . . and nothing in [the] Plan shall be deemed to impair, diminish, eliminate or otherwise adversely affect the rights or remedies of beneficiaries . . . of any such contractual subordination and turnover provisions.

However, rather than providing equal priority to the recoveries of the LBO Lenders and

---

[24] [REDACTED]

[26] Noteholder Brief, at § II. G. The Examiner found it "reasonably likely" that the LBO Lenders *failed* to establish the good faith defense under Bankruptcy Code Section 548 with respect to their Step Two obligations. NPP 782 (Exam'rs Rpt.), Vol. II at 264-278. The Examiner also concluded that the court could equitably subordinate all or part of the LBO Debt because the LBO Lenders unfairly took advantage of other creditors, including the PHONES. <u>Id</u>. at 334. The Examiner recognized that the LBO Lenders' knowledge that Step Two would render Tribune insolvent could result in the equitable subordination (and possibly equitable disallowance) of the Step Two Debt *and* possibly some or all of the Step One Debt. <u>See id</u>. In drawing this conclusion, the Examiner also noted that equitable subordination might be appropriate had he applied a legal standard different than that applied to determine good faith in connection with a 548(c) defense. <u>Id</u>. at 332.

the PHONES at the parent-company level, the D/C/L Plan effectuates a turn over of proceeds to the LBO Lenders as if the PHONES were fully subordinated to the LBO Lenders, providing a recovery valued at roughly $85.71 million dollars in initial consideration to the LBO Lenders, without justification. See D/C/L Disclosure Statement [D.I. 7135] at Section II(C)(2).

In so providing, the D/C/L Plan impermissibly settles the issue of the enforcement of the PHONES subordination in the LBO Lenders' favor, without any legal determination by this Court as to the enforceability of subordination as a result of Section 14.09 of the PHONES Indenture. This violates the state law rights of the PHONES holders under the PHONES Indenture, and therefore the D/C/L Plan cannot be confirmed. See In re Carolina Tobacco, Co., 360 B.R. 702, 711 (D. Or. 2007) ("Unless preempted by the Bankruptcy Code, state laws remain in place and a debtor must be able to comply with those state laws for a plan to be confirmed.").

## II. The PHONES Complaint May Not, As a Matter of Law, Be Made Moot By the D/C/L Plan.

On March 4, 2010, Wilmington Trust, as Indenture Trustee, filed the PHONES Complaint, seeking relief against the PHONES Complaint Defendants for equitable disallowance, equitable subordination and the imposition of a constructive trust arising from the LBO Lenders' improper conduct, as well as for breaches of fiduciary duty and aiding and abetting such breaches. See PHONES Complaint at ¶ 2. See also In re Vitreous Steel Prods. Corp., 911 F.2d 1223, 1231 (7th Cir. 1990) (individual creditors may sue for equitable subordination even if the wrongful conduct harmed the debtor and creditors generally). Pursuant to this Court's Order [Adv. Proc. 10-50732, D.I. 39], the PHONES Complaint is stayed pending resolution of JPMorgan's Sanctions Motion [D.I. 3715] and the Debtors' Stay Violation Motion [D.I. 3759].

The D/C/L Plan provides no mechanism to resolve the PHONES Complaint without

prejudice to holders of PHONES. Although the D/C/L Plan settles estate claims against the LBO Lenders, as a matter of law, it may not affect the PHONES' individual claims against the LBO Lenders.[27] The PHONES Objection at ¶¶ 25-27 objected to the D/C/L Plan for these very reasons. The D/C/L Plan Proponents only response was that the D/C/L Plan does not explicitly release Wilmington Trust's claims (D/C/L Confirmation Brief at 96). The D/C/L Plan proponents miss the point. While Wilmington Trust's claims may not be explicitly released under the current D/C/L Plan, certain of its claims and remedies are effectively mooted by distributions to be made pursuant to the D/C/L Plan. For example, its cause of action for equitable disallowance is mooted by the provision of the D/C/L Plan providing for allowance of the LBO Lenders' claims without "reduction, disallowance, subordination, set off, or counterclaim." See D/C/L Plan at Sections 3.2.3 (b) and 3.3.3(b). Similarly, the cause of action for equitable subordination is mooted by the same provision, which will release consideration, including equity interests in the reorganized Debtors, without first resolving Wilmington Trust's claims that, if successful, would mean that the LBO Lenders are not entitled to a recovery before the PHONES receive theirs.

The D/C/L Plan could have preserved the PHONES' equitable claims for disallowance and equitable subordination by holding in reserve pending resolution of the PHONES Complaint sufficient equity and/or cash to pay the PHONES claims in full. But the D/C/L Plan Proponents have refused to do so. This infirmity renders the plan unconfirmable as a matter of law. See, e.g., In re MCorp Fin., Inc., 137 B.R. 219, 226-27 (Bankr. S.D. Tex. 1992) (failure to establish a reserve rendered plan unconfirmable), appeal dismissed and remanded on other grounds, 139 B.R. 820 (S.D. Tex. 1992); In re Levitz Furniture, Inc., 267 B.R. 516 (Bankr. D. Del. 2000)

---

[27] The Examiner explicitly found that the PHONES complaint contains individual claims that belong to the PHONES and are not estate claims. NPP 782 (Exam'rs Rpt.), Vol. I at 27.

(court allowed plaintiffs to prosecute action because the confirmation of a plan of reorganization would moot the equitable relief sought by the plaintiffs).

**WHEREFORE**, for the reasons set forth herein, and in the Noteholders Brief, Wilmington Trust, as the Indenture Trustee to the PHONES, respectfully requests that this Court deny confirmation of the D/C/L Plan.

Dated: Wilmington, Delaware
      May 11, 2011

Respectfully submitted,

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as*
*Successor Indenture Trustee for the $1.2 Billion*
*Exchangeable Subordinated Debentures Due*
*2029, Generally Referred to as the PHONES*

**SULLIVAN HAZELTINE ALLINSON LLC**

By:_____ */s/ William D. Sullivan*_____
William D. Sullivan, Esq. (Del. Bar No. 2820)
Elihu E. Allinson, Esq. (Del. Bar No. 3476)
901 Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: zallinson@sha-llc.com

8296385