**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: TRIBUNE COMPANY, et al.,[1], | ) | Chapter 11 |
| | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | Case No. 08-13141 (KJC) |
| | ) | **Related to D.I. No. 8866** |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, et al., , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-54010 (KJC) |
| | ) | |
| DENNIS J. FITZSIMONS, et al. | ) | **Hearing Date: May 17, 2011 at 10:00 a.m.** |
| | ) | **Objection Deadline: May 16, 2011 at 5:00 p.m.** |
| | ) | **Related to D.I. No. 113** |

**LIMITED RESPONSE OF AURELIUS CAPITAL MANAGEMENT, LP, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS MOTION FOR PROTECTIVE ORDER**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39. Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicagoland Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsaiebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Coumnt Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, n/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., n/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLV Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Aurelius Capital Management, LP, on behalf of its managed entities (collectively "Aurelius"), Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee for certain series of Senior Notes issued by Tribune Company ("Deutsche Bank"), and Law Debenture Trust Company of New York, in its capacity as successor Indenture Trustee for certain series of Senior Notes issued by Tribune Company ("Law Debenture" and, collectively with Aurelius, Deutsche Bank, and Wilmington Trust Company, in its capacity as successor Indenture Trustee for the PHONES notes issued by Tribune Company, the "Plaintiff Group") hereby respond to the Motion of Official Committee Of Unsecured Creditors (the "Creditors' Committee") For Protective Order (the "Motion For Protective Order") [D.I. 8866].

## BACKGROUND

1. On April 1, 2007, the board of directors of Tribune Company ("Tribune") approved a highly leveraged transaction (the "LBO") that was designed to return Tribune to private ownership primarily at the expense of Tribune's existing creditors, each of whom instantly became structurally subordinated to more than $10 billion in senior bank debt that was guaranteed by Tribune's most valuable operating subsidiaries.

2. On June 4, 2007, Tribune and many of its direct and indirect subsidiaries (the "Guarantors" and, together with Tribune, the "Company") executed the first step ("Step One") of the LBO by paying Tribune's shareholders (the "Step One Selling Shareholders") approximately $4.3 billion for approximately 52% of the outstanding shares of Tribune at a premium price of $34 per share. On December 20, 2007, the Company executed the second step ("Step Two") of the LBO, paying Tribune's remaining shareholders (the "Step Two Selling Shareholders" and, collectively with the Step One Selling Shareholders, the "Selling Shareholders") approximately $4 billion for the remaining 48% of the outstanding shares of Tribune, at the same premium price of $34 per share.

3. Less than one year later, on December 8, 2008, Tribune and one hundred ten of its subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

4. On December 18, 2008, the Office of the United States Trustee for Region 3 appointed the Creditors' Committee. As part of its statutory duties pursuant to section 1103(c) of the Bankruptcy Code, the Creditors' Committee investigated, among other things, the acts and conduct of the Company relating to the LBO.

5. In connection with its investigation, the Creditors' Committee obtained critical information (the "Selling Shareholder Information") evidencing: (a) the identity, last known address, and the number of shares owed by each of the Selling Shareholders immediately before the closing of Step One and Step Two; and (b) the dates and amounts of any payments (the "Redemption Payments") made by Tribune to the Selling Shareholders in connection with Step One and Step Two.

6. On November 1, 2010, and based upon the Selling Shareholder Information received as of that date, the Creditors' Committee filed an adversary complaint (as amended, the "Committee Complaint") that seeks, among other things, to avoid and recover the Redemption Payments as intentional fraudulent transfers pursuant to sections 544 and 548 of the Bankruptcy Code. Importantly, the Committee Complaint does not assert any claims to avoid or recover the Redemption Payments as constructively fraudulent transfers pursuant to applicable state law (the "State-Law Claims").

7. On December 8, 2010, the two year statute of limitations under section 546(a) of the Bankruptcy Code lapsed without the State-Law Claims being asserted by or on behalf of the Debtors' estates. Consequently, and in response to a motion filed by the Plaintiff Group, on

April 25, 2011, the Court ordered that the Debtors' creditors (including the Plaintiff Group here) regained the right to prosecute the State-Law Claims to avoid and recover the Redemption Payments from the Selling Shareholders.

8. Because Step One closed on June 4, 2007, several applicable state-law limitation periods for commencing the State-Law Claims may expire as early as June 4, 2011. In order to preserve the Plaintiff Group's ability to prosecute the State-Law Claims, therefore, the Plaintiff Group must file a complaint or complaint(s) asserting the State-Law Claims against nearly 30,000 Selling Shareholders in just 22 days. In light of the panoply of legal and factual issues relating to the State-Law Claims, the Selling Shareholder Information is critical to the Plaintiff Group's ability to prosecute the State-Law Claims in a manner that maximizes potential recoveries for the benefit of many of the Debtors' creditors.

9. On April 28, 2011, the Plaintiff Group requested that the Creditors' Committee promptly provide the Selling Shareholder Information to the Plaintiff Group. In response to this request, counsel to the Creditors' Committee's advised that much of the Selling Shareholder Information could not be disclosed because it is protected by confidentiality agreements ("Existing Confidentiality Agreements") between the Creditors' Committee and the parties who provided it with the Selling Shareholder Information.

10. On April 29, 2011, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, the Plaintiff group served on the Creditors' Committee a *subpoena duces tecum* that commanded the Creditors' Committee to produce the Selling Shareholder Information to the Plaintiff Group on or before May 13, 2011. (*See* Motion For Protective Order, Exhibit C.)

11. On May 9, 2011, the Creditors' Committee filed the Motion For Protective Order. In that motion, the Creditors' Committee requested that the Court enter a protective order authorizing the Creditors' Committee to disclose the Selling Shareholder Information to the

Plaintiff Group, "provided, however, that the [Plaintiff Group] acknowledge[] its consent to be bound by the terms of the [Existing] Confidentiality Agreements by executing and returning to counsel to the Committee a copy of a document in substantially the same form as" the agreement appended as Exhibit A to the Motion For Protective Order. (Motion For Protective Order, Exhibit D ¶ 2.)

## LIMITED RESPONSE

12. After the Creditors' Committee filed the Motion For Protective Order, the Plaintiff Group notified the Creditors' Committee that the Plaintiff Group is willing to execute a confidentiality agreement ("Plaintiff Confidentiality Agreement") that is in substantially the same form as the sample which was appended as Exhibit A to the Motion For Protective Order.

13. The Plaintiff Group and the Creditors' Committee have met and conferred on several occasions over the past week to negotiate in good faith the Plaintiff Confidentiality Agreement — an agreement that: (a) is substantially in the same form as the sample which was appended as Exhibit A to the Motion For Protective Order; (b) affords protections and restrictions substantially similar to those provided for in the Existing Confidentiality Agreements; but (c) permits the Plaintiff Group to use the Selling Shareholder Information in connection with the prosecution of the State-Law Claims. A copy of the Plaintiff Confidentiality Agreement is appended hereto as Exhibit A.

## CONCLUSION

For the reasons set forth above, the Plaintiff Group respectfully requests that the Court (i) compel the Creditors' Committee to provide the Selling Shareholder Information to the Plaintiff Group, provided that the Plaintiff Group acknowledge its consent to be bound by the terms of the Plaintiff Confidentiality Agreement appended hereto as Exhibit A and (ii) grant the Plaintiff Group such other and further relief as is just, proper and necessary.

Dated: Wilmington, Delaware
May 13, 2011

Respectfully submitted,

/s/ Leigh-Anne M. Raport
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
Leigh-Anne M. Raport (I.D. No. 5055)
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor; P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888

– and –

Daniel H. Golden
Philip C. Dublin
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000

**COUNSEL FOR AURELIUS CAPITAL MANAGEMENT, LP**

/s/ Katharine L. Mayer
Katharine L. Mayer (I.D. No. 3758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 984-6300

– and –

David J. Adler
MCCARTER & ENGLISH, LLP
245 Park Avenue
New York, New York 10167
Telephone: (212) 609-6800

**COUNSEL FOR DEUTSCHE BANK TRUST COMPANY AMERICAS, SOLELY IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES**

/s/ Garvan F. McDaniel

Garvan F. McDaniel (I.D. No. 4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Telephone: (302) 429-1900

– and –

David S. Rosner
Richard F. Casher
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700

**COUNSEL FOR LAW DEBENTURE TRUST COMPANY OF NEW YORK, SOLELY IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES**