**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 08-13141 (KJC)<br>Jointly Administered<br><br>Related to Docket Nos. 8755, 8927 |

**NOTICE OF FILING OF THIRD AMENDED JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON
BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK
TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR
INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW
DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY
AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF
SENIOR NOTES, AND WILMINGTON TRUST COMPANY, IN ITS
CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, lnc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WA TL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WL VI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

**PLEASE TAKE NOTICE** that on April 25, 2011, Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius"), Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of senior notes ("Deutsche Bank"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of senior notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES notes ("Wilmington Trust Company" and, collectively with Aurelius, Deutsche Bank, Law Debenture and Wilmington Trust, the "Noteholder Plan Proponents") filed the Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [ECF No. 8755] (the "Third Amended Noteholder Plan").[2]

This Notice is being provided to explain, in summary form, the primary modifications contained in the Third Amended Noteholder Plan as compared to the prior versions of the Noteholder Plan previously filed on: (i) December 9, 2010 [ECF No. 7127] (the "Initial Noteholder Plan"), (ii) February 25, 2011 [ECF No. 8169] (the "Amended Noteholder Plan") and (iii) March 28, 2011 [ECF No. 8509] (the "Second Amended Noteholder Plan"). Where the context requires, the term "Noteholder Plan" refers to the applicable version of such plan. The Third Amended Noteholder Plan, like the Amended Noteholder Plan and the Second Amended Noteholder Plan, has been filed in order to: (i) address or resolve confirmation objections filed or

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Third Amended Noteholder Plan.

asserted by various parties in interest; (ii) address or resolve concerns that were communicated to the Noteholder Plan Proponents outside the context of formal confirmation objections; (iii) make clarifying changes to the Noteholder Plan; and (iv) make certain changes to more easily facilitate the post-Effective Date administration of the Noteholder Plan.

While the Noteholder Plan Proponents have filed black-lined versions of each iteration of the Noteholder Plan with the Bankruptcy Court and, in connection with certain modifications, filed a notice with the Bankruptcy Court explaining such modifications, this Notice is intended to provide parties in interest with a cumulative understanding of the primary modifications made to the Noteholder Plan from the Initial Noteholder Plan to the Third Amended Noteholder Plan. The modifications discussed herein are for information purposes only and are not intended to supersede the provisions of the Third Amended Noteholder Plan or constitute a resolicitation thereof.  Indeed, the Bankruptcy Court has determined that either (i) the modifications that have been made to the Initial Noteholder Plan are not material and adverse to any Class of Creditors or (ii) to the extent the amendments are material and adverse to a Class(es) of Creditors, based on such Class(es)' prior rejection of the Initial Noteholder Plan, such Class(es)' shall be deemed to also reject the Third Amended Noteholder Plan.  Accordingly, **THE NOTEHOLDER PLAN PROPONENTS ARE NOT RESOLICITING VOTES ON THE NOTEHOLDER PLAN**.

Copies of the Third Amended Noteholder Plan and a cumulative blackline reflecting modifications from the Initial Noteholder Plan to the Third Amended Noteholder Plan may be: (i) obtained free of charge from Epiq Bankruptcy Solutions, LLC's ("Epiq") dedicated website related to the Debtors' Chapter 11 Cases (http://chapter11.epiqsystems.com/tribune) or by telephoning Epiq at (646) 282- 2400; (ii) inspected during regular business hours at the Office of the Clerk of the Bankruptcy Court, 3rd Floor, 824 Market Street, Wilmington, DE 19801; or (iii)

viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

This Notice is divided into four sections. The first section contains a chart that sets forth modifications, if any, to the classification and treatment of Claims against the Debtors from the Initial Noteholder Plan to the Third Amended Noteholder Plan. The second section summarizes certain changes made to the Initial Noteholder Plan as reflected in the Amended Noteholder Plan. The third section summarizes certain changes made to the Amended Noteholder Plan as reflected in the Second Amended Noteholder Plan. Finally, the fourth section summarizes certain changes made to the Second Amended Noteholder Plan as reflected in the Third Amended Noteholder Plan:[3]

**I.     Changes in Classification and Treatment of Claims from Initial Noteholder Plan to Third Amended Noteholder Plan**[4]

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| Step One Senior Loan Claims/Step One Senior Loan Guaranty | (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after | The value of the Initial Distributions to the Step One Lenders remains the same; *provided*, that the form of the Initial Distributions has been changed from a "strip" of consideration to all New Common Stock/New Warrants. |

---

[3] Portions of this Notice are repetitive of discussions contained in the (i) Memorandum of Law of Noteholder Plan Proponents (I) in Support of Confirmation of the Noteholder Plan and (II) in Response to Objections to the Noteholder Plan [ECF No. 8171] (the "Noteholder Memorandum of Law") and (ii) Notice of Filing of Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [ECF No. 8509] (the "Second Amended Plan Notice"), but are provided herein for ease of reference for parties in interest.

[4] All estimated recoveries are based on the Debtors' asserted distributable enterprise value ("DEV") for the Debtors of $6.75 billion, with such distributable enterprise value allocated 8.4% to Tribune and 91.6% to Tribune's subsidiaries (on a consolidated basis). Estimated recoveries are also dependant on the outcome of the PHONES Notes Claims Resolution. The Noteholder Plan Proponents believe the actual DEV is materially higher than $6.75 billion and, in that regard, have submitted the Rebuttal Report to Expert Valuation Report Submitted by Lazard Frères & Co. LLC prepared by Raymond James, challenging the $6.75 billion DEV.

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| Claims (collectively, "Step One Lender Claims") | accounting for (x) Initial Distributions in respect of non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step One Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust.<br>Estimated recovery on account of Initial Distributions: 34.2% - 38.7%. | In addition, based on the enforcement of the loan sharing provisions of the Senior Loan Agreement, the Step One Lenders will no longer have a contingent interest in value that was originally reserved for Step Two Lender Claims pending the determination of the enforcement of such loan sharing provisions. Estimated recovery on account of Initial Distributions: 34.1%[5] to 38.7%. |
| Swap Parent Claim/Swap Guaranty Claims (collectively, "Swap Claims") | The Swap Parent Claim and Swap Guaranty Claims were classified as a Step One Senior Loan Claim and Step One Senior Loan Guaranty Claims, respectively, and were to receive the treatment afforded to Step One Lender Claims.<br>Estimated recovery on account of Initial Distributions: 34.2% - 38.7%. | The value of the Initial Distributions to the Holder of the Swap Claims remains the same; *provided*, that the form of the Initial Distribution has been changed from a "strip" of consideration to all New Common Stock/New Warrants.<br>The Swap Claims are now separately classified from the Step One Lender Claims. Estimated recovery on account of Initial Distributions: 34.1%[6]-38.7%. |
| Step Two Senior Loan Claims/Step Two Senior Loan Guaranty Claims (collectively, "Step Two Lender Claims") | <u>If the loan sharing provisions contained in Senior Loan Agreement were enforced</u>: (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus | Under the Third Amended Noteholder Plan, the loan sharing provisions contained in the Senior Loan Agreement are deemed to be enforceable; accordingly, holders of Step Two Lender Claims will receive: (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves |

---

[5] Estimated low-end Initial Distribution recovery percentage has decreased slightly after taking into account higher reserve necessary to provide for satisfaction in full of Other Guarantor Debtor Claims based on revisions to the treatment of such Creditor Classes.

[6] *See* footnote 5, *supra*.

5

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
|  | Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step Two Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions if loan sharing provisions were enforced: 34.2% - 38.7%.<br><br>If the loan sharing provisions were not enforced or if consideration of the enforceability of the sharing provisions was deferred: the value of the Initial Distributions otherwise allocable to the Step Two Lenders would have been placed in reserve. Estimated recovery on account of Initial Distributions if loan sharing provisions were not enforced or if consideration of the enforceability of the loan sharing provisions was deferred: 0%. | sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Step Two Senior Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Estimated recovery on account of Initial Distributions: 34.1%[7] -38.7%.<br><br>With enforcement of the loan sharing provisions, the value of the Initial Distributions to the Step Two Lenders in connection with such enforcement remains the same; *provided*, that the form of the Initial Distribution has been changed from a "strip" of consideration to all New Common Stock/New Warrants. |
| Bridge Loan Claims/Bridge Loan Guaranty Claims (collectively, "Bridge Lender Claims") | (i) a pro rata share of the Debtors' remaining distributable enterprise value (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants) after accounting for (x) Initial Distributions in respect of Non-LBO Claims and (y) reserves sufficient to pay Non-LBO Claims in full (plus Postpetition Interest through December 8, 2012) would be placed in reserve for ultimate distribution to Step One Lenders, Holder of Swap Claims, Step Two Lenders and/or Bridge Lenders; (ii) | No change provided that the reserve in respect of the Bridge Lender Claims has been changed from a "strip" of consideration to all New Warrants. |

---

[7] *See* footnote 5, *supra*.

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Bridge Loan Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. | |
| Senior Noteholder Claims | (i) a pro rata share of the distributable enterprise value allocable to Tribune, plus a pro rata share of the Initial Distributions otherwise allocable to the PHONES Notes Claims and the EGI-TRB LLC Notes Claims pursuant to applicable subordination provisions (in each case, in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants), less the amount of Cash necessary to ensure that all holders of Other Non-Guarantor Debtor Claims are paid in full, in Cash, including Postpetition Interest; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a Senior Noteholder Claim elected not to transfer its state law avoidance claims to the Creditors' Trust. | No change. |
| Other Parent Claims | (i) a pro rata share of distributable value allocable to Tribune (in the form of a "strip" of consideration consisting of Cash, New Senior Secured Term Loan and New Common Stock/New Warrants); (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of an Other Parent Claim elected not to transfer its state law avoidance claims to the Creditors' Trust. | No change |
| Other Non-Guarantor Debtor Claims | Payment in full, in Cash, including Postpetition Interest. | No change. |
| Other Guarantor Debtor Claims | (i) Cash equal to 8% of the allowed amount of the Other Guarantor Debtor Claim; and (ii) Distribution Trust | Instead of receiving a flat 8% Cash recovery as an Initial Distribution, each Holder of an Allowed Other |

7

| Class | Treatment under Initial Noteholder Plan | Cumulative Changes in Treatment from Initial Noteholder Plan to Third Amended Noteholder Plan |
|---|---|---|
| | Interests. | Guarantor Debtor Claim will receive an Initial Distribution of Cash equal to (i) the percentage recovery ascribed to the applicable Other Guarantor Debtor as set forth on Exhibit A hereto, or (ii) in the event any Holder of an Allowed Other Guarantor Debtor Claim disputes the recovery percentage set forth in (i) above, such other percentage recovery as determined by a Final Order. Treatment is otherwise not changed. |
| EGI-TRB LLC Notes Claims | (i) no Initial Distributions; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of an EGI-TRB LLC Notes Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. Any distributions received by holders of EGI-TRB LLC Notes Claims on account of trust interests will be allocated in accordance with the subordination provisions in the EGI-TRB LLC Notes. | No change. |
| PHONES Notes Claims | (i) no Initial Distribution; (ii) Distribution Trust Interests; and (iii) Creditors' Trust Interests, unless the Holder of a PHONES Notes Claim elected not to transfer its state law avoidance claims (if any) to the creditors' trust. Any distributions received by holders of PHONES Notes Claims on account of trust interests will be allocated in accordance with the subordination provisions in the PHONES Notes indenture. | No change. |
| Subordinated Securities Claims | (i) no Initial Distributions; (ii) Distribution Trust Interests; and (ii) Creditors' Trust Interests, unless the Holder of a Subordinated Securities Claim elected not to transfer its state law avoidance claims (if any) to the Creditors' Trust. | No change. |

## II.   Amendments Implemented in Amended Noteholder Plan

As explained in the Noteholder Memorandum of Law, in addition to modifying the Initial Noteholder Plan to address certain third party confirmation objections, the modifications contained in the Amended Noteholder Plan provided for, among other things, the following:[8]

- Moving the resolution process for all Disputed General Unsecured Claims, other than those unsecured Claims that are disputed in connection with the LBO-Related Causes of Action, from the Litigation Trust to the Distribution Trust. *See* Third Amended Noteholder Plan §§ 7.16.2, 7.16.15 and 8.1.

- Refining the federal income tax treatment of the Litigation Trust, Creditors' Trust and Distribution Trust. *See* Third Amended Noteholder Plan §§ 5.17.12, 5.18.13 and 7.16.14.

- Providing that the CEO of Reorganized Tribune will only serve on the Board of Reorganized Tribune if such CEO's employment agreement so provides. *See* Third Amended Noteholder Plan § 5.3.2.

- Refining certain indemnification provisions in connection with the Litigation Trust, the Creditors' Trust and the Distribution Trust. *See* Third Amended Noteholder Plan §§ 5.17.10, 5.18.15 and 7.16.12.

- Clarifying the provisions for the prosecution of State Law Avoidance Claims by the Creditors' Trust and the transfer of certain causes of action commenced on behalf of Tribune's Estate to the Creditors' Trust. *See* Third Amended Noteholder Plan §§ 5.15 and 5.18.2.

- Providing that Classes of Claims entitled to vote in which no Creditor voted are deemed to reject the Noteholder Plan as opposed to accept the Noteholder Plan. *See* Third Amended Noteholder Plan § 4.5.

- Clarifying that the Noteholder Plan is a single joint plan for all of the Debtors, but is not premised on substantive consolidation. *See* Third Amended Noteholder Plan § 5.1.

- Incorporating the Intercompany Claims Settlement. *See* Third Amended Noteholder Plan §§ 1.1.139, 3.2.11(b), 3.3.4(b), 3.4.8(b), 3.5.3(e) and 5.19.

- Clarifying the Reorganized Debtors' document retention responsibilities. *See* Third Amended Noteholder Plan §§ 5.17.15, 5.18.18, and 7.16.17.

---

[8] Although the changes set forth in this section II were first incorporated in the Amended Noteholder Plan, references indicate where such provisions appear in the Third Amended Noteholder Plan for ease of reference.

- Reinstating certain officers, directors and employees rights to retain bonuses and equity based compensation. *See* Third Amended Noteholder Plan § 6.5.

- Clarifying Reorganized Tribune's indemnification obligations with respect to prepetition Claims of certain directors, officers and employees. *See* Third Amended Noteholder Plan §§ 6.5 and 6.7.

- Modifying the procedures pursuant to which the Noteholder Plan Proponents can seek to have reasonable fees and expenses of their professionals reimbursed. *See* Third Amended Noteholder Plan § 9.1.1.

### III. Amendments Implemented in Second Amended Noteholder Plan

Pursuant to the Second Amended Noteholder Plan, two primary modifications were made to the Amended Noteholder Plan. First, changes were made in order to permit a significantly greater amount of equity value (in the form of New Common Stock and/or New Warrants) in Reorganized Tribune to be distributed to Creditors as of the Effective Date of the Noteholder Plan, while at the same time holding sufficient DEV in reserve to pay Non-LBO Creditors in full, plus Postpetition Interest, in the event the Litigation Trust is successful in prosecuting the LBO-Related Causes of Action against the Senior Lenders. Second, changes were made in order to enforce the Senior Loan Sharing Provisions contained in the Senior Loan Agreement such that Step Two Lenders will receive their Initial Distributions under the Noteholder Plan even if obligations incurred in connection with Step Two of the LBO are avoided and obligations incurred in connection with Step One are not avoided as a result of the LBO-Related Causes of Action.

As a result of the modifications set forth initially in the Second Amended Noteholder Plan and carried over to the Third Amended Noteholder Plan, the Third Amended Noteholder

Plan provides for between 70.5% and 79.8% (assuming a DEV of $6.75 billion)[9,10] of the equity value in Reorganized Tribune to be distributed to Creditors as of the Effective Date of the Third Amended Noteholder Plan, whereas the Amended Noteholder Plan provided for between 34.6% and 51.2% (assuming a DEV of $6.75 billion)[11,12] of the equity value in Reorganized Tribune to be distributed to Creditors as of the Effective Date.

Pursuant to the Third Amended Noteholder Plan, between 45.2% and 51.1% (assuming a DEV of $6.75 billion)[13] of the Debtors' DEV will be initially distributed to Creditors upon the Debtors' emergence from chapter 11. In addition, as noted above, based on non-material modifications to the reserve structure in the Noteholder Plan, between 70.5% and 79.8% (assuming a DEV of $6.75 billion)[14] of the equity value of Reorganized Tribune will be distributed to Creditors on the Effective Date, leaving only 20.2% to 29.5% (assuming a DEV of $6.75 billion)[15] of the equity value of Reorganized Tribune held in reserve pending the outcome of the LBO-Related Causes of Action. To the extent the Bankruptcy Court determines that the actual DEV is greater than $6.75 billion (which the Noteholder Plan Proponents believe is the

---

[9] The $6.75 billion DEV is the estimate upon which the Debtor/Committee/Lender Plan [ECF No. 7801] is based, with 8.4% of the DEV allocated to Tribune and 91.6% of the DEV allocated to its Subsidiaries (on a consolidated basis). The ultimate determination of the amount of DEV as well as the allocation of such DEV as between Tribune and its Subsidiaries will be made by the Bankruptcy Court. Recoveries by Creditors of Tribune and its Subsidiaries will depend on these determinations as well as the PHONES Notes Claims Resolution.

[10] The outcome of the PHONES Notes Claims Resolution will determine whether the higher or lower percentage will be distributed.

[11] The low end of the range assumed that; in connection with Confirmation of the Noteholder Plan, the Bankruptcy Court either (i) determined that the Step Two Lenders would not be entitled to share in Step One Lender distributions if Step Two Lender Claims were avoided but Step One Lender Claims were not avoided or (ii) deferred consideration of the issue. The Third Amended Noteholder Plan provides that Step Two Lenders will share in Step One Lender distributions even when Step Two Lender Claims are avoided but Step One Lender Claims are not avoided.

[12] *See* footnote 10, *supra*.

[13] *See* footnote 10, *supra*.

[14] *See* footnote 10, *supra*.

[15] The outcome of the PHONES Notes Claims Resolution will determine whether the higher or lower percentage will be held in reserve.

11

case), the percentage of equity distributed to Creditors as of the Effective Date would increase and the percentage of equity held in reserve would decrease correspondingly.

For example, if the Bankruptcy Court determines that the DEV is $8.00 billion, between 51.5% and 56.5%[16] of the Debtors' DEV will be initially distributed to Creditors upon the Debtors' emergence from chapter 11. In addition, at an $8.00 billion DEV, based on non-material modifications to the reserve structure in the Noteholder Plan, between 73.9% and 81.1%[17] of the equity value of Reorganized Tribune will be distributed to Creditors as of the Effective Date, leaving only 18.9% to 26.1%[18] of the equity value of Reorganized Tribune held in reserve pending the outcome of the LBO-Related Causes of Action.

The following charts compare the initial allocation of equity value in Reorganized Tribune as of the Effective Date among Creditors and the reserves established under the Amended Noteholder Plan and the current version of the Noteholder Plan, respectively, based on (i) an illustrative DEV for the Debtors of $6.75 billion and $8.00 billion with such DEV allocated 8.4% to Tribune and 91.6% to Tribune's subsidiaries (on a consolidated basis) and (ii) the outcome of the PHONES Notes Claims Resolution.

---

[16] *See* footnote 10, *supra*.

[17] *See* footnote 10, *supra*.

[18] *See* footnote 15, *supra*.



## Initial Allocation of Equity (Low PHONES)*

Legend:
- Non-LBO Creditors Debt Reserve
- Non-LBO Creditors – Initial Distribution
- Bridge Loan Claims – Reserve
- Step Two Lender Claims – Initial Distribution
- Swap Claims - Initial Distribution
- Step One Lender Claims – Initial Distribution

*\* Percentages assume that all initial distributions are in the form of Class A New Common Stock and the Warrants allocable to the Distribution Trust on an as-converted basis.*



*\* Percentages assume that all initial distributions are in the form of Class A New Common Stock and the Warrants allocable to the Distribution Trust on an as-converted basis.*

The foregoing percentages of distribution are premised upon (i) the enforcement of the Senior Loan Sharing Provisions contained in Senior Loan Agreement and (ii) an Initial Distribution only in the form of New Common Stock and/or New Warrants to the holders of Step One Lender Claims and Step Two Lender Claims.

In addition to the foregoing modifications, further amendments were contained in the Second Amended Noteholder Plan to, among other things, resolve additional third party objections to the Noteholder Plan.

## IV. Amendments Implemented in Third Amended Noteholder Plan

Pursuant to the Third Amended Noteholder Plan, two additional primary modifications have been incorporated. First, as noted in the chart in Section I above, the Third Amended Noteholder Plan provides for the separate classification of the Swap Parent Claim and Swap Guaranty Claim from the Step One Senior Loan Claims and Step One Guaranty Claims, respectively. Through this amendment, the Initial Distributions to the Holder of the Swap Claims does not change and, thus, the Holder of the Swap Claims will still receive, as of the Effective Date of the Third Amended Noteholder Plan, its pro rata share of the Debtors' remaining distributable enterprise value after taking into account (i) Initial Distributions to holders of Senior Noteholder Claims, Other Parent Claims and Other Guarantor Debtor Claims and (ii) the reserves established to pay all non-LBO creditors in full, plus Postpetition Interest through December 8, 2012.

The second primary modification contained in the Third Amended Noteholder Plan, also reflected in the chart in Section I above, provides for each Holder of an Allowed Other Guarantor Debtor Claim to receive its (i) "natural recovery" based on an entity-by-entity valuation prepared by the Debtors, which is premised on a $6.75 billion total DEV and the allocation of the total DEV among all of the Debtor entities, as opposed to a flat 8% Initial Distribution or (ii) to the extent disputed by any such Holder, such other percentage recovery as is determined by a Final Order. The estimated Other Guarantor Debtor Claims Initial Distribution is reflected on Exhibit A hereto. If and to the extent the Court ultimately determines that the DEV is higher than $6.75 billion, then the natural recovery to which each Holder of an Allowed Other Guarantor Debtor

15

Claim is entitled will increase accordingly. While the Noteholder Plan Proponents do not believe this change was necessary, it has been made to resolve an objection by the proponents of the DCL Plan Proponents that the flat 8% recovery to Holders of Other Guarantor Debtor Claims violated provisions of the Bankruptcy Code.

In addition, the Noteholder Plan Proponents will be modifying the proposed Certificate of Incorporation included in the Plan Supplement to remove the provisions thereof that require the Reorganized Debtors' officers, directors and employees to cooperate with the Distribution Trust, Litigation Trust and Creditors' Trust as comparable provisions are contained in the Third Amended Noteholder Plan and applicable trust agreements. Finally, the Noteholder Plan Proponents will be revising the Certificate of Incorporation for Reorganized Tribune to eliminate restrictions on the ability of the Reorganized Debtors' officers and directors to obtain the benefit of directors and officers liability insurance in connection with violation of the foregoing cooperation provisions and to permit the size of Reorganized Tribune's board to be increased from seven (7) to nine (9) members.

Dated: May 17, 2011

| | |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD LLP<br>Daniel H. Golden<br>Philip C. Dublin<br>One Bryant Park<br>New York, NY 10036<br>(212) 872-1000<br><br>*Counsel for Aurelius Capital Management, LP* | ASHBY & GEDDES, P.A.<br><br>*/s/ William P. Bowden*<br>William P. Bowden (I.D. No. 2553)<br>Amanda M. Winfree (I.D. No. 4615)<br>500 Delaware Avenue, P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888 |

Signature Page for Notice of Filing of Third Amended Noteholder Plan

| | |
|---|---|
| McCARTER & ENGLISH, LLP<br>David J. Adler<br>245 Park Avenue<br>New York, NY 10167<br>212-609-6800 | McCARTER & ENGLISH, LLP<br><br>/s Katharine L. Mayer<br>Katharine L. Mayer (I.D. No. 3758)<br>Renaissance Centre<br>405 N. King Street<br>Wilmington, DE 19801<br>302-984-6300 |

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

Signature Page for Notice of Filing of Third Amended Noteholder Plan

| | |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | BIFFERATO GENTILOTTI LLC |
| /s Matthew B. Stein____ | Garvan F. McDaniel (I.D. No. 4167) |
| David S. Rosner | 800 N. King Street, Plaza Level |
| Sheron Korpus | Wilmington, Delaware 19801 |
| Matthew B. Stein | Tel:  (302) 429-1900 |
| 1633 Broadway | Fax:  (302) 429-8600 |
| New York, New York 10019 | |
| Tel:  (212) 506-1700 | |
| Fax:  (212) 506-1800 | |

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

Signature Page for Notice of Filing of Third Amended Noteholder Plan

| | |
|---|---|
| BROWN RUDNICK LLP<br>Robert J. Stark<br>Martin S. Siegel<br>Gordon Z. Novod<br>Seven Times Square<br>New York, NY 10036<br>212-209-4800 | SULLIVAN HAZELTINE ALLINSON LLC<br>*/s/ William D. Sullivan*<br>William D. Sullivan (I.D. No. 2820)<br>Elihu E. Allinson, III (I.D. No. 3476)<br>901 N. Market Street, Suite 1300<br>Wilmington, DE 19801<br>302-428-8191 |

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

Signature Page for Notice of Filing of Third Amended Noteholder Plan