# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

DANIEL H. GOLDEN
212.872.8010/fax: 1.212.872.1002
dgolden@akingump.com

May 20, 2011

The Honorable Kevin J. Carey
United States Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, DE 19801

Re: *In re Tribune Company, et al.*, 08-13141 (KJC)

**Reply to Third Party Letter Confirmation Objections to the Noteholder Plan**

Dear Chief Judge Carey:

The Noteholder Plan Proponents[1] submit this letter brief in response to the post-trial letter briefs filed by: (i) Samuel Zell ("Zell") [ECF No. 8884] (the "Zell Brief"); (ii) EGI-TRB LLC ("EGI") [ECF No. 8885] (the "EGI Brief"); and (iii) certain directors and officers (the "D&Os") [ECF No. 8888] (the "D&O Brief" and, together with the Zell Brief and the EGI Brief, the "Letter Briefs"),[2] as they pertain to the Noteholder Plan. For the reasons set forth below, and in the Noteholder Confirmation Brief and Gropper Declaration, the Noteholder Plan Proponents respectfully submit that the Letter Briefs' confirmation objections should be overruled.

## I. The Zell Brief

Zell's central premise continues to be that the LBO Claims against Zell and EGI (collectively, the "Zell/EGI Claims") have no merit and, therefore, prosecution of such claims should be barred. *See* Zell Brief at 1-4. This premise is fundamentally flawed given the conclusions of the Examiner, who conducted by far the most comprehensive and independent review of the Zell/EGI Claims. Based on the Examiner's findings, the intentional and constructive fraudulent conveyance claims (against, among others, Zell and EGI) at Step Two alone have a substantial likelihood of success.[3] The Examiner also concluded that the other Zell/EGI Claims – breach of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Post Trial Brief of the Noteholder Plan Proponents (Part I), dated May 11, 2011 [ECF No. 8898] (the "NPP Post Trial Brief").

[2] This letter also applies to the joinder of certain former directors and officers to the D&O Brief [ECF No. 8889].

[3] *See* NPP Post Trial Brief at 20-22, 39-42; *see also* NPP 782 (Exam'rs Rpt.), Vol. II at 32, 220, 226, 229, 240.

fiduciary duty, aiding and abetting, illegal corporate distribution, and equitable subordination and disallowance at Step Two – are far from meritless.[4]

While Zell distorts the Examiner's findings in an unsuccessful attempt to support his assertions, it is important to note that Zell never sought to elicit evidence that the Zell/EGI Claims lack merit. Indeed, Zell did not cross-examine a single witness regarding the *bona fides* of the Zell/EGI Claims or call his own witness to testify that such claims have no value. The only "support" Zell is able to muster is the testimony of Professor Black, which deserves no evidentiary weight. While Black opined that none of the Zell/EGI Claims "have a meaningful chance of success,"[5] he acknowledged that his investigation of the LBO Claims was a mere fraction of the analysis undertaken by the Examiner.[6] Black never even bothered to review the complaint asserting the causes of action he allegedly assessed or the deposition/interview transcripts of applicable witnesses.[7] Moreover, he admitted that he did his computations "in my head" – far from the kind of verifiable expert analysis that courts accept – and the Court ultimately barred him from testifying as a decision-tree expert or as a valuation expert.[8]

A review of certain Zell/EGI Claims easily justifies their prosecution:

Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty. The evidence is uncontroverted that Zell was the principal architect of the disastrous LBO.[9] Elected to Tribune's board on May 9, 2007 (*before* the closing of *both* Step One and Step Two), Zell played a central role in spearheading the LBO, including offering significant incentives to Company officers and directors to induce them to support the transaction whether or not it was in the Company's best interest.[10] For example, Zell and EGI agreed that certain corporate insiders, including CEO

---

[4] *See* NPP 782 (Exam'rs Rpt.), Vol. II at 373 (concluding breach of fiduciary duty claim at Step Two was "somewhat unlikely" to succeed – a conclusion that is just below "equipoise" on the Examiner's seven-point spectrum of conclusions (*see* Vol. I at 6)); Vol. II at 411 (same for illegal corporate distributions claim at Step Two); Vol II at 395 (concluding aiding and abetting claim at Step Two was "reasonably unlikely" to succeed – a conclusion that is not the lowest assessment on the Examiner's spectrum of conclusions); Vol II at 339 (same for equitable subordination and disallowance claims at Step Two).

[5] *See* 3/10/11 Trial Tr. 50:10-19 (Black).

[6] *See* 3/9/11 Trial Tr. 98:9-13; 196:14-16 (Black).

[7] *See* 3/9/11 Trial Tr. 194:22-196:22, 197:16-199:9 (Black); *see Calhoun v. Honda Motor Co., Ltd.*, 738 F.2d 126, 131-132 (6th Cir. 1984) (affirming judgment against plaintiff where plaintiff's expert did not know key facts, without which his assumption was "baseless").

[8] 3/9/11 Trial Tr. 229:7-231:2 (Black); 4/12/11 Trial Tr. 123:16-22, 124:21-125:3 (Black); *see Oddi v. Ford Motor Co.*, 234 F.3d 136, 158, 156 (3d Cir. 2000) (plaintiff could not establish negligence claims where expert's opinion was based on "little, if any, methodology beyond his own intuition" and on "haphazard, intuitive inquiry" that could not be tested, submitted to peer review or assessed by court).

[9] *See, e.g.*, NPP 782 (Exam'rs Rpt.), Vol. I at 381-401, 653-670; Third-Party Compl. ¶¶ 2-3, 57-58, 109-113, 118-131, 348-368.

[10] *See* Third-Party Compl. ¶¶ 118-131.

Dennis FitzSimons, would receive millions of dollars in phantom stock and other special incentives upon consummation of the LBO and, upon information and belief, signaled to then-Treasurer Chandler Bigelow that, if the deal were to close, he would be promoted to CFO (as in fact occurred in March 2008).[11] That Zell purportedly "abstained" from formal Board action relating to the LBO cannot immunize him from liability for his substantial role in ensuring that the transaction would go forward.

The claims against Zell for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are amply supported by the Examiner's findings of willful misconduct on the part of Tribune's senior financial officers at Step Two and significant lapses by Tribune's Board during the period leading to Step Two. With regard to the latter, the Examiner concluded that "reasonable people could disagree" about whether the conduct of Tribune directors at Step Two amounted to a breach of fiduciary duty.[12] Significantly, the Examiner expressly stated that his investigation was incomplete with respect to Zell's and EGI's potential liability for aiding and abetting breach of fiduciary duty.[13] According to the Examiner, "with the benefit of more time, he would have further investigated the interactions between personnel at the Zell Group and Tribune's senior financial management in relation to the October 2007 projections and the senior financial management's interactions with the Zell Group and VRC."[14] This is hardly the exoneration that Zell would paint it to be.

Fraudulent Conveyance/Preference. Far from vindicating EGI and Zell, the Examiner's Report provides significant support for a number of the avoidance claims against them. For example, the Examiner's determination that a court was "highly likely" to conclude that Tribune was rendered insolvent by the Step Two transactions provides a firm foundation for the constructive fraudulent transfer claim against EGI.[15] The Examiner's finding regarding intentional fraud at Step Two also provides strong support for the intentional fraudulent transfer claim against EGI. In connection with Step Two, EGI sold 1,470,588 shares of Tribune stock for $50 million in value, and received over $206 million in value for the initial EGI-TRB LLC Note (the "Redeemed EGI Note"). As discussed in the Third-Party Complaint, the Redeemed EGI Note was redeemed by Tribune for the same amount that EGI would have received if the Redeemed EGI Note had been exchanged for stock and then cashed out at $34/share as part of the completion of the LBO.[16] Accordingly, because the redemption of the Redeemed EGI Note was

---

[11] *See id.* ¶¶ 124, 128.

[12] *See* NPP 782 (Exam'rs Rpt.), Vol. II at 385.

[13] *See id.* at 397.

[14] *Id.*

[15] *See* NPP 782 (Exam'rs Rpt.), Vol. II at 220, 229.

[16] *See* Third-Party Compl. ¶¶ 349-353. Under the Redeemed EGI Note, Tribune had the option to exchange any portion of the outstanding principal owed on the Redeemed EGI Note for shares of Tribune stock at any time – at the same price as paid for stock in connection with the LBO, $34 per share. *See id.* ¶ 352; Redeemed EGI Note § 4.

3

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

functionally equivalent to the redemption of outstanding stock at Step Two, the consideration paid by Tribune for the Redeemed EGI Note falls squarely within the ambit of the fraudulent transfer claims asserted against the other Step Two shareholders – claims that the Examiner expressly found to be meritorious.

Moreover, the Examiner's Report confirms the existence of a colorable preference claim against EGI.[17] The Examiner's view that it is "reasonably likely" that a court would ultimately find an "ordinary course of business" defense to be valid (while questioning the viability of a "new value" defense) underscores the Examiner's assessment that there remains a real possibility that such a defense would fail.[18]

The following additional "bases" upon which Zell seeks to deny confirmation of the Noteholder Plan should also be rejected.

### A. The Correctly Applied Standard of Judicial Vigilance Requires Prosecution of the Zell/EGI Claims

Zell contends that "the standards for judicial vigilance in policing against frivolous litigation by litigation trustees demand that the [Zell/EGI Claims] not go forward into the Litigation Trust" because "both the Examiner and Professor Black found that the claims against Mr. Zell did not measure up" under the standard enunciated by the Seventh Circuit in *Maxwell v. KPMG LLG*, 520 F.3d 713 (7th Cir. 2008). Zell Brief at 1. This argument has no merit. First, as set forth above, Zell has distorted the Examiner's findings and inflated the significance of Black's analysis. Second, Zell's reliance on *Maxwell* is entirely misplaced. In *Maxwell*, the Seventh Circuit characterized the subject claims as "frivolous" in affirming summary judgment for the defendant. *See* 520 F.3d at 719. The Seventh Circuit explained that "frivolousness must depend ... on the probability of the suit's succeeding," and "[i]f that probability is very low, the suit is frivolous." *Id.* The court illustrated its calculus with two hypotheticals – one with a "1 in 1000" probability of success, and another with a probability of success of "1 in 10,000." *Id.* at 718.

---

Moreover, if Step Two failed to close, the outstanding principal amount owed on the Redeemed EGI Note would have been mandatorily exchanged for shares of Tribune stock without any further action by Tribune or EGI, again using the same $34/share price. *See id.*

[17] NPP 782 (Exam'rs Rpt), Vol. II at 311, 314.

[18] *See id.* at 317, 319. In an attempt to distance himself from the avoidance claims, Zell challenges the allegation that EGI is his alter-ego. As is clearly alleged in the Third-Party Complaint, however, EGI was formed solely for the purpose of entering into and consummating the LBO spearheaded by Zell; Zell is EGI's founder and President; EGI is, upon information and belief, wholly owned by Sam Investment Trust, an Illinois Trust established for the benefit of Zell and his family; and EGI has no board of directors or similar board of managers. *See* Third-Party Compl. ¶ 57. These allegations give rise to a powerful inference that Zell controlled EGI at all relevant times, and that there existed a unity of interest between Zell and EGI such that any individuality or separateness between them was completely lacking – in short, EGI was Zell's alter-ego.

Here, in stark contrast, the Zell/EGI Claims have much greater probabilities of success and are anything but "frivolous," especially as that term was used in *Maxwell*.

### B. Prosecution of the Zell/EGI Claims is Appropriate

Without any evidentiary support, Zell argues that Aurelius is incented to pursue "frivolous" prosecution of the Zell/EGI Claims and otherwise engage in "a litigation feeding-frenzy." Zell Brief at 2. Zell's rhetoric should be seen for what it is – a putative defendant doing everything in his power to prevent prosecution of litigation. As noted above, the Zell/EGI Claims, like all other LBO Claims, are colorable and valuable. The reasons why Aurelius did not oppose the pre-Examiner's Report April Plan (and the release of the Zell/EGI Claims) were addressed at trial and Zell's attempt to mischaracterize the record should not be countenanced by this Court.[19] Moreover, contrary to Zell's assertions, pursuit of the Zell/EGI Claims has no legal or logical bearing on the priority of the EGI-TRB LLC Notes (the "Outstanding EGI Notes") vis-à-vis the PHONES Notes. Finally, even if Aurelius harbored a bias towards the Zell/EGI Claims (which it does not), the trustees and advisory boards are bound by their fiduciary duties to pursue only those claims that maximize value for trust beneficiaries.[20]

### C. The Noteholder Plan Complies with the Bankruptcy Code

Zell contends, again based on *Maxwell*, that the Noteholder Plan has not been proposed in good faith pursuant to Bankruptcy Code section 1129(a)(3). *See* Zell Brief at 2-3. As set forth above, the holding in *Maxwell* actually supports prosecution of the Zell/EGI Claims and, while the decision does not address section 1129(a)(3), other courts have held that preservation of colorable causes of action for the benefit of creditors evidences compliance with such section.[21]

Zell also argues that the Noteholder Plan is not in the best interest of creditors because, among other things, (i) prosecution of the Zell/EGI Claims will, to the detriment of unsecured creditors, increase (a) Zell's prepetition indemnification claim against Tribune and (b) Zell's litigation costs that are reimbursable under the Debtors' insurance policies thereby reducing available proceeds and (ii) creditors would be better served in a chapter 7 where such litigation would never be

---

[19] *See* 3/15/2011 Trial Tr. 229:25 – 232:3 (Gropper); 3/16/11 Trial Tr. 82:19-83:6 (Gropper). While Aurelius did not object to the April Plan, the PHONES Notes Indenture Trustee, one of the proponents of the Noteholder Plan, vigorously objected to the April Plan.

[20] *See* NPP §§ 5.17.3, 5.18.4; NPP 2224 (Gropper Declaration) ¶¶ 16, 30-31.

[21] *See, e.g., In re Multiut Corp.*, No. 09-17575 (JHS), 2011 WL 1486035, *12-13 (Bankr. N.D. Ill. Apr. 19, 2011) (denying confirmation of chapter 11 plan because, among other things, the plan violated 11 U.S.C. § 1129(a)(3) by failing to adequately preserve claims and causes of action the debtor may have had against third parties); *In re Michael Day Enters., Inc.*, No. 09-55159 (MSS), 2010 WL 4917611, *5 (Bankr. N.D. Ohio Aug. 13, 2010) (confirming chapter 11 plan upon finding "[t]he Plan has been proposed in good faith as a mechanism for liquidating remaining assets of the Estate . . . and therefore satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code."); *see also* NPP 2224 (Gropper Declaration) ¶¶ 30-31 (Noteholder Plan satisfies 11 U.S.C. § 1129(a)(3)).

sought. *See* Zell Brief at 3. The foregoing arguments should be rejected. First, there is no evidence in the record that Zell is entitled to an indemnification claim. Second, even if he has such a claim, upon successful prosecution of the Zell/EGI Claims, the impact of any allowed prepetition indemnification claim will be more than offset by the 100 cent dollars recovered from the successful litigation. Third, Zell provides no evidence that creditors would fare better in a chapter 7 case.

Finally, Zell asserts that the Noteholder Plan violates Bankruptcy Code section 1129(b) because it requires "Mr. Zell and EGI to defend against baseless litigation before recovering on their claims." *See* Zell Brief at 3. This objection rings hollow. Zell and EGI hold disputed claims that are not entitled to receive a recovery until their claims are allowed or otherwise resolved.[22]

### D. Additional Objections

Zell raises a number of additional objections in the event the Zell/EGI Claims proceed as expected, each of which is addressed below:

- Zell requests that the Court clarify that it has not determined that the Zell/EGI Claims have merit and condition the right of any trust to pursue such claims upon making a *prima facie* case that the Zell/EGI Claims are reasonably likely to succeed. *See* Zell Brief at 4. This request misstates the applicable legal standard for the estate or its successor to pursue causes of action, which is merely that such claims be colorable (which the Zell/EGI Claims clearly are).[23] Indeed, in granting the Committee standing to pursue the Zell/EGI Claims, the Court already determined such claims are colorable.[24]

- Zell requests that the Court prevent Aurelius and PHONES Notes Holders from serving on trust advisory boards or selecting the respective trustees, at least with respect to the Zell/EGI Claims. *See* Zell Brief at 4. This request should be denied. First, as noted above, members of the trust advisory boards and the trustees will have fiduciary duties to make value-maximizing decisions regarding the Zell/EGI Claims. Second, having creditor representatives that are incentivized to zealously prosecute claims is preferred.[25]

---

[22] *See* 11 U.S.C. § 502(a); *In re Weiss-Wolf, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986) ("A debtor need not, of course, pay disputed claims until the claims are fixed and the dispute resolved.").

[23] *See, e.g., In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004).

[24] *See* UCC Standing Order at 2 [ECF No. 6150].

[25] *See, e.g.*, 3/16/11 Trial Tr. 238:5 – 239:6 (Rock) ("Any sort of class based litigation raises the problem how do you provide, how do you identify an actor who is going to zealously prosecute the litigation on behalf of the beneficiaries of the litigation? As I understand the litigation trust structure, the idea is to create the litigation trust and to put in charge of the litigation a party that has strong incentives to zealously prosecute that litigation . . . . [I]t seems to me zealous prosecution of the claims is exactly what we want and the litigation trust structure seems to me to be quite an effective means of providing for zealous litigation."). Moreover, allowing a constituency with no

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

- Zell asserts that because Tribune's certificate of incorporation (including related indemnification provisions) is executory, it cannot be partially assumed to eliminate indemnification for LBO Claims and, if assumed, the Noteholder Plan must fully indemnify current Tribune directors. *See* Zell Brief at 5. Numerous courts, however, have held that certificates of incorporation do not constitute executory contracts with directors and officers and, therefore, the lack of indemnification for officers and directors in respect of the LBO Claims under the Noteholder Plan is permissible.[26]

- Zell asserts that, if the Court determines that Tribune's certificate of incorporation is not executory, a determination as to whether Zell is entitled to administrative priority for his indemnification claims should be deferred until he has had an opportunity to present evidence as to the benefit of his post-petition services. *See* Zell Brief at 5. This modification should be rejected because the law is well-settled that indemnification claims arising out of a prepetition transaction are not entitled to administrative priority.[27]

## II. The EGI Brief and D&O Brief

The EGI Brief joins in the Zell Brief and makes only two additional arguments: (i) the Outstanding EGI Notes are senior in priority to the PHONES Notes and (ii) the Noteholder Plan should not be confirmed because it seeks to circumvent Bankruptcy Code section 546(e). The D&O Brief, as it pertains to the Noteholder Plan, generally restates the same section 546(e) argument.[28]

---

economic stake in a trust to effectively dictate how and if the trust's causes of action are to be pursued runs contrary to precedent in this Circuit. *See* NPP 2474 (NPP Objection) ¶¶ 370-71 (citing authority).

[26] *See, e.g., In re Baldwin-United Corp., D.H.*, 43 B.R. 443, 459-60 (S.D. Ohio 1984); *In re THC Fin. Corp.*, 446 F. Supp. 1329, 1331 (D. Haw. 1977). Further, even courts that have "deemed" indemnification obligations under certificates of incorporation and bylaws to be executory contracts have nevertheless permitted selective assumption and rejection. *See, e.g., In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 4589331, at *25 (Bankr. S.D.N.Y. Dec. 26, 2007) (obligation to indemnify current directors and officers would be "deemed and treated as" executory contract and assumed, but obligation to indemnify former directors and officers would be rejected).

[27] *See, e.g., In re Summit Metals, Inc.*, 379 B.R. 40, 56 (Bankr. D. Del. 2007), *aff'd* 406 Fed. Appx. 634 (3d Cir. 2011) ("Consistently, courts have held that an indemnification claim based upon pre-petition services or conduct is not a cost or expense for services rendered after the commencement of a case. Instead, it is a form of prepetition compensation for services that is not entitled to administrative expense priority.") (internal citations omitted).

[28] The D&O Brief states, with respect to the Bar Order created under the DCL Plan, that "a Plaintiff may well enjoy a double recovery, keeping 100% of the original settlement and collecting in full from the Barred Party without a proportionate fault set-off." D&O Brief at 5. As the Court is fully aware, the Noteholder Plan Proponents strongly oppose the proposed Bar Order contained in the DCL Plan insofar as it provides for proportionate judgment reduction in future litigation against the non-settling defendants. Regardless, claims respecting potential "double recovery" are entirely incorrect because even in the absence of a bar order every dollar received as part of the Proposed Settlement (assuming, *arguendo*, it is approved) automatically reduces the amount that can be collected from the non-settling defendants.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

EGI's first argument is not ripe because the Noteholder Plan does not require the Court to determine the priority of the Outstanding EGI Notes vis-à-vis the PHONES Notes in connection with Confirmation; indeed, it is unlikely the issue will ever need to be decided because if the LBO Claims are successfully prosecuted or, unlike under the DCL Plan, appropriately settled, the Outstanding EGI Notes will be avoided or otherwise be unlikely to receive a recovery. To the extent litigation or settlement of such claims is not successful, neither the Outstanding EGI Notes nor the PHONES Notes will likely receive a recovery.[29] EGI acknowledges that deferral of the issue is an "acceptable result" if clarifying language is included in the confirmation order. *See* EGI Brief at 1. The Noteholder Plan Proponents have no objection to including clarifying language in the confirmation order for the Noteholder Plan.

The objection that the Noteholder Plan inappropriately circumvents section 546(e) through prosecution of state law constructive fraud claims against Tribune's pre-LBO shareholders (the "SLCFC Claims") is meritless. To support this objection, EGI and the D&Os rely on the same arguments they made previously in their unsuccessful objections to the Noteholder Plan Proponents' motion to authorize individual creditors to commence the SLCFC Claims [ECF No. 8201] (the "SLCFC Claims Motion"). These objections should be overruled again.

First, as set forth in detail in the Noteholder Plan Proponents' reply in support of the SLCFC Claims Motion [ECF No. 8403] (the "SLCFC Claims Reply"), which is hereby incorporated, Bankruptcy Code section 546(e), by its plain meaning, applies only to actions undertaken by the "trustee" (i.e., an estate representative), not by individual creditors or assignees thereof. *See* 11 U.S.C. § 546(e).[30] Here, the SLCFC Claims will be brought by or on behalf of individual creditors, their assignees and/or the Creditors' Trust, not by an estate representative. Accordingly, section 546(e), by its express terms, does not apply to the SLCFC Claims.

Second, consistent with the plain language of the statute, the Delaware District Court held in *PHP Liquidating* that section 546(e) applies only to causes of action that belong to a debtor's estate and not those belonging to individual creditors or their assignees.[31] Indeed, at the hearing on the SLCFC Claims Motion, counsel for an objecting party conceded that there was no way to

---

[29] *See* NPP Plan §§ 3.2.9, 3.2.19, 7.15; *see also* 4/13/11 Trial Tr. 96:1-22 (Dublin).

[30] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989) (noting that the law is well-established that "as long as the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain language of the statute.").

[31] *See PHP Liquidating, LLC v. Robbins*, 291 B.R. 603, 607 (D. Del. 2003), *aff'd* 128 F. App'x 839 (3d Cir. 2005) ("[T]he Court concludes that if the avoidance action were brought by a trustee or a debtor-in-possession (or the successor to a debtor-in-possession), the avoidance action would be barred by Section 546(e) of the Bankruptcy Code. However, in this case, PHP LLC has not asserted its claims against Movants in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession. Rather, PHP LLC is bringing the instant claims as a direct assignee of the unsecured creditors. As such, Section 546(e) is not a bar to PHP LLC's claims.").

distinguish *PHP Liquidating*.[32] Not surprisingly, EGI and the D&Os also fail to distinguish *PHP Liquidating*, thus tacitly acknowledging its application here. However, even if section 546(e) were applicable to the SLCFC Claims, which it is not, it would not bar claims to avoid transfers made to EGI on account of privately held securities redeemed by Tribune in connection with the LBO.[33] Indeed, section 546(e) does not extend to private securities transactions.[34]

Third, it is not necessary for the Court to determine whether section 546(e) or any other defense is applicable to the SLCFC Claims in connection with Confirmation as nothing in the Noteholder Plan deprives EGI, the D&Os or any other shareholder defendant in any lawsuit asserting SLCFC Claims from arguing that individual creditors, their assignees, indenture trustees and/or the Creditors' Trust lack standing to prosecute such claims or that section 546(e) bars such claims. Indeed, this Court's order granting the SLCFC Claims Motion [ECF No. 8740] (the "SLCFC Claims Order") expressly provides as such.[35]

Fourth, EGI and the D&Os asserts that the Noteholder Plan should not be confirmed because it permits the SLCFC Claims and intentional fraudulent conveyance claims against the selling shareholders (the "IFC Claims") to be pursued through "dual-track" litigation. EGI Brief at 3; D&O Brief at 2-3. However, the Noteholder Plan, unlike the DCL Plan, does not provide for such dual-track process. Upon the Effective Date of the Noteholder Plan, both the IFC Claims and the SLCFC Claims (collectively, the "State Law Avoidance Claims") will be pursued by the Creditors' Trust.[36] The Litigation Trust, by contrast, will pursue only the Litigation Trust Causes of Action, which will not include any State Law Avoidance Claims.[37]

Finally, EGI argues that the SLCFC Claims and IFC Claims should be viewed as one because courts employ a "transactional approach to determine whether two lawsuits are based on the same cause of action." *See* EGI Brief at 2-3. This "objection" does not apply to the Noteholder Plan because, as explained above, the Creditors' Trust established under the Noteholder Plan will pursue both SLCFC Claims and IFC Claims. To the extent the objection has any bearing on the Noteholder Plan, it should be rejected because it misstates the law. As set forth in the SLCFC Claims Reply, the elements for proving constructive fraud and intentional fraud are quite

---

[32] *See* 3/22/11 Trial Tr. 69:21-24 (Sieger) ("As to the merits, I do have to agree that the *PHP* case has facial appeal and may even have more than facial appeal. It's the one case they cite, frankly, that gives me pause.").
[33] *See* NPP 782 (Exam'rs Rpt.), Ex. 714 at 4.
[34] *See, e.g., Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*, No. 08-23660 (RDR), 2011 WL 1549056, *10 (Bankr. S.D.N.Y. Apr. 21, 2011); *Kipperman v. Circle Trust F.B.O. (In re Grafton Partners, L.P.)*, 321 B.R. 527, 538-41 (B.A.P. 9th Cir. 2005).
[35] *See* SLCFC Claims Order at ¶ 8, n. 2 ("For the avoidance of doubt, by this Order, the Court makes no finding and issues no ruling determining the standing of the Original Plaintiff's Group (or any creditor) to assert the [SLCFC Claims] or whether such claims are preempted or otherwise impacted by 11 U.S.C. 546(e).").
[36] See NPP Plan §§ 5.18.1 – 5.18.3.
[37] *See* NPP Plan § 5.17.2.

different. *See* SLCFC Claims Reply ¶ 7, n. 5; *see also* NPP Post Trial Brief at 72-73. Further, the cases cited by EGI in support of the so-called "transactional approach" have no application here because, in each case, the court adjudicated general issues of claim preclusion, not whether constructive fraudulent conveyance claims are distinct from intentional fraudulent conveyance claims.[38]

## III. Conclusion

For the reasons set forth herein, the Noteholder Plan Proponents respectfully request that the Court overrule the objections in the Third Party Letters and confirm the Noteholder Plan.

Respectfully submitted,

Daniel H. Golden[39]

---

[38] *See, e.g., CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) ("The central issue in this appeal is the claim preclusive effect of the Bankruptcy Judge's final order of confirmation, over [creditor's] objection, on [creditor's] claim against [other creditor]."); *United States v. Athlone, Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) ("This court has on more than one occasion grappled with the difficult question of identity of causes of action for purposes of claim preclusion, and it bears repeating that the term 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes.") (internal citations and quotations omitted). EGI also distorts the holding in *Baron Financial*, 509 F. Supp. 2d 501 (D. Md. 2007). *See* EGI Brief at 3-4. Specifically, the EGI Brief cites to footnote 34 of *Baron* for the proposition that the court granted standing "because the claims were Baron's individual claims, *not* the estate's claims." EGI Brief at 3 (emphasis in the original). However, the EGI Brief omits language from the same footnote stating that the court based its decision, not on the foregoing, but rather "for the reasons discussed" in the body of its opinion – namely, that permitting the suit would not "subvert[] the bankruptcy process to the detriment of [the debtor's] other creditors," the trustee "[did] not seek a first crack at challenging the[] causes of action," the "[t]rustee [did] not view the [] lawsuit as an assault on the creditors' interests or the integrity of the bankruptcy proceedings, and "[t]he trustee ha[d] not sought dismissal of any of the claims . . . as being the property of the estate." *Baron*, 509 F. Supp. 2d at 520-22 (internal citations omitted).

[39] On behalf of the Noteholder Plan Proponents identified on Exhibit A attached hereto.

# Exhibit A

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, NY 10036
212-872-1000

*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
302-654-1888

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre, 405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
1633 Broadway
New York, NY 10019
212-506-1700

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, DE 19801
302-429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market St., Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*