# CHADBOURNE
## & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

David M. LeMay
direct tel (212) 408-5112
dlemay@chadbourne.com

May 20, 2011

The Honorable Kevin J. Carey
United States Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, Delaware 19801

    Re:    In re Tribune Company, et al., Debtors (Case No. 08-13141)

Dear Chief Judge Carey:

    In support of confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (As Modified April 26, 2011) [Docket No. 8769] the "DCL Plan")[1] proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "DCL Proponents"), the DCL Proponents submit this joint omnibus response[2] to the letter briefs submitted by the following third parties: (i) Sam Zell ("Zell") [Docket No. 8884]; (ii) EGI-TRB LLC ("EGI") [Docket No. 8885]; (iii) Certain Directors and Officers ("D&Os") [Docket Nos. 8888, 8889]; and (iv) Secretary of the United States Department of Labor ("DOL") [Docket No. 8890].

    The objecting parties raise a variety of issues, many of which concern aspects of the Creditors' Trust or Litigation Trust. Most do not relate in any way to confirmation of the DCL Plan, and the remaining objections are without merit and should be overruled.

I.    <u>The Litigation Trust Is Proposed In Good Faith</u>.

    a.  *Sam Zell Should Not Be Granted A Release.*

    Zell's letter brief is the latest in a series of demands by Zell for a release from any liability for his involvement in the Tribune leveraged buyout. Although submitted under the

---

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the DCL Plan or the Post-Trial Brief in Support of Confirmation of the DCL Plan [Docket No. 8897] (the "DCL Post-Trial Brief").

[2] The DCL Proponents have authorized the Creditors' Committee to submit this letter on behalf of the DCL Proponent group.



guise of a "good-faith" objection, Zell's objection is really just one more thinly-veiled and improper attempt to prematurely litigate the merits of the claims asserted against him.

The DCL Plan does not seek a determination as to the validity of any claims that may be prosecuted by the trusts, including those that may exist against Zell. Consistent with the goal of maximizing the value of the Estates for unsecured creditors, the DCL Plan simply creates a trust structure that preserves Estate claims and provides a mechanism for the pursuit of those claims. Moreover, the DCL Plan does nothing to impair any defenses that potential defendants, including Zell, may have with respect to such claims.

Nevertheless, Zell contends that because the DCL Proponents have not presented evidence that the claims have merit, the claims should be released. Zell makes much ado about the fact that no one in the DCL Proponents' "parade of experts" testified in support of the claims against Zell or countered the Examiner's findings with respect to those claims. That the DCL Proponents chose not to provide expert testimony on this issue at the confirmation hearing does not impugn the validity of those claims, but rather underscores that the issue has no bearing on confirmation of the DCL Plan and is not presently before the Court. It would be a waste of time and estate resources if the DCL Proponents were required, before a plan has been confirmed and the trusts implemented, to pre-litigate claims that would not be settled or released under the DCL Plan.

Essentially, Zell asks the Court to adopt the position that a release of estate causes of action is the rule rather than the exception. That position is entirely inconsistent with the law in this District, which states that a debtor may only release claims against third parties in "limited circumstances."[3] Zell's demand that the Court prevent preservation of the claims against him turns Zenith on its head and amounts to a request for a gratuitous release. Zell's so-called plan objection, which is nothing more than yet another premature motion to dismiss claims against him, should be rejected by the Court.

> b. *The Trusts Are Controlled By Beneficiaries Who Have An Economic Interest In Maximizing Recoveries.*

Zell asserts, without support, that the Litigation Trust will be incentivized to pursue claims that an independent trustee would not pursue based on his mistaken belief that the DCL Proponents "have self-interested incentives . . . that preclude a truly independent decision."[4] Zell argues that the Litigation Trust is too biased to perform a reasonable cost/benefit analysis of litigation, and then, with the same breath, offers his own partisan assessment that the claims

---

[3] In re Zenith Elecs. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citation omitted).

[4] Zell Letter Brief at 3. It should be noted that the motivations of the DCL Proponents are irrelevant in considering which claims the Litigation Trust will pursue. Zell conflates the DCL Proponents, none of whom will exercise any control over the Litigation Trust, with the Litigation Trust Advisory Board, which will consist of those members of the Creditors' Committee that are or represent beneficiaries of Litigation Trust Interests (excluding JPMorgan).

2

against him have no merit. Needless to say, if potential defendants were given veto power over pursuit of claims, it would be a rare claim indeed that ever saw the light of day.[5]

Moreover, Zell's assertion that the DCL Plan incentivizes frivolous litigation is belied by the fact that the trust advisory boards will consist solely of trust beneficiaries. Those trust beneficiaries have no rational incentive to waste trust assets that would otherwise be distributed to them.

Zell and EGI have also objected to Sections 13.3.7 and 14.4.7 of the DCL Plan to the extent that those sections provide for the indemnification of the Litigation Trustee and the Creditors' Trustee by the Litigation Trust and Creditors' Trust, respectively, arguing that such indemnification provisions "insulate [the trustees] from any liability for their decisions to pursue claims."[6] Zell and EGI have mischaracterized the indemnification provisions. Sections 13.3.7 and 14.4.7 of the DCL Plan are narrowly tailored to provide that the trusts (not the Reorganized Debtors) will indemnify the trustees with respect to actions arising from the ***good faith*** exercise of their powers and duties. The DCL Plan does not indemnify the trustees for fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct. Accordingly, Zell's concern that the DCL Plan would somehow give the Litigation Trustee free rein to commit Rule 11 violations is belied by the terms of the DCL Plan itself. The structure and governance of the trusts are entirely appropriate and Zell and EGI's objections should be overruled.

c. *The Court Should Reject Zell's Proposed "Alternatives."*

Zell asserts that if the Court allows the claims against Zell to be assigned to the Litigation Trust, then the Court should construct various unprecedented and insupportable legal obstacles before the trust can pursue claims against Zell.

Zell first asks the Court to condition the Litigation Trust's right to pursue claims against Zell and EGI upon the Litigation Trust making a *prima facie* showing that the claims are reasonably likely to succeed. This request is devoid of any legal support and is yet another example of Zell seeking to ignore standard litigation protocol and procedure. Imposing such a prerequisite is tantamount to mandating pre-enforcement review of the claims against Zell. This

---

[5] Zell also asserts that the opinions of the Examiner and Professor Black render certain claims assigned to the trusts "frivolous" under Maxwell v. KPMG LLP, 520 F.3d 713 (7th Cir. 2008). Therefore, Zell alleges, the DCL Plan runs afoul of section 1129 of the Bankruptcy Code. There are three principal reasons why this argument has no merit here. First, the Examiner's Report did not exonerate Zell from all claims related to the leveraged buyout. Second, the Examiner's findings are not "preclusive" of such issues. Likewise, Black's verbal opinions (not contained in his written report) are not preclusive and, in fact, the Creditors' Committee made explicit during the confirmation hearing that it disagreed with Black regarding the "recovery value" of claims against Zell and EGI. Tr. 4/13 at 80:18-25. Third, Maxwell was not decided in the context of plan confirmation. The Seventh Circuit's brief discussion of "frivolous claims" there was in connection with granting an aggrieved defendant leave to file a motion for reasonable attorneys' fees in defending an "outlandish" and "preposterous" case that had already been dismissed. See Maxwell, 520 F.3d at 717-18.

[6] See EGI-TRB LLC Objection [Docket No. 7988] at p. 18.

would violate the constitutional requirement that a case or controversy must be ripe for adjudication.[7]

Next, Zell proposes to prevent holders of PHONES Notes from serving on the trust advisory boards. There is no reasonable basis to exclude holders of PHONES Notes from serving on the trust advisory boards.

Finally, Zell asserts that the Court should require the Debtors to fully indemnify Zell for claims arising from the leveraged buyout or, in the alternative, defer a determination on Zell's right to administrative priority for indemnification claims. These arguments were first raised by Zell in his objection to confirmation, and were fully covered in the DCL Reply and addressed during the confirmation hearing.[8] In short, certificates of incorporation and bylaws do not constitute executory contracts with directors and officers. The DCL Plan does not purport to remove the Debtors' indemnification obligations to Zell. Rather, if Zell prevails in the LBO-Related Causes of Action, his indemnification claim, if allowed, will either be paid by insurance or be treated as a prepetition claim pursuant to the general priority rules of the Bankruptcy Code.

II.     The Creditors' Trust Is Proposed In Good Faith.

EGI and the D&Os allege that the Creditors' Trust, and therefore the DCL Plan, was not proposed in good faith because (a) it seeks to evade section 546(e) of the Bankruptcy Code, and (b) the Creditors' Committee's decision not to assert constructive fraudulent transfer claims on behalf of the Estates precludes individual creditors and/or a Creditors' Trust from pursuing such claims. Both of these arguments will be familiar to the Court from prior hearings, and as shown at those hearings, neither argument has merit.

As a threshold matter, this Court has already ordered that the individual creditors of the Debtors have "regained the right, if any, to prosecute their respective state law constructive fraudulent conveyance claims" against the former stockholders of Tribune.[9] Despite the entry of the Reversion Order, EGI and the D&Os continue to argue that the right to pursue state law constructive fraudulent transfer claims, to the extent any such right exists, does not reside with individual creditors. As confirmed by the Court's entry of the Reversion Order, they are wrong. Indeed, nearly identical arguments were raised[10] in connection with the Reversion Motion,[11]

---

[7] U.S. Const. art. III, § 2; see generally In re FedPak Sys., Inc., 80 F.3d 207, 211-12 (7th Cir. 1996) ("A bankruptcy court, like any other federal court, lacks the constitutional power to render advisory opinions" or to decide hypothetical questions).

[8] See DCL Reply at 117-122; Tr. 4/13 at 90:19-92:20.

[9] See Order Granting (I) Relief from the Automatic Stay to the Extent the Automatic Stay bars Commencement by Creditors of State Law Constructive Fraudulent Conveyance Claims to Recover Stock Redemption Payments made to Step One Shareholders and Step Two Shareholders and (II) Leave from the Mediation Order to Permit Commencement of Litigation on Account of Such Claims [Docket No. 8740] (the "Reversion Order").

[10] See, e.g. Objection of Robert R. McCormick Tribune Foundation and Cantigny Foundation [Docket No. 8361].

[11] See Motion [Docket No. 8201] (the "Reversion Motion").

addressed by the Creditors' Committee,[12] and rejected by the Court with the entry of the Reversion Order.

Even if the Court had not already disposed of these same arguments less than one month ago, the objections to the DCL Plan would still be meritless. The Creditors' Trust simply provides a mechanism by which individual creditors may aggregate their individual claims. Whether the claims transferred to the Creditors' Trust might ultimately be barred by the application of section 546(e), *res judicata,* or any other defense is irrelevant to the question of whether the DCL Plan should be confirmed. Although the objecting parties assert their arguments under the guise of an objection to the "good faith" of the DCL Proponents, the objectors are merely seeking to pre-litigate one or more of the potential defenses to the Disclaimed State Law Avoidance Claims before such claims are asserted by any plaintiff.

The DCL Plan is not intended to preclude any defenses to the Disclaimed State Law Avoidance Claims.[13] In fact, the DCL Proponents amended the DCL Plan on April 26, 2011 to clarify that it does not impair or prejudice the rights of any party to assert any defenses that it may have, including any defense that may exist under section 546(e) of the Bankruptcy Code, in connection with Disclaimed State Law Avoidance Claims. Accordingly, these "objections," to the extent they relate at all to the confirmability of the DCL Plan, are moot. Parties can raise whatever arguments or defenses they wish at the appropriate time before the court that ultimately considers the merits of any Disclaimed State Law Avoidance Claim, if and when a complaint asserting any such claim is filed.

III.    The DCL Plan Does Not Determine The Relative Priority Of
        The PHONES Notes Claims And The EGI-TRB LLC Notes Claims.

EGI asserts that the DCL Proponents "resisted" EGI's request to include clarifying language in the DCL Plan regarding the relative priorities of the PHONES Notes Claims and the EGI-TRB LLC Notes Claims. This is simply not true. As promised on the record of the confirmation hearing,[14] the DCL Plan was amended on April 26, 2011 to address this very issue. Section 7.15 of the DCL Plan provides that "nothing in th[e] Plan shall be deemed to constitute a determination of the respective priorities of the PHONES Notes Claims and the EGI-TRB LLC Notes Claims, solely as between the PHONES Notes Claims and the EGI-TRB LLC Notes Claims." This language is crystal clear and puts this objection to rest.

IV.    The Bar Order Is A Necessary And Appropriate Component Of The DCL Settlement.

The Bar Order is a standard and essential element of the DCL Plan that ensures that the settling defendants get the full benefit of their bargain, *i.e.*, that they cannot be held liable on

---

[12] See Statement in Support of the Reversion Motion [Docket No. 8396].

[13] See Tr. 4/13 at 115:15-21.

[14] See Tr. 4/13 at 84:13-24.

5

account of settled liability.[15] Bar orders have been approved routinely in the Third Circuit, including in the context of chapter 11 plans of reorganization, and courts have endorsed the use of bar orders in complex, multi-party litigation as necessary to facilitate and foster settlement.[16]

Despite ample legal and logical support for the Bar Order, the D&Os continue to object.[17] The D&Os' sole substantive objection to the Bar Order is entirely misplaced. The Bar Order is simply not a third party release prohibiting "any and all claims," and thus Spansion and Continental -- which do not even discuss a bar order -- are completely inapposite.[18]

The remaining objections of the D&Os are in the nature of non-substantive procedural complaints that effectively challenge all bar orders, not just this Bar Order, and boil down to a series of implausible "what ifs." First, the D&Os argue that some future litigation court, for reasons unknown and unstated, might simply disregard the Confirmation Order (and the Bar Order contained therein), or might selectively apply the contribution bar, on the one hand, without the corresponding judgment reduction, on the other. This argument is specious. A bankruptcy court's confirmation order is entitled to full faith and credit recognition by all state and federal courts, and such orders are routinely credited and enforced.[19] Moreover, the D&Os are alone in their unfounded fears. It is telling that the Noteholders -- as hoped for plaintiffs in

---

[15] See DCL Reply at 111-12.

[16] Id. at 112 (collecting cases); see also In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG), slip op. at 54-55 (Bankr. D. Del. Apr. 14, 2011). Indeed, state law contribution statutes -- many of which are modeled after the Uniform Contribution Among Tortfeasors Act (proposed in 1939) and the revised Uniform Contribution Among Tortfeasors Act (proposed in 1954) -- contain contribution bar and judgment reduction provisions that are substantively similar to the Bar Order in the DCL Plan. See, e.g., 740 ILCS 100/2 (Illinois); 10 Del Ch. §§ 6301, 6304 (Delaware); CPLR § 1401, N.Y. Gen. Obl. 15-108 (New York); Cal. Civ. Proc. Code §§ 875, 877 (California); Mass. G.L. c. 231B, § 1 (Massachusetts). There is simply nothing unusual about this commonplace relief.

[17] We note that the D&Os are the only party to have addressed the bar order in a post trial letter brief. D&O Letter Brief at 3-5.

[18] See DCL Reply at 115 & n.86. Even were the Court to apply those tests, the Bar Order would pass muster because it provides fair consideration to the non-settling defendants. In exchange for a bar against any contribution claims, the Non-Settling Defendants get the legal and economic equivalent of that barred claim in the form of proportionate judgment reduction. Thus, the Non-Settling Defendants suffer absolutely no prejudice.

[19] See Del. Valley Citizen's Council for Clean Air v. Pennsylvania, 755 F.2d 38, 43-44 (3d Cir. 1985); Bethesda Boys Ranch v. Atlantic Richfield Co., 208 B.R. 980, 983-84 (N.D. Okla. 1997) (holding that state courts have the responsibility to enforce bankruptcy court orders and that a party may petition the bankruptcy court for injunctive relief should a state court fail to do so); Vargas v. Wood, No. 4549, 2006 Phila. Ct. Com. Pl. LEXIS 141 (Phil. Ct. Comm. Pleas March 7, 2006) (holding that state court was compelled to honor bankruptcy court order). The D&Os misrepresent the law on this issue by citing to Davis v. Sheldon (In re Davis), 691 F.2d 176 (3d Cir. 1982), where the court was confronted with the issue of whether a bankruptcy court erred in declining to enjoin state *criminal* prosecutions because of their possible impact on federal bankruptcy proceedings. Id. at 176, 179 ("A federal court should be especially cautious in enjoining state *criminal* proceedings, because of the state's paramount interest in protecting its citizens through its police power." (emphasis added)). Furthermore, In re Davis explains that the "Bankruptcy Code . . . is an 'expressly authorized' exception to the statute" that generally mandates that "a federal court has no power to enjoin state court proceedings." Id. at 177.

the subsequent proceedings -- have objected to the Bar Order *precisely because* they are confident that courts will fully enforce its terms.[20]

Second, the D&Os argue that if the first prong of their imagined parade of horribles occurred, and a rogue court refused to enforce the Confirmation and Bar Orders, they would be left with no recourse.[21] They are mistaken. The Bar Order explicitly provides for this Court to retain jurisdiction regarding the enforcement of the Bar Order. As noted during the confirmation hearing,[22] the Supreme Court has held that a bankruptcy court "plainly had jurisdiction to enforce its own prior orders," especially when the bankruptcy court "explicitly retained jurisdiction to enforce [the settlement order]."[23] Thus, the D&Os fear of procedural "risks" is without any basis.[24]

In sum, the Bar Order reasonably and appropriately balances the rights of settling and non-settling defendants alike and is securely grounded in both legal precedent and public policy.[25] The Bar Order should be confirmed.

V.  The Department Of Labor's Claims Are Properly Subordinated Under Section 510(b).

The DOL continues to object to the DCL Plan's classification and treatment of the DOL's ERISA claims as subordinated pursuant to section 510(b) of the Bankruptcy Code. The DOL's argument boils down to an assertion that this Court should overrule its "wrongly decided"

---

[20] See Tr. 4/14 at 56:11-21 (Zensky) (stating that the Noteholders "couldn't disagree more" with the D&Os' fear that the Bar Order "will not be recognized or enforced by other Courts around the Country" because they "are convinced that if Your Honor upholds [the Bar Order] . . . it will be enforced exactly as [DCL Proponents] would like it enforced and bar the cross claim and put all the risk on us"). As an additional protection, the DCL Plan mandates that the Litigation Trustee and Creditors' Trustee "shall agree to comply with, and shall not take any actions inconsistent with, the Bar Order . . . ." DCL Plan §§ 13.3.3, 14.4.3; see also Section 3.3(b) of the Litigation Trust Agreement (Exhibit 13.1 to the DCL Plan) [Docket No. 7701] and the Creditors Trust Agreement (Exhibit 14.1 to the DCL Plan) [Docket No. 7701] (same).

[21] Contrary to the D&Os' contention that the DCL Proponents have ignored the various revisions to the Bar Order proposed by the D&Os (see D&O Letter Brief at 5), the DCL Proponents made several clarifications to the Bar Order to address their concerns. See Docket No. 8259, Ex. B at § 11.3 (blackline indicating changes to DCL Plan filed on March 3, 2011).

[22] Tr. 4/13 at 150:9-16.

[23] Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) (approving a bankruptcy court's decision to enjoin state court lawsuits filed ten years after the approval of a plan of reorganization in light of settlement orders associated with the reorganization plan).

[24] In their letter brief, the D&Os inaccurately assert that the DCL Proponents have "acknowledged these risks and admitted that this Court may not have jurisdiction to enforce the judgment reduction provision." D&O Letter Brief at 5. What the DCL Proponents actually stated was "[o]bviously, the Court can only retain jurisdiction as to matters for which it can retain jurisdiction." Tr. 4/13 at 150: 14-16. The provisions of the Bar Order are exactly such matters.

[25] DCL Reply at 111-117; DCL Post-Trial Brief at 98-99.

decision in In re Touch Am. Holdings, Inc.,[26] and adopt a standard different from the one applied by the Third Circuit in In re Telegroup, Inc.[27]

In support of its advocacy for a wholesale change in the law, the DOL suggests that there is something different about ERISA claims brought by it than claims brought directly by investors. Yet, the DOL's claims are based on exactly the same provisions of ERISA, and the DOL seeks exactly the same relief, as the private investors who brought suit in Neil v. Zell.[28] It cannot seriously be disputed that the Neil plaintiffs' claims, if they had continued to be asserted against Tribune,[29] which seek to recover losses based on the ESOP's purchase of Tribune stock and the subsequent decline in value of that stock, fall squarely within section 510(b).[30]

No court has suggested -- much less held -- that the identity of the claimant (whether the shareholder itself or a government agency acting on the shareholder's behalf) has any bearing on the application of section 510(b), and the DOL cites no authority to support its position in this regard. To the contrary, courts have correctly held that nothing in the language of section 510(b) supports such an artificial distinction.[31]

The DOL's attempt to distinguish Telegroup falls flat. The DOL asserts that the DCL Proponents "wrongly" described the holding in Telegroup because the quoted language "is taken from the Telegroup court's description of the debtor's argument."[32] The DOL ignores, however, that in the very next paragraph, the Third Circuit states, "We agree with [the debtor]."[33] In later explaining why the contractual claims at issue in that case were within the purview of section 510(b), the Third Circuit reiterated that "the claims would not exist but for the claimants' purchase of debtor's stock."[34] As the DCL Proponents explained in the DCL Reply, that is precisely the case here -- the DOL's claims, by the DOL's own description, would not exist but for the employees' purchase of Tribune stock.[35]

---

[26] 381 B.R. 95 (Bankr. D. Del. 2008).

[27] Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.), 281 F.3d 133, 135-36 (3d Cir. 2002).

[28] No. 08-6833 (N.D. Ill.); see, e.g., Third Amended Complaint, Neil v. Zell, No. 08-6833 (N.D. Ill. May 7, 2010) [Docket No. 204].

[29] The Neil plaintiffs dropped Tribune as a defendant and have not filed a claim in these bankruptcy cases, possibly because they knew their claims would be subordinated.

[30] See, e.g., In re Enron Corp., 341 B.R. 141, 148-59 (Bankr. S.D.N.Y. 2006) (claims relating to stock options granted as part of compensation package subject to section 510(b)); Touch Am. Holdings, 381 B.R. at 106 (claims relating to ERISA-governed benefits plan subject to section 510(b)).

[31] See In re Lenco, Inc., 116 B.R. 141, 144-45 (Bankr. E.D. Mo. 1990) (holding that section 510(b) applied to claims brought by the DOL arising out of ERISA).

[32] DOL Letter Brief at 1.

[33] Telegroup, 281 F.3d at 136.

[34] Id. at 143.

[35] DCL Reply at 148-49.

8

The DOL also argues that section 510(b) is directed to a "different set of legal relations" and points to other employee-specific portions of the Bankruptcy Code as evidence that section 510(b) does not cover ERISA claims.[36] Yet, the DOL fails to explain how a claimant's status as an employee-shareholder, rather than an outside shareholder, is relevant to the section 510(b) analysis. As the Third Circuit has explained, by enacting section 510(b), Congress determined that equity holders should not be treated the same as unsecured creditors because equity holders reap the benefits of any success of the company and, therefore, should also bear the risk of failure.[37] The ESOP participants, on whose behalf the DOL asserts its claims, retained the right to enjoy any upside in their investment in Tribune; accordingly, section 510(b) prevents them from attempting to recover any loss in value of their holdings in parity with general unsecured creditors. Their status as employees of Tribune does not affect that analysis and if Congress intended that it should, it would have provided special treatment for employee equity holders as it has in other circumstances.

With respect to its claims against Tribune's subsidiaries, the DOL asserts that there is no "credible basis" for subordinating the DOL's claims against Tribune's subsidiaries, "while leaving the equity interests in those subsidiaries unimpaired."[38] However, as in In re Ion Media Networks, Inc.,[39] the equity interests of Tribune in the Subsidiary Debtors should be preserved as a means of protecting the going concern value of the Tribune enterprise.[40] The DOL's only response is to state that Ion Media "lacks any persuasive power" and "relied on the gifting doctrine."[41] This is false. Ion Media did not turn on the gifting doctrine, but rather only noted, in a footnote, that the gifting doctrine would also apply to support the preservation of intercompany equity.[42] The rationale of Ion Media was that the "technical preservation of equity is a means to preserve the corporate structure."[43] That rationale is equally applicable here.

Finally, the DOL takes issue with the amendments to the DCL Plan providing Class 1L Litigation Trust Interests to Holders of Allowed Securities Litigation Claims at the Subsidiary Debtors. First, the DOL asserts that providing subsidiary creditors with Class 1L Litigation Trust Interests is impermissible absent substantive consolidation. The DOL is incorrect and wholly ignores the basis of the Securities Litigation Claims asserted at the Subsidiary Debtors. The Securities Litigation Claims asserted at the Subsidiary Debtors derive from claims related to the common stock of Tribune. Indeed, the Subsidiary Debtors are wholly-owned; no claims have

---

[36] DOL Letter Brief at 2-4.

[37] Telegroup, 281 F.3d at 140-42.

[38] DOL Letter Brief at 4.

[39] Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.), 419 B.R. 585 (Bankr. S.D.N.Y. 2009).

[40] See DCL Reply at 180-81.

[41] DOL Letter Brief at 4.

[42] Ion Media, 419 B.R. 585, 601 n.22 (Bankr. S.D.N.Y. 2009).

[43] Id. at 601.

9

been asserted that take issue with the purchase or sale of securities of the Subsidiary Debtors themselves; and the Securities Litigation Claims that have been asserted against the Subsidiary Debtors have also been asserted against Tribune.

Second, the DOL argues that providing it with a Pro Rata share of Class 1L Litigation Trust Interests on account of its subordinated claims against the Subsidiary Debtors is not appropriate because the DOL claims are entitled to the same priority as Tribune's retained equity interests in the Subsidiary Debtors. This argument is also contrary to the holding in Ion Media. Even more fundamentally, this argument is wrong because it ignores that section 510(b) subordinates the DOL's claim to the same level as "such security" from which the DOL claims arise -- the common equity interest of Tribune.

Third, the DOL argues that, as a result of the amendments to the DCL Plan providing the Holders of Securities Litigation Claims with a distribution, the Holders of such claims should be afforded the opportunity to vote rather than be deemed to reject the DCL Plan. The Classes of Securities Litigation Claims were deemed to reject the DCL Plan prior to the amendments at issue. As a result, the modifications *a fortiori* do not require a creditor to reconsider its prior acceptance of the DCL Plan and, thus, there is no need to "resolicit" the views of the Holders of Securities Litigation Claims.

\* \* \*

For all of the reasons set forth herein, in the DCL Reply, the DCL Post-Trial Brief and at oral argument, the objections of Zell, EGI, the D&Os and the DOL to confirmation of the DCL Plan should be overruled.

Respectfully submitted,

David M. LeMay