# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Objection Deadline: June 14, 2011 @ 4:00 p.m. (ET)<br>Hearing Date: N/A |

## TWENTY-EIGHTH MONTHLY APPLICATION OF LANDIS RATH & COBB LLP, CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331

| | |
|---|---|
| Name of Applicant: | Landis Rath & Cobb LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | *Nunc Pro Tunc* to December 18, 2008 |
| Period for which compensation and reimbursement sought: | April 1, 2011 through April 30, 2011 |
| Amount of monthly fees to be approved as actual, reasonable and necessary: | $ 314,238.50 |
| Amount of monthly expenses sought as actual, reasonable and necessary: | $ 27,818.73[2] |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] This Application includes $177.36 in expense charges incurred in January, 2011, and $5,604.22 in March, 2011 for which reimbursement has not previously been sought.

{698.001-W0014792.}

This is a   __X__ monthly   ____ interim   _____ final application

This application does not include any time related to the preparation of this application.

Prior Applications:

|  |  | Requested | | Approved | |
| --- | --- | --- | --- | --- | --- |
| **Dated Filed** | **Period Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 2/25/09 | 12/18/08 – 1/31/09 | $106,613.25 | $6,816.95 | $85,290.60 | $6,816.95 |
| 3/25/09 | 2/1/09 – 2/28/09 | $38,726.00 | $4,053.57 | $30,980.80 | $4,053.57 |
| 4/27/09 | 3/1/09 – 3/31/09 | $27,981.50 | $1,585.96 | $22,385.20 | $1,585.96 |
| 5/28/09 | 4/1/09 – 4/30/09 | $77,223.00 | $5,627.56 | $61,778.40 | $5,627.56 |
| 6/25/09 | 5/1/09 – 5/31/09 | $46,008.50 | $2,305.56 | $36,806.80 | $2,305.56 |
| 7/30/09 | 6/1/09 – 6/30/09 | $67,222.50 | $4,100.79 | $53,777.60 | $4,100.79 |
| 8/25/09 | 7/1/09 – 7/31/09 | $95,604.75 | $4,705.70 | $76,483.80 | $4,705.70 |
| 9/25/09 | 8/1/09 – 8/31/09 | $67,632.25 | $5,776.06 | $54,105.80 | $5,776.06 |
| 10/26/09 | 9/1/09 – 9/30/09 | $59,285.00 | $2,746.88 | $47,428.00 | $2,746.88 |
| 11/25/09 | 10/1/09 – 10/31/09 | $70,264.00 | $5,029.42 | $56,211.20 | $5,029.42 |
| 12/28/09 | 11/1/09 – 11/30/09 | $100,217.75 | $1,973.32 | $80,174.20 | $1,973.32 |
| 1/27/2010 | 12/1/09 – 12/31/09 | $85,506.00 | $13,267.73 | $68,404.80 | $13,267.73 |
| 2/26/2010 | 1/1/10 – 1/31/10 | $158,917.50 | $10,918.82 | $127,134.00 | $10,918.82 |
| 3/25/2010 | 2/1/10 – 2/28/10 | $106,905.50 | $7,543.68 | $85,524.40 | $7,543.68 |
| 4/26/2010 | 3/1/10 – 3/31/10 | $153,590.00 | $1,362.02 | $122,872.00 | $1,362.02 |
| 5/25/2010 | 4/1/10 – 4/30/10 | $135,727.00 | $5,707.10 | $108,581.60 | $5,707.10 |
| 6/25/2010 | 5/1/10 – 5/31/10 | $108,029.50 | $2,334.45 | $86,423.60 | $2,334.45 |
| 7/26/2010 | 6/1/10 – 6/30/10 | $91,212.50 | $1,396.04 | $72,970.00 | $1,396.04 |
| 8/25/2010 | 7/1/10 – 7/31/10 | $ 92,410.50 | $5,599.44 | $73,928.40 | $5,599.44 |
| 9/27/2010 | 8/1/10 – 8/31/10 | $ 153,528.50 | $10,657.41 | $122,822.80 | $10,657.41 |
| 10/25/10 | 9/1/10 – 9/30/10 | $ 209,508.50 | $5,013.77 | $167,606.80 | $5,013.77 |
| 11/26/10 | 10/1/10 – 10/31/10 | $252,919.50 | $9,446.31 | $202,335.60 | $9,446.31 |
| 1/5/11 | 11/1/10 – 11/30/10 | $478,260.00 | $178,775.23 | $382,608.00 | $178,775.23 |
| 1/25/11 | 12/1/10 – 12/31/10 | $ 299,218.50 | $ 107,367.08 | $239,374.80 | $107,367.08 |
| 2/25/11 | 1/1/11 – 1/31/11 | $211,562.50 | $6,287.93 | $169,250.00 | $6,287.93 |
| 3/25/2011 | 2/1/11 – 2/28/11 | $199,123.50 | $13,550.70 | $159,298.80 | $13,550.70 |
| 4/25/2011 | 3/1/11 – 3/31/11 | $374,563.50 | $69,116.92 | $299,650.80 | $69,116.92 |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: June 14, 2011 @ 4:00 p.m. (ET)<br>Hearing Date: N/A |

## TWENTY-EIGHTH MONTHLY APPLICATION OF LANDIS RATH & COBB LLP, CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331

Landis Rath & Cobb LLP ("LRC"), co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Twenty-Eighth Monthly Application of Landis Rath & Cobb LLP, Co-Counsel to the Official Committee of Unsecured Creditors, for Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. §§ 330 and 331 (the "Application") for legal services performed during the period commencing April 1, 2011 through and including April 30, 2011 (the "Application Period"). In support thereof, LRC respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

{698.001-W0014792.}

## BACKGROUND

1. On December 8, 2008, (the "Petition Date"), the Debtors commenced these bankruptcy cases by each filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

3. On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the Committee. In addition, on December 18, 2008, the Committee met with and selected Chadbourne & Parke LLP ("Chadbourne") as its counsel and LRC as its co-counsel.

4. On February 20, 2009, the Court entered an order authorizing the employment and retention of LRC as co-counsel to the Committee *nunc pro tunc* to December 18, 2008.

5. On April 19, 2009, the Court entered an order appointing Stuart Maue as fee examiner for these chapter 11 cases *nunc pro tunc* to February 20, 2009.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).

7. The statutory bases for relief requested herein are Bankruptcy Code Sections 105(a), 330 and 331.

## TERMS AND CONDITIONS OF COMPENSATION OF LRC

8.  Subject to Court approval, LRC seeks payment for compensation on an hourly basis, plus reimbursement of actual, necessary expenses incurred by LRC during the Application Period. With the exception of copy charges (which are charged at a lower rate), the rates charged by LRC in these cases do not differ from the rates charged to LRC's non-bankruptcy clients.

9.  A summary of the hours spent, the names of each professional and paraprofessional rendering services to the Committee during the Application Period, the regular customary billing rates and the total value of time incurred by each of the LRC attorneys rendering services to the Committee is attached hereto as Exhibit "A." A copy of the computer generated time entries reflecting the time recorded for these services, organized in project billing categories in accordance with the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Guidelines"), is attached hereto as Exhibit "B." A statement of expenses incurred by LRC during the Application Period is attached hereto as Exhibit "C." All time entries and requested expenses are in compliance with Local Rule 2016-2.[2]

10. On February 15, 2009, this Court entered the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Administrative Order"). Pursuant to the Administrative Order, LRC and other professionals retained in these cases are authorized to file and to serve upon the Debtors and the parties identified in the Administrative Order monthly fee applications (a "Monthly Fee Application") with respect to their fees and expenses. After the

---

[2] LRC has also attempted to ensure that this Application complies with the Guidelines. To the extent that the Guidelines conflict with local rules, in particular, Local Rule 2016-2, LRC has chosen to comply with such local rule. LRC will supplement this Application with additional detail or information upon request.

expiration of a twenty (20) day objection period, the Debtors are authorized to promptly pay eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Monthly Fee Application, unless an objection has been lodged against specific fees and/or expenses, or the Court orders otherwise.

11. In accordance with the Administrative Order, LRC has filed and served upon the Debtors and other parties identified in the Administrative Order this Application with respect to fees and expenses incurred during the Application Period; to wit, fees in the amount of $314,238.50 and expenses in the amount of $27,818.73.

12. All services and costs for which compensation is requested by LRC in this Application were reasonable and necessary and were performed for and on behalf of the Committee during the Application Period.

## CASE STATUS

13. To the best of LRC's knowledge, the Debtors' monthly operating reports contain up-to-date information regarding the amount of cash on hand or on deposit in the Debtors' estates, the Debtors' operating profits or losses, and the amount of unencumbered funds in the Debtors' estates.

14. To the best of LRC's knowledge, the Debtors have paid to the UST their initial quarterly fees and have filed their monthly operating report for the period of March 28, 2011 through April 24, 2011.

## NARRATIVE SUMMARY OF SERVICES RENDERED ON A PROJECT SUMMARY BASIS

15. All of the professional services that LRC rendered to the Committee during the Application Period are set forth in detail in Exhibit "B," segregated according to project billing

categories pursuant to the Guidelines. A brief description of certain services deserving specific mention are highlighted below, by project category:

(A) **Case Administration:** (Total Hours: 18.50; Total Fees: $5,229.50)

16. Among other services provided in this category during the Application Period, LRC served various pleadings on behalf of the Committee. In its role as "clearinghouse" for information and communications to and from the Committee and the Court, LRC has kept the Committee informed, on a regular basis, as to important developments in these cases. In connection therewith, LRC created and maintained a critical dates calendar in order to track deadlines and significant events in these cases. In addition, LRC expended significant time updating the Committee's website in order to provide creditors and other parties in interest up-to-date information regarding the status of the Debtors' bankruptcy cases and the reorganization process.

(B) **Claims Administration and Objections:** (Total Hours: 24.90; Total Fees: $9,355.50)

17. Among other services provided in this category during the Application Period, LRC reviewed and analyzed the various motions for authorization to file untimely claims, which were filed by certain directors and officers of the Debtors (the "Motions to File Late Claims"). In connection therewith, LRC expended significant time researching issues related to the Motions to File Late Claims. Additionally, LRC assisted in the preparation of the Committee's objection to the Motions to File Late Claims.

(C) **Hearings:** (Total Hours: 193.00; Total Fees: $85,963.50)

18. Among other services provided in this category during the Application Period, LRC prepared for and attended several hearings scheduled by the Court, including hearings regarding the resolution of various confirmation related issues.

19. Additionally, among other services provided in this category during the Application Period, LRC expended significant time planning and preparing for the evidentiary hearings held in connection with the two competing plans of reorganization proposed by the Debtors, the Committee and certain senior lenders (the "DCL Plan") and by certain noteholders (the "Noteholder Plan" and, together with the DCL Plan, the "Competing Plans"). In connection thereto, LRC, as Delaware counsel to the Committee, worked closely with the parties-in-interest and the Court in designing and implementing a technologically advanced courtroom setup to meet the needs of the Court and the proponents of the Competing Plans during the evidentiary hearings. LRC also participated in several meet and confer sessions with the various plan proponents and court personnel.

20. In addition, among other services provided in this category during the Application Period, LRC expended significant time drafting, revising, and finalizing the Committee's confirmation-related materials. LRC also attended and participated in the evidentiary hearings and researched various issues that arose during such proceedings.

**(D)** **Litigation:** **(Total Hours: 376.50; Total Fees: $143,585.50)**

21. Among other services provided in this category during the Application Period, LRC expended significant time reviewing and revising the exhibits accompanying the third party complaints with respect to the Committee's role as the pursuer of certain causes of action stemming from the series of transactions during calendar year 2007 pursuant to which the Debtors became privately held (the "LBO").

22. Additionally, among other services provided in this category during the Application Period, LRC spent numerous hours continuing its pursuit of discovery, through the issuance and re-issuance of subpoenas, from certain LBO litigation targets in an effort to obtain

the identities of tens of thousands of potential shareholder defendants. In furtherance of such efforts, LRC spent numerous hours reviewing and analyzing hundreds of discovery responses. In addition thereto, LRC negotiated with numerous discovery targets regarding their responses to the discovery requests. Additionally, LRC drafted and revised numerous responses to motions to quash and to other objections or insufficient responses to the discovery requests. LRC also continued its efforts to serve the third party complaint on various shareholder defendants.

23. Further, among other services provided in this category during the Application Period, LRC expended significant time reviewing and analyzing Sam Zell's motion for clarification that leave is not necessary to serve a motion for relief under rule 9011 of the Federal Rules of Bankruptcy Procedure (the "9011 Motion"). In connection therewith, LRC spent numerous hours assisting in the preparation and finalization of the Committee's response and reply to the 9011 Motion.

(E) **LRC Retention & Fee Matters:** (Total Hours: 37.40; Total Fees: $9,705.50)

24. Among other services provided in this category during the Application Period, LRC drafted, revised, and finalized its twenty-seventh monthly fee application and its ninth interim fee application. In addition, LRC also drafted and finalized a certificate of no objection with regard to its twenty-sixth monthly fee application.

(F) **Creditors' Committee Meetings / Communications:** (Total Hours: 28.80; Total Fees: $15,169.50)

25. Among other services provided in this category during the Application Period, LRC prepared for and attended numerous telephonic and in-person meetings with members of the Committee, the Committee's professionals, and the Debtors' professionals.

**(G)** **Non LRC Retention & Fee Matters:** (Total Hours: 54.10; Total Fees: $20,397.00)

26. Among other services provided in this category during the Application Period, LRC assisted with preparing and finalized the twenty-sixth monthly fee application submitted by Chadbourne. LRC also assisted with preparing and finalized the twenty-seventh monthly fee applications submitted by AlixPartners, LLP ("AlixPartners") and Moelis & Company LLC ("Moelis"). Additionally, LRC drafted, revised and finalized the Committee's seventeenth application for the reimbursement of expenses.

27. In addition thereto, among other services provided in this category during the Application Period, LRC assisted with preparing and finalized the ninth interim fee applications submitted by Chadbourne, AlixPartners, LLP ("AlixPartners") and Moelis & Company LLC ("Moelis"). LRC also drafted, revised and finalized certificates of no objections with regard to AlixPartners and Moelis' twenty-sixth monthly fee applications.

28. Further, among other services provided in this category during the Application Period, LRC reviewed and analyzed issues related to the potential retention of special conflicts counsel. Additionally, LRC expended significant time drafting, revising, and finalizing the Committee's application (the "SVG Application") to retain Seitz Van Ogtrop & Green, P.A. as special conflicts counsel to the Committee for the limited purposes identified in the SVG Application.

**(H)** **Plan and Disclosure Statement:** (Total Hours: 55.00; Total Fees: $24,669.50)

29. Among other services provided in this category during the Application Period, LRC spent numerous hours reviewing and analyzing both the second and third amended

Noteholder Plans. Additionally, LRC spent significant time reviewing and analyzing the Noteholder Plan Proponents' supplemental objections to the DCL Plan.

30. Additionally, among other services provided during the Application Period and in connection with the confirmation process, LRC expended significant time researching, analyzing, and resolving certain confirmation and plan related issues.

31. Further, among other services provided during the Application Period, LRC expended significant time assisting in the preparation and finalization of the DCL Plan Proponents' motion seeking, among other things, the authority to resolicit certain votes to the DCL Plan. In addition, LRC reviewed and analyzed the Noteholder Plan Proponents' motion requesting the entrance of an order determining, among other things, that resolicitation of the Noteholder Plan is unnecessary.

## COMPENSATION REQUESTED

32. LRC expended 788.80 hours during the Application Period in furtherance of its efforts on behalf of the Committee. LRC requests allowance of compensation in the amount of $314,238.50 for legal services rendered during the Application Period at a blended hourly rate of $398.38. Pursuant to the Administrative Order, LRC requests payment of 80% of the total fees requested, or $251,390.80. None of the requested fees detailed herein have been paid.

## REIMBURSEMENT OF EXPENSES

33. During the Application Period, LRC incurred certain necessary expenses in rendering legal services to the Committee as set forth in Exhibit "C." Telecopying services completed in-house by LRC were charged at $1.00 per page for outgoing facsimiles only. LRC represents that its rate for duplication is $0.10 per page, consistent with the Local Rules and Guidelines. In order to more efficiently handle the voluminous copying of pleadings served and

filed in these cases, LRC on occasion retained third-party duplication service providers. LRC seeks reimbursement only for the actual expenses charged by such third-party service providers. Finally, LRC seeks reimbursement for computer assisted research, which is the actual cost of such charges.

34.  LRC seeks reimbursement for its reasonable, necessary and actual expenses incurred during the Application Period for the total amount of $27,818.73.

## LEGAL STANDARD

35.  Bankruptcy Code Section 330(a)(1) allows the payment of:

   (A)  reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

   (B)  reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Reasonableness of compensation is driven by the "market-driven approach" which considers the nature, extent and value of services provided by the professional and the cost of comparable services in non-bankruptcy contexts. See Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 258 (3d Cir. 1995); In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849 (3d Cir. 1994). Thus, the "baseline rule is for firms to receive their customary rates." Zolfo Cooper, 50 F.3d at 259.

36.  In accordance with its practices in non-bankruptcy matters, LRC has calculated its compensation requested in this Application by applying its standard hourly rates. LRC's calculation is based upon hourly rates that are well within the range of rates that are charged by comparable firms in similar bankruptcy cases. Accordingly, LRC's rates should be determined to be reasonable under Bankruptcy Code Section 330.

37. LRC's fees during the Application Period are also reasonable under the prevailing legal standard and should be allowed. The amount of these fees is not unusual given the complexity and size of the Debtors' chapter 11 cases. LRC's fees are commensurate with fees that other attorneys of comparable experience and expertise have charged and been awarded in similar chapter 11 cases. Accordingly, LRC's fees are reasonable pursuant to Bankruptcy Code Section 330.

38. Bankruptcy Code Section 330(a)(1)(B) permits reimbursement for actual, necessary expenses. LRC's legal services and expenses incurred during the Application Period are set forth in this Application and constitute only those necessary expenses that were incurred for the benefit of the Debtors' estates. LRC has properly requested reimbursement of only actual, necessary and appropriate legal expenses.

39. Except as permitted by Rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or understanding exists between LRC and/or any third person for the sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Committee.

40. Pursuant to the standards set forth in Bankruptcy Code Sections 330 and 331, LRC submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

41. The time records annexed to this Application constitute only a general statement of the services rendered and time expended without description of the pressure and constraints under which LRC actually rendered these services. The considerable challenges of these cases have been attended to and managed by LRC at all levels, promptly, expertly and often to the

exclusion of other matters in LRC's office. LRC submits, therefore, that its fees and expenses were actually, necessary, reasonable and justified, and should be allowed in full.

### NOTICE AND NO PRIOR APPLICATION

42. No trustee has been appointed in these chapter 11 cases. Notice of this Application has been given to: (a) Co-counsel to the Debtors; (b) the UST; (c) John L. Decker, Esq. c/o Stuart Maue; (d) Co-counsel to Barclays Bank PLC; (e) Co-counsel to the Administrative Agent for the Prepetition Lenders; and (f) all parties required to be given notice in the Administrative Order. In light of the nature of the relief requested herein, LRC submits that no further or other notice is required.

43. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, LRC respectfully requests that the Court: (i) grant the Application; and (ii) grant such other and further relief as is just and proper.

Dated: May 25, 2011
Wilmington, Delaware

LANDIS RATH & COBB LLP

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Co-Counsel to the Official
Committee of Unsecured Creditors*