EXHIBIT A

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel 312 222-9350
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

David J. Bradford
Tel 312 923-2975
Fax 312 840-7375
dbradford@jenner.com

The Honorable Kevin J. Carey
United States Bankruptcy Court
District of Delaware
824 North Market Street
Wilmington, Delaware 19801

Re: In re Tribune Company, et al., 08-13141(KJC);
Mr. Zell's Sur-Reply Regarding Objection to Proposed Plans of Reorganization

Dear Chief Judge Carey:

Mr. Zell respectfully submits this sur-reply to address the entirely new and incorrect arguments that Aurelius Capital Management ("Aurelius") and the Official Committee of Unsecured Creditors (the "Committee") have each made on behalf of their respective plan proponent groups. (*See* Dkt. 8960, 8963.) *Cf. Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204-05 n. 29 (3d Cir.1990) (courts will not consider arguments raised on appeal for the first time in a reply brief).

*First*, contrary to the Committee's assertions, Mr. Zell does not ask for a release, but rather for a determination that the proposed litigation trust should not be granted standing to pursue frivolous litigation that is highly unlikely to succeed. There is a difference. Here, both plan proponents seek to have this Court confirm plans that would provide standing to a litigation trust to pursue claims against Mr. Zell. When the evidence shows, as it does here, that the proposed claims lack merit and that their pursuit is not in the interests of all creditors, courts can and do find that a litigation trust lacks standing to pursue those claims. *See, e.g., In re Copperfield Invs., LLC*, 421 B.R. 604, 612 (E.D.N.Y. 2010) (denying standing because claim was not colorable); *In re Am.'s Hobby*, 223 B.R. 275, 285 (Bankr. S.D.N.Y. 1998) (same). Indeed, in the face of a compelling record that shows the purported breach of fiduciary duty and related claims against Mr. Zell are highly unlikely to succeed, the Committee offers nothing to justify a litigation trust's prosecution of the purported claims, insisting that it does not have to explain itself. But after millions of dollars have been spent to investigate the purported claims and multiple experts have looked at the issue and found the claims have no value, an explanation is necessary before the Court should allow these claims to proceed.

*Second*, the DCL Plan Proponents suggest that whether these purported claims are frivolous "has no bearing on confirmation of the DCL Plan" and "is not presently before the Court." (DCL Br. at 2.) But – in addition to the litigation trust standing issue above – whether the purported claims against Mr. Zell have value was an issue at the confirmation hearing, as the DCL Plan Proponents presented evidence on whether claims against the directors and officers had value, and in connection with that testimony, both sides' experts on claim value agreed that any purported claims against Mr. Zell had no value. (*See, e.g.*, Kurtz Tr. at 37:6-21, 86:11-17; *see also* Black Tr. at 50:4-22; Beron Tr. at 254:21-24.) And contrary to the Committee's assertion, Professor Black offered that very opinion both in his written report as well as through his testimony. (Black Rpt. at 159; Black Tr. at 50:10-19.)

*Third*, Aurelius, by contrast, accepts that the issue of whether to grant standing to the litigation trust to prosecute the purported claims against Mr. Zell is properly before the Court, but argues Mr. Zell "failed to elicit evidence" that the claims lack value. (Aurelius Br. at 2.) Of course, that assertion ignores both the Examiner's conclusions, following an exhaustive, independent $12 million investigation, and Professor Black's written report and testimony, all of which are part of the confirmation hearing record. In an effort to mislead this Court, Aurelius misstates the Examiner's express findings. Contrary to Aurelius's assertions, there is **no** evidence – and Aurelius does not attempt to provide any – that Mr. Zell or anyone acting at his direction dangled any financial incentives to Tribune's officers or directors (*see* Examiner's Report at Vol. I, 397-99; Black Tr. at 51:14-18, 52:9-12; *see also* Dkt. 8478 (William Pate Decl. ¶5)) or offered any person, including Chandler Bigelow, a promotion to buy support for the LBO. (*See* Examiner's Report, Vol. I at 397-98.) Aurelius cites only to its own allegations as the "source" for these demonstrably false and irresponsible assertions. In addition, Aurelius relies on the Examiner's findings as to the actions of Tribune's directors at Step Two to support a breach of fiduciary duty claim against Mr. Zell, but those findings cannot relate to Mr. Zell because he did not participate in the conduct that the Examiner addressed. (*See* Black Tr. at 51:14-52:3; *see also* Dkt. 8478 (Sam Zell Decl. ¶6).) Aurelius references the Examiner's statement that, with the benefit of more time he would have further investigated the interactions between EGI-TRB and Tribune's officers, but misleadingly omits the Examiner's explicit statement that this qualification should not cast a shadow of suspicion on Mr. Zell. (Examiner's Report, Vol. II at 397.) Aurelius's final argument is to suggest that the Examiner and Professor Black did not do enough digging, but Aurelius has never credibly suggested what evidence has been missed or what else should be considered. Rather than provide any reason or evidence to dispute the Examiner's and Professor Black's considered conclusions, as set forth in Professor Black's written report (Black Rpt. at 159) and testimony (Black Tr. at 50:10-19), that the claims against Mr. Zell have no merit, Aurelius offers only rhetoric, unsupported by a single citation to any record evidence or legal authority.

*Fourth*, Aurelius, and to a lesser extent the Committee, try to shore up their argument that the Court should allow the breach of fiduciary duty and related claims against Mr. Zell to proceed by incorrectly lumping together the claims against Mr. Zell with the fraudulent transfer and preference claims against EGI-TRB. (*See, e.g.*, Aurelius Br. at 3-5; DCL Br. at 3.) While the claims against EGI-TRB are without merit, Mr. Zell's objection is limited only to the breach of fiduciary duty, aiding and abetting and "piercing the corporate veil" claims alleged against him, and it does not address any claims alleged against EGI-TRB.

For the reasons set forth herein, in Mr. Zell's Letter Brief (Dkt. 8884), in his Rule 9011 motion (Dkt. 8478 at Ex.1), in his and EGI-TRB's Objections to Confirmation of both Plans (Dkt. 7983, 7988), and as stated during oral argument held on April 13, 2011, Mr. Zell requests that the Court deny confirmation of both of pending plans, or alternatively, condition confirmation of the plans on the Plan Proponents making the modifications set forth in Mr. Zell's Objections and his Letter Brief.

Sincerely,

David J. Bradford,
*Counsel to Sam Zell*