# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: June 28, 2011 at 2:00 p.m. (ET) |
| | Objection Deadline: June 16, 2011 at 4:00 p.m. (ET) |

## APPLICATION FOR AN ORDER AUTHORIZING (I) ERNST & YOUNG LLP TO PERFORM SERVICES AS THE ACCOUNTING FIRM UNDER AUGUST 2009 FORMATION AGREEMENT CONCERNING FORMATION OF CHICAGO BASEBALL HOLDINGS, LLC AND (II) TRIBUNE COMPANY TO ENTER INTO ENGAGEMENT LETTER, STATEMENT OF WORK, SIDE LETTER AND RELATED DOCUMENTATION AND PERFORM OBLIGATIONS IN CONNECTION THEREWITH

Tribune Company ("Tribune"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") hereby submits this application (the "Application") to the Court for entry of an order authorizing (i) Ernst & Young LLP ("E&Y") to act as the "Accounting Firm", as that term is defined in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-7649350v1

section 1.5(c) of that certain Formation Agreement dated as of August 21, 2009 among Ricketts Acquisition LLC ("Ricketts Acquisition"), RAC Education Trust OCA, LLC, Tribune, Chicago National League Ball Club, LLC, Wrigley Field Premium Ticket Services, LLC, Diana-Quentin, LLC, Tribune Sports Network Holdings, LLC and Chicago Cubs Dominican Baseball Operations, LLC (the "Formation Agreement"),[2] and (ii) Tribune to enter into the Engagement Letter (as defined below) and related documentation, and to perform its obligations thereunder. In support of this Application, Tribune (i) submits the Affidavit of Gregory E. Wolski, a partner at E&Y (the "Wolski Affidavit"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and (ii) respectfully represent as follows:

## INTRODUCTION

1. The Debtors file this Application for the limited purpose of ensuring, out of an abundance of caution, that E&Y may act as the Accounting Firm under section 1.5(c) of the Formation Agreement and render services in such capacity. The services that E&Y will provide are outlined in (i) an engagement letter and related Statement of Work (the "SOW"), and all related documentation, entered into by and among E&Y, Tribune and Ricketts Acquisition (collectively, the "Engagement Letter"), attached to this Application as Exhibit B, and (ii) a letter agreement (the "Side Letter"), entered into by and between Ricketts Acquisition and Tribune, in the form attached hereto as Exhibit C.[2]

---

[2] The Debtors previously filed an executed copy of the Formation Agreement with the Bankruptcy Court as Exhibit A to the Motion for Orders Pursuant to 11 U.S.C. Sections 105(a), 363 and 365 (I) Authorizing Tribune Debtors and CNLBC to (A) Enter Into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Including Interests in Wrigley Field, Comcast Sports Network and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing; (III) Authorizing Debtors WGN Continental Broadcast Company and Tribune Company to Enter Into and Perform Obligations Under Radio and Television Broadcast Agreements; and (IV) Granting Related Relief [Docket No. 2004] (the "Formation Agreement Approval Motion").

[2] Although the Engagement Letter was signed by Tribune and Ricketts Acquisition on May 26, 2011, it is not effective until approved by the Court. See Engagement Letter at p. 2; SOW at p. 8.

2

46429/0001-7649350v1

2.      The Debtors respectfully submit that the Court has already authorized retention of E&Y to act as the Accounting Firm pursuant to its orders authorizing Tribune and another of the Debtors, Tribune CNLBC, LLC ("CNLBC"), to enter into and perform under the Formation Agreement, which provides, among other things, that the Tribune, CNLBC and the other Debtors are authorized to take any and all actions contemplated by the Formation Agreement and perform any acts necessary or appropriate to implement, effectuate, and consummate the transactions provided for in the Formation Agreement. (See Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing Tribune Debtors and CNLBC to (A) Enter Into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Including Interests in Wrigley Field, Comcast Sports Network and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing; (III) Authorizing Debtors WGN Continental Broadcast Company and Tribune Company to Enter Into and Perform Obligations Under Radio and Television Broadcast Agreements; and (IV) Granting Related Relief [Docket No. 2213] (the "Tribune Transaction Approval Order") at 10).[3] The Formation Agreement expressly provides that the Accounting Firm will not be required to apply to the Bankruptcy Court for payment of any fees or expenses in connection with its services. See Formation Agreement § 1.5(c). Finally, the Debtors submit that, as E&Y is not being retained to

---

[3] (See also Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing Chicago National League Ball Club, LLC to (A) Enter into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Interests in Wrigley Field, Comcast Sports Net and Related Assets Free and Clear of all Lines, Claims, Rights, Interests and Encumbrances, (C) Assume and Assign Executory Contracts, (D) Operate and Pay Obligations Related to Cubs Business in the Ordinary Course Subject to Formation Agreement and Major League Baseball Rules and Regulations, and (E) Pledge Membership Interest in Chicago Baseball Holdings, LLC; (II) Recognizing Sufficiency of Notice; (III) Waiving Certain Actions; and (IV) Granting Related Relief, Docket No. 2332 (the "CNLBC Transaction Approval Order" and, together with the Tribune Transaction Approval Order, the "Transaction Approval Orders") at pp. 8-9 ¶ 8.)

46429/0001-7649350v1

"represent or assist the [debtors in possession] in carrying out the [debtors in possessions'] duties under" the Bankruptcy Code, but is instead being engaged as a neutral party for the purpose of determining the Final Special Distribution Amount pursuant to, and as contemplated by, the Formation Agreement, E&Y is not subject to retention pursuant to section 327(a) of the Bankruptcy Code for the services described herein. See 11 U.S.C. § 327(a). Nonetheless, to ensure that no disputes arise relating to E&Y's services, and further to ensure completeness of disclosure in connection therewith, the Debtors submit the instant Application. In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

3.  On December 8, 2008 (the "Petition Date"), each of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed a voluntary petition for relief under title 11 of chapter 11 of the United States Code (the "Bankruptcy Code"). On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, CNLBC, voluntarily commenced a chapter 11 case on October 12, 2009, and that case was procedurally consolidated with the other Debtors' chapter 11 cases by an order of the Bankruptcy Court entered October 14, 2009.

4.  The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the "Committee").

6.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 363 and 1107 of the Bankruptcy Code.

## BACKGROUND TO THE APPLICATION

7.  The Debtors have previously retained E&Y pursuant to section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to provide (i) valuation and business modeling services, (ii) marketing survey services, (iii) valuation services for certain FCC licenses held by the Debtors, and (iv) valuation services in connection with the application of fresh start accounting. The terms of the Debtors' existing retention of E&Y are set forth in four (4) retention applications the Debtors previously filed with the Bankruptcy Court in these chapter 11 cases. (See Docket Nos. 1298, 3516, 4594, 8277.) Each of the Debtors' previously-filed applications to retain E&Y was approved by an order of this Court. (See Docket Nos. 1783, 3804, 4779, 8459.) The Debtors do not intend the relief they seek in this Application to affect the terms of such retentions.

8.  E&Y's proposed services as the Accounting Firm arise under the Formation Agreement. As various pleadings the Debtors previously filed with the Court describe, on August 21, 2009, two of the Debtors (Tribune and Chicago National League Ball Club, LLC, n/k/a Tribune CNLBC, LLC) entered into the Formation Agreement with Ricketts Acquisition, among various other parties. (See Formation Agreement Approval Motion at ¶¶ 6, 18-28; Exhibit A.) Chicago Baseball Holdings, LLC ("New Cubs LLC"), a Delaware limited liability company, was created to effect various transactions pursuant to the Formation Agreement. Pursuant to the Formation Agreement, the business and assets of the Chicago Cubs Major League Baseball franchise were contributed to New Cubs LLC and certain cash distributions were made to CNLBC. The Bankruptcy Court authorized Tribune to enter into and perform its obligations under the Formation Agreement on September 24, 2009 pursuant to the

5

Tribune Transaction Approval Order. In addition, following CNLBC's filing of its chapter 11 petition, the Bankruptcy Court authorized CNLBC to enter into and perform its obligations under the Formation Agreement on October 13, 2009 pursuant to the CNLBC Transaction Approval Order. The transactions contemplated by the Formation Agreement, and various related transactions, closed on October 27, 2009.

9. Pursuant to section 1.5 of the Formation Agreement, within 90 days after the October 27, 2009 closing date of the Formation Agreement, Ricketts Acquisition was required to prepare and deliver a written statement to Tribune setting forth a detailed calculation of the Final Special Distribution Amount due to CNLBC under the Formation Agreement. See Formation Agreement § 1.5(b). Under the Formation Agreement, Tribune then had the option, which it exercised, to give written notice of any disagreement with Ricketts Acquisition's statement within 45 days of receiving it. *Id.* The Formation Agreement provided for a 30-day period following Tribune's delivery of its notice of disagreement for the parties to seek in good faith to resolve any differences regarding the statement. *Id.* at § 1.5(c). If the parties were not able to resolve their differences after the 30-day period for good faith resolution expired, the Formation Agreement further provides that the parties "shall have the right to . . . engage Ernst & Young . . . and submit to the Accounting Firm [E&Y] for review and resolution of any and all matters which remain in dispute . . . ." *Id.*

10. Tribune and CNLBC timely submitted written notice of their disagreement with certain calculations Ricketts Acquisition provided in its written statement, and Tribune and CNLBC thereafter negotiated with Ricketts Acquisition in an attempt to resolve those disagreements. Although the negotiations have been conducted amicably and in good faith, the parties have regrettably been unable to agree upon the computation of the Final Special

46429/0001-7649350v1

Distribution Amount. Accordingly, as the parties envisioned in the Formation Agreement, Tribune and CNLBC, together with Ricketts Acquisition, have determined it is appropriate for E&Y to be engaged to act as the Accounting Firm to determine the Final Special Distribution Amount.

11. Accordingly, Tribune, Ricketts Acquisition and E&Y have recently negotiated and entered into the Engagement Letter, pursuant to which E&Y has agreed to serve as the Accounting Firm as set forth in section 1.5(c) of the Formation Agreement, and Tribune and Ricketts Acquisition have negotiated and entered into the Side Letter (subject to Court approval pursuant to this Application). In that capacity, E&Y's tasks will include, but not be limited to, the following:

   a. Reviewing and considering initial briefs and relevant data, reports, work papers correspondence, affidavits, exhibits, etc. that Tribune and Ricketts Acquisition submit in support of their respective positions.

   b. Reviewing and considering Tribune's and Ricketts Acquisition's rebuttal briefs to the initial submissions, which shall be limited in scope to the specific matters or arguments addressed in the other party's initial brief.

   c. Submitting supplemental questions to Tribune and Ricketts Acquisition.

   d. Reviewing and considering the parties' responses to E&Y's supplemental questions.

   e. Preparing and issuing a final determination letter.

See SOW at 5-6. The specific services E&Y will provide as the Accounting Firm are fully detailed in the Engagement Letter, attached hereto as Exhibit B.[4] The dispute resolution services the Engagement Letter contemplates will not be duplicative of those services any of the Debtors' currently-retained professionals provide.

---

[4] The summaries of the Engagement Letter provided herein are qualified in their entirety by reference to the terms of the Engagement Letter. In the event of a conflict between this Application and the Engagement Letter, the Engagement Letter shall control.

46429/0001-7649350v1

12. In connection with the engagement of E&Y to act as the Accounting Firm, Tribune and Ricketts Acquisition have also entered into the Side Letter. The Side Letter provides that while the Parties' obligations to indemnify E&Y under the Engagement Letter are joint and several, Tribune and Ricketts Acquisition agree that as between Tribune and Ricketts Acquisition, each of Tribune and Ricketts Acquisition shall bear 50% of the indemnification obligations pursuant to the second paragraph of the Engagement Letter under the heading "Specific additional terms and conditions", provided that in the event a third party initiates a claim that results in indemnification obligations pursuant to such paragraph solely on the basis of a relationship with only one of Tribune or Ricketts Acquisition, such party shall bear 100% of the indemnification obligation pursuant to that paragraph. See Exhibit C.

## RELIEF REQUESTED

13. By this Application, Tribune seeks the Court's approval for E&Y to act as the Accounting Firm and for Tribune to enter into and perform its obligations under the Engagement Letter and the Side Letter. Tribune submits this Application solely as a protective measure. Tribune believes that the Bankruptcy Court has already authorized E&Y to act as the Accounting Firm, to the extent necessary, by the authority the Court granted Tribune in paragraph 10 of the Tribune Transaction Approval Order, which provides as follows:

> The Tribune Debtors are hereby authorized to effect the Proposed Business Combination and to contribute and transfer, and where applicable to cause any Affiliate to contribute and transfer, to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub) any and all assets owned or held by any of the Tribune Debtors constituting part of the Cubs Business, and such contributions and transfers shall be, and are, binding upon all parties in the Tribune Debtors' chapter 11 cases and enforceable in accordance with the terms of the Formation Agreement, the Ancillary Agreements, and this Order. *Each of the Tribune Debtors and each other person having duties or responsibilities under the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension, or this Order, and their respective directors, officers, agents, representatives, and attorneys, is authorized and empowered to (a) carry out all of the provisions of such*

*agreements and this Order, (b) issue, execute, deliver, file and record, as appropriate, any of such agreements and any additional agreements relating thereto, (c) take any and all actions contemplated by such agreements or this Order, and (d) issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension and this Order, all without further application to, or order of, the Court or further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of such entities.* Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension and this Order.

(Tribune Transaction Approval Order ¶ 10 (emphasis added).)

14. The Court's express grant of authority for Tribune and CNLBC to carry out all provisions of the Formation Agreement and to take any and all actions contemplated by the Formation Agreement thus provides all necessary authority for E&Y to act as the Accounting Firm and for Tribune to enter into and perform its obligations under the Engagement Letter and the Side Letter and to pay to E&Y any portion of its fees and expenses that are allocable to Tribune under the Engagement Letter, the Formation Agreement and the Side Letter. This conclusion is reinforced by the Formation Agreement's express provision that E&Y is not required to seek or obtain Bankruptcy Court approval for payment of its fees or reimbursement of its expenses in acting as the Accounting Firm. See Formation Agreement §1.5(c) ("The Accounting Firm shall not be required to apply to or seek approval of the Accounting Firm Expenses from the Bankruptcy Court or any applicable court.").

15. Furthermore, Tribune is not retaining E&Y within the ambit contemplated by section 327(a) of the Bankruptcy Code with respect to E&Y's services as the Accounting

Firm. Pursuant to that section, a debtor in possession may employ "professional persons...to represent or assist the [debtor in possession] in carrying out the [debtor in possession's] duties under" the Bankruptcy Code. 11 U.S.C. § 327(a). Here, E&Y will act solely as a neutral party, with the consent of both Tribune and Ricketts Acquisition and as expressly contemplated by the Formation Agreement, for the purpose of determining the Final Special Distribution Amount. This task is entirely unrelated to Tribune's duties as a debtor in possession under the Bankruptcy Code, and in addition is unrelated to E&Y's performance of its other duties on behalf of the Debtors. Accordingly E&Y's performance of services as the Accounting Firm does not fall within the scope of section 327(a) of the Bankruptcy Code.

16. Notwithstanding the foregoing factors, E&Y has advised the Debtors that it believes its performance of services as the Accounting Firm and Tribune's performance of its obligations under the Engagement Letter (other than payment of Tribune's share of the Accounting Firm's fees and expenses) may require Bankruptcy Court approval. Accordingly, and solely as a protective measure, Tribune submits the instant Application pursuant to sections 105(a) and 363 of the Bankruptcy Code.

17. The terms of E&Y's services as the Accounting Firm are set forth in the Engagement Letter. The Formation Agreement provides that the parties will bear responsibility for payment of the Accounting Firm's fees and expenses proportionately based upon the share of the contested amount ultimately determined by E&Y to be awarded to each party. Pending that determination, E&Y will invoice the parties on a weekly basis for its fees and expenses, with each party to bear one-half of such fees and expenses, subject to a true-up of the amounts in question upon completion, based on E&Y's determination of the amounts in dispute and the allocation of such fees and expenses in accordance with the Formation Agreement. See Wolski

46429/0001-7649350v1

Affidavit at ¶¶ 18-22. At the outset of E&Y's engagement, it will receive a $25,000.00 retainer from both Tribune and Ricketts Acquisition. See id. at ¶ 21. The retainer fee will be applied to each party's last invoice or refunded to the extent that the last invoice is less than the amount of the retainer. The Engagement Letter further provides for Tribune and Ricketts Acquisition jointly to indemnify E&Y and certain affiliated entities for matters relating to its services, subject to exceptions in the event of E&Y's fraud, gross negligence, willful misconduct, or breach of the terms of the Engagement Letter. Pursuant to the Side Letter, Ricketts Acquisition and Tribune agree that each shall bear 50% of the aforementioned indemnification obligations, provided that in the event a third party initiates a claim that results in any such indemnification obligations solely on the basis of a relationship with only one of Ricketts Acquisition or Tribune, such party shall bear 100% of the indemnification obligation called for in the SOW. In addition, the Engagement Letter provides that disputes relating to E&Y's services will be the subject of mediation and/or arbitration pursuant to the terms of the Engagement Letter.

## LEGAL AUTHORITY

18. Tribune seeks this Court's approval for E&Y to perform services as the Accounting Firm pursuant to sections 105(a) and 363 of the Bankruptcy Code. Section 105(a) provides that [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) provides that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).

19. As stated previously, the Debtors believe the Transaction Approval Orders already authorize E&Y to act as the Accounting Firm, and hence no further order is necessary. The Debtors further believe that given E&Y's proposed services as a neutral third party, rather

11

than in assisting the Debtors in carrying out their duties under the Bankruptcy Code, section 327(a) of the Bankruptcy Code is inapplicable to the instant Application.

20. The Debtors note, however, that they have already retained E&Y to provide (i) valuation and business modeling services, (ii) marketing survey services, (iii) valuation services for certain FCC licenses held by the Debtors, and (iv) valuation services in connection with the application of fresh start accounting. As a result, even if E&Y's retention were to be reviewed under the standards of section 327(a) of the Bankruptcy Code, E&Y has already demonstrated through the applications previously filed with this Court and the materials submitted with those applications that it does "not hold or represent an interest adverse to the estate" and is a "disinterested person" within the meaning of section 327(a) of the Bankruptcy Code. (See Docket Nos. 1298, 3516, 4594, 8277.) E&Y has reaffirmed in the Wolski Affidavit that all of those circumstances remain true through the date of the filing of this Application. See Wolski Affidavit at ¶ 25. Nothing in this Application is intended to abridge or otherwise modify E&Y's existing services on behalf of the Debtors.

21. Moreover, nothing in the proposed engagement of E&Y to act as the Accounting Firm would affect its existing retention by the Debtors. E&Y will act in its capacity as the Accounting Firm solely as a neutral party selected by Tribune and Ricketts Acquisition to resolve an ongoing matter that they have been unable to resolve to date.

22. The Formation Agreement expressly contemplated E&Y's potential service as the Accounting Firm. As a result, the prospect that E&Y would act as the Accounting Firm has been public for more than a year and a half. The services E&Y will provide as the Accounting Firm accord entirely with applicable law and orders of this Court. This Court should

46429/0001-7649350v1

accordingly authorize Tribune to enter into and perform its obligations under the Engagement Letter and the Side Letter.

## NOTICE

23. Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) counsel to E&Y; (vi) counsel to Ricketts Acquisition; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

24. No previous application for the relief sought herein has been made to this Court or to any other court.

46429/0001-7649350v1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form of the order attached to this Application, (i) authorizing E&Y to act as the Accounting Firm, as that term is defined in section 1.5(c) of the Formation Agreement, (ii) authorizing Tribune to enter into and perform its obligations under the Engagement Letter and the Side Letter, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
June 2, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP  
James F. Conlan  
Bryan Krakauer  
Kenneth P. Kansa  
Matthew G. Martinez  
One South Dearborn Street  
Chicago, IL 60603  
Telephone: (312) 853-7000  
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

By: _____  
Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
Patrick J. Reilley (No. 4451)  
500 Delaware Avenue, Suite 1410  
Wilmington, DE 19801  
Telephone: (302) 652-3131  
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND  
DEBTORS IN POSSESSION

46429/0001-7649350v1