## EXHIBIT A

**(Wolski Affidavit)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TRIBUNE COMPANY, et al.,[1] | ) | Case No. 08-13141 (KJC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## THIRD SUPPLEMENTAL AFFIDAVIT OF ERNST & YOUNG LLP PURSUANT TO RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Gregory E. Wolski, being duly sworn, deposes and says:

1.     I am a partner in Ernst & Young LLP ("E&Y LLP" or "EY"), a professional services firm which maintains an office at 5 Times Square, New York, N.Y. 10036, among other

---

[1]         The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (1355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicugoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLO (6327); forsalebyowner.com corp. (0219); ForSaleByOwnercom Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); I lean & Crown Advertising, Inc. (9808); 14omeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIALI Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603): Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612): Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337): Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMI S I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc.. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. ( 1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); VuluMail, Iac. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

locations.  I submit this supplemental affidavit on behalf of E&Y LLP (the "Third Supplemental

Affidavit"), pursuant to Bankruptcy Rule 2014(a), as a supplement to the Affidavit Pursuant to

Federal Rule of Bankruptcy Procedure 2014(a) in Support of Application for Order Authorizing

Retention and Employment of Ernst & Young LLP in Connection with Valuation and Business

Modeling, and Market Survey Services for the Debtors and Debtors in Possession *Nunc Pro*

*Tunc* to May 31, 2009 (as supplemented from time to time, the "Original Affidavit") annexed to

Debtors' Application for an Order Authorizing Debtors to Retain and Employ Ernst and Young

LLP to Provide (I) Valuation and Business Modeling Services and (II) Market Survey Services

to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to May 31, 2009

[Docket No. 1298] filed by the Tribune Company ("Tribune") and its affiliated debtors

(collectively, the "Debtors").  I also submit this Third Supplemental Affidavit as a supplement to

the Supplemental Affidavit of Ernst & Young LLP Pursuant to Rule 2014(a) of the Federal Rules

of Bankruptcy Procedure and the Order Directing (I) Joint Administration of Chapter 11 Cases

and (II) that Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of

Tribune Company, *et al.* Be Made Applicable to Chapter 11 Case of Chicago National League

Ball Club LLC (the "First Supplemental Affidavit") [Docket No. 2471].  I also submit this Third

Supplemental Affidavit as a supplement to the Second Supplemental Affidavit of Ernst &

Young LLP Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"Second Supplemental Affidavit"), which was annexed as Exhibit A to the Third Supplemental

Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to

Include Advisory Services Relating to Sales and Use Tax and Personal Property Tax Pursuant to

11 U.S.C. 327(a) and 1107 Nunc Pro Tunc to February 17, 2011 [Docket No. 8277].

2.      The facts set forth in this Third Supplemental Affidavit are based either upon my personal knowledge, upon information and belief, or in certain circumstances, upon client matter records kept in the ordinary course of business, which were reviewed by me or another employee of E&Y LLP under my supervision and direction.

3.      On August 24, 2009, the Debtors filed their Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing Tribune Debtors and CNLBC to (A) Enter into and Perform Obligations under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Including Interests in Wrigley Field, Comcast Sports Network and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter into Guaranties of Debt Financing; (III) Authorizing Debtors WGN Continental Broadcast Company and Tribune Company to Enter into and Perform Obligations under Radio and Television Broadcast Agreements; and (IV) Granting Related Relief (the "Tribune Transaction Approval Motion") [Docket No. 2004]. Among other things, the Tribune Transaction Approval Motion requested approval of that certain Formation Agreement dated as of August 21, 2009 (the "Formation Agreement"), which was annexed to the Tribune Transaction Approval Motion as Exhibit A.

4.      The Court approved the Tribune Transaction Approval Motion and the Formation Agreement by Order dated September 24, 2009 (the "Approval Order") [Docket No. 2213]. Following entry of the Approval Order, the following was for the first time brought to E&Y LLP's attention by the Debtors' special counsel, McDermott Will & Emery LLP:

3

(a)     Among other things, the Formation Agreement provides that the Bidder[2] must provide a written Statement concerning certain details of the transactions contemplated by the Formation Agreement to the Tribune Parties. (Formation Agreement § 1.5(b).)

(b)     After the delivery of the Statement, the Tribune Parties may "give written notice of disagreement with the Statement (the '**Notice of Disagreement**')." (*Id.*)

(c)     If a Notice of Disagreement is given, the Bidder and the Tribune Parties have a 30 day period within which to "resolve in writing any differences which they may have with respect to the matters specified in the Notice of Disagreement." (*Id.* § 1.5(c).)

(d)     The Formation Agreement further provides in relevant part as follows:

> If, at the end of such 30-day period, the differences as specified in the Notice of Disagreement are not resolved, Tribune Parties and Bidder shall have the right to (and each shall have the right to require the other to) within ten (10) Business Days following the end of such 30-day period, engage Ernst & Young (or, if Ernst & Young is unable or unwilling to accept such engagement, Deloitte & Touche or, if Deloitte & Touche is unable or unwilling to accept such engagement, a nationally recognized independent accounting firm mutually and reasonably acceptable to Tribune Parties and Bidder) (the "**Accounting Firm**") and submit to the Accounting Firm for review and resolution of any and all matters which remain in dispute and which were included in the Notice of Disagreement.

(*Id.*)

5.     Pursuant to the foregoing provisions of the Formation Agreement, the Debtors and Bidder have chosen to retain E&Y LLP to review and resolve certain issues set forth in a Notice of Disagreement (the "Proposed Engagement"). The terms of the Proposed Engagement

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning assigned to them in the Formation Agreement.

are set forth in that certain engagement letter and related statement of work dated as of May 26, 2011 (together, the "Engagement Letter") entered into by and among Ricketts Acquisition LLC and Debtor Tribune Company (together, the "Parties" and each individually a "Party") and E&Y LLP. A true and correct copy of the Engagement Letter is annexed hereto as Exhibit A.

6.      As set forth in the Engagement Letter, and subject to Bankruptcy Court approval of the Engagement Letter, E&Y LLP has agreed to provide certain services (the "Services") to the Parties, a summary description of which Services is set forth below and fully described in the Engagement Letter:[3]

- E&Y LLP shall act as the Accounting Firm, as defined in Section 1.5(c) of the Formation Agreement, to resolve certain disputes between the Parties arising under the Formation Agreement.

- Gregory E. Wolski will lead the engagement for E&Y LLP, and render the award in this matter (the "Award"). He may consult with or utilize other E&Y LLP professionals or staff, as necessary, to support, or otherwise in connection with, the Services under the Engagement Letter, subject to the restrictions and other terms of the Engagement Letter. A partner of E&Y LLP, independent of the Proposed Engagement, will perform a pre-issuance review of the Award.

- The disputed items to be resolved in the arbitration shall be limited to any and all matters which remain in dispute and which were included in the Notice of Disagreement as provided in, and subject to the limitations contained in, Section 1.5(c) of the Formation Agreement. E&Y LLP agrees to be bound by the provisions of Section 1.5(c) and Section 1.5(f) of the Formation Agreement, to the extent they relate to the duties and responsibilities of the Accounting Firm, except as modified by the Engagement Letter.

7.      Pursuant to the Formation Agreement, and in accordance with the terms set forth in the Engagement Letter, the Debtors have requested that E&Y LLP begin performing services in connection with the Proposed Engagement within three business days following the later of (a) Bankruptcy Court approval of the Engagement Letter and (b) June 28, 2011.

---

[3] To the extent that the summary of the Engagement Letter described herein differs from the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

8.    The Engagement Letter provides as follows:

33.    This Agreement applies to all Services performed at any time (including before the date of this Agreement).

34.    This Agreement shall terminate upon the completion of the Services. Either of us may terminate it, or any particular Services, earlier upon 30 days' prior written notice to the other. In addition, we may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

35.    The Parties shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

(Engagement Letter at 15.)

9.    The Engagement Letter further provides:

To the fullest extent permitted by applicable law, the Parties shall indemnify, defend and hold harmless, EY, its affiliates and the other EY Entities and their respective assignees, subcontractors, members, shareholders, directors, officers, managers, partners, employees, agents and consultants (collectively, "Indemnitees"), from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any of your affiliates, related to or arising out of the Services or the work product of any of the Personnel when performed in compliance with this Agreement, and (B) liabilities, losses, damages, out-of-pocket costs and out-of-pocket expenses (including, without limitation, reasonable outside attorneys' fees incurred in accordance with the terms hereof) suffered or incurred by any of the Indemnitees in connection with any claims or causes of action described in clause (A) above, except in the case of each of (A) and (B) as finally determined to have resulted solely from EY's fraud, gross negligence or willful misconduct or actions in breach of this Agreement. The Parties' obligations to EY shall be joint and several with respect to the Indemnitees and the indemnification provisions set forth herein. While the Parties have a separate arrangement on how to allocate any such indemnification costs between themselves, these separate agreements shall not impact the joint and several nature of the Parties' obligations to EY with respect to the indemnification

6

provisions.    Further, EY will not be responsible to seek performance under the indemnification provisions in accordance with the Parties' separately agreed upon terms.

(Engagement Letter at 6-7.)

10.    The Engagement Letter also provides:

20.    To the fullest extent permitted by applicable law and professional regulations, the Parties shall indemnify us, the other EY Firms and the EY Persons against all claims by third parties (including your affiliates) and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of the disclosure of any Report (other than Tax Advice), or a third party's use of or reliance on any Report (including Tax Advice).

(Engagement Letter at 13.)

11.    Moreover, the Engagement Letter provides:

Except for a claim seeking solely non-monetary or equitable relief, any dispute or claim arising out of or relating to this Agreement, the Services or any other services provided by us or on our behalf to you or at your request pursuant to this Agreement (including any matter involving any third party for whose benefit any such services are provided), shall be resolved by arbitration as set forth in this Agreement.

(Engagement Letter at 1.)

12.    Appendix 1 to the Engagement Letter sets forth certain "Dispute resolution procedures" for any dispute or claim arising out of or relating to the Engagement Letter.

13.    In addition, the Engagement Letter provides:

37.    This Agreement, and any non-contractual obligations arising out of this Agreement or the Services, shall be governed by, and construed in accordance with, the laws of New York applicable to agreements made, and fully to be performed, therein by residents thereof.  Any dispute relating to this Agreement or the Services shall be resolved as set forth in Appendix 1 to these Terms and Conditions.

(Engagement Letter at 15.)

14.    The Engagement Letter also provides as follows:

> If the performance of the Services is challenged on the basis of an alleged conflict of interest or alleged violation of independence requirements, or by motions to prohibit or restrict the Award, the Parties will promptly notify us, and we may engage our own legal counsel to contest any such challenge or motion.  The Parties, jointly and severally, shall pay all reasonable fees, expenses and costs, including reasonable fees and expenses of outside counsel, that we incur in connection with any such challenge or motion. However, if a motion to prohibit or restrict the Award is made by either Party, such Party will be responsible for all reasonable fees, expenses and costs, including reasonable fees and expenses of outside counsel, that we incur with any such motion. If such Party does not timely pay such fees, expenses and costs within 30 days after receipt of our invoice, the other Party will be responsible for paying such fees, expenses and costs, and will be entitled to recover such amounts from the Party who originally made such motion.

(Engagement Letter at 7-8.)

15.    Furthermore, the Engagement letter provides that:

> Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

(Engagement Letter at 7.)

16.    Among the "General Terms and Conditions" included in the Engagement Letter

are the following:

> 16.    You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated.

> 17.    You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims

8

arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by our fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

18.    You shall make any claim relating to the Services or otherwise under this Agreement no later than one year after you became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

19.    You may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or our or its subcontractors, members, shareholders, directors, officers, partners, principals or employees ("EY Persons"). You shall make any claim or bring proceedings only against us. The limitations in Sections 16 through 18 and this Section 19 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

(Engagement Letter at 13.)

17.    The Formation Agreement provides in relevant part as follows:

The fees and expenses of the Accounting Firm in connection with the Accounting Firm's determination of the Final Special Distribution Amount pursuant to this Section 1.5 (collectively, the "**Accounting Firm Expenses**") shall be borne as follows: (1) Tribune Parties shall pay an amount equal to the Accounting Firm Expenses multiplied by a fraction, the numerator of which is (x) the amount, if any, by which the Tribune Submitted Final Special Distribution Amount exceeds the Final Special Distribution Amount as determined by the Accounting Firm, and the denominator of which is (y) the amount by which the Tribune Submitted Final Special Distribution Amount exceeds the Bidder Submitted Final Special Distribution Amount; and (2) Bidder shall pay an amount equal to the Accounting Firm Expenses multiplied by a fraction, the numerator of which is (x) the amount, if any, by which the Final Special Distribution Amount as determined by the Accounting Firm exceeds the Bidder Submitted Final Special Distribution Amount, and the denominator of which is (y) the amount by which the Tribune Submitted Final Special Distribution Amount exceeds the Bidder Submitted Final Special Distribution Amount. . . . The Accounting Firm shall not be required to apply

9

to or seek approval of the Accounting Firm Expenses from the Bankruptcy Court or any applicable court.

(Formation Agreement § 1.5(c).)

18.      Subject to the Court's approval of the Engagement Letter, E&Y LLP will charge the Parties for services rendered and expenses incurred in connection with the Proposed Engagement, in accordance with the relevant provisions of the Engagement Letter and the Formation Agreement.

19.      Pursuant to the terms of the Engagement Letter and section 1.5(c) of the Formation Agreement, the Parties shall each be obligated to pay E&Y LLP's fees for the Services based on actual time incurred at the following hourly rates, plus expenses:

| Rank | Hourly Rate |
| --- | --- |
| Partner/Principal/Executive Director | $975 |
| Senior Manager | $740 |
| Manager | $595 |
| Senior | $430 |
| Staff | $300 |

20.      In addition, the Engagement Letter provides as follows:

29.      The Parties shall pay our professional fees and specific expenses in connection with the Services as detailed in the applicable Statement of Work.  You shall also reimburse us for other reasonable expenses incurred in performing the Services. Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally).  We may receive rebates in connection with certain purchases, which we use to reduce charges that we would otherwise pass on to you.

30.      We may charge additional professional fees if events beyond our control (including your acts or omissions) affect our ability to perform the Services as originally planned or if you ask us to perform additional tasks.

31.      If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall

reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

(Engagement Letter at 14.)

21.    The Engagement Letter further provides:

We will invoice the Parties in equal amounts throughout the term of this engagement. The fees and expenses of the Accounting Firm shall be borne by each Party in accordance with Section 1.5(c) of the Formation Agreement. Our Award letter to the Parties will provide a calculation in accordance with Section 1.5(c) to allocate the fees and expenses of the Accounting Firm, and such calculations will be incorporated into the Award.

We will begin work upon receiving a $25,000 retainer from each Party that will be applied to our last invoice or refunded to the extent such invoice is less than the amount of the remaining retainer. While we do not anticipate incurring expenses in excess of $10,000, we will inform you in advance if such amount is anticipated to be exceeded and we will not incur expenses in excess of $10,000 without the express consent of the Parties (which will not be unreasonably withheld). We will bill the Parties for our fees and expenses incurred (and applicable taxes, if any) on a weekly basis, in summary fashion, including information as to hours by each EY professional and applicable rates. Payment is due 30 days after receipt of our invoice, and we may charge a late payment fee of 1½% per month on any unpaid balance due us. All amounts due must be paid to us in full before we will issue any Report or provide testimony, or upon settlement or other resolution of the matter.

Pursuant to Section 1.5(c) of the Formation Agreement and paragraphs 5 and 10 of that certain Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered in Tribune's chapter 11 case (I) Authorizing Debtors and Debtors In Possession to (A) Enter Into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Interests in Wrigley Field, Comcast Sports Net and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing, (III) Authorizing Debtors WGN Continental

11

> Broadcasting Company and Tribune Company to Enter Into and
> Perform Obligations Under Radio and Television Broadcast
> Agreements, and (IV) Granting Related Relief (Docket No. 2213,
> entered Sept. 24, 2009), EY shall not be required to apply to the
> Bankruptcy Court for payment of the retainer nor in order to
> receive payment of any of its fees and/or expenses in connection
> with this matter.

(Engagement Letter at 10-11.)

22.     Consistent with the terms of section 1.5(c) of the Formation Agreement, and

unless otherwise directed by the Court, E&Y LLP does not intend to apply to the Court for the

retainer, or any fees or expenses payable by the Debtors under the Engagement Letter.  Likewise,

E&Y LLP does not intend to apply to the Court for the retainer, or any fees or expenses payable

by Ricketts Acquisition LLC under the Engagement Letter.  However, E&Y LLP will continue

to apply to this Court for payment of fees and expenses incurred under other E&Y LLP

engagement letters (with the exception of the Engagement Letter described herein) approved by

the Court in these cases.

23.     Foley & Lardner LLP ("Foley") represents Ricketts Acquisition LLC in

connection with the Proposed Engagement.  Foley has in the past represented and/or currently

represents E&Y LLP and/or its partners or former partners in litigation matters, and has in the

past represented and currently represents E&Y LLP with respect to bankruptcy retention, fee and

avoidance action issues.  All such matters are unrelated to the Debtors and these cases.  The

Debtors and Ricketts Acquisition LLC have consented to E&Y LLP's engagement pursuant to

the Engagement Letter under the circumstances.

24.     McDermott Will & Emery LLP ("MWE") represents Tribune in connection with

the Proposed Engagement.  MWE has in the past provided and currently provides tax advice to

E&Y LLP, and has in the past represented and/or currently represents E&Y LLP and/or its

partners or former partners in connection with regulatory, litigation, and transactional matters.

All such matters are unrelated to the Debtors and these cases. The Debtors and Ricketts Acquisition LLC have consented to E&Y LLP's engagement pursuant to the Engagement Letter under the circumstances.

25.    To the best of my knowledge, information, and belief formed after reasonable inquiry, and as set forth in detail in my Original Affidavit, the First Supplemental Affidavit, the Second Supplemental Affidavit, and this Third Supplemental Affidavit, E&Y LLP remains a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (the "Bankruptcy Code") in that E&Y LLP:

(a)    is not a creditor, equity security holder or an insider of the Debtors;

(b)    is not and was not, within two years before the Petition Date, a director, officer or employee of the Debtors; and

(c)    does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

The foregoing representation is based on our understanding that as a prepetition services provider to for the Debtors, E&Y LLP was not an "employee" of the Debtors as that term is used in the Bankruptcy Code.

13

26.    Accordingly, I believe that E&Y LLP remains eligible for retention by the Debtors under the Bankruptcy Code as described herein.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this **24** day of May, 2011.

_____
Gregory E. Wolski

Sworn to and subscribed before me this **24** day of May, 2011.

_____
Notary Public

My Commission Expires: **March 18, 2012**

> OFFICIAL SEAL
> MARTHA E. GALVAN
> Notary Public - State of Illinois
> My Commission Expires Mar 18, 2012

# EXHIBIT A



Ernst & Young LLP
Fraud Investigation & Dispute Services
155 North Wacker Drive
Chicago, Illinois 60606-1787

Tel: +1-312-879-2000
Fax: +1-312-879-2024
www.ey.com

*Confidential*                                                                                          May 26, 2011

Ricketts Acquisition LLC
Thomas Ricketts
Executive Vice President
200 South Wacker Drive
Suite 3700
Chicago, IL 60606

Tribune Company
David Eldersveld
General Counsel
435 North Michigan Avenue
Chicago, IL 60611

**Post Closing Dispute Arbitration between**
**Ricketts Acquisition LLC and Tribune Company**

Dear Messrs. Ricketts and Eldersveld:

Thank you for choosing Ernst & Young LLP ("we" or "EY") to perform professional services (the "Services") related to the resolution of a post-closing dispute between Ricketts Acquisition LLC ("Ricketts") and Tribune Company ("Tribune") (referred to collectively as the "Parties" or individually a "Party") in connection with the Formation Agreement dated as of August 21, 2009 among Ricketts Acquisition LLC, RAC Education Trust OCA, LLC, Tribune Company, Chicago National League Ball Club, LLC, Wrigley Field Premium Ticket Services, LLC, Diana-Quentin, LLC, Tribune Sports Network Holdings, LLC and Chicago Cubs Dominican Baseball Operations, LLC (the "Formation Agreement"). We appreciate the opportunity to assist you and look forward to working with you.

A Statement of Work is provided herein describing the particular Services, as well as any advice, presentations, or filings to be made, our related fees and any other arrangements. All of the Services will be subject to the terms and conditions of this letter, its attachments, including the General Terms and Conditions, and the applicable Statement of Work (together, this "Agreement").

Except for a claim seeking solely non-monetary or equitable relief, any dispute or claim arising out of or relating to this Agreement, the Services or any other services provided by us or on our behalf to you or at your request pursuant to this Agreement (including any matter involving any third party for whose benefit any such services are provided) shall be resolved by arbitration as set forth in this Agreement.



**ERNST & YOUNG**                                    May 26, 2011

The Agreement and this SOW are not effective until they are fully executed by the Parties, provided to EY and approved by the relevant Bankruptcy Court.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it to Gregory E. Wolski at your earliest convenience. If you have any questions about any of these materials, please do not hesitate to contact Gregory E. Wolski so that we can address any issues you identify before we begin to provide any Services.

Very truly yours,

*Ernst & Young LLP*

**Accepted and agreed:**

**Tribune Company**                              **Ricketts Acquisition LLC**

By _____              By_____
David Eldersveld                                  Thomas Ricketts
General Counsel                                   Executive Vice President

435 North Michigan Avenue                 200 S. Wacker Drive, Suite 3700
Chicago, IL 60611                                Chicago, IL 60606
(312) 222-9100                                    (312) 379-3700

2

Confidential

 ≡‖ *ERNST & YOUNG*                     May 26, 2011

The Agreement and this SOW are not effective until they are fully executed by the Parties, provided to EY and approved by the relevant Bankruptcy Court.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it to Gregory E. Wolski at your earliest convenience. If you have any questions about any of these materials, please do not hesitate to contact Gregory E. Wolski so that we can address any issues you identify before we begin to provide any Services.

Very truly yours,

*Ernst & Young LLP*

**Accepted and agreed:**

**Tribune Company**                                    **Ricketts Acquisition LLC**


By_____                    By_____
David Eldersveld                                      Thomas Ricketts
General Counsel                                       Executive Vice President

435 North Michigan Avenue                      200 S. Wacker Drive, Suite 3700
Chicago, IL 60611                                    Chicago, IL 60606
(312) 222-9100                                        (312) 379-3700

2

Confidential



May 26, 2011

## Statement of Work

This Statement of Work, dated May 26, 2011 (this "SOW"), is made by Ernst & Young LLP, and Ricketts and Tribune, pursuant to the letter agreement, dated May 26, 2011 (the "Letter Agreement"), between EY and the Parties.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Letter Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Letter Agreement, and references in the Agreement to "you" shall be deemed references to the Parties.

### Scope of services

We will provide Services in connection with the arbitration (the "Arbitration") pending between Ricketts and Tribune as described below.

You have jointly requested that we act as the Accounting Firm, as defined in Section 1.5(c) of the Formation Agreement, and we have agreed to act as the Accounting Firm, to resolve certain disputes between the Parties arising under the Formation Agreement. Gregory E. Wolski will lead the engagement for EY, and render the award in this matter (the "Award"). He may consult with or utilize other EY professionals or staff, as necessary, to support, or otherwise in connection with, the Services under this SOW, subject to the restrictions and other terms of this SOW. An EY partner that does not otherwise provide services to either Party in this Arbitration engagement or any other engagement will perform a pre-issuance review of the Award in this matter.

The disputed items to be resolved in this Arbitration (the "Disputed Items") shall be limited to any and all matters which remain in dispute and which were included in the Notice of Disagreement as provided in, and subject to the limitations contained in and the process described in, Section 1.5(c) and Section 1.5 (f) of the Formation Agreement. EY agrees to be bound by the provisions of Section 1.5(c) and Section 1.5(f) of the Formation Agreement, to the extent it relates to the duties and responsibilities of the Accounting Firm, except as modified by this SOW.

Each Party shall use reasonable best efforts to cause the Accounting Firm to render a decision resolving the Disputed Items within the time periods set forth in this SOW. The Parties agree that the Award will be final and binding on the parties and shall not be subject to appeal, review or reconsideration by any court in the absence of manifest error by the Accounting Firm in rendering its decision.

In acting as the Accounting Firm, and under this Agreement, EY shall be entitled to the privileges and immunities of arbitrators.

Confidential

 **ERNST & YOUNG**                                    May 26, 2011

**Procedure and schedule**

Each Party shall submit all correspondence, documents and papers to the Accounting Firm (with a copy delivered simultaneously to the other Party) electronically as follows:

| Accounting Firm | On behalf of Ricketts | On behalf of Tribune |
|---|---|---|
| Gregory E. Wolski | Patrick G. Quick, Esq. | Brooks B. Gruemmer |
| Ernst & Young LLP | Foley & Lardner LLP | McDermott Will & Emery LLP |
| 155 North Wacker Drive | 777 E. Wisconsin Avenue | 227 W. Monroe Street, Suite 4700 |
| Chicago, IL 60606 | Milwaukee, WI 53202 | Chicago, IL 60606 |
| Facsimile: (866) 297-5682 | Facsimile: (414) 297-4900 | Facsimile: (312) 984-7700 |
| Email: gregory.wolski@ey.com | Email: pgquick@foley.com | Email: bgruemmer@mwe.com |

Unless otherwise agreed by the Parties, if a Party makes a submission to us but fails to do so on a timely basis, we may in making the Award consider information that was not timely submitted or we may base the Award solely on the information that has been submitted in accordance with this SOW, at our sole discretion.

In addition to reviewing the information provided by the Parties, we may request reasonable additional information for purposes of clarifying matters relating to the contents of the initial briefs and rebuttal briefs by submitting supplemental questions in writing to one or both of the Parties. However, the Accounting Firm shall issue an Award in accordance with the terms of the Formation Agreement even if the quantity or quality of the evidence made available to us may be less than what we might otherwise require or desire.

The Award shall be in writing, in summary form, showing calculations or narrative setting forth the determination(s) as to each Disputed Item and the Accounting Firm's calculation of the Final Special Distribution Amount.. We will not disclose to third parties confidential information relating to the Parties, the Award or the Arbitration of which we become aware during the Arbitration, except as required by law or professional standards or in connection with any court or judicial proceeding relating to this matter or the enforcement of any Award, in which case EY will, except where precluded by law, provide written notice to the Parties prior to complying with such requirement so that the Parties (or either of them) may seek an appropriate protective order.

Upon written notice to the Parties or their representatives, we may seek legal advice from counsel (including, without limitation, EY in-house counsel) reasonably acceptable to the Parties that has not represented either of the Parties in the prior twelve months, if Gregory E. Wolski, in his sole discretion, requires such advice to perform the Services under this SOW. We will be entitled to rely as to matters of legal determination upon the advice of such counsel and the Parties shall, jointly and severally, reimburse EY upon demand for the reasonable fees and expenses of such outside counsel. Presently, we do not expect to seek such legal advice. Further, we will be entitled to rely upon any document, signature, notice, request, representation, confirmation, or other advice believed by us to be genuine, and we may assume that any person purporting to act on behalf of or represent a Party has

4

Confidential

 **ERNST & YOUNG**                                        May 26, 2011

been authorized to do so. All working papers prepared by the Accounting Firm will remain the property of EY. Nothing contained in the Agreement or this SOW shall require us to return, discard or destroy documents in contravention of our document retention policy, applicable law or professional requirements.

It is possible that, in the course of performing these Services, we may discover information that could have a bearing on the Parties' rights under the Formation Agreement, or otherwise, apart from the resolution of the Disputed Items. To the extent such information does not relate to the Disputed Items, we will not consider any of this information in making the Award.

There shall be no ex-parte communications relating to this engagement, both during the course of this engagement as well as subsequent to its completion, between Gregory E. Wolski or any other representative of EY who performs services pursuant to this SOW (or any person acting on behalf of any such person) and either of the Parties or their respective counsel, and all telephone or other oral communications between a Party or their counsel and Gregory E. Wolski or any other representative of EY who performs services pursuant to this SOW (or any person acting on behalf of any such person) shall be conducted at a time and in a manner that permits both Parties (or their counsel) to participate. For the avoidance of doubt, Gregory E. Wolski will be entitled to have telephone or other oral communications with EY outside or in-house counsel without the Parties or their representatives present. In addition, such EY outside or in-house counsel may communicate with either Party's counsel to address retention, fees/expenses and other issues unrelated to the substance of the issues being addressed by these Services. Subject to the foregoing, each of the Parties consents to the Accounting Firm communicating directly with their respective counsel (Foley & Lardner LLP and McDermott Will & Emery LLP) throughout this arbitration process. All communications by the Parties under this Agreement must be sent to the Accounting Firm by nationally recognized courier, facsimile or email with a copy sent simultaneously via the same medium to the other Party.

The procedures for the Arbitration and targeted schedules and dates are as follows:

5



ERNST & YOUNG                                    May 26, 2011

| Activity | Timeline |
|---|---|
| The Parties execute the engagement letter with EY as Arbitrator. | To be determined, but no later than June 6, 2011. |
| Bankruptcy court approves the engagement letter between the Parties and EY. | To be determined |
| Arbitration Start Date – three business days after the later of (a) the date the bankruptcy court approves the engagement letter and (b) June 28, 2011 | Arbitration Start Date to be determined |
| Parties pay retainers to EY. | 1 business day from Arbitration Start Date |
| Parties submit initial briefs and relevant data, reports, work papers, correspondence, affidavits, exhibits, etc., in support of respective positions. | 3 calendar days from Arbitration Start Date |
| Parties submit rebuttal briefs to initial submissions which shall be limited in scope to the specific matters or arguments addressed in the other Party's initial brief. | 10 calendar days from Arbitration Start Date |
| EY submits supplemental questions to the Parties in writing. | 15 calendar days from Arbitration Start Date |
| Each Party submits its response to EY's supplemental questions. | 25 calendar days from Arbitration Start Date |
| EY final determination letter issued. | 35 calendar days from Arbitration Start Date |

The Accounting Firm may extend the due dates in the foregoing schedule solely for purposes relating to supplemental questions and responses to supplemental questions in its reasonable discretion by notice to the Parties but may alter the procedures in the foregoing schedule only with the consent of the Parties.

**Limitations on scope**

The Accounting Firm will not render an assurance report or opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by applicable professional standards. None of the Services or any Reports will constitute any legal opinion or advice. None of the Services or any Reports will constitute any tax opinion or advice. We will not conduct a review to detect fraud or illegal acts.

**Your specific obligations**

The Parties shall notify us promptly in writing upon becoming aware of objections or issues with respect to the performance of the Services.

Without our prior written consent, you may not use (except as provided below) or publish the Award for any purpose, except as required by law or in connection with any court or judicial proceeding relating to this matter or the enforcement of the Award or under the Formation Agreement.

We also draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as the Parties' management responsibilities under paragraph 6 thereof and the Parties' representation, as of the date hereof, under paragraph 26 thereof.

6



May 26, 2011

## Specific additional terms and conditions

We may utilize certain third-party software and hardware (the "engagement tools") to perform the Services. The engagement tools are provided "as is," and none of EY or any other party involved in the creation, production or delivery of any engagement tool makes any warranties, express or implied, with respect to any thereof, including, without limitation, any implied warranty of merchantability or fitness for any particular purpose or use, or any warranty that the operation of any engagement tool will be uninterrupted, error free or that it will be compatible with any hardware or software used by you.

To the fullest extent permitted by applicable law, the Parties shall indemnify, defend and hold harmless, EY, its affiliates and the other EY Entities and their respective assignees, subcontractors, members, shareholders, directors, officers, managers, partners, employees, agents and consultants (collectively, "Indemnitees"), from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any of your affiliates, related to or arising out of the Services or the work product of any of the Personnel when performed in compliance with this Agreement, and (B) liabilities, losses, damages, out-of-pocket costs and out-of-pocket expenses (including, without limitation, reasonable outside attorneys' fees incurred in accordance with the terms hereof) suffered or incurred by any of the Indemnitees in connection with any claims or causes of action described in clause (A) above, except in the case of each of (A) and (B) as finally determined to have resulted solely from EY's fraud, gross negligence or willful misconduct or actions in breach of this Agreement. The Parties' obligations to EY shall be joint and several with respect to the Indemnitees and the indemnification provisions set forth herein. While the Parties have a separate arrangement on how to allocate any such indemnifications costs between themselves, these separate agreements shall not impact the joint and several nature of the Parties' obligations to EY with respect to the indemnification provisions. Further, EY will not be responsible to seek performance under the indemnification provisions in accordance with the Parties' separately agreed upon terms.

The rules of evidence will not apply to evidence in this proceeding. The Accounting Firm will determine the reliability of the evidence and will be the sole judge of the weight to be given any evidence.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

We have reviewed our available records to determine whether potential conflicts might arise out of our performance of the Services. However, the very nature, diversity, magnitude, and size of the EY organization and its past and present professional relationships do not allow us to be certain that each and every possible relationship or potential conflict has come to our attention. We have disclosed that we, or another EY Firm, have provided, and/or currently provide, professional services to Tribune Company (primarily consisting of tax and valuation services unrelated to the transaction that is the

7



subject of this engagement) as described in documentation previously provided to Ricketts. In addition, we have disclosed that EY has not provided services to Ricketts Acquisition LLC. If additional relevant relationships or potential conflicts come to our attention, we will promptly notify you. Each of the Parties agrees that it is not aware of any other services currently being provided to such Party by EY.  You agree that EY may provide the Services under this SOW, as well as other services to either of the Parties, as long as (a) no member of the EY team performing these Services (the "EY Team") is part of any team serving other engagements for the Parties, (b) the EY Team does not disclose to any other such team any information relating to this matter (except as required by applicable law, regulation or professional obligation) and (c) no member of the EY Team has or has had any substantive discussions or other communications regarding the Disputed Items with any member of any team serving other engagements for the Parties. EY represents that the EY Team will perform the Services in accordance with EY's professional standards for engagements of this nature.

If the performance of the Services is challenged on the basis of an alleged conflict of interest or alleged violation of independence requirements, or by motions to prohibit or restrict the Award, the Parties will promptly notify us, and we may engage our own legal counsel to contest any such challenge or motion. The Parties, jointly and severally, shall pay all reasonable fees, expenses and costs, including reasonable fees and expenses of outside counsel, that we incur in connection with any such challenge or motion.  However, if a motion to prohibit or restrict the Award is made by either Party, such Party will be responsible for all reasonable fees, expenses and costs, including reasonable fees, and expenses of outside counsel, that we incur with any such motion. If such Party does not timely pay such fees, expenses and costs within 30 days after receipt of our invoice, the other Party will be responsible for paying such fees, expenses and costs, and will be entitled to recover such amounts from the Party who originally made such motion.

Notwithstanding anything to the contrary in this Agreement, the following specific terms and conditions shall apply to the Services:

- The Agreement and this SOW are not effective until they are 1) fully executed by the Parties and provided to EY and 2) approved by the relevant Bankruptcy Court.

- References in the General Terms and Conditions of this Agreement (the "General Terms") to "you" refer to a Party or both Parties.

- References in the General Terms to "both", "neither", "either" or "the other" refers to EY and the Parties.

- Regarding Item 4 to the General Terms, EY will not subcontract any portion of the Services to other EY Firms.

- Regarding Item 7 to the General Terms, such cooperation of the Parties does not change the anticipated procedures, activities and timeline for this Arbitration, as detailed in this SOW.

- Regarding Item 12(c) to the General Terms, access to the Award should only be provided with our prior written consent in the form of an access letter. Based on the Parties desire for confidentiality in this matter, it is not anticipated that this will be a request of the Parties and

8

 **ERNST & YOUNG**                     May 26, 2011

we have therefore not provided a sample access letter as a part of this Agreement. If the Parties wish to provide the Award to a third party, we will provide a sample access letter. Consistent with Item 12(a) to the General Terms, the Parties may share the Award with Foley & Lardner LLP or McDermott Will & Emery LLP in their respective roles as counsel for each of the Parties and such Parties' auditors and other professional advisors, provided that any such distribution or use of the Award is subject to the terms and conditions of this Agreement, and the Parties shall remain liable for any breach or violation arising from any such distribution or use. In addition, the Parties may share the Award with Tribune Company and its subsidiaries and the Ricketts entities, as follows: MMR TMA Guaranty Co., LLC; RAC Education Trust Finance, LLC; RAC Education Trust OSA, LLC; Joe and Marlene Ricketts Education Trust; Ricketts Acquisition LLC; Chicago Baseball Holdings, LLC; Ancillary Building Leasing, LLC; Triangle Property Holdings, LLC; Wrigley Field Holdings, LLC; Wrigley Field Enterprises, LLC; Wrigley Field Parking Operations, LLC; Wrigley Field Premium Ticket Services, LLC; Chicago Cubs Baseball Club, LLC; Chicago Cubs Baseball Operations Dominicana, LLC, Major League Baseball and its affiliates; the Office of the Commissioner of Major League Baseball, provided that any such distribution or use of the Award is subject to the terms and conditions of this Agreement, and the Party sharing the Award shall remain liable for any breach or violation arising from any such distribution or use.

- Regarding Item 14 to the General Terms, EY acknowledges you may incorporate the conclusions in your consolidated financial statements provided that you do not refer to EY, the Services or the Report.

- Regarding Item 17 to the General Terms, the words "that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services" appearing therein shall not apply to this matter.

- Item 20 to the General Terms has been replaced by the indemnification provision in this Statement of Work.

- Regarding Items 29 and 31 to the General Terms, each use of the term expenses shall be limited to out-of-pocket expenses and the reference to internal legal costs in Item 31 shall not apply to this matter.

- Regarding Item 35 to the General Terms, the following shall be added at the end of the first sentence "; provided, however, that we shall not be entitled to any of the foregoing in the event that this Agreement is terminated as a result of us affirmatively accepting an engagement that prevents us from performing the Services in accordance with our professional standards."

- Regarding Item 36 to the General Terms, our respective confidentiality obligations under this Agreement shall survive for so long as such information remains confidential.

- Item 37 to the General Terms applies only to a dispute relating to this Agreement or the Services between one or both of the Parties, on the one hand, and EY, on the other hand.

9



May 26, 2011

Without limitation, it does not supersede the procedures for the Arbitration set forth in this SOW.

- Item 46 to the General Terms does not apply to this matter.

## Timetable

Unless otherwise agreed, as set forth in the timeline above, we expect to perform the Services during the period from the Arbitration Start Date to August 31, 2011 .

## Contacts

The Parties have identified Patrick G. Quick and Brooks B. Gruemmer as the contacts with whom we should communicate about these Services. Your contact at EY for these Services will be Gregory E. Wolski.

## Fees

The General Terms address our fees and expenses generally. The obligation to pay our fees is not contingent upon the nature of the Award.

The Parties shall pay our fees and expenses as follows:

The Parties shall, jointly and severally, pay our fees for the Services based on actual time incurred at the following hourly rates, plus expenses:

| Rank | Hourly rate |
| --- | --- |
| Partner/Principal/Executive Director | $975 |
| Senior Manager | $740 |
| Manager | $595 |
| Senior | $430 |
| Staff | $300 |

We may revise these rates from time to time upon advance written notice to you.

We will invoice the Parties in equal amounts throughout the term of this engagement. The fees and expenses of the Accounting Firm shall be borne by each Party in accordance with Section 1.5(c) of the Formation Agreement. Our Award letter to the Parties will provide a calculation in accordance with Section 1.5(c) to allocate the fees and expenses of the Accounting Firm, and such calculations will be incorporated into the Award.

We will begin work upon receiving a $25,000 retainer from each Party that will be applied to our last invoice or refunded to the extent such invoice is less than the amount of the remaining retainer. Each Party shall pay such retainer amount no later than the first business day after the Arbitration Start Date. While we do not anticipate incurring expenses in excess of $10,000, we will inform you in advance if such amount is anticipated to be exceeded and we will not incur expenses in excess of

10

Confidential



**≡ʃ ERNST & YOUNG**    May 26, 2011

$10,000 without the express consent of the Parties (which will not be unreasonably withheld). We will bill the Parties for our fees and expenses incurred (and applicable taxes, if any) on a weekly basis, in summary fashion, including information as to hours by each EY professional and applicable rates. Payment is due 30 days after receipt of our invoice, and we may charge a late payment fee of 1½% per month on any unpaid balance due us. All amounts due must be paid to us in full before we will issue any Report or provide testimony, or upon settlement or other resolution of the matter.

Pursuant to Section 1.5(c) of the Formation Agreement and paragraphs 5 and 10 of that certain Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered in Tribune's chapter 11 case (I) Authorizing Debtors and Debtors In Possession to (A) Enter Into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Interests in Wrigley Field, Comcast Sports Net and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing, (III) Authorizing Debtors WGN Continental Broadcasting Company and Tribune Company to Enter Into and Perform Obligations Under Radio and Television Broadcast Agreements, and (IV) Granting Related Relief (Docket No. 2213, entered Sept. 24, 2009), EY shall not be required to apply to the Bankruptcy Court for payment of the retainer nor in order to receive payment of any of its fees and/or expenses in connection with this matter.

In witness whereof, the Parties have executed this SOW as of the date set forth above.

*Ernst + Young LLP*

**Accepted and agreed:**

**Tribune Company**

By _David Eldersveld_
David Eldersveld
General Counsel

435 North Michigan Avenue
Chicago, IL 60611
(312) 222-9100

**Ricketts Acquisition LLC**

By_____
Thomas Ricketts
Executive Vice President

200 S. Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 379-3700

Attachment

11

Confidential



May 26, 2011

$10,000 without the express consent of the Parties (which will not be unreasonably withheld). We will bill the Parties for our fees and expenses incurred (and applicable taxes, if any) on a weekly basis, in summary fashion, including information as to hours by each EY professional and applicable rates. Payment is due 30 days after receipt of our invoice, and we may charge a late payment fee of 1½% per month on any unpaid balance due us. All amounts due must be paid to us in full before we will issue any Report or provide testimony, or upon settlement or other resolution of the matter.

Pursuant to Section 1.5(c) of the Formation Agreement and paragraphs 5 and 10 of that certain Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered in Tribune's chapter 11 case (I) Authorizing Debtors and Debtors In Possession to (A) Enter Into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Respecting Cubs-Related Assets, Interests in Wrigley Field, Comcast Sports Net and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing, (III) Authorizing Debtors WGN Continental Broadcasting Company and Tribune Company to Enter Into and Perform Obligations Under Radio and Television Broadcast Agreements, and (IV) Granting Related Relief (Docket No. 2213, entered Sept. 24, 2009), EY shall not be required to apply to the Bankruptcy Court for payment of the retainer nor in order to receive payment of any of its fees and/or expenses in connection with this matter.

In witness whereof, the Parties have executed this SOW as of the date set forth above.

*Ernst & Young LLP*

**Accepted and agreed:**

**Tribune Company**                                      **Ricketts Acquisition LLC**

By_____                    By_____
    David Eldersveld                                         Thomas Ricketts,
    General Counsel                                          Executive Vice President

    435 North Michigan Avenue                      200 S. Wacker Drive, Suite 3700
    Chicago, IL 60611                                    Chicago, IL 60606
    (312) 222-9100                                        (312) 379-3700

Attachment

11

Confidential

 **ERNST & YOUNG**

May 26, 2011

## General terms and conditions

**Our relationship with you**

1. We will perform the Services in accordance with applicable professional standards, including those established by the American Institute of Certified Public Accountants ("**AICPA**").

2. We are a member of the global network of Ernst & Young firms ("**EY Firms**"), each of which is a separate legal entity.

3. We will provide the Services to you as an independent contractor and not as your employee, agent, partner or joint venturor. Neither you nor we have any right, power or authority to bind the other.

4. We may subcontract portions of the Services to other EY Firms, who may deal with you directly. Nevertheless, we alone will be responsible to you for the Reports (as defined in Section 11), the performance of the Services, and our other obligations under this Agreement. From time to time, non-CPA personnel may perform the Services.

5. We will not assume any of your management responsibilities in connection with the Services. We will not be responsible for the use or implementation of the output of the Services, although we may otherwise provide advice and recommendations to assist you in your management functions and making decisions.

**Your responsibilities**

6. You shall assign a qualified person to oversee the Services. You are responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for your purposes.

7. You shall provide (or cause others to provide) to us, promptly, the information, resources and assistance (including access to records, systems, premises and people) that we reasonably require to perform the Services.

8. To the best of your knowledge, all information provided by you or on your behalf ("**Client Information**") will be accurate and complete in all material respects. The provision of Client Information to us will not infringe any copyright or other third-party rights.

9. We will rely on Client Information made available to us and, unless we expressly agree otherwise, will have no responsibility to evaluate or verify it.

10. You shall be responsible for your personnel's compliance with your obligations under this Agreement.

**Our reports**

11. Any information, advice, recommendations or other content of any reports, presentations or other communications we provide under this Agreement ("**Reports**"), other than Client Information, are for your internal use only (consistent with the purpose of the particular Services).

12. You may not disclose a Report (or any portion or summary of a Report), or refer to us or to any other EY Firm in connection with the Services, except:

    (a) to your lawyers (subject to these disclosure restrictions), who may use it only to give you advice relating to the Services,

    (b) to the extent, and for the purposes, required by subpoena or similar legal process (of which you will promptly notify us),

    (c) to other persons (including your affiliates) with our prior written consent, who have executed an access letter substantially in the form prescribed by the applicable Statement of Work and who may use it only as we have specified in our consent, or

    (d) to the extent it contains Tax Advice, as set forth in Section 13.

    If you are permitted to disclose a Report (or a portion thereof), you shall not alter, edit or modify it from the form we provided.

13. You may disclose to anyone a Report (or any portion or summary thereof) solely to the extent that it relates to tax matters, including tax advice, tax opinions, tax returns, or the tax treatment or tax structure of any transaction to which the Services relate ("**Tax Advice**"). With the exception of tax authorities, you shall inform those to whom you disclose Tax Advice that they may not rely on it for any purpose without our prior written consent.

Confidential

 **ERNST & YOUNG**

May 26, 2011

14. You may incorporate into your internal documents any summaries, calculations or tables based on Client Information contained in a Report, but not our recommendations, conclusions or findings. If you then disclose such internal documents to anyone, you shall assume sole responsibility for their contents and you shall not refer to us or any other EY Firm in connection with them.

15. You may not rely on any draft Report. We shall not be required to update any final Report for circumstances of which we become aware, or events occurring, after its delivery.

**Limitations**

16. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated.

17. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by our fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

18. You shall make any claim relating to the Services or otherwise under this Agreement no later than one year after you became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

19. You may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or our or its subcontractors, members, shareholders, directors, officers, partners, principals or employees (**"EY Persons"**). You shall make any claim or bring proceedings only against us. The limitations in Sections 16 through 18 and this Section 19 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

**Indemnity**

20. To the fullest extent permitted by applicable law and professional regulations, the Parties shall indemnify us, the other EY Firms and the EY Persons against all claims by third parties (including your affiliates) and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of the disclosure of any Report (other than Tax Advice), or a third party's use of or reliance on any Report (including Tax Advice).

**Intellectual property rights**

21. We may use data, software, designs, utilities, tools, models, systems and other methodologies and know-how (**"Materials"**) that we own or license in performing the Services. Notwithstanding the delivery of any Reports, we retain all intellectual property rights in the Materials (including any improvements or knowledge developed while performing the Services), and in any working papers compiled in connection with the Services (but not Client Information reflected in them).

22. Upon payment for particular Services, you may use any Materials included in the Reports relating to those Services, as well as the Reports themselves, as permitted by this Agreement.

**Confidentiality**

23. Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential and/or proprietary. Either of us may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of this Agreement,

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information,

(c) was known to the recipient at the time of disclosure or is thereafter created independently,

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement, or

13



**ERNST & YOUNG**                                    May 26, 2011

(e) must be disclosed under applicable law, legal process or professional regulations.

24. Either of us may use electronic media to correspond or transmit information and such use will not in itself constitute a breach of any confidentiality obligations under this Agreement.

25. Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, or for quality, risk management or financial accounting purposes.

26. With respect to any Services, if US Securities and Exchange Commission auditor independence regulations apply to the relationship between you or any of your associated entities and any EY Firm, or if you (or any entity or person related to you) have any filing obligation with the US Internal Revenue Service, you represent, to the best of your knowledge, as of the date of this Agreement, and as of the date of each Statement of Work hereunder, that neither you nor any of your affiliates has agreed, either orally or in writing, with any other advisor to restrict your ability to disclose to anyone the tax treatment or tax structure of any transaction to which the Services relate. An agreement of this kind could impair an EY Firm's independence as to your audit or that of any of your affiliates, or require specific tax disclosures as to those restrictions. Accordingly, you agree that the impact of any such agreement is your responsibility.

**Data protection**

27. We may collect, use, transfer, store or otherwise process (collectively, "**Process**") Client Information that can be linked to specific individuals ("**Personal Data**"). We may Process Personal Data in various jurisdictions in which we and the other EY Firms operate (which are listed at www.ey.com). We will Process Personal Data in accordance with applicable law and professional regulations, including, where applicable, the European Union Safe Harbor program of the US Department of Commerce, in which EY participates. We will require any service provider that Processes Personal Data on our behalf to adhere to such requirements. If any Client Information is protected health information under the Health Insurance Portability and Accountability Act, as amended, this Agreement is deemed to incorporate all of the terms otherwise required to be included in a business associate contract relating to such information.

28. You warrant that you have the authority to provide the Personal Data to us in connection with the performance

of the Services and that the Personal Data provided to us has been Processed in accordance with applicable law.

**Fees and expenses generally**

29. The Parties shall pay our professional fees and specific expenses in connection with the Services as detailed in the applicable Statement of Work. You shall also reimburse us for other reasonable expenses incurred in performing the Services. Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally). We may receive rebates in connection with certain purchases, which we use to reduce charges that we would otherwise pass on to you.

30. We may charge additional professional fees if events beyond our control (including your acts or omissions) affect our ability to perform the Services as originally planned or if you ask us to perform additional tasks.

31. If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

**Force majeure**

32. Neither you nor we shall be liable for breach of this Agreement (other than payment obligations) caused by circumstances beyond your or our reasonable control.

**Term and termination**

33. This Agreement applies to all Services performed at any time (including before the date of this Agreement).

34. This Agreement shall terminate upon the completion of the Services. Either of us may terminate it, or any particular Services, earlier upon 30 days' prior written notice to the other. In addition, we may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

35. The Parties shall pay us for all work-in-progress, Services already performed, and expenses incurred by

14



us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

36. Our respective confidentiality obligations under this Agreement shall continue for a period of three years following the termination of this Agreement. The other provisions of this Agreement that give either of us rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement.

**Governing law and dispute resolution**

37. This Agreement, and any non-contractual obligations arising out of this Agreement or the Services, shall be governed by, and construed in accordance with, the laws of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Any dispute relating to this Agreement or the Services shall be resolved as set forth in Appendix 1 to these Terms and Conditions.

**Miscellaneous**

38. This Agreement constitutes the entire agreement between us as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered.

39. Both of us may execute this Agreement, including Statements of Work (and modifications to them) by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement or any Statement of Work hereunder.

40. You represent that the person signing this Agreement and any Statement of Work hereunder on your behalf is expressly authorized to execute it and to bind you and any of your affiliates or others for whom Services are performed to its terms. You also represent that this Agreement has, if necessary, been considered and approved by your Audit Committee.

41. You agree that we and the other EY Firms may, subject to professional obligations, act for other clients, including your competitors.

42. Neither of us may assign any of our rights, obligations or claims under this Agreement.

43. If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

44. If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the Cover Letter, (b) the applicable Statement of Work and any attachments thereto, (c) these General Terms and Conditions, and (d) other attachments to this Agreement.

45. We may use your name publically to identify you as a client, but we may refer to you in connection with the Services only if it is a matter of public knowledge that we are providing them (or have provided them).

46. For administrative reasons, you may from time to time ask that fees and expenses for Services performed for your international affiliates or at international locations be invoiced to you or your designate there, in local currency. You guarantee the timely payment of all those invoices by your affiliates.

15

Confidential

 **ERNST & YOUNG**                    May 26, 2011

**Appendix 1**
**Dispute resolution procedures**

**Mediation**

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

**Arbitration**

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

16

Confidential



**≣ΙΙ ERNST & YOUNG**                    May 26, 2011

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

Confidential