Noteholder Proponents claimed were likely to cause delay, such as pending litigation and FCC proceedings concerning the media ownership rules and the need for waivers.[433]

177. Therefore, after considering the record of the Confirmation Hearing, the testimony of Mr. Prak and Mr. Rosenstein, as well as the submissions of the parties, the Court concludes the DCL Proponents have demonstrated a "reasonable prospect" that Tribune's FCC applications will be granted. The Noteholder Proponents have not shown that FCC approval will be so significant an obstacle to the implementation of the DCL Plan to render the plan infeasible, or that the Noteholder Plan is preferable to the DCL Plan from an FCC perspective.

## XI. THE DCL PLAN COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE CODE

### A. Section 1129(a)(1) – Compliance With Applicable Provisions Of The Bankruptcy Code.

178. In addition to the foregoing, the DCL Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code.

#### 1. Sections 1122 And 1123(a)(1)-(4) – Classification And Treatment Of Claims And Interests.

179. As set forth below and as demonstrated by the record in the Chapter 11 Cases, the DCL Plan fully complies with the classification requirements of section 1122 and 1123 of the Bankruptcy Code.

##### a. Sections 1122 And 1123 (a)(1) – Designate And Properly Classify Claims And Interests.

180. The DCL Plan constitutes a separate plan of reorganization for each of the Debtors.[434] In satisfaction of the requirements of section 1123(a)(1) of the Bankruptcy Code, Article III of the DCL Plan properly classifies all Claims and Interests with respect to each

---

[433] Tr. 4/12 at 27:16-21, 44:22-48:18 (Rosenstein). Under the Noteholder Plan, JPMorgan, Angelo Gordon and Oaktree would, at a minimum, hold non-attributable equity interests in Reorganized Tribune and non-attributable interests in certain other media companies.

[434] See DCL Plan § 3.1.1(b).

Debtor that require classification. In particular, Article III of the DCL Plan segregates into separate classes, with respect to each applicable Debtor, Priority Non-Tax Claims (Classes 1A through 111A), Other Secured Claims (Classes 2B through 111B), Senior Loan Claims (Class 1C), Senior Guaranty Claims (Classes 50C through 111C), Bridge Loan Claims (Class 1D), Bridge Loan Guaranty Claims (Classes 50D through 111D), Senior Noteholder Claims (Class 1E), Other Parent Claims (Class 1F), Convenience Claims (Class 1G), EGI-TRB LLC Notes Claims (Class 1I), PHONES Notes Claims (Class 1J), General Unsecured Claims (Classes 2E-111E), Intercompany Claims (Classes 1K through 111K), Securities Litigation Claims (Classes 1L through 111L), Tribune Interests (Class 1M), and Interests in the Filed Subsidiary Debtors (Classes 2M through 111M).[435]

181.    The Claims and Interests in each Class under Article III of the DCL Plan are substantially similar in accordance with section 1122(a) of the Bankruptcy Code.[436] As evidenced by the record in the Chapter 11 Cases, valid business, factual and legal reasons exist for the proposed classification of the various Claims and Interests created under the DCL Plan. Notwithstanding the arguments raised to the contrary in connection with the Confirmation Hearing, the Court hereby finds that such classification is appropriate, including with respect to classification of the Swap Claim, the DOL Claims (as defined herein), and the DB Fee Claim (as defined herein).

(i)    **Classification Of The Swap Claim**

182.    Section 3.2.6 of the DCL Plan classifies the Swap Claim in Class 1F as an Other Parent Claim. The Noteholder Proponents have objected to this classification and have asserted

---

[435] See DCL Plan Art. III.

[436] Id.

that the Swap Claim should be classified as a Senior Loan Claim.[437] The Court finds that there are several differences between the Swap Claim and the Senior Loan Claims that support the separate classification of such Claims. First, the Swap Claim is not substantially similar to the Senior Loan Claims. The Swap Claim arises from the exchange of periodic payments calculated by reference to interest rates and a hypothetical notional amount.[438] The Senior Loan Claims, on the other hand, are for money loaned. Second, the Swap Claim is governed by a different agreement than the Senior Loan Claims. The Swap Claim arises under a 1992 ISDA Master Agreement and the associated confirmations, not the Senior Loan Agreement.[439] Third, no evidence has been submitted indicating that the classification of the Swap Claim is the product of gerrymandering. To the contrary, the inclusion of the Swap Claim in the class of Other Parent Claims did not affect the voting of the Claims in that Class. As evidenced by the Voting Declarations, without considering the vote of the Swap Claim, the Other Parent Claims voted in favor of the DCL Plan.[440] Finally, the Court is persuaded that the Swap Claim does not have the same risk of avoidance as the Senior Loan Claims.[441] Upon consideration of the foregoing differences, the Court concludes that the classification of the Swap Claim as an Other Parent Claims is consistent with section 1122 of the Bankruptcy Code.

(ii)    **Classification Of The Department Of Labor Claims**

183.    The DCL Plan classifies Securities Litigation Claims in Classes 1L through 111L. Under the DCL Plan, Securities Litigation Claims include, among other things, Claims

---

[437]  Noteholder Obj. at ¶¶ 383-392.

[438]  DCL Ex. 376, General Disclosure Statement dated December 15, 2010 at 22 [Docket No. 7232].

[439]  Id.

[440]  See Voting Declaration, Docket No. 8882 at Ex. 2 pp. 27-41 (reflecting that 220 out of 231 holders of Other Parent Claims other than the holders of the Swap Claim that voted on the DCL Plan (95.24%), holding 88.02% by dollar amount of the voted claims, voted to accept).

[441]  See DCL Memorandum at 134-35.

arising from the purchase or sale of securities of the Debtors and violations of the Employment Retirement Security Act of 1974 ("ERISA").[442] The Department of Labor (the "DOL") has objected to the inclusion of the Claims alleged by the DOL against the Debtors (the "DOL Claims"), including Claims for potential violations of ERISA in connection with the Leveraged ESOP Transactions, in Class 1L as Subordinated Securities Claims.

184.    The Court finds that the classification of DOL Claims as Securities Litigation Claims under the DCL Plan is appropriate and overrules the DOL's objection. Among other considerations, the Court notes that in describing its various Claims against Tribune and its subsidiaries, the DOL explained that the DOL Claims are based on allegations that if Tribune complied with its fiduciary duties, (i) the ESOP would not have purchased any Tribune stock, much less overpaid for the stock in a $250 million transaction, and (ii) Tribune would not have "purchased all outstanding shares," and the ESOP "would have been left with stock in a solvent company".[443] The DOL also stated that "Tribune and its Subsidiaries knew that the ESOP was purchasing non-compliant shares ... and, nonetheless, participated in the purchase of the

---

[442]    Section 1.1.211 of the DCL Plan provides that Securities Litigation Claims include the following:

> . . . any Claim against any of the Debtors, except any Claim that survives confirmation and effectiveness of [the DCL] Plan pursuant to Section 11.6 [of the DCL Plan], (i) arising from the rescission of a purchase or sale of shares, notes or any other securities of any of the Debtors or an Affiliate of any of the Debtors, (ii) for damages arising from the purchase or sale of any such security, (iii) for violations of the securities laws or the Employee Retirement Income Security Act of 1974 (unless there has been a judicial determination by Final Order that any such Claim is not subject to subordination under section 510(b) of the Bankruptcy Code), including, without limitation, any Claim against any of the Debtors asserted by the United States Department of Labor, or for misrepresentations or any similar Claims related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (iv) asserted by or on behalf of the ESOP and/or any present or former participants in the ESOP in their capacity as such, (v) for attorneys' fees, other charges or costs incurred on account of any of the foregoing Claims, or (vi) for reimbursement, contribution or indemnification allowed under section 502 of the Bankruptcy Code on account of any of the foregoing Claims, including Claims based upon allegations that the Debtors made false and misleading statements or engaged in other deceptive acts in connection with the offer, purchase, or sale of securities.

[443]    See Docket No. 8107, DOL Obj. at 15.

shares."[444] The DOL's other Claim allegations also relate to such securities of Tribune. The Court is satisfied that the DOL Claims arise from the purchase or sale of a security of a Debtor as articulated in Telegroup, 281 F. 3d 133 (3d Cir. 2002). Accordingly, the Court concludes that the ERISA Claims alleged against Tribune and other Debtors arise from equity interests of Tribune and that such Claims are subject to subordination under section 510(b) of the Bankruptcy Code to the same level as common stock of Tribune.[445] In light of the foregoing, the Court finds and concludes that the DOL Claims and the Securities Litigation Claims are substantially similar, and therefore, the classification of the DOL Claims as subordinated Securities Litigation Claims under the DCL Plan is consistent with section 1122(a) of the Bankruptcy Code.

### (iii) Classification Of Senior Notes Indenture Trustee Claims

185. Under the DCL Plan, Senior Noteholder Claims in Class 1E include "all Claims arising under or evidenced by the Senior Notes Indenture and related documents and any Claim of the Senior Noteholders arising under the Pledge Agreement.[446] Deutsche Bank has raised an objection to the classification of its fee and expense claims the ("DB Fee Claims") as Class 1E Senior Noteholder Claims. The DB Fee Claims arise under or are evidenced by the Senior Notes Indentures and related documents.[447] The proofs of claims filed by Deutsche Bank in the Chapter 11 Cases include the DB Fee Claims together will all other claims arising under the

---

[444] Id.

[445] See DCL Memorandum at 148-54; see also John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs. 987 F.2d 154, 158 (3d Cir. N.J. 1993); Coram Healthcare, 315 B.R. at 349.

[446] See DCL Plan § 1.227.

[447] See Docket No. 7433, Motion of Deutsche Bank Trust Company Americas, Indenture Trustee Under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture for Estimation and Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 at ¶¶ 9, 12, 15, 16.

Senior Notes.[448] Accordingly, the Court finds that the classification of the DB Fee Claims with the Senior Noteholder Claims under the DCL Plan is consistent with the requirements of section 1122(a) of the Bankruptcy Code.

**b. Section 1123(a)(2) – Specify Unimpaired Classes Of Claims And Interests.**

186.    Article III of the DCL Plan identifies and describes each Class of Claims or Interests that is Unimpaired under the DCL Plan. In particular, Article III of the DCL Plan indicates that Claims and Interests in Classes 1A through 111A (Priority Non-Tax Claims), 1B through 111B (Other Secured Claims), 1G (Convenience Claims), and Interests in Classes 1M through 111M (Interests in Filed Subsidiary Debtors) are Unimpaired under the DCL Plan. Accordingly, the DCL Plan meets the requirements of section 1123(a)(2) of the Bankruptcy Code.[449]

**c. Section 1123(a)(3) – Specify Treatment Of Impaired Classes Of Claims And Interests.**

187.    Article III of the DCL Plan specifies that Claims in Classes 1C (Senior Loan Claims), Classes 50C-111C (Senior Guaranty Claims), Class 1D (Bridge Loan Claims), Classes 50D-111D (Bridge Loan Guaranty Claims), Class 1E (Senior Noteholder Claims), Class 1F (Other Parent Claims), Class 1I (EGI-TRB LLC Notes Claims), Class 1J (PHONES Notes Claims), Classes 2E-111E (General Unsecured Claims), Classes 1K-111K (Intercompany Claims), Class 1L-111L (Securities Litigation Claims), and Class 1M (Tribune Interests) are Impaired under the DCL Plan.[450] Article III of the DCL Plan also specifies the treatment of

---

[448]    Id.; see also Claim Nos. 3525-32.

[449]    DCL Plan Art. III.

[450]    Id.

such Impaired Claims under the DCL Plan.[451] Accordingly, the DCL Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### d. Section 1123(a)(4) – Equal Treatment Within Classes.

188. The DCL Plan complies with section 1123(a)(4) by providing each Claim or Interest in each particular Class with the same treatment as all other Claims or Interests in such Class, with the following exceptions.[452] Sections 3.2.4, 3.2.5, and 3.2.6 of the DCL Plan provide Holders of Claims in each of those Classes with options to elect different types of treatment.[453]

189. Section 3.2.4(d) of the DCL Plan provides each Arranger Bridge Lender the option to either (i) receive their Pro Rata share of the distributions set forth in Section 3.2.4(c) of the DCL Plan on account of Bridge Loan Claims held for their own account and not receive a release of any claims or causes of action from any Non-Arranger Bridge Lenders or (ii) forgo their Pro Rata share of the distributions set forth in Section 3.2.4(c) of the DCL Plan on account of Bridge Loan Claims held for their own account.[454] In the event an Arranger Bridge Lender elects the latter option, the distributions allocable to such Arranger Bridge Lender shall instead be distributed Pro Rata to the Non-Arranger Bridge Lenders.[455] In addition, each Arranger Bridge Lender electing the latter option shall receive a release by the Bridge Loan Agent and Non-Arranger Bridge Lenders of and from any and all Holder Released Claims and any other

---

[451] Id.

[452] See generally DCL Plan Art. III (specifying treatment of each class of claims).

[453] See DCL Plan §§ 3.2.4(d), 3.2.5(c), 3.2.6(c).

[454] See DCL Plan § 3.2.4(d).

[455] Id.

claims or causes of action related to or arising out of the Bridge Loan Agreement, any related documents, the Bridge Loan Claims or the Bridge Loan Guaranty Claims.[456]

190. Section 3.2.5(c) of the DCL Plan provides each Holder of Senior Noteholder Claims with the option to elect to receive either (i) a Pro Rata share of $431,041,451 in Cash plus interests in the Litigation Trust and Creditors' Trust or (ii) a Pro Rata portions of 6.27425% of the Distributable Cash, 6.27425% of the New Senior Secured Term Loan and 6.27425% of the New Common Stock in Reorganized Tribune plus interests in the Litigation Trust and Creditors' Trust.[457]

191. Section 3.2.6 of the DCL Plan provides each Holder of an Allowed Other Parent Claim the option to elect to receive either (i) an amount of Cash equal to 35.18% of the aggregate amount of such Holder's Allowed Other Parent Claim and a Pro Rata share of 17.1% of the Remaining Bridge Loan Reserve; (ii) assuming a total DEV of $6.87 billion, an amount of New Senior Secured Term Loan, Distributable Cash, and New Common Stock (a "Strip of Consideration") that equals 35.18% of such Holders Allowed Other Parent Claims and a Pro Rata share of a Strip of Consideration that has an aggregate value equal to the Bridge Settlement Proceeds; (iii) assuming a total DEV of $6.87 billion, a Strip of Consideration that has an aggregate value equal to 32.73% of such Holders' Allowed Other Parent Claim and a Pro Rata share of a Strip of Consideration that has an aggregate value equal to the Bridge Settlement Proceeds plus interests in the Litigation Trust and Creditors' Trust; or (iv) an amount of Cash equal to 32.73% of the aggregate amount of such Holder's Allowed Other Parent Claim and a

---

[456] Id.

[457] See DCL Plan § 3.2.5(c)(i).

Pro Rata share of 17.1% of the Remaining Bridge Loan Reserve plus interests in the Litigation Trust and Creditors' Trust.[458]

192.    The DCL Plan also provides certain Holders of Claims the option to receive beneficial interests in the Creditors' Trust. Holders of Claims in Class 1C (Senior Loan Claims), Class 1D (Bridge Loan Claims), Class 1E (Senior Noteholder Claims), Class 1F (Other Parent Claims), Class 1I (EGI-TRB LLC Notes Claims), and Class 1J (PHONES Notes Claims) that elect not to opt out of transferring any Disclaimed State Law Avoidance Claims they may have to the Creditors' Trust may receive beneficial interests in the Creditors' Trust in accordance with the terms of the DCL Plan.[459]

193.    The Court finds that each of the foregoing treatment options does not violate section 1123(a)(4) because every Holder of a Claim in each applicable Class has the same and equal opportunity to elect any of the treatment options available to such Class.

2.    **Section 1123(a)(5) – Adequate Means For Implementation Of The DCL Plan.**

194.    The DCL Plan, including Article V, provides adequate means for its implementation, including, among other things: (i) the consummation of certain Restructuring Transactions pursuant to Section 5.2 of the DCL Plan, including the Restructuring Transactions set forth on Exhibit 5. 2 of the DCL Plan (filed with the DCL Plan Supplement); (ii) except as otherwise provided under the DCL Plan or the Restructuring Transactions, the continued corporate existence of the Debtors and the vesting of assets in the Reorganized Debtors under Section 5.7 of the DCL Plan; (iii) the adoption of the corporate constituent documents that will govern the Reorganized Debtors and the identification of the initial boards of directors of (a)

---

[458] See DCL Plan § 3.2.6(c).

[459] See DCL Plan §§ 3.2.3, 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.9, and 14.3.1. As set forth in Section 3.2.6 of the DCL Plan, Holders of Other Parent Claims may elect to receive treatment that is not comprised of Creditors' Trust Interests.

Reorganized Tribune, as of and immediately following the Effective Date, in the manner provided in Section 5.3.1 of the DCL Plan and (b) each of the Reorganized Debtors other than Reorganized Tribune, in accordance with Section 5.3.3 of the DCL Plan and as set forth on Exhibit 5.3.3 to the DCL Plan; (iv) the issuance of new securities for distribution in accordance with the terms of the DCL Plan, as detailed in Section 5.4 of the DCL Plan; (v) the entry by the Reorganized Debtors into the New Senior Secured Term Loan and the Exit Facility, if any, as detailed in Sections 5.6 and 5.10 of the DCL Plan, respectively; (vi) the cancellation of the Loan Agreements, Loan Guaranty Agreements, Pledge Agreement, Notes issued under the Loan Agreements, Senior Notes, debentures, instruments, Indentures, EGI-TRB LLC Notes, PHONES Notes, Old Common Stock, and other Tribune Interests, as detailed in Section 5.8 of the DCL Plan; (vii) the cancellation of any Lien securing any Secured Claim (to the extent provided for in the DCL Plan) and of all of the Senior Guaranty Claims and Bridge Loan Guaranty Claims against the Guarantor Non-Debtors, as detailed in Section 5.9 of the DCL Plan; (viii) the settlement of certain claims and controversies, as detailed in Section 5.15 of the DCL Plan; (ix) the requirement that the Debtors, the Senior Lenders and any other Holders of Claims, which are eligible to receive New Common Stock, use their best efforts to cooperate in pursuing and in taking all reasonable steps necessary to obtain requisite FCC approvals, as detailed in Section 5.17 of the DCL Plan; (x) the various discharges, releases, injunctions, indemnifications and exculpations provided in Article XI of the DCL Plan, including the release of Guarantor Non-Debtors from Senior Guaranty Claims and Bridge Loan Guaranty Claims, as detailed in Section 11.2.5 of the DCL Plan; (xi) the continuation of certain employee benefit programs and collective bargaining agreements, as detailed in Sections 6.5 and 6.6 of the DCL Plan; and (xii) the assumption, assumption and assignment or rejection of certain executory

contracts and unexpired leases to which any Debtor is a party, as detailed in Article VI of the

DCL Plan. Accordingly, the DCL Plan complies with section 1123(a)(5) of the Bankruptcy

Code and provides adequate means to implement the DCL Plan.

### 3. Section 1123(a)(6) – Prohibition Against The Issuance Of Nonvoting Equity Securities And Appropriate Distribution Of Voting Power Among Classes Of Securities.

195.    Section 5.3.1 of the DCL Plan provides that the certificates of incorporation of

each of the Reorganized Debtors will, among other things, prohibit the issuance of nonvoting

equity securities to the extent required under section 1123(a) of the Bankruptcy Code.[460] This

prohibition is stated in the Certificate of Incorporation of Reorganized Tribune filed as Exhibit

5.3.1 to the DCL Plan (filed with the DCL Plan Supplement).[461] Also, the Certificate of

Incorporation of Reorganized Tribune provides for the allocation of voting power among New

Class A Common Stock and New Class B Common Stock.[462] Accordingly, the DCL Plan

complies with section 1123(a)(6) of the Bankruptcy Code.

### 4. Section 1123(a)(7) – Selection Of Directors And Officers In A Manner Consistent With The Interests Of Creditors And Equity Security Holders And Public Policy.

196.    Subject to Section 5.3 of the DCL Plan, the composition of the initial board of

directors of Reorganized Tribune following the Effective Date of the DCL Plan will be

determined by Oaktree, Angelo Gordon, and JPMorgan.[463] Based on the record of the Chapter

11 Cases, the Court finds that the DCL Plan provides for the selection of the initial board of

directors of Reorganized Tribune and the other Reorganized Debtors in a manner consistent

---

[460] DCL Plan § 5.3.1.

[461] See DCL Plan Ex. 5.3.1. at ¶4.

[462] Id. at ¶ 4.A.i(a).

[463] DCL Plan § 5.3.2.

with the interests of the Holders of Claims and Interests and public policy.[464] Accordingly, the

DCL Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### 5. Section 1123(b)(1) – Impairment Of Claims And Interests.

197. As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the

DCL Plan provides for the Impairment of certain Classes of Claims and Interests, while leaving

other Classes Unimpaired.[465] The DCL Plan thus modifies the rights of the Holders of certain

Claims and Interests and leaves the rights of others unaffected.

### 6. Section 1123(b)(2) Assumption, Assumption And Assignment, Or Rejection Of Executory Contracts And Unexpired Leases.

198. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VI and

other provisions of the DCL Plan provide for the assumption, assumption and assignment, or

rejection of the executory contracts and unexpired leases of the Debtors that have not been

previously assumed, assumed and assigned, or rejected pursuant to section 365 of the

Bankruptcy Code.[466] The DCL Plan further provides for the satisfaction of any monetary

amounts by which each executory contract and unexpired lease to be assumed is in default by

payment of the default amount in Cash on the Effective Date or on such other terms as the

parties to such executory contract or unexpired lease may agree.[467] Accordingly, the DCL Plan

complies with section 1123(b)(2) of the Bankruptcy Code.

### 7. Section 1123(b)(3) – Retention, Enforcement And Settlement Of Claims Held By The Debtors.

199. In accordance with section 1123(b)(3) of the Bankruptcy Code, the DCL Plan

provides for the Debtors to retain Ordinary Litigation Claims and the Preserved Causes of

---

[464] See DCL Plan § 5.3.2; DCL Plan Ex. 5.3.2(2), 5.3.3 [Docket No. 8231].

[465] See DCL Plan Art. III.

[466] DCL Plan Art. VI.

[467] DCL Plan § 6.2.

Action.[468]  Specifically, Section 5.16 of the DCL Plan provides that the Debtors and their

Estates shall retain the Ordinary Litigation Claims except as otherwise provided in the DCL

Plan, the Confirmation Order, or in any document, instrument, release, or other agreement

entered into in connection with the DCL Plan.  The DCL Plan further provides that the

Reorganized Debtors, as the successors in interest to the Debtors and their Estates, may enforce,

sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Ordinary

Litigation Claims.[469]  Section 11.2.6 of the DCL Plan provides that the Preserved Causes of

Action are expressly preserved and shall not be subject to the releases set forth in Sections

11.2.1 or 11.2.2 of the DCL Plan.  Pursuant to Section 13.2.1 of the DCL Plan, the Preserved

Causes of Action will be transferred to the Litigation Trust.  Section 13.3 of the DCL Plan

provides that the Litigation Trustee, as successor in interest to the Debtors and their Estates with

respect to the Preserved Causes of Action, may enforce, sue on, settle or compromise (or

decline to do any of the foregoing) any or all of the Preserved Causes of Action.  Accordingly,

the provisions in the DCL Plan comply with section 1123(b)(5) of the Bankruptcy Code.

### 8. Section 1123(b)(6) — Other Provisions Not Inconsistent With Applicable Provisions Of The Bankruptcy Code.

200.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the DCL Plan

includes additional appropriate provisions that are not inconsistent with the applicable

provisions of the Bankruptcy Code, including, among others, (i) the provisions of Article II of

the DCL Plan governing treatment on account of Allowed Administrative and Priority Tax

Claims; (ii) the provisions of Article VII of the DCL Plan governing distributions under the

DCL Plan; (iii) the provisions of Article XII regarding retention of jurisdiction by the Court

---

[468]    See DCL Plan §§ 5.16; 11.2.6.

[469]    DCL Plan § 5.16.

over certain matters after the Effective Date; and (iv) the release of the Guarantor Non-Debtors from Senior Guaranty Claims and Bridge Loan Guaranty Claims in Section 11.2.5 of the DCL Plan.[470] Such provisions, and all other additional discretionary provisions of the DCL Plan, are consistent with section 1123(b)(6) of the Bankruptcy Code.

### 9. Section 1123(d) — Cure Of Defaults.

201. Section 6.2 of the DCL Plan provides for the satisfaction of any monetary amounts by which each executory contract and unexpired lease to be assumed is in default in accordance with section 365(b)(1) of the Bankruptcy Code by payment of the such amount in Cash on the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. Unless otherwise determined in accordance with the procedures set forth in the Order Establishing Procedures for (I) Fixing Cure Amounts and (II) Providing Notice of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases by a Successor Reorganized Debtor,[471] all cure amounts have been fixed at zero dollars pursuant to Section 6.2 of the DCL Plan. Accordingly, the DCL Plan satisfies the requirements of section 1123(d) of the Bankruptcy Code.

### 10. Bankruptcy Rule 3016.

202. The DCL Plan is dated and identifies the entities submitting it as proponents and thereby satisfies Bankruptcy Rule 3016(a).[472] Other than conduct otherwise enjoined by the Bankruptcy Code, Article XI of the DCL Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities subject to such injunction, in accordance with Bankruptcy Rule 3016(c).

---

[470] DCL Plan, Art. II; VII; XI; XII.

[471] Docket No. 8745.

[472] See DCL Plan at § 1.1.192.

**B.** **Section 1129(a)(2) — Compliance With Applicable Provisions Of The Bankruptcy Code.**

203.    The DCL Proponents, as proponents of the DCL Plan, have complied with all

applicable provisions of the Bankruptcy Code including, without limitation, section 1125 of the

Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  As determined in Section IV.C.5

herein, the General Disclosure Statement, the DCL Disclosure Statement, and the procedures by

which the Ballots for acceptance or rejection of the DCL Plan were solicited and tabulated were

in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017

and 3018, the Solicitation Orders, and any and all other applicable rules, laws and

regulations.[473]  Accordingly, the DCL Proponents, as proponents of the DCL Plan, have

satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

**C.** **Section 1129(a)(3) — Proposal Of The DCL Plan Is In Good Faith.**

204.    The DCL Proponents have proposed the DCL Plan in good faith and not by any

means forbidden by law.  In determining that the DCL Plan has been proposed in good faith, the

Court has examined the totality of the circumstances surrounding the filing of the Chapter 11

Cases, the Mediator's reports,[474] the terms of the DCL Plan, the process leading to its

formulation, and the solicitation of votes on the DCL Plan.  Based on the evidence presented at

the Confirmation Hearing and the entire record of the Chapter 11 Cases, and as further

discussed in Section V herein, the Court finds that the DCL Plan has been proposed with the

legitimate purpose of reorganizing the affairs of each of the Debtors and maximizing the returns

available to creditors and other parties in interest.  Moreover, the arms-length negotiations

among the Debtors, the Senior Lenders, the Bridge Lenders, the Creditors' Committee, and

---

[473]    See generally Affidavits of Service.

[474]    DCL Ex. 383, Mediator's Report dated September 28, 2010 [Docket No. 5831] ; DCL Ex. 384, Mediator's Second Report dated October 12, 2010 [Docket No. 5936]; DCL Ex. 385, Mediator's Third Report dated January 28, 2011 [Docket No. 7656].

other parties in interest and each of their respective representatives, leading to the DCL Plan's

formulation, serves as independent evidence that the terms of the DCL Plan embody the best

interests of all the constituencies of the Debtors' estates and corroborates the DCL Proponents'

good faith in proposing the DCL Plan.[475] Accordingly, the DCL Plan satisfies the requirements

of section 1129(a)(3) of the Bankruptcy Code.

**D.  Section 1129(a)(4) — Court Approval Of Certain Payments As Reasonable.**

205.  No payment for services or costs and expenses in or in connection with the

Chapter 11 Cases, or in connection with the DCL Plan and incidental to the Chapter 11 Cases,

including Claims for professional fees, has been or will be made by a Debtor other than

payments that are subject to approval of the Court.  Section 2.1 of the DCL Plan provides for

the payment of various Administrative Claims, including Claims for professional fees, which

are subject to Court approval and the standards of the Bankruptcy Code.[476]  In addition, the

Senior Lender Fee/Expense Claims, Bridge Lender Fee/Expense Claims, and the Creditors'

Committee Member Fee/Expense Claims, to the extent payable by the Debtors pursuant to

Section 9.1 of the DCL Plan, will be subject to a "reasonableness" standard.[477]  Accordingly,

the DCL Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**E.  Section 1129(a)(5) — Disclosure Of Identity Of The Proposed Management, Compensation Of Insiders And Consistency Of Management Proposals With The Interests Of Creditors And Public Policy.**

206.  The DCL Plan complies with section 1129(a)(5) of the Bankruptcy Code.  The

Debtors have disclosed or have implemented procedures for disclosure all necessary

information regarding the Debtors' and Reorganized Debtors' initial officers and directors,

---

[475]  See, e.g., Tr. 3/8 at 75:14-87:2 (Kurtz) (describing negotiations after April Plan was terminated), Tr. 3/9 at 27:4-39:4 (Kulnis) (describing negotiations after April Plan was terminated and throughout the Mediation), Tr. 3/9 at 41:19-$2:16 (Kulnis) (describing negotiations generally).

[476]  DCL Plan § 2.1.

[477]  DCL Plan §§ 9.1.1- 9.1.3.

including for those directors and officers who may constitute insiders, the compensation paid or to be paid as of the Effective Date.[478]  Based on the record of the Chapter 11 Cases, the Court finds the appointment or continuance of the proposed directors and officers of the Reorganized Debtors under the DCL Plan to be consistent with the interests of the Holders of Claims and Interests and with public policy.  Accordingly, the DCL Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.     Section 1129(a)(6) — Approval Of Rate Changes.**

207.    The Debtors' current businesses do not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after Confirmation.[479] Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the DCL Plan.

**G.     Section 1129(a)(7) — Best Interests Of Holders Of Claims And Interests.**

208.    As demonstrated by (i) the liquidation analyses attached as Exhibit D to the General Disclosure Statement and set forth in Article IV of the DCL Disclosure Statement (collectively, the "DCL Liquidation Analysis") and (ii) the Expert Report of Brian Whittman, a Managing Director of Alvarez & Marsal, regarding the Liquidation Analysis, dated February 8, 2011 (the "Whittman Liquidation Report"),[480] each Holder of an Impaired Claim that has not accepted the DCL Plan will on account of such Claim, receive or retain property under the DCL Plan having a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.[481]  The DCL Liquidation Analysis and the Whittman Liquidation Report,

---

[478]  See DCL Plan § 5.3.2, 5.3.3; DCL Plan Exs. 5.3.2(1), 5.3.2(2) 5.5.3.

[479]  DCL Ex. 376, General Disclosure Statement dated December 15, 2010 at 7-15 [Docket No. 7232].

[480]  DCL Ex. 1109, Whittman Liquidation Report.

[481]  See Ex. 376, General Disclosure Statement dated December 15, 2010 at Ex. D [Docket No. 7232]; DCL Ex. 1109, Whittman Liquidation Report.

including the methodology used and the estimations and assumptions made therein, and the evidence related thereto that was presented or proffered at the Confirmation Hearing, (a) are persuasive and credible as of the dates such evidence was prepared, presented, or proffered, (b) have not been controverted by other persuasive evidence and have not been challenged, (c) are based upon reasonable and sound assumptions, and (d) provide a reasonable estimate of the liquidation value of the Debtors' Estates upon a conversion to a chapter 7 proceeding. Therefore, the DCL Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code with respect to each non-accepting creditor in each of the Impaired Classes under the DCL Plan.

209. In reaching this determination, the Court finds unpersuasive the arguments of the Holders of PHONES Notes Claims asserting that the PHONES Notes Claims would be economically better off in a chapter 7 liquidation than they would under the DCL Plan. The PHONES Notes Indenture expressly provides that upon any distribution of Tribune's assets in a bankruptcy proceeding, the holders of Senior Indebtedness (as defined in the PHONES Notes Indenture) are entitled to be paid in full before holders of the PHONES Notes are entitled to receive any distribution, and further, that any such distributions to PHONES Notes holders must be "paid over" to the person making such distribution until Senior Indebtedness is paid in full.[482] As a result, any value that would be distributed to Holders of PHONES Notes Claims would be redistributed to Holders of the Senior Loan Claims, the Bridge Loan Claims, the Noteholder Claims and the vast majority of other General Unsecured Claims of Tribune.[483] Accordingly, the Court finds that the Holders of PHONES Notes would not be entitled to any distribution in a chapter 7 liquidation. The treatment provided to Holders of Phones Notes

---

[482] See DCL Ex. 668 at § 14.02.

[483] See DCL Ex. 376, General Disclosure Statement dated December 15, 2010, Ex. D at 7 [Docket No. 7232].

Claims under the DCL Plan is, therefore, consistent with the requirements of section 1129(a)(7) of the Bankruptcy Code.

**H.      Section 1129(a)(8) — Acceptance Of The DCL Plan.**

210.      Section 1129(a)(8) of the Bankruptcy Code is satisfied with respect to (i) Classes 1A through 111A (Priority Non Tax Claims), Classes 1B-111B (Other Secured Claims), Class 1G (Convenience Claims), and Classes 2M-111M (Interests in Filed Subsidiary Debtors), each of which is Unimpaired under the DCL Plan and is conclusively presumed to have accepted the DCL Plan pursuant to section 1126(f) of the Bankruptcy Code[484] and (ii) Classes 1C (Senior Loan Claims), 1D (Bridge Loan Claims), 1F (Other Parent Claims), 50C-111C (Senior Guaranty Claims), 3E, 8E, 9E, 11E, 16E, 17E, 21E, 39E, 41E, 44E, 45E, 50E 57E, 59E, 61E, 62E, 63E, 65E, 66E, 68E, 69E, 70E, 71E through 78E, 80E through 84E, 88E through 90E, 93E through 95E, 97E, 99E, 100E, 101E, and 103E through 111E (General Unsecured Claims Against Filed Subsidiary Debtors), each of which voted to accept the DCL Plan.[485]

211.      Although section 1129(a)(8) is not satisfied with respect to (i) Classes 1L through 111L (Securities Litigation Claims), Classes 50D-111D (Bridge Loan Guaranty Claims), and Class 1M (Tribune Interests), each of which is Impaired and deemed to have rejected the DCL Plan pursuant to section 1126(g) of the Bankruptcy Code (the "Deemed Rejecting Classes")[486] and (ii) Classes 1E (Senior Noteholder Claims), 1I (EGI-TRB LLC Notes Claims), and 1J (PHONES Notes Claims), which voted to reject the DCL Plan[487] (the "Rejecting Voting Classes," and together with the Deemed Rejecting Classes, the "Rejecting

---

[484]  See DCL Plan §§ 3.2.1; 3.2.2; 3.2.7, 3.3.1, 3.3.2, 3.3.8.

[485]  See Voting Declaration, Docket No. 7918 at Ex. A-1; Docket No. 8882 at Ex. 1.

[486]  See DCL Plan §§ 3.2.11, 3.2.12, 3.3.4, 3.3.7.

[487]  See Voting Declaration, Docket No. 8882 at Ex. 1.

Classes"), the DCL Plan may still be confirmed because the DCL Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes.[488]

### I. Section 1129(a)(9) — Treatment Of Claims Entitled To Priority Pursuant To Section 507(a) Of The Bankruptcy Code.

212. The DCL Plan also meets the requirements set forth in section 1129(a)(9) of the Bankruptcy Code regarding the payment of Administrative Expense Claims, DIP Facility Claims, Priority Tax Claims, and Priority Non-Tax Claims. Section 2.1 of the DCL Plan provides that Allowed DIP Facility Claims shall be paid in full in Cash on or as soon as reasonably practical after the Effective Date.[489] In addition, Section 2.2 of the DCL Plan provides that, except to the extent such Holder agrees to different treatment, or as otherwise provided in the DCL Plan, each Holder of an Administrative Expense Claim shall receive payment in full in Cash on the latest to occur of (i) the Effective Date, if due on or before that date, (ii) the date upon which such Administrative Expense Claim becomes an Allowed Claim, (iii) with respect to Allowed Administrative Expense Claims not yet due on the Effective Date or that represent obligations incurred by the Debtors in the ordinary course of their business during the Chapter 11 Cases or assumed by the Debtors during the Chapter 11 Cases, such time as such Allowed Administrative Expense Claims are due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, or (iv) such other date as may be agreed upon between the Holder of such Allowed

---

[488] Notwithstanding the failure of the DCL Non-Voting Classes to affirmatively vote to accept or reject the DCL Plan, the Court also finds and determines that, consistent with applicable case law, the DCL Non-Voting Classes are deemed to accept the DCL Plan for purposes of section 1129(a)(8). See Heins v. Ruti-Sweetwater, Inc. (In re Ruti Sweetwater, Inc.), 836 F.2d 1263, 1267 (10th Cir. 1988) (classes of claims in which no claimholder voted either to accept or reject the plan deemed to accept for purposes of 1129(a)(8)); Adelphia, 368 B.R. at 259-264 (same).

[489] DCL Plan § 2.1.

Administrative Expense Claim and the Reorganized Debtors.[490] Further, Section 2.3 of the DCL Plan provides that except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim against any of the Debtors shall receive either, at the sole option of the Reorganized Debtors, (i) payment in full in Cash after such Priority Tax Claim becomes an Allowed Claim, or as soon as practicable thereafter, together with interest from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, (ii) except as otherwise determined by the Court at the Confirmation Hearing, regular installment payments in Cash equal to the Allowed amount of such Claim over a period ending not later than the fifth anniversary of the Petition Date, together with interest from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code, which installment payments shall commence after such Priority Tax Claim becomes an Allowed Claim, or (iii) such other treatment as agreed to by the Holder of an Allowed Priority Tax Claim and the Reorganized Debtors.[491] In addition, Article III of the DCL Plan provides that each Holder of an Allowed Claim in Classes 1A through 111A (Priority Non-Tax Claim) shall have its Claim Reinstated.[492] Accordingly, the DCL Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### J. Section 1129(a)(10) — Acceptance By At Least One Impaired, Non-Insider Class.

213.    As evidenced by the Voting Declarations, at least one Impaired Class of Claims has voted to accept the DCL Plan, determined without including the acceptance by any insider, with respect to all Debtors, other than the DCL Non-Voting Classes. Notwithstanding the

---

[490]    DCL Plan §2.2.

[491]    DCL Plan §2.3.

[492]    See DCL Plan §§ 3.2.1, 3.3.1.

failure of the DCL Non-Voting Classes to affirmatively vote to accept or reject the DCL Plan, consistent with applicable case law, the Court hereby finds and determines that section 1129(a)(10) has been satisfied with respect to each of the Debtors.[493]

**K.      Section 1129(a)(11) — Feasibility Of The DCL Plan.**

214.      The Debtors' financial projections attached as Exhibit E to the General Disclosure Statement and the evidence in the record, including, without limitation, the testimony of Suneel Mandava and the expert report of Lazard, is credible and persuasive and establishes that confirmation of the DCL Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, the Reorganized Debtors or any successor to the Reorganized Debtors under the DCL Plan.[494] Based on the evidence in the record, upon the Effective Date, the Reorganized Debtors will have sufficient operating cash and liquidity to meet their financial obligations under the DCL Plan and to fund ongoing business operations.[495] Moreover, as discussed in Section X herein, the DCL Plan includes appropriate provisions to address and cure issues that may arise in connection with the FCC Applications. Therefore, the DCL Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**L.      Section 1129(a)(12) — Payment Of Bankruptcy Fees.**

215.      Section 15.7 of the DCL Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation

---

[493] See Ruti-Sweetwater, 836 F.2d at 1267 (classes of claims in which no claimholder voted either to accept or reject the plan deemed to accept for purposes of 1129(a)(8)); Adelphia, 368 B.R. at 259-264 (same). As these Classes have been deemed to accept the DCL Plan for purposes of 1129(a)(8) (see fn. 488, supra) section 1129(a)(10) is thereby satisfied.

[494] Tr. 3/11 at 80:4-19; DCL Ex. 1104 at Ex. 2, Lazard Expert Report at 109.

[495] Id.

Hearing, shall be paid on the Effective Date.[496] Accordingly, the DCL Plan complies with section 1129(a)(2) of the Bankruptcy Code.

**M.      Section 1129(a)(13) — Retiree Benefits.**

216.      Section 6.5 of the DCL Plan provides that the Reorganized Debtors shall continue to perform all obligations under all Employee Benefit Plans (including retiree benefit plans) and all such Employee Benefit Plans will be assumed by the applicable Reorganized Debtors, subject to the Debtors' and Reorganized Debtors' rights under such Employee Benefit Plans. Accordingly, the DCL Plan provides for the continuation of retiree benefit obligations included within the protection of section 1114 of the Bankruptcy Code and complies with section 1129(a)(13) of the Bankruptcy Code.

**N.      Sections 1129(a)(14)-(a)(16) — Miscellaneous Provisions.**

217.      Based on the facts of the Chapter 11 Cases, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are inapplicable as the Debtors (i) have no domestic support obligations (section 1129(a)(14)), (ii) are not individuals (section 1129(a)(15)), and (iii) are for-profit businesses (section 1129(a)(16)).[497]

**O.      Section 1129(b) — Rejecting Voting Classes.**

218.      Based on the evidence proffered, adduced and/or presented at the Confirmation Hearing, the DCL Plan does not discriminate unfairly and is fair and equitable with respect to each of the Rejecting Classes as required by sections 1129(b)(1) and 1129(b)(2) of the Bankruptcy Code. In particular, there is no Class of Claims or Interests that are junior to Holders of Claims or Interests in the Rejecting Classes that will receive or retain any property under the DCL Plan with respect to their Claim or Interest other than Classes 2M-111M

---

[496]   DCL Plan § 15.7.

[497]   See DCL Ex. 376, General Disclosure Statement at 7-16 (description of Debtors' businesses); 19-39 (summary of Debtors' prepetition liabilities) [Docket No. 7232].

(Interests in Filed Subsidiary Debtors), which will be Reinstated pursuant to Section 3.3.8 of the DCL Plan for administrative convenience and in recognition of the significant value contribution by Tribune to creditors of the Filed Subsidiary Debtors. The Court finds that the value provided to the Holders of Senior Guaranty Claims by Tribune is adequate consideration in exchange for the Tribune Entities' retention of its equity interest.[498] In addition, as determined in Section V herein, the DCL Plan, including the settlement of certain LBO-Related Causes of Action embodied therein, is fair, equitable and reasonable with respect to all Classes of creditors, including, without limitation, Class 1E (Senior Noteholder Claims). Accordingly, the DCL Plan is fair and equitable under Section 1129(b) with respect the Rejecting Classes and can be confirmed notwithstanding the rejection of such Rejecting Classes.

219.     The Noteholder Proponents have argued that the DCL Plan violates section 1129(b) because it unfairly discriminates against Senior Noteholders by providing comparable distributions to the holders of Senior Noteholder Claims and Other Parent Claims, when the holders of Other Parent Claims allegedly are not entitled to the benefits of the subordination provisions in the PHONES Indenture.[499] The Court disagrees. The two largest groups of claims included in the Other Parent Claims Class under the DCL Plan are the Swap Claim and the Retiree Claims. As discussed above, the Swap Claim arises from the exchange of periodic payments calculated by reference to interest rates and a hypothetical notional amount.[500] The definition of "Senior Indebtedness" under the PHONES Indenture includes evidence of indebtedness similar to bonds, notes or indentures.[501] The Swap Agreement qualifies as a

---

[498] See Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.), 419 B.R. 585 (Bankr. S.D.N.Y. 2009).

[499] Noteholder Obj. at ¶¶ 393-399.

[500] See Section XI.A.1.a.(i).

[501] DCL Ex. 668 § 14.01.

financial instrument similar to bonds, notes, or indentures. The Retiree Claims, which comprise another 40% of the Other Parent Claims, are claims for pension and other deferred compensation resulting from the services provided by the retirees.[502] Accordingly, the Court finds and concludes that the Retiree Claims qualify as "indebtedness for . . . the deferred purchase price of . . . services" and fall within the scope of the subordination provision.[503]

220. Further, any discrimination resulting from the alleged improper application of the PHONES subordination is insufficient to constitute unfair discrimination within the meaning of section 1129(b). Rather, there is a rebuttable presumption that unfair discrimination exists where there is "(1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class . . . or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution." In re Armstrong World Indus., Inc., 348 B.R. 111, 121 (D. Del. 2006). The DCL Proponents offered the expert testimony of Brian Whittman, who testified that providing recoveries to trade creditors as though they were entitled to the benefit of the PHONES subordination would enhance aggregate recoveries by creditors holding Other Parent Claims by approximately $30,000 (and would only negatively impact the Senior Noteholders by approximately $3,000).[504] Whittman further testified that the total benefit to holders of Other Parent Claims – excluding the Swap Claim – from the PHONES subordination is approximately $400,000, of which only $40,000 flows from what would otherwise be the recoveries of the

---

[502] DCL Ex. 1110 at 15 n.30; DCL Plan Ex. 5.15.4 at ¶ C.

[503] DCL Ex. 668 § 14.01

[504] Tr. 3/14 at 79:16-19 (Whittman); DCL Ex. 1110 at 16 n.33.

Senior Noteholders.[505] Whittman also testified that if the entire class of Other Parent Claims is deemed not to be senior to the PHONES, the total impact on the recoveries of Senior Noteholders would be approximately $100,000,[506] which is roughly .024% of what Senior Noteholders stand to recover in initial distributions under the DCL Plan. The Court finds and concludes that the DCL Plan does not unfairly discriminate against the Senior Noteholders and overrules the objection.

221. Wilmington Trust also argues that the DCL Plan unfairly discriminates against the PHONES because the DCL Plan could be read as releasing claims asserted by Wilmington Trust in the adversary proceeding that it previously commenced.[507] The Court disagrees with this argument and finds and concludes that the DCL Plan does not release individual claims of creditors, unless those creditors have expressly consented to granting such releases or have voted to accept the DCL Plan and have not opted out of granting such releases. Accordingly, this objection is overruled.

**P. Section 1129(d) — Purpose Of DCL Plan.**

222. The principal purpose of the DCL Plan is not the avoidance of taxes or the avoidance of the requirements of section 5 of the Securities Act of 1933, and no evidence has been presented indicating that there has been any such filing by any governmental unit or any other party asserting such avoidance.[508] Therefore, the DCL Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

---

[505] Tr. 3/14 at 43:3-8 (Whittman).
[506] Id.
[507] See Docket No. 7996, Objection of Wilmington Trust to DCL Plan at ¶¶ 25-27; WT Post-Trial Brief at 16-18.
[508] See DCL Disclosure Statement at 4-7.

**Other Provisions Of The DCL Plan Are Also Consistent With The Bankruptcy Code.**

        **1.**        **Exemptions From Taxation.**

223.      Section 15.5 of the DCL Plan provides that (i) the issuance, transfer or exchange of notes, debentures or equity securities under the DCL Plan, (ii) the creation of any mortgage, deed of trust, lien, pledge or other security interest, (iii) the making or assignment of any lease or sublease, or (iv) the making or delivery of any deed or other instrument of transfer under the DCL Plan, will not be subject to any stamp tax or other similar tax. The Court finds that this provision is consistent with and permissible pursuant to section 1146(a) of the Bankruptcy Code.

        **2.**        **Exemptions From Securities Laws.**

224.      Section 5.4.1 of the DCL Plan provides that the issuance of the New Common Stock and the New Warrants and the distribution thereof under the plan shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code. Section 5.4.1 of the DCL Plan further provides that the DCL Proponents intend that Litigation Trust Interests issues pursuant to the DCL Plan shall not be "securities" under applicable laws. To the extent such Litigation Trust Interests are determined to be securities, the Court finds that such securities are appropriately exempted from registration under section 1145 of the Bankruptcy Code and under applicable securities laws.[509] The Court further finds that, without limiting the effect of section 1145 of the Bankruptcy Code, the DCL Plan appropriately provides for all documents, agreements, and instruments entered into on or as of the Effective Date contemplated by or in furtherance of the DCL Plan, including, without limitation, each of the Exhibits to the DCL Plan (filed with the DCL Plan Supplements), the

---

[509]  <u>See</u> DCL Plan § 5.4.1.

DCL Plan Supplements, and the Restructuring Transactions, to become effective and binding in accordance with their respective terms and conditions upon the parties thereto.[510]

### 3. Assumption And/Or Assignment Of Executory Contracts And Unexpired Leases.

225. Article VI of the DCL Plan, which provides for the assumption by the Debtors of all existing executory and postpetition contracts and unexpired leases other than of any contracts or leases (i) previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) included in the Global Contract Motion, (iv) expressly excluded from the assumptions set forth in Section 6.5 of the DCL Plan or as set forth on Exhibit 6.3 to the DCL Plan (filed with the DCL Plan Supplement), or (v) included in a pending motion to reject such executory contract or unexpired lease, is both beneficial and necessary to the Debtors' and Reorganized Debtors' business operations upon and subsequent to emergence from chapter 11.[511] The Court finds that assumption of each of these executory contracts and unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code and the DCL Plan is a sound exercise of the Debtors' independent business judgment.

### 4. Termination Of ESOP.

226. Section 6.8 of the DCL Plan provides that upon the Effective Date, the ESOP shall be deemed terminated in accordance with its terms, and the amount of unpaid principal and interest remaining on the ESOP Note dated April 1, 2007 shall be forgiven pursuant to Section 6.3 of the ESOP Loan Agreement by and between Tribune and GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust dated April 1, 2007.[512] Because, among other things, existing common shares of Tribune will be discharged and

---

[510] See DCL Plan § 5.4.1.

[511] DCL Plan § 6.1.1.

[512] DCL Plan § 6.8.

cancelled pursuant to the DCL Plan, the Termination of the ESOP, as provided in Section 6.8 of

the DCL Plan is a valid and appropriate exercise of the Debtors' business judgment and is

hereby approved. The right of the DCL Proponents to seek the findings described in the second

sentence of Section 6.8 of the DCL Plan is also preserved without prejudice pending further

order of the Court.

5. **Propriety Of Various Agreements And DCL Plan Related Documents.**

227. After carefully considering, among other things, the evidentiary record presented

at the Confirmation Hearing, the Court finds that the terms the DCL Plan are fair and reasonable

and are in accordance with applicable United States Supreme Court and Third Circuit case law.

228. Further, each of the Restructuring Transactions, each of the other transactions in

connection with the implementation of the DCL Plan, as identified in Article V of the DCL

Plan, and each of the transactions contemplated by or referenced in the DCL Plan and the DCL

Plan Supplement is integral to the terms, conditions, and settlements contained in the DCL Plan

and is critical to the effectuation of the purposes of the DCL Plan. All contracts, instruments,

releases, agreements and documents related to, or necessary to implement, effectuate, and

consummate, the DCL Plan, including, without limitation: (a) the Intercompany Claims

Settlement; (b) the New Warrant Agreement; (c) the Certificate of Incorporation of Reorganized

Tribune; (d) the By-Laws of Reorganized Tribune; (e) the Registration Rights Agreements; (f)

the New Senior Secured Term Loan; (g) the Exit Facility, if any; (h) the Trusts' Loan

Agreement; (i) the Step Two/Disgorgement Settlement; (j) the Retiree Claims Settlement; (k)

the Litigation Trust Agreement; (l) the Creditors' Trust Agreement; (m) each of the contracts,

instruments, agreements and documents to be executed and delivered in connection with the

Restructuring Transactions; and (n) the Debtors' ability to enter insurance policies providing tail

coverage as described in Section 11.6.1 of the DCL Plan, are valid, proper and reasonable under the circumstances and due and sufficient notice thereof has been provided in connection with, among other things, approval of the General Disclosure Statement, DCL Disclosure Statement, and the Confirmation Hearing.

**R.    Resolution Of Objections.**

229.    As presented at the Confirmation Hearing, the consensual resolution of certain DCL Plan Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interest of the Debtors and supported by the evidentiary record.  The objections of the following parties in interest shall be resolved by the insertion of the corresponding language in the Confirmation Order:[513]

- Ace Companies, Zurich and Travelers: "On the Effective Date, as a result of the inclusion of section 6.9 in the Plan, all proofs of claim asserted against any of the Debtors by (i) ACE American Insurance Company (on behalf of itself and its affiliates) (collectively, the "ACE Companies"), (ii) Zurich American Insurance Company ("Zurich"), and (iii) The Travelers Indemnity Company & Its Affiliates ("Travelers") shall be deemed withdrawn by the relevant claimant(s) without the need for further action by any of the Debtors, the ACE Companies, Zurich or Travelers, and the Court-appointed claims agent is authorized to modify the claims register in these cases to remove such claims from the claims register."

- California Franchise Tax Board and Internal Revenue Service: "Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, an Administrative Expense Claim that is an expense under sections 503(b)(1)(B) and/or 503(b)(1)(C) of the Bankruptcy Code, including interest due thereon under applicable non-bankruptcy law, shall be timely paid in the ordinary course of business without the need of any governmental unit to file a request for payment of such Administrative Expense Claim or any other document, including a Proof of Claim."

- California Franchise Tax Board, Internal Revenue Service, and Missouri Department of Revenue: "For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash."

---

[513]    See Docket No. 8607 (Chart of Resolved and Unresolved Objections).

- California Franchise Tax Board, Missouri Department of Revenue, and New York State Department of Taxation and Finance: "If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court."

- Federal Communications Commission: "No provision in the DCL Plan or this Order relieves the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC"). No transfer of control to the Reorganized Debtors of any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized Debtors, including, but not limited to, imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law."

- Internal Revenue Service: "Nothing in the Plan or this Order is intended to, or shall, confer jurisdiction on the Bankruptcy Court to determine the tax consequences of the Plan or to determine the tax liability of a non-debtor beyond the jurisdiction permitted under applicable law."

- Internal Revenue Service: "Notwithstanding any provision to the contrary, nothing in the DCL Plan or this Confirmation order shall affect the rights of the United States, including the Internal Revenue Service (1) from seeking, pursuant to applicable nonbankruptcy law, to assess or collect from any non-debtor person or entity that may be liable directly or indirectly for the Debtors' taxes, including but not limited to liability under 26 U.S.C. §§ 4975 & 6672, or (2) from assessing or collecting from the Debtor any taxes that the Bankruptcy Code renders nondischargeable."

- New York State Department of Taxation and Finance: "Notwithstanding anything to the contrary in the Plan, the Confirmation Order or any implementing Plan document, nothing shall affect the rights of the New York Statement Department of Taxation and Finance to take action against non-debtor third parties who may be responsible for payment of prepetition and/or postpetition tax liabilities of any of the Debtors, and such rights are expressly reserved."

- Office of the United States Trustee: "The Debtors and Reorganized Debtors will comply with their statutory obligations under 28 U.S.C. § 1930 and file post-confirmation reports to the extent required by law and, to the extent applicable,

in accordance with any agreements reached between the Debtors and the United States Trustee during the chapter 11 cases with respect to such matters."

- United States Environmental Protection Agency: "As to the United States, its agencies, departments or agents (collectively, the "United States"), nothing in this Confirmation Order or the Plan discharges, releases or precludes: (i) any environmental liability to the United States that is not a Claim; (ii) any environmental Claim of the United States arising on or after the Confirmation Date; (iii) any environmental liability to the United States on the part of any entity as the owner or operator of real property owned or operated after the Confirmation Date (provided, however, that nothing in this clause (iii) shall be construed to deny a discharge, release or preclusion of any Claim with respect to such real property for: (a) response costs, oversight costs or other monetary costs incurred prior to the Confirmation Date or (b) penalties for all days of alleged violation of law prior to the Confirmation Date; or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtors. Nor shall anything in this Order or the Plan enjoin or otherwise bar the United States from asserting or enforcing, outside this Court, any liability described in this paragraph.

  Notwithstanding any other provision in this Order or the Plan, the Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by the United States are discharged or otherwise barred by this Order, the Plan or the Bankruptcy Code."

- Warren Beatty: "The DCL Plan, the DCL Plan Supplement, any document filed in connection with the DCL Plan or the confirmation thereof, or the DCL Plan Confirmation Order (the "DCL Plan and Confirmation Documents") do not purport to affect, impair, or otherwise alter such rights as Warren Beatty ("Mr. Beatty") may otherwise have in or to certain motion picture, television, and related rights in the Dick Tracy character arising from an August 28, 1985 agreement between Mr. Beatty and Debtor Tribune Media Services, Inc. (each, if any, the "Dick Tracy Rights"); provided, further, that nothing in the DCL Plan and Confirmation Documents purports to in any way modify or alter and shall not be deemed to modify or alter the following Bankruptcy Court orders: (i) Order denying Motion to Dismiss Adversary Proceeding, dated November 9, 2009, Case No. 08-13141 (KJC) (Bankr. D. Del. 2008) [Docket No. 2535] and (ii) Stipulated Order Staying Adversary Proceeding, dated December 23, 2009, Case No. 09-50486 (KJC) (Bankr. D. Del. 2009) [Adv. Proc. No. 42]. All of Mr. Beatty's rights, interests, and remedies in and to the Dick Tracy Rights, if any, are expressly reserved and are not waived, modified, impaired, or otherwise altered by the DCL Plan and Confirmation Documents."

230. The Court finds and determines that all other DCL Plan Objections that were not resolved by agreement in connection with the Confirmation Hearing and not otherwise specifically addressed herein should be overruled.

**S. Comprehensive Settlement of Claims and Controversies.**

231. Based on the representations and arguments of counsel for the DCL Proponents and all other testimony given or proffered at the Confirmation Hearing or prior hearings and the full record of the Chapter 11 Cases, the findings and conclusions of which are hereby incorporated by reference as if fully set forth herein, the Court hereby finds that, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the DCL Plan, the provisions of the DCL Plan, including, without limitation, each of the injunctions, releases, exculpations, indemnifications, discharge, and the Bar Order set forth in Article XI of the DCL Plan, constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest or any distribution to be made pursuant to the DCL Plan on account of any Allowed Claim or Interest.

232. Moreover, based on the representations and arguments of counsel for the DCL Proponents and all other testimony and evidence given or proffered at the Confirmation Hearing or prior hearings and the full record of the Chapter 11 Cases, the Court hereby finds that each of the DCL Plan, the DCL Plan Supplements, and all of the settlements, compromises and resolutions set forth in or contemplated by the DCL Plan, including with respect to the LBO-Related Causes of Action, constitutes a fair and reasonable, good faith settlement and compromise of all claims or controversies relating to the rights of holders of Claims against and Interests in the Debtors.

## XII. THE NOTEHOLDER PLAN DOES NOT SATISFY THE BANKRUPTCY CODE'S REQUIREMENTS FOR CONFIRMATION

233. As further detailed herein, the Noteholder Plan fails to comply with certain applicable provisions of the Bankruptcy Code. As a result, for the reasons determined herein, the Court finds and concludes that the Noteholder Plan fails to meet the requirements for confirmation.

### A. The Noteholder Plan Does Not Comply With Section 1129(a)(10).

234. As noted above, section 1129(a)(10) of the Bankruptcy Code requires that "at least one class of claims that is impaired under the plan has accepted the plan."[514] As evidenced by the Voting Declarations, votes to accept or reject the Noteholder Plan were solicited from Holders of Claims and Interests against all 111 Debtors.[515] The Voting Declarations further evidence that a total of three out of 256 impaired Classes of Claims voted to accept the Noteholder Plan.[516] Of those three Classes, two Classes consisted of Claims against Tribune and one Class contained Claims against Tribune CNLBC, LLC.[517]

235. The DCL Proponents contend that the Noteholder Plan does not satisfy section 1129(a)(10) because the plain language of that section of the Bankruptcy Code requires acceptance by at least one class of claims that is impaired under the plan for each Debtor that is included in the plan and that has an impaired class in which creditors cast votes.[518] The Noteholder Proponents, on the other hand, have argued that section 1129(a)(10) is a per plan

---

[514] 11 U.S.C. § 1129(a)(10).

[515] Voting Declaration, Docket No. 7918 at Ex. B-1.

[516] Id.

[517] Id.

[518] DCL Post-Trial Brief at 103-06. As noted in Section XI.J above, the Court concludes that section 1129(a)(10) is satisfied for debtors for which no impaired creditors cast votes.

requirement that is satisfied when a single impaired class of claims against any Debtor votes to accept a joint chapter 11 plan proposed for a group of affiliated Debtors.[519]

236.    The Court agrees with the DCL Proponents. The Court notes that numerous other sections of the Bankruptcy Code presuppose that a plan is necessary for each debtor. For instance, sections 1121 of the Bankruptcy Code, entitled "Who may file a plan" only refers to "[t]he debtor".[520] Similarly, section 1123 of the Bankruptcy Code, entitled "Contents of a Plan" refers to "the debtor".[521] The mere fact that a single plan is filed for debtors whose estates are only jointly administered, and not substantively consolidated, does not change the plain language of the statute. As held in In re Genesis Health Ventures, Inc., 266 B.R. 591, 618 (Bankr. D. Del. 2001) (overruled on other grounds), "joint administration benefits case administration without affecting the creditors while substantive consolidation ensures the equitable treatment of the creditors." The decision in Genesis Health is consistent with the Third Circuit's holding that the separateness of individual debtors must be respected absent substantive consolidation.[522] Were the rule to the contrary, a small de minimis class of claims at a functionally immaterial debtor containing no assets could authorize the reorganization of a multi-billion business (like the Debtors) over the virtually unanimous opposition of all other creditors. The Court does not believe that section 1129(a)(10) is so easily satisfied.

237.    Based upon the foregoing, the Court is persuaded that the plain language of section 1129(a)(10) requires at least one accepting Impaired Class for each debtor that is

---

[519]    See Tr. 4/14 at 159:2-3 (Dublin).

[520]    11 U.S.C. § 1121(a).

[521]    11 U.S.C. § 1123.

[522]    See In re Owens Corning, 419 F.3d 195, 211 (3d Cir. 2005). The Court is not persuaded by the unpublished decision of In re SGPA, Inc., No. 01-02609 (RJW), 2001 Bankr. LEXIS 2291 (Bankr. M.D. Pa. Sept. 28, 2001), cited by the Noteholder Proponents, as the objecting parties in that case would not have been adversely impacted if the cases were substantively consolidated.

included in the plan and that has an impaired class in which creditors cast votes.[523]

Accordingly, the Noteholder Plan fails to satisfy section 1129(a)(10) because 109 of the 111

Debtors under the Noteholder Plan did not have an impaired accepting Class.

### B. The Noteholder Plan Does Not Comply With Section 1123(a)(5) Of The Bankruptcy Code.

238.    Multiple provisions of the Noteholder Plan require the non-consensual release by

all Holders of Loan Guaranty Claims against the Guarantor Non-Debtors on the Effective Date,

thereby releasing the Guarantor Subsidiaries from any and all Loan Guaranty Claims.[524] The

Noteholder Plan also requires the Guarantor Non-Debtors to guarantee the New Senior Secured

Term Loan on a nonconsensual basis.[525] The DCL Proponents have objected to the

aforementioned release and guaranty.[526] The Court, having considered the arguments of each

party and the record of the Chapter 11 Cases, finds that there is no evidence in the record upon

which the Court can determine that a non-consensual release of Loan Guaranty Claims against

the Guarantor Non-Debtors is permissible. Accordingly, the Noteholder Plan fails to provide

adequate means for implementation as required by section 1123(a)(5) of the Bankruptcy Code.

239.    In addition, Sections 3.2.11, 3.3.4, and 3.4.8 of the Noteholder Plan provide that,

solely to allocate value among the Debtors for purposes of issuing Initial Distributions, the

Holders of Intercompany Claims shall receive the treatment afforded to them in the

---

[523] See In re Neenah Enters., 2010 Bankr. LEXIS 3058, at *77 (Bankr. D. Del. July 6, 2010) ("In accordance with the requirements of section 1129(a)(10) of the Bankruptcy Code . . . at least one Impaired Class of Claims against each Debtor has accepted the Plan . . . . Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code." (emphasis added)); In re Wireless Commc'ns Holdings Inc., Case No. 98-2007 (Bankr. D. Del. Mar. 26, 1999) (noting that section 1129(a)(10) requires a class of impaired accepting creditors at each debtor); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992) (noting that at least one impaired class in each substantively consolidated group of debtors voted to accept the plan)

[524] Noteholder Plan § 1.1.128; 5.9; 11.1.1.

[525] Noteholder Plan § 5.6.1; 1.1.177.

[526] Docket No. 8011, DCL Objection to Noteholder Plan (hereinafter "DCL Obj.") at 38-40; DCL Post-Trial Brief at 107-108.

Intercompany Claims Settlement incorporated in the DCL Plan. Section 5.19 of the Noteholder Plan provides that Intercompany Claims will be ignored until third party claims are paid in full, but before any Holder of an Unsecured Claim against Tribune or a Guarantor Debtor receives postpetition interest on account of such Claim from any source other than from recoveries on account of Creditors' Trust interests, the prepetition Intercompany Claims against the relevant Debtor must receive payment in full.[527] Based on the record of the Chapter 11 Cases, the Court is persuaded that such treatment could result in the improper distribution of the remaining value of the Guarantor Subsidiaries to Holders of Claims against Tribune before the Holders of Claims against the Guarantor Subsidiaries could recover the postpetition interest to which they would be entitled. As a result, the Court finds that the Noteholder Plan fails to adequately implement a settlement of Intercompany Claims, and therefore, fails to meet the requirements of section 1125(a) of the Bankruptcy Code.

### C. The Noteholder Plan Does Not Comply With Section 1123(a)(3).

240. Article III of the Noteholder Plan provides that Classes 1C-1 (Step One Senior Loan Claims), 50C-1 through 111C-1 (Step One Senior Loan Guaranty Claims), 1C-2 (Swap Claim), 50C-2 through 111C-2 (Swap Guaranty Claims), Class 1D (Step Two Senior Loan Claims), Classes 50D through 111D (Step Two Senior Loan Guaranty Claims), Class 1E (Bridge Loan Claims), Classes 50E through 111E (Bridge Loan Guaranty Claims), Class 1F (Senior Noteholder Claims), Class 1G (Other Parent Claims), Classes 50G through 111G (Other Guarantor Debtor Claims), Class 1H (EGI-TRB LLC Notes Claims), Class 1I (PHONES Notes Claims), and Class 1K (Subordinated Securities Claims) are to receive consideration comprised of, among other things, Distribution Trust Interests. Section 1.1.92 of the Noteholder Plan

---

[527] See DCL Post-Trial Brief at 109-10.

provides that the Holders of Distribution Trust Interests would receive their share, if any, of

distributions from the Distribution Trust in accordance with terms of the Distribution Trust

Agreement, included as Exhibit 7.16.1 to the Noteholder Plan (filed with the Noteholder Plan

Supplement) and Litigation Distribution Orders. After carefully considering the terms of the

Distribution Trust Agreement and, mindful that the Litigation Distribution Orders would not be

entered until after confirmation of the Noteholder Plan, the Court finds that the Noteholder Plan

does not adequately specify the size or timing of distributions to the Holders of Claims and

Interests under the Noteholder Plan. The Noteholder Proponents have submitted no further

evidence sufficiently clarifying such distributions. In light of the insufficient record with

respect to the treatment that would be provided to certain Holders of Impaired Claims under the

Noteholder Plan, the Court finds that the Noteholder Plan fails to meet the requirements of

section 1123(a)(3).

**D.      The Noteholder Plan Does Not Comply with Section 1129(a)(8).**

241.    The Noteholder Plan fails to meet the requirements of section 1129(a)(8) of the

Bankruptcy Code with respect to (i) Classes 1C-1 (Senior Loan Claims), Classes 50C-1-111C-1

(Step One Loan Guaranty Claims), Class 1C-2 (Swap Claim), Classes 50C-2-111C-2 (Swap

Guaranty Claims), Class 1D (Step Two Senior Loan Claims), Classes 50D-111D (Step Two

Loan Guaranty Claims), Class 1E (Bridge Loan Claims), Classes 50E-111E (Bridge Loan

Guaranty Claims), Class 1G (Other Parent Claims), Classes 50G-57G, 59G, 61G-63G, 65G-

66G, 68G-78G, 80G-84G, 88G-90G, 94G-95G, 97G, 99G-101G and 103G-111G (Certain Other

Guarantor Debtor Claims), Class 1H (EGI-TRB LLC Notes Claims), and Class 1K

(Subordinated Securities Claims), each of which is Impaired and voted to reject the Noteholder

Plan and (ii) Class 1L (Tribune Interests), which is Impaired and have rejected the Noteholder

Plan pursuant to section 1126(g) of the Bankruptcy Code. The Court finds that the Noteholder

Plan may not be confirmed because, as determined in Section XII.E herein, the Noteholder Plan fails satisfy section 1129(b) of the Bankruptcy Code with respect to such Classes.

**E.      The Noteholder Plan Does Not Comply With Section 1129(b).**

242.      The Noteholder Plan proposes to provide the Holders of Senior Loan Claims and Senior Guaranty Claims solely with New Common Stock and/or New Warrants, while Senior Noteholders and Holders of Other Parent Claims receive Cash, New Senior Secured Term Loan, and New Common Stock and/or New Warrants.[528] The Court finds that there is insufficient evidence to conclude that the different treatment of Senior Loan Claims, Senior Noteholder Claims, and Other Parent Claims is supported by a reasonable basis or essential to the confirmation of the Noteholder Plan. Consequently, the Court cannot find that the Noteholder Plan satisfies the requirements of section 1129(b).

243.      Further, upon careful consideration of the record in the Chapter 11 Cases, the Court finds that there is insufficient evidence to support a finding that the Noteholder Plan otherwise meets the requirements of section 1129(b) of the Bankruptcy Code. In light of the insufficient evidence with respect to the treatment of certain Impaired Classes under the Noteholder Plan, as determined in Section XII.C herein, the Court finds that there is also insufficient evidence to determine that the treatment of such creditors under the Noteholder Plan complies with the requirements of section 1129(b).

**F.      The Noteholder Plan Is Not In The Paramount Interest Of Creditors.**

244.      As determined in Sections XII.A-E herein, the Noteholder Plan does not satisfy the requirements of section 1129 of the Bankruptcy Code and is, therefore, fails to meet the requirements for confirmation. The record further demonstrates that the Noteholder Plan contains numerous provisions that are not consistent with the best interests of creditors. Each of

---

[528]   Noteholder Plan at 14-15; §§ 3.2.3, 3.2.5, 3.2.7, 3.2.8, 3.4.3-3.4.5.

these provisions evidences that the Noteholder Plan fails to meet the requirements for confirmation.

### 1. The Noteholder Plan Creates Tax Risk.

245.   The Noteholder Plan provides for the creation of a Distribution Trust on the Effective Date to, among other things, distribute the Distribution Trust Reserve and the proceeds of the Litigation Trust Causes of Action to the applicable Holders of Distribution Trust Interests.[529] The evidence presented by the Noteholder Proponents is insufficient to assure the Court that the Distribution Trust Reserve would not be treated as a "disputed ownership fund" subject to taxation at corporate rates. While the Court recognizes that the Noteholder Plan permits the Noteholder Proponents to seek a ruling from the Internal Revenue Service (the "IRS") regarding the tax treatment of the Distribution Trust Reserve, the Noteholder Plan does not require a favorable ruling from the IRS for effectiveness of the Noteholder Plan.[530] In the absence of a favorable ruling from the IRS, there is a risk that the Noteholder Plan will subject creditors, as beneficiaries of the Distribution Trust, to a heightened tax burden. For this reason, the Court finds that the that the Noteholder Plan is inconsistent with the best interests of creditors

### 2. The Noteholder Plan Has No Mechanism To Resolve Post-Confirmation Allowance Of Senior Loan Claims And Bridge Loan Claims.

246.   The Noteholder Plan contains no efficient means for resolving the allowance Senior Loan Claims and Bridge Loan Claims. As adduced in connection with the Confirmation Hearing, the Court finds that the Noteholder Plan lacks a mechanism to bind dissenting Holders

---

[529]   Noteholder Plan § 1.1.83.

[530]   Noteholder Plan § 7.16.14(a).

of Senior Loan Claims and Bridge Loan Claims to any proposed settlement of such Claims.[531]

Instead, the Noteholder Plan leaves the Litigation Trust established under the Noteholder Plan

either to litigate the allowance of such Claims to conclusion or to negotiate the allowance of

such Claims on a creditor-by-creditor basis.[532] The Court finds that such procedures would not

allow Estate value to be distributed efficiently and, therefore, is not is the best interests of

creditors.

## XIII. SECTION 1129(C) OF THE BANKRUPTCY CODE FAVORS CONFIRMATION OF THE DCL PLAN

247.     Section 1129(c) of the Bankruptcy Code provides that where multiple plans meet

the requirements for confirmation, the Court may confirm only one plan. See 11 U.S.C.

§ 1129(c). The statute further provides that the Court shall consider the preferences of creditors

and equity security holders in determining which plan to confirm. Id.[533] As determined in

Section XII herein, the Noteholder Plan fails to satisfy the requirements of the Bankruptcy Code

and is, therefore, unconfirmable. Based on the record of the Chapter 11 Cases, the Court further

finds and determines that, even if the Noteholder Plan were confirmable, the DCL Plan should

be confirmed pursuant to section 1129(c) of the Bankruptcy Code.

---

[531]   See DCL Obj. at 31-32; DCL Post-Trial Brief at 38; Noteholder Memorandum at ¶¶ 119-20; Noteholder Post-Trial Brief at 32-33.

[532]   DCL Obj. at 31-32; DCL Post-Trial Brief at 113-14; DCL Post-Trial Reply Brief at 38.

[533]   Beyond considering the preferences of creditors and equity security holders, some courts considering competing plans under section 1129(c) of the Bankruptcy Code have also examined the following three factors to determine which plan to confirm: (i) the relative treatment of creditors and equity security holders under the competing plans; (ii) the relative feasibility of the competing plans; and (iii) the type of plan. See, e.g., In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 245 (Bankr. D.N.J. 2000); River Village Assocs., 181 B.R. 795 at 807; In re Holley Garden Apartments, Ltd., 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999).

A. **The DCL Plan Is Preferred By Creditors.**

248. As evidenced by the Voting Declaration, 125 out of 128 Classes that voted on the DCL Plan voted to accept the DCL Plan.[534] The votes to accept the DCL Plan include votes of multiple constituents unrelated to the DCL Proponents.[535] Out of the 243 classes that voted on the Noteholder Plan only 3 classes voted to accept the Noteholder Plan.[536] As further evidenced by the Voting Declarations, only one (1) creditor voted to accept the Noteholder Plan who was unrelated to the Noteholder Proponents.[537] Creditors were also permitted to indicate a preference on their Ballots among the plans they voted to accept; however, as determined in Section IV.C.4 herein, relatively few creditors expressed a preference on their Ballot for either Plan. As evidenced by the Voting Declarations, the majority of those creditors that indicated a preference preferred the DCL Plan. The voting results serve as clear evidence that creditors prefer the DCL Plan over the Noteholder Plan.[538] The Court finds that, pursuant to section 1129(c), the preference of creditors for the DCL Plan weighs in favor of confirmation of the DCL Plan over the Noteholder Plan.

B. **The DCL Plan Provides Better Treatment To Creditors.**

249. In addition to being overwhelmingly supported by creditors, the evidence presented in connection with the Confirmation Hearing demonstrates that the DCL Plan provides better treatment for creditors than the Noteholder Plan. As determined in Section IV.A herein, virtually all creditors will receive a greater guaranteed recovery under the DCL Plan than that provided for in the Noteholder Plan. Indeed, under the DCL Plan, each Class of

---

[534] Voting Declaration, Docket No. 8882 at Ex. 1.

[535] Id.

[536] Voting Declaration, Docket No. 7918 at Ex. B-1.

[537] Id.

[538] See ¶ 74, supra.

Claims entitled to vote will receive significant upfront recoveries that are equal to or exceed those provided under the Noteholder Plan, with the possibility of substantially better recoveries through the trust distributions.[539] Further distributions to each Class, if any, under the Noteholder Plan would occur only after prolonged litigation of the Noteholder Trust Causes of Action.[540] Accordingly, the Court finds that with respect to treatment of creditors, section 1129(c) favors confirmation of the DCL Plan over the Noteholder Plan.

### C.    The DCL Plan Has Fewer Risks Than The Noteholder Plan.

250.    The evidence presented in connection with the Confirmation Hearing also demonstrates that the DCL Plan has fewer risks to a successful implementation than the Noteholder Plan.  As determined in Section VI above, the DCL Plan implements a good faith settlement of certain LBO-Related Causes of Action, thereby providing for substantial distributions to creditors immediately upon the Effective Date.  The Noteholder Plan generally provides lower guaranteed distributions while delaying distribution of a significant portion of DEV pending litigation of the Noteholder Trust Causes of Action.[541] The Court is persuaded that distributions to creditors under the Noteholder Plan will likely require several years.  The delayed substantial consummation of the Noteholder Plan renders the DCL Plan a more feasible plan.

251.    The Noteholder Plan's failure to implement a consensual release of the Senior and Bridge Guaranty Claims against the Guarantor Non-Debtors, as set forth in Section XII.B above, also establishes that the DCL Plan is a more feasible alternative.  As a part of the DCL Plan Settlement, claims against the Guarantor Non-Debtors are released consensually, allowing

---

[539]    See DCL Post-Trial Brief at 117.

[540]    Noteholder Plan at 15-16; §§ 1.1.92, 3.2.3–3.2.10, 3.4.3–3.4.7.

[541]    Noteholder Plan at 1-6, 12-16.

the Debtors to preserve approximately $1.7 billion in estate value and an important source of operating cash flow.[542] Under the Noteholder Plan, such value would be exposed to creditor claims.[543] In light of the Guarantor Non-Debtor Release provided under the DCL Plan, the DCL Plan is more feasible than the Noteholder Plan.

252.    Finally, the evidence submitted in connection with the Confirmation Hearing demonstrates that the DCL Plan best positions the Reorganized Debtors for continued commercial success.[544] In comparison, as determined in Section XII, the Noteholder Plan poses numerous roadblocks to the long-term success of the Reorganized Debtors. After careful consideration of the circumstances surrounding and the record of the Chapter 11 Cases, the Court hereby finds and determines that these shortcomings ultimately could result in the overall destruction of long-term value and, therefore, weigh against confirmation of the Noteholder Plan.

**D.      The DCL Plan Is More Focused On Reorganizing The Debtors Than The Noteholder Plan.**

253.    The DCL Plan is more focused on successfully reorganizing the Debtors than the Noteholder Plan. Though the DCL Plan and the Noteholder Plan are both reorganization plans, as evidenced by the testimony presented during the Confirmation Hearing, the DCL Plan seeks to successfully reorganize and advance the ongoing operations of the Reorganized Debtors,[545] while the Noteholder Plan is focused primarily on the liquidation of the LBO-Related Causes of Action.[546] The DCL Plan is, therefore, more closely aligned with the policy underlying section

---

[542]   DCL Plan § 11.2.1; DCL Post-Trial Brief at 107-08.

[543]   See id.

[544]   Tr. 3/14 at 115:18-117:22 (Hartenstein).

[545]   Id.

[546]   Noteholder Disclosure Statement at 23-24.

1129(c), which generally favors the successful rehabilitation of a debtor.[547]  Accordingly, such

policy considerations also favor confirmation of the DCL Plan instead of the Noteholder Plan.

## XIV.  CONCLUSION

For the reasons set forth above, the Court will enter an order contemporaneously

herewith confirming the DCL Plan.

---

[547]  See Valley View Shopping Center, 260 B.R. at 40) (evaluating the type of plan proposed under section 1129(c) and noting that "the policy of Chapter 11 is to successfully rehabilitate the debtor."); Holley Garden., 238 B.R. at 495 (same).

Dated: Wilmington, Delaware  
      June 3, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP  
James F. Conlan  
Bryan Krakauer  
Kevin T. Lantry  
Jessica C.K. Boelter  
One South Dearborn Street  
Chicago, Illinois 60603  
Telephone: (312) 853-7000  
Telecopier: (312) 853-7036

    -and-

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

*/s/ J. Kate Stickles*  
Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
Patrick J. Reilley (No. 4451)  
500 Delaware Avenue, Suite 1410  
Wilmington, Delaware 19801  
Telephone: (302) 652-3131  
Telecopier: (302) 652-3117

*Counsel for Debtors and Debtors in Possession*  
*and Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP  
Howard Seife  
David M. LeMay  
30 Rockefeller Plaza  
New York, New York 10112  
Telecopier: (212) 541-5369

    -and-

LANDIS RATH & COBB LLP

*/s/ Matthew B. McGuire*  
Adam G. Landis (No. 3407)  
Matthew B. McGuire (No. 4366)  
919 Market Street, Suite 1800  
Wilmington, Delaware 19801  
Telecopier: (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telecopier: (202) 822-8106

*Counsel for the Official Committee*
*of Unsecured Creditors*

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier: (213) 621-6100

-and-

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ M. Blake Cleary*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899-0391
Telecopier: (302) 571-1253

*Counsel for Oaktree Capital Management, L.P.*
*and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING
HALE & DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier: (212) 230-8888

*Co-Counsel for Angelo, Gordon & Co., L.P.*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier: (212) 701-5800

-and-

RICHARDS LAYTON & FINGER

*/s/ Robert J. Stearn, Jr.*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

*Counsel for JPMorgan Chase Bank, N.A.*

CH1 5931374v.8