IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 13, 2011 at 2:00 p.m. (ET)**<br>**Objections Due: June 9, 2011 at 8:00 p.m. (ET)** |

## MOTION OF THE DEBTOR COMMITTEE LENDER PLAN PROPONENTS TO ADMIT DCL EXHIBITS 3-95, 384, 435 AND 1323 INTO EVIDENCE

Pursuant to Paragraph 7 of the Order Establishing Procedures Related to the Post-

Confirmation Hearing Admission of Evidence and Resolution of Evidentiary Objections dated

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

May 6, 2011 [Dkt. 8843] (the "Hearing Exhibit Stipulation"), **as** modified by the Order Modifying the Order Establishing Procedures Related to the Post-Confirmation Hearing Admission of Evidence and Resolution of Evidentiary Objections [Dkt. 9107], the Debtor Committee Lender Plan Proponents ("DCLPP") hereby move to admit into evidence DCL Exhibits 3-95 for all purposes other than as evidence of the truth of any statements attributed to particular speakers, and DCL Exhibits 384, 435 and 1323 for all purposes.[2] In support of such motion, the DCLPP state as follows:

## BACKGROUND

1. Under the terms of Paragraph 3 of the Hearing Exhibit Stipulation, all hearing exhibits listed on documents exchanged by the parties on May 6, 2011 as to which hearsay objections were interposed are "presumed to be admissible for all purposes (including to show that Statements were made) other than for the truth of the Statements contained therein," with "[e]ach Plan Proponent reserv[ing] the right . . . to argue that [any such documents] are admissible as Rule 801(d)(2) admissions of a Plan Proponent, [or] (ii) otherwise admissible for all purposes."

2. In the Final Amended Debtor/Committee/Lender Exhibit List for Use at Confirmation Hearing dated May 6, 2011 (attached as Exhibit "A"), the DCLPP identified DCL Exs. 3-95 (official minutes of meetings of the Official Committee of Unsecured Creditors ("Committee")) as being admissible as business records, DCL Exs. 435 and 1323 as being

---

[2] Consistent with the Certification of Counsel Regarding Order Modifying The Order Establishing Procedures Related To The Post-Confirmation Hearing Admission Of Evidence And Resolution Of Evidentiary Objections [D.I. 9070], this Motion addresses only the admissibility/use of Exhibit List Documents cited in the DCL Plan Proponents' post-hearing briefs. Disputes, if any, over the admissibility/use of Exhibit List Documents not cited in the post-hearing briefs (e.g., documents cited in the proposed findings/conclusions submitted by the proponents) will be briefs on a schedule to be agreed.

adoptive admissions of the Noteholder Plan Proponents ("NPP"), and DCL Ex. 384 as being admissible under the residual exception to the hearsay rule. The NPP objected to these exhibits in their written objections (attached as Exhibit "B"). The DCLPP and NPP were not able to reach agreement on these issues at the meet-and-confer calls held pursuant to Paragraph 7 of the Hearing Exhibit Stipulation on May 18, 2011 and June 1, 2011.[3] The DCLPP accordingly now file this motion to admit DCL Exs. 3-95, 384, 435 and 1323 into evidence for all purposes.

## ARGUMENT

### I.

### THE REGULARLY MAINTAINED MINUTES OF COMMITTEE MEETINGS (DCL EXS. 3-95) ARE ADMISSIBLE AS BUSINESS RECORDS UNDER FED. R. EVID. 803(6)

3. At the plan confirmation hearing on March 8, 2011, Committee member William Salganik authenticated DCL Exs. 3-95 (attached as Exhibit "C") as regularly-maintained minutes of Committee meetings, and established a proper foundation for their admission as business records pursuant to the business records hearsay exception, Fed. R. Evid. 803(6). Mr. Salganik testified that the Committee held regular meetings, that minutes are prepared for each meeting by legal counsel attending the meetings, that Committee members have the responsibility to make sure that the minutes accurately reflect what took place at the meetings, that Committee members do review the draft minutes and request revisions when appropriate, and that, as a result, he had no reason to believe that any of the Committee minutes do not accurately reflect the substance of

---

[3] The DCLPP also identified DCL Ex. 2002 as being admissible for all purposes. Although the NPP originally objected to the admission of DCL Ex. 2002, the NPP agreed to withdraw their objection on the May 18, 2011 meet-and-confer held pursuant to Paragraph 7 of the Hearing Exhibit Stipulation.

the Committee's meetings. Tr. 3/8 at 190:11-193:24.[4] Committee counsel then moved for the admission of these exhibits into evidence. Tr. 3/8 at 193:25-194:6. The Court deferred argument of the NPP's objections and reserved decision at that time (Tr. 3/8 at 194:7-195:3), but the issue was not revisited before the end of the live hearing. However, NPP counsel themselves subsequently made use of certain of these exhibits during the hearing. See Tr. 3/15 at 280:14-282:14 (discussing DCL Ex. 69 (attached as Exhibit "C-69")), 297:2-298:2 (discussing DCL Ex. 87 (attached as Exhibit "C-87")).

4. DCL Exs. 3-95 are minutes of Committee meetings during the period December 17, 2009 through October 22, 2010.[5] These exhibits were produced by the Committee in discovery preceding the plan confirmation hearing. These exhibits are admissible notwithstanding the hearsay objections asserted by the NPP because they fall within what is commonly termed the "business records" hearsay exception under Fed. R. Evid. 803(6).

Fed. R. Evid. 803(6) states:

**Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial**

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*       \*       \*

(6) **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the

---

[4] References herein to "Tr. [date] at [page:line]" are citations to the transcript of the confirmation hearing. Excerpts from the March 8 date are attached as Exhibit "D" and excerpts from the March 15 date are attached as Exhibit "E."

[5] See Tr. 3/8 at 193:25-194:6, 195:6-14.

4

source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

5. A group's regularly maintained minutes of its meetings are routinely admitted into evidence pursuant to this provision, notwithstanding contentions that such documents are hearsay insofar as they are being offered as evidence of the truth of their contents. As explained in the Third Circuit's well-known decision in <u>In re Japanese Elec. Prods. Antitrust Litig</u>., 723 F.2d 238 (3d Cir. 1983), <u>rev'd on other grounds sub nom</u>. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574 (1986), where the Third Circuit reversed a trial court's refusal to treat a trade association's meeting minutes as admissible business records under Rule 803(6):

> The Association obviously engages in regular business activities through its officers. Of all the records likely to be kept by an industry association, minutes of its meetings are the most likely. . . . [W]hen an organization like the Electronic Industries Association of Japan keeps minutes of its own meetings it is acting in the course of a regularly conducted business activity. . . . [Even when m]inutes of meetings . . . do no more than record topics discussed by item and record votes [they] are nevertheless business records of what they in fact record. There is no requirement in Rule 803(6) that the minutes of a business meeting, intended to preserve a record of what is needed for business purposes, be the equivalent of a stenographic transcription. The badge of authenticity is the regular recordation of so much that transpired as is needed for purposes of the business in question.

<u>Id</u>. at 296-97.

6. The Third Circuit also noted that it was not necessary to have the minutes authenticated by the person who drafted the minutes:

> It is inconceivable that these [minutes] would have been retained unless the recorder had been present or at least had obtained the information recorded from someone who was present and transmitted the information while acting in the regular course of business. A deposition of the unknown scrivener would have gilded the lily, but such gilding is not required for admissibility.

<u>Id</u>. at 297. Indeed, even when minutes are unsigned they are still sufficiently trustworthy to warrant admission into evidence when "they [are] deemed by [an organization] to be sufficiently

5

probative as to be retained in its files" id. at 296-97, which was the case with the Committee's minutes here.

7. The admissibility of regularly maintained meeting minutes under the "business records" exception is now well established. For example, the Second Circuit in Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290 (2d Cir. 2008), summarily upheld the admission into evidence of "the minutes of the 1966 MLBP executive committee meeting," stating that "[a]lthough [defendant] Salvino objected on hearsay and foundation grounds to these minutes . . . , the minutes themselves plainly are admissible as a business record under Rule 803(6)." 542 F.3d at 313-14. Indeed, as previously noted, despite the NPP's objections as a general matter to the admission of the Committee minutes as business records, they themselves relied on certain of the minutes to verify what occurred at certain Committee meetings in which individuals from Aurelius Capital Management, L.P. ("Aurelius") participated. See, e.g., Tr. 3/15 at 280:14-282:14 (discussing DCL Ex. 69), 297:2-298:2 (discussing DCL Ex. 87). Accordingly, DCL Exs. 3-95 should be admitted into evidence for all purposes as business records.

## II.

### COMMITTEE MINUTES THAT WERE
### REDACTED FOR PRIVILEGE ARE ADMISSIBLE

8. The NPP additionally objected to the admissibility of certain Committee minutes on the grounds that they are "incomplete," apparently because they contain various redactions on account of attorney-client privilege, the attorney work product doctrine, and/or common interest

privilege.[6] These redacted documents are fully admissible notwithstanding any purported "completeness" issue.

9. In opposing admission of these redacted minutes on this basis, the NPP presumably seek to rely upon the so-called "rule of completeness," found in Fed. R. Evid. 106, which states:

> **Rule 106. Remainder of or Related Writings or Recorded Statements**
> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Rule 106 is a "codification of the doctrine of completeness," designed to "guard[] against the potential for evidence to be misleading when presented out of context," but under this rule admission of additional evidence is only compelled "if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." United States v. Evans, 356 Fed. Appx. 580, 583 (3d Cir. 2009) (citing United States v. Soures, 736 F.2d 87, 91 (3d Cir. 1984)); accord United States v. Noble, 251 Fed. Appx. 792, 798 (3d Cir, 2007); see United States v. Sherman, 293 Fed. Appx. 158, 159 (3d Cir. 2008). There is no reason to believe that minutes from which privileged portions reflecting counsel's legal advice were redacted would create such a misleading impression upon the trier of fact that any of these tests would be implicated.

10. The practice of redacting portions of documents to protect privileged material while otherwise allowing use of the remainder of the document is too well established to permit any suggestion that it conflicts with Rule 106. There would be no point in redacting documents for privilege in discovery, after all, if the producing party ultimately could only use the document

---

[6] See Committee's Privilege Log (available at NPP Ex. 2382), at pp. 1-6 (Exhibit "F").

7

at trial in its unredacted form, thus forcing the party to waive its privilege. Indeed, common experience suggests that in the Chancery Court corporate minutes redacted for privilege are routinely used in evidence and relied upon by the Court in rendering decisions.

11. Not surprisingly, the Third Circuit has upheld the admissibility of minutes as business records even when portions of those minutes have been redacted for privilege. In In re Japanese Elec. Prods. Antitrust Litig., the Third Circuit specifically noted that "[p]ortions of one of the documents, DSS 1032, were redacted by Matsushita pursuant to a claim of attorney-client privilege," 723 F.2d at 297, yet nonetheless upheld the admissibility of the document. Id. at 298.

12. Redactions were likewise held no bar to admissibility in a recent district court decision, LG Display Co. v. AU Optronics Corp., 265 F.R.D. 189 (D. Del. 2010):

> LGD suggests that the redactions to the documents affect their admissibility . . . , but in light of the foregoing indicia of authenticity and reliability and in light of the unredacted portions which speak to the [factual issue before the court], the Court is not persuaded that the redactions create suspicion regarding their authenticity or their trustworth[iness] for admissibility purposes under the Federal Rules of Evidence. "'Although [Fed. R. Evid. 901(b)(8)] requires that the document be free of suspicion, that suspicion does not go to the content of the document but rather to whether the document is what it purports to be. . . .' Questions as to the documents' content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity."

Id. at 197 (quoting Threadgill v. Armstrong World Indus., 928 F.2d 1366, 1375 (3d Cir. 1991)).

13. Similarly, in Walker v. Alcoa, Inc., No. 4:06-CV-120, 2008 WL 2356997 (N.D. Ind. June 9, 2008), the plaintiff complained that documents that the defendant offered as summary judgment evidence should be disregarded as inadmissible because they had been redacted, while "[d]efendant assert[ed] that redactions of irrelevant information on confidential documents does not render them inadmissible." Id. at *3. The Court agreed with the defendant that the redacted documents were admissible. "Simply because the document is redacted does not mean that it is inadmissible." Id.

14. Here, there is no reason to think that the redacted portions of the Committee minutes would create any trustworthiness issues or potential for unfairness. The redacted minutes are simply being offered to show that the Committee in its meetings dealt with the matters referenced in those minutes on the dates indicated. Indeed, the NPP used two of the Committee minutes in a similar fashion despite the fact that there were significant redactions in other portions of those same minutes. See Tr. 3/15 at 280:14-282:14 (discussing DCL Ex. 69), 297:2-298:2 (discussing DCL Ex. 87). This is not a situation, for example, in which a party is trying to prove that something was not discussed by showing that it was not mentioned in the minutes, cf. Fed. R. Evid. 803(7), where using redacted minutes would create obvious trustworthiness problems from the standpoint of use for such purposes. The redacted Committee minutes are thus no less admissible than the non-redacted Committee minutes and should be admitted into evidence as business records for all purposes.

### III.

### DCL EXHIBITS 435 AND 1323 ARE ADMISSIBLE AS ADOPTIVE ADMISSIONS

15. The DCLPP additionally move to admit into evidence DCL Ex. 435 (attached as Exhibit "G") and DCL Ex. 1323 (attached as Exhibit "H") pursuant to Fed. R. Evid. 801(d)(2)(B), on the grounds that they are adoptive admissions. DCL Ex. 435 is an email sent by Matthew Zloto ("Zloto") of Aurelius, one of the NPP. In DCL Ex. 435, Zloto approvingly cites and quotes an article attached thereto, dated August 18, 2010, from Credit Sights entitled "Spotlight of Tribune LBO Examiner's Report" (the "Credit Sights article") (separately designated as DCL Ex. 1323). Mr. Zloto's email states that "[t]he article does a fairly good job summarizing parts of the Examiner's Report" and that it "summarizes some of the key findings."

Zloto then describes the "key findings" discussed in the article.  At no point in the email does Zloto indicate that he disagrees with any of the discussion contained in DCL Ex. 1323.

16. The DCLPP seek to use Exs. 435 and 1323 for the truth of the matter asserted. Contrary to the NPP's assertions at the meet-and-confer call held on May 18, 2011, these exhibits are not hearsay because "[t]he statement[s are being] offered against a party [here, the NPP] and . . . [are] statement[s] of which the party has manifested an adoption or belief in [their] truth." Fed. R. Evid. 801(d)(2)(B). Following Fed. R. Evid. 801(d)(2)(B), courts have recognized that statements made by non-party declarants that are contained in materials used by a party can be admissible against that party as adoptive admissions. For example, in Forest Labs., Inc. v. Ivax Pharms., Inc., 237 F.R.D. 106, 114 (D. Del. 2006), the court concluded that a newspaper article and corresponding deposition testimony discussing the article were adoptive admissions under Fed. R. Evid. 801(d)(2) where the witness, a vice president of Forest Laboratories, "evidenced his agreement with the statement." Similarly, in Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 495-96 (D. Del. 2005), the court found that adoptive admissions were made regarding certain documents authored by a third-party public relations firm, recognizing that:

> '[a]doption can be manifested by any appropriate means, such as language, conduct or silence.' . . . Using a document supplied by another represents the party's intended assertion of the truth contained in that document. . . . An adoptive admission can be found in the circumstances where a party forwards a document to another in response to a request for information contained in the document.

Id. at 500-01 (citations omitted); see also Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (recognizing that where employee forwards content created by another in an email and "'manifest[s] an adoption or belief in [the] truth' of the information," the incorporated content is also admissible non-hearsay under Fed. R. Evid. 801(d)(2)(B)) (citations

omitted); Wagstaff v. Protective Apparel Corp. of Am., Inc., 760 F.2d 1074, 1078 (10th Cir. 1985) (finding abuse of discretion in trial court's exclusion of documents; the fact that reprints of newspaper articles were delivered by the defendants to the plaintiff's decedent rendered them admissible as adoptive admissions under Fed. R. Evid. 801(d)(2) because "[b]y reprinting the newspaper articles and distributing them to persons with whom defendants were doing business, defendants unequivocally manifested their adoption of the inflated statements made in the newspaper articles."); Michael H. Graham, 3 Handbook of Federal Evidence, § 801:20 (6th ed. 2011) ("Excluded from the definition of hearsay by Rule 801(d)(2)(B) are statements to which a party has manifested his adoption or belief in their truth"; "Forwarding an attachment on an e-mail may be an adoptive admission"); Jack B. Weinstein & Margaret A. Berger, 5 Weinstein's Federal Evidence § 801:31 (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 2011) ("A party may adopt a written statement if the party uses the statement or takes action in compliance the statement. Correspondingly, if a party makes clear his or her disagreement with a written or spoken statement of another, there is no adoption of the statement.").

17. A statement by an ordinary party representative/employee can also bind the party entity as an adoptive admission pursuant to Fed. 801(d)(2)(D). See Sea-Land Serv., Inc., 85 F.3d at 821 (statement made by employee in an email that was "within the scope of her employment," was an "admission (including the incorporated portion) [which] therefore conforms to the requirements of Rule 801(d)(2)(D)."). Zloto – an Aurelius employee – was speaking within the scope of his employment when he provided commentary concerning the articles' analysis of the Examiner Report. Therefore, the fact that he was not a senior level employee at Aurelius does not change the email's non-hearsay status.

18.     Zloto's email (DCL Ex. 435) clearly conveys his belief in the accuracy of the analysis of the Examiner's Report reflected in the Credit Sights article (DCL Ex. 1323) – an action which renders both the email discussing the article and the Credit Sights article itself adoptive admissions of Aurelius under Fed. R. Evid. 801(d)(2)(B).  Consequently, DCL Exs. 435 and 1323 should be admitted into evidence for all purposes.

## IV.

### DCL EXHIBIT 384
### IS ADMISSIBLE UNDER RULE 807

19.     The DCLPP further move to admit into evidence DCL Ex. 384 (attached as Exhibit "I") pursuant to Fed. R. Evid. 807.[7]  DCL Ex. 384 is the Second Report of the Court appointed Mediator, the Honorable Kevin Gross (the "Mediator's Second Report"), which attaches the terms of the settlement reached among the DCLPP on October 12, 2010 as an exhibit [Dkt. No. 5936].  In the Mediator's Second Report, Judge Gross states the dates on which certain mediation sessions occurred and that after those dates the "Mediation continued vigorously thereafter with certain parties based on the Mediator's judgment of how best to reach settlement."

20.     The DCLPP seek to use DCL Ex. 384 for the truth of the matter asserted therein.  The NPP have indicated that they object to the statements made in DCL Ex. 384 concerning the nature of the negotiations, but would not object to the admission of the term sheet attached to the

---

[7] For the sake of completeness, we note that the DCLPP also seek to admit into evidence, DCL Exs. 383 and 385, the First Mediator's Report and the Third Mediator's Report, respectively.  The NPP did not object to the admission of DCL Exs. 383 and 385.  These exhibits, therefore, are admissible for all purposes.  Moreover, DCL Ex. 1027 is a copy of the Mediator's Second Report to which the NPP have not objected.  Accordingly, DCL Ex. 1027 is admissible for all purposes and the NPP objections with respect to DCL Ex. 384, if any, should not be considered.

Mediator's Second Report to show the terms of the settlement.[8] DCL Ex. 384 simply completes the story told in DCL Exs. 383 and 385, the Mediator's First Report and the Mediator's Third Report, neither of which the NPP objected to: DCL Ex. 384 is admissible under Rule 807's "residual exception." Fed. R. Evid. 807. Rule 807 excepts from the hearsay rule

> [a] statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness," provided that "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Id.; United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004). Each of these requirements is met here.

21.  Judge Gross's statements clearly have "equivalent circumstantial guarantees of trustworthiness" as those admitted under other hearsay exceptions. Moreover, the Mediator's account of the mediation process and the resulting agreement is evidence of a material fact, namely, the good faith efforts of the DCLPP in negotiating the settlement with the Mediator. Finally, the general purposes of the rules and the interests of justice would be served by admission of the statements into evidence because they will assist the Court in determining whether the parties negotiated in good faith. See Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 113 (3d Cir. 2011) (affirming that "general purposes of the rules and interests of justice" would be served by admission of affidavit under Rule 807 because "it would assist the jury in determining the truth").

---

[8] Indeed, the NPP have included the term sheet attached to the Mediator's Second Report on their exhibit list as NPP Exs. 2234 and 2239. Further, the NPP included these two exhibits and documents they seek to admit for all purposes in the list they provided on to the DCLPP on May 6, 2011. See Submission of the Noteholder Plan Proponents Pursuant to the Order Establishing Procedures Related to the Post Confirmation Hearing Admission of Evidence and Resolution of Evidentiary Objections (attached as Exhibit "J").

22. Accordingly, DCL Ex. 384 should be admissible for all purposes.

## CONCLUSION

23. Because the Committee minutes (DCL Exs. 3-95) are business records pursuant to Fed. R. Evid. 803(6), and are trustworthy and properly admissible into evidence even where they have been redacted for privilege, because DCL Exs. 435 and 1323 constitute adoptive admissions of Aurelius under Fed. R. Evid. 801(d)(2)(B), and because DCL Ex. 384 is admissible under Rule 807 these exhibits should be admitted into evidence for all purposes.

Dated: June 6, 2011

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>James F. Conlan<br>Bryan Krakauer<br>Janet E. Henderson<br>Kevin T. Lantry<br>Jessica C.K. Boelter<br>Kerriann Mills<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-0199<br>Facsimile: (312) 853-7036 | COLE, SCHOTZ, MEISEL,<br>FORMAN & LEONARD, P.A.<br><br>*/s/ J. Kate Stickles*_____<br>Norman L. Pernick (No. 2290)<br>J. Kate Stickles (No. 2917)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Telephone: (302) 652-3131<br>Facsimile: (302) 652-3117 |

*Counsel for Debtors and Debtors In Possession*

| | |
|---|---|
| CHADBOURNE & PARKE LLP<br>Howard Seife<br>David M. LeMay<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Telephone: (212) 408-5100<br>Facsimile: (212) 541-5369 | LANDIS RATH & COBB LLP<br><br>_____<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>919 Market Street, Suite 1800<br>Wilmington, DE 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450 |

*Counsel for the Official Committee of Unsecured Creditors*

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Special Counsel to the Official Committee of Unsecured Creditors*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Damian Schaible
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4500

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Drew Sloan*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square, 920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651 7701

*Counsel for JPMorgan Chase Bank, N.A.*

WILMER CUTLER PICKERING
HALE & DORR LLP
Andrew N. Goldman
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800

*Counsel for Angelo, Gordon & Co., L.P.*

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-1530
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ M. Blake Cleary*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*