**Hearing Date: June 13, 2011 at 2:00 p.m.**
**Objection Deadline: June 9, 2011 at 8:00 p.m.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

————————————————————X
In re:                                                   :    Chapter 11 Cases
                                                         :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                                 :    (Jointly Administered)
                                                         :
                              Debtors.                   :    **Related Docket No.**
                                                         :
————————————————————X

### SUPPLEMENTAL MOTION OF WILMINGTON TRUST
### COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE
### PHONES NOTES, AND ONE OF NOTEHOLDER PLAN PROPONENTS,
### CONCERNING THE ADMISSION OF CERTAIN DOCUMENTS

SULLIVAN • HAZELTINE • ALLINSON LLC
William D. Sullivan (Del. Bar No. 2820)
William Hazeltine (Del. Bar No. 3294)
901 Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: whazeltine@sha-llc.com

-and-

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Dylan P. Kletter, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: dkletter@brownrudnick.com

*Counsel to Wilmington Trust Company, as
Successor Indenture Trustee for the $1.2 Billion
Exchangeable Subordinated Debentures Due 2029,
Generally Referred to as the PHONES Notes and
one of the Noteholder Plan Proponents*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ....................................................................................................................... 4

I.   ALL OF THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST
     ARE ADMISSIBLE FOR 9019 CANVASSING PURPOSES ......................................... 4

II.  THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST ALL
     FIT WITHIN AT LEAST ONE EXCEPTION TO THE HEARSAY RULE .................... 5

     A.   The Disputed NPP Exhibits Are Admissible for the Truth of the Matter Asserted
          Under FRE 807, the Residual Exception to the Hearsay Rule ............................... 5

     B.   Disputed NPP Exhibits Are Admissible as Present Sense Impressions ................. 5

     C.   Disputed NPP Exhibits Are Admissible as Business Records ........................... 6

III. CERTAIN OF THE DISPUTED NPP
     DOCUMENTS ARE ADMISSIBLE UNDER 801(d)(2) ................................................ 7

     A.   Disputed NPP Exhibits Are Admissible Pursuant to FRE 801(d)(2)(C) ............... 7

          1.   Statements Made By Certain LBO Lenders on Behalf of the Other
               LBO Lenders Concerning the LBO Transaction Are Admissible ............ 8

          2.   Statements Made By Citibank and Citigroup Concerning the
               PHONES Trustee Were Implicitly Authorized By the LBO Lenders ....... 9

     B.   Disputed NPP Exhibits Are Admissible Pursuant to FRE 801(d)(2)(D) ............... 9

          1.   Statements Made By Certain LBO Lenders on Behalf of the Other
               LBO Lenders Concerning the LBO Transaction Are Admissible ........... 10

          2.   Statements Imputed to Citigroup, As Agents for the LBO Lenders,
               Concerning Citibank's Resignation as Trustee to the PHONES ............ 11

     C.   Disputed NPP Exhibits Are Admissible Pursuant to FRE 801(d)(2)(E) ............. 11

          1.   Statements Made By Certain LBO Lenders on Behalf of the Other
               LBO Lenders Concerning the LBO Transaction Are Admissible .......... 13

          2.   Statements Made In Furtherance of Blocking and/or Interfering With
               Citibank's Resignation as Indenture Trustee to the PHONES ................ 15

CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                      <u>Page(s)</u>

<u>Baughman v. Cooper-Jarrett,</u>
   530 F.2d 529 (3d Cir. 1976)................................................................................ 7

<u>Big Apple BMW, Inc. v. BMW of N. America, Inc.,</u>
   974 F.2d 1358 (3d Cir. 1992)............................................................... 9, 10, 11, 12

<u>Data Based Sys. Int'l, Inc. v. Hewlett-Packard Co.,</u>
   2001 WL 1251212 (E.D. Pa. Sept. 26, 2001) ................................................... 10

<u>In re Fine Paper Antitrust Litig.,</u>
   751 F.2d 562 (3d Cir. 1984).............................................................................. 12

<u>In re Spansion, Inc.,</u>
   2009 WL 1531788 (Bankr. D. Del. June 2, 2009) .............................................. 9

<u>In re Terrorist Bombings of U.S. Embassies in E. Africa,</u>
   552 F.3d 93 (2d Cir. 2008)................................................................................ 12

<u>Lightning Lube, Inc. v. Witco Corp.,</u>
   4 F.3d 1153 (3d Cir. 1993)................................................................................. 7

<u>Pappas v. Middle Earth Condo. Ass'n,</u>
   963 F.2d 534 (2d Cir. 1992).............................................................................. 10

<u>Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.,</u>
   626 F. Supp. 159 (N.D. Ill. 1985) ................................................................ 10, 12

<u>Rossi v. Standard Roofing, Inc.,</u>
   156 F.3d 452 (3d Cir. 1998).............................................................................. 12

<u>United States v. Beech-Nut Nutrition Corp.,</u>
   871 F.2d 1181 (2d Cir. 1989)............................................................................ 12

<u>United States v. Brockenborrugh,</u>
   575 F.3d 726 (D.C. Cir. 2009) .......................................................................... 12

<u>United States v. Cruz-Rodriguez,</u>
   541 F.3d 19 (1st Cir. 2008) .......................................................................... 12, 17

<u>United States v. Ellis,</u>
   156 F.3d 493 (3d Cir. 1998).............................................................................. 12

United States v. Johnson,
    200 F.3d 529 (7th Cir. 2000) ............................................................................. 13

United States v. Kemp,
    500 F.3d 257 (3d Cir. 2007)............................................................................. 11

United States v. McGlory,
    968 F.2d 309 (3d Cir. 1992)............................................................................. 11

United States v. Yarbrough,
    852 F.2d 1522 (9th Cir.) ................................................................................... 13

Yates v. Rexton, Inc.,
    267 F.3d 793 (8th Cir. 2001) ........................................................................... 11

Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,
    505 F. Supp. 1190(E.D. Pa. 1980) ........................................................ 7, 8, 9, 10

Rules

Fed. R. Evid. 801(d)(2) ............................................................................................ 9

Fed. R. Evid. 801(d)(2)(C)............................................................................... 2, 7, 8, 9

Fed. R. Evid. 801(d)(2)(D)................................................................................... 2, 9

Fed R. Evid. 801(d)(2)(E).................................................................................. 2, 11, 12

Fed R. Evid. 807 ............................................................................................. 4, 5, 15

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

————————————————————————x

In re:                                       :    Chapter 11 Cases
                                             :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                     :    (Jointly Administered)
                                             :
                              Debtors.       :    **Related Docket No.**
                                             :
————————————————————————x

### SUPPLEMENTAL MOTION OF WILMINGTON TRUST
### COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE
### PHONES NOTES, AND ONE OF NOTEHOLDER PLAN PROPONENTS,
### CONCERNING THE ADMISSION OF CERTAIN DOCUMENTS

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the

Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of

$1.2 billion (generally referred to as the "PHONES Notes") issued in April 1999 by Tribune

Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the

"Company"), and one of the Noteholder Plan Proponents, by and through its undersigned

counsel, hereby respectfully submits this Motion concerning the Admission of Certain

Documents cited in the Post-Confirmation Hearing Brief of Wilmington Trust Company, as

Successor Indenture Trustee for the PHONES, and in the Noteholder Plan Proponents Post-Trial

Brief and Post-Trial Reply Brief, which the DCL Plan Proponents have indicated they object to

on hearsay grounds.  In support of this Motion, Wilmington Trust respectfully represents as

follows:

### PRELIMINARY STATEMENT

Simultaneously herewith, the Noteholder Plan Proponents have submitted a Motion of the

Noteholder Plan Proponents to Admit Certain Documents in which Wilmington Trust, as

Successor Indenture Trustee for the PHONES Notes and one of the Noteholder Plan Proponents,

has joined (the "NPP Brief"), and to which the Court is respectfully referred. As noted below, Wilmington Trust incorporates herein by reference the arguments made in the NPP Brief and adopts those arguments in full with respect to hearsay objections made to certain documents cited by Wilmington Trust in its Post-Confirmation Hearing Brief.[1] In addition, Wilmington Trust makes additional arguments below with respect to applicable hearsay exceptions to certain documents cited by Wilmington Trust and by the Noteholder Plan Proponents in their Post-Trial Briefs and Post-Trial Reply Brief. These additional arguments relate to documents that are admissible under Federal Rules of Evidence 801(d)(2)(C), (D), and (E).

Wilmington Trust further adopts and incorporates herein the preliminary statement from the Noteholder Brief and the discussion, under the heading Exhibits at Issue, relating to the Evidence Procedure Order (the "Order") and the meet and confer meetings that have occurred. Wilmington Trust notes that, pursuant to the Order, it identified to the DCL Plan Proponents those NPP Exhibits cited in the Wilmington Trust Post-Confirmation Hearing Brief that are offered by Wilmington Trust for the truth of the matter asserted, and as to which the DCL Plan Proponents objected on hearsay grounds.[2]

As with the documents discussed in the NPP Brief, the Disputed NPP Exhibits cited by Wilmington Trust relate to the merits of the LBO Claims, the financial condition of the Company at various periods surrounding the Step One and Step Two Close, the state of mind of the LBO

---

[1] All Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the NPP Brief, but to the extent not defined therein, in the Post-Trial Brief of the Noteholder Plan Proponents [D.I. 8932], Post-Confirmation Hearing Brief of Wilmington Trust Company, As Successor Indenture Trustee For the PHONES [D.I. 8931] ("WTC Post-Trial Brief"), or the Post-Trial Reply Brief of the Noteholder Plan Proponents [D.I. 9022].

[2] In its email to the DCL Plan Proponents dated June 2, 2011, Wilmington Trust identified four exhibits, NPP191, NPP 254, NPP 482, and NPP 497, as being offered only for non-hearsay purposes and not for the truth of the contents thereof. Upon further review of those documents and additional research, Wilmington Trust now seeks to offer those four documents for the truth of the contents therein. Wilmington Trust adopts and incorporates the arguments in the NPP Brief that there is no prejudice to the DCL Plan Proponents by this modification since the DCL Plan Proponents will have a full opportunity to respond to this Motion.

Lenders at the time they elected to lend into the LBO, and are otherwise relevant to the "canvassing of the issues" the Court must undertake in connection with its Rule 9019 review of the Proposed Settlement.[3]  Certain of those documents also relate to the delayed resignation of Citibank, N.A. ("Citibank"), an affiliate of Citigroup Global Markets, Inc. ("Citigroup"), and Citicorp North America (collectively, "Citi"), as Indenture Trustee for the PHONES, until after the LBO was completed, notwithstanding Citibank's admitted recognition that its role as Indenture Trustee created a conflict of interest with Citibank's concurrent role as Lead Arranger, or to the alleged lack of good faith by the LBO Lenders which prevents them from enforcing subordination against the PHONES (See WTC Post-Trial Br. at 10-18).

The Disputed NPP Exhibits cited by Wilmington Trust all have the indicia of reliability that is a touchstone of admissibility under the Federal Rules of Evidence.  The NPP Disputed Exhibits were produced by the declarants in response to requests made by the DCL Plan Proponents or the Examiner, and bear bates-stamp pre-fixes demonstrating that the documents were found in, and produced from, the declarant's files.  Virtually all of the Disputed NPP Exhibits are either statements of the DCL Plan Proponents themselves, or statements made by other LBO Defendants (defined below), and all of the Disputed NPP Exhibits contain statements made by representatives of sophisticated commercial entities, concerning matters with respect to which those representatives and entities indisputably were closely involved, and under circumstances where the declarant was strongly incented to provide accurate and truthful information.

---

[3] The Disputed NPP Exhibits cited by Wilmington Trust in ascending order by Disputed NPP Exhibits number is attached to the Declaration of Martin S. Siegel ("Siegel Declaration").

In addition, a number of the Disputed NPP Exhibits cited by Wilmington Trust are emails sent or other statements sent or other statements made by the LBO Lenders who are named defendants in the complaint filed against the LBO Lenders described in the NPP Brief (the "LBO Defendants"). The LBO Defendants Exhibits are probative of the many key issues relating to the LBO Claims described in the NPP Brief.

Finally, as with documents described in the NPP Brief, there is no dispute that certain of the Disputed NPP Exhibits cited by Wilmington Trust are statements of the DCL Plan Proponents, or those of their agents, and are admissible for all purposes, but the DCL Plan Proponents argue that those documents should only be admitted against the declarant, rather than against all DCL Plan Proponents (the "DCL Admissions"). As with the documents described in the NPP Brief, these documents relate to issues material to both the merits of the LBO Claims and the process from which the proposed settlement emerged, and are admissible for all purposes against all DCL Plan Proponents.

## ARGUMENT

### I.    ALL OF THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST ARE ADMISSIBLE FOR 9019 CANVASSING PURPOSES

Wilmington Trust hereby incorporates by reference the arguments made in § II of the NPP Brief, as if fully set forth herein. As a result, Wilmington Trust asserts that the Disputed NPP Exhibits cited by Wilmington Trust are admissible because they are relevant to the merits of the LBO Claims, as well as the fact-based objections to the DCL Plan contained in the WTC Post-Trial brief (*e.g.* the PHONES are not subordinated to the claims of the LBO Lenders due to their lack of good faith), or the claims asserted in the PHONES Complaint;[4] have sufficient indicia of reliability, as all the documents were produced by one or more of the LBO Lenders or

entities within their control; and would almost certainly be admissible in a merits litigation. The documents should therefore be admitted for the truth of the matter asserted.

## II.    THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST ALL FIT WITHIN AT LEAST ONE EXCEPTION TO THE HEARSAY RULE

### A.    The Disputed NPP Exhibits Are Admissible for the Truth of the Matter Asserted Under FRE 807, the Residual Exception to the Hearsay Rule

Wilmington Trust hereby incorporates by reference the arguments made in § III. A. of the NPP Brief, as if fully set forth herein. As a result, Wilmington Trust asserts that all of the Disputed NPP Exhibits cited by Wilmington Trust are admissible because they are relevant to the merits of the LBO Claims, as well as the fact based objections by Wilmington Trust and the PHONES Complaint; have sufficient indicia of reliability, as all the documents were produced by one or more of the LBO Lenders or entities within their control; and would almost certainly be admissible in a merits litigation on the LBO Claims or the PHONES Complaint. All such documents should therefore be admitted for the truth of the matter asserted.

### B.    Disputed NPP Exhibits Are Admissible as Present Sense Impressions

Wilmington Trust hereby incorporates by reference the arguments made in § III. B. of the NPP Brief, as if fully set forth herein. Several of the statements contained in email communications in the Disputed NPP Exhibits cited by Wilmington Trust related to Citibank's resignation as the Indenture Trustee to the PHONES similarly contain explanations of contemporaneous events as observed by the author. ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[4] See WTC Post-Trial Br. at 10-18.

████████████████████████████). In addition, NPP 284 and NPP 296 are admissible under this exception for the reasons set forth in the NPP Brief. Accordingly, all such documents should be admitted for the truth of the matter asserted.

**C.      Disputed NPP Exhibits Are Admissible as Business Records**

Wilmington Trust hereby incorporates by reference the arguments made in § III. C. of the NPP Brief, as if fully set forth herein. Several of the email communications in the Disputed NPP Exhibits cited by Wilmington Trust related to Citibank's resignation as the Indenture Trustee to the PHONES also qualify as business records. See NPP 2481, NPP 2482, NPP 2484, NPP 2490, NPP 2491, NPP 2493, NPP 2494, NPP 2503, NPP 2504, and NPP 2505. The statements contained in these communications are not idle chatter or were casually made. Instead, these emails contain official Citibank communications, in its capacity as Indenture Trustee to various debt instruments, including the PHONES. ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████. The record further indicates that email was the primary, if not exclusive, means by which Citibank made official communications, either internally and externally, concerning its resignation as Indenture Trustee to the PHONES. Similarly, NPP 1070 and NPP 1165 also are

admissible as business records. ███████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████ The totality of the record further indicates that communication via email was the predominant means through which the LBO Lenders and Tribune structured the LBO transaction. Accordingly, all such documents should be admitted for the truth of the matter asserted.

**III.    CERTAIN OF THE DISPUTED NPP
EXHIBITS ARE ADMISSIBLE UNDER 801(d)(2)**

**A.    Disputed NPP Exhibits Admissible Pursuant to FRE 801(d)(2)(C)**

Federal Rule of Evidence 801(d)(2)(C) excludes from the definition of hearsay "any statements used against a party which were made by another person authorized by the party to make a statement concerning the subject." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1198 (3d Cir. 1993). The authority to speak may represent either express or implied authority. Baughman v. Cooper-Jarrett, 530 F.2d 529, 532 (3d Cir. 1976), cert. denied, 429 U.S. 825 (1976). Further, "[t]he Advisory Committee Notes to Rule 801(d)(2)(C) make it clear that . . . a statement may be an authorized admission even though it was never communicated to a third party." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1190, 1247-48 (E.D. Pa. 1980), rev'd on other grounds, 723 F.2d 238 (3d Cir. 1983).

1.    **Statements Made By Certain LBO Lenders on Behalf of the Other
LBO Lenders Concerning the LBO Transaction Are Admissible**

NPP 236, NPP 632, NPP 1165, NPP 1166 and NPP 2247[5] should be admitted under FRE

801(d)(2)(C) ███████████████████████████████████████████████

██████████████████████████████████████████████. By

way of example, in NPP 1165, ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████[6]

████████████████████████████████████████████████

███████████████████████[7] ███████████████████████

████████████████████████████. Zenith Radio Corp., 505 F. Supp. at

1247-48 (no requirement that statements be made to third parties). ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████. Because these statements were either expressly or implicitly

authorized by the LBO Lenders, they should be admitted under FRE 801(d)(2)(C) for their truth

as against the LBO Lenders.

---

[5] These documents, and certain other documents cited in this Section III were cited in the NPP Post-Trial Brief or NPP Post-Trial Reply Brief, and not in the WTC Post-Trial Brief. Wilmington Trust makes these arguments, to the extent applicable, on behalf of the Noteholder Plan Proponents.

[6] NPP 1165 ██████████████████████████████

[7] ██████████████████████████████.

2.     **Statements Made By Citibank and Citigroup Concerning the**
       <u>**PHONES Trustee Were Implicitly Authorized By the LBO Lenders**</u>

NPP 2484, NPP 2489, NPP 2490, and NPP 2493 also should be admitted under FRE

801(d)(2)(C) ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████.[8]  To the extent these statements were

made by Citibank executives, such statements are imputed to Citigroup as the sister corporation.[9]

See <u>Big Apple BMW, Inc. v. BMW of N. America, Inc.</u>, 974 F.2d 1358, 1373 (3d Cir. 1992);

<u>Zenith Radio Corp.</u>, 505 F. Supp. at 1247-48.   Moreover, as Lead Arranger, Citigroup was

expressly and implicitly authorized to act on behalf of the LBO Lenders in order to fulfill its

duties to facilitate and foster the LBO Transaction.[10]   As a result, these exhibits should be

admitted for their truth as against Citigroup and all the LBO Lenders.[11]

**B.     <u>Disputed NPP Exhibits Admissible Pursuant to FRE 801(d)(2)(D)</u>**

For reasons similar to subsection (C) above, NPP 236, NPP 632, NPP 1165, NPP 1166,

NPP 2247, NPP 2484, NPP 2489, and NPP 2493 also should be admitted under FRE

801(d)(2)(D).   Under subsection (D), the proponent need only establish: (1) the existence of the



[8] ██████████████████████████████████████████████████████.

[9] ████████████████████████████████████████████████████████

[10] <u>See, e.g.,</u> ████████████████████████████████████

[11] As with each exception under FRE 801(d)(2), to the extent the Court determines that these statements are admissible as against only the LBO Lenders, but not all D/C/L plan proponents, the statements are admissible for all purposes on the central issue before the Court: the reasonableness of the settlement and assessing the strength of the claims against the LBO Lenders. <u>In re Spansion, Inc.</u>, 2009 WL 1531788, at *3-4 (Bankr. D. Del. June 2, 2009).

agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the relationship. Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 537 (2d Cir. 1992); Data Based Sys. Int'l, Inc. v. Hewlett-Packard Co., 2001 WL 1251212, at *12 (E.D. Pa. Sept. 26, 2001). In contrast to subsection (C), subsection (D) does not require that the statements were authorized. Big Apple BMW, Inc., 974 F.2d at 1372 (citing to the Advisory Committee Notes concerning the breadth of the exception, stating: "an employer will rarely authorize its employee to make incriminating statements"). Nor must the statement be made to a third party. Zenith Radio Corp., 505 F. Supp. at 1247-48. Moreover, as other courts have stated, because admissibility is not premised on trustworthiness or personal knowledge, evidence under this exception "should be granted freely." Pappas, 963 F.2d at 537.

1.  **Statements Made By Certain LBO Lenders on Behalf of the Other
    <u>LBO Lenders Concerning the LBO Transaction Are Admissible</u>**

The statements set forth in NPP 236, NPP 632, NPP 1165, NPP 1166 and NPP 2247 also should be admitted under subsection (D) because: ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.

See Prudential Ins. Co. of America v. Curt Bullock Builders, Inc., 626 F. Supp. 159, 166 (N.D. Ill. 1985) (trier of fact could reasonably infer that bank, who had loaned defendant money in conjunction with insurer, was agent of insurer). As a result, to the extent that the Court does not determine that these statements were expressly or implicitly authorized pursuant to subsection (C), these statements are admissible for their truth as against the LBO Lenders pursuant to subsection (D).

**2.    Statements Imputed to Citigroup, As Agents for the LBO Lenders, Concerning Citibank's Resignation as Trustee to the PHONES**

Likewise, NPP 2484, NPP 2489, NPP 2490, and NPP 2493 are further admissible under subsection (D). As discussed with respect to subsection (C) above, in the present factual context, Citibank acted as an agent for its sister corporation, Citigroup. Statements made by Citibank executives, therefore, are imputed to Citigroup. See Big Apple BMW, Inc., 974 F.2d at 1373. In addition, Citigroup, as a Lead Arranger for the LBO Transaction, acted as an agent to the other LBO Lenders.[12] ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████. See Yates v. Rexton, Inc., 267 F.3d 793, 802 (8th Cir. 2001) (admitting statements under subsection (D) concerning the improper exertion of pressure on employees over the age of 60 to retire).

**C.    Disputed NPP Exhibits Admissible Pursuant to FRE 801(d)(2)(E)**

To admit a statement under Rule 801(d)(2)(E), a district court must find, by a preponderance of the evidence: "(1) that a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992); United States v. Kemp, 500 F.3d 257 (3d Cir. 2007) (same). There is no requirement that the statement be made

---

[12] See ███████████████████████████████████████████

███████████████████████████████████████

to another member of the conspiracy. <u>United States v. Beech-Nut Nutrition Corp.</u>, 871 F.2d 1181 (2d Cir. 1989). Moreover, as a general matter, there is typically no requirement that each member of the conspiracy be involved in or aware of every aspect of the conspiracy or act of their co-conspirators. <u>United States v. Cruz-Rodriguez</u>, 541 F.3d 19, 30 (1st Cir. 2008).

There can be no dispute that Subsection (E) is applicable in the civil context. <u>E.g.</u>, <u>Rossi v. Standard Roofing, Inc.</u>, 156 F.3d 452 (3d Cir. 1998) (parties conspired to drive a competitor out of business); <u>Big Apple BMW, Inc.</u>, 974 F.2d at 1374 (parties conspired to violate Sherman Act); <u>In re Fine Paper Antitrust Litig.</u>, 751 F.2d 562 (3d Cir. 1984) (conspiracy to "fatten" a bill in connection with a lodestar determination); <u>Prudential Ins. Co. of America</u>, 626 F. Supp. at 167 ("Trier of fact again could reasonably infer that Prudential and the bank were in combination for a common goal" for purposes of FRE 801(d)(2)(E)).

Indeed, there is no requirement that the "conspiracy" at issue be unlawful. The conspiracy exception applies to parties involved in a lawful "joint venture." <u>United States v. Brockenborrugh</u>, 575 F.3d 726 (D.C. Cir. 2009) ("Admission, however, is not contingent upon the finding of an unlawful combination . . . despite its use of the word 'conspiracy,' Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise."); <u>see also</u> <u>United States v. Ellis</u>, 156 F.3d 493, 497 (3d Cir. 1998) ("The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment.").

Whether a statement is made "in furtherance" of the conspiracy is a question of fact. <u>In re Terrorist Bombings of U.S. Embassies in E. Africa</u>, 552 F.3d 93, 139 (2d Cir. 2008). Statements that are in furtherance of a conspiracy may relate to prompting further action, reassuring members of the conspiracy of its continued existence, allaying co-conspirators' fears and

statements made to keep members abreast of the conspiracy's ongoing activities, as well as statements related to hiding or concealing the conspiracy. United States v. Yarbrough, 852 F.2d 1522 (9th Cir.), cert. denied, 488 U.S. 866 (1988); United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000). Moreover, the statement does not have to be made exclusively or primarily to further the conspiracy. Johnson, 200 F.3d at 533.

### 1.    Statements Made By Certain LBO Lenders on Behalf of the Other LBO Lenders Concerning the LBO Transaction Are Admissible

NPP 136, NPP 191, NPP 225, NPP 236, NPP 254, NPP 296, NPP 297, NPP 399, NPP 414, NPP 462, NPP 482, NPP 497, NPP 501, NPP 632, NPP 1166, NPP 1232, NPP 1256, NPP 1387, NPP 1534, NPP 1821, NPP 1830, and NPP 2247 all are admissible for their truth pursuant to subsection (E) as against the LBO Lenders. The record is replete with evidence that the LBO Lenders were engaged in a joint venture and worked closely together to structure, price, syndicate, and facilitate the LBO Transaction, shared third-party professionals such as Cahill, Gordon & Reindel and Murray Devine, and conducted joint due diligence.[13]

In fact, JPM asserted the attorney-client/work product and joint defense privileges with respect to communications between the Arrangers and Cahill and Murray Devine. ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[13] In addition to the statements at issue, which demonstrates the existence of the LBO Lenders' joint venture, the record contains voluminous other admitted evidence to establish such a joint venture or common objective. See, e.g.,

████████████████████████████████████████████████

███████████████████████████



). The Examiner also commented on this joint defense claim as well. See NPP 782 (Exam'rs Rpt.), Vol. II at 337 ("The Examiner did not have an opportunity to pursue whether or to what extent the deliberations that the Lead Banks engaged in during the fall of 2007 actually are protected attorney-client communications or are really business discussions among principals, masquerading as communications to and from counsel and financial advisors."). Indeed, the record suggests that the LBO Lenders continued to maintain their united front during these proceedings. See NPP 782 (Exam'rs Rpt.), Vol. II at 337 ("Moreover, without casting aspersions, in their testimony to the Examiner, witnesses for the Lead Banks tended to speak from the same script in discussing key events as well as their activities during the months preceding the Step Two Closing."). The record further establishes that the LBO Lenders pursued their common objective to profit from the LBO Transaction even though they were aware that the transaction's structure would render Tribune insolvent.[14]

The statements at issue here were in furtherance of the LBO Lenders common objective.

---

[14] See, e.g., NPP 782 (Exam'rs Rpt.), Vol. II at IV.(B)(7)(b).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ As a result, the above-

referenced Disputed NPP Exhibits are admissible for their truth as against the LBO Lenders.

       **2.**     **Statements Made In Furtherance of Blocking and/or Interfering**
              **With Citibank's Resignation as Indenture Trustee to the PHONES**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████   ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[15] To the extent the Court determines that NPP 2481, NPP 2482, NPP 2488, NPP 2491, NPP 2494, NPP 2496, NPP 2503, NPP 2504, and NPP 2505 were not in furtherance of the conspiracy, these documents greatly assist in the understanding of the conspiracy and therefore should be admitted, in the alternative, pursuant to FRE 807 because the statements would otherwise constitute party admissions at trial, and are material and probative of the issues.



There is no plausible, legitimate reason why Citibank's resignation had to be deferred for over a year and a half during the pendency of the LBO Transaction, other than to further completion of the LBO. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.[18] Instead, blocking the appointment of a successor trustee averted the risk that such successor may not have sat idly by, as Citibank did, as the disastrous LBO Transaction unfolded. Further, it is irrelevant whether the other LBO Lenders were aware of, or participated in, Citigroup's efforts to interfere with and block

---

[16] NPP 2502 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.).

[17] NPP 2491 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).

[18] NPP 2491 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).

Citibank's resignation.  It is simply sufficient that the LBO Lenders were members of the same conspiracy and that Citigroup's actions and statements were in furtherance of such venture.  <u>See</u> <u>Cruz-Rodriguez</u>, 541 F.3d at 30 (no requirement that each member of the conspiracy be involved in or aware of every aspect of the conspiracy or act of their co-conspirators).  As a result, NPP 2481, NPP 2482, NPP 2484, NPP 2488, NPP 2489, NPP 2491, NPP 2493, NPP 2494, NPP 2496, NPP 2503, NPP 2504, and NPP 2505 should be admitted for their truth as against the LBO Lenders.

<u>**CONCLUSION**</u>

For the reasons stated herein, and in the NPP Brief, all of the Disputed NPP Exhibits should be admitted in evidence for all purposes.

Respectfully submitted,

Date: June 6, 2011
Wilmington, Delaware

SULLIVAN • HAZELTINE • ALLINSON LLC
*/s/ William D. Sullivan*
William D. Sullivan (Del. Bar No. 2820)
William Hazeltine (Del. Bar No. 3294)
901 Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: whazeltine@sha-llc.com

-and-

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Dylan P. Kletter, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: dkletter@brownrudnick.com

*Counsel to Wilmington Trust Company, as*
*Successor Indenture Trustee for the $1.2 Billion*
*Exchangeable Subordinated Debentures Due 2029,*
*Generally Referred to as the PHONES Notes and*
*one of the Noteholder Plan Proponents*

8298924