## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 8917** |

## DEBTORS' OBJECTION TO THE MOTION OF JEWEL FOOD STORES, INC., ALBERTSON'S, LLC, NEW ALBERTSON'S, INC., AND SUPERVALU, INC. TO ALLOW LATE FILED CLAIM AND FOR RELIEF FROM THE AUTOMATIC STAY

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to

the Motion of Jewel Food Stores, Inc., Albertson's, LLC, New Albertson's, Inc., and Supervalu,

Inc. (collectively, the "Movants") to Allow Late Filed Claim and for Relief from the Automatic

Stay filed on May 16, 2011 [Docket No. 8917] (the "Motion"). The Motion (i) seeks to permit

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

the Movants to file an untimely proof of claim and (ii) seeks, for the second time, to permit the

Movants to proceed with the prosecution of a third-party complaint (the "Complaint") against

Tribune Company ("Tribune") in the Circuit Court of Cook County, Illinois and to recover

damages from Tribune, purportedly to the extent of available insurance proceeds.  In support of

this Objection, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

      1.      The Movants come to the Court, for a second time, essentially seeking the

same relief they previously sought, on the same set of facts, with the addition of a claim of

excusable neglect for their lack of diligence in complying with the Debtors' claims process.  The

Movants' request to be allowed to file a late proof of claim should be denied because the

Movants do not meet their burden to show that their neglect is excusable.  The Debtors provided

actual notice of the Bar Date (as defined below) to the Movants.  The Movants then waited over

a year and a half past the Bar Date – and past the time they were aware of the underlying

plaintiff's claim against the Movants – to pursue filing a late claim.  Indeed, the Movants waited

nearly a year after filing a state court claim in violation of the stay to seek leave of this Court to

pursue a late-filed claim.  The Movants neither explain nor provide evidence to address any of

this, as it is their burden to do.

      2.      Additionally, as to the request for relief from the stay, the Motion should

be denied for the same reasons that the Movants' prior motion was denied.  In particular, the

Movants' request to lift the stay solely to pursue applicable insurance proceeds cannot be granted

as easily as the Movants assume, given that there is a $1 million deductible applicable to any

claim of the Movants, and Tribune would accordingly need to incur significant costs before any

insurance proceeds were reached, if they ever were – a very significant prejudice.  While Tribune

*might* have some additional coverage from a third party's insurance carrier, Tribune could still

incur costs well above and beyond any third-party coverage. The Movants have addressed none of this, nor do they make any showing that the <u>Rexene</u> factors applicable to motions to lift the stay favor the Movants. Indeed, application of the <u>Rexene</u> factors in this instance demonstrates that the balance of those factors favors the Debtors and not the Movants. Accordingly, the Motion must be denied.

**FACTUAL BACKGROUND**

3.     On March 25, 2009, the Court entered its Order Pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 813] (the "<u>Bar Date Order</u>"). The Bar Date Order established June 12, 2009 as the bar date (the "<u>Bar Date</u>") for filing proofs of claim in the Debtors' cases. The Bar Date Order is clear regarding the consequences of failing to timely file a proof of claim. <u>See</u> Bar Date Order at 6-7 ("any person or entity that is required to file a timely Proof of Claim in the form and manner specified by this Order and who fails to do so on or before the date associated with such claim shall not be treated as a creditor in these chapter 11 proceedings and therefore, shall not be permitted to (i) vote on any plan of reorganization or plan of liquidation or (ii) receive any distribution under any confirmed plan.").

4.     As evidenced in the Affidavit of Mailing [Docket No. 1073] (the "<u>Bar Date Affidavit</u>") filed on April 22, 2009, notice of the Bar Date and a proof of claim form were sent to Jewel-Osco's corporate headquarters in Itasca, Illinois and also to numerous individual Jewel stores. (<u>See</u> Docket No. 1073, Exhibit E p. 1408.) Additionally, the same materials were sent to Jewel's ultimate parent corporation, Supervalu, Inc., at its headquarters, in the name of both Supervalu and Albertson's. (<u>See</u> <u>id.</u> at p. 2739.) The previously cited pages of the Bar Date

3

Affidavit are attached hereto as Exhibit A. Movants did not file any proofs of claim in the Debtors' cases by the bar date, nor do they assert to the contrary.

5.    On February 10, 2011, the Movants filed the Motion of Jewel Food Stores, Inc., Albertson's, LLC, New Albertson's, Inc., and Supervalu, Inc. for Relief from the Automatic Stay [Docket No. 7892] (the "Original Motion"). The Original Motion sought relief from this Court to permit the Movants to proceed with the prosecution of the Complaint. On March 18, 2011, the Debtors filed the Debtors' Objection to the Motion of Jewel Food Stores, Inc., Albertson's, LLC, New Albertson's, Inc., and Supervalu, Inc. for Relief from the Automatic Stay [Docket No. 8420] (the "Original Objection").

6.    The Court heard oral argument on the merits of the Original Motion at a hearing held on March 22, 2011. The pages of the transcript (the "Transcript") of the March 22, 2011 hearing which pertain to the Original Motion are attached hereto as Exhibit B. After a brief discussion, the Court denied the relief sought pursuant to the Original Motion, without prejudice. As evidenced by the Transcript, the Court held that, for two reasons, the Movants did not demonstrate cause for relief from the stay. First, the Court concluded that the Movants failed to establish that they had a claim. See Transcript at 41:9–12. Second, the Court concluded that defending any such claim would require an expenditure of estate assets that was unwarranted. See id. at 41:15–18. On April 4, 2011, the Court entered the Order Denying the Motion of Jewel Food Stores, Inc., Albertson's, LLC, New Albertson's, Inc., and Supervalu, Inc. for Relief from the Automatic Stay [Docket No. 8550].

## ARGUMENT

### A.   Movants Cannot Carry their Excusable Neglect Burden for Failure to File a Proof of Claim

7.     The Motion first fails because the Movants have not explained why they waited until nearly two years after the Bar Date, and nearly as long after they were sued by the plaintiff in Illinois court, to file the Motion seeking leave to file a late claim. The Movants were in complete control of their ability to seek relief from the Court throughout such period of time, yet provide no justification for this considerable delay that would support a finding of "excusable neglect," as it is the Movants' burden to do.[2]

8.     The filing of proofs of claim against the Debtors in these chapter 11 cases is subject to the deadlines and procedures set forth in the Bar Date Order, in accordance with Bankruptcy Rules 3001, 3002, 3003, and 5005. The time for filing proofs of claim may be enlarged after the expiration of the bar date only "for cause" and upon a showing of "excusable neglect" by the party seeking to effect the untimely filing. See Fed. R. Bankr. P. 9006(b)(1) (setting the "excusable neglect" standard).

9.     The term "excusable neglect" is not defined in the Bankruptcy Code. However, the Supreme Court has enumerated four factors to be considered in determining whether a party's neglect was excusable: (i) the danger of prejudice to the debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395 (1993); In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 125 (3d Cir. 1999) (adopting and applying the

---

[2] Additionally, the proposed order to the Motion would grant that the late claim is "allowed." While the Debtors assume that the Movants simply seek leave of the Court to be allowed to file a late proof of claim, as opposed to allowance of the claim itself, to the extent that the Movants seek the latter, the Debtors note that the Movants have not provided any evidence or explanation as to why the claim should be allowed.

Pioneer factors in the Third Circuit).  In addition, courts must also consider the "totality of circumstances presented" when determining whether the neglect was excusable.  Pacificorp v. W.R. Grace, 2006 WL 2375371, *11 (D. Del. 2006); see also In re Am. Classic Voyages Co., 405 F.3d 127, 133 (3d Cir. 2005) ("All [Pioneer] factors must be considered and balanced; no one factor trumps the others.").  The Movants have failed to carry their burden with respect to the Pioneer factors and to show that their failure to file a timely claim was due to "excusable neglect."  Accordingly, the Motion should be denied.

10.    In balancing the Pioneer factors, it is evident that the Debtors and their existing creditors would suffer a real and substantial prejudice if the Motion were granted.  The prejudice to the Debtors is heightened here where the Debtors have complied in every respect with the Bankruptcy Code's strict notice requirements and the Movants have provided no justification for the tremendous delay between being sued in state court, and seeking relief in this Court.  The Debtors have provided actual notice to the Movants of the Bar Date, at no less than ten different locations, including, but not limited to, the headquarters of both Jewel-Osco and Supervalu.  See Bar Date Affidavit.  The Motion provides that only the Complaint was originally filed because the Movants' counsel did not know about these chapter 11 cases.  See Motion ¶¶ 3, 11.  This point is irrelevant, as the Movants' knowledge of the Bar Date, established above, is beyond dispute and undoubtedly imputed to its counsel.[3]

11.    Furthermore, this purported initial lack of knowledge does not explain the significant delay – nearly two years – between the commencement of the state court action and

---

[3] The Debtors are hard-pressed to believe that the Movants' state court counsel, which is based in Chicago, Illinois could have been completely unaware that the Debtors sought bankruptcy relief.  Notably, during the March 22, 2011 hearing (the hearing at which the Original Motion was heard) the Court asked counsel to Cook County on the hearing of a matter unrelated to this one, "Is there anybody in Cook County that didn't know Tribune filed a bankruptcy?" and indicated that it "would suspect" that someone in Cook County would know of this fact.  See Transcript at 36:17–21.

the request for relief from the Bar Date Order. The Debtors would be unduly prejudiced if a party could proceed with filing a late claim where the party has failed to demonstrate any reason for its extended delay. A reasonably diligent party would be expected to seek relief to file a late proof of claim immediately, or at least shortly, after discovering the basis for such claim.[4] Instead, the Movants waited nearly two years after being named in Joan Johnson's complaint to seek the relief requested in the Motion.

12. The Debtors would also be prejudiced because the requested relief could impose substantial costs against the Debtors. Although the Movants say they seek relief from the automatic stay only to pursue applicable insurance, the Debtors' insurance policies applicable to any claim that would be asserted by the Movants have a $1 million per occurrence deductible obligation.[5] This was a salient point in the Original Objection, and in many other pleadings before this Court, and the Debtors will not re-address the point here.[6] Even if the Movants only seek proceeds of the Debtors' insurance, there is the potential for significant deductible costs to be borne by the Debtors' estates, none of which have yet been exhausted in respect of any claim of the Movants.[7]

---

[4] For example, the Court recently granted leave to certain former directors and officers of the Debtors' to file untimely proofs of claim. See e.g., Docket Nos. 8994-9002. These former officers and directors were subject to lawsuits that were filed against them in November and December of 2010, and waited less than six months to seek relief from the Court to file indemnification claims against the Debtors.

[5] The Debtors have explained the $1 million per occurrence deductible in numerous other pleadings before the Court relating to efforts to lift the automatic stay. See, e.g., Debtors' Objection to the Motion of Allen Francisco for Relief From Stay Under Section 362 of the Bankruptcy Code [Docket No. 465]; Debtors' Objection to the Motion for Relief from Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A., and Gutman Pain/Accident Center, Inc. [Docket No. 1079]; Debtors' Objection to the Motion of Schur Packaging Systems, Inc. for Relief from the Automatic Stay [Docket No. 1220]; Debtors' Objection to the Motion of Jayne Clement for Relief from the Automatic Stay [Docket No. 1586]; and Debtors' Objection to the Motion of Ivan J. Bates for Relief from the Automatic Stay [Docket No. 4951].

[6] The Original Objection is incorporated herein in its entirety.

[7] No statements contained in this Objection should be construed as an admission by the Debtors' with respect to any insurers' rights and obligations under applicable insurance policies, or as a waiver of the Debtors' rights and defenses with respect to such policies.

7

13.     By focusing this time on potential coverage from Indiana Insurance, the Movants act as though the insurance landscape is somehow different now than it was when the court denied the relief requested in the Original Motion.  The Movants already presented the exact same argument to the Court, however, and did not prevail.  As evidenced by the Transcript, counsel to the Movants told the Court that "Jewel believes that the third party co-defendant has insurance proceeds which names the debtor as an additional insured" and that "there's still the fact that there's additional insurance from the third-party co-defendant that would be available in the State Court Action."  Transcript at 38:25 and 39:1–11.  The mere existence of additional potential insurance – which has not been unconditionally made available to Tribune, as the Movants know – does not change the fact that the relief sought in the Motion presents the prospect of imposing significant additional costs on Tribune in litigating a claim that has significant procedural and substantive issues that may bar its allowance.

14.     It is not clear that the Debtors will actually have the benefit of the Indiana Insurance coverage.  The letter attached to the Motion as Exhibit B provides that Indiana Insurance will accept tender without reservation in the event that a claim against Tribune is limited to $300,000.00.  The Movants have advised the Debtors that they are not willing to limit any potential claim against the Debtors to $300,000.00.[8]  Even if the Debtors get the benefit of the Indiana Insurance policy, which they expect to be the case, in the event that the Movants obtain a judgment against Tribune for more than $300,000.00, the Debtors will then have to incur actual costs until the $1 million deductible discussed above has been satisfied.  The Motion

---

[8] The Debtors would be agreeable to allowing the Movants to file a late-filed claim and continue the litigation subject of the Complaint if all parties, including the Movants and Indiana Insurance, could agree that (i) Indiana Insurance would accept Tribune's tender of defense, (ii) Tribune's liability, if any, would be capped at the extent of the insurance policy provided by Indiana Insurance and (iii) Tribune's defense costs would be borne by Indiana Insurance in addition to the limits of insurance coverage provided by Indiana Insurance.  Such a scenario would present a true "no prejudice" situation for the Debtors, as opposed to the scenario actually faced by the Debtors, which imposes significant prejudice.

and the Movants' proposed order ignore this fact. For these reasons, the thesis of the Motion—
that the Debtors are not prejudiced because the Movants only seek insurance proceeds—is
simply not supported by the facts.

15.     Finally, the Movants' contention that the floodgates argument "is just
irrelevant" when a party seeks insurance proceeds is meritless. See Motion ¶ 15. For the reasons
discussed above, the Debtors will suffer actual prejudice and harm because of the unexhausted
deductible under the Debtors' insurance. If the Motion were granted, the Debtors could expect
additional late-filed claims and requests to lift the stay that would impose similar costs.
Additionally, the costs of reviewing and responding to additional late filed claim and stay relief
motions are significant. Indeed, the Debtors have already incurred costs in responding to the
Original Motion, the Motion and many similar pleadings on the docket.

16.     The next factor, the length of the delay, weighs overwhelmingly in the
Debtors' favor. The Third Circuit has noted that in assessing a party's reason for delay, "[t]here
is a qualitative distinction between inadvertence which occurs despite counsel's affirmative
efforts to comply and inadvertence which results from counsel's lack of diligence." Consol.
Freightways Corp. v. Larson, 827 F.2d 916, 919 (3d Cir. 1987) (interpreting "excusable neglect"
under Fed. R. Civ. P. 4(a)(5)). According to the Motion, Joan Johnson commenced an action
against the Movants on July 7, 2009, less than one month after the Bar Date. See Motion ¶ 2.
Despite that, the Movants waited until May 3, 2010, nearly an entire year, before filing their
Complaint. See Motion ¶ 3. At no point during the year that passed before the Movants filed the
Complaint did the Movants attempt to file a proof of claim in these cases or come to this Court
seeking relief to file a late claim, despite the uncontested fact that the Movants had actual notice
of Tribune's Bar Date and their duty to file a claim. The Movants waited nearly another year

9

before seeking relief from the stay, and only now, nearly two years after the bar date, are the Movants seeking relief to file a late claim. The Movants present absolutely no argument, let alone evidence, as to why this substantial delay is excusable, despite their having the burden to do so. It is not contested that the Movants were in control of their ability to seek relief to file a late claim throughout this entire time period. The Movants' failure to carry their burden in explaining a delay of more than a year and a half compels denial of the Motion.

17.    The final prong of <u>Pioneer</u> concerns whether a claimant has acted in good faith. In evaluating a party's compliance with an applicable deadline, the Third Circuit has stated that it will find excusable neglect in those instances where, after weighing the relevant considerations, it is satisfied that the party has "exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as the result of some minor neglect, compliance was not achieved." <u>Consol. Freightways</u>, 827 F.2d at 920.

18.    The Movants present no evidence or argument to support a finding that they have acted in good faith in this matter, nor do they explain circumstances to the contrary. In the instant matter, the Movants filed the Complaint despite having actual notice of the Debtors' chapter 11 cases and the Bar Date Order; in addition, the Movants have demanded that the Debtors appear and provide insurance information to them in the Illinois state court where the litigation against the Movants is pending, although the Movants have no relief from this Court to pursue their Complaint in any fashion. In the interest of avoiding expensive, confused proceedings before multiple courts, Tribune has provided such information and has appeared; however, this does not change the fact that any actions taken by the Movants in the Illinois state court to pursue their claims are void because they violate the automatic stay. <u>See, e.g.</u>, 11 U.S.C.

§ 362(a)(3), (a)(6); In re Myers, 491 F.3d 120, 127 (3d Cir. 2007) (holding that actions in violation of the automatic stay are void and only retroactively ratifiable if the stay is annulled); In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994); Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1131 (3d Cir. 1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1206 n. 11 (3d Cir. 1991). These actions, combined with the Movants' lengthy delay in seeking leave to file their late proof of claim and in seeking relief from the automatic stay, at least raise questions as to the Movants' good faith, and the Movants provide no answers to support a finding of good faith.

19.     For these reasons, the Movants have not carried their burden to show excusable neglect in accordance with Pioneer and its progeny, and should not be authorized to file an untimely claim in the Debtors' cases.

**B.    No "Cause" Exists to Lift the Stay**

20.     For many of the same reasons discussed above, and for the reasons discussed in the Original Objection, no "cause" exists to lift the stay and the stay relief requested in the Motion should accordingly be denied. Section 362(d) of the Bankruptcy Code requires a party seeking relief from the automatic stay to demonstrate "cause."[9] The party seeking relief from the automatic stay has the initial burden to establish its *prima facie* case in support of relief, which can then be rebutted by the party opposing such relief. See, e.g., In re RNI Wind Down Corp., 348 B.R. 286, 299 (Bankr. D. Del. 2006); Izzarelli v. Rexene Prods. Co. (In re Rexene

---

[9] Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> > 1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

46429/0001-7673261v1

Prods. Co.), 141 B.R. 574, 577 (Bankr. D. Del. 1992).  In determining whether a litigation

claimant has demonstrated sufficient cause to lift the automatic stay, courts routinely consider (i)

whether allowing the litigation to continue in another forum will result in any great prejudice to a

debtor or its estate; (ii) whether maintaining the stay will cause any hardship to the claimant and

whether this hardship is greater than the resulting hardship to a debtor; and (iii) the probability of

the claimant prevailing on the merits of the lawsuit.  See, e.g., Rexene, 141 B.R. at 576; In re

The SCO Group, Inc., 395 B.R. 852, 857 (Bankr. D. Del. 2007).  None of the considerations

weighing in favor of stay relief in Rexene or SCO Group is present here.

21.    Despite the abundance of case law regarding the requirements for lifting

the automatic stay, like the Original Motion, the Motion is deficient regarding the balancing of

the hardships and the likelihood of success on the merits.  While the Motion does mention that

courts will conduct a balancing test, the Movants simply state they will experience hardship due

to delay.  See Motion ¶ 20.  This is not a *prima facie* case in support of the requested relief, and

provides no basis for the relief requested at all.  Notwithstanding the absence of support for the

relief requested in the Motion, the Debtors address the issue of cause below.

    **(i)**       **Significant Prejudice to the Debtors, their Estates, and Creditors Will Result if the Stay is Lifted**

22.    The prejudice to the Debtors from the Motion being granted outweighs

that to the Movants if the Motion is denied.  As discussed above, the Debtors have an

unexhausted $1 million deductible on their primary insurance.  This potential cost alone presents

a harm to the Debtors that justifies denying the Motion.  Even if the Debtors obtain $300,000.00

of coverage from Indiana Insurance, which is uncertain in light of the restricted nature of Indiana

Insurance's acceptance of tender, the Debtors may still be responsible for incremental,

potentially significant, costs in the event that the Movants obtain a judgment in excess of the Indiana Insurance policy.

**(ii)    The Balance of Hardship Favors the Debtors and Maintaining the Automatic Stay**

23.    In making a showing of "cause," the Movants must demonstrate "that the balance of hardships from not obtaining relief tips *significantly* in [their] favor." In re RNI Wind Down Corp., 348 B.R. at 299 (quoting Atl. Marine, Inc. v. Am. Classic Voyages Co. (In re Am. ClassicVoyages Co.), 298 B.R. 222, 225 (D. Del. 2003)) (emphasis added, internal quotation marks omitted). The Movants have failed to meet this standard. The only hardship alleged by the Movants is that "their claim and ultimate recovery against not only Debtors, but all parties, will be unnecessarily delayed." Motion ¶ 20.

24.    The Movants' contention that the automatic stay is somehow causing them to be unable to recover against other parties is simply false. The automatic stay, amplified by the Movants' failure to file a timely proof of claim, bars the Movants' assertion of claims against the Debtors, but there is no apparent basis to conclude that the stay presents a bar to Movants' assertion of claims against any other parties. While the scope of the automatic stay is broad, its "clear language ... stays actions only against a debtor.... As a consequence, '[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors and or others with a similar legal or factual nexus to the ... debtor.'" McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509-10 (3d Cir. 1997) (quoting Maritime Elec. Co., 959 F.2d at 1205 (citing Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196 (6th Cir. 1983)). Thus, the general rule is that a lawsuit brought initially against multiple defendants, including the debtor, may still proceed against the non-

13

debtor co-defendants after the debtor files bankruptcy. This is true of counterclaims and third

party claims, as noted by the Third Circuit in <u>Maritime Electric</u>:

> All proceedings in a single case are not lumped together for
> purposes of automatic stay analysis. Even if the first claim filed in
> a case was originally brought against the debtor, section 362 does
> not necessarily stay all other claims in the case. Within a single
> case, some actions may be stayed, others not. Multiple claim and
> multiple party litigation must be disaggregated so that particular
> claims, counterclaims, crossclaims and third-party claims are
> treated independently when determining which of their respective
> proceedings are subject to the bankruptcy stay.

<u>Maritime Elec. Co.</u>, 959 F.2d at 1204-05. Although the automatic stay may be extended to third

parties in certain circumstances, none of those circumstances appears present in the instant

matter, nor do the Movants contend otherwise.

        25.      As to the Complaint as it relates to Tribune, the Movants claim that the

delay is unnecessary but fail to provide any argument as to why that is so. Moreover, delay is

not a relevant issue because prosecution of the Complaint should not be delayed as to parties

other than the Debtors. As to the Debtors, it should be barred, because the Movants have not

filed a timely proof of claim, nor carried their burden to demonstrate why their failure to do so is

excusable. There is no harm to Movants in denying the Motion that is not of their own making

and, to the extent there is harm, it is outweighed by the prejudice to the Debtors.

       **(iii)**    **Movants Have Failed to Demonstrate a Likelihood of Success on the Merits of the Proposed Complaint**

        26.      Finally, the Movants have failed to argue, much less establish, that there is

any likelihood of success on the merits of their proposed action.[10] Even absent all of the other

shortcomings of the Motion, the Debtors believe based on the information available to them that

---

[10] The Debtors hereby reserve the right to argue in rebuttal any assertion by Movants that they are likely to prevail on the merits of their action. However, since the Movants have not attempted to carry, much less meet, their *prima facie* burden with respect to this prong of <u>Rexene</u>, the burden has not shifted to the Debtors.

they have strong defenses to any cause of action raised in the Complaint.  Despite this belief,

because the Movants have not made their *prima facie* case regarding success on the merits, the

Debtors refrain from a lengthy discussion of that point herein.

WHEREFORE, the Debtors respectfully request that this Court (i) deny the

Motion in its entirety, and (ii) grant such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      June 9, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Matthew G. Martinez
One South Dearborn Street
Chicago, IL 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-7673261v1