## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al.,[1] | (Jointly Administered) |
|  |  |
| Debtors. |  |
|  | Re: Docket Nos. 9153, 9155, 9157 |
|  | **Hearing date: June 13, 2010 at 2:00 p.m.** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### DEBTOR/COMMITTEE/LENDER PLAN PROPONENTS' RESPONSE TO THE (1) MOTION OF THE NOTEHOLDER PLAN PROPONENTS TO ADMIT CERTAIN DOCUMENTS AND (2) SUPPLEMENTAL MOTION OF WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES, AND ONE OF NOTEHOLDER PLAN PROPONENTS, CONCERNING THE ADMISSION OF CERTAIN DOCUMENTS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); and WLVI Inc. (8074); WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT..........................................................................................................2

I.    BANKRUPTCY RULE 9019 DOES NOT PROVIDE A BASIS FOR
      ADMITTING THE DISPUTED EXHIBITS FOR TRUTH ...................................2

II.   THE DISPUTED EXHIBITS ARE NOT EXCLUDED FROM THE
      DEFINITION OF HEARSAY NOR ARE THEY ADMISSIBLE UNDER ANY
      HEARSAY EXCEPTIONS ...................................................................................4

      A.   The Disputed Exhibits Are Not Admissible Under Rule 801(d)(2) As
           Admissions By A Party-Opponent ...........................................................5

           1.   The Disputed Exhibits Are Not Admissible Under Rule
                801(d)(2)(C) .......................................................................7

           2.   The Disputed Exhibits Are Not Admissible Under Rule
                801(d)(2)(D) .......................................................................9

           3.   The Disputed Exhibits Are Not Admissible Under Rule
                801(d)(2)(E)......................................................................11

      B.   The Disputed Exhibits Are Not Admissible As Present Sense
           Impressions Under Rule 803(1) ...............................................................14

      C.   The Disputed Exhibits Are Not Admissible As Business Records
           Under Rule 803(6).................................................................................18

      D.   The Disputed Exhibits Are Not Admissible Under Rule 803(17) .............21

      E.   The Disputed Exhibits Are Not Admissible Under the Rule 807
           Residual Exception.................................................................................23

CONCLUSION .....................................................................................................26

# TABLE OF AUTHORITIES

PAGE

<u>CASES</u>

Agere Sys., Inc. v. Adv. Envtl. Tech. Corp.,
    602 F.3d 204 (3d Cir. 2010)..........................................................................................14

Anderson v. United States,
    417 U.S. 211 (1974).....................................................................................................14

Asseo v. Pan American Grain Co., Inc.,
    805 F.2d 23 (1st Cir. 1986).............................................................................................3

Avondale Mills, Inc. v. Norfolk S. Corp.,
    No. 05 Civ. 2817, 2008 WL 6953956, at * 4 (D.S.C. Feb. 21, 2008) ...................................22

Big Apple BMW, Inc. v. BMW of N. Am., Inc.,
    974 F.2d 1358 (3d Cir. 1992)......................................................................................9, 12

Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.,
    247 F.3d 79 (3d Cir. 2001)...........................................................................................24

Cambridge Elecs. Corp. v. MGA Elecs., Inc.,
    227 F.R.D. 313, 335 (C.D. Cal. 2004)............................................................................14

Canatxx Gas Storage Limited v. Silverhawk Capital Partners, LLC,
    No. H-06-1330, 2008 U.S. Dist. LEXIS 37803 (S.D. Tex. May 8, 2008).............................16

Cmty. for Creative Non-Violence v. Reid,
    490 U.S. 730 (1989).....................................................................................................10

David v. Pueblo Supermarket of St. Thomas,
    740 F.2d 230 (3d Cir. 1984).............................................................................................4

Depinto v. Sherwin-Williams Co.,
    No 07 CV 2384, 2011 U.S. Dist. LEXIS 23864 (N.D. Ill. Mar. 9, 2011) ............................20

Dull v. Conway,
    No. 07 Civ. 0307, 2009 U.S. Dist. LEXIS 96476 (M.D. Pa. Oct. 19, 2009).........................6

In re Cirrus Logic Sec. Litig.,
    946 F. Supp. 1446 (N.D. Cal. 1996) ..........................................................................16-17

In re Frost Bros., Inc.,
    91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301 (S.D.N.Y. 1992)....................................2

In re Grand Prix Assocs., Inc.,
    No. 09-16545 (DHS), 2009 Bankr. LEXIS 1779 (Bankr. D. N.J. Jun. 26, 2009) .................2

In re Neshaminy Office Bldg. Assocs.,
    62 B.R. 798 (E.D. Pa. 1986) ..............................................................................................3

In re Terrorist Bombings of U.S. Embassies in East Africa,
    552 F.3d 93 (2d Cir. 2008) ..............................................................................................12

Kirk v. Raymark Indus., Inc.,
    61 F.3d 147 (3d Cir. 1995)................................................................................................8

Lippay v. Christos,
    996 F.2d 1490 (3d Cir. 1993).................................................................................4, 10, 11

McAdams v. United States,
    297 Fed. Appx. 183 (3d Cir. 2008) ..................................................................................11

Morisseau v. DLA Piper,
    532 F. Supp. 2d 595 (S.D.N.Y. 2008)..............................................................................20

Nationwide Mut. Ins. Co. v. Darden,
    503 U.S. 318 (1992).........................................................................................................10

Newark Group, Inc. v. Sauter,
    No. 01 Civ. 1247, 2004 WL 5623944 (S.D. Ohio Mar. 26, 2004) .......................................17

NLRB v. Sheet Metal Works' Int'l Ass'n, Local Union No. 19,
    154 F.3d 137 (3d Cir. 1998)............................................................................................10

Park West Radiology v. Carecore Nat'l LLC,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009).............................................................................20

Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.,
    626 F. Supp. 159 (N.D. Ill. 1985) ...................................................................................10

Rossi v. Standard Roofing, Inc.,
    156 F.3d 452 (3d Cir. 1998).............................................................................................12

Six W. Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp.,
    286 B.R. 239 (S.D.N.Y. 2002)...........................................................................................2

Swecker v. Dublin City Sch. Dist.,
    2010 U.S. Dist. LEXIS 98899 (S.D. Ohio Sept. 22, 2010) ...............................................14

United States v. Bailey,
 581 F.2d 341 (3d Cir. 1978)..................................................................................24-25

United States v. Beech-Nut Nutrition Corp.,
 871 F.2d 1181 (2d Cir. 1989)....................................................................................12

United States v. Brockenborrugh,
 574 F.3d 726 (D.C. Cir. 2009) .............................................................................12-14

United States v. Casoni,
 950 F.2d 893 (3d Cir. 1991)................................................................................18-19

United States v. Cruz-Rodriguez,
 541 F.3d 19 (1st Cir. 2008) .......................................................................................12

United States v. Ellis,
 156 F.3d 493 (3d Cir. 1998)................................................................................12-13

United States v. Ferber,
 966 F. Supp. 90 (D. Mass 1997) ........................................................................16, 26

United States v. Furst,
 886 F.2d 558 (3d Cir. 1989)......................................................................................18

United States v. Goudy,
 792 F.2d 664 (7th Cir. 1986) ....................................................................................22

United States v. Green,
 556 F.3d 151 (3d Cir. 2009).......................................................................................15

United States v. Kemp,
 500 F.3d 257 (3d Cir. 2007).......................................................................................12

United States v. Manfre,
 368 F.3d 832 (8th Cir. 2004) ....................................................................................15

United States v. Masferrer,
 514 F.3d 1158 (11th Cir. 2008) ...........................................................................22-23

United States v. McGlory,
 968 F.2d 309 (criminal drug conspiracy)..................................................................12

United States v. Mitchell,
 145 F.3d 572 (3d Cir. 1998)......................................................................................15

United States v. New-Form Manufacturing Co. Ltd.,
    277 F. Supp. 2d 1313 (Ct. Int'l Trade 2003) ...............................................................22

United States v. Pellulo,
    964 F.2d 193 (3d Cir. 1992)...................................................................................... 18-19

United States v. Riley,
    621 F.3d 312 (3d Cir. 2010).............................................................................................11

United States v. Sokolow,
    91 F.3d 396 (3d Cir. 1996).................................................................................... 8, 18-19

United States v. Woods,
    321 F.3d 361 (3d Cir. 2003).................................................................................... 21-23

United States v. Wright,
    363 F.3d 237 (3d Cir. 2004).................................................................................... 24-25

United States v. Yarborough,
    852 F.2d 1522 (9th Cir. 1988) .......................................................................................12

Westfed Holdings, Inc. v. United States,
    55 Fed. Cl. 544 (Ct. Fed. Cl. 2003) ..............................................................................16

Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,
    505 F. Supp. 1190 (E.D. Pa. 1980) ................................................................................9

## RULES

Fed. R. Bankr. P. 9017 .......................................................................................................2

Fed. R. Bankr. P. 9019 ...................................................................................................2, 4

Fed. R. Evid. 801 ...............................................................................................................4

Fed. R. Evid. 801(d)(2) ........................................................................................... passim

Fed. R. Evid. 802 ...............................................................................................................4

Fed. R. Evid. 803(1)........................................................................................................15

Fed. R. Evid. 803(6).........................................................................................................18

Fed. R. Evid. 803(17).................................................................................................21-22

Fed. R. Evid. 807 ........................................................................................................23-25

iv

**OTHER AUTHORITIES**

2 Hon. Barry Russell, Bankr. Evid. Man. § 101:1 (2010) ............................................................2

2 Hon. Barry Russell, Bankr. Evid. Man. § 801:21 (2010) .......................................................13

Fed. R. Evid. 801 advisory committee's note (1972) ............................................................6, 26

Fed. R. Evid. 803 advisory committee's note (1972) ...............................................................24

5 Weinstein's Federal Evidence § 801.19 (2002).................................................................21-22

5 Weinstein's Federal Evidence § 803.30 (2002).......................................................................14

The Debtor/Committee/Lender Plan Proponents (the "DCL Proponents"), by and through their undersigned counsel, respectfully submit this response to the (1) Motion of the Noteholder Plan Proponents to Admit Certain Documents [Docket No. 9157] (the "Noteholder Exhibit Motion") and (2) Supplemental Motion of Wilmington Trust Company, as Successor Indenture Trustee for the Phones Notes, and One of Noteholder Plan Proponents, Concerning the Admission of Certain Documents [Docket No. 9153] (the "WTC Exhibit Motion" and together with the Noteholder Exhibit Motion the "Exhibit Motions"), each dated June 6, 2011.[2]

## PRELIMINARY STATEMENT[3]

The parties are in agreement that the Court must be afforded the opportunity to "canvass" the factual and legal issues relating to the LBO Claims.  The parties likewise agree that in doing so the Court may consider every one of the thousands of exhibits the parties have collectively presented to the Court prior to, during and after the confirmation hearing, as well as the Examiner Report and a trial record spanning three weeks.  The dispute raised by the Exhibit Motions relates to sixty-one (61) exhibits that the Noteholders wish to admit "for all purposes" (in other words, for more than purposes of "canvassing" the issues) (the "Disputed Exhibits").  The Noteholders concede that each of these documents constitutes hearsay.  Yet the Noteholders urge the Court to overlook this deficiency, alternatively arguing that such procedural niceties can

---

[2] As the Noteholders concede, although the DCL Proponents and the Noteholders had narrowed their differences to some twenty Disputed Exhibits, the Noteholders – without any notice – added two dozen additional documents to the disputed list.  See Noteholder Exhibit Motion at n.6; see also WTC Exhibit Motion at n.2. Moreover, the suggestion that the DCL Proponents "never responded" to an offer to compromise is simply false.  To the contrary, the DCL Proponents, in the spirit of compromise, agreed in the Evidentiary Order (discussed infra) that statements made by any of the DCL Proponents would be admitted for all purposes against the proponent making the statement and granted the Noteholders additional time to set forth their arguments to the Court.

[3] Capitalized terms not otherwise defined have the meanings given in the Second Amended Joint Plan of Reorganization For Tribune Company And Its Subsidiaries (as Modified April 26, 2011) [Docket No. 8769] (the "DCL Plan"), in the related Specific Disclosure Statement for the First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the DCL Proponents [Docket No. 7135], or the Joint Disclosure Statement [Docket No. 7198].

be dispensed with in the Bankruptcy Rule 9019 context, or relying on either the residual hearsay

exception or overbroad and unprecedented interpretations of inapplicable hearsay rules (e.g., the

"market reports exception"). For the reasons set forth below, each of the Noteholders'

arguments is without merit.

**ARGUMENT**

**I.    BANKRUPTCY RULE 9019 DOES NOT PROVIDE A BASIS FOR ADMITTING
       THE DISPUTED EXHIBITS FOR TRUTH**

The Noteholders and Wilmington Trust contend that Bankruptcy Rule 9019 permits the

Court to apply a lower standard for the admission of evidence for all purposes in the context of

considering approval of a settlement because the Court is not determining the merits of the

underlying claims.[4]  They are wrong.

The DCL Proponents agree that the Court's review of the reasonableness of the DCL

Plan settlement only requires a canvassing of the issues and facts and is not a plenary review of

the merits of the settled claims.[5]  In fact, the DCL Proponents have stipulated that all documents,

including the Disputed Exhibits may be admitted into evidence and considered by the Court in

evaluating the settlement.[6]  As set forth in the agreed upon Order Establishing Procedures

---

[4] Noteholder Exhibit Motion at 10; WTC Exhibit Motion at 4-5.

[5] This fact, however, does not give license to the Noteholders and Wilmington Trust to disregard the
Federal Rules of Evidence.  The law could not be clearer – the Federal Rules of Evidence apply in all cases under
the Bankruptcy Code, including confirmation hearings involving a settlement of claims.  Fed. R. Bankr. P. 9017
("The Federal Rules of Evidence…apply in cases under the [Bankruptcy] Code."); 2 Hon. Barry Russell, Bankr.
Evid. Man. § 101.1 (2010) (same); see, e.g., Six W. Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp., 286
B.R. 239, 250 (S.D.N.Y. 2002) (affirming exclusion of evidence as hearsay in Rule 9019 context); In re Frost Bros.,
Inc., 91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301, at *14-15 (S.D.N.Y. 1992) (affirming admission of expert
testimony under Fed. R. Evid. 702 in bankruptcy settlement hearing); In re Grand Prix Assocs., Inc., No. 09-16545
(DHS), 2009 Bankr. LEXIS 1779, at *15-16 (Bankr. D. N.J. Jun. 26, 2009) (applying Fed. R. Evid. 201 in Rule
9019 context).

[6] Order Establishing Procedures Related to the Post-Confirmation Hearing Admission of Evidence and
Resolution of Evidentiary Objections [Docket. No. 8843].

2

Related to the Post-Confirmation Hearing Admission of Evidence And Resolution of Evidentiary

Objection (the "Evidentiary Order"), entered by the Court on May 6, 2011 [Docket No. 8843],

the parties have agreed that all statements attributable to a plan proponent are admissible for all

purposes against that proponent, and that all other statements and/or exhibits may be admitted

into evidence for any purpose other than the truth of the matter asserted, including for purposes

of the issue canvassing that is necessary for consideration of the proposed settlement embodied

in the DCL Plan. See Evidentiary Order ¶¶ 2-4.

      The Noteholders and Wilmington Trust apparently now want much more.

Notwithstanding the fact that every single one of the Disputed Exhibits will be included in the

record for the Court's consideration of the proposed settlement, the Noteholders and Wilmington

Trust have identified the 61 Disputed Exhibits that they seek to have admitted for all purposes

against all DCL Proponents.[7]

      None of the cases cited by the Noteholders supports their position that statements that are

clearly hearsay may be admitted for the truth of the matter asserted simply because the hearsay

statements are submitted to the Court for its consideration of the fairness of a settlement and not

the merits of the claims underlying the settlement. Instead, unlike here, the issue in those cases

was whether evidence should be excluded entirely.[8]

      To reiterate, the DCL Proponents do not seek to exclude the Disputed Exhibits from the

Court's consideration in this proceedings in connection with the approval of the DCL Plan

---

[7] The Declaration of Mitchell Hurley identifies forty Disputed Exhibits in connection with the Noteholder Exhibit Motion and the Declaration of Martin S. Siegel identifies twenty-seven Disputed Exhibits in connection with the WTC Exhibit Motion. The declarations contain six overlapping exhibits.

[8] See Asseo v. Pan Am. Grain Co., Inc., 805 F.2d 23 (1st Cir. 1986) (party sought exclusion of transcripts from administrative hearing as hearsay); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 802 (E.D. Pa. 1986) (party sought to exclude evidence from record on appeal).

settlement. The Court can and should consider all such materials in determining whether the settlement satisfies the <u>Martin</u> factors and other applicable standards. Rather, the DCL Proponents simply object to the introduction of documents that are admittedly hearsay for which a proper evidentiary foundation has not been established. Bankruptcy Rule 9019 does not solve that problem.

## II.    THE DISPUTED EXHIBITS ARE NOT EXCLUDED FROM THE DEFINITION OF HEARSAY NOR ARE THEY ADMISSIBLE UNDER ANY HEARSAY EXCEPTIONS

It is undisputed that the Disputed Exhibits are hearsay, as they contain out of court statements that the Noteholders seek to use for the truth of the matters asserted. <u>See</u> Fed. R. Evid. 801. The Noteholders, therefore, have the burden to establish as to each of the 61 Disputed Exhibits that one or more of the hearsay exceptions applies. Fed. R. Evid. 802; <u>see also Lippay v. Christos</u>, 996 F.2d 1490, 1497 (3d Cir. 1993) (proponent of hearsay has burden of proving admissibility); <u>David v. Pueblo Supermarket of St. Thomas</u>, 740 F.2d 230, 235 (3d Cir. 1984) (same). As set forth below, the Noteholders and Wilmington Trust have failed to meet their burden.

The Exhibit Motions are rife with descriptions of black-letter legal principals and conclusory assertions that those principles have been met. In numerous sections of the WTC Exhibit Motion, for example, Wilmington Trust asserts that the "record" indicates, reflects, or is replete with evidence concerning particular facts that support the admissibility of the Disputed Exhibits. <u>See, e.g.</u>, WTC Exhibit Brief at 6-8. In none of these instances, however, does Wilmington Trust cite to record evidence in support of the proposition, and in many instances

4

cites to nothing at all. The Noteholder Exhibit Motion likewise fails to articulate legitimate arguments justifying admission of the Disputed Exhibits.

Instead, the Exhibit Motions are nothing more than re-argument of the alleged merits of the causes of action that the Noteholders seek to litigate and the alleged relevance of the Disputed Exhibits to the Court's consideration of approval of the settlement in the DCL Plan. See Noteholder Exhibit Motion at 5-8. The merits of the causes of action are obviously not at issue in this context. Nor is relevance, given the DCL Proponents agreement that all of the Disputed Exhibits can be considered for the purposes of issue canvassing. The question is whether the Disputed Exhibits can be admitted for the truth of the matter asserted. As shown below, they cannot.

### A.    The Disputed Exhibits Are Not Admissible Under Rule 801(d)(2) As Admissions By A Party-Opponent

Wilmington Trust argues that 41 of the Disputed Exhibits[9] are admissible for all purposes because they are excluded from the definition of hearsay under one or more of the subsections of Rule 801(d)(2) as admissions by a party opponent. See WTC Exhibit Motion at 7-17.[10] Rule 801(d)(2) provides that a statement is not hearsay if the "statement is offered against a party" and is either made by the party, "a person authorized by the party to make a statement concerning the subject," "the party's agent or servant concerning a matter within the scope of the agency or

---

[9] NPP 136, 191, 202, 225, 236, 254, 296, 297, 399, 414, 462, 482, 497, 501, 632, 1049, 1070, 1165, 1166, 1232, 1256, 1323, 1387, 1488, 1534, 1821, 1830, 2247, 2481, 2482, 2484, 2488, 2489, 2490, 2491, 2493, 2494, 2496, 2503, 2504, 2505.

[10] The Noteholders join in the arguments made in the WTC Exhibit Motion with respect to Rule 801(d)(2)(C) and (E). See Noteholder Exhibit Motion at n.2.

employment, made during the existence of the relationship," or "a coconspirator of a party

during the course and in furtherance of the conspiracy."

As an initial matter, the declarants in the vast majority of these 41 Disputed Exhibits are

not parties to the Confirmation Hearing.[11]  Rather, the declarants in these exhibits largely include

individuals from Morgan Stanley, Citibank North America, Inc., Citigroup Global Markets

("Citigroup"), Citibank, N.A. ("Citibank"), Bank of America, N.A. ("Bank of America") and

Merrill Lynch Capital Corporation; entities that are not proponents of either the DCL Plan or the

Noteholder Plan and, therefore, are not parties within the meaning of Rule 801(d)(2).  Rule

801(d)(2) is inapplicable to these statements of non-parties and the Disputed Exhibits cannot be

admitted on that basis.[12]

Further, it is important to recognize that Wilmington Trust and the Noteholders define

"LBO Lenders" as each and every holder of a Senior Loan Claim, a Bridge Loan Claim, and an

EGI-TRB LLC Note Claim.[13]  There are hundreds of such "LBO Lenders" who acquired their

Senior Loan Claims and Bridge Loan Claims well after consummation of the Leveraged ESOP

Transactions (in some cases after the petition date in these cases) and had nothing whatsoever to

do with the negotiation or structuring of those transactions.  It is ridiculous to assert, as both

---

[11] NPP 144, 202, 284, 296, 297, 399, 462, 501, 1049, 1070, 1165, 1166, 1256, 1323, 1387, 1488, 1534, 1821, 1830, 2247, 2481, 2482, 2484, 2488, 2489, 2490, 2491, 2493, 2494, 2496, 2503, 2504 and 2505.

[12] The Advisory Committee Notes to Rule 801(d)(2) explain that "[a]dmissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Fed. R. Evid. 801 advisory committee's note (1972). Extending this rule to admit statements made by non-parties "would extend application of this rule beyond the rationale that supports it" because such parties are not participants in the Confirmation Hearing. See Dull v. Conway, No. 07 Civ. 0307, 2009 U.S. Dist. LEXIS 96476, at * 7 n.1 (M.D. Pa. Oct. 19, 2009) (statement allegedly made by agent or servant of defendants who were no longer parties to the litigation not admissible under 801(d)(2).)

[13] Third Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, L.P., Deutsche Bank Trust Company Americas, Law Debenture Trust Company Of New York, And Wilmington Trust Company [Docket No. 8755] at § 1.1.146.

6

Wilmington Trust and the Noteholders do, that these creditors authorized other "LBO Lenders"

to speak on their behalf, and the Senior Loan Agreement confirms they did not.[14]

Finally, as explained in greater detail below, neither Wilmington Trust nor the

Noteholders have demonstrated that the declarants were speaking on behalf of the so-called

"LBO Lenders" as a whole and have thus failed to meet the requirements of subsections (C), (D)

and/or (E) of Rule 801(d)(2). [15]

### 1.    The Disputed Exhibits Are Not Admissible Under Rule 801(d)(2)(C)

Wilmington Trust argues that nine of the Disputed Exhibits are admissible under Rule

801(d)(2)(C), which excludes from the definition of hearsay statements offered against a party

which were made "by a person authorized by the party to make a statement concerning the

subject." [16]  Wilmington Trust spends over two pages outlining the general requirements of Rule

801(d)(2)(C), but fails to cite any legal or factual support for the crux of its argument – that each

---

[14] See NPP 439 at § 7.04 (The Credit Agreement provides: "Each Lender acknowledges that it has, independently and without reliance upon the Agent or any other Lender…made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon the Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement") (emphasis added); NPP 666 § 7.04 (same); NPP 1335 ("The commitments of the Initial lenders hereunder are several and not joint…).

[15] Wilmington Trust asserts that the thirty-six Disputed Exhibits it has identified as being admissible under Rule 801(d)(2) are admissible for their truth against the LBO Lenders. See WTC Exhibit Motion at 8, 9, 13. It bears noting that, even if they were admissible against the LBO Lenders who are proponents of the DCL Plan, these exhibits cannot be admitted against the LBO Lenders who are not a party to the Confirmation Hearing.

Additionally, several exhibits that the Noteholders seek to admit under Rule 801(d)(2) contain statements made either by the Debtors or the Debtors' counsel, Sidley Austin LLP ("Sidley Austin"), as well as a non-party. See NPP 2488, 2490, 2491, 2493, 2494 and 2505. With respect to these exhibits, the DCL Proponents do not object to the admission of statements made by the Debtors and/or Sidley as admissions of a party-opponent as to the Debtors. Such statements, however, are not admissions as to any other DCL Plan Proponent. Moreover, any statements contained in these exhibits made by non-parties are hearsay and are not admissible under rule 801(d)(2) for the reasons discussed herein.

[16] NPP 236, 632, 1165, 1166, 2247, 2484, 2489, 2490 and 2493.

LBO Lender explicitly or implicitly authorized every other LBO Lender to make statements on

its behalf concerning the subject of the documents at issue here. WTC Exhibit Motion at 8-9.[17]

Nor could it, for such an argument is, on its face, absurd.

Wilmington Trust first summarily argues that certain Disputed Exhibits are admissible

under Rule 801(d)(2)(C) because they contain authorized statements concerning the

Transactions. WTC Exhibit Motion at 8.[18] Wilmington Trust does not, however, provide any

basis on which the Court might conclude that the statements by one LBO Lender were, in fact,

authorized by another LBO Lender. For example, in support of the assertion that the

"record...reflects that the LBO Lenders made authorized statements concerning due diligence on

behalf of the LBO Lenders," Wilmington Trust simply cites two of the Disputed Exhibits that

they seek to admit under Rule 801(d)(2)(C). See WTC Exhibit Motion at 8. These exhibits – a

draft email containing potential discussion topics concerning the transaction and an internal

Houlihan Lokey email discussing potential retention – have no bearing on whether the LBO

Lenders were authorized to speak for one another concerning the diligence of the transactions.

See NPP 632, 2247. Moreover, even if the cited documents had some relevance to the argument,

which they do not, it is hornbook law that the contents of the Disputed Exhibits, while potentially

probative, "are not alone sufficient to establish the declarant's authority under subdivision (C)."

Fed. R. Evid. 801(d)(2).

---

[17] Courts in the Third Circuit look to the principles of agency law to determine whether a declarant was
authorized to make a statement. United States v. Sokolow, 91 F.3d 396, 402 (3d Cir. 1996) ("Rule 801(d)(2)(C)
requires that the declarant be an agent of the party-opponent against whom the admission is offered."); Kirk v.
Raymark Indus., Inc., 61 F.3d 147, 163-64 (3d Cir. 1995). No such agency relationship exists here. See infra
Section II.A.2.

[18] NPP 236, 632, 1165, 1166 and 2247.

8

Wilmington Trust next argues that certain Disputed Exhibits should be admissible because they contain statements made by Citibank, a sister company of Citigroup,[19] a Lead Arranger of Loans, and asserts that Citigroup was "expressly and implicitly authorized to act on behalf of the LBO Lenders in order to fulfill its duties to facilitate and foster the LBO Transaction." WTC Exhibit Motion at 9.[20] Once again, Wilmington Trust fails to support its assertion that the statements were authorized by the LBO Lenders. Indeed, the only documents cited by Wilmington Trust make clear that each of the LBO Lenders agreed to fund the Transactions based solely on their own research and review and <u>not</u> in reliance upon any other lender.[21]

Accordingly, because Wilmington Trust has failed to cite any evidence that the LBO Lenders were authorized to speak on behalf of one another, it has failed to meet its burden of demonstrating that the Disputed Exhibits should be admissible under Rule 801(d)(2)(C).

2.     **The Disputed Exhibits Are Not Admissible Under Rule 801(d)(2)(D)**

Wilmington Trust argues that nine of the Disputed Exhibits are admissible under Rule 801(d)(2)(D), which excludes from the definition of hearsay statements made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during

---

[19] The suggestion that statements made by Citibank are somehow imputable to Citigroup has no merit. <u>See</u> WTC Exhibit Motion at 9, 11. Citibank is separate and distinct from the Citigroup entities that served as an LBO Lender in connection with the Transactions, and Wilmington Trust has cited no evidence to the contrary. Further, the cases cited by Wilmington Trust do not support their assertion. <u>See</u> <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1373 (3d Cir. 1992) (statements made by subsidiary admitted against parent corporation because the evidence "indicate[d the parent had] sufficiently dominating interest in its subsidiaries"); <u>Zenith Radio Corp. v. Matsushita Elec. Indus. Co.</u>, 505 F. Supp. 1190, 1247-48, 1308 (E.D. Pa. 1980) (proponent's failure to demonstrate sufficient interference by parent in subsidiary prevents introduction of statement against parent under Rule 801(d)(2)(C) or (D)).

[20] NPP 2484, 2489, 2490 and 2493.

[21] <u>See</u> <u>supra</u> n.14.

the existence of the relationship." See WTC Exhibit Motion at 9-11.[22]  As the proponent of this

evidence, Wilmington Trust has the burden to prove these statements were made within the

scope of an agency relationship. See, e.g., Lippay, 996 F.2d at 1497.  Wilmington Trust has

failed to do so.

Although the Federal Rules of Evidence "do not define 'agent' or 'servant,'" the Third

Circuit "believe[s] that Congress intended Rule 801(d)(2)(D) 'to describe the traditional master-

servant relationship as understood by common law agency doctrine.'" Lippay, 996 F.2d at

1497.[23]  That is, "an agency relationship is established only where the party-opponent personally

'directed [the declarant's] work on a continuing basis.'" Id. at 1498-99 (no agency relationship

for the purposes of 801(d)(2)(D) where party did not have continuous supervisory control over

declarant) (alteration and emphasis in original); see also Nationwide Mut. Ins. Co. v. Darden,

503 U.S. 318, 323-24 (1992) ("[U]nder the general common law of agency, we consider the

hiring party's right to control the manner and means by which the product is accomplished.")

(quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989)); NLRB v.

Sheet Metal Workers' Int'l Ass'n, Local Union No. 19, 154 F.3d 137, 142 (3d Cir. 1998) (noting

common law rules of agency require showing of control).  Moreover, even if such an agency

relationship were to be established, the declarant's statement "must concern a matter within the

---

[22] NPP 236, 632, 1165, 1166, 2247, 2484, 2489, 2490 and 2493.

[23] The Third Circuit in Lippay also states that "given Congress' intent that the Federal Rules of Evidence have uniform nationwide application, we apply federal common law rules of agency, rather than relying on the agency law of the forum in determining whether [a declarant's] statement comes within the Rule." 996 F.2d at 1497. Wilmington Trust cites a single case to support their expansion of the traditional application "agency." See WTC Exhibit Motion at 10 (citing Prudential Ins. Co. of Am. v. Curt Bullock Builders, Inc., 626 F. Supp. 159 (N.D. Ill. 1985)). Prudential, however, was explicitly decided based on particular concepts of agency under Illinois law. 626 F. Supp. at 166-67. Further, Prudential simply held that an agency relationship could be found where "an order was given and the bank obeyed, making the bank [the] agent." Id. at 167. Wilmington Trust has not pointed to any such order being given, or obeyed, with respect to the LBO Lenders.

scope" of that relationship. <u>McAdams v. United States</u>, 297 Fed. Appx. 183, 186 (3d Cir. 2008).[24]  Additionally, as with subsection (C), the contents of the Disputed Exhibits "are not alone sufficient to establish the...agency or employment relationship and scope thereof under subsection (D)." Fed. R. Evid. 801(d)(2).

Wilmington Trust has offered no evidence or even argument supporting its assertion that the statements in the Disputed Exhibits concerning the diligence or structure of the Transactions, or the resignation of Citibank as the Indenture Trustee for the PHONES, were made by the LBO Lenders acting as agents on behalf of the other LBO Lenders, or that they were made within the scope of that relationship.  Similarly, Wilmington Trust offers no support for its suggested expansion of the traditional concept of agency to the relationships at issue here – co-lenders under a syndicated credit agreement.  Indeed, such a theory defies logic given the nature of the relationship between co-lenders.  As noted above, the evidence shows that these specific lenders each acted independently with respect to their decisions to enter the Credit Agreement and in no way were "directed" by each other.  <u>See</u> <u>supra</u> n.14; <u>see also</u> <u>Lippay</u>, 996 F.2d at 1498-99.

Accordingly, the Disputed Exhibits should not be admitted under Rule 801(d)(2)(D).

3.      **The Disputed Exhibits Are Not Admissible Under Rule 801(d)(2)(E)**

Wilmington Trust also argues that certain of the Disputed Exhibits should be admissible for the truth against the LBO Lenders because they contain statements of coconspirators made during the course of a conspiracy and in furtherance of a conspiracy.  <u>See</u> WTC Exhibit Motion

---

[24] <u>See also</u> <u>United States v. Riley</u>, 621 F.3d 312, 338 (3d Cir. 2010) (801(d)(2)(D) "requires that when making an admission on behalf of the defendant, the declarant be both authorized and acting within the scope of employment.").

11

at 11-17.[25]  Wilmington Trust argues that the coconspirator exception applies because the

"statements at issue here were in furtherance of the LBO Lenders['] common objective."[26]  This

argument, however, ignores a critical term from the scope of the coconspirator-in-furtherance

exception to the hearsay rule – "conspiracy."  Indeed, nearly all of the cases that Wilmington

Trust cites involved unlawful criminal or civil conspiracies.[27]

　　　　Wilmington Trust relies upon two decisions to expand the coconspirator-in-furtherance

exception to lawful business ventures without any connection to criminal or civil conspiracies.

Both of theses cases, however, involved unlawful activity.  For instance, in United States v.

Brockenborrugh, 575 F.3d 726, 735 (D.C. Cir. 2009), the alleged lawful joint venture was the

retention of the "coconspirator" as the defendant's real estate agent, who was an integral

component of the wire fraud charges for which the defendant was convicted.  United States v.

Ellis, 156 F.3d 493 (3d Cir. 1998), by contrast, did not even involve a lawful joint venture.

Rather, the defendant in Ellis had engaged in two unlawful conspiracies (a conspiracy to launder

video poker proceeds and a conspiracy to launder drug proceeds) and objected to the use of

---

[25] NPP 136, 191, 202, 225, 236, 254, 296, 297, 399, 414, 462, 482, 497, 501, 632, 1049, 1070, 1165, 1166, 1232, 1256, 1323, 1387, 1488, 1534, 1821, 1830, 2247, 2481, 2482, 2484, 2488, 2489, 2490, 2491, 2493, 2494, 2496, 2503, 2504 and 2505.

[26] WTC Exhibit Motion at 14 (emphasis added).

[27] United States v. McGlory, 968 F.2d 309, 314 (criminal drug conspiracy); United States v. Kemp, 500 F.3d 257, 264 (3d Cir. 2007) (criminal conspiracy to commit honest services fraud); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1183 (2d Cir. 1989) (criminal conspiracy in violation of 18 U.S.C. § 371); United States v. Cruz-Rodriguez, 541 F.3d 19, 24 (1st Cir. 2008) (criminal conspiracy for drug distribution); Rossi v. Standard Roofing, Inc., 156 F.3d 452, 456 (3d Cir. 1998) (civil Sherman Act conspiracy); Big Apple BMW, Inc. v. BMW of N. Amer., Inc., 974 F.2d 1358, 1360 (3d Cir. 1992) (civil Sherman Act conspiracy); United States v. Ellis, 156 F.3d 493, 495 (3d Cir. 1998) (uncharged money laundering conspiracy); In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 105 (2d Cir. 2008) (conspiracies to murder U.S. nationals, U.S military personnel, other "internationally protected persons" and conceal the original conspiracy); United States v. Yarborough, 852 F.2d 1522, 1526 (9th Cir. 1988) (RICO conspiracy).

statements in one conspiracy for which he was not charged in the trial to convict him of the other

conspiracy for which he was charged. Ellis, 156 F.3d at 496-7.

Notably, Wilmington Trust has failed to provide any independent evidence of an

unlawful conspiracy to support application of this exception.[28]  Instead, Wilmington Trust

contends that the conduct of certain LBO Lenders gives rise to the conspiracy exception by

(1) entering into the LBO transactions with the alleged knowledge that the transactions would

render the Tribune Entities insolvent and (2) allegedly blocking or interfering with Citibank's

resignation as Indenture Trustee to the PHONES. Neither issue is sufficient to trigger the

coconspirator exception. Indeed, as the Examiner concluded after reviewing the same

documents cited by the Noteholders and Wilmington Trust, there is was not "sufficient evidence

to support a finding that the Lead Banks [much less all "LBO Lenders"] engaged in the kind of

egregious behavior that would justify equitable subordination or equitable disallowance."[29]  In

the absence of such evidence, Wilmington Trust cannot meet the "preponderance of evidence"

standard required for application of the coconspirator exception.[30]

Finally, even if a lawful joint venture were sufficient to satisfy the requirement for a

"conspiracy" under Rule 801(d)(2)(E), the joint venture must create an agency relationship

among the parties against whom the statements are sought to be admitted. As with the

exceptions set forth in Rule 802(d)(2)(C) and (D), subsection (E) is rooted in the law of agency

---

[28] See, e.g., 2 Hon. Barry Russell, Bankr. Evid. Manual § 801:21 (2010) ("There must be independent evidence apart from the coconspirator's statement establishing both the conspiracy and the party's participation in the conspiracy.").

[29] Examiner Report, Vol. 2 at 332, 336.

[30] Brockenborugh, 574 F.3d at 735.

13

where one coconspirator is deemed authorized to speak on behalf of the other.[31]  As discussed

above, Wilmington Trust has not and cannot identify any agency relationship among the LBO

Lenders as a result of the Disputed Exhibits.  Instead, Wilmington Trust merely alleges that the

LBO Lenders were working toward a common objective, which is insufficient to support the

conclusion that the LBO Lenders were agents for one another, particularly outside of a criminal

or unlawful engagement.[32]  Accordingly, the Court should not apply Rule 801(d)(2)(E) to admit

the Disputed Exhibits for all purposes against the LBO Lenders.[33]

### B.    The Disputed Exhibits Are Not Admissible As Present Sense Impressions Under Rule 803(1)

The Noteholders and Wilmington Trust seek to admit seven of the Disputed Exhibits

under Rule 803(1) as present sense impressions.  See Noteholder Exhibit Motion at 17-19; WTC

---

[31]  See, e.g., Anderson v. United States, 417 U.S. 211, 219 n.6 (1974) ("The rationale for both hearsay-conspiracy exception and its limitations is the notion that conspirators are partners in crime.  As such, the law deems them agents of one another.  And just as the declarations of an agent bind the principal only when the agent acts within the scope of his authority, so the declarations of a conspirator must be made in furtherance of the conspiracy charged in order to be admissible against his partner.") (citations omitted).

[32]  Brockenborrugh is not helpful to the Noteholders or Wilmington Trust in this regard, as the defendant had retained the non-defendant coconspirator as a real estate agent – a traditional agency role.  Brockenborrugh, 575 F.3d at 736.

[33]  Further, even if the statements contained in the Disputed Exhibits were somehow admissible against the LBO Lenders under Rule 801(d)(2) – which they are not – such statements would be admissions against only the LBO Lenders, not any of the other DCL Proponents.  See Rule 801(d)(2); Agere Sys., Inc. v. Adv. Envtl. Tech. Corp., 602 F.3d 204, 232 (3d Cir. 2010) (admission by party opponent "defined as party's own statement, in either an individual or representative capacity that is offered against that party") (internal quotation marks omitted).  See also Swecker v. Dublin City Sch. Dist., No. 08 Civ. 746, 2010 U.S. Dist. LEXIS 98899, *22 (S.D. Ohio Sept. 22, 2010) (801(d)(2) requires that "the party whose agent made the statement is also the same party against whom the statement is offered"); Cambridge Elecs. Corp. v. MGA Elecs., Inc., 227 F.R.D. 313, 335 (C.D. Cal. 2004) ("Although Roger T. is a party to this action, and the statement would therefore be a non-hearsay admission under Rule 801(d)(2) if offered against him, plaintiff offers the statement against Roger A.  It is well-established that under Rule 801(d)(2), a party's statement is admissible as non-hearsay only if it is offered against that party.") (internal quotation marks omitted); 5 Weinstein's Federal Evidence § 801.30 ("[T]he statements must be offered against the party who made them…") (emphasis is original).

14

Exhibit Motion at 5-6.[34] Six of these seven are email communications and the seventh contains handwritten notes from a teleconference among the LBO Lenders that took place on December 14, 2007. These exhibits are not admissible under Rule 803(1).

Rule 803(1) permits the admission of hearsay statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The proponent of the hearsay statement must demonstrate that (1) the declarant personally perceived the event described, (2) the declaration is an explanation or description of the event, not a narration, and (3) the statement is "essentially contemporaneous" with the statement and the event described. United States v. Green, 556 F.3d 151, 155 (3d Cir. 2009); United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998). The contemporaneousness requirement is "strict," as it "minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication." Green, 556 F.3d at 155 (quoting United States v. Manfre, 368 F.3d 832, 840 (8th Cir. 2004)). A statement is "fatally disqualifie[d]" from admission under the rule if the declarant has been asked to "reflect upon the events in question." Green, 556 F.3d at 157.

The Noteholders have failed to meet the foundational requirements for the admission of statements as present sense impressions with respect to each of the three Disputed Exhibits they seek to admit under Rule 803(1). NPP 284 and 296 – emails written by a former Citigroup employee – do not contain evidence that the declarant personally perceived the events purportedly described therein. See Mitchell, 145 F.3d at 577 (failure to prove declarant's personal perception prevents admission). ████████████████████████████████

---

[34] NPP 284, 296, 1821, 2482, 2489, 2491, 2503 and 2505. The DCL Proponents hereby withdraw their objection to the admission of NPP 2482 into evidence as a present sense impression under Rule 803(1).



Finally, even if the statements described a then-existing event or condition, there is no evidence that the statements were made while the event or condition was occurring or immediately thereafter.  See Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 566 (Ct. Fed. Cl. 2003) ("Defendant has the burden to show that the [contemporaneousness] requirement was satisfied with respect to the exhibits proposed.  It is not enough that the e-mails 'appear to be fairly contemporaneous' accounts of conversations.").[35]

The Noteholders also fail to satisfy the Rule 803(1) requirements for NPP 1821.



see In re Cirrus Logic Sec. Litig., 946 F. Supp. 1446, 1469 (N.D. Cal. 1996) (notes reflecting declarant's

---

[35] As support for their assertion that emails generally can be admissible as present sense impression, the Noteholders point to two inapposite cases.  See Noteholder Exhibit Motion at 17.  In Canatxx Gas Storage Limited v. Silverhawk Capital Partners, LLC, No. H-06-1330, 2008 U.S. Dist. LEXIS 37803 (S.D. Tex. May 8, 2008), the Court admitted an email sent by X describing the contents a conversation with Y, including what X said and the questions that were asked by both X and Y.  2008 U.S. Dist. LEXIS 37803, at *26-27.  Notably in Cantaxx, X submitted an affidavit in support of the admission of the email, which stated that he sent the email "[a]s soon as [he] finished [his] conversation with [Y]."  Id. at *30.  In United States v. Ferber, 966 F. Supp. 90 (D. Mass. 1997)), the Court admitted an email from X to Y, X's immediate supervisor, describing the content's of X's telephone conversation with Z.  Id. at 98.  The Court noted that it was the fact that the email urged Y to speak with Z directly to confirm the truth, that "tipped the scale" in favor of admissibility by bolstering the email's reliability.  Id. at 99 n.9.

[36] References herein to "[name] Dep. at [page:line] are citations to deposition transcripts.

16

interpretations of conversation inadmissible). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ Accordingly, NPP 1821 should not be

admitted under Rule 803(1).[37]

   The entirety of Wilmington Trust's support for the admission of NPP 2489, 2491, 2503

and 2505 as present sense impressions entails excerpts from these exhibits indicating that a call

had taken place and, with respect to NPP 2503 and 2505, conclusory statements noting that these

documents reflected a "Tribune executive describing his perception of an email

contemporaneously received from Citibank." See WTC Exhibit Motion at 5-6. This is

insufficient to establish that these emails are present sense impressions. Moreover, review of the

exhibits themselves confirms that they do not constitute present sense impressions. With respect

to NPP 2489, Wilmington Trust has failed to adduce any evidence that the declarant personally

perceived the statement sought to be admitted or wrote the email contemporaneously with the

event described. Additionally, Wilmington Trust has not demonstrated that NPP 2491, 2503 and

2505 – three variations of the same email chain – describe an event or condition, let alone that

the statements were made contemporaneously with whatever event or condition purportedly

occurred. See NPP 2491, 2503 and 2505 (all beginning with an email stating "[p]ursuant to our

conversation. . ." but providing no indication of when the conversation occurred). To the extent

---

[37] If the Court determines that the notes are admissible as a present sense impression, they should be admitted for the limited purpose of proving what Petrik heard, not for the purpose of proving the truth of what was said. Newark Group, Inc. v. Sauter, No. 01 Civ. 1247, 2004 WL 5623944, at *6 (S.D. Ohio Mar. 26, 2004) ("Rule 803(1) would only allow Gorsuch's notes to be admitted for the purpose of proving that such notes accurately reflect what Gorsuch heard at the luncheon; not for the purpose of proving the truth of the statement provided to Gorsuch.").

Wilmington Trust asserts that emails beyond the initial email in the chains are contemporaneous reactions to one another, it is wrong – many occur weeks or months apart.

Accordingly, the Disputed Exhibits should not be admitted under Rule 803(1).

**C.    The Disputed Exhibits Are Not Admissible As Business Records Under Rule 803(6)**

The Noteholders seek to admit 15 exhibits as records of regularly conducted activity (i.e., business records) under Rule 803(6). See Noteholder Exhibit Motion at 19-20; WTC Exhibit Motion at 6-7.[38]

A document may not be admitted under Rule 803(6) unless the proponent establishes a proper foundation. See Fed. R. Evid. 803(6); United States v. Pellulo, 964 F.2d 193, 200 (3d Cir. 1992) (citing United States v. Furst, 886 F.2d 558, 571 (3d Cir. 1989)). In order to lay the proper foundation, the Noteholders must demonstrate, with respect to each exhibit, that "(1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business." United States v. Sokolow, 91 F.3d 396, 403 (3d Cir. 1996) (citing Pelullo, 964 at 200); see also Furst, 886 F.2d at 571.[39] The Noteholders have failed to meet this requirement.

---

[38] NPP 399, 462, 1070, 1165, 1387, 2481, 2482, 2484, 2490, 2491, 2493, 2494, 2503, 2504 and 2505.

[39] Moreover, in order to be admissible under Rule 803(6), the Noteholders must demonstrate that the exhibits are sufficiently "reliable" or "trustworthy." See Fed. R. Evid. 803(6) (records not admissible if "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness"); United States v. Casoni, 950 F.2d 893, 910-12 (3d Cir. 1991). The Noteholders summarily assert that all of the Noteholder Exhibits have the indicia of reliability necessary for admission under the exceptions to the hearsay rule. See Noteholder Exhibit Motion at 1; WTC Exhibit Motion at 4. Even if true – which the DCL Proponents do not concede – this is insufficient for the admission of documents under Rule 803(6). The Noteholders must, with respect to each Disputed Exhibit, establish the necessary foundation. See Pellulo, 964 F.2d at 201 (rejecting argument that "court

The Noteholder Exhibit Motion identifies three exhibits that the Noteholders believe are admissible under Rule 803(6) – NPP 399, 462 and 1387. ███████████████████

████████████████████████████████████████. In order to establish the proper foundation for these exhibits, the Noteholders point to a single, one-page excerpt from the deposition of Daniel Petrik. See Noteholder Exhibit Motion at 19-20 (citing Petrik Dep. at 102:13-103:7). The passage cited by the Noteholders concerns testimony relating to NPP 399 and 1387;[40] it does not address NPP 462. ███████████████████████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████      See Sokolow, 91 F.3d at 403. Further, the Noteholders have not pointed to any additional evidence to support the admission of NPP 462.[41] Therefore,

---

may admit into evidence under the business exception of the hearsay rule documents containing hearsay simply because there are some indicia of trustworthiness of the statements" if no foundation has been established).

[40] NPP 399 and NPP 1387 appear to be identical exhibits. NPP 399 was used at the deposition of Daniel Petrik, while NPP 1387 was not.

[41] ██████████████████████████████████████

███████████████████████████████████████

████████ This is insufficient to establish a proper foundation for the admission of this exhibit as a business record under 803(6).

19

the Noteholders have failed to establish a proper foundation, and NPP 399, 462 and 1387 should not be admissible as business records.

Wilmington Trust does not even attempt to establish a proper foundation for the admission of the twelve exhibits they seek to admit as business records.[42]  Wilmington Trust first argues that the ten exhibits related to Citibank's resignation as the Indenture Trustee for the PHONES are admissible as business records because they "contain official Citibank communications" and are not "idle chatter."  See WTC Exhibit Motion at 6.  Wilmington Trust cites no evidence for this assertion; instead stating only that the "record" -- without any actual citation thereto -- indicates that Citibank made official communications of this nature by email. See WTC Exhibit Motion at 6-7.  Wilmington Trust also argues that NPP 1070 and 1165, which purportedly concern "specifics related to the LBO transaction's structure and terms" are business records based on the conclusory assertion -- again citing no support -- that the "record" indicates that the LBO Lenders and Tribune structured the transactions via email.  See id. at 7.[43]  Such blanket assertions are not sufficient to establish the foundation requirements for any of the identified exhibits.[44]

---

[42] NPP 1065, 1070, 2481, 2482, 2484, 2490, 2491, 2493, 2494, 2503, 2504 and 2505.

[43] Indeed, NPP 1165 belies their assertion. ██████████████████████████████████
████████

[44] The fact that an email is created within a business entity does not, most assuredly, establish the foundation requirement.  See Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008) ("An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule."); see also Depinto v. Sherwin-Williams Co., No 07 CV 2384, 2011 U.S. Dist. LEXIS 23864, at *29-30 n.12 (N.D. Ill. Mar. 9, 2011) (emails among a company's employees not admissible as business records because not "kept in the course of a regularly conducted business activity"); Park West Radiology v. Carecore Nat'l LLC, 675 F. Supp. 2d 314, 333 (S.D.N.Y. 2009) (emails not admissible because "[t]he CareCore and DRA employees were not under an obligation to create the emails as a record of regularly conducted business activity.").

Because the Noteholders have failed to identify evidence sufficient to lay a proper

foundation, and because Wilmington Trust has not even attempted to do so, NPP 399, 462, 1070,

1165, 1387, 2481, 2482, 2484, 2490, 2491, 2493, 2494, 2503, 2504 and 2505 should not be

admissible under Rule 803(6).

### D.        The Disputed Exhibits Are Not Admissible Under Rule 803(17)

The Noteholders seek to admit four Disputed Exhibits under the "Market reports,

commercial publications" exception in Fed. R. Evid. 803(17).  See Noteholder Exhibit Motion at

20-21.[45]  Three of these exhibits are credit rating agency reports about Tribune. The fourth, NPP

271, is Deutsche Bank Securities Inc.'s ("DBSI") March 27, 2007 "State of the Newspaper

Industry: A Wall Street Perspective" presentation.  The Noteholders sole citation to this

presentation references DBSI's bullet-pointed "view of the newspaper industry."  Noteholder

Post-Trial Brief at 11 n.46.  None of these exhibits are admissible under Rule 803(17).

Rule 803(17) excepts "[m]arket quotations, tabulations, lists, directories, or other

published compilations, generally used and relied upon by the public or by persons in particular

occupations" from the hearsay bar.  The exception is supported by principles of necessity and

reliability.  United States v. Woods, 321 F.3d 361, 364 (3d Cir. 2003) (quoting 5 Weinstein's

Federal Evidence § 803.19 (2002)).  The exception is necessary because it would be impossible

to "find[] every person who had a hand in making" the compilation.  Id.  The compilations are

reliable because they are "accepted and relied upon" as true.  Id; see also 5 Weinstein's Federal

Evidence § 803.19 (market reports and publications admissible under 803(17) "state readily

---

[45] NPP 271, 528, 531 and 605.  The Noteholder Exhibit Motion discusses similar Standard and Poor's
documents and other reports that they believe "should be admitted for their truth in this proceeding."  See
Noteholder Exhibit Motion at 8-10 (citing NPP 239, 267, 302, 378 and 1317).  They do not, however, seek to have
these exhibits admitted under Rule 803(17).  See Noteholder Exhibit Motion at 20-21.

ascertained facts about which there can be no real dispute."). Accordingly, Rule 803(17) permits the admission of compilations of objective facts that may be checked for accuracy against other sources to be admitted for the truth of what they assert. See, e.g., Woods, 321 F.3d at 364 (not error to admit location of manufacture of a vehicle as reported in a database of vehicle identification numbers routinely relied upon by law enforcement); United States v. Masferrer, 514 F.3d 1158, 1162 (11th Cir. 2008) (prices of security from Bloomberg admissible under 803(17) because proponent presented evidence that they are "universally relied upon" by the securities industry); United States v. Goudy, 792 F.2d 664, 675 (7th Cir. 1986) (admitting directory of bank routing numbers).

Neither the three ratings agency reports nor the DBSI presentation is admissible under Rule 803(17).[46] First, the text of Rule 803(17) applies only to "[m]arket quotations, tabulations, lists, directories, or other published compilations." The three ratings agency reports, however, do not contain objective market quotations, tabulations, lists, or compilations. Rather, they are subjective, narrative explanations as to why each credit ratings agency took particular actions and its views about the future.[47] Similarly, the portions of the DBSI presentation to which the Noteholders point are nothing more than DBSI's opinions, beliefs, and predictions.[48]

---

[46] The cases cited by the Noteholders do not change this conclusion. See Noteholder Exhibit Motion at 20. Only one of the cited cases, Avondale Mills, Inc. v. Norfolk S. Corp., No. 05 Civ. 2817, 2008 WL 6953956, at * 4 (D.S.C. Feb. 21, 2008), admits a rating agency report under Rule 803(17). Avondale Mills, however, is in the minority and, in fact, relied on authorities suggesting that rating agency reports should not be admissible under Rule 803(17). For example, unlike the analyst reports and credit ratings at issue here, the Dun & Bradstreet report admitted in United States v. New-Form Mfg. Co., Ltd., 277 F. Supp. 2d 1313, 1326 (Ct. Int'l Trade 2003) reported the date of an entity's bankruptcy and its current assets and liabilities – objective facts that the New-Form court compared to the official record of the Canadian "Office of the Superintendent of Bankruptcy." Id. at 1326, n.15.

[47] See, e.g., NPP 528 at JPM_00334804 ("The credit ratings and observations contained herein are solely statements of opinion and not statements of fact....").

[48] See NPP 271 at VRC0029795 ("Deutsche Bank makes no representation as to the accuracy or completeness of such information...Opinions, estimates and projections in this report constitute the current

22

Second, neither of the principles underlying Rule 803(17) supports the admission of the Disputed Exhibits. As noted above, the necessity principle is based on the difficulty "of finding every person who had a hand in making the report." Woods, 321 F.3d at 364. But the authors of each of the Disputed Exhibits sought to be admitted under 803(17) are identified in the exhibit, along with their contact information. Nor does the reliability principle support the exhibits' admission. First, the Noteholders have failed to adduce evidence indicating the analyst reports are "accepted and relied upon by those in the industry" or the public. See Woods, 321 F.3d at 364 (finding database of vehicle identification numbers "reliable" for purposes of 803(17) because of testimony that "the database is accepted and relied upon by those in the industry and law enforcement agencies"); Masferrer, 514 F.3d at 1162 (Bloomberg evidence admissible because of evidence that data were "universally relied upon"). This is particularly true with respect to NPP 271 as DBSI's opinions are not even facts that could be relied upon.[49]  Second, the exhibits bear no resemblance to the objective factual data to which the rule usually applies. They contain opinion, research, analysis, and in at least one case, a simulation.

Accordingly, the Disputed Exhibits should not be admissible under Rule 803(17).

### E.    The Disputed Exhibits Are Not Admissible Under the Rule 807 Residual Exception

The Noteholders argue that Rule 807's "residual exception" justifies the admission of the Disputed Exhibits. See Noteholder Exhibit Motion at 15-17; WTC Exhibit Motion at 5. Although this exception is "to be used only rarely, and in exceptional circumstances," the

---

judgement [sic] of the author as of the date of this report. They do not necessarily reflect the opinions of Deutsche Bank and are subject to change without notice.").

[49] See supra, n.48.

23

Noteholders believe it permits **all** 61 Disputed Exhibits to be admitted as non-hearsay.[50] United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004); United States v. Bailey, 581 F.2d 341, 347 (3d Cir. 1978); see also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 112 (3d Cir. 2001) ("Rule 807 should only be used in rare situations"); Fed. R. Evid. 803 advisory committee's note (1972).  Such a broad application of this narrow exception would render the hearsay exceptions meaningless.[51]

Before a document can be admitted into evidence under Rule 807, the Noteholders must establish that the statement has the "equivalent circumstantial guarantees of trustworthiness" as those of the other hearsay exceptions, "is offered as evidence of a material fact," "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and that "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 807; see also Bailey, 581 F.2d at 347 (residual exception applies only when "exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.").  The Noteholders' generalized assertions that all of the Disputed Exhibits are admissible under Rule 807 are insufficient to carry their burden to establish that each of the elements of Rule 807 is satisfied for each of the Disputed Exhibits.[52] See, e.g., Wright, 363 F.3d

---

[50] In sharp contrast, the DCL Proponents seek to use the residual exception for just **a single** exhibit. See Motion of the Debtor Committee Lender Plan Proponents to Admit DCL Exhibits 3-95, 384, 435 and 1323 Into Evidence [Dkt. No. 9150] (the "DCL Exhibit Motion") ¶¶ 19-22.

[51] In adopting the residual exception, the Advisory Committee noted that it did "not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 or 804(b)." Fed. R. Evid. 803, advisory committee notes (1972).

[52] Again, by contrast, the DCL Proponents demonstrated in the DCL Exhibit Motion that each of the factors required by Rule 807 were satisfied. DCL Exhibit Motion ¶¶ 21.

24

at 246 ("[A]ssessment of the guarantees of trustworthiness relating to any statement is necessarily fact-specific.").

Moreover, the Noteholders fail to identify how the Disputed Exhibits are "more probative" on these issues than any other evidence that is already in the record. See Fed. R. Evid. 807. The Noteholders state at the outset of the Motions that the Disputed Exhibits cover three topics: (i) "the merits of the LBO Claims," (ii) "the financial condition of the of the Company at various periods surrounding the Step One and Step Two Close," and (iii) "the state of mind of the LBO Lenders at the time they elected to lend into the LBO." Noteholder Exhibit Motion at 4; WTC Exhibit Motion at 2-3. The Noteholders suggest that the Disputed Exhibits are the "best available evidence for the propositions for which they stand" because of the "limited scope and the condensed schedule of the 9019 hearing." Noteholder Exhibit Motion at 17 (emphasis added). The absurdity of this suggestion – in the face of a three week confirmation trial involving, thousands of exhibits and a dozen witnesses – speaks for itself.

Further, the Noteholders offer no basis to conclude that the 61 Disputed Exhibits are "more probative" than the thousands of other exhibits offered by the Noteholders – many of which were produced by the Debtors and JPMorgan and address these same subject areas – that will be admitted into the record for all purposes. Indeed, the Noteholders concede that "[s]imilar documents from the DCL Plan Proponents own files have been admitted for the truth of their contents without objection, and are consistent with the contents of the Disputed NPP Exhibits." Noteholder Exhibit Motion at 16 (emphasis added).[53]

---

[53] Pursuant to the Evidentiary Order the parties agreed that documents produced from the files of the Plan Proponents are presumed to be admissible "for all purposes as a Rule 801(d)(2) admission against the Plan Proponent who made the statement." Evidentiary Order ¶ 2. That the DCL Proponents' own statements are admissible as admissions of a party opponent does not provide support for the Noteholders' argument that the

Accordingly, the Disputed Exhibits are not admissible under Rule 807.

## CONCLUSION

For the foregoing reasons, the Motion of the Noteholder Plan Proponents to Admit

Certain Documents and the Supplemental Motion of Wilmington Trust Company, as Successor

Indenture Trustee for the PHONES Notes, and One of Noteholder Plan Proponents, Concerning

the Admission of Certain Documents should be denied.

---

Disputed Exhibits have the indicia of reliability necessary for admission under the hearsay exceptions. The basis for excepting party admissions from the hearsay rule is "the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Fed. R. Evid. 801 advisory committee's note (1972). Moreover, the Noteholders citation to United States v. Ferber, 966 F. Supp. 90 (D. Mass 1997) is misplaced. In that case, the Court noted that the recipient of an email's "apparent ability to verify the information" in the email at the time it was received "tip[ped] the scale in favor of" reliability. Ferber, 966 F. Supp. at 99 n.9. The Court did not suggest – as the Noteholders do – that a comparison of admissible evidence to evidence they seek to admit "tips the scale" in support of admissibility. See Noteholder Exhibit Motion at 16.

26

Dated: Wilmington, Delaware
     June 9, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

  -and-

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.

_____*/s/ J. Kate Stickles*_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

*Counsel for Debtors and Debtors in Possession and*
*Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier:  (212) 541-5369

  -and-

27

LANDIS RATH & COBB LLP

_/s/ Adam G. Landis_

Adam G. Landis (No. 3407)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier: (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telecopier: (202) 822-8106

*Counsel for the Official Committee of Unsecured Creditors*

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier: (213) 621-6100

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Robert S. Brady_

Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telecopier: (302) 571-1253

*Counsel For Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

28

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

*Co-Counsel For Angelo, Gordon & Co, L.P.*

DAVIS POLK & WARDWELL LLP
Benjamin S. Kaminetzky
Elliot Moskowitz
Michael Russano
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

 -and-

RICHARDS, LAYTON & FINGER, P.A.


Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

*Counsel For JPMorgan Chase Bank, N.A.*

29