**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) ) ) | Chapter 11 |
|  | ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) ) | Jointly Administered |
|  | ) ) |  |
| Debtors. | ) ) ) | **Related ECF No. 9150, 9151, 9152** **Hearing Date: June 13, 2011 at 2:00 p.m.** |

**NOTEHOLDER PLAN PROPONENTS' OBJECTION TO MOTION OF DCL
PLAN PROPONENTS FOR ADMISSION OF CERTAIN DCL EXHIBITS**

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David Zensky
Philip C. Dublin
Abid Qureshi
Mitchell P. Hurley
One Bryant Park
New York, NY 10036
212-872-1000

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
302- 654-1888

*Counsel for Aurelius Capital Management, LP*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
1633 Broadway
New York, New York 10019
212-506-1700

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302- 429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market St., Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT ...........................................................................................................................3

I      DCL EXHIBITS 435 AND 1323 ARE INADMISSIBLE HEARSAY, NOT
"ADOPTIVE ADMISSIONS" AS THE DCL PLAN PROPONENTS ARGUE.................3

II.     DCL 384—THE SECOND MEDIATOR REPORT—IS NOT ADMISSIBLE
UNDER THE RESIDUAL EXCEPTION TO THE HEARSAY RULE ...........................6

CONCLUSION.........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
  237 F.R.D. 106 (D. Del. 2006) ...................................................................................4

*Kirk v. Raymark Indus., Inc.*,
  61 F.3d 147 (3d Cir. 1995).........................................................................................8

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,
  285 F.3d 808 (9th Cir. 2002) .....................................................................................5

*Tracinda Corp. v. DaimlerChrysler AG*,
  362 F. Supp. 2d 487 (D. Del. 2005)........................................................................4, 5

*Wagstaff v. Protective Apparel Corp. of Am., Inc.*,
  760 F.2d 1074 (10th Cir. 1985) .................................................................................5

## OTHER AUTHORITIES

Fed. R. Evid. 801 ...............................................................................................................3

Fed. R. Evid. 807 ............................................................................................................6, 8

The Noteholder Plan Proponents,[1] by and through their undersigned counsel, respectfully submit this objection to the Motion of the Debtor Committee Lender Plan Proponents' ("DCL Plan Proponents") to Admit DCL Exhibits 384, 435 and 1323 (the "Disputed DCL Exhibits") into evidence.[2]

## PRELIMINARY STATEMENT

The Disputed DCL Exhibits are classic hearsay, and cannot be admitted for the truth of the matters asserted. DCL Exhibit 1323 is a 15 page, single-spaced article written by a third-party entity called CreditSights, an entity bearing no relation to any party to the proceedings or underlying litigation, on CreditSights' own initiative. The article, dated August 18, 2010, apparently describes CreditSights' opinions concerning various aspects of the Examiner's Report and predictions respecting its purported impact on the plan process. The author of the article was never deposed. DCL Exhibit 435 is an email sent on August 19, 2010 from a junior Aurelius analyst to other Aurelius personnel forwarding a copy of the CreditSights article, and summarizing, quoting or paraphrasing parts of the article. The CreditSights article, and the reproduction of parts of the article in the junior Aurelius analyst's email are rank hearsay. Nevertheless, the DCL Plan Proponents argue that Aurelius somehow "adopted" the dozens of opinions and predictions in the CreditSights article as its own, and that the CreditSights article is therefore admissible for the truth of the opinions asserted by CreditSights in the article. In fact,

―――――――――――――――――

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Glossary attached as Exhibit A to the Noteholder Plan Proponents' Proposed Findings of Fact, dated June 3, 2011.

[2] The Noteholder Plan Proponents understand that the DCL Plan Proponents offer DCL Exhibits 3-95 (Creditors' Committee minutes) only to establish that the minutes accurately reflect the activities of the Creditors' Committee recorded therein, and not for the truth of any hearsay embedded within the minutes. Based on that understanding, the Noteholder Plan Proponents

the only evidence in the record respecting Aurelius's view demonstrates that Aurelius expressly

*repudiated* CreditSights; indeed, Aurelius Managing Director Dan Gropper testified flatly that he

has never relied on anything prepared by CreditSights in his sixteen years in the business.

Deposition Transcript of Dan Gropper dated February 23, 2011 ("Gropper Dep. Tr.") 63:18-21.

DCL Exhibit 1323 cannot be admitted as an "adoptive admission."

With respect to DCL Exhibit 384 (the "Second Mediator Report"), the DCL Plan

Proponents admit that the statement in the Second Mediator Report that they intend to rely on—a

reference to the alleged nature of the negotiations that took place in the mediation itself—is

hearsay.  They argue, however, that the Second Mediator Report should nevertheless be admitted

for the truth of the matter asserted based on the residual exception to the hearsay rule.

Again, the DCL Plan Proponents are mistaken.  The statement about the alleged vigor of

negotiations is so vague as to be meaningless, and is certainly immaterial to the question of

whether there were any negotiations at the mediation—whether "vigorous" or otherwise—

involving the Noteholder Plan Proponents and their interests.  Moreover, admission of the

Second Mediator Report would *subvert,* not serve, the interests of justice, since the Noteholder

Plan Proponents were denied any opportunity to take discovery or present evidence to the Court

concerning what actually happened at the mediation, based in part on the DCL Plan Proponents'

enthusiastic support for excluding the mediation process from scrutiny by either the parties or the

Court.  To allow the DCL Plan Proponents to turn around now and argue that the mediation was

marked by vigorous negotiations—and that such putative negotiations militate in favor of

approval of their Settlement and Plan—would be manifestly unfair, and inconsistent with the

---

withdraw their objection to admission of DCL Exhibits 3-95 for the limited purpose for which
they are offered.

express purpose of the residual exception to the hearsay rule. The DCL Plan Proponents' motion

should be denied accordingly.[3]

## ARGUMENT

**I      DCL EXHIBITS 435 AND 1323 ARE INADMISSIBLE HEARSAY, NOT
        "ADOPTIVE ADMISSIONS" AS THE DCL PLAN PROPONENTS ARGUE**

DCL Exhibits 435 and 1323 are not adoptive admissions.[4] In order for a statement to

constitute an adoptive admission, a party must "manifest an adoption or belief in its truth." Fed.

R. Evid. 801(d)(2)(B). DCL Exhibit 1323 is an article issued by CreditSights, an independent

research provider, titled "Spotlight on Tribune LBO Examiner's Report." The author of the

article summarizes certain of the Examiner's findings and the recovery scenarios set forth in

Appendix B of the Examiner's Report, predicts what those findings means for various of the

Debtors' creditor classes, and assigns his own probabilities and values to the Examiner's

recovery scenarios. DCL 435 includes two emails. The first, at 8:12 a.m. on August 19, 2010,

---

[3] The Disputed DCL Exhibits are not offered by the DCL Plan Proponents in an effort to establish any facts relating to the merits of the LBO Claims. Instead, the DCL Plan Proponents argue that the Disputed DCL Exhibits are probative of issues relating to the "process" from which the Proposed Settlement emerged. The Court's task relating to the process that led to the Proposed Settlement is different than its mandate in evaluating the merits of the LBO Claims subject to the Proposed Settlement. Concerning the process, the Court does not merely "canvass" the issues, it must actually determine that the process leading to the Proposed Settlement was fair and conducted at arms' length, or it cannot confirm the DCL Plan Proponents' Plan and Settlement. Unlike the Court's task in assessing the merits of the LBO Claim, the Court is not merely seeking to predict what another court, with more and better access to a complete evidentiary record, would conclude regarding the alleged fairness of the settlement process—indeed, no trial court but this one will ever consider that issue—it must actually resolve any legal and factual issues presented by the parties concerning the process. Hence, the case law cited in the NPP Plan Proponents' motion for admission of Disputed NPP Exhibits—exhibits which relate to the merits of the LBO Claims—does not support relaxation of the Federal Rules of Evidence with respect to admission of the Disputed DCL Exhibits, which relate to process. In short, documents that concern the process must satisfy the letter of the Federal Rules of Evidence or they cannot be admitted.

forwards a copy of the CreditSights article to Matt Zloto, a junior analyst at Aurelius. Zloto

read the article and, exactly one hour later, forwarded a copy of it to other Aurelius employees,

along with a statement that the article "does a *fairly* good job summarizing *parts* of the

Examiner's Report," and a limited summary, including quotations and paraphrases, of aspects of

the CreditSights article. Gropper Dep. Tr. 61:16-19 (emphasis added). The CreditSights article,

which was written by a third party analyst who is not a lawyer and who has no relationship with

Aurelius, is clearly hearsay that cannot be admitted for the truth of the matter asserted. *See*

DCL Ex. 1323.

Nevertheless, the DCL Plan Proponents assert that the CreditSights article and Zloto's

email summarizing it can be admitted for the truth of the analysis set forth in the article because

"Zloto's email . . . clearly conveys his belief in the accuracy of the analysis of the Examiner's

Report reflected in the CreditSights article . . . which renders both the email . . . . and the

CreditSights article itself adoptive admissions of Aurelius . . . " DCL Br. at 10. Zloto's email

does not comport with this description. To the contrary, the only qualitative statement in Zloto's

email is that it did a "fairly good job of summarizing parts of the Examiner's Report." The

email is entirely silent regarding the accuracy of the independent analysis set forth in the article.

Moreover, there is no evidence in the record explaining which portions of the article Zloto

thinks did a "fairly good job" of summarizing the Examiner's Report, or why he believes the

summaries are only "fairly good." And the DCL Plan Proponents failed to question Mark

Brodsky, a recipient of the Zloto email and the Chairman of Aurelius, regarding the email.

Accordingly, the email does not "manifest" Aurelius's "adoption or belief in" the CreditSights

---

[4] DCL Exhibit 435 is attached to the Motion of the Debtor Committee Lender Plan Proponents to
Admit DCL Exhibits 3-95, 384, 435 and 1323 into Evidence (the "DCL Evidentiary Motion") as
Exhibit G; DCL Exhibit 1323  is attached to the DCL Evidentiary Motion as Exhibit H.

article, and there is no basis for the admission of the CreditSights article for the truth of the matter asserted.

The cases cited by the DCL Plan Proponents on this issue are easily distinguished. Each of these cases involved scenarios where a party either: (i) expressly evidenced its agreement with a statement that would otherwise be considered hearsay through deposition or trial testimony, *see Forest Labs., Inc. v. Ivax Pharms., Inc.*, 237 F.R.D. 106, 114 (D. Del. 2006); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 495-96 (D. Del. 2005); (ii) reprinted or distributed such a statement in a document produced by a corporate group of the party, or to persons with whom the party was doing business, *see Tracinda*, 362 F. Supp. at 500-501; *Wagstaff v. Protective Apparel Corp. of Am., Inc.*, 760 F.2d 1074, 1078 (10th Cir. 1985); or (iii) forwarded such a statement in an email that explicitly adopted the statement as its own, *see Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002). Conversely, here: (i) neither Zloto nor any other Aurelius employee has testified to their agreement with any particular part of the CreditSights article, much less the dozens of opinions and predictions set forth therein; (ii) Aurelius has never reprinted or distributed the CreditSights article in any manner that suggests Aurelius was adopting its contents; and (iii) far from adopting the article, Zloto's email states only that it does a "fairly good job of summarizing parts of the Examiner's Report."

Finally, even if the Zloto email were sufficient to show that Zloto adopted specific portions of the article (which it is not), it is not evidence that Aurelius agrees with the article's analysis. Indeed, the evidence shows exactly the opposite. Gropper testified that he does not think that the "CreditSights analysis is in way [*sic*], shape or form an in-depth analysis of the Examiner Report," and that he does not believe he has ever, throughout his "16 years of being in

the business[,] relied on anything that has come out of CreditSights for any purpose." Gropper

Dep. Tr. 63:12-21. Gropper testified further that the CreditSights article did not inform his view

as to what would be appropriate in these cases. *Id.* at 63:22-64:3. Notably, the DCL Plan

Proponents did not ask Gropper about the CreditSights article or the Zloto email at trial. In light

of Gropper's unequivocal deposition testimony, an email reflecting Zloto's agreement with the

CreditSights article, even if it existed, would not be relevant in these cases.[5]

## II. DCL 384—THE SECOND MEDIATOR REPORT—IS NOT ADMISSIBLE UNDER THE RESIDUAL EXCEPTION TO THE HEARSAY RULE

The Second Mediator Report does not satisfy the requisites for admission under FRE

807—the only basis for its admission identified by the DCL Plan Proponents—and therefore

cannot be considered for the truth of the matter asserted. For a statement to be admissible

pursuant to the residual exception to the hearsay rule, the Court must find that "(A) the statement

is offered as evidence of a material fact; (B) the statement is more probative on the point for

which it is offered than any other evidence which the proponent can procure through reasonable

efforts; and (C) the general purposes of these rules and the interests of justice will best be served

by admission of the statement into evidence." Fed. R. Evid. 807. In addition, for the statement

to be admitted pursuant to Rule 807, the adverse party must be given "a fair opportunity to

prepare to meet it. . . . " Fed. R. Evid. 807. These requirements are simply not present here.

*First*, the statement in DCL Exhibit 384 that the "Mediation continued vigorously" after

the dates of certain mediation sessions "with certain parties" is so vague as to be meaningless,

and therefore cannot constitute competent evidence of any material fact. For example, the

––––––––––––––––––––––––––

[5] The Noteholder Plan Proponents object to the Zloto email only to the extent it is offered for the truth of the CreditSights opinions summarized, quoted or paraphrased in the email, and do not object to admission of the email for the purpose of demonstrating that Zloto forwarded the article

statement says nothing about who was involved in the putative negotiations, what issues were discussed, how long they continued, or what was meant by "vigorous," and the statement certainly is not material to whether the Debtors and the Committee adequately discharged their duties to Pre-LBO Noteholders or whether the interests of the Pre-LBO Noteholders were represented or considered at all. Since that is the only issue of any conceivable relevance, and since DCL Exhibit 384 is entirely silent on it, the document is by definition irrelevant and does not satisfy even the first prong of Rule 807. This point is underscored by a cursory review of the DCL Plan Proponents' Post-Trial briefs and Proposed Findings of Fact. DCL Exhibit 384 is *not cited once* for the proposition that the Debtors or Committee fought "vigorously" for the interests of their constituents during the mediation process. *See* DCL FOF ¶¶ 43 & n.97, 59 & n.149; DCL Post-Trial Opening Br. at 15 n.43, 27 & n.93; DCL Post-Trial Reply at 27 & n.158.[6]

*Second*, the admission of DCL Exhibit 384 for the truth of the matters asserted would be contrary to interests of justice because the NPP Plan Proponents have not been given any opportunity at all to test the truth of the matters asserted therein. Pursuant to the Depository and Mediation Orders entered in these cases, virtually all documents related to mediation negations have been shielded from discovery, including all "discussions among the Mediation Parties relating to the Mediation" on any mediation day, all "documents or information provided to Mediator or the Mediation Parties in the course of the Mediation" and all "correspondence, draft

---

to others at Aurelius, or that he in fact sought to describe parts of the CreditSights article in the email.

[6] As previously recognized by the Court, the Mediator's purported endorsement of the Proposed Settlement is of little relevance to the 9019 and 1129 inquiries. 1/24/11 H'rg Tr. [ECF No. 7653] at 112:4-13 ("The fact that a settlement was reached at a mediation, it doesn't seem to me to accord it any particular weight. And that's not a criticism of the mediator and it's not any kind of view with respect to the fact the parties actually got to the settlement…If you're anticipating that they'll argue that well it's cleansed because it happened, you know, with one of my colleagues, I don't see how.").

resolutions, offers and counteroffers produced for or as a result of the Mediation." Mediation

Order at 5; Depository Order at 5.  The Mediation Order provides that these materials are "***not***

***admissible for any purpose in any judicial or administrative proceeding***."  Mediation Order at

5.  Indeed, counsel for the DCL Plan Proponents guarded the confidentiality of the mediation

process zealously, seeking to minimize the scope of inquiry into the mediation through motion

practice, and instructing witnesses at depositions not to answer questions that presented any risk

of disclosing what really went on at the mediation.[7]

The DCL Plan Proponents also minimized the relevance of the mediation process, and

argued (successfully) that broad discovery into the mediation process should not be allowed

because "for the purposes of determining good faith, the important point of inquiry is the Plan

itself and whether such Plan will fairly achieve a result consistent with the objectives and

purposes of the Bankruptcy Code," (DCL Opposition to Motion to Compel at 21) (citations

omitted), and because discovery into the mediation negations would purportedly amount to "just

a fishing expedition."  1/24/11 H'rg Tr. [ECF No. 7653] at 150.

It would be patently unfair to allow the DCL Plan Proponents to present their

characterization of the "vigor" with which "certain parties" engaged in the mediation as a

"material fact," which is more probative on this issue "than any other evidence which the

---

[7] *See, e.g.* Jan. 1, 2011 Letter from J. Bendernagel to J. Carey [ECF No. 7449]; Objection to the
Noteholder Plan Proponents' Motion to Compel Production of Documents and Information From
the Debtor/Committee/Lender Plan Proponents and Other Parties or, Alternatively, for an Order
of Preclusion Respecting Certain Issues Filed by Debtor/Committee/Lender Plan Proponent
Group [ECF No. 7552] at 17-24.  During the depositions, there were over 30 instructions made
by counsel for the DCL Plan Proponents admonishing them not to reveal the contents of the
mediation.  *See, e.g.*, Deposition of Gavin Baiera dated March 1, 2011 at 119:23-120:3;
Deposition of Thane Carlston dated February 16, 2011 at 94:14-19; Deposition of Kenneth Liang
dated February 16, 2011 at 56:14-17, 74:17-25, 74:24-25, 146:9-12, 219:8-9; Deposition of
Wayne Smith dated February 16, 2011 at 230:8-231:6.

proponent can procure through reasonable efforts."[8]  Far from serving "the interests of justice,"
the admission of DCL Exhibit 384 for the truth of the matters asserted therein would do just the
opposite.  It would allow the DCL Plan Proponents to present their own biased view of the
mediation process as the *only* evidence in support of the proposition that the Proposed Settlement
was negotiated at arms' length and was free from collusion or fraud, even though the DCL Plan
Proponents have effectively eviscerated the NPP Plan Proponents' ability to test the purported
"vigor" with which the Proposed Settlement was negotiated.  *See Kirk v. Raymark Indus., Inc.*,
61 F.3d 147, 167-168 (3d Cir. 1995) (holding that admission of interrogatory responses without
an opportunity for cross-examination would "implicate[] many of the dangers the hearsay rule is
designed to prevent" even though they were sworn to under penalty of perjury because they were
drafted by parties who have an "incentive to set forth the facts in a light most favorable to
[themselves], while at the same time [setting forth the facts] truthfully.").  Accordingly, the Court
must deny the motion to admit DCL Exhibit 384 under FRE 807.

## CONCLUSION

For the foregoing reasons, the Noteholder Plan Proponents respectfully request that the
Court deny the DCL Plan Proponents' Motion to Admit DCL Exhibits 435, 384 and 1323, and
enter such other and further relief as the Court deems just and proper.

Dated: June 9, 2011

---

[8] The Noteholder Plan Proponents have previously highlighted the injustice that would result by
allowing such evidence to be considered in isolation, noting that the DCL Plan Proponents may
attempt to introduce evidence "to say, yeah, we fought very hard, the committee fought hard, we
asked for as much as we could, and I get a chopped up picture of what happened in the run up
from the release of the examiner's report till the day the settlement was reached, how can I
combat that?  I won't have the full picture." 1/24/11 H'rg [ECF No. 7653] at 118.

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David Zensky
Philip C. Dublin
Abid Qureshi
Mitchell P. Hurley
One Bryant Park
New York, NY  10036
(212) 872-1000

*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.

*/s/ Amanda M. Winfree*
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888


McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP

*/s/ Katharine L. Mayer*
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*


KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
Sheron Korpus
1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700
Fax:  (212) 506-1800

BIFFERATO GENTILOTTI LLC

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
Tel:  (302) 429-1900
Fax:  (302) 429-8600

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*