## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: July 11, 2011<br>Hearing Date: *Only if Objections Are Filed* |

### NINTH QUARTERLY FEE APPLICATION OF
### McDERMOTT WILL & EMERY LLP AS SPECIAL COUNSEL TO
### DEBTORS FOR DOMESTIC LEGAL MATTERS, FOR ALLOWANCE OF
### COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
### THE PERIOD DECEMBER 1, 2010 THROUGH FEBRUARY 28, 2011

| | |
|---|---|
| **Name of applicant:** | McDermott Will & Emery LLP |
| **Authorized to provide professional services to:** | Tribune Company, et al. |
| **Date of retention:** | March 13, 2009 nunc pro tunc to December 8, 2008 |
| **Period for which compensation and reimbursement is sought:** | December 1, 2010 to February 28, 2011 |
| **Amount of compensation sought as actual, reasonable and necessary:** | $1,560,114.00 (80% of which is $1,248,091.20) |
| **Amount of expense reimbursement sought as actual, reasonable and necessary:** | $17,757.01[1] |

This is an: __ monthly     _X_ interim     ___ final application

---

[1] McDermott Will & Emery LLP ("McDermott") incurred actual expenses of $17,759.34. Due to an inadvertent expense submission in McDermott's fourth and fifth quarterly fee applications, McDermott has reduced the amount of expense reimbursement sought by $2.33 as reflected in its January 2011 fee statement. Thus, McDermott actually seeks reimbursement of expenses in the amount of $17,757.01 ($17,759.34 - $2.33).

Prior Interim Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 4/15/09[2] | 1029 | 12/8/08 – 2/28/09 | $530,504.50[3] | $6,808.20 | $416,077.00 | $1,489.70 |
| 10/9/09 | 2313 | 3/1/09 – 5/31/09 | $839,465.00 | $3,883.93 | $838,826.50 | $3,631.33 |
| 12/11/09 | 2820 | 6/1/09 – 8/31/09 | $365,485.00 | $1,312.70 | $352,935.92 | $1,254.30 |
| 6/11/09 | 4761 | 9/1/09 – 11/30/09 | $362,715.50 | $2,425.85[4] | $[____] | $[____] |
| 6/30/10 | 4907 | 12/1/09 – 2/28/10 | $819,588.00 | $1,776.95[5] | $[____] | $[____] |
| 9/3/10 | 5622 | 3/1/10 – 5/31/10 | $439,490.50 | $1,892.73 | $[____] | $[____] |
| 10/27/10 | 6151 | 6/1/10 – 8/31/10 | $716,188.50 | $4,885.44 | $[____] | $[____] |
| 2/7/11 | 7819 | 9/1/19 – 11/30/10 | $1,153,555.00 | $13,621.43 | $[____] | $[____] |

---

[2] The Combined Monthly and First Quarterly Application combined McDermott's monthly fee statements and quarterly fee application for the period of December 8, 2008 through February 28, 2009.

[3] By agreement with the above-captioned debtors and debtors in possession (the "Debtors"), McDermott reduced its compensation sought by $110,867.50 due to an inadvertent overpayment by the Debtors. Such reduction was to respond to the United States Trustee's (the "U.S. Trustee") comments regarding McDermott's Combined Monthly and First Quarterly Application. The U.S. Trustee and McDermott (together, the "Parties") agreed that McDermott would not seek payment of the disputed fees, in the amount of $110,867.50 (the "Disputed Fees"), at that time. The Parties agreed, however, that McDermott reserved its right to seek payment of the Disputed Fees at a later time.

[4] Due to an inadvertent expense submission in the Second Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period March 1, 2009 Through May 31, 2009, McDermott reduced the amount of expense reimbursement sought in its October fee application by $250. Thus, McDermott actually sought reimbursement of expenses in the amount of $2,175.85 ($2,425.85-250.00).

[5] Due to an inadvertent expense submission in the Third Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period June 1, 2009 Through August 31, 2009, McDermott reduced the amount of expense reimbursement sought in its December fee application by $58.40. Thus, McDermott actually sought reimbursement of expenses in the amount of $1,718.55 ($1,776.95-$58.40).

## COMPENSATION FOR PROFESSIONALS
## DECEMBER 1, 2010 THROUGH FEBRUARY 28, 2011

| Name of Professional Person | Position of the Applicant, Area of Expertise, Year of Obtaining License to Practice | Hourly Billing Rate (hourly rate prior to 12-31-10 / rate after 12-31-10)[6] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Blake D. Rubin | Partner, Tax, Member of Pennsylvania Bar since 1980, Member of District of Columbia Bar since 1987 | $915 / $965 | 307.60 | $292,694.00 |
| Philip J. Levine | Partner, Tax, Member of New York Bar since 1975, Member of District of Columbia Bar since 2002 | $835 / $895 | 1.50 | $1,342.50 |
| Jean A. Pawlow | Partner, Tax, Member of District of Columbia Bar since 1989 | $780 / $840 | 28.00 | $22,638.00 |
| Paul J. Compernolle | Partner, Employee Benefits, Member of Illinois Bar since 1978 | $715 / $810 | 54.00 | $43,398.00 |
| William W. Merten | Partner, Employee Benefits, Member of Illinois Bar since 1985 | $715 / $810 | 16.30 | $13,165.00 |
| Andrea M. Whiteway | Partner, Tax, Member of Maryland Bar since 1992, Member of District of Columbia Bar since 1993 | $750 / $805 | 328.50 | $259,173.50 |
| John G. Ryan | Partner, Tax, Member of California Bar since 1994 | $780 / $815 | 0.40 | $312.00 |
| Robin L. Greenhouse | Partner, Tax, Member of District of Columbia Bar since 1988 | $730 / $780 | 7.90 | $6,162.00 |
| Geoffrey T. Raicht | Partner, Restructuring & Insolvency, Member of New York Bar since 1998 | $715 / $780 | 7.80 | $5,720.00 |
| Stephen D. Erf | Partner, Employee Benefits, member of Illinois Bar since 1978 | $700 / $780 | 1.20 | $936.00 |
| Brooks B. Gruemmer | Partner, Corporate, Member of Illinois Bar since 1990 | $690 / $750 | 11.60 | $8,550.00 |

---

[6] As discussed further herein, McDermott raised its hourly rates on January 1, 2011. The hourly rates listed in the chart reflect such rate increase.

DM_US 28253489-1.020336.0515

| Michael J. Wilder | Partner, Tax, Member of District of Columbia Bar since 1995 | $690 / $745 | 104.10 | $76,284.00 |
|---|---|---|---|---|
| Matthew K. White | Partner, Tax, Member of District of Columbia Bar since 2001 | $665 / $745 | 25.70 | $19,146.50 |
| Robert A. Schreck, Jr. | Partner, Corporate, Member of Illinois Bar since 1978 | $740 / $800 | 0.50 | $370.00 |
| Susan Peters Schaefer | Partner, Employee Benefits, Member of Illinois Bar since 1989 | $715 / $810 | 0.50 | $357.50 |
| Amy M. Gordon | Partner, Employee Benefits, Member of New Jersey Bar since 1991, Member of New York Bar since 1993, Member of Illinois Bar since 2001 | $610 / $710 | 12.90 | $8,299.00 |
| Geoffrey Vance | Partner, Litigation, Member of Illinois Bar since 1996 | $645 / $700 | 0.50 | $350.00 |
| Thomas P. Ward | Partner, Tax, Member of Illinois Bar since 1996 | $585 / $660 | 0.30 | $198.00 |
| Mark A. Bilut | Partner, Employee Benefits, Member of Illinois Bar since 1995 | $595 / $655 | 0.50 | $327.50 |
| Jon G. Finkelstein | Partner, Tax, Member of New York Bar since 2001, Member of District of Columbia Bar since 2002 | $580 / $635 | 93.70 | $58,575.50 |
| Nava Hazan | Partner, Restructuring & Insolvency, Member of New York Bar since 2000 | $570 / $630 | 14.20 | $8,256.00 |
| Joan-Elisse Carpentier | Partner, Employee Benefits, Member of Massachusetts Bar since 1983, Member of New York Bar since 1984, Member of California Bar since 2003 | $630 / $655 | 1.30 | $819.00 |
| Raymond M. Fernando | Partner, Employee Benefits, Member of Illinois Bar since 2002 | $570 / $625 | 22.60 | $14,081.00 |
| Michael T. Graham | Partner, Employee Benefits, Member of Illinois Bar since 1995, Member of Indiana Bar since 1995 | $565 / $625 | 1.00 | $625.00 |
| Chris C. Scheithauer | Partner, Litigation, Member of California Bar since 1996 | $585 / $645 | 1.00 | $585.00 |
| Ryan D. Harris | Partner, Corporate, Member of Illinois Bar since 2002 | $515 / $575 | 30.50 | $16,787.50 |
| J. Andrew Stone | Partner, Tax, Member of Illinois Bar since 2000 | $510 / $560 | 0.80 | $448.00 |

- 4 -

| Todd A. Solomon | Partner, Employee Benefits, Member of Illinois Bar since 1998 | $560 / $675 | .30 | $168.00 |
|---|---|---|---|---|
| Andrew T. Turney | Partner, Corporate, Member of California Bar since 2003 | $480 / $535 | 122.60 | $62,720.00 |
| Heather E. Sussman | Partner, Employee Benefits, Member of Massachusetts Bar since 2005 | $530 / $580 | 4.90 | $2,597.00 |
| Jeffrey M. Holdvogt | Partner, Employee Benefits, Member of Illinois Bar since 2003 | $420 / $500 | 40.10 | $19,810.00 |
| Robert Feldgarden, PC | Counsel, Tax, Member of District of Columbia Bar since 1975 | $835 / $895 | 0.30 | $250.50 |
| Roy E. Crawford | Counsel, Tax, Member of California Bar since 1964 | $735 / $825 | 3.50 | $2,707.50 |
| Luis L. Granados, III | Counsel, Employee Benefits, Member of District of Columbia Bar since 1985, Member of Maryland Bar since 1979 | $630 / $730 | 3.90 | $2,847.00 |
| Fred M. Ackerson | Counsel, Tax, Member of Illinois Bar since 1980 | $615 / $675 | 2.50 | $1,687.50 |
| Timothy S. Shuman | Associate, Tax, Member of Illinois Bar since 2006, Member of District of Columbia Bar since 2007 | $320 / $440 | 29.90 | $13,156.00 |
| Daniel S. Fuchs | Associate, Tax, Member of Illinois Bar since 2006 | $315 / $415 | 81.70 | $29,095.50 |
| Gale E. Chan | Associate, Tax, Member of California Bar since 2007, Member of District of Columbia Bar since 2008 | $320 / $390 | 157.40 | $55,513.00 |
| Patrick J. McCurry | Associate, Tax, Member of Illinois Bar since 2007 | $305 / $360 | 161.30 | $54,597.50 |
| Jared D. Zajac | Associate, Restructuring & Insolvency, Member of New York Bar since 2009 | $325 / $345 | 113.00 | $37,727.00 |
| Carla Hine | Associate, Corporate, Member of District of Columbia Bar since 2006, Member of Illinois Bar since 2005 | $345 / $400 | 2.00 | $690.00 |
| Andrew Blair-Stanek | Associate, Tax, Member of District of Columbia Bar since 2009 | $280 / $335 | 292.20 | $94,229.50 |
| Brian J. Tiemann | Associate, Employee Benefits, Member of Illinois Bar since 2009 | $280 / $330 | 10.40 | $3,392.00 |
| Jeffrey K. Ekeberg | Associate, Tax, Member of Illinois | $280 / | 4.80 | $1,584.00 |

- 5 -

| | Bar since 2008 | $330 | | |
|---|---|---|---|---|
| Gregory Kopacz | Associate, Restructuring & Insolvency, Member of New York Bar since 2009 | $325 / $345 | 5.50 | $1,787.50 |
| Justin Jesse | Associate, Tax, Member of District of Columbia Bar since 2010 | N/A / $295 | 21.00 | $6,195.00 |
| Cole Parker | Associate, Corporate, Bar admission pending | $280 / $295 | 70.40 | $20,036.00 |
| Corey M. Wise | Associate, Tax, Member of Illinois Bar since 2010 | N/A / $295 | 6.50 | $1,917.50 |
| Sabrina Dunlap | Associate, Employee Benefits, Member of Massachusetts Bar since 2008 | $280 / $335 | 3.50 | $980.00 |
| Brant A. Newgard | Senior Staff Attorney, Litigation, Member of Illinois Bar since 2005 | $175 / $245 | 406.00 | $91,287.00 |
| Nicole LeBeau | Staff Attorney, Litigation, Member of Illinois Bar since 2005 | $90 / $245 | 414.70 | $56,296.50 |
| Maya Kumar | Staff Attorney, Litigation, Member of Illinois Bar since 2003 | $170 / $245 | 35.50 | $6,035.00 |
| Joan Brandl | Contract Attorney | $90 / $100 | 83.50 | $8,350.00 |
| Mark Calaguas | Contract Attorney | $90 / $100 | 250.80 | $23,519.00 |
| Daniel Concannon | Contract Attorney | $90 / $100 | 78.00 | $7,800.00 |
| Shayla Cooper | Contract Attorney | $90 / $100 | 71.40 | $7,140.00 |
| Melissa Dorko | Contract Attorney | $90 / $100 | 60.50 | $5,445.00 |
| Jacqueline Edler | Contract Attorney | $90 / $100 | 56.50 | $5,650.00 |
| Dawn Johnson | Contract Attorney | $90 / $100 | 74.80 | $6,732.00 |
| Brett Middendorf | Contract Attorney | $90 / $100 | 78.20 | $7,820.00 |
| Janet Mitchell-Callion | Contract Attorney | $90 / $100 | 78.00 | $7,800.00 |
| Hiram Peacock | Contract Attorney | $90 / $100 | 77.80 | $7,780.00 |
| Andrew VanDyke | Contract Attorney | $90 / $100 | 76.00 | $7,600.00 |
| Radhika Veerapaneni | Contract Attorney | $90 / $100 | 268.10 | $25,544.00 |
| Sean Ziadeh | Contract Attorney | $90 / $100 | 11.50 | $1,150.00 |
| Maggie A. Mitchell | Associate Legislative Director | $320 / $375 | 1.80 | $675.00 |
| Marlyss Bloom | Corporate Paralegal | $255 / $265 | .30 | $79.50 |

| Christy McNeil | Corporate Paralegal | $250 / $255 | 9.0 | $2,295.00 |
|---|---|---|---|---|
| Jule Rotenberg | Paralegal | $255 / $260 | 0.70 | $178.50 |
| Serge Kernisan | Technology Project Manager | $240 / $250 | 24.90 | $6,070.00 |
| Michelle L. Krofel | Professional, Corporate Advisory | $230 / $240 | 1.30 | $312.00 |
| Tracy Smith | Litigation Paralegal | $210 / $225 | 5.00 | $1,125.00 |
| Jennifer Berman | Research Manager | $175 / $215 | .30 | $64.50 |
| Eric Adams | Research Services Assistant | $135 / $155 | .50 | $77.50 |
| Grand Total: | | | 4,377.70 | $1,560,114.00 |
| Blended Rate: | | $356.78 | | |

DM_US 28253489-1.020336.0515

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Cubs Post Closing Matters | 73.40 | $38,008.50 |
| General Employee Benefits Matters | 1.80 | $675.00 |
| Welfare Plans | 13.50 | $8,681.50 |
| ESOP | 54.40 | $35,179.00 |
| General Tax | 26.90 | $10,387.50 |
| Newsday | 2,434.20 | $451,969.00 |
| LA Times | 7.80 | $3,854.00 |
| Chapter 11 Restructuring | 1,249.60 | $735,351.50 |
| Perfect Market, Inc. | 3.70 | $2,079.50 |
| All Direct Mail Services, Inc. | 139.70 | $69,065.50 |
| Baltimore Sun Mailers Pension Plan | 34.20 | $24,417.50 |
| Cast TV | 113.40 | $34,403.50 |
| Easy Rider | 5.70 | $2,997.50 |
| Project Eagle | 69.40 | $42,044.00 |
| 2009 Audit | 93.60 | $65,646.00 |
| Project Eagle -- Benefits Matters | 56.40 | $35,354.50 |
| TOTAL: | 4,377.70 | $1,560,114.00 |

DM_US 28253489-1.020336.0515

## EXPENSE SUMMARY

| Expense Category | Service Provider | Total Fees |
|---|---|---|
| Photocopy | In-House | $799.85 |
| Messenger/Courier | U.S. Messenger & Logistics, Inc. | $37.35 |
| Telecommunications | Conference Plus | $607.73 |
| Computer Research | PACER | $244.64 |
| Express Mail | Federal Express | $206.36 |
| Electronic Discovery | | $12,355.53 |
| Document Services | | $91.50 |
| Company Search Fees | | $601.12 |
| Transportation | | $162.83 |
| Computer Hosting Fee for Document Review | | $1,802.00 |
| Usage Charge for Document Review and Production Software | | $350.00 |
| Document Production | | $268.55 |
| Facsimile | | $12.00 |
| Business Meals | | $58.44 |
| Document Retrieval | | $161.00 |
| Postage | | $0.44 |
| **TOTAL** | | $17,759.34 |

DM_US 28253489-1.020336.0515

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: July 11, 2011 |
| | Hearing Date: *Only if Objections Are Filed* |

**NINTH QUARTERLY FEE APPLICATION OF**
**McDERMOTT WILL & EMERY LLP, AS SPECIAL COUNSEL TO**
**DEBTORS FOR DOMESTIC LEGAL MATTERS FOR ALLOWANCE OF**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR**
**THE PERIOD DECEMBER 1, 2010 THROUGH FEBRUARY 28, 2011**

McDermott Will & Emery LLP ("McDermott"), as Special Counsel for Domestic Legal Matters to the Tribune Company, et al. (the "Debtors"), hereby submits this ninth quarterly application (the "Ninth Quarterly Application") for approval and allowance of compensation for services rendered in the amount of $1,560,114.00 (80% of which is $1,248,091.20) and reimbursement for expenses incurred in the amount of $17,757.01 during the period commencing December 1, 2010 through February 28, 2011 (the "Ninth Quarterly Application Period"). This Ninth Quarterly Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"), the Executive Office of United States Trustees' Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 dated March 22,

1995 (the "Guidelines"), and the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications dated March 19, 2009 (the "Fee Examiner Order"). In support of this Ninth Quarterly Application, McDermott respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Ninth Quarterly Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 330, and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On December 10, 2008, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.      On October 12, 2009, Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, Inc. (the "Cubs" and one of the Debtors) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. On October 14, 2009, the Court entered an order consolidating the Cubs' chapter 11 case with the Debtors' chapter 11 cases for procedural purposes only.

5.      The Debtors have continued in possession of their respective properties and have continued in the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

- 2 -

6.    No trustee has been appointed in these chapter 11 cases.

## McDERMOTT RETENTION

7.    Prior to the Petition Date, the Debtors retained McDermott as general legal counsel and agreed to pay on a monthly basis the reasonable value of services rendered based on McDermott's standard billing rates and pursuant to its standard reimbursement policies.

8.    On March 13, 2009, the Court authorized the employment and retention of McDermott pursuant to sections 105(a) and 327(a) as special counsel to the Debtors for general domestic legal matters, nunc pro tunc to December 8, 2008.

9.    On October 14, 2009, the Court entered an Order Directing (I) Joint Administration of Chapter 11 Cases and (II) That Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. Be Made Applicable to Chapter 11 Case of Chicago National League Ball Club, LLC (the "CNLBC Order") [Docket no. 2333]. Pursuant to the CNLBC Order, McDermott's retention was extended to include the Cubs case.

## PROCEDURAL BACKGROUND

10.    The Compensation Order and the Fee Examiner Order (collectively, the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code must file with the Court and provide the fee examiner their monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the professional must certify in writing to the Debtors that no objection or a partial

- 3 -

objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection.

11.    Pursuant to the procedures set forth in the Fee Orders, McDermott prepared, filed with the Court, and served upon the Notice Parties and the fee examiner Monthly Fee Applications for the months of December 2010, January 2011, and February 2011,[1] which Monthly Fee Applications are incorporated herein by reference and addressed in this Ninth Quarterly Application.

12.    In addition, beginning with the three-month period ending on February 28, 2009, and for each three-month period thereafter, all professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (each a "Quarterly Fee Application Request"). Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. As noted, this Ninth Quarterly Application represents the ninth Quarterly Fee Application Request that McDermott has filed with the Court in connection with these chapter 11 cases, and it covers the period from December 1, 2010 through February 28, 2011.

---

[1] The docket numbers of McDermott's Monthly Fee Applications for December 2010, January 2011, and February 2011 are 8162, 9211, and 9212, respectively.

DM_US 28253489-1.020336.0515

## RELIEF REQUESTED

13.     By this Ninth Quarterly Application, McDermott requests that the Court allow the interim allowance and award compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by McDermott as special legal counsel to the Debtors during the Ninth Quarterly Application Period.  Further, McDermott seeks this Court's allowance for payment of such amounts to McDermott, less any amounts previously paid to McDermott pursuant to the Monthly Fee Applications for the Ninth Quarterly Application Period.

14.     During the Ninth Quarterly Application Period, attorneys and paraprofessionals of McDermott have expended a total of 4,377.70 hours in connection with these chapter 11 cases. The reasonable value of services rendered by McDermott to the Debtors during the Ninth Quarterly Application Period is $1,560,114.00.  Such amount is the result of McDermott's normal hourly rates for work of this nature.  To the best of McDermott's knowledge, this Ninth Quarterly Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and the Compensation Order.

15.     On January 1, 2011, McDermott increased its hourly rates for its attorneys and paraprofessionals.  In accordance with McDermott's representations in its application for employment in these cases, as well as the declaration of Blake Rubin in support thereof, McDermott provided the Debtors with prior notice of such increases and the Debtors have agreed to such increases.

## COMPENSATION PAID AND ITS SOURCES

16.     All services for which compensation is requested by McDermott were performed for or on behalf of the Debtors.

DM_US 28253489-1.020336.0515

17.    In compliance with Rule 2016, McDermott confirms that during the Ninth Quarterly Application Period, McDermott received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Ninth Quarterly Application except from the Debtors.  There is no agreement or understanding between McDermott and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

18.    As of the Petition Date, McDermott held a retainer from the Debtors in the amount of $67,777.26.  The Debtors reduced their first payment to McDermott by the amount of the retainer and McDermott drew down on the retainer in connection with the payment pursuant to the Combined Monthly and First Quarterly Application.  Accordingly, McDermott no longer holds any retainer in connection with its retention in these cases.

## SUMMARY OF SERVICES

19.    The following is a summary of the activities performed by McDermott attorneys and paraprofessionals during the Ninth Quarterly Application Period, organized by project category.

### Matter 0500 – General Tax

20.    McDermott provided general tax advice to the Debtors and researched issues in connection with the filing of an amended tax return.

### Matter 0507 – Newsday

21.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service, including preparing responses to information document requests and preparing for and conducting discovery in connection thereto.  McDermott further performed an extensive document review in connection with the audit by the Internal Revenue Service.

DM_US 28253489-1.020336.0515

22.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services. The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information should be withheld on the basis of a privilege. Upon the attorney reviewers' completion of the document review, the technology project managers in charge of the e-discovery services (i) separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

### Matter 0512 – LA Times

23.    McDermott provided legal advice to the Debtors regarding a potential asset transaction and researched various issues in connection therewith, including research regarding successor liability and employment payouts.

### Matter 0515 – Chapter 11 Restructuring/Tax Planning

24.    McDermott provided general tax advice to the Debtors regarding various tax issues related to the Debtors' emergence from bankruptcy. McDermott assisted the Debtors in evaluating the possibility of obtaining a private letter ruling from the Internal Revenue Service regarding certain tax issues, and subsequently in drafting such request for a private letter ruling. McDermott further assisted the Debtors in revising their disclosure statement and plan of reorganization with respect to certain aspects of the plan relating to tax issues. McDermott also researched and advised the Debtors on various post-emergence corporate structures. McDermott further researched and analyzed various tax issues in connection with the Debtors' plan of

- 7 -

reorganization, including the tax consequences of settling certain preferential and fraudulent transfer claims. McDermott also researched and analyzed various issues relating to the establishment of a litigation trust under a plan of reorganization. Finally, McDermott researched and advised the Debtors on tax issues with respect to certain fraudulent transfer claims.

### Matter 0515 – Chapter 11 Retention/Fee Application

25.    McDermott gathered and prepared various billing information required to file fee statements pursuant to the Compensation Order and the Guidelines. McDermott also drafted and revised fee statements for submission in accordance with the Compensation Order.

### Matter 0516 – Perfect Market, Inc.

26.    McDermott provided general corporate advice to the Debtors, including reviewing certain corporate documents.

### Matter 0520 – All Direct Mail Services, Inc.

27.    McDermott advised the Debtors with respect to a potential asset sale transaction for the Debtors and conducted due diligence with respect to such transaction. McDermott also researched various tax, ERISA, successor liability, property tax, shareholder consent, and employee compensation liabilities issues with respect to the potential transaction. McDermott further drafted and reviewed various transaction documents, including an asset purchase agreement and disclosure schedules, in connection with the potential asset sale transaction. McDermott further assisted the Debtors in preparing for the closing of the transaction by finalizing various documents for execution. Finally, McDermott performed general post closing services with respect to the transaction for the Debtors.

DM_US 28253489-1.020336.0515

## Matter 0522 – Baltimore Sun Mailers Pension Plan

28.    McDermott provided general corporate advice to the Debtors regarding certain pension plan modifications and reviewed certain plan documents. McDermott further researched issues with respect to the transfer of assets among trusts for the Debtors.

## Matter 0524 – Cast TV

29.    McDermott advised the Debtors with respect to a stock transaction for the Debtors, and reviewed and revised certain term sheets and letters of intent. McDermott also conducted due diligence in connection with the potential stock transaction. McDermott further drafted numerous corporate documents in connection with such transaction, including a stock purchase agreement and disclosure schedules. McDermott also prepared closing books for the transaction parties. Finally, McDermott also assisted the Debtors in analyzing certain issues with respect to franchise taxes.

## Matter 0525 – Easy Reader

30.    McDermott advised the Debtors with respect to a potential asset transaction for the Debtors, and reviewed and revised certain term sheets and letters of intent in connection therewith. McDermott further researched and analyzed various successor liability issues and employment issues in connection with the potential asset transaction.

## Matter 0526 – Project Eagle

31.    McDermott advised the Debtors with respect to a potential confidential transaction. McDermott analyzed certain transaction structures for the Debtors. McDermott also reviewed and analyzed certain transaction documents. McDermott further conducted due diligence in connection with the potential transaction.

- 9 -

### Matter 0527 – 2009 Audit

32.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service in connection with the Debtors' 2009 taxable year, including preparing responses to information document requests and preparing for discovery in connection thereto.

### Matter 0528 – Project Eagle Benefits Matters

33.    McDermott provided general legal advice regarding benefit programs in connection with a potential confidential transaction. McDermott reviewed the benefit programs involved in the transaction and advised the Debtors with respect to certain benefit program issues in connection with the transaction. McDermott also reviewed and revised the transaction documents with respect to the sections relating to benefit programs.

### Matter 0021 – Cubs Post Closing Matters

34.    McDermott completed general post-closing work relating to the partnership transaction involving the Chicago Cubs baseball team, and reviewed a formation agreement in connection thereof. McDermott also drafted a statement to the auditor regarding a working capital dispute. McDermott further drafted various proposals for the settlement of such dispute.

### Matter 0040 – General Employees Benefits Matters

35.    McDermott provided general legal advice to the Debtors regarding their employee benefit plans.

### Matter 0041 – Welfare Plans

36.    McDermott provided general legal advice regarding programs offered by the Debtors to their employees and reviewed and revised language in certain of the Debtors' benefit plans. McDermott also reviewed a complaint with respect to certain ERISA issues. McDermott further reviewed and revised the language in certain of the Debtors' benefit plans.

- 10 -

**Matter 0047 – ESOP**

37.    McDermott provided general legal advice on issues regarding the Debtors' ESOP. McDermott reviewed and analyzed various strategic issues relating to ongoing litigation and the Debtors' bankruptcy with respect to the Debtors' ESOP.  McDermott also reviewed and revised a determination letter for the Internal Revenue Service.  McDermott also conducted a diligence review of documents in connection with an audit request.

## ACTUAL AND NECESSARY EXPENSES

38.    McDermott seeks reimbursement of expenses actually and necessarily incurred in connection with the rendition of its services in the amount of $17,757.01.  The requested expenses are customarily charged to non-bankruptcy clients of McDermott.  Due to the complexity of the Debtors' corporate and financial structure, the Debtors have faced numerous critical and unique issues.  In order for McDermott to analyze and address such issues properly, McDermott attorneys may have performed computerized legal research and incurred other expenses during the Ninth Quarterly Application Period, all of which was necessary to further the Debtors' reorganization and in the best interests of the Debtors' estates.

39.    With respect to photocopying expenses, McDermott ordinarily charges all of its clients $.20 per page, but pursuant to Local Rule 2016-2(e), McDermott has charged the Debtors the maximum permitted amount of $.10 per page.  With respect to facsimile expenses, in compliance with the Guidelines, McDermott charges $1.00 per page for facsimile transmissions.

40.    In addition, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, certain long distance telephone calls and conference calls may have been required.  These charges are intended to cover McDermott's direct operating

- 11 -

costs, which costs are not incorporated into the McDermott hourly billing rates. Only clients who actually use services of this type are separately charged for such services.

41.    Further, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, travel may have been required for certain matters. Typically, such travel expenses are initially borne by the attorney, then reimbursed by the firm and charged to the appropriate client and matter.

42.    The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

43.    To the extent that time or disbursement charges for services rendered or disbursements incurred during the Ninth Quarterly Application Period, but were not processed prior to the preparation of this Ninth Quarterly Application, McDermott reserves its rights to request additional compensation for such services, and reimbursement of such expenses in a future application.

## CONCLUSION

44.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by McDermott is fair and reasonable given (a) the complexity of the legal matters, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under this title. McDermott has reviewed the requirements of Local Rule 2016-2 and reasonably believes that this Ninth Quarterly Application complies with that rule.

WHEREFORE, McDermott respectfully seeks allowance of the amount set forth in the

Ninth Quarterly Application for the period of December 1, 2010 through February 28, 2011 in

the amount of $1,560,114.00 (80% of which is $1,248,091.20) for professional services

rendered, and reimbursement of expenses incurred in connection wherewith in the amount of

$17,757.01, for a total of $1,577,871.01.

Dated: Washington, District of Columbia
       June 20, 2011

                        McDERMOTT WILL & EMERY LLP

                        /s/ Blake D. Rubin
                        Blake D. Rubin (admitted *pro hac vice*)
                        600 13th Street, N.W.
                        Washington, D.C. 20005-3096
                        Telephone:  (202) 756-8424
                        Facsimile:  (202) 756-8087

                        and

                        Jared D. Zajac (admitted *pro hac vice*)
                        340 Madison Avenue
                        New York, NY 10173-1922
                        Telephone:  (212) 547-5598
                        Facsimile:  (212) 547-5444

                        *Special Counsel for Domestic Legal Matters to Tribune
                        Company, et al.*

- 13-

DM_US 28253489-1.020336.0515