# EXHIBIT B



GRIPPO
&ELDEN

GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
FAX:      (312) 558-1195
          (312) 263-7356

To Call Writer Direct
(312) 704-7735
gdougherty@grippoelden.com

June 2, 2011

By ECF Filing and Federal Express

The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge
824 North Market Street # 500
Wilmington, Delaware 19801

        Re:    *In re Tribune Company, et al.*
               Case No. 08-13141 (Bankr. D. Del.) (KJC)

Dear Chief Judge Carey:

    DCL Plan Proponents'[1] Supplemental Letter Response ("Supp. Let."), dated May 20,
2011, contains misstatements concerning Certain Directors and Officers' positions regarding the
proposed Creditors' Trusts and the effect of the Court's April 25 Order ("April 25 Order"),
Exhibit 1 [Docket No. 8740]. This letter addresses those misstatements.

    Sections 544 and 548 allow for the avoidance of a transfer of an "interest of the debtor in
property." 11 U.S.C. §§ 544(b)(1), 548(a)(1). The "interest" of the debtor at issue here is the
amount paid to selling Tribune shareholders as part of the Tribune LBO. Committee sought this
"interest" when it asserted intentional fraudulent conveyance claims against Certain Directors
and Officers and other parties in *UCC v. FitzSimons, et al.*, Adversary Proceeding No. 10-54010.
Under established law, Committee's pursuit of this interest precludes creditors and other parties
from seeking to recover this same interest for their own benefit until this bankruptcy is finalized.
*See* DCL Mem. at 130-31 n.95 (citing numerous cases for the proposition that a Bankruptcy
Trustee has the sole right to pursue fraudulently transferred assets until a bankruptcy is closed).

    Plan Proponents' disclaimer scheme seeks to evade this well-established rule. Because
the limitations period has purportedly expired on Committee's right to assert constructive
fraudulent conveyance claims, Plan Proponents contend that other parties may pursue lawsuits in
separate actions to recover the same interest sought by Committee (*i.e.*, the amounts paid to
Tribune shareholders). This argument, however, ignores the plain language of the Code, which
focuses on the "interest" being avoided, as opposed to the claim by which an interest may be

---

[1]     Capitalized terms used herein, unless otherwise defined, have the meaning reflected in Certain Directors'
and Officers' Letter Brief ("Ltr. Br."), dated May 11, 2011, and the DCL Plan.

1163582



GRIPPO
&ELDEN

The Honorable Kevin J. Carey
June 2, 2011
Page 2

recovered. Allowing individual creditors, a Creditors' Trust (purportedly not subject to the
jurisdiction of the Bankruptcy Court), and Committee to simultaneously pursue competing
lawsuits for the same interest would improperly circumvent at least two important objectives of
the Code – the avoidance of competing actions for the same interest and the aggregation of
property in one place for its fair and equitable distribution. Ltr. Br. at 2-3 (citing cases).

      In their letter, DCL Plan Proponents ignore these problems, all of which are highlighted
by Plan Objectors. Instead, DCL Plan Proponents assert that the April 25 Order confirms that
the right to assert constructive fraudulent conveyance claims now resides in individual creditors.
Supp. Let. at 4-5. DCL Plan Proponents are wrong. This Court was very clear at the argument
that led to the entry of the April 25 Order that any order entered by the Court would not be
"making a determination of what happens to state fraudulent conveyance claims upon the
expiration of the Estate's ability to pursue them." Exhibit 2, March 22, 2011 Transcript of
Proceedings ("Tr.") at 99. At that time, the Court was faced with the argument that potential
claims could become barred by the limitations period if the stay was not lifted to allow for the
filing of individual actions. While the Court stated it would not be "standing in the way of such
actions," it made it very clear that it was not disposing of any "substantive rights." Consistent
with the Court's statements, the April 25 Order states that creditors have "regained the right, *if
any*, to prosecute" state law claims. Exhibit 1 at ¶ 2 (emphasis added). DCL Plan Proponents
ignore the "if any" qualifier of the Order and the Court's March 22 statements when they claim
that the Court's entry of the April 25 Order "confirm[s]" their position that state law constructive
fraudulent conveyance claims have now reverted to creditors. *Compare* Supp. Let. at 4.

      DCL Plan Proponents are also wrong when they state that the April 25 Order resolved
any Plan objections. Supp. Let. at 5 ("Even if the Court had not already disposed of these same
arguments less than one month ago, the objections to the Plan would still be meritless."). The
April 25 Order specifically states, consistent with the Court's statements at the March 22
hearing, that nothing in the order "shall prejudice or impair . . . any objection to any plan of
reorganization currently before this Court." Exhibit 1 at ¶ 8; *see also* Tr. at 100-01 (Court stating
that in entering any order it wanted to reserve to itself and to the parties who have objected to
confirmation make "whatever arguments they have to make without being hampered by any
order that I'm entering here. I don't mean to dispose of any of those rights.").

      This Court should ensure that any confirmed plan is consistent with Code objectives and
purposes and not laden with devices that defeat those purposes and objectives. *In re Taylor*,
81 F.3d 20, 25 (3d Cir. 1996) (holding that bankruptcy courts have equitable authority to ensure
that a debtor does not frustrate Congressional intent by manipulating the Bankruptcy Code); *In re
Weatherford*, 413 B.R. 273, 288 n.13 (Bankr. D.S.C. 2009) (bankruptcy courts are authorized to
"take any action necessary to prevent abuse of process that would undermine the integrity of the
bankruptcy system.)" (citations omitted). Here, based on a device that is designed to avoid
Section 546 and the Congressional policy it embodies, Ltr. Br. at 3, the proposed Creditors'
Trusts will subject Certain Directors and Officers and other parties to competing actions for the
same funds and create a risk of conflicting adjudications and competing judgments. The



GRIPPO
&ELDEN

The Honorable Kevin J. Carey
June 2, 2011
Page 3

April 25 Order was not intended to and, by its plain language, did not resolve any objection to confirmation of either proposed Plan. DCL Plan Proponents' decision to misstate and ignore the plain language of the April 25 Order and the Court's statements leading up to its entry serves only to highlight the weakness of their positions. Neither proposed Plan should be confirmed based on their inclusion of the proposed "Creditors' Trusts" as currently constituted.

Very Truly Yours,

George R. Dougherty
Counsel for Certain Directors and Officers

GRD/db
cc:    *See* attached Service List

1163582

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| TRIBUNE COMPANY, et al.,[1] | ) Case No. 08-13141 (KJC) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) D.I. 5591, 8201 |

ORDER GRANTING (I) RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT
THE AUTOMATIC STAY BARS COMMENCEMENT BY CREDITORS OF STATE LAW
CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS TO RECOVER STOCK
REDEMPTION PAYMENTS MADE TO STEP ONE SHAREHOLDERS AND STEP TWO
SHAREHOLDERS AND (II) LEAVE FROM THE MEDIATION ORDER TO PERMIT
<u>COMMENCEMENT OF LITIGATION ON ACCOUNT OF SUCH CLAIMS</u>

Upon the motion dated March 1, 2011 of Aurelius Capital Management, LP, on

behalf of its managed entities (collectively "<u>Aurelius</u>"), Deutsche Bank Trust Company

Americas, in its capacity as successor indenture trustee for certain series of senior notes issued

by Tribune Company ("<u>Deutsche Bank</u>"), and Law Debenture Trust Company of New York, in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8863); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

its capacity as successor indenture trustee for certain series of senior notes issued by Tribune

Company ("Law Debenture" and, collectively with Aurelius, Deutsche Bank and Wilmington

Trust Company, in its capacity as successor indenture trustee for the PHONES notes issued by

Tribune Company, the "Original Plaintiff Group"), for entry of an order (I) determining that

creditors have regained their state law constructive fraudulent conveyance claims to recover

stock redemption payments made to Step One Shareholders (as defined below) and Step Two

Shareholders (as defined below) due to the expiration of the statute of limitations under 11

U.S.C. § 546(a); (II) determining that the automatic stay does not bar the commencement of

litigation by or on behalf of creditors with respect to such claims or, in the alternative, granting

relief from the automatic stay to permit the commencement of such litigation; and (III) granting

leave from this Court's Order Appointing Mediator [ECF No. 5591] (the "Mediation Order") to

permit the commencement of such litigation (the "Motion"); and it appearing that good and

sufficient notice of the Motion was given and that no other or further notice is necessary; and the

Court having considered the Motion at a hearing on March 22, 2011 (the "Hearing"); and the

Court having overruled the objections to the Motion for the reasons stated at the Hearing; and

after due deliberation and it appearing sufficient cause exists for granting the requested relief, it

is therefore

ORDERED, ADJUDGED AND DECREED that:

    1.    The Motion is GRANTED to the extent set forth herein.

    2.    Because no state law constructive fraudulent conveyance claims against

shareholders whose stock was redeemed or purchased in connection with the first step (such

shareholders, the "Step One Shareholders") and/or the second step (such shareholders, the "Step

Two Shareholders") of the 2007 leveraged buy-out of Tribune Company (the "LBO") were

commenced by or on behalf of the Debtors' estates before the expiration of the applicable statute

-2-

of limitations under 11 U.S.C. § 546(a), the Debtors' creditors have regained the right, if any, to prosecute their respective state law constructive fraudulent conveyance claims against Step One Shareholders and/or Step Two Shareholders to recover stock redemption/purchase payments made to such shareholders in connection with the LBO (collectively, the "Creditor SLCFC Claims").

3.    To the extent the automatic stay of 11 U.S.C. § 362(a) stays the commencement of any Creditor SLCFC Claims, the automatic stay is hereby lifted to permit the filing of any complaint by or on behalf of creditors on account of such Creditor SLCFC Claims, including, without limitation, any complaint filed by any plaintiff in the Original Plaintiff Group.

4.    To the extent the Mediation Order stays the commencement of any Creditor SLCFC Claims, leave is hereby granted from such Mediation Order to permit the filing of the complaint(s) referenced in paragraph 3 above.

5.    To the extent that a creditor other than a member of the Original Plaintiff Group seeks to file its own complaint with respect to its Creditor SLCFC Claims, such creditor shall file a statement in this Court acknowledging that the creditor shall, except as provided in and in accordance with paragraph 6 below, stay all actions in the state court litigation and will otherwise adhere to the terms of this Order.

6.    Absent further order of this Court, litigation commenced by the filing of any complaint referenced in paragraphs 3 and 5 above shall automatically be stayed in the applicable state court(s) where such complaint(s) are filed, or if not automatic in such state court(s), then application for the stay in accordance with the provisions of this Order shall be made by the Original Plaintiff Group or any other creditor that files its own complaint; provided, however, that during such stay, any party, including any plaintiff in the Original Plaintiff Group, that files such a complaint may: (a) consistent with governing rules, amend such complaint; (b) complete

service of such complaint; and (c) take such steps, including immediately pursuing discovery, as are necessary solely for the purpose of preventing applicable statutes of limitations or other time-related defenses from barring any Creditor SLCFC Claims.

7.     Nothing in this Order shall prejudice the rights of the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee") or any trust established under any plan of reorganization that is confirmed in the Debtors' chapter 11 cases, including to, as the case may be, (i) pursue whatever claims are properly asserted by the Creditors' Committee or by such trusts, in any proper venue, or (ii) amend in any way the adversary complaints (Adv. Pro. Nos. 10-53963 and 10-54010) filed by the Creditors' Committee in these chapter 11 cases, or take or seek to take any other action, or assert any rights or arguments, in connection with such claims or complaints.

8.     Nothing in this Order shall prejudice or impair any claims or defenses of any defendant in any proceeding in respect of a Creditor SLCFC Claim or any objection to any plan of reorganization currently before this Court.[2]

9.     This Court shall, except with respect to the prosecution of the Creditor SLCFC Claims, retain exclusive jurisdiction to hear and decide any and all disputes relating to or arising from this Order.

Dated: _April 25_____, 2011
Wilmington, Delaware

_____
HONORABLE KEVIN J. CAREY
Chief United States Bankruptcy Judge

cc: William P. Bowden, Esquire[3]

_____

[2] For the avoidance of doubt, by this Order, this Court makes no finding and issues no ruling determining the standing of the Original Plaintiff's Group (or any creditor) to assert the Creditor SLCFC Claims or whether such claims are preempted or otherwise impacted by 11 U.S.C. § 546(e).

[3] Counsel shall serve a copy of this Order on all interested parties and file a Certificate of Service with this Court.

-4-

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )   Case No. 08-13141(KJC)
                                )
                                )
TRIBUNE COMPANY                 )   Chapter 11
                                )
                                )   Courtroom 5
                                )   824 Market Street
             Debtors.           )   Wilmington, Delaware
                                )
                                )   March 22, 2011
                                )   10:00 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: KEN KANSA, ESQ.
                                BY: JESSICA BOELTER, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000

                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131

ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

99

1    be brought before you, so that we can all try to work
2    through this issue.
3              THE COURT:  All right.  Thank you.  All right.
4    Since the circumstance in which, arguably, the movants here
5    could've just went and done what they wanted to do without
6    asking the Court, but they didn't, so if I'm to enter an
7    order, my inclination is to make it sufficiently clear that
8    I'm not disposing of substantive rights.  I'm not making a
9    determination of what happens to state law fraudulent
10   conveyance claims upon the expiration of the estate's
11   ability to pursue them, but without standing in the way of
12   such actions.  So let me just, as I look over the various
13   proposed orders, tell you what I would be willing to
14   consider.  I will give counsel a chance to confer and to
15   submit, excuse me, a form of order which would address these
16   issues.  And to the extent the parties cannot agree, then
17   I'll consider competing forms of order.
18             So, not in any particular order, let me just make
19   the following comments.  And I'll work, initially, from the
20   most recently marked-up proposed form of order that Mr.
21   Golden handed me.
22             I would be willing to say something like pursuant
23   to -- well, the failure of the estate to pursue such claims,
24   that creditors have regained the right, if any, to prosecute
25   their respective creditors SLCFC claims.  And I'll stop

100

1   there to say that I'd like -- because I know these orders
2   will come up in state courts, all of the defined terms to be
3   explained in the body of the order itself so that courts
4   don't have to look elsewhere to find out what the order
5   means.
6           With respect to the -- whether a creditors SLCFC
7   claim is or was no longer property of the estate, I don't
8   want to make that declaration, because I'm not sure it ever
9   was.  but again, I'm willing to sign an order that makes it
10  clear that this Court is not standing in the way of anyone
11  who has a right to prosecute such a claim, and that the
12  estate has -- I don't know what the appropriate word is to
13  describe it -- failed to pursue, forfeited -- however
14  counsel can work that out -- the right to pursue it, here in
15  the bankruptcy court.
16          I think, with respect to the stay issue, I think
17  whatever paragraphs are built into an order -- I don't want
18  to make a declaration that 362 doesn't bar the commencement,
19  but I would be willing to say, to the extent the stay does
20  apply, it's lifted, solely to permit the commencement of
21  such litigation.  But I would like the memorialization,
22  until further order of this Court -- and I'll tell you why
23  in a moment -- that no litigation should be pursued or
24  prosecuted, because I am concerned about whether there would
25  be implications with respect to any decision I might make in

1   connection with confirmation of a plan, and I want to

2   reserve, to myself and to the parties who have objected to

3   confirmation, to make whatever arguments they have to make

4   without being hampered by an order that I'm entering here.

5   I don't mean to dispose of any of those rights.

6            The bridge lenders proposed order was more

7   specific in terms of reserving rights, specifically in their

8   proposed paragraph seven, I think you added there eight.

9   And I think that covers the extent of the relief that's been

10  requested.  And any objections that have been raised, I now

11  overrule, again subject to not impairing anybody's right to

12  assert a confirmation objection.

13           Now, are there any questions?

14  (No audible response)

15           THE COURT:  Shocking.  I haven't been that clear

16  in weeks.

17  (Laughter)

18           THE COURT:  Okay.  What I'll do, for calendar

19  purposes, is continue the hearing on this motion to the

20  April 11 date, which is the resumption of the confirmation

21  hearing, but we'll expect, in the interim, that counsels

22  should be able to confer and submit, hopefully within the

23  next week or so, a proposed form of order, with a disk,

24  please.  Any questions about that?

25           MR. ALBERTO:  Your Honor, no questions.  Thanks

1  very much.  I don't have any interest in this matter, if I

2  could be excused.

3          THE COURT:  Certainly.

4          MR. ALBERTO:  Thank you.

5          THE COURT:  Okay.  We'll take just a five-minute

6  break, and I'll -- we'll finish what's on the agenda.

7  (Recess at 12:10 p.m. to 12:17 p.m.)

8          THE CLERK:  All rise.  Please be seated.

9          THE COURT:  Did you address number 21 on the

10 agenda?

11         MR. KANSA:  Your Honor, Ken Kansa from Sidley

12 Austin.  We did skip over item 21, which was the 44th

13 omnibus objection, inadvertently.  The only matter we had,

14 going forward on that point, was a status conference with

15 respect to the claim of Ms. Carol Walker [ph].  The -- we

16 spoke with Ms. Walker on Friday, and she has agreed to

17 continue to her claim, to the best of our knowledge, or we

18 agreed to continue our objection, and she agreed to our

19 continuance.  So as a result, we are not proposing to go

20 forward with the status conference on that today.  We also

21 had a response, at the end of the day yesterday, from

22 Software AG --

23         THE COURT:  I saw it this morning.

24         MR. KANSA:  And we have agreed to continue the

25 objection with respect to that claim as well.  We will

1    submit a revised form of order under certification of

2    counsel.

3              THE COURT:  Okay.  Thank you.

4              MR. KANSA:  Thank you, Your Honor.

5              THE COURT:  Okay.  Let's turn, lastly, to the

6    debtors' motion concerning advancement of defense costs.

7    Let me ask first, though.  Is the committee still pressing

8    its position?

9              MR. SEIFE:  Good afternoon, Your Honor.  Howard

10   Seife from Chadbourne & Parke for the committee.  Pressing

11   our position on a request for an adjournment or as to the

12   merits?

13             THE COURT:  Yes.

14   (Laughter)

15             MR. SEIFE:  Yes, we are, Your Honor.

16             THE COURT:  Okay.  Okay.  Let me give you my

17   reaction here.  You know, we face these types of issues all

18   the time.  Now, I haven't read the specific policy, but if

19   what the debtor says here is true, not only is there

20   discreet side A coverage, but a provision which says who

21   gets paid first.  And if that's true, unless -- well, I

22   mean, that, 99 percent of the time, answers the question.

23   So putting aside the alleged need for further discovery,

24   because I know the debtor says why that's not necessary,

25   what's different about this situation that I'm missing here?

BY HAND DELIVERY

Mark D. Collins, Esq.
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Robert S. Brady, Esq.
M. Blake Cleary, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Adam G. Landis, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801

Katharine L. Mayer, Esq.
McCarter & English, LLP
Renaissance Center
405 N. King Street
Wilmington, DE 19801

John H. Strock, III, Esq.
Fox Rothschild LLP
919 N. Market Street, Suite 1300
Wilmington, DE 19801

Thomas G. Macauley, Esq.
Zuckerman and Spaeder LLP
919 Market Street, Suite 990
Wilmington, DE 19801

William P. Bowden, Esq.
Amanda M. Winfree, Esq.
Ashby & Geddes, P.A.
500 Delaware Avenue
Wilmington, DE 19801

Norman L. Pernick, Esq.
J. Kate Stickles, Esq.
Patrick J. Reilley, Esq.
Cole, Schotz, Meisel, Forman
    & Leonard, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Garvan F. McDaniel, Esq.
Bifferato Gentilotti LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801

William D. Sullivan, Esq.
Elihu E. Allinson, III, Esq.
Sullivan Hazeltine Allinson LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801

Scott G. Wilcox, Esq.
Whiteford Taylor Preston LLC
1220 N. Market Street, Suite 608
Wilmington, DE 19801

BY TELEFAX AND FIRST CLASS U.S. MAIL

Donald S. Bernstein, Esq.
Damian S. Schaibe, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Andrew Goldman, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Bruce Bennett, Esq.
James O. Johnston, Esq.
Joshua M. Mester, Esq.
Dewey & LeBoeuf LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90017

Howard Seife, Esq.
David LeMay, Esq.
Chadbourne & Parke LLP
LLP
30 Rockefeller Plaza
New York, NY 10112

James F. Conlan, Esq.
Bryan Krakauer, Esq.
Janet E. Henderson, Esq.
Kevin T. Lantry, Esq.

Jessica C.K. Boelter
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Edward Cerasia, II, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018

Michael A. Henry, Esq.
Gross, McGinley, Labarre & Eaton, LLP
33 S. 7th Street
P.O. Box 4060
Allentown, PA 18105-4060

Graeme W. Bush, Esq.
James Sottile, Esq.
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036

David J. Adler, Esq.
McCarter & English, LLP
245 Park Avenue
New York, NY 10167

Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Brown Rudnick LLP
Seven Times Square
New York, NY 10036

David S. Rosner, Esq.
Richard F. Casher, Esq.
Kasowitz, Benson, Torres & Friedman

1633 Broadway
New York, NY 10019

Daniel H. Golden, Esq.
Philip C. Dublin, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park

New York, NY 10036

Jared D. Zajac, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173-0002

Patrick Theodore Garvey, Esq.
Johnson & Bell, Ltd.
33 W. Monroe, Suite 2700
Chicago, IL 60603