**Hearing Date: June 13, 2011 at 2:00 p.m.**
**Objection Deadline: June 9, 2011 at 8:00 p.m.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

——————————————————————X
In re:                                              :    Chapter 11 Cases
                                                    :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                            :    (Jointly Administered)
                                                    :
                              Debtors.              :    **Related Docket No.**
                                                    :
——————————————————————X

### SUPPLEMENTAL MOTION OF WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES, AND ONE OF NOTEHOLDER PLAN PROPONENTS, <u>CONCERNING THE ADMISSION OF CERTAIN DOCUMENTS</u>

SULLIVAN • HAZELTINE • ALLINSON LLC
William D. Sullivan (Del. Bar No. 2820)
William Hazeltine (Del. Bar No. 3294)
901 Market Street, Suite 1300
Wilmington, DE 19801
Telephone:  (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: whazeltine@sha-llc.com

-and-

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Dylan P. Kletter, Esq.
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: dkletter@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES Notes and one of the Noteholder Plan Proponents*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................... iii

PRELIMINARY STATEMENT ..................................................... 1

ARGUMENT ..................................................................... 4

I.    ALL OF THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST
      ARE ADMISSIBLE FOR 9019 CANVASSING PURPOSES ....................... 4

II.   THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST ALL
      FIT WITHIN AT LEAST ONE EXCEPTION TO THE HEARSAY RULE ............. 5

      A.    The Disputed NPP Exhibits Are Admissible for the Truth of the Matter Asserted
            Under FRE 807, the Residual Exception to the Hearsay Rule ............. 5

      B.    Disputed NPP Exhibits Are Admissible as Present Sense Impressions ........ 5

      C.    Disputed NPP Exhibits Are Admissible as Business Records .............. 6

III.  CERTAIN OF THE DISPUTED NPP
      DOCUMENTS ARE ADMISSIBLE UNDER 801(d)(2) .......................... 7

      A.    Disputed NPP Exhibits Are Admissible Pursuant to FRE 801(d)(2)(C) ....... 7

            1.    Statements Made By Certain LBO Lenders on Behalf of the Other
                  LBO Lenders Concerning the LBO Transaction Are Admissible ........ 8

            2.    Statements Made By Citibank and Citigroup Concerning the
                  PHONES Trustee Were Implicitly Authorized By the LBO Lenders ..... 9

      B.    Disputed NPP Exhibits Are Admissible Pursuant to FRE 801(d)(2)(D) ....... 9

            1.    Statements Made By Certain LBO Lenders on Behalf of the Other
                  LBO Lenders Concerning the LBO Transaction Are Admissible ....... 10

            2.    Statements Imputed to Citigroup, As Agents for the LBO Lenders,
                  Concerning Citibank's Resignation as Trustee to the PHONES ........ 11

      C.    Disputed NPP Exhibits Are Admissible Pursuant to FRE 801(d)(2)(E) ...... 11

            1.    Statements Made By Certain LBO Lenders on Behalf of the Other
                  LBO Lenders Concerning the LBO Transaction Are Admissible ....... 13

            2.    Statements Made In Furtherance of Blocking and/or Interfering With
                  Citibank's Resignation as Indenture Trustee to the PHONES ........ 15

CONCLUSION.........................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

Baughman v. Cooper-Jarrett,
   530 F.2d 529 (3d Cir. 1976) ....................................................................................... 7

Big Apple BMW, Inc. v. BMW of N. America, Inc.,
   974 F.2d 1358 (3d Cir. 1992) ............................................................................ 9, 10, 11, 12

Data Based Sys. Int'l, Inc. v. Hewlett-Packard Co.,
   2001 WL 1251212 (E.D. Pa. Sept. 26, 2001) ........................................................... 10

In re Fine Paper Antitrust Litig.,
   751 F.2d 562 (3d Cir. 1984) ..................................................................................... 12

In re Spansion, Inc.,
   2009 WL 1531788 (Bankr. D. Del. June 2, 2009) ....................................................... 9

In re Terrorist Bombings of U.S. Embassies in E. Africa,
   552 F.3d 93 (2d Cir. 2008) ..................................................................................... 12

Lightning Lube, Inc. v. Witco Corp.,
   4 F.3d 1153 (3d Cir. 1993) ....................................................................................... 7

Pappas v. Middle Earth Condo. Ass'n,
   963 F.2d 534 (2d Cir. 1992) ..................................................................................... 10

Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.,
   626 F. Supp. 159 (N.D. Ill. 1985) ...................................................................... 10, 12

Rossi v. Standard Roofing, Inc.,
   156 F.3d 452 (3d Cir. 1998) ..................................................................................... 12

United States v. Beech-Nut Nutrition Corp.,
   871 F.2d 1181 (2d Cir. 1989) ..................................................................................... 12

United States v. Brockenborrugh,
   575 F.3d 726 (D.C. Cir. 2009) ................................................................................... 12

United States v. Cruz-Rodriguez,
   541 F.3d 19 (1st Cir. 2008) ................................................................................ 12, 17

United States v. Ellis,
   156 F.3d 493 (3d Cir. 1998) ..................................................................................... 12

United States v. Johnson,
    200 F.3d 529 (7th Cir. 2000) ................................................................. 13

United States v. Kemp,
    500 F.3d 257 (3d Cir. 2007) ................................................................. 11

United States v. McGlory,
    968 F.2d 309 (3d Cir. 1992) ................................................................. 11

United States v. Yarbrough,
    852 F.2d 1522 (9th Cir.) ....................................................................... 13

Yates v. Rexton, Inc.,
    267 F.3d 793 (8th Cir. 2001) ............................................................... 11

Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,
    505 F. Supp. 1190(E.D. Pa. 1980) ............................................... 7, 8, 9, 10

## Rules

Fed. R. Evid. 801(d)(2)............................................................................. 9

Fed. R. Evid. 801(d)(2)(C)............................................................... 2, 7, 8, 9

Fed. R. Evid. 801(d)(2)(D) .................................................................. 2, 9

Fed R. Evid. 801(d)(2)(E)................................................................. 2, 11, 12

Fed R. Evid. 807 .............................................................................. 4, 5, 15

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
————————————————————————X
In re:                              :    Chapter 11 Cases
                                    :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,            :    (Jointly Administered)
                                    :
                  Debtors.          :    **Related Docket No.**
                                    :
————————————————————————X
```

**SUPPLEMENTAL MOTION OF WILMINGTON TRUST
COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE
PHONES NOTES, AND ONE OF NOTEHOLDER PLAN PROPONENTS,
<u>CONCERNING THE ADMISSION OF CERTAIN DOCUMENTS</u>**

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2 billion (generally referred to as the "PHONES Notes") issued in April 1999 by Tribune Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the "Company"), and one of the Noteholder Plan Proponents, by and through its undersigned counsel, hereby respectfully submits this Motion concerning the Admission of Certain Documents cited in the Post-Confirmation Hearing Brief of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES, and in the Noteholder Plan Proponents Post-Trial Brief and Post-Trial Reply Brief, which the DCL Plan Proponents have indicated they object to on hearsay grounds.  In support of this Motion, Wilmington Trust respectfully represents as follows:

<u>PRELIMINARY STATEMENT</u>

Simultaneously herewith, the Noteholder Plan Proponents have submitted a Motion of the Noteholder Plan Proponents to Admit Certain Documents in which Wilmington Trust, as Successor Indenture Trustee for the PHONES Notes and one of the Noteholder Plan Proponents,

has joined (the "NPP Brief"), and to which the Court is respectfully referred. As noted below, Wilmington Trust incorporates herein by reference the arguments made in the NPP Brief and adopts those arguments in full with respect to hearsay objections made to certain documents cited by Wilmington Trust in its Post-Confirmation Hearing Brief.[1] In addition, Wilmington Trust makes additional arguments below with respect to applicable hearsay exceptions to certain documents cited by Wilmington Trust and by the Noteholder Plan Proponents in their Post-Trial Briefs and Post-Trial Reply Brief. These additional arguments relate to documents that are admissible under Federal Rules of Evidence 801(d)(2)(C), (D), and (E).

Wilmington Trust further adopts and incorporates herein the preliminary statement from the Noteholder Brief and the discussion, under the heading Exhibits at Issue, relating to the Evidence Procedure Order (the "Order") and the meet and confer meetings that have occurred. Wilmington Trust notes that, pursuant to the Order, it identified to the DCL Plan Proponents those NPP Exhibits cited in the Wilmington Trust Post-Confirmation Hearing Brief that are offered by Wilmington Trust for the truth of the matter asserted, and as to which the DCL Plan Proponents objected on hearsay grounds.[2]

As with the documents discussed in the NPP Brief, the Disputed NPP Exhibits cited by Wilmington Trust relate to the merits of the LBO Claims, the financial condition of the Company at various periods surrounding the Step One and Step Two Close, the state of mind of

---

[1] All Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the NPP Brief, but to the extent not defined therein, in the Post-Trial Brief of the Noteholder Plan Proponents [D.I. 8932], Post-Confirmation Hearing Brief of Wilmington Trust Company, As Successor Indenture Trustee For the PHONES [D.I. 8931] ("WTC Post-Trial Brief"), or the Post-Trial Reply Brief of the Noteholder Plan Proponents [D.I. 9022].

[2] In its email to the DCL Plan Proponents dated June 2, 2011, Wilmington Trust identified four exhibits, NPP191, NPP 254, NPP 482, and NPP 497, as being offered only for non-hearsay purposes and not for the truth of the contents thereof. Upon further review of those documents and additional research, Wilmington Trust now seeks to offer those four documents for the truth of the contents therein. Wilmington Trust adopts and incorporates the arguments in the NPP Brief that there is no prejudice to the DCL Plan Proponents by this modification since the DCL Plan Proponents will have a full opportunity to respond to this Motion.

2

the LBO Lenders at the time they elected to lend into the LBO, and are otherwise relevant to the "canvassing of the issues" the Court must undertake in connection with its Rule 9019 review of the Proposed Settlement.[3]  Certain of those documents also relate to the delayed resignation of Citibank, N.A. ("Citibank"), an affiliate of Citigroup Global Markets, Inc. ("Citigroup"), and Citicorp North America (collectively, "Citi"), as Indenture Trustee for the PHONES, until after the LBO was completed, notwithstanding Citibank's admitted recognition that its role as Indenture Trustee created a conflict of interest with Citibank's concurrent role as Lead Arranger, or to the alleged lack of good faith by the LBO Lenders which prevents them from enforcing subordination against the PHONES (See WTC Post-Trial Br. at 10-18).

The Disputed NPP Exhibits cited by Wilmington Trust all have the indicia of reliability that is a touchstone of admissibility under the Federal Rules of Evidence.  The NPP Disputed Exhibits were produced by the declarants in response to requests made by the DCL Plan Proponents or the Examiner, and bear bates-stamp pre-fixes demonstrating that the documents were found in, and produced from, the declarant's files.  Virtually all of the Disputed NPP Exhibits are either statements of the DCL Plan Proponents themselves, or statements made by other LBO Defendants (defined below), and all of the Disputed NPP Exhibits contain statements made by representatives of sophisticated commercial entities, concerning matters with respect to which those representatives and entities indisputably were closely involved, and under circumstances where the declarant was strongly incented to provide accurate and truthful information.

---

[3] The Disputed NPP Exhibits cited by Wilmington Trust in ascending order by Disputed NPP Exhibits number is attached to the Declaration of Martin S. Siegel ("Siegel Declaration").

In addition, a number of the Disputed NPP Exhibits cited by Wilmington Trust are emails sent or other statements sent or other statements made by the LBO Lenders who are named defendants in the complaint filed against the LBO Lenders described in the NPP Brief (the "LBO Defendants"). The LBO Defendants Exhibits are probative of the many key issues relating to the LBO Claims described in the NPP Brief.

Finally, as with documents described in the NPP Brief, there is no dispute that certain of the Disputed NPP Exhibits cited by Wilmington Trust are statements of the DCL Plan Proponents, or those of their agents, and are admissible for all purposes, but the DCL Plan Proponents argue that those documents should only be admitted against the declarant, rather than against all DCL Plan Proponents (the "DCL Admissions"). As with the documents described in the NPP Brief, these documents relate to issues material to both the merits of the LBO Claims and the process from which the proposed settlement emerged, and are admissible for all purposes against all DCL Plan Proponents.

## **ARGUMENT**

### I.    **ALL OF THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST ARE ADMISSIBLE FOR 9019 CANVASSING PURPOSES**

Wilmington Trust hereby incorporates by reference the arguments made in § II of the NPP Brief, as if fully set forth herein. As a result, Wilmington Trust asserts that the Disputed NPP Exhibits cited by Wilmington Trust are admissible because they are relevant to the merits of the LBO Claims, as well as the fact-based objections to the DCL Plan contained in the WTC Post-Trial brief (*e.g.* the PHONES are not subordinated to the claims of the LBO Lenders due to their lack of good faith), or the claims asserted in the PHONES Complaint;[4] have sufficient indicia of reliability, as all the documents were produced by one or more of the LBO Lenders or

entities within their control; and would almost certainly be admissible in a merits litigation.  The documents should therefore be admitted for the truth of the matter asserted.

## II.    THE DISPUTED NPP EXHIBITS CITED BY WILMINGTON TRUST ALL FIT WITHIN AT LEAST ONE EXCEPTION TO THE HEARSAY RULE

### A.    The Disputed NPP Exhibits Are Admissible for the Truth of the Matter Asserted Under FRE 807, the Residual Exception to the Hearsay Rule

Wilmington Trust hereby incorporates by reference the arguments made in § III. A. of the NPP Brief, as if fully set forth herein.  As a result, Wilmington Trust asserts that all of the Disputed NPP Exhibits cited by Wilmington Trust are admissible because they are relevant to the merits of the LBO Claims, as well as the fact based objections by Wilmington Trust and the PHONES Complaint; have sufficient indicia of reliability, as all the documents were produced by one or more of the LBO Lenders or entities within their control; and would almost certainly be admissible in a merits litigation on the LBO Claims or the PHONES Complaint.  All such documents should therefore be admitted for the truth of the matter asserted.

### B.    Disputed NPP Exhibits Are Admissible as Present Sense Impressions

Wilmington Trust hereby incorporates by reference the arguments made in § III. B. of the NPP Brief, as if fully set forth herein.  Several of the statements contained in email communications in the Disputed NPP Exhibits cited by Wilmington Trust related to Citibank's resignation as the Indenture Trustee to the PHONES similarly contain explanations of contemporaneous events as observed by the author.  See NPP 2482 ("Nancy and I just spoke with Jack Rodden at Tribune . . ."); NPP 2489 ("Bob Kirschnir [sic] called regarding your inquiry to Karen Forte re: Tribune. Pls call . . ."); NPP 2491 (Tribune executive describing his perception of an email contemporaneously received from Citibank), NPP 2503 ("Pursuant to our

---

[4] See WTC Post-Trial Br. at 10-18.

conversation . . ."); NPP 2505 (Tribune executive describing his perception of an email contemporaneously received from Citibank).  In addition, NPP 284 and NPP 296 are admissible under this exception for the reasons set forth in the NPP Brief.  Accordingly, all such documents should be admitted for the truth of the matter asserted.

## C.      Disputed NPP Exhibits Are Admissible as Business Records

Wilmington Trust hereby incorporates by reference the arguments made in § III. C. of the NPP Brief, as if fully set forth herein.  Several of the email communications in the Disputed NPP Exhibits cited by Wilmington Trust related to Citibank's resignation as the Indenture Trustee to the PHONES also qualify as business records.  See NPP 2481, NPP 2482, NPP 2484, NPP 2490, NPP 2491, NPP 2493, NPP 2494, NPP 2503, NPP 2504, and NPP 2505.  The statements contained in these communications are not idle chatter or were casually made.  Instead, these emails contain official Citibank communications, in its capacity as Indenture Trustee to various debt instruments, including the PHONES.  Specifically, these communications related to Citibank's resignation as Indenture Trustee to the PHONES and were either made directly to Tribune executives or to internal members of the Citibank team charged with responsibility to execute Citibank's failed resignation.  See, e.g., NPP 2481 (Citibank serving notice of resignation to Jack Rodden at Tribune); NPP 2484 (internal Citibank communication concerning resignation); NPP 2490 (Citibank communication to Tribune re-starting resignation process); NPP 2493 (Citibank communication to Tribune agreeing to delay resignation); NPP 2503 (Citibank communication to Tribune advising who at Citibank was primary contact for resignation process); NPP 2504 (Citibank communication to Tribune following up on resignation).  The record further indicates that email was the primary, if not exclusive, means by which Citibank made official communications, either internally and externally, concerning its

resignation as Indenture Trustee to the PHONES.  Similarly, NPP 1070 and NPP 1165 also are admissible as business records.  These statements relate to either an internal communication among representatives of the LBO Lenders (NPP 1070) or a communication made directly to Tribune on behalf of the LBO Lenders (NPP 1165) concerning specifics related to the LBO transaction's structure and terms.  The totality of the record further indicates that communication via email was the predominant means through which the LBO Lenders and Tribune structured the LBO transaction.  Accordingly, all such documents should be admitted for the truth of the matter asserted.

III.    **CERTAIN OF THE DISPUTED NPP EXHIBITS ARE ADMISSIBLE UNDER 801(d)(2)**

A.    **Disputed NPP Exhibits Admissible Pursuant to FRE 801(d)(2)(C)**

Federal Rule of Evidence 801(d)(2)(C) excludes from the definition of hearsay "any statements used against a party which were made by another person authorized by the party to make a statement concerning the subject."  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1198 (3d Cir. 1993).  The authority to speak may represent either express or implied authority. Baughman v. Cooper-Jarrett, 530 F.2d 529, 532 (3d Cir. 1976), cert. denied, 429 U.S. 825 (1976).  Further, "[t]he Advisory Committee Notes to Rule 801(d)(2)(C) make it clear that . . . a statement may be an authorized admission even though it was never communicated to a third party."  Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1190, 1247-48 (E.D. Pa. 1980), rev'd on other grounds, 723 F.2d 238 (3d Cir. 1983).

    1.      **Statements Made By Certain LBO Lenders on Behalf of the Other LBO Lenders Concerning the LBO Transaction Are Admissible**

NPP 236, NPP 632, NPP 1165, NPP 1166 and NPP 2247[5] should be admitted under FRE 801(d)(2)(C) because they concern internal and external authorized statements made by executives for the LBO Lenders concerning the structure and diligence of the transaction. By way of example, in NPP 1165, Ms. Persily, in response to an email from Tribune executive Chandler Bigelow, referred to the LBO Lenders' proposal as "[o]ur proposal" and stated that "[w]e believe that we effectively 'subordinate' the existing bonds by denying them guarantees."[6] There is no evidence that these statements were refuted by representatives of other LBO Lenders who were copied on that correspondence.[7] As demonstrated by NPP 1166, similar authorized communications were also made among the LBO Lenders. Zenith Radio Corp., 505 F. Supp. at 1247-48 (no requirement that statements be made to third parties). The record further reflects that the LBO Lenders made authorized statements concerning due diligence on behalf of the LBO Lenders, such as NPP 632 (communication from Citigroup to Houlihan Lokey concerning solvency due diligence) and NPP 2247 (JPMorgan communiction concerning structure and diligence with Sam Zell). Because these statements were either expressly or implicitly authorized by the LBO Lenders, they should be admitted under FRE 801(d)(2)(C) for their truth as against the LBO Lenders.

---

[5] These documents, and certain other documents cited in this Section III were cited in the NPP Post-Trial Brief or NPP Post-Trial Reply Brief, and not in the WTC Post-Trial Brief. Wilmington Trust makes these arguments, to the extent applicable, on behalf of the Noteholder Plan Proponents.

[6] NPP 1165 (Email dated March 6, 2007 between J. Persily and C. Bigelow, et al.).

[7] A similar circumstance is presented in NPP 236.

### 2.    Statements Made By Citibank and Citigroup Concerning the PHONES Trustee Were Implicitly Authorized By the LBO Lenders

NPP 2484, NPP 2489, NPP 2490, and NPP 2493 also should be admitted under FRE 801(d)(2)(C) because they relate to statements made by Citigroup, as Lead Arranger to the LBO Transaction, and its sister corporation, Citibank, as Indenture Trustee to the PHONES, to interfere with and in fact block Citibank's resignation as Indenture Trustee to the PHONES while the LBO was ongoing, despite Citibank's recognition that its role as trustee created a conflict of interest with Citigroup's concurrent role as Lead Arranger.[8]   To the extent these statements were made by Citibank executives, such statements are imputed to Citigroup as the sister corporation.[9]   See Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1373 (3d Cir. 1992); Zenith Radio Corp., 505 F. Supp. at 1247-48.  Moreover, as Lead Arranger, Citigroup was expressly and implicitly authorized to act on behalf of the LBO Lenders in order to fulfill its duties to facilitate and foster the LBO Transaction.[10]   As a result, these exhibits should be admitted for their truth as against Citigroup and all the LBO Lenders.[11]

### B.    Disputed NPP Exhibits Admissible Pursuant to FRE 801(d)(2)(D)

For reasons similar to subsection (C) above, NPP 236, NPP 632, NPP 1165, NPP 1166, NPP 2247, NPP 2484, NPP 2489, and NPP 2493 also should be admitted under FRE 801(d)(2)(D).  Under subsection (D), the proponent need only establish: (1) the existence of the

---

[8] NPP 2484, NPP 2490, and NPP 2493 concern efforts to block or delay Citibank's resignation.  NPP 2489 concerns efforts by Citigroup executives involved in the LBO Transaction to interfere with the resignation process.

[9] NPP 1335 (Amended and Restated First Step Commitment Letter), at 2 (defining Citigroup to include Citibank, N.A.); Deposition of Robert Kirchner ("Kirchner Dep. Tr.") 26: 2-5 ("Citibank is a subsidiary that has the banking activities.  Citigroup in the parent.").

[10] See, e.g., NPP 439 (Senior Credit Facility, dated May 17, 2007); NPP 666 (Bridge Facility, dated Dec. 20, 2007); NPP 1335 (Amended and Restated First Step Commitment Letter), at ¶2.

[11] As with each exception under FRE 801(d)(2), to the extent the Court determines that these statements are admissible as against only the LBO Lenders, but not all D/C/L plan proponents, the statements are admissible for all

agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the relationship. Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 537 (2d Cir. 1992); Data Based Sys. Int'l, Inc. v. Hewlett-Packard Co., 2001 WL 1251212, at *12 (E.D. Pa. Sept. 26, 2001). In contrast to subsection (C), subsection (D) does not require that the statements were authorized. Big Apple BMW, Inc., 974 F.2d at 1372 (citing to the Advisory Committee Notes concerning the breadth of the exception, stating: "an employer will rarely authorize its employee to make incriminating statements"). Nor must the statement be made to a third party. Zenith Radio Corp., 505 F. Supp. at 1247-48. Moreover, as other courts have stated, because admissibility is not premised on trustworthiness or personal knowledge, evidence under this exception "should be granted freely." Pappas, 963 F.2d at 537.

#### 1.    Statements Made By Certain LBO Lenders on Behalf of the Other LBO Lenders Concerning the LBO Transaction Are Admissible

The statements set forth in NPP 236, NPP 632, NPP 1165, NPP 1166 and NPP 2247 also should be admitted under subsection (D) because: (i) they were made by certain LBO Lenders, acting as agents on behalf of the other LBO Lenders; (ii) were made during the course of the LBO Lenders' active participation in the LBO Transaction; and (iii) are within the scope of that relationship, i.e., they concern the structure, diligence and facilitation of the LBO Transaction. See Prudential Ins. Co. of America v. Curt Bullock Builders, Inc., 626 F. Supp. 159, 166 (N.D. Ill. 1985) (trier of fact could reasonably infer that bank, who had loaned defendant money in conjunction with insurer, was agent of insurer). As a result, to the extent that the Court does not determine that these statements were expressly or implicitly authorized pursuant to subsection

---

purposes on the central issue before the Court: the reasonableness of the settlement and assessing the strength of the claims against the LBO Lenders. In re Spansion, Inc., 2009 WL 1531788, at *3-4 (Bankr. D. Del. June 2, 2009).

(C), these statements are admissible for their truth as against the LBO Lenders pursuant to subsection (D).

### 2.    Statements Imputed to Citigroup, As Agents for the LBO Lenders, Concerning Citibank's Resignation as Trustee to the PHONES

Likewise, NPP 2484, NPP 2489, NPP 2490, and NPP 2493 are further admissible under subsection (D).  As discussed with respect to subsection (C) above, in the present factual context, Citibank acted as an agent for its sister corporation, Citigroup.  Statements made by Citibank executives, therefore, are imputed to Citigroup.  See Big Apple BMW, Inc., 974 F.2d at 1373.  In addition, Citigroup, as a Lead Arranger for the LBO Transaction, acted as an agent to the other LBO Lenders.[12]  The statements, which related to the delay of the admittedly conflicted Citibank to resign as Indenture Trustee for the PHONES until after the LBO closed, effectively sought to shelter the LBO Transaction from independent influences, were within the scope of Citigroup's agency, in that those statements related to the (improper) facilitation and fostering of the LBO Transaction.  See Yates v. Rexton, Inc., 267 F.3d 793, 802 (8th Cir. 2001) (admitting statements under subsection (D) concerning the improper exertion of pressure on employees over the age of 60 to retire).

### C.    Disputed NPP Exhibits Admissible Pursuant to FRE 801(d)(2)(E)

To admit a statement under Rule 801(d)(2)(E), a district court must find, by a preponderance of the evidence: "(1) that a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the

---

[12] See NPP 196 (Citigroup Internal Credit Approval Memorandum for Acting as Lead Arranger and Syndicating Debt, dated February 9, 2007); NPP 439 (Senior Credit Facility, dated May 17, 2007); NPP 666 (Bridge Facility, dated Dec. 20, 2007); NPP 1335 (Amended and Restated First Step Commitment Letter), at ¶2.

conspiracy." United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992); United States v. Kemp, 500 F.3d 257 (3d Cir. 2007) (same).  There is no requirement that the statement be made to another member of the conspiracy.  United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181 (2d Cir. 1989).  Moreover, as a general matter, there is typically no requirement that each member of the conspiracy be involved in or aware of every aspect of the conspiracy or act of their co-conspirators.  United States v. Cruz-Rodriguez, 541 F.3d 19, 30 (1st Cir. 2008).

There can be no dispute that Subsection (E) is applicable in the civil context.  E.g., Rossi v. Standard Roofing, Inc., 156 F.3d 452 (3d Cir. 1998) (parties conspired to drive a competitor out of business); Big Apple BMW, Inc., 974 F.2d at 1374 (parties conspired to violate Sherman Act); In re Fine Paper Antitrust Litig., 751 F.2d 562 (3d Cir. 1984) (conspiracy to "fatten" a bill in connection with a lodestar determination); Prudential Ins. Co. of America, 626 F. Supp. at 167 ("Trier of fact again could reasonably infer that Prudential and the bank were in combination for a common goal" for purposes of FRE 801(d)(2)(E)).

Indeed, there is no requirement that the "conspiracy" at issue be unlawful.  The conspiracy exception applies to parties involved in a lawful "joint venture."  United States v. Brockenborrugh, 575 F.3d 726 (D.C. Cir. 2009) ("Admission, however, is not contingent upon the finding of an unlawful combination . . . despite its use of the word 'conspiracy,' Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise."); see also United States v. Ellis, 156 F.3d 493, 497 (3d Cir. 1998) ("The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment.").

Whether a statement is made "in furtherance" of the conspiracy is a question of fact.  In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 139 (2d Cir. 2008).

Statements that are in furtherance of a conspiracy may relate to prompting further action, reassuring members of the conspiracy of its continued existence, allaying co-conspirators' fears and statements made to keep members abreast of the conspiracy's ongoing activities, as well as statements related to hiding or concealing the conspiracy.  United States v. Yarbrough, 852 F.2d 1522 (9th Cir.), cert. denied, 488 U.S. 866 (1988); United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000).  Moreover, the statement does not have to be made exclusively or primarily to further the conspiracy.  Johnson, 200 F.3d at 533.

### 1.    Statements Made By Certain LBO Lenders on Behalf of the Other LBO Lenders Concerning the LBO Transaction Are Admissible

NPP 136, NPP 191, NPP 225, NPP 236, NPP 254, NPP 296, NPP 297, NPP 399, NPP 414, NPP 462, NPP 482, NPP 497, NPP 501, NPP 632, NPP 1166, NPP 1232, NPP 1256, NPP 1387, NPP 1534, NPP 1821, NPP 1830, and NPP 2247 all are admissible for their truth pursuant to subsection (E) as against the LBO Lenders.  The record is replete with evidence that the LBO Lenders were engaged in a joint venture and worked closely together to structure, price, syndicate, and facilitate the LBO Transaction, shared third-party professionals such as Cahill, Gordon & Reindel and Murray Devine, and conducted joint due diligence.[13]

In fact, JPM asserted the attorney-client/work product and joint defense privileges with respect to communications between the Arrangers and Cahill and Murray Devine.  See Siegel Declaration at ¶ 29 (citing to Davis Polk letter, dated December 17, 2010) (in defense of the assertion of attorney/client privilege, counsel stated: "the Arranger Banks undertook to try to

_____

[13] In addition to the statements at issue, which demonstrates the existence of the LBO Lenders' joint venture, the record contains voluminous other admitted evidence to establish such a joint venture or common objective.  See, e.g., NPP 439 (Senior Credit Facility, dated May 17, 2007); NPP 666 (Bridge Facility, dated Dec. 20, 2007); NPP 1335 (Amended and Restated First Step Commitment Letter); see also NPP 782 (Exam'rs Rpt.), Vol. I at 606-621 (discussing LBO Lenders' joint due diligence); NPP 782 (Exam'rs Rpt.), Vol. I at 160 n.612 (Lead Banks collectively were represented by Cahill, Gordon & Reindel).

reach the correct conclusion regarding *their* funding obligation . . . that *they* authorized *their* outside counsel to retain a solvency expert . . . . The Arranger Banks believed that reaching a correct conclusion as to *their* obligation to fund would avoid litigation, and that an incorrect conclusion could create exposure for *them*.") (emphasis added.); <u>see</u> <u>also</u> NPP 910 at ¶3(d) (asserting a common interest privilege with respect to documents shared between and among the "other lenders, arrangers, and syndication agents under the May 17, 2007 credit agreement . . . during all relevant time periods."). The Examiner also commented on this joint defense claim as well. <u>See</u> NPP 782 (Exam'rs Rpt.), Vol. II at 337 ("The Examiner did not have an opportunity to pursue whether or to what extent the deliberations that the Lead Banks engaged in during the fall of 2007 actually are protected attorney-client communications or are really business discussions among principals, masquerading as communications to and from counsel and financial advisors."). Indeed, the record suggests that the LBO Lenders continued to maintain their united front during these proceedings. <u>See</u> NPP 782 (Exam'rs Rpt.), Vol. II at 337 ("Moreover, without casting aspersions, in their testimony to the Examiner, witnesses for the Lead Banks tended to speak from the same script in discussing key events as well as their activities during the months preceding the Step Two Closing."). The record further establishes that the LBO Lenders pursued their common objective to profit from the LBO Transaction even though they were aware that the transaction's structure would render Tribune insolvent.[14]

The statements at issue here were in furtherance of the LBO Lenders common objective. By way of example, NPP 399, NPP 462, NPP 1256, and NPP 1387 all pertain to requests for credit approval by various of the LBO Lenders to take part in the LBO Transaction, which were necessary for their participation in the venture. Similarly, NPP 191, NPP 225, NPP 236, NPP

---

[14] <u>See</u>, <u>e.g.</u>, NPP 782 (Exam'rs Rpt.), Vol. II at IV.(B)(7)(b).

254, NPP 296, NPP 297, NPP 414, NPP 482, NPP 497, NPP 1166, NPP 1232, and NPP 1488 relate to statements by and between the LBO Lenders themselves and with third parties related to the structure of the LBO Transaction and/or their concerns on the existence of the venture in the face of mounting evidence undermining its viability.  Moreover, NPP 1821, which contains Daniel Petrik's handwritten notes of the LBO Lenders' December 2007 call, concerns the status of the venture and how the members of the conspiracy would proceed.  In addition, NPP 202, NPP 1049, NPP 1070, NPP 1165, NPP 1323, and NPP 1488 relate to the fact that the LBO Lenders structured the LBO Transaction to purportedly take advantage of the "equity cushion" provided by the PHONES, and as such, either constitute statements that concern the LBO Lenders' scheme to increase the total debt by taking advantage of the PHONES or relate to statements that reassure the members of the conspiracy that their common objective would survive despite the threat posed by Tribune's declining performance.  As a result, the above-referenced Disputed NPP Exhibits are admissible for their truth as against the LBO Lenders.

### 2. Statements Made In Furtherance of Blocking and/or Interfering With Citibank's Resignation as Indenture Trustee to the PHONES

NPP 2481, NPP 2482, NPP 2484, NPP 2488, NPP 2489, NPP 2491, NPP 2493, NPP 2494, NPP 2496, NPP 2503, NPP 2504, and NPP 2505[15] are admissible because these statements were made in furtherance of the LBO Lenders' common objective – an essential component of which was to conceal the disastrous effects of the transaction from Tribune's creditors, including holders of the PHONES.  From the outset, however, those documents establish that Citibank recognized that its concurrent role as trustee to the PHONES and Citigroup's involvement in the

---

[15] To the extent the Court determines that NPP 2481, NPP 2482, NPP 2488, NPP 2491, NPP 2494, NPP 2496, NPP 2503, NPP 2504, and NPP 2505 were not in furtherance of the conspiracy, these documents greatly assist in the understanding of the conspiracy and therefore should be admitted, in the alternative, pursuant to FRE 807 because the statements would otherwise constitute party admissions at trial, and are material and probative of the issues.

LBO Transaction created a conflict of interest that required Citibank's resignation and the appointment of an independent successor trustee.[16]  These documents also show that, to delay the appointment of an independent successor until after the LBO closed, and in furtherance of their venture, high level executives at Citibank and/or Citigroup, working in conjunction with Tribune executives, interfered with and blocked Citibank from resigning as trustee to the PHONES during the pendency of the LBO Transaction.

The statements in the above-referenced exhibits relate to internal statements between and among Citibank and Citigroup executives, as well as communications between these entities and executives at Tribune.  By way of example, NPP 2491 concerns an exchange between Citibank executives and Tribune that Tribune will "communicate with [Citi] at a higher level that they should back off until the [LBO Transaction] is announced."[17]  Similarly, NPP 2490 and NPP 2493 contain statements related to Citibank's agreement to postpone its resignation in deference to the LBO Transaction.  In addition, NPP 2484 and NPP 2489 further demonstrate interference on the part of high-level Citibank and Citigroup executives with Citibank's resignation process.

There is no plausible, legitimate reason why Citibank's resignation had to be deferred for over a year and a half during the pendency of the LBO Transaction, other than to further completion of the LBO.  In fact, as of March 8, 2007, Tribune had already "verbally awarded the [trustee] business to [Deutsche Bank]" several weeks prior and their in house counsel, David Eldersveld, had already prepared the draft legal documents.[18]  Instead, blocking the appointment of a successor trustee averted the risk that such successor may not have sat idly by, as Citibank did, as the disastrous LBO Transaction unfolded.  Further, it is irrelevant whether the other LBO

---

[16] NPP 2502 (Email dated Jan. 4, 2007 from R. Kirchner to J. Ojea-Quintana, *et al*.).

[17] NPP 2491 (Email dated March 8, 2007 from J. Rodden to C. Bigelow).

Lenders were aware of, or participated in, Citigroup's efforts to interfere with and block Citibank's resignation.  It is simply sufficient that the LBO Lenders were members of the same conspiracy and that Citigroup's actions and statements were in furtherance of such venture.  See Cruz-Rodriguez, 541 F.3d at 30 (no requirement that each member of the conspiracy be involved in or aware of every aspect of the conspiracy or act of their co-conspirators).  As a result, NPP 2481, NPP 2482, NPP 2484, NPP 2488, NPP 2489, NPP 2491, NPP 2493, NPP 2494, NPP 2496, NPP 2503, NPP 2504, and NPP 2505 should be admitted for their truth as against the LBO Lenders.

## **CONCLUSION**

For the reasons stated herein, and in the NPP Brief, all of the Disputed NPP Exhibits should be admitted in evidence for all purposes.

---

[18] NPP 2491 (Email dated March 8, 2007 from J. Rodden to C. Bigelow).

Respectfully submitted,

Date:    June 6, 2011
         Wilmington, Delaware

SULLIVAN • HAZELTINE • ALLINSON LLC

*/s/ William D. Sullivan*
_____
William D. Sullivan (Del. Bar No. 2820)
William Hazeltine (Del. Bar No. 3294)
901 Market Street, Suite 1300
Wilmington, DE 19801
Telephone:  (302) 428-8191
Facsimile: (302) 428-4195
Email: bsullivan@sha-llc.com
Email: whazeltine@sha-llc.com

-and-

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
Gordon Z. Novod, Esq.
Dylan P. Kletter, Esq.
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: gnovod@brownrudnick.com
Email: dkletter@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES Notes and one of the Noteholder Plan Proponents*

8298924