# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Cases No. 08-13141 (KJC)<br>Jointly Administered |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY,<br><br>Plaintiff,<br>v.<br><br>DENNIS J. FITZSIMONS, *et al.*,<br><br>Defendants. | Adversary Proceeding No. 10-54010 (KJC)<br><br>**Hearing Date: July 26, 2011 at 1:00 p.m.**<br>**Objection Deadline: July 19, 2011 at 4:00 p.m.** |

## SECOND MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR EXTENSION OF TIME TO COMPLETE SERVICE

The Official Committee of Unsecured Creditors (the "Committee") of Tribune Company in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors") hereby moves this Court for the entry of an Order pursuant to Rule 4(m) of the Federal Rules of Civil Procedure ("Rule 4(m)"), made applicable to this proceeding pursuant to Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure, extending the time to complete service on defendants in the above-captioned adversary proceeding, and respectfully submits as follows:

### BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate

their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. By order dated October 27, 2010 (the "Standing Order"), the Court granted the Committee standing to commence adversary proceedings on behalf of the Debtors' estates asserting claims, against various parties, that arise out of or in connection with the Debtors' 2007 LBO transaction (the "LBO Transaction"). The Standing Order imposed an immediate stay on the adversary proceedings filed by the Committee. However, the Court also granted the Committee limited relief from the stay so that the Committee could commence immediately the discovery activity and service necessary to preserve all valuable claims of the Debtors' estates.

3. Pursuant to the Standing Order, the Committee filed two adversary proceedings. The Complaint filed in this adversary proceeding asserts claims against directors, officers, solvency firms, shareholders, and others (the "Third-Party Complaint"). The Complaint filed in *Official Committee of Unsecured Creditors v. JPMorgan Chase Bank, N.A., et al.*, Adversary No. 10-53963 (KJC), asserts claims against the Debtors' lenders, certain financial advisors, and others (the "Lender Complaint" and together with the Third Party Complaint, the "Complaints"). The Committee filed the Complaints on November 1, 2010 and filed amended Complaints on December 7, 2010.

4. The amended Third-Party Complaint names as-yet-unidentified defendants as Does 1-25, and also identifies representative class defendants on behalf of a class of defendants who are former shareholders of Tribune (the "Shareholder Class"). The Committee named more than 28,000 shareholder defendants in Exhibit A to the Amended Third-Party Complaint, but many have since been, or have yet to be, identified. The Committee has pleaded

the elements necessary to establish a defendant class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

5. To preserve claims worth billions of dollars to the Debtors' estates in the event that the defendant class is not certified, the Committee has also undertaken extensive efforts (a) to specifically identify the Doe defendants and each member of the Shareholder Class and (b) to serve the amended Third-Party Complaint on each and every defendant and each member of the Shareholder Class that the Committee has identified to date. The Committee intends to proceed to serve defendants that are identified by the Committee's ongoing discovery efforts. The Committee's discovery and service efforts are described more fully in paragraphs 11-16 below. While the Committee believes that the grounds for class treatment of defendants in this proceeding are strong, the current discovery and service activity is essential to ensure that claims worth billions of dollars are not lost, should this Court later determine that a defendant class is inappropriate.

6. In order to facilitate this discovery process, the Committee filed its original Motion for an Extension of Time to Complete Service on December 9, 2010 [D.I. 69]. Therein, the Committee requested an additional six months, until September 1, 2011, to serve both the Lender and Third-Party Complaints. The Court granted the Committee's motion on January 11, 2011 [D.I. 78].

7. The Committee's effort to discover and serve all defendants and defendant class members in the Complaints has proceeded more slowly than anticipated. With regard to the this action, despite its diligent efforts, the Committee is unlikely to obtain all remaining useful information regarding the beneficial owners of Tribune stock who received proceeds from the LBO Transaction, and to serve the tens of thousands of defendants identified thereby, by

September 1, 2011.¹ Absent the relief sought by this Motion, valuable claims against unserved defendants may be subject to dismissal and applicable statutes of limitations may run out with respect to particular claims against as-yet-unidentified defendants. Such an outcome would be contrary to the interests of the Debtors' estates, the very interests served by the provision in the Standing Order that allowed the Committee to begin the discovery that it continues to pursue.

## RELIEF REQUESTED

8. By this Motion, the Committee respectfully requests that the Court enter an Order extending the time to effectuate service under Rule 4(m) by six months, to and including March 1, 2012, in order to facilitate the service of tens of thousands of identified defendants and the identification, notification and/or service of all as-yet-unidentified defendants as described in paragraph 4.

## BASIS FOR RELIEF

9. Rule 4(m) of the Federal Rules of Civil Procedure provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Accordingly, this Court must first determine whether good cause exists for failure to serve. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). If good cause exists, this Court must extend the time for service pursuant to Rule 4(m). *Id.* If good cause does not

---

¹ The Committee has also experienced delays and complications in its efforts to serve the Lender Complaint on all members of the defendant classes identified therein. As a result, the Committee is concurrently filing its Second Motion for an Extension of Time to Complete Service in Adversary Proceeding No. 10-53963 (KJC). Given the current status of the plan confirmation process, the Committee believes that it makes sense to keep the two adversary proceedings on the same service track.

exist, this Court has discretion either to dismiss the complaint without prejudice or to extend the time for service. *Id.; see PCT v. New England Confectionary Co. (In re Fleming Cos.)*, No. 05-78096, 2005 WL 1062476, at *1 (Bankr. D. Del. Apr. 20, 2006) (Carey, J.).

10. The Committee makes this request in good faith and for the good cause as set forth more fully below.

11. From the time the Court granted the Committee standing, the Committee has undertaken an intensive effort to discover the identities of the Doe defendants and the Shareholder Class members. That effort continues.

12. The discovery effort to identify the members of the Shareholder Class in has been extensive. To date, the Committee has issued over 1,600 subpoenas to three main categories of entities: (1) banks and brokers (i) that held Tribune shares for their own benefit and/or in "street name" for beneficial owners, and (ii) that received distributions from Tribune at one or both steps of the LBO Transaction and passed proceeds on to the beneficial owners; (2) institutional investment managers that the Committee determined were likely to have received proceeds from the LBO Transaction, or managed accounts for clients who received such proceeds; and (3) mutual funds that the Committee determined held shares on or about the time of one or both steps of the LBO Transaction and thus were likely recipients of proceeds from the LBO Transaction (collectively the "Subpoenaed Parties").

13. The identification of all of the Doe defendants and Shareholder Class members is an ongoing and time-consuming process for several reasons:

> First, many Subpoenaed Parties were not responsive, and the Committee has undertaken a time-consuming process of both individually and collectively following-up with unresponsive parties in an effort to obtain the information consensually. Most recently, in May 2011, the Committee sent out separate letters to (a) those Subpoenaed Parties that had not provided any response and (b) those Subpoenaed Parties that had objected to the

subpoenas without providing any substantive information. That effort has resulted in the production of additional information, but also created additional obstacles.

Second, many Subpoenaed Parties have multiple, similarly named affiliates or partnerships at different addresses, and thus the Committee has had to re-issue subpoenas as it has identified the entities possessing the sought beneficial owner information. With each new wave of productions, additional misidentified parties come to light.

Third, many Subpoenaed Parties that have indicated an intent to comply with the subpoenas have been unable to do so in timely fashion. For example, certain parties maintain computerized records of trades linked to client account numbers, but can only link those client numbers to shareholder contact information through manual and paper processes. Other parties have provided partial, incomplete, or unintelligible information to the Committee. To address and attempt to resolve such issues, the Committee has established individual lines of communication over several months with hundreds of different Subpoenaed Parties. Moreover, a number of parties that initially indicated that they would produce documents later opted to object to the subpoenas.

Fourth, a number of the Subpoenaed Parties have asserted that state privacy laws preclude disclosure of client contact information absent client consent, and their compliance with the subpoenas has been delayed by efforts to seek client consent or the need for the Committee to move to compel compliance. Similarly, many of the Subpoenaed Parties have insisted on disclosing the subpoenaed information only pursuant to a confidentiality agreement. The Committee has entered into over 100 separate agreements in an effort to accommodate these requests. Many of those agreements had to be separately negotiated to address particular concerns of individual Subpoenaed Parties.

14. The Committee has been successful in obtaining from hundreds of entities—roughly two thirds of the Subpoenaed Parties—information identifying beneficial owners of Tribune stock who received proceeds from Step One and/or Step Two of the LBO Transaction. When it filed its original extension motion in December 2010, the Committee had identified over 28,000 putative Shareholder Class members (as reflected in Exhibit A to the amended Third-Party Complaint). Since that time, the Committee has identified over 11,000 additional members of the putative Shareholder Class.

15. However, a third of the Subpoenaed Parties still have not fully responded to the subpoenas. Some have simply ignored the Committee's communications, and many more have chosen to rest on their objections to the subpoenas or stated that they will not produce

information absent a court order. The Committee explored the feasibility of filing hundreds of motions to compel production in dozens of jurisdictions, and decided instead to proceed via limited document requests pursuant to Rule 34 of the Federal Rules of Civil Procedure. On June 30, 2011, the Committee served these requests on over 200 parties that have not yet produced the information requested by the subpoenas.

16. Additionally, several Subpoenaed Parties, who collectively possess information about the recipients of hundreds of millions of dollars of Tribune LBO proceeds, consider a contractual confidentiality agreement with the Committee insufficient and have asked the Committee to attempt to obtain a protective order before they will provide a substantive response to the subpoena. The Committee has communicated to these parties the Court's clear preference that the adversary proceedings be conducted publicly and that discovery not be excessively cloaked in confidentiality. However, so that it may timely obtain the important Shareholder Class member information, the Committee will shortly file a motion for a protective order to clear the way for production.

17. An extension of the service deadline to March 1, 2012 will permit the Committee to serve the nearly 40,000 Shareholder Class members identified so far, as well as additional, as yet unidentified members of the Shareholder Class and Doe defendants. The likelihood that the Committee will obtain the additional information necessary to properly identify and serve all defendants, combined with the time required to serve tens of thousands of these defendants, warrants extension of the service deadline beyond September 1, 2011.[2]

---

[2] In addition, because the stay in the adversary proceedings remains in effect, the Committee is currently unable to include in its summonses all information required by Local Rule 7004-2, including the complaint response date and the pretrial conference date. Accordingly, the Committee intends to send a second summons to all defendants once

## APPLICABLE AUTHORITY

18. Courts recognize that, in certain situations, the identity of a defendant may not be known prior to the filing of a complaint. In such circumstances, courts permit the naming of fictitious ("Doe") defendants as stand-ins until the defendants can be identified through discovery. *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998); *see also Alston v. Parker*, 363 F.3d 229, 233 & n.6 (3d Cir. 2004) (discussing cases authorizing a plaintiff to undertake discovery to identify as-yet-unidentified defendants).

19. In order to complete the discovery necessary to identify and serve the Shareholder Class members, the Committee is seeking an extension of its deadline to serve defendants under Rule 4(m).

20. In the Third Circuit, Rule 4(m) requires a court to extend time for service where a plaintiff demonstrates good cause. *McCurdy v. Amer. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998); *Petrucelli*, 46 F.3d at 1308.

21. Good cause is analyzed under an excusable neglect standard, which requires that the plaintiff demonstrate "good faith and some reasonable basis for noncompliance within the time specified by the rule." *Cain v. Abraxas*, 209 Fed. Appx. 94, 96 (3d Cir. 2006) (citing *MCI Telecom. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)); *In re Lenox Healthcare, Inc.*, 319 B.R. 819, 822-823 (Bankr. D. Del. 2005); *see also In re Hall*, 222 B.R. 275, 279 (Bankr. E.D. Va. 1998) (holding that "a showing of diligence and reasonable effort to effect service" constitute "good cause" under Rule 4(m)).

---

(Cont'd from previous page)

the stay expires to notify them of the timing of their initial obligations. The time needed to take this significant additional step further supports the extension in the service period to March 1, 2012.

22. Taking all relevant circumstances into consideration, courts should extend the time to serve when "counsel exhibits substantial diligence, professional competence and good faith." *In re Lenox Healthcare*, 319 B.R. at 822 (citing, *inter alia*, *Consolidated Freightways Corp. v. Larson*, 827 F.3d 916, 919-20 (3d Cir. 1987)); *see also Arroyo v. Wheat*, 102 F.R.D. 516, 518 (D. Nev. 1984) ("Congress intended that a plaintiff who had made reasonable efforts to effect service would be permitted additional time, if needed.") (citing cases finding "good cause" in the absence of "dilatory or willful delay" and where plaintiff's efforts were "bona fide").

23. As described above, the Committee has pursued discovery from over 1,600 parties in possession of information likely to lead to the identification of the Shareholder Class and Doe defendants. The information obtained through those efforts allowed the Committee to amend its Third-Party Complaint, and continues to bring the Committee closer to fully identifying the remaining Doe defendants and Shareholder Class members. The Committee believes that its ongoing correspondence with Subpoenaed Parties, its recently issued Rule 34 discovery requests seeking the same information, and the soon to follow Motion for a Protective Order, will allow it to complete this task before March 1, 2012. In addition, the Committee is diligently working to serve all identified defendants. All of these reasons establish good cause for an extension of the deadline to name and serve the Doe and Shareholder Class defendants.

24. Courts in this Circuit have held, pursuant to Federal Rule of Civil Procedure 15(c), that if an extension of the Rule 4(m) time period has been granted and a plaintiff, within that extended period of time, notifies a previously unnamed defendant of the plaintiff's intention to include that person as a defendant in the action, a later amendment of the complaint to specifically name the defendant will relate back to the date of filing of the original

complaint, so that the claim will be timely if the original complaint was filed within the applicable limitations period. *See In re Fleming Cos.*, 2005 WL 1062476, at *1; *Allen v. Nat'l RR Passenger Corp. (Amtrak)*, No. 03-CV-3497, 2004 WL 2830629, at *8 (E.D. Pa. Dec. 7, 2004) (holding that "notice of the matters raised in the amended pleading within the applicable [Rule 4(m)] time limit generally eliminates the prejudice a party may experience" and therefore an order extending the Rule 4(m) 120-day period effectively "extend[s] the time period for which notice could be provided to defendant pursuant to Rule 15(c)(3).").

25. Accordingly, the potential prejudice that the Committee might suffer as described in Paragraph 7 can be avoided with the entry of a Rule 4(m) order extending the time for service.

26. Finally, because this adversary proceeding has been stayed, and is likely to be stayed further until the Court enters a confirmation order, no defendant will be prejudiced by receiving formal notice of the adversary proceeding after September 1, 2011. Indeed, the claims against certain members of the Shareholder Class may be obviated by the confirmation order.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court enter an Order extending the time to effectuate service by six months, to and including March 1, 2012.

Dated: July 8, 2011
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Adam G. Landis*
Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
**ZUCKERMAN SPAEDER LLP**
1800 M Street, Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Counsel to the Official Committee of Unsecured Creditors*