## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: August _4_, 2011<br>Hearing Date: *Only if Objections Are Filed* |

### TENTH QUARTERLY FEE APPLICATION OF McDERMOTT WILL & EMERY LLP AS SPECIAL COUNSEL TO DEBTORS FOR DOMESTIC LEGAL MATTERS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 1, 2011 THROUGH MAY 31, 2011

| | |
|---|---|
| **Name of applicant:** | McDermott Will & Emery LLP |
| **Authorized to provide professional services to:** | Tribune Company, et al. |
| **Date of retention:** | March 13, 2009 nunc pro tunc to December 8, 2008 |
| **Period for which compensation and reimbursement is sought:** | March 1, 2011 to May 31, 2011 |
| **Amount of compensation sought as actual, reasonable and necessary:** | $1,987,295.50 (80% of which is $1,589,836.40) |
| **Amount of expense reimbursement sought as actual, reasonable and necessary:** | $89,002.31[1] |

This is an: __ monthly    _X_ interim    ___ final application

---

[1] McDermott Will & Emery LLP ("McDermott") incurred actual expenses of $89,029.61. Due to an inadvertent expense submission in McDermott's seventh quarterly fee application, McDermott has reduced the amount of expense reimbursement sought by $27.30 as reflected in its March 2011 fee statement. Thus, McDermott actually seeks reimbursement of expenses in the amount of $89,002.31 ($89,029.61 - $27.30).

Prior Interim Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 4/15/09[2] | 1029 | 12/8/08 – 2/28/09 | $530,504.50[3] | $6,808.20 | $416,077.00 | $1,489.70 |
| 10/9/09 | 2313 | 3/1/09 – 5/31/09 | $839,465.00 | $3,883.93 | $838,826.50 | $3,631.33 |
| 12/11/09 | 2820 | 6/1/09 – 8/31/09 | $365,485.00 | $1,312.70 | $352,935.92 | $1,254.30 |
| 6/11/09 | 4761 | 9/1/09 – 11/30/09 | $362,715.50 | $2,425.85[4] | $[____] | $[____] |
| 6/30/10 | 4907 | 12/1/09 – 2/28/10 | $819,588.00 | $1,776.95[5] | $[____] | $[____] |
| 9/3/10 | 5622 | 3/1/10 – 5/31/10 | $439,490.50 | $1,892.73 | $[____] | $[____] |
| 10/27/10 | 6151 | 6/1/10 – 8/31/10 | $716,188.50 | $4,885.44 | $[____] | $[____] |
| 2/7/11 | 7819 | 9/1/10 – 11/30/10 | $1,153,555.00 | $13,621.43 | $[____] | $[____] |
| 6/20/11 | 9285 | 12/1/10 – 2/28/11 | $1,560,114.00 | $17,757.01 | $[____] | $[____] |

---

[2] The Combined Monthly and First Quarterly Application combined McDermott's monthly fee statements and quarterly fee application for the period of December 8, 2008 through February 28, 2009.

[3] By agreement with the above-captioned debtors and debtors in possession (the "Debtors"), McDermott reduced its compensation sought by $110,867.50 due to an inadvertent overpayment by the Debtors. Such reduction was to respond to the United States Trustee's (the "U.S. Trustee") comments regarding McDermott's Combined Monthly and First Quarterly Application. The U.S. Trustee and McDermott (together, the "Parties") agreed that McDermott would not seek payment of the disputed fees, in the amount of $110,867.50 (the "Disputed Fees"), at that time. The Parties agreed, however, that McDermott reserved its right to seek payment of the Disputed Fees at a later time.

[4] Due to an inadvertent expense submission in the Second Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period March 1, 2009 Through May 31, 2009, McDermott reduced the amount of expense reimbursement sought in its October fee application by $250.00. Thus, McDermott actually sought reimbursement of expenses in the amount of $2,175.85 ($2,425.85-250.00).

[5] Due to an inadvertent expense submission in the Third Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period June 1, 2009 Through August 31, 2009, McDermott reduced the amount of expense reimbursement sought in its December fee application by $58.40. Thus, McDermott actually sought reimbursement of expenses in the amount of $1,718.55 ($1,776.95-$58.40).

DM_US 29284662-2.020336.0515

## COMPENSATION FOR PROFESSIONALS
## MARCH 1, 2011 THROUGH MAY 31, 2011

| Name of Professional Person | Position of the Applicant, Area of Expertise, Year of Obtaining License to Practice | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Blake D. Rubin | Partner, Tax, Member of Pennsylvania Bar since 1980, Member of District of Columbia Bar since 1987 | $965 | 381.30 | $367,954.50 |
| Philip J. Levine | Partner, Tax, Member of New York Bar since 1975, Member of District of Columbia Bar since 2002 | $895 | 70.80 | $63,366.00 |
| Stephen E. Wells | Partner, Tax, Member of District of Columbia Bar since 1975 | $895 | 12.50 | $11,187.50 |
| Daniel N. Zucker | Partner, Tax, Member of Illinois Bar since 1984 | $885 | 0.30 | $265.50 |
| Jean A. Pawlow | Partner, Tax, Member of District of Columbia Bar since 1989 | $840 | 28.20 | $23,688.00 |
| Paul J. Compernolle | Partner, Employee Benefits, Member of Illinois Bar since 1978 | $810 | 104.00 | $84,240.00 |
| William W. Merten | Partner, Employee Benefits, Member of Illinois Bar since 1985 | $810 | 137.90 | $111,699.00 |
| Susan Peters Schaefer | Partner, Employee Benefits, Member of Illinois Bar since 1989 | $810 | 76.60 | $62,046.00 |
| Andrea M. Whiteway | Partner, Tax, Member of Maryland Bar since 1992, Member of District of Columbia Bar since 1993 | $805 | 362.50 | $291,812.50 |
| Joel M. Bernstein | Partner, Corporate, Member of California Bar since 1971 | $800 | 0.30 | $240.00 |
| Robert A. Schreck, Jr. | Partner, Corporate, Member of Illinois Bar since 1978 | $800 | 0.30 | $240.00 |
| Robin L. Greenhouse | Partner, Tax, Member of District of Columbia Bar since 1988 | $780 | 50.50 | $39,390.00 |
| Geoffrey T. Raicht | Partner, Restructuring & Insolvency, Member of New York Bar since 1998 | $780 | 7.10 | $5,538.00 |
| Brooks B. Gruemmer | Partner, Corporate, Member of Illinois Bar since 1990 | $750 | 15.00 | $11,250.00 |
| Michael J. Wilder | Partner, Tax, Member of District of | $745 | 45.70 | $34,046.50 |

- 3 -

| | | | |
|---|---|---|---|
| | Columbia Bar since 1995 | | | |
| Matthew K. White | Partner, Tax, Member of District of Columbia Bar since 2001 | $745 | 8.20 | $6,109.00 |
| Eric Orsic | Partner, Corporate, Member of Illinois Bar since 1996 | $715 | 3.60 | $2,574.00 |
| Amy M. Gordon | Partner, Employee Benefits, Member of New Jersey Bar since 1991, Member of New York Bar since 1993, Member of Illinois Bar since 2001 | $710 | 7.70 | $5,467.00 |
| Thomas P. Ward | Partner, Tax, Member of Illinois Bar since 1996 | $660 | 1.80 | $1,188.00 |
| Jon G. Finkelstein | Partner, Tax, Member of New York Bar since 2001, Member of District of Columbia Bar since 2002 | $635 | 81.50 | $51,752.50 |
| Michael V. Lee | Partner, Corporate, Member of California Bar since 1994 | $630 | 17.90 | $11,277.00 |
| Nava Hazan | Partner, Restructuring & Insolvency, Member of New York Bar since 2000 | $630 | 4.50 | $2,835.00 |
| Raymond M. Fernando | Partner, Employee Benefits, Member of Illinois Bar since 2002 | $625 | 23.70 | $14,812.50 |
| Ira B. Mirsky | Partner, Employee Benefits, Member of District of Colombia Bar since 2010, Member of New Jersey Bar since 1995 | $625 | 3.50 | $2,187.50 |
| Michael T. Graham | Partner, Employee Benefits, Member of Illinois Bar since 1995, Member of Indiana Bar since 1995 | $625 | 7.00 | $4,375.00 |
| Jamie A. Weyeneth | Partner, Employee Benefits, Member of Illinois Bar since 2000 | $605 | 1.80 | $1,089.00 |
| Jonathan J. Boyles | Partner, Employee Benefits, Member of District of Columbia Bar since 2002, Member of New York Bar since 2001 | $600 | 3.20 | $1,920.00 |
| Ryan D. Harris | Partner, Corporate, Member of Illinois Bar since 2002 | $575 | 2.10 | $1,207.50 |
| Andrew T. Turney | Partner, Corporate, Member of California Bar since 2003 | $535 | 12.70 | $6,794.50 |
| Jeffrey M. Holdvogt | Partner, Employee Benefits, Member of Illinois Bar since 2003 | $500 | 20.50 | $10,250.00 |
| Roy E. Crawford | Counsel, Tax, Member of California | $825 | 6.50 | $5,362.50 |

- 4 -

| | Bar since 1964 | | | |
|---|---|---|---|---|
| Fred Feinstein | Counsel, Corporate, Member of Illinois Bar since 1970 | $745 | 0.50 | $372.50 |
| Luis L. Granados, III | Counsel, Employee Benefits, Member of District of Columbia Bar since 1985, Member of Maryland Bar since 1979 | $730 | 35.90 | $26,207.00 |
| Maureen O'Brien | Counsel, Employee Benefits, Member of Illinois Bar since 1998 | $655 | 0.50 | $327.50 |
| Chad D. Nardiello | Associate, Tax, Member of California Bar since 2003 | $450 | 52.00 | $23,400.00 |
| Timothy S. Shuman | Associate, Tax, Member of Illinois Bar since 2006, Member of District of Columbia Bar since 2007 | $440 | 23.30 | $10,252.00 |
| Daniel S. Fuchs | Associate, Tax, Member of Illinois Bar since 2006 | $415 | 10.20 | $4,233.00 |
| Gale E. Chan | Associate, Tax, Member of California Bar since 2007, Member of District of Columbia Bar since 2008 | $390 | 7.40 | $2,886.00 |
| Patrick J. McCurry | Associate, Tax, Member of Illinois Bar since 2007 | $360 | 202.60 | $72,936.00 |
| Jared D. Zajac | Associate, Restructuring & Insolvency, Member of New York Bar since 2009 | $345 | 130.00 | $44,850.00 |
| Gregory Kopacz | Associate, Restructuring & Insolvency, Member of New York Bar since 2009 | $345 | 10.20 | $3,519.00 |
| Ashley J. McCarthy | Associate, Employee Benefits, Bar Admissions Pending | $345 | 1.30 | $448.50 |
| Andrew Blair-Stanek | Associate, Tax, Member of District of Columbia Bar since 2009 | $335 | 88.80 | $29,748.00 |
| James G. Isaac | Associate, Employee Benefits, Member of Illinois Bar since 2008 | $330 | 2.60 | $858.00 |
| Jeffrey K. Ekeberg | Associate, Tax, Member of Illinois Bar since 2008 | $330 | 0.20 | $66.00 |
| Cole Parker | Associate, Corporate, Bar admission pending | $295 | 6.20 | $1,829.00 |
| Brant A. Newgard | Senior Staff Attorney, Litigation, Member of Illinois Bar since 2005 | $245 | 451.50 | $110,617.50 |
| Nicole LeBeau | Staff Attorney, Litigation, Member | $245 | 536.50 | $131,442.50 |

DM_US 29284662-2.020336.0515

| | | | | |
|---|---|---|---|---|
| | of Illinois Bar since 2005 | | | |
| Quinton McElhaney | Staff Attorney, Litigation, Member of Illinois Bar since 2009 | $245 | 358.10 | $87,734.50 |
| Timothy M. Kennedy | Staff Attorney, Litigation, Member of Illinois Bar since 2000 | $245 | 40.00 | $9,800.00 |
| David Eyman | Contract Attorney | $100 | 76.60 | $7,660.00 |
| Michael Grossman | Contract Attorney | $100 | 72.30 | $7,230.00 |
| William Jackson | Contract Attorney | $100 | 85.00 | $8,500.00 |
| Manoj Khandekar | Contract Attorney | $100 | 75.40 | $7,540.00 |
| Karen Kincaid | Contract Attorney | $100 | 66.40 | $6,640.00 |
| Garth Lewis | Contract Attorney | $100 | 82.60 | $8,260.00 |
| Courtney Lindbert | Contract Attorney | $100 | 87.10 | $8,710.00 |
| Michael Meyer | Contract Attorney | $100 | 77.90 | $7,790.00 |
| Janet Mitchell-Callion | Contract Attorney | $100 | 88.20 | $8,820.00 |
| Hiram Peacock | Contract Attorney | $100 | 82.00 | $8,200.00 |
| Lucia Robinson | Contract Attorney | $100 | 82.10 | $8,210.00 |
| Emily Roschek | Contract Attorney | $100 | 86.10 | $8,610.00 |
| Robert Ryan | Contract Attorney | $100 | 85.70 | $8,570.00 |
| Jaclyn Saper | Contract Attorney | $100 | 87.50 | $8,750.00 |
| Mariateresa Schiappa | Contract Attorney | $95 | 87.80 | $8,341.00 |
| Daniel Soderstrom | Contract Attorney | $100 | 70.50 | $7,050.00 |
| John Tingley | Contract Attorney | $100 | 91.00 | $9,100.00 |
| Andrew VanDyke | Contract Attorney | $100 | 81.10 | $8,110.00 |
| Radhika Veerapaneni | Contract Attorney | $100 | 73.40 | $7,340.00 |
| Dolores Whiters | Contract Attorney | $100 | 88.00 | $8,880.00 |
| Maggie A. Mitchell | Associate Legislative Director | $375 | 2.30 | $862.50 |

- 6 -

| | | | | |
|---|---|---|---|---|
| Daryl Gardner | Technology Project Manager | $330 | 7.80 | $2,574.00 |
| Shirela Patterson | Litigation Support Coordinator | $300 | 0.50 | $150.00 |
| Serge Kernisan | Technology Project Manager | $250 | 91.70 | $22,925.00 |
| Michelle L. Krofel | Professional, Corporate Advisory | $240 | 0.50 | $120.00 |
| Ben Metter | Litigation Technology Project Coordinator | $230 | 1.50 | $345.00 |
| Samantha Kepler | Technology Project Analyst | $230 | 1.00 | $230.00 |
| Tracy Smith | Litigation Paralegal | $225 | 0.50 | $112.50 |
| John Duval | Librarian | $180 | 0.30 | $54.00 |
| Grand Total: | | | 5,189.80 | $1,987,295.50 |
| Blended Rate: | | $382.92 | | |

DM_US 29284662-2.020336.0515

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Cubs Post Closing Matters | 28.00 | $17,219.00 |
| General Employee Benefits Matters | 13.50 | $7,845.00 |
| Welfare Plans | 12.30 | $8,731.50 |
| Non-Qualified Plans | 29.20 | $19,841.00 |
| ESOP | 304.30 | $242,219.50 |
| Corporate/Credit Agreement/Phones | 0.30 | $240.00 |
| Newsday | 292.80 | $111,706.00 |
| Chapter 11 Restructuring | 823.50 | $575,215.50 |
| Perfect Market, Inc. | 2.40 | $1,533.00 |
| All Direct Mail Services, Inc. | 19.50 | $12,397.00 |
| Baltimore Sun Mailers Pension Plan | 13.20 | $7,828.00 |
| Cast TV | 7.20 | $2,236.50 |
| Project Eagle | 27.30 | $18,105.00 |
| 2009 Audit | 3,543.60 | $911,225.50 |
| Project Eagle – Benefits Matters | 54.80 | $39,676.00 |
| Local TV | 17.90 | $11,277.00 |
| **TOTAL:** | 5,189.80 | $1,987,295.50 |

DM_US 29284662-2.020336.0515

**EXPENSE SUMMARY**

| Expense Category | Service Provider | Total Fees |
|---|---|---|
| Photocopy | In-House / Williams Lea Inc. | $484.37 |
| Messenger/Courier | U.S. Messenger & Logistics, Inc. | $10.50 |
| Telecommunications | Conference Plus | $643.00 |
| Computer Research | PACER | $87.36 |
| Express Mail | Federal Express | $43.31 |
| Document Services – Discovery/Image Capturing | Innovative Discovery | $4,714.05 |
| Document Services – Discovery/Image Capturing | Landmark Legal Services | $32,923.74 |
| Document Services – Discovery/Image Capturing | Legal Discovery LLC | $14,959.00 |
| Transportation | | $5,507.70 |
| Computer Hosting Fee for Document Review | In-House | $7,700.95 |
| Usage Charge for Document Review and Production Software | In-House | $21,500.00 |
| Business Meals | | $176.13 |
| Administrative Overtime | In-House | $279.50 |
| **TOTAL** | | $89,029.61 |

DM_US 29284662-2.020336.0515

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: August  4  , 2011 |
| | Hearing Date: *Only if Objections Are Filed* |

### TENTH QUARTERLY FEE APPLICATION OF
### McDERMOTT WILL & EMERY LLP, AS SPECIAL COUNSEL TO
### DEBTORS FOR DOMESTIC LEGAL MATTERS FOR ALLOWANCE OF
### COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
### THE PERIOD MARCH 1, 2011 THROUGH MAY 31, 2011

McDermott Will & Emery LLP ("McDermott"), as Special Counsel for Domestic Legal Matters to the Tribune Company, et al. (the "Debtors"), hereby submits this tenth quarterly application (the "Tenth Quarterly Application") for approval and allowance of compensation for services rendered in the amount of $1,987,295.50 (80% of which is $1,589,836.40) and reimbursement for expenses incurred in the amount of $89,002.31 during the period commencing March 1, 2011 through May 31, 2011 (the "Tenth Quarterly Application Period"). This Tenth Quarterly Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"), the Executive Office of United States Trustees' Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 dated March 22, 1995 (the

"Guidelines"), and the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications dated March 19, 2009 (the "Fee Examiner Order").    In support of this Tenth Quarterly Application, McDermott respectfully represents as follows:

## JURISDICTION

1.    This Court has jurisdiction over this Tenth Quarterly Application pursuant to 28 U.S.C. §§ 157 and 1334.    Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief sought herein are sections 105(a), 330, and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

3.    On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").    On December 10, 2008, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.    On October 12, 2009, Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, Inc. (the "Cubs" and one of the Debtors) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.    On October 14, 2009, the Court entered an order consolidating the Cubs' chapter 11 case with the Debtors' chapter 11 cases for procedural purposes only.

5.    The Debtors have continued in possession of their respective properties and have continued in the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

- 2 -

6.     No trustee has been appointed in these chapter 11 cases.

## McDERMOTT RETENTION

7.     Prior to the Petition Date, the Debtors retained McDermott as general legal counsel and agreed to pay on a monthly basis the reasonable value of services rendered based on McDermott's standard billing rates and pursuant to its standard reimbursement policies.

8.     On March 13, 2009, the Court authorized the employment and retention of McDermott pursuant to sections 105(a) and 327(a) as special counsel to the Debtors for general domestic legal matters, nunc pro tunc to December 8, 2008.

9.     On October 14, 2009, the Court entered an Order Directing (I) Joint Administration of Chapter 11 Cases and (II) That Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. Be Made Applicable to Chapter 11 Case of Chicago National League Ball Club, LLC (the "CNLBC Order") [Docket no. 2333]. Pursuant to the CNLBC Order, McDermott's retention was extended to include the Cubs case.

## PROCEDURAL BACKGROUND

10.     The Compensation Order and the Fee Examiner Order (collectively, the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code must file with the Court and provide to the fee examiner their monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the professional must certify in writing to the Debtors that no objection or a partial

- 3 -

objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection.

11.    Pursuant to the procedures set forth in the Fee Orders, McDermott prepared, filed with the Court, and served upon the Notice Parties and the fee examiner Monthly Fee Applications for the months of March 2011, April 2011, and May 2011,[1] which Monthly Fee Applications are incorporated herein by reference and addressed in this Tenth Quarterly Application.

12.    In addition, beginning with the three-month period ending on February 28, 2009, and for each three-month period thereafter, all professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (each a "Quarterly Fee Application Request").   Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules.   As noted, this Tenth Quarterly Application represents the tenth Quarterly Fee Application Request that McDermott has filed with the Court in connection with these chapter 11 cases, and it covers the period from March 1, 2011 through May 31, 2011.

---

[1] The docket numbers of McDermott's Monthly Fee Applications for March 2011, April 2011, and May 2011 are 9374, 9447, and 9448, respectively.

**RELIEF REQUESTED**

13.     By this Tenth Quarterly Application, McDermott requests that the Court allow the interim allowance and award compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by McDermott as special legal counsel to the Debtors during the Tenth Quarterly Application Period.  Further, McDermott seeks this Court's allowance for payment of such amounts to McDermott, less any amounts previously paid to McDermott pursuant to the Monthly Fee Applications for the Tenth Quarterly Application Period.

14.     During the Tenth Quarterly Application Period, attorneys and paraprofessionals of McDermott have expended a total of 5,189.80 hours in connection with these chapter 11 cases. The reasonable value of services rendered by McDermott to the Debtors during the Tenth Quarterly Application Period is $1,987,295.50.  Such amount is the result of McDermott's normal hourly rates for work of this nature.  To the best of McDermott's knowledge, this Tenth Quarterly Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and the Compensation Order.

**COMPENSATION PAID AND ITS SOURCES**

15.     All services for which compensation is requested by McDermott were performed for or on behalf of the Debtors.

16.     In compliance with Rule 2016, McDermott confirms that during the Tenth Quarterly Application Period, McDermott received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Tenth Quarterly Application, except from the Debtors.  There is no

DM_US 29284662-2.020336.0515

agreement or understanding between McDermott and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

17.    As of the Petition Date, McDermott held a retainer from the Debtors in the amount of $67,777.26.  The Debtors reduced their first payment to McDermott by the amount of the retainer and McDermott drew down on the retainer in connection with the payment pursuant to the Combined Monthly and First Quarterly Application.  Accordingly, McDermott no longer holds any retainer in connection with its retention in these cases.

**SUMMARY OF SERVICES**

18.    The following is a summary of the activities performed by McDermott attorneys and paraprofessionals during the Tenth Quarterly Application Period, organized by project category.

**Matter 0504 – Corporate/Credit Agreement/PHONES**

19.    McDermott provided general legal advice with respect to the retirement of certain financial products the Debtors previously issued to investors.

**Matter 0507 – Newsday**

20.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service, including preparing responses to information document requests and preparing for and conducting discovery in connection thereto.  McDermott further performed an extensive document review in connection with the audit by the Internal Revenue Service and drafted a privilege and production log in connection therewith.  McDermott also prepared documents to be turned over to the Internal Revenue Service in connection with the information document requests.  McDermott further drafted various documents for the Debtors in connection with the audit, including a common interest agreement and a confidentiality agreement.

21.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services.  The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information should be withheld on the basis of a privilege.  Upon the attorney reviewers' completion of the document review, the technology project managers in charge of the e-discovery services (i) separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

### Matter 0515 – Chapter 11 Restructuring/Tax Planning

22.    McDermott provided general tax advice to the Debtors regarding various tax issues related to the Debtors' emergence from bankruptcy.  McDermott advised the Debtors with respect to their corporate structure upon emergence from bankruptcy.  McDermott also researched and advised the Debtors on issues with respect to the treatment of the Debtors' ESOP. McDermott further reviewed the Debtors' emergence workout plan and advised the Debtors on the tax implications of such emergence plan.  McDermott also researched and analyzed various tax issues in connection with the Debtors' plan of reorganization, including the tax consequences of settling certain preferential and fraudulent transfer claims.  McDermott also researched and analyzed various issues relating to the establishment of a litigation trust under a plan of reorganization.  McDermott further assisted the Debtors in revising the language of the Debtors' plan of reorganization.  McDermott also researched and advised the Debtors on tax issues with respect to certain fraudulent transfer claims.  McDermott further advised the Debtors regarding

- 7 -

their submission for a private letter ruling. Finally, McDermott prepared for and attended a mediation session to advise the Debtors with respect to certain tax issues.

### Matter 0515 – Chapter 11 Retention/Fee Application

23.     McDermott gathered and prepared various billing information required to file fee statements pursuant to the Compensation Order and the Guidelines. McDermott also drafted and revised fee statements and quarterly fee applications for submission in accordance with the Compensation Order.

### Matter 0516 – Perfect Market, Inc.

24.     McDermott provided general corporate advice to the Debtors with respect to the Perfect Market transaction.

### Matter 0520 – All Direct Mail Services, Inc.

25.     McDermott advised the Debtors with respect to an asset sale transaction for the Debtors and performed general post closing services with respect to such transaction. McDermott also advised the Debtors with respect to certain state taxation issues in connection with the transaction. McDermott further advised the Debtors with respect to certain issues involving purchase price adjustment with respect to such transaction.

### Matter 0522 – Baltimore Sun Mailers Pension Plan

26.     McDermott provided general corporate advice to the Debtors regarding certain pension plan modifications and reviewed certain plan documents and amendments thereto. McDermott further advised the Debtors with respect to the scope of the modifications of the pension plan.

**Matter 0524 – Cast TV**

27.    McDermott provided general post-closing services to the Debtors with respect to a stock transaction and reviewed certain leases involved in the transaction.

**Matter 0526 – Project Eagle**

28.    McDermott advised the Debtors with respect to a potential confidential transaction.  McDermott analyzed certain transaction structures for the Debtors.  McDermott also reviewed and analyzed certain transaction documents.  McDermott further conducted due diligence in connection with the potential transaction.

**Matter 0527 – 2009 Audit**

29.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service in connection with the Debtors' 2009 taxable year, including preparing responses to information document requests.  McDermott further performed an extensive document review in connection with the audit by the Internal Revenue Service and drafted a privilege and production log in connection therewith.  McDermott also prepared documents to be turned over to the Internal Revenue Service in connection with its information document requests.  McDermott further prepared for and attended a meeting with the Internal Revenue Service with respect to the audit.

30.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services.  The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information should be withheld on the basis of a privilege.  Upon the attorney reviewers' completion of the

- 9 -

document review, the technology project managers in charge of the e-discovery services (i) separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

### Matter 0528 – Project Eagle Benefits Matters

31.    McDermott provided general legal advice regarding benefit programs in connection with a potential confidential transaction.  McDermott reviewed the benefit programs involved in the transaction and advised the Debtors with respect to certain benefit program issues.  McDermott also reviewed and revised the transaction documents with respect to the sections relating to benefit programs.

### Matter 0529 – Local TV

32.    McDermott advised the Debtors with respect to a potential corporate transaction. McDermott drafted various documents for the Debtors in connection with the transaction, including a license agreement.

### Matter 0021 – Cubs Post Closing Matters

33.    McDermott completed general post-closing work relating to the partnership transaction involving the Chicago Cubs baseball team.  McDermott also drafted a submission to an auditor regarding a working capital dispute.  McDermott further drafted various proposals for the settlement of such dispute.  McDermott further reviewed and advised the Debtors with respect to a professional engagement letter.

- 10 -

**Matter 0040 – General Employees Benefits Matters**

34.    McDermott provided general legal advice to the Debtors with respect to the Debtors' benefit plans.  McDermott researched and advised the Debtors on various legal issues, including issues related to withdrawal liability.

**Matter 0041 – Welfare Plans**

35.    McDermott provided general legal advice regarding programs offered by the Debtors to their employees and reviewed and advised the Debtors with respect to certain disclosures in connection with their programs.  McDermott further advised the Debtors with respect to certain procedures for appealing claim rulings.

**Matter 0042- Non-Qualified Plans**

36.    McDermott provided general legal advice regarding certain non-qualified programs offered by the Debtors to their employees.  McDermott also researched and advised the Debtors with respect to certain taxation issues in connection with certain deferred compensation plans.  McDermott further advised the Debtors with respect to certain disclosures to be made in connection with certain non-qualified plans of the Debtors.

**Matter 0047 – ESOP**

37.    McDermott provided general legal advice on issues regarding the Debtors' ESOP. McDermott reviewed and analyzed various strategic issues relating to ongoing litigation and the Debtors' bankruptcy with respect to the Debtors' ESOP and reviewed numerous court pleadings in connection thereof.  McDermott further prepared for and attended a meeting with the Internal Revenue Service and the Department of Labor with respect to the ongoing litigation. McDermott also prepared for and attended a mediation session with respect to the ongoing

- 11 -

litigation. McDermott further conducted research with respect to various modifications and actions the Debtors could undertake in connection with their ESOP.

## ACTUAL AND NECESSARY EXPENSES

38.     McDermott seeks reimbursement of expenses actually and necessarily incurred in connection with the rendition of its services in the amount of $89,002.31. The requested expenses are customarily charged to non-bankruptcy clients of McDermott. Due to the complexity of the Debtors' corporate and financial structure, the Debtors have faced numerous critical and unique issues. In order for McDermott to analyze and address such issues properly, McDermott attorneys may have performed computerized legal research and incurred other expenses during the Tenth Quarterly Application Period, all of which was necessary to further the Debtors' reorganization and in the best interests of the Debtors' estates.

39.     With respect to photocopying expenses, McDermott ordinarily charges all of its clients $.20 per page, but pursuant to Local Rule 2016-2(e), McDermott has charged the Debtors the maximum permitted amount of $.10 per page. With respect to facsimile expenses, in compliance with the Guidelines, McDermott charges $1.00 per page for facsimile transmissions.

40.     In addition, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, certain long distance telephone calls and conference calls may have been required. These charges are intended to cover McDermott's direct operating costs, which costs are not incorporated into the McDermott hourly billing rates. Only clients who actually use services of this type are separately charged for such services.

41.     Further, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, travel may have been required for certain matters.

- 12 -

Typically, such travel expenses are initially borne by the attorney, then reimbursed by the firm and charged to the appropriate client and matter.

42.    The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

43.    To the extent that time or disbursement charges for services rendered or disbursements incurred during the Tenth Quarterly Application Period, but were not processed prior to the preparation of this Tenth Quarterly Application, McDermott reserves its rights to request additional compensation for such services, and reimbursement of such expenses in a future application.

## CONCLUSION

44.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by McDermott is fair and reasonable given (a) the complexity of the legal matters, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under this title.  McDermott has reviewed the requirements of Local Rule 2016-2 and reasonably believes that this Tenth Quarterly Application complies with that rule.

- 13 -

WHEREFORE, McDermott respectfully seeks allowance of the amounts set forth in the Tenth Quarterly Application for the period of March 1, 2011 through May 31, 2011, specifically the amount of $1,987,295.50 (80% of which is $1,589,836.40) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $89,002.31, for a total of $2,076,297.81.

Dated: Washington, District of Columbia
      July 15, 2011

              McDERMOTT WILL & EMERY LLP

              /s/    Blake D. Rubin
              Blake D. Rubin (admitted *pro hac vice*)
              600 13th Street, N.W.
              Washington, D.C. 20005-3096
              Telephone: (202) 756-8424
              Facsimile: (202) 756-8087

              and

              Jared D. Zajac (admitted *pro hac vice*)
              340 Madison Avenue
              New York, NY 10173-1922
              Telephone: (212) 547-5598
              Facsimile: (212) 547-5444

              *Special Counsel for Domestic Legal Matters to Tribune Company, et al.*

- 14-