# EXHIBIT A

# AGREEMENT



**Intelligent Tax Advice**

November 1, 2010

Mr. Patrick M. Shanahan
Vice President Tax
Tribune Company
435 North Michigan Avenue
Chicago, IL 60611

SUBJECT: Sales Tax Consulting Services – Refund Recovery

Dear Mr. Shanahan:

We are pleased to have the opportunity to propose on performing a sales tax recovery study for the Tribune Company and its affiliates, hereinafter referred to as "Tribune" or "Client". The study will involve identifying, quantifying, and collecting on Client's behalf sales and use tax overpayments that it has made during reporting periods from July 2007 through December 2010 to its vendors or taxing jurisdictions. This correspondence describes the scope of the engagement and our fee arrangement. On behalf of True Partners Consulting, LLC, hereinafter referred to as TPC, we appreciate your business and look forward to working with you on this matter.

## Scope of the Refund Recovery

The refund study will involve a detailed review of invoices from targeted vendors, preparation of the necessary documentation to file refund requests with the vendors or taxing jurisdictions, and monitoring and collection of tax overpayments.

## Process

In order to determine whether Client made sales tax overpayments to targeted vendors or taxing jurisdictions for years 2007 through 2010, TPC will perform the following:

- Identify and review invoices from the targeted vendors

- Quantify the overpayment of sales or use tax paid to the targeted vendors or taxing jurisdictions

- Compile a detailed report summarizing the potential refunds

225 West Wacker Drive • Suite 1600 • Chicago, IL 60606 • P: 312.235.3300  F: 312.235.3350  E: Connect@TPCtax.com

Mr. Patrick M. Shanahan
November 1, 2010
Page 2

- Prepare, review, and submit all documents necessary to request refunds from the targeted vendors or taxing jurisdictions

- Monitor refund requests made to the targeted vendors or taxing jurisdictions

- Collect on behalf of Client refund payments made by the targeted vendors or taxing jurisdictions

- Send the refunds, usually payable as credit memos or cash, to Client

In order to complete these procedures and process, TPC asks that it be given access to Client's vendor invoices and be allowed to make copies of all pertinent documents.

**Fees and Billing**

Our fees for pursuing and securing tax refunds from the targeted vendors will be 25% of any and all overpayments (refunds) eligible for credit on account, cash refund, or any other arrangement, (including interest on refunds payable) under which Client is credited by vendors or taxing jurisdictions for overpayment of tax amounts due.

TPC will be entitled to bill for and receive from Client, one-third of its fees upon the filing of claims with the vendors or amended returns with the taxing jurisdiction; however TPC agrees to limit this billing to $75,000 (cumulative for all vendors). The remainder of TPC's fees will be invoiced upon receipt of any refunds or credits that are received from a respective vendor or taxing jurisdiction from which they have been requested; this billing will not occur until the refunds received exceed the limitation as noted immediately above.

TPC's fees will be limited to invoices that are included in any claims filed by TPC as well as any invoices received by the client during the completion of our field work which include sales or use tax invoiced in error which TPC advises the Client not to pay. Unless otherwise agreed to, all field work is to be completed and all claims filed March 31, 2011.

In order to track and account for claims, vendors or taxing jurisdictions will be directed to send refunds (i.e., checks, credit memos) to a designated individual within the Tribune organization. TPC will provide the individual with a complete summary of claims that have been filed and will communicate continuously during the refund recovery process. Client agrees to provide TPC with a copy of any refund checks or credit memos immediately upon receipt; TPC's fee is due upon such receipt by Client. Invoices are to be paid within 45 days of the invoice date.

*Additional Issues*

In the case of vendors whose accounts have been settled under the bankruptcy proceedings for lesser than the full obligation; the TPC's fee will be based on the amount of sales or use tax which is ultimately refunded or credited to the Client.

Mr. Patrick M. Shanahan
November 1, 2010
Page 3

Client can reject any TPC refund idea that Client, in its sole judgment determines is not grounded in law or fact. If refund or credit opportunities are presented to Client, and Client chooses not to proceed immediately with the assistance of TPC, but within three years it decides to seek any refunds or credits identified by TPC during the course of the engagement, all fees that otherwise would be due to TPC under this engagement letter will become due and payable when such claims for refunds or credits are filed.

If Client decides to forego the filing of any of the refund claims or credits identified by TPC, but instead takes action within three years of the date of this engagement letter to secure the refunds identified on a prospective basis, Client agrees to compensate TPC promptly for the services performed at our standard billing rates incurred, not to exceed 25% (percent) of the refunds identified, for the identification of the refundable amounts and computation of the tax overpayments.

If a refund opportunity identified by TPC has been previously identified by an unrelated third party which a Tribune business unit has engaged (within the previous 24 months) prior to the execution of this agreement to provide the same services, TPC agrees it will not pursue the identified refunds at the previously engaged business unit.

\*   \*   \*   \*   \*

We appreciate the opportunity to offer Tribune the tax refund recovery services. We believe that our experience in performing recovery studies is among the very best. Further, our technical expertise will enable us to provide you with outstanding service. If this engagement letter and the General Business Terms accurately set forth our agreement, please sign and date the enclosed copy and return it to my attention at TPC. If you have any questions, please call me at (312) 235-3301.

Sincerely,

TRUE PARTNERS CONSULTING LLC

Donald R. Bast
Managing Director

**AGREED AND ACCEPTED:**

TRIBUNE COMPANY

By: _____
Name
Date 11/11/10
Title VP Tax

Attachment

## GENERAL BUSINESS TERMS

A. **Services.** It is understood and agreed that True Partners Consulting LLC ("True Partners")'s services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. In connection with its services hereunder, True Partners shall be entitled to rely on all decisions and approvals of the Client. (Each of the Client and True Partners is sometimes referred to in these Business Terms as a "party" and, together, as the "parties.")

B. **Payment of Invoices.** All undisputed amounts contained within properly submitted invoices must be paid within forty-five (45) days of receipt of such invoice. Properly submitted invoices upon which payment is not received within forth-five (45) days of receipt of such invoice shall accrue a late charge of the lesser of (i) 1-1/2% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its rights or remedies, True Partners shall have the right to halt or terminate its services entirely if payment is not received within forty-five (45) days of receipt of such invoice.

C. **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate upon the completion of True Partners' services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) days before the effective date of termination. In the event of termination pursuant to this Paragraph, the Client agrees to compensate True Partners under the terms of the engagement letter to which these terms are appended ("engagement letter") for services performed and reasonable expenses incurred and approved by Tribune Interactive in advance through the effective date of termination.

D. **Limitation on Damages; Insurance.** Except for gross negligence, bad faith, or reckless or intentional conduct by True Partners, or its related entities or their respective employees and exclusive of any insurance coverage that True Partners has for claims, liabilities, or expenses related to this engagement, the Client agrees that True Partners and its related entities, their respective officers, managing directors, employees, agents, successors and assigns, shall not be liable to the Client for any claims, liabilities, or expenses relating to this engagement for an aggregate amount in excess of $100,000. Notwithstanding the foregoing, True Partners shall maintain insurance with regard to each of its employees performing services under this agreement and/or in connection with this engagement with a nationally recognized insurance company(ies) (with a current year (2009) maximum deductible of at least $25,000) for each of the following: Comprehensive and General Liability Insurance with limits of not less than $1,000,000 per occurrence.

E. **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year

following the date of the last payment due to the party bringing such action.

F. **Information and Data.** True Partners shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to True Partners. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. True Partners may use information and data furnished by others; however, True Partners shall not be responsible for, and True Partners shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to, True Partners shall not provide advice regarding the financial accounting treatment of any transaction implemented from these services and will not assume any responsibility for any financial reporting with respect to the services provided hereunder. The Client shall be responsible for all financial information and statements provided with respect to any services performed hereunder. True Partners shall have no responsibility to address any legal matters or questions of law, other than tax law. True Partners will provide no opinion, attestation, or other form of assurance with respect to the services hereunder or the information upon which any of the services is based.

G. **Third Parties and Internal Use.** Except as otherwise agreed, all services in connection with this engagement shall be solely for the Client's internal purposes and use, and this engagement does not create privity between True Partners and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. No third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other services of True Partners. The Client further agrees that the advice, opinions and reports issued by True Partners shall not be distributed to any third party without the prior written consent of True Partners. True Partners agrees that such consent will ordinarily be granted provided that the Client makes a specific written request of True Partners and the third party seeking such materials executes an acknowledgement of non-reliance and a release acceptable to True Partners. This Paragraph is intended to ensure that True Partners is not in legal privity with any person or entity other than the Client.

H. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, distributor, partner, fiduciary or representative of the other. Neither party shall act or represent itself, directly or by implication, in any such capacity in respect of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other. If the Internal Revenue Service should question the independent contractor status of True Partners, both parties shall have the right to participate in any discussions or negotiations with the Internal Revenue Service to the maximum extent permissible by law, regardless of with whom such discussions or negotiations are initiated

I. **Survival and Interpretation.** The agreements and undertakings of the Client contained in the engagement letter, to which these terms are attached, together with the provisions of all Paragraphs hereof, (except for the "term" of the engagement) shall survive the

expiration or termination of this engagement. For purposes of these terms, "True Partners" shall mean True Partners Consulting LLC and any of its subsidiaries, related entities, or member firms; all of their partners, principals, members, owners, directors, staff and agents, and in all cases any successor or assignee.

J. **Governing Law and Severability.** These terms, the engagement letter to which these terms are attached including any exhibits and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of Illinois (without giving effect to the choice of law principles thereof). If any provision of this engagement letter (or any portion thereof) is found by a court of competent jurisdiction to violate any statute, regulation, rule, order or decree of any governmental authority, court, agency or exchange, or is determined to be invalid or unenforceable, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this engagement letter or these General Business Terms, and such invalid provision shall be deemed deleted herefrom to the minimum extent necessary to cure such violation. The remaining provisions of this engagement letter and General Business Terms shall not be affected by such determination and shall be binding upon the parties and shall be enforceable as though said invalid or unenforceable provision (or portion thereof) were not contained herein.

K. **Confidentiality.** Each party agrees to protect each other party's Confidential Information ("Confidential Information") in a reasonable and appropriate manner and in accordance with any applicable professional practices and to use and reproduce Confidential Information only to perform its obligations under the engagement letter. Either party shall not disclose Confidential Information to any third party or as otherwise provided by the engagement letter without the prior written consent of the non-disclosing party. Each party acknowledges that it is not practical, and shall not be necessary, to mark such information as "confidential," or to transfer it by confidential envelope or communication, in order to preserve the confidential nature of the information. "Confidential Information" is any information disclosed to the recipient under circumstances that would lead a reasonable person to understand that such information is confidential or proprietary in nature except for information that:

(i) Is or becomes generally available to the public (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by the disclosing party in breach hereof,

(ii) Is received by the recipient from a third party on a non-confidential basis from a source other than the Client, which the recipient reasonably believes is not prohibited from disclosing such information by obligation to the Client,

(iii) Was known to the recipient prior to its receipt from the other party without any obligation of confidentiality prior to disclosure,

(iv) Is independently developed by recipient without use of disclosing party's

confidential information, or

(v) Is publicly disclosed pursuant to any legal requirement or order from a federal, state, or local governmental agency, or pursuant to any rule or regulation of any stock exchange, national securities quotation system, or the Internal Revenue Service governing either the recipient or the disclosing party.

If a party is required to make such disclosure pursuant to clause (v), above, such disclosing party shall provide the other party with prompt prior written notice of such requirement so that such other party may seek, at its own cost, a protective order or other appropriate remedy and/or waive in writing compliance with the provisions of this clause. If such protective order or other remedy is not obtained or available and such written waiver has not been received from the other party that would permit such required disclosure, the disclosing party may disclose only that portion of the Confidential Information which it is advised by opinion of counsel is legally required to be disclosed and will cooperate with the other party to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information.

L. **Assignment.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party.

M. **Cooperation.** The Client shall cooperate with True Partners in the performance by True Partners of its services hereunder, including, without limitation, providing True Partners with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to True Partners for purposes of the performance by True Partners of its services hereunder.

N. **Fee Structure.** Unless otherwise stated in the engagement letter, to the extent that the fees for any engagement related to the preparation or submission of any tax return or claim for the Client or the Client's affiliated entities are not itemized on a per return or claim basis, the aggregate of fees enumerated in the engagement letter shall be divided equally among the respective returns or claims itemized in the engagement letter for purposes of the tax return preparer penalties pursuant to Internal Revenue Code §6694.

O. **Tax Return Disclosure and Tax Advisor Listing Requirements.** The Internal Revenue Service and other taxing authorities have instituted stringent disclosure requirements for certain transactions (i.e., "reportable transactions"). All tax advisors must submit certain information to taxing authorities and maintain a list of their clients who participated in reportable transactions. These lists are subject to review by some taxing authorities upon request. The Client agrees to advise True Partners immediately if the Client believes that it participated in a reportable transaction. In turn, True Partners will consult with the Client to determine the appropriate transaction reporting requirements. If the Client has engaged in a reportable transaction, True Partners' services in connection with listing, disclosing and reporting such transaction are considered additional services outside the

scope of this engagement letter.

P. **Written Tax Advice.** Unless otherwise agreed to in the scope of services enumerated in this engagement letter, it is anticipated that any written advice True Partners provides during the course of this engagement will be "Other Written Advice" as defined by Circular 230. Accordingly, unless otherwise prohibited, or pursuant to the issuance of a "Covered Opinion" as defined by Circular 230, any written advice pursuant to this engagement may include a disclosure stating that the tax advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed by any governmental agency. Any written advice True Partners provides will contain any other disclosures required by Circular 230.

Q. **Timeliness of Performance; Force Majeure.** True Partners understands that prompt performance of the services hereunder is required by the Client in order to meet its schedules and commitments. Neither party shall be liable, however, for any failure to perform its obligations where such failure is a result of acts of nature (including fire, flood, earthquake, storm, hurricane or other natural disaster), war, invasion, act of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation, terrorist activities, nationalization, government sanction, blockage, embargo, labor dispute, strike, lockout or interruption or failure of electricity or telephone service.

R. **Non-Solicitation.** During the term of this engagement letter and for a period of one (1) year following the termination of the engagement letter, neither party shall, directly or indirectly, solicit to hire or hire any employee of the other party without paying the other party a fee equal to the annual salary of such employee while employed by the other party. The foregoing will not apply to (i) any broad-based efforts to attract applicants not targeted directly to True Partners or the Client or their respective personnel, or (ii) any applications submitted or inquires made by personnel of either party not at the request of the other.

S. **Limitation on Warranties.** This is a services agreement, and True Partners warrants that it shall perform the services hereunder in good faith and with due professional care. True Partners disclaims all other warranties, either express or implied, including, without limitation, warranties of merchantability, fitness for a particular purpose, warranties arising out of custom or usage in a particular profession, and warranties by operation of law.

T. **General.**

(i) This engagement letter, General Business Terms, and any attached exhibits shall constitute the entire agreement between the parties with respect to the matters contained herein and shall supersede any and all prior and contemporaneous agreements, negotiations, correspondence, undertakings and communications (whether written, oral or electronic) of the parties with respect to the subject matter hereof and may not be amended except by a writing executed by all parties

hereto.

(ii) The headings of the engagement letter and these General Business Terms are intended solely for convenience of reference and shall be given no effect in the interpretation or construction hereof.

(iii) The services performed under this engagement letter do not include the provision of legal advice, and True Partners makes no representations regarding questions of legal interpretation.

(iv) Tax returns and other filings are subject to examination by taxing authorities. True Partners will be available to assist the Client in the event of an audit of any issue for which we have provided services under this engagement letter. However, unless indicated in this engagement letter, our fees for these additional services are not included in our fee for the services covered by this engagement letter.

(v) Nothing within the engagement letter will prevent or restrict True Partners from providing services for other clients.

U. **Execution.** The engagement letter may be executed in multiple counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed signature page to this Agreement by facsimile transmission shall be equally effective as delivery of a manually executed counterpart hereof.

V. **True Partners Ownership & Professionals.** True Partners is owned and operated by professionals who hold Certified Public Accountant ("CPA") licenses, as well as by professionals who are not licensed CPAs. Depending on the nature of the services True Partners provides, non-CPA owners and professionals may be involved in providing services to you pursuant to this engagement letter. Although True Partners employs CPAs, it is not a licensed CPA firm in any state. In addition, True Partners is not engaged in the practice of law in any state.

W. **Commercially Reasonable Efforts.** True Partners agree that it and all of its employees assigned to perform services pursuant to this agreement shall use commercially reasonable efforts in accordance with industry standards in performing their obligations hereunder, and shall perform at a level consistent with persons having similar levels of education, experience, and/or expertise in the relevant consulting field.